JEFFREY B. COOPERSMITH (CA State Bar No. 252819)
KELLY M. GORTON (CA State Bar No. 300978)
BENJAMIN J. BYER (Admitted *Pro Hac Vice*)
AMANDA MCDOWELL (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500 │ Facsimile:  (415) 276-6599
Email:  jeffcoopersmith@dwt.com; kellygorton@dwt.com
        benbyer@dwt.com; amandamcdowell@dwt.com

Attorneys for Defendant RAMESH BALWANI

JOHN D. CLINE (CA State Bar No. 237759)
One Embarcadero Center, Suite 500
San Francisco, CA  94111
Telephone:  (415) 662-2260 │ Facsimile:  (415) 662-2263
Email:  cline@johndclinelaw.com

LANCE A. WADE (Admitted *Pro Hac Vice*)
KEVIN M. DOWNEY (Admitted *Pro Hac Vice*)
MICHELLE CHEN (Admitted *Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Telephone:  (202) 434-5000 │ Facsimile:  (202) 434-5029
Email:   LWade@wc.com; KDowney@wc.com; MChen@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH A. HOLMES and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MOTION FOR ORDER DIRECTING THE GOVERNMENT TO CEASE AND DESIST POST-INDICTMENT USE OF THE GRAND JURY PROCESS TO OBTAIN DISCOVERY**<br><br>**Date:  October 1, 2018**<br>**Time: 1:30 p.m.**<br>**CTRM.: 4, 5th Floor**<br><br>**Hon. Edward J. Davila** |

DAVIS WRIGHT TREMAINE LLP

1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 1, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4, located at the San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendants Ramesh Balwani and Elizabeth Holmes will move this Court for an order directing the government to cease and desist its post-indictment use of the grand jury process to obtain discovery.

Defendants bring this Motion pursuant to Criminal Local Rules 12-1 and 47-1. The Motion is based on this Notice, Memorandum of Points and Authorities, the Declaration of Jeffrey Coopersmith, the record in this case, oral argument as permitted by the Court, and any other matters that the Court deems appropriate.

DATED: September 7, 2018

DAVIS WRIGHT TREMAINE LLP

By:   */s/ Jeffrey B. Coopersmith*
      Jeffrey B. Coopersmith

Attorney for Defendant
RAMESH BALWANI

MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD
4844-5742-7569v.7 0103509-000002

DAVIS WRIGHT TREMAINE LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Ramesh Balwani and Elizabeth Holmes move this Court for an order directing the government to cease and desist its post-indictment use of the grand jury to obtain discovery in this case.

Three months after an indictment was returned in this matter, the government is currently seeking to enforce a broad grand jury subpoena (the "Subpoena") issued to Theranos, Inc. ("Theranos") on September 6, 2017, and to cause the production of hundreds of thousands—if not millions—of pages of documents.  The indictment in this case was returned on June 14, 2018, and a superseding indictment was returned on September 6, 2018—exactly a year after the Subpoena was issued.  The timing, nature, and circumstances of the Subpoena demonstrate that it is being used for purposes of pretrial discovery not permitted by the Federal Rules of Criminal Procedure.

To make any ruling that the Court issues effective, Defendants request that the Court stay compliance with the Subpoena until this motion is decided.

## I.     FACTUAL BACKGROUND

On September 6, 2017, the government caused the grand jury to issue the Subpoena to Theranos.  Declaration of Jeffrey Coopersmith ("Coopersmith Decl.") at Ex. A.  The Subpoena, calls for exceedingly broad ("All documents regarding the financial health . . . of Theranos"), vague ("All documents regarding Theranos device capabilities . . ."), and argumentative  ("All documents regarding fraud . . .") categories of documents maintained over a period of more than 15 years that are not likely to produce information relevant to any second superseding indictment to the extent that is even contemplated.  *Id.*  The Subpoena had a return date a month later, in October 2017.  *Id.*  If enforced at this late, post-indictment date, the Subpoena would call for the production of at least hundreds of thousands of pages (if not millions of pages) of additional documents.  *Id.* at ¶ 6.

On June 14, 2018, a grand jury sitting in this district returned an indictment against defendants Elizabeth Holmes and Ramesh Balwani.  Dkt.1.  The indictment charged Ms. Holmes and Mr. Balwani each with two counts of conspiracy to commit wire fraud, in violation of

3

18 U.S.C. § 1349, and nine counts of wire fraud, in violation of 18 U.S.C. § 1342. *Id.* The indictment, which relates to topics reflected in the Subpoena's document requests, alleges that Ms. Holmes and Mr. Balwani defrauded investors by making false and misleading statements regarding the capabilities of Theranos's technology, its revenues and revenue forecasts, and its use of third party, commercially available analyzers. *Id.* at ¶¶ 11-13. The indictment also alleges that the Defendants defrauded doctors and patients through fraudulent claims about the company's blood tests. *Id.* at ¶¶ 14-18. The superseding indictment is nearly identical, as it only adds a reference to an additional investor in Count 4. Dkt. 39.

Since the original indictment was returned in June 2018, the United States Attorney's Office has been in contact with Theranos seeking voluminous additional documents that fall within the scope of the pre-indictment grand jury Subpoena issued in September 2017.[1] Coopersmith Decl. at Ex. B. Defendants understand that Theranos, in response to the government's demands, has recently made arrangements to produce hundreds of thousands of documents in addition to those produced prior to the indictment, most without reviewing them. *Id.* at ¶ 6. In effect, the government is seizing many documents in Theranos's possession to have and review as the case proceeds. A large number of the documents are covered by the company's attorney client privilege, and it is likely that the voluminous material includes documents covered by privileges belonging to the defendants as well. *Id.* at ¶ 6 & Ex. B. Theranos has recently announced its plans to dissolve,[2] and Theranos lacks the resources to review the documents to protect material that is privileged, or even to review the documents to ensure that they do not contain documents protected by joint defense or common interest privileges belonging to the defendants. *Id.* at ¶ 6 & Ex. D. The government apparently has no plans to form a "taint-team" to screen privileged materials from the government's trial team. *Id.* at ¶ 6.

---

[1] It is not clear whether the grand jury that issued the September 2017 subpoena is still empaneled or whether it is a different grand jury that returned the indictments in this matter.
[2] https://www.wsj.com/articles/blood-testing-firm-theranos-to-dissolve-1536115130.

MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD
4844-5742-7569v.7 0103509-000002

DAVIS WRIGHT TREMAINE LLP

On August 31, 2018, counsel for Mr. Balwani wrote a letter to the United States Attorney's Office to request the government "cease its post-indictment subpoena enforcement efforts." *Id.* at Ex. B.  The letter stated, in part:

> Here, we understand that the grand jury subpoena was issued in 2017, long before the grand jury returned an indictment of Ms. Holmes and Mr. Balwani.  Accordingly, by definition any further production pursuant to the subpoena is not tied to the functions of the grand jury—to indict or return a no-bill. The document requests in the subpoena of which we are aware are broad, strongly suggesting that the subpoena is not tied to any plan to supersede the indictment.

