# Exhibit 4



# Food and Drug Administration
OFFICE OF CRIMINAL INVESTIGATIONS
MEMORANDUM OF INTERVIEW

| | |
|---|---|
| CASE NUMBER: | 2016-MWM-709-0576 |
| CASE TITLE: | THERANOS, INC. |
| DOCUMENT NUMBER: | 261269 |
| PERSON INTERVIEWED: | Gary Yamamoto, CMS |
| PLACE OF INTERVIEW: | USAO, San Francisco, CA |
| DATE OF INTERVIEW: | 12/12/2017 |
| TIME OF INTERVIEW: | 0900 PST |
| INTERVIEWED BY: | SA George Scavdis |
| OTHER PERSONS PRESENT: | See below. |

On 12/12/2017, the case agent interviewed Gary Yamamoto, State Oversight and CLIA Branch, Division of Survey and Certification, Centers for Medicare & Medicaid Services (CMS), regarding a survey he conducted of Theranos, Inc. in 2015. Also present during the interview were the following: AUSA Jeffrey Schenk, United States Attorney's Office for the Northern District of California (USAO/NDC); AUSA John Bostic, USAO/NDC; Cameron Purves, Federal Bureau of Investigation; Christopher McCollow, U.S. Postal Inspection Service; Mark Katz, Securities and Exchange Commission; and Melissa Manson, Health and Human Services, Office of the General Counsel.

Yamamoto participated in a survey of Theranos's California laboratory in 2015, and he worked with Sarah Bennett (Survey and Certification Group, Center for Clinical Standards and Quality, CMS) on a survey of Theranos's California and Arizona laboratories in 2016.





In 2015, a complaint was lodged with the State of New York regarding Theranos's proficiency testing. New York said that they forwarded the complaint to CMS, but Yamamoto's office never received the complaint. He's since seen the complaint, but he didn't have it prior to the survey. He was, however, aware of the complaint's existence prior to the survey. In 2015 there were a series of articles written about Theranos in the press, and by then a second certification survey had been performed by the State that was not remarkable in any way. By the time of the 2015 survey that Bennett and Yamamoto conducted, Theranos had already come up for their third certification survey. In addition to the complaint in New York, CMS had received a complaint from a Theranos employee regarding QC on other FDA approved systems Theranos was using in its laboratories and regarding issues with their proprietary system and issues with the competency of Theranos's personnel. Yamamoto believes that the complaint in New York was from a man, and the second complaint from the employee was from a woman. He also believes that the New York complaint was related to proficiency testing, whereas the second complaint by the employee had to do with quality issues at Theranos. It was the combination of this complaint, the articles written in the media, and the requirement that Theranos's laboratory be certified every two years that led CMS to send Yamamoto and Bennett to Theranos to inspect their laboratory in Newark, CA. The survey was both a certification survey and a complaint survey.

Bennett and Yamamoto did the 2015 survey as a team. He had not previously done a joint survey with someone from CMS's Central Office. It was unusual for a person from CMS's Central Office to come out and do a survey with him. A laboratory is required to do QC, meaning that the laboratory needs to run QC materials for every day patient test results are reported, and those quality control levels should have a certain test result. The laboratory must hit those ranges to ensure accuracy of the test system. With Theranos, there were issues of patient test results that were out of control (OOC) yet still being reported; this is something that poor laboratories do all the time. Good laboratories don't do that. Good laboratories make sure their QC is within range, and poor laboratories report results when they fail QC. There were issues with calibration and maintenance as well.

