1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

     UNITED STATES OF AMERICA,          )  CR-18-00258-EJD
6                                       )
                    PLAINTIFF,          )
7                                       )  SAN JOSE, CALIFORNIA
              VS.                       )
8                                       )  NOVEMBER 4, 2019
     ELIZABETH A. HOLMES AND RAMESH     )
9    SUNNY BALWANI,                     )  PAGES 1 - 92
                                        )
10                  DEFENDANTS.         )
     _____)
11

12
                    TRANSCRIPT OF PROCEEDINGS
13            BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                            BY:  JOHN C. BOSTIC
17                               JEFFREY B. SCHENK
                            150 ALMADEN BOULEVARD, SUITE 900
18                          SAN JOSE, CALIFORNIA 95113

19                          BY:  ROBERT S. LEACH
                            1301 CLAY STREET, SUITE 340S
20                          OAKLAND, CALIFORNIA 94612

21        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

     OFFICIAL COURT REPORTER:
23                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        A P P E A R A N C E S:  (CONT'D)
 2

 3     FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE A. WADE
                                    KATHERINE A. TREFZ
 5                                  MICHELLE CHEN
                               725 TWELFTH STREET, N.W.
 6                             WASHINGTON, D.C. 20005

 7

 8     FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                               BY:  JEFFREY COOPERSMITH
                                    WALTER F. BROWN, JR.
 9                                  RANDALL LUSKEY
                                    AMANDA MCDOWELL
10                                  STEPHEN CAZARES
                               THE ORRICK BUILDING
11                             405 HOWARD STREET
                               SAN FRANCISCO, CALIFORNIA 94105
12
       ALSO PRESENT:           U.S. ATTORNEY'S OFFICE
13                             CIVIL DIVISION
                               BY:  ALLISON DAW
14                             150 ALMADEN BOULEVARD, SUITE 900
                               SAN JOSE, CALIFORNIA 95113
15

16     TELEPHONICALLY          FOOD AND DRUG ADMINISTRATION
                               BY:  MARCI NORTON
17                                  JACKLYN MARTINEZ-RESLY

18
                               DEPARTMENT OF HEALTH HUMAN
19                             SERVICES
                               BY:  LINDSAY TURNER
20

21

22

23

24

25
```

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    NOVEMBER 4, 2019 |
| | 2 | P R O C E E D I N G S |
| 10:14AM | 3 | (COURT CONVENED AT 10:14 A.M.) |
| 10:14AM | 4 | THE COURT:  THANK YOU FOR YOUR COURTESY. |
| 10:14AM | 5 | LET'S CALL OUR MORNING CALENDAR.  THIS IS 18-258, UNITED |
| 10:15AM | 6 | STATES VERSUS HOLMES AND BALWANI. |
| 10:15AM | 7 | WHY DON'T I CAPTURE APPEARANCES, PLEASE. |
| 10:15AM | 8 | MR. BOSTIC:  GOOD MORNING, YOUR HONOR.  JOHN BOSTIC, |
| 10:15AM | 9 | JEFF SCHENK, AND BOB LEACH FOR THE UNITED STATES. |
| 10:15AM | 10 | MR. LEACH:  GOOD MORNING, YOUR HONOR. |
| 10:15AM | 11 | THE COURT:  GOOD MORNING. |
| 10:15AM | 12 | MS. DAW:  ALLISON DAW, ASSISTANT UNITED STATES |
| 10:15AM | 13 | ATTORNEY FOR THE CIVIL DIVISION FOR THE FDA AND CMS. |
| 10:15AM | 14 | THE COURT:  THANK YOU.  THANK YOU FOR BEING HERE. |
| 10:15AM | 15 | MS. DAW:  MY PLEASURE. |
| 10:15AM | 16 | MR. WADE:  GOOD MORNING.  LANCE WADE.  WITH ME ARE |
| 10:15AM | 17 | MY COLLEAGUES, KEVIN DOWNEY, KATHERINE TREFZ, AND MICHELLE CHEN |
| 10:15AM | 18 | ON BEHALF OF MS. HOLMES WHO IS PRESENT. |
| 10:15AM | 19 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:15AM | 20 | MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR. |
| 10:15AM | 21 | JEFF COOPERSMITH FOR MR. BALWANI.  MY COLLEAGUES, RANDY |
| 10:15AM | 22 | LUSKEY, AMANDA MCDOWELL, WALT BROWN, AND STEVE CAZARES ARE |
| 10:15AM | 23 | PRESENT AS WELL AS IS MR. BALWANI. |
| 10:15AM | 24 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:15AM | 25 | I THINK WE HAVE SOME INDIVIDUALS TELEPHONICALLY APPEARING, |

| | | |
|---|---|---|
| 10:15AM | 1 | MS. KRATZMANN? |
| 10:15AM | 2 | THE CLERK:  YES, YOUR HONOR. |
| 10:15AM | 3 | THE COURT:  MAY I CAPTURE THOSE APPEARANCES, PLEASE. |
| 10:15AM | 4 | LET'S START -- IS MS. TURNER ON THE LINE? |
| 10:16AM | 5 | MS. TURNER:  YES, YOUR HONOR.  YES, I AM, YOUR |
| 10:16AM | 6 | HONOR.  LINDSAY TURNER FROM HHS ON BEHALF OF CMS. |
| 10:16AM | 7 | THE COURT:  THANK YOU. |
| 10:16AM | 8 | WHO IS ON THE LINE REGARDING THE FDA? |
| 10:16AM | 9 | MS. MARTINEZ-RESLY:  GOOD MORNING, YOUR HONOR.  THIS |
| 10:16AM | 10 | IS JACKLYN MARTINEZ-RESLY AND MARCI NORTON FOR THE FDA. |
| 10:16AM | 11 | THE COURT:  GOOD MORNING TO EACH OF YOU, AND THANK |
| 10:16AM | 12 | YOU FOR JOINING US TELEPHONICALLY.  I THINK YOUR PRESENCE WILL |
| 10:16AM | 13 | BE HELPFUL AS WE DISCUSS SOME OF THE ISSUES THAT REMAIN IN THIS |
| 10:16AM | 14 | CASE. |
| 10:16AM | 15 | LET ME START OFF BY SAYING I HAVE HAD BENEFIT OF |
| 10:16AM | 16 | DOCUMENT 170, WHICH IS YOUR JOINT STATEMENT, AND YOU'VE TOLD ME |
| 10:16AM | 17 | A LITTLE BIT ABOUT THE PROGRESS THAT WE'VE HAD. |
| 10:16AM | 18 | LET ME -- I HAVE SOME THOUGHTS, AND, CANDIDLY, I WAS |
| 10:16AM | 19 | THINKING THAT MAYBE I SHOULD JUST COME OUT AND TELL YOU WHAT |
| 10:16AM | 20 | I'M THINKING NOW TO DO RATHER THAN -- AND I'M NOT SUGGESTING I |
| 10:16AM | 21 | DON'T WANT TO HEAR FROM YOU BECAUSE I ALWAYS LEARN FROM YOU |
| 10:17AM | 22 | WHEN WE HAVE THESE HEARINGS. |
| 10:17AM | 23 | I AM, FIRST OF ALL, ENCOURAGED THAT THE PROTOCOL THAT THIS |
| 10:17AM | 24 | COURT HAS TAKEN HAS PRODUCED SOME OF THE EVIDENCE AND DOCUMENTS |
| 10:17AM | 25 | THAT THE DEFENSE HAS REQUIRED. |

10:17AM  1        WE HAVE HAD, HAVEN'T WE, THIS LONG CONVERSATION FROM THE

10:17AM  2   DEFENSE PERSPECTIVE AS TO WHETHER OR NOT THE GOVERNMENT HAS

10:17AM  3   KNOWLEDGE, ACCESS, CONTROL, ET CETERA, OF SOME OF THIS

10:17AM  4   INFORMATION.

10:17AM  5        I ENGAGED A PROTOCOL, AND THIS IS FOR THE BENEFIT OF OUR

10:17AM  6   COLLEAGUES WHO ARE ON THE PHONE HERE.  I ENCOURAGED A PROTOCOL

10:17AM  7   THAT I THOUGHT WOULD PERMIT MORE DIRECT, IF YOU WILL, ACCESS TO

10:17AM  8   THE INFORMATION BECAUSE WE HAD THE AGENCY'S ATTENTION AND THEY

10:17AM  9   WERE RESPONDING.

10:17AM 10        THAT MORPHED, A LITTLE BIT, IF I COULD USE THAT CRUDE

10:17AM 11   WORD, INTO ASSISTING, THE GOVERNMENT ASSISTING THOSE AGENCIES

10:17AM 12   IN PRODUCING THE INFORMATION.

10:17AM 13        WE KNOW THAT, FOR EXAMPLE, I THINK THE GOVERNMENT'S --

10:18AM 14   EXCUSE ME -- DEFENSE MOTION WAS FILED IN APRIL OF THIS YEAR I

10:18AM 15   THINK IT WAS AND VERY CLOSE TO THE START OF THE BASEBALL

10:18AM 16   SEASON, AND NOW WE'RE POST WORLD SERIES.

10:18AM 17        (LAUGHTER.)

10:18AM 18             MR. WADE:  DULY NOTED, YOUR HONOR, THE WORLD SERIES.

10:18AM 19             THE COURT:  YES, I APPRECIATE THAT.  I WAS IN D C.

10:18AM 20   I COULDN'T GET TO THE PARADE BECAUSE OF FLIGHT OBLIGATIONS, BUT

10:18AM 21   I WAS ABLE TO DRIVE AROUND WITH MY DAUGHTER, AND WE OBSERVED A

10:18AM 22   LOT OF RED AND A LOT OF PEOPLE MOVING TOWARDS THE POTOMAC IN A

10:18AM 23   CERTAIN AREA.  SO WE VICARIOUSLY ENJOYED THE CELEBRATION.

10:18AM 24        CONGRATULATIONS TO THOSE OF YOU FROM THE NATION'S

10:18AM 25   CAPITAL.

| | | |
|---|---|---|
| 10:18AM | 1 | MR. WADE:  THANK YOU. |
| 10:18AM | 2 | (LAUGHTER.) |
| 10:18AM | 3 | THE COURT:  YOU'RE WELCOME.  IT'S BEEN A FEW DECADES |
| 10:18AM | 4 | SINCE YOU'VE BEEN ABLE TO ENJOY THAT CELEBRATION, AND |
| 10:18AM | 5 | WALTER JOHNSON IS RISING I'M SURE.  SO CONGRATULATIONS FOR |
| 10:18AM | 6 | THAT.  THAT'S WHY YOU'RE HERE SO HAPPY.  I'M GLAD YOU WERE ABLE |
| 10:19AM | 7 | TO GET TO THE PARADE.  I'M HOPE YOU DID. |
| 10:19AM | 8 | MR. WADE:  I DID, YOUR HONOR. |
| 10:19AM | 9 | THE COURT:  GOOD.  GOOD.  WELL DONE. |
| 10:19AM | 10 | BUT WE WENT THROUGH THAT COLLABORATIVE, IF YOU WILL, |
| 10:19AM | 11 | APPROACH. |
| 10:19AM | 12 | I THINK FROM MY PERSPECTIVE IT DID ALLOW FOR THE |
| 10:19AM | 13 | PRODUCTION OF DOCUMENTS.  WE KNOW IN SOME OF THE EARLIER |
| 10:19AM | 14 | STATEMENTS FROM THE AGENCIES THAT THE TERM "6 MONTHS," WAS |
| 10:19AM | 15 | INDICATED IT WOULD TAKE THAT LONG TO PRODUCE THE DOCUMENTS. |
| 10:19AM | 16 | THE GOVERNMENT HERE IN THIS COURTHOUSE DISAGREED WITH |
| 10:19AM | 17 | THAT.  THEY SAID THAT'S TOO LONG.  I THINK WE ALL WERE IN |
| 10:19AM | 18 | AGREEMENT THAT THAT WAS TOO LONG, AND NONETHELESS, WE'RE HERE |
| 10:19AM | 19 | GETTING CLOSE TO THAT TIME PERIOD. |
| 10:19AM | 20 | I THINK WHAT WE CAN DO, THOUGH, WITH YOUR HELP, WITH YOUR |
| 10:19AM | 21 | STATEMENTS AND WHERE THINGS ARE, I KNOW THAT DOCUMENTS, MANY OF |
| 10:19AM | 22 | THEM, HAVE BEEN PRODUCED.  THE DEFENSE SUGGESTS THAT THEY NEED |
| 10:19AM | 23 | MORE AND PERHAPS DIFFERENT PARAMETERS TO COMPLETE THIS PROCESS. |
| 10:20AM | 24 | LET ME JUST SAY THAT I WANT THIS PROCESS TO BE COMPLETE |
| 10:20AM | 25 | BEFORE THE END OF THIS YEAR, AND I INTEND TO ISSUE AN ORDER |

```
10:20AM   1        THAT ORDERS THAT.

10:20AM   2            MY THOUGHT ABOUT -- LET ME JUST DIGRESS FOR A MOMENT TO

10:20AM   3        THINK ABOUT THE GOVERNMENT'S POSITION AS TO WHETHER OR NOT THEY

10:20AM   4        HAVE ACCESS, ET CETERA.

10:20AM   5            I STEP BACK AND I LOOK AT THE FDA AND CMS AND THEIR

10:20AM   6        INVOLVEMENT HERE, AND LET ME JUST ASK THIS QUESTION OF

10:20AM   7        MS. TURNER, OF MS. NORTON, AND OF MS. MARTINEZ-RESLY.  AND

10:20AM   8        THANK YOU, COUNSEL, THANK YOU FOR BEING ON THE LINE.  IT'S VERY

10:20AM   9        HELPFUL TO HAVE ACCESS TO THE LAWYERS WHO REPRESENT THESE

10:20AM  10        AGENCIES.

10:20AM  11            AS I UNDERSTAND IT THE GOVERNMENT, THAT IS THE

10:20AM  12        PROSECUTION, HAVE BEEN ASSISTING YOU IN CONDUIT, IF YOU WILL,

10:20AM  13        TO PROVIDE INFORMATION FOR THE PRODUCTION OF THE DISCOVERY.

10:21AM  14        THEY'VE ALLOWED YOU TO USE THE -- WHAT IS THE ACRONYM FOR THE

10:21AM  15        DATABASE?

10:21AM  16                MS. DAW:  LTSC, YOUR HONOR.

10:21AM  17                THE COURT:  YES, YES, TO DOWNLOAD THE INFORMATION TO

10:21AM  18        ASSIST.

10:21AM  19            AND MY SENSE IS THAT THAT HAS BEEN OF GREAT ASSISTANCE TO

10:21AM  20        YOU, MS. TURNER?

10:21AM  21                MS. TURNER:  YES, THAT'S RIGHT, YOUR HONOR.  IT'S

10:21AM  22        BEEN OF GREAT ASSISTANCE TO BE ABLE TO USE THAT LTSC DATABASE,

10:21AM  23        AND OTHERWISE I'M NOT SURE HOW THE AGENCY WOULD HAVE BEEN ABLE

10:21AM  24        TO PRODUCE THESE DOCUMENTS AND REVIEW THEM.

