CHAMBERS COPY

# Boies Schiller Attachments

# Boies Schiller Attachment 1

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable Nathanael M. Cousins, Magistrate Judge

4

5    UNITED STATES OF AMERICA,        )
                                      )
6            Plaintiff,               )
                                      )
7    vs.                              )   No. CR 18-00258-EJD-1
                                      )
8    ELIZABETH HOLMES,                )
                                      )
9            Defendant.               )   **SEALED PROCEEDINGS**
                                      )
10   _____

                                      San Jose, California
11                                    Tuesday, October 15, 2019

12
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13       RECORDING 10:06 - 10:21 and 11:31 - 11:57 = 41 MINUTES

14
     APPEARANCES:
15
     For Plaintiff:
16                                    Williams & Connolly, LLP
                                      725 Twelfth Street, NW
17                                    Washington, D.C. 20005
                              BY:     AMY MASON SAHARIA, ESQ.
18                                    LANCE A. WADE, ESQ.
                                      PATRICK LOOBY, ESQ.
19
     For Theranos ABC:
20                                    Dorsey & Whitney, LLP
                                      600 Anton Boulevard
21                                    Suite 2000
                                      Costa Mesa, California 92626
22                            BY:     SCOTT GOLDSMITH, ESQ.

23

24
                     (APPEARANCES CONTINUED)
25

2

1  <u>APPEARANCES</u>:   (Cont'd.)

2  For Boies Schiller Flexner:

3                                    Boies, Schuller, Flexner, LLP
                                     55 Hudson Yards
                                     20th Floor

4                                    New York, New York 1001
                            BY:      PHILIP KOROLOGOS, ESQ.

5

   Transcribed by:                   Echo Reporting, Inc.
6                                    Contracted Court Reporter/
                                     Transcriber
7                                    echoreporting@yahoo.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1 Tuesday, October 15, 2019                          10:06 a.m.

2                    P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4            THE CLERK:  Calling Criminal 18-0258-1, United

5 States versus Elizabeth Holmes.

6            MR. KOROLOGOS:  Good morning.  Philip Korologos

7 with Boies, Schiller and Flexner, for Boies, Schiller and

8 Flexner.

9            THE COURT:  Welcome.  Good morning.

10            MR. GOLDSMITH:  Good morning, your Honor.  Scot

11 Goldsmith on behalf of Theranos Assignment for the Benefit

12 of Creditors, LLC.

13            THE COURT:  We'll call it ABC from here on.  Thank

14 you.  Good morning.

15            MS. SAHARIA:  Good morning, your Honor.  Amy

16 Saharia from Williams and Connolly for Defendant Elizabeth

17 Holmes.

18            THE COURT:  Good morning.

19            MS. SAHARIA:  With me at counsel table is Vance

20 Wade and Patrick Looy, also from Williams and Connolly.

21 Thank you for your Honor's prompt response to our inquiry on

22 Friday regarding Ms. Holmes' presence.  She does waive her

23 appearance, and I'd like to tender to the Court a signed

24 waiver if I may approach.

25            THE COURT:  Very good.  Yes, thank you.  We'll

4

1   take that.  Watch your step.

2              MS. SAHARIA:  Thank you.

3              THE COURT:  Thank you.

4       All right.  So thank you all.  So just some procedural

5   things for the record.  Thanks for your patience.  We're

6   here on the under seal and ex parte motions to quash a

7   subpoena issued by Magistrate Judge van Kuelen, and the

8   reason that we are here under seal and ex parte are that the

9   Court has granted that in advance.  The briefing on the

10  motions to quash, with the Court's permission, was submitted

11  under seal and ex parte, and ex parte meaning that the

12  Government is not present in the room.  Counsel for Co-

13  Defendant Balwani is not in the room, and they, as far as

14  the Court knows, have not been provided notice of the

15  hearing or an opportunity to participate in the hearing, and

16  under the authority of U.S. v. Seliew (phonetic) -- and I

17  may be pronouncing it wrong -- the Court did permit the

18  filings in their entirety of the motions to quash, response,

19  and reply all to be filed under seal but noted that the

20  sealing is limited, and I wanted to identify that right out

21  of the box so there's no inadvertent communication from

22  anyone.

23       The interest in sealing things is Ms. Holmes' interest,

24  and that's because there's an assertion that has been made

25  that her strategy in defending the case might be disclosed

5

1   to the Government and/or to Mr. Balwani and that that might

2   prejudice her in some way.  So the reason that we're having

3   this hearing under seal and ex parte is in her interest, and

4   I'll in a moment check back with her attorneys to see if

5   that interest is continuing, and --

6           MS. SAHARIA:  Yes, your Honor.

7           THE COURT:  All right.  The answer is yes.  And,

8   as the proceeding goes further on this subpoena and another

9   criminal discovery, that will have to be -- to be touched on

10  again in the sense of in granting the request to seal the

11  motions and oppositions and replies on this motion.  That

12  doesn't mean that all discovery issues in the future will

13  automatically be under seal.  There's a particular showing

14  that has been made for this hearing, and it's appropriate

15  because there's a balancing of interest that the Court

16  touched based on that in every step of the way.

17      And the potential all the parties who are not here

18  today who could object to that and may object to it some day

19  are the Government and Mr. Balwani, and in the Seliew case,

20  for example, there was an argument made by co-defendant that

21  the co-defendant's exclusion from a hearing just like this

22  one was unfair, and in that case the Ninth Circuit was not

23  persuaded that it was unfair and said that the under seal ex

24  parte proceeding was appropriate, but there is a balancing

25  of interest here between Ms. Holmes and potentially Mr.

6

1 Balwani in the under seal nature. So I don't want anyone to

2 think that Mr. Balwani might never know about the

3 proceedings. At some point he may, and so I -- I just want

4 to caution all counsel that the sealing has been for a

5 limited time period, and it's subject to further court

6 order.

7     The other balancing of interest is in the public

8 interest, and this case has had quite a bit of public

9 interest in it. I expect that will continue, and that's

10 part of the balancing that the Ninth Circuit did in the

11 Seliew case as well was to consider the public interest, and

12 that public interest has been outweighed in my assessment at

13 this point of the proceedings, given the criminal charge and

14 the interest in having a defense that is not disclosed to

15 the Government and Co-Defendants, and so it's a balancing of

16 interest that has led me to have this be under seal.

17     So this hearing will be presumptively under seal, but

18 if there's any information that anyone presents that Ms.

19 Holmes does not want it to be under seal, you'll have to

20 tell me that, and the transcript of this hearing will be

21 held under seal and ex parte, not disclosed to Co-Defendant

22 Balwani or to the Government absent further court order.

23     And if there's any further briefing in connection with

24 this hearing, that will also be presumptively under seal and

25 ex parte.

*Echo Reporting, Inc.*

7

1       All right.  Any questions about the under seal aspect
2  from anyone so far?
3              UNIDENTIFIED SPEAKER:  No, your Honor.
4              THE COURT:  All right.  And because we are
5  proceeding under seal and ex parte, it is important for us
6  to make a good record, and so I will ask for any further
7  argument that's made during the hearing to just make sure
8  you speak near a microphone and identify yourself again.  As
9  you observe, we don't have a court reporter present, but we
10 can make a transcript from the recording.  Therefore, the
11 recording is a very important piece of technology, and we'll
12 try to speak slowly enough and identify ourselves to help
13 make a good transcript, and anyone present can order a
14 transcript from the hearing.  We will note that the
15 Government and Mr. Balwani may not order a copy of the
16 transcript from the hearing and should not be notified about
17 the opportunity for a transcript unless there's a further
18 court order inviting them to make that application.
19      All right.  I received the waiver of Ms. Holmes'
20 participation, and I have found that under Rule 43, that her
21 participation could be waived today, and so that is
22 permitted, and the affidavit will be filed under seal and in
23 camera along with the other materials from today's hearing.
24             MS. SAHARIA:  Thank you, your Honor.
25             THE COURT:  As far as why I'm holding the hearing,

8

1   Judge van Keulen is the one who authorized the Rule 17
2   subpoena.  Judge Davila has referred the motions challenging
3   it to me because she was not available at the time that some
4   of those motions came in, and I'm the criminal duty judge.
5   So that's why it's been referred to me, not to Judge van
6   Keulen, and I apologize for any confusion that might have
7   caused to you as to where you were coming.
8        Any objection to my discovery order would go to Judge
9   Davila within 14 days of the order pursuant to that
10  referral.
11       All right.  That's all the kind of back story on the
12  procedures of getting here.  Are there any other procedural
13  suggestions anyone has before I finally get to the merits?
14            ALL:  No, your Honor.
15            THE COURT:  All right.  Hearing none.  All right.
16  So here's my thoughts on the merits and my suggestion as to
17  how we might proceed.
18       There's been some effort, it's obvious to me, since the
19  motions to quash and briefing was completed, that there's
20  been some narrowing and some communication between the
21  parties in the briefs as to the scope of the subpoena, and
22  not just to the scope but also the privilege issues which
23  are tied up very much with how the motions to quash might be
24  resolved.  And I am prepared legally to address all the
25  issues in the motions as to privilege, as to scope, but I

9

1  want to encourage you and give you a further opportunity now

2  that you're all here directly together to see if you can

3  work it out because I think that would be in your collective

4  interest both from an efficiency point of view but also

5  because I see some risks to all parties here if I were to

6  rule, and I'm prepared to rule, on the motions.

7        So here's the risks which I identify for you, and this

8  is in the spirit of encouraging your further communication

9  and collaboration.

10       From Ms. Holmes' perspective, of course, I could grant

11  the motions to quash and just quash the subpoena that was

12  ordered by Judge van Keulen.  That would cause you some

13  delay and potentially impede your strategy.  It would very

14  likely be without prejudice to allowing you a further

15  subpoena that was more refined, less burdensome, and more

16  specific, but that's a risk that you have here on the motion

17  is that I might grant the motions in part or in whole and

18  not give you the discovery that you seek.  When I say

19  discovery, I'm using it loosely.  Criminal discovery under

20  Rule 17 is what we're talking about.  All right.  So that's

21  Ms. Holmes' interest as I understand it.

22       For the Boies Schiller Firm, the risks as I see them

23  are that I could deny your motion and just order enforcement

24  of the subpoena or I could do that in part.  And, as I

25  understand it, you've got some burden that you assert would

10

1  be caused if I permitted the subpoena to be enforced, and so

2  we're talking about the burden of having to respond to what

3  you view as being a -- a grossly over-broad subpoena with

4  review of lots of information and not just the time it might

5  take to review, but given the privilege issues, the process

6  of going through and identifying privileges adds to the

7  complexity of this process not just for Boies Schiller but

8  for Theranos ABC, which has its own interest here of

9  figuring out how that all occurs.  There's some cost to that

10 both in time and in out-of-pocket expense, but also just

11 complexity.

12        There's also likely but not presented some complexity

13 from Co-Defendant Balwani not being present, and I don't

14 know, and I'm not making -- I'm not Mr. Balwani's counsel --

15 as to what arguments might be made and some other part of

16 the proceedings about what discovery he might be entitled to

17 as to how this process might impact that.  I'm certainly not

18 going to reach that issue legally, but I -- just thinking

19 about the reasons to have an efficient workout of this

20 dispute, one would be knowing that this may not be the last

21 privilege issue going on and it might be preferable to have

22 this resolved rather than to have a court order telling you

23 where the privilege lines are drawn because it might be less

24 flexible for you for later disputes if there are any

25 involving any and from other litigation.

11

1        This proceeding is under seal today, but it -- as I've

2    already indicated, it won't be under seal forever, and it

3    may from my point of view be preferable to work these

4    privilege and burden issues out without a court order

5    because there's some risk if I don't go in Boies Schiller's

6    way that I'll be litigating some issues of privilege waiver

7    and litigating the issues of overlap and Mr. Boies' roles in

8    representing the company and Ms. Holmes in criminal and

9    civil matters and having to delve further into the

10   consequences of being a board member, a pitch man and

11   counsel all at the same time.  I'm not sure that that is

12   what the firm wants to litigate in this court, but if it is,

13   I'll be prepared to -- to resolve them.

14       And then for Theranos ABC's role, I think some of the

15   same issues for the law firm, which are if you can work out

16   a process for dealing with their privilege issues, that

17   seems like that would be more efficient for you if this is

18   not the last time we're dealing with the privilege issues.

