1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                          UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                               SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,            )   Case No. CR-18-00258-EJD-SVK
                                         )
16         Plaintiff,                    )   **MOTION TO DISMISS SUPERSEDING**
                                         )   **INDICTMENT FOR LACK OF NOTICE AND,**
                                         )   **IN THE ALTERNATIVE, FOR A BILL OF**
16     v.                                )   **PARTICULARS**
                                         )
17  ELIZABETH HOLMES and                 )
    RAMESH "SUNNY" BALWANI,              )   Date:     February 10, 2020
18                                       )   Time:     10:00 AM
19         Defendants.                   )   CTRM:  4, 5th Floor
                                         )
20                                       )   Hon. Edward J. Davila
                                         )
21  _____

22

23

24

25

26

27

28

**MOTION TO DISMISS**

PLEASE TAKE NOTICE that on February 10, 2010, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure to dismiss the Superseding Indictment for failure to provide fair notice of the charges against her.  In the alternative, Ms. Holmes moves for an order instructing the government to provide a bill of particulars. The Motion is based on the below Memorandum of Points and Authorities and Exhibits, the Declaration of Amy Mason Saharia, the record in this case, and any other matters that the Court deems appropriate.

DATED: December 16, 2019

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

ARGUMENT ..............................................................................................................................1

    I.     The Indictment Is Unconstitutionally Vague. .......................................................2

          A.     The Allegedly Fraudulent Representations Are Essential Facts that the Indictment Must Identify. .......................................................................2

          B.     The Indictment's Failure To Identify the Alleged Fraudulent Representations Renders It Unconstitutionally Vague. ...........................4

    II.    At a Minimum, the Court Should Order a Bill of Particulars. .............................8

          A.     Details Concerning the Alleged False or Fraudulent Representations .................10

          B.     Names of Investors, Doctors, or Patients Who May Testify To Having Been Deceived by Any Alleged False or Fraudulent Representation or Pretense ....................................................................................................11

          C.     Names of All Known Coconspirators .....................................................12

          D.     Facts Giving Rise to an Alleged Duty To Disclose and Any Material Omissions that Are Alleged To Have Violated that Duty ...................12

CONCLUSION...........................................................................................................................13

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

*Cleveland v. United States*, 531 U.S. 12 (2000) ...................................................................3

4

*McNally v. United States*, 483 U.S. 350 (1987) ...................................................................3

5

*Neder v. United States*, 527 U.S. 1 (1999) ...........................................................................2

6

*Russell v. United States*, 369 U.S. 749 (1962) ..............................................................1, 3, 5

7

*United States v. Barrett*, 153 F. Supp. 3d 552 (E.D.N.Y. 2015)........................................12

8

*United States v. Bazezew*, 783 F. Supp. 2d 160 (D.D.C. 2011) ......................................9, 12

9

*United States v. Bortonovsky*, 820 F.2d 572 (2nd Cir. 1987) (per curiam) ........................9

10

*United States v. Buckley*, 689 F.3d 893 (9th Cir. 1982)......................................................4

11

*United States v. Caine*, 270 F. Supp. 801 (S.D.N.Y. 1967).............................................11

12

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (per curiam).........................*passim*

13

*United States v. Cuevas*, 285 F. App'x 469 (9th Cir. 2008) ..............................................4

14

*United States v. Curtis*, 506 F.2d 985 (10th Cir. 1974) ...................................................3, 4

15

*United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985)...................................................12

16

*United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999)......................................................3

17

*United States v. Feil*, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) ..............................9, 12

18

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979) ......................................................9

19

*United States v. Hussain*, 2017 WL 4865562 (N.D. Cal. Oct. 27, 2017) .........................2

20

*United States v. Keuylian*, 23 F. Supp. 3d 1126 (C.D. Cal. 2014)......................................4

21

*United States v. King*, 587 F.2d 956 (9th Cir. 1978) .........................................................3

22

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017)....................................................2

23

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) .......................................................8

24

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ...............................9, 10, 12

25

*United States v. Nance*, 533 F.2d 699 (D.C. Cir. 1976) (per curiam)................................4

26

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)........................................................1, 2

27

28

*United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014) ...................................................................3

*United States v. Sampson*, 448 F. Supp. 2d 692 (E.D. Va. 2006) ..............................................10

*United States v. Slawick*, 548 F.2d 75 (3d Cir. 1977) ...................................................................4

*United States v. Steffen*, 687 F.3d 1104 (8th Cir. 2012) ...............................................................3

*United States v. Tam*, 2017 WL 3782752 (N.D. Cal. Aug. 31, 2017) .......................................13

*United States v. Trie*, 21 F.Supp.2d 7 (D.D.C. 1998) .................................................................11

*United States v. Trumpower*, 546 F.Supp.2d 849 (E.D. Cal. 2008).........................................10

*United States v. Whiteside*, 285 F.3d 1345 (11th Cir. 2002) .......................................................7

*United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993) ..................................................................2

*Will v. United States*, 389 U.S. 90 (1967) ...............................................................................9, 11

## STATUTE AND RULE

21 U.S.C. § 321(h) .........................................................................................................................7

Fed. R. Crim. P. 7 ..................................................................................................................... *passim*

## OTHER AUTHORITIES

FDA, *Discussion Paper on Laboratory Developed Tests (LDTs)* (Jan. 13, 2017) .....................7

Framework for Regulatory Oversight of Laboratory Developed Tests; Draft Guidance for
    Industry, Food and Drug Administration Staff, and Clinical Laboratories;
    Availability, 79 Fed. Reg. 59,776 (Oct. 3, 2014).................................................................7

Vincent Marks, *False-positive immunoassay results: a multicenter survey of erroneous
    immunoassay results from assays of 74 analytes in 10 donors from 66 laboratories in
    seven countries*, 48 Clinical Chemistry 2008-16 (2002) ....................................................8

Mario Plebani, *Diagnostic Errors and Laboratory Med.*, 26 J. Int'l Federation of Clinical
    Chemistry & Laboratory Medicine (2015) ..........................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Superseding Indictment ("Indictment") is ambitious in scope but short on details.  The Indictment charges Ms. Holmes with two conspiracies to commit wire fraud and nine counts of wire fraud, spanning at least three years and covering many aspects of Theranos' business.  The government has represented that it will take three months to try this case based on those charges.  Incredibly, however, the Indictment presents those charges in eleven pages, including a long recitation of statutory language.  Although the Indictment vaguely alleges that Ms. Holmes, Mr. Balwani, and unidentified co-conspirators deceived scores of unidentified investors, doctors, and patients, it does not identify the actual content, date, or speaker of even one misrepresentation.  It instead paraphrases categories of representations at a high level, using phrases of the government's own creation that lack any established meaning.  Ms. Holmes does not know what she is defending against.  The defense cannot reasonably prepare to defend a case with this massive a scope based on nothing more than an eleven-page, bare-bones Indictment.  The government's skimpy Indictment flunks the Constitution's requirement that a defendant receive fair notice of the charges against her.  The Indictment must be dismissed; at a minimum, the government should be required to provide a bill of particulars.

