1   JOHN D. CLINE (CA State Bar No. 237759)
    50 California Street, Suite 1500
2   San Francisco, CA 94111
    Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3   Email: cline@johndclinelaw.com

4   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
    LANCE A. WADE (Admitted Pro Hac Vice)
5   AMY MASON SAHARIA (Admitted Pro Hac Vice)
    KATHERINE TREFZ (CA State Bar No. 262770)
6   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
7   Washington, DC 20005
    Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9   Attorneys for Defendant ELIZABETH A. HOLMES

10

11                      UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14

15   UNITED STATES OF AMERICA,          )   Case No. CR-18-00258-EJD-SVK
                                        )
16             Plaintiff,               )   **MOTION TO DISMISS COUNTS TWO AND**
                                        )   **NINE THROUGH ELEVEN OF SUPERSEDING**
17        v.                            )   **INDICTMENT**
                                        )
18   ELIZABETH HOLMES and               )   Date:    February 10, 2020
     RAMESH "SUNNY" BALWANI,            )   Time:    10:00 AM
19                                      )   CTRM:    4, 5th Floor
               Defendants.             )
20                                      )   Hon. Edward J. Davila
                                        )
21   _____   )

22

23

24

25

26

27

28

1

## **MOTION TO DISMISS**

2      PLEASE TAKE NOTICE that on February 10, 2010, at 10:00 a.m., or on such other date and

3   time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San

4   Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby

5   does respectfully move the Court pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure

6   to dismiss Counts Two and Nine through Eleven for failure to state an offense for wire fraud, 18 U.S.C.

7   § 1343, and conspiracy to commit wire fraud, 18 U.S.C. § 1349.  The Indictment fails adequately to

8   allege the element of specific intent to defraud.  The Motion is based on the below Memorandum of

9   Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

10

11   DATED: December 16, 2019

12

13                                                    /s/ Amy Mason Saharia
                                                     KEVIN DOWNEY
14                                                    LANCE WADE
                                                     AMY MASON SAHARIA
15                                                    KATHERINE TREFZ
                                                     Attorneys for Elizabeth Holmes
16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.     The Specific Intent To Defraud Is an Essential Element of the Charges
         Concerning Doctors and Patients...........................................................................2

    II.    The Indictment Fails To Allege Specific Intent To Obtain Money from the
         Alleged Victims. ...................................................................................................3

    III.   The Indictment Fails To Allege an Intent To Defraud Any Patients. ...................5

CONCLUSION......................................................................................................................8

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Carpenter v. United States*, 484 U.S. 19 (1987) ...................................................................3

4

*Cleveland v. United States*, 531 U.S. 12 (2000) .................................................................3, 7

5

*McNally v. United States*, 483 U.S. 350 (1987) ....................................................................3

6

*Monterey Plaza Hotel L.P. v. Hotel & Rest. Emps. Local 483*,

7
    215 F.3d 923 (9th Cir. 2000) .........................................................................................3

8

*Russell v. United States*, 369 U.S. 749 (1962) ......................................................................2

9

*United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010)..............................................................3

10

*United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992) ...............................................5

11

*United States v. Carroll*, 2015 WL 2251206 (N.D. Cal. May 13, 2015)...............................2

12

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (per curiam)......................................2

13

*United States v. Ciccone*, 219 F.3d 1078 (9th Cir. 2000) ......................................................3

14

*United States v. Hussain*, 2017 WL 4865562 (N.D. Cal. Oct. 27, 2017) .............................2

15

*United States v. Keith*, 605 F.2d 462 (9th Cir. 1979)............................................................2

16

*United States v. Keuylian*, 23 F. Supp. 3d 1126 (C.D. Cal. 2014)......................................3, 6

17

*United States v. Kurtz*, 2008 WL 1820903 (W.D.N.Y. Apr. 21, 2008)..................................6

18

*United States v. Lew*, 875 F.2d 219 (9th Cir. 1989)...............................................................3

19

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017).......................................................2

20

*United States v. Mitchell*, 867 F.2d 1232 (9th Cir. 1989) (per curiam) ................................3

