ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5589
   Fax: (408) 535-5066
   Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-258 EJD |
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF MOTION TO EXTEND DEADLINE BY WHICH TO COMPLY WITH THE COURT'S NOVEMBER 5, 2019, ORDER |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:  January 13, 2020 |
| Defendants. | Time:  10 a.m. |
| | Courtroom:  4, 5th Floor |

The government respectfully submits this reply in support of its Motion to Extend Deadline by Which to Comply with the Court's November 5, 2019, Order ("Motion to Extend").

Defendants' oppositions concede (1) that the Court's November 5, 2019 Order ("Order") required FDA to perform a new, time consuming document re-collection for the term "LDT," (2) ignore the extraordinary efforts FDA and the government have made to produce the requested documents (before and after the Order), and (3) make conclusory claims about prejudice that do not withstand scrutiny.

Reading only the defendants' oppositions, one would think FDA did nothing to produce responsive documents.  This is not borne out by the record:

- On June 28, 2019, the Court ordered FDA to "provide the parties with specific information regarding the documents [it] agree[s] to produce or object to producing in response to the document requests made by the Government on behalf of Defendants." ECF No. 84.

- On July 15, 2019, FDA responded:  "<u>FDA will produce documents responsive to all six categories</u>" and expressly waived its deliberate process privilege for Theranos-specific documents."  ECF No. 89-2 (emphasis in original).

- On July 19, 2019, the Court stated "[b]ased on the parties' representations and the representations of FDA . . . the Court believes that the most effective and timely manner for Defendants to receive the documents is to continue with the current process by which the Prosecution works with FDA and CMS to produce the documents."  ECF No. 111 at 4.  The Court ordered production by October 2, 2019.  *Id.* at 5.

- On September 23, 2019, FDA provided a fulsome update to the parties about its efforts to comply.  ECF No. 121-2.

- On October 2, 2019, after a hearing, the Court directed "[a]ll Parties shall meet and confer with FDA . . . regarding Defendants' concerns with [FDA's] productions" and ordered FDA to complete its production by October 25, 2019.  ECF No. 134.

- Between August 5 and October 24, 2019, FDA produced approximately 60,000 pages of documents.  This is on top of the 40,000 pages of documents FDA produced to DOJ in

the investigation.  ECF No. 170-1; Declaration of Marci B. Norton ¶¶ 4 & 7 ("Norton Decl.").[1]

During the meet and confer process ordered by the Court on October 2, it became evident FDA and defendants had significant disputes about the terms and the methods for searching.  *See* ECF Nos. 216-3 & 170 at 9-12.  Although it was not mentioned in their motion to compel or their "narrow" six categories, the defense argued FDA was required to search all custodians for the term "LDT," whether it was joined with Theranos or not.  Categories 2 and 4 require production of "documents . . . regarding *Theranos'* Clinical Laboratory Improvement Amendments ("CLIA") compliance" and "documents . . . regarding the FDA's determination of the type of FDA approval required for *Theranos'* proprietary technology."  The additional categories are similarly limited.  It is difficult to imagine a material responsive document that does not include the word "Theranos."  What's more, searching for LDT as a stand-alone term retrieves news articles, resumes, treatises, statutes, oblique references to the term LDT, and other documents of minimal if any relevance.  Searching for LDT at the FDA is akin to searching for "security" at the SEC, "trade" at the FTC, or "summary judgment" in the files of a court.  The term "fingerstick," which is employed by hand-held glucose monitor companies and others, raises similar overbreadth issues.

In the November 5 Order, the Court resolved the "LDT" dispute in favor of the defense.  Since this finding,[2] the government has worked diligently to comply with the Order.  At the request of the government and based on the terms of the Court's Order, FDA is *re-collecting* electronically from 65 custodians – the vast of majority of whom will never see this Courtroom – to ensure the term "LDT" and others are covered.  Through extensive negotiations with FDA counsel and defense, the government has eliminated, or substantially reduced, issues with redaction, privilege, trade secret, and confidential commercial information that have slowed FDA's production.  And the government has produced nearly

---

[1]     FDA's efforts are further summarized in the attached Declaration of Marci Norton.

[2]     Although it respectfully disagrees, the government acknowledges the Court's finding it has knowledge and access to the at-issue documents.  The defendants' claim the government is taking a "hands-off approach to documents" (ECF No. 261 at 2 & 6) is simply incorrect and ignores the facts set forth in the supporting declaration.  *See, e.g.*, ECF No. 215-1 ¶¶ 2, 4, 10.

1  140,000 documents (without a single redaction for privilege or other information) since the Court's

2  Order, including those from the email files of 11 of the defendants' 22 most significant custodians.[3]

3         Unable to dispute any of this, the defendants make vague claims about DOJ's "vast resources,"

4  speculate that "[s]urely the United States Government can find a way," and demand DOJ be ordered to

5  "take all necessary steps . . . forthwith" (ECF Nos. 216 at 2, 3; 217 at 2) – all without any meaningful

6  specificity or factual support to contest the government's demonstration that "substantial technological

7  and other limits on FDA's ability to quickly collect documents from its custodians that additional

8  personnel or funds will not address."  ECF No. 215 at 7; *see also* Norton Decl. ¶¶ 12-14.

