JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD-SVK<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SUPERSEDING INDICTMENT FOR LACK OF NOTICE AND, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**<br><br>Date:    February 10, 2020<br>Time:   10:00 AM<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

# TABLE OF CONTENTS

Page

I. THE COURT SHOULD DISMISS THE INDICTMENT FOR FAILURE TO PROVIDE ADEQUATE NOTICE. ...................................................................................1

    A. The Government's Three Oppositions Confirm That the Indictment Fails To Provide Adequate Notice. ...............................................................................2

    B. The Indictment Should Be Dismissed for Lack of Notice. ..................................5

II. THE COURT ALTERNATIVELY SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS. ........................................................................6

    A. Ms. Holmes Is Entitled To a Bill of Particulars. ..................................................7

    B. The Bill of Particulars Should Contain Each of the Four Categories Requested by the Defense. ...............................................................................10

    C. This Court's Prior Cases Are Easily Distinguishable. ........................................13

CONCLUSION ...............................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Cleveland v. United States*, 531 U.S. 12 (2000) ........................................................................ 2

*McNally v. United States*, 483 U.S. 350 (1987) ..................................................................... 2, 5

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................... 1, 2, 3, 6

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ...................................................... 7, 9

*United States v. Buckley*, 689 F.2d 893 (1982) ........................................................................... 5

*United States v. Caine*, 270 F. Supp. 801 (S.D.N.Y. 1967) ........................................................ 7

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ......................................................... 11

*United States v. Feil*, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) .................................... 9, 11

*United States v. Halbert*, 640 F.2d 1000 (9th Cir. 1981) ............................................................ 2

*United States v. Lustiger*, 386 F.2d 132 (9th Cir. 1967) ............................................................. 3

*United States v. McDonald*, 209 F. App'x 748 (10th Cir. 2006) ................................................. 4

*United States v. Morgenstern*, 933 F.2d 1108 (2d Cir. 1991) ..................................................... 4

*United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) (per curiam) .......................................... 3

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) ..................................................................... 3

*United States v. Steffen*, 687 F.3d 1104 (8th Cir. 2012) ............................................................. 4

*United States v. Tam*, 2017 WL 3782752 (N.D. Cal. Aug. 31, 2017) ...................................... 12

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) .................................................... 7, 8, 10

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) ............................................................... 2

*Will v. United States*, 389 U.S. 90 (1967) ...................................................................... 7, 10, 11

## OTHER AUTHORITIES

Fed. R. Crim. P. 7 ......................................................................................................................... 9

Fed. R. Evid. 801 .................................................................................................................. 11, 12

Local Rule 16-1 ..................................................................................................................... 11, 12

A criminal trial is not a game of whack-a-mole in which a defendant must respond to new or "shift[ing] . . . theor[ies] of criminality" on the fly. *Russell v. United States*, 369 U.S. 749, 768 (1962). The Constitution guarantees a criminal defendant a sufficient description of the charges in the indictment. This constitutional safeguard enables the defendant to prepare her defense and ensures that any possible resulting conviction is based on facts that were presented to the grand jury. The Indictment against Ms. Holmes does neither.

The government's opposition to Ms. Holmes' motion to dismiss the indictment for lack of notice and motion for a bill of particulars (Dkt. No. 265) only highlights the Indictment's defects. The Indictment charges Ms. Holmes with engaging in a scheme to defraud by making false and misleading statements. *See, e.g.*, Indictment ¶¶ 12, 15, 20, 22. The government now asserts that it has charged a scheme to defraud based on something other than false statements—but it does not identify what that something else is. It incredibly claims that it can base a wire-fraud charge on what it calls "implicit representations," a theory that would criminalize broad swathes of conduct that is currently the domain of state-law civil liability. And it suggests that it can pursue Ms. Holmes on an omission theory without disclosing the alleged omissions at issue.

The Constitution does not permit the government to pursue a criminal case on these vague theories of criminality. It is especially critical that the Indictment provide adequate notice here, where the government has charged a conspiracy of exceptional breadth, covering a boundless set of statements and many hundreds or thousands of alleged victims. The government failed to return an indictment that provides the requisite notice to Ms. Holmes. The Indictment therefore should be dismissed. Alternatively, and at a minimum, particularly in light of the staggering volume of discovery in this case, the Court should exercise its broad discretion to order a bill of particulars.

