1   JOHN D. CLINE (CA State Bar No. 237759)
    50 California Street, Suite 1500
2   San Francisco, CA 94111
    Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3   Email: cline@johndclinelaw.com

4   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
    LANCE A. WADE (Admitted Pro Hac Vice)
5   AMY MASON SAHARIA (Admitted Pro Hac Vice)
    KATHERINE TREFZ (CA State Bar No. 262770)
6   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
7   Washington, DC 20005
    Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9   Attorneys for Defendant ELIZABETH A. HOLMES

10

11                         UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13                               SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,            )   Case No. CR-18-00258-EJD-SVK
                                         )
16          Plaintiff,                   )   **REPLY IN SUPPORT OF MOTION TO**
                                         )   **DISMISS SUPERSEDING INDICTMENT IN**
16                                       )   **PART FOR FAILURE TO ALLEGE FALSITY**
        v.                               )   **AND MOTION TO STRIKE**
17                                       )
    ELIZABETH HOLMES and                 )
18  RAMESH "SUNNY" BALWANI,              )   Date:      February 10, 2020
                                         )   Time:      10:00 AM
19          Defendants.                  )   CTRM:  4, 5th Floor
                                         )
20                                       )   Hon. Edward J. Davila
                                         )
21  _____     )

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     THE COURT SHOULD DISMISS THE INDICTMENT INSOFAR AS IT RELIES
       ON THE CHALLENGED STATEMENTS. ...............................................................1

       A.     The Government Invokes the Wrong Standard. ...........................................1

       B.     The Indictment Must Allege Facts that Support a Scheme To Defraud through
              False Statements...........................................................................................2

       C.     The Challenged Statements Are Not Adequately Alleged To Be False. ............4

       D.     The Government's Arguments Stretch the Wire-Fraud Statute Beyond Its
              Limits. ........................................................................................................6

II.    THE COURT SHOULD DISMISS THE INDICTMENT INSOFAR AS IT RELIES
       ON AN OMISSION THEORY. ...........................................................................7

       A.     The Indictment Fails Adequately To Allege any Material Omissions. ...............7

       B.     The Indictment Alleges No Duty To Disclose.............................................7

CONCLUSION.......................................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)............................6

*Cleveland v. United States*, 531 U.S. 12 (2000) ............................................................6

*Neder v. United States*, 527 U.S. 1 (1999)....................................................................3

*U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999) ..............................................6

*United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012) ..............................................7

*United States v. Carroll*, 2015 WL 2251206 (N.D. Cal. May 13, 2015)......................2

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) (per curiam).............................2

*United States v. Holden*, 806 F.3d 1227 (9th Cir. 2015) ..............................................2

*United States v. James*, 980 F.2d 1314 (9th Cir. 1970) ..............................................2

*United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) ............................................8

*United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017) ............................................3

*United States v. Lonich*, 2016 WL 324039 (N.D. Cal. Jan. 27, 2016).........................7

*United States v. Lustiger*, 386 F.2d 132 (9th Cir. 1967)..............................................3

*United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) (en banc) ......................8

*United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) (per curiam) .......................3, 4

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000).....................................................2

*United States v. San Diego Gas & Elec. Co.*, 2006 WL 3913457 (S.D. Cal. Nov. 21, 2006)....................2

*United States v. Shields*, 844 F.3d 819 (9th Cir. 2016)...........................................8, 9

*United States v. Spanier*, 744 F. App'x 351 (9th Cir. 2018)........................................9

*United States v. Steffen*, 687 F.3d 1104 (8th Cir. 2012) ............................................7

*United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016),
      *modified by* 838 F.3d 1168 (11th Cir. 2016)......................................................6

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) ............................................3, 4

*Williams v. United States*, 458 U.S. 279 (1982) ........................................................4

