JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CR-18-00258-EJD-SVK

**MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERANTIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE**

Date:　　July 20, 2020
Time:　　1:30 p.m.
CTRM: 4, 5th Floor

Hon. Edward J. Davila

## MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOURE

PLEASE TAKE NOTICE that on July 20, 2020, at 1:30 p.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court to strike the government's Rule 404(b) notice or, in the alternative, to compel an adequate Rule 404(b) notice by August 10, 2020.  Ms. Holmes makes this motion pursuant to Federal Rule of Criminal Procedure 16, Federal Rule of Evidence 404(b)(2)(A), and Rules 16-1(c)(3) and 16-2 of the Criminal Local Rules for the United States District Court for the Northern District of California.  The Motion is based on the below Memorandum of Points and Authorities, the exhibits and declarations that accompany this motion, the record in this case, and any other matters that the Court deems appropriate.

DATED: June 30, 2020

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

i

1

## **TABLE OF CONTENTS**

2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................4

    I.      The Government's Notice Is Impermissibly Vague Because It Fails To
           Identify the Particular Other Acts It Seeks To Admit at Trial. ..........................4

    II.     The Government's 404(b) Notice Fails To Identify the Documents or Witness
           Statements That Demonstrate the Alleged Other Acts. .....................................7

    III.    The Government's Notice Also Fails To Notify Ms. Holmes of the Full
           Universe of Acts the Government Seeks To Introduce at Trial or the Purposes
           of That Evidence. ...........................................................................................9

CONCLUSION ......................................................................................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE
RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

ii

## <u>TABLE OF AUTHORITIES</u>

### CASES

*United States v. Ahn The Duong*, 2010 WL 532513 (N.D. Cal. Feb. 9, 2010)..............................................5

*United States v. Dejarnette*, 2011 WL 2837420 (N.D. Cal. July 15, 2011) .......................................4, 5, 8

*United States v. Mujahid*, 2011 WL 13250753 (D. Alaska Aug. 9, 2011) .........................................4, 5, 8

*United States v. Vega*, 188 F.3d 1150 (9th Cir. 1999) ...........................................................................4, 9

*United States v. Yagi*, 2013 WL 10570994 (N.D. Cal. Oct. 17, 2013) .......................................................9

### RULES

Crim. L.R. 16-1(c)(3)....................................................................................................................... *passim*

Fed. R. Evid. 403 ...............................................................................................................................7, 8

Fed. R. Evid. 404 ............................................................................................................................ *passim*

April 27, 2020 amendment to Fed. R. Evid. 404(b) ...................................................................................9

### OTHER

Fed. R. Evid. 404, Advisory Committee Notes on 1991 Amendments ..................................................4, 9

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE
RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

In its February 11, 2020 Order on Ms. Holmes' motions to dismiss, this Court limited the government's theory of wire fraud to its allegations that Ms. Holmes and her co-defendant knowingly engaged in a scheme to defraud two groups of people:  (1) investors in Theranos and (2) patients who paid out of pocket for the blood testing that Theranos provided.  These allegations, which were already sprawling, were at least confined to a three-year time period and two categories of putative victims.  However, the government has since served Ms. Holmes with a staggering notice under Federal Rule of Evidence 404(b)(2), disclosing that the government intends to introduce twenty-two categories of alleged other acts and threatening to expand the complexity and scope of this case exponentially.[1]  The government then supplemented that notice by directing the defense to more than 11,000 pages of discovery and the statements and testimony of more than 100 of the 130 witnesses the government has interviewed.  In short, the government's notices increase the relevant time period in this case by many years, increase the number of potential witnesses by many dozens, and shift the focus of the coming trial from purported fraud on investors and patients to Theranos' interactions with other parties, Theranos' corporate culture, and Theranos' lab standards and regulatory compliance.

Ms. Holmes intends to move in limine to exclude or limit the vast majority of the "evidence" identified in these notices.  The Federal Rules of Evidence and this Court's Local Rules enable this Court to decide such motions by requiring the government to provide "a summary of any evidence of other crimes, wrongs or acts which the government intends to offer . . . *supported by documentary evidence or witness statements*."  Crim. L.R. 16-1(c)(3) (emphasis added).  That summary also must provide "sufficient detail that the Court may rule on the admissibility of the proffered evidence." *Id.* Although these obligations are important—especially here, given the immense amount of discovery— complying with them is relatively straightforward.  For each act the government intends to offer via Rule 404(b), it needed only to identify clearly:  (1) the specific other act; (2) the documents and witness

---

[1] These supposed bad acts include, among others, the very allegations that this Court dismissed in its February 11, 2020 Order.  *See* Ex. A, March 6, 2020 Letter to Defense re 404(b) Notice at 2-3.

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

statements that it claims prove that Ms. Holmes committed that act; and (3) the admissible Rule 404(b) purpose for that act.

Yet the government's Rule 404(b) notices do none of those things.  Instead of identifying the who, what, where, when, and why for particular "other acts," the notices identify twenty-two broad themes and brazenly assert that the government may seek to introduce "other acts" not specified in the notices.  And instead of identifying the particular witness statements or documents that prove a particular "other act," the government's notices dump thousands of pages (some of which are entirely irrelevant even to the government's vague themes) on Ms. Holmes "in support of" the government's themes.[2]

In short, the government has failed to provide a satisfactory Rule 404(b) notice.  Indeed, its notices read as little more than a collection of the broad accusations made against Ms. Holmes and Theranos in the media.  Courts in this district require more.  This Court should thus strike the government's 404(b) notices, or, in the alternative, compel the government to provide a satisfactory 404(b) notice by August 10, 2020.

## BACKGROUND

On September 6, 2018, a grand jury returned an eleven-count indictment alleging a scheme to defraud investors, a scheme to defraud doctors and patients, and nine underlying counts of wire fraud.  On February 11, 2020, this Court dismissed those charges as they pertained to doctors and nonpaying patients.

On March 6, 2020, the government served Defendants with a letter that purported to "provide notice that the government may seek to introduce" certain alleged bad acts as "evidence in its case in chief."  Ex. A at 1.  That letter identified twenty-two categories of alleged bad acts that the government maintains it will seek to introduce at trial.  *See id.* at 2-10.[3]  Upon receiving this letter, Ms. Holmes

---

[2] To explain how these defects infect the various thematic categories disclosed in the government's Rule 404(b) notices, the defense has prepared the chart located at Exhibit B.

[3] These categories of purported bad acts include:  making false and misleading representations to insured patients, doctors, Theranos' Board of Directors, Walgreens, Safeway, journalists, and government agencies, (Categories 1, 2, 3, 4, 5, 6, 13); fostering a secretive culture and forcing employees to sign

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE
RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

2

informed the government that its notice had exponentially increased the size and complexity of the case and "fail[ed] to comply with FRE 404(B) and Local Rule 16-1." Ex. C, Mar. 11, 2020 Email from L. Wade to Government. Ms. Holmes noted that "many of the allegations set forth in [the government's] letter are not 'supported by documentary evidence or witness statements that have been produced to the defense'" and that the notice failed to "identify the particular witness statements and evidence" for these twenty-two categories. *Id.* (quoting Crim. L.R. 16-1(c)(3)). The government dismissed these concerns, Ex. D, Mar. 11, 2020 Email from J. Bostic to L. Wade, even as Ms. Holmes reiterated her concerns, Ex. E, Mar. 11, 2020 Email from L. Wade to Government.

On March 23, 2020, Ms. Holmes raised these issues once again with the government. She pointed out that the government's disclosure did "not identify the 'documentary evidence or witness statements' on which it is based," and that "many of the disclosed categories of allegations are so vague that we cannot reasonably be expected to scour the government's voluminous production to guess what evidence may be at issue." Ex. F, Mar. 23, 2020 Letter from L. Wade to Government at 1. Ms. Holmes also laid out an itemized list of her concerns with twenty of the categories in the Rule 404(b) notice. *Id.* at 2-7.

While the government has continued to dismiss these concerns, it provided a supplemental notice on April 3, 2020. *See* Ex. G, Apr. 3, 2020 Letter to Defense re 404(b) Notice. That supplemental notice, however, compounded the flaws in the government's previous notice. It did not identify the particular acts Ms. Holmes supposedly committed and continued to rely on vague themes. It did not disclose what evidence the government would introduce outside its case in chief. And it did not provide any explanation of which *particular acts* the hundreds of witness statements and the thousands of pages of discovery it identified would support.

---

non-disclosure agreements (Category 7); restricting access to laboratory areas within Theranos (Category 8); harassing, threatening, influencing, or vilifying various individuals or entities (Categories 9, 10, 11, 12); violating industry standards or government regulations (Category 14); engaging in poor lab practices (Categories 14, 15, 16, 17, 18, 19); decommissioning the Theranos software database that contained clinical test data (Category 20); obtaining personal benefits through Defendants' positions at Theranos (Category 21); and concealing the romantic relationship between Ms. Holmes and Mr. Balwani (Category 22).

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

3

**ARGUMENT**

In a criminal case, the government may introduce "[e]vidence of a crime, wrong, or other act" for only a limited set of purposes, and it must provide the defense with "reasonable notice of the general nature of any such evidence." Fed. R. Evid. 404(b). This notice requirement "is designed to reduce surprise and promote early resolution of admissibility issues." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999). The notice must describe the bad acts the government intends to introduce in "its case-in-chief, for impeachment, or for possible rebuttal." Fed. R. Evid. 404, advisory committee note to 1991 amendment. The notice must be reasonably timely and complete, and "what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case." *Id.* Notably, the greater the "volume of discovery," the more specific the notice must be. *United States v. Mujahid*, 2011 WL 13250753, at *2 (D. Alaska Aug. 9, 2011). In cases with voluminous discovery, describing "broad categor[ies] of" acts will not suffice. *Id.*

On top of Rule 404(b)'s requirements, this Court's Local Rules require the government to provide the defense with "[a] summary of any evidence of other crimes, wrongs or acts which the government intends to offer under F. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence." Crim. L.R. 16-1(c)(3). This rule prohibits "overly broad" notices. *United States v. Dejarnette*, 2011 WL 2837420, at *7 (N.D. Cal. July 15, 2011). Again, broad thematic strokes are not enough; by its very terms, the rule contemplates that the government identify specific "acts." The government also must note the "documentary evidence or witness statements" that support each act listed in the notice. Crim. L.R. 16-1(c)(3). When it fails to do so, courts have sustained objections to the Rule 404(b) notice under the Local Rules. *See Dejarnette*, 2011 WL 2837420, at *7.

**I.      The Government's Notice Is Impermissibly Vague Because It Fails To Identify the Particular Other Acts It Seeks To Admit at Trial.**

"[T]he discovery in this case is immense[,]" and totals over twenty million pages. Feb. 11, 2020 Order on Defendants' Mot. to Dismiss 16, Feb. 11, 2020, ECF # 330. "These realities create a

substantial risk that Defendants may be unfairly surprised at trial." *Id.* Despite this, the government has provided the defense with notices that are unclear as to *what* specific acts the government will introduce, *who* committed those acts, *when* those acts occurred, and *how many* acts the government intends to introduce. Courts within this district demand such specificity. *See, e.g., Dejarnette*, 2011 WL 2837420, at *7 (sustaining an objection per the local rules to the notice located at Ex. H because it was "overly broad"); *United States v. Ahn The Duong*, 2010 WL 532513, at *11 (N.D. Cal. Feb. 9, 2010) (ordering the government to "specifically identify each other crime, wrong, or act[,]" including "the nature of the incident; the date, the time and place of the incident;" and "all persons who may testify regarding such incident" or "having knowledge of such incident").

Most troublingly, the government's Rule 404(b) notice speaks in broad themes and, at best, provides only illustrative examples of the evidence that the government may introduce via Rule 404(b). In many of its twenty-two categories, the government does not identify a single particular act or incident. *See* Ex. A (Categories 1, 3, 4, 5, 7, 16, 17, 19, 20, 22). In others, the government often uses the phrase "for example" before identifying some alleged bad act that it claims is representative of other unidentified bad acts, or it narrates one particular act while implying that other similar acts exist. *See* Ex. A (Categories 2, 6, 8, 9, 10, 11, 12, 13, 14, 18, 21). Of course, by identifying such "examples," the government suggests that it has omitted other acts that it intends to use at trial. In fact, the government states at the end of every category in its notice that it "may introduce these and *similar facts*" through unidentified documents or witnesses. *Id.* (all Categories) (emphasis added). This notice thus impermissibly speaks in "broad categor[ies] of" acts, *Mujahid*, 2011 WL 13250753, at *2, instead of identifying the specific acts the government will introduce.

Even putting aside that overarching flaw, many of the government's categories of alleged bad acts impermissibly rest on vague allegations. For instance, the government accuses Defendants of "discourag[ing] employees from sharing information regarding Theranos's use of third-party analyzers . . . [and] taking specific steps to conceal this fact from employees who did not already know." (Category 7). What those "specific steps" were, however, is unclear. Similarly, it is anyone's guess

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

5

what the government means when it accuses Ms. Holmes of "foster[ing] a culture that strongly discouraged skepticism or dissent" or "enforcing that culture by reacting with hostility and intimidation to any questioning." (Category 12). How did she foster this culture? How did she enforce it? What is a "culture" that discourages "skepticism or dissent"? What are the specific acts of "hostility" and "intimidation" on which the government intends to rely? Similarly, the phrase "Defendants disregarded and failed to conform to industry standards as well as government regulations or rules regarding research and development procedures, medical devices and clinical laboratory standards" (Category 14) raises countless questions. Which regulations? Which standards? How were those regulations or standards violated?[4] Ms. Holmes objects to all such vague language in Categories 1, 3, 4, 5, 7, 8, 9, 10, 11, 12, 14, 17, 18, 19, 21 (as reflected in Exhibits A and B), as they do not provide "sufficient detail."

The government's Rule 404(b) notice is equally ambiguous in describing who actually committed the bad acts it describes or when those acts occurred. Its notice attributes these bad acts to Defendants and "*their agents*" (Categories 10, 11, 12, 13); Defendants and "their representatives" (Category 6); "Theranos" (Categories 2, 13, 14, 15, 16, 17, 18, 19, 20); "Theranos representatives" (Category 6); and "others" (Category 13).[5] Moreover, for almost all of the categories of alleged prior bad acts, the government simply uses the label "Defendants." It does not explain which acts are Ms. Holmes' or which acts belong to Mr. Balwani. Nor does it even provide Ms. Holmes notice of when particular acts occurred, which would have (through significant effort) allowed her perhaps to reverse engineer which incidents the government is referencing.

The government's reference to 11,000 pages of discovery and one hundred witnesses' statements in its April 3, 2020 letter cures none of these problems. At the outset, it is not Ms. Holmes' burden to discern what other acts the government may seek to admit through a time-intensive review of the government's document dump. The federal and local rules put the burden of providing adequate notice

---

[4] Arguably, this allegation could implicate large swaths of the Clinical Laboratory Improvement Amendments (CLIA), their many implementing regulations, and analogous state laws and regulations concerning the operation of clinical labs.

[5] It is further unclear what the government means by "agents" or "representatives" of Ms. Holmes. To the extent it means Theranos employees, they were agents of Theranos, not of Ms. Holmes.

