JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>　　　Defendants. | Case No. CR-18-00258-EJD-SVK<br><br>**MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE**<br><br>Date:　　July 20, 2020<br>Time:　　1:30 p.m.<br>CTRM:　4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERANTIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

CONCLUSION .....................................................................................................................6

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

i

# TABLE OF AUTHORITIES

## CASES

*United States v. Ahn The Duong*, 2010 WL 532513 (N.D. Cal. Feb. 9, 2010) ........................................... 2

*United States v. Begay*, 673 F.3d 1038 (9th Cir. 2011) (en banc) ............................................................. 4

*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc) ........................................................... 5, 6

*United States v. Dejarnette*, 2011 WL 2837420 (N.D. Cal. July 15, 2011) ........................................... 2, 3

*United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996) ................................................................................ 2

*United States v. Mujahid*, 2011 WL 13250753 (D. Alaska Aug. 9, 2011) ............................................ 2, 3

*United States v. Sanchez*, 2011 WL 6090164 (C.D. Cal. Dec. 5, 2011) ......................................... 1, 2, 4, 6

*United States v. Shayota*, 2016 WL 5791376 (N.D. Cal. Oct. 4, 2016) .................................................. 4, 6

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) ....................................................... 2

## OTHER AUTHORITIES

Crim. L.R. 16-1(c)(3) ............................................................................................................................... 1, 2

Fed. R. Evid. 404 .................................................................................................................................. passim

Fed. R. Evid. 404, advisory committee note to 1991 amendment ........................................................... 3, 4

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

ii

**INTRODUCTION**

The government cites no case in which this Court or any other court has upheld a Rule 404(b) disclosure as amorphous and broad as this one. In fact, in their collective experience defense counsel have never even seen a Rule 404(b) notice as grasping as this one. The government's opposition fails entirely to grapple with the glaring shortcomings in its notice because it all but ignores: (1) the vague, thematic language in many categories in its notice; (2) its repeated suggestions that the disclosed acts are merely examples and that it will seek to introduce other, undisclosed acts; (3) its failure to identify who committed the disclosed acts; and (4) the fact that certain categories of Rule 404(b) evidence lack any supporting evidence. Indeed, the government's opposition doubles down on its shortcomings—even absurdly suggesting that boilerplate Rule 404(b) language in its production letters sufficed to put the defense on notice that all of the more than 20 million pages of discovery it has produced in this case might constitute Rule 404(b) evidence. *See* Gov't Opp'n, ECF # 440, at 2.

Nor does the government's recent disclosure of its nearly 4,000-document exhibit list and 150-person witness list cure the problem. Under Rule 404(b), "[i]t is not Defendant's burden to parse through the array of proffered evidence, anticipate what the Government's unarticulated theories are, and oppose all of them." *United States v. Sanchez*, 2011 WL 6090164, at *8 (C.D. Cal. Dec. 5, 2011). That burden belongs to the government. And this Court's Criminal Local Rule 16-1(c)(3) requires the government to satisfy that burden with "sufficient detail." Crim. L.R. 16-1(c)(3). The government has failed to provide a "sufficiently detail[ed]" Rule 404(b) notice. *Id.* It has likewise failed to provide a "reasonabl[y]" complete Rule 404(b) notice. Fed. R. Evid. 404(b)(2)(A). Given the scope of this case, the volume of discovery, and the expansive, vague nature of the government's notice, the risk of unfair surprise to the defense is immense. The Court should thus strike the government's notice, or at least compel it to make an adequate disclosure.

**ARGUMENT**

As explained in Ms. Holmes' opening brief, the government's Rule 404(b) notice runs afoul of the requirements of both Criminal Local Rule 16-1(c)(3) and Federal Rule of Evidence 404(b). *See*

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

1

Def.'s Mot., ECF No. 421, at 4-7.  Ms. Holmes does not currently know the universe of alleged crimes, wrongs, or other acts the government intends to introduce at her trial; all she has are twenty-two broad categories, which in many cases simply disclose vague themes of evidence.  *See id.* at 2-3.  *Contra United States v. Mujahid*, 2011 WL 13250753, at *2 (D. Alaska Aug. 9, 2011).  The government has not tied the witnesses or documents it noticed in its April 3, 2020 letter to specific acts, nor has it informed Ms. Holmes of the acceptable Rule 404(b) purposes for those acts.  *See* Def.'s Mot. at 7-9.  *Contra Sanchez*, 2011 WL 6090164, at *8.  Yet together, both Rule 404(b) and Criminal Local Rule 16-1(c)(3) demand such detail—at least in this particular case, given the volume of discovery involved.  *Sanchez*, 2011 WL 6090164, at *8; *Mujahid*, 2011 WL 13250753, at *2; *United States v. Dejarnette*, 2011 WL 2837420, at *7 (N.D. Cal. July 15, 2011); *United States v. Ahn The Duong*, 2010 WL 532513, at *11 (N.D. Cal. Feb. 9, 2010); Fed. R. Evid. 404(b)(2).

