ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-258 EJD |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT ELIZABETH HOLMES' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date: August 17, 2020<br>Time: 1:30 p.m.<br>Courtroom: 4, 5th Floor |
| Defendants. | |

The United States respectfully submits its Response to Defendant Elizabeth Holmes' Motions for Access to Grand Jury Selection Materials. Dkt. 461 & 470.

## INTRODUCTION

Adopting the strategy of other defendants indicted during the COVID-19 pandemic,[1] Defendant Elizabeth Holmes seeks 21 broad categories of documents from the Clerk's Office touching on how the Grand Jury was selected.  She speculates the Grand Jury was selected after the onset of the pandemic.  She invokes marketing materials of a private jury consulting firm to assert "serious concern" about "the representativeness of the Grand Jury."  And without basis she suggests the Grand Jury that returned the Second and Third Superseding Indictments – and indictments in other cases since June 1, 2020 – was not selected at random from a fair cross section of the community.

The Jury Selection and Service Act, 28 U.S.C. §§ 1861, et seq. ("JSSA"), provides a limited right to inspect the  "contents of records or papers used by the . . . clerk in connection with the jury selection process . . . as may be necessary in the preparation or presentation of a motion" challenging compliance with selection procedures – not an unfettered license to fish through the Court's records. Defendant Holmes is not entitled under the JSSA to the majority of the materials she seeks because such materials are not necessary to allow her to assess whether to move to stay proceedings or dismiss the indictment on the purported ground that the Grand Jury was not selected at random from a fair cross section of the community.  Rather, the parties are entitled to inspect a limited set of data – namely, to the extent available, the county of residence, zip code, race, and age of the individuals listed in the master jury wheel from which the Grand Jury was selected—which is sufficient for Defendant Holmes to determine whether, in her view, a motion to stay or dismiss is warranted.  To the extent Defendant Holmes seeks materials beyond this limited set of data, the Court should deny her motions.

## BACKGROUND

**I.    THE JURY SELECTION AND SERVICE ACT**

The JSSA declares "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross

---

[1] *See, e.g.*, *United States v. Mattis*, CR 20-203 BMC (E.D.N.Y.), Dkt., 25, 25-1, 26, & 26-1; *United States v. Cruz*, CR 20-206 WFK (E.D.N.Y.), Dkt. 9 & 9-1; *United States v. Henry*, CR 20-293 LJL (S.D.N.Y.), Dkt. 23; *United States v. Baker*, CR 20-288 LJL (S.D.N.Y.), Dkt. 20 & 20-1; *United States v. Williams*, CR 20-286 WHP (S.D.N.Y.), Dkt. 7 & 7-1; *United States v. Balde*, CR 20-281 KPF (S.D.N.Y.), Dkt. 14.

section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. It forbids "exclu[sion] from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin, or economic status." *Id.* § 1862. It directs district courts to devise a written plan for random selection of grand and petit jurors, which shall be placed into operation after approval by a reviewing panel (including members of the judicial council of the circuit). *Id.* § 1863(a). District courts are to promptly notify the reviewing panel, the Administrative Office of the United States Courts, and the Attorney General of the initial adoption and future modifications of the plan. *Id.* Among other things, the plan is to "provide for a master jury wheel . . . into which the names of those randomly selected shall be placed." *Id.* § 1863(b)(4). The JSAA also regulates the drawing of names from the master jury wheel, *id.* § 1864, qualifications for jury service, *id.* § 1865, and selection and summoning of jury panels, *id.* § 1866.

A defendant "may move to dismiss the indictment or stay proceedings . . . on the ground of *substantial* failure to comply with the provisions" of the statute in selecting the grand jury. 28 U.S.C. § 1867(a) (emphasis added). The JSSA also provides that "[t]he contents of records or papers used by the . . . clerk in connection with the jury selection process shall not be disclosed, except . . . *as may be necessary* in the preparation or presentation of [such] a motion . . . . The parties in a case shall be allowed to inspect, reproduce, and copy *such* records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.* § 1867(f) (emphasis added).

