JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date: August 17, 2020<br>Time: 1:00 p.m.<br>CTRM: 4, 5th Floor |
| Defendants. | Hon. Edward J. Davila |

MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
CR-18-00258 EJD

**INTRODUCTION**

The government acknowledges that Ms. Holmes has a right to access materials relevant to the selection of the grand juries that returned the Second and Third Superseding Indictments under the Jury Selection and Service Act ("JSSA").  Nonetheless, the government creates an artificial limitation to Ms. Holmes' right of access, urging the Court to limit discovery to only the most basic of demographic data regarding the Master Jury Wheel.  The Act is unequivocal:  a defendant preparing a motion to challenge the grand jury selection procedures is entitled to inspect the "contents of records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).  The Act does not restrict the available "records or papers" to those related to the Master Jury Wheel.

In *Test v. United States*, 420 U.S. 28 (1975), the Supreme Court recognized that without an "unqualified" right of inspection, "a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge" under the Act and the Sixth Amendment right to a jury randomly selected from a cross-section of the community. *Id.* at 30.  Accordingly, to vindicate these statutory and constitutional guarantees, the Act grants defendants the right to inspect records that reflect the grand juror selection process *after* the formation of the Master Wheel.  Courts in this district have routinely granted requests for this kind of information. *See, e.g.*, *United States v. Cerna*, 2009 WL 2998930, at *2 (N.D. Cal. Sept. 16, 2009).  Information about how grand jurors were qualified and selected from the Master Jury Wheel, and how the COVID-19 crisis affected such qualification and selection, is critical to ascertaining whether the grand jurors who returned the Indictments were selected at random from a fair cross section of the community.

Ms. Holmes is entitled to information regarding *all* the procedures outlined in the Act—not just the formation of the Master Jury Wheel.  Ms. Holmes asks for no more than she needs to prepare a motion, and no less than what she is entitled to under the Act.  Accordingly, the Court should grant the motion and allow Ms. Holmes to access these materials in anticipation of a motion to dismiss under the Sixth Amendment and 28 U.S.C. § 1867(a).

**ARGUMENT**

The JSSA grants defendants the right to inspect "the contents of records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f). "To avail [herself] of this right of access to otherwise nonpublic jury selection records, a litigant need only allege that [she] is preparing a motion challenging the jury selection procedures." *United States v. Layton*, 519 F. Supp. 946, 958 (N.D. Cal. 1981). Once alleged, a defendant "*shall* be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f) (emphasis added). The Act contemplates that defendants may move to dismiss indictments because the grand jury was not drawn from a fair cross section of the community and/or because the manner in which a grand jury is selected otherwise fails to comply with the Act's detailed requirements. *Id.* § 1867(a).

The Act's requirements are designed to ensure that the jury is selected at random from "a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Sections 1862-1866 require the Grand Jury Plan to be constructed in a way that ensures that (1) no citizen shall be excluded from grand jury service on account of race, color, religion, national origin, or economic status; (2) jurors are selected at random from the master jury wheel and qualified through the use of qualification forms; and (3) no person or class of persons shall be disqualified except for the reasons provided in the Act or undue hardship. The Act's inspection provision under § 1867(f) is necessarily as broad in scope as the Act's procedural protections.

Ms. Holmes tailored her requests to documents needed to evaluate whether the implementation of the Grand Jury Plan during the COVID-19 crisis substantially complied with the provisions of the Act and ensured that the grand juries were drawn from a fair cross representation of the community. The government does not oppose Requests 1, 4-5, 8, and 11-15, which largely concern the selection of the Master Jury Wheel—*i.e.*, the potential pool of grand jurors that exists *before* the Court excuses potential grand jurors from service. Gov't Opp'n to Ms. Holmes' Motions for Grand Jury Selection Materials ("Gov't Opp'n"), ECF No. 474, at 6-7. The government opposes the requests seeking information regarding the Court's selection and qualification of grand jurors after the formation of the Master Jury

Wheel.[1]  But courts in this district and elsewhere have provided defendants access to the same documents that Ms. Holmes seeks.

This Court should do the same.  The requested materials are essential to ensure that the selection process for the grand jurors that returned the Second and Third Superseding Indictments was consistent with the Act and the Sixth Amendment, and any concerns about the disclosure of sensitive information of grand jurors can be mitigated by appropriate measures.

