UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH A. HOLMES and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. 18-cr-00258-EJD-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS**<br><br>Re: Dkt. Nos. 461, 462, 470, 472 |

Presently before the Court is Defendant Holmes's motions for access to court records regarding the constitution of the grand jury (or grand juries) that returned the Second and Third Superseding Indictments in this case. *See* Dkt. Nos. 461, 470. Having reviewed the parties' filings and applicable law, the Court will resolve the motions without oral argument. The Court will GRANT IN PART and DENY IN PART the motions for the reasons below.

**I.  BACKGROUND**

In response to the COVID-19 pandemic, this District suspended all grand jury proceedings beginning in March 2020. *See* General Order No. 72, In RE: Coronavirus Disease Public Health Emergency (adopted March 16, 2020). Then, on June 9, 2020, the District issued provisional modifications to its Jury Plan in order to resume grand jury proceedings in June 2020. *See* General Order No. 77, In Re: Provisional Modifications to Jury Plan Due to COVID-19 Public Health Emergency (adopted June 9, 2020); General Order No. 72-3, In RE: Coronavirus Disease Public Health Emergency (adopted May 21, 2020).

On July 14, 2020, after grand jury proceedings had resumed, a grand jury for the San Jose

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
1

Division of this District returned a Second Superseding Indictment in this case. Dkt. No. 449. Concerned that the COVID-19 pandemic and this District's modifications to its Jury Plan in response thereto may have affected the selection of the grand jury, Defendant Holmes filed a Motion for Access to Grand Jury Selection Materials on July 21, 2020. Dkt. No. 461 ("July 21 Mot."). Specifically, Defendant Holmes sought 21 categories of records, which are laid out in Exhibit A to the motion. Dkt. No. 461-2. Defendant Balwani joined the motion. Dkt. No. 462.

A grand jury subsequently returned the operative Third Superseding Indictment on July 28, 2020. Dkt. No. 469. Defendant Holmes therefore filed a new Motion for Access to Grand Jury Selection Materials as to both the Second and Third Superseding Indictments, Dkt. No. 470 ("July 30 Mot."); Defendant Balwani again joined, Dkt. No. 472. Filed on July 30, 2020, this second motion seeks the same 21 categories of records as the first, with slight modifications to reflect the inclusion of the Third Superseding Indictment. The opening brief in support of the July 30th motion is likewise substantially identical to the July 21st motion. Hence, this Order relies upon the more recent July 30th motion briefing.

The Government filed its consolidated Opposition to both motions on July 31, 2020. Dkt. No. 474 ("Opp."). Defendant Holmes replied on August 6, 2020. Dkt. No. 481 ("Reply").

**II.   DISCUSSION**

The Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§ 1861–67, governs the manner of selecting federal grand and petit jurors in federal court. The JSSA implements "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id.* § 1861; *see United States v. Nelson*, 718 F.2d 315, 318 (9th Cir. 1983). This policy is consistent with the Sixth Amendment guarantee of "a jury drawn from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 368 (1979); *see also United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158-59 (9th Cir. 2014).

Each district must "devise and place into operation a written plan for random selection of

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
2

grand and petit jurors" that complies with the JSSA's procedural and substantive requirements. 28 U.S.C. § 1863(a). This District's so-called Jury Plan is its General Order No. 6. *See* General Order No. 6, Plan for the Random Selection of Grand and Petit Jurors (adopted August 7, 2017).

As a mechanism for enforcing its mandates, the JSSA permits a criminal defendant to "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a). Such a motion may be brought to establish either a violation of the basic fair cross section right, *see United States v. Patel*, 996 F.2d 1229 (9th Cir. 1993), or a "substantial failure to comply" with specific procedures required by the Act, *see United States v. Erickson*, 75 F.3d 470, 477 (9th Cir. 1996). The JSSA further provides that in preparing the motion, the defendant is entitled to access "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process." *Id.* § 1867(f). The defendant "shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." *Id.*

It is well-established that, under § 1867(f), "a litigant has essentially an unqualified right" to inspect the jury selection materials described therein. *Test v. United States*, 420 U.S. 28, 30 (1975). As the Supreme Court has explained, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.*; *see also United States v. Beaty*, 465 F.2d 1376, 1382 (9th Cir. 1972) (holding that defendant "had a right to make the inspection before he made a motion to challenge the jury under § 1867(a)"). Moreover, access to the relevant records may not be conditioned on a defendant first showing a probability of success on the merits of the jury challenge. *Id.* at 1380; *accord United States v. Diaz*, 236 F.R.D. 470, 477 (N.D. Cal. 2006).

