1   ADAM A. REEVES (NYBN 2363877)
    Attorney for the United States,
2   Acting Under Authority Conferred By 28 U.S.C. § 515

3   HALLIE HOFFMAN (CABN 210020)
    Chief, Criminal Division
4
    JEFF SCHENK (CABN 234355)
5   JOHN C. BOSTIC (CABN 264367)
    ROBERT S. LEACH (CABN 196191)
6   VANESSA BAEHR-JONES (CABN 281715)
    Assistant United States Attorneys
7
        150 Almaden Boulevard, Suite 900
8       San Jose, California 95113
        Telephone: (408) 535-5061
9       Fax: (408) 535-5066
        Robert.Leach@usdoj.gov
10
    Attorneys for United States of America
11

                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN JOSE DIVISION
14

15  UNITED STATES OF AMERICA,              )  Case No. 18-CR-00258 EJD
                                           )
16          Plaintiff,                     )  UNITED STATES' OPPOSITION TO
                                           )  DEFENDANTS' MOTION TO DISMISS
17      v.                                 )  SECOND AND THIRD SUPERSEDING
                                           )  INDICTMENTS BASED ON
18  ELIZABETH HOLMES and RAMESH            )  PRE-INDICTMENT DELAY [DKT. 493 & 495]
    "SUNNY" BALWANI,                       )
19                                         )  Date:   October 6, 2020
            Defendants.                    )  Time:   10:00 a.m.
20                                         )  Court:  Hon. Edward J. Davila
                                           )
21                                         )  **REDACTED VERSION**
                                           )
22  _____)

23

24

25

26

27

28

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

I.    PROCEDURAL HISTORY.............................................................................................2

    A.    Proceedings Pre-COVID-19 ................................................................................2

    B.    Post-COVID-19 Proceedings...............................................................................6

    C.    The Third Superseding Indictment ......................................................................9

ARGUMENT ............................................................................................................................9

I.    LEGAL STANDARD......................................................................................................9

II.   DEFENDANTS' SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS NOT
    BEEN VIOLATED ........................................................................................................11

    A.    This Is a Complex Fraud Case ...........................................................................11

    B.    Any Alleged Delay Is Not Fairly Attributable to the Government.....................12

    C.    Defendants Have Not Asserted a Right to a Speedy Trial and Have Benefitted
    From Delay .........................................................................................................13

    D.    Defendants Have Not Suffered Prejudice ..........................................................14

    E.    Defendants' Reliance on *United States v. Cutting* Is Misplaced ......................17

CONCLUSION.........................................................................................................................18

1

# **TABLE OF AUTHORITIES**

2

3

## **Cases**

4

*Barker v. Wingo*, 407 U.S. 514 (1972) ........................................................................ passim

5

*Clabourne v. Lewis*, 64 F.3d 1373 (9th Cir. 1995) ............................................... 11

6

*Denham v. Deeds*, 954 F.2d 1501 (9th Cir. 1992) ............................................. 13, 14

7

*Doggett v. United States*, 505 U.S. 647 (1992)................................................ 10, 11, 14

8

*McNeely v. Blanas*, 336 F.3d 822 (9th Cir. 2003) .............................................. 10, 12

9

*McNeil v. Wisconsin*, 501 U.S. 171 (1991).......................................................... 11

10

*United States v. Alexander*, 817 F.3d 1178 (9th Cir. 2016)................................ 15

11

*United States v. Belcher*, No. 16-CR-00211-LHK-2, 2017 WL 3721454 (N.D. Cal. Aug. 29, 2017) ..... 15

12

*United States v. Brown*, 498 F.3d 523 (6th Cir. 2007)........................................ 11

13

*United States v. Cutting*, No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017)................. 17

14

*United States v. Dreitzler*, 577 F.2d 539 (9th Cir. 1978)................................... 11

15

*United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003)............................... 9, 10, 14

16

*United States v. King*, 483 F.3d 969 (9th Cir. 2007) ........................................ 11

17

*United States v. Lam*, 251 F.3d 852 (9th Cir. 2001) ...................................... 10, 15

18

*United States v. Ly,* CR-00-0118 CW, 2001 WL 1456751 (N.D. Cal. Nov. 14, 2001)........... 9, 10, 14, 15

19

*United States v. Marion*, 404 U.S. 307 (1971)................................................... 11

20

*United States v. Mendoza*, 530 F.3d 758 (9th Cir. 2008)................................. 11

21

*United States v. Myers*, 930 F.3d 1113 (9th Cir. 2019) ................................... 10

22

*United States v. Nance*, 666 F.2d 353 (9th Cir. 1982) .................................... 12

23

*United States v. Neusom*, No. CR 03-0194, 2008 WL 4217861 (C.D. Cal. Sept. 12, 2008)................. 15

24

*United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994).................................. 13

25

*United States v. Register*, 182 F.3d 820 (11th Cir. 1999)................................ 11

26

*United States v. Saenz*, 623 F.3d 461 (7th Cir. 2010)..................................... 11

27

*United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992) .................................... 11

28

*United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976)................................. 15

**Statutes**

18 U.S.C. § 1343 ........................................................................................................... 2

18 U.S.C. § 1349 ........................................................................................................... 2

18 U.S.C. §§ 3161-3174 ................................................................................................ 1

**Rules**

Federal Rule of Criminal Procedure 12.2(c)(1)(B) ........................................................ 7

Federal Rule of Criminal Procedure 48 ................................................................... 1, 17

1    The United States respectfully submits its Opposition to Defendants' Motion to Dismiss Second

2    and Third Superseding Indictments Based on Pre-Indictment Delay.  Dkt. 493 & 495.

3                                              **INTRODUCTION**

4     In June 2019, Defendants agreed to a July 28, 2020 trial date on the Superseding Indictment.  In

5    the meantime, after considerable motion practice, their cases have been severed, and the Nation has been

6    struck by a once-in-a-lifetime Pandemic.  On April 15, 2020, recognizing the challenges raised by

7    COVID-19, the Court continued the Holmes trial to October 2020, with no objection.  On August 11,

8    2020, again in recognition of the difficulties imposed by COVID-19, the Court continued her trial to

9    March 9, 2021, again with no objection.

10    Defendants do not argue the Constitution's Speedy Trial Clause (or Federal Rule of Criminal

11    Procedure 48) bars a trial on the Superseding Indictment in March 2021.  They do not claim a violation

12    of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, nor do they dispute that compliance with the Speedy

13    Trial Act raises a strong presumption of compliance with the Constitution's Speedy Trial Clause.

14    Instead, they claim the Grand Jury's decision to return a Third Superseding Indictment alleging one of

15    the conspiracies began in or about 2010 (not 2013), and implicated investors (Walgreens, Safeway,

16    Theranos board members) they did not appreciate had invested money in Theranos, hopelessly

17    compromises their speedy trial rights.  This argument does not withstand scrutiny.

18    The Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972), sets forth a multi-factor

19    test to assess whether a constitutional speedy trial violation has occurred.  None of those factors supports

20    a finding of a violation of here.  Defendants present no evidence that the time period between indictment

21    and trial is uncommonly long in the context of a complex fraud trial, let alone one in the age of COVID-

22    19.  "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious,

23    complex conspiracy charge."  *Barker*, 407 U.S. at 531.  The time that has expired between indictment

24    and trial is not attributable to the government, and is amply justified by the massive discovery and

25    pretrial litigation involved in this case and COVID-19, as confirmed by Defendants' own repeated

26    agreement to exclude time from the Speedy Trial Act clock through December 8, 2020 (in the case of

27    Balwani) and March 9, 2021 (in the case of Holmes).  And, most fundamentally, there is no prejudice.

28    None of the alleged delay is attributable to the Third Superseding Indictment.  Defendants' argument

that the date change and definition of investors in the Third Superseding Indictment drastically transform the case is wrong and hyperbole. And they cannot credibly claim surprise that the government seeks to present evidence relating to Walgreens, Safeway, and Theranos board members that was produced to them in the government's initial discovery productions.

For these reasons, as discussed in detail below, the Court should deny the motion.

## FACTUAL BACKGROUND

### I.    PROCEDURAL HISTORY

#### A.    Proceedings Pre-COVID-19

On June 14, 2018, the Grand Jury returned an indictment charging Defendants with one count of conspiracy to commit wire fraud against Theranos investors, in violation of 18 U.S.C. § 1349 (Count One), one count of conspiracy to commit wire fraud against doctors and Theranos patients, in violation of 18 U.S.C. § 1349 (Count Two), and nine individual counts of wire fraud, in violation of 18 U.S.C. § 1343. Dkt. 1.

Among other things, the indictment alleged that Defendants were officers of a health care and life sciences company, Theranos. *Id.* ¶ 1 & 2. It alleged: "During its first ten years, from approximately 2003 to approximately 2013, Theranos was in what HOLMES called 'stealth mode,' with little public attention." *Id.* ¶ 5. It alleged that "Theranos pursued a partnership with national pharmacy chain Walgreens." *Id.* ¶ 10. And it alleged a scheme to defraud investors "[f]rom a time unknown but no later than 2013 through 2015" executed through at least nine categories of false and misleading statements. *Id.* ¶¶ 11-12.

On June 15, 2018, Defendants made initial appearances and were released on bail. Dkt. 5 & 7. They have remained out of custody throughout the proceedings. The Court set a status conference for August 15, 2018, and, with no objection, excluded time under the Speedy Trial Act. Dkt. 5, 7, & 22 at 7. With Defendants' stipulation and consent, the Court continued the status conference to October 15, 2018, and found time was appropriately excluded under the Speedy Trial Act. Dkt. 30, 43.

On September 6, 2018, the Grand Jury returned a Superseding Indictment, adding an allegation regarding "Investor #6" and making changes to one of the wire fraud counts (Count Four). Dkt. 39 at ¶¶ 13 & 24.

1       On October 15, 2018, the Court convened a status conference.  Dkt. 57.  With no objection, the

2  Court found that the case is complex.  *Id.*  The Court scheduled a further status conference for January

3  14, 2019, and, with consent, found that the time until January 14, 2019, was appropriately excluded

4  under the Speedy Trial Act for effective preparation of counsel.  *Id.*

5       On January 14, 2019, the Court convened a further status conference.  The Court noted "[t]here

6  is aprox[imately] 16-17 million pages of discovery in this matter."  Dkt. 64.  Counsel "confirmed with

7  the Court that it found and ordered the case is complex."  *Id.*  The Court continued the matter to April

8  22, 2019, and found, without objection, the ends of justice served in granting the continuance

9  outweighed the best interests of the public and Defendants in a speedy trial and excluded time through

10  April 22, 2019, because the case is complex and for effective preparation of counsel.  Dkt. 64.

11       At the April 22, 2019 status conference, the government requested that a trial date be set.

12  Defendants objected and stated "we're about three months too early to discuss that."  Declaration of

13  AUSA Robert S. Leach in Support of United States' Opposition to Defendants' Motion to Dismiss

14  Second and Third Superseding Indictments Based on Pre-Indictment Delay ("Leach Decl."), Ex. A

15  (4/22/2019 Hrg. Tr. at 13:19-20).  The defense argued it was premature to set a trial date because it

16  needed "substantial additional time to review and analyze the voluminous discovery that has been

17  produced to date," and because it perceived discovery was incomplete and the government was

18  continuing to investigate.  Dkt. 66 at 3:21-23.  The Court set a further status conference for July 1, 2019,

19  and, without objection, found that the ends of justice served in granting a continuance outweighed the

20  best interests of the public and Defendants in a speedy trial and excluded time under the Speedy Trial

21  Act through July 1, 2019, because the case is complex and for effective preparation.  Dkt. 69 & Leach

22  Decl. Ex. A at 27.[1]

23       Defendants moved to compel production of documents in the possession of the Food and Drug

24  Administration ("FDA") and Centers for Medicare and Medicaid Services ("CMS").  Dkt. 67.  The

---

26  [1]    Throughout 2019 and the first part of 2020, Balwani "[took] discovery in the [parallel] SEC case

27  with an eye towards obtaining helpful information to defend [the criminal] case" and noted that
"because of the similarity of the two cases, that information [i.e., SEC civil discovery] may be helpful in

28  the criminal case."  Defendant Ramesh Balwani's Opposition to United States' Motion to Intervene and
Stay, *SEC v. Balwani*, CV 18-1603 EJD (May 3, 2019), Dkt. 77 at 12:22-25.

1   government opposed, arguing the documents were not in its possession, custody, or control.  Dkt. 79.

2   On June 28, 2019, the Court conducted a hearing on the motion and advanced the previously scheduled

3   status conference.  In advance of the hearing, the parties submitted a joint status memorandum stating:

4

5       The government is prepared to commence trial at the Court's direction.  During our April
        2019 status conference, the government asked the Court to set the matter for trial
6       recognizing that the complexity of this case, including the volume of discovery, likely
        weighs in favor of a trial date in 2020.  Although the government went into discussions
7       with defense counsel with a preference for a trial date during the first half of 2020, the
        defense, particularly counsel for defendant Holmes, who did not represent Ms. Holmes
8       during the investigation that led to the indictment, explained to the government during
        those discussions that significant work remains before it will be prepared for trial,
9       including review of FDA/CMS documents that have yet to be produced and
        approximately 4 terabytes of data recently produced to the government that remains to be
10      processed.

11          In light of each defendant's need to prepare effectively for trial, the government
        does not oppose the defendants' joint request for a trial in September 2020, or as soon
12      thereafter as would be convenient for the Court.

13  Dkt. 80.  At the hearing, without objection, the Court set a trial date of July 28, 2020.  Leach Decl. Ex. B

14  (6/28/2019 Hrg. Tr. at 4-10).  The Court also found, without objection, that the ends of justice served in

15  granting the continuance outweighed the best interests of the public and Defendants in a speedy trial and

16  excluded time under the Speedy Trial Act from June 28, 2019, through July 28, 2020, for effective

17  preparation of counsel.  *Id.* at 69-70; Dkt. 83.

18          On July 15, 2019, the parties jointly proposed a pretrial schedule with, among other things, Rule

19  12 motions to be filed October 15, 2019, and a Rule 12 motions hearing on December 16, 2019.  Dkt.

20  89-4.

21          On July 17, 2019,



24                  Dkt. 92.

1

2

3

4

5

Leach Decl. Ex. C ( ███████████████████████ ) Dkt. 96. █████████████████████████

6  ████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ████████████████████████████████

10      On July 19, 2019, the Court ordered FDA and CMS to produce documents responsive to the

11  motion to compel, and scheduled a further hearing for October 2, 2019.  Dkt. 111.

12  ██████████████████ , ███████████████████████████████

13  █████████████████████████████████████████████████████

14  █████████████████████████████████ .  Leach Decl. Ex. D.

15      On October 2 and November 4, 2019, the Court convened further hearings on the motion to

16  compel.  Dkt. 131, 171.  At the November 4, 2019 hearing, the Court adopted a proposed pretrial

17  schedule submitted by the parties setting a Rule 12 motion deadline of December 16, 2019, and a

18  hearing on February 10, 2020.  Dkt. 170-6, 171.

19      On November 5, 2019, the Court granted the motion to compel discovery and ordered the

20  government to produce certain documents in the possession of FDA and CMS.  Dkt. 174.[2]

21      On December 3, 2019, ████████████████████████ .  Dkt. 189.

22      On December 16, 2019, Holmes filed three motions to dismiss the Superseding Indictment,

23  which Balwani joined.  Dkt. 204, 205, 206.  Holmes also gave notice under Rule 12.2 of her intent to

24

25

26  ───────────────

[2]      The government completed its production of documents in FDA's and CMS' possession on May
27  28, 2020.  Counsel for Holmes wrote the government objecting that one tranche of documents was
produced in an unprocessed format (i.e., a format easily loadable into a document review database).
28  Although the defense is equally capable of processing them, the government undertook the considerable
effort and expense of processing them and produced load-ready files on September 8, 2020.

introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt.  Dkt. 507 at 1.

On February 11, 2020, the Court issued an Order Granting in Part & Denying in Part Defendants' Motion to Dismiss the Superseding Indictment for Lack of Notice; Denying Motion to Dismiss Superseding Indictment for Failure to Allege Falsity; Granting in Part & Denying in Part Defendants' Motion to Dismiss Counts Two and Nine Through Eleven of Superseding Indictment.  Dkt. 339.  Among other things, the Court ordered the government to produce a bill of particulars as to certain counts and identify co-conspirators as to Count One and dismissed counts "to the extent they rely on non-paying patients or doctors."  Dkt. 330 at 39.

On March 6, 2020, the government provided Defendants a Notice re Government's Intent to Introduce Certain Evidence.  Among other things, the government advised Defendants that it intended to introduce evidence of false and misleading representations made to Walgreens, Safeway, and Theranos board members.  Dkt. 367-1 at 3-4.

### B.   Post-COVID-19 Proceedings

On March 16, 2020, the Court ordered that "[n]o jury trial will be commenced before May 1, 2020" and "[a]ll grand jury proceedings in this district are suspended until May 1, 2010."  *See* General Order No. 72, IN RE: Coronavirus Disease Public Health Emergency.  The suspension on grand jury proceedings continued through June 2020.  *See* General Order No. 72-2, IN RE: Coronavirus Disease Public Health Emergency; General Order No. 72-3, IN RE: Coronavirus Disease Public Health Emergency.  The prohibition on jury trials continued through September 2020.  *See* General Order No. 72-5, IN RE: Coronavirus Disease Public Health Emergency (issued July 23, 2020) ("No new jury trial will be conducted through September 30, 2020."); General Order No. 72-6, IN RE: Coronavirus Disease Public Health Emergency (issued September 16, 2020) ("Jury trials may proceed in accordance with the logistical considerations necessitated by the Court's safety protocols.").

On March 20, 2020, the Court issued an Order Re Severance of Trials, finding good cause to sever the Holmes and Balwani trials and ordering that Holmes's trial would proceed as scheduled on July 28, 2020.  Dkt. 362.

On March 30, 2020, the government and Balwani filed a proposed case schedule recommending a January 19, 2021 trial date for him.  Dkt. 366 & 366-1.

On March 31, 2020, the government filed a motion for an examination of Holmes pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B).  Dkt. 507 at 2.

In advance of the April 1, 2020 status conference, Holmes submitted briefing setting forth "COVID-19 Challenges and Legal Impediments" and proposed sweeping orders (ultimately withdrawn), which she claimed were necessary to maintain the July 28, 2020 trial schedule.  Dkt. 367 at 6:14 to 8:8; Dkt. 368, 375.  On April 1, 2020, the Court convened a telephonic status conference and directed the parties to meet and confer regarding the existing schedule: "what pretrial tasks can be done considering COVID-19 and the ability to achieve those tasks to keep the [July 2020] trial date if possible," adding "[t]he Court will not disturb the trial date at this time."  Dkt. 371.  The Court scheduled a further status conference for the Holmes matter on April 15, 2020.

On April 9, 2020, the government advised counsel for Holmes that, following the Court's ruling on Defendants' motions to dismiss the Superseding Indictment, the government intended to seek a second superseding indictment.  Because the Grand Jury was suspended at the time, the government inquired whether Holmes would agree to waive her constitutional right to indictment and proceed to trial by superseding information.  Holmes declined.  Dkt. 372.  The government nonetheless provided Holmes a copy of the proposed superseding information.  *Id.* at n.1.

In an April 14, 2020 status report, Holmes advised the Court that, before learning the government intended to seek a second superseding indictment, she had proposed, "given the[e] risks and considerations [associated with COVID-19]," a "plan to proceed in early 2021."  Dkt. 372 at 4:12-13. She also stated:  "we will continue to work diligently to get ready for trial based on the new charges (again, assuming they will be returned by a grand jury), and we believe that with diligent efforts we will be prepared to proceed to trial six months after the existing trial date (on or about February 8)."  *Id.* at 6:22-25.

On April 15, 2020, the Court continued the Holmes trial to October 27, 2020.  The Court found that the ends of justice served in granting the continuance outweighed the best interests of the public and the Defendant in a speedy trial, and excluded time under the Speedy Trial Act from April 15, 2020,

through October 27, 2020.  Dkt. 374.  Counsel for Holmes agreed to the exclusion and stated "it also may be covered by one of the Court's General Orders as well."  Leach Decl. Ex. E. (4/15/2020 Hrg. Tr. at 33).

On May 8, 2020, the government filed a Superseding Information.  Dkt. 391.

On May 14, 2020, the government and Balwani filed a proposed case schedule recommending an April 20, 2021 trial date.  Dkt. 396 & 396-1.

On July 14, 2020, the Grand Jury returned a Second Superseding Indictment.  Dkt. 449.

On July 20, 2020, the Court conducted a status conference via Zoom, at which Defendant Holmes requested that the trial be continued in light of the ongoing COVID-19 pandemic and the need for effective preparation for trial due to the complexities of the case.  *See* Dkt. 484 (citing Dkt. 463 at 62-66, 69-71).  The government stated that it was prepared to proceed in October, but nevertheless agreed that Holmes had identified many "real challenges and unique challenges to this case" as a result of the pandemic.  Dkt. 484.  Counsel for Holmes stated:

> In the current health environment, which has gotten worse in these months not better, where we haven't had the ability to meet with our client in months in person, where we don't have the ability to meet with witnesses, where we don't have the ability to meet in person with experts . . . .  There's a lot that can be done.  There's a lot that we have done, but we need lead time in advance to do that.  If we're forced to do it, your Honor knows we would do it, but it endangers people, and we would prefer that we would not be put in that choice.  And we would ask the court to not put us in that choice.

Leach Decl. Ex. F. (7/20/2020 Hrg. Tr. at 71).  Counsel for Balwani stated:

> For now, your Honor, unfortunately everything that Mr. Wade said and Mr. Leach said about the COVID crisis and Your Honor said is right.  We're sort of at the mercy of those unfortunate circumstances. . . .  We, I think, unfortunately are going to have to, given the court's position of the order of trial, await Ms. Holmes's trial.  If the trial really takes three months, then we'll have to try that at some point, and we're happy to reconfer with the government once the Holmes trial is set on what exactly the schedule for Mr. Balwani should look like . . . .

*Id.* at 81-82.  Accordingly, the Court instructed the parties to meet and confer regarding a proposed new trial date and case schedule.  Dkt. 454.

On July 28, 2020, the Grand Jury returned a Third Superseding Indictment, which is substantively no different from the Superseding Information first described to the defense in early April 2020.

On August 10, 2020, Holmes and the government filed a Joint Status Report with a revised proposed pretrial schedule. Holmes proposed jury selection beginning March 16, 2021. Dkt. 482.

On August 11, 2020, the Court convened a status conference via Zoom and ordered jury selection in the Holmes trial to begin March 9, 2021. Dkt. 484. The Court found, without objection, that the ends of justice served in granting the continuance outweighed the best interests of the public and Defendant Holmes in a speedy trial and excluded time from October 27, 2020, through March 9, 2021, for effective preparation of counsel.

On August 14, 2020, Balwani stipulated to, and the Court ordered, an exclusion of time for effective preparation of counsel to December 8, 2020, the date of the next status conference in the Balwani matter. Dkt. 487.

The instant motion was filed on August 28, 2020. On September 9, 2020, the Court issued an Order Granting Government's Motion for Examination. Dkt. 507.

### C.     The Third Superseding Indictment

The changes between the Superseding Indictment and Third Superseding Indictment are modest. The Third Superseding Indictment alleges the conspiracy to defraud investors began no later than 2010 (rather than no later than 2013). Dkt. 469 ¶¶ 11-12. It specifically alleges that Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities. *Id.* ¶ 3. It continues to allege that Theranos "pursued a partnership with Walgreens" and refer to the "stealth mode" period of 2003 to 2013. *Id.* ¶¶ 5, 10. It also alleges three new patient counts. *Id.* ¶¶ 26.

## ARGUMENT

## I.     LEGAL STANDARD

The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. AMEND. VI; *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). As the Court has recognized, "[t]his is not an objective standard. In fact, the constitutional guarantee of speedy trial is more flexible – and more lax – than its statutory counterpart. Consequently, it is impossible to determine with precision when the right has been denied." *United*

1   *States v. Ly*, CR-00-0118 CW, 2001 WL 1456751, at *2 (N.D. Cal. Nov. 14, 2001) (citation omitted);

2   *see also Barker v. Wingo*, 407 U.S. 514, 522 (1972) (noting "[t]he right of a speedy trial is necessarily

3   relative" and demands a "functional analysis . . . in the particular context of the case" (internal quotation

4   omitted)); *United States v. Myers*, 930 F.3d 1113, 1117 (9th Cir. 2019) (observing "the Supreme Court

5   directs courts to take an ad hoc, case-by-case approach" to speedy trial claims).  Thus, "the delay that

6   can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy

7   charge."  *Barker*, 407 U.S. at 531.  The Supreme Court's "speedy trial standards recognize that pretrial

8   delay is often both inevitable and wholly justifiable.  The government may need time to collect

9   witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down."

10  *Doggett v. United States,* 505 U.S. 647, 651 (1992).

11      The Supreme Court has articulated a balancing test to determine when government delay

12  abridges the Sixth Amendment right to a speedy trial.  Those factors include: (1) the length of the delay,

13  (2) the reason for the delay, (3) whether defendant has asserted the right to a speedy trial, and (4) the

14  prejudice caused by the delay.  *Barker*, 407 U.S. at 530; *Doggett*, 505 U.S. at 651.  These factors are not

15  exhaustive, nor is any factor necessary or sufficient.  *Ly*, 2001 WL 1456751, at *2; *see Barker*, 407 U.S.

16  at 530 ("We can do little more than identify *some of the factors* which courts should assess in

17  determining whether a particular defendant has been deprived of his right." (emphasis added)); *McNeely*

18  *v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003); *United States v. Lam*, 251 F.3d 852, 855 (9th Cir. 2001).

19  A court's determination may also be influenced by prosecutorial bad faith or a pattern of delay.

20  *Doggett*, 505 U.S. at 656.

21      In *Gregory*, the Ninth Circuit summed up this inquiry with the question "whether [the

22  government's] choice to issue a superseding indictment *created* a delay" which violated the defendant's

23  Sixth Amendment rights.  322 F.3d at 1161 (emphasis added) (no violation where defendant charged

24  with money laundering in superseding indictment after serving offenses on other crimes).

25  ///

26  ///

27  ///

28  ///

GOVT. OPP'N TO MOT. TO DISMISS FOR PRE-
INDICTMNET DELAY, CASE NO. 18-258 EJD        10

## II.     DEFENDANTS' SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS NOT BEEN VIOLATED

### A.     This Is a Complex Fraud Case

When this case is tried in March 2021, approximately 33 months will have elapsed between the indictment on the conspiracy charges and most of the wire fraud charges.[3]  The delay in cases where the Supreme Court and Ninth Circuit have found constitutional speedy trial violations is typically much longer than the delay here, however it is measured.  *See, e.g.*, *Doggett*, 505 U.S. at 650-51 (8-year delay); *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (10-year delay); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (5-year delay).  Defendants present no evidence the time period here is "uncommonly long" in the context of complex fraud cases.  *See Doggett*, 505 U.S. at 651 (stating one of the relevant inquires is whether delay before trial was uncommonly long).  The complexity of the case and nature of the charges are factors courts consider in determining whether delay in a particular cases violates a defendant's speedy trial right.  *See, e.g.*, *United States v. Saenz*, 623 F.3d 461, 464 (7th Cir. 2010) (finding no speedy trial violation because the case was complex); *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (finding no speedy trial violation because complex case involved multiple crimes, defendants, and events occurring in multiple states); *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding no speedy trial violation because the case involved a complex conspiracy); *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (finding no speedy trial violation because of the complex nature of the case involving multiple defendants); *United States v. Dreitzler*, 577 F.2d 539, 550 (9th Cir. 1978) (emphasizing complexity of the case in analysis of speedy trial issues).

In addition, there is no allegation here that the Speedy Trial Act has been violated.  As the Ninth Circuit has held "'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'"  *King*, 483 F.3d at 976 (quoting

---

[3]     The Sixth Amendment is offense specific.  *United States v. Marion*, 404 U.S. 307, 313 (1971); *see McNeil v. Wisconsin*, 501 U.S. 171 (1991); *Clabourne v. Lewis*, 64 F.3d 1373, 1378 (9th Cir. 1995). The start date for new charges in the Second and Third Superseding Indictments should run from the time they were first asserted (e.g., July 14, 2020, for Counts 9 and 10 and July 28, 2020, for Count 11).

1  *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)) (finding two-year delay in "extraordinarily

2  complex" fraud case "not excessive" and no speedy trial violation).

3    For these reasons, the first *Barker* factor weighs against a finding of a speedy trial violation.

4    **B.    Any Alleged Delay Is Not Fairly Attributable to the Government**

5    The time that has expired to date is attributable to (1) the complexity of the case and the

6  voluminous discovery, (2) extensive pretrial motion practice, and (3) COVID-19.  Indeed, since April

7  22, 2019, when the government first requested the Court set a trial date, there have been, at best, only 37

8  days when a motion was not pending (i.e., November 6 to December 2, 2019, and arguably March 21,

9  2020, to March 30, 2020).

10    A review of the record reveals that Defendants' agreement to the initial July 28, 2020 trial date

11  was a voluntary choice, not coercion.  *Compare McNeely*, 336 F.3d at 827 ("[D]elay attributable to the

12  defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial

13  argument.").  At the April 22, 2019 status conference, the government – not Defendants – pressed for a

14  trial date.  Defendants argued it was three months too soon.  At the next status conference, Defendants

15  proposed September 2020 (the Court advanced it to July 28, 2020). ███████████████████████

16  ███████████████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ████████████████████████████████████  Nothing the government did or

19  did not do affected any of this; indeed, ███████████████████████████████████

20  ████████████████.

21    The continuance of the trial date from July 28, 2020, to March 9, 2021, is the result of COVID-

22  19, not the government and not the Third Superseding Indictment.  At the April 15, 2020 status

23  conference, Holmes advised the Court that, *before learning the government intended to seek a second*

24  *superseding indictment*, she had proposed, "given the[e] risks and considerations [associated with

25  COVID-19]," a "plan to proceed in early 2021."  Dkt. 372 at 4:12-13.  She also stated:  "we will

26  continue to work diligently to get ready for trial based on the new charges (again, assuming they will be

27  returned by a grand jury), and we believe that with diligent efforts we will be prepared to proceed to trial

28  six months after the existing trial date (on or about February 8)."  On April 15, 2020, the Court

1 | continued the trial date to October 2020, but ultimately that proved unworkable because of the virus.
2 | Dkt. 484 ("On July 20, 2020, the Court conducted a status conference in this case at which Defendant
3 | Holmes requested that the trial currently set for October 27, 2020 be continued in light of the ongoing
4 | COVID-19 pandemic and the need for effective preparation for trial due to the complexities of the case."
5 | (citations omitted)).

6 | The government obtained the Second and Third Superseding Indictments as quickly as possible
7 | following the Court's rulings on the motion to dismiss and, to prevent any claim of surprise or lack of
8 | notice, advised the defense in April 2020 at the first available opportunity, even while the Grand Jury
9 | was suspended.  Nothing stopped the defense from pressing its Rule 12 motions prior to December
10 | 2020, nor should the defense be surprised the government evaluated the charging document through the
11 | lens of the ruling on the motions to dismiss and the defense motion practice.

12 | For these reasons, the second *Barker* factor weighs against a finding of a speedy trial violation.

13 | **C.     Defendants Have Not Asserted a Right to a Speedy Trial and Have Benefitted From Delay**

15 | The Defendants agreed or did not object to extensions of time under the Speedy Trial Act on no
16 | fewer than eight occasions.  To the extent Defendants retroactively complain about the period between
17 | June 2018 and December 2020, the third *Barker* factor weighs against them.  Having repeatedly agreed
18 | to exclude time from the Speedy Trial Act clock during that period, Defendants cannot turn around and
19 | claim they asserted a right to a speedy trial.  "Where a defendant stipulates to the need for trial
20 | preparation, he cannot maintain that these continuances give rise to a Speedy Trial Act violation."
21 | *United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994) (internal quotation omitted); *see also*
22 | *Denham v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992).

23 | Defendants suggest they were forced to agree to extensions because of discovery issues.  This
24 | does not withstand scrutiny.  As described above, a review of the record reveals that ▮▮▮▮▮▮▮▮
25 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In any
26 | event, a defendant who seeks to assert his or her speedy trial right should be expected to say so, not
27 | consent to extension after extension and lay in wait with after-the-fact objections.

1   Not only did Defendants fail to object to extensions of time, they benefited from them.  In 2019

2   and 2020, Balwani "[took] discovery in the [parallel] SEC case with an eye towards obtaining helpful

3   information to defend [the criminal] case."  Defendant Ramesh Balwani's Opposition to United States'

4   Motion to Intervene and Stay, *SEC v. Balwani*, CV 18-1603 EJD (May 3, 2019), Dkt. 77 at 12:22-25.

5   Balwani argued further to the Court that "because of the similarity of the two cases, that information

6   [i.e., SEC civil discovery] may be helpful in the criminal case."  *Id.*  These statements further suggest

7   Defendants' agreement to exclude time was not a reluctant concession but a tactical choice.

8   For these reasons, the third *Barker* factor weighs against a finding of a speedy trial violation.

9   **D.    Defendants Have Not Suffered Prejudice**

10   In *Gregory*, the Ninth Circuit stated: "no showing of prejudice is required when the delay is great

11   and attributable to the government.  In contrast . . . when the government has been negligent and the

12   delay does not far exceed the minimum time required to trigger the full *Barker* inquiry, we must

13   consider the amount of delay in relation to particularized prejudice.  322 F.3d at 1162-63 (internal

14   quotations and citation omitted).  "Actual prejudice is typically demonstrated in three ways: 'oppressive

15   pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's]

16   defense will be impaired.'"  *Id.* at 1663 (quoting *Doggett*, 505 U.S. at 654) (alteration in original).

17   "Absent bad faith, prejudice will not be presumed, but must be proven."  *Ly*, 2001 WL 1456751, at *9

18   (citing *Doggett,* 505 U.S. at 656).

19   There is no prejudice for several reasons.  Defendants have been out of custody throughout the

20   proceedings; they cannot complain about oppressive pretrial incarceration.  They hint at anxiety and

21   concern of the accused.  But they fail to show how the additional allegations relating to Walgreens,

22   Safeway, and Theranos board members (to the extent they can even be deemed "new") add to any

23   anxiety and concern already stemming from the conspiracy and other charges.  In addition, the Ninth

24   Circuit has recognized: "Conclusory allegations of general anxiety and depression are present in almost

25   every criminal prosecution. . . . [N]othing in the record . . . distinguishes the emotional strain

26   experienced by [this defendant] from other criminal defendants.  Further, during this period, [defendant]

27   was at liberty on his personal recognizance.  We therefore conclude that such allegations, as are present

28   here, constitute a showing of minimal prejudice of a type normally attending criminal prosecution.  This

1  showing, without more, did not deprive [defendant] of his right to a speedy trial." *United States v.*

2  *Simmons*, 536 F.2d 827, 831-32 (9th Cir. 1976).

3      Defendants argue their defense has been impaired, but the evidence they cite only underscores

4  the weakness of their claim.  They note that one Theranos board member, Donald Lucas, passed away

5  on December 31, 2019.  But they omit the fact that Mr. Lucas, sadly, developed Alzheimer's no later

6  than 2013 – during the fraud scheme, years before negative *Wall Street Journal* coverage, and years

7  before the onset of the government's investigation.  Leach Decl. Ex. G.  Mr. Lucas's unfortunate illness

8  explains why Defendants elected not to depose him in earlier litigation.[4]  Mr. Lucas's unavailability is

9  not the result of delay.  They also refer to another individual, Peter Thomas, who resigned from the

10  Board in 2010, yet point to no documents or statements that suggest he would have had anything

11  uniquely exculpatory to add.  The fact that he was not deposed in prior litigation corroborates that the

12  defense has not been meaningfully prejudiced by his unfortunate passing.  *See also United States v.*

13  *Lam*, 251 F.3d 852, 860 (9th Cir. 2001) (speculation about defects in witness testimony or lost evidence

14  do not demonstrate actual prejudice); *United States v. Belcher*, No. 16-CR-00211-LHK-2, 2017 WL

15  3721454, at *2 (N.D. Cal. Aug. 29, 2017) ("Defendant's claim that he is prejudiced by fading witness

16  memories and lost evidence also fails because Defendant has not identified 'any non speculative proof

17  as to how his defense was prejudiced by the delay.'" (quoting *United States v. Alexander*, 817 F.3d

18  1178, 1183 (9th Cir. 2016))).

19      Defendants cite the need to redeploy resources.  But this Court has observed: "The alleged strain

20  on Defendant's business and income and his related anxiety are unfortunate effects of this case, but such

21  effects are likely common to any defendant facing similar charges."  *Belcher*, 2017 WL 3721454, at *2

22  (citing *United States v. Neusom*, No. CR 03-0194, 2008 WL 4217861, at *6 (C.D. Cal. Sept. 12, 2008)

23  & *Ly*, 2001 WL 1456751, at *9) (denying motion to dismiss superseding indictment returned 14 months

24  after initial indictment).  For years, Defendants and Theranos have been embroiled in litigation with and

25  relating to Walgreens.  The parallel litigation has involved depositions of numerous Theranos board

26

27             [4]    Theranos, Holmes, or Balwani have been sued by Walgreens, at least two investors (Partner

28  Fund Management and Robert Colman), the SEC, and a class of plaintiffs in Arizona (where Walgreens is also a party and subject to discovery by Defendants).

members and at least one Safeway representative.  It therefore strains credulity to think that they have

not performed work to understand what happened in those relationships.  Defendants have had discovery

relating to Walgreens, Safeway, and Theranos board members since the government's initial production

and could not have failed to appreciate the government's intent to use such evidence.  Finally, it should

not be surprising that after a ruling on Defendants' motions to dismiss – which they waited until

December 2019 to file – the government might re-evaluate the charging language.

Defendants cite enhanced sentencing exposure.  This is not prejudice resulting from delay.  In

any event, they make no effort to show that the new patient counts will alter the Sentencing Guidelines

calculation or meaningfully add to the likely sentence, particularly given the existence of a conspiracy

count.

Finally, it bears emphasis that none of the alleged delay is attributable to the Third Superseding

Indictment.  Defendant Holmes conceded she could be prepared for a trial on the charges in the Third

Superseding Indictment by February 2021 – *earlier* than the current trial date.  The changes in the Third

Superseding Indictment are modest.  Each iteration of the indictment consistently alleged a scheme to

defraud investors, which, whether defined or not, is a term that easily captures Walgreens, Safeway, and

Theranos board members.  The "pursuit" of a relationship with Walgreens has been a part of the

indictment from day one.  The government produced evidence it had gathered from Walgreens,

Safeway, and Theranos board members in its initial productions in August 2018 and October 2018.  For

example, witness statements from at least two Walgreens witnesses (Jay Rosan and Nimesh Javeri);

Safeway's CEO, and three Theranos board members were included in the government's initial

productions.  Leach Decl. ¶ 9.  As the government advised the Court, the superseding indictments do not

involve substantial new discovery.  Leach Decl. Ex. E at 9.[5]  In addition, even under the Defendants'

limited conception of the scheme to defraud, evidence relating to Walgreens, Safeway, and Theranos

board members – who received substantially similar misrepresentations that others received – is

inextricably intertwined with the scheme and admissible to show motive, opportunity, intent,

---

[5]       Defendants complain about the format of one of the FDA productions, but they make no
argument any of these documents have anything to do with Walgreens, Safeway, or Theranos board
members.

1  preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In sum, the changes

2  reflected in the Third Superseding Indictment do not radically change the case and do not give rise to

3  delay that would not have otherwise occurred because of COVID-19 or the defense's general need for

4  preparation.

5         In sum, Defendants have not identified any real prejudice.  This factor weighs against a finding

6  of a speedy trial violation.

7         E.         **Defendants' Reliance on _United States v. Cutting_ Is Misplaced**

8         Defendants place great weight on Judge Illston's unpublished decision in _United States v._

9  _Cutting_, No. 14-CR-00139-SI-1, 2017 WL 66837 (N.D. Cal. Jan. 6, 2017).  The Court should decline to

10  do so.  In _Cutting_, thirty-one months after the initial indictment and five months before trial, the

11  government brought a superseding indictment alleging two wholly new schemes to defraud and alleging,

12  for the first time, that one of the new fraud schemes caused the failure of the entire bank and millions of

13  losses to the FDIC.  Judge Illston initially found a Speedy Trial Clause violation but then reconsidered,

14  and clarified there was only a Rule 48 violation.  Subsequently, the government brought a new

15  indictment with the dismissed charges, as Judge Illston indicated the government was free to do.  Faced

16  with the prospect of two trials, the defendants ultimately agreed to a consolidated trial on both

17  indictments and were convicted.  The fact-intensive case remains on appeal, and in more than three

18  years, has been cited only once by a single district court.  Here, by comparison, the _Barker_ factors do not

19  weigh in favor of a Speedy Trial Clause or Rule 48 violation.  In addition, the changes to the indictment

20  are significantly more modest.  They do not change the scheme to defraud.  Finally, unlike in _Cutting_,

21  the government gave substantial notice of its intentions by providing them a draft information in April

22  2020 and alerting them of its intention to present evidence relating to Walgreens, Safeway, and

23  Theranos board members in March 2020.

24

25

26  ///

27  ///

28  ///

GOVT. OPP'N TO MOT. TO DISMISS FOR PRE-
INDICTMNET DELAY, CASE NO. 18-258 EJD         17

1

**CONCLUSION**

2

For the foregoing reasons, the Court should deny the motion.

3

DATED:  September 18, 2020

Respectfully submitted,

4

ADAM A. REEVES

5

Attorney for the United States,
Acting Under Authority Conferred

6

By 28 U.S.C. § 515

7

*/s Robert S. Leach*

8

ROBERT S. LEACH

9

JEFF SCHENK
JOHN C. BOSTIC

10

VANESSA BAEHR-JONES
Assistant United States Attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  ADAM A. REEVES (NYBN 2363877)
   Attorney for the United States,
2  Acting Under Authority Conferred By 28 U.S.C. § 515

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4
   JEFF SCHENK (CABN 234355)
5  JOHN C. BOSTIC (CABN 264367)
   ROBERT S. LEACH (CABN 196191)
6  VANESSA BAEHR-JONES (CABN 281715)
   Assistant United States Attorneys
7
        150 Almaden Boulevard, Suite 900
8       San Jose, California 95113
        Telephone: (408) 535-5061
9       Fax: (408) 535-5066
        Robert.Leach@usdoj.gov
10
   Attorneys for United States of America

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

SAN JOSE DIVISION

14

| | |
|---|---|
| 15  UNITED STATES OF AMERICA, | ) Case No. 18-CR-00258 EJD |
| 16       Plaintiff, | ) |
|  | ) SEPTEMBER 18, 2020 DECLARATION OF |
| 17    v. | ) AUSA ROBERT S. LEACH IN SUPPORT OF |
|  | ) UNITED STATES' OPPOSITION TO |
| 18  ELIZABETH HOLMES and RAMESH | ) DEFENDANTS' MOTION TO DISMISS |
|  | ) SECOND AND THIRD SUPERSEDING |
| 19  "SUNNY" BALWANI, | ) INDICTMENTS BASED ON PRE- |
|  | ) INDICTMENT DELAY |
| 20       Defendants. | ) |
|  | ) Date:   October 6, 2020 |
| 21  | ) Time:  10:00 a.m. |
|  | ) Court: Hon. Edward J. Davila |
| 22  | ) |
|  | ) **REDACTED VERSION** |
| 23  _____ | ) |

24        I, Robert S. Leach, declare as follows:

25        1.        I am an Assistant United States Attorney with the United States Attorney's Office for the

26  Northern District of California ("USAO").  I am one of the prosecutors assigned to this matter and have

27  been since 2016.  I make this declaration in support of the United States' Opposition to Defendants'

28  Motion to Dismiss Second and Third Superseding Indictments Based on Pre-Indictment Delay.

2.      Attached as Exhibit A is a true and correct copy of the transcript of a hearing in this matter on April 22, 2019.

3.      Attached as Exhibit B is a true and correct copy of portions of the transcript of a hearing in this matter on June 28, 2019.

4.      Attached as Exhibit C is a true and correct copy of ███████████████████████ ██████████████.

5.      Attached as Exhibit D is a true and correct copy of ███████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████.

6.      Attached as Exhibit E is a true and correct copy of the transcript of a hearing in this matter on April 15, 2020.

7.      Attached as Exhibit F is a true and correct copy of portions of the transcript of a hearing in this matter on July 20, 2020.

8.      Attached as Exhibit G is a true and correct copy of a document Bates numbered SEC-EPROD-000356416 produced in discovery in this case.  The document appears to be an email from Don Lucas' son on or about September 22, 2013 stating: "my dad was Chairman of [Theranos] until his Alzheimer's."  Personal identifying information is redacted.

9.      The government produced evidence it had gathered from Walgreens, Safeway, and Theranos board members in its initial productions in August 2018 and October 2018.  To give just a few examples, witness statements from at least two Walgreens witnesses (Jay Rosan and Nimesh Javeri); Safeway's CEO, and three Theranos board members and documents Bates numbered WAG-TH-DOJ and SWYDOJ were included in the government's initial productions.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of September 2020.

/s Robert S. Leach
_____
ROBERT S. LEACH
Assistant United States Attorney

# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4
     UNITED STATES OF AMERICA,      )   CR-18-00258-EJD &
 5                                   )   CV-18-01603-EJD
                        PLAINTIFF,   )
 6                                   )
                  VS.                )   SAN JOSE, CALIFORNIA
 7                                   )
     ELIZABETH A. HOLMES AND RAMESH  )   APRIL 22, 2019
 8   SUNNY BALWANI,                  )
                                     )   PAGES 1 - 27
 9                      DEFENDANTS.   )
     _____)
10                                   )
     SECURITIES AND EXCHANGE         )
11   COMMISSION,                     )
                                     )
12                      PLAINTIFF,   )
                                     )
13                VS.                )
                                     )
14   RAMESH SUNNY BALWANI,           )
                                     )
15                      DEFENDANTS.  )
     _____)
16
                      TRANSCRIPT OF PROCEEDINGS
17            BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
18
     A P P E A R A N C E S:
19
     FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
20                         BY:  JOHN BOSTIC
                                ROBERT LEACH
21                              JEFFREY SCHENK
                           150 ALMADEN BOULEVARD, SUITE 900
22                         SAN JOSE, CALIFORNIA 95113

23   OFFICIAL COURT REPORTER:
                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
24                         CERTIFICATE NUMBER 8074

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
 4                                 LANCE WADE
                              725 TWELFTH STREET, N.W.
 5                            WASHINGTON, D.C. 20005

 6                            LAW OFFICE OF JOHN D. CLINE
                              BY:  JOHN D. CLINE
 7                            ONE EMBARCADERO CENTER, SUITE 500
                              SAN FRANCISCO, CALIFORNIA 94111
 8
      FOR DEFENDANT BALWANI:  DAVIS, WRIGHT & TREMAINE LLP
 9                            BY:  JEFFREY COOPERSMITH
                                   STEPHEN CAZARES
10                                 KELLY M. GORTON
                              505 MONTGOMERY STREET, SUITE 800
11                            SAN FRANCISCO, CALIFORNIA 94111

12    FOR THE S.E.C.:         UNITED STATES SECURITIES AND EXCHANGE
                              COMMISSION
13                            BY:  SUSAN F. LAMARCA
                                   RAHUL KOLHATKAR
14                            44 MONTGOMERY STREET, SUITE 2600
                              SAN FRANCISCO, CALIFORNIA 94104
15

16

17

18

19

20

21

22

23

24

25
```

3

```
1      SAN JOSE, CALIFORNIA                    APRIL 22, 2019

2                        P R O C E E D I N G S

3            (COURT CONVENED AT 1:36 P.M.)

4            THE COURT:  WELL, LET'S NOW TURN TO 18-258, UNITED

5      STATES VERSUS ELIZABETH HOLMES, RAMESH SUNNY BALWANI, AND WE'LL

6      CALL COMPANION CASE 18-1603, S.E.C. VERSUS BALWANI.

7            IF THOSE PARTIES COULD COME FORWARD, PLEASE.

8            MR. BOSTIC:  GOOD AFTERNOON, YOUR HONOR.

9      JOHN BOSTIC, JEFF SCHENK, AND BOB LEACH FOR THE UNITED STATES.

10           THE COURT:  GOOD AFTERNOON.  LET ME CAPTURE YOUR

11     COLLEAGUES.

12           MS. LAMARCA:  SUSAN LAMARCA AND RAHUL KOLHATKAR FOR

13     THE S.E.C.

14           THE COURT:  THANK YOU.

15           MR. DOWNEY:  GOOD AFTERNOON, YOUR HONOR.

16     KEVIN DOWNEY AND LANCE WADE FOR ELIZABETH HOLMES WHO'S PRESENT

17     IN COURT AS WELL.

18           THE COURT:  THANK YOU.  GOOD AFTERNOON.

19           MR. COOPERSMITH:  GOOD AFTERNOON, YOUR HONOR.

20     JEFF COOPERSMITH FOR RAMESH BALWANI WHO IS TO MY RIGHT AND ALSO

21     KELLY GORTON AND STEVE CAZARES FROM MY OFFICE.

22           THE COURT:  GOOD AFTERNOON.  THIS IS ON FOR FURTHER

23     STATUS.  I HAVE READ AND REVIEWED YOUR DOCUMENT 66, AND WE'RE

24     CALLING THE CRIMINAL CASE FIRST, AND THEN WE'LL TURN TO THE

25     S.E.C. CASE IN JUST A MOMENT.
```

| | |
|---|---|
| 01:37PM | 1 |
| 01:37PM | 2 |
| 01:37PM | 3 |
| 01:37PM | 4 |
| 01:37PM | 5 |
| 01:37PM | 6 |
| 01:37PM | 7 |
| 01:38PM | 8 |
| 01:38PM | 9 |
| 01:38PM | 10 |
| 01:38PM | 11 |
| 01:38PM | 12 |
| 01:38PM | 13 |
| 01:38PM | 14 |
| 01:38PM | 15 |
| 01:38PM | 16 |
| 01:38PM | 17 |
| 01:38PM | 18 |
| 01:38PM | 19 |
| 01:38PM | 20 |
| 01:38PM | 21 |
| 01:38PM | 22 |
| 01:38PM | 23 |
| 01:38PM | 24 |
| 01:38PM | 25 |

I HAVE READ THE JOINT MEMORANDUM.  THANK YOU FOR THAT.

I SUPPOSE I SHOULD GET UPDATED FROM COUNSEL.  IT LOOKS LIKE THERE'S PROBABLY TWO MOTIONS THAT WILL BE PENDING IF NOT PENDING CURRENTLY, AND I'D LIKE TO DISCUSS THAT.  I HAD SOME THOUGHTS ALSO ABOUT TRIAL DATES, AND WE SHOULD PROBABLY BE THINKING ABOUT AND LOOKING AT TRIAL DATES ONGOING.

SO, COUNSEL, WHO WOULD LIKE TO GO FIRST?  MR. BOSTIC.

MR. BOSTIC:  SO, YOUR HONOR, ON THE TWO PENDING MOTIONS MY COLLEAGUE, MR. LEACH, WILL ADDRESS THE MOTION TO STAY WHEN WE DISCUSS THAT.

ON DEFENDANTS' MOTION TO COMPEL DISCOVERY PRODUCTION FROM THE GOVERNMENT, AS THE COURT KNOWS FROM THE JOINT STATUS SUBMISSION, THE GOVERNMENT HAS PRODUCED APPROXIMATELY 20 MILLION PAGES ALREADY.  THE ADDITIONAL CATEGORIES OF DOCUMENTS ADDRESSED IN THE PENDING MOTION ARE MOSTLY HELD IN THE HANDS OF GOVERNMENT AGENCIES LIKE THE FDA AND THE CMS.

IN ORDER TO RESPOND TO THAT MOTION, THE GOVERNMENT BELIEVES THAT IT NEEDS TO COLLECT SOME ADDITIONAL INFORMATION FROM THOSE AGENCIES.

I INFORMED COUNSEL FOR MS. HOLMES JUST BEFORE THIS HEARING THAT THE LAWYERS THAT I'VE BEEN DEALING WITH AT CMS AND FDA ARE OUT OF TOWN OR RECENTLY OUT OF TOWN AND I BELIEVE OUT OF THE COUNTRY.

ONE REPRESENTING CMS RETURNS FROM BEING ON LEAVE I BELIEVE ON MAY 1ST OR 2ND.  I THINK IN ORDER TO PRESENT THE COURT WITH

01:39PM 1    THE FACTS THAT IT NEEDS TO RULE ON THAT MOTION, I DO NEED TO

01:39PM 2    CONSULT WITH THOSE ATTORNEYS.  THE GOVERNMENT COUNSEL IN THIS

01:39PM 3    CASE DOES NOT REPRESENT THOSE AGENCIES AND WILL NOT REPRESENT

01:39PM 4    THOSE AGENCIES FOR PURPOSES OF THIS CASE.  SO IN ORDER TO GET

01:39PM 5    THAT INFORMATION FOR THE COURT, I WOULD LIKE A CHANCE TO

01:39PM 6    CONSULT WITH THOSE LAWYERS.  SO I WOULD JUST ASK THAT IN

01:39PM 7    SETTING A BRIEFING AND HEARING SCHEDULE FOR THAT MOTION WE

01:39PM 8    ACCOUNT FOR THAT.

01:39PM 9            THE COURT:  OKAY.  HAVE YOU MET AND CONFERRED ABOUT

01:39PM 10   THAT?

01:39PM 11           MR. DOWNEY:  YOUR HONOR, WE DISCUSSED IT.  OUR

01:39PM 12   REFLECTION ON MR. BOSTIC'S REQUEST WAS OF COURSE WE WANT TO

01:39PM 13   ACCOMMODATE HIM UNDERTAKING A REASONABLE PROCESS SO THE MOTION

01:39PM 14   CAN BE BRIEFED.

01:39PM 15      WE'RE CONCERNED ABOUT THE PACE OF THE PRODUCTION OF

01:39PM 16   DISCOVERY.  THERE'S NO --

01:39PM 17           THE COURT:  IT'S ONLY MILLIONS OF PAGES.

01:39PM 18           MR. DOWNEY:  YEAH, MILLIONS OF PAGES HAVE ALREADY

01:39PM 19   BEEN PRODUCED.  I GATHER MILLIONS MORE ARE TO BE PRODUCED.

01:39PM 20      SO WE DON'T OPPOSE THAT.  WE JUST -- IN THE CONTEXT OF A

01:39PM 21   BROADER DISCUSSION ABOUT WHEN IT'S REALISTIC TO SET A TRIAL

01:39PM 22   DATE.

01:39PM 23           THE COURT:  SURE.

01:39PM 24           MR. DOWNEY:  SO ASSUMING THAT WE HAVE, YOU KNOW, AN

01:40PM 25   OPPORTUNITY, IF WE PREVAIL ON THE MOTION, AN ADEQUATE

01:40PM 1    OPPORTUNITY TO REVIEW WHATEVER IS PRODUCED, THAT'S FINE WITH

01:40PM 2    US.  WE'RE JUST CONCERNED BECAUSE THE AMOUNT OF TIME, LEAD TIME

01:40PM 3    THAT THE GOVERNMENT PROPOSED IN THE JOINT STATUS MEMORANDUM

01:40PM 4    SOUNDS LIKE A FAIR AMOUNT OF TIME, BUT GIVEN THE VOLUME OF

01:40PM 5    MATERIAL IT'S REALLY NOT.

01:40PM 6         SO OUR CONCERN ABOUT THAT IS NOT ACCOMMODATING MR. BOSTIC,

01:40PM 7    WHICH WE'RE HAPPY TO DO, IT'S JUST ABOUT THE BROADER SET OF

01:40PM 8    ISSUES.

01:40PM 9              THE COURT:  SURE.  WELL, THANK YOU.

01:40PM 10        MY SENSE, AND IT'S PROBABLY YOUR EXPERIENCE ALSO, WITH

01:40PM 11   THESE TYPES OF MOTIONS TYPICALLY THERE'S ADDITIONAL MEET AND

01:40PM 12   CONFERS.  SOMETIMES THERE'S RESOLUTION REGARDING WHAT CAN BE

01:40PM 13   OBTAINED AND WHAT IS OBTAINED.  SOMETIMES THE INFORMATION, WHEN

01:40PM 14   THE GOVERNMENT IS IN THEIR SITUATION THAT THEY'RE IN NOW, WHEN

01:40PM 15   THEY MEET WITH THE OTHER INDIVIDUALS THEY'RE ABLE TO SECURE

01:40PM 16   ADDITIONAL INFORMATION THAT MIGHT NOT CURE THE ENTIRETY OF THE

01:40PM 17   DEFECTS AS YOU SEE IT NOW BUT AT LEAST GO A LONG WAY TOWARDS

01:41PM 18   THAT.

01:41PM 19        MR. BOSTIC AND MR. SCHENK, IF WHAT I'M HEARING IS THAT YOU

01:41PM 20   NEED TO DISCUSS OR AT LEAST TALK WITH OTHER AGENCIES REGARDING

01:41PM 21   OTHER DISCOVERY MATTERS THAT MIGHT BE USEFUL TO THAT

01:41PM 22   CONVERSATION, THAT'S WHAT I'M HEARING, THEN I THINK THAT MAYBE

01:41PM 23   WE CAN FIND SOME ACCORD WHERE I DON'T KNOW IF WE NEED AN

01:41PM 24   ADDITIONAL STATUS TO DETERMINE A DATE OR IF I GIVE YOU DATES

01:41PM 25   NOW.  I HATE TO DO THAT NOW AND BLIND THEM NOT KNOWING WHAT IS

01:41PM 1    IN STORE FOR YOUR CONVERSATIONS.

01:41PM 2            MR. BOSTIC:  YOUR HONOR, JUST TO BE CLEAR, I THINK

01:41PM 3    THAT IS PART OF THE OBJECTIVE OF THOSE ADDITIONAL CONVERSATIONS

01:41PM 4    WITH AGENCY COUNSEL TO SEE WHETHER THERE'S SOME MIDDLE GROUND,

01:41PM 5    SOME ABILITY TO COMPROMISE.

01:41PM 6        BUT IN ADDITION, I BELIEVE THAT THE DEFENSE MOTION WILL

01:41PM 7    TURN AT LEAST PARTLY OR IN LARGE PART ON WHETHER THE

01:41PM 8    GOVERNMENT, WHETHER THE PROSECUTION IS DEEMED TO HAVE ACCESS TO

01:41PM 9    THE DOCUMENTS IN THE POSSESSION OF THESE AGENCIES.

01:41PM 10       SO IT'S REALLY TO EXPLAIN THOSE RELEVANT FACTS TO THE

01:42PM 11   COURT TO DETERMINE TO WHAT EXTENT DO WE HAVE ACCESS TO THOSE

01:42PM 12   DOCUMENTS.

01:42PM 13           THE COURT:  SURE.  YOU CAN'T HAVE THAT CONVERSATION

01:42PM 14   UNTIL THE FIRST PART OF MAY IT SOUNDS LIKE.

01:42PM 15           MR. BOSTIC:  CORRECT, YOUR HONOR, AT LEAST WE

01:42PM 16   CANNOT -- AT LEAST AS TO CMS WE CANNOT FINISH THAT CONVERSATION

01:42PM 17   UNTIL THEN.

01:42PM 18           THE COURT:  ALL RIGHT.  DO YOU HAVE SUGGESTIONS

01:42PM 19   ABOUT WHAT WE SHOULD DO?

01:42PM 20           MR. DOWNEY:  YOUR HONOR, I THINK MY SUGGESTION WOULD

01:42PM 21   BE THAT WE FILE AN UPDATE WITH THE COURT PERHAPS AT THE END OF

01:42PM 22   THE WEEK FOLLOWING THE WEEK WHEN MR. BOSTIC ANTICIPATES THAT

01:42PM 23   HE'LL HAVE THOSE CONVERSATIONS.

01:42PM 24       MY CONCERN IS ONLY THIS, I ANTICIPATE THAT THE AGENCIES

01:42PM 25   PROBABLY WILL PRODUCE SOME ADDITIONAL AMOUNT OF MATERIAL.  IT'S

| 01:42PM | 1 | CLEAR TO US FROM OUR REVIEW OF WHAT HAS BEEN PRODUCED THUS FAR |
| 01:42PM | 2 | THAT THERE'S A GOOD BIT OF ADDITIONAL MATERIAL THAT IS PROBABLY |
| 01:42PM | 3 | MATERIAL TO OUR PREPARATION AND IN MANY INSTANCES EXCULPATORY. |
| 01:42PM | 4 | IT MAY BE PREFERABLE ULTIMATELY FOR THE AGENCIES TO |
| 01:42PM | 5 | CONDUCT THEIR THOUGHT PROCESS ON THEIR REVIEW RECOGNIZING THAT |
| 01:42PM | 6 | THEY'RE GOING TO BE OBLIGATED TO PRODUCE DOCUMENTS WHICH MEET |
| 01:43PM | 7 | THOSE STANDARDS. |
| 01:43PM | 8 | SO I DON'T WANT TO FORESHADOW WHAT THEIR CONSULTATION |
| 01:43PM | 9 | PROCESS YIELDS, BUT I THINK WE SHOULD REPORT BACK AT THE END OF |
| 01:43PM | 10 | THE WEEK AFTER -- THE WEEK THAT MR. BOSTIC CONSULTS WITH HIS |
| 01:43PM | 11 | COLLEAGUES AND OTHER AGENCIES, BUT WE MAY AT THAT TIME FIND |
| 01:43PM | 12 | WE'RE NOT MAKING SUFFICIENT PROGRESS, THAT WE WOULD LIKE THE |
| 01:43PM | 13 | MOTION TO BE HEARD. |
| 01:43PM | 14 | BUT I DON'T WANT TO FOREJUDGE THAT, YOUR HONOR.  WE CAN |
| 01:43PM | 15 | SEE. |
| 01:43PM | 16 | THE COURT:  WELL, THANK YOU.  THE ISSUE BEFORE THE |
| 01:43PM | 17 | COURT NOW IS TO DETERMINE A BRIEFING SCHEDULE -- |
| 01:43PM | 18 | MR. DOWNEY:  YES. |
| 01:43PM | 19 | THE COURT:  -- AS TO WHEN THE GOVERNMENT SHOULD FILE |
| 01:43PM | 20 | THEIR REPLY AND OPPOSITION. |
| 01:43PM | 21 | MR. DOWNEY:  UNDERSTOOD.  AND I THINK WE CAN DEFER |
| 01:43PM | 22 | THE OPPOSITION AT LEAST UNTIL WE FILE THAT MEMORANDUM AND UNTIL |
| 01:43PM | 23 | WE FILE THAT JOINT UPDATE. |
| 01:43PM | 24 | THE COURT:  SURE. |
| 01:43PM | 25 | MR. DOWNEY:  AND IF, IN FACT, AT THAT TIME IT'S |

01:43PM  1    NECESSARY FOR THE GOVERNMENT TO CONTINUE AND GO AHEAD AND BRIEF

01:43PM  2    IT, WE'LL DO IT THEN.

01:43PM  3            MR. BOSTIC:  YOUR HONOR, NO OBJECTION TO THAT

01:43PM  4    APPROACH FROM THE GOVERNMENT.

01:43PM  5            THE COURT:  OKAY.  LET ME ASK, IS THERE ANY

01:43PM  6    CONNECTION BETWEEN -- LET'S TURN TO THE S.E.C. CASE FOR JUST A

01:44PM  7    MOMENT.

01:44PM  8        I UNDERSTAND THE GOVERNMENT HAS FILED A MOTION TO

01:44PM  9    INTERVENE IN THE CRIMINAL CASE.  I'M JUST CURIOUS WHETHER

01:44PM 10    THERE'S SOME CROSS-POLLINIZATION BETWEEN THESE TWO THINGS.

01:44PM 11            MR. LEACH:  YES, YOUR HONOR.  MR. LEACH FOR THE

01:44PM 12    GOVERNMENT.  I DON'T THINK THERE IS.  THE DISCOVERY THAT

01:44PM 13    MS. HOLMES IS SEEKING ARE DOCUMENTS IN THE POSSESSION OF THE

01:44PM 14    FDA AND CMS WHICH THE GOVERNMENT CONTENDS ARE NOT PART OF THE

01:44PM 15    PROSECUTION TEAM AND NOT SUBJECT TO OUR RULE 16 BRADY AND

01:44PM 16    GIGLIO OBLIGATIONS.

01:44PM 17        THE MOTION TO INTERVENE AND STAY IS REALLY DIRECTED AT

01:44PM 18    SOME DISCOVERY THAT MR. BALWANI IS ATTEMPTING TO TAKE IN THE

01:44PM 19    CIVIL CASE RELATING TO DOCTORS AND PATIENTS WHO IN OUR JUDGMENT

01:44PM 20    HAVE NOTHING TO DO WITH THE S.E.C. CASE BUT EVERYTHING TO DO

01:44PM 21    WITH THE CRIMINAL CASE.

01:44PM 22        SO WE THINK SOME OF THE RECENT DISCOVERY HAS CROSSED THE

01:44PM 23    LINE IN TERMS OF RELEVANCE OF THE S.E.C. CASE.  WE ALSO TOOK A

01:44PM 24    LOOK AT THE KEATING FACTORS IN THE MOST RECENT NINTH CIRCUIT

01:45PM 25    DECISION ON STAYS, AND WE REALLY THINK THAT THE BREADTH OF

01:45PM 1   CIVIL DISCOVERY IN THE S.E.C. CASE IS DISTRACTING FROM THE

01:45PM 2   PARTIES' ABILITY TO MOVE THE CASE FORWARD AND GET A TRIAL DATE

01:45PM 3   IN THE CRIMINAL CASE.

01:45PM 4        SO I THINK THOSE ARE -- WE DO NOT TAKE A POSITION ON ANY

01:45PM 5   DISCOVERY MR. BALWANI HAS TAKEN OF THE FDA OR CMS IN THE S.E.C.

01:45PM 6   CASE.  IT'S REALLY FOCUSSED ON DOCTORS AND PATIENTS AND THE

01:45PM 7   OVERALL BREADTH OF IT.

01:45PM 8            MR. COPPERSMITH:  THANK YOU, YOUR HONOR.  WE'RE

01:45PM 9   GOING TO RESPOND TO THE GOVERNMENT'S MOTION TO INTERVENE AND

01:45PM 10  STAY.  OUR OPPOSITION IS DUE TWO WEEKS FROM THIS PAST FRIDAY SO

01:45PM 11  WE INTEND TO PUT IN A FULL OPPOSITION.  WE DON'T AGREE WITH THE

01:45PM 12  GOVERNMENT THERE SHOULD BE A MOTION, BUT LET ME SAY A FEW

01:45PM 13  THINGS IN RESPONSE TO MR. LEACH.

01:45PM 14            THE COURT:  SURE.

01:45PM 15            MR. COPPERSMITH:  THAT IS, IT'S BEEN ABOUT A YEAR

01:45PM 16  SINCE THE DISCOVERY COMMENCED IN THE S.E.C. CASE.

01:45PM 17        JUST LIKE IN THE CRIMINAL CASE, THERE ARE MILLIONS OF

01:45PM 18  PAGES OF DOCUMENTS.  AS WE SEE THE S.E.C. CASE, AND WE PUT THIS

01:46PM 19  IN THE STATUS REPORT FOR YOUR HONOR, WE BELIEVE THERE ARE

01:46PM 20  ALLEGATIONS ABOUT THE CAPABILITIES OF THERANOS'S LABORATORIES

01:46PM 21  AND ITS ANALYZER AND IT NOT BEING ACCURATE.  WE'VE ACTUALLY

01:46PM 22  TRIED TO PROPOSE SOME THINGS TO THE S.E.C.  WE HAVEN'T HEARD

01:46PM 23  BACK.  WE THINK IT PUTS THESE MATTERS AT ISSUE.

01:46PM 24        THE MATTER WITH RESPECT TO THE HEALTH CARE PROVIDERS,

01:46PM 25  JUDGE COUSINS IS GOING TO HEAR THAT MOTION ON RELEVANCE ON

01:46PM 1   WEDNESDAY AND JUDGE COUSINS IS GOING TO BE WELL CAPABLE TO

01:46PM 2   DECIDING WHAT IS RELEVANT IN THE CASE AND WHAT IS NOT, AND WE

01:46PM 3   THINK IT'S RELEVANT.

01:46PM 4       BUT IN ADDITION, THE FACT THAT THE GOVERNMENT WAITED A

01:46PM 5   YEAR TO TRY TO STAY AFTER MR. BALWANI PROVIDED DISCOVERY TO THE

01:46PM 6   S.E.C., HE PROVIDED SWORN INTERROGATORY ANSWERS, HE PROVIDED

01:46PM 7   OTHER DISCOVERY, SAT FOR THREE DAYS FOR TESTIMONY WITH THE

01:46PM 8   S.E.C. BEFORE THE COMPLAINT WAS FILED.

01:46PM 9       TO COME IN AND TRY TO STAY AT THIS POINT I THINK IS

01:46PM 10  TACTICAL, BUT WE'LL EXPLAIN ALL OF OUR --

01:46PM 11          THE COURT:  YOU'RE ARGUING THE MOTION.

01:46PM 12          MR. COOPERSMITH:  WELL, I MEAN, I'M RESPONDING TO

01:46PM 13  MR. LEACH.

01:47PM 14          THE COURT:  JUNE 10TH, I THINK.

01:47PM 15          MR. COPPERSMITH:  YES, YOUR HONOR.  AND I DON'T

01:47PM 16  THINK THAT THAT MOTION SHOULD REALLY AFFECT ANYTHING THAT WE'RE

01:47PM 17  DOING TODAY NOTWITHSTANDING MR. LEACH'S COMMENTS.

01:47PM 18      SO ONE OTHER THING THAT MAY BE IS PERTINENT AND THAT IS,

01:47PM 19  THERE IS, AND I THINK WE MENTIONED THIS IN THE STATUS REPORT,

01:47PM 20  TOO, THERE IS AN ISSUE WITH CMS AND FDA ON THE CIVIL SIDE JUST

01:47PM 21  LIKE IN THE CRIMINAL CASE AND THERE WERE SUBPOENAS ISSUED TO

01:47PM 22  THOSE AGENCIES OUT OF THE CIVIL CASE.  THE S.E.C. DIDN'T OBJECT

01:47PM 23  TO ANYTHING ABOUT RELEVANCE ON THOSE UNTIL VERY RECENTLY.

01:47PM 24  AFTER SEVEN MONTHS THOSE SUBPOENAS WERE PENDING.

01:47PM 25      WE'VE BEEN CONFERRING, MEETING AND CONFERRING WITH CMS AND

01:47PM 1    FDA AND DOJ COUNSEL WHO REPRESENTS THOSE AGENCIES FOR MANY,

01:47PM 2    MANY MONTHS.  WE'RE TRYING TO FRAME THOSE ISSUES FOR THE COURT

01:47PM 3    IF WE CAN'T RESOLVE THEM.  OBVIOUSLY, WE HOPE WE CAN RESOLVE

01:47PM 4    THEM.  BUT THAT'S SOMETHING THAT WE'VE BEEN STRUGGLING WITH

01:47PM 5    FOR -- YOU KNOW, SINCE SEPTEMBER SINCE WE ISSUED THOSE

01:47PM 6    SUBPOENAS IS TO ACTUALLY GET THOSE AGENCIES TO PROVIDE

01:47PM 7    DOCUMENTS.

01:48PM 8         THAT IS WHAT IS GOING ON.

01:48PM 9              THE COURT:  OKAY.  THANK YOU.  ANYTHING FURTHER THEN

01:48PM 10   ON THAT?  SHOULD WE LEAVE THE JUNE 10TH DATE THEN?  IS THAT

01:48PM 11   CONVENIENT?

01:48PM 12              MR. COOPERSMITH:  THAT WAS THE DATE AVAILABLE FOR

01:48PM 13   US, SO, YES, YOUR HONOR.

01:48PM 14              MR. LEACH:  IT'S CONVENIENT FOR US, YOUR HONOR, IF

01:48PM 15   THE COURT IS AVAILABLE TO GO FORWARD.

01:48PM 16              THE COURT:  I THINK THAT'S AT 10:00 A.M.

01:48PM 17              THE CLERK:  YES, YOUR HONOR.

01:48PM 18              THE COURT:  LET'S LEAVE THAT SET.  LET'S RETURN NOW

01:48PM 19   TO THE CRIMINAL CASE.

01:48PM 20         WHAT DO YOU SUGGEST THEN?  I UNDERSTAND YOU'LL PERHAPS

01:48PM 21   PROVIDE A MEMO PERHAPS THE WEEK AFTER, MAYBE IT'S THE SECOND

01:48PM 22   WEEK OF MAY OR SOMETHING LIKE THAT, MR. BOSTIC.

01:48PM 23              MR. BOSTIC:  THAT'S WHAT I UNDERSTAND FROM DEFENSE'S

01:48PM 24   PROPOSAL, YOUR HONOR, AND THAT MEMO WOULD EITHER SAY THE

01:48PM 25   PARTIES HAVE REACHED THE FOLLOWING AGREEMENT OR ARE MAKING

01:48PM   1    PROGRESS TOWARDS REACHING THIS AGREEMENT OR IT WOULD INDICATE

01:48PM   2    THAT THERE IS NO SUCH AGREEMENT AND THAT THE GOVERNMENT IS

01:48PM   3    PLANNING TO FILE ITS OPPOSITION.  THEN MY HOPE AT THAT TIME

01:48PM   4    WOULD BE THAT THE PARTIES INCLUDE IN THAT FILING A PROPOSED

01:48PM   5    BRIEFING AND HEARING SCHEDULE.

01:49PM   6         IS THAT YOUR UNDERSTANDING?

01:49PM   7              MR. DOWNEY:  THAT'S MY UNDERSTANDING, TOO.

01:49PM   8              THE COURT:  I'LL GIVE YOU AN OPPORTUNITY AND THE

01:49PM   9    OPPORTUNITY TO CREATE SUCH A SCHEDULE THAT COMPORTS WITH YOUR

01:49PM  10    CALENDARS.  I'M HAPPY TO GIVE THAT TO YOU FOR SUGGESTION TO THE

01:49PM  11    COURT, AND IF WE CAN ACCOMMODATE IT, WE WILL.  I'LL ACCEPT THAT

01:49PM  12    FOR YOU.

01:49PM  13         LET'S TALK ABOUT TRIAL FOR JUST A MOMENT.  I REALIZE THAT

01:49PM  14    IT'S GOING TO BE PREMATURE BASED ON THESE PENDING MOTIONS.  BUT

01:49PM  15    WHAT ARE YOUR THOUGHTS, IF YOU HAVE ANY, ABOUT WHEN THE CASE

01:49PM  16    WOULD PROCEED TO TRIAL, IF IT WERE TO PROCEED TO TRIAL, WHEN

01:49PM  17    THAT MIGHT BE?

01:49PM  18              MR. DOWNEY:  I THINK FROM THE DEFENSE PERSPECTIVE AT

01:49PM  19    THIS POINT, JUDGE, WE'RE ABOUT THREE MONTHS TOO EARLY TO

01:49PM  20    DISCUSS THAT.

01:49PM  21         IN ADDITION TO WHAT WE'VE JUST DISCUSSED, THERE ARE A

01:49PM  22    COUPLE OF OTHER STRANDS THAT ARE GOING TO DEFINE, I THINK, THE

01:49PM  23    SCOPE OF WHAT IS AT ISSUE.

01:49PM  24         ONE IS THAT THERE IS A TAINT TEAM THAT IS IN PLACE FOR

01:49PM  25    PURPOSES OF REVIEW OF CERTAIN DOCUMENTS, AND THERE'S A

01:49PM  1    PROCEDURE THAT ATTACHES TO THE BACK END OF THAT WHERE THE

01:50PM  2    DEFENSE CAN OBJECT IF DOCUMENTS ARE TO BE DISCLOSED TO THE

01:50PM  3    GOVERNMENT.

01:50PM  4        THE DOCUMENTS THAT ARE AT ISSUE THERE I THINK ARE GOING TO

01:50PM  5    BE QUITE MATERIAL TO THE CASE, AND WE DON'T AT THIS POINT KNOW

01:50PM  6    WHAT THE STATUS IS OF THAT REVIEW, WHEN WE'LL GET THOSE

01:50PM  7    DOCUMENTS, ET CETERA, BUT I THINK THAT IS A PROCESS THAT THE

01:50PM  8    GOVERNMENT HAS SAID HAS COMMENCED AND WE WILL, I THINK,

01:50PM  9    PRESUMABLY BE IN THAT PROCESS THREE MONTHS FROM NOW AND HAVE A

01:50PM  10   BETTER SENSE WITH CLARITY AS TO WHEN WOULD BE AN APPROPRIATE

01:50PM  11   TRIAL DATE.

01:50PM  12       THE OTHER PIECE OF IT, WHICH I JUST, FRANKLY, HAVE TO SOME

01:50PM  13   EXTENT THROW MY HANDS UP ON, JUDGE, AND SAY WE HAVE A HUGE

01:50PM  14   AMOUNT OF MATERIAL THAT HAS ALREADY BEEN PRODUCED WHICH I THINK

01:50PM  15   THE GOVERNMENT HAS WORKED DILIGENTLY TO PRODUCE BUT MUCH OF

01:50PM  16   WHICH WE HAVE ONLY RECENTLY GOTTEN.  WE'RE TOLD BY THE

01:50PM  17   GOVERNMENT THAT THEY ARE PRODUCING A LARGE ADDITIONAL VOLUME.

01:50PM  18   INDEED, TODAY MR. BOSTIC HAS UNCOVERED THAT FOUR ADDITIONAL

01:50PM  19   TERABYTES OF DATA ARE GOING TO BE DISCLOSED TO US.  SO WE WANT

01:51PM  20   TO GET OUR ARMS AROUND WHAT THAT IS, AS DOES HE.

01:51PM  21       SO I THINK WE'RE THREE MONTHS OUT FROM WRAPPING THOSE

01:51PM  22   STRANDS UP SO THAT WE CAN KNOW WHEN A TRIAL DATE -- WHEN A

01:51PM  23   RANGE FOR A TRIAL DATE WOULD BE APPROPRIATE AND SUGGEST A LEAD

01:51PM  24   TIME TO YOUR HONOR.

01:51PM  25            THE COURT:  WELL, THAT COMPORTS WITH WHAT YOU'RE

01:51PM 1    SUGGESTING A JULY DATE FOR A STATUS CONFERENCE.

01:51PM 2              MR. DOWNEY:  STATUS CONFERENCE, YES.

01:51PM 3              MR. BOSTIC:  YOUR HONOR, JUST TO UPDATE THE COURT ON

01:51PM 4    THE TWO ISSUES JUST MENTIONED BY DEFENSE COUNSEL.

01:51PM 5         FIRST, ON THE TAINT REVIEW, COUNSEL IS CORRECT THAT THAT

01:51PM 6    PROCESS IS ONGOING.  IN FACT, THE GOVERNMENT IS ABOUT TO CLEAR

01:51PM 7    THE FIRST BATCH OF DOCUMENTS FOR REVIEW BY THE DEFENSE.  I

01:51PM 8    BELIEVE THAT SET OF DOCUMENTS WILL INCLUDE WELL IN EXCESS OF

01:51PM 9    100,000 OUT OF THE APPROXIMATELY 250,000 DOCUMENTS THAT ARE

01:51PM 10   UNDERGOING THAT TAINT REVIEW.  SO WE'RE MAKING GOOD PROGRESS ON

01:51PM 11   THAT, AND IT'S MY HOPE THAT VERY SOON THE DEFENSE WILL HAVE

01:51PM 12   ACCESS TO A VERY LARGE PORTION OF THOSE DOCUMENTS AND THEN

01:51PM 13   WE'LL PROCEED DILIGENTLY WITH THE REST.

01:51PM 14        AS TO THE NEW INFORMATION, I DID INFORM COUNSEL FOR

01:52PM 15   MS. HOLMES BEFORE THE HEARING THAT WE RECENTLY OBTAINED

01:52PM 16   VOLUNTARILY FROM A WITNESS A HARD DRIVE CONTAINING

01:52PM 17   APPROXIMATELY FOUR TERABYTES OF ADDITIONAL INFORMATION.  I

01:52PM 18   UNDERSTAND THAT MOST OF THAT VOLUME COMES FROM PROMOTIONAL FILM

01:52PM 19   AND VIDEO CREATED BY THERANOS ITSELF WHEN THE COMPANY WAS

01:52PM 20   OPERATIONAL.  SO I THINK THE LARGE AMOUNT MIGHT BE SOMEWHAT

01:52PM 21   MISLEADING BECAUSE THESE ARE NOT JUST PAGES OF SOLID DOCUMENTS.

01:52PM 22   I THINK A LOT OF THAT DATA IS MADE UP BY VIDEO FILES.

01:52PM 23              THE COURT:  I SEE.  THAT'S HELPFUL.

01:52PM 24         MR. SCHENK?

01:52PM 25              MR. SCHENK:  YES, YOUR HONOR.  ON THE ISSUE OF

01:52PM 1    SETTING A TRIAL DATE, WE DO THINK IT'S APPROPRIATE TO SET A

01:52PM 2    TRIAL DATE.  WE'RE NOT ASKING THE COURT TO SET A TRIAL DATE IN

01:52PM 3    THREE MONTHS OR SIX MONTHS, BUT IT DOES HELP CRYSTALIZE MANY OF

01:52PM 4    THE ISSUES BEFORE THE COURT AND BEFORE THE PARTIES TO HAVE THAT

01:52PM 5    TRIAL DATE.

01:52PM 6         WE ALSO THINK THAT THE TRIAL WILL BE LENGTHY AND TO

01:52PM 7    RESERVE THE BLOCK OF TIME ON THE COURT'S CALENDAR AND ON ALL OF

01:53PM 8    THE PARTIES' CALENDAR AND SO THAT WE CAN SEND TRIAL SUBPOENAS

01:53PM 9    TO WITNESSES TO BEGIN TO BLOCK OUT TIME.  IT'S HELPFUL TO HAVE

01:53PM 10   A TRIAL DATE.

01:53PM 11        WE THINK THAT TO NOT MEASURE BY COURT WEEKS BUT RATHER

01:53PM 12   TRIAL DAYS, OUR ESTIMATE AT THIS POINT WOULD BE ABOUT 40 TRIAL

01:53PM 13   DAYS THOUGH ACKNOWLEDGING WE HOPE THAT WE'RE ABLE TO REACH SOME

01:53PM 14   STIPULATIONS WITH THE DEFENSE TO ALLEVIATE CUSTODIAL WITNESSES,

01:53PM 15   AND OBVIOUSLY AS THE TRIAL WOULD GET CLOSER, WE WOULD BE ABLE

01:53PM 16   TO PROVIDE A MORE ACCURATE OR A BETTER ESTIMATE.

01:53PM 17        BUT AT THIS POINT, YOU KNOW, THAT'S ROUGHLY TWO MONTHS

01:53PM 18   GOING EVERY COURT DAY SO IT'S PROBABLY GOING TO GO A LITTLE BIT

01:53PM 19   LONGER THAN THAT AND TO GET TWO MONTHS ON THE COURT'S CALENDAR

01:53PM 20   IS NOT SOMETHING THAT WE CAN DO ON SHORT NOTICE.

01:53PM 21        SO WE WOULD ASK THE COURT TO THINK ABOUT SETTING US FOR

01:53PM 22   TRIAL EVEN A YEAR FROM NOW.  THE GOVERNMENT'S REQUEST WOULD BE

01:53PM 23   TO SET THE TRIAL DATE.

01:53PM 24        WE ACKNOWLEDGE THE POINTS THAT THE DEFENSE HAS MADE TO THE

01:54PM 25   COURT ABOUT THE VOLUMINOUS DISCOVERY AND THEIR NEED TO REVIEW

01:54PM 1    THAT DISCOVERY.  A YEAR FROM NOW, THOUGH, WE THINK WOULD

01:54PM 2    ACCOMPLISH THAT.  AND WE SHOULD ALSO NOTE THAT A LOT OF THE

01:54PM 3    DISCOVERY PRODUCTION IN THIS CASE IS AN EXERCISE IN PROVIDING

01:54PM 4    THERANOS DOCUMENTS BACK TO THE DEFENSE.  NOW IT'S INDIVIDUAL

01:54PM 5    DEFENDANTS, NOT THE CORPORATION.  THERE'S BEEN A LOT OF

01:54PM 6    LITIGATION THAT HAS PREDATED THE CRIMINAL CASE.

01:54PM 7         SO THEY'VE RECEIVED SOME OF THESE DOCUMENTS AND NOW TWO OR

01:54PM 8    THREE TIMES FROM US, BUT WE ACKNOWLEDGE THEIR NEED TO

01:54PM 9    EFFECTIVELY PREPARE BY REVIEWING THESE DOCUMENTS.  THEY HAVE

01:54PM 10   NOT WALKED IN AND ASKED FOR A SPEEDY TRIAL BECAUSE OF THE

01:54PM 11   VOLUMINOUS NATURE OF THE DISCOVERY.

01:54PM 12        ALTHOUGH IT IS OUR VIEW THAT SETTING A TRIAL DATE NOW IS

01:54PM 13   IMPORTANT TO CRYSTALLIZE THOSE ISSUES AND TO BLOCK THAT TIME

01:54PM 14   OUT ON THE COURT'S CALENDAR.

01:54PM 15        AGAIN, EVEN IF IT'S A YEAR FROM NOW WHEN THE COURT HAS THE

01:54PM 16   TIME TO GIVE US THOSE TWO-PLUS MONTHS, WE WOULD APPRECIATE IT.

01:54PM 17             THE COURT:  OKAY.

01:54PM 18             MR. DOWNEY:  YOUR HONOR --

01:54PM 19             THE COURT:  WELL, LOOKING AHEAD -- I KNOW YOU CAN'T

01:55PM 20   TELL ME TODAY, COUNSEL, YOU CAN'T TELL ME TODAY WHAT YOUR --

01:55PM 21   THE TIME YOU NEED FOR YOUR DEFENSE.

01:55PM 22             MR. DOWNEY:  NO.

01:55PM 23             THE COURT:  BUT MY SENSE IS THAT IT MIGHT MIRROR

01:55PM 24   THIS AS WELL AND PERHAPS BE LONGER.

01:55PM 25             MR. COOPERSMITH:  YES, YOUR HONOR.

01:55PM  1          MR. DOWNEY:  THAT'S OUR SENSE, YOUR HONOR, FROM WHAT

01:55PM  2     THE GOVERNMENT HAS SAID TO US.

01:55PM  3          THE COURT:  SO RECOGNIZING THE BUSINESS OF FEDERAL

01:55PM  4     DISTRICT COURTS IN THIS -- IN THE NORTHERN DISTRICT OF

01:55PM  5     CALIFORNIA, AND PARTICULARLY THE SAN JOSE DIVISION, IF I CAN

01:55PM  6     SAY THAT, WE'RE BUSY.

01:55PM  7          MR. DOWNEY:  I SEE.

01:55PM  8          THE COURT:  IT WOULD MAKE SENSE FOR MY CALENDAR, AND

01:55PM  9     MY COLLEAGUES AS WELL, TO BLOCK OUT SOME TIME, EXPECTATION SO

01:55PM 10     THAT WE CAN PROPERLY ADJUST OUR CALENDAR FOR THE OTHER CASES

01:55PM 11     THAT WE HAVE NEED TO TAKE CARE OF.

01:56PM 12       IS THAT SOMETHING THAT WE CAN DO TODAY?

01:56PM 13          MR. DOWNEY:  YOUR HONOR, CAN I MAKE A SUGGESTION?

01:56PM 14     EVERYTHING THAT MR. SCHENK SAYS IS SENSIBLE.  THIS IS GOING TO

01:56PM 15     BE A LONG TRIAL, AND IT'S GOING TO REQUIRE A LOT OF

01:56PM 16     COORDINATION, AND I THINK A SIGNIFICANT ADVANCE NOTICE IS

01:56PM 17     APPROPRIATE.

01:56PM 18       I REALLY DO THINK WHEN THE PROCESSES I'VE IDENTIFIED HAVE

01:56PM 19     HAD THE OPPORTUNITY TO PLAY OUT, WE'LL BE IN A BETTER POSITION

01:56PM 20     TO SAY WHETHER THAT'S NINE MONTHS FROM JULY, WHICH WOULD STILL

01:56PM 21     BE A YEAR FROM TODAY, OR WHETHER IT'S A YEAR FROM JULY.  I

01:56PM 22     THINK THE WORST POSSIBLE RESULT, WHICH WE ALL AGREE ON AND

01:56PM 23     WHICH I'M SURE THE COURT AGREES ON, IS GETTING CLOSER TO A

01:56PM 24     TRIAL AND UNEXPECTED EVENTS THAT CHANGE THE TRIAL DATE.

01:56PM 25          SO I WILL COMMIT TO THE COURT THAT WE WILL TRY TO GIVE A

01:56PM  1   RELIABLE TRIAL DATE AS I'M SURE THE GOVERNMENT WILL WHEN WE

01:56PM  2   PROPOSE ONE.  BUT MY SUGGESTION WOULD BE THAT WE CONFER IN

01:56PM  3   ADVANCE OF A JULY CONFERENCE, COME UP WITH A PROPOSED SCHEDULE,

01:56PM  4   ASSUMING THE ISSUES THAT WE'VE IDENTIFIED ARE RESOLVED AND

01:57PM  5   KNOWABLE AT THAT POINT, AND COME BACK AT THAT TIME AND TRY TO

01:57PM  6   IDENTIFY WHAT THE APPROPRIATE LENGTH OF TIME IS AND WHAT THE

01:57PM  7   APPROPRIATE PRECISE SCHEDULING IS SO THAT WHEN THE COURT

01:57PM  8   SCHEDULES THOSE DATES IT CAN HAVE CONFIDENCE IN THEM.

01:57PM  9          MR. COOPERSMITH:  YOUR HONOR, IF I COULD ADD ONE

01:57PM  10  THING.  SO THE GOVERNMENT ON THE CRIMINAL SIDE HERE HAS BEEN

01:57PM  11  INVESTIGATING THIS CASE SINCE SOMETHING LIKE EARLY 2016 AND

01:57PM  12  HAS -- IT'S NOW, YOU KNOW, SINCE THE INDICTMENT WAS IN JUNE OR

01:57PM  13  MID-JUNE OF 2018 AND WE JUST RECEIVED 3 MILLION PAGES OF

01:57PM  14  DOCUMENTS, YOU KNOW, IN THE MIDDLE OF MARCH.  SO JUST VERY

01:57PM  15  RECENTLY.

01:57PM  16     SO IT IS OBVIOUSLY VERY DIFFICULT TO REVIEW ALL OF THESE

01:57PM  17  DOCUMENTS, BUT THE THING I WANTED TO SAY IN PARTICULAR THAT

01:57PM  18  HASN'T BEEN MENTIONED YET IS THAT THE GOVERNMENT HAS SAID THAT

01:57PM  19  IT'S CONTINUING TO INVESTIGATE THIS CASE.  IT'S CONTINUING TO

01:57PM  20  USE THE GRAND JURY, IT'S CONTINUING TO DO THAT.

01:57PM  21     IF WE SET THE STATUS HEARING IN JULY AS SUGGESTED IN THE

01:57PM  22  STATUS REPORT AND WE ALL COME BACK AND AT THAT POINT WE'RE ALL

01:58PM  23  PREPARED TO TALK ABOUT A TRIAL DATE, I'M HOPING THAT THE

01:58PM  24  GOVERNMENT WILL BE IN A POSITION TO SAY WHETHER THE CASE AS

01:58PM  25  CHARGED NOW IS WHAT THE CASE IS OR WHETHER IT'S GOING TO BE

01:58PM  1    SOMETHING DIFFERENT.

01:58PM  2         YOU KNOW, CERTAINLY BY JULY THEY OUGHT TO BE ABLE TO DO

01:58PM  3    THAT IF THEY'RE NOT PREPARED TO DO THAT TODAY.

01:58PM  4              THE COURT:  IT SOUNDS LIKE A REQUEST.

01:58PM  5              MR. SCHENK:  YOUR HONOR, WE APPRECIATE THE REQUEST.

01:58PM  6    WE RESPECTFULLY ARE GOING TO DECLINE TO TAKE MR. COOPERSMITH UP

01:58PM  7    ON THAT REQUEST.

01:58PM  8         IF HIS CONCERN IS BEING SHORT SET; THAT IS, GOING TO TRIAL

01:58PM  9    ON AN INDICTMENT THAT WAS NOT THE INDICTMENT THAT HE WAS

01:58PM 10    EXPECTING TO GO TO TRIAL ON, THE SPEEDY TRIAL ACT 3161 DEALS

01:58PM 11    WITH THAT SCENARIO.  THERE IS LAW ON THAT SUBJECT.

01:58PM 12         IF IT ISN'T THAT AND RATHER IT'S JUST TELL US IF YOU'RE

01:58PM 13    STILL INVESTIGATING US AND IF YOU'RE LIKELY TO FACE MORE

01:58PM 14    CRIMINAL CHARGES, THAT'S SOMETHING THAT WE DON'T DO AND UNLESS

01:58PM 15    THE COURT WOULD ORDER US TO WE WOULD ASK TO BE HEARD ON THE

01:58PM 16    ISSUE.  WE'RE NOT INCLINED TO REVEAL ONGOING INVESTIGATIONS.

01:58PM 17              THE COURT:  PERHAPS THAT WAS AN ASPIRATIONAL

01:59PM 18    STATEMENT.  WELL, LET'S -- WHY DON'T WE -- IT SEEMS TO ME THAT

01:59PM 19    I'D LIKE TO GET SOME CLOSURE ON CAPTURING A SERIES OF -- IT

01:59PM 20    SOUNDS LIKE WE'RE GOING TO CAPTURE A SERIES OF MONTHS THAT THE

01:59PM 21    TRIAL WILL BE IN, AND OF COURSE WE'LL HAVE TO TIME QUALIFY, ET

01:59PM 22    CETERA, BUT I WOULD LIKE TO CAPTURE SOME TIME CERTAIN IF WE CAN

01:59PM 23    SO THAT WE CAN RESERVE THAT TIME FOR ALL OF YOU FOR THE WORK

01:59PM 24    THAT YOU NEED TO DO.

01:59PM 25         PERHAPS WE CAN BEST DO THAT IN JULY, AND I'M LOOKING AT

01:59PM   1    OUR CALENDAR THINKING JULY 1ST OR JULY 8TH.

01:59PM   2         DO YOU HAVE A PREFERENCE, ADRIANA?

01:59PM   3              THE CLERK:  FOR FURTHER STATUS, YOUR HONOR?

01:59PM   4              THE COURT:  YES.

01:59PM   5              THE CLERK:  JULY 1ST IS A BETTER DATE FOR THE COURT.

01:59PM   6              MR. DOWNEY:  THAT'S FINE FOR MS. HOLMES.

01:59PM   7              THE COURT:  ANY OBJECTION TO JULY 1ST?

02:00PM   8              MR. COOPERSMITH:  NO, YOUR HONOR.

02:00PM   9              MR. BOSTIC:  THAT'S FINE FOR THE GOVERNMENT.

02:00PM   10             MR. SCHENK:  NO.

02:00PM   11             THE COURT:  I HEAR NONE.  THANK YOU.  THAT WILL

02:00PM   12   ALLOW US ALSO TO HEAR THE JUNE 10TH MOTION SO WE'LL HAVE SOME

02:00PM   13   RESOLUTION ON THE JUNE 10TH MOTION WHICH MAY BE HELPFUL, AND

02:00PM   14   DEPENDING ON YOUR DISCUSSIONS ABOUT THIS DISCOVERY ISSUE,

02:00PM   15   WHATEVER REMAINS MIGHT MAKE THAT MOTION LESS INTENSIVE AS IT

02:00PM   16   PRESENTS NOW.  OF COURSE, I ONLY HAVE ONE SIDE OF IT.

02:00PM   17        ALL RIGHT.  LET'S CONTINUE THESE CASES.  ANYTHING FROM THE

02:00PM   18   S.E.C. THAT I SHOULD KNOW ABOUT?

02:00PM   19             MS. LAMARCA:  YES, YOUR HONOR.  THIS IS MORE IN THE

02:00PM   20   NATURE OF HOUSEKEEPING BUT CURRENTLY THE COURT HAS A MAY 30TH

02:00PM   21   DATE FOR SETTING A TRIAL IN THIS CASE AND THE LAST TIME THAT WE

02:00PM   22   MET THE S.E.C. HAD AGREED, AT THE DEFENDANT'S REQUEST, TO ALLOW

02:00PM   23   FOR A POTENTIAL EXTENSION OF OUR DISCOVERY CUTOFF.

02:01PM   24             THE COURT:  RIGHT.

02:01PM   25             MS. LAMARCA:  I GET THAT THIS MAY CHANGE GIVEN THE

02:01PM 1    STAY MOTION, ET CETERA, AND WE'RE WILLING TO DEFER THAT ISSUE

02:01PM 2    UNTIL THE FUTURE, BUT I DO THINK THAT SINCE THE MOTION HAS BEEN

02:01PM 3    SET FOR JUNE 10TH, WE AT LEAST NEED TO TAKE CARE OF THIS MAY

02:01PM 4    30TH DATE IN THE INTERIM.

02:01PM 5            MR. COOPERSMITH:  THAT MAKES SENSE, YOUR HONOR, THAT

02:01PM 6    WE MOVE THE MAY 30TH.  I AGREE WITH MS. LAMARCA.

02:01PM 7        REGARDING THE STAY MOTION, AS THE COURT ALREADY SAID THAT

02:01PM 8    WILL BE HEARD ON JUNE 10TH, AND WE'LL RESPOND, AND I'M SURE THE

02:01PM 9    GOVERNMENT WILL SUBMIT A REPLY BRIEF.

02:01PM 10       BUT I THINK THAT THE REQUEST FOR A CONTINUANCE OR AN

02:01PM 11   EXTENSION OF DISCOVERY SHOULD BE RULED AND DECIDED ON TODAY,

02:01PM 12   AND THERE'S A FEW REASONS FOR THAT.

02:01PM 13       FIRST OF ALL, THE S.E.C. AND THE DEFENSE FOR MR. BALWANI

02:01PM 14   AGREE THAT THERE SHOULD AN EXTENSION OF DISCOVERY.  WE DISAGREE

02:01PM 15   ABOUT EXACTLY WHAT THE LENGTH SHOULD BE.  THEY SAID UP TO 3

02:01PM 16   MONTHS, AND WE THINK THE MAGNITUDE OF THIS CASE AND THE VOLUME

02:01PM 17   OF DOCUMENTS WARRANT AN EXTENSION OF 12 MONTHS, BUT WE AGREE ON

02:02PM 18   AN EXTENSION.

02:02PM 19       SO IF THAT CAN BE DECIDED UPON, THAT WAY WHAT WILL HAPPEN

02:02PM 20   IS THAT IF THE COURT DENIES THE GOVERNMENT'S MOTION TO STAY,

02:02PM 21   WE'LL BE IN A POSITION TO CONTINUE TO TAKE DISCOVERY AND ALSO

02:02PM 22   RIGHT NOW WE'LL BE ABLE TO GET THINGS ON THE CALENDAR, BECAUSE

02:02PM 23   AS I SAID THE LAST TIME I WAS BEFORE THE COURT, SOME OF THESE

02:02PM 24   WITNESSES ARE BILLIONAIRES AND OTHERS OF THAT ILK WHO MAKE IT

02:02PM 25   VERY DIFFICULT TO SCHEDULE, AND WE TRY TO BE COURTEOUS IN

02:02PM   1     SCHEDULING TIME FOR THAT THOSE PEOPLE.

02:02PM   2               THE COURT:  THEY HAVEN'T MET THE UNITED STATES

02:02PM   3     MARSHAL.

02:02PM   4               MR. COOPERSMITH:  IF IT CAME TO THAT I SUPPOSE THEY

02:02PM   5     COULD, BUT WE DON'T WANT TO HAVE THAT SITUATION IF WE CAN AVOID

02:02PM   6     IT.

02:02PM   7          (LAUGHTER.)

02:02PM   8               MR. COOPERSMITH:  BUT, YOUR HONOR, IF WE AGREE ON

02:02PM   9     THE EXTENSION OR THE COURT RULES ON AN EXTENSION TODAY,

02:02PM  10     OBVIOUSLY IF ON JUNE 10TH THE COURT DOES STAY THE CASE, OVER

02:02PM  11     OUR OPPOSITION, THEN THAT WILL BE THE END OF DISCOVERY UNTIL

02:02PM  12     SOME OTHER POINT IN TIME.

02:02PM  13               THE COURT:  I APPRECIATE THAT.  I THINK A YEAR STAY

02:02PM  14     IS A LITTLE -- THAT'S JUST A BRIDGE TOO FAR TODAY FOR ME TO

02:03PM  15     MAKE.

02:03PM  16          ANYTHING FURTHER ON THAT?

02:03PM  17          AND PERHAPS -- I DON'T MEAN TO SUGGEST THAT DISCOVERY

02:03PM  18     SHOULD BE INCREMENTAL AT ALL.  I'D LIKE TO GIVE YOU FULL

02:03PM  19     LATITUDE OF DISCOVERY THAT YOU NEED, BUT I DO THINK THAT IN ALL

02:03PM  20     CANDOR A YEAR IS A BIT MUCH, AND I WAS LOOKING AT 90 DAYS AND

02:03PM  21     PERHAPS WE CAN START WITH THAT AND SEE WHERE WE GO.

02:03PM  22          EVERYTHING IS KIND OF FLUID HERE IN ANY EVENT.

02:03PM  23               MR. COOPERSMITH:  I UNDERSTAND WHAT THE COURT IS

02:03PM  24     SAYING OF COURSE.  THE PROBLEM IS, YOUR HONOR, IF WE ONLY HAVE

02:03PM  25     A THREE-MONTH EXTENSION, WE'RE NOW GOING TO BE IN THE SUMMER

02:03PM 1    TOWARDS THE END OF THAT PERIOD.  IT'S GOING TO BE VERY

02:03PM 2    DIFFICULT TO SCHEDULE THINGS FOR SOME WITNESSES,

02:03PM 3    NOTWITHSTANDING THE POWER OF THE UNITED STATES MARSHALS, YOUR

02:03PM 4    HONOR, AND --

02:03PM 5              THE COURT:  YOU UNDERESTIMATE THEM.

02:03PM 6              MR. COOPERSMITH:  NO, I DON'T.  I WAS A FEDERAL

02:03PM 7    PROSECUTOR, AND I HAVE TOTAL FAITH IN THE PARTIALS, BUT I DON'T

02:03PM 8    THINK THAT'S WHERE WE REALLY WANT TO BE.

02:03PM 9              THE COURT:  SURE.  I APPRECIATE THAT.

02:03PM 10             MR. COOPERSMITH:  SO THE PROBLEM IS IN SOME CASES

02:04PM 11   WE'RE ALREADY TALKING TO WITNESSES, ASSUMING THERE WAS ANY

02:04PM 12   EXTENSION, OF SCHEDULING THINGS IN JULY, AND THAT'S THREE

02:04PM 13   MONTHS FROM NOW.

02:04PM 14        SO I THINK IT'S GOING TO MAKE IT VERY DIFFICULT FOR

02:04PM 15   SCHEDULING PURPOSES IF WE HAVE ONLY A THREE MONTH EXTENSION

02:04PM 16   GIVEN THAT WILL BE RIGHT AT THE SUMMER PERIOD AT THAT POINT.

02:04PM 17        SO IF THE COURT IS NOT WILLING TO GRANT A 12-MONTH

02:04PM 18   EXTENSION, OBVIOUSLY THAT'S WHAT WE REQUESTED, SOME PERIOD OF

02:04PM 19   TIME BETWEEN THE 3 MONTHS THE S.E.C. SAID AND THE 12 MONTHS

02:04PM 20   WE'RE SAYING WOULD MAKE SENSE.

02:04PM 21        AGAIN, YOU KNOW, THE STAY MOTION WON'T AFFECT IT BECAUSE

02:04PM 22   THE COURT CAN RULE ON JUNE 10TH ONE WAY OR THE OTHER.

02:04PM 23             MS. LAMARCA:  YOUR HONOR, WE OPPOSE A LONGER

02:04PM 24   EXTENSION FOR THE REASONS THAT WE SET FORTH IN THE JOINT CMC

02:04PM 25   STATEMENT.  I THINK ONE THING THAT WE HAVE NOT SEEN IN THIS

02:04PM  1    CASE IS ANYTHING OTHER THAN ARGUMENTS ABOUT THINGS LIKE

02:04PM  2    DISCOVERY, AND IT IS, NO DOUBT, DIFFICULT TO GET SOME WITNESSES

02:04PM  3    TO AGREE TO CERTAIN DATES, BUT WE DO IT ALL OF THE TIME.

02:04PM  4    THAT'S WHAT WE DO.

02:04PM  5         AND IN OUR CASES A THREE MONTH EXTENSION USUALLY WORKS FOR

02:05PM  6    EVERYONE.  SO I CAN'T IMAGINE IF THIS IS SO DIFFERENT THAT IT

02:05PM  7    REALLY REQUIRES THAT WE DEPART FROM THE NORMS IN ALL OF OUR

02:05PM  8    CASES.  WE WOULD OPPOSE ANYTHING LONGER THAN THREE MONTHS.

02:05PM  9              MR. COOPERSMITH:  YOUR HONOR, ONE OTHER THING ABOUT

02:05PM  10   THAT.  AS WE SAID IN THE STATUS REPORT, EVERY STEP OF THE WAY

02:05PM  11   WE HAVE RUN INTO NOTHING BUT OBSTACLES WITH SCHEDULING

02:05PM  12   WITNESSES FOR DEPOSITIONS, FOR DOCUMENTS.  EVEN WHEN IT COMES

02:05PM  13   TO THE UNITED STATES GOVERNMENT ITSELF, WE ISSUED SUBPOENAS TO

02:05PM  14   CMS AND FDA, AS I SAID BEFORE, IN SEPTEMBER OF 2018, AND WE'VE

02:05PM  15   MET AND CONFERRED FOR MONTHS, AND MONTHS, AND MONTHS AND NOW WE

02:05PM  16   ARE TRYING TO FRAME THE ISSUES BEFORE THE COURT IF WE HAVE TO

02:05PM  17   GO TO THE MOTION.

02:05PM  18        IT'S ONE THING AFTER ANOTHER.  I CAN TELL YOU THESE THIRD

02:05PM  19   PARTIES, THESE BILLIONAIRES AND OTHERS, NOT SURPRISINGLY, THEY

02:05PM  20   REALLY DON'T WANT TO HAVE ANYTHING TO DO WITH THIS CASE.  THEY

02:05PM  21   HAVE BIG LAW FIRMS REPRESENTING THEM.  IT'S NOT THAT WE'RE

02:05PM  22   POWERLESS, YOUR HONOR.  WE UNDERSTAND WE CAN PUT OUR FOOT DOWN.

02:06PM  23   WE HAVE IN SOME INSTANCES.  IT'S VERY DIFFICULT, AND AS WE HAVE

02:06PM  24   SAID, WE HAVE RUN INTO NOTHING BUT OBSTACLES.

02:06PM  25        IN ADDITION, AS WE SAID IN THE STATUS REPORT, WE LEARNED

02:06PM  1      THAT THE S.E.C. HAD DOCUMENTS FROM SOME AGENCIES FOR A COUPLE

02:06PM  2      OF YEARS, AND, YOU KNOW, HAD NOT PRODUCED THEM INITIALLY AND

02:06PM  3      THEN WE FINALLY DID GET THEM.

02:06PM  4          I'VE WRITTEN THREE LETTERS, YOUR HONOR, TO COUNSEL FOR THE

02:06PM  5      S.E.C. SAYING CAN YOU PLEASE CONFIRM THAT YOU HAVE EVERY

02:06PM  6      DOCUMENT THAT YOU HAVE FROM THIRD PARTIES AND THAT'S

02:06PM  7      DISCOVERABLE, AND I HAVE NEVER GOTTEN A RESPONSE TO ANY OF THE

02:06PM  8      PARTIES ON THAT POINT.

02:06PM  9          I UNDERSTAND COUNSEL FOR THE S.E.C. IS BUSY AND THEY HAVE

02:06PM  10     A LOT OF CASES, BUT THE POSTURE OF THIS CASE RIGHT NOW, I

02:06PM  11     THINK, FULLY WARRANTS A LONGER EXTENSION THAN THE THREE MONTHS,

02:06PM  12     AND I THINK THAT WILL MAKE DISCOVERY EFFICIENT.

02:06PM  13         AGAIN, THE COURT CAN RULE ON THE OTHER ISSUE ON JUNE 10TH.

02:06PM  14         MS. LAMARCA:  WE DON'T HAVE ANYTHING FURTHER.  WE

02:06PM  15     DISAGREE WITH COUNSEL'S REPRESENTATIONS ABOUT DISCOVERY IN THIS

02:06PM  16     CASE SO FAR.

02:06PM  17         THE COURT:  OKAY.  THANK YOU.  ANYONE ELSE WISH TO

02:06PM  18     BE HEARD ON THIS?  ALL RIGHT.  THANK YOU VERY MUCH.

02:06PM  19         WELL, I APPRECIATE YOUR RECOGNIZING ASPIRATIONAL GOALS BUT

02:07PM  20     A YEAR, THAT'S A BRIDGE TOO FAR, AS I'VE SAID.  SO 90 DAYS

02:07PM  21     SOUNDS REASONABLE TO ME, BUT I'LL MAKE IT 120 DAYS.  I KNOW

02:07PM  22     THAT'S NOT EXACTLY WHAT YOU WANT, BUT WE'LL MAKE IT 120 DAYS

02:07PM  23     AND THEN WE'LL HOPEFULLY -- WELL, WE'LL SEE EACH OTHER JULY

02:07PM  24     1ST, AND BY THEN WE'LL HAVE SOME KNOWLEDGE AS TO THE JUNE 10TH

02:07PM  25     MOTION AS WELL AND THAT WILL BE HELPFUL AS WELL.

| | |
|---|---|
| 02:07PM | 1 |

02:07PM 1          MR. COOPERSMITH:  JULY 1ST, YOUR HONOR?

02:07PM 2          THE COURT:  YES.  JULY 1ST WILL BE OUR NEXT STATUS

02:07PM 3   CONFERENCE, JULY 1ST, JULY 1ST, AND THAT WILL BE AT 1:30.  I

02:07PM 4   WILL EXCLUDE TIME AS TO EACH DEFENDANT IN EACH CASE TO ALLOW

02:07PM 5   FOR EFFECTIVE REPRESENTATION, AND THERE'S OTHER TERABYTES AND

02:07PM 6   OTHER DISCOVERY THAT YOU HAVE TALKED ABOUT TODAY THAT COUNSEL

02:07PM 7   HAS INDICATED THEY NEED TO REVIEW.

02:07PM 8          ANY OBJECTION TO THE COURT EXCLUDING TIME ON THAT BASIS?

02:07PM 9          MR. DOWNEY:  NO OBJECTION FOR MS. HOLMES.

02:08PM 10          MR. COOPERSMITH:  NO OBJECTION FOR MR. BALWANI.

02:08PM 11          THE COURT:  ALL RIGHT.  TIME IS EXCLUDED, AND WE'LL

02:08PM 12   SEE EVERYONE BACK ON THAT DATE.

02:08PM 13          ANYTHING FURTHER BEFORE WE END TODAY?

02:08PM 14          MR. COOPERSMITH:  ONE QUICK THING, YOUR HONOR.

02:08PM 15          THE COURT:  YES.

02:08PM 16          MR. COOPERSMITH:  UNTIL THE JUNE 10TH MOTION IS

02:08PM 17   HEARD AND THE COURT RULES ON THAT, THERE'S NO STAY IN EFFECT?

02:08PM 18          THE COURT:  YES, THAT'S CORRECT.  THANK YOU VERY

02:08PM 19   MUCH.  WE'LL SEE YOU SOON.

20          (COURT CONCLUDED AT 2:08 P.M.)

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        _____
         IRENE RODRIGUEZ, CSR, RMR, CRR
         CERTIFICATE NUMBER 8074

17

18        DATED:  APRIL 25, 2019

19

20

21

22

23

24

25

# EXHIBIT B

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5    UNITED STATES OF AMERICA,        )  CR-18-00258-EJD &
                                      )  CV-18-01603-EJD
6                   PLAINTIFF,        )
                                      )
7              VS.                    )  SAN JOSE, CALIFORNIA
                                      )
8    ELIZABETH A. HOLMES AND RAMESH   )  JUNE 28, 2019
     SUNNY BALWANI,                   )
                                      )  PAGES 1 - 71
9                   DEFENDANTS.       )
     _____)
10                                    )
     SECURITIES AND EXCHANGE          )
11   COMMISSION,                      )
                                      )
12                  PLAINTIFF,        )
                                      )
13             VS.                    )
                                      )
14   RAMESH SUNNY BALWANI,            )
                                      )
15                  DEFENDANT.        )
     _____)
16
                      TRANSCRIPT OF PROCEEDINGS
17            BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
18
     A P P E A R A N C E S:
19
     FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
20                         BY:  JOHN BOSTIC
                                ROBERT LEACH
21                              JEFFREY SCHENK
                           150 ALMADEN BOULEVARD, SUITE 900
22                         SAN JOSE, CALIFORNIA 95113
         (APPEARANCES CONTINUED ON THE NEXT PAGE.)
23   OFFICIAL COURT REPORTER:
                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
24                         CERTIFICATE NUMBER 8074

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3     FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE WADE
                               725 TWELFTH STREET, N.W.
 5                             WASHINGTON, D.C. 20005

 6                             LAW OFFICE OF JOHN D. CLINE
                               BY:  JOHN D. CLINE
 7                             ONE EMBARCADERO CENTER, SUITE 500
                               SAN FRANCISCO, CALIFORNIA 94111
 8
       FOR DEFENDANT BALWANI:  DAVIS, WRIGHT & TREMAINE LLP
 9                             BY:  STEPHEN CAZARES
                               505 MONTGOMERY STREET, SUITE 800
10                             SAN FRANCISCO, CALIFORNIA 94111

11                             CORR CRONIN LLP
                               BY:  STEVEN FOGG
12                             1001 FOURTH AVENUE, SUITE 3900
                               SEATTLE, WASHINGTON 98154
13
       FOR THE S.E.C.:         UNITED STATES SECURITIES AND EXCHANGE
14                             COMMISSION
                               BY:  SUSAN F. LAMARCA
15                                  MARC D. KATZ
                               44 MONTGOMERY STREET, SUITE 2600
16                             SAN FRANCISCO, CALIFORNIA 94104

17

18

19

20

21

22

23

24

25
```

3

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    JUNE 28, 2019 |
| | 2 | P R O C E E D I N G S |
| 10:05AM | 3 | (COURT CONVENED AT 10:05 A.M.) |
| 10:05AM | 4 | (COURT CONVENED AT 10:05 A.M.) |
| 10:05AM | 5 | THE COURT:  THIS IS 18-258, UNITED STATES VERSUS |
| 10:05AM | 6 | ELIZABETH HOLMES AND UNITED STATES VERSUS RAMESH SUNNY BALWANI. |
| 10:05AM | 7 | THERE'S A COMPANION CASE 18-1603 WHICH IS THE S.E.C. CASE, |
| 10:06AM | 8 | AND WE'LL TURN TO THAT IN JUST A MOMENT. |
| 10:06AM | 9 | MAY I HAVE THE APPEARANCES, PLEASE. |
| 10:06AM | 10 | MR. BOSTIC:  GOOD MORNING, YOUR HONOR.  JOHN BOSTIC, |
| 10:06AM | 11 | JEFF SCHENK, AND BOB LEACH FOR THE UNITED STATES. |
| 10:06AM | 12 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:06AM | 13 | MR. DOWNEY:  GOOD MORNING, YOUR HONOR.  KEVIN DOWNEY |
| 10:06AM | 14 | FROM WILLIAMS & CONNOLLY FOR MS. HOLMES AND WITH ME ARE |
| 10:06AM | 15 | PARTNER, LANCE WADE, AND OUR CO-COUNSEL, JOHN CLINE. |
| 10:06AM | 16 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:06AM | 17 | MR. CAZARES:  GOOD MORNING, YOUR HONOR. |
| 10:06AM | 18 | STEPHEN CAZARES FOR MR. BALWANI.  WITH ME IS MR. STEVEN FOGG |
| 10:06AM | 19 | WHO ALSO REPRESENTS MR. BALWANI. |
| 10:06AM | 20 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:06AM | 21 | LET ME JUST THANK COUNSEL FOR -- WE DID RESCHEDULE THIS TO |
| 10:06AM | 22 | THIS MORNING FROM -- I ADVANCED IT FROM MONDAY, AND LET ME |
| 10:06AM | 23 | THANK YOU FOR THAT COURTESY. |
| 10:06AM | 24 | WELL, TODAY WE HAVE A MOTION TO COMPEL REGARDING DISCOVERY |
| 10:06AM | 25 | MATTERS.  WE HAD SOME DISCUSSIONS ABOUT DISCOVERY WHEN WE WERE |

10:06AM  1    LAST IN COURT AND THERE WAS SOME REPRESENTATIONS MADE.

10:06AM  2        I SUPPOSE -- LET ME INDICATE WHAT I HAVE REVIEWED HERE.  I

10:06AM  3    HAVE REVIEWED YOUR PLEADINGS IN THIS CASE WHICH INCLUDE

10:07AM  4    DOCUMENT 67, WHICH IS THE MOTION TO COMPEL; DOCUMENT 79, WHICH

10:07AM  5    IS THE GOVERNMENT'S OPPOSITION; DOCUMENT 81, WHICH IS THE

10:07AM  6    REPLY, DEFENSE REPLY, AND ALL OF THE ATTACHMENTS THERETO;

10:07AM  7    DOCUMENT 82 IS MR. BALWANI'S REPLY; DOCUMENT 81-1 IS THE

10:07AM  8    DECLARATION OF MR. WADE IN FURTHER SUPPORT OF THE MOTION TO

10:07AM  9    COMPEL.

10:07AM  10        I'VE LOOKED ALSO AT THE JOINDER FILED BY MR. BALWANI AND

10:07AM  11   THAT WAS DOCUMENT 68; AND DOCUMENT 88, FINALLY, IS THE JOINT

10:07AM  12   SUPPLEMENTAL CASE MANAGEMENT STATEMENT; AND DOCUMENT 80 IS THE

10:07AM  13   JOINT STATEMENT.

10:07AM  14        HAVE I LEFT ANYTHING OUT THAT EITHER PARTY WANTS TO DRAW

10:07AM  15   MY ATTENTION TO?

10:07AM  16            MR. BOSTIC:  NO, YOUR HONOR, NOT FOR THE GOVERNMENT.

10:07AM  17   THANK YOU VERY MUCH.

10:07AM  18            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

10:08AM  19        WELL, WHY DON'T I GET AN UPDATE, IF I MAY AS TO -- PARDON

10:08AM  20   ME.  BEFORE WE DO THAT, I DO WANT TO DO ONE THING.  I'D LIKE TO

10:08AM  21   SET THE CASE FOR TRIAL.  SO WHY DON'T WE GET OUR CALENDARS OUT

10:08AM  22   AND LET'S LOOK AND SEE WHAT WOULD BE APPROPRIATE FOR THAT.

10:08AM  23        I DID READ IN YOUR STATEMENTS THAT YOU'RE SUGGESTING

10:08AM  24   SEPTEMBER OF NEXT YEAR AS A DATE FOR TRIAL.  I APPRECIATE THAT

10:08AM  25   OFFER.

10:08AM 1     I'M GOING TO SUGGEST SOMETHING DIFFERENT.  THE THOUGHT

10:08AM 2     OCCURS TO ME THAT THE TIME TO SECURE A JURY BEGINNING IN

10:08AM 3     SEPTEMBER FOR THE DURATION THAT YOU'VE INDICATED, I THINK YOU

10:08AM 4     SAID 90 DAYS, 3 MONTHS, PUTS US PERILOUSLY CLOSE TO THE HOLIDAY

10:08AM 5     SEASON.  MY SENSE IS THAT THERE WILL BE PROBABLY SOME

10:08AM 6     DIFFICULTY TO SECURE JURORS WHO WOULD HAVE TIME AND BE CONFLICT

10:08AM 7     FREE AS WE APPROACH THAT HOLIDAY SEASON.  I THINK THAT'S

10:09AM 8     PERHAPS NOT A GOOD PATH TO TAKE.

10:09AM 9         I'M GOING TO SUGGEST SOMETHING ELSE.  I UNDERSTAND THAT

10:09AM 10    YOU NEED SOME TIME TO ACCOMPLISH THIS, WHAT YOU NEED TO DO.

10:09AM 11        MY THOUGHT WAS THAT WE, AND LET ME START WITH THE

10:09AM 12    AMBITIOUS DATE, PERHAPS WE COULD, PERHAPS WE COULD ENGAGE JURY

10:09AM 13    SELECTION SOME TIME THE END OF JUNE AND TAKE A BREAK AFTER WE

10:09AM 14    DO THAT.  THAT MIGHT TAKE A COUPLE OF DAYS.  WE CAN BEGIN THE

10:09AM 15    TRIAL SOME TIME, THAT IS, EVIDENCE BEGINS SOME TIME IN JULY.

10:09AM 16    FOR EXAMPLE, WE COULD BEGIN THE TRIAL SOME TIME ON JULY 7TH,

10:09AM 17    JULY 14TH, AND GO FORWARD.

10:09AM 18        RESTRAIN YOUR ENTHUSIASM, PLEASE.

10:10AM 19        (LAUGHTER.)

10:10AM 20        THE COURT:  LET ME ALSO SUGGEST THEN, GOING FORWARD,

10:10AM 21    WE COULD LOOK -- I'M ALSO LOOKING AT PERHAPS JULY 14TH FOR JURY

10:10AM 22    SELECTION, THE WEEK OF JULY 14TH FOR JURY SELECTION.

10:10AM 23        WE COULD TAKE THE FOLLOWING WEEK OFF, WHICH IS THE 20TH,

10:10AM 24    AND THEN PERHAPS ENGAGE EVIDENCE ON THE 28TH, 29TH, THAT WEEK.

10:10AM 25        IF THAT DOESN'T WORK, I'M GIVING YOU SO MANY OUTS HERE, WE

10:10AM  1    COULD -- I THINK THE 28TH WE COULD, AS I SAID, BEGIN JURY

10:10AM  2    SELECTION AND THEN START EVIDENCE ON THE 4TH OF AUGUST.  I

10:10AM  3    THINK THAT'S -- THAT'S BASICALLY THAT LATTER IS PUSHING IT --

10:10AM  4    ADVANCING US ABOUT A MONTH, BUT I AM -- I DO HAVE SOME CONCERN

10:10AM  5    ABOUT GOING INTO THE HOLIDAY SEASON.  PERHAPS YOU HAVE HOLIDAY

10:10AM  6    PLANS AS WELL.

10:11AM  7             MR. SCHENK:  YOUR HONOR, FROM THE GOVERNMENT'S

10:11AM  8    PERSPECTIVE THE GOVERNMENT IS PREPARED TO TRY THE CASE AT THE

10:11AM  9    CONVENIENCE OF THE COURT.

10:11AM 10        WHEN WE WERE LAST BEFORE YOUR HONOR IN APRIL, THE

10:11AM 11    GOVERNMENT ASKED THE COURT TO SET THE MATTER FOR TRIAL THEN

10:11AM 12    RECOGNIZING THAT DISCOVERY WAS VOLUMINOUS AND THE DEFENSE WOULD

10:11AM 13    NEED A SIGNIFICANT AMOUNT OF TIME TO PREPARE.

10:11AM 14        WE ASKED THE COURT TO SET A TRIAL DATE EVEN A YEAR FROM

10:11AM 15    THAT.  SO AT THAT TIME WE PROPOSED ROUGHLY APRIL OF 2020.

10:11AM 16        SINCE THEN WE HAD A MEET AND CONFER WITH THE DEFENSE AND

10:11AM 17    IN PARTICULAR COUNSEL FOR MS. HOLMES DESCRIBED TO US THE AMOUNT

10:11AM 18    OF WORK THAT THEY HAD LEFT TO DO TO PREPARE FOR TRIAL, AND IT

10:11AM 19    WAS KIND OF WITH THAT UNDERSTANDING THAT IN ORDER TO PREPARE

10:11AM 20    THEY FELT APRIL WAS REALLY TOO SOON.

10:11AM 21        SO I THINK THE COURT HAS GIVEN US ALL FINE SUGGESTIONS

10:11AM 22    FROM THE GOVERNMENT'S PERSPECTIVE, AND WE WOULD LEAVE IT UP TO

10:11AM 23    THE DEFENSE TO HEAR IF ONE OF THOSE DATES IS A POINT AT WHICH

10:11AM 24    THEY WOULD BE PREPARED TO BEGIN THE TRIAL.

10:11AM 25        BUT FROM THE GOVERNMENT'S PERSPECTIVE WE THINK THAT WE

| | | |
|---|---|---|
| 10:11AM | 1 | WILL BE ABLE TO BEGIN AT ANY OF THOSE DATES. |
| 10:12AM | 2 | I WOULD ALSO ASK, THOUGH, THAT -- AND I'M SURE THIS IS |
| 10:12AM | 3 | WHAT THE COURT MEANT -- THAT THIS IS A FIRM TRIAL DATE.  WE'RE |
| 10:12AM | 4 | NOT GOING TO BE COMING BACK BEFORE YOUR HONOR IN APRIL OF 2020 |
| 10:12AM | 5 | AND SAYING WE NOW NEED SOME ADDITIONAL TIME.  WE'RE GOING TO |
| 10:12AM | 6 | HAVE SIGNIFICANT SUBPOENAS TO SERVE IN THE CASE, MANY CIVILIAN |
| 10:12AM | 7 | WITNESSES, AND THERE'S REAL VALUE TO HAVING FIRM TRIAL DATES. |
| 10:12AM | 8 | SO WHEN WE ASK WITNESSES TO CLEAR THEIR SCHEDULES AND TO BE |
| 10:12AM | 9 | AVAILABLE FOR COURT, THAT IS A ONE-TIME REQUEST AND WE CAN SAY |
| 10:12AM | 10 | IT WITH SOME LEVEL OF CERTAINTY, AND I APPRECIATE I'M SURE |
| 10:12AM | 11 | THAT'S WHAT THE COURT MEANT WHEN IT WAS OFFERING THESE DATES. |
| 10:12AM | 12 | THE COURT:  WELL, THANK YOU, MS. SCHENK.  THAT IS |
| 10:12AM | 13 | WHAT I MEAN.  YOU'RE ASKING ME TO SET ASIDE THREE MONTHS OF |
| 10:12AM | 14 | COURT TIME FOR THIS CASE, AND BOTH SIDES ARE ENTITLED TO THAT. |
| 10:12AM | 15 | I'LL DO THAT.  I'LL DO THAT. |
| 10:12AM | 16 | OF COURSE, YOU KNOW THE BUSINESS OF FEDERAL COURTS.  I |
| 10:12AM | 17 | NEED TO DISAPPOINT OTHER COURT USERS FOR THAT TIME PERIOD.  SO |
| 10:12AM | 18 | I DO WANT TO SECURE FIRM TRIAL DATES THAT GIVES EVERYONE HERE A |
| 10:13AM | 19 | FIRM EVENT HORIZON TO FOCUS ON SUCH THAT THERE WON'T BE ANY |
| 10:13AM | 20 | CHANGES TO THAT. |
| 10:13AM | 21 | COUNSEL. |
| 10:13AM | 22 | MR. DOWNEY:  YOUR HONOR, I WOULD SAY WE SHARE -- WE |
| 10:13AM | 23 | UNDERSTAND THE SITUATION, WE UNDERSTAND THE NEED TO SET A DATE |
| 10:13AM | 24 | GIVEN THE LENGTH OF THE TRIAL. |
| 10:13AM | 25 | I WOULD SAY OF THE DATES THAT YOU HAVE SUGGESTED, WE WOULD |

10:13AM 1    SUGGEST COMMENCING WITH SELECTION ON THE 28TH OF JULY.

10:13AM 2            THE COURT:  EXPERIENCED DEFENSE COUNSEL ALWAYS LOOKS

10:13AM 3    TO THE LATTER DATE.  NO CRITICISM INVOLVED.

10:13AM 4        WHEN I WAS PRACTICING, THAT WAS SOMETHING THAT I

10:13AM 5    OCCASIONALLY DID AS WELL.

10:13AM 6            MR. DOWNEY:  NO, I UNDERSTAND.  AND I ONLY WANT TO

10:13AM 7    SAY, BECAUSE THESE ISSUES ARE NOT BEFORE THE COURT TODAY, OUR

10:13AM 8    CONCERN IS NOT REALLY ABOUT THE DATE AS AN ABSTRACTION.

10:13AM 9        OUR CONCERN IS THAT THERE ARE ANY NUMBER OF ISSUES IN

10:13AM 10   TERMS OF THE GOVERNMENT'S RULE 26 COMPLIANCE THAT ARE STILL

10:13AM 11   OUTSTANDING.

10:13AM 12       WE ARE CONTINUING TO GET LARGE VOLUMES OF MATERIAL FROM

10:14AM 13   THE GOVERNMENT SO I THINK --

10:14AM 14           THE COURT:  WELL, THAT'S THE PROVERB, YOU ASK AND

10:14AM 15   YOU SHALL RECEIVE.  IT'S NOT A PROVERB BUT SOMEONE SAID THAT

10:14AM 16   ONCE.  SO, YOU KNOW, YOU ASK FOR IT, YOU GET IT, AND THEN OF

10:14AM 17   COURSE YOU HAVE TO DIGEST IT.  SO I APPRECIATE THAT.  THERE'S

10:14AM 18   VOLUMINOUS DISCOVERY HERE.

10:14AM 19       I THINK IF WE SET, AND THAT WAS MY THOUGHT, AND I'M SORRY

10:14AM 20   TO INTERRUPT YOU, BUT MY THOUGHT WAS THE FIRST THING WE DO IS

10:14AM 21   LET'S SET A TRIAL DATE THAT WE CAN ALL FOCUS ON AND THEN YOU

10:14AM 22   CAN ADJUST YOUR WORK SCHEDULES ACCORDINGLY, THE PRODUCTION, AND

10:14AM 23   I'M GOING TO TALK ABOUT THAT IN A MOMENT.

10:14AM 24       JUST TO ADVANCE THAT CONVERSATION, I'LL PROBABLY BE

10:14AM 25   TELLING THE GOVERNMENT, YOU NEED TO TELL THESE FOLKS TO RAMP IT

| 10:14AM | 1 | UP BECAUSE WE NOW HAVE A TRIAL DATE. |
| 10:14AM | 2 | MR. DOWNEY:  YEAH.  AND I EXPECT, YOUR HONOR, THAT |
| 10:14AM | 3 | WE'LL BE ABLE TO WORK WITH THE GOVERNMENT AND EITHER AGREE ON |
| 10:14AM | 4 | OR COME CLOSE TO AGREEING ON A PROPOSED SCHEDULE THAT CONFORMS |
| 10:14AM | 5 | WITH THE TRIAL DATE. |
| 10:14AM | 6 | AND I WOULD SAY WE'LL LIKELY BE ASKING THE COURT TO BE |
| 10:14AM | 7 | ATTENTIVE TO THAT RULE 16 CUTOFF. |
| 10:14AM | 8 | THE COURT:  SURE.  OKAY. |
| 10:14AM | 9 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 10:15AM | 10 | THE COURT:  LET ME ASK YOUR COLLEAGUES. |
| 10:15AM | 11 | MR. CAZARES:  YOUR HONOR, MR. BALWANI AGREES WITH |
| 10:15AM | 12 | MR. DOWNEY THAT AUGUST IS LIKELY BETTER, LESS FOR OUR SCHEDULE, |
| 10:15AM | 13 | BUT ALSO I'VE TRIED CASES IN THE SUMMER TIME AND JURORS ALSO |
| 10:15AM | 14 | HAVE VACATION PLANS.  JULY TENDS TO BE VERY DIFFICULT TO SECURE |
| 10:15AM | 15 | A LONG-TERM VOIR DIRE IN FEDERAL COURT. |
| 10:15AM | 16 | SO I WOULD CONCUR THAT AUGUST MAKES SENSE.  IF WE START ON |
| 10:15AM | 17 | THE 28TH, THAT WOULD AT LEAST AVOID SOME OF THE JUROR VACATION |
| 10:15AM | 18 | ISSUES THAT OFTEN COME UP. |
| 10:15AM | 19 | THE COURT:  I'M SORRY.  WHEN YOU SAY, "START," ARE |
| 10:15AM | 20 | YOU SUGGESTING START EVIDENCE OR START THE JURY SELECTION? |
| 10:15AM | 21 | MR. CAZARES:  I THINK TO THE EXTENT THAT WE START |
| 10:15AM | 22 | THE JURY SELECTION AT THE END OF JULY, I DON'T THINK -- I THINK |
| 10:15AM | 23 | THAT WOULD LIKELY AVOID MOST JUROR VACATION ISSUES.  I THINK |
| 10:15AM | 24 | THAT'S THE GOAL IN SOME WAYS, TRY TO AVOID THEIR HOLIDAY |
| 10:15AM | 25 | VACATIONS AND TRY TO AVOID MAYBE SOME OF THEIR SUMMER VACATIONS |

| | | |
|---|---|---|
| 10:15AM | 1 | AND PLANT THE TRIAL SOMEWHERE RIGHT IN BETWEEN. |
| 10:15AM | 2 | THE COURT:  MS. SCHENK? |
| 10:15AM | 3 | MR. SCHENK:  THAT IS FINE WITH THE GOVERNMENT.  AS I |
| 10:15AM | 4 | UNDERSTAND IT JULY 28TH IS JURY SELECTION? |
| 10:15AM | 5 | THE COURT:  RIGHT, THAT IS THE DATE THAT I WAS |
| 10:16AM | 6 | PROPOSING JULY 28TH.  MY SENSE IS THAT WE'LL PROBABLY BLEED |
| 10:16AM | 7 | INTO THE 29TH. |
| 10:16AM | 8 | BUT WE'LL DO JURY SELECTION THAT WEEK.  THERE WON'T BE ANY |
| 10:16AM | 9 | RECEIPT OF EVIDENCE OR OPENING STATEMENTS UNTIL THE FOLLOWING |
| 10:16AM | 10 | WEEK. |
| 10:16AM | 11 | EVIDENCE AND OPENING STATEMENTS WILL BEGIN AUGUST 4TH, |
| 10:16AM | 12 | AUGUST 4TH. |
| 10:16AM | 13 | IS THAT AGREEABLE? |
| 10:16AM | 14 | MR. SCHENK:  YES. |
| 10:16AM | 15 | MR. DOWNEY:  YES, YOUR HONOR. |
| 10:16AM | 16 | MR. CAZARES:  YES, YOUR HONOR. |
| 10:16AM | 17 | THE COURT:  ALL RIGHT.  THANK YOU.  THEN WE'VE GOT |
| 10:16AM | 18 | OUR TRIAL DATE SET. |
| 10:16AM | 19 | I WON'T SET A PRETRIAL CONFERENCE DATE YET.  WHAT I'D LIKE |
| 10:16AM | 20 | TO DO IS HAVE OUR CONVERSATION ABOUT DISCOVERY, AND THEN IF I |
| 10:16AM | 21 | SET AN INTERIM STATUS DATE, AT WHICH POINT I'LL THEN SET AN |
| 10:16AM | 22 | INTERIM STATUS CONFERENCE DATE DEPENDING ON THE DISCOVERY AS |
| 10:16AM | 23 | YOU SUGGESTED. |
| 10:16AM | 24 | OKAY.  MADAM CLERK, LET'S RESERVE THAT TIME FOR TRIAL IN |
| 10:16AM | 25 | THIS MATTER.  I THINK COUNSEL SAID THREE MONTHS? |

| | | |
|---|---|---|
| 11:34AM | 1 | RESOLVE ANY DISPUTES THAT WE MAY HAVE. |
| 11:34AM | 2 | THE COURT:  THAT'S HELPFUL.  THANK YOU FOR THAT. |
| 11:34AM | 3 | THAT WOULD BE HELPFUL. |
| 11:34AM | 4 | MR. BOSTIC:  ARE WE TALKING ABOUT A PROPOSED |
| 11:34AM | 5 | PRETRIAL CALENDAR? |
| 11:34AM | 6 | MR. WADE:  YES. |
| 11:34AM | 7 | MR. BOSTIC:  I THINK THAT'S A GOOD IDEA. |
| 11:34AM | 8 | THE COURT:  OKAY.  THANK YOU.  I APPRECIATE YOU |
| 11:34AM | 9 | ADVANCING THAT.  ALSO, AFTER YOU HAVE YOUR MEET AND CONFER, AND |
| 11:35AM | 10 | I ANTICIPATE IT'S GOING TO BE JUST EMINENTLY SUCCESSFUL, SHOULD |
| 11:35AM | 11 | YOU NEED TO ADJUST THE 17TH, THAT IS, TO MOVE IT TO TAKE IT OFF |
| 11:35AM | 12 | CALENDAR BECAUSE EVERYONE IS SATISFIED, JUST LET MS. KRATZMANN |
| 11:35AM | 13 | KNOW AND WE CAN MAKE ANY ADJUSTMENTS THAT WE NEED ON THAT. |
| 11:35AM | 14 | THAT'S ALWAYS OPEN. |
| 11:35AM | 15 | MR. WADE:  OPTIMISM SPRINGS ETERNAL, YOUR HONOR. |
| 11:35AM | 16 | THE COURT:  IT DOES.  IT DOES.  EVEN BOSTON WINS A |
| 11:35AM | 17 | WORLD SERIES NOW AND THEN.  ANYTHING CAN HAPPEN.  ANYTHING |
| 11:35AM | 18 | FURTHER? |
| 11:35AM | 19 | MR. BOSTIC:  JUST ONE HOUSEKEEPING MATTER. |
| 11:35AM | 20 | THE COURT:  YES. |
| 11:35AM | 21 | MR. BOSTIC:  I BELIEVE, OF COURSE, THE PARTIES ARE |
| 11:35AM | 22 | EACH CONTINUING THEIR INVESTIGATIONS AND REVIEW OF DISCOVERY. |
| 11:35AM | 23 | IT MIGHT BE APPROPRIATE TO EXCLUDE TIME THROUGH THE TRIAL DATE. |
| 11:35AM | 24 | THE COURT:  THANK YOU.  I WAS GOING TO DO THAT.  WE |
| 11:35AM | 25 | HAVE A TRIAL DATE SET.  IT'S THE COURT'S INTENT THEN, BASED ON |

| | | |
|---|---|---|
| 11:35AM | 1 | OUR DISCUSSION HERE, AND WE'RE ONLY AT DISCOVERY, BUT I WILL |
| 11:36AM | 2 | EXCLUDE TIME TO ALLOW FOR EFFECTIVE PREPARATION OF COUNSEL. |
| 11:36AM | 3 | TIME IS EXCLUDED TO OUR TRIAL DATE FOR BOTH DEFENDANTS IN THIS |
| 11:36AM | 4 | MATTER. |
| 11:36AM | 5 | ALL RIGHT.  THANK YOU VERY MUCH. |
| 11:36AM | 6 | MR. BOSTIC:  THANK YOU, YOUR HONOR. |
| 11:36AM | 7 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 11:36AM | 8 | MR. CAZARES:  THANK YOU. |
| 11:36AM | 9 | THE COURT:  AND WE HAVE AN S.E.C. CASE.  SHOULD WE |
| 11:36AM | 10 | CALL THAT NOW BEFORE EVERYONE LEAVES? |
| 11:36AM | 11 | MS. LAMARCA:  SURE. |
| 11:36AM | 12 | THE COURT:  THANK YOU FOR YOUR PATIENCE. |
| 11:36AM | 13 | MS. LAMARCA:  SUSAN LAMARCA WITH THE S.E.C. |
| 11:36AM | 14 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 11:36AM | 15 | MR. KATZ:  GOOD MORNING, YOUR HONOR.  MARC KATZ FOR |
| 11:36AM | 16 | THE S.E.C. |
| 11:36AM | 17 | THE COURT:  THANK YOU.  NICE TO SEE YOU AGAIN. |
| 11:36AM | 18 | MR. CAZARES:  GOOD MORNING AGAIN, YOUR HONOR, |
| 11:36AM | 19 | STEPHEN CAZARES FOR THE MR. BALWANI. |
| 11:36AM | 20 | THE COURT:  THANK YOU.  GOOD MORNING.  SO WHAT |
| 11:36AM | 21 | SHOULD WE DO IN THIS CASE? |
| 11:36AM | 22 | MS. LAMARCA:  I THINK THE ONLY MATTER THAT WE HAVE |
| 11:36AM | 23 | IN OUR JOINT STATEMENT WAS THE CONFIRMATION OF DATES THAT WE |
| 11:36AM | 24 | AGREED COULD BE PUSHED OUT ANOTHER I THINK IT WAS 120 DAYS THE |
| 11:36AM | 25 | COURT SET FOR THE CUTOFF OF REGULAR DISCOVERY, AND WE CAN HAD |

11:36AM   1    HAD A LATTER EXPERT DISCOVERY DATE AND SO WE WANTED TO MAKE

11:36AM   2    SURE THAT THE COURT WENT AHEAD AND ORDERED THAT DATE.

11:36AM   3              MR. CAZARES:  THAT'S ACCEPTABLE, YOUR HONOR, YES.

11:37AM   4              MS. LAMARCA:  GREAT.  THANK YOU, YOUR HONOR.

11:37AM   5              THE COURT:  THANK YOU VERY MUCH.  GOOD SEEING YOU

11:37AM   6    ALL.  THANK YOU.

11:37AM   7              MR. DOWNEY:  THANK YOU, YOUR HONOR.

11:37AM   8              THE CLERK:  COURT IS ADJOURNED.

11:37AM   9         (COURT CONCLUDED AT 11:37 A.M.)

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18

19         DATED:  JULY 2, 2019

20

21

22

23

24

25

# EXHIBIT C

## NOTICE OF MANUAL FILING

Regarding: EXHIBIT C – Under Seal Document

This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's office.   If you are a participant on this case, this filing will be served in hard-copy shortly.  For information on retrieving this filing directly from the court, please see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

The filing was not e-filed for the following reasons:

EXHIBIT C – Under Seal Document

# EXHIBIT D

## NOTICE OF MANUAL FILING

Regarding: EXHIBIT D – Under Seal Document

This filing is in paper or physical form only, and is being maintained in the case file in the Clerk's office.   If you are a participant on this case, this filing will be served in hard-copy shortly.  For information on retrieving this filing directly from the court, please see the court's main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

The filing was not e-filed for the following reasons:

EXHIBIT D – Under Seal Document

# EXHIBIT E

1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

    UNITED STATES OF AMERICA,          )  CR-18-00258-EJD
6                                      )
                    PLAINTIFF,         )
7                                      )  SAN JOSE, CALIFORNIA
            VS.                        )
8                                      )  APRIL 15, 2020
    ELIZABETH A. HOLMES,               )
9                                      )  PAGES 1 - 34
                    DEFENDANT.         )
10   _____   )

11

12              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
               BEFORE THE HONORABLE EDWARD J. DAVILA
13                 UNITED STATES DISTRICT JUDGE

14

    A P P E A R A N C E S (TELEPHONICALLY):
15

    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
16                         BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
17                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
18
                           BY:  ROBERT S. LEACH
19                             VANESSA BAEHR-JONES
                           1301 CLAY STREET, SUITE 340S
20                         OAKLAND, CALIFORNIA 94612

21         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

    OFFICIAL COURT REPORTER:
23                         IRENE L. RODRIGUEZ, CSR, RMR, CRR
                           CERTIFICATE NUMBER 8074
24
         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER

1

    <u>A P P E A R A N C E S</u> <u>(TELEPHONICALLY):</u> (CONT'D)

2


3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                        BY:  KEVIN M. DOWNEY

4                           LANCE A. WADE
                        725 TWELFTH STREET, N.W.

5                        WASHINGTON, D.C. 20005

6                        LAW OFFICE OF JOHN D. CLINE
                        BY:  JOHN D. CLINE

7                        ONE EMBARCADERO CENTER, SUITE 500
                        SAN FRANCISCO, CALIFORNIA 94111

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                        APRIL 15, 2020

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 10:17 A.M.)

 4             THE COURT:  ALL RIGHT.  THANK YOU.

 5        WELL, LET'S CALL THE CASE OF 18-258, THIS IS UNITED STATES

 6    OF AMERICA VERSUS ELIZABETH HOLMES.  LET ME STATE AT THE OUTSET

 7    THAT WE ARE CONDUCTING THIS HEARING BY WAY OF TELEPHONIC

 8    HEARING.

 9        THE COURT REFERS THE PARTIES TO GENERAL ORDER 74 FROM OUR

10    CHIEF JUDGE PHYLLIS HAMILTON, AND WE RECOGNIZE BECAUSE OF THE

11    CURRENT COVID-19 CRISIS, HEARINGS CURRENTLY CANNOT BE CONDUCTED

12    IN PERSON WITHOUT SERIOUSLY JEOPARDIZING PUBLIC HEALTH AND

13    SAFETY.

14        THE SAN JOSE COURTHOUSE WHERE THIS CASE IS VENUED IS

15    CLOSED AND WILL BE CLOSED CURRENTLY TO MAY 1, AND THAT IS

16    SUBJECT TO REVIEW, OF COURSE.  BUT THE COURTHOUSE IS CURRENTLY

17    CLOSED, AND WE ARE CONDUCTING THIS HEARING OTHERWISE

18    TELEPHONICALLY.

19        I'M GOING TO CALL FOR THE APPEARANCES OF THE PARTIES IN

20    JUST A MOMENT.  BUT LET ME ASK, WE ARE ON A TELEPHONIC HEARING.

21    I'M GOING TO ASK ALL PARTIES WHO ARE NOT SPEAKING TO PLEASE

22    MUTE YOUR PHONES, PLEASE MUTE YOUR PHONES, AND YOU CAN UNMUTE

23    THEM, OF COURSE, WHEN YOU'RE CALLED UPON TO SPEAK OR WHEN YOU

24    ARE SPEAKING, BUT I WOULD OTHERWISE APPRECIATE THAT.

25        LET'S START THEN WITH THE GOVERNMENT.  IF I COULD CAPTURE
```

The timestamps in the left margin: 10:17AM (lines 3-8), 10:18AM (lines 9-24), 10:19AM (line 25).

```
10:19AM   1    THE APPEARANCES FOR THE GOVERNMENT, PLEASE.
10:19AM   2              MR. LEACH:  GOOD MORNING, YOUR HONOR.  THANK YOU.
10:19AM   3        THIS IS ROBERT LEACH ON BEHALF OF THE UNITED STATES AND
10:19AM   4    ALSO ON THE LINE ARE MY COLLEAGUES JEFF SCHENK, JOHN BOSTIC,
10:19AM   5    AND VANESSA BAEHR-JONES.
10:19AM   6              THE COURT:  THANK YOU.  GOOD MORNING.
10:19AM   7        LET ME TURN TO THE DEFENSE.
10:19AM   8              MR. WADE:  GOOD MORNING, YOUR HONOR.
10:19AM   9        IT'S LANCE WADE ON BEHALF OF MS. HOLMES.  WITH ME THIS
10:19AM  10    MORNING ARE KEVIN DOWNEY AND JOHN CLINE.
10:19AM  11        MS. HOLMES IS ALSO PRESENT ON THE LINE.
10:19AM  12              THE COURT:  ALL RIGHT.  MS. HOLMES, ARE YOU THERE?
10:19AM  13              THE DEFENDANT:  YES.  GOOD MORNING, YOUR HONOR.
10:19AM  14              THE COURT:  THANK YOU.  GOOD MORNING.
10:19AM  15        AND, MR. WADE, DO YOU RECOGNIZE THAT VOICE AS THAT OF YOUR
10:19AM  16    CLIENT?
10:19AM  17              MR. WADE:  I DO, YOUR HONOR.
10:20AM  18              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.
10:20AM  19        LET ME ALSO ADD A CAVEAT HERE, MR. WADE.  I DON'T KNOW IF
10:20AM  20    YOU HAVE ENGAGED PROTOCOLS SUCH THAT DURING THIS PROCEEDING IF
10:20AM  21    YOUR CLIENT WISHES TO SPEAK WITH YOU PRIVATELY, SHE MAY DO
10:20AM  22    THAT.  I NEGLECTED TO MENTION THAT AT OUR LAST HEARING, BUT I
10:20AM  23    WANT TO ENSURE THAT MS. HOLMES HAS THE OPPORTUNITY TO SPEAK
10:20AM  24    WITH HER DEFENSE COUNSEL DURING THESE PROCEEDINGS.
10:20AM  25        MY SENSE IS THAT SHE IS NOT SITTING NEXT TO YOU OR DOESN'T
```

10:20AM   1    HAVE PROXIMITY NEXT TO YOU PHYSICALLY OR YOUR DEFENSE TEAM.

10:20AM   2            MR. WADE:  THANK YOU, YOUR HONOR.  THAT IS CORRECT.

10:20AM   3    WE ARE NOT -- NONE OF US ARE IN CLOSE PROXIMITY TO ONE ANOTHER.

10:20AM   4    I APPRECIATE THE COMMENTS OF THE COURT.

10:20AM   5        AS THE COURT KNOWS, MS. HOLMES'S APPEARANCE WAS WAIVED IN

10:20AM   6    THE PRIOR HEARING SO I DON'T BELIVE THAT WAS AN ISSUE NECESSARY

10:20AM   7    TO ADDRESS THEN.

10:21AM   8        FOR PURPOSES OF THIS HEARING, IF WE FIND A TIME WHERE WE

10:21AM   9    BELIEVE WE NEED TO COMMUNICATE WITH HER SEPARATELY, WE'LL NOTE

10:21AM  10    THAT FOR THE COURT AND MAYBE SEEK THE COURT'S INDULGENCE

10:21AM  11    BRIEFLY SO WE CAN DO THAT VIA A SEPARATE LINE OF COMMUNICATION.

10:21AM  12            BUT MY HOPE IS THAT WON'T BE NECESSARY THIS MORNING.

10:21AM  13            THE COURT:  ALL RIGHT.  THANK YOU.

10:21AM  14        BUT I DO WANT YOU TO KNOW THAT I, OF COURSE, WILL AVAIL

10:21AM  15    MYSELF AND YOU OF THE OPPORTUNITY TO SPEAK WITH YOUR CLIENT.

10:21AM  16    WE'LL DO WHAT WE NEED TO DO TO ACCOMPLISH THAT.  I KNOW YOU

10:21AM  17    HAVE OTHER COUNSEL THERE.  PERHAPS -- I DON'T KNOW HOW MANY

10:21AM  18    PHONES MS. HOLMES HAS, BUT PERHAPS YOU CAN TEXT ONE ANOTHER OR

10:21AM  19    SOMETHING.

10:21AM  20        IF YOU NEED TO TAKE A BREAK, JUST LET ME KNOW, AND WE'LL

10:21AM  21    OF COURSE STOP THE PROCEEDINGS AND ALLOW YOU TO CONFER

10:21AM  22    PRIVATELY OFF THE RECORD WITH YOUR CLIENT.

10:21AM  23            MR. WADE:  THANK YOU, YOUR HONOR.

10:21AM  24            THE COURT:  YOU'RE WELCOME.  ALL RIGHT.

10:21AM  25        LET ME -- ANYTHING FURTHER?  ANYTHING ANYONE WISHES TO SAY

| | | |
|---|---|---|
| 10:21AM | 1 | BEFORE WE PROCEED? |
| 10:21AM | 2 | ANYTHING FROM THE GOVERNMENT? |
| 10:21AM | 3 | ANYTHING FROM, MR. WADE, YOUR TEAM? |
| 10:22AM | 4 | MR. LEACH:  NO, YOUR HONOR.  THIS IS ROBERT LEACH |
| 10:22AM | 5 | FOR THE UNITED STATES.  THANK YOU.  NOTHING FOR THE GOVERNMENT. |
| 10:22AM | 6 | MR. WADE:  THIS IS LANCE WADE, YOUR HONOR.  NOTHING |
| 10:22AM | 7 | FROM US. |
| 10:22AM | 8 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:22AM | 9 | LET ME THANK YOU FOR FILING DOCUMENT 372, WHICH IS YOUR |
| 10:22AM | 10 | JOINT STATUS MEMORANDUM, AND I APPRECIATE YOUR DILIGENCE IN |
| 10:22AM | 11 | WORKING TOGETHER AND GETTING THAT FILED IN THE SHORT NOTICE |
| 10:22AM | 12 | THAT THE COURT GAVE YOU.  IT'S VERY HELPFUL. |
| 10:22AM | 13 | WE HAVE -- OF COURSE, WE'RE LOOKING FORWARD TO THE TRIAL |
| 10:22AM | 14 | OF THIS MATTER, AND WE'RE DOING THIS UNDER THE UMBRELLA OF THE |
| 10:22AM | 15 | CURRENT COVID PROCESS THAT CONTINUES TO POSSESS THE NATION, AND |
| 10:22AM | 16 | WE'RE TRYING OUR BEST TO ACCOMMODATE ALL MATTERS IN OUR COURTS |
| 10:22AM | 17 | WITH AN EYE TOWARD MAKING SURE THAT BOTH SIDES, EVERYONE HAS |
| 10:22AM | 18 | FAIR ACCESS TO THE COURTS AND A FAIR HEARING IN THE COURTS. |
| 10:22AM | 19 | I HAVE YOUR SCHEDULES HERE, AND I APPRECIATE OFFERING THE |
| 10:22AM | 20 | SCHEDULES.  I THINK WHAT REALLY WE NEED TO LOOK AT, AND I ENDED |
| 10:23AM | 21 | OUR LAST CONVERSATION WITH THIS, WHAT IS THE REALISTIC SCHEDULE |
| 10:23AM | 22 | FOR A TRIAL IN THIS MATTER? |
| 10:23AM | 23 | I APPRECIATE BOTH SIDE'S EFFORTS TO AT LEAST PRESS FORWARD |
| 10:23AM | 24 | TO SEE IF WE CAN HAVE THE CASE PRESENTED TO A JURY THIS YEAR. |
| 10:23AM | 25 | AND AS I LOOK AT YOUR DOCUMENTS, YOU SUGGEST THAT -- BOTH SIDES |

10:23AM  1      SUGGEST OCTOBER TRIAL DATES.

10:23AM  2           MS. HOLMES, THE DEFENSE SUGGESTS AN OCTOBER 26TH DATE.

10:23AM  3      THE GOVERNMENT DATE IS, PROPOSED DATE IS ABOUT 20 DAYS BEFORE

10:23AM  4      THAT, OCTOBER 6TH.

10:23AM  5           I ALSO APPRECIATE THE FACT THAT YOU RECOGNIZE THAT WE

10:23AM  6      SHOULD HAVE AN INTERIM STATUS HEARING, WHICH I THINK IS WISE.

10:23AM  7      YOU SUGGEST A DATE IN JULY FOR THAT.  I THINK ALL OF THAT IS

10:23AM  8      APPROPRIATE.

10:24AM  9           NOW, I DO NOTE IN THE DOCUMENT IT IS SUGGESTED THAT THE

10:24AM 10      GOVERNMENT MAY SEEK, MAY SEEK A SUPERSEDING INDICTMENT FROM THE

10:24AM 11      GRAND JURY.  AS NOTED, THE GRAND JURY IS IN SUSPENSION RIGHT

10:24AM 12      NOW AND THEY'RE NOT ABLE TO PROCEED BECAUSE OF THE CLOSURE OF

10:24AM 13      OUR COURTHOUSE UNTIL MAY 1ST.  AND SO THAT REMAINS TO BE SEEN.

10:24AM 14      THAT REMAINS TO BE SEEN WHETHER OR NOT A GRAND JURY WOULD

10:24AM 15      INDEED ISSUE A SUPERSEDING INDICTMENT.  I THINK MR. WADE NOTES

10:24AM 16      THAT IN HIS PLEADINGS AS WELL.

10:24AM 17           SO I WANTED TO ASK BOTH SIDES, PLEASE, TO COMMENT ON THE

10:24AM 18      OCTOBER TRIAL DATE AS IT'S SET AND THE REALITIES OF THAT GIVEN

10:24AM 19      THE FACT THAT THE GOVERNMENT MAY SUPERSEDE, AS WELL AS LOOKING

10:24AM 20      FORWARD INTO 2021 FOR A TRIAL DATE IN EARLY 2021.  I KNOW THE

10:25AM 21      DEFENSE SUGGESTS THAT THAT IS A MORE REALISTIC DATE GIVEN NOT

10:25AM 22      JUST THE COVID SITUATION BUT THE FACT THAT THERE MIGHT BE A

10:25AM 23      SUPERSEDING INDICTMENT FILED.

10:25AM 24           MR. LEACH, YOUR TEAM WAS VERY THOROUGH IN YOUR SIDE OF

10:25AM 25      THE -- YOUR PORTION OF DOCUMENT 372, THE JOINT MEMORANDA, BUT I

10:25AM  1    DID WANT TO GIVE YOU AN OPPORTUNITY TO SPEAK FURTHER ON THAT.

10:25AM  2    SO WHAT ARE YOUR THOUGHTS ON THIS?

10:25AM  3              MR. LEACH:  THANK YOU, YOUR HONOR.  I APPRECIATE

10:25AM  4    THAT.  THIS IS ROBERT LEACH.

10:25AM  5         WE BELIEVE AN OCTOBER DATE IS REALISTIC REGARDLESS OF

10:25AM  6    WHETHER THE CURRENT CHARGING INSTRUMENT IS SUPERSEDED.

10:25AM  7         I WOULD NOTE THAT IT'S APRIL 15TH.  WE ARE --

10:25AM  8              THE COURT:  YOU KNOW, LET'S -- MR. LEACH, WE'VE

10:26AM  9    PAUSED FOR A MOMENT BECAUSE THE AT&T LINE THAT WE HAVE,

10:26AM  10   REGRETTABLY, IT DOES INDICATE WHEN PEOPLE SIGN ON AND OFF, AND

10:26AM  11   WE'RE TREATED TO A LOVELY LULLABY OF BEATS.

10:26AM  12        WE'RE TRYING TO LOOK AT OTHER TECHNOLOGY THAT PERMITS US

10:26AM  13   TO ELIMINATE THAT, BUT REGRETTABLY, WE DON'T HAVE IT IN PLACE

10:26AM  14   FOR THIS HEARING.  I APOLOGIZE FOR THAT.

10:26AM  15             MR. LEACH:  THANK YOU, YOUR HONOR.

10:26AM  16        I AM GOING TO CHOOSE TO HOPE THAT PEOPLE WERE JOINING THE

10:26AM  17   LINE RATHER THAN LEAVING THE LINE WHEN I WAS SPEAKING.

10:26AM  18        AS I WAS SAYING, IT'S APRIL 15TH TODAY.  WE ARE SIX MONTHS

10:26AM  19   AWAY FROM OCTOBER.  I DON'T THINK IT'S UNUSUAL FOR THE

10:26AM  20   GOVERNMENT TO SUPERSEDE A CHARGING INSTRUMENT, AND, OF COURSE,

10:26AM  21   THAT'S A DECISION THAT IS RESERVED FOR THE GOVERNMENT.

10:26AM  22        IN MOST CASES WHEN THE GOVERNMENT DOES THAT, THE FIRST

10:27AM  23   TIME THAT THE DEFENSE LEARNS ABOUT IT IS WHEN THE GRAND JURY

10:27AM  24   ELECTS TO RETURN THE INDICTMENT.

10:27AM  25        GIVEN THE COVID SITUATION, WE WANTED TO AVOID THAT, WHICH

10:27AM 1    IS WHY WE PROPOSED PROCEEDING BY SUPERSEDING INFORMATION AND

10:27AM 2    PROVIDING THE DRAFT SUPERSEDING INFORMATION TO THE DEFENSE SO

10:27AM 3    THE DEFENSE HAD AT LEAST THE GOVERNMENT'S PERSPECTIVE OF WHAT

10:27AM 4    IT INTENDED TO DO.

10:27AM 5        I WOULD NOTE THAT THE DEFENDANTS MOVED TO DISMISS THE

10:27AM 6    INDICTMENTS IN DECEMBER OF 2019.  THEY COULD HAVE MOVED TO DO

10:27AM 7    THAT EARLIER AND ELECTED NOT TO DO THAT.

10:27AM 8        THE COURT RULED ON THE MOTION TO DISMISS IN LATE FEBRUARY,

10:27AM 9    AND I DON'T THINK IT IS UNREASONABLE OR CAN COME AS A SURPRISE

10:27AM 10   TO ANYBODY THAT THE GOVERNMENT MIGHT REACT TO THE DISMISSAL OF

10:27AM 11   CERTAIN COUNTS.

10:27AM 12       SO I THINK THAT ADDRESSES A LITTLE BIT OF WHY I DON'T

10:28AM 13   THINK ANY SUPERSEDING INSTRUMENT SHOULD COME AS A SURPRISE.

10:28AM 14       I ALSO THINK IT'S A BIT OF AN OVERSTATEMENT TO SAY THAT

10:28AM 15   THE PROPOSED CHANGES THE GOVERNMENT IS PURSUING REALLY CHANGE

10:28AM 16   THE TRIAL IN THIS CASE OR REALLY CHANGE THE PERSPECTIVE ON THE

10:28AM 17   CASE.

10:28AM 18       I DO NOT ANTICIPATE ANY NEW SUBSTANTIAL DISCOVERY.  I

10:28AM 19   THINK WHATEVER DISCOVERY THE GOVERNMENT PRODUCED, I THINK WE

10:28AM 20   HAVE ALREADY PRODUCED THE VAST BULK OF IT AND THE REMAINDER

10:28AM 21   WOULD BE QUITE NEGLIGIBLE.

10:28AM 22       I KNOW IN THE STATUS CONFERENCE STATEMENT THE DEFENSE

10:28AM 23   MENTIONS WALGREENS.  WALGREENS HAS BEEN IN THE INDICTMENT SINCE

10:28AM 24   DAY ONE.  THEY MENTION SAFEWAY AND DOCUMENTS RELATING TO

10:28AM 25   SAFEWAY HAVE BEEN IN DISCOVERY SINCE THE GOVERNMENT'S INITIAL

10:28AM  1    PRODUCTION.  THEY MENTIONED THE ADDITIONAL BOARD MEMBERS AS

10:29AM  2    INVESTORS, AND THAT ALSO HAS BEEN IN DISCOVERY SINCE THE

10:29AM  3    INITIAL PRODUCTION.

10:29AM  4         I WOULD NOTE THAT MANY OF THE MATTERS THAT THE GOVERNMENT

10:29AM  5    IS PURSUING WAS IN OUR RULE 404(B) NOTICE, WHICH WE'VE BEEN

10:29AM  6    PROVIDING SINCE THE OUTSET BUT SUMMARIZED ON MARCH 6TH, 2020.

10:29AM  7         SO WE WANT THE DEFENSE TO BE PREPARED.  WE DON'T WANT THE

10:29AM  8    DATE TO MOVE.  I JUST DON'T THINK CHANGES IN THE CHARGING

10:29AM  9    INSTRUMENT ARE ANY IMPEDIMENTS TO PROCEEDING IN OCTOBER.

10:29AM 10         AND I THINK IT'S IMPORTANT TO HIGHLIGHT THE CHANGES THAT

10:29AM 11    THE GOVERNMENT PROVIDED TO MS. HOLMES.  I THINK IT'S LIMITED TO

10:29AM 12    EIGHT PARAGRAPHS OF THE INDICTMENT.  WE ADD A SINGLE LINE IN

10:29AM 13    PARAGRAPH 3 THAT SAYS "THERANOS INVESTORS INCLUDED INDIVIDUALS,

10:29AM 14    ENTITIES, CERTAIN BUSINESS PARTNERS, MEMBERS OF ITS BOARD OF

10:30AM 15    DIRECTORS, AND INDIVIDUALS AND ENTITIES WHO INVESTED THROUGH

10:30AM 16    FIRMS FORMED FOR THE EXCLUSIVE PURPOSE OR PRIMARY PURPOSE OF

10:30AM 17    INVESTING IN THERANOS'S SECURITIES."

10:30AM 18         WE THINK THESE WERE INVESTORS WHO WERE ALREADY IN THE CASE

10:30AM 19    AND THAT THIS DOES NOT SUBSTANTIALLY CHANGE THE DYNAMIC OF A

10:30AM 20    TRIAL.

10:30AM 21         THE OTHER CHANGES ARE TO PARAGRAPHS 10, 11, AND 12, AND IT

10:30AM 22    SIMPLY IS CHANGING A DATE FROM 2010 TO 2013.

10:30AM 23         WE AMEND PARAGRAPH 16 TO MAKE A FURTHER ALLEGATION AND TO

10:30AM 24    IDENTIFY CERTAIN BLOOD TESTS THAT ARE SPELLED OUT IN THE BILL

10:30AM 25    OF PARTICULARS.

10:30AM 1        AND WE CHANGE TWO WIRE FRAUD COUNTS IN PARAGRAPHS 18 AND

10:30AM 2    26 FROM PATIENTS 1 AND 2 TO BB AND ET.

10:30AM 3        THAT'S THE EXTENT OF THE CHANGES THAT THE GOVERNMENT IS

10:30AM 4    PURSUING, AND WE DON'T THINK IT ALTERS THE LENGTH OF THE TRIAL

10:30AM 5    OR REALLY CHANGES THE DYNAMIC THAT WE'RE LOOKING AT.

10:30AM 6        WITH RESPECT TO COVID-19, YOUR HONOR, I DON'T HAVE SPECIAL

10:31AM 7    INSIGHT INTO WHAT THE WORLD IS GOING TO LOOK LIKE IN OCTOBER.

10:31AM 8    WE HEARD THE COURT'S COMMENTS AT THE LAST CONFERENCE ABOUT THE

10:31AM 9    DIFFICULTY OF SERVING SUMMONS AND LARGE GATHERINGS.  WE'RE

10:31AM 10   MINDFUL OF THAT.

10:31AM 11       WE THINK OCTOBER SEEMS FAR ENOUGH REMOVED FROM THAT AND

10:31AM 12   THAT THE BETTER COURSE IS TO PLAN FOR THAT AND CHECK IN IN JULY

10:31AM 13   IF WE NEED TO, BUT PLANNING FOR 2021 JUST SEEMS LIKE WE'RE

10:31AM 14   PLANNING FOR FAILURE, AND I THINK THE BETTER COURSE IS TO SET

10:31AM 15   THE DATE, WORK TOWARDS THAT, AND IF AGAINST ALL OF OUR HOPES

10:31AM 16   THE WORLD IS NOT IN A DIFFERENT SITUATION IN OCTOBER, WE CAN

10:31AM 17   REACT TO THAT.

10:31AM 18       BUT SETTING THE DATE OUT IN '21 JUST CREATES TOO MUCH

10:31AM 19   UNCERTAINTY AND IS REALLY PLANNING FOR FAILURE.

10:31AM 20       SO FOR THESE REASONS WE THINK OCTOBER IS REASONABLE, AND

10:32AM 21   WE THINK THE COURT SHOULD ORDER THAT DATE.

10:32AM 22           THE COURT:  ALL RIGHT.  THANK YOU.

10:32AM 23       LET ME ASK IN REGARDS TO THE POTENTIAL SUPERSEDING

10:32AM 24   DOCUMENT, IF THE GRAND JURY DOES RETURN THE COUNTS AND THE

10:32AM 25   CHANGES THAT YOU'RE SEEKING, DO YOU HAVE A THOUGHT AS TO AN

10:32AM 1    INCREASE IN WITNESSES, PRODUCTION OF DOCUMENTS, ET CETERA, HOW

10:32AM 2    THAT MIGHT AFFECT THINGS?

10:32AM 3            MR. LEACH:  IT CERTAINLY DOES NOT CHANGE FROM THE

10:32AM 4    GOVERNMENT'S PERSPECTIVE WHO WE WERE INTENDING TO CALL IN THE

10:32AM 5    TRIAL.  I THINK THE TRIAL STAYS THE SAME LENGTH.

10:32AM 6        I THINK THERE ARE GOING TO BE WALGREENS, SAFEWAY AND BOARD

10:32AM 7    OF DIRECTORS WITNESSES IN THIS TRIAL REGARDLESS, SO I DON'T

10:32AM 8    THINK IT CHANGED THE WITNESSES.

10:32AM 9        AND AS I ALLUDED TO EARLIER, YOUR HONOR, WITH THE

10:32AM 10   EXCEPTION OF POSSIBLY 302'S OR WITNESS STATEMENTS, I DO NOT

10:33AM 11   ANTICIPATE ANY SUBSTANTIAL DISCOVERY, CERTAINLY NOTHING

10:33AM 12   COMPARED TO THE 20 MILLION-PLUS DOCUMENTS THAT HAVE ALREADY

10:33AM 13   BEEN PRODUCED IN THIS CASE.  I THINK ANY REMAINING DISCOVERY

10:33AM 14   WOULD BE VERY, VERY NEGLIGIBLE.

10:33AM 15           THE COURT:  OKAY.  THANK YOU VERY MUCH.  ANYTHING

10:33AM 16   FURTHER THEN?

10:33AM 17           MR. LEACH:  NO, YOUR HONOR.  THANK YOU.

10:33AM 18           THE COURT:  OKAY.  MR. WADE.

10:33AM 19           MR. WADE:  THANK YOU, YOUR HONOR.  THIS IS

10:33AM 20   LANCE WADE ON BEHALF OF MS. HOLMES.

10:33AM 21       I WILL START WHERE THE COURT HAS AND AS THE COURT DIRECTED

10:33AM 22   IN THE PRIOR HEARING WITH THE CURRENT HEALTH DIRECTIVES AND

10:33AM 23   SOME OF OUR THINKING ON THAT AS THE COURT MADE THAT INQUIRY.

10:33AM 24   AND WE, OF COURSE, THANK THE COURT FOR ITS CARE AND CONCERN

10:33AM 25   ABOUT THESE ISSUES AND OF COURSE ITS THE DESIRE TO KEEP ALL

10:33AM  1    TRIAL PARTICIPANTS SAFE THROUGH THIS ENTIRE PROCESS.

10:33AM  2        WE'RE OBVIOUSLY IN UNCHARTERED TERRITORY HERE, YOUR HONOR,

10:34AM  3    BOTH IN OUR DAILY LIVES AND IN OUR CURRENT OCCUPATIONS AND THIS

10:34AM  4    HEARING.

10:34AM  5        I THINK NONE OF US, INCLUDING SOME OF THE LEADING PUBLIC

10:34AM  6    HEALTH EXPERTS, REALLY KNOW WITH ANY DEGREE OF CERTAINTY WHAT

10:34AM  7    THE SECOND HALF OF THIS YEAR WILL LOOK LIKE FROM A HEALTH

10:34AM  8    PERSPECTIVE.

10:34AM  9        NO ONE HAS A CLEAR IDEA OF WHAT CONDUCT WILL BE DEEMED

10:34AM  10   SAFE DURING THAT TIME PERIOD OR WHAT PUBLIC HEALTH AND SOCIAL

10:34AM  11   DISTANCING GUIDANCE MAY BE NEEDED.

10:34AM  12       BY EXTENSION, OF COURSE, IT MAKES IT VERY DIFFICULT FOR

10:34AM  13   US, AND I'M SURE FOR THE COURT, TO KNOW WHETHER THOSE

10:34AM  14   CONDITIONS WILL BE CONDUCIVE TO A LENGTHY JURY TRIAL SUCH AS

10:34AM  15   THE ONE CONTEMPLATED IN THIS MATTER.

10:34AM  16       WHILE THE PARTIES ARE, OF COURSE, YOU KNOW, IN COURT WITH

10:35AM  17   GREAT FREQUENCY, THE COURT IS VASTLY MORE EXPERIENCED IN

10:35AM  18   CONDUCTING ITS OWN PROCEDURES AND RECOGNIZES THE NUMBER OF

10:35AM  19   CHANGES TO COURTROOM PROCEDURES AND PROTOCOLS THAT WILL BE

10:35AM  20   NECESSARY TO TRY AND ADDRESS HEALTH RELATED ISSUES.

10:35AM  21       WE'RE CONFIDENT THAT THE COURT WILL DO THAT AND OF COURSE

10:35AM  22   STAND PREPARED TO ASSIST THE COURT IN ANY WAY THAT WE CAN.

10:35AM  23       THERE'S NOTHING ABOUT THE PARTIES TO THIS CASE OR COUNSEL

10:35AM  24   IN THIS CASE WITH RESPECT TO THESE HEALTH ISSUES THAT MERITS

10:35AM  25   SPECIAL ATTENTION.

10:35AM 1     ALL FUTURE TRIAL PARTICIPANTS IN THIS COURT AND OTHER

10:35AM 2     COURTS ARE GOING TO HAVE TO WRESTLE WITH THIS NEW POST-PANDEMIC

10:35AM 3     WORLD IN HEARINGS AND JURY TRIALS WHEN OTHER COURT PROCEEDINGS

10:36AM 4     RESUME.  AGAIN, WE KNOW THE COURT WILL CONTINUE TO WORK TO

10:36AM 5     PRIORITIZE THE HEALTH AND SAFETY OF ALL OF US WHO APPEAR BEFORE

10:36AM 6     IT AS WE WORK TO ADAPT TO THAT NEW WORLD.

10:36AM 7          THERE ARE CERTAIN CIRCUMSTANCES RELATED TO THIS CASE,

10:36AM 8     HOWEVER, THAT WE THINK HEIGHTEN THE HEALTH RISK.

10:36AM 9          AS THE COURT, AND THE GOVERNMENT UNDOUBTEDLY RECOGNIZED,

10:36AM 10    THERE'S A GREATER RISK OF TRIAL DISRUPTION FROM THE VIRUS IN A

10:36AM 11    TRIAL THAT OCCURS OVER THE COURSE OF 100 DAYS THAN A TRIAL THAT

10:36AM 12    OCCURS OVER THE COURSE OF 1 OR 2.  THAT FLOWS FROM BASIC MATH

10:36AM 13    AND STATISTICAL PROBABILITY.

10:36AM 14         THE CROWDS THAT WILL LIKELY GATHER OUTSIDE OF THE

10:36AM 15    COURTHOUSE IN THIS CASE AND THEN FILL THE COURTROOM, AS THEY

10:36AM 16    HAVE IN NEARLY ALL PRIOR PROCEEDINGS, ADD TO THAT HEALTH RISK.

10:37AM 17         WHAT ALL PARTIES HERE IN THE COURT I AM SURE UNDOUBTEDLY

10:37AM 18    WANT IS AS SAFE AND AS SMOOTH A TRIAL AS POSSIBLE, ONE FREE

10:37AM 19    FROM DISRUPTION.

10:37AM 20         A MISTRIAL IS A REGRETTABLE EVENT IN ANY CIRCUMSTANCES,

10:37AM 21    AND IT'S OF COURSE A MASS OF CONCERN AND A BURDEN FOR ALL

10:37AM 22    INVOLVED WHEN THAT HAPPENS IN A LENGTHY TRIAL LIKE THIS.

10:37AM 23         WE CERTAINLY DON'T THINK IT'S PRUDENT TO START A TRIAL IF

10:37AM 24    THE PUBLIC HEALTH ENVIRONMENT SUGGESTS THAT THERE'S A

10:37AM 25    SUBSTANTIALLY INCREASED RISK OF A MISTRIAL.

10:37AM  1          THIS IS WHY IN OUR DISCUSSIONS WITH THE GOVERNMENT AND IN

10:37AM  2   THE PLEADING THAT WE SAID BEFORE THE COURT AT DOCKET 372, WE

10:37AM  3   ARTICULATED OUR BELIEF EVEN BEFORE THE CONCEPT OF A SUPERSEDING

10:38AM  4   INDICTMENT WAS DISCUSSED THAT IT WOULD BE APPROPRIATE TO DELAY

10:38AM  5   THE TRIAL UNTIL EARLY NEXT YEAR.

10:38AM  6          GIVEN THAT THE GOVERNMENT WAS RELUCTANT TO DO THAT, WE OF

10:38AM  7   COURSE HAVE TRIED TO FIND A WAY WHERE WE CAN MAKE AN

10:38AM  8   ACCOMMODATION THAT WOULD ACCOUNT FOR SOME OF THE PARTICULAR

10:38AM  9   LIMITATIONS AND TRIAL PREPARATION THAT RESULTED FROM THE

10:38AM  10  CURRENT CIRCUMSTANCES.

10:38AM  11         AS THE COURT KNOWS, AND WE'VE DISCUSSED IN PRIOR CALLS,

10:38AM  12  THERE'S MUCH THAT WE CAN CONTINUE TO DO AND WE PLEDGE TO THE

10:38AM  13  COURT THAT WE ARE CONTINUING TO WORK DILIGENTLY WITH ALL TASKS

10:38AM  14  THAT WE CAN DO IN OUR CURRENT REMOTE WORKING ENVIRONMENT, BUT

10:38AM  15  OF COURSE THERE ARE MANY TASKS THAT WE CAN'T DO TO PREPARE FOR

10:38AM  16  TRIAL THAT REQUIRE ACTIVITIES THAT ARE ILL-ADVISED OR ILLEGAL

10:38AM  17  GIVEN THE CURRENT CIRCUMSTANCES AND PUBLIC HEALTH CONDITIONS.

10:39AM  18         OUR SUGGESTION INITIALLY FOR THE 90-DAY DELAY WAS DONE

10:39AM  19  WITH THE BELIEF -- TO LATE OCTOBER -- WAS DONE WITH THE BELIEF

10:39AM  20  THAT A DELAY OF THAT PERIOD WOULD HELP US ACCOUNT FOR SOME OF

10:39AM  21  THE LIMITATIONS THAT WE ARE UNDER IN THE REMOTE WORK AND

10:39AM  22  CURRENT HEALTH ENVIRONMENT.  THAT'S WHY WE PROPOSED THAT

10:39AM  23  SCHEDULE.

10:39AM  24         WE RECOGNIZED WHEN WE PROPOSED THAT SCHEDULE, AND WE

10:39AM  25  BELIEVE IT'S TRUE WITH ANY SCHEDULE THAT STARTS THAT LATE, THAT

10:39AM 1    THAT COULD PUSH US INTO A SITUATION WHERE WE'RE WORKING THROUGH

10:39AM 2    THE HOLIDAYS.

10:39AM 3        WE, OF COURSE, IN NORMAL CIRCUMSTANCES WOULDN'T CONSIDER

10:39AM 4    PROPOSING SOME STEPS, BUT WE RECOGNIZE THAT WE ARE IN

10:40AM 5    EXTRAORDINARY TIMES, AND WE RECOGNIZE THAT IN TIMES SUCH AS

10:40AM 6    THAT SACRIFICES ARE NEEDED.  AND ENSURING THAT OUR CLIENT HAS

10:40AM 7    AN APPROPRIATE DEFENSE, WE'RE PREPARED TO WORK THROUGH THE

10:40AM 8    HOLIDAYS AS NEEDED IF THAT'S WHAT ENDS UP HAPPENING.

10:40AM 9        NOW, OF COURSE THAT, THAT PROPOSAL CHANGED WHEN THE

10:40AM 10   GOVERNMENT INFORMED US AT THIS POINT THAT IT INTENDED TO SEEK A

10:40AM 11   SUPERSEDING INDICTMENT.

10:40AM 12       AND WHILE I APPRECIATE THAT COUNSEL FOR THE GOVERNMENT

10:40AM 13   DOESN'T BELIEVE IT WILL SIGNIFICANTLY INCREASE THEIR TRIAL

10:40AM 14   PREPARATION TIME, I WILL MAKE CLEAR TO THE COURT THAT IF THE

10:40AM 15   GRAND JURY CHOOSES TO RETURN A SUPERSEDING INDICTMENT ALONG THE

10:41AM 16   LINES MR. LEACH HAS DISCLOSED THAT HE INTENDS TO SEEK, WHILE

10:41AM 17   THE CHANGES IN LANGUAGE MAY BE LIMITED AND DESIGNED TO DO

10:41AM 18   MINIMAL VIOLENCE TO THE WORDS WITHIN THE INDICTMENT, THE

10:41AM 19   FUNDAMENTAL SCOPE OF THE INDICTMENT CHANGES SIGNIFICANTLY.

10:41AM 20       THE INDICTMENT, THE PROPOSED INDICTMENT, OR THE POTENTIAL

10:41AM 21   SUPERSEDING INDICTMENT THAT MR. LEACH HAS STATED THAT THE

10:41AM 22   GOVERNMENT INTENDS TO SEEK SIGNIFICANTLY EXPANDS THE TIME

10:41AM 23   PERIOD THAT HAS BEEN THE FOCUS OF THE CASE.  THE COMPANY DURING

10:41AM 24   THE 2010 TO 2013 TIME PERIOD WAS IN A FUNDAMENTALLY DIFFERENT

10:41AM 25   STATE OF OPERATIONS THAN IT WAS DURING THE LATER TIME PERIOD

```
10:41AM   1    THAT WAS IDENTIFIED IN THE PREVIOUS CONSPIRACY PERIOD.  THE --
10:42AM   2    ALTHOUGH THE GOVERNMENT HAS IN DRAFTING, IT APPEARS, INTENT ON
10:42AM   3    CHANGING THE DEFINITION OF INVESTORS AND THE SCOPE OF THE
10:42AM   4    INVESTOR RELATED CONSPIRACY TO INCLUDE OTHER PARTIES, IT DOES
10:42AM   5    NOT APPEAR TO US, BASED ON WHAT HAS BEEN REPRESENTED BY THE
10:42AM   6    GOVERNMENT, THAT THOSE ARE REALLY INVESTOR RELATIONSHIPS AT
10:42AM   7    ALL.
10:42AM   8         IN FACT, THOSE RELATIONSHIPS, RELATIONSHIPS LIKE THE
10:42AM   9    WALGREENS RELATIONSHIP, THE SAFEWAY RELATIONSHIP, RELATIONSHIPS
10:42AM  10    WITH BOARD OF DIRECTORS ARE FUNDAMENTALLY DIFFERENT
10:42AM  11    RELATIONSHIPS THAN INVESTOR RELATIONSHIPS.
10:42AM  12         WALGREENS, SAFEWAY ARE CONTRACTUAL COUNTERPARTIES WITH
10:42AM  13    THERANOS.  THE COURSE OF DEALING BETWEEN THERANOS AND THOSE
10:42AM  14    CONTRACTUAL COUNTERPARTIES IS FUNDAMENTALLY DIFFERENT IN NATURE
10:43AM  15    AND SCOPE FROM THE INVESTOR-RELATED RELATIONSHIPS THAT WERE
10:43AM  16    OUTLINED IN THE PRIOR INDICTMENT.
10:43AM  17         THE INTERACTIONS WITH THE BOARD OF DIRECTORS ALSO
10:43AM  18    SIMILARLY ARE INTERACTIONS BETWEEN MANAGEMENT AND BOARD MEMBERS
10:43AM  19    AMONG FIDUCIARIES WITHIN THE COMPANY AND ARE OF A COMPLETELY
10:43AM  20    DIFFERENT NATURE FROM THE ALLEGATIONS THAT WERE SET FORTH IN
10:43AM  21    THE PRIOR INDICTMENT.
10:43AM  22         THEY REQUIRE A DIFFERENT LEVEL OF PREPARATION, THEY RAISE
10:43AM  23    DIFFERENT LEGAL ISSUES, WHICH WILL REQUIRE ADDITIONAL MOTIONS
10:43AM  24    SHOULD THE GRAND JURY RETURN AN INDICTMENT, AND FUNDAMENTALLY
10:43AM  25    CHANGE THE NATURE OF OUR TRIAL PREPARATION.
```

10:43AM 1    I'LL SAY WITH A BIT OF FRUSTRATION THAT I WILL CONFESS TO

10:43AM 2    THE COURT, ALTHOUGH MR. LEACH SUGGESTS THAT SOME OF THESE

10:44AM 3    CHANGES FLOW FROM THE ORDER OF THE COURT AND THE MOTIONS TO

10:44AM 4    DISMISS, WHICH OF COURSE WERE BRIEFED ON THE SCHEDULE THAT WAS

10:44AM 5    AGREED TO BY ALL PARTIES AND PRESENTED AND APPROVED BY THE

10:44AM 6    COURT, WHILE THOSE CHANGES MAY HAVE RESULTED WITH RESPECT TO

10:44AM 7    THE NEW COUNTS RELATED TO THE PATIENTS, THE ORDER OF THE COURT

10:44AM 8    HAS LITTLE OR NOTHING TO DO WITH THE EXPANSION OF THE

10:44AM 9    INVESTOR-RELATED CONSPIRACY TO INCLUDE NEW THEORIES, NEW

10:44AM 10   COUNTERPARTIES, NEW FIDUCIARIES, THAT HAVE LONG BEEN KNOWN TO

10:44AM 11   THE GOVERNMENT AND WHICH THE GOVERNMENT HAS PREVIOUSLY CHOSEN

10:44AM 12   NOT TO CHARGE.

10:44AM 13       WHY IT TOOK UNTIL THIS POINT TO ADD THOSE CHARGES TO THIS

10:44AM 14   CASE IS UNCLEAR TO THE DEFENSE.  IT'S OF SOME FRUSTRATION GIVEN

10:45AM 15   ALL OF THE WORK THAT WE HAVE DONE THUS FAR.

10:45AM 16       AS THE COURT KNOWS, THERE ARE OVER 20 MILLION PAGES OF

10:45AM 17   DOCUMENTS IN THIS CASE.  MANY OF THOSE DOCUMENTS HAVE BEEN

10:45AM 18   REVIEWED WITH THE CURRENT INDICTMENT IN MIND.  MANY OF THOSE

10:45AM 19   DOCUMENTS WILL NOW NEED TO BE REVIEWED.  MANY OF THE WITNESSES

10:45AM 20   WILL NEED TO BE REASSESSED.  THE HUNDREDS OF WITNESS STATEMENTS

10:45AM 21   WILL NEED TO BE REVIEWED AND ADDRESSED WITH THE NATURE OF THESE

10:45AM 22   ALLEGATIONS IN MIND, AGAIN, SHOULD THE GRAND JURY CHOOSE TO

10:45AM 23   RETURN THIS INDICTMENT AND SHOULD THE CHARGES SURVIVE A MOTION

10:45AM 24   TO DISMISS.

10:45AM 25       THAT'S A SUBSTANTIAL AMOUNT OF WORK ABOVE AND BEYOND THE

10:45AM  1    WORK THAT HAS PREVIOUSLY BEEN BEFORE US IN THIS MATTER.

10:46AM  2        FORTUNATELY, PERHAPS MAYBE ONE OF THE FEW UNFORTUNATE

10:46AM  3    THINGS THAT HAS COME FROM THE CURRENT HEALTH CRISIS, WE BELIEVE

10:46AM  4    THAT WE CAN STILL DO THAT WITHIN THIS AMOUNT OF TIME IN ADVANCE

10:46AM  5    OF EARLY 2021 WHEN WE THINK IT'S SENSIBLE TO PROCEED WITH THIS

10:46AM  6    MATTER IN ANY EVENT.

10:46AM  7        BUT WE THINK THE MINIMIZATION OF THESE ALLEGATIONS BY THE

10:46AM  8    GOVERNMENT IS ONE WITH WHICH WE RESPECTFULLY DISAGREE AND ONE

10:46AM  9    THAT REQUIRES SIGNIFICANTLY ADDITIONAL TIME.

10:46AM  10   THERE -- IT IS TRUE THAT SOME OF THESE RELATIONSHIPS WERE

10:46AM  11   PREVIOUSLY ADDRESSED WITHIN THE INDICTMENT.  WALGREENS, FOR

10:46AM  12   EXAMPLE, IS SET FORTH IN THE INDICTMENT WITH THE ALLEGATION

10:46AM  13   BEING THAT SOME OF THE DEALINGS WITH RESPECT TO WALGREENS WERE

10:46AM  14   MISREPRESENTED TO OTHER INVESTORS.

10:46AM  15   THE NEW ALLEGATIONS WITHIN THE INDICTMENT ARE TOTALLY

10:46AM  16   DIFFERENT.  THERANOS IS SUGGESTING THAT WALGREENS ITSELF MAY

10:47AM  17   HAVE BEEN DEFRAUDED IN SOME WAY.

10:47AM  18   WE, OF COURSE, WILL AGGRESSIVELY CONTEST THOSE

10:47AM  19   ALLEGATIONS, BUT THE TYPE OF PREPARATION REQUIRED TO DO SO IS

10:47AM  20   FUNDAMENTALLY DIFFERENT FROM THE PREPARATION THAT WE HAVE

10:47AM  21   ENGAGED IN THUS FAR.

10:47AM  22   I'LL PAUSE THERE AND ASK IF THE COURT HAS ANY INQUIRIES,

10:47AM  23   I'M HAPPY TO ADDRESS THEM.

10:47AM  24        THE COURT:  ALL RIGHT.  THANK YOU, MR. WADE.  THANK

10:47AM  25   YOU FOR OUTLINING THE CHALLENGES THAT THE DEFENSE MIGHT FACE

10:47AM 1    SHOULD THE GOVERNMENT DECIDE TO SEEK A SUPERSEDING INDICTMENT.

10:47AM 2    I'M GOING TO ASK PEOPLE TO PLEASE MUTE YOUR PHONES, PLEASE

10:47AM 3    MUTE YOU'RE PHONES.

10:47AM 4    THANK YOU, MR. WADE.

10:48AM 5    ONE OF THE THOUGHTS AND CONCERNS THAT I HAVE ABOUT THE

10:48AM 6    INFORMATION FROM THE GOVERNMENT THAT THEY MAY SEEK TO SUPERSEDE

10:48AM 7    THE INDICTMENT IS THE TIMING OF THAT.  AND THIS IS AGAIN

10:48AM 8    SPECULATION, ASSUMING THAT OUR COURT IS BACK IN OPERATION, THAT

10:48AM 9    IS, THE COURTHOUSE IS OPEN MAY 1ST, IN MAY THE GOVERNMENT WOULD

10:48AM 10   THEN, I'M SURE THEY WOULD PROCEED WITH ALL HASTE TO GET THE

10:48AM 11   GRAND JURY CONVENED AND PRESENT THIS AND THEN WE WOULD HAVE A

10:48AM 12   RETURN.

10:48AM 13   I DON'T KNOW WHAT THE TIMELINE OF THAT POTENTIALLY IS, BUT

10:48AM 14   OF COURSE BASED ON MR. WADE'S COMMENTS, AND IT'S COMMON

10:48AM 15   KNOWLEDGE THAT WE WOULD EXPECT THAT ANY SUPERSEDING INDICTMENT

10:48AM 16   WOULD BE LOOKED AT BY THE DEFENSE WITH CLOSE SCRUTINY AND THEN

10:48AM 17   POTENTIAL MOTIONS TO DISMISS OR SOME OTHER MOTIONS MIGHT ARISE

10:48AM 18   FROM THAT.

10:48AM 19   YOU'VE GIVEN ME A PROPOSED SCHEDULE IN DOCUMENT 372, AND

10:48AM 20   I'M JUST CURIOUS ABOUT WHAT -- LET'S JUST ASSUME THAT A

10:49AM 21   SUPERSEDING INDICTMENT IS RECEIVED ALONG THE LINES THAT THE

10:49AM 22   GOVERNMENT HAS PROPOSED.

10:49AM 23   I WONDER FROM BOTH SIDES, CAN YOU GIVE ME YOUR THOUGHTS

10:49AM 24   ABOUT MOTION PRACTICE IN REGARDS TO THAT AND HOW THAT, THAT IS,

10:49AM 25   HOW THAT MOTION PRACTICE FITS INTO THE CURRENT PROPOSED

10:49AM  1    SCHEDULES THAT YOU'VE PRESENTED?

10:49AM  2        MR. LEACH, I'M NOT SURE YOU HAVE SUFFICIENT INFORMATION TO

10:49AM  3    ANSWER THAT QUESTION BECAUSE THE MOTION PRACTICE WOULD BE

10:49AM  4    GENERATED, OF COURSE, BY THE DEFENSE, BUT I'M HAPPY TO START

10:49AM  5    WITH YOU IF YOU HAVE SOME THOUGHTS ON THAT.

10:49AM  6        MR. LEACH:  THANK YOU, YOUR HONOR.

10:49AM  7        THAT'S RIGHT, I DON'T HAVE A SENSE OF WHAT MOTIONS THEY

10:49AM  8    INTEND, AND SO I'M NOT REALLY IN A POSITION TO TALK ABOUT THE

10:49AM  9    TIMING OF THAT.

10:50AM  10       I DO THINK UNDER THE SCHEDULE PROPOSED BY THE GOVERNMENT

10:50AM  11   WE HAVE MOTIONS IN LIMINE NOT STARTING UNTIL AUGUST, AND WE

10:50AM  12   HAVE A STATUS CONFERENCE FOR JULY 13TH.

10:50AM  13       I WOULD CERTAINLY THINK THAT -- I MEAN, WE HAVE BEEN AS

10:50AM  14   TRANSPARENT ABOUT -- BY PROVIDING THE SUPERSEDING, DRAFT

10:50AM  15   SUPERSEDING INFORMATION ABOUT WHAT THE GOVERNMENT'S INTENTIONS

10:50AM  16   ARE.

10:50AM  17       I WOULD THINK THAT THE DEFENSE HAS IN MIND WHAT THEY WANT

10:50AM  18   TO DO.

10:50AM  19       I THINK IF WE HAVE A MID-JULY, LATE JULY STATUS CONFERENCE

10:50AM  20   THAT SHOULD AFFORD SUFFICIENT TIME FOR THEM TO DRAFT THE

10:50AM  21   GOVERNMENT'S RESPONSE ANYTHING THAT THEY THINK IS APPROPRIATE.

10:50AM  22   I REALLY DON'T HAVE A SENSE OF WHAT THEY HAVE IN MIND, BUT WE

10:50AM  23   WOULD BE PREPARED TO PROCEED UNDER WHATEVER SCHEDULE THE COURT

10:50AM  24   THINKS IS APPROPRIATE FOR THIS.

10:50AM  25       THE COURT:  OKAY.  THANK YOU.

10:51AM 1      THAT'S A THOUGHT THAT CAME TO MIND, MR. WADE -- I'LL NEXT

10:51AM 2   CALL UPON YOU -- IS IF THE GOVERNMENT PROCEEDED -- WELL,

10:51AM 3   THERE'S A LOT OF "IF'S" HERE.  ASSUMING WE'RE BACK IN THE

10:51AM 4   COURTHOUSE IN MAY AND THE GOVERNMENT IS DILIGENT ABOUT

10:51AM 5   CONVENING A GRAND JURY, AND THE GRAND JURY DOES RETURN A

10:51AM 6   SUPERSEDING DOCUMENT AS THEY'VE INDICATED, AND AS THEY'VE

10:51AM 7   PROVIDED TO YOU, THE NEXT THOUGHT I HAVE REGARDING SCHEDULING

10:51AM 8   IS WHAT ARE YOUR THOUGHTS ABOUT GETTING MOTION PRACTICE AS TO

10:51AM 9   THAT SUPERSEDING DOCUMENT COMPLETED BY THE JULY, ASSUMING WE

10:51AM 10  FOLLOW A JULY, A LATE JULY STATUS CONFERENCE?

10:51AM 11      MR. WADE:  YOUR HONOR, OF COURSE THE WAY THAT WE

10:51AM 12  USUALLY APPROACH A SCHEDULE IN A CASE IS TO START WITH WHEN WE

10:52AM 13  THINK BASED UPON THE INDICTMENT WHEN A TRIAL DATE -- WHEN WE

10:52AM 14  COULD BE READY FOR TRIAL AND WE TRY TO WORK BACK AND SET A

10:52AM 15  LOGICAL AND SEQUENTIAL PATH BETWEEN THAT TRIAL DATE AND TO HIT

10:52AM 16  ALL OF THESE ITEMS.

10:52AM 17      A SUPERSEDING INDICTMENT THAT IS RETURNED, IF THE GRAND

10:52AM 18  JURY RETURNS IN MAY, AND I'LL NOTE THAT I DO HAVE MATTERS IN

10:52AM 19  OTHER COURTS WHERE GRAND JURIES WERE INITIALLY EXTENDED UNTIL

10:52AM 20  MAY, BUT THAT'S NOW BEEN -- THOSE GRAND JURIES HAVE NOW BEEN

10:52AM 21  DEFERRED FURTHER INTO JULY.  BUT IF IT COMES IN MAY, YOU KNOW,

10:52AM 22  WE WOULD OBVIOUSLY NEED TIME TO ADDRESS TO CONSIDER THAT.

10:52AM 23      WE'LL, OF COURSE, BASED ON THE REPRESENTATIONS OF THE

10:52AM 24  GOVERNMENT, BEGIN THINKING ABOUT WAYS IN WHICH WE MIGHT

10:52AM 25  APPROACH SUCH CHARGES IF THE GRAND JURY DECIDES TO CONVENE THEM

10:53AM 1      OR TO RETURN THEM.

10:53AM 2           BUT THERE ARE A NUMBER OF OTHER, YOU KNOW, RELATED ISSUES

10:53AM 3      THAT COME INTO THE CASE AS A RESULT OF THAT ACTIVITY THAT WOULD

10:53AM 4      ALSO NEED TO BE ACCOMMODATED IN THE SCHEDULE.

10:53AM 5           THERE'S A POTENTIAL NEED FOR SUBSTANTIAL ADDITIONAL WORK

10:53AM 6      THAT WOULD BE REQUIRED BY THE DEFENSE BASED ON INFORMATION

10:53AM 7      PROVIDED TO THE GOVERNMENT AS TO WHAT THEY MIGHT SEEK.  WE

10:53AM 8      BELIEVE WE MAY NEED TO RETAIN AN EXPERT OR MORE GIVEN THE

10:53AM 9      NATURE OF SOME OF THE ALLEGATIONS.

10:53AM 10          MANY OF THE PEOPLE WHO THE GOVERNMENT HAS IDENTIFIED, MANY

10:53AM 11     OF THE WITNESSES WHO HAVE BEEN IDENTIFIED WHO WOULD BE

10:53AM 12     IMPLICATED BY AN INDICTMENT OF THIS TYPE WE HAVE NOT

10:53AM 13     SUBPOENAED, WE HAVE NOT SOUGHT DOCUMENTS, WE HAVE NOT DONE WHAT

10:54AM 14     WE WOULD DO IN AN ORDINARY COURSE IF THESE ALLEGATIONS WERE IN

10:54AM 15     THE INDICTMENT.

10:54AM 16          SO OF COURSE NOW IT'S NOT PRUDENT GIVEN HEALTH CONDITIONS

10:54AM 17     TO PROCEED WITH SOME OF THOSE SUBPOENAS UNLESS PEOPLE WERE TO

10:54AM 18     ACCEPT THEM VOLUNTARILY.

10:54AM 19          SO THERE ARE A NUMBER OF THINGS THAT NEED TO HAPPEN.  I

10:54AM 20     THINK WE UNDOUBTEDLY COULD TRY TO MEET AND CONFER WITH THE

10:54AM 21     GOVERNMENT AND WOULD IN ANY COURSE ONCE WE DETERMINE A

10:54AM 22     REASONABLE TRIAL DATE TO TRY TO SET A SENSIBLE SCHEDULE, BUT I

10:54AM 23     THINK TRYING TO INJECT THIS INTO THESE ALREADY DIFFICULT

10:54AM 24     CIRCUMSTANCES WOULD NECESSITATE A DELAY IN THE VIEW OF THE

10:54AM 25     DEFENSE.

| | | |
|---|---|---|
| 10:55AM | 1 | (PAUSE IN PROCEEDINGS.) |
| 10:55AM | 2 | MR. WADE:  IS THE COURT STILL THERE? |
| 10:55AM | 3 | THE COURT:  I AM STILL HERE, BUT YOU KNOW WHAT, I |
| 10:55AM | 4 | DID NOT HAVE THE GOOD SENSE TO UNMUTE MY PHONE. |
| 10:55AM | 5 | THANK YOU.  SO THANK YOU, MR. WADE.  THANK YOU FOR THAT. |
| 10:55AM | 6 | WHAT I HEAR YOU SAYING IS THAT SHOULD THE GOVERNMENT |
| 10:55AM | 7 | PROCEED AND SECURE A SUPERSEDING INDICTMENT ALONG THE LINES OF |
| 10:55AM | 8 | THE PROPOSED DRAFT THAT THEY HAVE PROVIDED YOU, IT WOULD CHANGE |
| 10:55AM | 9 | THE COMPLEXION OF YOUR -- OBVIOUSLY OF WHAT YOU NEED TO DO. |
| 10:55AM | 10 | YOU WOULD LOOK AT THE CASE AND DETERMINE WHETHER YOU CAN GO |
| 10:55AM | 11 | FORWARD WITH FILING MOTIONS, YOUR MOTIONS PRIOR TO THE JULY |
| 10:55AM | 12 | DATE AND THE STATUS DATE THAT WE HAVE. |
| 10:56AM | 13 | THAT'S WHAT I'M TRYING TO SEE IF WE CAN, IF WE CAN GET |
| 10:56AM | 14 | MOTION PRACTICE SCHEDULED AND HEARD BY THAT DATE, THAT WOULD BE |
| 10:56AM | 15 | IDEAL AT LEAST FOR MOVING FORWARD. |
| 10:56AM | 16 | I WAS PROBING TO SEE IF THAT -- OF COURSE YOU CAN'T |
| 10:56AM | 17 | PREDICT ANYTHING AND YOU DON'T HAVE BENEFIT OF ANYTHING IN |
| 10:56AM | 18 | FRONT OF YOU.  I DON'T KNOW IF THAT'S SOMETHING THAT WE CAN DO. |
| 10:56AM | 19 | MR. WADE:  YEAH.  MY APOLOGIES.  IT'S DIFFICULT |
| 10:56AM | 20 | SOMETIMES TO NOT INTERRUPT THE COURT IN THIS FORUM.  SO MY |
| 10:56AM | 21 | APOLOGIES TO THE COURT. |
| 10:56AM | 22 | THE COURT:  NO, NO, NOT AT ALL. |
| 10:56AM | 23 | MR. WADE:  THE -- WE, OF COURSE, WOULD WORK TO |
| 10:56AM | 24 | PROCEED WITH MOTIONS DIRECTED AT ANY NEW INDICTMENT AS QUICKLY |
| 10:56AM | 25 | AS WE POSSIBLY COULD, YOUR HONOR, JUST TO BE CLEAR. |

10:57AM  1        MY OTHER COMMENTS ARE JUST DIRECTED -- AND TO THE EXTENT

10:57AM  2   THAT AN INDICTMENT WAS RETURNED, YOU KNOW, REASONABLY IN

10:57AM  3   ADVANCE OF THE JULY STATUS CONFERENCE, WE WOULD CERTAINLY

10:57AM  4   ENDEAVOR TO TRY TO FIT BRIEFING IN IN ADVANCE OF THAT.

10:57AM  5        MY OTHER COMMENTS WERE MERELY DIRECTED -- MEANT TO DIRECT

10:57AM  6   THE COURT'S ATTENTION TO THE FACT THAT THERE IS OBVIOUSLY MUCH

10:57AM  7   MORE THAT IS NEEDED HERE BEYOND JUST THE BRIEFING ON THE MOTION

10:57AM  8   TO DISMISS.

10:57AM  9        THE COURT:  SURE.  THANK YOU.

10:57AM 10   ALL RIGHT.  THANK YOU.  LET ME ASK, MR. LEACH, ANYTHING

10:57AM 11   YOU WOULD LIKE TO SAY ABOUT THE SCHEDULING ISSUE REGARDING THE

10:57AM 12   MOTIONS AND THE SUPERSEDING INDICTMENT?

10:57AM 13        MR. LEACH:  NO, YOUR HONOR.  JUST THAT I

10:57AM 14   FUNDAMENTALLY DISAGREE THAT THIS IS A SEA CHANGE.  THIS IS THE

10:57AM 15   SAME THEORY AND THE SAME CASE WITH DISCOVERY THAT THEY'VE HAD

10:58AM 16   FOR THE BETTER PART OF A YEAR AND A HALF.

10:58AM 17        THE DEFENSE IS IN A MUCH BETTER POSITION TO DESCRIBE ITS

10:58AM 18   PREPARATION THAN WE ARE, BUT WE FUNDAMENTALLY JUST DO NOT SEE

10:58AM 19   THIS AS THE SEA CHANGE THAT IS DESCRIBED.  AND -- BUT BEYOND

10:58AM 20   THAT, I HAVE NOTHING FURTHER.

10:58AM 21        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

10:58AM 22   MR. WADE, ANYTHING ELSE YOU WOULD LIKE TO ADD?

10:58AM 23        MR. WADE:  NO, YOUR HONOR.

10:58AM 24        THE COURT:  ALL RIGHT.  WELL, THANK YOU VERY MUCH.

10:58AM 25   THE STATUS HEARING TODAY WAS SCHEDULED TO DETERMINE WHAT

10:58AM 1    WE SHOULD DO GOING FORWARD IN LIGHT OF THE COVID CRISIS THAT

10:58AM 2    THE NATION FACES AND IN LIGHT OF THE LIMITATIONS THAT THAT

10:58AM 3    BRINGS TO THIS COURT TO PROVIDE SAFE ENVIRONMENTS FOR ALL

10:58AM 4    PARTIES TO THE CASE AS WELL AS THE PUBLIC AND ALL OF OUR COURT

10:58AM 5    PERSONNEL AS WELL.

10:59AM 6         WE HAVE, AS I THINK SOMEONE SAID, WE'RE IN UNCHARTERED

10:59AM 7    WATERS NOW AND TERRITORY NOW IN REGARDS TO HOW TO MANAGE OUR

10:59AM 8    CALENDARS.  WE KNOW THAT THE PRIME DIRECTIVE IS TO ENSURE THAT

10:59AM 9    ALL PARTIES RECEIVE FAIR TREATMENT IN THE COURTS, BUT THE REAL

10:59AM 10   PRIME DIRECTIVE NOW ADDENDUM TO THAT IS TO PROCEED WITH CAUTION

10:59AM 11   AND SAFETY TO MAKE SURE THAT EVERYONE WHO ENTERS OUR COURTS ARE

10:59AM 12   SAFE, FIRST OF ALL.  THAT WE OPEN OUR COURTS, WHEN WE OPEN OUR

10:59AM 13   COURTS, THAT THEY ARE IN A SAFE ENVIRONMENT FOR ALL, ALL

10:59AM 14   CONCERNED, INCLUDING THE PUBLIC, THE PUBLIC WHO WE WOULD CALL

10:59AM 15   AS JURORS TO SIT IN THE MATTER.  AND WE WANT TO MAKE SURE THAT

10:59AM 16   THE JURORS HAVE CONFIDENCE THAT THE COURTROOMS THAT THEY'RE

10:59AM 17   SITTING IN --

10:59AM 18             THE CLERK:  EXCUSE ME, YOUR HONOR.  I BELIEVE

10:59AM 19   SOMEONE NEEDS TO MUTE THEIR PHONE.  THERE'S INTERRUPTION GOING

11:00AM 20   ON.  IF YOU COULD PLEASE MUTE YOUR PHONE.

11:00AM 21             THE COURT:  YES, YES.  PLEASE MUTE YOUR PHONES,

11:00AM 22   PLEASE.  THANK YOU.

11:00AM 23             THE CLERK:  SORRY, YOUR HONOR.

11:00AM 24             THE COURT:  THANK YOU.  THANK YOU, MS. KRATZMANN.

11:00AM 25        WE NEED TO MAKE SURE THE ENVIRONMENT IS SAFE FOR ALL

11:00AM 1    PARTIES, WE NEED TO ENSURE TO OUR JURORS, THE PUBLIC THAT WE

11:00AM 2    CALL, THE COMMUNITY THAT IS CALLED TO HEAR MATTERS, THAT THE

11:00AM 3    COURT CAN ENSURE THEIR SAFETY SUCH THAT THEY HAVE CONFIDENCE IN

11:00AM 4    THEIR JUSTICE SYSTEM AND THEY HAVE CONFIDENCE THAT THEY CAN

11:00AM 5    FOCUS ON THE ISSUES BEFORE THEM IN A TRIAL SUCH THAT THEY CAN

11:00AM 6    PROVIDE A FAIR HEARING FOR ALL SIDES.  THAT'S A CRITICAL

11:00AM 7    COMPONENT OF THE WORK THAT THEY DO AND WHAT WE WANT TO ENSURE

11:00AM 8    TO THE JURY IN THIS CASE.

11:00AM 9        I DO THINK THAT LOOKING AT OUR SCHEDULE AND THIS COURT HAS

11:00AM 10   BEEN, AND I KNOW COUNSEL HAVE CALLED ME ON IT, IS I'VE BEEN A

11:01AM 11   LITTLE AGGRESSIVE ABOUT THE TRIAL SCHEDULE ON THIS.  I DO THINK

11:01AM 12   THAT THE SCHEDULE FOR JULY AS I INITIALLY PROPOSED IS NOT

11:01AM 13   REALISTIC NOW GIVEN THE CIRCUMSTANCES THAT WE FACE.  I JUST

11:01AM 14   DON'T THINK THAT THAT'S A REALITY.

11:01AM 15       I'D LIKE TO THINK THAT, AND I HOPE THAT TRIAL IN OCTOBER

11:01AM 16   OF THIS YEAR IS SOMETHING THAT WE COULD, WE COULD ENGAGE.  I

11:01AM 17   KNOW EVERY DAY THE NEWS CHANGES ABOUT COVID AND ABOUT WHETHER

11:01AM 18   OR NOT THINGS WILL BEGIN TO REACH NORMALITY AND THAT DOESN'T

11:01AM 19   MEAN THAT WE'LL HAVE ANY NORMAL SENSE OF OUR SOCIETY IN

11:01AM 20   OCTOBER.  WE HOPE WE DO, BUT SHELTER IN PLACE REMAINS AND IN

11:01AM 21   MANY STATES, AND CERTAINLY IN THE ENVIRONMENT AND JURISDICTION

11:01AM 22   OF THE COURTHOUSE.

11:01AM 23       I'D LIKE TO -- WHAT I'D LIKE TO DO IS LOOK AT THE OCTOBER

11:02AM 24   DATE, THE LATER OCTOBER DATE THAT WAS PROPOSED AS A POTENTIAL

11:02AM 25   TRIAL DATE, AND I THINK IT WISE, AND I'M GRATEFUL TO BOTH SIDES

11:02AM  1    HERE, TO SUGGEST THAT WE HAVE AN INTERIM STATUS CONFERENCE IN

11:02AM  2    JULY AT LEAST CALENDARED.  THAT'S NOT TO SAY THAT WE WON'T

11:02AM  3    ADVANCE THAT IF NEEDED, BUT AT LEAST CALENDARED IN JULY SO WE

11:02AM  4    CAN LOOK FORWARD AND SEE WHAT AND HOW BEST WE CAN FORECAST

11:02AM  5    WHETHER OR NOT THE OCTOBER DATE IS A REALITY OR WHETHER OR NOT

11:02AM  6    IT MAKES MORE SENSE TO LOOK BEYOND THE FALL AND INTO THE NEW

11:02AM  7    YEAR, EARLY NEW YEAR.

11:02AM  8        WHAT I THINK WE HAVE ALL READ AND FROM EXPERTS, AND THERE

11:02AM  9    ARE MANY OF THEM ON THIS CRISIS THAT WE FACE, THE INFORMATION

11:02AM 10    AT LEAST THAT THE COURT HAS READ AND SOME OF IT HAS INDICATED

11:02AM 11    THAT LIKE THE NORMAL FLU VIRUS THAT SEEMS TO COME AROUND IN THE

11:03AM 12    WINTER AND FALL, THERE'S AN EXPECTATION THAT THIS COVID MAY

11:03AM 13    RETURN IN THE FALL IN SOME MANNER AND WE SHOULD BE COGNIZANT OF

11:03AM 14    THAT.

11:03AM 15        WE'RE SO GRATEFUL FOR OUR HEALTH CARE PROFESSIONALS AND

11:03AM 16    ALL OF THOSE SCIENTISTS AND BIOENGINEERS WHO ARE WORKING

11:03AM 17    DILIGENTLY TO TRY AND TO FIND SOME TYPE OF SERUM THAT CAN

11:03AM 18    PROTECT ALL OF US, A VACCINE THAT CAN PROTECT ALL OF US FROM

11:03AM 19    THIS DISEASE.

11:03AM 20        BUT WE ALL KNOW THAT TAKES TIME, IT DOES TAKE TIME.

11:03AM 21        WE DON'T KNOW -- WE CAN'T FORECAST WHAT THE HEALTH

11:03AM 22    CONDITIONS OF THIS COUNTRY WILL BE IN RELATION TO COVID.  WE

11:03AM 23    ALL, WE JUST ARE IN DESPAIR WHEN WE READ ABOUT THE LOSS THAT

11:03AM 24    THIS COVID HAS CAUSED ACROSS THE COUNTRY.  WE REALLY ARE -- OUR

11:04AM 25    HEARTS ARE IN PAIN WHEN WE READ ABOUT NEW YORK, DETROIT, AND

11:04AM 1    OTHER CITIES, LOUISIANA, AND OTHER CITIES.  SO WE'RE MINDFUL OF

11:04AM 2    THAT.  AND THAT PRESSES UPON ALL OF US AS WE LOOK FORWARD TO

11:04AM 3    WHAT WE CAN DO WITH OUR CASE.

11:04AM 4        SO LET ME SAY WHAT I THINK WHAT I'D LIKE TO DO IS TO SET A

11:04AM 5    DATE FOR TRIAL, RESCHEDULE THE TRIAL DATE TO THE OCTOBER 26TH

11:04AM 6    DATE.  I HAVE YOUR SCHEDULE IN DOCUMENT 372.  I DO THINK THAT

11:04AM 7    WE SHOULD MAKE SOME CHANGES TO THAT SCHEDULE GOING FORWARD.

11:04AM 8        FOLKS, IF YOU HAVE YOUR SCHEDULES IN FRONT OF YOU, I'D

11:04AM 9    LIKE TO GO DOWN SOME OF THE DATES AND DEADLINES AND EVENTS THAT

11:04AM 10   YOU HAVE AND SUGGEST SOME CHANGES TO THAT.

11:05AM 11           THE CLERK:  YOUR HONOR, MAY I JUST INTERJECT A

11:05AM 12   MOMENT?

11:05AM 13           THE COURT:  YES.  YES.

11:05AM 14           THE CLERK:  THIS IS ADRIANA.  COULD WE SET THE

11:05AM 15   OCTOBER DATE TO OCTOBER 27TH DATE TO TUESDAY?

11:05AM 16           THE COURT:  YES, YES.  OCTOBER 27TH AT 9:00 A.M. FOR

11:05AM 17   JURY SELECTION.

11:05AM 18        GOING DOWN.  THIS IS FOUND ON PAGES 4 AND 5 OF 372.  I DO

11:05AM 19   NOTE THAT LET'S START THAT THERE'S AGREEMENT ON THE FIRST

11:05AM 20   SERVICE OF THE SUMMARY PURSUANT TO RULE 16, AND I'M NOT GOING

11:05AM 21   TO DISTURB THAT AT THIS POINT.  WE MAY HAVE SOME OTHER COMMENT

11:05AM 22   ON THAT IN A MOMENT.

11:06AM 23        THE GOVERNMENT IN IT'S RULE 16(A) DISCLOSURES WHICH BEGINS

11:06AM 24   ON LINE 26, I THINK THE DATE, WHAT I'D LIKE TO DO IS TO ADOPT

11:06AM 25   THE GOVERNMENT DATE ON THAT.

| 11:06AM | 1 | I'M LOOKING IN THAT BOX, AND PERHAPS YOU CAN HELP ME, |

11:06AM 1    I'M LOOKING IN THAT BOX, AND PERHAPS YOU CAN HELP ME,

11:06AM 2    COUNSEL, LINE 27 AND 28 IT INDICATES THE GOVERNMENT SERVE

11:06AM 3    WITNESSES AND EXHIBITS LISTS FOR CASE-IN-CHIEF.

11:06AM 4        WAS THAT THE SAME PROPOSED DATE?

11:06AM 5            MR. LEACH:  YEAH, THAT WAS INTENDED TO BE JUNE 26TH,

11:06AM 6    2020.

11:06AM 7            THE COURT:  OKAY.  AS WELL AS PAGE 5 BEGINNING AT

11:06AM 8    LINE 1, THE 801 --

11:06AM 9            MR. LEACH:  YES.

11:06AM 10            THE COURT:  OKAY.  THANK YOU.

11:06AM 11        THEN ALSO ON THE RULE 16B DISCLOSURES ON LINE 3 I'LL ADOPT

11:06AM 12    THE GOVERNMENT'S DATE TO THE LATER DATE OF JULY 6TH ON THAT.

11:06AM 13        THE NEXT BOX, WHICH APPEARS ON LINE 4 THROUGH 6, I'M GOING

11:07AM 14    TO DEFER THAT FOR NOW.

11:07AM 15        ACTUALLY, THE FIRST BOX THAT I TALKED ABOUT, I'M SORRY TO

11:07AM 16    GO BACK, ON PAGE 4, LINE 23, I'M GOING TO DEFER THAT AS WELL

11:07AM 17    FOR NOW.

11:07AM 18        RETURNING TO PAGE 5, NOW WE'RE AT LINE 6 THROUGH 8, THE

11:07AM 19    DEFENSE SERVICE OF WITNESS AND EXHIBIT LISTS, I'M GOING TO

11:07AM 20    ADJUST THAT DATE TO JULY 24TH.

11:07AM 21        AND THEN THE STATUS CONFERENCE WILL BE SET FOR,

11:07AM 22    MS. KRATZMANN, JULY 20TH, JULY 20TH, AT 10:00 A.M.

11:07AM 23        NOW, AT THAT TIME ON JULY 20TH, WE WILL HAVE A BETTER IDEA

11:08AM 24    AS TO WHETHER WE'RE GOING TO GO FORWARD WITH THE OCTOBER TRIAL

11:08AM 25    DATE OR WHETHER WE NEED TO ADJUST THE SCHEDULE IN SOME OTHER

| 11:08AM | 1 | MANNER. |
|---------|---|---------|

11:08AM  1    MANNER.

11:08AM  2        I'M NOT GOING TO -- AT THIS TIME I'M NOT GOING TO

11:08AM  3    ADOPT ANY OF THE OTHER -- YOU HAVE OTHER DATES THAT BEGIN IN

11:08AM  4    AUGUST AND OTHERS AND MOTIONS IN LIMINES AND THOSE DATES.  I'D

11:08AM  5    LIKE TO DEFER THOSE DATES.  I THINK WE CAN WAIT UNTIL THE

11:08AM  6    JULY 20TH DATE TO SEE WHETHER OR NOT AND HOW WE'RE GOING TO

11:08AM  7    PROCEED AND GO FORWARD THERE.

11:08AM  8        SO I'D LIKE YOU TO -- OBVIOUSLY YOU'RE GOING TO PREPARE

11:08AM  9    THE CASE AS BEST YOU CAN, I KNOW THAT, BUT I DON'T THINK YOU

11:08AM  10   NEED TO PAY ATTENTION TO THOSE ITEMS THAT APPEAR FROM LINES 10

11:08AM  11   DOWN TO 19 AT THIS POINT.  I'D LIKE YOU TO FOCUS YOUR EFFORTS,

11:08AM  12   OF COURSE, ON THE OTHER WORK THAT YOU NEED TO DO, AND WE CAN

11:08AM  13   LOOK AT THOSE REMAINING ISSUES, THE IN LIMINE AND OTHER ISSUES,

11:09AM  14   ON THE JULY 20TH STATUS CONFERENCE DATE.

11:09AM  15       ANY QUESTIONS FROM EITHER SIDE ABOUT THIS ADJUSTMENT?

11:09AM  16           MR. LEACH:  NOT FROM THE GOVERNMENT, YOUR HONOR.

11:09AM  17   THAT'S CLEAR TO US.  THANK YOU.

11:09AM  18           THE COURT:  MR. WADE?

11:09AM  19           MR. WADE:  NO, YOUR HONOR.  I TAKE IT AS WE GET

11:09AM  20   CLOSER TO THESE EVENTS WE'LL PERHAPS HAVE COMMUNICATION THROUGH

11:09AM  21   MS. KRATZMANN AS TO WHETHER THESE PROCEEDINGS WILL BE

11:09AM  22   TELEPHONIC OR IN PERSON?

11:09AM  23       OBVIOUSLY, I THINK WE ALL HOPE WE'RE IN A SITUATION WHERE

11:09AM  24   THEY'RE IN PERSON, BUT WE WILL SEE WHAT IS PRUDENT AT THAT

11:09AM  25   TIME.

| | |
|---|---|
| 11:09AM | 1 |
| 11:09AM | 2 |
| 11:09AM | 3 |
| 11:09AM | 4 |
| 11:10AM | 5 |
| 11:10AM | 6 |
| 11:10AM | 7 |
| 11:10AM | 8 |
| 11:10AM | 9 |
| 11:10AM | 10 |
| 11:10AM | 11 |
| 11:10AM | 12 |
| 11:10AM | 13 |
| 11:10AM | 14 |
| 11:10AM | 15 |
| 11:10AM | 16 |
| 11:10AM | 17 |
| 11:10AM | 18 |
| 11:10AM | 19 |
| 11:11AM | 20 |
| 11:11AM | 21 |
| 11:11AM | 22 |
| 11:11AM | 23 |
| 11:11AM | 24 |
| 11:11AM | 25 |

THE COURT:  YES.  THANK YOU, MR. WADE.

I'M HOPEFUL THAT WE CAN, THAT THINGS CHANGE IN OUR COUNTRY AND IN OUR REGIONS THAT WE COULD HAVE IN-PERSON MEETINGS.

AGAIN, I'LL JUST SAY I ALWAYS ENJOY ALL OF YOU IN THE COURTROOM.  YOU'RE ALL PROFESSIONAL, AND I APPRECIATE THAT.  I KNOW THAT YOU'RE TRIAL LAWYERS AND THE PLACE YOU WORK IS THE COURTROOM, NOT YOUR LIVING ROOMS, KITCHENS, OR HOME OFFICES, WHICH OF COURSE YOU DO THAT IN THE EVENINGS AND INTO THE WEE HOURS OF THE NIGHT, I RECOGNIZE THAT.

BUT THE PLACE YOU DO YOUR BUSINESS IS IN THE COURTROOM, AND ALL OF YOU HAVE GREAT FLUENCY FOR THE COURTROOM, AND SO I AGREE.  I HOPE THAT WE CAN OPEN OUR COURTROOMS SOON, AND WE ALL CAN ENJOY EACH OTHER'S COMPANY.

WE'RE WORKING ON WHAT WE NEED TO DO TO ESTABLISH VIDEO CONFERENCING IN THE INTERIM, AND SO IF WE NEED IT, HOPEFULLY WE'LL HAVE SOMETHING SET UP FOR FUTURE STATUS CONFERENCES IF WE CAN.

ALSO, AS TO ANY OTHER MATTERS, AS YOU POINT OUT, MR. WADE, MS. KRATZMANN WILL BE ABLE TO COMMUNICATE ANY OTHER SCHEDULE CHANGES FOR ANY OTHER MATTERS AS THEY NEED TO COME UP, AND I DON'T KNOW IF THAT ANSWERS YOUR QUESTION.  I HOPE IT DOES.

MR. WADE:  IT DOES.  THANK YOU, YOUR HONOR.

THE COURT:  ALL RIGHT.  ANYTHING ELSE THAT EITHER SIDE WISHES TO RAISE AT THIS TIME?

MR. LEACH, ANYTHING FROM THE GOVERNMENT'S TEAM?

11:11AM 1        MR. LEACH:  YOUR HONOR, IN LIGHT OF THE CHANGE OF

11:11AM 2    THE TRIAL DATE FROM OCTOBER -- WELL, FROM THE END OF JULY TO

11:11AM 3    OCTOBER 27TH, 2020, I THINK IT WOULD BE APPROPRIATE FOR THE

11:11AM 4    COURT TO EXCLUDE TIME FOR EFFECTIVE PREPARATION IN LIGHT OF THE

11:11AM 5    COVID CRISIS AND EVERYTHING THAT MR. WADE HAS DESCRIBED.

11:11AM 6        THE COURT:  THANK YOU.  I WAS GOING TO TURN TO

11:11AM 7    MR. WADE WHEN HIS COMMENTS -- DURING HIS COMMENTS AND ASK HIM

11:11AM 8    IF HE AGREES THAT TIME SHOULD BE EXCLUDED FOR EFFECTIVE

11:11AM 9    PREPARATION OF COUNSEL TO THE NEW TRIAL OF OCTOBER 26TH, 2020.

11:12AM 10        MR. WADE?

11:12AM 11        MR. WADE:  YOUR HONOR, WE DO.  I BELIEVE IT ALSO MAY

11:12AM 12    BE COVERED BY ONE OF THE COURT'S GENERAL ORDERS AS WELL, BUT IN

11:12AM 13    ANY EVENT, WE DO AGREE.

11:12AM 14        THE COURT:  ALL RIGHT.  THANK YOU THEN.

11:12AM 15        ANYTHING FURTHER FROM YOU, MR. WADE, AND YOUR TEAM?

11:12AM 16        MR. WADE:  NOT AT THIS TIME, YOUR HONOR.  THANK YOU.

11:12AM 17        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

11:12AM 18    YOU ALL FOR YOUR ATTENTION HERE.  WE WILL -- AND LET ME SAY, IF

11:12AM 19    EITHER PARTY WISHES TO HAVE ANOTHER STATUS OR A STATUS

11:12AM 20    CONFERENCE OR BRING ANYTHING TO THE COURT'S ATTENTION, PLEASE

11:12AM 21    FEEL FREE TO DO SO.

11:12AM 22        I'VE SET THE JULY 20TH DATE AS THE CALENDARED STATUS DATE

11:12AM 23    SO WE ALL HAVE AN EVENT HORIZON TO FOCUS ON.  BUT SHOULD THE

11:12AM 24    NEED ARISE OR A CHANGE OR SOMETHING HAPPENS, PLEASE CONTACT

11:12AM 25    MS. KRATZMANN, AND WE WILL OF COURSE ENGAGE THE STATUS OR OTHER

| | | |
|---|---|---|
| 11:12AM | 1 | HEARING AS NEEDED IF THE PARTIES REQUIRE. |
| 11:12AM | 2 | ALL RIGHT.  THANK YOU.  LET ME THANK YOU ALL AGAIN.  IT'S |
| 11:12AM | 3 | GOOD TO HEAR YOUR VOICES.  I LOOK FORWARD TO THE OPPORTUNITY |
| 11:13AM | 4 | WHEN I CAN SEE YOUR FACES PERSONALLY AND WE CAN INVITE YOU BACK |
| 11:13AM | 5 | TO A SAFE COURTROOM AND I CAN ENJOY YOUR COMPANY AND ALL OF |
| 11:13AM | 6 | YOUR ASSISTANCE IN THIS INTERESTING CASE. |
| 11:13AM | 7 | PLEASE BE SAFE, YOU AND YOUR FAMILIES.  I WISH YOU THE |
| 11:13AM | 8 | BEST AND PLEASE BE SAFE AND WELL, AND WE'LL TALK AGAIN SOON. |
| 11:13AM | 9 | ANYTHING FURTHER, MS. KRATZMANN? |
| 11:13AM | 10 | THE CLERK:  NO, YOUR HONOR.  THANK YOU. |
| 11:13AM | 11 | THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL DISENGAGE |
| 11:13AM | 12 | THE LINE NOW.  THANK YOU, COUNSEL. |
| 11:13AM | 13 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 11:13AM | 14 | MR. LEACH:  THANK YOU VERY MUCH, YOUR HONOR. |
| 11:13AM | 15 | (TELEPHONIC COURT CONCLUDED AT 11:13 A.M.) |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        IRENE RODRIGUEZ, CSR, RMR, CRR
          CERTIFICATE NUMBER 8074

17

18        DATED:  JULY 20, 2020

19

20

21

22

23

24

25

# EXHIBIT F

1

2                        UNITED STATES DISTRICT COURT

3                      NORTHERN DISTRICT OF CALIFORNIA

4                            SAN JOSE DIVISION

5

         UNITED STATES OF AMERICA,              )
6                                               )   CR-18-00258-EJD
                           PLAINTIFF,           )
7                                               )   SAN JOSE, CALIFORNIA
                    VS.                         )
8                                               )   JULY 20, 2020
         ELIZABETH A. HOLMES AND RAMESH         )
9        SUNNY BALWANI,                         )   PAGES 1 - 95
                                                )
10                         DEFENDANTS.          )
         _____       )
11

12
                         TRANSCRIPT OF ZOOM PROCEEDINGS
13                  BEFORE THE HONORABLE EDWARD J. DAVILA
                         UNITED STATES DISTRICT JUDGE
14

15       A P P E A R A N C E S BY ZOOM:

16       FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                                BY:  JOHN C. BOSTIC
17                                   JEFFREY B. SCHENK
                                150 ALMADEN BOULEVARD, SUITE 900
18                              SAN JOSE, CALIFORNIA 95113

19                              BY:  ROBERT S. LEACH
                                     VANESSA BAEHR-JONES
20                              1301 CLAY STREET, SUITE 340S
                                OAKLAND, CALIFORNIA 94612
21
                 (APPEARANCES CONTINUED ON THE NEXT PAGE.)
22

23       OFFICIAL COURT REPORTER:
                                 IRENE L. RODRIGUEZ, CSR, RMR, CRR
24                               CERTIFICATE NUMBER 8074

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                     TRANSCRIPT PRODUCED WITH COMPUTER

2

```
1        A P P E A R A N C E S BY ZOOM: (CONT'D)

2

3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                             BY:  KEVIN M. DOWNEY
4                                 LANCE A. WADE
                                  PATRICK J. LOOBY
5                                 KATHERINE A. TREFZ
                                  AMY M. SAHARIA
6                            725 TWELFTH STREET, N.W.
                             WASHINGTON, D.C. 20005
7
                             LAW OFFICE OF JOHN D. CLINE
8                            BY:  JOHN D. CLINE
                             ONE EMBARCADERO CENTER, SUITE 500
9                            SAN FRANCISCO, CALIFORNIA 94111

10

11   FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                             BY:  JEFFREY COOPERSMITH
11                                AMANDA MCDOWELL
12                           701 FIFTH AVENUE, SUITE 5600
                             SEATTLE, WASHINGTON 98104
13
                             BY:  STEPHEN A. CAZARES
14                           77 SOUTH FIGUEROA STREET, SUITE 3200
                             LOS ANGELES, CALIFORNIA 90017
15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    JULY 20, 2020

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 10:27 A.M.)

 4            THE COURT:  THANK YOU.  GOOD MORNING EVERYONE.

 5    THANK YOU ALL FOR YOUR PATIENCE IN MANEUVERING WITH OUR

 6    TECHNOLOGY HERE.  WE, OF COURSE, ARE IN THE BREAD BASKET OF

 7    SILICON VALLEY AND OF COURSE EVERYTHING WORKED CORRECTLY THIS

 8    MORNING.  IT'S GOOD TO SEE EVERYONE.

 9            LET ME START OFF AND WHY DON'T WE CAPTURE APPEARANCES OF

10    EVERYONE.  THIS IS 18-258, UNITED STATES VERSUS

11    ELIZABETH HOLMES AND UNITED STATES VERSUS RAMESH "SUNNY"

12    BALWANI.

13            WHY DON'T WE START WITH THE GOVERNMENT.  WHO APPEARS FOR

14    THE GOVERNMENT TODAY?

15            MR. LEACH:  GOOD MORNING, YOUR HONOR.

16        THIS IS ROBERT LEACH ON BEHALF OF THE UNITED STATES, AND

17    JEFF SCHENK, JOHN BOSTIC, AND VANESSA BAEHR-JONES.

18            THE COURT:  THANK YOU.  I'M GOING TO ASK YOU TO MOVE

19    YOUR MICROPHONE CLOSER TO YOU, PLEASE.

20            MR. LEACH:  IS THAT BETTER?

21            THE COURT:  YES, MUCH BETTER.  THANK YOU.

22        AND LET'S TURN THEN TO MS. HOLMES.

23            MR. WADE:  GOOD MORNING, YOUR HONOR.

24        LANCE WADE ON BEHALF OF MS. HOLMES WHO IS PRESENT WITH ME

25    THIS MORNING, AND I'LL NOTE FOR THE RECORD ALSO ABLE TO
```

4

| | | |
|---|---|---|
| 10:28AM | 1 | COMMUNICATE WITH US SEPARATELY VIA TELEPHONE IF WE NEED TO |
| 10:28AM | 2 | CONFER WITH HER PRIVATELY.  SHE IS IN A DIFFERENT LOCATION. |
| 10:28AM | 3 | MY COLLEAGUES KEVIN DOWNEY, AMY SAHARIA, AND KATIE TREFZ |
| 10:28AM | 4 | ARE WITH ME, AS IS MR. PATRICK LOOBY WHO I THINK HAS PROBABLY |
| 10:28AM | 5 | BEEN BEHIND US BEFORE, YOUR HONOR, BUT THIS IS THE FIRST TIME |
| 10:28AM | 6 | APPEARING BEFORE YOU, SO I'D LIKE TO INTRODUCE YOU TO |
| 10:28AM | 7 | MR. LOOBY. |
| 10:28AM | 8 | THE COURT:  THANK YOU.  GOOD MORNING, MR. LOOBY. |
| 10:29AM | 9 | THANK YOU ALL FOR BEING HERE. |
| 10:29AM | 10 | MR. WADE, LET ME JUST ASK YOU, SIR, THE COVID CRISIS HAS |
| 10:29AM | 11 | CAUSED US TO ENGAGE VIDEO CONFERENCING PROCEEDINGS FOR VARIOUS |
| 10:29AM | 12 | HEARINGS IN LIGHT OF THE COURT'S DESIRE TO MITIGATE APPEARANCE |
| 10:29AM | 13 | IN THE COURTROOMS FOR PUBLIC SAFETY AS WELL AS ALL OF YOUR |
| 10:29AM | 14 | SAFETY. |
| 10:29AM | 15 | DO I HAVE YOUR CLIENT'S CONSENT TO PARTICIPATE IN THIS |
| 10:29AM | 16 | HEARING VIA VIDEO CONFERENCE? |
| 10:29AM | 17 | MR. WADE:  YOU DO, YOUR HONOR. |
| 10:29AM | 18 | THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH. |
| 10:29AM | 19 | THANK YOU, MS. HOLMES. |
| 10:29AM | 20 | LET ME TURN TO MR. BALWANI THEN.  IF I COULD GET THE |
| 10:29AM | 21 | APPEARANCES FOR MR. BALWANI. |
| 10:29AM | 22 | MR. COOPERSMITH:  YES.  GOOD MORNING, YOUR HONOR. |
| 10:29AM | 23 | THIS IS JEFF COOPERSMITH ON BEHALF OF MR. BALWANI FROM |
| 10:29AM | 24 | ORRICK, HERRINGTON & SUTCLIFFE. |
| 10:29AM | 25 | MR. BALWANI IS ALSO PRESENT ON THE ZOOM. |

11:52AM  1   GOVERNMENT IS GOING TO BE REQUIRED TO PRODUCE SOME ADDITIONAL

11:52AM  2   FOUNDATIONAL INFORMATION AND BACKGROUND ON SOME OF THIS

11:52AM  3   TESTIMONY.

11:52AM  4        BUT AGAIN, WE'RE GUIDED BY MS. SAHARIA'S REVELATION THAT

11:52AM  5   THERE WILL BE ADDITIONAL LITIGATION ON THE SECOND SUPERSEDING

11:52AM  6   INDICTMENT AND THAT MIGHT DRIVE SOME OF THE THOUGHTS THAT WE

11:52AM  7   HAVE HERE NOW THAT MS. BAEHR-JONES AND HER TEAM HAS INFORMED US

11:53AM  8   THAT SOME OF THIS CONDUCT THAT APPEARS IN THE SECOND

11:53AM  9   SUPERSEDING INDICTMENT IS ACTUALLY SOME OF THE 404(B) EVIDENCE.

11:53AM 10        SO WHERE DOES THAT LEAVE US THEN, MR. LEACH?  WHAT ELSE

11:53AM 11   SHOULD WE TALK ABOUT?

11:53AM 12             MR. LEACH:  YOUR HONOR, WE'RE ALSO SET FOR A STATUS

11:53AM 13   CONFERENCE TODAY ON THE OCTOBER 27TH TRIAL DATE.

11:53AM 14        I WILL SAY FROM THE GOVERNMENT'S PERSPECTIVE WE ARE READY

11:53AM 15   FOR TRIAL.  WE HAVE SERVED OUR WITNESS LISTS ON JUNE 26TH.  WE

11:53AM 16   ALSO SERVED OUR EXHIBIT LIST ON THE SAME DAY.  WE SERVED A

11:53AM 17   NUMBER OF TRIAL SUBPOENAS AND INSTRUCTED WITNESSES TO HOLD THE

11:53AM 18   OCTOBER DATE.

11:53AM 19        I WOULD NOTE MS. HOLMES HAS PRODUCED SOME OF HER RULE 16

11:53AM 20   DISCOVERY.  SO WE ARE READY TO GO.

11:54AM 21        I BELIEVE THE DEFENSE HAS SOME PERSPECTIVE ON THIS, AND I

11:54AM 22   THINK IT MIGHT BE APPROPRIATE TO HEAR FROM THEM ABOUT SOME OF

11:54AM 23   THE CHALLENGES THAT THEY SAY.

11:54AM 24        BUT FROM OUR PERSPECTIVE WE ARE READY TO GO AND WE'RE

11:54AM 25   READY TO ENGAGE ON WHATEVER DIALOGUE THE COURT WISHES TO HAVE

11:54AM 1    ABOUT THE SPECIAL CIRCUMSTANCES COVID BRINGS IN THIS CASE OR

11:54AM 2    MIGHT BRING.

11:54AM 3         BUT, YOU KNOW, FROM THE GOVERNMENT'S PERSPECTIVE WE'RE

11:54AM 4    READY AND WE'RE ANXIOUS FOR THE TRIAL.

11:54AM 5              THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

11:54AM 6         WHAT ARE YOUR THOUGHTS ABOUT, AND OF COURSE THE DEFENSE

11:54AM 7    WILL DIRECT THIS, BUT WHAT ARE YOUR THOUGHTS ABOUT ADDITIONAL

11:54AM 8    MOTION PRACTICE THAT MS. SAHARIA HAS INFORMED US ABOUT TODAY?

11:54AM 9    ORDER THAT THEY FILE ANY MOTION TOMORROW AT NOON?

11:54AM 10             MR. LEACH:  I WOULD BE WILLING TO GIVE THEM A LITTLE

11:54AM 11   BIT MORE TIME ON THAT, YOUR HONOR.  I'M NOT SURE EXACTLY OF THE

11:54AM 12   PARAMETERS ON WHAT THEY INTEND TO MOVE ON.  I CAN ANTICIPATE

11:54AM 13   SOME OF THEM, BUT I DON'T THINK THAT WE NEED AN EXTENDED

11:55AM 14   BRIEFING SCHEDULE.

11:55AM 15        I THINK THE GOVERNMENT WOULD PROBABLY LIKE TWO TO THREE

11:55AM 16   WEEKS TO RESPOND, BUT I THINK WE SHOULD GET A DATE ON CALENDAR

11:55AM 17   FOR THAT.

11:55AM 18        BUT WE HAVE A SENSE, BASED ON SOME OF THE COMMENTS TODAY,

11:55AM 19   WHAT THEY INTEND TO RAISE.  WE'LL RESPOND IN OUR OPPOSITION.

11:55AM 20        BUT I THINK THAT WOULD BE A GOOD THING FOR THE COURT TO

11:55AM 21   DO.

11:55AM 22             THE COURT:  OKAY.  THANK YOU.

11:55AM 23        MR. WADE?  MS. SAHARIA?  MR. DOWNEY?

11:55AM 24             MR. WADE:  IT'S MR. WADE, YOUR HONOR.  THANK YOU.

11:55AM 25        I THINK THERE ARE A COUPLE OF ISSUES TO ADDRESS HERE.  ONE

11:55AM 1    RELATES TO THE MOTIONS AS YOU'VE REFERENCED, BUT REALLY I THINK

11:55AM 2    THAT'S PUTTING THE CART A LITTLE BIT BEFORE THE HORSE.

11:55AM 3        I THINK ONE OF THE PURPOSES OF THE STATUS CONFERENCE WAS

11:55AM 4    TO CHECK IN ON THE TRIAL DATE.  I THINK WHEN WE SET THE TRIAL

11:55AM 5    DATE FOR OCTOBER THE COURT PRUDENTLY SUGGESTED THAT WE HAVE A

11:55AM 6    STATUS CONFERENCE ABOUT THREE MONTHS OUT SO THAT WE COULD CHECK

11:55AM 7    AND SEE WHERE WE ARE FROM A PUBLIC HEALTH STANDPOINT.

11:55AM 8        I THINK AT THAT TIME, WHICH SEEMS LIKE A YEAR AGO, BUT IT

11:56AM 9    WAS JUST A COUPLE MONTHS AGO, I THINK WE WERE ALL OPTIMISTIC ON

11:56AM 10   OUR ABILITY TO MOVE FORWARD.

11:56AM 11       WE CERTAINLY, AS THE COURT CAN TELL FROM THESE MOTIONS,

11:56AM 12   HAVE BEEN WORKING VERY HARD WITH -- AS THE GOVERNMENT HAS AS

11:56AM 13   WELL, TO TRY TO CONTINUE TO SHARPEN THE ISSUES AND TRY TO

11:56AM 14   PROCEED TO A POSITION WHERE WE WOULD BE READY TO TRY THE CASE.

11:56AM 15       WE WERE ALSO OPTIMISTIC, I WOULD SAY, ABOUT THE ABILITY OF

11:56AM 16   OUR EXPERTS IN THE PUBLIC HEALTH FIELD AND OUR LEADERSHIP IN

11:56AM 17   THE COUNTRY TO BE ABLE TO ADDRESS THIS PUBLIC HEALTH CRISIS IN

11:56AM 18   A WAY THAT MIGHT MAKE THAT POSSIBLE.

11:56AM 19       I THINK THE COURT HAS ALWAYS EXPRESSED GREAT CARE AS IT

11:56AM 20   RELATES TO PUBLIC HEALTH ISSUES AND WITH RESPECT TO OUR

11:56AM 21   CLIENT'S CONSTITUTIONAL RIGHTS, AND WE'RE VERY APPRECIATIVE OF

11:57AM 22   THAT.

11:57AM 23       I THINK WE ALL WANT A TRIAL HERE THAT IS SAFE FOR ALL

11:57AM 24   TRIAL PARTICIPANTS FROM A PUBLIC HEALTH STANDPOINT BUT ALSO

11:57AM 25   SAFE FROM A CONSTITUTIONAL STANDPOINT WHERE OUR CLIENT HAS ALL

11:57AM  1   OF THE RIGHTS THAT SHE'S ENTITLED TO GIVEN THAT HER LIBERTY IS

11:57AM  2   IN JEOPARDY.

11:57AM  3       THERE ARE A COUPLE OF FACTORS ABOUT THIS CASE THAT MAKE

11:57AM  4   PROCEEDING TO TRIAL UNIQUELY DIFFICULT ANY TIME SOON.

11:57AM  5       FIRST, OBVIOUSLY THIS IS NOT A TYPICAL ONE WEEK OR EVEN

11:57AM  6   TWO WEEK TRIAL.  THIS IS SET TO BE A VERY LENGTHY TRIAL.

11:57AM  7       EVEN AFTER THE CASE WAS SEVERED, I THINK THE COURT KNOWS

11:57AM  8   THE GOVERNMENT HAS INDICATED THAT IT INTENDS TO PROCEED WITH

11:57AM  9   THE SAME LENGTH OF CASE AND IT INTENDS TO CALL THE SAME NUMBER

11:57AM  10  OF WITNESSES, INDEED THE SUPERSEDING INDICTMENT EXPANDED THE

11:58AM  11  CASE SIGNIFICANTLY.

11:58AM  12      AS A RESULT OF THAT WE'RE LOOKING AT A THREE MONTH TRIAL,

11:58AM  13  PERHAPS MORE, TO MOVE THIS CASE FORWARD TO COMPLETION.

11:58AM  14      OBVIOUSLY ALONG WITH A TRIAL OF THAT LENGTH, PROCEEDING IN

11:58AM  15  THE MIDST OF A PANDEMIC COME GREAT RISKS.  THERE ARE -- WE WILL

11:58AM  16  ALL -- THERE WILL BE 30 TRIAL PARTICIPANTS WHO WILL BE IN AN

11:58AM  17  INDOOR CONFINED SPACE WHICH THE CDC AND OTHER PUBLIC HEALTH

11:58AM  18  EXPERTS TELL US IT IS NOT ADVISABLE UNDER CURRENT CONDITIONS.

11:58AM  19      EVEN IF MASKED, EVEN IF DISTANCED, ISSUES RAISE OTHER

11:58AM  20  POTENTIAL CONCERNS AS IT RELATES TO OUR CLIENT'S CONSTITUTIONAL

11:58AM  21  RIGHTS.

11:58AM  22      JUST A TRIAL FOR THAT LENGTH OF TIME PRESENTS UNIQUE

11:58AM  23  OBSTACLES.

11:59AM  24      OBVIOUSLY WHAT COMES -- WHAT DRIVES THAT AMOUNT OF TIME

11:59AM  25  ARE THE NUMBER OF WITNESSES THAT WOULD BE CALLED AT TRIAL.  THE

11:59AM 1    GOVERNMENT HAS IDENTIFIED A WITNESS LIST, HAS DISCLOSED A

11:59AM 2    WITNESS LIST TO THE DEFENSE IN THIS CASE RECENTLY.  IT

11:59AM 3    IDENTIFIES, IF YOU INCLUDE DOCUMENT CUSTODIANS, 170 WITNESSES.

11:59AM 4         THOSE WITNESSES COME FROM AT LEAST 15 DIFFERENT STATES,

11:59AM 5    INCLUDING MANY THAT ARE HOT SPOTS SUCH AS ARIZONA WHERE THERE

11:59AM 6    ARE 20 WITNESSES, TEXAS, GEORGIA, FLORIDA, AND ALL DIFFERENT

11:59AM 7    PARTS OF CALIFORNIA.

11:59AM 8         CDC GUIDANCE WOULD SUGGEST THAT IF ANY WITNESS WERE TO FLY

11:59AM 9    TO CALIFORNIA TO TESTIFY AT TRIAL, THEY SHOULD FIRST QUARANTINE

11:59AM 10   THEMSELVES FOR 14 DAYS BEFORE THEY EXPOSED THEMSELVES TO OTHERS

12:00PM 11   GIVEN THAT THEY'RE COMING FROM A PLACE WHERE THERE ARE A GREAT

12:00PM 12   NUMBER OF INFECTIONS.

12:00PM 13        HOW THAT IS PRUDENT -- THAT IS NOT PRUDENT.

12:00PM 14        SIMILARLY, I THINK THE COURT KNOWS BETTER THAN I DO

12:00PM 15   BECAUSE YOU ARE OBVIOUSLY LIVING THERE, THAT CALIFORNIA IS

12:00PM 16   EXPERIENCING A PARTICULARLY DIFFICULT PERIOD.  THE PANDEMIC

12:00PM 17   THERE STATISTICALLY HAS GOTTEN WORSE, NOT BETTER, SINCE IT

12:00PM 18   BEGAN.

12:00PM 19        THREE OF THE FOUR COUNTIES THAT PROVIDE JURORS THAT WOULD

12:00PM 20   SERVE IN A JURY POOL HERE ARE ON THE GOVERNOR'S MONITORING

12:00PM 21   LIST.  MANY ARE ROLLING BACK SOME OF THE OPENING MEASURES THAT

12:00PM 22   THEY HAD TAKEN INITIALLY EARLY ON AND ARE GOING IN THE WRONG

12:00PM 23   DIRECTION, AND MANY OF THE SCHOOL DISTRICTS FROM WHERE WE WOULD

12:00PM 24   DRAW JURORS ARE NOT GOING TO HAVE KIDS IN SCHOOL.

12:01PM 25        THE ABILITY TO GET AN IMPARTIAL JURY IN THIS SETTING FOR A

12:01PM 1    TRIAL OF THIS LENGTH IS DOUBTFUL.  IT AT LEAST PRESENTS A LOT

12:01PM 2    OF LEGAL ISSUES THAT WOULD BE CHALLENGING.

12:01PM 3        AT MORE BASIC LEVEL, YOUR HONOR, AS WE THINK THROUGH THESE

12:01PM 4    STEPS AND WE THINK ABOUT THE WAYS IN WHICH THIS TRIAL MIGHT

12:01PM 5    PROCEED OVER THREE MONTHS, WHAT HAPPENS IF A MONTH AND A HALF

12:01PM 6    IN I WAKE UP WITH A SORE THROAT?  WHAT HAPPENS IF ONE OF THE

12:01PM 7    JURORS DOES OR THE COURT OR A MEMBER OF THE COURT STAFF?  DO WE

12:01PM 8    ADJOURN COURT FOR THE DAY?  DO WE QUARANTINE FOR 14 DAYS?  DO

12:01PM 9    WE QUARANTINE UNTIL WE GET A TEST RESULT?  THESE ARE

12:01PM 10   CHALLENGING ISSUES.

12:01PM 11       I KNOW THAT THESE ARE ISSUES THAT ARE NOT UNIQUE TO THIS

12:01PM 12   CASE.  I KNOW THAT THESE ARE ISSUES THAT THE COURT IS

12:02PM 13   STRUGGLING WITH IN MANY CASES, AND IT IS HAVING TO BALANCE

12:02PM 14   THOSE INTERESTS AND THOSE CONCERNS AGAINST OTHER CONSTITUTIONAL

12:02PM 15   RIGHTS SUCH AS DEMANDS FOR SPEEDY TRIAL, SITUATIONS IN WHICH

12:02PM 16   DEFENDANTS ARE IN CUSTODY, AND WE KNOW THAT THE COURT IS

12:02PM 17   LABORING TO DO THAT.

12:02PM 18       WE'VE WATCHED SOME OF THE PROCEEDINGS BEFORE OTHER COURTS

12:02PM 19   IN THIS DISTRICT.  WE ADMIRE, FRANKLY, THE BRAVERY WITH WHICH

12:02PM 20   MANY OF THE TRIAL PARTICIPANTS ARE PROCEEDING THERE RECOGNIZING

12:02PM 21   THAT THEY'RE AT RISK.

12:02PM 22       BUT THE PROCEEDINGS THAT WE HAVE SEEN SO FAR ARE SHORT IN

12:02PM 23   NATURE.  THEY DON'T INVOLVE -- THEY HAVEN'T INVOLVED TRIALS

12:02PM 24   THAT ARE NATIONAL IN SCOPE WITH WITNESSES SCATTERED ACROSS THE

12:02PM 25   UNITED STATES.

12:02PM 1      SO WE HAVE UNIQUE FACTORS HERE THAT MAKE OUR OBSTACLES

12:02PM 2   RATHER EXTRAORDINARY.

12:02PM 3      AS THE COURT LIKELY KNOWS, IN ADDITION TO THE WORSENING

12:03PM 4   PUBLIC HEALTH CRISIS, WE ALSO HAVE PREDICTIONS FROM SOME OF THE

12:03PM 5   LEADING HEALTH EXPERTS IN THE FIELD, DR. FAUCI, DR. REDFIELD OF

12:03PM 6   THE CDC, THAT SUGGEST THAT THINGS COULD WELL GET WORSE IN THE

12:03PM 7   FALL AND WINTER AS A RESULT OF THE COMBINED EFFECT OF THE

12:03PM 8   INFLUENZA AND COVID-19 PANDEMIC.  THEY PREDICT THAT WE COULD

12:03PM 9   SEE NUMBERS AND CONDITIONS THAT ARE FAR WORSE.

12:03PM 10      WE WOULD SUGGEST TO THE COURT THAT WE RECOGNIZE THIS

12:03PM 11   REALITY.  THE GOVERNMENT HAS ALWAYS TALKED ABOUT THE IMPORTANCE

12:03PM 12   OF TRYING TO FIND A DATE.  THE GOVERNMENT HAS ALWAYS TALKED

12:03PM 13   ABOUT THE IMPORTANCE OF TRYING TO BE REALISTIC ABOUT THAT, AND

12:03PM 14   WE'VE AGREED AND WE'VE TRIED TO DO THAT, AND I KNOW THE COURT

12:03PM 15   HAS, TOO.

12:03PM 16      WE THINK A TRIAL ANY TIME SOON IS JUST NOT REALISTIC.

12:04PM 17   IT'S JUST NOT SAFE.

12:04PM 18      WE THINK WE SHOULD RECOGNIZE THAT, AND WE THINK WE SHOULD

12:04PM 19   ADJOURN THE TRIAL UNTIL NEXT YEAR.

12:04PM 20      I WOULD SUGGEST MS. HOLMES TAKING THE SLOT THAT IS

12:04PM 21   CURRENTLY RESERVED FOR MR. BALWANI IN HIS TRIAL IN APRIL OF

12:04PM 22   NEXT YEAR WOULD BE PRUDENT.  THAT WOULD GET US THROUGH THE COLD

12:04PM 23   AND FLU SEASON.  WE COULD HAVE A STATUS CONFERENCE A COUPLE

12:04PM 24   MONTHS OUT WHERE WE WOULD AGAIN TALK ABOUT WHETHER PROCEEDING

12:04PM 25   IS REALISTIC, WHETHER PROCEEDING WILL ENDANGER PEOPLE AND

12:04PM  1    ENDANGER WITNESSES OR OTHER TRIAL PARTICIPANTS.

12:04PM  2         AND IF WE DO THAT, WE CAN ALSO AVOID DANGERS AND

12:04PM  3    COLLATERAL CONSEQUENCES THAT WILL COME FROM SERVING.  GOING OUT

12:04PM  4    AND SERVING A BUNCH OF TRIAL SUBPOENAS RIGHT NOW, THE COURT HAS

12:04PM  5    MAYBE SEEN THAT IS NOT AN EVENT THAT IS VERY WELL RECEIVED BY

12:05PM  6    WITNESSES IN THE PRESENT HEALTH SITUATION.

12:05PM  7         I'M SURE -- I KNOW THE COURT WAS WORKING FROM HOME FOR

12:05PM  8    SOME TIME PERIOD.  WHEN THERE'S A KNOCK AT THE DOOR IT'S EVEN

12:05PM  9    SOMEWHAT UNSETTLING FOR A LOT OF PEOPLE THESE DAYS, AND WHEN

12:05PM  10   IT'S A PROCESS SERVER IT'S PARTICULARLY UNSETTLING.

12:05PM  11        SO I APPRECIATE THAT THE COURT SET THIS STATUS CONFERENCE

12:05PM  12   TO HAVE THIS DIALOGUE NOW, AND I APPRECIATE THE CARE THAT THE

12:05PM  13   COURT HAS GIVEN TO THESE ISSUES, AND I THINK MOVING THE TRIAL

12:05PM  14   DATE WOULD BE PRUDENT.

12:05PM  15        NOW, WE HAVE AND WE'VE TALKED BEFORE ABOUT MOMENTUM THAT

12:05PM  16   WE HAVE IN THIS CASE IN TERMS OF MAKING PROGRESS AND MOVING IT

12:05PM  17   TOWARD TRIAL.  I'M CONFIDENT THAT WE'LL CONTINUE TO KEEP THAT

12:05PM  18   MOMENTUM, AND THAT WE WILL ALL WORK HARD TO BE IN THE BEST

12:05PM  19   POSSIBLE POSITION TO TRY THIS CASE IN AN ORDINARILY WAY BEFORE

12:05PM  20   THE COURT WHEN WE ARE ABLE TO DO SO.

12:05PM  21        WITH RESPECT TO THESE OTHER DATES WITH THE MOTIONS, ET

12:06PM  22   CETERA, I THINK WE SHOULD DO WHAT PARTIES DO AND ONCE WE GET

12:06PM  23   SOME DIRECTION FROM THE COURT ON THE TRIAL DATE, WE SHOULD MEET

12:06PM  24   AND CONFER WITH THE GOVERNMENT ABOUT THE REMAINING DATES AND

12:06PM  25   COME UP WITH A PROPOSED SCHEDULE THAT WE HOPEFULLY AGREE ON AND

12:06PM 1     SUBMIT IT TO THE COURT AND SET A SCHEDULE THEREAFTER.

12:06PM 2           I WILL NOTE THAT ON THE MOTIONS TO DISMISS, WE ACTUALLY

12:06PM 3     THINK THAT THEY ARE ACTUALLY MORE COMPLICATED THIS TIME THAN

12:06PM 4     THEY WERE LAST TIME.

12:06PM 5           WE ANTICIPATE AND WE STARTED SOME WORK ON THEM IN

12:06PM 6     ANTICIPATION THAT THIS INDICTMENT MIGHT COME, BUT WE ANTICIPATE

12:06PM 7     THAT THERE COULD BE FIVE OR SIX MOTIONS TO DISMISS.

12:06PM 8           WE HEAR THE GOVERNMENT THAT THEY WILL WANT A FAIR AMOUNT

12:06PM 9     OF TIME TO FILE OPPOSITIONS TO THAT, AND OBVIOUSLY THE COURT

12:06PM 10    NEEDS TIME TO CONSIDER IT.

12:06PM 11          SO WE HAVE PLENTY OF WORK TO DO IN THE MEANTIME.

12:06PM 12          YOU KNOW, THIS INDICTMENT CAME OBVIOUSLY MANY YEARS INTO

12:06PM 13    THE CASE WITH RESPECT TO EVENTS THAT HAVE BEEN, YOU KNOW, MANY,

12:07PM 14    MANY YEARS AGO AND HAVE BEEN KNOWN TO THE GOVERNMENT FOR A LONG

12:07PM 15    TIME.  THEY HAVE A RIGHT TO PROCEED AS THEY HAVE, BUT IT DOES

12:07PM 16    HAVE SOME EFFECT ON GIVING US A LITTLE MORE WORK TO DO.

12:07PM 17          THE COURT HAS MENTIONED SOME DISCLOSURES THAT MIGHT

12:07PM 18    BENEFIT FROM SUPPLEMENTATION AS WELL AS A RESULT OF MAYBE

12:07PM 19    ORDERS THAT ARE GOING TO COME FROM THE COURT AND AS A RESULT OF

12:07PM 20    THE SUPERSEDING INDICTMENT.  SO I THINK WE HAVE A LOT OF WORK

12:07PM 21    TO DO.

12:07PM 22          I THINK WE'LL BE MORE THAN BUSY ENOUGH BETWEEN NOW AND

12:07PM 23    APRIL, AND I WOULD ASK THAT THE COURT CONSIDER THIS REQUEST AND

12:07PM 24    BE PREPARED TO ADDRESS ANY INQUIRIES THAT THE COURT MAY HAVE.

12:07PM 25          THE COURT:  THANK YOU, MR. WADE.

12:07PM  1      MR. WADE, LET ME ASK YOU, I APPRECIATE YOU RECOGNIZING THE

12:07PM  2  MOMENTUM AND THE MOMENTUM AND THE EFFORTS THAT BOTH SIDES AND

12:07PM  3  YOUR TEAMS HAVE PUT IN THIS CASE.

12:07PM  4      YOU PROBABLY UNDERSTAND THE RETICENCE THAT I MIGHT HAVE TO

12:08PM  5  TAKE THE FOOT OFF THE GAS PEDAL.  THAT JUST MAKES THE FINISH

12:08PM  6  LINE MORE OBSCURE AND ACTUALLY SOMETIMES INCREASES THE

12:08PM  7  DISTANCE.

12:08PM  8      SO I'M CURIOUS IF WE CAN MAINTAIN MOMENTUM, IF THE COURT

12:08PM  9  WERE NOT TODAY TO DISTURB THE TRIAL DATE, LEAVE THE TRIAL DATE

12:08PM  10  IN PLACE.  AND I RECOGNIZE AND WE ALL RECOGNIZE THAT THIS IS A

12:08PM  11  DYNAMIC SITUATION, BUT IF THE COURT WERE TO LEAVE THE TRIAL

12:08PM  12  DATE AS IS NOW, WHICH WOULD MANDATE THAT THE PARTIES CONTINUE

12:08PM  13  THEIR BEST EFFORTS TO CAPTURE ALL OF THE LITIGATION THAT YOU

12:08PM  14  FEEL IS NECESSARY WITH THAT OCTOBER 27TH TRIAL DATE, WOULD YOU

12:08PM  15  BE ABLE TO DO THAT?

12:08PM  16      MR. WADE:  I THINK WE WOULD HAVE A VERY DIFFICULT

12:08PM  17  TIME WITH THE CURRENT INDICTMENT, YOUR HONOR, MOVING FORWARD IN

12:08PM  18  OCTOBER.  GIVEN THAT WE HAVE GOT A SUPERSEDING INDICTMENT THAT

12:08PM  19  MY GUESS IS OUR CLIENT IS ABOUT TO BE ARRAIGNED ON MAYBE IN A

12:09PM  20  FEW MINUTES HERE OR THE COURT WILL ENTER THE ORDER ON THE

12:09PM  21  WAIVER OF ARRAIGNMENT.  I THINK WE WILL HAVE A VERY, VERY

12:09PM  22  DIFFICULT TIME.

12:09PM  23      WE STILL HAVE MANY OPEN ISSUES THAT THESE MOTIONS IDENTIFY

12:09PM  24  SOME OF THEM.  THERE ARE MANY MORE.

12:09PM  25      WE DIDN'T BRING THEM TO THE COURT IN CONNECTION WITH THIS

12:09PM  1    PROCEEDING BECAUSE WE'RE CONTINUING TO WORK WITH THE GOVERNMENT

12:09PM  2    TO TRY TO RESOLVE THEM.

12:09PM  3        BUT I DO NOT THINK EVEN WITH -- IF WE DIDN'T HAVE THE

12:09PM  4    PANDEMIC, THAT WE WOULD BE READY TO PROCEED GIVEN THE

12:09PM  5    SUPERSEDING INDICTMENT IN OCTOBER.

12:09PM  6        SO WE WOULD BE BACK IN A SITUATION WHERE, AS THE COURT

12:09PM  7    KNOWS, WE SUGGESTED PREVIOUSLY THAT THE APPROPRIATE DATE WOULD

12:09PM  8    BE AFTER THE FIRST OF THE YEAR EVEN WITHOUT THE PANDEMIC.

12:09PM  9        SO -- AND I DON'T THINK, FRANKLY, THAT KEEPING THE DATE

12:09PM 10    AND NOT TAKING SOME RELIEF NOW IS JUST GOING TO MAKE -- PRESENT

12:09PM 11    PROBLEMS AND, FRANKLY, SOME RISK FOR ALL BECAUSE IF THAT IS THE

12:10PM 12    CASE, WE'RE GOING TO HAVE TO EMBARK UPON SERVING TRIAL

12:10PM 13    SUBPOENAS ALMOST IMMEDIATELY, WE'RE GOING TO HAVE TO EMBARK

12:10PM 14    UPON SOME OTHER TRIAL PREPARATION ACTIVITY THAT MIGHT REQUIRE

12:10PM 15    TRAVEL AND THINGS THAT, FRANKLY, WE WOULD PREFER NOT TO DO IN

12:10PM 16    THE CURRENT HEALTH ENVIRONMENT.

12:10PM 17        I RECOGNIZE THE COURT'S DESIRE TO MOVE FORWARD.  I THINK

12:10PM 18    THE COURT HAS GOTTEN A SENSE OF THE CANDOR WITH WHICH WE LIKE

12:10PM 19    TO DEAL WITH THIS COURT IN EVERY ASPECT, AND I CAN TELL THE

12:10PM 20    COURT WE WILL MOVE FORWARD AGGRESSIVELY WITH RESPECT TO

12:10PM 21    EVERYTHING TO TRY TO MAKE PROGRESS AND GET THIS CASE READY.

12:10PM 22        YOU SAW MOTIONS THAT YOU REFERENCED AS MOTIONS THAT ARE

12:10PM 23    MOTION IN LIMINE LIKE.  THAT WAS BECAUSE WE RECOGNIZE THAT WE

12:10PM 24    WANT TO CONTINUE TO DO WORK TO GET INTO A SITUATION WHERE THE

12:10PM 25    ISSUES ARE RIPEN SO WE CAN PRESENT THEM TO THE COURT AND WE CAN

12:11PM 1   BE IN THE BEST POSSIBLE POSITION TO PROCEED TO TRIAL.

12:11PM 2        BUT I DON'T THINK REALISTICALLY IN THE CURRENT HEALTH

12:11PM 3   ENVIRONMENT, WHICH HAS GOTTEN WORSE IN THESE MONTHS NOT BETTER,

12:11PM 4   WHERE WE HAVEN'T HAD THE ABILITY TO MEET WITH OUR CLIENT IN

12:11PM 5   MONTHS IN PERSON, WHERE WE DON'T HAVE THE ABILITY TO MEET WITH

12:11PM 6   WITNESSES, WHERE WE DON'T HAVE THE ABILITY TO MEET IN PERSON

12:11PM 7   WITH EXPERTS.

12:11PM 8        THERE'S A LOT THAT CAN BE DONE.  THERE'S A LOT THAT WE

12:11PM 9   HAVE DONE, BUT WE NEED LEAD TIME IN ADVANCE TO DO THAT.  IF

12:11PM 10  WE'RE FORCED TO DO IT, YOUR HONOR KNOWS WE WOULD DO IT, BUT IT

12:11PM 11  ENDANGERS PEOPLE, AND WE WOULD PREFER THAT WE WOULD NOT BE PUT

12:11PM 12  IN THAT CHOICE.

12:11PM 13       AND WE WOULD ASK THE COURT TO NOT PUT US IN THAT CHOICE.

12:11PM 14         THE COURT:  ALL RIGHT.  THANK YOU, MR. WADE.

12:11PM 15       LET ME JUST ASK YOU ABOUT A COUPLE OF OTHER JUST TRIAL

12:11PM 16  PROTOCOLS.  VIDEOTAPING WITNESSES, DEPOSITION TYPE WITNESSES

12:11PM 17  THAT WOULD BE PRESERVED FOR TRIAL.  I DON'T KNOW IF YOU'VE

12:11PM 18  THOUGHT ABOUT THAT OR WHAT YOUR THOUGHTS ARE.

12:12PM 19       ALSO, I'M CURIOUS TO KNOW WHAT YOUR THOUGHTS ARE ABOUT

12:12PM 20  PROCEEDINGS IN THE TRIAL BY VIDEO EITHER IN TOTAL OR PARTS OF

12:12PM 21  IT, THAT IS, WITNESS TESTIMONY BEING CAPTURED BY A VIDEO AS

12:12PM 22  OPPOSED TO IN PERSON.

12:12PM 23       I UNDERSTAND THERE ARE SOME CONFRONTATION ISSUES,

12:12PM 24  CONSTITUTIONAL CONFRONTATION ISSUES THAT YOU MIGHT WANT TO

12:12PM 25  SPEAK TO, BUT I'M JUST CURIOUS ABOUT YOUR THOUGHTS ON THAT.

12:12PM   1          MR. WADE:  YOUR HONOR, THEY'RE VERY INTERESTING

12:12PM   2     ISSUES AND RECOGNIZING THE COURT MAY RAISE THEM, I SPENT SOME

12:12PM   3     TIME INVESTIGATING AND RESEARCHING PROCEEDINGS.

12:12PM   4          THERE ARE -- OBVIOUSLY, I KNOW YOU'RE AWARE OF THE TRIAL

12:12PM   5     IN FRONT OF JUDGE ALSUP.  THAT HAS PROCEEDED.  THAT, OF COURSE,

12:12PM   6     WAS A TRIAL WHERE THE DEFENDANT WAS IN CUSTODY.  IT WAS IN THE

12:12PM   7     MIDST OF TRIAL WHEN THE PANDEMIC STARTED, AND THE JURY WAS HELD

12:12PM   8     OVER, AND THEN THERE THE PARTIES PROCEEDED VIA CONSENT.

12:13PM   9          BUT REGARDLESS, I TOOK IT AS AN OPPORTUNITY TO WATCH THAT

12:13PM  10     PROCEEDING.

12:13PM  11          I ALSO RESEARCHED.  THERE WAS A JURY TRIAL IN FLORIDA THAT

12:13PM  12     HAPPENED ON A PILOT BASIS IN STATE COURT WITH RESPECT TO AN

12:13PM  13     INSURANCE DISPUTE AND LOOKED AT THE FEEDBACK THAT LAWYERS ON

12:13PM  14     BOTH SIDES PROVIDED THERE WITH RESPECT TO THE ISSUES.

12:13PM  15          AND I THINK SUFFICE IT TO SAY I DON'T THINK THAT WE WOULD

12:13PM  16     BE COMFORTABLE PROCEEDING IN THAT MANNER IN A CASE LIKE THIS

12:13PM  17     GIVEN THE LIMITATIONS THAT WOULD RESULT FROM IT.

12:13PM  18          THERE ARE A NUMBER OF ISSUES AT EACH STEP OF THE TRIAL, IF

12:13PM  19     YOU CONSIDER JURY SELECTION ALL OF THE WAY THROUGH TO THE END,

12:13PM  20     BUT CONFRONTATION RIGHTS ARE AMONG THE BIGGEST ISSUES.

12:13PM  21          BUT THE REAL ISSUE, YOUR HONOR, IS WE COULDN'T DO THE

12:13PM  22     WHOLE THING REMOTELY.

12:13PM  23          AND SO IT DOESN'T REALLY SOLVE -- I DON'T THINK IT SOLVES

12:13PM  24     THAT MUCH ANYWAY.  WE CONFERRED WITH THE GOVERNMENT A BIT ON

12:14PM  25     THIS, WE HAD SOME DIALOGUE ON THESE TOPICS, AND WE DID NOT SEE

12:14PM  1    A WORKABLE SOLUTION IN A CASE OF THIS SIZE.

12:14PM  2         NOW, I'M NOT SUGGESTING THAT'S NEVER WORKABLE.  THERE

12:14PM  3    COULD BE A CASE WHERE PARTIES CONSENT TO CERTAIN THINGS.  THERE

12:14PM  4    COULD BE A CASE WHERE OTHER RIGHTS LIKE SPEEDY TRIAL RIGHTS AND

12:14PM  5    THE LIKE NEED TO BE BALANCED, BUT THIS ISN'T THAT CASE.

12:14PM  6         THIS IS A CASE WHERE WE'RE NOT ASSERTING -- DEMANDING A

12:14PM  7    SPEEDY TRIAL.  WE'RE WILLING TO WAIVE THAT RIGHT.

12:14PM  8         WE ARE -- OUR CLIENT IS NOT IN CUSTODY, AND THERE'S A

12:14PM  9    SOLUTION TO THESE PROBLEMS.  IT'S NOT ONE THAT HAS A LOT OF

12:14PM  10   CURRENCY IN TODAY'S CLIMATE, BUT IT IS THERE NONETHELESS AND

12:14PM  11   THAT IS A LITTLE BIT OF PATIENCE.  WE THINK THAT WILL SOLVE

12:14PM  12   THESE CHALLENGES.

12:14PM  13        THE COURT:  THANK YOU.  LET ME ASK YOU ABOUT DELAY

12:14PM  14   SOMETIMES AFFECTS WITNESS'S AVAILABILITY, EITHER THEY LEAVE THE

12:15PM  15   JURISDICTION OR HAVE PLANS TO MOVE, OR IN TODAY'S WORLD I DON'T

12:15PM  16   KNOW WHAT THAT MEANS, BUT SOME PEOPLE ARE LEAVING THEIR CURRENT

12:15PM  17   RESIDENCES FOR SAFER AREAS, AND THOSE AREAS MIGHT BE OUTSIDE OF

12:15PM  18   THE JURISDICTION OF THE COURT OR MIGHT PRESENT ADDITIONAL

12:15PM  19   PROBLEMS FOR GETTING A WITNESS TO COME BACK TO COURTS.

12:15PM  20        SOME WITNESSES MIGHT BECOME ILL SUCH THAT THEY'RE NOT

12:15PM  21   AVAILABLE FOR COURT OR SOME OTHER TERRIBLE THING MIGHT HAPPEN

12:15PM  22   IF WE DELAY.  YOU KNOW, DELAY BRINGS THESE TYPES OF ISSUES.

12:15PM  23        ARE THERE ANY -- IS THERE ANY EVIDENCE THAT YOU THINK THAT

12:15PM  24   MIGHT BE ABLE TO BE PRESERVED BY A DEPOSITION OR FOR A SPECIFIC

12:15PM  25   WITNESS BECAUSE THERE MIGHT BE A QUESTION ABOUT THE WITNESS'S

| | | |
|---|---|---|
| 12:15PM | 1 | AVAILABILITY IN THE FUTURE?  DO WE HAVE TO BE CONCERNED ABOUT |
| 12:16PM | 2 | THAT IN THIS CASE? |
| 12:16PM | 3 | MR. WADE:  YOUR HONOR, THAT CAN BE A CONCERN. |
| 12:16PM | 4 | OBVIOUSLY EVEN AT TIMES WITH THE THREE OR FOUR WEEK DELAY |
| 12:16PM | 5 | SOMETIMES CIRCUMSTANCES WITH WITNESSES CHANGE OR UNFORTUNATE |
| 12:16PM | 6 | THINGS CAN HAPPEN TO WITNESSES. |
| 12:16PM | 7 | WE HAVE NOT SEEN ANY INDICATION OF THAT IN THIS CASE. |
| 12:16PM | 8 | THE CIRCUMSTANCES YOU PRESENT, YOUR HONOR, WHERE PEOPLE |
| 12:16PM | 9 | ARE GOING TO DIFFERENT PLACES EVEN WITHIN THE COUNTRY BECAUSE |
| 12:16PM | 10 | OF THE CIRCUMSTANCES ACTUALLY IS ONE OF THE CHALLENGES WITH |
| 12:16PM | 11 | PROCEEDING TO TRIAL IN THIS ENVIRONMENT BECAUSE IT'S HARD TO |
| 12:16PM | 12 | LOCATE PEOPLE.  IT'S HARD TO LOCATE WITNESSES RIGHT NOW. |
| 12:16PM | 13 | SO CERTAINLY IF THE GOVERNMENT WERE TO THINK THAT WAS AN |
| 12:16PM | 14 | ISSUE AND THOUGHT THERE WAS A NEED TO PRESERVE TESTIMONY, THE |
| 12:16PM | 15 | GOVERNMENT COULD RAISE THAT ISSUE WITH US AND WE COULD MEET AND |
| 12:16PM | 16 | CONFER WITH THE GOVERNMENT AND CONSIDER THEIR REQUEST AND |
| 12:16PM | 17 | WHETHER WE WOULD CONSENT TO IT. |
| 12:16PM | 18 | WE DON'T PRESENTLY SEE THE NEED ON BEHALF OF MS. HOLMES TO |
| 12:17PM | 19 | PRESERVE ANY TESTIMONY AT THIS TIME. |
| 12:17PM | 20 | THE COURT:  ALL RIGHT.  I'M CURIOUS.  DO YOU HAVE |
| 12:17PM | 21 | THE WITNESS LIST, THE GOVERNMENT'S WITNESS LIST? |
| 12:17PM | 22 | MR. WADE:  I DO. |
| 12:17PM | 23 | THE COURT:  AND I'LL TURN THIS TO MR. LEACH.  THIS |
| 12:17PM | 24 | IS A QUESTION FOR HIM BECAUSE I'M JUST CURIOUS, MR. LEACH, |
| 12:17PM | 25 | WHETHER YOU HAVE CONCERNS ABOUT ANY WITNESS'S AVAILABILITY |

12:17PM 1      EITHER BECAUSE OF GEOGRAPHIC REASONS OR PERHAPS HEALTH REASONS

12:17PM 2      OR OTHER REASONS THAT MIGHT PRESENT?

12:17PM 3               MR. LEACH:  YES.  THANK YOU, YOUR HONOR.

12:17PM 4          IF I COULD RESPOND BRIEFLY TO SOME OF THE THINGS THAT

12:17PM 5      MR. WADE IS RAISING BECAUSE I AGREE WITH MANY OF THE CHALLENGES

12:17PM 6      MR. WADE IS PRESENTING.

12:17PM 7              BUT IN TERMS OF PRESERVING WITNESS TESTIMONY, I THINK IT'S

12:17PM 8      A SMALL MINORITY OF WITNESSES THAT WOULD FALL INTO THE CATEGORY

12:17PM 9      THAT THE COURT IS DESCRIBING.  I THINK THERE ARE SOME WITNESSES

12:18PM 10     WHO ARE OVER THE AGE OF 65 WHERE I DON'T HAVE ANY CURRENT

12:18PM 11     REASON TO THINK THAT THEY WOULD BE UNAVAILABLE ON A PARTICULAR

12:18PM 12     DATE, BUT IT'S SOMETHING THAT THE GOVERNMENT IS GIVING THOUGHT

12:18PM 13     TO, BUT IT'S A SMALL NUMBER OF WITNESSES AND I DON'T THINK

12:18PM 14     WOULD EXPEDITE THE TRIAL OR PRESENT SOME SPECIAL NEED FOR ONE

12:18PM 15     DATE VERSUS ANOTHER.

12:18PM 16             AND CERTAINLY TO THE EXTENT THAT WE CAN REACH AGREEMENT

12:18PM 17     WITH COUNSEL ON THAT, I THINK IT WOULD MEET THE STANDARD FOR A

12:18PM 18     RULE 15 DEPOSITION, BUT I THINK FROM THE GOVERNMENT'S

12:18PM 19     PERSPECTIVE THAT'S A SMALL CATEGORY OF WITNESSES AND IT RELATES

12:18PM 20     MORE TO AGE THAN IT DOES TO A CONCERN THAT A WITNESS WOULD NOT

12:18PM 21     BE IN A JURISDICTION WHERE WE COULD COMPEL THEIR ATTENDANCE

12:18PM 22     WITH THE COURT.

12:18PM 23             MORE BROADLY, I THINK IT'S IMPORTANT TO EMPHASIZE I AGREE

12:18PM 24     WITH SOME OF THE THINGS THAT MR. WADE IS SAYING.  I THINK THE

12:19PM 25     WORK THAT NEEDS TO BE DONE FOR THE TRIAL CAN BE DONE BETWEEN

12:19PM  1    NOW AND OCTOBER 28TH, BUT I WOULD PUSH BACK ON THE SOLUTION OF

12:19PM  2    KEEPING THAT DATE WITH AN EYE TOWARDS IT IS JUST GOING TO BE

12:19PM  3    MOVED.  I THINK THAT'S WORSE FOR ALL OF THE PARTIES.

12:19PM  4        FROM THE GOVERNMENT'S PERSPECTIVE, WE'RE READY TO GO, AND

12:19PM  5    IT'S IMPORTANT THAT THIS CASE GO EXPEDITIOUSLY.  THE FRAUD HERE

12:19PM  6    IS IN THE HUNDREDS OF MILLIONS OF DOLLARS.  THERE ARE NUMEROUS

12:19PM  7    VICTIMS ON THE PATIENT SIDE AND ON THE INVESTOR SIDE.

12:19PM  8        SO WE THINK IT'S IMPORTANT THAT IT GO EXPEDITIOUSLY.

12:19PM  9        BUT MANY OF THE CHALLENGES THAT MR. WADE IS MENTIONING ARE

12:19PM 10    REAL CHALLENGES AND UNIQUE CHALLENGES TO THIS CASE.

12:19PM 11        FROM THE GOVERNMENT'S PERSPECTIVE AT LEAST 16 OF OUR

12:19PM 12    WITNESSES ARE OVER THE AGE OF 65, WHICH IS ONE OF THE COVID

12:20PM 13    RISK FACTORS.  A LARGE MAJORITY OF THE WITNESSES, AS MR. WADE

12:20PM 14    POINTS OUT, ARE FROM OUT OF TOWN.  MANY OF THE WITNESSES ARE IN

12:20PM 15    HOT SPOTS LIKE PHOENIX, TEXAS, AND FLORIDA, AND THE LENGTH OF

12:20PM 16    THE TRIAL, I'M HOPEFUL TO BRING IT IN SHORTER THAN THE ESTIMATE

12:20PM 17    THAT MR. WADE GAVE, BUT IT'S GOING TO BE LONGER THAN YOUR

12:20PM 18    REGULAR TRIAL.  AND THOSE ARE REAL CHALLENGES, AND WE AGREE

12:20PM 19    THAT THOSE SHOULD BE TAKEN INTO ACCOUNT BY THE COURT.

12:20PM 20        I DO THINK APRIL OF 2021 IS TOO LONG.  THAT'S NINE MONTHS

12:20PM 21    AWAY.  THAT'S A LONG TIME, AND FROM THE GOVERNMENT'S

12:20PM 22    PERSPECTIVE, WE DON'T WANT TO RETAIN A DATE THAT WE DON'T THINK

12:20PM 23    IS GOING TO STICK.

12:20PM 24        WE THINK IF THE COURT IS INCLINED TO MOVE THE TRIAL, IT

12:20PM 25    SHOULD MOVE THE TRIAL TO FEBRUARY OF 2021 AND HAVE

12:20PM   1      MR. BALWANI'S TRIAL FOLLOW SHORTLY AFTER THAT IN MAY OF 2021.

12:21PM   2          BUT IF THERE'S A REQUEST TO CONTINUE THE TRIAL, AND THAT'S

12:21PM   3      WHAT I HEARD FROM MR. WADE, I THINK IT'S INCUMBENT UPON ALL OF

12:21PM   4      US TO TAKE THOSE CHALLENGES INTO ACCOUNT.  THE GOVERNMENT IS

12:21PM   5      READY TO GO AND WILL GO ON WHATEVER DATE THE COURT SETS, BUT IT

12:21PM   6      SHOULD BE A REAL DATE, AND IT SHOULD BE A DATE WE'RE ALL GOING

12:21PM   7      TO HOLD.  AND IF THERE'S DOUBT ABOUT OCTOBER 27TH, I THINK THE

12:21PM   8      PRUDENT THING IS TO SET THE DATE WE ALL THINK THAT WE CAN MEET,

12:21PM   9      AND WE THINK IT'S EARLIER THAN APRIL.

12:21PM  10          THE COURT:  THANK YOU, MR. LEACH.

12:21PM  11          LET ME JUST SAY, I APPRECIATE ALL OF YOUR CANDOR HERE.  WE

12:21PM  12      ALL ARE OF COMMON PURPOSE AND THAT IS TO GET THIS TRIAL ENGAGED

12:21PM  13      AS SOON AS IT'S READY TO BE ENGAGED AND ENGAGED SUCH THAT THE

12:21PM  14      DEFENDANT'S RIGHTS ARE PROTECTED, SHE AND HE, MR. BALWANI,

12:22PM  15      RECEIVE A FAIR TRIAL, AND THE GOVERNMENT, AND THEY RECEIVE A

12:22PM  16      FAIR TRIAL AND THAT IS CONSTITUTIONALLY APPROPRIATE.

12:22PM  17          THE COVID CRISIS HAS CERTAINLY INTERRUPTED THAT.  LET ME

12:22PM  18      SAY THAT THIS TRIAL IS A VERY, AS MR. LEACH POINTS OUT AND

12:22PM  19      MR. WADE POINTS OUT, IT'S VERY IMPORTANT TO YOUR CLIENT,

12:22PM  20      MR. WADE, IT'S VERY IMPORTANT TO THE INTEGRITY OF THE JUSTICE

12:22PM  21      SYSTEM AND THE VICTIMS AS MR. LEACH TELLS US, BUT THE OVERLAY

12:22PM  22      ON TOP OF ALL OF THIS, OF COURSE, IS THE PANDEMIC THAT HAS HIT

12:22PM  23      OUR COUNTRY.

12:22PM  24          AND I'M SURE REGRETTABLY NOW MOST PEOPLE KNOW SOMEBODY WHO

12:22PM  25      HAS PERSONAL CONTACT OR AT LEAST KNOWS SOMEBODY WHO HAS

12:22PM  1    REGRETTABLY HAD THE VIRUS, RECOVERED, AND SOME OF US

12:22PM  2    REGRETTABLY MAY KNOW FOLKS WHO ARE NO LONGER WITH US BECAUSE OF

12:22PM  3    THAT VIRUS.  SO IT'S A REAL SHADOW THAT LOOMS OVER THE WORK

12:23PM  4    THAT WE DO, IT LOOMS OVER THE COUNTRY THAT WE LOVE, AND WE ALL

12:23PM  5    ARE TRYING TO DO OUR PART TO MAKE SURE THAT THE VIRUS DOESN'T

12:23PM  6    SPREAD AND PROTECT OUR FAMILIES AND LOVED ONES, OUR NEIGHBORS,

12:23PM  7    AND OUR COMMUNITIES.  THAT'S REALLY OUR RESPONSIBILITY, ISN'T

12:23PM  8    IT, TO OURSELVES AND TO OUR COMMUNITIES TO PROTECT OURSELVES IN

12:23PM  9    THAT WAY.

12:23PM  10       THAT RESPONSIBILITY IS NOT LOST ON ME.  AND I APPRECIATE

12:23PM  11   THE CANDOR OF MR. WADE, MR. LEACH, AND YOUR TEAMS BECAUSE I

12:23PM  12   KNOW YOU HAVE DISCUSSED THIS WITH ALL OF YOUR TEAMS, HOW BEST

12:23PM  13   TO PROTECT THE PUBLIC, HOW TO PROTECT YOU, TO PROTECT MY STAFF,

12:23PM  14   THANK YOU FOR RECOGNIZING THAT.

12:23PM  15       I'M IN THE COURTHOUSE NOW, AND I'M SITTING IN THE

12:23PM  16   CEREMONIAL COURTROOM ALONE.  I'M HERE BY WAY OF A LAPTOP, AND

12:23PM  17   MY STAFF ARE REMOTE.  I HAVE STAFF DOWN THE HALL IN MY

12:23PM  18   CHAMBERS, BUT I SIT HERE ALONE.

12:23PM  19       AND I LOOK OUT AND I TRY TO ENVISION WHAT A JURY TRIAL FOR

12:23PM  20   3 MONTHS WOULD LOOK LIKE HERE WITH POTENTIALLY MAYBE WE'LL HAVE

12:24PM  21   17 JURORS, WON'T WE, 12 JURORS AND MAYBE 5 ALTERNATES.  WE

12:24PM  22   MIGHT NEED MORE ALTERNATES FOR A CASE LIKE THIS IF IT'S TRIED

12:24PM  23   CONCURRENT WITH THE PANDEMIC.  AND I LOOK OUT AND I TRY TO

12:24PM  24   ENVISION HOW AND WHERE PEOPLE WOULD SIT.  I TRY TO ENVISION

12:24PM  25   WHERE THE JURY WOULD SIT SUCH THAT THEY CAN OBSERVE A WITNESS

12:24PM  1    TO MY LEFT HERE IN THIS COURTROOM AND CAPTURE AND MAKE THEIR

12:24PM  2    DETERMINATIONS AS TO THE CREDIBILITY OF THAT PARTICULAR WITNESS

12:24PM  3    WHEN THEY SIT IN, CONTINUING WITH THE BASEBALL ANALOGY, WITH

12:24PM  4    THE CHEAP SEATS AND THEY'RE IN THE CORNER AS OPPOSED TO THE

12:24PM  5    JURY BOX CLOSER TO THE WITNESS.

12:24PM  6        I DON'T KNOW WHAT IS THE CONSTITUTIONAL RAMIFICATION OF

12:24PM  7    THAT.  HOW DOES THE JUDGE, HOW DOES SHE KEEP TRACK OF ALL OF

12:24PM  8    THE JURORS IN THE COURTROOM AND THEY'RE ALL FOLLOWING

12:25PM  9    EVERYTHING THAT SHE EXPECTS THEM TO FOLLOW IN A COURTROOM?

12:25PM  10       IT CREATES -- THOSE ARE IS JUST SOME OF THE PROTOCOL

12:25PM  11   CHALLENGES OF RUNNING THE COURT.  BUT AGAIN, IT ALL GETS BACK

12:25PM  12   TO SOMETHING THAT YOU ALL AGREE IN AND THAT IS THE HEALTH AND

12:25PM  13   SAFETY OF OUR COMMUNITY.

12:25PM  14       I HAVE GREAT RETICENCE TO SUMMON MEMBERS OF THE COMMUNITY

12:25PM  15   AND INVITE THEM TO SIT IN CONFINED AREAS FOR LENGTHY PERIODS OF

12:25PM  16   TIME WHEN THERE IS A PANDEMIC THAT AFFECTS THEM, THEIR

12:25PM  17   FAMILIES, AND WE HAVE NO VACCINE AS OF YET AND I KNOW PEOPLE

12:25PM  18   ARE WORKING HARD ON THAT AS WELL.

12:25PM  19       SO THAT'S A GREAT CONCERN OF MINE.  I APPRECIATE YOU

12:25PM  20   RECOGNIZING THAT AS I THINK WE HAVE TALKED ABOUT PREVIOUSLY THE

12:25PM  21   OCTOBER DATE MIGHT BE A LITTLE TOO AMBITIOUS FOR US.

12:25PM  22       BUT THEN WHAT DO WE DO NEXT?  IDEALLY -- AND THIS IS ME

12:26PM  23   SPEAKING SELFISHLY AS A JUDGE, IDEALLY WHAT WOULD HAPPEN IS ALL

12:26PM  24   OF THE WORK GETS DONE.  BUT IF WE FINISH THAT WORK, IF IT'S

12:26PM  25   OCTOBER, IF IT'S NOVEMBER, IF IT'S DECEMBER, SOME TIME THIS

12:26PM  1    YEAR, AND THEN WHAT WE'RE DOING THEN IS THAT WE'RE WAITING,

12:26PM  2    WE'RE WAITING FOR THE SAFE TIME.  WE'RE NOT WAITING FOR WORK TO

12:26PM  3    BE DONE BECAUSE THE WORK WOULD ALREADY BE DONE.  ALL WE'RE

12:26PM  4    WAITING FOR NEXT IS WHEN IS IT SAFE?  WHEN IS IT SAFE TO HAVE

12:26PM  5    THE COMMUNITY COME IN AND HEAR THIS CASE AND MAKE THE

12:26PM  6    COMMUNITY'S DECISION ABOUT THIS CASE?

12:26PM  7        THAT'S THE IDEAL SITUATION THAT I WOULD LIKE TO PLACE

12:26PM  8    OURSELVES IN.  I'D LIKE TO ACCOMPLISH THAT, THAT IS, COMPLETE

12:26PM  9    EVERYTHING THAT NEEDS TO GET DONE.

12:26PM  10       ONE WAY TO DO THAT IN A TIMELY MANNER IS, AS I'VE

12:26PM  11   SUGGESTED TO I THINK MR. LEACH, MAYBE I'LL HAVE THE DEFENSE

12:26PM  12   FILE ALL OF THEIR MOTIONS BY NOT NOON TOMORROW BUT 5:00 P.M.

12:26PM  13   TOMORROW JUST TO GIVE THEM EXTRA TIME TO GET IT ALL DONE.  WE

12:27PM  14   CAN MOVE FORWARD IN SOME SCHEDULE LIKE THAT, BUT I'D LIKE TO

12:27PM  15   ENGAGE A SCHEDULE THAT IS REALISTIC.

12:27PM  16       AND I KNOW THAT TRIALS ARE DYNAMIC ALSO, PARTICULARLY

12:27PM  17   PRETRIAL.  WE DON'T KNOW WHAT ELSE MAY COME UP.  WE'VE HEARD

12:27PM  18   THAT THERE MIGHT BE FIVE MOTIONS AS TO THE SUPERSEDING

12:27PM  19   INDICTMENT.  AND I KNOW THAT BRINGS GREAT JOY FOR MR. LEACH AND

12:27PM  20   HIS TEAM TO HEAR, BUT THERE COULD BE EXTENSIVE LITIGATION

12:27PM  21   COMING FORWARD ON THIS.

12:27PM  22       SO THAT INFORMS THE COURT ALSO THAT I NEED TO SET A

12:27PM  23   SCHEDULE THAT IS APPROPRIATE IN THIS CASE.

12:27PM  24       LET ME -- I DO WANT TO TURN TO MR. COOPERSMITH AND GIVE

12:27PM  25   YOU AN OPPORTUNITY TO BE HEARD ON THIS, SIR.  ALTHOUGH I WILL

12:27PM  1    TELL YOU ONE THING THAT WE'LL NOT -- I'M NOT GOING TO DISTURB

12:27PM  2    IS THE FACT THAT YOUR CASE, SIR, WILL TRAIL MS. HOLMES'S CASE.

12:27PM  3    SO WHATEVER I DECIDE AS TO MS. HOLMES, YOU'LL BE THE SECONDARY

12:28PM  4    AS FAR AS TRIAL DATES AS TO THAT.  THE SUGGESTION I THINK FROM

12:28PM  5    THE GOVERNMENT IS THAT ABOUT A THREE MONTH SCHEDULE AFTER THE

12:28PM  6    TRIAL OF MS. HOLMES.

12:28PM  7        BUT, MR. COOPERSMITH, WHAT IS IT THAT YOU WOULD LIKE ME TO

12:28PM  8    KNOW?

12:28PM  9            MR. COOPERSMITH:  THANK YOU.  SO ON THE ISSUE OF

12:28PM 10    TRIAL, I DO UNDERSTAND THE COURT'S RULING.  WE'LL PRESERVE OUR

12:28PM 11    POSITION FOR THE RECORD THAT WE BELIEVE OUR TRIAL SHOULD HAVE

12:28PM 12    GONE FIRST, BUT I WON'T SAY ANY MORE ON THAT.  BUT I DO

12:28PM 13    UNDERSTAND AND RESPECT THE COURT'S RULING.

12:28PM 14        WITH REGARD TO THE TRIAL DATE, I UNDERSTAND THAT WE HAVE A

12:28PM 15    STATUS CONFERENCE ON AUGUST 31ST I BELIEVE IT'S SCHEDULED.  SO

12:28PM 16    I'M SURE IF THAT STANDS WE'LL BE TALKING MORE ABOUT THAT THEN.

12:28PM 17        FOR NOW, YOUR HONOR, UNFORTUNATELY EVERYTHING THAT

12:28PM 18    MR. WADE SAID AND MR. LEACH SAID ABOUT THE COVID CRISIS AND

12:28PM 19    YOUR HONOR SAID IS RIGHT.  WE'RE SORT OF AT THE MERCY OF THOSE

12:28PM 20    UNFORTUNATE CIRCUMSTANCES.

12:28PM 21        WE WOULD LIKE TO GET THIS CASE TRIED, TOO.  MR. BALWANI

12:28PM 22    HAS BEEN LIVING WITH THIS INVESTIGATION SINCE 2016.  HE'S BEEN

12:29PM 23    LIVING WITH THE INDICTMENT SINCE 2018.  IT'S VERY UNFORTUNATE

12:29PM 24    THAT THERE'S SUCH A DELAY IN JUSTICE.

12:29PM 25        BUT THAT SAID, WE, I THINK, UNFORTUNATELY ARE GOING TO

12:29PM  1     HAVE TO, GIVEN THE COURT'S POSITION OF THE ORDER OF TRIAL,

12:29PM  2     AWAIT MS. HOLMES'S TRIAL.  IF THE TRIAL REALLY TAKES THREE

12:29PM  3     MONTHS, THEN WE'LL HAVE TO TRY THAT AT SOME POINT, AND WE'RE

12:29PM  4     HAPPY TO RECONFER WITH THE GOVERNMENT ONCE THE HOLMES TRIAL IS

12:29PM  5     SET ON WHAT EXACTLY THE SCHEDULE FOR MR. BALWANI SHOULD LOOK

12:29PM  6     LIKE AND TALK ABOUT THAT WITH THE COURT MORE ON AUGUST 31ST IF

12:29PM  7     THAT WORKS FOR YOU, YOUR HONOR.

12:29PM  8             THE COURT:  ALL RIGHT.  THANK YOU, MR. COOPERSMITH.

12:29PM  9     I APPRECIATE THAT.

12:29PM  10        ANYONE ELSE FROM YOUR TEAM WISH TO BE HEARD?

12:29PM  11            MR. COOPERSMITH:  NO, YOUR HONOR.

12:29PM  12            THE COURT:  I SEE NO HANDS.  ALL RIGHT.  THANK YOU.

12:29PM  13        SO LET'S TALK THEN ABOUT AUGUST 31ST IS A STATUS DATE FOR

12:29PM  14     MR. BALWANI.  I'M CURIOUS IF I SHOULD NOW HAVE MS. HOLMES'S

12:30PM  15     TEAM AND ALL YOU MEET AND CONFER ABOUT -- I APPRECIATE YOU

12:30PM  16     GIVING ME THESE PARTICULAR DATES HERE.

12:30PM  17        IN LIGHT OF THE -- MS. HOLMES'S SUGGESTION ABOUT

12:30PM  18     ADDITIONAL LITIGATION, I WOULD LIKE TO KNOW, TO THE EXTENT THAT

12:30PM  19     YOU CAN, MR. WADE, AND I'M NOT ASKING YOU TO DISCLOSE ANYTHING

12:30PM  20     THAT DISRUPT YOUR DEFENSE SCHEDULE OR ASK YOU TO TELL US WHAT

12:30PM  21     YOUR DEFENSE IS, ANYTHING LIKE THAT, BUT I THINK IT IS

12:30PM  22     APPROPRIATE FOR ME TO ASK YOU TO, NOT JUST TODAY TO RESPOND,

12:30PM  23     BUT TO ASK YOU TO INFORM THE COURT AS TO POTENTIAL MOTIONS THAT

12:30PM  24     YOU MIGHT HAVE AND FILE SUCH THAT THE GOVERNMENT CAN BE AWARE

12:30PM  25     ALSO SO WE CAN ENGAGE A REALISTIC SCHEDULE FOR LITIGATING AND

12:30PM   1    HEARING THOSE MOTIONS SUCH THAT I CAN THEN BE MORE INFORMED TO

12:30PM   2    GIVE US A BETTER DATE FOR TRIAL WHENEVER THAT IS.

12:30PM   3         ONE THING I'M CONCERNING DOING NOW IS NOT DISTURBING THE

12:31PM   4    TRIAL DATE, AND THAT IS PRIMARILY JUST TO KEEP OUR EXCLUSION OF

12:31PM   5    TIME IN EFFECT, BUT NOT DISTURBING ANY OF THE TRIAL DATES,

12:31PM   6    HOWEVER, SCHEDULE A STATUS CONFERENCE AGAIN AT SOME POINT.  IT

12:31PM   7    MIGHT BE AUGUST 31ST.  IT MIGHT BE BEFORE THAT.

12:31PM   8         BUT I'D LIKE THE PARTIES TO MEET AND CONFER TO DISCUSS

12:31PM   9    ANOTHER, AND I'VE USED THIS PHRASE BEFORE IN THIS CASE, A

12:31PM   10   REALISTIC SCHEDULE FOR MOTIONS.

12:31PM   11        NOW, I'D LIKE -- THE ADDITIONAL MOTIONS THAT YOU'VE TALKED

12:31PM   12   ABOUT ARE IMPORTANT ONES.  I DON'T KNOW WHETHER OR NOT, AND I'D

12:31PM   13   LIKE YOUR OPINIONS ABOUT WHETHER OR NOT THOSE WOULD DISTURB ANY

12:31PM   14   OF THE OTHER DECISIONS THAT THE COURT HAS MADE ON ANY EVIDENCE,

12:31PM   15   NOT THAT WE'VE MADE MUCH, BUT I DON'T WANT TO, IF THE CASE IS

12:31PM   16   CONTINUED INTO NEXT YEAR, I DON'T WANT TO START A COMPLETELY

12:31PM   17   NEW SCHEDULE SUCH THAT WE LOSE ANY OF THE MOMENTUM THAT WE'VE

12:31PM   18   CAPTURED, ANY OF THE WORK THAT YOU'VE DONE AND WE START OVER

12:32PM   19   AGAIN.  THAT DOESN'T ACCOMPLISH ANYTHING.  I'M NOT INTERESTED

12:32PM   20   IN THAT.

12:32PM   21        MR. WADE:  NO.  WE AGREE, YOUR HONOR.  WE AGREE.

12:32PM   22        IF I COULD BE HEARD BRIEFLY ON YOUR COMMENTS?

12:32PM   23        THE COURT:  SURE.

12:32PM   24        MR. WADE:  WE DON'T INTEND TO FUNDAMENTALLY CHANGE

12:32PM   25   THINGS.  WE INTEND TO CONTINUE TO MOVE FORWARD.  THE GOVERNMENT

12:32PM  1    HAS EXPANDED THE SCOPE OF THE CASE, AND THERE ARE A NUMBER OF

12:32PM  2    THINGS THAT FLOW FROM THAT, AS WE TALKED ABOUT FOR MUCH OF THE

12:32PM  3    ARGUMENT TODAY.  OBVIOUSLY THOSE ARE THINGS THAT WE ARE GOING

12:32PM  4    TO HAVE TO DEAL WITH.

12:32PM  5         WITH RESPECT TO THE MOTIONS, WE STARTED THE WORK ON THAT

12:32PM  6    IN ANTICIPATION OF THIS, BUT OBVIOUSLY THERE IS MORE WORK TO BE

12:32PM  7    DONE.  WE DO THINK THAT ONE MOTION AT LEAST SORT OF AS A MATTER

12:32PM  8    OF RECORD WOULD NEED TO REPRISE PRIOR MOTIONS TO MAKE SURE THAT

12:32PM  9    OUR PRIOR ARGUMENTS APPLY TO THE NEW INDICTMENT AND THE PRIOR

12:33PM 10    RULING APPLIES TO THE NEW INDICTMENT TO THE EXTENT THAT THE NEW

12:33PM 11    INDICTMENT DOESN'T CHANGE THE NATURE OF THAT RULING.

12:33PM 12         AND THEN WE THINK THERE ARE SEVERAL ADDITIONAL MOTIONS,

12:33PM 13    FOUR OR FIVE DIFFERENT MOTIONS TO DISMISS THE INDICTMENT.  YOUR

12:33PM 14    HONOR HAS HEARD ABOUT SOME OF THEM TODAY.  OBVIOUSLY, THERE'S A

12:33PM 15    STATUTE OF LIMITATIONS MOTION WITH RESPECT TO CERTAIN COUNTS,

12:33PM 16    THERE WILL BE A NOTICE RELATED MOTION AND A FEW OTHER THINGS.

12:33PM 17         I THINK WHILE WE TRIED TO PREPARE, OUR ANTICIPATION WOULD

12:33PM 18    BE THAT OUR HOPE IS WE GET THOSE IN FRONT OF THE COURT

12:33PM 19    REASONABLY QUICKLY AND FIND A TIME WHEN THAT IS DONE AND THE

12:33PM 20    GOVERNMENT WOULD HAVE AN APPROPRIATE AMOUNT OF TIME TO RESPOND,

12:33PM 21    BUT I WOULD GUESS THAT WITHIN A MONTH WE COULD GET ALL OF THOSE

12:33PM 22    MOTIONS ON FILE.

12:33PM 23         I THINK I HEARD MR. LEACH SAY HE WAS LOOKING FOR

12:34PM 24    THREE WEEKS.  HE MAY WANT A MONTH.  I DON'T -- I WANT TO BE

12:34PM 25    FAIR TO THE GOVERNMENT HONESTLY.  AND FUNDAMENTALLY, I WANT TO

12:34PM   1    ACT CONSISTENT WITH THE DIRECTION PROVIDED BY THE COURT.

12:34PM   2    FRANKLY, WHILE WE ALWAYS ADHERE TO IT, I'M NOT SURE WE NEED IT

12:34PM   3    HERE.  WE WANT TO MOVE THIS FORWARD.  WE SHARE THAT DESIRE, BUT

12:34PM   4    WE SHARE THE CONCERNS THAT THE COURT -- THAT WE DISCUSSED

12:34PM   5    BEFORE AND THAT THE COURT IDENTIFIED.

12:34PM   6         SO I THINK IF MORE BROADLY WE WERE TO MEET AND CONFER,

12:34PM   7    RECOGNIZING THE COURT HASN'T FORMALLY MOVED THE TRIAL DATE BUT

12:34PM   8    IS INCLINED TO AFTER HEARING FROM THE COURT, FROM THE PARTIES

12:34PM   9    ON THE PARTICULARS, WE CAN CERTAINLY MEET AND CONFER WITH THE

12:34PM   10   GOVERNMENT AND FIND A TIME TO COME BACK IN FRONT OF THE COURT

12:34PM   11   IF NEED BE, OR IT MAY BE THAT WE CAN JUST AGREE TO A SCHEDULE

12:34PM   12   AND THE COURT CAN ORDER IT.  WHATEVER THE COURT THINKS WILL

12:34PM   13   MAKE SENSE.  BUT WE CAN CERTAINLY DO THAT WITHIN A WEEK OR TWO

12:34PM   14   I WOULD THINK IF THAT IS OF BENEFIT TO THE COURT.

12:34PM   15             THE COURT:  THANK YOU.

12:35PM   16        MR. LEACH.

12:35PM   17             MR. LEACH:  WE CERTAINLY CAN WORK WITH DEFENSE

12:35PM   18   COUNSEL ON AN APPROPRIATE SCHEDULE WITH THE OCTOBER DATE IN

12:35PM   19   MIND, YOUR HONOR.

12:35PM   20        I NEED TO EMPHASIZE, THOUGH, MUCH OF THE WORK FROM THE

12:35PM   21   GOVERNMENT'S PERSPECTIVE GOING FORWARD IS MEETING WITH

12:35PM   22   WITNESSES WHO WE HAVE SUBPOENAED, WHO WE HAVE TOLD BE READY IN

12:35PM   23   OCTOBER WHO ARE HOLDING THAT TIME AND WHO ARE MAKING

12:35PM   24   SUBSTANTIAL SACRIFICES IN ORDER TO, A, MEET WITH US, AND ALSO

12:35PM   25   HOLD THAT TIME FROM THEIR SCHEDULE.

12:35PM 1        AND SO IT'S NOT -- FROM THE GOVERNMENT'S PERSPECTIVE, IT'S

12:35PM 2    DIFFICULT TO TURN THOSE THINGS ON A DIME.  AND IF -- AS I'VE

12:35PM 3    SAID IN MY EARLIER REMARKS, HOLDING A DATE FOR THE PURPOSE OF

12:35PM 4    HOLDING A DATE POSES SOME GREAT DIFFICULTIES TO US IF EVERYBODY

12:35PM 5    KNOWS THAT'S NOT GOING TO HAPPEN.

12:35PM 6        SO I THINK THE PRUDENT THING WE COULD DO IS SET THE

12:35PM 7    SCHEDULE, WE CAN LITIGATE WHATEVER WE NEED TO LITIGATE THROUGH

12:36PM 8    THAT, AND THEN HAVE THAT DATE CERTAIN IN MIND AND STICK TO IT.

12:36PM 9    WE WOULD URGE THE COURT TO DO THAT, BUT WHATEVER DATE SET WE

12:36PM 10    WILL MEET.  THE GOVERNMENT WILL BE READY.

12:36PM 11        THE COURT:  WELL, THANK YOU.  I THINK IT'S FAIR TO

12:36PM 12    SAY, MR. LEACH, AND I RECOGNIZE THE ISSUE THAT YOU HAVE TOLD

12:36PM 13    YOUR CLIENTS -- EXCUSE ME, YOUR WITNESSES THAT THERE'S A DATE

12:36PM 14    CERTAIN AND THE JUDGE WAS FIRM ON THAT, AND I WAS, AND COVID

12:36PM 15    INTERRUPTED IT.  I SUPPOSE THAT'S MY EXCUSE.  BUT YOU CAN

12:36PM 16    CERTAINLY POINT THE FINGER BACK TO THE JUDGE, AND I INVITE YOU

12:36PM 17    TO DO THAT.

12:36PM 18        TO THE EXTENT THAT YOU NEED SOME RELIEF FROM THAT, YOU

12:36PM 19    SHOULD RECOGNIZE -- LET ME JUST SAY THAT I INDICATED I WOULD

12:36PM 20    LEAVE THE DATE.  I'M NOT GOING TO DISTURB THE CURRENT TRIAL

12:36PM 21    DATE.  I'M DOING THAT TO, AS I SAID, TO KEEP THE TIME

12:36PM 22    EXCLUSIONS IN PLACE AND ALL OF THE OTHER ISSUES REGARDING THAT

12:36PM 23    IN PLACE.

12:36PM 24        WHAT I WILL TELL YOU IS THAT IT IS UNREALISTIC THAT WE ARE

12:37PM 25    GOING TO GO TO TRIAL ON THAT DATE.  IT'S JUST NOT GOING TO

12:37PM  1    HAPPEN.

12:37PM  2         SO IF THAT RELIEVES YOU FROM THOSE APPOINTMENTS YOU HAVE

12:37PM  3    WITH WITNESSES, I HOPE THAT GIVES YOU AND THEM SOME REASSURANCE

12:37PM  4    THAT THEY WON'T BE NEEDED FOR THAT TRIAL DATE.

12:37PM  5         THEN THEY'LL ASK YOU, OKAY, WHEN SHOULD WE RESCHEDULE?

12:37PM  6    WHEN IS THE NEW DATE?  THAT'S THE DATE THEN, AND I HEARD YOU

12:37PM  7    ALL TELL ME YOUR OPINIONS, THE APRIL AND THE FEBRUARY DATE.  I

12:37PM  8    WOULD LIKE YOU TO GIVE ME SOME MORE INFORMATION ABOUT WHAT WORK

12:37PM  9    THAT YOU WILL DO BETWEEN NOW AND THE EARLIER OF THOSE TRIAL

12:37PM  10   DATES BEING FEBRUARY, WHAT YOUR SCHEDULE IS GOING TO BE TO

12:37PM  11   ACCOMPLISH ALL OF THE MOTION PRACTICE THAT IS GOING TO BE

12:37PM  12   NEEDED ON THE CHARGING DOCUMENT.

12:37PM  13        MY SENSE IS WHAT -- AS I SAID, WHAT I WOULD LIKE TO HAVE

12:37PM  14   DONE, AND MY WISH LIST IS THAT WE HAVE ALL OF THE LITIGATION

12:37PM  15   AND THE PRETRIAL LITIGATION AS TO CHARGING DOCUMENTS AND IF IT

12:38PM  16   SURVIVES THAT, THERE IS A CASE THAT GOES FORWARD, WHATEVER THAT

12:38PM  17   CASE IS, IT GOES FORWARD SUCH THAT ALL OF YOUR WITNESS

12:38PM  18   PRODUCTION IS DONE.  OF COURSE WE'VE TALKED ABOUT OTHER

12:38PM  19   EXAMINATIONS THAT NEED TO BE ACCOMPLISHED AND THAT HAS TO --

12:38PM  20   THAT SCHEDULING SHOULD GO FORWARD AS WELL AND ACCOMPLISH ALL OF

12:38PM  21   THE WORK THAT NEEDS TO BE DONE THERE.

12:38PM  22        SO I'D LIKE YOU TO MEET AND CONFER AND TALK ABOUT ALL OF

12:38PM  23   THOSE THINGS THAT YOU NEED TO ACCOMPLISH VIS-A-VIS AN EARLIER

12:38PM  24   TRIAL DATE.  I HEARD THE GOVERNMENT SAY FEBRUARY.  YOU MIGHT

12:38PM  25   WANT TO LOOK AT THAT DATE, THE EARLIER OF THOSE DATES, THAT IS,

12:38PM   1    THE FEBRUARY DATE AS OPPOSED TO THE APRIL, AND LOOK AND SEE IF

12:38PM   2    THINGS CAN BE DONE BY FEBRUARY?  DO YOU NEED TO GO INTO MARCH?

12:38PM   3    DOES IT REALLY REQUIRE AN APRIL DATE?

12:38PM   4         ALL OF THIS, OF COURSE, IS GOING TO BE GUIDED, ISN'T IT,

12:38PM   5    BY THE CLOUD OF COVID?  I HOPE THESE GOOD SCIENTISTS, WHEREVER

12:38PM   6    THEY'RE WORKING, I HOPE THEY'RE ABLE TO FIND A VACCINE FOR ALL

12:39PM   7    OF US.  THAT WOULD BE A MIRACLE, AND IT WOULD BE WELL RECEIVED

12:39PM   8    BY THE PLANET.

12:39PM   9         BUT WE NEED TO -- IT'S SUCH A DYNAMIC CIRCUMSTANCE, WE

12:39PM   10   NEED TO PREPARE FOR THE FACT THAT THERE IS THE SECOND WAVE.

12:39PM   11   AND I HEARD THIS MORNING ON THE RADIO COMING IN WHEN DOES THE

12:39PM   12   SECOND WAVE START IF WE'RE STILL IN A FIRST WAVE IN DECEMBER IN

12:39PM   13   THE MIDDLE OF THE INFLUENZA SEASON?  WE JUST DON'T KNOW THOSE

12:39PM   14   THINGS, WE JUST DON'T.  SO IT IS DYNAMIC IN THAT REGARD.

12:39PM   15        I'M HOPEFUL THAT WE CAN GET THE CASE TRIED IN Q1 OF NEXT

12:39PM   16   YEAR.  THAT WOULD BE MY GOAL.  I THINK IT'S YOURS AS WELL.

12:39PM   17        BUT WHAT THAT EXACT DATE IS, I DON'T HAVE COMPLETE

12:39PM   18   INFORMATION TO SET THAT DATE TODAY.

12:39PM   19        I APPRECIATE YOUR OFFERS OF THESE DATES, AND THEY MIGHT BE

12:39PM   20   GOOD ONES, AND IT MIGHT BE -- IT MAY BE THAT THE APRIL DATE IS

12:39PM   21   THE ONE, SINCE WE'VE SELECTED IT FOR MR. BALWANI, IT MIGHT BE

12:39PM   22   EASY TO JUST SLIDE IN AND USE THAT.

12:39PM   23        BUT I APPRECIATE THE GOVERNMENT'S DESIRE TO GET THE CASE

12:40PM   24   MOVING AND THEIR THOUGHT THAT WE CAN GET IT PERHAPS GOING

12:40PM   25   BEFORE THEN RECOGNIZING THAT IN FEBRUARY WE WOULD HAVE TO SET

12:40PM  1    OUR OR WE WOULD LIKE TO SET OUR FINAL PRETRIAL CONFERENCE THAT

12:40PM  2    WOULD BE SOME TIME IN JANUARY.  I WOULD LIKE TO HAVE THAT ABOUT

12:40PM  3    THREE OR FOUR WEEKS IN ADVANCE OF THE TRIAL DATE.

12:40PM  4        HERE WE MIGHT WANT TO DO IT A LITTLE MORE THAN THAT, JUST

12:40PM  5    BECAUSE I THINK, AS WE EXPERIENCED TODAY, THE MOTIONS IN LIMINE

12:40PM  6    WILL PROBABLY BE EXTENSIVE.  I'M JUST GUESSING, BUT I THINK

12:40PM  7    IT'S AN EDUCATED GUESS THAT WE'LL PROBABLY HAVE EXTENSIVE

12:40PM  8    MOTION IN LIMINE PRACTICE HERE AS WELL THAT WILL OCCUPY SOME

12:40PM  9    TIME.

12:40PM  10       SO HOW MUCH TIME DO YOU THINK THAT YOU WOULD NEED OR YOU

12:40PM  11   WOULD LIKE, MR. LEACH, MR. WADE, TO MEET AND CONFER?

12:40PM  12       SHOULD I LEAVE THE AUGUST 31ST CONFERENCE DATE, STATUS

12:40PM  13   DATE NOW AND USE THAT?  OR SHOULD WE COME BACK BEFORE THEN?

12:41PM  14           MR. LEACH:  YOUR HONOR, I THINK IT WOULD BE PRUDENT

12:41PM  15   TO COME BACK BEFORE THEN JUST SO WE CAN REACH RESOLUTION ON

12:41PM  16   THESE ISSUES.

12:41PM  17           THE COURT:  SURE.

12:41PM  18           MR. LEACH:  AND WE'LL -- SO I THINK A DATE IN EARLY

12:41PM  19   AUGUST IS APPROPRIATE.

12:41PM  20           THE COURT:  OKAY.  MR. WADE, YOU'RE OKAY WITH THAT?

12:41PM  21           MR. WADE:  I BELIEVE I AM, YOUR HONOR.  MAYBE THE --

12:41PM  22           THE COURT:  LET ME -- LET'S TURN TO MS. KRATZMANN,

12:41PM  23   THE KEEPER OF ALL THINGS, AND ASK HER WHAT LOOKS GOOD FOR US.

12:41PM  24           MR. WADE:  I'M USED TO SEEING THAT BIG CALENDAR UP

12:41PM  25   ON THE WALL, YOUR HONOR.  IT'S VERY DISORIENTING NOT TO HAVE

| | | |
|---|---|---|
| 12:41PM | 1 | IT. |
| 12:41PM | 2 | THE COURT:  IT IS.  IMAGINE HOW I FEEL?  I'M SITTING |
| 12:41PM | 3 | HERE ALONE WITH A LAPTOP, A PENCIL, AND A PAD, AND THERE IS NO |
| 12:41PM | 4 | CALENDAR, AND THERE'S NOBODY TO TURN TO. |
| 12:41PM | 5 | (LAUGHTER.) |
| 12:41PM | 6 | THE CLERK:  YOUR HONOR, MIGHT I SUGGEST AUGUST 10TH |
| 12:41PM | 7 | AT 10:00 A.M. |
| 12:42PM | 8 | THE COURT:  IS THAT A MONDAY? |
| 12:42PM | 9 | THE CLERK:  THAT IS A MONDAY, YOUR HONOR. |
| 12:42PM | 10 | THE COURT:  IT IS A MONDAY. |
| 12:42PM | 11 | DOES THAT WORK FOR THE PARTIES? |
| 12:42PM | 12 | MR. WADE:  YOUR HONOR, I HAPPEN TO HAVE A CONFLICT |
| 12:42PM | 13 | ON THAT DATE.  IS IT POSSIBLE THAT WE CAN DO EITHER THE 3RD OR |
| 12:42PM | 14 | THE 17TH? |
| 12:42PM | 15 | THE COURT:  LET'S SEE.  MS. KRATZMANN, WE CAN DO A |
| 12:42PM | 16 | DATE OTHER THAN A MONDAY IF NEED BE.  WE CAN SPECIAL SET THIS. |
| 12:42PM | 17 | THE CLERK:  WE COULD, YOUR HONOR. |
| 12:42PM | 18 | IS THE WEEK OF THE 10TH NOT AVAILABLE FOR COUNSEL?  WE |
| 12:42PM | 19 | COULD DO AUGUST 11TH OR 12TH. |
| 12:42PM | 20 | MR. WADE:  YOUR HONOR, MIGHT I ASK IF WE MIGHT JUST |
| 12:42PM | 21 | CONFER WITH COLLEAGUES AND CIRCLE BACK WITH MS. KRATZMANN -- |
| 12:42PM | 22 | THE COURT:  YES. |
| 12:42PM | 23 | MR. WADE:  -- TO MAKE SURE WE FIND A DATE?  IT'S A |
| 12:42PM | 24 | LITTLE HARD TO DO.  NORMALLY WE WOULD BE WHISPERING IN EACH |
| 12:42PM | 25 | OTHER'S EARS RIGHT NOW, AND IT'S A LITTLE DIFFICULT TO DO THAT. |

12:43PM 1      SO MAYBE WE CAN DO THAT AND CONFER WITH THE GOVERNMENT AND

12:43PM 2   COME UP WITH A DATE IN THAT WINDOW.

12:43PM 3      THE COURT:  RIGHT.  WELL, LET ME DO THIS.  THEN I

12:43PM 4   WON'T DISTURB THE TRIAL DATE NOW JUST FOR PURPOSES OF OBSERVING

12:43PM 5   THE TRIAL EXCLUSION.

12:43PM 6      I AM GOING TO -- YOU UNDERSTAND, MR. LEACH, YOU'RE

12:43PM 7   RELIEVED FROM -- THERE'S NOT GOING TO BE ANY WITNESSES THAT

12:43PM 8   DATE, AND YOU DON'T NEED TO GO FORWARD WITH ANY OF THAT WORK

12:43PM 9   THAT YOU TOLD ME ABOUT.

12:43PM 10      MR. LEACH:  UNDERSTOOD, YOUR HONOR.  JUST SO I'M

12:43PM 11   CLEAR, I BLAME MYSELF FOR THAT, NOT THE COURT, WHEN I'M DEALING

12:43PM 12   WITH WITNESSES.  SO PLEASE DON'T WORRY ABOUT THAT.

12:43PM 13      THE COURT:  OKAY.

12:43PM 14      BUT WHAT I WILL DO IS HAVE YOU MEET AND CONFER AND GET

12:43PM 15   BACK TO MS. KRATZMANN AS TO A DATE THAT YOU THINK IS

12:43PM 16   APPROPRIATE FOR OUR FURTHER STATUS CONFERENCE IN RE TRIAL DATE.

12:43PM 17   AND WHAT I'D LIKE YOU TO DO IS TO TALK ABOUT, TO THE EXTENT

12:43PM 18   THAT YOU CAN, THE ADDITIONAL MOTION PRACTICE THAT NEEDS TO BE

12:43PM 19   DONE, ANY OTHER MOTIONS AND ANY OTHER -- ANYTHING THAT YOU

12:44PM 20   THINK WOULD CONSUME SOME TIME SUCH THAT WE CAN SET, SO THE

12:44PM 21   COURT CAN SET A REALISTIC TRIAL DATE AT LEAST ON OUR END FOR

12:44PM 22   NEXT YEAR, AND WE'LL SET THAT DATE.  IT DOESN'T HAVE TO BE ON A

12:44PM 23   MONDAY.

12:44PM 24      MS. KRATZMANN CAN TALK WITH YOU ABOUT SPECIAL SETTING

12:44PM 25   SOMETHING, AND IT WILL BE A ZOOM HEARING AGAIN FOR THAT

12:44PM  1    PURPOSE.

12:44PM  2         AND THEN WE'LL LEAVE MR. BALWANI'S AUGUST 31ST DATE

12:44PM  3    UNDISTURBED, WE'LL LEAVE THAT STATUS DATE UNDISTURBED NOW AND

12:44PM  4    ANY TIME EXCLUSIONS WE'LL CONTINUE TO THAT DATE.

12:44PM  5         ANY OBJECTION TO THAT, MR. COOPERSMITH?

12:44PM  6         MR. COOPERSMITH:  YOUR HONOR, NO OBJECTION TO AN

12:44PM  7    AUGUST 31ST STATUS CONFERENCE THAT IS ALREADY ON CALENDAR.

12:44PM  8         THE ONE THING I WOULD LIKE TO CLARIFY WITH YOUR HONOR IS

12:44PM  9    ON THE MEET AND CONFER THAT YOUR HONOR HAS DIRECTED REGARDING

12:45PM 10    THE TRIAL DATE FOR MS. HOLMES'S TRIAL AND THE MOTIONS PRACTICE,

12:45PM 11    DOES THE COURT ENVISION THAT WE WOULD BE A PART OF THAT?  WE

12:45PM 12    CERTAINLY WOULD LIKE TO BE BECAUSE, ONE, THE TRIAL DATE FOR

12:45PM 13    MS. HOLMES OBVIOUSLY DIRECTLY AFFECTS US AND IT'S DISCONCERTING

12:45PM 14    TO JUST BE PRESENTED WITH SOMETHING AS A FAIT ACCOMPLI WITHOUT

12:45PM 15    HAVING HAD ANY INPUT.

12:45PM 16         AND THEN SECOND, ON SOME, ALTHOUGH PERHAPS NOT ALL, OF THE

12:45PM 17    MOTIONS WE FEEL LIKE WHATEVER RULING IS MADE FROM AN

12:45PM 18    EVIDENTIARY STANDPOINT AND SO FORTH DOES HAVE AN IMPACT ON US

12:45PM 19    AS WELL FOR THE SECOND TRIAL.

12:45PM 20         SO WE WOULD LIKE TO BE, AND I'M HOPING THE COURT ENVISIONS

12:45PM 21    WE WOULD BE PART OF THAT MEET AND CONFER PROCESS EVEN THOUGH

12:45PM 22    OUR STATUS CONFERENCE REMAINS ON AUGUST 31ST.

12:45PM 23         THE COURT:  MR. LEACH?

12:45PM 24         MR. LEACH:  I HAVE NO OBJECTION, YOUR HONOR.

12:45PM 25         THE COURT:  OKAY.  SO I KNOW YOU'VE ALL SEEN THE

| | | |
|---|---|---|
| 12:45PM | 1 | PLAY "HAMILTON," MR. COOPERSMITH.  SO IT APPEARS THAT MR. LEACH |
| 12:45PM | 2 | IS GOING TO ALLOW YOU IN THE ROOM I THINK IS THE SONG. |
| 12:45PM | 3 | ALL RIGHT.  YOU CAN BE PART OF THAT, AND TO THE EXTENT |
| 12:46PM | 4 | THAT YOU CAN HAVE SOME ASSISTANCE FOR EFFICIENCY OF DATES, THAT |
| 12:46PM | 5 | WOULD BE HELPFUL.  THANK YOU. |
| 12:46PM | 6 | BUT YOUR STATUS DATE, MR. COOPERSMITH, INCLUDING ANY TIME |
| 12:46PM | 7 | EXCLUSION, AND YOU HAVE NO OBJECTION TO EXCLUDING TIME FOR YOUR |
| 12:46PM | 8 | CLIENT TO ALLOW YOU TO EFFECTIVELY -- CONTINUE TO EFFECTIVELY |
| 12:46PM | 9 | PREPARE. |
| 12:46PM | 10 | MR. COOPERSMITH:  THAT'S CORRECT, YOUR HONOR. |
| 12:46PM | 11 | THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL NOTE THAT |
| 12:46PM | 12 | TIME EXCLUSION. |
| 12:46PM | 13 | AND THEN I'LL WAIT TO HEAR FROM YOU, MS. KRATZMANN WILL |
| 12:46PM | 14 | HEAR FROM YOU, AND THEN WE'LL SCHEDULE THE NEXT STATUS |
| 12:46PM | 15 | CONFERENCE ACCORDINGLY. |
| 12:46PM | 16 | AS TO THE MOTIONS THEMSELVES THAT ARE ON THE TABLE TODAY, |
| 12:46PM | 17 | I ALSO WANT YOU, IN YOUR MEET AND CONFER, I THINK IT WOULD BE |
| 12:46PM | 18 | HELPFUL -- I'M GOING TO TAKE THEM UNDER SUBMISSION, BUT I THINK |
| 12:46PM | 19 | IT WOULD BE HELPFUL ALSO AND WHEN WE NEXT GET TOGETHER FOR YOU |
| 12:46PM | 20 | TO TELL ME NOT JUST THE DATES AND THE WORK THAT YOU THINK NEEDS |
| 12:46PM | 21 | TO BE DONE, BUT ALSO THE EFFECT OF THOSE MOTIONS AND ANY OTHER |
| 12:46PM | 22 | ADDITIONAL MOTION PRACTICE THAT YOU THINK MIGHT HAVE BEARING ON |
| 12:47PM | 23 | THE COURT'S RULINGS ON THESE MOTIONS AND WHY OR HOW THE COURT |
| 12:47PM | 24 | SHOULD RULE ON THESE PARTICULAR MOTIONS. |
| 12:47PM | 25 | DO YOU UNDERSTAND THAT QUESTION, MR. WADE? |

| | | |
|---|---|---|
| 12:47PM | 1 | MR. WADE:  I DO, YOUR HONOR. |
| 12:47PM | 2 | THE COURT:  MR. LEACH? |
| 12:47PM | 3 | MR. LEACH:  I DO, YOUR HONOR.  THANK YOU, |
| 12:47PM | 4 | YOUR HONOR. |
| 12:47PM | 5 | THE COURT:  I THINK I'VE GIVEN YOU SOME HINTS ABOUT |
| 12:47PM | 6 | AT LEAST SOME OF THE GOVERNMENT -- AND THIS REALLY IS RELATED |
| 12:47PM | 7 | TO THE GOVERNMENT'S INFORMATION REGARDING THE GOVERNMENT'S |
| 12:47PM | 8 | EXPERTS AND THINGS. |
| 12:47PM | 9 | AS I SAID, I EXPECT THAT I'LL -- AND THE GOVERNMENT SHOULD |
| 12:47PM | 10 | EXPECT THAT THE COURT WOULD WANT SOME ADDITIONAL FOUNDATIONAL |
| 12:47PM | 11 | AS TO SOME OF THESE WITNESSES IF THEY MOVE FROM -- WHAT IS IT? |
| 12:47PM | 12 |  -- PERCIPIENT OBSERVATION TO MORE OF THE 702 TYPE THAT WE'VE |
| 12:47PM | 13 | TALKED ABOUT, AND I THINK IT RELATES TO THOSE SIX WITNESSES |
| 12:47PM | 14 | THAT WE TALKED ABOUT EARLIER, THE DOCTORS AND THE OTHERS. |
| 12:47PM | 15 | OKAY.  ANYTHING FURTHER BEFORE WE CONCLUDE TODAY'S HEARING |
| 12:47PM | 16 | OTHER THAN ME WISHING YOU WELL AND THAT YOU AND YOUR FAMILIES |
| 12:48PM | 17 | REMAIN SAFE.  IT'S ALWAYS A PLEASURE TO SEE ALL OF YOU.  I |
| 12:48PM | 18 | APPRECIATE THAT. |
| 12:48PM | 19 | ANYTHING FURTHER? |
| 12:48PM | 20 | MR. LEACH:  NOT FROM THE GOVERNMENT, YOUR HONOR. |
| 12:48PM | 21 | THANK YOU VERY MUCH FOR THE TIME AND THE COURT'S COMMENTS. |
| 12:48PM | 22 | THE COURT:  THANK YOU. |
| 12:48PM | 23 | MR. WADE? |
| 12:48PM | 24 | MR. WADE:  NOTHING FURTHER FROM MS. HOLMES, |
| 12:48PM | 25 | YOUR HONOR.  WE, TOO, WE WISH THE SAME TO THE COURT, AND WE |

12:48PM  1      APPRECIATE THE COURT'S COMMENTS, AND I HOPE EVERYONE CONTINUES

12:48PM  2      TO BE SAFE, YOU AND ALL OF YOUR STAFF.

12:48PM  3                  THE COURT:  THANK YOU VERY MUCH.

12:48PM  4                  MR. COOPERSMITH:  NOTHING FURTHER FROM MR. BALWANI.

12:48PM  5      AND, OF COURSE, WE ECHO THOSE COMMENTS AS WELL.  THANK YOU.

12:48PM  6                  THE COURT:  THANK YOU.  WE'LL SEE YOU SOON.  WE'LL

12:48PM  7      END THIS ZOOM CONFERENCE NOW.

12:48PM  8            THANK YOU, MS. KRATZMANN.

12:48PM  9                  THE CLERK:  COURT IS ADJOURNED.

12:48PM  10           (COURT CONCLUDED AT 12:48 P.M.)

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7           I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8      STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9      280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10     CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12     A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13     ABOVE-ENTITLED MATTER.

14

15

16     _____
       IRENE RODRIGUEZ, CSR, RMR, CRR
       CERTIFICATE NUMBER 8074

17

18                       DATED:  JULY 21, 2020

19

20

21

22

23

24

25

# EXHIBIT G

| | |
|---|---|
| **From:** | Jack Lord |
| **To:** | Donald Lucas |
| **Sent:** | 9/22/2013 6:24:06 PM |
| **Subject:** | Re: Checking in |

I am just boarding a flight to Dallas - land 630 eastern

Sent from my iPhone

> On Sep 22, 2013, at 2:18 PM, Donald Lucas <█████ █████████> wrote:
>
> Yes done. What time zone are you in. Just landed at JFK
>
> Don Lucas
> Lucas Venture Group
> 545 Middlefield Road: USA
> O: (650) ██████
> C: (650) ██████
>
>
>> On Sep 22, 2013, at 2:16 PM, "Jack Lord" <██████████████> wrote:
>>
>> Thanks Don - what are best times and number for a call?
>> Also please pass on note about K-1 to someone in your office
>>
>> Sent from my iPhone
>>
>>> On Sep 22, 2013, at 2:12 PM, Donald Lucas <█████████████> wrote:
>>>
>>> All good Jon. I am investing $20 million into a company you should be interested in. Eric Topol has tweeted a lot about it. Theranos. It is a deal my dad was Chairman of until his Alzheimer's. I was given the opportunity by Eluzabeth, the founder and CEO as a continuation of his legacy. She also asked me to work with her as an advisor to the company. They do not need any money they have been cash flow positive since 2006. World changer. Revolutionary. I am buying stock at a price set in 2011 which was $6 billion. Trust me, you probably just spit up your vodka, it is a deal.
>>> Just arriving in NYC for meeting with ceo of JDRF and global head of research. Short fuse here. Have to close by September 30th.
>>> Very confidential. My dads group/ side of the family does not know that I am involved.
>>> Www.theranos.com.
>>> Or lucasventuregroup. Com
>>>
>>> Call me if you are serious can tell more.
>>> Best regards
>>> Don
>>>
>>> Don Lucas
>>> Lucas Venture Group
>>> 545 Middlefield Road: USA
>>> O: (650) ██████
>>> C: (650) ██████
>>>
>>>
>>>> On Sep 22, 2013, at 7:35 AM, "Jonathan Lord" <████████████> wrote:
>>>>
>>>> Hope all is well Don - keep up with the family through Facebook
>>>> What's new on your end?
>>>> Also - we are hunting down the K-1's for this year so we can close out taxes - please advise
>>>> Cheers
>>>> J