ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Vanessa.Baehr-Jones@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI,<br><br>    Defendant. | Case No. 18-CR-00258 EJD<br><br>UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AS TIME-BARRED COUNTS THREE THROUGH EIGHT AND TEN OF THE SECOND SUPERSEDING INDICTMENT AND COUNTS THREE THROUGH EIGHT, TEN, AND ELEVEN OF THE THIRD SUPERSEDING INDICTMENT [DKT. 498 & 503]<br><br>Date: October 6, 2020<br>Time: 10:00 a.m.<br>Court: Hon. Edward J. Davila |

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................1

ARGUMENT ..................................................................................................................................3

I.    Counts Three Through Eight Allege the Same Set of Facts and Are Not Time-Barred..................3

II.    The Information Instituted the Wire Fraud Charges for Patients B.B., E.T., and M.E., Thereby Tolling the Statute of Limitations..................................................................................6

CONCLUSION...............................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Champlin Refining Co. v. United States*, 329 U.S. 29 (1946) ............................................. 10

*Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) ................................................... 7

*Gollust v. Mendell*, 501 U.S. 115 (1991) ................................................................................ 7

*Jaben v. United States*, 381 U.S. 214 (1965) ...................................................................... 8, 9

*United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998) ...................................... 1, 7, 10

*United States v. Carrilllo-Villa*, No. 20 MAG. 3073, 2020 WL 1644773
    (S.D.N.Y. Apr. 2, 2020) ..................................................................................................... 8

*United States v. Charnay*, 537 F.2d 341 (9th Cir. 1976) ....................................................... 4

*United States v. Clawson*, 104 F.3d 250 (9th Cir. 1996) ....................................................... 9

*United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992) ....................................................... 7

*United States v. Habig*, 390 U.S. 222 (1968) ...................................................................... 10

*United States v. Hsin-Yung*, 97 F. Supp. 2d 24 (D. D.C. 2000) ............................................ 7

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013) ................................................................ 6

*United States v. Macklin*, 535 F.2d 191 (2d Cir. 1976) ......................................................... 9

*United States v. Marifat*, No. 17-CR-189, 2018 WL 1806690 (E.D. Cal.
    Apr. 17, 2018) .................................................................................................................... 7

*United States v. O'Neill*, 463 F. Supp. 1205 (E.D. Pa. 1979) ................................................ 5

*United States v. Pacheco*, 912 F.2d 297 (9th Cir. 1990) ................................................... 3, 4

*United States v. Pennant*, No. 04-CR-828, 2009 WL 364974 (E.D. Pa.
    Feb. 11, 2009) .................................................................................................................... 7

*United States v. Sears, Roebuck & Co.*, 785 F.2d 777 (9th Cir. 1986) .......................... 1, 3, 4

*United States v. Sharma*, S.D. Tex. No. 14-CR-61, 2016 WL 2926365
    (May 19, 2016) ................................................................................................................ 11

*United States v. Stewart*, 425 F. Supp. 2d 727 (E.D. Va. 2006) ........................................... 7

*United States v. Watson*, 941 F. Supp. 601 (N.D. W.Va. 1996) ........................................... 7

## STATUTES

18 U.S.C. § 1014 ..................................................................................................................... 5

18 U.S.C. § 3282 ......................................................................................................... 1, 7, 10

| | | |
|---|---|---|
| 18 U.S.C. § 3282(a) | | 6 |
| 18 U.S.C. § 3288 | | 9, 10 |
| 26 U.S.C. § 6531 | | 8 |

**OTHER AUTHORITIES**

Black's Law Dictionary 800 (6th ed. 1990) .................................................................................... 7

**RULES**

Fed. R. Crim. P. 5.1 ......................................................................................................................... 8

Fed. R. Crim. P. 7(b) ....................................................................................................................... 7

## INTRODUCTION

None of the counts in the Second or Third Superseding Indictments are time-barred. Counts Three through Eight, which correspond to Investors #1–6, allege (1) the same offense (wire fraud), (2) the same victims, (3) the same wires with the same alleged dates of transmission, and (4) the same loss amounts as were alleged in the First Superseding Indictment. (Dkt. 449 at 9; Dkt. 469 at 9.) Indeed, the language is verbatim. These allegations also rely on the same set of facts to describe the same conduct. Accordingly, Counts Three through Eight relate back to the First Superseding Indictment and are not time-barred. *See United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 778 (9th Cir. 1986). With respect to Counts Ten and Eleven, Defendants Elizabeth Holmes and Ramesh Balwani ask this Court to ignore the only circuit court decision to address this issue. *See United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998), *cert. denied*, 525 U.S. 1180 (1999). Defendants' arguments are unpersuasive. The plain language reading of "institute" in 18 U.S.C. § 3282, as well as the weight of authority, supports the government's position that the filing of a criminal information with the clerk's office—as the government did here—institutes it for purposes of the statute of limitations. The Court should deny the motion.

