JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 | Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE**<br><br>Date: October 6, 2020<br>Time: 10:00 AM<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

# TABLE OF CONTENTS

I. The Indictments Violate This Court's Order by Depicting Doctors as Victims of the Alleged Scheme to Defraud ........................................ 1

II. The Indictments Violate the Convergence Principle by Resting on Allegations that Defendants Deceived Doctors ........................................ 2

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD
i

# TABLE OF AUTHORITIES

**Pages**

## CASES

*United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010)........................................................................ 5

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002)). ................................................................... 2

*United States v. Ciccone*, 219 F.3d 1078 (9th Cir. 2000) ................................................................ 3

*United States v. Crawford*, 239 F.3d 1086 (9th Cir. 2011)). ...................................................... 5, 6

*United States v. Lew*, 875 F.2d 219 (9th Cir. 1989).................................................................. 2, 5, 6

*United States v. Pirro*, 212 F.3d 86 (9th Cir. 2000)......................................................................... 3

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD

ii

Under this Court's prior ruling and the Ninth Circuit's convergence principle, the government cannot pursue a wire-fraud charge on allegations that Ms. Holmes defrauded doctors, nor on allegations that she deceived doctors to deprive patients of money or property. The Second and Third Superseding Indictments ("SSI" and "TSI," respectively) flout those limits. They continue to cast doctors as independent victims of the alleged scheme to defraud—a defect the government's tweaks to the allegations do not cure. And they continue to rely prolifically on allegations that Defendants misled doctors—not patients—about Theranos' testing services. In defense of its facially flawed indictments, the government recycles arguments this Court previously rejected, misreads central convergence-principle precedents, and proffers theories of the case foreign to the scheme actually charged. The Court should grant partial dismissal of the counts that rely on a scheme to deceive doctors and strike the offending portions of the Indictments.

## I. The Indictments Violate This Court's Order by Depicting Doctors as Victims of the Alleged Scheme to Defraud

This Court's February 11, 2020 Order bars the government from prosecuting Ms. Holmes based on allegations that she "defrauded doctors." *See* ECF No. 330 ("Order") at 27-35. The government states that its Indictments[1] comply with that rule because they no longer contain the word "defraud" in reference to doctors. *See* Opp'n at 3-4. In the government's telling, its avoidance of express references to defrauding doctors—*e.g.*, by replacing "*defrauded*" with "*misled*"—is enough to ensure that the Indictments no longer "allege that doctors were defrauded or that doctors were the ultimate targets of Defendants' scheme to defraud." *Id.* at 4.

The government's hypertechnical reading of the Indictments is untenable. The Indictments remain replete with allegations that the charged scheme targeted both "doctors *and* patients." *See, e.g.*, ECF No. 499 at 2-3 (collecting several examples). Count Two, for instance, describes the alleged scheme as centering on Defendants' efforts fraudulently to "induc[e] doctors to refer *and* patients to pay

[1] The government acknowledges that the SSI "alleges that patient victims patronized Theranos following recommendations from their 'defrauded' doctors." ECF No. 520 ("Opp'n") at 9 n.4. That allegation clearly violates the Court's prior Order; the government does not contend otherwise.

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD

1

for" Theranos' services. TSI ¶ 22 (emphasis added); SSI ¶ 22. The "specific wire fraud counts" the government claims are in the clear, *see* Opp'n at 4, likewise rest on allegations relating to both "patients and doctors," TSI ¶ 26; SSI ¶ 26.

The Indictments thus go far beyond "mere mention of doctors." Opp'n at 4. By repeatedly painting "*doctors as well as patients*" as Defendants' targets, *id.* at 2, the Indictments suggest that both are victims of Ms. Holmes' alleged scheme to defraud. As such, they directly contravene this Court's ruling that the government may not "depend on doctor-victims." Order at 35. The government responds with a promise not to "argue at trial that the jury should convict Defendants of wire fraud based on a scheme to defraud doctors." Opp'n at 4. But that promise rings hollow in light of the government's central reliance on Defendants' alleged misrepresentations to doctors, *see infra* pp. 3-5, and in all events cannot cure the Indictments' facial flaws, *cf.* Order at 31 (the Court's analysis is "bound by the four corners of the indictment") (quoting *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)). The Court should dismiss the offending counts of the Second and Third Superseding Indictments to the extent they rely on allegations that Defendants defrauded doctors.

