UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ELIZABETH A. HOLMES and RAMESH "SUNNY" BALWANI,

Defendant.

Case No.  18-cr-00258-EJD

**ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD SUPERSEDING INDICTMENTS**

Re: Dkt. Nos. 493, 496, 497, 498, 499, 500

Defendants Elizabeth A. Holmes and Ramesh "Sunny" Balwani have been charged with defrauding the investors and patients of a health care and life sciences company called Theranos, Inc. ("Theranos").  On July 14, 2020, a grand jury in the Northern District of California returned the Second Superseding Indictment ("2SI") in this case.  Dkt. No. 448.  Two weeks later, on July 28, 2020, the grand jury returned the Third Superseding Indictment ("3SI"), which is now the operative charging document.  Dkt. No. 469.

Defendants have filed six motions to dismiss the Second and Third Superseding Indictments, all which were heard on October 6, 2020.  This omnibus order addresses them all.

## I.   BACKGROUND

Having set forth a comprehensive factual background in prior orders, *see, e.g.*, *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *1 (N.D. Cal. Feb. 11, 2020), the Court focuses on the background relevant to the instant motions.

Prior to the 2SI and 3SI, the operative charging document had been the (First) Superseding

United States District Court
Northern District of California

Indictment ("1SI").  The 1SI was returned on September 6, 2018 and was subsequently the subject of substantial litigation.  Dkt. No. 39 ("1SI").  As relevant here, Defendants previously moved to dismiss the 1SI on various grounds.  *See* Dkt. Nos. 204, 205, 206.  On February 11, 2020, the Court issued an Order Granting in Part & Denying in Part Defendants' Motions to Dismiss.  Dkt. No. 330.  Among other things, the Court dismissed counts "to the extent they rely on non-paying patients or doctors"; the Court also ordered the Government to produce a bill of particulars as to the specific misrepresentations underlying certain counts and to identify co-conspirators as to Count One.  *See id.* at 39.

As noted above, on July 14, 2020, the 2SI was returned by the grand jury.  Dkt. No. 448 ("2SI").  The 2SI was quickly superseded by the 3SI, which the grand jury returned on July 28, 2020 and is now the operative charging document.  Dkt. No. 469 ("3SI").  The 2SI differs from the 3SI only in that it is missing one count of wire fraud.  Defendants' present motions to dismiss therefore focus on the 3SI but apply equally to the 2SI.

Broadly, the 3SI alleges that Defendants Holmes and Balwani engaged in two schemes to defraud: a scheme to defraud Theranos investors and a scheme to defraud patients who used Theranos's services.  *Id.* ¶¶ 11-12, 14-15.  The 3SI charges Defendants with one count of conspiracy to commit wire fraud against Theranos investors in violation of 18 U.S.C. § 1349 (Count One); one count of conspiracy to commit wire fraud against Theranos patients in violation of 18 U.S.C. § 1349 (Count Two); six counts of wire fraud against Theranos investors in violation of 18 U.S.C. § 1343 (Counts Three through Eight); and four counts of wire fraud against Theranos patients in violation of 18 U.S.C. § 1343 (Counts Nine through Twelve).  Compared to the 1SI, the 3SI alleges three new substantive wire fraud counts relating to the patient scheme, Counts Nine, Ten, and Eleven, for Patients B.B., E.T., and M.E., respectively.  *See* 3SI at 10.  The 3SI also includes additional allegations about the investor fraud conspiracy.  *See id.* at 4–6.

Also relevant to the instant motion is the Superseding Information.  On March 16, 2020, grand jury proceedings were suspended in this District due to the COVID-19 national public

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

1  health emergency.  *See* General Order 72, IN RE: Coronavirus Disease Public Health Emergency

2  (adopted Mar. 16, 2020).  On April 30, 2020, the District ordered that grand jury proceedings

3  would remain suspended until June 2020.  General Order 72-2, IN RE: Coronavirus Disease

4  Public Health Emergency (adopted April 30, 2020).  During this period of suspension, on May 8,

5  2020, the Government filed the Superseding Information.  Dkt. No. 391.  The Superseding

6  Information is nearly identical to the 3SI, with only marginal differences in wording.  Defendants

7  moved to dismiss the Superseding Information on the ground that it violates their Fifth

8  Amendment right to be tried only upon "a presentment or indictment of a Grand Jury" and Federal

9  Rule of Criminal Procedure 7(a)(1).  Dkt. No. 399.  The Court denied the motion, holding that

10  although the Superseding Information does not "authorize the acceptance of a guilty plea or a

11  trial" on the charges contained therein, dismissal was not warranted.  *Id.* at 2.  In so doing, the

12  Court expressly withheld any decision on the "legal effect" of the Superseding Information, if any,

13  with regard to the statute of limitations.  *Id.* at 3.

14        On August 28, 2020, Defendants filed the instant motions to dismiss the 2SI and 3SI on

15  various grounds.  Dkt. Nos. 493, 496, 497, 498, 499, 500 ("Mot. No. 6"); *see also* Dkt. Nos. 495,

16  501-505 (joinders to the motions).  The Government opposed the motions on September 18, 2020,

17  Dkt. Nos. 514, 517-520, 522, and Defendants replied on October 2, 2020, Dkt. Nos. 541-46.

18  Below, the Court address each of the motions *seriatim*.

19  ## II.    LEGAL STANDARD

20        Pursuant to Federal Rule of Criminal Procedure 12(b)(1), a criminal defendant may move

21  to dismiss an indictment in part or in whole without a trial on the merits.  Fed. R. Crim. P.

22  12(b)(1).  Generally, such a motion is "capable of determination" before trial if it "involves

23  questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448,

24  1452 (9th Cir. 1986).  As the issue of guilt is "the province of the ultimate finder of fact," *id.*, a

25  court considering a motion to dismiss presumes the allegations in the indictment to be true and

26  "analyz[e] whether a cognizable offense has been charged."  *United States v. Boren*, 278 F.3d 911,

27   

914 (9th Cir. 2002).

## III.   MOTION TO DISMISS NO. 1 BASED ON PRE-INDICTMENT DELAY

Defendants' first motion to dismiss—filed by Defendant Balwani and joined by Defendant Holmes—is based on pre-indictment delay.  *See* Dkt. No. 493 ("Mot. No. 1"); *see also* Dkt. No. 514 ("Opp. re Mot. No. 1"); Dkt. No. 546 ("Reply re Mot. No. 1").  That is, Defendants argue that the Government unreasonably delayed in filing the Second and Third Indictments, in violation of Defendants' Sixth Amendment right to a speedy trial and Federal Rule of Criminal Procedure 48(b).[1]  Mot. No. 1 at 2.  Below, the Court finds there has not been a violation of the Sixth Amendment and DENIES the motion.

