09:36AM 1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

         UNITED STATES OF AMERICA,          )
6                                            )  CR-18-00258-EJD
                         PLAINTIFF,          )
7                                            )  SAN JOSE, CALIFORNIA
                   VS.                       )
8                                            )  OCTOBER 6, 2020
         ELIZABETH A. HOLMES AND RAMESH      )
9        SUNNY BALWANI,                      )  PAGES 1 - 96
                                             )
10                       DEFENDANTS.         )
         _____   )
11

12                   TRANSCRIPT OF ZOOM PROCEEDINGS
13              BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
14

15      A P P E A R A N C E S:

16      FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                              BY:  JOHN C. BOSTIC
17                                 JEFFREY B. SCHENK
                              150 ALMADEN BOULEVARD, SUITE 900
18                            SAN JOSE, CALIFORNIA 95113

19                            BY:  ROBERT S. LEACH
                                   VANESSA BAEHR-JONES
20                            1301 CLAY STREET, SUITE 340S
                              OAKLAND, CALIFORNIA 94612
21
                (APPEARANCES CONTINUED ON THE NEXT PAGE.)
22

23      OFFICIAL COURT REPORTER:
                              IRENE L. RODRIGUEZ, CSR, RMR, CRR
24                            CERTIFICATE NUMBER 8074

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

1

    A P P E A R A N C E S: (CONT'D)

2


3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                             BY:  KEVIN M. DOWNEY
4                                 LANCE A. WADE
                                  KATHERINE TREFZ
5                                 AMY SAHARIA
                                  ANDREW LEMENS
6                            725 TWELFTH STREET, N.W.
                             WASHINGTON, D.C. 20005
7


8    FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
                             BY:  JEFFREY COOPERSMITH
9                                 AMANDA MCDOWELL
                             701 FIFTH AVENUE, SUITE 5600
10                           SEATTLE, WASHINGTON 98104

11                           BY:  STEPHEN CAZARES
                             77 SOUTH FIGUEROA STREET, SUITE 3200
12                           LOS ANGELES, CALIFORNIA 90017

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    OCTOBER 6, 2020 |
| 10:05AM   2 | P R O C E E D I N G S |
| 10:05AM   3 | (COURT CONVENED AT 10:05 A.M.) |
| 10:05AM   4 | THE COURT:  ALL RIGHT.  THANK YOU, MS. KRATZMANN. |
| 10:05AM   5 | LET'S NOW CALL THIS MATTER.  THIS IS 18-258, UNITED STATES |
| 10:06AM   6 | VERSUS ELIZABETH HOLMES AND SUNNY BALWANI. |
| 10:06AM   7 | THANK YOU FOR SIGNING IN. |
| 10:06AM   8 | LET ME FIRST CAPTURE THE APPEARANCES OF THE PARTIES FOR |
| 10:06AM   9 | THE RECORD, PLEASE.  AND I'LL ASK THE GOVERNMENT TO GO FIRST, |
| 10:06AM  10 | AND THEN I'LL ASK DEFENSE TO PROCEED. |
| 10:06AM  11 | ALSO, AS TO THE DEFENSE, I WANT YOU TO, WHEN YOU MAKE YOUR |
| 10:06AM  12 | APPEARANCE, IF YOU WOULD PLEASE INFORM ME AND INFORM US AS TO |
| 10:06AM  13 | WHETHER OR NOT THAT YOU HAVE ADVISED YOUR CLIENT OF THE RIGHT |
| 10:06AM  14 | TO APPEAR PERSONALLY IN COURT AT A LATER DATE, AND ALSO IF YOU |
| 10:06AM  15 | WOULD INFORM ME FOR THE RECORD WHETHER OR NOT YOUR CLIENT |
| 10:06AM  16 | CONSENTS TO PROCEEDING VIA THE REMOTE PROCEEDINGS THAT WERE |
| 10:06AM  17 | ENGAGED TODAY. |
| 10:06AM  18 | LET ME INDICATE THAT WE HAVE ENGAGED REMOTE PROCEEDINGS IN |
| 10:06AM  19 | OUR COURTS HERE IN THE NORTHERN DISTRICT OF CALIFORNIA OWING TO |
| 10:06AM  20 | THE COVID PANDEMIC.  WE ARE MITIGATING THE APPEARANCE OF |
| 10:06AM  21 | PARTIES IN OUR COURTHOUSES FOR THE SAFETY OF THE PUBLIC, THE |
| 10:07AM  22 | SAFETY OF LITIGANTS, AND, OF COURSE, THE SAFETY OF OUR STAFF. |
| 10:07AM  23 | WE'VE ENGAGED REMOTE HEARINGS TO ACCOMPLISH THIS. |
| 10:07AM  24 | AND AGAIN, DEFENSE COUNSEL, AGAIN, IF YOU COULD PLEASE LET |
| 10:07AM  25 | ME KNOW WHEN THEY MAKE THEIR APPEARANCES WHETHER OR NOT THEIR |

```
10:07AM   1      CLIENT CONSENTS TO THESE PROCEEDINGS AS INDICATED.

10:07AM   2          SO LET ME START WITH THE GOVERNMENT.  WHO APPEARS FOR THE

10:07AM   3      GOVERNMENT THIS MORNING?

10:07AM   4              MR. LEACH:  GOOD MORNING, YOUR HONOR.

10:07AM   5          ROBERT LEACH ON BEHALF OF THE UNITED STATES.

10:07AM   6          I'M JOINED BY JEFF SCHENK, JOHN BOSTIC, AND

10:07AM   7      VANESSA BAEHR-JONES.

10:07AM   8              THE COURT:  GREAT.  THANK YOU.  GOOD MORNING

10:07AM   9      EVERYONE.

10:07AM  10          LET'S START THEN WITH MS. HOLMES.  WHO APPEARS FOR

10:07AM  11      MS. HOLMES?

10:07AM  12              MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

10:07AM  13          THIS IS AMY SAHARIA FOR DEFENDANT ELIZABETH HOLMES.

10:07AM  14          APPEARING WITH ME TODAY ARE KEVIN DOWNEY AND LANCE WADE.

10:07AM  15      AND I WOULD LIKE TO INTRODUCE THE COURT TO MY COLLEAGUES,

10:07AM  16      KATHERINE TREFZ AND ANDREW LEMENS, WHO ARE ALSO APPEARING AND

10:07AM  17      WILL BE ARGUING SOME OF TODAY'S MOTIONS.

10:08AM  18          WE HAVE ADVISED MS. HOLMES OF HER RIGHT TO APPEAR IN

10:08AM  19      PERSON.  SHE DOES CONSENT TO APPEARING REMOTELY TODAY GIVEN THE

10:08AM  20      PUBLIC HEALTH SITUATION, AND WE DO HAVE THE CAPACITY TO CONSULT

10:08AM  21      WITH MS. HOLMES OFFLINE IF NEED BE, AND I WILL LET THE COURT

10:08AM  22      KNOW IF THAT BECOMES NECESSARY.

10:08AM  23              THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING

10:08AM  24      EVERYONE.

10:08AM  25          I'M HAPPY TO MEET THE NEW PEOPLE JOINING.
```

10:08AM 1       LET ME TURN TO MS. HOLMES, THOUGH.

10:08AM 2       MS. HOLMES, ARE YOU ABLE TO SEE AND TO HEAR THESE

10:08AM 3  PROCEEDINGS CURRENTLY?

10:08AM 4           DEFENDANT HOLMES:  I AM, YOUR HONOR.

10:08AM 5           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

10:08AM 6       AND YOU HEARD MS. SAHARIA, IF YOU NEED TO OR WISH TO SPEAK

10:08AM 7  WITH ANY OF YOUR COUNSEL, WOULD YOU PLEASE ENGAGE THE PROTOCOLS

10:08AM 8  THAT YOU HAVE DEVELOPED SUCH THAT I CAN BE INFORMED.  I'LL STOP

10:08AM 9  THE PROCEEDINGS AND ALLOW YOU TO CONSULT PRIVATELY WITH YOUR

10:08AM 10 COUNSEL SHOULD THAT BE REQUIRED.

10:08AM 11      WOULD YOU DO YOU THAT, PLEASE?

10:08AM 12          DEFENDANT HOLMES:  I WILL.  THANK YOU VERY MUCH,

10:08AM 13 YOUR HONOR.

10:08AM 14          THE COURT:  YOU'RE WELCOME.

10:08AM 15      AND WHO APPEARS FOR MR. BALWANI?

10:09AM 16          MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR.

10:09AM 17      THIS IS JEFF COOPERSMITH ON BEHALF OF MR. BALWANI, AND I'M

10:09AM 18 JOINED BY MY COLLEAGUES, STEPHEN CAZARES AND AMADA MCDOWELL.

10:09AM 19      MR. BALWANI IS ALSO PRESENT ON ZOOM.  WE HAVE ADVISED

10:09AM 20 MR. BALWANI OF HIS RIGHT TO APPEAR IN PERSON, BUT IN LIGHT OF

10:09AM 21 THE COVID CRISIS HE DOES CONSENT TO APPEARANCE BY ZOOM THIS

10:09AM 22 MORNING.  AND WE DO HAVE THE ABILITY, IF NECESSARY, TO CONSULT

10:09AM 23 WITH MR. BALWANI OUTSIDE OF THE ZOOM PROCEEDING.

10:09AM 24          THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING

10:09AM 25 EVERYONE.  THANK YOU FOR YOUR APPEARANCE.

| | | |
|---|---|---|
| 10:09AM | 1 | MR. BALWANI, LET ME REACH OUT TO YOU, SIR.  ARE YOU ABLE |
| 10:09AM | 2 | TO HEAR AND SEE THESE PROCEEDINGS CURRENTLY, SIR? |
| 10:09AM | 3 | DEFENDANT BALWANI:  YES, YOUR HONOR, I CAN. |
| 10:09AM | 4 | THE COURT:  AND YOUR COUNSEL HAS INFORMED ME THAT HE |
| 10:09AM | 5 | HAS ENGAGED A PROTOCOL SUCH THAT IF YOU WISH TO SPEAK WITH HIM |
| 10:09AM | 6 | PRIVATELY OR ANY OF YOUR LAWYERS PRIVATELY, YOU CAN ENGAGE THAT |
| 10:09AM | 7 | PROTOCOL. |
| 10:09AM | 8 | YOU KNOW HOW TO DO THAT I PRESUME? |
| 10:09AM | 9 | DEFENDANT BALWANI:  YES, YOUR HONOR.  THANK YOU.  I |
| 10:10AM | 10 | CAN. |
| 10:10AM | 11 | THE COURT:  SO IF THAT SHOULD ARISE THAT YOU WISH TO |
| 10:10AM | 12 | SPEAK WITH YOUR COUNSEL, PLEASE LET ME KNOW OR ENGAGE THAT |
| 10:10AM | 13 | PROTOCOL AND I'LL, OF COURSE, ALLOW YOU TO SPEAK PRIVATELY WITH |
| 10:10AM | 14 | YOUR COUNSEL. |
| 10:10AM | 15 | ALL RIGHT, SIR? |
| 10:10AM | 16 | DEFENDANT BALWANI:  THANK YOU, YOUR HONOR.  YES. |
| 10:10AM | 17 | THE COURT:  YOU'RE WELCOME. |
| 10:10AM | 18 | ALSO, IF FOR ANY REASON, AS TO MR. BALWANI AND MS. HOLMES, |
| 10:10AM | 19 | IF THE CONNECTION FAILS OR FOR SOME REASON YOU ARE UNABLE TO |
| 10:10AM | 20 | CONTINUE HEARING AND/OR SEEING THESE PROCEEDINGS, I'D LIKE YOU |
| 10:10AM | 21 | TO CONTACT YOUR ATTORNEYS IMMEDIATELY SO WE CAN STOP THE |
| 10:10AM | 22 | PROCEEDINGS AND CORRECT THAT ISSUE. |
| 10:10AM | 23 | ALL RIGHT, MR. BALWANI? |
| 10:10AM | 24 | DEFENDANT BALWANI:  YES, SIR.  THANK YOU. |
| 10:10AM | 25 | THE COURT:  MS. HOLMES? |

| | |
|---|---|
| 10:10AM | 1 |
| 10:10AM | 2 |
| 10:10AM | 3 |
| 10:10AM | 4 |
| 10:10AM | 5 |
| 10:11AM | 6 |
| 10:11AM | 7 |
| 10:11AM | 8 |
| 10:11AM | 9 |
| 10:11AM | 10 |
| 10:11AM | 11 |
| 10:11AM | 12 |
| 10:11AM | 13 |
| 10:11AM | 14 |
| 10:11AM | 15 |
| 10:11AM | 16 |
| 10:11AM | 17 |
| 10:11AM | 18 |
| 10:11AM | 19 |
| 10:11AM | 20 |
| 10:12AM | 21 |
| 10:12AM | 22 |
| 10:12AM | 23 |
| 10:12AM | 24 |
| 10:12AM | 25 |

DEFENDANT HOLMES:  YES.  THANK YOU.

THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

WELL, WE HAVE MOTIONS BEFORE US FILED BY THE DEFENSE.
THESE ARE DOCKETS 493, 496, 497, 498, 499, AND 500
RESPECTFULLY.  THESE ARE MOTIONS TO DISMISS FOR A VARIETY OF
REASONS.

LET ME INDICATE THAT I HAVE READ AND REVIEWED YOUR
PLEADINGS.  THANK YOU AGAIN FOR YOUR PLEADINGS, BOTH SIDES.
THEY CONTINUE TO BE INFORMATIVE AND HELPFUL TO THE COURT.

WHAT I THOUGHT I WOULD DO IS -- I WENT THROUGH THE
MOTIONS.  IT APPEARED TO ME THAT WE MIGHT BE ABLE TO CAPTURE
SOME ARGUMENTS AS TO OVERLAP IN SOME OF THESE MOTIONS.

I -- IT APPEARS TO ME THAT -- AND WHAT I'D LIKE TO DO, AND
THIS IS THE ORDER FOR YOU, AND I APOLOGIZE FOR NOT GETTING THIS
OUT TO YOU SOONER.  I THINK I GOT A LIST FROM MR. LEACH
INDICATING WHO IS GOING TO ARGUE ON BEHALF OF THE GOVERNMENT
THESE MOTIONS.

MY THOUGHT IS THAT IN THE ORDER OF THINGS THAT WE WOULD
PROCEED WITH DOCKETS 493, THE PRE-INDICTMENT DELAY; AND THEN
498, PERHAPS HAVE A DISCUSSION AS TO THOSE.  THOSE SEEM TO HAVE
SOME RELATED ISSUES, AND I THINK WE CAN DISCUSS THOSE TWO
PERHAPS CLOSE IN TIME.

THE NEXT GROUPING, IF YOU WILL, I THINK, WOULD BE 496, THE
LACK OF NOTICE; AND 497, THE DUPLICITOUS ARGUMENTS.

AND THEN THIRD, I THINK THE 499, THE CONVERGENCE MOTION

10:12AM  1    WOULD FOLLOW.

10:12AM  2         LET ME INDICATE THAT I'VE READ 500.  I DON'T THINK THAT

10:12AM  3    THAT REQUIRES ANY REAL SUBSTANTIVE DISCUSSION THIS MORNING.  I

10:12AM  4    UNDERSTAND 500 IS SUBSUMED IN SOME OF THE OTHER MOTIONS, BUT I

10:12AM  5    DON'T THINK WE NEED TO OR THAT I NEED ANY REAL DISCUSSION OR

10:12AM  6    HELP ON 500.

10:12AM  7         BUT THESE OTHER MOTIONS, I'M HAPPY TO GIVE YOU AN

10:12AM  8    OPPORTUNITY TO DISCUSS THEM AS GROUPED AS I'VE INDICATED.  I

10:12AM  9    THINK THAT WOULD PROVIDE FOR SOME EFFICIENCY.  THE ARGUMENTS,

10:12AM  10   AS I SAID, IN MY VIEW SEEMED TO OVERLAP.

10:12AM  11        SO LET'S START THEN WITH 493 AND 498.  493 IS

10:13AM  12   MR. BALWANI'S MOTION; 495 IS MS. HOLMES'S JOINDER; THE

10:13AM  13   GOVERNMENT OPPOSITION IS 495; AND MR. BALWANI'S REPLY IS 496.

10:13AM  14   I'VE READ AND REVIEWED THOSE.

10:13AM  15        LET ME INDICATE THAT AS TO DISCUSSION HERE, MR. LEACH,

10:13AM  16   THIS IS, I GUESS, SPECIFIC TO YOU, THERE MAY BE DOCUMENTS THAT

10:13AM  17   ARE NOT IN THE PUBLIC RECORD RELATED TO THIS MOTION.  I DON'T

10:13AM  18   THINK WE NEED TO GET INTO THOSE.  I THINK WE CAN ARGUE THE

10:13AM  19   MOTION WITHOUT DISCUSSION OF THOSE.  I THINK YOU CAN ANSWER

10:13AM  20   QUESTIONS THAT I HAVE WITHOUT GETTING INTO THAT, BUT, OF

10:13AM  21   COURSE, SHOULD YOU WISH TO TRAVEL THERE YOU SHOULD JUST LET ME

10:13AM  22   KNOW.

10:13AM  23             MR. LEACH:  UNDERSTOOD, YOUR HONOR.  THAT WAS MY

10:13AM  24   INTENT.  THANK YOU.

10:13AM  25             THE COURT:  GREAT.  THANK YOU.  ALL RIGHT.  SO WHO

```
10:13AM  1        IS GOING TO SPEAK ON BEHALF OF THE MOVING PARTY?

10:13AM  2             IS THAT YOU, MR. COOPERSMITH?

10:13AM  3                  MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

10:14AM  4                  THE COURT:  SURE.  WHAT WOULD YOU LIKE ME TO KNOW

10:14AM  5        ABOUT THIS THAT I HAVEN'T READ IN YOUR PLEADINGS?

10:14AM  6                  MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

10:14AM  7             SO, FIRST OF ALL, THE SECOND AND THIRD SUPERSEDING

10:14AM  8        INDICTMENTS IN THIS CASE VASTLY EXPAND THE CHARGES.  AND I KNOW

10:14AM  9        THE GOVERNMENT CLAIMS THAT'S NOT THE CASE, BUT LET ME JUST

10:14AM 10        BRIEFLY TELL YOU THE FOUR WAYS IN WHICH THE CHARGES ARE VASTLY

10:14AM 11        EXPANDED.

10:14AM 12             FIRST OF ALL, IT DOUBLES THE TIME OF THE CONSPIRACY FROM

10:14AM 13        THREE YEARS TO SIX YEARS, WHICH IS OBVIOUSLY IN A CASE OF THIS

10:14AM 14        COMPLEXITY WITH THE AMOUNT OF DOCUMENTS INVOLVED QUITE

10:14AM 15        SIGNIFICANT.

10:14AM 16             IT ADDS AS VICTIMS TWO MAJOR CORPORATIONS THAT THEMSELVES

10:14AM 17        HAVE SCORES OF WITNESSES AND DOCUMENTS INVOLVED WITH THEM.  SO

10:14AM 18        SAFEWAY AND WALGREENS, OF COURSE, ARE THE TWO MAJOR

10:14AM 19        CORPORATIONS THAT ARE NOW ADDED AS ALLEGED VICTIMS.

10:14AM 20             IT ALSO ADDS A WHOLE GROUP OF BOARD MEMBERS.  IT'S NOT

10:14AM 21        CLEAR EXACTLY WHICH BOARD MEMBERS, AS I THINK MS. SAHARIA WILL

10:14AM 22        TELL YOU IN THE OTHER ARGUMENT ON DOCKET 498, BUT IT DOES ADD

10:15AM 23        BOARD MEMBERS.  THEY'RE ALL QUITE SOPHISTICATED PARTIES WITH A

10:15AM 24        LONG HISTORY INVOLVED WITH THERANOS.  IT ADDS A LOT OF

10:15AM 25        COMPLEXITY AND SIGNIFICANT ADDITION TO THE CASE.
```

10:15AM 1      AND THEN FINALLY, YOUR HONOR, THERE'S A NUMBER OF NEW

10:15AM 2    ASSAYS, OR BLOOD TESTS, THAT HAVE BEEN ADDED IN THE NEW

10:15AM 3    CHARGES.  AND I CAN LIST THEM:  CHOLESTEROL, GONORRHEA,

10:15AM 4    GLUCOSE, PSA, PTINR, TESTOSTERONE, TSH, AND FOUR OR FIVE

10:15AM 5    OTHERS.

10:15AM 6      THE REASON WHY THAT IS SIGNIFICANT, YOUR HONOR, IS THAT

10:15AM 7    EACH OF THESE BLOOD TESTS, OR ASSAYS AS THEY ARE CALLED, IS

10:15AM 8    INCREDIBLY A COMPLEX STORY IN AND OF ITSELF.

10:15AM 9      EVERY ASSAY THAT IS ADDED HERE INVOLVES QUITE A LOT OF

10:15AM 10   METICULOUS WORK ON BOTH SIDES, BUT ON THE DEFENSE SIDE IS WHAT

10:15AM 11   WE'RE TALKING ABOUT HERE, TO UNDERSTAND THE ASSAY, TO

10:15AM 12   UNDERSTAND WHAT HAPPENED, TO UNDERSTAND IF THERE'S ANY WAY IN

10:15AM 13   WHICH THE ASSAY CAN BE SYSTEMICALLY INACCURATE OR UNRELIABLE.

10:16AM 14   THAT ADDS QUITE A LOT OF BURDEN ON THE DEFENSE SIDE TO GO BACK

10:16AM 15   THROUGH THE DOCUMENTS AND TRY TO UNDERSTAND THOSE.

10:16AM 16     SO THOSE ARE THE FOUR WAYS.  I KNOW THE GOVERNMENT, AGAIN,

10:16AM 17   ARGUES THAT THEIR CHARGES ARE MODEST OR THEIR MODIFICATIONS ARE

10:16AM 18   MODEST, BUT THEY'RE VERY EXPANSIVE AND VERY SIGNIFICANT.

10:16AM 19     THAT BRINGS US TO THE CORE OF THE ARGUMENT HERE WHICH,

10:16AM 20   YOUR HONOR, IS THE SO-CALLED BARKER VERSUS WINGO FACTORS FOR

10:16AM 21   SPEEDY TRIAL RIGHT UNDER SIXTH AMENDMENT.

10:16AM 22     SO THERE ARE FOUR FACTORS AS THE COURT HAS READ IN THE

10:16AM 23   PAPERS:  DELAY OR THE AMOUNT OF DELAY, THE REASON FOR THE

10:16AM 24   DELAY, WHETHER THE DEFENDANT HAS INVOKED HIS SPEEDY TRIAL ACT

10:16AM 25   RIGHTS, AND THE PREJUDICE TO THE DEFENDANT.

10:16AM 1     LET ME TALK ABOUT DELAY FIRST.  I DON'T NEED TO DWELL ON

10:16AM 2  THIS, BUT THERE'S BEEN QUITE A LONG TIME BETWEEN THE INITIAL

10:16AM 3  INDICTMENT, WHICH WAS OF COURSE IN JUNE OF 2018, AND THEN THE

10:16AM 4  SUPERSEDING INDICTMENTS THAT WERE IN JULY OF 2020.

10:16AM 5     NOW, OF COURSE WE UNDERSTAND THAT THE COVID CRISIS HIT THE

10:16AM 6  WORLD IN APPROXIMATELY MARCH I THINK WHEN THINGS STARTED TO

10:16AM 7  SHUT DOWN.  SO EVEN IF YOU GIVE THE GOVERNMENT THE BENEFIT OF

10:17AM 8  THAT PERIOD BETWEEN MARCH AND JULY WHEN THE GRAND JURY WAS SHUT

10:17AM 9  DOWN AND THEN WAS BACK UP AGAIN IN JULY, STILL WE'RE TALKING

10:17AM 10  ABOUT A DELAY FROM JUNE 2018 THROUGH AT LEAST MARCH OF 2020.

10:17AM 11  IT'S ACTUALLY LONGER IF YOU COUNT THE PERIOD OF INVESTIGATION,

10:17AM 12  WHICH GOES BACK TO 2016 IN THIS CASE, ALL OF WHICH TIME

10:17AM 13  MR. BALWANI HAS BEEN LIVING WITH THIS CASE, YOU KNOW, SINCE HE

10:17AM 14  LEFT THERANOS IN 2016.

10:17AM 15     SO THE DELAY IS, IS MORE THAN WHAT IS REQUIRED FOR

10:17AM 16  INVOCATION OF THE SPEEDY TRIAL ACT -- I'M SORRY, THE SPEEDY

10:17AM 17  TRIAL CONSTITUTIONAL RIGHT UNDER THE SIXTH AMENDMENT.  IT'S IN

10:17AM 18  THE BEST CASE SCENARIO SOMETHING LIKE 20 MONTHS AND IN OUR VIEW

10:17AM 19  LONGER.

10:17AM 20     THE COURT:  SO LET ME ASK YOU, MR. COOPERSMITH, WHEN

10:17AM 21  COUNSEL AGREED EARLY ON IN A CASE, LET'S JUST SAY, THAT THE

10:17AM 22  CASE IS A COMPLEX ONE.  AND THEY AGREE, THAT IS, THE GOVERNMENT

10:18AM 23  AND DEFENSE COUNSEL AGREE TO IDENTIFY A CASE USING THAT --

10:18AM 24  THAT'S A TERM OF ART, ISN'T IT, A COMPLEX CASE FOR OUR

10:18AM 25  PURPOSES?  IT SUGGESTS THAT THIS IS NOT A RUN-OF-THE-MILL CASE,

10:18AM 1    YOUR HONOR.  THIS IS A CASE THAT INVOLVES A VARIETY, NUMEROUS,

10:18AM 2    VOLUMINOUS DISCOVERY, DISCRETE ISSUES THAT WILL BE FLESHED OUT

10:18AM 3    IN MOTION PRACTICE, IT INVOLVES OTHER TECHNOLOGY THAT NEEDS TO

10:18AM 4    BE CAREFULLY EXAMINED.  ALL OF THOSE FALL UNDER THE UMBRELLA OF

10:18AM 5    A COMPLEX CASE.

10:18AM 6        SO WHEN COUNSEL STIPULATE AND OTHERWISE AGREE TO THE COURT

10:18AM 7    THAT THE COURT SHOULD CONSIDER A CASE AS COMPLEX, DOESN'T THAT

10:18AM 8    IN AND OF ITSELF SUGGEST THAT THIS IS A SPECIAL, UNIQUE CASE

10:18AM 9    THAT IS GOING TO OCCUPY SIGNIFICANT AMOUNT OF THE COURT TIME,

10:18AM 10   NOT JUST IN THE PROCEEDINGS BUT ALSO IN THE LENGTH AND

10:18AM 11   DURATION, AND THE REASON THAT THERE IS AN AGREEMENT, IF THERE

10:18AM 12   IS ONE FOR COMPLEX CASES, IT GIVES ALL PARTIES NOTICE AS TO

10:19AM 13   EXPECTATIONS GOING FORWARD.

10:19AM 14       ISN'T THAT PART OF THE CALCULUS THAT SHOULD BE CONSIDERED

10:19AM 15   HERE?

10:19AM 16           MR. COOPERSMITH:  YES, YOUR HONOR.  THERE'S NO

10:19AM 17   QUESTION THAT THIS IS A COMPLEX CASE.  AND THE PARTIES, OF

10:19AM 18   COURSE, BECAUSE OF THE NATURE OF IT, AGREE THAT THIS WAS A

10:19AM 19   COMPLEX CASE AS THE COURT SO FOUND.

10:19AM 20       SO, YES, THAT IS PART OF THE CALCULUS.

10:19AM 21       BUT THE COMPLEXITY OF THE CASE IS EXACTLY THE REASON WHY

10:19AM 22   THIS DELAY, THIS VERY LENGTHY DELAY IN BRINGING THE SUPERSEDING

10:19AM 23   CHARGES IS SUCH A PROBLEM.

10:19AM 24       SO WHEN YOU HAVE A COMPLEX CASE LIKE THIS WITH LITERALLY

10:19AM 25   TENS OF MILLIONS OF PAGES OF DISCOVERY THAT COUNSEL HAVE TO GO

10:19AM 1    THROUGH, WHAT HAPPENS IS THAT YOU LOOK AT THOSE DOCUMENTS AND

10:19AM 2    DEVELOP YOUR DEFENSE THEORIES AND ANY DEFENSE WITNESSES THAT

10:19AM 3    YOU'RE TRYING TO DEVELOP, YOU DO ALL OF THIS WITH AN EYE

10:19AM 4    TOWARDS WHAT THE CHARGES ACTUALLY ARE.

10:19AM 5         AND, YES, I UNDERSTAND THAT THERE ARE OTHER MOTION

10:19AM 6    PRACTICE PERHAPS ON 404(B) ISSUES, BUT YOU REALLY HAVE TO FOCUS

10:20AM 7    ON THE CHARGES.

10:20AM 8         WHEN THE GOVERNMENT DELAYS FOR A COUPLE OF YEARS AT LEAST

10:20AM 9    IN BRINGING CHARGES THAT ARE, AS I SAID, VASTLY EXPANDED IN AN

10:20AM 10   ALREADY COMPLEX CASE, IT CREATES AN ENORMOUS BURDEN AND

10:20AM 11   PREJUDICE TO A DEFENDANT LIKE MR. BALWANI, WHO AFTER ALL, DOES

10:20AM 12   NOT HAVE THE RESOURCES UNITED STATES GOVERNMENT.  HE'S AN

10:20AM 13   INDIVIDUAL DEFENDANT, AND HE HAS GOT TO HAVE HIS COUNSEL GO

10:20AM 14   BACK THROUGH ALL OF THE MATERIAL.

10:20AM 15        AND I SHOULD POINT OUT, YOUR HONOR, THAT IS EXACTLY THE

10:20AM 16   PREJUDICE THAT JUDGE ILLSTON FOUND IN CUTTING.  AT PAGE

10:20AM 17   STAR 11 OF HER OPINION SHE SAID THAT HAVING TO DO THAT AND THAT

10:20AM 18   KIND OF BURDEN.

10:20AM 19        SO I THINK, YOUR HONOR --

10:20AM 20          THE COURT:  PARDON ME.  CUTTING WAS INTERESTING.

10:20AM 21   JUDGE ILLSTON DID GRANT THAT MOTION ON ONE GROUND, BUT THEN

10:20AM 22   FOUND IT WAS RULE 48, I THINK.  AND SHE ACTUALLY INDICATED TO

10:20AM 23   THE PARTIES THAT, WELL, I'M GOING TO PARSE OUT THESE OFFENDING

10:20AM 24   COUNTS, BUT YOU CAN REFILE THEM AND IN A NEW CHARGING DOCUMENT.

10:20AM 25        ULTIMATELY WHAT HAPPENED IN CUTTING IS THAT THAT'S EXACTLY

10:21AM 1    WHAT HAPPENED, AND THERE WAS A JOINT TRIAL AS I RECALL.

10:21AM 2         ISN'T THAT CORRECT?

