1   JOHN D. CLINE (CA State Bar No. 237759)
2   50 California Street, Suite 1500
    San Francisco, CA 94111
3   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
    Email: cline@johndclinelaw.com
4
5   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
    LANCE A. WADE (Admitted Pro Hac Vice)
6   AMY MASON SAHARIA (Admitted Pro Hac Vice)
    KATHERINE TREFZ (CA State Bar No. 262770)
7   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
8   Washington, DC 20005
    Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
9   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

10  Attorneys for Defendant ELIZABETH A. HOLMES

11

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                            SAN JOSE DIVISION

15

16  UNITED STATES OF AMERICA,            )   Case No. CR-18-00258-EJD
                                         )
17          Plaintiff,                   )
                                         )   **MS. HOLMES' MOTION TO EXCLUDE**
18      v.                               )   **CUSTOMER IMPACT EVIDENCE UNDER**
                                         )   **RULES 401-403**
19  ELIZABETH HOLMES and                 )
20  RAMESH "SUNNY" BALWANI,              )
                                         )   Date:     January 22, 2021
21          Defendants.                  )   Time:     10:00 AM
                                         )   CTRM:  4, 5th Floor
22                                       )
                                         )
23                                       )   Hon. Edward J. Davila
                                         )
24                                       )
                                         )
25  _____ )

26

27

28  MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL
    RULES OF EVIDENCE 401-403
    CR-18-00258 EJD

1

**<u>MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE</u>**

2

PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time

3

as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose,

4

CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does

5

respectfully move the Court pursuant to Rules 401 and 403 of the Federal Rules of Evidence for an order

6

precluding the government from introducing at trial customer impact evidence.  The Motion is based on

7

the below Memorandum of Points and Authorities, the record in this case, and any other matters that the

8

Court deems appropriate.

9

10

DATED: November 20, 2020

11

12

<u>/s/ Amy Mason Saharia</u>
KEVIN DOWNEY

13

LANCE WADE
AMY MASON SAHARIA

14

KATHERINE TREFZ
Attorneys for Elizabeth Holmes

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

ARGUMENT ....................................................................................................................................2

    I.      The Evidence Is Irrelevant ................................................................................3

    II.     The Evidence Is Barred by Rule 403 ................................................................5

CONCLUSION ................................................................................................................................7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      As the Court recognized in its February 11, 2020 order, the relevant inquiry in this wire-fraud

3  case is whether Ms. Holmes intended to deprive persons of *property or money*.  ECF No. 330 at 27-35.

4  Despite the Court's ruling, the government continues to attempt to inject into this case evidence of the

5  emotional harms suffered by, and hypothetical physical harms to, Theranos customers who allegedly

6  received inaccurate test results.  In its filings and notices the government has made plain that it intends

7  to highlight these potential harms at trial in an emotional appeal irrelevant to the issues at hand.  For

8  example:

9      • In the government's opposition to Ms. Holmes' motion to compel adequate expert

10         disclosures, the government highlighted that it interviewed a witness who felt "terrible" and

11         "awful" after receiving her doctor's interpretation of a Theranos HIV test.  *See, e.g.*, Gov't

12         Opp'n to Def. Mot. To Exclude Expert Testimony, ECF No. 441 at 6.

13     • For that same customer, the government highlighted that the customer "thought she was

14         dying" and had to wait "a while" before receiving another test.  *Id.*

15     • The government also asserted that one nurse had a difficult conversation about a lost

16         pregnancy with a customer based on the professional's interpretation of the customer's

17         Theranos test.  *Id.* at 3. The government asserted that the nurse "explained that *if* she had

18         relied on the Theranos[] result and initiated the treatment protocol for a miscarriage, it is very

19         *likely* she would have terminated a viable pregnancy."  *Id.* (emphases added).

20     To date, the government has not identified *any* actual physical harm to any customer that resulted

21  from an allegedly inaccurate test.  That bears emphasis:  as far as we are aware, of the 7-10 million test

22  results generated by Theranos, not one caused any physical harm.  Even if it had, such harm is not

23  relevant to the offense charged, which concerns the loss of property.  Nonetheless, the government has

24  disclosed its intent to elicit inflammatory testimony about *hypothetical* injuries to *hypothetical* Theranos

25  customers *if* they had received inaccurate tests and *if* treating physicians made erroneous treatment

26  decisions on the basis of just one test.  The government has even disclosed its intent to elicit testimony

27

28  MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL
   RULES OF EVIDENCE 401-403
   CR-18-00258 EJD

                                    1

1    about the potentially deadly consequences of hypothetical surgeon malpractice committed during

2    surgeries that resulted from hypothetical inaccurate tests.  For example:

3    - An expert noticed by the government intends to testify that if an HbA1c test is inaccurate

4        "medicine (such as insulin) could be incorrectly changed, leading to an overdose or

5        underdose . . . [that] could result in a [patient suffering a] coma from the brain shutting

6        down." Ex. 5 at 7 (Sept. 28, 2020 Gov't Supp. Expert Notice).

