JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>　　　　Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' MOTION IN LIMINE TO EXCLUDE BAD ACTS AND FALSE OR MISLEADING STATEMENTS OF THERANOS AGENTS AND EMPLOYEES**<br><br>Date:　January 22, 2021<br>Time:　10:00 AM<br>CTRM:　4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS'
AGENTS AND EMPLOYEES
CR-18-00258 EJD

# MOTION TO EXCLUDE BAD ACTS AND FALSE OR MISLEADING STATEMENTS OF THERANOS AGENTS AND EMPLOYEES

PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move *in limine* to exclude the alleged bad acts and false or misleading statements of Theranos agents and employees. Ms. Holmes makes this motion pursuant to Federal Rules of Evidence 104, 402, 403, and 404(b). The Motion is based on the below Memorandum of Points and Authorities, the exhibits and declarations that accompany this motion, the record in this case, and any other matters that the Court deems appropriate.

DATED: November 20, 2020

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

BACKGROUND ...........................................................................................................................1

ARGUMENT .................................................................................................................................5

    I.     The Government Fails to Connect These Allegations to Ms. Holmes ..............................5
    II.    Rule 403 Bars This Evidence..............................................................................7

CONCLUSION...............................................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Elizabeth Holmes moves, pursuant to Federal Rules of Evidence 104, 402, 403, and 404, to exclude alleged bad acts and false or misleading statements of Theranos agents and employees that lack the requisite connection to Ms. Holmes.[1]  Throughout these proceedings, the government has repeatedly suggested that it will argue that Ms. Holmes is vicariously liable for the actions and statements of Theranos employees.  But corporate executives generally do not face individual criminal liability for the actions and statements of a corporation's agents or employees, and that principle holds equally true in this case.  Any bad acts or false or misleading statements of Theranos employees that lack the requisite connection to Ms. Holmes are irrelevant and unfairly prejudicial, will confuse the jury, and will function as inadmissible bad acts evidence.

**BACKGROUND**

Following this Court's February 11, 2020 Order on Defendants' motion to dismiss, this case has centered on allegations that Ms. Holmes knowingly engaged in a scheme to defraud two groups of people:  (1) Theranos investors and (2) patients who paid out of pocket for Theranos blood testing.  Each of these allegations requires the government to prove "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud."  *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).

The government's pleadings and productions have repeatedly signaled that it intends to prove its allegations against Ms. Holmes, at least in part, through the statements and actions of other individuals affiliated with Theranos.  The Third Superseding Indictment ("TSI") alleges that Ms. Holmes and Mr. Balwani "engaged in a scheme, plan, and artifice to defraud investors" "*through their company, Theranos*."  TSI, ECF No. 469 ¶ 11 (emphasis added).  The government's Bill of Particulars made the government's intention even clearer:  it alleges that Ms. Holmes, "*primarily through Theranos*

---

[1] This motion does not apply to the statements or actions of the alleged co-conspirators or accomplices identified in the government's Third Superseding Indictment and Bill of Particulars.  Ms. Holmes reserves her right, however, to challenge the admission of such statements or actions on alternative grounds as appropriate.

MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS' AGENTS AND EMPLOYEES
CR-18-00258 EJD

1

*representatives*, . . . directed false and misleading statements to individual doctors and patients . . . by giving Theranos representatives general and specific direction to promote the validity, accuracy, and other supposed benefits of Theranos's tests, to emphasize Theranos's fingerstick method of drawing blood, and to conceal any shortcomings of Theranos's technology or malfunctions of its devices." Sealed Bill of Particulars at 21, ECF No. 377.  Any number of Theranos representatives communicated with doctors and patients—some, such as Theranos' dozen or so sales representatives, reported to other employees who in turn reported to others, several layers removed from Ms. Holmes.  In fact, Ms. Holmes was not in the chain of command with respect to Theranos' sales representatives.  Ms. Holmes did not supervise, direct, or train Theranos' sales representatives, was not present in their interactions with doctors or patients, and had little if any knowledge of the actual content of conversations between them and doctors and patients.

