JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>     Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403**<br>Date:    Jan 22, 2021<br>Time:   10:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

## MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS

PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move *in limine* to exclude evidence of Theranos' alleged violations of industry standards and government regulations.  Ms. Holmes makes this motion pursuant to Federal Rules of Evidence 401, 402, and 403.  The Motion is based on the below Memorandum of Points and Authorities, the exhibits that accompany this motion, the record in this case, and any other matters that the Court deems appropriate.


DATED: November 20, 2020


/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
CR-18-00258 EJD

i

1
2
## **TABLE OF CONTENTS**
3
**Page**
4
MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1
5
BACKGROUND ..........................................................................................................................1
6
7
ARGUMENT ...............................................................................................................................2
8
9
      I.       The Government's Evidence of Alleged Violations of Industry Standards
Requires Impermissible Legal Opinions ................................................................2
10
      II.     The Evidence Is Irrelevant .....................................................................................4
11
12
      III.    Rule 403 Bars This Evidence .................................................................................6
13
CONCLUSION .............................................................................................................................7
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Elizabeth Holmes moves, pursuant to Federal Rules of Evidence 401-403, to exclude evidence regarding Theranos' purported "[v]iolations of industry standards and government regulations or rules regarding research and development procedures, medical devices and clinical laboratory practices." Ex. 1 at 7 (Mar. 6, 2020 Rule 404(b) Notice). The government has noticed its intent to introduce such evidence under Rule 404(b) through expert opinion and through agency investigatory reports. Such evidence is wholly impermissible for at least three reasons. First, the government's evidence is premised on alleged violations of federal regulations. Testimony that provides a legal standard and applies that standard to the facts of a case is wholly inadmissible. Second, any alleged violation of rules, regulations, or industry standards is not probative of Ms. Holmes' intent to defraud and should be excluded for that reason alone. Lastly, this evidence would be highly prejudicial and would run the serious risk that a jury may convict Ms. Holmes for alleged negligent laboratory practices unmoored from the government's actual allegations in this case.

The government did not charge Ms. Holmes with willful violations of applicable federal regulations. If it had, however, *the jury* would decide whether such violations occurred. The government cannot permissibly present expert witnesses to tell the jury that Theranos violated federal law or admit documents that contain allegations to that effect. It is hard to imagine a more prejudicial way of proving a criminal case. This evidence should be excluded.

## BACKGROUND

In the section of its initial Rule 404(b) disclosure entitled "[v]iolations of industry standards and government regulations or rules regarding research and development procedures, medical devices and clinical laboratory practices," the government alleged: "[i]n furtherance of their scheme to defraud, Defendants disregarded and failed to conform to industry standards as well as government regulations or rules regarding research and development procedures, medical devices and clinical laboratory standards." Ex. 1 at 7. The government alleged the following acts in support of this assertion:

- "[I]n conducting research and development purportedly aimed at validating its assays, Theranos failed to conduct adequate validation studies, relying on insufficient data to claim that their tests were valid, accurate, and reliable."

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
CR-18-00258 EJD

1

- "Theranos also cut corners in its Arizona research and development testing, failing to implement a clear protocol for informed consent for trial participants and fostering a coercive environment for testing."

- "Theranos's CLIA lab was the site of several violations of these rules and standards including the use of expired reagents, failure to implement and carry out proper proficiency testing and quality control processes, and inadequate record-keeping. Under Defendants' supervision, Theranos's CLIA lab also improperly failed to develop, maintain, and follow adequate standard operating procedures for its clinical tests."

- "Defendants also exercised an improper degree of control and influence over the operation of Theranos's CLIA lab despite their lack of medical education or training. Defendants, and Balwani in particular, were deeply involved in clinical decisions that should have been left to the discretion of the laboratory director—even overruling the laboratory director at times.  In exercising that control, Defendants consistently made decisions that prioritized preserving Theranos's reputation and secrecy at the expense of providing complete information to doctors and patients."

