JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) |
| | ) **MS. HOLMES' MOTION TO EXCLUDE** |
| v. | ) **THERANOS' CUSTOMER-SERVICE** |
| | ) **SPREADSHEETS UNDER FEDERAL RULES** |
| ELIZABETH HOLMES and | ) **OF EVIDENCE 401-404 AND 801-803** |
| RAMESH "SUNNY" BALWANI, | ) |
| | ) Date:      January 22, 2021 |
| Defendants. | ) Time:     10:00 AM |
| | ) CTRM:  4, 5th Floor |
| | ) |
| | ) Hon. Edward J. Davila |
| | ) |
| | ) |

MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

## MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS

PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move *in limine* to exclude evidence relating to Theranos' customer-service spreadsheets. Ms. Holmes makes this motion pursuant to Federal Rules of Evidence 401-404 and 801-803.  The Motion is based on the below Memorandum of Points and Authorities, the exhibits and declarations that accompany this motion, the record in this case, and any other matters that the Court deems appropriate.


DATED: November 20, 2020

> /s/ Amy Mason Saharia
> KEVIN DOWNEY
> LANCE WADE
> AMY MASON SAHARIA
> KATHERINE TREFZ
> Attorneys for Elizabeth Holmes

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT .............................................................................................................................3

    I.      The Contents of Theranos' Customer-Service Spreadsheets Are Double
Hearsay and Inadmissible to Show Ms. Holmes' State of Mind. .........................3

    II.     The Customer-Service Spreadsheets Have No Probative Value. .........................5

    III.    The Customer-Service Spreadsheets Will Unfairly Prejudice Ms. Holmes and
Confuse and Mislead the Jury. ..............................................................................7

          A.     The Customer-Service Spreadsheets Have Limited Probative Value....................7

          B.     The Customer-Service Spreadsheets Are Unfairly Prejudicial,
Confusing, and Misleading. ..................................................................................8

CONCLUSION ..........................................................................................................................9

MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

ii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendant Elizabeth Holmes moves, pursuant to Federal Rules of Evidence 401-403, 404(b), and

3   801-803, to preclude the government from introducing at trial Theranos' customer-service spreadsheets.

4   Like every customer-facing company, Theranos received customer feedback.  The government has

5   identified as exhibits Excel spreadsheets that purport to summarize that feedback.  Although labeled

6   "complaint logs" by the government, the spreadsheets appear to contain summaries of various customer-

7   service communications.  The government intends to offer these documents at trial to demonstrate that

8   Ms. Holmes "knew that Theranos's tests . . . suffered from accuracy problems that rendered them

9   unreliable and not suitable for informing clinical treatment decisions."  Ex. 1 at 2 (Mar. 6, 2020 Gov't

10  Rule 404(b) Notice); *see* Ex. 2 (Apr. 3, 2020 Supp. Gov't Rule 404(b) Notice).

11     The documents should be excluded for three reasons.  *First*, the spreadsheets are hearsay (and

12  their contents are double hearsay), not subject to any exception, and inadmissible for the truth of the

13  matter asserted.  The government seeks to demonstrate that Theranos' technology was flawed and its

14  tests inaccurate and unreliable based on the statements within the documents complaining of problems

15  and, further, that such purported flaws and inaccuracies were communicated to persons at the company.

16  The latter is hearsay and the former hearsay within hearsay.  As a result, the spreadsheets are

17  inadmissible for the government's stated purpose—to show that Ms. Holmes knew that the

18  communications reported in the spreadsheets revealed serious defects in Theranos technology.  This

19  theory of relevance requires accepting that the complained-of events occurred as reported—*i.e.*, that the

20  customer or doctor complaints reported events that actually occurred and revealed defects in Theranos'

21  blood tests.  Because no hearsay exceptions apply, Theranos' customer-service records are inadmissible.

