JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803**<br><br>Date:    January 22, 2021<br>Time:   10:00 AM<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL
RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

**MOTION TO EXCLUDE FDA INSPECTION EVIDENCE**

PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court pursuant to Rules 401-404 and 801-803 of the Federal Rules of Evidence to exclude evidence of, or reference to, the Food and Drug Administration's ("FDA") 2015 inspections of Theranos. The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: November 20, 2020

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1
BACKGROUND ..............................................................................................................................1
ARGUMENT ....................................................................................................................................5
    I.    The Government's Proposed Evidence Relating to the FDA Inspections Is Irrelevant. .....5
    II.   The Evidence Is Unfairly Prejudicial.............................................................................6
    III.  The Evidence Is Inadmissible Character and Propensity Evidence.................................7
    IV.  The Evidence Is Inadmissible Hearsay. .........................................................................8
CONCLUSION...............................................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Elizabeth Holmes moves to exclude evidence of, or reference to, the Food and Drug Administration's ("FDA") 2015 inspections of Theranos, which focused on the proper legal classification of Theranos' blood collection tubes. The inspections postdate any statements made by Ms. Holmes to induce investments during the conspiracy period, as Theranos' final investment round during the charged conspiracy period had closed four months earlier. As a result, it is completely irrelevant to the only FDA-related allegation in the Indictment—that Defendants made misrepresentations to investors about the voluntariness of Theranos' attempts to obtain FDA approvals of its proprietary blood testing analyzers and tests (an allegation that does not even include blood collection tubes). Admission of this evidence would unfairly prejudice Ms. Holmes and confuse the jury: it would inject into this case allegations about uncharged regulatory violations and invite the jury to conclude, incorrectly, that FDA's decision to conduct an inspection reflected wrongdoing on Ms. Holmes' part.[1] This irrelevant, prejudicial evidence is inadmissible under Rules 401-403, and under Rule 404(b) as improper propensity evidence. The disclosed exhibits are also inadmissible hearsay; Rule 803(8) bars admission of the FDA inspectors' findings in this criminal case, and no hearsay exception allows the government to admit the internal FDA emails it has identified as potential exhibits. The Court should exclude the government's exhibits, as well as any testimony, related to the 2015 FDA inspections.

## BACKGROUND

FDA has primary responsibility for administering the terms of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.* FDA asserts that this statute vests it with the authority "to create a comprehensive system for the regulation of medical devices intended for use in humans." 79 Fed. Reg. 59,778 (Oct. 3, 2014); *see also* 21 U.S.C. § 321(h) (defining "device"). FDA, however, has long observed a policy of "enforcement discretion" with respect to certain medical devices that qualify as "laboratory developed tests ("LDTs"). 79 Fed. Reg. 59,777. FDA defines LDTs as devices that perform

---

[1] These FDA employees who participated in the 2015 inspections are not on the government's witness list. In fact, the government identifies only one FDA witness on its witness list (Dr. Courtney Lias). Dr. Lias was not present at the inspections.

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1

tests on samples of blood or tissue taken from the human body that "are intended for clinical use and designed, manufactured, and used within a single laboratory." *Id.* Starting as early as 2010, FDA began publicly considering changes to that longstanding policy, and although the agency issued a series of preliminary guidance documents, it did not ultimately implement the proposed changes.[2]

On August 6, 2013, in the midst of FDA's public discussions of changing the way it regulates LDTs, Theranos contacted FDA with a proposal to submit for FDA clearance the LDTs that would be run on Theranos' proprietary devices in its CLIA laboratory. *See* Ex. 54 (THER-0947247). After a series of meetings in the fall and winter of 2013, Theranos and FDA agreed to a submission plan to accomplish that goal. One of the submissions in the plan concerned Theranos' blood collection tubes, which the company called the "nanotainer." Theranos actually used two nanotainers (each carrying the same trademark), each of which employed a different anticoagulant agent—either Lithium-Herapin or $K_2$-EDTA. Ex. 57 (THER-2500713). Theranos had registered both as "Class I" devices according to FDA's classification scheme for medical devices. *Id.* FDA describes its medical-device classifications as "risk based," scaling from the lowest-risk (Class I) to the highest risk (Class III).[3] A device's class assignment impacts the type of application necessary to obtain FDA clearance or approval, as the case may be. As relevant here, "[s]ome Class I devices are exempt from the premarket notification and/or parts of the good manufacturing practices regulations."[4] Theranos made a "pre-submission" request for its nanotainers on January 21, 2014, *see* Ex. 55 (THER-0961165), and its initial 510(k) Premarket Notification application on October 27, 2014, *see* Ex. 56 (THER-0972722).

