1  JOHN D. CLINE (CA State Bar No. 237759)
2  50 California Street, Suite 1500
   San Francisco, CA 94111
3  Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
   Email: cline@johndclinelaw.com
4
5  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
6  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
7  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
8  Washington, DC 20005
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
9  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

10  Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' MOTION TO EXCLUDE CERTAIN  EVIDENCE AND ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS UNDER FEDERAL RULES OF EVIDENCE 401-403, 404(B), AND 702**<br><br>Date:     January 22, 2021<br>Time:    10:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

1

2

**MOTION TO EXCLUDE CERTAIN EVIDENCE AND
ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS**

3

4          PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time

as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose,

5

CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does

6

respectfully move the Court pursuant to Rules 401-403, 404(B), and 702 of the Federal Rules of

7

Evidence to exclude evidence and argument that Theranos tampered with and concealed commercially

8

available third-party diagnostic testing platforms.  The Motion is based on the below Memorandum of

9

Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

10

11     DATED: November 20, 2020

12

13                                              /s/ Amy Mason Saharia
                                                KEVIN DOWNEY
14                                              LANCE WADE
                                                AMY MASON SAHARIA
15                                              KATHERINE TREFZ
                                                Attorneys for Elizabeth Holmes

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

i

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT ...........................................................................................................................4

    I.      The Court Should Preclude Argument or Questioning Suggesting that
Theranos' Modifications to Commercially Available Testing Devices Were
Improper...........................................................................................................5

          A.     The Government Has Not Identified Evidence that Theranos
"Tampered" with Commercially Available Testing Devices or that Its
Modifications of Commercially Available Testing Devices Violated
the Manufacturers' Specifications. ..........................................................5

          B.     Even If the Government Had Identified Evidence of Improper
Modifications, the Court Should Exclude Such Evidence Under Rules
401-403, 404(b), and 702...........................................................................6

    II.     The Court Should Exclude Evidence Concerning the Particular Measures
Theranos Took to Protect the Modified Commercial Devices as Trade Secrets. ...............7

CONCLUSION.........................................................................................................................7

MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

The government seeks to introduce evidence under Federal Rule of Evidence 404(b) that Ms. Holmes and/or Mr. Balwani authorized others at Theranos to "alter[] or tamper[] with" commercial testing devices and then "concealed" these changes while Theranos used the testing platforms to provide testing services to patients.  According to the government, such evidence tends to show that Theranos' separate proprietary analyzer was not capable of consistently producing accurate and reliable testing results and that Ms. Holmes made misrepresentations to investors and patients about the accuracy and reliability of Theranos' tests.

The government may be able to introduce evidence to show that Theranos made modifications to commercially available testing platforms, that it used these modified platforms for patient testing, and that Theranos sought to protect the modifications in non-published patent applications and as trade secrets.  But nothing in the government's Rule 404(b) notices establishes any improper conduct, whether that be alleged tampering or concealment of the testing platforms or otherwise.  To establish that Theranos' modifications to third-party machines were improper would require expert testimony, and the government has disclosed none.  To the contrary, the government's own witnesses—including two of its proffered experts—have previously stated that the modifications made to the commercial platforms were appropriate, and that clinical tests using the modified platforms were properly validated as Laboratory Developed Tests ("LDTs") under the applicable regulatory framework for use in Theranos' CLIA ("Clinical Laboratory Improvements Amendments") laboratory in California.[1]  Without more, the government should not be allowed to present its misleading and inflammatory narrative about these modifications at trial.

Similarly, any argument or evidence that Theranos improperly "concealed" modifications serves only to further the government's efforts to twist Theranos' use of trade secrets practices.  It is not

---

[1] Laboratory Developed Tests ("LDTs") are diagnostic tests that are designed and used within a single laboratory.  The FDA allows laboratories with a sufficient certification under CLIA to develop and use these types of tests for clinical patient testing so long as the tests are validated by the laboratory under a process defined by the CLIA regulations.  *See* FDA, Laboratory Developed Tests, https://www.fda.gov/medical-devices/vitro-diagnostics/laboratory-developed-tests (last updated Sept. 27, 2018).

MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS RULES 401-403,404(B), AND 702
CR-18-00258 EJD

1   probative of any determinative fact, will unfairly prejudice Ms. Holmes, and will risk a conviction based

2   on improper propensity reasoning.  For these reasons, the Court should preclude the government from

3   introducing evidence or argument at trial to prove that the company "tampered with" commercial testing

4   platforms or that these modified platforms were "concealed" under Rules 401-403, 404(b), and 702.

5                                            **BACKGROUND**

6          In 2013, before launching retail testing services at Walgreens, Theranos investigated the

7   possibility of operationalizing its proprietary small-sample testing methodology on commercially

8   available high-throughput testing platforms in its centralized CLIA laboratory.  The company

9   investigated, for example, the feasibility of running small sample tests on the ADVIA 1800 Chemistry

10  System manufactured by Siemens AG.  Ex. 46 at 26 (TS-0959090).  Theranos ultimately invented

11  several species of modifications to the ADVIA 1800 in order to run its proprietary small-sample tests

12  with significantly less blood than what was required for a standard laboratory test.  *See id.*

13         First, the company modified the ADVIA 1800's software protocols to use Theranos' proprietary

14  small-sample protocols.  *Id.*  The ADVIA 1800 is pre-programmed with FDA-approved testing methods

15  developed by Siemens, but it is also an "open platform" that allows end-users to program custom testing

16  methods into the device.  In other words, Siemens specifically contemplates that the ADVIA 1800

17  platform may be modified.  The ADVIA 1800's operating manual notes that end-users like Theranos can

18  program the platform to "set up new tests" and "define new methods."  Ex. 44 at 59 (THER-0644560).

19  Dr. Adam Rosendorff, Theranos' former laboratory director and an expert witness proffered by the

20  government, confirmed that the ADVIA 1800 has "open channels" that can be used to run proprietary

21  tests.  Ex. 47 at 2 (US-REPORTS-0007375).  Dr. Daniel Young, Theranos' vice president of systems

22  and another government expert, previously testified that the ADVIA 1800 is an "open platform[], which

23  means that the manufacturer (Siemens, in this case) allows the end user to put their own protocols on the

24  instrument."  Ex. 41 at 186:22-24 (May 17, 2018 Young Dep.).  Dr. Young further explained that

25

26

27

28  MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
    THIRD-PARTY TESTING PLATFORMS RULES 401-403,404(B), AND 702
    CR-18-00258 EJD
                                               2

1  Theranos "didn't modify [Siemens'] software per se" and instead "wrote our own protocols using

2  [Siemens'] software," *id.* at 189:19-23, as contemplated by the ADVIA 1800 operating manual.

3       Second, the company designed and manufactured a small proprietary hardware insert—referred

4  to as a "T-cup"—that it placed in the ADVIA 1800's sample cup in order to reduce the sample volume

5  required to perform each assay.  Ex. 46 at 26; *see* Ex. 42 at 213:2-14 (Feb. 26, 2019 Rosendorff Dep.)

6  (recognizing that the T-cup was a "novel concept").  This modification added an additional piece of

7  hardware to the ADVIA 1800, but it did not require a change to the physical components of the device.

8  This modification was the subject of a United States patent that was initially filed as a confidential

9  provisional application, consistent with the company's trade secrets practices, and later issued to the

10 individuals at the company, including Dr. Young, who led the research and development related to the

11 modified commercial devices.  Ex. 43 (Holmes004524); Ex. 41 at 185:11-15.

12      Theranos incorporated these software and hardware inventions into the proprietary Theranos

13 tests that were run on the ADVIA 1800.  Before any clinical patient testing occurred, however, the tests

14 were carefully reviewed and approved as LDTs by Theranos' laboratory director, and Dr. Rosendorff

15 explained that he would approve an LDT only if he was comfortable using it for patient testing in the

16 clinical laboratory.  Ex. 40 at 80:4-8, 212:19-23 (Jan. 16, 2018 Rosendorff Dep.); Ex. 46 at 209:15-19.

