# Exhibit 4



*United States Attorney*
*Northern District of California*

*150 Almaden Boulevard, Suite 900*  *(408) 535-5061*
*San Jose, California 95113*  *Fax (408) 535-5066*

March 6, 2020

*Via Email*

Lance Wade, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Jeffrey B. Coopersmith, Esq.
Orrick Herrington & Sutcliffe LLP
701 5th Avenue, Suite 5600
Seattle, WA 98104-7097

      Re:    *United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani*
              CR-18-00258-EJD
              Expert Notice

Dear Counsel:

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the government hereby discloses a written summary of testimony that the government intends to use under Rules 702, 703, and/or 705 of the Federal Rules of Evidence during its case-in-chief at trial. Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the government hereby requests from Defendants disclosure of testimony they intend to use under Rule(s) 702, 703, and/or 705 of the Federal Rules of Evidence as evidence at trial.

1. Dr. Stephen R. Master

Please see the attached report summarizing the testimony of Dr. Master. His qualifications are summarized in the accompanying CV.

2. Dr. Steven Linnerson

Dr. Linnerson is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R.

1

Evid. 702. Specifically, Dr. Linnerson will testify about hCG tests, the values in hCG tests, and how a physician would expect those values to double in 48 to 72 hours if a women is pregnant over this time period. Dr. Linnerson will explain that an hCG blood test can detect pregnancy before it can be detected in a urine test. If an hCG value stays flat or goes down, then a physician would expect the woman is no longer pregnant. Dr. Linnerson will also explain that if a Theranos test showed a low value of hCG followed by a test from another laboratory a few days later with a very high value, this would tend to show that the Theranos test was wrong absent some other explanation, such as in the case of a pregnancy with twins or triplets. Dr. Linnerson will further testify that his practice has never had problems with its hCG tests with other established laboratories before it started using Theranos. His practice has been doing business with Sonora Quest and LabCorp for fifteen years and never had a problem.

Dr. Linnerson will also testify about a study his office conducted between Theranos and comparator laboratories. According to this study, 67% of the Theranos hCG tests resulted in hCG values at least 10% higher than those obtained from the comparator laboratory. He said this discrepancy would have led to clinical decisions about where the patient's embryos/fetuses were located in the body (i.e., whether the pregnancy was ectopic) and whether the pregnancy was viable or not.

Dr. Linnerson graduated from the University of Colorado, School of Medicine in 1977, and has 43 years of practice experience. Dr. Linnerson specializes in Obstetrics & Gynecology and is affiliated with the Banner Desert Medical Center.

   3. Dr. Audra Zachman

Dr. Zachman is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by her knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Zachman will testify about hCG tests and the values in hCG test results. Dr. Zachman will testify that an hCG value of 1805 confirms that a patient is pregnant. The value does not provide any information about the future viability of the pregnancy, but is a positive result in terms of whether the patient is currently pregnant. It is normal to send a patient who has suffered from pervious miscarriages for hCG testing every 48 hours. A normal pregnancy will see the hCG value double every 48 hours. It is improbable that the hCG value would remain the same for those two tests. In Dr. Zachman's experience, the hCG test is a reliable test which laboratories get right. Dr. Zachman said seeing the exact same value one day and then again two days later would be unlikely and troubling. Theranos's explanation as to the discrepancy in hCG test values for her patient, ▇▇▇▇▇▇, was "not plausible." Dr. Zachman has never had any other problems with hCG tests aside from the experience she had with her patient who was tested by Theranos.

Dr. Zachman is a board certified Women's Health Nurse Practitioner. Dr. Zachman began her nursing career after graduating from Arizona State University with a Bachelor of Science Nursing degree. She has worked in antepartum, postpartum, and labor and delivery. She obtained a Doctorate of Nursing Practice specializing in women's health in 2013.

4. JoEllen B. Embry

Nurse Practitioner JoEllen Embry is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by her knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Ms. Embry will testify about Poly Cystic Ovations Syndrome and normal versus abnormal levels of testosterone in patients experiencing this syndrome. Some patients whom Ms. Embry treats have male levels of testosterone with values as high as 120. According to Ms. Embry, a value of 30 to 40 for testosterone is normal for a woman. She prescribes her female patients with abnormally high testosterone levels specific medications to bring the levels down. The same patients with very high levels of testosterone were tested at Theranos and Theranos reported levels of less than one. Ms. Embry will testify that to this day, she has never had any patients with testosterone as low as what Theranos was reporting. According to Ms. Embry, the errors with regard to testosterone values and Theranos's test were blatant and obvious. Ms. Embry adjusts patients' medication based on lab results, and an incorrect adjustment could result in patient harm.

Ms. Embry will further testify that in 20 plus years of using Sonora Quest and LabCorp, she has never experienced any clinical errors with their lab results.

Ms. Embry received a Bachelor of Science, Nursing, from Arizona State University in 1983, and has been a practicing nurse since then. She obtained a Master's Degree in Nursing from the University of Phoenix in 1997. From 1996 until the present, Ms. Embry has worked as a Nurse Practitioner specializing in OB/GYN and women's health.

