# Exhibit 21

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHERINE TREFZ
(202) 434-5038
ktrefz@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 8, 2020

Via Email

Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Mr. John C. Bostic, Esquire
Ms. Vanessa Baehr-Jones, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

> Re:   United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
>       No. CR-18-00258-EJD (N.D. Cal.)

Dear Counsel:

We write regarding the government's September 28, 2020 letter in which it provided a "Supplemental Expert Notice" pursuant to Rule 16(a)(1)(G).  The supplement does not cure all of the deficiencies defense counsel previously identified in the March 6, 2020 disclosures, and raises additional questions concerning the anticipated testimony of the percipient witnesses whose testimony may also cover topics and/or opinions that fall within Federal Rule of Evidence 702.

The expert disclosures, even after this supplement, remain deficient under Rule 16. Please supplement the disclosures by October 19, 2020.  In addition to providing a sufficient summary for each expert that identifies (1) "the witness's opinion," and (2) "the *bases and reasons* for those opinions," *see* Fed. R. Evid. 16(a)(1)(G), defense counsel requests that the government provide the following:

September 28, 2020 supplement

1.  With respect to the disclosures for Bruce Pixley:
    a.  Please provide any statements by Mr. Pixley or his company, Pixley Forensic Services Group, LLC, as well as documents and objects or other oral information regarding Mr. Pixley's retention, his review of "SQL database

WILLIAMS & CONNOLLY LLP

Jeffrey Schenck, Esq., *et al.*
October 8, 2020
Page 2

files stored on an encrypted hard drive" provided by the government, and the drafting of his expert report that are subject to production pursuant to Fed. R. Crim. P. 16(a)(1)(E), as well as *Brady* and its progeny and the Jencks Act, including, for example, documents or information acknowledging the limits of his opinions or review.

2. With respect to the disclosures for Dr. Steven Linnerson:
   a. Please disclose the patients referenced in Dr. Linnerson's disclosure who allegedly received Theranos test results that "indicated clearly that [their] pregnancies were not going to make it because the hCG levels were not doubling as they should have been" but were "later determined to be carrying viable pregnancies."

3. With respect to the disclosures for Dr. JoEllen B. Embry:
   a. Please disclose the patients referenced in Dr. Embry's disclosure who "normally presented with testosterone levels of 30 or 40 but who were suddenly getting Theranos results indicating levels of less than 5."

4. With respect to the disclosures for Dr. Edward Szmuc:
   a. Please define "issues" and disclose the basis for Dr. Szmuc's opinion that "he has never had any issues with hCG tests and other laboratories" in his 40 years of experience with the tests, other than the issues he had with Theranos.

5. With respect to the disclosures for Dr. Asin:
   a. Please disclose the bases and reasons for Dr. Asin's opinion that "Theranos A1c tests were either too high or too low; the Theranos results were not accurate."
   b. Please disclose the bases and reasons for Dr. Asin's opinion that there were "abnormalities with Theranos protein and calcium tests."
   c. Please disclose the bases and reasons for Dr. Asin's opinion that Theranos calcium tests were "too high."
   d. Please disclose the patients referenced in Dr. Asin's disclosure who "had uncharacteristically high PSA results from Theranos" and Dr. Asin's bases and reasons for his opinion that the tests for these patients were too high.
   e. Please disclose the patients referenced in Dr. Asin's disclosure who received allegedly erroneous A1c, calcium, and protein tests.
   f. Please confirm that the patient referenced in Dr. Asin's disclosure who recently underwent a biopsy procedure was not a Theranos customer.

6. With respect to the disclosures for Dr. Govind Acharya:

WILLIAMS & CONNOLLY LLP

Jeffrey Schenck, Esq., *et al*.
October 8, 2020
Page 3

    a.  The government has not included Dr. Acharya on its witness list, but his disclosure states that he "will testify" about several tests.  Please clarify whether the government intends to call Dr. Acharya.
    b.  Please disclose the patients referenced in Dr. Acharya's disclosure as the "two patients Dr. Acharya remembered having an issue with Theranos BMP [tests]."
    c.  Please confirm which specific assays within the category of BMP tests Dr. Acharya will opine on.

7.  With respect to the disclosures for Dr. Curtis Page:
    a.  Please disclose the basis for Dr. Page's testimony that "approximately 70 to 100 patients were affected" by Theranos A1C results.
    b.  Please disclose the patients referenced in Dr. Page's disclosure that received allegedly inaccurate results.

8.  With respect to the disclosures for Dr. Adam Rosendorff:
    a.  Please provide the bases and reasons for the opinions listed in the last four paragraphs of the disclosure related to Dr. Rosendorff.

<u>March 6, 2020 Expert Notice</u>

    Ms. Holmes understands that the government's September 28 disclosure is a supplement that does not narrow the potential opinions of the individuals previously noticed.  Several of the deficiencies previously identified therefore still remain.  Accordingly, Ms. Holmes also requests that the government provide the following information relevant to the March 6 disclosures:

1.  With respect to the disclosures for Dr. Linnerson:
    a.  Please define "problem" and disclose the basis for Dr. Linnerson's opinion that his practice has "never had a problem" with Sonora Quest and LabCorp.

2.  With respect to the disclosures for Dr. Zachman:
    a.  Please disclose the basis for Dr. Zachman's opinion that she "has never had any other problems with hCG tests."

3.  With respect to the disclosures regarding Ms. Embry:
    a.  Please disclose the patients referenced in Ms. Embry's disclosure.
    b.  Please disclose the basis for Ms. Embry's opinion that she never experienced any clinical errors with the lab results of Sonora Quest and LabCorp.

4.  With respect to the disclosures regarding Dr. Szmuc:
    a.  Please disclose whether Dr. Szmuc will opine that an expected hCG value would be between 2-1,000 at any particular time and, if so, what time period.

WILLIAMS & CONNOLLY LLP

Jeffrey Schenck, Esq., *et al.*
October 8, 2020
Page 4

5. With respect to the disclosures regarding Dr. Acharya:
    a. The disclosure indicates that Dr. Acharya "will testify about blood metabolic panel (BMP) tests, and, among other things, the electrolyte analysis and potassium analysis in these tests."  Please disclose what "other things" Dr. Acharya may testify to regarding these tests.
    b. Please define and disclose the basis for Dr. Acharya's opinion that "a BMP test is not complicated."
    c. Please disclose the patients referenced in Dr. Acharya's disclosure, and the basis for his opinion that the test result was not right.

6. With respect to the disclosures regarding Dr. Page:
    a. The disclosure indicates that Dr. Page will testify regarding CBC tests but does not identify any opinions regarding CBC tests.  Please disclose any opinions to which Dr. Page will testify regarding CBC.

7. We note that only Dr. Zachman and Dr. Couvaras identified specific patients about whom they may provide testimony, and two others reference unnamed patients.  If the other doctor witnesses will provide expert testimony regarding specific patients, please disclose that testimony, including an identification of the patients.

Finally, none of the disclosures provided in the government's letters identify specific documents that would provide the "bases and reasons for [the] opinions" listed.  Please disclose any documents that provide the "bases and reasons for [the] opinions" identified.

Sincerely,

Katie Trefz

cc:  Jeff Coopersmith, Esq. (by email)