# Exhibit 56



**510(k) PREMARKET NOTIFICATION**

**FOR THE**

**CAPILLARY TUBES AND NANOTAINER™ TUBES**

**OCTOBER 27, 2014**

**THERANOS, INC.**
**1601 S. CALIFORNIA AVE.**
**PALO ALTO, CA 94304**
**U.S.A.**

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972722

# theran⊚s

U.S. Food and Drug Administration
Center for Devices and Radiological Health
Document Mail Center – WO66-G609
10903 New Hampshire Avenue
Silver Spring, MD 20993

October 27, 2014

**Re: Traditional 510(k) Premarket Notification for the Capillary Tubes and Nanotainer**[TM]
**Tubes**

Dear Sir or Madam:

Please find herewith a Traditional 510(k) Premarket Notification  for Theranos Inc.'s blood collection capillaries ("***Capillary Tubes***") and storage and transport tubes ("***Nanotainer Tubes***") that are capable of collecting, preserving, and transporting whole blood capillary samples.

Per FDA's August 12, 2005 guidance document titled, Guidance for Industry and Staff: Format for Traditional and Abbreviated 510(k)s regarding cover letters for 510(k) submissions, please note the following information:

1.  Submission Date:  October 28, 2014

2.  Establishment Registration Numbers for Theranos, Inc.
    Palo Alto, California:  3010479366
    Newark, California:  3006231732

3.  Common name of the device:  blood collection capillaries and storage and transport containers

4.  Trade Name:  Capillary Tubes and Nanotainer[TM] Tubes

5.  Classification Name:  Blood specimen collection device
    Regulation Number:  862.1675
    Product Code:  JKA

6.  Reason for the 510(k):  New device

7.  Predicate:  Ram Scientific Safe-T-Fill Capillary Blood Collection System
    510(k) Number:  K983517
    Regulation Number:  862.1675
    Product Code:  JKA
    Note that Ram Scientific has not listed this device under the K9883517 clearance, but has listed two Class I devices with these functions:  the Safe-T-Fill capillary blood collection tube under 21 CFR 864.6150 with product code GIO and the Safe-T-Fill specimen mailer and storage container under 21 CFR 864.3250 with product code

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972723

**theranos**

KDT.  There are no other collection or container devices listed under Ram Scientific's establishment registrations.

8. Special Controls:  No applicable mandatory performance standards or special controls exist for this device.

Additionally, the principal factors about the design and use of the Theranos Capillary Tubes and Nanotainer Tubes are outlined in the following table.

| Question | YES | NO |
|---|---|---|
| Is the device intended for prescription use (21 CFR§801 Subpart D)? | X | |
| Is the device intended for over-the-counter use (21 CFR§807 Subpart C)? | | X |
| Does the device contain components derived from a tissue or other biologic source? | | X |
| Is the device provided sterile? | | X |
| Is the device intended for single use? | X | |
| Is the device a reprocessed single use device? | | X |
| If yes, does this device type require reprocessed validation     data? N/A | | |
| Does the device contain a drug? | | X |
| Does the device contain a biologic? | | X |
| Does the device use software? | | X |
| Does the submission include clinical information? | X | |
| Is the device implanted? | | X |

Enclosed please find two (2) paper copies of this Traditional 510(k) Premarket Notification and one (1) eCopy. The eCopy is an exact duplicate of the paper copy.

*We request, in advance, that you treat this letter and our entire package as proprietary and confidential information of Theranos in the event the FDA receives a public records request. Theranos considers the content of these materials highly confidential as the materials reveal trade secrets and other closely guarded information about the inner workings of Theranos' proprietary technology.*

We again look forward to working with you on this filing and additional filings to come.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972724

**theran✺s**

With my best regards,

Brad Arington
Senior Regulatory Counsel
Theranos, Inc.
1601 S. California Avenue, Palo Alto, California 94304
Tel: 650-856-7304
Fax: 650-838-9165
barington@theranos.com

cc: Elizabeth Holmes, CEO and Founder

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

## Table of Contents

| | | |
|---|---|---|
| **1.0** | **MEDICAL DEVICE USER FEE COVER SHEET (FORM FDA 3601)** | 1 |
| **2.0** | **CDRH PREMARKET REVIEW SUBMISSION COVER SHEET/CDRH 510(K) SCREENING CHECKLIST** | 3 |
| **3.0** | **INDICATIONS FOR USE STATEMENT** | 9 |
| **4.0** | **510(K) SUMMARY** | 10 |
| **5.0** | **TRUTHFUL AND ACCURACY STATEMENT** | 17 |
| **6.0** | **CLASS III SUMMARY AND CERTIFICATION** | 18 |
| **7.0** | **FINANCIAL CERTIFICATION OR DISCLOSURE STATEMENT** | 19 |
| **8.0** | **DECLARATIONS OF CONFORMITY AND SUMMARY REPORTS** | 20 |
| **9.0** | **EXECUTIVE SUMMARY** | 21 |
| **10.0** | **DEVICE DESCRIPTION** | 27 |
| **11.0** | **SUBSTANTIAL EQUIVALENCE DISCUSSION** | 31 |
| **12.0** | **PROPOSED LABELING** | 36 |
| **13.0** | **STERILIZATION AND SHELF-LIFE** | 37 |
| **14.0** | **BIOCOMPATIBILITY** | 38 |
| **15.0** | **SOFTWARE** | 39 |
| **16.0** | **ELECTROMAGNETIC COMPATIBILITY, ELECTRICAL SAFETY, LASER SAFETY** | 40 |
| **17.0** | **PERFORMANCE TESTING – ANALYTICAL** | 41 |
| **18.0** | **PERFORMANCE TESTING – CLINICAL** | 69 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972726

**THERANOS, INC.**

**CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES**
**510(k) PREMARKET NOTIFICATION**

## 1.0 MEDICAL DEVICE USER FEE COVER SHEET (FORM FDA 3601)

Site: null

Page 1 of 2

| DEPARTMENT OF HEALTH AND HUMAN SERVICES FOOD AND DRUG ADMINISTRATION **MEDICAL DEVICE USER FEE COVER SHEET** | PAYMENT IDENTIFICATION NUMBER: **MD8678186** Write the Payment Identification number on your check. |
|---|---|

A completed cover sheet must accompany each original application or supplement subject to fees. If payment is sent by U.S. mail or courier, please include a copy of this completed form with payment. Payment and mailing instructions can be found at: http://www.fda.gov/oc/mdufma/coversheet.html

| 1. COMPANY NAME AND ADDRESS (include name, street address, city, state, country, and post office code)<br><br>THERANOS INC<br>1601 S California Ave<br>Palo Alto<br>CA 94304<br>US<br><br>1.1 EMPLOYER IDENTIFICATION NUMBER (EIN)<br>\*\*\*\*\*\*1826 | 2. CONTACT NAME<br>Steven Arington<br>2.1 E-MAIL ADDRESS<br>barington@theranos.com<br>2.2 TELEPHONE NUMBER (include Area code)<br>650-858-7304<br>2.3 FACSIMILE (FAX) NUMBER (Include Area code) |
|---|---|

3. TYPE OF PREMARKET APPLICATION (Select one of the following in each column; if you are unsure, please refer to the application descriptions at the following web site:
http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm345263.htm

| Select an application type: | 3.1 Select a center |
|---|---|
| [X] Premarket notification(510(k)); except for third party | [X] CDRH |
| [ ] 513(g) Request for Information | [ ] CBER |
| [ ] Biologics License Application (BLA) | 3.2 Select one of the types below |
| [ ] Premarket Approval Application (PMA) | [X] Original Application |
| [ ] Modular PMA | **Supplement Types:** |
| [ ] Product Development Protocol (PDP) | [ ] Efficacy (BLA) |
| [ ] Premarket Report (PMR) | [ ] Panel Track (PMA, PMR, PDP) |
| [ ] 30-Day Notice | [ ] Real-Time (PMA, PMR, PDP) |
| | [ ] 180-day (PMA, PMR, PDP) |

4. ARE YOU A SMALL BUSINESS? (See the instructions for more information on determining this status)
[ ] YES, I meet the small business criteria and have submitted  [X] NO, I am not a small business the required qualifying documents to FDA
4.1  If Yes, please enter your Small Business Decision Number:

5. FDA WILL NOT ACCEPT YOUR SUBMISSION IF YOUR COMPANY HAS NOT PAID AN ESTABLISHMENT REGISTRATION FEE THAT IS DUE TO FDA. HAS YOUR COMPANY PAID ALL ESTABLISHMENT REGISTRATION FEES THAT ARE DUE TO FDA?
[X] YES (All of our establishments have registered and paid the fee, or this is our first device, and we will register and pay the fee within 30 days of FDA's approval/clearance of this device.)
[ ] NO (if "NO," FDA will not accept your submission until you have paid all fees due to FDA. This submission will not be processed; see http://www.fda.gov/cdrh/mdufma for additional information)

6. IS THIS PREMARKET APPLICATION COVERED BY ANY OF THE FOLLOWING USER FEE EXCEPTIONS? IF SO, CHECK THE APPLICABLE EXCEPTION.

| [ ] This application is the first PMA submitted by a qualified small business, including any affiliates | [ ] The sole purpose of the application is to support conditions of use for a pediatric population |
|---|---|

https://userfees.fda.gov/OA_HTML/mdufmaCSedCfgItemsPopup.jsp?vename=Steven%2...  10/27/2014

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

Page **1** of **69**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972727

**THERANOS, INC.**

**CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION**

Site: null                                                                                                    Page 2 of 2

| [ ] This biologics application is submitted under section 351 of the Public Health Service Act for a product licensed for further manufacturing use only | [ ] The application is submitted by a state or federal government entity for a device that is not to be distributed commercially |
|---|---|

7. IS THIS A SUPPLEMENT TO A PREMARKET APPLICATION FOR WHICH FEES WERE WAIVED DUE TO SOLE USE IN A PEDIATRIC POPULATION THAT NOW PROPOSES CONDITION OF USE FOR ANY ADULT POPULATION? (If so, the application is subject to the fee that applies for an original premarket approval application (PMA).

[ ] YES          [X] NO

PAPERWORK REDUCTION ACT STATEMENT
Public reporting burden for this collection of information is estimated to average 18 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the address below.

Department of Health and Human Services, Food and Drug Administration, Office of Chief Information Officer, 8455 Colesville Road, COLE-14-14253 Silver Spring, MD 20993-0002
[Please do NOT return this form to the above address, except as it pertains to comments on the burden estimate.]

8. USER FEE PAYMENT AMOUNT SUBMITTED FOR THIS PREMARKET APPLICATION
$5,018.00                                                                                                    27-Oct-2014

"Close Window" Print Cover sheet

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

Page **2** of **69**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972728

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>**FOOD AND DRUG ADMINISTRATION**<br>**CDRH PREMARKET REVIEW SUBMISSION COVER SHEET** | | Form Approval<br>OMB No. 0910-0120<br>Expiration Date: December 31, 2013<br>See PRA Statement on page 5. |
|---|---|---|
| Date of Submission<br>10/28/2014 | User Fee Payment ID Number<br>MD6078185 | FDA Submission Document Number *(if known)* |

## SECTION A — TYPE OF SUBMISSION

| PMA | PMA & HDE Supplement | PDP | 510(k) | Request for Feedback |
|---|---|---|---|---|
| ☐ Original Submission<br>☐ Premarket Report<br>☐ Modular Submission<br>☐ Amendment<br>☐ Report<br>☐ Report Amendment<br>☐ Licensing Agreement | ☐ Regular (180 day)<br>☐ Special<br>☐ Panel Track (PMA Only)<br>☐ 30-day Supplement<br>☐ 30-day Notice<br>☐ 135-day Supplement<br>☐ Real-time Review<br>☐ Amendment to PMA & HDE Supplement<br>☐ Other | ☐ Original PDP<br>☐ Notice of Completion<br>☐ Amendment to PDP | ☒ Original Submission:<br>☒ Traditional<br>☐ Special<br>☐ Abbreviated (Complete section I, Page 5)<br>☐ Additional Information<br>☐ Third Party | ☐ Pre-Submission<br>☐ Informational Meeting<br>☐ Submission Issue Meeting<br>☐ Day 100 Meeting<br>☐ Agreement Meeting<br>☐ Determination Meeting<br>☐ Study Risk Determination<br>☐ Other *(specify)*: |

| IDE | Humanitarian Device Exemption (HDE) | Class II Exemption Petition | Evaluation of Automatic Class III Designation (De Novo) | Other Submission |
|---|---|---|---|---|
| ☐ Original Submission<br>☐ Amendment<br>☐ Supplement | ☐ Original Submission<br>☐ Amendment<br>☐ Supplement<br>☐ Report<br>☐ Report Amendment | ☐ Original Submission<br>☐ Additional Information | ☐ Original Submission<br>☐ Additional Information | ☐ 513(g)<br>☐ Other *(describe submission)*: |

Have you used or cited Standards in your submission? ☒ Yes ☐ No *(If Yes, please complete Section I, Page 5)*

## SECTION B — SUBMITTER, APPLICANT OR SPONSOR

| Company / Institution Name<br>Theranos, Inc. | Establishment Registration Number *(if known)*<br>Owner/Operator # 10041002 | | |
|---|---|---|---|
| Division Name *(if applicable)* | Phone Number *(including area code)*<br>650-856-7304 | | |
| Street Address<br>1601 S. California Avenue | FAX Number *(including area code)* | | |
| City<br>Palo Alto | State / Province<br>California | ZIP/Postal Code<br>94304 | Country<br>USA |
| Contact Name<br>Brad Arington | | | |
| Contact Title<br>Senior Regulatory Counsel | Contact E-mail Address<br>barington@theranos.com | | |

## SECTION C — APPLICATION CORRESPONDENT (e.g., consultant, if different from above)

| Company / Institution Name | | | |
|---|---|---|---|
| Division Name *(if applicable)* | Phone Number *(including area code)* | | |
| Street Address | FAX Number *(including area code)* | | |
| City | State / Province | ZIP Code | Country |
| Contact Name | | | |
| Contact Title | Contact E-mail Address | | |

**FORM FDA 3514 (1/13)**

Page 1 of 5 Pages

FSC Publishing Services (301) 443-6740    EF

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972729

| SECTION D1 | REASON FOR APPLICATION - PMA, PDP, OR HDE | |
|---|---|---|
| ☐ New Device<br>☐ Withdrawal<br>☐ Additional or Expanded Indications<br>☐ Request for Extension<br>☐ Post-approval Study Protocol<br>☐ Request for Applicant Hold<br>☐ Request for Removal of Applicant Hold<br>☐ Request to Remove or Add Manufacturing Site | ☐ Change in design, component, or specification:<br> ☐ Software / Hardware<br> ☐ Color Additive<br> ☐ Material<br> ☐ Specifications<br> ☐ Other (specify below) | ☐ Location change:<br> ☐ Manufacturer<br> ☐ Sterilizer<br> ☐ Packager |
| ☐ Process change:<br> ☐ Manufacturing  ☐ Packaging<br> ☐ Sterilization<br> ☐ Other (specify below) | ☐ Labeling change:<br> ☐ Indications<br> ☐ Instructions<br> ☐ Performance Characteristics<br> ☐ Shelf Life<br> ☐ Trade Name<br> ☐ Other (specify below) | ☐ Report Submission:<br> ☐ Annual or Periodic<br> ☐ Post-approval Study<br> ☐ Adverse Reaction<br> ☐ Device Defect<br> ☐ Amendment |
| ☐ Response to FDA correspondence: | | ☐ Change in Ownership<br>☐ Change in Correspondent<br>☐ Change of Applicant Address |

☐ Other Reason (specify):

| SECTION D2 | REASON FOR APPLICATION - IDE | |
|---|---|---|
| ☐ New Device<br>☐ New Indication<br>☐ Addition of Institution<br>☐ Expansion / Extension of Study<br>☐ IRB Certification<br>☐ Termination of Study<br>☐ Withdrawal of Application<br>☐ Unanticipated Adverse Effect<br>☐ Notification of Emergency Use<br>☐ Compassionate Use Request<br>☐ Treatment IDE<br>☐ Continued Access | ☐ Change in:<br> ☐ Correspondent / Applicant<br> ☐ Design / Device<br> ☐ Informed Consent<br> ☐ Manufacturer<br> ☐ Manufacturing Process<br> ☐ Protocol - Feasibility<br> ☐ Protocol - Other<br> ☐ Sponsor<br><br>☐ Report submission:<br> ☐ Current Investigator<br> ☐ Annual Progress Report<br> ☐ Site Waiver Report<br> ☐ Final | ☐ Response to FDA Letter Concerning:<br> ☐ Conditional Approval<br> ☐ Deemed Approved<br> ☐ Deficient Final Report<br> ☐ Deficient Progress Report<br> ☐ Deficient Investigator Report<br> ☐ Disapproval<br> ☐ Request Extension of<br>  Time to Respond to FDA<br> ☐ Request Meeting<br> ☐ Request Hearing |

☐ Other Reason (specify):

| SECTION D3 | REASON FOR SUBMISSION - 510(k) | |
|---|---|---|
| ☒ New Device | ☐ Additional or Expanded Indications | ☐ Change in Technology |

☐ Other Reason (specify):

**FORM FDA 3514 (1/13)**                                                      Page 2 of 5 Pages

FOIA Confidential Treatment Requested by Theranos<br>Fed. R. Crim. P. 6(e) material

THER-0972730

## SECTION E — ADDITIONAL INFORMATION ON 510(K) SUBMISSIONS

Product codes of devices to which substantial equivalence is claimed

| 1 | JKA | 2 | | 3 | | 4 | |
|---|-----|---|--|---|--|---|--|
| 5 | | 6 | | 7 | | 8 | |

Summary of, or statement concerning, safety and effectiveness information

☒ 510 (k) summary attached
☐ 510 (k) statement

Information on devices to which substantial equivalence is claimed *(if known)*

| | 510(k) Number | | Trade or Proprietary or Model Name | | Manufacturer |
|---|---|---|---|---|---|
| 1 | K983517 | 1 | Safe-T-Fill Capillary Blood Collection System | 1 | Ram Scientific |
| 2 | | 2 | | 2 | |
| 3 | | 3 | | 3 | |
| 4 | | 4 | | 4 | |
| 5 | | 5 | | 5 | |
| 6 | | 6 | | 6 | |

## SECTION F — PRODUCT INFORMATION - APPLICATION TO ALL APPLICATIONS

Common or usual name or classification name

Capillary blood tubes and specimen storage and transport containers

| | Trade or Proprietary or Model Name for This Device | | Model Number |
|---|---|---|---|
| 1 | Theranos(TM) Capillary Tubes and Nanotainer(TM) Tubes | 1 | NA |
| 2 | | 2 | |
| 3 | | 3 | |
| 4 | | 4 | |
| 5 | | 5 | |

FDA document numbers of all prior related submissions *(regardless of outcome)*

| 1 Q131148 | 2 Q131199 | 3 Q131542 | 4 Q131664 | 5 Q140553 | 6 Q140057 |
|---|---|---|---|---|---|
| 7 Q140818 | 8 Q140358 | 9 | 10 | 11 | 12 |

Data Included in Submission

☐ Laboratory Testing    ☐ Animal Trials    ☒ Human Trials

## SECTION G — PRODUCT CLASSIFICATION - APPLICATION TO ALL APPLICATIONS

| Product Code | C.F.R. Section *(if applicable)* | Device Class |
|---|---|---|
| JKA | 21 CFR 862.1675 | ☐ Class I   ☒ Class II |
| **Classification Panel** | | ☐ Class III   ☐ Unclassified |
| Clinical Chemistry | | |

Indications *(from labeling)*

The Theranos(TM) Capillary Tubes and Nanotainer(TM) Tubes are single use capillary tubes and vessels, respectively, used to obtain capillary blood specimens for analytical testing. Theranos Capillary Tubes and Nanotainer Tubes are used in settings where small capillary blood samples are collected by trained, certified, and appropriately state-licensed healthcare workers in appropriately licensed sample collection locations.

