# Exhibit 59

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHERINE TREFZ
(202) 434-5038
ktrefz@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 6, 2020

<u>Via Email</u>

Ms. Vanessa Baehr-Jones, Esquire
Mr. John C. Bostic, Esquire
Mr. Robert Leach, Esquire
Mr. Jeffrey Schenk, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

> Re:   United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
> <u>No. CR-18-00258-EJD (N.D. Cal.)</u>

Dear Counsel:

We write to follow up on our March 12, 2020, letter regarding the government's March 6, 2020 Rule 16(a)(1)(G) disclosures. As we stated in the March 12 letter, the disclosures are plainly deficient, particularly as to percipient witnesses whose testimony may also cover topics and/or opinions that fall within Federal Rule of Evidence 702. Please supplement the disclosure as promptly as possible.

We reiterate the requests that remain outstanding from our March 12 letter and, based on the subsequent disclosure of additional memoranda and material, make additional requests.

1. Pursuant to Rule 16, *Brady*, *Giglio*, and the Jencks Act, please provide the following with respect to Dr. Master:
   a. All communications of Dr. Master with respect to Theranos, including but not limited to:
      i. Communications between Dr. Master and members of the media, including but not limited to John Carreyrou, producers and journalists of the *The Dropout* podcast, Abigail Tracy of *Vanity Fair*, and Nick Stockton of *Wired*;

WILLIAMS & CONNOLLY LLP

Vanessa Baehr-Jones, Esq., *et al.*
May 6, 2020
Page 2

      ii. Communications between Dr. Master and others regarding the August 2016 AACC presentation and panel with Ms. Holmes (including communications that occurred both before and after that event);

      iii. Communications between Dr. Master and others regarding Theranos' submissions to *Clinical Chemistry*; and

      iv. Communications between Dr. Master and competitors of Theranos, including but not limited to Sonora Quest and LabCorp.

    b. Any contracts between Dr. Master and competitors of Theranos, including but not limited to Sonora Quest and LabCorp.

    c. Any payments by competitors of Theranos, including but not limited to Sonora Quest and LabCorp, to Dr. Master.

2. With respect to the disclosures for Dr. Linnerson:
    a. Please define "problem" and disclose the basis for Dr. Linnerson's opinion that his practice has "never had a problem" with Sonora Quest and LabCorp.

3. With respect to the disclosures for Dr. Zachman:
    a. Please define "problems" and disclose the basis for Dr. Zachman's opinion that she "has never had any other problems with hCG tests."

4. With respect to the disclosures regarding Ms. Embry, and based on the subsequent disclosure of Ms. Embry's Memorandum of Interview:
    a. Please disclose the patients referenced in Ms. Embry's disclosure.
    b. Please disclose the basis for Ms. Embry's opinion that she never experienced any clinical errors with the lab results of Sonora Quest and LabCorp.
    c. Please disclose the time period of the Sonora Quest errors referenced in Ms. Embry's Memorandum of Interview. *See* US-REPORTS-0014802 at 14802-14803.

5. With respect to the disclosures regarding Dr. Szmuc:
    a. Please explain Dr. Szmuc's opinion as to the nature and type of "red flags" that would be indicated by the last two sentences on page 3. For example, will Dr. Szmuc opine that the conditions listed indicate a red flag with respect to the pregnancy or the accuracy of the test?

6. With respect to the disclosures regarding Dr. Asin:
    a. Please disclose definitions for "diabetic tests" and "protein" tests.
    b. The disclosure lists several types of tests as the subject of potential testimony but only provides opinions as to PSA and HIV. Please disclose any opinions Dr. Asin may provide with respect to "diabetic tests" and "protein and calcium tests."
    c. Please disclose the basis for Dr. Asin's qualifications to opine on HIV test results.
    d. Disclose the basis for Dr. Asin's opinion that an "HIV test result showing that it was reactive for HIV 1+2 antibodies, but non-reactive for HIV 1 antibody and HIV 2 antibody, separately, did not make any sense."

WILLIAMS & CONNOLLY LLP

Vanessa Baehr-Jones, Esq., *et al*.
May 6, 2020
Page 3

7. With respect to the disclosures regarding Dr. Acharya:
   a. The disclosure indicates that Dr. Acharya "will testify about blood metabolic panel (BMP) tests, and, among other things, the electrolyte analysis and potassium analysis in these tests." Please disclose what "other things" Dr. Acharya may testify to regarding these tests.
   b. Please define and disclose the basis for Dr. Acharya's opinion that "a BMP test is not complicated."
   c. Please disclose the patients referenced in Dr. Acharya's disclosure, and the basis for his opinion that the test result was not right.

8. With respect to the disclosures regarding Dr. Page:
   a. The disclosure indicates that Dr. Page will testify regarding CBC tests but does not identify any opinions regarding CBC tests. Please disclose any opinions to which Dr. Page will testify regarding CBC.
   b. Please disclose the basis for Dr. Page's opinion that he experienced a "high quantity of abnormal A1C tests," including his opinion that it was a "high quantity" and his opinion that the tests were "abnormal."

9. Again, we note that only Dr. Zachman and Dr. Couvaras identified specific patients about whom they may provide testimony, and two others reference unnamed patients. If the other doctor witnesses will provide expert testimony regarding specific patients, including opining as to the test results of any particular patient, please disclose that testimony, including an identification of the patients.

10. None of the disclosures provided in items 2 through 9 in the government's letter identify specific documents that would provide the "bases and reasons for [the] opinions" listed. We have received documents for Dr. Asin. Please confirm that these are the only documents that provide the basis for his opinion. Please disclose any documents for the other fact/percipient witnesses that provide the "bases and reasons for [the] opinions" identified.

Sincerely,

Katie Trefz

cc: Jeff Coopersmith, Esq. (by email)