# EXHIBIT N



E-SERVICE
59945961
Dec 12 2016
11:40PM
File & ServeXpress

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., A Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 12816-VCL |
| v. | ) ) | |
| THERANOS, INC., a Delaware corporation, ELIZABETH HOLMES, an individual, RAMESH BALWANI, an individual, and DOES 1-10 | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT ELIZABETH HOLMES'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Elizabeth Holmes hereby responds, pursuant to Court of Chancery Rules 26 and 33, to the First Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") served by Plaintiffs Partner Investments, L.P., PFM Healthcare Master Fund, L.P., and PFM Healthcare Principals Fund, L.P. (collectively, "PFM") as follows:

CONFIDENTIAL

CONFIDENTIAL

### GENERAL OBJECTIONS

1.     Holmes incorporates all General Objections made in Theranos, Inc.'s ("Theranos" or the "Company") Responses and Objections to Plaintiffs' First Set of Interrogatories to Theranos.

2.     Holmes incorporates all General Objections and Objections to Definitions and Instructions made in Holmes's Responses and Objections to Plaintiffs' First Request for Production of Documents, served December 12, 2016.

3.     Holmes's responses to the Interrogatories are made without in any way waiving or intending to waive: (a)  any objections as to the competency, relevancy, materiality, privileged status or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories; (b) the right to object on any ground to the information produced in response to the Interrogatories at any hearing or trial; or (c)  the right to object on any ground at any time to a demand for further responses to the Interrogatories.

4.     Holmes objects to the Interrogatories to the extent they purport to require a legal conclusion.

5.     Holmes objects to Instruction B to the extent that it imposes burdens different than or in addition to those imposed by the Rules of the Court of Chancery of the State of Delaware.  Holmes's objections and responses are based solely upon Holmes's present knowledge, information, and belief.  Holmes does

2

not in any way assume a continuing responsibility to update its answers based on information discovered, obtained, or created subsequent to the date of this response except as required pursuant to Court of Chancery Rule 26(e).

6.     In furnishing these responses to the Interrogatories, Holmes does not concede the truth of any factual assertion or implication contained in the Interrogatories.

7.     Holmes reserves the right to supplement, revise, correct, add to, or clarify the objections, answers, or responses set forth herein.  If Holmes identifies responsive information at a future date, she reserves the right at that time to amend her objections, answers, or responses and reserves the right to evaluate whether any privilege applies to such information and to assert such privilege.

## SPECIFIC OBJECTIONS AND RESPONSES

The following specific objections and responses shall be deemed to supplement the General Objections, which are incorporated into each of the specific responses and are not in any way limited by the specific objections and responses:

> **INTERROGATORY NO. 1:** IDENTIFY each PERSON who prepared or assisted in the preparation of the responses to these Interrogatories.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving any General Objections, Holmes responds that she prepared these responses with the assistance of counsel.

PFM-ROGS-00000042

**INTERROGATORY NO. 2:** IDENTIFY each PERSON who may possess documents relevant to the above-captioned action.

**RESPONSE TO INTERROGATORY NO. 2:**

Holmes incorporates by reference the General Objections set forth above. Holmes specifically objects to the phrase "relevant to the above-captioned action" as vague and ambiguous, including insofar as Plaintiffs are likely to understand that term differently than how Defendants would define it. These phrases could, for instance, be construed to require a list of all individuals for whom there is any possibility that he or she possesses documents relevant to Theranos technology, Theranos strategic partnerships, and/or Theranos business in general. Such a request would require listing everyone who has ever been employed by Theranos or everyone employed by third parties who have worked with Theranos, regardless of whether that person has any document relevant to PFM's investment in Theranos. As a result, Holmes additionally objects to this Interrogatory as overbroad, unduly burdensome, and requiring description of information irrelevant and immaterial to the claims or defenses of any party in this litigation.

Subject to and without waiving the foregoing specific and general objections, Holmes states that, to the extent the interrogatory should be construed in its broadest sense, but be limited to Theranos employees, Holmes directs Plaintiffs to Theranos's organizational charts, as anyone on those charts could potentially have (or have had) documents relevant to allegations in the Complaint.

4

**INTERROGATORY NO. 3:** DESCRIBE ANY relationship(s) between YOU and ANY PERSON identified in response to Interrogatory No. 2.

