# EXHIBIT Q

E-SERVICE
60144375
Jan 31 2017
11:47PM
File & ServeXpress

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., A Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership, | C.A. No. 12816-VCL |
| Plaintiffs, | |
| v. | |
| THERANOS, INC., a Delaware corporation, ELIZABETH HOLMES, an individual, and RAMESH BALWANI, an individual, and DOES 1-10 | |
| Defendants. | |

**DEFENDANT THERANOS, INC.'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Court of Chancery Rules 26 and 33, Defendant Theranos, Inc. ("Theranos" or the "Company") hereby submits the following supplemental responses and objections to Plaintiffs' First Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

## GENERAL OBJECTIONS

Theranos makes the following General Objections to the Interrogatories and incorporates them by reference into its response to each Interrogatory below as though fully set forth therein.

1. Theranos incorporates all General Objections and Objections to Definitions and Instructions made in Theranos's Responses and Objections to Plaintiffs' First, Second, and Third Requests for Production of Documents.

2. Theranos's responses to the Interrogatories are made without in any way waiving or intending to waive:

a. any objections as to the competency, relevancy, materiality, privileged status or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories;

b. the right to object on any ground to the information produced in response to the Interrogatories at any hearing or trial; or

c. the right to object on any ground at any time to a demand for further responses to the Interrogatories.

3. Theranos objects to the Interrogatories to the extent they purport to require a legal conclusion.

4. Theranos objects to Instruction B to the extent that it imposes burdens different than or in addition to those imposed by the Rules of the Court of Chancery of the State of Delaware. Theranos's objections and responses are based solely upon Theranos's present knowledge, information, and belief. Theranos does not in any way assume a continuing responsibility to update its answers based on

information discovered, obtained, or created subsequent to the date of this response except as required pursuant to Court of Chancery Rule 26(e).

5. In furnishing these responses to the Interrogatories, Theranos does not concede the truth of any factual assertion or implication contained in the Interrogatories.

6. Theranos reserves the right to supplement, revise, correct, add to, or clarify the objections, answers, or responses set forth herein. If Theranos identifies responsive information at a future date, it reserves the right at that time to amend its objections, answers, or responses and reserves the right to evaluate whether any privilege applies to such information and to assert such privilege.

**PRELIMINARY SUPPLEMENTAL STATEMENTS**

Per the agreement of the parties (*see* Perla email to Chan dated January 19, 2017), Theranos hereby provides updated information related to individuals identified in Theranos' initial responses to Plaintiffs' First Set of Interrogatories. This information is attached as Exhibit A. Theranos also attaches as Exhibit B a "Table In Response to Personnel Identification Interrogatories," which was provided to Plaintiffs by letter on December 23, 2016.

The responses set forth herein provide supplemental information in response to Interrogatory Nos. 11-13, 15-31, 33-34, and 45. Theranos incorporates its prior objections to each of these Interrogatories as if set forth fully herein. Moreover,

the responses set forth herein do not provide supplemental information in response to Interrogatory Nos. 1-10, 14, 32, 35-44, and 46-52. Theranos' responses to those interrogatories, as served on December 12, 2016, are incorporated by reference as if set forth fully herein, and remain unchanged.

## SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES

> REQUEST NO. 11: IDENTIFY ALL current or former THERANOS officers, employees, or members of THERANOS's Board of Directors, Board of Consultants, and Scientific and Medical Advisory Board who were involved in or had knowledge of PFM's INVESTMENT or the valuation of PFM's INVESTMENT, including but not limited to anyone who prepared, assisted in preparing, collected, or reviewed materials or information provided to PFM. For each person so identified:
>
> (a) STATE the date(s) of the PERSON's involvement;
>
> (b) STATE the PERSON's title at the time of his or her involvement; and
>
> (c) DESCRIBE the role(s) the PERSON played in PFM's INVESTMENT.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:

Theranos provides the following supplemental responses per the agreement of the parties (*see* Chan letter to Perla dated January 13, 2017):

By way of further response, Theranos states that the following individuals, aside from counsel, were involved in creating the "Confidential Slide Deck" that was provided to Plaintiffs: Sunny Balwani, Jeffrey Blickman, Dan Edlin, Christian Holmes, Elizabeth Holmes, and Daniel Young. Theranos also worked with



**Confidential**

personnel at Chiat Day, a creative agency, including Carisa Bianchi and Patrick O'Neill before they joined Theranos as employees.

By way of further response, Theranos states that the following individuals were involved in creating and/or preparing the scientific data and/or information, including the correlation graphs, that was reflected on various pages included in the "Confidential Slide Deck" that was provided to Plaintiffs: Theranos refers to and incorporates its response to Interrogatory No. 72. Theranos further states that information Theranos obtained from Walgreens is reflected on various pages included in the "Confidential Slide Deck" that was provided to Plaintiffs. Theranos also refers to its responses to Interrogatory Nos. 59 and 60 to identify the sources of additional information that is reflected on various pages included in the "Confidential Slide Deck."

By way of further response, Theranos states that the following individuals were involved in creating the financial model provided to Plaintiffs: Theranos refers to and incorporates its response to Interrogatory No. 73.

By way of further response, Theranos states the following individuals, aside from counsel, were involved in setting the price of the shares sold to Plaintiffs and participated in the decision to sell the shares to Plaintiffs at that price of $17 per share: Sunny Balwani, Elizabeth Holmes, Henry A. Kissinger, Richard M.

Kovacevich, James N. Mattis, Samuel Nunn, William Perry, Gary Roughead, and George P. Shultz.

> REQUEST NO. 12: IDENTIFY ALL current or former THERANOS officers, employees, or members of THERANOS's Board of Directors, Board of consultants, and scientific and medical advisory board who participated in selling or potentially selling THERANOS's stock to investors other than PFM. For each person so identified:
>
> (a) state the date(s) of the PERSON's participation;
>
> (b) states the PERSON's title at the time of his or her participation;
>
> (c) described the role(s) the PERSON played in selling or potentially selling THERANOS's stock; and
>
> (d) IDENTIFY the investor or potential investor.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:

By way of further response, Theranos provides the following chart per the agreement of the parties (*see* Chan letter to Perla dated January 18, 2017):

| **Employee/Custodian** | **Title** | **Role** |
|---|---|---|
| Sunny Balwani | Chief Operating Officer (Former) | Communicated with potential investors/investors. |
| Jeffrey Blickman | Director, Business Analytics | Assisted in the preparation of materials for potential investors/investors and communicated with potential investors/investors; assisted with setting up demonstrations for potential investors/investors. |
| Lisa Durkin | Assistant to Chief Executive Officer | Assisted in scheduling meetings with potential investors/investors. |

| **Employee/Custodian** | **Title** | **Role** |
|---|---|---|
| Dan Edlin | Lead, Strategic Operations, Office of the Chief Executive Officer (Former) | Assisted in the preparation of materials for potential investors/investors and communicated with potential investors/investors; assisted with setting up demonstrations for potential investors/investors. |
| Max Fosque | Senior Software Product Manager | Assisted in demonstrations for potential investors/investors. |
| Christian Holmes | Senior Director of Commercial Operations | Communicated with potential investors/investors; assisted with setting up demonstrations for potential investors/investors. |
| Elizabeth Holmes | Chief Executive Officer | Communicated with potential investors/investors. |
| Diana Lee | Assistant to Chief Executive Officer, Assistant to Chief Operating Officer (Former) | Assisted in scheduling meetings with potential investors/investors. |
| Danise Yam | Corporate Controller (Former) | Prepared financial documents and signature pages related to investments. |
| Daniel Young | Vice president of Theranos Systems and Computational Biosciences | Assisted in technology demonstrations for potential investors/investors. |

<u>REQUEST NO. 13:</u> IDENTIFY ALL PERSONS who have purchased THERANOS's stock. For each PERSON so identified:

(a) STATE the type of stock that was purchased;

(b) STATE the date(s) of purchase of the stock;

(c) STATE the number of shares of stock purchased;



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959033

(d) STATE the price for which the shares of stock were purchased; and

(e) STATE whether the shares of stock have been redeemed, and if so, the amount of stock redeemed, the price at which the stock was redeemed, the date(s) on which the stock was redeemed, and ALL current or former THERANOS officers, employees, or members of THERANOS's Board of Directors, Board of Consultants, and Scientific and Medical Advisory Board who participated in such redemption.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

