# EXHIBIT R

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., A Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership, | ) ) ) ) ) ) ) ) | C.A. No. 12816-VCL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THERANOS, INC., a Delaware corporation, ELIZABETH HOLMES, an individual, and RAMESH BALWANI, an individual, and DOES 1-10 | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT THERANOS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Court of Chancery Rules 26 and 33, Defendant Theranos, Inc. ("Theranos" or the "Company") hereby submits the following responses and objections to Plaintiffs' Second Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") as follows:

FOIA Confidential Treatment Requested by Theranos                                                    TS-0959090

## GENERAL OBJECTIONS

Theranos makes the following General Objections to the Interrogatories and incorporates them by reference into its response to each Interrogatory below as though fully set forth therein.

1.     Theranos incorporates all General Objections and Objections to Definitions and Instructions made in Theranos's Responses and Objections to Plaintiffs' First, Second, and Third Requests for Production of Documents and Theranos's Responses and Objections to Plaintiffs' First Set of Interrogatories.

2.     Theranos's responses to the Interrogatories are made without in any way waiving or intending to waive:

      a.     any objections as to the competency, relevancy, materiality, privileged status or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories;

      b.     the right to object on any ground to the information produced in response to the Interrogatories at any hearing or trial; or

      c.     the right to object on any ground at any time to a demand for further responses to the Interrogatories.

3.     Theranos objects to the Interrogatories to the extent they purport to require a legal conclusion.

- 2 -

4.     Theranos objects to Instruction B to the extent that it imposes burdens different than or in addition to those imposed by the Rules of the Court of Chancery of the State of Delaware.  Theranos's objections and responses are based solely upon Theranos's present knowledge, information, and belief.  Theranos does not in any way assume a continuing responsibility to update its answers based on information discovered, obtained, or created subsequent to the date of this response except as required pursuant to Court of Chancery Rule 26(e).

5.     In furnishing these responses to the Interrogatories, Theranos does not concede the truth of any factual assertion or implication contained in the Interrogatories.

6.     Theranos reserves the right to supplement, revise, correct, add to, or clarify the objections, answers, or responses set forth herein.  If Theranos identifies responsive information at a future date, it reserves the right at that time to amend its objections, answers, or responses and reserves the right to evaluate whether any privilege applies to such information and to assert such privilege.

## SPECIFIC OBJECTIONS AND RESPONSES

The following specific objections and responses shall be deemed to supplement the General Objections, which are incorporated into each of the specific responses and are not in any way limited by the specific objections and responses.

- 3 -

REQUEST NO. 53:     IDENTIFY ALL instances in which THERANOS's backup tapes stored at Iron Mountain (and/or any other location) were or may have been discarded or deleted.  For each instance so identified:

(a)     DESCRIBE ANY backup tape(s) that were or may have been discarded or deleted, including the contents, corresponding custodians, and date ranges for such content;

(b)     IDENTIFY the PERSON(S) who authorized, participated in, and/or had knowledge of ANY backup tapes that were or may have been discarded or deleted;

(c)     STATE the date(s) on which ANY backup tapes were or may have been discarded or deleted;

(d)     DESCRIBE the reason(s) why ANY backup tapes were or may have been discarded or deleted; and

(e)     DESCRIBE ANY investigation into the circumstances of ANY backup tapes that were or may have been discarded or deleted, including the date, manner, involved PERSON(s), and conclusions reached.

RESPONSE TO INTERROGATORY NO 53:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to Interrogatory No. 53 on the grounds that it is

overly broad, unduly burdensome, and seeks information that is not relevant to the

subject matter of the litigation.

Subject to and without waiving the foregoing objections and General

Objections, Theranos states that a company-wide litigation hold has been in effect

since as early as October 20, 2015, nearly a year before the Complaint in this

action was filed.  Accordingly, no backup tapes have been discarded since October

- 4 -

**Confidential**

20, 2015.  Before October 20, 2015, the Company had no written policies

regarding purging or archiving of electronic data, and the Company did not

routinely purge data.  On occasion, the Company discarded backup tapes that were

more than a year old, but the Company does not maintain records indicating the

quantity, content, or date of any of these discardings.

The following individuals may have knowledge regarding backup tapes:

| Name | Title | Description of Role | Present Contact Information |
|---|---|---|---|
| Antti Korhonen | Senior Systems Administrator (Current) | Manages Theranos information and data systems | Available through counsel |

REQUEST NO. 54:    DESCRIBE the "proprietary databases" to
which YOU referred in YOUR response to Interrogatory Nos. 18, 19,
21, 33, 28, and 29, including the contents, all available data points,
date ranges for available data, data sources, data collection methods,
data output capabilities, compilation report capabilities, search
capabilities, database administrator(s), authorized user(s), security
protocols, and metadata or user tracking capabilities.

RESPONSE TO INTERROGATORY NO 54:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to the phrases "contents, all available data points,

date ranges for available data, data sources, data collection methods, data output

capabilities, compilation report capabilities, search capabilities, database

administrator(s), authorized user(s), security protocols, and metadata or user

- 5 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959094

tracking capabilities" as overly broad and unduly burdensome because they comprise multiple subparts.

Subject to and without waiving the foregoing objections and General Objections, Theranos states that the Theranos LIS System ("TLIS") is a proprietary application that was designed to record, manage, and store data, as well as drive workflow and aid processes, in Theranos' CLIA-certified laboratories. The database that underlies TLIS contains information pertaining to patient encounters and the laboratory test results obtained in relation to those encounters.

**Database records**

TLIS provides a function to define, create, and edit database records. Such records may be created via the LIS Application or other laboratory applications connected to the LIS database. TLIS provides a function to receive or retrieve each record via standard communication protocols. The following is a list of all records: Patient record, physician record, provider record, provider location record, laboratory record, lab order record, lab test record, lab visit record, container barcode record, reference range, and case. A variety of fields may be populated for each record.

**Date ranges for available data**

The records in the database underlying TLIS span from approximately September 13, 2013 to approximately October 6, 2016.

- 6 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos

TS-0959095

**Data sources**

Data sources include the following:

1.      Automated entry of data from third-party clinical analyzers.

2.      Automated entry of data from proprietary analyzers.

3.      Automated entry of data from third-party Electronic Medical Record vendors via electronic interfaces.

4.      Manual entry of data through the user interface.

5.      Manual entry of data from third-party clinical analyzers.

6.      Manual entry of data from proprietary analyzers.

7.      Manual entry of data from third-party reference laboratories.

8.      Manual entry of data from other sources, including client communications and the internet.

**Data collection methods**

Data can be collected via electronic interfaces to analyzers and third-party software vendors.  Data can also be collected manually via input through the user interface.

**Data output capabilities**

Data output from TLIS was available through the follow capacities:

1.      Export to local machine/network

2.      Fax

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959096

3.      Email

4.      Electronic interface to third-party software vendor

**Compilation report capabilities**

TLIS provides a variety of template reports for users to download and

export.  The database may also be queried to generate custom reports for which

there are not defined templates.

**Search capabilities**

TLIS provides functions for users to search for patient records, physician

records, provider records, provider location records, lab order records, lab visit

records, container barcode record, reference ranges, and cases.  The database may

also be queried if the user interface does not provide the desired search

functionality.

**Database administrator(s)**

The following individuals served as database administrators:

| Name | Title | Description of Role |
|------|-------|---------------------|
| Shekar Chandrasekaran | Head of Software Development | Mr. Chandrasekaran was a member of the Software Development team and was responsible for designing and implementing TLIS. |
| Sekhar Variam | Director of Engineering | Mr. Variam was a member of the Software Development team and was responsible for designing and implementing TLIS. |
| Arunkumar Chockaiyan | Database Architect | Mr. Chockaiyan was a member of the Software Development team and was responsible for designing and implementing TLIS. |

- 8 -

**Confidential**

   TS-0959097

**Authorized Users**

More than 200 individuals within the CLIA-certified laboratories, Product, Software Engineering, IT, and Billing teams were granted access to the LIS application, with user roles defined for various functions.  To list and provide a description of all individuals who were ever granted access to TLIS, without reasonable limitation as to the significance of their roles within the Company or their relation to PFM's investment or this litigation, would be unduly burdensome and would require information that is irrelevant and immaterial to the claims or defenses of any party in this litigation.  Theranos therefore provides below a list of authorized users among the document custodians in this litigation.

Theranos states that it is currently aware that the following Theranos document custodians were granted access to TLIS:

1. Hoda Alamdar

2. Brad Arington

3. Sunny Balwani

4. Max Fosque

5. Christian Holmes

6. Mark Pandori

7. Chinmay Pangarkar

8. Adam Rosendorff

- 9 -

**Confidential**

9.     Suraj Saksena

10.    Don Tschirhart

11.    Daniel Young

**Security protocols**

TLIS has a multi-level security implementation:

1.     TLIS utilizes a central, role-based authentication system in which access is limited to a defined set of users.

2.     Role-based authentication provides the ability to assign a set of privileges to a given user, limiting the set of information available to that user.

3.     A complete audit trail of all changes made to laboratory results is maintained.

4.     A complete audit trail of all users who viewed a given patient result is maintained.

5.     Users may not delete records from TLIS.

**Metadata or user tracking capabilities**

Key user actions, including the viewing, entry, and release of patient laboratory results, are recorded by TLIS.

