# Exhibit 3

## THERANOS, INC.

## MINUTES OF A MEETING

## OF THE BOARD OF DIRECTORS

### Tuesday, October 8, 2013

Pursuant to notice duly given or waived, a regular meeting of the Board of Directors (the "***Board***") of Theranos, Inc., a Delaware corporation (the "***Company***"), was held on Tuesday, October 8, 2013, beginning at 9:00 a.m. (Pacific Time) at the Company Offices located at 1601 S. California Ave., Palo Alto, California.  Present at all or parts of the meeting in person were Directors Sunny Balwani, Elizabeth Holmes, Henry A. Kissinger, Richard M. Kovacevich, James N. Mattis, Samuel Nunn, William J. Perry, Gary Roughead and George P. Shultz.  Also present was Company counsel David Boies.  Mr. Balwani was appointed to act as secretary of the meeting.

After stating that a quorum of the Board was present and that the meeting had been duly noticed and convened, Ms. Holmes called the meeting to order.

### *New Directors*

The Board welcomed new Directors Richard Kovacevich and James Mattis to the Board.

### *Amendments to Constitutive Documents and Corporate Agreements*

Mr. Boies provided the Board with a detailed review of the proposed amendments to the Company's Certificate of Incorporation, Bylaws, Series C-1 Preferred Stock Purchase Agreement, Investors' Rights Agreement and Voting Agreement (attached hereto as Exhibit A-1, Exhibit A-2, Exhibit A-3, Exhibit A-4 and Exhibit A-5, respectively) and the termination of the Company's Amended and Restated Co-Sale Agreement.  Mr. Boies

**Theranos Confidential**                    1

FOIA Confidential Treatment Requested by Theranos

also disussed the Company's governance structure and Delaware law in the context of these amendments, including the Directors' duty of loyalty. The Board then had a detailed discussion regarding these matters, all the associated ammendments, and the rationale therefore, and agreed that they were in the best interest of the Company. In light of the additional rights such matters would grant Ms. Holmes, the Board discussed its desire to establish a special committee of the Board, consisting only of Directors who are independent of the Company's management and Ms. Holmes, and who are disinterested and independent with respect to the consideration of such matters, to further determine whether such matters are in the best interests of the Company and to make its recommendation to the Board. The Board then discussed that if the special committee were to determine such matters to be in the best interests of the Company, the Board would enter into a unanimous written consent to approve such matters. Ms. Holmes suggested and the Board agreed such approval be conditioned upon the approval of a majority of the outstanding shares of (i) the capital stock of the Company, (ii) each class and series of capital stock of the Company, (iii) the capital stock of the Company held by stockholders who are independent of Ms. Holmes, and (iv) the common stock held by stockholders who are independent of Ms. Holmes.

### *Strategic Plan*

Ms. Holmes presented the Board with an overview of the Company's performance against its strategic goals for 2013 and discussed the announcement of the Company's partnership with Walgreens. The Board then discussed the Company's approach to its retail launch and the associated steps it was taking to build a strong foundation on which to grow for the long-term. Ms. Holmes then reviewed with the Board the trade secret

**Theranos Confidential**                    2

FOIA Confidential Treatment Requested by Theranos

elements of the Company's work. Certain matters discussed with the Board which the Company needed to protect from public disclosure for competitive reasons were highlighted. Questions were asked, and a full discussion ensued among the Directors regarding the Company's strategic plan.

### *Commercial Overview*

Ms. Holmes then provided the Board with an overview of the Company's strategy for growth and business model, including its policy with respect to its physician-directed testing and the contracts being put in place with insurance partners. Ms. Holmes also informed the Board of the status of the Company's ongoing efforts to build out its commercial operations, as well as its work with various thought leaders to develop certain applications of its products.

The Board had a discussion regarding the advisability of the Company retaining security for Ms. Holmes due to the nature of the Company's business. Questions were asked, and a full discussion ensued among the Directors regarding this commercial update.

