# Exhibit 16

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

KATHERINE A. TREFZ
(202) 434-5038
ktrefz@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 26, 2020

Via Email

Ross Weingarten
Assistant United States Attorney
Northern District of California
150 Almaden Blvd, Ste 900
San Jose, CA  95113

Re:   United States v. Elizabeth Holmes and Ramesh Balwani, CR 18-258-EJD

Dear Ross:

In furtherance to my March 23, 2020 email, I write to follow up on the issues raised in your March 20, 2020 letter.

Your newfound concern about the nature of Ms. Holmes' representation by Mr. Boies and his law firm is both surprising and further calls into question the quality of the taint team's privilege review.  If the taint team had questions about the nature or scope of Ms. Holmes' representations, that was an issue that should have been raised more than a year ago at the outset of this process.  To be clear, Boies Schiller represented Ms. Holmes in her individual capacity and as part of a joint representation with Theranos on numerous matters, in various capacities, between at least 2011 and 2016.  As a result, many BSF-related documents are privileged as it relates to Ms. Holmes, and we have and will assert those privileges.  It you don't agree with our assertions, you are able to challenge them before the Court.  But absent an order from the Court, you are ethically obligated to honor our assertions.

With respect to the Theranos privilege, we refer to the terms of the government's March 29, 2018 letter agreement with Theranos, a copy of which is attached.  Theranos has not waived any privilege for documents it produced like the ones identified in your letter.  Under the terms of the agreement, the government must "promptly notify Theranos in writing" if it "discovers Privileged materials," the government "shall not review, use, or disclose any document produced pursuant to this Agreement that the Department [of Justice] suspects was inadvertently produced and Privileged," and the government must certify in writing that it has returned or destroyed privileged documents.  Because you have identified a category of documents that were produced by Theranos as subject to a Theranos privilege, please confirm that you have complied with the terms of the letter agreement with respect to both these documents, as well as any other documents the taint team has identified as subject to a Theranos privilege.

WILLIAMS & CONNOLLY LLP

Ross Weingarten
March 26, 2020
Page 2

With respect to the specific points made in your letter, we can agree to disagree. Nevertheless, to give you some additional context, we convey the following additional facts in support of our privilege assertions:

1. Mr. Traub of DKC News and Ms. Button were both consultants engaged by Boies Schiller in connection with the firm's representation of Ms. Holmes and Theranos, and therefore are within the scope of the privilege.

2. Molly Levinson was also a consultant engaged by Boies Schiller in connection with the firm's representation of Ms. Holmes and Theranos, and therefore communications between Ms. King, in her capacity as Theranos' general counsel, and Ms. Levinson are within the scope of the privilege.

3. "DB" is a shorthand used to refer to Mr. Boies.

4. Horizon Media is a firm engaged by Theranos for media consulting and related services. The confidential nature of Horizon Media's relationship with Theranos preserves the privilege of otherwise privileged communications.

5. We are aware of no authority for the proposition that in the context of a joint representation, Ms. Holmes loses the protection of the privilege simply because she was not party to a particular communication.

6. We disagree with your position that Ms. Schneider's communications are privileged only if they "convey or receive legal advice to or from Mr. Boies." Ms. Schneider's role was not simply as a conduit of information for Mr. Boies. Ms. Schneider was part of a team where Boies Schiller provided legal advice to Ms. Holmes and Theranos, and Ms. Schneider's communications with Ms. Holmes are thus within the scope of the privilege.

Finally, we note that we are awaiting your response to the issues raised in our March 13, 2020 letter and March 23, 2020 email.

Sincerely,

Katie Trefz

Attachment

WILMERHALE

Christopher Davies

+1 202 663 6187 (t)
+1 202 663 6363 (f)
christopher.davies@wilmerhale.com

March 29, 2018

**FOIA CONFIDENTIAL TREATMENT REQUESTED
PURSUANT TO 17 C.F.R. § 200.83 AND 5 U.S.C. § 552**

**BY FEDERAL EXPRESS**

John C. Bostic
Assistant United States Attorney
Northern District of California
150 Almaden Blvd.
San Jose, CA 95113
Tel.: (408) 535-5589

Re:   Grand Jury Subpoena Investigation #2016R00024-15

Dear Mr. Bostic:

I write on behalf of Theranos, Inc. ("Theranos" or the "Company"), our client in the above referenced matter, concerning the production of documents in response to the Department of Justice's ("DOJ" or "Department") Grand Jury Subpoena dated September 6, 2017 (the "Subpoena").

Theranos intends to produce documents responsive to the Subpoena, but the productions are expected to be very large, involving hundreds of thousands of documents. In light of the significant time and expense associated with conducting a comprehensive review of the responsive documents to identify which documents are subject to the attorney-client privilege, work product protection, or any other applicable privilege or protection (collectively, "Privilege"), Theranos will produce the documents responsive to the Subpoena without necessarily completing such a review.

