STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5589
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING TESTS NOT IDENTIFIED IN THE BILL OF PARTICULARS [ECF No. 568] |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date: March 23, 2021<br>Time: 10:00 a.m.<br>Court: Hon. Edward J. Davila |

## INTRODUCTION & FACTUAL BACKGROUND

The Court should deny Defendant's motion to exclude references to assays not listed in the Indictment or the Bill of Particulars. A broad, blanket exclusion is not necessary to prevent prejudice to the defense, and such a ruling would have wide-ranging, unintended effects on the evidence bearing on several important issues in this case.

The Third Superseding Indictment (hereinafter, "the Indictment") alleges that Defendant engaged in schemes to defraud investors who purchased Theranos securities and patients who paid for Theranos's blood testing services. In furtherance of the fraud targeting investors, Defendant made materially false and misleading statements and failed to disclose material facts on a wide variety of topics. Those topics included: (1) the purported ability of Theranos's proprietary analyzer to perform the full range of clinical tests using a finger-stick blood sample; (2) Theranos's financial health and revenue amounts; (3) the methods used to test samples during technology demonstrations for potential investors; (4) Theranos's partnership with Walgreens; (5) Theranos's work with the U.S. Department of Defense; (6) the need for Theranos to obtain FDA approval for its tests and devices; (7) Theranos's use of commercially available third-party analyzers to conduct much of its clinical testing; and (8) whether Theranos's technology had been reviewed and validated by independent companies and institutions. (*See* Indictment, ECF No. 469 ¶ 12). Targeting patients, Defendant represented that Theranos could provide accurate and reliable blood test results despite her knowledge of serious accuracy and reliability problems associated with Theranos's technology. (*Id.* ¶ 16). In the context of Defendant's pending motion, it is important to note that the claimed accuracy of Theranos's tests is relevant only to a few of these categories of false statements.

In late 2020, Defendant filed motions seeking to dismiss the Superseding Indictment and requesting a bill of particulars in the alternative. (ECF Nos 204-206). Ruling on that motion, the Court generally rejected Defendant's arguments that the Superseding Indictment contained insufficient detail to advise her of the charges (ECF No. 330 at 9-12), but ordered a bill of particulars as to certain discrete issues, including the specific tests that the government alleges Theranos was not capable of consistently performing reliably and accurately. (*Id.* at 16). In ordering the bill of particulars, the Court cited case

law noting that a defendant should not be forced to prepare unnecessary defenses. (*Id.*). The government provided Defendant with a bill of particulars listing the specific tests that Theranos could not conduct reliably and accurately, and that list of assays was subsequently incorporated into the operative Indictment. (*See* Indictment, ECF No. 469 ¶ 16).

Despite the clear language in the bill of particulars and the Indictment Defendant now argues that a Court order is necessary to prevent the government from arguing that Defendant was aware of accuracy problems associated with additional tests—or arguing that individuals who received those additional tests were defrauded. The government, though, has no intention of introducing evidence or argument for those purposes.[1] Moreover, Defendant's requested relief goes far beyond what would be necessary to ensure compliance with the Court's February 2020 Order. Rather than simply barring the kind of evidence and argument described above, Defendant seeks to purge from the trial any reference to any blood test not expressly listed in the Indictment. (*See* ECF No. 568-1 at 2). Such a ruling is both unsupportable and dangerously overbroad; as argued below, evidence regarding additional test types is admissible to the extent it is probative of issues in the case other than the accuracy and reliability of Theranos's tests.

**ARGUMENT**

Neither an indictment nor a bill of particulars is meant to give the defense a preview of the government's proof at trial. "A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). In this case, the government's bill of particulars and the additional information incorporated into the subsequent Indictments informs Defendant of the theory of the government's case, specifically listing the assays that the government alleges Theranos could not perform reliably and accurately. The government has no plans to introduce evidence or argument about tests other than those disclosed in the Indictment for the purpose of attacking their accuracy or reliability. That does not mean, however, that evidence regarding additional tests is not admissible for a variety of other purposes.

---

[1] If, in advance of trial, the government determines that additional assays need to be addressed in connection with Defendant's scheme to deceive patients regarding test accuracy, the government will promptly amend its Bill of Particulars. The government does not anticipate such a need at this time.

*First*, evidence regarding additional tests may be introduced at trial to demonstrate the number and types of tests that Theranos offered at a given time and, critically, which devices and methods Theranos used to perform those tests. As detailed above, the Indictment alleges that Defendant deceived investor victims regarding the capabilities of Theranos's analyzers, leading them to believe that Theranos's TSPU device was capable of conducting the entire range of clinical blood tests using a tiny sample from a finger stick. To show that this representation was false, the government plans to introduce evidence showing that many of the tests offered by Theranos could never have been run on its proprietary devices. That proof will require discussion of tests other than those listed in the Indictment.

For example, the evidence at trial will show that Theranos offered a complete blood count ("CBC") test. Qualified witnesses may explain that this test is common and relied upon by medical professionals in a variety of contexts. A blood-testing service seeking to replace conventional labs would therefore be wise to include this test on its menu. Generally, a blood analyzer device performs the CBC test using a component called a cytometer, which essentially counts the relevant blood cells in a patient sample. Notably, Theranos's Edison analyzer—the proprietary device it used to conduct clinical testing—did not include a cytometer. In other words, that device could never perform a CBC test. Despite this fact, Defendant gave potential investors presentations prominently featuring CBC on the company's test menu, surrounded by images and statements that would reinforce the victim's belief that Theranos's TSPU could handle every listed test. See Ex. 53 to Bob Leach Declaration.

