# EXHIBIT 1

Execution Copy

## SETTLEMENT AGREEMENT

This confidential settlement agreement ("Agreement") is made as of April 29, 2017 (the "Effective Date") among (i) Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware limited partnership (collectively, "PFM"), on the one hand, and (ii) Theranos, Inc., a Delaware corporation ("Theranos" or the "Company"), Elizabeth Holmes ("Holmes"), Ramesh Balwani ("Balwani"), Fabrizio Bonanni, William Foege, and Daniel Warmenhoven (collectively, "Defendants"), on the other hand.  PFM and the Defendants are together referred to as the "Parties."

WHEREAS, on or about February 4, 2014, PFM purchased preferred stock of Theranos;

WHEREAS, on October 10, 2016, PFM filed a case captioned *Partner Investments, L.P. et al., v. Theranos, Inc., et al.*, Civil Action No. 12816-VCL (the "First Action"), alleging that Theranos, Holmes, and Balwani engaged in wrongdoing in connection with the aforementioned purchase of Theranos securities;

WHEREAS, on April 6, 2017, PFM filed a case captioned *Partner Investments, L.P. et al., v. Theranos, Inc., et al.*, Civil Action No. 2017-0262-JTL (the "Second Action"), alleging that Theranos, Holmes, and the other Theranos directors named therein, engaged in wrongdoing in connection with a pending tender offer to certain holders of preferred stock (the "Tender Offer"), as further described in the Verified Complaint for Injunctive and Declaratory Relief filed in the Second Action;

WHEREAS, on April 11, 2017, the Delaware Court of Chancery entered in the Second Action a temporary restraining order, barring the Tender Offer from closing prior to a hearing on a motion for preliminary injunction (the "TRO");

1

Execution Copy

**WHEREAS**, after good faith, arms' length negotiations, without conceding the merit or lack of merit of any claim, counterclaim or defense thereto, the Parties now wish to finally and forever resolve all disputes between them, as further specified herein;

**NOW, THEREFORE**, in consideration of the promises, mutual agreements and covenants set forth in this Agreement, together with other good and valuable consideration, the receipt and sufficiency of which each Party hereto acknowledges, the Parties agree as follows:

I.   **Dismissal of the Lawsuits**

    A.   Obligations With Respect to the First Action

        1.   Within one (1) business day after the Payment Date (as defined below in Section II.B hereof), counsel for PFM and counsel for Defendants will jointly file a Stipulation of Voluntary Dismissal of the First Action, on the form attached hereto as Exhibit A, or an alternative form agreed to by the Parties.  The Parties agree that the Court of Chancery of the State of Delaware, before Vice Chancellor J. Travis Laster, shall retain jurisdiction over the First Action.

    B.   Obligations With Respect to the Second Action

        1.   Within one (1) business day after the Payment Date, counsel for PFM and counsel for Defendants will jointly file a Stipulation of Voluntary Dismissal With Prejudice of the Second Action and with provisions to terminate the TRO, on the form attached hereto as Exhibit B, or an alternative form agreed to by the Parties.

        2.   PFM shall reasonably cooperate in Theranos's efforts to cause the TRO to be lifted promptly after the Payment Date, including as necessary joining

2

Execution Copy

filings in the Second Action to request the same (including but not limited to the filing of Exhibit B), and shall not contest or seek to restrain, enjoin or delay the closing of the Tender Offer.

## II.     Payment By Theranos

A.      In consideration of the releases contained herein and other good and valuable consideration provided by this Agreement, Theranos agrees to indefeasibly pay to PFM a total settlement amount of Forty-Three Million, Five-Hundred Thousand United States Dollars and 00/100 Cents ($43,500,000) (the "Cash Settlement Amount").

B.      Within one (1) business day after the Effective Date, Theranos shall complete and submit to its financial institution the instruction to transfer to PFM by irrevocable wire (in accordance with written instructions to be supplied by counsel to PFM) the Cash Settlement Amount.  Payment of the Cash Settlement Amount shall be made by electronic wire transfer to the bank account(s) identified in writing by counsel to PFM.  Within one (1) business day after the Effective Date, Theranos shall provide PFM a copy of the bank confirmation that Theranos's wire of the Cash Settlement Amount has been processed and that good and unencumbered funds are available for the payment of the Cash Settlement Amount.  The date that PFM receives the Cash Settlement Amount in its bank account(s) is the "Payment Date."  PFM shall promptly inform Defendants when the Payment Date occurs.

C.      Defendants shall have no responsibility or liability for the allocation of the Cash Settlement Amount after PFM's receipt.  PFM's allocation shall have no effect on the enforceability of this Agreement and the obligations hereunder.

D.      Under no circumstances, subject to Sections III.F and G hereof, shall any other Defendant or person other than Theranos be required to make any payment under this

3

Execution Copy

Agreement; with exception of the obligations in the Unsecured Note (as defined below in Section IV.A) in the event Theranos has commenced a voluntary case under the Bankruptcy Code on or before the first business day that is at least the 91st day following the Payment Date.  This Section II.D shall not apply and be of no effect in the event the Theranos Release Date does not occur pursuant to Section III.E hereof.

E.      Defendants agree and acknowledge that (i) in the absence of this Agreement, PFM, through the First Action, asserted claims and damages against Theranos in excess of $96,100,000, (ii) in exchange for the payment by Theranos of the Cash Settlement Amount and issuance of shares, Theranos is receiving reasonably equivalent value in the form of the releases and other consideration provided to Theranos pursuant to this Agreement, and (iii) except as expressly set forth herein and in the certificate of designation for the Series D-2A Preferred Stock, the Cash Settlement Amount shall not be subject to any rights of setoff, offset or recoupment.

F.      If the Cash Settlement Amount is not timely paid and received by PFM on or by May 1, 2017, then PFM shall immediately provide notice of default to counsel for the Parties.  If the default is not cured within two (2) business days, then PFM shall be deemed to have been irreparably harmed, and shall have the right to seek relief for such breach on an expedited basis in the Court of Chancery of the State of Delaware, or as set forth in Section XIX hereof.  In any proceeding referenced under this Section II.F, the Defendants agree that the only issue they can raise to the court is whether the Cash Settlement Amount was timely and fully paid.

**III.    Releases**

A.      Subject to Sections III.E, F and G hereof, without limiting the effectiveness of the conversion of preferred stock (as described in Section XI.B below), PFM on behalf of itself and

4

its direct or indirect affiliates, agents, trustees, directors, officers, subsidiaries, estates,

successors, assigns, members, employees, and general and limited partners (in their capacities as

members of the partnership), and on behalf of any person purporting to sue the Defendants on

behalf of or for the benefit of, or by virtue of their membership in, PFM (collectively, "PFM

Releasors"), hereby fully, finally, and forever waives, releases, relinquishes, and discharges the

Defendants, their respective successors and assigns and, in the case of Theranos, (a) its current

and former officers and employees, and each of its and their affiliates, contractors, consultants,

auditors, accountants, financial advisors, professional advisors, attorneys, investment bankers,

representatives, insurers, trustees, trustors, agents, professionals, spouses, immediate family

members, predecessors, successors, assigns, heirs, executors, board advisors, or administrators,

and (b) its current and former directors and counselors, and each of their affiliates, contractors,

consultants, auditors, accountants, financial advisors, professional advisors, attorneys,

investment bankers, representatives, insurers, trustees, trustors, agents, professionals, spouses,

immediate family members, predecessors, successors, assigns, heirs, executors, or administrators

(individually, a "Defendant Releasee" and collectively, "Defendant Releasees") from any and all

claims, demands, losses, rights, obligations, debts (except for the Unsecured Note), liabilities,

and causes of action of any nature whatsoever, whether known or unknown, suspected or

unsuspected, direct or derivative, and that have been or could in the future be asserted in any

forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law

or in equity, which any PFM Releasor now has or has ever had or may hereafter have directly or

indirectly against any Defendant Releasee, including, without limitation, any claim, demand,

cause of action, obligation, debt (except for the Unsecured Note) and liability arising out of or

relating to:  (i) the ownership of any Theranos securities, or in connection with the holding,

acquisition, or disposition of any Theranos securities, (ii) any purchase agreement and related

5

disclosures associated with any Theranos securities, or the holding, acquisition, or disposition of

any Theranos securities, including any agreement based upon or incorporating Theranos's

representations, warranties and disclosures as set forth in such purchase agreement, as well as

any representations, omissions, acts, or facts that have been made or asserted by Theranos or any

of the Defendant Releasees, (iii) any alleged violation by the Defendant Releasees of any federal,

state, local or foreign regulation, rule, or statute regulating securities, including, without

limitation, any alleged violation of the Securities Act of 1933, as amended, and the rules and

regulations thereunder, and any alleged violation of the Securities Exchange Act of 1934, as

amended, and the rules and regulations thereunder, and any alleged claim of fraud, fraudulent

inducement, negligent misrepresentation, or breach of contract, that arises out of or is related to

the purchase of any Theranos securities or in connection with the holding, acquisition, or

disposition of any Theranos securities, (iv) any breach of fiduciary duty in connection with the

matters set forth in subsections (i) through (iii), (v) any actions of, or failures to take an action

by, Theranos's Board of Directors and any committee of Theranos's Board of Directors in

connection with the sale of Theranos securities, (vi) any claim related to (A) Theranos's

compliance with applicable healthcare regulatory laws, (B) Theranos's issuance or sale of any

Theranos securities, or (C) the holding, acquisition, or disposition of any Theranos securities,

(vii) the Tender Offer, (viii) any claim that was or could have been brought with respect to the

Theranos securities in the First Action or the Second Action, and (ix) any other claim arising out

of or related in any manner to the purchase of any Theranos securities or in connection with the

holding, acquisition, or disposition of any Theranos securities (the "Defendant Released

Claims"). For avoidance of any doubt, and notwithstanding anything herein to the contrary, the

releases in this Section III.A (i) shall not be effective as to the Defendant Releasees if the

conditions precedent to such releases of such Defendant Releasees being or becoming effective

6

Execution Copy

in Sections III.E, F and G (as applicable) are not satisfied, (ii) shall not release, modify, or impair Defendants' obligations under this Agreement and all transactions and agreements contemplated and provided for herein, and (iii) shall not release any claims or causes of action with respect to the issuance, receipt, conversion, or transfer of Theranos preferred stock pursuant to this Agreement, if such claims are brought in response to any PFM Releasor being sued by any Theranos investor for complying with Section XI hereof or otherwise in connection with the transactions contemplated therein; provided, however, that the preceding clause shall not preserve claims for fraudulent inducement by any PFM Releasor against Defendant Releasees with respect to this Agreement or the securities issued in connection with Section XI.

