# EXHIBIT 2

# THERANOS, INC.

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is made as of December 29, 2016, by and between Theranos, Inc., a Delaware corporation (the "**Company**"), and Keith Rupert Murdoch (the "**Holder**"). Collectively, the Company and the Holder are referred to herein as the "**Parties**."

### RECITALS

A.   On the date hereof, the Company will receive a full and complete release of all known and unknown claims (the "**Release**") in consideration for granting the Holder the right to a Settlement Payment (as defined below) subject to the terms of this Agreement.

### AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Parties, the Parties agree as follows:

### SECTION 1

### DEFINITIONS

1.1   Certain Definitions.   As used in this Agreement, the following terms shall have the meanings set forth below:

(a) "**Per Share Qualified Settlement Payment**" shall mean, with respect to each Qualified Settlement, the quotient obtained by *dividing* (i) the applicable Qualified Settlement Payment *by* (ii) the number of shares of capital stock of the Company then held by the Qualified Stockholder in such Qualified Settlement.

(b) "**Person**" shall mean any individual, corporation, partnership, trust, limited liability company, association or other entity.

(c) "**Qualified Settlement**" shall mean a definitive agreement to make a Qualified Settlement Payment to a Qualified Stockholder in settlement of a claim or lawsuit against the Company relating to the purchase of shares of Preferred Stock of the Company directly from the Company prior to the date of this Agreement, or representations made by the Company or its agents, officers, directors, employees or affiliates in connection therewith, which definitive agreement becomes effective prior to the fourth anniversary of the date of this Agreement; *provided, however,* that the proviso that such definitive agreement become effective prior to the fourth anniversary of the date of this Agreement shall not apply to any lawsuit against the Company that is filed and pending as of the date of this Agreement.

(d) "**Qualified Settlement Payment**" shall mean the amount of cash payable to a Qualified Stockholder pursuant to a Qualified Settlement.

(e) "**Qualified Stockholder**" shall mean a Person other than Holder who purchased shares of Preferred Stock of the Company directly from the Company prior to the date of this Agreement.

(f) "**Repurchase Agreement**" shall mean that certain Preferred Stock Repurchase Agreement, dated as of the date hereof, by and between the Parties.

(g) "**Settlement Payment**" shall mean an amount in cash equal to the lesser of (i) $10 million and (ii) the product obtained by *multiplying* (A) 7,352,941 *by* (B) the Per Share Qualified Settlement Payment.

## SECTION 2

## RELEASE

2.1     Release of Claims. Effective as of the date hereof, the Holder, on behalf of himself and each of the Holder's affiliates, agents, trustees, beneficiaries, directors, officers, subsidiaries, estates, successors, assigns, members and partners (each a "**Releasor**"), fully, finally, and forever waives, releases, relinquishes, and discharges all claims (including but not limited to Unknown Claims (as defined below)), demands, losses, rights, and causes of action of any nature whatsoever, that have been or could in the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, by the Releasor whether brought directly or indirectly against the Company or any of its officers, directors, employees, affiliates, contractors, consultants, auditors, accountants, financial advisors, professional advisors, attorneys, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, or administrators (the "**Released Parties**"), arising out of, based on, or relating in any way to any transaction with the Company that has occurred up until and including the date hereof, including, without limitation, any claim, demand, cause of action, obligation, debt and liability arising out of or relating to (i) the ownership of shares of capital stock purchased from the Company, (ii) the purchase, acquisition, transfer, holding, ownership, disposition, or sale of any shares of the capital stock of the Company and the sale of shares pursuant to the Repurchase Agreement, as well as any representations, omissions, acts, or facts that have been made by the Company or any of the Released Parties up until and including the date hereof, (iii) any alleged violation by the Company or any of the Released Parties of any federal, state, local or foreign regulation, rule, or statute regulating securities, including, without limitation, any alleged violation of the Securities Act of 1933, as amended, and the rules and regulations thereunder and any alleged violation of the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder, that arises out of or is related to the issuance and sale of shares of capital stock by the Company, (iv) any breach of fiduciary duty or other claim, (v) any actions of, or failures to take an action by, the board of directors of the Company and any committee of the board of directors of the Company in connection with the sale of any shares of the capital stock of the Company, or (vi) any claim related to the Company's compliance with applicable healthcare regulatory laws; *provided*, *however*, that the foregoing release shall not cover claims arising from rights of the Releasor pursuant to (y) any obligations under the Repurchase Agreement and (z) any obligations under this Agreement.

"**Unknown Claims**" means any and all claims of every nature and description against the Released Parties which the Releasor does not know or suspect to exist in his favor at the time of this release including, without limitation, those which, if known by the Releasor might have affected his investment decision with respect to this Agreement or the releases or the entering into the Repurchase Agreement. With respect to any and all such released claims, the Releasor stipulates and agrees that he shall expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

        The Parties agree that the waivers provided for in this paragraph, and the inclusion of "Unknown Claims" in the definition of released claims were separately bargained for and are material elements of this Agreement.

