# EXHIBIT 3

# AGREEMENT TERMINATING MASTER PURCHASE AGREEMENT AND RELEASING CLAIMS

This Agreement Terminating the Master Purchase Agreement and Releasing Claims ("Agreement") is entered into effective as of July 8, 2016 by and between Safeway Inc., a Delaware corporation ("Safeway"), and Theranos, Inc., a Delaware corporation ("Theranos"). Safeway and Theranos are referred to collectively in this Agreement as the "Parties" and each individually as a "Party."

WHEREAS, Safeway and Theranos are parties to that certain Theranos Master Purchase Agreement dated as of September 20, 2010 (the "MPA");

WHEREAS, each Party has undertaken efforts to perform services under the MPA;

WHEREAS, the Parties have disputes about the obligations of the MPA, the ability to perform under the MPA, and the adequacy of such performance;

WHEREAS, the Parties seek to avoid litigation with respect to the performance of their respective obligations under the MPA;

WHEREAS, to resolve any potential legal dispute between the Parties, Safeway and Theranos desire to terminate the MPA, the Option Agreement, dated July 30, 2010, issued in connection therewith, and the Initial Note and Additional Note (the "Notes") issued in connection therewith (the MPA, the Option Agreement and the Notes, collectively, the "Subject Agreements"), to provide for the specified payment, and to release all claims the Parties may have against each other in connection with the Subject Agreements, together with all other claims known and unknown.

NOW, THEREFORE, the Parties agree as follows:

1. <u>Termination of MPA</u>. Effective as of July 8, 2016 (the "Effective Date"), the Subject Agreements shall be terminated in their entirety and shall be of no further force or effect, notwithstanding any provision in the Subject Agreements to the contrary, including Section 26.e. of Schedule B to the MPA. Safeway and Theranos acknowledge and agree that upon such termination, (i) the Notes shall be deemed fully paid and discharged for all purposes and all obligations of Theranos under the Notes shall be deemed satisfied in full for all purposes and (ii) all obligations of Theranos with respect to inventory payments under the MPA, including the repayment thereof, shall be deemed satisfied in full for all purposes.

2. <u>Payment by Theranos</u>. Within 10 calendar days of the Effective Date, Theranos shall pay to Safeway, in immediately available funds, the aggregate amount of 15 million five hundred thousand dollars ($15,500,000.00). Such funds shall be paid by wire transfer, to the following account:

1

Confidential                                                                                                                                                     THPFM0003022508

Bank of America
ABA# 0260-09593
Credit: Safeway Inc.
Acct.#: 12333-03048

**<u>Notwithstanding any other provision herein to the contrary, the Parties agree that any failure by Theranos to timely complete this required payment will be a material breach of this Agreement. The Parties agree that in the event of such material breach, Safeway shall have the option, in its sole discretion, to enforce this Agreement and take legal action to recover the payment, which is a material term of this Agreement, or to rescind this Agreement rendering the Agreement void *ab initio*.</u>**

3. Release by Theranos. In consideration of the terms set forth in this Agreement, Theranos and its respective past, present and future parents, subsidiaries, affiliates, stockholders, officers, directors, partners, agents, servants, employees, representatives, family members, attorneys, heirs, executors, conservators, assigns, insurers, trustees, receivers, administrators, predecessors-in-interest, successors-in-interest, and any person claiming, purporting to claim, who can claim or who could have claimed, by, through or under, whether directly or indirectly (the "Theranos Releasors"), hereby irrevocably, unconditionally and fully release and forever discharge to the maximum extent possible, as of the Effective Date, Safeway and its respective past, present and future parents, subsidiaries, stockholders, officers, directors, partners, principals, agents, servants, employees, attorneys, conservators, insurers, trustees, predecessors-in-interest and successors-in-interest (the "Safeway Releasees") from any and all Claims. For the avoidance of doubt, the Claims released here include but are not limited to any claims relating in any way to the Subject Agreements, the relationship of the Parties under the Subject Agreements, any status, term or condition of the Subject Agreements or the termination of the Subject Agreements, or any inventory payment, promissory or convertible note, debt, equity or other obligation or interest. This release extends to and includes, but is not limited to, any Claims by the releasing Party, however denominated, for: breach of any express or implied written or oral contract, including, without limitation, the Subject Agreements; impairment of economic activities or opportunities; defamation; breach of any express or implied covenant of good faith and fair dealing; and any and all other common law or statutory contract and/or tort claims. "Claims" means, individually or collectively, as applicable, any and all actions, causes of action, counterclaims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, rights, claims, demands, liabilities, setoffs, recoupments, losses, and rights to reimbursement, subrogation, contribution, indemnification or other payment, costs or expenses (including attorneys' fees), in each case whether arising under contract, in law or in equity or by operation of law, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, and whether representing a past, present or future obligation, in each case that are connected with, arise out of, relate to or are otherwise based as a whole or in part on any acts, omissions, facts, matters, transactions or occurrences prior to the Effective Date, directly or indirectly, relating to any or all of (i) the Subject Agreements, any ancillary document entered into in connection therewith, any of the transactions contemplated by any of the foregoing, and any actions, inactions or omissions by any person thereunder and (ii) any aspect of any of the dealings or relationships between or among any of

