# EXHIBIT 4

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Agreement") is entered into this 28th day of July, 2017, between Walgreen Co. and Walgreens Boots Alliance, Inc. (collectively, "Walgreens"), on the one hand, and Theranos, Inc. ("Theranos"), on the other hand. Walgreens and Theranos are referred to from time to time herein and collectively as the "Parties" and individually as a "Party."

WHEREAS, Walgreen Co. filed a complaint ("Complaint") against Theranos in the United States District Court for the District of Delaware, *Walgreen Co. v. Theranos, Inc.*, No. 16-1040-RGA (the "Litigation") and believes it has additional claims it could bring in the Litigation;

WHEREAS, Theranos denies Walgreen Co.'s allegations and believes it has viable counterclaims against Walgreens;

WHEREAS, Walgreens denies that Theranos has viable claims against Walgreens;

WHEREAS, Walgreens and Theranos desire to settle all disputes related to the allegations in the Complaint, as well as any additional claims Walgreens may have against Theranos and any claims Theranos may have against Walgreens;

WHEREAS, the Parties desire to settle all claims (already made and those that could be made) pertaining to the Parties' business activities with each other with no finding or implication of liability; and

WHEREAS, as part of such settlement, the Parties have agreed to dismiss and release all claims and potential claims against each other.

NOW, THEREFORE, in consideration of the mutual promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Walgreens and Theranos agree as follows:

1. **Compromise and No Admission of Liability.** This Agreement constitutes a compromise agreement with respect to all disputes, issues, and claims by and between

1

CONFIDENTIAL

Walgreens and Theranos. Nothing contained in this Agreement constitutes or shall be construed as an admission of liability or wrongdoing by Walgreens or Theranos for any purpose. Walgreens and Theranos expressly deny any liability to the other Party.

2. **Prior Agreements Extinguished.** This Agreement replaces and supersedes all prior agreements between the Parties, with the exception of the Convertible Promissory Note, Schedule H-1 to the Amended and Restated Theranos Master Services Agreement ("Promissory Note"). Specifically, Walgreen Co. and Theranos acknowledge that all prior agreements between them—except as set forth in this paragraph regarding the Promissory Note—including the Amended and Restated Theranos Master Services Agreement ("MSA"), and any and all amendments thereto, are terminated and each Party's obligations to each other are replaced by this Agreement, which is a full and complete recitation of all such obligations. Notwithstanding the above or any other provision of this Agreement, the Promissory Note remains in full force and effect in accordance with its terms, and for the avoidance of doubt the Parties agree that the "Maturity Date" of the Promissory Note is June 5, 2022, at which time Theranos will pay Walgreens or its designee Forty Million Dollars ($40,000,000) pursuant to the terms of the Promissory Note.

3. **Effective Date.** The "Effective Date" of this Agreement shall be the day on which the last Party to execute the Agreement executes the Agreement, or the day on which the U.S. District Court for the Northern District of California denies, as it relates to Walgreens, the pending motion seeking to enjoin Theranos from, among other things, settling certain claims or making certain payments, which motion was filed on July 14, 2017, in *Colman, et al. v. Theranos, Inc., et al.*, Case No. 5:16-cv-6822-NC (N.D. Cal.) (the "Preliminary Injunction Motion"), whichever is later. In the event that the Preliminary Injunction Motion is granted as it relates to Walgreens the Agreement will not become effective.

4. **Settlement Amount.** The "Settlement Amount" means Thirty Million Dollars ($30,000,000) in cash paid by or on behalf of Theranos pursuant to paragraph 5 of this Agreement.

5. **Payment.** Theranos shall pay or cause to be paid the Settlement Amount as directed by Walgreen Co. in accordance with the following payment schedule:

CONFIDENTIAL

      a.      On or before August 21, 2017, Theranos shall pay Walgreen Co. $10 million ("First Payment").

      b.      On or before December 31, 2017, Theranos shall pay Walgreen Co. an additional $15 million ("Second Payment").

      c.      On or before June 30, 2018, Theranos shall pay Walgreen Co. an additional $5 million ("Third Payment").

6.    **Stipulation.** Within five (5) business days of the Effective Date, the parties will jointly file a stipulation and/or letter with the Court advising that the Parties have reached a settlement agreement, under the terms of which Walgreens shall dismiss the Litigation in accordance with the terms of paragraph 7 of this Agreement.

7.    **Dismissal.** Within five (5) business days of the Effective Date, Walgreens will take all steps necessary to effect the dismissal of the Litigation without prejudice. Within five (5) business days of Walgreens's receipt of the First Payment, or at an earlier date at Walgreens' sole and absolute discretion, Walgreens will take all steps necessary to effect the dismissal of the Litigation with prejudice.

