# EXHIBIT 14

## Food and Drug Administration Establishment Inspection Report

| | | |
|---|---|---|
| Date Assigned: 08/31/2015 | Inspection Start Date: 08/25/2015 | Inspection End Date: 09/16/2015 |

**Firm Name & Address:** Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

**Firm Mailing Address:** 1701 Page Mill Rd, Palo Alto, CA 94304-1210 United States

| | | | |
|---|---|---|---|
| FEI: 3010479366 | JD/TA: 14 | County: SANTA CLARA | Est Size: Unknown |
| Phone: (650)856-7304 | | District: SAN-DO | Profiled: Yes |
| Conveyance Type: | % Interstate: | Inspectional Responsibility: | |

## Endorsement

This Level 3 QSIT inspection of Theranos, Inc., Palo Alto, CA a manufacture of specimen containers, was conducted in accordance with FACTS Assignment 11558121, a CDRH For Cause assignment to follow up on devices the firm distributes and to assess compliance with quality system regulations. This is the initial FDA inspection of the firm. A CDRH SME participated in the inspection.

During the current inspection the investigators covered design controls and document controls focusing on the TSCD specimen collection tube. During this inspection the investigators observed issues with design validation, design inputs, risk analysis and documents controls. An FDA-483 was issued noting these concerns. Management disagreed with all written observations but provided corrections which the investigator was unable to verify prior to close-out. Management annotated all observations as reported corrected, not verified. A non-printed observation was discussed with the firm for failure to register their device as Class 2. Management stated they could not correct this observation without first obtaining 510(k) clearance which they are currently in the process of submitting.

The firm has been communicating with CDRH prior to the inspection. Management is highly sensitive to confidentiality of the collected information and all exhibits were marked by the firm as FOIA exempt.

The investigators were provided various undated documents to show past compliance; these documents were created during the inspection. Review proof of compliance with caution.

This inspection at the Palo Alto, CA site was conducted in tandem with an inspection at the firm's lab and manufacturing site in Newark, CA.

No official samples were collected. Promotional materials were collected at this site to accompany documents showing interstate shipment that were collected at the Newark, CA site. Objections to the inspection were encountered numerous times but there was no inspectional refusal, although affiants refused to sign affidavits.

No hardcopy response to the FDA-483 has been received although firm management had a telecon with CDRH and the district on 9/18/2015 followed by an email from the CEO dated 9/20/2015.

Classification: OAI 1B rec. W/L issue for lack of 510(k), GMP issues.
F/U: Re-inspect in 6 months to verify corrections.

o: SAN-DO File thru SAN-CB
c: Branch Chief/Field Inspections Support Branch, CDRH/OC/DAPO/FISB, WO66, room 2622, 10903 New Hampshire Ave, Silver Spring, MD 20993-0002
IAS & 483: FDB (H. Loui)

**Endorsement Location:** SAN-Files, SAC-RP, FACTS

| Inspector Name | Date & Time of Signature | Supervisor Name | Date & Time of Signature |
|---|---|---|---|
| Seema S Singh | 09/29/2015  07:08 PM  ET | Eric W Anderson | 10/02/2015  07:20 PM  ET |

US-FDA-0035508

# Food and Drug Administration Establishment Inspection Report

| | |
|---|---|
| **FEI:** 3010479366 | **Inspection Start Date:** 08/25/2015 **Inspection End Date:** 09/16/2015 |

**Firm Name & Address:** Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

**Related Firm FEI:** **Name & Address of Related Firm:**

**Registration Type**
DEV     Device

**Registration Dates**
02/01/2015

**Establishment Type**

| | |
|---|---|
| M | Manufacturer |
| M | Manufacturer |
| M | Manufacturer |

**Industry Code**

| | |
|---|---|
| 75 | Chemistry |
| 81 | Hematology |
| 88 | Pathology |

**District Use Code:**

**Date:** 10/02/2015          **Page:** 2  of  6

US-FDA-0035509

## Food and Drug Administration Establishment Inspection Report

**FEI:** 3010479366     **Inspection Start Date:** 08/25/2015     **Inspection End Date:** 09/16/2015

**Firm Name & Address:** Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

**Inspection Basis:** Compliance

### Inspected Processes & District Decisions

| PAC | Establishment Type | Products/ Process | MQSA | Reschedule Insp Date | Re-Inspection Priority | Inspection Conclusions |
|---|---|---|---|---|---|---|
| 82012 | Manufacturer | 75  J | | 03/2016 | Compliance | Correction Indicated (CI) |

| Final Decision? | District Decision Date | District Decision Type | District Decision Made By | Org Name |
|---|---|---|---|---|
| | 10/02/2015 | Official Action Indicated (OAI) | Anderson, Eric W | SAN-EWA |

Remarks:

| PAC | Establishment Type | Products/ Process | MQSA | Reschedule Insp Date | Re-Inspection Priority | Inspection Conclusions |
|---|---|---|---|---|---|---|
| 82845B | Manufacturer | 75  J | | 03/2016 | Compliance | Correction Indicated (CI) |

| Final Decision? | District Decision Date | District Decision Type | District Decision Made By | Org Name |
|---|---|---|---|---|
| | 10/02/2015 | Official Action Indicated (OAI) | Anderson, Eric W | SAN-EWA |

Remarks:

| PAC | Establishment Type | Products/ Process | MQSA | Reschedule Insp Date | Re-Inspection Priority | Inspection Conclusions |
|---|---|---|---|---|---|---|
| 82845G | Manufacturer | 75  J | | 03/2016 | Compliance | Correction Indicated (CI) |

| Final Decision? | District Decision Date | District Decision Type | District Decision Made By | Org Name |
|---|---|---|---|---|
| | 10/02/2015 | Official Action Indicated (OAI) | Anderson, Eric W | SAN-EWA |

Remarks:

**Date:** 10/02/2015      **Page:** 3  of  6

US-FDA-0035510

## Food and Drug Administration Establishment Inspection Report

| | | |
|---|---|---|
| FEI: 3010479366 | Inspection Start Date: 08/25/2015 | Inspection End Date: 09/16/2015 |

Firm Name & Address: Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

## Products Covered

| Product Code | Est Type | Description | Additional Product Description |
|---|---|---|---|
| 75 J | KA Manufacturer | Tubes, Vials, Systems, Serum Separators, Blood Collection | |

## Assignees Accomplishment Hours

| Employee Name | Position Class | Hours Credited To | PAC | Establishment Type | Process | Hours |
|---|---|---|---|---|---|---|
| Singh, Seema S | INV | SAN-DO | 82012 | Manufacturer | 75 J | 6 |
| Singh, Seema S | INV | SAN-DO | 82845B | Manufacturer | 75 J | 100 |
| Singh, Seema S | INV | SAN-DO | 82845G | Manufacturer | 75 J | 100 |

**Total Hours:** 206

US-FDA-0035511

# Food and Drug Administration Establishment Inspection Report

**FEI:** 3010479366   **Inspection Start Date:** 08/25/2015   **Inspection End Date:** 09/16/2015

**Firm Name & Address:** Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

## Inspection Result

**EIR Location**                                                                                         **Trips Num**
SAN-Files, SAC-RP, Turbo

**Inspection Summary**
This Center initiated, comprehensive inspection of Theranos, Inc., a specimen container manufacturer was conducted in accordance with Compliance Program 7382.845, Inspection of Medical Device Manufacturers. It was conducted with Field Accomplishments and Compliance Tracking System (FACTS) assignment number 11558121 and with ORA Concurrence number MP2015082101.

This is the initial FDA inspection of Theranos, Inc.

During the current inspection, the investigators covered Design Controls and Document Controls focusing on the Theranos Sample Collection Device (TSCD) also known as Capillary Tubes and Nanotainers (CTN) or just Nanotainers. The investigators reviewed associated design documents.

During the inspection, the investigators found issues with design validation, design inputs, risk analysis and document controls all of which were communicated during the inspection and via Form FDA 483, Inspectional Observations. In addition, a verbal observation of was discussed with firm management for failure to register a class 2 device. Management was warned that failure to correct observations may lead to regulatory action without further notice.

Throughout the inspection and during the closing meeting, Elizabeth Holmes, CEO and founder explained that she does not believe that the TSCD devices should be subject to FDA?s Quality System Regulations (QSR) because they were developed under the Laboratory Developed Test (LDT) framework with which FDA has exercised enforcement discretion (see the General Discussion with Management section for the firm?s responses, statements and objections). However, she elected to annotate the written observations as reported corrected, not verified. The corrections were provided to Investigator Singh on 9/11/15; Investigator Singh was unable to verify the corrections prior to closing the inspection but collected them and attached them to this Establishment Inspection Report (EIR).

The investigators encountered objections to the inspection which are described in the General Discussion with Management section of this EIR. Affidavits were issued to Ms. Holmes and Heather King, General Councel; both declined to sign the Affidavits due to company policy.

No official samples were collected. Recalls are handled at the firm?s Newark, CA site, however Ms. Holmes stated that Theranos has not conducted any recalls.

## IB Suggested Actions

**Action**                                **Remarks**

## Referrals

**Org Name**                **Mail Code**                **Remarks**

## Refusals

**Inspection Refusals:**   No refusal

## Samples Collected                **Recall Numbers**                **Related Complaints**

**Date:** 10/02/2015                        **Page:** 5  of  6

# Food and Drug Administration Establishment Inspection Report

| | | |
|---|---|---|
| FEI: 3010479366 | **Inspection Start Date:** 08/25/2015 | **Inspection End Date:** 09/16/2015 |

Firm Name & Address:  Theranos, Inc. , 1701 Page Mill Rd Palo Alto, CA 94304-1210 US

| Sample Number | Recall Number | Consumer Complaint Number |
|---|---|---|

## FDA 483 Responses

**483 Issued?:**  Y       **483 Location:** SAN-Files, SAC-RP, Turbo

| Response Type | Response Mode | Response Date | Response Summary |
|---|---|---|---|

**Date:** 10/02/2015                **Page:** 6  of  6

US-FDA-0035513

## AFFIDAVIT

SAMPLE NO.

| STATE OF | COUNTY OF |
|---|---|
| California | Santa Clara |

Before me, _Seema S. Singh_ , an employee of the Department of Health and Human Services, Food and Drug Administration, designated by the Secretary, under authority of the Act of January 31, 1925, 43 Statutes at Large 803; Reorganization Plan No. IV, Secs. 12-15, effective June 30, 1940; Reorganization Plan No. 1 of 1953, Secs. 1-9, effective April 11, 1953; and P.L. 96-88, Sec. 509, 93 Statutes at Large 965 (20 U.S.C. 3508) effective May 4, 1980; to administer or take oaths, affirmations, and affidavits, personally appeared _Elizabeth A. Holmes_ in the county and state aforesaid, who, being duly sworn, deposes and says:

I, Elizabeth A. Holmes am the Chief Executive Officer (CEO), Founder, and most responsible individual of Theranos, Inc. whose headquarters' location is at 1701 Page Mill Road, Palo Alto, CA 94304. As such I am knowledgeable about and can provide information on the Nanotainer devices, where they are distributed, what assays they can be used with, what instruments they can be used on, where they are distributed, and I can verify the marketing material, the website and the training material associated with the device.

I provided FDA Investigators Seema S. Singh and Ian A. Pilcher with information and the documents described below during an inspection of the facility from 08/25/2015 to 09/16/2015.

Theranos, Inc. has 3 different sites: 1) the headquarter location located at 1701 Page Mill Road, Palo Alto, CA 94304, 2) the facility located at 7333 Gateway Blvd, Newark, CA 94560 which consists of a lab and the Nanotainer manufacturing area, and 3) the lab located at 1365 North Scottsdale Road, Scottsdale AZ 85257.

Theranos manufactures the Nanotainer devices also known as Theranos Sample Collection Devices (TSCD) or CTNs. "Nanotainer" is the brand name. TSCDs are all manufactured at the Newark facility and sent to the Newark or Arizona lab and then sent to multiple collection sites and collection points. TSCDs with patient samples are then sent back to the Newark lab for analysis.

The TSCDs are used to collect and store capillary blood samples from patients for analysis for various tests. The TSCDs are either coated with a Lithium-Heparin (identified with a green label ) or EDTA (identified with a purple label) anticoagulants. The Lithium Heparin (Li-Hep) TSCDs have a preloaded polydimethylsiloxane gel for blood separation purposes. The Li-Hep TSCDs are centrifuged after collection to separate plasma prior to shipment to the analyzing lab. Both the EDTA and Li-Hep configurations are coated with a siliconising fluid (SurfaSil). All samples contained in the TSCD are sent to the Newark, CA lab only.

Theranos has been distributing and using the TSCDs to collect patient capillary blood samples for analysis since November 2013. I provided documents to Investigator Singh with the following

AFFIANT'S SIGNATURE AND TITLE

FIRM'S NAME AND ADDRESS (Include ZIP Code)

Subscribed and sworn to before me at _____

_(City and State)_

this _____ day of _____ , 20 ____ .

_____
_(Employee's Signature)_

Employee of the Department of Health and Human Services designated under Act of January 31, 1925, Reorganization Plan IV effective June 30, 1940; Reorganization Plan No. 1 of 1953, effective April 11, 1953; and P.L. 96-88, effective May 4, 1980.

US-FDA-0035514

| AFFIDAVIT | | SAMPLE NO. |
|---|---|---|

| STATE OF | COUNTY OF |
|---|---|
| California | Santa Clara |

Before me, __Seema S. Singh__ , an employee of the Department of Health and Human Services, Food and Drug Administration, designated by the Secretary, under authority of the Act of January 31, 1925, 43 Statutes at Large 803; Reorganization Plan No. IV, Secs. 12-15, effective June 30, 1940; Reorganization Plan No. 1 of 1953, Secs. 1-9, effective April 11, 1953; and P.L. 96-88, Sec. 509, 93 Statutes at Large 965 (20 U.S.C. 3508) effective May 4, 1980; to administer or take oaths, affirmations, and affidavits, personally appeared __Elizabeth A. Holmes__ in the county and state aforesaid, who, being duly sworn, deposes and says:

information:

\* Theranos has been shipping patient samples to and from the California and Arizona since November 2013. The first patient sample contained in a TSCD was shipped from Arizona to California on November 13, 2013.

\* On 8/25/15, I provided a list of all Theranos Laboratory Developed Test (LDTs) with the assay name, assay device type, the container which is used (where NT) refers to the Nanotainer /TSCD device, and the analyzer the device is run on.

\* On 8/26/15, I provided an additional list that has an additional column that lists the anticoagulant type incorporated in the device. The list also includes the blood component that is analyzed (serum, plasma or whole blood).

\* On 8/26/15, I provided a list of all collection locations that may utilize the TSCD. The list includes Theranos Wellness Centers in California, Arizona, and Pennsylvania, which are open to the public. Theranos phlebotomists collect the patient samples at these locations. Theranos also has Theranos phlebotomists in physicians' offices to collect samples. However, these physician office locations do not utilize the TSCDs; they only perform venous bloods draws and are not open to the public.

\* On 8/26/15, I provided a list of all assays performed in the Theranos high-complexity laboratory in Newark, CA. The list includes the assay and the instrument on which it run. This list is not specific to assays run using the TSCD device, but if they are run on the TSCD device the list will show the analyzer used.

\* On 9/2/15, I provided a list of the number of assays that have been run on finder stick samples using the TSCD. The list has the initial visit date which is the date the sample was initially taken, and it has the number of tests reported to patients. This list was provided to replace the list provided on 8/25/15; however, the list provided on 8/25/15 is still accurate in terms of the blood component used and the analyzer used.

AFFIANT'S SIGNATURE AND TITLE

FIRM'S NAME AND ADDRESS *(Include ZiP Code)*

Subscribed and sworn to before me at _____

*(City and State)*

this _____ day of _____ , 20____ .

_____
*(Employee's Signature)*

Employee of the Department of Health and Human Services designated under Act of January 31, 1925, Reorganization Plan IV effective June 30, 1940; Reorganization Plan No. 1 of 1953, effective April 11, 1953; and P.L. 96-88, effective May 4, 1980.

FORM FDA 463a (5/07)                    FSC Graphics (301) 443-1021  EF                    Page 2 of 4

US-FDA-0035515

| AFFIDAVIT | SAMPLE NO. |
|---|---|

| STATE OF | COUNTY OF |
|---|---|
| California | Santa Clara |

Before me, Seema S. Singh , an employee of the Department of Health and Human Services, Food and Drug Administration, designated by the Secretary, under authority of the Act of January 31, 1925, 43 Statutes at Large 803; Reorganization Plan No. IV, Secs. 12-15, effective June 30, 1940; Reorganization Plan No. 1 of 1953, Secs. 1-9, effective April 11, 1953; and P.L. 96-88, Sec. 509, 93 Statutes at Large 965 (20 U.S.C. 3508) effective May 4, 1980; to administer or take oaths, affirmations, and affidavits, personally appeared Elizabeth A. Holmes in the county and state aforesaid, who, being duly sworn, deposes and says:

* On 9/4/15, I provided another list of assays run on finger-stick samples using the TSCD in Newark, CA. This list is intended to replace the one proved 8/25/15 and 9/2/15. This is the most up to date list. Lists provided that identify the anticoagulant and blood component type are still accurate, but this list provided 9/4/15 should be used as the list of active assays.

The following marketing collateral (used to market Theranos products and services), and the website were effective 2/27/15 and are applicable to TSCD lots 29122014-3690, 30122014-3749 and 02012015-375 that were shipped from Newark , CA to Scottsdale, AZ on 2/27/15:

Marketing collateral used in Arizona collection sites are shipped to the Scottsdale, Arizona lab and then are distributed to the Arizona collection sites by Theranos couriers. All marketing material content is created by Theranos at the Palo Alto, CA facility, but some are printed using a third party vendor. Regardless of where the material is printed, they are all shipped to Scottsdale, Arizona to the same location the TSCD devices are shipped. Marketing collateral are then distributed to the Wellness Centers, where the TSCD devices are used.

The marketing collateral available at the Arizona collection sites as of 2/27/15 are as follows:

* Theranos circular brochure enclosed in a square envelope which contains a photo of the TSCD.
* The physician test Menu entitled "theranos test menu"
* The physician locations flyer in English entitled "theranos***the tiny blood test" which pictures the TSCD device.
* The physician locations flyer in Spanish entitled "theranos***analisis clínicos pequeños" which pictures the TSCD device.

Investigator Singh was provided Thernaos' website, www.theranos.com, effective 2/27/15. The current version of the website, effective 8/25/15 was also provided on discs. Any press releases, videos and test

AFFIANT'S SIGNATURE AND TITLE

FIRM'S NAME AND ADDRESS *(Include ZIP Code)*

Subscribed and sworn to before me at _____ ,

*(City and State)*

this _____ day of _____ , 20____ .

_____
*(Employee's Signature)*

Employee of the Department of Health and Human Services designated under Act of January 31, 1925, Reorganization Plan IV effective June 30, 1940; Reorganization Plan No. 1 of 1953, effective April 11, 1953; and P.L. 96-88, effective May 4, 1980.

FORM FDA 463a (5/07)                                        TSC Graphics (301) 443-1095 EF                    Page 3 of 4

US-FDA-0035516

| **AFFIDAVIT** | | SAMPLE NO. |
|---|---|---|

| STATE OF | COUNTY OF |
|---|---|
| California | Santa Clara |

Before me, <u>Seema S. Singh</u>, an employee of the Department of Health and Human Services, Food and Drug Administration, designated by the Secretary, under authority of the Act of January 31, 1925, 43 Statutes at Large 803; Reorganization Plan No. IV, Secs. 12-15, effective June 30, 1940; Reorganization Plan No. 1 of 1953, Secs. 1-9, effective April 11, 1953; and P.L. 96-88, Sec. 509, 93 Statutes at Large 965 (20 U.S.C. 3508) effective May 4, 1980; to administer or take oaths, affirmations, and affidavits, personally appeared <u>Elizabeth A. Holmes</u> in the county and state aforesaid, who, being duly sworn, deposes and says:

descriptions shown on the website effective on 2/27/15 can be viewed on the 8/25/15 version since the content of these items have not changed.

I provided the training material used to train Theranos phlebotomists located inside Walgreens collection sites. The training materials include:

* Filling Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)
* Finger Stick Evaluation Rubric (provided to Investigators Singh and Pilcher on 8/26/15)
* Grip Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)
* Finger Stick Process Guide (provided to Investigators Singh and Pilcher on 8/26/15)
* Lancing Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)

Elizabeth Holmes will not sign the Affidavit because she says it is company policy not to acknowledge, sign or refuse the Affidavit

- Seema Singh 9/16/15

AFFIANT'S SIGNATURE AND TITLE

FIRM'S NAME AND ADDRESS *(Include ZIP Code)*

Subscribed and sworn to before me at _____,
*(City and State)*

this _____ day of _____, 20____.

