# EXHIBIT 17



1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

## Theranos Response to FDA 483 (Palo Alto, CA)

October 7, 2015

Attn: Kathleen Lewis
District Director
San Francisco District Office
U.S. Food and Drug Administration
1431 Harbor Bay Parkway
Alameda, CA 94502-7070

Re:    **FDA Form 483, Theranos, Inc. (Palo Alto, California)**
        **FEI Number 3010479366**

Theranos, Inc. ("Theranos") submits this response to the FDA Form 483, dated September 16, 2015, regarding the above-referenced inspection of the Theranos facility located at 1701 Page Mill Road, Palo Alto, CA ("Palo Alto").

Theranos values its ongoing working relationship with the U.S. Food and Drug Administration ("FDA" or "Agency"). We respectfully note that the basis for the Form 483s issued to Theranos effects what we believe is a fundamental change in FDA policy, undertaken without prior notice: namely, the retroactive application of full Quality System Regulation ("QSR") standards to Theranos' laboratory developed tests ("LDTs") prior to transition to device status. As of the time of FDA's inspection, Theranos was already well along in its efforts to transition its LDTs to full QSR compliance by the time of 510(k) clearance.[1] However, this transition point was deemed inconsistent with an apparent change in enforcement policy predicating this inspection, as communicated by FDA to its on-site inspectors, and therefore disregarded at the time of the inspection. Nonetheless, in light of FDA's apparent shift in policy toward retroactive application of QSR standards, Theranos did immediately and completely cut over to operations under its QSR system. Theranos is fully committed to compliance with all applicable FDA requirements and to ensuring a strong and sustainable quality system. As detailed herein, the company already has undertaken comprehensive steps to address each of FDA's observations, and Theranos' senior management is committed to working closely and cooperatively with FDA to close out any remaining issues. In addition, we again respectfully request FDA give further consideration to all of these observations in light of the fact that a retroactive QSR policy pre-clearance of the Theranos Sample Collection Device ("TSCD") is independent of Theranos' ongoing work with the agency on TSCD clearance, and considering that Theranos has taken the following steps during the 15 day response period as part of its good

---

[1] At the time of this FDA inspection, Theranos did not have an open submission into FDA for the Theranos Sample Collection Device and Theranos *did have a quality system in place*. Indeed, it was acting in compliance with CLIA quality systems and continuing its ongoing work to transition to QSR systems while it worked with FDA on resubmitting its 510(k) for the Theranos Sample Collection Device.

CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos        TS-1068300



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

faith effort to work with FDA and to demonstrate the quality of any TSCDs used by its high complexity CLIA certified laboratory:

- On September 15, 2015, Theranos re-submitted a 510(k) for the TSCDs for the hematology indications.
- On September 20, 2015, in response to FDA's new policy decision, Theranos communicated its actions regarding the status of its TSCDs to Dr. Alberto Gutierrez.
- On October 7, 2015, Theranos re-submitted a 510(k) for the TSCDs using Lithium Heparin.
- On October 7, 2015, Theranos re-submitted a 510(k) for the TSCDs using K2EDTA.

As FDA is aware, federal regulations expressly contemplate that laboratories will develop, validate, and use equipment and test systems as part of their LDTs.[2] At the same time, because Theranos also understands that FDA's positions and interpretations of applicable requirements may evolve over time, it has proactively sought guidance, clarification, and feedback from FDA, through almost continuous engagement over the past two years, to understand FDA's positions regarding Theranos' LDTs and the framework for transitioning such tests to cleared status. Significantly, given its ongoing interactions with the Agency, Theranos believed at all times that it was acting in accordance with all applicable legal requirements and consistent with FDA guidance and enforcement discretion. Theranos also reasonably expected that any changes to the Agency's enforcement discretion regarding the use of TCSDs would be clearly communicated by FDA before undertaking any formal regulatory actions and that fair processes and a reasonable transition period would accompany such changes.

Despite this reasonable expectation, FDA's change in policy regarding Theranos' use of TSCDs appears to be the cause of inspection's unusual focus on Theranos' QSR compliance retroactive to 2013. The observations noted during this inspection seem to be the result of that change and, because the inspectors deemed the current status of Theranos' QSR compliance irrelevant, do not reflect our current state of compliance. FDA's position is particularly surprising given that, with respect to LDTs generally, FDA's Draft Framework notes that FDA is contemplating an extended transition period for QSR requirements *after the date that its final LDT framework guidance is published*. To our knowledge, FDA has never articulated a policy that QSRs – including design controls – are, upon transition to device status, retroactively applicable to the day a company started developing and using an LDT, and that systems developed as LDTs going through the submission process with the FDA have to be QSR compliant *prior* to clearance. Accordingly, with this inspection, FDA has implemented a fundamental policy shift that is uniquely and highly prejudicial to Theranos, a company that has embraced FDA's developing framework for the transition of LDTs to compliance with device requirements, has proactively submitted 510(k)s for FDA review, and has gone beyond FDA's

---

[2] 42 C.F.R. §§ 493.1253(b)(2) & 493.1254(b). The TSCD was validated as part of an LDT and operated under CLIA quality systems throughout the 2013-15 time period, in accordance with applicable regulations, while Theranos worked with FDA to obtain clearance.

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                    TS-1068301



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

Draft Framework to publicly commit that all of its LDTs would be submitted to FDA for clearance.

