# EXHIBIT 40

MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| CASE NUMBER | : | 2204323-MF |
| PERSON INTERVIEWED | : | Sunil Dhawan |
| PLACE OF INTERVIEW | : | Securities and Exchange Commission Office, San Francisco, CA |
| DATE OF INTERVIEW | : | June 22, 2017 |
| TIME OF INTERVIEW | : | 9:00 A.M. |

On June 22, 2017, at the Securities and Exchange Commission (SEC) office located in San Francisco, CA, Sunil Dhawan (DHAWAN) was interviewed regarding his employment at Theranos. Present for the interview were SEC Staff Attorneys Jessica Chan, Marc Katz, and Monique Winkler, Assistant United States Attorney Robert Leach, U.S. Food and Drug Administration, Office of Criminal Investigations Special Agent George Scavdis, and me. Present as DHAWAN's counsel were Gregory Vega and Robin Traylor. DHAWAN was admonished before the interview began. The following is a summary of the information DHAWAN provided.

DHAWAN immigrated to the United States in 1971 and became a United States citizen in 1993. DHAWAN operates the Center for Dermatology, a CLIA [Clinical Laboratory Improvement Amendments] certified, high complexity lab. DHAWAN reads pathology slides and has conducted other laboratory tests in the past. DHAWAN reviewed his curriculum vitae (CTRL-DHAWAN 00008569//16 pages) and said that it was accurate as of June 2015. DHAWAN thought he had published more articles since that time.

Sunny Balwani (BALWANI) was a patient and friend of DHAWAN's for approximately fifteen years and DHAWAN knew BALWANI was the COO [Chief Operating Officer] of Theranos. In 2013 or 2014, BALWANI asked DHAWAN to recommend a laboratory director but DHAWAN was not able to find a candidate. Eventually, BALWANI asked DHAWAN to be Theranos' laboratory director on an on-call, temporary basis. Discussions about the position took place by email.

Before working for Theranos, DHAWAN's knowledge of Theranos consisted of what was available from public sources. He knew Theranos conducted novel laboratory testing using small amounts of blood. DHAWAN had no conversations with anyone about Theranos' test methods and he never saw any Theranos' devices before he started. When asked why the previous laboratory director left, BALWANI told DHAWAN it was a personnel matter.

DHAWAN reviewed document CTRL-DHAWAN-00007480 (4 pages) consisting of an email chain. DHAWAN was qualified to act as laboratory director under paragraph 2 (ii) of section 493.1443 of the CLIA requirements.

DHAWAN reviewed documents CTRL-DHAWAN-00007663 (1 page) consisting of an email and document CTRL-DHAWAN-00007664 (6 pages) consisting of a consulting agreement and

US-REPORTS-0008327

exhibit. DHAWAN recognized this as the consulting agreement he signed. DHAWAN understood that Exhibit A of the consulting agreement meant that his role at Theranos was as laboratory director and that he would not provide any advice outside of that role. DHAWAN remembered receiving only human resource documents and no others. He signed a confidentiality agreement. DHAWAN never went to Theranos' Palo Alto office. Most communication with Theranos was by telephone and email and signed documents were either emailed or faxed to Theranos. Scott Marmer was a Theranos attorney.

Sometime in January 2015, DHAWAN raised a compensation issue where he wanted to be paid in restricted stock units (RSU's) instead of receiving a monthly salary. DHAWAN felt this method of compensation was financially better for him. He did not cash the checks he had previously received from Theranos.

Between January 2015 and August 2015, DHAWAN did no work for Theranos. DHAWAN's first visit to Theranos was in August 2015 when he visited the Newark laboratory. The purpose of the visit was to tour the lab and to meet the lab personnel. During his visit, he saw many devices, including Theranos devices. DHAWAN attributed the significant length of time between when he accepted the job and when he first visited Theranos to two reasons. First, DHAWAN was trying to renegotiate his compensation and the negotiations took several months. Second, DHAWAN had never been asked to come in to Theranos. He had been told that he was not needed.

DHAWAN reviewed document CTRL-DHAWAN-00009513 (1 page) consisting of an email. Daniel Young (YOUNG) was the Arizona Theranos laboratory director and Langly Gee (GEE) was a quality control manager at the Newark lab. This email was the first work related email DHAWAN received from Theranos. DHAWAN remembered he spent a substantial amount of time reviewing the documents. The 300-400 documents he was asked to sign consisted of SOP's (standard operating procedures), employee training records, and validation reports. DHAWAN did not feel the large number of documents he was asked to sign was unusual as he completed similar tasks consistently at his own lab.

DHAWAN understood his job was an on-call job where he would be provided documents to review and sign and that he would be called to the Theranos lab when needed. He reviewed Theranos documents during the evening and on weekends and did not keep track of his hours.

At his lab, DHAWAN would attest to quality assurance and quality control documents for the lab's CLIA certification. He relied on the people in the lab to do good and proper work. He translated this to Theranos' lab and employees. He said that if the employees had a degree and held a position at Theranos, he assumed they were doing proper work. DHAWAN received employee lists with titles and degrees received. He stated Theranos laboratory personnel were qualified for the positions they held.

DHAWAN met YOUNG once in September 2015 during a Center's for Medicare and Medicaid Services (CMS) audit. DHAWAN had no other interactions with YOUNG and described his meeting with him as an introduction only.

DHAWAN reviewed document CTRL-DHAWAN-00008174 (8 pages) consisting of an email chain. His RSU's were put into a family trust. DHAWAN estimated he received 5,000 to 10,000 RSU's. He did not know why it took so long for the compensation issue to be resolved.

US-REPORTS-0008328

DHAWAN reviewed document CTRL-DHAWAN-00008804 (2 pages) consisting of an amendment to a service agreement. DHAWAN signed a document that looked similar to this. DHAWAN did not know why Section 3 was added to the amendment, but guess it had to do with compensation and not conducting any tests for four years.

At DHAWAN's suggestion and BALWANI's subsequent invitation, DHAWAN toured the Newark lab in August 2015. The tour took place on a Saturday and was several hours long, however, the tour of the lab did not last the entire time. Present during the tour were BALWANI and several assistants, and GEE. During the tour, DHAWAN saw multiple devices, including commercial devices. DHAWAN asked BALWANI to see Theranos devices, but BALWANI said those devices were not available. There was no other talk of Theranos devices.

DHAWAN thought Theranos was associated with another lab. DHAWAN knew of Theranos' relationship with Walgreens from media sources and he knew that Theranos had its own lab in Arizona. The Newark Theranos lab ran blood samples, but DHAWAN was never told what the source of the samples was.

DHAWAN reviewed document CTRL-DHAWAN-00009764 (2 pages) consisting of an email chain. DHAWAN accepted additional RSU's for additional work, which consisted of DHAWAN creating the framework for clinical trials. The purpose of the clinical trials was to validate blood sample testing, and DHAWAN assumed it was for Theranos devices. DHAWAN had expertise in this area and understood that he would have to find clinics and physicians to run the trials and that support staff would have to be identified. Ryan Karpel (KARPEL) assisted DHAWAN with this task. DHAWAN never asked about the status of Theranos device validation.

Document CTRL-DHAWAN-00009764 (2 pages) also reflected the first time DHAWAN learned about the upcoming CMS audit. All of the information DHAWAN needed to prepare for the audit was in the email, and he learned that Theranos had two experts with prior audit experience available to assist.

DHAWAN was present for the September 2015 CMS audit. Also present were BALWANI, GEE, Heather King (KING), a lab consultant, Theranos' outside counsel, and two CMS inspectors; one San Francisco based inspector and one Washington, D.C. based inspector. During an initial meeting before the audit started, the San Francisco based CMS inspector discussed Theranos press releases and calls he had received from the media. DHAWAN believed the inspector was troubled by this. The inspector's comments regarding these items were directed towards BALWANI and KING.

After the initial meeting, the group broke into two teams to meet with the CMS inspectors. The inspectors reviewed Theranos' quality assurance and quality control procedures. During the audit, DHAWAN waited and sat outside the room where the auditors were meeting. He asked numerous times if he was needed for anything and was told, "No." Eventually, DHAWAN left the building. The audit took place over a two to three day period.

Regarding the audit, DHAWAN stated he could only engage with the inspectors using the limited knowledge he had with reference to the documents he had signed.

Elizabeth Holmes (HOLMES) was not present for the audit. However, DHAWAN first met HOLMES while he was at Theranos for the audit.

US-REPORTS-0008329

DHAWAN reviewed document CTRL-DHAWAN-00009861 (1 page) consisting on an email chain. DHAWAN thought this email referenced a second set of documents he was expected to review and approve separate from the first set he received in August 2015. DHAWAN reviewed the second set of documents. He was not sure if the documents were newly drafted and needed initial approval or if they were documents that had been amended and needed follow-up approval.

DHAWAN reviewed documents CTRL-DHAWAN-00009896 (1 page) consisting of an email, document CTRL-DHAWAN-00009898 (10 pages) consisting of a confidentiality agreement, CTRL-DHAWAN-00009933 (2 pages) consisting of a letter from Mona Ramamurthy (RAMAMURTHY), and document CTRL-DHAWAN-00009935 (1 page) consisting of a letter from HOLMES. DHAWAN identified RAMAMURTHY as the head of HR. DHAWAN did not know why he needed to be a Theranos employee at this time instead being a contractor. There were never any discussions about his status as contractor versus Theranos employee.

DHAWAN reviewed document CTRL-DHAWAN-00010062 (19 pages) consisting of a restricted stock unit agreement. DHAWAN recognized the agreement and said that he signed and returned the agreement.

DHAWAN reviewed document CTRL-DHAWAN-00009640 (1 page) consisting of an email. DHAWAN does not remember the question referenced in the email. DHAWAN met YOUNG prior to the CMS audit. He did not remember any other communication with YOUNG.

DHAWAN's communication with Theranos was as needed and usually conducted through BALWANI or GEE.

DHAWAN reviewed document CTRL-DHAWAN-00010447 (1 page) consisting of an email. KARPEL was a Theranos program manager that DHAWAN worked with the setup a clinical trial. DHAWAN had a separate corporation named Center for Dermatology Clinical Research Corporation. Through this office, DHAWAN leveraged his expertise to assist with the setup of clinical trials. Part of the process included finding high volume patient sources, and identifying and vetting hundreds to thousands of patients. The office would also identify contract research offices (CRO's) to assist with Institutional Review Board (IRB) and FDA approvals.

DHAWAN reviewed document CTRL-DHAWAN-00010808 (1 page) consisting of an email. DHAWAN referred KARPEL to a physician friend of his who ran a busy practice and he thought KARPEL reached out. DHAWAN said the project ultimately was not pursued. He believed the physicians were not interested in the project.

