JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:     March 23, 2021<br>Time:     9:00 a.m.<br>CTRM:  4, 5th Floor |
| Defendants. | |
| | Hon. Edward J. Davila |

## TABLE OF CONTENTS

**Page**

I.     The Government Does Not Dispute the Key Facts Regarding Dr. Master's Opinions. ............................................................................................................2

II.    Dr. Master's Opinions Regarding Theranos Tests Fail Rule 702 and *Daubert* Standards. .....................................................................................................3

     A.     hCG, HIV, HbA1c, and Calcium:  Insufficient Data ................................4

     B.     Sodium and Chloride:  Customer Complaints .........................................5

     C.     Bicarbonate:  No Basis............................................................................7

     D.     Cholesterol: One Study Regarding Lab Equivalency and One "Late 2014" Email ..........................................................................................7

     E.     Potassium: One April 2014 Rosendorff Email .......................................8

     F.     Vitamin D: Three Pages From 125-Page CMS Report...........................10

III.   Dr. Master's Opinions about Industry Standards Should Be Excluded............................12

IV.    Dr. Master's Miscellaneous Observations and Opinions about Market Readiness Should Be Excluded. ................................................................14

V.     The Court Should Conduct a *Daubert* Hearing. .................................................14

CONCLUSION.................................................................................................15

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

i

1

2

## <u>TABLE OF AUTHORITIES</u>

3

### CASES

4

<u>Pages</u>

5

*Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992) ...............................13

6

*Aquino v. Cty. of Monterey Sheriff's Dep't*, 2018 WL 3548867 (N.D. Cal. July 24, 2018) ....................14

7

*Casey v. Ohio Med. Prod.*, 877 F. Supp. 1380 (N.D. Cal. 1995) ...............................................................7

8

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ............................................. *passim*

9

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .........................................................................................7

10

*Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d 998 (9th Cir. 2004) ...........................12

11

*Littler v. Ohio Ass'n of Pub. Sch. Employees*, 2020 WL 1861646 (S.D. Ohio Apr. 14,
2020) ...........................................................................................................................................8, 10

12

*Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251 (N.D. Cal. June 26, 2012) ...................................3

13

*Pecover v. Elec. Arts Inc.*, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................6

14

*Quiles v. Bradford-White Corp.*, 2012 WL 1355262 (N.D.N.Y. Apr. 18, 2012) .....................................11

15

*Sands v. Integon Nat'l Ins. Co.*, 2020 WL 7027442 (D. Colo. Nov. 30, 2020) ........................................12

16

*Stein v. Pac. Bell*, 2007 WL 831750 (N.D. Cal. Mar. 19, 2007) ...........................................................6, 14

17

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .......................................................................13

18

*United States v. Hermanek,* 289 F.3d 1076 (9th Cir. 2002).......................................................................3

19

*United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007) .............................................................................6

20

*United States v. Sarkissian*, 755 F. App'x 613 (9th Cir. 2018)..................................................................4

21

*United States v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020) .......................................................1, 4, 11

22

*United States v. Young*, 571 F. App'x 558 (9th Cir. 2014).........................................................................4

23

*Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993).........................................................................6

24

### CONSTITUTIONAL PROVISIONS

25

U.S. Cons. amend. VI ................................................................................................................................10

26

27

28

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

ii

1

**FEDERAL RULES**

2

Fed. R. Evid. 702 ................................................................................................................1, 4, 11

3

Fed. R.Evid. 703 ...................................................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

1    The government retained Dr. Stephen Master to provide expert opinions regarding certain

2   Theranos tests and lab practices two and a half weeks before the expert disclosure deadline.  The

3   government provided Dr. Master with an outline of the opinions it sought regarding the capabilities of

4   Theranos technology to produce accurate and reliable results for ten Theranos tests.  By his own

5   admission, Dr. Master was unable to provide an opinion regarding the accuracy or reliability for four of

6   the tests (hCG, HIV, HbA1c, Calcium); at a minimum, any opinions regarding those tests must be

7   excluded.  For another test (bicarbonate), Dr. Master purported to opine that Theranos was unable to

8   produce accurate and reliable test results, but he identified no basis for that opinion, and the government

9   does not defend the opinion in its Opposition.  That opinion too must be excluded.  For the remaining

10   five tests, Dr. Master based his opinion about accuracy and reliability on emails and other statements by

11   third parties—an approach entirely at odds with the scientific methodology he describes in his report and

12   the principles experts in his field use to determine the accuracy and reliability of a particular blood test.

13    The government has no answer to these fatal shortcomings.  The government argues that Dr.

14   Master's testimony will assist the jury in assessing whether certain statements made by Ms. Holmes

15   were true.  Rule 702 demands more.  Expert testimony must be not only helpful; it must be reliable.  An

16   expert opinion must apply a valid methodology and must rest on sufficient data.  Dr. Master's opinions

17   do neither.

