JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF FACT/PERCIPIENT WITNESSESS UNDER RULES 401-403 AND 702** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:   March 23, 2021 |
| Defendants. | Time:   9:00 a.m. |
| | CTRM: 4, 5th Floor |
| | Hon. Edward J. Davila |

**TABLE OF CONTENTS**

**Page**

I. The Court Should Exclude the Opinions the Government Concedes the Experts Will Not Offer...............................................................................................2

II. The Remainder of the Witnesses' Opinions Are Irrelevant, Do Not Fit the Allegations in This Case and Are Unduly Prejudicial. ..........................................3

    A. The Proffered Testimony Is Irrelevant and Does Not Fit the Case.........................3

    B. The Witnesses' Proffered Testimony Regarding the Significance of Tests Fails Rules 401-403...................................................................................6

III. The Government's Conceded Rule 16 Violations Require Exclusion..............................8

CONCLUSION.................................................................................................................................9

The Court must exclude the testimony of the government's fact witness experts. Critically, the government now disclaims that these experts will testify about the "overall accuracy of Theranos tests," "the explanations for incorrect results," or whether "Theranos tests were inaccurate across the board or suffered from widespread problems." Gov't Opp'n, Dkt. 660 at 3, 5. (That was a necessary concession: these witnesses plainly are unqualified and lack sufficient information to offer any such opinion.) Rather, the government concedes that their testimony "will be limited to the specific results their patients received from Theranos" and "[i]f a doctor's testimony focuses on the experience of a single patient . . . that doctor will not render opinions about the accuracy of Theranos's tests beyond that one patient's results." *Id.* But that limited testimony is irrelevant. The government has no response to the fact that all blood tests produce a certain amount of error. The government has taken no steps to determine whether the tiny number of patient anecdotes it wishes to present through these doctors—which represent an infinitesimal fraction of the millions of test results produced by Theranos—fell within the expected error rate. In other words, the government has no idea whether, and cannot prove that, these episodes are representative of a larger problem, as would be necessary to prove that "Theranos's technology was . . . not *capable of consistently producing accurate and reliable results*." Third Superseding Indictment, Dkt. 469 ¶ 16 (emphasis added). This evidence is irrelevant, prejudicial, and does not fit the case. It thus fails Rules 401-403 and 702.

The evidence is inadmissible for a second, independent reason. Despite Ms. Holmes' repeated requests for an adequate Rule 16 disclosure, the government refused to provide the bases and reasons for its experts' opinions. Incredibly, for example, for a number of the doctor witnesses, the government refused to identify the names of the patients on which their testimony is based. Now, nearly a year after it served its original disclosure, and after months of correspondence and motions practice by Ms. Holmes, the government admits its failure but pleads that it "has . . . provided the defense with all of the information available to it." Gov't Opp'n, Dkt. 660 at 9. Trial is imminent, and it is too late for the government to collect the information it was obligated to collect a year ago. The government's discovery failure requires exclusion of the experts' testimony.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION
TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

1

**I.     The Court Should Exclude the Opinions the Government Concedes the Experts Will Not Offer.**

In the government's expert disclosures, it provided summaries of its noticed experts' testimony that included opinions on a wide variety of topics including laboratory practices and Theranos blood tests generally. *See* Def. Ex. 4, Dkt. 580-3; Def. Ex. 5, Dkt. 580-4. For several witnesses, the government disclosed that the witnesses would opine about the reason for alleged faulty Theranos blood tests. For example, Dr. Linnerson's summary stated that he intended to testify that "lab error is the only explanation for the numbers he saw from Theranos." Def. Ex. 5, Dkt 580-4 at 3. Dr. Zachman intended to testify that "Theranos's explanation as to the discrepancy in hCG test values for her patient . . . was 'not plausible.'" Def. Ex. 4, Dkt. 580-3 at 2. Dr. Burnes similarly intended to testify that "Lab error/inaccurate testing is the only possibility" for the values he saw for one Theranos customers test results. Def. Ex. 5, 580-4 at 6. And Dr. Couvaras would testify that "the Theranos results are explainable only through lab error or inaccurate testing methods." *Id.* at 10. Other opinions went to the general accuracy of Theranos tests. *See, e.g., id.* at 10 (Dr. Page summary: Theranos HbA1C results test results "called into question the integrity of the Theranos testing system.").

