JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 | Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CUSTOMER IMPACT EVIDENCE UNDER RULES 401-403**<br><br>Date: March 23, 2021<br>Time: 9:00 a.m.<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

**TABLE OF CONTENTS**

Page

I. "Background" Testimony Must Satisfy Rules 401 and 403 ....2

II. Evidence of Collateral Effects of Theranos Test Results Is Irrelevant to the Wire-Fraud Charges in this Case ....2

A. The Evidence Does Not Show Inaccuracy ....2

B. The Evidence Does Not Establish Materiality ....3

C. The Evidence Does Not Show Intent to Defraud ....4

III. The Evidence Is Unfairly Prejudicial ....4

IV. Ms. Holmes Properly Identified the Evidence that Is Subject to Exclusion ....5

CONCLUSION ....5

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF CUSTOMER IMPACT EVIDENCE UNDER RULES 401-403
CR-18-00258 EJD

i

The government has no answer to the question posed by Ms. Holmes' Motion to exclude "evidence of the actual or potential collateral consequences of Theranos tests on customers, including purported evidence of emotional or physical harm." Ms. Holmes' Mot. to Exclude Customer Impact Evidence Under Rules 401-403, Dkt. 562 at 7. How is it relevant to this wire-fraud case that "if an HbA1c test is inaccurate 'medicine (such as insulin) could be incorrectly changed, leading to an overdose or underdose . . . [that] could result in a [patient suffering a] coma from the brain shutting down'"? *Id.* at 2 (quoting Def. Ex. 5, Dkt. 580-4 at 7). How is it relevant to this wire-fraud case that if a medical professional had relied on one single blood test to "initiate the treatment protocol for a miscarriage" (something that a medical professional would never do), a viable pregnancy could have been terminated? *Id.* at 1 (quoting Def. Ex. 5, Dkt. 580-4 at 8). Those, and other, inflammatory narratives are irrelevant and extremely prejudicial. That is why courts exclude this kind of testimony all the time.

The government barely confronts the inflammatory nature of the testimony it wishes to present. Instead, its Opposition suggests that Ms. Holmes moved broadly to exclude evidence as to customers' "explanations for how they discovered that their Theranos blood tests were inaccurate, *i.e.*, that they had been defrauded." Gov't Opp'n, Dkt. 676 at 8. But as Ms. Holmes has explained, this Motion seeks to exclude only evidence relating to the *effects* of Theranos test results on customers, including actual or potential emotional or physical effects. Evidence of such adverse consequences is not relevant to the ultimate issues in this case, is highly prejudicial, and must be excluded. *United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994).[1]

[1] Incredibly, the government asks this Court to preclude Ms. Holmes from observing at trial that, so far as she is aware, "of the 7-10 million test results generated by Theranos, not one caused any physical harm." Def. Mot., Dkt. 562 at 1; *see* Gov't Opp'n, Dkt. 676 at 2 n. 1. The government has not identified any such evidence to this day. If the government is permitted to put customer harm at issue, of course Ms. Holmes can comment on the government's failure of proof. Any other result would violate the Due Process Clause. Ms. Holmes addresses this argument in her Reply in Support of her Motion to Exclude Anecdotal Test Results.

## I. “Background” Testimony Must Satisfy Rules 401 and 403

The government improperly twists Ms. Holmes’ Motion into one seeking to exclude testimony regarding customers’ background and biographical information. Gov’t Opp’n, Dkt. 676 at 7. Ms. Holmes did not so move. Nevertheless, any background information—like all evidence—is subject to the requirements of Rules 401, 402, and 403. For example, the government provides proffered testimony for a customer who “had been trying unsuccessfully to have a child for a long time, became pregnant only to receive a Theranos blood test during the early stages of her pregnancy indicating that she was miscarrying.” Gov’t Opp’n, Dkt. 676 at 4-5. If the government were to attempt to shoehorn the fact that the witness “had been trying unsuccessfully to have a child for a long time” as background information, the testimony should be excluded. This information is not relevant, as it does not have “any tendency to make a fact more or less probable than it would be without the evidence” and is not a “fact of consequence in determining [this] action.” Fed. R. Evid. 401. Rather, this background evidence solely serves the improper purpose of eliciting sympathy for the witness. *See, e.g., United States v. Sokolov*, 91 F.3d 396, 407 (3d Cir. 1996) (“By asking every victim who testified whether he or she suffered any adverse consequences from the unpaid claims, the government was attempting to highlight the personal tragedies of the victims.”).

## II. Evidence of Collateral Effects of Theranos Test Results Is Irrelevant to the Wire-Fraud Charges in this Case

### A. The Evidence Does Not Show Inaccuracy

Without any citation to legal authority, the government argues that testimony about customer emotional and physical harms is admissible because it constitutes “the patient’s explanations for how they discovered that their Theranos blood tests were inaccurate, *i.e.*, that they had been defrauded.” Gov’t Opp’n, Dkt. 676 at 8.[2] That does not follow. Obviously, testimony by doctors about the

[2] On its face, this theory does not justify the admission of *doctor* testimony about actual or potential consequences for Theranos customers. The government also notices speculative lay testimony from Theranos customers relating to the potential consequences of erroneous test results. *See* Gov’t Opp’n, Dkt. 676 at 5 (“[S]he was currently experiencing an ectopic pregnancy that would have threatened her life had a test from another lab not revealed its presence.”). This sort of lay opinion testimony is independently barred by Fed. R. Evid. 701.

hypothetical consequences of erroneous blood test results does nothing to describe why a particular customer believed that her test result was inaccurate. *See* Def. Mot., Dkt. 562 at 1-2 (collecting examples of hypothesized effects).

More fundamentally, actual or potential emotional and physical effects of a test result are not relevant to the question whether a particular test result was accurate—or, by extension, to the ultimate issue whether Theranos' technology was, in fact, capable of producing accurate and reliable results. The government's anecdotes illustrate the point. For example, the government identifies a cancer patient who received an abnormally high test. Gov't Opp'n, Dkt. 676 at 8. Her oncologist had a new test performed, which showed normal levels. That testimony is irrelevant for other reasons,[3] but it is not the subject of this motion. What is the subject of this motion is the customer's emotional, irrelevant testimony that "[s]he immediately thought that the test results must either be wrong or her cancer had returned and a tumor was growing somewhere in her body." *Id.* There is no legitimate purpose for that kind of testimony in this wire-fraud case.

**B. The Evidence Does Not Establish Materiality**

The government also argues that customer emotional or physical harm is relevant because "[t]he fact that the patients relied to their detriment on Theranos blood tests in clinical settings shows that the statements . . . concerning the accuracy and reliability of Theranos's blood tests were capable of influencing the patients . . . to part with money or property." Gov't Opp'n, Dkt. 676 at 8-9. This appears to be a materiality argument. The problem with that argument is that the detriment in this case—as in all wire fraud cases—is the loss of money or property, not any collateral emotions or physical harm. *See Copple*, 24 F.3d at 545-46 (contrasting relevant evidence of actual loss with irrelevant information relating to "personal or professional impact" of that loss). The government does not explain why emotional evidence about physical harms that never happened is so probative of

[3] As explained in Ms. Holmes' Mot. to Exclude Anecdotal Test Results, the existence of a particular test result does not establish that the underlying technology was inaccurate. That is because every lab has errors, as the government's own expert on laboratory testing confirmed, and the government has never conducted the kind of scientific analysis required to demonstrate its claims as to accuracy and reliability. *See also* Ms. Holmes' Mot. to Exclude Expert Opinion Testimony of Dr. Stephen Master, Dkt. 560.

materiality as to outweigh the prejudicial nature of the testimony. Here, evidence relating to emotional or physical harm is far removed from the core of the wire-fraud statute.

**C. The Evidence Does Not Show Intent to Defraud**

The government finally argues that the evidence shows intent to defraud. Gov't Opp'n, Dkt. 676 at 9. The government relies on out-of-circuit cases that stand for the proposition that evidence of financial loss, although not an element of wire fraud, can be relevant to the specific intent to defraud. *See id*. As the Ninth Circuit has recognized, however, evidence of financial loss is admissible to prove intent only in "limited circumstances," such as where the evidence directly rebuts a defendant's argument that he believed the victim to be wealthy. *United States v. Lloyd*, 807 F.3d 1128, 1152 & n.6 (9th Cir. 2015). No such circumstances are present here.

In any event, the government again conflates financial loss with emotional loss. As this Court explained in its February 11, 2020 order, "[t]he specific intent element of wire fraud, thus, 'must be [the intent] to obtain *money or property* from the one who is deceived.'" Dkt. 330 at 27-28 (quoting *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989)). As the Ninth Circuit put it, "[t]he purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings." *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 927 (9th Cir. 2000); *see also* Order, Dkt. 330 at 27-28 (same). The government's proffered evidence does not relate to financial loss.

**III. The Evidence Is Unfairly Prejudicial**

The government argues, contrary to the several courts that have squarely decided this issue, that evidence of collateral consequences is not unfairly prejudicial. Gov't Opp'n, Dkt. 676 at 10. The government argues that courts have "routinely approved the use of such evidence in mail and wire fraud prosecutions." *Id*. This is wrong. Courts have held precisely the opposite. *See United States v. Gibson*, 2018 WL 4903261, *6 (E.D. Va. Oct. 9, 2018) ("[E]vidence at trial of collateral emotional and personal hardships endured by the victims would only serve to elicit additional sympathy for those victims and risk unfairly prejudicing the Defendant."). For this reason, even if the Court determines that evidence of

emotional and physical effects of Theranos test results has some minimal probative value, it must exclude the evidence under Fed. R. Evid. 403.

**IV. Ms. Holmes Properly Identified the Evidence that Is Subject to Exclusion**

The government argues that Ms. Holmes fails to "identify with sufficient clarity what evidence she seeks to exclude." Gov't Opp'n, Dkt. 676 at 5-6. This argument is meritless. Ms. Holmes' Motion identified precisely the evidence at issue—"[e]vidence relating to actual or hypothetical impact of allegedly inaccurate tests on customers' personal lives"—and the government had no difficulty in identifying a number of examples of customer testimony falling within this category. *See* Def. Mot., Dkt. 562 at 3; Gov't Opp'n, Dkt. 676 at 4-5, 8. Ms. Holmes provided examples of this impermissible evidence, drawn from the government's own documents in this case. *See* Def. Mot., Dkt. 562 at 1. And she cited a number of cases *categorically* barring the type of evidence of collateral loss at issue in the motion. *See id*. at 3-6.[4] Everyone knows what kind of testimony is at issue.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Customer Impact Evidence Under Rules 401-403, ECF No. 562, this Court should grant Ms. Holmes' motion.

DATED: February 16, 2021

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

---

[4] The sole case cited by the government in support of this argument, *United States v. Head*, 2013 WL 5739095 (E.D. Cal. Oct. 22, 2013), involved a pretrial motion that failed to identify the subject of the testimony at issue, and cited no supporting authority. Gov't Opp'n, Dkt. 676 at 5-6. *Head* is inapposite.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF CUSTOMER IMPACT EVIDENCE UNDER RULES 401-403
CR-18-00258 EJD