JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | |
| v. | **MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT UNDER FEDERAL RULES OF EVIDENCE 401-403 AND 701-702** |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date: March 23, 2021 |
| | Time: 9:00 AM |
| | CTRM: 4, 5th Floor |
| | Hon. Edward J. Davila |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | The Government's Arguments About Multiplexing and Outliers Must Be Supported by Expert Testimony, But It Has Not Disclosed Any Reliable Expert Testimony That Would Support Those Arguments. | 2 |
| II. | The Government Should Be Precluded From Offering Evidence and Argument That Theranos Improperly Set and Altered Reference Ranges. | 4 |
| III. | The Government Should Be Precluded From Introducing Evidence or Argument About What Should Have Been Disclosed on Theranos' Lab Reports. | 5 |
| CONCLUSION | | 6 |

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

i

The government's Rule 404(b) Notices indicated it intended to introduce evidence that Theranos' approach to certain aspects of its lab practices—the way it calculated results from a proprietary device, the way it set reference ranges, and the way it reported results in lab reports—fell short of scientific or laboratory standards, and therefore demonstrated intent to defraud. Each of those points would require expert evidence. None has been noticed. The government's response makes plain why Ms. Holmes' motion to exclude this evidence must be granted. For example, although it effectively concedes that it has not adequately noticed expert testimony on any of these points, the government suggests that it should be permitted to introduce as evidence of nefarious intent a retrospective "contemplation" by former laboratory director Adam Rosendorff that Theranos' practices may have led to results that appeared more precise than merited—regardless of the fact that he had to (and did) review to his satisfaction and *approve* Theranos' actual practices before they were implemented. Def. Ex. 47, Dkt. 586-1 at 2. This "contemplation," offered without supporting data or a methodology, is not expert testimony, and it is inadmissible: without expert testimony setting a standard and reflecting an accepted methodology, such evidence has little to no probative value but risks introducing confusion and substantial prejudice.

The government's evidence concerning each of the three categories discussed in this Motion should be excluded. With respect to the government's arguments that averaging measurements and disregarding statistical outliers to calculate test results masked inconsistency, the government's Opposition makes obvious that expert testimony is required. The government abandons its noticed argument that Theranos violated industry standards when setting reference ranges. And it improperly suggests that a 2014 email from Dr. Rosendorff could be used to set the standard for appropriate lab reports even though it has no expert testimony on this point. The Court should grant Ms. Holmes' Motion and enter an order precluding the government from presenting evidence or argument that (1) the method for calculating results on Theranos' proprietary devices, (2) the setting of Theranos' reference ranges, or (3) the type of information disclosed in Theranos' lab reports was improper.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

1

**ARGUMENT**

**I.  The Government's Arguments About Multiplexing and Outliers Must Be Supported by Expert Testimony, But It Has Not Disclosed Any Reliable Expert Testimony That Would Support Those Arguments.**

The government claims that it should be able to present testimony and argument that Theranos' six-tip method for generating the results of the Theranos' proprietary device made those results less accurate and masked problematic inconsistency.  As Ms. Holmes noted in her opening brief, these arguments must be the subject of expert testimony, and Dr. Rosendorff's hindsight musing in no way satisfies Rule 702 or the notice requirements of Rule 16.  Permitting the government to introduce this testimony and argument also would run afoul of Rule 403.

The government's Opposition makes clear that its evidence and arguments regarding the impact of multiplexing and outliers require expert testimony.  What the government describes as "straightforward enough" reasoning regarding the lab results in fact relies on assumptions regarding scientific principles, complex statistical analysis and algorithms, and principles governing laboratory testing—all obvious subjects of expert testimony.  *See* Gov't Opp'n, Dkt. 661 at 2-4.[1]  Moreover, the flaws in the government's logic reinforce that the government's arguments should be introduced only if and to the extent they are supported by expert testimony.  There is no obvious reason why running a sample multiple times, removing statistical outliers, and averaging the measurements would make for a *less* accurate or *less* reliable reported *result*, as the government suggests.  To the contrary, given that all laboratory tests have inherent imprecision and variability from measurement to measurement (including as a result of "random chance," as the government's retained expert opines, *see* Def. Ex. 6, Dkt. 580-5 at

---

[1] The government understands that concepts of laboratory science are properly the subject of expert testimony.  It noticed potential expert testimony from its retained lab expert, Dr. Master, regarding concepts of accuracy and reliability.  Dr. Master conspicuously does not opine that Theranos' multiplexing or exclusion of outliers was inappropriate or masked inconsistency.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

6 (Master Report)), common sense would suggest that running a sample multiple times rather than just once would "inspire[]" *more* "confidence" in the reported result, *cf.* Gov't Opp'n, Dkt. 661 at 3.

The government has identified no evidence indicating that Theranos' approach to outlier removal and averaging multiple measurements taken by a device was different than that used by other laboratory devices or methods. To suggest that this practice was inappropriate without having engaged in a scientifically reliable comparison would be unreliable and misleading. To the extent the government's arguments really go to whether Theranos correctly calculated the percent coefficient of variation (CV), there can be no argument that understanding the proper calculation of CV, which involves an understanding of statistics, assays, and the technology at issue, properly falls under the scope of Rule 702.

Neither Dr. Rosendorff nor the government's retained expert Dr. Master has disclosed an expert opinion that would support the government's argument that multiplexing and disregarding outliers inappropriately hid inconsistent results. Apparently recognizing the need for expert testimony, the government falls back on the argument that Dr. Rosendorff is a qualified expert. But on this topic, no reliable expert opinion has been disclosed. Dr. Rosendorff's *post hoc* questions about the methodology are neither based in his percipient observation nor rest on data or a reliable application of a reliable methodology. It is undisputed that Dr. Rosendorff, as Theranos Lab Director, approved the use of the six-tip method for calculating the results produced by the TSPU—he testified under oath to this fact, as well as to the fact that the method was developed and recommended by the medical team, not proposed by Ms. Holmes. Saharia Decl., Ex. 84 at 228:8-229:17 (Feb. 26, 2019 Depo. Tr.). In fact, *the government itself* implicitly *approved* Theranos' 6-tip method of calculating results when the FDA approved Theranos' HSV-1 assay and test system.[2] The government's disclosures indicate that it

---

[2] The application disclosed that results for Theranos' proprietary device were calculated based on the averaging of multiple measurements. *See* Saharia Decl., Ex. 85 at THER-2550407 to THER-

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

3

intends to offer scientific opinion testimony questioning Theranos' approach "based on [Dr. Rosendorff's] contemplation after leaving Theranos."  Def. Ex. 47, Dkt. 586-1.  But Dr. Rosendorff did not and does not have the information to turn his musing into a reliable opinion: he told the government the algorithm was not explained to him at the time, *id.*; he has not reviewed data that would answer his questions;[3] and the government did not disclose any principle of scientific or laboratory science on which such an opinion could be based.  As a result, this potential expert testimony amounts not to a reliable expert opinion that can pass muster under Rule 702, but a hindsight musing with little probative value and extreme prejudice to Ms. Holmes.

## II. The Government Should Be Precluded From Offering Evidence and Argument That Theranos Improperly Set and Altered Reference Ranges.

The government has abandoned both of the noticed Rule 404(b) theories regarding reference ranges—*i.e.*, that Theranos procedures for setting reference ranges violated industry standards and that Theranos improperly adjusted reference ranges based on individual clinical results.  It does not dispute that it has disclosed no expert testimony that would establish Theranos violated industry standards when setting reference ranges or otherwise improperly adjusted reference ranges; it does not dispute that such testimony would be subject to Rule 702 given the complex scientific and statistical concepts involved in reference ranges; and, with respect to the only evidence it does address, it affirmatively states that it "does not intend to present evidence like the above in support of an argument that Theranos violated industry standards."  Gov't Opp'n, Dkt. 661 at 6.  It does not address, and therefore does not appear to contest, Ms. Holmes' challenges to its theory and evidence regarding the alleged adjustment of reference ranges based on individual clinical results—*i.e.*, that it has not identified evidence supporting this claim at all.  *Compare* Def. Mot., Dkt. 564 at 4, *with* Gov't Opp'n, Dkt. 661 at 5-6.  The Court should enter an order precluding the government from presenting evidence and argument that Theranos' procedures for

---

2550411 (Theranos HSV-1 Submission).

[3] At this point, he could not—the government does not have the data to provide.

setting reference ranges violated industry standards and that Theranos improperly adjusted reference ranges.

The government instead argues that Dr. Rosendorff may testify that he would have preferred to establish reference ranges before Theranos' launch and that Ms. Holmes and Mr. Balwani resisted the idea of establishing and disclosing reference ranges that were specific to the sample type and method Theranos used to analyze a given patient sample. According to the government, this evidence shows that Ms. Holmes "made decisions that prioritized maximizing the company's commercial advancement and reputation over delivering the most accurate and useful information to patients." Gov't Opp'n, Dkt. 661 at 6. First, it is misleading to ascribe decisions about reference ranges to Ms. Holmes: it is undisputed that (1) Dr. Rosendorff was the ultimate decision-maker as to what reference ranges would be used at Theranos during his time as Lab Director and (2) he in fact approved the approach Theranos took. But more importantly Ms. Holmes is not on trial for failing to deliver what Dr. Rosendorff may have stated at any one time (or in hindsight) was the most useful information to patients; she is on trial for making specific alleged misstatements. The government does not tie its disclosed testimony from Dr. Rosendorff to any of those statements. His testimony regarding references ranges should be excluded, as should the other evidence referenced in Ms. Holmes' motion.[4]

### III. The Government Should Be Precluded From Introducing Evidence or Argument About What Should Have Been Disclosed on Theranos' Lab Reports.

The government's Opposition, like its Rule 404(b) disclosures, make clear that the probative value for its evidence that Theranos did not disclose certain information to patients and doctors in a particular format rests on the assumption that Theranos *should* have done so. But in a highly regulated

---

[4] Despite its express and implicit concessions, the government argues that because it purportedly "continues to investigate Theranos's practices with respect to reference ranges" the Court should not enter a blanket order excluding evidence about how the ways in which Theranos set and altered reference ranges. The government has been investigating this case for over five years. It is on its Third Superseding Indictment, having first charged Ms. Holmes in June 2018. It has repeatedly told the Court that it is trial ready. The expert disclosure deadline passed long ago. The idea that the government is "still investigating" an issue on which it disclosed Rule 404(b) evidence a year ago, nearly two years after charging the case, is dubious, and the Court should be skeptical of any future supplementation on this issue. An order regarding the issues raised in Ms. Holmes' motion and on which the government has conceded is appropriate.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

5

scientific field where the requirements are not accessible, known to, or understood by lay jurors, that logical inference must be supported by expert testimony—whether Theranos "should" (or even appropriately could) have taken a particular action depends on the regulations and practices in the field. Without such testimony permitting that inference, the evidence risks juror confusion and unfair prejudice.

Ms. Holmes' motion focused on the government's attempts to suggest that a lab report should include certain information and that the failure to include that information evidenced intent to defraud. In its Opposition, the government does not dispute that it has failed to proffer expert testimony in support of the legal or industry standards for what must be included on a laboratory report. Instead, it suggests that commentary by Dr. Rosendorff in November 2014 about adding additional information to the lab report supports an inference of intent to defraud where this advice was not followed. Ms. Holmes is not being charged with failing to follow the comments Dr. Rosendorff made in an email; in fact, Dr. Rosendorff had approved Theranos' lab reports for over a year at the time the cited email was sent. The government should not be permitted to treat every email by Dr. Rosendorff as the industry standard or legal obligation, without properly disclosed expert opinion, or argue that any disagreement with Dr. Rosendorff evidences fraud. To do so would risk juror confusion and be unduly prejudicial. *See* Ms. Holmes' Reply in Support of Motion *in Limine* to Exclude Evidence of Alleged Violations of Industry Standards and Government Regulations. The government should be precluded from introducing evidence or argument that the level of information reported on the laboratory reports was improper, whether through Dr. Rosendorff's email or otherwise.

## CONCLUSION

For these reasons, and those set forth in Ms. Holmes' Motion, the Court should grant Ms. Holmes' Motion and enter an order precluding the government from presenting evidence or argument that (1) the method for calculating results on Theranos' proprietary devices, (2) the setting of Theranos' reference ranges, or (3) the type of information disclosed in Theranos' lab reports was improper.

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B)
EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

6

| | | |
|---|---|---|
| 1 | DATED: February 16, 2021 | Respectfully submitted, |

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN RULE 404(B) EVIDENCE FOR LACK OF EXPERT SUPPORT
CR-18-00258 EJD

7

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes