JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CR-18-00258-EJD<br><br>**REPLY IN SUPPORT OF MS. HOLMES'**<br>**MOTION TO EXCLUDE EVIDENCE**<br>**CONCERNING WEALTH, SPENDING, AND**<br>**LIFESTYLE**<br>Date:     March 23, 2021<br>Time:    9:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

I.   The Government's Motive Argument Is Irrelevant or at Best Minimally Probative.......................1

II.  Wealth, Spending, and Lifestyle Evidence Is Unfairly Prejudicial and Would Require Mini-trials. ...................................................................................................................................4

III. Potential Rebuttal Evidence Should Be Addressed Only If and After Ms. Holmes Opens the Door. ...............................................................................................................................6

CONCLUSION...............................................................................................................................6

1    The government's Opposition makes clear that it intends to inflame the jury improperly by

2    suggesting that irrelevant evidence concerning Ms. Holmes' income, wardrobe, and travel itineraries

3    gave her a motive to commit a federal crime.  This evidence says nothing whatsoever about Ms.

4    Holmes' motive; if it did, any CEO could be said to have a motive to commit fraud.  Rather, the real

5    value of the evidence to the government is to paint a (misleading) picture of Ms. Holmes as a woman

6    who prioritized fashion, a luxurious lifestyle, and fame, and to invite a referendum on startup and

7    corporate culture.  The government's factual narrative regarding Ms. Holmes' purported benefits is

8    inaccurate, but, even were it accurate, it is irrelevant and highly inflammatory.  Resolving the disputes

9    related to it will require otherwise unnecessary mini-trials and explanation, which will increase the focus

10   on and undue prejudice from this irrelevant evidence.  The Court should exclude the government's

11   noticed wealth, lifestyle, and spending evidence from the government's case-in-chief.  Any rebuttal

12   evidence should be considered only if appropriate at the time of rebuttal.

13   **I.      The Government's Motive Argument Is Irrelevant or at Best Minimally Probative.**

14           Ninth Circuit law is clear that evidence that shows merely an interest in acquiring wealth is in

15   most cases minimally probative (at best) but extremely prejudicial, and therefore should not be

16   introduced by the government to prove motive.  *United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir.

17   1999).  For the government to introduce such evidence, there must be more than simply an "interest, in

18   the sense that it is in anyone's interest to be richer rather than poorer"; to be probative, that general

19   interest must be connected "with inclination, desperation, or other evidence that the person was likely to

20   commit the crime."  *Id.* at 1109; *see United States v. Unruh*, 855 F.2d 1363, 1377 (9th Cir. 1987)

21   (admonishing that evidence of wealth and lifestyle "should not be offered unless clearly connected to"

22   specific conduct at issue because "[t]he prosecution needlessly risks leading the court into an abuse of

23   discretion when it offers evidence with minimal probative value that could cause jurors to decide the

24   case on legally irrelevant grounds").  Here, the government's purported motive runs right into these

25   concerns—its motive theory is tied not to specific conduct but would apply to any success of Theranos,

26   no matter the legitimate or allegedly illicit source.  Under such a theory, the government could prove

27   that the CEO, founder, or majority shareholder of any successful company had a motive to commit fraud

28   REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING
     WEALTH, SPENDING, AND LIFESTYLE
     CR-18-00258 EJD
                                                        1

simply by pointing to that company's success. The government must point to a more specific connection between the wealth and lifestyle evidence it seeks to introduce and the alleged fraud, as well as a relevance theory that would not apply to every CEO, founder, or majority shareholder simply by dint of the company's success.

The nature of the government's spending and lifestyle evidence highlights this point. It indicates little other than, during certain periods of the alleged conspiracies, Ms. Holmes earned a living and received benefits commensurate with her professional position as a CEO, including the use of personal assistants, high-end travel accommodations for work, and a salary that allowed a comfortable lifestyle. Its probative value with respect to motive is therefore low, at best. The government's counterargument on this point is circular illogic—it suggests that the relevance of the evidence depends on whether Ms. Holmes committed fraud and if she did, it is relevant. Gov't Opp'n, Dkt. 663 at 4. But the government is seeking to use the evidence to invite the jury to speculate that that Ms. Holmes did commit fraud because wealth and its benefits are desirable. This is exactly what is prohibited. Benefits commensurate with being a CEO in and of themselves have little probative value; if they did, every CEO would have the motive to commit fraud, a concept the cases reject. *See Mitchell*, 172 F.3d at 1109.

Where courts have found evidence of wealth admissible to support motive or intent, that evidence has a more particularized connection to the alleged conduct. *See* Def. Mot., Dkt. 567 at 2 (citing *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010), and *United States v. Jackson-Randolph*, 282 F.3d 369, 377-79 (6th Cir. 2002)). The cases the government cites make this clear:

- In *United States v. Reyes*, 660 F.3d 454 (9th Cir. 2011), a stock options backdating case, the court admitted evidence that the defendant had received backdated stock options and the gain realized. But the evidence of financial gain was part and parcel of the specific transactions alleged to be fraudulent. The evidence thus had relevance beyond a sweeping argument that the defendant's financial gain showed motive. Rather, in that case, the specific options evidence admitted *also* served the purpose of showing the defendant's knowledge of and participation in the scheme at issue, which was focused specifically on those trades. The court *excluded*

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING
WEALTH, SPENDING, AND LIFESTYLE
CR-18-00258 EJD

1    evidence that would show the entirety of the stock options held and sold because that general

2    showing of benefits received from the company was "unduly prejudicial." *Id.* at 464.

3    - In *United States v. Weygant*, 681 Fed. App'x 630, 632-33 (9th Cir. 2017), an unpublished

4      decision, the defendant did not object to evidence regarding his salary at trial, and therefore the

5      introduction of the evidence was only subject to "plain error" review on appeal.  There, the

6      defendant was charged with fraud regarding aircraft parts pursuant to 18 U.S.C. § 38(a), on the

7      theory that he knew his company's equipment was inadequate to comply with maintenance

8      manuals and his employees were therefore falsely certifying their compliance.  *Id.* at 632.

9      Having presented the wealth evidence along with evidence that the defendant had control over

10     purchase decisions, the government argued that the wealth evidence was relevant to show that

11     the defendant "could have purchased the necessary equipment but decided not to in order to

12     increase his personal earnings."  *Id.* at 633.  The court did not affirmatively bless the introduction

13     of this evidence; rather, it found that the government had "potentially valid" uses of the wealth-

14     related evidence, which meant that any error was not "clear" or "obvious."  *Id.*

15   - In *United States v. Naranjo*, 634 F.3d 1198 (11th Cir. 2011), the defendant's receipt of funds

16     from the alleged fraud was part of the government's proof that there was a Ponzi scheme—the

17     evidence showed that the defendant had diverted investor funds to another of his businesses and

18     to personal creditors.  *Id.* at 1204.  When the defendant challenged "for the first time" on appeal

19     the government's proof of intent to participate in a fraud, the fact that he had personally profited

20     by diverting investor funds for his personal use was cited as circumstantial evidence supporting

21     the fact that the defendant intended to participate in a fraud.  *Id.* at 1207-08.  The government has

22     identified no comparable evidence here and there is none.

23   - *United States v. Navarro-Ordas*, 770 F.2d 959 (11th Cir. 1985), is similar: the personal benefits

24     from the scheme were used to show actual knowledge of the alleged conspiracy, insofar as there

25     was evidence the benefits were tied not to the general success of the company, but rather were

26     granted by the leaders of the alleged conspiracy in return for participation in it.

27

28   REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING
     WEALTH, SPENDING, AND LIFESTYLE
     CR-18-00258 EJD

                                          3

The government's relevance theory does not tie the wealth and lifestyle evidence to the alleged conduct here.  Rather, as already set forth, its relevance theory is nothing more than the proposition that Ms. Holmes was motivated by money, a proposition that could apply to anyone, whether rich or poor.

Even if evidence of the *amount* of Ms. Holmes' compensation were admissible (her annual salary, for example), what she did with the money she acquired—e.g., what clothes or other goods were purchased, what car she drove, or what celebrities she met—is far removed from any permissible relevancy theory.  This is not a case where the government might use evidence of extravagant purchases or spending beyond a defendant's means to show that the crime was committed or the defendant's participation in it.  *See, e.g.*, *United States v. Jackson-Randolph*, 282 F.3d 369, 377-79 (6th Cir. 2002). The government does not claim (nor could it) that Ms. Holmes lived beyond her means.[1]  As the *Hatfield* court explained, where, as here, the question is not how Ms. Holmes acquired the money but whether the underlying conduct is legal, how Ms. Holmes used the money she had is irrelevant.  *See* 685 F. Supp. 2d at 326 ("[I]t is irrelevant if Mr. Brooks spent his fortune on lavish parties, instead of donating it to starving Malawian orphans.").  To the extent the government is permitted to argue that Ms. Holmes was motivated by wealth in general, how she used that acquired wealth should be excluded. Jurors already know why an individual generally might want more money,[2] and the kinds of things money might buy.  There is no legitimate reason to introduce what Ms. Holmes may have purchased or who she may have met.

## II.    Wealth, Spending, and Lifestyle Evidence Is Unfairly Prejudicial and Would Require Mini-trials.

Evidence of Ms. Holmes' wealth, spending, and lifestyle will be unduly prejudicial.  Courts recognize the prejudice that comes from wealth evidence, and the government does not dispute this.  *See Mitchell*, 172 F.3d at 1108-09; *United States v. Socony-Vacuum Oil*, 310 U.S. 150, 239-40 (1940).  The

---

[1] The government may not even be able to show that some of its lifestyle evidence resulted from benefits Ms. Holmes received from Theranos.  Throughout the alleged conspiracies, Ms. Holmes lived with Mr. Balwani, whose independent wealth predated his time at Theranos.

[2] *See Mitchell*, 172 F.3d at 1109 (noting that "almost everyone, poor or not, has a motive to get more money"); *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1993) ("The government maintains that the evidence established the defendant's motive because it showed that Ewings had an 'appetite' for money.  But who doesn't?").

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING WEALTH, SPENDING, AND LIFESTYLE
CR-18-00258 EJD

potential evidence regarding the amount of money Ms. Holmes earned from Theranos, the value of her stock, the type of car she drove, the house she lived in, the people she met, and her travel accommodations risks invoking class prejudice and has minimal probative value.  Evidence regarding the purchase of expensive clothing, makeup and self-care products, and other goods (again, none of which are alleged to be beyond her means), which the government intends to introduce through otherwise irrelevant emails by Ms. Holmes' personal assistants, does not establish a motive to commit fraud; instead, it seeks to inflame by appealing to stereotypes of class and gender and to ask jurors to judge the merits of this matter by their attitudes about such things.  *See Mitchell*, 172 F.3d at 110 (government improperly played on class and gender stereotypes by painting a poor male defendant as a "feckless man who did not support his wife and children").[3]

Moreover, the government does not address Ms. Holmes' argument that evidence of this type is highly misleading, will confuse the issues, and will be a momentous waste of time, requiring mini-trials concerning the purpose of specific expenditures, who paid for them, whether they were approved, and whether they were reasonable.  Importantly, the government's description of the purported benefits Ms. Holmes received prejudicially mischaracterizes appropriate and approved work expenses as superficial comforts.  For example, what the government paints as luxurious travel accommodations appears to refer to Board-approved work travel accommodations for Ms. Holmes' substantial travel schedule.

---

[3] It is worth noting that the inferential leaps required for the government's prejudicial motive theory stretch the bounds of reason. It is undisputed that Theranos spent nearly a decade in stealth mode, eschewing press coverage while investing in research and development, hiring scores of scientists with impressive credentials, and filing for hundreds of patents; that Ms. Holmes worked around the clock; that Ms. Holmes never sold any stock; and that Ms. Holmes took a low-to-mid six-figure salary that was lower than the salary of other senior executives at the company.  The government's purported motive argument rests on the inference that despite all of this, it is reasonable to conclude that Ms. Holmes committed an allegedly massive fraud, subjected herself to crushing notoriety, and risked potential prison time in order to have a Theranos assistant pick up personal items from a department store, drive a nice car, and meet some famous people.  And it requires the inferential leap that Ms. Holmes was motivated by these benefits simply because she ended up receiving them—not because any witness will embrace the government's theory.  None will. The absurdity of the argument calls into question whether motive is in fact the intended purpose of the evidence.  *Cf. United States v. Abboud*, 438 F.3d 554, 585 (6th Cir. 2006) (rejecting the government's purported justification that wealth evidence was offered for motive where "[t]he picture painted by the government was not that the Defendant needed to commit tax violations to support his lifestyle; instead, the government juxtaposed the fact that the Defendant was wealthy with the fact that he did not file his taxes and left the jury to use its imagination").

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING
WEALTH, SPENDING, AND LIFESTYLE
CR-18-00258 EJD

Many clothing and goods purchases were for work or work events.  (And the government ignores that Ms. Holmes was criticized for wearing the same outfit every day.)  Where those expenditures relate only to an alleged general motive of wealth, and do not evidence the alleged crimes themselves, the necessary detour of contextualizing those expenditures will both waste time and serve to give them heightened importance and increase their undue prejudice.

**III.** **Potential Rebuttal Evidence Should Be Addressed Only If and After Ms. Holmes Opens the Door.**

The government also argues that the evidence may be relevant to rebut defense evidence and arguments the government believes Ms. Holmes may raise.  This is an argument for introducing rebuttal evidence if Ms. Holmes opens the door.  But the determination of whether and what evidence the government may present must wait until after that time, when appropriate consideration can be given to the probative value and the prejudice of the specific evidence, in light of how and how far the door was purportedly opened.

**CONCLUSION**

For the reasons discussed above, and the reasons stated in Ms. Holmes' Motion, Dkt. 567, the government should not be permitted to introduce evidence of Ms. Holmes' wealth, lifestyle, and spending in its case-in-chief.

DATED:  February 16, 2021                       Respectfully submitted,

                                                /s/ Amy Mason Saharia
                                                KEVIN DOWNEY
                                                LANCE WADE
                                                AMY MASON SAHARIA
                                                KATHERINE TREFZ
                                                Attorneys for Elizabeth Holmes

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING WEALTH, SPENDING, AND LIFESTYLE
CR-18-00258 EJD

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE EVIDENCE CONCERNING
WEALTH, SPENDING, AND LIFESTYLE
CR-18-00258 EJD