JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) |
| | ) **MS. HOLMES' REPLY IN SUPPORT OF** |
| v. | ) **MOTION *IN LIMINE* TO EXCLUDE** |
| | ) **EVIDENCE OF REMEDIAL MEASURES AND** |
| ELIZABETH HOLMES and | ) **SETTLEMENTS UNDER FEDERAL RULE OF** |
| RAMESH "SUNNY" BALWANI, | ) **EVIDENCE 401-403, 407 AND 408** |
| | ) |
| Defendants. | ) Date:    March 23, 2021 |
| | ) Time:    9:00 a.m. |
| | ) CTRM:  4, 5th Floor |
| | ) |
| | ) |
| | ) Hon. Edward J. Davila |
| | ) |
| _____ | ) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   Theranos' Remedial Measures Were Voluntary Decisions and Therefore Rule 407 Applies ..................................................................................................................................1

II.   Rules 401-403 Require Exclusion of the Evidence .........................................................3

III.   The Court Should Exclude Evidence of Settlements and Refunds..................................5

CONCLUSION....................................................................................................................................6

MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD

i

The government acknowledges that Theranos' decision to void a limited number of test results in 2016 is a subsequent remedial measure but, in an attempt to save this prejudicial evidence, contends that the voiding was mandated by CMS or other federal regulations.  The record belies that contention.  The government's attempts to discern a regulatory requirement for Theranos to void the tests are meritless.  As the government's lead CMS witness, Sarah Bennett, explained to the government, "Theranos made the decision to void the test results, CMS didn't tell them to do that."  Def. Ex. 34, Dkt. 584-3 at 6 (S. Bennett 302).  Rule 407 applies and bars admission of this evidence.

The evidence is also inadmissible because any probative value is substantially outweighed by the risk of prejudice, jury confusion, and time wasting.  *See* Fed. R. Evid. 403. The probative value of this evidence to the elements of falsity and knowledge of falsity is little to none.  Theranos' decision to void tests, in an abundance of caution, after ongoing discussions with CMS is not probative of whether its tests actually had accuracy and reliability problems.  On the other hand, the evidence is highly prejudicial, as it will suggest the impermissible inference that Theranos must have admitted fault since it voided tests.

Lastly, the government concedes that evidence of Theranos' settlements (which includes evidence of related refunds) is inadmissible under Rule 408, but seeks a ruling that the evidence of settlement negotiations is permissible.  However, the government identifies no such evidence that it seeks to admit, and any ruling with respect to such evidence—which may be inadmissible under another evidentiary rule—would be premature and hypothetical.  Accordingly, the Court should exclude settlement and refund-related evidence.

**I.      Theranos' Remedial Measures Were Voluntary Decisions And Therefore Rule 407 Applies.**

The government recognizes that Rule 407 operates to exclude evidence of subsequent remedial measures and does not contest that Theranos' decision to void certain tests was a subsequent remedial measure under the Rule.  Gov't Opp'n, Dkt 673 at 7.  The government invokes an exception to this Rule for subsequent remedial measures required by law.  *See In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817 (9th Cir. 1989) ("Where the defendant has not voluntarily participated in the subsequent measure at issue, the admission of that measure into evidence does not 'punish' the defendant for his efforts to

MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD

1

1  remedy his safety problems."). Thus, the only issue under Rule 407 is whether Theranos' decision to

2  void a subset of its tests was voluntary.

3        The government points to two sources of this purported legal obligation to void tests, but neither

4  required Theranos' action in this case. First, the government argues that CMS required Theranos to

5  cooperate with the investigation and remove the immediate jeopardy finding, and provided Theranos

6  with ten calendar days to implement corrective actions. Gov't Opp'n, Dkt 673 at 3. But the voiding of

7  tests was not in response to the finding of immediate jeopardy, it occurred months *after* the ten-day

8  deadline, and it occurred *after* the corrective actions identified in Theranos' response to the CMS

9  Report. Def. Ex. 27, Dkt. 583-1 at 1-2 (April 1, 2016 letter from Theranos explaining additional

10 measures taken in an "extreme abundance of caution" *after* initial response to immediate jeopardy

11 finding.). The fact that Theranos was required to, and did, cooperate with the investigation does not turn

12 every action performed by the company post-investigation into a government-mandated measure. To be

13 sure, Theranos responded to CMS with a corrective action plan to remove the cited immediate jeopardy.

14 But the voiding of tests occurred *later* and went above what was required by CMS. *Id.* at 2. The

15 government's own CMS witness, Sarah Bennett, has explained that CMS did not require Theranos to

16 void the test results: "Theranos made the decision to void the test results; CMS didn't tell them to do

17 that." Def. Ex. 34, Dkt. 584-3 at 6. The government's attempt to characterize all post-investigation

18 activity by Theranos as required conduct is simply not supported by the record or the law.

19       Second, the government points to 42 C.F.R. § 493.1291, which states that a "laboratory must

20 have an adequate manual or electronic system(s) in place to ensure test results and other patient-specific

21 data are accurately and reliably sent from the point of data entry (whether interfaced or entered

22 manually) to final report destination, in a timely manner." This regulation, which governs the

23 transmission of test results, requires a laboratory to issue corrected reports once "errors in the reported

24 patient test results are detected." *Id.* § 493.1291(k). But the government cites no evidence that

25 Theranos "detected" "errors in the reported patient test results." To the contrary, Theranos voided

26 certain tests as a blanket measure, in recognition of dissatisfaction with prior lab management and

27 practices concerning documentation of QC results. Def. Ex. 27, Dkt. 583-1 at 2. Even the government

28 MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD

recognizes that these tests were not corrected, Gov't Opp'n, Dkt. 673 at 9; they were voided.  CMS explicitly stated that it did not make a determination as to whether Theranos' test results were erroneous. Def. Ex. 34, Dkt. 584-3 at 5 ("CMS doesn't look to the patient data.  If the QC is problematic, there is no way to assess whether the patient data is accurate and reliable.").  To punish Ms. Holmes because Theranos did *more* than what the law requires would create a perverse incentive for regulated individuals and would be contrary to Rule 407.

Lastly, the government relies on out of circuit cases to argue that Rule 407 does not cover evidence of Theranos' statements or investigations that led to voiding of tests.  Gov't Opp'n, Dkt. 673 at 7-8.  The Ninth Circuit, however, has applied the Rule to both investigations and the measures that were implemented as a result.  *See Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) ("The Internal Affairs investigation and measures taken by the defendant City were remedial measures taken after the incident.").

In short, the government has failed to establish that Theranos' decision to void its tests was required by law.  In fact, the government's own witness supports what the documents confirm: Theranos' voiding of tests did not result from any federal-law requirements.[1]  The Court should exclude this evidence.

## II.   Rules 401-403 Require Exclusion of the Evidence.

The voiding evidence also should be excluded because the Rule 403 considerations substantially outweigh any probative value of the evidence.  The government argues that the voiding of certain tests in 2016 "demonstrates that [Ms. Holmes'] prior statements were false, that she knew they were false, and that she lacked confidence in their accuracy and reliability."  Gov't Opp'n, Dkt 673 at 9.  In other words, the government argues that Theranos' lab director's decision to void certain tests after the 2016

---

[1] The two exhibits cited by the government as evidence of "corrected tests" are pregnancy tests that were voided up to 6 months after the initial result was reported.  Gov't Ex. 7, Dkt 679-7; Gov't Ex. 8, Dkt. 679-8.  Both tests clearly state that the results "as previously reported is voided and this result should not be used out of an abundance of caution," Gov't Ex. 7, Dkt. 679-7; Gov't Ex. 8, Dkt. 679-8, confirming that the voiding was done in an abundance of caution.

MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD

1    CMS investigation is evidence that Ms. Holmes' statements made in the six years prior to the

2    investigation were knowingly false.

3          There are at least three problems with this argument.  First, despite the government's attempts to

4    put Theranos' lab practices at issue in this case, it failed to do so in the Indictment.  The Court should

5    not permit the government to confuse the issues by turning this wire-fraud case into a case about

6    purportedly negligent lab practices.  The decision to void tests is irrelevant because it was the product of

7    an investigation into whether Theranos deviated from a subset of its lab operating procedures and

8    documentation, not from a finding that the tests were inaccurate or unreliable or that a statistically

9    significant number of customers were negatively impacted by Theranos tests.  The decision to void tests

10   thus does not tend to make a fact more probable than it would be without the evidence, confuses the

11   issues in this case, and could lead the jury to convict Ms. Holmes solely based on issues with Theranos'

12   lab operating procedures and documentation.

13         Second, the decision to void tests was due to uncertainty with how prior lab leadership operated

14   the laboratory and in an abundance of caution.  Def. Mot., Dkt. 572 at 4.  The decision was also made in

15   the context of CMS discussions and in an attempt to show a willingness to take seriously the cited issues

16   in the Report, the majority of which concerned negligent lab practices such as failure to maintain proper

17   documentation—issues that the government's own witness stated are common among laboratories.  *See,*

18   *e.g.*, Def. Ex. 34, Dkt. 584-3 at 6 (stating CMS often sees issues with laboratories not having procedures

19   signed by the lab director).  Contrary to the government's unsupported assertions, this evidence is not

20   probative of whether Ms. Holmes' "lacked confidence in [the tests'] accuracy and reliability."  Gov't

21   Opp'n, Dkt. 673 at 9.  Without a connection to accuracy and reliability, the evidence does not tend to

22   prove that Theranos technology was incapable of consistently producing accurate and reliable results.

23   Third Superseding Indictment, Dkt. 469 ¶ 16.

24         Third, even if the government did sufficiently link the decision to void the tests to the type of

25   widespread fraud regarding Theranos technology alleged in the Indictment, measures taken in March

26   2016 in response to an investigation and review of internal procedures cannot be evidence of fraudulent

27   intent for actions that occurred up to over six years prior.  To hold so would encourage the jury to

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
     EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
     CR-18-00258 EJD

1   convict Ms. Holmes for failing to uncover laboratory issues, a negligence standard, rather than for

2   knowingly misrepresenting false, material information during the charged conspiracy.  The government

3   has not explained how this evidence has any bearing on the alleged falsity of any statements she made at

4   the time the charged conduct at issue allegedly occurred.  Evidence of Theranos' decision to void tests

5   demonstrates only that Theranos' new lab director decided to void the test results at that time.  To infer

6   from that director's decision that statements Ms. Holmes made up to six years prior were false is

7   impermissible because it implies a connection between the two events where none exists.  *See United*

8   *States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978) ("The logic of showing prior intent or knowledge by

9   proof of subsequent activity escapes us.").

10          Lastly, even if the voiding evidence had some probative value, it is substantially outweighed by

11   its unfairly prejudicial nature.  The voiding evidence will lead to the impermissible inference that

12   because the voiding occurred after the CMS inspection the actions were an admission of wrongdoing.

13   Evidence of remedial measures made in the context of a government agency investigation, operating

14   under a different standard in making its findings, would lead the jury to believe that the regulated entity

15   admitted to wrongdoing and was deserving of punishment.  The probative value of this evidence is also

16   substantially outweighed by the danger of jury confusion, and could lead the jury to convict solely based

17   on issues with the Theranos laboratory.

18   **III.     The Court Should Exclude Evidence of Settlements and Refunds.**

19          The government concedes that Rule 408 bars admission of Theranos' settlements with the

20   Arizona Attorney General's Office (AGO) and Centers for Medicaid and Medicare Services (CMS)

21   settlements, and it represents that it will not introduce them at trial.  Gov't Opp'n, Dkt. 673 at 8-9.  That

22   concession necessarily extends to the refunds associated with the AGO settlement, which the

23   government did not address in its Opposition.  The Court should enter an order excluding this evidence.

24          The government argues that statements by Ms. Holmes and Theranos to CMS and the AGO in

25   the course of their investigations are not barred by Rule 408, but fails to identify any such statements or

26   negotiations it intends to introduce.  *See* Gov't Opp'n, Dkt. 673 at 8.  This evidence, of course, would be

27   subject to Rules 401-403 and potentially hearsay considerations.  Because the government identifies no

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD

1   such documents that it seeks to admit, any ruling with respect to those documents would be premature

2   and hypothetical.

3                                         **CONCLUSION**

4          For the foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Evidence of

5   Remedial Measures and Settlements (Dkt. 572), this Court should grant Ms. Holmes' motion.

6

7   DATED:  February 16, 2021                              Respectfully submitted,

8                                                          /s/ Amy Mason Saharia
                                                           KEVIN DOWNEY
9                                                          LANCE WADE
                                                           AMY MASON SAHARIA
10                                                         KATHERINE TREFZ
                                                           Attorneys for Elizabeth Holmes

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
     EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
     CR-18-00258 EJD
                                              6

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all

3

counsel of record.

4

5

                         /s/ Amy Mason Saharia

                         AMY MASON SAHARIA

6

                         Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS
CR-18-00258 EJD