1   JOHN D. CLINE (CA State Bar No. 237759)
    50 California Street, Suite 1500
2   San Francisco, CA 94111
    Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3   Email: cline@johndclinelaw.com

4
    KEVIN M. DOWNEY (Admitted Pro Hac Vice)
5   LANCE A. WADE (Admitted Pro Hac Vice)
    AMY MASON SAHARIA (Admitted Pro Hac Vice)
6   KATHERINE TREFZ (CA State Bar No. 262770)
    WILLIAMS & CONNOLLY LLP
7   725 Twelfth Street, NW
    Washington, DC 20005
8   Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
9   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

10  Attorneys for Defendant ELIZABETH A. HOLMES

11

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                           SAN JOSE DIVISION

15

16  UNITED STATES OF AMERICA,          )  Case No. CR-18-00258-EJD
                                       )
17          Plaintiff,                 )
                                       )  **REPLY IN SUPPORT OF MS. HOLMES'**
18     v.                              )  **MOTION TO EXCLUDE FDA INSPECTION**
                                       )  **EVIDENCE UNDER FEDERAL RULES OF**
19  ELIZABETH HOLMES and               )  **EVIDENCE 401-404 AND 801-803**
    RAMESH "SUNNY" BALWANI,            )
20                                     )
            Defendants.                )  Date:    March 23, 2021
21                                     )  Time:    9:00 AM
                                       )  CTRM:  4, 5th Floor
22                                     )
                                       )  Hon. Edward J. Davila
23                                     )
                                       )
24  ─────────────────────────         )

25

26

27

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
    UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
    CR-18-00258 EJD

1

**TABLE OF CONTENTS**

2

Page

I.      The FDA Inspection Evidence Is Irrelevant. ....................................................................1

3

II.     The FDA Inspection Evidence Is Inadmissible under Rules 404 and 403. ........................4

4

III.    The FDA Form 483s, Emails, and Other Inspection Records Are Inadmissible
        Hearsay. ...............................................................................................................................5

5

CONCLUSION...............................................................................................................................9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1    Ms. Holmes moved (Dkt. 573) to exclude as irrelevant, unfairly prejudicial, and inadmissible

2  hearsay evidence concerning the FDA's 2015 inspection of Theranos.  This evidence includes 27

3  documents—primarily FDA internal emails and an unsigned FDA Form 483 containing preliminary

4  inspection findings—that the government included on its exhibit list even though it had not disclosed as

5  a witness any FDA employee who participated in the 2015 inspection.  The government's Opposition

6  (Dkt. 674) attaches a bevy of new inspection evidence not included on its exhibit list.  The government

7  now claims that this new evidence is key to its case and that it will seek to admit this new evidence

8  alongside the original 27 documents under various hearsay exceptions.  The government concedes,

9  however, that the inspection evidence is irrelevant to the only FDA-related allegation in the Indictment,

10  and it all but abandons any connection with the alleged scheme to defraud investors.

11    The government's alternative relevance theories fail.  Its argument that FDA inspection evidence

12  bears on the capabilities of Theranos' technology or its laboratory tests relies on an incorrect

13  interpretation of the FDA inspectors' technical findings, and would require expert testimony that the

14  government has not disclosed.  And its claim that text messages during the inspection are relevant

15  evidence of Ms. Holmes' mental state presumes that the FDA inspection is relevant in the first place.  It

16  is not, but even if it were nearly all of the proposed inspection evidence, such as internal FDA emails, is

17  inadmissible hearsay.  Admitting the FDA inspection evidence under a hearsay exception would

18  precipitate a mini-trial of enormous complexity and length that would unfairly prejudice Ms. Holmes

19  and waste everyone's time.  The Court should grant Ms. Holmes' Motion and exclude the inspection

20  evidence.

21  **I.    The FDA Inspection Evidence Is Irrelevant.**

22    Ms. Holmes moved to exclude the FDA inspection evidence as irrelevant to the only FDA-

23  related allegation in the Indictment—*i.e.*, allegedly false statements to investors about whether FDA

24  "clearance or approval" was "required" for Theranos' "analyzer and tests."  Third Superseding

25  Indictment, Dkt. 467 ¶ 12(F); *see* Def. Mot., Dkt. 573 at 5-6.  The government concedes that the FDA

26  inspection evidence is irrelevant to this allegation by not addressing it.  That concession is necessary; the

27  August-September 2015 inspection necessarily is irrelevant to alleged misrepresentations made months

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1  (and in some cases years) earlier. *See United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978) ("The

2  logic of showing prior intent or knowledge by proof of subsequent activity escapes us.").

3       Beyond that concession, the government's Opposition effectively abandons any connection

4  between the FDA inspection and the alleged scheme to defraud investors.  The government does not tie

5  the inspection evidence to *a single representation* to *a single investor*.  It cites two emails as purportedly

6  showing that Ms. Holmes "solicited investments" after the inspection and "through at least November

7  2015," Gov't Opp'n, Dkt. 674 at 7, but the emails do not reflect any such solicitation and they do not

8  make the inspection relevant.  The first is a September 1, 2015 email from Peter Anderson at Sutter

9  Health referencing a meeting on August 27-28, 2015, concerning a potential "strategic partnership" with

10 Theranos.  Gov't Ex. 19, Dkt. 680-5.  This is not a post-inspection communication; the FDA inspection

11 began the day prior to the meeting Mr. Anderson references and continued through September 16, 2015.

12 The second email—also sent by Mr. Anderson and only copying Ms. Holmes—communicates his desire

13 to pursue that Theranos partnership without an equity investment.  Gov't Ex. 20, Dkt. 680-6.  Neither

14 email contains or reflects a statement from Ms. Holmes about the need for FDA clearance or approval or

15 on any other topic.  Neither email reflects her solicitation of investments.

16      The government also disclaims a connection between this evidence and the FDA-related

17 allegation in the indictment—calling any connection between the two "irrelevant."  Gov't Opp'n,

18 Dkt. 674 at 7.  Instead, the government argues that the FDA inspectors' preliminary findings are relevant

19 because they "tend[] to show Theranos's nanotainer was not working as designed and Theranos was not

20 capable of consistently producing accurate and reliable results." *Id.*  The government apparently

21 misunderstands the scope of the FDA's inspection and its relationship to the tests in Theranos' CLIA

22 laboratory.  The 2015 FDA inspection was principally concerned with the legal classification of one of

23 Theranos' nanotainers—*i.e.*, whether that nanotainer should be regulated as part of Theranos' laboratory

24 developed tests ("LDTs") in Theranos' CLIA laboratory, over which the FDA traditionally had not

25 exercised oversight, or whether it was a medical device subject to technical design and manufacturing

26 regulations under the Food Drug & Cosmetic Act (and separate from the CLIA regulations governing

27 Theranos' laboratory). *See* Saharia Decl., Ex. 82 (FDA For Cause Inspection Request).  The FDA

28 REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1  inspectors made a preliminary observation that the nanotainer was a Class II medical device and thus

2  subject to FDA design and manufacturing regulations.  The remainder of the observations applied those

3  regulations to Theranos' *manufacturing* documentation, not its CLIA laboratory documentation or data.

4  The FDA inspectors thus did not review Theranos' compliance with CLIA regulations relating to the

5  quality of laboratory performance.  The FDA inspectors made no findings regarding the performance of

6  Theranos' laboratory or the accuracy and reliability of Theranos' blood tests.  Nor did they make any

7  finding as to any potential harm from the use of Theranos' technology and devices.  *See* Gov't Ex. 14,

8  Dkt. 680; Gov't Ex. 15, Dkt. 680-1; Gov't Ex. 15, Dkt. 680-2.

9          The government nevertheless combs the FDA Form 483s and other internal FDA documents,

10  most of which are not even on the government's exhibit list, and presents attorney argument that the

11  findings are evidence of "issues" and "failings" with Theranos' nanotainers.  Gov't Opp'n, Dkt. 674 at 7

12  (arguing that "the fact that FDA observed that four assays (bicarbonate, calcium, glucose, and

13  potassium) failed acceptance criteria in the validation plan . . . tends to show Theranos's nanotainer was

14  not working as designed").  The government has not disclosed any expert testimony about what a

15  "validation plan" is, what it means to "fail[] acceptance criteria," or drawing its proffered connection

16  between these observations and the devices' performance in the CLIA laboratory.  What qualifications

17  does the prosecutor have to opine that an observation concerning a "design validation plan" "tends to

18  show" that Theranos "was not capable of consistently producing accurate and reliable results?"  *See id.*

19  at 1, 7.  Does the prosecutor know what "design validation plans" or "acceptance criteria" are?  These

20  topics and connections are beyond the ken of lay lawyers and lay jurors alike.  Without expert testimony

21  to bridge that divide, the FDA inspection reports and related evidence are irrelevant.

22          Finally, the government asserts, through a series of parentheticals, that the evidence "reflect[s]"

23  Ms. Holmes' "state of mind and intent" and coordination with Mr. Balwani.  *Id* at 7.  But Ms. Holmes'

24  mental state, conduct, and alleged "coordination" with Mr. Balwani during the inspection is relevant

25  only if the FDA inspection is relevant.  For example, evidence of an "effort to manage and influence the

26  FDA inspectors," which the government claims "reflect[s] anxiety over what the FDA might find," is

27  relevant only if what the FDA was looking for (and thus "might find") relates to an issue in the case.

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1    Likewise, any evidence—including text messages between Mr. Balwani and Ms. Holmes—concerning

2    plans to shift resources towards or away from the nanotainer in response to the inspection is relevant

3    only if FDA's inspection bore upon claims that Ms. Holmes made to investors about the nanotainers or

4    about the nanotainers' performance.  Because the government has not proffered admissible evidence

5    connecting the inspection to these or any other issue, Ms. Holmes' mental state during the inspection is

6    not probative of an intent to deceive investors or patients.

7         In any event, the government takes the text messages out of context.  It cites a text from Ms.

8    Holmes instructing that documents submitted to the FDA "need to be labeled with foia exemption

9    language," as reflecting Ms. Holmes' "obsession over secrecy."  *Id.* at 2, 7.  The government lawyers

10   well know that corporate entities regularly produce documents with this designation (in fact, the

11   government urged comparable designations in the litigation over Ms. Holmes' motion to compel FDA

12   documents in this case).  Regardless, the complete texts show that Ms. Holmes was coordinating "with

13   [H]eather" (Theranos' General Counsel) and "Evan" (outside counsel at Boies Schiller Flexner LLP) on

14   these issues, passing along mundane instructions on how to submit documents to FDA:  "Also on same

15   document saying in response to your request for xxx we are enclosing yyy.  Evan will send you

16   language[.]"  Saharia Decl., Ex. 83 (excerpt of text messages).  The government also speculates that Mr.

17   Balwani's text that "[w]e need to change .com provider section," is evidence of *Ms. Holmes'* desire to

18   change the Theranos website and thus her knowledge that statements on the website were "false and

19   misleading."  Gov't Opp'n, Dkt. 674 at 3, 7.  This message (like the rest) is devoid of context; it is

20   entirely unclear what website statements it addresses or how it relates to the FDA inspection.  Nor is

21   there any response from Ms. Holmes indicating that she understood Mr. Balwani's text or agreed with it.

22   Without that necessary context, the government's proposed use of this cherry-picked text (and others) is

23   entirely speculative and probative of nothing.

24   **II.     The FDA Inspection Evidence Is Inadmissible under Rules 404 and 403.**

25        This hyper-technical evidence poses a substantial risk of unfair prejudice and jury confusion.

26   Refuting the government's speculative connections between the preliminary observations in the Form

27   483s and alleged "issues" with the performance of one of Theranos' nanotainers will require a mini-trial

28   REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
     UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
     CR-18-00258 EJD

1    of enormous complexity.  Ms. Holmes would have to consider calling an expert witness to explain away

2    the misperceptions the government's imprecise use of the evidence would foster.  And even if the FDA

3    inspection evidence hypothetically had some probative value that a lay jury could discern, there still

4    would be a risk that the jury would misinterpret or inflate its importance because of its apparent official

5    nature.  *See* Def. Mot., Dkt. 573 at 7 (citing cases).

6         The government's efforts to hold Ms. Holmes responsible for others' actions, including

7    Theranos' attorneys, with respect to the FDA inspection further underscores the risk of unfair prejudice.

8    Gov't Opp'n, Dkt. 674 at 5, 7.  Whether Theranos' counsel objected to the FDA's jurisdiction does not

9    reflect on Ms. Holmes' intent.  And should the government urge that baseless connection at trial, Ms.

10   Holmes will have to contextualize and justify the legal bases for those objections—adding analysis of

11   complex legal questions to the already technically dense mini-trial on the FDA inspection evidence.

12        Finally, although the government claims the evidence is not offered to prove propensity but to

13   show "state of mind, intent, knowledge, and consciousness of guilt," *id.* at 8, the evidence does not bear

14   on any of these issues for the reasons set forth above.  What's left is propensity logic:  that Ms. Holmes'

15   and her attorneys' supposed interference with the FDA's inspection and alleged violations of FDA

16   regulations make it more likely that Theranos acted improperly in other areas of its business.

17   **III.      The FDA Form 483s, Emails, and Other Inspection Records Are Inadmissible Hearsay.**

18        Ms. Holmes moved to exclude FDA inspectors' email communications, the Form 483s, and other

19   FDA records documenting inspection findings as inadmissible hearsay.  Def. Mot., Dkt. 573 at 8-10.

20   The government abandons the inspectors' emails, asking only that the court "decline to exclude them for

21   now" because they "may be used to refresh recollection and may fall under other exceptions to the

22   hearsay rule, such as the exception for recorded recollection."  Gov't Opp'n, Dkt. 573 at 12 n.4.  This

23   speculative argument ignores the fact—which Ms. Holmes addressed in her Motion and the government

24   does not dispute—that none of the FDA employees who participated in the inspection appear on the

25   government's witness list.  Def. Mot., Dkt. 573 at 1 n.1, 9-10.  The government does not explain how

26   the emails could refresh the recollection of a witness who did not participate in the inspection.  For the

27

28   REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
     UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
     CR-18-00258 EJD

1  same reason, the emails are inadmissible under the recorded recollection exception.  The Court need not

2  wait to exclude them.

3       The Form 483s and other inspection records are also inadmissible.[1]  The government ignores Ms.

4  Holmes' arguments under Rule 803(8)(A)(iii), which bars admission of public records that contain

5  factual findings from legally authorized investigations when offered against a criminal defendant, *see id.*

6  at 8, relying instead on Rule 803(8)(A)(ii), Gov't Opp'n, Dkt. 674 at 9-10.  The government, however,

7  cannot rely on that provision to admit these inspection records because Rule 803(8)(A)(iii) is the

8  exclusive exception for public records that contain factual findings from legally authorized

9  investigations.  *See* Ms. Holmes' Reply in Support of Motion To Exclude Evidence of CMS Survey

10  Findings and Sanctions Pursuant to Rules 401-403 and 801-803 (making same argument with respect to

11  the CMS Form 2687, which Ms. Holmes incorporates here).

12       The government's resort to Rule 803(8)(A)(ii) also fails for the independent reason that the FDA

13  inspection documents set out "a matter observed by law-enforcement personnel."  Fed. R. Evid.

14  803(8)(A)(iii).  In the Ninth Circuit, application of the "law enforcement exception" involves two

15  inquiries:  (1) is the person making the observations a member of "law enforcement," and, (2) if so, were

16  the observations made in an "adversarial" setting?  *See, e.g.*, *United States v. Orellana-Blanco*, 294 F.3d

17  1143, 1150–51 (9th Cir. 2002).  If the answer to both is yes, then the evidence is inadmissible against a

18  criminal defendant.  *Id.*  The FDA inspection documents meet both requirements.

19       First, FDA inspectors are "law enforcement personnel" under the rule.  The FDA inspection was

20  an unannounced, "[f]or-cause" inspection of Theranos' facilities.  *E.g.*, Gov't Ex. 14, Dkt. 680 at US-

21  FDA-0035508.  FDA has the power to levy criminal sanctions, including terms of imprisonment, for

22

23

---

24      [1] The government included only one unsigned Form 483 for Theranos' Palo Alto facility on its exhibit list, which Ms. Holmes moved to exclude.  Def. Ex. 53, Dkt. 586-7.  The government attaches to

25  its Opposition both Form 483s (one for Palo Alto, the other for the Newark facility) as well as other inspection records containing narrative of the inspectors' day-to-day-experiences and impressions during

26  the inspection.  *See* Gov't Ex. 14, Dkt. 680; Gov't Ex. 15, Dkt. 680-1; Gov't Ex. 15, Dkt. 680-2. Despite their omission from the exhibit list, the Opposition suggests that the government will to seek to

27  admit all of these at trial.  Ms. Holmes' hearsay and relevance arguments apply equally to all such inspection records.

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1   violations of the Food Drug & Cosmetic Act, *see generally* 21 U.S.C. § 333,[2] to say nothing of the

2   agency's other enforcement powers over companies whose business falls within its ambit.  The

3   government's case agent for this prosecution is a Special Agent in FDA's Office of Criminal

4   Investigations.  FDA inspectors thus are "law enforcement" under any reasonable reading of the term.

5   *See United States v. Oates*, 560 F.2d 45, 68 (2d Cir. 1977) (construing term to include "to include, at the

6   least, any officer or employee of a governmental agency which has law enforcement responsibilities").[3]

7          The government's comparisons to city building inspectors, medical examiners, and prison case

8   managers are inapt.  Gov't Opp'n, Dkt. 674 at 9.  None of these officials nor their agencies can levy

9   criminal sanctions like the FDA.  *See United States v. Hansen*, 583 F.2d 325, 333 (7th Cir. 1978) ("It

10  appears that failure to comply with the building code may result in a fine, but not in a criminal

11  conviction."); *United States v. Rosa*, 11 F.3d 315, 332 (2d Cir. 1993) ("[T]he Medical Examiner's

12  Office is required simply to investigate unnatural deaths; it refers a death bearing any indicium of

13  criminality to the appropriate district attorney and has no responsibility for enforcing any laws.").  The

14  better analogy is to IRS employees, customs inspectors, and immigration officers, who similarly straddle

15  the civil-criminal enforcement divide and who have been held to be law enforcement personnel.  *See*

16  *Orellana-Blanco*, 294 F.3d at 1150–51 (INS agent); *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir.

17  1979) (customs inspector); *United States v. Ruffin*, 575 F.2d 346, 356 (2d Cir. 1978) (IRS personnel).

18  As the Second Circuit reasoned in *Ruffin*, "there surely can be no question here that IRS personnel who

19  gather data and information and commit that information to records which are routinely used in criminal

20  prosecutions are performing what can legitimately be characterized as a law enforcement function."  575

21  F.2d at 356.  The same is true of the FDA inspectors.

22

23         [2] *See also generally* Types of FDA Enforcement Actions, https://www.fda.gov/animal-veterinary/resources-you/types-fda-enforcement-actions (cataloguing criminal penalties).

24         [3] The government cites *United States v. Fryberg*, 854 F.3d 1126 (9th Cir. 2017), for the

25  proposition that the Ninth Circuit takes a "narrow" approach to the law enforcement exception, *see* Gov't Opp'n, Dkt. 674 at 9, but that language in *Fryberg* merely notes that the Ninth Circuit requires the

26  observations be made in an adversarial setting even if made by "law enforcement personnel," *see* *Fryberg*, 854 F.3d at 1133.  Neither *Fryberg*, which involved a police officer, nor any of the

27  government's other cases suggest that the Ninth Circuit would take a "narrow" view of whether a government official is "law enforcement."

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1    Nor is there any serious dispute that the inspection was "adversarial" in nature.  The

2  government's relevance arguments focus on the allegedly contentious atmosphere during the inspection.

3  *See* Gov't Opp'n, Dkt. 674 at 5.  When Theranos objected to FDA's jurisdiction, the FDA inspectors

4  threatened that the objections "could result in several Form-483 observations" and thus sanctions.  Gov't

5  Ex. 15, Dkt. 680-1 at US-FDA-0024049.  The FDA for-cause inspection request instructed inspectors to

6  consider issuing a Warning Letter if they discovered any legal violations.  Saharia Decl., Ex. 82 at FDA-

7  0001654.  And the Form 483s speak for themselves:  they set forth observations that, if converted into a

8  final agency determinations,[4] could result in various sanctions.  *See generally* Gov't Ex. 16, Dkt. 680-2.

9  The government cites cases involving ministerial records, primarily in the immigration context,

10  compiled by law-enforcement personnel in the day-to-day execution of their duties.  *See United States v.*

11  *Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980) (record of prior deportation); *United States v.*

12  *Lopez*, 762 F.3d 852, 861 (9th Cir. 2014) (similar "verification of removal" form).  These documents are

13  not like the FDA inspection documents, which reflect the FDA inspectors' preliminary findings of

14  violations of the law.

15    Because the inspection records are the product of an adversarial interaction, they do not contain

16  the type of "ministerial, objective observations" that qualify under Rule 803(8)(A)(ii).  *Orellana-Blanco*,

17  294 F.3d at 1150.  The Ninth Circuit has instructed that the touchstone in the adversarial inquiry is

18  whether the observer "exercise[d] independent judgment" when compiling the public record.  *See United*

19  *States v. Cerda-Ramirez*, 730 F. App'x 449, 452 (9th Cir. 2018) (criminal complaints "are adversarial

20  documents because prosecutors must support their accusations with probable cause").  Here, the FDA

21  inspection documents reflect a similar probable-cause-like determination by inspectors exercising

22  independent judgment in the course of the agency's application of its enforcement powers.  *See*

23  *Orellana-Blanco*, 294 F.3d at 1150 (public records that contain "subjective observations, summaries,

24  opinions and conclusions" generally are inadmissible under Rule 803(8)(A)(ii)); *see also* Ms. Holmes'

25  Reply in Support of Motion in Limine To Exclude Evidence of CMS Survey Findings and Sanctions

26

27    [4] In Theranos' case, this did not occur.  The inspection was resolved without sanction.

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1  Pursuant to Rules 401-403 and 801-803 (applying principle to analogous CMS inspection records).  The

2  FDA inspection documents thus are adversarial and inadmissible.

3                                                    **CONCLUSION**

4          For the foregoing reasons, and those set forth in Ms. Holmes' Motion (Dkt. 573), the Court

5  should exclude the FDA inspection evidence.

6

7  DATED:  February 16, 2021                         Respectfully submitted,

8

9                                                    /s/ Amy Mason Saharia
                                                     KEVIN DOWNEY
10                                                   LANCE WADE
                                                     AMY MASON SAHARIA
11                                                   KATHERINE TREFZ
                                                     Attorneys for Elizabeth Holmes
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
    UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
    CR-18-00258 EJD

1

2

**CERTIFICATE OF SERVICE**

3

    I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all

counsel of record.

4

5

6

                                            /s/ Amy Mason Saharia
                                            AMY MASON SAHARIA
7                                           Attorney for Elizabeth Holmes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE FDA INSPECTION EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD