JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>　　　Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS PURSUANT TO RULES 401-403 AND 801-803**<br><br>Date:　　March 23, 2021<br>Time:　　9:00 a.m.<br>CTRM:　4, 5th Floor<br><br>Hon. Edward J. Davila |

**TABLE OF CONTENTS**

**Page**

I.     The CMS Report Is Inadmissible Under Rule 803(8). ........................................................2

        A.     Rule 803(8)(A)(iii) Prohibits Admission of the CMS Report. ...............................2

        B.     Rule 803(8)(A)(ii) Does Not Apply...........................................................................3

        C.     The CMS Report Contains Inadmissible Hearsay within Hearsay. ........................6

        D.     The Government Has Not Shown that Theranos' Responses to CMS Are Admissible. ..............................................................................................6

II.     Rules 401-403 Require Exclusion of CMS Survey Findings. .............................................7

        A.     The Evidence Is Irrelevant. ........................................................................................7

        B.     The Evidence Is Unfairly Prejudicial Under Rule 403. ..........................................9

CONCLUSION ................................................................................................................................11

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

## TABLE OF AUTHORITIES

### CASES

**Pages**

*Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989) ................................................................................... 6

*Manocchio v. Moran*, 919 F.2d 770 (1st Cir. 1990) .............................................................................. 5

*Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993) ....................................................................................... 2

*Phillips v. United States*, 356 F.2d 297 (9th Cir. 1965) ................................................................... 7, 8

*Robbins v. Whelan*, 653 F.2d 47 (1st Cir. 1981) .................................................................................. 2

*United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010) ......................................................................... 6

*United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978) ............................................................................ 7

*United States v. Christo*, 614 F.2d 486 (5th Cir. 1980) .................................................................. 1, 10

*United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019) ...................................................... 2

*United States v. Edelman*, 458 F.3d 791 (8th Cir. 2006) .................................................................... 5

*United States v. Hansen*, 583 F.2d 325 (7th Cir. 1978) ...................................................................... 5

*United States v. Mackey*, 117 F.3d 24 (2d Cir.1997) .......................................................................... 6

*United States v. Murgio*, 2017 WL 365496 (S.D.N.Y. Jan. 20, 2017) ............................................ 3, 4

*United States v. Orellana-Blanco*, 294 F.3d 1143 (9th Cir. 2002) ..................................................... 5

*United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927 (N.D. Cal. 2016) ................................... 9

*United States v. Riddle*, 103 F.3d 423 (5th Cir. 1997) ................................................................ 10, 11

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ............................................................................. 5

*United States v. White Eagle,* 721 F.3d 1108 (9th Cir. 2013) ........................................................... 10

*United States v. Wolf*, 820 F.2d 1499 (9th Cir. 1987) ............................................................. 1, 10, 11

### RULES AND REGULATIONS

42 C.F.R. § 493.2 ............................................................................................................................... 10

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

| | |
|---|---|
| 42 C.F.R. § 493.1806 | 4 |
| Fed. R. Crim. P. 16 | 7 |
| Fed. R. Evid. 403 | 9 |
| Fed. R. Evid. 801 | 6 |
| Fed. R. Evid. 803 | *passim* |

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

No doubt sensing the evidentiary Achilles' heel in its case, (*i.e.* its lack of evidence of systemic problems with the accuracy and reliability of Theranos tests), the government has taken the approach of repeatedly relying on the findings of the CMS January 2016 Report, which concerned issues with documentation and procedures in Theranos' laboratory.  Although Ms. Holmes is not charged with violating any CMS regulations, the government references the Report in eight of its Oppositions.  This is not a case about purportedly negligent lab practices; Ms. Holmes is not charged with violating CLIA regulations (no doubt because the government knows she did not manage the CLIA laboratory on a day-to-day basis).  The government should not be permitted to use the inadmissible, irrelevant, and prejudicial CMS Report to prove the offenses that were actually charged.

The Report itself is inadmissible hearsay and does not qualify for admission under the exception provided under Rule 803(8)(A)(iii).  That subsection of the rule does not permit admission of a record or statement of a public office against a defendant in a criminal case if it sets out "factual findings from a legally authorized investigation."  The government does not dispute that the CMS Report is inadmissible under Rule 803(8)(A)(iii).  It instead attempts an end-run around that subsection by invoking Rule 803(8)(A)(ii).  But the Report does not qualify for admission under 803(8)(A)(ii) both because it contains findings and conclusions that go well beyond simple observations, as required by the rule, and because it contains findings of law enforcement personnel.

Whether presented in documents or testimony, all evidence about CMS's regulatory findings should be excluded because the evidence is irrelevant and highly prejudicial.  Evidence that Theranos was accused of violating regulations regarding laboratory documentation and procedures is irrelevant to the government's wire-fraud charges, as it does not tend to prove that Ms. Holmes knowingly misled investors about the capabilities of Theranos' proprietary testing technology or patients about the accuracy and reliability of Theranos tests.  The evidence is also highly prejudicial and risks confusing the issues.  The government cannot be permitted to "bootstrap . . . civil regulatory violation[s]" into an unrelated felony conviction.  *United States v. Christo*, 614 F.2d 486, 492 (5th Cir. 1980); *see also United States v. Wolf*, 820 F.2d 1499, 1504 (9th Cir. 1987) (reversing conviction when "arguments concerning [defendant's] possible violations of . . . regulation impermissibly tainted the trial").

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

1

**I.     The CMS Report Is Inadmissible Under Rule 803(8).**

**A.     Rule 803(8)(A)(iii) Prohibits Admission of the CMS Report.**

Rule 803(8)(A)(iii) prohibits admission of a record or statement of a public office against a defendant in a criminal case if it sets out "factual findings from a legally authorized investigation." The government does not dispute that the CMS report is a record of a public office that sets out factual findings, or that it contains findings from a legally authorized investigation. In fact, it implicitly concedes the opposite. *See* Gov't Opp'n, Dkt. 675 at 2 ("A CLIA-certified laboratory like Theranos must permit CMS to conduct an inspection to assess the laboratory's compliance with CLIA."). Accordingly, straightforward application of Rule 803(8)(A)(iii) requires excluding the CMS Report. *See* Def. Mot., Dkt. 574 at 8-11.

The government has provided ***no response*** to Ms. Holmes' arguments under Rule 803(8)(A)(iii). The government simply ignores that rule and focuses its arguments on Rule 803(8)(A)(ii), which provides for admission of a public record that sets out a "matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." But the government cannot invoke a more general provision—here, Rule 803(8)(A)(ii)—to overcome the more specific prohibition of Rule 803(8)(A)(iii). *See United States v. Corrales-Vazquez*, 931 F.3d 944, 950 (9th Cir. 2019) (stating that "general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment"); *Robbins v. Whelan*, 653 F.2d 47, 50 n.5 (1st Cir. 1981) ("A public record based upon information supplied by outsiders should be viewed as investigative in nature and examined under clause (C) [of Fed. R. Evid. 803(8)]."). Even the Advisory Committee Notes make clear that Rule 803(8)(A)(iii) prohibits admission of an agency report against a criminal defendant under all circumstances: "In one respect, however, the rule with respect to evaluative reports under item (c)[1] is ***very specific***; ***they are***

---

[1] The current Rule 803(8)(A)(iii) is functionally equivalent to the provision formerly styled as Rule 803(8)(C), which applied to "factual findings resulting from an investigation made pursuant to authority granted by law." *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993).

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

2

*admissible only in civil cases and against the government in criminal cases*." Fed. R. Evid. 803(8) Adv. Comm. Note (emphasis added).

The government cites no case allowing it to use subsection (ii) to admit against a criminal defendant a document clearly barred by subsection (iii). The defense has located no such case either. The only case on point went against the government. In *United States v. Murgio*, 2017 WL 365496 (S.D.N.Y. Jan. 20, 2017), a bribery case, the government attempted to introduce records concerning an investigation by the National Credit Union Association of a fraudulent credit union run by the defendant. The government argued, as it does in this case, that the records were admissible under the public records exception because they contained matters set out under a legal duty to report. *Id.* at *6. The court flatly rejected that argument, observing that "Rule 803(8) draws a distinction between 'matters observed while under a legal duty to report,' on the one hand, and 'factual findings from a legally authorized investigation,' on the other.'" *Id.* at *7. Because the records qualified as "factual findings from a legally authorized investigation," the court prohibited the government from admitting them under subsection (ii). *Id.* The same result should follow here.

### B. Rule 803(8)(A)(ii) Does Not Apply.

Additionally, the government's argument under Rule 803(8)(A)(ii) is flawed even on its own terms. Rule 803(8)(A)(ii) permits admission of public records describing a "matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." The rule "contemplates the admission of records recounting events or objective facts directly observed by a particular government actor." *Murgio*, 2017 WL 365496, at *7. The rule does not apply to "findings of fact," "evaluative conclusions, legal conclusions, and even recommendations, all of which go well beyond simple matters observed." *Id.* at *9 (emphasis omitted).

The CMS Report does not fall under Rule 803(8)(A)(ii) because the CMS Report does not contain routine, objective factual observations. The claimed deficiencies cited in the government's motion are based on CMS surveyors' "review of verification procedures, verification documentation and [interview] with general supervisor and technical supervisor"—not the surveyors' objective observations. Ex. 12, ("CMS Report") Dkt. 581-1 at -22 (THPFM0002240173). Similarly, the

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

3

immediate jeopardy finding cited by the government is a legal determination based on evaluative findings, not an observation of an objective fact. *Id.* at 2 (THPFM0002240153) ("[I]t was ***determined*** that the deficient practices of the laboratory pose immediate jeopardy" (emphasis added)).

Even the government admits that "most" of the report's findings are "descriptions of documents provided by Theranos and notation of statements" made by witnesses, Gov't Opp'n, Dkt. 675 at 12—in other words, not first-hand observations. Because the CMS findings are "evaluative conclusions arrived at through an investigatory process," they do not fall under Rule 803(8)(A)(ii). *Murgio*, 2017 WL 365496, at *7; *see also id.* ("In contrast to Rule 803(8)(A)(ii), the text of 803(8)(A)(iii) contemplates admission of records containing evaluative, rather than objective, determinations arrived at through a more elaborate (and often investigatory) process.").

Rule 803(8)(A)(ii) also bars admission of the CMS Report for the independent reason that it contains observations of law enforcement personnel. The government argues that the CMS surveyors are not law enforcement personnel under the rule because they are "not the police" and "have no criminal law enforcement power." Gov't Opp'n, Dkt. 657 at 11. The rule, however, is not limited to just police officers. *See* Fed. R. Evid. 803 Adv. Comm. Note (explaining rule prohibits the admission of matters observed by "police officers and other law enforcement personnel in criminal cases"). The surveyors had criminal law enforcement authority. The CMS Report itself states that if a laboratory does not comply with its directives CMS will "advise the laboratory in writing of the sanction(s) to be imposed and/or enforcement actions(s) that will be taken." Ex. 12, Dkt. 581-1 at 4 (THPFM0002240155). The potential sanctions include criminal sanctions. *See* 42 C.F.R. § 493.1806 (stating criminal sanctions are available if "an individual . . . is convicted of intentionally violating any CLIA requirement"). In fact, CMS elected to send CMS surveyors to conduct the inspection, as opposed to state surveyors, knowing that CMS surveyors (but not state surveyors) can take "enforcement actions." Def. Ex. 34, Dkt. 584-3 at 3 (Bennett 302).

Moreover, the investigation was not a routine recertification survey, but was triggered by complaints that the surveyors intended to investigate. CMS received complaints from both a former Theranos employee and a complaint that was received and forwarded by the State of New York. *Id.* As

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

4

a result of this investigation, Theranos was subject to both potential civil monetary penalties and criminal sanctions. And the nature of the proceeding was highly adversarial. Indeed, it ended with findings against Theranos, which were appealed and ultimately settled.

The government's cases are readily distinguishable. In *United States v. Hansen*, the court noted that the conduct that was the subject of the documents at issue "may result in a fine, but not in a criminal conviction." 583 F.2d 325, 333 (7th Cir. 1978). In Ms. Holmes' case, Theranos was subject to potential criminal sanctions. In *United States v. Edelman*, the court noted that an Inmate Systems Manager who prepared a report that did not contain any opinions, findings, or conclusions and was not part of a criminal investigation did not qualify as law enforcement. 458 F.3d 791, 813-14 (8th Cir. 2006). The CMS report has findings and conclusions, and the surveyors conducted the investigation. The other cases concern medical examiners. *United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993); *Manocchio v. Moran*, 919 F.2d 770, 777 (1st Cir. 1990). These cases shed no light on this issue.

Finally, the government argues that, even if the CMS surveyors are law enforcement, the Report is still admissible because it contains observations of "routine, non-adversarial matters." Gov't Opp'n, Dkt. 675 at 11. That is plainly incorrect. Although the Ninth Circuit has held that public records that relate to "'routine, nonadversarial matters made in a nonadversarial setting,' reflecting 'ministerial, objective observations,'" may be admitted against a criminal defendant notwithstanding the fact that they were observed by law enforcement, this principle is inapplicable to public records generated by agencies or law enforcement that contain "subjective observations, summaries, opinions and conclusions." *United States v. Orellana-Blanco*, 294 F.3d 1143, 1150 (9th Cir. 2002).

As Ms. Holmes stated in her Motion, there was nothing "routine" or "non-adversarial" about the investigation that led to the CMS findings. Def. Mot., Dkt. 574 at 9-10. Nor were the CMS findings "ministerial, objective observations." A CMS witness explained that the standard for a deficiency-level finding is entirely up to whoever is surveying the lab. The surveyor explained that "[o]nce there's a determination of noncompliance, you have to use your professional surveyor judgment to determine what evidence you need to support that noncompliance and there's no standard set . . . it's very situational." Def. Ex. 31, Dkt. 584 at 157. The findings in a CLIA survey can vary from surveyor to

surveyor, and surveyors may "have differences of opinion about . . . whether it should be cited as a standard or a condition." *Id.* at 167:16-22. These subjective determinations are nothing like the routine objective matters cited in the government's cases.

Because the CMS Report is hearsay without an exception, the Court should exclude it.

### C. The CMS Report Contains Inadmissible Hearsay within Hearsay.

Even if the CMS report were otherwise admissible, the Report is replete with statements from third parties that are inadmissible. Although Rule 803(8) provides an exception to the hearsay rule for public records themselves, "hearsay statements . . . are not admissible merely because they appear within public records." *United States v. Mackey*, 117 F.3d 24, 28-29 (2d Cir.1997). Citing its own Motion *in Limine*, the government briefly argues that the CMS Report "includes out-of-court statements by Theranos personnel, but those are not hearsay because they are authorized admissions and statements of an agent or employee within the meaning of Federal Rule of Evidence 80[1](d)(2)." Gov't Opp'n, Dkt. 675 at 12 (citing Gov't Mot., Dkt. 588 at 15-17). However, under Rule 801(d)(2)(D), the "government [is] required to demonstrate [that the agency relationship existed] by a preponderance of the evidence." *United States v. Bonds*, 608 F.3d 495, 507 (9th Cir. 2010). As Ms. Holmes has argued, "mere occupation of a subordinate position in the corporate chain of command" does not suffice "to establish an 'agency relationship' for the purpose of admission under Rule 801(d)(2)(D)." *Boren v. Sable*, 887 F.2d 1032, 1040 (10th Cir. 1989). Ms. Holmes incorporates her prior arguments on this point. *See* Def. Opp'n, Dkt. 659 at 14-16. The government has failed to make any showing of agency in its Opposition.

### D. The Government Has Not Shown that Theranos' Responses to CMS Are Admissible.

The government offers a one-sentence argument that Theranos' responses to CMS are admissible because they "are not hearsay." Gov't Opp'n, Dkt. 675 at 12. It offers no argument in support of that contention and thus clearly has failed to carry its burden at this time. In any event, Theranos' responses to CMS are irrelevant and unfairly prejudicial for all the reasons set out in the next Section.

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

6

**II.      Rules 401-403 Require Exclusion of CMS Survey Findings.**

Putting aside the hearsay issues, Rules 801-803 require exclusion of the CMS survey findings, whether presented in the Report itself or in live testimony of the surveyors or other witnesses.[2]

**A.      The Evidence Is Irrelevant.**

For the reasons stated in Ms. Holmes' motion, the CMS findings are not relevant to the government's allegations concerning accuracy and reliability. Def. Mot., Dkt. 574. Ms. Holmes briefly responds to the flawed assumptions in the government's Opposition.

The government argues that Vitamin D coefficients "between 18.7% and 63.8% for certain Theranos devices between June and August 2014" are "highly probative of the falsity of Defendant's statements to investors and patients" Gov't Opp'n, Dkt. 675 at 1-2. The government points to a 10%CV figure for Vitamin D in an undated PowerPoint presentation as support for this argument. *Id.* at 7. However, the government is well aware that CV can be calculated from a variety of different datasets, and it has not even attempted to show that the 10%CV representation was connected to this limited set of QC data over three months in 2014. Moreover, findings from a 2016 Report have no bearing on Ms. Holmes' intent regarding statements made years earlier. *United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978) ("The logic of showing prior intent or knowledge by proof of subsequent activity escapes us."). The government fails to allege that Ms. Holmes was contemporaneously aware of these data. As the Ninth Circuit has explained, the government may admit documents "on the theory that a defendant's actual knowledge of them shows that he must have realized the scheme was fraudulent," " only if it has been independently shown that such defendant had ***actual knowledge of the documents while the asserted scheme was in progress***." *Phillips v. United States*, 356 F.2d 297, 306 (9th Cir. 1965) (emphasis added).

The government next points to a handful of findings from the CMS Report as supposed evidence of inaccuracy and unreliability. For example, the government points to a finding that for some devices

---

[2] Even if the surveyors' testimony were relevant (and it is not), the government has not noticed them as experts pursuant to Rule 16. Because their findings and conclusions are based on "specialized knowledge," the government was required to disclose them as experts.

patient samples were run (but not reported to the patient) after failing QC, and that certain QC results had high coefficient variations for some weeks during the three years of the charged conspiracy. Gov't Opp'n, Dkt. 675 at 7. The government alleges that "these observations alone and collectively [have] a tendency to show Theranos was not capable of consistently producing accurate and reliable results." *Id.* The government's arguments reflect a fundamental misunderstanding of how CMS conducts its surveys. CMS does not undertake to determine whether any or all of a laboratory's test results are accurate. Def. Ex. 34, Dkt. 584-3 at 6. As the government's CMS witness has explained, CMS only "looks at a laboratory's procedures," such as its training, documentation, or quality control procedures, and "looks to see that they are running them when they say they are supposed to be running them. CMS doesn't look to the patient data." *Id*. at 5-6. CMS's findings thus are framed in terms of failure to follow a lab's own policies or procedures or failure to document the same. *See generally* Def. Ex. 12, Dkt. 581-1 (CMS Report). For example, the government points to QC issues but the CMS Report does not state that any of the at-issue results were actually *reported* to patients. Def. Ex. 12, Dkt. 581-1 at 43. And CMS did not determine this fact because it was irrelevant for CMS's purposes; CMS was only there to determine whether Theranos was following its procedures. As the government's witness explained, CMS doesn't pass judgment on validity of QC data: "[w]ith regard to QC testing, CMS is looking to see that Theranos, is following its QC ranges. CMS is not assessing the validity of the ranges they've come up with, they're just looking to see if Theranos is following them." Def. Ex. 34, Dkt. 584-3 at 4. Moreover, the cited information represent a small fraction of the hundreds of thousands of tests conducted by Theranos.[3]

Moreover, the proof needed to cite a lab for noncompliance is entirely up to the surveyor. CMS explained that "[o]nce there's a determination of non-compliance, you have to use your professional

---

[3] The average %CV value for any particular year is the type of information that could have been calculated from the information in the LIS database that the government failed to preserve. *See* Gov't Corr. Opp'n to Ms. Holmes' Mot. to Exclude Anecdotal Test Results, Dkt. 682 at 1 ("This database collected, among other things, . . . all QC data."). The government should not be allowed to cite as evidence of falsity a handful of data points from the CMS Report when it failed to gather and preserve the very evidence that Ms. Holmes could have used to rebut that assertion. *See also* Ms. Holmes' Reply in Support of Mot. to Exclude Anecdotal Test Results (forthcoming).

surveyor judgment to determine what evidence you need to support that noncompliance and there's no standard set . . . it's very situational." Def. Ex. 31, Dkt. 584 at 157. The findings in a CLIA survey can vary from surveyor to surveyor, and surveyors may "have differences of opinion about . . . whether it should be cited as a standard or a condition." *Id.* at 167:16-22. The burden is on the laboratory to disprove CMS's subjective finding. If the laboratory fails to provide the proper paperwork or documentation that shows why CMS was wrong, then the lab will be cited. In other words, the burden was on Theranos to provide paperwork to disprove CMS's concededly subjective determinations.

Here, the government has the burden of proof. It should not be permitted to use regulatory findings with different standards of evidentiary proof and different rules for burden of proof to convict Ms. Holmes of charges unrelated to the regulations themselves. *See United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016) (excluding agency conclusions because "admitting the NTSB's conclusions invites the jury to improperly substitute the NTSB's findings—under a ***different standard and for a different purpose***—for its own findings" (emphasis added)).

### B.     The Evidence Is Unfairly Prejudicial Under Rule 403.

The government argues that admission of the irrelevant evidence will not prejudice Ms. Holmes because "[Ms. Holmes] remains free to attack the basis of CMS's observations, to disclaim her knowledge of the operation of Theranos technology in its clinical laboratory, and to insist that she lacked intent to defraud." Gov't Opp'n, Dkt. 675 at 2. This is not the standard under Rule 403. Rule 403 reflects the principle that some evidence is so unfairly prejudicial when weighed against its probative value that the jury should not be allowed to consider it at all, regardless of whether a defendant may have a good response. That is exactly the case with the CMS findings.

The Report findings are highly prejudicial for the very reason the government wants them introduced: it wants the jury to hear that CMS made an "immediate jeopardy" determination and to draw incorrect assumptions about what that means. The government cites this immediate jeopardy finding fifteen times across its various opposition briefs. It claims that CMS's immediate jeopardy finding provides a "link between the CLIA regulations and accuracy and reliability." Gov't Opp'n, Dkt. 675 at 12. Not so. An immediate jeopardy finding means only that "the laboratory's noncompliance . . .

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

surveyor judgment to determine what evidence you need to support that noncompliance and there's no standard set . . . it's very situational." Def. Ex. 31, Dkt. 584 at 157. The findings in a CLIA survey can vary from surveyor to surveyor, and surveyors may "have differences of opinion about . . . whether it should be cited as a standard or a condition." *Id.* at 167:16-22. The burden is on the laboratory to disprove CMS's subjective finding. If the laboratory fails to provide the proper paperwork or documentation that shows why CMS was wrong, then the lab will be cited. In other words, the burden was on Theranos to provide paperwork to disprove CMS's concededly subjective determinations.

Here, the government has the burden of proof. It should not be permitted to use regulatory findings with different standards of evidentiary proof and different rules for burden of proof to convict Ms. Holmes of charges unrelated to the regulations themselves. *See United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016) (excluding agency conclusions because "admitting the NTSB's conclusions invites the jury to improperly substitute the NTSB's findings—under a ***different standard and for a different purpose***—for its own findings" (emphasis added)).

### B.     The Evidence Is Unfairly Prejudicial Under Rule 403.

The government argues that admission of the irrelevant evidence will not prejudice Ms. Holmes because "[Ms. Holmes] remains free to attack the basis of CMS's observations, to disclaim her knowledge of the operation of Theranos technology in its clinical laboratory, and to insist that she lacked intent to defraud." Gov't Opp'n, Dkt. 675 at 2. This is not the standard under Rule 403. Rule 403 reflects the principle that some evidence is so unfairly prejudicial when weighed against its probative value that the jury should not be allowed to consider it at all, regardless of whether a defendant may have a good response. That is exactly the case with the CMS findings.

The Report findings are highly prejudicial for the very reason the government wants them introduced: it wants the jury to hear that CMS made an "immediate jeopardy" determination and to draw incorrect assumptions about what that means. The government cites this immediate jeopardy finding fifteen times across its various opposition briefs. It claims that CMS's immediate jeopardy finding provides a "link between the CLIA regulations and accuracy and reliability." Gov't Opp'n, Dkt. 675 at 12. Not so. An immediate jeopardy finding means only that "the laboratory's noncompliance . . .

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

has already caused, or is likely to cause, at any time, serious injury or harm, or death, to individuals served by the laboratory or to the health and safety of the general public." 42 C.F.R. § 493.2. CMS did not determine that any such injury or harm actually occurred, and the government has identified no such evidence. CMS did not determine that any of Theranos' tests were inaccurate or unreliable; indeed, it did not even look at patient data. The finding was not, as the government suggests, related to all facets of Theranos' laboratory. This finding simply says nothing about the inaccuracy or unreliability of Theranos tests. It would serve only to inflame and confuse the jury. It would be highly improper for the jury to substitute the subjective findings of particular CMS surveyors (which were never affirmed on appeal) regarding Theranos' compliance with CLIA violations for the jury's findings on the actual issues in this case.

At bottom, the government's injection of evidence of Theranos' deviation from its own lab practices as a proxy for its (non-existent) evidence that Theranos tests were inaccurate and unreliable will only mislead the jury. *See United States v. Wolf*, 820 F.2d 1499, 1504 (9th Cir. 1987) (reversing conviction when government's references to civil regulation "created a serious risk that the jury would find [defendant] guilty of criminal misapplication and false entry because he failed to comply with [that] [r]egulation"); *see also United States v. White Eagle,* 721 F.3d 1108, 1114 (9th Cir. 2013) ("it is impermissible to use the violation of a civil statute to *ipso facto* 'supply a crucial element' of a criminal offense"); *Christo*, 614 F.2d at 492 ("A conviction, resulting from the government's attempt to bootstrap a series of . . . civil regulatory violation[s] into an equal amount of . . . felonies, cannot be allowed to stand."). This case is not about whether Theranos engaged in lab procedures that the government considers unwise. *Christo*, 614 F.2d at 492. And it most certainly is not about whether the government believes the Theranos lab could have been run better. It is incredibly prejudicial for the government to focus this wire-fraud case on irrelevant regulatory violations in an attempt to obscure the fact that it lacks evidence to prove the criminal offense for which Ms. Holmes is charged. *Id.*

In *United States v. Riddle*, 103 F.3d 423 (5th Cir. 1997), the Fifth Circuit rejected a similar government tactic. Riddle, the former chairman of a small Texas bank that had been ordered to cease operations, was charged with bank fraud, misapplication of bank funds, and making false entries. *Id.* at

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

10

427. To prove those charges at trial, the government introduced reports from the bank's federal regulator, the Office of Comptroller of the Currency ("OCC"). The OCC reports listed purported regulatory violations committed by Riddle's bank, noted the bank's failure to establish "[s]atisfactory procedures" and its "poor credit underwriting standards," and warned that due to these problems, "[t]he condition of the bank was found to be extremely critical." *Id.* at 431. The Fifth Circuit reversed Riddle's conviction, concluding that the district court "abused its discretion when it allowed the government to admit extensive evidence about the OCC's appraisal of [the bank's] general health and its failure to comply with regulations from its inception to its demise." *See id.* ("Riddle was not on trial for being an ineffective or even a corrupt banker.").

The same is true here. Ms. Holmes is not on trial for Theranos' alleged failure to maintain adequate laboratory documentation and procedures. The charged conduct in the Third Superseding Indictment is instead confined to whether Ms. Holmes knowingly made false statements related to the accuracy and reliability of Theranos' tests. The government's proffered evidence is not probative of that question and threatens to mislead the jury into convicting Ms. Holmes for an alleged failure to police potential regulatory violations. *See Wolf*, 820 F.2d at 1504 (reversing conviction when "arguments concerning [defendant's] possible violations of . . . regulation[s] impermissibly tainted the trial"). The Court should exclude the evidence.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Ms. Holmes' Motion to Exclude Evidence of CMS Findings and Sanctions (Dkt. 574) this Court should grant Ms. Holmes' Motion.

DATED: February 16, 2021                        Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF CMS SURVEY FINDINGS AND SANCTIONS
CR-18-00258 EJD

11

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes