JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803**<br><br>Date:  March 23, 2021<br>Time:  10:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE
RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY
AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

**TABLE OF CONTENTS**

**Page**

I. The Court Should Exclude Evidence Relating to the December 2013 CDPH Inspection. ..................................................................................................................1

    A. Daniel Young Email .........................................................................................1

    B. The CDPH Report.............................................................................................5

II. The Court Should Exclude Evidence Relating to Theranos' September 2015 Communications with CMS...........................................................................................6

III. The Court Should Exclude Evidence Relating to the Hiring and Retention of Theranos' Qualified Laboratory Director, Dr. Sunil Dhawan, M.D. ..............................7

CONCLUSION ..........................................................................................................................9

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

i

Ms. Holmes submits this Reply in further support of her Motion (Dkt. 575) to exclude certain evidence relating to:  (1) a December 2013 CDPH inspection of Theranos; (2) a September 2015 Theranos communication with CMS and; (3) the hiring of Theranos' CMS-qualified laboratory director, Dr. Sunil Dhawan, M.D.  None of this evidence is relevant to the proposed Rule 404(b) purposes in the government's disclosures, and the government's shifting relevance theories in its Opposition similarly lack merit.  Even if the evidence were minimally probative of any issue, Rule 404(b), Rule 403 or, in the case of the CDPH inspection report, the rule against hearsay still mandate exclusion.

**I.      The Court Should Exclude Evidence Relating to the December 2013 CDPH Inspection.**

**A.      Daniel Young Email**

The government claims that an email from Theranos employee Daniel Young to then-laboratory director Adam Rosendorff, purportedly sent during the CDPH inspection, reflects Ms. Holmes' "state of mind during the conspiracy" and knowledge that unspecified "representations about Theranos's technology were false."  Gov't Opp'n, Dkt. 677 at 9.[1]  It is the government's burden to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from . . . other acts evidence."  *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).  Even if the government can do so, it must also demonstrate "that, on balance, [the evidence's] probative value is not substantially outweighed by the danger of unfair prejudice to the defendant."  *Id.*  The government cannot meet these burdens, for several reasons.

First, the government fails to connect Ms. Holmes to the email.  As a prerequisite to admission, the government must present "evidence . . . sufficient to support a finding that *the defendant* committed the other act."  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) (internal

---

[1] The government also disclosed a memorandum of an interview with Theranos employee Kerry Denise Elenitoba-Johnson as bearing on these issues, though the memorandum does not address specifically the 2013 audit. In her motion, Ms. Holmes sought to exclude this evidence insofar as the government seeks to elicit testimony from Ms. Elenitoba-Johnson about any alleged deception of CDPH during the 2013 inspection. Def. Mot., Dkt. 575 at 1. The government does not address Ms. Elenitoba-Johnson in its Opposition and has thus waived the issue. Both the content of the potential testimony and its connection to the 2013 inspection remain unclear. In any event, the Court should exclude any testimony from Ms. Elenitoba-Johnson on this issue for all the reasons in Ms. Holmes' Motion and this Reply that apply to the 2013 Young email.

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1

quotation marks omitted). Ms. Holmes is not on the email, the email does not refer to Ms. Holmes, and it does not purport to convey directions from Ms. Holmes. The government does not proffer testimony from Young or Rosendorff tying the email to any instruction from Ms. Holmes.

In its Opposition, the government attempts to paper over its failure to connect this email to Ms. Holmes by citing innocuous communications involving Ms. Holmes in the lead-up to the inspection, including emails from Ms. Holmes "[c]hecking in" on the "plan for audit preparations" that was being managed by others, Gov't Ex. 28, Dkt. 680-14, and inquiring into "the path for walking the auditors in *and downstairs*," Gov't Ex. 31, Dkt. 680-17 (emphasis added), and an email from Young purportedly referencing prior group discussions about treatment of confidential information in "SOP/documentation" requested during the inspection, *see* Gov't Opp'n, Dkt. 677 at 2. From this, the government surmises that it is "fair to infer" that the mid-inspection communication from Young to Rosendorff reflects Ms. Holmes' instructions. Gov't Opp'n, Dkt. 677 at 10.[2] That inference is not fair; it is entirely speculative. There is no *evidence* connecting Ms. Holmes to the Young email. To the contrary, the government's cited emails involving Ms. Holmes undermine any connection. Ms. Holmes' email about the "path" reflects a recognition that the inspector could view the "downstairs" laboratory and merely asks about the path by which the inspector would access the area that the government says the company was trying to conceal. Gov't Ex. 31, Dkt. 680-17.

Second, the government also speculates about the email's meaning. As explained in Ms. Holmes' Motion, *see* Def. Mot., Dkt. 575 at 7-8, Young's email is not probative of an intent to deceive because laboratory personnel are not obligated to direct inspectors to certain areas. The government acknowledges the email's low probative value when it argues that its nefarious interpretation is "equally" plausible as any other innocuous reading. Gov't Opp'n, Dkt. 677 at 10. Evidence so

---

[2] The government also suggests, with no elaboration, that Ms. Holmes is "responsible for the statements of her agents and employees and coconspirator statements." Gov't Opp'n, Dkt. 677 at 10. This resort to a broad *respondeat superior* theory of criminal liability fails for all the reasons set forth in Ms. Holmes' Motion in Limine To Exclude Bad Acts and False or Misleading Statement of Theranos Agents and Employees (Dkt. 565) and her Opposition to the portion of the government's Motion in Limine seeking categorically to admit such statements (Dkt. 659).

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

susceptible to different interpretations lacks "any tendency to make a fact more or less probable than it would be without the evidence" and thus is irrelevant, Fed. R. Evid. 401(a); at a minimum, it must be excluded under Rule 403 for risk of jury confusion. *See, e.g.*, *United States v. Wright*, 799 F.2d 423, 425 (8th Cir. 1986) (affirming exclusion of statement that informant had given defendant some kind of "content" to hold because statement would require jury to speculate about what type of "content" was involved); *Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1274 (8th Cir. 1990) (letter equally supportive of multiple theories of case properly excluded given its "potential to confuse" and "limited value for corroborating [the proponent's] theory").

Further undercutting the Young email's minimal probative value are two pieces of evidence that the government ignores. First, Young's contemporaneous notes from the inspection reflect that Rosendorff "spoke [with the inspector] about all LDTs" and "mentioned that the LDT[s] were developed for running fingerstick samples, and that we [Theranos] collect the draw using a Theranos developed 'CTN.'" Saharia Decl., Ex. 77 (D. Young notes from CDPH inspection). The notes further show that the inspector "asked to see a representative LDT validation report[,]" "picked creatinine as an example," and was shown a report. *Id.* This document shows that Young and Rosendorff shared data and information on the very aspect of Theranos' laboratory that the government alleges Ms. Holmes (through Young) sought to hide.

Second, Ms. Holmes had disclosed to CMS the fact that Theranos was running LDTs on its proprietary devices in the CLIA laboratory during a November 4, 2013 meeting with FDA and CMS.[3] Saharia Decl., Ex. 78 (minutes of Nov. 4, 2013 meeting). Minutes from that meeting reflect that "Theranos . . . noted that, while the [Theranos Sample Processing Unit] TSPU could operate in a patient service center, that is not occurring now. Currently (Phase I) the TSPU is operated in the Theranos high complexity CLIA-certified laboratory and all samples are shipped to the Theranos laboratory, where pre-analytical and analytical steps are conducted." *Id.* at 3. Why would Ms. Holmes go to elaborate lengths to conceal from an inspector what she had already voluntarily disclosed to top CMS officials? The

---

[3] Theranos had disclosed this fact to FDA months prior to the November 4 meeting.

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

3

government's theory makes no sense. Together, these two pieces of evidence conclusively refute the government's speculative and inflammatory reading of Young's and Ms. Holmes' emails.

Even without this contrary evidence, the ambiguous Young email cannot bear the multiple speculative leaps required to connect it with Ms. Holmes' alleged belief that "her technology would not pass must [sic] if exposed." Gov't Opp'n, Dkt. 677 at 10. As the Ninth Circuit has recognized, not all inferences are plausible or permissible; some are too speculative to justify admission of the underlying evidence. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1189–90 (9th Cir. 2011). In *Espinoza-Baza*, the court rejected the petitioner's argument that the jury properly could infer from the fact— excluded at trial—of his grandfather's United States citizenship that petitioner might have obtained derivative citizenship: "[F]or the jury to plausibly draw that inference, additional facts are necessary . . . . Absent these facts, we are left with only speculation, not proof." *Id.* at 1190. Here, for the jury plausibly to draw the government's preferred inference, at least the following "additional facts" are necessary: that the email reflected Ms. Holmes' instruction (the government presents no evidence of this); that it shows her desire to avoid showing certain areas to the inspector (the government concedes Young's email is ambiguous and ignores other evidence that undermines its preferred interpretation); and that such a desire is misleading or improper (as explained in Ms. Holmes' Motion, CLIA law and practice regarding inspections suggest otherwise—a fact the government concedes by not addressing).

On the other side of the admissibility ledger sit the many Rule 403 concerns that inhere to Rule 404(b) evidence. *See, e.g.*, *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir. 2014) (Rule 403 balancing for Rule 404(b) evidence "requires great care on the part of the district court, 'because few categories of evidence bring greater risk of prejudice to the accused under Rule 403.'" (quoting Mueller, *Federal Evidence* § 4:28, at 731)). In addition to the risk of jury confusion and speculation discussed above, the evidence bears the unmistakable mark of propensity logic: a defendant who allegedly defrauded a regulator is more likely to have defrauded others. "Under [Ninth Circuit] precedent, even a small risk of misleading the jury substantially outweighs the probative value of minimally probative evidence." *Espinoza-Barza*, 647 F.3d at 1189 (internal quotation marks omitted). Here, where the only

possible probative value requires so many speculative leaps, unsupported by other evidence, the propensity logic and risk of misleading the jury require exclusion.

In an attempt to avoid Rule 404(b), the government argues that the Young email is "inextricably intertwined" to the alleged fraud. In the Ninth Circuit, there are "two categories" of evidence that qualify for this exception to Rule 404(b): evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge" or that is "necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1012-13. The 2013 CDPH inspection fits neither category. The government alleges that Ms. Holmes defrauded investors and patients through false or misleading statements about Theranos' technology, aspects of its business, and the capabilities of its blood testing services that induced them to part with money or property. The 2013 inspection was not part of those property "transactions." And because of that distinction, excluding the government's allegations of deception aimed at an entirely different type of target would not render its investor and patient-facing case "[in]coherent" or "[in]comprehensible." *Cf. United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) ("[B]ecause all relevant prosecution evidence explains the crime or completes the story to some extent . . . the fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether." (internal quotation marks omitted)). The evidence—which the government disclosed under Rule 404(b)—is classic other-acts evidence that should be excluded as irrelevant or unfairly prejudicial.

### B. The CDPH Report

The Court should also exclude the CDPH report. The government has abandoned the connection in its disclosures between the report and any alleged deception of CDPH, arguing instead that it shows Theranos was not capable of providing accurate and reliable blood test results. Gov't Opp'n, Dkt. 677 at 10. This is wrong for all the reasons set forth in Ms. Holmes' Motion To Exclude Evidence of CMS Survey Findings and Sanctions Pursuant to Rules 401-403 and 801-803 (Dk. 574) concerning findings from the 2015 CMS inspection. Ms. Holmes incorporates those arguments[4] here and adds the following.

---

[4] These include Ms. Holmes' hearsay arguments, which the government addresses in its Opposition by referring to its briefing on the 2015 CMS report. The two reports present the same

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE
RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY
AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

5

Although neither the CDPH nor CMS report bears on accuracy and reliability, the CDPH report has uniquely low probative value because CDPH identified all citations as being corrected to its satisfaction and CDPH reissued Theranos' CLIA certificate. *See* Saharia Decl., Ex. 79 (CLIA certificate of compliance). The CDPH report thus does not show Ms. Holmes' knowledge of issues with the laboratory and/or Theranos' technology, Gov't Opp'n, Dkt. 677 at 10-11; if anything, the rapid recertification of the laboratory put Ms. Holmes on notice that the laboratory was in regulatory compliance.

The risk of unfair prejudice and jury confusion swamps whatever probative value survives when the CDPH report is viewed in this context. The government has not disclosed any expert witness to guide the jury's evaluation of the report's hyper-technical findings, arguing instead that the "jury should be permitted to decide" both their meaning and whether they show "a serious departure" from the governing regulations. *Id.* at 11. A lay jury is not equipped for such a speculative task. Without a basis for evaluating the report's findings, the jury is likely to overestimate its probative value by equating regulatory citations with proof of fraud—a mistaken inference the government appears eager to foster. But Ms. Holmes is not on trial for failure to comply with CLIA regulations, and admission of a report confusing that point could lead to reversible error. *See United States v. Riddle*, 103 F.3d 423 (5th Cir. 1997) (reversing bank fraud conviction based on admission of reports from bank's federal regulator containing its "appraisal of [the bank's] general health and its failure to comply with regulations" where banker was "not on trial for being an ineffective . . . banker"). Admission of the CDPH Report would only confuse the issues and risk conviction on an improper basis.

## II. The Court Should Exclude Evidence Relating to Theranos' September 2015 Communications with CMS.

Ms. Holmes moved to exclude a one-page September 2015 communication from Theranos to CMS—conveyed by Balwani, Gov't Opp'n, Dkt. 677 at 7—that the government disclosed under Rule 404(b) as a false or misleading representation to a government regulator, in part because the government

---

hearsay concerns; neither may be admitted for the truth of its findings and conclusions.

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

6

1   had failed to tie the unsigned letter to Ms. Holmes. Def. Mot., Dkt. 575 at 11-12. The government's

2   opposition fails to provide that connection, asserting only that Ms. Holmes' involvement in certain

3   aspects of the 2015 CMS and FDA inspections makes it "fair to infer" that she "adopted" the letter. *Id.*

4   at 14. This is the same sleight of hand deployed to conjure an absent connection between Ms. Holmes to

5   the 2013 Young email, and it fails for the same reason: it is the government's burden to show facts that

6   make its proposed Rule 404(b) evidence relevant, including that the evidence relates to the defendant.

7   *See supra*, pp. 1-2. The communication should be excluded.

8         The government also suggests—in a single sentence—that the letter is admissible as a co-

9   conspirator statement or statement of Ms. Holmes' agents and employees under Rule 801(d)(2)(B-E).

10   Gov't Opp'n, Dkt. 677 at 14. The government, "as the proponent of the evidence, [bears] the burden of

11   establishing a foundation from which to conclude that the statement was within a hearsay exclusion."

12   *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934 (9th Cir. 2002). The government has not met its

13   burden. Theranos employees were not Ms. Holmes' agents, but rather agents of Theranos. *See* Ms.

14   Holmes' Opp'n to Gov. Mots. in Limine, Dkt. 659 at 14-16. And the government has not laid the

15   foundation that the letter furthered either of the alleged conspiracies (neither of which is alleged to have

16   targeted regulatory agencies like CMS). The letter should be excluded.

17   **III.   The Court Should Exclude Evidence Relating to the Hiring and Retention of Theranos'**
18         **Qualified Laboratory Director, Dr. Sunil Dhawan, M.D.**

19         The government strains to transform Theranos' hiring of a CLIA-qualified laboratory director in

20   winter 2014-2015 into something that it is not. The government faults Ms. Holmes for hiring as a

21   replacement to Dr. Rosendorff "a relatively unknown friend of Balwani." Gov't Opp'n, Dkt. 677 at 11.

22   But the government concedes that Dr. Dhawan was qualified to serve as a lab director. *Id.* at 12. So

23   what does it matter that Balwani knew Dr. Dhawan prior to his retention? The government pivots;

24   "[m]ore fundamentally," it argues, the issue is not his qualifications but the "fact that he did no work for

25   months on end and that Theranos's failing lab went leaderless throughout this period." *Id.* This is

26   untrue. The government neglects to mention that, immediately upon Dr. Rosendorff's departure,

27
28   REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE
     RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY
     AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
     CR-18-00258 EJD

1 Theranos hired not one but two laboratory directors—Dr. Dhawan and co-director Dr. Lynette Sawyer.
2 Saharia Decl., Ex. 80 (Sawyer *curriculum vitae*). In fact, Dr. Sawyer reviewed hundreds of company
3 documents during the time the government asserts the post was left vacant. (The government has
4 interviewed Dr. Sawyer, who provided it with some of the many laboratory documents she endorsed
5 during her tenure that extended through July 2015. *See, e.g.*, Saharia Decl., Ex. 81 (exemplar laboratory
6 documents endorsed by Dr. Sawyer).[5]

7 At bottom, the government's relevance theories rest on the unsupported premise that there was
8 something inherently, self-evidently improper about Theranos' hiring of Dhawan. The government
9 argues that the jury can "draw inferences form [Ms. Holmes'] choice to ignore and silence Dr.
10 Rosendorff, hire Dr. Dhawan, and then not have Dr. Dhawan work." Gov't Opp'n, Dkt. 677 at 12. But
11 Ms. Holmes' motion does not seek to exclude all facts surrounding the retention of Dr. Dhawan, his
12 qualifications, or the work he did for Theranos. Rather, Ms. Holmes moved to exclude the evidence for
13 the purpose that it was disclosed: to urge the jury to draw nefarious conclusions based on an
14 uninformed, lay impression of the role a lab director should play, rather than what the law actually
15 requires. That is not a fair inference. It is precisely that legally incorrect inference that makes the
16 government's proposed use of Dr. Dhawan's retention so prejudicial and likely to confuse.

17 Finally, the Court should reject the government's argument that Rule 404(b) does not apply to
18 this evidence—which it disclosed under Rule 404(b)—because "[h]iring a lab director is not a crime,
19 wrong, or other act." *Id.* at 12. The government's proposed use of the evidence—to show Ms. Holmes'
20 mental state during the charged conspiracy and her alleged failure to "take seriously problems in the
21 CLIA laboratory," *id.* at 11—shows that the government indeed considers this an "act" under the Rule
22 404(b). The Court also should reject the government's conclusory, one-sentence argument that the
23 evidence is "inextricable intertwined" with the charged conspiracy. As noted above, *see supra*, p. 5, that

---

[5] The government's Opposition relies on several other unsupported assertions. Its claim that the laboratory went "leaderless" ignores that the team underneath the director remained in place. And it assigns Ms. Holmes a key role in retaining Mr. Dhawan without pointing to any evidence of her role other than an electronic signature on a welcome letter the company issued to all new employees. *See* Gov't Opp'n, Dkt. 677 at 12.

28 REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

1  narrow concept cannot be read to encompass all company personnel decisions—including the hiring of a

2  qualified lab director—when there is no connection between that decision and any alleged

3  misrepresentations to investors or patients.  In any event, regardless whether Rule 404(b) applies, this

4  irrelevant, unfairly prejudicial evidence is irrelevant and inadmissible under Rule 403.

**CONCLUSION**

For the foregoing reasons, and those in Ms. Holmes' Motion (Dkt. 575), the Court should exclude the challenged evidence relating to Theranos' interactions with government regulatory agencies.

DATED:  February 16, 2021                           Respectfully submitted,

<u>/s/ Amy Mason Saharia</u>
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH GOVERNMENT REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

REPLY IN SUPPORT OF MS. HOLMES' MOTION TO EXCLUDE CERTAIN EVIDENCE RELATING TO THERANOS' INTERACTIONS WITH REGULATORY AGENCIES UNDER FEDERAL RULES OF EVIDENCE 401-404 AND 801-803
CR-18-00258 EJD