1    JOHN D. CLINE (CA State Bar No. 237759)
     50 California Street, Suite 1500
2    San Francisco, CA 94111
     Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3    Email: cline@johndclinelaw.com

4
     KEVIN M. DOWNEY (Admitted Pro Hac Vice)
5    LANCE A. WADE (Admitted Pro Hac Vice)
     AMY MASON SAHARIA (Admitted Pro Hac Vice)
6    KATHERINE TREFZ (CA State Bar No. 262770)
     WILLIAMS & CONNOLLY LLP
7    725 Twelfth Street, NW
     Washington, DC 20005
8    Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
     Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com
9

10   Attorneys for Defendant ELIZABETH A. HOLMES

11

12                          UNITED STATES DISTRICT COURT

13                         NORTHERN DISTRICT OF CALIFORNIA

14                                 SAN JOSE DIVISION

15

16   UNITED STATES OF AMERICA,              )   Case No. CR-18-00258-EJD
                                            )
17          Plaintiff,                      )   **REPLY IN SUPPORT OF MOTION TO**
                                            )   **EXCLUDE CERTAIN EVIDENCE AND**
18      v.                                  )   **ARGUMENT REGARDING THIRD-PARTY**
                                            )   **TESTING PLATFORMS UNDER FEDERAL**
19   ELIZABETH HOLMES and                   )   **RULES OF EVIDENCE 401-403, 404(B), AND**
     RAMESH "SUNNY" BALWANI,                )   **702**
20                                          )
            Defendants.                     )
21                                          )   Date:    March 23, 2021
                                            )   Time:    9:00 AM
22                                          )   CTRM:  4, 5th Floor
                                            )
23                                          )   Hon. Edward J. Davila
                                            )
24   _____       )

25

26

27

28   REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
     REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
     CR-18-00258 EJD

## TABLE OF CONTENTS

Page

I.  The Government Cannot Justify the Presentation of Evidence, Argument, or
Questioning that Theranos' Modification of Commercial Testing Platforms Was
Improper or Contrary to Industry or Manufacturer Expectations. ....................................................1

    A.  The Government Cannot Satisfy the Requirements of Rule 702........................................2

    B.  Rule 403 Bars the Government's Argument and Evidence. ................................................4

II.  The Government Cannot Use Theranos' Efforts to Protect Its Modified Commercial
Platforms as Trade Secrets as Evidence of Improper Concealment. ................................................5

CONCLUSION.......................................................................................................................6

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

i

The government's Opposition confirms the need to limit the government's evidence and argument at trial related to Theranos' modification of commercial laboratory testing platforms.  In an attempt to avoid confronting the issue, the government claims that it does not intend to introduce evidence that these modifications violated industry standards, were contrary to manufacturer use agreements, or were otherwise improper.  But even a cursory reading of the Opposition shows that these are exactly the arguments that the government intends to pursue at trial.  Those arguments should be foreclosed for the reasons set forth in Ms. Holmes' Motion, which the government largely fails to address.  *First*, the government has not presented a cogent justification for the introduction of evidence or argument that Theranos' modifications to commercial testing platforms were improper or otherwise contrary to industry standards and manufacturer expectations.  *Second*, the government has not explained how Theranos' efforts to protect its modified devices as trade secrets reflect improper concealment.  The Court should thus limit the government from introducing evidence or argument that the modifications were improper, inconsistent with industry or manufacturer expectations, or inappropriately concealed.

**I.    The Government Cannot Justify the Presentation of Evidence, Argument, or Questioning that Theranos' Modification of Commercial Testing Platforms Was Improper or Contrary to Industry or Manufacturer Expectations.**

The government previously disclosed its intent to introduce evidence that Theranos' modifications to commercial testing platforms were improperly "altered or tampered with" in a manner that was "contrary to industry standards and the manufacturers' intended use for such devices."  Def. Ex. 1, Dkt. 580 at 7-8.  Although the government now disclaims any intention to introduce evidence that the modifications "violated industry standards or manufacturer user agreements" or "were wrong or unethical in and of themselves," Gov't Opp'n, Dkt. 666 at 2, it is clear from the Opposition that the government still intends to pursue these themes at trial.  The Opposition, for example, previews arguments that the modifications were "not common or standard in the clinical testing industry," *id.* at 1[1]; had an "unusual nature," *id.* at 2; reflected an "unknown and non-standard use," *id.* at 3; were not

_____

[1] The government claims this is undisputed because Ms. Holmes identified the modifications as valuable trade secrets.  Gov't Opp'n, Dkt. 666 at 1.  The protection of these modifications as trade

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

1    "expected," "condoned," or "accounted for," by manufacturers, *id.* at 1, 4; and were "beyond the scope

2    of what manufacturers . . . envisioned," *id.* at 1.  To be clear, Ms. Holmes is not seeking to preclude all

3    description or discussion of the modifications at trial.  But there is no basis for the government to argue

4    or otherwise suggest that the modifications were inappropriate or inconsistent with industry standards or

5    manufacturer expectations.

6          **A.      The Government Cannot Satisfy the Requirements of Rule 702.**

7          Any testimony that Theranos' modifications to commercial testing platforms were improper,

8    including in light of industry standards or manufacturer expectations, could only be introduced as an

9    opinion of a qualified expert.  The government does not contest this point, which suffices to bar any

10   such testimony given the government's failure to disclose the necessary expert opinions.

11         The government references in its Opposition noticed opinions from Dr. Adam Rosendorff,

12   Theranos' clinical laboratory director, but those opinions appear limited to Dr. Rosendorff's current

13   view that Theranos' "practice of diluting microsamples" was "disadvantageous."  Gov't Opp'n, Dkt. 666

14   at 3; *see also* Def. Ex. 5, Dkt. 580-4 at 13.  The government's disclosure does not state that Dr.

15   Rosendorff will offer an opinion that the specific modifications at issue were "unusual," "unknown," or

16   "unexpected," or an opinion regarding the extent to which Theranos' decision to modify the commercial

17   platforms was consistent (or inconsistent) with industry standards or manufacturer expectations.  This is

18   hardly surprising, given that Dr. Rosendorff and other government witnesses have stated that the

19   Siemens ADVIA platform that Theranos modified allowed end users to design and implement

20   proprietary tests.  *See* Def. Ex. 47, Dkt. 586-1 at 2.  Accordingly, the government should be precluded

21   from questioning Dr. Rosendorff about the propriety of the specific modifications that Theranos

22   developed and deployed—*e.g.*, whether Theranos' use of a hardware insert (the t-cup) with Siemens'

23   ADVIA platform would have been recognized as "unusual" by Siemens (the manufacturer) or within the

24   industry—for any purpose.

25

26   _____

27   secrets says nothing about whether and to what extent they complied with industry standards or
     manufacturer expectations.

28   REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
     REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
     CR-18-00258 EJD

                                                    2

1    The government's disclosure indicates that Dr. Rosendorff may offer an opinion regarding one

2    *result* of Theranos' modifications:  that samples ended up being diluted below a measurement

3    benchmark identified by the manufacturer, and that this *could* have led to a greater risk of error and

4    device bias.  *See* Def. Ex. 5, Dkt. 580-4 at 13.  The government claims that such testimony is relevant to

5    show that the modifications resulted in "accuracy and reliability" problems with Theranos' tests, Gov't

6    Opp'n, Dkt. 666 at 2, but it cannot show that the possibility of an increased risk of error or bias actually

7    led to accuracy and reliability issues with Theranos' tests.  There is no way to read Dr. Rosendorff's

8    disclosure to offer such an opinion, and the absence of such an opinion from Dr. Rosendorff is not

9    surprising.  As the government is well aware, it was Dr. Rosendorff in his capacity as Theranos'

10   laboratory director who approved the clinical validation reports for each of the tests on a modified

11   commercial platform that was used in Theranos' clinical laboratory.  *See* Def. Ex. 40, Dkt. 584-9 at

12   80:4-8, 212:19-23; Def. Ex. 42, Dkt. 585-1 at 209:15-19.  Moreover, the government has not identified

13   any other witness who would provide the missing link.  The Court should thus preclude the government

14   from introducing testimony or otherwise arguing that the dilution resulting from Theranos'

15   modifications had any effect on the accuracy or reliability of Theranos' clinical testing results.

16   The Opposition also identifies the lay statement of a former Theranos employee about alleged

17   limitations on Theranos' ability to access the "internal programming" for the Siemens commercial

18   testing platform, but the government has not proffered this individual as an expert witness or identified

19   this witness's qualifications (if any) to offer such an opinion.  And the government has not otherwise

20   identified someone with the experience or expertise who could plausibly offer testimony as to what

21   "manufacturers like Siemens envisioned."  Gov't Opp'n., Dkt. 666 at 1.

22   Because the government has not identified reliable expert testimony under Rule 702, the Court

23   should exclude any evidence or argument at trial related to the propriety of Theranos' modifications to

24   commercial testing platforms, including in light of industry standards and manufacturer expectations.

28   REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD

**B.      Rule 403 Bars the Government's Argument and Evidence.**

The government also fails to explain how its proposed argument and evidence survive the Rule 403 analysis.  The attempt to use an inflammatory narrative to discredit an innovative technological development is irrelevant, and will serve only to confuse the jury.  Def. Mot., Dkt. 576 at 6-7.

There is, at best, only a tenuous connection between the propriety of the modifications and the issues in this case.  In its supplemental Rule 404(b) notice, the government originally contended that evidence that Theranos "tampered" with commercial platforms and then purportedly concealed these modifications proved the limited capabilities of Theranos' separate proprietary analyzer and/or the alleged falsity and materiality of Ms. Holmes' statements to investors.  *See* Def. Ex. 4, Dkt. 580-2 at 70. The government did not provide a detailed explanation of its position at the time, *see id.*, and there is no discussion of either theory in its Opposition.  The government instead offers three new justifications for the use of this evidence.  They do not fare any better.

The government first contends that the "unusual and non-standard use" of commercial platforms will "help explain" the alleged accuracy and reliability issues with the tests run on the modified commercial platforms.  Gov't Opp'n, Dkt. 666 at 2.  The government does not even attempt to explain why this is so, and it has failed to offer necessary opinions from a qualified expert to connect Theranos' modifications, industry standards and manufacturer expectations, and the inaccuracy or unreliability of tests.  *See* Section I.A, *supra*.

The government next suggests that the purportedly "unknown and non-standard" nature of the modifications is relevant to an investor's understanding of whether and to what extent Theranos was using a separate proprietary device, Gov't Opp'n, Dkt. 666 at 2-3, but this suggestion is wholly conclusory.  The government offers no evidence or argument to suggest that potential investors with knowledge of the modifications would have seen them as indicative of shortcomings in Theranos' proprietary analyzer.

Finally, the government asserts (again without explanation) that this evidence is "part of the story" and necessary "context."  *Id.*  That vague assertion serves only to confirm that the government

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702 CR-18-00258 EJD

4

1    sees this argument and evidence—which is not part of the charged conduct in this case—as a way to

2    develop a narrative that seeks to twist legitimate conduct into evidence of guilt.[2]

3         Moreover, the government makes no effort to address the considerable prejudice associated with

4    its proposed evidence and argument.  It does not dispute the risk of jury confusion or the need for mini-

5    trials to establish the propriety of each modification or the extent to which it conformed with

6    manufacturer or industry standards.  When combined with the minimally probative value of this

7    evidence, this risk of prejudice necessitates that the government's inflammatory and unsupported

8    narrative about allegedly improper modifications to third-party machines be excluded under Rule 403.

9    **II.    The Government Cannot Use Theranos' Efforts to Protect Its Modified Commercial
         Platforms as Trade Secrets as Evidence of Improper Concealment.**

10

11        The Opposition confirms that the government intends to use legally required conduct—

12    Theranos' efforts to protect its modified commercial testing platforms as trade secrets—to build a

13    provocative narrative that lacks any basis in fact.  The government contends that Theranos' decision not

14    to publicly disclose the use of modified commercial testing platforms was part of an effort to "hide the

15    truth" about the capabilities of Theranos' proprietary analyzer, that this was purportedly part of Ms.

16    Holmes' strategy to "hide her fraud," and that Ms. Holmes is now trying to re-characterize her conduct

17    as a trade secret protection.  Gov't Opp'n, Dkt. 666 at 5.  The government fails to offer any evidence in

18    support of these assertions.  The government also fails to address the contemporaneous evidence—cited

19    in Ms. Holmes' Motion—that she and Mr. Balwani treated these inventions as trade secrets and were

20    focused on the need to keep competitors from copying the practices and destroying Theranos'

21    competitive advantage at the time the modifications were developed.  *See* Def. Mot., Dkt. 576 at 3-4

22    (citing Def. Ex. 45, Dkt. 585-4; Def. Ex. 41, Dkt. 585 at 185:7-10, 187:18-24, 188:11-14, 192:23-

23    193:16).  And the government has no response to the fact that Theranos proactively disclosed

24    information about its modifications to regulators.  Without some evidentiary basis, the government

25    _____

26    [2] This government's focus on its desired "story" only highlights the risk that this evidence will be
      used for a propensity purpose—*i.e.*, that purportedly improper modifications to commercial platforms

27    are evidence of recklessness in the unrelated design of Theranos' proprietary testing device. That would
      clearly violate Rule 404(b).

28    REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
      REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
      CR-18-00258 EJD

1   should not be allowed to pursue a speculative and incorrect narrative of improper concealment at trial,

2   especially given the unfair prejudice to Ms. Holmes that will result from jury confusion and mini-trials

3   about the reasons why Theranos sought to implement targeted measures to prevent the public disclosure

4   of its proprietary modifications.[3]

5                                                  **CONCLUSION**

6           For the foregoing reasons, the Court should preclude the government from introducing evidence,

7   argument, or questioning that Theranos' modifications to its commercial laboratory testing platforms

8   were improper, that the modification of these platforms violated manufacturer expectations or industry

9   standards, or that Theranos improperly concealed modifications to these platforms.

10

11  DATED: February 16, 2021                       Respectfully submitted,

12

13                                                 /s/ Amy Mason Saharia
                                                   KEVIN DOWNEY

14                                                 LANCE WADE
                                                   AMY MASON SAHARIA

15                                                 KATHERINE TREFZ
                                                   Attorneys for Elizabeth Holmes

16

17

18

19

20

21

22

23

24

25

26
    _____

27      [3] This issue is also addressed in Ms. Holmes' Motion to Exclude Evidence of Theranos' Trade
    Secrets Practices (Dkt. 566).

28  REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT
    REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
    CR-18-00258 EJD
                                                    6

1

**<u>CERTIFICATE OF SERVICE</u>**

2
3

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

4

5

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING THIRD-PARTY TESTING PLATFORMS UNDER RULES 401-403, 404(B), AND 702
CR-18-00258 EJD