1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4
   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
5  LANCE A. WADE (Admitted Pro Hac Vice)
   AMY MASON SAHARIA (Admitted Pro Hac Vice)
6  KATHERINE TREFZ (CA State Bar No. 262770)
   WILLIAMS & CONNOLLY LLP
7  725 Twelfth Street, NW
   Washington, DC 20005
8  Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com
9

10 Attorneys for Defendant ELIZABETH A. HOLMES

11

12                        UNITED STATES DISTRICT COURT

13                       NORTHERN DISTRICT OF CALIFORNIA

14                              SAN JOSE DIVISION

15

16
   UNITED STATES OF AMERICA,          )   Case No. CR-18-00258-EJD
17                                     )
           Plaintiff,                  )   **REPLY IN SUPPORT OF MS. HOLMES'**
18                                     )   **MOTION TO EXCLUDE CERTAIN NEWS**
       v.                              )   **ARTICLES UNDER FEDERAL RULES OF**
19                                     )   **EVIDENCE 403 AND 802**
   ELIZABETH HOLMES and               )
20 RAMESH "SUNNY" BALWANI,            )
                                       )   Date:    March 23, 2021
21         Defendants.                 )   Time:    9:00 AM
                                       )   CTRM:  4, 5th Floor
22                                     )
                                       )
23                                     )   Hon. Edward J. Davila
                                       )
24                                     )
                                       )
25                                     )
   _____ )
26

27

28

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
FEDERAL RULES OF EVIDENCE 403 AND 802
CR-18-00258 EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   The Articles are Inadmissible Hearsay. ............................................................................1

II.   The Articles Are Inadmissible under Rule 403........................................................3

CONCLUSION...........................................................................................................4

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
FEDERAL RULES OF EVIDENCE 403 AND 802
CR-18-00258 EJD

i

1   The government concedes that it cannot offer any of the over 50 news articles on its exhibit list

2   whose authors will not testify at trial for the truth of their contents.  Gov't Opp'n, Dkt. 667 at 2.  The

3   government nevertheless presents a laundry list of purportedly non-hearsay uses for the articles.  These

4   admissibility theories do not solve the hearsay problems that inhere to news articles as evidence.  Nor

5   can the government justify the risk of unfair prejudice the articles pose to Ms. Holmes, or the time-

6   consuming mini-trials they would precipitate if offered for any of these limited purposes.  The Court

7   should grant Ms. Holmes' Motion (Dkt. 578) and exclude news articles from non-testifying journalists.

8   **I.    The Articles are Inadmissible Hearsay.**

9        None of the government's purported non-hearsay uses justifies the articles' admission.

10       <u>Background Information.</u>  The government proposes to admit the articles to "give the jury a

11  sense of what information was generally available about Theranos when investors and customers were

12  making decisions."  Gov't Opp'n, Dkt. 667 at 3.  The government fails to explain why it is entitled to

13  present blatant hearsay as evidence of "information . . . generally available" to investors, nor does it cite

14  any case authorizing admission of news articles for that proposition.  *Id.*  This theory also does not cure

15  the underlying hearsay problem:  that the articles implicitly represent that out-of-court declarants

16  (sometimes unidentified) relayed information to the articles' authors.  *See* Def. Mot., Dkt. 578 at 2-3.

17       The government's reliance on judicial notice cases is inapt.  The government is not asking the

18  Court to take judicial notice of any fact but to admit news articles in a criminal case.  Even by analogy,

19  these cases are unhelpful to the government.  In *Von Saher v. Norton Simon Museum of Art at Pasadena*,

20  592 F.3d 954, 960 (9th Cir. 2010), the court merely took "notice of the fact that various newspapers,

21  magazines, and books have published information about" a pair of oil paintings—not any statements

22  within those publications.  Moreover, in both *Von Saher* and the government's other notice case—

23  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999)—the courts noted

24  that Rule 201 circumscribes courts' ability to take judicial notice of facts.  *Von Saher*, 592 F.3d at 960.

25  Rule 201(b) limits the facts subject to judicial notice to facts "not subject to reasonable dispute because"

26  they are "generally known within the trial court's territorial jurisdiction" or facts that "can be accurately

27

28  REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
    FEDERAL RULES OF EVIDENCE 403 AND 802
    CR-18-00258 EJD
                                             1

and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Facts about Theranos in news articles do not qualify.

Motive.  The government argues the articles are necessary for the jury to evaluate Ms. Holmes' alleged motive to "acquire[] and maintain[] [a] level of prominence."  Gov't Opp'n, Dkt. 667 at 3-4.  But that argument has nothing to do with the content, as opposed to the fact, of articles.  It cannot justify admitting the contents of the articles with their many hearsay statements.

Effect on Investors.  The government seeks to admit the articles to show their "effect" on investors.  Gov't Opp'n, Dkt. 667 at 2-4.  The only "effect" on an investor relevant to the government's case is a desire to invest based on allegedly false or misleading statements from Ms. Holmes.  And an allegedly misleading statement in an article is relevant only if Ms. Holmes conveyed the information in question, implicating the threshold hearsay assertion by the declarant-journalist.  The government also states that it anticipates investors will testify about a general "favorable image" of Theranos in the media.  Gov't Opp'n, Dkt. 667 at 3.  What does the government mean by "favorable image" and why does that matter?  If the government means to argue that this "favorable image" was based on misstatements in the articles, then it must put the author of the articles on the stand to testify to the truth of the implicit assertion that his or her sources stated the articles' contents.

As with its other theories, the government cites no cases admitting news articles for this purpose. *See United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (email admitted to show why recipient took a certain course of action); *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (single out-of-court statement admitted for similar purpose).  Both cases featured a single layer of hearsay where it was "irrelevant" whether the out-of-court statement "was true or not."  *Churn*, 800 F.3d at 776; *Inglese*, 282 F.3d at 538.  That is not the case for the threshold hearsay assertion by the author of news articles when offered to show their "effect" on investors; that implicit assertion must be true to make the article relevant evidence against Ms. Holmes.

Endorsement.  Finally, the government floats the theory that Ms. Holmes "endorsed" certain articles when she or other "Theranos employees" shared them with investors or the public.  Gov't Opp'n, Dkt. 667 at 6.  This theory would apply to only a subset of the over 50 articles Ms. Holmes has

1    moved to exclude, and, although the government provides a few examples, it does not purport to define

2    the set of its proposed trial exhibits it seeks to admit on these grounds.  In any event, the government

3    cites no authority for the proposition that the later sharing cures the threshold hearsay defect that dooms

4    its other theories.  *United States v. Ciccone*, 219 F.3d 1078, 1083-85 (9th Cir. 2000), is far from on

5    point.  *Ciccone* did not deal with news articles or hearsay at all; it merely held that there was sufficient

6    evidence to convict the defendant of fraud based on a telemarketing scheme where he made "some calls

7    himself" and provided his employees with lists of targets and scripts "rich with misrepresentations."  *Id.*

8    at 1084.  Even given its broadest berth—that there is no "requirement that a fraud defendant make

9    misrepresentations directly to the victim," Gov't Opp'n, Dkt. 667 at 7—*Ciccone* does not alter the

10   requirement that the government prove that a particular misrepresentation *was in fact made*.  It is the

11   government's proposed use of the articles to supply that proof that violates the rule against hearsay.

12   Application of the hearsay rules in this context would not "open an unintended loophole in the laws

13   criminalizing fraud," *id.* at 7, but would require only that the government muster admissible evidence of

14   the fact of the misstatement—through live witness testimony or other evidence that satisfies a hearsay

15   exception.  There is nothing unfair about holding the government to that burden.

16   **II.      The Articles Are Inadmissible under Rule 403.**

17        The government wrongly downplays the risk of unfair prejudice and other Rule 403 concerns

18   that flow from admitting stacks of news articles about Theranos.  First, the government is wrong that

19   only articles it deems "negative" run afoul of Rule 403.  For any article, the risk of unfair prejudice

20   and/or jury confusion arises from the out-of-court narration and commentary by journalists and other

21   sources (both named and anonymous) about the company that will require contextualization and/or

22   rebuttal.  Moreover, under the government's proposed uses of these articles—to show background

23   information about Theranos, to show an alleged motive to defraud for favorable publicity, etc.—the

24   articles are irrelevant or of such little probative value that even a slight risk of jury confusion or delay

25   justifies their exclusion.  *See, e.g.*, *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

26        The risk of unfair prejudice from the post-October 2015 articles hardly needs elaboration, which

27   the government tacitly acknowledges in its pledge to use these articles "sparingly."  Gov't Opp'n, Dkt.

28   REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
     FEDERAL RULES OF EVIDENCE 403 AND 802
     CR-18-00258 EJD

                                                3

1   667 at 8.  Incredibly, the government argues that the jury will need to review carefully John Carreyrou's

2   initial Theranos article in the *Wall Street Journal*.  *Id.*  This article (and those that followed from Mr.

3   Carreyrou and other journalists) contains assertions about Theranos from unnamed sources that echo the

4   government's allegations in the case.  *See* Def. Ex. 48, Dkt. 586-2 at 11-23.  The government has not

5   disclosed Mr. Carreyrou as a possible trial witness.  Ms. Holmes therefore will be unable to cross-

6   examine Mr. Carreyrou regarding incriminating accusations in his reporting.  Ms. Holmes also will be

7   denied the chance to cross-examine his many unnamed sources regarding the accuracy of their assertions

8   about Theranos.  But, should the articles be admitted for any purpose, Ms. Holmes will have to refute

9   not only the allegations in the government's case, but also those that appear in Mr. Carreyrou's

10  reporting.  The need to defend two cases at once is deeply prejudicial to Ms. Holmes, and threatens to

11  derail what already is anticipated to be a lengthy, complex trial.

12                                          **CONCLUSION**

13           For all these reasons, and those set forth in Ms. Holmes' Motion (Dkt. 578), the Court should

14  exclude all news articles by non-testifying journalists.

15

16  DATED:  February 16, 2021                    Respectfully submitted,

17

18                                              /s/ Amy Mason Saharia
                                                KEVIN DOWNEY
19                                              LANCE WADE
                                                AMY MASON SAHARIA
20                                              KATHERINE TREFZ
                                                Attorneys for Elizabeth Holmes
21

22

23

24

25

26

27

28  REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
    FEDERAL RULES OF EVIDENCE 403 AND 802
    CR-18-00258 EJD
                                              4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

REPLY ISO MS. HOLMES' MOTION TO EXCLUDE CERTAIN NEWS ARTICLES UNDER
FEDERAL RULES OF EVIDENCE 403 AND 802
CR-18-00258 EJD