STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

      150 Almaden Boulevard, Suite 900
      San Jose, California 95113
      Telephone: (408) 535-5061
      Fax: (408) 535-5066
      Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE* |
| v. | Date:   March 23, 2021 |
| ELIZABETH HOLMES, | Time:   10:00 a.m. |
| Defendant. | Court: Hon. Edward J. Davila |

1

## <u>TABLE OF CONTENTS</u>

2

3
I.      REPLY TO OPPOSITION TO UNITED STATES' MOTION IN LIMINE NO. 1:
THE COURT SHOULD PRECLUDE DEFENDANT FROM OFFERING AN IMPROPER
DEFENSE OF BLAMING HER VICTIMS.................................................................................1

4

5
II.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 2:
THE COURT SHOULD PRECLUDE THE DEFENSE FROM REFERENCING
PUNISHMENT IN FRONT OF THE JURY............................................................................2

6

7
III.    REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 3:
THE COURT SHOULD PRECLUDE AN IMPROPER ADVICE-OF-COUNSEL DEFENSE...............3

8
IV.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 4:
THE COURT SHOULD PRECLUDE A DEFENSE ARGUMENT THAT THE
9
GOVERNMENT'S CHARGING DECISIONS WERE INFLUENCED BY
COORDINATION WITH JOURNALISTS OR COMPETITORS..............................................4

10

11
V.      REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 5:
THE COURT SHOULD PRECLUDE DEFENDANT FROM PRESENTING AN
IMPROPER GOOD FAITH DEFENSE...................................................................................5

12

13
VI.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 6:
THE COURT SHOULD ADMIT CMS' JANUARY 25, 2016 FORM CMS-2567 ..................7

14

15
VII.    REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 7:
THE COURT SHOULD ADMIT TEXT MESSAGES BETWEEN DEFENDANT AND
BALWANI OFFERED BY THE GOVERNMENT....................................................................8

16

17
VIII.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 8:
THE COURT SHOULD ADMIT RELEVANT STATEMENTS BY THERANOS AND
THERANOS EMPLOYEES AND AGENTS OFFERED BY THE GOVERNMENT ...........................10

18

19
IX.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 9:
THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY STATEMENTS MADE
AND OFFERED BY DEFENDANT......................................................................................14

20

21
X.      REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 10:
THE COURT SHOULD ADMIT RELEVANT TESTIMONY FROM "NON-PAYING"
PATIENT WITNESSES......................................................................................................16

22

23
XI.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 11:
THE COURT SHOULD ORDER DEFENDANT TO PRODUCE REVERSE *JENCKS*
INCLUDING ANY *IN CAMERA* PROFFERS .......................................................................18

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

Cases

4

*Boren v. Sable*,
  887 F.2d 1032 (10th Cir. 1989) ......................................................................... 11, 12

*L.A. News Serv. v. CBS Broad., Inc.*,
  305 F.3d 924 (9th Cir. 2002) ................................................................................ 10

*Lippay v. Christos*,
  996 F.2d 1490 (3d Cir. 1993)................................................................................ 11

*McQueeney v. Wilmington Trust Co.*,
  779 F.2d 916 (3d Cir.1985)..................................................................................... 9

*Neder v. United States*,
  527 U.S. 1 (1999)....................................................................................................... 1

*United States v. Benny*,
  786 F.2d 1410 (9th Cir. 1986) ................................................................................ 6

*United States v. Black*,
  767 F.2d 1334 (9th Cir. 1985) ................................................................................ 8

*United States v. Blackwood*,
  878 F.2d 1200 (9th Cir. 1989) ................................................................................ 8

*United States v. Bogucki*,
  2019 WL 1024959 (N.D. Cal. Mar. 4, 2019)......................................................... 1

*United States v. Bonds*,
  608 F.3d 495 (9th Cir. 2010) ................................................................................ 11

*United States v. Brown*,
  688 F.2d 1112 (7th Cir. 1982) ................................................................................ 9

*United States v. Collicott*,
  92 F.3d 973 (9th Cir. 1996) ............................................................................ 10, 15

*United States v. Dashner*,
  2015 WL 3660331 (N.D. Cal. Jun. 2, 2015) ....................................................... 14

*United States v. Fryberg*,
  854 F.3d 1126 (9th Cir. 2017) ........................................................................... 7, 8

*United States v. Gibson*,
  690 F.2d 697 (9th Cir. 1982) ......................................................................... 10, 11

*United States v. Goichman*,
  574 F.2d 778 (3d Cir. 1976).................................................................................... 8

*United States v. Howell*,
  231 F.3d 615 (9th Cir. 2000) .................................................................................. 4

*United States v. Jones*,
  982 F.2d 380 (9th Cir. 1992) ................................................................................ 17

*United States v. King*,
  472 F.2d 1 (9th Cir. 1973) ............................................................................... 8, 13

*United States v. Kirk*,
  844 F.2d 660 (9th Cir. 1988) ......................................................................... 10, 11

*United States v. Ortega*,
  203 F.3d 675 (9th Cir. 2000) ................................................................................ 14

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Paxson*,
    861 F.2d 730 (D.C. Cir. 1988) ................................................................................................ 12
*United States v. Quinones-Chavez*,
    641 F. Appx. 722 (9th Cir. 2016) ............................................................................................. 15
*United States v. Sager*,
    227 F.3d 1138 (9th Cir. 2000) ............................................................................................. 4, 5
*United States v. Turner*,
    718 F.3d 226 (3d Cir. 2013) ..................................................................................................... 8
*United States v. Utz*,
    886 F.2d 1148 (9th Cir. 1989) ................................................................................................ 16
*United States v. Vallejos*,
    742 F.2d 902 (9th Cir. 2014) ................................................................................................... 15
*United States v. Warren*,
    25 F.3d 890 (9th Cir. 1994) ..................................................................................................... 16
*United States v. White*,
    692 F. 3d 235 (2d Cir. 2012) ..................................................................................................... 2
*United States v. Whitworth*,
    856 F.2d 1268 (9th Cir. 1988) ................................................................................................... 8
*United States v. Williams*,
    2017 WL 4310712 (N.D. Cal. Sept. 28, 2017) ......................................................................... 2
*United States v. Yang*,
    2019 WL 5536213 (N.D. Cal. Oct. 25, 2019) ........................................................................... 1
*United States v. Young*,
    736 F.2d 565 (10th Cir. 1983) ................................................................................................ 12

Statutes

28 U.S.C. § 515 .................................................................................................................... 1, 19

Rules

FED. R. CRIM. P. 26.2(a) .............................................................................................................. 18
FED. R. EVID. 106 ......................................................................................................................... 10
FED. R. EVID. 402 ........................................................................................................................... 5
FED. R. EVID. 803(6) ....................................................................................................................... 7
FED. R. EVID. 901(a) ....................................................................................................................... 8
FED. R. EVID. 901(b)(4) .................................................................................................................. 9
FED. R. EVID. 401 ........................................................................................................................... 5

1
2
**I.      REPLY TO OPPOSITION TO UNITED STATES' MOTION IN LIMINE NO. 1:  THE COURT SHOULD PRECLUDE DEFENDANT FROM OFFERING AN IMPROPER DEFENSE OF BLAMING HER VICTIMS**

3        This Court should preclude Defendant from introducing evidence or arguing to the jury that the

4    relatively sophisticated investor victims in this case could have or should have exercised more diligence

5    in their dealings with Theranos, Inc. ("Theranos").  Moreover, the Court should also preclude Defendant

6    from arguing that victims did not rely on the materially false and misleading statements made by her and

7    her coconspirators.  This motion *in limine* highlights the irrelevant and misleading nature of victim-

8    blaming in a fraud case when materiality employs an objective standard.  In her opposition to this

9    motion, Defendant argues that this Court should not exclude "evidence that bears on the materiality of

10   the alleged misstatements, evidence concerning Ms. Holmes' intent, and/or evidence that is relevant to

11   impeachment of alleged victim witnesses."  Holmes Opposition to Government's Motions *in Limine*,

12   ECF 659 ("Holmes Opposition") at 6.

13       In support of her opposition, Defendant cites to a Judge Breyer order on a Rule 29 motion in

14   *United States v. Bogucki*, 2019 WL 1024959 (N.D. Cal. Mar. 4, 2019).  But *Bogucki* actually supports

15   the government's position.  There, Judge Breyer found that "Whether or not a statement is so capable is

16   evaluated objectively."  *United States v. Bogucki*, 2019 WL 1024959, at *2 *citing Neder v. United

17   States*, 527 U.S. 1, 25 (1999).   The Court should preclude the defense from arguing that the victims

18   were negligent, were not actually misled, or were otherwise at fault in this case.  As in *United States v.

19   Yang*, 2019 WL 5536213 (N.D. Cal. Oct. 25, 2019), this Court should grant the government's motion *in

20   limine*, while leaving room to admit proper defense impeachment or materiality evidence.

21       The government also sought an order precluding Defendant from arguing or introducing

22   evidence that in Silicon Valley startups, founders frequently use exaggeration and dramatic promises to

23   generate attention and attract capital.  Moreover, the government sought to preclude the defense from

24   eliciting testimony regarding other instances of similar fraudulent schemes, perhaps highlighting cases

25   where no criminal charges were brought.

26       In response, Defendant claims that certain Silicon Valley "secrecy" evidence might be relevant.

27   She argues: "…Ms. Holmes surely could present evidence that other Silicon Valley start-ups used

28   similar practices, and that persons at Theranos were aware of these practices, to negate the inference of

nefarious conduct." Holmes Opposition at 9 (emphasis added). The government disagrees. Since it is Defendant's intent that is at issue, the individual at Theranos who needs to be aware of this Silicon Valley culture evidence is not an unnamed <u>person</u>, but rather Defendant herself. Moreover, the government's motion sought to preclude evidence that Silicon Valley startups employ exaggeration and dramatic promises to generate attention and attract capital. This is not the same thing as a culture of secrecy, and the defense should be precluded from arguing that exaggerated promises are the industry standard.

Finally, the defense opposes this motion by citing *United States v. White* for the proposition that a Court will commit legal error when it rules categorically that the government's charging decisions are not proper subjects for cross-examination and argument. *United States v. White*, 692 F. 3d 235, 246 (2d Cir. 2012). Here, the government is not seeking a categorical prohibition on questions concerning "charging decisions." Instead, the government seeks to preclude Defendant from arguing that she should be acquitted because others have committed these same offenses.

## II. REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 2: THE COURT SHOULD PRECLUDE THE DEFENSE FROM REFERENCING PUNISHMENT IN FRONT OF THE JURY.

The Court should preclude any reference by the defense to Defendant's alleged suffering or potential punishment during any phase of the trial, including jury selection, opening statements, examination of witnesses (including Defendant, if she elects to testify), and summation. In her opposition, Defendant seeks to allow "subtle" references to the consequences the case has for Defendant and her liberty.

To support her opposition, Defendant cites to *United States v. Williams*, 2017 WL 4310712 (N.D. Cal. Sept. 28, 2017). In *Williams*, Judge Orrick granted in part a government motion to exclude references to punishment of any kind. Judge Orrick ruled that the defense must be allowed to reference the punishment of cooperating witnesses in order to impeach them. An exception that would not be relevant here. Judge Orrick also wrote, "The defendants are precluded from referencing the particulars of any past or potential punishment in an attempt to elicit the sympathies of the jury." *United States v. Williams*, 2017 WL 4310712, at *8. Finally, Judge Orrick wrote that subtler references to punishments, such as a statement about "serious consequences" is "not really about punishment." *Id.*

1    Here, the government moved to exclude references to potential punishment, including examples

2    such as "the defendant is facing a lot of time," "the case has serious consequences for the defendant,"

3    "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time

4    to come."  Some of these statements are clearly about punishment, such as references to "liberty."

5    Moreover, the government continues to believe that reminding the jury of the "serious consequences" to

6    the defendant is tantamount to commenting on punishment.  All such references should be excluded as

7    an inappropriate attempt to elicit the sympathies of the jury.

8    ### III.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 3:  THE COURT SHOULD PRECLUDE AN IMPROPER ADVICE-OF-COUNSEL DEFENSE

9
10   The government moved *in limine* to preclude both (1) defense solicitation of testimony

11   suggesting that attorneys made statements to Defendant or that Defendant relied upon such statements in

12   an attempt to negate intent; and also (2) a formal advice-of-counsel defense and the associated jury

13   instruction.  The government noted and Defendant repeated in her opposition that rulings such as these

14   are difficult to make pretrial.  The government briefed these issues in the pretrial context to alert the

15   Court to certain issues, such as privilege waiver, likely to arise at trial should Defendant seek to

16   introduce such evidence.

17   These issues include Defendant eliciting testimony from attorney-witnesses that they made

18   certain statements to Defendant, for example David Taylor, while not waiving applicable privileges.  In

19   her opposition, Defendant points out that the government may seek to admit statements from lawyers in

20   its case-in-chief, but that misses the point.  The government's attempt to admit these statements does not

21   raise privilege waiver issues.  Instead, the government's motion focuses on the defense efforts to admit

22   statements made to Defendant by lawyers as evidence negating intent.

23   Likewise, the government notes that Defendant still has not satisfied the waiver prerequisite

24   before asserting an advice-of-counsel defense.  Accordingly, Defendant should be precluded from

25   asserting a formal advice-of-counsel defense.

26   / /

27
28

1

2

### IV.  REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 4:  THE COURT SHOULD PRECLUDE A DEFENSE ARGUMENT THAT THE GOVERNMENT'S CHARGING DECISIONS WERE INFLUENCED BY COORDINATION WITH JOURNALISTS OR COMPETITORS

3

4          The government moved to preclude Defendant from arguing or introducing evidence regarding

5 alleged coordination between the government's criminal investigation and third parties such as

6 journalists or other lab testing companies.  In opposition, Defendant cites *United States v. Sager*, 227

7 F.3d 1138 (9th Cir. 2000) and *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000), arguing that she

8 should be allowed to question the thoroughness of the investigation.  Unlike in this case, both *Sager* and

9 *Howell* involve attacks on the criminal investigation.  Defendant is free to question the thoroughness of

10 the criminal investigation.  But to allege here that coordination existed between the criminal

11 investigation and journalists would simply be false.  Instead, Defendant seeks to impugn the criminal

12 investigation by making claims about "conversations between reporters and competitors with agents of

13 other relevant government entities such as the SEC, CMS, or FDA."  Holmes Opposition at 13.  Such a

14 claim ignores a gap in Defendant's allegations that make this argument misleading and irrelevant.  In her

15 opposition, Defendant is only able to proffer evidence, through CMS employee Sarah Bennett, that a

16 reporter from the Wall Street Journal was in contact with CMS before a survey at Theranos.  *Id*.  In the

17 Bennett 302, she states that because of the media attention surrounding Theranos, CMS decided to use

18 federal employees for a CLIA survey at Theranos.  This type of evidence properly should be excluded

19 and neither *Sager* nor *Howell* suggest a different result.  While Defendant cites both *Sager* and *Howell*

20 for the proposition that she should be allowed to comment on how the government's charging decisions

21 were influenced by its contacts with journalists, neither case actually dealt with the question of the

22 admissibility of comparable evidence.  In *Sager*, the Court found error when a judge instructed a jury:

23 "What I am telling you is that you are not here to grade his investigation.  You are here to grade the

24 product of that investigation, that is, the evidence." *United States v. Sager*, 227 F.3d 1138, 1143 (9th

25 Cir. 2000).  In *Sager*, the defense sought to question the Postal Inspector about "aspects of his

26 investigation." *Id*.  Here, the defense, instead, seeks to impugn the criminal investigation by raising

27 questions about coordination between regulators and journalists well-before the initiation of any

28 criminal investigation.  The *Sager* court itself recognized that a trial court may place limits on defense

inquiries into the government's investigation.  "In circumstances different from these, a court may properly decide that such a line of investigation is to be limited for some independent evidentiary reason, such as that the evidence would be cumulative."  *Id*. at 1146.  Here that independent evidentiary basis is Federal Rules of Evidence 401, 402, and 403.

In *Howell*, a case about the government failing to inform the defense that previously disclosed police reports contained errors, the Court held that the specific withheld information was both inculpatory and exculpatory.  The *Howell* Court was not asked to rule on the admissibility of specific evidence or the propriety of certain arguments, as this motion does.

Inquiries into the government's charging decisions have no tendency to make the existence of any fact that is of consequence to the action more probable or less probable and are thus irrelevant.  FED. R. EVID. 402.  Thus, Defendant should not be allowed to suggest that the jury consider the government's charging decisions, including baseless arguments that those decisions were unduly influenced by journalists or other outside sources.

## V.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 5: THE COURT SHOULD PRECLUDE DEFENDANT FROM PRESENTING AN IMPROPER GOOD FAITH DEFENSE

The government has moved for an order precluding Defendant from asserting an improper good-faith defense claiming, for example, that she believed investors in Theranos would not end up losing money because the company would eventually become profitable.  While Defendant's intent to deceive and cheat is at the core of this case, any intentions she might have had about her victims eventually being made whole are irrelevant.  The case law clearly shows that a fraudster may not escape accountability by arguing that she intended to restore the property she took from victims.  Without appropriate direction from the Court, there is a risk that Defendant might introduce a version of that argument at trial.  Because such an argument is irrelevant to the question of Defendant's guilt under the elements of the charged offenses, it would serve only to confuse the jury, and should be precluded.

Defendant's opposition focuses on a straw-man argument.  In sum, Defendant mischaracterizes the government's motion as seeking to block any claim that she believed her representations were true. But granting the government's motion will not prevent Defendant from advancing this theory.  An argument that Defendant thought she was telling the truth is obviously permissible—to the extent

Defendant can offer admissible evidence in support of it.  On its face, the government's motion targets only the improper good-faith defense addressed by the Ninth Circuit in *United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986).  The Ninth Circuit's opinion in that case unequivocally states that "a good-faith belief that the victim [of a fraud] will be repaid and will sustain no loss is no defense at all."  *Benny*, 786 F.2d at 1417.  Defendant attempts to distinguish this case by pointing out that the defendant in *Benny* admitted at trial to falsifying information.  Because Defendant does not plan to make a similar admission in this case, she says, Benny is not instructive.  But the good-faith defense identified in *Benny* is improper and inadmissible regardless of whether a defendant admits to any aspect of the fraud.

The government fully expects that Defendant will deny intentionally misleading victims regarding the achievements of Theranos.  At the same time, however, Defendant might try to convince the jury that Theranos was close to achieving the milestones she had highlighted for potential investors—or at least that she believed as much.  Defendant will no doubt emphasize the efforts expended by Theranos employees attempting to refine the company's devices and solve the significant problems plaguing its technology.  Defendant might present these facts in support of an argument that she always intended for Theranos to be successful and profitable, and for Theranos's investors to realize returns on their investments.  Even if true, however, such an intent would be irrelevant to the question facing the jury.  The jury's focus must be on whether Defendant intended to deceive and cheat victims when she devised and carried out her scheme to defraud—not whether she planned for those victims to ultimately recoup their investments when Theranos finally achieved its goals and its stock price soared.  Any attempt by the defense to draw the jury's attention to the latter question would be a variant of the defendant's argument in Benny.  But the law is clear:  a defendant may not assert a defense based on her professed intent that victims of her fraud would eventually be made whole.  That improper defense could be presented to the jury in various ways, including through cross-examination of victim witnesses at trial.  Exposure to that non-viable defense theory would confuse the jury regarding the mental state requirement.  Accordingly, the Court should grant the government's motion and issue an order precluding evidence or argument in furtherance of such a defense.

/ /

1

2

### VI.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 6:  THE COURT SHOULD ADMIT CMS' JANUARY 25, 2016 FORM CMS-2567

3

4   The government's motion overlaps substantially with Defendant's Motion *in Limine* to Exclude

5   Evidence of CMS Survey Findings and Sanctions Pursuant to Rules 401-403 and 801-803.  ECF No.

    574.  The government incorporates its arguments in opposition to that motion.  *See* ECF. No. 675.  The

6   government also briefly makes the following points:

7   First, Defendant argues the exception in Rule 803(8)(A)(ii) cannot apply if the statement also

8   falls within the scope of Rule 803(8)(A)(iii).  But the rule sets forth three alternative means for falling

9   within the exception.  Defendant essentially reads away the word "or" at the end of Rule 803(8)(A)(ii).

10  No Ninth Circuit case supports such a reading, and it would run counter to the Ninth Circuit's

11  admonition that the law-enforcement exception in Rule 803(8)(A)(ii) be construed narrowly.  *United*

12  *States v. Fryberg*, 854 F.3d 1126, 1132 (9th Cir. 2017).  Defendant's theory would also leave little room

    for admission of what are essentially business records of government agencies.  *Compare* FED. R. EVID.

13  803(6).

14  Second, Defendant argues the CMS form goes beyond objective matters observed by CMS

15  surveyors.  This ignores that large swaths of the form are factual recitations of what the CMS surveyors

16  observed.  Nor does Rule 803(8)(A)(ii) draw the distinction Defendant would make.  Indeed, the

17  analogous provision for business records permits admission of records of acts, events, conditions,

18  opinions, and diagnoses.  FED. R. EVID. 803(6).

19  Finally, there is no basis to exclude testimony from the CMS surveyors, who will describe what

20  they observed and concluded during and as a result of the survey and will be subject to cross

21  examination.  Theranos's responses to CMS, and its own internal analyses following the CMS survey,

22  are likewise not hearsay, highly probative, and not excludable.[1]  For example, Theranos's own

23  investigation into the deficiencies identified by CMS found "a global and long-term failure of the quality

24  control program for [the Edison/TPS 3.5]" and "concluded that there is a possible patient impact for

25

26

---

27  [1]    In a footnote, Defendant argues that evidence she made claims to the "highest level of accuracy" improperly expands the operative indictment.  ECF No. 659 at 10.  This is meritless.  Such claims are fairly within the allegations of the schemes to defraud (*see, e.g.*, ECF No. 469 ¶¶ 6, 9, 12, 12(a), 15, and 16) and, in any event, are inextricably intertwined with other statements to investors and patients.

28

1   *every* test reported from the laboratory's TPS 3.5 instruments." February 16, 2021 Declaration of

2   Robert S. Leach in Support of United States' Reply in Support of Its Motions *in Limine* ("Leach Decl."),

3   Ex. S at CMS2-164340 (emphasis added). Theranos's own lab director is expected to testify "the

4   Edison devices did not perform well, and the accuracy and precision did not meet the level needed for

5   clinical testing. . . . [E]ven using a fairly low bar, none of the Edison tests passed an acceptable level."

6   *Id.* Ex. T at p.2.

7       For these reasons, the Court should admit the January 25, 2016 Form CMS-2567, Statement of

8   Deficiencies. The Court should also admit Theranos's statements in response to the Form CMS-2567.

9   **VII.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 7: THE
         COURT SHOULD ADMIT TEXT MESSAGES BETWEEN DEFENDANT AND**

10  **BALWANI OFFERED BY THE GOVERNMENT**

11      Defendant raises two objections to admission of text messages excerpted from the Spreadsheets

12  that Theranos produced in response to federal subpoenas. Neither has merit.

13      First, with no citation to authority, Defendant argues "there are substantial questions regarding

14  the document's authenticity." ECF No. 659 at 13:12. But the "standard for authenticating evidence is

15  'slight.'" *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013). The Ninth Circuit requires not

16  conclusive proof, but "only a prima facie showing of authenticity" such that "'a reasonable juror could

17  find in favor of authenticity.'" *United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989) (per

18  curiam) (quoting *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985)) (internal quotations

19  omitted); FED. R. EVID. 901(a) (authentication satisfied with "evidence sufficient to support a finding

20  that the item is what the proponent claims it is"). "Once a prima facie case is made, the evidence goes to

21  the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court."

22  *United States v. Goichman*, 574 F.2d 778, 784 (3d Cir. 1976) (per curiam) (citing *United States v. King*,

23  472 F.2d 1, 7 (9th Cir. 1973)); *see Blackwood*, 878 F.2d at 1202; *United States v. Whitworth*, 856 F.2d

24  1268, 1282-83 (9th Cir. 1988) ("Evidence is admissible under Rule 901(a) once a prima facie case has

25  been made on the issue. At that point the matter is committed to the trier of fact to determine the

26  evidence's credibility and probative force." (internal quotations omitted)).

27      The Federal Rules specify that evidence may be authenticated through "distinctive characteristics

28  and the like" including the "appearance, contents, substance, internal patterns, or other distinctive

1  characteristics of the item, taken together with all the circumstances." FED. R. EVID. 901(b)(4).  The

2  very act of production in response to a subpoena may be sufficient circumstantial evidence of

3  authentication.  *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982); *McQueeney v. Wilmington*

4  *Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985) (fact that documents were produced in discovery was

5  probative of authenticity).

6  Based on these authorities, and the evidence proffered by the government, there is more than

7  sufficient evidence to support the inference that the Spreadsheets are what they purport to be.  One

8  version was produced to the SEC in response to a subpoena just days before Defendant sat for

9  testimony, responded to questions about the document, and swore she had no reason to believe the

10  document was not a true collection of text messages between her and Balwani on her work cell phone.

11  The second was produced by those same lawyers to the FBI in response to a grand jury subpoena, and

12  bears the same distinctive characteristics.  To the extent Defendant questions the authenticity of the

13  Spreadsheets, she may make that argument to the jury.  There is no basis to exclude the evidence on

14  authenticity grounds.

15  Second, Defendant raises a relevance objection.  But the relevance of the proffered text messages

16  is plain.  The November 19, 2014 texts occur as Balwani resolved to terminate Dr. Rosendorff.  *See*

17  *generally* ECF No. 677 at 3-4.  They discuss the "[n]eed [for] professionals across the board" and "[t]he

18  lab and call center [to be] fixed."  Defendant confessed the need to stop fighting fires by not creating

19  them.  She concurred in Balwani's statement "[r]ebuild," and when Balwani conceded "[w]e can't scale

20  with wag," she agreed: "It's time."  No additional context is necessary to meet the low bar of relevance.

21  The November 28, 2014 texts, close in time to Dr. Rosendorff's departure, also require no further

22  explanation: "Normandy lab is a fucking disaster zone."  If Defendant has an alternative explanation for

23  these, she may offer it.

24  The proffered messages from April 20, 2015, during the CMS survey, and following the *Wall*

25  *Street Journal* article set forth in the motion likewise require no additional facts or context to allow this

26  Court to assess relevance.  Defendant's argument seems to be that since neither she nor Balwani are

27  available to explain the statements, they cannot be relevant.  That is not the rule.

28  Finally, Defendant "notes" the rule of completeness in Rule 106, which provides "[i]f a party

1  introduces all or part of a writing or recorded statement, an adverse party may require the introduction,

2  at that time, of any other part — or any other writing or recorded statement — that in fairness ought to

3  be considered at the same time." FED. R. EVID. 106.  This is not an argument against admission of

4  evidence, it is an argument for admission of additional evidence.  But Defendant does not identify a

5  single portion of the text messages that she claims "in fairness ought to be considered" at the same time.

6  And critically, the rule applies only where "misunderstanding or distortion can be averted only through

7  presentation of another portion" of an excerpted document or recorded statement.  *United States v.*

8  *Collicott*, 92 F.3d 973, 983 (9th Cir. 1996).  Defendant provides no explanation for why these texts

9  create a misunderstanding or distortion.  To the extent Defendant seeks admission of additional texts, the

10  Court should consider them at that time, not deny admission of government-offered evidence that meets

11  the standards for admission in the Federal Rules.

12       For these reasons, the Court should admit the above-referenced texts from the Spreadsheets, and

13  any similar ones offered by the government.

14  **VIII.  REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 8: THE**

15  **COURT SHOULD ADMIT RELEVANT STATEMENTS BY THERANOS AND THERANOS EMPLOYEES AND AGENTS OFFERED BY THE GOVERNMENT**

16       Defendant does not contest any of the underlying facts that demonstrate her total control of

17  Theranos and its employees.  ECF No. 659 at 14-18.  As Defendant concedes, she was its the founder,

18  majority owner, chairman, president, CEO, and "the ultimate decision maker for the company."  ECF

19  No. 588 at 15.  Because Defendant indisputably exercised total control over Theranos, statements by her

20  company, its employees, and its agents are fairly attributed to her at trial.[2]

21       Defendant cannot meaningfully distinguish the two binding cases most directly on point, *United*

22  *States v. Kirk*, 844 F.2d 660, 663 (9th Cir. 1988) (per curiam), and *United States v. Gibson*, 690 F.2d

23  697, 699 (9th Cir. 1982).  She dismisses the Ninth Circuit's reasoning in *Kirk* as "cursory" but fails to

24  accept its facts:  Kirk, like Defendant, was the founder of the company.  844 F.2d at 663.  Kirk, like

25

26  [2]    In a footnote, Defendant argues "[t]he government cannot prove the existence of the agency

27  relationship with only the statement itself."  ECF No. 659 at 14 n.1 (citing *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 934 (9th Cir. 2002)).  The government has not done so.  Rather the

28  government relies here on Defendant's own statements about her total control over Theranos and Theranos's business records.  Evidence at trial will further demonstrate her total control over Theranos.

GOVT. REPLY IN SUPPORT OF MOTIONS *IN LIMINE*,
CASE NO. 18-CR-258 EJD          10

1   Defendant, ran his company's day-to-day operations.  *Id.*  Accordingly, it took no great leap of

2   reasoning for the Ninth Circuit to conclude that statements by agents or employees of Paradise Palms

3   (Kirk's company) within the scope of their agency or employment were not excludable hearsay under

4   Rule 801(d)(2)(D).  *Id.*  Defendant also claims *United States v. Gibson*, 690 F.2d 697 (9th Cir. 1982),

5   did not "appear[] to involve" a company the same size as Theranos, but nothing in the logic of *Gibson*

6   (or *Kirk*) suggests the size of the firm makes a difference.[3]

7           Faced with binding Ninth Circuit authority, Defendant appeals to several out-of-circuit cases, but

8   these only confirm the appropriateness of admitting statements by Theranos employees against

9   Defendant.

10          Defendant cites *Lippay v. Christos*, 996 F.2d 1490, 1498-99 (3d Cir. 1993), but that case bears

11  no resemblance to the facts presented here.  In *Lippay*, the Third Circuit held it was error to admit the

12  out-of-court statements of a government informant against the undercover agent that worked with him.

13  The court explained: "We find no evidence establishing that [the undercover agent] acted as [the

14  informant]'s supervisor on a regular basis.  Indeed, [the informant] testified that he *never* considered the

15  agents with whom he worked to be his superiors.  Even [the informant]'s relationship with the Bureau of

16  Narcotics Investigation was tenuous as the bureau neither paid him a regular salary nor recognized him

17  as an employee.  Instead, the bureau made occasional payments to [the informant] for the time he spent

18  setting up drug purchases.  Therefore, [the informant] seems to have functioned as a sort of independent

19  contractor to the bureau." *Id.* at 1499.  The court succinctly stated:  "We do not believe that the authors

20  of Rule 801(d)(2)(D) intended statements by informers as a general matter to fall under the rule, given

21  their tenuous relationship with the police officers with whom they work." *Id.*

22          Defendant also relies heavily on *Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989), but this case too

23  only underscores why statements by Theranos employees are appropriately admitted against Defendant.

24  Boren was injured while working at Positive Action Tool Company, Inc. ("PATCO").  He sued Sable, a

25  PATCO stockholder, officer, and plant manager, for negligence.  Boren sought to admit against Sable

26

27  _____

[3]    *United States v. Bonds*, 608 F.3d 495, 504-05 (9th Cir. 2010), is not on point.  In that case, the
28  Ninth Circuit affirmed the district court's conclusion that Barry Bonds's athletic trainer was an
    independent contractor, not an employee, and thus his statements did not fall within the scope of Rule
    801(d)(2)(D).  *Id.*

1   testimony by his wife about what a PATCO shop foreman said at the hospital while visiting Boren.  The

2   court affirmed exclusion of the wife's testimony.  Sable, the court observed, had "turned over control of

3   the plant to Boren" and was "an absentee owner in relationship to PATCO."  *Id.* at 1039.  The court

4   further emphasized that "Boren's duties [not Sable's] as plant manager included everything that was

5   done at the plant.  Boren had authority to hire and fire people, and everything was done under his [not

6   Sable's] supervision."  *Boren* thus is easily distinguishable.  No one, not even Defendant, suggests she

7   was an absentee owner, lacked authority to hire and fire people, or failed to exercise control over

8   Theranos's operations.

9       Notably, the court in *Boren* cited *United States v. Paxson*, 861 F.2d 730 (D.C. Cir. 1988), which

10   urged against a "hyper-technical construction" of Rule 801(d)(2)(D).  *Id.* at 735.  In that case, the D.C.

11   Circuit Court of Appeals affirmed admission of testimony against Paxson to the effect that a Vice

12   President of Paxson Electric (Robert Lassetter) said a particular job was rigged.  The Vice President had

13   been with the firm for 25 years, and reported directly to Paxson, the President, who made key decisions

14   for the firm and owned a majority of the stock.  *Id.*  The D.C. Circuit explained: "Given the factual

15   predicate set forth above, that is, the nature of the relationship between Paxson and [the Vice

16   President/Lassetter], and between each and the corporation, we find as did the Tenth Circuit

17   in *Young,* that the factors normally making up an agency relationship are present and that the evidence

18   was properly admitted."  *Id.* (citing *United States v. Young*, 736 F.2d 565, 567-68 (10th Cir. 1983)

19   (affirming admission of statements by chief accountant against VP and general manager of company,

20   who was "higher in the corporate chain of authority," and stating "if the factors which normally make up

21   an agency relationship are present, the evidence should not be excluded simply because the statement is

22   offered against a corporate officer")).  This reasoning applies equally here.

23       For these reasons, the Court should admit against Defendant relevant statements by Theranos

24   agents and employees on matters within the scope of that relationship and while it existed.

25       Defendant also objects to admission of Theranos's interrogatory responses in the PFM litigation,

26   suggesting that she did not authorize or adopt them.  Her sworn testimony before the SEC demonstrates

27   otherwise.  There, when shown Theranos's interrogatory responses, she conceded "I certainly was

28   engaged with our legal team on responding to them" and added "I'm sure I talked with our team about

them."  Leach Decl. Ex. U at p.143; *id.* at p. 149 ("I worked with our legal teams as we worked to respond to PFM").  In addition, the context alone supports the inference Defendant authorized the responses:  This was high-stakes fraud litigation naming her as a defendant and presenting an existential threat to the company's existence, her financial condition, and her reputation.  It is impossible to believe under these circumstances Defendant did not authorize them.  This, and the evidence proffered by the government, is more than sufficient to support admission under Rule 801(d)(2)(B) and (C).

Defendant's additional arguments against admission fail.  First, she claims she could not have authorized the responses because she was represented by separate counsel (Cooley LLP).  This is nonsense.  The WilmerHale attorneys who signed the interrogatories on behalf of Theranos also represented Defendant as CEO of the company.  Leach Decl. Ex. U at p.1-4, 13.  Theranos's interrogatory responses were signed by her brother and some of the most senior officers of the company whom she supervised.

Second, Defendant argues the timing of the responses and her failure to expressly incorporate Theranos's substantive responses defeat any claim that she authorized or adopted Theranos's statements.  Not so.[4]  It is Defendant's coordination with Theranos and the repeated reference to Theranos's responses that give rise to the inference that Defendant, as owner and CEO of Theranos, with the most at stake in the case, knew of and approved Theranos's responses.

Given the stakes of the litigation, the fact that she personally was a party, her supervision over the attestors, the overlap in counsel, her own reference to Theranos's answers, and her own sworn statements, it is reasonable to infer Defendant authorized Theranos's statements.  These discovery responses should be admitted.

/ /

---

[4]      On December 12, 2016, Theranos and Defendant each served responses to PFM's first set of interrogatories.  ECF Nos. 588-15 & 588-17.  Defendant's responses repeatedly make reference to Theranos's.  *See, e.g.*, ECF No. 588-15 at 2, 13, 16.  On January 30, 2017, Theranos and Defendant each served responses to PFM's second set of interrogatories.  ECF No. 588-19; Leach Decl. Ex. V.  Again, Defendant's responses repeatedly make reference to Theranos's.  *See, e.g.*, Leach Decl. Ex. V at 1, 2, 5, 6, 8, 10, 11.  Finally, on January 31, 2017, Theranos and Defendant each served supplemental responses to the first set of interrogatories.  ECF No. 588-18; Leach Decl. Ex. W.

1
2

**IX.    REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 9: THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY STATEMENTS MADE AND OFFERED BY DEFENDANT**

3    The government has moved for an order excluding inadmissible out-of-court statements made by

4    Defendant.  Defendant does not contest that her out-of-court statements are admissible for any purpose

5    when offered by the government.  Such statements generally are inadmissible hearsay, however, if

6    offered by Defendant for the truth of the matter.  At trial, Defendant may not introduce her prior hearsay

7    statements simply because they paint her in a favorable light or are otherwise exculpatory.  The case law

8    is clear that defendants are not allowed to introduce their theories of the case through self-serving out-

9    of-court statements not subject to cross-examination.  (See Govt. Mot., ECF No. 588 at 25-26); *see also*

10   *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming exclusion of defendant's "non-

11   self-inculpatory" statements as hearsay to avoid allowing defendant to "place his exculpatory statements

12   before the jury without subjecting himself to cross-examination, precisely what the hearsay rule

13   forbids").  The government seeks an order imposing this well-established rule on Defendant in this case.

14   Defendant's chief argument in opposition to the government's motion is that the government has

15   not identified any specific statements by Defendant it seeks to exclude.  The evidence in this case

16   includes numerous statements by Defendant—not surprising given her role as founder, chief executive,

17   and spokesperson for a prominent corporation.  Many of those statements were designed to convey a

18   favorable impression of Defendant, her company, and its technology.  For example, on more than one

19   occasion, Defendant referred to a family member who passed away as contributing to her motivation for

20   founding Theranos.  Defendant also made numerous other statements about her purported goal to use her

21   company's technology to improve global healthcare and assist patients in need.  The government

22   expects that the defense may try to introduce self-serving statements like these in an attempt to show

23   that Defendant had altruistic intentions in connection with Theranos—a far cry from the intent to

24   defraud that the evidence will otherwise show.  The government does not know which statements

25   Defendant will attempt to introduce, and therefore seeks a general order protecting against such

26   improper use of out-of-court statements.  Other courts have issued similar orders in advance of trial.

27   *See, e.g.*, *United States v. Dashner*, No. 12-cr-006460SI, 2015 WL 3660331, *3 (N.D. Cal. Jun. 2, 2015)

28   (granting government motion *in limine* to preclude the defendant from presenting or eliciting his own

1  prior statements "unless he is testifying himself and subject to cross-examination by the government").

2  The issuance of such an order will not prevent the introduction of any admissible evidence at trial.

3      Defendant also asks the Court to take an expansive view of the rule of completeness, suggesting

4  that it provides an easy end-run around the hearsay rules discussed above.  Defendant's arguments are

5  not well-founded.  For instance, Defendant relies on *Quinones-Chavez* for the proposition that the

6  common-law rule trumps the hearsay rules.  (ECF No. 659 at 25-26) (citing *United States v. Quinones-*

7  *Chavez*, 641 F. Appx. 722, 729-30 (9th Cir. 2016) (Fisher, j., conc.).  But that cite is to a single judge's

8  concurring opinion in a case where the panel expressly declined to consider whether that rule applied.

9  *Quinones-Chavez*, 641 F. Appx. at 726 n.1.  Thus, Defendant's argument does not reflect established

10  law in the Ninth Circuit, and her other cited authority on this point is not binding on this Court.

11  Similarly, Defendant asserts that the common law rule applies to oral statements, but cites only a

12  footnote from a Ninth Circuit opinion simply noting that other circuits have read Rule 611(a) as giving

13  courts the power to admit oral statements when necessary.  *United States v. Collicott*, 92 F.3d 973, 983

14  n.12 (9th Cir. 1996).

15      In any event, Defendant has cited no authority construing the rule of completeness liberally.

16  Instead, the balance of the case law instructs that the rule is to be applied narrowly and only where

17  necessary to avoid a "misunderstanding or distortion" caused by already-proffered evidence.  *See*

18  *Collicott*, 92 F.3d at 983; *United States v. Vallejos*, 742 F.2d 902, 905 (9th Cir. 2014) (If the "complete

19  statement does not serve to correct a misleading impression in the edited statement that is created by

20  taking something out of context, the Rule of Completeness will not be applied to admit the full

21  statement.").

22      Accordingly, the Court should issue an order that Defendant's out-of-court statements may not

23  be introduced for their truth unless it is the only way to remedy misunderstanding or distortion created

24  by already-proffered evidence.  Should the Court decide against a pretrial order, the government

25  respectfully requests that the Court require Defendant to make a proffer as to any of her own out-of-

26  court statements or categories of statements that she seeks to reference during cross-examination of

27  government witnesses or otherwise put before the jury.

28

1

2

**X.   REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 10: THE COURT SHOULD ADMIT RELEVANT TESTIMONY FROM "NON-PAYING" PATIENT WITNESSES**

3  The government's motion explains in detail why, in addition to testimony from paying

4  customers, testimony from non-paying Theranos customers is admissible and beneficial to the jury.

5  Although the Court has ruled that only patients who paid for Theranos's blood tests were victims of the

6  alleged fraud, proof at trial is not constrained to testimony from victims of the completed offense.

7  Under Rule 404(b) and independent of that Rule, the government may present evidence regarding the

8  full range of a defendant's conduct in connection with a fraudulent scheme—not just the actions that led

9  directly to a victim being successfully defrauded.  The contrary view would conflict with case law

10  establishing that a scheme to defraud need not even be successful as to any victim in order to fall within

11  the coverage of the federal fraud statutes.  *United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989).  In

12  this case, Defendant's actions directed toward paying and non-paying customers were "part of a single

13  course of action" with the overall goal of defrauding those who ended up paying for Theranos's

14  services.  *See United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) (evidence of uncharged conduct

15  is admissible without regard to Rule 404(b) where that evidence and the charged offense are part of a

16  single course of action).

17  Defendant implicitly concedes that the Court's motion-to-dismiss rulings do not bar testimony

18  from non-paying patients.  Defendant does not argue that evidence at trial must be limited to testimony

19  from actual victims of Defendant's fraud, nor does any of Defendant's cited case law support such an

20  argument.  In fact, Defendant draws no significant distinction between paying and non-paying patients,

21  arguing instead that the Court should exclude testimony from *all* Theranos customers regarding

22  inaccurate test results they received from the company.  The government has responded to those

23  arguments separately in its Opposition to Defendant's Motion to Exclude Anecdotal Test Results.  (ECF

24  No. 682).  But Defendant's repeated arguments on this point demonstrate why her audacious request that

25  the Court exclude victim testimony is inappropriate.

26  Defendant objects to testimony about individual patient experiences based on her conclusory and

27  generalized argument that all lab testing services experience some level of error.  From that premise,

28  Defendant concludes that the existence of individual inaccurate results from Theranos cannot indicate

whether Theranos's tests suffered from accuracy and reliability problems. Of course, individual patient accounts will not be the only evidence at trial showing that Theranos's tests were inaccurate. In addition, employees will testify about technical challenges that Theranos never overcame, repeated accuracy and reliability problems with individual assays, Theranos's failure to conduct meaningful proficiency testing to ensure the accuracy of its tests, and the relatively high rates at which Theranos devices failed quality control testing aimed at evaluating their accuracy. Theranos documentation will corroborate this testimony, and illustrate the extent to which employees at the company acknowledged and discussed ongoing problems with Theranos technology, frequently including Defendant in those discussions. Representatives from regulatory agencies will testify about findings from their inspections, which uncovered serious deficiencies at Theranos that went directly to the lab's ability to deliver accurate and reliable results. The evidence will show that Theranos ultimately was forced to void a substantial number of its test results—a step that would not have been necessary if those results could be trusted.

Thus, individual patient accounts are an important part of a larger body of proof that will establish that Defendant knowingly misrepresented the accuracy and reliability of Theranos's tests. Testimony from paying and non-paying patients will also include details regarding Theranos's marketing efforts and the representations made to victims of Defendant's fraud—a key subject for trial. And because many of those individual patient experiences were subsequently reported back to the company, those accounts also demonstrate Theranos's and Defendant's knowledge of the accuracy problems that affected the company's assays. Such testimony is admissible for each of the above purposes. *See, e.g.*, *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992) (prior acts evidence is admissible "so long as the acts tended to make the existence of [the defendant's] knowledge or intent more probable than it would be without the evidence").

Defendant goes further, though, arguing that "no reliable evidence proves that Theranos's technology was incapable of consistently producing accurate test results" for the assays in question. (ECF No. 659 at 27). Defendant's attempt to exclude patient testimony rests on this argument, and that is why it must fail. As an initial matter, the evidence referenced above will disprove Defendant's claim at trial. Despite Defendant's predictable view of the government's case, the jury will hear abundant

1   evidence showing that Theranos experienced serious accuracy and reliability problems with its tests,

2   rendering Defendant's statements about the company's technology false and misleading.  More

3   importantly, Defendant's argument is premature.  A motion *in limine* is not the appropriate vehicle to

4   challenge the sufficiency of the government's evidence.  Nor does the law provide any mechanism for

5   Defendant to prematurely attack the sufficiency of the evidence before it is presented to the jury.

6   Accordingly, the Court should decline Defendant's invitation to prejudge the evidence in this case.

7        For the foregoing reasons, the Court should grant the government's motion and rule that

8   Theranos patients—paying and non-paying—may testify regarding their experiences with the company,

9   its marketing materials, representatives, testing, and test results.

10  **XI.     REPLY TO OPPOSITION TO UNITED STATES' MOTION *IN LIMINE* NO. 11: THE

11           COURT SHOULD ORDER DEFENDANT TO PRODUCE REVERSE *JENCKS*
           INCLUDING ANY *IN CAMERA* PROFFERS**

12       To date, Defendant has failed to disclose to the government any witness statements under Rule

13  26.2(a) of the Federal Rules of Criminal Procedure, which requires a party to produce "any statement"

14  of a testifying witness if it (1) "is in [that party's] possession" and (2) "relates to the subject matter of

15  the witness's testimony."  FED. R. CRIM. P. 26.2(a).  The government's motion, filed in November of last

16  year, seeks an order requiring Defendant to comply with the terms of this Rule.  That motion also lays

17  out the government's unsuccessful attempts to secure Defendant's compliance without motion practice.

18       Shortly after the government filed its motion, the Court raised the issue of Defendant's

19  obligations under Rule 26.2 at the status conference on December 2, 2020.  In the Minute Order

20  following that hearing, the Court ordered the parties to meet and confer regarding a deadline for

21  Defendant's compliance with the Rule.  (ECF No. 615).  Following that Order, the government raised

22  the issue during a telephone call with defense counsel and was informed that Defendant intended to

23  begin a rolling production of any responsive witness statements.  The government understood from the

24  Court's remarks in December that the Court desired Defendant to address the issue in advance of the

25  hearing on motions *in limine*.  Defendant apparently has a different view, and has not produced any

26  responsive witness statements in the weeks since the Court's Order and the meet and confer.  It is also

27  worth noting that Defendant has not offered any substantive opposition to the government's motion.

28  Accordingly, the government requests that the Court grant its motion and order Defendant to produce

1    any witness statements covered by Rule 26.2 within ten days of the hearing on its motion.

2         Rule 26.2 itself provides the remedy should Defendant not comply with her obligations.

3    Subsection (e) of the rule states that disobeying an order to produce a witness statement must result in

4    the court striking the relevant witness's testimony from the record.  The government respectfully

5    requests that the Court enforce this penalty if necessary.

6

7

8    DATED:  February 16, 2021                                    Respectfully submitted,

9
                                                                 STEPHANIE M. HINDS
10                                                               Attorney for the United States,
                                                                 Acting Under Authority Conferred
11                                                               By 28 U.S.C. § 515

12
                                                                 _/s/_____
13                                                               JEFF SCHENK
                                                                 JOHN C. BOSTIC
14                                                               ROBERT S. LEACH
                                                                 VANESSA BAEHR-JONES
15                                                               Assistant United States Attorneys

16

17

18

19

20

21

22

23

24

25

26

27

28