# EXHIBIT V



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., A Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership,<br><br>    Plaintiffs,<br><br>v.<br><br>THERANOS, INC., a Delaware corporation, ELIZABETH HOLMES, an individual, RAMESH BALWANI, an individual, and DOES 1-10<br><br>    Defendants. | C.A. No. 12816-VCL |

## DEFENDANT ELIZABETH HOLMES'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Defendant Elizabeth Holmes hereby responds, pursuant to Court of Chancery Rules 26 and 33, to the Second Set of Interrogatories (each an "Interrogatory" and, collectively, the "Interrogatories") served by Plaintiffs Partner Investments, L.P., PFM Healthcare Master Fund, L.P., and PFM Healthcare Principals Fund, L.P. (collectively, "PFM") as follows:

### GENERAL OBJECTIONS

1.    Holmes incorporates all General Objections made in Theranos, Inc.'s ("Theranos" or the "Company") Responses and Objections to Plaintiffs' First Set of Interrogatories to Theranos.

1

CONFIDENTIAL

2.      Holmes incorporates all General Objections and Objections to Definitions and Instructions made in Holmes's Responses and Objections to Plaintiffs' First Request for Production of Documents, served December 12, 2016.

3.      Holmes's responses to the Interrogatories are made without in any way waiving or intending to waive: (a)  any objections as to the competency, relevancy, materiality, privileged status or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories; (b) the right to object on any ground to the information produced in response to the Interrogatories at any hearing or trial; or (c) the right to object on any ground at any time to a demand for further responses to the Interrogatories.

4.      Holmes objects to the Interrogatories to the extent they purport to require a legal conclusion.

5.      Holmes objects to Instruction B to the extent that it imposes burdens different than or in addition to those imposed by the Rules of the Court of Chancery of the State of Delaware.  Holmes's objections and responses are based solely upon Holmes's present knowledge, information, and belief.  Holmes does not in any way assume a continuing responsibility to update its answers based on information discovered, obtained, or created subsequent to the date of this response except as required pursuant to Court of Chancery Rule 26(e).

2

**CONFIDENTIAL**

PFM-ROGS-00000241

6.      In furnishing these responses to the Interrogatories, Holmes does not concede the truth of any factual assertion or implication contained in the Interrogatories.

7.      Holmes reserves the right to supplement, revise, correct, add to, or clarify the objections, answers, or responses set forth herein.  If Holmes identifies responsive information at a future date, she reserves the right at that time to amend her objections, answers, or responses and reserves the right to evaluate whether any privilege applies to such information and to assert such privilege.

## SPECIFIC OBJECTIONS AND RESPONSES

The following specific objections and responses shall be deemed to supplement the General Objections, which are incorporated into each of the specific responses and are not in any way limited by the specific objections and responses:

**INTERROGATORY NO. 41:**

IDENTIFY ANY instances in which YOU authorized, participated in, and/or had knowledge of the deletion or discarding of ANY of THERANOS's backup tapes stored at Iron Mountain (and/or any other location). For each instance so identified:

(a)      DESCRIBE ANY such backup tapes, including the contents, corresponding custodians, and date ranges for such content;

**CONFIDENTIAL**

PFM-ROGS-00000242

(b)     STATE the date(s) on which ANY such backup tapes were discarded or deleted;

(c)     DESCRIBE the reason(s) why ANY such backup tapes were discarded or deleted; and

(d)     DESCRIBE ANY investigation into the circumstances of ANY backup tapes that were discarded or deleted, including the date, manner, involved PERSON(s), and conclusions reached.

**RESPONSE TO INTERROGATORY NO. 41:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and is without reasonable limitation as to time or scope.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she is not aware of any instance in which she authorized, participated in, and/or had knowledge of the deletion or discarding of any backup tapes stored at Iron Mountain or any other location.

**INTERROGATORY NO. 42:**

IDENTIFY and DESCRIBE ALL COMMUNICATIONS between YOU and any department, division, and/or branch of the U.S. military and/or Department of Defense.

4

**CONFIDENTIAL**

PFM-ROGS-00000243

**RESPONSE TO INTERROGATORY NO. 42:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, and that it is better addressed by a document production.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information responsive to this interrogatory beyond what is provided in Theranos' responses to Plaintiffs' Interrogatory Nos. 62 and 63 directed to Theranos and refers Plaintiffs to those responses.

**INTERROGATORY NO. 43:**

IDENTIFY and DESCRIBE ANY instances in which YOU directed Carisa Bianchi, Gage Clegg, Natasha Katz, Kyle Thompson, and/or ANY other PERSON(s) to update and/or make changes to THERANOS's website and/or social media accounts, and ANY instances in which YOU made substantive decisions about updates and/or changes to the content of THERANOS's website and/or social media accounts, including the nature, time period, and circumstances of ANY specific content changes.

**RESPONSE TO INTERROGATORY NO. 43:**

In addition to the General Objections, Holmes further object it is overly broad, unduly burdensome and is without reasonable limitation as to time or scope.

5

**CONFIDENTIAL**

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information responsive to this interrogatory beyond what is provided in Theranos' response to Plaintiffs' Interrogatory No. 57 directed to Theranos and refers Plaintiffs to that response.

**INTERROGATORY NO. 44:**

DESCRIBE the method(s) YOU used to calculate coefficients of variation or "CV" for each of THERANOS's blood tests.

**RESPONSE TO INTERROGATORY NO. 44:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "method", "calculate" or "blood tests".

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not calculate coefficients of variation for any of Theranos' tests.  This same interrogatory was directed to the Company, and Holmes refers Plaintiffs to Theranos' response to Interrogatory No. 56.

**INTERROGATORY NO. 45:**

IDENTIFY ANY commercially available machine, equipment, or technology that THERANOS modified for use to process blood tests on CAPILLARY BLOOD SAMPLES or MICRO-SAMPLES, including without

6

**CONFIDENTIAL**

limitation machines, equipment, and/or technology manufactured by SIEMENS.

For each machine, equipment, and/or technology so identified:

(a)     DESCRIBE ANY modification(s) THERANOS made, the intended purpose(s) of such modification(s), STATE whether THERANOS considers ANY such modification(s) proprietary, and STATE whether THERANOS filed an application for and/or received a patent for any such modification(s);

(b)     IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of ANY such modification(s);

(c)     STATE the date range(s) during which THERANOS used the machine, equipment, and/or technology to process blood tests for commercial testing center patients, and IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of such use;

(d)     IDENTIFY which blood test(s) THERANOS ran on the machine, equipment, and/or technology, as well as the time period during which each such test was run on the machine, equipment, and/or technology; and

(e)     DESCRIBE ANY analyses, empirical studies, testing, and/or other validation of the machine, equipment, and/or technology, whether performed by THERANOS or by third parties, or proposed or offered to THERANOS by third

7

**CONFIDENTIAL**

parties, and IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of such analyses, studies, testing, and/or other validation.

**RESPONSE TO INTERROGATORY NO. 45:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and is without reasonable limitation as to time or scope.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she was not personally involved in modification of commercially available machines, equipment, or technology that Theranos used to process blood tests on capillary blood samples or micro-samples.  This same interrogatory was directed to the Company, and Holmes refers Plaintiffs to Theranos' response to Interrogatory No. 64.

**INTERROGATORY NO. 46:**

STATE whether THERANOS diluted or otherwise prepared ANY blood sample(s) for use with commercially available machine(s), equipment, or technology(ies), whether modified or not, used to perform blood tests for commercial testing center patients. For each dilution or other preparation identified:

8

CONFIDENTIAL

PFM-ROGS-00000247

(a)     IDENTIFY the blood test(s) in connection with which the dilution or other preparation was performed;

(b)     STATE the time period during which THERANOS diluted or otherwise prepared such blood samples;

(c)     DESCRIBE such dilution or other preparation;

(d)     IDENTIFY the THERANOS employee(s) and/or former employee(s) who authorized, participated in, and/or had knowledge of ANY such dilution or other preparation;

(e)     IDENTIFY the machine, equipment, and/or technology used for ANY such dilution or other preparation; and

(f)     STATE whether THERANOS filed an application for and/or received a patent for any such dilution or other preparation.

**RESPONSE TO INTERROGATORY NO. 46:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and is without reasonable limitation as to time or scope.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not dilute or otherwise prepare any blood sample(s) for use with commercially available machine(s), equipment, or technology(ies), whether modified or not, used to perform blood tests for

9

**CONFIDENTIAL**

PFM-ROGS-00000248

commercial testing center patients.  This same interrogatory was directed to the

Company, and Holmes refers Plaintiffs to Theranos' response to Interrogatory No.

65.

**INTERROGATORY NO. 47:**

IDENTIFY ALL instances in which YOU were involved in and/or had

knowledge of processing blood samples drawn from a PERSON who is and/or was

an actual and/or potential investor in or business partner with THERANOS, or is

and/or was affiliated with an actual and/or potential investor in or business partner

with THERANOS, including but not limited to PFM, in connection with the

evaluation or consideration of an investment in or business partnership with

THERANOS.  For each instance so identified:

(a)   IDENTIFY the PERSON whose blood sample was drawn;

(b)   STATE the date(s) on which the blood sample was drawn;

(c)   STATE whether the blood sample was a CAPILLARY BLOOD

SAMPLE, a VENOUS BLOOD SAMPLE, and/or a MICRO- SAMPLE;

(d)   STATE whether the blood sample was drawn onsite at a THERANOS

facility or at a RETAIL STORE;

(e)   IDENTIFY ALL current and/or former THERANOS officers and/or

employee(s) who were involved in processing the blood sample; and

10

**CONFIDENTIAL**

PFM-ROGS-00000249

(f)      IDENTIFY the THERANOS SAMPLE PROCESSING UNIT and/or other machine, equipment, technology, and/or third-party laboratory or vendor used to process the blood sample.

**RESPONSE TO INTERROGATORY NO. 47:**

In addition to the General Objections, Holmes further  objects to this Interrogatory on the grounds that it is overly broad, particularly to the extent it asks her to describe the intentions and states of mind of third parties, and beyond the scope of permissible discovery.  It is not limited to the time period relevant to this action and seeks information about events that occurred after PFM invested in Theranos, which are not relevant to this suit.  Holmes also objects that this Interrogatory is vague and ambiguous in its use of the terms "actual and/or potential investor," "affiliated with," "business partner," and "in connection with the evaluation or consideration of an investment in or business partnership."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information responsive to this interrogatory beyond what is provided in Theranos' responses to Plaintiffs' Interrogatory No. 66 directed to Theranos and refers Plaintiffs to that response.

**INTERROGATORY NO. 48:**

IDENTIFY ANY tours of THERANOS's laboratory, office, and/or other facility that featured a viewing of THERANOS's SAMPLE PROCESSING

11

**CONFIDENTIAL**

UNIT(S) or other blood-testing machines, in which YOU participated or have knowledge of, that was provided to ANY PERSON who is and/or was an actual and/or potential investor in or business partner with THERANOS, or is and/or was affiliated with an actual and/or potential investor in or business partner with THERANOS, including but not limited to PFM, in connection with the evaluation or consideration of an investment in or partnership with THERANOS. For each tour identified:

(a)     STATE the date of the tour;

(b)     IDENTIFY the PERSON(s) to whom the tour was given;

(c)     STATE the machine(s), equipment, and/or technology(ies) that were shown;

(d)     DESCRIBE the purpose for which each machine, equipment, and/or technology was used;

(e)     STATE the location of each machine(s), equipment, and/or technology(ies) shown, and whether the machine(s), equipment, and/or technology(ies) were ordinarily stored in such location or moved there for purposes of the tour; and

(f)     DESCRIBE the representations YOU made during the tour regarding such machine(s), equipment, and/or technology(ies).

CONFIDENTIAL

PFM-ROGS-00000251

**RESPONSE TO INTERROGATORY NO. 48:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, particularly because it requests information regarding tours given over the Company's entire 10-plus year history, and beyond the scope of permissible discovery.  It is not limited to the time period relevant to this action and seeks information about events that occurred after PFM invested in Theranos, which are not relevant to this suit.  Holmes also objects to this Interrogatory as vague and ambiguous in its use of the terms "actual and/or potential investor," "affiliated with," "business partner," and "in connection with the evaluation or consideration of an investment in or business partnership."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not have information responsive to this interrogatory beyond what is provided in Theranos' response to Plaintiffs' Interrogatory No. 67 directed to Theranos and refers Plaintiffs to that response.

**INTERROGATORY NO. 49:**

IDENTIFY ANY complaint and/or report made to YOU by ANY of THERANOS's current or former employee(s) CONCERNING THERANOS's non-compliance with state and/or federal laws, and/or alleging any fraud, misrepresentation, or material omission by THERANOS.  For each such instance:

(a)     IDENTIFY the employee(s) who made the complaint and/or report;

13

**CONFIDENTIAL**

      (b)     STATE the date(s) the complaint and/or report was made;

      (c)     DESCRIBE the complaint and/or report; and

      (d)     DESCRIBE ANY investigation into the complaint and/or report, and conclusions reached.

**RESPONSE TO INTERROGATORY NO. 49:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the ground that the term "report" is vague and ambiguous.

(a)     Subject to and without waiving the foregoing objections and General Objections, Holmes responds as follows:  Tyler Shultz

(b)  Subject to and without waiving the foregoing objections and General Objections, Holmes responds as follows:  April 11, 2014

(c) Subject to and without waiving the foregoing objections and General Objections, Holmes responds as follows:  Pursuant to Chancery Court Rule 33(d), Holmes refers to, and will specify, documents produced by Theranos from which the answer to this Interrogatory can be derived or ascertained.

(d) Subject to and without waiving the foregoing objections and General Objections, Holmes responds as follows: Between April 11 and April 14, 2014, Holmes, Sunny Balwani, and Daniel Young reviewed Shultz's allegations and provided a point-by-point response.

14

**CONFIDENTIAL**

**INTERROGATORY NO. 50:**

DESCRIBE YOUR representations to investors in THERANOS's Series C-2 Preferred Stock regarding ANY of the following topics:

(a)    The number of blood tests THERANOS could perform for THERANOS's commercial testing center patients using CAPILLARY BLOOD SAMPLES as opposed to VENOUS BLOOD SAMPLES or other MICRO-SAMPLES;

(b)    The proportion of most-commonly ordered blood tests THERANOS could perform using CAPILLARY BLOOD SAMPLES as opposed to VENOUS BLOOD SAMPLES or other MICRO-SAMPLES;

(c)    The number of Current Procedural Terminology ("CPT") codes THERANOS's blood tests could cover and which CPT codes were most used;

(d)    The ACCURACY of THERANOS's blood tests;

(e)    THERANOS's use of ANY machines, equipment, and/or technology manufactured by third parties to perform blood tests for THERANOS's commercial testing center patients, regardless of whether THERANOS made any modification(s) to such machines, equipment, and/or technology;

(f)    THERANOS's strategy with respect to FDA approvals and/or clearances, the proprietary technology THERANOS submitted and/or pre-

15

**CONFIDENTIAL**

PFM-ROGS-00000254

submitted to the FDA, and THERANOS's progress with respect to such strategy(ies);

(g)     THERANOS's relationships with RETAIL STORES and THERANOS's commercial roll-out strategy with RETAIL STORES;

(h)     THERANOS's relationships with hospitals and THERANOS's commercial roll-out strategy with hospitals;

(i)     THERANOS's relationships with physicians and/or physician practices, and THERANOS's commercial roll-out strategy with physicians and/or physician practices; and/or

(j)     THERANOS's relationships with, and/or the nature of THERANOS's work with, pharmaceutical companies, universities and/or research institutions, and/or any department, division, and/or branch within the U.S. military or the Department of Defense.

**RESPONSE TO INTERROGATORY NO. 50:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and beyond the scope of permissible discovery, particularly because it seeks information about investments other than the PFM investment, which are not relevant to this suit.  Holmes further objects to this Interrogatory to the extent that it is without reasonable limitation as to time or scope, and seeks information about

16

**CONFIDENTIAL**

PFM-ROGS-00000255

events that occurred after PFM invested in Theranos, which are also not relevant to this suit.  Holmes further objects to this interrogatory on the ground that the term "representation" calls for a legal conclusion.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that the representations made to Plaintiffs are in the Stock Purchase Agreement between Theranos and Plaintiffs dated February 4, 2014.

**INTERROGATORY NO. 51:**

For each of the representations DESCRIBED in response to Interrogatory No. 50:

(a)    IDENTIFY the investor(s) in THERANOS's Series C-2 Preferred Stock to whom YOU made such representations;

(b)    STATE the date(s) on which YOU made such representations; and

(c)    DESCRIBE the basis for such representations.

**RESPONSE TO INTERROGATORY NO. 51:**

Subject to and without waiver of the foregoing specific and general objections, Holmes incorporates by reference her objections and response to Interrogatory No. 50.

17

**CONFIDENTIAL**

PFM-ROGS-00000256

**INTERROGATORY NO. 52:**

IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the correlation graphs contained in the "Confidential Slide Deck" YOU provided to PFM in January 2014. For each such correlation graph, IDENTIFY the THERANOS SAMPLE PROCESSING UNIT and/or other device used to perform the blood test in question.

**RESPONSE TO INTERROGATORY NO. 52:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "relied upon" or "prepare".

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not prepare correlation graphs contained in any "Confidential Slide Deck" provided to PFM.

**INTERROGATORY NO. 53:**

IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the "Macro Assumptions" regarding device cost, retail pharmacy revenues and costs, emergency room market data, and intensive care unit data, which was provided to PFM in January 2014.

18

**CONFIDENTIAL**

**RESPONSE TO INTERROGATORY NO. 53:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "relied upon" or "prepare".

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not prepare any "Macro Assumptions" provided to PFM.

**INTERROGATORY NO. 54:**

IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the "Market Assumptions" regarding pharmacy locations, tests per day per location, and number of THERANOS locations (by month) in retail pharmacies, physicians' offices, and hospitals, which was provided to PFM in January 2014.

**RESPONSE TO INTERROGATORY NO. 54:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "relied upon" or "prepare."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not prepare any "Market Assumptions" provided to PFM.

19

**CONFIDENTIAL**

PFM-ROGS-00000258

**INTERROGATORY NO. 55:**

IDENTIFY the DOCUMENT(S) and/or other source(s) of information YOU relied upon in order to prepare the Pro Forma Income Statement, Pro Forma Quarterly Statement of Cash Flow, and the Consolidated Balance Sheet—including without limitation the notes regarding the intangible assets not included in the balance sheet—which was provided to PFM in January 2014.

**RESPONSE TO INTERROGATORY NO. 55:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in that Plaintiffs do not define the terms "relied upon" or "prepare".

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not prepare any Pro Forma Income Statement, Pro Forma Quarterly Statement of Cash Flow, or Consolidated Balance Sheet provided to PFM.

**INTERROGATORY NO. 56:**

DESCRIBE the basis for YOUR statement, made to PFM on or about December 12, 2013, that THERANOS's proprietary technology performed blood tests covering 1,000 of the 1,300 CPT codes that traditional laboratories can perform on blood samples.

20

**CONFIDENTIAL**

PFM-ROGS-00000259

**RESPONSE TO INTERROGATORY NO. 56:**

In addition to the General Objections, Holmes further objects to this Interrogatory on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing objections and the General Objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.  Information pertaining to Theranos blood tests and CPT codes is provided in the supplemental responses to Interrogatory Nos. 18 and 19 to the Company and response to Interrogatory No. 70 to the Company, and Holmes refers Plaintiffs to those interrogatory responses.

**INTERROGATORY NO. 57:**

DESCRIBE the basis for YOUR statement, made to PFM on or about December 12, 2013, that THERANOS would be placing its testing centers in more than 8,100 WALGREENS locations in the United States.

**RESPONSE TO INTERROGATORY NO. 57:**

In addition to the General Objections, Holmes further objects that this Interrogatory is vague and ambiguous in its use of the phrase "testing centers."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.  Information pertaining to Theranos'

21

CONFIDENTIAL

contractual relationship with Walgreens is provided in response to Interrogatory

No. 37 to the Company, and Holmes refers Plaintiffs to that response.

**INTERROGATORY NO. 58:**

DESCRIBE the basis for YOUR statement, made to PFM on or about

December 12, 2013, that THERANOS's proprietary technology was being used by

pharmaceutical companies in clinical trials.

**RESPONSE TO INTERROGATORY NO. 58:**

Subject to and without wavier of the foregoing specific and general

objections, Holmes responds that she does not recall making the statement that is

attributed to her in this Interrogatory.  Information pertaining to Theranos' work

with pharmaceutical companies is provided in response to Interrogatory Nos. 16,

17, 23, 58 and 59 to the Company, and Holmes refers Plaintiffs to those

interrogatory responses.

**INTERROGATORY NO. 59:**

DESCRIBE the basis for YOUR statement, made to PFM on or about

December 12, 2013, that THERANOS's proprietary technology was being used by

the U.S. military, including aboard medevac helicopters.

**RESPONSE TO INTERROGATORY NO. 59:**

In addition to the General Objections, Holmes further objects to this

Interrogatory on the ground that the phrase "being used" is vague and ambiguous.

**CONFIDENTIAL**

PFM-ROGS-00000261

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.  Information pertaining to Theranos' efforts with respect to the military is provided in response to Interrogatory Nos. 62, 63 and 70 to the Company, and Holmes refers Plaintiffs to those interrogatory responses.

**INTERROGATORY NO. 60:**

DESCRIBE the basis for YOUR statements, made to PFM on or about January 10, 2014, that THERANOS had developed and validated blood tests on its proprietary technology that covered between 1,000 and 1,050 CPT codes, that these CPT codes accounted for 99.9% of all laboratory requests, and that THERANOS had a technical solution in place that would enable it to perform blood tests associated with all possible CPT codes.

**RESPONSE TO INTERROGATORY NO. 60:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous in its use of the phrases "CPT codes," "laboratory requests" "technical solution in place" and "enable it to perform blood tests associated with all possible CPT codes."

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statements that are attributed to her in this Interrogatory.  Information pertaining to Theranos blood

23

**CONFIDENTIAL**

tests and CPT codes is provided in the supplemental responses to Interrogatory

Nos. 18 and 19 to the Company and response to Interrogatory No. 70 to the

Company, and Holmes refers Plaintiffs to those interrogatory responses.

**INTERROGATORY NO. 61:**

DESCRIBE the basis for YOUR statements, made to PFM on or about

January 10, 2014, that THERANOS was capable of running 70 blood tests on a

CAPILLARY BLOOD SAMPLE on a single cartridge, and would soon be able to

run even more.

**RESPONSE TO INTERROGATORY NO. 61:**

In addition to the General Objections, Holmes further objects to this

Interrogatory as vague and ambiguous.

Subject to and without waiver of the foregoing specific and general

objections, Holmes responds that she does not recall making the statement that is

attributed to her in this Interrogatory.  Holmes further responds that Theranos has

designed a number of cartridges with multiple reaction sections that were capable

of running more than one test per section through simultaneous or discrete

multiplexing.

24

**CONFIDENTIAL**

**INTERROGATORY NO. 62:**

DESCRIBE the basis for YOUR statement, made to PFM on or about January 10, 2014, that THERANOS was in the process of obtaining FDA clearance of approval for each of the blood tests it had developed and validated.

**RESPONSE TO INTERROGATORY NO. 62:**

In addition to the General Objections, Holmes also objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome to the extent that it is without reasonable limitation as to time or scope. Holmes further objects to this Interrogatory to the extent it seeks information that may be protected by the attorney-client privilege or work product doctrine. Holmes further objects to this Interrogatory as vague and ambiguous, particularly with respect to its use of the terms "process of obtaining," "FDA clearance of approval," "blood tests," and "validated." Holmes further objects to this Interrogatory to the extent it is better addressed by a document production.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory. Information pertaining to Theranos' efforts pertaining to FDA approvals is provided in response to Interrogatory Nos. 30-32 to the Company, and Holmes refers Plaintiffs to those responses.

25

**CONFIDENTIAL**

**INTERROGATORY NO. 63:**

DESCRIBE the basis for YOUR statements, made to PFM on or about January 10, 2014, that WALGREENS and SAFEWAY were each contractually committed to opening a minimum number of THERANOS testing locations, that THERANOS testing locations would be opened in the more than 8,000 WALGREENS stores nationwide, and that SAFEWAY had already built out THERANOS testing locations in approximately 1,000 stores.

**RESPONSE TO INTERROGATORY NO. 63:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statements that are attributed to her in this Interrogatory.  Information pertaining to Theranos' relationship with Walgreens and Safeway is provided in response to Interrogatory No. 37 to the Company, and Holmes refers Plaintiffs to that interrogatory response.

**INTERROGATORY NO. 64:**

DESCRIBE the basis for YOUR statement, made to PFM on or about January 10, 2014, that the price of $17 per share of THERANOS stock offered to PFM was a premium over the prior round of funding that had recently closed at $15 per share.

26

**CONFIDENTIAL**

PFM-ROGS-00000265

**RESPONSE TO INTERROGATORY NO. 64:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.  Information pertaining to the price of Theranos stock offered in the round of funding prior to PFM's investment is provided in response to Interrogatory No. 69 to the Company, and Holmes refers Plaintiffs to that interrogatory response.

**INTERROGATORY NO. 65:**

DESCRIBE the basis for YOUR statements, made to PFM on or about January 10, 2014, that by the end of 2014, any THERANOS blood test requested by a customer would be performed using a finger stick, and results would be available within four hours.

**RESPONSE TO INTERROGATORY NO. 65:**

In addition to the General Objections, Holmes further objects to this Interrogatory as vague and ambiguous.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.

27

**CONFIDENTIAL**

**INTERROGATORY NO. 66:**

DESCRIBE the basis for YOUR statements, made to PFM on or about January 10, 2014, that beginning in 2015, THERANOS would install its proprietary analyzers in testing locations themselves (including in RETAIL STORES), and results would be available within thirty minutes.

**RESPONSE TO INTERROGATORY NO. 66:**

In addition to the General Objections, Holmes further objects to this Interrogatory's use of the phrase "testing locations" is vague and ambiguous.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she does not recall making the statement that is attributed to her in this Interrogatory.

**INTERROGATORY NO. 67:**

DESCRIBE the basis for YOUR statement, made to PFM on or about January 10, 2014, that the correlation charts YOU showed to PFM compared test data generated on THERANOS's proprietary analyzers, using small blood samples drawn with THERANOS's proprietary methods, to test data generated on traditional laboratory machines.

28

**CONFIDENTIAL**

**RESPONSE TO INTERROGATORY NO. 67:**

In addition to the General Objections, Holmes further objects to this
Interrogatory on the ground that the phrases "correlation charts you showed" is
vague and ambiguous.

Subject to and without waiver of the foregoing specific and general
objections, Holmes responds that she does not recall making the statement that is
attributed to her in this Interrogatory.  Information pertaining to correlation charts
is provided in response to Interrogatory No. 72 to the Company, and Holmes refers
Plaintiffs to that response.

**INTERROGATORY NO. 68:**

DESCRIBE the basis for YOUR statements, made to PFM on or about
January 10, 2014, that the majority of the correlation charts YOU showed to PFM
had correlation coefficients of 0.95 or higher, and that THERANOS had submitted
this correlation data to the FDA for clearance.

**RESPONSE TO INTERROGATORY NO. 68:**

In addition to the General Objections, Holmes further objects to this
Interrogatory as vague and ambiguous.

Subject to and without waiver of the foregoing specific and general
objections, Holmes responds that she does not recall making the statement that is
attributed to her in this Interrogatory and the documents that are the subject of this

29

CONFIDENTIAL

PFM-ROGS-00000268

Interrogatory are the best evidence of what correlation coefficients are indicated therein.

**INTERROGATORY NO. 69:**

DESCRIBE the basis for the statements in the financial model that was provided to PFM on or about January 21, 2014, that: THERANOS had certain "intangible" relationships that had been "valued at multi-billion dollar valuation in the past" [sic]; THERANOS would be WALGREENS's exclusive laboratory provider across the entire United States; SAFEWAY had already built out THERANOS Wellness Centers at over 960+ stores nationwide with an investment of about $400 million; and THERANOS had strategic partnerships in place with key hospitals in the United States.

**RESPONSE TO INTERROGATORY NO. 69:**

In addition to the General Objections, Holmes further objects to this Interrogatory to the extent it purports to paraphrase or characterize statements in a financial model that was provided to PFM on or about January 21, 2014.

Subject to and without waiver of the foregoing specific and general objections, Holmes responds that she did not prepare the financial model provided to PFM.

30

**CONFIDENTIAL**

PFM-ROGS-00000269

AS TO OBJECTIONS:


OF COUNSEL:                        /s/ Catherine G. Dearlove
                                   Gregory P. Williams (#2168)
Stephen C. Neal                    Catherine G. Dearlove (#3328)
Cooley LLP                         Kevin M. Gallagher (#5337)
3175 Hanover Street                Sarah A. Galetta (#6157)
Palo Alto, California 94304        Richards, Layton & Finger, P.A.
(650) 843-5000                     920 North King Street
                                   Wilmington, Delaware 19801
Kathleen Goodhart                  (302) 651-7700
Cooley LLP
101 California Street, 5th Floor
San Francisco, California 94111    *Attorneys for Defendant Elizabeth*
(415) 693-2012                     *Holmes*

Dated:  January 30, 2017

31

**CONFIDENTIAL**

PFM-ROGS-00000270

STATE OF CALIFORNIA        :
                                     : SS:
COUNTY OF SANTA CLARA    :

       I, Elizabeth Holmes, declare:

1.      I have read the foregoing Defendant Elizabeth Holmes's Objections and Responses to Plaintiffs' Second Set of Interrogatories, and I know the contents thereof. Certain matters set forth therein are not within my personal knowledge.

2.      Said responses and objections were prepared with the assistance of counsel, upon whom I have relied. The responses set forth therein, subject to inadvertent and undiscovered errors, are based on and necessarily limited by information presently recollected and thus far discovered in the course of preparation of these responses. Consequently, I reserve the right to make changes in these responses if it appears at any time that omissions or errors have been made therein or that more accurate information becomes available. Subject to the limitations as set forth herein, said responses are true to the best of my knowledge, information, and belief.

3.      I declare under penalty of perjury and pursuant to the laws of the United States, the State of Delaware and the State of California that the foregoing is true and correct.

       Dated this 30th day of January, 2017



Elizabeth Holmes

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Sworn to and subscribed before me this _30th_ day of _January_, 2017.

Notary Public
My Commission Expires: _12/21/2019_

TIFFANY M. L. CHASE
COMM. # 2135154
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires Dec. 21, 2019
CSSI

PFM-ROGS-00000271