*Id.*  In an email to Theranos's counsel on September 1, the government informed Theranos that it would continue its enforcement efforts relating to the pre-indictment grand jury Subpoena and was "conscious of the fact that the company's dwindling resources leave us with limited time." *Id.* at Ex. C.  The government has declined to forego production under the Subpoena until the Court could rule on this dispute.  *Id.* at ¶ 6.

On September 6, 2018—exactly a year after the government issued the Subpoena—the grand jury returned a superseding indictment in this case, adding only a reference to an additional investor in Count 4.  *See* Dkt. 39.  Undersigned counsel has communicated with counsel for the government on numerous occasions over the last several months.  Government counsel did not mention the potential for a superseding indictment prior to its receipt of the August 31, 2018 letter objecting to the government's misuse of the grand jury.  *Id.* at ¶ 8.

## II.     ARGUMENT

"Grand juries are not licensed to engage in arbitrary fishing expeditions."  *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991).  While the grand jury may be used after indictment if the investigation is related to a superseding indictment, it is also well-established that "the government should not use the grand jury for the sole purpose of pretrial discovery in cases in which an indictment has already been returned."  *United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972); *In re Grand Jury Proceedings*, 1990 WL 116870, at *2 (9th Cir. 1990) (grand jury subpoena cannot be used "to conduct discovery or to prepare the pending indicted cases for trial"); *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) ("The law is settled in this circuit and elsewhere that it is improper to utilize a

DAVIS WRIGHT TREMAINE LLP

5

Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial.").  As the United States Attorney's Manual instructs, "[t]he grand jury's power . . . is limited by its function toward possible return of an indictment."  *See* U.S.A.M. § 9-11.120 (citing *Costello v. United States*, 350 U.S. 359, 362 (1956)).  Moreover, "[c]ourts have general supervisory powers over the grand jury to prevent or correct abuse of its process."  *In re Grand Jury Proceedings*, 632 F.2d 1033, 1040 (3d Cir. 1980).

Because Defendants have standing to challenge the Subpoena, and because the timing and circumstances of the Subpoena show that any documents produced at this stage of the proceeding would be used predominately for pretrial discovery, the Court should direct the government to cease and desist use of the grand jury process to obtain documents under the Subpoena.

**A.      Defendants Have Standing to Challenge the Subpoena.**

Defendants have standing to challenge a grand jury subpoena issued to a third-party on the grounds that the grand jury subpoena is being used "for the sole or dominating purpose of preparing an already pending indictment for trial."  *See Simels*, 767 F.2d at 29-30.  For example, the Second Circuit in *Simels* found that the defendant's motion to quash a grand jury subpoena issued to a third-party should be granted because the post-indictment subpoena was an "abuse of the grand jury process."  *Id.*  Other courts have similarly found that "the case for letting . . . a victim of grand jury abuse be heard is stronger, rather than weaker" than many other cases where courts routinely accept "third party standing."  *In re Grand Jury*, 619 F.2d 1022, 1026-27 (3d Cir. 1980); *see also In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017) (website user had third-party standing to challenge grand jury subpoena).  Further, because the voluminous Theranos material sought by the government could contain documents covered by joint defense or common interest privileges belonging to Defendants, it is crucial for Defendants to be able to challenge the government's post-indictment use of the grand jury process.

Moreover, the voluminous documents Theranos would produce pursuant to the Subpoena likely include documents protected from disclosure by joint attorney-client privileges and/or

6

DAVIS WRIGHT TREMAINE LLP

common interest/joint defense privileges that belong to the Defendants.  Coopersmith Decl. ¶ 6.
Theranos has tried to erect mechanical "filters" to address certain privilege concerns.  However,
we do not believe those filters could adequately protect against disclosure of material covered by
Defendants' privileges.  *See id.*  Compliance with the Subpoena would therefore result not only
in misuse of the grand jury process but also could result in the government's invasion of the
Defendants' privileges.

**B.     The Post-Indictment Enforcement of the Grand Jury Subpoena Is Not Within the
Scope of the Grand Jury's Investigative Powers.**

The timing and circumstances of the Subpoena demonstrate that any documents produced
in response to the Subpoena would now be used predominately for "pretrial discovery."  *Star*,
470 F.2d 1at 1217 (finding that government offered "no other justification" for the grand jury
subpoena other than for "pretrial discovery").

The grand jury Subpoena does not relate to any superseding indictment—which has
already been returned in this case.  The grand jury Subpoena was issued to Theranos in
September 2017—almost nine months before the indictment and exactly a year before the
superseding indictment.  Coopersmith Decl. at Ex. A.  The Subpoena requested a broad array of
documents that are within the same subject matter as the indictment and superseding indictment.
*Id.*  Mr. Balwani's counsel challenged the government's post-indictment efforts to obtain
material pursuant to the Subpoena in an August 31, 2018 letter, and a superseding indictment
was returned within the week—showing definitively that the documents in the Subpoena were
not needed for, or related to, the superseding indictment.  *Id.* at Ex. B.

Theranos has announced it will dissolve, and the government therefore appears to be
eager to obtain possession of the documents in the event that it decides later that some material
among them is relevant in response to the defenses offered in this matter.  This purpose smacks
of a desire to obtain pretrial discovery using the grand jury process, or perhaps simply to
storehouse documents that could conceivably be needed later, not to obtain the materials as part
of an ongoing investigation.  Undersigned counsel understands that Theranos offered to place the
documents on a hard drive that would remain in the possession of its counsel, WilmerHale, in the

MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD
4844-5742-7569v.7 0103509-000002

DAVIS WRIGHT TREMAINE LLP

event that those materials might become properly discoverable in the future.  *Id.* at ¶ 7.  The government has demanded to take possession of the documents, but it should not be permitted to do so based on a grand jury subpoena unrelated to any genuine investigative purpose.

The extremely broad and vague document requests in the Subpoena further demonstrate that post-indictment use of the Subpoena is not consistent with the purpose and function of the grand jury.  *Id.* at Ex. A.  Based on its September 1 email, *id.* at Ex. C, the government's theory seems to be that it can continue to use the grand jury subpoena process, regardless of whether the requests in the Subpoena relate to a contemplated superseding indictment, so long as the government can say that it did not have every scrap of information relevant to the case prior to obtaining an indictment and superseding indictment.  If this were the law, there would be no limit to the government's ability to use the grand jury process after indictment, because the government could always claim that it is entitled to use the grand jury process just in case it might find something useful with which it might seek a superseding indictment (or in this case, a second superseding indictment).

In its September 1 email, *id.*, the government cites to cases that articulate the principle that "the duties of the grand jury are not performed until every clue and all witnesses are examined in order to charge the proper person with the appropriate crime."  *In re Grand Jury Proceedings*, 586 F.2d 724, 725 (9th Cir. 1978).  But this rule does not change the well-established rule that the government may not use the grand jury process to prepare for trial, and the cases cited by the government acknowledge as such.  Coopersmith Decl. at Ex. C (cases cited by government); *see In re Grand Jury Proceedings*, 586 F.2d at 725 ("[I]t may be improper to call a grand jury witness solely to prepare a previously-indicted case for trial . . . ."); *In re Grand Jury Proceedings*, 632 F.2d at 1041 ("It is a firmly entrenched rule that once a defendant has been indicted, a prosecutor may not use a grand jury's investigative powers for the purpose of securing additional evidence against the defendant for use in the upcoming trial.").

In *Simels*, the court reversed a district court's denial of a motion to quash issued a few weeks after the return of a superseding indictment.  767 F.2d at 29-30.  There, the Second Circuit considered the "timing of the subpoena" and found that the circumstances surrounding the

MOTION FOR CEASE AND DESIST ORDER
Case No. CR-18-00258 EJD
4844-5742-7569v.7 0103509-000002

DAVIS WRIGHT TREMAINE LLP

subpoena suggested that the grand jury process was being used to prepare the "pending indictment for trial." *Id.* In reversing, the Second Circuit also recognized that the rule barring the misuse of the grand jury process "is difficult . . . to enforce" but if the rule "is to have any meaning" then a grand jury subpoena "must be quashed" when it is being used predominately for trial preparation. *Id.* Similarly, upon consideration of a motion to suppress evidence, the court in *United States v. Jeter*, found that the government's "post-indictment acceptance of property targeted by the pre-indictment subpoena" was "improper," as the "sole or dominant purpose" of the enforcement of the pre-indictment subpoena was to obtain "evidence against [the defendant] for use in the criminal proceeding against him." *United States v. Jeter*, 2015 WL 114118, at *2-3 (D. Md. Jan. 7, 2015).

The government was well able to insist on full compliance with the Subpoena on the terms that it now demands for nine months prior to indictment. It did not. Now, with Theranos out of resources, the government seeks to force compliance in a manner that will grant it ongoing access to what may be the entirety of the electronic documents in Theranos's possession. The Court should not countenance this misuse of a grand jury subpoena.

### III.    CONCLUSION

Defendants acknowledge that the grand jury's investigative powers are broad, but they are not unlimited. The grand jury power is not so broad that it would allow the government to continue to use the grand jury process until it can absolutely rule out any need to supersede, because otherwise there would be no limitation. Accordingly, the Court should order the government to cease and desist its post-indictment Subpoena enforcement efforts, especially now that the government has filed a superseding indictment, to prevent use of the grand jury process predominately for pretrial discovery and to prepare the already-indicted case for trial.

DATED: September 7, 2018                          Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

By:   */s/ Jeffrey B. Coopersmith*
      Jeffrey B. Coopersmith

Attorneys for Defendant
RAMESH BALWANI

WILLIAMS &CONNOLLY LLP

By:   */s/ Kevin M. Downey*
      Kevin M. Downey

Attorneys for Defendant
ELIZABETH A. HOLMES

10

JEFFREY B. COOPERSMITH (CA State Bar No. 252819)
KELLY M. GORTON (CA State Bar No. 300978)
BENJAMIN J. BYER (Admitted *Pro Hac Vice*)
AMANDA MCDOWELL (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500 │Facsimile:  (415) 276-6599
Email:  jeffcoopersmith@dwt.com; kellygorton@dwt.com
        benbyer@dwt.com; amandamcdowell@dwt.com

Attorneys for Defendant RAMESH BALWANI

JOHN D. CLINE (CA State Bar No. 237759)
One Embarcadero Center, Suite 500
San Francisco, CA  94111
Telephone:  (415) 662-2260 │Facsimile:  (415) 662-2263
Email:  cline@johndclinelaw.com

LANCE A. WADE (Admitted *Pro Hac Vice*)
KEVIN M. DOWNEY (Admitted *Pro Hac Vice*)
MICHELLE CHEN (Admitted *Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Telephone:  (202) 434-5000 │Facsimile:  (202) 434-5029
Email:   LWade@wc.com; KDowney@wc.com; MChen@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH A. HOLMES and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258 EJD<br><br>**DECLARATION OF JEFFREY B. COOPERSMITH IN SUPPORT OF MOTION FOR CEASE AND DESIST ORDER**<br><br>Hon. Edward J. Davila |

DAVIS WRIGHT TREMAINE LLP

I, Jeffrey B. Coopersmith, declare as follows:

1.      I am an attorney licensed to practice in the State of California and before this Court.  I am a partner with the firm of Davis Wright Tremaine LLP, counsel for Defendant Ramesh Balwani in the above-captioned matter.

2.      Attached as **Exhibit A** is a true and correct copy of the grand jury subpoena issued to Theranos, Inc. on September 6, 2017.

3.      Attached as **Exhibit B** is a true and correct copy of the letter I sent to the United States Attorney's Office on August 31, 2018.

4.      Attached as **Exhibit C** is a true and correct copy of an email sent from John Bostic to Michael Mugmon on September 1, 2018.

5.      Attached at **Exhibit D** is a true and correct copy of an email sent from David Taylor to Theranos Stockholders on September 4, 2018.

6.      I understand from counsel for Theranos that the production currently sought by the government pursuant to the September 6, 2017 grand jury subpoena involves hundreds of thousands of documents.  I am further informed that, based on search terms, many of the documents are likely covered by the company's attorney-client privilege, but the company lacks the resources to protect its privileges.  The defense is also concerned that under the circumstances here the voluminous material that the company would produce to the government likely contains documents covered by joint defense or common interest privileges belonging to the defendants.  Reviewing hundreds of thousands of documents for this purpose would be enormously burdensome for defendants, and unnecessary when, as noted in our motion, the government's post-indictment use of the grand jury process is untethered to any second superseding indictment.  I understand that the government has declined to form a "taint team" to screen privileged material from the government's trial team because of the burden associated with this.

7.      I understand that Theranos's counsel offered to place responsive documents on a hard drive and keep that drive in the possession of its counsel in the event that the documents become properly discoverable in the future.

DAVIS WRIGHT TREMAINE LLP

1

DECLARATION OF JEFFREY B. COOPERSMITH
Case No. CR-18-00258 EJD
4831-4611-9793v.2 0103509-000002

8.    I was not aware that the government planned to seek a superseding indictment prior to my August 31 letter objecting to the government's use of the grand jury.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of September in Seattle, Washington.

s/ *Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith

DECLARATION OF JEFFREY B. COOPERSMITH
Case No. CR-18-00258 EJD
4831-4611-9793v.2 0103509-000002

DAVIS WRIGHT TREMAINE LLP

# EXHIBIT A



*United States Attorney*
*Northern District of California*

150 Almaden Boulevard, Suite 900                    (408) 535-5061
San Jose, California 95113                      FAX: (408) 535-5066

September 6, 2017

Theranos, Inc.
Custodian of Records

        Re:  Grand Jury Subpoena (Investigation # 2016R00024)

Dear Madam or Sir:

        You have received a grand jury subpoena <u>duces tecum</u> in connection with the above-
numbered grand jury investigation.  The subpoena has been issued in furtherance of that
investigation.

        This letter is written to advise you that disclosure of the subpoena and your response to it
to any of your clients or any third parties may impede or obstruct the investigation. Therefore,
we ask you not to disclose the existence of the subpoena or the nature of your response to it to
any client or person not employed by you for the indefinite future.

        If you have any questions about this request, please feel free to contact me at (408)535-
2695.

                            Very truly yours,

                            BRIAN J. STRETCH
                            United States Attorney


                            JEFF SCHENK
                            Assistant United States Attorney

JS:lw
Enclosures
GJ 16-1 (SJ)
2016R00024

AO 110  (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT

for the

Northern District of California

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:  Theranos, Inc.
     Custodian of Records

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | United States District Courthouse - San Jose<br>280 S. First Street<br>Room 2115, 2nd Floor<br>San Jose, CA 95113 | Date and Time:<br><br>10/05/2017 9:00 am |
|---|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

SEE ATTACHMENT. Provide all records in electronic format only.

Voluntary compliance with this federal grand jury subpoena will be deemed satisfactory when the information requested is provided to the agent listed below and no appearance will be necessary.

MAIL DOCUMENTS TO:
Special Agent Mario C. Scussel
Federal Bureau of Investigation
450 Golden Gate Ave, 13th Floor
San Francisco, CA 94102
Email: mcscussel@fbi.gov

Date:  September 6, 2017

*CLERK OF COURT*

Susan Y. Soong

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Jeffrey B. Schenk,  AUSA
150 Almaden Blvd., Suite 900
San Jose,  CA  95113
jeffrey.b.schenk@usdoj.gov    (408) 535-5061
S/A Mario C. Scussel - FBI    (415) 553-7564

## SUBPOENA ATTACHMENT

Custodian of Records
Theranos, Inc.

## I.     DEFINITIONS

As used herein:

A.     "Document" means the **original** of all written, recorded, or graphic material and all
electronic data of every kind, whether prepared by your company or by any other
person, that is in your company's possession, custody, or control, including but not
limited to: memoranda, reports, letters, telegrams, and other communications
recorded in any form or medium; notes, minutes, and transcripts of conferences,
meetings and telephone or other communications; contracts and other agreements;
checks, check registers, statements, ledgers, and other records of financial matters or
commercial transactions; appointment books, calendars, notebooks, and diaries,
including data in PDAs; maps, diagrams, graphs, and charts; plans and specifications;
publications; photographs; photocopies, microfilm, and other copies or reproductions;
computer printouts; tallies, tabulations, and summaries of sales or bids; and all file
folders, file tabs, folder tabs, mailing envelopes, facsimile transmission cover sheets,
and any other proof or indicia of mailing (if applicable) associated with each original.
The term "document" includes spreadsheets, as well as underlying cell formulae and
other codes. The term "document" also includes electronic mail messages and other
documents and data stored in, or accessible through, computer or other information
retrieval systems, such as personal computers, portable computers, workstations,
minicomputers, personal data assistants, archival voice storage systems, group and
collaborative tools, electronic messaging devices, portable or removable storage
media, mainframes, servers, backup disks and tapes, archive disks and tapes, and
other forms of online or offline storage, whether on or off company premises. The
term "document" includes all drafts of a document and all duplicates of a document
(whether or not identical) in the files of or in the files maintained on behalf of all
directors, officers, managers, or other supervisory employees, duplicates of
documents in all other files that are not identical duplicates of the originals (including
copies that differ in any way, such as through notations, underlining, or other
markings), and  duplicates of documents the originals of which are not in the
possession, custody, or control of your company. The term "document" includes all
data (including metadata, embedded, hidden and other bibliographic or historical data
describing or relating to documents created, revised, or distributed on computer
systems) stored in electronic form or accessible through computer or other

1

information retrieval systems, together with instructions and all other materials
necessary to use or interpret this data. Unless otherwise specified, the term
"document" excludes non-electronic forms of invoices, bills of lading, purchase
orders, customs declarations, and other similar documents of a purely transactional
nature.

B.   "Identify" means to state and "identity" means a statement of:

  1)  In the case of a person other than a natural person, its name, the address of its
      principal place of business, its telephone number, and the name of its chief
      executive officer;

  2)  In the case of a natural person, his or her full name (including full middle name),
      date and place of birth and social security number, passport number and country
      of issuance, last known home telephone number and home address, last known
      business telephone number (including extensions) and business address, last
      known cellular or mobile telephone numbers, the positions held by each
      individual and dates of service in each position, and the name and position of each
      such person's immediate supervisors in each position; and

  3)  In the case of a communication, its date, its type *(e.g.,* telephone conversation,
      letter, electronic mail, or meeting), the place where it occurred, the identity of the
      persons who made it, the identity of the persons who received it or who were
      present when it was made, and the subject matter discussed.

C.   "Person" means any natural person, association, cooperative, public or private
     corporation, joint venture, partnership, sole proprietorship, governmental entity, or
     other form of business or legal entity.

D.   "Relating to" or "relate to" or "regarding" means directly or indirectly refer or pertain
     to, discuss, describe, reflect, contain, examine, analyze, study, report on, comment on,
     evidence, constitute, show, consider, recommend, concern, record, or set forth, in
     whole or in part.

E.   "Telephone number" includes any general telephone numbers, private line numbers,
     telephone extension numbers, cellular or mobile telephone numbers, and facsimile
     transmission numbers.

F.   "You" or "your company" means the person to which this subpoena is addressed; any
     parent, predecessor, successor, division, affiliate, or subsidiary (whether wholly
     owned or not) of that person; any joint venture to which any such person is or was a
     party; and each officer, director, manager, partner, employee, attorney, agent,

representative, consultant, affiliated person, or other person acting on behalf of any of them.

## II.   INSTRUCTIONS

A.   Unless otherwise specifically provided herein, the documents that must be produced in response to this subpoena include all responsive documents prepared, sent, dated, received, used, or in effect at any time during the period of **January 1, 2003** through **the date of this subpoena** ("the subpoena period"). The "date of this subpoena" is its date of service.

B.   All documents produced must be **originals,** unless otherwise indicated. Photocopies will be accepted only after your company demonstrates that the originals are unavailable.

C.   This subpoena and schedule of documents call for the production of all responsive documents in the possession, custody, or control of your company without regard to the physical location of the documents and without regard to whether the documents were prepared by or for your company.

D.   Use of the singular or the plural in this subpoena should not be deemed a limitation, and the use ofthe singular should be construed to include, where appropriate, the plural. The conjunctive form "and" and the disjunctive form "or" are mutually interchangeable and encompass each other. The terms "any" and "all" are mutually interchangeable and encompass each other.

E.   Any documents that are withheld in whole or in part from production based on a claim of privilege shall be assigned document control numbers (with unique consecutive numbers for each page of each document); for purposes of this instruction, each attachment to a document shall be treated as a separate document and separately logged, if withheld, and cross referenced, if produced. Your company shall also provide a statement of the claim of privilege and all facts relied upon in support of the decision to withhold each document, in the form of a log that conforms with the requirements set forth below. Your company is encouraged to propose categorical limitations to exclude certain classes of privileged documents from its log.

a.   For each document identified on your company's privilege log, state:

i.   the document's control numbers;
ii.   all authors of the document;
iii.   all addressees of the document;
iv.   all recipients of the document or of any copies of the document, to the extent not included among the document's addressees;
v.   the date of the document;

3

    vi.  a description of the subject matter of the document;

    vii.  the nature or type of the privilege that your company is asserting for the document *(e.g,* "attorney-client privilege");

    viii.  the specifications of this schedule to which the document is responsive;

    ix.  the document control numbers of any attachments to the document, regardless of whether any privilege is being asserted for such attachments; and

    x.  whether the document has been produced in redacted form.

b.  Your company's privilege log shall also conform with all of the following requirements:

    i.  Provide a separate legend containing the full name, title, and employer or company affiliation of each author, addressee, and recipient identified on your company's privilege log.

    ii.  All attorneys acting in a legal capacity with respect to the withheld document or communication, and only such attorneys, shall be identified on the privilege log with an asterisk.

    iii.  The description of the subject matter of each document shall describe the nature of the document in a manner that, though not revealing information that is itself privileged, provides sufficiently detailed information to enable the Department to assess the applicability of the privilege claimed.

    iv.  For each document withheld under a claim that it constitutes or contains attorney work product, also state whether your company asserts that the document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based.

    v.  Produce all nonprivileged portions of any responsive document (including nonprivileged or redactable attachments) for which a claim of privilege is asserted, except where the only nonprivileged information in the document has already been produced. Note where any redactions in the document have been made.

    vi.  The privilege log shall be produced in both hard-copy and electronic form, the electronic form of which shall be both searchable and sortable.

c.  Documents sent solely between counsel for your company, including in-house counsel acting solely in a legal capacity, and documents authored by your company's outside counsel that were not directly or indirectly furnished to any third party, such as internal law firm memoranda, may be omitted from the privilege log. However, any attachments to such documents must be included on

4

the privilege log (if a privilege is applicable to such materials), unless such attachments are addressed and sent solely to counsel.

d.  If any portion of any document is responsive to any paragraph or subparagraph in Section III below, then the entire document must be produced, including all supporting, underlying, or explanatory documents and all attached, annexed, or appended documents (this includes file attachments to electronic communications). Documents should be submitted as found in your company's files *(e.g.,* documents that in their original condition were stapled, clipped, or otherwise fastened together, or maintained in separate file folders, shall be produced in such form). Documents should also be produced in the order in which they appear in your company's files and should not be shuffled or otherwise rearranged. If a document contains privileged material, the entire document must be produced, with the privileged material redacted and documented as set forth in Paragraph II.E., above.

e.  If you intend to utilize any de-duplication software or services when collecting or reviewing information that is stored in your company's computer systems or electronic storage media in response to this schedule of documents to be produced, or if your company's computer systems contain or utilize such software, you must contact the attorneys for the government to determine, with the assistance of the appropriate government technical staff, whether and in what manner your company may use such software or services.

f.  Mark each page of each document submitted- whether in hard-copy or electronic format- with corporate identification and consecutive document control numbers. Place all documents produced in hard-copy format in file folders. Mark each file folder with your company's corporate identification, the name of the person whose documents are in the folder, and how the original file was labeled. If your company submits hard copies of electronic documents that have been printed from a common electronic source, such as a central e-mail or document server or a backup disk, such documents must be submitted in file folders that are marked with (1) a description of the enclosed documents' electronic source (e.g., "Documents from Backup Tape No.3 for Email Server XYZ, 3/1 /06 - 3/31 /06"); and (2) the name of each natural person whose electronic documents are contained in that file folder. Where a document is responsive to more than one paragraph or subparagraph of Section III below, your company shall produce it only once. Hard-copy documents shall be submitted in sturdy boxes not larger than 1.5 cubic feet. Number each box and mark each box with corporate identification and the names of the individuals whose files are contained in that box.

g.  Provide a master list showing: (1) the name of each individual from whom responsive documents are submitted; and (2) the corresponding consecutive document control numbers used to identify that person's documents. If the master list exists in electronic form, provide the master list both as a printed hard copy and in electronic form (provided the master list can be produced in a format that allows the Department to use it). The Department representatives will provide a sample master list upon request.

h.  The definition of "document" used in this schedule includes data stored in any electronic form. Your company is required to review such data and determine whether it contains material responsive to this subpoena. In addition, your company should **immediately** take the following steps to ensure that it preserves all types of electronic data from the subpoena period that may be responsive:

   i.  Electronic Data to be Preserved. The following (subparagraphs a.-g.) types of electronic data should be preserved, in accordance with the steps set forth in Paragraphs II.J.2. through 7., below:

      1.  All electronic mail, information about electronic mail (including but not limited to information on message contents, header information, and logs of electronic mail system usage), any attachments, and any other electronic communications, including any data from Instant Messaging programs, Internet Relay Chat systems, or any voicemail programs, containing information responsive to the subpoena;

      2.  All files that contain information from electronic calendars or scheduling programs responsive to the subpoena;

      3.  All user-created files (including but not limited to word processing files, spreadsheets and slide presentations) that contain information responsive to the subpoena;

      4.  All databases (including all records and fields and structural information in such databases) or other data files that contain any information (such as sales, pricing, customer, financial, accounting, and billing information) responsive to the subpoena;

      5.  All logs of activity on computer systems that may have been used to process or to store electronic data containing information responsive to the subpoena;

      6.  All electronic data files created or used by spreadsheet programs that contain information responsive to the subpoena; and

6

7.  All other electronic data containing information that is responsive to the subpoena.

ii.  <u>Online Data Storage: Servers/Mainframes.</u> With regard to your company's servers, mainframes, and any other electronic data storage devices, *do not modify or delete* any electronic data existing as of the date of the subpoena that contain information that meets any of the criteria set forth in Paragraph II.J.l . above, unless a true and correct copy of each such electronic data file has been made and steps have been taken to ensure that this copy will be preserved and accessible for purposes of this grand jury investigation.

iii.  <u>Off-Line Data Storage: Backups, Archives, and Other Removable Media.</u> With regard to all electronic media used for off-line storage, including but not limited to magnetic tapes and cartridges and other media that, at the date of service of this subpoena, contain any electronic data meeting the criteria listed in Paragraph II.J.l., *immediately stop any activity* that may result in the loss of such electronic data, including rotation, destruction, overwriting; or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with your company's computer system, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes, CDs, DVDs, USB thumb drives, and all other media, whether used with personal computers, mainframes, other computers, or other electronic data storage devices, and whether containing  active data, backup data, archived data, or any other electronic data, for your company's computer systems.

iv.  <u>Replacement of Data Storage Devices.</u> Do not dispose of any electronic data storage devices or media that may be replaced due to failure, upgrade, or other reasons if such devices or media may contain electronic data meeting the criteria listed in Paragraph II.J.l above.

v.  <u>Local-User Hard Drives on Personal Computers, Hand-Held Devices.</u> With regard to electronic data meeting the criteria listed in Paragraph II.J.l. above that existed on stand-alone computers (including desktops, laptops, and home computers used to conduct your company's business) and handheld devices (including BlackBerrys and Palm Pilots) as of the date of this subpoena, *do not alter or erase* this electronic data, and do not perform other procedures (such as data compression, disk

defragmentation, optimization routines, or reassignment of hard drives) that may affect this data, unless a true and correct copy has been made of these active files, copies have been made of all directory listings (including system files) for all directories and subdirectories containing those files, and arrangements have been made to preserve the copies during the pendency of this grand jury investigation.

vi. Custom Designed Programs and Utilities. Preserve copies of all application programs and utilities that are used to process electronic data responsive to this subpoena.

vii. Log of System Modifications. Maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in Paragraph II.J.l., regardless of whether these modifications were made by employees, contractors, vendors, or any other third parties.

i. Unless otherwise requested by a Department representative, electronic documents *(e.g.,* email) and data shall be produced in electronic form only. Electronic documents and data shall be produced in a format that allows the Department to access and use them, together with instructions and all other materials necessary to use or interpret the data, including record layouts and data dictionaries. For data submitted electronically, submit a description of the data's source.

j. Before you prepare documents or information for production in electronic form (for example, before you attempt to copy, for your response to this schedule, documents or information from an electronically ·stored source onto a disk or other electronic storage medium), you must contact a Department representative to arrange a meeting or conference call with your company's personnel who are familiar with the electronic files in which the documents or information are stored, to explain to Department representatives the manner in which the documents or information are stored, and the types of information that are available on the electronic source. Department representatives must approve the format and production method for electronic data in advance of the submission by your company of its response to this schedule of documents.

k.  This subpoena requires your company to:

    i.  Appear before the grand jury through an authorized, knowledgeable representative at the time and place set;

    ii.  Produce before the grand jury all documents described in this schedule of documents; and

    iii.  Identify and authenticate all documents so produced.

l.  The representative who appears before the grand jury for your company will be questioned under oath regarding methods of compliance and whether all documents described in this schedule of documents have been produced. The representative making the appearance should be prepared to explain what was done, how, where, when, and by whom, to comply with the demands set forth in this schedule of documents.

m.  Your company, at its sole election, may also comply with the subpoena, in lieu of producing documents before the grand jury, by producing all responsive documents via certified or registered mail, or via equivalent delivery, to the address listed in Paragraph II.Q. below, provided that each of the following prerequisites is met:

    i.  All subpoenaed documents reach the United States on or before the date your company, through its representative, is scheduled to appear before the grand jury (or on or before such other date agreed upon in writing by your company and attorneys for the United States); and

    ii.  The official of your company responsible for complying with this subpoena submits with the subpoenaed documents a sworn statement that:

        1.  States the name and position of each person assisting in the search for the documents;

        2.  Describes all locations searched, including your company's computer system and all removable media;

        3.  Identifies the documents produced by number; and

        4.  Certifies that the documents produced fully comply with the demands of the subpoena, and that your company has withheld no documents, except on grounds of privilege in accordance with Paragraph II.E., above.

n.  Regardless of which production method your company chooses, the grand jury reserves the right to require the official of your company responsible for

9

compliance with this subpoena or any other employee involved in the search to testify about your company's efforts to comply with the subpoena.

o.   No agreement or stipulation by the United States or its representatives, purporting to modify, limit, defer, or otherwise vary this subpoena or schedule of documents will be valid or binding on the United States unless confirmed or acknowledged in writing by the United States, or made of record in open court, by a duly authorized representative thereof.

p.   All communications or inquiries regarding this subpoena and schedule of documents should be addressed to:

Bob Leach, Assistant U.S. Attorney
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone number: (415) 436-7200

Jeff Schenk, Assistant U.S. Attorney
150 Almaden Blvd.
San Jose, CA 95126
Telephone number: (408) 535-5061

## III.   DOCUMENTS TO BE PRODUCED

A.   All documents regarding the financial health, financial status, financial stability, income, debt, or projected income or debt of Theranos, including any final reports, narratives, drafts, edits, comments, or revisions.

B.   All documents regarding fraud, fraudulent reporting, inaccuracies, inconsistencies, or falsification with respect to Theranos blood testing results, including tests for patients, demonstrations, or tests performed for research and development purposes.

C.   All documents regarding assay development reports (in un-redacted form).

D.   All documents known as or created in conjunction with validation reports, including validation reports generating during assay development.

E.   All documents regarding Theranos device capabilities, device-specific assay menus, and the date(s) specific assays were validated and/or operational for Theranos-developed devices.

F.   All documents regarding the purchase or modification of third party blood testing devices, including whether any such modifications should or should not be disclosed to the manufactures of or to service technicians working on third party blood testing devices.

G.   All documents regarding personal expenses incurred by Theranos on behalf of or for the benefit of Elizabeth Holmes or Ramesh "Sunny" Balwani.

H.   All documents regarding the removal of outliers or outlier data during blood testing.

I.   All signed and unsigned versions of contracts or agreements between Theranos and the following entities or institutions:

   a.   United Health
   b.   Johns Hopkins University
   c.   GSK
   d.   Pfizer
   e.   UCSF
   f.   Cleveland Clinic
   g.   GlaxcoSmithKline
   h.   Schering-Plough
   i.   Centocor
   j.   Celegene
   k.   Novartis
   l.   Bristol-Meyers Squibb
   m.   Merck & Co.
   n.   AstraZeneca
   o.   Mayo Clínic
   p.   Stanford University
   q.   Daiichi Sankyo
   r.   Janssen Biotech
   s.   Children's Hospital of Philadelphia
   t.   Cedars-Sinai
   u.   Hospital Corporation of America
   v.   Hospital for Special Surgery
   w.   Select Medical

J.   All documents identifying devices that Theranos used to conduct research for the entities listed in Subpart III I. a. – w.

K.   All documents regarding study design, study protocol, and results related to the research Theranos conducted for the entities listed in Subpart III I. a. – w.

L.   All institutional review board submissions and approvals Theranos submitted or obtained (or submitted or obtained on Theranos's behalf) for the entities listed in Subpart III I. a. – w.

M.   In a July 11, 2017 letter from Wilmer to the DOJ, Mr. Davies stated that, "Accordingly, beginning in 2007, the Company partnered with a number of well-known pharmaceutical companies and research institutions on studies the Company believed would assess the viability of its technology." Please provide all documents supporting this statement, including agreements establishing the "partnership," and

11

documents produced by the pharmaceutical company or research institution regarding the viability of Theranos technology.

N.    All emails to, from, or including Elizabeth Holmes or Sunny Balwani concerning:

    a.  Any topic referenced in Subpart III A. to III L. above;

    b.  assays;

    c.  Theranos devices, including Edison, MiniLab, and any other Theranos-created blood testing or analyzing device.

O.    All text or SMS messages sent or received by cellular phones owned or paid for by Theranos, and used by either Elizabeth Holmes or Sunny Balwani.

P.    All communications, including purchase orders, invoices, and receipts, between Theranos and the following entities:

    a.  Siemens Corporation;

    b.  Beckman Coulter;

    c.  Becton Dickinson;

    d.  BioRad Laboratories;

    e.  DiaSorin Inc.;

    f.  Tosoh USA; and

    g.  EldonCard d/b/a Eldon Biologicals.

## IV.    NOTICE CONCERNING DOCUMENT DESTRUCTION AND OBSTRUCTION OF JUSTICE

**Any person who withholds, alters, deletes, or destroys documents – including electronic documents - demanded by this subpoena, or who removes or transfers such documents to outside the jurisdiction of the United States, may be subject to criminal prosecution for obstruction of justice, contempt of court, or other federal criminal violations. Conviction of any of these offenses may be punishable by substantial fine or imprisonment, or both.**

2016R00024 - 048

## DECLARATION OF CUSTODIAN OF RECORDS

Pursuant to 28 U.S.C. § 1746, I, the undersigned, hereby declare:

My name is _____.

               (Name of Declarant)

       I am a United States citizen, and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this declaration.

       I am in receipt of a United States District Court Grand Jury Subpoena for the Northern District of California, signed by Assistant U.S. Attorney             , requesting specified records of the business named below. Attached hereto are records responsive to the subpoena. Pursuant to Federal Rule of Evidence 902(11) and Federal Rule of Evidence 803(6), I hereby certify that the records attached hereto:

       (1) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

       (2) were kept in the course of the regularly conducted business activity; and

       (3) were made by the regularly conducted business activity as a regular practice.

       I declare under penalty of perjury that the foregoing is true and correct.

       Executed on _____.

                               _____

                               (signature of declarant)

                               _____

                               (name of declarant)

                               _____

                               (name of business/firm)

                               _____

                               (business address)

                               _____

                               _____

2016R00024 - 048

AO 110 (Rev. 06/09) Subpoena to Testify Before Grand Jury (Page 2)

## PROOF OF SERVICE

This subpoena for *(name of individual or organization)*   Theranos, Inc.
was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT B



Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045

**Jeffrey B. Coopersmith**
206-757-8020 tel
206-757-7020 fax

jeffcoopersmith@dwt.com

August 31, 2018

Jeff Schenk
John Bostic
Assistant United States Attorneys
U.S. Attorney's Office, Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113
Jeffrey.B.Schenk@usdoj.gov
John.Bostic@usdoj.gov

Re:     *United States v. Holmes and Balwani*, Case No. cv-18-00258-LHK (N.D. Cal.)

Dear Jeff and John:

We understand that your office has been in contact with counsel for Theranos regarding the additional production of documents in response to a grand jury subpoena issued to the company in 2017.  We understand that the company has recently made arrangements to produce a large number of documents in addition to those produced prior to the indictment, and that there is also a large number of potentially responsive documents that, based on search terms, are likely privileged. We are writing because we are concerned about the government's post-indictment use of the grand jury process, particularly in this case where we understand that the company does not wish to waive its attorney client privilege.

It is well-established that a grand jury has "but two functions—to indict, or in the alternative, to return a 'no-bill.'"  THE UNITED STATES ATTORNEY'S MANUAL ("USAM"), § 9-11.101 (Power and Limitations of Grand Juries-The Functions of a Grand Jury).  The grand jury's subpoena power is thus "limited by its function," *id.* § 9-11.120, and the government "may not use the grand jury for the sole purpose of pretrial discovery."  *In re Grand Jury Proceedings*, 911 F.2d 738 (9th Cir. 1990) (finding that the government abuses the grand jury process by using a grand jury subpoena "to conduct discovery or to prepare the pending indicted cases for trial"); *United States v. Star*, 470 U.S. 1214, 1217 (9th Cir.1972); ("[T]he government should not use the grand jury for the sole purpose of pretrial discovery in cases in which an indictment has already been returned.").

Section 9-11.120 of the USAM further states:

> The grand jury's power, although expansive, is limited by its function toward possible return of an indictment. *Costello v. United States*, 350 U.S. 359, 362 (1956).

4815-5395-9025v.1 0103509-000002

Anchorage
Bellevue
Los Angeles

New York
Portland
San Francisco

Seattle
Shanghai
Washington, D.C.

www.dwt.com

Jeff Schenk
John Bostic
August 31, 2018
Page 2

Accordingly, the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted. *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), *cert. denied sub nom.*, *Hurt v. United States*, 429 U.S. 1062 (1977). Nor can the grand jury be used solely for pre-trial discovery or trial preparation. *United States v. Star*, 470 F.2d 1214 (9th Cir. 1972). After indictment, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant. *In re Grand Jury Subpoena Duces Tecum*, *Dated January 2, 1985*, 767 F.2d 26, 29-30 (2d Cir. 1985); *In re Grand Jury Proceedings*, 586 F.2d 724 (9th Cir. 1978).

Here, we understand that the grand jury subpoena was issued in 2017, long before the grand jury returned an indictment of Ms. Holmes and Mr. Balwani.  Accordingly, by definition any further production pursuant to the subpoena is not tied to the functions of the grand jury—to indict or return a no-bill. The document requests in the subpoena of which we are aware are broad and the subpoena was issued some nine months before indictment, strongly indicating that the subpoena was not issued in connection with any consideration to supersede the indictment.  Moreover, the problematic issues associated with the government's efforts at post-indictment enforcement of the subpoena are compounded by the intrusion on the attorney-client privilege in circumstances where Theranos likely lacks the resources for a document-by-document privilege review of potentially responsive documents.

We think the proper course here is for the government to cease its post-indictment subpoena enforcement efforts.  Thank you for your attention to this matter, and we look forward to hearing from you.

Sincerely,

   /s/ Jeffrey B. Coopersmith

Jeffrey B. Coopersmith
Mark N. Bartlett
Davis Wright Tremaine LLP
Counsel for Ramesh Balwani


cc:    Michael Mugmon
       David Taylor


4815-5395-9025v.1 0103509-000002

# EXHIBIT C

**From:** "Bostic, John (USACAN)" <John.Bostic@usdoj.gov>
**Date:** September 1, 2018 at 1:37:28 PM HST
**To:** "'Mugmon, Michael'" <Michael.Mugmon@wilmerhale.com>
**Cc:** "'Moran, Katie'" <Katie.Moran@wilmerhale.com>, "Schenk, Jeffrey (USACAN)"
<Jeffrey.B.Schenk@usdoj.gov>, "'Davies, Christopher'" <Christopher.Davies@wilmerhale.com>, "'Strickland,
Thomas'" <Thomas.Strickland@wilmerhale.com>, "Leach, Robert (USACAN)" <Robert.Leach@usdoj.gov>
**Subject: RE: Grand Jury Subpoena Investigation #2016R00024 - Theranos, Inc.**

Michael,

Thanks for your email updating us on Theranos's intentions regarding the materials still outstanding under the
grand jury subpoena. While I understand your desire to minimize the burden on your client, I think the position
outlined in your email is the wrong one for two important reasons.

First, Mr. Balwani's counsel is incorrect that the government is making improper use of the grand jury
subpoena. A subpoena does not become unenforceable simply because an indictment has come down. Even
after indictment, there is "no bar to investigation of other areas of criminal liability for which the defendants or
co-defendants may be accountable." *In re Grand Jury Proceedings*, 586 F.2d 724, 725 (9th Cir. 1978). "Indeed,
the duties of the grand jury are not performed until every clue and all witnesses are examined in order to charge
the proper person with the appropriate crime." *Id.* It is thus a recognized rule that "the return of an indictment
does not provide any legal basis for a subpoenaed witness to refuse to comply with the grand jury subpoena so
long as a lawful grand jury proceeding continues." *In re Grand Jury Proceedings*, 632 F.2d 1033, 1041 (3d Cir.
1980) (collecting cases). This reasoning applies with even greater force where the government served its
subpoena months before the indictment but accommodated the recipient's request to respond by rolling
production.

Second, please remember that the obligations imposed by the pending subpoena are solely the responsibility of
Theranos. There are obvious reasons why Mr. Balwani's lawyers might wish to limit the grand jury's evidence
collection. The company, however, must make its own decision about whether to comply with the
subpoena. Because the pending subpoena is a matter between the government and Theranos itself, it is
inappropriate for the company to condition its compliance on the government reaching a side agreement with a
third party. Therefore, rather than negotiating this issue with Mr. Balwani's lawyers, we intend to seek relief
from the court. We are still open to a negotiated resolution, but we're conscious of the fact that the company's
dwindling resources leave us with limited time. Please contact me by close of business on September 4 if you
wish to avoid motion practice.

Regards,
John

1

# EXHIBIT D

**From:** David Taylor
**Sent:** Tuesday, September 4, 2018 6:42 PM
**Subject:** Theranos Company News

September 4, 2018

Dear Theranos Stockholders,

I write with difficult news about the future of the Company.

On April 10, 2018, we updated you regarding our imminent cash shortage and the steps we were taking to preserve cash and, if possible, bring additional capital into the Company. Since then, we have approached shareholders and others about the possibility of further or new investment in the Company and engaged an investment bank, Jefferies, to pursue a sale transaction to liquidate our assets. All of these efforts have been undertaken to maximize the value of the company for the benefit of our stakeholders.

Over the course of four months, Jefferies reached out on our behalf to over 80 potential sale counter-parties—from large healthcare companies to niche, IP-focused buyers—and we executed NDAs with 17 of those parties. We assisted those parties with diligence and had numerous follow-on conversations.

Unfortunately, none of those leads has materialized into a transaction. We are now out of time. Despite our careful cash management, we are in default under the Fortress credit facility. Fortress has the legal right to foreclose upon, and to sell or take ownership of, all of the Company's assets, including the Company's intellectual property (which is owned by a "special purpose subsidiary" of the Company). In addition to Fortress, we owe at least $60 million to our unsecured creditors.

In an effort to make the best of our limited options, we have begun negotiating a settlement transaction with Fortress, under which Fortress would take ownership of the Company's interests in the special purpose subsidiary and the intellectual property therein, but relinquish its rights in the Company's remaining cash, subject to certain conditions. This would allow the Company to distribute its remaining cash (net of fees and expenses)—estimated to be approximately $5 million—to its unsecured creditors, rather than to Fortress. We believe that this result would benefit the Company's creditors more than any other achievable one, including a bankruptcy, in which we believe no material assets would be available for distribution to creditors.

Along with the Fortress settlement, the Company intends to enter into an assignment for the benefit of creditors ("Assignment") under California law, pursuant to which all assets of the Company other than its intellectual property—principally, the Company's remaining cash—would be assigned to a third-party assignee in trust for the Company's creditors. We expect that the full Assignment process may take approximately six to twelve months. If the Assignment is completed and the conditions to distribution are met—primarily, that the Company and its stakeholders do not assert claims against Fortress or the Theranos special purpose subsidiary—distributions of the Company's remaining cash will be made to unsecured creditors at that time. Because the Company's cash is not nearly sufficient to pay all of its creditors in full, there will be no distributions to shareholders. After the Assignment, the Company intends to file a certificate of dissolution under Delaware law.

On our current path, we intend later this week to seek the necessary Board and shareholder consents for the Fortress settlement, the Assignment, and the corporate dissolution, and, assuming consent, to proceed with those actions beginning next Monday, September 10.  Following these actions, the Company will send a letter to stockholders confirming that there will not be a liquidating distribution to stockholders, and providing a copy of the certificate of dissolution, for use for tax loss purposes.

Please do not hesitate to contact us with questions.  And thank you, again, for your patience and steadfast support.

THERANOS, INC.

David Taylor
CEO and General Counsel

===================================
This electronic transmission, and any files transmitted with it, may contain information that is privileged, proprietary, trade secret or confidential or otherwise protected. If you are not the intended recipient, any use, disclosure, copying, or distribution of the contents of this e-mail or its attachments, in whole or in part, is prohibited. If you have received this email in error, please notify the sender by return e-mail and delete all copies from your system. Unless explicitly and conspicuously designated as "E-Contract Intended," this e-mail does not constitute a contract offer, a contract amendment, an acceptance of a contract offer, or a memorialization of an existing or prospective contract, and no party is entitled to rely thereon. Please note that any views or opinions contained in this email are solely those of the author and do not necessarily represent those of Theranos, Inc. Finally, before opening or using attachments, the recipient should check for the presence of viruses; Theranos, Inc. accepts no liability for any damage caused by any virus transmitted by this email.
Theranos, Inc., 7373 Gateway Boulevard, Newark, CA 94560
650-838-9292 www.theranos.com

JEFFREY B. COOPERSMITH (CA State Bar No. 252819)
KELLY M. GORTON (CA State Bar No. 300978)
BENJAMIN J. BYER (Admitted *Pro Hac Vice*)
AMANDA MCDOWELL (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500 │Facsimile:  (415) 276-6599
Email:  jeffcoopersmith@dwt.com; kellygorton@dwt.com
          benbyer@dwt.com; amandamcdowell@dwt.com

Attorneys for Defendant RAMESH BALWANI

JOHN D. CLINE (CA State Bar No. 237759)
One Embarcadero Center, Suite 500
San Francisco, CA  94111
Telephone:  (415) 662-2260 │Facsimile:  (415) 662-2263
Email:  cline@johndclinelaw.com

LANCE A. WADE (Admitted *Pro Hac Vice*)
KEVIN M. DOWNEY (Admitted *Pro Hac Vice*)
MICHELLE CHEN (Admitted *Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Telephone:  (202) 434-5000 │Facsimile:  (202) 434-5029
Email:   LWade@wc.com; KDowney@wc.com; MChen@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br>ELIZABETH A. HOLMES and RAMESH<br>"SUNNY" BALWANI,<br><br>            Defendants. | Case No. CR-18-00258-EJD<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR ORDER DIRECTING THE GOVERNMENT TO CEASE AND DESIST POST-INDICTMENT USE OF THE GRAND JURY PROCESS TO OBTAIN DISCOVERY**<br><br>Hon. Edward J. Davila |

DAVIS WRIGHT TREMAINE LLP

This CAUSE having come before the Court upon Defendants' Motion for an Order Directing the Government to Cease and Desist its Post-Indictment Use of the Grand Jury Process to Obtain Discovery.  After due consideration of the Defendants' motion and the Government's response,

IT IS HEREBY ORDERED that Defendants' motion is GRANTED.  The government is ORDERED to cease and desist its efforts to obtain documents pursuant to the grand jury subpoena issued to Theranos, Inc. on September 6, 2017.

**IT IS SO ORDERED.**

Dated _____          _____

EDWARD J. DAVILA
United States District Court Judge

[PROPOSED] ORDER GRANTING MOTION FOR CEASE AND DESIST
Case No. 5:18-cr-00258-EJD