10:21AM  25                THE COURT:  THANK YOU.
```

10:21AM   1         AND, MS. NORTON AND MS. MARTINEZ-RESLY, MY SENSE IS THAT

10:21AM   2    YOU WOULD CONCUR IN THAT OBSERVATION?

10:21AM   3         MS. MARTINEZ-RESLY:  YOUR HONOR, WE HAVE BEEN --

10:21AM   4         THE COURT:  THIS IS MS. MARTINEZ?

10:21AM   5         MS. MARTINEZ-RESLY:  YES, I APOLOGIZE.  THIS IS

10:21AM   6    MS. MARTINEZ-RESLY.

10:21AM   7         WE HAVE BEEN KEEPING THE PROSECUTION ABREAST OF THE STATUS

10:21AM   8    OF OUR REVIEW AND PRODUCTION OF DOCUMENTS.

10:22AM   9         HOWEVER, WE HAVE BEEN USING THE DEPARTMENT OF HEALTH AND

10:22AM  10    HUMAN SERVICES'S DOCUMENT REVIEW PLATFORM BECAUSE WE HAVE

10:22AM  11    SPECIFIC LIMITATIONS ON THE KIND OF INFORMATION THAT WE'RE ABLE

10:22AM  12    TO PROVIDE OUTSIDE OF THE DEPARTMENT BY REGULATION AND BY

10:22AM  13    STATUTE INCLUDING TO THE DEPARTMENT OF JUSTICE.

10:22AM  14         SO THAT'S WHY WE'VE BEEN USING THE DEPARTMENT OF HEALTH

10:22AM  15    AND HUMAN SERVICES'S DOCUMENT REVIEW PLATFORM.

10:22AM  16         THE COURT:  I SEE.  WELL, THANK YOU FOR THAT.

10:22AM  17         LET ME ASK, HAS THE GOVERNMENT THEN -- AND I'M NOT ASKING

10:22AM  18    YOU TO GRADE THEM BUT JUST IN GENERAL -- HAS THE GOVERNMENT,

10:22AM  19    THE PROSECUTION, BEEN HELPFUL IN THEIR COMMUNICATION WITH YOU

10:22AM  20    AND YOUR COMMUNICATION WITH THEM IN DISCUSSING THE VARIOUS

10:22AM  21    TYPES OF PRODUCTION AND, PARDON ME, THE EVIDENCE, THE

10:22AM  22    DOCUMENTS, AND THEIR PRODUCTION?  HAS THAT BEEN HELPFUL?

10:22AM  23         MS. MARTINEZ-RESLY:  YES.  THIS IS

10:23AM  24    MS. MARTINEZ-RESLY AGAIN.

10:23AM  25         YES, THE GOVERNMENT HAS BEEN RESPONSIVE AND CLEAR IN

| | | |
|---|---|---|
| 10:23AM | 1 | COMMUNICATING WHAT THE REQUESTS ENTAIL.  SO, YES, I WOULD AGREE |
| 10:23AM | 2 | WITH THAT STATEMENT. |
| 10:23AM | 3 | THE COURT:  ALL RIGHT.  AND MY SENSE IS THAT |
| 10:23AM | 4 | CONTINUED COOPERATION AND COLLABORATION WITH THEM WOULD ASSIST |
| 10:23AM | 5 | YOU GOING FORWARD? |
| 10:23AM | 6 | MS. MARTINEZ-RESLY:  YES, THAT IS CORRECT. |
| 10:23AM | 7 | THE COURT:  OKAY.  THERE'S BEEN NO OBJECTION TO A |
| 10:23AM | 8 | LEADING QUESTION YET BUT --  SO LET ME JUST ASK, MS. TURNER, |
| 10:23AM | 9 | MS. NORTON, AND MS. MARTINEZ-RESLY, ARE YOU PREPARED NOW TO |
| 10:23AM | 10 | CONTINUE TO PROVIDE THIS ASSISTANCE AND WORK COLLABORATIVELY |
| 10:23AM | 11 | WITH THE PROSECUTION HERE IN THIS ENDEAVOR? |
| 10:23AM | 12 | MS. MARTINEZ-RESLY:  THIS IS MS. MARTINEZ-RESLY. |
| 10:23AM | 13 | YES, THE FDA IS PREPARED TO CONTINUE TO DO THAT. |
| 10:23AM | 14 | THE COURT:  ALL RIGHT. |
| 10:23AM | 15 | MS. TURNER:  YES, THIS IS MS. TURNER. |
| 10:23AM | 16 | AND CMS IS PREPARED TO DO THAT AS WELL. |
| 10:23AM | 17 | THE COURT:  WELL, THANK YOU VERY MUCH. |
| 10:24AM | 18 | DOES THAT INCLUDE THEN PROVIDING THE PROSECUTION HERE |
| 10:24AM | 19 | ACCESS TO INFORMATION THAT YOU INTEND TO PROVIDE AND THAT YOU |
| 10:24AM | 20 | PERHAPS -- INCLUDING INFORMATION THAT YOU WOULD DETERMINE NOT |
| 10:24AM | 21 | TO PROVIDE?  WOULD YOU INCLUDE THE GOVERNMENT IN THOSE |
| 10:24AM | 22 | DISCUSSIONS? |
| 10:24AM | 23 | MS. NORTON:  THIS IS MS. NORTON, YOUR HONOR. |
| 10:24AM | 24 | NO, WE WOULD NOT BE PROVIDING THE PROSECUTION WITH ANY |
| 10:24AM | 25 | DOCUMENTS THAT WE ARE NOT ALSO PROVIDING TO THE DEFENDANTS. |

10:24AM  1                    THE COURT:  OKAY.

10:24AM  2                    MS. TURNER:  THIS IS MS. TURNER.

10:24AM  3          THE SAME FOR CMS AS WELL.

10:24AM  4                    THE COURT:  AND THAT IS BECAUSE, IF YOU COULD JUST

10:24AM  5      TELL ME?

10:24AM  6                    MS. NORTON:  WELL, THIS IS MS. NORTON.

10:24AM  7          THE FDA HAS A GROUP OF PEOPLE WHO REVIEW DOCUMENTS FOR

10:24AM  8      RESPONSIVENESS AND FOR PRODUCTION AND FOR PRIVILEGE.

10:24AM  9          WE HAVE SEVERAL, AS MS. MARTINEZ-RESLY MENTIONED,

10:25AM  10     STATUTORY PROHIBITIONS ON THE PRODUCTION OF CONFIDENTIAL

10:25AM  11     COMMERCIAL INFORMATION AND TRADE SECRET INFORMATION OF THIRD

10:25AM  12     PARTIES OTHER THAN THERANOS BECAUSE HERE WE HAVE A WAIVER FROM

10:25AM  13     THE THERANOS ASSIGNEE PERMITTING US TO PRODUCE THERANOS'S

10:25AM  14     CONFIDENTIAL INFORMATION IN THE CONTEXT OF THIS LITIGATION.

10:25AM  15         BUT WE HAVE TO REVIEW THE DOCUMENTS BEFORE THEY CAN BE

10:25AM  16     PRODUCED TO ANYBODY TO MAKE SURE, YOU KNOW, FIRST, THAT THEY

10:25AM  17     ARE RESPONSIVE, BUT IF THEY'RE NOT RESPONSIVE WE WOULDN'T BE

10:25AM  18     TURNING THEM OVER TO ANY PARTY; AND, SECOND, TO MAKE SURE THAT

10:25AM  19     THERE IS NOT INFORMATION IN THE DOCUMENTS THAT WERE PROHIBITED

10:25AM  20     BY LAW FROM PRODUCING, OR THAT THEY ARE SUBJECT TO A PRIVILEGE

10:25AM  21     THAT THE AGENCY HAS NOT WAIVED.  THOSE WOULD ALSO HAVE TO BE

10:25AM  22     REDACTED BEFORE THEY WERE PRODUCED.

10:25AM  23         SO WHAT THE FDA IS DOING IS THAT IT'S REVIEWING THE

10:25AM  24     DOCUMENTS INHOUSE, AND THEN IF THE DOCUMENT IS RESPONSIVE AND

10:25AM  25     NOT PRIVILEGED, IT'S BEING PRODUCED TO THE PARTIES.

10:26AM 1          THE COURT:  ALL RIGHT.  THANK YOU.

10:26AM 2          MS. TURNER:  THIS IS MS. TURNER FOR CMS.

10:26AM 3      WE ARE REVIEWING THE DOCUMENTS IN HOUSE FOR ATTORNEY

10:26AM 4  CLIENT AND WORK PRODUCT PRIVILEGES, AND ALSO WE WILL BE

10:26AM 5  SPOT-CHECKING THE DOCUMENTS FOR SOME INFORMATION THAT IS

10:26AM 6  DELIVERED AND THAT DOESN'T HAVE ANYTHING TO DO WITH THERANOS.

10:26AM 7          THE COURT:  OKAY.  AND LET ME JUST SUGGEST SOMETHING

10:26AM 8  TO YOU.  I'M CERTAIN IN YOUR CAREERS THAT YOU HAVE HAD

10:26AM 9  SITUATIONS WHERE YOUR AGENCIES HAVE BEEN INVOLVED IN CRIMINAL

10:26AM 10  CASES, AND SO YOU HAVE SOME AFFINITY AND SOME KNOWLEDGE OF

10:26AM 11  POTENTIAL, I'LL USE THE WORD, TENSION THAT SOMETIMES CAN ARISE

10:26AM 12  BETWEEN A CIVIL CASE, A CRIMINAL CASE, AND THE RESPONSIBILITIES

10:26AM 13  THAT -- AND OBLIGATIONS THAT PARTIES HAVE IN THOSE CASES.

10:26AM 14      I KNOW YOU HAVE FAMILIARITY WITH THOSE, MS. TURNER,

10:27AM 15  MS. NORTON, AND MS. MARTINEZ-RESLY?

10:27AM 16          MS. MARTINEZ-RESLY:  YES, YOUR HONOR.

10:27AM 17          MS. TURNER:  YES, YOUR HONOR.

10:27AM 18          THE COURT:  ALL RIGHT.  THANK YOU.

10:27AM 19      AND MY SENSE ALSO IS THAT IN THOSE CRIMINAL CASES WHERE

10:27AM 20  THERE IS SOME TENSION BETWEEN CIVIL AND CRIMINAL OBLIGATIONS

10:27AM 21  THAT THE PROSECUTION COULD AND WOULD ASSIST YOUR VIEW AND YOUR

10:27AM 22  AGENCY'S AND ATTORNEYS, AT LEAST PERHAPS EVEN INITIALLY AND

10:27AM 23  CONTINUING TO IDENTIFY CERTAIN ISSUES THAT ARE UNIQUE TO

10:27AM 24  CRIMINAL DISCOVERY AND CRIMINAL PRODUCTION THAT MIGHT ASSIST IN

10:27AM 25  THE RELEASE OF CERTAIN INFORMATION OR PROVIDE YOU GREATER

10:27AM  1    AFFINITY FOR YOUR OBJECTIONS SUCH THAT THOSE COULD BE STATED AT

10:27AM  2    A LATER DATE AT A LATER TIME.

10:28AM  3        DO YOU CAPTURE MY MEANING?

10:28AM  4            MS. TURNER:  YES, YOUR HONOR.

10:28AM  5            THE COURT:  MS. TURNER, MS. NORTON,

10:28AM  6    MS. MARTINEZ-RESLY?

10:28AM  7            MS. NORTON:  THIS IS MS. NORTON.

10:28AM  8        WE HEAR WHAT YOU'RE SAYING, YOUR HONOR.

10:28AM  9            THE COURT:  SO WHAT I WAS SAYING -- AGAIN, I STARTED

10:28AM  10   OFF BY ME TELLING THESE GOOD LAWYERS AND PEOPLE HERE WHAT MY

10:28AM  11   INITIAL THOUGHTS ARE, AND LET ME COMPLETE THAT.

10:28AM  12       MY THOUGHTS ARE HERE, AS I LOOK AT THIS PRODUCTION OF

10:28AM  13   DOCUMENTS THAT HAVE GONE FORWARD THAT HAVE BEEN RELEASED,

10:28AM  14   THERE'S STILL SOME HICCUPS TO BE RESOLVED.

10:28AM  15       BUT I DO THINK -- I'M LOOKING TO THE GOVERNMENT'S TABLE

10:28AM  16   HERE -- I DO THINK THAT WHAT THE COURT INTENDS TO DO IS TO

10:28AM  17   ORDER THE CONTINUED PRODUCTION.  WE'RE GOING TO DISCUSS THE

10:28AM  18   NUANCES OF THAT IN JUST A MOMENT, BUT IN SOME MANNER THE COURT

10:28AM  19   IS GOING TO ORDER THAT THESE DOCUMENTS, THIS DISCOVERY, BE

10:28AM  20   PROVIDED, AND THE COURT IS GOING TO INVOKE RULE 16 AS TO THE

10:29AM  21   GOVERNMENT AND INDICATE TO THE GOVERNMENT THAT THEIR

10:29AM  22   OBLIGATIONS, THAT IS THE GOVERNMENT'S, THE PROSECUTION'S, THE

10:29AM  23   COURT FINDS THAT THERE IS SUFFICIENT GROUNDS TO ESTABLISH THAT

10:29AM  24   THERE IS A RULE 16 OBLIGATION FOR THE GOVERNMENT TO COMPLETE

10:29AM  25   THE DISCOVERY THAT HAS BEEN TRACKED SO FAR.

10:29AM 1      NOW, WHAT THAT MEANS -- I'M LOOKING NOW TO THE DEFENSE

10:29AM 2      TABLES -- THIS IS NOT AN INVITATION TO RELITIGATE WHAT HAS

10:29AM 3      ALREADY BEEN PROVIDED AS A RULE 16 ISSUE.  I THINK I'VE MADE

10:29AM 4      THAT DECISION ALREADY, BUT WHAT I'M SUGGESTING IS THAT THE

10:29AM 5      GOVERNMENT'S RULE 16 OBLIGATION ATTACHES TO THE FINISHING OF

10:29AM 6      THIS DISCOVERY REQUEST SUCH THAT I DO THINK THAT THE

10:29AM 7      GOVERNMENT -- IT'S APPROPRIATE TO FIND THAT THE RULE 16

10:29AM 8      OBLIGATION WILL GO FORWARD FROM HERE TO COMPLETE THIS

10:29AM 9      PRODUCTION OF INFORMATION.

10:30AM 10     SO I THINK IN GENERAL THAT'S THE OVERTONE OF WHAT I INTEND

10:30AM 11     TO DO TODAY.  ONE OF YOU MIGHT CONVINCE ME OTHERWISE.

10:30AM 12     MR. WADE, YOUR HEAD WAS MOVING UP AND DOWN WHICH I THINK

10:30AM 13     IS A UNIFORM INDICATION OF CONFIRMATION.

10:30AM 14          MR. WADE:  IT WAS, YOUR HONOR.  YES.

10:30AM 15          THE COURT:  OKAY.  ALL RIGHT.

10:30AM 16     SO HAVING SAID THAT, SHOULD WE THEN HAVE A DISCUSSION

10:30AM 17     ABOUT THESE OTHER REMAINING ISSUES AND THE NUANCES OF THEM, HOW

10:30AM 18     THAT SHOULD BE PRODUCED WITH THESE AGENCIES?

10:30AM 19     I KNOW THE GOVERNMENT HAD SOME -- EXCUSE ME, THE DEFENSE

10:30AM 20     HAD SOME QUESTIONS ABOUT SOME INFORMATION.

10:30AM 21          MR. COOPERSMITH:  YES, YOUR HONOR, IT MAKES SENSE TO

10:30AM 22     ME.

10:30AM 23          THE COURT:  OKAY.

10:30AM 24          MR. WADE:  YOUR HONOR, I THINK THAT IS SENSIBLE.  I

10:30AM 25     THINK ONE OF THE MOST SIGNIFICANT ISSUES IN THAT REGARD ARE

10:30AM  1    PRESERVATION ISSUES AND THE POSSIBILITY THAT IT WOULD APPEAR

10:30AM  2    THAT DOCUMENTS MAY HAVE BEEN DESTROYED IN THIS CASE ARE NOT

10:31AM  3    ADEQUATELY PRESERVED, SO I HOPE -- THAT'S AN ISSUE THAT WE HOPE

10:31AM  4    WE CAN ADDRESS DIRECTLY HERE THIS MORNING BECAUSE IT'S

10:31AM  5    OBVIOUSLY OF GREAT CONCERN TO US.

10:31AM  6         I'M SURE IT'S OF GREAT CONCERN TO THE GOVERNMENT AS WELL

10:31AM  7    GIVEN THAT THE GOVERNMENT ASKED THE AGENCIES TO PRESERVE THESE

10:31AM  8    DOCUMENTS YEARS AGO.

10:31AM  9              THE COURT:  OKAY.

10:31AM  10             MS. DAW:  IF I MAY BE HEARD ON THAT, YOUR HONOR?

10:31AM  11             THE COURT:  YES.

10:31AM  12             MS. DAW:  ALLISON DAW FOR THE HHS SUBAGENCIES FDA

10:31AM  13   AND CMS.

10:31AM  14        I DON'T UNDERSTAND THE SOURCE OF THE CONCERN THAT

10:31AM  15   DOCUMENTS HAVE NOT BEEN PRESERVED.  I PARTICIPATED IN THE MEET

10:31AM  16   AND CONFER TELEPHONE CALLS, AS DID ALL THREE ATTORNEYS WHO ARE

10:31AM  17   ON THE PHONE.

10:31AM  18             THE CLERK:  COULD YOU POINT THAT TO YOU.  THERE YOU

10:31AM  19   GO.

10:31AM  20             MS. DAW:  AND I DON'T RECALL ANYBODY MAKING ANY

10:31AM  21   REPRESENTATIONS THAT DOCUMENTS HAD NOT BEEN RETAINED.  SO I,

10:32AM  22   FRANKLY, AM AT A LOSS TO UNDERSTAND THE SOURCE OF THIS CONCERN

10:32AM  23   ON DEFENSE'S PART.

10:32AM  24             THE COURT:  OKAY.  WELL, LET'S -- I THINK WE SHOULD

10:32AM  25   PROBABLY AGENDIZE EACH OF THESE TOPICS AND THEN HAVE A

10:32AM  1    DISCUSSION OF THEM.

10:32AM  2         BUT FIRST, MS. KRATZMANN --

10:32AM  3         (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

10:32AM  4         THE COURT:  SO LET'S -- WELL, WHY DON'T WE MARSHAL

10:32AM  5    THROUGH SOME OF THE ISSUES HERE.  WHY DON'T I CALL COUNSEL TO

10:32AM  6    THE LECTERNS, DEFENSE COUNSEL AND GOVERNMENT COUNSEL, AND THEN

10:32AM  7    WE'LL GET BACK TO THESE OTHER ISSUES.

10:33AM  8         (PAUSE IN PROCEEDINGS.)

10:33AM  9         THE COURT:  SO I THINK WHAT I'LL DO, MR. BOSTIC, IS

10:33AM 10    START WITH THE DEFENSE AND HAVE YOU TELL ME BASED ON MY

10:33AM 11    OVERVIEW OF WHAT I INTEND TO DO HERE AND TO COMPLETE THIS TASK.

10:33AM 12    IN THE SPIRIT OF FULL DISCLOSURE ALSO I WANT TO TELL YOU

10:33AM 13    THAT I INTEND TO MAKE, AS I SAID -- OH, GREAT.  THANK YOU -- I

10:33AM 14    INTEND TO MAKE SOME ORDERS THAT THIS GET DONE BY THE END OF THE

10:33AM 15    YEAR.

10:33AM 16         MR. WADE:  THANK YOU, YOUR HONOR.  AND WE APPRECIATE

10:33AM 17    THE COURT'S ASSISTANCE IN GETTING THIS INFORMATION WHICH, AS

10:33AM 18    WE'VE DISCUSSED IN PREVIOUS HEARINGS, WE BELIEVE IS CRITICAL TO

10:33AM 19    THE DEFENSE IN THIS CASE.

10:33AM 20    I, TOO -- WE OBVIOUSLY HAVE DIFFERENCES OF OPINION THAT

10:33AM 21    WE'RE GOING TO RESOLVE WITH RESPECT TO THE AGENCIES IN THIS

10:33AM 22    CASE, BUT RECOGNIZING THAT AGENCY COUNSEL IS PRESENT, WE

10:34AM 23    UNDERSTAND THEY'RE WORKING HARD, AND I HOPE THAT NONE OF OUR

10:34AM 24    COMMENTS ARE TAKEN TO DEMEAN THE EFFORTS THAT ARE BEING MADE.

10:34AM 25         BUT NOTWITHSTANDING THOSE EFFORTS, I THINK WE HAVE SOME

10:34AM  1      DISTANCE TO GO DOWN THIS ROAD TO GET THERE BY THE END OF THE

10:34AM  2      YEAR.

10:34AM  3              THE COURT:  WELL, THANK YOU, MR. WADE.  LET ME

10:34AM  4      INTERRUPT YOU AGAIN.  I APOLOGIZE.

10:34AM  5          I SHOULD HAVE STARTED OFF BY THANKING ALL OF YOU,

10:34AM  6      INCLUDING THE AGENCIES AND THEIR REPRESENTATIVES WHO ARE ON THE

10:34AM  7      PHONE.  I DO WANT TO THANK YOU FOR MEETING AND CONFERRING.  I

10:34AM  8      KNOW JUDGES DO THAT A LOT, MEET AND CONFER, AND SOMETIMES

10:34AM  9      PEOPLE THINK, WELL, THAT JUST GETS IT OFF HIS OR HER DESK AND

10:34AM  10     PUTS IT ON THE LAWYERS TO DO, AND I SUPPOSE THAT'S TRUE TO A

10:34AM  11     CERTAIN EXTENT.

10:34AM  12         BUT WHEN YOU HAVE GOOD LAWYERS WHO ARE TALENTED, THEY KNOW

10:34AM  13     THE LAW, AND THEY KNOW WHAT THEY NEED, AND THEY KNOW WHAT THEY

10:34AM  14     CAN AND CANNOT DO, IT'S EASY TO MAKE THAT REQUEST.

10:34AM  15         YOU'VE DONE THAT.  I APPRECIATE IT.  TWO HOUR PHONE CALLS.

10:34AM  16     MY GOODNESS, YOU'VE ACCOMPLISHED A LOT.

10:34AM  17         BUT WHAT I HOPE WE CAN DO THIS MORNING IS TO FINISH UP THE

10:34AM  18     PATH HERE TO REACH WHAT WE'RE ALL OF COMMON PURPOSE TO GET THIS

10:35AM  19     DONE SO THAT YOU CAN MOVE FORWARD.

10:35AM  20         SO --

10:35AM  21             MR. WADE:  SURE.  AND, YOUR HONOR, WE WILL GO

10:35AM  22     THROUGH -- IF I COULD CATEGORIZE THE DISPUTES IN SORT OF TWO

10:35AM  23     BUCKETS.

10:35AM  24         ONE BUCKET RELATES TO PRESERVATION ISSUES OR POTENTIAL

10:35AM  25     DESTRUCTION ISSUES, AND THEN THE SECOND BUCKET WOULD RELATE TO

10:35AM 1    DOCUMENTS THAT STILL NEED TO BE PRODUCED AND THE TIMEFRAME FOR

10:35AM 2    THAT.

10:35AM 3         IT SOUNDS LIKE ONCE WE CLARIFY SOME SEARCH TERMS AND SOME

10:35AM 4    OTHER TECHNICAL ISSUES, WE MIGHT BE ABLE TO REACH A RESOLUTION

10:35AM 5    ON SOME OF THOSE OTHER TECHNICAL ISSUES HERE WITH THE COURT'S

10:35AM 6    ASSISTANCE.

10:35AM 7         THE MORE SIGNIFICANT CONCERN IS THAT FIRST ISSUE.  MS. DAW

10:35AM 8    FOR THE GOVERNMENT DID PARTICIPATE AND HER ASSISTANCE WAS VERY

10:35AM 9    HELPFUL IN THE MEET AND CONFER PROCESS.

10:35AM 10        TO HELP CRYSTALLIZE THIS ISSUE, THOUGH, I'M GOING TO POINT

10:35AM 11   TO TWO EXAMPLES.  IF I COULD REFER THE COURT TO DOCUMENT 170,

10:35AM 12   EXHIBIT A, WHICH IS A LETTER FROM FDA DATED OCTOBER 30TH, 2019.

10:36AM 13        ON THE SECOND PAGE OF THAT LETTER, YOUR HONOR, THERE ARE

10:36AM 14   SOME TECHNICAL ISSUES IDENTIFIED AND WHICH -- AND THERE ARE A

10:36AM 15   NUMBER OF BULLET POINTS.  IF YOU LOOK AT THE NUMBER, THE BULLET

10:36AM 16   POINTS THAT EXIST IN THE MIDDLE OF THE PAGE THERE, THE SECOND

10:36AM 17   BULLET POINT NOTES THAT WITH RESPECT TO 1,114 E-MAILS FOR

10:36AM 18   MR. GUTIERREZ, IT APPEARS THAT THE DOCUMENTS HAVE NOT BEEN

10:36AM 19   PRESERVED IN A WAY THAT IS SALVAGEABLE AND THAT THEY'RE ABLE TO

10:36AM 20   PRODUCE TO THE GOVERNMENT.

10:36AM 21        MR. GUTIERREZ, ACCORDING TO THE GOVERNMENT, WE DON'T

10:36AM 22   NECESSARILY DISAGREE, IS AMONGST ONE OF THE MOST IMPORTANT

10:37AM 23   WITNESSES IN THIS CASE.  INDEED, WE'VE TALKED ABOUT BRADY

10:37AM 24   COMING OUT OF THIS PROCESS AND EXCULPATORY INFORMATION COMING

10:37AM 25   OUT OF THIS PROCESS FOR THE FIRST TIME AS A RESULT OF THE

10:37AM 1   DEFENSE MOTION.  MUCH OF THAT MATERIAL RELATES DIRECTLY TO

10:37AM 2   MR. GUTIERREZ.

10:37AM 3       AND THE PARTIALLY VISIBLE E-MAILS IS INDICIA WITHIN

10:37AM 4   E-DISCOVERY LINGO FOR DOCUMENTS THAT WERE DELETED BUT COULD

10:37AM 5   ONLY PARTIALLY BE RESTORED, FRAGMENTS OF THOSE DOCUMENTS COULD

10:37AM 6   BE RESTORED.

10:37AM 7       SECOND, I NOTE ON THIS, ON THIS PAGE THERE ARE 255

10:37AM 8   DOCUMENTS FROM MR. GUTIERREZ THAT SEEM TO HAVE KIND OF COME OUT

10:37AM 9   OF THE BLUE, WHICH IS TROUBLING THAT WE HAVE DOCUMENTS FOR THE

10:37AM 10  MOST IMPORTANT WITNESS FOR THE FDA APPEARING, YOU KNOW, MONTHS

10:37AM 11  INTO THIS PROCESS WITHOUT EXPLANATION.

10:38AM 12      WITH RESPECT TO CMS --

10:38AM 13          THE COURT:  WELL, WHY DON'T WE --

10:38AM 14          MR. WADE:  YES.

10:38AM 15          THE COURT:  LET'S TALK ABOUT MR. GUTIERREZ.  I WAS

10:38AM 16  CURIOUS ABOUT WHAT A PARTIAL E-MAIL IS, AND MAYBE, MAYBE I CAN

10:38AM 17  GET SOME DEFINITION ON THAT.

10:38AM 18      MS. DAW.

10:38AM 19          MS. DAW:  ACTUALLY, I THINK THIS IS SOMETHING THAT

10:38AM 20  THE AGENCY ATTORNEYS MIGHT BE ABLE TO ADDRESS MORE SUCCINCTLY.

10:38AM 21          THE COURT:  OKAY.  ALL RIGHT.  WHO WOULD LIKE TO

10:38AM 22  TAKE THIS UP?  MS. MARTINEZ-RESLY?

10:38AM 23          MS. MARTINEZ-RESLY:  YES, YOUR HONOR, THIS IS

10:38AM 24  MS. MARTINEZ-RESLY.

10:38AM 25      WHAT WE'RE SEEING FOR THESE 1,114 E-MAILS ATTRIBUTABLE TO

10:38AM   1      MR. GUTIERREZ IS THAT OFTENTIMES A FULL "SUBJECT" LINE,

10:38AM   2   SOMETIMES A "FROM" LINE INDICATING WHO SENT THE E-MAIL, AND

10:38AM   3   THEN SOMETIMES A "DATE" LINE, SOMETIMES NOT.

10:38AM   4      WHAT IS CLEAR IS THAT THE "TO" FIELD IS ALMOST ALWAYS

10:39AM   5   MISSING AND THE CONTENT, THE BODY CONTENT OF THE E-MAIL IS

10:39AM   6   ALMOST ALWAYS MISSING.

10:39AM   7      SO THAT IS WHAT WE MEAN WHEN WE SAY THERE ARE PARTIALLY

10:39AM   8   VISIBLE E-MAILS FOR HIM.

10:39AM   9      AND I DON'T KNOW IF YOU WOULD LIKE ME TO GO INTO MORE

10:39AM  10   DETAIL AS TO WHAT WE'VE DONE ABOUT THOSE OR NOT AT THIS TIME.

10:39AM  11            THE COURT:  HAVE YOU TALKED ABOUT THIS, MR. WADE,

10:39AM  12   WITH --

10:39AM  13            MR. WADE:  WE'VE JUST RECEIVED SOME MORE

10:39AM  14   INFORMATION.  WE RECEIVED INFORMATION IN THE LETTER.

10:39AM  15      PRESERVATION WAS AN ISSUE THAT WAS DISCUSSED IN THE MEET

10:39AM  16   AND CONFER.  IT WAS AN ISSUE THAT WAS RAISED BY THE DEFENSE,

10:39AM  17   AND THE AGENCIES DIDN'T HAVE A LOT OF IMMEDIATE KNOWLEDGE WITH

10:39AM  18   RESPECT TO THAT IN THE MEET AND CONFER PROCESS AND PLEDGED TO

10:39AM  19   LOOK INTO IT.

10:39AM  20      DEFENSE COUNSEL WAS SOMEWHAT SURPRISED BY THAT GIVEN THAT

10:39AM  21   IT WAS HARD FOR US TO UNDERSTAND HOW COUNSEL FOR THE GOVERNMENT

10:39AM  22   WOULD BE IN A POSITION TO REPRESENT THAT THEY HAD GATHERED AND

10:39AM  23   PRODUCED ALL RESPONSIVE DOCUMENTS WHEN THEY DIDN'T KNOW WHETHER

10:39AM  24   ALL RESPONSIVE DOCUMENTS HAD ACTUALLY BEEN PRESERVED.

10:40AM  25      BUT SETTING THAT ASIDE, THIS IS IN ESSENCE ABSENT SOME

10:40AM  1    ABILITY TO REMEDY THIS ISSUE IN ADMISSION THAT MATERIAL

10:40AM  2    EVIDENCE HAS BEEN DESTROYED.

10:40AM  3         NOT HAVING THE CONTENT OF E-MAILS FROM THE MOST IMPORTANT

10:40AM  4    WITNESS IN THE CASE SUGGESTS THAT MATERIAL EVIDENCE HAS BEEN

10:40AM  5    DESTROYED.

10:40AM  6              THE COURT:  WELL, WE DON'T KNOW, WE DON'T KNOW WHAT

10:40AM  7    EVIDENCE HAS BEEN DESTROYED OR NOT.  I UNDERSTAND YOUR CONCERN

10:40AM  8    IT COULD BE A SHOPPING LIST ON AN E-MAIL OR SOMETHING.  WE JUST

10:40AM  9    DON'T KNOW, DO WE?

10:40AM 10              MR. COOPERSMITH:  JUST TO ADD, YOUR HONOR, I

10:40AM 11    THINK --

10:40AM 12              THE COURT:  MR. COPPERSMITH.

10:40AM 13              THE CLERK:  SPEAK INTO THE MICROPHONE.

10:40AM 14              MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

10:40AM 15         THE COURT'S QUESTION I THINK SHOULD BE ANSWERED.  IN THE

10:40AM 16    STATUS REPORT THE GOVERNMENT SAYS THAT THE AGENCY DIDN'T TELL

10:40AM 17    THE GOVERNMENT THAT MATERIAL HAD BEEN DELETED.

10:40AM 18         I THINK THE FDA COUNSEL ON THE PHONE HAS EXPLAINED WHAT

10:40AM 19    THEY'RE TRYING TO DO TO RESTORE.  SO THAT'S ONE THING.

10:40AM 20         BUT I HAVE NOT HEARD YET AN ANSWER TO THE COURT'S QUESTION

10:40AM 21    AS TO WHETHER OR NOT MATERIAL IN THE FIRST PLACE WAS DESTROYED

10:41AM 22    AND WHY.

10:41AM 23         IF THAT'S THE CASE, I THINK THE COURT AND THE PARTIES NEED

10:41AM 24    TO HAVE A FULL EXPLANATION OF WHAT ACTUALLY OCCURRED HERE,

10:41AM 25    ESPECIALLY WITH RESPECT TO MR. GUTIERREZ WHO WE AGREE IS AMONG

10:41AM 1    THE MOST IMPORTANT WITNESSES IN THE CASE.

10:41AM 2              THE COURT:  OKAY.  IT SOUNDS LIKE,

10:41AM 3    MS. MARTINEZ-RESLY, ARE YOU WORKING ON THAT ISSUE, THAT IS,

10:41AM 4    THAT QUESTION?

10:41AM 5              MS. MARTINEZ-RESLY:  YES, YES, YOUR HONOR.  I WILL

10:41AM 6    ALSO JUST SAY THAT WE HAVE NO EVIDENCE, AND WE HAVE NO REASON

10:41AM 7    TO BELIEVE THAT ANY OF THESE E-MAILS OR ANY OTHER E-MAILS WERE

10:41AM 8    DESTROYED INTENTIONALLY OR INADVERTENTLY.

10:41AM 9        THE EXPLANATION THAT WE HAVE RECEIVED FROM OUR INFORMATION

10:41AM 10   MANAGEMENT PERSONNEL IS THAT THE ORIGINAL E-MAIL CONTAINER

10:41AM 11   FILE, THE PFT FILE THAT HOUSES THESE E-MAILS, WAS CORRUPT.  I

10:41AM 12   DON'T THINK -- I DON'T UNDERSTAND THAT AS BEING RELATED TO

10:41AM 13   DELETION OR DESTRUCTION OF DOCUMENTS.

10:41AM 14             THE COURT:  OKAY.  LET ME -- MR. WADE, YOU CAN

10:42AM 15   CONTROL YOUR ENTHUSIASM FOR JUST A MOMENT.

10:42AM 16       IT SOUNDS LIKE THIS IS SOMETHING THAT IS STILL UNDER

10:42AM 17   INVESTIGATION BY THE AGENCY, AND MY SENSE IS THAT WE'RE NOT

10:42AM 18   GOING TO GET AN ANSWER TO THIS THIS MORNING.

10:42AM 19             MR. WADE:  YOUR HONOR, MAYBE WE CAN ADDRESS A COUPLE

10:42AM 20   OF OTHER PRESERVATION ISSUES THAT RELATE TO THE AGENCIES.

10:42AM 21             THE COURT:  BECAUSE WHAT --

10:42AM 22             MR. WADE:  AND START WITH THE FDA.

10:42AM 23       BUT I THINK THE DIRECT ANSWER TO YOUR QUESTION IS IT

10:42AM 24   APPEARS THAT WE'RE NOT GOING TO RESOLVE THIS THIS MORNING, BUT

10:42AM 25   I THINK IT'S MAYBE THE SINGLE MOST SIGNIFICANT REMAINING ISSUE

10:42AM 1    IN THE CASE AND THE ONE THAT HAS THE ABILITY TO AFFECT THE

10:42AM 2    RIGHTS OF THE DEFENDANTS, AND, THEREFORE, I WOULD SUGGEST THAT

10:42AM 3    AN ORDER THAT REQUIRES MORE COMPREHENSIVE DISCLOSURE WITH

10:42AM 4    RESPECT TO THE EFFORTS THAT WERE MADE TO PRESERVE EVIDENCE AND

10:42AM 5    CONTEMPORANEOUS DOCUMENTS THAT EVIDENCE THAT IN A DISCLOSURE OF

10:43AM 6    THAT EVIDENCE IS APPROPRIATE.

10:43AM 7         PART OF THE REASON WHY I ASKED THE COURT TO INDULGE US TO

10:43AM 8    HEAR THESE ISSUES IN GREATER LENGTH, IF YOU LOOK AT THE THIRD

10:43AM 9    PAGE, THE FIRST TWO BULLETS ON THE THIRD PAGE SIMILARLY MAKE

10:43AM 10   CLEAR THAT THERE MAY HAVE WELL BEEN OTHER GAPS WITH RESPECT TO

10:43AM 11   THE PRESERVATION OF DOCUMENTS.

10:43AM 12        THE AGENCIES DIDN'T KNOW.  THERE ARE -- THEY'RE DOING SOME

10:43AM 13   INVESTIGATION, BUT WHAT THEY DESCRIBED AS THEIR PRESERVATION

10:43AM 14   EFFORTS RELATED TO A SUBCATEGORY OF DOCUMENTS BUT DID NOT

10:43AM 15   ADDRESS OTHER CATEGORIES OF DOCUMENTS.

10:43AM 16        SO THIS IS A MAJOR POTENTIAL ISSUE IN THE CASE, AND THE

10:43AM 17   ENTHUSIASM THAT YOUR HONOR SENSED FROM MY FACE COMES FROM THE

10:43AM 18   FACT THAT IT'S NOT EVERY DAY THAT I HEAR AN ADMISSION OF A

10:43AM 19   CORRUPT E-MAIL FILE FROM THE MOST SIGNIFICANT CUSTODIAN IN A

10:43AM 20   CASE.  THAT IS, THAT IS A CORRUPTION, AN EVIDENCE CORRUPTION,

10:44AM 21   AN EVIDENCE DESTRUCTION ISSUE THAT I THINK IS --

10:44AM 22             THE COURT:  I THINK THE TERM "CORRUPTION" -- MAYBE

10:44AM 23   WE SHOULD BE CLEAR ON THAT.

10:44AM 24        MR. BOSTIC.

10:44AM 25             MR. BOSTIC:  YES, YOUR HONOR.  FOR THE GOVERNMENT I

10:44AM 1    THINK THE COURT HAS HIT ON AN IMPORTANT DISTINCTION.  I HEAR

10:44AM 2    THE DEFENSE TALKING A LOT ABOUT FAILURE TO PRESERVE AND

10:44AM 3    EVIDENCE DESTRUCTION, BUT THAT'S SIMPLY NOT WHAT WE'RE HEARING

10:44AM 4    FROM THE AGENCIES AND THAT'S NOT WHAT WE'RE SEEING OR AT LEAST

10:44AM 5    THAT'S NOT WHAT THE AGENCIES ARE SEEING.  THEY'RE TALKING ABOUT

10:44AM 6    TECHNICAL ERRORS RELATING TO THE POSSIBLE UNFORTUNATE LOSS OF

10:44AM 7    SOME POTENTIALLY RESPONSIVE DOCUMENTS IN THIS CASE, BUT THERE'S

10:44AM 8    A LEAP BETWEEN THAT AND THE ASSUMPTION THAT THE AGENCIES EITHER

10:44AM 9    FAILED TO FOLLOW THEIR DOCUMENT PRESERVATION PROTOCOLS, OR THAT

10:44AM 10   THOSE PROTOCOLS WERE INSUFFICIENT, OR THAT THERE WAS SOME KIND

10:44AM 11   OF NEGLIGENCE OR MALFEASANCE HERE.  THERE'S SIMPLY NOT A

10:44AM 12   SHOWING OF THAT AS EAGER AS THE DEFENSE IS TO GET THERE.

10:44AM 13             THE COURT:  I'M SORRY.  I DIDN'T MEAN TO INTERRUPT.

10:44AM 14             MR. BOSTIC:  I AM SORRY.  I ALSO THINK I SHOULD

10:44AM 15   PROVIDE THE PROSECUTION'S PERSPECTIVE BECAUSE THE DEFENSE HAS

10:45AM 16   MENTIONED A NUMBER OF TIMES HOW IMPORTANT MR. GUTIERREZ IS TO

10:45AM 17   THIS CASE.

10:45AM 18        LET ME JUST SAY THAT THE PROSECUTION DOES NOT AGREE THAT

10:45AM 19   MR. GUTIERREZ IS THE MOST IMPORTANT CASE -- EXCUSE ME, THE MOST

10:45AM 20   IMPORTANT WITNESS OR DOCUMENT CUSTODIAN IN THIS CASE.

10:45AM 21        I MENTIONED THIS BEFORE, BEFORE THE COURT, BUT THE

10:45AM 22   INDICTMENT HERE ALLEGES A WIDE RANGE OF MISREPRESENTATIONS THAT

10:45AM 23   WERE MADE BY THE DEFENDANTS TO VICTIMS, INCLUDING DOCTORS AND

10:45AM 24   PATIENTS, AS WELL AS THE INVESTORS WHO GAVE MONEY TO THERANOS.

10:45AM 25             REPRESENTATIONS, OR RATHER MISREPRESENTATIONS CONCERNING

10:45AM 1   FDA IS JUST ONE CATEGORY AMONG SEVERAL CATEGORIES OF

10:45AM 2   MISREPRESENTATIONS THAT THE DEFENDANTS MADE, AND THE NATURE OF

10:45AM 3   THOSE MISREPRESENTATIONS REGARDING FDA IS IMPORTANT ALSO

10:45AM 4   BECAUSE THEY RELATE TO DISCREPANCIES BETWEEN WHAT DEFENDANTS

10:45AM 5   SAID THERANOS WAS REQUIRED TO DO AND WHAT FDA TOLD DEFENDANTS

10:45AM 6   THAT THERANOS WAS REQUIRED TO DO.

10:45AM 7       NOW, THE GOVERNMENT IS SUPPORTING THE DEFENDANT'S REQUEST

10:46AM 8   TO GAIN INSIGHT INTO A LOT OF INTERNAL FDA CORRESPONDENCE, BUT

10:46AM 9   LOOKING AT THE ALLEGATIONS IN THE INDICTMENT, THE IMPORTANT

10:46AM 10  QUESTION IS WAS THERE A DIFFERENCE BETWEEN WHAT THE FDA TOLD

10:46AM 11  DEFENDANTS AND WHAT THE DEFENDANTS THEN REPORTED TO OTHERS?

10:46AM 12      FDA'S INTERNAL CORRESPONDENCE ARE A BIG STEP REMOVED FROM

10:46AM 13  THAT, AND I THINK WE'LL GET LATER INTO ADDITIONAL TOPICS THAT

10:46AM 14  THE DEFENSE WANTS TO LOOK INTO THAT ARE EVEN FURTHER AFIELD

10:46AM 15  FROM THAT CENTRAL QUESTION.

10:46AM 16      SO I JUST WANT TO PUT THAT INTO PERSPECTIVE FOR THE COURT.

10:46AM 17          THE COURT:  OKAY.  THANK YOU.

10:46AM 18      AND WHEN WE TALK ABOUT CORRUPTION, WE'RE TALKING ABOUT

10:46AM 19  TECHNICAL ELECTRONIC DEVICES THAT HAVE OPERATED INAPPROPRIATELY

10:46AM 20  IN SOME MANNER FOR SOME REASON.

10:46AM 21          MR. COOPERSMITH:  THAT'S MY UNDERSTANDING, YOUR

10:46AM 22  HONOR, THAT WHEN WE TALK ABOUT CORRUPT FILES, WE'RE TALKING

10:46AM 23  ABOUT SOME TECHNICAL PROBLEM IN THIS CASE IN RESTORING

10:46AM 24  MATERIAL.

10:46AM 25      BUT MR. WADE'S COMMENTS, I THINK, ARE CORRECT THAT IN THE

10:46AM 1    WORLD OF E-DISCOVERY, OFTEN WHEN YOU TALK ABOUT CORRUPTED FILES

10:47AM 2    OR NEED-TO-RESTORE FILES, IT'S POSSIBLE, AND OFTEN LIKELY, THAT

10:47AM 3    WE'RE TALKING ABOUT MATERIAL THAT WAS ORIGINALLY DELETED.

10:47AM 4        SO I UNDERSTAND MR. BOSTIC'S POINT, AND, YOU KNOW, WISHFUL

10:47AM 5    THINKING IS THAT THIS IS NOT THAT, BUT I STILL HAVE NOT HEARD

10:47AM 6    ANY EXPLANATION, AND I DON'T KNOW THAT WE'LL GET THIS TODAY, AS

10:47AM 7    TO WHY THESE FILES WERE, YOU KNOW, CORRUPTED, IF YOU WILL, OR

10:47AM 8    HAVE THESE TECHNICAL GLITCHES.

10:47AM 9            THE COURT:  SURE.

10:47AM 10           MR. COOPERSMITH:  OFTEN WE SAY THEY ARE.

10:47AM 11       SO I KNOW THAT IT'S POSSIBLE FROM EXPERIENCE THAT A

10:47AM 12   FORENSIC INVESTIGATION CAN DETERMINE OFTEN WHAT HAPPENED IN THE

10:47AM 13   FIRST PLACE, AND THAT'S THE EXPLANATION THAT I THINK WE ALL ARE

10:47AM 14   NOT HEARING TODAY.

10:47AM 15           THE COURT:  AND MY SENSE IS THAT MS. MARTINEZ-RESLY

10:47AM 16   IS NOT ABLE TO GIVE US THE ANSWER TO THAT QUESTION THIS

10:47AM 17   MORNING.  I THINK SHE SUGGESTED THAT THERE IS SOME ONGOING

10:47AM 18   REVIEW OF THIS IN HER AGENCY, AND I'M TRUSTING THAT SHE'S GOING

10:47AM 19   TO ENGAGE THE PROPER RESOURCES IN HER OFFICE TO FIND OUT WHAT

10:47AM 20   HAPPENED, AND WHEN IT HAPPENED, AND WHEN IT DID HAPPEN WHAT

10:48AM 21   ITEMS, DOCUMENTS, DID IT AFFECT, IF ANY.

10:48AM 22       THAT'S A SEPARATE -- LET'S JUST PUT THAT AS A SEPARATE

10:48AM 23   LINE ITEM THAT IS SEPARATE FROM DISCLOSURE.  I'VE TALKED ABOUT

10:48AM 24   DISCLOSURE BY THE END OF THE YEAR, WHICH I'M SERIOUS ABOUT.

10:48AM 25       THIS INVESTIGATION, AND MS. MARTINEZ-RESLY, IF YOU COULD

10:48AM 1    MAKE A NOTE, I'M GOING TO ASK YOU AT SOME PART OF OUR

10:48AM 2    CONVERSATION THIS MORNING WHEN YOU THINK YOU'LL HAVE THAT

10:48AM 3    ACCOMPLISHED SUCH THAT YOU CAN REPORT TO THESE LAWYERS AND TO

10:48AM 4    THE COURT THE STATUS.  THAT'S GOING TO BE AN IMPORTANT ISSUE.

10:48AM 5         SO I THINK THAT'S ABOUT ALL WE CAN DO ON THAT NOW.

10:48AM 6         MR. WADE, ANYTHING ELSE YOU WANT TO TALK ABOUT?

10:48AM 7              MR. WADE:  NO.  I THINK THAT'S APPROPRIATE, YOUR

10:48AM 8    HONOR.

10:48AM 9         THE ONLY THING I WOULD NOTE IS, BECAUSE IT'S DIRECTLY

10:48AM 10   RELATED TO THAT ISSUE, IF THE COURT WERE TO LOOK AT THE FIRST

10:48AM 11   TWO BULLETS ON PAGE 3, THEY SIMILARLY TALK ABOUT WHETHER OR NOT

10:48AM 12   THERE WAS ADEQUATE PRESERVATION OF HARD COPY DOCUMENTS THAT

10:49AM 13   EXISTED, WHAT STEPS WERE TAKEN WHEN PEOPLE SUCH AS

10:49AM 14   MR. GUTIERREZ LEFT THE AGENCY, AND WHETHER THAT EVIDENCE STILL

10:49AM 15   EXISTS.

10:49AM 16        AND THE FDA WAS NOT ABLE TO ANSWER THAT DURING OUR MEET

10:49AM 17   AND CONFER PROCESS.  THE CORRESPONDENCE ATTACHED AS EXHIBIT A

10:49AM 18   SAYS THAT THEY'RE IN THE PROCESS OF GATHERING THAT.

10:49AM 19              THE COURT:  RIGHT.

10:49AM 20              MR. WADE:  I GUESS THE POINT I WOULD LIKE TO BE MADE

10:49AM 21   AS THE COURT ADDRESSES THIS ISSUE, GIVEN THE TIMING THAT WE'RE

10:49AM 22   UNDER HERE, IS THAT THAT -- THOSE DISCLOSURES HAPPEN MORE

10:49AM 23   QUICKLY WITH REGARD TO THE PRESERVATION OF EVIDENCE BECAUSE WE

10:49AM 24   WON'T KNOW WHETHER WE HAVE EVERYTHING OR WHETHER THE MISSING

10:49AM 25   ITEMS HAVE SIGNIFICANCE IN THE CASE THAT, FOR EXAMPLE, COULD

10:49AM  1    RELATE TO MOTIONS OR COULD RELATE TO OTHER ISSUES IN THE CASE

10:49AM  2    UNTIL WE HAVE THIS INFORMATION.

10:49AM  3         MY EXPECTATION WOULD BE -- UNFORTUNATELY, I THINK WE'RE

10:49AM  4    GOING TO HAVE TO GET THIS INFORMATION AND THEN MEET AND CONFER

10:50AM  5    AGAIN, AND THIS IS A SEPARATE PROCESS BECAUSE --

10:50AM  6              THE COURT:  RIGHT.

10:50AM  7              MR. WADE:  -- IT APPEARS THAT THE AGENCIES HAD NOT

10:50AM  8    ADDRESSED THIS DURING THEIR COLLECTION EFFORTS IN THE FIRST

10:50AM  9    INSTANCE.

10:50AM 10              THE COURT:  RIGHT.  AND I DON'T REMEMBER IN THE

10:50AM 11    PLEADINGS WHETHER THERE WAS A TIME STAMP AS TO WHEN THIS WAS

10:50AM 12    REALIZED WHEN THIS ISSUE AROSE.

10:50AM 13         BUT IN ANY EVENT, WHAT I'VE TOLD MS. MARTINEZ-RESLY, I'M

10:50AM 14    GOING TO TASK HER WITH TELLING US WHEN SHE THINKS SHE CAN HAVE

10:50AM 15    A REPORT ON THE PROGRESS OF THIS.

10:50AM 16         AND ALSO, MS. MARTINEZ-RESLY, AS TO WHAT INFORMATION YOU

10:50AM 17    CAN RELEASE TO THE LAWYERS, BOTH SIDES, AS TO THE PROTOCOL

10:50AM 18    INVOLVING RETENTION, HOW THAT IS DONE AND WHETHER OR NOT --

10:50AM 19    WHETHER ALL OF THOSE PROCEDURES WERE ENGAGED IN REGARDS TO

10:50AM 20    MR. GUTIERREZ'S E-MAILS.

10:50AM 21              MR. WADE:  AND MORE GENERALLY, YOUR HONOR, AS THE

10:50AM 22    TWO BULLET POINTS NOTE, IT'S NOT -- MR. GUTIERREZ IS A SPECIFIC

10:51AM 23    EXAMPLE WHERE WE KNOW THAT THERE WERE E-MAILS THAT ARE

10:51AM 24    CORRUPTED.  I DON'T MEAN TO SUGGEST THAT ANYONE ACTED

10:51AM 25    CORRUPTLY.

10:51AM 1          THE COURT:  NO.  WE'RE IN SILICON VALLEY.  IT'S A

10:51AM 2    TERM OF ART.  I THINK WE UNDERSTAND THAT.

10:51AM 3          SO THAT'S A SEPARATE ISSUE THAT IS GOING TO BE ENGAGED

10:51AM 4    HERE, AND WE'LL HAVE A SEPARATE REPORT ON THAT.

10:51AM 5          ANYTHING FURTHER ON THIS?  MR. COPPERSMITH?

10:51AM 6          MR. COOPERSMITH:  NO, YOUR HONOR.

10:51AM 7          THE COURT:  MR. BOSTIC, ANYTHING FURTHER ON THIS?

10:51AM 8          MS. DAW, ANYTHING FURTHER ON THIS?

10:51AM 9          MR. BOSTIC:  YOUR HONOR, FOR THE PROSECUTION, I'LL

10:51AM 10   HAVE SOME ADDITIONAL THOUGHTS ABOUT THE COURT'S PLAN TO IMPOSE

10:51AM 11   A RULE 16 OBLIGATION ON THE GOVERNMENT, BUT IT MIGHT MAKE SENSE

10:51AM 12   TO SAVE THOSE THOUGHTS UNTIL AFTER WE HAVE DISCUSSED THE

10:51AM 13   SPECIFIC ISSUE.

10:51AM 14         THE COURT:  RIGHT.  LET'S SEE HOW BIG THE JOB IS.

10:51AM 15   OKAY.  WHAT'S NEXT?

10:51AM 16         MR. WADE:  RELATED ISSUE ON THE PRESERVATION ISSUE

10:51AM 17   BEFORE GOING INTO THE SPECIFICS ON MISSING OR EVIDENCE THAT IS

10:51AM 18   SORT OF IN PROCESS.

10:51AM 19         THERE'S A SIMILAR ISSUE WITH RESPECT TO CMS.  I BELIEVE

10:52AM 20   CMS IS IN THE PROCESS OF INVESTIGATING THEIR PRESERVATION

10:52AM 21   EFFORTS.

10:52AM 22         THE COURT MAY REMEMBER ON A PRIOR OCCASION THAT WE HAD

10:52AM 23   DISCUSSED THERE WAS A PRIOR INSPECTION FROM CMS THAT OCCURRED

10:52AM 24   AT THERANOS EARLIER IN TIME AND THAT THAT HAD GIVEN THERANOS

10:52AM 25   SORT OF A CLEAN BILL OF HEALTH AT THAT TIME.

10:52AM  1          SO FAR WE HAVE NOT SEEN DOCUMENTS RELATING TO THAT WHICH

10:52AM  2     IS CONCERNING TO THE DEFENSE.  OUR HOPE -- WE HAVE RAISED THAT

10:52AM  3     ISSUE A NUMBER OF TIMES.  WE'VE MET AND CONFERRED ABOUT THE

10:52AM  4     PRESERVATION ISSUES WITH THE AGENCIES, AND OUR HOPE WOULD BE

10:52AM  5     THAT WE CAN RECEIVE SIMILAR UPDATES FROM THE AGENCIES WITH

10:52AM  6     RESPECT TO THE PRESERVATION EFFORTS THAT THEY MADE, CMS MADE

10:52AM  7     WITH RESPECT TO THOSE MATERIALS AND OTHERWISE.

10:52AM  8          THE COURT:  OKAY.  MS. TURNER, DO YOU WISH TO BE

10:52AM  9     HEARD ON THIS?

10:52AM 10          MS. TURNER:  YES, YOUR HONOR.

10:53AM 11     I DON'T SEE ANY PROBLEM WITH PROVIDING AN UPDATE ON THAT

10:53AM 12     ISSUE ONCE WE HAVE SOME ADDITIONAL INFORMATION.  I HAVE BEEN

10:53AM 13     LOOKING INTO IT, AND I JUST HAVEN'T HAD -- I DON'T HAVE ALL OF

10:53AM 14     THE INFORMATION NECESSARY TO REPORT BACK AT THIS MOMENT.

10:53AM 15          THE COURT:  OKAY.  MR. COPPERSMITH, ANYTHING YOU

10:53AM 16     WANT TO ADD?

10:53AM 17          MR. COOPERSMITH:  NOTHING ON THAT POINT.

10:53AM 18          THE COURT:  OKAY.  DOES THIS INCLUDE THE CMS

10:53AM 19     FOLLOWUP TO THE NON-MAIL HARD COPIES?  IS THIS THE SAME ISSUE

10:53AM 20     OR THIS A SEPARATE ISSUE?

10:53AM 21          MR. WADE:  I THINK IT'S A DIRECTLY RELATED ISSUE,

10:53AM 22     YOUR HONOR.

10:53AM 23          THE COURT:  RIGHT, RIGHT.

10:53AM 24          MR. WADE:  AT THE TIME WE MET AND CONFERRED, AGENCY

10:53AM 25     COUNSEL WAS NOT SURE WHETHER HARD DOCUMENTS HAD BEEN COLLECTED

10:53AM  1    AND PRODUCED.  THEY AGREED THAT THEY HAD BEEN FOCUSSING ON THE

10:53AM  2    E-MAIL.

10:53AM  3                THE COURT:  SURE.

10:53AM  4                MR. WADE:  SO THEY PLEDGED TO GO BACK AND MAKE

10:53AM  5    INQUIRIES ON THAT.

10:53AM  6                THE COURT:  GREAT.

10:53AM  7                MR. COOPERSMITH:  YOUR HONOR, I DO HAVE ONE FOLLOWUP

10:54AM  8    ON THAT.  IN ADDITION TO THE HARD COPY -- ONE QUESTION THAT I

10:54AM  9    HAVE NOT HEARD AN ANSWER TO IS THAT WE HAVE REASON TO BELIEVE

10:54AM 10    THAT THE AGENCY'S PERSONNEL, ESPECIALLY CMS BUT IT COULD BE

10:54AM 11    BOTH, WERE ALSO INVOLVED IN TEXT MESSAGING, A COMMON FORM OF

10:54AM 12    COMMUNICATION IN THIS DAY AND AGE, AND WE HAVE NOT SEEN ANY

10:54AM 13    TEXT MESSAGES FROM EITHER AGENCY.

10:54AM 14        WE WOULD HOPE THAT AS PART OF THEIR PROTOCOL THEY WOULD

10:54AM 15    ALSO BE SEARCHING FOR TEXT MESSAGE INFORMATION BECAUSE IN

10:54AM 16    PARTICULAR, YOUR HONOR, DURING THE INSPECTION OF THERANOS THAT

10:54AM 17    CMS CARRIED OUT, WE BELIEVE THAT THEY WERE USING TEXT MESSAGE

10:54AM 18    COMMUNICATIONS.

10:54AM 19                THE COURT:  OKAY.

10:54AM 20                MR. BOSTIC:  YOUR HONOR, APOLOGIES TO GO BACK ONE

10:54AM 21    STEP JUST TO MAKE SURE THE RECORD IS ACCURATE ON THE ISSUE OF

10:54AM 22    CMS HARD COPY DOCUMENTS.

10:54AM 23        MR. WADE JUST LEFT OUT ONE DETAIL, WHICH IS THAT ALTHOUGH

10:54AM 24    THE AGENCY COUNSEL DID NOT HAVE IMMEDIATE ANSWER AT THE TIME OF

10:54AM 25    OUR MEET AND CONFER CALL, THE AGENCY LATER FOLLOWED UP TO BOTH

10:55AM 1   PARTIES AND CONFIRMED THAT IT BELIEVES THAT THE MAJORITY OF

10:55AM 2   HARD COPY DOCUMENTS WOULD HAVE BEEN CAPTURED, COLLECTED, AND

10:55AM 3   PRODUCED TO THE PROSECUTION BACK IN 2017 SUCH THAT ALL OF THOSE

10:55AM 4   DOCUMENTS WOULD HAVE BEEN PRODUCED.

10:55AM 5            THE COURT:  I SAW THAT IN YOUR RESPONSE IN THAT AND

10:55AM 6   MY SENSE WAS -- I WAS GOING TO ASK ABOUT THAT -- MY SENSE IS

10:55AM 7   THAT THOSE DOCUMENTS THAT THE GOVERNMENT HAS RECEIVED,

10:55AM 8   MR. BOSTIC, YOU HAVE PROVIDED THOSE ALREADY?

10:55AM 9            MR. BOSTIC:  YES, YOUR HONOR.

10:55AM 10           MR. WADE:  THEY HAVE, YOUR HONOR.  THE ONLY POINT OF

10:55AM 11  DISAGREEMENT THERE IS MAJORITY IN OUR MINDS IS NOT SUFFICIENT

10:55AM 12  TO MEET THE REQUIREMENT.  SO WE WOULD RESPECT THE ENTIRETY OF

10:55AM 13  IT.

10:55AM 14           THE COURT:  AND WHEN YOU SAY, "TEXT MESSAGES," I'M

10:55AM 15  JUST TRYING TO GATHER YOU'RE TALKING ABOUT INDIVIDUALS -- ARE

10:55AM 16  YOU TALKING ABOUT WORK PHONES, THAT IS, BUSINESS RELATED

10:55AM 17  PHONES?  ARE YOU TALKING ABOUT PERSONAL PHONE TEXTS?

10:55AM 18           MR. COOPERSMITH:  YES, YOUR HONOR.  YES, WE'RE

10:55AM 19  TALKING ABOUT PERSONNEL WHO WORKED FOR THE AGENCIES WHO HAVE

10:55AM 20  EITHER PERSONAL OR BUSINESS PHONES, BUT THE TEXT MESSAGES WE'RE

10:55AM 21  LOOKING FOR OBVIOUSLY ARE TEXT MESSAGES ABOUT CMS OR FDA

10:56AM 22  BUSINESS THAT RELATE TO THERANOS.

10:56AM 23      SO WE'RE NOT LOOKING FOR THE PERSONAL TEXT MESSAGES OF

10:56AM 24  INDIVIDUAL EMPLOYEES.  WE'RE LOOKING FOR THEIR TEXT MESSAGES

10:56AM 25  ABOUT THE BUSINESS THAT THEY'RE IN, WHICH IS REGULATION.

10:56AM   1          THE COURT:  HOW DO YOU -- WHAT IS THE SCOPE OF THAT?

10:56AM   2   AND BY "THAT" I MEAN ARE YOU LOOKING AT PEOPLE WHO WOULD BE

10:56AM   3   PARTICULARLY INVOLVED WITH THERANOS AND WHATEVER THE AGENCY

10:56AM   4   REGULATION?  ARE YOU LOOKING FOR PEOPLE WHO ARE NOT INVOLVED

10:56AM   5   BUT, YES, ARE SOMEHOW COMMENTING ABOUT IT JUST AS A PERSONAL

10:56AM   6   OBSERVATION?  HOW DO YOU FILTER THAT?

10:56AM   7          MR. COOPERSMITH:  WELL, YOUR HONOR, I THINK THE

10:56AM   8   STARTING POINT FOR LOOKING AT THIS AND PROBABLY THE BULK OF THE

10:56AM   9   INFORMATION IS, FOR EXAMPLE, WHEN CMS PERSONNEL ARE ON THE

10:56AM  10   GROUND AT THERANOS CONDUCTING AN INSPECTION AND THEY'RE TEXT

10:56AM  11   MESSAGING ABOUT WHAT THEY'RE DOING OR ASKING FOR GUIDANCE, OR

10:56AM  12   EVEN COMMENTING ABOUT WHAT THEY'RE SEEING, THAT WOULD BE

10:56AM  13   DIRECTLY RESPONSIVE.

10:56AM  14       AND WE HOPE THAT THAT MATERIAL WOULD HAVE BEEN PRESERVED

10:57AM  15   IN ACCORDANCE WITH THE GOVERNMENT'S DIRECTION BACK IN 2017.

10:57AM  16       BUT WHATEVER EXISTS NOW WE WOULD EXPECT TO BE PRODUCED.

10:57AM  17       THE BROADER QUESTION THAT YOUR HONOR IS ASKING, I

10:57AM  18   UNDERSTAND, IS THAT IS IT POSSIBLE THAT SOME RANDOM EMPLOYEE OF

10:57AM  19   THESE AGENCIES, YOU KNOW, TEXTED AND JUST HAD AN OBSERVATION

10:57AM  20   ABOUT WHAT THEY SAW IN THE NEWS MEDIA, OR SOMETHING LIKE THAT?

10:57AM  21       THAT'S NOT REALLY WHAT WE'RE ASKING FOR.

10:57AM  22          THE COURT:  SURE.

10:57AM  23          MR. COOPERSMITH:  ALTHOUGH YOU CAN IMAGINE THAT THAT

10:57AM  24   COULD BE RELEVANT, BUT IT'S HARDER TO GET AT, RIGHT?

10:57AM  25       WHAT WE'RE REALLY LOOKING FOR, THE CORE OF IT IS TEXT

10:57AM  1    MESSAGING.  JUST LIKE PEOPLE SEND E-MAILS, PEOPLE SEND TEXTS.

10:57AM  2            THE COURT:  NO, I UNDERSTAND.  I CAPTURE THAT.  I

10:57AM  3    KNOW YOU'RE LOOKING AT ME LIKE AN OLD GUY LIKE YOU, JUDGE,

10:57AM  4    DOESN'T UNDERSTAND TEXTING.

10:57AM  5            MR. COOPERSMITH:  I'M NOT SO YOUNG MYSELF THESE

10:57AM  6    DAYS, YOUR HONOR.

10:57AM  7            THE COURT:  MS. DAW.

10:57AM  8            MS. DAW:  YOUR HONOR, A COUPLE OF POINTS.

10:57AM  9        FIRST IS ACCESS.  IF INDIVIDUALS USE THEIR PERSONAL

10:57AM 10    CELL PHONES AND THEY'RE NO LONGER AT THE AGENCY, EVEN IF THEY

10:57AM 11    ARE AT THE AGENCY, I QUESTION WHETHER THE AGENCY HAS ANY LEGAL

10:58AM 12    OBLIGATION OR ANY LEGAL RIGHT TO ACCESS THEIR CELL PHONES.

10:58AM 13        THE OTHER POINT THAT I WANTED TO MAKE HAS TO DO WITH THE

10:58AM 14    INSISTENCE THAT CMS IS PRESENT AT THERANOS.  THE INSPECTIONS

10:58AM 15    THAT ARE DONE IN THE FIELD ARE DONE BY THE STATE OF CALIFORNIA

10:58AM 16    AS A CONTRACTOR OF CMS, NOT BY CMS ITSELF.

10:58AM 17        MS. TURNER CAN CORRECT ME IF I'M WRONG, BUT THAT CAN

10:58AM 18    EXPLAIN ALSO WHY CMS DOESN'T HAVE AS MANY DOCUMENTS AS DEFENSE

10:58AM 19    COUNSEL SEEMS TO THINK THAT THEY SHOULD WITH RESPECT TO THOSE

10:58AM 20    INSPECTIONS BECAUSE THEY DIDN'T PERFORM THEM.

10:58AM 21        THEY'RE PERFORMED BY, AS I SAID, BY CONTRACTORS, AND THE

10:58AM 22    AGENCY MAY OR MAY NOT RECEIVE A REPORT, BUT THEY DON'T DO THE

10:58AM 23    INSPECTIONS THEMSELVES.

10:58AM 24            THE COURT:  OKAY.

10:58AM 25            MR. COOPERSMITH:  JUST TO CORRECT THE RECORD ON

10:58AM  1    THAT, YOUR HONOR, IN 2015, IN SEPTEMBER 2015 CMS SENT THEIR OWN

10:58AM  2    PERSONNEL, NOT THE STATE OF CALIFORNIA, THEY SENT THEIR OWN

10:59AM  3    PERSONNEL TO DO THE INSPECTION.

10:59AM  4        SO THERE ARE OTHER TIMES THAT STATE THEY HAVE DONE IT, BUT

10:59AM  5    BUT THERE ARE TIMES WHEN CMS DIRECTLY DID IT.

10:59AM  6            THE COURT:  OKAY.

10:59AM  7            MR. COOPERSMITH:  SO I'M SURE MS. DAW DIDN'T KNOW

10:59AM  8    THAT, BUT THAT'S ACTUALLY THE CASE.

10:59AM  9            THE COURT:  OKAY.  SO GETTING BACK TO THE BROADNESS

10:59AM  10   OF THE TEXTS, WHICH IS WHAT I WAS CONCERNED ABOUT, IT WOULD

10:59AM  11   PROBABLY BE RELATIVELY EASY TO IDENTIFY WHAT CMS PEOPLE WERE ON

10:59AM  12   THE GROUND DOING DIRECT WORK IN REGARDS TO THERANOS, ET CETERA,

10:59AM  13   AND YOU CAN CERTAINLY LOOK FOR TEXT MESSAGES FOR THAT

10:59AM  14   POPULATION.

10:59AM  15           MR. WADE:  YES, YOUR HONOR.  ORDINARILY WHEN YOU DO

10:59AM  16   A COLLECTION OF THIS KIND, YOU CONDUCT SORT OF A MINI INTERVIEW

10:59AM  17   OF EACH CUSTODIAN AND YOU SAY WHAT E-MAILS DO YOU HAVE?  WHAT

10:59AM  18   DOCUMENTS DO YOU HAVE?  DID YOU USE YOUR PHONE?  DID YOU SEND

10:59AM  19   TEXTS?  IT'S SOMETHING THAT WE DO ROUTINELY EVERY DAY.  IT'S

10:59AM  20   NOT A PARTICULARLY SIGNIFICANT TASK.

10:59AM  21           THE COURT:  RIGHT.  AND I'M HAVING THIS DRAWN-OUT

10:59AM  22   DISCUSSION NOT BECAUSE, AGAIN, MR. COPPERSMITH, I DON'T

11:00AM  23   UNDERSTAND THE TECHNOLOGY, BUT I WANT TO NARROW DOWN SO WE

11:00AM  24   DON'T HAVE TO DEAL WITH THIS AT SOME TIME IN THE FUTURE.

11:00AM  25           MR. COOPERSMITH:  YES, YOUR HONOR.  I THINK THAT'S

11:00AM 1    HOW YOU WOULD NARROW IT.

11:00AM 2         I SHOULD POINT OUT IT'S REALLY BOTH AGENCIES BECAUSE FDA

11:00AM 3    ALSO CONDUCTED AN INSPECTION OF THERANOS IN AUGUST OF 2015.  SO

11:00AM 4    IT'S BOTH AGENCIES, NOT JUST CMS.

11:00AM 5              THE COURT:  YES.  SHOULD WE MOVE ON FROM TEXTING TO

11:00AM 6    SOMETHING ELSE?

11:00AM 7              MR. WADE:  YES, YOUR HONOR.

11:00AM 8         I THINK IF WE WERE TO WORK PERHAPS OFF OF PAGE 9 OF THE

11:00AM 9    JOINT STATUS MEMORANDA WHERE WE IDENTIFY ISSUES, MAYBE THAT'S A

11:00AM 10   GOOD STARTING POINT TO TRY TO BRING SOME CLARITY.

11:00AM 11             THE COURT:  SURE.

11:00AM 12             MR. WADE:  AND I THINK WITH RESPECT TO CMS, I THINK

11:00AM 13   WE'VE MADE SOME PROGRESS ALREADY EVEN THOUGH WE HAVEN'T BEEN

11:00AM 14   WORKING DOWN THE LIST BECAUSE WE UNDERSTAND THAT THEY'RE GOING

11:00AM 15   TO MAKE INQUIRIES AND PROVIDE DISCLOSURES WITH RESPECT TO THEIR

11:00AM 16   EFFORTS TO COLLECT AND PRODUCE AND PRESERVE ALL RELEVANT

11:01AM 17   EVIDENCE.

11:01AM 18             THE COURT:  I THINK WE JUST TALKED ABOUT THAT

11:01AM 19   EARLIER.

11:01AM 20             MR. WADE:  YES.

11:01AM 21             THE COURT:  I THINK WHAT WE HAVEN'T TALKED ABOUT IS

11:01AM 22   THIS 2010-2013 TIME PERIOD.

11:01AM 23             MR. WADE:  YOUR HONOR, I THINK THAT ISSUE IS

11:01AM 24   RESOLVED TO THE EXTENT THAT THE DOCUMENTS HAVE BEEN PRESERVED,

11:01AM 25   AND WE'LL LEARN THAT.  AS A RESULT OF THEIR DISCLOSURES, I

```
11:01AM    1        THINK THAT ISSUE IS IN PROCESS.
11:01AM    2                    THE COURT:  GREAT.
11:01AM    3                    MR. WADE:  THEY'VE GATHERED THAT MATERIAL AND ARE IN
11:01AM    4        THE PROCESS OF REVIEWING THAT MATERIAL.  SO I THINK WE HAVE
11:01AM    5        MADE PROGRESS.
11:01AM    6            THE ISSUE THAT REMAINS AS OF THE DRAFTING OF THE STATUS
11:01AM    7        REPORT IS WHEN ARE WE GOING TO GET IT?  I UNDERSTAND THE COURT
11:01AM    8        HAS AN ANSWER TO THAT QUESTION.
11:01AM    9                    THE COURT:  YES.  THAT WILL BE ANSWERED AT THE END
11:01AM   10        OF OUR CONVERSATION.  GREAT.
11:01AM   11            SHOULD WE MOVE TO FDA THEN?
11:01AM   12                    MR. WADE:  YES, YOUR HONOR.  WORKING DOWN THOSE
11:02AM   13        LISTS.  SIMILARLY ITEM 1, (B)1 ON PAGE 9 OF DOCUMENT 170
11:02AM   14        IDENTIFIES PRESERVATION ISSUES.  I THINK WE'VE ADDRESSED THAT,
11:02AM   15        YOUR HONOR.
11:02AM   16            ITEM 2 RELATES TO THE MANNER OF COLLECTION AND ACQUISITION
11:02AM   17        OF RESPONSIVE DOCUMENTS, INCLUDING E-MAILS THAT -- THE ISSUE
11:02AM   18        HERE, YOUR HONOR, IS OUR UNDERSTANDING IS THAT THE AGENCY
11:02AM   19        COUNSEL JUST ASKED CUSTODIANS TO GATHER THE DOCUMENTS THAT THEY
11:02AM   20        THOUGHT WERE RESPONSIVE TO THE REQUESTS, AND THEY TOOK WHAT
11:02AM   21        THEY RECEIVED AND TURNED THEM OVER WHICH IS NOT IN KEEPING WITH
11:02AM   22        THE STANDARD OF CARE FOR A DOCUMENT COLLECTION EFFORT.
11:02AM   23            ORDINARILY, INQUIRIES NEED TO BE MADE AND YOU NEED TO MAKE
11:02AM   24        ASSURANCES THAT MATERIALS BEING PROVIDED, IN THE CASE OF AN
11:03AM   25        E-MAIL YOU DO A SEARCH LIKE THEY'RE DOING IN OTHER PORTIONS OF
```

```
11:03AM   1     THEIR COLLECTION.
11:03AM   2              THE COURT:  SO WHAT IS IT YOU WOULD LIKE IN REGARDS
11:03AM   3     TO UNION NUMBER 2 HERE?  YOU'VE IDENTIFIED AN ISSUE THAT YOU
11:03AM   4     HAVE CONCERNS ABOUT.
11:03AM   5              MR. WADE:  WE WOULD LIKE AGENCY COUNSEL TO FOLLOW UP
11:03AM   6     WITH THE RELEVANT CUSTODIANS AND MAKE INQUIRIES PERHAPS WITH
11:03AM   7     THE PROSECUTION TEAM TO MAKE SURE THAT THEY HAVE ACTUALLY
11:03AM   8     GATHERED ALL OF THE DOCUMENTS THAT ARE RESPONSIVE TO THE SIX
11:03AM   9     REQUESTS.
11:03AM  10              THE COURT:  OKAY.  MR. BOSTIC, DO YOU WANT TO BE
11:03AM  11     HEARD ON THIS?
11:03AM  12              MR. BOSTIC:  YES, YOUR HONOR.
11:03AM  13              THE COURT:  MR. BOSTIC, I APOLOGIZE IN ADVANCE.  I
11:03AM  14     HAVE A TENDENCY TO INTERRUPT PEOPLE.  I ASK A QUESTION, AND
11:03AM  15     THEN I GIVE AN ANSWER, AND THEN ASK YOU FOR YOUR ANSWER.
11:03AM  16         SO WHAT -- MY INTENT IN ENJOINING YOU WITH THE RULE 16
11:03AM  17     TYPE OF ISSUE IS THAT THIS IS EXACTLY THE TYPE OF ISSUE THAT I
11:03AM  18     THOUGHT YOUR OFFICE MIGHT BE OF ASSISTANCE TO GIVE SOME
11:04AM  19     GUIDANCE AS TO THAT TENSION THAT I TALKED ABOUT WITH CRIMINAL
11:04AM  20     DISCOVERY AND WHAT IS REALLY REQUIRED AND WHAT IS NOT.
11:04AM  21         YOUR EXPERTISE, I THINK, WOULD BE VALUABLE TO GIVE
11:04AM  22     GUIDANCE TO THE AGENCIES, NOT JUST FDA BUT CMS AND OTHERS, AS
11:04AM  23     TO WHAT REALLY NEEDS TO BE DONE, HOW TO DO IT, AND SUGGESTIONS
11:04AM  24     ON HOW TO ACCOMPLISH THAT.
11:04AM  25              MR. BOSTIC:  YES, YOUR HONOR.  THANK YOU.
```

11:04AM 1      THE AGENCIES, I THINK AS THEY CONFIRMED, HAVE HAD THE

11:04AM 2   BENEFIT OF THE PROSECUTION'S GUIDANCE ON THOSE ISSUES.  THEY

11:04AM 3   WILL CONTINUE TO HAVE IT REGARDLESS OF WHAT THE COURT ORDERS

11:04AM 4   TODAY.  I CAN ASSURE THE COURT THAT THE GOVERNMENT WILL STAY AS

11:04AM 5   INVOLVED AS IT CAN BE IN FACILITATING THE PRODUCTION OF THESE

11:04AM 6   DOCUMENTS BY THE AGENCIES TO THE DEFENSE.

11:04AM 7      THE COURT:  OKAY.

11:04AM 8      MR. BOSTIC:  ON SPECIFIC QUESTIONS, THOUGH, LIKE HOW

11:04AM 9   THE AGENCY GOES ABOUT COLLECTING DOCUMENTS, ONE POINT I'LL

11:04AM 10  RAISE IS THAT THE DEFENSE DOES CITE AN UNPUBLISHED CASE FROM

11:04AM 11  ANOTHER DISTRICT FOR THE PROPOSITION THAT THIS MAY NOT BE THE

11:04AM 12  BEST WAY FOR DOCUMENT CUSTODIANS TO RESPOND TO REQUESTS.

11:05AM 13     I DON'T THINK THAT IS BINDING ON THIS COURT, OF COURSE.

11:05AM 14  AND WHILE IT MAY BE TRUE THAT FOR SOME DOCUMENT CUSTODIANS MORE

11:05AM 15  INVOLVEMENT IS NECESSARY, WE ARE DEALING WITH HIGH-LEVEL

11:05AM 16  EMPLOYEES AT A GOVERNMENT AGENCY HERE, EMPLOYEES IN AN AGENCY

11:05AM 17  WHO ARE USED TO DEALING WITH DOCUMENT REQUESTS IN THE FOIA

11:05AM 18  CONTEXT.  AND IN THE LITIGATION CONTEXT, AND OCCASIONALLY IN

11:05AM 19  THE CRIMINAL PROSECUTION CONTEXT.

11:05AM 20     SO I DON'T THINK WE SHOULD ACCEPT THE DEFENSE'S ARGUMENT

11:05AM 21  THAT THIS IS PER SE UNACCEPTABLE, THAT YOU GO TO A SPECIFIC

11:05AM 22  CUSTODIAN WHO KNOWS HIS OR HER OWN DOCUMENTS BETTER THAN ANYONE

11:05AM 23  ELSE AND ASK THEM TO MAKE A GOOD FAITH EFFORT TO CAPTURE

11:05AM 24  EVERYTHING RESPONSIVE, AND TURN IT OVER, AND THEN TRUST IN

11:05AM 25  THEIR GOOD FAITH EFFORTS TO DO THAT.

11:05AM 1      THAT IS NOT UNUSUAL FOR HOW DISCOVERY WORKS.  EVEN WHEN

11:05AM 2   THE GOVERNMENT SERVES A SUBPOENA ON AN INDIVIDUAL OR A PARTY,

11:06AM 3   AT SOME POINT WE ARE TRUSTING IN THE GOOD FAITH OF THE

11:06AM 4   CUSTODIAN TO DO THEIR BEST, TO USE THEIR BEST EFFORTS TO

11:06AM 5   CAPTURE EVERYTHING AND TURN IT OVER.

11:06AM 6      SO I THINK THAT THERE IS NO SHOWING THAT THAT PROCESS HAS

11:06AM 7   FAILED IN THIS CASE, AND SO I THINK IT MIGHT BE PREMATURE TO

11:06AM 8   ORDER ADDITIONAL STEPS.

11:06AM 9      IF ADDITIONAL STEPS ARE NECESSARY, THE GOVERNMENT IS HAPPY

11:06AM 10  TO HELP HOWEVER IT CAN, BUT WHEN WE'RE TALKING ABOUT A RULE 16

11:06AM 11  OBLIGATION, THE COURT MENTIONED THE GOVERNMENT PROVIDING

11:06AM 12  GUIDANCE AND ASSISTANCE.  GUIDANCE AND ASSISTANCE ARE NOT THE

11:06AM 13  SAME THING AS ACCESS.  IF WE HAD ACCESS TO THESE DOCUMENTS, WE

11:06AM 14  CAN SIMPLY DECIDE HOW THEY'RE GOING TO BE COLLECTED, REVIEWED,

11:06AM 15  AND PRODUCED.  WE CAN'T MAKE THAT DECISION BECAUSE WE DON'T

11:06AM 16  HAVE THAT ACCESS.

11:06AM 17     ONE OF MY GOALS THIS MORNING IS TO AVOID A SITUATION WHERE

11:06AM 18  THE GOVERNMENT IS -- THE PHRASE "ON THE HOOK" HAS BEEN USED A

11:06AM 19  COUPLE OF TIMES -- WHERE THE GOVERNMENT IS ON THE HOOK FOR THE

11:06AM 20  SPECIFICS, THE REALLY KIND OF IN-THE-WEEDS SPECIFICS OF A

11:06AM 21  PROCESS THAT IT DOESN'T CONTROL.

11:06AM 22          THE COURT:  SURE.  WHAT ARE YOU -- WHAT ARE YOUR

11:07AM 23  THOUGHTS AS TO WHETHER OR NOT THIS COURT CAN ORDER ACCESS?

11:07AM 24          MR. BOSTIC:  SO MY INITIAL THOUGHT ON THAT, YOUR

11:07AM 25  HONOR, IS THAT WHEN WE'RE TALKING ABOUT THE SCOPE OF RULE 16,

```
11:07AM   1    THE QUESTION OF ACCESS DOESN'T TURN ON WHAT THE COURT ORDERS.

11:07AM   2         AS I READ THE CASE LAW, IT TURNS ON THE AUTHORITY THAT

11:07AM   3    THE PROSECUTION HAS, OR LACKS, TO KNOW OF, ACCESS, AND CONTROL

11:07AM   4    DOCUMENTS BASED ON ITS POSITION AS THE PROSECUTION.

11:07AM   5         I DON'T KNOW WHETHER THE COURT CAN EXPAND THAT ACCESS ON

11:07AM   6    THE PROSECUTION'S BEHALF, BUT I'LL POINT OUT THAT THAT TAKES US

11:07AM   7    IN A DIFFERENT DIRECTION FROM WHAT IS CONTEMPLATED IN THE

11:07AM   8    CASES.

11:07AM   9         THE COURT:  NO.  RIGHT.  I JUST ASK THAT QUESTION TO

11:07AM  10    PERHAPS ENGAGE A GENERAL CONVERSATION ABOUT IT.

11:07AM  11         I KNOW YOUR HOOK, IF YOU WILL, MR. WADE, IS SANTIAGO AND

11:07AM  12    WHAT THE COURT DID IN SANTIAGO, BUT OF COURSE THAT'S A LITTLE

11:08AM  13    DIFFERENT BECAUSE IT WAS BUREAU OF PRISONS AND THERE WAS A

11:08AM  14    LITTLE MORE PRIVITY BETWEEN THE PROSECUTION AND BUREAU OF

11:08AM  15    PRISONS, AND ET CETERA.  BUT I'M NOT GOING TO OPEN UP THAT

11:08AM  16    DISCUSSION NOW.

11:08AM  17         MR. WADE:  IF I MIGHT MAKE ONE SMALL POINT RELATED

11:08AM  18    TO THAT, YOUR HONOR, BECAUSE IT IS DIFFERENT FROM JUST THE LAW.

11:08AM  19    IT'S SPECIFIC TO THE FACTS OF THIS CASE.

11:08AM  20         THE GOVERNMENT DOES HAVE AN AGENT, AN FDA AGENT ON ITS

11:08AM  21    PROSECUTION TEAM, AND HE'S A MEMBER OF THE PROSECUTION TEAM.

11:08AM  22    THE DOCUMENTS THAT HAVE BEEN PRODUCED IN THIS CASE MAKE CLEAR

11:08AM  23    THAT WHEN THAT AGENT WANTED TO, FOR EXAMPLE, INTERVIEW SOMEONE

11:08AM  24    WITHIN THE FDA, THAT AGENT JUST DIRECTLY COMMUNICATED WITH THAT

11:08AM  25    PERSON AND SAID I NEED THESE DOCUMENTS, CAN YOU SEND ME THESE
```

11:08AM 1    DOCUMENTS IN ADVANCE, AND THE AGENT GOT WHATEVER THEY ASKED

11:08AM 2    FOR.

11:08AM 3        AND PART OF THE REASON THAT'S TRUE IS BECAUSE THERE'S

11:08AM 4    STATUTORY AUTHORITY THAT GIVES THAT AGENT THE ABILITY TO GET

11:08AM 5    THOSE DOCUMENTS WITHIN THE AGENCY.  SO THEY ACTUALLY HAVE TO

11:08AM 6    PROVIDE THE DOCUMENTS WITHIN THE AGENCY.

11:08AM 7        THE COURT:  I UNDERSTAND.  FOR THE RULE 16 ANALYSIS,

11:09AM 8    I APPRECIATE THAT ASSISTANCE.

11:09AM 9        BUT WHAT I SEE PARAGRAPH 2, LET ME JUST SAY, WHAT I SEE

11:09AM 10   PARAGRAPH 2 IS A VERY STRONG SUGGESTION TO THE AGENCIES FROM

11:09AM 11   THE DEFENSE AS TO HOW THEY MIGHT CONDUCT SOME ADDITIONAL WORK

11:09AM 12   TO ACCOMPLISH THE GOALS HERE.

11:09AM 13       I THINK THAT'S WHAT IT IS.  MY SENSE IS THAT THE AGENCY

11:09AM 14   LAWYERS LOOK AT THAT, READ IT AS SUCH, APPRECIATE YOUR

11:09AM 15   SUGGESTIONS, AND WILL CONTINUE TO PROSECUTE THEIR DISCOVERY

11:09AM 16   DILIGENTLY PURSUANT TO THE COURT'S ORDER THAT'S GOING TO BE

11:09AM 17   FORTHCOMING.

11:09AM 18       MR. WADE:  UNDERSTOOD, YOUR HONOR.

11:09AM 19       MS. DAW:  YOUR HONOR, ON BEHALF OF THE FDA, IF THE

11:09AM 20   COURT IS CONSIDERING AN ORDER PROVIDING ACCESS TO THEIR

11:09AM 21   DOCUMENTS, I WOULD ASK THAT THE FDA BE GIVEN AN OPPORTUNITY TO

11:09AM 22   BRIEF THAT ISSUE BECAUSE OF THE STATUTORY AND REGULATORY

11:09AM 23   OBLIGATIONS THAT THEY HAVE TO PROTECT INFORMATION.

11:09AM 24       THE COURT:  RIGHT.

11:09AM 25       MS. DAW:  I DON'T WANT THEM TO BE IN THE POSITION OF

11:10AM 1    DUELING LEGAL OBLIGATIONS.

11:10AM 2         THE COURT:  WELL, WHEN I SAY ACCESS, I REALIZE WITH

11:10AM 3    ALL OF THE AUTHORITY THAT MY COLLEAGUES AND I HAVE AND ENJOY,

11:10AM 4    I'M NOT SURE THAT WE CAN CREATE ACCESS JUST ON A SIGNATURE.

11:10AM 5    MAYBE WE CAN CREATE IT.  IT WON'T BE LONG LIVED, I WOULDN'T

11:10AM 6    THINK, AND THAT'S NOT WHAT I WAS SUGGESTING TO DO.

11:10AM 7         BUT I DO THINK THAT IN CASES OF UNIQUE CIRCUMSTANCES LIKE

11:10AM 8    THIS ONE, AND PARTICULARLY WHERE THE ACTIVITY OF THE PARTIES,

11:10AM 9    AS MR. WADE POINTS OUT, MIGHT SUGGEST SOMETHING A LITTLE

11:10AM 10   BROADER THAN PERHAPS -- CERTAINLY KNOWLEDGE IS ACCOMPLISHED AND

11:10AM 11   MAYBE ACCESS IS REALLY THE ISSUE WE'RE TALKING ABOUT.

11:10AM 12        BUT I DO THINK GIVEN THE ROAD, THE PATH THAT I'VE LAID

11:10AM 13   HERE TO ALLOW THE AGENCIES TO SELF-REGULATE, IF YOU WILL, TO

11:10AM 14   DEVELOP THE INFORMATION AND PROVIDE IT KNOWING THAT WE WANT IT,

11:10AM 15   THE COURT WANTS IT WITH THE ASSISTANCE, CONTINUED ASSISTANCE OF

11:10AM 16   THE GOVERNMENT, IS PROVIDED A CONTINUING AVENUE TO INCREASE THE

11:10AM 17   GOVERNMENT'S PARTICIPATION IN THAT ENDEAVOR.

11:11AM 18        MR. COOPERSMITH:  YOUR HONOR, THANK YOU FOR THAT.

11:11AM 19   JUST ONE WORD ABOUT ACCESS SINCE I HAVEN'T ADDRESSED THAT YET.

11:11AM 20        THE CONCEPT OF ACCESS, NOTWITHSTANDING WHAT THE GOVERNMENT

11:11AM 21   HAS SAID IN COURT TODAY AND IN PREVIOUS HEARINGS, THE FACT IS

11:11AM 22   THAT THEY, THE GOVERNMENT, ENJOYED ALL OF THE ACCESS THAT THEY

11:11AM 23   WANTED, AND THE RECORD IS THAT THEY EVEN ENJOYED THAT ACCESS

11:11AM 24   AFTER THE INDICTMENT IN JUNE 2018.  WHEN THE ACCESS SUPPOSEDLY

11:11AM 25   DRIED UP IS WHEN THE DEFENSE STARTED ASKING FOR DOCUMENTS.

11:11AM  1        SO ONCE THERE'S A FACTUAL -- AND IT IS A FACTUAL QUESTION

11:11AM  2   IN THIS CASE, WAS THERE ACCESS?  AND OUR ANSWER, OF COURSE, IS

11:11AM  3   YES.  THEN THE COURT CAN SIMPLY ORDER THE GOVERNMENT, AS IT

11:11AM  4   SAID IT WAS INCLINED TO DO, TO PRODUCE, TO MAKE SURE THESE

11:11AM  5   DOCUMENTS WERE PRODUCED UNDER RULE 16.  THAT'S GOING TO BE

11:11AM  6   IMMENSELY HELPFUL FOR ADDITIONAL REASONS THAT WE'LL DISCUSS

11:11AM  7   WHEN WE GET TO THESE OTHER TOPICS, BUT THAT'S IT.

11:11AM  8        IN TERMS OF ADDITIONAL BRIEFING, I WOULD SUGGEST TO THE

11:11AM  9   COURT THAT THESE AGENCIES AND THE GOVERNMENT HAVE HAD MANY,

11:12AM 10   MANY OPPORTUNITIES TO BRIEF THIS.  THIS ISSUE HAS BEEN ON THE

11:12AM 11   TABLE.  AND AT THIS POINT IF WE'RE GOING TO HOLD TO THE

11:12AM 12   SCHEDULE, THESE DOCUMENTS HAVE TO BE PRODUCED, AND THE COURT

11:12AM 13   HAS SUGGESTED THAT AT THE END OF THE YEAR WOULD BE A GOOD

11:12AM 14   DEADLINE.

11:12AM 15        SO I THINK THE ACCESS IS CLEAR, AND I THINK THE GOVERNMENT

11:12AM 16   SHOULD HAVE THE OBLIGATION.  AT THAT POINT, YOU KNOW, THE

11:12AM 17   GOVERNMENT IS GOING TO BE IMMENSELY HELPFUL.

11:12AM 18        FOR EXAMPLE, ON PARAGRAPH 2 THEY WERE JUST TALKING ABOUT

11:12AM 19   MANUAL REVIEW BY CUSTODIANS OR MANUAL COLLECTION.  ULTIMATELY

11:12AM 20   THE GOVERNMENT CAN SIMPLY OVERSEE THIS.  IT DOESN'T MEAN THEY

11:12AM 21   HAVE TO GET INTO THE TRENCHES AND START LOOKING IN THE FILE

11:12AM 22   ROOM, BUT THEY CAN OVERSEE THIS AND ASK THE RIGHT QUESTIONS TO

11:12AM 23   MAKE SURE THAT IF THERE WAS A COLLECTION FROM CUSTODIANS, HOW

11:12AM 24   THAT OCCURRED, MAKE SURE IT WAS ADEQUATE.

11:12AM 25        IT IS REALLY THE SAME THING I WOULD DO WHEN I GET A

11:12AM 1    SUBPOENA FROM THE GOVERNMENT.  I DON'T TELL THE CLIENT, WELL,

11:12AM 2    HERE'S A SUBPOENA, LET ME KNOW WHEN YOU'RE DONE COLLECTING.  I

11:12AM 3    HAVE TO GET IN THERE AND ASK THE RIGHT QUESTIONS, MAKE SURE

11:13AM 4    THAT THEY HAVE THOUGHT OF EVERYTHING, MAKE SURE THAT THEY HAVE

11:13AM 5    THOUGHT OF HARD COPY, MAKE SURE THEY HAVE THOUGHT OF TEXTS,

11:13AM 6    MAKE SURE THEY THOUGHT ALL OF THE RANGE OF THINGS THAT YOU HAVE

11:13AM 7    TO DO.  THAT'S WHAT THE GOVERNMENT EXPECTS OF ME WHEN I GET A

11:13AM 8    SUBPOENA, AND WE'RE EXPECTING NO LESS FROM THE GOVERNMENT.

11:13AM 9              MR. BOSTIC:  YOUR HONOR, THAT'S A KEY POINT THAT

11:13AM 10   MR. COPPERSMITH JUST MADE.  WHEN HIS CLIENT GETS A SUBPOENA HE,

11:13AM 11   AS HIS CLIENT'S LAWYER, IS RESPONSIBLE FOR ENSURING THEIR

11:13AM 12   COMPLIANCE WITH THAT SUBPOENA.  THAT'S WHAT THEY PAY HIM TO DO.

11:13AM 13   THEY GIVE HIM THAT AUTHORITY TO COME IN AND GUIDE THEIR

11:13AM 14   COLLECTION EFFORTS.  THAT'S THE SOURCE OF HIS OBLIGATION AND

11:13AM 15   THAT IS THE SOURCE OF HIS AUTHORITY.

11:13AM 16        NONE OF THAT APPLIES WITH RESPECT TO THE PROSECUTION AND

11:13AM 17   THESE AGENCIES.  WE DO NOT HAVE THE AUTHORITY OR THE ABILITY TO

11:13AM 18   DICTATE THE TERMS OF HOW THEY COLLECT AND PRODUCE THESE

11:13AM 19   DOCUMENTS, AND THAT'S THE CORE REASON WHY WE'RE RESISTANT TO

11:13AM 20   THE IDEA OF A RULE 16 ORDER.

11:13AM 21              THE COURT:  I UNDERSTAND.  IT WAS REALLY PROVIDENT

11:13AM 22   OF ME TO RAISE THAT ISSUE, WASN'T IT?

11:14AM 23        ALL RIGHT.  LET'S MOVE TO NUMBER 3, SHALL WE?

11:14AM 24              MR. WADE:  YES, YOUR HONOR, BACK TO DOCUMENT 170,

11:14AM 25   PAGE 10, ITEM 3.  I BELIEVE THAT'S A TIMING ISSUE WHICH I

11:14AM  1     BELIEVE THE COURT IS PREPARED TO ADDRESS.  I WON'T BELABOR

11:14AM  2     THAT.

11:14AM  3          STARTING ON ITEM 4 ARE A HOST OF TECHNICAL ISSUES.  THERE

11:14AM  4     ARE SOME SUBPARAGRAPHS HERE.  THIS IS SORT OF THE NITTY GRITTY

11:14AM  5     OF IT, YOUR HONOR.

11:14AM  6          AND AS INFORMED BY EXHIBIT A, WHICH IS THE LETTER WHICH

11:14AM  7     DISCUSSES THESE TECHNICAL DEFICIENCIES WHICH IS SLIGHTLY

11:14AM  8     IMPENETRABLE TO THE DEFENSE AT TIMES SPECIFICALLY AS IT RELATES

11:14AM  9     TO SOME OF THE REDACTIONS AND DOCUMENTS THAT ARE WITHHELD.

11:14AM 10          BUT IF WE CAN START WITH THE SEARCH TERMS, WHICH IS WHAT

11:14AM 11     IS IN PARAGRAPH 4, THERE ARE A COUPLE OF SPECIFIC DEFICIENCIES

11:15AM 12     THAT ARE IDENTIFIED THERE, THE FIRST OF WHICH IS THAT THERE WAS

11:15AM 13     NOT A STAND-ALONE SEARCH TERM FOR THE ROLLING CUSTODIANS FOR

11:15AM 14     THE TERM THERANOS WHICH WAS SOMEWHAT -- MAYBE IT'S OVERLY

11:15AM 15     SIMPLISTIC, BUT IT'S SOMEWHAT MYSTIFYING TO THE DEFENSE THAT

11:15AM 16     THAT SIMPLE TERM WASN'T INCLUDED TO IDENTIFY THE POOL OF

11:15AM 17     DOCUMENTS THAT SHOULD BE REVIEWED TO MAKE SURE THAT MATERIAL IS

11:15AM 18     GATHERED.

11:15AM 19          THE SECOND ISSUE RELATES TO LABORATORY DEVELOPED TESTS, OR

11:15AM 20     LDT, AND USING THAT AS SEARCH TERMS WHICH GIVEN SOME OF THE

11:15AM 21     BACK AND FORTH WITH THE AGENCIES AND THE QUESTION AS TO WHETHER

11:15AM 22     THE FDA EVEN HAD THE AUTHORITY TO REGULATE THERANOS, IT ALL

11:15AM 23     CENTERS ON THAT TERM.  THAT IS CLEARLY WHAT PART OF THE REQUEST

11:15AM 24     THAT IS SET FORTH IN CATEGORY 4 OF THE DEFENSE REQUEST AND HOW

11:15AM 25     THAT, HOW THAT REQUEST THAT A SEARCH FOR DOCUMENTS RESPONSIVE

11:16AM 1      TO THAT REQUEST COULD BE DONE WITHOUT AT LEAST LOOKING AT

11:16AM 2      DOCUMENTS THAT HAVE LAB DEVELOPED TESTS, OR LDT'S, WE FAIL TO

11:16AM 3      UNDERSTAND.

11:16AM 4             MR. COOPERSMITH:  YOUR HONOR, IF I COULD ADD

11:16AM 5      SOMETHING TO THIS ISSUE OF THE SEARCH TERMS.  LDT, LABORATORY

11:16AM 6      DEVELOPED TESTS, IS ONE EXAMPLE, BUT THERE ARE OTHERS.  JUST TO

11:16AM 7      PUT A FINE POINT ON THIS AND TO START FROM THE CONCEPT.  SO A

11:16AM 8      LABORATORY DEVELOPED TEST IS BASICALLY A TEST THAT A LABORATORY

11:16AM 9      COMES UP WITH ON ITS OWN AND RUNS IN ITS OWN LAB.

11:16AM 10     TRADITIONALLY, THE FDA HAS BACKED OFF ON ENFORCING THEIR

11:16AM 11     MEDICAL DEVICE REGULATIONS ON THAT SORT OF THING.  INSTEAD,

11:16AM 12     THEY HAVE LEFT THAT REGULATION TO CMS AS THE REGULATOR OF

11:16AM 13     LABORATORIES IN THE UNITED STATES.

11:16AM 14     SO IF YOU DEVELOP YOUR OWN TEST, AND YOU DON'T TRY TO SELL

11:16AM 15     IT TO SOMEONE ELSE COMMERCIALLY BUT YOU'RE RUNNING IT IN YOUR

11:17AM 16     OWN LAB, THAT CONCEPT OF AN LDT IS WHAT THE FDA HAS

11:17AM 17     TRADITIONALLY DECIDED THAT WE'LL LEAVE THAT TO CMS TO MAKE SURE

11:17AM 18     THE TESTS ARE BEING RUN CORRECTLY, BUT WE'RE NOT GOING TO

11:17AM 19     REGULATE IT AS A MEDICAL DEVICE.  THAT'S THE ISSUE.

11:17AM 20     THAT'S AN IMPORTANT REALLY CENTRAL ISSUE IN THIS CASE

11:17AM 21     BECAUSE, AS MR. WADE SAID, IT GOES TO THE HEART OF WHETHER THE

11:17AM 22     FDA REALLY HAD ANY AUTHORITY TO REGULATE THE THERANOS DEVICES

11:17AM 23     AND TESTS THAT ARE MENTIONED IN THE INDICTMENT AND ARE STRONGLY

11:17AM 24     AT ISSUE IN THIS CASE.

11:17AM 25     SO WHEN YOU LOOK AT THAT SEARCH TERM -- NOW, THE

11:17AM 1    GOVERNMENT'S ARGUMENT ON THIS SEARCH TERM, AND MS. DAW MAKES

11:17AM 2    IT, AND THE AGENCY COUNSEL MAKE IT, AND MR. BOSTIC MADE IT IN

11:17AM 3    THE STATUS REPORT, IS THAT THEY SAY, OH, IF YOU LOOK AT

11:17AM 4    CATEGORY 4 OF THE COURT'S JULY 19TH ORDER, IT DOESN'T MENTION

11:17AM 5    THE TERM LDT.  THAT'S THE CATEGORY THAT YOU MAY HAVE IT IN

11:17AM 6    FRONT OF YOUR HONOR THAT ASKS FOR ALL DOCUMENTS REGARDING THE

11:17AM 7    FDA'S TERMINATION OF THE TYPE OF FDA APPROVAL REQUIRED FOR

11:17AM 8    THERANOS'S PROPRIETARY TECHNOLOGY.

11:18AM 9        SO WE'RE TALKING ABOUT DOES THE FDA HAVE TO APPROVE THE

11:18AM 10   THERANOS DEVICES AS A MEDICAL DEVICE OR IS IT GOING TO BE UNDER

11:18AM 11   THIS LDT CATEGORY?

11:18AM 12       SO WHEN YOU LOOK AT THE ACTUAL SEARCH TERMS THE FDA USED

11:18AM 13   TO DO THE SEARCHES, THEY RAN THERANOS, THE TERM THERANOS, AND

11:18AM 14   VARIOUS THINGS, INCLUDING THE TERM HUMANITARIAN DEVICE

11:18AM 15   EXEMPTION.

11:18AM 16       WELL, THE TERM HUMANITARIAN DEVICE EXEMPTION DOESN'T

11:18AM 17   APPEAR IN THE COURT'S ORDER CATEGORY 4, EITHER.

11:18AM 18       BUT TO EXCLUDE LDT'S -- TO RUN THE SEARCH FOR HUMANITARIAN

11:18AM 19   DEVICE EXEMPTION, WHICH DOESN'T APPEAR IN THE COURT'S ORDER,

11:18AM 20   THEN TO ARGUE WE DON'T HAVE TO SEARCH FOR THERANOS AND LDT'S

11:18AM 21   BECAUSE THAT'S NOT IN THE COURT ORDER, THAT MAKES NO SENSE.

11:18AM 22       AND WHAT WE THINK HAS GONE ON HERE, YOUR HONOR, IS BY

11:18AM 23   EXCLUDING THE TERM LDT THE AGENCIES HAVE EXCLUDED A LARGE

11:18AM 24   UNIVERSE OF DOCUMENTS THAT RESPOND TO THE COURT ORDER AND ARE

11:18AM 25   AT THE CORE OF THIS CASE.

11:18AM   1          YOUR HONOR, THAT'S PROBABLY THE REASON WHY WHEN WE LOOK AT

11:19AM   2     THE HISTOGRAM WE'VE ATTACHED TO THE STATUS REPORT, AND YOU'VE

11:19AM   3     SEEN IT BEFORE, YOUR HONOR, IT JUST MAPS OUT WHAT TIME PERIODS

11:19AM   4     THESE DOCUMENTS CORRESPOND TO, THERE'S A VERY LOW INCIDENCE OF

11:19AM   5     DOCUMENTS IN 2014.  WE KNOW THAT 2014 WAS A HEAVY YEAR WHERE

11:19AM   6     THE DISCUSSION, THE DIALOGUE BETWEEN THERANOS AND FDA ABOUT

11:19AM   7     LDT'S WAS ONGOING.

11:19AM   8          SO TO EXCLUDE THAT SEARCH TERM MAKES NO SENSE.

11:19AM   9               THE COURT:  SO, LET ME JUST --

11:19AM  10               MR. COOPERSMITH:  PLEASE, YOUR HONOR.

11:19AM  11               THE COURT:  IT'S THREE AND TWO NOW.  LET'S GET TO

11:19AM  12     THE PITCH.

11:19AM  13               MR. COOPERSMITH:  YES, YOUR HONOR.

11:19AM  14               THE COURT:  WHAT IS IT YOU WANT?

11:19AM  15               MR. COOPERSMITH:  WELL, THE PITCH IS THAT I THINK

11:19AM  16     THEY NEED TO GO BACK.  REMEMBER, THEY NEVER ASKED US WHAT

11:19AM  17     SEARCH TERMS THEY WERE RUNNING, BUT THERE WERE A NUMBER OF

11:19AM  18     SEARCH TERMS, LDT BEING ONE EXAMPLE, AND WE NEED TO GO BACK AND

11:19AM  19     TELL THEM WHAT SEARCH TERMS NEED TO BE ADDED HERE, AND THEY

11:19AM  20     NEED TO RUN THOSE SEARCH TERMS.

11:19AM  21               THE COURT:  AND THAT'S -- YOU WANT A FASTBALL RIGHT

11:20AM  22     DOWN THE MIDDLE?

11:20AM  23               MR. COOPERSMITH:  RIGHT DOWN THE MIDDLE.

11:20AM  24               THE COURT:  AND SO IT'S LDT TERMS YOU WANT THEM TO

11:20AM  25     RUN?

11:20AM  1          MR. COOPERSMITH:  WELL, WE CAN GIVE A WHOLE LIST OF

11:20AM  2    SEARCH TERMS, YOUR HONOR.  THAT'S ONE.  WE CAN DO IT NOW OR WE

11:20AM  3    CAN DO IT --

11:20AM  4          THE COURT:  SO TELL ME ABOUT THAT.  WHEN YOU SAY "I

11:20AM  5    HAVE GIVE A WHOLE LIST," YOU CAN IMAGINE THE EXCITEMENT THAT

11:20AM  6    THE PROSECUTION AND THE AGENCY HAS WITH THAT.  IS THAT A LIST

11:20AM  7    OF 50 NAMES NOW?  IS THAT A LIST OF THREE THINGS?

11:20AM  8       IT SEEMS LIKE -- I THINK I TAKE YOUR POINT, AND IT SEEMS

11:20AM  9    LIKE THERANOS AND LDT, THAT'S SOMETHING THAT PROBABLY HAS SOME

11:20AM  10   RELEVANCE AND WOULD PRODUCE SOME DOCUMENTS THAT MIGHT BE

11:20AM  11   RELEVANT TO CATEGORY 2 EVEN, CATEGORY 4 PERHAPS.

11:20AM  12      BUT I'M JUST CURIOUS, IF WE WANT TO PROCEED HERE, WHAT IS

11:20AM  13   IT THAT YOU SUGGEST BE ALTERED, CHANGED OR USED AS ALTERNATIVE

11:20AM  14   TERMS TO ACCOMPLISH THIS?

11:20AM  15      I'M CURIOUS THEN WHAT THE PRODUCTION WOULD LOOK LIKE?

11:20AM  16   WHAT IS THE SIZE OF THAT ALWAYS BEING MINDFUL OF HOW MUCH TIME

11:21AM  17   THIS IS GOING TO TAKE?

11:21AM  18          MR. COOPERSMITH:  WELL, YOUR HONOR, SO FIRST OF ALL,

11:21AM  19   WE'RE NOT ASKING THEM TO REDO.  I MEAN, THEY'VE PRODUCED THE

11:21AM  20   DOCUMENTS THAT THEY HAVE ALREADY PRODUCED.

11:21AM  21      BUT I JUST WANT TO POINT OUT THAT IF THE AGENCIES HAD NOT

11:21AM  22   KEPT US IN THE DARK AND HAD TOLD US WHAT THEY WERE DOING, WE

11:21AM  23   WOULD HAVE BEEN ABLE TO TELL THEM.

11:21AM  24      SO, YOU KNOW, I DON'T WANT TO BELABOR THAT POINT, BUT I

11:21AM  25   THINK THAT'S THE CASE.

11:21AM   1          THE COURT:  THAT'S A GOOD CHOICE.

11:21AM   2          MR. COOPERSMITH:  YES, YOUR HONOR.  BUT GOING

11:21AM   3   FORWARD, MOVING FORWARD WE HAVE LDT, AS I'VE JUST EXPLAINED.

11:21AM   4          THE COURT:  RIGHT.

11:21AM   5          MR. COOPERSMITH:  THERE'S ANOTHER TERM THAT IS

11:21AM   6   UNIQUE TO THERANOS'S BUSINESS, AND IT'S THE TERM NANOTAINER.

11:21AM   7          THE COURT:  SPELL THAT.

11:21AM   8          MR. COOPERSMITH:  N-A-N-O-T-A-I-N-E-R, NANOTAINER.

11:21AM   9   THAT'S A TERM THAT IS UNIQUE TO THERANOS.  SO I'M NOT AWARE OF

11:21AM   10  OTHER COMPANIES WHO USE THAT TERM.  THAT'S WHAT THERANOS CALLED

11:21AM   11  ITS BLOOD COLLECTION DEVICE THAT COLLECTED SMALL BLOOD SAMPLES.

11:22AM   12     WHEN YOU LOOK AT THE SEARCH TERMS THAT THE FDA HAS RUN,

11:22AM   13  THEY HAVE NOT RUN THAT TERM EITHER, AND THAT'S LIKELY TO

11:22AM   14  PRODUCE ADDITIONAL DOCUMENTS.

11:22AM   15     SO WE DON'T WANT TO REDO ANYTHING, YOUR HONOR, BUT MOVING

11:22AM   16  FORWARD WE WOULD LIKE THESE ADDITIONAL SEARCH TERMS RUN.  AND

11:22AM   17  WE CAN TRY TO BE AS LIMITED, YOU KNOW, SO THEY'RE THE ONES THAT

11:22AM   18  ARE REALLY IMPORTANT, AND THEN TO HAVE THEM RUN IT, AND MAKE

11:22AM   19  SURE THOSE DOCUMENTS ARE PROPERLY REVIEWED, AND PRODUCED IF

11:22AM   20  THEY RESPOND TO THE COURT'S ORDER.

11:22AM   21          THE COURT:  THANK YOU.  SO, MR. COPPERSMITH, IS THIS

11:22AM   22  SOMETHING THAT YOU WOULD LIKE THE COURT TO ORDER -- I KNOW YOU

11:22AM   23  WANT THE COURT TO ORDER IT, BUT THE TIMING OF THAT?  IS THAT

11:22AM   24  SOMETHING THAT WE SHOULD DISCUSS NOW?  IS THIS SOMETHING THAT I

11:22AM   25  SHOULD GIVE YOU THE PRIVILEGE OF MEETING AND CONFERRING WITH

11:22AM 1    AGENCY COUNSEL AND THE GOVERNMENT TO DEVELOP A STRATEGY TO

11:22AM 2    ACCOMPLISH THAT WITHIN THE TIMELINE THAT THE COURT IS GOING TO

11:22AM 3    GIVE?

11:22AM 4          MR. COOPERSMITH:  YES, YOUR HONOR.  SO THE ISSUE IS

11:22AM 5    REALLY ONE OF TIMING, RIGHT?  THE LONGER THAT WE GO WITH MEET

11:22AM 6    AND CONFER AS OPPOSED TO A COURT ORDER DIRECTING THESE

11:23AM 7    ADDITIONAL SEARCH TERMS, THE MORE IT'S GOING TO BE PROBLEMATIC,

11:23AM 8    RIGHT?  BECAUSE IN THE MEET AND CONFER WE MAY GET, YOU KNOW,

11:23AM 9    DISAGREEMENTS ON THESE THINGS.

11:23AM 10   WHAT I THINK MAKES MORE SENSE TO ME IS THAT THE COURT

11:23AM 11   ORDER THE LDT, AND LABORATORY DEVELOPED TEST TERMS, THE

11:23AM 12   NANOTAINER TERMS, FINGERSTICK IS ANOTHER ONE.  THAT WAS A

11:23AM 13   COMMON TERM USED IN THE CASE OF THERANOS FOR THE WAY THAT THEY

11:23AM 14   COLLECTED BLOOD.

11:23AM 15   AT LEAST IF THOSE WERE RUN, AND I HAVE A LIST OF, YOU

11:23AM 16   KNOW, 23 THINGS, BUT WITHOUT READING THAT, YOU KNOW, THOSE 3

11:23AM 17   STAND OUT TO ME AS THE MOST IMPORTANT.

11:23AM 18   YOU KNOW, A COURT ORDER -- THAT WOULD SAVE TIME, YOUR

11:23AM 19   HONOR.  BASICALLY THEY WOULD HAVE TO RUN THOSE.  WHATEVER

11:23AM 20   DOCUMENTS COME UP IN THOSE SEARCHES THEY WOULD HAVE TO REVIEW,

11:23AM 21   AND I THINK WE WOULD BE CLOSER TO GETTING COMPLIANCE WITH THE

11:23AM 22   ORDER.

11:23AM 23          THE COURT:  SURE.  WELL, AS I TOLD YOU, WORKING

11:23AM 24   BACKWARDS, BECAUSE I TOLD YOU THE END OF THE YEAR IS THE

11:23AM 25   TIMELINE THAT I'M GOING TO SET HERE.  SO YOUR MEET AND CONFERS,

11:23AM 1    YOU SET THOSE UP SUCH THAT YOU CAN ACCOMPLISH THIS BY THE END

11:23AM 2    OF THE YEAR.  WORKING BACKWARDS, THAT'S HOW THAT WOULD WORK.

11:24AM 3              MR. WADE:  WE'RE PREPARED TO DO IT AS SOON AS AFTER

11:24AM 4    THIS CONFERENCE.

11:24AM 5              THE COURT:  SURE.

11:24AM 6              MR. WADE:  I THINK THE TERM THERANOS IS A

11:24AM 7    STAND-ALONE TERM.  LDT AND A COUPLE OF THE TERMS THAT

11:24AM 8    MR. COPPERSMITH HAS SUGGESTED, MAYBE A COUPLE MORE, WE'RE NOT

11:24AM 9    LOOKING TO REINVENT THE WHEEL HERE, BUT THERE ARE JUST A COUPLE

11:24AM 10   OF VERY OBVIOUS TERMS THAT WE THINK WERE OMITTED, AND WE WOULD

11:24AM 11   ASK THAT THOSE BE INCLUDED.

11:24AM 12             THE COURT:  OKAY.  LET ME ASK MS. MARTINEZ-RESLY

11:24AM 13   ABOUT THIS.

11:24AM 14             MS. MARTINEZ-RESLY:  YES, YES, YOUR HONOR.

11:24AM 15       SO THE, SO THE SEARCH TERMS THAT WE UTILIZED WERE -- WE

11:24AM 16   PROVIDED TO THE PARTIES AND WERE SPECIFICALLY GEARED TOWARD THE

11:24AM 17   SIX CATEGORIES REQUESTED BY THE DEFENDANTS IN THEIR MOTION TO

11:24AM 18   COMPEL.

11:24AM 19       WHAT I'M HEARING SUGGESTED NOW AND AT THE MEET AND CONFER

11:24AM 20   IS THAT NOW THAT THEY ARE SEEKING DOCUMENTS FAR BROADER THAN

11:25AM 21   THE SIX CATEGORIES OF DOCUMENTS JUST AS INDICATED BY THE

11:25AM 22   STANDALONE TERM "THERANOS," FOR EXAMPLE, WE HAVE LAID OUT IN

11:25AM 23   OUR OCTOBER 30TH LETTER TO THE COURT AS TO SPECIFICALLY WHY WE

11:25AM 24   DO NOT BELIEVE AN LDT IS AN APPROPRIATE SEARCH TERM FOR THE SIX

11:25AM 25   CATEGORIES OF DOCUMENTS.

11:25AM   1      BUT I DID JUST WANT TO POINT THAT OUT THAT THE SEARCH

11:25AM   2   TERMS THAT THE DEFENDANTS ARE REQUESTING HERE SEEM TO BE FAR

11:25AM   3   BROADER THAN WHAT THEY ORIGINALLY REQUESTED AND WHAT THE COURT

11:25AM   4   ORDERED THE AGENCIES TO SEARCH FOR AND PRODUCE.

11:25AM   5          THE COURT:  OKAY.  THANK YOU, MS. MARTINEZ-RESLY.

11:25AM   6      LET ME ASK YOU, IF -- WHAT WOULD IT ENTAIL TO INSERT THESE

11:25AM   7   NEW SEARCH TERMS, THESE THREE SEARCH TERMS, THE LDT, THE

11:25AM   8   NANOTAINER, FINGERSTICK?

11:26AM   9          MS. MARTINEZ-RESLY:  SO THAT -- I'M SORRY.  GO

11:26AM  10   AHEAD.  DID I INTERRUPT YOU, YOUR HONOR?

11:26AM  11          THE COURT:  I WAS GOING TO SAY THERANOS ALSO.  SO

11:26AM  12   THERE WAS FOUR OF THEM.

11:26AM  13          MS. MARTINEZ-RESLY:  SURE.  SO I GUESS I WOULD SAY

11:26AM  14   THAT OUR INITIAL COLLECTION, TO THE EXTENT IT WAS DONE VIA THE

11:26AM  15   SEARCH TERMS -- I'M SORRY.

11:26AM  16      OUR INITIAL COLLECTION DID INCLUDE THERANOS AS A

11:26AM  17   STANDALONE SEARCH TERM ANYWAY AND NANOTAINER AS WELL I'M BEING

11:26AM  18   REMINDED.  AND SO THE DOCUMENTS FROM WHICH WE, YOU KNOW, KIND

11:26AM  19   OF A STARTING SUBSET OF DOCUMENTS DID REQUEST THOSE TWO SEARCH

11:26AM  20   TERMS.

11:26AM  21      AND TO YOUR SECOND QUESTION WHICH WAS HOW -- WHAT WOULD IT

11:26AM  22   TAKE AND WHAT WOULD BE THE RESULT OF YOU USING THESE ADDITIONAL

11:26AM  23   SEARCH TERMS?  WE CAN PUT THOSE SEARCH TERMS THROUGH OUR

11:26AM  24   DOCUMENT REVIEW DATABASE, AND THE AMOUNT OF TIME IT WOULD TAKE

11:27AM  25   WOULD DEPEND, OF COURSE, ON THE VOLUME OF MATERIAL RESPONSIVE

11:27AM  1      TO THOSE TERMS.

11:27AM  2          IT'S DIFFICULT FOR ME TO ESTIMATE AT THIS POINT WITHOUT

11:27AM  3      KNOWING THE VOLUME, BUT I DO THINK THAT IF THE COURT WERE TO

11:27AM  4      ORDER THE PRODUCTION BY THE END OF THE YEAR, WE WOULD DO OUR

11:27AM  5      ABSOLUTE BEST AS WE HAVE BEEN DOING TO MAKE THAT DEADLINE.

11:27AM  6              THE COURT:  OKAY.

11:27AM  7              MS. NORTON:  YOUR HONOR, THIS IS MARCI NORTON.

11:27AM  8          I WOULD JUST LIKE TO ADD THAT THERE'S ANOTHER QUESTION

11:27AM  9      HERE, WHICH IS IF WE HAD TO GO BACK TO OUR ORIGINAL SEARCH OF

11:27AM  10     THE OVER 80 CUSTODIANS THAT HAVE BEEN SEARCHED SO FAR AND ADD

11:27AM  11     NEW SEARCH TERMS LIKE FINGERSTICK OR LTD, THAT WOULD TAKE QUITE

11:27AM  12     SOME TIME BECAUSE FOR THE FORMER EMPLOYEES THOSE SEARCHES ARE

11:27AM  13     OUT OF OUR HANDS.  THOSE ARE DONE BY OUR OFFICE OF INFORMATION

11:27AM  14     MANAGEMENT STAFF, AND I THINK WE WERE RECENTLY TOLD THAT IT'S

11:28AM  15     AT LEAST SIX WEEKS TO DO A SEARCH OF A FORMER EMPLOYEE'S FILES.

11:28AM  16         SO WHAT MS. MARTINEZ-RESLY WAS TALKING ABOUT IS IF WE ADD

11:28AM  17     THOSE SEARCH TERMS TO THE CURRENTLY COLLECTED DOCUMENTS, WHICH

11:28AM  18     I BELIEVE IS HUNDREDS OF THOUSANDS OF PAGES, THAT COULD BE DONE

11:28AM  19     WITH THE SOFTWARE THAT WE HAVE NOW.

11:28AM  20         IF WE'RE TALKING ABOUT RESEARCHING, ESPECIALLY WITH

11:28AM  21     RESPECT TO THOSE FORMER EMPLOYEES, I DON'T KNOW THAT WE WOULD

11:28AM  22     BE ABLE TO MEET AN END-OF-THE-YEAR DEADLINE.

11:28AM  23             THE COURT:  OKAY.  THANK YOU.  MR. COPPERSMITH.

11:28AM  24             MR. COOPERSMITH:  YOUR HONOR, JUST TO BRIEFLY POINT

11:28AM  25     OUT IN RESPONSE TO ONE THING THAT WAS SAID, THIS IS IN NO WAY

11:28AM 1    AN EFFORT TO EXPAND THE COURT ORDER.

11:28AM 2         THE COURT ORDER, AND I'M TALKING ABOUT CATEGORY 4 IN THE

11:28AM 3    COURT'S ORDER, DIRECTLY REQUIRES PRODUCTION OF INFORMATION,

11:28AM 4    DOCUMENTS REGARDING THE FDA'S DETERMINATION OF THE TYPE OF FDA

11:29AM 5    APPROVAL FOR THERANOS'S PROPRIETARY TESTING.

11:29AM 6         THERE CAN BE NO SEARCH TERM THAT IS MORE THE CORE OF THAT

11:29AM 7    CATEGORY THAN THIS LDT SEARCH TERM.  REALLY THE SAME GOES FOR

11:29AM 8    NANOTAINER AND FINGERSTICK.

11:29AM 9         AND FOR THE GOVERNMENT TO SAY THAT'S NOT THE CASE WHEN

11:29AM 10   THEY'VE DECIDED TO RUN SEARCH TERMS LIKE HUMANITARIAN DEVICE,

11:29AM 11   WHICH ALSO DON'T APPEAR IN THE COURT'S ORDER, THEY'RE SORT OF

11:29AM 12   TRYING TO FIND THINGS ON THE FRINGES, AND IT'S HARD TO

11:29AM 13   UNDERSTAND HOW THEY WERE REALLY TRYING TO COLLECT ALL OF THE

11:29AM 14   DOCUMENTS THAT WERE AT THE VERY HEART OF THIS CASE IF THEY

11:29AM 15   DIDN'T RUN LTD.

11:29AM 16        THE COURT:  AND YOU DIDN'T HAVE AN OPPORTUNITY,

11:29AM 17   MR. COPPERSMITH, TO GIVE SUGGESTED SEARCH TERMS?

11:29AM 18        MR. COOPERSMITH:  NO.  THEY KEPT US IN THE DARK, AND

11:29AM 19   EVENTUALLY THEY DID PROVIDE US LATE IN THE GAME WITH HERE'S

11:29AM 20   WHAT WE RAN WHICH IS WHY WE'RE BEFORE THE COURT TALKING ABOUT

11:29AM 21   THIS.

11:29AM 22        THE COURT:  OKAY.

11:29AM 23        MR. COOPERSMITH:  BUT THEY DIDN'T EVER CONSULT WITH

11:29AM 24   US AND SAY, HEY, ARE THERE SEARCH TERMS THAT YOU WOULD LIKE US

11:29AM 25   TO RUN?  AND MAYBE THEY WOULDN'T HAVE AGREED WITH US ON

11:29AM 1    EVERYTHING, BUT THEY DIDN'T DO THAT.

11:30AM 2            THE COURT:  SO YOU HEARD THE EXPLANATION THAT IT

11:30AM 3    WILL BE PERHAPS SIX WEEKS TO CONTACT THE OIM OF THE AGENCY FOR

11:30AM 4    FORMER EMPLOYEES.

11:30AM 5        AND YOU HEARD ABOUT, AS I UNDERSTAND IT, IF THE AGENCY

11:30AM 6    GOES FORWARD NOW WITH THESE NEW SEARCH TERMS ON -- IT SOUNDS

11:30AM 7    LIKE IT'S 80 EMPLOYEES, I THINK SHE SAID -- IT MIGHT TAKE SOME

11:30AM 8    TIME.

11:30AM 9        ARE YOU ASKING -- IS THAT WHAT YOU WANT TO HAVE DONE?

11:30AM 10           MR. COOPERSMITH:  I THINK IT'S REQUIRED UNDER THE

11:30AM 11   COURT ORDER, YOUR HONOR, AND I'M SORRY IT HASN'T HAPPENED

11:30AM 12   ALREADY.

11:30AM 13           THE COURT:  THAT'S WHAT YOU WANT DONE?

11:30AM 14           MR. COOPERSMITH:  YES, YOUR HONOR.

11:30AM 15           MR. WADE:  IT NEEDS TO BE DONE.

11:30AM 16           MS. NORTON:  YOUR HONOR, THIS IS MARCI NORTON.  MAY

11:30AM 17   I JUST INTERJECT A COUPLE OF THINGS?

11:30AM 18           THE COURT:  YES.

11:30AM 19           MS. NORTON:  THANK YOU.  FIRST OF ALL, I HAVE TO

11:30AM 20   CORRECT MR. COPPERSMITH'S COMMENTS THAT THE FDA NEVER REACHED

11:30AM 21   OUT TO HIM REGARDING SEARCH TERMS.

11:30AM 22       WHILE IT MAY BE THE CASE THAT WE DID NOT, WITH RESPECT TO

11:30AM 23   THE MOTION TO COMPEL, I PERSONALLY E-MAILED MR. COPPERSMITH'S

11:31AM 24   ASSOCIATE IN FEBRUARY, I BELIEVE, OF THIS YEAR AFTER THE

11:31AM 25   GOVERNMENT SHUTDOWN WAS OVER AND WE WERE TALKING ABOUT THE

11:31AM  1    SUBPOENA TO REQUEST SEARCH TERMS, AND I WAS NEVER PROVIDED ANY.

11:31AM  2    SO I WANTED TO MAKE THAT CLEAR ON THE RECORD.

11:31AM  3        SECONDLY, I'D LIKE TO POINT OUT, BECAUSE THEY SEEM TO --

11:31AM  4    MR. COPPERSMITH SEEMS TO BE HUNG UP ON THE FACT THAT THE FDA

11:31AM  5    LOOKS FOR THE TERMS HUMANITARIAN DEVICE EXEMPTION.

11:31AM  6        AS HE'S AWARE, AND YOU MAY NOT BE AWARE, THERE ARE MANY

11:31AM  7    WAYS THAT A MEDICAL DEVICE CAN COME TO MARKET LEGALLY THROUGH

11:31AM  8    FDA.  SO OUR SEARCH TERMS THAT WE USE, BECAUSE IT HAS ALWAYS

11:31AM  9    BEEN FDA'S POSITION THAT THERANOS'S DEVICES ARE NOT LABORATORY

11:31AM  10   DEVELOPED TESTS, WE USED THE SEARCH TERM FOR THE TYPE OF

11:31AM  11   APPROVAL AND CLEARANCES THAT ONE MIGHT GET THROUGH FDA, AND

11:31AM  12   THOSE ARE WHAT ARE CALLED THE 510K PROCESS; THERE'S A PMA, THE

11:32AM  13   PREMARKET APPROVAL PROCESS; THE 510K CALLED CLEARANCE; THERE'S

11:32AM  14   A HUMANITARIAN DEVICE EXEMPTION, WHICH WE KNEW THEY DID NOT

11:32AM  15   HAVE BUT WE SEARCHED, JUST TO BE CLEAR; AND THEN INVESTIGATION

11:32AM  16   DEVICE EXEMPTION IS ANOTHER WAY THAT DEVICES CAN BE LEGALLY

11:32AM  17   MARKETED ALSO CALLED AN ID.  AND THEN WE SEARCHED FOR ALL OF

11:32AM  18   THE APPLICATION NUMBERS OF APPLICATIONS THAT THAT FIRM

11:32AM  19   SUBMITTED TO THE AGENCY.  THERE'S ALSO A PROCESS CALLED DE

11:32AM  20   NOVO, AND WE SEARCHED FOR THAT.  SO THAT'S WHY WE CAME UP WITH

11:32AM  21   THOSE TERMS.

11:32AM  22        WE DID NOT SEARCH FOR THE LTD'S BECAUSE THE AGENCY DID NOT

11:32AM  23   EVER TAKE THE POSITION THAT THESE -- THIS COMPANY'S PRODUCTS

11:32AM  24   WERE LTD'S.

11:32AM  25        THE COURT:  OKAY.  THANK YOU VERY MUCH.

11:32AM 1      ANYTHING FURTHER BEFORE WE MOVE ON FROM THIS?

11:32AM 2        MR. WADE:  ONLY ONE POINT, YOUR HONOR, THAT THE

11:32AM 3 STATEMENT ABOUT THE FDA NOT REQUIRING REGULATION OF CERTAIN

11:32AM 4 THERANOS TECHNOLOGY IS DIRECTLY CONTRADICTORY TO AN ALLEGATION

11:33AM 5 IN PARAGRAPH 12(F) OF THE INDICTMENT.

11:33AM 6     SO THE POSITION BY FDA COUNSEL ONLY UNDERSCORES THE REASON

11:33AM 7 WHY WE NEED THE MATERIAL RELATING TO THAT.  IN SOME WAYS IT

11:33AM 8 SEEMS LIKE WE MAY AGREE MORE WITH THE FDA THAN WE AGREE WITH

11:33AM 9 THE UNITED STATES ASSISTANT ATTORNEYS PROCEEDING WITH THIS

11:33AM 10 CASE, BUT ULTIMATELY IT'S GOING TO BE 12 JURORS WHO NEED TO

11:33AM 11 DECIDE, AND WE NEED TO HAVE THE EVIDENCE THAT WE NEED TO PROVE

11:33AM 12 OUR CASE.

11:33AM 13       THE COURT:  OKAY.  THANK YOU.

11:33AM 14     LET'S MOVE ON -- WE ARE LEFT WITH 4(A) AND (B) -- OR (C)

11:33AM 15 PERHAPS.  I THINK (C) WE TALKED ABOUT EARLIER SO I DON'T THINK

11:33AM 16 WE NEED TO DEAL WITH THAT ANY FURTHER.  THAT'S MR. GUTIERREZ.

11:33AM 17 WE TALKED ABOUT CORRUPTION AND THOSE FILES.

11:33AM 18     SO I THINK WE'RE LEFT WITH THE DOCUMENTS THAT I THINK YOU

11:34AM 19 INDICATE ARE IN YOUR OPINION UNINTELLIGIBLE.

11:34AM 20       MR. WADE:  THE HEAVIEST REDACTIONS AND OMITTED

11:34AM 21 DOCUMENTS I'VE SEEN IN MY CAREER, YOUR HONOR.

11:34AM 22       THE COURT:  WELL, YOU'RE A RELATIVELY NEW

11:34AM 23 PRACTITIONER, COUNSEL.

11:34AM 24     (LAUGHTER.)

11:34AM 25       MR. WADE:  THANK YOU, YOUR HONOR.

11:34AM 1      WELL, THEN I HOPE I NEVER SEE SUCH HEAVILY REDACTED

11:34AM 2  MATERIALS FOR THE 50 YEARS I HAVE LEFT.

11:34AM 3      THERE ARE SOME EXAMPLES THAT ARE ATTACHED TO THE

11:34AM 4  PLEADINGS.  IT'S HARD TO UNDERSTAND EXACTLY WHAT IS GOING ON

11:34AM 5  HERE BECAUSE SOME OF THESE INTENTIONALLY WITHHELD MATERIALS ARE

11:34AM 6  TECHNICAL ISSUES OR PRIVILEGED CLAIMS APPEAR.  WE JUST DON'T

11:34AM 7  EVEN REALLY KNOW WHAT IS GOING ON.

11:34AM 8      WHAT YOU HAVE IS A DOCUMENT THAT HAS A SUBJECT MATTER OF

11:34AM 9  THERANOS AND THEN NO CONTENT WHATSOEVER.

11:34AM 10      NOW, IS THERE SOME WORLD IN WHICH THAT ISN'T RELEVANT?  I

11:34AM 11  MEAN, I GUESS MAYBE I COULD IMAGINE IT, BUT IT'S HARD TO

11:35AM 12  IMAGINE.

11:35AM 13      ANOTHER MORE SPECIFIC ISSUE THAT WE HAVE, YOUR HONOR, IS

11:35AM 14  IT'S BEEN SUGGESTED THAT DOCUMENTS WERE ONLY PRODUCED ONCE.

11:35AM 15      SO, FOR EXAMPLE, IF THERE'S AN E-MAIL WITH AN ATTACHMENT

11:35AM 16  TO ONE GROUP OF PEOPLE, AND THAT ATTACHED DOCUMENT EXISTS

11:35AM 17  SOMEWHERE ELSE, IT IS WITHHELD WITH THE OTHER -- THE SECOND

11:35AM 18  E-MAIL AND THE THIRD E-MAIL WHICH CREATES HUGE EVIDENTIARY

11:35AM 19  ISSUES IF THE COURT COULD JUST IMAGINE HOW WE WANT TO USE THESE

11:35AM 20  DOCUMENTS IN THE CASE WITH DIFFERENT WITNESSES.

11:35AM 21      SO I DON'T THINK THERE'S A BASIS TO WITHHOLD DUPLICATIVE

11:35AM 22  DOCUMENTS BASED ON THE FACT THAT THEY'RE ATTACHED TO DIFFERENT

11:35AM 23  E-MAILS.  THOSE AREN'T DUPLICATES IF THEY'RE ATTACHED TO

11:35AM 24  DIFFERENT E-MAILS.  IT'S IMPORTANT TO GET EACH ONE.

11:35AM 25      THE COURT:  OKAY.  ANYTHING, MR. COPPERSMITH?

11:35AM 1          MR. COOPERSMITH:  YOUR HONOR, I WOULD JUST POINT OUT

11:35AM 2    THAT WHEN YOU LOOK AT THE ATTACHMENT THAT WE HAVE PROVIDED IN

11:35AM 3    THE STATUS REPORT THERE'S A PIE CHART PROVIDED TO SORT OF SUM

11:35AM 4    UP THE MAGNITUDE OF THIS PROBLEM, WHICH IS, THAT, YOU KNOW, A

11:35AM 5    HUGE PERCENT, 37 PERCENT WHERE MARKED AS INTENTIONALLY

11:36AM 6    WITHHELD.

11:36AM 7          AND THEN WE PROVIDED SOME OTHER EXAMPLES WHERE, FOR

11:36AM 8    EXAMPLE -- ONE EXAMPLE WAS OUR EXHIBIT D WHERE THERE'S AN

11:36AM 9    E-MAIL THAT SAYS IT'S FROM MR. PILCHER, WHO IS AN FDA EMPLOYEE

11:36AM 10   WHO PARTICIPATED IN THE INSPECTION FDA PERFORMED, AMONG OTHER

11:36AM 11   THINGS.

11:36AM 12         AND IT SAYS, "ATTACHED PLEASE FIND MY INSPECTION NOTES

11:36AM 13   DURING THE AUGUST 2016 INSPECTION," AND THEN EVERYTHING ELSE IS

11:36AM 14   INTENTIONALLY WITHHELD.

11:36AM 15         SO THE IDEA THAT THOSE WERE NOT RESPONSIVE?  I SUSPECT

11:36AM 16   WHAT HAPPENED THERE IS WHAT MR. WADE WAS SAYING, WHICH IS THAT

11:36AM 17   THEY DECIDED, WELL, ONE OF THOSE ATTACHMENTS WAS PRODUCED IN

11:36AM 18   SOME FORM SOMEWHERE ELSE AND THEY SOMEHOW MADE THAT CONCLUSION.

11:36AM 19         BUT OBVIOUSLY AS MR. WADE SAID, IF I HAVE MR. PILCHER ON

11:36AM 20   THE STAND, YOU KNOW, I HAVE NO WAY AS AN EVIDENTIARY MATTER TO

11:36AM 21   SHOW THAT THIS WAS ACTUALLY AN ATTACHMENT TO HIS E-MAIL WITHOUT

11:36AM 22   THOSE DOCUMENTS.

11:36AM 23         SO THAT METHOD OF DE-DUPLICATING I HAVE NEVER SEEN BEFORE

11:36AM 24   AND DIDN'T MAKE ANY SENSE TO US, SO I THINK THEY NEED TO

11:36AM 25   REVISIT THAT AS WELL.

| 11:36AM | 1 | THE COURT:  OKAY.  ANYTHING, MR. BOSTIC, ON THIS? |

11:36AM   1          THE COURT:  OKAY.  ANYTHING, MR. BOSTIC, ON THIS?

11:37AM   2          MR. BOSTIC:  YES, YOUR HONOR.  JUST A COUPLE OF

11:37AM   3   THINGS.

11:37AM   4      I CAN'T SPEAK TO WHAT'S UNDERNEATH THE REDACTIONS THAT THE

11:37AM   5   FDA EXECUTED ON ITS DOCUMENT PRODUCTIONS.  I THINK I'LL COME

11:37AM   6   BACK TO THAT POINT LATER WHEN WE TALK ABOUT WHETHER RULE 16

11:37AM   7   APPLIES HERE OR NOT.

11:37AM   8      AS TO THE PRACTICE OF ONLY PRODUCING DOCUMENTS ONCE SUCH

11:37AM   9   THAT SOME PRODUCED DOCUMENTS SAY "INTENTIONALLY WITHHELD," AND

11:37AM  10   IT'S DIFFICULT FOR THE DEFENSE TO KNOW, AND FOR THE GOVERNMENT

11:37AM  11   TO KNOW, WHICH DOCUMENT THAT ACTUALLY IS AND WHERE ELSE THEY

11:37AM  12   MAY FIND IT IN THE PRODUCTION.  I AGREE WITH THE DEFENSE THAT

11:37AM  13   THEY NEED TO FIND A SOLUTION TO THAT.  I'M NOT IN A POSITION TO

11:37AM  14   PROVIDE THAT SOLUTION, BUT I AGREE THAT IT IS A PROBLEM.

11:37AM  15          THE COURT:  OKAY.

11:37AM  16          MR. BOSTIC:  AS TO THE REDACTIONS, I'LL JUST POINT

11:37AM  17   OUT THAT MY UNDERSTANDING IS THAT TO THE EXTENT THAT THE

11:37AM  18   DEFENSE HAS PROVIDED EXAMPLES OF POSSIBLY INAPPROPRIATE

11:37AM  19   REDACTIONS TO AGENCY COUNSEL, THEY'VE REVIEWED THEM AND

11:37AM  20   CONFIRMED THAT WHAT IS UNDERNEATH THOSE REDACTIONS HAS NOTHING

11:38AM  21   TO DO WITH THERANOS.

11:38AM  22      AGAIN, I HAVE TO TAKE THE AGENCY'S WORD FOR THAT, BUT I

11:38AM  23   HAVE NO REASON TO DOUBT THEM IF THEY HAVE DONE THAT REVIEW.

11:38AM  24          THE COURT:  WAS THERE -- LET ME ASK ANOTHER QUESTION

11:38AM  25   BEFORE I GO BACK TO THE DEFENSE HERE.

11:38AM  1      WAS THERE -- I THOUGHT THAT THE AGENCIES WERE GOING TO

11:38AM  2      DEVELOP A PRIVILEGE LOG AT SOME POINT IN TIME.

11:38AM  3          DID THAT -- I REMEMBER SOME COMMENT ABOUT THAT.

11:38AM  4              MR. COOPERSMITH:  WE HAVE NOT SEEN ONE, YOUR HONOR.

11:38AM  5              THE COURT:  OKAY.  OKAY.  SO LET ME TURN TO

11:38AM  6      MS. MARTINEZ-RESLY.  DO YOU WISH TO COMMENT?

11:38AM  7              MS. MARTINEZ-RESLY:  YES, YOUR HONOR.

11:38AM  8          SO THE DOCUMENTS THAT THE FDA WITHHELD AND PRODUCED TO

11:38AM  9      PARTIES AS INTENTIONALLY WITHHELD WITH THAT SLIP SHEET

11:38AM  10     INDICATING THAT PHRASE, WERE FOR THREE REASONS:

11:38AM  11         ONE WAS IF THAT DOCUMENT WAS COMPLETELY NONRESPONSIVE; ONE

11:38AM  12     WAS IF THAT DOCUMENT WAS ENTIRELY PRIVILEGED; AND ONE WAS, AS

11:39AM  13     THE PARTIES HAD BEEN DISCUSSING JUST NOW, WAS IF THAT DOCUMENT

11:39AM  14     WAS DUPLICATIVE OF ANOTHER DOCUMENT THAT THE PARTIES ALREADY

11:39AM  15     HAD VIA FDA'S INITIAL PRODUCTION OF DOCUMENTS TO THE DEPARTMENT

11:39AM  16     OF JUSTICE, WHICH THE DEPARTMENT OF JUSTICE WE UNDERSTAND HAS

11:39AM  17     ALREADY PROVIDED TO THE DEFENDANTS, OR DUPLICATIVE OF ANOTHER

11:39AM  18     DOCUMENT IN OUR REVIEW DATABASE, WHICH MEANS THAT IT WILL

11:39AM  19     EVENTUALLY BE REVIEWED AND PRODUCED IF IT HAS NOT BEEN ALREADY.

11:39AM  20         AND THE REASON FOR THIS APPROACH IS THAT -- THERE ARE

11:39AM  21     MULTIPLE REASONS.  ONE IS THE LARGE, THE LARGE NUMBER -- AND

11:39AM  22     KIND OF THE LARGE NUMBER OF DOCUMENTS THAT WERE YIELDED FROM

11:39AM  23     OUR SEARCH OF OVER 80 CUSTODIANS.  I BELIEVE IN OUR

11:40AM  24     SEPTEMBER 23RD LETTER TO MR. BALWANI WE POINTED OUT THAT OUR

11:40AM  25     SEARCH FOR 65 CUSTODIANS YIELDED OVER 150,000 DOCUMENTS, AND WE

11:40AM  1     KNEW AND UNDERSTOOD THAT THE PARTIES ALREADY HAD ABOUT

11:40AM  2     40,000 PAGES OF FDA DOCUMENTS.

11:40AM  3         WE ALSO UNDERSTOOD THAT THE COURT WANTED US TO PRODUCE THE

11:40AM  4     DOCUMENTS RESPONSIVE TO THE MOTION TO COMPEL IN AS EFFICIENT A

11:40AM  5     MANNER AS POSSIBLE.  SO WE EXERCISED OUR -- THIS, THIS

11:40AM  6     DE-DUPLICATION PROCESS IN ORDER TO MEET THE COURT'S DEADLINE

11:40AM  7     AND IN OUR GOOD FAITH UNDERSTANDING WE UNDERSTOOD THAT THE

11:40AM  8     PARTIES ALREADY HAD THESE DOCUMENTS IF THEY WERE DUPLICATIVE.

11:40AM  9         I UNDERSTAND THAT IT IS -- FROM WHAT THE PARTIES HAVE SAID

11:40AM  10    IN COURT TODAY AND DURING OUR MEET AND CONFER THAT IT IS

11:41AM  11    SOMETIMES DIFFICULT TO FIND THE DUPLICATIVE DOCUMENT AMONG THE

11:41AM  12    PRODUCTION OF DOCUMENTS THAT THEY ALREADY HAVE, AND SO WE SAID

11:41AM  13    AT THE MEET AND CONFER, AND I THINK WE SAID AGAIN IN THIS

11:41AM  14    OCTOBER 30TH LETTER, THAT WE ARE REVIEWING A LIST OF DOCUMENTS

11:41AM  15    THAT MR. BALWANI'S COUNSEL HAS PROVIDED TO US THAT THEY WOULD

11:41AM  16    LIKE US TO CONSIDER REPRODUCING IN FULL, AND WE ARE REVIEWING

11:41AM  17    THAT, AND WE WILL GET BACK TO THEM.

11:41AM  18         THE COURT:  OKAY.  CAN YOU TELL ME, WHEN DO YOU

11:41AM  19    THINK YOU'LL BE ABLE TO GET BACK TO THEM?

11:41AM  20         MS. MARTINEZ-RESLY:  I BELIEVE WE CAN GET BACK TO

11:41AM  21    THEM IN A COUPLE OF WEEKS WITH AN UPDATE.

11:41AM  22         THE COURT:  ALL RIGHT.  THANK YOU.

11:41AM  23         MS. MARTINEZ-RESLY:  YOUR HONOR, MAY I ALSO ADD ONE

11:42AM  24    OTHER THING?  WE'VE ALSO COMMITTED TO REVIEW ALL OF OUR

11:42AM  25    REDACTIONS FOR THE LAW ENFORCEMENT PRIVILEGE BECAUSE THAT WAS

11:42AM 1    BROUGHT TO OUR ATTENTION DURING THE LAST MEET AND CONFER AS

11:42AM 2    WELL.  SO WE ARE VOLUNTARILY UNDERTAKING A REVIEW OF THOSE

11:42AM 3    DOCUMENTS.

11:42AM 4              THE COURT:  ALL RIGHT.  THANK YOU.

11:42AM 5         MR. BOSTIC, ANYTHING TO ADD?

11:42AM 6              MR. BOSTIC:  NO, YOUR HONOR -- ACTUALLY, YES, YOUR

11:42AM 7    HONOR.  I THINK IT'S IMPORTANT TO NOTE THE AMOUNT OF EFFORT

11:42AM 8    THAT THE AGENCIES HAVE PUT IN HERE.  I KNOW THAT THE COURT

11:42AM 9    THANKED THEM EARLIER, AND FOR THE GOVERNMENT I WOULD LIKE TO

11:42AM 10   THANK THEM ALSO FOR THAT WORK.

11:42AM 11        I ASKED THE AGENCIES TO ESTIMATE HOW MANY EMPLOYEE HOURS

11:42AM 12   THEY HAD SPENT ON RESPONDING TO THIS ROUND OF DOCUMENT

11:42AM 13   REQUESTS, AND THE NUMBERS WERE HIGHER THAN I THOUGHT THEY WERE

11:42AM 14   GOING TO BE.

11:42AM 15        THE FDA ESTIMATES THAT IT SPENT APPROXIMATELY 2,600 HOURS

11:42AM 16   RESPONDING TO THESE DOCUMENT REQUESTS FOR THE PAST SEVERAL

11:42AM 17   MONTHS.  CMS, FOR ITS PART, ESTIMATES THAT IT SPENT

11:42AM 18   2,100 EMPLOYEE HOURS RESPONDING TO THESE REQUESTS.

11:42AM 19        SO I SAY THAT NOT BECAUSE THAT'S HOW WE MEASURE

11:43AM 20   COMPLIANCE.  THERE'S NO MAGIC NUMBER THAT ONCE THEY GET TO IT

11:43AM 21   WE SAY, OKAY, WE'RE GOING TO LEAVE YOU ALONE.  BUT I DON'T WANT

11:43AM 22   THERE TO BE ANY QUESTION THAT THE AGENCIES HAVEN'T DEVOTED A

11:43AM 23   TREMENDOUS AMOUNT OF RESOURCES RESPONDING TO THESE REQUESTS AND

11:43AM 24   THAT THEY'VE DONE SO IN GOOD FAITH.

11:43AM 25              THE COURT:  OKAY.  THANK YOU FOR THAT.

11:43AM  1        MR. COPPERSMITH.

11:43AM  2            MR. COOPERSMITH:  YES, YOUR HONOR.  I JUST WANT TO

11:43AM  3    MAKE IT CLEAR THAT FOR THE INDIVIDUAL PEOPLE INVOLVED WHO ARE

11:43AM  4    ON THE PHONE, AND THE OTHERS WHO ARE COLLECTING DOCUMENTS, WE

11:43AM  5    UNDERSTAND THAT THEY'RE WORKING ON THIS, AND WE DO APPRECIATE

11:43AM  6    THAT.

11:43AM  7        OBVIOUSLY WHEN WE'RE TALKING ABOUT THE DEFENDANT'S

11:43AM  8    CONSTITUTIONAL RIGHTS AND THE GOVERNMENT ELECTING TO BRING THIS

11:43AM  9    PROSECUTION, YOU KNOW, THEY'RE GOING TO HAVE TO DO WHAT IT

11:43AM 10    TAKES TO MAKE SURE THAT THEIR RIGHTS ARE PROTECTED AND THE

11:43AM 11    COURT'S ORDERS ARE FOLLOWED.

11:43AM 12        BUT I WANT TO MAKE A MORE SPECIFIC POINT AND THAT IS TO

11:43AM 13    ADDRESS SOME OF THE THINGS THAT WE JUST HEARD FROM THE PHONE

11:43AM 14    SPEAKER.

11:43AM 15        WE DID AN ANALYSIS, YOUR HONOR, BECAUSE MR. BOSTIC HAD

11:43AM 16    SUGGESTED THAT MAYBE THE DOCUMENTS WE WERE GETTING ARE JUST

11:43AM 17    DUPLICATIVE OF WHAT THE GOVERNMENT ALREADY GAVE US.  WE DID AN

11:43AM 18    ANALYSIS WITH OUR ANALYTICS DEPARTMENT TO SEE WHETHER THE

11:44AM 19    DOCUMENTS WE'RE NOW GETTING AND STARTING TO GET ARE DUPLICATIVE

11:44AM 20    OF ANYTHING, AND WE FOUND THAT OVER 90 PERCENT OF THE DOCUMENTS

11:44AM 21    BEING PRODUCED BY THE AGENCY ARE NOVEL, NEW DOCUMENTS THAT WE

11:44AM 22    HAVE NOT SEEN BEFORE FROM THE DEPARTMENT OF JUSTICE IN THEIR

11:44AM 23    PRODUCTION.

11:44AM 24        SO LEST THERE BE ANY DOUBT THAT THE DATA, THE RECORD SHOWS

11:44AM 25    THAT IT'S NOT THE CASE THAT WE'RE JUST GETTING DUPLICATIVE

11:44AM 1     MATERIAL AND MAKING THESE PEOPLE SPIN THEIR WHEELS FOR NO

11:44AM 2     REASON.  WE'RE GETTING DOCUMENTS THAT ARE REALLY IMPORTANT AND

11:44AM 3     CRUCIAL TO THE DEFENSE.

11:44AM 4          AND THE OTHER THING I WANTED TO MENTION, YOUR HONOR, IS

11:44AM 5     THAT I UNDERSTAND, YOU KNOW, WE HAD A DISCUSSION ABOUT THIS

11:44AM 6     SEARCH TERM LTD, BUT I WANT TO JUST LINK THAT TO THE

11:44AM 7     DELIBERATIVE PROCESS PRIVILEGE POINT THAT WE'VE BEEN HEARING

11:44AM 8     ABOUT NOW.

11:44AM 9               THE COURT:  HASN'T THAT BEEN WAIVED BY THE PARTIES?

11:44AM 10              MR. COOPERSMITH:  YES, YOUR HONOR.  AND JUST TO BE

11:44AM 11    CLEAR, THOUGH, WHAT MY UNDERSTANDING OF THE WAIVER IS, IS THAT

11:44AM 12    THE AGENCIES HAVE WAIVED THE DELIBERATIVE PROCESS FOR MATERIAL

11:44AM 13    THAT RELATES TO THERANOS, BUT IF THEY HAVE SOME OTHER COMPANY

11:44AM 14    OR SOME OTHER DISCUSSION THAT DOESN'T RELATE TO THERANOS, THEN

11:45AM 15    THEY HAVE NOT WAIVED THE DELIBERATIVE PROCESS.  SO THOSE, I

11:45AM 16    WOULD ASSUME, WOULD BE THE DOCUMENTS THAT SHOW UP ON A

11:45AM 17    PRIVILEGE LOG WHEN THEY GET AROUND TO THAT.

11:45AM 18         THE QUESTION, THOUGH, YOUR HONOR, IS HOW DO YOU DETERMINE

11:45AM 19    WHAT RELATES TO THERANOS AND WHAT DOESN'T?  AND WHAT WE KNOW

11:45AM 20    ABOUT THIS CASE IS THAT AT HIGH LEVELS OF THE FDA IN 2014 AND

11:45AM 21    2015 THEY WERE NOT ONLY TALKING INTERNALLY ABOUT HOW AND

11:45AM 22    WHETHER TO REGULATE THERANOS, THEY WERE ALSO TALKING ABOUT NEW

11:45AM 23    POLICY GUIDANCE THEY WERE TRYING TO ISSUE ABOUT LTD'S IN

11:45AM 24    GENERAL THAT WOULD APPLY NATIONWIDE TO ALL COMPANIES.

11:45AM 25         SO WE SEE IN THE DOCUMENTS THERE ARE TIMES WHEN HIGH-LEVEL

| | |
|---|---|
| 11:45AM | 1 |
| 11:45AM | 2 |
| 11:45AM | 3 |
| 11:45AM | 4 |
| 11:45AM | 5 |
| 11:45AM | 6 |
| 11:46AM | 7 |
| 11:46AM | 8 |
| 11:46AM | 9 |
| 11:46AM | 10 |
| 11:46AM | 11 |
| 11:46AM | 12 |
| 11:46AM | 13 |
| 11:46AM | 14 |
| 11:46AM | 15 |
| 11:46AM | 16 |
| 11:46AM | 17 |
| 11:46AM | 18 |
| 11:46AM | 19 |
| 11:46AM | 20 |
| 11:46AM | 21 |
| 11:46AM | 22 |
| 11:46AM | 23 |
| 11:46AM | 24 |
| 11:46AM | 25 |

FDA PEOPLE EVEN TELL THE U.S. CONGRESS AND OTHERS THAT THERANOS IS AN EXAMPLE OF WHY WE NEED TO REGULATE LTD'S, OR THERANOS AND THESE OTHER TEN COMPANIES ARE REASONS WHY WE WANT TO CHANGE THE WAY WE REGULATE LTD'S.

SO WHEN THEY'RE TALKING ABOUT THOSE HIGH-LEVEL POLICY DISCUSSIONS, WE THINK THAT'S HIGHLY MATERIAL TO THE DEFENSE.

AND WHAT I THINK HAS HAPPENED HERE IS THAT IF THE DISCUSSION WASN'T SPECIFICALLY RELATED TO A THERANOS MATTER THAT IS EXISTING AT SOME POINT IN TIME, THEY'VE DECIDED TO MAKE DELIBERATIVE PROCESS ARGUMENTS, BUT UNLESS YOU SEE THE CONTEXT OF HOW THIS AGENCY WAS TRYING TO DO THINGS OVERALL.

SO I THINK THAT QUESTION OF WHAT IS RELATED TO THERANOS AND WHAT IS NOT IS PERHAPS A DIFFICULT ONE, BUT IT CERTAINLY SHOULDN'T BE ERRED ON THE SIDE OF NOT GIVING US THE DOCUMENTS, WHICH I THINK IS WHAT HAS HAPPENED SO FAR.

THE COURT:  OKAY.

MR. BOSTIC:  YOUR HONOR, ON THAT POINT.  SO I THINK WE'RE BACK TO THE SEARCH TERM DISCUSSION TEMPORARILY.  ABOUT 20 MINUTES AGO I THINK MR. COPPERSMITH SAID THIS IS NOT ABOUT EXPANDING THE SCOPE OF THE COURT'S ORDER, BUT THAT'S WHAT I'M HEARING RIGHT NOW.  I'M HEARING THAT NOT ONLY DOES THE DEFENSE WANT DISCUSSIONS ABOUT LTD'S IN RELATION TO THERANOS, BUT ALSO ABOUT LTD'S IN GENERAL.

NOWHERE IN THE SIX CATEGORIES THAT THE DEFENSE PROVIDED THAT THE COURT ORDERED IS THAT CALLED FOR.  THAT SIMPLY IS NOT

| | | |
|---|---|---|
| 11:47AM | 1 | RESPONSIVE TO THESE CATEGORIES. |
| 11:47AM | 2 | SAME THING WITH "THERANOS" BY THE WAY AS A STANDALONE |
| 11:47AM | 3 | TERM.  IF ONE OF THE CATEGORIES REQUESTED ALL DOCUMENTS |
| 11:47AM | 4 | RELATING TO OR MENTIONING THERANOS, THEN IT WOULD MAKE SENSE TO |
| 11:47AM | 5 | HAVE A STANDALONE TERM FOR THERANOS. |
| 11:47AM | 6 | BUT MY CONCERN IS THAT BY DEMANDING SEARCH TERMS LIKE LTD |
| 11:47AM | 7 | AND THERANOS STANDING ALONE, THEY ARE SEEKING DOCUMENTS THAT |
| 11:47AM | 8 | ARE CLEARLY OUTSIDE THE FOUR CORNERS OF THE SIX REQUESTS THAT |
| 11:47AM | 9 | THEY SELECTED AND THAT THE COURT ORDERED AND THAT THE |
| 11:47AM | 10 | GOVERNMENT REQUESTED. |
| 11:47AM | 11 | THE COURT:  OKAY.  THANK YOU. |
| 11:47AM | 12 | MR. COOPERSMITH:  YOUR HONOR, TO BE MORE SPECIFIC TO |
| 11:47AM | 13 | TRY TO ADDRESS MR. BOSTIC'S CONCERNS, WHAT WE'RE LOOKING FOR, |
| 11:47AM | 14 | WHICH I THINK IS PART OF THE COURT ORDER, NOT AN EXPANSION, IS |
| 11:47AM | 15 | HOW THE FDA WAS PLANNING TO APPLY THEIR POLICY ABOUT LTD'S TO |
| 11:47AM | 16 | THERANOS, AND THAT'S DIRECTLY RESPONSIVE TO CATEGORY 4. |
| 11:47AM | 17 | IF THERE'S SOME DISCUSSION THEY'RE HAVING THAT IS |
| 11:47AM | 18 | COMPLETELY DIVORCED FROM ANYTHING HAVING TO DO WITH THERANOS, |
| 11:48AM | 19 | THAT'S A DIFFERENT MATTER. |
| 11:48AM | 20 | BUT HOW THEY APPLY THEIR POLICY AND THE POLICIES OR HOW |
| 11:48AM | 21 | THEY MAY WISH TO APPLY IT TO THERANOS I THINK IS DIRECTLY |
| 11:48AM | 22 | RELATED TO THE COURT ORDER. |
| 11:48AM | 23 | THE COURT:  WELL, HOW DO YOU PUT THAT INTO A SEARCH |
| 11:48AM | 24 | TERM? |
| 11:48AM | 25 | MR. COOPERSMITH:  IT'S NOT A MATTER OF A SEARCH |

11:48AM  1    TERM.  THERE'S NO REASON TO ADDRESS THE SEARCH TERM.  THE

11:48AM  2    SEARCH TERM IS THE LTD THAT WE'VE TALKED ABOUT.

11:48AM  3        THE QUESTION IS WHEN YOU FIND THE HITS WHEN YOU HAVE THE

11:48AM  4    DOCUMENTS.  NOW, THE FDA IS GOING TO HAVE, AND I GUESS BOTH

11:48AM  5    AGENCIES, HAVE TO DECIDE WHAT ARE WE GOING TO WITHHOLD AS

11:48AM  6    DELIBERATIVE PROCESS?  SO IT'S MORE OF A QUESTION OF HOW

11:48AM  7    BROADLY ARE THEY GOING TO SEARCH DELIBERATIVE PROCESS.  IT'S

11:48AM  8    NOT A SEARCH TERMS ISSUE AT ALL.

11:48AM  9        THE COURT:  SO YOU'RE TRYING TO POLICE THIS, IF YOU

11:48AM  10   WILL, UPFRONT.  AT SOME POINT IN TIME THERE WILL BE A

11:48AM  11   DISCUSSION, I ASSUME YOU'LL RAISE IT, THE DEFENSE TEAM WILL

11:48AM  12   RAISE IT ABOUT ANY PRIVILEGE LOG THAT EXISTS, AND WE'LL HAVE TO

11:48AM  13   LOOK AT THAT AND DETERMINE WHETHER OR NOT IT WAS APPROPRIATELY

11:48AM  14   WITHHELD OR THE REASONS THEREFOR.

11:48AM  15       MR. COOPERSMITH:  YES, YOUR HONOR.  AND THAT'S A

11:48AM  16   VERY FINE WAY TO DEAL WITH THE PROBLEM, BECAUSE THAT'S

11:48AM  17   TRADITIONAL IS THAT THE PARTY WITHHOLDING DOCUMENTS, THEY'RE

11:48AM  18   DECIDING SOMETHING IS PRIVILEGED.  THEY MAKE A PRIVILEGE LOG.

11:49AM  19       AND THEN WE LOOK AT IT AND CHALLENGE WHAT WE THINK IS NOT

11:49AM  20   WARRANTED.

11:49AM  21       MR. WADE:  ON THAT POINT, YOUR HONOR, BUT IN THE

11:49AM  22   INTEREST OF THE DIALOGUE THAT WE'VE HAD WITH THE OTHER PARTIES

11:49AM  23   TO TRY AND GET AT THIS EFFICIENTLY, WE JUST WANTED TO RAISE

11:49AM  24   THAT ISSUE NOW.

11:49AM  25       THE COURT:  SURE.

11:49AM  1          MR. WADE:  BECAUSE THERE HAVE BEEN TIMES WHEN WE'VE

11:49AM  2     BEEN ACCUSED OF NOT BEING RESPONSIVE OR NOT GIVING NOTICE.

11:49AM  3          FOR EXAMPLE, ON THE SEARCH TERMS, MS. HOLMES FILED THIS

11:49AM  4     MOTION AND OUR INPUT ON SEARCH TERMS WAS NEVER REQUESTED.  WHAT

11:49AM  5     IS NEWS TO ME IS THE FACT THAT I LEARNED EARLIER TODAY THAT

11:49AM  6     THERE WAS ANY SOLICITATION OF THAT.  SO WE WOULD HAVE BEEN

11:49AM  7     HAPPY TO PROVIDE THOSE SEARCH TERMS.

11:49AM  8          THE COURT:  YOUR COLLEAGUE DIDN'T TELL YOU THAT?

11:49AM  9          MR. WADE:  WELL, OUR COLLEAGUE IS PRESENT AND HAS A

11:49AM 10     DIFFERENT CASE PENDING BEFORE THE COURT THAT WE'RE NOT A PARTY

11:49AM 11     TO.

11:49AM 12          MY GUESS IS THAT IT WAS PART OF A MEET AND CONFER PROCESS

11:49AM 13     THERE THAT I THINK WAS SORT OF PUT ON HOLD BECAUSE OF THE

11:49AM 14     LITIGATION RELATING TO THIS MOTION.

11:49AM 15          SO WE'RE RAISING THIS ISSUE WITH REGARD TO THE

11:50AM 16     DELIBERATIVE PROCESS ISSUE NOW SO THAT PERHAPS WE CAN AVOID

11:50AM 17     TAKING TOO NARROW OF A VIEW AND HAVING FIGHTS OVER THAT FOR

11:50AM 18     MONTHS TO COME.

11:50AM 19          THE COURT:  OKAY.  I APPRECIATE THAT.

11:50AM 20          AND I ALSO APPRECIATE MS. MARTINEZ-RESLY'S COMMENTS ABOUT

11:50AM 21     THIS.  WE MAY, IN MY OBSERVATIONS, THAT IT MAY BE THAT WE'LL

11:50AM 22     HAVE ADDITIONAL DISCUSSION OVER IF THERE IS A PRIVILEGE LOG OR

11:50AM 23     NOT OR ITEMS THAT PRESENT ITSELF ON THAT AND THE REASONS FOR

11:50AM 24     THAT, AND THERE'S A TIME TO GET THAT DONE.

11:50AM 25          AGAIN, EVERYTHING WE'RE TALKING ABOUT HERE, AND I REALLY

11:50AM   1    HATE TO USE THE WORD "EFFICIENCY" OR "SPEED" OR ANYTHING LIKE

11:50AM   2    THAT IN A CRIMINAL CASE, BUT WE HAVE A TRIAL DATE, AND WE HAVE

11:50AM   3    SOME DATES SET.  I WANT TO LOOK TO YOUR PROPOSED SCHEDULE ALSO

11:50AM   4    IN A MOMENT, BUT I DO -- I'M NOT GOING TO DISTURB THE TRIAL

11:50AM   5    DATE.

11:50AM   6         I LOOK AT MR. SCHENK AND I MADE HIM, I DON'T KNOW IF IT

11:50AM   7    WAS A PROMISE, BUT IT WAS AT LEAST AN ASSURANCE, A STRONG

11:51AM   8    ASSURANCE THAT WE WOULDN'T DISTURB THE TRIAL DATES.  YOU ALL

11:51AM   9    HAVE PLANNED YOUR LIVES NEXT YEAR AROUND THAT, I'M SURE YOU

11:51AM  10    HAVE, AND I REALLY DON'T WANT TO DISTURB THAT.

11:51AM  11         TO THE EXTENT THAT WE CAN GET THIS INITIAL DISCOVERY PHASE

11:51AM  12    COMPLETED, WE CAN MOVE ON TO THE IMPORTANT ISSUES THAT YOU'RE

11:51AM  13    GOING TO PRESENT I'M SURE.

11:51AM  14            MR. COOPERSMITH:  THANK YOU, YOUR HONOR.  YES, WE'RE

11:51AM  15    AWARE OF THE TRIAL DATE, OF COURSE, AND ARE PLANNING.

11:51AM  16         JUST TO CLOSE THE LOOP ON ONE THING, IN THE S.E.C. -- AND

11:51AM  17    I DON'T WANT TO ARGUE S.E.C. MATTERS BECAUSE WE'RE NOT BEFORE

11:51AM  18    THE COURT ON THAT -- BUT SINCE AGENCY COUNSEL RAISED THIS

11:51AM  19    QUESTION OF SEARCH TERMS.  I THINK IT'S IMPORTANT TO NOTE THAT

11:51AM  20    THOSE SUBPOENAS WERE SERVED IN SEPTEMBER 2018.  WE GOT NOTHING

11:51AM  21    MORE THAN A BARE LITTLE TRICKLE OF DOCUMENTS UNTIL THIS COURT

11:51AM  22    ORDERED DOCUMENTS TO BE PRODUCED IN THE CRIMINAL CASE.

11:51AM  23         SINCE THEN WE HAVE AGREED WITH THE AGENCIES THAT THE

11:51AM  24    PRODUCTION UNDER THE CRIMINAL ORDER WOULD ALSO BE PRODUCTION

11:51AM  25    UNDER THE CIVIL AND ALSO WE'VE TOLD THE AGENCIES THAT WE'RE NOT

11:51AM 1    GOING TO ASK FOR ANYTHING MORE THAN WHAT IS ULTIMATELY PRODUCED

11:52AM 2    UNDER THE CRIMINAL ORDER AS THE COURT DIRECTS.

11:52AM 3        SO THIS ISSUE OF SEARCH TERMS, THEY NEVER SEARCHED FOR

11:52AM 4    ANYTHING.  THEY BASICALLY NEVER DID ANYTHING UNTIL THE COURT

11:52AM 5    ORDERED THE PRODUCTION ON THE CRIMINAL SIDE.

11:52AM 6        THE COURT:  OKAY.  ALL RIGHT.

11:52AM 7        ANY FURTHER OBSERVATIONS BEFORE?  I THINK WE'VE -- DARE I

11:52AM 8    USE THE WORD? -- EXHAUSTED TOPICS FOR TODAY.

11:52AM 9        MR. BOSTIC, YOU WANTED TO PUT SOMETHING ON THE RECORD,

11:52AM 10   THOUGH.

11:52AM 11       MR. BOSTIC:  YES, YOUR HONOR, JUST ON THE MATTER OF

11:52AM 12   WHETHER RULE 16 SHOULD APPLY DIRECTLY HERE.

11:52AM 13       THE COURT:  YES.

11:52AM 14       MR. BOSTIC:  I THINK THE COURT WAS CORRECT AT THE

11:52AM 15   BEGINNING WHEN IT SAID THAT ITS APPROACH TO DATE HAD YIELDED

11:52AM 16   PROGRESS AND THAT IS ABSOLUTELY TRUE, AND I DON'T WANT TO LOSE

11:52AM 17   SIGHT OF THAT.

11:52AM 18       BACK AT THE BEGINNING OF THIS CONVERSATION THAT WE'VE BEEN

11:52AM 19   HAVING THE AGENCIES WERE RAISING OBJECTIONS ABOUT THE RELEVANCE

11:52AM 20   OF CERTAIN TOPICS.  THEY WERE ESTIMATING THAT THEIR PRODUCTION

11:52AM 21   WOULD TAKE MONTHS UPON MONTHS TO COMPLETE THROUGH COURT ORDERS

11:52AM 22   AND THROUGH THE PROSECUTION'S WORK IN SECURING THE WAIVER FROM

11:52AM 23   THE ASSIGNEE, AND NEGOTIATING APPROPRIATE PROTECTIVE ORDERS

11:53AM 24   WITH THE COURT.  WE'VE OVERCOME MANY OF THE OBSTACLES THAT WERE

11:53AM 25   PREVENTING THOSE PRODUCTIONS FROM PROCEEDING.

11:53AM 1   THE AGENCIES HAVE PRODUCED THE DOCUMENTS THAT THEY PLEDGED

11:53AM 2   TO PRODUCE SEVERAL MONTHS AGO.  I THINK IT WAS IN JULY WHEN

11:53AM 3   THEY SENT THEIR INITIAL LETTER SAYING HERE'S WHAT WE'LL DO.

11:53AM 4       THE COURT USED A BASEBALL ANALOGY EARLIER, AND NOW I WANT

11:53AM 5   TO TALK ABOUT MOVING GOALPOSTS.  I THINK THAT'S A DIFFERENT

11:53AM 6   SPORT, MAYBE FOOTBALL.

11:53AM 7       THE COURT:  IT'S THE CURRENT SEASON SO THAT'S

11:53AM 8   APPROPRIATE.

11:53AM 9       MR. BOSTIC:  I THINK THAT IS WHAT IS HAPPENING HERE,

11:53AM 10  YOUR HONOR -- AND THE AGENCIES ARE ACCOMMODATING IT I THINK TO

11:53AM 11  THE EXTENT THAT THEY CAN -- THEY COMPLETED THEIR INITIAL ROUNDS

11:53AM 12  OF PRODUCTION AND THEN THE DEFENSE COMPLAINED ABOUT DATE

11:53AM 13  RESTRICTIONS USED BY CMS AND CUSTODIANS WHO WERE NOT INCLUDED

11:53AM 14  IN FDA'S INITIAL COLLECTIONS.

11:53AM 15      WE'VE DISCUSSED BEFORE THE MERITS OF THOSE POSITIONS SO I

11:53AM 16  WON'T RELITIGATE THEM NOW, BUT SUFFICE IT TO SAY THE AGENCIES

11:53AM 17  STAND BY, AND MY UNDERSTANDING IS THAT THEY STAND BY THEIR

11:53AM 18  INITIAL DOCUMENT COLLECTION PROCEDURES, BUT THEY STILL

11:54AM 19  ACCOMMODATED THE DEFENDANT'S REQUESTS TO EXPAND THEIR SEARCHES,

11:54AM 20  CMS EXPANDING THE SCOPE OF TIME THAT IT WAS LOOKING AT FOR ITS

11:54AM 21  DOCUMENT COLLECTION, AND FDA ADDING I BELIEVE EVERY CUSTODIAN

11:54AM 22  THAT DEFENDANTS POINTED OUT, EVEN THOUGH FDA INFORMS US THAT

11:54AM 23  THOSE ARE RELATIVELY MINOR EMPLOYEES WHOSE DOCUMENTS MIGHT HAVE

11:54AM 24  ALREADY BEEN CAPTURED.

11:54AM 25      SO THAT'S THE COLLECTION THAT THEY'RE DOING NOW.  THE

11:54AM  1      REVIEW WILL HAPPEN.  THE PRODUCTION WILL HAPPEN.  THIS PROCESS

11:54AM  2      IS WORKING.  THE DEFENSE IS NOW RAISING CONCERNS ABOUT

11:54AM  3      REDACTIONS AND TECHNICAL ISSUES.

11:54AM  4          I THINK SIMILARLY WE CAN OVERCOME THOSE CONCERNS USING THE

11:54AM  5      SAME PROCESS THAT WE HAVE BEEN USING.

11:54AM  6          MY CONCERN WITH A COURT ORDER THAT WOULD PUT THE

11:54AM  7      GOVERNMENT IN CHARGE OF OVERSEEING A PRODUCTION IS THAT I DON'T

11:54AM  8      THINK ANY BENEFIT WILL BE GAINED FROM IT.  I THINK THE COURT

11:54AM  9      ALREADY KNOWS THAT THE GOVERNMENT IS WORKING AS HARD AS IT CAN

11:54AM 10      TO GET THESE DOCUMENTS PRODUCED.

11:55AM 11          THERE'S NOTHING MORE THAT WE COULD DO WITH THAT ORDER THAT

11:55AM 12      WE CAN'T DO NOW.

11:55AM 13          AND LOOKING AT THE SPECIFIC TOPICS THAT WE DISCUSSED

11:55AM 14      TODAY, IT'S UNCLEAR HOW THE GOVERNMENT, THE PROSECUTION THAT

11:55AM 15      IS, CAN DO ANYTHING TO MOVE THE BALL FORWARD ON THOSE TOPICS.

11:55AM 16          WHEN WE TALK ABOUT TECHNICAL ISSUES, THERE'S NOTHING THE

11:55AM 17      PROSECUTION CAN DO TO RESOLVE THOSE.

11:55AM 18          WHEN IT COMES TO TEXT MESSAGES, IT'S DOUBTFUL, ACCORDING

11:55AM 19      TO AGENCY COUNSEL, WHETHER THE AGENCY EVEN HAS ACCESS TO

11:55AM 20      CERTAIN EMPLOYEE TEXT MESSAGES.  HOW MUCH LESS DOES THE

11:55AM 21      PROSECUTION HAVE ACCESS TO THOSE TEXT MESSAGES?  WE GET TEXT

11:55AM 22      MESSAGES THROUGH SEARCH WARRANTS WHEN WE NEED TO SEE THEM BUT

11:55AM 23      ONCE WE'RE SERVING -- ONCE WE'RE EXECUTING A SEARCH WARRANT TO

11:55AM 24      GET EVIDENCE, WE'RE SO FAR AWAY FROM THE CONCEPT OF ACCESS

11:55AM 25      UNDER RULE 16, I THINK THAT SPEAKS FOR ITSELF.

11:55AM 1        SAME THING ON THE ISSUE OF TIMING.  THE GOVERNMENT HAS

11:55AM 2    MADE THE LTSC AVAILABLE TO CMS, AND I BELIEVE THAT HAS SPED UP

11:56AM 3    SOME OF THEIR REVIEW AND PRODUCTION WORK.  BEYOND THAT, THERE'S

11:56AM 4    NOTHING THAT THE PROSECUTION CAN DO TO MAKE THE AGENCIES MOVE

11:56AM 5    FASTER.  I THINK THE COURT IS CONSIDERING AN ORDER THAT MAY DO

11:56AM 6    THAT, BUT THE COURT HAS THAT AUTHORITY WHERE THE PROSECUTION

11:56AM 7    DOES NOT.

11:56AM 8        FINALLY, ON THE ISSUES OF REDACTIONS AND PRIVILEGE LOGS,

11:56AM 9    AGENCY COUNSEL TOLD THE COURT EARLIER THAT THE AGENCIES WOULD

11:56AM 10   NOT, COULD NOT PROVIDE THE GOVERNMENT WITH MATERIALS OR ACCESS

11:56AM 11   TO MATERIALS THAT IT WOULDN'T PROVIDE TO THE DEFENSE.  THAT

11:56AM 12   MEANS THAT WE DON'T KNOW WHAT IS UNDERNEATH THE AGENCY'S

11:56AM 13   REDACTIONS, AND WE WON'T KNOW.  IT MEANS THAT WE CAN'T VIEW

11:56AM 14   THEIR PRIVILEGED MATERIALS TO CONFIRM THAT A PRIVILEGE LOG IS

11:56AM 15   ACCURATE OR THE CORRECT MATERIALS ARE BEING WITHHELD.

11:56AM 16       ALL OF THESE ISSUES JUST SERVE TO FURTHER DEMONSTRATE THAT

11:56AM 17   WE DON'T HAVE ACCESS TO THESE MATERIALS.

11:56AM 18       SO WHILE WE'RE HAPPY TO STAY INVOLVED AS MUCH AS WE CAN

11:56AM 19   AND CONTINUE TO ACT AS A MEDIATOR AND ADVISOR AND ADVOCATE IN

11:56AM 20   THE WAYS THAT HAVE BEEN PRODUCTIVE SO FAR, I WOULD ASK THE

11:57AM 21   COURT NOT TO ISSUE A RULE 16 ORDER DIRECTED AT THE GOVERNMENT.

11:57AM 22       THE COURT:  OKAY.  THANK YOU.

11:57AM 23       MR. WADE:  YOUR HONOR, JUST VERY BRIEFLY.  THE

11:57AM 24   FIELD -- THE GOALPOSTS HAVE BEEN WHERE THEY HAVE ALWAYS BEEN.

11:57AM 25   I'M NOW BEFORE THE COURT THE FOURTH TIME ASKING FOR THE SAME

11:57AM 1      THING.  IT'S NOT COMPLICATED.  IT'S VERY SIMPLE.

11:57AM 2           THE COURT:  WELL, I THINK WHAT MR. BOSTIC SUGGESTS

11:57AM 3      IS THE POSTS MAY HAVE BEEN THE SAME, BUT THERE'S BEEN

11:57AM 4      ADDITIONAL YARDAGE ENTERED INTO THE 50 YARDLINE PERHAPS AND NOW

11:57AM 5      WE'RE LOOKING AT A DIFFERENT FIELD.

11:57AM 6           MR. WADE:  NOT AT ALL, YOUR HONOR.  ALL WE'VE ASKED

11:57AM 7      FOR IS A REPRESENTATION FROM THE AGENCIES THAT THEY HAVE

11:57AM 8      PRODUCED ALL DOCUMENTS RESPONSIVE TO THEIR REQUESTS.

11:57AM 9        IF THE AGENCIES COME BACK AFTER THIS MEET AND CONFER

11:57AM 10     PROCESS -- AND BY THE WAY, THE AGENCIES, THROUGH COUNSEL, HAVE

11:57AM 11     COME FORWARD MULTIPLE TIMES AND SAID YES, AND THEN THERE'S

11:57AM 12     MORE; YES, AND THEN THERE'S MORE; YES, BUT THERE'S MORE.

11:57AM 13       SO IF THESE MEET AND CONFER PROCESSES REVEAL NO ADDITIONAL

11:57AM 14     DOCUMENTS, THEN WE'VE BEEN WASTING EVERYONE'S TIME.

11:57AM 15       MY SPECULATION BASED UPON OUR MEET AND CONFER IS THAT

11:57AM 16     THERE IS GOING TO BE SUBSTANTIAL ADDITIONAL DOCUMENTS.

11:58AM 17       AND IF PREVIOUSLY STARTING IN JUNE THE SLEEVES HAVEN'T

11:58AM 18     BEEN ROLLED UP AND THERE WAS MORE OWNERSHIP OF THIS AND A

11:58AM 19     RECOGNITION THAT THE GOAL ISN'T TO GET AWAY WITH MINIMAL

11:58AM 20     COMPLIANCE, THE GOAL IS TO ENSURE MAXIMUM COMPLIANCE, WE MIGHT

11:58AM 21     HAVE GOTTEN TO THIS POINT SLIGHTLY SOONER.

11:58AM 22           THE COURT:  HOW DOES A RULE 16 ORDER FROM THIS COURT

11:58AM 23     ASSIST IN THE PROCESS AS TO WHERE WE ARE NOW IN GOING FORWARD?

11:58AM 24           MR. WADE:  IT PUTS THE OBLIGATION ON THE LAWYERS IN

11:58AM 25     THIS CASE TO GATHER THE MATERIALS AND PRODUCE IT AND ENSURE

11:58AM 1  THAT IT'S PRODUCED.

11:58AM 2       AND THEY ARE ACCOUNTABLE TO ANSWER TO YOUR HONOR WITH

11:58AM 3  RESPECT TO THEIR MEETING THEIR RULE 16 OBLIGATIONS, AND WHAT

11:58AM 4  WE -- THE RECORD IN THIS CASE MAKES CLEAR THE RESPONSIVENESS

11:58AM 5  THAT COMES WHEN THE GOVERNMENT IS DIRECTLY INVOLVED UP UNTIL

11:58AM 6  THE POINT WHERE WE'VE MADE REQUESTS.

11:58AM 7       YOU CAN LOOK BACK AT ALL OF THESE CORRESPONDENCE AND

11:58AM 8  WHENEVER THE GOVERNMENT DURING THEIR PHASE OF THE CASE WHERE

11:59AM 9  THEY WANTED THEIR MATERIALS WANTED DOCUMENTS, THEY GOT THEM

11:59AM 10  PROMPTLY, AND THEY GOT WHAT THEY ASKED FOR, AND THEY GOT ACCESS

11:59AM 11  TO WITNESSES, AND THEY COULD FOLLOW UP AND ASK FOR ADDITIONAL

11:59AM 12  MATERIALS.

11:59AM 13       AND THOSE RESPONSES WERE MET COMPLETELY.

11:59AM 14       HAVING THE GOVERNMENT -- MR. BOSTIC HAS SAID HE STANDS

11:59AM 15  PREPARED TO ROLL UP HIS SLEEVES AND DO WHATEVER HE CAN TO

11:59AM 16  ASSIST THIS, BUT SO FAR THE MOST KNOWLEDGEABLE PERSON IN THIS

11:59AM 17  CASE IS THE CIVIL ASSISTANT UNITED STATES ATTORNEY WHO IS

11:59AM 18  REPRESENTING THE AGENCIES.

11:59AM 19       IN THE POSTURE OF THIS CASE WITH THE LAW IN THE NINTH

11:59AM 20  CIRCUIT, MR. BOSTIC SHOULD BE IN THAT ROLE.  HE'S MORE

11:59AM 21  KNOWLEDGEABLE ABOUT THESE ISSUES THAN MS. DAW IS.  HE'S

11:59AM 22  ACCOUNTABLE TO THE COURT.  HE'S DIRECTLY IMPACTED BY THE

11:59AM 23  SCHEDULE.

11:59AM 24            THE COURT:  WHAT IS HIS ACCESS?

11:59AM 25            MR. WADE:  HIS ACCESS IS SIMILAR, BUT HIS KNOWLEDGE

11:59AM  1    IS GREATER THAN HIS COLLEAGUE WHO HAS BEEN HANDLING THIS SO

11:59AM  2    FAR.

11:59AM  3          SO HE COULD HAVE EASILY POSED SOME OF THESE QUESTIONS IF

12:00PM  4    HE WAS DIRECTLY INVOLVED MUCH SOONER IN THE PROCESS.

12:00PM  5          THE GOVERNMENT IN THIS CASE ISSUED A PRESERVATION ORDER

12:00PM  6    YEARS AGO, YEARS AGO.  THEY SHOULD BE AS TROUBLED AS EVERYONE

12:00PM  7    ELSE IN THIS CASE WHEN THERE'S SOME INDICATION THAT MAY BE

12:00PM  8    DOCUMENTS WERE NOT PRESERVED THAT ARE MATERIAL TO THE CASE.

12:00PM  9          I'M SURE THEY'RE NOT PLEASED BY THAT.  NO LITIGANT IS EVER

12:00PM  10   PLEASED BY THE DESTRUCTION OF EVIDENCE, AND I'M SURE THE

12:00PM  11   GOVERNMENT IS NOT HERE GIVEN THAT THEY SENT CLEAR NOTICES AND

12:00PM  12   CLEARLY ASKED THAT THE AGENCIES DO THAT.

12:00PM  13         SO THE RESPONSE SHOULD BE THAT'S TROUBLING, LET ME FOLLOW

12:00PM  14   UP, AND LET ME GET TO THE BOTTOM OF THAT SO THAT I CAN MAKE

12:00PM  15   REPRESENTATIONS TO THE DEFENSE AS TO WHAT HAS HAPPENED, RATHER

12:00PM  16   THAN WAIT FOR THE LETTER TO COME FROM THE AGENCIES.

12:00PM  17              THE COURT:  SO WHERE WE'VE COME NOW, AND WE ALL KNOW

12:00PM  18   THIS, IS NOW WE HAVE THE AGENCIES ON THE LINE.  THEY'RE HERE IN

12:00PM  19   COURT PARTICIPATING IN THIS PROCESS.

12:00PM  20         WHAT IS IT THAT THIS COURT CAN DO WITH THE AGENCIES AND

12:01PM  21   THEIR REPRESENTATIVES THAT IS NOT ENHANCED BY MR. BOSTIC NOT

12:01PM  22   BEING IN IT?

12:01PM  23         DO YOU UNDERSTAND MY QUESTION?  WHY DOES MR. BOSTIC'S

12:01PM  24   OFFICE NEED TO HAVE RULE 16 IF I HAVE THESE LAWYERS,

12:01PM  25   MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY, ON THE PHONE TO

```
12:01PM   1    ORDER DIRECTLY?  THIS IS HOW WE WENT DOWN THIS PATH.  WHAT DOES
12:01PM   2    HE ADD?  I HAVE THEIR ATTENTION.
12:01PM   3                MR. WADE:  I WOULD ASSUME YOU DO, YOUR HONOR.
12:01PM   4    ALTHOUGH THERE HAVE BEEN AT LEAST TWO ORDERS THAT HAVE BEEN
12:01PM   5    IMPOSED BY THE COURT TO PRODUCE ALL OF THE DOCUMENTS, AND WE
12:01PM   6    HAVE YET TO HAVE ALL OF THE DOCUMENTS, AND THE YEAR IS RUNNING
12:01PM   7    OUT.
12:01PM   8                THE COURT:  WHY AREN'T YOU ASKING ME TO DO SOMETHING
12:01PM   9    TO THESE GOOD LAWYERS ON THE PHONE?
12:01PM  10                MR. WADE:  WELL, THE GOOD LAWYERS ON THE PHONE ARE
12:01PM  11    WORKING HARD.  WHAT THEY NEED IS IN BETWEEN THIS HEARING AND
12:01PM  12    WHATEVER THE NEXT DATE IS, IS SOMEONE WITH A VESTED INTEREST
12:01PM  13    WHO WILL SUFFER CONSEQUENCES BEFORE THE COURT IF THESE
12:01PM  14    DEADLINES ARE NOT MET TO ROLL UP AND ON A DAY-TO-DAY BASIS MAKE
12:02PM  15    INQUIRIES AS TO WHAT WAS COLLECTED.
12:02PM  16                THE COURT:  WON'T THEY SUFFER CONSEQUENCES IF THEY
12:02PM  17    VIOLATE THE COURT ORDER?  THEY WERE SUPPOSED TO HAVE BEEN IN
12:02PM  18    COMPLIANCE OCTOBER 25.
12:02PM  19                MR. WADE:  INITIALLY, YOUR HONOR, I BELIEVE THEY
12:02PM  20    WERE SUPPOSED TO BE IN COMPLIANCE OCTOBER 2ND, AND THEY
12:02PM  21    WEREN'T.
12:02PM  22         NOW, OCTOBER 25, AND THEY WEREN'T.
12:02PM  23         SO WE'RE GETTING CLOSE TO THE POINT WHERE EVERYTHING IS
12:02PM  24    IMPACTED, BUT THE PARTY THAT IS BEFORE THE COURT REPRESENTING
12:02PM  25    THE UNITED STATES SHOULD BE THE ONE THAT IS HELD ACCOUNTABLE
```

12:02PM 1    FOR THAT.  THEY WERE ABLE TO GET THE MATERIALS WHEN THEY WANTED

12:02PM 2    THE MATERIALS.

12:02PM 3            THE COURT:  I GUESS I'M JUST CURIOUS.  THIS IS

12:02PM 4    PERSONAL INFORMATION AND NOTHING ELSE.  WHAT SHOULD I DO TO

12:02PM 5    MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY ABOUT A

12:02PM 6    NONCOMPLIANCE ISSUE?

12:02PM 7            MR. WADE:  RESPECTFULLY, YOUR HONOR, AT THIS POINT

12:02PM 8    APART FROM ASKING THEM TO DO THE THINGS THAT WE'VE ASKED TO DO,

12:02PM 9    NOTHING.

12:02PM 10       BUT WE ASK THAT THE GOVERNMENT LAWYERS BE HELD ACCOUNTABLE

12:02PM 11   TO MAKE SURE THAT WE'RE NOT BACK IN THE SITUATION.

12:03PM 12       AGAIN, WE'VE SORT OF -- WE'VE HAD THIS RUNNING JOKE, YOUR

12:03PM 13   HONOR, ABOUT, YOU KNOW, THE THIRD TIME IS A CHARM, AND THE

12:03PM 14   FOURTH TIME IS A CHARM.  I GUESS WE'RE HEADED TOWARDS THE FIFTH

12:03PM 15   TIME.

12:03PM 16       I THINK IT'S APPROPRIATE FOR THE PARTY REPRESENTING THE

12:03PM 17   UNITED STATES TO TAKE OWNERSHIP OF THIS.

12:03PM 18       WHEN WE HAVE THESE CONFERENCES, THEY'RE NOT A STAKEHOLDER

12:03PM 19   IN THE CONFERENCES IN THE SAME WAY THEY WOULD BE IF THEY WERE

12:03PM 20   GETTING THE MATERIALS FOR THEMSELVES.

12:03PM 21       THEY SHOULD BE A STAKEHOLDER.

12:03PM 22           THE COURT:  WELL, I ASKED MS. TURNER, MS. NORTON,

12:03PM 23   MS. MARTINEZ-RESLY AT THE OUTSET ABOUT THE INVOLVEMENT OF THE

12:03PM 24   GOVERNMENT AND WHETHER OR NOT IT WAS OF ASSISTANCE TO THEM, AND

12:03PM 25   I THINK EACH OF THEM ANSWERED AFFIRMATIVELY THAT IT WAS

12:03PM 1    HELPFUL.

12:03PM 2              MR. WADE:  AND I THINK CONTINUING THEIR INVOLVEMENT

12:03PM 3    AND ULTIMATELY IN THE POSITION WHERE THE PROSECUTION TEAM HAS

12:03PM 4    TO COME FORWARD AND MAKE THE REPRESENTATIONS AS TO WHAT HAS

12:03PM 5    HAPPENED HERE AND WHAT HASN'T HAPPENED HERE IS APPROPRIATE IN

12:03PM 6    THIS CASE.

12:03PM 7              THE COURT:  OKAY.

12:04PM 8              MR. WADE:  I UNDERSTAND TO A DEGREE WHAT THE AGENCY

12:04PM 9    COUNSEL -- THINGS TAKE TIME, AND THEY'RE WORKING DILIGENTLY.

12:04PM 10             THE COURT:  SO 2,000 HOURS, 2,000 STAFF HOURS.

12:04PM 11             MR. WADE:  I WANT TO BE RESPECTFUL OF THAT.

12:04PM 12             THE COURT:  IT'S ALMOST AS MUCH AS YOU'RE BILLING.

12:04PM 13             MR. WADE:  EVERYONE IS WORKING HARD IN THIS CASE,

12:04PM 14   YOUR HONOR, GIVEN THE STAKES.

12:04PM 15       BUT I THINK THAT ON A DAY-TO-DAY BASIS GOING FORWARD

12:04PM 16   HAVING THE PROSECUTION TEAM INVOLVED AND ASKING THESE

12:04PM 17   QUESTIONS, I THINK THE PROSECUTION TEAM HAS A PRETTY CLEAR

12:04PM 18   SENSE OF WHERE WE'RE GOING TO BE ON THESE ISSUES, AND THEY CAN

12:04PM 19   ENSURE THAT WE REACH A DIFFERENT CONCLUSION BEFORE THE NEXT

12:04PM 20   HEARING.

12:04PM 21             THE COURT:  OKAY.  MR. BOSTIC.

12:04PM 22             MR. BOSTIC:  JUST VERY BRIEFLY, YOUR HONOR.  THE

12:04PM 23   COURT AND THE AGENCIES HAVE WHAT MR. WADE IS DESCRIBING

12:04PM 24   ALREADY.

12:04PM 25       IF IT HAS FELT LIKE THE GOVERNMENT HAS NOT BEEN INVESTED

12:04PM 1    IN THESE PROCEEDINGS -- WELL, I'M CONFUSED TO HEAR THE DEFENSE

12:04PM 2    SAY THAT IT FEELS LIKE THE GOVERNMENT HAS NOT BEEN INVESTED.

12:04PM 3    WE'VE EXPENDED A TREMENDOUS AMOUNT OF EFFORT AS WELL TO TRY TO

12:04PM 4    GET THESE EFFORTS RESOLVED.

12:04PM 5         IF IT WERE WITHIN OUR POWER TO HAND OVER ALL OF THE

12:05PM 6    DOCUMENTS THAT THE DEFENSE IS REQUESTING, OF COURSE WE WOULD

12:05PM 7    HAVE DONE THAT ALREADY.

12:05PM 8         LIKE THE COURT, WE WANT TO MOVE PAST THIS ISSUE.  THERE

12:05PM 9    ARE MORE IMPORTANT THINGS TO DISCUSS IN THIS CASE.  WE WOULD

12:05PM 10   LIKE TO GET TO THE BUSINESS OF ACTUALLY PROSECUTING THE CASE.

12:05PM 11        SO IF IT WERE WITHIN OUR POWER TO RESOLVE THESE ISSUES

12:05PM 12   INSTANTLY OVER THE COURSE OF THE NEXT WEEK, WE WOULD HAVE DONE

12:05PM 13   THAT ALREADY.  WE HAVE DONE EVERYTHING WE CAN.  WE'LL CONTINUE

12:05PM 14   TO DO THAT.

12:05PM 15        BUT IF THE CONVERSATION IS ABOUT MAKING THE GOVERNMENT,

12:05PM 16   MAKING THE PROSECUTION ACCOUNTABLE, AS THE DEFENSE IS

12:05PM 17   ADVOCATING FOR, I JUST DON'T THINK THAT THAT'S WHAT RULE 16 IS

12:05PM 18   ABOUT BECAUSE THE GOVERNMENT DOESN'T HAVE THE POWER TO RESOLVE

12:05PM 19   THESE ISSUES.

12:05PM 20        IF WE DID, I -- I FEEL LIKE I'M SAYING THE SAME THING OVER

12:05PM 21   AND OVER AGAIN.

12:05PM 22             THE COURT:  NO.  NO.

12:05PM 23             MR. BOSTIC:  SO I THINK, AS THE COURT SAID, IT HAS

12:05PM 24   THE AGENCY'S ATTENTION.  IT HAS HAD THE AGENCY'S ATTENTION FOR

12:05PM 25   SOME TIME.  THE ISSUE IS NOT COMPLACENCY ON THE PART OF THE

12:05PM 1    AGENCIES, AT LEAST FROM MY PERSPECTIVE.

12:05PM 2        THE ISSUE IS SIMPLY THAT WE'RE TALKING ABOUT A VERY BROAD

12:05PM 3    SCOPE OF DOCUMENT COLLECTION AND PRODUCTION.  THEY'VE PUT IN A

12:06PM 4    LOT OF HOURS TO MEET THEIR OBLIGATIONS, AND THEY'RE CONTINUING

12:06PM 5    TO DO SO.

12:06PM 6        EVERY TIME WE COME BACK TO THE COURT, THE DEFENSE DOES

12:06PM 7    HAVE A NEW ROUND OF COMPLAINTS THAT EXPAND, AT LEAST IN THE

12:06PM 8    AGENCY'S MIND, THE JOB THAT THEY'RE TASKED WITH PERFORMING.

12:06PM 9        SO THAT'S THE SITUATION THAT THEY'RE IN.

12:06PM 10        THE GOVERNMENT BELIEVES THAT THE REMAINING COMPLAINTS BY

12:06PM 11    THE DEFENSE CAN BE RESOLVED.  WE WOULD LIKE THE OPPORTUNITY TO

12:06PM 12    DO THAT IN THE SAME WAY THAT WE HAVE BEEN DOING.

12:06PM 13            THE COURT:  OKAY.  THANK YOU VERY MUCH.

12:06PM 14        MR. COPPERSMITH, YOU'RE PULLING THE MIKE TO YOURSELF.

12:06PM 15            MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

12:06PM 16        WE ALL KNOW THE DEPARTMENT OF JUSTICE WORKS WITH AGENCIES

12:06PM 17    ALL OF THE TIME.  THEIR CIVIL COUNTERPART IS WORKING WITH THE

12:06PM 18    AGENCIES.  THIS IS NO EARTHSHAKING SURPRISE THAT THE DEPARTMENT

12:06PM 19    OF JUSTICE COULD WORK WITH AGENCIES TO OVERSEE A PROCESS UNDER

12:06PM 20    RULE 16.  THAT'S NOTHING REALLY THAT UNUSUAL.

12:06PM 21        I THINK GIVEN WHAT HAS OCCURRED, YOU KNOW, I DISAGREE WITH

12:06PM 22    MR. BOSTIC THAT THIS HAS BEEN SOME KIND OF MOVING OF THE

12:07PM 23    GOALPOSTS OR EXPANDING.  I THINK IF THE DOJ WAS INVOLVED ALL

12:07PM 24    ALONG, AND WITH THEIR INVOLVEMENT GOING FORWARD, I THINK WE'LL

12:07PM 25    HAVE LESS, FEWER PROBLEMS, NOT MORE.

12:07PM 1     IT'S ONLY THE DEPARTMENT OF JUSTICE THAT HAS THE INCENTIVE

12:07PM 2   AND THE KNOWLEDGE OF THIS CASE TO MAKE SURE THAT THE COURT

12:07PM 3   ORDER IS COMPLETELY COMPLIED WITH, THAT THE DEFENSE GETS ALL OF

12:07PM 4   THE MATERIAL THAT THEY'RE SUPPOSED TO GET.

12:07PM 5     YOU KNOW, WE'VE SEEN BRADY EVIDENCE IN THESE PRODUCTIONS,

12:07PM 6   YOUR HONOR.  WE'VE INFORMED THE GOVERNMENT OF THE BRADY

12:07PM 7   EVIDENCE THAT WE HAVE FOUND.  AND THIS IS CRUCIAL.  THIS IS THE

12:07PM 8   WAY THAT OUR CLIENTS GET A FAIR TRIAL.

12:07PM 9     THE ONLY APPROPRIATE AGENCY TO OVERSEE THAT IS THE

12:07PM 10   DEPARTMENT OF JUSTICE.

12:07PM 11         THE COURT:  ALL RIGHT.  THANK YOU.

12:07PM 12     MR. LEACH, ANYTHING YOU WANT TO ADD TO THE CONVERSATION,

12:07PM 13   SIR?

12:07PM 14         MR. LEACH:  NO.  THANK YOU.

12:07PM 15         THE COURT:  ALL RIGHT.  THANK YOU.

12:07PM 16     ALL RIGHT.  WELL, LET ME INDICATE THAT I'VE -- YOU KNOW,

12:07PM 17   I'VE ENJOYED THE CONVERSATION THIS MORNING AS I DO EVERY TIME

12:07PM 18   WE ALL GET TOGETHER.  YOU'VE BEEN VERY HELPFUL IN INFORMING THE

12:07PM 19   COURT OF YOUR POSITIONS.

12:07PM 20     AGAIN, I THINK I'M ACCURATE IN THE OBSERVATION THAT WE'RE

12:07PM 21   ALL OF COMMON PURPOSE TO GET THE CASE TO TRIAL BY THE DATE THAT

12:08PM 22   I HAVE SET.  IT'S A HARD DATE.

12:08PM 23     IT IS IMPORTANT, AND I RECOGNIZE THE DEFENSE'S COMMENTS,

12:08PM 24   IT'S IMPORTANT THAT THESE DEFENDANT'S RIGHTS ARE PROTECTED.

12:08PM 25   THEY HAVE CONSTITUTIONAL RIGHTS.  THIS IS WHAT I WAS MENTIONING

12:08PM  1    EARLIER WHEN I SPOKE WITH MS. TURNER, MS. NORTON,

12:08PM  2    MS. MARTINEZ-RESLY ABOUT THE SOMETIMES TENSION THAT COMES UP

12:08PM  3    VIS-A-VIS CRIMINAL CASES AND CIVIL OBLIGATIONS AND CRIMINAL

12:08PM  4    OBLIGATIONS FOR DISCOVERY.

12:08PM  5         BUT THE PARTIES WILL GET A FAIR TRIAL.  THEY WILL GET A

12:08PM  6    FAIR TRIAL.  THEY'LL GET THEIR DAY IN COURT.  THEY WILL HAVE

12:08PM  7    THEIR DAY IN COURT.

12:08PM  8         OUR EFFORTS THROUGHOUT THE TIMES THAT WE HAVE MET HERE

12:08PM  9    PRELIMINARILY ARE TO ENSURE THAT THIS INFORMATION THAT THEY

12:08PM 10    SHOULD RECEIVE THEY DO GET IN A TIMELY MANNER SUCH THAT THEY

12:08PM 11    CAN USE IT AS THEY FEEL APPROPRIATE.  THAT'S GOING TO HAPPEN,

12:08PM 12    AND THAT'S WHAT WE HAVE PROCESSED HERE NOTWITHSTANDING MY

12:09PM 13    COMMENTS THROUGHOUT OUR CONVERSATION SOMETIMES A BIT FLIPPANT

12:09PM 14    ABOUT SPORTS METAPHORS, ANALOGIES, ET CETERA.

12:09PM 15         I DON'T MEAN TO MAKE LIGHT OF ANY OF THE SERIOUSNESS OF

12:09PM 16    THE CIRCUMSTANCES HERE.  IT'S VERY IMPORTANT.  IT'S VERY

12:09PM 17    IMPORTANT.  IT'S IMPORTANT FOR THE GOVERNMENT.  IT'S IMPORTANT

12:09PM 18    FOR THE DEFENDANTS.

12:09PM 19         I INTEND, AND I'M GOING TO CONTINUE TO DO MY BEST TO

12:09PM 20    MARSHAL FORWARD AND MAKE SURE AND ENSURE THAT EVERYONE'S RIGHTS

12:09PM 21    ARE PROTECTED AND THAT PRIVILEGES THAT EXIST ARE PROTECTED,

12:09PM 22    THAT THE RULES OF DISCOVERY ARE PROTECTED FROM ALL PARTIES,

12:09PM 23    INCLUDING THE AGENCIES, AND AS WELL AS OBLIGATIONS TO DISCLOSE.

12:09PM 24    THOSE ARE PARAMOUNT AND IMPORTANT HERE.

12:09PM 25         LET ME TALK ABOUT DOCUMENT 170-6, WHICH IS YOUR PROPOSED

12:09PM  1    SCHEDULE.  I'VE RECEIVED THAT.

12:09PM  2         IS THIS A SCHEDULE THAT YOU'D LIKE THE COURT TO ADOPT

12:09PM  3    THEN?

12:09PM  4         IS THE GOVERNMENT ASKING, MR. SCHENK, THAT THE COURT ADOPT

12:10PM  5    THIS SCHEDULE?

12:10PM  6              MR. SCHENK:  YES, YOUR HONOR.  THANK YOU.

12:10PM  7              MR. WADE:  YOUR HONOR, THE DIRECT ANSWER TO YOUR

12:10PM  8    QUESTION, IN LIGHT OF THE COURT'S COMMENTS AT THE PRIOR HEARING

12:10PM  9    WITH RESPECT TO THE TRIAL DATE, IS YES.  WE'VE MET AND

12:10PM 10    CONFERRED IN AN EFFORT TO SHOEHORN EVERYTHING WITHIN THAT.

12:10PM 11         AS WE ACTUALLY SAID WHEN SCHEDULING FIRST CAME UP IN JUNE,

12:10PM 12    TIME IS OF THE ESSENCE, AND THE DELAYS HAVE BEEN SIGNIFICANT.

12:10PM 13    AND SO WE'RE NOT SEEKING ANYTHING FROM THE COURT AT THIS TIME,

12:10PM 14    BUT SOME OF THE ITEMS IN THIS CASE THAT WERE CONTEMPLATED WHEN

12:10PM 15    WE MET AND CONFERRED ON THE SCHEDULE AS A WHOLE IN RESERVING

12:10PM 16    THE TRIAL DATES HAVE TAKEN MUCH MORE TIME THAN WE EXPECTED.

12:10PM 17         THAT HAS THE PROSPECT OF AFFECTING POTENTIAL MOTIONS,

12:10PM 18    AFFECTING POTENTIAL EXPERTS, ET CETERA.

12:10PM 19         SO WE'RE CONTINUING TO WORK.  WE HAVE THE TIME BLOCKED.

12:10PM 20    WE WANT TO DO EVERYTHING WE CAN TO GET THAT TRIAL ON SCHEDULE,

12:11PM 21    BUT I WANT TO BE CANDID WITH THE COURT ABOUT OUR CONCERN THAT

12:11PM 22    WE ARE RUNNING OUT OF TIME ON DELAYS WITH RESPECT TO SOME OF

12:11PM 23    THESE ISSUES.

12:11PM 24              THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR THAT

12:11PM 25    OBSERVATION.  I THINK YOU HAVE SOME TIME.

12:11PM 1      WE'RE SCHEDULED FOR JURY SELECTION ON JULY 28TH, THE END

12:11PM 2  OF JULY NEXT YEAR, AND THEN EVIDENCE WILL START AUGUST 4TH.

12:11PM 3  THAT'S OUR CURRENT SCHEDULE.

12:11PM 4      I'D LIKE, AS I SAID, I WOULD LIKE TO KEEP IT ON SCHEDULE

12:11PM 5  SUCH THAT YOU CAN NOTIFY YOUR WITNESSES THAT THEY HAVE DATES

12:11PM 6  CERTAIN, YOU CAN MAKE YOUR PLANS, YOUR PERSONAL PLANS

12:11PM 7  ACCORDINGLY AS WELL.

12:11PM 8      I NOTE THAT YOU SUGGEST HEARING ON 12(B)(3) MOTIONS ON

12:11PM 9  MONDAY, FEBRUARY 10TH.  WE'RE GOING TO LOOK AT OUR SCHEDULE.  I

12:11PM 10  THINK THAT'S AVAILABLE.  WE MAY START THOSE IN THE MORNING.

12:11PM 11  I'M GOING TO ASK OUR COURTROOM DEPUTY TO SET OUR CRIMINAL

12:11PM 12  CALENDAR LIGHT THAT DAY, IF AT ALL.  SO WE MIGHT DEVOTE THAT

12:12PM 13  ENTIRE DAY TO THIS CASE.

12:12PM 14      SO WE'LL DO WHAT WE CAN, AND I HOPE THIS IMPRESSES ON YOU,

12:12PM 15  I'M GOING TO DO WHAT I CAN WITH OUR CALENDAR MANAGEMENT TO

12:12PM 16  ALLOW THE CASE TO PROCEED ACCORDING TO THE SCHEDULE.

12:12PM 17      OUR PRETRIAL CONFERENCE, I THINK YOU HAVE SUGGESTED THAT

12:12PM 18  ON JULY 9TH, WHICH IS A THURSDAY.  I'M HAPPY TO ACCOMMODATE

12:12PM 19  THAT DAY.  THAT'S A CIVIL CALENDAR DAY AS YOU KNOW FOR US.

12:12PM 20      BUT AS YOU KNOW, I CAN ALSO BLOCK OFF THAT DATE, WHICH I

12:12PM 21  PROBABLY WILL DO.  WE PROBABLY WILL NOT HAVE ANYTHING ON

12:12PM 22  JULY 9TH BY WAY OF CIVIL MATTERS, AND WE'LL JUST GIVE YOUR CASE

12:12PM 23  THAT ENTIRE DAY TO ACCOMPLISH THE PRETRIAL CONFERENCE.

12:12PM 24      SO I TELL YOU THAT JUST TO INFORM YOU THAT, AGAIN, THAT'S

12:12PM 25  A HARD SET DATE, AND I WILL TELL OUR CIVIL LITIGANTS, AND AS

12:12PM 1    YOU KNOW THERE ARE MANY OF THEM IN THIS COURTHOUSE, THAT THEY

12:13PM 2    WILL NOT BE ABLE TO COME TO COURT JULY 9TH TO HEAR CIVIL

12:13PM 3    MOTIONS, AND I'LL RESERVE THAT FOR YOUR CASE, THIS CASE.

12:13PM 4        THE OTHER DEADLINES THAT YOU HAVE HERE SEEM APPROPRIATE

12:13PM 5    THAT YOU HAVE SUGGESTED.  THANK YOU FOR MEETING AND CONFERRING

12:13PM 6    AND LOOKING AT YOUR SCHEDULES TO REACH AGREEMENT ON A SCHEDULE

12:13PM 7    THAT IS APPROPRIATE FOR ALL OF YOU.

12:13PM 8        SO I'LL ADOPT EXHIBIT F.

12:13PM 9        AS TO THE COURT'S RULING ON RULE 16, YOU HEARD ME GIVE MY

12:13PM 10   PRELIMINARY THOUGHTS AND IDEAS ABOUT GOING FORWARD WITH THE

12:13PM 11   DISCOVERY ORDER.  I'M GOING TO ISSUE A WRITTEN ORDER AND

12:13PM 12   HOPEFULLY GET THAT OUT SHORTLY.  I APPRECIATE THE COMMENTS OF

12:13PM 13   THE GOVERNMENT AS TO WHY SHOULD WE CHANGE THINGS NOW, IT SEEMS

12:13PM 14   TO BE WORKING THE WAY IT'S GOING FORWARD.

12:13PM 15       I THINK THERE'S SOME CURRENCY TO THAT.  THINGS HAVE BEEN

12:13PM 16   PROCEEDING, AND I'M GLAD WE HAVE COUNSEL ON THE LINE.

12:13PM 17       ALTHOUGH I TOLD MR. WADE, I THINK IN OCTOBER, THAT, WELL,

12:13PM 18   MAYBE I'LL HAVE COUNSEL HEAR STANDING AT THE LECTERN WHERE

12:14PM 19   YOU'RE STANDING, MR. WADE.  I SUPPOSE WE'RE MOVING IN THAT

12:14PM 20   DIRECTION.  COUNSEL APPEARED TELEPHONICALLY NOW, AND IT MAY BE

12:14PM 21   THAT THEY'LL -- I'LL ASK THEM TO COME AND JOIN US IN SAN JOSE

12:14PM 22   AT SOME TIME IN THE FUTURE IF NEED BE.

12:14PM 23       LET ME ASK YOU, NOTWITHSTANDING THE SCHEDULE HERE, IS

12:14PM 24   THERE A NEED TO REQUEST -- A DESIRE FOR US TO MEET AGAIN AT

12:14PM 25   SOME TIME?

12:14PM  1          ANYONE HAVE THOUGHTS ABOUT THAT?

12:14PM  2                  MR. WADE:  YOUR HONOR, MAYBE JUST A CONTROL DATE ON

12:14PM  3     THIS ISSUE.  I KNOW WE'VE TALKED BEFORE ABOUT WANTING TO AVOID

12:14PM  4     THAT FIFTH HEARING, AND MY HOPE AND EXPECTATION IS THAT WE

12:14PM  5     WILL, BUT IT WOULD SEEM LIKE THINGS SEEM TO HAPPEN WHEN PEOPLE

12:15PM  6     ARE GOING TO APPEAR IN FRONT OF THE COURT AND HAVING A CONTROL

12:15PM  7     DATE FOR WHATEVER ACTIONS THE COURT ORDERS I THINK MIGHT BE

12:15PM  8     APPROPRIATE.

12:15PM  9                  THE COURT:  SURE.  WELL, YOUR SCHEDULE SUGGESTS I

12:15PM  10    THINK IT'S FEBRUARY 10TH FOR HEARING ON THE 12(B) MOTIONS.

12:15PM  11         SO WOULD YOU WANT SOMETHING IN JANUARY THEN?  LET ME GIVE

12:15PM  12    YOU A MOMENT TO MEET AND CONFER ON THAT.

12:15PM  13                 MR. BOSTIC:  THANK YOU, YOUR HONOR.

12:15PM  14         (DISCUSSION OFF THE RECORD.)

12:15PM  15                 MR. WADE:  ASSUMING, BASED ON THE DIRECTION FROM THE

12:15PM  16    COURT AS TO WHERE THE ORDER WILL COME OUT BEING BY THE END OF

12:15PM  17    THE YEAR AND MAYBE A DATE JANUARY 13TH, A COUPLE WEEKS AFTER

12:15PM  18    THAT SO WE'RE ABLE TO ASSESS WHERE THE AGENCIES ARE.

12:15PM  19         OF COURSE, IF THERE IS FULL COMPLIANCE WITH THE ORDER WE

12:16PM  20    CAN ADVISE THE COURT AND TAKE THAT DATE -- I'M SURE THE COURT

12:16PM  21    WOULD NOT OBJECT TO US NOT APPEARING IF WE DON'T HAVE ANYTHING

12:16PM  22    TO DISAGREE ABOUT.

12:16PM  23                 THE COURT:  HOW DOES THAT LOOK, MS. KRATZMANN?

12:16PM  24                 THE CLERK:  IN THE MORNING, YOUR HONOR, YOU'RE

12:16PM  25    AVAILABLE.

12:16PM  1                    THE COURT:  IS THE MORNING GOOD?

12:16PM  2                    MR. BOSTIC:  YES, YOUR HONOR.

12:16PM  3                    MR. WADE:  THAT WORKS.

12:16PM  4                    THE COURT:  MORNING?

12:16PM  5                    MR. COOPERSMITH:  YES, YOUR HONOR.

12:16PM  6                    THE COURT:  SHOULD THAT BE 10:00 A.M.,

12:16PM  7      MS. KRATZMANN?

12:16PM  8                    THE CLERK:  YES, YOUR HONOR.

12:16PM  9                    THE COURT:  ALL RIGHT.  LET'S SET THAT THEN.

12:16PM  10         JANUARY 13TH, JANUARY 13TH AT 10:00 A.M. FOR FURTHER

12:16PM  11     STATUS.  AGAIN, THAT'S A RESERVE, A PLACEHOLDER DATE, SHOULD IT

12:16PM  12     BE REQUIRED.  WE'LL SEE YOU BACK THEN.

12:16PM  13         OF COURSE, IF YOU NEED TO EVER HAVE ACCESS TO THE COURT,

12:16PM  14     YOU JUST NEED TO CALL MS. KRATZMANN FOR ANY INTERIM DATE AND

12:16PM  15     SHE CAN SET THAT, AND I'LL BE HAPPY TO ACCOMMODATE AS BEST WE

12:16PM  16     CAN.

12:16PM  17         AGAIN, I'M MOVING WITH YOU COLLABORATIVELY TO MOVE THE

12:17PM  18     CASE FORWARD AS BEST AS POSSIBLE.  THAT'S MY GOAL HERE.

12:17PM  19                    MR. WADE:  WE APPRECIATE THE ACCOMMODATION.

12:17PM  20                    THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

12:17PM  21                    MR. BOSTIC:  AT THE LAST APPEARANCE IN THIS MATTER

12:17PM  22     THE GOVERNMENT REQUESTED THAT THE COURT ORDER THE PARTIES TO

12:17PM  23     MEET AND CONFER.  I THOUGHT IT WAS IMPORTANT THAT THERE WAS A

12:17PM  24     COURT ORDER TO REQUIRE THAT TO HAPPEN.

12:17PM  25         I WON'T MAKE THAT REQUEST AGAIN.  I THINK THAT THAT

12:17PM 1      CONVERSATION WILL CONTINUE IN GOOD FAITH, BUT IF THE COURT IS

12:17PM 2      INCLINED TO ORDER IT, OF COURSE THE PARTIES ARE HAPPY TO COMPLY

12:17PM 3      WITH THAT.

12:17PM 4           THE COURT:  WELL, MR. WADE'S OBSERVATION SEEMED TO

12:17PM 5      BE THAT PEOPLE, FOR WHATEVER REASON, SEEM TO FOLLOW COURT

12:17PM 6      ORDERS, OR NOT WAS HIS OBSERVATION AS WELL.

12:17PM 7           SO I'LL PROBABLY INCORPORATE SOMETHING LIKE THAT IN THE

12:17PM 8      ORDER.

12:17PM 9           MS. TURNER, MS. NORTON, MS. MARTINEZ-RESLY, ANYTHING ELSE

12:17PM 10     YOU WOULD LIKE TO ADD BEFORE WE DISENGAGE THE LINE?

12:17PM 11          MS. MARTINEZ-RESLY:  YOUR HONOR, THIS IS

12:17PM 12     JACKLYN MARTINEZ-RESLY.

12:17PM 13          I JUST WANTED TO CORRECT THE RECORD ON ONE POINT.  I THINK

12:17PM 14     I HEARD MR. BOSTIC AT SOME POINT SAY THAT THE FDA HAS ADDRESSED

12:17PM 15     ALL OF THE EXAMPLES THAT THE DEFENDANT HAD BROUGHT TO ITS

12:18PM 16     ATTENTION, TO FDA'S ATTENTION WITH RESPECT TO THE SCOPE OF THE

12:18PM 17     REDACTIONS, AND I JUST WANTED TO STATE THAT THE FDA HAS NOT

12:18PM 18     GOTTEN BACK WITH RESPECT TO THE, WITH RESPECT TO THE EXAMPLES

12:18PM 19     ATTACHED TO DOCUMENT 170 BUT WILL DO SO SHORTLY.

12:18PM 20          THE COURT:  OKAY.

12:18PM 21          MS. MARTINEZ-RESLY:  AND THAT'S IT.

12:18PM 22          THE COURT:  THANK YOU VERY MUCH.

12:18PM 23     MS. TURNER?  MS. NORTON?

12:18PM 24          MS. TURNER:  YOUR HONOR, THIS IS MS. TURNER.

12:18PM 25           THERE IS NOTHING FURTHER.

12:18PM 1              THE COURT:  GREAT.

12:18PM 2              MS. NORTON:  AND NOTHING FURTHER FROM ME, YOUR

12:18PM 3     HONOR.  MS. NORTON.

12:18PM 4              THE COURT:  THANK YOU VERY MUCH.

12:18PM 5          THANK YOU, MS. KRATZMANN.

12:18PM 6         MS. MARTINEZ-RESLY, MS. NORTON, MS. TURNER, THE JANUARY

12:18PM 7     STATUS CONFERENCE, I'M INVITING YOU TO JOIN US AGAIN AT THIS

12:18PM 8     POINT TELEPHONICALLY, AND IF THAT CHANGES, WHICH IS TO SAY IF I

12:19PM 9     REQUEST YOUR PRESENCE HERE IN SAN JOSE, WE'LL LET YOU KNOW IN A

12:19PM 10    TIMELY MANNER AS WELL.

12:19PM 11             MS. MARTINEZ-RESLY:  THANK YOU, YOUR HONOR.

12:19PM 12             THE COURT:  ALL RIGHT.  THANK YOU.  MS. DAW,

12:19PM 13    ANYTHING FURTHER?

12:19PM 14             MS. DAW:  NO, YOUR HONOR.  THANK YOU.

12:19PM 15             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  GOOD

12:19PM 16    SEEING YOU ALL.

12:19PM 17         THE TIME EXCLUSION REMAINS IN PLACE TO THE TRIAL DATE AS

12:19PM 18    PREVIOUSLY INDICATED.

12:19PM 19             MR. DOWNEY:  THANK YOU, YOUR HONOR.

12:19PM 20             THE CLERK:  COURT IS CONCLUDED.

12:19PM 21         (COURT CONCLUDED AT 12:19 P.M.)

        22

        23

        24

        25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18              DATED:  NOVEMBER 7, 2019

19

20

21

22

23

24

25