19       And you've got the same challenges of if I don't go

20   your way on the privilege issues, then I'll rule on them and

21   that will impact you not only on this motion but on other

22   motions in this case and potentially in other civil

23   litigation as well.

24       So those are just the -- my assessment of what some of

25   the litigation risks are that the parties face, but at a

12

1  holistic level, I'm the person in the room with the least

2  detailed knowledge as to what records Boies Schiller

3  actually possesses in its document vaults, with the least

4  knowledge as to what privilege might attach to particular

5  records, and counsel in the room has a much better

6  understanding of what you've actually got and what you --

7  what burden you would face in producing information and

8  doing that review, and for Ms. Holmes' counsel, I'm not as

9  well positioned as you are to know what you actually need to

10 help you in the criminal case.  It's your -- it's your

11 defense.  It's your strategy, and I understand it from the

12 papers as you've communicated it, but in an iterative

13 process of both understanding what the Boies Schiller Firm

14 has and what would be useful to you, you're just in a better

15 position to communicate about that directly with them than I

16 am.  I can order production of things, but I don't know in a

17 detailed level how much that's going to help you or not help

18 you.  So the line drawing, I can draw lines if necessary or

19 maybe I should just deny the motions to quash and order you

20 to get everything you've asked for, but you're in a better

21 position to negotiate about these issues than I am to do the

22 negotiation for you.

23        So that's a very long-winded introduction of saying I

24 think there's some collective interest in conferring and

25 coming to some agreement as to the parameters of the

13

1 subpoena, and I want to give you an opportunity to do that

2 further this morning before I wade in and start drawing

3 lines for you.

4        So, any objection to a little further meeting and

5 conferring among you under seal before I take arguments on

6 the motions?

7        MS. SAHARIA:  No, your Honor.

8        THE COURT:  Hearing none.  All right.  So I'll

9 exit, and I'll leave you for the courtroom.  It's under seal

10 and ex parte, so no one else should be joining in.  If it

11 will be desirable for any of you to have breakout space, we

12 do have a conference room -- a jury conference room directly

13 outside and to the left, which is for your use.  We have

14 even two smaller conference rooms around to the right which

15 my deputy can assist you to if you need extra breakout

16 space.  If you resolve things, if you could let my deputy

17 know, and I'll come back as soon as you tell me that.

18 Barring hearing from you, we'll come back at 11:30, which is

19 a little more than an hour, to see how things are going.

20 I've got -- I'm on criminal duty right now.  So I have some

21 other criminal matters to attend to.  That's what I'll be

22 doing while you're working at it.  So I thank you for your

23 patience and hard work in working through these issues.

24 We'll come back at 11:30 unless I hear from you sooner than

25 that.  Thank you.

14

1      (Proceedings recessed briefly.)

2           THE COURT:  All right.  We return to our under

3  seal ex parte Rule 17 motion to quash proceedings.  Let me

4  get Ms. Holmes' counsel's update as to our status.

5           MS. SAHARIA:  Thank you, your Honor.

6      I'm pleased to report that we have reached, I think, a

7  semi-resolution but perhaps not a full resolution.  So let

8  me describe where we are.

9           THE COURT:  Very good.  Please.

10           MS. SAHARIA:  So, with respect to the subpoena as

11  we had agreed to modify it -- and that agreement is set

12  forth on pages four and five of -- of the law firm's reply

13  brief -- we had agreed that they would search the files of

14  10 custodians and that they would do so for two categories

15  of documents, the first being communications between Boies

16  Schiller and certain third parties.  Those are not subject

17  to any privilege concern.  I think we're all in agreement on

18  that, that they will produce those documents, and the

19  assignee has asked for 21 days to review the documents

20  before they are turned over to us in order to confirm that

21  they do not contain any privileged materials, and we have

22  agreed to 21 days for the production of that category of

23  documents.

24           THE COURT:  Twenty-one days from production -- or

25  disclosure to them before they make a privilege assertion?

15

1          MS. SAHARIA:  Correct, meaning Boies Schiller will

2    produce the documents first to the assignee.  They will have

3    21 days to review them.  Assuming they have not challenged

4    the privilege clause, the documents will then be produced to

5    us.  So that's the first category.

6          The second category is emails between those same 10

7    custodians and three Theranos employees, Ms. Holmes, Mr.

8    Balwani, and Heather King, who is their general counsel,

9    that are responsive to the eight categories in the subpoena.

10         Subject to further meeting and conferring about search

11   terms that could be used or potential date ranges that might

12   be used to reduce the burden to Boies Schiller, I think we

13   are in agreement with Boies Schiller that we will engage in

14   that meet and confer process to attempt to come up with what

15   we think we will be able to come up with a satisfactory

16   resolution.  They would reserve the right to come back if

17   we're not able to.

18         THE COURT:  So, just to make sure I capture what

19   you just said, left unresolved is the discussion about any

20   further filtering of that email subset?

21         MS. SAHARIA:  Correct.  We had previously agreed

22   that we would propose search terms, but that process was cut

23   short by the dispute.  So we will return to negotiating

24   search terms in an attempt to resolve their burden concerns

25   with respect to that category.

16

1        Now, the issue, however, as to that category is that
2   the counsel for assignee does not have authority to consent
3   to any disclosure of privilege documents, and so, although,
4   Boies Schiller is willing to work with us to produce those
5   documents, the assignee does not consent to the production
6   of privilege documents.
7        We believe that a way that the Court could resolve this
8   issue would be to enter an order under Federal Rule of
9   Evidence 502(d), which provides that when the Court orders
10  there shall be no waiver, documents can be produced and no
11  waiver of privilege will occur.  That would allow the
12  assignee to continue to protect privilege.  There would be
13  no waiver.  When the time comes down the road to introduce
14  them at trial, there could be a further meet and confer with
15  the assignee about those documents, to the extent the
16  assignee still exists at that point in time, which is
17  unclear, but we think that would be a way to allow us to go
18  forward if the Court were willing to take that step.
19       But if the Court is unsure about taking that step, I
20  think the parties need to litigate the privilege issue
21  because the assignee is not willing to consent to
22  disclosure.
23       THE COURT:  All right.  Thank you.  I understand
24  all that.
25       Let me kind of go back to the first category as to the

17

1    review process for the assignee.  If that category that's

2    being produced is communications with third

3    parties --

4              MS. SAHARIA:  Yes.

5              THE COURT:  -- what is the arguable -- your

6    privilege being asserted, what's the arguable privilege that

7    would apply to a communication with a third party?

8              MS. SAHARIA:  We don't believe there is one.

9              MR. KOROLOGOS:  Good morning -- or good afternoon.

10   Whatever.

11             THE COURT:  Still morning, yeah.

12             MR. KOROLOGOS:  Phil Korologos with Boies

13   Schiller.  With respect to privilege, since we no longer

14   represent Theranos as we present in our papers, I'll leave

15   the privilege questions to the assignee, but I would like to

16   just address a few items based on the presentation that was

17   just made but if your Honor wants to go to the privilege

18   question --

19             THE COURT:  Well, first I want to have my question

20   answered, but then I'll be glad to hear from you.

21             MR. KOROLOGOS:  Then we'll -- we'll deal with

22   that.

23             THE COURT:  So, Mr. Goldsmith, what privilege

24   might even arguably there be in a communication with a third

25   party?

18

1              MR. GOLDSMITH:  Well, number one, I think the --

2    the review process is necessary because the assignee, number

3    one, doesn't have -- have any of these documents.   Number

4    two, as I understand from Boies's counsel, with respect to

5    this category of third party communications, that they're

6    not doing a privilege review, and so the assignee would like

7    an opportunity to make sure there is a privilege review,

8    particularly given the sensitive nature of this -- these

9    requests.  So that -- that is, in essence, the basis.

10        In addition, if there are any documents that may be

11   subject to confidentiality protection separate from a

12   privilege, subject to a future protective order the parties

13   can work out, the assignee would like to ensure that those

14   documents are properly investigated.

15              THE COURT:  All right.  Thank you.

16        Mr. Korologos, you now wanted to say something more.

17   And if you could just make sure you speak near a microphone.

18   You can come on up or --

19              MR. KOROLOGOS:  Thank you.  Phil Korologos again.

20        Really only two points I think, your Honor.  Ms.

21   Holmes' counsel said that Boies Schiller is willing to work

22   with Ms. Holmes.  That's correct.  Subject, however, we feel

23   compelled to continue to assert any privilege that might

24   exist for the documents unless and until there's either an

25   order of the Court or the assignee were to say it's not

19

1   asserting or waiving a privilege.  So subject to that, we

2   are willing to work with Ms. Holmes' counsel, including to

3   try to narrow the scope of that second category to try to

4   reduce some of the burden on us.

5       And then the final point is that I believe the

6   agreement is -- at least it's our position that if your

7   Honor is either not willing to or does not believe the Court

8   can enter into such an order on non-waiver or that is

9   somehow not satisfactory to the parties, it's not just the

10  privilege question that we would need to litigate but

11  because that issue relates to other issues, including

12  admissibility under Rule 17(c), that essentially all bets

13  are off and we're back to the papers and arguing before your

14  Honor.

15          THE COURT:  All right.  I'm thinking about the all

16  bets are off aspect of it if you have an agreement on some.

17          MR. KOROLOGOS:  I should say that I think there's

18  likely still agreement on the first category.

19          THE COURT:  That's where I'm not understanding how

20  the all bets would be off on that category.

21          MR. KOROLOGOS:  With one reservation of an issue

22  that we have raised with respect to the timing scope of that

23  that hopefully will not become an issue.

24          THE COURT:  All right.  So, while I have you at

25  the podium, what's the -- as to what you've agreed upon,

20

1  what's the time period in which these events are going to

2  take place?  So let's take the first category,

3  communications with third parties.  When are --

4            MR. KOROLOGOS:  Well, the first step is we need to

5  get search terms from Ms. Holmes' counsel, including on that

6  -- and, you know, hopefully those will be negotiated quickly

7  and -- and be sufficiently specific that the third parties

8  are carefully identified.  For instance, it might say, you

9  know, documents are from the FDA or the SEC or DOJ and

10 things like that.  To try to clearly identify documents that

11 hopefully help solve the privilege review issue as well, so

12 that the documents are searched with metadata to indicate

13 that the documents actually have gone to third parties, and

14 hopefully that process won't take too long.  Exactly how

15 long it will take to gather the documents, we do have issues

16 on that.  I think, as our papers showed, we switched from a

17 server-based system in 15 different offices to a Cloud

18 system only in 2018 I believe it was.  So we have to go look

19 at old servers and gather those documents.  That's a several

20 hours process per custodian, and we're talking about 10

21 custodians.  That's just to get the documents into a form

22 where they could then have search terms applied.  We would

23 obviously start that process while we're awaiting search

24 terms.  So hopefully the gathering of those emails will not

25 be a delay and that once we have the search terms, that can

21

1  be promptly done.

2         THE COURT:  And is there an agreed upon date range

3  for the third party communications?

4         MR. KOROLOGOS:  If we're able to reach this

5  agreement, the -- the date range would be from the

6  commencement of Boies Schiller's involvement, which I

7  believe is in maybe October of 2011, through the date of the

8  subpoena.

9         THE COURT:  All right.  Thank you.  And let me go

10  back to Ms. Holmes' counsel on the question of just

11  implementing this, getting the expectation of all of you

12  about when you enter things, if you agree that you're going

13  to be proposing search terms in that category, when will you

14  be proposing them?

15         MS. SAHARIA:  I would imagine we could propose

16  them in a few days, your Honor.  We were already developing

17  them before we had this impasse between the parties.

18         THE COURT:  All right.  And you agree that as to

19  this category, that's the next step?

20         MS. SAHARIA:  Yes, your Honor.  The step is for

21  them to collect documents and for us to propose the search

22  terms, yes.

23         THE COURT:  All right.  And I think you've

24  presented this as a partial resolution in the beginning, and

25  my concern about the 21 days is is it necessary for that

22

1  period of time to review.  Ultimately, you concede you agree

2  to the 21-day time period?

3          MS. SAHARIA:  Yes.  Yes, we did, your Honor.

4          THE COURT:  All right.  So then I won't upset your

5  agreement.

6      All right.  I'm jumping now down to the bottom part,

7  the suggestion of a protective order with a 502(d) clawback

8  in it.  Anything that prevents you from hashing that out

9  right here this morning?  What -- what steps are necessary

10 for me to grant that?

11         MS. SAHARIA:  I think -- we are very happy to work

12 that out this morning.  I think that the assignee is the

13 party that has expressed discomfort with waiving privilege.

14 So we would be very happy to work that out here and now.

15         THE COURT:  All right.  Mr. Goldsmith, let me hear

16 from you about the process of that, and if you could speak

17 near a microphone, please.

18         MR. GOLDSMITH:  Sure.  Yeah.  Your Honor, I would

19 -- I'll defer to you on the process to do that.  The

20 assignee's position here today is -- is very simple.  It's

21 the privilege holder.  It's asserting it's privilege, and

22 beyond that, there's not a whole lot that I'm in a position

23 to do here today other than do those -- those two things,

24 assert the privilege as a privilege holder.

25         THE COURT:  All right.  So it's been proposed from

*Echo Reporting, Inc.*

23

1 Ms. Holmes' counsel that there be a protective order with a

2 502(d) provision for clawback.  In your view, in response to

3 that proposal, you couldn't agree to that, but you

4 understand that I could order it?

5          MR. GOLDSMITH:  That's correct.

6          THE COURT:  All right.  And as to the contemplated

7 for the next steps on the emails, so here, as I foresee it,

8 there's much more of a likelihood of a real privilege

9 assertion for that category as compared to the third party

10 category where by definition if it's responsive and it's

11 going to a third party, there's probably not going to be a

12 privilege, but I'll give you the 21-day period for review.

13      What other mechanisms do you have to suggest to me how

14 to protect your privilege for the email?

15          MR. GOLDSMITH:  Well, I think, in particular, for

16 the email, an opportunity to review and ensure that the

17 documents are designated as privileged is certainly

18 important to the assignee in terms of the length of time.

19 Based on the -- the estimated potential document production

20 from -- from Boies' -- Boies' counsel, it seems like that

21 would be a more voluminous production.  I don't know the

22 exact number but certainly much larger than the third party

23 communication category.  I am less comfortable today

24 agreeing to 21 days for that particular review, but, you

25 know, I would be open to a 21 period review with an

24

1  opportunity to come before the Court with good cause to

2  extend that period if it -- if it becomes something that's

3  completely unmanageable.

4  　　　　THE COURT:  Uh-huh.  All right.  And back to you,

5  Mr. Korologos.  As to the procedural mechanism of a 502(d)

6  clawback and a protective order to regulate that process, if

7  I authorize that and give you all a chance to -- and put in

8  writing the -- the protective order so that I can see it and

9  grant it subject to Theranos ABC objecting to it or

10  proposing something different, would that give you the

11  procedural protection to go ahead with your email review and

12  to move ahead with that process?

13  　　　　MR. GOLDSMITH:  Well --

14  　　　　THE COURT:  Or do you want to come back for a

15  further hearing?

16  　　　　MR. GOLDSMITH:  I believe it would, but I base

17  that on the fact that with respect to privilege, I'm kind of

18  the middle man.  We no longer represent Theranos, and any

19  privilege assertion is Theranos's to assert since I no

20  longer represent them.  We can't assert that.  We can help

21  identify what we think might be privileged and provide

22  information to the assignee, but it's their right to the

23  extent there is a right to assert that, and I don't believe

24  that we have an obligation other than to follow their

25  directions with respect to that.  They have given us

25

1  directions as you've seen in our papers, that they're not

2  waiving the privilege and that we are to protect privileged

3  information and we continue to do that.  So as long as his

4  issues are satisfied or by order or by agreement, then I

5  don't think I have any reason to complain about that.

6          THE COURT:  All right.  I'm just trying to make

7  sure I understand the situations in which you think this

8  agreement is blown up.  I'm not trying to -- I'm not trying

9  to blow up the agreement that you've reached.  I'm trying to

10  effectuate it.

11          MR. GOLDSMITH:  Right.

12          THE COURT:  And so I don't want to accidentally do

13  something that's going to make you feel like the deal is no

14  longer in place.

15      All right.  I think I understand what you've each said.

16  So I approve the structure that you have suggested, and I'm

17  looking at Ms. Holmes' counsel as she's the one who I spoke

18  to at first as to what the agreement is.  But the parts

19  which need my further involvement are these, and I'll try to

20  say these now.

21      First, as to the deadlines of when these things are

22  going to occur, I'll set a deadline of the 18th of October,

23  which is Friday, for Ms. Holmes to propose the search terms

24  that you discussed here, and those proposals will be going

25  to the Boies Schiller counsel.

26

1     I approve the 21-day review period by Theranos ABC, and

2  I'll add a deadline.  If there's a dispute that comes from

3  that review, if there's a privilege dispute, if there's some

4  other dispute about what should be provided to Ms. Holmes'

5  counsel or not, that must be presented to me within seven

6  days after the conclusion of that review.  So I want to have

7  deadlines to keep this process moving along and not have a

8  skipped -- if there's a dispute, then come back and we'll

9  get -- we'll figure it out.

10     I'll also set a deadline of this Friday, the 18th for

11  Ms. Holmes to file a proposed protective order with the

12  502(d) clawback provision in it.  And maybe there's other

13  aspects of this prospects that you want to have addressed in

14  a protective order.  If you think of --

15               MS. SAHARIA:  Can I address that briefly, your

16  Honor?

17               THE COURT:  You may.

18               MS. SAHARIA:  Just to make sure we're all on the

19  same page.

20               THE COURT:  Yeah.

21               MS. SAHARIA:  So what we're envisioning under Rule

22  502(d) is an agreement that would allow us to review the --

23  to actually receive and review the privilege documents but

24  would require us to obviously keep them confidential and not

25  use them in any way, and then if there were to come a time

27

1  when we would seek to use them, there would be a further
2  step, but we were not contemplating the assignee would have
3  the right to claw them back from us, just that we would be
4  restricted in what we could do with them.
5          THE COURT:  That makes sense to me.
6          MS. SAHARIA:  Perfect.
7          THE COURT:  I've seen them drafted in a variety of
8  different ways with different notices and different
9  protections and processes, especially here where there are
10 three parties.  It gets a little more complicated, and we
11 could be dealing with more than three parties at some port.
12         MS. SAHARIA:  Understood.
13         THE COURT:  Maybe we already dealing with more
14 than three parties.  So I -- rather than me tell you what it
15 should look like, I wanted to give you an opportunity to
16 draft with consultation with the other counsel here present
17 to an agreement that you agree with.  And I understand Mr.
18 Goldsmith's not in a position of agreeing to it right now,
19 but I want you to put in writing the -- the provisions that
20 you would request, and --
21         MS. SAHARIA:  Thank you.
22         THE COURT:.  -- giving them an opportunity to -- to
23 continue to be involved in that process, and I don't --
24 based on what I'm hearing, I don't expect there's going to
25 be an agreed upon proposal, but you can file it under seal

28

1  ex parte by Friday.  Then I'll review that and make an order

2  on it.

3            MS. SAHARIA:  Thank you.

4            THE COURT:  I don't think we need a further

5  hearing before I rule on it.

6       Yes, Mr. Korologos?

7            MR. KOROLOGOS:  One point to add --

8            THE COURT:  Yeah.

9            MR. KOROLOGOS:  -- and I think it's clear, but I'd

10 like to make it express nonetheless.  Assuming this gets

11 worked out as has been proposed, I want to make it clear

12 that this in our view would satisfy Boies Schiller's

13 obligations at last under this subpoena.  Obviously there

14 may be future subpoenas, but for this particular subpoena

15 that we would not have further obligation to be on the ones

16 that we've addressed with --

17           THE COURT:  The agreed upon aspects of what's been

18 -- yeah, that's my understanding, that the scope has been

19 narrowed through this conferring process, and so what has

20 been specified in court here is what's being asked for at

21 this stage.

22           MS. SAHARIA:  Correct.

23           THE COURT:  And the privilege issues which are --

24 you know, they're being asserted by Theranos ABC but honored

25 by Boies Schiller or being addressed in two ways, one, for

29

1  the narrowing.  By narrowing, that means there's less total

2  material to review for privilege.  And, secondly, the

3  process of having a protective order and/or review by

4  Theranos ABC before production are ways to address the

5  privilege assertions.  So that's my understanding.

6      And I will address the protective order once I receive

7  it.  I approve the -- you know, the parameter discussion

8  about the three executives and the emails, and I encourage

9  you to continue to confer with each other about other ways

10  to filter the burden of what's being provided, and it may be

11  that it's not just a one-time production.  Maybe you do a

12  sample of certain materials for a certain time period, and

13  you mentioned that there's some things on older servers and

14  some things which are maybe more easily accessible.  I'll

15  leave to your further investigation and communication if

16  there's ways to phase the production to get some information

17  provided sooner than others and to prioritize what you most

18  need as to that time period.

19      I leave you the option if you want to propose and work

20  here together to get some 502(d) and productive order

21  drafted right now for agreement, you can have the courtroom

22  for another hour if you wish it or you can have for the rest

23  of the week if that would be to your liking.

24      MS. SAHARIA:  Your Honor, I think that we would

25  propose -- we'll propose something, and we'll confer

30

1  obviously with the other parties, but it may be difficult to

2  hash it out here in the courtroom.

3       THE COURT:  Very good.  All right.

4       The last procedural question I have is we could

5  schedule a follow-up conference in a month or so just to see

6  where you're at in this process.  In the alternative, I

7  could get a status report from you in about a month or so as

8  to how things are going, and you can tell me if you wish to

9  have a further conference or if something else be proposed.

10 So I just want to see what you would recommend as far as

11 follow-up.

12      I'll go to Ms. Holmes' counsel -- unless you're the one

13 seeking the information.

14      MS. SAHARIA:  I think we would propose to file a

15 status report in approximately a month, and we can let the

16 Court know at that time whether we think a schedule would be

17 worthwhile.

18      THE COURT:  All right.

19      MS. SAHARIA:  I mean a hearing would be

20 worthwhile.

21      THE COURT:  Any objection to that from the

22 Defense?

23      MR. GOLDSMITH:  No objection.

24      MR. KOROLOGOS:  No.

25      THE COURT:  All right.  So we'll do that.  We'll

31

1   say November 15th to have an ex parte under seal, joint

2   status as to the discovery process, and if you have need

3   before then to come back in, you're not precluded from

4   letting me know sooner that you've got a problem.

5           MS. SAHARIA:  Thank you.

6           THE COURT:  But that will be an update point.

7       All right.  Thanks all for working on that.  Anything

8   further today?

9           MR. GOLDSMITH:  Yes, one more thing.  So the

10  assignee has been sort of in the dark as to some of these

11  filings because they've been under seal.  For instance, we

12  haven't received Boies' motion to quash for the reply, I

13  think because they assumed that the initial comments were

14  under seal and so we're not entitled to it.  I would just

15  ask the Court for an order that allows the assignee to

16  receive the documents that are filed relating to this --

17  this particular --

18          THE COURT:  Any objection to that from the other

19  parties present?

20          MR. KOROLOGOS:  Not from Boies Schiller.

21          MS. SAHARIA:  Your Honor?

22          THE COURT:  Yeah.

23          MS. SAHARIA:  We do object to the unsealing of our

24  initial application.

25          THE COURT:  The pre-subpoena --

32

1          MS. SAHARIA:  Correct.

2          THE COURT:  -- application?

3          MS. SAHARIA:  The pre-subpoena application because

4  we think that more fully disclosed our defense strategy, but

5  our opposition we've already provided to both parties, and

6  that I think fully responds to all of their arguments.

7          THE COURT:  All right.  So I will authorize the

8  sharing of the post-subpoena briefing with Theranos ABC's

9  counsel.  So, as I understand, that means it's Boies

10 Schiller's briefing in connection with the motion, correct?

11         MR. KOROLOGOS:  Just so the record's clear, I

12 believe that's five documents, our motion to quash, two

13 supporting affidavits, our reply brief and one supporting

14 affidavit.

15         THE COURT:  Right.  And -- and, as I understand

16 it, you're just asking for them to provide a copy to you?

17         MR. GOLDSMITH:  That would be great.

18         THE COURT:  All right.  I authorize that.  And

19 this -- all the under seal, it's strictly an order -- we're,

20 of course, filing them under seal pursuant to order, but any

21 time someone's asking for a copy, we need to validate who it

22 is and make sure it's authorized, and so that's one of the

23 unfortunate aspects of it being under seal is an ex parte is

24 it makes it a little bit challenging to keep track of who

25 gets what and when.  So I authorize your request.

33

1          All right.  Anything else?

2               MS. SAHARIA:  No, your Honor.

3               THE COURT:  All right.  Thanks so much for your

4     time today.  Have a good day.

5               MS. SAHARIA:  Thank you.

6               MR. GOLDSMITH:  Thank you.

7               MR. KOROLOGOS:  Thank you.

8          (Proceedings adjourned at 11:57 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

## CERTIFICATE OF TRANSCRIBER

1

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16          Echo Reporting, Inc., Transcriber

17          Monday, November 4, 2019

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

# Boies Schiller Attachment 2

Nov. 6, 2019                                                                 *Confidential*

<u>Proposed Search Terms</u>

The compromise reached during the October 15 hearing properly focused on email because all responsive communications between the 10 custodians, on the one hand, and (1) specified third parties or (2) Holmes/Balwani/King (as GC of Theranos), on the other hand, are expected to be in the email of those 10 custodians. BSF's search, therefore, will focus on collecting and producing documents from the email accounts of those 10 custodians.

Regarding proposed terms for searching email, BSF is willing to proceed as described below and is also willing to consider engaging in additional targeted searches, *e.g.*, for a specific document, once you have had an opportunity to review the materials produced pursuant to the searches described below.

I.    <u>Communications with third parties:</u>

Date ranges:

> *For each of the 10 custodians, BSF will use a date range that is the later of July 1, 2011 (which shall be the initial date for David Boies) or the first date on which the custodian billed time to a relevant Theranos matter; through July 18, 2019.*

*Custodians: 10 identified BSF attorneys/personnel*

**(a) Communications related to Theranos between the firm and any state or federal regulatory agency**

BSF will search the domain names listed below in the email address fields of the 10 custodians (i.e., "To," "From," "Cc," or "Bcc").

(Theranos OR Elizabeth OR Holmes OR Sunny OR Balwani OR TSPU* OR Nanotainer* OR CTN* OR "blood collection device*" OR "BCD*" OR miniLab* OR Edison* OR Normandy OR Newark OR "patient service center*" OR "PSC*" OR "Wellness Center*" OR Walgreens OR WAG OR "small* sample" OR "micro sample" OR HSV OR "HSV-1") AND

- @fda.hhs.gov
- @cdrh.fda.gov
- @cms.hhs.gov
- @hhs.gov
- @oig.hhs.gov
- @usdoj.gov
- @sec.gov
- @doj.ca.gov
- @oag.ca.gov
- @cdph.ca.gov
- @dhcs.ca.gov
- @chhs.ca.gov

1

Nov. 6, 2019

*Confidential*

- @assembly.ca.gov
- @health.ny.gov
- @health.state.ny.us
- @azdhs.gov
- @scottsdale.az.gov
- @az.gov
- @pa.gov
- @whitehouse.gov

**(b) Communications between BSF and Theranos investors or potential investors or persons acting on their behalf**

BSF will search the domain names listed below in the email address fields of the 10 custodians (i.e., "To," "From," "Cc," or "Bcc").

(Theranos OR Elizabeth OR Holmes OR Sunny OR Balwani) AND

- aeisenman@sofersteiner.com OR asktr@aol.com OR alanjayeisenman@gmail.com OR alan.eisenman@lpl.com OR dharris@uscallc.com
- @bdventures.com
- challhfg@aol.com OR @hallfinancial.com OR joel.reese@rm-firm.com
- @pfmlp.com OR wchan@gibsondunn.com OR rbrodsky@gibsondunn.com
- @rdvcorp.com OR dld@amway.com OR cash@wnj.com OR blennon@wnj.com
- dmosley@cravath.com OR hsmosley@aol.com OR jburetta@cravath.com
- @peerventurepartners.com OR mfagel@gibsondunn.com OR jhayes@gibsondunn.com OR jlemaux@gibsondunn.com
- @imail.org
- @dignityhealth.org OR jlibby@manatt.com
- @ccf.org
- @Bechtel.com
- scaks@msn.com
- @cox.com OR rschindel@cravath.com OR jpryor@cravath.com
- @madronecap.com OR adavidson@orrick.com
- @kissingerinc.com
- j@exor.com OR cbolleter@fidares-trust.li OR noam@conegliano.com OR pete.white@srz.com OR brittany.lane@srz.com
- crc@21cf.com
- @eoson.co.za OR @quarterwatch.com
- @thekraftgroup.com
- @inbursa.com

2

Nov. 6, 2019

*Confidential*

- @bdtcap.com OR sean.berkowitz@lw.com
- @fremontgroup.com OR amy@ramsey-ehrlich.com
- @iconiqcapital.com OR @iconiqbb8.com
- @lucasvg.com
- @sequoiacap.com OR david.hennes@ropesgray.com OR annie.hancock@ropesgray.com
- @sutterhealth.org
- @uscallc.com
- marc@ireit.com OR marcmpc@aol.com OR marcostrofsky@gmail.com OR marc@photographer.com
- @tsconf.com OR @teleconferencingservices.net OR @nordheimerco.com
- @ataventures.com
- chanbo@standford.edu OR chanbo@theranos.com
- @sandboxindustries.com
- @scitecharabia.com
- @heritage-grp.com

### (c) Communications between BSF and former/departing employees of Theranos or persons acting on their behalf

BSF will search the domain names listed below in the email address fields of the 10 custodians (i.e., "To," "From," "Cc," or "Bcc").

For all of the other search strings, BSF cannot accept these as written because these terms hit on tens of thousands of documents that are not responsive and/or that are entirely unrelated to this matter. We will revise these searches as indicated below.

Theranos AND (~~Theranos OR Elizabeth OR Holmes OR Sunny OR Balwani OR~~ secret* OR proprietary OR prohibit* OR unauthoriz* OR terminat* OR depart* OR separat* OR resign* OR quit* OR NDA OR disclos* OR non-disclos* OR disparag* OR non-disparag*) AND

- Tyler OR Shultz OR Schultz OR Argyris OR "Farella Braun" OR @fbm.com OR Havian OR McLamb OR @constantinecannon.com
- Erika OR Cheung OR erika.m.cheung@gmail.com
- Rosendorff OR arosendorff@gmail.com OR Hamilton OR Arendsen OR @arendsenlaw.com OR Rees OR Morgan OR Coyle OR Skye OR Langs OR @coblentzlaw.com
- Young OR Arguedas OR Goldman OR Headley OR @achlaw.com
- Surekha OR Gangakhedkar OR Pipkin OR @mcmanislaw.com
- Raquel OR Rosendin OR Douglass OR @bfdesq.com
- Philippides OR deliasca@gmail.com
- Nishit OR Doshi
- Suraj OR Saksena

3

Nov. 6, 2019

*Confidential*

- Sheldon OR Quinn OR Emanuel OR @quinnemanuel.com

**(d) Communications between BSF and the media related to Theranos and/or Ms. Holmes**

BSF will search the domain names listed below in the email address fields of the 10 custodians (i.e., "To," "From," "Cc," or "Bcc").

The terms "Carreyrou OR Parloff OR Auletta" hit on thousands of documents that are not responsive and/or that are entirely unrelated to this matter.  We will revise these searches as indicated below.

(Theranos OR Elizabeth OR Holmes OR Sunny OR Balwani OR TSPU* OR Nanotainer* OR CTN* OR "blood collection device*" OR "BCD*" OR miniLab OR Edison* OR Normandy OR Newark OR "patient service center*" OR "PSC*" OR "Wellness Center*" OR Walgreens OR WAG OR "small* sample" OR "micro sample" OR HSV OR "HSV-1") AND

- @dowjones.com OR @wsj.com
- @fortune.com
- @wired.com
- @Medscape.net
- @forbesworldwide.com
- @usatoday.com
- @sph.com.sg
- @bizjournals.com
- @businessinsider.com
- @fox.com
- @nbcuni.com
- @bbc.co.uk
- @cbsnews.com
- @abc.com
- @cnn.com
- @cnbc.com
- @condenast.com
- @newyorker.com
- @glamour.com
- @economist.com
- @fastcompany.com
- @inc.com
- @bloomberg.net
- @voxmedia.com
- @medium.com
- @thomsonreuters.com

Nov. 6, 2019

*Confidential*

- @techcrunch.com OR @crunchbase.com
- @nytimes.com
- @washpost.com
- @vanityfair.com
- @time.com
- @tedmed.com
- @ft.com
- @healthtech.com
- rigatonika@gmail.com
- tuancnguyen@gmail.com
- ~~Carreyrou OR Parloff OR Auletta~~
- John.Carreyrou@dowjones.com OR john.carreyrou@wsj.com roger_parloff@fortune.com OR rparloff@gmail.com[1]

---

[1] Auletta's email address is already one of your search terms ("rigatonika@gmail.com") so we did not include it again in this search string.

Nov. 6, 2019

*Confidential*

II.    Communications with Holmes, Balwani, or Heather King (while GC):

Date ranges:

> *For each of the 10 custodians, BSF will use a date range that is the later of July 1, 2011 (which shall be the initial date for David Boies) or the first date on which the custodian billed time to a relevant Theranos matter; through Dec. 2, 2016 (for David Boies) and through the last date on which the custodian billed time to a relevant Theranos matter for the remaining custodians.*

*Custodians: The 10 identified BSF attorneys/personnel.*

BSF will search for all emails between the 10 BSF custodians and any one or more of Holmes, Balwani, or King that also contain any of the below search terms, which are grouped based on the identified subject matters.

(1) **Communications with Holmes, Balwani, or King regarding BSF's advice to Theranos and/or Ms. Holmes regarding the FDA approval processes and any other state or federal regulatory compliance issues;**

(2) **Communications with Holmes, Balwani, or King related to Theranos concerning communications between BSF and any state or federal regulatory agency.**

- FDA OR "Food and Drug Administration"
- CDRH OR "Center for Devices and Radiological Health"
- OIR OR "Office of In Vitro Diagnostics and Radiological Health"
- Alberto OR Gutierrez OR Courtney OR Lias OR Sally OR Hojvat OR Shuren OR Peggy OR Hamburg
- CMS OR "Centers for Medicare and Medicaid Services"
- Yamamoto OR Bennett OR Yost OR Keller
- HHS OR "Health and Human Services"
- OIG OR "Office of Inspector General"
- DOJ OR "Department of Justice" OR USAO OR "U.S. Attorney*" OR AUSA
- Schenk OR Bostic OR Leach
- SEC OR "Securities and Exchange Commission"
- CDPH OR "California Department of Public Health"
- DHCS OR " California Department of Health Care Services"
- CHHS OR "California Health and Human Services Agency"
- NYSDOH OR "New York State Department of Health" OR "New York Department of Health"
- ADHS OR "Arizona Department of Health Services"
- "Pennsylvania Department of Health"
- "Attorney* General" OR AG*
- Congress OR Senate OR House OR Representative

6

Nov. 6, 2019

*Confidential*

- Governor
- "White House"
- Regulatory AND (approv* OR strategy OR advice)
- LDT* or "lab developed test*"
- CLIA OR clinical
- Inspect*
- Investigat*
- Inquir*
- Complain*
- Subpoena
- Testif* OR Testimony
- "Grand jury"
- Comply OR Complies OR Compliance
- Bruin
- Galileo
- Balboa
- Midway

(3) **Communications with Holmes, Balwani, or King regarding the firm's advice to Theranos and/or Ms. Holmes regarding the duties owed to Theranos investors and potential investors, the content of offering documents, and any other issues relating to soliciting investors;**

(4) **Communications with Holmes, Balwani, or King reflecting communications between BSF and Theranos' investors or potential investors or persons acting on their behalf.**

- invest*
- "C-1"
- "C-2"
- series
- round
- offering
- fund*
- prospect*
- stock*
- "forward looking"
- Slide* OR Deck OR "power point" OR "powerpoint" OR "ppt"
- Eisenman OR Harris
- "Black Diamond" OR BDV OR Lucas OR Quintana
- "Hall Black Diamond" OR HBD OR "Craig Hall" OR Tolbert OR Reese

Nov. 6, 2019

*Confidential*

- PFM OR "Partner Fund" OR Grossman OR "Chris* James" OR Gibson OR GDC OR Chan OR Brodsky
- RDV OR Dynasty OR DeVos OR Tubergen OR Peterson OR Ash OR Lennon OR Warner OR Norcross OR WNJ
- Mosley OR Cravath OR Buretta
- "Central Valley" OR CVA OR Merkin
- "PEER Ventures" OR Hutchings OR Campbell OR Fagel OR Hayes OR Lemaux
- Intermountain OR Ehrenkranz
- Dignity OR Zuckerman OR Libby OR Manatt OR Phelps
- "Cleveland Clinic" OR Cosgrove
- Bechtel
- Dracopoulos OR Niarchos
- Cox OR "Alex* Taylor" OR Schindel OR Pryor
- Madrone OR Walton OR Penner OR "Soda Spring" OR Davidson OR Orrick
- Kissinger
- Bendel OR Elkann OR Noam OR Ohana OR Schulte OR Zabel OR SRZ
- Murdoch OR Ravitz
- EOSon OR Oppenheimer
- Kraft
- Inmobiliaria OR "Carlos Slim"
- BDT OR Trott OR Verigan OR Berkowitz OR Latham OR LW
- Fremont OR Earthy OR Dachs OR Sheehy OR Ramsey OR Ehrlich
- Iconiq OR Griffith
- "Lucas Venture"
- Sequoia OR Dixon OR Hennes OR Hancock OR Ropes
- Sutter
- Mendenhall OR "US Capital" OR Surprenant
- Ostrofsky
- Nordheimer
- Shapiro OR Monsanto
- "Pete* Thomas" OR ATA
- Channing OR Robertson
- "Blue Cross" OR "BlueCross" OR "Blue Shield" OR "BlueShield" OR BCBS
- Sandbox
- Qatar
- Guggenheim
- Lakeshore

Nov. 6, 2019

*Confidential*

(5) Communications with Holmes, Balwani, or King regarding BSF's advice to Theranos and Ms. Holmes regarding the media, including but not limited to advice surrounding the publication of critical stories by the Wall Street Journal beginning in 2015;

(6) Communications with Holmes, Balwani, or King reflecting communications between the firm and the media related to Theranos and/or Ms. Holmes

- media OR press OR news OR article OR interview OR speech OR present* OR cover OR story OR stories OR "op-ed" OR opinion OR publish OR publication
- "Wall Street Journal" OR WSJ OR "News Corp" OR "NewsCorp"
- Carreyrou OR Weaver OR Siconolfi OR Baker OR Thompson
- Rago
- WSJDLive OR Krim
- Medscape OR Topol
- Wired OR Roper
- Smithsonian OR Nguyen
- Fortune OR Parloff OR Herper
- Forbes OR Harber
- "USA Today" OR "della Cava"
- "Business Journal" OR Moody
- "Business Times"
- "Business Insider"
- "Clinical Information News" OR Proffitt
- Fox
- NBC
- BBC
- CBS
- CNBC
- ABC
- CNN
- "60 Minutes" OR O'Donnell
- Fareed OR Zakaria
- "New Yorker" OR "NYer" OR Auletta
- Glamour OR Leive
- "Charlie Rose"
- Economist
- "Fast Company"
- Inc.
- Bloomberg
- "Mad Money"
- Vox

Nov. 6, 2019

*Confidential*

- Medium
- Reuters
- "Tech Crunch" OR "TechCrunch"
- "New York Times" OR NYT
- "Washington Post" OR WP
- "Vanity Fair"
- "Time Magazine"
- Shieber
- Clinton
- TedMed
- Commonwealth OR Khan
- "Financial Times"
- "Arizona Republic"
- Defam*
- Threat*
- Sue*
- JC

(7) **Communications with Holmes, Balwani, or King regarding BSF's advice to Theranos and Ms. Holmes on the importance of protecting trade secrets or other intellectual property and methods of doing so.**

- Secret*
- Proprietary
- Prohibit*
- Unauthoriz*
- Forbid*
- Disclos*
- Infring*
- IP OR "Intellectual Property"
- Patent
- Trademark
- Copyright
- Compet*
- NDA OR Non-disclos*
- Modif*
- "Third party"
- Commercial
- Hid*
- Visib*
- Fuisz

Nov. 6, 2019

*Confidential*

- McDermott
- "Becton Dickinson" OR BD
- Bio-Rad OR Biorad
- Quest
- LabCorp OR "Lab Corp"

**(8) Communications with Holmes, Balwani, or King regarding BSF's advice to Theranos and Ms. Holmes relating to the termination of Theranos employees.**

- Tyler OR Shultz OR Schultz OR Argyris OR "Farella Braun" OR @fbm.com OR Havian OR McLamb OR @constantinecannon.com
- Erika OR Cheung OR erika.m.cheung@gmail.com
- Rosendorff OR arosendorff@gmail.com OR Hamilton OR Arendsen OR @arendsenlaw.com OR Rees OR Morgan OR Coyle OR Skye OR Langs OR @coblentzlaw.com
- Young OR Arguedas OR Goldman OR Headley OR @achlaw.com
- Surekha OR Gangakhedkar OR Pipkin OR @mcmanislaw.com
- Raquel OR Rosendin OR Douglass OR @bfdesq.com
- Philippides OR deliasca@gmail.com
- Nishit OR Doshi
- Suraj OR Saksena
- Sheldon OR Quinn OR Emanuel OR @quinnemanuel.com
- Terminat*
- Fire OR Fired OR Firing
- Depart*
- Separat*
- Resign*
- Quit*
- NDA OR Non-disclos*
- Disparag* OR Non-disparag*
- Loyal* OR Disloyal*
- Injuncti*
- TRO OR Restrain*
- PI OR Investigator
- Employ* AND Agree*

11

# Boies Schiller Attachment 3

**Philip Korologos**

| To: | Wade, Lance |
|---|---|
| Cc: | Sean Rodriguez; Mike Brille; Ilana Miller; Saharia, Amy; Looby, Patrick; Richard Weill |
| Subject: | RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.) |
| Attachments: | BSF Statement for Joint Status Report.pdf; BSF Statement for Joint Status Report.docx; CR1800258.1015.pdf; BSF Proposed Search Terms.pdf |

Lance:

Our positions have been clear.  Your asserting that our positions have lacked clarity does not make them so.

As we have repeatedly said, we are willing to search for direct communications as outlined in our November 6 slight adjustments to your first proposal.  You also understand that we are willing to interview our ten custodians to identify whether there might be other documents beyond their email communications that could contain documents reflecting additional communications with third parties (i.e., for the FDA, SEC, DOJ, media, etc., but not including Holmes, Balwani, or King) even though this aspect is not part of what was agreed before the Court.  (Your continued disingenuous description of the October 28 order does not advance your cause.)

And despite your repeated attempts to say we are cutting off discussions, we are not and will not as long as you are willing to engage in reasonable discussions for a solution to the issues between the parties.  Again, your attempts do not advance your cause, but we are always willing to meet and confer further so long as progress is being made toward a process that achieves more of what you seek without being overly burdensome given the additional materials that could be achieves through such a process.

Attached is a statement of BSF's report position (in word and as a pdf) to be included, together with the attached exhibits (Transcript and email exchanges).  We reserve the right to further respond to whatever you put before the Court.  We are also available to discuss issues further at any mutually convenient time.

Phil

**Philip Korologos**
Partner

**BOIES SCHILLER FLEXNER** LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Friday, November 15, 2019 2:39 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

Your lack of clarity makes it difficult to update the Court on status.  Please answer these inquiries:

1.  **Are you willing to search for documents that reflect communications with the relevant parties – not just the communications themselves?**  We are not looking for one or two of these; we are looking for those reflecting all of the communications in the specified categories, as required by the October 28 Order.  If you are willing to search, we can confer more; if you are not willing to search for them, we should go back to the Court now.

2.  **Are you saying with Sections I & II that we have to take or leave your counter proposal?**  If take it or leave it, let's go back to the Court.  If you will confer further, and provide data/information regarding why you have rejected certain of our initial proposals in those sections, we can take time to facilitate that dialogue.

Please clarify.  Your positions on these issues will determine the content of the status report and whether we need to litigate more.  We intend to transmit our filing at 3:30 eastern.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com  | www.wc.com/lwade

**From:** Philip Korologos <Pkorologos@BSFLLP.com>
**Sent:** Friday, November 15, 2019 2:12 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance,

I suggest we not quibble further over who agreed to what at the hearing.  There is a transcript that speaks for itself and we are more than willing to let the judge decide that when and if the time comes.

We already have accepted almost all of your original search proposal (until you tried to change it with the last version you sent around).

What we are not going to is run upwards of 4,000 additional searches (a fact you do not dispute) beyond what we are already doing, and then manually review many tens of thousands more documents, in an attempt to identify whether there are documents "reflecting" communications that might not (but most likely are) already captured in what we have already agreed to do.  No federal criminal rule (or even a civil discovery rule or rule of reason) would compel us to do that.

Under our November 6 counterproposal (which adopted your original proposal almost entirely), we will already have to manually review 70,000 documents – not pages, documents – because even your original proposal was so ridiculously overbroad.  To do what you are now asking for Section I will nearly *double* the number of documents we would need to review—and this does not even include the results of the 4,000 searches in Section III.  For reasons we have already explained (and that should be obvious), this is unreasonable and

impractical. Therefore, we are going to use our November 6 proposal and plow through the documents that process returns as soon as possible to make a production.

With respect to Section III, if we wanted to come back you and tell you how to rewrite this proposal from scratch, we could not because (a) that is not our responsibility (it's yours) and (b) we wouldn't even know where to begin. As I've said before, none of what you propose in Section III begins to do what you said on our last phone call—attempt artfully to identify with searches the narrow set (the "gap" you called it) of documents that might reflect a communication but not be caught up by the searches we have agreed to perform. We are not willing to add many, many haystacks in the hope that we find a needle or two not caught by the substantial searches we have already agreed to, and as we have noted, there are no rules that require us to do so, particularly when you have consistently refused to provide any specificity of what you actually seek.

In sum, if you continue to insist that we must do what you seek with your November 12 proposal, it appears we will have to take this issue to the judge. If, however, you are willing to engage in discussions for a workable and reasonable approach we are always willing to continue to discuss. Your approach thus far, however, appears to be grasping for some hoped for potentially relevant document (among some tens of thousands of non-responsive and irrelevant documents) rather than any specific document or advice on which your client might be able to rely on for her defense. But, if you have specific items you want beyond what we propose, and a reasonable way of getting to those (like the specific time periods or subject matter of communications your client recalls), we are happy to consider such requests.

Finally, because you have refused to provide us with a copy of the joint status report in advance, we are preparing an insert of our position. Please tell us when you plan to file that with the Court so we can get BSF's position to you shortly before that happens. Given that we will not have seen your section prior to filing, we reserve our right to respond.

Best regards,

Phil

**Philip Korologos**
Partner
_____
**BOIES SCHILLER FLEXNER** LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Friday, November 15, 2019 2:05 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

3

We need to file the joint status report.  Please advise of your position re the below or send us your section of the pleading.

Thanks.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Thursday, November 14, 2019 9:54 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

Your emails continuously omit the September agreement Mike Brille and I reached, our pleadings citing to it, our proposed order enacting it, your non-opposition to that proposed order, or the order itself that was issued by the Court. Your selective, artful quotations from the transcript are neither accurate nor controlling, and your continued insistence otherwise is not productive. If you want to maintain that position in effort to avoid production of documents reflecting BSF communications with the identified parties, just take that position clearly now and let's go back to the Court and resolve this. Those documents are needed for our defense. We refuse to accept your efforts to eliminate them altogether; and we will not compromise on that issue.

If you accept that you have to produce that category of documents, but don't like our proposal for how to gather them, propose your own terms that are actually targeted to identify and collect all of the responsive documents. Your efforts to cherry pick and dramatize problems associated with our proposals is also not productive. Nor is it persuasive. We do searches like this every day in our practice, as do you. We don't believe the burdens to do this on ten custodians is nearly as significant as you suggest. But if you actually do the searches (as opposed to hypothesize about them) and present hit reports that demonstrate that we are wrong, we will compromise and narrow based on those reports. These are processes we routinely engage in with litigation adversaries, and there is no reason they can't be employed here. But in the absence of data or clear evidence, the idea that terms like "Elizabeth" or "Carreyrou" or "sec.gov" are off limits as search terms here is not really that persuasive to us.

If you want to resolve this without further litigation, as we do, it will require your firm to accept the documents that it is actually obligated to produce and make specific counter-proposals to our proposals that are reasonably designed to gather the relevant documents — proposals that are informed by actual searching and data work.  If you are willing to commit to that, we will advise the Court that we believe we are on a path to resolving this and will continue to meet and confer. If you are not willing to commit to this, we will advise that we are at an impasse and request a hearing on the first available date. Please advise how you would like to proceed.

—Lance

4

**From:** Philip Korologos <Pkorologos@BSFLLP.com>
**Date:** Thursday, Nov 14, 2019, 6:49 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>, Mike Brille <MBrille@BSFLLP.com>, Ilana Miller
<imiller@BSFLLP.com>, Saharia, Amy <ASaharia@wc.com>, Looby, Patrick <PLooby@wc.com>, Richard Weill
<rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance,

We will continue to confer so long as we see progress, but if you continue to press unreasonable positions we will have no choice to but to let the court decide.

You know our position with respect to the controlling nature of the October 15 in-court stipulation. Ever since, you have unfortunately tried to use this process to change and substantially broaden the scope of what you unquestionably then stipulated to. Notwithstanding that effort, including your effort to now say that documents "reflecting communications" between BSF's ten custodians and specified third parties and Holmes/Balwani/King should be included, we have met and conferred with you about such documents in the hope of avoiding further litigation. If we fail to reach a mutually agreeable resolution, you already understand that we reserve the right to argue to the Court that your requests should be limited to what was stipulated to by both sides on October 15.

With respect to your questions about your November 12 proposal:

As to Section III, you do not seem to appreciate how your own proposed search terms work. You proposed approximately 400 separate terms (*see* bullet points on pages 11-15 of your November 12 proposal) and you have asked us to run all of these terms in combination with 10 other terms (*see* page 11), *i.e.*, 400 x 10 = 4,000 separate search strings. For example, taking just one of your terms ("story"), the 10 search strings based on this term alone would be: Theranos AND story; Elizabeth AND story; Holmes AND story; Sunny AND story; Balwani AND story; Balboa AND story; Normandy AND story; Midway AND story; Galileo AND story; Bruin AND story.

The entire premise of your proposal is problematic, not just "a particular term or terms." First, although you claim that you have included "Theranos-related limiting terms," "Elizabeth" does not only refer to "Elizabeth Holmes"; thus, running the term "Elizabeth" in combination with the hundreds of generic terms on your list (*e.g.*, "complain*"; "subpoena"; "round"; "media"; "opinion," etc.) does nothing to target Theranos-related emails and will instead return a large amount of emails where one of the persons or names mentioned in an email happens to be an Elizabeth. For example, running the search "Elizabeth and complaint" on my current inbox returns hundreds of emails from before I began to work on this subpoena matter and those emails by definition cannot reflect any of the kinds of communications you are seeking. Second, and relatedly, the point of this category of proposed searches is *not* just to find Theranos-related emails. Rather, your search strings are supposed to be aimed at, and thus must be designed to identify, emails that "reflect" *communications* that the ten BSF custodians had with pertinent third parties and Holmes/Balwani/King. For the reasons explained above and in my email of yesterday, despite the expectations we had after our last conversation your search proposal does nothing to attempt focus on documents reflecting such communications, and in fact does precisely the opposite by significantly expanding the number of completely irrelevant documents those terms will hit upon.

As to Section I, we made a few targeted changes to your original proposal that did not substantially alter the terms you had proposed. Your statement that your "current proposal reflects our responsive tweaks based on those edits," is simply not correct. You did not address the particular changes we made. Rather, without explanation, you removed all Theranos-related search terms—terms that we had already agreed to.

You work at a law firm that interacts with clients, other law firms, vendors, the media, regulatory agencies, and so on and so forth, on a daily, if not hourly, basis. We should not have to explain to you that if we collected the emails from ten of your attorneys' email accounts, over an eight-year time period (particularly attorneys who specialize in an SEC or DOJ practice, or who have had matters against Quinn Emanuel), for all emails exchanged with @sec.gov, @usdoj.gov, @quinnemanuel.com – or, for example, @wsj.com and @nytimes.com, the results would be substantial – to put it mildly—and would return emails concerning vast amounts of unrelated and irrelevant clients and issues.

In the end, the Court's clear focus here was on finding relevant communications and our small adjustments to your original proposal does that – reasonably and responsibly. For that reason, there is no justification whatsoever for your belated subsequent demand that we engage in such a broad and virtually limitless search and then be required manually to try to discern whether each email gathered may relate to Theranos, when the entire purpose of search terms (like the ones you originally proposed) is to try to electronically capture responsive documents and exclude irrelevant documents.

We are happy to continue the discussion.

Thanks,

Phil


**Philip Korologos**
Partner
_____

**BOIES SCHILLER FLEXNER** LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com


**From:** Wade, Lance <LWade@wc.com>
**Sent:** Thursday, November 14, 2019 1:45 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

The Court's October 28 Order directed the parties to meet and confer regarding the production of documents. We have made every effort to do so, first by proposing a search protocol on October 18 and by submitting a revised version of that protocol based on your November 6 written edits and concerns you expressed during our meet and confers in subsequent days. At each turn in what should be a cooperative process, you have drawn lines in the sand by presenting to us what you and your firm will or will not do. And, in staking out these maximalist positions, you have not provided any specific information to back up generic claims of burden associated with our proposals. That has put us as the party without access to the documents in a difficult position as we seek to design a search procedure through which we can obtain to the documents to

which we are entitled while causing the minimal possible burden to your firm. Without your cooperation, we are doing so essentially in the dark.

To be clear, we maintain that Ms. Holmes as a former BSF client is entitled to all documents responsive to the subpoena. In the spirit of compromise, we agreed to limit the scope of the firm's production in my September discussions with Mike. That is the compromise memorialized in the Court's Order. While we understand that you disagree about the particulars of that compromise, and we don't doubt the sincerity of any confusion resulting from your having been new to the prior discussions between Mike and me when we first met at the October 15 hearing, the Court's subsequent Order (to which you did not object) is clear. It provides that BSF is to produce, among other things, "documents reflecting communications between" the 10 identified BSF attorneys and certain third parties as well as "notes, memoranda, and documents reflecting" those BSF attorneys' communications with the client on certain topics. *See* Order at 2. Our recent proposal is our effort at designing a search procedure that would capture those documents in addition to direct communications. We don't read your email below as necessarily refusing to produce these documents, but we do find it unfortunate that you seek to cut off further discussions on the best way to go about locating and producing them so abruptly and without detailed justification. We remain willing to continue our discussion and to report to the Court in tomorrow's status report that discussions are ongoing. However, if you are indeed taking the position that you will not produce these documents, then we will have no choice but to return before the Court for a resolution. If you insist on going that route, in light of the approaching deadline for the joint status report, we do not anticipate being able to share our portion in advance of filing. We are happy to compile the parties' respective positions into a joint report and coordinate the sealed filing on behalf of both parties.

On the assumption that you remain willing to continue our discussions, we have a few questions concerning your reaction to our November 12 proposal.

First, as to "Section III," you assert that our proposal includes "about 4,000 separate search strings that would capture tens thousands of emails that either have nothing whatsoever to do with Theranos, or that are not at all targeted to emails 'reflecting communications' with specified parties." We do not understand where the "4,000 separate search strings" figure comes from. Can you explain that claim? And we are surprised to hear that our proposal captured emails unrelated to Theranos as it included Theranos-related limiting terms. Is there a particular term or terms that are proving problematic? If so, we are willing to consider revising those terms. But the "tens of thousands" figure does not provide nearly enough information to respond productively. It is you and your firm who have the visibility into documents and the results of the proposed search, and we hope that you can provide that visibility when we next speak.

Second, as to "Section I," you had proposed some changes to our initial proposal, and this current proposal reflects our responsive tweaks based on those edits. We are surprised to hear that these proposed changes significantly increase your burden, and we welcome an explanation with actual figures in terms of the number of emails. That type of information would go a long way to bridging the gap between parties' proposals on this category.

We look forward to continuing this discussion and are standing by to do so, should you wish to proceed in that manner.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029

lwade@wc.com | www.wc.com/lwade

**From:** Philip Korologos <Pkorologos@BSFLLP.com>
**Sent:** Wednesday, November 13, 2019 6:24 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>;
Saharia, Amy <ASaharia@wc.com>; Looby, Patrick <PLooby@wc.com>; Richard Weill <rweill@BSFLLP.com>
**Subject:** Re: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance:

Based on our last discussion, we expected you to provide us proposed searches of email accounts of the ten BSF custodians that would narrowly target documents that "reflect" communications they had with pertinent third parties and Holmes/Balwani/King. We agreed to consider you proposal even though documents "reflecting communications" are beyond the October 15 in-court stipulation in order to try to avoid further litigation.

The proposal you sent to us yesterday, however, bears essentially no resemblance to what we expected based on our call.

First, your new Section III(B) requires about 4,000 separate search strings that would capture tens of thousands of emails that either have nothing whatsoever to do with Theranos, or that are not at all targeted to emails "reflecting communications" with specified parties. Such an approach is a non-starter. As we said, we are willing to consider a serious effort at a narrow email search protocol for this category of documents. But we will not run thousands of searches across the emails of ten custodians over an eight-year time period that are not targeted to the documents you contend you are entitled to.

We have offered to canvass our ten designated custodians to determine if there were any known, specific communications to relevant third parties that metadata-based email searches would not capture. That offer stands.

Second, separate and apart from the new category of email searches in Section III, your proposal of yesterday substantially altered, without explanation, your original Section I proposal that we had accepted almost entirely as written. Your proposal now goes far beyond searching for direct email communications between our ten designated custodians and specified third-party domain names that also contain Theranos-related language. Now your proposal asks us to gather and review all direct email communications between the ten custodians and these domains (e.g., numerous government agencies, prominent law firms) regardless of whether they relate to Theranos and review the many tens of thousands of emails that would identify to determine manually whether it relates to Theranos.

This exponentially increases our burden, is wholly impractical, and is unreasonable. We will run the searches that you originally proposed, as modified slightly in our November 6 proposal. We do not accept your attempt to rewrite the searches in this category.

Third, contrary to your November 12 "Proposed Search Protocol & Terms," our production is not "under the Court's October 28, 2019 Order and the agreement that the parties reached in September of this year." As the Court said repeatedly, our production is controlled by the stipulation reached in court on October 15, 2019 – nothing else. Tr., Sealed Proceeding (Oct. 15, 2019) at 28:19-21 ("what has been specified in court here is what's being asked for at this stage"); Sealed Minutes (Oct. 15, 2019) (regarding "stipulation set forth in Court"). Our searches will fully implement that stipulation.

Finally, given the joint status update that is due Friday and your representation to the Court that "we'll propose something, and we'll confer obviously with the other parties" (Tr., Sealed Proceeding (Oct. 15, 2019) at 29:25-30:1), please send us your position on the status update so we may provide our position in relation to yours.

Thanks,

Phil

Philip Korologos
Partner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com

**From:** Looby, Patrick <PLooby@wc.com>
**Sent:** Tuesday, November 12, 2019 5:34:47 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>; Wade, Lance <LWade@wc.com>; Ilana Miller <imiller@BSFLLP.com>; Saharia, Amy <ASaharia@wc.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

Please find attached our proposal discussed on this afternoon's call.

Best,

**Patrick Looby**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5150 | (F) 202-434-5029
plooby@wc.com | www.wc.com

**From:** Philip Korologos <Pkorologos@BSFLLP.com>
**Sent:** Monday, November 11, 2019 10:22 PM
**To:** Wade, Lance <LWade@wc.com>; Ilana Miller <imiller@BSFLLP.com>; Looby, Patrick <PLooby@wc.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>
**Subject:** Re: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Looks like 4:30 should work.

Phil

Philip Korologos

Partner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com

---

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Monday, November 11, 2019 9:13:30 PM
**To:** Philip Korologos <Pkorologos@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Looby, Patrick <PLooby@wc.com>;
Saharia, Amy <ASaharia@wc.com>
**Cc:** Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>
**Subject:** RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

I could do 4:30/5:00/5:30.

From: Philip Korologos <Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com>>
Date: Monday, Nov 11, 2019, 9:03 PM
To: Wade, Lance <LWade@wc.com<mailto:LWade@wc.com>>, Ilana Miller
<imiller@BSFLLP.com<mailto:imiller@BSFLLP.com>>, Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com>>, Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com>>
Cc: Sean Rodriguez <srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com>>, Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com>>
Subject: Re: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

I have a 3:00 I cannot move tomorrow. How much later do you need and I'll talk with others? My 3:00 likely
ends about 4:30.

Philip Korologos
Partner
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com
www.bsfllp.com

---

From: Wade, Lance <LWade@wc.com>
Sent: Monday, November 11, 2019 8:34:44 PM
To: Philip Korologos <Pkorologos@BSFLLP.com>; Ilana Miller <imiller@BSFLLP.com>; Looby, Patrick
<PLooby@wc.com>; Saharia, Amy <ASaharia@wc.com>
Cc: Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>

Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

I had the start time for a meeting with the government tomorrow morning pushed back slightly. Would it be possible to push our call a bit later in the afternoon?

Thanks.

--Lance

Lance Wade

Williams & Connolly LLP

725 Twelfth Street, N.W., Washington DC 20005

(P) 202-434-5755 | (F) 202-434-5029

lwade@wc.com<mailto:lwade@wc.com> | www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>

From: Philip Korologos <Pkorologos@BSFLLP.com>
Sent: Thursday, November 7, 2019 4:40 PM
To: Wade, Lance <LWade@wc.com>; Ilana Miller <imiller@BSFLLP.com>; Looby, Patrick <PLooby@wc.com>; Saharia, Amy <ASaharia@wc.com>
Cc: Sean Rodriguez <srodriguez@BSFLLP.com>; Mike Brille <MBrille@BSFLLP.com>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance:

How is 2:00 tomorrow?

Phil

Philip Korologos
Partner

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards

New York, NY 10001

(t) +1 212 446 2390

(m) +1 917 331 8000

pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com>

www.bsfllp.com<https://protect-us.mimecast.com/s/yYdiCgJQp3Iw2NJEf3xB83>

From: Wade, Lance <LWade@wc.com<mailto:LWade@wc.com>>
Sent: Thursday, November 7, 2019 3:30 PM
To: Philip Korologos <Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com>>; Ilana Miller
<imiller@BSFLLP.com<mailto:imiller@BSFLLP.com>>; Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com>>; Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com>>
Cc: Sean Rodriguez <srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com>>; Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com>>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil:

There appears to continue to be some disconnect. When are you available for a call to try to meet and confer?

Thanks.

—Lance

From: Philip Korologos
<Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com%3cmailto:
Pkorologos@BSFLLP.com>>>
Date: Wednesday, Nov 06, 2019, 5:29 PM
To: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com>>>, Ilana
Miller

<imiller@BSFLLP.com<mailto:imiller@BSFLLP.com<mailto:imiller@BSFLLP.com%3cmailto:imiller@BSF
LLP.com>>>, Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>,
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com>>>
Cc: Sean Rodriguez
<srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com%3cmailto:sr
odriguez@BSFLLP.com>>>, Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com%3cmailto:MBrille@
BSFLLP.com>>>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance:

On our call last Thursday (Oct. 31), you suggested that your position on what we agreed to produce was set out
in a September 11 email and that the description there was the operative agreement that was stipulated to before
Judge Cousins on October 15. We have now had a chance to review the September 11 email alongside the
transcript (received yesterday and attached) of what took place before Judge Cousins.

Having reviewed what was actually stipulated to in Court, it is clear that for communications with third parties,
the only contemplated searches were for direct communications, i.e., emails sent to or received from BSF's ten
custodians and specified third parties (for reasons including (1) to allow for electronic determinations that the
documents actually had gone to the third parties, and (2) to avoid the asserted privilege concerns); and for BSF-
Theranos communications, emails that were to or from BSF's ten custodians and Holmes/Balwani/King.

Indeed, the October 15 transcript makes clear that, "what has been specified in court here is what's being asked
for at this stage", Tr., Sealed Proceeding (Oct. 15, 2019) at 28:19-21, and that what your team sought was
"communications between Boies Schiller and certain third parties," id. at 14:15-16. That limitation is also
expressly reflected in the court's minutes of October 15, 2019: "For 10 identified custodians, communications
with third parties." Indeed, we made it very clear that we were referring to "documents" that were to or "from
the FDA or the SEC or DOJ" – that is, documents that could be "searched with metadata to indicate that the
documents actually have gone to third parties." Id. at 20:9-13. Again, notes and memoranda are not to or from
the FDA or the SEC or DOJ, have not "actually … gone to third parties," and cannot be "searched with
metadata." Only emails with specified domain names in the "To," "From," "Cc," or "Bcc" address fields can be
so searched. Further, your team conceded that the communications sought were "not subject to any privilege
concern", id. at 14:16-17, which is a statement that can only apply to documents that constitute the
communications themselves; it is not something you can assert categorically when internal notes and
memoranda are involved.

As to communications between the ten custodians and Ms. Holmes, Mr. Balwani, or Ms. King, your team also
represented our agreement to the Court: "The second category is emails those same 10 custodians and three
Theranos employees, Ms. Holmes, Mr. Balwani, and Heather King, who is their general counsel." Id. at 15.
This description did not include anything other than the communications themselves—not any notes,
memoranda or other documents concerning such communications. The court's minutes are consistent in this
respect as well ("emails in specified categories"). Our goal was to narrow the documents caught by a search to
those documents that are actually somehow responsive. Were notes, memoranda, and other documents included,
the burden grows exponentially in terms of the number of documents that need to be reviewed. It is for that
reason that we agreed only to the actual communications, and your team and I then addressed that we would
seek to narrow the scope further through a meet and confer process. Id.

In the attached document, we set forth our modification of your proposal for searches of emails to be performed

with respect to each category. As noted in this document, we come to what I believe is substantial agreement on the scope of the emails we will search for. We believe that this approach (a) is entirely consistent with the stipulation reached before Judge Cousins and (b) should more than satisfy your and your client's desires to access this type of information (subject of course to the Assignee's privilege issues and the Court's 502(d) non-waiver order).

Thanks,

Phil


Philip Korologos
Partner


BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(t) +1 212 446 2390
(m) +1 917 331 8000
pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfllp.com>>
www.bsfllp.com<https://protect-us.mimecast.com/s/tpTlCjROY3FGqA0oU1getl><http://www.bsfllp.com/<https://protect-us.mimecast.com/s/yYdiCgJQp3Iw2NJEf3xB83>>


From: Wade, Lance <LWade@wc.com<mailto:LWade@wc.com>>
Sent: Thursday, October 31, 2019 10:11 AM
To: Ilana Miller <imiller@BSFLLP.com<mailto:imiller@BSFLLP.com>>; Philip Korologos
<Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com>>; Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com>>; Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com>>
Cc: Sean Rodriguez <srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com>>; Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com>>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Sure.

Lance Wade
Williams & Connolly LLP
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com<mailto:lwade@wc.com<mailto:lwade@wc.com%3cmailto:lwade@wc.com>> |
www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-us.mimecast.com/s/5tMwC2k18OSZY9z4s1IhSt<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>>

From: Ilana Miller
<imiller@bsfllp.com<mailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com>>

>
Sent: Thursday, October 31, 2019 9:22 AM
To: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com>>>; Philip
Korologos
<pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorolog
os@bsfllp.com>>>; Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>;
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com>>>
Cc: Sean Rodriguez
<srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com%3cmailto:srodriguez
@bsfllp.com>>>; Mike Brille
<mbrille@bsfllp.com<mailto:mbrille@bsfllp.com<mailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com>
>>
Subject: Re: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)


Lance, how about today at 2pm (ET)?


From: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com>>>
Sent: Wednesday, October 30, 2019 10:27:12 PM
To: Ilana Miller; Philip Korologos; Looby, Patrick; Saharia, Amy
Cc: Sean Rodriguez; Mike Brille
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Not what we agreed to. Not acceptable. What time for the call?

—Lance



From: Ilana Miller
<imiller@bsfllp.com<mailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com<m
ailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfll
p.com>>>>
Date: Wednesday, Oct 30, 2019, 8:46 PM
To: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com<mailto:LW
ade@wc.com%3cmailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com>>>>,
Philip Korologos
<pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorolog
os@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfl
lp.com%3cmailto:pkorologos@bsfllp.com>>>>, Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com<mailto:P
Looby@wc.com%3cmailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>>,
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com<ma

ilto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com>>>>
Cc: Sean Rodriguez
<srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com%3cmailto:srodriguez
@bsfllp.com<mailto:srodriguez@bsfllp.com%3cmailto:srodriguez@bsfllp.com%3cmailto:srodriguez@bsfllp.c
om%3cmailto:srodriguez@bsfllp.com>>>>, Mike Brille <mbrille@bsfllp.com<mailto:mbrille@bsfllp.com<
<mbrille@bsfllp.com<mailto:mbrille@bsfllp.com<mailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com<
mailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com%3cmailto:mbrille@
bsfllp.com>>>>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Lance,

We have run test searches on your proposed search terms in accordance with the understanding reached on
October 15 (as set forth in Phil's email below). To maintain consistency with this understanding, we can agree
as follows:


1. Communications with Holmes, Balwani, or King (while GC of Theranos): As the searches you propose are
limited to "Communications between 10 identified BSF attorneys/personnel and Holmes, Balwani, or King," we
can accept your proposed search terms. Without this limitation, your search terms would be unquestionably
unacceptable. We will not collect and review every document in the custody of each of the 10 BSF custodians
over a five and one-half year period, regardless of recipient, that contains the word "complaint," or "inspect," or
"subpoena," or "testimony," or "sue," etc.


1. Communications with third parties:

* With the understanding that the domain names you list as search terms will be searched in email address fields
(i.e., "To," "From," "Cc," or "Bcc"), we can accept your proposed search criteria for (a) and (b).
* Once again, with the understanding that the domain names you list as search terms for (d) will be searched in
email address fields, we can accept these proposed search criteria as well. However, your search terms
"Carreyrou OR Parloff OR Auletta" are not domain names. Accordingly, we will replace these three terms with
known email addresses associated with these individuals. Auletta's email address is already one of your search
terms
("rigatonika@gmail.com<mailto:rigatonika@gmail.com><mailto:rigatonika@gmail.com%3cmailto:rigatonika
@gmail.com%3e>"). For Carreyrou we will run: "John.Carreyrou@dowjones.com OR
john.carreyrou@wsj.com<mailto:John.Carreyrou@dowjones.com%20OR%20john.carreyrou@wsj.com><mailt
o:John.Carreyrou@dowjones.com%20OR%20john.carreyrou@wsj.com%3cmailto:John.Carreyrou@dowjones.
com%20OR%20john.carreyrou@wsj.com%3e>". For Parloff we will run: "roger_parloff@fortune.com OR
rparloff@gmail.com<mailto:roger_parloff@fortune.com%20OR%20rparloff@gmail.com><mailto:roger_parlof
f@fortune.com%20OR%20rparloff@gmail.com%3cmailto:roger_parloff@fortune.com%20OR%20rparloff@g
mail.com%3e>".
* We can accept the email domains proposed for (c) to be searched in email address fields. Otherwise, we
cannot agree to the search terms for this category of communications. The search strings as written are very
broad and are hitting on tens of thousands of documents that are not responsive and/or that are entirely unrelated
to this matter. We ask that you revise these searches in order to identify direct communications between the 10
custodians and former/departing Theranos employees or persons acting on their behalves.

To be clear, based on the understanding reached on October 15, we will only be collecting and searching direct
email communications (consistent with the search protocol described above). These were the only searches

contemplated on October 15. The search criteria discussed with the Court are incompatible with searching "notes, other electronic files, and hard-copy documents, etc."

We are available to have a call, if necessary, to resolve any remaining differences of views.

Regards,
Ilana


From: Wade, Lance [mailto:LWade@wc.com]
Sent: Tuesday, October 29, 2019 10:34 PM
To: Philip Korologos; Ilana Miller; Looby, Patrick; Saharia, Amy
Cc: Sean Rodriguez; Mike Brille
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)

Phil,

I am not sure I understand what you are driving at below, but in the interest of reaching clarity, why don't we have a call tomorrow to discuss. If there is some disagreement that requires us to go back to the Court, I would rather do that sooner than later. Please advise of your availability.

Thanks.

--Lance

Lance Wade
Williams & Connolly LLP
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com<mailto:lwade@wc.com<mailto:lwade@wc.com%3cmailto:lwade@wc.com<mailto:lwade@w c.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com>>> | http://www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>><http://www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>>>

From: Philip Korologos
<Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com%3cmailto: Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com%3cmailto:Pkorologos@BSFLLP.com%3cmailt o:Pkorologos@BSFLLP.com%3cmailto:Pkorologos@BSFLLP.com>>>>
Sent: Tuesday, October 29, 2019 10:01 PM
To: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com<mailto:LW ade@wc.com%3cmailto:LWade@wc.com%3cmailto:LWade@wc.com%3cmailto:LWade@wc.com>>>>; Ilana Miller
<imiller@BSFLLP.com<mailto:imiller@BSFLLP.com<mailto:imiller@BSFLLP.com%3cmailto:imiller@BSF LLP.com<mailto:imiller@BSFLLP.com%3cmailto:imiller@BSFLLP.com%3cmailto:imiller@BSFLLP.com% 3cmailto:imiller@BSFLLP.com>>>>; Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com<mailto:P

Looby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>>;
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com<ma
ilto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.
com>>>>
Cc: Sean Rodriguez
<srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com%3cmailto:sr
odriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com%3cmailto:srodriguez@BSFLLP.com%3cmailto:sr
odriguez@BSFLLP.com%3cmailto:srodriguez@BSFLLP.com>>>>; Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com%3cmailto:MBrille@
BSFLLP.com<mailto:MBrille@BSFLLP.com%3cmailto:MBrille@BSFLLP.com%3cmailto:MBrille@BSFLL
P.com%3cmailto:MBrille@BSFLLP.com>>>>
Subject: Re: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)


Lance,


Thank you for your response. As to the date ranges, we can agree to the dates you propose below for points 1
and 2. As to the remaining points in your email, we write to clarify a few issues.


First, at the October 15 hearing, it was understood by all parties and Magistrate Judge Cousins that (a) BSF
need only collect documents in the email accounts of the ten (10) previously agreed BSF custodians; and (b) the
search terms to be applied to these collected documents (to find responsive communications to third parties)
must include domain limiters (e.g., @fda.gov, @doj.gov), so that only direct communications between BSF and
a responsive recipient would be flagged. In other words, a term like
"@fda.gov<mailto:%E2%80%9C@fda.gov>" was not a general search term (producing non-responsive contact
lists, address books, Internet search results, etc.), but a term that must appear in the "To," "From," "Cc," or
"Bcc" section of the communication itself. In this fashion, the scope of documents to be reviewed would be
narrowed, and the burden placed upon BSF might be reduced to a manageable level. With respect to
communications between the ten BSF custodians and Ms. Holmes, Mr. Balwani, and Ms. King (while GC of
Theranos), only such direct communications need be searched (as the search term list you supplied on October
18 specifies ("Communications between 10 identified BSF attorneys/personnel and Holmes, Balwani, or
King")). It was also understood that, if the search criteria failed to achieve the objective of limiting BSF's
search to email communications between the 10 custodians and either specified third parties or
Holmes/Balwani/King, the court would revisit all of our initial grounds to quash your subpoena.


Accordingly, BSF is collecting emails from the 10 custodians and applying your proposed search terms (to test
their efficiency) consistent with this October 15 understanding. BSF will not collect and search documents that
do not fall within the search parameters agreed at the October 15 hearing.


Second, with respect to personal email accounts that were used for work, we agreed to include non-BSF domain
email addresses only if those email addresses "are known to be used regularly in BSF work by any of the
custodians who are current employees."

Best regards,

Phil

Philip Korologos, Esq.
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
+1-212-446-2390 (direct)
+1-917-331-8000 (mobile)
pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorologos
@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfllp
.com%3cmailto:pkorologos@bsfllp.com>>>

From: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com<mailto:LW
ade@wc.com%3cmailto:LWade@wc.com%3cmailto:LWade@wc.com>>>>
Sent: Monday, October 28, 2019 10:15 AM
To: Ilana Miller
<imiller@BSFLLP.com<mailto:imiller@BSFLLP.com<mailto:imiller@BSFLLP.com%3cmailto:imiller@BSF
LLP.com<mailto:imiller@BSFLLP.com%3cmailto:imiller@BSFLLP.com%3cmailto:imiller@BSFLLP.com%
3cmailto:imiller@BSFLLP.com>>>>; Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com<mailto:P
Looby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>>;
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com<ma
ilto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.
com>>>>
Cc: Philip Korologos
<Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com%3cmailto:
Pkorologos@BSFLLP.com<mailto:Pkorologos@BSFLLP.com%3cmailto:Pkorologos@BSFLLP.com%3cmailt
o:Pkorologos@BSFLLP.com%3cmailto:Pkorologos@BSFLLP.com>>>>; Sean Rodriguez
<srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com%3cmailto:sr
odriguez@BSFLLP.com<mailto:srodriguez@BSFLLP.com%3cmailto:srodriguez@BSFLLP.com%3cmailto:sr
odriguez@BSFLLP.com%3cmailto:srodriguez@BSFLLP.com>>>>; Mike Brille
<MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com<mailto:MBrille@BSFLLP.com%3cmailto:MBrille@
BSFLLP.com<mailto:MBrille@BSFLLP.com%3cmailto:MBrille@BSFLLP.com%3cmailto:MBrille@BSFLL
P.com%3cmailto:MBrille@BSFLLP.com>>>>
Subject: RE: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)


Ilana,


Thank you for your email and proposal. We can agree to the following with respect to date ranges:

19

1. David Boies: July 1, 2011 through July 18, 2019 (communications with third parties) and July 1, 2011 through Dec. 2, 2016 (communications with Holmes/Balwani/King (while GC of Theranos))

· We agree to the end dates that you have proposed.

· With respect to the start dates, please explain how you have determined that BSF began representing Theranos and Ms. Holmes in October 2011. The first communications between Ms. Holmes and BSF are in July 2011. As you are aware, a person becomes a prospective client by consulting with a lawyer about the possibility of forming a lawyer-client relationship.

2. Remaining 9 Custodians: First billing date applicable to each custodian through July 18, 2019 (communications with third parties) and first billing date applicable to each custodian through last billing date applicable to each custodian (communications with Holmes/Balwani/King (while GC of Theranos))

· For both categories, we agree to a start date of the first billing date applicable to each custodian.

· For the end dates, you agreed to search 10 custodians for their communications with third parties through the date of the subpoena. We believe that applying the proposed search terms should eliminate any burden concerns. For communications with Holmes/Balwani/King, we agree to an end date of the last billing date applicable to each custodian.

We will also agree to these date ranges for all other responsive documents (notes, other electronic files, and hard-copy documents, etc) as well. And, as previously discussed and agreed, for Boies and the remaining 9 custodians, personal email accounts that were used for work also need to be searched.

Please let us know if you agree to these date ranges and our proposed search terms as soon as possible.

Many thanks.

--Lance

Lance Wade

Williams & Connolly LLP

725 Twelfth Street, N.W., Washington DC 20005

(P) 202-434-5755 | (F) 202-434-5029

lwade@wc.com<mailto:lwade@wc.com<mailto:lwade@wc.com%3cmailto:lwade@wc.com<mailto:lwade@w
c.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com>>> |
www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-
us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>><http://www.wc.com/lwade<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-
us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>>>

Lance Wade

Williams & Connolly LLP

725 Twelfth Street, N.W., Washington DC 20005

(P) 202-434-5755 | (F) 202-434-5029

lwade@wc.com<mailto:lwade@wc.com<mailto:lwade@wc.com%3cmailto:lwade@wc.com<mailto:lwade@w
c.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com%3cmailto:lwade@wc.com>>> |
www.wc.com/lwade<https://protect-us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-
us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>><http://www.wc.com/lwade<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh><https://protect-
us.mimecast.com/s/5tMwC2k180SZY9z4s1lhSt<https://protect-
us.mimecast.com/s/M8QdC9rL9KcNBxj4UE9sJh>>>

From: Ilana Miller
<imiller@bsfllp.com<mailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com<m
ailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com%3cmailto:imiller@bsfll
p.com>>>>
Sent: Tuesday, October 22, 2019 2:13 PM
To: Wade, Lance
<LWade@wc.com<mailto:LWade@wc.com<mailto:LWade@wc.com%3cmailto:LWade@wc.com<mailto:LW
ade@wc.com%3cmailto:LWade@wc.com%3cmailto:LWade@wc.com%3cmailto:LWade@wc.com>>>>;
Looby, Patrick
<PLooby@wc.com<mailto:PLooby@wc.com<mailto:PLooby@wc.com%3cmailto:PLooby@wc.com<mailto:P
Looby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com%3cmailto:PLooby@wc.com>>>>;
Saharia, Amy
<ASaharia@wc.com<mailto:ASaharia@wc.com<mailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com<ma
ilto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.com%3cmailto:ASaharia@wc.
com>>>>
Cc: Philip Korologos

<pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorolog
os@bsfllp.com<mailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfllp.com%3cmailto:pkorologos@bsfl
lp.com%3cmailto:pkorologos@bsfllp.com>>>>; Sean Rodriguez
<srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com<mailto:srodriguez@bsfllp.com%3cmailto:srodriguez
@bsfllp.com<mailto:srodriguez@bsfllp.com%3cmailto:srodriguez@bsfllp.com%3cmailto:srodriguez@bsfllp.c
om%3cmailto:srodriguez@bsfllp.com>>>; Mike Brille
<mbrille@bsfllp.com<mailto:mbrille@bsfllp.com<mailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com<
mailto:mbrille@bsfllp.com<mailto:mbrille@bsfllp.com%3cmailto:mbrille@bsfllp.com%3cmailto:mbrille@
bsfllp.com>>>>
Subject: United States v. Holmes et al., 18-cr-00258-EJD-SVK (N.D. Cal.)


Counsel:


Thank you for sending the proposed search terms. We are reviewing/analyzing them and will revert to you on
them as soon as possible.


In the meantime, we wanted to raise the issue of date ranges. You have proposed July 1, 2011 to Sept. 16, 2019
("Communications with third parties") and July 1, 2011 to Dec. 2, 2016 ("Communications with
Holmes/Balwani or King (while GC of Theranos)"). When we spoke about this in July, however, we discussed
the fact that different BSF custodians worked on Theranos matters during different time periods. (For example,
several of the 10 custodians did not start working on Theranos matters until 2015—four years after the proposed
start date for the review.) You will recall that we proposed collecting documents associated with each
custodian's billings records in order to efficiently isolate responsive documents while also minimizing the
collection and review burden on BSF. At the time, I believe you agreed that this proposal was reasonable.


Your current proposal applied to all email, without regard to billing dates, is likely to lengthen the production
schedule, as it will require us to process several years of email for time periods that these custodians did not
work on Theranos matters. Accordingly, and for additional reasons noted below, we propose applying the
following date ranges:


1. David Boies: October 1, 2011 through July 18, 2019 ("Communications with third parties") and October 1,
2011 through Dec. 2, 2016 ("Communications with Holmes/Balwani/King (while GC of Theranos)").

· With respect to the start date, BSF began representing Theranos in October 2011; we therefore do not believe
it is necessary to search for responsive documents prior to that date.

· With respect to the end date for "Communications with third parties," the parties agreed to search for
documents through the date of the subpoena. The subpoena is dated July 18, 2019.

1. Remaining 9 Custodians: For all other custodians, BSF will collect emails according to their billing dates.

· For the time period after each custodian stopped billing to Theranos, BSF will conduct a reasonable good faith investigation regarding whether each custodian had any communications about Theranos and/or Ms. Holmes with any (i) state or federal regulatory agency; (ii) investor or potential investor or persons acting on their behalves; (iii) former/departing employee of Theranos or persons acting on their behalves; and (iv) member of the media. If there were no such communications, BSF will not collect emails for those custodians after their ending billing date. If there were such communications, BSF will collect those emails for review.

Please let us know your response to the above proposal as soon as possible.

Regards,

Ilana

Ilana Miller
Partner

BOIES SCHILLER FLEXNER LLP

55 Hudson Yards

New York, NY 10001

(t) +1 (212) 446-2367

(m) +1 (917) 912-3251

imiller@bsfllp.com<mailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com<mailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com%3cmailto:imiller@bsfllp.com>>>

www.bsfllp.com<https://protect-us.mimecast.com/s/tpTICjROY3FGqA0oU1getl><https://protect-us.mimecast.com/s/UD94C4xY6BI9VvKnhWW48T<https://protect-us.mimecast.com/s/tpTICjROY3FGqA0oU1getl>><http://www.bsfllp.com/<https://protect-us.mimecast.com/s/yYdiCgJQp3Iw2NJEf3xB83><https://protect-us.mimecast.com/s/6_a7C5y17DIpJDLzcxyQkb<https://protect-us.mimecast.com/s/yYdiCgJQp3Iw2NJEf3xB83>>>

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.