**ARGUMENT**

Rule 7 mandates that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  That requirement codifies and enforces "basic principles of fundamental fairness" inherent in the Sixth and Fifth Amendments. *Russell v. United States*, 369 U.S. 749, 763-66 (1962).  To pass constitutional muster, an indictment must include a "description of the charges" sufficiently detailed to (1) "enable [the defendant] to prepare his defense," (2) "ensure that the defendant is prosecuted on the basis of facts presented to the grand jury," (3) "enable him to plead jeopardy against a later prosecution," and (4) "inform the court of the facts alleged so that it can determine the sufficiency of the charge."  *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam); *see also Russell*, 369 U.S. at 764 (indictment must "sufficiently apprise the defendant of what he must be prepared to meet" (internal quotation marks omitted)).  "Because the requirement of a sufficient indictment serves these important purposes, the indictment must be considered as it was actually drawn, not as it might have been drawn."  *United States v. Pirro*,

1    212 F.3d 86, 92 (2d Cir. 2000).  The Indictment comes nowhere close to providing Ms. Holmes with the

2    fair notice required by the Constitution.

3    **I.     The Indictment Is Unconstitutionally Vague.**

4              Theranos was a health care technology company that operated for over a decade, achieved

5    cutting-edge advancements in science and engineering, held over 360 issued patents worldwide, and

6    employed hundreds of people.  The government now alleges that many, if not all, aspects of that

7    complex enterprise were fraudulent.  In laying out such an expansive theory of criminality, the

8    government bears the onus to delineate the contours of the alleged fraud.  Yet the factual allegations

9    here are paltry.  The Indictment neglects to identify a single allegedly fraudulent statement or

10   representation.  In omitting this and other critical information, the Indictment falls well short of the

11   standards set by the Constitution and the Federal Rules.  *See* Fed. R. Crim. P. 7(c)(1).  It is utterly

12   unclear how the parties and the Court will try this case based on the Indictment.  The Indictment must be

13   dismissed.

14             **A.     The Allegedly Fraudulent Representations Are Essential Facts that the Indictment**
                        **Must Identify.**

15             To prevail on a charge of wire fraud, the government must prove:  "(1) the existence of a scheme

16   to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to

17   defraud."  *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (internal quotation marks

18   omitted).[1]  By using the common-law term "defraud," the statute implicitly requires "misrepresentation

19   or concealment of a *material* fact."  *Neder v. United States*, 527 U.S. 1, 21-25 (1999); *accord* 9th Cir.

20   Model Crim. Jury Instr. 8.124.  Under *Neder*, material falsehoods (or omissions) are part of the crime's

21   definition.  *See Lindsey*, 850 F.3d at 1013 ("In order to 'prove a scheme to defraud,' the jury must find

22   that the defendant employed '*material* falsehoods.'" (quoting *Neder*, 537 U.S. at 20)); *accord* 9th Cir.

23   Model Crim. Jury Instr. 8.124 (listing as first element that defendant knowingly participated in "a

24

25             [1] A conspiracy under section 1349 "requires an agreement among two or more persons that
26   would satisfy the elements of the substantive offense" of wire fraud.  *United States v. Hussain*, 2017 WL
     4865562, at *5 (N.D. Cal. Oct. 27, 2017).  Accordingly, an indictment charging conspiracy to commit
27   wire fraud must specify the underlying fraud.  *See United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir.
     1993) ("We think a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud
28   also must be specified in the applicable count.").

1  scheme or plan to defraud, or a scheme or plan for obtaining money or property *by means of false or*

2  *fraudulent pretenses, representations, or promises*" (emphasis added)).[2]

3      An indictment must adequately allege each element of the offense.  *See United States v. Du Bo*,

4  186 F.3d 1177, 1179 (9th Cir. 1999); *see also United States v. King*, 587 F.2d 956, 963 (9th Cir. 1978)

5  ("It is of paramount importance to the rights of the accused that the indictment contain an adequate

6  recitation of each component of the crime that the [g]overnment must establish.").  Although statutory

7  language setting forth the elements "may be used in the general description of the offense," that

8  description "must be accompanied with such a statement of the facts and circumstances as will inform

9  the accused of the specific offense, coming under the general description, with which he is charged."

10  *Russell*, 369 U.S. at 765; *see also King*, 587 F.2d at 963 (indictment must contain "the elements of the

11  offense . . . *and* sufficiently apprise[] the defendant of what he must be prepared to meet" (emphasis

12  added) (internal quotation marks omitted)).  In other words, the indictment must set forth "the minimum

13  facts required to fulfill the purposes of indictments."  *Cecil*, 608 F.2d at 1297; *see also* p. 1, *supra*

14  (discussing those purposes).

15      The level of particularity required to fulfill the purposes of indictments varies depending on the

16  statutory text and the nature of the alleged crime.  An indictment must provide greater particularity

17  where the statue defines elements of the offense in "generic terms."  *Russell*, 369 U.S. at 765.  Courts

18  have recognized the need to include factual particularity above and beyond the generic statutory

19  language in indictments charging wire fraud because of the generic nature of the term "scheme to

20  defraud."  "[A]n indictment [that] alleges a scheme to defraud under the . . . wire fraud statute[] . . . must

21  specify facts not merely in the general words of the statute, but with such reasonable particularity as will

22  apprise the defendant, with reasonable certainty, of the nature of the accusation."  *United States v.*

23  *Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) (alterations and internal quotation marks omitted) (noting

24  that the definition of fraud is "not capable of precise definition"); *see United States v. Curtis*, 506 F.2d

25

26      [2] Although the statute identifies two "schemes" separated by the word "or," the Supreme Court

27  has held that the second phrase "a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" "simply modifies the first" and does not set out a distinct type of scheme to defraud.  *See Cleveland v. United States*, 531 U.S. 12, 26 (2000); *McNally v.*

28  *United States*, 483 U.S. 350, 357-59 (1987); *see also United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014).

985, 992 (10th Cir. 1974) (citing *Russell* in holding that wire fraud indictment needs to provide a "fair indication of the nature and character of the scheme or artifice relied upon, or the false pretense, misrepresentations, or promises forming a part of it"); *accord United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982) ("Indictments alleging a scheme to defraud must provide sufficient facts to fulfill the purposes of the indictment.").

Because materially false or fraudulent representations are part and parcel of wire fraud—and mark the line between criminality and innocent speech—an indictment must specify in detail the particular fraudulent representations and pretenses that make up an alleged scheme to defraud. *See Curtis*, 506 F.2d at 990 (indictment must identify "the *particular* pretenses, representations or promises claimed to have been false" (emphasis added)); *United States v. Keuylian*, 23 F. Supp. 3d 1126, 1129 (C.D. Cal. 2014) (dismissing wire fraud indictment that failed to identify "the false pretenses, misrepresentations, or promises forming a part of" the scheme to defraud); *see also Cecil*, 608 F.2d at 1297 (citing with approval *Curtis*). The Ninth Circuit and other courts have recognized this principle in analogous contexts where the falsity of a statement determines guilt or innocence. *See United States v. Cuevas*, 285 F. App'x 469, 470 (9th Cir. 2008) (dismissing indictment involving false statement for failure to identify statement); *United States v. Slawick*, 548 F.2d 75, 83-84 (3d Cir. 1977) (reversing perjury conviction where indictment failed precisely to state the alleged false statements); *United States v. Nance*, 533 F.2d 699, 700-02 (D.C. Cir. 1976) (per curiam) (dismissing counts in indictment alleging false pretense fraud under D.C. law for failure to identify "the factual particulars of the false representations" that were "the very core of the offense").

## B.   The Indictment's Failure To Identify the Alleged Fraudulent Representations Renders It Unconstitutionally Vague.

The Indictment is unconstitutionally vague because it does not identify any of the allegedly false representations and pretenses that comprise the two alleged fraudulent schemes.[3] Regarding the alleged

---

[3] Notably, the only statements that the Indictment actually quotes appear in the background section and are not alleged to be false. *See* Indictment ¶¶ 7-9 (quoting three Theranos press releases and a media article). These quotations cannot be examples of the allegedly false or fraudulent statements because they do not fit any of the categories of the alleged misrepresentations in the Indictment. *Compare, e.g.*, *id.* ¶ 7 (quoting press release about the method of drawing blood), *with id.* ¶ 12(A) (paraphrasing alleged representations to investors about the accuracy and reliability of tests using small blood samples drawn from a finger stick), *and id.* ¶¶ 15-16 (paraphrasing representations in

1  conspiracy to defraud investors, the Indictment lumps an unknown number of statements into several

2  broad categories.  *See* Indictment ¶¶ 12(A)-(I).  For each category, the indictment fails to specify (1) the

3  speaker(s), (2) to whom statements of this type were made, (3) when these types of statements were

4  made, (4) the actual wording of the statements falling into the category, or (5) the context in which any

5  of the statements were made.  The omission of these key details is problematic because the alleged

6  fraudulent scheme is expansive, both temporally and regarding subject matter.  *See, e.g.*, *Cecil*, 608 F.2d

7  at 1297 (holding that uncertain duration of conspiracy contributed to vagueness).

8         As alleged in the Indictment, the scheme to defraud investors touches virtually all aspects of

9  Theranos' business, from the capabilities of its "proprietary analyzer" (a term the Indictment does not

10  define), Indictment ¶ 12(A), to the company's regulatory strategy, *id.* ¶ 12(F).  As noted above,

11  Theranos was a complex business that operated in a highly technical area of the health care technology

12  market.  It developed novel technologies over its decade-plus long existence, as reflected in the over 360

13  patents issued worldwide in its portfolio.  That portfolio of inventions and technological advances grew

14  over time, including during the several years over which the government alleges the unidentified

15  misrepresentations about Theranos' technology were made.  The company engaged in multiple rounds

16  of fundraising, during which its employees and agents interacted with many potential and eventual

17  investors.  The universe of statements made by Ms. Holmes, her codefendant, or any of Theranos'

18  agents about the company's small-sample testing capabilities and related technologies (¶ 12(A)) alone is

19  too vast to put Ms. Holmes on notice of what she "must be prepared to meet" at trial.  *Russell*, 369 U.S.

20  at 764 (internal quotation marks omitted).

21         The Indictment's allegations extend far beyond the state of Theranos' technology, including

22  representations about Theranos' growth strategy (¶ 12(B)), partnerships with third parties (¶¶ 12(D), (E),

23  (H)), and regulatory strategy (¶ 12(F)).  And the Indictment purports to recite these allegations as

24  nonexhaustive examples.  *See id.* ¶ 12.  The number of potential speakers and statements implicated is

25  immense.  The Constitution requires that, if the government is going to cast its net so wide, it support its

26  allegations of fraud with a more detailed factual recitation.

27

28

---

advertisements concerning the accuracy and reliability of tests).

MOTION TO DISMISS SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK                          5

To be sure, the Indictment purports to paraphrase entire groupings of alleged fraudulent representations. But it does so in generic terms that do little, if anything, to give content to the alleged fraudulent scheme. In many instances, the government's attempts at paraphrase raise more questions than they answer.

Testing Capabilities; Indictment ¶ 12(A). For example, Paragraph 12(A) contains several terms that the Indictment does not define and that have no established meaning. Theranos did not have one "proprietary analyzer," *id.* ¶ 12(A); the core of its technology comprised many assays, devices, and protocols to make it possible to run laboratory tests on small samples of blood. The phrase "the full range of clinical tests" likewise lacks any established meaning. *Id.* These catch-all terms are too imprecise to provide notice of the statements about Theranos' small-sample testing capabilities that fall within the government's alleged fraudulent scheme. Adding to this uncertainty, the alleged falsity of the representations characterized in this sub-paragraph turns on what Theranos was "presently capable of accomplishing," but the Indictment provides no dates when any statements of this type allegedly were made.

Walgreens Partnership; Indictment ¶ 12(D). Another example of the government's injecting ambiguity into the Indictment is Paragraph 12(D), which alleges that Ms. Holmes or Mr. Balwani "represented to investors that Theranos presently had an expanding partnership with Walgreens, *that is*, Theranos would soon dramatically increase the number of Wellness Centers within Walgreens stores." *Id.* ¶ 12(D) (emphasis added). What purpose does "that is" serve in this allegation? Did Ms. Holmes or Mr. Balwani actually represent that "Theranos would soon dramatically increase the number of Wellness Centers within Walgreens stores"? The "that is" language suggests not; it suggests that the phrase that follows is nothing more than the government's ambitious interpretation of a representation about an "expanding partnership." Without actual quotations, the defense is left to guess about the meaning of this allegation.

FDA Regulations; Indictment ¶ 12(F). A third example of the Indictment's unconstitutionally vague allegations concerns alleged misstatements regarding the FDA. According to the indictment, Ms. Holmes and/or Mr. Balwani "represented to investors that Theranos did not need the [FDA] to approve its proprietary analyzer and tests," when "in truth," the FDA "was requiring Theranos to apply for

clearance or approval of its analyzer and tests."  *Id.* ¶ 12(F).  Although the Indictment posits a

dichotomy between approval for Theranos' tests being "required" or not "required," that is not the case.

The regulatory status of Theranos' laboratory developed tests ("LTDs")—*i.e.*, in vitro diagnostic tests

that are designed, manufactured, and used within a single laboratory [4]—was (and remains) uncertain.

Although the definition of "device" under the Food, Drug & Cosmetic Act includes in vitro diagnostic

tests, and thus LTDs, 21 U.S.C. § 321(h), the FDA since 1976 has exercised so-called enforcement

discretion over such tests.[5]  This means that the FDA has generally not enforced applicable statutory and

regulatory provisions with respect to LTDs.   At the time of the alleged conspiracy, the FDA's position

on LDT regulation was still in draft form.[6]  Against this uncertain legal framework, what would it mean

that FDA "approval" of Theranos' tests was "required"?  And how would a statement that Theranos'

submission of test data to the FDA was not "required" be misleading?  Because the government does not

identify the allegedly fraudulent statement, Ms. Holmes does not know.[7]

    <u>Alleged Conspiracy to Defraud Doctors and Patients.</u>  The Indictment's description of the

alleged misrepresentations underlying the alleged scheme to defraud doctors and patients is equally

stingy in detail.  Again, the Indictment does not identify a single misrepresentation.  Rather, it

summarizes the scheme as involving representations containing "materially false and misleading

information concerning the accuracy and reliability of Theranos's blood testing services."  Indictment

¶¶ 17(A), (B).

---

[4] FDA, *Laboratory Developed Tests*, https://www.fda.gov/medical-devices/vitro-diagnostics/laboratory-developed-tests (last updated Sept. 27, 2018).

[5] Framework for Regulatory Oversight of Laboratory Developed Tests; Draft Guidance for Industry, Food and Drug Administration Staff, and Clinical Laboratories; Availability, 79 Fed. Reg. 59,776 (Oct. 3, 2014), at 59,777.

[6] That draft guidance described "the process by which FDA *intends to phase in* enforcement of FDA regulatory requirements for LDTs *over time*."  79 Fed. Reg. at 59,777 (emphases added).  The FDA made clear that the 2014 draft guidance was "not final, nor is it in effect at this time," and that it "does not operate to bind FDA or the public."  *Id.*  The FDA never finalized its draft guidance, and the FDA's policy of enforcement discretion with respect to LDTs stands.  In January 2017, the FDA issued a discussion paper on LDTs, which "does not represent the formal position of FDA, nor is it enforceable," and further "does not represent a final version of the LDT draft guidance documents that were published in 2014."  FDA, *Discussion Paper on Laboratory Developed Tests (LDTs)* (Jan. 13, 2017), https://www.fda.gov/media/102367/download.

[7] This lack of clarity is especially critical because a reasonable interpretation of unclear regulatory requirements cannot form the basis of a conviction for fraud.  *See, e.g., United States v. Whiteside*, 285 F.3d 1345, 1351-52 (11th Cir. 2002).

The language of Count Two is similarly enigmatic, alleging "specifically" that Ms. Holmes induced doctors and patients to use Theranos' tests "under the false and fraudulent pretense that Theranos technology produced reliable and accurate blood tests." *Id.* ¶ 22; *see also id.* ¶ 15 (alleging that defendants "held Theranos'[] blood tests out to individuals as accurate and reliable" without further explaining the vague verb "held . . . out"). How is the government defining "reliable and accurate"? It cannot mean reliable and accurate in every case, as no blood testing product is 100% reliable and accurate.[8] And what does it mean that defendants "held . . . out" the blood tests? Are the alleged misrepresentations (whatever they are) merely implicit? Again, without quotations and context for the statements, the defense is left to wonder what the government has in mind. The Indictment's lack of specificity is fatal.

In sum, the Indictment's extraordinary breadth combined with its dearth of factual allegations undermine the core purposes that indictments serve under the Constitution. *See, e.g.*, *Cecil*, 608 F.2d at 1297. Ms. Holmes cannot prepare her defense without knowing what statements by whom, to whom, and about what the government claims were fraudulent. And neither the defense nor the Court can be confident that the grand jury passed upon whatever statements the government ultimately attempts to offer at trial when the Indictment does not indicate what those statements are. The Indictment should be dismissed.

## II.   At a Minimum, the Court Should Order a Bill of Particulars.

Although a "bill of particulars cannot save an invalid indictment," *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979), a bill of particulars is warranted here in the event that the Court does not dismiss the Indictment. *See* Fed. R. Crim. P. 7(f). A bill of particulars is "appropriate where a defendant requires clarification in order to prepare a defense." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The principal purpose of a bill of particulars is "to apprise the defendant of the

---

[8] *See generally* Mario Plebani, *Diagnostic Errors and Laboratory Med.*, 26 J. Int'l Federation of Clinical Chemistry & Laboratory Medicine (2015), https://www.ncbi.nlm.nih. gov/pmc/articles/PMC4975219/. Error rates vary depending on the test measured, and certain types of tests like immunoassays are known to have greater rates. *See generally* Vincent Marks, *False-positive immunoassay results: a multicenter survey of erroneous immunoassay results from assays of 74 analytes in 10 donors from 66 laboratories in seven countries*, 48 Clinical Chemistry 2008-16 (2002), https://www.ncbi.nlm.nih.gov/pubmed/12406987.

1  specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to

2  protect against double jeopardy." *Id.*  Courts have "very broad discretion" to order a bill of particulars.

3  *Will v. United States*, 389 U.S. 90, 99 (1967).

4      Several considerations unique to this case impede Ms. Holmes' ability to prepare her defense and

5  weigh in favor of ordering a bill of particulars:

6      First, as set forth above, the government has failed to identify the alleged fraudulent

7  misrepresentations or omissions at the heart of the case.  *See* pp. 4-8, *supra*.

8      Second, the charged conspiracies span a long period of time.  *See, e.g.*, *United States v. Feil*,

9  2010 WL 1525263, at *4 (N.D. Cal. Apr. 15, 2010) (ordering bill of particulars for a conspiracy lasting

10  over three years).

11      Third, because the Indictment's allegations are so broad, *see* p. 5, *supra*, the number of potential

12  witnesses to the allegedly fraudulent statements is expansive.  *See, e.g.*, *Will*, 389 U.S. at 100-01

13  ("complex nature" of prosecution favored disclosure in a bill of particulars identifying at least those

14  witnesses who are alleged to have heard defendant make "incriminating statements").

15      Fourth, discovery in this case is voluminous.  While discovery may weigh against a bill of

16  particulars in some cases, *see United States v. Giese*, 597 F.2d 1170, 1170 (9th Cir. 1979), courts

17  recognize that there is a point at which voluminous discovery cuts strongly in favor of particularization,

18  *see, e.g.*, *United States v. Bortonovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam) ("mountains of

19  documents" totaling 4,000); *Feil*, 2010 WL 1525263, at *4 ("70,000 pages of discovery"); *United States

20  v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) ("200,000 pieces of paper in hundreds of boxes

21  and files, relating to 2,000 Medicare claims"); *see also United States v. Bazezew*, 783 F. Supp. 2d 160,

22  168 (D.D.C. 2011) ("[I]t is not sufficient for the government to respond to a motion for a bill of

23  particulars by pointing to the voluminous discovery already provided or by relying on a governmental

24  open file policy.").  Here, the government has produced over 20 million pages of documents, which tally

25  does not include documents in the ongoing productions from the Food and Drug Administration and

26  Center for Medicaid and Medicare Services.  That volume of documents weighs in favor of a bill of

27  particulars, because Ms. Holmes cannot reasonably be expected to glean from that mountain of

28  documents the particulars of the government's case.  *See, e.g.*, *Bortonovsky*, 820 F.2d at 575 (reversing

mail fraud conviction based on erroneous denial of request for particulars where government

"provid[ed] mountains of documents to defense counsel who were left unguided as to which documents"

were evidence of falsity).

On May 10, 2019, Ms. Holmes wrote to the government requesting certain details missing from

the Indictment so that she may prepare her defense.  *See* Ex. A.  The government refused her request.

*See* Ex. B.  Ms. Holmes thus requests an order compelling the government to provide the following:

### A.      Details Concerning the Alleged False or Fraudulent Representations.

As explained above, the government's failure to identify any particular representations or

omissions it alleges to have been false or fraudulent renders the Indictment constitutionally infirm.  *See*

pp. 4-8, *supra*.  In the alternative to dismissal, the government should specify:

> With respect to Count One, each and every "false and fraudulent representation" alleged
> to have been made by Ms. Holmes or any alleged coconspirator in the course of "soliciting
> investments" in Theranos, Indictment ¶ 20.  For each, the government must identify:  (1)
> who made the representation, (b) the precise content of the representation, (c) the form of
> the representation (i.e., oral or written), (d) the date of the representation, (e) to whom the
> representation is alleged to have been made, and (f) the manner in which the representation
> is claimed to be false or fraudulent.

> With respect to Count Two, each and every "false and fraudulent representation" alleged
> to have been made by Ms. Holmes or any alleged coconspirator to solicit, encourage, or
> otherwise induce doctors to refer patients and patients to pay for and use Theranos' tests.
> *Id.* ¶ 22.  For each, the government must identify:  (1) who made the representation, (b) the
> precise content of the representation, (c) the form of the representation (i.e., oral or written),
> (d) the date of the representation, (e) to whom the representation is alleged to have been
> made, and (f) the manner in which the representation is claimed to be false or fraudulent.

As noted above, these essential facts are missing from the Indictment.  *See* pp. 4-8, *supra*.

Courts recognize that the government's approach in this case—loosely paraphrasing allegedly false

statements but withholding the statements themselves—is insufficient in complex fraud cases.  *See*

*United States v. Trumpower*, 546 F. Supp. 2d 849, 852 (E.D. Cal. 2008) (holding that, although the

indictment provided descriptions of the "type of misrepresentations" at issue, the government must

provide the "the *particular* false material representations and particular mailings or wire transactions"

(emphasis added)); *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (noting that,

"[i]n the case of fraud or perjury, it is critical that the government identify in the indictment the dates of

the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the

documents" and ordering bill of particulars setting forth that information); *Nachamie*, 91 F. Supp. 2d at

571 (ordering identification of particular false statements in health care fraud case where indictment generally described "five ways in which claims were falsified" but did not specify false claims "by defendant, type of falsity, claim number and date"); *United States v. Caine*, 270 F. Supp. 801, 806 (S.D.N.Y. 1967) (ordering government to identify "each pretense, representation and promise claimed to have been falsely fraudulent" in a scheme involving claims in advertisements); *see also United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998) (holding that a defendant "faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information," including "exactly what the false statements are" and "what about them is false").  If the Indictment is not dismissed, the government must provide these essential facts concerning the alleged misrepresentations.

### B. Names of Investors, Doctors, or Patients Who May Testify To Having Been Deceived by Any Alleged False or Fraudulent Representation or Pretense.

The government should identify at a minimum the alleged victims of the two conspiracies who may testify at trial.  As the Supreme Court has recognized, "[i]t is not uncommon for the [g]overnment to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial."  *Will*, 389 U.S. at 99.  In *Will*, the Court described as reasonable a request in a bill of particulars for the names of potential witnesses who had heard the defendant's allegedly incriminating statements.  *See id.* at 100-01; *see also, e.g.*, *Caine*, 270 F. Supp. at 806-07 (ordering government to "set forth the names and addresses of those persons who responded to the [allegedly deceptive] advertisement" and were alleged to have been deceived).  Here, the number of potential investors, doctors, or patients whom the government may identify as supposed victims is expansive, and the defense recognizes that it may not be practicable to track down the identity of each one.  But the government surely knows which exemplar individuals it may call as trial witnesses who will claim to have been exposed to, and defrauded by, Ms. Holmes or her alleged coconspirators.  It should provide those names so that Ms. Holmes may prepare to confront them.

1

**C.      Names of All Known Coconspirators.**

2        The Indictment's lack of specificity is exacerbated by its allusion to additional, unnamed

3    coconspirators.  The government should identify all known coconspirators in the conspiracies charged in

4    Counts One and Two.  *See* Indictment ¶¶ 20, 22 (alleging conspiracies among Ms. Holmes, Mr.

5    Balwani, and "others known and unknown to the Grand Jury").  While disclosure of coconspirators is

6    not required in every case, disclosure is warranted in cases with sprawling indictments alleging complex

7    schemes.  *See, e.g.*, *United States v. Barrett*, 153 F. Supp. 3d 552, 573 (E.D.N.Y. 2015) (ordering

8    government to name known coconspirators); *Bazezew*, 783 F. Supp. 2d at 168 (same); *Feil*, 2010 WL

9    1525263, at *4 (same).  *But see cf. United States v. DiCesare*, 765 F.2d 890, 898-99 (9th Cir. 1985)

10   (holding that denial of request for names of "unknown" coconspirators was not an abuse of discretion).[9]

11       Here, naming all known coconspirators is necessary because of the Indictment's breadth and its

12   vague treatment of the alleged fraudulent misrepresentations.  Because the Indictment does not identify

13   the speaker of any alleged misrepresentations comprising the alleged fraudulent schemes, *see* pp. 4-8,

14   *supra*, it leaves the door open for the government to attempt to offer statements from unnamed

15   coconspirators as evidence of the alleged schemes.  And the omission of the additional coconspirators'

16   identities from the Indictment threatens to expand this group of potential speakers to an unbounded set.

17   *See* pp. 4-8, *supra*.  It is impracticable for Ms. Holmes to search for and review the statements of every

18   Theranos agent, compare those statements against the vague categories of alleged misrepresentations in

19   the Indictment, and guess whether the Indictment's vague allegations could be read to include a given

20   speaker or statement.  The government must limit the universe of speakers whose representations it will

21   attempt to argue furthered the alleged conspiracies.

22       **D.      Facts Giving Rise to an Alleged Duty To Disclose and Any Material Omissions that
             Are Alleged To Have Violated that Duty.**

23

24       As explained in Ms. Holmes' separate motion to dismiss the Indictment to the extent that it relies

25   on a fraud-by-omission theory, the Indictment fails entirely to allege the source of any duty to disclose

26

27       [9] Court often invoke concern for the coconspirators' safety as a reason to deny a request for
     disclosure of names.  That concern is not present in this case.  *See, e.g.*, *Nachamie*, 91 F. Supp. 2d at 573
28   ("[T]his case charges Medicare fraud—not narcotics trafficking or murder—and defendants must be
     provided with the names of known unindicted co-conspirators.").

1  or any material omissions that would permit the government to pursue an omissions theory at trial.  If

2  the Court nevertheless permits the government to proceed on that theory, the government should identify

3  the facts giving rise to the alleged duty to disclose and any material omissions that are alleged to have

4  violated that duty.  *See United States v. Tam*, 2017 WL 3782752, at *5 (N.D. Cal. Aug. 31, 2017)

5  (ordering government to "provide additional information as to the material omission and disclosure

6  obligation" of defendant in a bill of particulars).  As with the alleged false or fraudulent misstatements,

7  the necessary details concerning these alleged omissions include for each alleged omission:  (a) who

8  made the alleged omission, (b) precisely what is alleged to have omitted, (c) when that omission is

9  alleged to have occurred, (d) the nature of the alleged duty to disclose, (e) to whom that duty allegedly

10  was owed and to whom the omission is alleged to have been directed, and (f) the manner in which the

11  omission is claimed to be fraudulent.

**CONCLUSION**

13        For the foregoing reasons, the Court should dismiss the superseding indictment or, in the

14  alternative, instruct the government to provide a bill of particulars.

1

2    DATED:  December 16, 2019                    Respectfully submitted,

3

4                                                 /s/ Amy Mason Saharia
                                                  KEVIN DOWNEY
5                                                 LANCE WADE
                                                  AMY MASON SAHARIA
6                                                 KATHERINE TREFZ
                                                  Attorneys for Elizabeth Holmes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on December 16, 2019, a copy of this filing was delivered via ECF on all

3    counsel of record.

4

5                                                              /s/ Amy Mason Saharia

6                                                              AMY MASON SAHARIA
                                                              Attorney for Elizabeth Holmes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) |
| v. | ) **DECLARATION OF AMY MASON SAHARIA** ) **IN SUPPORT OF MS. HOLMES' MOTION TO** ) **DISMISS SUPERSEDING INDICTMENT FOR** ) **LACK OF NOTICE AND, IN THE** ) **ALTERANTIVE, FOR A BILL OF** ) **PARTICULARS** |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | ) |
| Defendants. | ) |
| | ) Hon. Edward J. Davila |

I, AMY MASON SAHARIA, declare as follows:

1.      I represent Defendant Elizabeth Holmes and have been admitted to practice *pro hac vice* in the above-captioned matter.  I submit this declaration in support of Ms. Holmes' Motion To Dismiss Superseding Indictment for Lack of Notice and, in the Alternative, For a Bill of Particulars.  I attest to the following facts upon which the motion relies:

2.      Attached to the Motion are 2 exhibits.  The contents of each are as follows:

DECLARATION IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE AND, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS
CR-18-00258 EJD SVK                              1

1        a.    Exhibit A is a true and correct copy of a May 10, 2019 from counsel to Ms.

2  Holmes requesting information regarding allegations in the Superseding Indictment.

3        b.    Exhibit B is a true and correct copy of a May 24, 2019 from counsel to the

4  government denying Ms. Holmes' request for information.

5

6      I declare under penalty of perjury under the laws of the United States that the foregoing is true

7  and correct to the best of my knowledge.

8

9      Executed this 16th day of December, 2019 in Washington, D.C.

10

11

12                  AMY MASON SAHARIA
                           Attorney for Elizabeth Holmes

# EXHIBIT A

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LANCE WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 10, 2019

<u>Via Email</u>

Mr. John C. Bostic, Esquire
Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

Re:   <u>United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani, No. CR-18-
00258-EJD (N.D. Cal.)</u>

Dear Counsel:

Pursuant to Federal Rule of Criminal Procedure 7 and the United States
Constitution, defendant Elizabeth Holmes requests the following information regarding
allegations in the Superseding Indictment (the "Indictment"), ECF No. 39:

1. With respect to Count 1, ¶ 20, please identify any alleged co-conspirators of Ms.
   Holmes in addition to Mr. Balwani.

2. With respect to Count 1, ¶ 20, please identify each "materially false and fraudulent
   representation" alleged to have been made by Ms. Holmes or any alleged co-
   conspirator in the course of "soliciting investments" in Theranos, including for each
   (a) who made the representation, (b) the precise content of the representation, (c) the
   form of the representation (i.e., oral or written), (d) the date of the representation, (e)
   to whom the representation is alleged to have been made, and (f) the manner in which
   the representation is claimed to be false and fraudulent.  Moreover, please clarify the
   following points.

   a. Regarding each alleged "false and misleading statements to investors" in ¶ 12,
      please identify (a) who made the statement, (b) the precise content of the

WILLIAMS & CONNOLLY LLP

May 10, 2019
Page 2

statement, (c) the form of the statement (i.e., oral or written), (d) when the statement was made, (e) to whom the statement was made, and (f) the manner in which the statement is claimed to be false and fraudulent. Moreover, please identify the precise allegedly false and misleading "written and verbal communications", "marketing materials", "financial statements, models, and other information", and "statements to the media" referenced in ¶ 12.

b. Regarding the alleged representation[1] in ¶ 12(A), please identify (a) who made the representation, (b) precisely what is alleged to have been represented concerning which "tasks" Theranos' "proprietary analyzer" was "presently capable of accomplishing," (c) which "proprietary analyzer" the representation pertained to, (d) precisely what is alleged to have been represented concerning the analyzer's ability to "produc[e] results that were more accurate and reliable than those yielded by conventional methods—all at a faster speed that previously possible," (e) the form of the representation (i.e., oral or written), (f) when that representation is alleged to have been made, (g) to whom it was alleged to have been made, and (h) the manner in which the representation is claimed to be false and fraudulent.

c. Regarding the alleged representation in ¶ 12(B), please identify (a) who made the representation, (b) precisely what is alleged to have been represented concerning 2014 and 2015 revenue projections for Theranos, (c) the form of the representation (i.e., oral or written), (d) when that representation is alleged to have been made, (e) to whom it was alleged to have been made, and (f) the manner in which the representation is claimed to be false and fraudulent.

d. Regarding the allegedly misleading demonstrations in ¶ 12(C), please identify for each (a) the date of the demonstration, (b) the audience for the demonstration, (c) Ms. Holmes' alleged role in the demonstration, (d) any statements by Ms. Holmes or any alleged co-conspirators alleged to be false or misleading during the demonstration, and (e) the manner in which the representation is claimed to be misleading.

e. Regarding the alleged representation in ¶ 12(D), please identify (a) who made the representation, (b) precisely what is alleged to have been represented concerning Theranos' "expanding partnership with Walgreens", (c) the form of the representation (i.e., oral or written), (d) when that representation is alleged to have been made, (e) to whom it was alleged to have been made, and

---

[1] It is unclear whether the allegations in this and other paragraphs in the Indictment purport to cover a single statement by Ms. Holmes, or whether they purport to paraphrase multiple statements. To the extent that the latter is true, Ms. Holmes seeks the requested information for each allegedly false or fraudulent statement.

WILLIAMS & CONNOLLY LLP

May 10, 2019
Page 3

          (f) the manner in which the representation is claimed to be false and
          fraudulent.

f.   Regarding the alleged representation in ¶ 12(E), please identify (a) who made
    the representation, (b) precisely what is alleged to have been represented
    concerning Theranos' relationship with the United States Department of
    Defense and the deployment of Theranos' technology to the battlefield, (c) the
    form of the representation (i.e., oral or written), (d) when that representation is
    alleged to have been made, (e) to whom it was alleged to have been made, and
    (f) the manner in which the representation is claimed to be false and
    fraudulent.

g.   Regarding the alleged representation in ¶ 12(F), please identify (a) who made
    the representation, (b) precisely what is alleged to have been represented
    concerning the need for FDA "approval", (c) the form of the representation
    (i.e., oral or written), (d) when that representation is alleged to have been
    made, (e) to whom it was alleged to have been made, and (f) the manner in
    which the representation is claimed to be false and fraudulent.  In addition,
    please identify the date and content of any communication from the FDA that
    it "was requiring Theranos to apply for clearance or approval for its analyzer
    and tests."

h.   Regarding the alleged representation in ¶ 12(G), please identify (a) who made
    the representation, (b) precisely what is alleged to have been represented
    concerning the use of "Theranos-manufactured analyzers" for patient tests, (c)
    the form of the representation (i.e., oral or written), (d) when that
    representation is alleged to have been made, (e) to whom it was alleged to
    have been made, and (f) the manner in which the representation is claimed to
    be false and fraudulent.

i.   Regarding the alleged representation in ¶ 12(H), please identify (a) who made
    the representation, (b) precisely what is alleged to have represented
    concerning the examination, use, and validation of Theranos' technology by
    third parties, (c) the form of the representation (i.e., oral or written), (d) when
    that representation is alleged to have been made, (e) to whom it was alleged to
    have been made, and (f) the manner in which the representation is claimed to
    be false and fraudulent.

j.   Regarding the allegations in ¶ 12(I), please identify (a) the representations to
    the media that are alleged to contain false and misleading statements, (b) who
    made the representations, (c) the form of the representations (i.e., oral or
    written), (d) when the representations are alleged to have been made, (e) to
    whom it is alleged to have been made, and (f) the manner in which the

WILLIAMS & CONNOLLY LLP

May 10, 2019
Page 4

representation is claimed to be false and fraudulent.  Moreover, for each alleged instance when Ms. Holmes or any alleged co-conspirator allegedly shared media articles with investors and/or potential investors, please identify (a) the shared article, (b) the date it was shared, (c) by who it was shared, and (d) with whom it was shared.

3.  With respect to Count 1, ¶ 20, please clarify whether the government maintains that the charged conspiracy featured allegedly material omissions.  If so, please identify each alleged omission, including (a) who made the alleged omission, (b) precisely what is alleged to have omitted, (c) when that omission is alleged to have occurred, (d) the nature of the alleged duty to disclose, (e) to whom that duty allegedly was owed and to whom the omission is alleged to have been directed, and (f) the manner in which the omission is claimed to be fraudulent.

4.  With respect to Count 2, ¶ 22, please identify any alleged co-conspirators of Ms. Holmes in addition to Mr. Balwani.

5.  With respect to Count 2, ¶ 22, please identify each and every "false and fraudulent representation" alleged to have been made by Ms. Holmes or any alleged co-conspirator to solicit, encourage, or otherwise induce doctors to refer patients and patients to pay for and use Theranos' tests, including for each (a) who made the representation, (b) the precise content of the representation, (c) the form of the representation (i.e., oral or written), (d) the date of the representation, (e) to whom the representation is alleged to have been made, and (f) the manner in which the representation is claimed to have been false and fraudulent.

6.  With respect to Count 2, ¶ 22, please clarify whether the government maintains that the charged conspiracy featured allegedly material omissions.  If so, please identify each alleged omission, including (a) who made the alleged omission, (b) precisely what is alleged to have omitted, (c) when that omission is alleged to have occurred, (d) the nature of the alleged duty to disclose, (e) to whom that duty allegedly was owed and to whom the omission is alleged to have been directed, and (f) the manner in which the omission is claimed to be fraudulent.

7.  Please identify the allegedly false and misleading representations in "advertising and marketing materials" or on the Theranos website and other false and misleading misrepresentations referenced in ¶¶ 14-15 and 17, including (a) the precise content of all such representations, (b) the date of the representations, (c) the person who made the representations, (d) the recipients of the representations, (e) the manner in which the representations was conveyed to doctors and patients, and (f) the manner in which the representations are alleged to have been false and misleading.

WILLIAMS & CONNOLLY LLP

May 10, 2019
Page 5

8.  With respect to Counts 3-8, ¶ 24, please identify (a) the name of each referenced investor, (b) which allegedly false or fraudulent representations the investor is alleged to have been aware of, and, to the extent those representations are different from those subject to the prior requests, (c) the manner in which those representations are alleged to have been false and fraudulent.

9.  With respect to Counts 3-8, ¶ 24, to the extent the Indictment alleges that investors referenced in these counts were defrauded by "material omissions with a duty to disclose," please identify each alleged omission, including (a) who made the alleged omission, (b) precisely is alleged to have been omitted, (c) when that omission is alleged to have occurred, (d) the nature of the alleged duty to disclose, (e) to whom that duty allegedly was owed and to whom the omission is alleged to have been directed, and (f) the manner in which the omission is claimed to be fraudulent.

10. With respect to Counts 9-10, ¶ 26, please identify (a) the name of each referenced patient and his or her doctor (if the patient consulted a doctor), (b) the identity of the person or entity that paid for Theranos testing in connection with such patient, (c) which allegedly false or fraudulent representations each patient or associated doctor is alleged to have been aware of, and, to the extent those representations are different from those subject to the prior requests, (d) the manner in which those representations are alleged to have been false and fraudulent.

11. With respect to Counts 9-10, ¶ 26, to the extent the Indictment alleges that the patients and doctors referenced in these counts were defrauded by "material omissions with a duty to disclose," please identify each alleged omission, including (a) who made the alleged omission, (b) precisely what Ms. Holmes is alleged to have omitted, (c) when that omission is alleged to have occurred, (d) the nature of the alleged duty to disclose, (e) to whom that duty allegedly was owed and to whom the omission is alleged to have been directed, and (f) the manner in which the omission is claimed to be fraudulent.

Very truly yours,

Lance Wade

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

| | |
|---|---|
| *150 Almaden Boulevard, Suite 900* | *(408) 535-5061* |
| *San Jose, California 95113* | *FAX: (408) 535-5066* |

May 24, 2019

**VIA EMAIL**

Lance Wade
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005
lwade@wc.com

Stephen Cazares
Davis Wright Tremaine LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
stevecazares@dwt.com

      Re:   United States v. Elizabeth Holmes and Ramesh Balwani
               CR18-00258 EJD

Counsel:

    I write in response to your letters dated May 10, 2019, requesting that the government create and provide a bill of particulars. After reviewing the Indictment and the applicable case law, we have concluded that a bill of particulars is not warranted in this case, and we must decline your request. Nonetheless, the government is willing to make reasonable efforts to assist the defense in understanding the charges and in navigating the discovery. The government's proposal, and the basis for its position, are summarized below.

    Your May 10 letters pose numerous questions regarding the specific evidence underlying the government's allegations. The government will, of course, provide pretrial notices at the appropriate time regarding expert witnesses, fact witnesses, exhibits, and other matters. Your requests, however, seek what amounts to a thorough summary of the government's anticipated proof at trial. The law does not require such a summary, nor is it the function of a bill of particulars to provide that information. "A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963).

    The Indictment in this case communicates the theory of the government's case, and contains a "plain, concise, and definite written statement of the essential facts constituting the offense charged" as contemplated by Rule 7 of the Federal Rules of Criminal Procedure. In fact, it exceeds this standard in describing the charged conduct. The Indictment is sufficient to advise

1

Defendants of the charges against them in a way that allows them to prepare their defense.  It is also sufficiently detailed to avoid the risk of double jeopardy.  Courts following Ninth Circuit law decline to order bills of particulars in cases where indictments adequately address those concerns.  Moreover, the government has already produced millions of pages of discovery constituting and summarizing the evidence in this case, and will continue to produce discoverable evidence as it is obtained and processed.  The questions in your letters regarding the substance and context of Defendants' false statements, the identities of investor victims, and other matters can be answered by reviewing the discovery.  In particular, the government has produced, and continues to produce, memoranda summarizing witness interviews that have taken place to date.  The government also has provided additional information directly to defense counsel—including the names of patients corresponding to relevant counts in the Indictment.  If you are aware of case law suggesting that a bill of particulars is required under these circumstances, please bring it to our attention so that we can consider it before meeting and conferring further.

At this time, we believe a bill of particulars is unnecessary.  That said, to assist the defense in understanding the charges and in navigating the discovery, we are prepared to provide you in advance of the July 1 status conference with a complete index of the government's production.  That index should allow the defense to more easily identify the bates locations of documents obtained from various sources during the government's investigation.  Given the effort involved in creating such an index, please let us know as soon as possible if you do not believe this step would be helpful.

We look forward to hearing your thoughts on the above.

Very truly yours,

ADAM A. REEVES
Attorney for the United States

*/s/*
JOHN C. BOSTIC
Assistant United States Attorney

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD-SVK |
| Plaintiff, | **[PROPOSED] ORDER GRANTING MOTION TO DISMISS SUPERSEDING INDICTMENT FOR LACK OF NOTICE** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Hon. Edward J. Davila |
| Defendants. | |

1    This CAUSE having come before the Court upon Defendant Elizabeth Holmes' Motion to

2  Dismiss the Superseding Indictment for Lack of Notice.  After due consideration of the filings, the

3  governing law, and the argument of the parties:

4    IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED, and that the Superseding

5  Indictment is DISMISSED.

6

7    **IT IS SO ORDERED.**

8

9  Dated _____

10

11                                          _____
                                            Hon. Edward J. Davila
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28