21

*United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970)...........................5

22

*United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014).....................................................1, 5, 7

23

*United States v. San Diego Gas & Elec. Co.*, 2006 WL 3913457

24
    (S.D. Cal. Nov. 21, 2006) ............................................................................................2

25

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) .......................................................1, 5, 6

26

*United States v. Starr*, 816 F.2d 94 (2d Cir. 1987) ...............................................................5

27

*United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016) ............................................5, 6, 7

28

*United States v. Thomas*, 32 F.3d 418 (9th Cir. 1994)..................................................................3

*United States v. Utz*, 886 F.2d 1148 (9th Cir. 1989) (per curiam)............................................4

*United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993)............................................................4

*United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993) ...............................................................3

## STATUTES AND RULE

18 U.S.C. § 1343...........................................................................................................................1

18 U.S.C. § 1349.......................................................................................................................1, 2

Fed. R. Crim. P. 7 ........................................................................................................................2

### MEMORANDUM OF POINTS AND AUTHORITIES

The counts of the Indictment related to doctors and patients—Counts Two and Nine through Eleven—fail to allege the required element of specific intent to commit wire fraud.  The specific intent element cabins the offense to instances where a defendant intends to deprive another unfairly of property through deceit as to the nature of the bargain between them.  *See, e.g.*, *United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014).  Failure to allege facts sufficient to establish that intent is fatal to a wire fraud indictment.  *See, e.g.*, *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007).  The Indictment's paper-thin recitation of the facts underlying the alleged scheme to defraud doctors and patients fails to establish specific intent.  As to most of the supposed victims, including doctors, the Indictment fails to allege an intent to deprive them of property.  As to patients, the Indictment does not allege that a single patient received an inaccurate result from a Theranos test, nor does it identify a single misrepresentation or omission that affected the bargain struck between Theranos and its customers as alleged in the Indictment—the provision of fast, inexpensive, accurate, and reliable blood tests.  The Counts in the Indictment premised on the alleged scheme to defraud doctors and patients (Counts Two and Nine through Eleven) therefore must be dismissed.

### BACKGROUND

The Indictment charges Ms. Holmes and her codefendant with one count of conspiracy to commit wire fraud against doctors and patients, 18 U.S.C. § 1349, and three counts of wire fraud against doctors and patients, 18 U.S.C. § 1343.  The government vaguely describes the alleged misrepresentations as "explicit and implicit claims concerning Theranos'[] ability to provide accurate, fast, reliable, and cheap blood tests and tests results, and through omissions concerning the limits of and problems with Theranos'[] technologies."  Indictment ¶ 15.  These alleged misrepresentations and/or omissions supposedly were made in "advertisements and marketing materials," *id.*, and on the company's website, *id.* ¶17(B).  The Indictment does not specify the precise content of these representations, nor does it identify when and by whom the statements were made.  Nevertheless, according to the government, these alleged statements were fraudulent because Ms. Holmes and Mr. Balwani "knew that Theranos'[] technology was, in fact, not capable of consistently producing accurate

1   and reliable results" and in particular for "certain blood tests."  *Id.* ¶ 16.

2                                                **ARGUMENT**

3          Rule 7 mandates that an indictment contain "a plain, concise, and definite written statement of

4   the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  That requirement codifies

5   and enforces "basic principles of fundamental fairness" inherent in the Sixth and Fifth Amendments.

6   *Russell v. United States*, 369 U.S. 749, 763-66 (1962).  To pass constitutional muster, an indictment

7   must include a "description of the charges" sufficiently detailed to, among other things, "inform the

8   court of the facts alleged so that it can determine the sufficiency of the charge."  *United States v. Cecil*,

9   608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam).  "The failure of an indictment to detail each element

10  of the charged offense generally constitutes a fatal defect."  *United States v. Keith*, 605 F.2d 462, 464

11  (9th Cir. 1979).  An indictment will fail adequately to allege an element if it "does not allege facts

12  which, if proven, would constitute a violation of the statute . . . that the defendant is alleged to have

13  violated."  *United States v. Carroll*, 2015 WL 2251206, at *1 (N.D. Cal. May 13, 2015) (internal

14  quotation marks omitted); *see also United States v. San Diego Gas & Elec. Co.*, 2006 WL 3913457, at

15  *10-12 (S.D. Cal. Nov. 21, 2006).

16         The Counts in the Indictment premised on the alleged scheme to defraud doctors and patients

17  (Counts Two and Nine through Eleven) must be dismissed because they do not allege that Ms. Holmes

18  acted with the specific intent to obtain money or property from any doctors or patients through deceit.

19  The Indictment's shortcomings regarding intent are twofold.  First, it does not allege a scheme by which

20  Theranos obtained money from many of the scheme's alleged victims, including all doctors and any

21  patients who did not pay for their Theranos tests.  Second, it does not allege that a single patient from

22  whom Theranos could have obtained money received erroneous test results or was otherwise deceived as

23  to the benefit of the bargain struck when he or she ordered a Theranos test.

24  **I.      The Specific Intent To Defraud Is an Essential Element of the Charges Concerning Doctors
            and Patients.**

25

26         To prevail on a charge of wire fraud, the government must prove:  "(1) the existence of a scheme

27  to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to

28  defraud."  *United States v. Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017) (internal quotation marks

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

omitted).[1]  Accordingly, "[t]o sustain a conviction for fraud . . . , the government must prove beyond a reasonable doubt the element of specific intent." *United States v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000); *see also United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994) (reversing mail fraud conviction because of erroneous exclusion of evidence bearing on element of "the defendant's subjective intent").[2]  On a motion under Federal Rule of Criminal Procedure 12, the failure to allege facts that, if proven, would satisfy the intent element of the offense is a fatal defect requiring dismissal of the indictment.  *See United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir. 1989) (per curiam) (dismissing indictment for failure to allege intent to obtain money or property from victim through deceit); *United States v. Keuliyan*, 23 F. Supp. 3d 1126, 1129 (C.D. Cal. 2014) (dismissing indictment for failure to allege that any alleged victims had been deceived).[3]

## II.     The Indictment Fails To Allege Specific Intent To Obtain Money from the Alleged Victims.

The Indictment does not allege facts that, if proven, would demonstrate that Ms. Holmes acted with the specific intent to obtain money or property from those whom the government alleges were deceived.  The Supreme Court has long held that, "for purposes of the [wire] fraud statue, the thing obtained must be property in the hands of the victim." *Cleveland v. United States*, 531 U.S. 12, 15 (2000); *see McNally v. United States*, 483 U.S. 350, 358 (1987).  Consequently, the specific intent element of wire fraud "must be [the intent] to obtain money or property ***from the one who is deceived***." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (emphasis added); *see also United States v. Ali*, 620 F.3d 1062, 1071 (9th Cir. 2010) ("[U]nder *Lew*, Microsoft [the victim of the alleged scheme] must be the victim ***from whom property was taken***." (emphasis added)); *Monterey Plaza Hotel L.P. v. Hotel*

---

[1] A conspiracy under Section 1349 "requires an agreement among two or more persons that would satisfy the elements of the substantive offense" of wire fraud.  *United States v. Hussain*, 2017 WL 4865562, at *5 (N.D. Cal. Oct. 27, 2017).  Accordingly, an indictment charging conspiracy to commit wire fraud must specify the underlying fraud.  *See United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) ("We think a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count.").

[2] Courts treat the federal mail and wire fraud statutes substantially the same when assessing the elements of the offenses.  *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987).

[3] As *Mitchell* demonstrates, the specific intent element is sometimes conceived of as a component of the scheme to defraud.  *See* 867 F.3d at 1233 ("To charge a scheme to defraud . . . requires an allegation that [the defendant] intended to deprive the [victim] of money or property.").  Under either conception, the analysis of an indictment's sufficiency is the same.

1 & *Rest. Emps. Local 438*, 215 F.3d 923, 927 (9th Cir. 2000) ("The purpose of the mail fraud and wire

2 fraud proscriptions is to punish wrongful transfers of property ***from the victim to the wrongdoer***[.]"

3 (emphasis added)); *accord United States v. Walters*, 997 F.2d 1219, 1224-26 (7th Cir. 1993).[4]

4         The Indictment fails to connect the purported targets of the alleged deceit and the resulting

5 transfer of money to Theranos, as required under *Lew* and its progeny.  The Indictment identifies two

6 groups of victims of the alleged scheme in Counts Two and Nine through Eleven:  (1) doctors and (2)

7 patients.  It alleges that Ms. Holmes "encouraged and induced [both groups] . . . to use Theranos'[]

8 blood testing laboratory services."  Indictment ¶ 14; *see also id.* ¶¶ 22, 26.  Under *Lew*, the Indictment

9 must allege that Ms. Holmes intended to obtain money or property from these groups of victims.  It fails

10 to do so.

11         <u>As to doctors</u>:  The Indictment does not allege that any doctor paid any money to Theranos or

12 anyone else in referring patients to Theranos for their blood tests.  Nor could an alleged scheme to

13 "encourage[]" and "induce[]" use of Theranos' tests by patients conceivably transfer money from

14 doctors to Theranos, *id.* ¶ 22; doctors do not pay for their patients' blood tests.  Consequently, the

15 Indictment must be dismissed to the extent it alleges a scheme to defraud doctors.

16         <u>As to patients</u>:  The Indictment acknowledges that many of the alleged patient victims did not

17 pay for Theranos tests.  Any such patients are not "victims" cognizable under *Lew*.  The relevant

18 allegation reads:  "Based on these representations, many hundreds of patients paid, or ***caused their***

19 ***medical insurance companies to pay***, Theranos, or Walgreens acting on behalf of Theranos, for blood

20 tests and test results, sometimes following referrals from their defrauded doctors."  *Id.* ¶ 15 (emphasis

21 added).  In other words, some patients paid Walgreens (not Theranos), and some did not pay any money

22 at all because their insurance companies paid for the tests.  Under *Lew*, a scheme to defraud patients who

23 interacted with Theranos tests in either of these ways cannot support a wire fraud conviction.

24 Accordingly, the Indictment must be dismissed to the extent it alleges a scheme to defraud patients who

25 did not pay Theranos for tests.

26

27      [4] Although the alleged scheme need not succeed to support a wire fraud conviction, the jury must find that the defendant "intended to defraud the victim" of money or property.  *E.g.*, *United States v.*

28 *Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989) (per curiam).

1

**III.    The Indictment Fails To Allege an Intent To Defraud Any Patients.**

2

To the extent the alleged scheme to defraud some patients survives *Lew*, the counts concerning

3

doctors and patients nevertheless must be dismissed because the Indictment fails to allege a

4

misrepresentation going to the nature of the deal between Theranos and patients.  The Indictment alleges

5

that Theranos represented in advertisements and marketing materials that it "could provide accurate,

6

fast, reliable, and cheap blood tests and test results."  Indictment ¶¶ 15-16.  The Indictment

7

conspicuously does not allege that Theranos could not provide accurate, fast, reliable, and cheap blood

8

tests and test results; it alleges only that it could not do so "consistently."  *Id.* ¶ 16.  Implicit in the

9

government's allegation, then, is the assumption that patients would not have ordered Theranos blood

10

tests if they knew that Theranos could not "consistently" provide accurate or reliable tests and results.

11

This theory fails to state a claim for wire fraud.

12

The intent required under the wire fraud statute is the specific intent to obtain money or property

13

from the victim by deception that goes to "the value of the bargain" struck.  *United States v. Takhalov*,

14

827 F.3d 1307, 1312-14 (11th Cir. 2016); *see United States v. Sadler*, 750 F.3d 585, 590-91 (6th Cir.

15

2014); *United States v. Shellef*, 507 F.3d 82, 108-09 (2d Cir. 2007); *United States v. Starr*, 816 F.2d 94,

16

98 (2d Cir. 1987); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970).

17

Courts thus ask whether the alleged misrepresentations concern "an essential element of the bargain."

18

*Shellef*, 507 F.2d at 108.  It is insufficient that an alleged victim might not have entered into the

19

transaction in the first instance if he had been aware of some additional fact; in other words, "but for"

20

causation does not suffice.  *See, e.g.*, *Takhalov*, 827 F.3d at 1310 ("That a defendant merely induced the

21

victim to enter into a transaction that he otherwise would have avoided is . . . insufficient to show wire

22

fraud." (internal quotation marks and alterations omitted)); *accord United States v. Bruchhausen*, 977

23

F.2d 464, 468 (9th Cir. 1992) (rejecting argument that wire fraud conviction may lie where seller was

24

induced into a transaction through deceit but was nevertheless fully compensated for property sold).

25

Rather, "a 'scheme to defraud,' as that phrase is used in the wire-fraud statute, refers only to those

26

schemes in which a defendant lies about the nature of the bargain itself."  *Takhalov*, 827 F.3d at 1313.

27

As the *Takhalov* court explained, such a lie comes in "two primary forms:  the defendant might

28

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1    lie about the price (e.g., if he promises that a good costs $10 when it in fact costs $20) or he might lie

2    about the characteristics of the good (e.g., if he promises that a gemstone is a diamond when it is in fact

3    a cubic zirconium)." *Id.* at 1313-14.  If the lie does not fit these categories, there can be no intent to

4    defraud.  Put another way, "a wire-fraud case must end in an acquittal if the jury . . . believes that the

5    alleged victims received exactly what they paid for." *Id.* at 1314 (internal quotation marks omitted); *see*

6    *also Sadler*, 750 F.3d at 590 ("[P]aying the going rate for a product does not square with the

7    conventional understanding of 'deprive.'").

8           Because the specific intent to defraud through lies concerning the nature of the bargain is an

9    element of wire fraud, it must be alleged with sufficient specificity in the Indictment like any other

10   element.  *See Shellef*, 507 F.3d at 109 (finding legally insufficient an indictment that failed to allege a

11   "discrepancy between benefits reasonably anticipated and actual benefits received" (internal quotation

12   marks omitted)); *United States v. Kurtz*, 2008 WL 1820903, at *6 (W.D.N.Y. Apr. 21, 2008) (dismissing

13   indictment for failure to allege "that the defendant's scheme depended on a misrepresentation of an

14   essential element of the bargain"); *see also United States v. Keuylian*, 23 F. Supp. 3d 1126, 1129-30

15   (C.D. Cal. 2014) ("But without some allegation that [the victim] was deceived or tricked into being

16   deprived of the [money] it was owed, the present Indictment fails to allege an essential element of wire

17   fraud.").

18          The government's theory of deception-in-the-inducement is invalid under these cases because

19   the Indictment does not allege that the supposedly deceived patients did not get what they paid for.

20   According to the Indictment, Theranos promised that its tests were "fast"; the Indictment does not allege

21   that they were not fast.  According to the Indictment, Theranos said that its tests were "cheap"; the

22   Indictment does not allege that they were not cheap.  According to the Indictment, Theranos represented

23   that its tests were "accurate" and "reliable"; the Indictment does not allege that they were not.  ***It does***

24   ***not allege that a single patient received an inaccurate result.***  As a result, the Indictment fails to allege

25   that patients did not receive "what they paid for." *Takhalov*, 827 F.3d at 1314 (internal quotation marks

26   omitted).

27          The vagueness of the Indictment on this point confirms the infirmity of the government's

28

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1  allegations.  As noted above, the government does not allege that any representation that Theranos could

2  provide "accurate, fast, reliable, and cheap blood tests and test results" was false.  Indictment ¶ 15.

3  Instead, it asserts only that Ms. Holmes and Mr. Balwani committed wire fraud when they allegedly

4  made these representations knowing "that Theranos was not capable of ***consistently*** producing accurate

5  and reliable results for certain blood tests."  Indictment ¶ 16 (emphasis added).  The Indictment does not

6  explain what it means by "consistently."  The Indictment also alleges that Ms. Holmes and Mr. Balwani

7  made "explicit" statements about the cost and speed of Theranos' tests and that they "*held* Theranos'[]

8  blood tests *out* to individuals as accurate and reliable."  *Id.* ¶ 17 (emphasis added).  The Indictment does

9  not elaborate what it means for the tests to have been "held . . . out" as accurate and reliable.  The

10 contrast between that vague phrase and the allegation of "explicit" claims regarding cost and speed

11 suggests that the alleged scheme to defraud doctors and patients about accuracy and reliability rests on

12 something less than an explicit representation, particularly in light of the Indictment's failure to identify

13 a single allegedly false or misleading statement in Theranos' advertisements or marketing statements.

14 We do not know what that something is.  As best we can tell, the government's theory is that patients

15 implicitly understood Theranos' blood tests to be consistently accurate and reliable and that patients

16 would not have purchased them had they known the truth.

17        As set forth above, permitting a wire fraud prosecution to proceed on that theory would expand

18 the reach of the wire fraud statute beyond its well-established bounds.  Courts consistently have

19 cautioned against "[l]ightly equating deceptions with property deprivation" and expanding the federal

20 wire fraud statue into "field[s] of criminal jurisdiction long covered by the States."  *Sadler*, 750 F.3d at

21 591; *see also Cleveland v. United States*, 531 U.S. 12, 24 (2000) (reversing mail fraud conviction

22 premised on false statements made in the course of applying for licenses to operate video poker

23 machines and rejecting government's invitation to "approve a sweeping expansion of federal criminal

24 jurisdiction in the absence of a clear statement by Congress").  Making false statements that do not

25 affect the benefit of the bargain is not wire fraud.  The specific intent element polices this line.  *See, e.g.*,

26 *Takhalov*, 827 F.3d at 1314 (intent to harm element "follows as a matter of logic from Congress'[]

27 decision to use" the common-law term "scheme to defraud" (internal quotation marks omitted)).

28

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1   Because the Indictment fails to allege specific intent to defraud, the Counts relating to doctors and

2   patients must be dismissed.

3                                          **CONCLUSION**

4            For the foregoing reasons, the Court should dismiss Counts Two and Nine through Eleven of the

5   Indictment.

6

7   DATED:  December 16, 2019                        Respectfully submitted,

8

9                                                    /s/ Amy Mason Saharia
                                                     KEVIN DOWNEY
10                                                   LANCE WADE
                                                     AMY MASON SAHARIA
11                                                   KATHERINE TREFZ
                                                     Attorneys for Elizabeth Holmes
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019, a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MOTION TO DISMISS COUNTS TWO AND NINE THROUGH ELEVEN OF SUPERSEDING INDICTMENT
CR-18-00258 EJD SVK

1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                          UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13                                SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,          )   Case No. CR-18-00258-EJD-SVK
                                       )
16          Plaintiff,                 )   **[PROPOSED] ORDER GRANTING MOTION**
                                       )   **TO DISMISS COUNTS TWO AND NINE**
17      v.                             )   **THROUGH ELEVEN OF SUPERSEDING**
                                       )   **INDICTMENT**
18  ELIZABETH HOLMES and               )
    RAMESH "SUNNY" BALWANI,            )
19                                     )   Hon. Edward J. Davila
            Defendants.                )
20  _____ )

21

22

23

24

25

26

27

28

1        This CAUSE having come before the Court upon Defendant Elizabeth Holmes' Motion to

2   Dismiss Counts Two and Nine through Eleven of the Superseding Indictment.  After due consideration

3   of the filings, the governing law, and the argument of the parties:

4        IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED, and that Counts Two and

5   Nine through Eleven of the Superseding Indictment are DISMISSED.

6

7        **IT IS SO ORDERED.**

8

9   Dated _____

10

11                                              Hon. Edward J. Davila
                                              United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28