9         The defendants also insist the timetable required for this exhaustive re-search will compromise

10  the defense's ability to prepare for trial and defend this case, but again, besides reciting the schedule

11  they fail to explain why.  The government is not proposing producing all documents on or around April

12  30, but a rolling production, adding to the 200,000 documents which have already been produced, that

13  will assure the parties that the places reasonably likely to have responsive documents have been

14  searched.  Again, only a handful of custodians at FDA will be trial witnesses, many may have the same

15  responsive documents, and many were only tangentially involved in Theranos matters.

16         Finally, the defendants quibble that the government insufficiently met and conferred about the

17  manual search issue.  The government took the defendants at their word that they viewed such a search

18  as "unreliable and inconsistent with standard document collection practices," ECF No. 170 at 10, and

19  "[w]e understand that the search terms will be applied to electronic data collected from each custodian

20  using standard forensic collection techniques, to be sure that the search terms are applied to the entire

21  data set for each custodian (including any storage space that might contain deleted material), and to

22  remove the custodians from the collection process."  ECF No. 216-2.  Now, they do not even defend the

23  sole case they cited to the Court, or dispute that Magistrates in this District have rejected its reasoning.

24  To the extent they accept a manual search may be performed under guidance or direction of DOJ, the

25  government welcomes the change of heart.

26

27  [3]     On January 3, 2020, the government received an additional 439.86 GB of Outlook 365 email

28  data from 15 additional custodians (5 of whom were identified by defendant Balwani as a priority).  The government is making every effort to produce responsive information from this batch by the week of January 13, 2020.

1                                           ***

2          The government is using all available resources to conduct an exhaustive search.  Its methods are

3    reasonable and will ensure a fair trial.  The defendants' claims of prejudice do not withstand scrutiny nor

4    do they answer the fundamental issue that FDA can only process data so fast.  The government shares

5    the Court's and the defendants' desire to expedite the process and is committed to doing that.  For these

6    reasons, the Court should grant the motion.

7    DATED:  January 9, 2020                          Respectfully submitted,

8                                                     ADAM A. REEVES
                                                      Attorney for the United States
9                                                     Acting Under Authority Conferred
                                                      by 28 U.S.C. § 515
10

11                                                          /s/

12                                                    _____
                                                      ROBERT S. LEACH
13                                                    JEFF SCHENK
                                                      JOHN C. BOSTIC
14                                                    VANESSA BAEHR-JONES
                                                      Assistant United States Attorneys
15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 18-CR-258 EJD |
| ) | |
| Plaintiff, ) | DECLARATION OF MARCI B. NORTON |
| ) | |
| v. ) | |
| ELIZABETH HOLMES and RAMESH ) | |
| "SUNNY" BALWANI, ) | |
| ) | |
| Defendants. ) | |

Pursuant to 28 U.S.C. § 1746, I, Marci B. Norton, declare as follows:

1.      I am a Senior Counsel at the Office of Chief Counsel ("OCC") at the U.S. Food

and Drug Administration ("FDA").  I represent FDA in the above-captioned matter ("criminal

case") and in the related matter, *Securities and Exchange Commission v. Ramesh "Sunny"*

*Balwani*, 5:18-cv-01603-EJD ("SEC case").  The statements herein are based on my personal

knowledge or review of the case record.

2.      FDA received a subpoena in the SEC case from Mr. Balwani's counsel dated

September 12, 2018.  FDA received a "re-issued" subpoena in the same case from Mr. Balwani's

counsel dated March 15, 2019.

3.      The subpoenas issued by Mr. Balwani's counsel in the SEC case directed FDA to

produce twenty (20) categories of documents including but not limited to "[a]ll DOCUMENTS

and COMMUNICATIONS referring or relating to THERANOS, HOLMES, or BALWANI"

("Request No. 1") generally for the time period of January 2010 to June 2018.

4.      FDA made its first production of documents responsive to Mr. Balwani's

subpoenas on or about October 15, 2018.  It made subsequent productions on or about October

1

17, 2018; October 19, 2018; October 24, 2018; July 10, 2019; August 16, 2019; August 23, 2019; August 30, 2019; September 25, 2019; October 1, 2019; October 8, 2019; October 9, 2019; and October 24, 2019.

5. Defendant Holmes filed a motion to compel in the criminal case on or about April 15, 2019, which Defendant Balwani joined the following day, seeking six categories of documents from FDA and other agencies. FDA interpreted the six categories of documents to be encompassed by Request No. 1 of Mr. Balwani's subpoenas in the SEC case.

6. On or about August 5, 2019 – after a supplemental protective order for FDA's documents was entered in the criminal case and the Theranos assignee had provided a waiver authorizing FDA to produce Theranos's confidential commercial and trade secret information to the parties in the criminal case – FDA provided Defendant Holmes a copy of all previous productions it had made to Defendant Balwani in the SEC case. On or about that time, FDA also authorized Defendant Balwani to use all prior FDA productions in the criminal case. All productions referenced above in Paragraph 4 of this Declaration were also provided to the Defendants for use in the criminal case.

7. FDA produced over 60,000 pages to Defendants in the criminal case by October 24, 2019. This page count does not include pages that were produced with slipsheets stating "intentionally withheld" or "technical issue."

8. This Court initially ordered FDA to produce documents to Defendants responsive to the motion to compel by October 2, 2019. By that deadline, FDA had produced all responsive, non-privileged, and non-duplicative emails and other documents that it had collected from more than 65 custodians to Defendants. FDA explained in its October 30, 2019 letter to the parties' counsel that the only documents remaining to be produced after October 2 were (a)

documents from FDA's Office of Chief Counsel, (b) documents identified as containing foreign language or technical issues, and (c) a subset of documents from two custodians who were former employees, due to technical difficulties during collection.

9.      On October 2, 2019, the Court ordered FDA to complete its production by October 25, 2019.  By that deadline, as FDA explained in its October 30, 2019 letter to the parties' counsel, FDA had produced the responsive, non-privileged, and non-duplicative documents from subsets (a), (b), and (c) referenced in Paragraph 8 of this Declaration, except for some documents with remaining technical issues and fewer than 300 additional documents attributable to custodian Alberto Gutierrez that needed to be reviewed after it was determined that FDA could not repair his damaged archived email file.  The same letter also stated that FDA was working on collecting, searching, processing, and reviewing documents from 14 additional custodians that Defendants had requested <u>after</u> the FDA's October 1st production.

10.     On or about October 25, 2019, it came to my attention that, for approximately 18 of the over 65 original custodians, documents from their network drive needed to be collected, reviewed, and produced.  FDA began collecting those documents shortly thereafter.

11.     On November 4, 2019, I, along with my colleague, Jaclyn E. Martínez Resly, participated in a hearing before the Court regarding, among other things, the status of FDA's productions and Defendants' arguments regarding alleged deficiencies with FDA's productions. When asked at the hearing whether FDA could meet an end-of-year production deadline if additional search terms were added, we stated that the Agency would do its best to do so but that if the new terms would require re-collection of documents from custodians, FDA would not be able to do so by the end of 2019.  Our statements contemplated employing FDA's typical collection methods as described in more detail in Paragraph 12 of this Declaration.

12.     Prior to November 2019, FDA had asked currently-employed custodians to self-collect potentially responsive documents and had undertaken – or in the case of the custodians newly identified by Defendants in October, begun – electronic collection for only a minority of the custodians (approximately twenty-three (23), many of whom were former employees).  For FDA, self-collection is the typical method employed for discovery in litigation matters and for responding to Freedom of Information Act requests as the best match for FDA's current resources and capabilities.  Self-collection is currently faster for FDA than electronic collection because self-collection allows for concurrent collection by individual custodians, whereas electronic collection at FDA's current level of deployment is subject to technological limitations that, using almost all available resources, can at best, deliver a limited number of custodians per week from one source (e.g., email).

13.     The electronic collection now being employed for the vast majority of the custodians, including for the former employees who are not able to self-collect their documents, is the single largest roadblock FDA faced in meeting the Court's December 31, 2019 deadline to produce responsive documents collected with the new search terms.

14.     FDA has devoted substantial resources to meeting each of the Court's production deadlines.  For example, it sought and obtained access to an electronic document review platform through a special arrangement with the U.S. Department of Health and Human Services; expended more than an estimated 2,600 combined employee hours on document review and production through October 2019; assigned to the cases two OCC staff attorneys (including myself), two paralegals, and e-Discovery counsel who has more than 15 years' experience in electronic discovery; and at one time diverted over 25 FDA employees from their normal duties to assist the information disclosure team in reviewing collected documents for responsiveness

and privilege.  Moreover, FDA worked extensively with the prosecutors and FDA's eDiscovery

team since the November 5, 2019 Order to, among other things, strategize the swiftest means of

electronically collecting documents to provide to the prosecutors pursuant to the Court's

November 5 and December 2, 2019 Orders; outsourced responsiveness review to the U.S.

Department of Justice; and devoted nearly all OCC eDiscovery and information technology

resources – including over the end-of-year holiday period – to collecting documents,

notwithstanding demands from other pending cases.


     I declare under penalty of perjury that the foregoing is true and correct.


Executed on January 9, 2020.


                                _____

                                Marci B. Norton
                                Senior Counsel
                                United States Food and Drug Administration