**I.     The Court Should Dismiss the Indictment for Failure To Provide Adequate Notice.**

In *Russell v. United States*, the Supreme Court reversed a conviction that resulted from a "cryptic" indictment that failed to apprise the defendant of the "nature of the accusation against him." 369 U.S. at 766-67. The Court observed that the vague indictment impermissibly "left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

vicissitude of the trial and appeal." *Id.* at 768.  As the government's opposition makes plain, this Indictment is constitutionally defective for the same reason.  The new and shifting theories of criminality offered by the government in its opposition confirm that Ms. Holmes cannot fairly defend this case based on this Indictment.

### A. The Government's Three Oppositions Confirm That the Indictment Fails To Provide Adequate Notice.

The new theories of criminality and new allegations in the government's opposition briefs emphasize the need for a constitutionally adequate indictment.

1. First, throughout its three oppositions, the government claims to be charging a "scheme to defraud" that does not involve statements.  *E.g.,* Dkt. No. 265 ("Opp'n") 1, 11-12.  But the Indictment provides no notice of such a scheme; to the contrary, it repeatedly premises its allegations on the making of false and misleading representations.  Indictment ¶¶ 11, 12, 15, 20, 22.  To the extent the government now claims that Ms. Holmes engaged in a scheme to defraud by conduct other than the making of statements, it provides no inkling of what that conduct was.

The government offers two arguments in support of its no-statement scheme-to-defraud theory.  The first is that the wire-fraud statute operates in the disjunctive, independently criminalizing both "schemes to defraud" and schemes "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  Opp'n 11-12.  It principally rests this argument on the Ninth Circuit's decision in *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981), which read the statute disjunctively.  *Halbert*, however, preceded the Supreme Court's decisions in *McNally v. United States*, 483 U.S. 350 (1987), and *Cleveland v. United States*, 531 U.S. 12 (2000), in which the Supreme Court rejected a disjunctive reading of the analogous mail-fraud statute.  *See, e.g.*, *Cleveland*, 531 U.S. at 26 ("reject[ing]" a "disjunctive" reading of the statute and explaining that the "second phrase simply modifies the first").[1]

Second, the government argues more generally that the scheme element of the wire-fraud statute

---

[1] The government also cites *United States v. Woods*, 335 F.3d 993, 1000 (9th Cir. 2003), for this proposition, but *Woods* cited *Halbert* for the disjunctive reading of the statute in a footnote, without acknowledging the intervening decisions of the Supreme Court.  *Id.* at 1000 n.4.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

does not require a specific false statement. To be sure, a defendant may convey a material falsehood by means other than a specific false statement, *see, e.g.*, *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (per curiam) (check kiting); *United States v. Lustiger*, 386 F.2d 132, 138 (9th Cir. 1967) (deceptive photographs and maps), although these cases focused on conduct that is the exception and not the norm. But, with the arguable exception of Indictment paragraph 12(C), the Indictment does not allege any facts that would support such a theory in this case.[2] To the extent the government attempts to provide any details, they go to a scheme to deprive individuals of money or property based on false or misleading statements. *See, e.g.*, Opp'n 3 ("Defendants' scheme to defraud involved the following representations, each of which Defendants knew to be false."); 8 (the Indictment "describes[s] at least nine particular false statements that Defendants repeated to victims throughout the relevant time period").

Because the government charged a scheme based on false and misleading statements, it cannot avoid its constitutional obligation to inform Ms. Holmes of what those statements are on the ground that it could have charged a scheme based on different conduct. *See United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("Because the requirement of a sufficient indictment serves these important purposes, the indictment must be considered as it was actually drawn, not as it might have been drawn."). And, if the government continues to shift theories at trial in an attempt to prove a scheme to defraud based on something other than false or misleading statements, that will create an independent constitutional problem requiring reversal of any resulting conviction. *See Russell*, 369 U.S. at 767-70.

2.  In a related vein, the government claims to be basing its purported scheme to defraud doctors and patients in part on what it calls "implicit misrepresentations" of accuracy and reliability. Opp'n 3, 10-11. What on earth does that mean? Neither the Indictment nor the opposition provides any answer. How is Ms. Holmes supposed to prepare a defense to a charge that she "implicitly" misrepresented the accuracy and reliability of Theranos' blood tests without notice of what that means? The government suggests in places that a representation of accuracy and reliability is implicit in the fact

---

[2] The only passage of the Indictment that arguably alleges a conduct-based scheme is paragraph 12(C), involving "technology demonstrations." The remaining paragraphs refer to *representations*.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

3

that Theranos provided the tests to the marketplace. *E.g.*, Opp'n To Mot. To Dismiss Counts Two and Nine Through Eleven, Dkt. No. 267, at 7. But that theory sounds in civil-law breach-of-implied-warranty principles—not wire fraud. The government cites *no* case holding that such "implicit representations" can support a wire-fraud conviction.[3] To the contrary, it is well-settled that silence, without more, is not wire fraud, meaning that the government cannot "imply" a representation from nothing. *See United States v. Steffen*, 687 F.3d 1104, 1116-17 (8th Cir. 2012) (rejecting "implied misrepresentation" theory in wire-fraud case based on silence). The government cannot validly prosecute Ms. Holmes on a theory of "implicit representations," and even if this Court were to hold otherwise, the Indictment does not provide any (let alone adequate) notice of what those are.

      3.     The government's oppositions also contain new allegations absent from the Indictment. *See, e.g.*, Reply in Supp. of Mot. To Dismiss Counts Two and Nine through Eleven at 2-3, 9 (discussing new allegations related to the doctor and patient counts). As one example, in its opposition to this motion, the government claims that "[a] doctor who had experience with Theranos reported that the company told him that their device was FDA-approved and that it had met all the national laboratory standards." Opp'n 6. The government conspicuously does not tie this alleged statement to Ms. Holmes. The Indictment does not allege that Defendants told doctors that Theranos' device was FDA approved; to the contrary, it alleges that Ms. Holmes told investors that Theranos was *applying* for FDA approval voluntarily. Indictment ¶ 12(F). Nor does the Indictment allege that she made any representations about "national lab standards."

      4.     Finally, as Ms. Holmes discusses in more detail elsewhere, the government for the first time suggests that even truthful speech is part of Defendants' scheme to defraud, on the apparent theory that it is unlawful to make truthful statements about one aspect of a company's business without disclosing other, less profitable parts of a company's business. *See* Reply in Supp. of Mot. To Dismiss Superseding Indictment for Failure To Allege Falsity at 6-7. That novel theory appears nowhere in the

---

[3] The only cases cited by the government on this point stand for the unrelated proposition that the act of cashing or depositing a check can constitute a scheme to defraud for purposes of the bank-fraud statute. Opp'n 10 n.9 (citing *United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991); *United States v. McDonald*, 209 F. App'x 748, 751 (10th Cir. 2006)).

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK
4

1 Indictment, would effect a breathtaking expansion of the federal wire-fraud statute, and risks trampling the constitutionally protected right to engage in truthful commercial speech. *See id.*

### B. The Indictment Should Be Dismissed for Lack of Notice.

In the circumstances of this case, the Indictment must allege the specific false statements at issue to provide the constitutionally required notice. *See* Mot. 2-8. The government argues that it has alleged "[t]he substance of the misrepresentations and the identities of the targets," and that such allegations suffice. Opp'n 8. As an initial matter, the Indictment does not in fact identify the targets, other than to identify broad categories of targets (investors, doctors, and patients), whom the government has claimed elsewhere number in the hundreds or thousands. The government's argument thus fails even on its own terms.

The Indictment's paraphrasing of the substance of the alleged misrepresentations similarly does not suffice. Although the government nitpicks the cases cited by Ms. Holmes dismissing indictments, the government cites *no* case involving allegedly false statements that upheld an indictment in similar circumstances.[4] And, for the reasons already set forth, the government's attempts to paraphrase inject significant ambiguities into the Indictment. For example:

1. The government argues that any ambiguity regarding which "proprietary analyzers" are at issue in paragraph 12(A) is irrelevant because none of Theranos' "devices" were capable of "doing the things Defendants claimed they could do." Opp'n 9. But the defense is entitled to sufficient notice to rebut this claim by the government. The government's omnibus allegation in paragraph 12(A) lumping together different forms of technology that were used at different points in time does not sufficiently identify the statements at issue.

2. The government ignores the crux of Ms. Holmes' argument about paragraph 12(D)—that the Indictment's use of the vague words "that is" renders it unclear whether the government is claiming

---

[4] The government principally relies on *United States v. Buckley*, 689 F.2d 893 (1982), which involved a mail-fraud charge alleging that the defendant *omitted* contributions to state legislators on a lobbyist disclosure form. *Id.* at 895-96. The court found the indictment "barely sufficient" even though it did not identify the specific payments that were omitted. *Buckley*'s discussion of the mail-fraud allegations in that case is of limited utility given that the Supreme Court has abrogated this "honest services" theory of mail fraud. *See McNally*, 483 U.S. at 356.

that Defendants actually told investors that "Theranos would soon dramatically increase the number of Wellness Centers within Walgreen Stores" or whether this phrase reflects the government's ambitious and desired interpretation of an otherwise truthful representation about an "expanding partnership." Mot. 6.

3. The government similarly misses the point with respect to paragraph 12(F), relating to the FDA. The Indictment does not identify the specific words used by Defendants when they supposedly told investors that "Theranos did not need [FDA] to approve its proprietary analyzer and tests." Indictment ¶ 12(F). The government does not dispute that at the relevant time the FDA had "generally not enforced applicable statutory and regulatory provisions with respect to [laboratory developed tests]." Mot. 7. To determine whether Defendants' alleged statements were false or misleading against this ambiguous regulatory backdrop, it is necessary to know the precise words used.

4. Finally, the government admits that its use of the vague verb "held . . . out" in paragraph 15 of the Indictment was intended to convey the idea that Defendants made "implicit claims" about the (undefined) accuracy and reliability of the blood tests. Opp'n 10-11. For the reasons set forth above, this "implicit representation" claim is not a valid theory of wire fraud and is not adequately alleged in the Indictment.

*   *   *

The ambiguity in what is actually at issue here is intolerable. The Constitution requires an adequately detailed indictment to protect defendants against the shifting theories of criminality exposed by the government's opposition. Ms. Holmes does not know what she is defending against and cannot adequately prepare her defense.

## II. The Court Alternatively Should Order the Government To Provide a Bill of Particulars.

In the alternative, the Court should order a bill of particulars. In its opposition, the government seemingly suggests that if the Indictment is adequate, there is no need for a bill of particulars. Opp'n 1, 13. That is not the law. Because a bill of particulars cannot save a defective indictment, *Russell*, 369 U.S. at 770, a court only reaches the question whether to order a bill of particulars if the indictment provides the minimum notice required to satisfy the Constitution. Here, even if the Court holds that the

Indictment provides adequate notice, the Court should still exercise its "broad discretion" to order a bill of particulars to enable Ms. Holmes to prepare her defense. *Will v. United States*, 389 U.S. 90, 98-99 (1967).

      **A.**      **Ms. Holmes Is Entitled To a Bill of Particulars.**

Numerous factors—some of which the government ignores or barely discusses—weigh in favor of a bill of particulars here. *See* Mot. 9-10.

First, the Indictment does not allege the specific misrepresentations at the heart of the case. *See* pp. 5-6, *supra*. In cases less substantial than this one in scope and complexity, courts have ordered the government to identify the specific false or misleading statements. *See* Mot. 10-11 (citing cases). The government cites no contrary cases involving allegedly false statements, and its attempts to distinguish Ms. Holmes' cases are unavailing. Three examples suffice:

In *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), the government charged the defendants with falsifying burglaries as part of a mail-fraud scheme but did not identify the specific burglaries at issue. *Id.* at 574-75. So too, here, the government has refused to tell the defense which specific statements are allegedly false. The government seizes on the court's statement that counsel for one of the defendants "was particularly susceptible to being waylaid by such a tactic as he had only four days within which to prepare a defense," but that ambiguous remark was just one factor in the court's analysis, and the court found that the bill of particulars was required with respect to both defendants. *Id.*

In *United States v. Caine*, 270 F. Supp. 801 (S.D.N.Y. 1967), the indictment charged the defendant with offering in an advertisement to sell certain fish lures and then failing to provide any lures or providing nonconforming lures. *Id.* at 803. The court required the government to identify "every representation in the alleged advertisement which is charged to be false and misleading" and "the respects in which it is claimed that the fish lures furnished by the defendant to others were not as described in the advertisement." *Id.* at 806-07. The universe of potential statements at issue here is far more expansive than the lone advertisement in *Caine*. Yet even there the court required the government to identify the *specific* statements alleged to be false.

As relevant here, the government does not address *United States v. Trie*, 21 F. Supp. 2d 7

(D.D.C. 1998), which involved allegations that the defendant made false statements to the government. As here, the government's allegations regarding the false statements were "enigmatic." *Id.* at 13, 21. The court required the government to identify the specific false statements, noting that "[a] defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government know precisely the statements on which it intends to rely." *Id.* at 21

The government's oppositions heighten the need for a bill of particulars identifying the allegedly false and misleading representations and the reasons for their falsity. The government concedes that a bill of particulars may appropriately instruct the government to disclose "the theory of [its] case." Opp'n 13 (internal quotation marks omitted). If the government's oppositions make one thing clear, it is that the government has not committed itself to a theory. For example, as set forth above, the government's oppositions offer new alleged misrepresentations absent from the Indictment. The government now claims that Ms. Holmes defrauded people by doing something other than making false or misleading statements. And the government now claims to base its case in part on supposed "implicit" representations without identifying a basis for implying such representations. Defendants cannot fairly try this case on this thin Indictment without further detail regarding the government's case.

Second, the alleged conspiracy and scheme to defraud in this case are vast in both duration and scope; they span at least three years and implicate the operations of a company that employed many hundreds of people. The government offers no response to this point.

Third, given the scope of the government's case, there are countless potential witnesses. The government has previously represented that there are "hundreds" of victims in this case. It now claims that there are potentially "thousands" of patient victims. By Ms. Holmes' count, the government has interviewed more than 120 potential witnesses, many of whom it interviewed more than once, and it represents that it is still interviewing more. Opp'n 17. And this does not include those witnesses that the government has not interviewed who may be helpful to Ms. Holmes in rebutting the government's claims.

Contrary to the government's claims, the defense cannot ascertain the alleged misrepresentations

at issue simply by reading the FBI's interview memoranda. Opp'n 17. The government's case rests on more than just direct representations by Defendants to the alleged victims. The government claims that Defendants made misrepresentations in statements to the media, on the Theranos website, and in advertisements and marketing materials. Indictment ¶¶ 12(I), 15. The government undoubtedly knows the documents and statements to which it is referring in these paragraphs of the Indictment, and there is no good reason not to require their disclosure.

Fourth, discovery in this case is massive. The government has produced more than 20 million pages of documents, not counting the ongoing CMS and FDA productions. The government has cited *no* case in which a court held that a production of that magnitude negated the need for a bill of particulars. Ms. Holmes, by contrast, cited several cases holding that voluminous discovery (involving volumes of discovery far less than here) cuts strongly in favor of a bill of particulars. Mot. 9. The government calls these cases "not instructive" but offers almost no reasoning. Opp'n 16. The cases are instructive; they recognize that it is unfair to expect defendants to glean the government's case from massive productions without a bill of particulars. *See, e.g.*, *Bortnovsky*, 820 F.2d at 575 (rejecting the argument that "providing mountains of documents to defense counsel" negated the need for a bill of particulars).

The government responds that the defense's request for a bill of particulars is untimely. Opp'n 15. But under Rule 7 the Court may permit a defendant to seek a bill of particulars more than fourteen days after arraignment. *See* Fed. R. Crim. P. 7. Given the scope and length of these proceedings, it was appropriate for Ms. Holmes to move for a bill of particulars at the same time as she moved to dismiss the Indictment, especially given the significant overlap between the motions. Ms. Holmes appropriately waited until after the close of Rule 16 discovery to file her motion. If she had moved earlier, the government likely would have responded that Rule 16 discovery was still ongoing and the request was therefore premature. The government cites no case denying a bill of particulars on this ground; to the contrary, another court in this District rejected the same timeliness argument. *See United States v. Feil*, 2010 WL 1525263, at *2 (N.D. Cal. Apr. 15, 2010).

Finally, the government tellingly reveals its real objection to a bill of particulars: it does not

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

9

want to "freez[e] the government's case as a result of the rule that the evidence at trial must conform to the bill." Opp'n 13 (internal quotation marks omitted). But the government's desire for the widest possible latitude in proving its case based on the allegations in the Indictment (not to mention its attempts to move beyond the Indictment as exemplified by the new and shifting theories in its oppositions) cannot override Ms. Holmes' need for this information to prepare her defense in this complex, sweeping case. And the Court could permit timely, reasonable amendments to the bill of particulars should the government truly discover new information before trial that it has not already learned in its four-year investigation. *See Trie*, 21 F. Supp. 2d at 23 (rejecting similar concern expressed by government).

### B. The Bill of Particulars Should Contain Each of the Four Categories Requested by the Defense.

The government should be required to disclose each of the following categories of information in a bill of particulars:

1. *Details regarding fraudulent representations*. For the reasons set forth above, the government should be required to disclose various details regarding the allegedly false and misleading representations alleged to have been made by Ms. Holmes and her co-conspirators. Mot. 10-11; *see* pp. 7-10, *supra*.[5]

2. *Names of investor, doctor, and patient victims who may testify*. The government objects to disclosure of the names of investor, doctor, and patient victims who may testify on the ground that this request is "premature" and "duplicative" of the deadline for the government's witness list. Opp'n 17. The Supreme Court rejected a similar argument in *Will*, a case the government ignores. In *Will*, the Court held that the district court had properly required the government to disclose in a bill of particulars the names of individuals to whom the defendant had made the at-issue statements. 389 U.S. at 92. The Court recognized that "it is not uncommon for the Government to be required to disclose the

---

[5] This would include, with respect to paragraph 16 of the Indictment, the particular tests that the government claims Theranos was not capable of consistently producing. Ms. Holmes should not be required to develop her defense with respect to every single blood test Theranos ever developed if the government claims that only some of them were not consistently accurately or reliable.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial." *Id.* at 99.  And it specifically rejected the argument that the compelled disclosure amounted to a witness list, observing that "while the two categories have a clear probable overlap, they are not co-extensive." *Id.* at 100-01.  Ms. Holmes would have been justified in requesting disclosure of *every* allegedly deceived victim known to the government.  But given that the government has said that the supposed victims number in the hundreds (and now thousands), Ms. Holmes narrowed her request to the victims who "may" testify at trial.  Her restraint in narrowing her request to the alleged victims who may testify is no reason to reject the request.

The government also responds that the defense can identify the potential victims from discovery.  But, again, the government has said that there are hundreds or thousands of potential victims.  The government has interviewed more than 120 witnesses and continues to interview more.  It knows which supposed victims may testify.  To help the defense to attempt to identify the statements at issue, the government should disclose now the claimed victims that may testify.

3. *Identities of co-conspirators.*  Without knowing the identities of any alleged co-conspirators, Ms. Holmes cannot possibly identify the universe of allegedly false statements at issue.  For that reason, *United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985), cited by the government, does not help the government.  There, the defendants were unable to identify any prejudice resulting from the denial of the bill of particulars.  *Id.* at 898.  The government offers no persuasive response to the numerous cases cited by Ms. Holmes in which courts ordered a bill of particulars identifying alleged co-conspirators.  *See* Mot. 12 (citing cases).  It offers no response to *Feil*, 2010 WL 1525263, a post-*DiCesare* case from this district that ordered disclosure of the names of co-conspirators where the alleged conspiracy spanned many years and the government had produced over 70,000 pages in discovery.  *Id.* at *3.  Here, there are hundreds of potential alleged co-conspirators, as Theranos employed hundreds of people during the time period of the alleged conspiracy.  Ms. Holmes should not have to guess which of these people the government deems a co-conspirator.

The government invokes this Court's Criminal Local Rule 16-1(c)(4), which requires disclosure by May 1 of a "summary of any statement the government intends to offer under F. R. Evid.801(d)(2)(E)

in sufficient detail that the Court may rule on the admissibility of the statement." It is unclear that this Local Rule will ameliorate the lack of notice to Ms. Holmes. Rule 801(d)(2)(E) permits the government to introduce for the truth of the matter asserted a statement "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). If the government is committing to identifying on May 1 each allegedly false or misleading statement made by an alleged co-conspirator, Ms. Holmes would welcome such a disclosure. But the government might argue that it does not need Rule 801(d)(2)(E) to introduce such statements into evidence, because these allegedly false or misleading statements would not be offered "to prove the truth of the matter asserted in the statement" and thus would not be hearsay even without resort to the co-conspirator exception. Fed. R. Evid. 801(c)(2). It thus appears that Local Rule 16-1 may not protect Ms. Holmes from the prejudice resulting from the government's refusal to identify alleged co-conspirators.

   4. <u>*Details regarding duty to disclose and material omissions*</u>. The government should be required to disclose the material omissions to which it refers generically in the Indictment. Mot. 12-13; *see United States v. Tam*, 2017 WL 3782752, at *5 (N.D. Cal. Aug. 31, 2017). The government claims that the Indictment "already alleges the facts that Defendants withheld from victims," but the examples the government cites are allegations regarding why Defendants' statements were allegedly false. *See* Opp'n 19 (citing Indictment ¶¶ 12(D), (G)). The Indictment gives no indication of the basis for its omission theory. In any event, the new allegations offered by the government in its oppositions produce little confidence that the government views the Indictment as providing a comprehensive list of alleged omissions.

   The government also should be required to disclose any facts giving rise to an alleged duty to disclose. The government claims that it "is not required to plead or prove the existence of a trust relationship creating a duty to disclose when a defendant uses misleading half-truths in a scheme to defraud." Opp'n 19. But, in a separate opposition, the government claims that a trust relationship did exist between Defendants and investors. *See* Opp'n To Mot. To Dismiss the Superseding Indictment In Part for Failure To Allege Falsity, Dkt. No. 266, at 9 ("The government has also adequately alleged an *omissions theory* with respect to the investor fraud because there was a *duty of trust* where Defendants

purportedly acted for the benefit of investors . . ." (internal quotation marks omitted) (emphasis added)). Is the government claiming that a trust relationship existed that created an independent duty to disclose or is it not? Its opposition briefs are at war with each other on this point, and the Indictment itself provides no hint at an answer. This is all the more reason to require a bill of particulars

### C. This Court's Prior Cases Are Easily Distinguishable.

Finally, the government cites two prior cases in which this Court denied bills of particulars. Opp'n 19-20. Neither is instructive.

In *United States v. Choi*, No. 5:17-cr-308-EJD (N.D. Cal.), the defendant was charged with scheming to defraud his company's employees. Indictment, Dkt. No. 1 ¶ 4. The universe of potential victims apparently consisted of the company's "nearly 20 employees." Opp'n to Def.'s Mot. for Bill of Particulars, Dkt. No. 24, at 2. In response to a request from the defense, the government identified "the five victims." Order, Dkt. No. 32, at 2. Discovery in the case amounted to 19,500 pages. Def.'s Reply, Dkt. No. 25, at 5. And the government produced a chart indicating "witnesses and discovery that would identify the statements and conduct the Government would use to establish the manner and means of the alleged scheme." Order, Dkt. No. 32, at 2. The government here has refused to identify the alleged victims of the claimed scheme, and the volume of discovery in this case is more than 1,000 times greater than in *Choi*.

*United States v. Stukenbrock*, No. 5:15-cr-34-EJD (N.D. Cal.), was a case that the government described as "unusual . . . in its simplicity." Opp'n to Def.'s Mot. for Bill of Particulars, Dkt. No. 135, at 2. The defendant solicited money from a lone victim to invest in seven partner companies. Indictment, Dkt. No. 1 ¶¶ 5-9. The defendant and victim executed stock purchase agreements identifying the partner companies, which the indictment listed by name. *Id.* The indictment charged the defendant with investing only $11.2 million of a total of $22 million in the partner companies and using the rest for personal expenses. *Id.* This Court described the alleged fraud as "not particularly complex or difficult to comprehend." Order, Dkt. No. 143, at 2. It is thus unsurprising that this Court denied a bill of particulars. The defendant had the sole victim's statements, as memorialized in FBI Form 302 forms, *id.* at 3, and presumably had the stock purchase agreements. Identifying the alleged

misstatements was as easy as reading the victim's statements and those agreements.

This case is vastly more complicated and involves a substantially more expansive record. Ms. Holmes cannot fairly be expected to prepare for trial by reviewing 20 million pages of documents to find what she can only guess are the allegedly false and misleading statements vaguely summarized in the Indictment.

## CONCLUSION

For the foregoing reasons and those set forth in the opening motion, the Court should dismiss the Superseding Indictment or, in the alternative, instruct the government to provide a bill of particulars.

DATED: January 27, 2020                                    Respectfully submitted,


/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

14

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2020, a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF NOTICE
CR-18-00258 EJD SVK

15