The Superseding Indictment (Dkt. No. 39) ("Indictment") charges a false-statement wire-fraud scheme in which three of the allegedly false statements conspicuously are not false.  When confronted with the truth of these statements, the government bobs and weaves from one contradictory theory to the next, while asserting that the law permits it to pick and choose how these truthful statements fit into the alleged schemes to defraud.  The Constitution, however, does not permit the government abruptly to change course in the middle of these criminal proceedings.  Ms. Holmes is entitled to a plain statement *in the Indictment* that informs her of the nature of the scheme with which she has been charged.  With respect to the three statements challenged in Ms. Holmes' Motion (Dkt. No. 205)—in Indictment paragraphs 12(D), 12(E), and 16—the Indictment fails to allege facts supporting the element of material falsity.  The Court should dismiss the Indictment insofar as it relies on these alleged statements and should strike the statements.

The Indictment also fails adequately to allege any material omissions or a duty to disclose necessary to pursue an omission theory.  The government's post-hoc attempts to patch those holes fail because the Indictment does not allege the novel theories in the government's opposition.  The Indictment alleges schemes to defraud investors, doctors, and patients through purportedly false or misleading statements made in the course of arms-length transactions.  That is insufficient to give rise to the wide-ranging disclosure duty the government invents in its opposition.  The Court should dismiss the Indictment insofar as it alleges an omission theory and it should strike all mentions of omissions and a duty to disclose.

## I.    The Court Should Dismiss the Indictment Insofar as It Relies on the Challenged Statements.

None of the government's arguments saves the challenged statements in paragraphs 12(D), 12(E), and 16 of the Indictment.

### A.    The Government Invokes the Wrong Standard.

As an initial matter, the government's opposition leans heavily on the standard for post-trial challenges to indictments that is more forgiving of pleading deficiencies.  *See* Dkt. No. 266 ("Opp'n") 4 ("An indictment must be *liberally construed in favor of validity* and it is only required that the necessary facts appear *in any form or by fair construction* in an indictment." (emphases added) (internal quotation

marks omitted)).  The cases the government cites for this standard demonstrate this error.  *See United States v. James*, 980 F.2d 1314, 1317 (9th Cir. 1970) ("When the sufficiency of the indictment is challenged *after trial*, it is only required that the necessary facts appear *in any form or by fair construction* can be found within the terms of the indictment." (first emphasis added) (internal quotation marks omitted)); *United States v. Holden*, 806 F.3d 1227, 1233 (9th Cir. 2015) (rejecting challenge to indictment raised "for the first time on appeal" under the *James* post-trial standard).  By contrast, "a defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial to object."  *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

The government's mistake infects its opposition, leading it to urge strained readings of the challenged statements and to raid unrelated allegations in the Indictment for helpful facts.  *See* Opp'n 6 (relying on "common sense" to defend Walgreens allegation), 7 (invoking the inapposite "any form" standard to support Department of Defense allegation).  Before trial, however, the question is not whether the government can scour an indictment for facts "in any form" to support deficient charges.  Rather, courts ask whether the indictment contains enough detail to satisfy the purposes of indictments, which include permitting pre-trial judicial review of the sufficiency of the charge.  *See, e.g.*, *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam).  Courts regularly dismiss indictments before trial that fail this test.  *See, e.g.*, *United States v. Carroll*, 2015 WL 2251206, at *1 (N.D. Cal. May 13, 2015); *United States v. San Diego Gas & Elec. Co.*, 2006 WL 3913457, at *10-12 (S.D. Cal. Nov. 21, 2006).

**B.    The Indictment Must Allege Facts that Support a Scheme To Defraud through False Statements.**

The government also argues that, because a scheme to defraud may rest on something other than false statements, its failure to allege material falsity in *this* Indictment cannot justify dismissal.  That is wrong.

According to the government, it may pursue a conviction "under different theories," by proving *either* "(1) a scheme or artifice to defraud, or (2) obtaining money or property by means of false or

1    fraudulent pretenses, representations, or promises." Opp'n 5. As an initial matter, to the extent the

2    government argues that these are "independent and alternate bas[e]s for conviction" under the wire-

3    fraud statute, *id.*, the Supreme Court has rejected that view, for the reasons set forth in Ms. Holmes'

4    reply in support of her motion to dismiss the indictment for lack of notice.

5            In any event, the general notion that a scheme to defraud may rest on something other than the

6    making of false statements does not help the government. It is well-settled that material falsehood is an

7    element of the wire-fraud statute. *Neder v. United States*, 527 U.S. 1, 25 (1999); *United States v.*

8    *Lindsey*, 850 F.3d 1009, 1013 (9th Cir. 2017). To be sure, as the Ninth Circuit has recognized, a

9    defendant may convey a material falsehood by means other than a specific false statement. *See, e.g.*,

10   *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (per curiam) (check kiting); *United States v.*

11   *Lustiger*, 386 F.2d 132, 138 (9th Cir. 1967) (deceptive photographs and maps). But the Indictment does

12   not allege that theory or contain facts to support such a theory. Indictment paragraph 12, which sets

13   forth the alleged scheme to defraud investors, states that "HOLMES and BALWANI made materially

14   false and misleading statements to investors and failed to disclose material facts," before paraphrasing

15   eight broad topics on which they allegedly made these statements. *See also* Indictment ¶ 11. The

16   alleged scheme to defraud doctors and patients is likewise premised on alleged "representations"—

17   namely, "explicit and implicit claims" in Theranos' "advertisements and marking materials." Indictment

18   ¶ 15. That is the theory of wire fraud that the government charged, and the failure to allege falsity of the

19   at-issue representations thus requires their dismissal.

20           The cases cited by the government do not hold to the contrary. In *United States v. Woods*, 335

21   F.3d 993 (9th Cir. 2003), the Ninth Circuit rejected the narrow argument that the government must

22   "prove a specific material false statement on which the jury unanimously agreed." *Id.* at 998. In so

23   holding, the Ninth Circuit observed that a scheme to defraud need not rest on a "specific false statement"

24   or a "specific omission," citing cases such as *Lustiger*, *supra*, which involved misleading photographs

25   and maps. *Id.* at 998-99. *Woods* says nothing about the government's obligation to plead material

26   falsity when it bases a scheme to defraud on false statements. The government's other case, *United*

27   *States v. Omer*, *did* involve a challenge to an indictment—and it dismissed the indictment for failure to

28

allege material falsehood.  395 F.3d 1087, 1089 (9th Cir. 2005).  *Omer* involved a bank-fraud prosecution for a check-kiting scheme.  *Omer* reaffirmed that a scheme to defraud need not involve a specific false statement.  *See id.*; *see also Williams v. United States*, 458 U.S. 279, 284-85 (1982) (check-kiting scheme does "not involve the making of a 'false statement'" because "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false'").  For that type of scheme, the court held, it would be sufficient to allege the scheme's overall material falsehood, which the indictment failed to do.  *See Omer*, 395 F.3d at 1089.

Neither *Woods* nor *Omer* is instructive.  Unlike in *Omer*, the government's allegations here center on allegedly materially false statements and/or omissions.  For the reasons that follow, the three at-issue statements are not materially false and thus are not actionable under the wire-fraud statute.

## C.     The Challenged Statements Are Not Adequately Alleged To Be False.

The Indictment does not allege facts that would make any of the challenged statements materially false or misleading.  *See* Mot. 3-6.

Paragraph 12(D) (Walgreens).  The indictment alleges that Defendants represented to investors that Theranos had an "expanding partnership" with Walgreens when, "in truth," the partnership "had stalled" by late 2014.  Indictment ¶ 12(D).  The government suggests that "a reasonable person" would assume that a representation that the partnership was "expanding" to mean that the relationship was "growing" when the statement was made, without pause.  Opp'n 6.  This reading ignores that the companies' relationship was in place for several years, evolved over time, and contemplated a state-by-state, stepped expansion.  A reasonable person would understand that a business partnership can be "expanding" even when temporarily "stalled."

The government's reading also ignores that the alleged statement concerns a present belief about future events.  The Indictment does not allege that the speaker did not believe that the planned expansion was unlikely to occur based on his/her knowledge of historical facts.  For this particular statement to be materially false or misleading, the speaker must have known that the partnership had "stalled" for reasons that were insurmountable, or at least made the future expansion unlikely or uncertain.  The Indictment does not allege such knowledge.

Paragraph 12(E) (Dep't of Defense).  The Indictment alleges that Defendants represented to investors that Theranos "had a profitable and revenue-generating business relationship" with the Department of Defense, when, "in truth," Theranos "had limited revenue from military contracts." Indictment ¶ 12(E).  These allegations plainly do not contradict each other.  The government barely attempts to defend this allegation on its own terms.  Rather, it immediately pivots to the assertion that "[t]his allegation must be read as part of the whole indictment, which describes a scheme in which Defendants grossly overstated their profits to investor victims."  Opp'n 7 (citing Indictment ¶ 12(B)). But the Indictment does not allege that Defendants overstated profits from the Department of Defense. The government also asserts in conclusory fashion that, "[c]onsidered in context, the falsity is clear," but it does not explain what context makes this truthful statement clearly false.  *Id.*

Paragraph 16 (Doctors and Patients).  The Indictment alleges that Defendants represented to doctors and patients that Theranos "could provide accurate, fast, reliable, and cheap blood tests and test results," when, "in fact," Theranos was "not capable of consistently producing accurate and reliable results."  Indictment ¶ 16.  As Ms. Holmes has explained, the government has failed to allege that Theranos could not provide accurate and reliable results—only that it could not do so "consistently." The government side-steps the problem posed by its insertion of the ambiguous term "consistently" into this allegation, mischaracterizing Defendants as arguing that "consistency" of tests "does not matter." Opp'n 7.  The fatal problem, which the government ignores, is that the term "consistently" is not defined in the Indictment.  All blood tests have error rates, a fact that must factor into the falsity of any representations about accuracy and reliability.  *See* Mot. 6 & n.1.  The Indictment does not define "consistently" or explain how the supposed inability "consistently" to produce accurate and reliable results rendered any representations false.

The government also attempts to defend all three challenged statements by recasting them as half-truths.  Opp'n 7-8.  The Indictment, however, does not adequately allege that the three challenged statements are half-truths because the facts as alleged by the government do not contradict or correct the alleged representations for the reasons set forth above.

**D.** **The Government's Arguments Stretch the Wire-Fraud Statute Beyond Its Limits.**

In its attempt to salvage these allegations, the government makes a breathtaking argument. According to the government, the challenged statements in paragraphs 12(D) and 12(E) are part of an allegedly fraudulent scheme no matter their literal truthfulness because they both "present[ed] the company in a favorable light to investors" and thus "helped perpetrate the scheme by inducing additional investment in the company." Opp'n 6. The government appears to argue now that the entire company existed as a scheme to defraud investors and that any truthful statements promoting the company are inherently fraudulent.

The Indictment does not allege that theory. In any event, this is not, and cannot be, the law of wire fraud. Deception is integral to the definition of fraud and is inherent in the federal statute. *See United States v. Takhalov*, 827 F.3d 1307, 1312 (11th Cir. 2016) (deception "is a necessary condition of defrauding" and a "defendant 'schemes to defraud' only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching" (internal quotation marks and alterations omitted)), *modified by* 838 F.3d 1168 (11th Cir. 2016). The government's expansive theory would transform all truthful speech promoting a company or product into evidence of a fraudulent scheme if the speaker is aware that the company faces other challenges. Courts have cautioned against the government's penchant for expanding the wire-fraud statute's reach to encompass activities that have little to do with the common-law concepts that motivate the statue. *See, e.g.*, *Cleveland v. United States*, 531 U.S. 12, 24 (2000). This Court should cut off this latest attempt by dismissing the indictment insofar as it relies on the challenged, truthful statements.

The government's contention that it can punish Ms. Holmes for truthful speech in the course of explaining Theranos' business to potential investors also runs straight into the First Amendment's protection of commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980) (commercial speech that is not misleading and concerns lawful activity is entitled to First Amendment protections); *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1233 (10th Cir. 1999) ("It is well established that nonmisleading commercial speech regarding a lawful activity is a form of protected speech under the First Amendment . . . ."). And in the criminal context, these issues

1   of protected commercial speech deserve "more careful scrutiny." *United States v. Caronia*, 703 F.3d

2   149, 165 (2d Cir. 2012) (vacating conviction based on protected commercial speech).  The government

3   should not be allowed proceed to trial on a theory that truthful speech is punishable because of the

4   substantial risk that Ms. Holmes will be punished for exercising her First Amendment rights.

5   **II.      The Court Should Dismiss the Indictment Insofar as It Relies on an Omission Theory.**

6   　　　　The government alternatively labels its flawed allegations false statements, half-truths, and

7   material omissions in its opposition.  Opp'n 7-9.  For the reasons set forth above, the government cannot

8   salvage the challenged statements as either material falsehoods or half-truths.  And the government's

9   resort to an omission theory to defend the challenged statements fails for the independent reason that the

10  Indictment fails to allege a duty to disclose to support an omission-based theory.  This defect permeates

11  the entire Indictment and not just the three allegations discussed in Part I, *supra*.  Consequently, the

12  Court should dismiss the Indictment insofar as it relies on an omission theory.

13  　　　　**A.      The Indictment Fails Adequately To Allege any Material Omissions.**

14  　　　　As an initial matter, as it pertains to the alleged scheme to defraud investors, the Indictment

15  references material omissions and a duty to disclose only in boilerplate recitations of the statutory

16  elements.  *See, e.g.*, Indictment ¶¶ 11, 13, 15.  Without any supporting factual allegations, the

17  government cannot proceed on an omission theory for that alleged scheme.  *See, e.g.*, *United States v.*

18  *Lonich*, 2016 WL 324039 (N.D. Cal. Jan. 27, 2016); *see also United States v. Steffen*, 687 F.3d 1104,

19  1116 (8th Cir. 2012) (dismissing indictment for failure to allege omissions).  The Indictment's

20  allegations concerning omissions in the alleged scheme to defraud doctors and patients are likewise

21  lacking.  *See* Indictment ¶ 15 (alleging only nonspecific "omissions concerning the limits of and

22  problems with Theranos's technologies").  And regardless of the adequacy of the Indictment concerning

23  what is alleged to be omitted from representations to doctors and patients, there is no viable omission

24  theory in this case (whether as to investors or as to doctors/patients) because the Indictment does not and

25  could not allege a duty to disclose.

26  　　　　**B.      The Indictment Alleges No Duty To Disclose.**

27  　　　　The government identifies for the first time in its opposition a "duty of trust" that it claims

28

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART FOR FAILURE TO ALLEGE FALSITY
CR-18-00258 EJD SVK

Defendants assumed when soliciting investments in Theranos.  Opp'n 9.  (The government does not even claim to allege any such duty with respect to doctors and patients.)  This argument fails because the Indictment does not allege such a duty; it does not contain the phrase "duty of trust," and it does not allege that Defendants "induced investors to relax their ordinary care and diligence."  *Id.* (alterations and internal quotation marks omitted).

The alleged duty also has no basis in the law.  The government's case acknowledges that an omission can support a wire-fraud charge "only when there exists an independent duty that has been breached by the person so charged."  *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) (internal quotation marks omitted).  In the context of contracting parties, a duty to disclose exists only in cases of a formal fiduciary relationship or an "informal, trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise."  *Id.* at 823 (internal quotation marks omitted); *see, e.g.*, *United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012) (en banc) (independent contractors in "position of trust" with respect to a state agency); *United States v. Laurienti*, 611 F.3d 530, 539 (9th Cir. 2010) ("relationship of trust and confidence . . . between a broker and a client")).  The Indictment does not allege anything approximating a fiduciary relationship or relationship of trust between Defendants and investors (to say nothing of doctors and patients).  Unlike the cases where such relationships have been found, Ms. Holmes and Mr. Balwani did not work on the investors' behalf, and they were not their agents.  Ms. Holmes and Mr. Balwani exerted no control or dominance over the investors.  The Indictment does not suggest anything other than that the investors were sophisticated professionals who made arms-length investments in Theranos.

Moreover, the alleged facts that the government points to as supplying that trust relationship are just examples of the alleged falsehoods that form the core of its false-statement case.  Opp'n 9.  But the government cites no authority for the proposition that making (allegedly) false or misleading statements to arms-length investors somehow creates a relationship of trust.  The government's theory—that a falsehood to an investor will create a "trust relationship"—would swallow the *Shields* rule altogether by permitting juries to convict on the basis of omissions whenever the government also alleges false

1   statements, without any independent duty to disclose.  The Ninth Circuit has already rejected the

2   argument that the *Shields* rule does not apply when the government charges false statements and not just

3   omissions.  *See United States v. Spanier*, 744 F. App'x 351, 353-54 (9th Cir. 2018) ("T[he *Shields*] rule

4   is not limited to 'pure omissions' cases, where the allegations are based on non-disclosures.").

5        Alternatively, the government attempts to transform the duty to correct asserted half-truths into

6   an independent duty to disclose.  Opp'n 8.  That ignores that misstatements, half-truths, and omissions

7   are three distinct concepts in the law.  Importantly, for the government to proceed on an omission theory

8   (as opposed to a half-truths theory), it must separately allege and prove both material omissions and the

9   existence of a duty to disclose that is separate from the limited duty to correct half-truths.  *See Spanier*,

10  744 F. App'x at 353-54 (reversing wire-fraud conviction where government's "case was based on

11  affirmative misrepresentations, half-truths, *and* omissions" because district court did not instruct on need

12  to find an independent duty to disclose before considering the alleged omissions).  The government

13  cannot repackage the challenged allegations as omissions because the Indictment does not allege the

14  existence of a duty to disclose.

15       In sum, the Indictment alleges no facts giving rise to an independent duty to disclose, and for that

16  reason the Indictment should be dismissed insofar as it rests on an omission theory.

17                                    **CONCLUSION**

18       For the foregoing reasons, and those set forth in Ms. Holmes' Motion, the Court should dismiss

19  Counts One and Three through Eight to the extent that they rely on the challenged representations in

20  Paragraphs 12(D) and (E).  The Court also should dismiss Counts Two and Nine through Eleven

21  because they rest on Paragraph 16, which fails to allege material falsity.  And the Court should dismiss

22  the rest of the Indictment to the extent that it relies on a fraud-by-omission theory.

23       In addition, the allegations in Paragraphs 12(D) and (E), all allegations relating to doctors and

24  patients, and all mention of a duty to disclose or omissions should be stricken from the Indictment to

25  avoid prejudicing Ms. Holmes.

26

27

28

1

2   DATED:  January 27, 2020                    Respectfully submitted,

3

4                                              /s/ Amy Mason Saharia
                                               KEVIN DOWNEY
5                                              LANCE WADE
                                               AMY MASON SAHARIA
6                                              KATHERINE TREFZ
                                               Attorneys for Elizabeth Holmes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART FOR FAILURE TO ALLEGE FALSITY
CR-18-00258 EJD SVK

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that on January 27, 2020, a copy of this filing was delivered via ECF on all

3 counsel of record.

4

5                                          /s/ Amy Mason Saharia

6                                          AMY MASON SAHARIA
                                           Attorney for Elizabeth Holmes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART FOR FAILURE TO ALLEGE FALSITY
CR-18-00258 EJD SVK

11