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

on the government, not Ms. Holmes.  But even a cursory review of some of the documents in these categories show that they do not clarify the government's vague language.  Take, for example, the fourteen lengthy deposition transcripts—totaling over 1,800 pages—to which the government has pointed.  *See* Saharia Decl. ¶ 3a.  Or consider the fact that the government has provided an Excel spreadsheet detailing over 1500 Theranos patient visits, without identifying who these patients are or providing any context for why those names are relevant to the Rule 404(b) allegations.  *See* Saharia Decl. ¶ 3b.  It is nearly impossible for Ms. Holmes to guess what portions of those documents the government thinks will prove its intended other act evidence at trial.  If anything, the burdensomeness and lack of context for these documents has only further obscured what other acts the government seeks to admit against Ms. Holmes.

In sum, the Rule 404(b) notice lacks "sufficient detail," as required under Criminal Local Rule 16-1(c)(3).  This Court should strike the government's notice or, at a minimum, compel the government to disclose the missing details.  *See, e.g.*, Ex. I (the second *Dejarnette* notice, which provided sufficient details under this Court's local rules).

## II.     The Government's 404(b) Notice Fails To Identify the Documents or Witness Statements That Demonstrate the Alleged Other Acts.

Given the scope of discovery and the risk of unfair surprise in this case, it is paramount that the government identify the "documentary evidence or witness statements" that support each alleged bad act it intends to use.  Crim. L.R. 16-1(c)(3).  Without the government's identification of specific documents and statements relating to each particular bad act, this Court cannot fairly rule on, among other things, whether Ms. Holmes committed an alleged act, or whether evidence of that act would be relevant to this case, admitted for a proper Rule 404(b) purpose, or inadmissible under Rule 403.  The government has failed to comply with this obligation in several respects.

First, in its supplemental notice, the government skirts this obligation by identifying multitudes of documents and witness statements supporting broad categories of evidence, as opposed to linking *particular* documents and witness statements to *particular acts*.  Of course, the task of linking specific

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

7

evidence to specific acts is understandably complicated by the government's failure to identify specific acts whatsoever.  *See supra*, Part I.  But regardless of that defect, the government cannot satisfy its notice obligations by pointing to thousands of pages and over a hundred witness statements and asserting that "the government may elicit testimony from" those witnesses "or "offer[] as exhibits [those] documents."  *See, e.g.*, Ex. G at 2.

Second, the government fails even to identify any documents for entire "categories" of other acts, even though it represents that it will use such documents at trial.  *See* Ex. G at 11 (Categories 8, 9). Specifically, the government states that it "may offer as exhibits . . . records produced in discovery memorializing or relating to" the government's broad themes, *id.*, but does not specify what those documents are.  Similarly, for the category where the government purports to rely solely on witness testimony, Ms. Holmes has not received any witness statements from the government relating to those allegations (Category 20).

In short, the notice's failure to identify particular documents or statements—from the twenty million pages of discovery in this case—that will support each particular act the government intends to introduce at trial means that its notice is insufficient under Criminal Local Rule 16-1(c)(3).  *See Dejarnette*, 2011 WL 2837420, at *7 (striking a Rule 404(b) notice that failed to comport with this requirement); Ex. I (revised *Dejarnette* statement specifying the witnesses from which the bad acts evidence comes).  Moreover, given the volume of discovery in this case, these omissions also mean that the notice fails to comply with Rule 404(b)(2).  *See Mujahid*, 2011 WL 13250753, at *2.[6]

---

[6] Adding to this uncertainty, the government at a March 26 meet and confer stated (yet again) that its five-year investigation has continued and will continue, including with respect to the Rule 404(b) categories.  For example, the government indicated that it may seek to interview additional journalists as it relates to Category 6, raising the question of whether its vague disclosure is in part a product of an incomplete investigation that is now over three years in duration.  What is more, the government has recently indicated its intention to file a Second Superseding Indictment, and Ms. Holmes thus anticipates further Rule 404(b) disclosures from the government.

MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

1  **III.    The Government's Notice Also Fails To Notify Ms. Holmes of the Full Universe of Acts the Government Seeks To Introduce at Trial or the Purposes of That Evidence.**

2

3          The government's Rule 404(b) notice suffers from two further defects.  First, it purports to

4  discuss only the acts the government intends to introduce during its "case in chief."  Ex. A at 1.  But

5  Rule 404(b)(2) "mandates that the government provide notice even if the government intends to

6  introduce [] evidence for impeachment or for *possible* rebuttal."  *Vega*, 188 F.3d at 1154; *accord* Fed. R.

7  Evid. 404 advisory committee's note to 1991 amendment.  Second, the notice does not explain, for each

8  act the government seeks to introduce, the permissible Rule 404(b) purpose of that act.  Pursuant to

9  approved amendments to Rule 404(b), which will be in effect on December 1, 2020 (and thus for parts

10  of Ms. Holmes' trial and all of Mr. Balwani's trial), the government must provide such information for

11  each other act.  *See* April 27, 2020 amendment to Fed. R. Evid. 404(b).  Those approved amendments

12  reflect the commonsense notion that the defense and courts are entitled to a pre-trial disclosure of the

13  claimed purpose for each alleged other act in order to determine whether the act is relevant to that

14  purpose.  In light of the breadth and complexity of the government's Rule 404(b) notice, requiring such

15  a disclosure here is essential to facilitate orderly determination of the admissibility of the government's

16  Rule 404(b) evidence.

17                                          **CONCLUSION**

18          For these reasons, this Court should strike the government's Rule 404(b) notice, or, in the

19  alternative, compel the government to supplement its disclosure by clearly specifying the precise other

20  acts it seeks to use during its case in chief, impeachment, or possible rebuttal, the documents or

21  statements supporting each act, and the claimed purpose for each other act.  This Court should preclude

22  the government from introducing any such evidence not adequately disclosed by August 10 2020.  *See*

23  *United States v. Yagi*, 2013 WL 10570994, at *11 (N.D. Cal. Oct. 17, 2013).

24

25

26

27

28  MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

1   DATED:  June 30, 2020                    Respectfully submitted,

2

3                                           /s/ Amy Mason Saharia
                                            KEVIN DOWNEY
4                                           LANCE WADE
                                            AMY MASON SAHARIA
5                                           KATHERINE TREFZ
                                            Attorneys for Elizabeth Holmes
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE
     RULE 404(b) DISCLOSURE
     CR-18-00258 EJD SVK
                                            10

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on June 30, 2020 a copy of this filing was delivered via ECF on all counsel

3   of record.

4

5

6                                         /s/ Amy Mason Saharia
                                          AMY MASON SAHARIA
7                                         Attorney for Elizabeth Holmes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE
     RULE 404(b) DISCLOSURE
     CR-18-00258 EJD SVK

                                          11

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **DECLARATION OF AMY MASON SAHARIA IN SUPPORT OF MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Hon. Edward J. Davila |
| Defendants. | |

I, AMY MASON SAHARIA, declare as follows:

1.     I represent Defendant Elizabeth Holmes and have been admitted to practice *pro hac vice* in the above-captioned matter.  I submit this declaration in support of Ms. Holmes' Motion To Strike Rule 404(b) Notice Or, In The Alternative, Compel Adequate Rule 404(b) Disclosure.  I attest to the following facts upon which the motion relies.

2.      Attached to the Motion are 9 exhibits.  The contents of each are as follows:

a.      Exhibit A is a true and correct copy of the government's March 6, 2020 notice to Ms. Holmes's counsel of the alleged bad acts it intends to introduce during its case in chief under Rule 404(b)(2).

b.      Exhibit B is a chart, prepared by Ms. Holmes' counsel, which documents Ms. Holmes' specific objections to the categories of bad act evidence that the government has noticed.

c.      Exhibit C is a true and correct copy of a March 11, 2020 email from Lance Wade to the government concerning the government's Rule 404(b) notice.

d.      Exhibit D is a true and correct copy of a March 11, 2020 email from John Bostic to Lance Wade concerning the government's Rule 404(b) notice.

e.      Exhibit E is a true and correct copy of a March 11, 2020 email from Lance Wade to John Bostic concerning the government's Rule 404(b) notice.

f.      Exhibit F is a true and correct copy of a March 23, 2020 letter from Lance Wade to the government concerning the government's Rule 404(b) notice.

g.      Exhibit G is a true and correct copy of the government's April 3, 2020 letter to Ms. Holmes' counsel, which purported to identify the documents and witness testimony that established the alleged bad acts the government identified in its March 6, 2020 Rule 404(b) notice.

h.      Exhibit H is a true and correct copy of the Rule 404(b) notice that the government submitted in *United States v. Dejarnette*, No. 3:09-cr-00268-SI, ECF #171 (N.D. Cal. June 17, 2011) and that was found insufficient in the opinion located at *United States v. Dejarnette*, 2011 WL 2837420 (N.D. Cal. July 15, 2011).

i.      Exhibit I is a true and correct copy of the amended Rule 404(b) notice that the government submitted in *United States v. Dejarnette*, No. 3:09-cr-00268-SI, ECF #190 (N.D. Cal. July 28, 2011), in response to the opinion located at *United States v. Dejarnette*, 2011 WL 2837420 (N.D. Cal. July 15, 2011).

3.      Among the documents that the government noticed in its April 3, 2020 letter as supporting the alleged bad acts were the following:

a.    Fourteen deposition transcripts totaling over 1,800 pages.

b.    An Excel spreadsheet noting over 1,500 patient visits but not identifying who those patients were.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 30th day of June, 2020 in Chevy Chase, MD.

_____
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *150 Almaden Boulevard, Suite 900* | *(408) 535-5061* |
| *San Jose, California 95113* | *Fax:(408) 535-5066* |

March 6, 2020

**VIA EMAIL**

Lance Wade
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Jeffrey B. Coopersmith
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097

> Re:   United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
> CR-18-00258-EJD
> Notice re Government's Intent to Introduce Certain Evidence

Dear Counsel:

We write to provide notice that the government may seek to introduce certain evidence in its case in chief in the above-referenced matter. This evidence is relevant to the charges in this case and is admissible to show, among other things, Defendants' motive, opportunity, intent, preparation, plan, knowledge, identity, consciousness of guilt, or absence of mistake or accident. See Fed. R. Evid. 404(b).

Please note that, by providing this disclosure, the government is not conceding that this evidence is admissible only under the provisions of Rule 404(b). The government may also assert that this evidence is admissible as direct evidence of the charged conduct, that it is inextricably intertwined with the events charged in the operative Indictment, or that it shows a continuing course of conduct otherwise admissible under Rules 401 and 402.

The facts summarized below are supported by the evidence in the government's discovery production, including witness statements as reflected in summary memoranda and source documents such as emails, laboratory reports, and business records.

This notice supplements the previous 404(b) disclosures that have accompanied the government's discovery productions in this case. The government reserves the right to introduce additional evidence covered by those previous disclosures, and further reserves the right to amend this notice in advance of trial based on its continuing investigation and trial preparation.

1

1. **False and misleading representations directed at insured patients.**  As part of Defendants' scheme to defraud patients, they falsely represented to patients that Theranos's tests were accurate, reliable, and suitable for use in the clinical context, when Defendants knew that Theranos's tests were not properly validated and suffered from accuracy problems that rendered them unreliable and not suitable for informing clinical treatment decisions.  Defendants caused Theranos to misrepresent the accuracy and reliability of its tests in advertisements and other promotional materials distributed electronically and in print, and further misled patients as to the nature of Theranos's tests by offering their tests for use in the clinical context, necessarily implying that Theranos's tests could be relied upon for medical decision-making.  Patients who questioned or complained about Theranos's test results were falsely told that the company was having temporary, isolated problems with individual assays, were falsely assured that Theranos's tests could be relied upon, or were given other excuses that masked the limitations of Theranos's technology.  Defendants also misled insured and uninsured patients regarding the methods of blood collection used by Theranos, causing patients to believe that they could have any blood test performed using a finger-stick when Theranos relied on vein draws for a substantial portion of its tests.  These misrepresentations were directed at all potential customers of Theranos, including patients with and without medical insurance that might cover the cost of Theranos's tests.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, doctors and patients who patronized Theranos, marketing personnel employed or retained by Theranos, and former employees of Theranos.

2. **False and misleading representations directed at doctors.**  As part of Defendants' scheme to defraud patients, they falsely represented to doctors that Theranos's tests were accurate, reliable, and suitable for use in the clinical context, when Defendants knew that Theranos's tests were not properly validated and suffered from accuracy problems that rendered them unreliable and not suitable for informing clinical treatment decisions.  Defendants' misrepresentations came in multiple forms, including advertising and promotional materials distributed electronically and in print, directed at doctors and health professionals acting as patient representatives who would later advise patients as to which blood testing services they should use.  Defendants also caused misrepresentations to be directed at doctors during real-time conversations between doctors and Theranos representatives.  For example, Dr. Linnerson in the Phoenix area was falsely told by Theranos representatives that the company's tests had obtained FDA approval.  Similarly, doctors who questioned or complained about Theranos's test results were falsely told that the company was having temporary, isolated problems with individual assays, were falsely assured that Theranos's tests could be relied upon, or were given other excuses that masked the limitations of Theranos's technology.  Other doctors were deceived as to the equipment and methods used for Theranos's tests, with the company withholding information necessary for doctors to place those test results in context.  See below.  Defendants also misled doctors regarding the methods of blood collection used by Theranos, causing doctors to believe that patients could have any blood test performed using a finger-stick when Theranos relied on vein draws for a substantial portion of its tests.  Similarly, Defendants misled some doctors regarding the equipment on which Theranos's tests would be run and the location of that equipment.  Specifically, when Theranos partnered with doctors' offices to provide testing services in-house, Theranos would acquire office space within or near the doctor's practice and lead the doctor to believe that Theranos was maintaining and operating one of its small, Theranos-manufactured analyzers onsite.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but

not limited to, doctors and patients who patronized Theranos, marketing personnel employed or retained by Theranos, and former employees of Theranos.

3. **False and misleading representations made to Theranos's Board of Directors.** Defendants deceived Theranos's Board of Directors in furtherance of their schemes to defraud investors and patients.  In particular, Defendants misrepresented the capabilities of Theranos's technology to the Board, making false claims about matters including:  the capabilities of Theranos's analyzers; the accuracy and reliability of Theranos's tests; the existence of data proving the accuracy and reliability of Theranos's tests; the extent to which Theranos relied on third-party analyzers; the extent to which Theranos relied on vein draws; the nature of FDA's approval requirements for Theranos's tests; the extent to which Theranos's technology had been validated by other entities and organizations including hospitals; the success of Theranos's relationship with Walgreens; the revenues and financial health of the company; the truth of facts reported in the *Wall Street Journal*'s October 15, 2015 article discussing Theranos; and Defendants' willingness to submit Theranos's devices for independent testing or conduct comparison testing matching Theranos's test results against those from conventional labs.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, members of Theranos's Board of Directors.

4. **False and misleading representations made to Walgreens.**  In pursuing and maintaining Theranos's partnership with Walgreens, Defendants made misrepresentations to Walgreens representatives about matters including:  the number of tests Theranos's analyzer could perform using a sample drawn from a finger-stick; the number of assays Theranos's devices could conduct on a single sample; whether Theranos's technology was mature and ready for commercial launch; the existence of technological boundaries affecting Theranos's ability to scale up its testing services; the accuracy and reliability of Theranos's tests and whether those tests were as accurate as or more reliable than competing tests from conventional labs; the extent to which Theranos relied on third-party analyzers; the extent to which Theranos relied on vein draws; the nature of FDA's approval requirements for Theranos's tests; whether Theranos conducted adequate proficiency testing;  the extent to which Theranos's technology had been validated by other entities and organizations including pharmaceutical companies and research universities who had purportedly used Theranos's testing services for clinical trials or other studies; the purported use of Theranos's technology by the United States military; Theranos's ability to provide decentralized testing services at the point of care and the company's experience operating under that model; and the profitability and financial health of the company.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to former Theranos employees as well as Walgreens personnel.

5. **False and misleading representations made to Safeway.**  In pursuing a partnership between Theranos and Safeway, Defendants made misrepresentations to Safeway representatives about matters including:  the number of tests Theranos's analyzer could perform; the number of assays Theranos's devices could conduct on a single sample; the accuracy and reliability of Theranos's tests; whether Theranos's technology was ready for commercial launch; the extent to which Theranos relied on third-party analyzers; the extent to which Theranos relied on vein draws; the nature of regulatory approval requirements for Theranos's tests; the extent to which Theranos's technology had been validated by other entities and organizations including pharmaceutical companies and research universities; the use of Theranos technology by the military; and the financial

health and projected profitability of the company.  Additionally, Holmes agreed to provide a Theranos analyzer to UCSF so that they could evaluate Theranos's technology partly for Safeway's benefit.  Theranos, however, never provided UCSF with a device to review.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and Safeway representatives.

6. **False and misleading representations made to journalists.**  In promoting Theranos's business, Defendants and their representatives were interviewed by journalists and made a number of false and misleading statements to those journalists regarding the state of Theranos's business and the capabilities of Theranos's technology.  For example, Holmes made several misrepresentations to reporter Roger Parloff, including:  (1) that Theranos's level of quality and low coefficient of variation was revolutionary for a certified lab; (2) that Theranos had done 70 or more tests from a single microsample; (3) that Theranos was different from labs that used large machines in a centralized process; (4) that Theranos was exceeding requirements for proficiency testing; (5) that Theranos's platform could do all of the several hundred tests offered by Quest in a regional lab; (6) that Theranos had a single device that could perform any test; and (7) that Theranos's clinical laboratory consisted of hundreds of Theranos analyzer devices.  Simultaneously, Defendants did not correct the false conclusions that journalists reached based on Defendants statements, failing to clarify, for example, that Theranos's analyzer could perform only a limited number of assays and the company relied on third-party analyzers for a significant portion of its tests.  Moreover, when Defendants saw false statements about Theranos's capabilities repeated in press coverage, they did not correct those reports.  This remained the case even when other employees brought the inaccurate statements to their attention—for example, Theranos attorney Brad Arington confronted Holmes about multiple false statements in Roger Parloff's June 2014 *Fortune* article about Theranos.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and attorneys as well as journalists who covered Theranos and conducted interviews of either Defendant.

7. **Fostering culture of secrecy and forcing employees and others to sign non-disclosure agreements.**  In order to prevent the spread of information regarding problems at Theranos, Defendants required employees to sign strict non-disclosure agreements.  Similar agreements were prerequisites to board members, potential investors, and other visitors obtaining information about the company, its technology, and its business.  Similarly, in their roles controlling the day-to-day operations of Theranos and overseeing the company's employees, Defendants took steps to silo information within Theranos, discouraging employees from sharing information about their work with other employees in the company and fostering a culture of internal secrecy.  These actions minimized the number of Theranos employees who were aware of problems relating to the company's research and development practices, technological capabilities, clinical laboratory practices, and business relationships.  In particular, Defendants discouraged employees from sharing information regarding Theranos's use of third-party analyzers for its tests, taking specific steps to conceal this fact from employees who did not already know.  Those steps included renaming third-party devices in Theranos's information management systems and assigning them code names so that employees who accessed these systems could not determine that those devices had in fact been manufactured by third-party companies.  Defendants were so restrictive in controlling employees' statements about Theranos that they required some employees to remove references to Theranos from the employees' LinkedIn profiles.  Defendants were similarly secretive

with investors, refusing to disclose to representatives like Lisa Peterson the identities of other investors in the company.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and investors as well as potential and actual strategic partners of Theranos.

8. **Restricting access to laboratory areas within Theranos.**  Defendants set policies at Theranos that severely restricted access to the laboratory areas where Theranos tested patient samples.  Employees who did not work in the clinical laboratory generally were not able to access the areas, and visitors generally were not allowed to view those areas.  These policies and practices prevented the dissemination of knowledge regarding problems with Theranos's proprietary analyzers as well as Theranos's use of third-party devices for many of its tests.  Similarly, while withholding access to the actual clinical lab, Defendants misled visitors to Theranos by intentionally giving them the impression that the clinical lab consisted of multiple Theranos TSPUs and did not include other conventional devices.  For example, when Vice President Biden visited Theranos in July 2015, Theranos did not show visitors the CLIA lab where patient sample testing was performed, but set up a room containing a large number of Theranos TSPU boxes on shelves, intending that visitors believe they were viewing the machines that ran Theranos's clinical tests.  Within Theranos's Normandy laboratory, Balwani ordered that wall dividers be installed to hide the Tecan devices Theranos used to dilute its samples.  When Holmes was interviewed by Roger Parloff following his visit to Theranos's facilities, she responded to his request to see the lab by indicating that he had essentially already seen the lab because he had seen a room with multiple TSPU devices.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees, potential and actual strategic partners of Theranos, journalists, and others who visited Theranos.

9. **Harassing, threatening, or otherwise influencing doctors or patients who had negative experiences with Theranos.**  When doctors or patients made public statements about inaccurate Theranos test results and other negative experiences with the company, Defendants and their agents engaged in harassing, threatening, or other improper behavior in an effort to dissuade those providers from generating negative publicity for Theranos.  For example, when Arizona provider Dr. Nicole Sundene was cited in a *Wall Street Journal* article after providing information about an unreliable Theranos test result, Balwani visited her offices in person along with Christian Holmes and berated her and her staff, threatening to sue her.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees as well as doctors and patients who patronized Theranos's testing services.

10. **Threatening, influencing, or vilifying journalists in response to negative coverage of Theranos.**  When journalists investigated Theranos and wrote articles exposing misrepresentations made by Defendants concerning Theranos's business and technology, Defendants and their agents threatened and other attempted to improperly influence those journalists in an effort to suppress negative publicity.  For example, when Defendants learned that a reporter from the *Wall Street Journal* was investigating the company and planning to publish an article reporting unfavorable facts about the company and its technology, Defendants directed attorneys to reach out to the *Wall Street Journal* and attempt to dissuade the publication from releasing the article.  In a meeting with the reporter, John Carreyrou, his editor, and the publication's lawyers, Theranos's attorneys

insisted that the publication not move forward with the article, incorrectly claiming that it was based on false information. Holmes also attempted to persuade Rupert Murdoch exercise his power as owner of the *Journal* to kill the story before it could be published. Defendants also vilified journalists who printed negative articles about Theranos, blaming them for skepticism regarding Theranos and its technology in an effort to deflect blame and accountability from themselves and their company. For example, following publication of the October 15, 2015 *Wall Street Journal* article revealing problems with Theranos's blood testing services, Defendants on at least two occasions led employees in a chant of "Fuck you, Carreyrou," directed at the journalist who investigated and authored the article. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees, attorneys representing Theranos or relevant news publications, and journalists who investigated and covered Theranos.

11. **Blaming and vilifying competing companies.** When Theranos was the subject of regulatory scrutiny or negative publicity, Defendants attributed blame to competing companies like Quest and LabCorp, stating and implying that those companies were influencing the government and/or the media. For example, after October 2015, when Theranos became the target of unfavorable reporting exposing problems with the company's operations, Holmes led employees in a chant of "Fuck you, SonoraQuest." Defendants made statements during this time period arguing that Theranos had been unfairly targeted for criticism as a result of action by competitors given Theranos's potential to disrupt the blood testing industry. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees as well as journalists who covered Theranos.

12. **Threatening or intimidating employees and former employees.** Defendants and their agents directed threats and intimidating language at current and former Theranos employees in an effort to discourage employees from disseminating facts about the problems facing the company's technology and business. On multiple occasions, when employees left the company voluntarily or were terminated, Defendants corresponded or met with those employees to deliver stern reminders of the employee's obligations under nondisclosure agreements and threatened employees with consequences should they reveal any nonpublic information about Theranos's technology or business practices. When Dr. Adam Rosendorff resigned from Theranos, Balwani became angry Rosendorff had forwarded work emails to his personal account out of a fear that regulatory authorities might investigate Theranos's practices. Balwani insisted that Rosendorff sign a legal document confirming deletion of the emails. This exchanges caused Rosendorff to feel threatened. On other occasions, Defendants reacted angrily and attempted to threaten or intimidate employees whom they suspected to be the sources of negative publicity concerning Theranos. For example, following their review of some or all of the October 15, 2015 *Wall Street Journal* article discussing Theranos, Defendants directed board member George Schultz and Theranos attorneys to meet with Theranos employee Tyler Schultz because they believed some of the information in the article was provided by him. George Schultz conveyed to Tyler Schultz the warning from Defendants that Tyler's career would be adversely affected if he continued to share information about Theranos. During that conversation, Theranos lawyers waited at the house of Tyler Schultz's grandfather, subsequently ambushing Tyler Schultz and threatened him with legal action. On another occasion, Balwani became aware of a negative review of Theranos as an employer posted on website glassdoor.com. In response, Balwani aggressively interrogated several employees in an unsuccessful effort to determine the

source of the review and discourage further negative reviews.  Generally, Holmes and Balwani fostered a culture that strongly discouraged skepticism or dissent from employees, enforcing that culture by reacting with hostility and intimidation to any questioning.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and members of the Board.

13. **False and misleading representations made to FDA, CMS, CDPH, and other regulatory organizations.**  When Theranos was the subject of inspections by CMS and other regulatory organizations, Defendants' agents presented regulators with selected, non-comprehensive data of Theranos's test results in an effort to mask accuracy and consistency problems with Theranos's assays.  Additionally, Theranos failed to develop, maintain, and follow appropriate standard operating procedures for its clinical lab, but drafted and/or approved such SOPs immediately before or during regulatory inspections in an effort to conceal this oversight.  In connection with an inspection by CDPH, Balwani and others misled an inspector into believing that the Theranos CLIA laboratory was limited to a single area.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees as well as regulatory agency personnel.

14. **Violations of industry standards and government regulations or rules regarding research and development procedures, medical devices and clinical laboratory practices.**  In furtherance of their scheme to defraud, Defendants disregarded and failed to conform to industry standards as well as government regulations or rules regarding research and development procedures, medical devices and clinical laboratory standards.  For example, in conducting research and development purportedly aimed at validating its assays, Theranos failed to conduct adequate validation studies, relying on insufficient data to claim that their tests were valid, accurate, and reliable.  Theranos also cut corners in its Arizona research and development testing, failing to implement a clear protocol for informed consent for trial participants and fostering a coercive environment for testing.  Theranos's CLIA lab was the site of several violations of these rules and standards including the use of expired reagents, failure to implement and carry out proper proficiency testing and quality control processes, and inadequate record-keeping.  Under Defendants' supervision, Theranos's CLIA lab also improperly failed to develop, maintain, and follow adequate standard operating procedures for its clinical tests.  Defendants also exercised an improper degree of control and influence over the operation of Theranos's CLIA lab despite their lack of medical education or training.  Defendants, and Balwani in particular, were deeply involved in clinical decisions that should have been left to the discretion of the laboratory director—even overruling the laboratory director at times.  In exercising that control, Defendants consistently made decisions that prioritized preserving Theranos's reputation and secrecy at the expense of providing complete information to doctors and patients.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees as well as regulatory agency personnel, and expert witnesses.

15. **Altering or tampering with third-party medical devices.**  Theranos's in-house manufactured analyzer—called the Edison, miniLab, or TSPU—was incapable of performing a large proportion of the clinical blood tests Theranos offered.  The Theranos devices were also incapable of handling high-throughput activity required to support Theranos's business model.  In response, Defendants caused Theranos to acquire several commercially available blood analyzer devices manufactured by third parties.  Theranos

then altered and tampered with those devices by modifying them to run on smaller and/or diluted blood samples, contrary to industry standards and the manufacturers' intended use for such devices. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees.

16. **Multiplexing test results and disregarding outliers to mask inconsistency.** In its clinical testing and/or its proficiency testing, Theranos operated its analyzers according to a protocol that included running each assay multiple times and then multiplexing the results in order to derive the final, reported result. As part of that protocol, so-called outlier results—individual results that deviated from the other results for a given assay on a given sample—were discarded and not accounted for. This approach tended to mask consistency problems with Theranos's tests. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees.

17. **Improperly setting and altering reference ranges.** Theranos's lab practices deviated from industry standards and standard testing protocols approved by FDA and validated by the industry. In setting the reference ranges for its tests, Theranos improperly relied on reference ranges for common, FDA-approved tests and/or conducted insufficient studies to set and adjust its own reference ranges. Similarly, after Theranos began offering and providing clinical blood testing services, the company improperly adjusted reference ranges based on individual clinical results—without conducting sufficient studies to justify such an adjustment—in order to bring out-of-range results back into the newly adjusted "normal" range and avoid abnormal results to patients. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and expert witnesses.

18. **Withholding critical test results and other important information from doctors and patients.** In an effort to avoid additional scrutiny of its blood test results and laboratory practices, Theranos sometimes withheld test results that were in the "critical" range for a given analyte, i.e., results that indicated a patient might need urgent medical care. Additionally, Theranos withheld information from doctors and patients indicating what type of analyzer had been used for a given test, depriving doctors and patients of the facts needed to place certain assay results into context—for example, when multiple samples from a single patient had been run on different types of analyzers leading to otherwise unexplainable discrepancies in results. Theranos also withheld from doctors and patients the fact that Theranos's tests were not FDA approved, that Theranos relied on third-party analyzers for many of its tests, and other key facts regarding problems with their laboratory practices. The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees, expert witnesses, and doctors and patients who patronized Theranos's testing services.

19. **Declining to conduct or agree to meaningful comparative tests.** Despite the fact that Theranos's analyzers and testing procedures varied from industry standards and conventional, FDA-approved tests, Defendants declined to conduct sufficient comparative tests establishing that Theranos's test results delivered accurate and reliable results when compared to competing technology. Similarly, Theranos failed to conduct comprehensive and accurate comparison tests establishing that its assays could reliably be conducted on finger-stick samples as opposed to vein draws. Defendants also refused

to commission or authorize such comparative testing through Sarah Cannon, Cleveland Clinic, UCSF, or other independent third-parties, to publish the results of any such testing, and to provide that information to the company's board.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees, expert witnesses, representatives of potential and actual strategic partners of Theranos, and members of the Theranos Board.

20. **Decommissioning Theranos's Laboratory Information System database.**  Theranos maintained its clinical test data in a software database it called the Laboratory Information System ("LIS").  In October 2016, Theranos announced that it would cease offering clinical lab testing services.  Following that decision but before the company ceased operation in 2018, Theranos "decommissioned" its LIS, rendering it nonfunctional and converting the data to a format that is not readily retrievable.  This decision had the effect of obscuring or destroying detailed information regarding the specific tests Theranos conducted during the years of its clinical testing operation, hindering the government's investigation of Defendants.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees and representatives of the Theranos assignee.

21. **Obtaining personal benefit from position at Theranos.**  In addition to their salaries and other direct compensation, Defendants also obtained significant additional benefits from their positions at Theranos.  For example, the company regularly paid for luxury travel and accommodations for Holmes.  Additionally, Holmes routinely required her office assistant to perform a large number of personal tasks seemingly unrelated to the business of Theranos, including shopping for and returning household items, clothing, luxury fashion accessories, and beauty products.  Finally, both Holmes and Balwani were he beneficiaries of increased local and national standing as a result of their association with Theranos.  Holmes was featured in numerous publications and lauded as a visionary.  Defendants also associated with celebrities, dignitaries, and other wealthy and powerful individuals who were interested in Theranos.  Holmes collected a substantial salary from Theranos, which enabled her to live a luxurious lifestyle, driving a luxury SUV, renting an expensive home, and purchasing expensive merchandise.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees, journalists who investigated Theranos, members of the Theranos Board, and potential and actual investors in Theranos.

22. **Concealing the romantic relationship between Holmes and Balwani from investors and others.**  During much of the relevant time period, Defendants Holmes and Balwani were romantically involved.  This relationship was actively concealed from others to whom its existence would have been material, including:  prospective and actual investors; members of the Board of Directors; representatives of Walgreens, Safeway, and other partner organizations; Theranos employees; and journalists.  Defendants took steps to hide the existence of this relationship, such as commuting to work separately and avoiding being seen together outside of work.  On at least one occasion, when questioned by a journalist as to whether she was in a relationship, Holmes falsely stated that she was not.  The government may introduce these and similar facts through produced documents as well as through testimony from witnesses including, but not limited to, former Theranos employees as well as members of the Board of Directors, potential and actual

investors in Theranos, potential and actual strategic partners of Theranos, and journalists who interviewed Defendants.

Very truly yours,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515


/s/
JOHN C. BOSTIC
Assistant United States Attorney

# Exhibit B

*United States v. Holmes, et al.*
18-cr-01145-JWB-JGS

Exhibit B to Ms. Holmes' Motion to Strike 404(b) Notice Or, In The Alternative, Compel Adequate 404(b) Disclosure

| 404(b) Category | Failure to Specify All Particular Other Acts | Vague Descriptions and Terminology | Failure to Identify Who Committed the Other Act | Failure to Identify Supporting Documents or Witness Statements | Failure to Tie Documents and Witness Statements to Allegations | Failure to Identify 404(b) Evidence for Impeachment or Rebuttal | Failure to Articulate 404(b) Purpose |
|---|---|---|---|---|---|---|---|
| Category 1 (False and Misleading Representations Directed at Insured Patients) | X | X | | | X | X | X |
| Category 2 (False and Misleading Representations Directed a Doctors) | X | | X | | X | X | X |
| Category 3 (False and Misleading Representations Made to Theranos' Board of Directors) | X | X | | | X | X | X |
| Category 4 (False and Misleading Representations Made to Walgreens) | X | X | | | X | X | X |

| 404(b) Category | Failure to Specify All Particular Other Acts | Vague Descriptions and Terminology | Failure to Identify Who Committed the Other Act | Failure to Identify Supporting Documents or Witness Statements | Failure to Tie Documents and Witness Statements to Allegations | Failure to Identify 404(b) Evidence for Impeachment or Rebuttal | Failure to Articulate 404(b) Purpose |
|---|---|---|---|---|---|---|---|
| **Category 5 (False and Misleading Representations Made to Safeway)** | **X** | **X** | | | **X** | **X** | **X** |
| **Category 6 (False and Misleading Representations Made to Journalists)** | **X** | | **X** | | **X** | **X** | **X** |
| **Category 7 (Fostering Culture of Secrecy and Forcing Employees and Others to Sign Non-Disclosure Agreements)** | **X** | **X** | | | **X** | **X** | **X** |
| **Category 8 (Restricting Access to Laboratory Areas Within Theranos)** | **X** | **X** | | **X** | **X** | **X** | **X** |
| **Category 9 (Harassing, Threatening, or Otherwise Influencing Doctors or Patients)** | **X** | **X** | | **X** | **X** | **X** | **X** |
| **Category 10 (Threatening, Influencing, or Vilifying Journalists in Response to Negative Coverage of Theranos)** | **X** | **X** | **X** | | **X** | **X** | **X** |

| 404(b) Category | Failure to Specify All Particular Other Acts | Vague Descriptions and Terminology | Failure to Identify Who Committed the Other Act | Failure to Identify Supporting Documents or Witness Statements | Failure to Tie Documents and Witness Statements to Allegations | Failure to Identify 404(b) Evidence for Impeachment or Rebuttal | Failure to Articulate 404(b) Purpose |
|---|---|---|---|---|---|---|---|
| Category 11 (Blaming and Vilifying Competing Companies) | X | X | X | | X | X | X |
| Category 12 (Threatening or Intimidating Employees and Former Employees) | X | X | X | | X | X | X |
| Category 13 (False and Misleading Representations to Regulatory Organizations) | X | | X | | X | X | X |
| Category 14 (Violations of Industry Standards and Government Regulations or Rules ) | X | X | X | | X | X | X |
| Category 15 (Altering or Tampering With Third-Party Medical Devices) | X | | X | | X | X | X |
| Category 16 (Multiplexing Test Results and Disregarding Outliers to Mask Inconsistency) | X | | X | | X | X | X |
| Category 17 (Improperly Setting and Altering Reference Ranges) | X | X | X | | X | X | X |

| 404(b) Category | Failure to Specify All Particular Other Acts | Vague Descriptions and Terminology | Failure to Identify Who Committed the Other Act | Failure to Identify Supporting Documents or Witness Statements | Failure to Tie Documents and Witness Statements to Allegations | Failure to Identify 404(b) Evidence for Impeachment or Rebuttal | Failure to Articulate 404(b) Purpose |
|---|---|---|---|---|---|---|---|
| **Category 18 (Withholding Critical Test Results and Other Important Information)** | X | X | X |  | X | X | X |
| **Category 19 (Declining to Conduct or Agree to Meaningful Comparative Tests)** | X | X | X |  | X | X | X |
| **Category 20 (Decommissioning Theranos' Laboratory Information System Database)** | X |  | X | X | X | X | X |
| **Category 21 (Obtaining Personal Benefit From Position at Theranos)** | X | X |  |  | X | X | X |
| **Category 22 (Concealing the Romantic Relationship Between Holmes and Balwani from Investors and Others)** | X |  |  |  | X | X | X |

# Exhibit C

**Saharia, Amy**

| | |
|---|---|
| **From:** | Wade, Lance |
| **Sent:** | Wednesday, March 11, 2020 4:38 PM |
| **To:** | Bostic, John (USACAN); Downey, Kevin; Trefz, Katherine; 'Coopersmith, Jeffrey'; 'Cazares, Stephen'; 'Brown, Walter F.'; 'Luskey, Randy'; Saharia, Amy |
| **Cc:** | Leach, Robert (USACAN); Schenk, Jeffrey (USACAN); Nedrow, Jeff (USACAN); Baehr-Jones, Vanessa (USACAN); Wade, Lance |
| **Subject:** | RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b) |

Dear Counsel:

We write to express concern regarding your March 6, 2020 letter, which purports to provide notice of the government's intention to offer evidence pursuant to Rule 404(B). The extraordinary scope of the letter – which increases the size and complexity of the case exponentially, and attempts to undo aspects of the Court's February 11, 2020 Order – presents profound concerns regarding the management and litigation of this case going forward. Accordingly, we intend to raise the government's letter with the Court immediately, and seek a status conference to address these concerns. Please advise by noon tomorrow whether you consent to a status conference on this issue.

In addition, your letter fails to comply with FRE 404(B) and Local Rule 16-1. We will raise these issues in more detail in the future, should the Court require us to do so. As a preliminary matter, however, we note that many of the allegations set forth in your letter are not "supported by documentary evidence or witness statements" that have been produced to the defense. L.R. 16-1(3). Please supplement your productions to date and include all of the evidence in your possession on the 22 specified items. Please also identify the particular witness statements and evidence that you intend to offer for each of the 22 specified items. That specificity is required so that there is "sufficient detail that the Court may rule on the admissibility of the proffered evidence." Id.

Sincerely,

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade

---

**From:** Bostic, John (USACAN) <John.Bostic@usdoj.gov>
**Sent:** Saturday, March 7, 2020 1:57 AM
**To:** Wade, Lance <LWade@wc.com>; Downey, Kevin <KDowney@wc.com>; Trefz, Katherine <KTrefz@wc.com>; 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>; 'Cazares, Stephen' <scazares@orrick.com>; 'Brown, Walter F.' <wbrown@orrick.com>; 'Luskey, Randy' <rluskey@orrick.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <Robert.Leach@usdoj.gov>; Schenk, Jeffrey (USACAN) <Jeffrey.B.Schenk@usdoj.gov>; Nedrow, Jeff (USACAN) <Jeff.Nedrow@usdoj.gov>; Baehr-Jones, Vanessa (USACAN) <Vanessa.Baehr-Jones@usdoj.gov>
**Subject:** U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Counsel,

Please see the attached correspondence.

Regards,
John

John C. Bostic
Assistant United States Attorney
Northern District of California
150 Almaden Blvd. | San Jose, CA 95113
Tel.:  (408) 535-5589 | Fax:  (408) 535-5066
Email:  john.bostic@usdoj.gov

# Exhibit D

## Saharia, Amy

| | |
|---|---|
| **From:** | Bostic, John (USACAN) <John.Bostic@usdoj.gov> |
| **Sent:** | Wednesday, March 11, 2020 7:43 PM |
| **To:** | Wade, Lance; Downey, Kevin; Trefz, Katherine; 'Coopersmith, Jeffrey'; 'Cazares, Stephen'; 'Brown, Walter F.'; 'Luskey, Randy'; Saharia, Amy |
| **Cc:** | Leach, Robert (USACAN); Schenk, Jeffrey (USACAN); Nedrow, Jeff (USACAN); Baehr-Jones, Vanessa (USACAN) |
| **Subject:** | RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b) |

Lance,

We're surprised at the claim that the scope of the 404(b) notice has caught the defense off-guard, and we disagree that the notice increases the size or complexity of the case.  If the defense has been reviewing the reports summarizing our interviews of witnesses, you've been on notice for some time that the topics discussed in the notice have always been part of the government's investigation.  Indeed, many of the facts in the notice are inextricably intertwined with the core offense conduct.  As to compliance with Rule 404 and the local rules, we believe the government's notice is sufficiently detailed to put the defense on notice of the relevant topics as well as the general nature of the supporting evidence in a way that enables the Court to rule on admissibility if necessary.

You asked for the government's thoughts on scheduling a status conference on this topic.  So that we can take an informed position, please explain what relief the defense would be requesting from the Court and why that request could not be raised in a noticed motion.

Regards,
John

---

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Wednesday, March 11, 2020 1:38 PM
**To:** Bostic, John (USACAN) <jbostic@usa.doj.gov>; Downey, Kevin <KDowney@wc.com>; Trefz, Katherine <KTrefz@wc.com>; 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>; 'Cazares, Stephen' <scazares@orrick.com>; 'Brown, Walter F.' <wbrown@orrick.com>; 'Luskey, Randy' <rluskey@orrick.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <RLeach@usa.doj.gov>; Schenk, Jeffrey (USACAN) <JSchenk@usa.doj.gov>; Nedrow, Jeff (USACAN) <JNedrow@usa.doj.gov>; Baehr-Jones, Vanessa (USACAN) <vbaehr-jones@usa.doj.gov>; Wade, Lance <LWade@wc.com>
**Subject:** RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Dear Counsel:

We write to express concern regarding your March 6, 2020 letter, which purports to provide notice of the government's intention to offer evidence pursuant to Rule 404(B).  The extraordinary scope of the letter – which increases the size and complexity of the case exponentially, and attempts to undo aspects of the Court's February 11, 2020 Order – presents profound concerns regarding the management and litigation of this case going forward.  Accordingly, we intend to raise the government's letter with the Court immediately, and seek a status conference to address these concerns.  Please advise by noon tomorrow whether you consent to a status conference on this issue.

In addition, your letter fails to comply with FRE 404(B) and Local Rule 16-1.  We will raise these issues in more detail in the future, should the Court require us to do so.  As a preliminary matter, however, we note that many of the allegations set forth in your letter are not "supported by  documentary evidence or witness statements" that have been produced

to the defense.  L.R. 16-1(3).  Please supplement your productions to date and include all of the evidence in your possession on the 22 specified items.  Please also identify the particular witness statements and evidence that you intend to offer for each of the 22 specified items.  That specificity is required so that there is "sufficient detail that the Court may rule on the admissibility of the proffered evidence."  Id.

Sincerely,

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade

---

**From:** Bostic, John (USACAN) <John.Bostic@usdoj.gov>
**Sent:** Saturday, March 7, 2020 1:57 AM
**To:** Wade, Lance <LWade@wc.com>; Downey, Kevin <KDowney@wc.com>; Trefz, Katherine <KTrefz@wc.com>; 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>; 'Cazares, Stephen' <scazares@orrick.com>; 'Brown, Walter F.' <wbrown@orrick.com>; 'Luskey, Randy' <rluskey@orrick.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <Robert.Leach@usdoj.gov>; Schenk, Jeffrey (USACAN) <Jeffrey.B.Schenk@usdoj.gov>; Nedrow, Jeff (USACAN) <Jeff.Nedrow@usdoj.gov>; Baehr-Jones, Vanessa (USACAN) <Vanessa.Baehr-Jones@usdoj.gov>
**Subject:** U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Counsel,

Please see the attached correspondence.

Regards,
John

JOHN C. BOSTIC
Assistant United States Attorney
Northern District of California
150 Almaden Blvd. | San Jose, CA 95113
Tel.:  (408) 535-5589 | Fax:  (408) 535-5066
Email:  john.bostic@usdoj.gov

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

**Exhibit E**

**Saharia, Amy**

| | |
|---|---|
| **From:** | Wade, Lance |
| **Sent:** | Wednesday, March 11, 2020 9:48 PM |
| **To:** | Bostic, John (USACAN); Downey, Kevin; Trefz, Katherine; 'Coopersmith, Jeffrey'; 'Cazares, Stephen'; 'Brown, Walter F.'; 'Luskey, Randy'; Saharia, Amy |
| **Cc:** | Leach, Robert (USACAN); Schenk, Jeffrey (USACAN); Nedrow, Jeff (USACAN); Baehr-Jones, Vanessa (USACAN) |
| **Subject:** | RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b) |

John:

To be sure, the government investigated many things over a period of four years (though, not nearly everything laid out in your 22-item notice). But the grand jury returned an indictment that covers a small fraction of that investigative material — yet now, you improperly seek to drag evidence and unsubstantiated allegations far beyond the charged conduct into this case, only a few months before trial. If it is your view that those 22 items did not "increase[] the size or complexity of the case," suffice it to say that we can agree to disagree.

With respect to the inquiry in your second paragraph below, the relief we seek is a status conference. At that conference we intend to raise with the Court case management and scheduling concerns raised by the extraordinary breadth of your notice. We believe this is an appropriate matter to raise via an administrative motion. Please advise of your position on our request for a status conference on the timeline previously requested.

With respect to the deficiencies of your notice and its failure to comply with the local rule, your position is noted. We will raise those deficiencies with the Court in a separate motion.

Thanks.

—Lance

**From:** Bostic, John (USACAN) <John.Bostic@usdoj.gov>
**Date:** Wednesday, Mar 11, 2020, 7:42 PM
**To:** Wade, Lance <LWade@wc.com>, Downey, Kevin <KDowney@wc.com>, Trefz, Katherine <KTrefz@wc.com>, 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>, 'Cazares, Stephen' <scazares@orrick.com>, 'Brown, Walter F.' <wbrown@orrick.com>, 'Luskey, Randy' <rluskey@orrick.com>, Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <Robert.Leach@usdoj.gov>, Schenk, Jeffrey (USACAN) <Jeffrey.B.Schenk@usdoj.gov>, Nedrow, Jeff (USACAN) <Jeff.Nedrow@usdoj.gov>, Baehr-Jones, Vanessa (USACAN) <Vanessa.Baehr-Jones@usdoj.gov>
**Subject:** RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Lance,

We're surprised at the claim that the scope of the 404(b) notice has caught the defense off-guard, and we disagree that the notice increases the size or complexity of the case. If the defense has been reviewing the reports summarizing our interviews of witnesses, you've been on notice for some time that the topics discussed in the notice have always been part of the government's investigation. Indeed, many of the facts in the notice are inextricably intertwined with the core offense conduct. As to compliance with Rule 404 and the local rules, we believe the government's notice is sufficiently detailed to put the defense on notice of the relevant topics as well as the general nature of the supporting evidence in a way that enables the Court to rule on admissibility if necessary.

You asked for the government's thoughts on scheduling a status conference on this topic.  So that we can take an informed position, please explain what relief the defense would be requesting from the Court and why that request could not be raised in a noticed motion.


Regards,
John


---

**From:** Wade, Lance <LWade@wc.com>
**Sent:** Wednesday, March 11, 2020 1:38 PM
**To:** Bostic, John (USACAN) <jbostic@usa.doj.gov>; Downey, Kevin <KDowney@wc.com>; Trefz, Katherine <KTrefz@wc.com>; 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>; 'Cazares, Stephen' <scazares@orrick.com>; 'Brown, Walter F.' <wbrown@orrick.com>; 'Luskey, Randy' <rluskey@orrick.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <RLeach@usa.doj.gov>; Schenk, Jeffrey (USACAN) <JSchenk@usa.doj.gov>; Nedrow, Jeff (USACAN) <JNedrow@usa.doj.gov>; Baehr-Jones, Vanessa (USACAN) <vbaehr-jones@usa.doj.gov>; Wade, Lance <LWade@wc.com>
**Subject:** RE: U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Dear Counsel:

We write to express concern regarding your March 6, 2020 letter, which purports to provide notice of the government's intention to offer evidence pursuant to Rule 404(B).  The extraordinary scope of the letter – which increases the size and complexity of the case exponentially, and attempts to undo aspects of the Court's February 11, 2020 Order – presents profound concerns regarding the management and litigation of this case going forward.  Accordingly, we intend to raise the government's letter with the Court immediately, and seek a status conference to address these concerns.  Please advise by noon tomorrow whether you consent to a status conference on this issue.

In addition, your letter fails to comply with FRE 404(B) and Local Rule 16-1.  We will raise these issues in more detail in the future, should the Court require us to do so.  As a preliminary matter, however, we note that many of the allegations set forth in your letter are not "supported by  documentary evidence or witness statements" that have been produced to the defense.  L.R. 16-1(3).  Please supplement your productions to date and include all of the evidence in your possession on the 22 specified items.  Please also identify the particular witness statements and evidence that you intend to offer for each of the 22 specified items.  That specificity is required so that there is "sufficient detail that the Court may rule on the admissibility of the proffered evidence."  Id.


Sincerely,


**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade


---

**From:** Bostic, John (USACAN) <John.Bostic@usdoj.gov>
**Sent:** Saturday, March 7, 2020 1:57 AM
**To:** Wade, Lance <LWade@wc.com>; Downey, Kevin <KDowney@wc.com>; Trefz, Katherine <KTrefz@wc.com>; 'Coopersmith, Jeffrey' <jcoopersmith@orrick.com>; 'Cazares, Stephen' <scazares@orrick.com>; 'Brown, Walter F.' <wbrown@orrick.com>; 'Luskey, Randy' <rluskey@orrick.com>; Saharia, Amy <ASaharia@wc.com>
**Cc:** Leach, Robert (USACAN) <Robert.Leach@usdoj.gov>; Schenk, Jeffrey (USACAN) <Jeffrey.B.Schenk@usdoj.gov>;

Nedrow, Jeff (USACAN) <Jeff.Nedrow@usdoj.gov>; Baehr-Jones, Vanessa (USACAN) <Vanessa.Baehr-Jones@usdoj.gov>
**Subject:** U.S. v. Holmes & Balwani - Notice Under FRE404(b)

Counsel,

Please see the attached correspondence.

Regards,
John

JOHN C. BOSTIC
Assistant United States Attorney
Northern District of California
150 Almaden Blvd. | San Jose, CA 95113
Tel.: (408) 535-5589 | Fax: (408) 535-5066
Email: john.bostic@usdoj.gov

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# Exhibit F

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LANCE WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 23, 2020

<u>Via Email</u>

Mr. John C. Bostic, Esquire
Mr. Robert Leach, Esquire
Ms. Vanessa Baehr-Jones, Esquire
Mr. Jeffrey Schenk, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

  Re: <u>United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani</u>
    <u>No. CR-18-00258-EJD (N.D. Cal.)</u>

Dear Counsel:

  I write to follow up on my e-mail of March 11 and my letter of March 13 regarding the government's Rule 404(b) disclosure.

  Local Criminal Rule 16-1(c)(3) requires that the government's "summary of any evidence of other crimes, wrongs or acts which the government intends to offer under F. R. Evid. 404(b)" be "supported by documentary evidence or witness statements in sufficient detail" to enable the Court to "rule on the admissibility of the proffered evidence." The government's disclosure comes nowhere close to satisfying this rule. It does not identify the "documentary evidence or witness statements" on which it is based, and many of the disclosed categories of allegations are so vague that we cannot reasonably be expected to scour the government's voluminous production to guess what evidence may be at issue.

  We intend to move to compel an adequate disclosure under Local Rule 16-1(c)(3) by March 30, 2020, unless the government provides before then the following information, all of which the government should already have at its disposal.

  a. <u>Category #1</u>:  Please identify the documents the government intends to use to prove the allegations in this category; the identities of and statements by the witnesses the

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al.*
March 23, 2020
Page 2

government intends to call to prove the allegations in this category; and, for each alleged
misrepresentation in this category, the information required to be provided in a bill of particulars
pursuant to the Court's Order of February 11, 2020.  The government cannot evade the
disclosure obligation in that Order by attempting to introduce the same alleged
misrepresentations by means of Rule 404(b).

      b.    <u>Category #2</u>:  Please identify the documents the government intends to use
to prove the allegations in this category; the identities of and statements by the witnesses the
government intends to call to prove the allegations in this category; and, for each alleged
misrepresentation in this category, the information required to be provided in a bill of particulars
pursuant to the Court's Order of February 11, 2020.  The government cannot evade the
disclosure obligation in that order by attempting to introduce the same alleged misrepresentations
by means of Rule 404(b).  We note that the government has disclosed the identities of doctor
witnesses for whom it has not yet disclosed a 302 interview memorandum.

      c.    <u>Category #4</u>:  Please identify the documents the government intends to use
to prove the allegations in this category, and the identities of and statements by the witnesses the
government intends to call to prove the allegations in this category.

      d.    <u>Category #5</u>:  Please identify the documents the government intends to use
to prove the allegations in this category, and the identities of and statements by the witnesses the
government intends to call to prove the allegations in this category.

      e.    <u>Category #6</u>:  Please identify whether the government is alleging that
Defendants made misrepresentations to journalists other than Roger Parloff, and, if so, identify
the journalists, the alleged misrepresentations, and the evidentiary basis for the alleged
misrepresentations.  In addition, please identify each instance in which the government claims
that Defendants "did not correct the false conclusions that journalists reached based on
Defendants [sic] statements" and/or "did not correct" "false statements about Theranos's
capabilities" that they saw in "press coverage[.]"  For each such instance, identify the evidentiary
basis for the allegation and the source of any legal duty to make such corrections.  For all
allegations in this category, please identify the documents the government intends to use to prove
the allegations and the identities of and statements by the witnesses the government intends to
call to prove the allegations.

      f.    <u>Category #7</u>:  Please identify the evidentiary basis for the following vague
allegations (including the documents the government intends to use to prove the allegations and
the identities of and statements by the witnesses the government intends to call to prove the
allegations):

          i.    "Defendants took steps to silo information within Theranos,
discouraging employees from sharing information about their work

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al*.
March 23, 2020
Page 3

with other employees in the company and fostering a culture of internal secrecy";

ii.    "Defendants discouraged employees from sharing information regarding Theranos's use of third-party analyzers for its tests, taking specific steps to conceal this fact from employees who did not already know";

iii.   "Defendants were similarly secretive with investors, refusing to disclose to representatives like Lisa Peterson the identities of other investors in the company."

g.    <u>Category #8</u>:  Please identify the evidentiary basis for the following vague allegations (including the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations):

i.    "Defendants set policies at Theranos that severely restricted access to the laboratory areas where Theranos tested patient samples";

ii.    Each instance in which the government alleges that "Defendants misled visitors to Theranos by intentionally giving them the impression that the clinical lab consisted of multiple Theranos TSPUs and did not include other conventional devices."

h.    <u>Category #9</u>:  This category identifies only one instance in which the government claims that "Defendants and their agents engaged in harassing, threatening, or other improper behavior in an effort to dissuade those providers from generating negative publicity for Theranos."  Please identify all other alleged instances of such "harassing, threatening, or other improper behavior" and the evidentiary basis for such allegations, including the documents the government intends to use to prove this allegation and the identities of and statements by the witnesses the government intends to call to prove these allegations.

i.    <u>Category #10</u>:  Please identify each instance in which the government alleges that Defendants "[t]hreaten[ed], influenc[ed], or vilif[ied] journalists in response to negative coverage of Theranos."  Please identify for each such instance the way in which the government claims that Defendants' conduct was threatening or constituted an "improper[]" attempt to influence the journalists. For each such instance, please identify the documents the government intends to use to prove this allegation and the identities of and statements by the witnesses the government intends to call to prove these allegations.

j.    <u>Category #11</u>:  Please identify the evidentiary basis (including the documents the government intends to use to prove and the identities of and statements by the witnesses the government intends to call to prove) for the vague allegation that "Defendants

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al.*
March 23, 2020
Page 4

attributed blame to competing companies like Quest and LabCorp., stating and implying that those companies were influencing the government and/or the media." Please also identify each instance in which the government alleges that Defendants "made statements during this time period arguing that Theranos had been unfairly targeted for criticism as a result of action by competitors given Theranos's potential to disrupt the blood testing industry."

      k.      <u>Category #12</u>:  Please identify all instances in which the government alleges that Defendants and their agents "directed threats and intimidating language at current and former Theranos employees in an effort to discourage employees from disseminating facts about the problems facing the company's technology and business." Please identify all instances in which the government alleges that "when employees left the company voluntarily or were terminated, Defendants corresponded or met with those employees to deliver stern reminders of the employee's obligations under nondisclosure agreements and threatened employees with consequences should they reveal any nonpublic information about Theranos's technology or business practices." Please identify all instances in which the government alleges that "Defendants reacted angrily and attempted to threaten or intimidate employees whom they suspected to be the sources of negative publicity concerning Theranos." Finally, please identify the specific actions by which the government claims vaguely that Defendants "fostered a culture that strongly discouraged skepticism or dissent from employees" and "enforc[ed] that culture by reacting with hostility and intimidation to any questioning." For all such allegations, please identify the documents you intend to use to prove the allegations and the identities of and statements by any witnesses you intend to call to prove the allegations.

      l.      <u>Category #13</u>:  Please identify all instances in which the government claims that Defendants made "[f]alse and misleading representations . . . to FDA, CMS, CDPH, and other regulatory organizations." For all such allegations, please identify the documents you intend to use to prove the allegations and the identities of and statements by the witnesses you intend to call to prove the allegations.

      m.      <u>Category #14</u>:  Please identify the evidentiary basis for the following vague allegations (including the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations):

          i.      "Defendants disregarded and failed to conform to industry standards as well as government regulations or rules regarding research and development procedures, medical devices and clinical laboratory standards";

          ii.      "Theranos failed to conduct adequate validation studies, relying on insufficient data to claim that their tests were valid, accurate, and reliable";

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al.*
March 23, 2020
Page 5

       iii.      "Theranos also cut corners in its Arizona research and development testing, failing to implement a clear protocol for informed consent for trial participants and fostering a coercive environment for testing";

       iv.      "Theranos's CLIA lab also improperly failed to develop, maintain, and follow adequate standard operating procedures for its clinical tests";

       v.      "Defendants also exercised an improper degree of control and influence over the operation of Theranos's CLIA lab despite their lack of medical education or training";

       vi.      "Defendants, and Balwani in particular, were deeply involved in clinical decisions that should have been left to the discretion of the laboratory director—even overruling the laboratory director at times";

       vii.      "Defendants consistently made decisions that prioritized preserving Theranos's reputation and secrecy at the expense of providing complete information to doctors and patients."

       n.     <u>Category #15</u>:  Please identify the evidentiary basis for the government's allegation that Defendants' alleged modification of third-party devices was "contrary to industry standards and the manufacturers' intended use for such devices."

       o.     <u>Category #16</u>:  Please identify the evidentiary basis for the government's allegations that "Theranos operated its analyzers according to a protocol that included running each assay multiple times and then multiplexing the results in order to derive the final, reported result" and that "so-called outlier results—individual results that deviated from other results for a given assay on a given sample—were discarded and not accounted for."  If the government is claiming that Defendants specifically intended for such protocol to "mask consistency problems with Theranos's tests[,]" please identify the evidentiary basis for such an allegation.  For all allegations in this category, please identify the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations.

       p.     <u>Category #17</u>:  Please identify the evidentiary basis for the government's vague allegations that "Theranos's lab practices deviated from industry standards and standard testing protocols approved by FDA and validated by the industry" and that "Theranos improperly relied on references ranges for common, FDA-approved tests and/or conducted insufficient studies to set and adjust its own reference ranges."  In addition, please identify each instance in which the government alleges that Theranos "improperly adjusted reference ranges based on

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al.*
March 23, 2020
Page 6

individual clinical results—without conducting sufficient studies to justify such an adjustment—in order to bring out-of-range results back into the newly adjusted 'normal' range and avoid abnormal results to patients."  In addition, if the government is claiming that Defendants "adjusted reference ranges" for the specific purpose of "avoid[ing] [giving] abnormal results to patients[,]" please identify the evidentiary basis for such an allegation.  For all allegations in this category, please identify the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations.

       q.     <u>Category #18</u>:  Please identify each instance in which the government claims that Theranos "withheld test results that were in the 'critical' range for a given analyte." In addition, please identify the "key facts regarding problems with their laboratory practices" that the government claims Theranos failed to provide.  For all "information" that the government claims Defendants "withheld," please identify the source of any alleged duty to disclose.  For all allegations in this category, please identify the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations.

       r.     <u>Category #19</u>:  Please identify each instance in which the government claims that Defendants "declined to conduct sufficient comparative tests establishing that Theranos's test results delivered accurate and reliable results when compared to competing technologies" and what the government is claiming qualifies as "sufficient comparative tests." Please also identify each instance in which the government claims that Defendants "failed to conduct comprehensive and accurate comparative tests establishing that its assays could reliably be conducted on finger-stick samples as opposed to vein draws" and what the government is claiming qualifies as "comprehensive and accurate comparative tests."  Please identify each instance in which the government claims that Defendants "refused to commission or authorize such comparative testing through Sarah Cannon, Cleveland Clinic, UCSF, or other independent third-parties, to publish the results or any such testing, and to provide that information to the company's board."  For all such allegations, please identify the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations.

       s.     <u>Category #20</u>:  To our knowledge, based on the government's production to date, no witness, and no representative of the Theranos assignee, has spoken to the government regarding the decommissioning of the LIS database.  My letter of March 13 specifically raised this issue, and your response letter ignored this point altogether.  Please identify all documents the government intends to use to prove the allegations in this category and the identities of and statements by the witnesses the government intends to call to prove the allegations in this category.  In addition, if the government is claiming that the decommissioning was intended by Defendants to "obscur[e] or destroy[] detailed information regarding the specific tests Theranos conducted during the years of its clinical testing operation" and/or to "hinder[] the government's investigation of Defendants[,]" please identify the evidentiary basis

WILLIAMS & CONNOLLY LLP

John C. Bostic, Esq., *et al*.
March 23, 2020
Page 7

for any such representation.  For all allegations in this category, please identify the documents the government intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove the allegations.

    t. <u>Category #21</u>:  Please identify all of the "significant additional benefits" that the government claims Defendants obtained from their positions at Theranos.  For all allegations in this category, please identify the documents the governments intends to use to prove the allegations and the identities of and statements by the witnesses the government intends to call to prove these allegations.  In addition, to the extent the government intends to call "journalists who investigated Theranos" to prove these allegations, please explain the evidentiary basis for the admissibility of such testimony, which will inevitably be based on statements by out-of-court witnesses.

    Additionally, please advise whether any modifications to the government's prior disclosure will be forthcoming as a result of the severance.

       Sincerely,

       Lance Wade

# Exhibit G



*United States Attorney*
*Northern District of California*

---

*1301 Clay Street, Suite 340S*          *(510) 637-3680*
*Oakland, California 94612*          *Fax: (510) 637-3724*

April 3, 2020

*By Email*

Lance Wade, Esq.
Kevin Downey, Esq.
Katie Trefz, Esq.
Amy Saharia, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005

Re:     *United States v. Holmes & Balwani*, CR 18-258 EJD

Dear Counsel,

I write in response to your March 23, 2020 letter.  The government's Rule 404(b) notices are sufficient and satisfy the requirements of the local rule.  Our March 6, 2020 letter in particular provides sufficient detail such that the Court may rule on the admissibility of the proffered evidence.  We dispute any claim that you are surprised by any of the matters set forth in the March 6, 2020 letter.  We have sent you no fewer than sixteen discovery letters since July 2018 stating:  "The government also hereby gives notice that it may seek to introduce the other crimes, wrongs or acts committed by defendant which are referenced in the enclosed documents pursuant to Rules 404(b), 608 and/or 609 of the Federal Rules of Evidence."  We also dispute any claim that the government's Rule 404(b) disclosures significantly or unexpectedly "expand" the case.  Indeed, much of the March 6, 2020 letter and the matters set forth below are not properly considered 404(b) evidence but instead are disclosed out of an abundance of caution and to avoid surprise about the government's intentions.  By providing this disclosure, the government is not conceding that the evidence described below (or previously) is admissible only under the provisions of Rule 404(b).  The government may also assert that this evidence is admissible as direct evidence of the charged conduct, that it is inextricably intertwined with the events charged in the operative Indictment, that it shows a continuing course of conduct otherwise admissible under Rules 401 and 402, or that it simply is not subject to Rule 404(b).

With that in mind, we supplement our prior disclosures as follows:

**False and misleading representations directed at insured patients.**

The government may call the following individuals: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Their prior statements have been produced to you or are attached.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements, as well as records produced in discovery relating to tests Theranos performed for such insured patients (or ordered by their physicians) and/or complaint logs, including, without limitation:

SEC-USAO-EPROD-000715459
SEC-USAO-EPROD-000772753
SEC-USAO-EPROD-000853289
SEC-USAO-EPROD-000877519
SEC-USAO-EPROD-000877524
SEC-USAO-EPROD-000877573
SEC-USAO-EPROD-001283843
SEC-USAO-EPROD-001357766
SEC-USAO-EPROD-002185369
SEC-USAO-EPROD-002185371
SEC-USAO-EPROD-002190318
THPFM0004992347
TS-0231006
TS2-0000002

SEC-USAO-EPROD-002756209

US-FDA-0035497
US-FDA-0035498
US-FDA-0035499
US-FDA-0035500
US-FDA-0035501
US-FDA-0035502
US-FDA-0040555
SEC-USAO-EPROD-000402791
SEC-USAO-EPROD-000957089
SEC-USAO-EPROD-001257940
SEC-USAO-EPROD-001258104
SEC-USAO-EPROD-001266264
SEC-USAO-EPROD-001266297
SEC-USAO-EPROD-001274832
SEC-USAO-EPROD-001756237
SEC-USAO-EPROD-002702412
SEC-USAO-EPROD-003080215
SEC-USAO-EPROD-003985757

SEC-USAO-EPROD-003985822
SEC-USAO-EPROD-004870058

SEC-USAO-EPROD-000388965
SEC-USAO-EPROD-000402267
SEC-USAO-EPROD-000402268
SEC-USAO-EPROD-000402269
SEC-USAO-EPROD-000404900
SEC-USAO-EPROD-000563810
SEC-USAO-EPROD-000841020
SEC-USAO-EPROD-000950922

SEC-USAO-EPROD-000950923
SEC-USAO-EPROD-001349287
SEC-USAO-EPROD-001354559
SEC-USAO-EPROD-002319700
SEC-USAO-EPROD-006000512
SEC-USAO-EPROD-002573419
THER-1491275
THER-1491276

SEC-USAO-EPROD-000881245

SEC-USAO-EPROD-000879453
SEC-USAO-EPROD-000997304
SEC-USAO-EPROD-001289817
SEC-USAO-EPROD-002101857
SEC-USAO-EPROD-002383092
SEC-USAO2-EPROD-000177859
THPFM0003755688
THPFM0003826459
THPFM0004069370
THPFM0004509162
THPFM0004545609
THPFM0004653568

SEC-USAO-EPROD-000656798
SEC-USAO-EPROD-000400993
SEC-USAO-EPROD-000564319
SEC-USAO-EPROD-000656798
SEC-USAO-EPROD-002756209
SEC-USAO-EPROD-003070238
SEC-USAO-EPROD-004601915

THPFM0000018472

**False and misleading representations directed at doctors.**

The government may call the following individuals: ███████████████
█████████ Their prior statements have been produced to you or are attached.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such interview reports, as well as records produced in discovery memorializing representations to doctors, including, without limitation:

TS-1078095
TS-1076614-16
THPFM0000003941
THPFM0002747643
THPFM0005008026
SEC-USAO-EPROD-000638580
TS-1124314
THPFM0003759724
THPFM0003759624
THPFM0000555315
THPFM0000958955
THPFM0000147443
THPFM0000204033

**False and misleading representations made to Theranos's Board of Directors.**

The government may call the following individuals from Theranos' board:  Riley Bechtel, David Boies, William Frist, Henry Kissinger, Richard Kovacevich, James Mattis, Sam Nunn, William Perry, Channing Robertson, Gary Roughead, Robert Shapiro, and George Shultz. Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing misrepresentations or relating to board members, including, without limitation:

PFM-DEPO-00010593-785
PFM-DEPO-00014157-14227
PFM-DEPO-00011053
PFM-GJ-00000926
SEC-USAO-EPROD-000009206
SEC-USAO-EPROD-000009214
SEC-USAO-EPROD-000009399
SEC-USAO-EPROD-000010407
SEC-USAO-EPROD-000012357
SEC-USAO-EPROD-000017769
SEC-USAO-EPROD-000027830

SEC-USAO-EPROD-000027998
SEC-USAO-EPROD-000032043
SEC-USAO-EPROD-000048468
SEC-USAO-EPROD-000048795
SEC-USAO-EPROD-000049227
SEC-USAO-EPROD-000050361
SEC-USAO-EPROD-000050812
SEC-USAO-EPROD-000051124
SEC-USAO-EPROD-000066325
SEC-USAO-EPROD-000066358
SEC-USAO-EPROD-000066368
SEC-USAO-EPROD-000066488
SEC-USAO-EPROD-000070593
SEC-USAO-EPROD-000070623
SEC-USAO-EPROD-000070643
SEC-USAO-EPROD-000070646
SEC-USAO-EPROD-000070661
SEC-USAO-EPROD-000128843
SEC-USAO-EPROD-000128929
SEC-USAO-EPROD-000129052
SEC-USAO-EPROD-000130080
SEC-USAO-EPROD-000429472
SEC-USAO-EPROD-002055775
SEC-USAO-EPROD-002629438
SEC-USAO-EPROD-002629781
SEC-USAO-EPROD-002629788
SEC-USAO-EPROD-002629796
SEC-USAO-EPROD-002629816
SEC-USAO-EPROD-002629820
SEC-USAO-EPROD-002629831
SEC-USAO-EPROD-002629843
SEC-USAO-EPROD-002629858
SEC-USAO-EPROD-002642562
SEC-USAO-EPROD-002642572
SEC-USAO-EPROD-002642580
SEC-USAO-EPROD-002642600
SEC-USAO-EPROD-003440256
SEC-USAO-EPROD-003441064
SEC-USAO-EPROD-003441405
SEC-USAO-EPROD-003966821
SEC-USAO-EPROD-004887198
SEC-USAO-EPROD-004888406
SEC-USAO-EPROD-004888426
SEC-USAO-EPROD-005786938
SEC-USAO-EPROD-006000464
SEC-USAO-EPROD-006021872

SEC-USAO2-EPROD-000009903
SEC-USAO2-EPROD-000009911
SEC-USAO2-EPROD-000009919
SEC-USAO2-EPROD-000009928
SEC-USAO2-EPROD-000010968
SEC-USAO2-EPROD-000012225
THER-0325204
THER-0335524
THER-0335796
THER-0335871
THER-0337106
THER-0337130
THER-0337131
THER-0337132
PFM-DEPO-00010632.
PFM-DEPO-00010789.
PFM-DEPO-00010792.
PFM-DEPO-00010643-57 & 793
PFM-DEPO-00010798
PFM-DEPO-00010801
PFM-DEPO-00010802
PFM-DEPO-00010814
PFM-DEPO-00010733
PFM-DEPO-00011002
PFM-DEPO-00011015
PFM-DEPO-00011017
PFM-DEPO-00011080
PFM-DEPO-00011098
PFM-DEPO-00011088
PFM-DEPO-00014176
PFM-DEPO-00014178, 181
PFM-DEPO-00014183,-84
PFM-DEPO-00014186-87
PFM-DEPO-00014196-9799, 14220-21
PFM-DEPO-00014199
SEC-USAO-EPROD-001193899

**False and misleading representations made to Walgreens.**

The government may call the following individuals from Walgreens: Dan Doyle, Nimesh Jhaveri, Wade Miquelon, Kim Romanski, and Jay Rosen.   Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing misrepresentations or relating to Walgreens, including, without limitation:

6

THER-2436909-45
WAG-TH-DOJ-00021950-988
WAG-TH-DOJ-00021948
WAG-TH_00010182; SEC-TX-000001925-1926
THER-AZ-06326446-500; TS-0906360-414
WAG-TH-00012056-65
WAG-TH-DOJ-00024875-77
WAG-TH-DOJ-00000005-47
WAG-TH-DOJ-00001745-63
WAG-TH-DOJ-00000181-210
WAG-TH-DOJ-00002825-36
PFM-DEPO-00018573
WAG-TH-00006788
WAG-TH-00006801
WAG-TH-00006827
WAG-TH-00002500-WAG-TH-00002514
WG002257-WG002259
WAG-TH-DOJ-00000040
WAG-TH-DOJ-00001748
SEC-TX-000001511
WAG-TH-00006788
WAG-TH-00006792
WAG-TH- 00009707
WAG-TH-00000216
WAG-TH-00006827
WAG000319

**False and misleading representations made to Safeway.**

The government may call the following individuals:  Steve Burd and Robert Gordon. Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing misrepresentations and relating to Safeway, including, without limitation:

PFM-DEPO-00017581
SEC-TX-000003066
SEC-USAO-EPROD-000016526
SEC-USAO-EPROD-000016615
SEC-USAO-EPROD-000016617
SEC-USAO-EPROD-000016667
SEC-USAO-EPROD-000016732
SEC-USAO-EPROD-000016742

SEC-USAO-EPROD-000016743
SEC-USAO-EPROD-000016745
SEC-USAO-EPROD-000016746
SEC-USAO-EPROD-000016756
SEC-USAO-EPROD-000016774
SEC-USAO-EPROD-000016776
SEC-USAO-EPROD-000016779
SEC-USAO-EPROD-000016783
SEC-USAO-EPROD-000016790
SEC-USAO-EPROD-000016792
SEC-USAO-EPROD-000016803
SEC-USAO-EPROD-000016804
SEC-USAO-EPROD-000016806
SEC-USAO-EPROD-000016810
SEC-USAO-EPROD-000016831
SEC-USAO-EPROD-000016850
SEC-USAO-EPROD-000035825
SEC-USAO-EPROD-000036124
SEC-USAO-EPROD-000036142
SEC-USAO-EPROD-000055893
SEC-USAO-EPROD-000122112
SEC-USAO-EPROD-000122116
SEC-USAO-EPROD-000122138
SEC-USAO-EPROD-000122157
SEC-USAO-EPROD-000122171
SEC-USAO-EPROD-000122203
SEC-USAO-EPROD-000122204
SEC-USAO-EPROD-000122217
SEC-USAO-EPROD-000122331
SEC-USAO-EPROD-000122498
SEC-USAO-EPROD-000122718
SEC-USAO-EPROD-000122823
SEC-USAO-EPROD-000122912
SEC-USAO-EPROD-000122928
SEC-USAO-EPROD-000122929
SEC-USAO-EPROD-000122930
SEC-USAO-EPROD-000122934
SEC-USAO-EPROD-000122934
SEC-USAO-EPROD-000124996
SEC-USAO-EPROD-000125159
SEC-USAO-EPROD-000125163
SEC-USAO-EPROD-000132870
SEC-USAO-EPROD-000403646
THPFM0005638605
THPFM0005638609
THPFM0005638615

THPFM0005638641
PFM-DEPO-00017722
PFM-DEPO-00017746
PFM-DEPO-00017807
PFM-DEPO-00017819
PFM-DEPO-00017821
PFM-DEPO-00017852
PFM-DEPO-00017853

**False and misleading representations made to journalists.**

The government may call the following individuals:  Dan Edlin, Roger Parloff, Caitlin Roper, and Eric Topol.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing representations to journalists, including, without limitation:

All documents Bates numbered PARLOFF including all recordings produced by Roger Parloff
Article, Wired, What health care needs is a real-time snapshot of you, Daniela Hernandez 11/6/2013
Article, Fortune, New blood, Roger Parloff, June 2014
Article, Forget Vials of Blood - New Tests Require Just One Drop: How a Stanford Dropout is revolutionizing the blood-testing industry, Liana Aghajanian
Article, Brand Channel, Breakthrough branding: Theranos, with Walgreens, Revolutionizes Healthcare, Sheila Shayon, 2/3/2015
Article, CNN, She's America's youngest female billionaire - and a dropout, 10/16/2014
Article, Wall Street Journal, Elizabeth Holmes: The Breakthrough of Instant Diagnosis, Joseph Rago, 9/8/13
Article, PR Newswire, Elizabeth Holmes, visionary silicon valley entrepreneur and passionate advocate…. 2015 Horatio Alger Award, 12/4/2014
Article, Economist, Holmes is where the heart is, 6/27/2015
Article, Singularity Hub Small fast and cheap Theranos is the poster child of med tech - and it's at Walgreens, Cameron Scott, 11/19/2013
Article & Video, Medscape Creative Disruption? She's 29 and Set to Reboot Lab Medicine - Elizabeth Holmes Plans to revolutionize testing by using tiny blood draws and offering near-instantaneous results, Eric Topol 11/18/2013
Video, Betting big on lab tests, 11/27/2013
Article, Wired, One drop infinite data, Caitlin Roper, March 2015
Theranos Twitter 11/2/2015
Article, The New Yorker, Ken Aueletta, Blood, Simpler, December 8, 2014
9/2014:  Holmes TEDMED interview
10/8/2014:  Holmes interview at Fortune Most Powerful Women
12/8/2014:  Holmes interview at Fortune Most Power Women

4/16/2015:  Holmes on CBS News
4/27/2015:  Holmes Interview with Jim Cramer
6/3/2015:  Holmes Interview with Charlie Rose
9/30/2015:  Holmes Interview with Bill Clinton
10/15/2015:  Holmes on Mad Money (Jim Cramer)
10/21/2015:  Holmes interview with WSJ (Jonathan Krim).
11/2/2015:  Holmes interview with Fortune (Alan Murray)
2016:  Today show interview
All articles/videos/media referenced in the government's bill of particulars
SEC-USAO-EPROD-000972051
SEC-USAO-EPROD-000972062
SEC-USAO-EPROD-000990339
SEC-USAO-EPROD-000990
SEC-USAO-EPROD-001204430
SEC-USAO-EPROD-000000343
SEC-USAO-EPROD-000000362

**Fostering culture of secrecy and forcing employees and others to sign non-disclosure agreements.**

The government may call the following individuals: Brad Arrington, David Boies, Sarah Cabayan, Erika Cheung, Michael Craig, Andrea Cuppoletti, Diana Dupuy, Dan Edlin, Surekha Gangakhedkar, Christian Holmes, Stefan Hristu, Heather King, Seth Michelson, Wade Miquelon, Roger Parloff, Channing Robertson, Mona Ramamurthy, Jan Reed, Kim Romanski, Jay Rosen, Adam Rosendorff, Callie Rosendin, Tyler Shultz, Daniel Young, and David Zatlan. Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing Holmes and Balwani's fostering a culture of secrecy and forcing employees and others to sign NDAs, including, without limitation:

PFM-DEPO-00000335
PFM-DEPO-00000708
PFM-DEPO-00001061
PFM-DEPO-00001147
PFM-DEPO-00001153
PFM-DEPO-00001164
PFM-DEPO-00001207
PFM-DEPO-00001209
PFM-DEPO-00001211
PFM-DEPO-00004743
PFM-DEPO-00005457

**Restricting access to laboratory areas within Theranos.**

The government may call the following individuals:  Sarah Cabayan, Erika Cheung, Andrea Cuppoletti, Sunil Dhawan, Diana Dupuy, Dan Edlin, Christian Holmes, Kerry Elenatinba-Johnson, Tony Nugent, Jan Reed, Kim Romanski, Adam Rosendorff, and Daniel Young.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing or relating to restricting access to laboratory areas within Theranos.

**Harassing, threatening, or otherwise influencing doctors or patients who had negative experiences with Theranos.**

The government may call the following individuals:  David Boies, ███████████
████████████.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer the as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing harassment, threats, or other influence of doctors or patients who had negative experiences with Theranos.

**Threatening, influencing, or vilifying journalists in response to negative coverage of Theranos.**

The government may call the following individuals:  David Boies, Brooke Buchanan, Nimesh Jhaveri, Heather King, Rupert Murdoch, and Roger Parloff.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing threats, influence, or vilification of journalists in response to negative coverage with Theranos, including, without limitation:

> SEC-USAO-EPROD-002487614
> THER-2507775
> SEC-USAO-EPROD-000536645
> SEC-USAO-EPROD-000034936
> SEC-USAO-EPROD-000034937
> SEC-USAO-EPROD-000536602
> SEC-USAO-EPROD-001045197

**Blaming and vilifying competing companies.**

The government may call the following individuals:  Nimesh Jhaveri, Wade Miquelon, Roger Parloff, Suraj Suksena, and Serena Stewart.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing Theranos' blaming and/or vilifying other companies, including, without limitation:

SEC-USAO-EPROD-002757301

**Threatening or intimidating employees and former employees.**

The government may call the following individuals:  Sarah Cabayan, Erika Cheung, Andrea Cuppoletti, Surekha Gangakhedkar, Rochelle Gibbons, Christian Holmes, Kerry Elenatinoba-Johnson, Seth Michaelson, Tony Nugent, Mona Ramamurthy, Callie Rosendin, Adam Rosendorff, Tyler Shultz, Daniel Young, and David Nathan Zalatan   Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing threats or intimidation of employees or former employees, including, without limitation:

PFM-DEPO-00000335
PFM-DEPO-00000708
PFM-DEPO-00001061
PFM-DEPO-00001147
PFM-DEPO-00001153
PFM-DEPO-00001164
PFM-DEPO-00001207
PFM-DEPO-00001209
PFM-DEPO-00001211
PFM-DEPO-00004743
PFM-DEPO-00005457

**False and misleading representations made to FDA, CMS, CDPH, and other regulatory organizations.**

The government may call the following individuals:  Sarah Bennett, Erica Cheung, Sunil Dhawan, Heather King, Courtney Lias, Eileen Norkin, Mark Pandori, Adam Rosendorff, Tyler Shultz, Gary Yamamoto, and Daniel Young.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced

in such prior statements as well as records produced in discovery memorializing representations to and efforts to conceal information from regulators, including, without limitation:

> SEC-USAO2-EPROD-000070971
> TS-1133080
> THPFM0001203524-532
> THPFM0004381689
> THPFM0000154254
> TS-0999042
> THPFM0000154254
> CTRL-DHAWAN-00009861

**Violations of industry standards and government regulations or rules regarding research and development procedures, medical devices and clinical laboratory practices.**

The government may call the following individuals:  Sarah Bennett, Erica Cheung, Sunil Dhawan, Max Fosque, Heather King, Courtney Lias, Mark Pandori, Adam Rosendorff, Tyler Shultz, Gary Yamamoto, and Daniel Young.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may present expert testimony on this matter, which has been disclosed to you separately and is incorporated by reference.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing violations of industry standards and other regulations, including, without limitation:

> CMS' report on its 2015 inspection and findings and correspondence with Theranos
> Sanctions imposed by CMS on Theranos arising from the 2015 inspection
> TS-1036460
> THPFM0000965933
> THPFM0001944964

**Altering or tampering with third-party medical devices.**

The government may call the following individuals:  Sarah Bennett, Jeff Blickman, Erika Chung, Sunil Dhawan, Dan Edlin, Richard Fernandez, Max Fosque, Sam Gong, Christian Holmes, Mark Pandori, Adam Rosendorff, and Daniel Young.   Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing altering or tampering with third-party medical devices, including, without limitation:

> SEC-TX-000005300
> SEC-TX-000005285
> SEC-USAO-EPROD-000666750

TS-0958390
TS-0959027
TS-0959090

**Multiplexing test results and disregarding outliers to mask inconsistency.**

The government may call the following individuals:  Sarah Bennett, Erika Chung, Sunil Dhawan, Max Fosque, Arnold Gelb, Christian Holmes, Mark Pandori, Adam Rosendorff, and Daniel Young.   Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may present expert testimony on this matter, which has been disclosed to you separately and is incorporated by reference.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing multiplexing test results and disregarding outliers to mask inconsistency, including, without limitation:

THPFM0001388582
THPFM0001389956

**Improperly setting and altering reference ranges.**

The government may call the following individuals:  Sarah Bennett, Erika Chung, Sunil Dhawan, Max Fosque, Arnold Gelb, Christian Holmes, Mark Pandori, Adam Rosendorff, and Daniel Young.   Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing improperly setting and/or altering reference ranges, including, without limitation:

THPFM0000057384
THPFM0000195849
THPFM0000829808
SEC-USAO-EPROD-000648943
SEC-USAO-EPROD-006313786

**Withholding critical test results and other important information from doctors and patients.**

The government may call the following individuals:  Sarah Bennett, Sunil Dhawan, Max Fosque, Arnold Gelb, Christian Holmes, Mark Pandori, Adam Rosendorff, and Daniel Young. Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced

14

in discovery memorializing withholding of critical test results and other important information from doctors and patients, including, without limitation:

    THPFM0000277608
    THPFM0000277617
    THPFM0000017786
    TS-1078326
    PFM-DEPO-00018911
    SEC-USAO-EPROD-000648962
    SEC-USAO-EPROD-000650279
    SEC-USAO-EPROD-000674427
    SEC-USAO-EPROD-000935411
    SEC-USAO-EPROD-000935416
    SEC-USAO-EPROD-001186148
    SEC-USAO-EPROD-001754657
    SEC-USAO-EPROD-001898294
    SEC-USAO-EPROD-001906221
    SEC-USAO-EPROD-004138487
    SEC-USAO-EPROD-006000464
    THER-0293804

**Declining to conduct or agree to meaningful comparative tests.**

The government may call the following individuals:  David Boies, Skip Burris, William Clarke, Toby Cosgrove, Henry Kissinger, Kandice Marchant, Roger Parloff, Meredith Potter, and Dee Ann Smith.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery demonstrating Theranos agreeing but ultimately declining to conduct meaningful comparative tests, including, without limitation:

    SCRI_001864
    SCRI_001291
    CCF000000967-970
    THPFM0001777415-436
    CCF000000208-217
    CF000000003-13
    CCF000001002
    CCF000000257-258
    BOIES_THERANOS_0000143
    CCF000000950-951
    CCF000000952-954
    CCF000000750-766
    THPFM0000350174-181
    TS-0055135

CCF000000801-803
TGPS00004008
THPFM0000416534-536
CCF000000014-60
THPFM0000556435
THPFM0004816765-69
THPFM0004816797
SEC-USAO-EPROD-000070593
SEC-USAO-EPROD-000070623
SEC-USAO-EPROD-000070643
SEC-USAO-EPROD-000070661
SEC-USAO-EPROD-000070646
Video:  Elizabeth Holmes October 15, 2015 appearance on *Mad Money*

**Decommissioning Theranos's Laboratory Information System database.**

The government may call David Taylor, Eric Caddenhead, and/or a custodian of records from the Theranos assignee.

**Obtaining personal benefit from position at Theranos.**

The government may call the following individuals:  Carolyn Balkenhol, Brooke Buchanan, Lisa Durkin, Dan Edlin, Season Flores, Kendra Fadil, Christian Holmes, Heather King, Patrick O'Neill, Callie Rosendin, Tyler Shultz, Dee Ann Smith, and Denise Yam.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery memorializing benefits defendant Holmes received, including, without limitation:

PFM-ROGS-00000040
SEC-USAO-EPROD-000000003
SEC-USAO-EPROD-002795076
SEC-USAO-EPROD-001314378
SEC-USAO-EPROD-001314378
SEC-USAO-EPROD-001176349
SEC-USAO-EPROD-001175694
SEC-USAO-EPROD-001175665
SEC-USAO-EPROD-001206267
SEC-USAO-EPROD-001205348
SEC-USAO-EPROD-001205336
SEC-USAO-EPROD-001082330
SEC-USAO-EPROD-001205225
SEC-USAO-EPROD-001205215
SEC-USAO-EPROD-006053567
SEC-USAO-EPROD-000705421

SEC-USAO-EPROD-000723875
SEC-USAO-EPROD-001198532
SEC-USAO-EPROD-001205188
SEC-USAO-EPROD-001205162
SEC-USAO-EPROD-001043591
SEC-USAO-EPROD-001204256
SEC-USAO-EPROD-001204258
SEC-USAO-EPROD-001204223
SEC-USAO-EPROD-001204153
SEC-USAO-EPROD-001203150
SEC-USAO-EPROD-001202724
SEC-USAO-EPROD-001212249
SEC-USAO-EPROD-001314171
SEC-USAO-EPROD-001202480
SEC-USAO-EPROD-002150649
SEC-USAO-EPROD-002625245
SEC-USAO-EPROD-002787868
SEC-USAO-EPROD-003188132
SEC-USAO-EPROD-005053153
US-FDA-0038921
SEC Investigative Testimony Exhibit 210
Theranos' general ledger and tax returns

**Concealing the romantic relationship between Holmes and Balwani from investors and others.**

The government may call the following individuals:  Peter Anderson, Jeff Blickman, Davis Boies, Mark Campbell, Dan Edlin, Alan Eismann, William Frist, Brian Grossman, Chris Lucas, Craig Hall, Jared Hutchings, Heather King, Henry Kissinger, Dan Mosley, James Mattis, Tony Nugent, Roger Parloff, William Perry, Lisa Peterson, Callie Rosendin, Gary Roughead, George Shultz, Brian Tolbert, and Lisa Zuckerman.  Any prior statements to the government, and any known prior statements in the PFM, Colman, Arizona class action, or SEC proceedings, have been produced to you.  The government may elicit testimony from them as set forth in such statements.  The government may offer as exhibits the documents attached to and/or referenced in such prior statements as well as records produced in discovery relating to the concealment of the romantic relationship between Holmes and Balwani, including, without limitation:

SEC-USAO-EPROD-005800653
SEC-USAO2-EPROD-000041814
SEC-USAO2-EPROD-000041815
SEC-USAO-EPROD-000068053
SEC-USAO-EPROD-000068054
SEC-TX-000003320

***

17

The government reserves the right to introduce additional evidence covered by its previous disclosures, and further reserves the right to amend this notice in advance of trial based on its continuing investigation and trial preparation.

Very truly yours,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

/s/
_____
ROBERT S. LEACH
JEFFREY SCHENK
JOHN C. BOSTIC
VANESSA BAEHR-JONES
Assistant United States Attorneys

Cc      Jeffrey Coopersmith, Esq. (by email)

18

# Exhibit H

1   MELINDA HAAG (CABN 132612)
    United States Attorney
2
    MIRANDA KANE (CABN 150630)
3   Chief, Criminal Division

4   OWEN MARTIKAN (CABN 177104)
    Assistant United States Attorney
5
    SUSAN PHAN (CABN 241637)
6   Special Assistant United States Attorney

7     450 Golden Gate Ave., Box 36055
      San Francisco, California 94102
8     Telephone:  (415) 436-7241
      Fax: (415) 436-7234
9     E-Mail: owen.martikan@usdoj.gov

10  Attorneys for Plaintiff

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15

16  UNITED STATES OF AMERICA,          )   No. CR 09-0268 SI
                                        )
17           Plaintiff,                 )   **THE UNITED STATES' NOTICE OF**
                                        )   **EVIDENCE PURSUANT TO FED. R.**
18      v.                              )   **EVID. 404(b)**
                                        )
19  ALEXANDER DEJARNETTE,               )
                                        )   Date:  July 8, 2011
20           Defendant.                 )   Time:  11:00am
    _____)   Place: Courtroom 10, 19th Floor

21

22                       **INTRODUCTION**

23          The United States intends to introduce three categories of "bad acts" evidence at trial

24  pursuant to Rule 404(b) of the Federal Rules of Evidence, because the proffered evidence shows

25  intent, knowledge, and absence of mistake or accident.  These categories of evidence are (1)

26  Defendant Dejarnette's flight from supervision after the Court ordered him to register as a sex

27  offender within two weeks; (2) Dejarnette's failure to register as a sex offender in Georgia or

28  Massachusetts; and (3) Dejarnette's repeated refusal to sign acknowledgment forms pertaining to

his duty to register as a sex offender. The United States also believes that this evidence is inextricably intertwined with the United States' proof of the charged crime, but proffers this notice out of an abundance of caution.

## ARGUMENT AND AUTHORITIES

"All relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Moreover, when evidence is "inextricably intertwined with the crime charged," it is also direct evidence, and does not fall within the scope of Rule 404(b). *United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002). *See also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995) (holding that evidence is directly admissible if it "constitutes a part of the transaction that serves as the basis for the criminal charge" or "was necessary to ... permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime").

Evidence of crimes, wrongs, or other acts that is not directly relevant to the charged crimes, is admissible under Fed. R. Evid. 404(b) if it shows motive, intent, knowledge, identity, or absence of mistake or accident. *See id.* The Ninth Circuit has held that Federal Rule of Evidence 404(b) "is a rule of inclusion [and,] [u]nless the evidence of other crimes tends only to prove propensity, it is admissible." *United States v. Jackson*, 84 F.3d 1154, 1158–59 (9th Cir. 1996). In determining whether to admit such evidence, the Ninth Circuit has examined (1) whether sufficient evidence exists to allow the jury to conclude that the defendant committed the prior act; (2) the act was not too remote in time from the commission of the charged offense; (3) the act is similar to the charged offense;(4) the act is introduced to prove an element of the charged offense that is a material issue in the case; and (5) whether the act's probative value is outweighed by its potential prejudice. *Untied States v. Miller*, 874 F.2d 1255, 1268 (9th Cir. 1989).

**I.  THE COURT SHOULD ADMIT EVIDENCE OF DEJARNETTE'S FLIGHT FROM SUPERVISION FOLLOWING THE COURT'S ORDER THAT HE REGISTER.**

On February 28, 2008, the Court ordered Dejarnette from the bench to register as a sex offender within two weeks.  *See* USA Request for Judicial Notice, Exhibit 13 at 48-49.  The Court asked Dejarnette if he understood that order, and he said that he did.  *Id.*  The following week, Dejarnette failed to report to a probation meeting, and had a confrontation with his Probation Officer in a pizza restaurant.  *Id.*, Exhibits 8 and 9.  After this confrontation, Dejarnette absconded from supervision and remained a fugitive until he was arrested in Atlanta, Georgia, nine months later.  *Id.*, Exhibits 11, 12, and 15.  When Dejarnette encountered law enforcement in Georgia, he used a false name and was not positively identified until his fingerprints were matched.

This evidence shows that Dejarnette's failure to register as a sex offender was intentional, and that he would rather flee from probation than comply with a direct order to register from the Court.  The evidence complies with the standard set forth by the Ninth Circuit in *Miller, supra,* because it is based on facts that have been admitted by Dejarnette during the adjudication of prior supervised release violations, and thus sufficiently reliable for a jury to conclude that it occurred.  Second, the acts took place during the year preceding Dejarnette's arrest in this case, and thus are not remote in time.  Third, the act is similar to the charged offense, which also alleges a failure to follow requirements arising out of Dejarnette's prior conviction, and relates specifically to the Court's order that he register as a sex offender.  Fourth, the evidence is introduced to show a knowing failure to register, which is an element of the charged offense.  Finally, the evidence cannot reasonably be seen as unduly prejudicial, as it simply relates to Dejarnette's flight from his registration requirement, which is intertwined with the charged conduct in this case.

The Court should allow the United States to introduce evidence of Dejarnette's flight from supervision in 2008 under Fed. R. Evid. 404(b).

**II.  THE COURT SHOULD ALLOW EVIDENCE OF DEJARNETTE'S FAILURE TO REGISTER AS A SEX OFFENDER IN OTHER STATES.**

The United States intends to introduce evidence that Dejarnette failed to register as a sex offender in Georgia and Massachusetts, two states that Dejarnette visited while a fugitive from probation in 2008. Dejarnette was arrested in Georgia, and the Marshal's Service has evidence that he may have visited Massachusetts as well. This evidence meets the five-part test in *Miller* for the admission of evidence under Rule 404(b). First, there is sufficiently probative evidence that Dejarnette failed to register as a sex offender in Georgia and Massachusetts, because he does not appear on either state's registry. Second, Dejarnette was in both states during the year before his arrest, so his failure to register is not remote in time. Third, the act is similar – indeed identical – to the charged offense of failure to register. Fourth, the act proves an element of the offense, which is that he failed to register. Finally, the act cannot be viewed as more prejudicial than probative, as Dejarnette's failure to register is directly at issue in this case.

**III.  THE COURT SHOULD ALLOW EVIDENCE THAT DEJARNETTE REFUSED TO SIGN MULTIPLE ACKNOWLEDGMENT FORMS REGARDING HIS DUTY TO REGISTER AS A SEX OFFENDER.**

The United States intends to introduce evidence that in 2001 and 2007, Dejarnette refused to sign Bureau of Prisons forms that notified him of his duty to register as a sex offender. In 2007, Dejarnette also refused to sign a California Attorney General form, tendered to him by his Probation Officer, informing him of his obligation to register as a sex offender. The United States intends to introduce this evidence to show Dejarnette's knowledge, intent, and absence of mistake with respect to the sex offender registration requirement. This evidence meets the *Miller* standard for admission of Rule 404(b) evidence. First, the refusal to sign is documented in writings and easily proved to a jury through testimony of BOP personnel and Dejarnette's Probation Officer. Second, the refusals to register were not remote in time. Two of them took place within the two years preceding Dejarnette's arrest. The first took place about seven years earlier, but shows a

1  consistent pattern of refusal to register as a sex offender.  Third, the refusal to sign a form

2  acknowledging the duty to register is similar to the charged offense of refusing to register.

3  Fourth, the act of refusing to acknowledge notice of the registration requirement is

4  necessary to prove an element of the offense; namely, the knowing failure to register as a

5  sex offender.  Finally, the act of refusing to acknowledge the requirement to register is no

6  more prejudicial than the charged conduct, and thus any prejudice resulting from it does

7  not outweigh its probative effect.

8      The Court should allow the United States to present evidence of Dejarnette's

9  refusal to sign forms notifying him of the requirement that he register as a sex offender.

10                                    **CONCLUSION**

11     The Court should allow the United States to introduce the evidence proffered

12  above pursuant to Fed. R. Evid. 404(b).

13  DATED:        June 17, 2011                    Respectfully submitted,

14                                                 MELINDA HAAG
                                                   United States Attorney
15

16                                                 _____/s/_____
                                                   OWEN MARTIKAN
17                                                 SUSAN PHAN
                                                   Assistant United States Attorneys
18

19

20

21

22

23

24

25

26

27

28

# Exhibit I

MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

OWEN MARTIKAN (CABN 177104)
Assistant United States Attorney

SUSAN PHAN (CABN 241637)
Special Assistant United States Attorney

450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone: (415) 436-7241
Fax: (415) 436-7234
E-Mail: owen.martikan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 09-0268 SI |
| | ) | |
| Plaintiff, | ) | **THE UNITED STATES' AMENDED** |
| | ) | **NOTICE OF EVIDENCE PURSUANT** |
| v. | ) | **TO FED. R. EVID. 404(b)** |
| | ) | |
| ALEXANDER DEJARNETTE, | ) | |
| | ) | Date: July 8, 2011 |
| Defendant. | ) | Time: 11:00am |
| | ) | Place: Courtroom 10, 19th Floor |

## INTRODUCTION

The United States intends to introduce the evidence listed below at trial. While the United States does not believe that any of this evidence is governed by Rule 404(b) of the Federal Rules of Evidence, because it is directly relevant to proving elements of the charged crime, the United States lists such evidence here out of an abundance of caution.

**NOTICE OF FED. R. EVID. 404(b) EVIDENCE**

1.    Evidence of Dejarnette's Flight.

The United States will introduce evidence, through Probation Officer Magana, that Dejarnette absconded from supervision within two weeks of the Court's order that he register as a sex offender within two weeks or suffer further punishment.  Magana will also introduce evidence that Dejarnette left him voicemails, including the recorded voicemails, taunting him about how he had left California so that he could "live his life," how he was living under an alias, and referring to "sex offender shit."  This evidence will be introduced to show Dejarnette's intent.  The United States believes that this is direct evidence of the charged crime, and at the very least inextricably intertwined therewith, but lists the evidence here out of an abundance of caution.  The United States has produced this recording to the defense and will manually file it with the Court on Monday morning.

2.    Failure to Register in Georgia.

The United States will introduce the testimony of Sgt. Dexter Henry that he could find no evidence that Dejarnette had ever registered as a sex offender in Georgia.  This evidence is relevant if Dejarnette claims, or suggests on cross-examination, that the United States cannot prove that he didn't register in Georgia after absconding from California to Georgia.  If a sex offender changes residence, he must register the change either in the state or original residence or in the state of new residence.  42 U.S.C. § 16913(c).  However, this does not absolve the offender from registering in the jurisdiction of his initial conviction, under 42 U.S.C. § 16913(a).  This testimony will prevent the jury's confusion concerning whether Dejarnette may have been able to discharge his duty under SORNA by registering in Georgia.

3.    Refusal to Sign Notice Forms.

The United States will introduce the forms attached hereto as Exhibits 1 and 2, which Dejarnette refused to sign, as evidence that he knowingly failed to register after having received notice of his registration requirement.  The United States believes this evidence directly relates to the proof of an element of crime, namely intent, but attaches the forms hereto out of an abundance of caution.

## CONCLUSION

The Court should allow the United States to introduce the evidence proffered above pursuant to Fed. R. Evid. 404(b), but also as evidence directly relevant to, or at least inextricably intertwined with, the proof of elements of the charged crime.

DATED:  July 29, 2011  Respectfully submitted,

MELINDA HAAG
United States Attorney


_____/s/_____
OWEN MARTIKAN
SUSAN PHAN
Assistant United States Attorneys

1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                           SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,          )  Case No. CR-18-00258-EJD
                                       )
16          Plaintiff,                 )  **DECLARATION OF LANCE WADE IN**
                                       )  **SUPPORT OF MS. HOLMES' MOTION TO**
17     v.                              )  **STRIKE RULE 404(b) NOTICE OR, IN THE**
                                       )  **ALTERNATIVE, COMPEL ADEQUATE RULE**
18  ELIZABETH HOLMES and               )  **404(b) DISCLOSURE**
    RAMESH "SUNNY" BALWANI,            )
19                                     )
            Defendants.                )  Hon. Edward J. Davila
20                                     )
                                       )
21  _____)

22

23          I, LANCE WADE, declare as follows:

24          1.      I represent Defendant Elizabeth Holmes and have been admitted to practice *pro hac vice*

25  in the above-captioned matter.  Pursuant to Criminal Local Rule 16-2, I submit this declaration in

26  support of Ms. Holmes' Motion To Strike Rule 404(b) Notice Or, In The Alternative, Compel Adequate

27  Rule 404(b) Disclosure ("the Motion").

28
    DECLARATION OF LANCE WADE IN SUPPORT OF MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE
    OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
    CR-18-00258 EJD                         1

2.      On March 26, 2020, pursuant to Criminal Local Rule 16-1(a), counsel for Ms. Holmes and the government met and conferred telephonically regarding, among other matters, the government's obligation to disclose Rule 404(b) evidence under Criminal Local Rule 16-1(c)(3) and Federal Rule of Evidence 404(b)(2).  The attendees were Lance Wade and Patrick Looby, attorneys for Ms. Holmes, and Assistant United States Attorneys Vanessa Baehr-Jones, Jeff Schenk, John C. Bostic, and Robert S. Leach.

3.      Counsel for Ms. Holmes and government discussed the defense's position that the government's disclosure did not satisfy its obligations under Criminal Local Rule 16-1(c)(3) and Federal Rule of Evidence 404(b)(2), as set forth in the parties' prior correspondence on this matter.

4.      The government disagreed, and stated that while it would respond to the defense's March 23, 2020 letter, it would not amend its disclosure or supplement its production.

5.      The government sent Ms. Holmes its April 3, 2020 letter, purporting to identify the witness testimony and documents supporting its intended Rule 404(b) evidence.

6.      The government has provided no further Rule 404(b) disclosures.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.


Executed this 30th day of June in Bethesda, MD.

_____
LANCE WADE
Attorney for Elizabeth Holmes

DECLARATION OF LANCE WADE IN SUPPORT OF MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD                          2

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) **[PROPOSED] ORDER GRANTING MS.** |
| | ) **HOLMES' MOTION TO STRIKE RULE 404(b)** |
| v. | ) **NOTICE OR, IN THE ALTERNATIVE,** |
| | ) **COMPEL ADEQUATE RULE 404(b)** |
| ELIZABETH HOLMES and | ) **DISCLOSURE** |
| RAMESH "SUNNY" BALWANI, | ) |
| Defendants. | ) Hon. Edward J. Davila |
| | ) |

This CAUSE having come before the Court upon Defendant Elizabeth Holmes' Motion To Strike Rule 404(b) Notice Or, In The Alternative, Compel Adequate Rule 404(b) Disclosure.  After due consideration of the filings, the governing law, and the argument of the parties,

IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.  [The government's Rule 404(b) notice is STRICKEN.]  [The government is ORDERED to supplement its 404(b) notice in accordance with Criminal Local Rule 16-1(c)(3) and Federal Rule of Evidence 404(b)(2).  To facilitate

motions practice regarding this evidence, the government shall provide by August 10, 2020 an amended notice under 404(b), containing a summary that describes each specific "bad act" the government intends to introduce at trial in "sufficient detail."  This summary shall identify all bad acts it intends to offer in its case in chief, for impeachment purposes, or for possible rebuttal.

IT IS FURTHER ORDERED that the government's summary shall provide sufficient detail to determine how each bad act could be offered for one of the purposes listed in Rule 404(b)(2), who committed each alleged bad act, and when each alleged bad act occurred.  Moreover, for each alleged bad act, the government's summary shall identify the specific "documentary evidence or witness statements" that support each alleged bad act.

IT IS FURTHER ORDERED that any purported Rule 404(b) evidence not adequately disclosed on or before August 10, 2020 will not be admissible at Ms. Holmes' trial under Rule 404(b)(2).]

**IT IS SO ORDERED.**

Dated _____

_____
Hon. Edward J. Davila
United States District Judge