Although the government barely addresses Ms. Holmes' arguments in its opposition, Ms. Holmes offers the following four points in reply:

1.  The government misreads the requirements of Criminal Local Rule 16-1(c)(3) and Rule 404(b).  It suggests that the Local Rule is a nullity that requires no more than Rule 404(b).  Gov't Opp'n at 4.  That is plainly wrong:  the Local Rule, by its plain language, adds to the requirements of Rule 404(b) by requiring a sufficiently detailed identification of the evidentiary support for the government's allegations.  The Local Rule requires a summary that is "supported by documentary evidence or witnesses statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence."[1]  Crim. L.R. 16-1(c)(3).  This Court must give meaning to that language by requiring the government to support each alleged bad act with evidentiary support in "sufficient detail."  Surely the government cannot have provided "sufficient detail" when it has not even identified each of the bad acts it intends to offer at trial—let alone the evidence proving each such bad act.  *See* Def.'s Mot. at 5.

---

[1] Mandating such a disclosure is a permissible exercise of the federal district courts' inherent authority.  *See United States v. W.R. Grace*, 526 F.3d 499, 510–11 (9th Cir. 2008) (en banc) (permitting the courts to order additional discovery from the government beyond that specified in the Federal Rules of Criminal Procedure), *overruling in part United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996).

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

2

Instead, it has provided an "overly broad" overview of the types of evidence it will offer, which does not comport with the government's obligation. *Dejarnette*, 2011 WL 2837420, at *7.

The Local Rule's requirement that the government identify the evidentiary support for its Rule 404(b) allegations is intended to allow the parties and court to prepare to litigate efficiently the admissibility of the evidence under Rule 404(b). It also allows the defense to prepare to meet the allegations at trial. And, in theory, the obligation to identify supporting evidence should require the government to investigate its potential Rule 404(b) evidence before making inflammatory accusations in its notice.[2] The government's failure to comply with the Local Rule here makes it impossible for Ms. Holmes effectively to prepare motions in limine (because in many cases it is unclear what prior acts are even at issue) or to prepare to meet the government's allegations at trial.

As for Rule 404(b), the government leans on the Rule's stated intent to guarantee "reasonable notice of the general nature" of the Rule 404(b) evidence the government offers at trial. Fed. R. Evid. 404(b)(2)(A). But, as the commentary to the Rule makes clear, "what constitutes a reasonable . . . disclosure" under Rule 404(b) "will depend largely on the circumstances of each case." *Id.*, advisory committee note to 1991 amendment. In cases with immense discovery (like this one), the government cannot satisfy Rule 404(b)'s reasonable notice requirement through broad thematic disclosures. *See Mujahid*, 2011 WL 13250753, at *2. This is in no small part because, as this Court has already acknowledged, "immense" discovery "create[s] a substantial risk that Defendants may be unfairly surprised at trial." Feb. 11, 2020 Order on Defs.' Mot. to Dismiss 16, Feb. 11, 2020, ECF No. 330. Thus, while Rule 404(b) does not have an across-the-board "particularity" requirement, *see* Gov't's

---

[2] The government's disclosure is clearly faulty with regard to this last point. For example, in Category 20 of its March 3 notice, the government suggested that Theranos intentionally spoliated evidence, claiming that Theranos "decommissioned" its Laboratory Information System database, which "had the effect of obscuring or destroying detailed information regarding the specific tests Theranos conducted during the years of its clinical testing operation, hindering the government's investigation of Defendants." Ex A. to Def.'s Mot., ECF No. 421-2, at 9. However, the government did not begin interviewing individuals about this accusation until mid to late April 2020. One of those individuals informed the government that, before Theranos turned off the LIS database, Theranos employees ran reports from the database to "save this data." *See* Ex. J_at 2 (Chung 302). Had the government prepared an adequate disclosure, supported by evidence it had actually investigated, it presumably would not have recklessly accused Theranos of spoliation.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

3

Opp'n at 4-5, greater detail is necessary in more complex criminal cases. The government's vague notice violates Rule 404(b), even putting aside the more exacting requirements of the Local Rule.

The government places great weight on *United States v. Shayota*, 2016 WL 5791376 (N.D. Cal. Oct. 4, 2016), but the issue there was nothing like the issue this motion presents. First, the defendant in that case objected to the notice's sufficiency only under Rule 404(b), instead of also pursuing an objection under this Court's local criminal rules. Second, unlike the government's notice here, the *Shayota* notice identified the specific acts or crimes—rather than broad themes—that the government intended to introduce at trial. Third, unlike in this case, where Ms. Holmes challenges the adequacy of the government's notice, the *Shayota* defendant's objection to the Rule 404(b) notice focused narrowly on whether the government was required to "identify the specific purpose or purposes for which the government offers the evidence." 2016 WL 5791376 at *3; *see also infra*, at 5-6. Fourth, the discovery in this case is uniquely immense.

2. Neither the timing of the government's disclosure, nor its disclosure of its exhibit and witness lists, cures the deficiencies in its notice. While the government points out that it provided its Rule 404(b) notice months before trial, that is beside the point. Rule 404(b) contemplates that courts may find a Rule 404(b) notice unreasonable "because of the lack of timeliness *or* completeness." Fed. R. Evid. 404(b), advisory committee note to 1991 amendment (emphasis added). That the government provided timely notice in compliance with the scheduling order set by the Court does not mean that its notice was, by any measure, complete.

Nor can the government fill the gaps in its Rule 404(b) notice with the millions of pages of discovery, a witness list with over 150 witnesses,[3] or its exhibit list with nearly 4,000 exhibits. "It is not Defendant's burden to parse through the array of proffered evidence, anticipate what the Government's unarticulated theories are, and oppose all of them." *Sanchez*, 2011 WL 6090164, at *8. "Nor is it the Court's." *Id.* That burden rests with the prosecution. *See* Fed. R. Evid. 404(b)(2); *see also United States v. Begay*, 673 F.3d 1038, 1046 (9th Cir. 2011) (en banc) (noting the government's "duty" to

---

[3] The defense lacks witness statements for 41 of these witnesses.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

4

provide a Rule 404(b) notice upon the defendant's request).

The government's burden to identify the acts and evidence at issue is particularly weighty here given the vagueness of its disclosure. As the defense pointed out in its motion, and as the government completely ignores, many of the government's categories are so vague as to provide virtually no notice whatsoever. Take, for example, the government's vague allegation that Ms. Holmes "foster[ed] a culture that strongly discouraged skepticism or dissent." Def.'s Mot. at 6. Is it really the government's position that Ms. Holmes is supposed to glean what acts the government is referring to from the 4,000 exhibits it has disclosed? That is an impossible task. Similar ambiguity permeates the government's notice. *See id.* at 5-6. The government's vague allegations do not constitute reasonable notice of the bad acts that the government intends to introduce under Rule 404(b).

3. The government completely ignores most of Ms. Holmes' arguments. It has no response to the ambiguous categories just discussed. *See id.* It has no response to the fact that its notice attributes many of the supposed bad acts vaguely to "Theranos," its "agents," or "employees," leaving Ms. Holmes to guess how or whether the bad acts are connected to her. *See id.* at 6. It ignores the fact that it is impossible to figure out how the documents or wide swathes of testimony it disclosed support its vague allegations. *See id.* at 7-8. And it does not even acknowledge that it failed to identify any supporting documents or witness statements for three categories of evidence. *See id.* at 8. Ignoring those problems will not make them go away.

4. Finally, the government argues that this Court should not apply the forthcoming Rule 404(b) amendment to this case to require the government to disclose its Rule 404(b) purposes for its disclosed categories of evidence. But, even without the amendment, the Ninth Circuit has endorsed the idea that the government must provide this information. *See United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc) ("Rule 404(b) is properly applied as follows: 'upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose for which the government offers the evidence of 'other crimes, wrongs, or acts.'" (emphasis in original) (quoting *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996))); *see*

*also Sanchez*, 2011 WL 6090164, at *8.  *But see Shayota*, 2016 WL 5791376, at *3 (evincing uncertainty as to whether *Curtin* adopted such a rule, but finding such a rule satisfied regardless).  And substantial uncertainty remains regarding whether the trial will proceed in October 2020 given the evolving situation around COVID-19 and the government's stated intent to broaden this case substantially with a superseding indictment in the coming weeks or months.  To enable efficient pre-trial litigation of the admissibility of the government's proposed Rule 404(b) evidence, the Court should require the government to identify the purposes of its proposed evidence, consistent with *Curtin* and the forthcoming rule amendment.

## CONCLUSION

For these reasons, the Court should grant Ms. Holmes' motion.

DATED: July 13, 2020                                   Respectfully submitted,


/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

6

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK

7

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF AMY MASON SAHARIA IN SUPPORT OF MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Hon. Edward J. Davila |

I, AMY MASON SAHARIA, declare as follows:

1. I represent Defendant Elizabeth Holmes and have been admitted to practice *pro hac vice* in the above-captioned matter. I submit this supplemental declaration in support of Ms. Holmes' Motion To Strike Rule 404(b) Notice Or, In The Alternative, Compel Adequate Rule 404(b) Disclosure. I attest to the following facts upon which the motion relies.

2. Attached to Ms. Holmes' reply in support of her motion is one exhibit. The contents of this exhibit are as follows:

    a. Exhibit J is a true and correct copy of the interview memorandum that the government prepared in the wake of its April 23, 2020 interview of Michael Chung.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 13th day of July, 2020 in Southampton, NY.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

SUPPLEMENTAL DECLARATION OF AMY MASON SAHARIA IN SUPPORT OF MS. HOLMES' MOTION TO STRIKE RULE 404(b) NOTICE OR, IN THE ALTERNATIVE, COMPEL ADEQUATE RULE 404(b) DISCLOSURE
CR-18-00258 EJD SVK      2

FD-302 (Rev. 5-8-10)



# FEDERAL BUREAU OF INVESTIGATION

Date of entry  05/07/2020

    MICHAEL CHUNG (CHUNG), business telephone number ▉▉▉▉▉▉▉▉, email address ▉▉▉▉▉▉▉▉, was interviewed via telephone. Also present for the interview were Assistant United States Attorney (AUSA) John Bostic and AUSA Vanessa Baehr-Jones. Prior to the interview, AUSA Bostic advised CHUNG it was illegal to lie to a Federal Officer (Title 18 U.S.C. 1001) and CHUNG confirmed he understood. After being advised of the identity of the interviewing parties and the nature of the interview, CHUNG provided the following information:

    CHUNG works for a company called Neetek, which was first contacted by someone from Theranos because they wanted to have their servers moved because they were discontinuing their lease. Accordingly they needed to vacate the building and wanted to move their servers to a datacenter. Theranos then called Neetek again because they were ending another lease and wanted to move their information to the cloud. Finally, attorneys from Irell Manella contacted Neetek because they wanted access to the cloud data. These attorneys represented Fortress Investment Group, which at that point owned part of Theranos. The information on the cloud which these attorneys from Irell Manella were looking for were files which were not related to the Laboratory Information System Database (LIS).

    The first work CHUNG did for Theranos was to move servers. In July 2018 CHUNG met with JOHN MCCHESNEY (MCCHESNEY), who had contacted Neetek, in regards to moving servers from Newark to a datacenter as Theranos was trying to get out of their Newark facility. When MCCHESNEY first called Neetek he did not understand the complexity of moving the infrastructure, but Neetek informed him as to what the process would require. Neetek's first step was to figure out what Theranos had at the Newark facility which needed to be moved. There were a number of custom applications, like LIS, on the servers located in Newark, California. They decided not to move the LIS at this time, and instead they decided to have people pull all of the information

| | | |
|---|---|---|
| Investigation on 04/23/2020 | at | San Francisco, California, United States (Phone) |
| File # 318A-SF-7315857 | | Date drafted 04/23/2020 |
| by Mario C. Scussel | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-REPORTS-0016262

from the LIS. CHUNG thought this decision might have been made because they could not move data when Theranos had and in-house software team which was not there any longer. Accordingly the decision was made to only move the Corporate infrastructure at this time. Approximately three to four Theranos employees then began running reports out of LIS to save this data. While CHUNG did not know the names of those from Theranos who were pulling these reports, he thought MCCHESNEY might know their names.

When Theranos employees were backing up the LIS by running reports, they were saving information on spreadsheets which were to be saved on the corporate infrastructure so the information was not lost. While CHUNG never saw these reports saved on the corporate infrastructure, there was no where else they could have gone. These spreadsheets could not be queried for information as they would have been in the database.

When MCCHESNEY was trying to wind things down and dissolve Theranos, they needed to move information to the datacenter and still be able to access the corporate data needed in order to dissolve the company. The datacenter where they moved the servers was Centurylink in Sunnyvale, California.

Neetek figured out what in the server room was related to corporate data and moved that to Centurylink. Everything else went to a public storage facility. On the day they shut everything down at Newark, CHUNG, MCCHESNEY, and the facilities guy at Theranos transported the corporate data to Centurylink and then the rest to public storage. They placed everything on the same truck and dropped the corporate data off at Centurylink first. CHUNG and his team were waiting for MCCHESNEY to drop off the equipment at Centurylink.

MCCHESNEY was the main person at Theranos who CHUNG worked with and reported to. He also worked with a PHILLIPE Last Name Unknown (LNU) who CHUNG understood to be the interim Chief Financial Officer at Theranos.

CHUNG thought the LIS would run without the corporate infrastructure as he did not think there were a lot of dependencies between the corporate infrastructure and the production infrastructure like LIS.

The production infrastructure stayed in storage for about a year or so, then JARED LNU (JARED) from Sherwood called because the equipment Lessor wanted their equipment back. JARED wanted help figuring out what was in

storage and what they still had.  CHUNG's team went to storage and confirmed the equipment was there, but found that all the hard drives had been removed.  CHUNG's team then returned the equipment to the Lessor's vendor without the hard drives.  CHUNG then recalled  MCCHESNEY had asked him and his team to remove all the hard drives before they were placed on the truck.  The hard drives were packed in separate boxes and taken to a different storage facility, but CHUNG did not know where they were taken.  Prior to removing the hard drives, CHUNG reminded MCCHESNEY that they would not be able to get anything off these hard drives and MCCHESNEY confirmed he understood this.  CHUNG got the impression MCCHESNEY did not want to be the person responsible for losing these drives or destroying the data even though there was no way of recovering the data from these hard drives.

CHUNG had meetings with MCCHESNEY and others at Theranos to explain that once the servers were turned off, then a forensic team would be needed to recover the data on the LIS, but nobody on their team knew how to do this or if it would even be possible.  DAVID TAYLOR, interim Theranos CEO, would be present for some of these meetings with Neetek.  It took two months with lots of meetings with Theranos to plan the move then three days to execute the move.  Neetek estimated there was an 80% chance of getting the corporate email back up and running after they moved the servers to the datacenter.  The corporate emails and files were what was most important to MCCHESNEY and Theranos.  In regards to the production infrastructure, Neetek estimated that there was approximately a 0% chance of getting the information back.  There was no way CHUNG's team could move the LIS and retain the information as they would have needed to reengage former Theranos IT employees and the contract software engineers.

MCCHESSNEY told CHUNG he had tried to get the software group to come back to help move the LIS database, but they declined.

Moving hundreds of devices with thousands of connections would be nearly impossible, which is why the percent chance of getting everything back up and running was so low.  They discussed trying to move the LIS without taking it apart, but that was not possible. Additionally, a lot of the connectivity was virtual, located in the software.  MCCHESNEY understood that the LIS would be lost once they moved it.  This was the reason Theranos ran the reports which were to be saved on the Corporate infrastructure.  Someone from Theranos confirmed that all the data from the LIS had been

backed up.  CHUNG recalled that right before they shut down the LIS to move it, someone from Theranos told them to wait because they had to pull one more report from LIS.  Someone had made an announcement that the LIS was being shutdown and they wanted to wait until everyone was ready to shut it down.

There was also an LIS database copy which was done by ERIC CADDENHEAD (CADDENHEAD), a former Theranos IT employee who came in to make a copy of the LIS on to USB drives.  In order to get the backup copy of the data base running, one would need to get the whole system running.  There was a forensic way of extracting the data from the backup copy, but CHUNG's team did not know how to do this.

CHUNG thought the Theranos email system should still be alive, and JARED would be able to access it.

CHUNG also agreed to search his email for any emails or documents related to Theranos.  On April 24, 2020 CHUNG provided a Microsoft Outlook data file containing all of the Theranos email he had retained which included the contract between Neeek and Theranos.  CHUNG sent this in a zip file via email.  CHUNG's email with the zip file, and an unzipped copy will be maintained in the attached 1A.