## II.   THE COURT'S GENERAL ORDERS

General Order No. 6, Plan for the Random Selection of Grand and Petit Jurors, sets forth the Court's Jury Plan. *See* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_06_8-7-2017.pdf   The Jury Plan was approved by the Judicial Council of the Ninth Circuit on July 19, 2017. *Id.*

On June 9, 2020, the Court adopted General Order No. 77, In Re Provisional Modifications to Jury Plan Due to COVID-19 Public Health Emergency. *See* https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_77_signed_6-9-20.pdf. The order "temporarily modifies the provisions of the Jury Plan under General Order No. 6 in two respects: (1) to lower the minimum age at

1  which persons of that age group may request to be excused from jury service from 75 years to 70 years
2  of age, and (2) to extend the period of time that a person may, upon request, defer or postpone jury
3  service." *See id.* The Court stated "[t]hese provisional modifications to the Jury Plan will remain in
4  effect until expressly abrogated either by General Order or by approval and adoption of a superseding
5  Jury Plan." *Id.* To the government's knowledge, the Court has not issued any further orders or
6  modifications to the Jury Plan.
7  On March 16, 2020, the Court ordered that "[a]ll grand jury proceedings in this district are
8  suspended until May 1, 2010." *See* General Order No. 72, IN RE: Coronavirus Disease Public Health
9  Emergency. On April 30, 2020, the Court ordered the suspension to continue until June 1, 2020. *See*
10 General Order No. 72-2, IN RE: Coronavirus Disease Public Health Emergency. On May 21, the Court
11 ordered that "[g]rand jury proceedings in this district will resume in June on a date and in a manner to be
12 determined." *See* General Order No. 72-3, IN RE: Coronavirus Disease Public Health Emergency.
13 None of these orders touches on or references the Jury Plan.

## ARGUMENT

Grand jury proceedings are afforded a "presumption of regularity" that is dispelled "only upon particularized proof of irregularities" in the process. *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991).

The JSAA authorizes disclosure only of "[t]he contents of records or papers used by the . . . clerk in connection with the jury selection process . . . as may be necessary" to prepare or present a motion to dismiss the indictment or stay proceedings on the ground of substantial failure to comply with the JSAA in selecting the grand jury. 28 U.S.C. § 1867(f). The statute provides a right to "inspect jury lists . . . in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curium).

In *Test*, the defendant alleged the master lists from which the grand jury had been selected systematically excluded large numbers of people with Spanish surnames, students, and African-Americans. *Id.* at 29. The district court denied a motion to inspect and copy the jury lists. The

Supreme Court reversed, holding that the JSAA required defendant be permitted to inspect the jury lists. *Id.* at 29-30.

However, "there is no absolute right of access to all materials relating to grand jury selection." *United States v. Davis*, 2009 WL 637164, at *16 (S.D.N.Y. Mar. 11, 2009); *United States v. Gotti*, 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004).  A defendant's "unqualified right to records or papers encompasses only such data as [a defendant] needs to challenge the jury selection process." *United States v. O'Reilly*, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008).

Accordingly, "numerous courts have held that only the Master List from which the grand jury was selected need be turned over, not the names of specific jurors selected from the grand jury pool." *Gotti*, 2004 WL 32858, at *11 (citing *United States v. Davenport,* 824 F.2d 1511, 1515 (7th Cir. 1987) (holding defendant had "not demonstrated why other records besides those available jury lists might be required" to establish "an alleged deficiency" in the jury selection process); *United States v. Harvey,* 756 F.2d 636, 642-43 (8th Cir. 1985) (master grand jury list with names and addresses redacted provided defendant with "the ability to determine whether the master grand jury list represented a racial and economic cross-section of the community"); and *United States v. McLernon,* 746 F.2d 1098, 1123 (6th Cir. 1984) (holding defendants' "unqualified right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected" and that "refusing to provide [defendants] with the names, addresses, and demographics of the specific grand jurors who returned indictment against them" was not error)).

"The Master List is sufficient . . . because '[i]t is not the actual selection of the grand jury which would constitute the violation but whether the jury was selected at random from a fair cross section of the community.'"  *Id.* at 11 (quoting *United States v. Nichols*, 248 F. Supp. 2d 1027, 1034 (D. Kan. 2003)) (internal quotations omitted; alteration in original); *see Nichols*, 248 F. Supp. 2d at 1034 (denying request for jury questionnaires of jurors placed in master and qualified jury wheel; "[h]aving access to the method of selection is enough to comply with 28 U.S.C. § 1861 et seq.").  Granting access to the county of residence, zip code, race, and age of the individuals listed in the relevant master jury wheel is sufficient for Defendant Holmes to determine whether to move to stay proceedings or dismiss

the indictment. *See, e.g.*, *Gotti*, 2004 WL 32858, at *11; *Nichols*, 248 F. Supp. 2d at 1034-35; *McLernon*, 746 F.2d at 1123; *Davenport*, 824 F.2d at 1515; *Harvey*, 756 F.2d at 642-43.

Applying these principles, the district court in *United States v. Shader*, __ F. Supp. 3d ___, 2020 WL 4158059 (E.D.N.Y. Jul. 17, 2020), recently considered a substantially similar request, seeking documents relating to a grand jury that returned an indictment in June 2020 during the COVID-19 pandemic. The court granted only six of Shader's 23 document demands:

- the Jury Plan currently in effect and, if different in any respect, at the time grand jurors were summoned (Holmes' Request #1);
- a confirmation that the grand jury was selected from the entire District or, if not, a description of the basis and selection for the grand jury (similar to Holmes' Request #4 & #5);
- the date when the master jury wheel used to summon grand jurors was refilled (Holmes' Request #8);
- the date when the grand jurors were summoned (Holmes' Request #14);
- the master jury wheel data as described in the Jury Plan in electronic and accessible form that includes juror number, race, gender, ethnicity, year of birth, zip code, city, county and Jury Division (Holmes' Request #13); and
- the source of data in electronic form for the master jury wheel used to summon grand jurors (Holmes Request #12).

*Id.* at *4. The court in *Shader* expressly denied requests identical to those made by Holmes, deeming the requested information unnecessary to an assessment of whether to challenge the jury selection procedures. In particular, the court denied access to: "any documents" reflecting changes from previous procedures from the Jury Plan for the grand jury or creation of the grand jury because of COVID-19 (Holmes' Request #2); any order affecting the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic (Holmes' Request #3); AO-12 and JS-12 forms (Holmes' Request #6); other statistical or demographic analyses produced to ensure compliance (Holmes' Request #7); calculation records (Holmes' Request #9); juror qualification and summons

forms (Holmes' Request #16); juror numbers (Holmes' Request #18 & 20); the disposition of each summoned potential grand juror as to excusal, deferment, disqualification, or selection (Holmes' Request #19); and attendance records (Holmes' Request #21). *Id.*; *see also United States v. Mattis*, CR 20-203 BMC (E.D.N.Y. Jul. 15, 2020) (minute order granting access "to data reflecting the county of residence, zip code, and to the extent available, the race and age of the individuals listed in the master jury wheel from which the Grand Jury that indicted defendants was selected"); *United States v. Cruz*, CR 20-206 WFK (E.D.N.Y. Jul. 1, 2020) (same). The same result should hold here.

Defendant Holmes' request for any general notice explaining the process by which names are drawn from the pool of qualified persons (#10) and questionnaires sent to prospective grand jurors (#17) are equally unnecessary to assessing whether a challenge to the grand jury selection process is warranted under Section 1867 of the JSSA. Finally, Request #11 (calculation of number of potential jurors from Jury Divisions to ensure compliance with minimum number of names placed initially in master jury wheel) and Request #15 (number of persons summoned from master jury wheel) appear subsumed by Request #12 and 13; the government does not object to their production.

If the Court permits the parties to inspect any data, it should also enter an appropriate protective order prohibiting the Clerk from disclosing to the parties or the public personal identifying information of individuals listed in the records (including, but not limited to, names, addresses, telephone numbers, full dates of birth, or social security numbers). Certain of Holmes' requests (#12 & #13) appear to acknowledge the propriety of doing so, and they are not necessary in making an assessment on whether to bring a motion challenging the grand jury selection procedures. In addition, the Court should place limits on the parties' use of the records as the court did in *Shader*. 2020 WL 4158059, at *5.

## CONCLUSION

For these reasons, the Court should permit the parties to inspect a limited set of data – namely, to the extent available, the county of residence, zip code, race, and age of the individuals listed in the master jury wheel from which the Grand Jury was selected – which is sufficient for Defendant Holmes to determine whether, in her view, a motion to stay or dismiss is warranted. To the extent Defendant Holmes seeks materials beyond this limited set of data, the Court should deny the motion. The Court

1  should also enter an appropriate protective order.

2  DATED: July 31, 2020                              Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

*/s Robert S. Leach*
_____
ROBERT S. LEACH
JEFF SCHENK
JOHN C. BOSTIC
VANESSA BAEHR-JONES
Assistant United States Attorneys

U.S.' RESPONSE TO MOTS. FOR ACCESS TO
GRAND JURY SELECTION MATERIALS
CASE NO. 18-258 EJD                    8