**I.     The Requested Materials Are Relevant to Litigating the JSSA Issues Arising from the COVID-19 Crisis and Are Routinely Granted by Courts.**

Courts have granted discovery of the requested materials in similar cases.  In *United States v. Cerna*, for example, a defendant requested, as relevant here: (1) juror qualification forms, (2) JS-12 forms associated with the master and qualified jury wheel for the grand jury pool that returned the indictment; (3) records setting forth the method of jury empaneling including "all documents reflecting procedures used to select names from the master or qualified jury wheels, and to excuse prospective grand and petit jurors for hardship or other reasons;" and (4) "any other statistical information compiled by the jury clerk relating to the makeup of the jury pool from which the grand jury was drawn that returned the Second Superseding Indictment."  2009 WL 2998930, at *2-4 (N.D. Cal. Sept. 16, 2009).

The court granted the requests, holding that the "use of jury questionnaires is an important mechanism for the implementation of those procedures;" that the JS-12 forms "provide defendants with the statistics necessary to identify whether an identifiable group was substantially under-represented in the jury pool from which defendants' grand jury was drawn;" that the records concerning the method for empaneling the grand jury "reflect the methods or procedures by which a grand or potential petit jury is empaneled, [and therefore] fall clearly within the scope of necessary discovery to determine whether a successful, fair cross-section challenge exists;" and that the statistical information related to the makeup of the jury pool was information to which defendants were entitled under the Act.  *Id.*; *see also United States v. Jack*, 2009 WL 435124, at *4 (E.D. Cal. Feb. 20, 2009) (granting requests for records setting

---

[1] For the Court's convenience Ms. Holmes has attached to this Reply a chart which reflects her requests, and, if the government has objected, the basis for the request. *See* Ex. A.

forth methods for empaneling grand jury). All of this information reflected "records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).

The government principally relies on *United States v. Shader*, 2020 WL 4158059 (E.D.N.Y. July 17, 2020). Gov't Opp'n at 6-7. In *Shader*, the defendant claimed that her right to a grand jury that represents a cross section of the community was potentially compromised "because the indictment was returned by a grand jury sitting in Central Islip, as opposed to [its usual location in] Brooklyn, after the courthouses were closed in March and most members of the public were under a stay at home order due to the COVID-19 pandemic." *Id.* at * 1. The court explained that the premise of the motion was flawed because the at-issue grand jury was empaneled months before the start of the pandemic and its members were selected from all five counties that comprise the Eastern District of New York. *Id.* at *2. The court denied several of the defendant's requests based on her flawed assumption. *Id.* The court found it significant that the government had explicitly clarified that the grand jury was empaneled before the pandemic and was selected from all the counties. *Id.*

In this case, Ms. Holmes has not premised her requests on an assertion that the grand jury that returned the Indictments was sitting in a different location, or that grand jurors from San Jose were under stay-at-home orders when the Indictments were returned.[2] Rather, she bases her motion on the effect of the COVID-19 pandemic on the pool of qualified grand jurors and the lack of information about the manner in which the grand jury that returned the Second and Third Superseding Indictments was selected. *See* General Order No. 72-3 (adopted May 21, 2020) ("Grand jury proceedings in this district will resume in June on a date and in a manner to be determined."). The government faults Ms. Holmes for presuming that the pandemic may have affected the representativeness of the pool from which the grand juries were drawn, but unlike in *Shader*, it has provided no information about the manner in which the grand jury was selected or otherwise explained why Ms. Holmes' assumptions are wrong. The defendant in *Shader* did not raise the questions presented by Ms. Holmes' anticipated motion, and that case provides no guidance here.

---

[2] Should the materials ordered by the Court reveal that either of these circumstances occurred in this case, Ms. Holmes would make those arguments when filing a motion to dismiss under 28 U.S.C. § 1867(a).

MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
CR-18-00258 EJD

4

More analogous is a recent decision by the U.S. District Court for the Eastern District of Washington, which granted requests similar to Ms. Holmes' requests. *See United States v. Cloud*, 2020 WL 4381608 (E.D. Wash. July 27, 2020). In *Cloud*, the defendant sought grand-jury selection materials comprising 27 categories of information related to the grand jurors who returned indictments in that case, and sought records related to the current grand jury as the defendant was anticipating a new indictment in the case. *Id.* at *2. The court denied without prejudice two requests for orders or changed policies enacted for summoning jurors during the pandemic. The court reasoned that because the jurors that returned the indictment were summoned well before issues related to the pandemic occurred, the pandemic-related requests were premature. *Id.*

Critically, the court granted the remaining 25 requests. Specifically, the court held, as have other courts, that the JS-12 forms (Holmes Request 6); Jury Wheel data analyses (Holmes Request 7); calculations made to ensure that grand jurors were summoned at random in proportion to the population of the District's counties, and the ratios of individuals summoned from each division (Holmes Request 9 and 10); juror qualification forms (Holmes Request 16); and grand juror numbers and dispositions of summoned grand jurors as to excusal, deferment, disqualification, or selection (Holmes Requests 18-20) were "within the scope of [a defendant's] right of access under 28 U.S.C. § 1867(f)." *Id.* at *2-8.

The same is true here. The requests to which the government objects include precisely the type of information that courts have held is necessary to prepare a motion under 28 U.S.C. § 1867(a):

Requests 2-3 concern any orders or documents reflecting changes from previous grand-jury selection procedures because of the pandemic,[3] which are undoubtedly "records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f). The Court's General Order 72-3 stated that "Grand jury proceedings in this district will resume in June on a date and in a manner to be determined." The Act entitles Ms. Holmes to documents that would allow her to ensure that the manner of selection that was ultimately determined, if changed from the standard jury-selection procedure, is consistent with the requirements of the Act and the Constitution.

---

[3] Upon confirmation that *all* of the information reflected in Requests 2-3 is available publicly, Ms. Holmes is willing to withdraw these requests.

MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
CR-18-00258 EJD

5

Request 6-7 seek any JS-12 form that may have been created pursuant to 28 U.S.C. § 1863(a) and any other statistical demographic analyses used to summon the grand jurors in this case. As courts in this district have recognized, JS-12 forms provide:

> (1) the number of names placed on the master wheel and the number of names drawn from the master wheel to whom questionnaires were mailed; (2) the number of questionnaires completed and returned, returned as undeliverable by the post office, or not yet returned; (3) a demographic analysis of samplings drawn from returned jury questionnaires and from those placed on the qualified jury wheel; and (4) a statistical comparison of the jury wheel sample against general-population data by racial, ethnic and gender classifications.

*Cerna*, 2009 WL 2998930, at *3. It goes without saying that such requests "provide . . . the statistics necessary to identify whether an identifiable group was substantially under-represented in the jury pool from which defendants' grand jury was drawn."[4] *Id.*

Requests 9-10 seek calculations made by the court to ensure that grand jurors were summoned in proportion to the population of the District's counties, and the ratios of individuals summoned from each division. These calculations are expressly referenced in the District's Grand Jury Plan that was designed to meet the requirements of the Act. *See* General Order 6 at 3, 5-6. Moreover, they are required under the Act to ensure that the jurors who are summoned reflect a cross-section of the community. 28 U.S.C. § 1863(b)(3) (explaining the requirement of "proportional representation in the master jury wheel"). Ms. Holmes would need to review the records to determine if any division was significantly underrepresented.

Requests 16-17 concern the jury qualification forms and a questionnaire sent by the Court, presumably as a screening tool. As courts have recognized, [t]he use of jury questionnaires is an important mechanism for the implementation of [jury selection] procedures." *Cerna*, 2009 WL 2998930, at *2; *see also U.S. v. Skilling*, 2004 WL 1243912 at *15 (S.D. Tex. May 25, 2004) ("[A]bsent access to the information solicited on the Juror Qualification Questionnaires, Skilling will not be able to determine what, if any, grounds exist to support a motion to dismiss the superseding indictment under 28 U.S.C. § 1867(a)"). As recently as this week, a court in this district provided counsel with proposed

---

[4] It is unclear if these forms currently exist with respect to the grand jurors that returned the Second and Third Superseding Indictments. For that reason, it is imperative that Ms. Holmes' other requests are granted as they would provide her with access to much of the information that would be reflected in the JS-12 forms.

MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
CR-18-00258 EJD

COVID-19 related questions to potential jurors. *United States v. Calderon*, CR-18-00289-WHA, ECF No. 311 (N.D. Cal. Aug. 5, 2020).

Requests 18-20 are critical to determining the effect of the COVID-19 crisis on the *qualified* grand jury pool. They seek the juror numbers and the dispositions of each summoned potential grand juror as to excusal, deferment, disqualification, or selection of the grand jurors who returned the Second and Third Superseding Indictment. "[I]nformation concerning the reason for a prospective grand juror's exclusion from the jury pool plainly qualifies as a 'record[ ] . . . used by the jury commission or clerk in connection with the jury selection process' [and is] potentially necessary to understanding whether the grand jury that returned the indictments in [a] case fairly represented the community." *Cloud*, 2020 WL 4381608, at *4 (citing 28 U.S.C. § 1867(f)). Moreover, the grounds for excusal and the disposition of juror qualifications is directly relevant to whether the grand jury was selected at random as required by the Act. *See United States v. Evans*, 526 F.2d 701, 706 (5th Cir. 1976) (clerks may not make determinations in the jury-questionnaire screening process that are "subjective" or "extra-statutory"); *Layton*, 519 F. Supp. at 954 (excusal by clerks constitutes substantial violation of the Act when clerk employs "subjective or non-random criteria").[5]

In short, the materials requested by Ms. Holmes are within the scope of "records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f). Ms. Holmes therefore is entitled to the materials in anticipation of a motion under 28 U.S.C. § 1867(a).

**II.   The Government's Arguments to The Contrary Are Unavailing, and Appropriate Safeguards Will Ensure That Produced Information Is Protected.**

None of the government's arguments support its crabbed interpretation of Ms. Holmes' right to access grand-jury materials.

First, the government invokes the "presumption of regularity" afforded to grand juries in an attempt to narrow the documents to which a defendant is entitled. Gov't Opp'n at 4. But the government cites no case applying the presumption of regularity to limit a defendant's statutory right to access documents used in connection with the grand-jury selection process. To the contrary, courts hold

---

[5] At this time, Ms. Holmes withdraws Request 21, but reserves her right to renew the request once she reviews the materials ordered produced by the Court and confirms that grounds exist for a motion under the Act. *See* 28 U.S.C. § 1867(d).

MS. HOLMES' REPLY IN SUPPORT OF MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
CR-18-00258 EJD

that a defendant need not show that a motion to dismiss under § 1867(a) will be meritorious to gain access to relevant documents. *Layton*, 519 F. Supp. at 958 ("To avail himself of this right of access to otherwise nonpublic jury selection records, a litigant need only allege that he is preparing a motion challenging the jury selection procedures.").

Next, the government invokes *Test* in support of its argument that, despite all the procedures required by the Act, a defendant is entitled only to the information that makes up the Master Jury Wheel. Gov't Opp'n at 4-5. But *Test* does not so hold. Although *Test* involved a request for such information, the Supreme Court held that § 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists . . . in order to aid parties in the preparation of motions challenging jury-selection procedures." 420 U.S. at 30 (internal quotation marks omitted). The Court held that the right to inspect the lists encompassed the "contents of records or papers used by the jury commission or clerk in connection with the jury selection process," 28 U.S.C. § 1867(f), not that the right was limited to documents about the Master Jury Wheel. In other words, although information concerning the Master Jury Wheel may be *necessary*, it is by no means in every case *sufficient*.

The government also relies on other cases that it claims stand for the proposition that discovery should be limited to narrow disclosures regarding the Master Jury Wheel. *See* Gov't Opp'n at 5-6. However, the government's cases provide only that the scope of discoverable information may vary based on the particular facts of the case, the type of information requested, and the explanations given for the requests. In *United States v. Gotti*, for example, in which the defendant requested information only about the Master Wheel, the court declined to turn over juror identifying information based on the circumstances of that case, which involved witness intimidation and defendants accused of engaging in violent activities for a prominent crime syndicate. 2004 WL 32858, *11 (S.D.N.Y. Jan. 6, 2004). In *United States v. Davis*, another case in which the defendant limited his requests to the Master Wheel, the court held that "names of specific jurors selected do not need to be turned over to a defendant" charged with violent crimes but specifically noted that the right to discovery extends *beyond the master wheel*. 2009 WL 637164, at *16 (S.D.N.Y. Mar. 11, 2009). Ms. Holmes' requests extend beyond the information requested in those cases. Moreover, this is not a case involving violent crime, and any

1  suggestion that Ms. Holmes or her counsel will use this information to intimidate grand jurors would be
2  baseless and offensive.

3  *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984), affirmatively undermines the
4  government's argument.  In *McLernon*, the court recognized that the "right to inspection extends to *all*
5  jury selection materials relevant to a *complete* determination of whether a grand or petit jury has in fact
6  been selected '[at] random from a fair cross-section of the community.'"  *Id.* at 1123 (emphasis added)
7  (citations omitted).  The court explained that in certain circumstances "a defendant must be afforded
8  access to the names, addresses, and demographics of those jurors who returned the indictment in order to
9  vindicate the 'unqualified' right to inspection and to insure that the jury *actually represented* a wide
10 spectrum of the community."  *Id.*  In finding that the defendant was not entitled to more information
11 than reflected in the Master Wheel, the Sixth Circuit expressly limited its holding to the "narrow facts
12 currently before [the court]."  *Id.*

13 These cases do not stand for the broad proposition that disclosure of information about the
14 Master Jury Wheel suffices to protect Ms. Holmes's right in the circumstances of this case—when the
15 relevant question is whether the COVID-19 crisis disproportionately affected grand jurors' ability and/or
16 availability to serve and the procedures used to qualify and/or excuse grand jurors.  The Court should
17 reject the government's invitation to re-write § 1867(f) to give access only to basic demographic
18 information that comprises the Master Jury Wheel.

19 Finally, the government implies that there is a risk that the requests may implicate the personal
20 information of grand jurors.  If any of the requested documents contain such information, Ms. Holmes
21 does not object to appropriate redactions or any issuance of a protective order.  Any risks associated
22 with producing information responsive to Ms. Holmes' requests therefore can be adequately mitigated
23 through reasonable protective measures.

## CONCLUSION

25 For these reasons, this Court should grant Ms. Holmes' motions.

DATED:  August 6, 2020

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

# EXHIBIT A

## Motion for Grand Jury Selection Materials (Requests)

| Number | Request | Note |
|---|---|---|
| Request 1 | The Jury Plan for the Northern District of California currently in effect and, if different in any respect, at the time the grand jurors who returned the Second and Third Superseding Indictments, were summoned in this case. | No objection by government. |
| Request 2 | Any documents that reflect changes from previous procedures from the Jury Plan for the grand jury or creation of the grand jury because of COVID-19. | Ms. Holmes requires this information to determine what changes were implemented to the Grand Jury Plan as a result of COVID-19. |
| Request 3 | Any order of the Court that affects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic. | Ms. Holmes requires this information to determine what changes were implemented to the Grand Jury Plan as a result of COVID-19. |
| Request 4 | The jury division or divisions chosen for the grand jury empaneled from June 1, 2020 to July 28, 2020. | No objection by government. |
| Request 5 | Any documents that reflect the description of reasons for the choice of the jury division or divisions for the grand jury empaneled from June 1, 2020 to July 28, 2020. | No objection by government. |
| Request 6 | Any AO-12 form or JS-12 form created that relates to the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as required by 28 U.S.C. § 1863(a). | JS-12 forms provide critical demographic information and analysis of that information is necessary to determine whether the qualified jury pool from which the grand jurors were selected represented a fair cross section of the community. *See e.g., United States v. Cerna*, 2009 WL 2998930, at *3 (N.D. Cal. Sept. 16, 2009) (stating JS-12 forms provided "defendants with the statistics necessary to identify whether an identifiable group was substantially under-represented in the jury pool from which defendants' grand jury was drawn."). |
| Request 7 | Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case were in compliance with the Jury Plan, Jury Selection and Service Act, and Constitution. | Any other statistical information considered by the clerk would provide information necessary to determine if any cognizable groups were underrepresented, and if there were any flaws in the methodology of the analyses that led to any constitutional or statutory violations. |
| Request 8 | The date on which the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, | No objection by government. |

| Number | Request | Note |
|---|---|---|
| | were refilled as described in General Order No. 6 Section VII. | |
| **Request 9** | The record of calculations as described in the General Order No. 6 Section XIV. | Ms. Holmes requires these calculations to determine if any division was significantly underrepresented. Moreover, these calculations are expressly referenced in the District's Grand Jury Plan that was designed to meet the requirements of the Act. *See* General Order 6 at 3, 5-6. |
| **Request 10** | Any general notice explaining the process by which names were drawn from the pool of qualified persons of each jury division for the grand jury panel. | Ms. Holmes requires this notice to determine if the process was compliant with the Act and Constitution. Moreover, this notice is required under 28 U.S.C. § 1864(a). |
| Request 11 | The calculation of the number of potential jurors from San Francisco-Oakland, San Jose, and Eureka jury divisions to ensure compliance with the numbers listed in Section VII of General Order No. 6. | No objection by government. |
| Request 12 | The source of data in electronic form for the Master Jury Wheels used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as described in General Order No. 6 Sections VI, VIII, and XIV. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. The data should not include any personal information that could be used to identify any individuals such as name or street address. | No objection by government. |
| Request 13 | The Master Jury Wheels data as described in the General Order No. 6 Sections VII, VIII and XIV, in electronic and accessible form that includes, Juror Number, Race, Gender, Ethnicity, Year of Birth, Zip Code, County and Jury Division. The data should not include any personal information that could be used to identify any individuals such as name or street address. | No objection by government. |
| Request 14 | The date when the grand jurors who returned the Second and Third Superseding Indictments in this case were summoned. | No objection by government. |
| Request 15 | The number of persons summoned from the Master Jury Wheels to be considered as grand jurors. This number should further be categorized by number per jury division. | No objection by government. |

| Number | Request | Note |
| --- | --- | --- |
| **Request 16** | The juror qualification and summons forms for the persons summoned to potentially become grand jurors. | Ms. Holmes requires this information to determine whether certain populations were underrepresented in the grand jury pool. As courts have recognized, [t]he use of jury questionnaires is an important mechanism for the implementation of [jury selection] procedures." *Cerna*, 2009 WL 2998930, at *2; *see also United States v. Cloud*, 2020 WL 4381608, at *5 (E.D. Wash. July 27, 2020). |
| **Request 17** | The SurveyMonkey COVID-19 questionnaires sent to the prospective grand jurors. | Ms. Holmes requires this information to determine if there was a disproportionate effect on a cognizable group in jury selection, and to determine if there were any subjective or extra-statutory determinations in the excusal of potential grand jurors. *United States v. Layton*, 519 F. Supp. 946 at 954 (excusal by clerks constitutes substantial violation of the Act when clerk employs "subjective or non-random criteria"). |
| **Request 18** | The Juror Numbers for the persons selected as potential grand jurors from June 1, 2020 to July 28, 2020. | Requests 18-20, when reviewed together, will provide information necessary to determine whether there was an effect of the COVID-19 crisis on the qualified juror pool and whether any subjective criteria was introduced into the selection/qualification of the grand jurors. |
| **Request 19** | The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in General Order No. 6 Sections IX-XII. | Requests 18-20, when reviewed together, will provide information necessary to determine whether there was an effect of the COVID-19 crisis on the qualified juror pool and whether any subjective criteria was introduced into the selection/qualification of the grand jurors. *See Cloud*, 2020 WL 4381608 at *4 ("[I]nformation concerning the reason for a prospective grand juror's exclusion from the jury pool plainly qualifies as a 'record[ ] . . . [under § 1867(f) and is] potentially necessary to understanding whether the grand jury that returned the indictments in [a] case fairly represented the community." ). |
| **Request 20** | The Juror Number for each grand juror who returned the Second and Third Superseding Indictments in this case. | Requests 18-20, when reviewed together, will provide information necessary to determine whether there was an effect of the COVID-19 crisis on the qualified juror pool and whether any subjective criteria was introduced into the selection/qualification of the grand jurors. |
| **Request 21** | The attendance record and reason for absence by date of each grand juror who returned the Second and Third Superseding Indictments in this case. | At this time, Ms. Holmes withdraws Request 21, but reserves her right to renew the request once she reviews the materials ordered produced by the Court and confirms that grounds exist for a motion under the Act. *See* 28 U.S.C. § 1867(d). |