Pursuant to the foregoing, Defendants have moved for access to various documents relating to the grand jury or grand juries that returned the Second and Third Superseding Indictments in this case. July 30 Mot. at 2. Defendants say they intend to review the requested

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
3

documents in order to determine whether to file a motion challenging the selection of the grand jury under 28 U.S.C. § 1867(a). *Id.* In particular, Defendants are concerned about (1) the revisions this District has made to its past procedures in response to the ongoing COVID-19 pandemic and the effect of these changes on the constitution of the grand jury, and (2) whether the grand jury was representative of the community "in light of the disproportionate medical and economic impact that the COVID-19 crisis has had on certain populations." *Id.* at 2-3.

The Government does not dispute that Defendants have an unqualified right to the "records or papers used by the . . . clerk in connection with the jury selection process" in order to determine whether to file a § 1867(a) motion. *See* Opp. at 2. The parties disagree, however, on the scope of that right and whether it encompasses all the categories of documents that Defendants request.

In their motion, Defendants request the following information[1]:

1. The Jury Plan for the Northern District of California currently in effect and, if different in any respect, at the time the grand jurors who returned the Second and Third Superseding Indictments, were summoned in this case. This Plan is believed to be General Order 6: Plan for the Random Selection of Grand and Petit Jurors; as modified by General Order 77: In Re: Provisional Modifications to Jury Plan due to COVID-19 Public Health Emergency.

2. Any documents that reflect changes from previous procedures from the Jury Plan for the grand jury or creation of the grand jury because of COVID-19.

3. Any order of the Court that affects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the COVID-19 pandemic.

4. The jury division or divisions chosen for the grand jury empaneled from June 1, 2020 to July 28, 2020.

5. Any documents that reflect the description of reasons for the choice of the jury division or divisions for the grand jury

---

[1] The Court cites the version of the requests made in the July 30th motion. To the extent Defendants' July 21st motion contained slightly narrower requests, the Court considers them superseded by the July 30th motion.

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
4

empaneled from June 1, 2020 to July 28, 2020.

6. Any AO-12 form or JS-12 form created that relates to the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as required by 28 U.S.C. § 1863(a).

7. Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, were in compliance with the Jury Plan, Jury Selection and Service Act, and Constitution.

8. The date on which the Master Jury Wheels that were used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, were refilled as described in General Order No. 6 Section VII.

9. The record of calculations as described in the General Order No. 6 Section XIV.

10. Any general notice explaining the process by which names were drawn from the pool of qualified persons of each jury division for the grand jury panel.

11. The calculation of the number of potential jurors from San Francisco-Oakland, San Jose, and Eureka jury divisions to ensure compliance with the numbers listed in Section VII of General Order No. 6.

12. The source of data in electronic form for the Master Jury Wheels used to summon the grand jurors who returned the Second and Third Superseding Indictments in this case, as described in General Order No. 6 Sections VI, VIII, and XIV. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division.  The data should not include any personal information that could be used to identify any individuals such as name or street address.

13. The Master Jury Wheels data as described in the General Order No. 6 Sections VII, VIII and XIV, in electronic and accessible form that includes, Juror Number, Race, Gender, Ethnicity, Year of Birth, Zip Code, County and Jury Division.  The data should not include any personal information that could be used to identify any individuals such as name or street address.

14. The date when the grand jurors who returned the Second and Third Superseding Indictments in this case were summoned.

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
5

15. The number of persons summoned from the Master Jury Wheels to be considered as grand jurors. This number should further be categorized by number per jury division.

16. The juror qualification and summons forms for the persons summoned to potentially become grand jurors.

17. The SurveyMonkey COVID-19 questionnaires sent to the prospective grand jurors.

18. The Juror Numbers for the persons selected as potential grand jurors from June 1, 2020 to July 28, 2020.

19. The disposition of each summoned potential grand juror as to excusal, deferment, disqualification or selection as described in General Order No. 6 Sections IX-XII.

20. The Juror Number for each grand juror who returned the Second and Third Superseding Indictments in this case.

21. The attendance record and reason for absence by date of each grand juror who returned the Second and Third Superseding Indictments in this case.

Dkt. No. 470-2 (footnotes omitted).

In the Government's view, not all 21 Requests are covered by § 1867(f). The Government argues that "a defendant's 'unqualified right to records or papers encompasses only such data as a defendant needs to challenge the jury selection process.'" Opp. at 5 (quoting *United States v. O'Reilly*, No. 05-CR-80025, 2008 WL 115537, at *3 (E.D. Mich. Jan. 10, 2008)) (alterations omitted). The Government then maintains that "access to the county of residence, zip code, race, and age of the individuals listed in the relevant master jury wheel is sufficient for Defendant Holmes to determine whether to move to stay proceedings or dismiss the indictment," Opp. at 5-6; the Government opposes production of "materials beyond this limited set of data," Opp. at 7. Applying their proposed standard, the Government assents to Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15. In other words, the Government's view of the scope of § 1867(f) appears to be confined to information regarding the creation of the Master Jury Wheel for each division. *See* Opp. at 5; *see generally* General Order No. 6 at 3 (describing Master Jury Wheels).

The Court agrees that § 1867(f), by its own terms, covers only records (1) "used by the

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
6

jury commission or clerk in connection with the jury selection process" and (2) "necessary in the preparation of a motion" challenging compliance with the JSSA. 28 U.S.C. § 1867(f). The Court also recognizes that "a lack of representation on one jury is insufficient to establish a prima facie case" for a violation of the fair cross section requirement. *Patel*, 996 F.2d at 1229. It does not follow, however, that only information regarding the creation of the Master Jury Wheel—and not information regarding subsequent selection procedures—is subject to disclosure. *Accord United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) ("We can certainly envision a situation in which a defendant must be afforded access to the names, addresses, and demographics of those jurors who returned the indictment in order to vindicate the 'unqualified' right to inspection and to insure that the jury actually represented a wide spectrum of the community."). General Order No. 6 lays out several processes following the creation of the Master Jury Wheel that could affect whether a grand jury was selected from a fair cross section of the community.

In particular, after names are drawn from the Master Jury Wheel, the Clerk "mail[s] to every person who name is thus drawn a juror summons and qualification notice accompanied by instructions to complete the questionnaire via the court's website within ten days." General Order No. 6 at 3. Based on information provided on the juror qualification form, the Clerk determines whether the person is "unqualified for, exempt from, or otherwise eligible to be excused from jury service." *Id.* at 3-4. The Clerk then draws the grand jury panel from the pool of qualified, non-exempt persons. *Id.* at 5.

Of particular relevance here, an excuse may be granted "upon a showing of undue hardship or extreme inconvenience if required to serve." *Id.* at 5. Defendants' primary concern is that the COVID-19 pandemic may have caused many individuals to be excused on such grounds, and that their grand jury may consequently not have been selected from a fair cross section of the community. As a result, it is the qualification and excuse stage of jury selection that is principally relevant to Defendants' prospective § 1867(a) claim. Without opining on the validity of the underlying legal theory, the Court believes it illustrates how records beyond those used to create

the Master Jury Wheel may be relevant to jury selection challenge. *See, e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 2998930, at *2 (N.D. Cal. Sept. 16, 2009) ("The use of jury questionnaires is an important mechanism for the implementation of [the JSSA's jury selection procedures."); *see also Erickson*, 75 F.3d at 477 (Under the JSSA, a court may "determin[e] disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only.").

The Court will, therefore, permit the Defendants to access records that were "used by the jury commission or clerk in connection with the jury selection process" and potentially "necessary in the preparation" of Defendants' possible § 1867(a) motion even if those records concern steps in the jury selection process subsequent to the formation of the Master Jury Wheel.

With these principles in mind, the Court now considers the parties' specific arguments as to the 21 requests.

<u>Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15</u>:

As noted above, the Government does not oppose these requests. The Court agrees with the parties that such data qualifies as records "used by the jury commission or clerk in connection with the jury selection process" that are potentially necessary to determining whether a plausible § 1867(a) claim exists. The Court therefore GRANTS the motions for access as to Request Nos. 1, 4, 5, 8, 11, 12, 13, 14, 15.

<u>Requests No. 2-3</u>:

Requests 2 and 3 seek any "order of the Court" or other documents that effect or document any changes from the grand jury selection procedures in the District's Jury Plan made because of the COVID-19 pandemic.

The Court is persuaded that, to the extent any such orders or documents exist, they "reflect the methods or procedures by which a grand . . . jury is empaneled" and "fall clearly within the scope of necessary discovery" to determine whether a colorable JSSA claim exists. *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 2998930, at *4 (N.D. Cal. Sept. 16, 2009) (granting

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS

8

discovery of "the forms, procedures and checklists that the clerk uses to assemble jury wheels, and by which juries are empaneled" and "a copy of all documents reflecting procedures used to select names from the master or qualified jury wheels, and to excuse prospective grand and petit jurors for hardship or other reasons").

Although the Government opposes production, the only reason it gives for doing so is that a district court for the Eastern District of New York denied similar requests. Opp. at 6 (citing *United States v. Shader*, No. 20-CR-202, 2020 WL 4158059, at *4 (E.D.N.Y. July 17, 2020)). In that case, however, the grand jury that had returned the defendant's indictment had been empaneled "in October 2019, months before the start of the pandemic." *Id.* at *2. Here, by contrast, all evidence suggests that the grand jury was empaneled during the pandemic, after a temporary pause in grand jury proceedings. *Shader* thus provides the Government no aid regarding these requests.

Request Nos. 2 and 3 are GRANTED.

Request Nos. 6-7:

Requests 6 and 7 seek any "AO-12 form or JS-12 form" or "other statistical or demographic analyses" regarding the composition of the Master Jury Wheel(s) used to summon the grand jurors in this case. Another court in this district has explained that

> JS–12 forms provide: (1) the number of names placed on the master wheel and the number of names drawn from the master wheel to whom questionnaires were mailed; (2) the number of questionnaires completed and returned, returned as undeliverable by the post office, or not yet returned; (3) a demographic analysis of samplings drawn from returned jury questionnaires and from those placed on the qualified jury wheel; and (4) a statistical comparison of the jury wheel sample against general-population data by racial, ethnic and gender classifications. These forms provide defendants with the statistics necessary to identify whether an identifiable group was substantially under-represented in the jury pool from which defendants' grand jury was drawn.

*Cerna*, 2009 WL 2998930 at *3.

Although it is not clear whether any such reports have been produced, the Court agrees with Defendants and the *Cerna* court that they would be relevant to a fair cross section claim

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS

9

under the JSSA or the Sixth Amendment. *See generally Patel*, 996 F.2d 1229 ("To establish a prima facie case of a fair-cross section requirement, a defendant must show: 1) the excluded group is a "distinctive" group in the community; 2) that group's representation in jury venires is unfairly disproportional to their representation in the community; and 3) that underrepresentation is due to systematic exclusion from the jury selection process."). Defendant, meanwhile, does not present any non-conclusory argument against production.

Request Nos. 6 and 7 are GRANTED.

Request Nos. 9-10:

Request Nos. 9 and 10 relate to the step at which the Clerk randomly selects grand jurors from the pool of qualified persons drawn from the Master Jury Wheel, which is descried in Section XIV of General Order No. 6. *See* Reply at 6; General Order No. 6 at 5-6. The Government objects to both as unnecessary, but without explanation.

Request 10 is for "[a]ny general notice" explaining that process. The Court construes Defendants' request as seeking any internal or external policies or guidelines governing the Clerk's selection of the grand jury panel from the pool of qualified persons. Contrary to the Government's unsupported assertion that such a notice is "unnecessary assessing whether a challenge to the grand jury selection process is warranted," Opp. at 7, the requested documents (like Request Nos. 2 and 3), are plainly relevant to a potential jury selection challenge. *Cerna*, 2009 WL 2998930 at *3. Request No. 10 is GRANTED.

Request No. 9 is for "[t]he record of calculations" described in Section XIV. Defendants explain that the relevant calculations are those made by the Clerk in order to "ensure that grand jurors were summoned in proportion to the population of the District's counties." Reply at 6. The Court will GRANT this request to the extent Defendants seek (1) the Clerk's calculation of the number of registered voters in each of the four counties comprising the San Jose division, and (2) the number of prospective grand jurors selected from the pool of qualified persons for the San Jose division. Those figures pertain to the grand jury or grand juries that returned the Second and

1  Third Superseding Indictments in this case. However, data regarding the other divisions in this

2  District does not appear to be relevant and will not be disclosed at this time.

3        Request Nos. 16-17:

4        Request Nos. 16 and 17 concern the forms used to screen potential grand jurors: Request

5  No. 16 is for "the juror qualification and juror summons forms for the persons summoned to

6  potentially become grand jurors"; Request No. 17 is for the "SurveyMonkey COVID-19

7  questionnaires sent to the prospective grand jurors." *See* Reply at 6-7. The Government has again

8  failed to explain its objection to these requests.

9        To the extent Defendants seek a blank copy of these instruments, the Court will GRANT

10  the motion. As explained above, questionnaires and other forms used to screen prospective grand

11  jurors are a key aspect of jury selection and may give rise to a JSSA claim. *Accord United States*

12  *v. Cloud*, No. 1:19-CR-02032-SMJ-01, 2020 WL 4381608, at *5 (E.D. Wash. July 27, 2020);

13  *Cerna*, 2009 WL 2998930, at *2. The Court therefore deems this portion of the motion within the

14  scope of Defendants' right of access under § 1867(f).

15        Defendants do not appear to seek the completed questionnaires or forms of individual

16  jurors or prospective jurors, *see* Reply at 6-7 (citing cases in which the court ordered disclosure of

17  the questions used but not the data returned by individuals); in any event, they have not yet

18  justified such a request. Accordingly, the Court confines its grant of discovery to the blank

19  instruments.

20        Request Nos. 18-20:

21        Request Nos. 18 and 20 are for the Juror Numbers for (1) the persons "selected as potential

22  grand jurors from June 1, 2020 to July 28, 2020" (Request No. 18), and (2) "each grand juror who

23  returned the Second and Third Superseding Indictments in this case." Request No. 19 is for "[t]he

24  disposition of each summoned potential grand juror as to excusal, deferment, disqualification or

25  selection."

26        Defendants explain that together, the information sought by these requests will reveal how

the COVID-19 crisis affected the selection of the ultimate grand jurors. Reply at 7. That is, Defendants will be able to analyze how excusal for COVID-19 related reasons altered the pool of otherwise qualified potential jurors from which the grand jury was drawn. The Court agrees that, despite the Government's conclusory objection, the requested information is potentially necessary to understanding whether the grand jury that returned the indictments fairly represented the community. *Accord Cloud*, 2020 WL 4381608, at *5-*6.

Request Nos. 18-20 are GRANTED.

Request No. 21:

In her Reply, Defendant Holmes does not attempt to justify Request No. 21 and instead withdraws it. *See* Dkt. No. 481-1 at 4. Accordingly, the Court will DENY without prejudice the motion for access as to Request No. 21.

## III.  CONCLUSION

For the foregoing reasons, the Court rules on the request for access to grand jury materials as follows:

| Request No. | Ruling |
|---|---|
| 1 | GRANTED. |
| 2 | GRANTED. |
| 3 | GRANTED. |
| 4 | GRANTED. |
| 5 | GRANTED. |
| 6 | GRANTED. |
| 7 | GRANTED. |
| 8 | GRANTED. |
| 9 | GRANTED as to the San Jose division; otherwise, DENIED. |
| 10 | GRANTED. |
| 11 | GRANTED. |
| 12 | GRANTED. |
| 13 | GRANTED. |
| 14 | GRANTED. |
| 15 | GRANTED. |
| 16 | GRANTED as to the blank forms; otherwise, DENIED. |
| 17 | GRANTED as to the blank questionnaire; otherwise, DENIED. |

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS

12

| 18 | GRANTED. |
|----|----------|
| 19 | GRANTED. |
| 20 | GRANTED. |
| 21 | DENIED without prejudice. |

The disclosure of these materials is subject to the following protective order:

1. The materials may be used only in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. The materials either must be returned to the Court at the commencement of jury selection or counsel must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.

3. The Clerk of the Court shall file a SEALED copy of the records on the docket for purposes of maintaining a record of the production.

4. Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties. Similarly, the materials may only be disclosed to individuals who have a need to view the materials for purposes of the defined scope of the production, as set forth above.

5. Defendant shall not possess the materials at any time, except when reviewing the materials with counsel.

6. Any attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her client's compliance with the requirements of this Protective Order and compliance by any staff member or other person who is shown the materials consistent with the parameters of this Memorandum and Order.

7. Penalties: Counsel and Defendant are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

Finally, the Court notes that Defendants do not seek any personal identifying information

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS

13

(names, addresses, telephone numbers, full dates of birth, or Social Security numbers) for the individuals referred to in the relevant records, and none may be disclosed. *See* Reply at 9. Nevertheless, if any of the above-granted requests are later determined to contain such information, the parties shall file a proposed protective order.

**IT IS SO ORDERED.**

Dated: September 9, 2020

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ACCESS TO GRAND JURY SELECTION MATERIALS
14