## FACTUAL BACKGROUND

On February 11, 2020, the Court issued an order granting in part and denying in part Defendants' motions to dismiss the Superseding Indictment. Of relevance here, the Court held that patients who had not paid Theranos for their blood tests because their insurance companies had covered the cost did not constitute victims of the Defendants' wire fraud. (Dkt. 330 at 28–33.) The Court's order implicated two of the three substantive wire fraud counts relating to the patient scheme, Counts Nine and Ten of the First Superseding Indictment ("FSI"). These counts included both of the alleged patient victims. (*See* Dkt. 39 at 9–10.) Accordingly, the government immediately began the process of selecting alternative wires that would support wire fraud counts relating to paying patient victims.

On April 9, 2020, the government advised Defendant Holmes that the government planned to supersede the Indictment and described the primary differences between the pending indictment and the proposed superseding information, namely, the addition of wire fraud counts relating to patients who

paid for Theranos testing; and the additional details that the conspiracy to defraud investors began no later than 2010, and that Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities. (Dkt. 372 at 2.) On April 13, 2020, the government also provided a draft copy of the Information to Defendant Holmes. (*Id.*) On April 10, 2020, counsel for Defendant Holmes advised the government that Defendant Holmes would not waive her constitutional right to indictment and believed superseding the indictment would necessitate further delay to the schedule under discussion by the parties. (*Id.*) On April 14, 2020, the government filed the draft Information under seal in advance of the April 15, 2020, status conference, and served both Defendants.

On April 30, 2020, the Court updated General Orders 72 and 73 in light of the ongoing COVID-19 public health emergency, and continued the suspension of the Grand Jury until June 1, 2020.

On May 8, 2020, the government filed the Superseding Information ("Information"), which alleged three new substantive wire fraud counts relating to the patient scheme, Counts Nine, Ten, and Eleven, for Patients B.B., E.T., and M.E., respectively. (Dkt. 391 at 10.) The Information also included the additional details about the investor fraud conspiracy. (*Id.* at 4–6.)

Grand Jury proceedings resumed in June. *See* General Order No. 72-3, IN RE: Coronavirus Disease Public Health Emergency.

On July 14, 2020, the Grand Jury returned the Second Superseding Indictment ("SSI"), which included two of the new substantive wire fraud counts relating to the patient scheme, Counts Nine and Ten, for Patients B.B. and E.T., respectively. (Dkt. 449 at 11.) The SSI also included the additional details contained in the Information regarding the conspiracy to defraud investors, namely, the clarification that the conspiracy to defraud investors began no later than 2010 and a more detailed description of Theranos's investors. (*Id.* at 9.) None of the substantive investor wire fraud counts changed. (*Id.*) The language of those counts, Counts Three through Eight, including the alleged investor victims, the dates of the relevant wires, and the alleged losses, remained identical to the allegations in the FSI. (*Id.*)

On July 28, 2020, the Grand Jury returned the Third Superseding Indictment ("TSI"), adding one additional substantive wire fraud count relating to the patient scheme, Count Eleven, for Patient M.E., which was identical to Count Eleven in the Information. (Dkt. 469 at 10; Dkt. 391 at 10.) The TSI was otherwise identical to the SSI.

## ARGUMENT

### I. Counts Three Through Eight Allege the Same Set of Facts and Are Not Time-Barred

The Court should decline to dismiss substantive wire fraud counts in the SSI and TSI that are—in all respects—identical to the counts alleged in the FSI. A superseding indictment that supplants a pending timely indictment relates back to the original indictment and inherits its timeliness as long as the later indictment does not materially broaden or substantially amend the original charges. *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 778 (9th Cir. 1986). The key to whether the superseding indictment "relates back" is notice. If the original indictment gave the defendant sufficient notice of the charges and punishments contained in the superseding indictments, then the superseding indictment relates back and is timely. *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990).

The Ninth Circuit's explanation in *Pacheco* is instructive: "[W]here the counts of an original indictment are simply duplicated verbatim into a superseding indictment, the statute of limitations on those counts is tolled, even if additional counts that are subject to no limitations objection are added." *Id.* That is exactly the case here: Counts Three through Eight of the SSI and TSI allege (1) the same offense (wire fraud), (2) the same investor victims (Investors #1–6), (3) the same wires with the same alleged dates of transmission, and (4) the same loss amounts. (Dkt. 449 at 9; Dkt. 469 at 9.) The language in the FSI, SSI, and TSI is verbatim. Defendants cannot argue they lacked notice of these offenses.

Defendants nevertheless claim that the additional details provided in the SSI's and TSI's description of the investor conspiracy, namely, the more detailed description of the investors and the clarification on the time frame for the conspiracy, broadened the overall scheme in such a way that they lacked notice of the substantive wire fraud counts. Neither of these additional details, however, changed

//

the relevant facts underpinning the substantive counts.  Defendants have been aware of the facts that underpin the charges since the filing of the first indictment.  (*See* Dkt. 1 at 1–3.)

First, even assuming arguendo that the more detailed description of "investor" in the SSI and TSI could potentially expand the number of potential investor victims (which the government disputes), this would have no effect on the adequacy of the notice provided in the FSI for the investor victims listed in Counts Three through Eight.  Under *Pacheco*, even if the government chose to allege additional investor victims in the SSI and TSI—which it has not—this would not undermine the timeliness of superseding fraud counts for previously-alleged investor victims.  *See Pacheco*, 912 F.2d at 305.  The government listed Investors #1–6 as "investors" in the FSI in September 2018.  Defendants cannot now argue they lacked notice of this fact.

Nor does the change in the "no later than" date range for the alleged scheme amend or broaden the set of material facts that underpin the substantive fraud counts.  None of the dates for the alleged wires has changed in the SSI and TSI.  (*See* Dkt. 449 at 9; Dkt. 469 at 9.)  None of the theories of liability has changed.  (*See* Dkt. 449 at 4–6; Dkt. 269 at 4–6.)  None of the facts describing the business practices of Theranos from 2003 to 2015 has changed.  (*Id.*)  And none of the descriptions of the type of misrepresentations and omissions that misled and deceived investors has changed.  (*Id.*)  So long as the government's allegations are based on "approximately the same facts" then the superseding charges relate back and are timely.  *See United States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976), *cert. denied*, 429 U.S. 1000 (1976).

The Ninth Circuit's opinion in *Sears, Roebuck* is informative.  There, the court held that the changes in the superseding indictment related back to the original indictment even though the statute under which the new charges were brought was different and the conspiracy charge included a new description of the company's dumping duties.  *Sears, Roebuck & Co.*, 785 F.2d at 778–79.  Although the superseding indictment included these "additional details," the court held that did not constitute a "substantive change" since the alleged conduct remained the same.  *Id.*  The court also noted that the government "from the outset made Sears aware of its concern with alleged attempts by Sears to circumvent these [dumping] duties."  *Id.* at 779.  Here, too, the conduct underpinning these counts has

remained unchanged throughout all versions of the indictment. In fact, Defendants have failed to point to any new facts of which they were not previously on notice with respect to the challenged substantive counts.

Just as in *Sears, Roebuck*, Defendants were aware of the underlying conduct "from the outset." All of the relevant facts supporting the alleged investor fraud conspiracy and substantive wire fraud counts were evident from the first indictment. (*See generally* Dkt. 1.) The indictment described the history of the company, from its founding in 2003 to the end of the alleged fraud in 2015. (*Id.*) The indictment described the type of misrepresentations, half-truths, and omissions made to investors to perpetrate the fraud. (*See, e.g. id.* at 4 (describing "materially false and misleading statements to investors" made through, among other things, "written and verbal communications," "marketing materials," "financial statements, models and other information," and "statements to the media").) Nothing about the clarification that the fraud began at "a time unknown but no later than 2010" changes, amends, or broadens any of these previously articulated misrepresentations and omissions—all of which would have been admissible as direct evidence of the wire fraud scheme under the original indictment no matter whether they occurred in 2015, 2013, or 2009.[1]

None of the cases Defendants cite persuades otherwise. In *O'Neill*, for instance, the superseding indictment alleged a completely different misrepresentation in support of the new 18 U.S.C. § 1014 violation. *See United States v. O'Neill*, 463 F. Supp. 1205, 1207 (E.D. Pa. 1979) ("The first indictment charged that O'Neill falsely represented that certain insurance policies were currently in full force and effect with a portion of the premium paid. The superseding indictment charges that O'Neill represented that the same insurance policies would have a future cash surrender value and that they had been assigned to him."). In other words, the government alleged an entirely new theory underpinning the count, with a new set of facts regarding how the representation had been false. *Id.* Here, nothing about the government's description of the scheme—neither the types of misrepresentations that resulted in the

---

[1] The government's position is that any misrepresentations, half-truths, or omissions made to mislead and deceive investors over the course of the company's history are admissible as direct evidence of the fraud based on the allegations articulated in the first indictment. Of course, this evidence would *also* be admissible under other theories, including the theory that this evidence is inextricably intertwined with the charges and, alternatively, under Federal Rule of Evidence 404(b).

GOVT. OPP'N TO MOT. TO DISMISS – TIME
BARRED                              5
18-CR-00258 EJD

fraud, nor the form of the misrepresentations—has changed. (*See* Dkt. 449 at 4–6; Dkt. 269 at 4–6.) Moreover, the original indictment and the FSI provided a detailed history of Theranos, Inc., with a description of the company's practices from its founding in 2003 until the end of the alleged fraud in 2015. Defendants cannot argue they were not provided with notice that the government would present evidence at trial in support of the fraud scheme about the company's practices starting in 2003 and continuing to 2015. Nothing about the clarification of the term "investor" or the "no later than" date changes anything about the scope of the alleged conduct.

Nor does *Liu* help Defendants. There, the government alleged a new count of criminal copyright infringement in the superseding indictment that was based on a newly-alleged copyrighted work. *United States v. Liu*, 731 F.3d 982, 996 (9th Cir. 2013). The Ninth Circuit held that the newly-alleged copyrighted work was clearly "a distinct transaction from the ones at issue in the original indictment." *Id.* at 998. Analogizing here, it would be as if the government had added a new substantive count, alleging a new wire with a new investor victim that fell outside the statute of limitations, and argued that this related back because it was part of the same investor scheme. Of course, the government has not done this. The government has not alleged a new wire fraud count perpetrated against Walgreens or Safeway or some other potential investor victim. The substantive wire fraud counts Defendants seek to dismiss in the SSI and TSI are the exact same investor counts as were alleged in the FSI. *Liu* does not support Defendants' request for dismissal.

**II.     The Information Instituted the Wire Fraud Charges for Patients B.B., E.T., and M.E., Thereby Tolling the Statute of Limitations**

Section 3282 of Title 18 prohibits prosecution for non-capital offenses, including Defendants' offenses, "unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). It is undisputed that the government filed an information including the new patient counts within five years of the offenses. Defendants nevertheless contend, however, that to "institute" the information, the government had to obtain a waiver of indictment, so that the information could support a prosecution for the felony offenses. (Mot. at 8–20.) That contention is incorrect.

Section 3282 contains no requirement that before expiration of the statute of limitations, the government must not only file an information, but also obtain a defendant's waiver of indictment. Because the term "institute" is not defined in the statute, it must be construed according to its ordinary meaning. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476 (1994). The word "institute" means "[t]o inaugurate or commence, as to institute an action," and "[t]o set up; to originate; to initiate; to start; to introduce." Black's Law Dictionary 800 (6th ed. 1990); *see Gollust v. Mendell*, 501 U.S. 115, 124 (1991) (adopting that definition under § 16(b) of the Securities Exchange Act of 1934). Thus, as the Seventh Circuit in *Burdix-Dana* correctly concluded, to "institute" an information means no more than to start or commence the information by filing it with the clerk of the court. 149 F.3d at 743. No other circuit has contradicted the Seventh Circuit's reasoning in *Burdix-Dana*.

Defendants argue that what must be "institute[d]" is an information sufficient to commence a criminal prosecution under Federal Rule of Criminal Procedure 7(b). (Mot. at 9–11.) The thing that must be instituted under § 3282, however, is not the entire criminal prosecution, but merely the "information." *See* 18 U.S.C. § 3282. That construction of "institute" is consistent with other courts' interpretation of 18 U.S.C. § 3282. *See United States v. Cooper*, 956 F.2d 960, 962–63 (10th Cir. 1992) ("[Federal Rule of Criminal Procedure] 7(b) does not prohibit the filing of an information in the absence of waiver by the defendant. Instead, the rule proscribes prosecution without waiver. Therefore, the information could have been filed within the period of limitations, thus providing a valid basis for the prosecution."); *United States v. Watson*, 941 F. Supp. 601, 603 (N.D. W.Va. 1996) (although Rule 7(b) waiver necessary to commence prosecution by information, "information is 'instituted' when it is filed with the clerk of the court"). Thus, "filing a 'waiverless' criminal information with the clerk's office"—as the government did here—"'institutes' it for purposes of tolling the five-year statute of limitations." *United States v. Stewart*, 425 F. Supp. 2d 727, 729 (E.D. Va. 2006) (citing 18 U.S.C. § 3282); *accord United States v. Marifat*, No. 17-CR-189, 2018 WL 1806690, at *2–*3 (E.D. Cal. Apr. 17, 2018) (same); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 28 (D. D.C. 2000) (same); *see also United States v. Pennant*, No. 04-CR-828, 2009 WL 364974, at *3 n.7 (E.D. Pa. Feb. 11, 2009) (information "arguably valid" under *Burdix-Dana* and related cases).

In the face of this clear authority, Defendants nevertheless argue that the Information could not have been "instituted" because they could not have been arraigned on the Information without a waiver of indictment. Defendants therefore argue that the Information did not "originate" or "set going" any process and had no actual effect. (Mot. at 9–10.) But even under Defendants' definition of "institute," the Information did "set" something going: Once the Defendants made their initial appearance on the Information, the 21-day clock would have started under Federal Rule of Criminal Procedure 5.1(c) within which time the government would have been required to hold a preliminary hearing. *See* Fed. R. Crim. P. 5.1(a), (c). Here, of course, Defendants did not make an initial appearance on the Information before the Grand Jury returned the SSI. Yet, the possibility certainly existed that the government would have had to either conduct a preliminary hearing on the Information or move to extend the 21-day time period under Rule 5.1(d) based on the "extraordinary circumstances" of the COVID-19 public health emergency. *See United States v. Carrillo-Villa*, No. 20 MAG. 3073, 2020 WL 1644773, at *2 (S.D.N.Y. Apr. 2, 2020) (granting an extension of time under Rule 5.1(d) because of COVID outbreak). Indeed, the distinction in Rule 5.1(a) between the requirements for a felony and a misdemeanor information undermines Defendants' argument entirely. The "unwaived" felony information *must* have legal effect for this provision to have any meaning. Defendants' analysis skips over entirely the initial appearance stage of the criminal proceeding.

Contrary to Defendants' contention, the government's position is fully consistent with *Jaben v. United States*, 381 U.S. 214 (1965). In *Jaben*, the Supreme Court examined 26 U.S.C. § 6531, which set forth the statute of limitations for the felony of willfully attempting to evade federal income taxes. Under that provision, the government had six years to obtain an indictment for the offense, plus an additional nine months "[w]here a complaint is instituted before a commissioner of the United States" within the six-year period. *Jaben*, 381 U.S. at 215 (quoting 26 U.S.C. § 6531 (1954)).

The Court held that, to trigger the nine-month extension, the government had to file a complaint that demonstrated probable cause to believe the defendant had committed the offense. *Id.* at 217–18. In concluding that the mere filing of any complaint, without regard to probable cause, was insufficient to initiate the extension, the Court did not look to the ordinary meaning of the word "institute" but to the

GOVT. OPP'N TO MOT. TO DISMISS – TIME
BARRED                                                                              8
18-CR-00258 EJD

unique requirements of the criminal complaint procedures. *See id*. Those procedures, which were set forth in Federal Rules of Criminal Procedure 4 and 5, provided that the complaint could not be used to secure a warrant for a defendant's arrest unless a Commissioner determined that it established probable cause. *Id.* The Court concluded that, unless the government was required to file a complaint based on probable cause, it could use the complaint procedure to obtain a nine-month extension of the period of limitations while reducing the Commissioner's function to the "mere [] rubberstamp[ing] [of] the complaint." *Id*. at 218. The Court thus concluded that the complaint, to initiate the time extension, must be sufficient to "justify the next steps in the [criminal] process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing." *Id.* at 220. The Court did not, however, hold that to initiate the extension, the government must also take steps—such as obtaining an indictment or information and waiver—that would be sufficient to commence prosecution.

Defendants seek to extend *Jaben* to require the government to obtain an indictment or information and waiver that is sufficient to support a criminal prosecution before it may toll the statute of limitations under § 3282. Such a requirement, however, is inconsistent with 18 U.S.C. § 3288, which provides that "[w]henever an indictment or information charging a felony is dismissed for *any* reason . . . a new indictment may be returned within six calendar months of the date of the dismissal . . . which new indictment shall not be barred by any statute of limitations." 18 U.S.C. § 3288 (emphasis added). The only exception to that provision is "where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." 18 U.S.C. § 3288. It is well established that when the reason for dismissal of the indictment or information was not its untimeliness, but some other defect that makes the indictment or information insufficient to support a prosecution, a new indictment may still be returned under § 3288. *See, e.g.*, *United States v. Macklin*, 535 F.2d 191, 192–93 (2d Cir. 1976) (holding that a new indictment could issue under § 3288 when the original indictment returned against the defendant was issued by a grand jury whose term had expired).

The purpose of § 3288 is to permit re-indictment when there is a defect or irregularity in the original indictment or information that makes it insufficient to support a prosecution. *See id.*; *see also*

*United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996) ("Allowing a second indictment to remedy legal deficiencies present in the first is the very purpose for which § 3288 was enacted.") (internal quotation and citation omitted). Under Defendants' reading of § 3282, however, there could not be a valid original indictment or information upon which § 3288 could operate unless that first indictment or information was itself sufficient to support a prosecution. Thus, § 3288 would only apply when there was no need to dismiss the indictment or information in the first place. Nothing in *Jaben* or the text of § 3282 requires such a result. The Court should reject this line of argument.

Defendants also incorrectly assert that such a reading of § 3288 would violate the principle that statutes of limitation are to be "liberally interpreted in favor of repose" and would render § 3282 meaningless. (Mot. at 15.) This interpretive principle, however, does not apply here where the language of the statute of limitations is unambiguous. *See United States v. Habig*, 390 U.S. 222, 226–27 (1968). Nor does this reading of § 3288 eviscerate § 3282. Section 3282 sets forth the five-year period of limitations in which "the indictment [must be] found or . . . the information . . . instituted." If the government fails to comply with that provision by filing an indictment or information within the five-year period, § 3288 does not permit the filing of a new indictment.

Defendants contend that the government's interpretation of Sections 3282 and 3288 raises "troubling policy concerns," because it might permit a prosecutor to file an information, wait a long period of time, and then obtain an indictment well beyond the statute of limitations but within six months of the dismissal of the information. (Mot. at 17.) As the Seventh Circuit in *Burdix-Dana* noted, that scenario could only occur if a defendant either received no notice of the information pending against her, or purposefully declined to move to dismiss the information herself. 149 F.3d at 743. The Seventh Circuit found, however, that the defendant there received actual notice of the charges pending against her. *Id.* at 743 n.3. The same applies here—Defendants had notice of the Information before the government even filed it with the clerk's office. Thus, even assuming that the hypothetical scenario suggested by Defendants could infringe upon a defendant's due process rights by denying timely notice of pending charges, Defendants have not demonstrated any infringement of their own due process rights. The Court should decline to construe § 3288 as violating due process based on such "premature and

hypothetical" arguments. *See Champlin Refining Co. v. United States*, 329 U.S. 29, 35 (1946) (declining to address "premature and hypothetical" contention that construction of statute violates due process).

Finally, it is worth highlighting that the extraordinary circumstances here weigh in favor of the Court finding that the Information had legal effect and therefore tolled the statute of limitations under § 3828. *See United States v. Sharma*, S.D. Tex. No. 14-CR-61, 2016 WL 2926365, at *3 (May 19, 2016) (recognizing that "exigent circumstances" might make a difference to its analysis). As is clear from the above factual background, the government was prepared to present the charges in the Information to a Grand Jury for indictment in April 2020 when it provided the draft to the defense, but was unable to do so because the Grand Jury had been suspended. The Court suspended the Grand Jury to protect the public from a global pandemic that had created a public health emergency. Given these extraordinary circumstances, which were well beyond the government's control, the government asked Defendant Holmes to waive indictment. When she refused, the government proceeded by Information. Defendants cannot in good faith argue that the government's actions here violated their due process rights or constitute "troubling" public policy. To the contrary, the government provided Defendants ample notice within the statute period and proceeded in a manner that would ensure public safety in accordance with the Court's general orders.

//

//

//

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss as Time-Barred Counts Three through Eight and Ten of the Second Superseding Indictment and Counts Three through Eight, Ten, and Eleven of the Third Superseding Indictment.

DATED: September 18, 2020

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

*/s/ Vanessa Baehr-Jones*

———————————
VANESSA BAEHR-JONES
JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
Assistant United States Attorneys