## II. The Indictments Violate the Convergence Principle by Resting on Allegations that Defendants Deceived Doctors

Even were the Indictments could be read to identify only patient-victims, their allegations that Defendants deceived doctors still would warrant dismissal. That is because the convergence principle, as articulated and applied in this Court's prior Order, requires that a wire-fraud defendant intend "to obtain money or property *from the one who is deceived*." *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (emphasis added). The indictments' going theory—that Defendants deceived one group of individuals (doctors), in order to obtain money or property from another group of individuals (patients)—is not wire fraud under *Lew* and its progeny, as explained in Ms. Holmes' motion.

The government defends its continued reliance on doctor-deception allegations on grounds foreclosed by both this Court's prior Order and principles of fair notice. Opp'n at 2. The government repeatedly insists that Theranos' "conversations with doctors" were in fact "directed at patients." Opp'n

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD

2

at 2-3; *see also, e.g.*, *id.* at 1 (Defendants "used doctors as tools" to defraud patients); *id.* at 5 (Defendants "used their communications with doctors in furtherance of their plan to deceive, cheat, and defraud … patients"). Citing *United States v. Ciccone*, 219 F.3d 1078 (9th Cir. 2000), the government contends that it may permissibly prosecute Ms. Holmes for passing along "misrepresentations" to patients through doctor "intermediaries." Opp'n at 6. But this Court already considered and dismissed *Ciccone* as "unhelpful" to the government's theory "that doctors were unwilling participants in the alleged scheme and passed along fraudulent information to their patients in recommending Theranos." Order at 34-35. The Court reasoned that, unlike in *Ciccone*, where the defendant "directed his solicitor-employees to perpetrate the scheme" by making "misrepresentations to victims," here "there is no showing that Defendants directed doctors to make misrepresentations to their patients." *Id.* at 34-35. The government's attempt to resuscitate *Ciccone*'s relevance again overlooks the central way in which that case "differs" from this one. *Id.*

Even if the government were correct that misrepresentations passed through "unwilling" non-agent "intermediaries" may fall within the wire-fraud statute in theory, Opp'n at 6—and it cites no authority supporting that proposition—this Court assesses the governments' Indictments as they are "actually drawn, not as [they] might have been drawn." Order at 7 (quoting *United States v. Pirro*, 212 F.3d 86, 92 (9th Cir. 2000)). And as actually drawn, the Indictments neither expressly plead nor "necessarily impl[y]" that Ms. Holmes or Mr. Balwani intended doctors to transmit alleged misrepresentations to patients. Opp'n at 5-6, 8. Indeed, the Indictments do not even allege that patients were aware of alleged misrepresentations to doctors, much less deceived by them. The most the Indictments muster is an allegation that "misled" doctors "sometimes" *referred* patients to Theranos, *e.g.*, TSI ¶ 15; the Indictments are silent, however, on what doctors told patients in doing so, and nowhere support the government's assertion that Defendants "wanted doctors to pass along false information to patients" when making such referrals, Opp'n at 8.

The government's remaining citations to the Indictments similarly fail to support its claim that Defendants targeted patients through doctor intermediaries. Allegations that Defendants transmitted

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD

3

misleading advertisements and test results to "doctors *and* patients" cast both groups as *separate* targets of the alleged scheme, *see* Opp'n at 5 (quoting TSI ¶ 17(B), (C) (emphasis added)); *supra* pp. 1-2, while allegations about doctors' statements *to Defendants* say nothing about doctors' communications with patients, Opp'n at 5 (quoting TSI ¶ 16). And the government's comparison of Defendants' alleged "use of doctors" with their alleged "use of the media" affirmatively undercuts its position. *See id.* at 8-9. Unlike the Indictments' discussion of doctors, which is devoid of any allegations that doctors passed along misrepresentations to patients, the Indictments expressly allege that Defendants' "us[ed]" media statements and advertisements to reach investors and patients, TSI ¶ 12, made "false and misleading statements" to media "and shared the resulting articles with potential investors," *id.* ¶ 12(I)), and "delivered" materially false information to patients "in the form of marketing materials and advertisements," *id.* ¶ 17(A). The government's other opposition-borne theory—that doctors acted as "representatives" or "agents" of their patients, Opp'n at 5, 6—similarly lacks any basis in the Indictments and, in any event, flouts the convergence principle.

In the face of this problem, the government returns to its standby argument that a scheme to defraud may rest on something other than false statements. Opp'n at 7; *cf.* ECF No. 267 at 6 (same). In the government's telling, that principle means that it may prove wire fraud without relying on any false statements, and thus excuses the Indictments' failure to "specifically allege[]" that misrepresentations to doctors in turn deceived patients. Opp'n at 6-7. But that the government may, in theory, prove the material-falsehood element without false statements runs aground on the at-issue Indictments, which unquestionably premise the alleged patient scheme on "representations"—namely, "explicit and implicit claims" regarding Theranos' testing services. TSI ¶ 15; *see also, e.g., id.* ("advertisements and marketing materials"); *id.* ¶ 16 ("representing to doctors and patients"); *id.* ¶ 17 ("advertisements" that "explicitly represented" information to individuals); *id.* ¶ 17(A) ("delivered … materially false and misleading information" via "marketing materials and advertisements"); *id.* ¶ 17(B) ("posted on the Theranos website … materially false and misleading information"). Where, as here, the government

charges a scheme to defraud based on false representations, the failure to allege that such representations deceived the victims violates the convergence rule.

*United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010), which the government cites, confirms that point. In *Ali*, the conduct at issue—*i.e.*, defendants' purchase of Microsoft-authorized resellers through "companies under false names"—was intended to and did deceive Microsoft, which "would not have authorized" the resellers if it had "known of [d]efendants' involvement" with them. *Id.* at 1065. The decision accordingly characterized defendants' conduct as satisfying the convergence rule that "the intent must be to obtain money or property from the one who is deceived." *Id.* at 1070 (quoting *Lew*, 875 F.2d at 221). By contrast here, the Indictments omit the required link between alleged deception of doctors and defrauding of patients.

The government responds that it need only "allege Defendants' scheme and their *intent* to defraud patients to satisfy the convergence requirement." Opp'n at 8. But that is the precise position the convergence rule rejects. *Lew* is instructive. There, the challenged jury instruction stated that the defendant undertook his scheme, which involved misrepresentations to a federal agency, "for the purpose of obtaining money from [his] clients"; the government defended its conviction on the ground that the defendant "obtained money" from his client victims, "even if misrepresentations were not made to the clients." 875 F.2d at 221. The Ninth Circuit rejected that position. It instead held that the defendant's intent to deprive his client victims of money was insufficient to prove wire fraud without the additional showing that he "inten[ded] to obtain money or property from the victim *of the deceit*." *Id.* at 222 (emphasis added).

The government's remaining retorts are similarly unconvincing. The government misunderstands Ms. Holmes to argue that an alleged scheme must be "successful," or aimed to target "a specific, named victim." Opp'n at 7 (citing *United States v. Crawford*, 239 F.3d 1086 (9th Cir. 2011)). As this Court previously recognized, the government's reliance on those principles "is misplaced," Order at 32; the fact that the government need not prove an alleged scheme's success or specific targets "does not eradicate the requirement that a defendant's 'intent must be to obtain money or property from

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD

5

the one who is deceived,'" *id.* (quoting *Lew*, 875 F.2d at 221).  Nor can the government salvage its improper doctor-deception allegations by recasting them as "circumstantial evidence" of intent to defraud patients.  Opp'n at 8.  Were it otherwise, the government could freely circumvent the convergence requirement by relying on allegations that a defendant deceived one party as probative, at least circumstantially, of an intent to defraud another.

      Notwithstanding the government's claims to the contrary, Ms. Holmes' position does not entirely foreclose a role for *evidence* relating to Defendants' alleged communications with doctors.  This motion is concerned only with what the government may charge—not what it may present as evidence at trial.  The only questions at present are whether the Indictments conflict with this Court's Order by portraying doctors as standalone victims, and violate the convergence principle by relying on allegations that Defendants deceived doctors to charge that Defendants defrauded patients.  For the foregoing reasons, the answer to those questions is yes.  The Court therefore should dismiss Counts Two and Nine through Eleven of the Second Superseding Indictment and Counts Two and Nine through Twelve of the Third Superseding Indictment insofar as they allege a scheme to deceive doctors and should strike all offending allegations.

DATED:  October 2, 2020                        Respectfully submitted,

                        /s/ Amy Mason Saharia
                        KEVIN DOWNEY
                        LANCE WADE
                        AMY MASON SAHARIA
                        KATHERINE TREFZ
                        Attorneys for Elizabeth Holmes

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

REPLY IN SUPPORT OF MOTION TO DISMISS IN PART COUNTS TWO AND NINE THROUGH ELEVEN OF SECOND SUPERSEDING INDICTMENT AND COUNTS TWO AND NINE THROUGH TWELVE OF THIRD SUPERSEDING INDICTMENT AND MOTION TO STRIKE
CR-18-00258 EJD