### A.   Relevant Background

To briefly review the relevant procedural history, the grand jury returned the first Indictment in this case on June 14, 2018.  Dkt. No. 1.  The Indictment charged Defendants with one count of conspiracy to commit wire fraud against Theranos investors, in violation of 18 U.S.C. § 1349 (Count One), one count of conspiracy to commit wire fraud against doctors and Theranos patients, in violation of 18 U.S.C. § 1349 (Count Two), and nine individual counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Three through Eleven).  *Id.*  Defendants made initial appearances and were released on bail on June 15, 2018; they have remained out of custody throughout the proceedings.  Dkt. No. 5, 7.  Then, on September 6, 2018, a grand jury returned the 1SI, which modified the allegations regarding one of the individual wire fraud counts (Count Four).  *See* Dkt. No. 39 ¶¶ 13, 24.

---

[1] The Supreme Court has also recognized a claim against undue pre-indictment delay under the Due Process Clause of the Fifth Amendment.  *See, e.g.*, *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016).  Defendants have not asserted a Fifth Amendment claim in this case.  In any event, Defendants cannot make out such a claim.  As explained with regard to the Sixth Amendment claim, Defendants have not made the requisite showing of "actual, non-speculative prejudice"— "meaning proof that demonstrates exactly how the loss of evidence or witnesses was prejudicial"—as a result of the delay.  *United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005)); *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992) ("The task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit has upheld a due process claim.").

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

4

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court conducted the status hearing to set Defendants' original trial date on June 28,

2    2019.  Dkt. No. 83.  At that time, the 1SI remained operative and the Defendants were to be tried

3    together.  In the parties' joint status memorandum, the defense stated that "significant work

4    remain[ed] before it will be prepared for trial" and therefore requested "a trial in September 2020,

5    or as soon thereafter as would be convenient for the Court."  Dkt. No. 80 at 1-2.  "Although the

6    government went into discussions with defense with a preference for a trial date during the first

7    half of 2020," the Government did not oppose defendants' request for a later date.  *Id.*  The Court

8    therefore set a joint trial date of July 28, 2020, without objection.  Dkt. No. 83.  The Court

9    subsequently severed the Holmes and Balwani trials, with Holmes's trial to proceed on July 28,

10   2020 and Balwani's trial promptly to follow.  Dkt. No. 362.  The Holmes trial is estimated to last

11   three months due to the complexity of the case.

12   Then, on March 16, 2020, this District issued a general order suspending all jury trials in

13   light of the COVID-19 national emergency.  *See* General Order No. 72, IN RE: Coronavirus

14   Disease Public Health Emergency.  This prohibition was repeatedly extended as the pandemic and

15   associated public health response unfolded.  *See* General Order No. 72-5, IN RE: Coronavirus

16   Disease Public Health Emergency (issued July 23, 2020) ("No new jury trial will be conducted

17   through September 30, 2020.").  Accordingly, on April 15, 2020, the Court continued the Holmes

18   trial to October 27, 2020.  Dkt. No. 374.

19   On July 14, 2020, as noted above, the grand jury returned the 2SI.  Dkt. No. 448.

20   Then, on July 20, 2020, the Court conducted a status conference to discuss whether the

21   October 27, 2020 trial date remained viable in the face of the ongoing pandemic.  *See* Dkt. No.

22   463 (Transcript).  Defendant Holmes requested that the trial be further continued to April 2021,

23   arguing that "a trial any time soon is just . . . not safe."  *Id.* at 66.  The defense described the many

24   potential practical obstacles to conducting a trial, including: the length of the trial; the number of

25   jurors needed; the number of witnesses (as many as 170, according to a recent Government

26   witness list); that the witnesses would be coming from at least 15 different states; the need to

27   

28   Case No.: 18-cr-00258-EJD
     ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
     SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

1   develop quarantine protocols; and constitutional ramifications. *Id.* at 63-65. The Government

2   indicated its readiness to move forward in October 2020 but agreed that "many of the challenges"

3   defense counsel raised "are real challenges and unique challenges to this case." *Id.* at 76. The

4   Government expressed that, in the event the Court deemed a continuance necessary, an earlier trial

5   date in February 2021 would be preferable. *Id.* The Court agreed with Defendant Holmes that the

6   October 2020 trial date was no longer practicable given the public health situation. *Id.* at 77-80,

7   86. Accordingly, in an order dated August 11, 2020, the Court reset the Holmes trial to March 9,

8   2021. Dkt. No. 484.

9         Finally, on July 28, 2020, the grand jury returned the 3SI. Dkt. No. 469.

10       **B.  Discussion**

11         The Speedy Trial Clause of the Sixth Amendment guarantees that "[i]n all criminal

12   prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend VI. The

13   speedy trial right homes in on the period "from arrest or indictment through conviction," as the

14   right does not attach until that period begins. *Betterman v. Montana*, 136 S. Ct. 1609, 1613

15   (2016). Accordingly, most Sixth Amendment cases are based on *post-indictment* delay. *Id.*

16   Nevertheless, the Ninth Circuit has applied the Sixth Amendment framework where, as here, the

17   Government is alleged to have unreasonably delayed in issuing a superseding indictment. *See,*

18   *e.g.*, *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003); *United States v. Sperow*, 412

19   F. App'x 4, 7 (9th Cir. 2010). The U.S. Supreme Court has identified four factors (the "*Barker*

20   factors*") to be considered in determining whether a delay between indictment and trial rises to the

21   level of a Sixth Amendment violation: "(1) the length of the delay; (2) the reason for the delay; (3)

22   the defendant's assertion of the right; and (4) the prejudice resulting from the delay." *United*

23   *States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 531-33

24   (1972)).

25         At the outset, it is worth noting that Defendants do not claim the Speedy Trial Act has been

26   violated in this case. The Court is mindful that "it will be an unusual case in which the time limits

27   Case No.: 18-cr-00258-EJD

28   ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." *King*, 483 F.3d at 976 (internal quotation marks omitted).  That is because, as a general matter, the "Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment"; "therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution." *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995).

Moreover, the U.S. Supreme Court has emphasized that "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide 'the primary guarantee, against bringing overly stale criminal charges.'" *United States v. Lovasco*, 431 U.S. 783, 789 (1977).  The Sixth Amendment therefore plays a "limited role" in this area.  *Cf. United States v. Mora*n, 759 F.2d 777, 782 (9th Cir. 1985) (quoting *Lovasco*, 431 U.S. at 789); *see also United States v. Nicholas*, 990 F.2d 1264 (9th Cir. 1993) ("We have repeatedly emphasized that protection from lost testimony, as well as other evidence, generally falls solely within the ambit of the statute of limitations.").

With these principles in mind, the Court turns to the four relevant factors.

Start with the length of the delay.  Under the Sixth Amendment, delay is measured from "the time of the indictment to the time of trial." *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003).  The Ninth Circuit has said that the length of delay must be at least presumptively prejudicial—i.e., one year from the time of the indictment to the time of the trial—to trigger a court's consideration of the other *Barker* factors.  *Id.* at 1161-62; *see also King*, 483 F.3d at 976. And even if the delay passes the one-year threshold, it "does not weigh heavily" in the defendant's favor if it is not "excessively long." *Id.* (22–month delay was not "excessively long"); *see also United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (17–month and 20–month delays were not "great").  For instance, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531; *see also King*, 483 F.3d at 976 (noting that the case was an "extraordinarily complex" conspiracy case

in finding no Sixth Amendment violation).

The Court notes that the Ninth Circuit has not clarified which indictment provides the starting point for measuring the relevant delay: the original Indictment, the 1SI, or the 2SI or 3SI. *See Gregory*, 322 F.3d at 1162 (assuming without deciding that the delay was measured from the 1SI rather than the challenged 3SI). Because the Government has opted for the original Indictment—as it first asserts the bulk of the charges—the Court will follow the Ninth Circuit's approach in *Gregory*, *see id.*, and assume that is correct. *Accord United States v. Cutting*, No. 14-CR-00139-SI-1, 2017 WL 66837, at *7 (N.D. Cal. Jan. 6, 2017). The Government concedes that 33 months will have elapsed between the date of the original Indictment and the Holmes trial date of March 9, 2021. Opp. re Mot. No. 2 at 11; *see* Dkt. No. 484. Defendant Balwani's trial date has not yet been set, but it will be no sooner. A 33-month delay is, of course, sufficient to trigger consideration of the other *Barker* factors. At the same time, this is a complex case, as the parties have repeatedly asserted and the Court has confirmed. *See, e.g.*, Dkt. Nos. 64, 80. The case involves two fraud conspiracies with multiple victims, two co-defendants, and voluminous discovery. The Court finds that the length of the delay was "not excessive" in light of this complexity. Accordingly, the length of delay factor does not "weigh heavily" in Defendants' favor. *See King*, 483 F.3d at 976; *Gregory*, 322 F.3d at 1162.

The next factor is the reason for the delay; it is "the focal point of the inquiry." *King*, 483 F.3d at 976. Defendants argue that the Government has failed to "offer any valid explanation" for the delay in filing the 2SI and 3SI. Mot. No. 1 at 10; Reply re Mot. No. 1 at 3-4. Defendants believe the Government "has had the information it needed to levy the new accusations" in the 2SI and 3SI "for years," yet has not explained why it omitted those allegations from the Indictment and the 1SI.

What Defendants' argument fails to recognize, however, is that the Sixth Amendment protects against an unreasonable delay in a defendant's *trial*. Defendants focus on the period between the filing of the 1SI in September 2018 and the filings of the 2SI and 3SI in July 2020.

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD SUPERSEDING INDICTMENTS

8

United States District Court
Northern District of California

But Defendants acknowledge that, as explained above, the relevant delay for Sixth Amendment purposes is "between indictment and trial," Mot. No. 1 at 9, Reply re Mot. No. 1 at 2.  As to the reason for that delay, the original July 2020 trial date accounts for 25 of the 33 months between the original Indictment and Defendant's current trial date.  The July 2020 trial date was set at the Defendants' request, to allow for their adequate preparation.  Thus, Defendants—not the Government—are the reason for the bulk of the delay.  *See King*, 483 F.3d at 976 (district judge granted continuances at the request of King and his attorney).

Nor can the remaining 8 months between the original July 2020 trial date and the current March 2021 trial date be attributed to the Government.  Regardless whether the Government may have possessed the information necessary to bring the new charges in the 2SI and 3SI earlier, the shift in Defendants' trial dates was not caused by the filing of those superseding indictments; it was necessitated by the COVID-19 pandemic.  From March 2020 until September 2020, jury trials were prohibited in this District.  And although the strict prohibition was lifted on September 16, 2020, *see* General Order No. 72-6, IN RE: Coronavirus Disease Public Health Emergency (issued September 16, 2020) ("Jury trials may proceed in accordance with the logistical considerations necessitated by the Court's safety protocols."), the COVID-19 pandemic continues to pose a significant hurdle to conducting a jury trial—especially for a case of this complexity.  The parties laid out these hurdles at the July 2020 hearing, and the Court clearly stated that its decision to reset the trial was driven by those and other concerns related to the pandemic.  *See* Dkt. No. 463 at 66-86.

Hence, because the Government did not cause the delay in trial, the second factor "weighs heavily against finding a Sixth Amendment violation."  *King*, 483 F.3d at 976.

The third *Barker* factor also does not counsel in favor of finding a Sixth Amendment violation.  Defendants concede that they have not asserted their rights to a speedy trial and have instead agreed to exclusions of time under the Speedy Trial Act on various occasions.  Mot. No. 1 at 11-12.  Although Defendants now say that they were forced to agree to time exclusions because

United States District Court
Northern District of California

of deficiencies in the Government's discovery productions, *see id.*, the fact remains that they never made such an argument at the time of the extensions.  Consequently, Defendants' assertion of the speedy trial right remains retroactive.  In any event, "[w]hile an improper or untimely assertion of speedy trial rights may weigh in favor of rejecting a defendant's motion to dismiss for violation of these rights, the mere fact of proper, timely assertion does not warrant dismissal."  *United States v. Turner*, 926 F.2d 883, 889 (9th Cir. 1991).

The remaining and "critical" *Barker* factor is whether Defendants have been actually prejudiced as a result of the delay in trial.  *Gregory*, 322 F.3d at 1162.  "[N]o showing of prejudice is required when the delay is great and attributable to the government"; because that is not the case here, however, Defendants must "demonstrat[e] actual prejudice to prevail on [their] claim."  *Id.* at 1162-63 (internal quotation marks omitted).  "Actual prejudice is typically demonstrated in three ways: 'oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired.'"  *Id.* at 1163 (quoting *Doggett v. United States*, 505 U.S. 647, 654 (1992)).

In this case, Defendants have not met their burden of showing actual, non-speculative prejudice.  Defendants first raise "the prospect of witnesses' unavailability and fading memories."  Mot. No. 1 at 13.  But Defendants have not pointed to any specific evidence that has been or will be lost,[2] making this claim too vague and speculative to rise to the level of actual prejudice.  Defendants also emphasize "the need to pivot after more than two years to meet the expanded charges," which will consume additional resources.  *Id.*  Although that may be so, Defendants do not claim that they will be unable to do so effectively by the time of trial.  The alleged strain on Defendants' resources is unfortunate, to be sure, but does not constitute actual prejudice under the

---

[2] Defendants point out that "two members of the board have passed away since the September 2018 [1SI]."  Mot. No. 1 at 13.  But according to Defendants' own evidence, these individuals— Donald Lucas and Thomas Peter Thomas—passed away in November and December 2019, respectively.  Thus, they would have been unavailable for the original trial July 2020 trial date.  Furthermore, Defendants have not specified what evidence these witnesses would have offered or otherwise shown that their unavailability significantly affects their defenses.

United States District Court
Northern District of California

1  present circumstances.

2        In sum, none of the four *Barker* factors supports a finding of a Sixth Amendment violation.

3  The Court therefore DENIES Defendants' motion to dismiss the 2SI and 3SI on Sixth Amendment

4  grounds.

5  **IV.    MOTION TO DISMISS NO. 2 BASED ON STATUTE OF LIMITATIONS**

6        The Court turns next to Defendants' motion to dismiss portions of the 2SI and 3SI as time-

7  barred.  *See* Dkt. No. 498 ("Mot. No. 2"); Dkt. No. 518 ("Opp. re Mot. No. 2"); Dkt. No. 543

8  ("Reply re Mot. No. 2").  This motion was filed by Defendant Holmes and joined by Defendant

9  Balwani.

10        Defendants' motion is divided into two arguments: one as to Counts Three through Eight

11  and another as to Counts Ten and Eleven.  The Court considers each in turn and, for the reasons

12  below, DENIES the motion to dismiss.

13      **A.    Counts Three through Eight**

14        The Court begins with Defendants' argument as to Counts Three through Eight, the

15  individual counts of wire fraud in connection with the scheme to defraud investors.  The parties

16  agree that the five-year statute of limitations at 18 U.S.C. § 3282 applies to these counts.  The

17  parties also agree that a version of these counts was contained in the 1SI, and that the 1SI was

18  timely as to those counts.  The question at hand, then, is whether the return of the 1SI tolled the

19  statute of limitations as to the version of Counts Three through Eight alleged in the 2SI and 3SI.

20        "Generally speaking, the return of an indictment tolls the statute of limitations with respect

21  to the charges contained in the indictment."  *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir.

22  1990).  The tolling continues for a superseding indictment if it relates back to the original

23  indictment—i.e., "if the allegations and charges are substantially the same in the old and new

24  indictments."  *Pacheco*, 912 F.2d at 305.  On the other hand, if the superseding indictment

25  "broadens or substantially amends" the charges, the statute of limitations would not be tolled.

26  *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 778 (9th Cir. 1986) (internal quotations and

27  Case No.: 18-cr-00258-EJD

28  ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

1    alterations omitted).  "The central concern in determining whether the counts in a superseding

2    indictment should be tolled based on similar counts included in the earlier indictment is notice."

3    *United States v. Liu*, 731 F.3d 982, 996–97 (9th Cir. 2013).  Accordingly, "[t]o determine whether

4    a superseding indictment substantially broadens or amends a pending timely indictment, it is

5    appropriate to consider whether the additional pleadings allege violations of a different statute,

6    contain different elements, rely on different evidence, or expose the defendant to a potentially

7    greater sentence."  *Liu*, 731 F.3d at 996–97 (internal quotation marks and alterations omitted).

8       Here, the Court finds that Counts Three through Eight are substantially the same in the old

9    (1SI) and new (2SI and 3SI) indictments.  As "each use of the wires constitutes a separate

10   violation of the wire fraud statute," *United States v. Garlick*, 240 F.3d 789, 793 (9th Cir. 2001),

11   each of the challenged counts correspond to a wiring.  These wirings are specified in the 1SI, 2SI,

12   and 3SI:

| COUNT | DATE | ITEM WIRED | WIRED FROM | WIRED TO |
|---|---|---|---|---|
| 3 | 12/30/2013 | $99,990 | Investor #1's Charles Schwab / Wells Fargo Bank account | Theranos's Comerica Bank account |
| 4 | 12/31/2013 | $5,349,900 | Investor #6's Pacific Western Bank account | Theranos's Comerica Bank account |
| 5 | 12/31/2013 | $4,875,000 | Investor #2's Texas Capital Bank account | Theranos's Comerica Bank account |
| 6 | 2/6/2014 | $38,336,632 | Investor #3's Citibank account | Theranos's Comerica Bank account |
| 7 | 10/31/2014 | $99,999,984 | Investor #4's Northern Chicago Bank account | Theranos's Comerica Bank account |
| 8 | 10/31/2014 | $5,999,997 | Investor #5's JP Morgan Chase account | Theranos's Comerica Bank account |

26   3SI at 9.  It is undisputed that all of these wirings were also charged in the 1SI, and that the 3SI

27   

28   Case No.: 18-cr-00258-EJD
     ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
     SUPERSEDING INDICTMENTS

1   does not add any wires.  The statutory violation (wire fraud) remains the same and Defendants are

2   not subject to greater sentences for these counts.  Indeed, the allegations in the 2SI and 3SI

3   regarding Counts Three through Eight are "duplicated verbatim" from the 1SI.  *Pacheco*, 912 F.2d

4   at 305.  All these factors weight heavily in favor of finding relation back.

5          Defendants nevertheless contend that the individual fraud counts have been broadened by

6   the additional allegations in the 2SI and 3SI regarding the overarching scheme to defraud

7   investors.  *See* Mot. No. 2 at 7-8.  In particular, the scheme to defraud is now alleged to span

8   "2010 through 2015" instead of "2013 through 2015," and "certain business partners"—

9   specifically, Walgreens and Safeway—are identified as other victims of Defendants' alleged

10  conspiracy.  *See* 3SI ¶¶ 3, 11, 24.  In Defendants' view, these allegations render the scheme to

11  defraud alleged in the 2SI and 3SI materially broader in length and scope than the one charged in

12  the 1SI.

13         The Court disagrees.  It is undeniably true that the existence of a "scheme to defraud" is an

14  element of wire fraud, and that the alleged scheme to defraud investors purports to satisfy that

15  element for Counts Three through Eight.  But the new allegations in the 2SI and 3SI did not

16  broaden the alleged scheme so substantially that Defendants lacked notice of the charges against

17  them.  First, as to the inclusion of the language "certain business partners" to describe some of the

18  investor victims, the Court finds this amendment did not in fact alter the scheme.  As explained

19  below as to Motion to Dismiss No. 3, the Government has not redefined the term "investor"; the

20  Government has simply clarified that "Theranos's investors included individuals, entities, certain

21  business partners, members of its board of directors, and individuals and entities who invested

22  through firms formed for the exclusive or primary purpose of investing in Theranos's securities."

23  3AC ¶ 3.  These are simply "additional details" regarding the existing charges—not substantial

24  amendments to them.  *United States v. Spanier*, 744 F. App'x 351, 355 (9th Cir. 2018).  Moreover,

25  though evidence of other victims is certainly relevant to the overarching scheme to defraud, the

26  specific victims charged in Counts Three through Eight are Investors #1-#6; these victims are

27

28  Case No.: 18-cr-00258-EJD
    ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
    SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

1    unchanged across the charging documents at issue.  Under these circumstances, the Court sees no

2    significant change to the challenged charges.

3           Defendants' argument regarding the change in the scheme's length fares no better.  It is

4    true that the 2SI and 3SI, on their face, change the start date for the scheme from 2013 to 2010.

5    Importantly, however, the conduct alleged by the 2SI and 3SI remains the same—the content of

6    the false and misleading statements, the means through which Defendants allegedly made those

7    statements, the targets of the statements, and the wires.  That the Government now alleges

8    Defendants' course of conduct to have begun three years earlier is a modest change, and does not

9    defeat tolling.

10          With that, the Court finds that the versions of Counts Three through Eight in the 2SI and

11   3SI are substantially the same as the version alleged in the 1SI.  The 2SI and 3SI therefore relate

12   back to the 1SI as to the relevant counts, making them timely under the statute of limitations.

13   Defendants' motion to dismiss Counts Three through Eight is DENIED.

14       **B.    Counts Ten and Eleven**

15          Defendants argue that Counts Ten and Eleven are also time-barred.  These are two of the

16   individual counts of wire fraud arising out of the scheme to defraud patients; they are based on

17   new wirings not previously charged in the 1SI.

| COUNT | DATE | WIRED FROM | WIRED TO | DESCRIPTION |
|-------|------|-----------|----------|-------------|
| 10 | 5/11/2015 | California | Arizona | Patient E.T.'s laboratory blood test results |
| 11 | 5/16/2015 | California | Arizona | Patient M.E.'s laboratory blood test results |

22   3SI at 10.

23          Again, 18 U.S.C. § 3282 is the applicable statute of limitations.  It states, in pertinent part,

24   that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the

25   indictment is found or the information is instituted within five years next after such offense shall

26   have been committed."  18 U.S.C. § 3283(a).  The parties agree, and it is a matter of record, that

27

United States District Court
Northern District of California

neither the 2SI nor the 3SI satisfies this requirement, as they were not filed within five years of the

above wires.  *See United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999) ("A limitation

period begins to run only when all the elements of the underlying offense have been committed."),

*amended on denial of reh'g*, 204 F.3d 983 (9th Cir. 2000); *cf. United States v. Hymes*, 113 F.

App'x 755, 756 (9th Cir. 2004) ("In the case of mail fraud, the crime is not complete until the

defendant uses the mail or causes the mail to be used in execution of the scheme to defraud.").

The parties also agree, however, that the Superseding Information filed on May 8, 2020 falls

within five years of the wirings.  Accordingly, the Government argues that the Superseding

Information tolled the statute of limitations as to Counts Ten and Eleven and that the 2SI and 3SI

relate back to the Superseding Information.  Opp. re Mot. No. 2 at 6; *see, e.g.*, *United States v.

Avery*, 747 F. App'x 482, 484 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1215 (2019) ("The

Indictment was timely since it related back to the earlier Information.").

In response, Defendants do not contest that the Superseding Information contains all the

allegations in the 2SI and 3SI, and that relation back would therefore be appropriate.  Instead,

Defendants contend that filing the Superseding Information was not enough to "institute" it within

the meaning of 18 U.S.C. § 3283(a).  In Defendants' view, "[a]n information is 'instituted' only

when it is effective to 'get established' or 'commence' a federal criminal case" and, in the case of

a felony, an information is "effective to do so only . . . when it is accompanied by a waiver of

indictment."  Mot. No. 2 at 10.

It is beyond dispute that, absent a waiver of indictment, the filing of an information in a

felony case would not empower the Government to "prosecute" the defendant—i.e., to bring the

defendant to trial or accept a guilty plea.  *See* U.S. Const. amend. V; Fed. R. Crim. P. 7(a)(1) ("An

offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable . . .

by imprisonment for more than one year."); Fed. R. Crim. P. 7(b) (allowing a defendant to waive

prosecution by indictment).  It does not follow, however, that an information must be effective for

all prosecutorial actions in order for it to toll the statute of limitations.  For the below reasons, the

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Court holds that the filing of an information without an accompanying waiver is sufficient to toll

2  the statute of limitations—even though it may not be effective for other purposes.

3       First, as to the plain language of the statute, 18 U.S.C. § 3282 requires only that the

4  "information" be "instituted" in order to satisfy the statute of limitations; there is no suggestion

5  that further requirements must be met.  Defendants respond that the plain meaning of the word

6  "institute" is "[t]o being or start; commence," or "to originate and get established."  Mot. No. 2 at

7  9.  That is true, as far as it goes.  But as the Government points out, the object of the word

8  "instituted" is the "information"; thus, what must be "commenced" is not the entire criminal

9  prosecution, but merely the "information."  18 U.S.C. § 3282(a); *accord United States v. Burdix-*

10  *Dana*, 149 F.3d 741, 743 (7th Cir. 1998) ("There is nothing in the statutory language of 18 U.S.C.

11  § 3282 that suggests a prosecution must be instituted before the expiration of the five year period;

12  instead the statute states that the information must be instituted.").  In an existing criminal case

13  like this one, an information may be "established" simply by filing it with the court.  Separately, a

14  waiver may be obtained under Rule 7(b), but one is not required for an information to come into

15  being.

16       That "[n]otice to the defendant is the central policy underlying the statutes of limitations,"

17  *Pacheco*, 912 F.2d at 305, further supports the Court's reading of § 3283.  Regardless whether the

18  defendant has executed a waiver of indictment, a properly instituted information gives the

19  defendant notice of the allegations of the charges contained therein.  The circumstances of this

20  case illustrate the point.  In April 2020, the Government advised Defendants that it intended to

21  supersede the indictment and provided a draft copy of the Superseding Information to Defendants.

22  Dkt. No. 372.  It was unable to obtain an indictment before the limitations period elapsed because

23  grand jury proceedings were suspended in this District for the two months leading up to the

24  deadline to assert Counts Ten and Eleven.  Thus, in filing the Superseding Information in May

25  2020, the Government had done all it could to provide notice of the impending charges to

26  Defendants.  The Government then promptly sought and obtained the 2SI and 3SI in July 2020,

27

28  Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

when grand jury proceedings had resumed.  The Court is therefore satisfied that allowing the Superseding Indictment to toll the limitations period is in keeping with the policy of notice to the defendant.

Third, contrary to Defendants' contention, the Supreme Court's holding in *Jaben v. United States*, 381 U.S. 214 (1965), does not dictate a different reading.  There, the Court interpreted the Internal Revenue Code's statute of limitations governing felony tax evasion, which provides that "[w]here a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States."  *Id.* at 215-16 (quoting I.R.C. § 6531).  The Supreme Court found that "the complaint, to initiate the time extension, . . . must satisfy the probable cause requirement of [Federal] Rule [of Criminal Procedure] 4."  *Id.* at 220-21.  Rule 4 provided, in pertinent part, that "[i]f it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue . . . ."  *Id.* at 217 n.1.

Defendants take this holding to mean that the word "institute" necessarily means "adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules."  Mot. No. 2 at 13.  But the term "institute" must be read in context, and *Jaben* involved statutory language that is materially different from that at hand.  To begin with, the *Jaben* Court considered when a *complaint* is instituted.  Critical to the Supreme Court's reasoning was that under Federal Rule of Criminal Procedure 3, a complaint must be "made upon oath before a commissioner or other officers empowered to commit persons charged with offenses against the United States."  381 U.S. at 217 (quoting the then-applicable version of Rule 3).  The statute of limitations at issue in *Jaben* also specified that the complaint must be "instituted *before a commissioner of the United States within the period above limited*" in order to trigger the extension.  Because "the Commissioner's basic functions under the Rules are to make the judgment that probable cause exists and to warn defendants of their rights," the Supreme Court explained, probable cause must be required for a

complaint to be "instituted" under I.R.C. § 6531; otherwise, the Commissioner's role would be a nullity.  *Id.* at 218.  By contrast, there are no analogous requirements for filing an information, and 18 U.S.C. § 3282 states only that an information must be "instituted."  As a result, *Jaben* is confined to its statutory context and sheds no light on the meaning of "instituted" here.

Meanwhile, the majority of those courts which have addressed this precise issue have also held that the filing of an information is sufficient to satisfy 18 U.S.C. § 3282.  *See United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998) ("We hold that the filing of the information is sufficient to institute it within the meaning of 18 U.S.C. § 3282."); *United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992) ("Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant.  Instead, the rule proscribes prosecution without waiver. Therefore, the information could have been filed within the period of limitations, thus providing a valid basis for the prosecution."); *United States v. Briscoe*, No. CR RDB-20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020) ("An information is 'instituted' when it is properly filed, regardless of the Defendant's waiver."); *United States v. Marifat*, WBS-17-0189, 2018 WL 1806690, at *2-3 (E.D. Cal. Apr. 17, 2018) (following *Burdix-Dana*); *United States v. Hsin–Yung*, 97 F.Supp.2d 24, 28 (D.D.C. 2000) (same); *United States v. Stewart*, 425 F. Supp. 2d 727, 731-35 (E.D. Va. 2006) (same); *United States v. Watson*, 941 F. Supp. 601, 603-04 (N.D.W. Va. 1996) (same).  The Court sees no reason to part company with these courts.

In sum, then, the Court finds that the Superseding Information sufficed to toll the statute of limitations as to Counts Ten and Eleven, that the 2SI and 3SI relate back to the Superseding Information, and that Counts Ten and Eleven are thus timely.  Defendants' motion to dismiss Counts Ten and Eleven is DENIED.

## V.   MOTION TO DISMISS NO. 3 BASED ON LACK OF NOTICE OR, IN THE ALTERNATIVE, FOR BILL OF PARTICULARS

Next, the Court considers Defendants' motion to dismiss the 3SI and 2SI in part on the ground that the indictments fail to provide fair notice of the charges.  Dkt. No. 496 ("Mot. No. 3"); *see also* Dkt. No. 522 ("Opp. re Mot. No. 3"); Dkt. No. 541 ("Reply re Mot. No. 3").  As an

1    alternative to dismissal, Defendants move for an order requiring the Government to provide a bill

2    of particulars pursuant to Federal Rule of Criminal Procedure Rule 7(f).

3        An indictment must contain "a plain, concise, and definite written statement of the

4    essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The purpose of this

5    requirement is "to enable [the defendant] to prepare his defense, to ensure that the defendant is

6    prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy

7    against a later prosecution, and to inform the court of the facts alleged so that it can determine the

8    sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979).  However,

9    "the Government need not allege its theory of the case or supporting evidence, but only the

10   essential facts necessary to apprise a defendant of the crime charged." *United States v. Buckley*,

11   689 F.2d 893, 897 (9th Cir. 1982) (internal quotation marks omitted).  "The test for sufficiency of

12   the indictment is 'not whether it could have been framed in a more satisfactory manner, but

13   whether it conforms to minimal constitutional standards." *United States v. Holden*, 806 F.3d

14   1227, 1233 (9th Cir. 2015) (internal quotations omitted).  And, the indictment stage "is not the

15   appropriate time to require the Government to present its proof." *Buckley*, 689 F.2d at 900.

16       Defendants move to dismiss Count One (conspiracy to commit wire fraud against

17   Theranos investors) and Counts Three through Eight (individual counts of wire fraud against

18   Investors #1-#6) as insufficiently pleaded.  As noted above, Defendants are alleged to have

19   "engaged in a scheme, plan, and artifice to defraud investors." 3SI ¶ 11.  Defendants say that prior

20   to the 3SI and 2SI, they understood "investors" to mean the "finite set of individuals and entities

21   that invested money in Theranos in return for company securities." Mot. No. 3 at 1.  Defendants

22   take no issue with this definition of the term "investor"; indeed, they concede that if the term

23   "investor" is "limited to individuals and entities [that] purchased Theranos securities, they can be

24   easily identified." *Id.* at 10.  That is why, Defendants say, they did not move for disclosure of the

25   names of alleged "investors" in the prior indictment. *Id.* at 12.

26       Instead, Defendants' motion centers on Paragraph 3 of the 2SI and 3SI, which describe the

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

entity Theranos at a high level.  The pertinent part of the paragraph reads:

> When Theranos solicited and received financial investments from investors, the money was deposited into its Comerica Bank account. Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities.

3SI ¶ 3.  Defendants argue that the 3SI and 2SI apply a "new," "broader" definition of "investors" by explaining that "Theranos's investors included individuals, entities, certain business partners, members of its board of directors, and individuals and entities who invested through firms formed for the exclusive or primary purpose of investing in Theranos's securities," 3SI ¶ 3.  Mot. No. 3 at 8.  "In light of the government's new, vague, definition of 'investors,'"—which now sweeps in "certain business partners" and "members of the Board of Directors,"—Defendants say, "the universe of potentially defrauded individual or entity 'investors' is unknowable." *Id.* at 9-10. Defendants believe the 3SI and 2SI must therefore be dismissed as impermissibly vague; alternatively, Defendants ask that the Government be required to disclose which investors they are alleged to have defrauded, the representations allegedly made to the new categories of investors, and the basis of any alleged duties to disclose as to those investors. *Id.* at 10-11; Reply re Mot. No. 3 at 6-9.

But the Court is not persuaded that there has been any expansion in the definition of "investors" by the 3SI and 2SI.  The Ninth Circuit has made clear that an indictment should be "read as a whole" and "construed according to common sense." *Buckley*, 689 F.2d at 899.  On their face, the new indictments do not disturb the prior, usual understanding of "investors" as meaning "individuals and entities that purchased Theranos securities."  Rather, read with common sense, the sentence at issue simply provides an additional description of the makeup of Theranos's investors.  That is, the sentence indicates that among the purchasers of Theranos securities are "certain business partners and "members of the Board of Directors."  Defendants do not dispute that a business partner or board member could also be an investor.  And to say that investors

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

1   included "business partners" and "members of its board of directors" does not signify that *any*

2   business partner or board member could be an investor—even if they did not purchase securities.

3   Thus, the Court does not believe the 2SI and 3SI "redefine" the term "investor."

4          Moreover, the Government confirms in their briefing that they continue to use "investors"

5   in the traditional sense, i.e., to refer to individuals and entities that "paid money to Theranos and in

6   return received Theranos securities."  Opp. re Mot. No. 3 at 5.  To demonstrate that is the case, the

7   Government points to evidence showing (1) that Safeway and Walgreens—business partners of

8   Theranos—obtained and exercised rights to obtain promissory notes convertible to Theranos

9   stock, *see* Opp. re Mot. No. 3 at 5-6; and (2) that "multiple members of Theranos's Board appear

10  as stockholders on Theranos's Stock Certificate Ledger," which lists "the year when a given

11  member obtained Theranos shares, how many shares were acquired, and how the Board member

12  paid Theranos," *see id.* at 6.  The Government has thus shown that there exist business partners

13  and board members who acquired Theranos securities.  Under these circumstances, the Court sees

14  no basis for the Defendants' concern that the Government "intends to charge deception of Board

15  members" or business partners who did not purchase Theranos securities.  Mot. No. 3 at 7-9.  And

16  to the extent Defendants worry that the Government will later attempt to treat as investors

17  "business partners" or "members of the Board of Directors" who did not purchase securities, the

18  Government will be precluded from doing so by its representations here and the Court's holding in

19  partial reliance thereon.

20         In Reply, Defendants pivot to argue that the common understanding of "investor" refers

21  only to "outsiders who purchased equity shares in an arms-length transaction" as opposed to all

22  purchasers of Theranos securities.  Reply re Mot. No. 2 at 4.  But to the extent Defendants

23  previously assumed that "investors" were so limited, they have not justified that assumption.

24  There is no suggestion in the 1SI that the defrauded investors were confined to those who

25  purchased equity stocks in arms-length transactions.  Nor is it commonsensical to exclude holders

26  of securities other than equity stocks from "investors."  In fact, Defendants' own opening motion

27

28  Case No.: 18-cr-00258-EJD
    ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
    SUPERSEDING INDICTMENTS

brief repeatedly refers to investors as "individuals and entities that invested money in Theranos in return for company *securities*." Mot. No. 3 at 1; *see also id.* at 10. Thus, it is Defendants who now attempt to redefine the term "investor," arbitrarily narrowing it to exclude the convertible promissory notes allegedly acquired by Safeway and Walgreens. The 3SI and 2SI are fully consistent with the common sense definition of investors.

Having found no change in the meaning of "investors" in the 3SI and 2SI, the Court also rejects Defendants' request for a bill of particulars specifying the misrepresentations made and duty to disclose owed to the investors who are business partners or board members. The 3SI and 2SI contain the same allegations describing the specific misrepresentations as the 1SI, which this Court previously found to be sufficient to provide Defendants' notice. *Holmes*, 2020 WL 666563, at *9. The Government made clear at the hearing that those allegations apply also to the "business partner" investors and "board member" investors, and that it is not asserting any new or different misrepresentations as to those categories of investors. The same is true of the allegations regarding the Defendants' duty to disclose: The Government continues to rely on the same theory previously blessed by this Court, see *Holmes*, 2020 WL 666563, at *11, as to all investors. The Court affirms its prior holding that these allegations provide sufficient notice, and that a bill of particulars is not necessary.

Of course, should the Government attempt at trial to advance a distinct theory as to the business partners or board members that is not disclosed in the 3SI and 2SI, that will not be permitted. But this is not the stage to evaluate the Government's evidence. It is enough that the 3SI and 2SI provide sufficient notice of the charges against the Defendants, wherefore their motion to dismiss the 3SI and 2SI in part is DENIED.

## VI.    MOTION TO DISMISS NO. 4 BASED ON DUPLICITY

The Court must also DENY Defendants' fourth motion to dismiss, which relies on similar arguments as the third motion to dismiss. In their motion, Defendants argue that Counts One and Three through Eight of the 2SI and 3SI should be dismissed as duplicitous. *See* Dkt. No. 497

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS

22

1    ("Mot. No. 4"); *see also* Dkt No. 517 ("Opp. re Mot. No. 4"); Dkt. No. 542 ("Reply re Mot. No.

2    4").  "Duplicity is the joining in a single count of two or more distinct and separate offenses,"

3    *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), and it is barred by the Fifth and

4    Sixth Amendments, *see United States v. King*, 200 F.3d 1207, 1212 (9th Cir. 1999).  In this case,

5    Defendants contend that the "scheme to defraud investors" alleged in the new indictments can no

6    longer "fairly be read as a single scheme" because they "include a new definition of 'investors'"

7    encompassing "individuals, entities, certain business partners, members of its board of directors,

8    and individuals and entities who invested through firms formed for the exclusive or primary

9    purpose of investing in Theranos's securities."  *See* Mot. No. 4 at 1.

10        But as the Court has already found, the 2SI and 3SI do not "broaden" the realm of

11   "investors" alleged to be victims of the scheme to defraud.  Investors were, and are, the

12   individuals and entities who purchased Theranos securities during the charged period.  The 3SI

13   and 2SI simply clarifies that some of those individuals and entities are also "business partners" or

14   "members of its board of directors, and that some of those individuals and entities made their

15   investments "through firms formed for the exclusive or primary purpose of investing in

16   Theranos's securities."  3SI ¶ 3.

17        And though Defendants attempt to split these investors into "five separate categories," the

18   3SI and 2SI do not contain any new or "separate" allegations for individual "categories."   For

19   instance, although Theranos may have had special contractual obligations to Walgreens in

20   connection with their business partnership, the Government's theory does not appear to rely upon

21   those obligations.  Mot. No. 4 at 7.  The Government stated unequivocally that it is relying on the

22   same alleged misrepresentations, the same methods and means for making those

23   misrepresentations, and the same duty to disclose as to all relevant investors, as previously alleged

24   in the 1SI.  *See* 3AC ¶¶ 12-13.  Hence, it is untrue that "the Indictments here provide no such

25   connection among the disparate categories of so-called 'investors.'"  Mot. No. 4 at 6.

26        Moreover, as the Government points out, the Ninth Circuit takes a "broad view" of what

27

28   Case No.: 18-cr-00258-EJD
     ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
     SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

constitutes a "single scheme" to defraud.  As relevant here, "the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme."  *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986); *see also United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989) (scheme to defraud both taxpayers and the United States Treasury was not duplicitous).  In *Morse*, for instance, the Ninth Circuit held that an indictment charging a mail fraud scheme comprised of four separate investment programs—a program involving oil and gas drilling, a program placing video games in arcades, a program leasing heavy equipment to oil field operators, and a program reactivating old proven oil wells— was not duplicitous.  785 F.2d at 773-74.  Even though the victims were different and the companies through which the defendants operated were different, "the ventures comprising the scheme were of a similar nature in that all four were promoted as income producing tax shelters." *Id.* at 775.  Under this permissive standard, the instant scheme to defraud investors through similar misrepresentations and means easily qualifies.

Finally, Defendants are concerned that the Government may attempt to introduce evidence at trial of misrepresentations that were not made to obtain investments—for instance, "alleged misrepresentations . . . made to Walgreens and Safeway in pursuing and maintaining partnerships with the entities." Mot. No. 4 at 7 (internal quotation marks omitted).  However, the admissibility of such evidence is properly raised in a motion in limine.  "A duplicity claim is directed at the face of the indictment," *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988), and the 3SI and 2SI do not, on their face, charge multiple schemes to defraud.  The motion to dismiss for duplicity is therefore DENIED.

## VII.   MOTION TO DISMISS NO. 5 AND MOTION TO STRIKE FOR FAILURE TO STATE AN OFFENSE AGAINST DOCTORS

Defendants' fifth motion to dismiss claims that the 3SI and 2SI violate this Court's prior order holding that the 1SI had not sufficiently alleged a scheme to defraud doctors.  Dkt. No. 499 ("Mot. No. 5"); *see also* Dkt. No. 520 ("Opp. re Mot. No. 5"); Dkt. No. 544 ("Reply re Mot. No. 5").

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

This Court previously granted Defendants' motion to dismiss the 1SI in part for failure to allege that Defendants intended to deprive doctors of money or property. *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at \*19 (N.D. Cal. Feb. 11, 2020). As the Court explained, the specific intent element of wire fraud "must be the intent to obtain money or property from the one who is deceived." *Id.* at \*16 (quoting *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (alterations omitted)); *see also United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (holding that "wire fraud requires the intent to deceive and cheat—in other words, to deprive the victim of money or property by means of deception"). This requirement is known as convergence. The Court found that the 1SI contained "no showing that the doctors lost money or property or that Defendants intended for them to lose money or property" and dismissed Counts Two and Nine through Eleven "to the extent they depend on doctor-victims." *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at \*20 (N.D. Cal. Feb. 11, 2020).

Like the 1SI, the 2SI and 3SI contain no allegations suggesting that Defendants intended to deprive doctors of money or property. Yet—Defendants say—these new indictments continue to "depict both doctors and patients as independent victims of the alleged scheme to defraud." Mot. No. 5 at 3. Defendants therefore ask the Court to dismiss Counts Two and Nine through Twelve of the 3SI and Counts Two and Nine through Eleven of the 2SI because they continue to violate the convergence principle. Alternatively, Defendants ask for various references to "doctors" to be stricken.

In response, the Government disclaims any theory of liability based on doctors as victims, emphasizing that the 3SI "does away with any claim that doctors are fraud victims in this case." Opp. re Mot. No. 5 at 4. The Government says that they have significantly modified the allegations regarding the scheme—now referred to as "The Scheme to Defraud Patients," 3AC at 6, 8—to comply with the Court's ruling. The Government explains that the 3SI and 2SI still reference doctors, however, because "they fit into Defendants' fraud targeting patients." Opp. re Mot. No. 5 at 4. Specifically, the Government alleges that doctors served as one of the means

United States District Court
Northern District of California

1    through which Defendants deceived patients.  *Id.* at 5.  According to the Government's theory,

2    "these allegations reflect the obvious fact that doctors advise their patients on laboratory selection

3    when tests are needed, and act as representatives of their patients when communicating with labs

4    about test results."  *Id.*

5        Having reviewed the 3SI and 2SI, the Court finds that the Government has indeed

6    amended many of the allegations to reflect that doctors cannot be considered victims of the

7    scheme to defraud.  Defendants are correct that some of the allegations remain ambiguous.  In

8    particular, Paragraph 14 alleges:

> Between approximately 2013 and 2016, HOLMES and BALWANI, through advertisements and solicitations, encouraged and *induced doctors* and patients to use Theranos's blood testing laboratory services.

12   3SI ¶ 14.  Paragraph 22 similarly alleges that Defendants devised

> a scheme and artifice to defraud as to a material matter and to obtain money by means of materially false and fraudulent representations, specifically by soliciting, encouraging, or otherwise *inducing doctors to refer and patients to pay for* and use its laboratory and blood testing services under the false and fraudulent pretense that Theranos technology produced reliable and accurate blood test results.

17   3SI ¶ 22.  These allegations could be construed as depicting doctors as victims.  But read as whole,

18   the 3SI and 2SI make sufficiently clear that they allege a scheme to defraud *patients*.  *See id.* at 6

19   (section titled "The Scheme to Defraud Patients"), 8 ("Conspiracy to Commit Wire Fraud against

20   Theranos Patients"), ¶ 15 ("HOLMES and BALWANI devised a scheme to defraud patients").

21   Moreover, the Government has confirmed its understanding of and compliance with the Court's

22   prior ruling.  Accordingly, although the Court agrees that Paragraphs 14 and 22 "could have been

23   more artful," *Hinton*, 222 F.3d at 672, they do not warrant dismissal and need not be stricken.

24       Defendants respond that the convergence principle also bars the Government from arguing

25   that "Defendants deceived one group of individuals (here, doctors) in order to deprive another

26   group of individuals (here, patients) of money or property."  Mot. No. 5 at 3-4.  But that is not the

Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD SUPERSEDING INDICTMENTS

United States District Court
Northern District of California

Government's theory.  The Government's theory is that Defendants intended to deceive patients, and that part of the scheme to deceive patients involved deceiving doctors.  *See, e.g.*, 3SI ¶ 15 ("Based on these representations, many hundreds of patients paid Theranos, or Walgreens acting on behalf of Theranos, for blood tests and test results, sometimes following referrals from their misled doctors.").  To the extent Defendants believe "allegations that a defendant deceived one party" cannot be "probative . . . of an intent to defraud another," the Court cannot agree.  There is no question that doctors may serve as conduits of information to their patients.  That there must be "at least some level of convergence between the fraud and the loss" does not make irrelevant all misrepresentations made to individuals other than those deprived of money or property.  *United States v. Ali*, 620 F.3d 1062, 1070 (9th Cir. 2010).

To be sure, there are issues still to be decided regarding what the Government must prove in order to succeed on its conduit theory.  These issues are best resolved through jury instructions.  And to the extent Defendants believe that evidence of misrepresentations to doctors would confuse the jury, that is the proper subject of a motion in limine.  As to the present motion, however, the Court reaffirms that doctors are not legally cognizable victims of Defendants' alleged fraud, and will hold the Government to its promise not to "argue at trial that the jury should convict Defendants of wire fraud based on a scheme to defraud doctors."  Opp. re Mot. No. 5 at 4.  The motion to dismiss or alternatively to strike is DENIED.

## VIII.    MOTION TO DISMISS NO. 6 BASED ON PRIOR MOTIONS TO DISMISS

Defendants' sixth and final motion to dismiss restates and incorporates all of the arguments previously made as to the 1SI, which apply with equal force to the 3SI and 2SI.  *See* Dkt. No. 500 ("Mot. No. 6"); *see also* Dkt. No. 519 ("Opp. re Mot. No. 6"); Dkt. No. 545 ("Reply re Mot. No. 6").  Defendants' arguments made at Docket Numbers 204, 205, and 206 are hereby preserved as to the 3SI and 2SI.  The Court reaffirms its rulings as to those prior arguments[3], wherefore the

---

[3] Defendants also seek reconsideration of the Court's holding that the Government had adequately alleged a duty to disclose.  The Court finds that Defendants have not set forth grounds justifying reconsideration.  *See Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th

motion to dismiss on those grounds is DENIED.  *See United States v. Holmes*, No. 5:18-CR-

00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020).


     **IT IS SO ORDERED.**

Dated: October 13, 2020

 

 

EDWARD J. DAVILA
United States District Judge

---

Cir. 1989) ("[T]he major grounds that justify reconsideration involve an intervening change of
controlling law, the availability of new evidence, or the need to correct a clear error or prevent
manifest injustice.").  However, Defendants are free to raise the issue of what the Government
must show to establish an informal fiduciary relationship for the purpose of jury instructions.
Case No.: 18-cr-00258-EJD
ORDER RE DEFENDANTS' MOTIONS TO DISMISS THE SECOND AND THIRD
SUPERSEDING INDICTMENTS