10:21AM 3             MR. COOPERSMITH:  YES, YOUR HONOR.  THE PROCEDURAL

10:21AM 4    HISTORY IN CUTTING IS SOMEWHAT TORTURED.

10:21AM 5             THE COURT:  IT IS.

10:21AM 6             MR. COOPERSMITH:  WHAT WE'RE FOCUSSED --

10:21AM 7             THE COURT:  WHAT WAS IMPORTANT -- I'M SORRY,

10:21AM 8    MR. COOPERSMITH.

10:21AM 9         BUT WHAT WAS IMPORTANT FOR ME TO GLEAN FROM CUTTING IS

10:21AM 10   THAT THE GOVERNMENT -- AND THAT WAS A COMPLEX CASE ALSO.  IT

10:21AM 11   WAS BANK FRAUD.  IT HAD MILLIONS AND MILLIONS OF PAGES OF

10:21AM 12   DOCUMENTS.

10:21AM 13        AND I THINK JUDGE ILLSTON, WITHOUT SO SPECIFICALLY

10:21AM 14   FINDING, BUT I THINK IT'S PRETTY CLEAR FROM ALL OF US THAT READ

10:21AM 15   CUTTING, HER OBSERVATION WAS THAT THE GOVERNMENT IN THAT CASE

10:21AM 16   WAS LESS THAN DILIGENT IN PROVIDING THE DISCOVERY.

10:21AM 17        I THINK THERE WAS AN INDICATION, WASN'T THERE, THAT THERE

10:21AM 18   WERE PROBABLY FIVE MORE BANKER'S BOXES REPRESENTED BY THE

10:21AM 19   GOVERNMENT, WHEN, IN FACT, THERE WERE ACTUALLY 23 OR MORE BOXES

10:21AM 20   THAT WERE GIVEN TO THE DEFENSE COUNSEL CLOSE IN TIME TO THE

10:21AM 21   TRIAL.

10:21AM 22        AND SHE FOUND THAT THAT WAS NOT -- JUST NOT, NOT FAIR AND

10:22AM 23   NOT APPROPRIATE.

10:22AM 24        SO I THINK THERE'S A BIT OF A DISTINCTION.  THE QUALITIES

10:22AM 25   OF IT, THE ARGUMENT I THINK I DO CAPTURE, BUT I DO THINK

10:22AM  1   THERE'S A DISTINCTION BETWEEN THIS AND <u>CUTTING</u>.  ALTHOUGH I

10:22AM  2   FOLLOW YOUR LOGIC AND JUDGE ILLSTON'S LOGIC ALSO IN FINDING AS

10:22AM  3   SHE DID.

10:22AM  4          MR. COOPERSMITH:  YES, YOUR HONOR.

10:22AM  5      I THINK WHEN YOU COMPARE THIS CASE TO <u>CUTTING</u> AND, YES,

10:22AM  6   THERE WERE ANOTHER 23 BOXES THAT SHOWED UP IN DISCOVERY, I

10:22AM  7   THINK IN THIS CASE THE COURT, YOU KNOW, HAD ORDERED CERTAIN

10:22AM  8   DISCOVERY INVOLVING THE FDA AND CMS TO BE COMPLETED BY THE END

10:22AM  9   OF LAST YEAR, 2019.

10:22AM 10      WE'RE STILL -- LAST WEEK WE GOT MORE DISCOVERY THAT WAS

10:22AM 11   FROM DOCUMENTS THAT WERE 2016, 2017.  THE GOVERNMENT, YOU KNOW,

10:22AM 12   TRIED -- TRIED TO GET AN EXTENSION.  THEY NEVER ACTUALLY GOT

10:22AM 13   THE EXTENSION.  THEY JUST KIND OF UNILATERALLY GOT AN

10:22AM 14   EXTENSION.

10:22AM 15      BUT THE DISCOVERY IS NOT JUST 23 BOXES THAT ROLLED IN LATE

10:22AM 16   HERE.  I DON'T KNOW WHAT THE EQUIVALENT IS IN TERABYTES, BUT I

10:22AM 17   KNOW AT ONE POINT IN MAY WE GOT SOMETHING LIKE 1.7 TERABYTES.

10:23AM 18   SO I THINK IT WOULD PROBABLY FILL A WAREHOUSE.  IT'S NOT JUST A

10:23AM 19   MATTER OF 23 BOXES.

10:23AM 20      BUT IN ADDITION, YOUR HONOR, THERE'S NO REASON FOR THE

10:23AM 21   DELAY.  AND THIS IS SOMETHING THAT JUDGE ILLSTON FOUND VERY

10:23AM 22   SIGNIFICANT, AND OTHER COURTS HAVE AS WELL, IS THAT IN THE

10:23AM 23   GOVERNMENT'S OPPOSITION BRIEF THEY TALK A LOT ABOUT THE

10:23AM 24   COMPLEXITY OF THE CASE, AND THEY TALK A LOT ABOUT MOTION

10:23AM 25   PRACTICE AND COVID, BUT NOWHERE DO THEY EXPLAIN WHY THEY

10:23AM 1      COULDN'T HAVE BROUGHT THESE CHARGES RIGHT FROM THE GET-GO.  WE

10:23AM 2      POINTED OUT IN OUR BRIEFING HOW THEY HAD ALL OF THE MATERIALS.

10:23AM 3          SO COMPLEX OR NOT, THEY COULD HAVE BROUGHT THESE CHARGES.

10:23AM 4      AS THE COURT HAS HELD IN THE DOGGETT CASE FROM THE SUPREME

10:23AM 5      COURT AND THE MENDOZA CASE, THE REASON FOR THE DELAY IS REALLY

10:23AM 6      THE FOCAL POINT HERE.

10:23AM 7          AND WHEN THE GOVERNMENT HAS NO REASON -- I JUST WANT TO

10:23AM 8      TELL YOUR HONOR THEY DO PUT FORWARD SOME REASONS, OR AT LEAST

10:23AM 9      TRY TO, ON PAGE 12 OF THEIR OPPOSITION.  AND THEY SAY THE

10:23AM 10     FOLLOWING THREE THINGS:  THE COMPLEXITY OF THE CASE AND THE

10:23AM 11     VOLUMINOUS DISCOVERY, THE EXTENSIVE MOTION PRACTICE, AND THEN

10:24AM 12     COVID-19.  THEY ALSO TRY TO CLAIM THAT THERE WERE SOME

10:24AM 13     DISMISSALS.  NONE OF THOSE REASONS, YOU KNOW, PASS MUSTER AT

10:24AM 14     ALL, YOUR HONOR.

10:24AM 15         THE COMPLEXITY OF THE CASE DOESN'T AFFECT WHETHER THE

10:24AM 16     GOVERNMENT COULD HAVE BROUGHT THESE CHARGES RIGHT FROM THE

10:24AM 17     BEGINNING.  BUT THEY ACTUALLY ADMIT ON PAGE -- WHAT I BELIEVE

10:24AM 18     THEY ADMIT ON PAGE 12, THEY SAY THAT THEY REEVALUATED THE

10:24AM 19     CHARGING LANGUAGE AFTER THE COURT DISMISSED CERTAIN THEORIES

10:24AM 20     LAST YEAR.

10:24AM 21         NONE OF THE DISMISSALS IN THIS CASE HAVE ANYTHING TO DO

10:24AM 22     WITH THE NEW CHARGES.

10:24AM 23         WHAT THE COURT ACTUALLY DISMISSED, NOT COUNTS, BUT THE

10:24AM 24     COURT SAID PATIENTS WHO DIDN'T PAY FOR THERANOS'S TESTS -- AND

10:24AM 25     DOCTORS COULD NOT BE VICTIMS -- SO THE NEW CHARGES INVOLVING

10:24AM 1    WALGREENS AND SAFEWAY AND BOARD MEMBERS AND EXPANDING THE

10:24AM 2    TIMEFRAME AND THE NEW ASSAYS REALLY HAVE NOTHING AT ALL TO DO

10:24AM 3    WITH THOSE DISMISSALS.

10:24AM 4         SO FOR THE GOVERNMENT TO PUT THAT FORWARD JUST DOESN'T

10:24AM 5    MAKE ANY SENSE.

10:24AM 6         COVID-19 IS A FIG LEAF IN THIS MOTION, YOUR HONOR.  THE

10:25AM 7    GOVERNMENT COULD HAVE -- YOU KNOW, THEY HAD A GRAND JURY

10:25AM 8    AVAILABLE TO THEM AT LEAST UNTIL MARCH, SO THERE'S STILL A

10:25AM 9    LENGTHY DELAY.

10:25AM 10        THE COMPLEXITY AND THE MOTION PRACTICE REALLY HAD NOTHING

10:25AM 11   TO DO WITH IT.

10:25AM 12        SO THE REASON FOR THE DELAY WAS AN IMPORTANT FACTOR FOR

10:25AM 13   JUDGE ILLSTON, AND I THINK IT SHOULD BE AN IMPORTANT FACTOR OR

10:25AM 14   A KEY FACTOR FOR THIS COURT.

10:25AM 15        AS I SAID, MR. BALWANI NOW HAS TO HAVE HIS COUNSEL NOW GO

10:25AM 16   BACK THROUGH MILLIONS OF PAGES.  JUST AS JUDGE ILLSTON SAID

10:25AM 17   THIS IN CUTTING, WE HAVE TO GO LOOK AT MILLIONS OF PAGES AT AN

10:25AM 18   AMAZING EXPENSE AND A TERRIFIC EXPENSE TO MR. BALWANI TO TRY TO

10:25AM 19   ADDRESS THESE NEW CHARGES.

10:25AM 20        SO THE KEY --

10:25AM 21            THE COURT:  I'M SORRY.  MILLIONS OF PAGES TO ADDRESS

10:25AM 22   THE NEW CHARGES IN RELATION TO WHETHER OR NOT SAFEWAY AND

10:25AM 23   WALGREENS WERE INVESTORS?

10:25AM 24            MR. COOPERSMITH:  IT'S NOT JUST WHETHER THEY WERE

10:25AM 25   INVESTORS.  AND AS MS. SAHARIA WILL TELL YOU I THINK IN A

10:25AM 1    MINUTE, WE DON'T THINK THEY'RE INVESTORS IN THAT SENSE, BUT

10:25AM 2    GIVEN THAT THEY'RE NOW ALLEGED VICTIMS AND WE HAVE TO LOOK AT

10:25AM 3    WHAT ARE THE FALSE REPRESENTATIONS THAT WERE ALLEGEDLY MADE TO

10:26AM 4    NOT JUST ONE PERSON LIKE IN THE CASE OF AN INDIVIDUAL INVESTOR,

10:26AM 5    BUT AN ENTIRE GIANT CORPORATION THAT HAS SCORES OF PEOPLE

10:26AM 6    WORKING FOR IT.

10:26AM 7         SO WHO SAID WHAT TO WHO AND WHEN.  AND THAT'S AN ENORMOUS

10:26AM 8    UNDERTAKING THAT WE NOW HAVE TO GO BACK THROUGH AND REALLY

10:26AM 9    FOCUS ON NOW THAT THE GOVERNMENT IS TRYING TO MAKE THAT PART OF

10:26AM 10   THE CHARGED CONDUCT.

10:26AM 11        THE COURT:  IS THERE STILL THAT HERCULEAN TASK TO

10:26AM 12   DETERMINE WHICH BOARD MEMBERS WERE INVESTORS AND PURCHASED

10:26AM 13   EQUITY AS OPPOSED TO RECEIVING EQUITY AS COMPENSATION FOR THEIR

10:26AM 14   BOARD MEMBERSHIP?

10:26AM 15        MR. COOPERSMITH:  THAT'S ANOTHER ISSUE FOR SURE,

10:26AM 16   YOUR HONOR.

10:26AM 17        THE COURT:  IS THAT A HERCULEAN TASK AS WELL?

10:26AM 18        MR. COOPERSMITH:  IT IS, YOUR HONOR.  WE HAVE GOT TO

10:26AM 19   TRY TO FIGURE OUT WHO DID WHAT WHEN AND WHAT THEY WERE TOLD AND

10:26AM 20   WHAT BOARD MEETINGS.  YOU KNOW, THERE'S MINUTES IN SOME CASES,

10:26AM 21   BUT SOMETIMES IT'S NOT CLEAR WHAT HAPPENED AT A BOARD MEETING.

10:26AM 22   I THINK THAT'S ANOTHER TASK.  I DON'T THINK IT'S QUITE AS

10:26AM 23   HERCULEAN AS THE WALGREEN/SAFEWAY ISSUES AND THE ASSAY, THE

10:26AM 24   BLOOD TESTS.

10:26AM 25        THE COURT:  IT SEEMS LIKE THAT CAN BE DETERMINED --

10:26AM 1    AND I'M KIND OF BLENDING OVER INTO THE OTHER MOTION AND I DON'T

10:27AM 2    MEAN TO -- BUT IT SEEMS LIKE THAT INFORMATION IS EASILY

10:27AM 3    OBTAINABLE, OR OBTAINABLE, LET ME PUT IT THAT WAY, FROM THE

10:27AM 4    STOCK LEDGER, AND YOU CAN DETERMINE WHO BOUGHT OR WHO RECEIVED

10:27AM 5    THIS COMPENSATION I SUPPOSE.

10:27AM 6         MAYBE I'M NAIVE ABOUT THAT, BUT IT SEEMS LIKE THAT WOULD

10:27AM 7    BE THE FIRST PLACE TO GO TO AND THAT WOULD PROVIDE SOME HELPFUL

10:27AM 8    INFORMATION.

10:27AM 9              MR. COOPERSMITH:  YOUR HONOR, THE GOVERNMENT HASN'T

10:27AM 10   TOLD US EXACTLY WHAT THEIR THEORIES ARE ABOUT BOARD MEMBERS,

10:27AM 11   AND I THINK THE COURT IS RIGHT THAT YOU CAN DETERMINE WHO HAS

10:27AM 12   STOCK, WHETHER THEY GOT IT FROM PAYING MONEY OR EXERCISING

10:27AM 13   OPTIONS OR GETTING IT FOR EXCHANGE FOR SERVICES ON THE BOARD.

10:27AM 14        BUT THE MORE INTERESTING THING, AND THE MORE SIGNIFICANT

10:27AM 15   TASK, YOUR HONOR, IS TO TRY TO FIGURE OUT WHAT WERE THE

10:27AM 16   MISREPRESENTATIONS TO THE BOARD, WHAT DID THE BOARD KNOW FROM

10:27AM 17   BEING INSIDERS, WHAT ACCESS DID THEY HAVE.  THOSE ARE THE

10:27AM 18   SIGNIFICANT EXPANSION AS IT RELATES TO BOARD MEMBERS.

10:27AM 19        BUT, YOU KNOW, AS I SAID BEFORE, THE SIGNIFICANT EXPANSION

10:27AM 20   IS NOT JUST ABOUT BOARD MEMBERS, IT'S ABOUT THESE GIANT RETAIL

10:28AM 21   CORPORATIONS, IT'S ABOUT ASSAYS, AND IT'S ABOUT THE EXPANSION

10:28AM 22   OF TIME FROM THREE TO SIX YEARS.

10:28AM 23              THE COURT:  OKAY.  AND THAT'S THE PREJUDICE THAT YOU

10:28AM 24   THINK IS -- I THINK THAT'S -- YOUR POINT IS THAT THE REAL

10:28AM 25   FACTOR THAT I SHOULD CONSIDER HERE IS WHAT IS THE PREJUDICE TO

```
10:28AM   1    YOUR CLIENT?

10:28AM   2         AND I THINK THIS IS WHAT IS YOU'RE INDICATING TO SUPPORT A

10:28AM   3    FINDING OF PREJUDICE AS TO YOUR CLIENT SUCH THAT THE COURT

10:28AM   4    SHOULD GRANT THE MOTION.

10:28AM   5              MR. COOPERSMITH:  JUST TO CLARIFY, YOUR HONOR.  THE

10:28AM   6    CASE LAW IS THAT WE DON'T ACTUALLY HAVE TO SHOW PREJUDICE.

10:28AM   7    THERE'S PRESUMED PREJUDICE.

10:28AM   8         AND IN THE SUPREME COURT'S DOGGETT OPINION IT SAID THAT IT

10:28AM   9    IS VERY DIFFICULT OFTEN TO SHOW PREJUDICE IN THESE CASES, AND

10:28AM  10    THAT'S WHY PREJUDICE IS PRESUMED.  THAT SAID, YOUR HONOR, AS

10:28AM  11    I'VE ARTICULATED, I AGREE WITH YOU, THERE'S SIGNIFICANT

10:28AM  12    PREJUDICE, AND WE'VE LAID THAT OUT FOR THE COURT.

10:28AM  13         BUT AS JUDGE ILLSTON SAID, THE OTHER FACTOR IS THE REASON

10:28AM  14    FOR THE DELAY HERE, AND THE GOVERNMENT JUST DOESN'T HAVE ANY

10:28AM  15    VALID REASON GIVEN ALL OF THE INFORMATION THAT THEY HAD

10:28AM  16    AVAILABLE TO IT AS TO WALGREENS, SAFEWAY, AND THESE OTHER

10:28AM  17    EXPANDED CHARGES.

10:28AM  18         SO I THINK THE FOCAL POINT, AS THE COURTS HAVE SAID, IS

10:29AM  19    THE REASON FOR THE DELAY.  I THINK THERE'S ALSO PREJUDICE HERE,

10:29AM  20    EVEN THOUGH WE DON'T HAVE TO SHOW IT, VERY SIGNIFICANT PROFOUND

10:29AM  21    PREJUDICE, AND FOR THOSE REASONS I THINK THE COURT SHOULD GRANT

10:29AM  22    OUR MOTION TO DISMISS ON SIXTH AMENDMENT GROUNDS.

10:29AM  23              THE COURT:  OKAY.  THANK YOU.

10:29AM  24         I THINK DOGGETT AND THOSE OTHER CASES SUGGEST THAT

10:29AM  25    CONTINUANCES BEYOND A YEAR AND OTHER DATES AS PRESUMPTIVE
```

10:29AM 1    PREJUDICE, THAT'S THE START THAT YOU LOOK AT.

10:29AM 2        AND YOU SAY, WELL, GEE, IT HASN'T GONE TO TRIAL IN THIS

10:29AM 3    TIME, AND THERE MUST BE SOMETHING WRONG.  WE ALSO -- THE

10:29AM 4    FACTORS, YOU KNOW, WE LOOK AT WHETHER YOUR CLIENT IS IN CUSTODY

10:29AM 5    AND THOSE TYPES OF THINGS.

10:29AM 6        BUT THANK YOU.  YOU'VE BEEN VERY HELPFUL IN THAT.

10:29AM 7        SO, MR. LEACH, ARE YOU SPEAKING TO THIS?  YES, THERE YOU

10:29AM 8    ARE.

10:29AM 9            MR. LEACH:  I AM, YOUR HONOR.  THANK YOU VERY MUCH.

10:29AM 10   AND GOOD MORNING.

10:29AM 11       I THINK AS THE COURT IS CONSIDERING THIS MOTION IT'S

10:29AM 12   IMPORTANT TO THINK ABOUT WHAT IS NOT ALLEGED.  THERE'S NO

10:29AM 13   ALLEGATION OF A SIXTH AMENDMENT PROBLEM WITH A TRIAL ON THE

10:30AM 14   FIRST SUPERSEDING INDICTMENT.

10:30AM 15       SO FOR THE TIME PERIOD FROM WHEN THE INDICTMENT WAS FILED

10:30AM 16   UNTIL MARCH OF 2021, NO PROBLEM UNDER THE SPEEDY TRIAL AND THE

10:30AM 17   SIXTH AMENDMENT CLAUSE UNDER THE DEFENDANTS' THEORY.

10:30AM 18       THERE'S ALSO NO ALLEGATION OF A SPEEDY TRIAL ACT

10:30AM 19   VIOLATION, AND THIS IS IMPORTANT BECAUSE THE NINTH CIRCUIT HAS

10:30AM 20   REPEATEDLY SAID THAT THE SPEEDY TRIAL ACT AFFORDS GREATER

10:30AM 21   PROTECTION FOR THE DEFENDANT, THE GOVERNMENT'S RIGHT TO A

10:30AM 22   SPEEDY TRIAL THAN WHAT IS GUARANTEED UNDER THE SIXTH AMENDMENT.

10:30AM 23       AND THE NINTH CIRCUIT HAS SAID IT WILL BE AN USUAL CASE IN

10:30AM 24   WHICH THE TIME LIMITS OF THE SPEEDY TRIAL ACT HAVE BEEN MET,

10:30AM 25   BUT THERE'S A SIXTH AMENDMENT CONSTITUTIONAL PROBLEM UNDER THE

| | | |
|---|---|---|
| 10:30AM | 1 | SPEEDY TRIAL. |
| 10:30AM | 2 | THE PROBLEM THAT THEY CLAIM IS THAT NOW WE HAVE TO DEFEND |
| 10:30AM | 3 | AGAINST ALLEGATIONS RELATING TO WALGREENS, AND, THEREFORE, MY |
| 10:30AM | 4 | SPEEDY TRIAL RIGHTS ARE VIOLATED. |
| 10:30AM | 5 | THIS IS WRONG FOR SEVERAL REASONS, YOUR HONOR, AND I WANT |
| 10:31AM | 6 | TO FOCUS IN ON BOTH THE PREJUDICE AND THE GOVERNMENT'S REASONS |
| 10:31AM | 7 | FOR SUPERSEDING. |
| 10:31AM | 8 | THERE IS NO PREJUDICE HERE.  MR. COOPERSMITH HASN'T |
| 10:31AM | 9 | POINTED TO A SINGLE DOCUMENT PRODUCED BY WALGREENS OR SAFEWAY |
| 10:31AM | 10 | OR A BOARD MEMBER THAT THEY HAVE NOT HAD FOR YEARS. |
| 10:31AM | 11 | THE GOVERNMENT'S INITIAL PRODUCTION OF DISCOVERY INCLUDED |
| 10:31AM | 12 | EVIDENCE RELATED TO WALGREENS.  IT INCLUDED EVIDENCE RELATED TO |
| 10:31AM | 13 | SAFEWAY, AND IT INCLUDED EVIDENCE RELATING TO THE BOARD |
| 10:31AM | 14 | MEMBERS.  AND THERE CAN BE NO CLAIM OR SURPRISE ABOUT THE |
| 10:31AM | 15 | GOVERNMENT'S INTENTION TO USE THIS EVIDENCE IN A TRIAL AGAINST |
| 10:31AM | 16 | MS. HOLMES AND MR. BALWANI. |
| 10:31AM | 17 | THEY TALK ABOUT MILLIONS OF DOCUMENTS, BUT THEY HAVEN'T |
| 10:31AM | 18 | POINTED TO A DOCUMENT PRODUCED BY WALGREENS OR SAFEWAY OR THE |
| 10:31AM | 19 | BOARD THAT THEY HAVE TO REREVIEW, A WITNESS THAT THEY HAVE TO |
| 10:31AM | 20 | REINTERVIEW, OR SOME PIVOT THAT THEY HAVE TO MAKE FOR THE TRIAL |
| 10:32AM | 21 | THAT WAS ALREADY COMING. |
| 10:32AM | 22 | THE INDICTMENT FROM DAY ONE HAS ALLEGED THAT THERANOS |
| 10:32AM | 23 | PURSUED A RELATIONSHIP WITH WALGREENS.  THE WALGREENS |
| 10:32AM | 24 | RELATIONSHIP WAS ALWAYS PART OF THIS CASE. |
| 10:32AM | 25 | WALGREENS WITNESSES ARE LISTED IN THE GOVERNMENT'S WITNESS |

10:32AM 1    LIST, AND WE GAVE THEM VERY SPECIFIC NOTICE IN MARCH OF 2020,

10:32AM 2    WHICH IS NOW A YEAR FROM OUR TRIAL DATE WHERE WE TOLD THEM WE

10:32AM 3    INTEND TO OFFER EVIDENCE RELATING TO WALGREENS, WE INTEND TO

10:32AM 4    INTRODUCE EVIDENCE RELATING TO SAFEWAY UNDER THE EXISTING

10:32AM 5    INDICTMENT.

10:32AM 6         SO FROM OUR PERSPECTIVE NOTHING HAS CHANGED.  THE INITIAL

10:32AM 7    INDICTMENT SPECIFICALLY ALLEGED THAT THERANOS PURSUED A

10:32AM 8    RELATIONSHIP WITH WALGREENS.  WE HAVE PRODUCED THIS DISCOVERY.

10:32AM 9    THEY'VE -- YOU KNOW, TO THE EXTENT THAT THERE WAS SOME DOUBT

10:32AM 10   ABOUT OUR INTENTION TO INTRODUCE THIS EVIDENCE, THEY'VE KNOWN

10:33AM 11   SINCE MARCH OF 2020.

10:33AM 12        AND IN TERMS OF WHY THE GOVERNMENT SUPERSEDED THE

10:33AM 13   INDICTMENT, TO BE COMPLETELY TRANSPARENT, WHEN WE STARTED TO

10:33AM 14   SEE WHERE THE DEFENSE WAS GOING TO TRY TO CUT OFF WHAT WE HAVE

10:33AM 15   PERCEIVED FROM DAY ONE AS EXTRAORDINARILY RELEVANT EVIDENCE,

10:33AM 16   EVIDENCE THAT WE THOUGHT WE HAD CHARGED, BUT AT A MINIMUM IS

10:33AM 17   INEXTRICABLY INTERTWINED WITH EVERYTHING THAT THE DEFENDANTS

10:33AM 18   DID, WE WENT BACK TO THE GRAND JURY AND WE SUPERSEDED TO MAKE

10:33AM 19   IT CLEAR THAT FROM DAY ONE THIS WAS PART OF THE CASE.

10:33AM 20        SO I JUST DON'T THINK THAT THEY HAVE IDENTIFIED ANY

10:33AM 21   PREJUDICE.  I THINK THE COURT'S FOCUS ON THE TORTURED HISTORY

10:33AM 22   OF CUTTING IS CORRECT.

10:33AM 23        I HEARD MR. COOPERSMITH BRING UP SOME OF THE FDA DOCUMENTS

10:33AM 24   AND THE FDA PRODUCTION.  AS AN INITIAL MATTER, WE PRODUCED WHAT

10:33AM 25   THEY ARE TALKING ABOUT MONTHS AGO AND SO -- BUT MORE

10:34AM 1     IMPORTANTLY, I DON'T THINK THEY'VE TIED THIS TO ANYTHING THAT

10:34AM 2     IS NEW IN THE THIRD SUPERSEDING INDICTMENT.

10:34AM 3         THE FDA DOCUMENTS DON'T TIE TO WHAT HAPPENED WITH

10:34AM 4     WALGREENS AND WITH WHAT HAPPENED WITH SAFEWAY AND WITH WHAT

10:34AM 5     HAPPENED TO THE BOARD MEMBERS.

10:34AM 6         FINALLY, JUST TO TOUCH ON HOW THIS PREJUDICE FACTOR FITS

10:34AM 7     IN.  YOU KNOW, THE COURTS HAVE SAID, AND I THINK DOGGETT SAYS

10:34AM 8     THAT IF THERE'S A DELAY BETWEEN THE INDICTMENTS AND THE TRIAL

10:34AM 9     OF MORE THAN A YEAR, THAT IS SUFFICIENT TO TRIGGER SOME FORM OF

10:34AM 10    INQUIRY ABOUT PREJUDICE AND TRIGGERING OF THE FOUR BARKER

10:34AM 11    FACTORS, BUT PREJUDICE IS STILL A PROMINENT FACTOR.  THEY CAN'T

10:34AM 12    MEET IT HERE.

10:34AM 13        AND I THINK IF YOU LOOK CLOSELY AT THE CASES THAT THEY

10:34AM 14    HAVE CITED, IF YOU LOOK AT DOGGETT, WHICH INVOLVES, YOU KNOW,

10:34AM 15    THE GOVERNMENT'S FAILURE TO TRACK DOWN A U.S. CITIZEN WHO IS

10:34AM 16    HERE IN THE UNITED STATES FOR OVER EIGHT YEARS.  IF YOU LOOK AT

10:35AM 17    THE KING CASE OR THE OTHER CASES THAT THEY HAVE CITED WHICH

10:35AM 18    INVOLVE VERY LENGTHY DELAYS OR DELAYS IN EVEN BRINGING THE

10:35AM 19    DEFENDANT TO THE COURT, NONE OF THEM REALLY FIT IN THE MOLD OF

10:35AM 20    WHAT THEY'RE TRYING TO DO HERE, WHICH IS TO SAY THAT I CAN BE

10:35AM 21    READY FOR TRIAL IN MARCH UNDER THE FIRST SUPERSEDING

10:35AM 22    INDICTMENT.

10:35AM 23        THEY HAVEN'T EVEN SAID THAT THEY CAN'T BE READY IN MARCH

10:35AM 24    UNDER THE THIRD SUPERSEDING INDICTMENT.  BUT SOMEHOW UNDER THE

10:35AM 25    EXISTING CASE SCHEDULE, THE TIMING OF WHEN THIS CAME CAUSES A

10:35AM 1     SPEEDY TRIAL VIOLATION, A DELAY IN MY RIGHTS TO MY DAY IN

10:35AM 2     COURT.  THEY'RE JUST NOT SAYING THAT, AND THEY DON'T HAVE A

10:35AM 3     CASE TO FIT THIS INTO.

10:35AM 4         SO FOR ALL OF THESE REASONS WE THINK THE COURT SHOULD DENY

10:35AM 5     THIS MOTION.  THE DEFENDANT'S SPEEDY TRIAL RIGHTS HAVE NOT BEEN

10:35AM 6     VIOLATED.

10:35AM 7             THE COURT:  THANK YOU, MR. LEACH.

10:35AM 8         YOU'VE MENTIONED THE WORD "CLARITY" AND THAT'S GOING TO

10:35AM 9     COME UP IN THE DISCUSSION OF SOME OF THE OTHER MOTIONS HERE

10:35AM 10    BECAUSE I DO HAVE SOME QUESTIONS ABOUT THAT.

10:35AM 11        LET ME SEE, LET ME JUST TURN -- I KNOW THAT MS. HOLMES HAS

10:36AM 12    JOINED THIS MOTION.

10:36AM 13        LET'S SEE.  WHO WAS GOING TO SPEAK TO THAT?  MS. SAHARIA,

10:36AM 14    WERE YOU GOING TO ADD ANYTHING OR DO YOU WISH -- DOES YOUR TEAM

10:36AM 15    WISH TO ADD ANYTHING TO THE CONVERSATION?

10:36AM 16            MS. SAHARIA:  YOUR HONOR, I'M HAPPY TO RELY ON

10:36AM 17    MR. COOPERSMITH'S ARGUMENT FOR THIS ONE.

10:36AM 18        I DO HAVE SOME THOUGHTS ABOUT THE WAYS IN WHICH THE

10:36AM 19    GOVERNMENT DID BROADEN THE INDICTMENT, BUT I'M HAPPY TO LEAVE

10:36AM 20    THAT FOR THE STATUTE OF LIMITATIONS ARGUMENT, WHICH I'LL BE

10:36AM 21    HANDLING.

10:36AM 22            THE COURT:  ALL RIGHT.  THANK YOU.  I'M SURE

10:36AM 23    MR. COOPERSMITH APPRECIATES YOUR CONFIDENCE.  THANK YOU.

10:36AM 24        MR. COOPERSMITH, ANYTHING FURTHER IN CLOSING?

10:36AM 25            MR. COOPERSMITH:  YES, YOUR HONOR.  AND I DO

10:36AM 1     APPRECIATE MS. SAHARIA'S CONFIDENCE.

10:36AM 2         SO, YES, YOUR HONOR.  FIRST OF ALL, JUST REAL BRIEFLY,

10:36AM 3     MR. LEACH TALKED ABOUT THE SPEEDY TRIAL ACT, AND WE HAVE NOT

10:36AM 4     BASED OUR MOTION ON THE SPEEDY TRIAL ACT.

10:36AM 5         BUT JUST AS JUDGE ILLSTON IN CUTTING REMARKED, WHEN

10:36AM 6     THERE'S DOCUMENTS OF THE VOLUME HERE AND THEY'RE STILL ROLLING

10:37AM 7     IN, YOU KNOW, AS LATE AS LAST WEEK AND PROBABLY STILL ROLLING

10:37AM 8     IN, I MEAN, WE REALLY DIDN'T HAVE ANY OPTION OTHER THAN TO, YOU

10:37AM 9     KNOW, AGREE TO SPEEDY TRIAL ACT WAIVERS AND SO FORTH.

10:37AM 10         SO THAT'S REALLY A NEUTRAL FACTOR AND JUDGE ILLSTON SO

10:37AM 11     FOUND IN CUTTING.

10:37AM 12         SECOND, YOUR HONOR, THIS POINT THAT MR. LEACH MAKES ABOUT

10:37AM 13     HOW WE'VE HAD DOCUMENTS FOR YEARS INVOLVING WALGREENS AND

10:37AM 14     SAFEWAY AND OTHER MATTERS, THAT'S A VERY INTERESTING THING

10:37AM 15     BECAUSE THAT'S NOT THE WAY CRIMINAL PROSECUTION WORKS.

10:37AM 16         THE GOVERNMENT ALSO HAD THOSE DOCUMENTS.  IN FACT, THEY

10:37AM 17     HAD THE DOCUMENTS LONG BEFORE WE HAD THEM BECAUSE THEY HAD

10:37AM 18     GRAND JURY SUBPOENA POWER AND THEY STARTED THEIR INVESTIGATION

10:37AM 19     IN 2016.

10:37AM 20         AND WHEN -- IT'S NOT OUR JOB, NOR COULD WE EVEN REALLY DO

10:37AM 21     THIS, TO COMB THROUGH THE DISCOVERY WITH AN EYE TOWARDS WHAT

10:37AM 22     ELSE COULD THE GOVERNMENT HAVE CHARGED?

10:37AM 23         AND, YOU KNOW, MS. SAHARIA IS GOING TO ADDRESS THIS IN A

10:37AM 24     MINUTE I BELIEVE, BUT IT'S JUST NOT TRUE, IT'S JUST NOT TRUE

10:37AM 25     THAT THESE ARE JUST CONFIRMING CHARGES THAT HAD ALREADY BEEN

10:38AM 1    THERE.  THESE ARE GREATLY EXPANDED CHARGES AS I'VE LAID OUT AND

10:38AM 2    I THINK MS. SAHARIA WILL.

10:38AM 3         SO I DON'T THINK THAT IT'S APPROPRIATE TO SAY THAT THE

10:38AM 4    GOVERNMENT CAN BE EXCUSED FOR THE DELAY BECAUSE THEY PRODUCED A

10:38AM 5    BUNCH OF DISCOVERY AND THE DEFENSE COULD HAVE SOMEHOW DISCERNED

10:38AM 6    WHAT ELSE THE GOVERNMENT COULD HAVE CHARGED.

10:38AM 7         AND THEN, YOUR HONOR, FINALLY, ON THE CUTTING POINT.  AS I

10:38AM 8    SAID, I DO AGREE, AND I THINK EVERYONE AGREES, THAT THERE'S A

10:38AM 9    TORTURED HISTORY WITH CUTTING.

10:38AM 10        IT IS TRUE THAT ALTHOUGH JUDGE ILLSTON FOUND A VIOLATION

10:38AM 11   OF THE SIXTH AMENDMENT IN HER OPINION, LATER ON, ON THE

10:38AM 12   GOVERNMENT'S MOTION FOR RECONSIDERATION SHE CHANGED THAT TO A

10:38AM 13   RULE 48(B) GROUND AND THE GOVERNMENT WAS ALLOWED TO REBRING THE

10:38AM 14   CHARGES.

10:38AM 15        JUST TO BE CANDID, YOUR HONOR, I DON'T REALLY SEE THAT

10:38AM 16   THAT MAKES ANY SENSE.  I THINK EVERY CASE IS DIFFERENT AND

10:38AM 17   THERE'S PROBABLY A LOT OF NUANCES TO CUTTING THAT WE'RE NOT

10:38AM 18   GETTING FROM THE DOCUMENTS, BUT IN THIS CASE IF IT IS TRUE AS

10:38AM 19   WE SAY THAT THE GOVERNMENT WAITED TOO LONG TO BRING THE GREATLY

10:39AM 20   EXPANDED CHARGES, THEN OUR POSITION IS THAT THE SUPERSEDING

10:39AM 21   INDICTMENTS, THE SECOND AND THIRD, SHOULD BE DISMISSED WITH

10:39AM 22   PREJUDICE.

10:39AM 23        I'M NOT GOING TO SAY THAT JUDGE ILLSTON GOT IT WRONG.  I

10:39AM 24   THINK I PROBABLY DON'T KNOW ENOUGH ABOUT WHAT THE NUANCES OF

10:39AM 25   THOSE CASES WERE.  BUT WHETHER IT'S UNDER RULE 48(B), WHICH IS

10:39AM  1    CERTAINLY AN OPTION FOR THE COURT, OR UNDER THE SIXTH

10:39AM  2    AMENDMENT, THE APPROPRIATE REMEDY IS TO DISMISS THE SECOND AND

10:39AM  3    THIRD SUPERSEDING INDICTMENT, TO LET THE CASE PROCEED ON ONLY

10:39AM  4    THE FIRST SUPERSEDING INDICTMENT IF IT OTHERWISE SURVIVES GIVEN

10:39AM  5    THE OTHER MOTIONS.

10:39AM  6         SO THANK YOU, YOUR HONOR.

10:39AM  7              THE COURT:  THANK YOU VERY MUCH, MR. COOPERSMITH.

10:39AM  8         AND LET ME INDICATE I'M GOING TO -- IT'S MY INTENT AFTER

10:39AM  9    HEARING YOUR COMMENTS THIS MORNING TO TAKE EACH OF THESE

10:39AM  10   MOTIONS UNDER SUBMISSION AND GET ORDERS OUT TO YOU AS PROMPTLY

10:39AM  11   AS I CAN.  I JUST WANT TO YOU KNOW THAT.

10:39AM  12             MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

10:39AM  13             THE COURT:  YOU'RE WELCOME.

10:39AM  14        LET'S TURN TO 498, PLEASE.  I THINK THERE ARE SOME -- THIS

10:39AM  15   IS THE PRE-INDICTMENT DELAY.  I THINK THERE'S SOME OVERLAP HERE

10:39AM  16   TO THE ARGUMENTS, AND PERHAPS WE CAN DISCUSS THIS ONE NEXT.

10:40AM  17        LET'S SEE.  WHO IS GOING TO PRESENT THIS ARGUMENT FOR THE

10:40AM  18   MOVING PARTY?

10:40AM  19             MS. SAHARIA:  I AM, YOUR HONOR.  THIS IS

10:40AM  20   AMY SAHARIA.

10:40AM  21             THE COURT:  ALL RIGHT.  THANK YOU.  THIS IS

10:40AM  22   MS. HOLMES'S MOTION, AND THIS IS DOCKET 498.

10:40AM  23        MR. BALWANI JOINS IN 503; THE GOVERNMENT OPPOSITION IS

10:40AM  24   518; AND MS. HOLMES'S REPLY IS 543.

10:40AM  25             MS. SAHARIA.

10:40AM 1          MS. SAHARIA:  THANK YOU.  THIS IS A MOTION TO

10:40AM 2    DISMISS COUNTS THROUGH THREE THROUGH EIGHT AND THEN TEN AND

10:40AM 3    ELEVEN AS TIME BARRED UNDER THE STATUTE OF LIMITATIONS.

10:40AM 4          AND IT PRESENTS TWO DISTINCT ISSUES.  I THINK THE FIRST OF

10:40AM 5    WHICH IS MOST ALIGNED WITH YOUR CONVERSATION JUST NOW WITH

10:40AM 6    MR. COOPERSMITH.  SO LET ME START WITH, WITH THE FIRST ISSUE,

10:40AM 7    AND THAT RELATES TO COUNTS THREE THROUGH EIGHT.

10:40AM 8          COUNTS THREE THROUGH EIGHT CHARGE WIRE FRAUD IN

10:41AM 9    FURTHERANCE OF THE ALLEGED SCHEME TO DEFRAUD INVESTORS, AND

10:41AM 10   THEY'RE BASED ON WIRES THAT OCCURRED IN 2013 AND 2014, SO MORE

10:41AM 11   THAN FIVE YEARS BEFORE THE CURRENT INDICTMENTS.

10:41AM 12         THE RELEVANT QUESTION, WE ALL AGREE, IS WHETHER THE

10:41AM 13   CURRENT COUNTS RELATE BACK TO THE PRIOR ONES FROM THE PRIOR

10:41AM 14   INDICTMENT.

10:41AM 15         WE ALL AGREE, I THINK, ON WHAT THE LEGAL PRINCIPLE IS,

10:41AM 16   WHICH IS THAT A SUPERSEDING INDICTMENT RELATES BACK ONLY IF IT

10:41AM 17   DOES NOT MATERIALLY BROADEN OR SUBSTANTIALLY AMEND THE ORIGINAL

10:41AM 18   CHARGES.  SO THE DISPUTE BETWEEN THE PARTIES IS HOW TO APPLY

10:41AM 19   THAT PRINCIPLE HERE.

10:41AM 20         I THINK THAT RAISES TWO QUESTIONS.  THE FIRST IS THE ONE

10:41AM 21   THAT YOUR HONOR WAS JUST DISCUSSING WITH MR. COOPERSMITH AND

10:41AM 22   MR. LEACH, WHICH IS DOES THE -- DOES THIS, THE NEW INDICTMENT,

10:41AM 23   MATERIALLY BROADEN THE ALLEGED SCHEME TO DEFRAUD INVESTORS?

10:41AM 24   AND WE BELIEVE IT DOES IN TWO DISTINCT WAYS.

10:41AM 25         THE FIRST I THINK IS A RELATIVELY OBVIOUS ONE, WHICH IS

10:42AM 1    THAT THE GOVERNMENT HAS DOUBLED THE LENGTH OF THAT CHARGE

10:42AM 2    SCHEME TO DEFRAUD.  THE ORIGINAL SCHEME TO DEFRAUD LASTED

10:42AM 3    THREE YEARS AND THE GOVERNMENT HAS NOW BROUGHT THAT BACK THREE

10:42AM 4    MORE YEARS ALL OF THE WAY TO 2010 SUCH THAT THE DEFENDANTS ARE

10:42AM 5    NOW FACING CHARGES FOR THE FIRST TIME FOR THINGS THAT OCCURRED

10:42AM 6    TEN YEARS AGO.  THAT'S THE FIRST WAY IN WHICH THAT SCHEME HAS

10:42AM 7    BEEN EXPANDED.

10:42AM 8        THE SECOND WAY IN WHICH THE SCHEME HAS BEEN EXPANDED IS

10:42AM 9    THROUGH THE GOVERNMENT'S REDEFINITION OF THE TERM "INVESTOR."

10:42AM 10       AND THERE ARE SOME QUESTIONS AS TO WHETHER THAT IS A

10:42AM 11   PERMISSIBLE DEFINITION.  THAT GOES TO OUR DUPLICITY MOTION

10:42AM 12   WHICH MY COLLEAGUE, MR. LEMENS, IS GOING TO DISCUSS.  THERE ARE

10:42AM 13   ALSO SOME QUESTIONS AS TO WHAT EXACTLY THE DEFINITION MEANS

10:42AM 14   PARTICULARLY WITH RESPECT TO THE BOARD MEMBERS, AND MR. LEMENS

10:42AM 15   WILL DISCUSS THAT AS WELL.

10:42AM 16       BUT TAKING THE DEFINITION ON ITS FACE, WE THINK IT'S CLEAR

10:42AM 17   THAT THE GOVERNMENT HAS EXPANDED THE DEFINITION OF "INVESTOR"

10:43AM 18   AND IN PARTICULAR BY SWEEPING IN WALGREENS AND SAFEWAY.

10:43AM 19       NOW, MR. LEACH'S RESPONSE TO THAT WAS TO SAY THAT

10:43AM 20   WALGREENS AND SAFEWAY WERE ALWAYS PART OF THE INDICTMENT EVEN

10:43AM 21   BACK IN THE ORIGINAL INDICTMENT, AND WE JUST DON'T THINK THAT

10:43AM 22   IS A CREDIBLE READING OF THE INDICTMENT OR THE PARTIES' PRIOR

10:43AM 23   REPRESENTATIONS TO THE COURT.  THE INDICTMENT CHARGED THE

10:43AM 24   DEFENDANTS WITH DEFRAUDING INVESTORS ABOUT BUSINESS PRODUCTS

10:43AM 25   AND DISTINGUISHING BETWEEN THOSE TWO CATEGORIES OF ENTITIES.

10:43AM 1          THE COURT:  SO, MS. SAHARIA, PARDON ME FOR

10:43AM 2    INTERRUPTING YOU.  I RECOGNIZE THAT YOU SUGGEST THAT THERE'S A

10:43AM 3    DISTINCTION.  I GUESS THE QUESTION WE SOMETIMES HEAR IS, IS

10:43AM 4    THERE?  CAN'T AN INVESTOR BE A BUSINESS PARTNER?  AND IF YOU'RE

10:43AM 5    A BUSINESS PARTNER, ARE YOU THEN EXCLUDED FROM BEING AN

10:43AM 6    INVESTOR?

10:44AM 7          AND MAYBE, AS YOU SUGGEST, THIS MIGHT COME UP IN THE OTHER

10:44AM 8    MOTION.

10:44AM 9          MS. SAHARIA:  I THINK IT WILL COME UP IN THE OTHER

10:44AM 10   MOTION.

10:44AM 11         BUT I DON'T WANT TO TACKLE HERE THE QUESTION OF WHETHER A

10:44AM 12   BUSINESS PARTNER COULD BE AN INVESTOR BECAUSE MY COLLEAGUE,

10:44AM 13   MR. LEMENS, WILL DISCUSS THAT IN THE CONTEXT OF DUPLICITY.

10:44AM 14         WHAT I AM FOCUSSING ON IS WHETHER IN LIGHT OF EVERYTHING

10:44AM 15   THAT THE PARTIES PREVIOUSLY TOLD THE COURT, DID THE PARTIES

10:44AM 16   PREVIOUSLY UNDERSTAND THAT WALGREENS AND SAFEWAY WERE PART OF

10:44AM 17   THE INDICTMENT FROM THE GET-GO?  AND I THINK THERE ARE SEVERAL

10:44AM 18   CLUES THAT WE DID NOT UNDERSTAND WALGREENS AND SAFEWAY TO BE

10:44AM 19   PART OF THE INDICTMENT AND NEITHER DID THE GOVERNMENT.

10:44AM 20         SO ONE CLUE IS THE FACT THAT THE INDICTMENT REFERS TO

10:44AM 21   INVESTORS SEPARATELY FROM WALGREENS AS A BUSINESS PARTNER.

10:44AM 22         ANOTHER CLUE IS THE TIME PERIOD THAT WAS ORIGINALLY

10:44AM 23   CHARGED IN THE INDICTMENT, WHICH WAS 2013 TO 2015.  WHEN YOU

10:45AM 24   LOOK AT THE INVESTMENTS THAT THE GOVERNMENT CLAIMS, LET'S SAY

10:45AM 25   SAFEWAY MADE, THOSE INVESTMENTS ALL PREDATED 2013, MEANING THAT

10:45AM   1   WE DID NOT UNDERSTAND SAFEWAY TO BE ONE OF THE INVESTORS AT

10:45AM   2   ISSUE IN THE PRIOR INDICTMENT, AND THAT SUGGESTS THE WHOLE

10:45AM   3   REASON WHY THE GOVERNMENT EXPANDED THE TIME PERIOD WAS

10:45AM   4   PRECISELY SO THAT IT COULD CAPTURE WALGREENS AND SAFEWAY INTO

10:45AM   5   ITS DEFINITION OF INVESTOR WHEN IT WASN'T PREVIOUSLY PART OF

10:45AM   6   THAT DEFINITION.

10:45AM   7            THE COURT:  I THINK WHAT YOUR ARGUMENT WAS, WAS THAT

10:45AM   8   THE GOVERNMENT HAS DONE THIS TO SOMEHOW ESCAPE THE CORRAL OF

10:45AM   9   THE STATUTE OF LIMITATIONS.

10:45AM   10            MS. SAHARIA:  I THINK THAT IS ONE VERY PLAUSIBLE

10:45AM   11   EXPLANATION FOR WHY WALGREENS AND SAFEWAY ARE NOW KIND OF

10:45AM   12   SMUSHED INTO THE PREVIOUS DEFINITION OF "INVESTOR," BECAUSE IF

10:45AM   13   THEY HAD CHARGED A NEW COUNT FOCUSSING JUST ON WALGREENS AND

10:46AM   14   SAFEWAY, WE BELIEVE WE WOULD HAVE A VERY STRONG STATUTE OF

10:46AM   15   LIMITATIONS DEFENSE.

10:46AM   16            THE COURT:  YOU KEEP USING THESE TERMS OF ART,

10:46AM   17   MS. SAHARIA.  "SMUSHED" IS ANOTHER TERM.

10:46AM   18            MS. SAHARIA:  THAT'S NOT A TERM OF ART, BUT I THINK

10:46AM   19   IT CAPTURES WHAT HAS HAPPENED HERE, YOUR HONOR.

10:46AM   20            THE COURT:  OKAY.

10:46AM   21            MS. SAHARIA:  ANOTHER CLUE IS THE 404(B) NOTICE.

10:46AM   22   THE 404(B) NOTICE THAT THE GOVERNMENT SERVED IN MARCH EXPRESSLY

10:46AM   23   INCLUDED ALLEGATIONS THAT DEFENDANTS MADE MISREPRESENTATIONS TO

10:46AM   24   WALGREENS AND SAFEWAY.

10:46AM   25            ALTHOUGH IT CLAIMED THAT THOSE REPRESENTATIONS MIGHT BE

10:46AM 1    INEXTRICABLY INTERTWINED WITH THE CHARGED CONDUCT, DID NOT

10:46AM 2    ARGUE THAT THEY WERE ACTUALLY THE CHARGED CONDUCT.  AND, IN

10:46AM 3    FACT, WHEN WE WERE BEFORE THE COURT THE LAST TIME AND I TOLD

10:46AM 4    THE COURT THAT THE EFFECT OF THE NEW INDICTMENTS WAS TO MOVE

10:46AM 5    ALLEGATIONS FROM THE RULE 404(B) NOTICE AND PUT THEM INTO THE

10:46AM 6    NEW INDICTMENT, GOVERNMENT COUNSEL AGREED WITH ME ABOUT THE

10:47AM 7    EFFECT OF THE NEW INDICTMENT.

10:47AM 8        SO WE JUST DON'T THINK THAT IT'S CREDIBLE TO SAY THAT THE

10:47AM 9    NEW INDICTMENT IS JUST CHARGING WHAT HAS BEEN CHARGED ALL

10:47AM 10   ALONG.  SO THAT'S THE FIRST ISSUE AS TO THE FIRST ISSUE GOING

10:47AM 11   TO THE STATUTE OF LIMITATIONS ARGUMENT, WHICH IS THAT THE

10:47AM 12   SCHEME TO DEFRAUD HAS BEEN EXPANDED.

10:47AM 13       NOW, THE SECOND ISSUE IS THE GOVERNMENT'S RESPONSE TO THAT

10:47AM 14   IS, WELL, THE WIRES ARE THE SAME.  SO THEY POINT OUT THAT

10:47AM 15   COUNTS THREE THROUGH EIGHT CHARGE THE EXACT SAME WIRINGS, THOSE

10:47AM 16   WIRINGS OCCURRING IN 2013 AND 2014.  AND THEY SAY, THEREFORE,

10:47AM 17   THOSE COUNTS HAVE NOT BEEN MATERIALLY BROADENED.  BUT THAT

10:47AM 18   ARGUMENT ASSUMES THAT THE WIRE FRAUD COUNTS ARE SIMPLY CHARGING

10:47AM 19   A PARTICULAR ACT OF DEFRAUDING ONE INVESTOR, BUT THAT'S NEITHER

10:47AM 20   HOW THE WIRE FRAUD STATUTE WORKS, NOR IS THAT WHAT THE

10:47AM 21   INDICTMENT CHARGES.

10:47AM 22       THE RELEVANT PARAGRAPH OF THE INDICTMENT IS PARAGRAPH 24,

10:48AM 23   AND IN THAT PARAGRAPH THE GOVERNMENT ALLEGES THAT THE

10:48AM 24   DEFENDANTS CAUSED THESE WIRES TO BE TRANSMITTED, AND I QUOTE,

10:48AM 25   "FOR THE PURPOSE OF EXECUTING THE MATERIAL SCHEME AND ARTIFICE

10:48AM 1   TO DEFRAUD INVESTORS."  THE SCHEME TO DEFRAUD INVESTORS IS AN

10:48AM 2   ELEMENT OF THOSE COUNTS, OF THOSE SPECIFIC WIRE FRAUD COUNTS.

10:48AM 3   IT'S AN ESSENTIAL ELEMENT OF ANY WIRE FRAUD CHARGE.

10:48AM 4       SO THE QUESTION BECOMES WHETHER THAT ELEMENT OF THESE

10:48AM 5   COUNTS HAS BEEN MATERIALLY BROADENED AND FOR THE REASONS THAT I

10:48AM 6   JUST ARTICULATED, IT HAS.

10:48AM 7       THE PARTIES HAVE CITED A NUMBER OF CASES TO THE COURT.  I

10:48AM 8   THINK IT'S FAIR TO SAY THAT NEITHER PARTY HAS FOUND A CASE THAT

10:48AM 9   IS ON ALL FOURS WITH THIS ONE.  THE GOVERNMENT'S CASES ARE TO

10:48AM 10  ONE EXTREME.  THEY'RE SUBSTANTIALLY EASIER CASES.

10:48AM 11      SO, FOR EXAMPLE, IN THE PACHECO CASE THE COUNTS WERE

10:49AM 12  LITERALLY COPIED VERBATIM FROM THE PRIOR INDICTMENT.

10:49AM 13      IN THE SEARS ROEBUCK CASE THE GOVERNMENT HAD CHARGED 12

10:49AM 14  FALSE STATEMENTS IN THE PRIOR INDICTMENT, AND THEN IT CHARGED

10:49AM 15  THE VERY SAME FALSE 12 STATEMENTS TO THE SAME RECIPIENT IN THE

10:49AM 16  NEXT INDICTMENT BUT CHANGED THE STATUTE OF THE CHARGING

10:49AM 17  STATUTE.

10:49AM 18      SO NONE OF THOSE CASES INVOLVE A SITUATION WHERE THE

10:49AM 19  GOVERNMENT EXPANDED A SCHEME TO DEFRAUD TWICE -- DOUBLED OR

10:49AM 20  EXPAND THE SCHEME OF THE -- THE SCOPE OF THE SCHEME BY ADDING

10:49AM 21  NEW VICTIMS.

10:49AM 22      THE CLOSEST CASE THAT WE HAVE FOUND TO THIS ONE IS THE

10:49AM 23  RATCLIFF CASE THAT WE CITED FROM THE ELEVENTH CIRCUIT WHICH

10:49AM 24  INVOLVED A DRUG CONSPIRACY CASE WHERE THE GOVERNMENT DID

10:49AM 25  SUBSTANTIALLY EXPAND BACKWARDS IN TIME THE LENGTH OF THE

10:49AM 1    CHARGED DRUG CONSPIRACY, AND THAT HAD THE EFFECT OF EXPANDING

10:49AM 2    THE NUMBER OF TRANSACTIONS AT ISSUE SUBSTANTIALLY WHICH IS

10:50AM 3    EXACTLY WHAT HAS HAPPENED HERE ONCE YOU SWEEP IN THE MANY, MANY

10:50AM 4    REPRESENTATIONS MADE TO WALGREENS AND SAFEWAY DURING THAT

10:50AM 5    EARLIER PERIOD OF 2010 TO 2013.

10:50AM 6         SO, YOU KNOW, THAT CASE I ADMIT IS NOT COMPLETELY EXACTLY

10:50AM 7    LIKE THIS ONE, BUT IT'S THE CLOSEST ONE THAT WE HAVE FOUND, AND

10:50AM 8    THAT IS ONE WHERE THE ELEVENTH CIRCUIT HELD THAT THE CHARGES

10:50AM 9    WERE TIME BARRED.

10:50AM 10        THE COURT:  RIGHT.  THAT IS BROAD -- I THINK ALL

10:50AM 11   PARTIES LOOKED AT THAT AND RATCLIFF, THEY REALLY REACHED, THEY

10:50AM 12   THE GOVERNMENT, OVERREACHED IN THAT CASE AND GOING BACK AND

10:50AM 13   CHARGING ADDITIONAL DRUG OFFENSES OUTSIDE OF THE ORIGINAL

10:50AM 14   SCHEME.

10:50AM 15        MS. SAHARIA:  YES.  THAT CASE THE GOVERNMENT WENT

10:50AM 16   BACK I THINK TEN YEARS.  IT WAS EVEN MORE EGREGIOUS THAN THE

10:50AM 17   THREE YEARS HERE.

10:50AM 18        THE COURT:  RIGHT.

10:50AM 19        MS. SAHARIA:  I CONCEDE THAT POINT.  BUT IT'S THE

10:50AM 20   CLOSEST CASE THAT WE HAVE FOUND GIVEN THE GOVERNMENT'S CASES

10:50AM 21   ARE NOT LIKE THIS ONE.

10:50AM 22        THE COURT:  SURE.

10:50AM 23        MS. SAHARIA:  SO, YOUR HONOR, THAT'S OUR POSITION

10:50AM 24   WITH RESPECT TO COUNTS THREE THROUGH EIGHT.

10:51AM 25        IF THE COURT DOESN'T HAVE ANY FURTHER QUESTIONS ABOUT

10:51AM 1    THOSE COUNTS, I'LL MOVE TO COUNTS TEN AND ELEVEN.

10:51AM 2              THE COURT:  YES, PLEASE.

10:51AM 3              MS. SAHARIA:  GREAT.  SO TEN AND ELEVEN RELATE TO

10:51AM 4    THE ALLEGED SCHEME TO DEFRAUD PATIENTS, AND THEY CHARGE NEW

10:51AM 5    ACTS OF WIRE FRAUD OCCURRING IN MAY OF 2015, WHICH IS MORE THAN

10:51AM 6    FIVE YEARS BEFORE THE GRAND JURY RETURNED THESE INDICTMENTS

10:51AM 7    THIS SUMMER.

10:51AM 8        THE QUESTION IS WHETHER THE GOVERNMENT'S FILING OF AN

10:51AM 9    INFORMATION WITHOUT MS. HOLMES'S CONSENT IN MAY OF THIS YEAR

10:51AM 10   INSTITUTED THAT INFORMATION FOR PURPOSES OF SECTION 3282 AND

10:51AM 11   THUS TOLLED THE STATUTE OF LIMITATIONS.

10:51AM 12       THIS IS A QUESTION OF FIRST IMPRESSION IN THIS CIRCUIT.

10:51AM 13   SO YOUR HONOR GETS TO BE THE FIRST JUDGE TO DECIDE THIS

10:51AM 14   QUESTION IN THIS CIRCUIT.  AND UNFORTUNATELY FOR THE COURT,

10:51AM 15   THERE'S JUST NOT VERY MUCH CASE LAW NATIONALLY ON THIS ISSUE.

10:51AM 16             THE COURT:  WELL, YOU'RE FAMILIAR WITH A CASE OUT OF

10:52AM 17   MARYLAND, THE BRISCOE CASE?

10:52AM 18             MS. SAHARIA:  I'M NOT FAMILIAR WITH THE BRISCOE

10:52AM 19   CASE, YOUR HONOR.

10:52AM 20             THE COURT:  WELL, IT CAME OUT ON AUGUST 26TH, 2020.

10:52AM 21             MS. SAHARIA:  OKAY.

10:52AM 22             THE COURT:  AND, OF COURSE, IT WAS TWO DAYS BEFORE

10:52AM 23   YOUR FILING I THINK, WHICH WAS AUGUST 28TH.  I HAVE A WESTLAW

10:52AM 24   CITE FOR YOU.

10:52AM 25             MS. SAHARIA:  GREAT.

10:52AM 1            THE COURT:  IT'S 5076053.

10:52AM 2            MS. SAHARIA:  5076503.

10:52AM 3            THE COURT:  NO, NO.  PARDON ME.  LET ME REPEAT

10:52AM 4    MYSELF.  I BEG YOUR PARDON.

10:52AM 5        5076053.

10:52AM 6            MS. SAHARIA:  GOT IT.  OKAY.

10:52AM 7            THE COURT:  AND I KNOW IF I START TO SPEAK SLOWLY,

10:52AM 8    THAT WILL ALLOW ALL OF YOU WHO HAVE ELECTRONIC DEVICES TO

10:52AM 9    IMMEDIATELY PULL THIS CASE UP IN FRONT OF YOU.

10:52AM 10       OH, YOU KNOW, THE DAYS OF PAPER PRACTICE WHEN

10:52AM 11   MR. COOPERSMITH AND PERHAPS OTHERS WERE PRACTICING, WE RELIED

10:52AM 12   ON HARDBOUND BOOKS.

10:52AM 13       MR. WADE IS LAUGHING.  HE REMEMBERS THOSE DAYS.  NOW IT'S

10:53AM 14   INSTANTANEOUS.  I'VE TRIED TO STRETCH THIS OUT SO YOUR PARTIES

10:53AM 15   CAN PULL THIS CASE UP AND PERHAPS YOU YOURSELF, MS. SAHARIA.

10:53AM 16       BUT IN THAT CASE IT WAS REVEALING, IT WAS VERY REVEALING,

10:53AM 17   AND IT ALSO, AS YOU MIGHT EXPECT BECAUSE OF ITS RECENCY, THE

10:53AM 18   GOOD JUDGE THERE ALSO COMMENTED ON THE COVID SITUATION AND HOW

10:53AM 19   COVID AND THE PANDEMIC HAS AFFECTED THE CASES.

10:53AM 20       MR. COOPERSMITH IS READING INTENTLY THE CASE.

10:53AM 21       (LAUGHTER.)

10:53AM 22           THE COURT:  BUT IN THAT CASE THE GOOD JUDGE THERE

10:53AM 23   FOUND THAT THE TERM "PROSECUTED" AND "INSTITUTED" ARE NOT

10:53AM 24   EQUIVALENT.  AND HE FOUND THAT INFORMATION IS INSTITUTED WHEN

10:53AM 25   IT IS PROPERLY FILED REGARDLESS OF THE DEFENDANT'S WAIVER.

| | |
|---|---|
| 10:53AM | 1 |
| 10:53AM | 2 |
| 10:54AM | 3 |
| 10:54AM | 4 |
| 10:54AM | 5 |
| 10:54AM | 6 |
| 10:54AM | 7 |
| 10:54AM | 8 |
| 10:54AM | 9 |
| 10:54AM | 10 |
| 10:54AM | 11 |
| 10:54AM | 12 |
| 10:54AM | 13 |
| 10:54AM | 14 |
| 10:54AM | 15 |
| 10:54AM | 16 |
| 10:54AM | 17 |
| 10:54AM | 18 |
| 10:54AM | 19 |
| 10:54AM | 20 |
| 10:55AM | 21 |
| 10:55AM | 22 |
| 10:55AM | 23 |
| 10:55AM | 24 |
| 10:55AM | 25 |

1  FURTHER PROSECUTORIAL ACTIONS SUCH AS A TRIAL OR A PLEA

2  AGREEMENT WOULD REQUIRE A WAIVER AS RULE 7(B) SETS FORTH.

3       THE GOOD JUDGE WENT ON TO SAY THIS INTERPRETATION COMPORTS

4  WITH THE PLAIN LANGUAGE OF THE STATUTE AND RULE AND THEN HE

5  TALKS ABOUT THE OTHER CASES THAT HAVE FOUND THIS WAY.  I THINK

6  YOU'RE FAMILIAR WITH THE BURDIX-DANA CASE, B-U-R-D-I-X --

7            MS. SAHARIA:  YES, YOUR HONOR.

8            THE COURT:  -- AND OTHERS.  HE DOES CITE OTHER

9  CASES.

10           MS. SAHARIA:  SO, YOUR HONOR, I'M HAPPY TO TELL THE

11  COURT WHY I BELIEVE THAT IS AN INCORRECT INTERPRETATION OF THE

12  STATUTE --

13           THE COURT:  SURE.

14           MS. SAHARIA:  -- GIVEN THAT IT SOUNDS LIKE THE COURT

15  ADOPTED THE REASONING OF THE BURDIX-DANA CASE FROM THE SEVENTH

16  CIRCUIT.

17       WE BELIEVE THAT ALL OF THE STANDARD TOOLS OF STATUTORY

18  CONSTRUCTION WEIGH IN FAVOR OF READING INSTITUTE AND UNDER

19  SECTION 3282 TO REQUIRE THE DEFENDANT'S CONSENT.

20       AND THERE'S FOUR RELEVANT TOOLS HERE THAT I THINK ARE

21  AVAILABLE TO THE COURT.

22       THE FIRST, OF COURSE, IS THE PLAIN MEANING OF THE WORD

23  "INSTITUTE."

24       THE PARTIES HAVE CITED TO THE COURT VARIOUS DICTIONARY

25  DEFINITIONS OF THAT TERM, ALL OF WHICH POINT TOWARDS A MEANING

10:55AM 1    THAT MEANS SOMETHING LIKE COMMENCE, PUT IN MOTION, GET GOING.

10:55AM 2         A WAIVERLESS INFORMATION DOES NOT PUT ANYTHING IN MOTION

10:55AM 3    BECAUSE IT'S A LEGAL MELODY THAT CANNOT CONFER JURISDICTION ON

10:55AM 4    THE COURT.  I WOULD URGE THE COURT TO LOOK AT THE SUPREME

10:55AM 5    COURT'S DECISION IN SMITH, WHICH I THINK IS THE BEST AUTHORITY

10:55AM 6    FOR THIS PROPOSITION, AND IT'S A CASE THAT THE GOVERNMENT DID

10:55AM 7    NOT ACKNOWLEDGE AND DID NOT RESPOND TO.

10:55AM 8         THE SMITH COURT CONFRONTED A VERY SIMILAR QUESTION THERE

10:55AM 9    ACTUALLY.  THERE THE GOVERNMENT HAD FILED AN INFORMATION

10:55AM 10   CHARGING A CAPITAL OFFENSE, WHICH IS PROHIBITED BY RULE 7(A).

10:55AM 11        UNDER RULE 7(A) THE GOVERNMENT CANNOT CHARGE A CAPITAL

10:55AM 12   OFFENSE BY INFORMATION EITHER WITH OR WITHOUT CONSENT.  AND

10:56AM 13   THERE THE DEFENDANT HAD CONSENTED AND THE QUESTION WAS BEFORE

10:56AM 14   THE SUPREME COURT WAS WHAT IS THE EFFECT OF THIS -- OF THE

10:56AM 15   FILING OF THIS INFORMATION CHARGING A CAPITAL OFFENSE?

10:56AM 16        AND THE SUPREME COURT HELD, AND THIS IS A DIRECT QUOTE,

10:56AM 17   "UNDER OUR VIEW OF RULE 7(A), THE UNITED STATES ATTORNEY DID

10:56AM 18   NOT HAVE AUTHORITY TO FILE AN INFORMATION IN THIS CASE AND THE

10:56AM 19   WAIVERS MADE BY PETITIONER WERE NOT BINDING AND DID NOT CONFER

10:56AM 20   POWER ON THE CONVICTING COURT TO HEAR THE CASE."

10:56AM 21        SO THE SUPREME COURT READING RULE 7(A) DID NOT SAY THAT

10:56AM 22   RULE 7(A) ONLY BARRED PROSECUTION BY INFORMATION.

10:56AM 23        THE SUPREME COURT READING RULE 7(A) SAID IT BARRED THE

10:56AM 24   UNITED STATES ATTORNEY FROM EVEN HAVING AUTHORITY TO FILE AN

10:56AM 25   INFORMATION.

10:56AM 1      AND WE SUBMIT THAT THIS CASE IS NO DIFFERENT.  THAT'S

10:56AM 2  EXACTLY WHAT THE GOVERNMENT'S POSITION IS HERE THAT RULE 7

10:56AM 3  ALLOWS IT TO FILE AN INFORMATION EVEN IF IT CAN'T PROSECUTE ON

10:57AM 4  IT.

10:57AM 5      AND THE SUPREME COURT REJECTED THAT POSITION IN SMITH.

10:57AM 6         THE COURT:  THERE'S NO DISTINCTION BETWEEN THE

10:57AM 7  OFFENSES?  AS YOU SAY, IT'S PROHIBITED TO FILE AN INFORMATION

10:57AM 8  ON A CAPITAL OFFENSE.  IS THAT A DISTINCTION THAT MATTERS HERE?

10:57AM 9         MS. SAHARIA:  I DON'T THINK SO BECAUSE IN BOTH CASES

10:57AM 10 THE RELEVANT QUESTION IS DOES RULE 7 BAR ONLY A PROSECUTION OR

10:57AM 11 DOES IT BAR FILING?

10:57AM 12     AND THE SUPREME COURT HELD THAT IN A CASE WHERE THE RULE

10:57AM 13 DOES NOT PERMIT PROSECUTION BY INFORMATION, WHICH IN THAT CASE

10:57AM 14 IT DID NOT, THE UNITED STATES ATTORNEY LACKS AUTHORITY TO FILE

10:57AM 15 AN INFORMATION.

10:57AM 16     SO I DON'T THINK THAT THAT DISTINCTION, THAT DISTINCTION

10:57AM 17 MATTERS.

10:57AM 18     AGAIN, THE GOVERNMENT HASN'T EVEN ADDRESSED THIS CASE IN

10:57AM 19 ITS PAPERS, NOR HAS IT ADDRESSED A MORE GENERAL PROPOSITION

10:57AM 20 THAT NONE OF THE COURTS HAVE ADDRESSED THAT THE FILING OF AN

10:57AM 21 INFORMATION WITHOUT A CONSENT DOESN'T CONFER JURISDICTION ON

10:58AM 22 COURTS.

10:58AM 23     SO THAT'S THE FIRST POINT, UNLESS YOUR HONOR HAS A

10:58AM 24 QUESTION ABOUT THAT.

10:58AM 25         THE COURT:  NO.  NO.  THANK YOU.

10:58AM  1          MS. SAHARIA:  OKAY.  THE SECOND AVAILABLE TOOL THAT

10:58AM  2     THE COURT SHOULD USE IS LOOKING TO THE STATUTORY CONTEXT.  SO

10:58AM  3     WHEN WE'RE INTERPRETING A WORD, WE LOOK AT HOW CONGRESS HAS

10:58AM  4     USED THAT WORD ELSEWHERE, WE LOOK AT WHETHER CONGRESS HAS USED

10:58AM  5     DIFFERENT WORDS ELSEWHERE.  AND WHEN WE LOOK AT THE RELEVANT

10:58AM  6     CHAPTER OF TITLE 18, WE SEE THAT CONGRESS SOMETIMES USED THE

10:58AM  7     WORD "INSTITUTE" WHEN REFERRING TO A STATUTE OF LIMITATIONS AND

10:58AM  8     SOMETIMES USED THE WORD "FILE."

10:58AM  9          AND UNDER STANDARD CANONS OF CONSTRUCTION, COURTS ARE

10:58AM 10     SUPPOSED TO ASSUME THAT CONGRESS SAYS WHAT IT MEANS AND WHEN IT

10:58AM 11     USES DIFFERENT WORDS, IT INTENDS THOSE WORDS TO HAVE DIFFERENT

10:58AM 12     MEANINGS, AND WE BELIEVE THAT FACT REQUIRES THE COURT TO

10:58AM 13     INTERPRET "INSTITUTE" NOT TO MEAN "FILE."  SO THAT'S THE SECOND

10:58AM 14     CLUE THAT WE CAN TAKE FROM THE STATUTE.

10:58AM 15          THE THIRD CLUE IS HOW HAS THE SUPREME COURT OR THE

10:59AM 16     NINTH CIRCUIT OR OTHER BINDING AUTHORITY CONSTRUED THE WORD

10:59AM 17     "INSTITUTE" AND OTHER STATUTES OF LIMITATION?  "AND HERE WE

10:59AM 18     HAVE THE JABEN CASE, WHICH I BELIEVE THE COURT IS NOW FAMILIAR

10:59AM 19     WITH, WHERE THE SUPREME COURT CONSTRUED THE WORD "INSTITUTE"

10:59AM 20     AND THE STATUTORY OF LIMITATIONS TO REQUIRE THE CHARGING

10:59AM 21     DOCUMENTS TO BE EFFECTIVE TO COMMENCE CRIMINAL PROCEEDINGS, AND

10:59AM 22     IT EXPRESSED CONCERN ABOUT EXACTLY THE GOVERNMENT'S POSITION

10:59AM 23     HERE, WHICH WOULD BE THAT THE GOVERNMENT CAN SIMPLY FILE A

10:59AM 24     DOCUMENT EVEN IF IT HASN'T MADE ITS CASE AT THE VERY END OF THE

10:59AM 25     LIMITATIONS PERIOD IN ORDER TO OBTAIN UNILATERALLY AN EXTENSION

10:59AM 1    OF THE LIMITATIONS PERIOD TO MAKE ITS CASE.

10:59AM 2         AND THE SUPREME COURT SAID THAT READING FAILED TO PROVIDE

10:59AM 3    DEFENDANTS WITH THE REQUISITE SAFEGUARD, AND, THEREFORE,

10:59AM 4    REQUIRED THE CHARGING DOCUMENT IN THAT CASE TO BE EFFECTIVE TO

10:59AM 5    COMMENCE PROCEEDINGS.

10:59AM 6         AND THEN THE FOURTH TOOL IS THAT WHEN THERE IS AN

11:00AM 7    AMBIGUITY IN THE STATUTE, AFTER APPLYING ALL OF THE REGULAR

11:00AM 8    TOOLS, THE SUPREME COURT HAS SAID THAT COURTS SHOULD RESOLVE

11:00AM 9    AMBIGUITIES IN FAVOR OF REPOSE.  AND WE BELIEVE HERE THAT TO

11:00AM 10   THE EXTENT THAT THERE'S ANY AMBIGUITY IN THE STATUTE LEFT AFTER

11:00AM 11   APPLYING THE REGULAR TOOLS THAT REQUIRES READING THE STATUTE IN

11:00AM 12   FAVOR OF THE DEFENSE.

11:00AM 13        NOW, THE GOVERNMENT HANGS ITS HAT ON THE BURDIX-DANA CASE.

11:00AM 14   IT SOUNDS FROM YOUR HONOR'S DESCRIPTION THAT THE BRISCOE COURT

11:00AM 15   SEEMS TO HAVE ADOPTED THE REASONING OF THE BURDIX-DANA CASE.

11:00AM 16        THE BURDIX-DANA COURT DIDN'T APPLY ANY OF THE STANDARD

11:00AM 17   TOOLS OF CONSTRUCTION THAT I'VE JUST ADDRESSED.  IT DIDN'T LOOK

11:00AM 18   TO THE ORDINARY MEANING OF "INSTITUTE."  IT DIDN'T CONSULT

11:00AM 19   DEFINITIONS.  IT DIDN'T LOOK TO THE STATUTORY STRUCTURE.  IT

11:00AM 20   DIDN'T CONSIDER THE POLICY AND FAVOR OF REPOSE, AND IT

11:00AM 21   ADDRESSED THE JABEN CASE IN A FOOTNOTE WITH RATHER POOR ATTEMPT

11:01AM 22   TO DISTINGUISH IT.

11:01AM 23        AND THE RATIONALE OF THE SEVENTH CIRCUIT WAS THE REASON --

11:01AM 24   WAS THE RATIONALE THAT RULE 7 ONLY BARS PROSECUTION AND NOT

11:01AM 25   FILING.  AND FOR THE REASON THAT I'VE ARTICULATED WITH RESPECT

11:01AM  1        TO THE SMITH CASE, WE DON'T THINK THAT IS COMPATIBLE WITH

11:01AM  2    BINDING SUPREME COURT AUTHORITY.  AND THE SEVENTH CIRCUIT

11:01AM  3    DIDN'T CONSIDER SMITH AT ALL.

11:01AM  4        SO FOR THAT REASON WE URGE THE COURT NOT TO FOLLOW THE

11:01AM  5    SEVENTH CIRCUIT APPROACH.

11:01AM  6        NOW, I WOULD KIND OF CLOSE WITH THE FOLLOWING COMMENT,

11:01AM  7    WHICH IS I THINK THERE ARE THREE APPROACHES THAT ARE AVAILABLE

11:01AM  8    TO THE COURT IN DECIDING THIS QUESTION.

11:01AM  9        THE FIRST, OF COURSE, IS THE GOVERNMENT'S APPROACH WHICH

11:01AM 10    THE GOVERNMENT HAS OFFERED THE COURT NO LIMITING PRINCIPLE AT

11:01AM 11    ALL.  THEY HAVE ARTICULATED A VERY BROAD RULE THAT WOULD PERMIT

11:01AM 12    THE GOVERNMENT ON ITS OWN TO EXTEND THE STATUTE OF LIMITATIONS

11:02AM 13    IN ANY CASE SIMPLY BY FILING AN INFORMATION AT THE END OF THE

11:02AM 14    FIVE-YEAR PERIOD, AND, THEREFORE, BUYING ITSELF AT LEAST

11:02AM 15    SIX MONTHS, IF NOT MORE, TO INDICT A DEFENDANT.  THAT IS THEIR

11:02AM 16    POSITION.

11:02AM 17        THEY INVOKE THE COVID PANDEMIC, BUT THEY DON'T OFFER THE

11:02AM 18    COURT ANY LEGAL RATIONALE THAT WOULD CONFINE THEIR POSITION TO

11:02AM 19    THE PANDEMIC, NOR DO THEY ARTICULATE HOW THAT AFFECTED THEIR

11:02AM 20    DELAY HERE.

11:02AM 21        THEY SUGGEST THAT THEY WANTED TO ADD THESE NEW COUNTS IN

11:02AM 22    LIGHT OF THE COURT'S RULING IN FEBRUARY WITH RESPECT TO

11:02AM 23    DISMISSING COUNTS -- DISMISSING THE CHARGES AS THEY RELATE TO

11:02AM 24    NONPAYING PATIENTS.  BUT IF THEY BELIEVE THAT THE EFFECT OF

11:02AM 25    THAT RULING WAS TO ACTUALLY DISMISS COUNTS, THEY WOULD HAVE

11:02AM 1    INVOKED SECTION 3288 AND ITS SIX-MONTH GRACE PERIOD, AND THEY

11:02AM 2    HAVEN'T DONE THAT, NOR HAVE THEY EXPLAINED WHY THE COURT'S

11:03AM 3    RULING REQUIRED THEM TO ADD A COUNT.  THEY DIDN'T JUST SWAP OUT

11:03AM 4    ONE COUNT FOR ANOTHER COUNT.  THEY ACTUALLY ADDED ANOTHER BRAND

11:03AM 5    NEW COUNT, AND THEY'VE ARTICULATED NO REASON WHY THE RULING

11:03AM 6    REQUIRED THEM TO ADD A COUNT.

11:03AM 7         SO THAT'S THEIR POSITION.  IT'S A VERY BROAD POSITION WITH

11:03AM 8    NO LIMITING PRINCIPLE.

11:03AM 9         OF COURSE, OUR POSITION IS THE OPPOSITE, WHICH IS THAT THE

11:03AM 10   MERE FILING OF AN INFORMATION WITHOUT CONSENT CAN NEVER

11:03AM 11   INSTITUTE IT UNDER SECTION 3282.  I DO THINK THERE'S A MIDDLE

11:03AM 12   GROUND THAT IS AVAILABLE TO THE COURT IF YOUR HONOR IS NOT

11:03AM 13   SATISFIED WITH THE TWO BROAD POSITIONS, AND THAT IS TO SAY THAT

11:03AM 14   AT A MINIMUM THAT FOR AN INFORMATION TO BE INSTITUTED, IT MUST

11:03AM 15   BE EFFECTIVE TO DO SOMETHING UNDER THE CRIMINAL RULES.

11:03AM 16        AND AS WE EXPLAINED IN OUR REPLY BRIEF, FOR AN INFORMATION

11:03AM 17   TO DO SOMETHING UNDER THE CRIMINAL RULES TO SET SOMETHING IN

11:03AM 18   MOTION, WHICH THE FIRST STEP, OF COURSE, WOULD BE TO ARREST THE

11:04AM 19   DEFENDANT, THE INFORMATION MUST BE SUPPORTED BY AN AFFIDAVIT

11:04AM 20   ESTABLISHING PROBABLE CAUSE.  THAT MAKES SENSE BECAUSE WITHOUT

11:04AM 21   THAT REQUIREMENT, THE GOVERNMENT COULD JUST FILE AN INFORMATION

11:04AM 22   WITHOUT ESTABLISHING PROBABLE CAUSE, AND, THEREFORE, SATISFY

11:04AM 23   THE STATUTE OF LIMITATIONS, AND THEY DIDN'T DO THAT HERE.

11:04AM 24        SO IF THE COURT DIDN'T WANT TO STAKE OUT A BOLD POSITION

11:04AM 25   EITHER WAY GIVEN THAT, YOU KNOW, ADMITTEDLY BOTH POSITIONS ARE

11:04AM 1    SOMEWHAT OF AN EXTREME, I DO THINK THAT THAT MIDDLE GROUND IS

11:04AM 2    AVAILABLE TO THE COURT, AND THE GOVERNMENT'S FAILURE TO COMPLY

11:04AM 3    WITH THAT REQUIREMENT HERE WOULD REQUIRE DISMISSAL OF THESE TWO

11:04AM 4    COUNTS.

11:04AM 5         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH,

11:04AM 6    MS. SAHARIA.

11:04AM 7    MS. BAEHR-JONES, ARE YOU GOING TO SPEAK FOR THE GOVERNMENT

11:04AM 8    HERE?

11:04AM 9         MS. BAEHR-JONES:  YES, I WILL, YOUR HONOR.

11:04AM 10   SO I'D LIKE TO START WITH ADDRESSING THE FIRST ISSUE,

11:04AM 11   WHICH IS THE TIME BARRED -- THEIR ARGUMENT THAT THE INVESTOR

11:05AM 12   COUNTS ARE TIME BARRED.

11:05AM 13   AND I JUST WANT TO TAKE A STEP BACK BECAUSE WHAT THE

11:05AM 14   DEFENSE IS ARGUING THAT THE COURT ADOPT IS A SORT OF HYPER

11:05AM 15   TECHNICAL ELEMENTS-BASED APPROACH TO LOOKING AT WHETHER OR NOT

11:05AM 16   THE DEFENSE HAD NOTICE OF ALL OF THIS CONDUCT IN THE FIRST

11:05AM 17   SUPERSEDING INDICTMENT BY SAYING THAT ONE ELEMENT OF THIS HAS

11:05AM 18   CHANGED.

11:05AM 19   BUT SEARS ROEBUCK AND ALL OF THE CASE LAW IN THIS AREA

11:05AM 20   STAND FOR THE PROPOSITION THAT THIS IS NOT AN ELEMENTS-BASED

11:05AM 21   APPROACH; THAT, IN FACT, THE GOVERNMENT COULD ALLEGE A NEW

11:05AM 22   CRIME WITH A NEW SERIES OF ELEMENTS, AND THAT WOULD STILL

11:05AM 23   RELATE BACK SO LONG AS IT ADDRESSED APPROXIMATELY THE SAME SET

11:05AM 24   OF FACTS AND THE SAME CONDUCT AS WHAT WAS ALLEGED IN THE

11:05AM 25   PREVIOUS INSTRUMENT, IN THE PREVIOUS INDICTMENT.

11:05AM 1        AND THE DEFENSE HAS POINTED TO NO ADDITIONAL CONDUCT THAT

11:05AM 2    IS -- THAT HAS COME INTO PLAY WITH THE SUBSEQUENT INDICTMENTS,

11:05AM 3    THAT THEY WERE NOT ON NOTICE OF IN THE FIRST INDICTMENT.

11:06AM 4        SO EVEN ASSUMING THAT, AND WE DO NOT AGREE WITH THIS, THAT

11:06AM 5    THE DEFINITION OF "INVESTOR" HAD SOMEHOW EXPANDED IN THE THIRD

11:06AM 6    SUPERSEDING INDICTMENT, AND AGAIN, WE DON'T AGREE THAT IT HAS,

11:06AM 7    BUT EVEN ASSUMING THAT IT HAD, THEY HAVE NOT ARTICULATED HOW

11:06AM 8    THAT WOULD, WOULD UNDERMINE THE FACT THAT THEY HAD NOTICE THAT

11:06AM 9    THE GOVERNMENT CONSIDERED INVESTORS ONE THROUGH SIX TO BE

11:06AM 10   INVESTORS IN THE FIRST SUPERSEDING INDICTMENT, AND THAT IT GAVE

11:06AM 11   NOTICE TO THEM THAT IT CONSIDERED THOSE ENTITIES TO BE

11:06AM 12   INVESTORS, AND THAT THE CONDUCT RELATED TO THOSE INDIVIDUALS

11:06AM 13   AND ENTITIES WAS CONDUCT THAT WAS COVERED BY THE FIRST

11:06AM 14   SUPERSEDING INDICTMENT.

11:06AM 15       AND HERE THE RATCLIFF CASE ACTUALLY WAS QUITE HELPFUL TO

11:06AM 16   THE GOVERNMENT.  AND THAT CASE FURTHER GOES TO THE POINT THAT

11:06AM 17   THIS IS A CONDUCT-BASED APPROACH AND IN RATCLIFF THERE WAS --

11:06AM 18   THE GOVERNMENT FIRST INDICTED ON ONE ATTEMPTED IMPORTATION OF

11:06AM 19   DRUGS FROM JAMAICA AND THEN AFTER GETTING MORE EVIDENCE WENT

11:07AM 20   BACK AND INDICTED ADDITIONAL SMUGGLING ACTIVITIES.

11:07AM 21       SO AGAIN, IT GOES BACK TO WHAT IS THE CONDUCT THAT WAS

11:07AM 22   INCLUDED IN THAT SECOND INDICTMENT THAT GAVE FURTHER NOTICE

11:07AM 23   THAT WAS BEYOND THE SCOPE OF THE CONDUCT THAT WAS NOTICED IN

11:07AM 24   THE FIRST INDICTMENT?

11:07AM 25       AND AGAIN, LOOKING HERE, THAT'S NOT WHAT HAS HAPPENED

11:07AM  1    HERE.  THE CONDUCT THAT WAS AT ISSUE IN THE INDIVIDUAL WIRE

11:07AM  2    FRAUD COUNTS THAT ARE ALLEGED IN THE FIRST SUPERSEDING

11:07AM  3    INDICTMENT FOR INVESTORS ONE THROUGH SIX IS THE EXACT SAME

11:07AM  4    CONDUCT THAT WAS ALLEGED IN THE THIRD SUPERSEDING INDICTMENT

11:07AM  5    AND THE FIRST SUPERSEDING INDICTMENT.

11:07AM  6         I FINALLY POINT THE COURT TO -- THERE IS ALSO A LANGUAGE

11:07AM  7    DIFFERENCE HERE, WHICH IS THAT THE LANGUAGE THAT THE GOVERNMENT

11:07AM  8    USED IN THE FIRST SUPERSEDING INDICTMENT TO ALLEGE THE TIME

11:07AM  9    PERIOD IS FROM A TIME UNKNOWN BUT NO LATER THAN 2013.

11:07AM  10        AND IN THE FIRST SUPERSEDING INDICTMENT, AS OPPOSED TO THE

11:07AM  11   ORIGINAL INDICTMENT, THE GOVERNMENT LAID FORTH A VERY COMPLETE

11:08AM  12   HISTORY OF THE COMPANY, A VERY THOROUGH HISTORY OF THE

11:08AM  13   ACTIVITIES THAT THE COMPANY ENGAGED IN.

11:08AM  14        IT'S SIMPLY NOT THE CASE THAT THE CONDUCT THAT IS ALLEGED

11:08AM  15   IN THE SUPERSEDING INSTRUMENTS WAS NOT INCLUDED IN THAT INITIAL

11:08AM  16   INDICTMENT AND THAT THE DEFENDANT HAS NOT BEEN ON NOTICE OF

11:08AM  17   THAT CONDUCT SINCE THE INITIAL INDICTMENT WHEN IT COMES TO THE

11:08AM  18   INVESTOR COUNTS ONE THROUGH SIX.

11:08AM  19        THE COURT:  ARE YOU SUGGESTING THAT THE DEFENDANTS

11:08AM  20   HAD NOTICE THAT THE TIMEFRAME COULD HAVE EXTENDED TO 2010

11:08AM  21   BECAUSE THE ORIGINAL INDICTMENT HAD USED THE WORD "A TIME

11:08AM  22   UNKNOWN"?

11:08AM  23        MS. BAEHR-JONES:  YES, YOUR HONOR, BUT I THINK IT'S

11:08AM  24   A COMBINATION OF TWO THINGS.  IT'S, ONE, BECAUSE THE LANGUAGE

11:08AM  25   IN THE ORIGINAL INDICTMENT WAS -- INCLUDED "A TIME UNKNOWN,"

11:08AM   1    BUT ALSO BECAUSE WE'RE TALKING ABOUT VERY SPECIFIC INVESTORS.

11:08AM   2    WE'RE NOT TALKING ABOUT THE CONSPIRACY AS A WHOLE.

11:08AM   3         WE'RE TALKING ABOUT THE ALLEGATIONS THAT INVESTORS ONE

11:08AM   4    THROUGH SIX WERE DEFRAUDED.

11:08AM   5         SO THE CONDUCT THAT INCLUDED MISREPRESENTATIONS, AND

11:08AM   6    OMISSIONS, AND HALF-TRUTHS THAT WERE DIRECTED TOWARDS INVESTORS

11:09AM   7    ONE THROUGH SIX, THAT CONDUCT HAS NOT CHANGED AT ALL.  IN FACT,

11:09AM   8    THE DEFENDANTS DON'T POINT TO ANY ADDITIONAL CONDUCT THAT HAS

11:09AM   9    NOW COME INTO PLAY IN THE THIRD SUPERSEDING INDICTMENT THAT

11:09AM  10    WASN'T PART OF THE CASE ALL ALONG.

11:09AM  11         SO IT'S BOTH --

11:09AM  12              THE COURT:  MS. BAEHR-JONES, WE'RE LOSING SOME

11:09AM  13    CONNECTIVITY.  LET ME -- I THINK YOUR WI-FI IS BREAKING UP.

11:09AM  14              MADAM COURT REPORTER:  PLEASE REPEAT THE LAST

11:09AM  15    SENTENCE.

11:09AM  16         (PAUSE IN PROCEEDINGS.)

11:09AM  17              MS. BAEHR-JONES:  YES, YOUR HONOR.  THANK YOU.

11:09AM  18         THE LAST SENTENCE -- SO I BELIEVE I WAS TALKING ABOUT THAT

11:09AM  19    THERE'S NO NEW CONDUCT WITH RESPECT TO INVESTORS ONE THROUGH

11:09AM  20    SIX THAT THEY'VE POINTED TO, THAT THE DEFENSE HAS POINTED TO,

11:10AM  21    THAT COMES -- THAT IS NOW AT ISSUE IN THE THIRD SUPERSEDING

11:10AM  22    INDICTMENT THAT WASN'T ALWAYS INCORPORATED AND ALWAYS A PART OF

11:10AM  23    THE CASE FROM THE VERY -- FROM THE FIRST SUPERSEDING INDICTMENT

11:10AM  24    WHEN INVESTORS ONE THROUGH SIX WERE ALLEGED AS WIRE FRAUD

11:10AM  25    COUNTS.

| 11:10AM | 1 | THE COURT:  OKAY.  THANK YOU. |

DO YOU WANT TO TALK ABOUT TEN AND ELEVEN?

MS. BAEHR-JONES:  UNLESS YOUR HONOR HAS ANY QUESTIONS, I'LL SUBMIT.

THE COURT:  I'M SORRY, MS. BAEHR-JONES.

WE'RE HAVING SOME DIFFICULTY WITH YOUR WI-FI.  YOU'RE FREEZING, AND WE'RE NOT ABLE TO HEAR YOU ENTIRELY.

WHAT I'M TOLD HELPS IS IF YOU DISENGAGE THE VIDEO AND SOMETIMES THAT ASSISTS.

ARE YOU THERE?

MS. BAEHR-JONES:  I AM HERE, YOUR HONOR.  I DISENGAGED THE VIDEO.

DOES THAT HELP?

THE COURT:  IT SEEMS TO.  IT SEEMS TO HAVE HELPED. WE WON'T BE ABLE TO SEE YOU, BUT WE CAN CERTAINLY HEAR YOU.

MS. BAEHR-JONES:  OKAY.  THANK YOU, YOUR HONOR.  I APOLOGIZE FOR THE INCONVENIENCE TO THE COURT.

THE COURT:  NOT AT ALL.

MS. BAEHR-JONES:  I JUST WANT TO MAKE SURE THAT THE COURT DIDN'T HAVE ANY QUESTIONS ABOUT THE FIRST ISSUE BEFORE I MOVED ON TO THE SECOND ISSUE.

THE COURT:  NO.  WHY DON'T YOU MOVE TO THE SECOND ISSUE IF YOU WOULD, PLEASE.

I SUPPOSE -- WELL, THE ONE QUESTION IS, AND I THINK YOU'VE ANSWERED IT, MY QUESTION WAS GOING TO BE, HAS THIS EXPANDED THE

11:11AM 1   CHARGES?  AND WHY DO YOU FEEL IT HASN'T?  AND WHY ISN'T IT A

11:11AM 2   BROADENING OF THE CHARGES AS IN RATCLIFF AND THESE OTHERS?  BUT

11:11AM 3   I THINK YOU TOUCHED ON IT.

11:11AM 4        UNLESS THERE'S ANYTHING ELSE THAT YOU WANT ME TO KNOW

11:11AM 5   ABOUT THAT.

11:11AM 6             MS. BAEHR-JONES:  NO, YOUR HONOR.  I THINK THIS

11:11AM 7   WOULD BE DIFFERENT IF IT WEREN'T FOR THE FACT THAT THIS IS

11:11AM 8   SPECIFICALLY ALLEGED INVESTOR COUNTS, AND SO THE CONDUCT THAT

11:11AM 9   WAS ALWAYS AT ISSUE IN A SCHEME TO DEFRAUD THESE INVESTORS IS

11:11AM 10  THE SAME CONDUCT HERE.  IT'S THE SAME MISREPRESENTATIONS, IT'S

11:12AM 11  THE SAME HALF-TRUTHS, IT'S THE SAME OMISSIONS.

11:12AM 12       THE DEFENSE HASN'T POINTED TO ANY NEW CONDUCT HERE THAT IS

11:12AM 13  RELEVANT.  AGAIN, I THINK THEY'RE URGING THE COURT TO TAKE A

11:12AM 14  VERY TECHNICAL, HYPER TECHNICAL ELEMENTS-BASED APPROACH WHEN

11:12AM 15  THE CASE LAW IS THAT WE SHOULD BE AT ARE THESE APPROXIMATELY

11:12AM 16  THE SAME SET OF FACTS?  AND THEY ARE.

11:12AM 17            THE COURT:  OKAY.  THANK YOU.

11:12AM 18            MS. BAEHR-JONES:  THANK YOU, YOUR HONOR.

11:12AM 19       AND TURNING TO THE SECOND, THE SECOND POINT, I'D JUST LIKE

11:12AM 20  TO ADDRESS TWO ISSUES THAT THE DEFENSE RAISED.

11:12AM 21       FIRST IS THAT THE GOVERNMENT AGREES WITH YOUR HONOR THAT

11:12AM 22  SMITH IS NOT ON POINT HERE, THAT THAT IS A CASE THAT DEALS

11:12AM 23  SPECIFICALLY WITH THE CAPITAL OFFENSE.  THE RULES REGARDING --

11:12AM 24  ALLEGING A CAPITAL OFFENSE IS NOT APPLICABLE AND SIMPLY NOT ON

11:12AM 25  POINT HERE.

11:12AM  1       SECOND, I THINK IT'S WORTH TO POINT OUT THAT UNITED

11:12AM  2   STATES -- JABEN VERSUS UNITED STATES WAS DECIDED 55 YEARS AGO

11:12AM  3   NOW AND HAS NEVER ONCE BEEN EXPANDED BY THE SUPREME COURT OR BY

11:13AM  4   ANY CIRCUIT COURT IN THE WAY THAT THE DEFENSE URGES THE COURT

11:13AM  5   TO EXPAND THE HOLDING IN JABEN HERE.

11:13AM  6       IN FACT, BURDIX-DANA 20 YEARS AGO WHEN THERE WAS A

11:13AM  7   PETITION TO THE SUPREME COURT, THE PETITIONER MADE ALL OF THE

11:13AM  8   SAME ARGUMENTS THAT THE DEFENSE IS ADVANCING HERE FOR WHY JABEN

11:13AM  9   SHOULD BE EXPANDED, AND THE SUPREME COURT DID NOT GRANT CERT

11:13AM  10  AND NOT SINCE THEN HAS IT BEEN EXPANDED IN SUCH A WAY.  SO THE

11:13AM  11  GOVERNMENT WOULD URGE THE COURT NOT TO DO SO NOW.

11:13AM  12      AND THEN FINALLY, YOUR HONOR, HOLMES ARGUES THAT THERE IS

11:13AM  13  GOING TO BE STAGGERING IMPLICATIONS IF THE COURT ADOPTS THE

11:13AM  14  PLAIN LANGUAGE READING OF SECTION 3282 THAT BURDIX-DANA HAS

11:13AM  15  ADOPTED AND THAT OTHER COURTS, INCLUDING THE CASE THAT

11:13AM  16  YOUR HONOR HAS CITED TODAY, HAS ADOPTED, AND THAT'S SIMPLY NOT

11:13AM  17  THE CASE.

11:13AM  18      IN THE 20 YEARS SINCE BURDIX-DANA THIS HAS RARELY COME UP

11:13AM  19  AND THAT'S BECAUSE IT'S NOT IN THE GOVERNMENT'S INTEREST TO USE

11:14AM  20  SECTION 3282 IN THE WAY THAT THE DEFENSE IS CLAIMING THAT IT

11:14AM  21  SHOULD BE USED AND THE GOVERNMENT HASN'T FOR THE MOST PART.

11:14AM  22      AND HERE WE ARE IN A PUBLIC HEALTH CRISIS, AND IT SIMPLY

11:14AM  23  IS NOT THE CASE THAT THIS HAS BEEN USED IN A WAY THAT THE

11:14AM  24  DEFENSE IS SORT OF ALLEGING.

11:14AM  25      THEY HAD PLENTY OF NOTICE HERE, AND THE GOVERNMENT WOULD

11:14AM 1     URGE THE COURT TO FOLLOW BURDIX-DANA AND THE OTHER COURTS THAT

11:14AM 2     HAVE APPLIED 3282 IN WAY -- IN THE PLAIN LANGUAGE READING THE

11:14AM 3     WAY THE GOVERNMENT ADVANCES HERE.

11:14AM 4              THE COURT:  MS. SAHARIA, I'LL GIVE YOU THE LAST WORD

11:14AM 5     AND THEN I'D LIKE TO MOVE ON.

11:14AM 6         BUT LET ME ASK, MR. COOPERSMITH, DO YOU WANT TO ADD

11:14AM 7     ANYTHING OR DO YOU HAVE RECIPROCITY IN YOUR CONFIDENCE WITH

11:14AM 8     MS. SAHARIA?

11:14AM 9              MR. COOPERSMITH:  THANK YOU, YOUR HONOR.  I HAVE

11:14AM 10    TOTAL CONFIDENCE IN MS. SAHARIA.

11:14AM 11        BUT WHILE SHE WAS SPEAKING BEFORE, DESPITE MY ADVANCED

11:14AM 12    AGE, I WAS ABLE TO PULL UP THE BRISCOE CASE AND QUICKLY READ

11:15AM 13    IT.  IT WAS MERCIFULLY SHORT, AND I JUST HAVE A FEW COMMENTS

11:15AM 14    ABOUT BRISCOE SINCE THE COURT MENTIONED IT.

11:15AM 15        THIS IS THE DISTRICT OF MARYLAND FROM VERY RECENT TIMES IN

11:15AM 16    LATE AUGUST OF THIS YEAR.

11:15AM 17        SO, FIRST OF ALL, THE BRISCOE COURT SAYS THAT IT

11:15AM 18    RECOGNIZES THAT THERE'S A DIFFERENCE BETWEEN, QUOTE,

11:15AM 19    "INSTITUTING" AND "PROSECUTING," RIGHT?  AND THAT'S THE

11:15AM 20    DISTINCTION THAT IT SAYS EXISTS.

11:15AM 21        BUT THEN INEXPLICABLY, IN MY VIEW, THE BRISCOE COURT THEN

11:15AM 22    SAYS, BUT THE TERM "INSTITUTED" IS EXACTLY THE SAME MEANING AS

11:15AM 23    "FILED."  THAT'S WHAT BRISCOE SAYS.

11:15AM 24        AND WITH RESPECT TO THE JUDGE IN THE DISTRICT OF MARYLAND,

11:15AM 25    I THINK THAT'S JUST FLAT OUT WRONG.

11:15AM 1          AND ONE WAY TO ILLUSTRATE THAT IS IN THIS CASE THE

11:15AM 2    GOVERNMENT HERE WAS REALLY DESPERATE TO SAY THAT THERE IS

11:15AM 3    SOMETHING, SOMETHING THAT AN INFORMATION WITHOUT AN AFFIDAVIT

11:15AM 4    ACCOMPLISHES.

11:15AM 5          AND THEY SAID, WELL, THE THING THAT AN INFORMATION

11:15AM 6    ACCOMPLISHES IS THAT IT SETS OFF THE NEED FOR A PRELIMINARY

11:16AM 7    HEARING.

11:16AM 8          AND AS IS POINTED OUT IN THE REPLY BRIEF, YOUR HONOR, THAT

11:16AM 9    IS JUST WRONG.

11:16AM 10         WHEN YOU LOOK AT THE INTERACTION OF RULES 4, 5, 5.1, AND

11:16AM 11   9, THERE CANNOT BE A PRELIMINARY HEARING.  UNDER RULE 5.1 NO

11:16AM 12   PRELIMINARY HEARING CAN BE SCHEDULED WITHOUT THE INITIAL

11:16AM 13   APPEARANCE.

11:16AM 14         THERE IS NO INITIAL APPEARANCE WITHOUT AN ARREST WARRANT

11:16AM 15   OR SUMMONS, AND YOU CANNOT GET SUCH A THING WITHOUT AN

11:16AM 16   INFORMATION ACCOMPANIED BY AFFIDAVITS, WHICH THIS ONE WAS NOT.

11:16AM 17         SO I THINK BRISCOE GOT THAT WRONG, TOO, ON THE RULE 9

11:16AM 18   ANALYSIS I'LL CALL IT.

11:16AM 19         AND THEN FINALLY, YOUR HONOR, AS TO BRISCOE, IT DOES POINT

11:16AM 20   OUT IN A FOOTNOTE THAT IT IS JUST DECIDING NOT TO FOLLOW THE

11:16AM 21   DISTRICT OF MASSACHUSETTS IN THE MACHADO CASE, AND I THINK THAT

11:16AM 22   IS THE BETTER REASONED CASE.  I THINK THE JUDGE IN THE

11:16AM 23   EASTERN DISTRICT OF VIRGINIA IN STEWART WANTED TO FOLLOW

11:16AM 24   MACHADO BUT FOR SOME REASON HE FELT HIMSELF BOUND BY THE

11:16AM 25   SEVENTH CIRCUIT IN BURDIX.

11:16AM  1      BUT I THINK THE MACHADO CASE FROM THE DISTRICT OF

11:17AM  2  MASSACHUSETTS IS THE BETTER REASONED CASE ON THIS POINT, AND I

11:17AM  3  DON'T THINK BRISCOE, WHICH IS A SHORT ANALYSIS, REALLY GETS IT

11:17AM  4  RIGHT.  SO I WOULD URGE THE COURT NOT TO FOLLOW THE LEAD OF

11:17AM  5  BRISCOE.  THANK YOU.

11:17AM  6          THE COURT:  ALL RIGHT.  THANK YOU.  DO YOU HAVE ANY

11:17AM  7  COMMENTS ABOUT THE GOOD JUDGE'S COMMENTS ON THE COVID

11:17AM  8  SITUATION?

11:17AM  9          MR. COOPERSMITH:  YOU KNOW, YOUR HONOR, I HAVE TO

11:17AM  10  CONFESS, I DIDN'T REALLY GET TO THAT PART OF THE OPINION, BUT I

11:17AM  11  CAN IMAGINE WHAT IT IS.

11:17AM  12      I MEAN, THE COVID SITUATION IS, OF COURSE, UNFORTUNATE FOR

11:17AM  13  ALL OF US AND EVERYONE IN THE WORLD, BUT IN THIS CASE I DON'T

11:17AM  14  THINK IT HAS ANY LEGAL SIGNIFICANCE.

11:17AM  15      FIRST OF ALL, THE RULES ARE THE RULES, AND THERE'S NO

11:17AM  16  EXCEPTION TO THE RULES BASED ON COVID.

11:17AM  17      BUT MORE TO THE POINT, THE GOVERNMENT, IF THEY WANTED TO

11:17AM  18  SUPERSEDE AND ADD, YOU KNOW, ENORMOUSLY EXPANDED CHARGES

11:17AM  19  DOUBLING THE TIMEFRAME ADDING GIANT CORPORATIONS AND BOARD

11:17AM  20  MEMBERS AND ALL OF THE THINGS THAT WE HAVE ALREADY EXPLAINED,

11:17AM  21  THEY COULD HAVE DONE THAT AT ANY POINT BEFORE THE COVID CRISIS

11:17AM  22  SHUT DOWN THE GRAND JURY IN I BELIEVE EARLY MARCH.

11:17AM  23      SO I DON'T THINK THAT'S REALLY NEITHER HERE NOR THERE AND

11:18AM  24  CERTAINLY IT DOESN'T ENTITLE THE GOVERNMENT TO DISREGARD THE

11:18AM  25  RULES AND FILE A PIECE OF PAPER.

11:18AM 1        AND THEN FINALLY, YOUR HONOR, AS MS. SAHARIA HAS SAID, YOU

11:18AM 2   KNOW, THE GOVERNMENT IS NOT TRYING TO LIMIT THEIR PRINCIPLE TO

11:18AM 3   COVID SITUATIONS OR PANDEMIC SITUATIONS.

11:18AM 4        AND TO GIVE THE GOVERNMENT THE RIGHT JUST TO EXTEND THEIR

11:18AM 5   OWN STATUTE OF LIMITATIONS ANY TIME THEY WANT BY FILING A PIECE

11:18AM 6   OF PAPER THAT HAS NO EFFECT NOT EVEN WITH AN AFFIDAVIT ATTACHED

11:18AM 7   TO IT I THINK IS NOT SOMETHING THAT THE COURT SHOULD CONDONE.

11:18AM 8        SO I THINK THE COURT SHOULD GRANT THE MOTION.  THANK YOU.

11:18AM 9            THE COURT:  ALL RIGHT.  THANK YOU.

11:18AM 10       MS. SAHARIA, DO YOU HAVE ANYTHING ELSE TO SAY OR DID

11:18AM 11  MR. COOPERSMITH SPEAK FOR YOU SUCCESSFULLY?

11:18AM 12           MS. SAHARIA:  HE SUCCESSFULLY SPOKE FOR ME ON THE

11:18AM 13  SECOND ARGUMENT, AND I APPRECIATE THAT HE READ BRISCOE WHILE I

11:18AM 14  WAS TALKING BECAUSE I COULD NOT DO THAT.

11:18AM 15       BUT LET ME JUST BRIEFLY RESPOND ON THE FIRST ARGUMENT.

11:18AM 16       MS. BAEHR-JONES FOCUSSED ON THE ARGUMENT THAT THE CONDUCT

11:19AM 17  HERE, AS SHE CLAIMS, IS THE SAME BECAUSE IT'S THE SAME SET OF

11:19AM 18  FACTS.  THAT TAKES AN EXCEPTIONALLY NARROW VIEW OF WIRE FRAUD,

11:19AM 19  AND IT IS NOT THE VIEW THAT THE GOVERNMENT USUALLY ESPOUSES.

11:19AM 20       I'M SURE THE COURT HAS HAD WIRE FRAUD CASES BEFORE WHERE

11:19AM 21  THE DEFENDANT TRIES A TACTIC OF MOVING TO LIMIT THE

11:19AM 22  INFORMATION -- THE EVIDENCE AT TRIAL ONLY TO THE SPECIFIC

11:19AM 23  MAILING, RIGHT, THE CIRCUMSTANCES AROUND THE SPECIFIC MAILING

11:19AM 24  OR IN THIS CASE THE WIRING, THE VICTIM THAT SENT THE WIRE.

11:19AM 25       AND THE GOVERNMENT'S INEVITABLE RESPONSE IN THOSE CASES IS

11:19AM 1      THAT WIRING IS JUST THE JURISDICTIONAL HOOK AND -- BUT THAT

11:19AM 2      EVIDENCE OF THE ENTIRE SCHEME COMES INTO THE TRIAL.

11:19AM 3          AND THE SCHEME, OF COURSE, CAN EXTEND TO MANY MORE VICTIMS

11:19AM 4      THAN THE ONE VICTIM WHO HAPPENS TO SEND A WIRE.  THAT'S HOW THE

11:19AM 5      WIRE FRAUD STATUTE IS WRITTEN.  IT'S WRITTEN IN TERMS OF A

11:20AM 6      WIRING FOR PURPOSES OF EXECUTING A SCHEME AND THE WIRING

11:20AM 7      DOESN'T EVEN NECESSARILY NEED TO BE TIED TO A VICTIM.  THE

11:20AM 8      WIRING CAN BE ANY WIRING IN FURTHERANCE OF A SCHEME.

11:20AM 9          SO TO SAY THAT THESE COUNTS ARE BASED ON THE SAME SET OF

11:20AM 10     FACTS JUST BECAUSE THE WIRING IS THE SAME IS SIMPLY NOT TRUE

11:20AM 11     WHEN THE -- WE NOW HAVE THREE MORE YEARS OF REPRESENTATIONS

11:20AM 12     THAT ARE PART OF THE SCHEME AND A WHOLE NEW CATEGORY OF VICTIMS

11:20AM 13     THAT ARE PART OF THIS SCHEME.

11:20AM 14         SO THEY'RE NOT BASED ON THE SAME SET OF FACTS.  THIS IS

11:20AM 15     NOT A HYPER TECHNICAL READING OF WIRE FRAUD.  IT'S THE

11:20AM 16     GOVERNMENT THAT IS TAKING A VERY NARROW READING OF WHAT THE

11:20AM 17     WIRE FRAUD STATUTE PROHIBITS.

11:20AM 18         SO WITH THAT, I'M HAPPY TO REST ON THIS ONE.

11:20AM 19             THE COURT:  THANK YOU VERY MUCH.  THANK YOU.

11:20AM 20         AGAIN, AS I INDICATED, THE COURT INTENDS TO TAKE EACH OF

11:20AM 21     THESE MOTIONS UNDER SUBMISSION WITH ORDERS TO FOLLOW.

11:20AM 22         LET'S TURN OUR ATTENTION NOW TO 496, LACK OF NOTICE, AS

11:21AM 23     WELL AS 497.  I THINK THERE ARE SIMILAR ARGUMENTS HERE AND

11:21AM 24     OVERLAP SHALL I SAY?

11:21AM 25         AND AGAIN, I THINK 500 RELATES TO THIS.

11:21AM  1        SO WHO IS GOING TO SPEAK TO THIS AS THE MOVING PARTY AS TO

11:21AM  2   496?

11:21AM  3        THIS IS MS. HOLMES'S MOTION.  501 IS THE JOINDER BY

11:21AM  4   MR. BALWANI; THE GOVERNMENT'S OPPOSITION IS 522; AND THE REPLY

11:21AM  5   IS 541.

11:21AM  6        WHO WILL SPEAK TO THIS?

11:21AM  7             MS. SAHARIA:  YOUR HONOR, I'M GOING TO TURN THE

11:21AM  8   VIRTUAL PODIUM OVER TO MY COLLEAGUE, ANDREW LEMENS.

11:21AM  9             THE COURT:  ALL RIGHT.  THANK YOU.

11:21AM 10        MR. LEMENS, YOU HEARD ME SAY I'VE READ THE PLEADINGS HERE.

11:21AM 11   AND WHAT IS IT THAT YOU WOULD LIKE ME KNOW THAT WAS NOT

11:21AM 12   CAPTURED IN THE PLEADINGS AS TO THIS MOTION?

11:21AM 13             MR. LEMENS:  THANK YOU, YOUR HONOR.  GOOD MORNING.

11:21AM 14        I WILL DO MY BEST TO INCORPORATE WHAT MS. SAHARIA AND

11:22AM 15   MR. COOPERSMITH HAVE ARGUED IN THE CONTEXT OF THE PRIOR MOTIONS

11:22AM 16   AS I BELIEVE WE HAVE ADDRESSED ALREADY SOME OF THE ISSUES THAT

11:22AM 17   BEAR HERE.

11:22AM 18        JUST FOR ROADMAPPING, I KNOW YOUR HONOR MENTIONED THESE

11:22AM 19   ARE SIMILAR MOTIONS.  I WOULD SUGGEST THAT WE STILL TAKE THEM

11:22AM 20   SEPARATELY AS THE LEGAL DOCTRINES AND ISSUES ARE GOING TO BE

11:22AM 21   SOMEWHAT DIFFERENT.

11:22AM 22        I WOULD PROPOSE TO START WITH THE NOTICE MOTION, WHICH IS

11:22AM 23   496.

11:22AM 24             THE COURT:  RIGHT.  THAT'S WHAT I'D LIKE TO DO AS

11:22AM 25   WELL.

11:22AM 1           MR. LEMENS:  WE'VE TALKED THIS MORNING ABOUT HOW THE

11:22AM 2     INDICTMENT WAS EXPANDED THIS PAST SUMMER, AND I THINK IT'S

11:22AM 3     IMPORTANT -- YOU KNOW, WE HAVE TALKED ALSO ABOUT WALGREENS AND

11:22AM 4     SAFEWAY BEING MOVED IN AND THE BOARD MEMBERS BEING MOVED IN.

11:22AM 5           AND FOR THE PURPOSES OF CONSTITUTIONAL NOTICE THE

11:22AM 6     QUESTION WE'RE ASKING IS WHAT IS AVAILABLE TO THE DEFENSE ON

11:22AM 7     THE FACE OF THE INDICTMENT?  AND I THINK IT'S IMPORTANT TO

11:22AM 8     DISTINGUISH WHAT IS IN THE INDICTMENT ITSELF AS COMPARED TO

11:23AM 9     WHAT THE GOVERNMENT HAS EXPLAINED IN POST INDICTMENT

11:23AM 10    CORRESPONDENCE AND IN PLEADINGS TO THIS COURT.

11:23AM 11          THE INDICTMENT SAYS INVESTORS AND ADDS A PARENTHETICAL

11:23AM 12    THAT REFERS TO BUSINESS PARTNERS AND BOARD MEMBERS.

11:23AM 13          IT DOESN'T DISCUSS HOW THOSE BOARD MEMBERS OR BUSINESS

11:23AM 14    PARTNERS ARE ALLEGED TO HAVE INVESTED IN THERANOS.  IT DOESN'T

11:23AM 15    PROVIDE THE GOVERNMENT'S THEORY OF THE ALLEGED DEPRIVATION OF

11:23AM 16    PROPERTY, IT DOESN'T PROVIDE ANY EXPLANATION AS TO HOW THOSE

11:23AM 17    NEW GROUPS WHO ARE DIFFERENT THAN THE OUTSIDE INVESTORS THAT

11:23AM 18    ARE MENTIONED IN THE SUBSTANTIVE COUNTS AND THE OUTSIDE

11:23AM 19    INVESTORS THAT WE SPOKE ABOUT IN THE PRIOR MOTIONS PRACTICE ARE

11:23AM 20    HANDLED.

11:23AM 21          AND I THINK THIS CREATES NOTICE ISSUES AS TO THE UNIVERSE

11:23AM 22    OF STATEMENTS AT ISSUE; AS TO WHAT, WHAT TRANSACTION OCCURRED,

11:23AM 23    WHAT TRANSACTION IS ALLEGED TO HAVE OCCURRED; AND THEN FINALLY,

11:24AM 24    AS TO THE DUTY TO DISCLOSE.  THESE ARE DIFFERENTLY SITUATED

11:24AM 25    GROUPS.  THEY HAVE DIFFERENT RELATIONSHIPS TO THE COMPANY.  SO

11:24AM 1    IT CREATES A QUESTION AS TO WHAT IS THE DUTY THE GOVERNMENT

11:24AM 2    ALLEGES?

11:24AM 3         AND NONE OF THAT IS IN THE FACE OF THE INDICTMENT.  NONE

11:24AM 4    OF THAT IS AVAILABLE FROM THE INDICTMENT.

11:24AM 5         AND THEN FOR THAT REASON THERE'S A DEFICIENCY AND IN OUR

11:24AM 6    POSITION WOULD REQUIRE DISMISSAL.

11:24AM 7         I THINK WHERE WE'RE GOING TO GO QUICKLY IS THE QUESTION OF

11:24AM 8    THE BILL OF PARTICULARS.  AND WE RECOGNIZE AND AGREE THAT THE

11:24AM 9    GOVERNMENT HAS MADE A NUMBER OF REPRESENTATIONS SINCE THE

11:24AM 10   INDICTMENT WAS FILED.  I THINK THOSE REPRESENTATIONS NEED TO BE

11:24AM 11   DOCUMENTED IN A BILL OF PARTICULARS TO GIVE THEM LEGAL EFFECT

11:24AM 12   SO WE HAVE CLARITY ON THE ISSUES AS WE MOVE TO TRIAL.

11:24AM 13        BUT I -- THERE'S STILL OUTSTANDING QUESTIONS THAT REMAIN.

11:24AM 14   AND I THINK WHEN YOU LOOK AT WHAT THEY'VE TOLD US ABOUT THE

11:24AM 15   BUSINESS PARTNERS AS COMPARED TO WHAT HAS BEEN EXPLAINED ABOUT

11:25AM 16   THE BOARD MEMBERS YOU CAN SEE, SEE THE DIFFERENCE.

11:25AM 17        WITH THE BUSINESS PARTNERS, THE GOVERNMENT HAS BEEN CLEAR.

11:25AM 18   THEY HAVE SAID WE'RE REFERRING ONLY TO WALGREENS AND SAFEWAY.

11:25AM 19        TO THE EXTENT THAT THERANOS HAD OTHER BUSINESS PARTNERS OR

11:25AM 20   OTHER POTENTIAL RELATIONSHIPS, THAT'S NOT WHAT THE INDICTMENT

11:25AM 21   REFERS TO.

11:25AM 22        AND THEY'VE POINTED MS. HOLMES AND MR. BALWANI TO VERY

11:25AM 23   SPECIFIC TRANSACTIONS THAT THEY ALLEGE CONSTITUTE -- THAT ARE

11:25AM 24   AT ISSUE HERE, TRANSACTIONS IN 2011 AND 2012, IN BOTH CASES

11:25AM 25   CONVERTIBLE NOTES, THE ISSUANCE OF CONVERTIBLE NOTES THAT

| | |
|---|---|
| 11:25AM | 1 |
| 11:25AM | 2 |
| 11:25AM | 3 |
| 11:25AM | 4 |
| 11:25AM | 5 |
| 11:25AM | 6 |
| 11:26AM | 7 |
| 11:26AM | 8 |
| 11:26AM | 9 |
| 11:26AM | 10 |
| 11:26AM | 11 |
| 11:26AM | 12 |
| 11:26AM | 13 |
| 11:26AM | 14 |
| 11:26AM | 15 |
| 11:26AM | 16 |
| 11:26AM | 17 |
| 11:26AM | 18 |
| 11:26AM | 19 |
| 11:26AM | 20 |
| 11:26AM | 21 |
| 11:26AM | 22 |
| 11:27AM | 23 |
| 11:27AM | 24 |
| 11:27AM | 25 |

1    PROVIDED A DEBT OR SECURITY INTEREST TO WALGREENS AND SAFEWAY.

2         I THINK WE HAVE TO CONCEDE THAT GIVES US -- THAT

3    INFORMATION, IF PROPERLY REFLECTED IN A BILL OF PARTICULARS,

4    GETS US STARTED ON UNDERSTANDING WHAT THE GOVERNMENT'S THEORY

5    IS.

6         WITH THE BOARD MEMBERS BY CONTRAST, THERE'S STILL NOT A

7    CLEAR PRINCIPLE OR ARTICULABLE AREA AS TO WHAT INVESTMENT, WHAT

8    INVESTMENT OCCURRED.

9         IN ONE OPPOSITION THEY HAVE IDENTIFIED TWO DIRECTORS.

10   THOSE ARE DIRECTORS WHO MADE INDEPENDENT STANDALONE INVESTMENTS

11   THAT HAD NOTHING TO DO WITH THEIR BOARD SERVICE.  SO THE

12   QUESTION BECOMES IS THAT WHAT THE GOVERNMENT IS REFERRING TO

13   WHEN IT REFERS TO BOARD MEMBERS?  IS IT THOSE BOARD MEMBERS WHO

14   MADE SEPARATE INVESTMENTS?

15        IN THE OPPOSITION TO THE NOTICE MOTION, THEY POINT TO US,

16   AS YOUR HONOR MENTIONED EARLIER, TO THE SHAREHOLDER LIST.  AND

17   I THINK AS THAT LIST MAKES CLEAR AND BASED ON OUR UNDERSTANDING

18   OF THE FACTS THAT LIST INCLUDES SHARES THAT WERE GRANTED TO

19   BOARD MEMBERS AS COMPENSATION.

20        SO THE QUESTION BECOMES DOES THE GOVERNMENT'S THEORY

21   INCLUDE THOSE TRANSACTIONS AS WELL?  BECAUSE THOSE ARE OF A

22   VERY DIFFERENT KIND, AND I THINK THAT WILL CREATE ISSUES THAT

23   WE WILL NEED TO DISCUSS IN THE CONTEXT OF DUPLICITY.

24        SO THERE REMAIN SOME OUTSTANDING QUESTIONS WITH RESPECT TO

25   THE BOARD MEMBERS, AND THE GOVERNMENT ARTFULLY REFUSES TO

```
11:27AM   1        PROVIDE THE CLARITY THAT WE BELIEVE THE DEFENSE IS ENTITLED TO.

11:27AM   2             THE COURT:  SO IS IT THAT -- MR. LEMENS, IT SOUNDS

11:27AM   3   LIKE THE DEFENSE WOULD HAVE GREATER COMFORT IF YOU KNEW AS TO

11:27AM   4   THE BOARD MEMBERS IF THE GOVERNMENT COULD ANSWER THE QUESTIONS

11:27AM   5   AS INVESTORS ARE THEY REFERRING TO AND WILL THEY PUT EVIDENCE

11:27AM   6   IN THAT THESE INVESTORS ARE INVESTORS WHO PURCHASED INTERESTS

11:27AM   7   IN THERANOS SECURITIES AND THERANOS BASED ON

11:27AM   8   MISREPRESENTATIONS, ET CETERA, ET CETERA, AS OPPOSED TO, AS WE

11:27AM   9   DISCUSSED EARLIER, BOARD MEMBERS WHO RECEIVED SECURITIES BY

11:27AM  10   VIRTUE OF THEIR SERVICE AND WHO MADE NO MONETARY INVESTMENT,

11:28AM  11   THEY DIDN'T BUY THE SECURITIES, THEY DIDN'T WIRE.

11:28AM  12        I THINK SOME OF THESE COUNTS, AS THE GOVERNMENT POINTS

11:28AM  13   OUT, IT SHOULD BE PRETTY, PRETTY CLEAR TO FOLLOW THERE ARE

11:28AM  14   ACTUAL WIRES OF DIFFERENT SUMS, LARGE SUMS OF MONEY, MILLIONS

11:28AM  15   OF DOLLARS IN SOME CASES, TO PURCHASE SECURITIES.  AND THERE'S

11:28AM  16   A WIRE TRACK THAT SHOWS THAT.  THOSE PEOPLE, THOSE INVESTORS, I

11:28AM  17   THINK, ARE EASILY IDENTIFIABLE, AREN'T THEY, TO YOU?

11:28AM  18             MR. LEMENS:  I THINK, THEY ARE, YOUR HONOR, I THINK

11:28AM  19   FROM MY ROLE ONLY REPRESENT MY REVIEW OF THE DOCUMENT THAT THE

11:28AM  20   GOVERNMENT HAS POINTED TO.  I THINK WE COULD GET SOMEWHERE WITH

11:28AM  21   THAT.

11:28AM  22        I THINK JUST TO PROVIDE A LITTLE FURTHER CLARITY, I THINK

11:28AM  23   THERE ARE THREE GROUPS OF BOARD MEMBERS WE'RE WONDERING ABOUT.

11:28AM  24   THE FIRST IS, AS YOUR HONOR REFERRED TO, THOSE INVESTORS WHO

11:28AM  25   MADE SEPARATE INVESTMENTS, WHO MADE A WIRE UNRELATED TO THEIR
```

11:29AM 1     BOARD SERVICE AND IN EXCHANGE RECEIVED SHARES.  THAT'S ON ONE

11:29AM 2     END OF THE SPECTRUM.

11:29AM 3          ON THE OTHER END OF THE SPECTRUM THERE ARE, FROM OUR

11:29AM 4     UNDERSTANDING, BOARD MEMBERS WHO RECEIVED SHARES AS

11:29AM 5     COMPENSATION, IN LIEU OF COMPENSATION.

11:29AM 6          AND THEN THERE'S A GROUP IN THE MIDDLE WHO -- WHERE THERE

11:29AM 7     WAS AN OPTION.  THEY RECEIVED AN OPTION TO ACQUIRE SHARES.

11:29AM 8               THE COURT:  FOR CASH PURCHASE OR FOR BOARD SERVICE?

11:29AM 9               MR. LEMENS:  FOR -- IN LIEU OF COMPENSATION OR AS

11:29AM 10    PART OF THEIR COMPENSATION PACKAGE FOR THEIR SERVICE ON THE

11:29AM 11    BOARD.  I THINK THAT'S OUR UNDERSTANDING.

11:29AM 12         AND IF THE GOVERNMENT WERE TO PROVIDE CLARITY AS TO WHICH

11:29AM 13    OF THOSE GROUPS WERE INCLUDED AND WHY, WHAT IS THE THEORY OF

11:29AM 14    WIRE FRAUD WITH RESPECT TO EACH OF THOSE GROUPS, I THINK WE

11:29AM 15    WOULD BE IN A BETTER POSITION.

11:29AM 16              THE COURT:  SURE.  SO THE INDICTMENT DOES NOT

11:29AM 17    REFLECT ANY WIRE TRANSFERS WITH REGARD TO THOSE LAST TWO

11:29AM 18    CATEGORIES THAT YOU'VE TALKED ABOUT, THAT IS, BOARD

11:29AM 19    COMPENSATION.  THERE'S NOTHING IN THE INDICTMENT THAT

11:29AM 20    REFERENCES A WIRE TRANSFER FOR THE SECURING OF THOSE SECURITIES

11:30AM 21    AS I UNDERSTAND IT.

11:30AM 22              MR. LEMENS:  IF THERE IS ONE, I'M SURE THE

11:30AM 23    GOVERNMENT WILL POINT US TO IT, BUT WE HAVE BEEN UNABLE TO SEE

11:30AM 24    ONE.  AND WE HAVE REVIEWED THIS CAREFULLY.

11:30AM 25              THE COURT:  AND I'M JUST CURIOUS WHY THAT DOESN'T

11:30AM 1    ANSWER THAT INITIAL QUESTION.  IF IT'S NOT THERE, IT'S NOT

11:30AM 2    THERE.  THEY'RE FOCUSSING ON THE INVESTORS THEMSELVES.

11:30AM 3        SO -- BUT WE'LL ASK THE GOVERNMENT.  I UNDERSTAND WHY

11:30AM 4    YOU'RE SAYING, GEE, A BILL OF PARTICULARS WOULD REALLY HELP US

11:30AM 5    IN THIS REGARD.

11:30AM 6        THERE WAS THAT APRIL, EARLY APRIL -- WAS IT APRIL 14TH?

11:30AM 7    THERE WAS A -- I THINK THAT THE GOVERNMENT RECEIVED A DRAFT OF

11:30AM 8    THE INFORMATION, AND IT WASN'T UNTIL SOME WEEKS LATER, SOME

11:30AM 9    TIME IN MAY, I'M INFORMED THROUGH THE PLEADINGS, THAT THE

11:30AM 10   DEFENSE ACTUALLY RECEIVED SOME CLARITY FROM THE GOVERNMENT AS

11:30AM 11   TO WHAT THEY MEANT BY INVESTORS.

11:30AM 12       MR. LEMENS:  YEAH.  I BELIEVE THE TIMING,

11:31AM 13   YOUR HONOR, IS THAT WE RECEIVED NOTICE WHEN WE FIRST RECEIVED

11:31AM 14   THE DRAFT INFORMATION IN APRIL.  IT WAS SHORTLY BEFORE WE FILED

11:31AM 15   THIS MOTION IN AUGUST WITHIN MAYBE THE WEEK OR TEN DAYS PRIOR

11:31AM 16   THAT WE RECEIVED THE FIRST ROUND OF CLARIFICATION.

11:31AM 17       AND THE -- AND THERE HAVE BEEN FURTHER CLARIFICATIONS AS

11:31AM 18   THE GOVERNMENT HAS FILED ITS BRIEFS WITH RESPECT TO THESE

11:31AM 19   MOTIONS.

11:31AM 20       SO I, I DON'T WANT TO SAY THAT THEY HAVEN'T SAID ANYTHING,

11:31AM 21   BUT I THINK OUR POSITION IS THAT WE HAVEN'T GOTTEN SUFFICIENT

11:31AM 22   CLARITY, AND THOSE REPRESENTATIONS NEED TO BE DOCUMENTED IN A

11:31AM 23   BILL OF PARTICULARS TO GIVE THEM THE NECESSARY LEGAL EFFECT.

11:31AM 24       THE COURT:  IS IT ALSO APPROPRIATE OR WOULD IT ALSO

11:31AM 25   BE A REMEDY TO -- I LOOK AT THIS AND I THINK, WELL, ARE YOU

11:31AM  1    SAYING THAT THE GOVERNMENT SHOULD MAKE AN ELECTION?  AND IF SO,

11:31AM  2    WHEN SHOULD THAT ELECTION BE?  AND ISN'T THIS SOMETHING THAT

11:31AM  3    CAN BE RESOLVED IN LIMINE?

11:31AM  4         IN OTHER WORDS, YOU'LL ASK FOR A LIMITATION ON WHAT

11:31AM  5    EVIDENCE IS GOING TO BE PROVIDED AND THE RELEVANCE OR

11:32AM  6    MATERIALITY OF ANYTHING THAT EXCEEDS THAT.

11:32AM  7         OR IS THAT TOO LONG OF A WAIT TO ANSWER THE QUESTION FOR

11:32AM  8    YOU?  IS THAT TOO LONG OF A WAIT?

11:32AM  9              MR. LEMENS:  WELL, I DARE SAY THAT WE NEED A LITTLE

11:32AM 10    CLARITY TO INFORM WHAT THOSE MOTIONS WOULD LOOK LIKE.

11:32AM 11         IF THE GOVERNMENT IS PURSUING AN OPTIONS AS COMPENSATION

11:32AM 12    THEORY OF FRAUD, I THINK WE'LL, WE'LL HAVE SOME DISCUSSIONS

11:32AM 13    AROUND WHAT MOTIONS, IF ANY, ARE NECESSARY AS YOUR HONOR

11:32AM 14    REFERENCES EITHER IN LIMINE OR AT SOME OTHER POINT IN TIME.

11:32AM 15         BUT WE DON'T KNOW WHAT THE THEORY IS AT THIS POINT.  SO

11:32AM 16    IT'S VERY DIFFICULT TO SPECULATE AS TO HOW WE WOULD LITIGATE

11:32AM 17    THAT DOWN THE ROAD.

11:32AM 18              THE COURT:  SO LET ME ASK YOU THE QUESTION, AND

11:32AM 19    MAYBE YOU'LL, MAYBE YOU'LL -- YOU CAN ANSWER IT OR WHOEVER IS

11:32AM 20    GOING TO TALK ABOUT THE DUPLICITOUS.  IS THERE A DISTINCTION

11:32AM 21    BETWEEN AN INVESTOR AND A BUSINESS PARTNER?  CAN'T ONE BE THE

11:33AM 22    SAME, BE A BUSINESS PARTNER AND AN INVESTOR?

11:33AM 23              MR. LEMENS:  I THINK IF THERE WAS AN ALLEGATION THAT

11:33AM 24    A BUSINESS PARTNER HAD MADE AN INVESTMENT, I DON'T THINK WE

11:33AM 25    WOULD QUIBBLE OVER THE USE OF THE WORD "INVESTOR."

11:33AM  1          I THINK IN THIS -- AND I WILL ALSO BE ADDRESSING THE

11:33AM  2    DUPLICITY MOTION, AND WE'RE HEADING INTO THAT TERRITORY, I

11:33AM  3    THINK IT DEPENDS VERY MUCH ON HOW THE SCHEMES ARE DEFINED AND

11:33AM  4    IN OUR VIEW IT'S NOT JUST ENOUGH TO PUT THE INVESTOR LABEL ON

11:33AM  5    ALL OF THESE ENTITIES AND SAY THAT'S ENOUGH TO AVOID A

11:33AM  6    DUPLICITY CHARGE BECAUSE YOU HAVE TO LOOK AT HOW -- WHAT THE

11:33AM  7    TRANSACTIONS ARE, THE NATURE OF THE TRANSACTIONS, THE NATURE OF

11:33AM  8    THE INTERACTIONS WITH THOSE PARTICULAR PARTIES.

11:33AM  9          THERANOS'S INTERACTIONS WITH WALGREENS AND SAFEWAY

11:33AM  10   DIFFERED SIGNIFICANTLY, BOTH IN TIME AND THE NATURE OF THE

11:33AM  11   CONVERSATION AND IN THE UNDERLYING CONTRACTUAL RELATIONSHIP

11:34AM  12   FROM --

11:34AM  13          THE COURT:  BUT THE, BUT THE -- I'M SORRY TO

11:34AM  14   INTERRUPT YOU, MR. LEMENS.

11:34AM  15          BUT THE POINT IS THAT BOTH OF THOSE CORPORATIONS WERE

11:34AM  16   BUSINESS PARTNERS, THEY WERE PART OF A PLAN TO DO SOME BUSINESS

11:34AM  17   IN ADVANCE OF BUSINESS, BUT THEY WERE ALSO GIVEN, AS I

11:34AM  18   UNDERSTAND IT, OPTIONS TO PURCHASE SECURITIES IN THE COMPANY.

11:34AM  19          AND IF I'M NOT MISTAKEN, THEY ACTUALLY DID TRANSFER

11:34AM  20   SIGNIFICANT SUMS OF DOLLARS FOR THE PURCHASE OF THOSE

11:34AM  21   SECURITIES.

11:34AM  22          DOES THAT MAKE THEM AN INVESTOR?

11:34AM  23          MR. LEMENS:  I THINK IT'S CORRECT TO SAY THAT THEY

11:34AM  24   HAD A CONVERTIBLE NOTE THAT AT SOME POINT IN THE FUTURE COULD

11:34AM  25   BE CONVERTED INTO EQUITY.

11:34AM  1          NEITHER OF THOSE ENTITIES APPEAR ON THE SHAREHOLDER'S

11:34AM  2     LIST, SO NEITHER OF THEM HELD SHARES, NEITHER OF THEM WERE

11:34AM  3     EQUITY SHAREHOLDERS LIKE THE INVESTORS IN THE INDICTMENT.

11:34AM  4          AND THE NOTES THEMSELVES, I THINK IF WE WERE TO GET INTO

11:34AM  5     THE DETAILS, ARE VERY DIFFERENT.  THERE ARE CONDITIONS ON

11:35AM  6     EXERCISE, THERE ARE TERMINATION RIGHTS, THERE'S A -- YOU KNOW,

11:35AM  7     THE GOVERNMENT ATTACHED -- YOU KNOW, THE AGREEMENTS THEMSELVES,

11:35AM  8     THEY'RE DENSE EXTENDED CONTRACTS THAT DEFINE THAT RELATIONSHIP.

11:35AM  9     AND IT BECOMES -- YOU KNOW, WHEN YOU START TO LOOK IN AND LOOK

11:35AM  10    AT THE DETAILS, THEY ARE VERY DIFFERENT THAN THE OUTSIDE

11:35AM  11    INVESTORS WHO ARE IDENTIFIED IN THE PRIOR INDICTMENT WHO SIMPLY

11:35AM  12    GAVE MONEY AND TOOK EQUITY IN THAT NORMAL UNDERSTANDING OF

11:35AM  13    INVESTOR.

11:35AM  14          THE COURT:  RIGHT.  IT'S A DIFFERENT TYPE OF

11:35AM  15    INVESTMENT, I AGREE.  I THINK THAT'S WHAT WE'VE LEARNED.

11:35AM  16       BUT IT'S AN INVESTMENT NONETHELESS, IS IT?

11:35AM  17          MR. LEMENS:  I THINK YOU'RE RIGHT THAT IT'S A

11:35AM  18    DIFFERENT, AND WE WOULD SAY A SIGNIFICANTLY DIFFERENT, TYPE OF

11:35AM  19    INVESTMENT AND TYPE OF RELATIONSHIP.

11:35AM  20          THE COURT:  OKAY.  OKAY.  ALL RIGHT.  THANK YOU.

11:35AM  21          MR. LEMENS:  IF I MIGHT MAKE JUST ONE POINT,

11:35AM  22    YOUR HONOR?

11:35AM  23          THE COURT:  SURE.

11:35AM  24          MR. LEMENS:  I THINK THE NATURE, WHILE WE'RE IN THE

11:36AM  25    NOTICE REALM, THE NATURE OF THE CHANGE, THE BOARD MEMBERS AND

11:36AM  1    BUSINESS PARTNERS, IN ADDITION TO LEARNING A LITTLE BIT MORE

11:36AM  2    ABOUT WHAT THIS THEORY IS, THE STATEMENTS THAT ARE ALLEGED TO

11:36AM  3    BE MADE FOR THE PURPOSES OF SOLICITING THOSE INVESTMENTS IS

11:36AM  4    IMPORTANT FOR THE GOVERNMENT TO DISCLOSE.

11:36AM  5         WALGREENS AND SAFEWAY RECEIVED HUNDREDS IF NOT THOUSANDS

11:36AM  6    OF STATEMENTS AND HAD NUMEROUS INTERACTIONS WITH THE COMPANY

11:36AM  7    THAT HAD NOTHING TO DO WITH THE, THE EARLY TRANSACTIONS THAT

11:36AM  8    THE GOVERNMENT HAS IDENTIFIED.  AND I THINK THE BOARD MEMBERS,

11:36AM  9    IT SHOULD BE VERY OBVIOUS AS TO THE NATURE OF THAT

11:36AM  10   RELATIONSHIP, WENT MUCH FARTHER THAN JUST SOLICITING AN

11:36AM  11   INVESTMENT AND LIKEWISE, FOR THE GOVERNMENT TO IDENTIFY THE

11:36AM  12   DUTY TO DISCLOSE THEORY IT WOULD PURSUE.

11:36AM  13        THE COURT:  WELL, THAT'S NEXT, ISN'T IT, TO TALK

11:36AM  14   ABOUT THAT.  DO YOU WANT TO MENTION THAT NOW?

11:36AM  15        MR. LEMENS:  ONLY TO THE EXTENT THAT IF THAT IS, IF

11:36AM  16   THAT IS STILL ON THE TABLE, IT'S SOMETHING THAT SHOULD BE

11:36AM  17   CLARIFIED BECAUSE I DON'T THINK THAT YOU CAN SAY WALGREENS,

11:37AM  18   SAFEWAY, AND THE BOARD MEMBERS HAD THIS SAME DUTY AS OUTSIDE

11:37AM  19   INVESTORS TO THE EXTENT THAT IT DID.

11:37AM  20        THE COURT:  OKAY.  AND I'M CURIOUS ALSO, MY COMMENT

11:37AM  21   ABOUT WHETHER OR NOT THAT -- THIS DUTY TO DISCLOSE THEN,

11:37AM  22   WHETHER THERE WAS A DUTY TO DISCLOSE, WHETHER THAT'S SOMETHING

11:37AM  23   THAT WOULD COME UP DURING TRIAL, DURING IN LIMINES?  IS THAT A

11:37AM  24   RULE 29 ISSUE?

11:37AM  25        I KNOW THERE'S SOME CASE LAW IN THIS DISTRICT ABOUT THAT.

11:37AM  1    IT'S A FACTUAL DETERMINATION, ISN'T IT?  AND PERHAPS THAT IS

11:37AM  2    BEST PLACED IN A JURY INSTRUCTION FOLLOWING IN LIMINE MOTIONS.

11:37AM  3         MR. LEMENS:  AGAIN, YOUR HONOR, I THINK WE'RE IN THE

11:37AM  4    SAME PLACE WHERE ONCE WE KNOW WHAT THE DUTY IS ALLEGED TO BE,

11:37AM  5    WE CAN ADDRESS THE LEGAL SUFFICIENCY.

11:37AM  6         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11:37AM  7    LET ME TURN TO MR. BALWANI'S TEAM.  ANYBODY THAT NEEDS TO

11:38AM  8    OFFER ANYTHING BEFORE I TURN TO THE GOVERNMENT?

11:38AM  9    I DON'T SEE ANY HANDS RAISED.

11:38AM 10    WELL, LET'S TURN --

11:38AM 11         MR. COOPERSMITH:  WELL, YOUR HONOR, ONE QUICK THING.

11:38AM 12         THE COURT:  YES, MR. COOPERSMITH.

11:38AM 13         MR. COOPERSMITH:  YES.  JUST TO POINT OUT ONE QUICK

11:38AM 14    THING, AND IT'S IN THE BRIEFS SO THE COURT HAS THAT.  BUT OUR

11:38AM 15    UNDERSTANDING OF THE FACTS IS THAT AS TO WALGREENS AND SAFEWAY

11:38AM 16    THEY DIDN'T ACTUALLY BUY ANY EQUITY OR EXECUTE NOTES.  SO I

11:38AM 17    JUST WANTED TO POINT THAT OUT.

11:38AM 18         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11:38AM 19    MR. BOSTIC, ARE YOU SPEAKING TO 496 ON BEHALF OF THE

11:38AM 20    GOVERNMENT?

11:38AM 21         MR. BOSTIC:  I AM, YOUR HONOR.  THANK YOU AND GOOD

11:38AM 22    MORNING.

11:38AM 23         THE COURT:  GOOD MORNING.

11:38AM 24         MR. BOSTIC:  I THINK AS AN INITIAL MATTER, JUST TO

11:38AM 25    PUT THIS ALL IN CONTEXT, WE SHOULD START WITH THE LANGUAGE IN

11:38AM   1    THE INDICTMENT THAT HAS LED TO THIS DISPUTE.

11:38AM   2        THIS IS ALL RELATING TO ONE SENTENCE IN PARAGRAPH 3 OF THE

11:38AM   3    THIRD SUPERSEDING INDICTMENT.  THAT PARAGRAPH IS PROVIDING SOME

11:38AM   4    PRELIMINARY FACTS ABOUT THERANOS, WHERE IT WAS INCORPORATED,

11:38AM   5    WHERE IT DID ITS BANKING, AND THEN IT SAYS IT ALSO RECEIVED

11:39AM   6    FINANCIAL INVESTMENTS FROM INVESTORS.

11:39AM   7        IT THEN SAYS, "THERANOS'S INVESTORS INCLUDED INDIVIDUALS,

11:39AM   8    ENTITIES, CERTAIN BUSINESS PARTNERS, MEMBERS OF ITS BOARD OF

11:39AM   9    DIRECTORS AND INDIVIDUALS AND ENTITIES WHO INVESTED THROUGH

11:39AM   10   FIRMS FORMED FOR THAT EXCLUSIVE PURPOSE."

11:39AM   11       THE DEFENSE READS THIS LANGUAGE AS A NEW DEFINITION OR A

11:39AM   12   SPECIALIZED DEFINITION OF "INVESTORS," BUT THAT IS SIMPLY NOT

11:39AM   13   THE CASE.

11:39AM   14       AND IN MAKING THAT ARGUMENT, THEY RELY ON SEMANTIC POINTS

11:39AM   15   ABOUT HOW THEY VIEW THAT LANGUAGE.  THEY ALSO RELY ON PREVIOUS

11:39AM   16   REPRESENTATIONS BY THE GOVERNMENT AND THINGS THAT HAVE BEEN

11:39AM   17   DISCLOSED IN BRIEFING.

11:39AM   18       BUT AS THE COURT HAS PREVIOUSLY RECOGNIZED, WHEN JUDGING

11:39AM   19   THE SUFFICIENCY OF AN INDICTMENT, WE'RE LIMITED TO THE FOUR

11:39AM   20   CORNERS.

11:39AM   21       AND WHEN WE LOOK AT THE LANGUAGE ITSELF, IT SIMPLY DOESN'T

11:39AM   22   PURPORT TO DO WHAT THE DEFENDANTS CLAIM IT DOES.  IT DOES NOT

11:39AM   23   CHANGE THE DEFINITION OF "INVESTORS."  INSTEAD, IT SAYS THAT

11:40AM   24   THERANOS HAD INVESTORS.  AND WHEN LOOKING AT THE LIST OF

11:40AM   25   THERANOS INVESTORS, YOU WILL SEE THE FOLLOWING.  YOU WILL SEE

11:40AM  1      INDIVIDUALS, YOU WILL SEE ENTITIES, YOU WILL SEE BUSINESS

11:40AM  2      PARTNERS, MEMBERS OF ITS BOARD OF DIRECTORS AND SO ON.

11:40AM  3          IT'S SIMPLY MAKING EXPLICIT THAT THOSE DIFFERENT TYPE OF

11:40AM  4      ENTITIES WERE INCLUDED IN THE INDIVIDUALS AND ENTITIES WHO

11:40AM  5      INVESTED IN THERANOS.

11:40AM  6          IT DOESN'T MEAN THAT AS TO ANY BUSINESS PARTNER OR ANY

11:40AM  7      BOARD OF DIRECTORS MEMBER THE DEFENSE IS LEFT TO GUESS AS TO

11:40AM  8      WHETHER THAT PERSON OR ENTITY IS AN INVESTOR.  INVESTOR STILL

11:40AM  9      MEANS INVESTOR.  THEY'RE NOT LEFT TO GUESS IN THE SAME WAY THAT

11:40AM  10     THEY'RE NOT LEFT TO GUESS WHETHER ANY INDIVIDUAL OR ENTITY IN

11:40AM  11     THE WORLD MIGHT QUALIFY AS A THERANOS INVESTOR.

11:40AM  12         WHEN THE DEFENSE TRIES TO READ IN NARROWER READING OF THE

11:40AM  13     TERM "INVESTOR" TO SAY, FOR EXAMPLE, THAT INVESTOR NEEDS TO BE

11:40AM  14     AN OUTSIDE INVESTOR, IT NEEDS TO BE AN INDIVIDUAL OR AN ENTITY

11:41AM  15     WHO ONLY HAD AN INVESTOR RELATIONSHIP WITH THERANOS, IT NEEDED

11:41AM  16     TO BE AN ARMS LENGTH TRANSACTION.

11:41AM  17         WELL, NOW WE HAVE THE DEFENSE WHO ACTUALLY IS THE ONE

11:41AM  18     TRYING TO READ IN A SPECIALIZED, A NARROWER, A DIFFERENT

11:41AM  19     DEFINITION OF THAT TERM "INVESTOR."

11:41AM  20         SO THE REASON THAT THE DEFENSE'S ARGUMENTS ULTIMATELY LACK

11:41AM  21     MERIT, THE REASON THAT A BILL OF PARTICULARS IS NOT NECESSARY,

11:41AM  22     AND THE REASON THAT THE GOVERNMENT HASN'T PROVIDED A MORE

11:41AM  23     COMPLEX DEFINITION OF INVESTORS IN CONNECTION WITH THE

11:41AM  24     INDICTMENT IS THAT THERE IS NO MORE COMPLEX DEFINITION.

11:41AM  25     INVESTORS MEANS INDIVIDUALS WHO PAID MONEY AND IN EXCHANGE

11:41AM  1    RECEIVED THERANOS SECURITIES, AND THAT'S THE DEFINITION

11:41AM  2    PROVIDED IN THE GOVERNMENT'S BRIEFING.  THAT WOULD BE A NORMAL

11:41AM  3    DEFINITION OF THE TERM, AND THAT DEFINITION INCLUDES

11:41AM  4    INDIVIDUALS, ENTITIES, BUSINESS PARTNERS, WALGREENS AND

11:42AM  5    SAFEWAY, AS WELL AS CERTAIN MEMBERS OF THE BOARD OF DIRECTORS.

11:42AM  6             THE COURT:  I APPRECIATE, MR. BOSTIC, THE DEFENSE

11:42AM  7    MIGHT BE A LITTLE UNEASY OR INSECURE IN RECOGNIZING THAT WE

11:42AM  8    LOOKED AT THIS INDICTMENT THROUGH ONE LENS AND NOW IN ITS THIRD

11:42AM  9    ITERATION THE GOVERNMENT IS ALLEGED THIS NEW RELATIONSHIP, FROM

11:42AM  10   THEIR EYES A NEW RELATIONSHIP, BETWEEN WALGREENS AND SAFEWAY,

11:42AM  11   AND THAT'S SOMETHING THAT WE HADN'T REALIZED BEFORE.

11:42AM  12        WE BETTER -- THE BASIS OF THIS MOTION IS LET'S GET

11:42AM  13   DEFINITIONS OF WHO THE PARTIES REALLY ARE BEFORE WE GO FORWARD

11:42AM  14   BECAUSE WE DON'T WANT TO FACE THIS ISSUE AGAIN.

11:42AM  15        I GUESS THEY SUGGEST THAT THE LANGUAGE IN THE INDICTMENT

11:42AM  16   IS BROAD ENOUGH THAT THE GOVERNMENT COULD, AND I'M NOT

11:42AM  17   SUGGESTING YOU WOULD OR THAT THIS WOULD HAPPEN, BUT MY SENSE IS

11:42AM  18   THAT THEY'RE CONCERNED ABOUT SURPRISE THAT THERE MIGHT BE OTHER

11:42AM  19   ENTITIES WHO WOULD BE INCLUDED UNDER THE UMBRELLA OF INVESTORS

11:43AM  20   OR BUSINESS PARTNERS.

11:43AM  21        AND MY SENSE IS THAT THIS TEAM, THIS DEFENSE TEAM IS UP TO

11:43AM  22   THE CHALLENGE.  THEY JUST WANT TO KNOW WHAT IS THE LINEUP ON

11:43AM  23   THE OTHER SIDE OF THE ICE SO THAT THEY CAN PROPERLY PREPARE.

11:43AM  24             MR. BOSTIC:  AND WE'RE CERTAINLY NOT LOOKING TO

11:43AM  25   SURPRISE THE DEFENSE AT TRIAL, YOUR HONOR.  WE'RE TRYING TO BE

11:43AM 1    TRANSPARENT, BUT I THINK THE DEFENSE IS OVERTHINKING IT.  TO AN

11:43AM 2    EXTENT THAT'S THEIR JOB.

11:43AM 3         BUT I THINK TO THE EXTENT THAT THEY VIEWED "INVESTORS" AS

11:43AM 4    OVERLY NARROW BEFORE THE INDICTMENT INCLUDED THIS ADDITIONAL

11:43AM 5    CLARIFICATION, TO THE EXTENT THEY HAD A NARROW DEFINITION OF

11:43AM 6    INVESTORS, I THINK THAT WAS BASED ON A MISINTERPRETATION OF THE

11:43AM 7    INFORMATION PROVIDED BY THE GOVERNMENT.

11:43AM 8         FOR EXAMPLE, AS I THINK THE COURT HAS NOTED, THERE'S NO

11:43AM 9    REASON WHY AN ENTITY DESCRIBED BY THE GOVERNMENT AS A BUSINESS

11:43AM 10   PARTNER CANNOT ALSO BE AN INVESTOR.  THAT'S NOT HOW LOGIC

11:43AM 11   WORKS.

11:44AM 12        BUT I THINK THE DEFENSE POSSIBLY MADE AN ERROR IN TAKING A

11:44AM 13   NARROW VIEW OF WHAT THAT TERM WOULD MEAN, ASSUMING THAT IF THE

11:44AM 14   GOVERNMENT DESCRIBED AN ENTITY AS A BUSINESS PARTNER, THAT IT

11:44AM 15   COULD NOT ALSO BE AN INVESTOR, BUT THAT'S NOT THE CASE.

11:44AM 16        WHETHER A GIVEN PARTY IS, IN FACT, AN INVESTOR OR NOT IS A

11:44AM 17   FACTUAL QUESTION.  AND THE GOVERNMENT HAS PROVIDED THE EVIDENCE

11:44AM 18   TO THE DEFENSE THAT THEY NEED TO MAKE THAT DETERMINATION, AND

11:44AM 19   THE GOVERNMENT HAS HIGHLIGHTED IT IN THE BRIEFS AS WELL.

11:44AM 20        SO TO THE GOVERNMENT'S KNOWLEDGE WHEN WE'RE LOOKING AT WHO

11:44AM 21   WERE THE ACTUAL VICTIMS OF THE SCHEME TO DEFRAUD INVESTORS,

11:44AM 22   THAT'S GOING TO BE INDIVIDUALS AND ENTITIES WHO PAID MONEY AND

11:44AM 23   RECEIVED SECURITIES.  THAT INCLUDES THE INDIVIDUALS ON THE

11:44AM 24   THERANOS STOCK LEDGER.  IT ALSO INCLUDES SAFEWAY AND WALGREENS

11:44AM 25   WHO DID PAY LARGE SUMS OF MONEY, AS THE COURT NOTED, AND

11:44AM 1      RECEIVED THERANOS SECURITIES IN RETURN.  THERE'S NO REASON WHY

11:44AM 2      THEY SHOULD NOT BE INCLUDED IN THAT DEFINITION.

11:45AM 3           AND ALTHOUGH THEY HAD DIFFERENT RELATIONSHIPS WITH

11:45AM 4      THERANOS IN ADDITION TO THEIR INVESTOR RELATIONSHIP, WHEN IT

11:45AM 5      COMES TO DEFENDANTS' SCHEME TO DEFRAUD INVESTORS, DEFENDANTS

11:45AM 6      HAD THE SAME INTENT AS TO WALGREENS AND SAFEWAY AS THEY DID TO

11:45AM 7      THE INDIVIDUALS AND ENTITIES WHO WERE ONLY INVESTORS.

11:45AM 8           THEY HAD AN INTENT TO DECEIVE THOSE ENTITIES AND TO INDUCE

11:45AM 9      THEM INTO INVESTING INTO THE COMPANY, TO GIVING THERANOS MONEY

11:45AM 10     IN EXCHANGE FOR THOSE SECURITIES.  AND BECAUSE IT'S ALL PART OF

11:45AM 11     THE SAME SCHEME TO DEFRAUD, THIS DOESN'T REPRESENT AN EXPANSION

11:45AM 12     OF THE INDICTMENT.  THE DEFENDANTS HAD BEEN ON NOTICE, AND

11:45AM 13     THEY'RE NOT LEFT TO GUESS AS TO WHAT CHARGES THEY'LL BE FACING

11:45AM 14     AT TRIAL.

11:45AM 15           THE COURT:  ALL RIGHT.  THANK YOU.

11:45AM 16     MR. LEMENS, THAT BRINGS YOU GREAT COMFORT?

11:45AM 17           MR. LEMENS:  I THINK THE QUESTIONS WE WALKED IN

11:45AM 18     WITH, YOUR HONOR, WE STILL HAVE.  AS MUCH AS I APPRECIATE

11:45AM 19     MR. BOSTIC'S COMMENTS, HE HASN'T -- AND THE GOVERNMENT HAS NOT

11:46AM 20     CLARIFIED WHAT YOU AND I WERE DISCUSSING ABOUT THE BOARD

11:46AM 21     MEMBERS I THINK IS THE ISSUE HERE.  AND I DON'T -- I DIDN'T

11:46AM 22     HEAR AN EXPLANATION AS TO THE STATEMENTS IN THE DUTY TO

11:46AM 23     DISCLOSE DESPITE A RECOGNITION THAT THESE WERE DIFFERENT

11:46AM 24     RELATIONSHIPS WITH THE BUSINESS PARTNERS, WITH THE BOARD

11:46AM 25     MEMBERS AND WITH THE OUTSIDE INVESTORS.

```
11:46AM   1        SO I DARE SAY THE ISSUES REMAIN, BUT I DON'T HAVE ANYTHING
11:46AM   2   ELSE TO ADD OTHER THAN WE ARE SEEKING THIS INFORMATION ASSUMING
11:46AM   3   THE COURT IS NOT GOING TO DISMISS THE INDICTMENT IN A BILL OF
11:46AM   4   PARTICULARS.  SO WE'RE READY FOR TRIAL.
11:46AM   5             THE COURT:  OKAY.
11:46AM   6             MR. BOSTIC:  YOUR HONOR, I'M HAPPY TO ADDRESS THOSE
11:46AM   7   POINTS FURTHER IF THE COURT WOULD LIKE.
11:46AM   8             THE COURT:  YES, I WAS GOING TO TURN TO YOU,
11:46AM   9   MR. BOSTIC, ABOUT THE DUTY.  WHY DON'T YOU SPEAK ABOUT THE
11:46AM  10   DUTY.  THE COURT SPOKE ABOUT THAT IN ITS ORDERS IN THE MOTION,
11:46AM  11   AND I THINK THE DEFENSE COMMENTED ON THAT ALSO.
11:47AM  12        SO WHAT ABOUT THAT DUTY, THE DUTY TO DISCLOSE?
11:47AM  13             MR. BOSTIC:  YES, YOUR HONOR.
11:47AM  14        THE COURT IS ABSOLUTELY CORRECT THAT THIS WAS PREVIOUSLY
11:47AM  15   DISCUSSED.  THE DEFENSE ARGUED IN THE PAST THAT THE INDICTMENTS
11:47AM  16   DID NOT SUFFICIENTLY ALLEGE A DUTY TO DISCLOSE.
11:47AM  17        THE COURT REJECTED THAT ARGUMENT.  THE COURT EXAMINED THE
11:47AM  18   INDICTMENT, WHICH IN THAT RESPECT IS THE SAME AS THE CURRENT
11:47AM  19   OPERATIVE INDICTMENT.  AND THE COURT FOUND THAT THE INDICTMENT
11:47AM  20   SUFFICIENTLY ALLEGED BOTH A DUTY OF TRUST AND ALSO A
11:47AM  21   HALF-TRUTH THEORY ARISING OR LEADING TO A DUTY TO DISCLOSE.
11:47AM  22        AND SPECIFICALLY THE COURT POINTED TO ALLEGATIONS IN THE
11:47AM  23   INDICTMENT THAT SHOWED THAT DEFENDANTS MADE MISREPRESENTATIONS
11:47AM  24   THAT ONLY PROVIDED PART OF THE INFORMATION AND WITHHELD THE
11:47AM  25   REST.
```

11:47AM 1      THE INDICTMENT ALSO MENTIONS DECEPTIVE TECHNOLOGY DEMOS

11:47AM 2  THAT CAUSED INDIVIDUALS TO BELIEVE THAT THE TECHNOLOGY WORKED

11:48AM 3  RELAXING THEIR NORMAL LEVEL OF DILIGENCE AND SKEPTICISM.

11:48AM 4      THE COURT ALSO MENTIONED THAT THE INDICTMENT INCLUDES

11:48AM 5  ALLEGATIONS THAT THE DEFENDANTS MISREPRESENTED THEIR

11:48AM 6  RELATIONSHIPS WITH OTHER ENTITIES LIKE THE FDA IN AN EFFORT TO

11:48AM 7  FURTHER PERSUADE AND INDUCE INVESTOR VICTIMS TO RELAX AND

11:48AM 8  BELIEVE THAT THERANOS HAD BEEN PREVALIDATED OR THAT IT WAS BONA

11:48AM 9  FIDE.

11:48AM 10     THOSE SAME ALLEGATIONS THAT THE COURT FOUND SUFFICIENT IN

11:48AM 11 THE LAST ROUND OF BRIEFING APPLY EQUALLY TO THE ENTIRE SET OF

11:48AM 12 INVESTORS ALLEGED IN THIS CASE.

11:48AM 13     SO WHEN IT COMES TO WALGREENS AND SAFEWAY, AND AGAIN, THIS

11:48AM 14 IS AN EVIDENCE ISSUE, AND THIS IS NOT THE STAGE TO BE

11:48AM 15 PREJUDGING THE TRIAL EVIDENCE.  BUT JUST TO CLARIFY, THERE'S NO

11:48AM 16 REASON TO READ THE INDICTMENT AS ALLEGING A DIFFERENT THEORY OF

11:48AM 17 DUTY TO DISCLOSE AS TO WALGREENS OR SAFEWAY AS IT DOES TO THOSE

11:49AM 18 PREVIOUS INVESTORS.  IT DOESN'T DO THAT.  THE THEORY IS THE

11:49AM 19 SAME.  IT'S THE SAME THEORY THAT THE COURT FOUND PREVIOUSLY

11:49AM 20 SUFFICIENT.

11:49AM 21     I ALSO JUST HAD SOME POINTS TO MAKE ABOUT THE REQUEST FOR

11:49AM 22 A BILL OF PARTICULARS, BUT I DON'T WANT TO MOVE ON TO THAT

11:49AM 23 UNLESS THE COURT --

11:49AM 24          THE COURT:  NO.  WHY DON'T YOU -- THAT WAS MY SECOND

11:49AM 25 QUESTION.

11:49AM  1        BUT BEFORE WE DO THAT, I MENTIONED EARLIER TO MR. LEMENS,

11:49AM  2    IT SEEMS LIKE THIS DUTY TO DISCLOSE, THE ALLEGED DUTY TO

11:49AM  3    DISCLOSE, IT SEEMS LIKE IT'S MORE APPROPRIATE FOR THE TRIAL.

11:49AM  4    AND, YOU KNOW, THE SHIELDS CASE, 844 FED. 3D AND THE MILANOVICH

11:49AM  5    TRIAL AT 678 FED. 3D TELL US THAT THAT'S THE APPROPRIATE AREA

11:49AM  6    TO PROCEED IF NOT AN INSTRUCTION BUT A RULE 29 TYPE MOTION.

11:49AM  7        BUT LET ME ASK YOU TO -- WHY SHOULDN'T -- WOULDN'T A BILL

11:49AM  8    OF PARTICULARS JUST CLEAR THIS UP?  AND WHY WOULDN'T YOU AGREE

11:49AM  9    THAT A NOMINAL BILL OF PARTICULARS THAT MEMORIALIZES WHAT WE'VE

11:50AM 10    TALKED ABOUT HERE AS WE IDENTIFY THE CLASS OF INDIVIDUALS, THAT

11:50AM 11    IS, THE CLASS OF INVESTORS WHO PURCHASED SECURITIES FOR CASH

11:50AM 12    MONEY, INVESTORS WHO RECEIVE -- EXCUSE ME, BUSINESS PARTNERS

11:50AM 13    WHO MADE INVESTMENTS OF A DIFFERENT TYPE OF A SECURITY, AND

11:50AM 14    THEN SEGREGATING AND PARSING OUT THOSE WHO -- BOARD MEMBERS WHO

11:50AM 15    RECEIVED THEIR COMPENSATION IN THE FORM OF SECURITIES, THAT CAN

11:50AM 16    BE DONE IN ONE PAGE OF A BILL OF PARTICULARS I WOULD THINK.

11:50AM 17        WHY SHOULDN'T WE DO THAT?

11:50AM 18        MR. BOSTIC:  ONLY BECAUSE IT'S NOT NECESSARY,

11:50AM 19    YOUR HONOR.

11:50AM 20        WHEN THE COURT PREVIOUSLY CONSIDERED WHETHER TO REQUIRE A

11:50AM 21    BILL OF PARTICULARS ON THE INVESTOR SIDE OF THE ALLEGATIONS IN

11:50AM 22    THIS CASE, THE COURT FOUND THAT THE ORIGINAL INDICTMENTS STATED

11:50AM 23    THE ACTS UNDERLYING THE INVESTOR SCHEME, AND THAT WAS

11:50AM 24    SUFFICIENT TO ACCOMPLISH THE GOALS OF THE CHARGING DOCUMENT AND

11:51AM 25    THAT A BILL OF PARTICULARS WASN'T NECESSARY.

11:51AM 1      THE SAME IS TRUE HERE.  THERE'S NO REQUIREMENT THAT AN

11:51AM 2   INDICTMENT IDENTIFY EVERY SINGLE INDIVIDUAL WHO ENDED UP BEING

11:51AM 3   A VICTIM OF A SCHEME TO DEFRAUD.

11:51AM 4      INSTEAD, THE REQUIREMENT FOR THE INDICTMENT IS THAT IT

11:51AM 5   IDENTIFY THE SCHEME ITSELF WITH ENOUGH PARTICULARITY THAT THE

11:51AM 6   DEFENDANT KNOWS AND CAN PREPARE FOR TRIAL AND ALSO, OF COURSE,

11:51AM 7   DEFEND AGAINST POTENTIAL DUPLICATIVE PROSECUTION DOWN THE ROAD.

11:51AM 8      THE THIRD SUPERSEDING INDICTMENT ACHIEVES THOSE GOALS THE

11:51AM 9   SAME WAY THAT THE PREVIOUS VERSIONS OF THE INDICTMENT DID.

11:51AM 10      IT DESCRIBES THE SPECIFIC MISREPRESENTATIONS THAT THE

11:51AM 11   DEFENDANTS MADE OR RATHER THE SUBSTANCE OF THOSE

11:51AM 12   MISREPRESENTATIONS.  IT SAYS THAT THEY WERE MADE TO INVESTORS.

11:51AM 13      THE TERM "INVESTORS" HAS ITS COMMON MEANING, THE SAME

11:51AM 14   MEANING THAT IT HAD BACK WHEN THOSE PREVIOUS INDICTMENTS WERE

11:51AM 15   RETURNED BY THE GRAND JURY.

11:51AM 16      AND SO AS THE COURT PREVIOUSLY RECOGNIZED, GIVEN THAT AN

11:52AM 17   INDICTMENT IS TO BE READ WITH COMMON SENSE AND THAT SPECIFIC

11:52AM 18   ALLEGATIONS ARE NOT THE STANDARD, THAT INSTEAD IT'S ONLY

11:52AM 19   NECESSARY THAT THE PARTICULARS OF THE SCHEME MUST BE DESCRIBED,

11:52AM 20   THE CURRENT INDICTMENT MEETS THAT STANDARD.

11:52AM 21      THE COURT PREVIOUSLY FOUND THAT THE INVESTOR FRAUD

11:52AM 22   ALLEGATIONS DESCRIBE THE SPECIFIC TYPE OF MISREPRESENTATIONS AT

11:52AM 23   ISSUE AND THAT THAT WAS SUFFICIENT.

11:52AM 24      HERE, WHEN WE'RE TALKING ABOUT THE IDENTITIES OF THE

11:52AM 25   VICTIMS, THAT WILL BE IMPORTANT WHEN IT COMES TIME TO DISCUSS

11:52AM  1    RESTITUTION, FOR EXAMPLE.  BUT AT THIS STAGE, AGAIN, THE FOCUS

11:52AM  2    SHOULD PROPERLY BE ON THE NATURE OF THE SCHEME ITSELF.  THERE

11:52AM  3    ARE INDIVIDUALS WHO ENDED UP BEING VICTIMS.  THERE'S A LARGER

11:52AM  4    SET OF INDIVIDUALS WHO WERE TARGETED, OF COURSE.  A SCHEME TO

11:52AM  5    DEFRAUD INVESTORS INCLUDES EFFORTS BY THE DEFENDANTS TO MAKE

11:52AM  6    OTHER INDIVIDUAL INVESTORS.

11:52AM  7        SO THIS IS NOTHING THAT IS UNIQUE TO THIS CASE.  AND

11:53AM  8    BECAUSE THE DEFENSE HAS THE INFORMATION IT NEEDS TO IDENTIFY

11:53AM  9    THOSE INVESTORS, AGAIN, UNDER THE STANDARD DEFINITION A BILL OF

11:53AM 10    PARTICULARS ISN'T NECESSARY.

11:53AM 11        I'LL ALSO NOTE THAT RECENTLY THE GOVERNMENT PROVIDED A

11:53AM 12    SUPPLEMENT TO ITS 404(B) NOTICE.  THAT WAS A VERY LENGTHY AND

11:53AM 13    THOROUGH DISCLOSURE TO THE DEFENDANTS, AND IT CONTAINED VERY

11:53AM 14    SUBSTANTIAL SECTIONS DETAILING FALSE STATEMENTS MADE TO BOTH

11:53AM 15    SAFEWAY AND WALGREENS.  SO THAT INFORMATION IS, AGAIN,

11:53AM 16    AVAILABLE TO THE DEFENSE.

11:53AM 17             THE COURT:  ALL RIGHT.  THANK YOU.

11:53AM 18        MR. LEMENS, ANYTHING IN CLOSING BEFORE WE -- I KNOW WE

11:53AM 19    HAVE TALKED ABOUT THIS 496.  I KNOW THAT WE HAVE CROSSED OVER A

11:53AM 20    LITTLE BIT AS TO 497.

11:53AM 21        BUT ANYTHING FURTHER BEFORE I GIVE YOU AN OPPORTUNITY TO

11:53AM 22    SPEAK, ANYTHING FURTHER ON THE DUPLICITOUS MOTION?

11:53AM 23             MR. LEMENS:  SURE, YOUR HONOR.  I THINK I WILL TRY

11:53AM 24    TO FIND SOME AREA OF AGREEMENT WITH MR. BOSTIC THAT THE NATURE

11:53AM 25    OF THE SCHEME IS IMPORTANT.  WE THINK THAT THAT HASN'T

11:54AM  1    SUFFICIENTLY BEEN ALLEGED OR EXPLAINED EITHER UNDER THE

11:54AM  2    INDICTMENT OR SUBSEQUENT CORRESPONDENCE.

11:54AM  3         AND WE'RE STILL IN THE SAME PLACE WITH RESPECT TO THE

11:54AM  4    BOARD MEMBERS.  THERE'S NO DISCUSSION OF THE SPECIFIC ISSUES

11:54AM  5    THAT WE HAVE RAISED IN THE INDICTMENT ITSELF.  THERE'S NO

11:54AM  6    EXEMPLARY -- THERE ARE NO BOARD WIRES THAT ARE ALLEGED OR

11:54AM  7    IDENTIFIED, THERE'S NO DISCUSSION OF THE EXTENT OF THE SCHEME

11:54AM  8    WITH RESPECT TO THE BOARD MEMBERS.

11:54AM  9         SO I DO THINK A BILL OF PARTICULARS AT THE VERY LEAST IS

11:54AM 10    NECESSARY TO CLARIFY THE ISSUES, BUT I THINK WE HAVE MORE THAN

11:54AM 11    COVERED EVERYTHING ELSE, AND I APPRECIATE YOUR HONOR'S TIME AND

11:54AM 12    ATTENTION.

11:54AM 13              THE COURT:  OKAY.  THANK YOU.

11:54AM 14         IS THERE ANYTHING YOU WANT TO ADD TO THE 497 DISCUSSION?

11:54AM 15              MR. LEMENS:  JUST VERY QUICKLY.

11:54AM 16         I THINK YOUR HONOR, IN THE COURSE OF OUR LAST

11:54AM 17    CONVERSATION, LAID OUT THE DIFFERENCES BETWEEN THESE THREE

11:54AM 18    GROUPS, THE OUTSIDE INVESTORS, THE BOARD MEMBERS, AND THE

11:54AM 19    BUSINESS PARTNERS THAT ARE ALL SWEPT INTO THIS SAME SCHEME.

11:55AM 20    IT'S THOSE DIFFERENCES THAT, IN OUR VIEW, MAKE THE COUNT

11:55AM 21    DUPLICITOUS, MAKE THE SCHEME DUPLICITOUS.

11:55AM 22         YOU HAVE VERY DIFFERENT RELATIONSHIPS, VERY DIFFERENT

11:55AM 23    TRANSACTIONS, TYPES OF TRANSACTIONS, DIFFERENT TIMEFRAME AT

11:55AM 24    ISSUE, AND IT'S -- YOU KNOW, WHEN YOU LOOK AT THE FACTORS UNDER

11:55AM 25    GORDON THAT WE'RE INSTRUCTED TO CONSIDER, WE THINK THE

11:55AM 1      GOVERNMENT IS TRYING TO BLEND THREE SCHEMES INTO ONE, WHETHER

11:55AM 2      THAT'S TO AVOID EVIDENTIARY OR STATUTE OF LIMITATIONS ISSUES,

11:55AM 3      AND THAT MAKES THE INDICTMENT DUPLICITOUS.

11:55AM 4            THE COURT:  OKAY.

11:55AM 5         MR. BOSTIC, ARE YOU SPEAKING TO THAT?

11:55AM 6         MR. LEACH, I THINK YOU ARE.

11:55AM 7            MR. LEACH:  YES, YOUR HONOR.  I HAVE RESPONSIBILITY

11:55AM 8      FOR THE DUPLICITY MOTION.  JUST VERY, VERY BRIEFLY.

11:55AM 9         OF COURSE, CLEVER LAWYERS, IF THEY HAVE FIVE DIFFERENT

11:55AM 10     INVESTORS IN ANY SCHEME OR FIVE DIFFERENT POTENTIAL INVESTORS

11:56AM 11     IN ANY SCHEME, COULD FIND DIFFERENCES BETWEEN HOW THOSE

11:56AM 12     PARTICULAR INDIVIDUALS ARE SITUATED.  BUT THAT'S NOT THE

11:56AM 13     STANDARD.

11:56AM 14        THE NINTH CIRCUIT STANDARD IS VERY CLEAR AND IT'S SET

11:56AM 15     FORTH IN MORSE, AND THE BRYAN CASE, AND THE MASTELOTTO CASE.

11:56AM 16     AND THE NINTH CIRCUIT IS VERY CLEAR THAT IF THE INDICTMENT

11:56AM 17     FAIRLY READ ALLEGES A SINGLE SCHEME IT IS SUFFICIENT.  AND YOU

11:56AM 18     CAN HAVE DISTINCT MEANS AND METHODS WITH RESPECT TO DIFFERENT

11:56AM 19     INVESTORS.  YOU CAN HAVE DISTINCT REPRESENTATIONS TO DIFFERENT

11:56AM 20     INVESTORS.  YOU CAN HAVE DIFFERENT PEOPLE.  YOU CAN HAVE IT

11:56AM 21     OVER AN EXTENDED PERIOD OF TIME.

11:56AM 22        AND ACCORDING TO THE BRYAN CASE, WHICH I THINK IS THE MOST

11:56AM 23     INSTRUCTIVE AND THE MOST ON POINT, YOU CAN HAVE DISTINCT

11:56AM 24     CLASSES OF VICTIMS.

11:56AM 25        AND SO OF COURSE THERE ARE DIFFERENCES BETWEEN SAFEWAY AND

11:56AM 1    WALGREENS AND OTHER INVESTORS, THERE ARE DIFFERENCES WITHIN THE

11:56AM 2    CLASS OF INDIVIDUAL INVESTORS, BUT THAT'S JUST NOT THE

11:57AM 3    STANDARD.  AND THERE'S NO CASE TO SUPPORT THIS NOTION THAT THE

11:57AM 4    COURT HAS TO, YOU KNOW, WEIGH ALL OF THE NUANCED DISTINCTIONS

11:57AM 5    BETWEEN DIFFERENT PEOPLE OR DIFFERENT ENTITIES.  IT'S WHAT WAS

11:57AM 6    IN THE HEAD OF THE FRAUDSTER.  IT'S HOW THE SCHEME IS ALLEGED.

11:57AM 7         AND HERE THE INDICTMENT FAIRLY READ ALLEGES A SINGLE

11:57AM 8    SCHEME TO DEFRAUD.  IT'S TO OBTAIN MONEY OR PROPERTY FROM

11:57AM 9    INVESTORS.  THE COURT HAS ASKED NUMEROUS TIMES DID SAFEWAY AND

11:57AM 10   WALGREENS MAKE AN INVESTMENT?  AND MR. LEMENS DOESN'T WANT TO

11:57AM 11   ANSWER THAT QUESTION.

11:57AM 12        IT'S ABSOLUTELY YES.  THERANOS -- OR SAFEWAY AND WALGREENS

11:57AM 13   TRANSFERRED MONEY TO THERANOS IN EXCHANGE FOR SECURITIES.  SO

11:57AM 14   DID CERTAIN BOARD MEMBERS.  IT'S -- I THINK THE -- YOU KNOW,

11:57AM 15   THIS IS REALLY MAKING SOMETHING THAT IS QUITE SIMPLE

11:57AM 16   UNNECESSARILY COMPLICATED.

11:57AM 17        SO FOR THOSE REASONS WE DON'T SEE A DUPLICITY ISSUE HERE,

11:58AM 18   AND THE COURT SHOULD DENY THE 497.

11:58AM 19        THE COURT:  THANK YOU, MR. LEACH.

11:58AM 20        AND UNLESS THERE'S ANYTHING FURTHER, MR. LEMENS, I'D LIKE

11:58AM 21   TO MOVE ON TO 499.

11:58AM 22             MR. COOPERSMITH:  YOUR HONOR, THIS IS -- IF I COULD

11:58AM 23   JUST ADD ONE QUICK THING ABOUT THE MOTION THAT WE JUST HEARD?

11:58AM 24             THE COURT:  THIS IS MR. COOPERSMITH SPEAKING?

11:58AM 25             MR. COOPERSMITH:  YES, YOUR HONOR.  THANK YOU.

11:58AM 1          THE COURT:  GO AHEAD, MR. COOPERSMITH.

11:58AM 2          MR. COOPERSMITH:  THANK YOU, YOUR HONOR.

11:58AM 3      SO JUST TO ILLUSTRATE THE DIFFERENCES, BUT IT REALLY GOES

11:58AM 4  TO THIS POINT ABOUT DUTY TO DISCLOSE AS WELL AND THAT IS THAT

11:58AM 5  WE UNDERSTAND, OF COURSE, IN THE COURT'S PRIOR RULING YOUR

11:58AM 6  HONOR FOUND THAT THERE WAS A DUTY SUFFICIENTLY AKIN TO A

11:58AM 7  FIDUCIARY DUTY TO ALLOW OMISSIONS TO BE -- TO GO FORWARD.

11:58AM 8      AND THAT WAS WHEN WE WERE TALKING ABOUT INVESTORS THAT ARE

11:58AM 9  COMMONLY UNDERSTOOD AS PEOPLE OUTSIDE OF THERANOS WHO PUT IN

11:58AM 10 MONEY IN EXCHANGE FOR SECURITIES.

11:58AM 11     NOW WE'RE TALKING ABOUT VERY DIFFERENT TYPES OF INVESTORS,

11:59AM 12 WALGREENS, SAFEWAY, AND THEN THE BOARD MEMBERS.  OBVIOUSLY WE

11:59AM 13 RESPECTFULLY DISAGREE WITH THE COURT'S PRIOR RULING.

11:59AM 14     BUT MOVING ON TO THESE OTHER INVESTORS, WE'RE TALKING

11:59AM 15 ABOUT PEOPLE IN THE CASE OF SAFEWAY, WALGREENS WHO HAD HEAVY

11:59AM 16 DUE DILIGENCE RIGHTS, WHO HAD VERY DIFFERENT RELATIONSHIPS WITH

11:59AM 17 THERANOS.  AND THE BOARD MEMBERS, IT'S VERY HARD FOR ME TO

11:59AM 18 UNDERSTAND HOW THERANOS WOULD HAVE ANY SORT OF DUTY AKIN TO A

11:59AM 19 FIDUCIARY DUTY WITH RESPECT TO THESE OTHER CLASSES OF

11:59AM 20 INVESTORS, AND I THINK THAT'S A DIFFERENCE THAT GOES TO A

11:59AM 21 DUPLICITY MOTION AS WELL AS TO THE DUTY TO DISCLOSE ISSUE.

11:59AM 22     AND, YOUR HONOR, THE OTHER THING I'LL SAY, JUST TO CLOSE,

11:59AM 23 IS THAT IF WE'RE, IF WE'RE -- IF THE COURT IS INCLINED TO ALLOW

11:59AM 24 THAT TO BE A TRIAL ISSUE OR A RULE 29 ISSUE AT TRIAL, THEN I

11:59AM 25 THINK THAT WOULD GO FOR ALL OF THE DIFFERENT CLASSES OF

11:59AM  1    INVESTORS, INCLUDING THE ORIGINAL CLASS OF INVESTORS AND NOT

11:59AM  2    JUST THE NEW CLASS OF INVESTORS.  MAYBE THAT GOES WITHOUT

11:59AM  3    SAYING, BUT I DO THINK THAT THERE'S A DIFFERENCE, AND I JUST

11:59AM  4    WANTED TO POINT THAT OUT.

12:00PM  5         THE COURT:  THANK YOU.

12:00PM  6    MR. COOPERSMITH, YOU SUGGEST THAT THERE'S GREATER DETAILS

12:00PM  7    WITH THE INSTITUTIONAL, THE CORPORATE INVESTORS SHALL WE SAY,

12:00PM  8    AND WOULD THE -- NECESSARILY THE AGREEMENTS THAT MADE THOSE

12:00PM  9    PURCHASES AVAILABLE, THAT IS, THE PURCHASE AGREEMENTS OF

12:00PM 10    SAFEWAY AND WALGREENS, WOULD THOSE -- REVIEW OF THOSE DOCUMENTS

12:00PM 11    BETTER INFORM AS TO SOME OF THE THINGS THAT YOU'VE RAISED?

12:00PM 12         MR. COOPERSMITH:  I THINK SO, YOUR HONOR.  YES.

12:00PM 13         THE COURT:  OKAY.  ALL RIGHT.  THANKS VERY MUCH.

12:00PM 14    LET'S MOVE TO 499 THEN.  THIS IS THE CONVERGENCE MOTION.

12:00PM 15    I'LL CALL IT THAT.

12:00PM 16    THIS IS MR. BALWANI'S JOINDER AT 504; 520 IS THE

12:00PM 17    GOVERNMENT'S OPPOSITION; AND 544 IS MS. HOLMES'S REPLY.

12:00PM 18    AND WHO IS SPEAKING ON THIS, ON BEHALF OF --

12:00PM 19         MS. TREFZ:  I AM, YOUR HONOR.  KATIE TREFZ.

12:01PM 20         THE COURT:  MS. TREFZ, WHAT WOULD YOU LIKE ME TO

12:01PM 21    KNOW THAT IS NOT CAPTURED IN YOUR PLEADINGS?

12:01PM 22         MS. TREFZ:  I THINK WHAT WE HAVE HERE, YOUR HONOR,

12:01PM 23    IS A SITUATION WHERE IN RESPONSE TO THE COURT'S PRIOR RULING

12:01PM 24    THE NEW INDICTMENTS MAKE A FEW DELETIONS, BUT THEY ULTIMATELY

12:01PM 25    KEPT THE MAJORITY OF THE ALLEGATIONS WITH RESPECT TO THE ROLE

12:01PM 1    OF DOCTORS AND PATIENTS THE SAME.

12:01PM 2         THERE ARE NO NEW ALLEGATIONS FLESHING OUT THAT

12:01PM 3    RELATIONSHIP, AND SO IN -- TO OUR VIEW IT'S NO SURPRISE THAT

12:01PM 4    WHEN YOU READ THE INDICTMENT AS A WHOLE, AND AGAIN STICKING TO

12:01PM 5    ITS FOUR CORNERS, IT STILL CASTS THE DOCTORS AND THE PATIENTS

12:01PM 6    AS INDEPENDENT VICTIMS.

12:01PM 7         OUR VIEW IS THAT THIS VIOLATES THE COURT'S ORDER AND THE

12:01PM 8    REQUIREMENTS OF LEW, AND, YOU KNOW, THE -- JUST AS RECENTLY AS

12:01PM 9    A FEW MONTHS AGO IN MILLER THE NINTH CIRCUIT, YOU KNOW,

12:02PM 10   REAFFIRMED THE IDEA THAT THERE'S NO INTENT TO -- THAT INTENT TO

12:02PM 11   DECEIVE WITHOUT AN INTENT TO DEFRAUD IS NOT WIRE FRAUD.

12:02PM 12        I GUESS THE -- FOR US THE KEY ISSUE HERE IS THAT THE

12:02PM 13   INDICTMENT DOESN'T ALLEGE THAT ANY ALLEGED MISREPRESENTATIONS

12:02PM 14   TO DOCTORS WERE ACTUALLY AIMED AT PATIENTS.  SO ON THE FACE OF

12:02PM 15   THE INDICTMENT THE ALLEGATIONS THAT WERE -- THAT THE DEFENDANTS

12:02PM 16   DECEIVED DOCTORS CONTINUES TO RUN AFOUL OF THE RULE.

12:02PM 17             THE COURT:  SO LET ME ASK YOU A QUESTION.  I WANT TO

12:02PM 18   FOCUS ON WHAT I THINK IS AN ISSUE HERE.  BUT FIRST FOR THE

12:02PM 19   BENEFIT OF THE COURT REPORTER, THE LEW YOU WERE SPEAKING TO,

12:02PM 20   THAT WAS L-I-U?  THE L-I-U CASE?

12:02PM 21             MS. TREFZ:  I'M TALKING ABOUT LEW, L-E-W.

12:02PM 22             THE COURT:  L-E-W.  THANK YOU.

12:02PM 23        SO WHEN I LOOK AT THIS ARGUMENT I'D LIKE TO FOCUS, IF YOU

12:03PM 24   COULD, PLEASE, HELP ME OUT ON PARAGRAPHS 22 AND 14, PLEASE.

12:03PM 25   THAT SEEMS TO BE -- OF THE INDICTMENT.  AT LEAST MY ATTENTION

12:03PM  1     IS DRAWN TO THAT.

12:03PM  2         IT MIGHT BE THAT THE WORDING OF THAT IS SOMETHING THAT

12:03PM  3     MIGHT BE PROBLEMATIC.  I THINK PARAGRAPH 22 READS, "USE OF

12:03PM  4     FALSE PRETENSES TO INDUCE DOCTORS TO REFER AND PATIENTS TO

12:03PM  5     PAY."

12:03PM  6         AND I THINK YOUR PLEADING SUGGESTS THAT THIS SUGGESTS THAT

12:03PM  7     THAT LANGUAGE SUGGESTS THAT BOTH DOCTORS AND PATIENTS ARE

12:03PM  8     VICTIMS.

12:03PM  9         IS THAT YOUR POSITION?

12:03PM  10         MS. TREFZ:  THAT IS OUR POSITION, YOUR HONOR.  I

12:03PM  11     THINK WITH RESPECT TO BOTH PARAGRAPH 14 AND PARAGRAPH 22 THOSE

12:03PM  12     PARAGRAPHS ESSENTIALLY REMAINED EXACTLY THE SAME IN RELEVANT

12:03PM  13     PART AS IN THE SUPERSEDING INDICTMENT.

12:03PM  14         AND YOU DO HAVE TO LOOK AT THE INDICTMENT AS A WHOLE, BUT

12:04PM  15     WHEN YOU LOOK AT THOSE TWO PARAGRAPHS IN PARTICULAR, YOU SEE

12:04PM  16     THEM BASICALLY PLED AS INDEPENDENT VICTIMS OF -- WITH

12:04PM  17     INDEPENDENT ROLES IS OUR VIEW.

12:04PM  18         THE COURT:  SO THE GOVERNMENT WILL ANSWER THIS

12:04PM  19     QUESTION, AMONGST OTHERS, BUT I WAS JUST CURIOUS WHETHER OR NOT

12:04PM  20     THAT PHRASING THEN, DOES THAT PUT ADDITIONAL BURDEN ON THE

12:04PM  21     GOVERNMENT AS FAR AS ELEMENTS OF PROOF?  DO THEY NOW HAVE TO

12:04PM  22     PROVE ACTION OR CONDUCT OF THE DOCTORS IN PROVIDING THIS

12:04PM  23     INFORMATION TO PATIENTS?  DO THEY NOW HAVE TO, IF THIS LANGUAGE

12:04PM  24     STAYS, ARE THEY THEN GOING TO HAVE TO PROVE THAT THE DOCTORS

12:04PM  25     WERE DECEIVED BY SPECIFIC DEFENDANTS?  IS THAT YOUR VIEW OF

12:04PM 1    WHAT THIS IS?

12:04PM 2            MS. TREFZ:  WELL, WE DO -- UNDER THE CURRENT FRAMING

12:04PM 3    OF THE INDICTMENT, I DO THINK THAT THE GOVERNMENT WILL NEED TO

12:04PM 4    PROVE THAT DOCTORS WERE INDEPENDENTLY DECEIVED.

12:05PM 5        BUT IN OUR VIEW I GUESS THE MORE IMPORTANT POINT IS THAT

12:05PM 6    UNDER THE COURT'S PRIOR RULING AND UNDER LEW IT'S NOT AN

12:05PM 7    APPROPRIATE BASIS OF WIRE FRAUD TO ALLEGE A DECEPTION OF

12:05PM 8    DOCTORS WITHOUT ALSO AN ALLEGED INTENT TO DEPRIVE THEM OF MONEY

12:05PM 9    OR PROPERTY.

12:05PM 10           THE COURT:  I'M SORRY.  I'M SORRY.

12:05PM 11           MS. TREFZ:  NO, NOT AT ALL.

12:05PM 12           THE COURT:  IT SEEMS LIKE THE DOCTORS HERE WERE LIKE

12:05PM 13   A CONDUIT, THEY WERE LIKE A BILLBOARD ADVERTISING, AREN'T THEY?

12:05PM 14   USE THIS DEVICE AND REFER PATIENTS TO THAT WHERE THEY DIDN'T

12:05PM 15   RECEIVE ANY -- AT LEAST I DON'T THINK I'VE SEEN ANYTHING THAT

12:05PM 16   SUGGESTS THAT THEY RECEIVED ANY COMPENSATION FOR THOSE

12:05PM 17   REFERRALS.

12:05PM 18       I SUPPOSE IF I TAKE YOUR POINT THAT THE INDICTMENT COULD

12:05PM 19   DESCRIBE THE DOCTOR'S CONDUCT A LITTLE BETTER.

12:05PM 20       MAYBE IT WOULD READ THAT THE USE OF FALSE PRETENSES SUCH

12:06PM 21   THAT DOCTORS REFERRED PATIENTS TO THERANOS, OR THAT PATIENTS

12:06PM 22   WHO ULTIMATELY USED THERANOS BASED ON FALSE PRETENSES FROM

12:06PM 23   ADVERTISEMENTS OR OTHER REFERRALS WHO THEREFORE PAID FOR THEIR

12:06PM 24   TESTING.  AND, OF COURSE, WE CAN WORDSMITH IT TO FIND SOMETHING

12:06PM 25   BETTER -- OR DIFFERENT I SHOULD SAY, NOT NECESSARILY BETTER.

12:06PM  1        IS THERE AN AGENCY SITUATION HERE?  IS THERE AN AGENCY

12:06PM  2   HERE THAT WE SHOULD BE LOOKING AT?

12:06PM  3            MS. TREFZ:  I CERTAINLY DON'T THINK THAT THERE'S AN

12:06PM  4   AGENCY THAT IS ALLEGED IN THE INDICTMENT.

12:06PM  5        WITH RESPECT TO THE CONDUIT THEORY THAT THE COURT

12:06PM  6   MENTIONS, THAT'S THE THEORY THAT THE GOVERNMENT FLOATED DURING

12:06PM  7   THE PRIOR ROUND, AND IT CITED TO CICCONE.  AND THE COURT

12:06PM  8   PREVIOUSLY ADDRESSED HOW CICCONE IS NOT APPLICABLE HERE.

12:06PM  9        FOR THE COURT REPORTER'S BENEFIT CICCONE IS SPELLED

12:07PM 10   C-I-C-C-O-N-E.

12:07PM 11        YOU KNOW, I THINK THAT THE COURT'S PRIOR RULING PROPERLY

12:07PM 12   APPLIED CICCONE TO THIS CASE AND SAID IT WAS INAPPLICABLE.

12:07PM 13        WITH RESPECT TO -- AGAIN, WITH RESPECT TO THIS CONDUIT

12:07PM 14   THEORY, THE GOVERNMENT INCLUDES NO -- THE INDICTMENT INCLUDES

12:07PM 15   NO ALLEGATION, JUST AS IT DIDN'T PREVIOUSLY, THAT THE DOCTORS

12:07PM 16   WERE DIRECTED TO PASS ON ANY STATEMENTS, OR THAT DEFENDANTS

12:07PM 17   INTENDED FOR THE MISREPRESENTATIONS TO PASS DIRECTLY ON OR THAT

12:07PM 18   THE MISREPRESENTATIONS TO DOCTORS WERE ACTUALLY AIMED AT

12:07PM 19   PATIENTS.  THAT'S NOT IN THE INDICTMENT.  THAT'S IN THE

12:07PM 20   GOVERNMENT'S ARGUMENTS.

12:07PM 21        THE GOVERNMENT DOES MAKE AN ARGUMENT THAT THIS IS FAIRLY

12:07PM 22   INFERRED FROM THE INDICTMENT, BUT WE TAKE ISSUE WITH THAT.

12:07PM 23   SHOULD IT REALLY BE INFERRED THAT THE DEFENDANTS INTENDED FOR

12:07PM 24   LICENSED INDEPENDENT MEDICAL PROFESSIONALS TO LITERALLY JUST

12:07PM 25   PARROT WHAT THEY SAW ON TELEVISION TO THE PATIENTS?  AND THAT

12:08PM  1    DOESN'T SEEM LOGICAL TO US AS A PRACTICAL MATTER.

12:08PM  2         SO WITHOUT AN ALLEGATION INDICATING THAT THAT THEORY HAS

12:08PM  3    BEEN BLESSED BY THE GRAND JURY, WE DON'T THINK THAT'S

12:08PM  4    REASONABLE.

12:08PM  5         IF THAT'S THE THEORY, WE THINK IT SHOULD BE IN THE

12:08PM  6    INDICTMENT.

12:08PM  7         ADDITIONALLY, JUST TO GO BACK TO LEW, IT'S STILL THE CASE

12:08PM  8    THAT LEW DOES NOT BLESS A THEORY OF WIRE FRAUD THAT CASTS

12:08PM  9    DOCTORS AS, YOU KNOW, IN THIS SEPARATE REFERRAL ROLE FOR

12:08PM 10    PATIENTS.

12:08PM 11         LEW REQUIRES THAT THE INTENDED RECIPIENT OF THE DECEIT IS

12:08PM 12    THE SAME AS THE INTENDED PERSON WHO WAS INTENDED TO BE DEPRIVED

12:08PM 13    OF PROPERTY.

12:08PM 14         THERE'S NO CONVERGENCE IN THOSE TWO THINGS, AND WE WOULD

12:08PM 15    JUST CONTINUE TO POINT THE COURT THERE.

12:09PM 16              THE COURT:  OKAY.  MR. BOSTIC, ARE YOU ARGUING THIS?

12:09PM 17              MR. BOSTIC:  I AM.  THANK YOU, YOUR HONOR.

12:09PM 18         SO I WANT TO ACKNOWLEDGE THAT THE COURT PREVIOUSLY

12:09PM 19    CONSIDERED THE STATUS OF DOCTORS IN THIS CASE AND CERTAINLY

12:09PM 20    RULED IN NO UNCERTAIN TERMS THAT DOCTORS DO NOT QUALIFY AS

12:09PM 21    VICTIMS OF THE FRAUD.

12:09PM 22         THE GOVERNMENT HEARD WHAT THE COURT SAID ON THAT SUBJECT

12:09PM 23    AND THE CHANGES TO THE SUPERSEDING INDICTMENTS REFLECT THAT

12:09PM 24    UNDERSTANDING.

12:09PM 25         THE DEFENSE CONTINUES TO OBJECT THAT DOCTORS ARE MENTIONED

12:09PM 1    IN THE CHARGING DOCUMENTS, BUT THAT'S SIMPLY BECAUSE DOCTORS

12:09PM 2    WERE AN IMPORTANT PART OF THERANOS'S SCHEME TO DEFRAUD THE

12:09PM 3    PATIENTS.

12:09PM 4        SO THE FACTS ALLEGED IN THE OPERATIVE INDICTMENTS ARE

12:09PM 5    SIMILAR, OR THE OPERATIVE INDICTMENT, EXCUSE ME, IS SIMILAR TO

12:09PM 6    THE FACTS ALLEGED PREVIOUSLY BECAUSE THE SCHEME TO DEFRAUD

12:09PM 7    PATIENTS IS STILL THE SAME SCHEME TO DEFRAUD THE PATIENTS.

12:10PM 8        BUT THE WAY THAT THE OPERATIVE INDICTMENT CHARACTERIZES

12:10PM 9    THOSE FACTS IS VERY DIFFERENT, AND THAT REFLECTS THE COURT'S

12:10PM 10   ORDER, AND THAT DEFEATS THE DEFENDANTS' CURRENT MOTION.

12:10PM 11       THE GOVERNMENT'S BRIEF WALKS THE COURT THROUGH A NUMBER OF

12:10PM 12   INSTANCES WHERE LANGUAGE WAS CHANGED IN THE INDICTMENT TO MAKE

12:10PM 13   CLEAR THAT THE GOVERNMENT IS NO LONGER ALLEGING THAT DOCTORS

12:10PM 14   THEMSELVES WERE INDEPENDENT VICTIMS OF THE SCHEME TO DEFRAUD OR

12:10PM 15   TARGETS OF THE SCHEME TO DEFRAUD.

12:10PM 16       INSTEAD, THEY FUNCTIONED AS UNWITTING PARTICIPANTS IN THE

12:10PM 17   DEFENDANTS' SCHEME TO DEFRAUD PATIENTS.

12:10PM 18       SO WHEN LOOKING AT ALL OF THE LANGUAGE IN THE INDICTMENT

12:10PM 19   THAT REFERENCES THE ROLE THAT DOCTORS PLAYED, IT NEEDS TO BE

12:10PM 20   VIEWED IN THAT CONTEXT CONSISTENT WITH THE LAW'S INSTRUCTION

12:10PM 21   THAT THE INDICTMENTS BE READ AS A WHOLE AND READ WITH COMMON

12:10PM 22   SENSE AND READ TO INCLUDE FACTS THAT ARE NECESSARILY IMPLIED.

12:10PM 23       SO WHEN AN INDICTMENT UNDER A HEADING SCHEME TO DEFRAUD

12:11PM 24   PATIENTS TALKS ABOUT HOW DEFENDANTS DIRECTED SOME

12:11PM 25   MISREPRESENTATIONS TO DOCTORS WHO THEN WERE MISLED AND IN TURN

12:11PM 1    REFERRED PATIENTS TO THERANOS SO THEY COULD GET TESTING AND BE

12:11PM 2    DEFRAUDED, THAT IS THE GOVERNMENT'S THEORY, THE THEORY OF

12:11PM 3    DOCTORS SERVING AS CONDUITS FOR THOSE FALSE REPRESENTATIONS IS

12:11PM 4    IN THE INDICTMENT.

12:11PM 5         THE COURT:  SO, SO, MR. BOSTIC, WHAT I HEARD YOU SAY

12:11PM 6    IS THAT IT'S GOING TO BE PART OF YOUR BURDEN, THE GOVERNMENT'S

12:11PM 7    BURDEN TO ACTUALLY PROVE THEN, AN ELEMENT OF THE OFFENSE WOULD

12:11PM 8    BE TO PROVE THAT THE DOCTORS WERE MISLED?

12:11PM 9         MR. BOSTIC:  WELL, YOUR HONOR, I THINK THE

12:11PM 10   GOVERNMENT IS REQUIRED TO PROVE THE DEFENDANT'S INTENT TO

12:11PM 11   DEFRAUD PATIENTS.  CERTAINLY THAT'S WHAT IS ALLEGED IN THE

12:11PM 12   INDICTMENT.

12:11PM 13      THE EVIDENCE AT TRIAL WILL SHOW THAT PART OF THAT SCHEME

12:11PM 14   TO DEFRAUD INCLUDED DIRECTING EVIDENCE AT DOCTORS SO THAT

12:11PM 15   DOCTORS COULD THEN PASS THAT FALSE INFORMATION ON TO PATIENTS.

12:12PM 16   SO THAT WILL BE PART OF THE PROOF AT TRIAL.

12:12PM 17      THESE CHARGES, THOUGH, DON'T REST ON THAT PROOF BECAUSE,

12:12PM 18   AGAIN, THAT'S ONLY ONE FACET OF THE DEFENDANTS' SCHEME TO

12:12PM 19   DEFRAUD PATIENTS.  IT ALSO INCLUDED STATEMENTS THAT THE

12:12PM 20   DEFENDANTS MADE TO JOURNALISTS, IT ALSO INCLUDED STATEMENTS

12:12PM 21   MADE IN MARKETING MATERIALS.  THEY USED A VARIETY OF TOOLS.

12:12PM 22         THE COURT:  BUT AS TO THESE DOCTORS' SPECIFICS, IF

12:12PM 23   YOU'RE GOING TO SUGGEST TO A JURY THAT CONVICTION OF A CERTAIN

12:12PM 24   COUNT WHERE THE DOCTORS WERE MISLED BY THERANOS, BY THE

12:12PM 25   DEFENDANTS, AND THAT CAUSED THE DOCTORS THEN TO REFER OR IN

12:12PM 1    RELIANCE BY THE DOCTOR ON THAT MISINFORMATION, THEY REFERRED

12:12PM 2    THE PATIENTS, IT SOUNDS LIKE THAT'S AN ELEMENT THAT YOU

12:12PM 3    RECOGNIZE THAT YOU'LL HAVE TO BEAR OR THAT CHARGE WILL BE DEALT

12:12PM 4    WITH ON A RULE 29 MOTION OR AN INSTRUCTION OR SOME OTHER

12:13PM 5    METHOD?

12:13PM 6            MR. BOSTIC:  WELL, YOUR HONOR, I WANT TO MAKE SURE I

12:13PM 7    UNDERSTAND THE COURT'S QUESTION.

12:13PM 8        MY REACTION IS THAT NONE OF THE INDIVIDUAL COUNTS DEPEND

12:13PM 9    ON THE THEORY OF DOCTORS PASSING ALONG FALSE INFORMATION TO

12:13PM 10   PATIENTS.  SO WERE THAT NOT THE CASE, THE COUNTS IN THE

12:13PM 11   INDICTMENT WOULD BE THE SAME, BUT BECAUSE THAT IS ALLEGED,

12:13PM 12   BECAUSE THE ROLE OF DOCTORS IS ALLEGED IN THE INDICTMENT, IT

12:13PM 13   HAS THE SAME STATUS AT TRIAL AS OTHER ALLEGATIONS IN THE

12:13PM 14   INDICTMENT, ALLEGATIONS THAT THE DEFENDANTS USED JOURNALISTS,

12:13PM 15   ALLEGATIONS THAT THE DEFENDANTS EMPLOYED MARKETING MATERIALS.

12:13PM 16   IT SITS IN A SIMILAR POSITION AS THOSE OTHER ALLEGATIONS IF

12:13PM 17   THAT ANSWERS THE COURT'S QUESTION.

12:13PM 18           THE COURT:  ALL RIGHT.  SO IF A DOCTOR TESTIFIES I

12:13PM 19   REFERRED THEM TO THERANOS JUST BECAUSE I WAS GOING DOWN THE

12:13PM 20   ALPHABET AND "T" WAS THE NEXT LETTER, AND THAT'S WHAT I DID,

12:13PM 21   AND I PAID NO ATTENTION TO ANYTHING ELSE.

12:14PM 22       THERE'S A FAILURE OF PROOF THERE?

12:14PM 23           MR. BOSTIC:  WELL, I THINK THEN, YOUR HONOR, WE NEED

12:14PM 24   TO KEEP IN MIND THAT WHAT IS ALLEGED IN THE INDICTMENT AND WHAT

12:14PM 25   IS CRIMINALIZED IS THE SCHEME TO DEFRAUD ITSELF.  SO THE FOCUS

12:14PM  1    IS ON DEFENDANT'S INTENT.

12:14PM  2          THE GOVERNMENT CITES SEVERAL CASES STANDING FOR THE

12:14PM  3    PROPOSITION THAT A FRAUD DOESN'T NEED TO BE SUCCESSFUL IN ORDER

12:14PM  4    FOR THERE TO BE CRIMINAL LIABILITY.

12:14PM  5          SO I THINK IT WOULD BE THE WRONG FACTS TO FOCUS ON, TO

12:14PM  6    FOCUS ON WHETHER THIS SCHEME WAS ACTUALLY SUCCESSFUL.  IT WOULD

12:14PM  7    BE WRONG TO FOCUS ON WHETHER THE DEFENDANT SUCCEEDED IN

12:14PM  8    DECEIVING DOCTORS, WRONG TO FOCUS ON WHETHER FALSE INFORMATION

12:14PM  9    WAS ACTUALLY PASSED FROM DOCTORS TO PATIENTS.  THAT DOESN'T

12:14PM  10   NEED TO BE PROVEN.  INSTEAD, IT ONLY NEEDS TO BE PROVEN THAT

12:14PM  11   THAT WAS THE DEFENDANT'S INTENT.

12:14PM  12         THE COURT:  OKAY.  MS. TREFZ.

12:14PM  13         MS. TREFZ:  YES.  AGAIN, YOUR HONOR, JUST TO

12:14PM  14   REITERATE, THERE'S NO ALLEGATION IN THE INDICTMENT THAT THE

12:15PM  15   DEFENDANTS, IN FACT, INTENDED TO HAVE THESE DOCTORS PASS ALONG

12:15PM  16   THIS INFORMATION TO PATIENTS, RATHER I THINK THE INDICTMENT

12:15PM  17   FAIRLY READ CASTS AS BOTH INDEPENDENT VICTIMS, AND THAT MAKES

12:15PM  18   SENSE BECAUSE IT IS IN THIS RESPECT VERY SIMILAR, ALMOST

12:15PM  19   IDENTICAL WITH THE EXCEPTION OF SOME OF THE HEADINGS TO THE

12:15PM  20   PRIOR INDICTMENT.

12:15PM  21         THE COURT:  OKAY.  ALL RIGHT.

12:15PM  22         MR. BOSTIC:  YOUR HONOR, I'M SORRY.  BRIEFLY ON THAT

12:15PM  23   POINT.  I WOULD ALSO JUST LIKE TO SAY A FEW WORDS ON THE

12:15PM  24   CONVERGENCE CASE LAW IF THE COURT DOESN'T MIND.

12:15PM  25         THE COURT:  SURE.

12:15PM  1          MR. BOSTIC:  ON THAT POINT I WOULD REFER THE COURT

12:15PM  2     TO PARAGRAPHS 15 AND 22 IN THE INDICTMENT.  AGAIN, THIS IS ALL

12:15PM  3     IN THE CONTEXT OF THE ALLEGED SCHEME TO DEFRAUD PATIENTS.

12:15PM  4     THERE IS NO ALLEGATION, EXPRESS OR IMPLIED, THAT DOCTORS WERE

12:15PM  5     ALSO STANDALONE VICTIMS.

12:15PM  6          PARAGRAPHS 15 AND 22 MAKES CLEAR THE RELATIONSHIP BETWEEN

12:15PM  7     DOCTORS AND PATIENTS IN THIS CASE, AND, IN FACT, IN ITS LAST

12:15PM  8     ORDER WHEN WE WERE DISCUSSING THE ROLE OF DOCTORS, THE COURT

12:15PM  9     NOTED THAT LANGUAGE, AND IN COMPARISON TO THE CICCONE CASE THE

12:16PM  10    COURT NOTED THAT DOCTORS IN THIS CASE COULD BE ANALOGIZED TO

12:16PM  11    THE TELE MARKETER EMPLOYEE/AGENTS OF THE DEFENDANTS IN THAT

12:16PM  12    OTHER CASE.

12:16PM  13         SO THE GOVERNMENT HEARD THAT AND THAT SQUARES WITH THE

12:16PM  14    GOVERNMENT'S UNDERSTANDING OF HOW DOCTORS FUNCTIONED HERE,

12:16PM  15    ALTHOUGH THEY WERE NOT AGENTS OR COCONSPIRATORS OF THE

12:16PM  16    DEFENDANTS, BUT THE GOVERNMENT'S CURRENT THEORY, THE WAY THE

12:16PM  17    INDICTMENT TREATS DOCTORS IS TOTALLY CONSISTENT WITH THE THEORY

12:16PM  18    BLESSED IN THE CICCONE CASE.

12:16PM  19         I'LL ALSO JUST POINT OUT THAT AGAIN THE DEFENSE IS SEEKING

12:16PM  20    TO ENHANCE THE CONVERGENCE REQUIREMENT HERE.  THERE IS NO CASE

12:16PM  21    LAW SUPPORTING THE IDEA THAT THERE NEEDS TO BE A ONE-TO-ONE

12:16PM  22    CONNECTION BETWEEN DEFENDANTS AND VICTIM.  THERE IS NO

12:16PM  23    REQUIREMENT THAT A DEFENDANT DIRECTLY MAKE MISREPRESENTATIONS

12:17PM  24    TO A VICTIM.

12:17PM  25         AND, INDEED, THINK OF THE TYPES OF FRAUD THAT WOULD TAKE

12:17PM 1      OUT OF CRIMINAL LAW IF THAT WERE INDEED THE CASE.

12:17PM 2           THE IDEA THAT IT'S NOT FRAUD IF A DEFENDANT DECEIVES A

12:17PM 3      VICTIM THROUGH AN INTERMEDIARY IS A DANGEROUS IDEA THAT THE

12:17PM 4      COURTS HAVEN'T BLESSED AND RIGHTLY SO.  THINK OF THE SITUATIONS

12:17PM 5      WHERE A BUSINESS NEGOTIATION PROCEEDS THROUGH LAWYERS AS

12:17PM 6      INTERMEDIARIES.  IF A FRAUDSTER INTENDED TO DECEIVE THE OTHER

12:17PM 7      PARTY IN A NEGOTIATION BY MAKING FALSE PRESENTATIONS TO THAT

12:17PM 8      PARTY'S LAWYER IN HOPES THAT THAT LAWYER WOULD PASS ON THAT

12:17PM 9      FALSE INFORMATION TO THEIR CLIENT, THAT WOULD CERTAINLY BE

12:17PM 10     FRAUD.  THE INTENT IS STILL TO DECEIVE THE ULTIMATE VICTIM, TO

12:17PM 11     OBTAIN MONEY FROM THAT VICTIM.

12:17PM 12          AND THE SAME THING IS HAPPENING HERE.  JUST AS LAWYERS

12:17PM 13     OFTEN SERVE AS REPRESENTATIVES OF PRINCIPALS IN NEGOTIATIONS,

12:18PM 14     HERE IN THIS CASE DOCTORS REPRESENTED THEIR PATIENTS IN

12:18PM 15     CONNECTION WITH THEIR DEALINGS WITH LABS.

12:18PM 16          AND ALTHOUGH THAT COULD HAVE BEEN SPELLED OUT IN MORE

12:18PM 17     DETAIL IN THE INDICTMENT, AS THE COURT KNOWS THAT'S NOT THE

12:18PM 18     STANDARD AT THIS STAGE.  INDICTMENTS ARE NOT COMPARED TO THE

12:18PM 19     IDEAL MOST DETAILED VERSIONS THAT THEY COULD HAVE BEEN.

12:18PM 20     INSTEAD THE QUESTION IS WHETHER THEY PROVIDE SUFFICIENT NOTICE,

12:18PM 21     AND THIS ONE DOES.

12:18PM 22               THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

12:18PM 23          MS. TREFZ, ANYTHING IN CLOSING?

12:18PM 24               MS. TREFZ:  YOUR HONOR, I JUST REITERATE THAT I

12:18PM 25     HEARD MR. BOSTIC MENTION THAT THE INTENT TO DECEIVE NEEDS TO

12:18PM 1    BE, YOU KNOW, TO THE SAME VICTIM, WHETHER OR NOT IT'S THROUGH

12:18PM 2    AN INTERMEDIARY.

12:18PM 3        I WOULD NOTE THAT THE NINTH CIRCUIT HAS NOT BLESSED THIS

12:18PM 4    INTERMEDIARY THEORY THAT THE GOVERNMENT IS SETTING FORTH HERE

12:18PM 5    AND ALSO, AGAIN, THERE ISN'T AN ALLEGATION IN THE INDICTMENT

12:18PM 6    THAT INTENDED -- THAT STATEMENTS TO DOCTORS WERE INTENDED TO BE

12:19PM 7    AIMED AT PATIENTS.

12:19PM 8            THE COURT:  ALL RIGHT.  ALL RIGHT.  WELL, THANK YOU

12:19PM 9    VERY MUCH.  THIS HAS BEEN VERY HELPFUL.

12:19PM 10       AS I SAID, I DON'T NEED ANY HELP ON 500.  I THINK THE 500

12:19PM 11   WAS -- I LOOKED AT IT, AND PARDON ME, I DON'T MEAN TO SAY IT

12:19PM 12   WASN'T IMPORTANT, BUT I THINK THE PROMINENCE OF 500 WAS TO

12:19PM 13   PRESERVE THE PRIOR ARGUMENTS THAT WERE MADE.  AND, OF COURSE,

12:19PM 14   THAT'S WHAT IT DOES.  IT'S UNDER SUBMISSION AS WELL.

12:19PM 15       MS. MCDOWELL, MR. DOWNEY, MR. WADE, MR. CAZARES,

12:19PM 16   MR. SCHENK, I DIDN'T HAVE THE PRIVILEGE OF SPEAKING WITH YOU

12:19PM 17   THIS MORNING, BUT THANK YOU FOR YOUR SUPPORT.  IT'S GOOD TO SEE

12:19PM 18   YOU AS WELL AS YOUR COLLEAGUES AND YOUR COLLEAGUES OPPOSITE

12:19PM 19   HERE.  SO THANK YOU FOR THAT.

12:19PM 20       UNLESS THERE'S ANYTHING FURTHER BY ANY PARTY, I'LL JUST

12:19PM 21   INDICATE AS I DID AT THE OUTSET THAT THESE MOTIONS, EACH OF

12:19PM 22   THEM ARE NOW UNDER SUBMISSION, AND IT'S MY INTENT TO GET ORDERS

12:20PM 23   OUT FOR YOU TO HELP YOU ON THESE SHORTLY SO WE CAN EITHER

12:20PM 24   CONTINUE THE CASE OR CONTINUE THE LITIGATION IN SOME MANNER.

12:20PM 25       SO UNLESS THERE'S ANYTHING FURTHER, I'LL WISH YOU ALL GOOD

12:20PM 1    HEALTH, STAY HEALTHY, STAY SAFE, AND I LOOK FORWARD TO SEEING

12:20PM 2    EVERYONE AGAIN SOON.   THANKS VERY MUCH.

12:20PM 3        MS. KRATZMANN, WE'LL ADJOURN THIS PROCEEDING.   THANK YOU.

12:20PM 4            MR. COOPERSMITH:   THANK YOU, YOUR HONOR.

12:20PM 5            MR. LEACH:   THANK YOU, YOUR HONOR.

12:20PM 6            MS. SAHARIA:   THANK YOU, YOUR HONOR.

12:20PM 7            THE CLERK:   COURT IS ADJOURNED.   THE MEETING SHALL

12:20PM 8    END.

12:20PM 9        (COURT CONCLUDED AT 12:20 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15
                          _____
16                        IRENE RODRIGUEZ, CSR, RMR, CRR
                          CERTIFICATE NUMBER 8074
17

18
                          DATED:  OCTOBER 15, 2020
19

20

21

22

23

24

25