7    - The same expert intends to testify about an invasive procedure a patient might undergo if his

8        PSA results are incorrectly reported high.  The expert intends to testify that this hypothetical

9        procedure "could also have complications" such as the danger that "fecal material could

10       make its way into the blood" which would "result in fevers and chills[,]" and that "[i]t was

11       also possible [a needle used in the procedure] could hit a blood vessel, leading to

12       hemorrhaging that could require surgery." *Id.* at 8.

13   - Another expert noticed by the government intends to testify that "[i]f [a] potassium [result]

14       was off, it was possible that the patient could die on the table." *Id.* at 9.

15       As courts have held, evidence of collateral consequences of an alleged scheme to defraud has

16   little to no probative value in a wire-fraud case and "only serve[s] to elicit additional sympathy for

17   [alleged] victims and risk[s] unfairly prejudicing the Defendant."  *United States v. Gibson*, 2018 WL

18   4903261, at *6 (E.D. Va. Oct. 9, 2018) (citing cases).  Those principles apply with special force here,

19   where the government seeks to introduce evidence of (alleged) harms completely divorced from a loss

20   of money or property.  Accordingly, the Court should exclude such evidence under Federal Rules of

21   Evidence 401-403.

22                                          **ARGUMENT**

23       Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a

24   fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

25   determining the action." Fed. R. Evid. 401.  If evidence does not pass this standard, it is inadmissible.

26   Fed. R. Evid. 402.  Even if evidence is relevant, however, it may still be excluded under Rule 403 "if its

27   probative value is substantially outweighed by a danger of  . . . unfair prejudice."  Fed. R. Evid. 403.

28   MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL
     RULES OF EVIDENCE 401-403
     CR-18-00258 EJD

Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

## I.      The Evidence Is Irrelevant

Evidence relating to actual or hypothetical impact of allegedly inaccurate tests on customers' personal lives is irrelevant to the wire-fraud charges in this case. Generally, "evidence of the impact of a crime on the victim . . .  is inadmissible unless relevant to the guilt of the accused." *Hi Quoc Truong v. Runnels*, 2011 WL 6778784, at *15 (N.D. Cal. Dec. 27, 2011); *see also United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019) ("Testimony regarding a crime's impact on a victim is admissible at trial if it is relevant to prove an element of the charged offense and is subject to the normal tests for relevancy and unfair prejudice."). Although some courts have held that evidence of financial loss itself may be relevant to intent, those same courts have held that evidence of the *impact* of that financial loss on a victim's personal life has little to no probative value in a fraud case. *See, e.g., United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994) (testimony of impact of financial harm in mail fraud cases has "either no, or very little, probative value").

*United States v. Sokolov*, 91 F.3d 396 (3d Cir. 1996), is instructive. In *Sokolov*, a mail-fraud case concerning an insurance scheme, the Third Circuit reviewed the district court's evidentiary ruling allowing the testimony of victims regarding the impact of the fraud on their personal lives. *Id.* at 406-07. The government alleged that the defendant misrepresented to victims that an insurance plan offered to them was fully insured by a major insurance company when in fact it was a self-funded plan, thus defrauding members of their premiums. *Id.* at 400. Several witnesses were permitted to testify about how the fraudulent scheme affected their personal lives. For example, a witness testified "she had been hassled by collection agencies, suffered from depression, and was completely tormented," and another witness testified "that 'his life had been destroyed,' that he was a 'nervous wreck,' and that he had attorney's bills to pay," because of the defendant's fraudulent scheme. *Id.* at 407 n.13. The Third Circuit found this testimony had little probative value and that "[b]y asking every victim who testified whether he or she suffered any adverse consequences from the unpaid claims, the government was

MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-403
CR-18-00258 EJD

1   attempting to highlight the personal tragedies of the victims," although it ultimately held the error

2   harmless. *Id.* at 407.

3          Similarly, *Gibson*, 2018 WL 4903261, concerned wire-fraud charges related to a scheme to

4   defraud investors who were unsophisticated and at, or near, the age of retirement. *Id.* at *1. The court

5   held that although the age of the victims and the amount the victims lost was admissible because such

6   facts were relevant to the charges, evidence of "collateral loss" such as the fact that the victims lost their

7   entire retirement savings had "no relative probative value." *Id.* at *6. The court held "evidence at trial

8   of collateral emotional and personal hardships endured by the victims would only serve to elicit

9   additional sympathy for those victims." *Id.*; *see also Hi Quoc Truong*, 2011 WL 6778784, at *15

10  (prosecutor's argument regarding impact of crime on the victim and victim's family was wholly

11  irrelevant to the issues and had the effect of arousing passion and prejudice).

12         As the foregoing cases illustrate, evidence of the impact of financial loss on an alleged victim's

13  personal life has little to no probative value in wire-fraud cases. Here, given the trivial amounts that

14  customers paid for Theranos blood tests, it is doubtful the government could show any collateral impact

15  of financial losses suffered by customers. The government instead has indicated its intent to focus on

16  emotional and potential physical impacts of allegedly inaccurate tests—harms that are even further

17  removed from the core of the wire-fraud statute. Such evidence is wholly irrelevant to the government's

18  allegations in this case. Collateral emotional and physical harms of Theranos customers have no bearing

19  on whether Ms. Holmes intended to deprive Theranos customers *of money or property*. Whether Ms.

20  Holmes intended to commit wire fraud is no more or less likely because a customer allegedly suffered a

21  personal hardship as a result of a Theranos test. Rather, such evidence merely highlights the "personal

22  tragedies of the victims" and does not make any facts of consequence in this action more or less likely.

23  *See Sokolov*, 91 F.3d at 400. Nor are the hyperbolic, speculative predictions of potential physical

24  consequences offered by the government's experts relevant to any issue in the case. This evidence thus

25  should be excluded. *See United States v. Seko*, 2016 WL 7438436, at *3 (E.D. Va. Dec. 20, 2016)

26  (excluding victim impact evidence regarding "truly collateral consequences," in mortgage fraud case

27  "including that some of the victims subsequently lost their homes").

28  MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL
    RULES OF EVIDENCE 401-403
    CR-18-00258 EJD
                                                    4

## II.     The Evidence Is Barred by Rule 403

Even if patients' emotional or hypothetical physical harm had some probative value in a case involving alleged money or property loss, the evidence "should be excluded if its probative value is outweighed by its prejudicial impact upon the accused." *United States v. Hearst*, 563 F.2d 1331, 1336 (9th Cir. 1977) (citing Fed. R. Evid. 403).   Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Pac. Gas & Elec. Co.*, 178 F. Supp. 3d at 941.  "When evaluating the admissibility of victim impact testimony during trial, a district court should carefully consider the prejudicial potential of such testimony." *Hendricks*, 921 F.3d at 329.  Courts considering this issue "have repeatedly held that evidence of collateral loss sustained by victims of fraud should be excluded at trial as unfairly prejudicial." *Gibson*, 2018 WL 4903261, at *6 (citing cases).  Indeed, "evidence at trial of collateral emotional and personal hardships endured by the victims would only serve to elicit additional sympathy for those victims and risk unfairly prejudicing the Defendant." *Id.*; *see also United States v. Copple*, 24 F.3d 535, 546 (3rd Cir. 1994).

*Copple is* on point.  *Copple* concerned a mail-fraud charge related to a scheme to defraud funeral directors.  *Id.* at 538-39.  The Third Circuit found that testimony concerning the collateral impact of the fraud—such as testimony that money lost during the scheme affected the witnesses' health, caused weight loss, and required depletion of all personal savings—"had either no, or very little, probative value and was unfairly prejudicial." *Id.* at 545-46.  Accordingly, the court found that the district court erred in allowing the evidence, which was "designed to generate feelings of sympathy for the victims and outrage toward [defendant] for reasons not relevant to the charges [defendant] faced." *Id.* at 546. The Court explained that even if the testimony had some "marginal relevance," "its principal effect, by far, was to highlight the personal tragedy they had suffered as victims of the scheme," and "arguably created a significant risk that the jury would be swayed to convict [the defendant] as a way of compensating these victims wholly without regard to evidence of [the defendant's] guilt." *Id.*  The court thus held that Rule 403 required exclusion of the testimony. *Id.*; *see also United States v. Georgiou*, 2009 WL 4641719, at *7 (E.D. Pa. Dec. 7, 2009) (evidence that victim had to dissolve its company

MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-403
CR-18-00258 EJD

5

1   because of loss suffered during fraud inadmissible under Federal Rule of Evidence 403 because it was

2   unfairly prejudicial).

3          The same result should follow in this case.  As stated above, evidence of any personal or

4   physical injuries of a handful of Theranos customers is not probative of the government's allegation that

5   "Theranos technology was, in fact, not capable of consistently producing accurate and reliable results."

6   ECF No. 469, ¶ 16.  Nor is it relevant to Ms. Holmes' alleged intent to deprive the customers of money.

7   Just like the evidence held to be prejudicial in *Copple*, the stories and hypothetical examples the

8   government seeks to elicit provide no value other than "to generate feelings of sympathy for the victims

9   and outrage toward [Ms. Holmes] for reasons not relevant to the charges [Ms. Holmes] face[s]."  24

10   F.3d at 546.  It is hard to imagine more prejudicial evidence than a customer's testimony that she

11   "thought she was dying" after a Theranos test, Gov't Opp'n to Def. Mot. To Exclude Expert Testimony,

12   ECF No. 441 at 6, or a doctor's speculation that an aberrant blood test could have led to a patient dying

13   "on the table" following a hypothetical series of events, Ex. 5 at 9.  Therefore, even if the testimony had

14   some probative value, the Court should exclude any evidence of collateral physical and emotional harms

15   sustained by Theranos customers (including hypothetical harms) under Rule 403.  *See Gibson*, 2018 WL

16   4903261, at *7 (in fraud cases evidence that "shows the broader impact of the fraud on the victims'

17   lives, rather than just the actual loss suffered" should be excluded under Rule 403).

18          Finally, the evidence should be excluded because it will "confuse the jury about the issues it

19   needs to decide [and] waste a significant amount of trial time."  *Planned Parenthood Fed'n of Am., Inc.*

20   *v. Ctr. for Med. Progress*, 2020 WL 4818614, at *3 (N.D. Cal. Aug. 19, 2020); *see also United States v.*

21   *Scheffer*, 523 U.S. 303, 314 (1998) (noting that "collateral litigation prolongs criminal trials and

22   threatens to distract the jury from its central function of determining guilt or innocence").  If this

23   evidence is introduced, Ms. Holmes will be forced to, for each customer, litigate issues such as the

24   circumstances surrounding the collateral ramifications of the allegedly inaccurate test; the standards of

25   professional conduct regarding repeating blood tests; and whether the treating physicians' actions were

26   contrary to those standards.  This would subject the jury to multiple mini-trials on the subject of each

27

28   MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER FEDERAL
     RULES OF EVIDENCE 401-403
     CR-18-00258 EJD

customer's collateral harms.  Litigating these issues— unrelated to the government's charged scheme to defraud—would be a time-consuming sideshow.

## CONCLUSION

For the foregoing reasons, Ms. Holmes respectfully requests an order precluding the government from introducing at trial any evidence of the actual or potential collateral consequences of Theranos tests on customers, including purported evidence of emotional or physical harm.

DATED:  November 20, 2020                    Respectfully submitted,


                                             /s/ Amy Mason Saharia
                                             KEVIN DOWNEY
                                             LANCE WADE
                                             AMY MASON SAHARIA
                                             KATHERINE TREFZ
                                             Attorneys for Elizabeth Holmes

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-403
CR-18-00258 EJD

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | |
| v. | **[PROPOSED] ORDER GRANTING MS. HOLMES' MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER RULES 401-403** |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Hon. Edward J. Davila |

1    This Cause having come before the Court upon Defendant Elizabeth A. Holmes' Motion to

2    Exclude Customer Impact Evidence Under Rules 401-403.  After due consideration of the filings, the

3    governing law and the argument of the parties:

4              IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.

5              IT IS FURTHER ORDERED that the government shall not introduce at trial any

6    evidence, argument, or reference to actual or potential collateral consequences of Theranos tests on

7    customers, including emotional or physical harm.

8

9              IT IS SO ORDERED.

10

11   Dated: _____

12

13                                                              _____
                                                                Hon. Edward J. Davila
14                                                              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [PROPOSED] ORDER GRANTING MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER
     RULES 401-403
     CR-18-00258 EJD