The government's interview memoranda show that the government has investigated acts and statements by Theranos representatives that lack any connection to Ms. Holmes.  As just one example, the government has inquired about representations, made by unidentified Theranos sales representatives to medical professionals, that the FDA had cleared Theranos' devices.  The government has suggested that it views these alleged representations as relevant to the case against Ms. Holmes.  Gov't Opp'n to Def.'s Mot. to Dismiss for Lack of Notice at 9-10, ECF No. 265.  The government has pursued this and other similar lines of inquiry, even where there is no reason to believe Ms. Holmes directed, encouraged, or even had reason to anticipate these employees' act or statements.  Indeed, the Indictment alleges that Ms. Holmes made false statements that Theranos did not need FDA approval for its devices, *see* TSI ¶ 12(F), ECF No. 469—*not* that FDA approval had been obtained.

It appears that the government intends to pursue its theory of criminal vicarious liability in the Rule 404(b) context.  The government's original Rule 404(b) notice described acts by Theranos "agents," "representatives," and "others."  Ex. 1 (Mar. 6, 2020 Rule 404(b) Notice), ¶¶ 2, 6, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20.  The government's Rule 404(b) notice goes so far as to describe Theranos employees as Ms. Holmes' "agents."  *See, e.g.*, *id.* at 5.  That allegation is false; Theranos employees were agents of Theranos, not of Ms. Holmes.

MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS'
AGENTS AND EMPLOYEES
CR-18-00258 EJD
2

During the July 20, 2020, motion hearing, this Court expressed skepticism about the government's vague references to Theranos agents and employees in its Rule 404(b) notice: "the acts referring to Theranos and their agents or representatives . . . seems like that was a little broad as to who is Theranos, who are the agents, who are the representatives, and how did those persons or individuals or whoever or whatever they are, how does that impact Ms. Holmes." 7/20/20 Tr. 25:20-26:5. Nevertheless, the government stuck to this "broad" approach in its supplemental Rule 404(b) notice served on September 28, 2020. The following are some of the most glaring examples:

- The government identifies the experiences of seven patients as evidence that Ms. Holmes knew Theranos was unable to provide accurate and reliable test results," but it does not identify any evidence that Ms. Holmes was ever informed about three of these patients' experiences. Ex. 3 at 5-6 (Sept. 28, 2020 Rule 404(b) Notice). For example, with respect to R.G., the government claims only that "[n]umerous employees reporting to Holmes and Balwani became aware of the test." *Id.* at 6.

- The government again alleges that "Defendants *and their agents* made statements directly to doctors in connection with Theranos's tests and specific results." Ex. 3 at 12-15 (emphasis added). This portion of the supplemental 404(b) disclosure identifies numerous statements by unidentified "Theranos representatives" that the government intends to introduce. Illustrative examples include the following: *id.* at 12 ("A Theranos representative told Dr. Jessica Bramstedt that Theranos would conduct micro-testing on blood samples drawn from the fingertip; that Theranos was equivalent to other major labs like LabCorp and Sonora Quest, and that when Theranos lost its lab license, it was merely a "slap on the wrist" that would have a temporary effect on the company."); *id.* ("Theranos representative Kimberly Alfonzo told Dr. Gerald Asin that Theranos could do all blood tests with a fingerstick draw . . ."); *id.* ("A Theranos sales representative told Dr. Nathan Matthews that Theranos's testing was accurate . . ."); *id.* at 13 ("Theranos representatives told Dr. Steve Linnerson that the company's device was FDA-approved and that it had met all the national laboratory standards . . ."); *id.* at 14 ("Results from each of these types of HbA1c

- tests were provided to doctors without explanation as to the types of analyzers used to conduct the assays, creating a situation where doctors did not have the information they needed to place the results in context.").

- The government makes various allegations related to Theranos' process for setting reference ranges that have no connection to Ms. Holmes (or Mr. Balwani). *Id.* at 71.

- The government alleges that "[w]hen Theranos obtained critical test results for chloride, it conducted a redraw and/or rerun rather than reporting the critical value," with no connection to Ms. Holmes. *Id.* at 73.

- According to the government, "Results from . . . HbA1c tests were provided to doctors without explanation as to the types of analyzers used to conduct the assays, creating a situation where doctors did not have the information they needed to place the results in context.  This was especially problematic in situations where a single patient had multiple Theranos assays conducted using different methods, yielding different results that falsely suggested to the doctor that the patient's analyte values had changed.  This was the case with a patient treated by Dr. Phelan, who was the subject of internal emails at Theranos." The government does not tie this allegation to Ms. Holmes.

- The government asserts, in inflammatory language, that Theranos "senior managers" destroyed Theranos' database of patient data in 2018. *Id.* at 79-80. According to the government, Theranos produced the database to the government but failed to provide a password needed to access the database; Theranos employees and consultants then dissembled the hardware that housed the database.  *Id.*  The government claims that these actions "place the government's evidence in context as part of a larger fraud scheme, one which Theranos was attempting to hide and conceal even after the indictment in this case." *Id.* at 81.  The government does not tie these wild accusations to Ms. Holmes, nor could it, as Ms. Holmes had not been part of company management for several months and had no involvement in responding to these requests.

- The government alleges that acts by David Boies, a lawyer for Theranos and Ms. Holmes, and by Theranos' then-General Counsel Heather King are evidence of Ms. Holmes' mental state. Specifically, it alleges that "[o]n or about September 8, 2015, David Boies, at Theranos's direction, wrote to the Editor-in-Chief of Dow Jones [which publishes the *Wall Street Journal*] in an attempt to quash [journalist John] Carreyrou's pending story" on Theranos. *Id.* at 60. The government further alleges that "[o]n or about October 8, 2015, Boies and Heather King (Theranos's General Counsel) spoke to the Dow Jones' Editor-in-Chief and others in an attempt to quash Carreyrou's pending story." *Id.* The government makes no allegation about Ms. Holmes' role in these actions.

These examples illustrate the government's repeated failure to connect its sensational allegations to any knowledge or conduct on Ms. Holmes part. This evidence is irrelevant and highly prejudicial and should be excluded.

## ARGUMENT

### I. The Government Fails to Connect These Allegations to Ms. Holmes

This Court should exclude the alleged bad acts and false or misleading statements of Theranos agents that lack the requisite connection to Ms. Holmes. That "guilt" is an "individual and personal" matter, *Kotteakos v. United States*, 328 U.S. 750, 772 (1946), "is one of the most fundamental principles of our jurisprudence[,]" *Bridges v. Wixon*, 326 U.S. 135, 163 (1945) (Murphy, J., concurring). This doctrine of "personal guilt . . . prevents the persecution of the innocent for the beliefs and actions of others." *Id.* In other words, "[v]icarious liability . . . has no place in the criminal law as our Rules of Evidence recognize." *United States v. Cadden*, 2018 WL 2108243, at *6 (D. Mass. May 7, 2018); *see also Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1367 (11th Cir. 1999) ("[D]ue process prohibits the state from imprisoning a person without proof of some form of personal blameworthiness more than [an agency relationship]."). This principle is particularly salient in the context of wire fraud, because "the crime of wire fraud requires the specific intent to utilize deception to deprive the victim of money or property." *United States v. Miller*, 953 F.3d 1095, 1099 (9th Cir. 2020); *see also United*

*States v. Rank*, 805 F.2d 1037, 1986 WL 18059, at *4 (6th Cir. 1986) ("declin[ing] to adopt the government's theory, akin to a respondeat superior basis for criminal liability" for a president and CEO of a company in a mail fraud case).

    Thus, as a general rule, a defendant is liable only for her own actions, including her own actions in directing others to commit wire fraud. *See United States v. Holmes*, 2020 WL 666563, at *20 (N.D. Cal. Feb. 11, 2020) (citing *United States v. Ciccone*, 219 F.3d 1078, 1084 (9th Cir. 2000)) (recognizing that a defendant need not make the false or misleading wire transmission himself where he "directs" employees to make false or misleading statements and acts with "intent to defraud the alleged victims"). A defendant may be liable for another's actions in only limited circumstances. *See generally* Charles Doyle, Congressional Research Service, *Corporate Criminal Liability: An Overview of Federal Law* at 5 (2013) (describing "three situations in which corporate officials and employees may face criminal liability under federal law even though they themselves did not commit, and perhaps did not even know of, the misconduct of other officers or employees"). The only two circumstances that could theoretically apply in this case are conspiracy (or coschemer) liability and complicity. *Id.* at 5-7.[2] Conspiracy liability makes a defendant liable for the reasonably foreseeable actions of fellow co-conspirators in furtherance of a given conspiracy, while accomplice liability makes a defendant liable for another's actions if the defendant aided or abetted that individual in committing a crime and knew its full scope in advance. *United States v. Tarallo*, 380 F.3d 1174, 1184 (9th Cir. 2004), *amended*, 413 F.3d 928 (9th Cir. 2005); *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014) (discussing accomplice liability principles). The government cannot convict Ms. Holmes for the statements or acts of anyone other than Ms. Holmes or one of her supposed accomplices or coconspirators.[3]

---

[2] The third exception, not relevant to this case, arises under the "'responsible corporate official' doctrine." Charles Doyle, Cong. Research Serv., *Corporate Criminal Liability: An Overview of Federal Law* 7 (2013). This doctrine acknowledges that, in certain "regulatory schemes[,]" Congress has dispensed with "the conventional requirement of criminal conduct—awareness for some wrongdoing." *Id.* Wire fraud, which requires the specific intent to defraud, is not such an offense.

[3] To date, the government has disclosed only four alleged co-conspirators, one of whom is Mr. Balwani. *See* Sealed Bill of Particulars at 26, ECF No. 377.

MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS' AGENTS AND EMPLOYEES
CR-18-00258 EJD

6

For these reasons, evidence of acts or statements by unconnected Theranos employees is irrelevant. Take, for example, the statement by a Theranos sales representative about FDA clearance discussed earlier. The government has identified no evidence suggesting that Ms. Holmes conspired with this representative, assisted this representative, or directed this representative to make this statement. Because the law does not hold Ms. Holmes vicariously liable for the actions or false or misleading statements of agents or employees of Theranos, their alleged bad acts or statements are not "of consequence" to the claims and defenses presented here. *See* Fed. R. Evid. 401(b); *Cadden*, 2018 WL 2108243, at *1, 6 (excluding evidence of patient deaths in mail fraud racketeering trial of low and mid-level employees "not alleged to have had any role in the preparation of the tainted drugs").

## II.  Rule 403 Bars This Evidence

Even if such evidence had some tangential probative value, the combined prejudice, confusion, and time lost in mini-trials resulting from admitting similar acts or statements would together substantially outweigh that limited probative value. *See* Fed. R. Evid. 403. Few things in this case could cause more prejudice to Ms. Holmes than the government's wrongful attempt to attribute acts and statements of others to Ms. Holmes, which risks a finding of guilt by association with bad acts or false statements of others. *See United States v. Fitzgerald*, 2007 WL 1704943, at *1-2 (S.D. Cal. June 11, 2007) (granting new trial where government introduced evidence of bad acts by others against defendant), *aff'd*, 279 F. App'x 444, 445 (9th Cir. 2008) (affirming because there was "no direct link to the crime with which [the defendant] was charged"); *United States v. Dunn*, 640 F.2d 987, 989 (9th Cir. 1981) (vacating conviction based on government's impeachment of witness through "the crimes of her brother"). And "[g]uilt by association is just what Fed. R. Evid. 403 was intended to exclude." *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992). Finally, if the government were permitted to introduce evidence of acts or statements of individual Theranos employees, the parties would inevitably end up conducting mini-trials before the jury regarding each act or statement by other persons, the reasons for those acts and statements, and whether the requisite connection to Ms. Holmes exists for each such act or statement. This trial will be long enough without these evidentiary discursions into the acts of Theranos employees, and such mini-trials will further confuse jurors.

For all these reasons, the Court should exclude evidence of any alleged bad acts or false or misleading statements by Theranos employees (not alleged to be co-conspirators or accomplices) that lack the requisite connection to Ms. Holmes. The defense cannot reasonably anticipate in advance all such evidence that the government will attempt to introduce. It is crystal clear, however, that the government does intend to introduce such evidence and to argue that Ms. Holmes is "on the hook" for such acts or statements. *See* Feb. 10, 2020 Mot. Hr'g Tr. at 66:23-67:4. The Court thus should exclude all such evidence and argument and require the government to proffer in advance the evidence that it believes will connect each such statement or act to Ms. Holmes. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."); *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (explaining that this requires evidence sufficient for a jury to find the predicate fact by a "preponderance of the evidence"); *United States v. Evans*, 728 F.3d 953, 957 (9th Cir. 2013) (describing a Rule 104 pretrial hearing for such a purpose in the proceedings below); Fed. R. Evid. 104(c) (authorizing such a hearing).[4] This approach will "insure[] that the jury will not be tainted by hearing prejudicial evidence—or learning of its existence—until the [government] has demonstrated that it will be able to provide an adequate foundation for admission." *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992).

## CONCLUSION

For the foregoing reasons, Ms. Holmes respectfully requests an order precluding the government from introducing evidence of bad acts or false or misleading statements of Theranos agents or employees other than her alleged co-conspirators and alleged accomplices. At the very least, the

---

[4] For much the same reasons, the government cannot introduce these bad acts or statements of others under Rule 404(b). Again, it would have to provide "'sufficient evidence to support a finding by the jury that *the defendant* committed the similar act.'" *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (emphasis added) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). This means that it would have to introduce sufficient evidence for a jury to establish Ms. Holmes' liability before attributing them to her for the purposes permitted under Rule 404(b). *See United States v. Heath*, 188 F.3d 916, 922-23 (7th Cir. 1999) (finding insufficient evidence for Rule 404(b) purposes because the government failed to establish that the defendant had aided and abetted the one committing the prior bad acts).

MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS' AGENTS AND EMPLOYEES
CR-18-00258 EJD

8

admission of such evidence should depend on a sufficient pretrial showing pursuant to Federal Rule of Evidence 104.

DATED: November 20, 2020

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

# CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **[PROPOSED] ORDER GRANTING MS. HOLMES' MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS' AGENTS AND EMPLOYEES** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Hon. Edward J. Davila |

[PROPOSED] ORDER GRANTING MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF
THERANOS' AGENTS AND EMPLOYEES
CR-18-00258-EJD

This Cause having come before the Court upon Defendant Elizabeth A. Holmes' Motion to Exclude Bad Acts and Statements of Theranos' Agents and Employees. After due consideration of the filings, the governing law and the argument of the parties:

IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.

IT IS FURTHER ORDERED that the government shall not introduce at trial evidence, argument, or references to bad acts or false or misleading statements of Theranos agents or employees other than her alleged co-conspirators and alleged accomplices.

IT IS SO ORDERED.

Dated: _____

_____
Hon. Edward J. Davila
United States District Judge

[PROPOSED] ORDER GRANTING MOTION TO EXCLUDE BAD ACTS AND STATEMENTS OF THERANOS' AGENTS AND EMPLOYEES
CR-18-00258 EJD