*Id.*

The government explained in a subsequent disclosure that it may present expert testimony on these subjects. Ex. 2 at 13 (April 3, 2020 Rule 404(b) Notice).  In its later supplemental disclosure, the government did not disclose any evidence regarding research and development validation or clinical trials and otherwise omitted any mention of those allegations.  Ex. 3 at 65-67 (Sept. 28, 2020 Rule 404(b) Notice).  The government's supplemental disclosure identified four emails between Theranos' former Lab Director, Adam Rosendorff, and Mr. Balwani, as well as investigatory findings from government regulatory agency reports related to interpretations and alleged violations of government regulations.  The government asserted that this evidence "tends to show that Theranos's technology was, in fact, not capable of consistently producing accurate and reliable results . . . and that its proprietary analyzer had accuracy and reliability problems."  *Id.* at 67-68.

## ARGUMENT

### I.    The Government's Evidence of Alleged Violations of Industry Standards Requires Impermissible Legal Opinions

The government's supplemental disclosure makes clear its intent to offer opinions by Theranos' former lab director, Adam Rosendorff—whom the government has disclosed as an expert—that

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
CR-18-00258 EJD

2

Theranos violated federal regulations.  Testimony regarding interpretation of federal regulations and how they apply to Theranos are "inappropriate subjects for expert testimony."  *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992); *see also S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 749 (9th Cir. 2005) ("Experts may interpret and analyze factual evidence but may not testify about the law.").  Indeed, testimony that is "couched . . . in the form of a legal conclusion—ostensibly based on what appears to be [the witness'] own survey of state laws . . . is improper and must be excluded."  *Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *2 (N.D. Cal. June 26, 2012) (Davila, J.).

The documents on which the government relies confirm its intent to elicit impermissible legal opinions from Rosendorff.  For example, the government discloses that "Dr. Rosendorff emailed Balwani about 'areas which we are currently not compliant in terms of CLIA law.'"  Ex. 3 at 65 (citing Ex. 24 (THPFM00000266077)).  In that email, Dr. Rosendorff cited a federal regulation and explained that "[his] conclusions and interpretations of the" regulations were that Theranos was in violation of two of the regulation's subsections.  Ex. 24 at 10.[1]  In another email disclosed by the government, Rosendorff states that Theranos is not "100%" in compliance with a regulation governing the manner in which proficiency testing is conducted.  Ex. 26 at 65 (TS-0231083).  The legal conclusions in this offered evidence are exactly the type of testimony prohibited by the case law.  *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 1997 WL 34605244, at *8 (N.D. Cal. Jan. 6, 1997) ("interpretations and explanations of the law are not proper subjects for expert testimony").

The law on this issue is settled; Dr. Rosendorff cannot permissibly offer the jury an opinion that is simply his "interpretation" of federal regulation, whether live on the stand or in emails.  *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (stating that expert testimony is not proper for issues of law because the role of experts is to interpret and analyze factual evidence and not to testify about the law); *United States v. Caputo*, 374 F. Supp. 2d 632, 646 (N.D. Ill. 2005) (stating "[expert] may not testify about whether Defendants met their obligations under the Safe Medical

---

[1] Ms. Holmes is not on this email exchange.

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403 CR-18-00258 EJD

3

1 Devices Act of 1990, because such testimony would constitute an impermissible legal conclusion"). 

2 Nor can any other witness, including the government's retained expert, Dr. Stephen Master.  *See* Ms. 

3 Holmes' Motion To Exclude Expert Opinions of Dr. Stephen Master 20-23.

4 **II.     The Evidence Is Irrelevant**

5          Additionally, all of the disclosed evidence in this category—whether or not based on legal 

6 opinions—is irrelevant.  Any failure by Theranos to follow industry standards or federal regulations is 

7 not probative of the government's allegations in this case.  The government has alleged that Ms. Holmes 

8 misrepresented to investors and paying customers that Theranos could provide accurate and reliable test 

9 results despite knowing "that Theranos's technology was, in fact, not capable of consistently producing 

10 accurate and reliable results."  TSI, ECF No. 469, ¶ 16; *see also id.* ¶ 12(A).  But the alleged violations 

11 disclosed by the government do not tend to prove Theranos' inability to "consistently produc[e] accurate 

12 and reliable results."  *Id.*  Dr. Rosendorff does not offer any such opinion.  Even the government's 

13 retained expert, Dr. Stephen Master, did not offer that opinion.  He opined only that Theranos' alleged 

14 "lack of adherence" to industry standards "had *the potential* to adversely impact test accuracy and 

15 reliability"—not that any failure in fact led to inaccurate or reliable results.  Ex. 6 at 17 (Master Rpt.) 

16 (emphasis added).

17          None of four sub-categories of evidence disclosed by the government has any probative value.

18          ***Research and Development Validation Studies***.  The government claims that, "in conducting 

19 research and development purportedly aimed at validating its assays, Theranos failed to conduct 

20 adequate validation studies, relying on insufficient data to claim that their tests were valid, accurate, and 

21 reliable." Ex. 1 at 7.  Consistent with its broader litigation strategy regarding accuracy and reliability of 

22 tests in this case, the government does not point to any data in support of this assertion.  It has not 

23 identified any reliable evidence establishing what constitutes "adequate validation studies" or sufficient 

24 "data," nor has it disclosed evidence that Theranos' alleged, vague failures on this front led to inaccurate 

25 and unreliable results.  Indeed, the government's supplemental disclosure fails to cite a single document 

26 supporting this assertion, suggesting that the government has abandoned this allegation.  Ex. 3 at 65.

27

28 MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS 
OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403 
CR-18-00258 EJD

4

***Clinical Trials.***  The government next claims that "Theranos also cut corners in its Arizona research and development testing."  Ex. 1 at 7.  It points to two purported violations:  "failing to implement a clear protocol for informed consent" and "fostering a coercive environment for testing."  *Id.*[2]  These allegations are hopelessly vague.  It is entirely unclear what the government means by a "clear protocol."  What, for example, is a "coercive environment for testing," and how is it relevant?  None of this has any connection to accuracy and reliability of Theranos' technology.  Again, the government's supplemental disclosure fails to cite any evidence supporting these allegations, suggesting their abandonment.  Ex. 3 at 65.

***CMS and CDPH Reports and Correspondence.***  The vast majority of the evidence offered by the government for this Rule 404(b) category is correspondence and agency reports related to investigations by CMS and the California Department of Public Health.  Ex. 3 at 65-67.  The inadmissibility of this evidence is addressed in detail in Ms. Holmes' contemporaneously filed motions to exclude the findings of those agencies.[3]  Briefly, the agency findings have only minimal probative value, if any, because they do not reach findings about the accuracy and reliability of Theranos' tests.  The danger of unfair prejudice and misleading the jury substantially outweighs their probative value.  Additionally, the reports are hearsay; the public records exception does not permit their admission in this criminal case, and both reports are replete with references to statements from Theranos personnel and therefore contain hearsay within hearsay that cannot be introduced for the truth of the matter asserted.

***Theranos' Control over its Laboratory.***  The government's last assertion relates to an alleged "improper degree of control and influence over the operation of Theranos's CLIA lab despite their lack of medical education or training."  *Id.* at 7.  The government claims that "Defendants, and Balwani in particular, were deeply involved in clinical decisions that should have been left to the discretion of the

---

[2] 45 C.F.R. § 46.116 provides that "[i]nformed consent as a whole must present information in sufficient detail relating to the research, and must be organized and presented in a way that does not merely provide lists of isolated facts, but rather facilitates the prospective subject's or legally authorized representative's understanding of the reasons why one might or might not want to participate."

[3] *See* Ms. Holmes' Motion to Exclude Evidence of CMS Survey Findings and Sanctions; Ms. Holmes' Motion to Exclude Certain Evidence Relating to Theranos' Interactions with Government Regulatory Agencies.

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
CR-18-00258 EJD

1    laboratory director—even overruling the laboratory director at times." *Id.*  Critically, the government

2    fails to connect any of these assertions to specific actions by Ms. Holmes.  The documents it cites are

3    interactions between Balwani and Dr. Rosendorff.  The government fails to disclose any expert opinion

4    on what constitutes an "improper degree of control and influence" over a laboratory's operations.  In any

5    event, a reasonable debate between a senior executive and lab management regarding whether a

6    regulation applies or how it applies is not probative of intent to defraud.

7    **III.    Rule 403 Bars This Evidence**

8         Even if this evidence were otherwise admissible and minimally relevant, it should be excluded

9    because the danger of "unfair prejudice, confusing the issues, [or] misleading the jury" substantially

10   outweighs any minimal probative value.  Fed. R. Evid. 403; *see also United States v. Hearst*, 563 F.2d

11   1331, 1336 (9th Cir. 1977).  Evidence is unfairly prejudicial when it has "an undue tendency to suggest

12   decision on an improper basis, commonly, though not necessarily, an emotional one."  *United States v.*

13   *Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (quoting *Old Chief v. United States*,

14   519 U.S. 172, 180 (1997)).  For the reasons already stated, the evidence is minimally probative at best.

15        At the same time, this evidence is incredibly prejudicial.  If government witnesses are permitted

16   to interpret federal law to opine that Theranos violated the law, there is a high risk the jury will convict

17   Ms. Holmes based on their belief that Theranos engaged in unlawful conduct—unrelated to whether Ms.

18   Holmes intended to defraud investors or customers in this case.  And the risk of prejudice is particularly

19   stark here, since the government has failed to connect the at-issue actions to Ms. Holmes, as evidenced

20   by the documents and testimony it offered on this issue in its Rule 404(b) notice.  Ex. 3 at 65-67.

21        Moreover, if the Court were to permit this evidence, the trial would devolve into a referendum on

22   Theranos' lab practices, which would confuse the issues and waste time.  Rebutting the government's

23   allegations of regulatory violations would require extensive evidence regarding each relevant decision

24   made by Theranos' (different) lab directors, the reasoning behind those decisions, and the connection (if

25   any) to Ms. Holmes.  *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *1 (C.D. Cal.

26   Dec. 9, 2013) ("allowing [the parties] to introduce this evidence would result in a series of 'mini-trials'

27

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
     OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
     CR-18-00258 EJD
                                                6

1    regarding the grounds for the decisions and the regulatory schemes of the various states involved").

2    Because the danger of unfair prejudice and jury confusion substantially outweighs any probative value,

3    the Court should also exclude this evidence under Rule 403.

4                                                    **CONCLUSION**

5                   For the foregoing reasons, Ms. Holmes respectfully requests an order excluding evidence of

6    alleged violations of industry standards and government regulations or rules regarding research and

7    development procedures, medical devices, and clinical laboratory practices.

8

9    DATED:  November 20, 2020                              Respectfully submitted,

10

11                                                          /s/ Amy Mason Saharia
                                                            KEVIN DOWNEY
12                                                          LANCE WADE
                                                            AMY MASON SAHARIA
13                                                          KATHERINE TREFZ
                                                            Attorneys for Elizabeth Holmes
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
     OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
     CR-18-00258 EJD
                                                         7

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all

3    counsel of record.

4

5                                                        /s/ Amy Mason Saharia
                                                         AMY MASON SAHARIA
6                                                        Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF ALLEGED VIOLATIONS
      OF INDUSTRY STANDARDS AND GOVERNMENT REGULATIONS UNDER RULES 401-403
      CR-18-00258 EJD