22     *Second*, the spreadsheets are irrelevant under Rules 401 and 402.  The spreadsheet entries do not

23  tend to show defects in Theranos' technology, and the government has failed to connect the spreadsheets

24  to Ms. Holmes.  Many entries are simply questions, not complaints or accusations.  Moreover, to the

25  extent the spreadsheets identify potential errors, anecdotal evidence of potentially erroneous results is

26  irrelevant and unfairly prejudicial for the reasons set forth in a separate motion filed contemporaneously

27

28  MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1

herewith.  *See* Ms. Holmes' Mot. To Exclude Evidence of Anecdotal Test Results.  All laboratory tests have inherent error rates, and the results covered by these spreadsheets reflect only a tiny fraction of the millions of results released by Theranos.  Lastly, the government has identified no evidence showing that Ms. Holmes reviewed, was familiar with, or even had access to the spreadsheets.  As a result, they say nothing about what she knew or did not know.

*Third*, the risk of unfair prejudice and juror confusion far outweighs any probative value of the spreadsheets.  *See* Fed. R. Evid. 403.  The spreadsheets contain inflammatory, unproven accusations.  And because the spreadsheets discuss hundreds of results (out of between 7 and 10 million blood results generated by Theranos tests), they are likely to lead jurors to misunderstand Theranos' testing error rate.  Their admission also risks that jurors may jump to the conclusion that Ms. Holmes was familiar with the spreadsheets' contents, and might assume that the complaints themselves had been verified.  All of this would require counsel to contextualize and explain the contents of the spreadsheets, diverting precious time away from the real issues in this case.

The Court should exclude this evidence under Rules 401-403, 404(b) and 801-803.

## BACKGROUND

Theranos received feedback from many customers, both highly satisfied and dissatisfied ones.  The government has noticed its intent to introduce into evidence spreadsheets that purport to memorialize certain customer-service communications and follow-up.  Ex. 1 at 2; *see* Ex. 2.

Although the spreadsheets vary in formatting and length, they are generally organized in the following way.  The spreadsheets contain a number of categories, including the location of the lab, the date, the "CSR" (presumably the customer service representative who interacted with the customer), the patient and physician names, the accession number, the visit date, the reason for the call, the "issue," the name of the test, a call-back number, and "Resolution Notes."  Two spreadsheets contain a column named "Max's Notes"; the others do not.  In the spreadsheets, many of the entries are populated with information, but others are empty.  For example, the "Resolution Notes" column is blank for a number of the customer communications in multiple spreadsheets.

MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

From the face of the spreadsheets, it is not clear when they were compiled or under what circumstances.  For example, the spreadsheets do not say who entered the information received from the patient, doctor, or doctor's agent; whether that same person actually spoke with the customer; when the underlying information was first memorialized; and when the spreadsheet was compiled.  The entries often contain industry shorthand or jargon.  The spreadsheets do not all follow the same formatting: some are color coded, while others are not.  Across the spreadsheets identified by the government in Rule 404(b) correspondence, there are hundreds of entries.

The spreadsheets purport to reflect a variety of customer feedback.  They summarize patient inquiries about everything from not being able to use a Theranos coupon, to waiting in line at Walgreens, to the way in which the phlebotomist administered the blood draw, to delays in receiving lab results, to the results themselves.  They also purport to reprise communications from doctors or their assistants, who contacted Theranos with questions as they set about interpreting lab results, comparing results from different lab tests, or assessing specific lab results.  To state the obvious, the spreadsheets say nothing about the tens of thousands of patients and doctors who never raised any questions about their experience with Theranos.

## ARGUMENT

### I. The Contents of Theranos' Customer-Service Spreadsheets Are Double Hearsay and Inadmissible to Show Ms. Holmes' State of Mind.

The spreadsheets are hearsay, and their contents hearsay within hearsay, not subject to any exception.  *See* Fed. R. Evid. 801, 803.  Because the customer-service spreadsheets are "relevant only if true," 2 *McCormick on Evidence* § 246 n. 6 (Robert P. Mosteller et al. eds., 8th ed. 2020 Update) (citing *United States v. Sesay*, 313 F.3d 591, 599-600 (D.C. Cir. 2002)), this Court should exclude them from evidence.

The contents of the spreadsheets, *i.e.*, the purported summaries of customer communications, are plainly hearsay within hearsay and inadmissible for the truth of the matter asserted.  *See* Fed. R. Evid. 802, 805.  Customer-service complaints do not reflect sufficient indicia of reliability to qualify for a

hearsay exception, as "the customer is under no duty to report accurately." *Shimozono v. May Dep't Stores Co.,* 2002 WL 34373490, at \*13 (C.D. Cal. Nov. 20, 2002).  It is well established, for example, that customer complaints are not business records.  As the Fourth Circuit explained, when "the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 194-95 (4th Cir. 2003) (quoting Fed. R. Evid. 803 advisory committee's notes); *see also Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342-43 (10th Cir. 1995).

The government nevertheless seeks to introduce the customer-service spreadsheets on the theory that they tend to show Ms. Holmes knew about problems with Theranos' testing.  ECF No. 469, ¶ 16.  This is a hearsay purpose, however, because the government's argument is predicated on the fact "that the incidents complained of occurred as reported." *Boddicker v. Am. Honda Motor Co.*, 2011 WL 6132099, at \*4 (N.D. Iowa Dec. 8, 2011).

The government's theory requires three inferential steps: (1) the spreadsheets show that errors occurred; (2) those errors manifested potential, underlying problems in Theranos' technology; (3) Ms. Holmes was familiar with the spreadsheets and therefore knew about problems with Theranos' technology.  But if the complained-of incidents occurred as reported or resulted from issues other than problems with Theranos' technology, then it does not logically follow that those events evidenced potentially widespread deficiencies in Theranos testing.  That is because the mere fact that a question or complaint was raised says nothing about the accuracy or the reliability of the underlying technology.  The doctor or patient may have incomplete information; may have misunderstood the results; or may simply have lodged an "accusatory and self-serving" complaint.  *Id.*

The government's chain of inferences all depends on the veracity of untested summaries of statements made by patients and doctors.  *See* 2 McCormick on Evidence, *supra*, § 246 n. 6.  To allow the admission of the spreadsheets on the government's theory "would be to permit a loophole in the hearsay rule large enough to swallow the rule itself." *Sesay*, 313 F.3d at 600.

MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD
4

1    There is another reason to exclude the customer-service spreadsheets:  the spreadsheets

2    themselves are also inadmissible hearsay.  *See United States v. Orm Heing*, 679 F.3d 1131, 1142 (9th

3    Cir. 2012) ("[E]ach [layer of hearsay] must conform to an exception in order for the testimony to be

4    admissible" for the truth of the matter asserted).  The government has identified no information showing

5    that these spreadsheets were generated in the regular course of Theranos' business.  *See* Fed. R. Evid.

6    803(6).  It is unclear who compiled the spreadsheets, when they were compiled, or for what purpose.

7    The government has not explained, for instance, whether complaints were entered at the time they were

8    received, and whether the Theranos representative who spoke with the patient, doctor, or staff personally

9    placed the information in the spreadsheet.  It is unclear whether Theranos contemporaneously compiled

10   customer complaints for some business purpose or whether, instead, this document was produced for the

11   purpose of litigation or this prosecution.  *See Paddack v. Dave Christensen, Inc*., 745 F.2d 1254, 1258

12   (9th Cir. 1984) (audit reports were not business records because of the "irregular frequency and nature

13   with which [they] were conducted").  These same issues may well prevent the government from being

14   able to authenticate the spreadsheets at trial as well.

15   For these reasons, the government's proffered evidence is inadmissible to show that Ms. Holmes

16   "knew that Theranos's tests . . . suffered from accuracy problems that rendered them unreliable and not

17   suitable for informing clinical treatment decisions."  Ex. 1 at 2.

18   **II.    The Customer-Service Spreadsheets Have No Probative Value.**

19   A court must exclude evidence that is of no consequence to the charges in a case.  Fed. R. Evid.

20   401, 402.  Here, the government's evidence is anecdotal and lacks any connection to Ms. Holmes.  For

21   these reasons, the existence of spreadsheets summarizing customer communications is not probative of

22   the government's allegation that Ms. Holmes was aware of systemic problems with Theranos'

23   technology or tests.

24   *First*, every customer-facing company receives customer complaints; lab tests have inherent

25   imprecision; and every lab makes errors.[1]  As a result, and in light of the unreliability of customer

26

27   _____

     [1] *See, e.g.,* Julie A. Hammerling, *A Review of Medical Errors in Laboratory Diagnostics and*

     MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS

28   UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803

     CR-18-00258 EJD

5

complaints, *supra* p. 4, the fact that a complaint was lodged does not tend to show that an error occurred, much less that the technology that produced the result was flawed. And here the potential lab errors raised in the spreadsheets reflect only a tiny fraction of the millions of results produced by Theranos, and are therefore not a statistically representative sample of all Theranos testing. Thus, even if one could assume that every complaint in the spreadsheets was valid—an inference the Rules of Evidence forbid, *supra* p. 4—the sample size is too small to support a reasonable inference that they reflect systemic defects in Theranos technology or tests, or that the complaints would have put Ms. Holmes on notice of this fact.

*Second*, the government has identified no evidence showing that Ms. Holmes reviewed, was familiar with, or even had access to the spreadsheets. Ms. Holmes did not oversee customer service, and the government has pointed to no evidence showing that she knew of the contents of the spreadsheets at or near the time complaints were raised. Lacking any connection to Ms. Holmes, the customer-service spreadsheets simply say nothing about what Ms. Holmes knew or did not know.

*United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010), is instructive. There, the government alleged that baseball player Barry Bonds had perjured himself when he testified before the grand jury that he had not taken performance-enhancing drugs. In order to prove this charge, the government sought to admit log sheets from a Bay-area laboratory in the name of "Barry Bonds" that reflected positive urine tests for steroids. The district court excluded this evidence as irrelevant, and the Ninth Circuit affirmed. The court of appeals explained that the government had failed to "link" the documents to the defendant through testimony. *Id*. at 508. Because the government "could not in fact relate [the logs] to Bonds," the logs did not tend to prove that Bonds had actually tested positive, and, as a result, were irrelevant to the ultimate question whether he had lied to the grand jury. *Id*.

---

*Where We Are Today*, 43 LabMedicine 41, 41 (2012) (citing study concluding that "the total [lab] testing process error rate ranges widely from 0.1% to 3.0%"). As applied to the 7 to 10 million tests performed by Theranos, this would yield between 7,000 and 300,000 expected errors. *See* Ms. Holmes' Motion to Exclude Evidence of Anecdotal Test Results at 3-4 (discussing laboratory error).

MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1    Here, absent a connection between Ms. Holmes and the customer-service spreadsheets, they are

2    irrelevant and must be excluded.  If Ms. Holmes was not familiar with the contents of the spreadsheets,

3    their existence does not alter the "probability of the truth of the consequential fact," *United States v.*

4    *Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) (quoting 1 Jack B. Weinstein & Margaret A. Berger,

5    *Weinstein's Evidence* 401-27 (1975)), *i.e.*, that she knew that Theranos' technology "was not . . . capable

6    of consistently producing accurate and reliable results."  ECF No. 469 ¶ 16.

7    **III.    The Customer-Service Spreadsheets Will Unfairly Prejudice Ms. Holmes and Confuse and
         Mislead the Jury.**

8

9    A court must exclude evidence whose limited probative value "is substantially outweighed by a

10   danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, . . .

11   [or] wasting time[.]"  Fed. R. Evid. 403.

12       **A.    The Customer-Service Spreadsheets Have Limited Probative Value.**

13   If the customer-service spreadsheets have any probative value, it is "very slight."  *United States*

14   *v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).  For the following reasons, these documents bear a highly

15   attenuated connection to the government's purported purpose for admitting them—to prove that Ms.

16   Holmes "knew" that "Theranos's technology was, in fact, not capable of consistently producing accurate

17   and reliable results."  ECF No. 469 ¶16.

18   *First*, as discussed, that spreadsheets purporting to document customer complaints existed is (at

19   most) weakly probative of the government's allegation that Ms. Holmes was aware of systemic

20   problems with Theranos technology.  The fact of a complaint does not establish a defect in Theranos'

21   technology or tests:  all lab tests have inherent imprecision and error rates; every lab commits some

22   number of errors; the results referenced in the spreadsheets amount to a tiny fraction of total Theranos

23   results; and the government has identified no evidence connecting Ms. Holmes to the spreadsheets.

24   *Second*, absent even basic information about these spreadsheets—who compiled them, when, and

25   for what purpose—their probative value is minimal at best.

26

27   MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS

28   UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
     CR-18-00258 EJD
                                              7

### B.     The Customer-Service Spreadsheets Are Unfairly Prejudicial, Confusing, and Misleading.

In light of the (at most) minimal probative value of the government's proffered evidence, it would constitute "an abuse of discretion to admit [the customer-service spreadsheets] if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *Hitt*, 981 F.2d at 424.  That risk is undoubtedly present here.  The spreadsheets are unfairly prejudicial to Ms. Holmes and would mislead the jury.

*First*, if the spreadsheets were admitted, jurors would naturally assume that Ms. Holmes had been familiar with their contents at the time complaints were lodged with Theranos.  This inference would be unfairly prejudicial, as it would suggest that Ms. Holmes had intimate knowledge of the contents of the spreadsheets, despite any evidence from the government to that effect.

*Second*, jurors would also misunderstand the error rate of Theranos testing if the spreadsheets were admitted.  The spreadsheets reflect a tiny fraction of the results generated by Theranos in total.  The jury would be left with a handful of spreadsheets totaling hundreds of complaints or questions, and no sense of the larger evidentiary picture.  Furthermore, the contents of the spreadsheets would risk leading the jury to believe that every comment, question, or concern registered in the spreadsheets was valid and substantiated.  But the government has not pointed to any evidence that shows in a comprehensive way whether or not customer complaints were valid, *i.e.*, actually based on errors in Theranos testing.  This misimpression would invite the jury to convict Ms. Holmes on the basis of an improper and speculative inference:  that the fact of questions or complaints about Theranos lab results establishes that there was something systematically wrong with the underlying tests.  This would be unfairly prejudicial to Ms. Holmes and misleading to the jury.

*Third*, the spreadsheets contain inflammatory accusations.  For example, a Walgreens nurse asserted that she did not "trust her results" and did not "want to send any patients to" Theranos because she received different results for the same tests from Sonora Quest. Ex. 73 (SEC-USAO-EPROD-002101857) (under seal).  One patient described the phlebotomists as "incompetent."  *Id*.  A doctor was

1    "very upset" after having waited for a week for results; another accused Theranos of a "HIPAA

2    violation." *Id.* Because such complaints are not "subject to cross-examination," *Boddicker*, 2011 WL

3    6132099, at *4, the jury would be left with a distorted view of the evidence.

4         *Fourth*, the spreadsheets would be a source of confusion and speculation. They contain technical

5    shorthand and unexplained color coding, neither of which would be self-explanatory to lay jurors.

6    Members of the jury might draw unwarranted inferences from the contents of the spreadsheets,

7    concluding, for example, that if a Theranos test produced a different result than one generated by a

8    different lab, the Theranos technology was somehow deficient. To minimize the risk of unfair prejudice

9    and juror confusion, Ms. Holmes would be compelled to contextualize the entries, requiring defense

10   counsel to define the meaning and significance of scientific jargon and shorthand, establish the statistical

11   relevance (or lack thereof) of the spreadsheets, confirm the way in which the spreadsheets were

12   compiled, maintained, and stored, and even go line-by-line explaining entries. The parties would spend

13   precious time parsing technical customer-service spreadsheets, as opposed to focusing the jury's

14   valuable time on the core issues implicated by the indictment. In short, admitting this evidence would

15   "result[] in a 'mini trial.'" *Tennison v. Circus Circus Enters.*, 244 F.3d 684, 690 (9th Cir. 2001).

16        The government's spreadsheets have scarce probative value, and present a serious risk of

17   unfairly prejudicing Ms. Holmes, confusing the issues, and misleading the jury. This Court should

18   therefore exclude the spreadsheets for this reason.[2]

19                                    **CONCLUSION**

20        For the foregoing reasons, Ms. Holmes respectfully requests an order precluding the government

21   from introducing at trial Theranos' customer-service spreadsheets.

22

23

24   _____

25   [2] The customer-service spreadsheets are also inadmissible under Fed. R. Evid. 404(b) because
     the government has failed to establish a "logical chain of inference" between the existence of customer-
26   service complaints concerning Theranos tests and the issues at trial, specifically Ms. Holmes'
     knowledge about the accuracy and reliability of Theranos testing. *United States v. Sampson*, 980 F.2d
27   883, 888 (3d Cir. 1992).

     MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
28   UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
     CR-18-00258 EJD

                                          9

1    DATED:  November 20, 2020                    Respectfully submitted,

2

3                                                  /s/ Amy Mason Saharia
                                                   KEVIN DOWNEY
4                                                  LANCE WADE
                                                   AMY MASON SAHARIA
5                                                  KATHERINE TREFZ
                                                   Attorneys for Elizabeth Holmes
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
     UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
28   CR-18-00258 EJD
                                          10

1

### **CERTIFICATE OF SERVICE**

2      I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all

3  counsel of record.

4

5                                          /s/ Amy Mason Saharia
                                           AMY MASON SAHARIA
6                                          Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
   MS. HOLMES' MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE SPREADSHEETS
28 UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
   CR-18-00258 EJD

1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                             SAN JOSE DIVISION

14
   UNITED STATES OF AMERICA,                )  Case No. CR-18-00258-EJD
15                                           )
               Plaintiff,                    )  **[PROPOSED] ORDER GRANTING MS.**
16                                           )  **HOLMES' MOTION TO EXCLUDE**
       v.                                    )  **THERANOS' CUSTOMER-SERVICE**
17                                           )  **SPREADSHEETS**
   ELIZABETH HOLMES and                      )
18 RAMESH "SUNNY" BALWANI,                    )
                                             )  Hon. Edward J. Davila
19             Defendants.                    )
                                             )
20                                           )
                                             )
21 _____  )

22

23

24

25

26

27

28
   [PROPOSED] ORDER GRANTING MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE
   SPREADSHEETS
   CR-18-00258-EJD

1      This Cause having come before the Court upon Defendant Elizabeth A. Holmes' Motion to

2  Exclude Theranos' Customer-Service Spreadsheets.  After due consideration of the filings and the

3  governing law,

4          IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.

5          IT IS FURTHER ORDERED that the government is precluded from introducing at trial

6  Theranos' customer-service spreadsheets.

7

8          IT IS SO ORDERED.

9

10  Dated: _____

11

12                                              _____

13                                              Hon. Edward J. Davila
                                                United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [PROPOSED] ORDER GRANTING MOTION TO EXCLUDE THERANOS' CUSTOMER-SERVICE
    SPREADSHEETS
    CR-18-00258 EJD