Beginning on August 25, 2015, FDA conducted unannounced inspections at Theranos' laboratories in California and Arizona. FDA quickly abandoned its inspection of Theranos' Arizona lab without making any observations, but continued its inspection of the California laboratory until

---

[2] FDA, Laboratory Developed Tests, https://www.fda.gov/medical-devices/vitro-diagnostics/laboratory-developed-tests (last updated Sept. 27, 2018).

[3] *See generally* FDA, Classify Your Medical Device, https://www.fda.gov/medical-devices/overview-device-regulation/classify-your-medical-device (last updated Feb. 7, 2020).

[4] *Id.*

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

September 16, 2015.  One area of focus for the inspections was whether the nanotainers were properly classified as Class I devices, and, if not, whether a set of FDA regulations known as the Quality System Regulations ("QSRs") applied to the manufacture of those blood collection tubes.[5]  One outcome of the inspections was that the inspectors included an observation included in their Form 483[6] report that the Lithium-Herapin nanotainer was a Class II device.

The Third Superseding Indictment does not allege that Theranos violated the FDCA regulatory framework administered by FDA.  The Indictment contains just one narrow allegation relating to FDA—that Defendants:

> represented to investors that Theranos did not need the Food and Drug Administration ("FDA") to approve its proprietary **analyzer and tests**, but instead that Theranos was applying for FDA approval voluntarily because it was the "gold standard."  In truth, HOLMES and BALWANI **knew that by late 2013 and throughout 2014**, the FDA was requiring Theranos to apply for clearance or approval for its **analyzer and tests**.

ECF 469, ¶ 12(F) (emphasis added).  The Indictment defines the "analyzer" in paragraph 12(A) as "the TSPU, Edison, or minilab," which were Theranos proprietary devices designed to conduct blood tests. The FDA inspections did not focus on, or make any findings or observations concerning Theranos' TSPU, Edison, or miniLab, or concerning any of Theranos' tests.  The inspections focused solely on Theranos' blood collection tube. The FDA inspections occurred in August and September of 2015, *four months after* the last conspiracy-period investment in Theranos in April 2015.

Despite this, the government has identified 27 documents that relate to FDA's inspections as proposed exhibits.[7]  These documents should be excluded along with any corresponding testimony

---

[5] *See generally* FDA, Quality System (QS) Regulation/Medical Device Good Manufacturing Practices, https://www.fda.gov/medical-devices/postmarket-requirements-devices/quality-system-qs-regulationmedical-device-good-manufacturing-practices (last updated Sept. 27, 2018).

[6] *See* FDA, FDA Form 483 Frequently Asked Questions, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions (last updated Jan. 9, 2020).

[7] The government has identified these documents as Proposed Exhibits 2707, 2708, 2716, 2717, 2728, 2731, 2732, 2735, 2736, 2739, 2740, 2741, 2745, 2746, 2747, 2748, 2755, 2756, 2759, 2763, 2768, 2770, 2782, 2783, 2784, 2785, and 2786.  For the sake of efficiency, and in an effort to streamline

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

3

offered by the government. The documentary evidence centers on issues from FDA's inspections that are unrelated to this case, including:

- FDA's internal communications about whether FDA had legal jurisdiction to inspect Theranos based on the fact that one of the nanotainers was purportedly a "class II" medical device under the FDCA. *E.g.*, Ex. 51 (Proposed Exhibit 2747).
- FDA's internal communications about the inspectors' purported observations of Theranos' technical deficiencies under the FDCA, including discussions of whether the observations should appear in any FDA Form 483, which documents objectionable conditions observed during an FDA inspection. *E.g.*, Ex. 49 (Proposed Exhibit 2736).
- FDA's internal communications about draft or incomplete versions of the Form 483 observations, including what language should be used on any FDA Form 483 relating to Theranos' nanotainers, as well as any draft or incomplete Form 483 observations. *E.g.*, Ex. 52 (Proposed Exhibit 2770).
- Communications between Theranos and FDA during the inspection, including Theranos' objections to FDA's decision that it had authority to inspect. *E.g.*, Ex. 50 (Proposed Exhibit 2746).
- FDA's internal communications about the conclusion of the inspections, including communications discussing Theranos' desire to correct any purported observations under the FDCA. *E.g.*, Ex. 53 (Proposed Exhibit 2785).

In addition to the proposed exhibits, the government has indicated that it intends to elicit testimony from FDA's Director of Chemistry and Toxicology Devices, Dr. Courtney Lias, during its case in chief. Dr. Lias was significantly involved in decision-making surrounding the FDA inspections of Theranos, but she did not personally attend the inspections and she is not included in much of the correspondence that the government has proposed as exhibits.

---

the number of exhibits to this motion, Ms. Holmes has included five exemplars. *See* Ex. 49 (Proposed Ex. 2736); Ex. 50 (Proposed Ex. 2746); Ex. 51 (Proposed Ex. 2747); Ex. 52 (Proposed Ex. 2770); Ex. 53 (Proposed Ex. 2785).

# ARGUMENT

**I.   The Government's Proposed Evidence Relating to the FDA Inspections Is Irrelevant.**

Evidence is relevant and admissible only if it tends to make a fact more or less probable and that fact "is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). The government's proposed exhibits relating to the FDA inspections discussed above, and all related testimony, are irrelevant and should be excluded.

FDA's inspections are irrelevant because they have no bearing on the government's allegations that Ms. Holmes misled investors about the voluntariness of Theranos' efforts to obtain FDA approval of its proprietary analyzer and tests. As discussed above, the Indictment alleges that Ms. Holmes knew in 2013 and 2014 that Theranos needed FDA approval or clearance but told investors otherwise. Even assuming the government could prove the falsity of this murky legal assertion or that Ms. Holmes intended to defraud investors when she stated the company's legal position, the timing of FDA's inspections renders them irrelevant to those questions. The investments identified in Counts 3-8 of the Indictment took place from December 2013 to October 2014. Dkt No. 469, ¶ 24. The last equity investment round during the conspiracy period closed in April 2015. To show that Ms. Holmes knowingly made false statements to investors, the government would need to show her knowledge *at the time of the alleged statements to investors*. The August/September 2015 FDA inspections, however, occurred months (and in some cases years) *after* the alleged misrepresentations to investors. Those inspections, and what the inspectors purportedly observed during that time, could not possibly inform Ms. Holmes' knowledge, state of mind, or motive regarding statements allegedly made to investors several months or years *before* the inspections.

Even putting aside that fundamental problem for the government, the observations of FDA's inspectors do not prove that FDA approvals or clearances for any Theranos product were in fact required. An FDA Form 483 simply documents conditions that, in an investigator's judgment, "may

constitute violations of the [FDCA]."[8]  Importantly, the form "does not constitute a final Agency determination of whether any condition is in violation of the [FDCA] or any of its relevant regulations."[9]

## II.     The Evidence Is Unfairly Prejudicial.

Even if the government's proposed FDA inspection evidence were remotely relevant, any probative value is substantially outweighed by the unfair prejudice to Ms. Holmes.  Evidence must be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Curtin*, 489 F.3d at 963 (Kleinfeld, J., concurring in the judgment) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Unfair prejudice can result from evidence that makes it more likely for a juror "to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves."  *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007).  And "[w]here the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."  *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992); *see also Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999) (court must weigh potential "prejudicial effect" of "agency's letter of violation").

In this case, the admission of the proposed evidence would create a substantial risk that the jury would perceive FDA's decision to conduct unannounced inspections of Theranos as indicative of Ms. Holmes' guilt.  A jury confronted with technical and purported authoritative forms and communications

---

[8] FDA, FDA Form 483 Frequently Asked Questions, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions ("Observations are made when in the investigator's judgment, conditions or practices observed would indicate that any food, drug, device or cosmetic has been adulterated or is being prepared, packed, or held under conditions whereby it may become adulterated or rendered injurious to health.").

[9] *Id.*

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

6

from a federal agency that many jurors hold in high regard, such as FDA's Form 483 and FDA communications about purported deficiencies, may be tempted to conclude, incorrectly, that the fact of the inspections or the inspectors' Form 483 observations constituted findings that Theranos was operating in violation of the FDCA or that Theranos needed certain FDA approvals or clearances.  Any such evidence will distract from the issues in dispute and is likely to lead the jury to draw improper and speculative inferences.  *See, e.g., Curtis v. M&S Petroleum. Inc*., 174 F.3d 661, 673 (5th Cir. 1999) (Mississippi Department of Environmental Quality evidence properly excluded, in part, because "[that agency's] evidence of likely violations of environmental regulations would have been unduly prejudicial due to its apparent official nature"); *Smith v. I-Flow Corp*., 2011 WL 12627557, at *2 (N.D. Ill. 2011) (FDA warning letter excluded as unfairly prejudicial).

Additionally, introducing the FDA inspection evidence would confuse the issues and set up the need for mini-trials regarding the accuracy and legal basis for the inspectors' observations, even though these issues would be a sideshow about after-the-fact matters that do not relate to the FDA allegation in the Indictment.  Ms. Holmes, moreover, would be forced to rebut every issue raised by the inspectors.  And she would have to litigate the accuracy of the investigators' claims that Theranos employees (not Ms. Holmes) took certain actions during the inspections.

### III.     The Evidence Is Inadmissible Character and Propensity Evidence.

Several of the government's proposed exhibits relating to the FDA inspections contain observations by field inspectors concerning purported pushback by Theranos personnel on FDA's tactics and theories during the inspection.  For instance, the exhibits reference the inspectors' subjective opinions that Theranos was lodging frequent objections to FDA's conduct during the inspections, *e.g.*, Ex. 52; that Theranos was delaying in providing the FDA documents and answers during the inspections, *e.g.*, Ex. 49; and that the close out of the inspection was contentious and challenged by Theranos, *e.g.*, Ex. 53.  All of this proposed evidence is irrelevant; none of it has any connection to Ms. Holmes.  It would be unfairly prejudicial to introduce evidence of such actions under Rule 403.  Finally, even if it could be tied to Ms. Holmes, the evidence would be inadmissible under Rule 404(b) as

improper propensity evidence that Ms. Holmes "engaged in other acts of wrongdoing." *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993).

### IV. The Evidence Is Inadmissible Hearsay.

Finally, the FDA inspection evidence contains inadmissible hearsay that cannot be admitted for the truth of the matter asserted—including to establish the substance of FDA's requirements and Theranos' (alleged) noncompliance with those requirements.

A.  Rule 803(8)(A)(iii) bars admission of the FDA Form 483 and any other documents discussing the inspectors' findings. Public records that contain factual findings from legally authorized investigations are admissible only "in a civil case ***or against the government in a criminal case.***" Fed. R. Evid. 803(8)(a)(iii) (emphasis added). The Ninth Circuit has held that "[w]hen public records are used against a defendant in a criminal prosecution, the public records exception is the exclusive applicable hearsay exception." *United States v. Orellana-Blanco*, 294 F.3d 1143, 1149 (9th Cir. 2002). This is because Rule 803(8) "speaks directly to public records and carefully delineates the distinction between criminal and civil proceedings in order to protect a defendant's rights under the confrontation clause." *Id.*; *see also United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979) ("While governmental functions could be included within the broad definition of 'business' in rule 803(6), such a result is obviated by rule 803(8).")

The FDA Form 483 and other FDA records documenting investigation findings are public records prepared by a government agency that contain "factual findings from legally authorized investigations." Fed. R. Evid. 803(8)(A)(iii); *see* 21 U.S.C. § 374(b) ("Upon completion of [an] inspection . . . the [FDA] officer or employee making the inspection shall give to the owner . . . a report in writing . . . ."). The Form 483, for example, includes specific "observations" by the inspectors. *See, e.g.*, Ex. 53. Such evidence is thus inadmissible hearsay against Ms. Holmes in her capacity as a

criminal defendant. Fed. R. Evid. 803(8)(A)(iii); *United States v. Sims,* 617 F.2d 1371, 1377 (9th Cir. 1980); Fed. R. Evid. 803(8)(C) advisory committee's note.[10]

Moreover, no exception to Rule 803(8) applies here. The Ninth Circuit has held that public records that relate to "routine, nonadversarial matters made in a nonadversarial setting, reflecting ministerial, objective observations," may be admitted against a criminal defendant. *Orellana-Blanco*, 294 F.3d at 1150 (internal citations and quotation marks omitted). The exception, however, is inapplicable to public records generated by agencies or law enforcement that contain "subjective observations, summaries, opinions and conclusions of law enforcement personnel." *Id.* For example, in *Orozco*, the Ninth Circuit held that Rule 803(8) did not bar admission against a criminal defendant of a federal agency report that listed the license plates of vehicles crossing the United States-Mexico border, because the government recorded and reported the license plate numbers of all passing cars and therefore was engaged in a routine, nonadversarial matter. 590 F.2d at 793. By contrast, in *Orellana-Blanc*, the Ninth Circuit held that the public-records exception barred admission of an immigration form generated after agency personnel interviewed the defendant because the report contained a subjective recordation of the preparer's observations and the government offered the report to show that the charged crime had been committed. 294 F.3d at 1150. Because the report was not based on routine non-adversarial matters, its admission of the report was reversible error. *Id*. at 1151-52. Here, the FDA Form 483 reflects the same types of subjective observations at issue in *Orellana-Blanc* and stands apart from the routine activity contemplated by *Orozco*. The Court should thus exclude the Form and all other records documenting the inspectors' findings.

B.   No other hearsay exception would authorize the government to introduce the smorgasbord of FDA internal communications it has disclosed related to the inspection—many of which do not even involve the lone FDA witness disclosed by the government. Emails containing unofficial commentary or discussion among government agency officials, or reflecting preliminary observations

---

[10] The current Rule 803(8)(A)(iii) is functionally equivalent to the provision formerly styled as Rule 803(8)(C), which applied to "factual findings resulting from an investigation made pursuant to authority granted by law." *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993).

1  not yet documented in a final report, do not contain sufficient indicia of trustworthiness to be admitted
2  as public records under Rule 803(8).  *See, e.g.*, *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778
3  (9th Cir. 2010) (affirming exclusion of non-final report of the Department of Labor that was not issued
4  or contemporaneously sent to the parties); *United Food Group, LLC v. Cargill, Inc.*, 2015 WL
5  13868984, at *8 (C.D. Cal. June 8, 2015) ("internal" government e-mails "relaying hearsay—sometimes
6  multiple layers of hearsay—about an ongoing investigation" do not qualify as public records); *see also*
7  Fed. R. Evid. 803(8)(B) (documents otherwise qualifying as "public records" should be excluded if the
8  "circumstances indicate a lack of trustworthiness).  Internal FDA e-mails containing musings of FDA
9  officials about the inspections are not admissible as public records.

**CONCLUSION**

For the foregoing reasons, Ms. Holmes respectfully requests that the Court exclude all exhibits and testimony about FDA's 2015 inspections.

DATED: November 20, 2020                                    Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

| | |
|---|---|
| 1 | JOHN D. CLINE (CA State Bar No. 237759) |
|  | 50 California Street, Suite 1500 |
| 2 | San Francisco, CA 94111 |
|  | Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263 |
| 3 | Email: cline@johndclinelaw.com |
| 4 | KEVIN M. DOWNEY (Admitted Pro Hac Vice) |
|  | LANCE A. WADE (Admitted Pro Hac Vice) |
| 5 | AMY MASON SAHARIA (Admitted Pro Hac Vice) |
|  | KATHERINE TREFZ (CA State Bar No. 262770) |
| 6 | WILLIAMS & CONNOLLY LLP |
|  | 725 Twelfth Street, NW |
| 7 | Washington, DC 20005 |
|  | Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029 |
| 8 | Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com |
| 9 | Attorneys for Defendant ELIZABETH A. HOLMES |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-18-00258-EJD |
| | ) | |
| Plaintiff, | ) | **[PROPOSED] ORDER GRANTING MS.** |
| | ) | **HOLMES' MOTION TO EXCLUDE FDA** |
| v. | ) | **INSPECTION EVIDENCE** |
| | ) | |
| ELIZABETH HOLMES and | ) | |
| RAMESH "SUNNY" BALWANI, | ) | Hon. Edward J. Davila |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

[PROPOSED] ORDER GRANTING MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
CR-18-00258-EJD

1  This Cause having come before the Court upon Defendant Elizabeth A. Holmes' Motion to
2  Exclude FDA Inspection Evidence.  After due consideration of the filings, the governing law and the
3  argument of the parties:
4  IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.
5  IT IS FURTHER ORDERED that the government shall not introduce at trial any
6  evidence, argument, or reference to the FDA's 2015 inspections.

8  IT IS SO ORDERED.

10 Dated: _____

12
                                                                                 Hon. Edward J. Davila
13                                                                                  United States District Judge

[PROPOSED] ORDER GRANTING MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
CR-18-00258 EJD