17      There was nothing improper about Theranos' validating LDTs to run on modified commercial

18 testing platforms under the applicable regulatory framework.  Sarah Bennett, an inspector with the

19 government's Centers for Medicare and Medicaid Services (CMS), told government investigators that a

20 company like Theranos with a certified high-complexity CLIA laboratory can "tweak[] an FDA

21 approved test" so long as the other requirements for validating those tests as LDTs are satisfied before it

22 is used for clinical patient testing.  Ex. 34 at 2 (US-REPORTS-0006781).

23      Theranos maintained these modifications as trade secrets in order to keep its competitors from

24 copying the practices and destroying Theranos' competitive advantage in the market.  Ex. 45

25 (THERDOJ-0004199); Ex. 41 at 185:7-10, 187:18-24, 188:11-14.  As Dr. Young explained, he had a

26 "firm belief" that these modifications were highly advantageous for the company.  *Id.* at 192:23-193:16.

27

28 MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
   THIRD-PARTY TESTING PLATFORMS RULES 401-403, 404(B), AND 702
   CR-18-00258 EJD
                                         3

1  Theranos did not, however, withhold information about these modifications from regulators who

2  inquired about the company's testing practices.

3  　　　The government intends to introduce evidence as to the existence and confidential nature of

4  modifications under Rule 404(b).  Category 15 of the government's initial notice alleges that Theranos

5  "altered or tampered with [commercial third parties platforms] by modifying them to run on smaller

6  and/or diluted blood samples, contrary to . . . the manufacturers' intended use for such devices."[2]  Ex. 1

7  at 7-8 (Mar. 6, 2020 Gov't Rule 404(b) Notice).  In its supplemental notice, the government alleges that

8  Theranos did so with Ms. Holmes' and/or Mr. Balwani's knowledge and that Ms. Holmes previously

9  admitted or authorized admissions about the use of the modified platforms.  Ex. 3 at 68-70 (Sept. 28,

10  2020 Supp. Gov't Rule 404(b) Notice).  The government also claims that this evidence shows that

11  Theranos' proprietary analyzer could not consistently produce accurate and reliable results, that the

12  analyzer had accuracy and reliability problems, and that Ms. Holmes made material false statements to

13  investors and patients.  *Id.* at 70.

14  　　　　　　　　　　　　　　　　**ARGUMENT**

15  　　　Theranos' modifications to commercially available machines, and its development of Laboratory

16  Developed Tests that it ran on those machines, were innovative, valuable trade secrets.  To be clear, Ms.

17  Holmes is not arguing that the government should be precluded from introducing evidence related to the

18  modifications or the tests run on the modified machines.  The government should, however, be

19  precluded from insinuating that there was anything improper about such modification or that the

20  modifications violated the manufacturer's specifications or from presenting any evidence of the same.

21  The government also should be precluded from suggesting that the measures Theranos implemented to

22  protect these trade secrets were improper.

23

24

25

26  　　[2] The government initially alleged that these modifications also violated "industry standards,"
   although it failed to disclose an expert who would testify to the substance of such "industry standards."

27  The government recently informed Ms. Holmes, without any explanation, that it would no longer be
   claiming an alleged violation of "industry standards" at trial.

28  MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
   THIRD-PARTY TESTING PLATFORMS RULES 401-403, 404(B), AND 702
   CR-18-00258 EJD

**I.     The Court Should Preclude Argument or Questioning Suggesting that Theranos' Modifications to Commercially Available Testing Devices Were Improper.**

**A.     The Government Has Not Identified Evidence that Theranos "Tampered" with Commercially Available Testing Devices or that Its Modifications of Commercially Available Testing Devices Violated the Manufacturers' Specifications.**

It is axiomatic that the government cannot argue facts or inferences that are not supported by evidence. *See United States v. Vargas-Rios*, 607 F.2d 831, 838 (9th Cir. 1979) (noting "prosecutorial errors" arising from arguments during trial that were unsupported by the evidence). The government's Rule 404(b) notice alleges that Theranos "tampered" with commercially available testing devices, suggesting that Theranos' modifications were improper. As discussed above, however, no evidence establishes that the modifications were improper. At most, the government's evidence establishes only that Theranos modified certain third-party open platform devices and that Ms. Holmes was aware of the modifications. Indeed, the government's own witnesses recognize that such modifications were legitimate. It therefore would be inappropriate for the government to use the inflammatory word "tampering" (or similar pejoratives) in argument or questioning when the evidence demonstrates that the modifications are consistent with those contemplated by the manufacturer.

In addition, the government's original Rule 404(b) notice alleged that Theranos' modification of commercially available testing platforms violated the manufacturers' specifications. The government has not disclosed any evidence establishing that Theranos' modification violated the manufacturers' specifications. Any argument or questioning suggesting the opposite would be improper.

The animating principles of Rule 403 also preclude such argument or questioning. Under Rule 403, evidence is inadmissible if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; *see also United States v. Hearst*, 563 F.2d 1331, 1336 (9th Cir. 1977). Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

1    The government is seeking to cast aspersions (without any evidence) on innovative technological

2    developments at Theranos during the time period of the alleged conspiracy.  Allowing the government to

3    do so will only confuse the jury and encourage it to convict Ms. Holmes for otherwise unassailable

4    conduct.  Conversely, the propriety of Theranos' modifications to commercial platforms has, at best,

5    minimal probative value.  That Theranos deployed its innovative small-sample testing technology on

6    commercially available machines does not establish that the separate proprietary analyzer that Theranos

7    developed from scratch could not consistently produce accurate and reliable results, that the separate

8    analyzer had accuracy and reliability problems, or that Ms. Holmes made material false statements to

9    investors and patients. *See* Ex. 3 at 70.  Accordingly, any argument or questioning suggesting that

10   Theranos "tampered" with the machines, that Theranos' modifications were inconsistent with

11   manufacturers' specifications, or that its modifications were otherwise improper should be excluded.

12        **B.    Even If the Government Had Identified Evidence of Improper Modifications, the**
            **Court Should Exclude Such Evidence Under Rules 401-403, 404(b), and 702.**

13

14   Even if the government had evidence that Theranos tampered with commercially available

15   testing platforms or that the modifications to those platforms were inconsistent with the manufacturers'

16   specifications, such evidence should still be excluded.  To the extent the government intends to present

17   opinion testimony from witnesses that the modifications were improper, that is a technical opinion that

18   would need to be introduced through a witness qualified to offer opinions under Rule 702 as to the

19   propriety of the modifications at issue and/or the manufacturers' specifications.  The government has not

20   disclosed opinions sufficient to establish whether and the extent to which these modifications were

21   improper.  This alone is sufficient to bar evidence that Theranos' modifications to commercially

22   available testing platforms were improper.

23   To the extent the government could overcome the issues presented by Rule 702, it should still be

24   barred from presenting such evidence under Rule 403.  As discussed, allowing the government to

25   introduce evidence that Theranos' modifications were improper would confuse the jury and encourage it

26   to convict Ms. Holmes for uncharged conduct.  It would also require mini-trials to establish the propriety

27   of each modification and the specification established by the manufacturer.  At the same time, the

28   MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
     THIRD-PARTY TESTING PLATFORMS RULES 401-403,404(B), AND 702
     CR-18-00258 EJD
                                              6

1    probative value of such evidence would be minimal.  And of course the use of this evidence for any

2    propensity purpose—*i.e.*, to suggest that because Ms. Holmes authorized improper modifications to

3    third-party machines she must have done other improper things—would violate Rule 404(b).  Even if the

4    government had disclosed reliable expert testimony on this issue, it would be inadmissible for these

5    reasons.

6    **II.    The Court Should Exclude Evidence Concerning the Particular Measures Theranos Took**
     **to Protect the Modified Commercial Devices as Trade Secrets.**

7

8           Theranos considered its modifications to commercial testing platforms to be valuable trade

9    secrets, and it took the necessary steps to protect them as such.  For the reasons set forth in Ms. Holmes'

10   contemporaneously filed Motion to Exclude Evidence of Theranos' Trade Secrets Practices, the Court

11   should preclude the government from introducing at trial evidence of Theranos' trade secrets practices in

12   order to convince the jury that Ms. Holmes sought to hide issues with Theranos' proprietary analyzer.

13   *See* Ex. 3 at 70.  The government, for example, should not be allowed to introduce evidence about what

14   information was or was not shared with representatives from Siemens AG, the company that

15   manufactured the ADVIA 1800 device that was modified.  *See id.* at 69.  For the same reasons discussed

16   in Ms. Holmes' contemporaneous motion, there is no probative value to this evidence, it will unfairly

17   prejudice Ms. Holmes by allowing the government to build an inflammatory narrative out of legally

18   required conduct, it will confuse the jury, and it will spawn mini-trials about the reasons that Theranos

19   sought to implement specific measures to prevent the public disclosure of its proprietary technology.

20                                        **CONCLUSION**

21          For the foregoing reasons, Ms. Holmes respectfully requests an order precluding the government

22   from introducing evidence, argument, or questioning that Theranos tampered with commercial

23   laboratory testing platforms, that the modification of these platforms violated manufacturer

24   specifications, or that Theranos improperly concealed modifications to these platforms.

25

26

27

28   MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
     THIRD-PARTY TESTING PLATFORMS RULES 401-403, 404(B), AND 702
     CR-18-00258 EJD
                                              7

DATED: November 20, 2020                      Respectfully submitted,


                                              /s/ Amy Mason Saharia
                                              KEVIN DOWNEY
                                              LANCE WADE
                                              AMY MASON SAHARIA
                                              KATHERINE TREFZ
                                              Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING
THIRD-PARTY TESTING PLATFORMS RULES 401-403,404(B), AND 702
CR-18-00258 EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all counsel of record.

<u>/s/ Amy Mason Saharia</u>
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  KEVIN M. DOWNEY (Admitted Pro Hac Vice)
   LANCE A. WADE (Admitted Pro Hac Vice)
5  AMY MASON SAHARIA (Admitted Pro Hac Vice)
   KATHERINE TREFZ (CA State Bar No. 262770)
6  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
7  Washington, DC 20005
   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8  Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9  Attorneys for Defendant ELIZABETH A. HOLMES

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
   UNITED STATES OF AMERICA,              )  Case No. CR-18-00258-EJD
15                                        )
          Plaintiff,                      )  **[PROPOSED] ORDER GRANTING MS.**
16                                        )  **HOLMES' MOTION TO EXCLUDE CERTAIN**
       v.                                 )  **EVIDENCE AND ARGUMENT REGARDING**
17                                        )  **THIRD-PARTY TESTING PLATFORMS**
   ELIZABETH HOLMES and                   )  **UNDER FEDERAL RULES OF EVIDENCE 401-**
18  RAMESH "SUNNY" BALWANI,               )  **403, 404(B), AND 702**
                                          )
19        Defendants.                     )  Hon. Edward J. Davila
                                          )
20                                        )
                                          )
21  _____ )

22

23

24

25

26

27

28  [PROPOSED] ORDER GRANTING MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
    REGARDING THIRD-PARTY TESTING PLATFORMS UNDER FEDERAL RULES OF EVIDENCE 401-
    403, 404(B), AND 702
    CR-18-00258-EJD

1    This Cause having come before the Court upon Defendant Elizabeth A. Holmes' Motion to

2    Exclude Certain Evidence and Argument Regarding Third-Party Testing Platforms.  After due

3    consideration of the filings, the governing law and the argument of the parties:

4    IT IS HEREBY ORDERED that Ms. Holmes' motion is GRANTED.

5    IT IS FURTHER ORDERED that the government is precluded from introducing

6    evidence, argument, or questioning that Theranos tampered with commercial laboratory testing

7    platforms or that the modification of these platforms violated the manufacturer specifications or was

8    otherwise improper.

9    IT IS FURTHER ORDERED that the government is precluded from introducing

10   argument or questioning that Theranos improperly concealed modifications to commercial laboratory

11   testing platforms.

12   IT IS FURTHER ORDERED that the government is precluded from introducing

13   evidence of the particular measures that Theranos took to protect its modifications to commercial testing

14   platforms as trade secrets.

15

16   IT IS SO ORDERED.

17

18   Dated: _____

19

20                                                                      _____
                                                                        Hon. Edward J. Davila
21                                                                      United States District Judge

22

23

24

25

26

27   [PROPOSED] ORDER GRANTING MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
     REGARDING THIRD-PARTY TESTING PLATFORMS UNDER FEDERAL RULES OF EVIDENCE 401-
     403, 404(B), AND 702
28
     CR-18-00258 EJD

                                                      1