5. Dr. Edward Szmuc

Dr. Szmuc is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Szmuc will testify about hCG tests. He will testify that hCG tests are laboratory tests done to either identify an early pregnancy or determine an ectopic pregnancy, which is a life threatening pregnancy. An expected hCG value would be between 2-1,000, and a normal pregnancy would show hCG levels doubling every 48 to 72 hours. hCG values for an ectopic pregnancy rise a little or stay the same. Dr. Szmuc will testify that he relies on these tests, that the hCG test is the most important lab work he orders as an OBGYN, and that a doctor must have full confidence in the results from hCG tests. In 30 years of using Sonora Quest, he never questioned their results.

Dr. Szmuc will further testify that he would normally order a third hCG test if he suspects an ectopic pregnancy or a miscarriage. He would typically continue to test until the test shows a negative result. But if hCG values stayed level, it could indicate an ectopic pregnancy that needed an intervention, surgical or pharmaceutical. In Dr. Szmuc's option, if you have an hCG of 5,000 and later one at 100,000, a next result below 5,000 indicates a problem with the test. If hCG is "below detectable threshold" it means negative for pregnancy. If he has a patient with a positive at home pregnancy test and he compares it with a blood test that registers a value of below detectable threshold, that would be a red flag. If an hCG result comes back invalid, that would be a red flag.

3

Dr. Szmuc attended the Medical College of Ohio, Medical School, obtaining an MD in 1979, and completed his OBGYN residency at the Boston City Hospital in 1983. He specializes in Gynecology, Obstetrics, Obstetrics and Gynecology.

   6. Dr. Gerald S. Asin

Dr. Asin is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Asin will testify about PSA tests, diabetic tests, protein and calcium tests, and HIV tests. A PSA test helps detect prostate cancer. If a PSA test comes back high, patients may need to undergo a biopsy in which a needle is inserted from the penis to the prostate. If a PSA test was incorrect, i.e., the test result numbers being incorrectly high, men could have to go through this unpleasant test unnecessarily. Dr. Asin will further testify that an HIV test result showing that it was reactive for HIV 1+2 antibodies, but non-reactive for HIV 1 antibody and HIV 2 antibody, separately, did not make any sense. It was not possible for the blood to have a combination of HIV 1 and 2, but not have either HIV 1 or 2 individually.

Dr. Asin is Board Certified in Internal Medicine. After earning his Bachelor of Science from Northwestern University in Evanston, Illinois, Dr. Asin attended the University of Oklahoma College of Medicine where he earned his Doctor of Medicine (MD) in 1987. He then continued his education in Milwaukee, Wisconsin and completed his residency in 1990 at the Medical College of Wisconsin. Dr. Asin has practiced in Arizona since 1992. He is currently an Associate Professor of Medicine at the University of Arizona College of Medicine and an affiliate of Scottsdale Healthcare.

   7. Dr. Govind Acharya

Dr. Acharya is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Acharya will testify about blood metabolic panel (BMP) tests, and among other things, the electrolyte analysis and potassium analysis in these tests. Dr. Acharya will testify that a BMP test is not complicated and these are very common tests. BMP was a usual pre-surgical screening, and if abnormal results came back a surgery could be called off. An abnormal result for a potassium test could indicate a heart issue that would not allow surgery. Dr. Acharya had patients whose Theranos tests showed abnormal potassium levels. Dr. Acharya knew the patients' medical histories, however, and did not think the test result were right, so he had them re-run at the hospital laboratory.

Dr. Acharya is a graduate of B.J. Medical College, Ahmedabad, India. He completed an internship at Mt. Sinai School of Medicine in New York followed by a residency in General Surgery at the University of Massachusetts. He completed his Plastic and Reconstructive Surgery training at the Medical College of Virginia. Dr. Acharya remained there as an Assistant Professor before moving to Phoenix in 1980. Dr. Acharya is certified by the American Board of Plastic Surgery and the American Board of Surgery. He has been in practice for over 30 years. Dr. Acharya is a member of the American Society of Plastic Surgeons, American Society of

Aesthetic Plastic Surgeons, Fellow of the American College of Surgeons and Fellow of the International College of Surgeons. Dr. Acharya has performed thousands of Plastic Surgery procedures utilizing the latest surgical techniques. He is involved in teaching, research and is on the clinical faculty of the Mayo Clinic College of Medicine. He has also done medical missionary work to repair birth defects and war injuries.

   8.  Dr. John Couvaras

Dr. Couvaras is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Couvaras will testify about hCG tests and values. Dr. Couvaras will testify about a patient, ▬▬▬▬, who had a reading of 160 after her first hCG test at Sonora Quest. When she was tested a second time (this time by Theranos), however, the result came back as "negative" for pregnancy. The data went from a reading of 160 to a reading of less than detectable, which Dr. Couvaras considered a "chemical loss." After the Theranos blood test which led Dr. Couvaras to conclude that ▬▬▬ was no longer pregnant, Dr. Couvaras stopped the current treatment protocol, and began recycling ▬▬▬ on medicines that a pregnant person should not be taking. Subsequently, ▬▬▬ called the office and said she had not had her period. Dr. Couvaras told her to take another blood test, which she did on 09/22/2014. That test was also performed by Theranos, and the results for progesterone came back as "high" and the results for beta were 2150. When Dr. Couvaras saw those results, his initial thought was that ▬▬▬ might have an ectopic pregnancy. His notes for ▬▬▬ stated that they should have ▬▬▬ come in to the office because they were missing something. She came in to the office on 09/23/2014, and Dr. Couvaras performed an ultrasound on her. The ultrasound revealed that there was a sac in her uterus, and Dr. Couvaras determined that she was six weeks pregnant. The pregnancy they were seeing was in line with the pregnancy projected by the 09/03/2014 Sonora Quest Laboratory results. Dr. Couvaras explained that, with a pregnant patient, you would expect to see the hCG value double every two days. That holds true until the value levels off at somewhere between 5,000 and 12,000. If you take the original hCG 160 value measured by Sonora Quest and you double it every two days, you would have expected to see a value of between 5,000 and 12,000 at the time of the second Theranos blood test. The second Theranos blood test, though positive for pregnancy (2150), wasn't nearly as high as Dr. Couvaras would have expected it to be. Dr. Couvaras never saw ▬▬▬ after the 09/23/2014 office visit. Dr. Couvaras will further testify that Lovastatin (one of the medicines ▬▬▬ was taking) is contraindicated for pregnant patients.

Dr. Couvaras is a double board certified fertility specialist, who is also a board certified Reproductive Endocrinologist. He received his training at the University of Texas Southwest Medical Center and completed his internship and residency at Baylor College of Medicine in Dallas. He is also board certified in Obstetrics and Gynecology and an active member of the American Society of Reproductive Medicine. He was the past director of Reproductive Endocrinology and Assisted Reproductive Medicine and past chairman of the Department of Obstetrics and Gynecology at Abrazo Scottsdale Hospital. Dr Couvaras served as the 2017 President of Maricopa Medical Society, and has been on the Board Member since 2013. He has also served on the board of Phoenix OBGYN Society 2014-2015.

9. Dr. Curtis Page

Dr. Page is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Page will testify about A1C and CBC tests. Dr. Page will testify that he experienced a high quantity of abnormal A1C tests with Theranos testing. Dr. Page will further testify that he did not understand how Theranos could not have known they had a problem with A1Cs for a couple of months. Dr. Page will testify that he did not think it would require a doctor to point out this kind of issue.

Dr. Page graduated in 1988 with an ABA in Biochemistry from Occidental College in Pasadena, California. Dr. Page then went onto Harvard Medical School in Boston Massachusetts where he graduated in 1994. While at Harvard he completed a research fellowship in wound healing and skin biology at the Brigham and Women's Hospital Department of Plastic Surgery. He later completed two years of a General Surgery residency at Emory University in Atlanta from 1994-1997 and later a Family Practice residency in Brooklyn, NY at the Lutheran Medical Center from 1998-2000. With a focus on advanced chronic disease management and population health, Dr. Page has taken a heightened interest in programs that are capable of improving both the quality and cost of health care. As a member of the National Lipid Association and a graduate of the Bale and Doneen method, Dr. Page is currently actively practicing advanced lipid testing and cardiovascular prevention programs. Dr. Page has developed AAFP sponsored Group Visit/Educational programs covering Smoking Cessation, Diabetes, COPD, CHF and Cardiovascular disease.

10. Daniel Young

Daniel Young is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Young's anticipated testimony is described in memoranda of interview, grand jury testimony, and testimony in other proceedings, all of which have been previously produced. *See, e.g.*, GJ-TRANSCRIPTS 000001-000710; COLM-000001-COLM-001849; US-REPORTS-0007227; US-REPORTS-0007375; US-REPORTS-0007668; US-REPORTS-0007694; US-REPORTS-0008040.

11. Dr. Adam Rosendorff

Dr. Rosendorff is a fact / percipient witness, whose testimony may also cover topics and/or opinions informed by his knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702. Specifically, Dr. Rosendorff's anticipated testimony is described in memoranda of interview, grand jury testimony, and testimony in other proceedings, all of which have been previously produced. *See, e.g.*, GJ-TRANSCRIPTS 000001-000710; COLM-000001-COLM-001849; US-REPORTS-0007227; US-REPORTS-0007375; US-REPORTS-0007668; US-REPORTS-0007694; US-REPORTS-0008040.

Please contact me if you believe that the notice that you have received provides inadequate notice under Rule 16(a)(1)(G). The government reserves the right to supplement this disclosure of expert testimony. To the extent the government determines that it intends to call any other

expert witness to testify at trial based on its ongoing investigation, the identity and qualifications of any such additional witness(es), as well as the nature of the expert testimony and any related reports, will be disclosed immediately upon such a determination.

Please let us know if you have any questions, or would like to further discuss the matter raised above.

    Very truly yours,

    ADAM A. REEVES
    Attorney for the United States,
    Acting Under Authority Conferred
    By 28 U.S.C. § 515

    VANESSA BAEHR-JONES
    Assistant United States Attorney