**FORM FDA 3514 (1/13)**                                                                 Page 3 of 5 Pages

Page    of 69

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972731

| | FDA Document Number *(if known)* |
|---|---|
| *Note:* Submission of the information entered in Section H does not affect the need to submit device establishment registration. | |

## SECTION H — MANUFACTURING / PACKAGING / STERILIZATION SITES RELATING TO A SUBMISSION

| Facility Establishment Identifier (FEI) Number | | |
|---|---|---|
| ☒ Original  ☐ Add  ☐ Delete   3006231732 | ☒ Manufacturer ☐ Contract Manufacturer | ☐ Contract Sterilizer ☐ Repackager / Relabeler |
| **Company / Institution Name** | **Establishment Registration Number** | |
| Theranos, Inc. | 3006231732 | |
| **Division Name** *(if applicable)* | **Phone Number** *(including area code)* | |
| Newark Facility | (650) 856-7304 | |
| **Street Address** | **FAX Number** *(including area code)* | |
| 7333 Gateway Blvd. | | |

| City | State / Province | ZIP Code | Country |
|---|---|---|---|
| Newark | CA | 94560 | USA |

| Contact Name | Contact Title | Contact E-mail Address |
|---|---|---|
| Brad Arington | Senior Regulatory Counsel | barington@theranos.com |

| Facility Establishment Identifier (FEI) Number | | |
|---|---|---|
| ☒ Original  ☐ Add  ☐ Delete   3010479366 | ☐ Manufacturer ☐ Contract Manufacturer | ☐ Contract Sterilizer ☐ Repackager / Relabeler |
| **Company / Institution Name** | **Establishment Registration Number** | |
| Theranos, Inc. | 3010479366 | |
| **Division Name** *(if applicable)* | **Phone Number** *(including area code)* | |
| Palo Alto Facility | (650) 856-7304 | |
| **Street Address** | **FAX Number** *(including area code)* | |
| 1601 S. California Ave. | | |

| City | State / Province | ZIP Code | Country |
|---|---|---|---|
| Palo Alto | CA | 94304 | USA |

| Contact Name | Contact Title | Contact E-mail Address |
|---|---|---|
| Brad Arington | Senior Regulatory Counsel | barington@theranos.com |

| Facility Establishment Identifier (FEI) Number | | |
|---|---|---|
| ☐ Original  ☐ Add  ☐ Delete | ☐ Manufacturer ☐ Contract Manufacturer | ☐ Contract Sterilizer ☐ Repackager / Relabeler |
| **Company / Institution Name** | **Establishment Registration Number** | |
| | | |
| **Division Name** *(if applicable)* | **Phone Number** *(including area code)* | |
| | | |
| **Street Address** | **FAX Number** *(including area code)* | |
| | | |

| City | State / Province | ZIP Code | Country |
|---|---|---|---|
| | | | |

| Contact Name | Contact Title | Contact E-mail Address |
|---|---|---|
| | | |

**FORM FDA 3514 (1/13)**　　　　　Add Continuation Page　　Page 4 of 5 Pages

Page 6 of 69

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

| SECTION I | | UTILIZATION OF STANDARDS | | |
|---|---|---|---|---|

**Note:** Complete this section if your application or submission cites standards or includes a *"Declaration of Conformity to a Recognized Standard"* statement.

| # | Standards No. | Standards Organization | Standards Title | Version | Date |
|---|---|---|---|---|---|
| 1 | GP34-A | CLSI | Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection | First Edition | 12-2010 |
| 2 | EP09-A2 | CLSI | Method Comparison and Bias Estimation Using Patient Samples | Second Edition | 09-2002 |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |

**Please include any additional standards to be cited on a separate page.**

This section applies only to requirements of the Paperwork Reduction Act of 1995.
**\*DO NOT SEND YOUR COMPLETED FORM TO THE PRA STAFF ADDRESS BELOW.\***

The burden time for this collection of information is estimated to average 0.5 hour per response, including the time to review instructions, search existing data sources, gather and maintain the data needed and complete and review the collection of information. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden, to:

Department of Health and Human Services
Food and Drug Administration
Office of Chief Information Officer
Paperwork Reduction Act (PRA) Staff
1350 Piccard Drive, Room 400
Rockville, MD 20850

*An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.*

**FORM FDA 3514 (1/13)**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972733

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

**SCREENING CHECKLIST FOR PREMARKET NOTIFICATION 510(k) SUBMISSIONS**

The following table is a reproduction of the Premarket Notification 510(k) Checklist for Acceptance Decision. For the reviewer's convenience, the location within the submission is noted, or if the item is omitted, a justification for the omission is provided.

| Device: | Capillary Tubes and Nanotainer<sup>TM</sup> Tubes | K: Not yet assigned |
|---|---|---|
| Submitter: | Theranos, Inc. | |

| TITLE | YES PRESENT / OMISSION JUSTIFIED | NO / INADEQUATE OMITTED | SUBMISSION LOCATION |
|---|---|---|---|
| A. MDUFMA Cover Sheet | X | | Section 1 |
| B. CDRH Premarket Review Submission Cover Sheet | X | | Section 2 |
| C. 510(k) Cover Letter | X | | Cover Letter |
| D. Indications for Use Statement | X | | Section 3 |
| E. 510(k) Summary or 510(k) Statement | X | | Section 4 |
| F. Truthful and Accuracy Statement | X | | Section 5 |
| G. Class III Summary and Certification | X | | Section 6 |
| H. Financial Certification or Disclosure Statement | X | | Section 7 |
| I. Declarations of Conformity and Summary Reports (Abbreviated 510(k)s) | X | | Section 8 |
| J. Executive Summary | X | | Section 9 |
| K. Device Description | X | | Section 10 |
| L. Substantial Equivalence Discussion | X | | Section 11 |
| M. Proposed Labeling | X | | Section 12 |
| N. Sterilization/Shelf Life | X | | Section 13 |
| O. Biocompatibility | X | | Section 14 |
| P. Software | X | | Section 15 |
| Q. Electromagnetic Compatibility/ Electrical Safety | X | | Section 16 |
| R. Performance Testing – Analytical and Clinical | X | | Section 17 |

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

Page **8** of **69**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.                                    CAPILLARY TUBES AND NANOTAINER™ TUBES
                                                  510(k) PREMARKET NOTIFICATION

**3.0    INDICATIONS FOR USE STATEMENT**

Theranos Capillary Tubes and Nanotainer tubes are single use capillary tubes and vessels, respectively, used to obtain capillary blood specimens for analytical testing. Theranos Capillary Tubes and Nanotainer Tubes are used in settings where small capillary blood samples are collected by trained, certified, and appropriately state-licensed healthcare workers in appropriately licensed sample collection locations.

Type of Use (Select one or both, as applicable)

___X___    Prescription Use (Part 21 CFR 801 Subpart D)

_____    Over-The-Counter Use (21 CFR 801 Subpart C)

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972735

## 4.0    510(K) SUMMARY

SUBMITTED BY:                    Theranos, Inc.
                                1601 S. California Avenue
                                Palo Alto, CA 94304

            Contact:            Brad Arington
                                Sr. Regulatory Counsel
                                Phone:  650-856-7304
                                Fax:   650-838-9165
                                Email: barington@theranos.com

DATE PREPARED:                  October 27, 2014

PURPOSE OF SUBMISSION:          New Device

NAME OF DEVICE:

Trade Name:          Theranos™ Capillary Tubes and Nanotainer™ Tubes
Common Names:        Capillary blood collection capillaries and specimen storage and
                     transport containers
Classification Names Blood specimen collection device, Class II
Regulation Number:   21 CFR 862.1675
Product Code:        JKA

PREDICATE DEVICE:    Ram Scientific Safe-T-Fill Capillary Blood Collection
                     System (K983517)

DEVICE DESCRIPTION:

Theranos has designed and developed the Capillary Tubes and Nanotainer Tubes to
collect, preserve, and transport very small whole blood samples. Such samples may be
run on  a variety of commercially available analytical systems.

The Capillary Tubes are composed of two capillary tubes, fabricated in medical grade
PETG. The housing container around the Capillary Tubes is fabricated in Polypropylene
and contains two needles for interfacing with the Nanotainer Tubes.

The Nanotainer Tubes are fabricated in medical grade Polypropylene. A dedicated
Nanotainer Tube  is used to transport blood from each capillary. The two Nanotainer
Tubes are encapsulated together in a holder for ease of handling.

Each analytic test may be designed for compatibility with one or more anticoagulants.
Thus, there can be two different Capillary Tube configurations (for different anti-

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos                        THER-0972736
Fed. R. Crim. P. 6(e) material

coagulant combinations) to accommodate a wide variety of tests that may be ordered for a given subject.

The appropriate configuration is provided based on the test(s) that are ordered to be run on a given sample.  The two Capillary Tube configurations are as follows:

1.  Both capillaries arc coated with Lithium Heparin (Li-Hep) anti-coagulant which is intended to preserve the specimen during transport and/or storage.
2.  Both capillaries are coated with Di-Potassium EDTA ($K_2$-EDTA) anti-coagulant which is intended to preserve the specimen during transport and/or storage.

For both configurations there are no anti-coagulants in the Nanotainer Tubes.  The Nanotainer Tube walls are only coated with a siliconising fluid (SurfaSil).  A gel (polydimethylsiloxane, 45uL) is preloaded in the Li-Hep Nanotainer vessel.  Nanotainer Tubes for $K_2$EDTA samples do not have gel.  The Nanotainer Tubes with gel can be centrifuged before shipping (3590g, 10 min) for sample stabilization purposes, wherein the plasma in the Li-Hep Nanotainer will rise and the gel will form a stable barrier between the plasma and the packed cells.  The Nanotainer Tubes are maintained between 0-8° C until processed.

PROPOSED INTENDED USE:

The Theranos$^{TM}$ Capillary Tubes and Nanotainer$^{TM}$ Tubes are single use capillary tubes and vessels, respectively, used to obtain capillary blood specimens for analytical testing. Theranos Capillary Tubes and Nanotainer Tubes are used in settings where small capillary blood samples are collected by trained, certified, and appropriately state-licensed healthcare workers in appropriately licensed sample collection locations.

OPERATING PRINCIPLE:

The Theranos$^{TM}$ Capillary Tubes and Nanotainer$^{TM}$ Tubes system is intended to be used for the collection of skin puncture blood specimens.  In capillary collection, the blood is obtained by means of a standard, commercially available lancet, which is not part of this device.  An appropriately state-licensed sample collection technician performs the standard fingerstick puncture on a patient.

The Capillary Tubes are placed in contact with the blood drop, and the sample is drawn into each of the Capillary Tubes by capillary force.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Blood collection is continued until both capillaries are completely filled, as further highlighted by the indicator window at the end of the capillaries.

The patient's finger is cleaned and a bandage is applied.

The Nanotainer Tubes are pushed in the direction of the Blood Capillary Tubes, causing the needle to displace the Dynaflex plungers, which results in blood being drawn into the Nanotainer Tubes. The displacement of the plunger in the Nanotainer Tube will lead to 80uL of whole blood being drawn into each Nanotainer Tube.

The sample transfer is complete when the Nanotainer Tubes are pushed completely together, which results in the contents of each capillary being transferred into a dedicated, sealed Nanotainer Tube. The Nanotainer Tubes are pulled out of the assembly and placed into an appropriate shipping box for transportation.

COMPARISON TO PREDICATE DEVICE:

Similarities and differences between the candidate device and the predicate device:

| Characteristics | Theranos™ Capillary Tubes and Nanotainer™ Tubes | RAM Scientific SAFE-T-FILL® |
|---|---|---|
| Intended use | Single use capillary tubes and vessels used to obtain capillary blood specimens for analytical testing | Same |
| Combination capillary tube and vessel | Yes | Same, except that the Theranos Capillary Tubes and Nanotainer Tubes contain two paired capillary tubes and vessels and the RAM Scientific devices contain a single capillary tube and vessel |
| Anticoagulants | Lithium heparin and/or EDTA configurations | Lithium heparin or EDTA configurations |
| Gel for plasma separation | Lithium heparin | Lithium heparin |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972738

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| | configuration | configuration |
|---|---|---|
| All plastic components | Yes | Same |
| Used to collect, anticoagulate and store skin puncture blood specimens | Yes | Same |
| Analytical determinations | Hematology, immunology, chemistry, and molecular | Hematology and chemistry |
| Draw volume | 160uL | 125uL, 150uL, and 200uL |
| Preassembled | Yes | Same |
| Sterile | No | Same |

SUBSTANTIAL EQUIVALENCE DISUCSSION AND PERFORMANCE DATA:

Analytical studies, including precision, device stability and analyte stability, and method comparison studies were conducted to evaluate the performance of the Theranos Capillary Tubes and Nanotainer Tubes. The objective of the studies was to demonstrate substantial equivalence to the RAM Scientific Safe-T-Fill capillary blood collection devices when samples from these devices are used in various diagnostic assays, including clinical chemistry assays, immunoassays, hematology assays and molecular assays.

The Theranos Capillary Tubes and Nanotainer Tubes and the RAM Scientific Safe-T-Fill capillary blood collection devices are substantially equivalent in intended use, design and composition.

Analytical Performance:  Precision/Reproducibility

Precision/Reproducibility studies were performed using a minimum of 45 apparently healthy subjects. Each subject had capillary blood collected into six blood collection devices: 3 RAM Scientific tubes (predicate device) from three different lots and 3 Capillary Tubes and Nanotainer devices (candidate device) from three different lots. Samples were collected in three Theranos collection sites (Palo Alto, CA, Newark, CA, and Scottsdale, AZ) with a minimum of 15 subjects per analyte per site.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972739

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

Each collection device was tested on the appropriate instrument platform for the following assays:  clinical chemistry assays (calcium, creatinine, glucose, urea nitrogen, sodium, potassium, and chloride), immunoassay (ferritin) and hematology assays (hematocrit (HCT), hemoglobin (HGB), mean corpuscular hemoglobin (MCH), mean corpuscular hemoglobin concentration (MCHC), mean corpuscular volume (MCV), mean platelet volume (MPV), red blood cell concentration (RBC), red cell distribution width (RDW), and while blood cell concentration (WBC)).

ANOVA analysis was performed following CLSI guidelines GP34-A Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection. The variance components: between-lot, within-lot and total of standard deviation (SD) or coefficient of variation (%CV) along with 95% confidence intervals were reported.  Plasma volume was determined by measuring the height of the plasma column in the candidate device.

For chemistry, immunoassay, and hematology tests, the reproducibility of the predicate and candidate devices were characterized.   The reproducibility performance was comparable for the two devices, as the 95% CI's for variances were not statistically different and were overlapping.

<u>Analytical Performance:  Stability of Device Operation</u>

The real-time stability of the Capillary Tubes and Nanotainer Tubes was assessed by evaluating these parameters: sample volume, hemolysis, macro clots, and sample collection performance. The Capillary Tubes and Nanotainer Tubes were stored at two different temperatures, 4°C or 25°C, until use. The collection devices were tested at 0, 2, 4 and 8 weeks.

Real time stability studies were performed using a minimum of 18 apparently healthy subjects at each timepoint that were tested at Theranos collection sites.  Each subject provided four Capillary Tubes and Nanotainer Tubes, two of which being EDTA configured (stored at 4 °C or 25 °C) and the remaining two being lithium heparin configured (stored at 4 °C or 25 °C).  Samples were collected in two Theranos collection sites (Palo Alto, CA and Newark, CA).

Draw volume, plasma volume, and hematocrit for each side of the Nanotainer Tubes were measured by imaging the collected samples and measuring fill volumes based on the height of the sample.  Samples that exhibited greater than the hemoglobin acceptance criteria on one or both sides of the Nanotainer Tube by visual inspection were identified for hemolysis. Manual aspiration with a 22g needle was performed on both sides of the Nanotainer Tube to detect the presence of macro clots.  No macro clots were detected in the course of the study.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.                                CAPILLARY TUBES AND NANOTAINER™ TUBES
                                              510(k) PREMARKET NOTIFICATION

The performance of the Capillary Tube and Nanotainer Tube was evaluated on the successfulness of sample collection. In the event that a sample is not collected successfully in the Nanotainer Tube, the failure was recorded as either a collection, activation, or mechanical failure. A collection failure occurred if the collection device was unable to collect sufficient sample to fill the channels.  An activation failure occurred if the sample did not successfully transfer from the capillary to the Nanotainer Tube. A mechanical failure was identified if the full volume of the sample was not contained within the sealed Nanotainer Tube.

The acceptance criteria for each Capillary Tube and Nanotainer Tube collected in the real time stability study were pre-defined. The acceptance criteria for the draw volume was within ± 10% of specified volumes: 79.11 µL whole blood per K2-EDTA Nanotainer Tube and 77.00 µL whole blood per lithium heparin Nanotainer Tube.  Hemolysis acceptance criteria for each collection device configuration was established based on the lowest interference threshold for the collection of assays performed on that configuration. A one-sided test of equal proportions was performed confirming that there was no statistical significant difference between timepoints, over a 95% confidence interval.
 The predicate device stability data showed no reduction in performance over eight weeks at both 4°C and 25°C storage conditions.

<u>Analytical Performance:  Analyte Stability</u>

Analyte stability studies were performed at 0 hours and between 8 and 48 hours after blood collection, depending on analyte, in both the candidate and predicate devices. Testing was done at three different sites (Palo Alto, CA, Newark, Ca, and Scottsdale, AZ. Measurements were compared between the two time points for each device.

Pearson correlation coefficient (r2) was calculated to ensure sufficient sample range. Mean bias and it's 95% confidence interval was calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals.  Plasma volume was determined by measuring the height of the plasma column in the candidate device.  Performance criteria were met for the predicate device if the mean bias and 95% limits were within the TEa for each test.

The analyte stability data demonstrates that the predicate device meets all acceptance criteria for the chemistry, immunoassay, and hematology tests evaluated.  Namely, the mean bias and 95% confidence limits are within the TEa, meeting the performance requirements.

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972741

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Comparison Studies:  Method Comparison

To demonstrate comparable performance with the predicate device, more than 50 apparently healthy subjects were enrolled for chemistry, immunoassay, and hematology assays.  For nucleic acid testing, a total of 25 samples were analyzed for method comparison.  In addition to samples prospectively collected from enrolled subjects, a small number of contrived samples were also used to ensure  complete coverage of the analytical range.  The number of contrived samples was less than 10% of the total number of samples run.  Subjects were enrolled at three geographically independent Theranos sites. for chemistry, immunoassay, and hematology. A candidate and the predicate device were collected from each subject.  For the nucleic acid testing, additional samples were collected at a mobile collection site.

Pearson correlation coefficient ($r2$) was calculated to ensure sufficient sample range. Mean bias and its 95% confidence interval are calculated following CLSI guidelines EP09-A2 Method  Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals.  Equivalence to the predicate device is shown if the mean bias and 95% limits were within the Tea for each test.

The analytes tested in these studies included:  general chemistry assays (albumin, ALP, ALT, AST, calcium, total cholesterol, chloride, HDL, LDL, creatinine, glucose, potassium, sodium, total bilirubin, total protein, triglycerides, and urea nitrogen), hematology (WBC, RBC, HgB, HCT, PLT, MCV, RDW, MCH, MCHC, and MPV), immunoassays (ferritin, c-peptide and vitamin B12), and nucleic acid assay (HIV-1).  For chemistry, immunoassay, hematology, and nucleic acid tests, the mean bias and 95% CI intervals were within the total allowable error requirements, establishing substantial equivalence to the predicate device.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972742

THERANOS, INC.                                        CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
                                                     510(k) PREMARKET NOTIFICATION

5.0     **TRUTHFUL AND ACCURACY STATEMENT**

I certify that, in my capacity as (the position held in company) of Theranos, Inc., I
believe to the best of my knowledge, that all data and information submitted in the
premarket notification are truthful and accurate and that no material fact has been
omitted.


_____          _____
Daniel Young, Ph.D.                                      Date
Vice President of Theranos Systems
Theranos, Inc.


Premarket Notification 510(k) Number: _____

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

### 6.0    CLASS III SUMMARY AND CERTIFICATION

Because the Capillary Tubes and Nanotainer<sup>TM</sup> Tubes are not Class III devices and are not substantially equivalent to any Class III device, the Literature Search and Certification requirement of the Safe Medical Devices Amendments (SMDA) of 1990 is not applicable.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972744

### 7.0    FINANCIAL CERTIFICATION OR DISCLOSURE STATEMENT

No third-party clinical investigators were engaged by Theranos to conduct the studies for the data submitted with this 510(k).

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

## 8.0    DECLARATIONS OF CONFORMITY AND SUMMARY REPORTS

Not applicable.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.                              CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
                                            510(k) PREMARKET NOTIFICATION

### 9.0    EXECUTIVE SUMMARY

#### Device Overview

Theranos has designed and developed the Capillary Tubes and Nanotainer Tubes to collect, preserve, and transport very small whole blood samples. Such samples may be run on a variety of commercially available analytical systems.

The Capillary Tubes are composed of two capillary tubes, fabricated in medical grade PETG. The housing container around the Capillary Tubes is fabricated in Polypropylene and contains two needles for interfacing with the Nanotainer Tubes.

The NanotainerTubes are fabricated in medical grade Polypropylene. A dedicated Nanotainer Tube is used to transport blood from each capillary. The two Nanotainer Tubes are encapsulated together in a holder for ease of handling.

Each analytic tests may be designed for compatibility with one or more anticoagulants. Thus, there can be two different Capillary Tube configurations (for different anti-coagulant combinations) to accommodate a wide variety of tests that may be ordered for a given subject.

The appropriate configuration is provided based on the test(s) that are ordered to be run on a given sample. The two Capillary Tube configurations are as follows:

1.      Both capillaries are coated with Lithium Heparin (Li-Hep) anti-coagulant which is intended to preserve the specimen during transport and/or storage.
2.      Both capillaries are coated with Di-Potassium EDTA ($K_2$-EDTA) anti-coagulant which is intended to preserve the specimen during transport and/or storage.

For both configurations there are no anti-coagulants in the Nanotainer Tubes. The Nanotainer Tube walls are only coated with a siliconising fluid (SurfaSil). A gel (polydimethylsiloxane, 45uL) is preloaded in the Li-Hep Nanotainer vessel. Nanotainer Tubes for $K_2$EDTA samples do not have gel. The Nanotainer Tubes with gel can be centrifuged before shipping (3590g, 10 min) for sample stabilization purposes, wherein the plasma in the Li-Hep Nanotainer Tube will rise and the gel will form a stable barrier between the plasma and the packed cells. The Nanotainer Tubes are maintained between 0-8° C until processed.

#### Intended Use

The TheranosTM Capillary Tubes and NanotainerTM Tubes are single use capillary tubes and vessels, respectively, used to obtain capillary blood specimens for analytical testing. Theranos Capillary Tubes and Nanotainer Tubes are used in settings where small capillary blood samples are collected by trained, certified, and appropriately state-licensed healthcare workers in appropriately licensed sample collection locations.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972747

## Substantial Equivalence

The Theranos Capillary Tubes and Nanotainer Tubes were compared to the RAM Scientific Safe-T-Fill capillary blood collection devices. The following table provides the similarities and differences between the candidate device and the predicate device:

| Characteristics | Theranos™ Capillary Tubes and Nanotainer™ Tubes | RAM Scientific SAFE-T-FILL® |
|---|---|---|
| Intended use | Single use capillary tubes and vessels used to obtain capillary blood specimens for analytical testing | Same |
| Combination capillary tube and vessel | Yes | Same, except that the Theranos Capillary Tubes and Nanotainer Tubes contain two paired capillary tubes and vessels and the RAM Scientific devices contain a single capillary tube and vessel |
| Anticoagulants | Lithium heparin and/or EDTA configurations | Lithium heparin or EDTA configurations |
| Gel for plasma separation | Lithium heparin configuration | Lithium heparin configuration |
| All plastic components | Yes | Same |
| Used to collect, anticoagulate and store skin puncture blood specimens | Yes | Same |
| Analytical determinations | Hematology, immunology, chemistry, and molecular | Hematology and chemistry |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972748

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

| Draw volume | 160uL | 125uL, 150uL, and 200uL |
|---|---|---|
| Preassembled | Yes | Same |
| Sterile | No | Same |

Analytical studies, including precision, device stability and analyte stability, and method comparison studies were conducted to evaluate the performance of the Theranos Capillary Tubes and Nanotainer Tubes. The objective of the studies was to demonstrate substantial equivalence to the RAM Scientific Safe-T-Fill capillary blood collection devices when samples from these devices are used in various diagnostic assays, including clinical chemistry assays, immunoassays, hematology assays and molecular assays.

In designing the studies to demonstrate substantial equivalence and support this 510(k) premarket submission, Theranos looked to published FDA decision summaries and studies published by the manufacturers. These included other devices with general diagnostic intended uses for collecting capillary samples, e.g., Greiner MiniCollect EDTA (K063357), Greiner MiniCollect heparin (K991843), BD Microtainer LiHeparin Tubes (K991702), and the predicate device for this 510(k), RAM Scientific's SAFE-T-FILL collection tubes. Notably, BD's published 510(k) Summary indicates that its performance studies were conducted on 30 normal subjects with analyte values in the relatively normal ranges and with a platform (J&J's Vitros) whose assays are not specifically cleared for capillary samples. None of these indicated that they had conducted stability or precision studies to support their 510(k) premarket submissions. In addition, Theranos obtained the 510(k) submission for the Sarstedt S-Monovette Edta K2-Gel collection device through a request under the Freedom of Information Act, where primarily spiked samples were used for method comparison for molecular testing. And Greiner's published studies for its MiniCollect capillary device have used venous samples to demonstrate comparative performance to its 510(k) predicate.

The Theranos Capillary Tubes and Nanotainer Tubes and the RAM Scientific Safe-T-Fill capillary blood collection devices are substantially equivalent in intended use, design and composition.

**Analytical Performance:  Precision/Reproducibility**

Precision/Reproducibility studies were performed using a minimum of 45 apparently healthy subjects. Each subject had capillary blood collected into six blood collection devices: 3 RAM Scientific tubes (predicate device) from three different lots and 3

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972749

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

Capillary Tubes and Nanotainer devices (candidate device) from three different lots. Samples were collected in three Theranos collection sites (Palo Alto, CA, Newark, CA, and Scottsdale, AZ) with a minimum of 15 subjects per analyte per site.

Each collection device was tested on the appropriate instrument platform for the following assays: clinical chemistry assays (calcium, creatinine, glucose, urea nitrogen, sodium, potassium, and chloride), immunoassay (ferritin) and hematology assays (hematocrit (HCT), hemoglobin (HGB), mean corpuscular hemoglobin (MCH), mean corpuscular hemoglobin concentration (MCHC), mean corpuscular volume (MCV), mean platelet volume (MPV), red blood cell concentration (RBC), red cell distribution width (RDW), and while blood cell concentration (WBC)).

ANOVA analysis was performed following CLSI guidelines GP34-A Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection. The variance components: between-lot, within-lot and total of standard deviation (SD) or coefficient of variation (%CV) along with 95% confidence intervals were reported. Plasma volume was determined by measuring the height of the plasma column in the candidate device.
For chemistry, immunoassay, and hematology tests, the reproducibility of the predicate and candidate devices were characterized. The reproducibility performance was comparable for the two devices, as the 95% CI's for variances were not statistically different and were overlapping.

**Analytical Performance: Stability of Device Operation**

The real-time stability of the Capillary Tubes and Nanotainer Tubes was assessed by evaluating these parameters: sample volume, hemolysis, macro clots, and sample collection performance. The Capillary Tubes and Nanotainer Tubes were stored at two different temperatures, 4°C or 25°C, until use. The collection devices were tested at 0, 2, 4 and 8 weeks.

Real time stability studies were performed using a minimum of 18 apparently healthy subjects at each timepoint that were tested at Theranos collection sites. Each subject provided four Capillary Tubes and Nanotainer Tubes, two of which being EDTA configured (stored at 4 °C or 25 °C) and the remaining two being lithium heparin configured (stored at 4 °C or 25 °C). Samples were collected in two Theranos collection sites (Palo Alto, CA and Newark, CA).

Draw volume, plasma volume, and hematocrit for each side of the Nanotainer Tubes were measured by imaging the collected samples and measuring fill volumes based on the height of the sample. Samples that exhibited greater than the hemoglobin acceptance criteria on one or both sides of the Nanotainer Tube by visual inspection were identified

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

for hemolysis. Manual aspiration with a 22g needle was performed on both sides of the Nanotainer Tube to detect the presence of macro clots.  No macro clots were detected in the course of the study.

The performance of the Capillary Tube and Nanotainer Tube was evaluated on the successfulness of sample collection. In the event that a sample is not collected successfully in the Nanotainer Tube, the failure was recorded as either a collection, activation, or mechanical failure. A collection failure occurred if the collection device was unable to collect sufficient sample to fill the channels.  An activation failure occurred if the sample did not successfully transfer from the capillary to the Nanotainer Tube. A mechanical failure was identified if the full volume of the sample was not contained within the sealed Nanotainer Tube.

The acceptance criteria for each Capillary Tube and Nanotainer Tube collected in the real time stability study were pre-defined. The acceptance criteria for the draw volume was within ± 10% of specified volumes: 79.11 µL whole blood per K2-EDTA Nanotainer Tube and 77.00 µL whole blood per lithium heparin Nanotainer Tube.  Hemolysis acceptance criteria for each collection device configuration was established based on the lowest interference threshold for the collection of assays performed on that configuration. A one-sided test of equal proportions was performed confirming that there was no statistical significant difference between timepoints, over a 95% confidence interval.

The predicate device stability data showed no reduction in performance over eight weeks at both 4°C and 25°C storage conditions.

**Analytical Performance:  Analyte Stability**

Analyte stability studies were performed at 0 hours and between 8 and 48 hours after blood collection, depending on analyte, in both the candidate and predicate devices. Testing was done at three different sites (Palo Alto, CA, Newark, Ca, and Scottsdale, AZ. Measurements were compared between the two time points for each device.

Pearson correlation coefficient ($r2$) was calculated to ensure sufficient sample range. Mean bias and it's 95% confidence interval was calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals.  Plasma volume was determined by measuring the height of the plasma column in the candidate device.  Performance criteria were met for the predicate device if the mean bias and 95% limits were within the TEa for each test.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972751

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

The analyte stability data demonstrates that the predicate device meets all acceptance criteria for the chemistry, immunoassay, and hematology tests evaluated. Namely, the mean bias and 95% confidence limits are within the TEa, meeting the performance requirements.

**Comparison Studies:  Method Comparison**

To demonstrate comparable performance with the predicate device, more than 50 apparently healthy subjects were enrolled for chemistry, immunoassay, and hematology assays.  For nucleic acid testing, a total of 25 samples were analyzed for method comparison.  In addition to samples prospectively collected from enrolled subjects, a small number of contrived samples were also used to ensure  complete coverage of the analytical range.  The number of contrived samples was less than 10% of the total number of samples run.  Subjects were enrolled at three geographically independent Theranos sites. for chemistry, immunoassay, and hematology. A candidate and the predicate device were collected from each subject.  For the nucleic acid testing, additional samples were collected at a mobile collection site.

Pearson correlation coefficient (r2) was calculated to ensure sufficient sample range. Mean bias and its 95% confidence interval are calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals.  Equivalence to the predicate device is shown if the mean bias and 95% limits were within the Tea for each test.

The analytes tested in these studies included:  general chemistry assays (albumin, ALP, ALT, AST, calcium, total cholesterol, chloride, HDL, LDL, creatinine, glucose, potassium, sodium, total bilirubin, total protein, triglycerides, and urea nitrogen), hematology (WBC, RBC, HgB, HCT, PLT, MCV, RDW, MCH, MCHC, and MPV), immunoassays (ferritin, c-peptide and vitamin B12), and nucleic acid assay (HIV-1).  For chemistry, immunoassay, hematology, and nucleic acid tests, the mean bias and 95% CI intervals were within the total allowable error requirements, establishing substantial equivalence to the predicate device.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972752

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

## 10.0    DEVICE DESCRIPTION

### Specimen Collection, Storage and Transport

The Theranos Capillary Tubes and Nanotainer Tubes are that are capable of collecting, preserving, and transporting whole blood capillary samples.  Because commercially available blood collection tubes require human processing (e.g. manual mixing, human participation in filling) that can increase variability in test results, and additionally are sized for larger samples such that the collection into the larger capillary tubes can increase variability in test results (too much anticoagulant, too much air exposure, etc.), Theranos has designed and developed the Capillary Tubes and Nanotainer Tubes to collect, preserve, and transport very small samples. Such samples may be run on  a variety of commercially available analytical systems.

The Capillary Tubes are composed of two capillary tubes, fabricated in medical grade PETG. The housing container around the blood capillary tubes is fabricated in Polypropylene and contains two needles for interfacing with the Nanotainer Tubes.

The Nanotainer Tubes are fabricated in medical grade Polypropylene. A dedicated Nanotainer is used to transport blood from each capillary. The two Nanotainer Tubes are encapsulated together in a holder for ease of handling.

Each analytic test may be designed for compatibility with one or more anticoagulants. Thus, there can be two different Capillary Tube configurations (for different anti-coagulant combinations) to accommodate a wide variety of tests that may be ordered for a given subject.  The appropriate configuration is provided based on the test(s) that are ordered to be run on a given sample.  The two Capillary Tube configurations are as follows:

1.    Both capillaries are coated with Lithium Heparin (Li-Hep) anti-coagulant which is intended to preserve the specimen during transport and/or storage.

2.    Both capillaries are coated with Di-Potassium EDTA (K2-EDTA) anti-coagulant which is intended to preserve the specimen during transport and/or storage.

For both  configurations there are no anti-coagulants in the Nanotainers. The Nanotainer walls are only coated with a siliconising fluid (SurfaSil).  A gel (polydimethylsiloxane, 45uL) is preloaded in the Li-Hep Nanotainer vessel.  Nanotainers for K2EDTA samples do not have gel.  The Nanotainers with gel can be centrifuged before shipping (3590g, 10 min) for sample stabilization purposes, wherein the plasma in the Li-Hep Nanotainer will rise and the gel will form a stable barrier between the plasma and the packed cells.  The Nanotainers are maintained between 0-8° C until processed.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

### Capillary Tubes



Figure 10-1.  Theranos Blood Capillary Tubes with housing.

Theranos Blood Capillary Tubes (Figure 10-1) consist of two separate blood capillaries, each one coated with Li-Hep or K2-EDTA as in the configurations described above.  As referenced above, the two capillaries are fabricated in PETG. The blood sample is drawn into the capillaries by capillary pressure.  The capillaries are surrounded by an external housing, made out of polypropylene.  The housing serves as the interface between the Capillary Tubes and the Nanotainer Tubes (described in the "Operation" section below).

### Nanotainer Tubes



Figure 10-2.  Theranos Nanotainer Tubes.

Theranos Nanotainer Tubes (Figure 10-2) are general purpose sample transport containers which are designed to each collect 80uL of blood.  The Nanotainer Tubes are

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972754

capped with an air-tight plug fabricated in black Versaflex thermoplastic elastomer. Plugs (Dynaflex thermoplastic elastomer) internal to the Nanotainer Tubes act as plungers during sample collection and as air-tight barriers in the bottom of the Nanotainer Tubes.

If the Nanotainer Tubes are to be transported back to the CLIA laboratory, the Nanotainer Tubes are placed into Theranos shipping boxes. The shipping boxes are controlled insulated and refrigerated boxes designed for maintaining the temperature (0° to 8° C) for up to 36 hours.

### Operation

Standard operation of the Theranos Capillary Tubes and Nanotainer Tubes is as described below.

1. In capillary collection, the blood is obtained by means of a standard, commercially available lancet, which is not part of this device.

2. The Capillary Tubes are placed in contact with the blood drop, and the sample is drawn into each of the Capillary Tubes by capillary force.

3. Blood collection is continued until both capillaries are completely filled, as further highlighted by the indicator window at the end of the capillaries.

4. The patient's finger is cleaned and a bandage is applied.

5. The Nanotainer Tubes are pushed in the direction of the Blood Capillary Tubes as shown in Figure 10-3 below, causing the needle to displace the Dynaflex plungers, which results in blood being drawn into the Nanotainer Tubes. The displacement of the plunger in the Nanotainer Tube will lead to 80uL of whole blood being drawn into each Nanotainer Tube.

6. The sample transfer is complete when the Nanotainer Tubes are pushed completely together (Figure 10-3, Middle), resulting in the contents of each capillary being transferred into a dedicated, sealed Nanotainer Tube, which is then used to transport the specimen.

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION



Figure 10-3.  Theranos Capillary Tubes and Nanotainer Tubes operation

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972756

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

### 11.0   SUBSTANTIAL EQUIVALENCE DISCUSSION

Predicate device name(s):  RAM Scientific SAFE-T-FILL® (K983517); November 12, 1998[1]

Predicate 510(k) number(s): K983517

Comparison with predicate:
Similarities and differences between the candidate device and the predicate device:

| Characteristics | Theranos Capillary Tubes and Nanotainer Tubes | RAM Scientific SAFE-T-FILL® |
|---|---|---|
| Intended use | Single use capillary tubes and vessels used to obtain capillary blood specimens for analytical testing | Same |
| Combination capillary tube and vessel | Yes | Same, except that the Theranos Capillary Tubes and Nanotainer Tubes contain two paired capillary tubes and vessels and the RAM Scientific devices contain a single capillary tube and vessel |
| Anticoagulants | Lithium heparin and/or EDTA configurations | Lithium heparin or EDTA configurations |
| Gel for plasma separation | Lithium heparin configuration | Lithium heparin configuration |

[1] Note that RAM Scientific apparently has not listed this device under the K983517 clearance, but has listed two Class I devices with these functions:  the Safe-T-Fill capillary blood collection tube under 21 CFR 864.6150 with product code GIO and the Safe-T-Fill specimen mailer and storage container under 21 CFR 864.3250 with product code KDT.  There are no other collection or container devices listed under RAM Scientific's establishment registration.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972757

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| All plastic components | Yes | Same |
|---|---|---|
| Used to collect, anticoagulate and store skin puncture blood specimens | Yes | Same |
| Analytical determinations | Hematology, immunology, chemistry, and molecular | Hematology and chemistry |
| Draw volume | 160uL | 125uL, 150uL, and 200uL |
| Preassembled | Yes | Same |
| Sterile | No | Same |

Analytical studies, including precision, device stability and analyte stability, and method comparison studies were conducted to evaluate the performance of the Theranos Capillary Tubes and Nanotainer Tubes. The objective of the studies was to demonstrate substantial equivalence to the RAM Scientific Safe-T-Fill capillary blood collection devices when samples from these devices are used in various diagnostic assays, including clinical chemistry assays, immunoassays, hematology assays and molecular assays.

The Theranos Capillary Tubes and Nanotainer Tubes and the RAM Scientific Safe-T-Fill capillary blood collection devices are substantially equivalent in intended use, design and composition.

Analytical Performance: Precision/Reproducibility

Precision/Reproducibility studies were performed using a minimum of 45 apparently healthy subjects. Each subject had capillary blood collected into six blood collection devices: 3 RAM Scientific tubes (predicate device) from three different lots and 3 Capillary Tubes and Nanotainer devices (candidate device) from three different lots. Samples were collected in three Theranos collection sites (Palo Alto, CA, Newark, CA, and Scottsdale, AZ) with a minimum of 15 subjects per analyte per site.

Each collection device was tested on the appropriate instrument platform for the following assays: clinical chemistry assays (calcium, creatinine, glucose, urea nitrogen, sodium, potassium, and chloride), immunoassay (ferritin) and hematology assays (hematocrit (HCT), hemoglobin (HGB), mean corpuscular hemoglobin (MCH), mean corpuscular hemoglobin concentration (MCHC), mean corpuscular volume (MCV), mean

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972758

THERANOS, INC.

**CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES**
**510(k) PREMARKET NOTIFICATION**

platelet volume (MPV), red blood cell concentration (RBC), red cell distribution width (RDW), and while blood cell concentration (WBC)).

ANOVA analysis was performed following CLSI guidelines GP34-A Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection. The variance components: between-lot, within-lot and total of standard deviation (SD) or coefficient of variation (%CV) along with 95% confidence intervals were reported. Plasma volume was determined by measuring the height of the plasma column in the candidate device.

For chemistry, immunoassay, and hematology tests, the reproducibility of the predicate and candidate devices were characterized. The reproducibility performance was comparable for the two devices, as the 95% CI's for variances were not statistically different and were overlapping.

<u>Analytical Performance:  Stability of Device Operation</u>

The real-time stability of the Capillary Tubes and Nanotainer Tubes was assessed by evaluating these parameters: sample volume, hemolysis, macro clots, and sample collection performance. The Capillary Tubes and Nanotainer Tubes were stored at two different temperatures, 4°C or 25°C, until use. The collection devices were tested at 0, 2, 4 and 8 weeks.

Real time stability studies were performed using a minimum of 18 apparently healthy subjects at each timepoint that were tested at Theranos collection sites.  Each subject provided four Capillary Tubes and Nanotainer Tubes, two of which being EDTA configured (stored at 4 °C or 25 °C) and the remaining two being lithium heparin configured (stored at 4 °C or 25 °C).  Samples were collected in two Theranos collection sites (Palo Alto, CA and Newark, CA).

Draw volume, plasma volume, and hematocrit for each side of the Nanotainer Tubes were measured by imaging the collected samples and measuring fill volumes based on the height of the sample.  Samples that exhibited greater than the hemoglobin acceptance criteria on one or both sides of the Nanotainer Tube by visual inspection were identified for hemolysis. Manual aspiration with a 22g needle was performed on both sides of the Nanotainer Tube to detect the presence of macro clots.  No macro clots were detected in the course of the study.

The performance of the Capillary Tube and Nanotainer Tube was evaluated on the successfulness of sample collection. In the event that a sample is not collected successfully in the Nanotainer Tube, the failure was recorded as either a collection, activation, or mechanical failure. A collection failure occurred if the collection device

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972759

was unable to collect sufficient sample to fill the channels. An activation failure occurred if the sample did not successfully transfer from the capillary to the Nanotainer Tube. A mechanical failure was identified if the full volume of the sample was not contained within the sealed Nanotainer Tube.

The acceptance criteria for each Capillary Tube and Nanotainer Tube collected in the real time stability study were pre-defined. The acceptance criteria for the draw volume was within ± 10% of specified volumes: 79.11 µL whole blood per K2-EDTA Nanotainer Tube and 77.00 µL whole blood per lithium heparin Nanotainer Tube. Hemolysis acceptance criteria for each collection device configuration was established based on the lowest interference threshold for the collection of assays performed on that configuration. A one-sided test of equal proportions was performed confirming that there was no statistical significant difference between timepoints, over a 95% confidence interval. The predicate device stability data showed no reduction in performance over eight weeks at both 4°C and 25°C storage conditions.

<u>Analytical Performance: Analyte Stability</u>

Analyte stability studies were performed at 0 hours and between 8 and 48 hours after blood collection, depending on analyte, in both the candidate and predicate devices. Testing was done at three different sites (Palo Alto, CA, Newark, Ca, and Scottsdale, AZ. Measurements were compared between the two time points for each device.

Pearson correlation coefficient ($r2$) was calculated to ensure sufficient sample range. Mean bias and it's 95% confidence interval was calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals. Plasma volume was determined by measuring the height of the plasma column in the candidate device. Performance criteria were met for the predicate device if the mean bias and 95% limits were within the TEa for each test.

The analyte stability data demonstrates that the predicate device meets all acceptance criteria for the chemistry, immunoassay, and hematology tests evaluated. Namely, the mean bias and 95% confidence limits are within the TEa, meeting the performance requirements.

<u>Comparison Studies: Method Comparison</u>

To demonstrate comparable performance with the predicate device, more than 50 apparently healthy subjects were enrolled for chemistry, immunoassay, and hematology assays. For nucleic acid testing, a total of 25 samples were analyzed for method

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972760

comparison. In addition to samples prospectively collected from enrolled subjects, a small number of contrived samples were also used to ensure complete coverage of the analytical range. The number of contrived samples was less than 10% of the total number of samples run. Subjects were enrolled at three geographically independent Theranos sites. for chemistry, immunoassay, and hematology. A candidate and the predicate device were collected from each subject. For the nucleic acid testing, additional samples were collected at a mobile collection site.

Pearson correlation coefficient (r2) was calculated to ensure sufficient sample range. Mean bias and its 95% confidence interval are calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals. Equivalence to the predicate device is shown if the mean bias and 95% limits were within the Tea for each test.

The analytes tested in these studies included: general chemistry assays (albumin, ALP, ALT, AST, calcium, total cholesterol, chloride, HDL, LDL, creatinine, glucose, potassium, sodium, total bilirubin, total protein, triglycerides, and urea nitrogen), hematology (WBC, RBC, HgB, HCT, PLT, MCV, RDW, MCH, MCHC, and MPV), immunoassays (ferritin, c-peptide and vitamin B12), and nucleic acid assay (HIV-1). For chemistry, immunoassay, hematology, and nucleic acid tests, the mean bias and 95% CI intervals were within the total allowable error requirements, establishing substantial equivalence to the predicate device.

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972761

## 12.0      PROPOSED LABELING

The Theranos Capillary Tubes and Nanotainer Tubes in the dual K2-EDTA and heparin configurations are to be marketed as collecting, preserving, and transporting whole blood capillary samples.

The Theranos Capillary Tubes and Nanotainer Tubes will have the following proposed labeling pieces, which are provided in Appendices 12-A through 12-E as listed in Table 12-1 below.

### Table 12-1: Labeling

| Appendix Number | Document Number | Document Title | Commercially Released or Proposed Draft |
|---|---|---|---|
| 12-A | 001-001-A | Outer Box Label | Proposed Draft |
| 12-B | 001-002-A | Inner Package Label | Proposed Draft |
| 12-C | 001-003-A | Device Label | Proposed Draft |
| 12-D | 001-004-A | Instructions for Use | Proposed Draft |
| 12-E | 001-005-A | Package Insert | Proposed Draft |

The labeling for the Ram Scientific Safe-T-Fill collection devices are provided in the Appendices as listed in Table 12-2 below.

### Table 12-2: Ram Scientific Labeling

| Appendix Number | Document Number | Document Title | Commercially Released or Proposed Draft |
|---|---|---|---|
| 12-F | NA | Instructions for the Safe-T-Fill Capillary Blood Collection Tube | NA |
| 12-G | NA | Data Sheet for the Safe-T-Fill Capillary Blood Tubes | NA |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972762

### 13.0    STERILIZATION AND SHELF-LIFE

The Theranos Capillary Tubes and Nanotainer Tubes are non-sterile.

The shelf-life of the Theranos Capillary Tubes and  Nanotainer Tubes has been studied as described in the Stability Studies in Section 18.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972763

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

## 14.0    BIOCOMPATIBILITY

The portion of the Capillary Tubes and Nanotainer Tubes with the potential for patient contact is made of Polyethylene Terephthlate Glycol-Modified (PETG), which is well-established as biocompatible and non-toxic.  It is widely used in a variety of medical devices, including the currently marketed Globe Scientific Microhematocrit Capillary Tubes, used for the collection of blood by capillary action, a similar use as the Theranos Capillary Tubes with the same potential for patient contact.  In addition, the supplier of the PETG used in the Capillary Tubes and Nanotainer Tubes, Eastman Triton, represents that it has been tested for FDA/ISO 10993 and USP Class VI Biological Evaluation compliance even for testing after gamma radiation and ETO sterilization.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972764

### 15.0    SOFTWARE

The Theranos Capillary Tubes and Nanotainer Tubes do not have any software components.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972765

### 16.0  ELECTROMAGNETIC COMPATIBILITY, ELECTRICAL SAFETY, LASER SAFETY

The Theranos Capillary Tubes and Nanotainer Tubes do not contain any electrical components.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972766

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER$^{TM}$ TUBES
510(k) PREMARKET NOTIFICATION

## 17.0    PERFORMANCE TESTING – ANALYTICAL

Site Selection

Three sites were chosen for the collection for samples that represent typical Theranos Patient Service Centers. They were staffed with Theranos staff, including phlebotomists and technicians (aka, "operators"). Prior to initiation of the clinical study, operators at each site were trained by Theranos staff to the Theranos sample collection standard operating procedures (See Appendices 17-A through 17-D). Each operator was required to demonstrate proficiency by successfully completing 10 fingersticks as an indication of their understanding of the standard operating procedures.

a.   Analytical Performance:
   i.   *Precision/Reproducibility*
       Precision/Reproducibility studies were performed using a minimum of 45 apparently healthy subjects. Each subject had capillary blood collected into six blood collection devices: 3 RAM Scientific tubes (predicate device) from three different lots and 3 Capillary Tubes and Nanotainer devices (candidate device) from three different lots. Samples were collected in three Theranos collection sites (Palo Alto, CA, Newark, CA, and Scottsdale, AZ) with a minimum of 15 subjects per analyte per site.

       Each collection device was tested on the appropriate instrument platform for the analytes listed in Tables 17-1 and 17-2. Due to sample volume limitations of the predicate methods a subset of chemistry and immunoassay analytes were chosen for analysis. Samples were excluded from analysis if: 1) plasma samples exhibited greater than 100 mg/dL hemoglobin by visual inspection; or 2) incomplete gel barrier/incomplete separation of plasma in gel containing samples; or 3) devices not filled to the approximate stated draw volume (i.e. short draw) (See Appendices 17-E through 17-H).

       ANOVA analysis was performed following CLSI guidelines GP34-A Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection. The variance components: between-lot, within-lot and total of standard deviation (SD) or coefficient of variation (%CV) along with 95% confidence intervals are reported. Plasma volume was determined by measuring the height of the plasma column in the candidate device. A summary of the observed collection volumes as it compares to the volume criteria (see Section 17.b.iii, Table 17-8) can be found in Table 17-3. A summary of the results are presented in Tables 17-4 through 17-7 below. Raw data, graphical analysis, and sample tracking information can be located in Appendices 17-I through 17-K.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Table 17-1: Analytes and instruments used to test each predicate device

| Collection Device Type | Instrument | Analyte(s) |
|---|---|---|
| RAM Scientific tube (200 uL, lithium heparin) | Siemens ADVIA 1800 | calcium, creatinine, glucose, urea nitrogen, sodium, potassium, and chloride |
| RAM Scientific tube (200 uL, EDTA) | Drew Scientific | hematocrit (HCT), hemoglobin (HGB), mean corpuscular hemoglobin (MCH), mean corpuscular hemoglobin concentration (MCHC), mean corpuscular volume (MCV), mean platelet volume (MPV), red blood cell concentration (RBC), red cell distribution width (RDW), while blood cell concentration (WBC) |
| RAM Scientific tube (200 uL, EDTA) | Siemens ADVIA Centaur XP | Ferritin |

Table 17-2: Analytes and instruments used to test each candidate device

| Tube Type | Instrument | Analyte/Unit |
|---|---|---|
| Capillary Tube and Nanotainer Tube (lithium heparin) | Siemens ADVIA 1800 | calcium, creatinine, glucose, urea nitrogen, sodium, potassium, chloride |
| Capillary Tube and Nanotainer Tube (EDTA) | Drew Scientific | hematocrit (HCT), hemoglobin (HGB), mean corpuscular hemoglobin (MCH), mean corpuscular hemoglobin concentration (MCHC), mean corpuscular volume (MCV), mean platelet volume (MPV), red blood cell concentration (RBC), red cell distribution width (RDW), while blood cell concentration (WBC) |
| Capillary Tube and Nanotainer Tube (EDTA) | Siemens ADVIA Centaur XP | Ferritin |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972768

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Table 17-3: Whole blood volume summary for all candidate devices used in the Reproducibility study

| Configuration | Study Type | Analyte Subset | No. Passing[a] | N |
|---|---|---|---|---|
| LiHep | Reproducibility | Chemistry | 205 | 220 |
| EDTA | Reproducibility | Hematology/Immunoassay | 358 | 387 |

[a] Acceptance criteria can be found in Section Table 17-10

Table 17-4: Reproducibility summary (SD and %CV) for the RAM Scientific collection device

| Analyte (Units) | Tube Type | Measurements | Subjects | Mean | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| Calcium (mg/dL) | Predicate | 192 | 68 | 9.7 | Between Lot | 0.39 | 4.0 |
| | | | | | Within Lot | 0.13 | 1.4 |
| | | | | | Total | 0.41 | 4.3 |
| Chloride (mmol/L) | Predicate | 204 | 68 | 106.3 | Between Lot | 0.57 | 0.5 |
| | | | | | Within Lot | 0.26 | 0.2 |
| | | | | | Total | 0.63 | 0.6 |
| Creatinine (mg/dL) | Predicate | 192 | 68 | 0.6 | Between Lot | 0.01 | 2.3 |
| | | | | | Within Lot | 0.01 | 1.1 |
| | | | | | Total | 0.02 | 2.6 |
| Glucose (mg/dL) | Predicate | 192 | 68 | 118.1 | Between Lot | 3.94 | 3.4 |
| | | | | | Within Lot | 1.94 | 1.6 |
| | | | | | Total | 4.42 | 3.8 |
| Potassium (mmol/L) | Predicate | 204 | 68 | 4.5 | Between Lot | 0.32 | 7.1 |
| | | | | | Within Lot | 0.15 | 3.2 |
| | | | | | Total | 0.36 | 7.9 |
| Sodium (mmol/L) | Predicate | 204 | 68 | 138.0 | Between Lot | 1.16 | 0.8 |
| | | | | | Within Lot | 0.42 | 0.3 |
| | | | | | Total | 1.24 | 0.9 |
| Urea Nitrogen (mg/dL) | Predicate | 192 | 68 | 12.4 | Between Lot | 0.44 | 3.6 |
| | | | | | Within Lot | 0.36 | 2.9 |
| | | | | | Total | 0.58 | 4.8 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972769

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Table 17-5: Reproducibility summary (SD and %CV) for the Capillary Tubes and Nanotainer Tubes

| Analyte (Units) | Tube Type | Measurements | Subjects | Mean | Variance component | SD | %CV |
|---|---|---|---|---|---|---|---|
| Calcium (mg/dL) | Candidate | 174 | 58 | 9.4 | Between Lot | 0.18 | 2.0 |
| | | | | | Within Lot | 0.12 | 1.2 |
| | | | | | Total | 0.22 | 2.3 |
| Chloride (mmol/L) | Candidate | 195 | 65 | 105.6 | Between Lot | 0.46 | 0.4 |
| | | | | | Within Lot | 0.27 | 0.3 |
| | | | | | Total | 0.54 | 0.5 |
| Creatinine (mg/dL) | Candidate | 174 | 58 | 0.7 | Between Lot | 0.01 | 1.9 |
| | | | | | Within Lot | 0.01 | 1.2 |
| | | | | | Total | 0.02 | 2.3 |
| Glucose (mg/dL) | Candidate | 174 | 58 | 97.0 | Between Lot | 2.62 | 2.4 |
| | | | | | Within Lot | 1.36 | 1.3 |
| | | | | | Total | 2.97 | 2.7 |
| Potassium (mmol/L) | Candidate | 195 | 65 | 4.9 | Between Lot | 0.35 | 7.0 |
| | | | | | Within Lot | 0.18 | 3.7 |
| | | | | | Total | 0.39 | 8.0 |
| Sodium (mmol/L) | Candidate | 195 | 65 | 140.0 | Between Lot | 0.70 | 0.5 |
| | | | | | Within Lot | 0.41 | 0.3 |
| | | | | | Total | 0.82 | 0.6 |
| Urea Nitrogen (mg/dL) | Candidate | 174 | 58 | 16.0 | Between Lot | 0.59 | 4.0 |
| | | | | | Within Lot | 0.35 | 2.3 |
| | | | | | Total | 0.69 | 4.7 |

Table17- 6: Reproducibility summary (SD and %CV) for the RAM Scientific collection device

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| HCT (%) | Predicate | 144 | 48 | 35.0-51.0 | Between Lot | 0.83 | 2.08 |
| | | | | | Within Lot | 0.69 | 1.66 |
| | | | | | Total | 1.12 | 2.75 |
| HGB (g/dL) | Predicate | 144 | 48 | 11.3-17.7 | Between Lot | 0.32 | 2.28 |
| | | | | | Within Lot | 0.24 | 1.68 |
| | | | | | Total | 0.41 | 2.90 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972770

THERANOS, INC.

**CAPILLARY TUBES AND NANOTAINER[TM] TUBES**
**510(k) PREMARKET NOTIFICATION**

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| MCH (pg) | Predicate | 144 | 48 | 22.1-33.5 | Between Lot | 0.35 | 1.17 |
| | | | | | Within Lot | 0.22 | 0.74 |
| | | | | | Total | 0.43 | 1.42 |
| MCHC (g/dL) | Predicate | 144 | 48 | 31.7-36.2 | Between Lot | 0.76 | 2.23 |
| | | | | | Within Lot | 0.29 | 0.84 |
| | | | | | Total | 0.82 | 2.40 |
| MCV (fL) | Predicate | 144 | 48 | 69.8-96.6 | Between Lot | 1.44 | 1.63 |
| | | | | | Within Lot | 0.25 | 0.29 |
| | | | | | Total | 1.46 | 1.65 |
| MPV (fL) | Predicate | 144 | 48 | 5.0-7.9 | Between Lot | 0.21 | 3.34 |
| | | | | | Within Lot | 0.11 | 1.65 |
| | | | | | Total | 0.24 | 3.78 |
| PLT (10^3/uL) | Predicate | 144 | 48 | 159-390 | Between Lot | 11.63 | 4.73 |
| | | | | | Within Lot | 9.90 | 3.93 |
| | | | | | Total | 15.77 | 6.35 |
| RBC (10^6/uL) | Predicate | 144 | 48 | 3.72-5.79 | Between Lot | 0.09 | 1.94 |
| | | | | | Within Lot | 0.08 | 1.68 |
| | | | | | Total | 0.13 | 2.65 |
| RDW (%) | Predicate | 144 | 48 | 10.5-15.3 | Between Lot | 0.31 | 2.45 |
| | | | | | Within Lot | 0.27 | 2.11 |
| | | | | | Total | 0.42 | 3.34 |
| WBC (10^3/uL) | Predicate | 144 | 48 | 3.4-9.8 | Between Lot | 0.27 | 4.57 |
| | | | | | Within Lot | 0.20 | 3.41 |
| | | | | | Total | 0.35 | 5.87 |

Table17- 7: Reproducibility summary (SD and %CV) for the Capillary Tubes and Nanotainer Tubes

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| HCT (%) | Candidate | 162 | 54 | 35.6-51.8 | Between Lot | 2.20 | 5.03 |
| | | | | | Within Lot | 0.85 | 1.93 |
| | | | | | Total | 2.37 | 5.42 |
| HGB (g/dL) | Candidate | 162 | 54 | 11.6-18.0 | Between Lot | 0.58 | 3.95 |
| | | | | | Within Lot | 0.27 | 1.79 |
| | | | | | Total | 0.65 | 4.39 |
| MCH (pg) | Candidate | 162 | 54 | 22.3-33.0 | Between Lot | 0.35 | 1.15 |
| | | | | | Within Lot | 0.19 | 0.64 |
| | | | | | Total | 0.41 | 1.34 |
| MCHC (g/dL) | Candidate | 162 | 54 | 32.5-36.1 | Between Lot | 0.58 | 1.67 |
| | | | | | Within Lot | 0.27 | 0.77 |
| | | | | | Total | 0.65 | 1.86 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972771

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| MCV (fL) | Candidate | 162 | 54 | 68.5-95.3 | Between Lot | 0.56 | 0.64 |
| | | | | | Within Lot | 0.40 | 0.46 |
| | | | | | Total | 0.70 | 0.80 |
| MPV (fL) | Candidate | 162 | 54 | 5.0-8.1 | Between Lot | 0.20 | 2.99 |
| | | | | | Within Lot | 0.12 | 1.83 |
| | | | | | Total | 0.24 | 3.58 |
| PLT (10^3/uL) | Candidate | 162 | 54 | 153-364 | Between Lot | 25.09 | 11.47 |
| | | | | | Within Lot | 11.86 | 5.03 |
| | | | | | Total | 28.05 | 12.63 |
| RBC (10^6/uL) | Candidate | 162 | 54 | 3.83-6.01 | Between Lot | 0.23 | 4.76 |
| | | | | | Within Lot | 0.09 | 1.88 |
| | | | | | Total | 0.25 | 5.15 |
| RDW (%) | Candidate | 162 | 54 | 10.4-14.7 | Between Lot | 0.49 | 3.85 |
| | | | | | Within Lot | 0.26 | 2.10 |
| | | | | | Total | 0.56 | 4.45 |
| WBC (10^3/uL) | Candidate | 162 | 54 | 3.5-11.5 | Between Lot | 0.30 | 4.55 |
| | | | | | Within Lot | 0.28 | 4.11 |
| | | | | | Total | 0.42 | 6.32 |

Table17- 8: Reproducibility summary (SD and %CV) for the RAM Scientific collection device

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| Ferritin (ng/mL) | Predicate | 162 | 54 | 4.2-613 | Between Lot | 8.73 | 9.85 |
| | | | | | Within Lot | 7.18 | 8.43 |
| | | | | | Total | 11.51 | 13.28 |

Table17- 9: Reproducibility summary (SD and %CV) for the Capillary Tubes and Nanotainer Tubes

| Analyte (Units) | Tube Type | Measurements | Subjects | Range | Variance Component | SD | %CV |
|---|---|---|---|---|---|---|---|
| Ferritin (ng/mL) | Candidate | 162 | 54 | 4.7-611.4 | Between Lot | 10.48 | 16.52 |
| | | | | | Within Lot | 6.06 | 8.83 |
| | | | | | Total | 12.34 | 19.12 |

For chemistry, immunoassay, and hematology tests, the reproducibility of the predicate and candidate devices were characterized. The reproducibility performance was comparable for the two devices, as the 95% CI's for variances were statistically not different and were overlapping.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972772

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

 

ii.    *Linearity/assay reportable range:*
Not applicable

iii.    *Traceability, Stability, Expected values (controls, calibrators, or methods):*

### Stability of Device Operation

The real-time stability of the Capillary Tubes and Nanotainer Tubes was assessed by evaluating these parameters: sample volume, hemolysis, macro clots, and sample collection performance. The Capillary Tubes and Nanotainer Tubes were stored at two different temperatures, 4°C or 25°C, until use. The collection devices were tested at 0, 2, 4 and 8 weeks. The study will continue with 12, and 16-week time points.

Real time stability studies were performed using a minimum of 18 apparently healthy subjects at each timepoint that were tested at Theranos collection sites.  Each subject provided four Capillary Tubes and Nanotainer Tubes, two of which being EDTA configured (stored at 4 °C or 25 °C) and the remaining two being lithium heparin configured (stored at 4 °C or 25 °C).  Samples were collected in two Theranos collection sites (Palo Alto, CA and Newark, CA).

Draw volume, plasma volume, and hematocrit for each side of the Nanotainer Tubes were measured by imaging the collected samples and measuring fill volumes based on the height of the sample.  Samples that exhibited greater than the hemoglobin acceptance criteria, identified in Table 17-10, on one or both sides of the Nanotainer Tube by visual inspection were identified for hemolysis. Manual aspiration with a 22g needle was performed on both sides of the Nanotainer Tube to detect the presence of macro clots.

The performance of the Capillary Tube and Nanotainer Tube was evaluated on the successfulness of sample collection. In the event that a sample is not collected successfully in the Nanotainer Tube, the failure was recorded as either a collection, activation, or mechanical failure. A collection failure occurs if the collection device is unable to collect sufficient sample to fill the channels.  An activation failure occurs if the sample does not successfully transfer from the capillary to the Nanotainer Tube. A mechanical failure is identified if the full volume of the sample is not contained within the sealed Nanotainer Tube.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972773

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Table 17-10 below defines the acceptance criteria for each Capillary Tube and Nanotainer Tube that is collected in the real time stability study. Hemolysis acceptance criteria for each collection device configuration was established based on the lowest interference threshold for the collection of assays performed on that configuration. Refer to the manufacturer literature for assay interference thresholds. The stability of device operation will be evaluated for a time period of 16 weeks, where the stability is confirmed if the rate of occurrence (i.e. percent of samples that meet the acceptance criteria) of each parameter does not change over time. A one-sided test of equal proportions was performed confirming that there is no statistical significant difference between timepoints, over a 95% confidence interval. See Appendices 17-L and 17-M. The statistical significance is listed as probability value, p, in Table 17-12 and Table 17-14. A summary of the results are presented in Tables 17-11 through 17-16 below. Original data is contained in the Supplementary Information (See Appendices 17-L through 17-P).

Table 17-10: Summary of acceptance criteria for the real time stability for Capillary Tubes and Nanotainer Tubes

| Category of analysis | Acceptance criteria for each Capillary Tube and Nanotainer Tube: |
|---|---|
| Draw volume | Within ± 10% of specified volumes: 79.11 µL whole blood per Nanotainer Tube (EDTA) 77.00 µL whole blood per Nanotainer Tube (lithium heparin) |
| Hemolysis | <200 mg/dL Hemoglobin (EDTA) <100 mg/dL Hemoglobin (lithium heparin) |
| Macro clots | No macro clots detected |
| Sample collection performance | No failures reported |

Table 17-11: Summary of draw volume for real time stability, up to 8 weeks, for Capillary Tubes and Nanotainer Tubes

|  | Temperature (°C) | Time (weeks) | No. passing | N |
|---|---|---|---|---|
| EDTA | 4 | 0 | 30 | 36 |
| EDTA | 4 | 2 | 38 | 40 |
| EDTA | 4 | 4 | 39 | 40 |
| EDTA | 4 | 8 | 40 | 40 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| | | | | |
|---|---|---|---|---|
| EDTA | 25 | 0 | 31 | 36 |
| EDTA | 25 | 2 | 39 | 40 |
| EDTA | 25 | 4 | 40 | 40 |
| EDTA | 25 | 8 | 40 | 40 |
| Lithium heparin | 4 | 0 | 35 | 36 |
| Lithium heparin | 4 | 2 | 39 | 40 |
| Lithium heparin | 4 | 4 | 37 | 40 |
| Lithium heparin | 4 | 8 | 39 | 40 |
| Lithium heparin | 25 | 0 | 28 | 36 |
| Lithium heparin | 25 | 2 | 33 | 38 |
| Lithium heparin | 25 | 4 | 36 | 40 |
| Lithium heparin | 25 | 8 | 30 | 31 |

Table 17-12: Summary of draw volume analysis for real time stability, up to 8 weeks, for Capillary Tubes and Nanotainer Tubes

| AC | EDTA | EDTA | Lithium heparin | Lithium heparin |
|---|---|---|---|---|
| Temp | 4 | 25 | 4 | 25 |
| p02 (comparing 0 to 2 weeks) | 0.981 | 0.991 | 0.779 | 0.909 |
| p04 (comparing 0 to 4 weeks) | 0.996 | 1.000 | 0.348 | 0.995 |
| p08 (comparing 0 to 8 weeks) | 1.000 | 1.000 | 0.779 | 0.998 |
| p24 (comparing 2 to 4 weeks) | 0.880 | 1.000 | 0.308 | 0.785 |
| p28 (comparing 2 to 8 weeks) | 1.000 | 1.000 | 0.753 | 0.977 |
| p48 (comparing 4 to 8 weeks) | 1.000 | 1.000 | 0.942 | 0.949 |
| p0 (point estimate of 0 weeks) | 0.833 | 0.861 | 0.972 | 0.778 |
| p2 (point estimate of 2 weeks) | 0.950 | 0.975 | 0.975 | 0.868 |
| p4 (point estimate of 4 weeks) | 0.975 | 1.000 | 0.925 | 0.900 |
| p8 (point estimate of 8 weeks) | 1.000 | 1.000 | 0.975 | 0.968 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972775

Table 17-13: Summary of hemolysis for real time stability, up to 8 weeks

| AC | Temperature (°C) | Time (weeks) | Pass | N |
|---|---|---|---|---|
| EDTA | 4 | 0 | 13 | 18 |
| EDTA | 4 | 2 | 19 | 20 |
| EDTA | 4 | 4 | 18 | 20 |
| EDTA | 4 | 8 | 20 | 20 |
| EDTA | 25 | 0 | 16 | 18 |
| EDTA | 25 | 2 | 18 | 20 |
| EDTA | 25 | 4 | 20 | 20 |
| EDTA | 25 | 8 | 20 | 20 |
| Lithium heparin | 4 | 0 | 15 | 18 |
| Lithium heparin | 4 | 2 | 17 | 20 |
| Lithium heparin | 4 | 4 | 15 | 20 |
| Lithium heparin | 4 | 8 | 17 | 20 |
| Lithium heparin | 25 | 0 | 14 | 18 |
| Lithium heparin | 25 | 2 | 15 | 20 |
| Lithium heparin | 25 | 4 | 18 | 20 |
| Lithium heparin | 25 | 8 | 17 | 20 |

Table 17-14: Summary of hemolysis analysis for real time stability, up to 8 weeks

| AC | EDTA | EDTA | Lithium heparin | Lithium heparin |
|---|---|---|---|---|
| Temp | 4 | 25 | 4 | 25 |
| p02 (comparing 0 to 2 weeks) | 0.993 | 0.737 | 0.721 | 0.573 |
| p04 (comparing 0 to 4 weeks) | 0.968 | 1.000 | 0.411 | 0.931 |
| p08 (comparing 0 to 8 weeks) | 1.000 | 1.000 | 0.721 | 0.839 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972776

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

| AC | EDTA | EDTA | Lithium heparin | Lithium heparin |
|---|---|---|---|---|
| p24 (comparing 2 to 4 weeks) | 0.500 | 1.000 | 0.347 | 0.954 |
| p28 (comparing 2 to 8 weeks) | 1.000 | 1.000 | 0.669 | 0.882 |
| p48 (comparing 4 to 8 weeks) | 1.000 | 1.000 | 0.882 | 0.500 |
| p0 (point estimate of 0 weeks) | 0.722 | 0.889 | 0.833 | 0.778 |
| p2 (point estimate of 2 weeks) | 0.950 | 0.900 | 0.850 | 0.750 |
| p4 (point estimate of 4 weeks) | 0.900 | 1.000 | 0.750 | 0.900 |
| p8 (point estimate of 8 weeks) | 1.000 | 1.000 | 0.850 | 0.850 |

Table 17-15: Summary of macro clots for real time stability, up to 8 weeks

| | Temperature (°C) | Time (weeks) | No. passing | N |
|---|---|---|---|---|
| EDTA | 4 | 0 | 18 | 18 |
| EDTA | 4 | 2 | 20 | 20 |
| EDTA | 4 | 4 | 20 | 20 |
| EDTA | 4 | 8 | 20 | 20 |
| EDTA | 25 | 0 | 18 | 18 |
| EDTA | 25 | 2 | 20 | 20 |
| EDTA | 25 | 4 | 20 | 20 |
| EDTA | 25 | 8 | 20 | 20 |
| Lithium heparin | 4 | 0 | 18 | 18 |
| Lithium heparin | 4 | 2 | 20 | 20 |
| Lithium heparin | 4 | 4 | 20 | 20 |
| Lithium heparin | 4 | 8 | 20 | 20 |
| Lithium heparin | 25 | 0 | 18 | 18 |
| Lithium heparin | 25 | 2 | 20 | 20 |
| Lithium heparin | 25 | 4 | 20 | 20 |
| Lithium heparin | 25 | 8 | 20 | 20 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972777

Table 17-16: Summary of sample collection performance for all testing (precision/reproducibility, real time stability up to 8 weeks, analyte stability, and method comparison)

| | | All CTNs | |
|---|---|---|---|
| Category | Issue Description | Total | % Error (of CTN's used) |
| Collection | Collection failure/Sample does not enter device: Wicking/formation of bubbles | 1 | 0.04% |
| Activation | Activation failure: Issues with blood transfer from circuit to SCU | 0 | 0.00% |
| Mechanical | Misc. CTN mechanical failure - loss of sample | 3 | 0.13% |
| Total Issues | | 4 | 0.17% |
| Total CTNs Used | | 2386 | |

The predicate device stability data show no reduction in performance over eight weeks at both 4°C and 25°C storage conditions.

*Analyte Stability*

Analyte stability studies were performed at 0 hours and between 8 and 48 hours after blood collection, depending on analyte, in both the candidate and predicate devices. Testing was done at three different sites (Palo Alto, CA, Newark, Ca, and Scottsdale, AZ. Measurements were compared between the two time points for each device.

Pearson correlation coefficient ($r^2$) was calculated to ensure sufficient sample range. Mean bias and it's 95% confidence interval was calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals. Plasma volume was determined by measuring the height of the plasma column in the candidate device. A summary of the observed collection volumes as it compares to the volume criteria (see Table 17-10) can be found in Table 17-17. A summary of the results are presented in Tables 17-18 through 17-23 below. Raw data, graphical analysis, and sample tracking information can be located in the Appendices 17-Q through 17-S. Performance criteria were met for the predicate device if the mean bias and 95% limits were within the TEa for each test.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

Table 17-17: Whole blood volume summary for all candidate devices used in the Reproducibility study

| Configuration | Study Type | Analyte Subset | No. Passing | N |
|---------------|------------|----------------|-------------|---|
| LiHep | Analyte Stability | Chemistry | 357 | 368 |
| EDTA | Analyte Stability | Hematology/Immunoassay | 323 | 330 |

Study 1)  Chemistry Study: A minimum of 50 apparently healthy adult patients were enrolled and tested at Theranos collection sites.  Each donor provided either 4 Capillary Tubes and Nanotainer devices (candidate) or 4 RAM Scientific Tubes (predicate).  For each patient two of a particular collection device were pooled and tested after collection, while the remaining two collection devices were stored, protected from light, at 4 °C for 36 hours and then tested.  Each pooled sample was tested for 17 analytes: albumin, ALP, ALT, AST, calcium, total cholesterol, chloride, HDL-c, LDL-c, creatinine, glucose, potassium, sodium, total bilirubin, total protein, triglycerides, and urea nitrogen using a Siemens ADVIA 1800.

Table 17-18: Summary of analyte stability for RAM Scientific Tubes

| Analyte | Units | N | Mean Bias | Mean Bias 95% LCL | Mean Bias 95% UCL | % Total allowable Error (%TEa) | Absolute Total allowable Error (TEa) |
|---------|-------|---|-----------|-------------------|-------------------|--------------------------------|--------------------------------------|
| Albumin | g/L | 51 | 99.5 | 98.9 | 100.2 | ± 10 | NA |
| ALP | U/L | 51 | 99.1 | 97.2 | 101.0 | ± 30 | NA |
| ALT | U/L | 51 | 103.8 | 100.6 | 107.0 | ± 20 | NA |
| AST | U/L | 51 | 99.6 | 97.5 | 101.6 | ± 20 | NA |
| Calcium | mg/dL | 51 | 98.9 | 98.2 | 99.5 | NA | 1 mg/dL[a] |
| Cholesterol, Total | mg/dL | 51 | 100.0 | 99.4 | 100.6 | ± 10 | NA |
| Chloride | mmol/L | 51 | 101.0 | 100.6 | 101.3 | ± 5 | NA |
| HDL | mg/dL | 51 | 97.9 | 97.3 | 98.6 | ± 20 | NA |
| LDL | mg/dL | 51 | 100.7 | 100.2 | 101.3 | ± 30 | NA |
| Creatinine | mg/dL | 51 | 101.6 | 100.8 | 102.3 | ± 15 | 0.3 mg/dL |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Glucose | mg/dL | 51 | 95.6 | 94.9 | 96.2 | ± 10 | 6 mg/dL |
| Potassium | mmol/L | 51 | 104.4 | 103.3 | 105.5 | NA | 0.5 mmol/L[b] |
| Sodium | mmol/L | 51 | 100.3 | 99.9 | 100.6 | NA | 4 mmol/L[c] |
| Bilirubin, Total | mg/dL | 51 | 100.1 | 99.0 | 101.2 | ± 20 | 0.4 mg/dL |
| Protein, Total | g/dL | 51 | 99.0 | 98.5 | 99.6 | ± 10 | NA |
| Triglycerides | mg/dL | 51 | 98.6 | 97.4 | 99.8 | ± 30 | NA |
| Urea nitrogen | mg/dL | 51 | 98.6 | 97.2 | 100.0 | ± 9 | 2 mg/dL |

a Calcium: Observed mean value T0 – 9.6 mg/dL T36 – 9.5 mg/dL

b Potassium: Observed mean value T0 – 4.1 mg/dL T36 – 4.3 mg/dL

c Sodium: Observed mean value T0 – 134.9 mg/dL T36 – 135.3 mg/dL

Table 17-19: Summary of analyte stability for Capillary Tubes and Nanotainer Tubes

| Analyte | Units | N | Mean Bias | 95% LCL | 95% UCL | %TEa | TEa |
|---|---|---|---|---|---|---|---|
| Albumin | g/L | 55 | 100.1 | 99.5 | 100.7 | ± 10 | NA |
| ALP | U/L | 55 | 96.8 | 96.2 | 97.4 | ± 30 | NA |
| ALT | U/L | 55 | 104.3 | 101.8 | 106.8 | ± 20 | NA |
| AST | U/L | 55 | 103.9 | 101.9 | 105.9 | ± 20 | NA |
| Calcium | mg/dL | 55 | 99.8 | 99.2 | 100.4 | NA | 1 mg/dL |
| Cholesterol, Total | mg/dL | 55 | 100.4 | 100.0 | 100.8 | ± 10 | NA |
| Chloride | mmol/L | 55 | 100.2 | 100.0 | 100.3 | ± 5 | NA |
| HDL | mg/dL | 55 | 95.8 | 95.3 | 96.3 | ± 20 | NA |
| LDL | mg/dL | 55 | 101.3 | 100.9 | 101.7 | ± 30 | NA |
| Creatinine | mg/dL | 55 | 98.3 | 97.5 | 99.1 | ± 15 | 0.3 mg/dL |
| Glucose | mg/dL | 55 | 96.5 | 95.7 | 97.3 | ± 10 | 6 mg/dL |
| Potassium | mmol/L | 55 | 104.8 | 103.4 | 106.1 | NA | 0.5 mmol/L |
| Sodium | mmol/L | 55 | 100.2 | 100.0 | 100.3 | NA | 4 mmol/L |
| Bilirubin, Total | mg/dL | 55 | 90.5 | 88.0 | 93.1 | ± 20 | 0.4 mg/dL |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972780

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Protein, Total | g/dL | 55 | 99.4 | 98.9 | 99.8 | ≈ 10 | NA |
| Triglycerides | mg/dL | 55 | 99.5 | 98.4 | 100.6 | ± 30 | NA |
| Urea nitrogen | mg/dL | 55 | 101.6 | 100.3 | 102.9 | ± 9 | 2 mg/dL |

Study 2) Immunoassay Study: A minimum of 50 apparently healthy adult patients were enrolled and tested at Theranos collection sites. Both types of blood collection device types that were used: EDTA or lithium heparin. For the lithium heparin-configured devices, each donor provided either 6 lithium heparin Capillary Tubes and Nanotainer devices (candidate) or 6 lithium heparin Ram Scientific Tubes (predicate). For each patient, three of a particular collection device were pooled and tested for Vitamin B12 after collection, the remaining three collection devices were stored, protected from light, at 4°C for 8 hours and then tested. For the EDTA-configured devices, each of the samples were tested for ACTH or Ferritin. For ACTH, each donor provided either 3 EDTA-configured Capillary Tubes and Nanotainer devices (candidate) or 3 EDTA RAM Scientific Tubes (predicate). For each patient, a total of 120 μL of plasma was pooled from two of the particular collection devices and tested after collection. The remaining collection devices were stored, protected from light, at 4°C for 24 hours and then tested. For Ferritin, each donor provided 2 EDTA-configured Capillary Tubes and Nanotainer devices (candidate) and 2 EDTA RAM Scientific Tubes (predicate). For each patient, one of each particular collection device was pooled and tested after collection. The remaining collection device was stored, protected from light, at 4°C for 48 hours and then tested. Samples tested for Vitamin B12 and ACTH were tested using the Siemens Immulite 2000. Samples tested for Ferritin were tested using Siemens ADVIA Centaur XP.

Table 17-20: Summary of analyte stability for RAM Scientific Tubes

| Analyte | Units | N | Mean Bias | Mean Bias 95% LCL | Mean Bias 95% UCL | % Total allowable Error (%TEa) | Absolute Total allowable Error (TEa) |
|---|---|---|---|---|---|---|---|
| ACT | pg/ml | 56 | 119.14 | 108.00 | 130.29 | ± 10 | 5.87 |
| FER | ng/ml | 55 | 96.49 | 93.34 | 99.64 | ± 30 | 4.5 |

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972781

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| VB | pg/ml | 50 | 98.43 | 92.36 | 104.50 | ± 30 | 60 |

Table 17-21: Summary of analyte stability for Capillary Tubes and Nanotainer Tubes

| Analyte | Units | N | Mean Bias | Mean Bias 95% LCL | Mean Bias 95% UCL | % TEa | TEa |
|---|---|---|---|---|---|---|---|
| ACT | pg/ml | 55 | 95.49 | 90.30 | 100.68 | ± 10 | 5.87 |
| FER | ng/ml | 55 | 101.37 | 96.79 | 105.96 | ± 30 | 4.5 |
| VB | pg/ml | 53 | 101.59 | 98.71 | 104.48 | ± 30 | 60 |

Study 3) Hematology Study: A minimum of 50 apparently healthy adult patients were enrolled and tested at Theranos collection sites. Each donor provided either 2 Capillary Tubes and Nanotainer devices (candidate) or 2 RAM Scientific Tubes (predicate). For each patient one of each particular collection device was tested after collection, while the remaining collection device of each type was stored, protected from light at 4°C, for 36 hours and then tested. Each sample was tested for 10 analytes: HCT, HGB, MCH, MCHC, MCV, MPV, PLT, RBC, RDW, and WBC using a Drew Scientific Drew-3 hematology analyzer.

Table 17-22: Summary of analyte stability for RAM Scientific Tubes

| Analyte | Units | N | Mean Bias | Mean Bias 95% LCL | Mean Bias 95% UCL | % Total allowable Error (%TEa) |
|---|---|---|---|---|---|---|
| HCT | % | 74 | 99.8 | 98.9 | 100.6 | ± 6 |
| HGB | g/dL | 74 | 99.7 | 99.0 | 100.4 | ± 7 |
| MCH | pg | 74 | 99.4 | 99.1 | 99.8 | ± 2.5 |
| MCHC | g/dL | 74 | 100.0 | 99.6 | 100.3 | ± 3 |
| MCV | fL | 74 | 99.5 | 99.3 | 99.7 | ± 3 |
| MPV | fL | 74 | 105.1 | 104.3 | 106.0 | ± 7 |
| PLT | 10³/uL | 74 | 100.6 | 98.8 | 102.3 | ± 25 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972782

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

| RBC | $10^6$/uL | 74 | 100.3 | 99.4 | 101.1 | ± 6 |
| RDW | % | 74 | 103.5 | 102.4 | 104.6 | ± 7.5 |
| WBC | $10^3$/uL | 74 | 99.3 | 98.4 | 100.3 | ± 15 |

Table 17-23: Summary of analyte stability for Capillary Tubes and Nanotainer Tubes

| Analyte | Units | N | Mean Bias | Mean Bias 95% LCL | Mean Bias 95% UCL | % Total allowable Error (%TEa) |
|---------|-------|---|-----------|-------------------|-------------------|--------------------------------|
| HCT | % | 59 | 101.7 | 100.7 | 102.8 | ± 6 |
| HGB | g/dL | 59 | 100.9 | 100.0 | 101.8 | ± 7 |
| MCH | pg | 59 | 99.5 | 99.1 | 100.0 | ± 2.5 |
| MCHC | g/dL | 59 | 99.3 | 98.7 | 99.8 | ± 3 |
| MCV | fL | 59 | 100.3 | 100.1 | 100.6 | ± 3 |
| MPV | fL | 59 | 104.2 | 102.9 | 105.6 | ± 7 |
| PLT | $10^3$/uL | 59 | 100.5 | 97.7 | 103.3 | ± 25 |
| RBC | $10^6$/uL | 59 | 101.4 | 100.4 | 102.5 | ± 6 |
| RDW | % | 59 | 100.9 | 99.9 | 102.0 | ± 7.5 |
| WBC | $10^3$/uL | 59 | 101.5 | 99.5 | 103.5 | ± 15 |

The analyte stability data demonstrates that the predicate device meets all acceptance criteria for chemistry, immunoassay, and hematology tests evaluated. Namely, the mean bias and 95% confidence limits are within the TEa, meeting the performance requirements.

iv. *Detection Limit*
Not applicable

v. *Analytical specificity*
Not applicable

vi. *Assay cut-off*
Not applicable

b. Comparison Studies:

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

Page **57** of **69**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972783

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

 *i.* *Method comparison with predicate device:*

  To demonstrate comparable performance with the predicate device, more than 50 apparently healthy subjects were enrolled for chemistry, immunoassay, and hematology. For nucleic acid testing, a total of 25 samples were analyzed for method comparison. In addition to samples prospectively collected from enrolled subjects, a small number of contrived samples were also used to ensure complete coverage of the analytical range. The number of contrived samples was less than 10% of the total number of samples run. Subjects were enrolled at three geographically independent Theranos sites for chemistry, immunoassay, and hematology. A candidate and the predicate device were collected from each subject. For the nucleic acid testing, additional samples were collected at a mobile collection site.

  Pearson correlation coefficient ($r^2$) was calculated to ensure sufficient sample range. Mean bias and its 95% confidence interval are calculated following CLSI guidelines EP09-A2 Method Comparison and Bias Estimation Using Patient Sample. A Deming regression was performed to establish the intercept, slope and their respective 95% confidence intervals. Equivalence to the predicate device is shown if the mean bias and 95% limits were within the Tea for each test.

  For albumin and sodium, a large bias is observed when comparing the predicate device to a Vacutainer specimen. The predicate device bias was calculated by collecting blood samples from subjects into the predicate device and a Vacutainer collection device. Linear regression was used to establish the intercept and slope for the bias correction. Bias correction was applied to the albumin and sodium predicate device measurement that are compared against the candidate device (See Study 4 below and Appendix 17-W. A list of analytes and instrument platforms tested are summarized in Table 17-24. Plasma volume was determined by measuring the height of the plasma column in the candidate device. A summary of the observed collection volumes as it compares to the volume criteria (Table 17-10) can be found in Table 17-25. A summary of the results are presented in Tables 17-26 through 17-30 below. Complete data sets, graphs and regression analysis can be found in Appendices 17-T through 17-X.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972784

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Table 17-24: Analytes and instruments used to test each candidate device for Method Comparison

| Tube Type | Instrument | Analyte/Unit |
|---|---|---|
| Capillary Tube and Nanotainer Tube (lithium heparin) | Siemens ADVIA 1800 | Albumin, ALP, ALT, AST, calcium , total cholesterol, chloride, HDL, LDL, creatinine, glucose, potassium, sodium, total bilirubin, total protein, triglycerides, and urea nitrogen |
| Capillary Tube and Nanotainer Tube (EDTA) | Drew Scientific | WBC, RBC, HgB, HCT, PLT, MCV, RDW, MCH, MCHC, MPV |
| Capillary Tube and Nanotainer Tube (lithium heparin) | Immulite 2000 | C-Peptide, Vitamin B12 |
| Capillary Tube and Nanotainer Tube (EDTA) | Immulite 2000 | ACTH |
| Capillary Tube and Nanotainer Tube (EDTA) | Siemens ADVIA Centaur XP | Ferritin |
| Capillary Tube and Nanotainer (EDTA) | Abbott m2000sp and m2000rt | HIV-1 |

Table 17-25: Whole blood volume summary for all candidate devices used in the Method comparison study

| Configuration | Study Type | Analyte Subset | No. Passing | N |
|---|---|---|---|---|
| LiHep | Method Comparison | Chemistry | 161 | 169 |
| EDTA | Method Comparison | Hematology/Immunology/ Nucleic Acid | 262 | 303 |

*Study 1) Chemistry*

Two RAM Scientific lithium heparin tubes (predicate) and two Theranos Capillary Tube and Nanotainer lithium heparin devices (candidate) were collected per subject. Plasma was removed from the paired devices and pooled for analysis on the ADVIA 1800. Spiked samples additionally were prepared by addition of concentrated analyte stock solutions venous lithium heparin whole blood. Whole blood was aliquoted into capillary tube(s) for both the predicate and candidate device. The devices were then processed

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972785

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

following the same protocol as samples obtained from patients. The predicate device showed a significant bias with respect to venous plasma for albumin and sodium. An additional study was performed determining the mean bias for the predicate device, please see Study 4 in this section. Regression correlations listed below apply a bias correction for the RAM Scientific device to the albumin and sodium data (See Study 4 below and Appendix 17-W). The regression correlation with 95% confidence intervals can be found in Table 17-29.

Table 17-26: Regression correlations with upper 95% confidence interval (UCL) and lower 95% confidence interval (LCL) for chemistry analytes

| Analyte | | Mean %Bias | Slope | Intercept |
|---|---|---|---|---|
| Albumin (bias corrected) | Value | 103.3 | 0.829 | 0.864 |
| | LCL | 102.4 | 0.807 | 0.682 |
| | UCL | 104.3 | 0.871 | 0.973 |
| ALP | Value | 102.5 | 1.066 | -3.635 |
| | LCL | 101.5 | 1.049 | -5.068 |
| | UCL | 103.7 | 1.080 | -1.93 |
| ALT | Value | 105.3 | 1.005 | 0.831 |
| | LCL | 103.8 | 0.990 | 0.427 |
| | UCL | 106.7 | 1.017 | 1.369 |
| AST | Value | 96.3 | 1.023 | -1.712 |
| | LCL | 94.8 | 1.010 | -2.389 |
| | UCL | 97.7 | 1.033 | -1.049 |
| Calcium | Value | 97.3 | 0.944 | 0.264 |
| | LCL | 96.8 | 0.828 | -0.414 |
| | UCL | 97.8 | 1.017 | 1.368 |
| Cholesterol | Value | 100.1 | 1.013 | -2.15 |
| | LCL | 99.8 | 1.002 | -3.962 |
| | UCL | 100.5 | 1.022 | -0.007 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972786

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Analyte | | Mean %Bias | Slope | Intercept |
|---|---|---|---|---|
| Chloride | Value | 100.2 | 1.030 | -3.022 |
| | LCL | 100.0 | 0.980 | -8.079 |
| | UCL | 100.3 | 1.077 | 2.354 |
| HDL | Value | 98.4 | 1.009 | -1.188 |
| | LCL | 98 | 0.984 | -2.224 |
| | UCL | 98.8 | 1.031 | -0.136 |
| LDL | Value | 98.9 | 0.989 | 0.11 |
| | LCL | 98.5 | 0.975 | -1.43 |
| | UCL | 99.3 | 1.004 | 1.497 |
| Creatinine | Value | 102.1 | 1.019 | 0.001 |
| | LCL | 101.5 | 0.994 | -0.018 |
| | UCL | 102.8 | 1.039 | 0.025 |
| Glucose | Value | 101.5 | 1.007 | 0.935 |
| | LCL | 100.9 | 0.996 | -0.75 |
| | UCL | 102.1 | 1.022 | 2.284 |
| Potassium | Value | 103.4 | 1.415 | -1.695 |
| | LCL | 102.3 | 1.111 | -3.164 |
| | UCL | 104.5 | 1.741 | -0.392 |
| Sodium (bias corrected) | Value | 102.1 | 0.884 | 15.24 |
| | LCL | 101.9 | 0.797 | -0.514 |
| | UCL | 102.3 | 0.996 | 27.506 |
| Total Bilirubin | Value | 93.0 | 0.975 | -0.028 |
| | LCL | 90.8 | 0.968 | -0.042 |
| | UCL | 95.2 | 0.981 | -0.016 |
| Total protein | Value | 100.9 | 1.017 | -0.067 |

**TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972787

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER[TM] TUBES
510(k) PREMARKET NOTIFICATION

| Analyte | | Mean %Bias | Slope | Intercept |
|---|---|---|---|---|
| | LCL | 100.5 | 0.995 | -0.249 |
| | UCL | 101.3 | 1.042 | 0.109 |
| Triglycerides | Value | 101.1 | 1.006 | -0.16 |
| | LCL | 99.7 | 0.992 | -2.501 |
| | UCL | 102.5 | 1.017 | 2.53 |
| Urea Nitrogen | Value | 109.1 | 1.062 | 0.409 |
| | LCL | 108.1 | 1.036 | 0.096 |
| | UCL | 110 | 1.081 | 0.821 |

*Study 2) Immunoassay*

Two types of blood collection device types were tested: EDTA and lithium heparin. For the samples collected in lithium heparin devices, three RAM Scientific tubes (predicate) and three Theranos Capillary Tube and Nanotainer devices (candidate) were collected per subject. Plasma was removed from the paired devices and pooled for analysis for two analytes: C-Peptide and Vitamin B12 on the Immulite 2000. For the samples tested for ACTH, two RAM scientific (predicate) and two Theranos Capillary Tube and Nanotainer devices (candidate) were collected per subject. Plasma was removed from the paired devices and pooled for analysis of ACTH on the Immulite 2000. Spiked samples were prepared by addition of concentrated analyte stock solutions to venous EDTA plasma. EDTA plasma was aliquoted into capillary tubes for both the predicate and candidate devices. The devices were then processed following the same protocol as samples obtained from patients. For the samples tested for Ferritin, one RAM scientific (predicate) and one Theranos Capillary Tube and Nanotainer device (candidate) were collected per subject. Plasma was removed from the paired devices and pooled for analysis of Ferritin on Siemens ADVIA Centaur XP.

Table 17-27:  Regression correlations with upper 95% confidence interval (UCL) and lower 95% confidence interval (LCL) for ELISA analytes

| Analyte | | Mean %Bias | Intercept | Slope |
|---|---|---|---|---|

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972788

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| | | | | |
|---|---|---|---|---|
| ACTH <58.7 | Value | 107.4 | 1.61 | 0.92 |
| | LCL | 102.8 | 0.14 | 0.83 |
| | UCL | 112.1 | 2.88 | 1.05 |
| ACTH >58.7 | Value | 104.11 | -8.16 | 1.06 |
| | LCL | 99.7 | -47.50 | 0.98 |
| | UCL | 108.5 | 30.79 | 1.12 |
| Ferritin | Value | 105.3 | 1.71 | 1.04 |
| | LCL | 102.0 | -2.18 | 1.01 |
| | UCL | 108.7 | 4.61 | 1.09 |
| C-Peptide | Value | 99.0 | -0.01 | 0.99 |
| | LCL | 97.2 | -0.15 | 0.95 |
| | UCL | 100.9 | 0.15 | 1.03 |
| Vitamin B12 | Value | 98.5 | 13.98 | 0.95 |
| | LCL | 95.8 | -26.99 | 0.88 |
| | UCL | 101.2 | 57.55 | 1.03 |

*Study 3) Hematology*

One RAM Scientific EDTA tube (predicate) and one Theranos Capillary Tube and Nanotainer EDTA devices (candidate) were collected per subject. Contrived samples were prepared by manipulating venous whole blood. To prepare analytes with higher concentrations, whole blood was centrifuged at 1200 x g for 5 minutes to separate plasma from the pack cell bed, and plasma was removed from the sample, which was then suspended in the reduced volume. To prepare analytes with lower concentrations, whole blood was diluted with 5% bovine serum albumin and mixed. The well-mixed contrived samples were passed through predicate and candidate devices using the normal sample collection process. The devices were then processed following the same protocol as samples obtained from patients.

Table 17-28: Regression correlations with upper 95% confidence interval (UCL) and lower 95% confidence interval (LCL) for CBC analytes

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972789

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Analyte | | Mean %Bias | Intercept | Slope |
|---|---|---|---|---|
| HCT | Value | 99.8 | -0.696 | 1.017 |
| | LCL | 99.2 | -1.942 | 1.005 |
| | UCL | 100.3 | -0.231 | 1.049 |
| HGB | Value | 99.8 | -0.127 | 1.008 |
| | LCL | 99.4 | -0.386 | 0.998 |
| | UCL | 100.4 | -0.01 | 1.027 |
| MCH | Value | 99.2 | 0.802 | 0.965 |
| | LCL | 98.9 | -0.411 | 0.914 |
| | UCL | 99.4 | 2.356 | 1.006 |
| MCHC | Value | 99.9 | 4.73 | 0.864 |
| | LCL | 99.5 | -0.805 | 0.692 |
| | UCL | 100.2 | 10.693 | 1.024 |
| MCV | Value | 99.3 | -1.295 | 1.008 |
| | LCL | 99.1 | -3.902 | 0.978 |
| | UCL | 99.5 | 1.294 | 1.037 |
| MPV | Value | 99.8 | -0.114 | 1.015 |
| | LCL | 99.1 | -0.602 | 0.952 |
| | UCL | 100.5 | 0.32 | 1.088 |
| PLT | Value | 97.3 | -13.622 | 1.029 |
| | LCL | 95.6 | -19.849 | 0.993 |
| | UCL | 98.9 | -4.699 | 1.049 |
| RBC | Value | 100.8 | -0.034 | 1.015 |
| | LCL | 100.3 | -0.144 | 1.005 |
| | UCL | 101.2 | 0.006 | 1.037 |
| RDW | Value | 98.9 | 0.701 | 0.934 |
| | LCL | 97.8 | -1.417 | 0.864 |

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

| Analyte | | Mean %Bias | Intercept | Slope |
|---|---|---|---|---|
| | UCL | 99.9 | 1.629 | 1.096 |
| WBC | Value | 100.9 | 0.067 | 1.007 |
| | LCL | 100.8 | -0.054 | 0.991 |
| | UCL | 103.2 | 0.2 | 1.021 |

Study 4) Nucleic acid testing

To demonstrate equivalent performance with the predicate device 23 fingerstick and venous samples were tested. All samples had to have viral loads above the limit of detection of the test platform (150 copies/mL or 2.18 log(copies)/mL) to be included in the study. For prospective fingerstick collection, four EDTA RAM Scientific tubes (predicate) and four EDTA Theranos Capillary Tube and Nanotainer devices (candidate) were collected per subject. Plasma was removed from devices and pooled for the paired predicate devices or paired candidate devices for quantitative testing for Human Immunodeficiency Virus (HIV-1). In addition, 20 venous whole blood samples were obtained from EDTA vacutainers within 24 hours of collection. EDTA whole blood was aliquoted into the predicate and candidate devices. The devices were then processed following the same protocol as samples obtained from fingerstick samples (See Appendix 17-I).

Two (2) contrived samples were also included in the analysis to increase the number of samples near the limit of detection (LOD) of the assay. The number of contrived samples was <10% of the total number of samples in the analysis. Spiked samples were prepared by addition of positive HIV plasma to fresh venous EDTA whole blood. EDTA whole blood was aliquoted into the predicate and candidate devices. The devices were then processed following the same protocol as samples obtained from fingerstick samples (See Appendix 17-I).

The total allowable error (TEa) acceptance criteria was considered to be two times (2x) the standard deviation of the HIV-1 assay, or a TEa of 0.5 log(copies)/mL.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972791

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER<sup>TM</sup> TUBES
510(k) PREMARKET NOTIFICATION

Table17-29:   Regression correlations with upper 95% confidence interval (UCL) and lower 95% confidence interval (LCL) for HIV-1.

| Analyte | | Mean %Bias | Intercept | Slope |
|---|---|---|---|---|
| HIV-1 | Value | 101.2 | -0.01 | 1.01 |
| | LCL | 96.9 | -0.34 | 0.92 |
| | UCL | 105.4 | 0.39 | 1.09 |

For chemistry, immunoassay, hematology, and nucleic acid tests, the mean bias and 95% CI intervals were within the total allowable error requirements, establishing substantial equivalence to the predicate device.

Study 5) RAM Scientific bias study

To determine device associated bias for sodium and albumin analysis 60 apparently healthy subjects were enrolled.  From each subject a BD lithium heparin Vacutainer (4.5 mL), a lithium heparin RAM Scientific tube, and a Capillary Tube and Nanotainer device were collected.  Collection occurred on-site over the course of four days.   Sodium and albumin analysis was performed on a Siemens ADVIA 1800.  A bias is observed when comparing the predicate device to a venous device (Figure 17-1 and 17-2). The predicate device bias was calculated by collecting blood samples from subjects into the predicate device and a venous device at the same time. Linear regression was used to establish the intercept and slope for the bias correction (Table 17-30).

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972792

THERANOS, INC.

CAPILLARY TUBES AND NANOTAINER™ TUBES
510(k) PREMARKET NOTIFICATION

Figure 17-1: Bias plot showing albumin recovery versus a BD Vacutainer for the Predicate and Candidate devices. The dashed red lines are the limits of total allowable error for albumin.



Figure 17-2: Bias plot showing sodium recovery versus a BD Vacutainer for the predicate and candidate devices. The dashed red lines are the limits of total allowable error for sodium.



TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

Page **67** of **69**

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972793

Table17- 30: Regression analysis of predicate device with a BD lithium heparin Vacutainer

| Analyte | Intercept | Slope | $R^2$ |
|---------|-----------|-------|-------|
| ALB | 0.46 | 0.83 | 0.75 |
| Na | 19.21 | 0.83 | 0.73 |

    *ii.  Matrix Comparison*
       Not applicable.

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972794

### 18.0   PERFORMANCE TESTING – CLINICAL

a.   <u>Clinical cut-off:</u>
Not applicable

b.   <u>Expected values/Reference Range:</u>
Not applicable

   i.   *Clinical Sensitivity*
Not applicable

   ii.   *Clinical Specificity*
Not applicable

   iii.   *Other clinical supportive data (a. and b. are no applicable)*
Not applicable

TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE UNDER
THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-0972795

# Exhibit 57

Message

| | |
|---|---|
| **From:** | Elizabeth Holmes [/O=THERANOS ORGANIZATION/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=EHOLMES] |
| **Sent:** | 11/1/2013 9:38:48 PM |
| **To:** | Hojvat, Sally A (Sally.Hojvat@fda.hhs.gov) [Sally.Hojvat@fda.hhs.gov]; Hobson, John (Peyton) (JOHN.HOBSON@fda.hhs.gov) [JOHN.HOBSON@fda.hhs.gov] |
| **Subject:** | Theranos Confidential |

Dear Sally and Peyton,

Please see attached a document compiled for your reference on Theranos' Capillary Tubes and Nanotainers. Please note this is a very high level overview intended for your background; we can, as always, follow with additional detail and specifications around any relevant aspect.

Please do let me know if there are any questions we can answer or clarifications we can provide on the attached prior to any circulation.

With my best regards,

Elizabeth

=======================================
PRIVILEGED AND CONFIDENTIAL COMMUNICATION
IMPORTANT -- This electronic transmission, and any files transmitted with it are confidential and/or legally privileged information. This information is intended solely for the use of the individual or entity to which they are addressed. Any disclosure, retransmission, reproduction, dissemination or other use of the contents of this information by persons or entities other than the intended recipient is strictly prohibited. If you have received this email in error, please contact us immediately and delete all copies. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of Theranos, Inc. Finally, before opening or using attachments the recipient should check this email and any attachments for the presence of viruses. Theranos, Inc. accepts no liability for any damage caused by any virus transmitted by this email. Our sole responsibility is limited to resupplying any affected attachments.
Theranos, Inc., 1601 S. California Avenue, Palo Alto, CA, 94304
650-838-9292   www.theranos.com
=======================================

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-2500713

THERANOS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE
UNDER THE FREEDOM OF INFORMATION ACT

**Theranos Capillary Blood Collection**

Samples for use in the Theranos Sample Processing Unit may be collected by any of the many marketed blood collection capillaries and tubes capable of preserving and/or transporting whole blood.

Because the sample required for use in the Theranos System is very small and commercially available blood collection tubes require human processing (e.g. manual mixing, human discretion in filling) that can increase variability in test results, and additionally are sized for larger samples such that the collection into the larger capillary tubes can increase variability in test results (too much anticoagulant, too much air exposure, etc.), Theranos has developed devices, trade named the "Capillary Tubes" and "Nanotainer," designed to collect, preserve, and/or transport very small samples.

The Capillary Tubes are composed of two capillary tubes, fabricated in PETG. The housing container around the blood capillary tubes is fabricated in Polypropylene.

The Nanotainers are fabricated in medical grade Polypropylene. A dedicated Nanotainer is used to transport blood from each capillary, functioning similarly to a vacutainer. Two Nanotainers can be encapsulated together in a Polypropylene holder for ease of handling.

One capillary contains Lithium-Heparin and the other contains $K_2$-EDTA anti-coagulants, which are intended to preserve the specimen during transport to the TSPU and/or storage in the patient service center. There are no anti-coagulants or preparatory reagents in the Nanotainers, which are general purpose transport vessels.

*Capillary Tubes*



Figure 1.  Theranos Blood Capillary Tubes with housing.

Theranos Blood Capillary Tubes consist of two separate blood capillaries, coated with Lithium Heparin and $K_2$-EDTA respectively.  As referenced above, the two capillaries are fabricated in PETG. The blood sample is drawn into the capillaries by capillary pressure.  The capillaries are surrounded by an external housing container, made out of Polypropylene.

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-2500714

THERANOS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE
UNDER THE FREEDOM OF INFORMATION ACT

*Nanotainers*



Figure 2.  Theranos Nanotainers.

Theranos Nanotainers (Figure 2) are transport containers which are designed to hold up to 80-100uL of blood.  The Nanotainers are capped with an air-tight plug fabricated in Black Santoprene.

If the Nanotainers are to be transported back to the CLIA laboratory, the Nanotainers are placed into self-refrigerated boxes that are stored in a standard sample shipping box.

*Operation*

In capillary collection, the blood is obtained by means of a standard, commercially available lancet, which is not part of the device.  A Theranos certified CLIA-laboratory (and appropriately state licensed) sample collection technician performs the standard finger-stick puncture on a patient.

The Capillary Tubes are placed in contact with the blood drop, and the sample is drawn into each of the Capillary Tubes by capillary force.

Blood collection is continued until both capillaries are completely filled, as further highlighted by the indicator window at the end of the capillaries.

The patient's finger is cleaned and a band-aid is applied.

The Nanotainers are pushed in the direction of the Blood Capillary Tubes as shown in Figure 3 below, which results in blood being transferred to the Nanotainers through a syringe-like mechanism.

This is done until the Nanotainers are pushed all the way (Figure 3b, Middle), which results in the contents of each capillary being transferred to a dedicated sealed Nanotainer, which can be used to transport the specimen.

At this point, the Nanotainers are pulled out from the housing of the Blood Capillary Tubes (Figure 3c, Bottom), and can be placed into a cartridge for sample processing inside a TSPU.

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-2500715

THERANOS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE
UNDER THE FREEDOM OF INFORMATION ACT

a.

b.

c.



Figure 3.  Theranos Capillary Tubes and Nanotainers operation

*Listing*

Both the Capillary Tubes and the Nanotainers are classified in FDA's regulations, and Theranos has
registered and listed them accordingly:

- ■ A capillary tube, which is described in 21 CFR 864.6150, is a device consisting of a glass tube
  of very small diameter used to collect blood by capillary action.  The device is classified in
  Class I (general controls) and exempt from premarket notification.  The classification code is
  GIO.

- ■ A specimen transport and storage container, which is described at 21 CFR 864.3250, is a
  device intended to collect a biological specimen so that it can be used for diagnostic
  evaluation.  A specimen transport and storage container may contain a fixative solution or
  other general purpose reagent to preserve the condition of the specimen added to the
  container.  The device is classified in Class I (general controls).  The classification code for
  the Theranos container is KDT.

**Inside the TSPU: Centrifuge Vessels for Separating Serum and Non-serum components**

Neither the Nanotainers nor the Blood Capillary Tubes are designed for the purpose of separation of
serum and non-serum components, and, therefore do not fit the description of a Blood Specimen
Collection Device, 21 CFR 862.1675, which is intended for medical purposes to collect and handle blood
specimens and to separate serum from non-serum components prior to testing. Centrifuge vessels are
used for separation processes in the TSPU.  There are two types of centrifuge vessels within the TSPU:
the Low Volume Centrifuge vessel (Figure 4, Left) has a capacity of 80uL, and the High Volume
Centrifuge vessel (Figure 4, Right) has a capacity of 160uL.  The Low Volume Centrifuge vessel is

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-2500716

THERANOS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION EXEMPT FROM DISCLOSURE
UNDER THE FREEDOM OF INFORMATION ACT

fabricated out of Polystyrene to obtain good optical clarity.  The High Volume Centrifuge vessel is
fabricated out of Polypropylene, and is used for separation of larger fluid volumes.



Figure 4.  Theranos Centrifuge Vessels

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

THER-2500717

# Exhibit 58

1  JINA L. CHOI (NY Bar No. 2699718)
   ERIN E. SCHNEIDER (Cal. Bar No. 216114)
2   schneidere@sec.gov
   MONIQUE C. WINKLER (Cal. Bar No. 213031)
3   winklerm@sec.gov
   JASON M. HABERMEYER (Cal. Bar No. 226607)
4   habermeyerj@sec.gov
   MARC D. KATZ (Cal. Bar No. 189534)
5   katzma@sec.gov
   JESSICA W. CHAN (Cal. Bar No. 247669)
6   chanjes@sec.gov
   RAHUL KOLHATKAR (Cal. Bar No. 261781)
7   kolhatkarr@sec.gov

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                         **SAN JOSE DIVISION**

12  SECURITIES AND EXCHANGE COMMISSION,      Case No.   18-1602-EJD

13              Plaintiff,

14       vs.

15  ELIZABETH ANNE HOLMES and
    THERANOS, INC.
16
                Defendants.
17

18

19      **FINAL JUDGMENT AS TO DEFENDANT ELIZABETH ANNE HOLMES**

20          The Securities and Exchange Commission (the "Commission") having filed a

21  Complaint and Defendant Elizabeth Anne Holmes having entered a general appearance;

22  consented to the Court's jurisdiction over Defendant and the subject matter of this action;

23  consented to entry of this Final Judgment without admitting or denying the allegations of the

24  Complaint (except as to jurisdiction and except as otherwise provided herein in paragraph

25  IX); waived findings of fact and conclusions of law; and waived any right to appeal from this

26  Final Judgment:

27  //

28

# I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

# II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the

1          statements made, in light of the circumstances under which they were made,

2          not misleading; or

3     (c)     to engage in any transaction, practice, or course of business which operates or

4          would operate as a fraud or deceit upon the purchaser.

5      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

6 Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following

7 who receive actual notice of this Final Judgment by personal service or otherwise: (a)

8 Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in

9 active concert or participation with Defendant or with anyone described in (a).

10                                 III.

11      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to

12 Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited, for 10

13 years following the date of entry of this Final Judgment, from acting as an officer or director

14 of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange

15 Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the

16 Exchange Act [15 U.S.C. § 78o(d)].

17                                 IV.

18      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall

19 pay a civil penalty in the amount of $500,000 to the Securities and Exchange Commission

20 pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the

21 Exchange Act, 15 U.S.C. § 78u(d). Defendant shall make this payment pursuant to the terms

22 of the payment schedule set forth in paragraph V below after entry of this Final Judgment.

23      Defendant may transmit payment electronically to the Commission, which will

24 provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made

25 directly from a bank account via Pay.gov through the SEC website at

26 http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank

27 cashier's check, or United States postal money order payable to the Securities and Exchange

28

1   Commission, which shall be delivered or mailed to

2       Enterprise Services Center

3       Accounts Receivable Branch

4       6500 South MacArthur Boulevard

5       Oklahoma City, OK 73169

6   and shall be accompanied by a letter identifying the case title, civil action number, and name

7   of this Court; Elizabeth Anne Holmes as a defendant in this action; and specifying that

8   payment is made pursuant to this Final Judgment.

9       Defendant shall simultaneously transmit photocopies of evidence of payment and case

10  identifying information to the Commission's counsel in this action.  By making this payment,

11  Defendant relinquishes all legal and equitable right, title, and interest in such funds and no

12  part of the funds shall be returned to Defendant.  The Commission shall send the funds paid

13  pursuant to this Final Judgment to the United States Treasury. Defendant shall pay post-

14  judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

15                                     V.

16      Defendant shall pay the penalty due of $500,000 in two installments to the

17  Commission according to the following schedule:  (1) $35,000, within 14 days of entry of this

18  Final Judgment and (2) $465,000, within one year of entry of this Final Judgment.  Payments

19  shall be deemed made on the date they are received by the Commission and shall be applied

20  first to post judgment interest, which accrues pursuant to 28 U.S.C. § 1961 on any unpaid

21  amounts due after 14 days of the entry of Final Judgment.  Prior to making the final payment

22  set forth herein, Defendant shall contact the staff of the Commission for the amount due for

23  the final payment.

24      If Defendant fails to make any payment by the date agreed and/or in the amount

25  agreed according to the schedule set forth above, all outstanding payments under this Final

26  Judgment, including post-judgment interest, minus any payments made, shall become due and

27

28

1   payable immediately at the discretion of the staff of the Commission without further

2   application to the Court.

3                                                 VI.

4        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall

5   return to Theranos, Inc. 18,897,137 Class B common stock shares in Theranos, Inc. within 14

6   days of entry of this Final Judgment.

7                                                 VII.

8        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, after return of her

9   shares as set forth in paragraph VI above, Defendant shall provide written notice to Theranos,

10  Inc. that she elects to convert all shares of Class B common stock shares in Theranos, Inc. to

11  Class A common stock shares in Theranos, Inc. and take all necessary administrative actions

12  to effectuate the conversion of these Class B common stock shares to Class A common stock

13  shares within 28 days of entry of this Final Judgment.

14                                                VIII.

15       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall

16  certify, in writing, compliance with paragraphs VI and VII set forth above.  The certification

17  shall identify the actions, provide written evidence of compliance in the form of a narrative,

18  and be supported by exhibits sufficient to demonstrate compliance.  The Commission staff

19  may make reasonable requests for further evidence of compliance, and Defendant agrees to

20  provide such evidence.  Defendant shall submit the certification and supporting material to

21  Monique C. Winkler, with a copy to the Office of Chief Counsel of the Enforcement Division,

22  no later than thirty (30) days from the date of compliance.

23                                                 IX.

24       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes

25  of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523,

26  the allegations in the complaint are true and admitted by Defendant, and further, any debt for

27  disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under

28

this Final Judgment or any other judgment, order, consent order, decree or settlement

agreement entered in connection with this proceeding, is a debt for the violation by Defendant

of the federal securities laws or any regulation or order issued under such laws, as set forth in

Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

X.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall

retain jurisdiction of this matter for the purposes of enforcing the terms of this Final

Judgment.

Dated: __March 27_____, 2018

_____
UNITED STATES DISTRICT JUDGE

# Exhibit 59

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHERINE TREFZ
(202) 434-5038
ktrefz@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 6, 2020

<u>Via Email</u>

Ms. Vanessa Baehr-Jones, Esquire
Mr. John C. Bostic, Esquire
Mr. Robert Leach, Esquire
Mr. Jeffrey Schenk, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

   Re: United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
     <u>No. CR-18-00258-EJD (N.D. Cal.)</u>

Dear Counsel:

  We write to follow up on our March 12, 2020, letter regarding the government's March 6, 2020 Rule 16(a)(1)(G) disclosures. As we stated in the March 12 letter, the disclosures are plainly deficient, particularly as to percipient witnesses whose testimony may also cover topics and/or opinions that fall within Federal Rule of Evidence 702. Please supplement the disclosure as promptly as possible.

  We reiterate the requests that remain outstanding from our March 12 letter and, based on the subsequent disclosure of additional memoranda and material, make additional requests.

1. Pursuant to Rule 16, *Brady*, *Giglio*, and the Jencks Act, please provide the following with respect to Dr. Master:
  a. All communications of Dr. Master with respect to Theranos, including but not limited to:
    i. Communications between Dr. Master and members of the media, including but not limited to John Carreyrou, producers and journalists of the *The Dropout* podcast, Abigail Tracy of *Vanity Fair*, and Nick Stockton of *Wired*;

WILLIAMS & CONNOLLY LLP

Vanessa Baehr-Jones, Esq., *et al.*
May 6, 2020
Page 2

      ii. Communications between Dr. Master and others regarding the August 2016 AACC presentation and panel with Ms. Holmes (including communications that occurred both before and after that event);

     iii. Communications between Dr. Master and others regarding Theranos' submissions to *Clinical Chemistry*; and

     iv. Communications between Dr. Master and competitors of Theranos, including but not limited to Sonora Quest and LabCorp.

  b. Any contracts between Dr. Master and competitors of Theranos, including but not limited to Sonora Quest and LabCorp.

  c. Any payments by competitors of Theranos, including but not limited to Sonora Quest and LabCorp, to Dr. Master.

2. With respect to the disclosures for Dr. Linnerson:
  a. Please define "problem" and disclose the basis for Dr. Linnerson's opinion that his practice has "never had a problem" with Sonora Quest and LabCorp.

3. With respect to the disclosures for Dr. Zachman:
  a. Please define "problems" and disclose the basis for Dr. Zachman's opinion that she "has never had any other problems with hCG tests."

4. With respect to the disclosures regarding Ms. Embry, and based on the subsequent disclosure of Ms. Embry's Memorandum of Interview:
  a. Please disclose the patients referenced in Ms. Embry's disclosure.
  b. Please disclose the basis for Ms. Embry's opinion that she never experienced any clinical errors with the lab results of Sonora Quest and LabCorp.
  c. Please disclose the time period of the Sonora Quest errors referenced in Ms. Embry's Memorandum of Interview. *See* US-REPORTS-0014802 at 14802-14803.

5. With respect to the disclosures regarding Dr. Szmuc:
  a. Please explain Dr. Szmuc's opinion as to the nature and type of "red flags" that would be indicated by the last two sentences on page 3. For example, will Dr. Szmuc opine that the conditions listed indicate a red flag with respect to the pregnancy or the accuracy of the test?

6. With respect to the disclosures regarding Dr. Asin:
  a. Please disclose definitions for "diabetic tests" and "protein" tests.
  b. The disclosure lists several types of tests as the subject of potential testimony but only provides opinions as to PSA and HIV. Please disclose any opinions Dr. Asin may provide with respect to "diabetic tests" and "protein and calcium tests."
  c. Please disclose the basis for Dr. Asin's qualifications to opine on HIV test results.
  d. Disclose the basis for Dr. Asin's opinion that an "HIV test result showing that it was reactive for HIV 1+2 antibodies, but non-reactive for HIV 1 antibody and HIV 2 antibody, separately, did not make any sense."

WILLIAMS & CONNOLLY LLP

Vanessa Baehr-Jones, Esq., *et al*.
May 6, 2020
Page 3

7.  With respect to the disclosures regarding Dr. Acharya:
    a.  The disclosure indicates that Dr. Acharya "will testify about blood metabolic panel (BMP) tests, and, among other things, the electrolyte analysis and potassium analysis in these tests." Please disclose what "other things" Dr. Acharya may testify to regarding these tests.
    b.  Please define and disclose the basis for Dr. Acharya's opinion that "a BMP test is not complicated."
    c.  Please disclose the patients referenced in Dr. Acharya's disclosure, and the basis for his opinion that the test result was not right.

8.  With respect to the disclosures regarding Dr. Page:
    a.  The disclosure indicates that Dr. Page will testify regarding CBC tests but does not identify any opinions regarding CBC tests. Please disclose any opinions to which Dr. Page will testify regarding CBC.
    b.  Please disclose the basis for Dr. Page's opinion that he experienced a "high quantity of abnormal A1C tests," including his opinion that it was a "high quantity" and his opinion that the tests were "abnormal."

9.  Again, we note that only Dr. Zachman and Dr. Couvaras identified specific patients about whom they may provide testimony, and two others reference unnamed patients. If the other doctor witnesses will provide expert testimony regarding specific patients, including opining as to the test results of any particular patient, please disclose that testimony, including an identification of the patients.

10. None of the disclosures provided in items 2 through 9 in the government's letter identify specific documents that would provide the "bases and reasons for [the] opinions" listed. We have received documents for Dr. Asin. Please confirm that these are the only documents that provide the basis for his opinion. Please disclose any documents for the other fact/percipient witnesses that provide the "bases and reasons for [the] opinions" identified.

Sincerely,

Katie Trefz

cc: Jeff Coopersmith, Esq. (by email)