**RESPONSE TO INTERROGATORY NO. 3:**

Holmes incorporates by reference the objections and response to Interrogatory No. 2.

**INTERROGATORY NO. 4:**   DESCRIBE YOUR educational and professional background.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiver of the foregoing general objections, Holmes responds that she studied Chemical and Electrical Engineering at Stanford University from 2002 to 2003.  While at Stanford, Holmes: (1) was awarded the Merck Award, and received funding for the development of a biosensor she invented; (2) completed research as part of a Stanford Chemical Engineering PhD program; and (3) spent the summer of her sophomore year in Singapore, doing research to develop a protein microarray detection system for the SARS virus at the Genome Institute.  Holmes is an inventor or co-inventor on numerous patents. Holmes started Real Time Cures in 2003, which is the predecessor to Theranos.

**INTERROGATORY NO. 5:** DESCRIBE YOUR experience with blood tests or equipment, technologies, and scientific methods related to blood tests prior to YOUR employment at THERANOS.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the General Objections, Holmes objects to this Interrogatory

5

as the terms "blood tests or equipment," "technologies," and "scientific methods" are vague and undefined.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she engaged in engineering work during her time at Stanford University related to biosensors prior to founding Theranos.

> **INTERROGATORY NO. 6:** IDENTIFY ALL email addresses and social media accounts YOU have used since January 1, 2013.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to the General Objections, Holmes objects to this Interrogatory as the term "social media account" is undefined. Holmes interprets "social media account" to mean accounts created by or used by Holmes from January 1, 2013 to the present for the following social media platforms: Facebook, LinkedIn, and Twitter.

Subject to and without waiver of the foregoing specific and general objections, Holmes identifies (1) the following business email address: eholmes@theranos.com; (2) the following personal email addresses: eah03@me.com, eah462@aol.com, eah_2003@live.com; and (3) the following social media account: Twitter - @eholmes2003, SnapChat – Oriansbelt00.

PFM-ROGS-00000045

**INTERROGATORY NO. 7:** DESCRIBE YOUR ownership stake in THERANOS, including without limitation ANY stock options.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the General Objections, Holmes objects to this Interrogatory as the term "ownership stake" is not defined.  Holmes interprets "ownership stake" to mean shares of Theranos stock held by Holmes and any options granted to Holmes.

Subject to and without waiver of the foregoing specific and general objections, Holmes states she holds 250,658,055 shares of Class B Common Stock, approximately 51% of Theranos's outstanding shares.   The Theranos Board of Directors also granted Holmes an additional 39,070,955 restricted stock units.

**INTERROGATORY NO. 8:** STATE the amount of YOUR compensation or other benefit(s) from THERANOS for each year that YOU received ANY compensation or benefit(s).

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiver of the foregoing general objections, Holmes states her salary has been as follows:

| Year | W-2 Wages |
| --- | --- |
| 2010 | $198,994.33 |
| 2011 | $198,939.12 |
| 2012 | $198,853.44 |
| 2013 | $198,826.32 |
| 2014 | $360,229.36 |
| 2015 | $390,182.80 |

7

**INTERROGATORY NO. 9:** IDENTIFY ANY policy of insurance through which YOU are or might be insured in ANY manner for the damages and claims that have arisen in this case.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the General Objections, Holmes objects to this Interrogatory as vague and ambiguous and overly broad and unduly burdensome to the extent it asks Holmes to speculate as to potential insurance coverage for any claims or damages. Holmes further objects to this Interrogatory to the extent it calls for legal conclusions regarding the damages or claims in this case.

Subject to and without waiver of the foregoing specific and general objections, Holmes identifies:

| Insurance Carrier | Policy Number |
|---|---|
| Federal Insurance Company | 82348725 |
| Hiscox Insurance Company | UDA1390606.15 |
| Liberty Insurance Underwriters, Inc. | DOSFAA2M0U002 |
| National Union Fire Insurance Company of Pittsburgh, PA | 025816104 |
| National Union Fire Insurance Company of Pittsburgh, PA | 025828297 |
| Westchester Fire Insurance Company (ACE) | DON525117827002 |

**INTERROGATORY NO. 10:** IDENTIFY each and every PERSON known to YOU who has, or claims to have, ANY knowledge or information CONCERNING ANY of the facts or allegations set forth in the COMPLAINT, and DESCRIBE the subject matter of each PERSON's knowledge or information.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the General Objections, Holmes objects to this Interrogatory

8

on the ground that it seeks information that is protected by the attorney-client privilege and work product doctrine.   Theranos further objects to this Interrogatory on the ground that the instruction to "DESCRIBE the subject matter of each PERSON's knowledge or information" is unduly burdensome, particularly if detailed information is called for and is more easily obtained through other means.

Subject to and without waiving the foregoing specific and general objections, Holmes states that, to the extent the Interrogatory should be construed in its broadest sense, but be limited to Theranos employees, Holmes directs Plaintiffs to its organizational charts, as anyone on those charts could potentially have (or have had) knowledge or information concerning the facts or allegations set forth in the Complaint.

> **INTERROGATORY NO. 11:** IDENTIFY each and every PERSON with whom YOU have had ANY COMMUNICATIONS CONCERNING ANY of the facts or allegations set forth in the COMPLAINT, and DESCRIBE the subject matter of each PERSON's knowledge or information.

**RESPONSE TO INTERROGATORY NO. 11:**

In addition to the General Objections, Holmes objects to this Interrogatory to the extent it purports to request the disclosure of attorney-client privileged communications or attorney work product, or other applicable privileged communication.

Subject to and without waiver of the foregoing specific and general

PFM-ROGS-00000048

objections, Holmes states that she is willing to meet and confer to better understand what is sought and whether there is responsive information that is not privileged and not unduly burdensome to provide.

> **INTERROGATORY NO. 12:** DESCRIBE YOUR role in decisions regarding THERANOS's business model(s), plan(s), or strategy(ies), including but not limited to THERANOS's strategy(ies) for raising capital.

**RESPONSE TO INTERROGATORY NO. 12:**

In addition to the General Objections, Holmes objects to this Interrogatory as vague and ambiguous as "business model(s)," "plan(s)" and strategy(ies)" are not defined terms.   Absent specificity regarding what business model, plan or strategy is the subject of the Interrogatory, Holmes cannot answer with specificity.

Subject to and without waiver of the foregoing specific and general objections, Holmes states that, in her capacity as Founder and Chief Executive Officer of Theranos, she was involved in Theranos's vision, strategy, inventions, and creative pursuits, and Holmes generally attended initial meetings with prospective investors.

> **INTERROGATORY NO. 13:** DESCRIBE the circumstances in which BALWANI's employment with THERANOS ended.

**RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiver of the foregoing general objections, Holmes states that Balwani resigned from Theranos effective July 7, 2016.   Prior to the

PFM-ROGS-00000049

CONFIDENTIAL

date of his resignation, Holmes and Balwani discussed the possibility and timing of

Balwani's resignation and mutually agreed on his transition out of the Company.

> **INTERROGATORY NO. 14:** DESCRIBE the circumstances in which BALWANI's membership on the Board of Directors of THERANOS ended.

**RESPONSE TO INTERROGATORY NO. 14:**

Subject to and without waiver of the foregoing general objections, Holmes

states that Balwani resigned from his position on the Board of Directors of

Theranos, effective as of April 2016.  Prior to the date of his resignation, Holmes

and Balwani discussed the possibility and timing of Balwani's resignation and

mutually agreed on his transition out of the Company.

> **INTERROGATORY NO. 15:** DESCRIBE YOUR role in decisions regarding BALWANI's role as Chief Operating Officer for THERANOS or as a member of the Board of Directors for THERANOS.

**RESPONSE TO INTERROGATORY NO. 15:**

Subject to and without waiver of the foregoing general objections, Holmes

states that she presented Balwani to the Theranos Board of Directors for potential

employment.  The Theranos Board made the decision to add Balwani as a member

of the Board and to hire him as Chief Operating Officer.

PFM-ROGS-00000050

**INTERROGATORY NO. 16:** DESCRIBE YOUR role in PFM's INVESTMENT, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 16:**

In addition to the General Objections, Holmes further objects to this Interrogatory as unduly burdensome to the extent this Interrogatory seeks a recitation of "all" communications with PFM.   Holmes further objects to this Interrogatory to the extent it seeks communications subject to attorney-client privilege or other applicable privilege.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that, at PFM's request, Holmes participated in a meeting with Chris James and Brian Grossman on December 12, 2013.  Holmes received an email from James in mid-to-late December 2013, in which James expressed an interest in investing in Theranos and arranging due diligence.  On January 6, 2013, Grossman sent Holmes and Balwani a list of due diligence questions.  On January 10, 2014, Holmes and Balwani met with Grossman and others from PFM to discuss PFM's due diligence requests.  Holmes signed the February 2014 Stock Purchase Agreement with PFM.

12

PFM-ROGS-00000051

**INTERROGATORY NO. 17:** IDENTIFY ANY THERANOS employee(s), officer(s), or director(s) who, based on YOUR knowledge, had ANY involvement in obtaining PFM's INVESTMENT in THERANOS.

**RESPONSE TO INTERROGATORY NO. 17:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and is without reasonable limitation as to time or scope.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 11 directed to Theranos and refers Plaintiffs to that response.

**INTERROGATORY NO. 18:** DESCRIBE YOUR relationship with PFM after obtaining its INVESTMENT in THERANOS, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related communications.

**RESPONSE TO INTERROGATORY NO. 18:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that the term "relationship" is not defined.  Holmes further objects to this Interrogatory as it purports that Theranos or Holmes were involved in "obtaining" an investment from PFM.  PFM's interest and investment in Theranos were unsolicited.  Holmes further objects to this Interrogatory as overly broad and unduly burdensome in that it seeks "all related

13

communications." Holmes further objects to this Interrogatory as it requests information which is equally available to Plaintiffs and documents and communications within Plaintiffs' possession, custody or control.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she was the CEO and Board Chair of Theranos and PFM was an investor.

> **INTERROGATORY NO. 19:** DESCRIBE YOUR role in selling or potentially selling THERANOS's stock to investors other than PFM.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections, Holmes further objects to this Interrogatory as it does not contain a date limitation and purports to request information relating to all fundraising for Theranos from 2003 through the present. Such broad information can have no relevance to the claims or defenses in this case.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she generally attended initial meetings with prospective investors.

14

PFM-ROGS-00000053

**INTERROGATORY NO. 20:** IDENTIFY and DESCRIBE ANY changes to YOUR social media accounts or profiles since January 1, 2013 CONCERNING ANY of the facts or allegations set forth in the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections, Holmes objects to this Interrogatory as the term "social media account" is undefined.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that the Twitter account identified in response to Interrogatory No. 6 became inactive in December 2015.

**INTERROGATORY NO. 21:** DESCRIBE ANY analyses, empirical studies, testing, or other validation of THERANOS's SAMPLE PROCESSING UNIT, whether performed by YOU or THERANOS or by third parties, or proposed or offered to YOU or THERANOS by third parties, and DESCRIBE YOUR role in such analyses, empirical studies, or other validation.

**RESPONSE TO INTERROGATORY NO. 21:**

In addition to the General Objections, Holmes objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "analyses," "empirical studies," "testing," or "other validation."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 16 directed to Theranos and refers Plaintiffs to that response.  Holmes further responds that she

15

PFM-ROGS-00000054

has not personally performed such tests.

> **INTERROGATORY NO. 22:** DESCRIBE ANY analyses, empirical studies, testing, or other validation of THERANOS's blood tests performed by YOU or THERANOS or by third parties, or proposed or offered to YOU or THERANOS by third parties, and DESCRIBE YOUR role in such analyses, empirical studies, or other validation.

**RESPONSE TO INTERROGATORY NO. 22:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it requests "any" analyses without subject matter or date limitations.  Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "analyses," "empirical studies," "testing," or "other validation."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 17 directed to Theranos and refers Plaintiffs to that response.  Holmes further responds that she has not personally performed such tests.

> **INTERROGATORY NO. 23:** DESCRIBE ANY analyses conducted or relied upon by YOU or THERANOS relating to patterns, frequencies or trends in requested blood tests.

**RESPONSE TO INTERROGATORY NO. 23:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it requests "any" analyses without

16

PFM-ROGS-00000055

CONFIDENTIAL

subject matter or date limitations.  Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "patterns," "frequency" or "trends."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 20 directed to Theranos and refers Plaintiffs to that response.  Holmes further responds that she has not personally performed such analyses.

> **INTERROGATORY NO. 24:** DESCRIBE ANY analyses, empirical studies, testing, or other validation by third parties, or proposed or offered to YOU by third parties, of THERANOS's equipment, technologies, and scientific methods related to blood tests, and DESCRIBE YOUR role in such analyses, empirical studies, or other validation.

**RESPONSE TO INTERROGATORY NO. 24:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it requests "any" analyses without subject matter or date limitations.  Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "analyses," "empirical studies," "testing," or "other validation."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 23 directed to

PFM-ROGS-00000056

Theranos and refers Plaintiffs to that response.   Holmes further responds that she has not personally performed such tests.

> **INTERROGATORY NO. 25:** DESCRIBE YOUR analyses, empirical studies, testing or other validation of THERANOS's equipment, technologies, and scientific methods related to blood tests.

**RESPONSE TO INTERROGATORY NO. 25:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it requests analyses without subject matter or date limitations.  Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "analyses," "empirical studies," "testing," or "other validation."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 24 directed to Theranos and refers Plaintiffs to that response.  Holmes further responds that she has not personally performed such tests.

PFM-ROGS-00000057

**INTERROGATORY NO. 26:** IDENTIFY ANY THERANOS current or former employee(s) who communicated to YOU ANY concerns, grievances, objections, doubts, or criticisms CONCERNING ANY of the facts or allegations set forth in the COMPLAINT, including without limitation: YOUR COMMUNICATIONS with THERANOS investors; the number and proportion of blood tests on THERANOS's Direct Testing Menu that utilized CAPILLARY BLOOD SAMPLES; the extent to which THERANOS used non-proprietary or commercially available equipment to perform blood tests; the status and nature of THERANOS's submissions to and correspondence with the FDA; and THERANOS's relationships with retail stores or pharmacies, hospitals, and physicians or physician practices.

**RESPONSE TO INTERROGATORY NO. 26:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it requests information without any date parameter regarding numerous topics that have no relation to the claims or defenses at issue in this case. Holmes further objects to this Interrogatory as vague and ambiguous as the terms "concerns, grievances, objections, doubts, or criticisms" are not defined.

Subject to and without waiver of the foregoing specific and general objections, pursuant to Court of Chancery Rule 33(d), Holmes responds by referring Plaintiffs to Defendants' forthcoming production. Holmes agrees to supplement her response to this Interrogatory to identify specific documents pursuant to Rule 33(d) following document production in this action.

PFM-ROGS-00000058

**INTERROGATORY NO. 27:** For ANY THERANOS current or former employee(s) identified in response to Interrogatory No. 26, DESCRIBE the concerns, grievances, objections, doubts, or criticisms that were raised.

**RESPONSE TO INTERROGATORY NO. 27:**

In addition to the General Objections, Holmes incorporates her response and objections to Interrogatory No. 26, as if fully stated herein.

Subject to and without waiver of the foregoing specific and general objections, pursuant to Court of Chancery Rule 33(d), Holmes responds by referring Plaintiffs to Defendants' forthcoming production. Holmes agrees to supplement her response to this Interrogatory to identify specific documents pursuant to Rule 33(d) following document production in this action.

**INTERROGATORY NO. 28:** IDENTIFY ANY THERANOS former employee(s) who resigned or were terminated after communicating to YOU a complaint, concern, grievance, objection, doubt, or criticism CONCERNING ANY of the facts or allegations set forth in the COMPLAINT, including without limitation those listed in Interrogatory No. 26.

**RESPONSE TO INTERROGATORY NO. 28:**

In addition to the General Objections, Holmes objects to this Interrogatory as vague and ambiguous as the terms "concerns, grievances, objections, doubts, or criticisms" are not defined. Holmes specifically objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome and that it exceeds the scope of permissible discovery because the information that is requested has no

20

connection to PFM's investment in Theranos. Holmes further objects that the Interrogatory is vague and ambiguous as to the meaning of the term "after;" Holmes does not construe the Interrogatory to suggest that a causal connection is required. Holmes objects to this Interrogatory to the extent it calls for information that is protected by the attorney-client privilege.

Subject to and without waiver of the foregoing specific and general objections, pursuant to Court of Chancery Rule 33(d), Holmes responds by referring Plaintiffs to Defendants' forthcoming production. Holmes agrees to supplement her response to this Interrogatory to identify specific documents pursuant to Rule 33(d) following document production in this action.

> **INTERROGATORY NO. 29:** DESCRIBE YOUR interactions with the FDA, whether on behalf of YOURSELF or THERANOS, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 29:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it does not contain a date restriction and purportedly seeks a description of all communications with the FDA by Holmes or Theranos over more than a decade.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that as Chief Executive Officer of Theranos, Holmes

PFM-ROGS-00000060

has had numerous interactions with the FDA over the past approximately ten years. For further detailed information pertaining to Theranos's communications with FDA, Holmes refers Plaintiffs to Theranos's response to Plaintiffs' Interrogatories Nos. 30 and 31 directed to Theranos.

> **INTERROGATORY NO. 30:** DESCRIBE YOUR interactions with CMS, whether on behalf of YOURSELF or THERANOS, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 30:**

In addition to the General Objections, Holmes objects to this Interrogatory as overly broad and unduly burdensome in that it does not contain a date restriction and purportedly seeks a description of all communications with CMS by Holmes or Theranos over more than a decade.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she had several conversations with CMS beginning in the end of 2015.  For further detailed information pertaining to Theranos' interactions with CMS, Holmes refers Plaintiffs to Theranos's response to Plaintiffs' Interrogatory No. 33 directed to Theranos.

PFM-ROGS-00000061

**INTERROGATORY NO. 31:** DESCRIBE YOUR role in THERANOS's partnerships or potential partnerships with WALGREENS, ALBERTSONS, Safeway, Duane Reade, CVS, WAL-MART, and ANY other retail or pharmacy company THERANOS partnered with or sought to partner with, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 31:**

In addition to the General Objections, Holmes objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in that it requests "all" communications and information regarding numerous communications over many years not limited to Holmes's interactions.  Holmes further objects on the grounds that the terms "partnership" and "potential partnerships" are not defined.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that, that as Chief Executive Officer of Theranos, Holmes was involved in communications with Walgreens, Albertsons, Safeway, CVS and Wal-Mart.  For further detailed information pertaining to those partnerships and potential partnerships, Holmes refers Plaintiffs to Theranos's response and objections to Plaintiffs' Interrogatory Nos. 37 and 38 directed to Theranos.

23

PFM-ROGS-00000062

**INTERROGATORY NO. 32:** DESCRIBE YOUR role in THERANOS's partnerships or potential partnerships with INTERMOUNTAIN HEALTHCARE, UNITEDHEALTH GROUP, DIGNITY HEALTH, and ANY other hospital or healthcare provider THERANOS partnered with or sought to partner with, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 32:**

In addition to the General Objections, Holmes objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in that it requests "all" communications and information regarding numerous communications over many years not limited to Holmes's interactions. Holmes further objects on the grounds that the terms "partnership" and "potential partnerships" are not defined.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that, as Chief Executive Officer of Theranos, Holmes was involved in communications with these potential partners.

**INTERROGATORY NO. 33:** DESCRIBE YOUR role in THERANOS's partnerships or potential partnerships with ANY physicians or physicians' practices THERANOS partnered with or sought to partner with, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 33:**

In addition to the General Objections, Holmes objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in that it requests

PFM-ROGS-00000063

"all" communications and information regarding numerous communications over many years not limited to Holmes's interactions.  Holmes further objects on the grounds that the terms "partnership" and "potential partnerships" are not defined.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she was not involved in communications with physicians or physicians' practices regarding partnerships, but Holmes attended two Theranos town hall meetings in Arizona hosted for physicians pertaining to Theranos.

> **INTERROGATORY NO. 34:** DESCRIBE YOUR role in THERANOS's integration or potential integration with providers of Electronic Medical Records software, including without limitation meeting(s) YOU attended, materials YOU prepared or that were prepared for YOU, phone calls in which YOU participated, and ALL related COMMUNICATIONS.

**RESPONSE TO INTERROGATORY NO. 34:**

In addition to the General Objections, Holmes objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome in that it requests "all" communications and information regarding numerous EMR integration.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she was not involved in Theranos's integration or potential integration with providers of Electronic Medical Records software.

PFM-ROGS-00000064

**INTERROGATORY NO. 35:** DESCRIBE the reason(s) that THERANOS stopped using its nanotainer for blood tests other than the HSV-1 test and DESCRIBE YOUR role in the decision to stop using the nanotainer.

**RESPONSE TO INTERROGATORY NO. 35:**

In addition to the General Objections, Holmes objects to this Interrogatory on the grounds that it is vague and ambiguous as "nanotainer" is not a defined term and erroneously assumes that there was one "nanotainer."

Subject to and without waiver of the foregoing specific and general objections, Holmes does not have information in response to this request beyond what is provided in Theranos's response to Plaintiffs' Interrogatory No. 36 directed to Theranos and refers Plaintiffs to that response.

**INTERROGATORY NO. 36:** IDENTIFY ANY DOCUMENT CONCERNING PFM or the allegations in the COMPLAINT that was at one time in YOUR possession, custody, or control, but has been lost, discarded, deleted, or destroyed, including its date, author, subject matter, contents, date on which the document was discarded, deleted, or destroyed, and by whom, and for what reason.

**RESPONSE TO INTERROGATORY NO. 36:**

Subject to and without waiver of the foregoing general objections, Holmes is not aware of any documents concerning PFM or allegations in the Complaint that was at one time in Holmes's possession, custody or control but has been lost, discarded, deleted or destroyed.

26

PFM-ROGS-00000065

**INTERROGATORY NO. 37:** IDENTIFY and DESCRIBE each and every factual or legal basis that YOU maintain supports ANY defense YOU have asserted or will assert in response to the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 37:**

Subject to and without waiver of the general objections, Holmes states that she is willing to meet and confer with Plaintiffs regarding the appropriate timing and content of pretrial disclosures and briefing.

**INTERROGATORY NO. 38:** IDENTIFY all DOCUMENTS that YOU intend to introduce or rely upon at ANY hearing or trial in this case.

**RESPONSE TO INTERROGATORY NO. 38:**

Subject to and without waiver of the general objections, Holmes states that she is willing to meet and confer with Plaintiffs regarding the appropriate timing and content of pretrial disclosures and briefing.

**INTERROGATORY NO. 39:** IDENTIFY each and every PERSON whose testimony YOU intend to introduce or whom YOU expect to call at ANY hearing or trial in this case, describe the subject(s) about which that person will testify, and give a summary of his or her expected testimony.

**RESPONSE TO INTERROGATORY NO. 39:**

Subject to and without waiver of the general objections, Holmes states that she is willing to meet and confer with Plaintiffs regarding the appropriate timing and content of pretrial disclosures and briefing.

27

PFM-ROGS-00000066

**INTERROGATORY NO. 40:** IDENTIFY each and every PERSON whose testimony YOU intend to introduce or whom YOU expect to call as an expert witness at ANY hearing or trial in this case, describe the subject(s) about which that person will testify, and give a summary of his or her expected testimony.

**RESPONSE TO INTERROGATORY NO. 40:**

Subject to and without waiver of the general objections, Holmes states that she is willing to meet and confer with Plaintiffs regarding the appropriate timing and content of pretrial disclosures and briefing.

AS TO OBJECTIONS:

OF COUNSEL:

Stephen C. Neal
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304
(650) 843-5000

Kathleen Goodhart
Cooley LLP
101 California Street, 5th Floor
San Francisco, California 94111
(415) 693-2012

*/s/ Catherine G. Dearlove*
Gregory P. Williams (#2168)
Catherine G. Dearlove (#3328)
Kevin M. Gallagher (#5337)
Sarah A. Galetta (#6157)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendant Elizabeth Holmes*

Dated:  December 12, 2016

28

PFM-ROGS-00000067

STATE OF CALIFORNIA              :
                                           : SS:
COUNTY OF SANTA CLARA        :

I, Elizabeth Holmes, declare:

1.     I have read the foregoing Defendant Elizabeth Holmes's Objections and Responses to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

2.     Said responses and objections were prepared with the assistance of counsel, upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

3.     I declare under penalty of perjury and pursuant to the laws of the United States, the State of Delaware and the State of California that the foregoing is true and correct.

Dated this 12th day of December, 2016

                                                       _____
                                                     Elizabeth Holmes

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 12th day of _December_____, 2016, by Elizabeth Holmes.

_____
Notary Public
My Commission Expires: _12/21/2019_



                      TIFFANY M. L. CHASE
                      COMM. # 2135154
                      NOTARY PUBLIC - CALIFORNIA
                      SANTA CLARA COUNTY
                      My Comm. Expires Dec. 21, 2019