By way of further response, and pursuant to Court of Chancery Rule 33(d), Theranos refers to Plaintiffs' request for a capitalization table, which is located in Theranos' document productions at THPFM0005683274. Theranos also provides the following per the agreement of the parties (*see* Chan letter to Perla dated January 18, 2017):

| Payment date or deadline | Series | Price per share | Total # of shares | Total proceeds |
|---|---|---|---|---|
| **1/15/2015** | Series B Preferred stock | $15.00 | 28,000 | $420,000.00 |
| **4/7/2015** | Series B Preferred stock | $15.00 | 170,000 | $2,550,000.00 |
| **7/2/2015** | Common stock Class A | $16.00 | 35,090 | $561,440.00 |
| **7/2/2015** | Series B Preferred stock | $16.00 | 8,660 | $138,560.00 |
| **7/21/2015** | Series B Preferred stock | $14.00 | 265,655 | $3,719,170.00 |
| **7/25/2015** | Series B Preferred stock | $14.00 | 153,919 | $2,154,866.00 |
| **7/31/2015** | Series B Preferred stock | $17.00 | 42,469 | $721,973.00 |

| Payment date or deadline | Series | Price per share | Total # of shares | Total proceeds |
|---|---|---|---|---|
| **7/31/2015** | Series C Preferred stock | $17.00 | 86,060 | $1,463,020.00 |
| **8/7/2015** | Common stock Class A | $14.75 | 626,375 | $9,239,031.25 |
| **9/15/2015** | Series A Preferred stock | $14.00 | 136,000 | $1,904,000.00 |
| **9/22/2015** | Series C Preferred stock | $16.00 | 360,000 | $5,760,000.00 |

REQUEST NO. 15: IDENTIFY each version or iteration of THERANOS's SAMPLE PROCESSING UNIT, beginning January 1, 2013. For each version or iteration so identified:

(a) STATE the date(s) THERANOS began using the SAMPLE PROCESSING UNIT to process blood tests for THERANOS's commercial testing center patients;

(b) IDENTIFY the blood test(s) on THERANOS's Direct Testing Menu that THERANOS ran on the SAMPLE PROCESSING UNIT;

(c) IDENTIFY the THERANOS laboratory location(s) in which the SAMPLE PROCESSING UNIT was located; and

(d) STATE the date(s) THERANOS stopped using the SAMPLE PROCESSING UNIT to process blood tests for THERANOS's commercial testing center patients.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:

By way of further response, Theranos states: The version 3.5 of the SPU is the only version of the SPU used since January 1, 2013 to process blood tests for commercial testing center patients.

By way of further response, Theranos identifies all other iterations of the SPU since January 1, 2013 as follows:

- 3.0 (used for ELISA assay development and studies with third-party partners);
- 4.0 (used for assay development);
- Mini Lab tower (used for assay development);
- 4.s (used for assay development; the HSV-1 assay, for which Theranos received 510(k) clearance from FDA, as well as the Ebola Zaire assay, for which Theranos filed a pre-Emergency Use Authorization submission to FDA, were also validated on the 4.s); and
- 4.1 Mini Lab, including "Lite," "Full," and "TC" versions (used for assay development; the Zika assay, for which Theranos filed a pre-Emergency Use Authorization submission to FDA, was also validated on the 4.1 Mini Lab).

> REQUEST NO. 16: DESCRIBE ANY analyses, empirical studies, testing, or other validation of YOUR SAMPLE PROCESSING UNIT, whether performed by YOU or by third parties or proposed or offered to YOU by third parties, and IDENTIFY YOUR employees or former employees involved in such analyses, empirical studies, or other validation.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:

By way of further response and pursuant to Court of Chancery Rule 33(d), Theranos directs Plaintiffs to the development reports, validation plans, validation reports, and related business records pertaining to development and validation testing of assays on the TSPU that have been produced in this action. These are located at THPFM0005687393–THPFM0005694497; THPFM0005696531–

THPFM0005697044; THPFM0005697516–THPFM0005697596; THPFM0005697699–THPFM0005697904; THPFM0005698463–THPFM0005698807; and THPFM0005699307–THPFM0005699648. Theranos additionally directs Plaintiffs to business records pertaining to Theranos' 510(k) submission for its HSV-1 assay, pre-Emergency Use Authorization submissions to FDA for its Ebola Zaire and Zika assays on the TSPU, and additional filings to FDA that have been produced in this action and are located at THPFM0005750323–THPFM0005751353; THPFM0005751750–THPFM0005751908; and THPFM0005751986–THPFM0005753209.

Theranos further directs Plaintiffs to business records pertaining to work performed in coordination between Theranos and third-party partners, including studies of blood tests on the TSPU, that have been produced in this action. These are located at THPFM0000028550–THPFM0000028552; THPFM0000032450–THPFM0000032450; THPFM0000071866–THPFM0000071871; THPFM0000293055–THPFM0000293072; THPFM0000690926–THPFM0000690934; THPFM0000690959–THPFM0000690970; THPFM0000690991–THPFM0000690998; THPFM0000691145–THPFM0000691159; THPFM0000691242–THPFM0000691248; THPFM0000691401–THPFM0000691403; THPFM0000691406–THPFM0000691406; THPFM0000691421–THPFM0000691422;

THPFM0000691484–THPFM0000691496; THPFM0000691517–THPFM0000691532; THPFM0000691936–THPFM0000691937; THPFM0000692119–THPFM0000692120; THPFM0000692167–THPFM0000692173; THPFM0000692419–THPFM0000692420; THPFM0000813063–THPFM0000813063; THPFM0000813067–THPFM0000813068; THPFM0000813071–THPFM0000813074; THPFM0000813104–THPFM0000813111; THPFM0000813234–THPFM0000813235; THPFM0000813237–THPFM0000813237; THPFM0000821474–THPFM0000821478; THPFM0000870915–THPFM0000870915; THPFM0000871059–THPFM0000871059; THPFM0000881410–THPFM0000881414; THPFM0000886503–THPFM0000886504; THPFM0000886928–THPFM0000886929; THPFM0001679311–THPFM0001679336; THPFM0002250584–THPFM0002250584; THPFM0002250594–THPFM0002250594; THPFM0002257019–THPFM0002257025; THPFM0002257033–THPFM0002257033; THPFM0002367177–THPFM0002367177; THPFM0002367649–THPFM0002367652; THPFM0002367655–THPFM0002367665; THPFM0002367668–THPFM0002367687; THPFM0002368292–THPFM0002368295; THPFM0002368297–THPFM0002368298; THPFM0002410761–THPFM0002410763;

THPFM0003776388–THPFM0003776402; THPFM0003783222–THPFM0003783227; THPFM0003826215–THPFM0003826217; THPFM0003864569–THPFM0003864569; THPFM0004510593–THPFM0004510608; THPFM0005420195–THPFM0005420201; THPFM0005466112–THPFM0005466292; THPFM0005466296–THPFM0005466379; THPFM0005468784–THPFM0005468882; THPFM0005480140–THPFM0005480160; THPFM0005481042–THPFM0005481049; THPFM0005487396–THPFM0005487399; THPFM0005487481–THPFM0005487494; THPFM0005487605–THPFM0005487608; THPFM0005487626–THPFM0005487628; THPFM0005487637–THPFM0005487639; THPFM0005497136–THPFM0005497139; THPFM0005499322–THPFM0005499326; THPFM0005545343–THPFM0005545348; THPFM0005545351–THPFM0005545428; THPFM0005620882–THPFM0005620885; THPFM0005638605–THPFM0005638662; THPFM0005643489–THPFM0005643518; THPFM0005654975–THPFM0005683273; and THPFM0005761456–THPFM0005761484.

Also by way of further response, Theranos provides the following additional information regarding document custodians identified in the Company's original response to Interrogatory No. 16:

| Name | Title | Description of Role |
| --- | --- | --- |
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal is a chemical engineer who has managed Theranos' Systems Integration team, which is responsible for integration of Theranos' hardware, software, and chemistry onto the TSPU. |
| Anthony Nugent | Vice President, Product Development (Former) | Mr. Nugent is an engineer who is listed as a co-inventor with Ms. Holmes on several patent applications. Mr. Nugent was involved in the development of the 3.0 version of the TSPU. |
| Timothy Smith | Vice President, Theranos Systems (Former) | Mr. Smith is a mechanical engineer who was involved with integration of hardware components onto the TSPU. |
| Jim Twitchell | Director of Quality, Theranos Systems (Former) | Mr. Twitchell joined Theranos in September 2014 and was responsible for overseeing the Company's quality system for Theranos proprietary hardware, consumables, disposables, and software. |

REQUEST NO. 17: DESCRIBE ANY analyses, empirical studies, testing, or other validation of YOUR blood tests performed by YOU or by third parties, or proposed or offered to YOU by third parties, and IDENTIFY YOUR employees or former employees involved in such analyses, empirical studies, or other validation.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:

By way of further response, Theranos states that its validation testing for the Company's laboratory developed tests was designed to demonstrate, establish, assess, and/or determine assay characteristics including calibration, precision, comparability of Theranos and predicate methods, linearity of measurement over

the analytical measurement range, reference interval, analytical sensitivity, analytical specificity, and stability of samples and reagents, as relevant to a given laboratory developed test. Theranos' internal development studies for its blood tests were designed to demonstrate, establish, assess, and/or determine similar assay characteristics, as well as to establish the efficacy of Theranos' proprietary chemistries underlying the assays.

Theranos further directs Plaintiffs, pursuant to Court of Chancery Rule 33(d), to validation reports, validation plans, development reports, business records pertaining to various filings to FDA, and other business records pertaining to Theranos' validation of laboratory developed tests and development of assays that have been produced in this action. These are located at THPFM0005687393–THPFM0005694497; THPFM0005694630–THPFM0005696422; THPFM0005696531–THPFM0005698807; THPFM0005698811–THPFM0005699177; THPFM0005699299–THPFM0005699648; THPFM0005699651–THPFM0005699696; THPFM0005699700–THPFM0005699833; THPFM0005699836–THPFM0005700093; THPFM0005700096–THPFM0005700419; THPFM0005700421–THPFM0005700803; THPFM0005700805–THPFM0005701164; THPFM0005701175–THPFM0005701656; THPFM0005701658–THPFM0005702246; THPFM0005702250–THPFM0005702396;

THPFM0005702400–THPFM0005702852; THPFM0005702855–THPFM0005702995; THPFM0005703984–THPFM0005704380; THPFM0005704384–THPFM0005710106; THPFM0005750323–THPFM0005751353; and THPFM0005751366–THPFM0005753209. Theranos further directs Plaintiffs to business records pertaining to work performed in coordination between Theranos and third-party partners, including studies involving Theranos' proprietary blood tests, that have been produced in this action. These are located at THPFM0000028550–THPFM0000028552; THPFM0000032450–THPFM0000032450; THPFM0000071866–THPFM0000071871; THPFM0000293055–THPFM0000293072; THPFM0000690926–THPFM0000690934; THPFM0000690959–THPFM0000690970; THPFM0000690991–THPFM0000690998; THPFM0000691145–THPFM0000691159; THPFM0000691242–THPFM0000691248; THPFM0000691401–THPFM0000691403; THPFM0000691406–THPFM0000691406; THPFM0000691421–THPFM0000691422; THPFM0000691484–THPFM0000691496; THPFM0000691517–THPFM0000691532; THPFM0000691936–THPFM0000691937; THPFM0000692119–THPFM0000692120; THPFM0000692167–THPFM0000692173; THPFM0000692419–THPFM0000692420; THPFM0000813063–THPFM0000813063;



FOIA Confidential Treatment Requested by Theranos TS-0959042

THPFM0000813067–THPFM0000813068; THPFM0000813071–THPFM0000813074; THPFM0000813104–THPFM0000813111; THPFM0000813234–THPFM0000813235; THPFM0000813237–THPFM0000813237; THPFM0000821474–THPFM0000821478; THPFM0000870915–THPFM0000870915; THPFM0000871059–THPFM0000871059; THPFM0000881410–THPFM0000881414; THPFM0000886503–THPFM0000886504; THPFM0000886928–THPFM0000886929; THPFM0001679311–THPFM0001679336; THPFM0002250584–THPFM0002250584; THPFM0002250594–THPFM0002250594; THPFM0002257019–THPFM0002257025; THPFM0002257033–THPFM0002257033; THPFM0002367177–THPFM0002367177; THPFM0002367649–THPFM0002367652; THPFM0002367655–THPFM0002367665; THPFM0002367668–THPFM0002367687; THPFM0002368292–THPFM0002368295; THPFM0002368297–THPFM0002368298; THPFM0002410761–THPFM0002410763; THPFM0003776388–THPFM0003776402; THPFM0003783222–THPFM0003783227; THPFM0003826215–THPFM0003826217; THPFM0003864569–THPFM0003864569; THPFM0004510593–THPFM0004510608; THPFM0005420195–THPFM0005420201; THPFM0005466112–THPFM0005466292;

THPFM0005466296–THPFM0005466379; THPFM0005468784–THPFM0005468882; THPFM0005480140–THPFM0005480160; THPFM0005481042–THPFM0005481049; THPFM0005487396–THPFM0005487399; THPFM0005487481–THPFM0005487494; THPFM0005487605–THPFM0005487608; THPFM0005487626–THPFM0005487628; THPFM0005487637–THPFM0005487639; THPFM0005497136–THPFM0005497139; THPFM0005499322–THPFM0005499326; THPFM0005545343–THPFM0005545348; THPFM0005545351–THPFM0005545428; THPFM0005620882–THPFM0005620885; THPFM0005638605–THPFM0005638662; THPFM0005643489–THPFM0005643518; THPFM0005654975–THPFM0005683273; and THPFM0005761456–THPFM0005761484.

By way of further response, Theranos provides the following additional information regarding the document custodians identified in the Company's original response to Interrogatory No. 17:

| Name | Title | Description of Role |
|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani received updates from assay team leaders regarding the status of assay validation before deployment of the assays in Theranos' clinical laboratory. |

| Name | Title | Description of Role |
|---|---|---|
| Surekha Gangakhedkar | Manager, Assay Systems (Former) | Ms. Gangakhedkar led a team of scientists in the development and validation of Theranos' ELISA assays. |
| Arnold Gelb | Laboratory Director (CA) (Former) | Dr. Gelb served as Theranos' clinical laboratory director and drafted standard operating procedures for assay validation. |
| Mark Pandori | Laboratory Director (Former) | Dr. Pandori participated in development of Theranos' Nucleic Acid Amplification (TNAA) assays. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar led teams of scientists working to develop and validate Theranos' ELISA and Cytometry assays. |
| Paul Patel | Director, Assay Development (Former) | Dr. Patel led a team of scientists working to develop and validate Theranos' General Chemistry assays. |
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff reviewed and approved the validation of laboratory developed tests before their use in Theranos' clinical laboratory. |
| Sharada Sivaraman | Director, Assay Systems | Dr. Sivaraman led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team, which provided computational support to scientists working to develop and validate Theranos' assays. |

REQUEST NO. 18: STATE the number of YOUR blood tests that were available in YOUR commercial testing centers for each quarter beginning January 1, 2013. For each blood test so identified:

(a) IDENTIFY the name of the blood test, as listed on THERANOS's Direct Testing Menu;

(b) IDENTIFY the Current Procedural Terminology Code(s) YOU associated with the blood test;

(c) STATE whether the availability of the blood test in YOUR commercial testing centers during that quarter differed by geography and the reason(s) for ANY geographic difference;

(d) STATE whether the blood test was available in YOUR commercial testing centers during that quarter using a CAPILLARY BLOOD SAMPLE or VENOUS BLOOD SAMPLE;

(e) STATE whether during that quarter the blood test could be performed in YOUR commercial testing centers with ACCURACY; and

(f) IDENTIFY the individual(s) who decided which blood tests would be available in YOUR commercial testing centers, when the blood tests would be available, what type of blood sample each blood test would utilize, and whether the blood tests could be performed with ACCURACY.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18:

By way of further response, Theranos states the following: Theranos has produced its test menus, which are located at THPFM0005749896-THPFM0005750175, from which the number of blood tests that were "available" to retail patients can be ascertained or derived. In supplemental response to Interrogatory No. 19, Theranos has also provided information regarding the blood tests that were actually performed by quarter for retail patients.

(a) By way of further response to part (a) of this Interrogatory, Theranos refers to the above-referenced Bates range, THPFM0005749896-

THPFM0005750175, pursuant to Court of Chancery Rule 33(d) from which the answer to part (a) of this Interrogatory can be ascertained.

(b) By way of further response to part (b) of this Interrogatory, Theranos refers to and incorporates Exhibit B, which is produced in supplemental response to parts (a) and (b) of Interrogatory No. 19, and which identify corresponding CPT codes for blood tests that were "available" to retail patients.

(d) By way of further response to part (d) of this Interrogatory, Theranos objects to the term "available" as vague and ambiguous because the sample collection method (capillary or venous) for any given blood test was determined by a number of factors, including the total number of blood tests on any given lab order and the total blood sample volume that would be required for that order. Theranos believes that information pertaining to actual blood tests that were performed for retail patients, including whether those tests were run on capillary or venous samples, also identifies which blood tests were "available" to be run on either capillary or venous blood samples. Accordingly, Theranos refers to and incorporates Exhibit B, which is produced in supplemental response to part (e) of Interrogatory No. 19.

(f) By way of further response to part (f) of this Interrogatory, regarding document custodians, Theranos provides the following table:

| Name | Title | Description of Role |
|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani received updates from assay team leaders regarding the status of assay validation before deployment of the assays in Theranos' clinical laboratory. |
| Surekha Gangakhedkar | Manager, Assay Systems (Former) | Ms. Gangakhedkar led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Mark Pandori | Laboratory Director (Former) | Dr. Pandori participated in development of Theranos' Nucleic Acid Amplification (TNAA) assays and in oversight of Theranos' Newark clinical laboratory. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar led teams of scientists working to develop and validate Theranos' ELISA and Cytometry assays. |
| Paul Patel | Director, Assay Development (Former) | Dr. Patel led a team of scientists working to develop and validate Theranos' General Chemistry assays. |
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff reviewed and approved the validation of laboratory developed tests before they were operational in the clinical laboratory. |
| Sharada Sivaraman | Director, Assay Systems | Dr. Sivaraman led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team, which provided computational support to scientists working to develop and validate Theranos' assays. |

REQUEST NO. 19: STATE the number of blood tests that were performed in YOUR commercial testing centers on patient blood samples for each quarter beginning January 1, 2013. For each blood test so identified:

(a) IDENTIFY the name of the blood test, as listed on THERANOS's Direct Testing Menu;

(b) IDENTIFY the Current Procedural Terminology Code(s) YOU associated with the blood test;

(c) STATE YOUR cost, revenue, and profit in performing the blood test during that quarter, both in the aggregate and per test;

(d) STATE how many times YOU performed the blood test during that quarter, and how many of such tests were found at any time to have been performed without ACCURACY; and

(e) STATE how many of such blood tests YOU performed during that quarter using a CAPILLARY BLOOD SAMPLE, and how many using a VENOUS BLOOD SAMPLE.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 19:

By way of further response to this Interrogatory, including parts (a), (b), (d), and (e), Theranos states that its response is attached as Exhibit C.

(c) By way of further response to part (c) of this Interrogatory, Theranos states that it does not maintain a system that tracks the cost and profit in performing a blood test, either in the aggregate or on a per-test basis. Similarly, Theranos does not track its revenue on a per-test basis. The table below reflects the aggregate cash receipts associated with blood tests.

| | | |
|---|---|---|
| | | **in $000's** |
| **Quarter** | **Quarter Ended** | **Revenue/Cash Receipts**[1] |
| Q1 2013 | March 31, 2013 | $ - |
| Q2 2013 | June 30, 2013 | $ - |

[1] Payments received prior to Q2 2014 were not deposited in the Company's bank account until Q2 2014 or later.

| Quarter | Quarter Ended | | in $000's Revenue/Cash Receipts[1] |
|---|---|---|---|
| Q3 2013 | September 30, 2013 | $ | - |
| Q4 2013 | December 31, 2013 | $ | - |
| Q1 2014 | March 31, 2014 | $ | - |
| Q2 2014 | June 30, 2014 | $ | 4 |
| Q3 2014 | September 30, 2014 | $ | 12 |
| Q4 2014 | December 31, 2014 | $ | 14 |
| Q1 2015 | March 31, 2015 | $ | 32 |
| Q2 2015 | June 30, 2015 | $ | 56 |
| Q3 2015 | September 30, 2015 | $ | 142 |
| Q4 2015 | December 31, 2015 | $ | 162 |
| Q1 2016 | March 31, 2016 | $ | 205 |
| Q2 2016 | June 30, 2016 | $ | 241 |
| Q3 2016 | September 30, 2016 | $ | 533 |
| Q4 2016 | Through Oct 31, 2016 | $ | 0[2] |

(d) By way of further response to part (d) of this Interrogatory, Theranos specifically objects to the phrases "number of blood tests," "YOUR commercial testing centers," "performed" and "without ACCURACY" as vague, ambiguous, unintelligible, and overly broad. Thus, Theranos objects to this Interrogatory as overbroad, unduly burdensome, and requiring description of information irrelevant and immaterial to the claims or defenses of any party in this litigation.

Subject to and without waiving the foregoing objections and General Objections, Theranos states that, to the extent that it has existing records from which it can provide information responsive to this Interrogatory, its response to part (d) of this Interrogatory is attached as Exhibit B.

[2] Total amount is less than $500 for the period ending October 31, 2016.

> <u>REQUEST NO. 20:</u> DESCRIBE ANY analyses conducted or relied upon by YOU relating to patterns, frequencies or trends in requested blood tests.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:</u>

By way of further response, Theranos refers to and incorporates its response to Interrogatory No. 76.

> <u>REQUEST NO. 21:</u> STATE the number of blood tests YOU could perform with ACCURACY on a single CAPILLARY BLOOD SAMPLE and on a single VENOUS BLOOD SAMPLE for each quarter beginning January 1, 2013. For each blood test so identified:
>
> (a) IDENTIFY the name of the blood test, as listed on THERANOS's Direct Testing Menu; and
>
> (b) IDENTIFY the Current Procedural Terminology Code(s) YOU associated with the blood test.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 21:</u>

By way of further response, Theranos states that Theranos developed a set of guidelines to ascertain the amount of blood necessary to be drawn from a given retail patient in order to fulfill that patient's lab order(s). Embedded in these guidelines were various considerations, including the location of the sample collections, the anticoagulant type and sample volume requirements for each assay, and configurable business rules. Included among these business rules was a policy that, if any set of blood tests ordered by a patient required a venous draw, Theranos would "default" to drawing venous blood to conduct all of the patient's tests rather than draw both capillary and venous blood samples. Theranos also defines a

"single CAPILLARY BLOOD SAMPLE" as a blood sample that, in volume, does not exceed the total volume of blood that could be collected and contained by 3 capillary tube nanotainers (CTNs).

Based on the review of records available to Theranos, Theranos states that: In accordance with the guidelines described above, the maximum number of results that could have been reported from a "single CAPILLARY BLOOD SAMPLE" collection for each quarter beginning January 1, 2013 is provided here:

| | Q4 2013 | Q1 2014 | Q2 2014 | Q3 2014 | Q4 2014 | Q1 2015 | Q2 2015 | Q3 2015 |
|---|---|---|---|---|---|---|---|---|
| Maximum Number of Reportables for capillary blood drawn from a given patient consistent with Theranos' guidelines | 55 | 71 | 79 | 79 | 79 | 79 | 55 | 59 |

Theranos further states that, with respect to a "single VENOUS BLOOD SAMPLE," there were no business rules that limited the number of vacutainers that could, in theory, be used to collect venous blood samples from a given retail patient. Accordingly, in theory, every blood test offered by Theranos could be run on a "single VENOUS BLOOD SAMPLE."

(a), (b) By way of further response to parts (a) and (b) of this Interrogatory, Theranos states that its response regarding blood tests performed on a "single CAPILLARY BLOOD SAMPLE," as described above, is attached as Exhibit D.

With respect to blood tests performed on a "single VENOUS BLOOD SAMPLE," as described above, Theranos refers to its supplemental response to Interrogatory No. 18.

> REQUEST NO. 22: STATE the amount of time required for YOU to provide a commercial testing center patient with the results of a blood test offered for each quarter beginning January 1, 2013.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 22:

By way of further response, Theranos objects that the term "provide" in this Interrogatory is vague and ambiguous, given that the Interrogatory has not defined the pertinent start time. Theranos states that it has accordingly defined "turnaround time," which is reflected in its supplemental response as "TAT," as the period of time between the loading of a retail patient's blood sample on a clinical analyzer and the release of the test(s) result(s) to that patient or his/her healthcare provider. Where an automated clinical analyzer was not used to perform blood testing, "TAT" is defined as the period of time between the manual entry of the test result(s) within the Theranos LIS system and the release of the test result(s) to that patient or his/her healthcare provider. The TAT is represented in hour(s) or fractions of an hour. Based on the review of retail patient testing records available to Theranos, Theranos attaches its supplemental response to this Interrogatory as Exhibit E.

> REQUEST NO. 23: DESCRIBE ANY analyses, empirical studies, testing, or other validation by third parties, or proposed or offered to

YOU by third parties, of YOUR equipment, technologies, and scientific methods related to blood tests, and IDENTIFY YOUR employees or former employees involved in such analyses, empirical studies, or other validation.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 23:

By way of further response, and pursuant to Court of Chancery Rule 33(d), Theranos directs Plaintiffs to business records which have been produced in this action and which are located at THPFM0000028550–THPFM0000028552; THPFM0000032450–THPFM0000032450; THPFM0000071866–THPFM0000071871; THPFM0000293055–THPFM0000293072; THPFM0000690926–THPFM0000690934; THPFM0000690959–THPFM0000690970; THPFM0000690991–THPFM0000690998; THPFM0000691145–THPFM0000691159; THPFM0000691242–THPFM0000691248; THPFM0000691401–THPFM0000691403; THPFM0000691406–THPFM0000691406; THPFM0000691421–THPFM0000691422; THPFM0000691484–THPFM0000691496; THPFM0000691517–THPFM0000691532; THPFM0000691936–THPFM0000691937; THPFM0000692119–THPFM0000692120; THPFM0000692167–THPFM0000692173; THPFM0000692419–THPFM0000692420; THPFM0000813063–THPFM0000813063; THPFM0000813067–THPFM0000813068; THPFM0000813071–THPFM0000813074; THPFM0000813104–THPFM0000813111;

THPFM0000813234–THPFM0000813235; THPFM0000813237–THPFM0000813237; THPFM0000821474–THPFM0000821478; THPFM0000870915–THPFM0000870915; THPFM0000871059–THPFM0000871059; THPFM0000881410–THPFM0000881414; THPFM0000886503–THPFM0000886504; THPFM0000886928–THPFM0000886929; THPFM0001679311–THPFM0001679336; THPFM0002250584–THPFM0002250584; THPFM0002250594–THPFM0002250594; THPFM0002257019–THPFM0002257025; THPFM0002257033–THPFM0002257033; THPFM0002367177–THPFM0002367177; THPFM0002367649–THPFM0002367652; THPFM0002367655–THPFM0002367665; THPFM0002367668–THPFM0002367687; THPFM0002368292–THPFM0002368295; THPFM0002368297–THPFM0002368298; THPFM0002410761–THPFM0002410763; THPFM0003776388–THPFM0003776402; THPFM0003783222–THPFM0003783227; THPFM0003826215–THPFM0003826217; THPFM0003864569–THPFM0003864569; THPFM0004510593–THPFM0004510608; THPFM0005420195–THPFM0005420201; THPFM0005466112–THPFM0005466292; THPFM0005466296–THPFM0005466379; THPFM0005468784–THPFM0005468882; THPFM0005480140–THPFM0005480160;

THPFM0005481042–THPFM0005481049; THPFM0005487396–THPFM0005487399; THPFM0005487481–THPFM0005487494; THPFM0005487605–THPFM0005487608; THPFM0005487626–THPFM0005487628; THPFM0005487637–THPFM0005487639; THPFM0005497136–THPFM0005497139; THPFM0005499322–THPFM0005499326; THPFM0005545343–THPFM0005545348; THPFM0005545351–THPFM0005545428; THPFM0005620882–THPFM0005620885; THPFM0005638605–THPFM0005638662; THPFM0005643489–THPFM0005643518; THPFM0005654975–THPFM0005683273; and THPFM0005761456–THPFM0005761484.

By way of further response, Theranos provides the following additional information regarding the document custodians identified in the Company's original response to Interrogatory No. 23:

| Name | Title | Description of Role |
| --- | --- | --- |
| Gary Frenzel | Architect (Former) | Mr. Frenzel was involved with the development of Theranos' ELISA assays and device architecture during Theranos' work with third-party partners. |
| Surekha Gangakhedkar | Manager, Assay Systems (Former) | Ms. Gangakhedkar was involved with the development of Theranos' ELISA assays during Theranos' work with third-party partners. |

| Name | Title | Description of Role |
|---|---|---|
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team, which provided computational support to scientists working to develop Theranos' assays during Theranos' work with third-party partners. |

> REQUEST NO. 24: DESCRIBE YOUR analyses, empirical studies, testing or other validation of YOUR equipment, technologies, and scientific methods related to blood tests, and IDENTIFY YOUR employees or former employees involved in such analyses, empirical studies, or other validation

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 24:

By way of further response, and pursuant to Court of Chancery Rule 33(d), Theranos directs Plaintiffs to business records which have been produced in this action and which are located at THPFM0005687393–THPFM0005694497; THPFM0005694630–THPFM0005696422; THPFM0005696531–THPFM0005698807; THPFM0005698811–THPFM0005699177; THPFM0005699299–THPFM0005699648; THPFM0005699651–THPFM0005699696; THPFM0005699700–THPFM0005699833; THPFM0005699836–THPFM0005700093; THPFM0005700096–THPFM0005700419; THPFM0005700421–THPFM0005700803; THPFM0005700805–THPFM0005701164; THPFM0005701175–THPFM0005701656; THPFM0005701658–THPFM0005702246; THPFM0005702250–THPFM0005702396; THPFM0005702400–

THPFM0005702852; THPFM0005702855–THPFM0005702995; THPFM0005703984–THPFM0005704380; THPFM0005704384–THPFM0005710106; THPFM0005750323–THPFM0005751353; and THPFM0005751366–THPFM0005753209.

By way of further response, Theranos provides the following additional information regarding the document custodians identified in the Company's original response to Interrogatory No. 24:

| Name | Title | Description of Role |
|---|---|---|
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal is a chemical engineer who has managed Theranos' Systems Integration team, which is responsible for integration of Theranos' hardware, software, and chemistry onto the TSPU. |
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani received updates from assay team leaders regarding the status of assay validation before deployment of the assays in Theranos' clinical laboratory. |
| Surekha Gangakhedkar | Manager, Assay Systems (Former) | Ms. Gangakhedkar led a team of scientists in the development and validation of Theranos' ELISA assays. |
| Arnold Gelb | Laboratory Director (CA) (Former) | Dr. Gelb served as Theranos' clinical laboratory director and drafted standard operating procedures for assay validation. |
| Anthony Nugent | Vice President, Product Development (Former) | Mr. Nugent is an engineer who is listed as a co-inventor with Ms. Holmes on several patent applications. Mr. Nugent was involved in the development of the 3.0 versions of the TSPU. |

| Name | Title | Description of Role |
|---|---|---|
| Mark Pandori | Laboratory Director (Former) | Dr. Pandori participated in development of Theranos' Nucleic Acid Amplification (TNAA) assays. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar led teams of scientists working to develop and validate Theranos' ELISA and Cytometry assays. |
| Paul Patel | Director, Assay Development (Former) | Dr. Patel led a team of scientists working to develop and validate Theranos' General Chemistry assays. |
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff reviewed and approved the validation of laboratory developed tests before they were operational in the clinical laboratory. |
| Sharada Sivaraman | Director, Assay Systems | Dr. Sivaraman led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Timothy Smith | Vice President, Theranos Systems (Former) | Mr. Smith is a mechanical engineer who worked integrating hardware components onto the TSPU. |
| Jim Twitchell | Director of Quality, Theranos Systems (Former) | Mr. Twitchell joined Theranos in September 2014 and was responsible for overseeing the Company's quality system for Theranos proprietary hardware, consumables, disposables, and software. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team, which provided computational support to scientists working to develop and validate Theranos' assays. |

<u>REQUEST NO. 25:</u> IDENTIFY ANY of YOUR current or former employee(s) who communicated or had knowledge of complaints, concerns, grievances, objections, doubts, or criticisms CONCERNING ANY of the facts or allegations set forth in the

COMPLAINT, including without limitation: YOUR COMMUNICATIONS with YOUR investors; the number and proportion of blood tests on THERANOS's Direct Testing Menu that utilized CAPILLARY BLOOD SAMPLES; the extent to which THERANOS used non-proprietary or commercially available equipment to perform blood tests; the status and nature of THERANOS's submissions to and correspondence with the FDA; and THERANOS's relationships with RETAIL STORES, hospitals, and physicians or physician practices.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 25:

By way of further response and per the agreement of the parties (*see* Chan Letter to Perla dated January 18, 2017), Theranos states that it is currently aware of the following employees who made complaints "concerning the facts and allegations set forth in the complaint" (Chan Letter to Perla dated January 13, 2017):

| Name | Title | Present Position and Business Affiliations | Present business address and telephone | Present residential address and telephone |
|---|---|---|---|---|
| Kimberly Alfonso | General Manager, Sales & Business Development (Former) | | | 10148 East Corrine Dr.<br>Scottsdale, AZ 85260;<br>(480) 290-5600 |
| Ashkon Niroomand | Clinical Lab Scientist (Former) | | | 4149 6th Ave Apt#24,<br>San Diego, CA 92103 |



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959060

| Name | Title | Present Position and Business Affiliations | Present business address and telephone | Present residential address and telephone |
|---|---|---|---|---|
| Adam Rosendorff | Lab Director (Former) | CEO at Indigo Lab Consultants | | As of 12/17/2014: 4501 Carlyle Ct., Apt #1204, Santa Clara, CA 95054; (617) 784-8929 |
| Karen Shaw | Research Associate (Former) | | | 435 Acalanes Dr., Apt 28 Sunnyvale, CA 94086; (408) 393-9964 |
| Tyler Shultz | Research Engineer, Assay Development (Former) | | | 16771 Littlefield Ln. Los Gatos, CA 95032; (408) 355-5333 |

REQUEST NO. 26: For ANY of YOUR current or former employee(s) identified in response to Interrogatory No. 25, DESCRIBE the concerns, grievances, objections, doubts, or criticisms that were raised.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 26:

By way of further response, Theranos provides the following:

| Name | Description of Complaints |
|---|---|
| Kimberly Alfonso | Concerns regarding sales and marketing claims |
| Ashkon Niroomand | Concerns regarding lab procedures and validation processes. |
| Adam Rosendorff | Concerns regarding lab procedures and validation processes. |



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959061

| Name | Description of Complaints |
|---|---|
| Karen Shaw | Concerns regarding lab procedures and validation processes. |
| Tyler Shultz | Concerns regarding the coefficient of variation for RPR titer and Vitamin D assays. |

REQUEST NO. 27: IDENTIFY ANY of YOUR former employee(s) who resigned or were terminated after communicating or learning of a complaint, concern, grievance, objection, doubt, or criticism CONCERNING ANY of the facts or allegations set forth in the COMPLAINT, including without limitation those listed in Interrogatory No. 25.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 27:

By way of further response, Theranos states that each of the individuals identified in supplemental response to Interrogatory No. 25 is no longer employed by Theranos.

REQUEST NO. 28: IDENTIFY ANY non-proprietary or commercially available machine, equipment, or technology that YOU used to perform blood tests for commercial testing center patients since January 1, 2013. For each device so identified:

(a) IDENTIFY the third party(ies) that manufactured, built, and sold the machine, equipment, or technology;

(b) STATE the time period during which YOU used the machine, equipment, or technology to perform blood tests for commercial testing center patients;

(c) IDENTIFY the individual(s) who decided to purchase or otherwise obtain the machine, equipment, or technology;

(d) IDENTIFY the blood tests on THERANOS's Direct Testing Menu, using the name as listed on the Direct Testing Menu, that YOU performed using the machine, equipment, or technology; and

(e) IDENTIFY the individual(s) who decided which blood tests would be performed using the machine, equipment, or technology, and which blood tests could be performed with ACCURACY using the machine, equipment, or technology.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 28:

By way of further response, Theranos states the following:

(a) By way of further response to part (a) of this Interrogatory, Theranos provides the following table of devices it purchased from third parties. Theranos also refers to its response to Interrogatory No. 64:

| Device Manufacturer | Device |
|---|---|
| Abbott | Abbott M2000 Real-Time PCR |
| Abbott | CELL-DYN Ruby Hematology System |
| BD Biosciences | BD FACSCanto II |
| BD Biosciences | BD FACSCanto II or BD LSR Fortessa |
| BD Biosciences | BD Macro-Vue RPR Kits |
| Beckman Coulter | Beckman Coulter Iris Urinalysis[3] |
| Beckman Coulter | Beckman Coulter Multisizer 4 |
| Bio-Rad | Bio-Rad EVOLIS |
| Bio-Rad | Bio-Rad Multispot HIV-1/HIV-2 Rapid test |

[3] The Company incorrectly identified "IRIS" as a device manufacturer in its original response to Interrogatory No. 28. "Iris" is the name of the device, as indicated correctly above, and it is manufactured by Beckman Coulter. However, it does not process blood samples but rather urine.

| Device Manufacturer | Device |
|---|---|
| Bio-Rad | Bio-Rad TANGO |
| CellaVision | Cellavision or microscope |
| DiaSorin | DiaSorin ETI-Max 3000 |
| DiaSorin | DiaSorin LIAISON |
| Drew Scientific | Drew Scientific Drew-3 Hematology System |
| Eldon Biologicals A/S | Eldon Biologicals ABO/Rh kit |
| Magellan Diagnostics | LeadCare II Point-of-Care |
| Molecular Devices | Molecular Devices SpectraMax M5 |
| OraSure Technologies | OraSure OraQuick Advance Rapid HIV ½ Ab Test Kit |
| Quidel Corporation | Quidel QuickVue H. pylori Test |
| Siemens AG | Siemens ADVIA 1800 |
| Siemens AG | Siemens ADVIA 2120 Hematology System |
| Siemens AG | Siemens ADVIA Chemistry XPT |
| Siemens AG | Siemens BCS XP |
| Siemens AG | Siemens Centaur XP |
| Siemens AG | Siemens DCA Vantage |
| Siemens AG | Siemens Immulite 2000 XPi |
| Streck | Streck ESR-Auto Plus |
| Sysmex | Sysmex XN2000 |
| Tecan | Tecan LiHA |
| Tecan | Tecan M1000 |



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959064

| Device Manufacturer | Device |
|---|---|
| Tecan | Tecan MCA |

(b) By way of further response to part (b) of this Interrogatory, Theranos states that its response is attached as Exhibit F.

(c) By way of further response to parts (c) and (e) of this Interrogatory, regarding document custodians, Theranos provides the following:

| Name | Title | Description of Role |
|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani received updates from assay team leaders regarding the status of assay validation before deployment of the assays in Theranos' clinical laboratory and was involved in decisions to purchase commercially available machines, equipment, or technology. |
| Surekha Gangakhedkar | Manager, Assay Systems (Former) | Ms. Gangakhedkar led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Arnold Gelb | Laboratory Director (CA) (Former) | Dr. Gelb was involved in the initial establishment of Theranos' clinical laboratory in California. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar led teams of scientists working to develop and validate Theranos' ELISA and Cytometry assays. |
| Paul Patel | Director, Assay Development (Former) | Dr. Patel led a team of scientists working to develop and validate Theranos' General Chemistry assays. |

| Name | Title | Description of Role |
|---|---|---|
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff reviewed and approved the validation of laboratory developed tests and verification of third-party assays before they were operational in Theranos' California clinical laboratory. |
| Sharada Sivaraman | Director, Assay Systems | Dr. Sivaraman led a team of scientists working to develop and validate Theranos' ELISA assays. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team, which provided computational support to scientists working to develop and validate Theranos' assays, and reviewed and approved verification reports for blood tests on commercially available analyzers in Theranos' Arizona laboratory. |

(d) By way of further response to part (d) of this Interrogatory, Theranos states that its response is attached as Exhibit G.

(e) By way of further response to part (e) of this Interrogatory, Theranos refers to and incorporates its supplemental response to part (c) of this Interrogatory.

> <u>REQUEST NO. 29:</u> IDENTIFY ANY third-party companies or laboratories that performed blood tests for YOUR commercial testing center patients since January 1, 2013. For each third-party company or laboratory so identified:
>
> (a) STATE the time period during which the third-party company or laboratory performed blood tests for YOUR commercial testing center patients;



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959066

(b) IDENTIFY the individual(s) who decided to contract or otherwise work with the third-party company or laboratory;

(c) IDENTIFY the blood tests on THERANOS's Direct Testing Menu, using the name as listed on the Direct Testing Menu, that were performed by the third-party company or laboratory; and

(d) IDENTIFY the individual(s) who decided which blood tests would be performed by the third-party company or laboratory.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 29:

By way of further response, Theranos states the following:

(a): By way of further response to part (a) of this Interrogatory, Theranos provides the following table, which shall replace the table that was included in the original response to part (a) of this Interrogatory:

| | **Date of Lab Result Entry** | |
|---|---|---|
| **Third Party Laboratories** | **Start Date** | **End Date** |
| ARUP Laboratories | 10/14/13 | 10/11/16 |
| Cleveland Clinic Foundation | 02/03/16 | 10/12/16 |
| MD Tox Laboratory | 12/15/16 | 09/14/16 |
| UCSF Mission Bay Clin Lab | 09/27/14 | 08/16/16 |
| West Pacific Medical Laboratory | 01/06/16 | 09/14/16 |

(b) By way of further response to part (b) of this Interrogatory, regarding document custodians, Theranos provides the following:

| Name | Title | Description of Role |
|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | As Chief Operating Officer, Mr. Balwani was involved in many aspects of Theranos' clinical lab operations, including Theranos' relationships with third-party laboratories. |
| Mark Pandori | Laboratory Director (Former) | Dr. Pandori was involved in decisions regarding selection of reference laboratories and regarding which tests to send to reference laboratories. |
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff was involved in decisions regarding selection of reference laboratories and regarding which tests to send to reference laboratories. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young was involved in decisions regarding selection of reference laboratories and regarding which tests to send to reference laboratories. |

(c) By way of further response to part (c) of this Interrogatory, Theranos states that its response is attached as Exhibit H.

(d) By way of further response to part (d) of this Interrogatory, Theranos refers to and incorporates its supplemental response to part (b) of this Interrogatory. Pursuant to Court of Chancery Rule 33(d), Theranos also refers Plaintiffs to documents produced in response to RFP No. 64, at THPFM0005749766–THPFM0005749791.

REQUEST NO. 30: IDENTIFY YOUR FDA Pre-Submissions, whether formal or informal. For each Pre-Submission so identified:

(a) STATE the date of the Pre-Submission;

(b) IDENTIFY the subject of the Pre-Submission;

(c) IDENTIFY the individual(s) who prepared the Pre-Submission; and

(d) DESCRIBE ANY related COMMUNICATIONS to or from the FDA.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 30:

By way of further response, Theranos states the following:

FDA describes a pre-submission as "a formal written request for feedback" from FDA. The party submitting it may request formal written feedback from FDA or schedule a teleconference. FDA describes the goal of the pre-submission program as one "to provide one-time advice on topics associated with the Pre-Sub under review."[4]

In collaboration with FDA, Theranos developed a plan to regularly submit assays to FDA on a monthly basis. The plan, reflected in an Excel spreadsheet, grouped the assays Theranos intended to submit into "pre-submission groups." Each assay group had a designated month for pre-submission to FDA and for subsequent 510(k) filing. The plan was periodically updated to reflect the status of the Company's submissions and FDA's input regarding which assays Theranos should prioritize. Pursuant to Court of Chancery Rule 33(d), Theranos refers

[4] *See, e.g.*, http://www.fda.gov/downloads/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm311176.pdf.

Plaintiffs to its document production for copies of the various iterations of the submission plan, the Bates numbers for which are located at Exhibit J.

In its original response to this Interrogatory, Theranos described the topics of communications between Theranos and FDA regarding various pre-submissions. In further response, pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to documents that the Company has produced in response to Plaintiffs' RFP No. 26, the Bates numbers for which are located at Exhibit I.

By way of further response to part (c) of this Interrogatory, regarding document custodians, Theranos provides the following:

| Name | Title | Description of Role |
|---|---|---|
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal participated in the preparation of pre-submissions and pre-EUAs, particularly those for nucleic acid amplification ("TNAA") assays, and communications with FDA regarding those submissions. |
| Brad Arington | Chief Regulatory Counsel | Dr. Arington, together with Dr. Young, oversaw the preparation of all pre-submissions and pre-EUAs that occurred after he started at the Company and participated in communications with FDA regarding these submissions. |
| Ian Gibbons | Senior Director – Assay (Former) | Dr. Gibbons participated in the January 30, 2006 pre-IDE meeting with FDA. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar participated in the preparation of pre-submissions and pre-EUAs, particularly those for ELISA and hematology assays, and communications with FDA regarding those submissions. |



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959070

| Name | Title | Description of Role |
|---|---|---|
| Paul Patel | Senior Manager, Assay Systems (Former) | Dr. Patel participated in the preparation of pre-submissions and pre-EUAs, particularly those for general chemistry assays, and communications with FDA regarding those submissions. |
| Sharada Sivaraman | Director, Assay Systems | Ms. Sivaraman participated in the preparation of pre-submissions and pre-EUAs and communications with FDA regarding submissions. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young was involved in the preparation of the Company's pre-submissions and in discussions with FDA regarding those pre-submissions. |

<u>REQUEST NO. 31:</u> IDENTIFY the blood tests or devices that THERANOS submitted to the FDA for Premarket Notification (510(k)) clearance for each quarter beginning January 1, 2013. For each blood test or device so identified:

(a) STATE the date of submission;

(b) IDENTIFY the individual(s) who prepared the submission and participated in the processes described in (c) through (f) below;

(c) DESCRIBE the FDA ACCEPTANCE REVIEW result;

(d) For ANY blood tests or devices placed on FDA RTA HOLD, STATE the date THERANOS addressed the deficiencies cited in the RTA HOLD;

(e) For ANY blood tests or devices that proceeded to SUBSTANTIVE REVIEW, STATE the date(s) of and DESCRIBE ANY SUBSTANTIVE INTERACTION with the FDA; and

(f) DESCRIBE the current status of the submission.



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959071

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 31:

By way of further response, Theranos states the following:

Theranos withdrew K143099, the original 510(k) submission for the Company's capillary tubes and nanotainer tubes ("CTNs"), by letter dated June 20, 2015. The Company intended to pursue further discussion with FDA regarding K143099 before submitting a new 510(k) for the CTNs.

Once FDA sends an Additional Information Request regarding a given 510(k) submission, the submission is placed on hold, and the submitter has 180 calendar days to submit a response that FDA considers to be complete. If FDA does not receive a complete response within this time period, the submission is considered withdrawn and is deleted from FDA's review system.[5]

The Company did not submit formal responses during the 180 day period for the following 510(k) submissions: K152647, K152965, and K152971. The period expired for these submissions on May 2, 2016, June 2, 2016, and June 6, 2016, respectively.

Communications regarding Theranos' CTN submissions concerned a variety of topics, including, but not limited to, the level of bias for certain analytes, sample collection, assay performance, comparison of the performance of capillary samples

[5] http://www.fda.gov/medicaldevices/deviceregulationandguidance/howtomarketyourdevice/premarketsubmissions/premarketnotification510k/ucm070201.htm#substantive

collected in the CTN with venous samples collected in predicate devices, the protocol for contriving samples, method comparison studies, regression analysis, the Company's CBC data, analyte stability testing, the inclusion of samples from unhealthy patients, and shelf life stability.

These communications occurred via letter from FDA to Theranos dated December 2014; via letter from Theranos to FDA dated July 26, 2015, to which FDA responded in writing on August 10, 2015; and an August 13, 2015 teleconference.

In further response, pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to documents that the Company has produced in response to Plaintiffs' RFP No. 26, which are located at Exhibit K.

Additionally, in its original response to this Interrogatory, Theranos described the topics of communications between Theranos and FDA regarding various 510(k) submissions. In further response, pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to documents that the Company has produced in response to Plaintiffs' RFP No. 26, the Bates numbers for which are located at Exhibit K.

By way of further response to part (c) of this Interrogatory, regarding document custodians, Theranos provides the following:

| Name | Title | Description of Role |
|---|---|---|
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal participated in preparing FDA submissions for the CTN and in communications with FDA personnel regarding those submissions. |
| Brad Arington | Chief Regulatory Counsel | Dr. Arington, together with Dr. Young, oversaw the preparation of the Company's 510(k) submissions that occurred after he started at the Company and participated in communications with FDA regarding these submissions. |
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani was involved in preparing the sections of the Company's 510(k) submissions related to software and in discussions with FDA regarding those aspects of the Company's submissions, and at times reviewed draft submissions and provided comments. |
| Xinwei Sam Gong | Senior Scientist, Computational Bio; Machine Learning Lead (Former) | Dr. Gong became involved in communications with FDA regarding 510(k) submissions in or by 2015 and participated in some calls with FDA, addressing computational and statistical analysis questions that arose during those calls. |
| Elizabeth Holmes | CEO | Ms. Holmes received copies of the Company's 510(k) submissions before they were submitted to FDA and participated in communications with FDA regarding the Company's 510(k) submissions. |
| Heather King | General Counsel (Former) | Ms. King participated in some calls with FDA regarding the Company's 510(k) submissions for the CTN. |

| Name | Title | Description of Role |
|---|---|---|
| Paul Patel | Director, Assay Development (Former) | Dr. Patel was involved in preparing the Company's 510(k) submissions for the CTN to the extent they covered clinical chemistry analytes. He performed activities such as running studies and preparing reports. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar was involved in the preparation of the Company's HSV-1 510(k) submission, as well as two of the CTN submissions filed in 2015 (K152647 and K152971). Dr. Pangarkar headed the ELISA team that developed the assay for the HSV-1 submission, and he participated in multiple calls with FDA along with Dr. Arington and Dr. Young. |
| Suraj Saksena | Director, Assay Development (Former) | Dr. Saksena may have performed some background work relating to 510(k) submissions. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young, together with Dr. Arington, oversaw the preparation of the Company's 510(k) submissions and participated in communications with FDA regarding those submissions. |

REQUEST NO. 33: IDENTIFY each inspection of THERANOS by CMS since January 1, 2013. For each inspection so identified:

(a) IDENTIFY the THERANOS employee(s) or former employee(s) involved in the inspection;

(b) DESCRIBE the reason(s) for the inspection; and

(c) DESCRIBE the notices or findings by CMS as a result of the inspection.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 33:

By way of further response, Theranos states the following:

On December 3, 2013, CMS conducted a survey of Theranos' Palo Alto lab. The Company understands that the reasons for this survey were an unspecified complaint, as well as the requirement that the lab receive routine biennial surveys in order to renew its Certificate of Compliance under the Clinical Laboratory Improvement Act of 1988 ("CLIA"). On or about December 10, 2013, CMS issued a Form 2567, identifying three alleged standard-level deficiencies relating to laboratory director responsibilities and accuracy verification for NH3 testing.

On April 2, 2015, the Arizona Bureau of State Laboratory Services conducted an initial survey of Theranos' Arizona lab on behalf of CMS. The Company understands that this was a routine survey required as part of the Company's application for a CLIA Certificate of Compliance for the Arizona lab. On or about April 2, 2015, CMS issued a Form 2567 identifying four standard-level deficiencies relating to evaluation and verification activities, collection dates for patient specimens, humidity ranges, and verification of performance specification for certain analyzers. CMS thereafter issued a Certificate of Compliance for the Arizona lab effective May 20, 2015.

On September 3, 2015, the Arizona Bureau of State Laboratory Services conducted a biennial survey of Theranos' Arizona lab. CMS issued a Form 2567

identifying two condition-level deficiencies and four standard-level deficiencies. The condition-level deficiencies identified were (i) failure to successfully participate in a proficiency testing program for the subspecialty of toxicology and certain analytes and (ii) failure by the laboratory director to provide overall management and direction in connection with the performance of proficiency testing. The standard-level deficiencies related to proficiency testing. On October 6, 2015, CMS accepted the Company's Plan of Correction submitted on September 15, 2015.

On or about September 22, 2015, CMS initiated a survey of Theranos' Newark, California lab. Theranos understands that the reasons for this survey were biennial recertification and an unspecified complaint. On January 25, 2016, CMS issued a Form 2567 identifying approximately 39 standard-level deficiencies and approximately five condition-level deficiencies. The standard-level deficiencies identified related to various areas, including, but not limited to, the Company's documentation of policies and procedures, responsibilities of the laboratory director, instrument calibration, quality control, verification of testing methods, and personnel training and qualifications. The condition-level deficiencies were based on the standard-level deficiencies in the areas of hematology, analytic systems, quality control and assessment, technical supervisor qualifications and responsibilities, and testing personnel qualifications.



**Confidential**

FOIA Confidential Treatment Requested by Theranos TS-0959077

In September 2016, CMS initiated what Theranos understands to be a complaint survey of Theranos' Arizona lab that concluded on or about September 29, 2016.

In further response, pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to documents that the Company has produced in response to Plaintiffs' RFP No. 16, which are located at THPFM0005753213-THPFM0005753221;THPFM0005753250-THPFM0005753251; THPFM0005753252–THPFM0005753258;THPFM0005753259-THPFM0005753264;THPFM0005753265-THPFM0005753265; THPFM0005753266-THPFM0005753273;THPFM0005753313-THPFM0005753314;THPFM0002240153 – THPFM0002240277; THPFM0005437068 – THPFM0005437112; THPFM0005754051 – THPFM0005754083; and THPFM0005754084-THPFM0005754127.

By way of further response to part (c) of this Interrogatory, regarding document custodians, Theranos provides the following:

| Name | Title | Description of Role |
|---|---|---|
| Hoda Alamdar | Laboratory General Supervisor (Former) | Ms. Alamdar was present during the 2013 survey of the Palo Alto lab and the 2015 survey of the Newark lab and may have interacted with CMS surveyors. |

| Name | Title | Description of Role |
|---|---|---|
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal was present during the 2015 survey of the Newark lab and may have interacted with CMS surveyors. |
| Brad Arington | Chief Regulatory Counsel | Dr. Arington participated in a few phone calls with CMS surveyors in connection with the April 2015 survey of the Arizona lab, and he helped prepare the Company's response to the Form 2567 that was issued. |
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani was present during the 2015 survey of the Newark laboratory and may have interacted with CMS surveyors. |
| Max Fosque | Senior Project Manager | Mr. Fosque was present during the September 2015 survey of the Newark laboratory and may have interacted with CMS surveyors. |
| Elizabeth Holmes | CEO | Ms. Holmes was present during the portion of the 2015 survey of the Newark laboratory that occurred in November, and may have interacted with CMS surveyors. |
| Heather King | General Counsel (Former) | Ms. King was present during the 2015 survey of the Newark laboratory. |
| Tracy Masson | Vice President, Operations, Arizona (Former) | Ms. Masson was present during the September 2016 survey of the Arizona laboratory and may have interacted with CMS surveyors. |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar was present during the 2015 survey of the Newark laboratory and may have interacted with CMS surveyors. |
| Adam Rosendorff | Laboratory Director (CA) (Former) | Dr. Rosendorff was present during the 2013 survey of the Palo Alto laboratory and may have interacted with CMS surveyors. |

| Name | Title | Description of Role |
|---|---|---|
| Suraj Saksena | Director, Assay Development (Former) | Dr. Saksena was present during the 2015 survey of the Newark laboratory and may have interacted with CMS surveyors. |
| Don Tschirhart | Laboratory Director | Dr. Tschirhart was present during the 2016 survey of the Arizona laboratory and may have interacted with CMS surveyors. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young was present during the 2013, 2015, and 2016 surveys and may have interacted with CMS surveyors. |

REQUEST NO. 34: IDENTIFY each inspection of THERANOS by the FDA since January 1, 2013. For each inspection so identified:

(a) IDENTIFY the THERANOS employee(s) or former employee(s) involved in the inspection;

(b) DESCRIBE the reason(s) for the inspection; and

(c) DESCRIBE the notices or findings by the FDA as a result of the inspection.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 34:

By way of further response, Theranos states the following:

The Company understands that the 2015 inspection of the Newark facilities by FDA was a "for cause" inspection to assess Theranos' compliance with Quality System Regulations. FDA describes a "for cause" inspection as one "to investigate a specific problem that has come to FDA's attention."[6]

[6] http://www.fda.gov/AboutFDA/Transparency/Basics/ucm194888.htm.

Theranos understands that the 2015 inspection of the Palo Alto facility by FDA was a "comprehensive" inspection of Theranos as a medical device manufacturer. FDA defines a "comprehensive" inspection as an inspection of the "four major subsystems" described in FDA's Quality Systems Inspection Technique: Management Controls, Design Controls, Corrective and Preventive Actions (CAPA), and Production and Process Controls (P&PC).[7]

The "objectionable conditions" as purportedly observed by FDA during the inspections are described in the Forms 483; pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to relevant documents in the Company's document production, which are located at THPFM0000159268; THPFM0004805602–THPFM0004805616; THPFM0004806350–THPFM0004806435; and THPFM0004897101–THPFM0004897102.

Theranos understands that FDA initiated inspections of the Palo Alto facility on or about August 16, 2016 to determine whether clinical studies for the Company's Zika assay complied with applicable regulations. The allegedly objectionable condition identified in the Form 483 that issued related to institutional review board ("IRB") approval.

By way of further response to part (c) of this Interrogatory, regarding document custodians, Theranos provides the following:

---

[7] http://www.fda.gov/downloads/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm244277.pdf.

| Name | Title | Description of Role |
|---|---|---|
| Samartha Anekal | Vice President, Theranos Systems (Former) | Dr. Anekal was present during the 2015 inspection of the Newark facility and answered questions posed by FDA inspectors. |
| Brad Arington | Chief Regulatory Counsel | During the 2015 inspection of the Palo Alto facilities, Dr. Arington participated in inspection meetings and accompanied the FDA inspectors on their tour of the Palo Alto facilities. |
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani, along with counsel, accompanied FDA inspectors and answered questions during the 2015 inspections of the Newark and Palo Alto facilities, directed employees to provide documents and answer questions for FDA inspectors, and participated in some meetings with FDA inspectors. |
| Elizabeth Holmes | CEO | Ms. Holmes, along with counsel, accompanied FDA inspectors during the 2015 inspection of the Palo Alto facility and answered questions posed by and provided documents to FDA inspectors. |
| Ryan Karpel | Senior Project Manager (Former) | Mr. Karpel was present during the 2016 inspection of the Palo Alto facility and may have interacted with FDA inspectors. |
| Heather King | General Counsel (Former) | Ms. King participated in the 2015 inspection of the Newark facility by phone and drafted written correspondence to FDA inspectors.<br><br>Ms. King was present during each day of the 2015 inspection of the Palo Alto facility, assisted in providing documents and facilitating the inspection, and provided the FDA inspectors with written correspondence. |

| Name | Title | Description of Role |
|---|---|---|
| Diana Lee | Assistant to Chief Executive Officer; Assistant to Chief Operating Officer (Former) | Ms. Lee was present during the 2015 inspection of the Newark facility for a short period of time and answered questions posed by FDA inspectors. |
| Mona Ramamurthy | Human Resources & Employment Counsel (Former) | Ms. Ramamurthy was present during the 2016 inspection of the Palo Alto facility and may have interacted with FDA inspectors. |
| Jim Twitchell | Director of Quality, Theranos Systems (Former) | Mr. Twitchell was present during the 2015 inspection of the Newark facility and answered questions posed by and provided documents to FDA inspectors.<br><br>Mr. Twitchell was present for only a few days during the 2015 inspection of the Palo Alto facility. |
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young joined the 2015 inspection of the Newark facility for a short period of time and answered questions posed by FDA inspectors.<br><br>Dr. Young was present for part of the 2015 inspection of the Palo Alto facility and answered questions posed by and provided documents to FDA inspectors. |

REQUEST NO. 45: STATE the current valuation of YOUR intellectual property.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 45:

By way of further response, Theranos states that no responsive valuations exist.

/s/ Catherine G. Dearlove
Gregory P. Williams (#2168)
Catherine G. Dearlove (#3328)
Kevin M. Gallagher (#5337)
Sarah A. Galetta (#6157)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendant Theranos, Inc.*

OF COUNSEL:

Timothy J. Perla
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6696

Christopher Davies
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6187

Matthew D. Benedetto
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue
Suite 2100
Los Angeles, California 90071
(213) 443-5323

*Attorneys for Defendant Theranos, Inc.*

DATED: January 31, 2017

STATE OF CALIFORNIA :
: SS:
COUNTY OF SANTA CLARA :

I, Brad Arington, declare:

1. I am currently Chief Regulatory Counsel of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2. I have read the foregoing Defendant Theranos, Inc.'s First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3. Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4. I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30th day of January, 2017

Brad Arington

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30th day of January, 2017.

Notary Public
My Commission Expires: 12/21/2019

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

STATE OF CALIFORNIA :
: SS:
COUNTY OF SANTA CLARA :

I, Jeffrey Blickman, declare:

1. I am currently Director, Business Analytics of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2. I have read the foregoing Defendant Theranos, Inc.'s First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3. Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4. I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January, 2017

[signature]
Jeffrey Blickman

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30th day of January, 2017.

[signature]
Notary Public
My Commission Expires: 12/21/2019

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

STATE OF CALIFORNIA :
: SS:
COUNTY OF SANTA CLARA :

I, Max Fosque, declare:

1. I am currently Senior Software Product Manager of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2. I have read the foregoing Defendant Theranos, Inc.'s First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3. Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4. I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January, 2017

Max Fosque

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

Sworn to and subscribed before me this 30th day of January, 2017.

Notary Public
My Commission Expires: 12/21/2019

STATE OF CALIFORNIA :
: SS:
COUNTY OF SANTA CLARA :

I, Christian Holmes, declare:

1. I am currently Senior Director of Commercial Operations of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2. I have read the foregoing Defendant Theranos, Inc.'s First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3. Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4. I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January, 2017

[signature]

Christian Holmes

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

Sworn to and subscribed before me this 30th day of January, 2017.

[signature]

Notary Public
My Commission Expires: 12/21/2019

STATE OF CALIFORNIA :
: SS:
COUNTY OF SANTA CLARA :

I, Daniel Young, declare:

1. I am currently Vice President, Theranos Systems and Computational Biosciences of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2. I have read the foregoing Defendant Theranos, Inc.'s First Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3. Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4. I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January, 2017.

Daniel Young

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30 day of January, 2017.

Notary Public
My Commission Expires: 02/07/2018

ALEJANDRO VALDIVIA AVENDANO
Commission # 2057127
Notary Public - California
San Francisco County
My Comm. Expires Feb 7, 2018