> REQUEST NO. 55:   IDENTIFY the "CLSI, FDA, Centers for Disease Control, and World Health Organization Guidelines," to which YOU referred on YOUR website, that were used to evaluate the ACCURACY of each of YOUR blood tests.  For each guidelines so identified, STATE the blood test(s) to which it was applied and the time period when it was applied.

- 10 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                          TS-0959099

RESPONSE TO INTERROGATORY NO 55:

Theranos incorporates by reference the General Objections set forth above.

Theranos further objects to the phrase "that were used to evaluate the

ACCURACY of YOUR blood tests" as an inaccurate representation of any

statement made on Theranos' website.

Subject to and without waiving the foregoing specific objections and

General Objections, Theranos states that it used various guidelines and standards

during the development of its assays and the design of validation studies for its

laboratory developed blood tests.  When preparing processes for and then

validating its assays, the Company consulted guidelines from the Clinical and

Laboratory Standards Institute ("CLSI").  Theranos further responds that its

ELISA-based laboratory developed tests were additionally validated in

consultation with the FDA's 2001 document *Guidance for Industry:  Bioanalytical*

*Method Validation*, available at

http://www.fda.gov/downloads/Drugs/Guidance/ucm070107.pdf.

Pursuant to Court of Chancery Rule 33(d), Theranos also directs Plaintiffs to

assay development reports, validation plans, validation reports, and business

records pertaining to Theranos' filings to FDA included in the Company's

document productions, which contain citations and other references to the

aforementioned CLSI and FDA guidance documents as well as other sources of

- 11 -

**Confidential**

guidance; they are located at THPFM0005687393–THPFM0005694497;

THPFM0005694630–THPFM0005696422; THPFM0005696531–

THPFM0005698807; THPFM0005698811–THPFM0005699177;

THPFM0005699299–THPFM0005699648; THPFM0005699651–

THPFM0005699696; THPFM0005699700–THPFM0005699833;

THPFM0005699836–THPFM0005700093; THPFM0005700096–

THPFM0005700419; THPFM0005700421–THPFM0005700803;

THPFM0005700805–THPFM0005701164; THPFM0005701175–

THPFM0005701656; THPFM0005701658–THPFM0005702246;

THPFM0005702250–THPFM0005702396; THPFM0005702400–

THPFM0005702852; THPFM0005702855–THPFM0005702995;

THPFM0005703984–THPFM0005704380; THPFM0005704384–

THPFM0005710106; THPFM0005752182–THPFM0005752568;

THPFM0005752594–THPFM0005752714.  Theranos believes that the citations

and references in these documents may be underinclusive.

By way of further response, pursuant to Rule 33(d), Theranos directs

Plaintiffs to its 510(k) submission to FDA for its HSV-1 assay, which documents

Theranos' use of Centers for Disease Control ("CDC") sample panels to assess the

ACCURACY of its HSV-1 blood test.  Theranos further directs Plaintiffs to its

pre-Emergency Use Authorization ("EUA") submissions to FDA for its Ebola

- 12 -

**Confidential**

Zaire and Zika assays, both of which document Theranos' use of CDC viral stock reference materials; the Company's Zika pre-EUA submission additionally documents Theranos' performance of method comparisons between its assay and CDC assays. These records are located at THPFM0005750323–THPFM0005751353; THPFM0005751750–THPFM0005751908; THPFM0005752715–THPFM0005753209.

Theranos further states that it obtained blinded samples from the CDC to assess the ACCURACY of certain other of Theranos' assays, that it performed method comparisons between certain of its assays and CDC assays, and that it used World Health Organization ("WHO")-standard reference materials from the National Institute for Biological Standards and Control to calibrate certain of its assays during development. Theranos used these WHO-standard materials as part of the assay development process to calibrate to an objective standard.

REQUEST NO. 56:   DESCRIBE the method(s) YOU used to calculate coefficients of variation or "CV" for each of YOUR blood tests.

RESPONSE TO INTERROGATORY NO 56:

Theranos incorporates by reference the General Objections set forth above.

Subject to and without waiving the General Objections, Theranos states that Theranos generally calculated coefficients of variation for its blood tests at multiple concentration levels by: (i) performing the relevant blood test on samples

- 13 -

**Confidential**

having a known concentration of the relevant analyte (or other quantitative

reportable); (ii) identifying and removing statistical outliers; and (iii) calculating

the coefficient of variation by computing the sample standard deviation of the

results in the data set so obtained, dividing that standard deviation by the mean of

the results in the data set, and multiplying the resulting quantity by 100.

> REQUEST NO. 57:     IDENTIFY the PERSON(s) who directed
> Carisa Bianchi, Gage Clegg, Natasha Katz, Kyle Thompson, and/or
> any other PERSON(s) to "updat[e] Theranos' website and social
> media accounts" and/or who made "substantive decisions about
> changes to the content of either the website or the social media
> accounts," as described in the Additional Custodians table in the letter
> sent on YOUR behalf by Timothy Perla, dated December 23, 2016.
> For each PERSON so identified, DESCRIBE his or her role in any
> decisions related to THERANOS's website and/or social media
> accounts, including the nature, time period, and circumstances of
> ANY specific content changes.

RESPONSE TO INTERROGATORY NO 57:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is overly

broad, unduly burdensome, and beyond the scope of permissible discovery, given

that the request could be construed to call for any "content changes" that were

made to the Company's website and social media accounts, without any limitation

as to the time period.  Theranos further objects to this Interrogatory on the ground

that it seeks information protected by the attorney-client privilege.

- 14 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                     TS-0959103

Subject to and without waiving the foregoing objections and the General Objections, Theranos states that Sunny Balwani, Jeffrey Blickman, Daniel Edlin, Christian Holmes, Elizabeth Holmes, and Heather King were involved in reviewing and/or signing off on some of the periodic updates to the website and/or social media accounts that were made by Carisa Bianchi, Gage Clegg, Natasha Katz, and Kyle Thompson.

| Name | Title | Present business address and telephone | Present residential address and telephone |
|---|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | | Available through counsel. |
| Jeffrey Blickman | Director, Business Analytics | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Daniel Edlin | Lead, Strategic Operations, Office of Chief Executive Officer (Former) | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | 400 Clementina St Apt 702 San Francisco, CA 94103 (201) 232-5974 |
| Christian Holmes | Senior Director of Commercial Operations | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Elizabeth Holmes | Chief Executive Officer | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Heather King | General Counsel (Former) | | 14700 Manuella Road Los Altos Hills, CA 94022; (202) 441-1084 |

REQUEST NO. 58:   DESCRIBE the laboratory studies and/or field-testing studies to assess the performance of YOUR blood testing methods undertaken in coordination with Pfizer, Schering-Plough, Celgene, Centocor, Stanford University, and the Department of Defense, to which YOU referred in YOUR responses to Interrogatory Nos. 17 and 23, and DESCRIBE the findings or results of each study.

- 15 -

**Confidential**

RESPONSE TO INTERROGATORY NO 58:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is

overbroad and unduly burdensome, and that it is better addressed by a document

production.  Plaintiffs have in fact requested certain of these documents in RFP

No. 54, and Theranos will produce responsive documents accordingly.

Subject to and without waiving the foregoing objections and the General

Objections, Theranos states that, pursuant to Court of Chancery Rule 33(d), the

Company has produced business records from which the answer to this

Interrogatory may be derived or ascertained and which are located at

THPFM0000028550-THPFM0000028552; THPFM0000032450-

THPFM0000032450; THPFM0000293055-THPFM0000293072;

THPFM0000690926-THPFM0000690934; THPFM0000690959-

THPFM0000690970; THPFM0000690991-THPFM0000690998;

THPFM0000691145-THPFM0000691159; THPFM0000691242-

THPFM0000691248; THPFM0000691401-THPFM0000691403;

THPFM0000691406-THPFM0000691406; THPFM0000691421-

THPFM0000691422; THPFM0000691484-THPFM0000691496;

THPFM0000691517-THPFM0000691532; THPFM0000691936-

THPFM0000691937; THPFM0000692119-THPFM0000692120;

- 16 -

TS-0959105

THPFM0000692167-THPFM0000692173; THPFM0000692419-

THPFM0000692420; THPFM0000813063-THPFM0000813063;

THPFM0000813067-THPFM0000813068; THPFM0000813071-

THPFM0000813074; THPFM0000813104-THPFM0000813111;

THPFM0000813234-THPFM0000813235; THPFM0000813237-

THPFM0000813237; THPFM0000821474-THPFM0000821478;

THPFM0000870915-THPFM0000870915; THPFM0000871059-

THPFM0000871059; THPFM0000881410-THPFM0000881414;

THPFM0000886503-THPFM0000886504; THPFM0000886928-

THPFM0000886929; THPFM0001679311-THPFM0001679336;

THPFM0002250584-THPFM0002250584; THPFM0002250594-

THPFM0002250594; THPFM0002257019-THPFM0002257025;

THPFM0002257033-THPFM0002257033; THPFM0002367177-

THPFM0002367177; THPFM0002367649-THPFM0002367652;

THPFM0002367655-THPFM0002367665; THPFM0002367668-

THPFM0002367687; THPFM0002368292-THPFM0002368295;

THPFM0002368297-THPFM0002368298; THPFM0002410761-

THPFM0002410763; THPFM0003776388-THPFM0003776402;

THPFM0003783222-THPFM0003783227; THPFM0003826215-

THPFM0003826217; THPFM0003864569-THPFM0003864569;

- 17 -

THPFM0004510593-THPFM0004510608; THPFM0005466112-

THPFM0005466292; THPFM0005468784-THPFM0005468799;

THPFM0005481042-THPFM0005481049; THPFM0005487481-

THPFM0005487494; THPFM0005487605-THPFM0005487608;

THPFM0005487626-THPFM0005487628; THPFM0005487637-

THPFM0005487639; THPFM0005499322-THPFM0005499326;

THPFM0005545343-THPFM0005545348; THPFM0005545351-

THPFM0005545428; THPFM0005638605-THPFM0005638662;

THPFM0005643489-THPFM0005643518; THPFM0005654975-

THPFM0005683273; THPFM0005761456-THPFM0005761484.

> REQUEST NO. 59:    IDENTIFY ANY pharmaceutical company that used THERANOS's machines, equipment, and/or technology, including without limitation those listed in YOUR responses to Interrogatory Nos. 16, 17, and 23, and DESCRIBE the nature, time period, and circumstances of such use.

RESPONSE TO INTERROGATORY NO 59:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is

duplicative to the extent it seeks the same information as Interrogatory No. 58, as

well as information already provided in Theranos' responses to Interrogatory Nos.

16, 17, and 23.  Theranos also objects to this Interrogatory on the grounds that it is

overbroad and unduly burdensome in that it is without reasonable limitation as to

- 18 -

time or scope.  Theranos further objects to this Interrogatory as vague and
ambiguous as to the terms and/or phrases "used," "machines," "equipment,"
"technology," "nature," and "circumstances."  Theranos further objects to this
Interrogatory to the extent that it is better addressed by a document production.
Plaintiffs have in fact requested such documents in RFP No. 54, and Theranos will
produce responsive documents accordingly.

Subject to and without waiving the foregoing objections and the General
Objections, Theranos incorporates its specific objections and responses to
Interrogatory Nos. 16, 17, 23, and 58 and further identifies the following
pharmaceutical companies:

1. AstraZeneca

2. Bristol-Myers Squibb

3. GlaxoSmithKline

4. Merck & Co.

5. Novartis

By way of further response, and pursuant to Court of Chancery Rule 33(d),
Theranos refers Plaintiffs to business records produced in this action from which
the answer to the remainder of this Interrogatory may be derived or ascertained and
which are located at THPFM0005466112-THPFM0005466292;
THPFM0005466296-THPFM0005466379; THPFM0005468784-

- 19 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                                                  TS-0959108

THPFM0005468882; THPFM0005480140-THPFM0005480160;

THPFM0005481042-THPFM0005481049; THPFM0005487396-

THPFM0005487399; THPFM0005487481-THPFM0005487494;

THPFM0005487605-THPFM0005487608; THPFM0005487626-

THPFM0005487628; THPFM0005487637-THPFM0005487639;

THPFM0005497136-THPFM0005497139; THPFM0005499322-

THPFM0005499326; THPFM0005545351-THPFM0005545428;

THPFM0005638605-THPFM0005638662; THPFM0005643489-

THPFM0005643518; THPFM0005654975- THPFM0005683273.

> REQUEST NO. 60:   DESCRIBE the Johns Hopkins University scientists' due diligence review of THERANOS's blood testing technology and DESCRIBE the findings or results of the review, to which YOU referred in YOUR responses to Interrogatory Nos. 17 and 23.

RESPONSE TO INTERROGATORY NO 60:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is

overbroad and unduly burdensome, and that it is better addressed by a document

production.

Subject to and without waiving the foregoing objections and the General

Objections and pursuant to Chancery Rule of Court 33(d), Theranos refers

Plaintiffs to business records produced in this action from which the answer to this

- 20 -

Interrogatory may be derived or ascertained and which are located at

THPFM0005620882- THPFM0005620885.

> REQUEST NO. 61:   DESCRIBE ANY analyses, empirical studies, testing, and/or other validation of ANY of YOUR blood tests, machines, equipment, and/or technology by the National Aeronautics and Space Administration (NASA).

RESPONSE TO INTERROGATORY NO 61:

Theranos incorporates by reference the General Objections set forth above.

Theranos objects to this Interrogatory as vague and ambiguous as to the terms

and/or phrases "analyses," "testing," "other validation," "blood tests," "machines,"

"equipment," and "technology."  Theranos also objects to this Interrogatory to the

extent that it is better addressed by a document production.  Plaintiffs have in fact

requested such documents in RFP No. 78, and the Company will produce

responsive documents accordingly.

Subject to and without waiving the foregoing objections and the General

Objections, Theranos states the following:  On June 20, 2013, Theranos hosted

representatives of NASA's In-Flight Laboratory Analysis (IFLA) project for a

technology demonstration at the Company's Palo Alto facility.  NASA provided

Theranos with 15 blind serum samples to test for the presence of interferon-

gamma, tumor necrosis factor alpha, N-Telopeptide, and 25-hydroxy vitamin D.

NASA subsequently compared Theranos' results with NASA Johnson Space

Center (JSC) lab methods, focusing on the degree of qualitative agreement

- 21 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959110

between the two.  NASA's report regarding the demonstration concluded in part

that Theranos' "measurements generally exhibited fair to very good qualitative

agreement with the JSC standards."  This report reflecting NASA's conclusions

has been produced to Plaintiffs and is located at THPFM0000071866-

THPFM0000071871.

> REQUEST NO. 62:   IDENTIFY each department, division, and/or branch of the U.S. military and/or Department of Defense with which THERANOS contracted.  For each department, division, and/or branch so identified:
>
> (a)   IDENTIFY the THERANOS employee(s) and/or former employee(s) who participated in COMMUNICATIONS with the department, division, and/or branch regarding the contract;
>
> (b)   STATE the date the contract was executed;
>
> (c)   STATE the date the contract was terminated, if applicable; and
>
> (d)   DESCRIBE the reason(s) for termination of the contract, if applicable.

RESPONSE TO INTERROGATORY NO 62:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory as vague and ambiguous as to

the terms and/or phrases "department," "division," "branch," and "terminated."

Theranos also objects to the term "contract" as predicated on, and requiring, a legal

conclusion.  Theranos further objects to this Interrogatory on the grounds that it is

better addressed by a document production and that relevant documents will be

produced in response to Plaintiffs' RFP No. 53.

- 22 -

**Confidential**

Subject to and without waiving the foregoing objections and the General Objections, Theranos states that it decided to invest a large amount of capital in military and other government programs in order to contribute to, and provide solutions for, specific, unmet biomedical needs.  In the course of these interactions with the Department of Defense, the Company had economic and technical relationships with many elements of the U.S. military, including U.S. Special Operations Command (SOCOM), U.S. African Command (AFRICOM), U.S. Central Command (CENTCOM), the U.S. Army, and the Walter Reed Army Medical Center.

By way of further response, Theranos provides the following summary of U.S. military entities with which it executed a contract:

| Branch | Theranos Employees | Contract Executed | Was Contract Terminated | Reasons for Termination |
|---|---|---|---|---|
| U.S. African Command (AFRICOM) | Dan Edlin, Elizabeth Holmes | Invoice dated Sept. 26, 2012 | No | N/A |
| U.S. Special Operations Command (SOCOM) | Dan Edlin, Elizabeth Holmes | Contract executed Apr. 27, 2012; modified contracts executed Sept. 2012, Feb. 2013, Nov. 2013 | No | N/A |
| U.S. Army Burn Center | Dan Edlin, Elizabeth Holmes | Invoices dated July 16, 2014, Aug. 29, 2013 | No | N/A |

REQUEST NO. 63:    IDENTIFY any department, division, and/or branch of the U.S. military and/or Department of Defense with which THERANOS sought to contract and/or that sought to contract with THERANOS.  For each department, division, and/or branch so identified:

- 23 -

**Confidential**

                                                                       TS-0959112

(a)     IDENTIFY the THERANOS employee(s) and/or former employee(s) who participated in COMMUNICATIONS with the department, division, and/or branch regarding the potential contract;

(b)     STATE the date(s) COMMUNICATIONS with the department, division, and/or branch began and concluded;

(c)     DESCRIBE the substance of the COMMUNICATIONS with the department, division, and/or branch; and

(d)     DESCRIBE the reason(s) that THERANOS and the department, division, and/or branch did not enter into a contract.

RESPONSE TO INTERROGATORY NO 63:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to this Interrogatory as vague and ambiguous as to the terms and/or phrases "department," "division," "branch," and "sought to contract." Theranos also objects to the term "contract" as predicated on, and requiring, a legal conclusion. Theranos further objects to this Interrogatory to the extent it seeks information not in the possession, custody, or control of Theranos.

Subject to and without waiving the foregoing objections and the General Objections, Theranos states the following: Theranos had many communications with many individuals at the Department of Defense. Theranos states that it did not "seek to contract" with any department, division, and/or branch of the Department of Defense. Theranos does not have information regarding whether any department, division, and/or branch of the Department of Defense "sought to contract" with Theranos.

- 24 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                     TS-0959113

<u>REQUEST NO. 64:</u>    IDENTIFY ANY commercially available machine, equipment, or technology that YOU modified for use to process blood tests on CAPILLARY BLOOD SAMPLES or MICRO-SAMPLES, including without limitation machines, equipment, and/or technology manufactured by SIEMENS.  For each machine, equipment, and/or technology so identified:

(a)    DESCRIBE ANY modification(s) YOU made, the intended purpose(s) of such modification(s), STATE whether YOU consider ANY Such modification(s) proprietary, and STATE whether THERANOS filed an application for and/or received a patent for any such modification(s);

(b)    IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of ANY such modification(s);

(c)    STATE the date range(s) during which THERANOS used the machine, equipment, and/or technology to process blood tests for commercial testing center patients, and IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of such use;

(d)    IDENTIFY which blood test(s) THERANOS ran on the machine, equipment, and/or technology, as well as the time period during which each such test was run on the machine, equipment, and or/technology; and

(e)    DESCRIBE ANY analyses, empirical studies, testing, and/or other validation of the machine, equipment, and/or technology, whether performed by YOU or by third parties, or proposed or offered to YOU by third parties, and IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of such analyses, studies, testing, and/or other validation.

FOIA Confidential Treatment Requested by Theranos                                                          TS-0959114

RESPONSE TO INTERROGATORY NO 64:

Theranos objects to the phrase "modified for use to process blood tests" as vague and ambiguous, and incorporates by reference the General Objections set forth above.

Subject to and without waiving its specific and General Objections, Theranos states that Theranos modified the Siemens ADVIA 1800 analyzer, the BD Biosciences LSR Fortessa and BD Biosciences FACSCanto II flow cytometers, and the Drew Scientific Drew-3 Hematology System to process certain of its General Chemistry, ELISA, and Cytometry blood tests on capillary samples or micro-samples of blood:

(a)    **Modifications to Siemens ADVIA 1800.**  Theranos designed and manufactured a proprietary sample cup for use with the Siemens ADVIA 1800 analyzer to reduce the dead volume of the analyzer's standard sample cup.  The reduced dead volume allowed Theranos to reduce the sample volume required to perform each assay, relative to the requirement of the standard sample cup. Theranos also modified the software protocols of the Siemens ADVIA 1800, including by modifying the volumes of diluent and reagent added at various steps of each assay protocol for small-volume venous samples and collected using Theranos' proprietary Nanotainer and sample collection devices.  Theranos

- 26 -

**Confidential**

considers all of these modifications to the Siemens ADVIA 1800 to be proprietary to Theranos.

**Modifications to Devices Used for Complete Blood Count.**  Theranos performed its Complete Blood Count panel using novel and proprietary immunolabeling chemistries and methodology, rather than standard chemistries, on the BD Biosciences LSR Fortessa and BD Biosciences FACSCanto II flow cytometers for small-volume venous samples and samples collected using Theranos' proprietary Nanotainer and sample collection devices.  Theranos combined its proprietary immunolabeling approach on these flow cytometers with assay protocols on the Drew Scientific Drew-3 Hematology System ("Drew-3") to generate a Complete Blood Count panel with a full five-part white blood cell differential, beyond the three-part differential generated by the Drew-3 without modification.

Theranos has filed patent applications relating to the above-described modifications.

(b)     Theranos incorporates by reference the General Objections set forth above.  Theranos specifically objects to the term "had knowledge of" in part (b) of this Interrogatory as overbroad, as it potentially calls for identification of a large number of individuals.

- 27 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                          TS-0959116

Subject to and without waiving the foregoing specific objections and General Objections, Theranos states that it is currently aware that the following document custodians have or may have participated in modification of devices or technology, as described in the response to part (a) of this Interrogatory:

| Name | Title | Description of Role | Present Contact Information |
|------|-------|---------------------|----------------------------|
| Sunny Balwani | President and Chief Operating Officer (Former) | Mr. Balwani was involved in the implementation of modifications to the Siemens ADVIA 1800. | Available through counsel |
| Xinwei Sam Gong | Senior Scientist, Computational Biosciences; Machine Learning Lead | Dr. Gong is a member of the Computational Biosciences team and was involved with designing and implementing modifications to the software of the Siemens ADVIA 1800. | Available through counsel |
| Chinmay Pangarkar | Vice President, Assay Systems | Dr. Pangarkar led the Cytometry team and was involved with the implementation of modifications to the BD Biosciences LSR Fortessa, BD Biosciences FACSCanto II, and Drew Scientific Drew-3 Hematology System, and with validation and verification of the Complete Blood Count panel on those devices. | Available through counsel |
| Paul Patel | Director, Assay Development (Former) | Dr. Patel led the General Chemistry team and was involved with the implementation of modifications to the Siemens ADVIA 1800 and validation of assays on the modified Siemens ADVIA 1800. | Available through counsel |
| Adam Rosendorff | Laboratory Director (Former) | Dr. Rosendorff was involved with data processing connected with modifications to the Siemens ADVIA 1800 and with validation and verification of assays on the modified Siemens ADVIA 1800, BD Biosciences LSR Fortessa, BD Biosciences FACSCanto II, and Drew Scientific Drew-3 Hematology System. | |

- 28 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959117

| Name | Title | Description of Role | Present Contact Information |
|------|-------|---------------------|----------------------------|
| Daniel Young | Vice President, Theranos Systems and Computational Biosciences | Dr. Young leads the Computational Biosciences team and was involved with the review of data connected with modifications to the Siemens ADVIA 1800 and validation of assays on the modified Siemens ADVIA 1800. | Available through counsel |

(c)      Theranos incorporates by reference the General Objections set forth above.  Theranos specifically objects to the term "had knowledge of" in part (c) of this Interrogatory as overbroad, as it calls for identification of a large number of individuals.

Subject to and without waiving the foregoing objections and General Objections, Theranos states that it used the following instruments, modified as described in the response to part (a) of this Interrogatory, to process blood tests for commercial testing center patients during the following approximate date ranges:

1.  Siemens ADVA 1800:  October 13, 2013 to September 21, 2015;

2.  BD Biosciences LSR Fortessa:  October 11, 2013 to September 21, 2015;

3.  BD Biosciences FACSCanto II:  June 26, 2014 to September 21, 2015;

4.  Drew Scientific Drew-3 Hematology System:  July 30, 2014 to September 21, 2015.

By way of further response, Theranos states that it is currently aware that the document custodians identified in response to part (b) of this Interrogatory have or

- 29 -

**Confidential**

may have participated in use of the modified instruments listed above to process blood tests for commercial testing center patients.

(d)      Theranos states that the following blood tests were available to be run on modified Siemens ADVIA 1800 analyzers, in the approximate time frames indicated below:

1.      Acetaminophen (available January 24, 2014 to March 29, 2015)

2.      Alanine Aminotransferase (available October 13, 2013 to September 21, 2015)

3.      Albumin (available October 13, 2013 to September 21, 2015)

4.      Alkaline Phosphatase (available October 13, 2013 to September 21, 2015)

5.      Alpha-1 Acid Glycoprotein (available November 7, 2013 to September 21, 2015)

6.      Amylase (available March 9, 2014 to March 29, 2015)

7.      Anti-Streptolysin O (available March 25, 2014 to February 2, 2015)

8.      Apolipoprotein A1 (available June 10, 2014 to February 2, 2015)

9.      Apolipoprotein B (available June 10, 2014 to February 2, 2015)

10.      Aspartate Transaminase (available October 13, 2013 to September 21, 2015)

11.      Beta-2 Microglobulin (available March 25, 2014 to February 3, 2015)

- 30 -

**Confidential**

12.    Bicarbonate (available October 13, 2013 to September 21, 2015)

13.    Blood Urea Nitrogen (available October 13, 2013 to September 21, 2015)

14.    Calcium (available October 13, 2013 to September 21, 2015)

15.    Chloride (available October 13, 2013 to September 21, 2015)

16.    Cholinesterase (available January 28, 2014 to March 29, 2015)

17.    Complement Component 3 Antigen (available March 25, 2014 to January 28, 2015)

18.    Complement Component 4 Antigen (available March 25, 2014 to January 28, 2015)

19.    Creatine Kinase (available October 13, 2013 to April 13, 2015)

20.    Creatinine (available October 13, 2013 to September 21, 2015)

21.    Cystatin C (available March 25, 2014 to January 31, 2015)

22.    Direct Bilirubin (available October 13, 2013 to March 29, 2015)

23.    Ethanol (available November 22, 2013 to March 29, 2015)

24.    Ferritin (available March 25, 2014 to September 21, 2015)

25.    Gamma-Glutamyltransferase (available April 2, 2014 to March 30, 2015)

26.    Glucose (available October 13, 2013 to September 21, 2015)

- 31 -

**Confidential**

27.     High Density Lipoprotein (available October 13, 2013 to September 21, 2015)

28.     High-Sensitivity C-Reactive Protein (available December 8, 2013 to September 21, 2015)

29.     Immunoglobulin A (available March 25, 2014 to February 4, 2015)

30.     Immunoglobulin G (available May 10, 2014 to February 4, 2015)

31.     Immunoglobulin M (available March 25, 2014 to February 4, 2015)

32.     Inorganic Phosphorous (available February 15, 2014 to September 21, 2015)

33.     Lactate (available August 27, 2014 to March 28, 2015)

34.     Lactate Dehydrogenase (available April 12, 2014 to March 28, 2015)

35.     Lipase (available March 9, 2014 to August 19, 2015)

36.     Lithium (available December 13, 2013 to March 29, 2015)

37.     Low Density Lipoprotein (available October 13, 2013 to September 21, 2015)

38.     Magnesium (available February 20, 2014 to September 21, 2015)

39.     Potassium (available October 13, 2013 to September 21, 2015)

40.     Prealbumin (available May 8, 2014 to February 4, 2015)

41.     Salicylate (available January 27, 2014 to March 29, 2015)

42.     Sodium (available October 13, 2013 to September 21, 2015)

- 32 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                      TS-0959121

43.     Total Bilirubin (available October 13, 2013 to September 21, 2015)

44.     Total Cholesterol (available October 13, 2013 to September 21, 2015)

45.     Total Iron (available December 17, 2013 to September 21, 2015)

46.     Total Iron Binding Capacity (available February 13, 2014 to September 21, 2015)

47.     Total Protein (available October 13, 2013 to September 21, 2015)

48.     Triglycerides (available October 13, 2013 to September 21, 2015)

49.     Uric Acid (available November 12, 2013 to September 21, 2015)

By way of further response, Theranos states that the BD Biosciences LSR Fortessa flow cytometer, the BD Biosciences FACSCanto II flow cytometer, and the Drew Scientific Drew-3 Hematology System were used to process the Complete Blood Count test panel during the respective approximate time frames listed in Theranos' response to part (c) of this Interrogatory.

(e)     Theranos incorporates by reference the General Objections set forth above.  Theranos specifically objects to part (e) of this Interrogatory on the grounds that it is overbroad and unduly burdensome, and that it is better addressed by a document production.

Subject to and without waiving the foregoing objections and the General Objections and pursuant to Court of Chancery Rule 33(d), Theranos refers Plaintiffs to business records produced in this action from which the answer to part

- 33 -

**Confidential**

(e) of this Interrogatory may be derived or ascertained and which are located at

THPFM0005697045–THPFM0005697515; THPFM0005697597–

THPFM0005697681; THPFM0005697905–THPFM0005698212;

THPFM0005698811–THPFM0005699202; THPFM0005699836–

THPFM0005700093; THPFM0005700096–THPFM0005700419;

THPFM0005700421–THPFM0005700803; THPFM0005700805–

THPFM0005701164; THPFM0005701175–THPFM0005701656;

THPFM0005701658–THPFM0005702246; THPFM0005702250–

THPFM0005702396; THPFM0005702400–THPFM0005702852;

THPFM0005703984–THPFM0005704244; THPFM0005704280–

THPFM0005704380; THPFM0005704384–THPFM0005704649.

REQUEST NO. 65:   STATE whether YOU diluted or otherwise prepared ANY blood sample(s) for use with commercially available machine(s), equipment, or technology(ies), whether modified or not, used to perform blood tests for commercial testing center patients. For each dilution or other preparation identified:

(a)   IDENTIFY the blood test(s) in connection with which the dilution or preparation was performed;

(b)   STATE the time period during which you diluted or otherwise prepared such blood samples;

(c)   DESCRIBE such dilution or other preparation;

(d)   IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of ANY such dilution or other preparation;

- 34 -

FOIA Confidential Treatment Requested by Theranos                                      TS-0959123

(e)     IDENTIFY the machine, equipment, and/or technology used for ANY such dilution or other preparation; and

(f)     STATE whether THERANOS filed an application for and/or received a patent for any such dilution or other preparation.

RESPONSE TO INTERROGATORY NO 65:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to the phrase "diluted or otherwise prepared" as vague, ambiguous, and overly broad.

(a)     Subject to and without waiving the foregoing specific objections and General Objections, Theranos states that it diluted or otherwise prepared blood samples for every blood test it performed for commercial testing center patients.  A number of sample dilution and/or sample preparation steps were included within each assay protocol, whether such protocol was prescribed by Theranos or by a third-party manufacturer, of every blood test performed by Theranos using commercially available machines, equipment, or technology, whether modified or not.

(b)     Subject to and without waiving its specific and General Objections, Theranos states that, in accordance with its response to part (a) of this Interrogatory, Theranos diluted or otherwise prepared blood samples for use with commercially available machines, equipment, or technologies for the entire time period in which Theranos performed blood tests for commercial testing center patients using commercially available machines, equipment, or technology.

- 35 -

**Confidential**

(c)     Theranos further objects to part (c) of this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome, as it calls for description of multiple portions of the protocols for every blood test performed by Theranos for commercial testing center patients using commercially available machines, equipment, or technology, whether modified or not.

Subject to and without waiving its specific objections and the General Objections, Theranos states that the nature and number of the sample dilution and/or sample preparation steps varied depending on the assay protocol for each blood test performed.

(d)     Theranos further objects to the phrase "authorized, participated in, and/or had knowledge of" as vague, ambiguous, and overly broad.  Theranos therefore additionally objects to part (d) of this Interrogatory as unduly burdensome, as it calls for identification of numerous individuals involved in performing blood tests for commercial testing center patients using commercially available machines, equipment, or technology, whether modified or not.

(e)     Subject to and without waiving the foregoing specific objections and the General Objections, Theranos further objects to part (e) of this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome, and irrelevant, as numerous "machines, equipment, and/or other technology," have been used by Theranos for  dilution or preparation of blood samples for the numerous and varied

- 36 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos     TS-0959125

blood tests performed for commercial testing center patients using commercially available machines, equipment, or technology, whether modified or not.  A list of such "machines, equipment, and/or other technology" used for dilution and/or preparation is not relevant to any issue in this matter.

(f)     Subject to and without waiving the foregoing specific objections and the General Objections, Theranos states that it has filed numerous patent applications that could be construed as relating to dilution and/or preparation of blood samples for analytical testing on commercially available machines, equipment, or technology, whether modified or not.

REQUEST NO. 66:     IDENTIFY ALL instances in which THERANOS processed blood samples drawn from a PERSON who is and/or was an actual and/or potential investor in or business partner with THERANOS, or is and/or was affiliated with an actual and/or potential investor in or business partner with THERANOS, including but not limited to PFM, in connection with the evaluation or consideration of an investment in or business partnership with THERANOS.  For each instance so identified:

(a)     IDENTIFY the PERSON whose blood sample was drawn; STATE the date(s) on which the blood sample was drawn;

(b)     STATE whether the blood sample was a CAPILLARY BLOOD SAMPLE, a VENOUS BLOOD SAMPLE, and/or a MICRO-SAMPLE;

(c)     STATE whether the blood sample was drawn onsite at a THERANOS facility or at a RETAIL STORE;

(d)     IDENTIFY ALL current and/or former THERANOS officers and/or employee(s) who were involved in processing the blood sample; and

- 37 -

**Confidential**

> (e)     IDENTIFY the THERANOS SAMPLE PROCESSING UNIT
> and/or other machine, equipment, technology, and/or third-party
> laboratory or vendor used to process the blood sample

RESPONSE TO INTERROGATORY NO 66:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is overly

broad, particularly to the extent it asks Theranos to describe the intentions and

states of mind of third parties, and beyond the scope of permissible discovery. It is

not limited to the time period relevant to this action and seeks information about

events that occurred after PFM invested in Theranos, which are not relevant to this

suit.  Theranos also objects that this Interrogatory is vague and ambiguous in its

use of the terms "actual and/or potential investor," "affiliated with," "business

partner," and "in connection with the evaluation or consideration of an investment

in or business partnership."  Theranos further objects to this Interrogatory to the

extent it seeks information that is not in its custody, possession, or control.

Subject to and without waiving the foregoing objections and General

Objections, Theranos states that blood samples from actual or potential investors or

business partners were drawn and processed on a frequent and ad hoc basis, and

that sample draws and processing occurred in different locations and involved a

variety of different personnel, some of whom may no longer be with the Company.

Because of the ad hoc nature of these blood tests, the Company was not required

- 38 -

FOIA Confidential Treatment Requested by Theranos                                                  TS-0959127

to, and did not, maintain records which would enable it to provide complete and accurate information in response to this Interrogatory.

With respect to PFM, Theranos refers to its response to Interrogatory No. 11. In further response to part (a) of this Interrogatory, Theranos states:  Brian Grossman, Vivek Khanna, and Alex Rabodzey.

In further response to part (b) of this Interrogatory, Theranos states:  Brian Grossman's blood sample was drawn on January 27, 2014.  Vivek Khanna's blood sample was drawn on January 10, 2014.  Alex Rabodzey's blood sample was drawn on January 26, 2014.

In further response to part (c) of this Interrogatory, Theranos states that Grossman's blood sample was venous, Khanna's blood sample was capillary, and Rabodzey's blood sample was capillary.

In further response to part (d) of this Interrogatory, Theranos states that Grossman and Rabodzey had their samples drawn at a retail store.  Khanna had his sample drawn at Theranos.

In further response to part (e) of this Interrogatory, Theranos states that it defines the phrase "involved in processing the blood sample" as it appears in part (e) of this Interrogatory to include any individual who had the authority to run the test(s) on the blood sample, to upload the results of the test(s), or to release the results.  Accordingly, Theranos states that David Ramos and Bryon Bailey

- 39 -

**Confidential**

"processed" Grossman's blood sample.  Hoda Alamdar, Melissa MacCormack, Tina Lin, Nereyda Buenrostro, Kim Tran, and Li Ding-Chang "processed" Rabodzey's blood sample.  Because the blood test for Khanna was a technology demonstration, the Company did not maintain records that enable it to determine now which employees "processed" the sample.

In further response to part (f) of this Interrogatory, Theranos states that the analyzers used to process Grossman's blood sample were the CellDyn Ruby, ADVIA 1800, and the Immulite.

Khanna's finger stick blood sample was drawn using Theranos' proprietary sample collection device and Nanotainer.  The analyzer used to process Khanna's blood sample was a Theranos-proprietary modified ADVIA 1800.

Rabodzey's finger stick blood sample was drawn using Theranos' proprietary sample collection device and Nanotainer.  The analyzers used to process Rabodzey's blood sample were:  a Theranos-proprietary modified ADVIA 1800; a DCA Vantage; a TSPU version 3.5; and a Theranos-proprietary modified BD LSR Fortessa, a Beckman Coulter M4, and a Molecular Devices SpectraMax M5, in conjunction with Theranos' proprietary chemistries.

With respect to investors other than PFM, although Theranos disputes their relevance, Theranos has agreed to conduct an ESI search to a corresponding RFP, No. 71, as part of the full scope of document production in this case (*see* Perla

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                    TS-0959129

letter to Chan dated January 17, 2017).  Plaintiffs have agreed to this proposal (*see*

Chan letter to Perla dated January 18, 2017).  Plaintiffs can as easily identify and

catalogue these documents as can Theranos.

> REQUEST NO. 67:    IDENTIFY ANY tours of YOUR laboratory,
> office, and/or other facility that featured a viewing of YOUR
> SAMPLE PROCESSING UNIT(S) or other blood-testing machines,
> that YOU provided to ANY PERSON who is and/or was an actual
> and/or potential investor in or business partner with THERANOS, or
> is and/or was affiliated with an actual and/or potential investor in or
> business partner with THERANOS, including but not limited to PFM,
> in connection with the evaluation or consideration of an investment in
> or partnership with THERANOS. For each tour identified:
>
> (a)    STATE the date of the tour;
>
> (b)    IDENTIFY the PERSON(s) to whom the tour was given;
>
> (c)    STATE the machine(s), equipment, and/or technology(ies) that
> were shown;
>
> (d)    DESCRIBE the purpose for which each machine, equipment,
> and/or technology was used;
>
> (e)    STATE the location of each machine(s), equipment, and/or
> technology(ies) shown, and whether the machine(s), equipment,
> and/or technology(ies) were ordinarily stored in such location or
> moved there for purposes of the tour;
>
> (f)    IDENTIFY the PERSON(s) involved in showing the
> machine(s), equipment, and/or technology(ies); and
>
> (g)    DESCRIBE the representations YOU made during the tour
> regarding such machine(s), equipment, and/or technology(ies).

RESPONSE TO INTERROGATORY NO 67:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is overly

- 41 -

broad, particularly because it requests information regarding tours given over the Company's entire 10-plus year history, and beyond the scope of permissible discovery. It is not limited to the time period relevant to this action and seeks information about events that occurred after PFM invested in Theranos, which are not relevant to this suit. Theranos also objects to this Interrogatory as vague and ambiguous in its use of the terms "actual and/or potential investor," "affiliated with," "business partner," and "in connection with the evaluation or consideration of an investment in or business partnership."

Subject to and without waiving the foregoing objections and General Objections, Theranos states that the Company provided numerous tours to a variety of parties for various purposes on an ad hoc basis, and that because the tours were demonstrative and ad hoc in nature, the Company did not maintain records of them. Theranos further responds that the tours involved a variety of different personnel, some of whom may no longer be with the Company.

By way of further response, Theranos states that the machines, equipment, and/or technologies that would be shown during a given tour were context-specific and differed based on the purpose of the tour, the individuals taking the tour, the nature of the tour recipient's interest in Theranos, the information the recipient needed for his or her decision-making purposes (if applicable), and the need to protect the Company's proprietary information.

FOIA Confidential Treatment Requested by Theranos                                   TS-0959131

With respect to PFM, Theranos refers to its response to Interrogatory No. 11. In further response to part (a) of this Interrogatory, Theranos responds: February 3, 2014.

In further response to part (b) of this Interrogatory, Theranos responds: Brian Grossman, Vivek Khanna, and Alex Rabodzey.

In further response to part (e) of this Interrogatory, Theranos responds: Theranos' manufacturing facility in Newark and the Palo Alto R&D lab.

In further response to part (f) of this Interrogatory, Theranos responds: Theranos employees Todd Cardiff, Timothy Smith, David Kosanke, Paul Patel, and Edgar Paz.

In further response to parts (c), (d), and (g) of this Interrogatory, Theranos responds that relevant personnel at Theranos do not specifically recall this tour with PFM, the specific machines, equipment, or technologies that were shown to PFM, or any conversations with PFM regarding such machines, equipment, or technologies.

With respect to investors other than PFM, although Theranos disputes their relevance, Theranos has agreed to conduct an ESI search to a corresponding RFP, No. 72, as part of the full scope of document production in this case (*see* Perla letter to Chan dated January 17, 2017). Plaintiffs have agreed to this proposal (*see*

- 43 -

**Confidential**

Chan letter to Perla dated January 18, 2017).  Plaintiffs can as easily identify and

catalogue these documents as can Theranos.

> REQUEST NO. 68:   IDENTIFY ALL of YOUR former
> employee(s), who are custodians and/or who are referred to in YOUR
> Responses and Objections to Plaintiffs' First Set of Interrogatories,
> with whom YOU have a severance agreement, a settlement
> agreement, and/or a contract or other agreement related to the
> provision of consulting services.  For each PERSON(s) identified,
> DESCRIBE the content(s) and date of ANY such agreement or
> contract.

RESPONSE TO INTERROGATORY NO 68:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory as seeking information that is

irrelevant and immaterial to the claims and defenses of any party in this litigation

because severance agreements, settlement agreements, or other agreements related

to the provision of consulting services between Theranos and its former employees

have no relevance to PFM's investment.

Subject to and without waiving the foregoing objections and General

Objections, Theranos states that Plaintiffs have said that they issued this

Interrogatory to obtain "information regarding individuals who made or learned of

…complaints [relating to Plaintiffs' allegations] and were terminated as a result."

(*See* Chan Letter to Perla, dated January 13, 2017 regarding corresponding RFP

No. 68).  With this understanding of the scope of the Interrogatory, and by way of

response, Theranos states that there are no responsive individuals.

- 44 -

**Confidential**

REQUEST NO. 69:    IDENTIFY ALL PERSON(S) who purchased and/or received shares of THERANOS stock at a price of $15 per share at any time between January 1, 2013 through February 4, 2014, and DESCRIBE the date and circumstances of such purchase and/or receipt.

RESPONSE TO INTERROGATORY NO 69:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to this Interrogatory as seeking information about investors other than PFM, which are not relevant to this action.  Theranos also objects on the ground that the phrase "circumstances of such purchase and/or receipt" is vague and ambiguous.

Subject to and without waiving the foregoing objections and the General Objections, Theranos provides the following response:

| Investor | Date of Stock Purchase |
|---|---|
| George Shultz | 3/28/2013 |
| PEER VENTURES GROUP IV, L.P. | 6/10/2013 and 1/14/2014 |
| Daniel C. Carter | 1/14/2014 |
| Crofton Capital GP | 1/14/2014 |
| Alan Eisenman | 1/14/2014 |
| Sherrie Eisenman | 1/14/2014 |
| Kendra Fadil | 1/14/2014 |
| Richard Kovacevich | 1/14/2014 |
| Gordon Family Trust | 1/14/2014 |

- 45 -

**Confidential**

| Investor | Date of Stock Purchase |
|---|---|
| Hall Black Diamond II, LLC | 1/14/2014 |
| Lucas Venture Group IV LP | 1/14/2014 |
| Lucas Venture Group XI | 1/14/2014 |
| Mendenhall TF Partners | 1/14/2014 |
| Black Diamond Ventures XII-B, LLC | 1/14/2014 |
| Colin Carter | 1/14/2014 |

REQUEST NO. 70:    DESCRIBE YOUR representations to investors in YOUR Series C-2 Preferred Stock regarding ANY of the following topics:

(a)    The number of blood tests YOU could perform for YOUR commercial testing center patients using CAPILLARY BLOOD SAMPLES as opposed to VENOUS BLOOD SAMPLES or other MICRO-SAMPLES;

(b)    The proportion of most-commonly ordered blood tests YOU could perform using CAPILLARY BLOOD SAMPLES as opposed to VENOUS BLOOD SAMPLES or other MICRO-SAMPLES;

(c)    The number of Current Procedural Terminology Codes YOUR blood tests could cover and which Current Procedural Terminology Codes were most used;

(d)    The ACCURACY of YOUR blood tests;

(e)    YOUR use of ANY machines, equipment, and/or technology manufactured by third parties to perform blood tests for YOUR commercial testing center patients, regardless of whether YOU made any modification(s) to such machines, equipment, and/or technology;

(f)    YOUR strategy with respect to FDA approvals and/or clearances, the proprietary technology YOU submitted and/or pre-submitted to the FDA, and YOUR progress with respect to such strategy(ies);

- 46 -

**Confidential**

(g)     YOUR relationships with RETAIL STORES and YOUR commercial roll-out strategy with RETAIL STORES;

(h)     YOUR relationships with hospitals and YOUR commercial roll-out strategy with hospitals;

(i)     YOUR relationships with physicians and/or physician practices, and YOUR commercial roll-out strategy with physicians and/or physician practices; and/or

(j)     YOUR relationships with, and/or the nature of YOUR work with, pharmaceutical companies, universities and/or research institutions, and/or any department, division, and/or branch within the U.S. military or the Department of Defense.

RESPONSE TO INTERROGATORY NO 70:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to Interrogatory No. 70 on the grounds that it is overly broad, unduly burdensome, and beyond the scope of permissible discovery, particularly because it seeks information about investments other than the PFM investment, which are not relevant to this suit. Theranos further objects to this Interrogatory to the extent that it is without reasonable limitation as to time or scope, and seeks information about events that occurred after PFM invested in Theranos, which are also not relevant to this suit. Theranos further objects on the ground that the term "representations" in the context of this Interrogatory calls for a legal conclusion; any pertinent "representations" by Theranos to investors are included within the applicable stock purchase agreements.

- 47 -

Although Theranos disputes the relevance of information related to other investors, Theranos has agreed to conduct an "other investors" ESI search as part of the full scope of document production in this case (*see* Perla letter to Chan dated January 17, 2017).  Plaintiffs have agreed to this proposal (*see* Chan letter to Perla dated January 18, 2017).  Plaintiffs can as easily identify and catalogue these documents as can Theranos.

> REQUEST NO. 71:   For each of the representations DESCRIBED in response to Interrogatory No. 70:
>
> (a)   IDENTIFY the investor(s) in YOUR Series C-2 Preferred Stock to whom YOU made such representations;
>
> (b)   STATE the date(s) on which such representations were made; and
>
> (c)   IDENTIFY YOUR current and/or former employee(s) involved in and/or knowledgeable about the basis for such representations.

RESPONSE TO INTERROGATORY NO 71:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to part (a) of this Interrogatory to the extent that it calls for the names of shareholders other than PFM, which are not relevant to this suit.

Subject to and without waiving the foregoing objections and the General Objections, Theranos incorporates by reference its objections and response to Interrogatory No. 70.

- 48 -

REQUEST NO. 72:    IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the correlation graphs contained in the "Confidential Slide Deck" YOU provided to PFM in January 2014.  For each such correlation graph:

(a)    IDENTIFY the THERANOS SAMPLE PROCESSING UNIT and/or other device used to perform the blood test in question; and

(b)    IDENTIFY YOUR current and/or former employee(s) involved in and/or knowledgeable about the compilation of data for the graphs.

RESPONSE TO INTERROGATORY NO 72:

Theranos incorporates by reference the General Objections set forth above.

Subject to and without waiving the General Objections, Theranos states that

Theranos prepared the correlation graphs from assay development reports,

experiment workbooks, and/or other documents from assay development studies.

Theranos further responds that the Theranos results underlying those

correlation graphs appearing in the "immunochemistry" section of the

"Confidential Slide Deck" were obtained from the 3.0 version of the THERANOS

SAMPLE PROCESSING UNIT.  The Theranos results underlying those

correlation graphs appearing in the "general chemistry" section of the

"Confidential Slide Deck" were obtained from bench studies.  The Theranos

results underlying those correlation graphs appearing in the "cytometry" section of

the "Confidential Slide Deck" were obtained from studies involving samples

immunostained with Theranos-proprietary antibody cocktails and subsequently

acquired on the Millipore Guava easyCyte 8HT flow cytometer.

- 49 -

**Confidential**

By way of further response, and pursuant to Court of Chancery Rule 33(d),

Theranos refers Plaintiffs to business records related to internal development

studies that have been produced in this action, from which the names of individuals

who were involved in and/or had knowledge about the compilation of data for the

correlation graphs may be identified.  These are located at THPFM0005687393–

THPFM0005694497; THPFM0005694630–THPFM0005696422;

THPFM0005698223–THPFM0005698401.

> REQUEST NO. 73:    IDENTIFY the DOCUMENT(S) and/or other
> source(s) of information YOU relied upon in order to prepare the
> "Macro Assumptions" regarding device cost, retail pharmacy
> revenues and costs, emergency room market data, and intensive care
> unit data, which YOU provided to PFM in January 2014, and
> IDENTIFY YOUR current and/or former employee(s) involved in
> and/or knowledgeable about the preparation of the "Macro
> Assumptions."

RESPONSE TO INTERROGATORY NO 73:

Theranos incorporates by reference the General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it is vague

and ambiguous with respect to the phrases "source(s) of information," "relied

upon," "device cost," "retail pharmacy revenues and costs," "emergency room

market data," "intensive care unit data," "involved in," "knowledgeable about,"

and "preparation of." Given the context of this Interrogatory, the Company

construes those terms to refer specifically to categories of information with those

designations on a tab labeled "Macro Market Assumptions," which was part of an

- 50 -

   TS-0959139

Excel workbook that PFM requested, and Sunny Balwani provided, on or about January 21, 2014.

Subject to and without waiving the foregoing objections and the General Objections, Theranos states that the categories of information identified in Interrogatory Nos. 73-75 appeared as assumptions in a working financial model, which Balwani and others at Theranos used as a strategic planning tool when evaluating various commercial opportunities for Theranos.

"Device cost" data came from Daniel Young and others in the Theranos manufacturing department and supply purchasing team.

"Retail pharmacy revenues" derived from CMS data, as well as from information supplied by Safeway. Balwani started with Medicare averages of revenue per requisition and reduced that figure substantially for the model.

"Retail pharmacy costs" came from internal sources, including Young, the manufacturing team, and the supply purchasing team.

"Emergency room market data" and "intensive care unit data" came from publicly available data on the Centers for Disease Control and Prevention (CDC) website. Although this information was included under the "Macro Market Assumptions" tab, the financial model did not incorporate this data.

Current and/or former employees who, over time, were involved in and/or knowledgeable about the preparation of the "Macro Assumptions" included Sunny

- 51 -

**Confidential**

Balwani, Jeff Blickman, Chonabot Intakeha, Mona Ramamurthy, Farzin Shadpour,

Danise Yam, and Daniel Young.

| Name | Title | Present (or Last Known) Business Address and Telephone Number | Present (or Last Known) Residential Address and Telephone Number |
|---|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | | Available through counsel. |
| Jeffrey Blickman | Director, Business Analytics | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Chonabot Intakeha | Senior Program Manager (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 937 Amarillo Ave., Palo Alto, CA 94303; (650) 492-9264 |
| Mona Ramamurthy | Head of Human Resources and Employment Counsel (Former) | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Farzin Shadpour | Supply Chain Manager (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 200 Joost Ave San Francisco, CA, 94131 (415) 913-8928 |
| Danise Yam (Spivey, So Han) | Corporate Controller (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 18660 Runo Ct., Cupertino, CA 95014; (650) 714-9868 |
| Daniel Young | Vice President of Theranos Systems and Computational Biosciences | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |

REQUEST NO. 74:   IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the "Market Assumptions" regarding pharmacy locations, tests per day per location, and number of THERANOS locations (by month) in retail pharmacies, physicians' offices, and hospitals, which YOU provided to PFM in January 2014, and IDENTIFY YOUR current

- 52 -

**Confidential**

and/or former employee(s) involved in and/or knowledgeable about the preparation of the "Market Assumptions."

RESPONSE TO INTERROGATORY NO 74:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the phrases "source(s) of information," "relied upon," "pharmacy locations," "tests per day per location," "number of THERANOS locations (by month) in retail pharmacies, physicians' offices, and hospitals," "involved in," "knowledgeable about," and "preparation of."

Subject to and without waiving the foregoing objections and the General Objections, Theranos incorporates by reference the second paragraph of its response to Interrogatory No. 73 as if fully restated here. Theranos further states that most of the information in the Theranos Market Assumptions tab, including retail pharmacy locations and number of tests per day, were originally provided by Walgreens and Safeway in the form of projections to Theranos. In addition, Safeway provided actual anonymized lab requisition data for Safeway employees. Balwani developed assumptions regarding physician and hospital deployments by using data gathered from physicians' offices and hospitals within certain markets, including information received from actual and prospective insurance strategic partners. In addition, Balwani incorporated information from quarterly and annual reports filed by Quest Diagnostics and LabCorp.

- 53 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                                 TS-0959142

Current and/or former employees who, over time, were involved in and/or knowledgeable about the preparation of the "Market Assumptions" included Sunny Balwani, Jeff Blickman, Mona Ramamurthy, Farzin Shadpour, Danise Yam, and Daniel Young.

| Name | Title | Present (or Last Known) Business Address and Telephone Number | Present (or Last Known) Residential Address and Telephone Number |
|---|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | | Available through counsel. |
| Jeffrey Blickman | Director, Business Analytics | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Mona Ramamurthy | Head of Human Resources and Employment Counsel (Former) | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |
| Farzin Shadpour | Supply Chain Manager (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 200 Joost Ave San Francisco, CA, 94131 (415) 913-8928 |
| Danise Yam (Spivey, So Han) | Corporate Controller (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 18660 Runo Ct., Cupertino, CA 95014; (650) 714-9868 |
| Daniel Young | Vice President of Theranos Systems and Computational Biosciences | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |

REQUEST NO. 75:   IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the Pro Forma Income Statement, Pro Forma Quarterly Statement of Cash Flow, and the Consolidated Balance Sheet—including without

- 54 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos                                                      TS-0959143

limitation the notes regarding the intangible assets not included in the balance sheet—which YOU provided to PFM in January 2014, and IDENTIFY YOUR current and/or former employee(s) involved in and/or knowledgeable about the preparation of the Pro Forma Income Statement, Pro Forma Quarterly Statement of Cash Flow, and/or the Consolidated Balance Sheet.

RESPONSE TO INTERROGATORY NO 75:

Theranos incorporates by reference the General Objections set forth above. Theranos specifically objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the phrases "source(s) of information," "relied upon," "involved in," "knowledgeable about," and "preparation of."  Given the context of this Interrogatory, Theranos construes those terms to refer specifically to categories of information on tabs labeled "Pro Forma Income Statement," "Summary CF Statement," and "Balance Sheet," which in turn were part of an Excel workbook that PFM requested, and Sunny Balwani provided, on or about January 21, 2014.

Subject to and without waiving the foregoing objections, Theranos incorporates by reference the second paragraph of its response to Interrogatory No. 73 as if fully restated here.  The information for the Pro Forma Income Statement and Pro Forma Quarterly Statement of Cash Flow was derived from the assumptions disclosed in other tabs of the workbook provided to PFM, as described in the responses to Interrogatories Nos. 73 and 74. (As used here, the phrase "pro forma" was intended to signify that the financial model's statements

- 55 -

**Confidential**

were based on these assumptions.)  Danise Yam provided the balance sheets included in the model.  Yam also provided depreciation projections for the model and collected information on operations, including the cost of gas, insurance, and rent to account for expenses.  Mona Ramamurthy provided payroll data, including R&D, food, and employee benefits expenses.  Ramamurthy and Yam also provided projections for future payroll increases.  Finally, the "notes" appended to the balance sheet were based on the documents and materials referred to in those notes, such as the Walgreens and Safeway contracts, the hundreds of patents Theranos filed to protect its intellectual property, and Theranos' relationships with hospitals (such as Intermountain Health Care) and insurance payors.

Current and/or former employees who were involved in and/or knowledgeable about the preparation of the Pro Forma Income Statement, Pro Forma Quarterly Statement of Cash Flow, and/or the Consolidated Balance Sheet included Sunny Balwani, Danise Yam, and Mona Ramamurthy.

| Name | Title | Present (or Last Known) Business Address and Telephone Number | Present (or Last Known) Residential Address and Telephone Number |
|---|---|---|---|
| Sunny Balwani | President and Chief Operating Officer (Former) | | Available through counsel. |
| Mona Ramamurthy | Head of Human Resources and Employment Counsel (Former) | 1701 Page Mill Rd., Palo Alto, CA 94304; (855) 843-7200 | Available through counsel. |

- 56 -

**Confidential**

FOIA Confidential Treatment Requested by Theranos   TS-0959145

| Name | Title | Present (or Last Known) Business Address and Telephone Number | Present (or Last Known) Residential Address and Telephone Number |
|------|-------|------|------|
| Danise Yam (Spivey, So Han) | Corporate Controller (Former) | 1701 Page Mill Rd, Palo Alto, CA 94304; (855) 843-7200 | 18660 Runo Ct., Cupertino, CA 95014; (650) 714-9868 |

REQUEST NO. 76:   DESCRIBE YOUR analysis and/or determination of which blood tests are most commonly ordered by physicians and patients, as described in YOUR Interrogatory No. 20.

RESPONSE TO INTERROGATORY NO 76:

Theranos incorporates by reference the General Objections set forth above. Subject to and without waiving the General Objections, Theranos states that Theranos used sets of patient test-order data obtained from Walgreens, Safeway, and different payor groups associated with Blue Cross Blue Shield ("BCBS"), as well as Medicare data obtained from the Centers for Medicare and Medicaid Services ("CMS"), to estimate the frequency with which given tests were ordered per million patient test orders.  Using these same data sets, Theranos further analyzed the frequency with which certain tests were ordered together, *i.e.*, the frequency with which particular sets of distinct tests were included in a common patient test order.

REQUEST NO. 77:   IDENTIFY and DESCRIBE ALL policies and/or procedures CONCERNING compliance with state and/or federal laws, whistleblower reporting and protections, and/or ethics reporting.

- 57 -

**Confidential**

RESPONSE TO INTERROGATORY NO 77:

Theranos incorporates by reference General Objections set forth above.

Theranos specifically objects to this Interrogatory on the grounds that it seeks

information protected by the attorney-client privilege and work product doctrine.

Theranos also objects to this Interrogatory on the grounds that it is overly broad

and unduly burdensome because it requires identification of all policies or

procedures concerning compliance with state and/or federal laws touching on all

aspects of the Company's operations and having nothing to do with PFM's

investment in Theranos.  It also calls for information beyond the scope of

permissible discovery because the information that is requested has no connection

to PFM's investment in Theranos.  Theranos further objects to this Interrogatory on

the ground that it is better addressed by a document production.

Subject to and without waiving the foregoing objections and the General

Objections, the Company incorporates its response to RFP No. 73 and states that it

has produced business records in accordance with its response to RFP No. 73;

pursuant to Court of Chancery Rule 33(d), Theranos states that these records are

located at THPFM0005750176 - THPFM0005750322.

- 58 -

OF COUNSEL:

Timothy J. Perla
Wilmer Cutler Pickering Hale
    and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6696

Christopher Davies
Wilmer Cutler Pickering Hale
    and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6187

Matthew D. Benedetto
Wilmer Cutler Pickering Hale
    and Dorr LLP
350 South Grand Avenue
Suite 2100
Los Angeles, California 90071
(213) 443-5323

  *Attorneys for Defendant Theranos,
  Inc.*

DATED:  January 30, 2017

*/s/ Catherine G. Dearlove*
Gregory P. Williams (#2168)
Catherine G. Dearlove (#3328)
Kevin M. Gallagher (#5337)
Sarah A. Galetta (#6157)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

  *Attorneys for Defendants Theranos,
  Inc.*

- 59 -

FOIA Confidential Treatment Requested by Theranos                                          TS-0959148

STATE OF CALIFORNIA       :
                            : SS:

COUNTY OF SANTA CLARA   :

I, Brad Arington, declare:

1.     I am currently Chief Regulatory Counsel of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2.     I have read the foregoing Defendant Theranos, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3.     Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.     I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30th day of January , 2017

Brad Arington

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30th day of January , 2017.

Notary Public
My Commission Expires: 12/21/2019

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

FOIA Confidential Treatment Requested by Theranos

STATE OF CALIFORNIA        :
                               : SS:

COUNTY OF SANTA CLARA      :

I, Jeffrey Blickman, declare:

1.     I am currently Director, Business Analytics of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2.     I have read the foregoing Defendant Theranos, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3.     Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.     I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this **30** day of **January**, 2017

Jeffrey Blickman

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this **30th** day of **January**, 2017.

Notary Public
My Commission Expires: **12/21/2019**

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019
CSS1   CSS1

STATE OF CALIFORNIA        :

                                      : SS:

COUNTY OF SANTA CLARA    :

I, Max Fosque, declare:

1.    I am currently Senior Software Product Manager of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2.    I have read the foregoing Defendant Theranos, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3.    Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.    I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 3ᵇ day of January, 2017

Max Fosque

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30th day of January, 2017.

Notary Public

My Commission Expires: 12/21/2019

CSS1

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019

CSS1

STATE OF CALIFORNIA          :
                             : SS:
COUNTY OF SANTA CLARA        :

I, Christian Holmes, declare:

1.  I am currently Senior Director of Commercial Operations of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2.  I have read the foregoing Defendant Theranos, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3.  Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.  I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January, 2017

_____
Christian Holmes

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this 30th day of January, 2017.

_____
Notary Public
My Commission Expires: 12/21/2019

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019
CSS1

STATE OF CALIFORNIA        :
                                 : SS:
COUNTY OF SANTA CLARA    :

I, Daniel Young, declare:

1.     I am currently Vice President, Theranos Systems and Computational Biosciences of Theranos, Inc. and am authorized to make this affidavit on its behalf.

2.     I have read the foregoing Defendant Theranos, Inc.'s Responses and Objections to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

3.     Said responses and objections were prepared with the assistance of counsel for Theranos, Inc., upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

4.     I declare under penalty of perjury and pursuant to the laws of the United States and the State of California that the foregoing is true and correct.

Dated this 30 day of January 2017

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Daniel Young

Sworn to and subscribed before me this 30 day of January, 2017.

Notary Public
My Commission Expires: 02/07/2018

ALEJANDRO VALDIVIA AVENDAÑO
Commission # 2057127
Notary Public - California
San Francisco County
My Comm. Expires Feb 7, 2018

FOIA Confidential Treatment Requested by Theranos