### *Real Estate Overview*

Ms. Holmes then provided an overview of the Company's existing real estate investment plans, construction status and potential new locations. Questions were asked, and a full discussion ensued regarding this real estate update.

### *Personnel Overview*

Ms. Holmes updated the Board on the Company's personnel growth and recruiting efforts, emphasizing the Company's approach to growing the Company through internal promotion. Questions were asked, and a full discussion then ensued among the Directors about this personnel update.

**Theranos Confidential**                    3

### *Regulatory Overview*

Ms. Holmes then presented the Board with an overview of the Company's interactions with various regulatory agencies, including performance, the status of pending matters and discussions and other communications with regulatory agencies. Questions were asked, and a full discussion ensued among the Directors regarding this regulatory update.

### *Commercial Overview*

Ms. Holmes provided the Board with an update regarding the Company's ongoing commercial initiatives, including its efforts to begin rolling out its retail lab infrastructure and to design systems to serve physicians. Ms. Holmes discussed with the Board the Company's work to realize savings for Medicare and Medicaid as well as the Company's longer term growth strategies and strategy around international deployment. Ms. Holmes also provided the Board with an overview of the Company's work with various government programs. Questions were asked, and a full discussion ensued among the Directors regarding this commercial update.

### *Product Overview*

Ms. Holmes presented the Board with an overview of the Company's products and their certification status and reviewed the Company's laboratory standard operating procedures, quality standards, audit results and test performance and validation data. Ms. Holmes then updated the Board with the Company's product and technology developments, including chemistry, hardware and software developments, and the Company's work with infectious diseases. Ms. Holmes also discussed with the Board the

**Theranos Confidential**                    4

Company's production investments and timelines and its investments in production facilities. Questions were asked, and a full discussion ensued among the Directors regarding this product update.

### *Finance Overview*

Ms. Holmes reviewed with the Board the Company's historical and projected financial statements and discussed the Company's strategy for infrastructure investments and growth, including the fact that the Company has historically financed its capital equipment purchases and other growth with cash from operations instead of debt. Ms. Holmes discussed with the Board the Company's efforts to be compliant with elements of Sarbanes-Oxley and other regulations, notwithstanding the Company's status as a private corporation. Ms. Holmes then reviewed with the Directors the Company's Insurance Policies and Coverage and the capitalization table of the Company. Questions were asked, and a full discussion ensued among the Directors regarding this finance update.

### *Intellectual Property Discussion*

Ms. Holmes then reviewed with the Board the Company's patent portfolio. Mr. Boies discussed with the Board the Company's ongoing efforts to defend its intellectual property. Questions were asked, and a full discussion ensued among the Directors regarding this intellectual property update.

### *Governance Discussion*

The Board then had a general discussion regarding the governance of the Company in light of the proposed amendments to the Company's constitutive documents and other corporate agreements. The Board discussed that these amendments were necessary to

**Theranos Confidential**                    5

FOIA Confidential Treatment Requested by Theranos                                      TS-0480502

ensure Ms. Holmes continue to control the Company as the Company continued to take in outside investments necessary for its growth. The Board then had a general discussion regarding the fact that it was of the utmost importance to both large and small shareholders of the Company that Ms. Holmes retain control of the Company and that the investments of shareholders in the Company were premised on Elizabeth maintaining control. The Board discussed ways to structure the ownership of the Company for the long-term, including potential new investment sources that would both foster future growth and give the Company the opportunity to repurchase shares of existing shareholders. The Board agreed that it is critical to the best interests of the Company for Ms. Holmes to retain control of the Company so that Ms. Holmes and the Company may properly realize her long-term vision for the Company, and the Board approved the grant to Ms. Holmes of a both a golden share as well as high-vote shares of stock of the Company. Ms. Holmes discussed that she had previously not implemented a high-vote model because she desired to earn her ownership in the Company through her compensation, which was taken in stock rather than cash. Ms. Holmes discussed her desire that the golden share approach not be taken if the high-vote shares approach is taken, and that the majority of the minority of the Company's shareholders approve any grant of a golden share or high-vote shares even though such approval was not required.

The Board then further discussed the establishment of an Executive Committee in the context of these disucssions and structural updates, consisting of Ms. Holmes and Mr. Balwani, to which much of the Board's decision-making authority would be delegated. The Board also discussed updates to the indemnification agreements for each of the Directors, as well as making periodic increases to the Company's D&O coverage. The Board then

**Theranos Confidential**                                          6

had a detailed discussion regarding the carveouts to these indemnification agreements and D&O coverage, including a breach of the Directors' duty of loyalty to the Company by engaging in competitive or other harmful behaviors to the Company and a breach of the Directors' confidentiality obligations to the Company.

The Board then reviewed and approved the charter of the Executive Committee attached hereto as Exhibit B.

The Board then discussed potential additional Directors and the Board's intent to approve the minutes of this Board meeting by unanimous written consent unless reviewed in an person meeting.  The Board also discussed potential dates for future Board meetings.

The Board had a general discussion about the fair market value of the Company's common stock and its valuation methodologies, its most recent 409A valuation, the exercise prices of the option grants of the Company and a right of first refusal to repurchase shares of Company stock held by employees.

A discussion ensued regarding allowing Mr. Kissinger's options to vest if he were to pass away, and management committed to put certain protections in place in recognition of his contributions to the Company.

### *Approval of Interested Party Transaction*

After discussion and upon motion duly made and seconded, the following resolutions were adopted by all Directors in attendance:

WHEREAS, pursuant to Section 144 of the Delaware General Corporation Law, no contract or transaction between the Company and one or more officers or directors of the Company, or any other corporation, partnership, association or other organization in which one or

**Theranos Confidential**                    7

FOIA Confidential Treatment Requested by Theranos

more of the officers or directors of the Company is an officer or director of, or has a financial interest in (any such party is referred to herein individually as an "*Interested Party*," and any such contract or transaction is referred to herein as an "*Interested Party Transaction*"), shall be void or voidable solely for that reason, or solely beacause the director or officer is present at or participates in the meeting of the Board that authorized the Interested Party Transaction or solely because the vote of any such director is counted for such porpose, if (i) the material facts as to the director's or officers' relationship or interest and as to the contract are disclosed or are known to the Board, and the Board in good faith authorizes the contract or transaction by affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum, (ii) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders, or (iii) the contract or transaction is fair as to the Company as of the time it is authorized, approved or ratified by the Board or the stockholders.

**WHEREAS**, it is hereby disclosed or made known to the Board that Richard Kovacevich, who will purchase shares of the Company's Series C-1 Preferred Stock pursuant to the Amended and Restated Purchase Agreement (the "*Financing*"), is a director of the Company and is therefore, an Interested Party, and the Financing is an Interested Party Transaction.

**WHEREAS**, the members of the Board are aware of the material facts related to the Financing and have had an adequate opportunity to ask questions regarding, and investigate

**Theranos Confidential**                    8

FOIA Confidential Treatment Requested by Theranos                                    TS-0480505

the nature, and the relationship and/or interests, of the Interested Party in connection with the Financing.

**WHEREAS**, after careful consideration, the undersigned members of the Board have determined in good faith that the terms and conditions of the proposed Financing are fair, just and reasonable as to the Company and that it is in the best interests of the Company and its stockholders to enter into the Financing.

**NOW, THEREFORE, BE IT RESOLVED**, that each member of the Board in good faith hereby approves and consents to the Financing and deems it to be in the best interests of the Company and its stockholders.

### *Adjournment*

There being no further business to come before the Board, the meeting was duly adjourned.

_____
Sunny Balwani, Secretary

FOIA Confidential Treatment Requested by Theranos      TS-0480506