Theranos will produce documents responsive to the Subpoena as described above on the basis of the following agreement with the Department (the "Agreement"):

1) All documents produced in response to the Subpoena after the date of this Agreement shall be considered as produced pursuant to this Agreement.

2) Theranos has determined that a comprehensive review of documents for Privilege is cost prohibitive.

3) By producing documents pursuant to this Agreement, Theranos does not intend to waive, and is not waiving, any Privilege that is applicable to such documents before their production, except as provided in paragraphs 4 and 5. The Department will not assert any Privilege is waived due to production pursuant to this Agreement,

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006
Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Oxford   Palo Alto   Waltham   Washington

John C. Bostic
March 29, 2018
Page 2

WILMERHALE

except as provided in paragraphs 4 and 5, or that such production operates as a subject-matter waiver. Nothing in this Agreement prevents the Department from (i) contesting any claim that any documents were subject to a Privilege ("Privileged") before their production, or (ii) asserting that a Privilege applicable to any documents before their production was waived for reasons other than production pursuant to this Agreement.

4) If Theranos determines that a document produced pursuant to this Agreement is subject to a claim of Privilege, Theranos shall within 90 days of the privilege determination assert in writing any claim of Privilege applicable to such document. At the time of making such claim of privilege, Theranos shall produce a privilege log identifying the document or portion thereof subject to the claim and containing sufficient information to evidence its purportedly Privileged status, and a copy of all such documents on the log with the purportedly privileged portions redacted. If Theranos does not assert the claim of Privilege and produce a privilege log and redacted versions of any documents claimed to be Privileged within the above time period, the Privilege, if any, is waived as to the Department for all purposes.

5) The Department may at any time dispute a Privilege claim for any documents on the privilege log. If the Department notifies Theranos that it disputes the assertion of Privilege, Theranos shall within 30 business days of such notice either (i) withdraw the claim of Privilege in writing, or (ii) for each disputed item, address in writing each element required to establish a valid assertion of Privilege. If within 30 days of such notice, the Department does not receive a response as described in (i) or (ii) of this paragraph, the Privilege, if any, is waived as to the Department for all purposes.

6) The time periods set forth in paragraphs 4 and 5 above may be modified with the consent of the Department. Any such modifications shall be confirmed in writing.

7) Nothing in this Agreement shall prevent Theranos or the Department from submitting documents as to which Theranos has asserted a claim of Privilege to a Court in a non-public manner (*e.g.,* under seal) to request a determination as to the validity of a claim of Privilege.

8) If the Department discovers Privileged materials disclosed by Theranos, it shall promptly notify Theranos in writing. This Agreement does not alter any ethical obligations an attorney may have with respect to discovery of inadvertent disclosure of information or documents by another party.

9) Except as otherwise permitted by this Agreement, the Department shall not review, use, or disclose any document produced pursuant to this Agreement that the Department suspects was inadvertently produced and Privileged or to which Theranos has timely claimed Privilege pursuant to paragraph 4 (and, if required,

John C. Bostic
March 29, 2018
Page 3

WILMERHALE

supported the claim as described in paragraph 5), unless (a) the document was previously shown to a witness by the government or litigant during a deposition, proffer, or witness interview; or the Department first receives a determination by a Court that such document is not Privileged or that any Privilege was not waived or is otherwise inapplicable.

10) The Department shall certify in writing that it has returned or destroyed (i) documents subject to an undisputed claim of Privilege asserted in accordance with the terms of this Agreement, and (ii) documents determined by a Court to be Privileged within 10 days of said determination. However, no document will be returned unless Theranos's counsel first represents in writing that such document will be preserved and retained by counsel, in the form in which it was produced, until the later of the termination of an and all current or future litigation associated with the Department's investigation or notice from the Department that any applicable litigation hold or document preservation obligation has terminated.

11) Theranos will not contend that any member of the Department should be disqualified or that the Department's investigation or litigation has been tainted by any respect because of the Department's receipt or review of any document produced pursuant to this Agreement (even if such documents are subsequently determined by a Court to be Privileged).

Please confirm your agreement to these terms by countersigning this letter in the space indicated below.

Please do not hesitate to contact me with any questions.

Very truly yours,

Christopher Davies

Client Consent

I have reviewed this letter on behalf of Theranos, Inc., and my signature below indicates Theranos's agreement to be bound by its terms.

By: _____     Date: 3/29/18
David Taylor

Department's Consent:

The Department's agreement to the Terms of this letter is indicated by the signature on the line provided below:

ActiveUS 166320673v.2

AGREED AND ACCEPTED:
Department of Justice

By: _____  Date: 4/4/18

John C. Bostic, AUSA