Similarly, evidence referencing other test types might be relevant to occasions where Theranos conducted technology demonstrations for prospective investors, as alleged in the Indictment. In connection with her scheme to defraud investors, Defendant employed demonstrations where potential investors were led to believe that they were witnessing the Theranos TSPU perform a blood test in real time. Typically, these visitors received test results back as apparent proof of the TSPU's capabilities, and were never told that the samples were sometimes taken to the lab and run on different equipment.

Examples like the above are unrelated to allegations of specific inaccurate tests. Thus, introducing evidence regarding these facts is consistent with the Court's February 2020 Order even if that evidence relates to tests other than those listed in the Indictment.

GOVT OPP TO MOT RE TESTS NOT IN BILL OF
PARTICULARS
18-CR-00258 EJD                                  3

1      *Second,* evidence referencing additional tests is relevant to the extent it shows Theranos's
2  general practices in connection with developing, offering, conducting, and reporting results of its assays.
3  In order for the jury to reach conclusions about the ultimate issues in this case, it will need an
4  understanding of the way Defendant's company functioned, including how the company handled the
5  range of blood tests it offered.  For example, the jury may hear about Theranos's assay development
6  process and the level of verification involved in certifying a particular assay for clinical use.  Former
7  Theranos employees might also testify about Theranos's overall quality control and quality assurance
8  procedures, highlighting deficiencies in those areas.  To the extent these discussions involve Theranos's
9  tests across the board, they may include references to tests other than those listed in the Indictment.
10      Similarly, all of Theranos's advertising and promotional activities are relevant evidence in this
11  case, as they represent the efforts Defendant took to attract targets of the scheme to defraud.  Because
12  many of Theranos's customers purchased multiple tests during a single visit, the company's marketing
13  materials are relevant and admissible evidence even if they feature tests other than those named in the
14  Indictment.
15      The jury will also hear that, when Theranos reported results to patients, the company withheld
16  information regarding the type of analyzer used to perform a given test, sometimes leading to confusion
17  about inconsistent results.  While this fact is relevant to Defendant's attempts to hide Theranos's
18  reliance on third-party devices, it is unrelated to the Indictment's allegations about test accuracy and
19  thus does not implicate the Court's February 2020 Order.
20      *Third,* evidence regarding the accuracy or reliability of other tests offered by Theranos may be
21  relevant to show the deficiencies of the problematic tests listed in the Indictment.  The government
22  anticipates that former Theranos employees will testify that the company experienced repeated accuracy
23  problems with certain assays or categories of assays run on its proprietary analyzer and modified
24  commercial analyzers.  This witness testimony may include basic comparisons of Theranos's
25  problematic assays (those listed in the Indictment) against assays that tended not to suffer from the same
26  kinds of reliability problems.
27      The above examples do not capture all the ways that evidence regarding additional Theranos
28

GOVT OPP TO MOT RE TESTS NOT IN BILL OF
PARTICULARS
18-CR-00258 EJD                                                  4

1  tests can be introduced at trial.  They demonstrate, though, that a blanket order precluding all mention of

2  other tests would be overbroad and unwarranted.  Admitting this evidence for the purposes described

3  above will not lead to a variance between the Indictment's allegations and the proof at trial,

4  distinguishing this situation from the case law cited by Defendant.  For example, in *Cardenas*, the Ninth

5  Circuit reviewed a trial where a defendant had been convicted of identity theft based on evidence that he

6  had identified himself under a false name to a Border Patrol Officer.  *United States v. Cardenas*, 408

7  Fed. Appx. 106, 108-09 (9th Cir. 2011).  The indictment in that case, however, charged the defendant

8  with giving a different name.  *Id.*  Importantly, the jury instructions in that case allowed the jury to

9  convict despite the discrepancy.  *Id.* at 109.  The Ninth Circuit held that such a mismatch between the

10  charge and the proof at trial was a fatal variance.  *Id.* at 109-10.  In contrast to those facts, the

11  government in this case intends to introduce evidence regarding other Theranos tests, not to *vary* from

12  the allegations in the Indictment, but to *prove* them.  The introduction of evidence regarding those tests

13  will not enable the jury to convict on a basis other than what is laid out in the Indictment.

## CONCLUSION

15  Defendant's motion seeks to capitalize on the Court's Order requiring a Bill of Particulars, but

16  goes too far in advocating for a ruling that would deprive the jury of admissible evidence of Defendant's

17  fraud.  Accordingly, the Court should decline to issue a blanket order precluding any reference to tests

18  not expressly listed in the Indictment.

20  DATED:  January 8, 2021  Respectfully submitted,

STEPHANIE M. HINDS
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

 */s/ John C. Bostic*
JOHN C. BOSTIC
JEFF SCHENK
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys

GOVT OPP TO MOT RE TESTS NOT IN BILL OF
PARTICULARS
18-CR-00258 EJD                                5