B.      Each of the Defendants on behalf of itself and its direct or indirect affiliates, agents, trustees, beneficiaries, directors, officers, subsidiaries, estates, successors, assigns, members, employees, and investors (collectively, "Defendant Releasors"), hereby fully, finally, and forever waives, releases, relinquishes, and discharges PFM, PFM's respective successors and assigns and each of their respective current and former general partners, limited partners, officers, directors, employees, affiliates, contractors, counselors, consultants, auditors, accountants, financial advisors, professional advisors, attorneys, investment bankers, representatives, insurers, trustees, trustors, agents, professionals, spouses, immediate family members, predecessors, successors, assigns, heirs, executors, board advisors, or administrators (individually, a "PFM Releasee" and collectively, "PFM Releasees") from any and all claims, demands, losses, rights, obligations, debts, liabilities, and causes of action of any nature whatsoever, whether known or unknown, suspected or unsuspected, direct or derivative, and that have been or could in the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law or in equity, which any Defendant Releasor now has or has ever had or may hereafter have directly or indirectly against any PFM Releasee,

7

FOIA Confidential Treatment Requested by Theranos                                                  TS-0959202

Execution Copy

including, without limitation, any claim, demand, cause of action, obligation, debt and liability arising out of or relating to: (i) Theranos, (ii) PFM's purchase or ownership of Theranos securities, (iii) PFM's investigation of the Defendants and the prosecution of the First Action and the Second Action, and (iv) PFM's disposition of Theranos shares (the "PFM Released Claims," and together with the Defendant Released Claims, the "Released Claims"). For avoidance of any doubt, and notwithstanding anything herein to the contrary, the releases in this Section III.B shall not: (i) release, modify, or impair PFM's obligations under this Agreement and all transactions and agreements contemplated and provided for herein; or (ii) supply any release to any limited partner (other than in their capacities as members of the partnership) who does not execute a joinder with this Agreement in accordance with Section XII.A hereof. Further, notwithstanding anything herein to the contrary, the releases in this Section III.B shall not be effective with respect to the claims of any particular Defendant Releasee if that Defendant Releasee's release by the PFM Releasors is not or does not become effective pursuant to Sections III.E, F or G (as applicable).

C.       Subject to Sections III.E, F and G, the foregoing releases shall be broadly construed to effectuate the Parties' mutual intent of ensuring that each of the Defendant Releasees and the PFM Releasees (collectively, the "Releasees") have full and final peace from any claims related to or arising out of, directly or indirectly, PFM's investment in Theranos, the First Action, or the Second Action.

D.       Subject to Sections III.E, F and G, the PFM Releasors and the Defendant Releasors (collectively, the "Releasors") shall be deemed to relinquish, to the full extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code which provides:

8

FOIA Confidential Treatment Requested by Theranos                                          TS-0959203

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.

In addition, subject to Sections III.E, F and G, the Releasors shall be deemed to waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. The Releasors may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but it is their intention to fully, finally and forever settle and release any and all Defendant Released Claims and PFM Released Claims released hereby, whether known or unknown, suspected or unsuspected, which now exist, or heretofore existed or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.

     E.      The releases of the Defendant Released Claims pursuant to Section III.A hereof (the "Defendant Releases") as to Theranos only shall become effective (a) on the first business day that falls on a day that is at least the 91st day following the Payment Date (with the days occurring in the interim being referred to as the "91 Day Period"), and only if during the 91 Day Period (i) Theranos has not commenced any voluntary case under Title 11 of the United States Code (the "Bankruptcy Code"), and (ii) no involuntary case has been commenced against Theranos under the Bankruptcy Code, and (b) if any involuntary case has been commenced against Theranos under the Bankruptcy Code prior to the end of the 91 Day Period, on the date that such involuntary case has been dismissed by entry of a Final Order so long as such Final Order is entered prior to the expiration of the 91 Day Period. The date that the Defendant Releases as to Theranos become effective shall be referred to as the "Theranos Release Date."

FOIA Confidential Treatment Requested by Theranos        TS-0959204

Notwithstanding anything herein to the contrary, in the event the conditions for the Theranos

Release Date set forth in this Section III.E do not occur, PFM shall have the right to (i) subject to

Section III.J hereof, commence or re-commence the First Action, as the case may be, and (ii)

assert a claim in any proceeding to the fullest extent permitted by applicable law, and nothing in

this Agreement shall limit or modify the validity of such claim.

      F.      The releases of the Defendant Released Claims <u>as to Holmes and Balwani only</u>

shall (a) become effective upon the expiration of the 91 Day Period, and only if during the 91

Day Period (i) Theranos has not commenced any voluntary case under the Bankruptcy Code, and

(ii) no involuntary case has been commenced against Theranos under the Bankruptcy Code, and

(b) become effective, if any involuntary case has been commenced against Theranos under the

Bankruptcy Code prior to the end of the 91 Day Period, on the date that such involuntary case

has been dismissed by entry of a Final Order so long as such Final Order is entered prior to the

expiration of the 91 Day Period, but (c) cease to be effective if an Avoidance Action (defined

below) is commenced against PFM within any applicable statute of limitations and, in

connection with the final adjudication or other final resolution of a cause of action brought

against PFM under sections 544, 547, 548 or 550 of the Bankruptcy Code, or similar state law or

federal law relating to the avoidance or recovery of any fraudulent conveyance, fraudulent

transfer, or other avoidable transfer (an "Avoidance Action") in connection with any voluntary

case commenced by Theranos under the Bankruptcy Code or any involuntary case commenced

against Theranos under the Bankruptcy Code, PFM repays all or any portion of the Cash

Settlement Amount (a "Repaid Amount"), except that such Defendant Releases shall be

reinstated in the event that PFM receives, in any such voluntary or involuntary case, indefeasible

cash payments equal to or greater than any Repaid Amount, plus interest on any Repaid Amount,

reasonable attorneys' fees (including incurred in connection with defending against any

10

Avoidance Action), and costs (including expert fees). Notwithstanding anything herein to the contrary, in the event the conditions for the Theranos Release Date set forth in Section III.E do not occur, PFM shall have the right to (i) subject to Section III.J hereof, commence or re-commence the First Action, as the case may be, and (ii) assert a claim, for the full amount of money and damages owed to PFM on account of, or related to, the claims and causes of action asserted in the First Action, in any proceeding to the fullest extent permitted by applicable law, and nothing in this Agreement shall limit or modify the validity of such claim. In the event Theranos becomes a debtor or debtor-in-possession in a bankruptcy proceeding, and the applicable statute of limitations for any Avoidance Action has expired pursuant to applicable law and no Avoidance Action is or has been filed against PFM during such statute of limitations period, the releases of the Defendant Released Claims as to Holmes and Balwani shall be restored.

G.     The releases against all Defendant Releasees other than Theranos, Holmes, and Balwani shall (a) become effective upon the expiration of the 91 Day Period, but (b) cease to be effective if an Avoidance Action is commenced against PFM in a bankruptcy case in which Theranos is the debtor or debtor-in-possession, except that (c) such Defendant Releases shall be reinstated in the event that the Avoidance Action has been finally adjudicated or otherwise finally resolved pursuant to Final Order, without any liability of PFM for any Repaid Amount and if PFM receives, in any such voluntary or involuntary case, indefeasible cash payments equal to or greater than any Repaid Amount, plus interest on any Repaid Amount, reasonable attorneys' fees (including incurred in connection with defending against any Avoidance Action), and costs (including expert fees). Notwithstanding anything herein to the contrary, in the event the conditions for the Theranos Release Date set forth in Section III.E do not occur, PFM shall have the right to (i) subject to Section III.J hereof, commence or re-commence the First Action,

11

as the case may be, and (ii) assert a claim, for the full amount of money and damages owed to

PFM on account of, or related to, the claims and causes of action asserted in the First Action, in

any proceeding to the fullest extent permitted by applicable law, and nothing in this Agreement

shall limit or modify the validity of such claim.  In the event Theranos becomes a debtor or

debtor-in-possession in a bankruptcy proceeding, and the applicable statute of limitations for any

Avoidance Action has expired pursuant to applicable law and no Avoidance Action is or has

been filed against PFM during such statute of limitations period, the releases of the Defendant

Released Claims other than as to Theranos, Holmes, and Balwani shall be restored.

      H.     For purposes of this Agreement, a "Final Order" means an order or judgment, the

operation or effect of which has not been reversed, stayed, modified, or amended, is in full force

and effect, and as to which order or judgment (or any reversal, stay, modification, or amendment

thereof) (a) the time to appeal, seek certiorari, request for reargument or further review or

rehearing, or file a motion for stay, modification, or amendment has expired and no appeal,

petition for certiorari, request for reargument or further review or rehearing, or motion for stay,

modification, or amendment has been timely filed, or (b) any appeal that has been or may be

taken or any petition for certiorari, request for reargument or further review or rehearing, or

motion for stay, modification or amendment that has been or may be filed has been resolved by

the highest court to which the order or judgment was appealed, from which certiorari was sought,

or to which the request was made, and no further appeal or petition for certiorari, request for

reargument or further review or rehearing, or motion for stay, modification, or amendment has

been or can be taken or granted.

      I.     PFM and each of the Defendants agree to toll any applicable statutes of limitation,

statutes of repose, and the equitable defense of laches with respect to the claims or causes of

action asserted in the First Action from the Effective Date through and including the sooner of

(which date shall be referred to, with respect to each Defendant as applicable, as "Outside Release Date"):  (i) the date on which the release of any of the Defendant Released Claims in favor of such Defendant become final and not subject to abrogation (including pursuant to Section III.F or G hereof); or (ii) sixty (60) days following the date on which, by operation of this Agreement, the release of any of the Defendant Released Claims in favor of such Defendant do not become effective or, if once effective, is no longer effective.

       J.      In the event any of the Defendant Releases do not become effective (or later cease to be effective pursuant to this Agreement (including pursuant to Section III.F or G hereof)), PFM shall have the right to commence or re-commence the First Action, as the case may be.  To the extent that the Court of Chancery of the State of Delaware refuses to retain jurisdiction over the First Action as set forth in Section I.A, the Parties agree that the First Action shall be commenced or re-commenced in the Court of Chancery of the State of Delaware.  No party shall seek or support a change in venue or any challenge to jurisdiction with respect to any matter related to the First Action to the extent it is commenced or re-commenced in accordance with this Section III.J.  No Party will object to any request that such case be assigned to Vice Chancellor J. Travis Laster.

## IV.    Holmes's Unsecured Note

      A.      Holmes agrees to issue an unsecured note to PFM in the principal face amount of Seven Million, Five-Hundred Thousand United States Dollars and 00/100 Cents ($7,500,000), in the form attached hereto as Exhibit C (the "Unsecured Note").

      B.      Any obligations or payments under the Unsecured Note shall not be subject to any rights of setoff, offset or recoupment.

13

C.      On the Payment Date, Holmes shall deliver to counsel for PFM an original fully executed and enforceable version of the Unsecured Note.

D.      Holmes agrees and acknowledges that (i) in the absence of this Agreement, PFM, through the First Action, asserted claims and damages against Holmes in excess of $96,100,000, and (ii) in exchange for the issuance of the Unsecured Note and any payments thereunder, Holmes is receiving reasonably equivalent value in the form of the releases and other consideration provided to Holmes pursuant to this Agreement.

## V.      Covenant Not to Sue

A.      From and after the Payment Date, and so long as the releases provided in this Agreement become and remain effective, the Releasors agree and covenant not to commence or prosecute any Released Claims against any applicable Releasee.

B.      Upon the Payment Date, the Releasors agree and covenant not to initiate any involuntary case against Theranos under the Bankruptcy Code.

C.      Through the 91 Day Period, provided that (i) Theranos has not commenced any voluntary case under the Bankruptcy Code, and (ii) no involuntary case has been commenced against Theranos under the Bankruptcy Code, the Parties agree and covenant not to commence or prosecute any claims against any Releasee.

## VI.     True Up Payment

A.      In the event that, (i) an Avoidance Action has not been filed and the applicable statute of limitations for any such action has expired pursuant to applicable law, or (ii) the applicable statute of limitations for any Avoidance Action has expired pursuant to applicable law and an Avoidance Action has been filed and is or was pending as of the date of such expiration, but has been finally adjudicated or otherwise finally resolved pursuant to a Final Order, and (x)

14

the value of the aggregate distributions received by PFM on account of (a) its Series D-2A

Preferred Stock (issued pursuant to Section XI.A hereof), (b) its Series C-2 Preferred Stock,

and/or (c) the Unsecured Note, less any amounts, reasonable fees, or reasonable expenses PFM

may hereafter pay, repay, or incur in the First Action, the Second Action, or in connection with

the final adjudication or other final resolution of an Avoidance Action regarding its Series D-2A

Preferred Stock, the Cash Settlement Amount, and/or the Unsecured Note shall exceed (y)

$52,639,998, then PFM shall pay to Theranos any such excess.  For the avoidance of doubt, and

notwithstanding anything herein to the contrary, (a)–(c) in this Section VI.A does not include the

Cash Settlement Amount or any distributions or recoveries received by PFM from the Defendant

Releasees.

**VII.    Confidentiality**

A.      Each Party shall keep all of the terms of the Agreement STRICTLY AND

COMPLETELY CONFIDENTIAL and will not directly or indirectly issue any press release,

public statement, or communicate or otherwise disclose to any other person, by any means, the

negotiations leading to (including any information communicated between the Parties during the

negotiation), or the terms, amounts or content of the Agreement, except that: (i) the Parties may

disclose the fact that there was a settlement resolving all claims asserted in the First Action and

the Second Action; (ii) the Parties may disclose the negotiations leading to (including any

information communicated between the Parties during the negotiation), or the terms, amounts or

content of the Agreement to the extent they are required to do so by applicable State or Federal

law, regulation, court order, subpoena, or in response to a specific request by a regulatory

authority or governmental agency; (iii) any Party may disclose the negotiations leading to

(including any information communicated between the Parties during the negotiation), or the

15

terms, amounts or content of the Agreement as necessary to enforce the Agreement; (iv) each

Party may disclose the terms of the Agreement to its certified public accountant in connection

with a financial statement audit of such Party's financial statements; (v) PFM may as part of its

ordinary operational activity disclose the amount of any payment received pursuant to the

Agreement or disposition of securities of Theranos; and (vi) the Parties may disclose the terms of

the Agreement to their shareholders, employees, consultants, directors, officers, financial

advisors, tax advisors, counsel, agents, insurers, accountants, and other advisors subject to

reasonable requirements that such third parties keep the terms of the Agreement confidential.

      B.      The Parties represent that, should any information required to be kept confidential

pursuant to Paragraph A immediately above, or any information covered by the Confidentiality

Order in the First Action, be sought from them via subpoena or in litigation (collectively

"Discovery"), the Party or Parties who receive(s) the request for Discovery shall provide

reasonable notification to the other Party or Parties (unless notice has already been provided),

who will have the option to object to or take other action with respect to such Discovery.  The

Parties shall take all reasonable steps to ensure that any such Discovery will be made only

pursuant to a confidentiality order entered by the appropriate court that otherwise preserves the

confidentiality of the Discovery sought.  Nothing in this section VII.B shall be construed as

requiring any Party to challenge or appeal any order requiring production of Discovery, or to

subject itself to any penalties for noncompliance with any legal process or order, or to seek any

relief from any court.  Compliance by any Party with any order directing production of

Discovery pursuant to a subpoena or other compulsory process will not constitute a violation of

this Agreement.

FOIA Confidential Treatment Requested by Theranos
TS-0959211

Execution Copy

C.       The obligations of the Parties set forth in the Confidentiality Order entered in the

First Action, except for those set forth in paragraph 26 of that Confidentiality Order, shall

continue in full force and effect according to its terms.

D.       No Party shall file a motion to unseal, take any action to unseal, support any

motion to unseal filed by any other party or otherwise endeavor to unseal any documents filed

under seal with the Court in the First Action or the Second Action.

## VIII.   Non-Disparagement

A.       PFM agrees that it shall not make any statements whether written or oral, in any

forum whatsoever, disparaging any Defendant, including any statements tending to harm any

Defendant's business interests, reputation, or goodwill; provided, however, that this section does

not apply to statements made under oath, to government authorities, through compulsory

process, or if PFM is or is seeking to be a party to pending litigation or a bankruptcy proceeding,

or someone is seeking to make them a party to pending litigation or a bankruptcy proceeding.

B.       Defendants agree that they shall not make any statements whether written or oral,

in any forum whatsoever, disparaging PFM, including any statements tending to harm any

PFM's business interests, reputation, or goodwill; provided, however, that this section does not

apply to statements made under oath, to government authorities, through compulsory process, or

if a Defendant (and only as to such Defendant) is a party to pending litigation or a bankruptcy

proceeding, or someone is seeking to make such Defendant a party to pending litigation or a

bankruptcy proceeding.

## IX.     Enforcement of Confidentiality and Non-Disparagement Provisions

A.       The Parties acknowledge and agree that the confidentiality obligations set forth in

Section VII and the non-disparagement provisions set forth in Section VIII are material terms

17

FOIA Confidential Treatment Requested by Theranos                                                                 TS-0959212

and conditions of this Agreement, that breach of those provisions may have a material effect on

the Parties, and that any breach of those provisions would cause irreparable harm to the Parties.

To effectuate the enforceability of the foregoing confidentiality and non-disparagement

provisions in Section VII or Section VIII hereof and to avoid irreparable harm to the Parties, the

Parties agree, acknowledge, and approve that the Parties shall have available to them, should

there be any actual or threatened breach of the foregoing Section VII or Section VIII hereof, the

remedies of injunction and protective order, and such other relief as may be available under

applicable law.  Neither the breach of the confidentiality provisions or non-disparagement

provisions, nor award of any relief for breach of those provisions to the Parties, shall affect the

continuing validity or enforceability of this Agreement, and if this Paragraph is found to be

unenforceable, which would be contrary to the intent of the Parties, it shall be severed and the

remainder of the Agreement enforced.

**X.       Document Destruction**

A.       Within thirty (30) calendar days of the Theranos Release Date, PFM shall destroy

or return all copies of documents designated by Defendants as confidential or highly confidential

in the First Action except as required by law, regulation, order, process, or in connection with

PFM's electronically stored information to the extent that it has been retained automatically in

connection with standard electronic back-up procedures, and cannot be deleted without

unreasonable cost and effort.

B.       Within thirty (30) calendar days of the Theranos Release Date, Defendants shall

destroy or return all copies of documents designated by PFM as confidential or highly

confidential in the First Action except as required by law, regulation, order, or process.

18

C.     However, nothing in this section shall require outside counsel to destroy copies of confidential or highly confidential documents residing in their law firm files or archives.

## XI.     Issuance, Conversion, and Disposition of Shares

A.     **Issuance of Series D-2A Preferred Stock.**  Within one (1) business day after the Effective Date, PFM will deliver to the Company an investor representation statement in the form attached hereto as Exhibit D (the "Representation Statement").  On the Payment Date, and subject to receipt of the Representation Statement, the Company will issue to PFM an aggregate of 37 fully paid and non-assessable shares of Series D-2A Preferred Stock of the Company (the "Shares") allocated among the PFM entities as indicated to the Company prior to issuance.  The Series D-2A Preferred Stock will have the powers, designations, preferences and relative, participating, optional and other rights, and the qualifications, limitations and restrictions as set forth in a Certificate of Designation in the form set forth attached hereto as Exhibit E (the "Certificate of Designation"), which shall be filed with the Secretary of State of the State of Delaware within one (1) business day of the Effective Date.  In connection with and upon such issuance, the Company will deliver to PFM an opinion of counsel to the Company substantially in the form attached hereto as Exhibit F.  PFM shall not transfer (including, but not limited to, transfers by sale, gift, devise, bequest, descent, merger, operation of law or otherwise, assignments, pledges, encumbrances, hypothecations or other dispositions) any shares of Series D-2A Preferred Stock owned or controlled by PFM, any shares of Series C-2 Preferred Stock owned or controlled by PFM, or any shares of Class A Common Stock of the Company issued in exchange for the Series D-2A Preferred Stock or Series C-2 Preferred Stock (or any right or interest in any of the foregoing shares of capital stock of the Company), to any person or entity except as set forth in this Agreement or as approved by the Board of Directors of the Corporation

19

or a duly authorized committee thereof; provided, however, that in the event Theranos has commenced any voluntary case under the Bankruptcy Code or an involuntary case has been commenced against Theranos under the Bankruptcy Code, the Series D-2A Preferred Stock shall be transferrable to the same extent as the Series C-2 Preferred Stock as of the Effective Date. PFM shall not tender any shares of Series C-2 Preferred Stock into the Tender Offer.  For so long as any shares of the Series D-2A Preferred Stock are outstanding, Theranos, or any subsidiary or affiliate of Theranos shall not: (i) issue any securities that are senior to the Series D-2A Preferred Stock in terms of liquidation preference or rights, (ii) issue any securities that are *pari passu* with the Series D-2A Preferred Stock, other than the issuance of shares of Series C-1A Preferred Stock, Series C-1B Preferred Stock, Series C-1B* Preferred Stock, Series C-2A Preferred Stock and Series C-2A* Preferred Stock pursuant to the Tender Offer, (iii) amend, adjust or repeal, in any way the rights, privileges and preferences of any of its securities in a manner contrary to the terms of this Agreement or that in any way prejudices or adversely impacts PFM, (iv) reclassify, alter or amend any existing security of the Company that is *pari passu* with or junior to the Series D-2A Preferred Stock in terms of liquidation preference or rights, if such reclassification, alteration or amendment would render such other security senior to the Series D-2A Preferred Stock, and (v) issue any additional shares of the Series D-2A Preferred Stock after the initial issuance to PFM.  In connection with the issuance of the Shares, the Company represents and warrants to PFM that (i) it is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to issue the Shares; (ii) as of immediately prior to the issuance of the Shares, the authorized capital of the Company will include 37 shares of Series D-2A Preferred Stock having the rights, preferences and privileges set forth in the Certificate of Designation, none of which shall be issued and outstanding immediately prior to the issuance; (iii) all corporate action required to be

20

Execution Copy

taken by the Company's Board of Directors and stockholders in order to authorize the Company

to issue the Shares has been taken or will be taken prior to issuance.

B.    **Conversion of Preferred Stock.**  On the Theranos Release Date, PFM shall take

any and all actions necessary or desirable to convert any shares of preferred stock of the

Company that it owns or controls into Class A Common Stock of the Company (including

without limitation shares of C-2 Preferred Stock and, to the extent not already automatically

converted by their terms, shares of Series D-2A Preferred Stock owned or controlled by PFM).

In furtherance of the foregoing, (1) concurrently with the execution of this Agreement, PFM is

delivering to the Company a duly executed conversion notice in the form attached hereto as

Exhibit G, which notice shall take effect on the Theranos Release Date, and (2) from and after

the Effective Date PFM will execute such other documentation and agreements necessary to

effect the foregoing conversion upon the Theranos Release Date.

C.    **Transfer of Common Stock.**  On the Theranos Release Date and immediately

following the conversion of preferred stock set forth in Section XI.B above, PFM shall divest

itself of all equity interests in the Company (including without limitation shares of Class A

Common Stock) that PFM then owns or controls.  In furtherance of the preceding sentence, PFM

will take any and all actions necessary or desirable to transfer all shares of Class A Common

Stock that PFM owns or controls (1) in the event the Tender Offer is completed as of the

Theranos Release Date, to the holders of the Company's Series C-1 and Series C-2 Preferred

Stock whose shares were exchanged in the Tender Offer, on a pro rata basis, based on such

tendering holders' total dollar investment in the Company's Series C-1 and Series C-2 Preferred

Stock, relative to all tendering holders, but rounded in such a manner as to allocate all of the

Class A Common Stock interests PFM owns or controls or (2) to all of the holders of the

Company's Series C-1 and Series C-2 Preferred Stock, other than PFM, on a pro rata basis,

21

based on such holders' total dollar investment in the Company's Series C-1 and Series C-2

Preferred Stock relative to the total dollar investment of all holders (other than PFM) of the

Company's Series C-1 and Series C-2 Preferred Stock, but rounded in such a manner as to

allocate all of the Class A Common Stock interests PFM owns or controls.  In furtherance of the

foregoing, (1) concurrently with the execution of this Agreement, PFM is delivering to the

Company a duly executed assignment separate from certificate and stock power in the form

attached hereto as Exhibit H, which stock power shall take effect on the Theranos Release Date

and (2) from and after the Effective Date PFM will execute such other documentation and

agreements necessary to effect the foregoing transfer.  The Company will provide to PFM a list

of the persons and entities to whom transfers will be made, and the amounts of such transfers,

prior to the Theranos Release Date.  The parties acknowledge and agree that the requirement to

transfer the shares to other shareholders shall not create any privity between PFM and other

shareholders and shall not cause PFM to have any obligation to such other shareholders.  The

Company further represents that the transfer described in this paragraph shall not be a violation

of any purchase or repurchase right, right of first refusal or other right restricting the transfer of

the Company's capital stock (held by the Company or, to the Company's knowledge, any

stockholder).

**XII.    Additional Provisions Relating to Limited Partners**

A.    The following PFM limited partners that have invested directly or indirectly in

Theranos, through PFM, shall sign a joinder to the releases in this Agreement in substantially the

form attached hereto as Exhibit I, or an alternative form agreed to by the parties thereto, to be

delivered to Theranos within one (1) week of the Payment Date (or such extended time

reasonably agreed by the Parties): (i) any individual that as of the Payment Date is also an

22

Execution Copy

employee and/or partner of PFM and their spouse, (ii) Philippe P. Laffont, (iii) Juggernaut Fund,

LP, and (iv) any trust, estate, partnership, or similar entity established for or by these limited

partners.

## XIII.   No Admissions

A.      The Parties recognize and agree that the execution and delivery of the Agreement,

the settlement reflected herein, and all negotiations and communications or other actions relating

to this settlement, do not constitute an admission of any kind.  Defendants specifically deny any

violations of any common, statutory, or other local, state or federal United States law or

regulation, or any common, statutory or other law or regulation of any other jurisdiction.

Defendants further deny all allegations in the First Action and Second Action, and any and all

claims of wrongdoing, damages and liability whatsoever.  Nor, by entering into this Agreement,

does PFM disclaim the merit of its claims against Defendants.  This Agreement shall not be

offered or construed as, or received against any of the Releasees as evidence in any civil,

administrative, criminal or other action or proceeding of an admission by any of the Releasees

with respect to the truth or falsity of any fact alleged or the deficiency of any claim or defense

that could have been asserted or of any liability, fault, misrepresentation, omission or other

wrongdoing; provided, however, that nothing in this Section XIII.A alters or modifies the

agreements and acknowledgements of any of the Defendants in Section II.E or Section IV.D

hereto.

## XIV.   Representations and Warranties

A.      Each Party represents, warrants, and agrees that it: (i) has made such investigation

of the facts pertaining to this settlement and this Agreement and of all the matters pertaining

thereto as it deems necessary; (ii) has had the opportunity to have counsel of its choosing review

23

this Agreement prior to signing it and to seek appropriate legal advice from counsel regarding

this Agreement; (iii) has read this Agreement, understands its contents and has executed it

voluntarily, of its own free will, and without any coercion, undue influence, threat or

intimidation of any kind or type whatsoever; and (iv) has full power and authority to enter into

and perform all transactions contemplated by this Agreement on behalf of itself and each of the

persons it purports to represent.

B.      Without limiting the provisions hereof, the Parties agree that the mutual promises,

releases, agreements, and transfers herein constitute an exchange of fair and reasonable value.

C.      Each Party hereby represents and warrants that it has not voluntarily or

involuntarily assigned, pledged, liened, encumbered or otherwise sold or transferred in any

manner whatsoever to any other person or entity, either by instrument, in writing or otherwise,

any Released Claim, and that it will not take any action, or omit to take any action, that would

prevent, hinder, or otherwise adversely affect the releases under the Agreement or the

effectiveness of any of such releases.

D.      Theranos hereby represents and warrants that, as of the Effective Date and upon

payment of the Cash Settlement Amount, and after giving effect to the payments and transactions

contemplated by this Agreement, Theranos (a) is "solvent" and not "insolvent", as applicable

within the meaning given those terms and similar terms under the Bankruptcy Laws (as defined

below), (b) has and will have assets which, fairly valued, exceed its obligations, liabilities

(including contingent liabilities) and debts, in each case as fairly valued, (c) has not incurred and

does not intend to incur, or reasonably believe that it will incur, debts beyond its ability to pay

such debts as they become due (whether at maturity or otherwise), and (d) is not engaged or

about to engage in a business or transaction for which the remaining assets of Theranos are

unreasonably small in relation to the business or transaction or for which the property remaining

FOIA Confidential Treatment Requested by Theranos

with Theranos is an unreasonably small capital.  For purposes of this paragraph, the amount of

any contingent liability at any time shall be computed as the amount that, in light of all of the

facts and circumstances existing at such time, represents the amount that can reasonably be

expected to become an actual or matured liability.  The term "Bankruptcy Laws" means the

Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer

Act, the Uniform Voidable Transaction Act, or any other debtor relief law or insolvency law

(whether statutory, common law, case law or otherwise).

## XV.    Non-Solicitation

A.    PFM agrees not to encourage or solicit any limited partner to initiate any claim

against any Defendant Releasee concerning any investment in Theranos, or in an interest in an

entity that invested in Theranos.

## XVI.   Waiver of Breach

A.    One or more waivers of a breach of any covenant, term or provision of this

Agreement by any Party shall not be construed as a waiver of a subsequent breach of the same

covenant, term or provision, nor shall it be considered a waiver of any other then existing or

subsequent breach of a different covenant, term or provision.

## XVII.  Severability

A.    The invalidity or unenforceability of any provision or portion of this Agreement

will not affect the validity or enforceability of the other provisions or portions of this Agreement.

Should any provision or portion of this Agreement be declared invalid or unenforceable, the

remaining provisions of this Agreement shall remain in full force and effect.

FOIA Confidential Treatment Requested by Theranos                                                   TS-0959220

**XVIII. Entire Agreement; No Third Party Beneficiaries**

      A.      Each Party hereby represents, warrants and agrees that no representation, oral or written, is being relied upon by any Party in executing the Agreement other than the express representations of the Agreement.  The Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, and prior drafts of the Agreement, oral or written, and all prior contracts, agreements, and arrangements between the Parties regarding the subject matter of the Agreement.   This Agreement is not intended to confer upon any person other than the Parties and the Releasees any rights or remedies hereunder.

**XIX.   Governing Law/Venue**

      A.      This Agreement shall be governed by, construed under, and interpreted in accordance with, the laws of the State of Delaware, without regard to choice of law rules.

      B.      Any proceedings to enforce the Agreement shall be litigated solely in the Court of Chancery of the State of Delaware.  No party will object to any request that such case be assigned to Vice Chancellor J. Travis Laster.  If the Court of Chancery shall determine that it lacks subject matter jurisdiction over any such proceedings, then any such proceedings shall be litigated in a state or federal court (but not the United States Bankruptcy Court for the District of Delaware) in the State of Delaware that has subject matter jurisdiction over the proceeding.  The Parties submit to the jurisdiction of the foregoing courts for these purposes.

**XX.   Written Modification**

      A.      The Agreement may be varied or modified only by a written agreement signed by all of the Parties.

FOIA Confidential Treatment Requested by Theranos                                                                 TS-0959221

**XXI.   Execution in Counterparts**

      A.     The Agreement may be executed as one or more counterparts, and as executed shall constitute one agreement binding on all Parties hereto, notwithstanding that all the Parties are not signatories to the original or the same counterparts.  Counterparts may be executed in either original or electronically transmitted form (e.g., faxes or emailed portable document format (PDF) form), and the Parties adopt as original any signatures received via electronically transmitted form.

**XXII.   Construction of Certain Terms**

      A.     As used in the Agreement, (a) words of any gender include all genders; (b) words using the singular or plural number also include the plural or singular number, respectively; (c) the word "including" shall mean "including, but not limited to"; and (d) all use of language that appears in the conjunctive form specifically includes the disjunctive form and vice versa so as to permit the broadest construction possible.

      B.     The Recitals are incorporated into and made a part of this Agreement by this reference.

**XXIII. Notices**

      A.     Any notice or other communication required or permitted to be delivered to a Party under the Agreement shall be in writing, and shall be deemed to have been duly given if delivered personally or sent by facsimile, electronic mail or overnight courier such as federal express with signature required; <u>provided</u> that, in the case of facsimile transmission or electronic mail, such communication shall also be sent by overnight courier with signature required.  Any notice delivered by overnight courier shall be deemed delivered one (1) business day after it was

27

Execution Copy

sent by overnight courier.  All such notices, demands and other communications required or

permitted to be delivered under the Agreement shall be addressed as follows:

If to Plaintiffs:

Winston Y. Chan, Esq.
Gibson, Dunn & Crutcher LLP
555 Mission Street, Ste. 3000
San Francisco, CA 94105-0921
WChan@gibsondunn.com

If to Theranos:

Thomas Strickland, Esq.
WilmerHale
1875 Pennsylvania Avenue NW
Washington, DC 20006
Thomas.strickland@wilmerhale.com

And

David Taylor, Esq.
Theranos, Inc.,
1701 Page Mill Rd.,
Palo Alto, CA, 94304
dtaylor@theranos.com

If to Elizabeth Holmes:

Stephen Neal, Esq.
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
nealsc@cooley.com

If to Ramesh Balwani:

Stephen Rummage
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
steverummage@dwt.com

If to Fabrizio Bonanni, William Foege, or Daniel Warmenhoven:

Robert P. Feldman, Esq.

28

Execution Copy

Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
bobfeldman@quinnemanuel.com

## XXIV. Further Assurances

A.     The Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, from time to time, to effectuate the agreements and understandings of the Parties, whether the same occurs before or after the date of this Agreement, and they shall similarly refrain from executing any instruments or taking any actions that would interfere with the effectuation of the agreements and understandings of the Parties.

## XXV.  Binding Agreement

A.     The Agreement shall bind and benefit each of the Parties hereto, each of its respective predecessors, successors and assigns.

29

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered by their respective officers or agents thereunto duly authorized as of the date first written above.

For PFM:

Partner Investments, L.P.

By:    Partner Asset Management, LLC
Its:    General Partner

Name:    Darin Sadow
Title:    General Counsel and CCO

PFM Healthcare Master Fund, L.P.
PFM Healthcare Principals Fund, L.P.

By:    Partner Asset Management, LLC
Its:    Partner  General Partner

Name:    Darin Sadow
Title:    General Counsel and CCO

[Signature Page to Settlement Agreement]

For Theranos, Inc.:



Name: David Taylor

Title: General Counsel and Secretary

_____

Elizabeth Holmes

_____

Ramesh Balwani

_____

Fabrizio Bonanni

_____

William Foege

_____

Daniel Warmenhoven

DocuSign Envelope ID: 0689C153-6B13-41F0-8EA7-371D03D079D80B

For Theranos, Inc.:

_____

Name: David Taylor
Title: General Counsel and Secretary

DocuSigned by:

*Elizabeth Holmes*
_____
21C0EB944D1241D...

Elizabeth Holmes


_____

Ramesh Balwani


_____

Fabrizio Bonanni


_____

William Foege


_____

Daniel Warmenhoven

FOIA Confidential Treatment Requested by Theranos

For Theranos, Inc.:

_____
Name:
Title:

_____
Elizabeth Holmes

_____
Ramesh Balwani

_____
Fabrizio Bonanni

_____
William Foege

_____
Daniel Warmenhoven

[Signature Page to Settlement Agreement]

Case 5:18-cr-00258-EJD   Document 679-1   Filed 01/08/21   Page 35 of 74

For Theranos, Inc.:

_____
Name: David Taylor
Title: General Counsel and Secretary

_____
Elizabeth Holmes

_____
Ramesh Balwani

*Fabrizio Bonanni*
_____
Fabrizio Bonanni

_____
William Foege

_____
Daniel Warmenhoven

For Theranos, Inc.:

_____

Name: David Taylor
Title: General Counsel and Secretary

_____

Elizabeth Holmes

_____

Ramesh Balwani

_____

Fabrizio Bonanni

_____

William Foege

_____

Daniel Warmenhoven

FOIA Confidential Treatment Requested by Theranos

TS-0959230

For Theranos, Inc.:


_____

Name: David Taylor
Title: General Counsel and Secretary


_____

Elizabeth Holmes


_____

Ramesh Balwani


_____

Fabrizio Bonanni


_____

William Foege



Daniel Warmenhoven

**EXHIBIT A**

FOIA Confidential Treatment Requested by Theranos

TS-0959232

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PARTNER INVESTMENTS, L.P., <br> a Delaware limited partnership, <br> PFM HEALTHCARE MASTER FUND, <br> L.P., A Cayman Islands limited partnership, <br> and PFM HEALTHCARE PRINCIPALS <br> FUND, L.P., a Delaware limited <br> partnership, <br><br> Plaintiffs, <br><br> v. <br><br> THERANOS INC., a Delaware corporation, <br> ELIZABETH HOLMES, an individual, <br> RAMESH BALWANI, an individual, and <br> DOES 1-10, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    C.A. No. 12816-VCL |

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL

WHEREAS, on October 10, 2016, plaintiffs Partner Investments, L.P., PFM Healthcare Master Fund, L.P., PFM Healthcare Principals Fund, L.P. (collectively, the "Plaintiffs") filed a Verified Complaint against defendants Theranos, Inc. ("Theranos"), Elizabeth Holmes, and Ramesh Balwani (collectively, the "Defendants") in the above-captioned action (the "Action");

WHEREAS, the Plaintiffs and the Defendants have agreed to a confidential settlement agreement (the "Settlement Agreement") resolving all the claims alleged in the Action, as well as other matters, and providing for dismissal of the Action, subject to the approval of the Court, as set forth herein,

FOIA Confidential Treatment Requested by Theranos                                                        TS-0959233

IT IS HEREBY STIPULATED AND AGREED this ____ day of April, 2017, by and between the parties hereto, through their undersigned counsel, subject to the approval of the Court:

1.      The Action is hereby dismissed.  This dismissal shall operate as a dismissal without prejudice as to Theranos until the Theranos Release Date (as defined in the Settlement Agreement) and thereafter shall be with prejudice from the date thereof.  This dismissal shall operate as a dismissal without prejudice as to Elizabeth Holmes and Ramesh Balwani until their respective Outside Release Date(s) (as defined in the Settlement Agreement) and thereafter shall be with prejudice as to Ms. Holmes and Mr. Balwani from the respective date thereof.  Each Party to this dismissal shall bear his, her, or its own costs.

2.      Upon conversion to a dismissal with prejudice, this dismissal shall operate as a bar to all claims alleging fraud, misrepresentation, breach of fiduciary duty, violation of Delaware or California law, or any other misconduct related to PFM's ownership, holding, acquisition, or disposition of Theranos securities alleged in the Action.

3.      The Court shall retain jurisdiction to enforce the terms of the Settlement Agreement.

FOIA Confidential Treatment Requested by Theranos                                                TS-0959234

OF COUNSEL:

Reed Brodsky
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

Winston Y. Chan
Aimee M. Halbert
Sarah Cunningham
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, California 94105
(415) 393-8200

_____
Kurt M. Heyman (#3054)
Patricia L. Enerio (#3728)
Aaron M. Nelson (#5941)
Heyman Enerio Gattuso & Hirzel LLP
300 Wilmington Delaware Avenue,
Suite 200
Wilmington, Delaware 19801
(302) 472-7300

*Attorneys for Plaintiffs*

3

FOIA Confidential Treatment Requested by Theranos                                       TS-0959235

OF COUNSEL:

Stephen C. Neal
Cooley LLP
3175 Hanover Street
Palo Alto, California 94304
(650) 843-5000

Kathleen Goodhart
Cooley LLP
101 California Street, 5th Floor
San Francisco, California 94111
(415) 693-2012

*Attorneys for Defendant Elizabeth
Holmes*
Timothy J. Perla
Wilmer Cutler Pickering Hale
  and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6696

Christopher Davies
Wilmer Cutler Pickering Hale
  and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6187

Matthew D. Benedetto
Wilmer Cutler Pickering Hale
  and Dorr LLP
350 South Grand Avenue
Suite 2100
Los Angeles, California 90071
(213) 443-5323

———————————————
Gregory P. Williams (#2168)
Catherine G. Dearlove (#3328)
Kelly E. Farnan (#4395)
Kevin M. Gallagher (#5337)
Sarah A. Galetta (#6157)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants Theranos, Inc.
and Elizabeth Holmes*

4

*Attorneys for Defendant Theranos, Inc.*

OF COUNSEL:                              _____
                                          David E. Ross (# 5228)
                                          Benjamin Z. Grossberg (# 5615)
Stephen M. Rummage                        Anne M. Steadman (# 6221)
Davis Wright Tremaine LLP                 100 South West Street, Suite 400
1201 Third Avenue, Suite 2200             Wilmington, Delaware 19801
Seattle, Washington 98101-3045            (302) 576-1600
(206) 757-8136

Allison A. Davis                          *Attorneys for Defendant Ramesh*
Davis Wright Tremaine LLP                 *Balwani*
505 Montgomery Street, Suite 800
San Francisco, California 94111
(415) 276-6500


       SO ORDERED this _____ day of _____, 2017.


                                    _____
                                    The Honorable J. Travis Laster

5

**EXHIBIT B**

FOIA Confidential Treatment Requested by Theranos

TS-0959238

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., a Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership, | ) ) ) ) ) ) |
| | ) C.A. No. 2017-0262-JTL |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THERANOS INC., a Delaware corporation, ELIZABETH HOLMES, FABRIZIO BONANNI, WILLIAM H. FOEGE, and DANIEL J. WARMENHOVEN, | ) ) ) ) ) |
| Defendants. | ) |

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL

WHEREAS, on October 10, 2016, plaintiffs Partner Investments, L.P., PFM Healthcare Master Fund, L.P., PFM Healthcare Principals Fund, L.P. (collectively, the "Plaintiffs") filed a Verified Complaint against defendants Theranos, Inc. ("Theranos"), Elizabeth Holmes, and Ramesh Balwani (collectively, the "First Action Defendants") in C.A. No. 12816-VCL (Del. Ch.) (the "First Action");

WHEREAS, on April 6, 2017, Plaintiffs filed a Verified Complaint for Injunctive and Declaratory Relief and Motion for Temporary Restraining Order against defendants Theranos, Elizabeth A. Homes, Fabrizio Bonanni, William H.

Foege, and Daniel J. Warmenhoven (collectively, the "Second Action Defendants")
in the above-captioned action (the "Second Action");

WHEREAS, on April 11, 2017, the Court entered a Temporary Restraining
Order in the Second Action (the "Temporary Restraining Order"); and

WHEREAS, the Plaintiffs, the First Action Defendants, and the Second
Action Defendants have agreed to a confidential settlement agreement (the
"Settlement Agreement") resolving all the claims alleged in the First Action and the
Second Action and providing for dismissal of the Second Action, subject to the
approval of the Court, as set forth herein,

IT IS HEREBY STIPULATED AND AGREED this ____ day of April, 2017,
by and between the parties hereto, through their undersigned counsel subject to the
approval of the Court:

1.     The Second Action is hereby dismissed, with prejudice, pursuant to
Court of Chancery Rule 41(a).  Each Party to this dismissal shall bear his, her, or its
own costs.

2.     The Temporary Restraining Order is hereby vacated and dissolved.

3.     The Court shall retain jurisdiction to enforce the terms of the Settlement
Agreement.

2

_____
Kurt M. Heyman (#3054)
Patricia L. Enerio (#3728)
Aaron M. Nelson (#5941)
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE  19801
(302) 472-7300

*Attorneys for Plaintiffs*

_____
Gregory P. Williams (#2168)
Catherine G. Dearlove (#3328)
Kelly E. Farnan (#4395)
Kevin M. Gallagher (#5337)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Defendant Theranos, Inc.
and Elizabeth A. Holmes*

_____
Marti S. Lessner (#3109)
Paul J. Loughman (#5508)
Young Conaway Stargatt & Taylor,
LLP
1000 North King Street
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Defendants Fabrizio
Bonanni, William H. Foege and Daniel
J. Warmenhoven*

SO ORDERED this ____ day of _____, 2017

_____
The Honorable J. Travis Laster

3

**EXHIBIT C**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959242

## PROMISSORY NOTE

**$7,500,000.00**                                                               **May 1, 2017**

**FOR VALUE RECEIVED**, in connection with that certain confidential settlement agreement dated as of the date hereof by and among (i) Theranos, Inc., a Delaware corporation ("*Theranos*"), and those other "Defendants" as listed therein and (ii) Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware limited partnership (collectively, "*PFM*") (such agreement, the "*Settlement Agreement*"), in the event Theranos has commenced a voluntary case under the Bankruptcy Code on or before the first business day that is at least the 91st day following the Payment Date (a "*Theranos Bankruptcy Event*"), the undersigned, Elizabeth Holmes ("*Holmes*"), hereby promises to promptly pay to the order of PFM an aggregate amount of $7,500,000.00, without interest (the "*Payment Amount*").  If no Theranos Bankruptcy Event has occurred on or before the first business day that is at least the 91st day following the Payment Date, this Promissory Note shall immediately be null and void and under no circumstance will Holmes have any obligation to pay the Payment Amount to PFM.

Holmes does not currently have the Payment Amount and makes no representation to PFM regarding her ability to pay her obligations under this Promissory Note.

Holmes shall have no responsibility for the allocation of the Payment Amount after PFM's receipt. Unless the context requires otherwise, each capitalized term used in this Promissory Note but not defined herein shall have the same meaning as defined in the Settlement Agreement.

This Promissory Note shall be governed by, and construed and interpreted in accordance with, the laws of the State of Delaware.

[Remainder of Page Intentionally Left Blank]

FOIA Confidential Treatment Requested by Theranos

**IN WITNESS WHEREOF**, Holmes has caused this Promissory Note to be duly executed on the date hereof.

**Elizabeth Holmes**

_____

Elizabeth Holmes

Address:

**ACKNOWLEDGED AND AGREED**

**For PFM:**

Partner Investments, L.P.

By:     Partner Asset Management, LLC
Its:     General Partner

_____

Name:
Title:

PFM Healthcare Master Fund, L.P.
PFM Healthcare Principals Fund, L.P.

By:     Partner Asset Management, LLC
Its:     Partner

_____

Name:
Title:

*[Signature Page to Promissory Note]*

**EXHIBIT D**

FOIA Confidential Treatment Requested by Theranos

TS-0959245

# THERANOS, INC.

## INVESTMENT REPRESENTATION STATEMENT

This Investment Representation Statement is made on May 1, 2017 by each of Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware limited partnership (each individually a "*Holder*" and collectively the "*Holders*") in connection with the acquisition of 37 shares of Series D-2A Preferred Stock (the "*Securities*") of Theranos, Inc., a Delaware corporation (the "*Company*") pursuant to that certain Settlement Agreement, dated as of the date hereof, by and among the Holders, the Company, and the other parties thereto. In connection with the acquisition of the Securities, each Holder represents and warrants to, and agrees with, the Company as follows:

1. **No Registration.** Each Holder understands that the Securities have not been, and will not be, registered under the Securities Act of 1933, as amended (the "*Securities Act*"), by reason of a specific exemption from the registration provisions of the Securities Act, the availability of which depends upon, among other things, the *bona fide* nature of the investment intent and the accuracy of the Holder's representations as expressed herein or otherwise made pursuant hereto.

2. **Investment Intent.** Each Holder is acquiring the Securities for investment for its own account, not as a nominee or agent, and not with a view to, or for resale in connection with, any distribution thereof in violation of the Securities Act. Each Holder has no present intention of selling, granting any participation in, or otherwise distributing the Securities other than as pursuant to that certain Settlement Agreement, by and among the Holders, the Company Elizabeth Holmes, Ramesh Balwani, Fabrizio Bonanni, William Foege, and Daniel Warmenhoven, dated as of April 29, 2017.

3. **Accredited Investor.** Each Holder is an "accredited investor" within the meaning of Regulation D, Rule 501(a), promulgated by the Securities and Exchange Commission and agrees to submit to the Company such further assurances of such status as may be reasonably requested by the Company. Each Holder has furnished or made available any and all information requested by the Company or otherwise necessary to satisfy any applicable verification requirements as to "accredited investor" status. Any such information is true, correct, timely and complete.

4. **Residency.** The residency of each Holder (or, in the case of a partnership or corporation, such entity's principal place of business) is correctly set forth on the signature page hereto.

5. **Restrictions on Resales.** Each Holder acknowledges that the Securities must be held indefinitely unless subsequently registered under the Securities Act or an exemption from such registration is available. Each Holder is aware of the provisions of Rule 144 promulgated under the Securities Act, which permit resale of shares purchased in a private placement subject to the satisfaction of certain conditions, which may include, among other things, the availability of certain current public information about the Company; the resale occurring not less than a specified period after a party has purchased and paid for the security to be sold; the number of shares being sold during any three-month period not exceeding specified limitations; the sale being effected through a "broker's transaction," a transaction directly with a "market maker" or a "riskless principal transaction" (as those terms are defined in the Securities Act or the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder); and the filing of a Form 144 notice, if applicable. Each Holder acknowledges and understands that the Company may not be satisfying the current public information requirement of Rule 144 at the time the Holder wishes to sell the

Securities and that, in such event, the Holder may be precluded from selling the Securities under Rule 144 even if the other applicable requirements of Rule 144 have been satisfied. Each Holder understands and acknowledges that, in the event the applicable requirements of Rule 144 are not met, registration under the Securities Act or an exemption from registration will be required for any disposition of the Securities. Each Holder understands that, although Rule 144 is not exclusive, the Securities and Exchange Commission has expressed its opinion that persons proposing to sell restricted securities received in a private offering other than in a registered offering or pursuant to Rule 144 will have a substantial burden of proof in establishing that an exemption from registration is available for those offers or sales and that those persons and the brokers who participate in the transactions do so at their own risk.

6.     **No Public Market.** Each Holder understands and acknowledges that no public market now exists for any of the securities issued by the Company and that the Company has made no assurances that a public market will ever exist for the Company's securities.

7.     **Legend Requirements.** Each Holder understands and agrees that the Company shall cause the legends set forth below, or substantially equivalent legends, to be placed upon any certificate(s) evidencing ownership of the Shares, together with any other legends that may be required by the Company, by applicable state or federal securities laws, or by any other agreement between the Holder and the Company:

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO REGISTRATION OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE, INCLUDING A LOCK-UP PERIOD OF UP TO 180 DAYS (SUBJECT TO EXTENSION) IN THE EVENT OF A PUBLIC OFFERING, AND A RIGHT OF FIRST REFUSAL IN FAVOR OF THE ISSUER, A SECONDARY RIGHT OF REFUSAL AND ASSIGNEE RIGHT OF REFUSAL AS SET FORTH IN AN INVESTOR RIGHTS AGREEMENT AND THE BYLAWS, COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE COMPANY.

THE SHARES EVIDENCED HEREBY ARE SUBJECT TO AN AMENDED AND RESTATED VOTING AGREEMENT (A COPY OF WHICH MAY BE OBTAINED FROM THE ISSUER) AND BY ACCEPTING ANY INTEREST IN SUCH SHARES THE PERSON HOLDING SUCH INTEREST SHALL BE DEEMED TO AGREE TO AND SHALL BECOME BOUND BY ALL THE PROVISIONS OF SAID VOTING AGREEMENT.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AS SET FORTH IN THE CERTIFICATE

OF INCORPORATION OF THE COMPANY AND AN AGREEMENT BETWEEN THE COMPANY AND THE ORIGINAL HOLDER OF THESE SHARES, COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE COMPANY.

(*signature page follows*)

FOIA Confidential Treatment Requested by Theranos

TS-0959248

Each Holder is signing this Investment Representation Statement on the date first written above.

**PARTNER INVESTMENTS, L.P.**

By:_____

Name:_____

Title:_____

Date: _____


Address:_____

_____


**PFM HEALTHCARE MASTER FUND, L.P.**

By:_____

Name:_____

Title:_____

Date: _____


Address:_____

_____


**PFM HEALTHCARE PRINCIPALS FUND, L.P.**

By:_____

Name:_____

Title:_____

Date: _____


Address:_____

_____

FOIA Confidential Treatment Requested by Theranos

**EXHIBIT E**

FOIA Confidential Treatment Requested by Theranos

TS-0959250

**THERANOS, INC.**
**CERTIFICATE OF DESIGNATION OF**
**SERIES D-2A PREFERRED STOCK**

**(Pursuant to Delaware General Corporation Law, Section 151(g) and 103)**

Theranos, Inc., a Delaware corporation (the "Corporation"), hereby certifies as follows:

The board of directors (the "Board") of the Corporation on April [__], 2017, in accordance with Sections 151(g) and 103 of the Delaware General Corporation Law and the Amended and Restated Certificate of Incorporation of the Corporation (as it may be amended from time to time, the "Certificate"), duly adopted the following resolutions establishing a series of 37 shares of the Corporation's Preferred Stock, $0.0001 par value per share, to be designated as its Series D-2A Preferred Stock and does hereby in this Certificate of Designation (the "Certificate of Designation") designate, establish and fix the powers, designations, preferences, rights and powers of such series of Preferred Stock

"RESOLVED, that the Board hereby establishes a series of Series D-2A Preferred Stock of the Corporation and does hereby in this Certificate of Designation state the number of shares, and designate and fix the powers, designations, preferences and relative, participating, optional and other rights, and the qualifications, limitations and restrictions thereof, of such series of shares, as follows.  Capitalized terms not defined herein shall have the meanings set forth in the Certificate.

       1.     <u>Designations and Amounts</u>. 37 shares of the Preferred Stock of the Corporation, $0.0001 par value per share, shall constitute a series of Preferred Stock designated as "Series D-2A Preferred Stock" (the "Series D-2A Preferred Stock").

       2.     <u>Liquidation Rights</u>.  Subject to the right of the holders of any shares of Preferred Stock which may be issued hereafter ranking junior to or on a parity with the shares of Series D-2A Preferred Stock with respect to payments upon liquidation, in the event of any liquidation, dissolution or winding up of the Corporation, either voluntary or involuntary, the holders of the Series D-2A Preferred Stock shall be entitled to receive, prior and in preference to any Distribution of any of the assets of the Corporation to the holders of the Series C-2 Preferred Stock, Series C-1 Preferred Stock, Series C Preferred Stock, Series B Preferred Stock, Series A Preferred Stock, Class A Common Stock or Class B Common Stock by reason of their ownership of such stock, but *pari passu* with the holders of the Series C-1A Preferred Stock, Series C-1B Preferred Stock, Series C-1B* Preferred Stock, Series C-2A Preferred Stock and Series C-2A* Preferred Stock (the Series C-1A Preferred Stock, Series C-1B Preferred Stock, Series C-1B* Preferred Stock, Series C-2A Preferred Stock and Series C-2A* Preferred Stock, together with the Series D-2A Preferred Stock, the "Senior Preferred"), an amount per share for each share of Series D-2A Preferred Stock held by them equal to the sum of (i) the Liquidation Preference specified for such share of Series D-2A Preferred Stock (if any) and (ii) all declared but unpaid dividends (if any) on such share of Series D-2A Preferred Stock.  If upon the liquidation, dissolution or winding up of the Corporation, the assets of the Corporation legally available for distribution to the holders of the Senior Preferred are

insufficient to permit the payment to such holders of the full amounts specified in this **Section 2**, then the entire assets of the Corporation legally available for distribution shall be distributed pro rata among the holders of the Senior Preferred in proportion to the full amounts they would otherwise be entitled to receive pursuant to this **Section 2** and Section 3(a)(i) of Article V of the Certificate.  The Liquidation Preference per share for the Series D-2A Preferred Stock shall equal the quotient obtained by *dividing* the Aggregate Series D-2A Liquidation Preference *by* the number of shares of Series D-2A Preferred Stock then outstanding (subject to adjustment from time to time for Recapitalizations as set forth in the Certificate). The Aggregate Series D-2A Liquidation Preference shall mean, as of any applicable date, an amount equal to (x) $96,139,998.00 *minus* (y) the aggregate Liquidation Preference that has been paid as of such date or will be contemporaneously paid as of such date to holders of Series D-2A Preferred Stock by virtue of their ownership of any shares of Series C-2 Preferred Stock in the event of any liquidation, dissolution or winding up of the Corporation, either voluntary or involuntary *minus* (z) the Cash Settlement Amount less any payment that has been made by any such holder of the Series D-2A Preferred Stock as of such date in connection with such final adjudication or other final resolution of any Avoidance Action commenced against any holder of Series D-2A Preferred Stock; provided that clause (z) shall be applied only if, as of such date, (i) an Avoidance Action has not been filed and the applicable statute of limitations for any such action has expired pursuant to applicable law, or (ii) the applicable statute of limitations for any Avoidance Action has expired pursuant to applicable law and an Avoidance Action has been filed and is or was pending as of the date of such expiration, but has been finally adjudicated or otherwise finally resolved pursuant to a Final Order (defined below). "Avoidance Action" means a cause of action under sections 544, 547, 548 or 550 of Title 11 of the United States Code, or similar state law or federal law relating to the avoidance or recovery of any fraudulent conveyance, fraudulent transfer, or avoidable transfer in connection with (i) any voluntary case commenced by the Corporation under section Title 11 of the United States Code prior to the first business day that falls on a day that is at least the 91st day following the Payment Date, and (ii) any involuntary case commenced against the Corporation under section Title 11 of the United States Code prior to the first business day that falls on a day that is at least the  91st day following the date hereof, unless such involuntary case has been dismissed by entry of a Final Order (defined below) on or before the first business day that falls on a day that is at least the 91st day following the Payment Date ((i) and (ii) together, a "Bankruptcy Event").  "Cash Settlement Amount" and "Payment Date" shall have the respective meanings set forth in that certain Settlement Agreement dated as of the date hereof by and among (i) the Corporation, (ii) Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware Limited Partnership (collectively, "PFM"), and (iii) Elizabeth Holmes, Ramesh Balwani, Fabrizio Bonanni, William Foege, and Daniel Warmenhoven (collectively, "Defendants").  "Final Order" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, request for reargument or further review or rehearing, or file a motion for stay, modification, or amendment has expired and no appeal, petition for

certiorari, request for reargument or further review or rehearing, or motion for stay, modification, or amendment has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari, request for reargument or further review or rehearing, or motion for stay, modification or amendment that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari, request for reargument or further review or rehearing, or motion for stay, modification, or amendment has been or can be taken or granted.

       3.    <u>Conversion Price and Original Issue Price</u>.  The Conversion Price shall be $17.00 per share for the Series D-2A Preferred Stock (subject to adjustment from time to time for Recapitalizations and as otherwise set forth in the Certificate).  The Original Issue Price shall be $17.00 per share for the Series D-2A Preferred Stock (subject to adjustment from time to time for Recapitalizations as set forth in the Certificate).

       4.    <u>Restrictions on New Issuances and Amendments</u>.  For so long as any shares of the Series D-2A Preferred Stock remain outstanding, prior to the Special Conversion Time, in addition to any other vote or consent required, the vote or the written consent of all of the holders of the Series D-2A Preferred Stock, shall be necessary for effecting or validating the following actions (whether by merger, recapitalization, consolidation or otherwise, either directly or through a subsidiary): (a) amend, alter or repeal any provision of this Certificate of Designation or amend, alter or repeal any provision of the Certificate in a manner adverse to the rights, preferences and powers of the Series D-2A Preferred Stock or (b) create or authorize the creation of or issue any other security convertible into or exercisable for any security having rights, preferences or powers senior to the Series D-2A Preferred Stock; provided, however, that no vote or consent of the holders of the Series D-2A Preferred Stock shall be necessary to take any actions that may be necessary or desirable to issue shares of Series C-1A Preferred Stock, Series C-1B Preferred Stock, Series C-1B* Preferred Stock, Series C-2A Preferred Stock or Series C-2A* Preferred Stock pursuant to the Company's Offer to Exchange Preferred Stock that is pending at the time of adoption of this Certificate of Designation.

       5.    <u>Voting Rights</u>.  Except as may be otherwise required by law and as described in this Certificate of Designation, the Series D-2A Preferred Stock shall be non-voting Preferred Stock.

       6.    <u>Mandatory Redemption</u>. The Series D-2A Preferred Stock shall not be redeemable.

       7.    <u>Special Mandatory Conversion</u>.

       (a)    For so long as there has not been a Bankruptcy Event, or similar proceeding, on the first business day that falls on a day that is at least the 91st day following the Payment Date (the "<u>Special Conversion Time</u>") each outstanding share of Series D-2A Preferred Stock shall automatically and without further action on the part of such holder of such share be converted into one share of Class A Common Stock of the

Corporation (irrespective of the then-applicable Conversion Price for Series D-2A Preferred Stock). No fractional shares shall be issued upon any conversion effected pursuant to this section. In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay an amount of cash equal to the product of (i) the fractional share of Class A Common Stock to which the holder would otherwise be entitled and (ii) the then fair value of a share of Class A Common Stock as determined in good faith by the Board of Directors of the Corporation.

(b)   Effect of Special Mandatory Conversion. Upon conversion pursuant to this Section 7, the shares of Series D-2A Preferred Stock so converted shall, from and after the Special Conversion Time, no longer be deemed to be outstanding and, notwithstanding the failure of the holder or holders thereof to surrender the certificates for such shares on or prior to such time, all rights with respect to such shares shall immediately cease and terminate at the Special Conversion Time, except only the right of the holders thereof to receive shares of Class A Common Stock in exchange therefor and to receive payment of any dividends declared but unpaid thereon and payment for any fraction of a share of Class A Common Stock otherwise issuable upon such conversion. Such converted Series D-2A Preferred Stock shall be retired and cancelled and may not be reissued as shares of such series, and the Corporation may thereafter take such appropriate action (without the need for stockholder action) as may be necessary to reduce the authorized number of shares of Series D-2A Preferred Stock accordingly.

8.   Other Rights, Preferences, Privileges and Restrictions. Except as set forth in this Certificate of Designation, and subject to the right of the holders of any shares of any series of Preferred Stock ranking junior to or on a parity with, the shares of Series D-2A Preferred Stock with respect to any number of specified rights, the Series D-2A Preferred Stock shall have such other rights, preferences, privileges (including, without limitation, as to dividends and conversion rights) and restrictions conferred or imposed on the Series C-2 Preferred Stock and the Series C-1 Preferred Stock by, and as set forth in, the Certificate, but excluding, for the avoidance of doubt, the automatic conversion provisions of Section 4(b) of Article V of the Certificate, such that the Series D-2A Preferred Stock shall not be subject to any conversion other than pursuant to Section 7(a) of this Certificate of Designation.

9.   Severability. Any term or provision of this Certificate of Designation which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the sole extent of such invalidity or unenforceability without rendering invalid or unenforceable the remainder of such term or provision or the remaining terms and provisions of this Certificate of Designation in any jurisdiction. If any provision of this Certificate of Designation is so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable.

RESOLVED FURTHER, that the officers of the Corporation be, and they hereby are, authorized and directed, for and in the name and on behalf of the Corporation, to prepare and file a Certificate of Designation of Series D-2A Preferred Stock in accordance with the foregoing resolution and the provisions of the Delaware General Corporation Law and to take such actions as they may deem necessary or appropriate to carry out the intent of the foregoing resolutions."

IN WITNESS WHEREOF, Theranos, Inc. has caused this Certificate of Designation to be executed by its duly authorized officer this _____ day of _____, 2017.

_____
Elizabeth Holmes
Chief Executive Officer

**EXHIBIT F**

FOIA Confidential Treatment Requested by Theranos

[WSGR LETTERHEAD]

[_____ __], 2017

Partner Investments, L.P.
PFM Healthcare Master Fund, L.P.
PFM Healthcare Principals Fund, L.P.
[Address]

Ladies and Gentlemen:

We have acted as special corporate counsel for Theranos, Inc., a Delaware corporation (the "**Company**"), in connection with that certain settlement agreement (the "**Settlement Agreement**"), dated April 29, 2017, by and among the Company and Partner Investments, L.P., PFM Healthcare Master Fund, L.P. and PFM Healthcare Principals Fund, L.P. (collectively, "**PFM**"), which provides for the issuance by the Company to PFM of 37 shares of Series D-2A Preferred Stock of the Company, par value $0.0001 per share (the "**Shares**").

We have been requested by the Company to render our opinion as to the matters set forth below in connection with the issuance of the Shares to you.

For purposes of our opinion, we have reviewed a certificate of an officer of the Company (the "**Officer's Certificate**") as to factual matters and examined and relied solely upon the documents attached to the Officer's Certificate that we consider necessary or advisable for the purpose of rendering the opinions and statements set forth below, and we have assumed that such documents have not been and will not be altered or amended in any respect material to our opinions as expressed herein.   We have not independently established the facts stated therein, we have not reviewed any documents except those attached to the Officer's Certificate in connection with this opinion and we have assumed that there exists no provision in any document that we have not reviewed for purposes of this opinion that is inconsistent with the opinions stated herein, and no inference as to our knowledge of the existence or absence of any fact should be drawn from our representation of the Company or the rendering of the opinions set forth below.   In such examination we have assumed the genuineness of all signatures, the legal capacity of natural persons to complete the execution of documents, the authenticity and completeness of all documents submitted to us as originals and the conformity to original documents of all copies submitted to us.   We have further assumed that each member of the board of directors of the Company has acted in full compliance with all of his or her applicable fiduciary duties in connection with the adoption of the board resolutions relating to the issuance of the Shares.

We express no opinion as to any matter relating to the laws of any jurisdiction other than the General Corporation Law of the State of Delaware as currently in effect, and we have not considered and express no opinion on the effect of any other laws or the laws of any other state or jurisdiction, including state or federal laws relating to securities or other federal laws, or the rules and regulations of stock exchanges or of any other regulatory body.   As such, we express no opinion as to compliance with the anti-fraud provisions of applicable securities laws.   This opinion letter should be interpreted in accordance with customary practice in the preparation and understanding of legal opinions in the United States as set forth in the Legal Opinion Principles issued by the Committee on Legal Opinions of the American Bar Association's Section of Business Law as published in 53 *Business Lawyer* 831 (1998) and the

Partner Investments, L.P.
PFM Healthcare Master Fund, L.P.
PFM Healthcare Principals Fund, L.P.
[___ __, 2017]
Page 2

"Statement on the Role of Customary Practice in the Preparation and Understanding of Third Party Legal Opinions" as published in 63 *Business Lawyer* 1277 (2008).

Based on the foregoing, and subject to the qualifications, assumptions and limitations set forth herein, we are of the opinion that:

1.  The Company is a corporation duly incorporated and validly existing under the laws of the State of Delaware with the corporate power to issue the Shares.

2.  The Shares have been duly authorized, and the Shares will be, when issued in accordance with the terms of the Settlement Agreement, validly issued, fully paid and non-assessable.

* * *

This opinion letter is furnished to PFM solely for the benefit of PFM in connection with the issuance of the Shares, and may not be relied upon by any other person or for any other purpose without our prior written consent. We assume no obligation to inform you of any facts, circumstances, events or changes in the law that may arise or be brought to our attention after the date of this opinion letter that may alter, affect or modify the opinions or statements expressed herein.

Very truly yours,

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

FOIA Confidential Treatment Requested by Theranos                                                                         TS-0959258

**EXHIBIT G**

FOIA Confidential Treatment Requested by Theranos

TS-0959259

**NOTICE OF CONVERSION OF PREFERRED STOCK**

**TO:**   Theranos, Inc.
1701 Page Mill Road
Palo Alto, CA
94304

**Date:   April 29, 2017**

**RE:**   Notice of Conversion of Preferred Stock

This notice (this "**Notice**") is being provided to Theranos, Inc., a Delaware corporation (the "**Company**"), by Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware limited partnership (each an "**Investor**" and collectively, the "**Investors**"), pursuant to the terms of that certain Settlement Agreement, dated April 29, 2017 (the "**Settlement Agreement**"), by and among the Company, the Investors, Elizabeth Holmes, Ramesh Balwani, Fabrizio Bonnani, William Foege and Daniel Warmenhoven.  Capitalized terms used but not otherwise defined in this Notice shall have the meaning ascribed to them in the Settlement Agreement.

Effective on, as of and contingent upon the occurrence of the Theranos Release Date, each Investor hereby acknowledges and agrees that pursuant to Section XI.B of the Settlement Agreement and Section 4(a) of Article V of the Amended and Restated Certificate of Incorporation of the Company, dated January 14, 2014, as amended, the undersigned irrevocably elects and consents to voluntarily convert all shares of Preferred Stock of the Company, par value $0.0001 per share, including without limitation any shares of Series C-2 Preferred Stock and any shares of Series D-2A Preferred Stock not previously converted pursuant to Section 7 of the Certificate of Designation of Series D-2A Preferred Stock of the Company, filed pursuant to the Settlement Agreement, held by each Investor into Class A Common Stock of the Company, par value $0.0001 per share.

(signature page follows)

Submitted by:

"INVESTORS"

**PARTNER INVESTMENTS, L.P.**
By: Partner Asset Management, LLC, its general partner

By: _____
Name:   Darin Sadow
Title:   General Counsel and CCO

**PFM HEALTHCARE MASTER FUND, L.P.**
By: Partner Asset Management, LLC, its general partner

By: _____
Name:   Darin Sadow
Title:   General Counsel and CCO

**PFM HEALTHCARE PRINCIPALS FUND, L.P.**
By: Partner Asset Management, LLC, its general partner

By: _____
Name:   Darin Sadow
Title:   General Counsel and CCO

**AGREED, ACKNOWLDGED AND ACCEPTED**, this 29th day of April, 2017.

**THERANOS, INC.**

By: _____
Name: _____
Title: _____

*[Signature Page to Notice of Conversion]*

Submitted by:

"INVESTORS"

PARTNER INVESTMENTS, L.P.

By:_____
Name:
Title:

PFM HEALTHCARE MASTER FUND, L.P.

By:_____
Name:
Title:

PFM HEALTHCARE PRINCIPALS FUND, L.P.

By:_____
Name:
Title:

AGREED, ACKNOWLDGED AND ACCEPTED, this 29th day of April, 2017.

THERANOS, INC.

By: _Elizabeth Holmes_
Name: _Elizabeth Holmes_
Title: _Chief Executive Officer_

[Signature Page to Notice of Conversion of Preferred Stock]

**EXHIBIT H**

FOIA Confidential Treatment Requested by Theranos                                    TS-0959263

THERANOS, INC.

**ASSIGNMENT SEPARATE FROM CERTIFICATE AND STOCK POWER**

This Assignment Separate From Certificate and Stock Power is being executed in conjunction with the terms of a Settlement Agreement by and among Partner Investments, L.P., a Delaware limited partnership, PFM Healthcare Master Fund, L.P., a Cayman Islands limited partnership, and PFM Healthcare Principals Fund, L.P., a Delaware limited partnership (collectively, "PFM"), Theranos, Inc., a Delaware corporation ( the "Company"), Elizabeth Holmes, Ramesh Balwani, Fabrizio Bonanni, William Foege, and Daniel Warmenhoven dated as of April 29, 2017 (the "Settlement Agreement"). Capitalized terms used herein and not defined shall have the meanings set forth in the Settlement Agreement.

FOR VALUE RECEIVED, effective on, as of and contingent upon the occurrence of the Theranos Release Date, the undersigned (i) hereby assign and transfer an aggregate of 5,655,331 shares of Class A Common Stock of the Company (the "Shares"), representing all of the shares of the Company's capital stock the undersigned own, and (ii) each hereby irrevocably constitutes and appoints the Secretary of the Company to transfer the Shares on the books of the Company with full power of substitution in the premises to certain stockholders of the Company (excluding the undersigned) pursuant to the terms of the Settlement Agreement (the "Transfer").

Following the Transfer, the undersigned will hold no shares of the Company's capital stock and will cease to be stockholders of the Company.

**PARTNER INVESTMENTS, L.P.**
By: Partner Asset Management, LLC, its general partner
By: _____
Name: Darin Sadow
Title: General Counsel and CCO
Date: April 29, 2017

**PFM HEALTHCARE MASTER FUND, L.P.**
By: Partner Asset Management, LLC, its general partner
By: _____
Name: Darin Sadow
Title: General Counsel and CCO
Date: April 29, 2017

**PFM HEALTHCARE PRINCIPALS FUND, L.P.**
By: Partner Asset Management, LLC, its general partner
By: _____
Name: Darin Sadow
Title: General Counsel and CCO
Date: April 29,2017

**EXHIBIT I**

JOINDER TO SETTLEMENT AGREEMENT

This Joinder (this "Joinder") to the Settlement Agreement dated as of April 29, 2017 (the "Settlement Agreement") by and between Partner Investments, L.P., PFM Healthcare Master Fund, L.P., and PFM Healthcare Principals Fund, L.P. (collectively, "PFM"), on the one hand, and Theranos, Inc. ("Theranos"), Elizabeth Holmes, Ramesh Balwani, Fabrizio Bonanni, William Foege, and Daniel Warmenhoven (collectively, the "Defendants"), on the other hand, is entered into and effective as of the date set forth below (the "Effective Date"), by and between the person or legal entity signed below as the "Joining LP Party", on the one hand, and the Defendants, on the other hand.  The Joining LP Party and the Defendants are together referred to as the "Parties."  Unless the context requires otherwise, each capitalized term used in this Joinder but not defined herein shall have the same meaning as defined in the Settlement Agreement.

In consideration of the promises, mutual agreements and covenants set forth in this Joinder, together with other good and valuable consideration, the receipt and sufficiency of which each Party hereto acknowledges, the Parties agree as follows:

1.      The Joining LP Party's Agreement to be Bound.  The Joining LP Party hereby agrees that, upon execution of this Joinder, (i) it shall fall within the definition of "PFM Releasors" in the Settlement Agreement, and (ii) it shall be fully bound by Sections III.A, C–J of the Settlement Agreement.

2.      The Defendants' Agreement to be Bound.  The Defendants hereby agree that, upon execution of this Joinder, (i) the Joining LP Party shall fall within the definition of "PFM Releasees" in the Settlement Agreement, and (ii) the Defendants shall be fully bound by Sections III.B–J of the Settlement Agreement.  For the avoidance of doubt, in the event the conditions precedent for the effectiveness of the Defendant Releases in Sections III.E, F and G of the Settlement Agreement are not satisfied, or the releases are otherwise reinstated, any release provided by the Joining LP Party shall be ineffective pursuant to the terms of the Settlement Agreement.

3       Incorporation by Reference.  Sections XIII, XVIII–XXII and XXIV–XXV of the Settlement Agreement are herein incorporated by reference and shall bind the parties as if this Joinder were the "Agreement," as defined in the Settlement Agreement.

[Signature page(s) below]

IN WITNESS WHEREOF, the Parties have caused this Joinder to be duly executed and delivered by their respective officers or agents thereunto duly authorized as of _____, 2017 (the "Effective Date").

For the "Joining LP Party":

_____
Name:
Title:

2

For Theranos, Inc.:

_____
Name:
Title:

_____
Elizabeth Holmes

_____
Ramesh Balwani

_____
Fabrizio Bonanni

_____
William Foege

_____
Daniel Warmenhoven

3