## SECTION 3

## SETTLEMENT PAYMENT

        3.1    <u>Settlement Payment</u>.  In consideration of the Release, in the event of a Qualified Settlement (the "**Initial Qualified Settlement**"), the Company agrees to pay to the Holder a Settlement Payment in cash or by wire transfer in accordance with the following schedule:

        (a) The Company shall pay an amount equal to 50% of the Settlement Payment to the Holder on or prior to the first anniversary of the date the Qualified Settlement Payment is paid to the Qualified Stockholder.

        (b) The Company shall pay an amount equal to 50% of the Settlement Payment to the Holder on or prior to the second anniversary of the date the Qualified Settlement Payment is paid to the Qualified Stockholder.

        3.2    <u>Subsequent Settlement Payment(s)</u>. In the event of any Qualified Settlement subsequent to the Initial Qualified Settlement, the Company agrees to pay to the Holder an amount equal to (a) the Settlement Payment for such Qualified Settlement *minus* (b) the aggregate amount of any prior Settlement Payments, to be paid in cash or by wire transfer in accordance with the following schedule (each such amount, a "**Net Subsequent Settlement Payment**"):

        (a) The Company shall pay an amount equal to 50% of such Net Subsequent Settlement Payment to the Holder on or prior to the first anniversary of the date the Qualified Settlement Payment for such Qualified Settlement is paid to the Qualified Stockholder.

        (b) The Company shall pay an amount equal to 50% of such Net Subsequent Settlement Payment to the Holder on or prior to the second anniversary of the date the Qualified Settlement Payment for such Qualified Settlement is paid to the Qualified Stockholder.

        3.3 <u>Acceleration upon Bankruptcy or Insolvency Proceedings</u>. In the event of a voluntary or involuntary case or other proceeding seeking liquidation, reorganization or other relief with respect to the Company or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, any outstanding obligation to pay to the Holder a Settlement Payment as a result of one or more Qualified Settlements shall be accelerated and such amounts shall become immediately due and payable to the Holder.

        3.4    <u>Maximum Settlement Payment</u>. For the avoidance of doubt, in no event shall the aggregate amount of Settlement Payments made pursuant to this Agreement exceed $10 million.

## SECTION 4

## MISCELLANEOUS

        4.1    <u>Governing Law and Venue</u>.  This Agreement shall be governed in all respects by the internal laws of the State of Delaware as applied to agreements entered into among Delaware residents to

be performed entirely within Delaware, without regard to principles of conflicts of law, and the Parties agree that any litigation pertaining to this Agreement shall be exclusively adjudicated in a the Delaware Court of Chancery (and if the Delaware Court of Chancery is unavailable, any state or federal court sitting in Wilmington, Delaware), as well as to all courts to which an appeal may be taken therefrom, in any suit, action, or proceeding arising out of or relating to this Agreement.

4.2     Assistance of Counsel.  The Parties acknowledge that they have read this Agreement, they have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of their own choice or that they have voluntarily declined to seek such counsel, they understand the terms and consequences of this Agreement, and they are fully aware of the legal and binding effect of this Agreement.

4.3     Survival.  The representations, warranties, covenants and agreements made herein shall survive any investigation made by the Parties hereto and the closing of the transactions contemplated hereby.

4.4     Successors and Assigns.  Except as otherwise provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the Parties hereto; *provided, however,* that the rights of the Holder in connection with this Agreement shall not be assignable without the consent of the Company, except for an assignment to an affiliate of Holder.

4.5     Amendments and Modification.  This Agreement may not be modified, amended, altered or supplemented except upon the execution and delivery of a written agreement executed by the Company and the Holder.

4.6     Expenses.  The Company and the Holder shall each bear their own expenses incurred on their behalf with respect to this Agreement and the transactions contemplated hereby.

4.7     Severability.  In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision; *provided, however,* that no such severability shall be effective if it materially changes the economic benefit of this Agreement to any party.

4.8     Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not considered in construing or interpreting this Agreement.

4.9     Entire Agreement.  This Agreement and the agreements contemplated hereby, including the Repurchase Agreement, set forth the entire understanding of the Parties hereto and supersede any prior agreements and understandings with respect to the subject matter hereof.

4.10    Counterparts.  This Agreement may be executed in any number of counterparts, each of which may be executed by less than all of the Parties hereto, each of which shall be enforceable against the Parties actually executing such counterparts, and all of which together shall constitute one instrument.

(*Signature Pages Follow*)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**THERANOS, INC.**
a Delaware corporation

By: *Elizabeth Holmes*
       21C0EB94401241D...

Name: Elizabeth Holmes

Title: CEO

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

KEITH RUPERT MURDOCH

_____
(Signature)

FOIA Confidential Treatment Requested by Theranos

TS-0475906