Confidential                                                                                                          THPFM0003022509

the Safeway Releasees, on the one hand, and any or all of the Theranos Releasees, on the other hand, prior to the Effective Date. Notwithstanding anything contained herein to the contrary, nothing in this definition of "Claims" shall be construed to include any claims or rights to which the Parties are entitled in connection with a breach of any provision, representation, warranty, covenant or agreement contained in this Agreement, or in any concurrently executed or future agreement between the Parties.

The Theranos Releasors acknowledge and understand that hereafter they may discover or appreciate claims, facts, issues or concerns in addition to or different from those that they now know or believe to exist with respect to the subject matter of this Agreement that, if known or suspected at the time of execution of this Agreement, might have materially affected the termination embodied herein. The Theranos Releasors nevertheless agree that the release and waiver described above applies to any such additional or different claims, facts, issues or concerns.

**Theranos acknowledges that it is familiar with the provisions of California Civil Code section 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor") and specifically waives all rights and releases such claims as referenced therein and in any similar statute or law.**

Theranos agrees never to institute a claim of any kind against any Safeway Releasee for any claim, demand, action and/or cause of action released herein. If any Theranos Releasor violates this Agreement by instituting any such claim, then such Theranos Releasor agrees to pay all costs and expenses of defending against the claim incurred by the Safeway Releasee, including reasonable attorney fees, and all further costs and fees, incurred in connection with the defense of the claim.

4. Release by Safeway. In consideration of the terms set forth in this Agreement, Safeway and its respective past, present and future parents, subsidiaries, affiliates, stockholders, officers, directors, partners, agents, servants, employees, representatives, family members, attorneys, heirs, executors, conservators, assigns, insurers, trustees, receivers, administrators, predecessors-in-interest, successors-in-interest, and any person claiming, purporting to claim, who can claim or who could have claimed, by, through or under, whether directly or indirectly (the "Safeway Releasors"), hereby irrevocably, unconditionally and fully release and forever discharge to the maximum extent possible, as of the Effective Date, Theranos and its respective past, present and future parents, subsidiaries, stockholders, officers, directors, partners, principals, agents, servants, employees, attorneys, conservators, insurers, trustees, predecessors-in-interest and successors-in-interest (the "Theranos Releasees") from any and all Claims. For the avoidance of doubt, the Claims released here include but are not limited to any claims relating in any way to the Subject Agreements, the relationship of the Parties under the Subject Agreements, any status, term or condition of the Subject Agreements or the termination of the Subject Agreements, or any inventory payment, promissory or convertible note, debt, equity or other obligation or interest. This release extends to and includes, but is not limited to, any Claims by the releasing Party, however denominated, for: breach of any express or implied

3

Confidential
THPFM0003022510

written or oral contract, including, without limitation, the Subject Agreements; impairment of economic activities or opportunities; defamation; breach of any express or implied covenant of good faith and fair dealing; and any and all other common law or statutory contract and/or tort claims.

The Safeway Releasors acknowledge and understand that hereafter they may discover or appreciate claims, facts, issues or concerns in addition to or different from those that they now know or believe to exist with respect to the subject matter of this Agreement that, if known or suspected at the time of execution of this Agreement, might have materially affected the termination embodied herein. The Safeway Releasors nevertheless agree that the release and waiver described above applies to any such additional or different claims, facts, issues or concerns.

**Safeway acknowledges that it is familiar with the provisions of California Civil Code section 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor") and specifically waives all rights and releases such claims as referenced therein and in any similar statute or law.**

Safeway agrees never to institute a claim of any kind against any Theranos Releasee for any claim, demand, action and/or cause of action released herein. If any Safeway Releasor violates this Agreement by instituting any such claim, then such Safeway Releasor agrees to pay all costs and expenses of defending against the claim incurred by the Theranos Releasee, including reasonable attorney fees, and all further costs and fees, incurred in connection with the defense of the claim.

5.    Covenant Not To Sue. Each Party covenants and agrees never to commence, aid in any way, prosecute or cause or permit to be commenced or prosecuted against the other Party any action or other proceeding based upon any claim which is covered by this Agreement and the foregoing release, excluding, however, either Party's right to enforce this Agreement.

6.    No Reliance, No Duty to Disclose, No Admission.

(a)    No Reliance and No Duty to Disclose. Each of the Parties hereto, on behalf of itself and its respective Theranos Releasors and Safeway Releasors, in any capacity, agrees and acknowledges that (a) except as expressly provided in this Agreement, no other Party hereto or any other Releasee, in any capacity, has warranted or otherwise made any representations to it or any of its Releasors or Releasees concerning any Claim released in this Agreement (including any representation concerning the existence, nonexistence, validity or invalidity of any Claim released in this Agreement) and no Releasor has relied on any Releasee in providing the releases and covenants not to sue in this Agreement, (b) the validity and effectiveness of the foregoing releases and covenants not to sue in this Agreement do not depend in any way on any such representations or warranties or the accuracy, completeness or validity thereof, (c) no other Party hereto or any other Releasee, in any capacity, has any duty to disclose or provide any facts or documents (whether material or immaterial, known or unknown,

4

Confidential                                                                                                                    THPFM0003022511

suspected or unsuspected) to it or any other Releasor, including any facts or documents which, if known by any Releasor, might have caused such Releasor or any Party to which such Releasor is affiliated not to execute and deliver this Agreement, and (d) each such release and covenant not to sue shall remain in full force and effect even if any facts or documents (whether material or immaterial, known or unknown, suspected or unsuspected) were not disclosed or provided (whether intentionally, unintentionally or otherwise) by any Releasee to any Releasor, which facts or documents, if known by such Releasor, might have caused such Releasor or any Party to which such Releasor is affiliated not to execute and deliver this Agreement. Nothing contained herein is intended to impair or otherwise derogate from any of the representations, warranties or covenants expressly set forth in this Agreement. "Releasees" means the Safeway Releasees and the Theranos Releasees. "Releasors" means the Safeway Releasors and the Theranos Releasors.

(b) No Admission. Nothing in this Agreement shall be construed as an admission by any Releasor or Releasee of the existence of any Claim released in this Agreement or of any liability with respect to any or all of such Claim released in this Agreement or any other past or future act, omission, fact, matter, transaction or occurrence.

7. Sole Right To Claims. Each Party represents and warrants that no other person or party had or has any interest in the claims referred to in this Agreement; that it has the sole right and exclusive authority to execute this Agreement; and that it has not sold, assigned, transferred, conveyed or otherwise disposed of any claim or demand relating to any matter covered by this Agreement.

8. Confidentiality.

(a) The Parties agree to keep the terms of this Agreement confidential and agree not to disclose the terms of this Agreement (1) except as necessary to enforce its terms; and (2) except that the Parties may disclose in confidence to their respective attorneys, officers, agents, insurers, tax advisors and tax return preparers, who need to know them and have agreed, either as a condition to employment or in order to obtain such terms and conditions, or have a professional duty, to be bound by terms and conditions substantially similar to those of this Agreement, the terms of this Agreement and any amounts paid and/or received hereunder; and (3) except as otherwise required by law, rule or regulation, or as required by a court or in response to a lawful request by a governmental authority, or is otherwise necessary to establish rights or enforce obligations under this Agreement, but, in each case, only to the extent that any such disclosure is necessary. Notwithstanding the foregoing, no Party shall disclose or use any Confidential Information of the other Party for any purpose without the other Party's prior written consent, including Confidential Information acquired prior to the Effective Date. All Confidential Information shall remain the property of the Party that disclosed such Confidential Information (or its licensors, as applicable), including any right to make, use or sell any product embodying any Confidential Information. "Confidential Information" means the Subject Agreements, all documents, instruments and agreements related thereto, and all information disclosed by either Party in connection with the Subject Agreements, either prior, on or after the date hereof. "Confidential Information" does not include information which: (i) prior to disclosure by the Party disclosing such information, is or becomes generally known through no fault of the Party receiving such information; (ii) is known to the Party receiving such information at the time of

5

disclosure, as evidenced by its records; (iii) is furnished to the Party receiving such information by a third party as a matter of right and without restriction on disclosure; (iv) is independently developed by the Party receiving such information without any breach of the Subject Agreements; or (v) is otherwise necessary to establish rights or enforce obligations under this Agreement, but, in each case, only to the extent that any such disclosure is necessary. In the event the receiving Party receives a court order, or is otherwise required by law, to disclose any Confidential Information, the receiving Party will (a) notify Discloser promptly upon receipt of such court order or other request for disclosure, such that Discloser has time to object and/or move for a protective order or confidential treatment and (b) to the extent the information to be disclosed in response to a court order must be filed in court, file any information disclosed in response to such order under seal and/or request that the court seal such Confidential Information. Except as may ultimately be required by such court order or law, the receiving Party's obligations with regard to such Confidential Information, as set forth above, will remain in full force and effect.

For the avoidance of doubt, the provisions of this Paragraph 8(a) apply to the Party as of the Effective Date but do not apply to and cannot be enforced against the Party based on the acts or omissions of any persons who are former employees as of the time of an alleged breach of this provision.

(b) Promptly following the Effective Date, the Parties will provide written instructions to their respective senior executives (Senior Vice Presidents or more senior) that they shall not make, either directly or indirectly, any oral or written disparaging statements or representations of or concerning the other Party or its affiliates, or any of their businesses, or any of their current or former officers, directors, employees, shareholders, managers or investors, relating to the Subject Agreements or this Agreement; provided, however, that nothing herein shall prohibit (i) necessary communications between the Parties in connection with this Agreement, (ii) either Party from disclosing truthful information if legally required (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process including cooperation with any law enforcement agencies) or (iii) either Party from acting in good faith to enforce such Party's rights under this Agreement. The Parties agree that providing the written instruction to senior executives described in this subparagraph will discharge their respective obligations under this subparagraph.

(c) Promptly following the Effective Date, the Parties will work together in good faith to establish an agreed upon message that each Party will use if asked to comment on the Parties' relationship.

9. Medical Restriction Waiver.

In some locations (e.g., shopping centers) where Safeway operates, there are restrictions against clinics or facilities that specialize in the delivery of medical services and/or advice, or businesses that are engaged in routine, diagnostic or prognostic testing or screening services of the type conducted by medical laboratories, or in the taking, collecting or receiving at such premises specimens or samples for such purposes ("Medical Service Business," the restriction on

6

Confidential

which is hereinafter referred to as a "Medical Service Business Restriction"). With respect to such locations that have a Medical Service Business Restriction, there may be instances where Theranos seeks the assistance of Safeway in removing the restriction so that Theranos can place its business in such a location. In such circumstances, the following provisions shall apply:

(a) In locations where Safeway has a Lab Business on its premises at the time of Theranos' request, or where a Lab Business has executed an agreement to occupy such Safeway premises, Safeway shall have no obligation to Theranos with respect to any such Medical Service Business Restriction. Where Safeway has entered into a letter of intent with a Lab Business for locating in such Safeway premises at the time of Theranos' request, Safeway must so notify Theranos no later than 10 days from the request, and Safeway will have 180 days from Theranos' request to execute a definitive agreement at such Safeway premises with such Lab Business. If such definitive agreement is not executed within such 180-day period, Safeway will waive any such Medical Service Business Restriction as to Theranos, and so notify the landlord of its waiver within 10 days of the end of the 180-day period. A "Lab Business" means a Medical Service Business that engages in routine, diagnostic or prognostic testing or screening services provided by a CLIA-certified laboratory, or in the taking, collecting or receiving specimens or samples for such purposes.

(b) In all other locations, after Theranos has discovered that a specific location where Theranos intends to place its business has a Medical Service Business Restriction, where Theranos provides Safeway with written notice that it has entered into a letter of intent with the applicable landlord for the placement of its business in a such location, Safeway will waive any such Medical Service Business Restriction as to Theranos that is contained in its lease, and so notify the landlord of its waiver within 10 days of Theranos' notice to Safeway. If the restriction arises from a source other than its lease, Safeway shall notify the landlord within 10 days of Theranos' notice to Safeway that it has no objection to Theranos occupying space in such location. For each such location where Safeway has granted a waiver and/or notified the landlord, Theranos shall have 180 days from the date of such notification to the landlord within which to execute a definitive agreement or definitive lease at such location. In the event Theranos has not executed a definitive agreement or definitive lease within such 180-day period, Safeway may withdraw its waiver and/or notify the landlord and Theranos that it no longer seeks to have the Medical Service Business Restriction lifted, and Safeway shall have no further obligation to Theranos with respect to such location.

Except as set forth in this Paragraph 9, Safeway shall have no other duties or obligations with respect to Theranos' requests or efforts to locate its business in locations where there is a Medical Service Business Restriction, including but not limited to giving up other occupancy, signage or parking rights, or seeking or obtaining consents or approvals from government bodies, third parties, or any other person or entity.

10. <u>Governing Law.</u> The construction, interpretation and enforcement of this Agreement shall be governed by the internal laws of the State of California applicable to

Confidential                                                                                                                                         THPFM0003022514

contracts made and to be performed wholly within such state, without regard to the conflict of laws rules of any jurisdiction.

11. <u>Dispute resolution.</u>

(a) Except as set forth in Paragraph 11(b), regarding a material breach arising from Theranos's failure to timely pay amounts owed as set forth in Paragraph 2, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in San Francisco County, California, before three (3) neutral arbitrator(s). The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules & Procedures, except that the Parties shall agree to (or the arbitration panel shall determine) the scope of discovery and discovery schedule, including with respect to the timing and extent of document production, expert disclosures, and number of depositions. Within thirty (30) days of service of the demand for arbitration, each Party shall appoint one arbitrator and the two Party-appointed arbitrators shall, within twenty (20) days of the appointment of the second arbitrator, appoint the third arbitrator, who shall chair the arbitral tribunal. The Parties shall have no ex parte communications with potential arbitrators and the arbitrators shall not know which party appointed them. The Panel shall have the right to grant legal and equitable relief (including injunctive relief and specific performance) and shall award costs, including reasonable legal fees and costs of arbitration, and interest to the prevailing party. The arbitration proceeding and all testimony, filings, documents, award, and any information relating to or presented during the proceedings shall be deemed to be confidential information not to be disclosed to any other party. Judgment on the award may be entered in any court having jurisdiction.

(b) In the event of a material breach arising from Theranos's failure to timely pay amounts owed as set forth in Paragraph 2, and in the event Safeway elects in its sole discretion to enforce rather than terminate this Agreement, the Parties agree that Safeway shall have the option, in its sole discretion, to take legal action to recover the amounts owed in any court of competent jurisdiction, or in accordance with the arbitration provisions of Paragraph 11(a). The parties further agree that if Safeway elects to enforce this Agreement in any Court of competent jurisdiction, that Court shall award costs, including reasonable legal fees and interest, to the prevailing party.

12. <u>Severability.</u> In case any provision of this Agreement shall be determined to be invalid, illegal or unenforceable for any reason, the remaining provisions of this Agreement shall be unaffected and unimpaired thereby and shall remain in full force and effect to the fullest extent permitted by law.

13. <u>Counterparts.</u> This Agreement may be signed in counterpart originals with the same force and effect as though a single original were executed.

14. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the Parties hereto with respect to the subject matter of this Agreement, and this Agreement supersedes all

Confidential

THPFM0003022515

prior agreements between the Parties with respect to the subject matter covered herein, whether written or oral, except as otherwise expressly provided herein.

15. <u>Notices.</u> All notices, requests and other communications hereunder must be in writing and shall be deemed effective upon actual receipt if delivered personally; on the date receipt is acknowledged or refused if mailed by certified mail, postage prepaid, return receipt requested; on the next business day if by overnight delivery by a nationally recognized, reputable, overnight courier; and in any case shall be addressed to the parties at the following addresses:

if to Theranos, to:

> Theranos, Inc.
> 1701 Page Mill Road
> Palo Alto, CA 93404
> Attention: Heather King
> email: hking@theranos.com

if to Safeway, to:

> Safeway
> 11555 Dublin Canyon Road
> Pleasanton, CA 94588
> Attention: Bob Gordon
> Email: bob.gordon@albertsons.com

IN WITNESS WHEREOF, each of the Parties has executed this Agreement Terminating Master Purchase Agreement and Releasing of Claims as of the date specified next to such Party's signature below.

Dated: July 8, 2016

Safeway Inc.
By: _[signature]_
Name: R A Gordon
Its: EVP, General Counsel

Dated: July 8, 2016

Theranos, Inc.
By: _[signature]_
Name: Heather King
Its: General Counsel

9

Confidential

THPFM0003022516