8.    **Indemnification.** Theranos agrees to indemnify Walgreens and their parents, subsidiaries, affiliates, successors, employees, officers, directors, assigns, agents, and each of the foregoing's successors and assigns ("Walgreens Indemnitees") from any and all defense fees or costs incurred, and damages, monetary awards, or monetary penalties imposed on, or for which any Walgreens Indemnitee is found liable, in a final non-appealable order, in connection with or arising out of (a) *In re: Arizona Theranos, Inc., Litigation*, (No. 2:16-cv-2138-HRH, et. seq.); (b) *Brian Maltese v. Walgreen Arizona Drug Company* (No. CV2016-017009); and (c) future civil litigation filed after the Effective Date that (i) is initiated by a private, non-governmental party against a Walgreens Indemnitee and (ii) alleges a claim, demand, suit, or cause of action ((a)-(c) collectively, "Claim") directly based on the Walgreens Indemnitee's business relationship with Theranos and involvement in providing Theranos blood tests; provided however that Theranos shall have no liability or obligation to indemnify a Walgreens Indemnitee with respect to any Claim based on a violation of any law or regulation by a Walgreens Indemnitee, or an act or

CONFIDENTIAL

omission by a Walgreens Indemnitee or an employee of a Walgreens Indemnitee; further provided that Theranos shall have no liability or obligation to indemnify a Walgreens Indemnitee for defense fees or costs incurred in connection with defending the aforementioned matters prior to the Effective Date. The Parties intend that Theranos will satisfy its obligation with respect to indemnifying Walgreens' defense fees and costs as stated in this paragraph by assuming the defense of Walgreens such that Walgreens' current counsel in those actions will withdraw and be substituted by, to the extent possible, counsel representing Theranos in *In re: Arizona Theranos, Inc., Litigation*. The Parties further agree to take all reasonable steps necessary to effect this representation, including the execution of any applicable documents regarding engagement and conflicts (actual and potential). Walgreens may elect to control portions or all of its document production at its own expense, and may elect to have a lawyer of its choosing attend any witness events, including any depositions, at its own expense. In the event that a Walgreens Indemnitee enters into a settlement agreement or otherwise resolves its involvement in any litigation for which it seeks indemnification under this paragraph ("Settlement"), Theranos further agrees to indemnify the Walgreens Indemnitee(s) for the defense fees and costs and monetary component of any such Settlement, provided that Theranos approves of the Settlement in writing in advance of the execution of the Settlement by the Walgreens Indemnitee(s).

9. **Insurance.**

   a. Within five (5) days of the Effective Date, Walgreens agrees to take all necessary steps to withdraw (and agrees not to assert in the future) as an insured, additional insured, third party beneficiary or in any other capacity, any claim, demand, or request for coverage or payment under the following insurance policies procured by Theranos or for which Theranos paid premiums: Products Completed Operations/Blended Liability Policy No. 3589-39-68, effective 11/09/14 to 02/01/16, issued to Theranos by Federal Insurance Company, and all renewals of such policy; Healthcare Professional Services Liability Policy No. 79937248, effective 11/09/14 to 02/01/16, issued to Theranos by Chubb Custom Insurance Company, and all renewals of such policy (together, the "AZ Litigation-Related Policies"). Such steps shall include a written request for withdrawal of any claim sent to the appropriate Chubb representative, with a carbon copy to counsel for Theranos. Theranos agrees that

4

CONFIDENTIAL

payments from the AZ Litigation-Related Policies shall be used to satisfy any judgment or settlement amount resulting from a Claim, and/or defense fees or costs incurred in connection with a Claim.

      b. Theranos agrees that the First Payment shall, to the fullest extent possible, be derived from the proceeds of any D&O insurance policy procured by Theranos or for which Theranos paid premiums. For avoidance of doubt, Theranos must satisfy the First Payment in full regardless of the source of payment.

10. **Walgreens Release.**

      a. Effective upon their receipt of the First Payment, Walgreens, on behalf of themselves, and each and every of their present and former parents, subsidiaries, divisions, affiliates, directors, officers, employees, agents, insurers, shareholders, investors, attorneys, legal representatives, advisors, consultants, representatives, third party beneficiaries, joint venturers, business associates, partners, members, administrators, independent contractors, and the predecessors, successors, heirs, and assigns of each of these individuals or entities (the "Walgreens Releasors"), shall be deemed to have fully and irrevocably released and forever discharged Theranos and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, investors, attorneys, legal representatives, advisors, consultants, representatives, members, administrators, independent contractors, and the predecessors, successors, heirs, and assigns of each of these individuals or entities (collectively, the "Theranos Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, counterclaims, judgments, debts, liens, contracts, agreements, promises, obligations, demands, damages, punitive damages, penalties, costs, attorneys' fees, losses, expenses and remedies, whether known or unknown, foreseen or unforeseen, contingent or vested, existing or potential, suspected or unsuspected, liquidated or unliquidated, arising by subrogation, assignment, reimbursement, operation of law, or otherwise, whether arising under federal, state, local, statutory, or common law, or any other law, rule, regulation,

CONFIDENTIAL

including the law of any jurisdiction outside the United States, whether legal, or equitable, that result from, arise out of, are based upon, or relate to (1) business activities between Walgreens and Theranos relating to the provision of blood testing services, (2) the development of, or the opportunity to develop, Theranos testing centers or any other blood testing service in Walgreens stores in the United States or anywhere else in the world, (3) any other aspect of Theranos' or Walgreens' business including the Parties' relationships with each other, dealings with each other, any acts, omissions, or failures to act, whether such claims arise directly, derivatively, representatively or in any other capacity, or (4) the allegations made, or which could have been made, in the Complaint, an amended complaint, or the Litigation ("Walgreens Released Claims"), up to the Effective Date of this Agreement. The Walgreens Releasors agree that the releases contained in this paragraph are intended to be construed as the broadest type of general release. For the avoidance of doubt, the Walgreens Released Claims do not include Walgreens' claims, or Theranos' obligations, regarding the Promissory Note, or Walgreens' rights under this Agreement.

 b. Notwithstanding anything above in (a) of this paragraph, if an Insolvency Event occurs and the First Payment and/or the Second Payment has been avoided or otherwise recovered as a preferential transfer under applicable state or federal law or is otherwise avoided or recovered by Theranos or any successor to Theranos or any party acting on behalf of Theranos (including by any trustee under Title 11 of the United States Code or similar party under applicable state or Federal law) (a "Clawback Event"), then Walgreens shall be entitled to pursue any claims, including the Walgreens Released Claims, against the Theranos Released Parties, including but not limited to seeking any and all applicable relief in Theranos' bankruptcy proceeding, including, without limitation, through the filing and adjudication of a proof of claim (any such claims "Walgreens Bankruptcy Claims"), provided, however, that in no event shall Walgreens receive or be entitled to receive any distribution from the Theranos Released Parties or Theranos' bankruptcy estate in respect of any Walgreens Bankruptcy Claims that, together with any other economic

CONFIDENTIAL

recovery obtained and retained by Walgreens hereunder, yields a greater economic recovery for Walgreens than Walgreens would have been entitled to under this Agreement had a Clawback Event not occurred (that is, seventy million dollars ($70,000,000) comprised of the thirty million dollar ($30,000,000) Settlement Amount and the forty million dollar ($40,000,000) Promissory Note, plus the indemnification amounts provided for in paragraph 8 herein). For purposes of this Agreement, "Insolvency Event" shall mean (1) an involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction under Title 11 of the United States Code, or any other Federal or state or foreign bankruptcy, insolvency, receivership or similar law against Theranos, (2) any filing for the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for or against Theranos, (3) the commencement of the winding up or liquidation of Theranos, (4) the voluntary commencement by Theranos of any proceeding, or the filing by Theranos of a petition for relief, under Title 11 of the United States Code, or any other Federal, state or foreign bankruptcy, insolvency, receivership or similar law, or (5) the making by Theranos of a general assignment for the benefit of creditors.

11. **Theranos Release.**

    a. Effective upon Walgreens's receipt of the First Payment, Theranos, on behalf of itself, and each and every of its present and former parents, subsidiaries, divisions, affiliates, directors, officers, employees, agents, insurers, shareholders, investors, attorneys, legal representatives, advisors, consultants, representatives, third party beneficiaries, joint venturers, business associates, partners, members, administrators, independent contractors, and the predecessors, successors, heirs, and assigns of each of these individuals or entities (the "Theranos Releasors"), shall be deemed to have fully and irrevocably released and forever discharged Walgreens and each of their present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, investors, attorneys, legal representatives, advisors, consultants, representatives, members, administrators, independent

CONFIDENTIAL

contractors, and the predecessors, successors, heirs, and assigns of each of these individuals or entities (collectively, the "Walgreens Released Parties"), of and from any and all liabilities, rights, claims, actions, causes of action, counterclaims, judgments, debts, liens, contracts, agreements, promises, obligations, demands, damages, punitive damages, penalties, costs, attorneys' fees, losses, expenses and remedies, whether known or unknown, foreseen or unforeseen, contingent or vested, existing or potential, suspected or unsuspected, liquidated or unliquidated, arising by subrogation, assignment, reimbursement, operation of law, or otherwise, whether arising under federal, state, local, statutory, or common law, or any other law, rule, regulation, including the law of any jurisdiction outside the United States, whether legal, or equitable, that result from, arise out of, are based upon, or relate to (1) business activities between Walgreens and Theranos relating to the provision of blood testing services, (2) the development of, or the opportunity to develop, Theranos testing centers or any other blood testing service in Walgreens stores in the United States or anywhere else in the world, (3) any other aspect of Theranos' or Walgreens' business including the Parties' relationships with each other, dealings with each other, any acts, omissions, or failures to act, whether such claims arise directly, derivatively, representatively or in any other capacity, or (4) the allegations made, or which could have been made, in the Complaint, an amended complaint, or the Litigation ("Theranos Released Claims"), up to the Effective Date of this Agreement. The Theranos Releasors agree that the releases contained in this paragraph are intended to be construed as the broadest type of general release.

  b. Notwithstanding anything above in (a) of this paragraph, in the event that Walgreens has or obtains any Walgreens Bankruptcy Claims, all rights, claims, counterclaims and defenses of Theranos related to any such Walgreens Bankruptcy Claims, or that could be brought in litigation of any Walgreens Bankruptcy Claims, including paragraph 10 of this Agreement, will be retained and be preserved but only to the extent Walgreens attempts to assert claims against Theranos or Theranos' bankruptcy estate, including any Walgreens Bankruptcy Claims that, together with any other economic recovery obtained and retained by Walgreens hereunder, result in

CONFIDENTIAL

a greater economic recovery for Walgreens than Walgreens would have been entitled to under this Agreement.

12. **General Release and Covenant Not to Sue.** The Parties expressly acknowledge that, under the laws of certain jurisdictions, a general release may not extend to claims that the settling party does not suspect or know exist in its favor at the time of executing the release, which if known to it might have materially affected its settlement. The Parties expressly waive any rights that they may have under the foregoing principle related to the mutual releases contained in this Agreement, as well as under any other statutory or common-law principles of similar effect, including, but not limited to, the fact that Walgreens and Theranos shall automatically be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or similar laws of any other state or jurisdiction. Section 1542 of the California Civil Code reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The parties understand that this provision is an important and material term of this agreement, and so long as the releases provided in this Agreement are effective, the Walgreens Releasors and Theranos Releasors agree and covenant not to commence or prosecute any Released Claims against any applicable Released Party.

13. **Confidentiality.**

    a. All matters relating to the terms, conditions, and negotiation of this Agreement shall be and remain confidential and shall not be disclosed to anyone other than the Parties hereto and their counsel, except that: (i) either Party may disclose that there was a settlement resolving all claims among the Parties and that the Litigation is dismissed with prejudice with no finding or implication of liability; (ii) the Parties may agree on a joint press release; and (iii) this Agreement and its terms

CONFIDENTIAL

may be disclosed (A) to persons with a "need to know" respecting corporate, financial, legal and contract matters, including insurers, lenders, investors or potential investors, investment bankers, auditors, attorneys, or tax advisors, provided that such persons have been advised that such disclosure is subject to the confidentiality provisions of this Agreement; (B) pursuant to an order, subpoena, or inquiry of a court or governmental agency or as may otherwise be required by law, provided that the receiving Party shall promptly advise the requesting person that the Agreement is confidential and shall also promptly inform the other Party to this Agreement of the order, subpoena, or regulatory inquiry and, where appropriate, take all reasonable steps to ensure that any such discovery will be made only pursuant to a confidentiality order entered by the appropriate court that otherwise preserves the confidentiality of the discovery sought; or (C) to the court in this Action or any other action or proceeding to enforce the terms of this Agreement.

    b.    As to any circumstances not covered by subparagraph (a) above, any Party that receives an inquiry relating in any way to the parties' prior, current, or future relationship; prior, current, or future course of dealing; or this Agreement shall either decline to respond or shall state only the following, as appropriate: (1) "The matter has been resolved on mutually acceptable terms;" and/or (2) "The companies have terminated their relationship and they are no longer working together in any way."

    c.    The Parties acknowledge and agree that the confidentiality provisions set forth above in (a) and (b) of this paragraph are material terms and conditions of this Agreement, that breach of those provisions may have a material effect on the Parties, and that any breach of those provisions would cause irreparable harm to the Parties. To effectuate the enforceability of the foregoing confidentiality provisions and to avoid irreparable harm to the Parties, the Parties agree, acknowledge, and approve that the Parties shall have available to them, should there be any actual or threatened breach of confidentiality obligations, the remedies of injunction and protective order, and such other relief as may be available under applicable law. Neither the breach of the confidentiality provisions, nor award of any relief for breach of those provisions to the Parties, shall affect the continuing validity or enforceability of this Agreement,

CONFIDENTIAL

and if this Paragraph is found to be unenforceable, which would be contrary to the intent of the Parties, it shall be severed and the remainder of the Agreement enforced.

14.     **No Assignment.**  Each Party represents and warrants that it has not assigned, conveyed or otherwise transferred or taken any action, or entered into any understanding, commitment or agreement of any nature, that has conferred, or has had the effect of conferring, assigning, conveying or otherwise transferring, in whole or in part, to any other person or entity any of its rights or claims relating to matters released hereby.

15.     **Authority.**  Each Party represents and warrants on behalf of itself that: (a) it is a business entity duly organized and validly existing in good standing under the law and that it is fully authorized to enter into this Agreement; (b) it has taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or other internal approval is necessary; (c) the making and performance of this Agreement will not violate any provision of law or of its articles of incorporation, charter or by-laws; and (d) the person executing this Agreement on its behalf has the authority to do so and thereby to bind the Party, and the respective Releasors.

16.     **Integration and Non-Reliance.**  Except as specifically provided in this Agreement, in executing this Agreement, no Party has made or has relied upon any oral or written statement, representation, communication, promise, or agreement of any other Party concerning the subject matter of this Agreement, any past or present fact, circumstance, condition, legal effect, or promise of future action, and specifically, no Party has relied upon any representations made by any attorney or agent or any released Party about the nature or extent of any damages or the nature or viability of any released claims. In deciding to enter into this Agreement, no Party is relying upon a legal duty, if one exists, on the part of any other Party (or such other Party's employees, agents, representatives, or attorneys) to disclose any information in connection with the execution of this Agreement or its preparation. Except as specifically required by the Parties' representations and warranties in paragraphs 14 and 15 herein, it is expressly understood that no Party shall ever assert any failure to disclose information on the part of the other Party prior to the execution of this Agreement as a ground for challenging the validity of this Agreement. The Parties have been represented and advised by counsel in regard

11

to the negotiations, drafting and execution of this Agreement. Each Party represents and warrants on behalf of itself that it has read this entire Agreement, that it knows the contents hereof, that it has had the opportunity to review and analyze this Agreement for a sufficient period of time prior to execution and delivery, and that the terms hereof are contractual and not merely recitals, and that it has signed this Agreement of its own free act.

17. **No Drafting Presumption.** Each Party acknowledges and agrees that this Agreement shall not be deemed prepared or drafted by any one Party, and that all the terms of this Agreement were negotiated. In the event of any dispute between the Parties concerning this Agreement, the Parties agree that no rule of construction resolving any ambiguity in the language of the Agreement against the drafting Party or either Party shall apply.

18. **Amendments in Writing.** This Agreement may not be altered, changed, amended or modified except by way of a written instrument signed by authorized representatives of all of the Parties.

19. **Governing Law and Dispute Resolution.** The Agreement shall be governed by and shall be construed according to the laws of the State of Delaware (without giving effect to its conflict of laws provisions). All disputes arising out of or in connection with this Agreement shall be brought in the United States District Court for the District of Delaware ("District of Delaware"), or, in the event that the District of Delaware is not an available forum, the Delaware Court of Chancery. All Parties voluntarily submit to the jurisdiction of, and the propriety of venue in, the District of Delaware or, in the event that the District of Delaware is not an available forum, the Delaware Court of Chancery.

20. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original when so executed, and all of such counterparts, taken together, shall constitute one and the same Agreement, even though all of the Parties may have executed different counterparts of this Agreement.

CONFIDENTIAL

IN WITNESS WHEREOF, intending to be legally bound, the Parties hereto have caused this Agreement to be signed by their duly authorized representatives as of the day and year first above written.

WALGREENS BOOTS ALLIANCE, INC.

By: _____
Name: MARCO PAGNI
Title: EXECUTIVE VP & GENERAL COUNSEL


WALGREEN CO.

By: _____
Name: ELENA KRAUS
Title: General Counsel


THERANOS, INC.

By: _____
Name: David Taylor
Title: General Counsel

CONFIDENTIAL