_____
*(Employee's Signature)*

Employee of the Department of Health and Human Services designated under Act of January 31, 1925, Reorganization Plan IV effective June 30, 1940; Reorganization Plan No. 1 of 1953, effective April 11, 1953; and P.L. 96-88, effective May 4, 1980.

FORM FDA 463a (5/07)   FSC Graphics (301) 443-1090 EF   Page 4 of 4

US-FDA-0035517

| AFFIDAVIT | SAMPLE NO. |
|---|---|

| STATE OF | COUNTY OF |
|---|---|
| California | Santa Clara |

Before me, ___Seema S. Singh___, an employee of the Department of Health and Human Services, Food and Drug Administration, designated by the Secretary, under authority of the Act of January 31, 1925, 43 Statutes at Large 803; Reorganization Plan No. IV, Secs. 12-15, effective June 30, 1940; Reorganization Plan No. 1 of 1953, Secs. 1-9, effective April 11, 1953; and P.L. 96-88, Sec. 509, 93 Statutes at Large 965 (20 U.S.C. 3508) effective May 4, 1980; to administer or take oaths, affirmations, and affidavits, personally appeared ___Heather M. King___ in the county and state aforesaid, who, being duly sworn, deposes and says:

I, Heather M. King, am the General Councel for Theranos, Inc. whose headquarters' location is at 1701 Page Mill Road, Palo Alto, CA 94304. As such I can review and verify effective dates of documents including training materials and the website.

I provided FDA Investigators Seema S. Singh and Ian A. Pilcher with information and the documents described below during an inspection of the facility from 08/25/2015 to 09/16/2015.

I verified that the following training materials provided to Investigator Singh were in place on 2/27/15. These training materials are used to train Theranos phlebotomists, located inside Walgreens locations, on how to collect patient samples. They include information on the Theranos Sample Collection Devices (TSCD) also known as Nanotainers or CTNs.

\* Document Number: CL SOP-05020, Revision E, Effective 9/19/14 (provided to Investigator Singh on 9/16/15)
\* Filling Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)
\* Finger Stick Evaluation Rubric (provided to Investigators Singh and Pilcher on 8/26/15)
\* Grip Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)
\* Finger Stick Process Guide (provided to Investigators Singh and Pilcher on 8/26/15)
\* Lancing Station Guide (provided to Investigators Singh and Pilcher on 8/26/15)

The Theranos website, www.theranos.com, effective 2/27/15 was provided to Investigator Singh as a hardcopy. I provided a blown-up version of the test menu section on 9/16/15. On the website, when you click on the link to a test on the test menu, a description of the test appears. I verified that the descriptions of the test listed on the 2/27/15 version of the website is the same as the website version that was effective on 8/26/15 which was also provided to Investigator Singh.

*Heather King will not sign the Affidavit because she says it is company policy not to acknowledge, sign or refuse the Affidavit. ILR (Seema Singh 9/16/15*

| AFFIANT'S SIGNATURE AND TITLE |
|---|
| |

| FIRM'S NAME AND ADDRESS *(Include ZIP Code)* |
|---|
| |

Subscribed and sworn to before me at _____,
*(City and State)*

this _____ day of _____, 20____.

_____
*(Employee's Signature)*

Employee of the Department of Health and Human Services designated under Act of January 31, 1925, Reorganization Plan IV effective June 30, 1940; Reorganization Plan No. 1 of 1953, effective April 11, 1953; and P.L. 96-88, effective May 4, 1980.

FORM FDA 463a (5/07)                    PSC Graphics (301) 443-1090 EF                    Page 1 of 1

US-FDA-0035518

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

**1. DISTRICT OFFICE ADDRESS & PHONE NO.**
1431 Harbor Bay Pkwy
Alameda, CA 94502
(510) 337-6700

TO

**2. NAME AND TITLE OF INDIVIDUAL**
Elizabeth A. Holmes, Chief Executive Officer + Founder

**3. DATE**
08/25/2015

**4. FIRM NAME**
Theranos, Inc.

**6. NUMBER AND STREET**
1701 Page Mill Road

**7. CITY AND STATE & ZIP CODE**
Palo Alto, CA 94304

**5. HOUR**
9:45 a.m. / p.m.

**8. PHONE NO. & AREA CODE**
(650) 838-9292

Notice of Inspection is hereby given pursuant to Section 704(a)(1) of the Federal Food, Drug, and Cosmetics Act [21 U.S.C. 374(a)][1] and/or Part F or G, Title III of the Public Health Service Act [42 U.S.C. 262-264][2]

As a small business that is subject to FDA regulation, you have the right to seek assistance from the U.S. Small Business Administration (SBA). This assistance includes a mechanism to address the enforcement actions of Federal agencies. SBA has a National Ombudsman's Office that receives comments from small businesses about Federal agency enforcement actions. If you wish to comment on the enforcement actions of FDA, CALL (888) 734-3247. The website address is www.sba.gov/ombudsman.

FDA has an Office of the Ombudsman that can directly assist small business with complaints or disputes about actions of the FDA. That office can be reached by calling (301) 796-8530 or by email at ombuds@oc.fda.gov.

For industry information, go to www.fda.gov/oc/industry.

**9. SIGNATURE(S)** *(Food and Drug Administration Employee(s))*

**10. TYPE OR PRINT NAME(S) AND TITLE(S)** *(FDA Employee(s))*
Seema S. Singh, Investigator
Jean A. Fisher, Investigator

[1] **Applicable portions of Section 704 and other Sections of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 374] are quoted below:**

Sec. 704(a)(1) For purposes of enforcement of this Act, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (A) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, tobacco products, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, tobacco products, or cosmetics in interstate commerce; and (B) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. In the case of any person (excluding farms and restaurants) who manufactures, processes, packs, transports, distributes, holds, or imports foods, the inspection shall extend to all records and other information

described in section 414, when the standard for records inspection under paragraph (1) or (2) of section 414(a) applies, subject to the limitations established in section 414(d). In the case of any factory, warehouse, establishment, or consulting laboratory in which prescription drugs, nonprescription drugs intended for human use, restricted devices, or tobacco products are manufactured, processed, packed, or held, inspection shall extend to all things therein (including records, files, papers, processes, controls, and facilities) bearing on whether prescription drugs, nonprescription drugs intended for human use, restricted devices, or tobacco products which are adulterated or misbranded within the meaning of this Act, or which may not be manufactured, introduced into interstate commerce, or sold, or offered for sale by reason of any provision of this Act, have been or are being manufactured, processed, packed, transported, or held in any such place, or otherwise bearing on violation of this Act. No inspection authorized by the preceding sentence or by paragraph (3) shall extend to financial data, sales data other than shipment data, pricing data, personnel data (other than data as to qualifications of technical and professional personnel performing functions subject to this *(Continued on Reverse)*

US-FDA-0035519

Act), and research data (other than data relating to new drugs, antibiotic drugs, devices, and tobacco products and subject to reporting and inspection under regulations lawfully issued pursuant to section 505 (i) or (k), section 519, section 520(g), or chapter IX and data relating to other drugs, devices, or tobacco products, which in the case of a new drug would be subject to reporting or inspection under lawful regulations issued pursuant to section 505(j)). A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness.

Sec. 704. (a)(2) The provisions of the third sentence of paragraph (1) shall not apply to (A) pharmacies which maintain establishments in conformance with any applicable local laws regulating the practice of pharmacy and medicine and which are regularly engaged in dispensing prescription drugs or devices, upon prescriptions of practitioners licensed to administer such drugs or devices to patients under the care of such practitioners in the course of their professional practice, and which do not, either through a subsidiary or otherwise, manufacture, prepare, propagate, compound, or process drugs or devices for sale other than in the regular course of their business of dispensing or selling drugs or devices at retail; (B) practitioners licensed by law to prescribe or administer drugs, or prescribe or use devices, as the case may be, and who manufacture, prepare, propagate, compound, or process drugs, or manufacture or process devices solely for use in the course of their professional practice; (C) persons who manufacture, prepare, propagate, compound, or process drugs, or manufacture or process devices solely for use in research, teaching, or chemical analysis and not for sale; (D) such other classes of persons as the Secretary may by regulation exempt from the application of this section upon a finding that inspection as applied to such classes of persons in accordance with this section is not necessary for the protection of the public health.

Sec. 704. (a)(3) An officer or employee making an inspection under paragraph (1) for purposes of enforcing the requirements of section 412 applicable to infant formulas shall be permitted, at all reasonable times, to have access to and to copy and verify any records (A) bearing on whether the infant formula manufactured or held in the facility inspected meets the requirements of section 412, or (B) required to be maintained under section 412.

Sec. 704(b) Upon completion of any such inspection of a factory, warehouse, consulting laboratory, or other establishment, and prior to leaving the premises, the officer or employee making the inspection shall give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by him which, in his judgment, indicate that any food, drug, device, tobacco product, or cosmetic in such establishment (1) consists in whole or in part of any filthy, putrid, or decomposed substance, or (2) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. A copy of such report shall be sent promptly to the Secretary.

Sec. 704. (c) If the officer or employee making any such inspection of a factory, warehouse, or other establishment has obtained any sample in the course of the inspection, upon completion of the inspection and prior to leaving the premises he shall give to the owner, operator, or agent in charge a receipt describing the samples obtained.

Sec. 704. (d) Whenever in the course of any such inspection of a factory or other establishment where food is manufactured, processed, or packed, the officer or employee making the inspection obtains a sample of any such food, and an analysis is made of such sample for the purpose of ascertaining whether such food consists in whole or in part of any filthy, putrid, or decomposed substance, or is otherwise unfit for food, a copy of the results of such analysis shall be furnished promptly to the owner, operator, or agent in charge.

Sec. 704(e) Every person required under section 519 or 520(g) to maintain records and every person who is in charge or custody of such records shall, upon request of an officer or employee designated by the Secretary, permit such officer or employee at all reasonable times to have access to and to copy and verify, such records.

Section 704 (f)(1) An accredited person described in paragraph (3) shall maintain records documenting the training qualifications of the person and the employees of the person, the procedures used by the person for handling confidential information, the compensation arrangements made by the person, and the procedures used by the person to identify and avoid conflicts of interest. Upon the request of an officer or employee designated by the Secretary, the person shall permit the officer or employee, at all reasonable times, to have access to, to copy, and to verify, the records.

Section 512 (I)(1) In the case of any new animal drug for which an approval of an application filed pursuant to subsection (b) is in effect, the applicant shall establish and maintain such records, and make such reports to the Secretary, of data relating to experience, including experience with uses authorized under subsection (a)(4)(A), and other data or information, received or otherwise obtained by such applicant with respect to such drug, or with respect to animal feeds bearing or containing such drug, as the Secretary may by general regulation, or by order with respect to such application, prescribe on the basis of a finding that such records and reports are necessary in order to enable the Secretary to determine, or facilitate a determination, whether there is or may be ground for invoking subsection (e) or subsection (m) (4) of this section. Such regulation or order shall provide, where the Secretary deems it to be appropriate, for the examination, upon request, by the persons to whom such regulation or order is applicable, of similar information received or otherwise obtained by the Secretary.

(2) Every person required under this subsection to maintain records, and every person in charge or custody thereof, shall, upon request of an officer or employee designated by the Secretary, permit such officer or employee at all reasonable times to have access to and copy and verify such records.

[2]Applicable sections of Parts F and G of Title III Public Health Service Act [42 U.S.C. 262-264] are quoted below:

Part F – Licensing – Biological Products and Clinical Laboratories and* * * * * *

Sec. 351(c) "Any officer, agent, or employee of the Department of Health and Human Services, authorized by the Secretary for the purpose, may during all reasonable hours enter and inspect any establishment for the propagation or manufacture and preparation
*(Continued on Page 3)*

US-FDA-0035520

of any virus, serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, or other product aforesaid for sale, barter, or exchange in the District of Columbia, or to be sent, carried, or brought from any State or possession into any other State or possession or into any foreign country, or from any foreign country into any State or possession."

Part F – * * * * * *Control of Radiation.

Sec. 360 A (a) "If the Secretary finds for good cause that the methods, tests, or programs related to electronic product radiation safety in a particular factory, warehouse, or establishment in which electronic products are manufactured or held, may not be adequate or reliable, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are thereafter authorized (1) to enter, at reasonable times any area in such factory, warehouse, or establishment in which the manufacturer's tests (or testing programs) required by section 358(h) are carried out, and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, the facilities and procedures within such area which are related to electronic product radiation safety. Each such inspection shall be commenced and completed with reasonable promptness. In addition to other grounds upon which good cause may be found for purposes of this subsection, good cause will be considered to exist in any case where the manufacturer has introduced into commerce any electronic product which does not comply with an applicable standard prescribed under this subpart and with respect to which no exemption from the notification requirements has been granted by the Secretary under section 359(a)(2) or 359(e)."

(b) "Every manufacturer of electronic products shall establish and maintain such records (including testing records), make such reports, and provide such information, as the Secretary may reasonably require to enable him to determine whether such manufacturer has acted or is acting in compliance with this subpart and standards prescribed pursuant to this subpart and shall, upon request of an officer or employee duly designated by the Secretary, permit such officer or employee to inspect appropriate books, papers, records, and documents relevant to determining whether such manufacturer has acted or is acting in compliance with standards prescribed pursuant to section 359(a)."

* * * * * *

(f) "The Secretary may by regulation (1) require dealers and distributors of electronic products, to which there are applicable standards prescribed under this subpart and the retail prices of which is not less than $50, to furnish manufacturers of such

products such information as may be necessary to identify and locate, for purposes of section 359, the first purchasers of such products for purposes other than resale, and (2) require manufacturers to preserve such information. Any regulation establishing a requirement pursuant to clause (1) of the preceding sentence shall (A) authorize such dealers and distributors to elect, in lieu of immediately furnishing such information to the manufacturer to hold and preserve such information until advised by the manufacturer or Secretary that such information is needed by the manufacturer for purposes of section 359, and (B) provide that the dealer or distributor shall, upon making such election, give prompt notice of such election (together with information identifying the notifier and the product) to the manufacturer and shall, when advised by the manufacturer or Secretary, of the need therefore for the purposes of Section 359, immediately furnish the manufacturer with the required information. If a dealer or distributor discontinues the dealing in or distribution of electronic products, he shall turn the information over to the manufacturer. Any manufacturer receiving information pursuant to this subsection concerning first purchasers of products for purposes other than resale shall treat it as confidential and may use it only if necessary for the purpose of notifying persons pursuant to section 359(a)."

* * * * * *

Sec. 360 B.(a) It shall be unlawful–
    (1) * * *
    (2) * * *
    (3) "for any person to fail or to refuse to establish or maintain records required by this subpart or to permit access by the Secretary or any of his duly authorized representatives to, or the copying of, such records, or to permit entry or inspection, as required or pursuant to section 360A."

* * * * * *

Part G - Quarantine and Inspection

Sec. 361(a) "The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

US-FDA-0035521

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 1431 Harbor Bay Parkway<br>Alameda, CA  94502-7070<br>(510) 337-6700  Fax:(510) 337-6702<br>Industry Information: www.fda.gov/oc/industry | 08/25/2015 - 09/16/2015*<br>FEI NUMBER<br>3010479366 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED

**TO:**  Elizabeth A. Holmes, Chief Executive Officer and Founder

| FIRM NAME | STREET ADDRESS |
|---|---|
| Theranos, Inc. | 1701 Page Mill Road |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Palo Alto, CA  94304-1111 | Manufacturer |

This document lists observations made by the FDA representative(s) during the inspection of your facility. They are inspectional observations, and do not represent a final Agency determination regarding your compliance. If you have an objection regarding an observation, or have implemented, or plan to implement, corrective action in response to an observation, you may discuss the objection or action with the FDA representative(s) during the inspection or submit this information to FDA at the address above. If you have any questions, please contact FDA at the phone number and address above.

*The observations noted in this Form FDA-483 are not an exhaustive listing of objectionable conditions. Under the law, your firm is responsible for conducting internal self-audits to identify and correct any and all violations of the quality system requirements.*

**DURING AN INSPECTION OF YOUR FIRM WE OBSERVED:**

## OBSERVATION 1

Design validation did not ensure the device conforms to defined user needs and intended uses.

Specifically,

You provided *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, raw data, and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* as evidence of design validation which was conducted in April 2014. The validation:

A.  Fails to address all assays that can be performed using the TSCD device. Your CEO provided a list of assays that can be performed using the TSCD device which include uric acid, total iron binding capacity and magnesium. These assays were not specifically addressed, with acceptance criteria, in your design validation. You have performed approximately 1725 uric acid tests, 1699 total iron binding capacity tests, and 1650 magnesium tests, using the TSCD device, and reported the results to patients.

B.  Of the assays you addressed in design validation, bicarbonate, calcium, glucose and potassium failed acceptance criteria and required further investigation; however there is no reference to any documentation to address these failures. You provided additional data on these assay failures, however the test plan and explanation of results for the failed assays were written on 8/29/15 (during this inspection).

| | EMPLOYEE(S) SIGNATURE | DATE ISSUED |
|---|---|---|
| **SEE REVERSE OF THIS PAGE** | Seema S. Singh, Investigator<br>Ian A. Pilcher, Investigator | 09/16/2015 |

| FORM FDA 483 (09/08) | PREVIOUS EDITION OBSOLETE | INSPECTIONAL OBSERVATIONS | PAGE 1 OF 4 PAGES |
|---|---|---|---|

US-FDA-0035522

The observations of objectionable conditions and practices listed on the front of this form are reported:

1.  Pursuant to Section 704(b) of the Federal Food, Drug and Cosmetic Act, or

2.  To assist firms inspected in complying with the Acts and regulations enforced by the Food and Drug Administration.

Section 704(b) of the Federal Food, Drug, and Cosmetic Act (21 USC 374(b)) provides:

"Upon completion of any such inspection of a factory, warehouse, consulting laboratory, or other establishment, and prior to leaving the premises, the officer or employee making the inspection shall give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by him which, in his judgement, indicate that any food, drug, device, or cosmetic in such establishment (1) consists in whole or in part of any filthy, putrid, or decomposed substance, or (2) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. A copy of such report shall be sent promptly to the Secretary."

FORM FDA 483 (9/08)

US-FDA-0035523

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 1431 Harbor Bay Parkway<br>Alameda, CA  94502-7070<br>(510) 337-6700  Fax:(510) 337-6702<br>Industry Information: www.fda.gov/oc/industry | 08/25/2015 — 09/16/2015*<br>FEI NUMBER<br>3010479366 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED

**TO:**  Elizabeth A. Holmes, Chief Executive Officer and Founder

| FIRM NAME | STREET ADDRESS |
|---|---|
| Theranos, Inc. | 1701 Page Mill Road |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Palo Alto, CA  94304-1111 | Manufacturer |

## OBSERVATION 2

The design was not validated under actual or simulated use conditions.

Specifically,

Your design validation plan, *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, raw data, and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, provided as evidence of design validation, does not demonstrate that TSCD device samples were taken from units, lots or batches that were produced using the same specifications, production and quality system methods, procedures, and equipment that will be used for routine production. For example, you do not list or refer to the TSCD lot numbers used, specific instruments or analyzers used, documents with revisions numbers used, or the specific assay protocols used.

## OBSERVATION 3

Design input requirements were not adequately documented.

Specifically,

A.   In your *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A*, you list "The sample collected should be compatible with all Theranos assays". However, in *TSCD Specifications, SPC-00010 Revision A*, you do not list all the specific assays the TSCDs are intended to be used with or the performance specifications for each assay. You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.

B.   You apply either a Lithium Heparin or EDTA anticoagulant to your TSCD device. You do not address the amount of anticoagulant coating to apply in your design requirements or specifications document such that the device will perform to meet its intended use, specifically for the Lithium-Heparin coating. In your hazard matrix, you classified too much Lithium-Heparin with the highest severity: "catastrophic", "serious safety related failure, potential adverse effect on the end user". You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.

## OBSERVATION 4

Results of the design risk analysis were not adequately documented.

Specifically,

A.   You provide multiple assay results to patients using the TSCD devices coated with either Lithium-Heparin or EDTA

| | EMPLOYEE(S) SIGNATURE | DATE ISSUED |
|---|---|---|
| **SEE REVERSE OF THIS PAGE** | Seema S. Singh, Investigator<br>Ian A. Pilcher, Investigator | 09/16/2015 |

| FORM FDA 483 (09/08) | PREVIOUS EDITION OBSOLETE | INSPECTIONAL OBSERVATIONS | PAGE 2 OF 4 PAGES |
|---|---|---|---|

US-FDA-0035524

The observations of objectionable conditions and practices listed on the front of this form are reported:

1.  Pursuant to Section 704(b) of the Federal Food, Drug and Cosmetic Act, or

2.  To assist firms inspected in complying with the Acts and regulations enforced by the Food and Drug Administration.

Section 704(b) of the Federal Food, Drug, and Cosmetic Act (21 USC 374(b)) provides:

   "Upon completion of any such inspection of a factory, warehouse, consulting laboratory, or other establishment, and prior to leaving the premises, the officer or employee making the inspection shall give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by him which, in his judgement, indicate that any food, drug, device, or cosmetic in such establishment (1) consists in whole or in part of any filthy, putrid, or decomposed substance, or (2) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. A copy of such report shall be sent promptly to the Secretary."

FORM FDA 483 (9/08)

US-FDA-0035525

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 1431 Harbor Bay Parkway <br> Alameda, CA  94502-7070 <br> (510) 337-6700   Fax:(510) 337-6702 <br> Industry Information: www.fda.gov/oc/industry | 08/25/2015 - 09/16/2015* |
| | **FEI NUMBER** <br> 3010479366 |

| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED |
|---|
| **TO:**  Elizabeth A. Holmes, Chief Executive Officer and Founder |

| FIRM NAME | STREET ADDRESS |
|---|---|
| Theranos, Inc. | 1701 Page Mill Road |
| **CITY, STATE, ZIP CODE, COUNTRY** | **TYPE ESTABLISHMENT INSPECTED** |
| Palo Alto, CA  94304-1111 | Manufacturer |

anticoagulants using serum, plasma or whole blood. However, you do not document the possible hazards associated with the TSCD design for serum and plasma samples with different anticoagulants for specific analytes in your design Failure Modes and Effects Analysis, DOC-0069 Revision A.

B.   *DOC-0069 Revision A,*  provided as the design Failure Modes and Effects Analysis conducted at the time of design, describes:

  i.    Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Incorrect material selection. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3 which according to SOP-00149, Revision: B results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.

  ii.   Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Too much Li-Hep in circuits. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3, which according to SOP-00149, Revision: B results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.

## OBSERVATION 5

Documents were not reviewed and not approved by designated individual(s) prior to issuance .

Specifically,

A.   dFMEA, DOC-0069 Revision A, provided as the hazard analysis for the TSCD devices, was utilized from February-April 2014. The document does not have an effective date. The document was not released in your document control system until 8/26/15 (during the inspection). The document was not reviewed and approved prior to 8/26/15.

B.   There is no document number, revision or effective date for your design validation: *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep,* and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep.* These documents were provided as evidence of design validation conducted in 2014; however, they were drafted during this inspection and were not reviewed and approved until 9/10/15.

C.   There is no document number, revision or effective date for *Appendix , Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep.* This document was provided as a follow-up to the failures in your design validation conducted in 2014; however, this document was drafted during the inspection. It has not been reviewed or approved until 9/10/15.

| | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| **SEE REVERSE OF THIS PAGE** | Seema S. Singh, Investigator <br> Ian A. Pilcher, Investigator | *SSS* | 09/16/2015 |

| FORM FDA 483 (09/08) | PREVIOUS EDITION OBSOLETE | **INSPECTIONAL OBSERVATIONS** | PAGE 3 OF 4 PAGES |
|---|---|---|---|

US-FDA-0035526

The observations of objectionable conditions and practices listed on the front of this form are reported:

1.  Pursuant to Section 704(b) of the Federal Food, Drug and Cosmetic Act, or

2.  To assist firms inspected in complying with the Acts and regulations enforced by the Food and Drug Administration.

---

Section 704(b) of the Federal Food, Drug, and Cosmetic Act (21 USC 374(b)) provides:

"Upon completion of any such inspection of a factory, warehouse, consulting laboratory, or other establishment, and prior to leaving the premises, the officer or employee making the inspection shall give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by him which, in his judgement, indicate that any food, drug, device, or cosmetic in such establishment (1) consists in whole or in part of any filthy, putrid, or decomposed substance, or (2) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. A copy of such report shall be sent promptly to the Secretary."

FORM FDA 483 (9/08)

US-FDA-0035527

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 1431 Harbor Bay Parkway<br>Alameda, CA  94502-7070<br>(510) 337-6700  Fax:(510) 337-6702<br>Industry Information: www.fda.gov/cc/industry | 08/25/2015 - 09/16/2015* |
| | FEI NUMBER |
| | 3010479366 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED

TO: Elizabeth A. Holmes, Chief Executive Officer and Founder

| FIRM NAME | STREET ADDRESS |
|---|---|
| Theranos, Inc. | 1701 Page Mill Road |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Palo Alto, CA  94304-1111 | Manufacturer |

### Observation Annotations

| | | | |
|---|---|---|---|
| Observation 1: | Reported corrected, not verified. | Observation 2: | Reported corrected, not verified. |
| Observation 3: | Reported corrected, not verified. | Observation 4: | Reported corrected, not verified. |
| Observation 5: | Reported corrected, not verified. | | |

**\* DATES OF INSPECTION:**
08/25/2015(Tue), 08/26/2015(Wed), 08/27/2015(Thu), 08/28/2015(Fri), 09/01/2015(Tue), 09/02/2015(Wed), 09/03/2015(Thu), 09/04/2015(Fri), 09/09/2015(Wed), 09/10/2015(Thu), 09/11/2015(Fri), 09/16/2015(Wed)

| | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| **SEE REVERSE OF THIS PAGE** | Seema S. Singh, Investigator<br>Ian A. Pilcher, Investigator | | 09/16/2015 |

| FORM FDA 483 (09/08) | PREVIOUS EDITION OBSOLETE | INSPECTIONAL OBSERVATIONS | PAGE 4 OF 4 PAGES |
|---|---|---|---|

US-FDA-0035528



DEPARTMENT OF HEALTH & HUMAN SERVICES     Public Health Service

Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993

**DATE:**      **August 21, 2015**

**FROM:**      Division of Chemistry and Toxicology Devices, WO-5615
Office of In Vitro Diagnostics and Radiological Health, CDRH

**SUBJECT:**   **For Cause Inspection Request**
OC Control Number: **105896**
FACTS ID Number: **11558121**
ORA Concurrence Number: **MP2015082101**

**TO:**        **District Director:** SAN-DO, HFR-PA100
**District Director:** LOS-DO, HFR-PA 200

**FIRM:**      Theranos, Inc.
**Address #1** (from Registration and Listing Database)
Manufacturer/Specification Developer
7333 Gateway Blvd.
Newark, CA 94560
FEI/Registration Number: 3006231732**
Status: Active
Date of Registration Status: 2015
Owner/Operator Number: 10041002

**Address #2** (from Registration and Listing Database)
1701 Page Mill Rd.
Palo Alto, CA 94304
FEI/Registration Number: 3010479366**
Status: Active
Date of Registration Status: 2015
Owner/Operator Number: 10041002

**\*\*NOTE:** Review of Theranos FEI in FACTS and OSAR shows FEI 3010479366
as the original firm FEI and FEI 3006231732 as the surviving FEI. One address is
shown for both FEIs: 1601 South California Av, Palo Alto, CA 94304, United
States. Investigators assigned to address #1 and #2 above should determine
what site is current for the firm.

**Address #3** (From internet search)
1365 North Scottsdale Road
Scottsdale, AZ 85257
Status: N/A

Attachment 5 Page 1 of 11
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

Date of Registration Status: Not registered
Owner/Operator Number: Not registered

Official Correspondent:
Brad Arlington
1601 S. California Ave.
Palo Alto, CA 94304
Phone: 650-856-7304

**DEVICE:**   Capillary Tubes/ Nanotainers and Analyzer

Product Codes:
75JKA: Tubes, Vials, Systems, Serum Separators, Blood Collection
Class II, 21 CFR 862.1675; (requires pre-market clearance)

81GIO:  Tube, Collection, Capillary Blood
Class I, 21 CFR 864.6150; (requires pre-market clearance)

75JJE: analyzer, chemistry (photometric, discrete), for clinical use
Class I, 21 CFR 862.21607; (exempt from pre-market clearance; however, takes
on the classification of the highest risk analyte used with the analyzer thus
generally requiring a 510(k)/PMA

Attachment 5 , Page 2 of 11
Theranos, Inc.
Palo Alto, CA
FEI: 3002479366, 08/25/15-09/16/15, SSS

**Top Priority - this assignment has the concurrence of ORA.**

**[Completion within 30 days - Assignment takes precedence over work for all Centers]**

**PRE-INSPECTION TELECONFERENCE:**

This assignment is of significant nature and/or sufficient complexity that CDRH requests a pre-
inspectional teleconference take place between CDRH, ORA, and the Investigator prior to
initiating this inspection.  OMPTO (Office of Medical Products and Tobacco Operations) will
coordinate the teleconference.  CDRH will brief the investigator/s, clarify assignment
expectations, answer any questions about the assignment, and make arrangements with the
investigator for any desired communications during the inspection, as applicable. DMPTI will
notify FISB (Field Inspections Support Branch) and ORA/OMPTO/MPTPOB (Medical Products
and Tobacco Program Operations Branch) of the name of the investigator and FISB will notify
the assignment Originator.

## I.  OBJECTIVE(S) OF INSPECTION

To conduct a "For Cause" Directed Inspection of this firm in accordance with CPGM 7382.845
– Inspection of Medical Device Manufacturers in order to evaluate their compliance with:

Quality Systems (21 CFR Part 820)

2

Medical Device Reporting (21 CFR Part 803)
Corrections and Removals (21 CFR Part 806)
Medical Device Tracking Requirements (21 CFR Part 821)
Registration and Listing (21 CFR Part 807)

## II. BACKGROUND

### Section 1: Premarket pathway, Background, and Indication for use.

Theranos Inc. is registered and listed as a manufacturer for specimen containers (product code KDT), called "Nanotainers", and capillary blood collection tubes (product code GIO) called "Capillary Tubes" and as a specification developer for clinical chemistry analyzers (product code JJE). The Nanotainers and Capillary Tubes are designed for use with analytical systems including the firm's "Theranos System". Theranos has designed and developed its Capillary Tubes and Nanotainers to collect, preserve, and transport small sample volumes used for testing in its Theranos System. The Theranos System is composed of Theranos' Sample Processing Units (TSPU) and Theranos' Laboratory Automation System (TLAS). The TSPU is a modular unit that performs what the firm calls pre-analytic functions of the unit (i.e. sample preparation, reagent addition, signal generation, data pre-processing). These are the steps that are typically performed during sample preparation and analysis on clinical analyzers. The firm currently has a 510(k) clearance for its Theranos Herpes Simplex Virus-1 IgG Assay (k143236). The firm does not have a 510(k) for is capillary tubes/nanotainers or analyzer when used with various analytes.

Tests that are offered by Theranos believed to be performed using its analyzer include:

1. Glucose: A glucose test system is a device intended to measure glucose quantitatively in blood and other body fluids. Glucose measurements are used in the diagnosis and treatment of carbohydrate metabolism disorders including diabetes mellitus, neonatal hypoglycemia, and idiopathic hypoglycemia, and of pancreatic islet cell carcinoma.

2. Potassium: A potassium test system is a device intended to measure potassium in serum, plasma, and urine. Measurements obtained by this device are used to monitor electrolyte balance in the diagnosis and treatment of diseases conditions characterized by low or high blood potassium levels.

3. Sodium: A sodium test system is a device intended to measure sodium in serum, plasma, and urine. Measurements obtained by this device are used in the diagnosis and treatment of aldosteronism (excessive secretion of the hormone aldosterone), diabetes insipidus (chronic excretion of large amounts of dilute urine, accompanied by extreme thirst), adrenal hypertension, Addison's disease (caused by destruction of the adrenal glands), dehydration, inappropriate antidiuretic hormone secretion, or other diseases involving electrolyte imbalance.

4. Calcium: A calcium test system is a device intended to measure the total calcium level in serum. Calcium measurements are used in the diagnosis and treatment of parathyroid disease, a variety of bone diseases, chronic renal disease and tetany (intermittent muscular contractions or spasms).

Attachment 5, Page 3 of 11
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

3

US-FDA-0035531

5. Chloride: A chloride test system is a device intended to measure the level of chloride in plasma, serum, sweat, and urine. Chloride measurements are used in the diagnosis and treatment of electrolyte and metabolic disorders such as cystic fibrosis and diabetic acidosis.

6. Troponin: A troponin test system is intended to measure troponin levels in human serum and plasma to aid in the diagnosis of myocardial infarction.

Theranos believes that because it is currently performing all sample testing in its CLIA lab its testing of samples with various assays/analytes using its manufactured analyzer are Laboratory Developed Tests (LDTs). FDA regulates instruments manufactured by a firm for In Vitro Diagnostic (IVD) testing as medical devices and not as LDTs, thus at this time FDA believes the devices manufactured by the firm and test in its lab are not LDTs; but medical devices requiring premarket notification and  subject to quality system requirements.

Note: Theranos has communicated to FDA that it intends to distribute its TSPUs for use in facilities around the country to perform testing. At this point, it is unclear to FDA where the sample processing and testing will take place.

CDRH has informed Theranos that it's Nanotainers and Capillary Tubes are Class II devices and require 510(k) clearance. The firm has submitted a 510(k) for these devices and it is currently under review by CDRH.

Additionally, discussion with Theranos to date has led to the following concern:

Theranos is reporting test results to customers using a  device which appears to need pre-market clearance/pre-market approval and with possible methods which are known to lead to highly variable data: In pre-submission Q140057,Theranos describes Nanotainers may contain the anticoagulants Lithium-Heparin (Li-Hep) or Ethylenediaminetetraacetic acid (EDTA) and serum separating gel. Serum samples and plasma samples with different anticoagulants may perform differently with assays for specific analytes.  All 510(k) cleared assays include the specific types of samples that are to be used with in its labeling and indications for use. Theranos has indicated these containers are used to collect samples that are shipped to aTheranos CLIA lab, where the samples are tested using 510(k) cleared analyzers and reagents that Theranos is modifying to use with the smaller capillary samples collected and shipped in the Nanotainers. The methods Theranos is using are not 510(k) cleared for capillary blood samples or the small sample volumes that Theranos is using. CDRH is concerned that these methods may not be adequately validated with the sample types and volumes Theranos is using. In addition, CDRH is aware that use of this type of specimen collection may lead to highly inaccurate test results with some analytes

### *Section 2:* Inspectional History

The inspectional history and current compliance status of the manufacturing facility involved in this assignment has been checked in FACTS.

FACTS has no record of a previous inspection for this firm.

Attachment 5, Page 4 of 11
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

4

## Section 3: Postmarket Signals

FDA believes that Theranos may be performing IVD testing on patients with devices that have not received FDA clearance or approval. The firm's website appears to offers a test menu of available products that appear to not have received FDA clearance or approval (see Centers_Theranos.pdf, Test Menu_Theranos.pdf, Theranos Lab Testing at Walgreens_Walgreens.pdf). Representative data obtained from the firm raises potential safety and effectiveness issues (see below). Additionally, FDA has received information from the IVD industry expressing its concern about Theranos devices currently being distributed and is concerned that inaccurate IVD test results may result in incorrect diagnosis and treatment of medical conditions. Inaccurate results may also cause physicians to initiate unnecessary treatment or to delay treatment; both of these situations present a potential risk to public health.

## Section 4: Reason for Inspection

The Center is concerned that the firm is distributing devices without appropriate pre-market clearance or approval. In addition, CDRH is concerned that the firm may not have adequate design control procedures, complaint handling and investigation procedures, and MDR reporting procedures given that the firm believes it is an LDT provider, not a manufacturer subject to FDA regulations. The pre submissions (Q140057, Q151162) and 510(k) submission (k143099) FDA has received from the firm raise serious concerns about the safety and effectiveness of these devices because preliminary data reviewed by FDA demonstrates that results of samples collected and stored in nanotainers assays are much less accurate than current IVD methods available on the market for some analytes.


## III. ASSIGNMENT

CDRH request the inspection team include subject matter experts (SMEs) from CDRH/OIR/DTCD. Assignment of the specific SMEs for each location will be made prior to the initiation of each inspection.
Please assess the following:

1. Determine what devices the firm has distributed. Collect shipping records to document the names and types of devices that the firm has distributed. Specifically, determine if the firm has shipped any sample collection, processing or transport devices, clinical instruments, reagents, calibrators, or controls either to outside firms or to other Theranos locations. Collect a list of all customers a in which products have been shipped by Theranos and the products received by those customers if possible.

2. Obtain design requirements for the Capillary Tubes and Nanotainers, TSUP, and TLAS, as well as representative assays, to determine design inputs are appropriate, unambiguous, and address the intended use of the devices.

Attachment ___ Page ___ of ___
Theranos, Inc.

5

3. Determine whether the firm has written plans to ensure that there is an adequate evaluation of conformance to design inputs, including acceptance criteria.

4. Determine whether the firm has written procedures for validating device design.

5. Collect and review verification and validation records for the firms nanotainers and instruments, potassium assay, sodium assay, chloride assay, calcium assay, troponin assay, glucose assay, and any other assays that appear to have inaccurate or imprecise results based on other information collected during this inspection.

6. Determine whether the firm has written recall procedures for submitting written reports to FDA of any correction or removal actions required to be reported to FDA per 21 CFR 806.

7. Determine whether the firm has written MDR procedures in accordance with 21 CFR 803.17 and whether the firm has established and maintains MDR event files in accordance with 21 CFR 803.18.  Please obtain a copy of the firm's MDR procedures.  Failure to have written MDR records should be listed on the FDA 483.

8. Determine whether the firm has adequate written procedures for receiving, reviewing, and evaluating complaints.  Verify the process for complaints received and distributed from the corporate level or complaints that were sent directly to Walgreens. Please obtain a copy of the firm's complaint handling procedures.  Determine whether the procedure(s) addresses how to handle complaints for which it is unknown if the device problem is due to a Capillary Tube or a Nanotainer issue or due to an issue with the reagents or analyzers Theranos is using. Determine what criteria the firm uses to identify a Capillary Tube or Nanotainer issue versus a reagent or analyzer issue.

9. If the review of the firm's complaint files identifies complaints that were not reported under MDR but appear to be reportable, please collect a copy of the complaint record(s).  If the complaints include unreported malfunctions that would likely cause or contribute to a death or serious injury, include an explanation of the malfunction and its effect on the patient in the EIR.  Obtain the firm's rationale for considering the event to be not reportable.  If a large number of complaints are identified, obtain a copy of the complaint record for a representative sample of the unreported complaints for MDR reportability review.

10. Determine whether the firm has adequate written procedures for identification, documentation, evaluation, segregation, and disposition of nonconforming product. Review the firm's nonconforming product files to determine whether it includes assessment of the Capillary Tubes and Nanotainers with the reagents and instruments being used or the Capillary Tubes and Nanotainers only.  Determine what criteria and decision making process are followed to make decisions on nonconforming product investigations for issues involving the Capillary Tubes and Nanotainers.

6

US-FDA-0035534

11. Determine if the firm has contract manufacturing or distribution agreements with any other firms. Collect the names of these firms and any contracts that describe the regulatory responsibilities of the firms involved.

12. Collect examples of product labeling and promotional material.

13. Collect shipping documentation for instruments, sample tubes, and the assays offered by the firm and listed in Section 2 above.

14. Collect examples of lot release criteria for instruments, sample tubes, and the assays offered by the firm and listed in Section 2 above.

15. The degree and depth of the inspection should not be limited to the points noted above.


## IV.  REGULATORY STRATEGY

If a violative situation is found at the firm, the district should consider issuing a Warning Letter or recommending appropriate regulatory action in accordance with Compliance Program 7382.845, Part V.  Please send all EIRs with exhibits, the form FDA 483, firm response(s), to the indicated CDRH contact via the Compliance Management System (CMS).

## V.  REPORTING REQUIREMENTS

This assignment has the concurrence of ORA.  ORA concurrence number is **MP2015082101.**

**Product Codes**:

81GIO: Tube, Collection, Capillary Blood
75JKA: Tubes, Vials, Systems, Serum Separators, Blood Collection
75JJE: analyzer, chemistry (photometric, discrete), for clinical use
Class I, 21 CFR 862.21607



**PAC(s) and Accomplishment Hours**:

82845G: Medical Device "For Cause" inspection. **Accomplishment hours**: 85.9 hours.

81010: Medical Device Problem Reporting – MDR follow-up.  **Accomplishment hours**: 16 hrs.

81845R: Assessment of Firm's Correction and Removals Practices. **Accomplishment hours**: no planned resources for this PAC in FY15. CSOs should report accomplished hours in PAC 82845G and/or PAC 81010. They may report to the other PACs that are provided if the Center and OMPTO concur (as long as they are aware there are no resources planned for FY15 in those PACs).

7

US-FDA-0035535

82012: Registration and Listing. **Accomplishment hours**: no planned resources for this PAC in FY15. CSOs should report accomplished hours in PAC 82845G and/or PAC 81010. They may report to the other PACs that are provided if the Center and OMPTO concur (as long as they are aware there are no resources planned for FY15 in those PACs).

**Recommended Inspection Completion Date**:

30 days from issuance of the assignment

## VI.  CONTACTS

**Scientific/technical questions concerning this assignment should be directed to**:

**Primary**: Ian Pilcher, OIR/DCTD, 301-796-6151 (p), 301-796-8514 (f), Ian.pilcher@fda.hhs.gov

**Alternate:** Ileana Elder, OIR/DCTD, 301-796-6143 (p), 301-796-8514 (f), ileana.elder@fda.hhs.gov

**MDR reportability questions should be directed to:**

MDR Policy Branch, OSB/DPS
301-796-6670, MDRPolicy@fda.hhs.gov

**ORA/ DMPTO Inspectional Contact:**
Althea Williams, 301-796-8389, Althea.Williams@fda.hhs.gov
Dolores Harper, 301-796-5439, Dolores.Harper@fda.hhs.gov

Upon completion of the assignment, copies of all reports, exhibits, documentary samples, follow-up assignments and the regulatory/administrative recommendations, if appropriate, should be forwarded to:

> Thomas A. Slater, Jr.
> Branch Chief/ Field Inspections Support Branch
> CDRH/OC/DAPO/FISB
> WO66, room 2622
> 10903 New Hampshire, Ave.
> Silver Spring, MD  20993-0002

## ATTACHMENTS

Websites : Theranos.pdf, Test Menu_Theranos.pdf, Theranos Lab Testing at Walgreens_Walgreens.pdf



8

Q151162.SponsorMemo.FINAL.pdf
Q140057.Minutes-FINAL.pdf

Attachment $\underline{S}$ Page $\underline{q}$ of $\underline{11}$
Theranos, Inc.
Palo Alto, CA
FEI-3010679565 08/25/15-09/16/15_SSS

9

Drafted: Ian Pilcher 9/9/2014
Reviewed: Ileana Elder 09/12/2014, 08/11/2015
Revised: Ian Pilcher 08/15/2015
Reviewed: RKeenan8/17/15
Reviewed:
Final:

Cc:

| | | |
|---|---|---|
| Elem4214 | (HFC-1) ORA/OO Special Assistant | Vinetta Howard-King |
| WO66-2622 | OC/DAPO/FISB | Thomas Slater, Branch Chief |
| WO66-2624 | OC/DAPO/FISB | Fleadia Farrah (foreign) |
| WO66-2528 | OC/DAPO/FISB | Linh O'Connell (domestic) |
| HFR-PA250 | DIB, LOS District | Monica Maxwell |
| HFR-PA150 | DIB, SAN District | Darlene Almogela |
| | | |
| Elem 2130 | (HFC-130) ORO/DMPTI | Dolores Harper (domestic) |
| HFR-SW100 | Device Field Committee Chair | Reynaldo Rodriguez |
| HFR-SW100 | Device Field Committee Exec Sec | Jamie Hughes |
| | | |
| Elem2030 | (HFC-180) ORA/OO/OMPTO | Yvette Arline |
| ELem2018 | OGROP/ORA/OO/OMPTO/DM | Joshua Jones |
| HFR-SW100 | Device Field Committee Chair | Reynaldo Rodriguez |
| HFR-CE250 | Device Field Committee Exec Sec | Lori Lawless |
| | | |
| WO66-4684 | OIR/PSPQ | Deputy Director James Woods |
| WO66-4626 | DCTD | Division Director, Courtney H. Lias |
| WO66-5615 | 4666 | Ian Pilcher |

CTS Record:  GEN1500618

Attachment S, Page 10 of 11
Theranos, Inc.
Palo Alto, CA
FFI-01102745GG IDI/75/FLSR/16/15 SSS

10

Attachment $\underline{S}$ Page $\underline{11}$ of $\underline{11}$
Theranos, Inc.
Palo Alto, CA
FEI: 3010247456 08/26/15-08/30/15

11

**Singh, Seema**

| | |
|---|---|
| **From:** | Chan, Yung |
| **Sent:** | Monday, September 14, 2015 6:38 PM |
| **To:** | Singh, Seema |
| **Cc:** | Elder, Ileana; Beck, Stayce E; Pilcher, Ian; Anderson, Eric W; Hole, Mary; Tjoe, Steven; Walburger, Matthew |
| **Subject:** | Re: Draft 483, Theranos, Palo Alto |

Yes it is a class 2 device and both configurations should be registered and listed as such since these are 2 different products.

Thanks
Yung

Sent from my BlackBerry 10 smartphone.

**From:** Singh, Seema
**Sent:** Monday, September 14, 2015 9:30 PM
**To:** Chan, Yung
**Cc:** Elder, Ileana; Beck, Stayce E; Pilcher, Ian; Anderson, Eric W; Hole, Mary; Tjoe, Steven; Walburger, Matthew
**Subject:** RE: Draft 483, Theranos, Palo Alto

Thanks Yung.

Please also confirm that the TSCD is a class 2 device that requires *registration and listing*? And is it required specifically for the Li-Hep configuration or both the Li-Hep and EDTA configurations?

Thank you,

Seema S. Singh, Investigator
(916) 930-3674 ext. 1112

**From:** Chan, Yung
**Sent:** Monday, September 14, 2015 2:31 PM
**To:** Singh, Seema
**Cc:** Elder, Ileana; Beck, Stayce E; Pilcher, Ian; Anderson, Eric W; Hole, Mary; Tjoe, Steven; Walburger, Matthew
**Subject:** RE: Draft 483, Theranos, Palo Alto

Hi Seema,

We agree with you that the Nanotainer or Capillary Nanotainer Tube (also known as **Theranos Sample Collection Device**) is a class II medical device and needs a 510k before distribution.

Thanks!
Yung

1

US-FDA-0035540

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

## TABLE OF CONTENTS

Summary (SSS)...................................................................................................... 1

Administrative Data (SSS)....................................................................................... 2

History (SSS) .......................................................................................................... 3

Background (SSS/IAP)........................................................................................... 4

Jurisdiction/Labeling (SSS) ................................................................................... 4

Interstate Commerce (SSS).................................................................................... 10

Individual Responsibility and Persons Interviewed (SSS) ...................................... 10

Firm's Training Program (SSS).............................................................................. 12

Manufacturing/Design Operations (SSS) .............................................................. 12

Manufacturing Codes (SSS) .................................................................................. 13

Complaints (SSS)................................................................................................... 13

Recall Procedures (SSS) ........................................................................................ 13

Objectionable Conditions and Management's Response ........................................ 13

Refusals (SSS) ....................................................................................................... 27

General Discussion with Management (SSS/IAP) .................................................. 28

Safety and Effectiveness Concerns (IAP).............................................................. 30

Samples Collected (SSS) ....................................................................................... 31

Voluntary Corrections (SSS) ................................................................................. 31

Exhibits Collected.................................................................................................. 31

Attachments ........................................................................................................... 33

## SUMMARY (SSS)

This Center initiated, comprehensive inspection of Theranos, Inc., a specimen container manufacturer was conducted in accordance with Compliance Program 7382.845, Inspection of Medical Device Manufacturers. It was conducted with Field Accomplishments and Compliance Tracking System (FACTS) assignment number 11558121 and with ORA Concurrence number MP2015082101 (**Attachment 5**).

This is the initial FDA inspection of Theranos, Inc.

US-FDA-0035541

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

During the current inspection, the investigators covered Design Controls and Document Controls focusing on the Theranos Sample Collection Device (TSCD) also known as Capillary Tubes and Nanotainers (CTN) or just Nanotainers. The investigators reviewed associated design documents.

During the inspection, the investigators found issues with design validation, design inputs, risk analysis and document controls all of which were communicated during the inspection and via Form FDA 483, Inspectional Observations. In addition, a verbal observation of was discussed with firm management for failure to register a class 2 device. Management was warned that failure to correct observations may lead to regulatory action without further notice.

Throughout the inspection and during the closing meeting, Elizabeth Holmes, CEO and founder explained that she does not believe that the TSCD devices should be subject to FDA's Quality System Regulations (QSR) because they were developed under the Laboratory Developed Test (LDT) framework with which FDA has exercised enforcement discretion (see the *General Discussion with Management* section for the firm's responses, statements and objections). However, she elected to annotate the written observations as reported corrected, not verified. The corrections were provided to Investigator Singh on 9/11/15; Investigator Singh was unable to verify the corrections prior to closing the inspection but collected them and attached them to this Establishment Inspection Report (EIR).

The investigators encountered objections to the inspection which are described in the *General Discussion with Management* section of this EIR. Affidavits were issued to Ms. Holmes and Heather King, General Councel; both declined to sign the Affidavits due to company policy.

No official samples were collected. Recalls are handled at the firm's Newark, CA site, however Ms. Holmes stated that Theranos has not conducted any recalls.

## ADMINISTRATIVE DATA (SSS)

| | |
|---|---|
| Inspected firm: | Theranos, Inc. |
| Location: | 1701 Page Mill Road<br>Palo Alto, CA  94304-1111 |
| Phone: | 650-838-9292 |
| FAX: | 650-838-9165 |
| Mailing address: | 1701 Page Mill Road<br>Palo Alto, CA  94304-1111 |
| Website: | www.theranos.com |
| Dates of inspection: | 8/25/2015, 8/26/2015, 8/27/2015, 8/28/2015, 9/1/2015, 9/2/2015,<br>9/3/2015, 9/4/2015, 9/9/2015, 9/10/2015, 9/11/2015, 9/16/2015 |
| Days in the facility: | 12 |

US-FDA-0035542

| Establishment Inspection Report | FEI: | 3010479366 |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Participants:   Seema S. Singh, Investigator (present all days)
Ian A. Pilcher, Investigator (present on 8/25/2015, 8/26/2015, 8/27/2015, 8/28/2015)

On 8/25/15, Investigator's Seema Singh and Ian Pilcher presented their credentials and issued Form FDA 482 to Elizabeth Holmes, Chief Executive Officer and Founder of Theranos, Inc. (**Attachment 1**). She stated that she was the most responsible individual at the firm.

On 9/16/15, Investigator's Singh and Pilcher issued FDA Form 483 to Ms. Holmes (**Attachment 2**).

Also on 9/16/15, Investigator Singh issued two Affidavits, one to Ms. Holmes and one to Heather King, General Councel (**Attachments 3 and 4, respectively**). The Affidavits described documents that were provided during the inspection such as marketing materials, website material, training materials and current tests performed with samples collected using the TSCD device.

This EIR was written by both Investigators Singh and Pilcher. The initials next to each section heading reflect who contributed in writing that section.

**HISTORY (SSS)**

Theranos, Inc. (hereafter known as Theranos or the firm) was incorporated in Delaware on April 13, 2004. This location in Palo Alto, CA is the headquarters and is a research, development and design facility. Theranos has a high-complexity lab located at 7333 Gateway Blvd, Newark, CA and a moderate complexity lab located at 1365 North Scottsdale Road. Ms. Holmes provided the business license and lab certificate for the Newark facility and the business registration for the Arizona facility (**Exhibit 1**). She also provided the CLIA lab certificate for the Arizona facility (**Exhibit 2**). Ms. Holmes also provided a brief overview of Theranos and information on the firm's "total gross revenue attributable to the current LDTs wherein the TSCD was used as part of the LDT" (**Exhibits 3 and 4**).

According to Ms. Holmes, the firm moved from the following locations which no longer exist:
- 1601 S. California Ave, Palo Alto, CA  94304. Theranos moved from this location to the current location in November 2014.
- 3200 Hillview Ave., Palo Alto, CA 94304. This location existed before the S. California location.
- 1430 Obrien Dr., Menlo Park, CA 94025. This location existed before the Hillview location.

This is the initial FDA inspection of this facility. There have been no recalls according to Ms. Holmes.

US-FDA-0035543

| Establishment Inspection Report | FEI: | 3010479366 |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

Case 5:18-cr-00258-EJD    Document 680    Filed 01/08/21    Page 38 of 77

The firm operates 24 hours a day, 7 days a week. Ms. Holmes indicated that Theranos is "always open". The facility in Palo Alto, CA is approximately 115,000 square feet (**Exhibit 5**).

All official correspondence should be addressed to the top management official:

> Elizabeth Holmes, Chief Executive Officer and Founder
>
> Theranos, Inc.
>
> 1701 Page Mill Road
> Palo Alto, CA 94304-1111

## BACKGROUND (SSS/IAP)

The Theranos Sample Collection Device (TSCD), also known as Capillary Tubes and Nanotainers (CTN) or just Nanotainers, is manufactured at the Newark location. Patient samples that are collected using the TSCD are obtained via capillary draws and are only analyzed at the Newark lab. No TSCDs are manufactured at or used to analyze patient samples at the Arizona lab.

Theranos is currently utilizing analyzers and reagents manufactured by other companies, then modified by Theranos, to run patient samples collected using the TSCD. The firm used to run samples using their own system consisting of the Theranos Sample Processing Units (TSPU) and Theranos Laboratory Automation System (TLAS). However the firm stopped using the system in July 2015 because they are in the process of building an upgraded version and no longer wish to support the older version. All TSCD capillary draw samples are run using commercially available analyzers and reagents that have been modified by Theranos to run small volume capillary samples.

Patient samples are collected at Theranos Wellness Centers located inside Walgreens locations in Arizona and California (also referred to as "collection sites") using TSCDs for capillary fingerstick draws and vacutainers for venous blood draws... Arizona also has in-office physician locations where samples may be collected (also referred to as "collection points"). In-office physician locations only collect samples using vacutainers from venous blood draws; no samples are collected using the TSCD. Theranos has just recently started collecting patient samples in Pennsylvania. Regardless of where the samples are collected, they are all collected by Theranos phlebotomists stationed at each location. If several tests are ordered and one of them requires a venous blood draw (not capillary) then the entire sample will be collected using a vacutainer and not a TSCD.

## JURISDICTION/LABELING (SSS)

This facility in Palo Alto, CA designs the TSCD device. The TSCD is used to collect patient blood samples for analysis. According to Ms. Holmes, approximately 12% of all samples collected were using the TSCD (**Exhibit 6**). "All samples" include all collection types including blood, urine etc. TSCDs only store blood. Of all the blood samples collected, approximately 85% were collected

US-FDA-0035544

| Establishment Inspection Report | FEI: | 3010479366 |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

using vacutainers, which means approximately 15% were collected using the TSCD, as discussed with Ms. Holmes.

Ms. King provided a photocopy to show how the TSCD is packaged (**Exhibit 7**). The TSCDs are not shipped with Instructions For Use because, according to Ms. Holmes, they are not distributed to end users. Only Theranos technicians use the TSCD. I asked for the intended use statement and was provided with the following statement:

> "***INDICATIONS FOR USE STATEMENT Theranos Capillary Tubes and Nanotainer tubes are single use capillary tubes and vessels, respectively, used to obtain capillary blood specimens for analytical testing. Theranos Capillary Tubes and Nanotainer Tubes are used in settings where small capillary blood samples are collected by trained, certified, and appropriately state-licensed healthcare workers in appropriately licensed sample collection locations.***" (**Exhibit 8, page 3**)

The actual device consists of a nanotainer portion and a capillary tube portion as explained above. Once the sample is collected from the patient the capillary portion is broken off and only the nanotainer with the sample remains. TSCDs can either be coated with Lithium Heparin (Li-Hep) or EDTA anticoagulants. The Li-Hep configuration is centrifuged and contains a separating gel. The specifications document, *TSCD Specifications, Document Number: SPC-00010, Revision A,* provided to me as part of design inputs describes the TSCD configurations:

> "***Only the EDTA configuration has anti-coagulant in both the capillary tubes and in the Nanotainers. The Nanotainer walls of both configurations are coated with a siliconising fluid (Surfasil). A gel (polydimethylsiloxane, 45ul) is preloaded in the Li-Hep Nanotainers. Nanotainers for $K_2$EDTA samples do not have gel. The Nanotainers with gel will be centrifuged before shipping (3590g, 5 min) for sample cellular and plasma separation purposes, wherein the plasma in the Li-Hep Nanotainer will rise and the gel will form a stable barrier between the plasma and the packed cells. The Nanotainers are maintained between 2-8C until processed. (Note that centrifuges used at the TPSCs are FDA Class I centrifuges manufactured by company Drucker with configurable adaptors. The actual adaptors used will be made by Theranos***" (**Exhibit 9, page 3**).

Ms. Holmes provided the following documents associated with the TSCD. These documents list the assays that can be run using samples collected from a TSCD, the anticoagulant type used, the analyzer on which each assay is run, collection site locations, and the number of tests performed and reported to patients:

- Statement dated 9/2/15 that the "first patient sample contained in a Theranos Sample Collection Device (TSCD) was shipped from Arizona to California on November 13, 2013" (**Exhibit 10**).

- Statement dated 8/25/15 of "a list of all Theranos Laboratory Developed Test (LDTs)" (**Exhibit 11**). The table has the assay name, assay device type, the container which is used

US-FDA-0035545

| Establishment Inspection Report | FEI: | **3010479366** |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

(where NT refers to the Nanotainer /TSCD device), and the analyzer on which the device is run. See **Exhibit 17** for an updated assay list, provided 9/4/15.

- Statement dated 8/26/15 for the "anticoagulants of the Theranos Capillary Tubes and Nanotainer Tubes used with the LDTs run in the Theranos clinical laboratory in California" (**Exhibit 12**). The list has an additional column that lists the anticoagulant type incorporated in the device. The list also includes the blood component that is analyzed (serum, plasma or whole blood).

- Statement dated 8/26/15, for "a list of all collection locations that may utilize the Theranos Sample Collection Device (TSCD) for an LDT" (**Exhibit 13**). The list includes Theranos Wellness Centers in California, Arizona, and Pennsylvania, which are open to the public. Theranos phlebotomists collect the patient samples at these locations. Theranos also has Theranos phlebotomists in physicians' offices to collect samples (Type IOP). However, these physician office locations do not utilize the TSCDs; they only perform venous bloods draws and are not open to the public.

- Statement dated 8/26/15, for "a list of all assays performed in the Theranos high-complexity laboratory in Newark" (**Exhibit 14**). The list includes the assay and the instrument on which it run. This list is not specific to assays run using the TSCD device, but if they are run on a sample using the TSCD device, the list will show the analyzer used.

- Statement dated 9/2/15, for a chart of "a list of assays currently run as LDTs and the number of assays that have been run as LDTs on finger stick samples" (**Exhibit 16**). Finger stick means the blood sample was collected using a TSCD. The list has an initial visit date which is the date the sample was initially taken, and it has the number of tests reported to patients up to 9/2/15. This list was provided to replace the list provided on 8/25/15 (**Exhibit 11**).; however, the list provided on 8/25/15 is still accurate in terms of the blood component used and the analyzer used. This list was again replaced on 9/4/15 (**Exhibit 17**).

- Statement dated 9/4/15, for a list of "assays that are (1) currently run as LDTs; (2) with finger stick samples; (3) using the Theranos Sample Collection Device (TSCD)" (**Exhibit 17**). This list is intended to replace the one provided 8/25/15 and 9/2/15 (**Exhibits 11 and 16**). This is the most up to date list. Lists provided that identify the anticoagulant and blood component type are still accurate, but this list provided 9/4/15 should be used as the list of active assays.

- Statement dated 8/26/15, for "training documents regarding the use of Theranos Sample Collection Devices (TSCDs) by the technicians employed by Theranos' clinical laboratory, who are the sole users of this device" (**Exhibit 18**). These training documents are all available to Theranos technicians at the collection sites and were collected to show how the device is used. The documents include:

US-FDA-0035546

| Establishment Inspection Report | FEI: | 3010479366 |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

    o   *Fingerstick and Capillary Collection, Document Number: CL SOP-05020, Revision: H, Effective 08/08/2015* which is the current document (**Exhibit 18 page 2-27**). The document explains "the procedures a technician will perform while collecting fingerstick and capillary specimens from guests at a Theranos Wellness Center" (**Exhibit 18, page 5**). The procedure is used to collect samples using the "CTN" (also known as the TSCD) device as explained in the Fingerstick Specimen Collection section 7.3. The green CTNs are centrifuged (section 7.3.3.17). Green CTNs are those coated with Lithium-Heparin.

    o   *Filling Station Guide* showing that patient blood samples are collected using the CTN device (**Exhibit 18, page 28-29**). This document is current and was in place on 2/27/15, according to Ms. King.

    o   *Finger Stick Evaluation Rubric* describing how to interact with patients and how to handle a sample such as refrigerating or centrifuging it immediately (**Exhibit 18, page 30-31**). This document is current and was in place on 2/27/15, according to Ms. King.

    o   *Grip Station Guide* describing how to hold a patients finger when taking a sample (**Exhibit 18, page 32-33**). This document is current and was in place on 2/27/15, according to Ms. King.

    o   *Finger Stick Process Guide* describing how to collect a fingerstick sample using a CTN (**Exhibit 18, page 34-35**). It states "Note that Green Nanotainers are ALWAYS centrifuged and Purple Nanotainers are NEVER centrifuged". This document is current and was in place on 2/27/15, according to Ms. King.

    o   *Lancing Station Guide* showing how to select a puncture site (**Exhibit 18, page 36-37**). This document is current and was in place on 2/27/15, according to Ms. King.

Ms. King provided *Fingerstick and Capillary Collection, Document Number: CL SOP-05020, Revision: E, Effective 09/09/2014* (**Exhibit 19**). This revision was in place on 2/27/15, according to Ms. King.

Ms. Holmes provided an electronic version of the complete current (effective as of 8/26/15) Theranos website, www.theranos.com, which we went over and discussed during the inspection (**Exhibit 60**). The website was provided on three discs and includes all pages and test descriptions offered. The website includes links to all the tests Theranos offers. When you click on a test link the test description is displayed. Each test description was provided (**Exhibit 60, page 5, disc 2**).

US-FDA-0035547

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Ms. Holmes also provided the website version that was effective on 2/27/15 via hardcopy (**Exhibit 20**). Ms. King provided a larger print of the test menu *list* on 9/16/15 (**Exhibit 21**). The test descriptions for each test were not provided in the 2/27/15 website version (although they existed) but Ms. King verified that if a test was listed on the 2/27/15 website you can use the test description on the current website because they are identical. Excerpts from the 2/27/15 website content include the following:

- "***One tiny drop changes everything. At Theranos, we're working to shape the future of lab testing. Now, for the first time, our high-complexity CLIA-certified laboratory can perform your tests quickly and accurately on samples as small as a single drop***" (**Exhibit 21, page 2**). The page pictures the TSCD.

- "***For the first time , Theranos is introducing CLIA-certified laboratory services with the ability to run its tests on micro-samples***Our laboratory can precisely analyze tiny samples. A few drops are all we need to perform most tests. So now, you can have your labs-from blood, urine, fluids, and more-done quickly and accurately***Instead of a huge needle, we can use a tiny finger stick or collect a micro-sample from a venous draw***" (**Exhibit 21, page 3**). This page pictures a TSCD.

- "***At Theranos, we can perform our lab tests on samples as small as 1/1,000 the size of a typical blood draw***Our proprietary infrastructure allows us to perform our test analyses with unprecedented speed. So we can have results to you and your doctor in a matter of hours, not days. Which means a fast diagnosis to support better, more informed treatment***"(**Exhibit 21, page 4**). The page pictures a TSCD.
- "***We're bringing lab testing closer to you. In the coming months, our Theranos Wellness Centers will bring our new experience to convenient, neighborhood locations. New Theranos Wellness Centers at Walgreens***" (**Exhibit 21, page 14**).

- "***Specialized for every specialty: Theranos is working to set a new standard for care that can help every practice***Oncology***Pediatrics***Geriatrics***" (**Exhibit 20, page 17**).

- "***TEST MENU***Glucose***Potassium***Sodium***Calcium, Total***Chloride***" (**Exhibit 21**).

Ms. Holmes wanted to make it clear that any reference to small blood volume or less blood in marketing or promotional material does not reference the finger-stick technique or the TSCD. Theranos used pediatric needles for venous blood draws which are smaller than traditional needles and collects a smaller volume of blood in venous tubes than traditional labs (see the explanation provided in **Exhibit 61, page 1**).

US-FDA-0035548

| **Establishment Inspection Report** | FEI: | 3010479366 |
| :--- | :--- | :--- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Ms. Holmes provided marketing materials that were in place on 2/27/15 at different locations (**Exhibit 22**). The second page describes the item and the collection sites where it was available (Scottsdale, Arizona or Palo Alto, CA). Marketing materials are printed in bulk at either the Palo Alto location or at a 3rd party vendor. All materials are shipped to Arizona at 1365 North Scottsdale Road, Scottsdale AZ to the patient services center located in the same building as the lab.

- Theranos circular brochure (**Exhibit 22, pages 4-23**) enclosed in a square envelope (**Exhibit 22, page 3**). The brochure states in part: "one tiny drop changes everything. Say goodbye to big needles and vials. Say hello to a finger stick or a small draw that collects just a tiny sample of blood.*** and pictures the TSCD on the opposite page (**Exhibit 22, pages 7-8**). This brochure was in place in the Arizona and California collection sites on 2/27/15.

- The physician test menu entitled "theranos test menu" (**Exhibit 22, page 24-29**). The document lists the tests offered by Theranos. Note that not all tests listed are performed using the TSCD device. The majority are performed using venous blood draws. This test menu was in place in the Arizona and California collection sites on 2/27/15.

- The physician locations flyer in English entitled "theranos***the tiny blood test" which pictures the TSCD device (**Exhibit 22, page 30-31**). This flyer lists all the Arizona collection sites located inside Walgreens stores. The flyer was only available in Arizona at the collection sites and was in place on 2/27/15.

- The physician locations flyer in Spanish entitled "theranos***analisis clínicos pequeños" which pictures the TSCD device (**Exhibit 22, page 32-33**). The flyer was only available in Arizona at the collection sites and was in place on 2/27/15.

- The physician locations flyer in English entitled "theranos***the tiny blood test" which pictures the TSCD device and has one location listed on the back (**Exhibit 22, page 34-35**). The flyer was only available at the California collection site located inside a Walgreens store on 2/27/15.

- The physician locations flyer in Spanish entitled "theranos***analisis clínicos pequeños" which pictures the TSCD device (**Exhibit 22, page 36-37**). The flyer was only available at the California collection site located inside a Walgreens store on 2/27/15.

In addition to the marketing materials in place on 2/27/15, Ms. Holmes provided all current marketing material (**Exhibit 59**). She also provided copies of 1 video and 2 radio ads that started to air on 8/31/15; they were provided on a disc labeled "Theranos Radio and TV Clips THERANOS 9.11.2015" (**Exhibit 61**). On 9/4/15, she provided additional marketing materials that went into effect on 8/28/15 for a new location in Redwood City, CA (**Exhibit 15**).

US-FDA-0035549

| Establishment Inspection Report | FEI: | **3010479366** |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

## INTERSTATE COMMERCE (SSS)

Theranos has been shipping patient samples from Arizona to California in their TSCD devices since November 13, 2013 as indicated by the statement provided on 9/2/15 (**Exhibit 10**).

Approximately 90% of TSCDs are shipped outside of California for use in Theranos Wellness Centers and Physician office locations in Arizona and a health care facility in Pennsylvania (**Exhibit 23**).

All TSCDs are manufactured and sent from Newark, CA. The Newark inspection documented a shipment of TSCD lots 9122014-3690, 30122014-3749 and 02012015-375 that were shipped from Newark , CA to Scottsdale, AZ on 2/27/15 (see Theranos Newark, CA EIR). Mr. Balwani provided the shipment information to Investigator Singh on 9/11/15 (**Exhibit 24**). Marketing material and the website in place on 2/27/15 were described in the Jurisdiction section of this EIR.

## INDIVIDUAL RESPONSIBILITY AND PERSONS INTERVIEWED (SSS)

The organizational chart provided shows the CEO and the upper level managers that report to her (**Exhibit 25**).

***Elizabeth Holmes is the Chief Executive Officer and Founder of Theranos.*** She stated that she is the most responsible individual. Investigators Pilcher and I presented our credentials and issued Form FDA 483 to her on 8/25/15. I issued Form FDA 483 and FDA 463a to her on 9/16/15. Ms. Holmes is responsible for overall Theranos operations and oversees the Quality System. She was present and actively participated in the inspection process and provided the majority of relevant documentation. I observed her giving directions to other employees and other employees asking her if they could provide me with certain documents.

On 9/16/15 I issued Form FDA 463a, Affidavit to Ms. Holmes regarding information she provided during the inspection and marketing material related to TSCD lots 29122014-3690, 30122014-3749 and 02012015-375 that were shipped from Newark , CA to Scottsdale, AZ on 2/27/15 (**Attachment 3**). She said it was company policy not to "acknowledge, sign or refuse" Affidavits. She took the Affidavit out of the room and came back saying that it has many errors. I asked if she could correct the errors on the Affidavit but she described them to me verbally. Following are the items she mentioned were incorrect:

- On page 3, the Affidavit states "Marketing collateral used in Arizona collection sites are shipped to the Scottsdale, Arizona lab and then are distributed to the Arizona collection sites". Ms. Holmes stated that the reference to the Arizona *lab* is incorrect. She explained that TSCDs are not shipped to the *lab*, but to the patient service center office located next to the lab. I asked if marketing materials and the TSCDs go to the same place. She said they both go to the patient service center office in Scottsdale, AZ at 1365 N. Scottsdale Rd.

US-FDA-0035550

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

- On page 1, the Affidavits states "TSCDs are all manufactured at the Newark facility and sent to the Newark or Arizona lab". Ms. Holmes said the nanotainers are not *sent* to the Newark lab; they ae manufactured there as part of an LDT. The TSCD manufacturing is the same site as the lab.
- On page 1, the Affidavit states "Theranos has been distributing and using the TSCDs to collect patient capillary blood samples". Ms. Holmes stated that they are not *distributing* the TSCDs anywhere; they are only using them.
- On page 4, the Affidavit states "I provided the training material used to train Theranos phlebotomists located inside Walgreens collection sites". Ms. Holmes stated that the Theranos phlebotomists are located inside of *Theranos Wellness Centers* which are located in Walgreens locations. They are not located at *Walgreens collection sites*.
- On page 1, the Affidavit states "provide information on the Nanotainer devices, where they are distributed, what assays they can be used with, what instruments they can be used on, where they arc distributed, and I can verify the marketing material, the website and the training material associated with the device. " Ms. Holmes said the marketing material is not associated with the TSCD; they are associated with the lab services only. She said that they do not market the TSCD because they don't sell it.

Ms. King wanted to make it clear that these are only a few examples of errors and is not a comprehensive listing of errors or misrepresentations found in the Affidavit.

***Heather King is the General Councel for Theranos*** and runs the legal department. She reports to Ms. Holmes. She oversees strategic communications like public relations and with any regulatory matters in terms of jurisdiction and scope. She was present each day of the inspection and assisted in providing documents and facilitating the inspection. Ms. King provided all objection documents.

On 9/16/15 I issued Form FDA 463a, Affidavit, to Ms. King as a supplement to Ms. Holmes Affidavit regarding information Ms. King verified during the inspection. She said it was company policy not to "acknowledge, sign or refuse" Affidavits. She took the Affidavit out of the room and came back saying that it was inaccurate. She described one error for me verbally:

- The Affidavit states "These training materials are used to train Theranos phlebotomists, located inside Walgreens locations". Ms. King explained that the phlebotomists are located inside *Theranos Wellness Centers* located inside Walgreens locations.

Ms. King said this was just an example and is not a comprehensive list of errors or misrepresentations.

***Brad Arrington is the Associate Director of Regulatory at Theranos.*** He is an attorney in the legal department of Theranos and reports to Ms. King. He is the main contact with FDA and handles pre-submissions and premarket notifications.

***Samartha Anekal ("Sam") is a Vice President of Theranos Systems.*** He is responsible for systems integration and validation (hardware and chemistry), and is on the research and development team.

US-FDA-0035551

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

He was involved in the TSCD design process and leads the team responsible for design. He was present for and provided information on design controls.

***Daniel Young is a Vice President of Theranos Systems and Computational Biology***. He leads the computational biology team, is the lab director in the Arizona lab facility and supports the development team on devices or assays. He was present for part of design controls and provided information on assay validation.

***James E. Twitchell is the Quality Director at Theranos***. He's been with the company for one year. He's responsible for overseeing implementation of the Quality Management System and that it is appropriately applied. He supports design and development activities and manufacturing operations. He was present only a few days during the inspection.

***Brian Kutner is the Director of Consumables Manufacturing*** at Theranos. He performs activities associated with the TSCD such as front end manufacturing and testing and equipment support. I met with him during a discussion on design controls.

***Ramesh Balwani "Sunny" is the President and Chief Operating Officer at Theranos***. He was present only on 9/11/15 during Ms. Holmes absence in the morning.


## FIRM'S TRAINING PROGRAM (SSS)

This section was only covered with respect to Theranos technicians stationed at each collection point and site. I reviewed training documents and did not note any significant issues.


## MANUFACTURING/DESIGN OPERATIONS (SSS)

Ms. Holmes described this facility in Palo Alto, CA as a research and development facility. With respect to the Quality System, only design activities occur here. All other Quality System activities occur at the Newark, CA site. I collected the firm's Quality Manual, *Quality Manual QM-00001 Revision D* (**Exhibit 26**). I asked Ms. Holmes to provide me with list of the activities that occur here and at the Newark, CA facility. I was provided a list with the quality manual section number and the location at which each quality system activity is performed (**Exhibit 27**).


<u>Design Controls</u>
Design control activities occur at the Palo Alto site and are transferred to the Newark site for production. Theranos is currently only manufacturing the TSCD product. Investigator Pilcher and I reviewed design controls for the TSCD product and found significant issues with design validation, design inputs and risk analysis (see Observations 1-4).

US-FDA-0035552

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Design requirements for the capillary tubes and nanotainers (also called the TSCD) are located in *TSCD Specifications, Document Number: SPC-00010, Revision A* and *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A* (**Exhibits 9 and 29**). Issues with design inputs are addressed in **Observation 3**. The TSPU and TLAS systems were not covered since Ms. Holmes stated that Theranos has stopped using them.

Review of the firm's design validation records resulted in **Observations 1 and 2**. Review of risk analysis resulted in **Observation 4**.

## MANUFACTURING CODES (SSS)

This section was not specifically covered at the Palo Alto, CA location.

## COMPLAINTS (SSS)

According to Ms. Holmes all complaint handling occurs at the Newark site. This includes Medical Device Reporting (MDR) evaluation.

## RECALL PROCEDURES (SSS)

Recalls are assessed and handled at the Newark, CA site according to Ms. Holmes.

## OBJECTIONABLE CONDITIONS AND MANAGEMENT'S RESPONSE

**Observations listed on form FDA 483**

---

**OBSERVATION 1 (SSS/IAP)**

Design validation did not ensure the device conforms to defined user needs and intended uses.

Specifically,

You provided *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, raw data, and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* as evidence of design validation which was conducted in April 2014. The validation:

A.   Fails to address all assays that can be performed using the TSCD device. Your CEO provided a list of assays that can be performed using the TSCD device which include uric acid, total iron binding capacity and magnesium. These

US-FDA-0035553

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

assays were not specifically addressed, with acceptance criteria, in your design validation. You have performed approximately 1725 uric acid tests, 1699 total iron binding capacity tests, and 1650 magnesium tests, using the TSCD device, and reported the results to patients.

B.   Of the assays you addressed in design validation, bicarbonate, calcium, glucose and potassium failed acceptance criteria and required further investigation; however there is no reference to any documentation to address these failures. You provided additional data on these assay failures, however the test plan and explanation of results for the failed assays were written on 8/29/15 (during this inspection).

*Annotation:  Reported corrected, not verified.*

Reference: 21 CFR 820.30(g)

**Supporting Evidence and Relevance:**

A.   Investigator Singh asked for the design control procedure effective at the time of design and was provided with *Design Control, Document Number: QOP-73-00001 Revision: B Effective 06/23/10* (obsoleted 6/4/15) (**Exhibit 28**). The design validation section of this document states in part: "***The purpose of design validation is to ensure that the actual device is able to satisfy defined user needs and intended use(s) as defined in the Input Requirements***" (**Exhibit 28, page 8**)

In *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A*, which Mr. Anekal and Mr. Young provided as part of design input documentation for the TSCD, item C.0037 states "The sample collected should be compatible with all Theranos assays" (**Exhibit 29, page 8**). Ms. Holmes has previously provided a list of all Theranos assays that are used with the TSCD (**Exhibit 17**). On 8/27/15, Investigators Singh and Pilcher asked for explanation on the requirement, for example for the list of assays in the design input documents and the performance criteria. We were told that requirement C0037 would be explained the following day. We also asked for the design validation that the TSCD was in fact compatible with all Theranos assays, complete with preapproved acceptance criteria and a report. On 8/28/15, Mr. Young and Mr. Anekal provided the design validation, conducted in April 2014, which consisted of:

- *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* (**Exhibit 30**). This document does not have a document number, revision number or effective date (see **Observation 4**).
- Raw data (**Exhibit 31**). Note the raw data has dates of April 2014.

US-FDA-0035554

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

- *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li-Hep* (**Exhibit 32**). This document does not have a document number, revision number or effective date (see **Observation 4**).

Investigator Singh asked Mr. Anekal and Mr. Young if any prior design validation was conducted prior to April 2014 and they indicated that this was the first design validation.

The list of assays validated is listed in the *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li-Hep* (**Exhibit 32, page 7-8**). The list does not include all the Theranos assays when compared to the active assay list showing the number of patient results reported (**Exhibit, 17**). As examples, uric acid, total iron binding capacity and magnesium were not addressed in the design validation although patient samples were tested and reported. The numbers of patient results reported are indicated on the list. Uric acid, total iron binding capacity and magnesium are all done on the Lithium Heparin coated TSCD (**Exhibit 12**). On 9/11/15, Investigator Singh asked if all Theranos assays were addressed in the design validation. Mr. Balwani responded that they don't validate all assays, just a subset. It is the CLIA lab that does the validation. Design controls will only validate a subset of the assays. Investigator Singh stated that it was the manufacturer's responsibility to validate that the TSCD does not adversely affect each assay it is intended to be used with such that it meets user needs. Mr. Balwani replied that a manufacturer will never validate *all* assays.

B. The results and conclusions in *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li-Hep* states in part: "The CTN2.1.1-LiHep/Li-Hep devices generally demonstrated compatibility with the GC assays. Some assays, including bicarbonate, potassium, calcium, and glucose required further investigation" (**Exhibit 32, page 8-9**) However, there is no reference to the "further investigation". Investigator Pilcher asked how the validation passed without meeting acceptance criteria, i.e. how are the bicarbonate, potassium, calcium, and glucose assays acceptable when they failed to meet their acceptance criteria. On 8/30/15, Ms. King emailed documents related to questions on the failed assays. Investigator Singh collected these documents on 9/1/15 (**Exhibit 33**). The documents start off with a letter addressed to Investigator Pilcher describing QSR compliance, validation deviations, information on the inspection, and the regulatory status of the TSCDs. Then there are exhibits of additional studies for the failed assays. These studies include internal quality monitoring which Investigator Singh explained are not design validation activities. In addition, the documents themselves do not reference the original design validation to ensure the same process was followed. There is no document number, revision or effective date on the new test plan, *Appendix, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep* (**Exhibit 33, page 26**). In addition, there is no document number, revision or effective date on *Appendix, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep*, which was written to "demonstrate compatibility of Theranos CTN device with calcium, potassium, bicarbonate

15 of 34

| Establishment Inspection Report | FEI: | **3010479366** |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

and glucose assays" using data from September 2013 (**Exhibit 33, page 130**). The design validation was conducted in April 2014. Investigator Singh asked when these two documents were written. Mr. Young and Mr. Anekal responded that they were written on 8/29/15 in response to Investigator Pilcher's concern on the failed assays in the design validation. Investigator Singh explained that she was unable to verify the information provided was part of the initial design validation since there was no reference number or other information to link the design validation and the studies related to the assay failures.

**Discussion with Management:**

Ms. King and Ms. Holmes objected several times during the inspection to covering design controls at the time of design and requiring compliance with QSR when they said that TSCDs were developed as an LDT. Ms. King provided written objections which are described in the General Discussion with Management section of this EIR.

Mr. Balwani disagreed that all assays had to be validated with the TSCD as part of design controls. On 9/11/15, he provided Investigator Singh specific pages from the Clinical and Laboratory Standards Institute, GP34-A Vol.30 no.25 highlighting section 5.3.1 (5), to explain why they didn't have to validate all assays (**Exhibit 34, page 5**). In addition he provided a statement describing the intended use of the TSCD and why assays were not validated as part of the TSCD validation (**Exhibit 35**). Investigator Singh explained that she could not review the content for adequacy but will collect it and attach it to the EIR for further review.

Also on 9/11/15, Ms. Holmes provided two binders of observation corrections, one called Sections A-D and one called Sections E-F (**Exhibits 62 and 63, respectively**). I explained I would be unable to review and verify all corrections but will include the documents in my EIR.

During the closing meeting, Ms. Holmes strongly disagreed with the observation but stated that they have voluntarily corrected it and would like to annotate the observation as reported corrected, not verified. She stated that they have updated their Requirements and Specifications documents. I explained that they should also implement corrective actions, not just corrections. Ms. Holmes said that they believe that they have addressed corrective actions. Mr. Anekal communicated that Corrections Binders E-F, Exhibit E3 p.4, section 5.1.2, specification # S.0010 addresses this observation because it lists all assays, and the associated test plan and test report will address all assays (**Exhibit 63**). He also pointed out that Exhibits D1, D2, D3 and D4 in the Corrections Binder A-D  addresses this observation (**Exhibit 62**).

Ms. King provided Investigator Singh with an objection letter for refusing to verify corrections to 483 observations (**Exhibit 36**). Investigator Singh had explained on 9/11/15 that she would be unable to verify corrections, not only because of time constraints, but also because there are cases where further review by the District or Center is necessary to verify corrections or another inspection

US-FDA-0035556

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

of the establishment is necessary. The objection letter was provided after close-out and includes references to the observation corrections provided in the corrections binder.

Ms. Holmes said she intends to provide a written response to the district office within 15 days with all the corrections.

## OBSERVATION 2 (SSS/IAP)

The design was not validated under actual or simulated use conditions.

Specifically,

Your design validation plan, *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, raw data, and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, provided as evidence of design validation, does not demonstrate that TSCD device samples were taken from units, lots or batches that were produced using the same specifications, production and quality system methods, procedures, and equipment that will be used for routine production. For example, you do not list or refer to the TSCD lot numbers used, specific instruments or analyzers used, documents with revisions numbers used, or the specific assay protocols used.

———

*Annotation:  Reported corrected, not verified.*

Reference: 21 CFR 820.30(g)

**Supporting Evidence and Relevance:**

On 8/28/15, Mr. Young and Mr. Anekal provided the design validation, conducted in April 2014, which consisted of:

- *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* (**Exhibit 30**). This document does not have a document number, revision number or effective date (see **Observation 4**).
- Raw data (**Exhibit 31**). Note the raw data has dates of April 2014.
- *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li-Hep* (**Exhibit 32**). This document does not have a document number, revision number or effective date (see **Observation 4**).

US-FDA-0035557

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

The validation does not list or refer to the TSCD lot numbers used, specific instruments or analyzers used, documents with revisions numbers used, or the specific assay protocols used. Investigator Singh explained that the test plan should be written such that someone could follow the steps and perform the validation. Investigator Singh asked if any other design validation was performed that would list the required information. Mr. Young said no and that he agreed that the test plan could use more detail.

**Discussion with Management:**

During the closing meeting, Ms. Holmes stated that the TSCD was developed and validated under the LDT framework. Commercially available tubes did not hit the performance criteria they were looking for and so they had to develop a tube as part of the LDT system and validate it in a clinical lab which FDA has known for two years. She said they have voluntarily applied the QSR framework and have corrected the specific points. She stated that Theranos was never *distributing* the TSCD devices; they previously provided FDA with specific documents that show they were under CLIA. Ms. King cited 42 CFR493.1240 and 42 CFR 493.1242 as evidence that TSCDs never leave the CLIA lab.

Ms. Holmes said that this observation is citing the past and is in direct contrast in everything FDA has been saying that QSR should be in place at the time of submission. Investigator Pilcher reminded Ms. Holmes that the TSCD was a class 2 medical device and that there are certain quality requirements that have to be followed.

Ms. Holmes said she disagrees with this observation but elected to annotate it as reported corrected, not verified. Mr. Anekal said that Exhibits D.1, D.2, D.3, and  D.4 in Binder A-D show the corrections to this observation (**Exhibit 62**). Investigator Singh reminded those present at the closing meeting that corrections to observations should also incorporate any corrective actions.

An objection letter was provided after close-out and includes references to the observation corrections provided in the corrections binder (**Exhibit 36**).

Ms. Holmes said she intends to provide a written response to the district office within 15 days with all the corrections.

**OBSERVATION 3 (SSS)**

Design input requirements were not adequately documented.

Specifically,

US-FDA-0035558

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

A.  In your *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A*, you list "The sample collected should be compatible with all Theranos assays". However, in *TSCD Specifications, SPC-00010 Revision A*, you do not list all the specific assays the TSCDs are intended to be used with or the performance specifications for each assay. You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.

B.  You apply either a Lithium Heparin or EDTA anticoagulant to your TSCD device. You do not address the amount of anticoagulant coating to apply in your design requirements or specifications document such that the device will perform to meet its intended use, specifically for the Lithium-Heparin coating. In your hazard matrix, you classified too much Lithium-Heparin with the highest severity: "catastrophic", "serious safety related failure, potential adverse effect on the end user". You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.

*Annotation:  Reported corrected, not verified.*

Reference: 21 CFR 820.30(c)

**Supporting Evidence and Relevance:**

A.  Mr. Young stated that there are no separate design input procedures; the design input procedure is contained in the Design Control procedure. *Design Control, Document Number: QOP-73-00001 Revision: B Effective 06/23/10*, effective at the time of design states in part: "***Design input requirements shall be sufficiently specific to provide acceptance criteria for the verification of the design***Design input requirements are documented. All documents constituting design input are assembled and/or referenced in the Product Requirements***" (**Exhibit 28, page 3**).

In *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A*, which Mr. Anekal and Mr. Young provided as part of design input documentation for the TSCD, item C.0037 states "The sample collected should be compatible with all Theranos assays" (**Exhibit 29, page 8**). However, *TSCD Specifications, SPC-00010 Revision A*, does not list all the specific assays the TSCDs are intended to be used with or the performance specifications for each assay (**Exhibit 9**). Investigator Singh asked Mr. Anekal specifically if all assays with performance criteria were listed in the specification document and he said no but the acceptance criteria were in the validation documents. I explained that the validation document provided did not address all Theranos assays (see **Observation 1**).

Ms. Holmes had previously provided a list of all Theranos assays that are used with the TSCD (**Exhibit 17**). The list includes the following assays: alanine amino (alt) (sgpt), albumin, alkaline phosphatase, bilirubin total, calcium, carbon dioxide, chloride, cholesterol, creatinine, glucose, lipoprotein (HDL), lipoprotein blood (LDL), magnesium, phosphorus, potassium, protein total, sodium, total Iron, total Iron binding capacity, transferase (ast)

US-FDA-0035559

| Establishment Inspection Report | FEI: | 3010479366 |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

(sgot), triglycerides, urea nitrogen, and uric acid. These assays are all run using the Lithium-Heparin coated TSCD as shown on the anticoagulant list provided (**Exhibit, 12**).

On 9/10/15, Ms. Holmes provided *Requirements, Theranos System, Version 4, Document Number: REQ-00002 Revision: A, Effective Date: 11/07/14* as evidence that all assays have been addressed in design inputs (**Exhibit 37**). Investigator Singh asked why the effective date of this document was 11/07/14 when the design process began in early 2014. Ms. Holmes said that the effective date was later because they were still transitioning to the QSR system. I asked to see the reference to this document in *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A* or in *TSCD Specifications, SPC-00010 Revision A.* Ms. Holmes said that section 4.1.1 of *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A* refers to REQ-0002 Revision A (**Exhibit 29, page 4**). I reviewed the section and found no reference. Mr. Anekal said the reference was not explicitly stated but it is implied. I explained there is no reference and even so *Requirements, Theranos System, Version 4, Document Number: REQ-00002 Revision: A, Effective Date: 11/07/14* is the requirements document for the Theranos *System* which includes the TSPU, TSCD and TLAS. The TSCD is a separate device and requires separate specifications especially since not all TSCDs are used with the TSPU. Ms. Holmes previously stated that TSPUs are no longer used; samples are run on another manufacturer's analyzer. The analyzer list shows the analyzer the assay is run on (**Exhibit 14**). In addition, some assays that are run with samples collected using the TSCD are not listed in *Requirements, Theranos System, Version 4, Document Number: REQ-00002 Revision: A, Effective Date: 11/07/14* such as carbon dioxide,/bicarbonate, c-reactive protein hsCRP, ferritn, lipoprotein LDL, phosphorus, rbc sed rate-automated, total iron biding capacity and transferase (ast) (sgot).

B. TSCDs are either coated with either Lithium-Heparin or EDTA anticoagulants (**Exhibit 9, page 3**). For the Li-Hep TSCDs, a known amount of Li-Hep is inserted into the TSCD, any excess is removed with a Kimtech wipe, they are incubated and then an undocumented amount is removed to an "acceptable level" per *MOP, CTN Li-Hep Coating, Document Number: MOP00601 Revision C* (**Exhibit 38**). In *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision A,* too much Lithium Heparin can lead to incorrect results, interfering with Theranos assays (**Exhibit 39, page 12**). This hazard was given a severity of 5 which, according to *Failure, Modes and Effects Analysis, SOP-00149 Revision B,* which was used with DOC-00069 Revision A, is "catastrophic", a "serious safety related failure" which has a "potential adverse effect on the end user"(**Exhibit 40, page 11**).

On 9/1/15, I asked Mr. Anekal specifically if the amount of anticoagulant was documented in the TSCD specifications document *TSCD Specifications, SPC-00010 Revision A.* Mr. Anekal said no; it wasn't in the specifications document; it was defined but not documented. He said it was the concentration of the anticoagulant that mattered, not the amount.

US-FDA-0035560

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

I was also provided with firm's current design control procedure, *Design Control, SOP-00150 Revision C*, which describes the current design input procedure (**Exhibit 42, page 7**). I collected this for reference.

**Discussion with Management:**

During the closing meeting, Ms. Holmes stated that the observation was specific to the time they were developing LDTs, it does not reflect current compliance and is not reflective of the transition that FDA has said.

Mr. Anekal stated the concentration of the Lithium-Heparin is what is relevant, not the volume and referenced Exhibit E3, page 8, M.0023 in Corrections Binder A-D (**Exhibit 62**). I asked specifically if the amount was addressed and he said no. In response to not defining all assays, he said that the list of assays was now defined in the specifications document in Binder A-E, Exhibit E3, page 4, section S0010.

Ms. Holmes disagrees with this observation but elected to annotate the observation as reported corrected, not verified.

An objection letter was provided after close-out and includes references to the observation corrections provided in the corrections binder (**Exhibit 36**).

Ms. Holmes said she intends to provide a written response to the district office within 15 days with all the corrections.

---

**OBSERVATION 4 (SSS)**

Results of the design risk analysis were not adequately documented.

Specifically,

A. You provide multiple assay results to patients using the TSCD devices coated with either Lithium-Heparin or EDTA anticoagulants using serum, plasma or whole blood. However, you do not document the possible hazards associated with the TSCD design for serum and plasma samples with different anticoagulants for specific analytes in your design Failure Modes and Effects Analysis, DOC-0069 Revision A.

B. *DOC-0069 Revision A,* provided as the design Failure Modes and Effects Analysis conducted at the time of design, describes:

    i.   Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with

US-FDA-0035561

| Establishment Inspection Report | FEI: | 3010479366 |
| --- | --- | --- |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Theranos assays, and Potential Cause: Incorrect material selection. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3 which according to SOP-00149, Revision: B results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.

ii.  Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Too much Li-Hep in circuits. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3, which according to SOP-00149, Revision: B results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.

_____

*Annotation:  Reported corrected, not verified.*

Reference: 21 CFR 820.30(g)

**Supporting Evidence and Relevance:**

A.  On 8/26/15, Ms. Holmes provided a list of assays that are run with samples collected from TSCDs that list the blood component that is analyzed (serum, plasma or whole blood) (**Exhibit 12**). The list also shows which anticoagulant is used on the TSCD.

Mr. Anekal and Mr. Young provided *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision A* as the dFMEA that was followed at the time of design (**Exhibit 39**). I asked Mr. Anekal if the hazards associated with different analytes was assessed with the different anticoagulant and blood component type. I explained that serum samples and plasma samples with different anticoagulants may perform differently with assays for specific analytes. Mr. Anekal confirmed that each assay was not listed in the dFMEA. He disagreed that the anticoagulant on the TSCD affected the assay, but said that by running the assay they can determine the [TSCD] device didn't have an effect. Ms. Holmes said it was impossible to test all assays out there and explained that the TSCD is only intended to collect patient blood samples. She explained that other devices have a wide range of anticoagulants that are not specific to the assay. I explained that I could not speak to what other companies are doing and that I am assessing Theranos right now. Mr. Anekal mentioned that even in the 510(k) submission, they only send in *representative* assays. I said I couldn't speak to the 510(k) process but the firm is responsible for addressing the assays the device is to be used with.

B.  *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision A* shows Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Incorrect material selection. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3

US-FDA-0035562

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

(**Exhibit 39, page 12**). In addition, it shows Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Too much Li-Hep in circuits and also has a severity rating of 5 and occurrence rating of 3 (**Exhibit 39, page 12**). In both these instances, the risk index was given a value of 2 and there are no risk control measures documented. Per *Failure, Modes and Effects Analysis, SOP-00149 Revision B*, which Mr. Anekal said was used at the same time as DOC-00069 Revision A, a severity of 5 and occurrence of 3 indicates a risk index of 3, which is the highest risk and requires risk reduction activities (**Exhibit 40, page 13**).

I discussed this with Mr. Anekal and Mr. Young. In response, on 9/3/12, I was provided an updated copy of the dFMEA. I was told that the dFMEA DOC-00069 Revision A had clerical errors, and that the risk control measures were inadvertently left off. I was provided with an updated dFMEA, *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069, Revision v4* which documents the risk control measure as "Addressed in pFMEA" and the verification of effectiveness as "DOC-0068 pFMEA" (**Exhibit 42, page 14**). I asked for the pFMEA that was effective at the time the dFMEA was conducted and was provided with *Process Failure Modes and Effects Analysis (pFMEA), DOC-00068 Revision B* where the highlighted lines on page 3 and 4 of the Exhibit correspond to the lithium-heparin lines in the dFMEA (**Exhibit 43**). However Revision B was not effective until 8/26/15 and did not include any verification of effectiveness so I asked for all versions and was provided with revisions A, B and an unreleased revision C (**Exhibit 45**). Revision A of the pFMEA shows an effective date of 1/2/2015. On 9/4/15, I asked Mr. Anekal if there were any other previous versions of the pFMEA prior to 1/2/15 and he said no there was no documentation of pFMEA in the QSR system prior to 1/2/15. The dFMEA, DOC-00069 Revision A was used February through April 2014.

*Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision B, effective 9/11/15*, was provided on 9/16/15 as the corrected dFMEA (**Exhibit 46**). I did not get a chance to review this document.

**Discussion with Management:**

Ms. Holmes disagreed with all parts of the observation because they are all documents that were in place during the transition to the QSR framework and is not indicative of Theranos' current compliance state. She then stated that the observation was related to a clerical error and that risk control measures were always documented. She did not feel the observation was accurate and asked if the 483 could be revised if it was incorrect. I said that she can inform the district in the written response and the response will be reviewed, if received within 15 business days, before determining any regulatory action.

US-FDA-0035563

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

Mr. Anekal said DOC 00069 Rev B has the correction to this observation. He said it's the documentation that they are improving; the process has always been in place.

Ms. Holmes disagreed with this observation and elected to annotate it reported corrected, not verified.

An objection letter was provided after close-out and includes references to the observation corrections provided in the corrections binder (**Exhibit 36**).

Ms. Holmes said she intends to provide a written response to the district office within 15 days with all the corrections.

---

**OBSERVATION 5 (SSS)**

Documents were not reviewed and not approved by designated individual(s) prior to issuance.

Specifically,

A.   dFMEA, DOC-0069 Revision A, provided as the hazard analysis for the TSCD devices, was utilized from February-April 2014. The document does not have an effective date. The document was not released in your document control system until 8/26/15 (during the inspection). The document was not reviewed and approved prior to 8/26/15.

B.   There is no document number, revision or effective date for your design validation: *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep*, and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep.* These documents were provided as evidence of design validation conducted in 2014; however, they were drafted during this inspection and were not reviewed and approved until 9/10/15.

C.   There is no document number, revision or effective date for *Appendix , Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep.* This document was provided as a follow-up to the failures in your design validation conducted in 2014; however, this document was drafted during the inspection. It has not been reviewed or approved until 9/10/15.

---

*Annotation:  Reported corrected, not verified.*

Reference: 21 CFR 820.40(a)

US-FDA-0035564

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

**Supporting Evidence and Relevance:**

A. According to Ms. Holmes, the content in *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision A* was utilized from February to April 2014. The document does not have an effective date (**Exhibit 39**). The document was reviewed and approved into the firm's Agile system on 8/26/15 (**Exhibit 47**). According to Ms. Holmes on 9/10/15, there was no documentation of review and approval prior to 8/26/15.

B. There is no document number, revision or effective date on *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* (**Exhibit 30**), and *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* (**Exhibit 32**). These documents were provided as evidence of design validation conducted in 2014 as explained in Observation 1. On 9/10/15, I asked Mr. Anekal when the Test Plan and Test Report were written. He said it was "around August 28, 2015". The test plan and test report used to show design validation of the TSCD in 2014 were not reviewed or approved until 9/10/15 (**Exhibit 48**).

C. There is no document number, revision or effective date for *Appendix , Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep* (**Exhibit 33, page 26**). This document was provided as a follow-up to the failures in the design validation conducted in 2014; however, this document was drafted during the inspection. It has not been reviewed or approved until 9/10/15 (**Exhibit 49**).

**Discussion with Management:**

During the closing meeting I reminded all those present that the items listed on the 483 were some *examples* of documentation issues. Ms. Holmes stated that she disagreed with the observation because the TSCDs were developed as part of the LDT framework. She believes they don't need to be compliant with QSR until the time of clearance. She said they had a review and approval process in place with CLIA. They are only voluntarily working to QSR requirements and the observation does not reflect current QSR compliance. She said section F of the correction binder show that they went through the whole process. For example, the dFMEA was updated to Rev B, and they updated the design validation documents to reflect proper document numbers as shown in Exhibits D1, D2, D3 and D4 of the corrections binder (**Exhibit 62**).

Ms. King stated that per 42 CFR1493.1253 b(2), equipment can be developed as part of an LDT.

Ms. Holmes disagreed with the observation but elected to annotate as reported corrected, not verified.

US-FDA-0035565

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

An objection letter was provided after close-out and includes references to the observation corrections provided in the corrections binder (**Exhibit 36**).

Ms. Holmes said she intends to provide a written response to the district office within 15 days with all the corrections.

**Discussion Items not appearing on the FDA-483**

---

**DISCUSSION ITEM 1**

Devices for which listing is required have not been listed.

Specifically,

You perform design activities of the TSCD device intended to collect patient blood samples for analysis. The device in one configuration is coated with Lithium Heparin anticoagulant and contains a separating gel. The device is centrifuged to separate plasma. FDA informed you that the TSCD was a Class 2 device in October 2013. You have not listed this as a Class 2 device under your facility's registration and listing. You have been distributing and using these devices to report patient results since November 2013.

———

*Annotation:*

Reference: 21 CFR 807.20(a)

**Supporting Evidence and Relevance:**

Mr. Arrington provided me with Theranos' registration and listing which shows they are currently listed as a Class 1 device manufacturer (**Exhibit 50**).

The TSCD device with the Lithium-Heparin coating are centrifuged before shipment to separate plasma as explained in *TSCD Specifications, Document Number: SPC-00010, Revision A* (**Exhibit 9, page 3**).

Investigator received an email form the Center that the TSCD devices are a class two device that requires registration and listing (**Attachment 6**).

26 of 34

US-FDA-0035566

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Theranos has been shipping patient samples from Arizona to California in their TSCD devices since November 13, 2013 as indicated by the statement provided on 9/2/15 (**Exhibit 10**).

FDA informed Theranos in October 2013 that the TSCD was a Class 2 device as the firm indicated themselves in writing and through verbal statements from Ms. Holmes and Ms. King (**Exhibit 33, page 7**).

**Discussion with Management:**

Ms. Holmes said she strongly objects to this observation. The only reason the TSCD is listed as a class 1 device is because FDA said it would show good faith to transition (voluntarily). She said FDA did inform Theranos that that the TSCD was a Class 2 device, but it was not possible to list the device as Class 2 without clearance. They are currently going through the process to complete the submission. She said that they are not aware of any other action they can take to respond to the observation. She said they were told by FDA that the most important thing was to get the test system cleared. She stated that this was an unusual inspection because it was conducted pre-clearance and Theranos was required to be QSR compliant pre-clearance. She is not disagreeing that they are a medical device manufacturer.

Ms. King said she disagreed with that the TSCD should be listed as a Class 2 device; it should be treated as an LDT. She said part of it was miscommunication; different people at FDA have given Theranos different information, but she did not elaborate.

Both Ms. King and Ms. Holmes stated that the Form FDA 483 is not the proper way to discuss observations in this case. The 483 will be released under the Freedom of Information Act (FOIA) and there will be a huge discussion and that FDA has to look at the larger picture here. The result will be in the press and Theranos will have to respond because FDA is making a policy change through this inspection.

Investigator Pilcher reminded those present during the closing meeting that there are certain requirements with listing Class 1, 2 and 3 medical devices. The TSCD is a medical device which Theranos has been manufacturing for some time now. There are quality system requirements that go along with registering and listing devices; FDA is not making policy changes with this inspection.

Ms. Holmes said she intends to provide a written response to the district office within 15 days.

**REFUSALS (SSS)**

Ms. Holmes and Ms. King declined to sign the Affidavits saying it was company policy to not acknowledge, sign or refuse Affidavits.

US-FDA-0035567

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

### GENERAL DISCUSSION WITH MANAGEMENT (SSS/IAP)

The following individuals were present at the closing meeting on 9/16/15:

- Elizabeth Holmes, CEO and Founder
- Heather King, Chief Councel
- Evan North, Associate for Boies Schiller and Flexner
- Nicole Sands as the transcriber
- FDA Investigator Seema Singh
- FDA Investigator Ian Pilcher via phone

Investigator Singh issued Form FDA 483, Inspectional Observations to Ms. Holmes and provided the following warnings:

- The items listed on Form FDA 483 were Investigator's Pilcher and my observations during an inspection of the facility and does not reflect final Agency determination.
- We did not look at all aspects of the Quality System. The firm is responsible for conducting quality audits to identify and correct all Quality System deviations.
- Significant observations that are not corrected may lead to regulatory action including seizure, injunction, prosecution or civil money penalties.
- The firm may respond to the observations by writing to the District Director, at the address listed on Form FDA 483. The response must be received within 15 business days to be considered before determining any regulatory action.

Ms. Holmes elected to annotate all written observations as reported corrected, not verified. On 9/11/15, she had provided two binders of corrections (**Exhibit 62 and 63**). I communicated that I would be unable to verify the corrections not only because of time constraints, but also because there are cases where further review by the District or Center is necessary to verify corrections, or another inspection of the establishment is necessary.

As we went through the observations during the closing meeting and several times during the course of the inspection, Investigator Singh explained that the firm should implement corrective actions for each observation, not just corrections to the items listed; the firm should correct the underlying observation and provide evidence it has been or is in the process of being corrected. Investigator explained this to both Ms. Holmes and Mr. Balwani during the inspection. Ms. Holmes stated that she believes the corrections provided in the corrections binder correct the observation. Investigator Singh asked her if there  were any corrective actions associated with the corrections provided and Ms. Holmes said no. Investigator Singh asked why not and Ms. Holmes said it was because previously the TSCD has been under the LDT framework, not QSR.  Investigator Singh also indicated during the inspection that Theranos has to address devices that have already been

US-FDA-0035568

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

distributed and/or used. Ms. Holmes said that the ongoing method comparison validation study provided on 9/11/15 addresses the concern that devices that have already been used were adequate (**Exhibit 51**).

Ms. Holmes disagreed with all observations saying that they are not subject to QSR because the TSCDs were developed under the LDT framework. Investigators Singh and Pilcher explained several times during the inspection and at the closing meeting that the TSCDs were a Class 2 device and that Theranos was shipping them outside of the Newark CLIA lab. Ms. Holmes explained several times during the inspection that the TSCD devices never leave the Newark CLIA lab because only Theranos employees handle the device.

Ms. King and Ms. Holmes objected that the inspection covered design controls, especially when requesting documents effective in 2013 because they said the TSCD was designed under the LDT framework and not QSR. They also objected that Investigator Singh would not verify corrections so that the 483 could be annotated corrected and verified.

The following describes the firm's objections and justifications during the inspection:
- On 8/28/15, Ms. King provided an objection to specific FDA request for documents stating that they fall outside of FDA jurisdiction (**Exhibit 52**). However, the documents were still provided.
- On 9/1/15, Ms. King provided Theranos' policy and practices related to transitioning to the quality system requirements (**Exhibit 53**). The policy states that Theranos will have a quality system in place  meeting the minimum requires of the Quality System Regulation either (i) at the time of PMA submission (as an inspection for such compliance is a condition of approval), or (ii) prior to market launch for 510(k) cleared tests or products, as applicable.
- On 9/1/15, Ms. King provided a response to the failed design validation assays (**Exhibit 33**). The response included a letter to Investigator Pilcher describing the firm's position on the inspection and the regulatory status of TSCDs.
- On 9/2/15 Ms. King provided a background document to justify why the TSCD were considered and LDT and not under FDA's jurisdiction (**Exhibit 54**). The document describes conversations that Theranos previously had with FDA and states that TSCDs were equipment developed as an LDT. The document includes 42 CFR 493.1254 as justification, and a letter to Commissioner Hamburg.
- On 9/3/15 Ms. King provided another document related to FDA vs LDTs (**Exhibit 55**)
- On 9/9/15, Ms. King provided an objection to FDA's focus on design controls in place in 2013 (**Exhibit 56**). The letter states that the TSCDs were developed as part of LDTs and they are troubled that FDA is assessing compliance, retroactively, with "requirements that are nowhere to be found in regulations or guidance."
- On 9/11/15, Mr. Balwani voluntarily provided a list of employees who are employed under the Newark lab (**Exhibit 57**). Ms. Holmes and Mr. Balwani stated that all Theranos employees at the collection sites report to the Newark lab where the samples are analyzed.

US-FDA-0035569

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA  94304-1111 | EI End: | 09/16/2015 |

Mr. Balwani provided this document to show that the TSCDs are always under the Newark CLIA lab.

- On 9/16/15, Ms. King provided Investigator Singh with a request for verification with respect to planned FDA Form 483 observations (**Exhibit 58**).
- On 9/16/15, Ms. King provided Investigator Singh with an objection letter for refusing to verify corrections (**Exhibit 36**). This letter also includes references to reported observation corrections which are in the correction binders (**Exhibit 62 and 63**). This letter was provided after the closing meeting. Investigators Singh or Pilcher did not review the letter.

During the closing meeting Ms. Holmes stated that she would like the FDA 483 redacted before any FOIA request is made.

Ms. Holmes said she intends to provide a written response to the district office within 15 business days.

## SAFETY AND EFFECTIVENESS CONCERNS (IAP)

The firm provided a report titled Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1) LiHep/LiHep as documentation that the CTN's were safe and effective when used with the modified assay protocols (p-protocol) that Theranos employed in its Newark, CA CLIA lab (**Exhibit 32**). The test report did not include a document number, revision, date, or approval signature. Samartha Anekal and Daniel Young stated that this report was generated in April 2014, but could not provide dated and signed reports to verify their claim. The firm also supplied raw data from this study, and the result printouts included dates of April 15 and 16, 2014 (**Exhibit 31**). The report stated that two samples were collected with the CTN and one sample was collected by venous draw from each patient. The 30 samples were split into 2 groups of 15. Each group of 15 was run on a different set of assays, meaning the study only evaluated 15 patients to validate the performance of the CTN with each assay. These patient samples only consisted of normal healthy patients and therefore only contained sample results in the reference range for these analytes. This study did not demonstrate the effect of the CTN on samples with analyte concentrations outside the reference range, even though these devices are intended to be used to measure samples with analyte concentrations that are outside the reference range. Additionally, the report did not identify the specific analyzer and analytes used as comparators or reference methods for the CTN sample results. The report also did not identify which methods were used to test the CTN samples. Samartha Anekal and Daniel Young stated that the sodium, potassium, chloride, ALT, AST and ALP CTN results were measured using a 510(k) cleared predicate method, but did not specify which method. This testing protocol did not evaluate the CTN samples as they were intended to be used with small volumes on commercially available method modified by Theranos. Samartha Anekal and Daniel Young stated that albumin, bicarbonate, creatinine, glucose, HDL, LDL, total bilirubin, total cholesterol, total protein, triglycerides and urea nitrogen CTN samples were measured with the p-protocol, but did not specify what that protocol was or if it is the method currently being used by the Newark, CA CLIA lab. This study did not adequately validate the safety and effectiveness the CTNs

US-FDA-0035570

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

to be used with the Theranos modified assays because it could not document that the Theranos assays currently in use were ever tested with the CTNs. Additionally, this study did not demonstrate that the CTNs were safe and effective with analyte concentrations at critical medical decision points. Further, multiple analytes (bicarbonate, glucose, calcium, and potassium) failed to meet the firm's acceptance criteria, but the report still concluded that the CTNs demonstrated compatibility with the firm's assays. The report stated that further investigation of these analytes was required, but provided no documentation that this investigation was carried out.

## SAMPLES COLLECTED (SSS)

No official samples were collected. See the Theranos Newark, CA facility EIR for evidence of interstate shipment of the TSCD.

## VOLUNTARY CORRECTIONS (SSS)

There are no verified voluntary corrections to report.

## EXHIBITS COLLECTED

**Exhibit 1:**  Newark and Arizona lab business information (9 pages)
**Exhibit 2:**  CLIA Certificate for Arizona lab (2 pages)
**Exhibit 3:**  Overview of Theranos (1 page)
**Exhibit 4:**  Gross revenue information for TSCDs (1 page)
**Exhibit 5:**  Facility map (3 pages)
**Exhibit 6:**  Statement dated 9/3/15 regarding breakdown of testing methods (1 page)
**Exhibit 7:**  Photocopy of TSCD package (2 pages)
**Exhibit 8:**  Indications for use statement (3 pages)
**Exhibit 9:**  *TSCD Specifications, Document Number: SPC-00010, Revision A* (17 pages)
**Exhibit 10:** Statement dated 9/2/15 regarding first patient sample (1 page)
**Exhibit 11:** Statement dated 8/25/15 of a list of all Theranos LDTs (2 pages)
**Exhibit 12:** Statement dated 8/26/15 for anticoagulants used with LDTs (2 pages)
**Exhibit 13:** Statement dated 8/26/15 of all collection locations for an LDT (3 pages)
**Exhibit 14:** Statement dated 8/26/15 of all assays performed in Newark (5 pages)
**Exhibit 15:** Marketing materials that went into effect on 8/28/15 for a new location in Redwood City, CA (5 pages)
**Exhibit 16:** Statement dated 9/2/15 for a list of assays currently run as LDTs and the number of assays run on fingerstick samples (2 pages)

US-FDA-0035571

| Establishment Inspection Report | FEI: | **3010479366** |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

**Exhibit 17:** Statement dated 9/4/15 for the current list of assays run as LDTs with finger stick samples using a TSCD (2 pages)

**Exhibit 18:** Statement dated 8/26/15 for training documents related to TSCDs (37 pages)

**Exhibit 19:** *Fingerstick and Capillary Collection, Document Number: CL SOP-05020, Revision: E, Effective 09/09/2014* (24 pages)

**Exhibit 20:** Website effective 2/27/15 (27 pages)

**Exhibit 21:** Website test menu larger print effective 2/27/15 (6 pages)

**Exhibit 22:** Marketing materials in place 2/27/15 (37 pages)

**Exhibit 23:** Statement dated 9/4/15 for percent I/S of TSCDs (1 page)

**Exhibit 24:** Shipment information for TSCD devices shipped 2/27/15 (4 pages)

**Exhibit 25:** Organizational chart (2 pages)

**Exhibit 26:** *Quality Manual QM-00001 Revision D* (15 pages)

**Exhibit 27:** Location of each quality activity (2 pages)

**Exhibit 28:** *Design Control, Document Number: QOP-73-00001 Revision: B Effective 06/23/10* (also includes Design Change procedure) (18 pages)

**Exhibit 29:** *Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A* (11 pages)

**Exhibit 30:** *Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep* (7 pages)

**Exhibit 31:** Design validation raw data (68 pages)

**Exhibit 32:** *Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li-Hep* (9 pages)

**Exhibit 33:** Document in response to failed design validation assays (147 pages)

**Exhibit 34:** Excerpt from GP34-A Vol. 30 No. 25 (5 pages)

**Exhibit 35:** Statement dated 9/11/15 regarding Observation 1 (9 pages)

**Exhibit 36:** Objection letter for refusing to verify corrections (17 pages)

**Exhibit 37:** *Requirements, Theranos System, Version 4, Document Number: REQ-00002 Revision: A, Effective Date: 11/07/14* (15 pages)

**Exhibit 38:** *MOP, CTN Li-Hep Coating, Document Number: MOP00601 Revision C* (13 pages)

**Exhibit 39:** *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision A* (13 pages)

**Exhibit 40:** *Failure, Modes and Effects Analysis, SOP-00149 Revision B* (14 pages)

**Exhibit 41:** *Design Control, SOP-00150 Revision C* (14 pages)

**Exhibit 42:** *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069, Revision v4* (15 pages)

**Exhibit 43:** *Process Failure Modes and Effects Analysis (pFMEA), DOC-00068 Revision B* (14 pages)

**Exhibit 44:** This Exhibit number was intentionally left blank

US-FDA-0035572

| Establishment Inspection Report | FEI: | 3010479366 |
|---|---|---|
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

**Exhibit 45:** *Process Failure Modes and Effects Analysis (pFMEA), DOC-00068 Revisions A, B and unreleased C* (41 pages)

**Exhibit 46:** *Design Failure Modes and Effects Analysis (dFMEA), DOC-00069 Revision B, effective 9/11/15* (14 pages)

**Exhibit 47:** Review and approval of DOC-00069, Rev A (3 pages)

**Exhibit 48:** Review and approval of design validation test plan and report (18 pages)

**Exhibit 49:** Review and approval of *Appendix , Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep* (14 pages)

**Exhibit 50:** Registration and Listing Information (17 pages)

**Exhibit 51:** Method comparison validation study for 510(k) submission (26 pages)

**Exhibit 52:** Objection to request for documents dated 8/28/15 (1 page)

**Exhibit 53:** Theranos' policy and practices related to transitioning to the quality system requirements dated 9/1/15 (2 pages)

**Exhibit 54:** Background document on LDTs (28 pages)

**Exhibit 55:** Document explaining FDA vs. LDT, dated 9/3/15 (26 pages)

**Exhibit 56:** Objection to FDA's focus on design controls in place in 2013, dated 9/9/15 (1 page)

**Exhibit 57:** Statement and list of Theranos collection site employees dated 9/11/15 (7 pages)

**Exhibit 58:** Request for verification of 483 observations (4 pages)

**Exhibit 59:** Current marketing material (30 pages)

**Exhibit 60:** Sealed discs for the current website effective as of 8/25/15. Kept locked until the contents were copied and the original was officially sealed on 9/28/15 (5 pages)

**Exhibit 61:** Sealed disc for TV and radio ads running in Arizona. Kept locked until the contents were copied and the original was officially sealed on 9/28/15 (3 pages)

**Exhibit 62:** Corrections Binder (also called the 2015 QSR binder) Sections A-D

**Exhibit 63:** Corrections Binder (also called the 2015 QSR binder) Sections E-F


## ATTACHMENTS

**Attachment 1:** Form FDA 482, Notice of Inspection, dated 08/25/2015, issued to Elizabeth A. Holmes, Chief Executive Officer and Founder (3 pages)

**Attachment 2:** Form FDA 483, Inspectional Observations, dated 09/16/2015, issued to Elizabeth A. Holmes, Chief Executive Officer and Founder

**Attachment 3:** Form FDA 463a, Affidavit, dated 09/16/2015, issued to Elizabeth A. Holmes, Chief Executive Officer and Founder (4 pages)

**Attachment 4:** Form FDA 463a, Affidavit, dated 09/16/2015, issued to Heather M. (4 pages)

**Attachment 5:** Inspectional Assignment (11 pages)

**Attachment 6:** Email confirming class 2 device (1 page)

US-FDA-0035573

| Establishment Inspection Report | FEI: | 3010479366 |
| Theranos, Inc. | EI Start: | 08/25/2015 |
| Palo Alto, CA 94304-1111 | EI End: | 09/16/2015 |

Seema S. Singh, Investigator

Ian A. Pilcher, Investigator

34 of 34

US-FDA-0035574

**theranos**

1701 Page Mill Road     P 650.838.9292     theranos.com
Palo Alto, CA 94304     F 650.838.9165

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

August 25, 2015

To Whom It May Concern:

Pursuant to your request for a list of Theranos Laboratory Developed Tests (LDTs), please
see attached.

Exhibit ___ Page ___ of 2
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

US-FDA-0035616

Theranos Confidential

**CONFIDENTIAL COMMERCIAL INFORMATION**
**EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

| Assay Name | Assay Device Type | Container | Device |
|---|---|---|---|
| alanine amino (alt) (sgpt) | LDT | NT | ADVIA |
| albumin, serum | LDT | NT | ADVIA |
| alkaline phosphatase | LDT | NT | ADVIA |
| automated leukocyte count, BD FORTESSA | LDT | NT | BDFLOW |
| automated platelet count | LDT | NT | DREW |
| bilirubin, total | LDT | NT | ADVIA |
| calcium | LDT | NT | ADVIA |
| carbon dioxide, blood | LDT | NT | ADVIA |
| chloride, blood | LDT | NT | ADVIA |
| cholesterol, bld/serum | LDT | NT | ADVIA |
| c-reactive protein | LDT | NT | ADVIA |
| creatinine | LDT | NT | ADVIA |
| Fasting Glucose in Serum or Plasma | LDT | NT | ADVIA |
| ferritin | LDT | NT | ADVIA |
| hematocrit, by centrifugation | LDT | NT | DREW |
| hemoglobin | LDT | NT | DREW |
| Total iron | LDT | NT | ADVIA |
| Total Iron binding capacity | LDT | NT | ADVIA |
| lipase | LDT | NT | ADVIA |
| lipoprotein (HDL) | LDT | NT | ADVIA |
| transferase (ast) (sgot) | LDT | NT | ADVIA |
| lipoprotein, blood (LDL) | LDT | NT | ADVIA |
| magnesium | LDT | NT | ADVIA |
| triglycerides, Serum or Plasma | LDT | NT | ADVIA |
| mean cell volume | LDT | NT | DREW |
| urea nitrogen | LDT | NT | ADVIA |
| uric acid, blood | LDT | NT | ADVIA |
| phosphorus | LDT | NT | ADVIA |
| potassium, serum | LDT | NT | ADVIA |
| protein total, serum | LDT | NT | ADVIA |
| rbc sed rate, automated | LDT | NT | IMAGING |
| sodium, serum | LDT | NT | ADVIA |
| c-reactive protein, hs | LDT | NT | ADVIA |

Exhibit 11   Page 2 of 2
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

Theranos Confidential

US-FDA-0035617



1701 Page Mill Road     P 650.838.9292     theranos.com
Palo Alto, CA 94304     F 650.838.9165

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

August 26, 2015

To Whom It May Concern:

Pursuant to your request for a list of all assays performed in the Theranos high-complexity laboratory in Newark, please see the attached.

It is our view that this information relates to activities that fall outside of the Food and Drug Administration's (FDA) jurisdiction and the reasonable scope of any lawful FDA inspection. We are voluntarily providing this document in a spirit of cooperation, but we do so without prejudice to our ability to object to FDA's request, and hereby reserve all of our rights.

Exhibit 14  Page 1 of 5
Theranos, Inc.
Palo Alto, CA
FEI: 3010479366, 08/25/15-09/16/15, SSS

State of California—Health and Human Services Agency

Calif. Dept. of Public Health
Laboratory Field Services
850 Marina Bay Parkway
Bldg. P, 1st Floor
Richmond, CA 94804-6403

# LABORATORY TESTING DECLARATION

| Name of laboratory (as listed on CLIA certificate) | Laboratory location | CLIA number |
|---|---|---|
| Theranos, Inc. | 7373 Gateway Blvd., Newark, CA 94560 | 05D2025714 |

Check and name all tests (by manufacturer and equipment) which are performed in your laboratory and indicate the annual volume of tests performed by subspecialty. Attach separate page if additional space is needed.

☐ Waived tests only

☐ Physician performed microscopy procedures only

010 Histocompatibility _____

Annual Volume _____

110 Bacteriology
- ☑ Gram stain bioMerieux Previ Color Wellcolex
- ☐ Direct antigen _____
- ☑ Limited identification BD Phoenix & bioMerieux Vitek MS
  - ☑ Throat Culture
  - ☑ Urine Culture
  - ☑ G.C. Culture
- ☑ ID genus and species BD Phoenix & bioMerieux Vitek MS
- ☑ Susceptibility testing BD Phoenix
- ☐ C. difficile Ag _____
- ☑ Molecular diagnostics PerkinElmer MSM1 & Roche Lightcycler, H.pylori, CT/NG, C. diff

Annual Volume 7611

115 Mycobacteriology
- ☐ Acid fast stain _____
- ☐ ID acid fast _____
- ☐ ID and/or susceptibility for M.T.B. _____
- ☐ ID and susceptibility for all acid fast _____
- ☐ Molecular diagnostics _____

Annual Volume _____

120 Mycology
- ☐ ID yeast and/or dermatophytes _____
- ☐ ID genus _____
- ☑ ID genus and species bioMerieux Vitek MS

Annual Volume 1386

130 Parasitology
- ☐ Wet mounts and/or pinworms preparation _____
- ☐ ID conc. and/or stain _____

Annual Volume 95

140 Virology
- ☐ Direct antigen _____
- ☐ ID _____
- ☑ Molecular diagnostics CT, GC, HIV, HBV, HCV - Abbott m2000 rt

Annual Volume 8173

210 Syphilis serology
- ☐ FTA-ABS _____
- ☑ RPR BD Macro-Vue RPR Test
- ☐ RST _____
- ☐ VDRL _____
- ☐ MHA-TP _____

Annual Volume 4455

220 General immunology
- ☑ Alpha–1 antitrypsin Siemens ADVIA 2400 XPT
- ☑ Alpha–fetoprotein Siemens Centaur XP
- ☑ Antihuman immunodeficiency virus (HIV) Bio-Rad Evolis
- ☑ Antinuclear antibody Bio-Rad Evolis
- ☑ Antistreptolysin O Siemens ADVIA 2400 XPT
- ☑ Complement C3 Siemens ADVIA 2400 XPT
- ☑ Complement C4 Siemens ADVIA 2400 XPT
- ☑ CRP Siemens ADVIA 2400 XPT
- ☑ Hepatitis A antibody DiaSorin Liaison
- ☑ Hepatitis B core Ab Siemens Immulite 2000 XPi
- ☑ HBsAb Siemens Immulite 2000 XPi
- ☑ HBsAg Siemens Centaur XP
- ☑ HBeAg Siemens Centaur XP
- ☑ Hepatitis C Ab Siemens Centaur XP
- ☑ H. pylori Ab Siemens Immulite 2000 XPi
- ☑ IgA Siemens ADVIA 2400 XPT
- ☑ IgE Siemens Immulite 2000 XPi
- ☑ IgG Siemens ADVIA 2400 XPT
- ☑ IgM Siemens ADVIA 2400 XPT
- ☐ Infectious mononucleosis _____
- ☑ Rheumatoid factor Siemens ADVIA 2400 XPT
- ☑ Rubella Siemens Centaur XP, Siemens Immulite 2000 XPi

Annual Volume 24298

310 Routine chemistry
- ☑ Alanine aminotransferase (ALT/SGPT) Siemens ADVIA 2400 XPT
- ☑ Albumin Siemens ADVIA 2400 XPT
- ☑ Alkaline phosphatase Siemens ADVIA 2400 XPT
- ☑ Ammonia Siemens ADVIA 2400 XPT
- ☑ Amylase Siemens ADVIA 2400 XPT
- ☑ Aspartate aminotransferase (AST/SGOT) Siemens ADVIA 2400 XPT
- ☑ Bilirubin, total Siemens ADVIA 2400 XPT
- ☐ Blood gases: ☐pH ☐pCO2 ☐pO2
- ☑ Calcium Siemens ADVIA 2400 XPT
- ☑ CEA   Siemens Centaur XP
- ☑ Chloride Siemens ADVIA 2400 XPT
- ☑ Cholesterol, high density lipoprotein (HDL) Siemens ADVIA 2400 XPT
- ☑ Cholesterol, total Siemens ADVIA 2400 XPT
- ☑ CO2 Siemens ADVIA 2400 XPT
- ☑ Creatine kinase Siemens ADVIA 2400 XPT
- ☐ Creatine kinase, iso and CKMB
- ☑ Creatinine Siemens ADVIA 2400 XPT, Siemens DCA Vantage
- ☐ Cryoglobulin _____
- ☑ Ferritin Siemens ADVIA 2400 XPT
- ☑ Folate Siemens Centaur XP
- ☑ Gamma GT Siemens ADVIA 2400 XPT
- ☑ Glucose, serum Siemens ADVIA 2400 XPT
- ☐ Glucose, whole blood
- ☑ Iron, total Siemens ADVIA 2400 XPT
- ☑ TIBC Siemens ADVIA 2400 XPT
- ☑ Lactate dehydrogenase (LDH) Siemens ADVIA 2400 XPT
- ☐ LDH isoenzymes
- ☑ Lactic acid Siemens ADVIA 2400 XPT
- ☑ Magnesium   Siemens ADVIA 2400 XPT
- ☐ Osmolality
- ☑ Phosphorus   Siemens ADVIA 2400 XPT
- ☑ Potassium Siemens ADVIA 2400 XPT
- ☑ PSA Siemens Immulite 2000 XPi, Theranos
- ☑ Sodium Siemens ADVIA 2400 XPT
- ☑ Total protein Siemens ADVIA 2400 XPT
- ☑ Triglycerides Siemens ADVIA 2400 XPT
- ☑ Troponin—1 Siemens Centaur XP
- ☑ Urea nitrogen Siemens ADVIA 2400 XPT
- ☑ Uric acid Siemens ADVIA 2400 XPT
- ☑ Vitamin B-12 Siemens Centaur XP

Annual Volume 560869

320 Urinalysis
- ☑ Dipsticks Beckman Coulter IRIS
- ☑ Microscopy Beckman Coulter IRIS

Annual Volume 17625

330 Endocrinology
- ☑ Cortisol Siemens Immulite 2000 XPi
- ☑ Estradiol Siemens Centaur XP
- ☑ Estriol   Siemens Immulite 2000 XPi
- ☑ Free thyroxine (free T–4) Siemens Immulite 2000 XPi
- ☑ FSH   Siemens Centaur XP
- ☑ Human chorionic gonadotropin, serum (HCG) Siemens Centaur XP
- ☑ Human chorionic gonadotropin, urine (HCG) Siemens Centaur XP
- ☑ LH   Siemens Centaur XP
- ☑ Progesterone Siemens Centaur XP
- ☑ Prolactin Siemens Centaur XP
- ☑ Testosterone   Siemens Immulite 2000 XPi
- ☑ Thyroid–stimulating hormone (TSH) Siemens Immulite 2000 XPi
- ☑ Thyroxine (T–4) Siemens Immulite 2000 XPi
- ☑ Triiodothyronine (T–3) Siemens Immulite 2000 XPi
- ☑ T–3 uptake Siemens Centaur XP

Annual Volume 102680

Exhibit 14   Theranos, Inc.   Palo Alto, CA   FEI: 3010479366, 08/25/15-09/16/15, SSS

Page 2 of 5

LAB 144 A (7/07)

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT
CONFIDENTIAL TREATMENT REQUESTED

US-FDA-0035624

340 Toxicology
- ☑ Acetaminophen   Siemens ADVIA 2400 XPT
- ☐ Alcohol, blood
- ☐ Amikacin
- ☑ Blood lead   Magellan LeadCare II
- ☑ Carbamazepine   Siemens Centaur XP
- ☑ Digoxin   Siemens Centaur XP
- ☑ Drug screen   Siemens ADVIA 2400 XPT
- ☐ Drug confirmation
- ☐ Ethosuximide
- ☑ Gentamicin   Siemens Centaur XP
- ☐ Lidocaine
- ☑ Lithium   Siemens ADVIA 2400 XPT
- ☑ Phenobarbital   Siemens Centaur XP
- ☑ Phenytoin   Siemens Centaur XP
- ☐ Primidone
- ☐ Procainamide (and metabolite)
- ☐ Quinidine
- ☑ Salicylates   Siemens ADVIA 2400 XPT
- ☑ Theophylline   Siemens Centaur XP
- ☑ Tobramycin   Siemens Centaur XP
- ☑ Valproic acid   Siemens Centaur XP

Annual Volume ____ 2765 ____

400 Hematology
- ☑ Erythrocyte count (RBC)   Siemens 2120 and Drew
- ☑ Hematocrit   Siemens 2120 and Drew
- ☑ Hemoglobin   Siemens 2120 and Drew
- ☑ Leukocyte count (WBC)   Siemens 2120, BD Forlessa
- ☑ Platelet count   Siemens 2120 and Drew
- ☑ Eosinophil count   Siemens 2120 and Drew
- ☑ Automated WBC differential   Siemens 2120 and Drew
- ☑ Manual WBC differential   Siemens Autoslide
- ☑ Retic count   Siemens 2120 and Drew
- ☐ Sickle cell
- ☐ ACT/bleeding time
- ☐ Factor assay
- ☑ Fibrinogen   Siemens BCSXP
- ☐ FDP
- ☑ Partial thromboplastin time (PTT)   Siemens BCSXP
- ☑ Prothrombin time   Siemens BCSXP
- ☐ Thrombin time
- ☑ Sedimentation rate   Streck ESR Autoplus
- ☐ Semen analysis
- ☐ CSF/body fluid counts

Annual Volume ____ 162538 ____

510 ABO and Rh type
- ☑ ABO group   Eldon Biological EldonCards
- ☑ D(Rho) type

Annual Volume ____ 2382 ____

520 Ab detection transfusion
- ☐ Unexpected antibody detection

Annual Volume _____

530 Ab detection nontransfusion
- ☐ Unexpected antibody detection

Annual Volume _____

540 Antibody ID
- ☐ Antibody identification

Annual Volume _____

550 Compatibility testing

Annual Volume _____

610 Histopathology

Annual Volume _____

620 Oral pathology

Annual Volume _____

630 Cytology

Annual Volume _____

800 Radiobioassay
- ☐ Schilling test
- ☐ Blood volume

Annual Volume _____

900 Clinical cytogenetics
- ☐ Cytogenetics
- ☐ Molecular diagnostics

Annual Volume _____

List all other tests performed and annual test volume.

See Attachment A.

This statement to be signed by owner or person legally authorized to bind the owner and the laboratory director.
I declare under penalty of perjury that foregoing statements are true and correct.

| Director signature | Name (typed) | Date |
|---|---|---|
| *[signature: Sunil S. Dhawan]* | Sunil Dhawan | 6/10/15 |

| Owner signature | Name (typed) | Date |
|---|---|---|
| *[signature]* | Elizabeth A. Holmes | 6/12/15 |

LAB 144 A (7/07)  Page 2

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT
CONFIDENTIAL TREATMENT REQUESTED

Exhibit 14, Page 3 of 5
Theranos, Inc.
Palo Alto, CA
FEI: 3004479366, 08/25/15-09/16/15, SSS

**Attachment A to Laboratory Testing Declaration [LAB 144 A (7/07)]**

All tests listed are included in the "Annual Volume" as reported in page 1 and 2 of the form

| Specialty | Assay Name | Device |
|---|---|---|
| 110 Bacteriology | E.Coli Shiga Toxin | BIOMERIEUX VITEK MS |
| | Stool Culture, Vibrio | BIOMERIEUX VITEK MS |
| | Stool Culture Bacteria each | BIOMERIEUX VITEK MS |
| 130 Parasitology | Ova and Parasites Smears | MANUAL |
| 140 Virology | herpes simplex 1, ag, if | DIASORIN LIAISON |
| | herpes simplex 2, ag, if | DIASORIN LIAISON |
| | HIV 4th gen | BIO-RAD EVOLIS |
| | HIV Confirmatory | BIO-RAD MULTISPOT |
| 210 Syphilis serology | Treponema pallidum | SIEMENS IMMULITE |
| 220 General Immunology | beta-2 protein | SIEMENS ADVIA XPT |
| | Borrelia burgdoferi antibody quant | DIASORIN LIAISON |
| | CA 125 | SIEMENS CENTAUR |
| | CA 15-3 | SIEMENS CENTAUR |
| | CA 19-9 | SIEMENS CENTAUR |
| | CA 27.29 | SIEMENS CENTAUR |
| | cardiolipin antibody | DIASORIN ETIMAX |
| | cmv antibody | DIASORIN LIAISON |
| | cmv antibody, igm | DIASORIN LIAISON |
| | dna antibody | DIASORIN ETIMAX |
| | epstein-barr antibody IgG | DIASORIN LIAISON |
| | epstein-barr antibody IgM | DIASORIN LIAISON |
| | epstein-barr antibody, nuclear antigen, IgG | DIASORIN LIAISON |
| | microsomal antibody | SIEMENS CENTAUR |
| | mumps antibody, IgG | DIASORIN LIAISON |
| | nuclear antigen antibody, Jo-1 | DIASORIN ETIMAX |
| | nuclear antigen antibody, RNP | DIASORIN ETIMAX |
| | nuclear antigen antibody, Scl-70 | DIASORIN ETIMAX |
| | nuclear antigen antibody, Sm | DIASORIN ETIMAX |
| | nuclear antigen antibody, SSA | DIASORIN ETIMAX |
| | nuclear antigen antibody, SSB | DIASORIN ETIMAX |
| | QuantiFERON Mitogen | BIO-RAD EVOLIS |
| | QuantiFERON NIL | BIO-RAD EVOLIS |
| | QuantiFERON TB | BIO-RAD EVOLIS |
| | rubeola antibody, IgG | DIASORIN LIAISON |
| | TB Gold Quantiferon EIA | BIO-RAD EVOLIS |
| | Toxoplasma IgG | DIASORIN LIAISON |
| | Toxoplasma IgM | DIASORIN LIAISON |
| | varicella-zoster antibody, IGG | DIASORIN LIAISON |
| 310 Routine chemistry | apo a-1 | SIEMENS ADVIA XPT |
| | apo b | SIEMENS ADVIA XPT |
| | Assay, rbc cholinesterase | SIEMENS ADVIA XPT |
| | bilirubin, direct | SIEMENS ADVIA XPT |
| | c-peptide | SIEMENS CENTAUR |
| | cystatin c | SIEMENS ADVIA XPT |
| | Deoxypyridinoline DPD (Pyrilinx) | SIEMENS IMMULITE |
| | glycated protein | SIEMENS ADVIA XPT |
| | glycosylated hemoglobin | SIEMENS DCA VANTAGE |
| | glycosylated hemoglobin | SIEMENS ADVIA XPT |
| | haptoglobin, quant | SIEMENS ADVIA XPT |

Exhibit 14  Page 4 of 5
Theranos, Inc.
Palo Alto, CA
FBI: 301047956, 082515-09/16/15, SSS

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

CONFIDENTIAL TREATMENT REQUESTED

### Attachment A to Laboratory Testing Declaration [LAB 144 A (7/07)]

| | | |
|---|---|---|
| | HER-2/neu | SIEMENS CENTAUR |
| | homocystine | SIEMENS CENTAUR |
| | lipase | SIEMENS ADVIA  XPT |
| | Microalbumin | SIEMENS DCA VANTAGE |
| | myoglobin | SIEMENS CENTAUR |
| | natriuretic peptide | SIEMENS CENTAUR |
| | occult bld feces, 1-3 tests | SERACULT FECAL OCCULT BLOOD TEST KIT |
| | occult bld feces, 3 tests | SERACULT FECAL OCCULT BLOOD TEST KIT |
| | prealbumin | SIEMENS ADVIA  XPT |
| | thyroglobulin | SIEMENS IMMULITE |
| | thyroglobulin antibody, IgG | SIEMENS CENTAUR |
| | transferrin | SIEMENS ADVIA  XPT |
| | vitamin d, 25 hydroxy | SIEMENS CENTAUR |
| 320 Urinalysis | urine culture | MANUAL |
| 330 Endocrinology | ACTH | SIEMENS IMMULITE |
| | Androstenedione | SIEMENS IMMULITE |
| | Assay of thyroid activity | SIEMENS IMMULITE |
| | calcitonin | SIEMENS IMMULITE |
| | dehydroepiandrosterone sulfate (dheas) | SIEMENS CENTAUR |
| | ft-3, free | SIEMENS CENTAUR |
| | gastrin | SIEMENS IMMULITE |
| | growth hormone (hgh) | SIEMENS IMMULITE |
| | IGF-1 | SIEMENS IMMULITE |
| | insulin | SIEMENS CENTAUR |
| | parathormone | SIEMENS CENTAUR |
| | pregnancy , blood qual | SIEMENS IMMULITE |
| | pregnancy , urine | SIEMENS IMMULITE |
| | sex hormone binding globulin (shbg) | SIEMENS IMMULITE, THERANOS |
| | sodium in urine 12 hour | SIEMENS ADVIA  XPT |
| 340 Toxicology | Amphetamines | SIEMENS ADVIA  XPT |
| | barbiturates | SIEMENS ADVIA  XPT |
| | barbiturates, urine | SIEMENS ADVIA  XPT |
| | Benzodiazepines | SIEMENS ADVIA  XPT |
| | benzodiazepines, urine | SIEMENS ADVIA  XPT |
| | Cocaine | SIEMENS ADVIA  XPT |
| | Cyclosporine | SIEMENS CENTAUR |
| | dipropylacetic acid | SIEMENS CENTAUR |
| | dolophine (methadone) | SIEMENS ADVIA  XPT |
| | EBV early (D) Antigen IgG | DIASORIN LIAISON |
| | Ecstasy | SIEMENS ADVIA  XPT |
| | Ethanol | SIEMENS ADVIA  XPT |
| | heroin (opiate screen) | SIEMENS ADVIA  XPT |
| | Marijuana (THC) | SIEMENS ADVIA  XPT |
| | methadone metabolite | SIEMENS ADVIA  XPT |
| | Phencyclidine (PCP) | SIEMENS ADVIA  XPT |
| | Propoxyphene | SIEMENS ADVIA  XPT |
| | Tricyclic Antidepressants | SIEMENS ADVIA  XPT |
| | Tricyclic Antidepressants, urine | SIEMENS ADVIA  XPT |
| | vancomycin, Peak Level | SIEMENS CENTAUR |
| 400 Hematology | fibrin degradation, quant | SIEMENS BCSXP |
| | mean cell volume | SIEMENS ADVIA 2120, DREW |

**CONFIDENTIAL COMMERCIAL INFORMATION**
**EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

**CONFIDENTIAL TREATMENT REQUESTED**

Exhibit 14 _ Page 5 _ of 5 _
Theranos, Inc.
Palo Alto, CA
FEI: 3010079366, 08/25/15-09/16/15, SSS



1701 Page Mill Road      P 650.838.9292      theranos.com
Palo Alto, CA 94304      F 650.838.9165

CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

September 2, 2015

To Whom It May Concern:

Pursuant to your request, please see the chart for below for a list of assays currently run as LDTs and the number of assays that have been run as LDTs on finger stick samples through Theranos' CLIA-certified high-complexity laboratory. Note that this list replaces the list of LDTs provided to you on August 25, 2015, which incorrectly listed lipase as an LDT.

| Description | Initial visit date | # of tests reported since initial visit date |
|---|---|---|
| alanine amino (alt) (sgpt) | 11/6/2013 | 23253 |
| Albumin | 11/7/2013 | 24254 |
| alkaline phosphatase | 11/7/2013 | 22812 |
| automated leukocyte count | 7/28/2014 | 27070 |
| automated platelet count | 7/28/2014 | 27114 |
| bilirubin, total | 11/7/2013 | 24450 |
| Calcium | 11/6/2013 | 24419 |
| carbon dioxide | 11/6/2013 | 24465 |
| Chloride | 11/6/2013 | 24462 |
| Cholesterol | 11/6/2013 | 19156 |
| c-reactive protein, hsCRP | 12/8/2013 | 3700 |
| Glucose | 11/6/2013 | 26462 |
| Ferritin | 12/4/2013 | 3184 |
| Hematocrit | 7/28/2014 | 27091 |
| Hemoglobin | 7/28/2014 | 27114 |
| Magnesium | 2/20/2014 | 1650 |
| mean cell volume | 7/28/2014 | 27114 |
| Phosphorus | 2/15/2014 | 1136 |
| Potassium | 11/6/2013 | 24780 |
| protein total | 11/7/2013 | 22788 |
| rbc sed rate, automated | 11/8/2013 | 2785 |
| Sodium | 11/6/2013 | 24489 |
| Total iron | 12/17/2013 | 2657 |
| total Iron binding capacity | 2/13/2014 | 1699 |
| transferase (ast) (sgot) | 11/7/2013 | 23210 |
| Triglycerides | 11/6/2013 | 18171 |
| urea nitrogen | 11/6/2013 | 24382 |
| uric acid | 11/12/2013 | 1725 |

Exhibit 16  Page 1 of 2
Theranos, Inc.
Palo Alto, CA
FDI: 3010479366, 08/25/15-09/16/15, SSS



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

This is yet another example of FDA requesting information outside its jurisdiction.  As we have repeatedly mentioned elsewhere, this information is unrelated to the Food and Drug Administration's (FDA) jurisdiction and the reasonable scope of any lawful FDA inspection.  This information relates to the internal operations of Theranos' CLIA-certified clinical laboratory, which, like most clinical laboratories, develops and runs LDTs that are not overseen by FDA.  Because we are committed to working with the FDA, we are voluntarily providing this document, but we do so without prejudice to our ability to object to FDA's request, and hereby reserve all of our rights.

Exhibit 16, Page 2 of 2
Theranos, Inc.
Palo Alto, CA
FEI: 3014479366, 08/25/15-09/16/15, SSS

US-FDA-0035634