Nonetheless, as a direct result of its commitment to and support of FDA's developing framework, Theranos was able to explain and document prior to close of the inspection that the observations *had already been corrected* by cutting over to the QSR system that was already in place, but not yet being followed as the TSCD had not yet been cleared.[3] Indeed, Theranos has already submitted a 510(k) for the TCSD as a Class II device, and, since the inspection, we have remained in close communication with FDA, including with Dr. Alberto Gutierrez, Director of OIR, to reiterate and confirm our ongoing commitment to working with the FDA and protecting the public health, including concrete steps taken that reflect that commitment.

Theranos hopes to continue its positive working relationship with FDA developed in connection with the clearance of Theranos' HSV-1 test and related CLIA waiver. Theranos also believes that FDA's mission and the public health are best served by fostering clear and consistent communications with industry participants, especially with companies who, like Theranos, are interested in working cooperatively with FDA, and who support FDA's initiatives to implement comprehensive federal regulation of LDTs. While Theranos reserves all rights with respect to our legal position regarding our activities to date, going forward, it is our hope that FDA's expectations of Theranos will be clearly and consistently communicated, both with respect to the status of our tests and compliance with QSR.

Theranos has taken the specific steps noted below to address each of FDA's observations.

---

## Observation 1

*Design validation did not ensure the device conforms to defined user needs and intended uses. Specifically, you provided Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep, raw data, and Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep as evidence of design validation which was conducted in April 2014. The validation:*

   A. *Fails to address all assays that can be performed using the TSCD device. Your CEO provided a list of assays that can be performed using the TSCD device which include uric acid, total iron binding capacity and magnesium. These assays were not specifically addressed, with acceptance criteria, in your design validation. You have*

---

[3] When asked to verify these corrections prior to closing out the investigation, Investigator Singh said that she would neither state that the action was corrected, nor verify our corrective actions. Therefore, Theranos asked Investigator Singh to annotate all the Observations with "Reported corrected, not verified" in observance that the corrections that had already occurred prior to the close of FDA's inspection.

CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos                                      TS-1068302



*performed approximately 1725 uric acid tests, 1699 total iron binding capacity tests, and 1650 magnesium tests, using the TSCD device, and reported the results to patients.*

B. *Of the assays you addressed in design validation, bicarbonate, calcium, glucose and potassium failed acceptance criteria and required further investigation; however there is no reference to any documentation to address these failures. You provided additional data on these assay failures, however the test plan and explanation of results for the failed assays were written on 8/29/15 (during this inspection).*

**Response**: [Annotated as "Reported corrected, not verified" at closeout.]

As the Agency is aware, Theranos strongly disagrees with the FDA's position that QSR requirements should be applied to the TSCDs prior to clearance and while Theranos is working with the agency through the submission process. Theranos developed the TSCDs under the LDT framework at Theranos' high-complexity CLIA laboratory and in accordance with the CLIA laboratory quality system. Theranos has performed validation studies to ensure the reliability of each of its assays for which Theranos tests patient samples. Theranos conducted these validation procedures pursuant to the CLIA standards.

The TSCDs were used solely at Theranos Wellness Centers that are operated by Theranos and subject to oversight by its CLIA certified lab in Newark, California. In accordance with the CLIA regulations, these Wellness Centers are part of the Newark lab's pre-analytic systems and as such are extensions of the Newark, California CLIA-certified high complexity laboratory. In particular, pursuant to the CLIA regulations for these systems, the lab follows written policies and procedures, and monitors and evaluates the quality of sample collection, preparation, labeling, storage, and transportation. Theranos personnel at our Wellness Centers conduct all of these activities. *See* 42 C.F.R. §§ 493.1240 and 493.1242. *See also* 42 C.F.R. §§ 493.43(a)-(b); 493.55; 493.17(c)(4); and 493.25. *See also* Figure 1, attached (diagram of intracompany use of TSCD from November 2013 to September 2015).

However, in applying retrospective design validation expectations, this observation incorrectly focuses on validation of assays, when the design validation is applicable to the TSCD themselves. To our knowledge, FDA has not otherwise required blood collection devices to be validated against all assays. The intended use of the TSCD is to *collect and transport* blood; it is not specific to any particular assay, as is the case for the vast majority of such collection devices cleared by FDA. Other tube makers are required to validate to a representative sample of assays, which is what Theranos has done.

When conducting LDTs, there is an undefined array of potential assays that ultimately depends on which analytes a clinical laboratory like Theranos chooses to measure. It is incumbent upon the laboratory to ensure compatibility of any sample collection tube used with their assays they plan to run. The assay requirements are then developed assay-by-assay as they are taken through

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos        TS-1068303



1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

the FDA clearance and approval process, in accordance with REQ-00002[4], and the requirements for a given assay change based on the specific analyte in question.

Theranos has followed its internal policy, and the policy that FDA has publicly articulated, to be QSR compliant by the time of clearance of the TSCD. In this case, FDA is reviewing 2013 and early 2014 compliance, which is only indicative of what Theranos did under the LDT framework, as opposed to the current state of compliance, which is relevant to our ongoing FDA submissions. FDA has never stated a policy that QSRs should be retroactively applicable to the day a company starts using an LDT, nor has FDA ever articulated a clear policy on precisely how companies should transition from LDT to QSR. Any transition policy should provide adequate notice, time, and flexibility to allow companies to develop appropriate systems to adapt their CLIA operations to QSR.

Despite the above concerns regarding the Agency's position, Theranos was in the process of transitioning to full QSR compliance by the time of 510(k) clearance on the TSCD and, in light of FDA's shift in policy toward retroactive application of QSR standards, Theranos immediately and completely cut over to the QSR system it already had established by the close of the inspection. Inconsistencies identified in this observation are due to Theranos transitioning the TSCD from an LDT into a QSR framework. In immediate response to the observations by FDA Investigator Singh, Theranos routed and approved the identified design validation and test data documentation through the Theranos Document Control process, as per SOP-00126[5], during the course of the inspection. As noted in the observation, the documents were identified as corrected.

Theranos has opened CAPA-00035[6] to document the full investigation of the cited objectionable condition and determine if further corrective action is required.

Regarding which assays can be performed using the TSCD, Theranos updated the TSCD Specification document SPC-00010[7] on September 11, 2015 to revision D under DCO-00581 to specifically identify all analytes with which the Li-Hep and EDTA TSCDs must be compatible. The updated specification now documents all assays that use the Li-Hep and EDTA TSCDs. DCO-00581 also released the updated TSCD Trace Matrix, DOC-00146[8] revision 2, which traces the specifications to the TSCD requirements document REQ-00017[9] revision C, and the

---

[4] *See* Exhibit PA1 (REQ-00002, Revision A; "Requirements, Theranos System, Version 4" effective November 7, 2014 per DCO-00159)
[5] *See* Exhibit PA2 (SOP-00126 Revision C; "Change Control" effective October 21, 2014 per DCO-00168)
[6] *Reference Attachment 1, CAPA-00035*
[7] *See* Exhibit PA3 (SPC-00010 Revision D; "Specification, TSCD" effective September 11, 2015 per DCO-00581).
[8] *See* Exhibit PA4 (DOC-00146 Revision 2; "Document, TSCD Trace matrix" effective September 11, 2015 per DCO-00581)
[9] *See* Exhibit PA5 (REQ-00017 Revision C; "Theranos Sample Collection Device Requirements" effective September 4, 2015 per DCO-00557)

5 of 18

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

updated Test Plan TP-00065[10] revision B, which defines the complete matrix of verification and validation testing to be performed for the TSCD in order to transition to QSR compliance.

Regarding design validation data, specifically for bicarbonate, calcium, glucose and potassium (including associated failures), Theranos released TPR-00158[11] revision A and TR-00131[12] revision A under DCO-00578 to retrospectively document and approve the design validation data, which Theranos performed to assess TSCD Assay Compatibility. Theranos retrospectively released the associated deviation reports and corrective action studies conducted as TR-00132[13] revision A under DCO-00579. Theranos provided these documents to FDA Investigator Singh during the course of the inspection to demonstrate correction of these observations. Investigator Singh took the documents at the close of the audit and noted the observation as corrected but not verified.[14]

As part of the investigation conducted under CAPA-00035, Theranos released TP-00065 (Test Plan, TSCD, 52-00120 and 52-00121)[15] [16] to retrospectively address all design validation requirements associated with the TSCD, including Assay Compatibility. Specifically, TP-00065 will trace the assay compatibility requirement to a series of protocols which will document assay compatibility testing for the TSCD per the updated TSCD Specification document SPC-00010 cited above. Theranos provided FDA Investigator Singh a copy of Test Plan TP-00065 during the course of the audit to demonstrate continued correction of the observations. Investigator Singh took TP-00065 at the close of the audit and noted the observation as corrected but not verified.[17]

However, we respectfully disagree with the premise of this observation. As reflected in the industry guidance documents authored by, among others, Yung Chan of FDA, CLSI recognizes that it is "impractical for tube manufacturers to test their tubes on all the various assay platforms." Thus, when performing validation analysis, the "manufacturer can select representative assays for this purpose."[18] To further support our initial validation strategy of selecting a representative set of assays to demonstrate assay compatibility (in accordance with

---

[10] *See* Exhibit PA6 (TP-00065 Revision B; "Test Plan, TSCD, 52-00120 and 52-00121" effective September 11, 2015 per DCO-00581)

[11] *See* Exhibit PA7 (TPR-00158 Revision A: "Test Protocol, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep" effective September 10, 2015 per DCO-00578)

[12] *See* Exhibit PA8 (TR-00131 Revision A: "Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep" effective September 10, 2015 per DCO-00578)

[13] *See* Exhibit PA9 (TR-00132 Revision A; "Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep" effective September 10, 2015 per DCO-00579)

[14] *Included amongst the exhibits in the QSR Binder provided on September 16, 2015.*

[15] *See* Exhibit PA10 (TP-00065 Revision A; "Test Plan, TSCD, 52-00120 and 52-00121" effective September 9, 2015 per DCO-00575)

[16] *See* Exhibit PA6 (TP-00065 Revision B)

[17] *Included amongst the exhibits in the QSR Binder provided on September 16, 2015.*

[18] CLSI. *Validation and Verification of Tubes for Venous and Capillary Blood Specimen Collection; Approved Guideline*. CLSI document GP34-A. Wayne, PA: Clinical and Standards Institute; 2010.

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                                                              TS-1068305

**theranos**

1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

CLSI document GP-34A), we have also added a section to TPR-00158[19] revision B, which lists the scientific rationale for why the chosen set of assays is representative of the complete list of assays that use the TSCDs in the Theranos CLIA Laboratory in Newark, California. For each of the assays which were not included as part of the validation – Magnesium, Total Iron, Total Iron Binding Capacity, Phosphorus, and Uric Acid – representative assays(s) and rationale(s) are now listed in this document.

**Observation 2**

*The design was not validated under actual or simulated use conditions. Specifically:*

> *Your design validation plan, Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1. I), LiHep/LiHep, raw data, and Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep, provided as evidence of design validation, does not demonstrate that TSCD device samples were taken from units, lots or batches that were produced using the same specifications, production and quality system methods, procedures, and equipment that will be used for routine production. For example, you do not list or refer to the TSCD lot numbers used, specific instruments or analyzers used, documents with revisions numbers used, or the specific assay protocols used.*

**Response**: [Annotated as "Reported corrected, not verified" at close out.]

In immediate response to the observations by FDA Investigator Singh, Theranos revised and updated documentation, during the course of the inspection, as described below. Theranos has opened CAPA-00036[20] to document the full investigation of the cited objectionable condition and determine if further corrective action is required.

The Test Protocol and Report that FDA cited in this observation, TPR-00158[21] revision A (Test Protocol, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/Li/Hep) and TR-00132[22] revision A (Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep), represents a compilation of data that was previously documented under the LDT framework. Inconsistencies in this document cited above are due to Theranos transitioning the TSCD from an LDT into the QSR framework.

As part of the investigation conducted under CAPA-00036, Theranos reviewed SOP-00150[23] (Design Control) and TMP-00002[24] (Test Report Template) for compliance with 21 C.F.R. §

---

[19] *See* Exhibit PA11 (TPR-00158 Revision B: "Test Protocol, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep" effective October 2, 2015 per DCO-00643)

[20] *Reference Attachment 1, CAPA-00036*
[21] *See* Exhibit PA7 (TPR-00158 Revision A)
[22] *See* Exhibit PA9 (TR-00132 Revision A)
[23] *See* Exhibit PA12 (SOP-00150 Revision D: "Design Control" effective September 22, 2015 per DCO-00616)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                                     TS-1068306

theranos

1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

820.30 and completeness with regard to identification of lots and equipment used for the manufacture of units used for design validation testing. Theranos determined that both the SOP and Test Report template were in compliance with the traceability requirements of unit manufacture. Theranos also reviewed more recently released TSCD test documentation[25] [26] and found such documentation to comply with these requirements. In addition, during the course of the inspection, Theranos shared with the FDA investigators examples of more recently released TSCD documentation that Theranos completed and released prior to the audit as examples of current compliance with the procedure. For example, we shared TR-00091[27] revision A ("Test Report, Validation, Storage condition and shelf life, Li-Hep TSCDs") and TR-00097[28] revision A ("Test Report, Shelf Life and RT vs Refrigerates Validation of the Theranos EDTA Blood Collection Devices").

In response to the observation, Theranos updated: (1) TPR-00158[29] to revision B to identify the manufacturing procedure, MOP-00512[30] revision A (MOP, 52-00120/121, Assy, pCTN, Liquid-Coat), which was used to build the samples and add the rationale for test selection. MOP-00512 revision A includes identification of the equipment to be used in the manufacture of the product and additional procedures associated with the build. Subsequent Design Verification Builds, TR-00091 and TR-00097, contain the information cited in this observation. TPR-00158 revision B also includes assay protocols which were used for the validation. Review under the Investigation Phase of CAPA-00036, which will conclude October 9, 2015, will include identification of any other TSCD documentation which exhibit similar deficiencies and which require correction to be in compliance with SOP-00150 and TMP-00002.

## Observation 3

*Design input requirements were not adequately documented. Specifically:*

> *A. In your Theranos Sample Collection Device (TSCD) Requirements, REQ-00017 Revision A, you list "The sample collected should be compatible with all Theranos assays". However, in TSCD Specifications, SPC-00010 Revision A, you do not list all the specific assays the TSCDs are intended to be used with or the performance specifications for each assay. You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.*

---

Footnote continued from previous page

[24] *See* Exhibit PA13 (TMP-00002 Revision C: "Test Report Template" effective March 26, 2015 per DCO-00354)
[25] *See* Exhibit PA14 (TR-00091 Revision A: "Test Report, Validation, Storage condition and shelf life, Li-Hep CTNs" effective August 3, 2015 per DCO-00486)
[26] *See* Exhibit PA15 (TR-00097 Revision A: "Test Report, Shelf life and RT vs refrigerated validation of the Theranos EDTA blood collection devices" effective July 21, 2015 per DCO-00418)
[27] *See* Exhibit PA14 (TR-00091 Revision A)
[28] *See* Exhibit PA15 (TR-00097 Revision A)
[29] *See* Exhibit PA11 (TPR-00158 Revision B)
[30] See Exhibit PA16 (MOP-00512 Revision A: "MOP, 52-00120/121, Assy, pCTN, Liquid-Coat" effective April 3, 2014 per ECO-00755)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                                    TS-1068307



        1701 Page Mill Road    P 650.838.9292    theranos.com
        Palo Alto, CA 94304    F 650.838.9165

> **B. You apply either a Lithium Heparin or EDTA anticoagulant to your TSCD device. You do not address the amount of anticoagulant coating to apply in your design requirements or specifications document such that the device will perform to meet its intended use, specifically for the Lithium-Heparin coating. In your hazard matrix, you classified too much Lithium-Heparin with the highest severity: "catastrophic", "serious safety related failure, potential adverse effect on the end user". You have used the Lithium-Heparin TSCD device to collect patient samples and have reported the results with at least 23 different assays.**

**Response**: [Annotated as "Reported corrected, not verified" at close out.]

As a CLIA laboratory primarily engaged in the ongoing development of LDTs, Theranos was documenting the information FDA cites under the CLIA Quality System. Theranos reasonably believed that this practice was permissible for a CLIA laboratory. Nonetheless, as noted, Theranos was in the process of transitioning to full QSR compliance in light of its upcoming regulatory submissions, as we always planned to do, and immediately cut over to the QSR system in light of FDA's shift in policy toward retroactive application of QSR standards. In immediate response to the observations by FDA Investigator Singh, the company opened CAPA-00037[31] to implement a number of corrective and preventive actions.

In the context of Theranos' transition from the LDT framework to QSR, Theranos reviewed its current design control documentation and has implemented changes in design control policies. Theranos updated SOP-00150[32] (Design Controls) to revision D under DCO-00616 to further define the functional responsibilities of various groups supporting Design Control activities, and identified Design Exit Phases, specifying deliverable items reviewed during the formal phase exit meeting. Theranos also defined the content of the Project Plan (Design Phase Deliverable), which includes Inputs, Outputs, Verification, Validation, Risk Management, Regulatory Strategy, Design reviews, Design Changes and Design Transfer. These changes were effective September 22, 2015.

Theranos also updated SOP-00161[33] (Design Review) to revision B under DCO-00624 to define the project deliverables ensuring compliance with 21 C.F.R. § 820.30, Design Controls. The updated SOP also provides definitive Phase Review templates that identify the required documentation to be reviewed. Design Phase Exit Reviews include Design Initiation, Design Validation and Verification, and Design Transfer. These changes were effective September 22, 2015.

---

[31] *Reference Attachment 1, CAPA-00037*
[32] *See* Exhibit PA12 (SOP-00150 Revision D)
[33] *See* Exhibit PA17 (SOP-00161 Revision B: "SOP, Design Review" effective September 22, 2015 per DCO-00624)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos    TS-1068308

theranos

1701 Page Mill Road    P 650.838.9292     theranos.com
Palo Alto, CA 94304    F 650.838.9165

Specific to Observation 3.A, the current Product Specification document, SPC-00010[34] in section 5.12, Assay Identification, effective September 11, 2015, cites all applicable Assays intended for use with the TSCD. Specification S.006 of the same document provides performance requirements citations to 42 CFR Part 493, Laboratory Requirements and Clinical and Laboratory Standards Institute (CLSI) guidelines EP09-A3/EP05-A3. The document provides current evidence of Theranos' state of compliance with QSRs. In the context of Theranos' transition from the LDT framework to the QSRs, Theranos has corrected these observations.

With respect to Observation 3.B, Theranos addresses the concentration of anticoagulant in the updated specifications document, SPC-00010 revision D, in specifications M.0023 and M.0014, which specify the anticoagulant dosage. The concentration/amount of anticoagulant covers all assays listed in this document. Theranos previously documented the concentration/amount under the CLIA quality systems, but Theranos has now documented them under the QSR framework as of September 11, 2015. Theranos always designed and followed these requirements under the CLIA quality systems.

Theranos has completed and confirmed training of all relevant personnel (per SOP-00152-F3, Training Matrix) on these updated policies and procedures.[35] [36]

**Observation 4**

*Results of the design risk analysis were not adequately documented. Specifically:*

    *A. You provide multiple assay results to patients using the TSCD devices coated with either Lithium-Heparin or EDTA anticoagulants using serum, plasma or whole blood. However, you do not document the possible hazards associated with the TSCD design for serum and plasma samples with different anticoagulants for specific analytes in your design Failure Modes and Effects Analysis, DOC-0069 Revision A.*

    *B. DOC-0069 Revision A, provided as the design Failure Modes and Effects Analysis conducted at the time of design, describes:*
        *i. Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Incorrect material selection. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3 which according to SOP-00149, Revision: B results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.*
       *ii. Function: Lithium Heparin, Potential Failure Mode: Incorrect results, Potential Effect: Interferes with Theranos assays, and Potential Cause: Too*

---

[34] *See* Exhibit PA3 (SPC-00010 Revision D)
[35] *See* Exhibit PA18 (Training records for SOP-00150 Revision D)
[36] *See* Exhibit PA19 (Training records for SOP-00161 Revision B)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos     TS-1068309



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

> much Li-Hep in circuits. The severity is given the highest rating of 5 and the occurrence is given an occasional rating of 3, which according to SOP-00149, Revision: 13 results in a risk index of 3, high, an unacceptable risk requiring reduction activities. However, you assigned a risk index of 2 and have no risk control measures documented.

**Response**: [Annotated as "Reported corrected, not verified" at close out.]

As a CLIA laboratory primarily engaged in the ongoing development of LDTs, Theranos was documenting the information FDA cites under the CLIA Quality System. Theranos reasonably believed that this practice was permissible for a CLIA laboratory. Nonetheless, as noted, Theranos was in the process of transitioning to full QSR compliance in light of its upcoming regulatory submissions, as we always planned to do, and immediately cut over to the QSR system in light of FDA's shift in policy toward retroactive application of QSR standards.

In response to this observation and before close out, Theranos immediately corrected this observation on September 11, 2015 by updating and releasing document DOC-00069[37] (Design Failure Mode and Effect Analysis, DFMEA) to revision B under DCO-00584. However, we are concerned that this observation is based on a fundamental misunderstanding of the facts. We note that Theranos had proper risk mitigation in place and this observation is not indicative of Theranos' previous or current QSR compliance state. DOC-00069[38] revision A, was inadvertently uploaded as a released document while it was still being worked on, and some of the fields were not updated. However, Theranos took appropriate risk control measures at the time. DOC-00069 revision B contains the corrections. While Theranos updated the documentation, the procedure always accounted for risk control measures in the documentation.

Specific to Observation 4, sub-parts B.i and B.ii, both omissions were noted as typographical errors in the unreleased version DOC-00069, Design Failure Modes and Effects Analysis, as we explained to Investigator Singh. As indicated to Investigator Singh, the Risk Control measures were taken, though were inadvertently omitted from the Verification of Effectiveness column. In the current version of DOC-00069 revision B, the Baseline Risk are correctly identified as RI=3, which is appropriate for a Severity of 5 and Occurrence of 3 as defined in SOP-00149[39] Revision B. After the implementation of Risk Control measures the Residual Risk Index is decreased to a RI=2, reflecting the Severity of 5 and a reduction in the Occurrence to 2.

Theranos has opened CAPA-00038[40] to fully document the investigation into the root cause of the omission, to evaluate if there are additional Risk Management documents with a similar omission, and identify if there are other elements not in compliance with SOP-00149 (Failure

---

[37] *See* Exhibit PA20 (DOC-00069 Revision B: "TSCD dFMEA" effective September 11, 2015 per DCO-00584)
[38] *See* Exhibit PA21 (DOC-00069 Revision A: "TSCD dFMEA" effective December 16, 2014 per DCO-00271)
[39] *See* Exhibit PA22 (SOP-00149 Revision B: "Failure Modes and Effects Analysis" effective October 8, 2014 per DCO-00204)
[40] *Reference Attachment 1, CAPA-00038*

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                                    TS-1068310



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

Modes and Effects Analysis) or SOP-00148[41] (Hazard Analysis). As Theranos continues its shift from CLIA to QSR, the company has ensured Risk Management documents are controlled through Exit Phase Reviews to prevent omissions in content that are released through updates to SOP-00150[42] (Design Controls) and SOP-00161[43] (Design Review).

As noted in the response to Observation #3, Theranos updated SOP-00150 (Design Controls) to revision D under DCO-00616 to further define the functional responsibilities of various groups supporting Design Control activities, and identified Design Exit Phases, specifying deliverable items reviewed during the formal phase exit meeting. We were conducting frequent "informal" reviews, and formal reviews are now required at the end of the initial design phase, the end of the Validation and Verification phase, and at the end of the Production Transfer Phase. The review is intended to ensure all required documentation is complete and approved before a project can move to the next phase. The content of the Project Plan were also defined (Design Phase Deliverable), which includes Inputs, Outputs, Verification, Validation, Risk Management, Regulatory Strategy, Design reviews, Design Changes and Design Transfer. These changes were effective September 22, 2015.

Also as noted in the response to Observation #3, Theranos updated SOP-00161 (Design Review) to revision B under DCO-00624 to define the project deliverables ensuring compliance with 21 C.F.R. § 820.30, Design Controls, and to provide definitive Phase Review templates that identify the required documentation to be reviewed. Design Phase Exit Reviews include Design Initiation, Design Validation and Verification, and Design Transfer. These changes were effective September 22, 2015.

Current design control documents demonstrate that all assays are accounted for in the current Product Specification document, SPC-00010[44] revision D in section 5.12, Assay Identification, and in Test Plan document TP-00065[45] revision B in section 7.1, Test Overview, as of September 11, 2015. These documents provide current evidence of Theranos' state of compliance with QSRs. In the context of Theranos' transition from the LDT framework to the QSRs, Theranos has corrected these observations.

As noted in the response to Observation #3, Theranos has completed and confirmed training of all relevant personnel (per SOP-00152-F3, Training Matrix) on the updated policies and procedures.[46] [47]

---

[41] *See* Exhibit PA23 (SOP-00148 Revision B: "Hazard Analysis" effective October 7, 2014 per DCO-00204)
[42] *See* Exhibit PA12 (SOP-00150 Revision D)
[43] *See* Exhibit PA17 (SOP-00161 Revision B)
[44] *See* Exhibit PA3 (SPC-00010 Revision D)
[45] *See* Exhibit PA6 (TP-00065, Revision B, Test Plan)
[46] *See* Exhibit PA18 (Training records for SOP-00150 Revision D)
[47] *See* Exhibit PA19 (Training records for SOP-00161 Revision B)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos    TS-1068311



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

### Observation 5

*Documents were not reviewed and not approved by designated individual(s) prior to issuance. Specifically:*

    A. *dFMEA, DOC-0069 Revision A, provided as the hazard analysis for the TSCD devices, was utilized from February-April 2014. The document does not have an effective date. The document was not released in your document control system until 8/26/15 (during the inspection). The document was not reviewed and approved prior to 8/26/15.*

    B. *There is no document number, revision or effective date for your design validation: Test Plan, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1. 1), LiHep/LiHep, and Test Report, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep. These documents were provided as evidence of design validation conducted in 2014; however, they were drafted during this inspection and were not reviewed and approved until 9/10/15.*

    C. *There is no document number, revision or effective date for Appendix, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN), LiHep/LiHep. This document was provided as a follow-up to the failures in your design validation conducted in 2014; however, this document was drafted during the inspection. It has not been reviewed or approved until 9/10/15.*

**Response**: [Annotated as "Reported corrected, not verified" at close out]

Inconsistencies identified in this observation are due to Theranos transitioning the TSCDs from an LDT into a QSR framework. As noted, Theranos was in the process of transitioning to full QSR compliance in light of its upcoming regulatory submissions, as we always planned to do, and immediately cut over to the QSR system in light of FDA's shift in policy toward retroactive application of QSR standards. In immediate response to the observations by FDA Investigator Singh, Theranos routed and approved all identified documentation through the Theranos Document Control process, as per SOP-00126[48], during the course of the inspection. As noted in the observation, the documents were identified as corrected.

Nonetheless, Theranos has opened CAPA-00039[49] to document the full investigation of the cited objectionable condition and determine if further corrective action is required. Theranos updated the SOP-00126 in October 2014 to revision C under DCO-00168 to provide definition for the review and approval process, and to release process flow maps to further aid the user in understanding the Change Control Process. SOP-00126 revision C has remained in effect since October 2014. After reviewing the SOP and subsequent documents created since the

---

[48] *See* Exhibit PA2 (SOP-00126 Revision C)
[49] *Reference Attachment 1, CAPA-00039*

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos     TS-1068312



1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

implementation of the revision, Theranos believes that such processes have demonstrated system compliance.  Theranos provided FDA Investigator Singh a substantial number of Document Change Order (DCO) cover sheets throughout the inspection, from the Agile document control system, for all current SOPs related to TSCD design to demonstrate the company's current compliance with the QSRs in this regard.

For example, in Section F of the 2015 TSCD QSR binder that Theranos provided to FDA Investigator Singh on September 16, 2015, Theranos included Document Change Order (DCO) cover sheets, generated by the Agile System, for each SOP as well as other documents.  The release dates on these DCO cover sheets correlate to the effective dates on the documents.  This correlation demonstrates the Agile document control system is effective in controlling and managing documents, ensuring parity between the system generated effective date reported in the DCO cover sheet and the Effective Date printed on the document.

Additionally, the updated version of DOC-00069[50] revision B (TSCD DFMEA) has gone through a formal review and approval process.  The document number, revision, and effective dates for the updated design validation are included in the updated design validation documents provided.

The formal Change Order approval process is defined in SOP-00126 revision C, and a workflow phase identified for proposed Change Orders.  Change Orders go through a pending, submitted, electronic review and approval workflow phase, and are released after the Documentation Control Change Analysts review the document.  The Change Analysts apply the effective date to the document itself and release it in Agile.

---

[50] *See* Exhibit PA20 (SOP-00069 Revision B)

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

FOIA Confidential Treatment Requested by Theranos                                                                    TS-1068313



1701 Page Mill Road    P 650.838.9292      theranos.com
Palo Alto, CA 94304    F 650.838.9165

For each of the above Observations, the following table summarizes Theranos' CAPAs and associated timing.

### Summary of Theranos Palo Alto 483 Observation Responses

| # | Observation | Corrective Action | Timing |
|---|---|---|---|
| 1 | Design validation did not ensure the device conforms to defined user needs and intended uses. | CAPA-00035 was assigned to this observation.<br>**CORRECTIVE**<br>• Document scientific rationale for justifying selection of subset of assays as representative of the complete set<br>  o COMPLETE – TPR-00158 Revision B, Test Protocol, Assay Compatibility, Passive Capillary Tube and Nanotainer (CTN2.1.1), LiHep/LiHep was released to incorporate justification for assay selection (DCO-00643)<br>**PREVENTIVE**<br>• Update specification document to include all assays which use TSCD<br>  o COMPLETE – Specification Document SPC-00010 Revision D was update to include the list of associated assays (DCO-00581)<br>• Update SOP-00150 to explicitly state that verification and validation tests require a released and approved test protocol.<br>  o COMPLETE – SOP-00150, Revision D, was updated to clarify the requirement for Validation and Verification Protocols to be in documented protocols. (DCO-00616)<br>• Train Consumables R&D personnel on updated SOPs<br>  o COMPLETE – Training records provided | The CAPA has completed the Investigation Results Phase and is presently in Implementation Solution phase, which will conclude by October 9, 2015.<br><br>In immediate response to this observation, Theranos routed and approved the identified design validation and test data documentation through the Theranos Document Control process – including TPR-00158 Revision A, TR-00131 Revision A, TR-000132 Revision A, and TP-00065 Revision A – during the course of the inspection. Theranos provided these documents to FDA Investigator Singh during the course of the inspection to demonstrate correction of this observation.<br><br>Subsequent to the Implement Solution phase, CAPA-00035 will move to the Verification of Effectiveness phase, which will close by January 15, 2016. Verification of Effectiveness will include selecting 5 random protocols created after the date of implementation of Corrections, September 21, 2015 and verifying that the protocols for TSCD Assays contain rationale for the selection of specific assays and that justification references CLSI Guidance 34-A. |
| 2 | The design was not validated under actual or simulated use conditions. | CAPA-00036 was assigned to this observation.<br>**CORRECTIVE**<br>• Update TPR-00158 to document justifications for assays used and documentation used for the product builds.<br>  o COMPLETE – TRP-00158 Revision B was updated to | The CAPA has completed the Investigation Results Phase and is presently in the Implement Solution phase, which will conclude by October 9, 2015.<br><br>Subsequent to the Implement Solution phase, CAPA-00036 will move to the Verification of Effectiveness phase, which will close |

CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos     TS-1068314



| # | Observation | Corrective Action | Timing |
|---|---|---|---|
| | | include rationale for assay selection and reference to the Manufacturing Procedures used to build the samples.<br>• Review the Templates for Protocols and Reports to evaluate if content provides adequate detail to ensure identification of materials, tooling, procedures, methods, and additional attributes to prevent a recurrence of the omission cited.<br>   o COMPLETE – TMP-00003, Test Protocol Template, Revision C and TMP-00002, Test Report Template, Revision C were confirmed to provide suitable detail.<br>PREVENTIVE<br>• Update SOP-00161, Design Review, to require formal Phase Exit Reviews that include the review of objective data to demonstrate documentation complies with Validation and Verification Protocol and Report Template content.<br>   o COMPLETE – SOP-00161, Revision B, was updated to define Phase Review Deliverables. (DCO-00624)<br>• Train Consumables R&D personnel on updated SOPs<br>COMPLETE – Training records provided | by January 15, 2016. Verification of Effectiveness will include selecting 5 random protocols created after the date of implementation of Corrections, September 21, 2015, and verifying that protocols and reports contain the required information detailed in TMP-00003 and TMP-00004. |
| 3 | Design input requirements were not adequately documented. | CAPA-00037 was assigned to this observation.<br>CORRECTIVE<br>• Update SPC-00010 to provide specifics on the Assays the TSCD is intended to be compatible with, and identification of anticoagulant concentration<br>   o COMPLETE – SPC-00010 Revision D, was update to add compatible assays and specify concentration/amounts anticoagulant. (DCO-00581)<br>PREVENTIVE<br>• Update SOP-00150 to explicitly state that verification and validation tests require a released and approved test protocol. | The CAPA has completed the Investigation Results Phase and is presently in Implementation Solution phase, which will conclude by October 9, 2015.<br><br>Subsequent to the Implement Solution phase, CAPA-00037 will move to the Verification of Effectiveness phase, which will close by March 11, 2016. Verification of Effectiveness will include selecting Specification Documents created after the implementation of SOP-00161 Revision B (September 22, 2015) to confirm that Specifications Documents provide sufficient detail to support subsequent design development activities. |

CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos

TS-1068315



1701 Page Mill Road   P 650.838.9292   theranos.com
Palo Alto, CA 94304   F 650.838.9165

| # | Observation | Corrective Action | Timing |
|---|---|---|---|
| | | ○ COMPLETE – SOP-00150, Revision D, was updated to clarify the requirement for Validation and Verification Protocols to be in documented protocols. (DCO-00616)<br>• Update SOP-00161, Design Review, to require formal Phase Exit Reviews that include the review of objective data to demonstrate documentation complies with Validation and Verification Protocol and Report Template content.<br>○ COMPLETE – SOP-00161, Revision B, was updated to define Phase Review Deliverables. (DCO-00624)<br>• Train Consumables R&D personnel on updated SOPs<br>COMPLETE – Training records provided | |
| 4 | Results of the design risk analysis were not adequately documented | CAPA-00038 was assigned to this observation.<br>CORRECTIVE<br>• Update DOC-00069, TSCD dFMEA, to correct the RI Numbers, and fill-in the omitted mitigation steps.<br>○ COMPLETE – DOC-00069 Revision B, TSCD dFMEA, was updated to correct the RI values and to include (DCO-00643)<br>PREVENTIVE<br>• Update SOP-00150 to require reviews of Risk Management Documentation throughout the Design Development process at specific Exit Phase Reviews.<br>○ COMPLETE – SOP-00150, Revision D, was updated to clarify the requirement for Validation and Verification Protocols to be in documented protocols. (DCO-00616)<br>• Update SOP-00161, Design Review, to identify Phase Exit Review elements at specified points in the Design Development process to ensure Risk management Documents are reviewed.<br>○ COMPLETE – SOP-00161, Revision B, was updated to define Phase Review Deliverables. (DCO-00624) | The CAPA has completed the Investigation Results Phase and is presently in the Implementation Solution phase, which will conclude by October 9, 2015.<br><br>Subsequent to the Implement Solution phase, CAPA-00038 will move to the Verification of Effectiveness phase, which will close by March 11, 2016. Verification of Effectiveness will include selecting Risk Management Documents released to Alpha Level (i.e., not in R&D Phase) after the implementation of SOP-00161 Revision B (September 22, 2015) to confirm Risk Management documents are complete, including all mitigations and verifications. |

17 of 18

**CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**



1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

| # | Observation | Corrective Action | Timing |
|---|---|---|---|
|   |   | • Train Consumables R&D personnel on updated SOPs<br>COMPLETE – Training records provided |   |
| 5 | Documents were not reviewed and not approved by designated individual(s) prior to issuance | CAPA-00039 was assigned to this observation.<br>CORRECTIVE<br>• Release and approve identified documents in compliance with SOP-00126, Revision C, Document Control.<br>   o COMPLETE – DOC-00069 released to Revision A (DCO-00271), TPR-00158 and TR-00131 were released to Revision A (DCO-00578)<br>PREVENTITIVE<br>• Review documents created under Document Control SOP, SOP-00126 Revision C, are in compliance with the requirements of the SOP, and are appropriately approved.<br>COMPLETE – Sample documents created since the release of SOP-00126 Revision C, October 21, 2014, were evaluated and found to be have agreement between the system generated effective date and the printed effective date on the document. | The CAPA has completed the Investigation Results Phase and is presently in Implementation Solution phase, which will conclude by October 9, 2015.<br><br>Subsequent to the Implement Solution phase, CAPA-00039 will move to the Verification of Effectiveness phase, which will close by January 15, 2016. The Verification of Effectiveness will include a review of a representative sample of Alpha Released documents released through Agile to ensure compliance with the documentation control requirements, with a 95% confidence interval, that records are in compliance (59 records evaluated with zero non-conformances). |

Thank you for your consideration of these responses to the above-referenced 483.

18 of 18

CONTAINS TRADE SECRET/CONFIDENTIAL COMMERCIAL INFORMATION
EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT

FOIA Confidential Treatment Requested by Theranos                                    TS-1068317