DHAWAN reviewed document CTRL-DHAWAN-00010734 (1 page) consisting of an email, document CTRL-DHAWAN-00010736 (2 pages) consisting of a letter, and CTRL-DHAWAN-00010693 (3 pages) consisting of a letter. DHAWAN recognized the email and stated the "meeting" probably referenced the CMS audit. DHAWAN reviewed the letter attached to this email and thought he had signed it. DHAWAN thought this was the only instance of an employee asking for a letter of reference.

DHAWAN went to the Theranos lab only two times.

DHAWAN did not review patient tests.

DHAWAN had been contacted by reporters with the Wall Street Journal, 60 Minutes, and Financial Times. He referred these reporters to Theranos because of the confidentiality

US-REPORTS-0008330

agreement he had signed. He had no conversations with BALWANI about a possible Theranos news article prior to any coming out, nor did he have any conversations with BALWANI after they came out.

DHAWAN reviewed document CTRL-DHAWAN-000110030 consisting of an email chain. DHAWAN was not sure what the quarter 2 presentation referred to and he did not know if he attended a meeting. Most of his communication with GEE concerned signing documents.

DHAWAN reviewed document CTRL-DHAWAN-00011145 (1 page) consisting of an email. He was not sure if he attended the meeting.

DHAWAN reviewed document CTRL-DHAWAN-00011325 (1 page) consisting of an email and document CTRL-DHAWAN-00011326 (3 pages) consisting of a QA meeting minutes template. DHAWAN was unsure if he called GEE as requested in the email. He thought the purpose of the phone call was to review QC data. He did not know what "Levey Jennings charts" were and was unsure of who Sani Hadziahmetovic was. Suraj Saksena, Hoda Alamdar, Gurbir Sidhu, and Godfred Masinde were Theranos laboratory personnel. He stated these people were not present at the CMS audit or the tour he attended.

DHAWAN reviewed document CTRL-DHAWAN-00012505 (4 pages) consisting of an application for liability insurance. In February 2016, someone at Theranos, possibly RAMAMURTHY, sent this application to him and asked that he complete it. He completed the form as requested although he was unsure why he needed to. DHAWAN confirmed that he worked approximately five to ten hours per month with Theranos as stated on the application.

DHAWAN's next contact with Theranos was in March 2016 when KING contacted him regarding proposed CMS sanctions. DHAWAN was never asked for his input in a response to CMS and DHAWAN thought he only received the final sanctions letter.

DHAWAN reviewed document CTRL-DHAWAN-00013211 (1 page) consisting of a letter and document CTRL-DHAWAN-00013212 (33 pages) consisting of a July 7, 2016 letter from CMS. When he received this letter, he felt shocked and angered. He did not know this letter was coming and thought the Theranos lab was operating properly. He talked to KING who told him to wait for the response. He had no contact with BALWANI nor HOLMES regarding the CMS letter.

The sanction letter affects DHAWAN's ability to run a lab in that he cannot have a controlling function. DHAWAN stated he "did the best (he) could" and the "right thing" when working with Theranos.

After Theranos hired a new lab director from the University of Southern California (USC), DHAWAN was told to focus on the clinical trials. DHAWAN's last contact with KARPEL was in February or March 2016.

DHAWAN has avoided the media. He has no knowledge of Theranos voiding tests or diluting blood samples. He had no interactions with the Board of Directors or with any investors. He has no knowledge of Theranos' partnership with Safeway, work with pharmaceutical companies, or interactions with the FDA. DHAWAN has no knowledge of Theranos' financials.

DHAWAN knew that to be a lab director in California, the person needed their medical degree with one year of work experience. A person needed only a PhD to be a director in Arizona.

US-REPORTS-0008331

We took a break during the interview from approximately 10:05 AM to 10:15 AM.

The interview ended at approximately 11:37 AM.

Christopher McCollow

U.S. Postal Inspector

August 8, 2017

Date

ATTACHMENTS:

CTRL-DHAWAN 00008569 (16 pages)
CTRL-DHAWAN-00007480 (4 pages)
CTRL-DHAWAN-00007663 (1 page)
CTRL-DHAWAN-00007664 (6 pages)
CTRL-DHAWAN-00009513 (1 page)
CTRL-DHAWAN-00008174 (8 pages)
CTRL-DHAWAN-00008804 (2 pages)
CTRL-DHAWAN-00009764 (2 pages)
CTRL-DHAWAN-00009861 (1 page)
CTRL-DHAWAN-00009896 (1 page)
CTRL-DHAWAN-00009898 (10 pages)
CTRL-DHAWAN-00009933 (2 pages)
CTRL-DHAWAN-00009935 (1 page)
CTRL-DHAWAN-00010062 (19 pages)
CTRL-DHAWAN-00009640 (1 page)
CTRL-DHAWAN-00010447 (1 page)
CTRL-DHAWAN-00010808 (1 page)
CTRL-DHAWAN-00010734 (1 page)
CTRL-DHAWAN-00010736 (2 pages)
CTRL-DHAWAN-00010693 (3 pages)
CTRL-DHAWAN-00011030 (1 page)
CTRL-DHAWAN-00011145 (1 page)
CTRL-DHAWAN-00011325 (1 page)
CTRL-DHAWAN-00011326 (3 pages)
CTRL-DHAWAN-00012505 (4 pages)
CTRL-DHAWAN-00013211 (1 page)
CTRL-DHAWAN-00013212 (33 pages)

US-REPORTS-0008332

# CURRICULUM VITAE
## SUNIL S. DHAWAN, M.D.



| | |
|---|---|
| **DATE OF BIRTH:** | April 17, 1959 |
| **PLACE OF BIRTH:** | London, England |
| **UNDERGRADUATE EDUCATION:** | San Francisco State University, San Francisco, CA. Graduated Summa Cum Laude, Bachelor of Science in Chemistry, June, 1979. Dean's list for all four years. |
| **MEDICAL EDUCATION:** | University of Southern California School of Medicine, Los Angeles, CA. M.D. received in May, 1983. |
| **POSTGRADUATE EDUCATION:** | Resident in Internal Medicine, Mount Zion Hospital and Medical Center, San Francisco, CA, June 1983 - June 1986. |
| | Resident in Dermatology, Mount Sinai Medical Center, Miami Beach, FL, July 1987 -June 1989. |
| | Chief Resident in Dermatology, Mount Sinai Medical Center, Miami Beach, FL, July 1989 - June 1990. |
| **POSITIONS HELD:** | Medical Lab Director, Theranos Corporation, December 2014 - present |
| | Private practice in Dermatology and Dermatologic Surgery, Center for Dermatology Medical, Cosmetic and Laser Surgery, Inc., Fremont and Milpitas, CA, July 1990 - present. |
| | Clinical Assistant Professor of Dermatology, Stanford University School of Medicine, Palo Alto, CA, November 1992 - present. |
| | Attending Physician, Department of Internal Medicine and the Division of Emergency Medicine, Mount Zion Hospital and Medical Center, San Francisco, CA, July 1986 - June 1987. |
| | Clinic Physician, Department of Internal Medicine, Kaiser Foundation Hospital, San Francisco, CA, July 1985 - June 1987. |
| | Staff Physician, Access Health Care Centers, San Francisco, CA, July 1986 - June 1987. |

Curriculum Vitae
Sunil S. Dhawan, M.D.

Revised 6/15/2015

CTRL-DHAWAN-00008569

US-REPORTS-0008333

Clinic Physician, Department of Internal Medicine, Kaiser Foundation Hospital, South San Francisco, CA, January 1985 - June 1987.

**HONORS:**

Elected to the Who's Who in the State of California, and United States

Elected to the Outstanding Young Men of America

Recipient of the USC Medical Fellowship for Research

**BOARD CERTIFICATION:**

Diplomate, American Board of Dermatology, November 1990
Diplomate, American Board of Internal Medicine, September 1986
Diplomate, National Board of Medical Examiners, June 1984

**STATE LICENSURE:**

California (since 1984)

**PROFESSIONAL ORGANIZATIONS:**

Fellow, American College of Physicians
Fellow, American Academy of Dermatology
California Medical Association
Alameda-Contra Costa County Medical Association

**PUBLICATIONS:**

Weitzner JM, Dhawan SS, Rosen LB, et al: Successful therapy of botryomycosis in a patient with AIDS. Journal of the American Academy of Dermatology 21:1312-1314, 1989.

Dhawan SS, Weitzner JM, Zaias N: Vesicular scabies in an adult. Cutis 43:267-268, 1989.

Dhawan SS, Fields, KW: Lichen planus and ulcerative colitis - Is there a relationship? International Journal of Dermatology 28:534, 1989.

Dhawan SS, Nanda VS, Rabinovitz HS: Apocrine adenocarcinoma: A review of the literature. Journal of Dermatologic Surgery and Oncology 16:468-470, 1990.

Goodless DR, Dhawan SS, Wiszniak J, et al: Cutaneous periarteritis nodosa. International Journal of Dermatology 29:611-615, 1990.

Dhawan SS, Pena J., Zaias N: The nail fold in pemphigus vulgaris. Archives of Dermatology, 126:1374-1375, 1990.

Dhawan SS, Jimenez-Acosta F, Popitti R, Barkin JS: Subcutaneous fat necrosis associated with pancreatitis - Histochemical and electron microscopic findings. American Journal of Gastroenterology 85:1025-1028, 1990.

CTRL-DHAWAN-00008569

US-REPORTS-0008334

Dhawan SS, Wolf D, Rabinovitz HS:  Lentigo maligna - The use of rush permanent sections in therapy.  Archives of Dermatology 126:928-930, 1990.

Dhawan SS, Wolf D, Rabinovitz HS:  Lentigo maligna - The use of rush permanent sections in therapy.  Archives of Dermatology 126:928-930, 1990.

Gmitter TJ, Dhawan SS, Wiszniak J:  Cutaneous metastases of colonic adenocarcinoma.  Cutis 46:66-68, 1990.

Dhawan SS, Herbst JS, Fields KW:  Tender nodules on the legs.  Archives of Dermatology 127:247-252, 1991.

Beko E, Pervaiz S, Dhawan SS:  Long term follow up of patients with diffuse fasciitis and eosinophilia associated with l-tryptophan ingestion.  Cutis 51:266-70, 1993.

Dhawan SS, Blyumin ML, Pearce DJ, Feldman SR:  Tazarotene cream (0.1%) in Combination with Betamethasone Valerate Foam (0.12%) for Plaque Type Psoriasis.  Journal of Drugs in Dermatology 4:228-230, 2005.

Conley JJ, Nanton J, Dhawan S, Pearce DJ, Feldman SR:  Novel Combination Regimens: Biologics and Acetretin for the Treatment of Psoriasis – A Case Series.  Journal of Dermatological Treatment 4:1-4, 2006.

Tanghietti E, Dhawan SS, Torok H, Kircik L:  Tazarotene 0.l1% cream plus clindamycin 1% gel versus tretinoin 0.025% gel plus clindamycin 1% gel in the treatment of facial acne vulgaris.  Dermatology Online Journal 13:4, 2007.

21st World Congress of Dermatology.  Comparison of the Tolerability and Efficacy of Tazarotene 0.1% cream with clindamycin 1% gel versus tretinoin 0.025% gel with clindamycin 1% gel for the treatment of acne vulgaris.  Roster session.  Buenos Aries, Argentina:  September 30, 2007 – October 5, 2007.

Draelos ZD, Callender V, Young C, Dhawan SS:  The Effect of Vehicle Formulation on Acne Medication Tolerability.  Cutis, 82: 281-284, 2006

Kircik L, Green L, Thibitot D, Tanghietti E, Wilson D, Dhawan S, Fair L:  Comparing a Solubilized benzoyl peroxide gel with benzoyl peroxide/clindamycin.  Journal of Drugs in Dermatology : 812-821,2008.

Dhawan, SS.  Comparison of two clindamycin 1% - benzoyl peroxide 5% topical gels used once daily in the management of acne vulgaris.  Cutis 83: 265-272, 2009.

Curriculum Vitae
Sunil S. Dhawan, M.D.

Revised 6/15/2015

Dhawan, SS: Tips to Help Your Bottom Line.  Healthguard News G:4,

3

CTRL-DHAWAN-00008569

US-REPORTS-0008335

2010.

Tanghietti E, Dhawan SS, Green L, et al: Randomized Comparison of the Safety and Efficacy of Tazarotene 0.1% Cream and Adapalene 0.3% Gel in the Treatment of Patients with at least Moderate Facial Acne Vulgaris. Journal of Drugs in Dermatology. 9:549-558, 2010.

Wheelanct RG, Dhawan SS. Evaluation of Self-Treatment of Mild-Moderate Facial Acne with a Blue Light Treatment System. Journal of Drugs in Dermatology: 10 (7). 329-335, 2011.

Tanghietti E, Dhawan S, Greer L, Ling M et al. Clinical Evidence for the Role of a Topical Anti-Inflammatory Agent in Comedonal Acne: Findings From a Randomized Study of Dapsone Gel 5% in Combination with Tazarotene Cream 0.1% in Patients with Acne Vulgaris. Journal of Drugs in Dermatology. 10(7). 783-792, 2011.

Dhawan SS, Gwajdauskas J. Clindamycin Phosphate 1.2% - Benzoyl Peroxide (5% or 2.5%) plus Tazarotene Cream 0.1% for the Treatment of Acne. Cutis 91. 99-104, 2013.

**INVITED PRESENTATIONS:**

Medical Grand Rounds, Mount Zion Hospital and Medical Center: Preoperative medical evaluation of the surgical patient. San Francisco, CA: October 23, 1985.

Pan American Medical Seminar: Acne vulgaris in the adolescent. Mount Sinai Medical Center, Miami Beach, FL: October 21, 1988.

American Physicians Fellowship Annual Midwinter Assembly: Common dermatologic diseases. Hollywood, FL: March 4, 1988.

Gross and Microscopic Symposia, American Academy of Dermatology Annual Meeting: Lichen planus and ulcerative colitis. Washington, DC: December 4, 1988.

The Osler Internal Medicine Review: Common dermatologic diseases. Ft. Lauderdale, FL: September 6, 1989.

Gross and Microscopic Symposia, American Academy of Dermatology Annual Meeting: Subcutaneous fat necrosis associated with pancreatitis. San Francisco, CA: December 3, 1989.

Pediatric Clinic Conference, Alexian Brothers Hospital: Common Pediatric Dermatoses. San Jose, CA: December 7, 1990.

Medical Conference, Washington Hospital: Acne Vulgaris. Fremont, CA: January 25, 1991.

Curriculum Vitae
Sunil S. Dhawan, M.D.                              Revised 6/15/2015

4

Obstetrical Conference, Washington Hospital:  The Dermatoses of Pregnancy. Fremont, CA:  February 25, 1991.

Surgical Conference, Washington Hospital:  Common Surgical Dermatoses. Fremont, CA:  March 5, 1991.

Medical Conference, Alexian Brothers Hospital:  Dermatologic Unknowns. San Jose, CA:  March 25, 1991.

Hospital Grand Rounds, Alexian Brothers Hospital:  Melanoma. San Jose, CA:  April 2, 1991.

Medical Conference, Washington Hospital:  Dermatologic Manifestations of AIDS. Fremont, CA:  February 28, 1992.

Family Practice Conference, Washington Hospital:  Melanoma. Fremont, CA:  March 19, 1992.

Pediatric Conference, Alexian Brothers Hospital:  Acne Vulgaris.  San Jose, CA:  August 5, 1992.

Pediatric Conference, Alexian Brothers Hospital:  Atopic Dermatitis. San Jose, CA:  October 3, 1992.

Medical Conference, Alexian Brothers Hospital:  Cutaneous Manifestations of Systemic Disease. San Jose, CA:  April 26, 1993.

Medical Conference, Mount Zion Hospital/UCSF Medical Center:  Cutaneous Manifestations of Systemic Disease. San Francisco, CA:  May 14, 1993.

Medical Conference, Alexian Brothers Hospital:  Acne Vulgaris.  San Jose, CA:  June 27, 1994.

Hospital Grand Rounds, Alexian Brothers Hospital:  Geriatric Dermatology. San Jose, CA:  August 30, 1994.

Medical Conference, Washington Hospital:  Geriatric Dermatology. Fremont, CA:  February 24, 1995.

Hospital Grand Rounds, Alexian Brothers Hospital:  Geriatric Dermatology. San Jose, CA:  August 8, 1995.

Hospital Grand Rounds, San Jose Medical Center:  Common Dermatoses. San Jose, CA:  August 24, 1995.

Hospital Grand Rounds, Alexian Brothers Hospital:  Common Pediatric Dermatoses. San Jose, CA:  June 11, 1996.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                              Revised 6/15/2015

Medical Conference, Washington Hospital:  Geriatric Dermatology.

CTRL-DHAWAN-00008569

US-REPORTS-0008337

Fremont, CA:  April 25, 1997.

Medical Conference, Washington Hospital:  Dermatologic Unknowns.
Fremont, CA:  March 6, 1998.

Medical Conference, the Allergan Corporation:  Tazorac and Its Uses in
Psoriasis.  Mountain View, CA:  April 28, 1998.

Dermatology Residents Conference, Stanford University School of
Medicine, Department of Dermatology:  Unknowns.  Palo Alto, CA:  3
times per year since 1998.

Obstetrical Conference, Washington Hospital:  Common Dermatoses of
Pregnancy.  Fremont, CA, June 10, 1998.

Hospital Grand Rounds, Alexian Brothers Hospital:  Androgenetic
Alopecia and Other Forms of Diffuse Hair Loss.  San Jose, CA:  June
30, 1998

Internal Medicine Grand Rounds, Brookdale Hospital and the Mt. Sinai
School of Medicine Department of Dermatology:  Common Dermatoses
for the Internist.  Brooklyn, NY:  June 15, 1999.

Pediatric Conference, Alexian Brothers Hospital: Atopic Dermatitis.  San
Jose, CA:  December 10, 1999.

Medical Conference, San Jose Medical Group: Skin Cancer.  San Jose,
CA:  September 12 and November 16, 2000.

Pediatric Conference, Washington Hospital: Common Pediatric
Dermatoses.  Fremont, CA:  November 13, 2000.

Hospital Grand Rounds, Regional Medical Center:  Dermatologic
Unknowns.  San Jose, CA:  May 15, 2001.

Medical Conference, the Fujisawa Corporation:  Protopic and Atopic
Dermatitis.  San Jose, CA:  May 16, 2001.

Hospital Grand Rounds, Good Samaritan Hospital:  Dermatologic
Unknowns.  Los Gatos, CA:  June 20, 2001.

Medical Conference, the Fujisawa Corporation:  Protopic and Atopic
Dermatitis.  San Jose, CA:  May 16, 2001; Fremont, CA:  June 13,
2001; Danville, CA:  June 27, 2001; Monterey, CA:  July 11, 2001;
Salinas, CA:  July 25, 2001; Palo Alto, CA:  August 1, 2001; Mountain
View, CA:  August 15, 2001; Lafayette, CA:  September 5, 2001.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                      Revised 6/15/2015
Medical Conference, the Galderma Corporation:  Acne Vulgaris,
Moisturizers, and Melasma.  Seattle, WA:  February 5, 2002; Orem, UT:

6

CTRL-DHAWAN-00008569

US-REPORTS-0008338

May 8, 2002; Central Valley Dermatological Society Meeting, Fresno, CA: May 21, 2002; University of California San Diego Grand Rounds, San Diego, CA: June 13, 2002.

Medical Conference, the Connetics Corporation: <u>Vehicles</u>. San Jose, CA: April 2, 2002.

Medical Conference, the Dermik- Aventis Corporation: <u>Acne Vulgaris</u>. Palo Alto, CA: July 22, 2002.

Medical Conference, The Fujisawa Corporation: <u>Pediatric Dermatology</u>. Stockton, CA, August 7, 2002

Medical Conference, The Galderma Corporation: <u>Retinoids</u>. Westlake Village, CA: August 14, 2002.

Medical Conference, the Fujisawa Corporation: <u>Atopic Dermatitis</u>. Palm Springs, CA: August 21, 2002.

Medical Conference, the Glaxo Smith Kline Corporation: <u>Bacterial and Viral Skin Infections</u>. Sunnyvale, CA: September 18, 2002.

Medical Conference, the Fujisawa Corporation: <u>Pediatric Dermatology</u>. San Jose, CA: October 2, 2002.

Medical Conference, the San Jose Medical Group Department of Pediatrics: <u>Acne Vulgaris</u>. San Jose, CA: November 6, 2002.

Medical Conference, the Allergan Corporation: <u>Botox</u>. Stockton, CA: November 13, 2002.

Medical Conference, The Montana State Dermatology Society: <u>Vehicles and Moisturizers, Retinoids, Melasma, and Botox</u>. Big Sky, Montana: January 31-February 2, 2003.

Medical Conference, O'Connor Hospital: <u>Bacterial and Viral Skin Infections</u>. San Jose, CA: April 22, 2003

Medical Conference, San Jose Medical Group Department of Pediatrics: <u>Common Pediatric Dermatoses</u>. San Jose, CA: May 7, 2003.

Medical Conference, The San Jose Medical Group Department of Internal Medicine: <u>Bacterial and Viral Skin Infections</u>. San Jose, CA: June 4, 2003.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                    Revised 6/15/2015

Medical Conference, The Connetics Corporation: <u>Vehicles</u>. Mountain View, CA: June 18, 2003.

7

CTRL-DHAWAN-00008569

US-REPORTS-0008339

Medical Conference, Washington Hospital: <u>Acne Vulgaris</u>. Fremont, CA: June 20, 2003.

Medical Conference, The Aventis Corporation: <u>Acne Vulgaris</u>. San Jose, CA: July 16, 2003.

Medical Conference, The Aventis Corporation: <u>Acne Vulgaris</u>. Los Gatos, CA: July 23, 2003.

Medical Conference, The San Jose Medical Group, Department of Pediatrics: <u>Common Pediatric Dermatoses</u>. San Jose, CA: August 20, 2003

Medical Conference, The Siefel Corporation: <u>Acne Vulgaris</u>. Berkeley, CA: September 13, 2003.

Medical Conference, The Connetics Corporation: <u>Vehicles</u>. San Jose, CA: November 18, 2003.

Medical Conference, The Connetics Corporation: <u>Vehicles</u>. San Francisco, CA: December 3, 2003.

Medical Conference, The Connetics Corporation: <u>Vehicles</u> Stockton, CA: December 10, 2003.

Medical Conference, San Jose Medical Center Family Practice Residency Conference: <u>Common Pediatric Dermatoses</u>. San Jose, CA: January 29, 2004

Pediatric Conference, Kaiser Foundation Hospital: <u>Acne Vulgaris</u>. Oakland, CA: February 17, 2004.

Medical Conference, The Stiefel Corporation: <u>Vehicles</u>. Walnut Creek, CA: February 24, 2004.

Pediatric Conference, The Feindale Corporation: <u>Common Pediatric Dermatoses</u>. Fremont, CA: March 15, 2004.

Medical Conference, The Stiefel Corporation: <u>50 Pearls of Practice Management</u>. Seattle, WA: March 30, 2004

Medical Conference, The Sacramento Podiatric Society:. <u>Vehicles</u>. Sacramento, CA: April, 20, 2004.

Medical Conference, The Connetics Corporation: <u>Vehicles</u>. Walnut Creek, CA: May 18, 2004.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                    Revised  6/15/2015

Medical Conference, The Allergan Corporation: <u>Retinoids</u>. Denver, CO: June 15, 2004.

CTRL-DHAWAN-00008569

US-REPORTS-0008340

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris.
Fremont, CA:  July 28, 2004.

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris.
San Jose, CA:  August 4, 2004.

Medical Grand Rounds, Regional Medical Center:  Acne Vulgaris.  San
Jose, CA:  July 20, 2004.

Medical Grand Rounds, San Jose Medical Center:  Acne Vulgaris.  San
Jose, CA:  August 19, 2004.

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris.
San Jose, CA:  September 15, 2004.

Medical Conference, The Fujisawa Corporation:  Protopic.  Fremont,
CA:  October 7, 2004.

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris.
Fremont, CA:  October 20, 2004.

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris.
Orinda, CA:  November 10, 2004.

Medical Conference.  The Fujisawa Corporation:  Atopic Dermatitis.
San Jose, CA:  December 8, 2004.

American Academy of Dermatology Meeting:  Tazarotene Cream
(0.1%) in Combination with Betamethasone Valerate Foam (0.12%) for
Plaque Type Psoriasis.  New Orleans, LA:  February 18-22, 2005.

Pediatric Teleconference, the Pediamed Corporation:  Tazorac and
Acne.  Fremont, CA :  April 28, 2005.

Medical Conference, The Allergan Corporation:  Retinoids.  Calabasas,
CA:  May 10, 2005.

Pediatric Teleconference, The Pediamed Corporation:  Tazorac and
Acne.  Fremont, CA:  July 12 & 14, 2005.

Medical Conference, the Allergan Corporation:  Retinoids.  Walnut
Creek, CA  June 11, 2005.

National Eczema Association Conference:  Hand Dermatitis.  San Jose,
CA:  August 6, 2005.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                    Revised 6/15/2015

Poster Session, American Academy of Dermatology Summer Meeting:
Combination of Clindamycin/Tretinoin Hydrogel for the Treatment of

CTRL-DHAWAN-00008569

US-REPORTS-0008341

Acne Vulgaris in 1247 Adolescents.  Chicago, Illinois:  July 14-19, 2005.

Poster Session, American Academy of Dermatology, Summer Meeting: Modern Combination Treatments for Psoriasis Using Acetretin. Chicago, Illinois:  July 14-19, 2005.
Medical Conference, The California Association of Physicians' Assistants:  Acne Vulgaris.  Sacramento, CA.  October 20, 2005.

Medical Conference.  The Dermik Corporation:  Onychomycosis. Fremont, CA.  November 17, 2005.

Training Conference.  The Physicians Interaction with the Pharmaceutical Representative.  Irvine, CA:  January 4, 2006; May 5, 2006.

Medical Conference, The Dermik-Aventis Corporation:  Acne Vulgaris. Fremont, CA  January 25, 2006.

Poski Session, American Academy of Dermatology, Annual Meeting: Tolerability and Preference of Two Benzoyl Peroxide/Clindamycin gels in Combination with Tretinoin .025% cream in Adult Female Acne Patients.  San Francisco, CA  March 3-7, 2006.

Medical Conference, The Warner Chilcott Corporation:  The Use of Taclonex in Psoriasis.  Santa Rosa, CA:  June 14, 2006.

Medical Conference, The Warner Chilcott Corporation:  The Use of Taclonex in Psoriasis:  Reno, Nevada:  June 25, 2006.

Medical Conference, The Warner Chilcott Corporation:  The Use of Taclonex in Psoriasis:  Bakersfield, CA:  September 19, 2006.

Medical Conference, The Warner Chilcott Corporation:  The Use of Taclonex in Psoriasis:  Fresno, CA:  September 20, 2006.

Medical Conference, The Warner Chilcott Corporation:  The Use of Taclonex in Psoriasis:  Napa, CA:  October 4, 2006.

Medical Conference, The Connetics Corporation:  The Use of Foams in Pediatrics.  San Jose, CA:  October 18, 2006

Medical Conference, The Connetics Corporation:  The Use of Foams in Pediatrics.  Sacramento, CA:  November 15, 2006

Curriculum Vitae
Sunil S. Dhawan, M.D.                                     Revised  6/15/2015
Training Conference, The Allergan Corporation:  Interacting with the Dermatologist.  Santa Ana, CA:  September 23, 2006

American Academy of Dermatology Meeting:  Tazarotene plus

CTRL-DHAWAN-00008569

US-REPORTS-0008342

Clindamycin in the Treatment of Acne Vulgaris:  A Multicenter Investigation – Blind Randomized Parallel Group Study.  Washington, D.C.:  February 2-7, 2007.

Winter Clinical Meeting:  A Comparison of Two Benzoyl Peroxide 5%/ Clindamycin 1% Topical Gels Used Once Daily in the Management of Acne Vulgaris.  Hawaii, January 15, 2007.

Tazarotene Training Meeting, the Allergan Corporation.  Tazarotene Tolerability.  Dallas, TX:  June 6, 2007.

Training Meeting, the Stefel Corporation.  Physicians and Pharmaceutical Representatives.  Atlanta, Georgia:  June 15, 2007.

Medical Conference, The Skin Medica Corporation.  Desonate Gel.  Mountain View, CA:  June 19, 2007.

Tazarotene Training Meeting, the Allergan Corporation.  Tazarotene Tolerability.  Napa, CA:  July 15, 2007

Training Meeting, the Pharmaderm Corporation.  Physicians and Pharmaceutical Representatives; Dermatology 101; Fungal Infections.  Atlanta, Georgia:  September 16, 2007.

Training Meeting, the Stiefel Corporation.  Soriatane.  Dallas, Texas:  October 17, 2007.

The Skin Medica Corporation.  Desonate and the History of Topical Steroids.  San Francisco, CA:  January 15, 2008.

The Obagi Corporation.  Acne and Clenziderm.  Palo Alto, CA:  May 14, 2008.

The Stiefel Corporation.  Training meeting.  Product Benefits and Competitive Landscape.  Atlanta, GA:  August 12, 2008.

The Galderma Corporation.  Acne Vulgaris.  San Jose, CA:  October 5, 2008.

The Warner Chilcott Corporation.  Doryx.  Seattle, WA:  January 27, 2009.

Training Session, The Stiefel Corporation.  Atlanta, GA.  February, 11, 2009.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                              Revised 6/15/2015

The American Association of Physicians of Indian Origin.  Acne Vulgaris.  Newark, CA:  February 13, 2009.

The Warner Chilcott Corporation.  Doryx.  San Francisco, CA:  March

CTRL-DHAWAN-00008569

US-REPORTS-0008343

5, 2009.

The Galderma Corporation. <u>Acne Vulgaris.</u> Fresno, CA: March 25, 2009.

The Galderma Corporation. <u>Acne Vulgaris.</u> Pasadena, CA: April 1, 2009.

Washington Hospital Grand Rounds. <u>The Rational Use of Topical Steroids.</u> Fremont, CA: April 8, 2009.

Regional Medical Center of San Jose Grand Rounds. <u>The Rational Use of Topical Steroids.</u> San Jose, CA: May 5, 2009.
The Galderma Corporation. <u>Vectical.</u> San Jose, CA  May 6, 2009.

The Warner Chilcott Corporation. <u>Doryx and Taclonex.</u> San Jose, CA: May 20, 2009.

Summer AAD Poster 2009. Comparing Noxel solubilized benzoyl peroxide gel with benzoyl peroxide/clindamycin. Final data from a multicenter investigation blind randomized study. Botson, MA: July 29 - August 2, 2009.

Regional Medical Center of San Jose Grand Rounds. <u>Geriatric Dermatology.</u> San Jose, CA: September 23, 2009.

American Academy of Dermatology Summer Meeting. <u>Evaluation of a Blue Light Treatment System for the Self-Treatment of Mild-Moderate Acne.</u> Chicago, IL. July, 2010

Fall Clinical Dermatology Meeting. <u>Clinical Evidence for the Role of a Topical Anti-inflammatory Agent in Comedonal Acne: Findings from a Study of Dapsone 0.5% Gel in Combination with Tazarotene 0.1% Cream in Patient's with Acne Vulgaris.</u> Las Vegas, NV: October 8-11, 2010.

Tria Beauty Web Conference. <u>A Novel Over the Counter Blue Light System for Treating Acne.</u> Dublin, CA  December 10, 2010.

World Congress of Dermatology. <u>Evaluation of a Blue Light Treatment System for the Self Treatment of Mild to Moderate Acne.</u> Seoul, Korea: May 2011.

Curriculum Vitae
Sunil S. Dhawan, M.D.

Revised  6/15/2015

Orlando Dermatology Aesthetic and Clinical Conference. <u>Evaluation of a Blue Light Treatment System for the Self Treatment of Mild-Moderate Acne.</u> Orlando, FL: January 14-17, 2011.

Orlando Dermatology Aesthetic and Clinical Conference. <u>Tolerability in</u>

CTRL-DHAWAN-00008569

US-REPORTS-0008344

Asian Skin of a Consumer Blue Light Device for the Self Treatment of Acne Vulgaris. Orlando, FL. January 2011.

Maui Dermatology Conference. Evaluation of a Blue Light Treatment System for the Self Treatment of Mild-Moderate Acne. Maui, Hawaii: February 23-27, 2011.

Maui Dermatology Conference. Tolerability in Asian Skin of a Consumer Blue Light Device for the Self Treatment of Acne Vulgaris. Maui, Hawaii. February 2011.

Efficacy and Safety of a Novel Dual Resurfacing Product that Combines the Benefits of Manual Microdermabrasion and Chemical Peeling. AAD summer meeting, 8/3-8/7/2011.

The Stefel IGSK Corporation, Veltin Gel. San Jose, CA. November 16, 2011.

The American Academy of Dermatology Meeting. Tolerability in Asian Skin of a Consumer Blue Light Device for the Self Treatment of Acne Vulgaris. San Diego, CA: March 17, 2012.

Skin of Color Seminar Series. Tolerability in Asian Skin of a Consumer Blue Light Device for the Self Treatment of Acne Vulgaris. Las Vegas, NV: June 2-3, 2012.

Skin of Color Seminar Series. Evaluation of a Blue Light Treatment System for the Self Treatment of Mild-Moderate Acne. Las Vegas, NV: June 2-3, 2012.

Medical Conference, the Leo Pharma Corporation. Picato. San Jose, CA: June 5, 2012.

Medical Conference, the Leo Pharma Corporation. Picato. Fremont, CA: July 10, 2012.

The Allergan Corporation. The Life of a Dermatologist. Irvine, CA: September 7, 2012.

Medical Conference, the Leo Pharma Corporation. Picato. Redwood City, CA: December 10, 2012.

Medical Conference, the Merz Corporation. Tinea Pedis. San Jose, CA: January 8, 2013.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                    Revised  6/15/2015

Medical Conference, the Leo Corporation: Picato. Monterey, CA: March 19, 2013

**CLINICAL RESEARCH**

13

CTRL-DHAWAN-00008569

US-REPORTS-0008345

**EXPERIENCE:**

2014 – Principal investigator in four phase 3 acne trials, one phase 2 oral acne trials, four phase 3 systemic psoriasis trials, two phase 3 topical psoriasis trials, three phase 3 atopic dermatitis trials – topical and systemic, one phase 2 pruritus trial, one phase 3 hyperhidrosis trial, four phase 3 actinic keratosis trials, one phase 3 erythema trial, one phase 3 rhytide trial, and two phase 3 rosacea trials.

2013 – Principal Investigator in four phase 3 acne trials, two phase 3 systemic psoriasis trials, one phase 3 topical psoriasis trial, one phase

3 systemic atopic dermatitis trial, one phase 2 topical atopic dermatitis trial, two phase 3 actinic keratosis trial, one phase 3 tinea pedis trial, two phase 3 actinic keratosis trials, one phase 3 pruritis oral trial, and one phase 3 hair growth trial.

2012 – Principal investigator in three acne phase 3 trials, two phase 3 systemic psoriasis trials, two phase 2 atopic dermatitis trials, one phase 3 seborrheic dermatitis trial, one phase 3 actinic keratosis trial and two phase 3 tinea pedis trials. Met or exceeded all targets except in the seborrheic dermatitis  trials where our site reached 80% of the target.

2011 – Principal investigator in three phase 3 and two phase 4 acne trials, two phase 3 psoriasis trials, one phase 3 onychomycosis trial, one phase 3 tinea pedis trial, one phase 3 tinea cruris trial.  Met or exceeded enrollment targets except in the tinea cruris trial.

2010 – Principal investigator in three phase 3 and two phase 4 acne trials, two phase 3 psoriasis trials, one phase 4 chemical peel trial and one phase 4 erythema trial.

2009- Principal investigator in two phase 3 topical actinic keratosis trails, four phase 3 and 4 acne vulgaris trials, five phase 3 and 4 systemic and topical psoriasis trials, one phase 2 oral onychomycosis trial, one phase 4 cosmetic topical trial, one phase 2 topical atopic dermatitis trial, and two phase 3 and 4 topical and oral rosacea trials.

2008 – principal investigator three phase 3, and three phase 4 acne trials; two phase 3 psoriasis trials; three phase 3 actinic keratoses trials; two phase 3 onychomycosis trials; and one phase 3 genital wart trial. All ongoing or completed, and met targets except in the genital wart trial where our site reached 65% of our target.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                    Revised  6/15/2015

2007 – principal investigator for 4 phase 4 topical acne trials, one phase 3 actinic keratosis trial, one phase 3 topical psoriasis trial, one phase 3 oral onychomycosis trial.

2006 – principal investigator for 4 phase 4 topical acne trials, one phase 3 topical actinic keratosis trial, one phase 3 topical psoriasis trial, and

CTRL-DHAWAN-00008569

US-REPORTS-0008346

one phase 3 oral onychomycosis trial.  Met or exceeded enrollment targets.

2005 - principal investigator for two Phase III trials for  atopic dermatitis products, and two acne products-ongoing

2004 - principal investigator for  phase III trials for a topical psoriasis product , and three topical combination acne products- met or exceeded enrollment targets.

2003 - 2004 - principal investigator for a Phase III trial for a topical antifungal, and a phase IV trial for a topical agent for actinic keratosis. Met enrollment targets quickly.

2003 - principal investigator for a Phase III trial for a topical combination acne product.  Met enrollment targets quickly (70 patients) and acted as a rescue site for sites that could not enroll enough patients.

1996 - principal investigator for a Phase IV trial for an oral antifungal trial.  Met enrollment target quickly (20 patients).

1987 - 1990 - subinvestigator for three Phase III trials for topical steroid and antifungal preparations.

**HOSPITAL STAFF PRIVILEGES:**

Washington Hospital, Fremont, CA
Regional Medical Center Hospital, San Jose, CA

**COMMUNITY ACTIVITIES:**

Chairperson Patron Fund Committee, The American Association of Physicians of Indian Origin, 2003-present.

Editor, The Newsletter of the American Association of Physicians of Indian Origin, 2003-2004.

President, The American Association of Physicians of Indian origin, 2002-2003, representing over 700 physicians of East Indian origin in Northern California.

Vice President, The American Association of Physicians of India Origin 2001-2002.

Curriculum Vitae
Sunil S. Dhawan, M.D.                                              Revised  6/15/2015

Chairperson, CME Committee, The American Association of Physicians of Indian Origin, 2001-2002.

Health Fair Committee, The American Association of Physicians of Indian Origin, 1991-2000.

15

CTRL-DHAWAN-00008569

US-REPORTS-0008347

Secretary, The American Association of Physicians of Indian Origin, 1993 - 1994, 2000-2001.

Treasurer, The American Association of Physicians of Indian Origin, 1991 - 1993.

Lecturer on skin cancer prevention:  Washington Hospital,  to the City of San Jose employees, the Rotary, Lions and Kiwanis Clubs, Milpitas High School, and corporations such as PG&E, Quantum, Lifescan, Sun

Microsystems, Varian and Associates, Johnson and Higgins, Applied Materials, Apple, 3-Com, FMC, Novell, Club Sport Athletic Club, IndoAmerican Community Center, Temple Beth Torah – Fremont.

Chairperson, Skin Cancer Screening for Southern Alameda County, American Academy of Dermatology, 1991, 1992, 1993, 1994, 1997, 2004, 2005, 2006.

Lecturer on Atopic Dermatitis and treatment with new topical immune modulators:  to the public at multiple sites in the Bay Area in 2001-2002.

Member of the Board of Trustees, The American Association of Physicians of Indian Origin, 2004-present.

Skin cancer screening at various health fairs including those Sponsored by the American Association of Physicians of Indian Origin, the Livermore Hindu Temple, the Santa Clara Department Of Social Services.

Curriculum Vitae
Sunil S. Dhawan, M.D.

Revised  6/15/2015

CTRL-DHAWAN-00008569

US-REPORTS-0008348

| | |
|---|---|
| **To:** | Sunil Dhawan[ █████████████ ] |
| **From:** | Sunny Balwani |
| **Sent:** | Wed 11/19/2014 11:10:42 PM |
| **Importance:** | Normal |
| **Subject:** | RE: Lab Director |
| **Received:** | Wed 11/19/2014 11:10:41 PM |

this is all we need.

we have all paperwork in place and I will have one of the couriers bring it by your office tomorrow am for your signature.

thanks for this. I appreciate it.

**From:** Sunil Dhawan [mailto: ██ ████████ ]
**Sent:** Wednesday, November 19, 2014 11:02 AM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

we have a certificate for the practice and I am the lab director- is that ok?

Sunil S. Dhawan, MD

Center for Dermatology, Inc.

Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF

408 957-7676X3-Office-TTh

 ██ ███████████

████████████- email

www. centerforderm.com- main practice site

www.ctr4derm.com- clinical research site

On Tuesday, November 18, 2014 2:22 PM, Sunny Balwani <sbalwani@theranos.com> wrote:

Thanks for this.

I assume you don't have the CLIA licensing. If that's correct then first thing would be to file your paperwork for this which my lawyers can do. We have a great team which is very experienced. If ok, I will ask Brad Arington, our senior Regulatory affairs council to reach out to you and get this going.  As soon as all this is done, we can put your name on our company's certificate. In the meantime, I can send you a short contract to take care of the business side of this.

CTRL-DHAWAN-00007480

US-REPORTS-0008349

Sunny.

---------- Forwarded message ----------
From: **Sunil Dhawan** <​███████████​>
Date: Tue, Nov 18, 2014 at 12:43 PM
Subject: Re: Lab Director
To: Sunny Balwani <sunny@darwin20.com>

Sunny,

I can do this- what is next step?

Sunil Dhawan

Sunil S. Dhawan, MD

Center for Dermatology, Inc.

Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF

408 957-7676X3-Office-TTh

510 ████████

████████ - email

www. centerforderm.com- main practice site

www.ctr4derm.com- clinical research site

On Friday, November 14, 2014 8:04 PM, Sunny Balwani <​███████████​> wrote:

Sunil.

Thanks for talking my call.

The time commitment is very minimal. This will be mostly an on call consulting role and I am extremely confident that it wont interfere with your work or with your family life. I am attaching the requirements here. Please let me know if you will be able to do this or perhaps someone else you know. This will be 1-3 months

CTRL-DHAWAN-00007480

US-REPORTS-0008350

role.

Thanks in advance.

With my best regards,

Sunny Balwani



==============

For an MD to serve as a lab director, the California statute (1209(a))includes a duly licensed physician and surgeon.   To practice medicine in California, the M.D. would have to be licensed in California.  From 1209(a): "laboratory director" means *any*

*person who is a duly licensed physician and surgeon...*

An MD also has to meet the requirements under CLIA which are provided in Section 493.1443. For MDs there are the following alternatives:

**1.     Licensed to practice medicine in the State in which the laboratory is located <u>and</u> certified in anatomic or clinical pathology, or both, by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification**

**2.     Licensed to practice medicine in the State in which the laboratory is located <u>and</u> Either:  (i)  Have at least one year of laboratory training during medical residency (for example, physicians certified either in hematology or hematology and medical oncology by the American Board of Internal Medicine – see additional information from the Interpretive Guidelines below on Residency Training); or (ii) Have at least 2 years of experience directing or supervising high complexity testing (see additional information from the Interpretive Guidelines on Training and Experience below)**

Additional information:

CTRL-DHAWAN-00007480

Interpretive Guidelines "Residency Training"  --

The residency program should provide the director the knowledge in principles and theories of laboratory practice including: quality control and quality assessment, proficiency testing, the phase of the total process (i.e., preanalytic, analytic and postanalytic), as well as, general laboratory systems, facility administration, and development and implementation of personnel policy and procedure manuals. This training should also include hands-on laboratory testing.


Interpretive Guidelines: "Training and Experience"

The type of experience required under this regulation is clinical in nature. This means directing or supervising personnel who examine and perform tests on human specimens for the purpose of providing information that is used in diagnosing, treating, and monitoring a patient's condition. This experience may include the laboratory director personally examining and performing tests on patient specimens. Patient or medically-oriented experience, which is defined as the ordering of tests and interpreting and applying the results of these tests in diagnosing and treating a patient's illness is unacceptable to meet the requirement for laboratory training or experience.

The laboratory director should have documentation, e.g., signed procedure manuals, test reports, worksheets and workcards, that indicates the director assumes the responsibilities in §493.1445.


Teaching experience directly related to a medical technology program, clinical laboratory sciences program, or a clinical laboratory section of a residency program is considered acceptable experience. Research experience is also acceptable experience if it is obtained while performing tests on human specimens.

CTRL-DHAWAN-00007480

US-REPORTS-0008352

**To:** ████████ w@██████ ]
**From:** Scott Marmer
**Sent:** Tue 11/25/2014 9:50:15 PM
**Importance:** Normal
**Subject:** Theranos - Dr. Dhawan Consulting Agreement
**Received:** Tue 11/25/2014 9:50:10 PM

Hi Dr. Dhawan,

Attached please find an executed copy of the Consulting Agreement for your records.

Best,

Scott

Scott Marmer

Theranos, Inc.

650-320-2719

smarmer@theranos.com

CONFIDENTIALITY NOTICE: This e-mail transmission (including any attachments accompanying it) is intended only for the use of the intended recipient, is Theranos, Inc. confidential information, and may contain information that is privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this e-mail transmission is strictly prohibited. If you have received this transmission in error, please promptly notify the sender by replying to this e-mail and then destroy all copies of the transmission.

CTRL-DHAWAN-00007663

US-REPORTS-0008353

theranos

THERANOS, INC.

### CONSULTING AGREEMENT

This Consulting Agreement (this "**Agreement**") is entered into as of November 19, 2014 (the "**Effective Date**") by and between Theranos, Inc. (the "**Company**") and Individual ("**Consultant**"). In consideration of the mutual promises contained herein, the parties agree as follows:

1. *Services and Compensation*. Consultant agrees to perform for the Company the services described in <u>Exhibit A</u> (the "**Services**"), and the Company agrees to pay Consultant the compensation described in <u>Exhibit A</u> for Consultant's performance of the Services in accordance with the terms and conditions of this Agreement.

2. *Confidentiality.*

A. *Definition.* "**Confidential Information**" means any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, information which relates to patents, patent applications, trade secrets, research, research plans, research results and data (clinical and non-clinical), patient records, ideas, product plans, products, inventions, processes, procedures, "know-how", prototypes, specifications, software, programs, algorithms, systems, models, source code, object code, commercial plans and strategy, development plans, designs, drawings, diagrams, engineering and manufacturing plans, formulae, regulatory information, medical reports, reagents, cell lines, biological materials, new product or technology information, agreements with third parties, services, customer lists and customers (including, but not limited to, customers of the Company on whom Consultant called or with whom Consultant became acquainted during the term of this Agreement), suppliers or personnel names, business and marketing plans or financial information of the Company, and other information of a similar nature. Confidential Information does not include information that (i) is known to Consultant at the time of disclosure to Consultant by the Company as evidenced by written records of Consultant, (ii) has become publicly known and made generally available through no wrongful act of Consultant or (iii) has been rightfully received by Consultant from a third party who is authorized to make such disclosure.

B. *Nonuse and Nondisclosure.* Consultant will not, during or subsequent to the term of this Agreement, (i) use the Confidential Information for any purpose whatsoever other than the performance of the Services on behalf of the Company or (ii) disclose the Confidential Information to any third party. Consultant agrees that all Confidential Information will remain the sole property of the Company. Consultant also agrees to take all reasonable precautions to prevent any unauthorized disclosure of such Confidential Information. Without the Company's prior written approval, Consultant will not directly or indirectly disclose to anyone the existence of this Agreement or the fact that Consultant has this arrangement with the Company.

C. *Former Client Confidential Information.* Consultant agrees that Consultant will not improperly use or disclose any proprietary information or trade secrets of any former or current employer of Consultant or other person or entity with which Consultant has an agreement or duty to keep in confidence information acquired by Consultant, if any. Consultant also agrees that Consultant will not bring onto the Company's premises any unpublished document or proprietary

THERANOS CONFIDENTIAL

CTRL-DHAWAN-00007664

US-REPORTS-0008354

# theran⚬s

information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

D. *Third Party Confidential Information.* Consultant recognizes that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Consultant agrees that, during the term of this Agreement and thereafter, Consultant owes the Company and such third parties a duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out the Services for the Company consistent with the Company's agreement with such third party.

E. *Return of Materials.* Upon the termination of this Agreement, or upon Company's earlier request, Consultant will deliver to the Company all of the Company's property, including but not limited to all electronically stored information and passwords to access such property, and/or all notes, documents or materials containing Confidential Information that Consultant may have in Consultant's possession or control. Upon Company's request, Consultant shall certify compliance with this Section in a signed writing.

3. *Ownership.*

A. *Assignment.* Consultant agrees that all copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, developed or reduced to practice by Consultant, solely or in collaboration with others, during the term of this Agreement that relate in any manner to the business of the Company that Consultant may be directed to undertake, investigate or experiment with or that Consultant may become associated with in work, investigation or experimentation in the Company's line of business in performing the Services under this Agreement (collectively, "**Inventions**"), are the sole property of the Company. Consultant also agrees to assign (or cause to be assigned) and hereby assigns fully to the Company all Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating to all Inventions.

B. *Further Assurances.* Consultant agrees to assist Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating to all Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect to all Inventions, the execution of all applications, specifications, oaths, assignments and all other instruments that the Company may deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive right, title and interest in and to all Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating to all Inventions. Consultant also agrees that Consultant's obligation to execute or cause to be executed any such instrument or papers shall continue after the termination of this Agreement.

C. *Pre-Existing Materials.* Subject to **Section 3.A**, Consultant agrees that if, in the course of performing the Services, Consultant incorporates into any Invention developed under this Agreement any pre-existing invention, improvement, development, concept, discovery or other proprietary information owned by Consultant or in which Consultant has an interest, (i) Consultant

Sunil Dhawan Consulting Agreement                                    THERANOS CONFIDENTIAL

CTRL-DHAWAN-00007664

US-REPORTS-0008355

# theran✲s

will inform Company, in writing before incorporating such invention, improvement, development, concept, discovery or other proprietary information into any Invention, and (ii) the Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, worldwide license to make, have made, modify, use and sell such item as part of or in connection with such Invention. Consultant will not incorporate any invention, improvement, development, concept, discovery or other proprietary information owned by any third party into any Invention without Company's prior written permission.

D. *Attorney-in-Fact.* Consultant agrees that, if the Company is unable because of Consultant's unavailability, dissolution, mental or physical incapacity, or for any other reason, to secure Consultant's signature for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to the Company in **Section 3.A**, then Consultant hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Consultant's agent and attorney-in-fact, to act for and on Consultant's behalf to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by Consultant. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

4. *Term and Termination.*

A. *Term.* The term of this Agreement will begin on the Effective Date and will continue until the earlier of (i) final completion of the Services or (ii) termination as provided in **Section 6.B**.

B. *Termination.* Company may terminate this Agreement immediately upon giving Consultant written notice of such termination pursuant to **Section 13.F** of this Agreement. Consultant may terminate this Agreement if Company is in breach of any material provision of this Agreement and such breach continues uncured for 30 days after receiving written notice of such breach from Consultant.

C. *Survival.* Upon any termination, all rights and duties of the Company and Consultant toward each other shall cease except:

(1) The Company will pay, within 30 days after the effective date of termination, all amounts owing to Consultant for Services completed and accepted by the Company prior to the termination date and related reimbursable expenses, if any, submitted in accordance with the Company's policies and in accordance with the provisions of **Section 1** of this Agreement; and

(2) Section 2 (Confidentiality), Section 3 (Ownership), Section 4(c) (Survival), Section 5 (Independent Contractor; Benefits), Section 7 (Limitation of Liability), and Section 8 (Miscellaneous) will survive termination or expiration of this Agreement.

5. *Independent Contractor; Benefits.*

A. It is the express intention of the Company and Consultant that Consultant perform the Services as an independent contractor to the Company. Nothing in this Agreement shall in any way be construed to constitute Consultant as an agent, employee or representative of the Company. The Company and Consultant agree that Consultant will receive no Company-sponsored benefits from

CTRL-DHAWAN-00007664

US-REPORTS-0008356

theran⬡s

the Company even if Consultant is reclassified by a state or federal agency or court as the Company's employee.

B. *Non-disparagement.* Consultant agrees not to make any statements, written or verbal, or to cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, products, services, or conduct of Company, its employees, executives, directors, or officers. The foregoing sentence shall not prevent Consultant from making any truthful statement in connection with a legal proceeding brought by a party or any governmental authority.

6. *Representations and Warranties.* Consultant represents and warrants that it will perform the Services in a first class, professional manner consistent with any requirements set forth in Exhibit A. Consultant represents and warrants that all Services will be provided in accordance with any and all applicable laws and regulations

7. *Limitation of Liability.* IN NO EVENT SHALL COMPANY BE LIABLE TO CONSULTANT OR TO ANY OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOST PROFITS OR LOSS OF BUSINESS, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHER THEORY OF LIABILITY, REGARDLESS OF WHETHER COMPANY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. IN NO EVENT SHALL COMPANY'S LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT EXCEED THE AMOUNTS PAID BY COMPANY TO CONSULTANT UNDER THIS AGREEMENT FOR THE SERVICES, DELIVERABLES OR INVENTION GIVING RISE TO SUCH LIABILITY.

8. *Miscellaneous.*

A. *Governing Law.* This Agreement shall be governed by the laws of the State of California without regard to the conflicts of law rules of any jurisdiction. The parties hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in Santa Clara County, California. *Assignability.* Except as otherwise provided in this Agreement, Consultant may not sell, assign or delegate any rights or obligations under this Agreement. The Company may freely assign its rights, duties, or obligations under this Agreement without Consultant's prior written consent, including by operation of law or in connection with a merger, acquisition, reorganization, or sale of all or substantially all of its assets. *Entire Agreement.* This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all prior written and oral agreements between the parties regarding the subject matter of this Agreement. To the extent any terms set forth in any exhibit or schedule conflict with the terms set forth in this Agreement, the terms of this Agreement shall control unless otherwise expressly agreed by the parties in such exhibit or schedule. *No Publicity, No Marketing.* Consultant will not prepare or distribute any public filing or publicity material, including without limitation any public statement, marketing, or announcement, that refers to or is about Company, any product or service of Company, or this Agreement without Company's prior written approval. Consultant will not use Company's name or refer to Company, directly or indirectly, in any manner in any communication, whether written, oral, otherwise, to any customer or potential customer. Consultant will provide Company with as much prior notice as possible in the

CTRL-DHAWAN-00007664

US-REPORTS-0008357

# theran⚬s

event that Consultant is required by law to do any of the foregoing. *Attorneys' Fees*. In any court action at law or equity that is brought by one of the parties to this Agreement to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, in addition to any other relief to which that party may be entitled. *Modification, Waiver, Severability*. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the parties. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach. If any provision of this Agreement is found to be illegal or unenforceable, the other provisions shall remain effective and enforceable to the greatest extent permitted by law. *Signatures*. This Agreement may be signed in two counterparts, each of which shall be deemed an original, with the same force and effectiveness as though executed in a single document. *Headings*. Headings are used in this Agreement for reference only and shall not be considered when interpreting this Agreement. *Notices*. Any notice or other communication required or permitted by this Agreement to be given to a party shall be in writing and shall be deemed given if delivered personally or by commercial messenger or courier service, or mailed by U.S. registered or certified mail (return receipt requested) to the party at the party's address set forth below or at such other address as the party may have previously specified by like notice. If by mail, delivery shall be deemed effective three business days after mailing in accordance with this Section.

(1) If to the Company, to: Theranos, Inc.; 1701 Page Mill Rd.; Palo Alto, CA 94304; Attn: Legal (Contracts).

(2) If to Consultant, to the address for notice on the signature page to this Agreement, or, if no such address is provided, to the last address of Consultant provided to the Company.

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the Effective Date.

| CONSULTANT | COMPANY |
|---|---|
| By: *Sunil S. Dhawan* | By: |
| Name: Sunil S. Dhawan | Name: Sunny Belwani |
| | Title: President & COO |

Address for Notice:

████████████████

THERANOS CONFIDENTIAL

CTRL-DHAWAN-00007664

US-REPORTS-0008358

theranos

EXHIBIT A

Services and Compensation

1.  *Contact.* Consultant's principal Company contact: Sunny Balwani, President & COO.

2.  *Services.* The Services shall include, but shall not be limited to, the following:

serving as a laboratory director and clinical consultant of Theranos' CLIA laboratory in California and fulfilling the duties of a California-licensed and CLIA-qualified Clinical Laboratory Director and clinical consultant.

3.  *Compensation.*

The Company will pay Consultant $5000 per month. Every month, Consultant shall submit to the Company a written invoice for Services to ap@theranos.com, and such statement shall be subject to the approval of the contact person listed above or other designated agent of the Company. Payments will be made within 30 days of the date the invoice is received by Theranos. On or before May 19, 2015, Company and Consultant will assess this Agreement and the terms of Service to the Company going forward. If this Agreement is not extended in writing beyond that date or if no other contract is agreed upon in writing, this Agreement will terminate on that date.

Sunil Dhawan Consulting Agreement

THERANOS CONFIDENTIAL

CTRL-DHAWAN-00007664

US-REPORTS-0008359

**To:** ▆
**Cc:** Daniel Young[dyoung@theranos.com]
**From:** Langly Gee
**Sent:** Tue 8/4/2015 2:36:31 PM
**Importance:** Normal
**Subject:** Hello
**Received:** Tue 8/4/2015 2:36:30 PM

Hi Dr. Dhawan:

My name is Langly Gee and I am the QA/QC Manager for Theranos, Inc.

I was given your email address from Daniel Young and I am to begin sending you documents for your signature.

My first set of seven documents (Validation, SOPs and employee training) has to do with Theranos' new launch of T-cell, B-cell, NK-cell assay.  These documents will arrive in your email today through the DocuSign application.  Please review these documents and I have set up a specific page on each document for you to electronically sign, print name and date.

Once you receive the email, you will have 30 days to review the documents and send them back to me.  Going forward there will be at least another 300 – 400 more documents for your review.  I would like to ask your opinion as to how you would like them sent, i.e. all at once, 50 per week.  Please advise.

If you have any questions, please do not hesitate to contact me.

Langly Gee

Theranos, Inc.

QA/QC Manager

Lgee@theranos.com

650.683.0906

CTRL-DHAWAN-00009513

**To:**      Sunny Balwani[sbalwani@theranos.com]
**From:**    Sunil Dhawan
**Sent:**    Mon 6/1/2015 1:47:51 PM
**Importance:**   Normal
**Subject:** Re: Lab Director
**Received:**    Mon 6/1/2015 1:46:25 PM

The 

thanks.
Sunil


On Sunday, May 31, 2015 10:15 AM, Sunny Balwani <sbalwani@theranos.com> wrote:

Do you want shares in your name or kids or some other entity?


On May 31, 2015, at 10:13 AM, Sunil Dhawan <███████> wrote:

Update please?
Sunil


On Saturday, May 16, 2015 4:17 PM, Sunil Dhawan <███████> wrote:

will contact you in a couple of weeks.
Sunil


On Friday, May 15, 2015 5:58 PM, Sunny Balwani <sbalwani@theranos.com> wrote:

that's cool. you are more organized than I am.  I will followup. this is on my radar so haven't forgotten for sure.

**From:** Sunil Dhawan [mailto███████]
**Sent:** Friday, May 15, 2015 5:50 PM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

thx sorry to be a pest....
 have multiple projects going so have to stay on top of all of them!
 SD

On Friday, May 15, 2015 2:37 PM, Sunny Balwani <sbalwani@theranos.com> wrote:

you should have received all the docs.. I will check to see where they are stuck…..

**From:** Sunil Dhawan [mailto███████]
**Sent:** Friday, May 15, 2015 6:31 AM
**To:** Sunny Balwani

CTRL-DHAWAN-00008174

Subject: Re: Lab Director

? any updates?
Thanks!
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
    408 957-7676X3-Office-TTh
    ▮ ▬▬▬▬▬-Cell
    ▮▬▬▬▬▬ - email
www. centerforderm.com- main practice site
www.ctr4derm.com- clinical research site.


On Tuesday, April 28, 2015 10:06 AM, Sunil Dhawan <▬▬▬▬▬▬▬> wrote:

Thanks!
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
    408 957-7676X3-Office-TTh
    ▮ ▬▬▬▬▬)-Cell
    ▮▬▬▬▬▬ - email
www. centerforderm.com- main practice site
www.ctr4derm.com- clinical research site.


On Tuesday, April 28, 2015 7:10 AM, Sunny Balwani <<u>sbalwani@theranos.com</u>> wrote:

Sunil the paperwork should be on its way this week.  Was out of town for few days so couldn't
follow up but will get this done this week.

Thanks.

On Apr 28, 2015, at 6:18 AM, Sunil Dhawan <▬▬▬▬▬▬▬▬ wrote:

        Sunny,
         Any updates?
        Sunil S. Dhawan, MD
        Center for Dermatology, Inc.
        Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
        408 957-7676X3-Office-TTh
        ▮ ▬▬▬▬▬▮
        ▮▬▬▬▬▬ - email
        www. centerforderm.com- main practice site
        www.ctr4derm.com- clinical research site.


On Thursday, April 23, 2015 8:21 PM, Sunil Dhawan ▬▬▬■▬▬▬> wrote:

CTRL-DHAWAN-00008174

Sunny.
 Any updates on the paperwork?
Thanks.
Sunil
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
408 957-7676X3-Office-TTh
 59          -Cell
                    - email
www. centerforderm.com- main practice site
www.ctr4derm.com- clinical  research site


On Monday, March 30, 2015 12:52 PM, Sunil Dhawan <▮▮▮▮▮▮▮▮▮▮▮> wrote:

thx.
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
408 957-7676X3-Office-TTh
-Cell
                    - email
www. centerforderm.com- main practice site
www.ctr4derm.com- clinical  research site


On Monday, March 30, 2015 11:58 AM, Sunny Balwani <sbalwani@theranos.com> wrote:

don't worry about the checks. they were in the system and are being autogenerated. I have asked
finance to remove them.  will get the options paperwork by 20th. have the quarterly approval meeting
on 15th.

thanks

**From:** Sunil Dhawan [mailto:]
**Sent:** Sunday, March 29, 2015 9:08 PM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

? any updates on the options
 got the 3rd check.
Sunil Dhawan


On Wednesday, March 11, 2015 8:48 AM, Sunny Balwani <sbalwani@theranos.com> wrote:

Sure thing.

On Mar 11, 2015, at 6:11 AM, Sunil Dhawan ▮▮▮▮▮/@▮▮▮▮▮ wrote:

Sunny,

CTRL-DHAWAN-00008174

Thx for book- looks like good reading!
Sunil

On Thursday, February 12, 2015 5:28 PM, Sunny Balwani <sbalwani@theranos.com> wrote:

for sure. I have this on my calendar so will follow up also. thanks.

**From:** Sunil Dhawan [mailto: ▮▮▮▮▮▮▮▮▮▮]
**Sent:** Thursday, February 12, 2015 5:20 PM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

Thanks Sunny- will email you in 3 weeks.
Sunil

On Thursday, February 12, 2015 8:31 AM, Sunny Balwani <sbalwani@theranos.com> wrote:

Yes. You can discard the checks. Need about a month to get papers to you
for stock but we r good to go on that.

Thanks.

On Feb 11, 2015, at 7:13 AM, Sunil Dhawan <▮▮▮▮▮▮▮▮▮▮> wrote:

Sunny-Thanks for 2nd check- any update on options?
Sunil
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
408 957-7676X3-Office-TTh
▮▮▮) ▮▮▮▮▮▮-Cell
▮▮▮▮▮▮▮▮▮▮ - email
www.centerforderm.com- main practice site
www.ctr4derm.com- clinical research site

On Friday, February 6, 2015 11:24 PM, Sunil Dhawan <▮▮▮▮▮▮▮▮▮▮>
wrote:

Sunny,
 Any updates on options?
Thanks!
Sunil
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
▮▮▮) ▮▮▮▮▮▮▮▮▮h
▮▮▮) ▮▮▮▮▮▮)-Cell
▮▮▮▮▮▮▮▮▮▮ - email
www.centerforderm.com- main practice site
www.ctr4derm.com- clinical research site

On Friday, January 30, 2015 1:16 PM, Sunny Balwani <sbalwani@theranos.com>
wrote:

CTRL-DHAWAN-00008174

Sunil.

the options shouldn't be a problem but will need more time to confirm for sure.

the skin is 90% better. feels much much better.  Thanks for checking on this.

**From:** Sunil Dhawan [mailto: ████████████████]
**Sent:** Friday, January 30, 2015 6:28 AM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

Sunny,
 Any updates on the options proposal that we discussed?
 How are the areas I injected- LMK if not better.
SD

On Wednesday, November 19, 2014 8:43 PM, Sunny Balwani
<sbalwani@theranos.com> wrote:

thanks.  the documents are on their way to you. you should receive them tomorrow thru courier.

**From:** Sunil Dhawan ████████████████████
**Sent:** Wednesday, November 19, 2014 8:39 PM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

attached
Sunil S. Dhawan, MD
Center for Dermatology, Inc.
Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF
            408 957-7676X3-Office-TTh


On Wednesday, November 19, 2014 3:11 PM, Sunny Balwani
<sbalwani@theranos.com> wrote:

this is all we need.

we have all paperwork in place and I will have one of the couriers bring it by your office tomorrow am for your signature.

thanks for this. I appreciate it.

**From:** Sunil Dhawan [████████████████████]
**Sent:** Wednesday, November 19, 2014 11:02 AM
**To:** Sunny Balwani
**Subject:** Re: Lab Director

we have a certificate for the practice and I am the lab director- is that ok?
Sunil S. Dhawan, MD

CTRL-DHAWAN-00008174

role.

Thanks in advance.

With my best regards,
Sunny Balwani
███████████

===============
For an MD to serve as a lab director, the California statute
(1209(a))includes a duly licensed physician and surgeon.   To
practice medicine in California, the M.D. would have to be
licensed in California.  From 1209(a):  "laboratory director"
means *any*
*person who is a duly licensed physician and*
*surgeon...*

An MD also has to meet the requirements under CLIA
which are provided in Section 493.1443.  For MDs there
are the following alternatives:

> **1.     Licensed to practice medicine in the State**
> **in which the laboratory is located <u>and</u> certified**
> **in anatomic or clinical pathology, or both, by the**
> **American Board of Pathology or the American**
> **Osteopathic Board of Pathology or possess**
> **qualifications that are equivalent to those**
> **required for such certification**
> **2.     Licensed to practice medicine in the State**
> **in which the laboratory is located <u>and</u> Either:  (i)**
> **Have at least one year of laboratory training**
> **during medical residency (for example,**
> **physicians certified either in hematology or**
> **hematology and medical oncology by the**
> **American Board of Internal Medicine – see**
> **additional information from the Interpretive**
> **Guidelines below on Residency Training); or (ii)**
> **Have at least 2 years of experience directing or**
> **supervising high complexity testing (see**
> **additional information from the Interpretive**
> **Guidelines on Training and Experience below)**

Additional information:

<u>Interpretive Guidelines "Residency Training"</u>  --
The residency program should provide the director the
knowledge in principles and theories of laboratory practice
including: quality control and quality assessment,
proficiency testing, the phase of the total process (i.e.,

CTRL-DHAWAN-00008174

US-REPORTS-0008367

preanalytic, analytic and postanalytic), as well as, general laboratory systems, facility administration, and development and implementation of personnel policy and procedure manuals. This training should also include hands-on laboratory testing.

Interpretive Guidelines: "Training and Experience"
The type of experience required under this regulation is clinical in nature. This means directing or supervising personnel who examine and perform tests on human specimens for the purpose of providing information that is used in diagnosing, treating, and monitoring a patient's condition. This experience may include the laboratory director personally examining and performing tests on patient specimens. Patient or medically-oriented experience, which is defined as the ordering of tests and interpreting and applying the results of these tests in diagnosing and treating a patient's illness is unacceptable to meet the requirement for laboratory training or experience.
The laboratory director should have documentation, e.g., signed procedure manuals, test reports, worksheets and workcards, that indicates the director assumes the responsibilities in §493.1445.

Teaching experience directly related to a medical technology program, clinical laboratory sciences program, or a clinical laboratory section of a residency program is considered acceptable experience. Research experience is also acceptable experience if it is obtained while performing tests on human specimens.

CTRL-DHAWAN-00008174

US-REPORTS-0008368

**theran⬥s**

AMENDMENT NO. 1
TO THE
SERVICES AGREEMENT
BETWEEN
THERANOS, INC.
AND
SUNIL DHAWAN
EFFECTIVE AS OF NOVEMBER 19, 2014 ("Effective Date")

This Amendment No. 1 ("Amendment") to the Services Agreement, dated November 19, 2014 ("Agreement"), is made by and between Theranos, Inc., a Delaware corporation ("Theranos"), and Sunil Dhawan ("Consultant").

NOW THEREFORE in consideration of the premises and mutual covenants contained herein, the parties agree as follows:

1.  The term of the Agreement is hereby extended such that it will expire on November 18, 2015.

2.  The Compensation section under Exhibit A is replaced with the following –

    "Subject to the approval by the Company's Board of Directors, the Company will grant Consultant an option to purchase up to 2,500 shares of Class A Common Stock. 1/12 of the shares will vest one month after the effective date of this amendment, and the remainder of the shares will vest monthly at the same rate unless this contract has been otherwise terminated or Consultant is no longer actively providing services for the Company. This option grant shall be subject to the terms and conditions of the Company's Stock Option Plan and Stock Option Agreement.

    On or before November 18, 2015, Company and Consultant will assess this Agreement and the terms of Service to the Company going forward. If this Agreement is not extended in writing beyond that date or if no other contract is agreed upon in writing, this Agreement will terminate on that date.

3.  The following Section 8.B. is added to the end of Section 8 of the Agreement:

    "Neither the selection of the Consultant nor any provision of this Agreement is conditioned on either party making referrals to the other party, being in a position to make or influence referrals to the other party, or generating business for the other party. The Services provided under this Agreement are reasonable and necessary for the legitimate business of Company. The Consultant represents and warrants that the compensation paid under this Agreement: (i) is consistent with fair market value and does not exceed what the Consultant charges other companies for similar services; (ii) does not take into account the volume or value of any referrals or other business generated between the parties, and (iii) is commercially reasonable even if no referrals were made between the parties or their respective affiliates. The Consultant represents and warrants that neither the Consultant nor any immediate family

CTRL-DHAWAN-00008804

US-REPORTS-0008369

# theran⚫s

member of the Consultant will refer patients to the Company or order tests performed by Company before the later of (x) four years from the expiration or earlier termination of this Agreement or (y) while the Consultant holds any stock, option or other ownership interest in the Company."

4.  All other terms and conditions of the Agreement will remain in full force and effect. This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties have executed this Amendment.

**THERANOS, INC.**                    **SUNIL DHAWAN**

_____              _____
Signature                            Signature

_____              _____
Printed Name                         Printed Name

_____              _____
Title                                Title

CTRL-DHAWAN-00008804

US-REPORTS-0008370

| | |
|---|---|
| **To:** | Sunny Balwani[sbalwani@theranos.com] |
| **From:** | Sunil Dhawan |
| **Sent:** | Thur 9/10/2015 4:56:32 AM |
| **Importance:** | Normal |
| **Subject:** | Re: update |
| **Received:** | Thur 9/10/2015 4:56:34 AM |

Sunny,
need to know how long you need me on 9/ 22- Can we be done at 10 am?
Sunil


On Wednesday, September 9, 2015 8:23 PM, Sunny Balwani <sbalwani@theranos.com> wrote:


Here is the address:


7373 Gateway Blvd.

Newark, CA 94560




**From:** Sunil Dhawan [ ███████████ ]
**Sent:** Wednesday, September 9, 2015 1:43 PM
**To:** Sunny Balwani
**Subject:** Re: update


Sunny,

will look at schedule and confirm 9/22- most likely I can do it

can we do tomorrow at 6 pm for signing and walk through?

Thanks for the work on the options!

Sunil

Sunil S. Dhawan, MD

Center for Dermatology, Inc.

Center for Dermatology Clinical Research, Inc.
510 797-4111X3--Office-MWF


CTRL-DHAWAN-00009764

US-REPORTS-0008371



www.ctr4derm.com-██████ ████████h ███

On Wednesday, September 9, 2015 9:33 AM, Sunny Balwani <sbalwani@theranos.com> wrote:

Sunil.

Hope you are well.

Wanted to update on you on the compensation/options follow up, and a couple of other matters.

The issuance of additional options to you to compensate you for your additional time commitments has now been approved; I will need your signature on the papers, ideally this week.  I know you are busier than me so if it works, sometimes this week in evening or early am before you go to office, I can have my security team pickup you up and drive you to our lab in Newark (located right before you get on the Dumbarton Bridge). You can sign the papers and also do a walkthrough of the lab.

I also need your help on an additional matter. We have a lab audit coming up on 9/22 at 9 am (these happen once every two years), and wanted to see if you can be present for at least the first part of it. I have a very capable team that has taken care of all the details as always, but would like to have you here for the first part or so and the introduction of our team. In preparation for the lab audit, I will personally walk you through all the latest updates with our team - we have hired many experts from the industry to make sure lab is flawless and audit ready, so I don't anticipate any hickups, but as always want you to be familiar with it.

Let me know if I can get an hour from you this week in the am or after work, an hour next week anytime at your convenience and then some time on 9/22 9am.  As above, I can plan to have my team pick up and drop you off for all of these dates so you don't have to worry about commute.

Talk to you soon.

Thanks.

Sunny.

CTRL-DHAWAN-00009764

**To:**       Sunny Balwani[sbalwani@theranos.com]
**From:**    Sunil Dhawan
**Sent:**     Tue 9/15/2015 4:13:06 AM
**Importance:**        Normal
**Subject:**  Re: thanks for the time
**Received:**         Tue 9/15/2015 4:12:40 AM

Sunny,
 lets do this on saturday- can I sign at your facility, and we can review the documents- the stuff from last saturday and the employment stuff you were going to send me. 2-4 is ok if you are free or suggest another time.
Sunil

On Monday, September 14, 2015 3:14 PM, Sunny Balwani <sbalwani@theranos.com> wrote:

thanks for dropping by.

I need couple of hours from you this coming weekend. unfortunately I have close to 300 SOPs that need signing.  I can have team send this out 50 at a time each day this week electronically as that might be easier.  sorry for the last minute on this I was trying to find a way to avoid doing this manually... thanks in advance...

CTRL-DHAWAN-00009861

US-REPORTS-0008373

**theranos**

1701 Page Mill Road
Palo Alto, CA 94304

P 650.838.9292
F 510.739.9801

theranos.com

Dear Sunil,

It is my great pleasure to welcome you to Theranos.

You will be joining a team defined by the excellence with which every objective is pursued.

Every day, our work contributes to realizing a world in which early detection and prevention of disease becomes a reality, and people become empowered with their own health information to live their best lives.

I'm looking forward to you being part of it.

With my best regards,

Elizabeth Holmes
Founder and Chief Executive Officer

CTRL-DHAWAN-00009935

US-REPORTS-0008387