18    The government also argues that Dr. Master has relied on some data and that the question of

19   whether this data suffices goes to the weight of his testimony.  That is wrong:  Rule 702 requires that

20   this Court determine whether Dr. Master's opinion is "based on sufficient facts or data" and whether he

21   applied reliable principles and methods to the facts of the case.  Fed. R. Evid. 702(b)-(d).  The Ninth

22   Circuit has repeatedly found reversible error in criminal cases when a district court fails to make a

23   determination as to the relevance and reliability of expert testimony.  *See, e.g.*, *United States v.*

24   *Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020).  In any event, Dr. Master's opinions for eight of the

25   ten tests do not rest on data of any kind.  For these tests, the government instead claims that it is

26   "implicit" in his opinion that experts in his field would base scientific conclusions on customer

27

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD
1

complaints in emails.  That claim borders on the absurd.  With respect to the remaining two tests, Dr. Master's opinions are equally unreliable.

The problems with Dr. Master's opinions mirror the issues with the government's case writ large—both suffer from a lack of sufficient data and evidence.  At the time this case was indicted, the government had not conducted the kind of scientific analysis required to prove the truth of its allegation that Ms. Holmes misrepresented to customers that Theranos test results were accurate and reliable when she knew "that Theranos's technology was, in fact, not capable of consistently producing accurate and reliable test results."  Dkt. 1 ¶ 16.  Nor has it conducted any such analysis in the two and a half years since then.  Instead, it has become clear that the government intends to ask the jury to speculate that Theranos was incapable of consistently producing accurate and reliable test results from mere anecdotes, snippets of data, and regulatory investigations that did not assess the accuracy and reliability of Theranos tests.  For the reasons set forth in other motions, none of that evidence is admissible.

The Court should not allow the government to remedy its investigatory and evidentiary failings by having an expert provide speculation in the guise of expert opinion.  Allowing Dr. Master to present his unsupported opinions to the jury would inject reversible error into this case.  The Court should exclude Dr. Master's testimony.  At a minimum, the government's failure to answer the many substantial questions regarding the reliability of Dr. Master's opinions should prompt the Court to hold an in-person *Daubert* hearing before deciding whether Dr. Master's opinions are admissible.

**I.      The Government Does Not Dispute the Key Facts Regarding Dr. Master's Opinions.**

The government does not dispute the key facts regarding Dr. Master's opinions.  Specifically, it does not dispute that:

- The government retained Dr. Master on February 19, 2020, less than two and a half weeks before its expert disclosure deadline.  It first sent Dr. Master an outline of the opinions it desired him to reach on February 28.  Def. Mot., Dkt. 560 at 2 (citing Ex. 8, Dkt. 580-7).

- On March 1, he responded that he was still waiting to receive additional documents, which he received later that day.  He sent the government the first draft of his report on March 5, the day before the disclosure deadline.  He appears to have formulated his opinions in the course of one week.  *Id.* at 2.

- The government asked Dr. Master to opine that Theranos was unable to produce accurate and reliable fingerstick results for ten tests.  On March 5, Dr. Master told the government that to

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

2

"fully render" the opinion it wanted with respect to four tests, HIV, HbA1C, hCG, and Calcium, he would need additional documents. *Id.* at 2 (quoting Def. Ex. 9, Dkt. 580-8).[1]

- He ultimately was unable to render the desired opinion. Instead, he opined only that "there are substantial questions about the ability of [Theranos'] laboratory to provide patient-appropriate results" for these four tests, noting that "there are insufficient additional details in the material I have reviewed to determine the cause of these issues, the relationship to either the sample type or Theranos technology, or the resolution of the problems." Def. Mot., Dkt. 560 4-5 (quoting Ex. 6, Dkt. 580-5 ("Master Report") at 12, 15).

- The bases for Dr. Master's opinions as to the ten tests are as follows:

  o **hCG, HIV, HbA1c, Calcium**: Unidentified customer complaints and Theranos internal investigations. *Id.* at 10 & App. A (citing Master Report at 15-16).

  o **Sodium and Chloride**: Unidentified "frequent customer complaints." *Id.* & App. A (citing Master Report at 15).

  o **Bicarbonate**: No basis stated. *Id.* & App. A (citing Master Report at 12).

  o **Cholesterol**: Observational, 60-person study conducted by the Icahn School of Medicine and one email from "late 2014" regarding one cholesterol test. *Id.* at 13-14 & App. A (citing Def. Ex. 11, Dkt. 581; Master Report at 14).

  o **Potassium**: Data from April 2014. *Id.* at 15 & App. A (citing Master Report at 14-15). Dr. Master did not identify this data in his expert report, nor does the government identify it in its Opposition. It appears that the data point comes from one email sent by Adam Rosendorff in April 2014. Saharia Decl., Ex. 75.

  o **Vitamin D**: Data for four devices contained in the CMS report. Def. Mot., Dkt. 560 at 16-17 & App. A (citing Master Report at 12-13; Def. Ex. 12, Dkt. 581-1 at 45; 55-56 (Three pages of a 125-page report)).

## II.  Dr. Master's Opinions Regarding Theranos Tests Fail Rule 702 and *Daubert* Standards.

"When faced with a challenge to an expert, [t]he trial judge must perform a gatekeeping function to ensure that the expert's proffered testimony' meets the *Daubert* standard." *Lukov v. Schindler Elevator Corp.*, 2012 WL 2428251, at *1 (N.D. Cal. June 26, 2012) (Davila, J.) (citation omitted). This gatekeeping role "requires the district court to ***assure that the methods are adequately explained***." *United States v. Hermanek,* 289 F.3d 1076, 1094 (9th Cir. 2002). Without a sufficient explanation, the Court cannot conclude that an expert's opinion is reliable and must exclude the expert. A court's failure

---

[1] For example, he explained, "Calcium is also a little thin—some high values, but I've seen problems with high calcium on Siemens instruments before, so I wouldn't want to lay that on Theranos protocol specifically." Def. Ex. 9, Dkt. 580-8.

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

3

1    to conduct the required gatekeeping analysis has led to reversible error.  *See, e.g., Valencia-Lopez*, 971

2    F.3d at 891 (reversing conviction when district court ruled that defendant's objections went to the

3    weight of the testimony without conducting reliability determination); *see also United States v.*

4    *Sarkissian*, 755 F. App'x 613, 618 (9th Cir. 2018) (reversing conviction); *United States v. Young*, 571 F.

5    App'x 558, 559 (9th Cir. 2014) (same).

6         The government fails to show that Dr. Master's opinions regarding the accuracy of Theranos

7    tests are a "product of reliable principles and methods" or that he reliably applied any such "principles

8    and methods to the facts of the case."  Fed. R. Evid. 702(c), (d).  Its Opposition does not even attempt to

9    assure the Court that his methods were adequately explained and fails to engage with Ms. Holmes'

10   challenges to each of his opinions.  Nor could it.  For each of the tests, Dr. Master failed to base his

11   opinion on sufficient data and failed to apply the methodology used in his field that he describes in his

12   report.  For the reasons that follow, the Court should exclude his opinions for all ten assays.

13        A.    hCG, HIV, HbA1c, and Calcium:  Insufficient Data

14        Dr. Master makes clear in his report that he lacks sufficient information to opine on the accuracy

15   and reliability of Theranos' hCG, HIV, Hba1C and Calcium tests.  Master Report at 15-16; Def. Ex. 9,

16   Dkt. 580-8 at 2.  He observes that there is evidence of customer complaints (though he does not identify

17   them or say how many) related to these tests, and then says that "there [were] insufficient additional

18   details in the material [he] reviewed to determine the cause of" the issues.  Master Report at 15.  For

19   example, Dr. Master lacks information from which to draw a connection between the issues and either

20   "sample type or Theranos technology."  *Id.*  His ultimate opinion is only that "there are substantial

21   questions about the ability of [Theranos'] laboratory to provide patient-appropriate results" for these

22   tests.  *Id.* at 12.

23        Ms. Holmes challenged Dr. Master's opinion on these four tests as both unreliable and unhelpful.

24   Def. Mot. Dkt. 560 at 8-9.  Incredibly, the government's *only* response is a two-sentence *footnote* that

25   only addresses the helpfulness requirement: "Defendant also faults Dr. Master for opining 'there are

26   substantial questions' with some assays, but that does not mean he has no opinion or that his opinion is

27   irrelevant or unreliable.  Given the certitude and breadth with which Defendant spoke – the highest

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
     TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
     CR-18-00258 EJD
                                          4

1  levels of accuracy for virtually every test – Dr. Master's opinion will assist the jury in assessing if that

2  was true, for example, with hCG."  Gov't Opp'n, Dkt. 668 at 8 n.4.

3      This response is woefully deficient.  The government did not even try to defend the reliability of

4  Dr. Master's opinion on these four tests.  It obviously has no response.  If any district court has admitted

5  an expert opinion where the expert admitted he lacked sufficient data to render a reliable opinion,

6  presumably the government would have cited it.  Dr. Master's opinion for hCG, HIV, HbA1C, and

7  calcium is utterly unreliable.  The Court must exclude it.

8      This opinion is also unhelpful to the jury.  The government's footnote ignores the fatal problem

9  with Dr. Master's non-opinion:  it poses a question for which he has no answer.  If Dr. Master (as he

10  admits) cannot draw a reliable link between his questions and "sample type or Theranos technology,"

11  how on earth is the jury supposed to do that?  His non-opinion cannot help the jury determine whether

12  Theranos was consistently capable of producing accurate and reliable results for these four tests.  It must

13  be excluded for this reason as well.

14      **B.      Sodium and Chloride:  Customer Complaints**

15      The bases for Dr. Master's opinion that Theranos was unable to produce accurate and reliable

16  fingerstick results for sodium and chloride are "frequent complaints" from customers in Theranos

17  emails.  Master Report at 15.  (Similarly, he bases his non-opinion on HIV, HbA1C and hCG on

18  "customer complaints."  *Id.*  He does not explain why some complaints suffice to reach an opinion and

19  others do not.)  Dr. Master failed to identify even basic information about the complaints, such as the

20  number of complaints, the date range, whether the complaints were a representative sample, or whether

21  they were statistically significant—all of which is necessary to assess the reliability of his conclusion.

22  Def. Mot., Dkt. 560 at 11-12.  Dr. Master also does not claim in his report that experts in his field would

23  draw scientific conclusions from customer complaints, and the government identifies no scientific

24  literature holding that to be an appropriate methodology.

25      Ms. Holmes expressly argued that reviewing customer complaints is an unreliable methodology

26  for determining the reliability of a blood test.  Def. Mot. Dkt. 560 10-13.  The government again offers

27  no credible defense.  It musters only the curious assertion that the fact that experts in his field would rely

28  MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

on complaints to determine whether blood-testing technology is capable of producing accurate and reliable results "is **implicit** in his opinion." Gov't Opp'n, Dkt. 668 at 8 (emphasis added). This Court cannot exercise its "gatekeeping duty" to determine whether an expert's methodology is reliable when the methodology is "implicit." *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007). The problem is compounded when the expert, as here, describes in his report the methodology actually used by professionals in his field, and then fails to apply that methodology. *See* Master Report at 6-7.

In any event, the notion that experts in his field reach scientific conclusions based on nothing more than customer complaints is beyond dubious, and that methodology is not reliable. *See Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1462 (9th Cir. 1993) (experts must ground their analysis in "sound data," rather than "limited anecdotal evidence"); *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *7 (N.D. Cal. Dec. 21, 2010) (holding that expert's opinion based on anecdotal evidence was unreliable when expert provided no methodology to determine if evidence was "representative of all or even most . . . opinions"). In fact, the government undercuts that notion in the very next sentence of its Opposition. According to the government, Dr. Master "is likely to describe" "multiple instances in his career where customer feedback (whether the customer is an ordering physician or a patient) has directly led to uncovering systematic or patient-specific issues with a laboratory test." Gov't Opp'n, Dkt. 668 at 8. In other words, Dr. Master might testify (although the government did not disclose this testimony) that customer complaints *might lead to an actual investigation that uncovered systematic issues*—not that experts in his field would conclude, as a scientific matter, that a systematic problem existed based merely on a small number of customer complaints. The latter is what he purports to do in this case. He did not conduct an actual scientific investigation. He apparently just read some e-mails and then reached the government's requested conclusion based on the e-mails. That is plainly unreliable under *Daubert*. *See Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007) (excluding expert who "only reviewed the complaints, and did not conduct any investigation as to [any] action on the complaints" as basis for his opinion). For these reasons, the Court should exclude these blatantly unreliable opinions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.        Bicarbonate:  No Basis

In her motion, Ms. Holmes argued that Dr. Master did not disclose any basis for his opinion that Theranos was unable to produce accurate and reliable fingerstick results for the bicarbonate test.  Def. Mot., Dkt. 560 at 10.  The government offers no response in its Opposition.  It has failed to identify any basis for this opinion.  It must be excluded.

### D.        Cholesterol: One Study Regarding Lab Equivalency and One "Late 2014" Email

Dr. Master's opinion regarding cholesterol rests entirely on one observational study conducted by Icahn comparing Theranos results with that of Sonora Quest and LabCorp and an email in late 2014 about *one* Theranos cholesterol result.  Master Report at 14.  He opines that these "strands of evidence support the idea that there were significant accuracy limitations to the Theranos fingerstick cholesterol test." *Id.*  Ms. Holmes challenged this opinion on the grounds that the study did not apply the methodology explained in Dr. Master's report and did not assess the accuracy of Theranos' cholesterol test, that Dr. Master ignored the numerous limitations expressly mentioned in the study as affecting its results, and that Dr. Master could not reliably rest his opinion on an (unidentified) email.  Def. Mot., Dkt. 560 at 13-14.  The government fails to defend his reliance on the email and argues that Dr. Master's reliance on the Icahn study goes "to the weight of Dr. Master's opinion."  Gov't Opp'n, Dkt. 668 at 7.

That is not the law.  Courts have repeatedly found expert opinions unreliable because a study did not support an expert's conclusions or because the expert's conclusions went further than the study on which the expert relied.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-47 (1997) (affirming exclusion of expert because the four scientific studies on which he relied did not sufficiently support his expert opinion); *see also Casey v. Ohio Med. Prod.*, 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (excluding expert opinion under *Daubert* because proffered opinion was based on study that used a methodology that did not answer question at issue in the case).  The government does not address this precedent.

The government seeks to redefine the study as one about accuracy, but the study speaks for itself. The study's stated purpose was as follows: "In this study, we examined ***test result equivalency*** among different blood testing services and technologies."  Ex. 11, Dkt. 581 at 1739.  The study's results are that

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

1  it "found **nonequivalent** lipid panel test results between Theranos and other clinical services." *Id.* at

2  1734.  Ultimately, the study concluded that, "[w]hile laboratory practice standards exist to control this

3  variability, the disparities between testing services we observed could potentially alter clinical

4  interpretation and health care utilization." *Id.* (emphases added).  Even Dr. Master recognizes that "it is

5  clearly the case for many analytes that there are issues of standardization and harmonization between

6  assays used by various clinical laboratories."  Master Report at 14.

7      The problem with Dr. Master's opinion is that he is drawing opinions that the study does not

8  support.  The study simply did not measure accuracy.  Dr. Master explained in his expert report that

9  accuracy means the test measured against a true value.  Master Report at 6-7.  The Icahn study did not

10 measure Theranos results against a true value; it instead just compared results across laboratories and

11 found that some Theranos results were "non-equivalent" to the others.  That conclusion does not mean

12 that Theranos was any more or less inaccurate that the others, because the study authors did not measure

13 the "true" value of the analyte.  Dr. Master fails to explain how the methodology in the study (1) is

14 consistent with the methodology in his report; and (2) supports his opinion regarding Theranos'

15 cholesterol assay.

16     The government failed to respond to Ms. Holmes' challenge to Dr. Master's reliance on Dr.

17 Rosendorff's email about the "inaccuracies in a lipid testing result" as the basis for his cholesterol

18 opinion.  Def. Mot., Dkt. 560 at 14.  Clearly, *one* test result cannot support an opinion that there "were

19 significant accuracy limitations to the Theranos fingerstick cholesterol test."  Master Report at 14.

20 Moreover, Dr. Master cannot simply parrot Dr. Rosendorff's opinion; he must conduct some

21 independent analysis, which he did not do.  *See Littler v. Ohio Ass'n of Pub. Sch. Employees*, 2020 WL

22 1861646, at *5 (S.D. Ohio Apr. 14, 2020) ("Expert testimony should not be admitted where the evidence

23 merely parrots the testimony offered by fact witnesses.").  For these reasons, Dr. Master's cholesterol

24 opinion is unreliable and should be excluded.

25     **E.      Potassium: One April 2014 Rosendorff Email**

26     Dr. Master's opinion about potassium rests on his assertion that in "April 2014, potassium

27 fingerstick measurements were shown to be abnormally high 17% of the time.  In a healthy population,

28 MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

1   one would expect to see ~2.5% abnormally high values." Master Report at 14. The opinion is

2   completely unreliable. As Ms. Holmes explained in her motion, (1) Dr. Master did not identify the

3   source of this information; (2) he did not state whether this figure represents all of Theranos' testing

4   devices; and (3) one month's worth of information, wherever it came from, is insufficient to support an

5   opinion that Theranos technology was not consistently accurate and reliable over a three-year span. Def.

6   Mot., Dkt. 560 at 20. The government does not respond to any of these points.

7        The government instead responds as follows: "Defendant: (1) ignores the fact Dr. Rosendorff

8   after long clinical experience too came to the conclusion that Theranos had a 'potassium problem' (*id.*

9   Ex. 38 at 178), (2) ignores the conclusion of the FDA that Theranos was not even following its own

10  validation plan (*id*. Ex. 14 at US-FDA-0035522), and (3) undervalues repeatedly Theranos business

11  records questioning its potassium results." Gov't Opp'n, Dkt. 668 at 8. It does not deign to identify the

12  "business records" to which it refers. Critically, the government does not state that Dr. Master relied on

13  any of this evidence. In fact, the cited FDA document does not appear on his list of reviewed

14  documents.[2] The government does not tie this evidence to Dr. Master's opinion—which was limited to

15  data from April 2014—in any way. It does not describe how Dr. Master applied a reliable methodology

16  to review this information, or show that experts in his field would have relied on this information to

17  make a determination on the accuracy of a blood test.

18       The government failed to engage with *any* of Ms. Holmes' questions about the information

19  underlying Dr. Master's potassium opinion. It appears, based on Ms. Holmes' independent

20  investigation, that Dr. Master was just parroting a statement by Dr. Rosendorff in an April 18, 2014,

21  email. In that email, Dr. Rosendorff stated that the total rate of abnormally high potassium was 17% and

22  that the expected rate was 2.5%. Saharia Decl., Ex. 75. Dr. Master's Report just repeats the content of

23  the email and surmises that, taking these numbers as true, Theranos was not capable of accurate

24

25  ───────────────
    [2] As discussed in more detail in Ms. Holmes' Reply in Support of Motion to Exclude FDA Inspection

26  Evidence, the government's reliance on the FDA inspectors' report is highly misleading. The cited
    observation relates to a review of documentation under FDA manufacturing rules for one of Theranos'

27  blood collection devices. It had nothing to do with the validation of any assays in the CLIA laboratory
    or the accuracy or reliability of patient results from the CLIA laboratory.

28  MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
    TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
    CR-18-00258 EJD

                                                9

potassium results during a three-year period.  An expert may not simply repeat a statement of another witness as his basis for his opinion.  *See Littler*, 2020 WL 1861646, at *5.  And Dr. Master did not apply any reliable methodology for extrapolating from that email to his conclusion about the accuracy and reliability of the potassium test for a three-year period.

The reason Dr. Master purported to base a scientific conclusion on one email is obvious:  he lacks actual data.  The government concedes that "all of the data" for patient test results resided on a Theranos database called the Laboratory Information Systems (LIS).  Gov't Corrected Opp'n, Dkt. 682, at 1.  As Ms. Holmes will explain in her forthcoming Reply in Support of Motion to Exclude Anecdotal Test Results, the government failed to gather and preserve this critical evidence, which (the government admits) is now inaccessible.  Without that data, Dr. Master lacks a scientific basis for his sweeping claims about accuracy and reliability, and is compelled to speculate based on isolated emails, accounts of disgruntled customers, and other limited information.  The government's investigative failure also prevents Ms. Holmes from fully responding to Dr. Master's unsupported assertions with the very evidence that would conclusively answer whether or not Theranos technology was accurate and reliable. Take the Potassium test.  With the LIS data, Ms. Holmes could not only verify the assertions in the lone email upon which Dr. Master relies—she could proffer the comprehensive data for *all* Potassium test results for *all* three years in question.  Admitting Dr. Master's testimony based on such weak, anecdotal evidence, when the government's investigative failure has prevented Ms. Holmes from addressing that testimony, would raise serious due process and Sixth Amendment concerns.

### F.    Vitamin D: Three Pages From 125-Page CMS Report

Finally, Dr. Master's opinion on Vitamin D is based solely on three pages of excerpts of a 125-page report prepared by CMS surveyors in January 2016.  Master Report at 12-13.  As Ms. Holmes explained, this opinion is completely unreliable; the CMS Report did not measure the accuracy of Theranos tests, the excerpts cited by Dr. Master concerned information about four devices from a limited period of time, and Dr. Master failed to explain how he could reliably extrapolate from CMS's hearsay observations about four devices.  Def. Mot., Dkt. 560 at 16-17.

1   The government again argues that these arguments go to the weight of Dr. Master's opinion.  But

2   Rule 702 explicitly requires that testimony is based on "sufficient facts or data" before a witness can

3   offer an expert opinion, and a court abdicates its gatekeeping role when it fails to assess the reliability of

4   an expert opinion on the ground that an objection merely goes to weight.  *See Valencia-Lopez*, 971 F.3d

5   at 899 (holding district court's failure to make reliability determination when it framed disputed issue as

6   going to the weight of the testimony not admissibility was reversible error).

7   The government fails to engage with the extremely limited nature of the information on which

8   Dr. Master relied.  Again, the information contained in the CMS report on which Dr. Master relied

9   represented Quality Control data for one single device for a 15-day period and CV% data for three

10  devices, one of which had no issues even under the standards articulated in Dr. Master's Report.  Def.

11  Mot., Dkt. 560 at 17-18; Master Report at 13.  The government provides no reason to conclude that a

12  laboratory expert would extrapolate from that isolated information to reach a conclusion that a

13  laboratory was unable to produce accurate and reliable tests for a three-year period.  And, although it

14  alludes to "persistent problems with multiple assays and multiple devices over an extended period," it

15  does not identify the evidentiary basis for that vague assertion or show that Dr. Master relied on such

16  evidence in reaching his Vitamin D opinion.  Gov't Opp'n, Dkt. 668 at 7.  Indeed, the government tries

17  to buttress Dr. Master's opinions by citing a small number of findings, cherry-picked from the 125-page

18  CMS report, even though most of those findings are not related to any of the tests he opines on.  Gov't

19  Opp'n, Dkt. 668 at 3 (citing findings for VB12, SHBG, TT3, TTD).  Dr. Master does not even rely on

20  all of these findings in his report.  And, again, the government's failure to preserve Theranos' actual data

21  has deprived Dr. Master of the data he would need to prove a systematic problem with the accuracy and

22  reliability of Theranos' Vitamin D test, and has deprived Ms. Holmes of the data she needs to rebut his

23  unreliable opinion.  *See* p. 10, *supra*.

24  Relatedly, Dr. Master cannot simply repeat information from a report and label it as his opinion.

25  An expert's opinion must be based upon his own application of principles within his expertise to the

26  facts of the case.  "An expert cannot simply parrot the findings of another arrived at in another context."

27  *Quiles v. Bradford-White Corp.*, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012).  That is

28  MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

1   particularly true here where Dr. Master is repeating a finding in an attempt to draw conclusions that

2   were not even reached in the CMS report itself.  Despite the government's arguments to the contrary, the

3   record is clear that CMS did not make a determination as to the accuracy of Theranos tests.

4         Finally on this point, the government improperly seeks to extrapolate the Vitamin D information

5   in the CMS report to support Dr. Master's opinions about the ten Theranos tests and/or the Theranos

6   devices.  Gov't Opp'n, Dkt. 668 at 3-4, 6-7.  But Dr. Master's report relies on the CMS Report for one

7   assay—Vitamin D.  Master Report at 12-13.  The government cannot bootstrap his reliance on CMS

8   Report to support his Vitamin D as a basis for all of his Master's opinions.

9         Relatedly, the government offers no response to Ms. Holmes' argument that Dr. Master's

10   conclusion that alleged problems with certain tests were caused by systemic defects with Theranos'

11   Edison testing technology, and not other variables, is unreliable speculation.  Def. Mot., Dkt. 560 at 17-

12   19.  Nor could it as Quality Control, for example, can be off for a variety of reasons independent of

13   accuracy of technology.  The government does not defend this unreliable opinion and has conceded the

14   point.

15   **III.   Dr. Master's Opinions about Industry Standards Should Be Excluded.**

16         Dr. Master's opinions that "Theranos did not adhere to normal industry standards for clinical

17   laboratory testing from 2013-2015" and that "this lack of adherence had the potential to adversely

18   impact test accuracy and reliability," Master Report at 17, are improper legal conclusions and will

19   mislead the jury, Def. Mot., Dkt. 560 at 19-23.

20         The government responds that an expert is permitted to testify about industry standards even

21   when the testimony relies in part on the expert's understanding of the requirements of the law.  Gov't

22   Opp'n, Dkt. 560 at 9.  It cites *Hangarter v. Provident Life & Accident Insurance Co*., 373 F.3d 998 (9th

23   Cir. 2004)), but the expert witness in *Hangarter* merely made passing "references" to legal provisions

24   and never actually "reached a legal conclusion."  *Id.* at 1016–17.  The district court cases cited by the

25   government stand for the proposition that an expert may generally opine that conduct is not in

26   conformity with industry standards, but may not "opine [on] whether defendants met their duties" under

27   a regulation.  *See, e.g., Sands v. Integon Nat'l Ins. Co.*, 2020 WL 7027442, at *6 (D. Colo. Nov. 30,

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

2020).  Dr. Master purports to apply CLIA regulations to conclude that Theranos was not in compliance.  Master Report at 18 (stating alternative proficiency testing was not appropriately performed).  Therefore the government's cases are inapposite.

The Ninth Circuit has made clear that application of legal standards to the facts of the case are "inappropriate subjects for expert testimony."  *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992).  Here, Dr. Master applies the law to the facts of this case to conclude that "Theranos did not appropriately engage in proficiency testing."  Master Report at 18.  He even rejects Theranos' interpretation of federal law in favor of his own and asserts that it was Theranos' "burden of proof" to justify its use of alternative proficiency testing, before concluding that it did not so in this case.  *Id.*  (The latter opinion will mislead the jury into thinking that Ms. Holmes bears some burden of proof in this case, a violation of the government's constitutional duty to prove its case beyond a reasonable doubt.)  Dressing this application of the law to the facts as an opinion on industry standards does not make it admissible.  *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) ("testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice").

Dr. Master's opinions about industry standards will also be unhelpful to and mislead the jury.  His opinion is only that the supposed lack of adherence to industry standards "had the *potential* to adversely impact test accuracy and reliability," Master Report at 17 (emphasis added), which will not help the jury determine whether in fact Theranos tests were accurate or reliable.  *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995) ("*Daubert II*") (experts' testimony that medication *could* possibly have caused plaintiffs injuries was not helpful to the jury).  The government argues that this principle is irrelevant because the government is not required to prove "causation" in this case.  Gov't Opp'n, Dkt. 668 at 11.  That misses the point.  If Dr. Master is unable to identify a causal link between his opinions on Theranos' adherence to industry standards and the accuracy and reliability of Theranos' tests—and the government has identified none—then his testimony about adherence to industry standards is simply irrelevant.

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD

13

The government also argues that Dr. Master's opinion will "aid the jury in understanding and assessing Dr. Rosendorff's complaints about proficiency testing in 2014." *Id.* But, as this Court has rightly observed, "[one expert] cannot be a mouthpiece for [another]. *Aquino v. Cty. of Monterey Sheriff's Dep't*, 2018 WL 3548867, at *4 (N.D. Cal. July 24, 2018) (Davila, J.). "Rule 703 does not sanction the simple transmission of hearsay." *Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007). Dr. Master does not purport to have reached his own opinion, based on a review of sufficient data, that Theranos' proficiency testing was inadequate. To the contrary, he says only that he reviewed "the testimony of the lab director at the time, Adam Rosendorff, [which stated] proficiency testing was only performed using unmodified third-party, FDA-approved platforms." Master Report at 18. Echoing deposition testimony is not permissible expert opinion.

## IV. Dr. Master's Miscellaneous Observations and Opinions about Market Readiness Should Be Excluded.

Although Dr. Master opined that Theranos's tests were not "market-ready," he did not define this term or identify any methodology use to come to this conclusion. The Court should exclude this opinion. "Market-readiness" is a meaningless term. It is impossible for the Court to make a reliability determination about this opinion without even a basic definition of the term and an explanation of the methodology he used to make the determination. The government offers neither. It appears to concede that the term has no scientific meaning. Gov't Opp'n, Dkt. 668 at 7 n.3. And, although it suggests that the term is grounded in Dr. Master's experience, *id.*, it failed to disclose any principles or methodology based in that experience that Dr. Master applied to arrive at his "market readiness" opinions.

Additionally, Ms. Holmes identified a number of miscellaneous observations in Dr. Master's Report that were not supported by any data and are aptly described as off-hand remarks designed to aid the government's case. Def. Mot., Dkt. 560 at 23-24. The government failed to respond to any of these arguments, and the Court should exclude these opinions.

## V. The Court Should Conduct a *Daubert* Hearing.

The Court can and should exclude Dr. Master based on the current record. Experts do not offer scientific opinions—or non-opinions as it were—based on customer complaints in email and other

1  similar information.  It will be impossible for Dr. Master to patch the gaping holes in his methodology

2  and evidentiary support for his opinions.

3  But, at a minimum, the Court should permit the defense to examine Dr. Master at an in-person

4  *Daubert* hearing before permitting him to testify.  His report and the government's Opposition raise a

5  host of unanswered questions.  What documents did he actually review and base his opinions on?  How

6  many?  From what time period?  Did he take any steps to verify the accuracy of the information in those

7  documents?  Are those documents actually the kind of data that experts in his field would rely on?  What

8  methodology did he apply to analyze the information in those documents?  The government has not

9  answered these questions, likely because there is no good response.  It just asks the Court to take its

10  word that there is "no genuine dispute" as to the relevance and reliability of Master's methodology.

11  Gov't Opp'n, Dkt. 668 at 11.  On this insubstantial record, the Court could not possibly reach that

12  conclusion without conducting a *Daubert* hearing to enable the Court and defense to understand Dr.

13  Master's methodology (if any) and bases for his opinions.

14  **CONCLUSION**

15  For the foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Expert

16  Opinion Testimony of Dr. Stephen Master, Dkt. 560, this Court should grant Ms. Holmes' motion or in

17  the alternative conduct an in-person *Daubert* hearing.

18

19  DATED:  February 16, 2021                    Respectfully submitted,

20                                              /s/Amy Mason Saharia
                                                KEVIN DOWNEY
21                                              LANCE WADE
                                                AMY MASON SAHARIA
22                                              KATHERINE TREFZ
                                                Attorneys for Elizabeth Holmes
23

28  MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINION
TESTIMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD
                                   15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EXPERT OPINION TESTMONY OF DR. STEPHEN MASTER UNDER RULES 401-403 AND 702
CR-18-00258 EJD