The government now disclaims *all* of this opinion testimony. Gov't Opp'n, Dkt 660 at 3. Specifically, the government promised that it would not elicit opinions from its experts on the following issues:

- "[E]xplanations for incorrect results." *Id.* at 3
- "[O]verall accuracy of Theranos tests." *Id.*
- "Theranos tests were inaccurate across the board." *Id.* at 5
- "[Theranos tests] suffered from widespread problems." *Id.*

The government instead represents that "each doctor is expected to testify only about his or her individual experience with Theranos test results [and] [i]f a doctor's testimony focuses on the experience of a single patient who was tested by Theranos, that doctor will not render opinions about the accuracy of Theranos's tests beyond that one patient's results." *Id.* Therefore, the government has committed to only eliciting testimony regarding specific patients treated by these doctors, and will not elicit testimony

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION
TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

2

1  that goes to Theranos tests generally.  Accordingly, the Court should, at a minimum, enter an order
2  excluding opinions by these witnesses regarding the overall accuracy of Theranos tests, explanations for
3  the purported incorrect results, and opinions regarding laboratory practices; and limit the witnesses to
4  discussing only issues with identified patients.[1]

**II.    The Remainder of the Witnesses' Opinions Are Irrelevant, Do Not Fit The Allegations in This Case and Are Unduly Prejudicial.**

The government has expressly represented that these experts' testimony "will be limited to the specific results their patients received from Theranos."  Gov't Opp'n, Dkt. 660 at 3.  This testimony fails both the Ninth Circuit's fitness standard under *Daubert,* and Rule 401's relevance standard.  Additionally, this testimony is unduly prejudicial under Rule 403.

**A.    The Proffered Testimony Is Irrelevant and Does Not Fit the Case.**

The government argues that individual "patient experiences . . . are relevant and admissible to show that Theranos' tests produced inaccurate results which were then reported back to the company."  Gov't Opp'n, Dkt. 660 at 6.  But, under the *Daubert* fitness standard, proffered expert testimony needs to be more than minimally probative.  *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (stating that the Supreme Court "obviously did not intend the second prong of Rule 702 to be merely a reiteration of the general relevancy requirement of Rule 402").  Rather, the Court must determine whether the testimony "speaks clearly and directly to an issue in dispute in the case" *Id.*  Count II alleges that Theranos could not *consistently* produce accurate and reliable results over a three-year period.  Third Superseding Indictment, Dkt. 469 ¶ 16.  Testimony regarding a handful of individual experiences is not probative of the systemic problems alleged in the Indictment.

The government's disclosures and discovery proves the point.  For example, the government admitted in its disclosure that two of its witnesses, Dr. Burnes and Dr. Couvaras, will testify about their respective experiences with *only one patient*. Def. Ex. 5, Dkt. 580-4 at 6, 9.  Recent discovery further

---

[1] Additionally, Dr. Linnerson intended to testify about a comparative study conducted regarding Theranos hCG values.  Def. Ex. 4, Dkt 580-3 at 2.  The Court should exclude this testimony as well since it would speak to whether Theranos tests suffered from widespread problems.  The government has disclaimed any such opinions.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

confirms that a third expert, Dr. Zachman, conducted a "thorough review" at the government's request this year and could only find *one* Theranos "quant value[] that [was] overtly abnormal and made a difference to [a patient's] care." Saharia Decl., Ex. 76 (Jan. 8, 2021 Email from A. Zachman to government). In conducting this review, Dr. Zachman apparently consulted with another government expert, Dr. Linnerson, who used to work at the same clinic as Dr. Zachman. *Id.* And for another expert, Dr. Acharya, the government disclosed that he recalled only two Theranos customers whom he perceived as having issues with their Theranos tests. Def. Ex. 5, Dkt. 580-4 at 9. Therefore, five of the government's experts will collectively testify about a grand total of *five* Theranos customer experiences out of over half a million customers.[2]

Anecdotal evidence like this is simply not probative of widespread issues, such as whether technology was consistently inaccurate, consistently unreliable, or incapable of consistently producing accurate and reliable results. This is why courts repeatedly have disavowed the use of such evidence to prove causation, as the government intends to do here. *See Jones v. United States*, 933 F. Supp. 894, 899-900 (N.D.Cal.1996) (anecdotal case reports are not derived through the scientific method and "fall[] short of the proven, cause-and-effect relationship that is necessary to satisfy the *Daubert* standard."); *see also Casey v. Ohio Medical Products*, 877 F. Supp. 1380, 1385–86 (N.D. Cal. 1995) (case reports are not reliable scientific evidence of causation and not sufficiently based on scientific reliability and methodology to be admitted into evidence under Fed .R. Evid. 702 and 703).[3]

These courts have explained that anecdotal evidence that suggests a link between one event and another does not prove that the link is causal. Similarly here, the fact that a small number of Theranos customers—whom the government cannot show to be representative of the broader population of Theranos customers—received incorrect tests says nothing about what caused those incorrect tests. But without a causal link, the government's evidence is irrelevant and misleading.

---

[2] For the remainder of the government's experts, it is unclear how many customer results they intend to testify about because the government has failed to provide that information.

[3] Ms. Holmes discusses the inadmissibility of anecdotal evidence in her forthcoming Reply in support of her Motion To Exclude Anecdotal Test Results.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

Consider, for example, a civil claim that a car manufacturer committed fraud because it misrepresented that its cars were fast and reliable when the company knew that it was "in fact, *not capable* of consistently producing [fast] and reliable [cars]." Consider for purposes of this hypothetical that the company manufactured 1 million cars (a lower number than Theranos tests). Evidence that 5-10 customers had issues with speed or had cars that unexpectedly broke down, out of the million cars sold, would not tend to prove that there was a systemic issue with speed and reliability. A court would never allow a plaintiff to trot out those 5-10 customers as "proof" of a product defect in the cars. Yet that is what the government is proposing to do with these doctor witnesses (and their patients).

This evidence is plainly irrelevant. To offer it with the imprimatur of an "expert" would be all the more inappropriate. As the Ninth Circuit has recognized, expert testimony can "be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert II*, 43 F.3d at 1321 n.17 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)). "Federal judges ***must*** therefore exclude proffered scientific evidence under Rules 702 and 403 ***unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury***." *Id.* (emphasis added). This expert testimony, if allowed, will mislead the jury into drawing causal inferences from the testimony where none exist.

 Relatedly if the Court allows these witnesses to testify as fact and expert witnesses, there is a real danger that the jury will confuse their fact testimony with opinion testimony and apply inappropriate weight to the former. *See United States v. Cerna*, 2010 WL 11627594, at *10 (N.D. Cal. Dec. 17, 2010) ("That [the witness'] opinion testimony will cover the same general turf as the fact testimony inflames [the] tension" between the weight that should be afforded between the two). As the Ninth Circuit has explained, "a [fact witness] who testifies as an expert receives unmerited credibility for lay testimony." *United States v. Anchrum*, 590 F.3d 795, 803–04 (9th Cir. 2009) (internal quotation marks omitted). This risk is starker here as the jury is likely to defer to medical professionals labeled as experts. This testimony should be excluded.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

5

### B. The Witnesses' Proffered Testimony Regarding the Significance of Tests Fails Rules 401-403.

The rest of the government's argument is aimed at preserving the most inflammatory portions of its witnesses' testimony. Gov't Opp'n Dkt. 660 at 6-7. Ms. Holmes' Motion seeks to exclude prejudicial statements from these witnesses regarding the hypothetical ramifications of inaccurate test results including catastrophic consequences that have never occurred as a result of any Theranos test. *See* Def. Mot., Dkt. 561 at 20-23. Ms. Holmes will not catalog the disclosed testimony here again, but it suffices to note that some of the disclosed ramifications are completely speculative, depend on unlikely links in a causal chain, and appear intended to inflame the jury.

The government offers three theories of relevance for this inflammatory testimony. None has merit, and none can overcome the unduly prejudicial nature of the testimony.

First, the government argues that the testimony will demonstrate that its witnesses are "familiar with a given assay." Gov't Opp'n, Dkt 660 at 6. The prejudicial nature of the testimony far outweighs any probative value with respect to the witnesses' familiarity with the tests. The government's Opposition catalogs these witnesses' familiarity with the tests, such as Dr. Linnerson's 37 years of medical experience in which he examined "tens of thousands of hCG tests" or Dr. Szmuc's review of "over 10,000 hCG tests." *Id.* at 8-9. That point is not subject to reasonable dispute. Additional testimony concerning hypothetical harms—such as Dr. Szmuc's proffered testimony that an ectopic pregnancy can lead to "significant hemorrhag[ing]" or "the worst-case scenario of patient death," Def. Ex. 5, Dkt. 580-4 at 7—adds nothing and seeks only to improperly draw sympathy for Theranos customers.

The government next argues that the testimony will address "how a given assay fits into a patient's medical care" and will "show why a given blood test result could not have been accurate." Gov't Opp'n, Dkt.660 at 7. That does not follow. Assuming such testimony were otherwise relevant (it is not), an expert could testify about the medical reason why the expert concluded that a test was inaccurate—for example, that fluctuations in hCG levels did not make sense and subsequent testing confirmed that a patient was in fact pregnant. That is a far cry from the disclosed testimony about

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION
TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

catastrophic, inflammatory consequences that never resulted from purportedly incorrect tests. The prejudicial nature of that testimony far outweighs any probative value on this point.

Finally, the government argues that this testimony of *possible* effects of inaccurate tests "add[s] weight to a doctor's representation that he or she has not encountered similar errors in test results from other labs." *Id.* That again does not follow. To be sure, a doctor might have expected to remember an erroneous result from another lab if it *in fact produced a catastrophic result*. But doctors do not make life-and-death medical judgments based on one blood test. That is why there is no evidence in this case of such catastrophic consequences, whether as a result of a Theranos test or any other test. The fact that, for example, Dr. Asin might hypothetically order a painful surgery based on the results of a PSA test, and that the surgery itself could have complications, says nothing about whether he would recall erroneous results from other labs. *See* Def. Ex. 5, Dkt. 580-4 at 8 (describing painful biopsy procedure that could lead to hospitalization).

On this final point, the government fails to prove the reliability of its experts' opinions that they did not encounter similar issues with other laboratories. Contrary to the government's argument, this is opinion, not fact, testimony because recognizing erroneous test results requires the exercise of medical judgment. To quote the government, it is "hard[] to believe that a doctor could reliably remember incorrect results after a years-long or decades-long career." Gov't Opp'n, Dkt. 660 at 7. Incorrect test results are a fact of life, as the government's retained expert admits. Def. Ex. 6, Dkt. 580-5 (Master Report) at 6. They usually are not catastrophic or memorable, because the doctor questions whether the test is correct based on other observations, and, if appropriate, repeats it. The notion that these doctors can reliably testify that they never once had an issue with another lab's test results is fanciful. The Court should exclude this opinion under Rule 702.

\*     \*     \*

Testimony regarding potential harms that did *not occur to any Theranos customer* is some of the most inflammatory testimony in this case. The government seeks to invoke images of customers miscarrying, developing fertility issues or cancer, undergoing highly painful and risky medical procedures, or the possibility that a customer could have died on an operating table. Any such evidence

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION
TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

7

1  will no doubt "generate feelings of sympathy for the victims and outrage toward [Ms. Holmes] for
2  reasons not relevant to the charges." *United States v. Copple,* 24 F.3d 535, 546 (3d Cir. 1994).  The
3  Court should exclude this testimony.

### III. The Government's Conceded Rule 16 Violations Require Exclusion.

Putting the foregoing aside, the Court should exclude the government's experts because its disclosures are woefully, and concededly, inadequate.  After nearly a year of stonewalling Ms. Holmes' requests for adequate disclosures, the government now concedes that it has failed to provide the bases and reasons for its experts' opinions.  To this day, the government has concededly failed to provide "patient names and relevant records underlying the witnesses' conclusions"—*i.e.*, the bases and reasons for the witnesses opinions.  Gov't Opp'n, Dkt. 660 at 10.  The government now recognizes the inherent prejudice of this failure but asserts that its "disclosure can still be made far enough in advance of the July trial date to avoid any prejudice to Defendant."  *Id.*

This is wishful thinking.  Ms. Holmes' request for adequate disclosures has been pending since March 12, 2020.  Def. Ex. 17, Dkt. 582-1.  Despite defense counsel's repeated requests for the "bases and reasons" underlying the witnesses opinions, the government maintained for months that its Rule 16 summaries were "more than sufficient," forcing Ms. Holmes to expend considerable time litigating a motion to compel adequate disclosures. *See id.*; Def. Ex. 19, Dkt. 582-3 (April 8, 2020 E-mail from K. Trefz to government); Ex. 59,  Dkt. 587-3 (May 6, 2020 Letter from K. Trefz to government); Def. Ex. 20, Dkt. 582-4 (May 14, 2020 E-mail from R. Leach to defense counsel) (government stating disclosures were "more than sufficient")); *see also* Gov't Opp'n to Def. Rule 16 Mot., Dkt. 441 at 9-10 (stating Rule 16 disclosures were sufficient).  Once the Court hears argument on this Motion, it will have been over a year since Ms. Holmes' initial request.

The government's failure to collect what should be easily identifiable information further undermines the credibility of its doctor experts' opinions.  If the doctor witnesses cannot even identify the patients on whom they are basing their testimony, their opinions are utterly unreliable.  But even assuming the government manages to collect the information underlying its experts' disclosures, such as patient names and data, Ms. Holmes will be prejudiced by having to analyze this information at this late

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION
TESTMONY OF FACT/PERCIPIENT WITNESSES UNDER RULES 401-403 AND 702
CR-18-00258 EJD

8

stage in trial preparation. The parties have been preparing to try this complex case for over two and a half years. The government's expert disclosure deadline was nearly a year ago. It was at that time that the government was required to disclose the "bases and reasons" for its experts' opinions. Fed. R. Crim. P. 16(a)(1)(G). Although the government asserts in its Opposition that it will issue Rule 17 subpoenas for this information immediately and will contact defense counsel regarding early return, Gov't Opp'n, Dkt. 660 at 10, that is far too late. And Ms. Holmes has heard nothing from the government on this issue at the time of this filing.

The government has stated that these doctors' testimony is "critical proof" in this case, but yet it sat on its hands to develop this evidence and has withheld from Ms. Holmes the bases and reasons for this "critical proof." *Id.* at 5. Rule 16's disclosure obligations reflect the fact that the bases and reasons for an expert's opinions should not be dropped in a defendant's lap on the eve of trial, when it is too late to conduct additional discovery, retain rebuttal experts, and the like. *United States v. Valdez*, 2019 WL 539074, at *3 (N.D. Cal. Feb. 11, 2019) ("The plain purpose of Rule 16 is to prevent exactly the situation threatened here -- a defendant facing imminent trial without an adequate opportunity to prepare for evidence that the government intends to use against [her]."). The Court should exclude this evidence.

## CONCLUSION

For foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Expert Opinion Testimony of Fact/Percipient Witnesses (Dkt. 561), this Court should grant Ms. Holmes' motion.

DATED: February 16, 2021                    Respectfully submitted,

                                              /s/ Amy Mason Saharia
                                              KEVIN DOWNEY
                                              LANCE WADE
                                              AMY MASON SAHARIA
                                              KATHERINE TREFZ
                                              Attorneys for Elizabeth Holmes

# CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes