1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

        UNITED STATES OF AMERICA,          )
6                                          )   CR-18-00258-EJD
                        PLAINTIFF,         )
7                                          )   SAN JOSE, CALIFORNIA
                 VS.                       )
8                                          )   MAY 5, 2021
        ELIZABETH A. HOLMES,               )
9                                          )   PAGES 1 - 156
                        DEFENDANT.         )
10      _____        )
                                           )
11                      TRANSCRIPT OF PROCEEDINGS

12           BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE

13

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                               BY:  JOHN C. BOSTIC
16                                  JEFFREY B. SCHENK
                               150 ALMADEN BOULEVARD, SUITE 900
17                             SAN JOSE, CALIFORNIA 95113

18                             BY:  ROBERT S. LEACH
                                    KELLY VOLKAR
19                             1301 CLAY STREET, SUITE 340S
                               OAKLAND, CALIFORNIA 94612

20
              (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21

        OFFICIAL COURT REPORTERS:
22                             IRENE L. RODRIGUEZ, CSR, RMR, CRR
                               CERTIFICATE NUMBER 8074
23                             LEE-ANNE SHORTRIDGE, CSR, CRR
                               CERTIFICATE NUMBER 9595

24
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25               TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                        BY:  KEVIN M. DOWNEY
                             LANCE A. WADE
                             PATRICK LOOBY
                             KATHERINE TREFZ
                             AMY SAHARIA
                             J.R. FLEURMONT
                             SEEMA ROPER
                        725 TWELFTH STREET, N.W.
                        WASHINGTON, D.C. 20005

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    MAY 5, 2021 |
| 08:48AM | 2 | P R O C E E D I N G S |
| 09:04AM | 3 | (COURT CONVENED AT 9:04 A.M.) |
| 09:04AM | 4 | THE COURT:  ALL RIGHT.  LET'S GO BACK ON THE RECORD |
| 09:04AM | 5 | IN 18-258, UNITED STATES VERSUS ELIZABETH HOLMES. |
| 09:04AM | 6 | I SEE ALL COUNSEL PRESENT.  MS. HOLMES IS PRESENT.  WE'RE |
| 09:04AM | 7 | READY TO PROCEED WITH OUR MOTIONS IN LIMINE. |
| 09:04AM | 8 | FOR WEDNESDAY I THINK OUR SCHEDULE SHOWS, OR THE SCHEDULE |
| 09:04AM | 9 | I HAVE SHOWS THE FIRST MOTION UP IS GOVERNMENT'S MOTION IN |
| 09:05AM | 10 | LIMINE NUMBER 4 REGARDING CHARGING DECISIONS.  I THINK THAT'S |
| 09:05AM | 11 | WHAT IS UP. |
| 09:05AM | 12 | BUT BEFORE WE TAKE THAT UP, ANYTHING EITHER COUNSEL WANTS |
| 09:05AM | 13 | TO INDICATE FOR THE RECORD BEFORE WE START? |
| 09:05AM | 14 | MR. SCHENK:  NOTHING FROM THE GOVERNMENT.  THANK |
| 09:05AM | 15 | YOU. |
| 09:05AM | 16 | MS. SAHARIA:  NOTHING, YOUR HONOR. |
| 09:05AM | 17 | I WOULD JUST NOTE WE HAVE A NEW MEMBER OF OUR TEAM HERE |
| 09:05AM | 18 | TODAY, PATRICK LOOBY, WHO YOU HAVE MET BY ZOOM BUT NOT IN |
| 09:05AM | 19 | PERSON. |
| 09:05AM | 20 | THE COURT:  GOOD MORNING.  NICE TO SEE YOU. |
| 09:05AM | 21 | MR. LOOBY:  GOOD MORNING. |
| 09:05AM | 22 | THE COURT:  ALBEIT THROUGH THE PLEXIGLASS.  IT'S |
| 09:05AM | 23 | NICE TO SEE YOU.  I'M SURE WE ALL LOOK VERY DIFFERENT ON THE |
| 09:05AM | 24 | OTHER SIDE OF THE PLEXIGLASS. |
| 09:05AM | 25 | LET'S SEE.  MR. SCHENK, ARE YOU RISING TO THIS MOTION? |

09:05AM  1          MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

09:05AM  2          GOOD MORNING AGAIN.  JEFF SCHENK FOR THE UNITED STATES.

09:05AM  3          YOUR HONOR, I THINK THIS MOTION, THE GOVERNMENT'S 4TH

09:05AM  4  MOTION IN LIMINE, MAY FIT INTO THE CATEGORY OF THE ONES THAT WE

09:05AM  5  CAN DEAL WITH QUICKLY.

09:05AM  6          THE COURT WILL RECALL THAT IN THIS MOTION THE GOVERNMENT

09:05AM  7  IS SEEKING TO PRECLUDE ARGUMENTS FROM THE DEFENSE THAT ALLEGE

09:06AM  8  THAT THE CHARGING DECISIONS IN THIS CASE WERE BASED ON SOME

09:06AM  9  COORDINATION THAT, FRANKLY, DID NOT OCCUR BETWEEN THE

09:06AM 10  GOVERNMENT AND EITHER JOURNALISTS OR COMPETING LAB COMPANIES.

09:06AM 11          THE COURT KNOWS THAT DURING THE DOWNFALL OF THERANOS THERE

09:06AM 12  WERE STATEMENTS FROM MS. HOLMES AND OTHERS AT THERANOS THAT THE

09:06AM 13  RESPONSE TO THE MEDIA WAS BECAUSE OF MISGUIDED JOURNALISM OR

09:06AM 14  BECAUSE OF STORIES PLANTED BY COMPETING LAB COMPANIES.

09:06AM 15          SO THE GOVERNMENT IS EXPRESSING CONCERN WITH THOSE SAME

09:06AM 16  THEORIES.  THEY ARE GOING TO INFECT THIS TRIAL, AND THERE IS

09:06AM 17  JUST NO BASIS FOR.  THE U.S. ATTORNEY'S OFFICE, THE CRIMINAL

09:06AM 18  INVESTIGATORS DID NOT COORDINATE WITH JOURNALISTS, DID NOT

09:06AM 19  COORDINATE WITH LAB COMPANIES.  AND TO MAKE THOSE ARGUMENTS TO

09:06AM 20  THE JURY WOULD BE MAKING ARGUMENTS THAT SIMPLY ARE NOT TRUE.

09:06AM 21          THE DEFENSE IN RESPONSE SAYS THE LIMITS OF THE

09:06AM 22  GOVERNMENT'S STATEMENTS TO THE COURT ARE TELLING.  THAT IS, THE

09:07AM 23  GOVERNMENT'S STATEMENTS IN ITS MOTION WERE THAT THE PROSECUTION

09:07AM 24  AND THE CRIMINAL INVESTIGATORS DID NOT COORDINATE WITH LAB

09:07AM 25  COMPANIES OR WITH JOURNALISTS.

09:07AM 1      BUT IF YOU GO BACK FURTHER IN TIME, CMS SPOKE TO

09:07AM 2  JOURNALISTS, THERE WERE OTHER INTERVIEWS CONDUCTED OF LAB

09:07AM 3  COMPANIES, AND THAT THEY SHOULD BE ALLOWED TO MAKE THESE KIND

09:07AM 4  OF COORDINATION OR CHARGING DECISION-BASED ARGUMENTS.

09:07AM 5      I THINK AT FIRST IT WOULD BE HELPFUL FOR THE COURT TO JUST

09:07AM 6  KNOW IF THE DEFENSE PLANS TO MAKE THOSE ARGUMENTS.  IS IT,

09:07AM 7  HYPOTHETICALLY SPEAKING, WE SHOULD BE ALLOWED TO MAKE THEM:

09:07AM 8  OR, NO, JUDGE, YOU SHOULD DENY THE MOTION BECAUSE WE DO INTEND

09:07AM 9  TO AND THIS IS RIGHT.

09:07AM 10     I THINK THAT WOULD BE ILLUMINATING BECAUSE THERE MAY NOT

09:07AM 11 BE A CONTROVERSY FOR THE TO DECIDE IF THE DEFENSE DOES NOT

09:07AM 12 INTEND TO MAKE THOSE ARGUMENTS.

09:08AM 13     MOREOVER, IF THEY DO, THE COURT SHOULD PREVENT THEM.  THE

09:08AM 14 LINE OF CASES THAT THE DEFENSE CITES SUGGESTING THAT IT WOULD

09:08AM 15 BE APPROPRIATE TO MAKE THOSE ARGUMENTS ALL SPEAK TO IMPROPER

09:08AM 16 LIMITATIONS THAT THE COURT PLACED ON, FOR EXAMPLE,

09:08AM 17 CROSS-EXAMINATION OF AN AGENT ON THE STAND.

09:08AM 18     WHEN A DEFENSE ATTORNEY WANTED TO CALL INTO QUESTION THE

09:08AM 19 STRENGTH OF THE GOVERNMENT'S INVESTIGATION, A COURT INTERRUPTED

09:08AM 20 AND TOLD THE JURY, YOU'RE HERE TO GRADE THE PRODUCT OF THE

09:08AM 21 INVESTIGATION, THE EVIDENCE, NOT THE CONDUCT OF THE

09:08AM 22 INVESTIGATION, AND THE REVIEWING COURT SAID, NO, THAT'S NOT

09:08AM 23 APPROPRIATE, YOU CAN'T REALLY REVIEW ONE WITHOUT THE OTHER.

09:08AM 24     AND THAT ISN'T WHAT WOULD OCCUR HERE IF THE COURT

09:08AM 25 PRECLUDED THE DEFENSE FROM GOING INTO PRECRIMINAL INVESTIGATION

09:08AM  1    ALLEGED COORDINATION, AND THAT'S AN IMPORTANT DISTINCTION

09:08AM  2    BECAUSE THE GOVERNMENT'S CHARGING DECISIONS IN THIS CASE WERE

09:08AM  3    NOT, AND THE DEFENSE DOES NOT ALLEGE WERE, INFLUENCED BY

09:08AM  4    COORDINATION BETWEEN THE U.S. ATTORNEY'S OFFICE, THE

09:08AM  5    PROSECUTORS IN THE CASE, THE CRIMINAL INVESTORS --

09:09AM  6    INVESTIGATORS IN THE CASE, AND THE LAB INDUSTRY AND THE

09:09AM  7    JOURNALISTS, AND THAT'S AN IMPORTANT DISTINCTION BECAUSE THAT'S

09:09AM  8    ONE THAT IS NOT ASSUMED WITHIN THE CASE LAW THAT SAYS BROAD

09:09AM  9    DISCRETION TO ATTACK THE STRENGTH OF THE CRIMINAL

09:09AM  10   INVESTIGATION.

09:09AM  11        SO THE -- GRANTING THE MOTION WOULD NOT RUN AFOUL OF THOSE

09:09AM  12   CASES, AND IT REALLY SUGGESTS IF THE DEFENSE MAKES THOSE

09:09AM  13   ARGUMENTS THAT COORDINATION EXISTS WHERE IT REALLY DID NOT.

09:09AM  14        AGAIN, THIS IS JUST SORT OF A MOTION BASED ON ARGUE WHAT

09:09AM  15   THE FACTS ARE AND DON'T MISLEAD THE JURY.

09:09AM  16        THANK YOU.

09:09AM  17             THE COURT:  OKAY.  THANK YOU.

09:09AM  18        MR. WADE.

09:09AM  19             MR. WADE:  GOOD MORNING, YOUR HONOR.  LANCE WADE ON

09:09AM  20   BEHALF OF MS. HOLMES.

09:09AM  21        WE DO NOT INTEND TO ARGUE THAT THE GOVERNMENT CHARGING

09:09AM  22   DECISION WAS EXECUTED IN COORDINATION WITH JOURNALISTS OR

09:09AM  23   COMPETITORS, THAT IS TO SAY THAT THESE PROSECUTORS, YOU KNOW,

09:09AM  24   GOT IN A ROOM AND REACHED SOME AGREEMENT.

09:10AM  25             INTERACTIONS BETWEEN JOURNALISTS AND COMPETITORS AND OTHER

09:10AM 1   GOVERNMENT REGULATORS COULD BE RELEVANT IN THE CASE.  I

09:10AM 2   RECOGNIZE MR. SCHENK'S INVITATION TO PREVIEW ALL OF THE

09:10AM 3   EVIDENCE THAT WE WANT TO OFFER IN OUR DEFENSE.

09:10AM 4           THE COURT:  DO YOU WANT TO ACCEPT THAT INVITATION?

09:10AM 5           MR. WADE:  I'LL DECLINE THE INVITATION.

09:10AM 6       BUT SUFFICE IT TO SAY THAT THERE ARE WAYS IN WHICH CMS

09:10AM 7   WITNESSES, FDA WITNESSES, AND OTHERS WERE IN CONTACT WITH

09:10AM 8   COMPETITORS AND JOURNALISTS DURING KEY TIME PERIODS THAT COULD

09:10AM 9   WELL GO -- BE APPROPRIATE CROSS-EXAMINATION OF WITNESSES WHO

09:10AM 10  ARE CALLED TO TESTIFY IN THE CASE.

09:10AM 11      THEORETICALLY THERE COULD BE CROSS-EXAMINATION OF

09:10AM 12  GOVERNMENT INVESTIGATING AGENTS IF THERE'S SOME INDICATION THAT

09:10AM 13  THE INVESTIGATING AGENT ONLY PURSUED CERTAIN INVESTIGATION

09:10AM 14  BECAUSE IT WAS WHAT WAS REPORTED IN THE MEDIA AND DIDN'T PURSUE

09:10AM 15  OTHER INVESTIGATION, FOR EXAMPLE.

09:11AM 16      BUT THIS IS ALL IN THE CATEGORY OF EVIDENCE-SPECIFIC

09:11AM 17  ISSUES THAT SHOULD BE DEFERRED AND DEALT WITH AS WE DEAL WITH

09:11AM 18  EVIDENCE AT TRIAL.  WE'VE POINTED TO THIS EVIDENCE AS EXAMPLES

09:11AM 19  WITHIN OUR BRIEFING.

09:11AM 20      MR. LOOBY WILL ARGUE THE CMS MOTION LATER TODAY.  I THINK

09:11AM 21  YOU'LL SEE IN THAT MOTION THAT THERE IS SOME INDICATION THAT

09:11AM 22  THE CMS ACTED DIFFERENTLY AS A RESULT OF INQUIRIES FROM

09:11AM 23  JOURNALISTS AND THEY IMPOSED DIFFERENT PROCEDURES.

09:11AM 24      EVIDENCE OF THAT KIND IS PERFECTLY RELEVANT IN THIS CASE

09:11AM 25  IN TERMS OF QUESTIONING THE WITNESS WHO TALKS ABOUT THE

09:11AM  1   PROCEDURES THAT THEY DID DURING AN INSPECTION IF THAT EVIDENCE

09:11AM  2   COMES IN.  IT MAY NOT COME IN.  IT PROBABLY SHOULDN'T COME IN.

09:11AM  3       BUT IF IT DOES, THAT CROSS-EXAMINATION IS CLEARLY RELEVANT

09:11AM  4   AND --

09:11AM  5            THE COURT:  PARDON ME FOR INTERRUPTING YOU.

09:12AM  6       YOU'RE TALKING ABOUT, FOR EXAMPLE, THE CALIFORNIA

09:12AM  7   DEPARTMENT OF PUBLIC HEALTH TYPICALLY DOES A CERTAIN TYPE OF

09:12AM  8   INVESTIGATION, BUT IN THIS CASE ANOTHER FEDERAL AGENCY DECIDED

09:12AM  9   TO DO IT ON THEIR OWN AND YOU SHOULD BE ABLE TO, IF THAT

09:12AM 10   EVIDENCE IS PERMITTED, YOU SHOULD BE ABLE TO INQUIRE ABOUT WHY

09:12AM 11   THAT DISTINCTION WAS MADE.  IT'S -- IS THAT WHAT YOU'RE TALKING

09:12AM 12   ABOUT?

09:12AM 13            MR. WADE:  THAT IS AN EXAMPLE, YOUR HONOR.

09:12AM 14       AND THAT WITNESS HAS SAID ESSENTIALLY THAT IT WAS MADE

09:12AM 15   BECAUSE IT HAD A HEIGHTENED PROFILE, BECAUSE IT WAS IN THE

09:12AM 16   MEDIA AND THEY WERE GETTING INQUIRIES FROM JOURNALISTS IN THAT

09:12AM 17   TIME PERIOD.

09:12AM 18       THERE ARE OTHER WITNESSES WHO SUGGESTS THAT THERE WERE

09:12AM 19   DOCUMENTS FROM CMS THAT SUGGEST THAT MAYBE THERANOS WAS BEING

09:12AM 20   TREATED DIFFERENTLY BECAUSE OF THE SOME OF THE MEDIA INQUIRIES.

09:12AM 21       AGAIN, I DON'T --

09:12AM 22            THE COURT:  SO DO YOU HAVE -- IS THERE GOING TO BE

09:12AM 23   EVIDENCE, TO THE EXTENT THAT YOU CAN TELL ME NOW, IS THERE

09:12AM 24   EVIDENCE THAT THE GOVERNMENT COORDINATED WITH JOURNALISTS TO DO

09:13AM 25   THIS INVESTIGATION? -

09:13AM  1        MR. WADE:  BY "GOVERNMENT" YOU MEAN THE PROSECUTORS

09:13AM  2   WHO ARE INVOLVED IN THIS CASE, THE DEPARTMENT OF JUSTICE

09:13AM  3   PROSECUTORS?

09:13AM  4        THE COURT:  WELL, LET'S START THERE AND WORK OUR WAY

09:13AM  5   DOWN.

09:13AM  6        MR. WADE:  I HAVE NOT SEEN EVIDENCE THAT THEY HAVE

09:13AM  7   COORDINATED AND WOULD NOT INTEND TO ARGUE THAT THEY COORDINATED

09:13AM  8   AS SUCH.

09:13AM  9      AND TO THE EXTENT THAT YOU LOOK AT THE TITLE OF THE

09:13AM 10   GOVERNMENT'S MOTION, COORDINATION WITH RESPECT TO CHARGING

09:13AM 11   DECISIONS, WE CAN LIVE WITH AN ORDER ON THAT.

09:13AM 12      BUT THE BODY OF THEIR ARGUMENT TRIES TO CREEP A LITTLE BIT

09:13AM 13   MORE INTO CROSS-EXAMINATION THAT GOES TO MOTIVE FOR CERTAIN

09:13AM 14   ACTIONS AND THINGS THAT THE GOVERNMENT MAY CHOOSE TO BRING INTO

09:13AM 15   THIS CASE.  IF THEY CHOOSE TO BRING IT INTO THE CASE, WE GET TO

09:13AM 16   CROSS-EXAMINE THE WITNESSES.

09:13AM 17        THE COURT:  I THINK EVERYONE RECOGNIZES THAT THE

09:13AM 18   DEFENSE WILL HAVE AN OPPORTUNITY, AND SHOULD, TO CRITICIZE THE

09:13AM 19   DEFENSE -- OR CRITICIZE THE PROSECUTION.  YOU HAVE AN ABSOLUTE

09:13AM 20   RIGHT TO CRITICIZE THE EVIDENCE THAT IS PRESENTED OF AND TEST

09:13AM 21   THE EVIDENCE.  THAT'S THE JURY PROCESS.

09:14AM 22      YOU HAVE THE RIGHT TO DO THAT.

09:14AM 23      I THINK WHAT THIS MOTION SPEAKS TO IS YOU CAN'T CREATE

09:14AM 24   SOMETHING THAT DOESN'T EXIST, AND THE COORDINATION, I THINK,

09:14AM 25   THAT MR. SCHENK SPEAKS TO IS -- AND THIS IS PROPHYLACTIC, I

09:14AM 1    THINK, FROM THE GOVERNMENT'S PERSPECTIVE.  THERE'S FEAR THAT

09:14AM 2    PERHAPS THE DEFENSE MIGHT SAY THAT THE ONLY REASON THIS CASE

09:14AM 3    WAS PROSECUTED IN THE WAY THAT IT WAS IS BECAUSE CERTAIN

09:14AM 4    JOURNALISTS, CERTAIN NEWS ARTICLES, CERTAIN MEDIA DECIDED TO

09:14AM 5    GUIDE THE PROSECUTION AND BUT FOR THAT OR IN ANY OTHER CASE

09:14AM 6    THAT WOULDN'T HAVE HAPPENED.

09:14AM 7         IS THAT FAIR, MR. SCHENK?

09:14AM 8              MR. SCHENK:  YES.  PRECISELY.  THANK YOU.

09:14AM 9              MR. WADE:  WE CERTAINLY DON'T INTEND TO CREATE

09:14AM 10   EVIDENCE WHERE NONE EXISTS AND TO CREATE ARGUMENTS THAT ARE NOT

09:14AM 11   BASED ON EVIDENCE.  THAT WOULD BE IMPROPER AS THE COURT KNOWS

09:14AM 12   AND AS COUNSEL WELL KNOWS.

09:14AM 13        SO WE'RE MINDFUL OF THAT LINE AND DON'T INTEND TO CROSS

09:14AM 14   IT.  WE'LL SEE WHERE THE EVIDENCE GOES BASED ON WHAT THE

09:15AM 15   GOVERNMENT OFFERS AND BASED ON WHAT WE SEEK TO PUT ON, AND IF

09:15AM 16   MEDIA OR COMPETITORS OR INTERACTIONS ARE RELEVANT WITH

09:15AM 17   WITNESSES, WE'LL DRAW THAT EVIDENCE OUT AND WE'LL ARGUE IT AS

09:15AM 18   APPROPRIATE IN THE CASE.

09:15AM 19        BUT I THINK -- I UNDERSTAND THE CONCERN AND I UNDERSTAND

09:15AM 20   THAT THERE MAY BE SOME DESIRE TO AVOID THAT.  THE SPECIFIC

09:15AM 21   ISSUE THAT THE COURT HAS RAISED SHOULD NOT BE A CONCERN.

09:15AM 22              THE COURT:  GREAT.  OKAY.

09:15AM 23        MR. SCHENK, ANYTHING ELSE?

09:15AM 24              MR. SCHENK:  NOTHING FURTHER.

09:15AM 25              THE COURT:  GREAT.  I THINK IT'S IMPORTANT THAT WE

09:15AM  1    HAVE THESE DISCUSSIONS NOW AT THIS HEARING AS BOTH SIDES

09:15AM  2    CONTINUE TO PREPARE YOUR CASES, AND THIS IS INFORMATIVE FOR THE

09:15AM  3    COURT ALSO TO RECOGNIZE IN MY NOTES WHAT WE MIGHT ANTICIPATE

09:15AM  4    AND THOSE ISSUES THAT WOULD COME UP.

09:15AM  5         SO THIS MOTION -- I THINK IN REGARDS TO THE MOTION I'LL

09:15AM  6    DEFER THE MOTION AND RECOGNIZING THE ISSUES THAT ARE PRESENTED,

09:16AM  7    THE STATEMENTS OF BOTH COUNSEL, AND SHOULD THIS COME UP, THE

09:16AM  8    COURT WILL RULE ON ANY SPECIFIC AREA AS NEEDED DURING THE

09:16AM  9    TRIAL.

09:16AM  10        ALL RIGHT.  THANK YOU.

09:16AM  11        NEXT I BELIEVE IS GOVERNMENT'S MOTION IN LIMINE NUMBER 5,

09:16AM  12   TO PRECLUDE THE DEFENDANT FROM PRESENTING AN IMPROPER

09:16AM  13   GOOD-FAITH DEFENSE.

09:16AM  14        MR. BOSTIC.

09:16AM  15         MR. BOSTIC:  YES, YOUR HONOR.  GOOD MORNING.

09:16AM  16   JOHN BOSTIC FOR THE UNITED STATES.

09:16AM  17        I BELIEVE THERE'S A SIGNIFICANT AMOUNT OF AGREEMENT ON

09:16AM  18   THIS MOTION ALSO BETWEEN THE PARTIES.  THERE SEEMS TO BE NO

09:16AM  19   DISPUTE THAT THE NINTH CIRCUIT HAS CLEARLY LAID OUT THE LAW,

09:16AM  20   THE RULE THAT A GOOD FAITH BELIEF THAT A FRAUD VICTIM WILL BE

09:16AM  21   REPAID IS NO DEFENSE TO A CHARGE OF FRAUD.

09:16AM  22        SO IN THIS CASE, OF COURSE, BASED ON THE ELEMENTS, THE

09:16AM  23   FOCUS OF THE JURY -- THE FOCUS OF THE EVIDENCE AT TRIAL WILL BE

09:16AM  24   ON THE DEFENDANT'S STATE OF MIND AND HER INTENT AT THE TIME THE

09:17AM  25   FRAUD WAS CARRIED OUT.

09:17AM  1        OF COURSE BOTH CATEGORIES OF FRAUD IN THE INDICTMENT ARE

09:17AM  2   BASED ON THE VICTIM SCHEMES TO DEFRAUD FIRST INVESTORS, AND

09:17AM  3   ALSO PATIENTS, AND TO SEPARATE THEM FROM THEIR MONEY BY

09:17AM  4   MISLEADING STATEMENTS.

09:17AM  5        THOSE DEFENSES CRIMINALIZE THE SCHEME TO DEFRAUD ITSELF.

09:17AM  6   SO, IN FACT, THE OFFENSES, ALONG WITH THE CONSPIRACY OFFENSES,

09:17AM  7   ARE COMPLETE BEFORE THE VICTIMS ARE EVEN SEPARATED FROM THEIR

09:17AM  8   MONEY.

09:17AM  9        THE PLANS DOWN THE ROAD OF A DEFENDANT TO RESTORE PROPERTY

09:17AM 10   OR MONEY TO VICTIMS HAVE NO IMPORT IN A TRIAL OF THIS KIND.

09:17AM 11   THEY HAVE NO EFFECT ON WHETHER FRAUD HAS BEEN COMMITTED.

09:17AM 12   EFFORTS TO RESTORE MONEY TO VICTIMS CANNOT UNDO A FRAUD OFFENSE

09:17AM 13   ONCE IT'S BEEN COMMITTED.

09:17AM 14        AND CRITICALLY FROM THE BENNY OPINION IN THE

09:18AM 15   NINTH CIRCUIT, THAT'S 786 F.2D 1410, THE DEFENDANT'S INTENT

09:18AM 16   THAT VICTIMS OF THE FRAUD ULTIMATELY BE REPAID OR HAVE THEIR

09:18AM 17   PROPERTY RESTORED IS NOT A PROPER DEFENSE TO ASSERT AT TRIAL.

09:18AM 18        SO THE GOVERNMENT IS SIMPLY SEEKING AN ORDER FROM THE

09:18AM 19   COURT ENFORCING THE RULE THAT BOTH PARTIES SEEM TO RECOGNIZE.

09:18AM 20        THE DEFENSE OBJECTS THAT THEY SHOULD BE PERMITTED,

09:18AM 21   HOWEVER, TO ARGUE THAT THE DEFENDANT HAD A GOOD FAITH BELIEF IN

09:18AM 22   THE TRUTH OF ANY REPRESENTATION THAT SHE MADE.

09:18AM 23        THE GOVERNMENT IS NOT SEEKING TO PRECLUDE THOSE ASSERTIONS

09:18AM 24   OR THAT ARGUMENT.  AND, IN FACT, THE GOVERNMENT ITSELF QUOTED

09:18AM 25   THE LANGUAGE IN BENNY THAT MAKES IT CLEAR THAT THAT IS A

09:18AM 1    PERMISSIBLE TYPE OF GOOD FAITH DEFENSE.

09:18AM 2         THE GOVERNMENT'S MOTION IS SIMPLY SEEKING TO PRECLUDE AN

09:18AM 3    IMPROPER GOOD FAITH DEFENSE AND BELIEVES THE COURT IS CAPABLE

09:18AM 4    OF CRAFTING AN ORDER THAT WILL ENFORCE THAT RULE.

09:18AM 5         THE COURT:  THANK YOU.

09:18AM 6         MR. WADE, I THINK WHEN I LOOKED AT THIS, I THINK IT ASKED

09:19AM 7    US TO EITHER CONCUR OR NOT IN THE DECISION IN BENNY.

09:19AM 8         MR. WADE:  YOUR HONOR, I DON'T THINK WE NEED AN

09:19AM 9    ORDER THAT WE HAVE TO ADHERE TO THE LAW OF THE NINTH CIRCUIT.

09:19AM 10   I THINK THE NINTH CIRCUIT IS BINDING PRECEDENT AND WE HAVE TO

09:19AM 11   ADHERE TO IT.

09:19AM 12        BENNY IS A VERY LIMITED HOLDING.  A PROFFERED INSTRUCTION

09:19AM 13   THERE WAS A DEFENSE INSTRUCTION ON A GOOD FAITH INTENT TO

09:19AM 14   REPAY.  THAT INSTRUCTION WAS DENIED.

09:19AM 15        IT SHOULD BE DENIED HERE IF WE OFFER IT.  I SUGGEST WE

09:19AM 16   DON'T INTEND TO OFFER IT.  I THINK THE BRIEFING MAKES CLEAR

09:19AM 17   THAT WE KNOW WHERE THE LINES ARE ON GOOD FAITH AND I DON'T

09:19AM 18   THINK AN ORDER IS NEEDED HERE.

09:19AM 19        I THINK THIS ONE CAN BE EITHER DENIED OR DEFERRED AS THE

09:19AM 20   EVIDENCE IS CONSIDERED THROUGHOUT THE CASE.

09:19AM 21        I WOULD LIKE TO MAKE CLEAR, WE -- COUNSEL FOR THE

09:19AM 22   GOVERNMENT SORT OF BLENDED A LITTLE BIT BETWEEN STATE OF MIND

09:20AM 23   AND ACTUS REUS IN SOME OF THE DISCUSSIONS ABOUT EFFORTS TO DO

09:20AM 24   THINGS, AND THAT'S NOT IN THIS MOTION.

09:20AM 25        THIS MOTION RELATES TO GOOD FAITH INTENT.  THAT WILL

09:20AM 1     UNDOUBTEDLY BE A PART OF THIS CASE.

09:20AM 2               THE COURT:  SURE.  OKAY.  THANK YOU.

09:20AM 3               MR. WADE:  THANK YOU.

09:20AM 4               THE COURT:  THANK YOU VERY MUCH.  THANK YOU.

09:20AM 5          WELL, LET ME SAY IN REGARDS TO THIS MOTION, THAT IS,

09:20AM 6     GOVERNMENT'S MIL NUMBER 5, THE COURT WILL -- AS MR. WADE

09:20AM 7     SUGGESTS AND RECOGNIZES, THE COURT WILL FOLLOW THE LAW OF THE

09:20AM 8     NINTH CIRCUIT AND THAT, OF COURSE, INCLUDES A HOLDING IN THE

09:20AM 9     DIRECTION THAT THE NINTH CIRCUIT PROVIDED US, UNITED STATES

09:20AM 10    VERSUS BENNY -- EXCUSE ME -- 786 F.2D 1210, AND THE COURT

09:20AM 11    INTENDS TO FOLLOW THE PRECEDENT IN THAT CASE, AND I APPRECIATE

09:20AM 12    COUNSEL RECOGNIZING THAT AND AGREE TO FOLLOW IT AS WELL.

09:20AM 13         CONCURRENT WITH THIS IS, PURSUANT TO MR. BOSTIC'S

09:20AM 14    OBSERVATION, THIS DOES NOT PRECLUDE THE DEFENDANT OR THE

09:21AM 15    DEFENSE FROM ARGUING A GOOD FAITH BELIEF AS A DEFENSE.  THAT'S

09:21AM 16    THE SECOND PART THAT WAS IDENTIFIED IN BENNY THAT IS PRECLUDED

09:21AM 17    IN THIS CASE.

09:21AM 18         SO THANK YOU FOR THAT.

09:21AM 19         NOW WE COME TO 560, WHICH IS MS. HOLMES'S MOTION REGARDING

09:21AM 20    DR. MASTER.

09:21AM 21              MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

09:21AM 22              THE COURT:  GOOD MORNING.

09:21AM 23              MS. SAHARIA:  AMY SAHARIA FOR MS. HOLMES.

09:21AM 24              THE COURT:  THANK YOU.  GOOD MORNING.

09:21AM 25         MAY I MAKE SOME OBSERVATIONS THAT MIGHT BE HELPFUL HERE?

09:21AM 1       I HOPE THEY'RE HELPFUL.  I DON'T KNOW.

09:21AM 2               MS. SAHARIA:  YES, OF COURSE, YOUR HONOR.

09:21AM 3               THE COURT:  YOU CAN TELL ME IF THEY ARE OR NOT AND

09:21AM 4       I'M HAPPY TO RECEIVE THAT.

09:21AM 5           SO I READ THIS -- AND THIS IS A VERY INVOLVED AREA, OF

09:21AM 6       COURSE, WHENEVER WE'RE TALKING ABOUT THE EXPERT PIECE OF A

09:21AM 7       PROFFERED WITNESS HERE, AND HERE WE'RE SPEAKING -- THIS MOTION

09:22AM 8       SPEAKS TO DR. STEPHEN MASTER, THAT'S THE GOVERNMENT'S EXPERT

09:22AM 9       WHO HAS BEEN IDENTIFIED AS THE EXPERT HERE.

09:22AM 10          THERE ARE DIFFERENT AREAS AND TOPICS THAT THIS WITNESS

09:22AM 11      WOULD -- THAT THE GOVERNMENT SEEKS THIS WITNESS TO TESTIFY

09:22AM 12      ABOUT.  THERE'S A COUPLE OF ISSUES -- LET ME JUST TELL YOU, I

09:22AM 13      THINK I'LL INDICATE IT THIS WAY:  THE COURT CAN GIVE, I HOPE I

09:22AM 14      CAN GIVE YOU THIS FOR SOME BENEFIT TO YOU FOR YOUR DISCUSSION,

09:22AM 15      AND I DON'T KNOW WHO IS SPEAKING TO THIS.

09:22AM 16          MR. LEACH, ARE YOU TALKING?

09:22AM 17              MR. LEACH:  I WILL BE SPEAKING TO THIS, YES.

09:22AM 18              THE COURT:  OKAY.  GREAT.  THANK YOU.

09:22AM 19          SO IN READING YOUR PLEADINGS, AND AS THEY ALWAYS ARE IN

09:22AM 20      THIS CASE, THEY'RE VERY THOROUGH AND VERY HELPFUL, I LOOK AT

09:22AM 21      THE INDUSTRY STANDARDS AND THE QUESTION ABOUT WHETHER OR NOT

09:22AM 22      THIS WITNESS CAN TESTIFY ABOUT INDUSTRY STANDARDS.

09:22AM 23          AND I DO BELIEVE THAT THE WITNESS -- AND AGAIN, THIS IS MY

09:22AM 24      PRELIMINARY OBSERVATIONS -- THAT HE IS QUALIFIED TO TESTIFY

09:23AM 25      ABOUT INDUSTRY STANDARDS.  I THINK HE DOES HAVE, AND HIS

09:23AM 1     INFORMATION THAT I'VE RECEIVED SUGGESTS, THAT HE DOES HAVE THE

09:23AM 2     BACKGROUND, THE ABILITY, THE KNOWLEDGE TO TESTIFY ABOUT THIS,

09:23AM 3     INDUSTRY STANDARDS, AS LONG AS HE DOES NOT PROVIDE LEGAL

09:23AM 4     OPINIONS.  AND I WOULDN'T ALLOW HIM TO OPINE WITH ANY LEGAL

09:23AM 5     OPINIONS AS TO INDUSTRY STANDARDS.

09:23AM 6         AS TO FINGERSTICK, FINGERSTICK TECHNOLOGY, I DO THINK THAT

09:23AM 7     HE IS QUALIFIED, BASED ON HIS BACKGROUND AND HIS KNOWLEDGE, TO

09:23AM 8     OPINE ON FINGERSTICK BLOOD TESTING.  HE IS A CLINICAL

09:23AM 9     PATHOLOGIST AND HE HAS GREAT EXPERIENCE IN THAT BACKGROUND IN

09:23AM 10    THOSE AREAS, AND I DO THINK HE CAN TESTIFY AS TO THIS TESTING

09:23AM 11    AND OFFER AN OPINION ABOUT THAT.

09:23AM 12        NOTWITHSTANDING THE FACT -- AND I UNDERSTAND THE DEFENSE

09:23AM 13    IS CRITICAL OF HIM BECAUSE HE DOES NOT HAVE HANDS-ON, IF YOU

09:24AM 14    WILL, EXPERIENCE IN THAT REGARD.  BUT, AGAIN, I DO THINK THIS

09:24AM 15    IS A PRELIMINARY RULING.

09:24AM 16        GETTING INTO THE SPECIFIC TESTIMONY ABOUT THE DIFFERENT

09:24AM 17    ASSAYS, I DO HAVE SOME ISSUES ABOUT SOME OF THOSE.  LET ME JUST

09:24AM 18    INDICATE THAT I DO THINK THAT HIS OPINIONS ON VITAMIN D AND

09:24AM 19    CHOLESTEROL ARE PERMITTED.  HE WOULD BE PERMITTED TO TESTIFY ON

09:24AM 20    THOSE.

09:24AM 21        IT SEEMS FROM YOUR PLEADINGS THAT THE GOVERNMENT AND THE

09:24AM 22    DEFENSE, I THINK YOU BOTH RECOGNIZE THAT HIS OPINIONS ON

09:24AM 23    THOSE -- AS TO THOSE TWO SUBSTANCES, ASSAYS, DERIVED FROM THE

09:24AM 24    ICAHN, I-C-A-H-N, AND THE CMS REPORT, AND THOSE ARE PROPER

09:24AM 25    SOURCES FROM WHICH TO BASE AN OPINION.

09:24AM 1     I DO THINK THAT HIS OPINION ON THOSE ARE APPROPRIATELY

09:24AM 2     SUPPORTED AND HE WOULD BE PERMITTED TO TESTIFY HIS OPINIONS ON

09:24AM 3     THOSE ASSAYS.

09:25AM 4     THE POTASSIUM, CHLORIDE SODIUM, AND THE OTHERS, I THINK I

09:25AM 5     HAVE SOME PROBLEMS WITH.  I THINK THERE ARE SOME DEFICIENCIES

09:25AM 6     AS TO AT LEAST WHAT WE HAVE IN HIS 20-PAGE REPORT AND I DO FIND

09:25AM 7     SOME PROBLEMS.

09:25AM 8     THIS IS TO THE GOVERNMENT I SUPPOSE I'M SPEAKING.  I DO

09:25AM 9     HAVE SOME ISSUES WITH THOSE OPINIONS, AND IT WOULD BE THE

09:25AM 10    COURT'S INTENT TO SCHEDULE A DAUBERT HEARING AS TO THOSE

09:25AM 11    OPINIONS.  I THINK IT WOULD BE APPROPRIATE TO ALLOW THE

09:25AM 12    GOVERNMENT AND DR. MASTER TO PROVIDE ADDITIONAL INFORMATION

09:25AM 13    THAT WOULD ENABLE THE COURT TO DETERMINE WHETHER OR NOT THOSE

09:25AM 14    OPINIONS CAN BE SUPPORTED, SUBSTANTIATED FURTHER.

09:25AM 15    AND HE MAY BE ABLE TO PROVIDE ADDITIONAL INFORMATION

09:25AM 16    BEYOND HIS 20-PAGE REPORT.  I THINK 10 PAGES OF IT WERE TALKING

09:25AM 17    ABOUT BACKGROUND AND THE TESTING PROCEDURES, AND THEN THERE

09:26AM 18    WERE -- THE BALANCE I THINK DRILLED DOWN INTO THESE ISSUES.

09:26AM 19    I'M NOT BEING CRITICAL OF THE REPORT.  WHAT I'M SAYING IS

09:26AM 20    THAT I THINK I NEED MORE BEFORE I WOULD PERMIT HIM TO TESTIFY.

09:26AM 21    AND I'M GOING TO GIVE THE GOVERNMENT THAT OPPORTUNITY,

09:26AM 22    THROUGH A DAUBERT HEARING, FOR THOSE PARTICULAR TOPICS.

09:26AM 23         MS. SAHARIA:  THANK YOU, YOUR HONOR.  I THINK THAT'S

09:26AM 24    HELPFUL AND THAT WILL HELP STREAMLINE MY PRESENTATION

09:26AM 25    SIGNIFICANTLY.

09:26AM 1          SO I THINK MAYBE I CAN TAKE THIS IN MAYBE THREE BUCKETS.

09:26AM 2          LET ME START WITH THE ASSAYS, AND LET ME START WITH THE

09:26AM 3    EIGHT THAT YOUR HONOR INDICATED THAT YOU HAVE CONCERNS WITH,

09:26AM 4    WHICH WE, OF COURSE, SHARE.

09:26AM 5          THEN I'LL MOVE AND DISCUSS CHOLESTEROL AND VITAMIN D, AND

09:26AM 6    THEN I'LL CONCLUDE WITH INDUSTRY STANDARDS.

09:26AM 7          I DO THINK THAT IT WOULD BE IMPERMISSIBLE FOR THE COURT TO

09:27AM 8    ALLOW DR. MASTER TO OPINE AS TO THOSE EIGHT ASSAYS WITHOUT

09:27AM 9    AFFORDING THE DEFENSE A DAUBERT HEARING.  LET ME TRY TO

09:27AM 10   CONVINCE THE COURT WHY WE DON'T EVEN THINK THAT YOU SHOULD GET

09:27AM 11   TO A DAUBERT HEARING, BECAUSE HIS OPINIONS ON THOSE EIGHT

09:27AM 12   ASSAYS ARE SO DEFICIENT.

09:27AM 13         AND I THINK IT'S TELLING THAT YOUR HONOR POINTED OUT THAT

09:27AM 14   KIND OF A PAUCITY OF INFORMATION IN HIS REPORT ON THOSE ASSAYS.

09:27AM 15         I THINK WHAT IS ALSO TELLING IS THE PAUCITY OF THE

09:27AM 16   GOVERNMENT'S DEFENSE OF THOSE OF ASSAYS.  THEIR OPPOSITION

09:27AM 17   BRIEF IS ECF 668, AND THEY DEFEND HIS OPINIONS AS TO THE ASSAYS

09:27AM 18   ON PAGES 6 TO 9 OF THAT BRIEF.  AND THEY CITE NO CASE, THERE'S

09:27AM 19   NO CASE IN THEIR OPPOSITION DEFENDING DR. MASTER'S OPINIONS ON

09:27AM 20   THOSE ASSAYS.

09:27AM 21         THEY CITE KIND OF THE GENERIC DAUBERT PRINCIPLES IN THE

09:27AM 22   BEGINNING OF THEIR BRIEF, BUT WHEN IT COMES TO SHOWING THE

09:27AM 23   COURT ANOTHER CASE WHERE A COURT HAS ALLOWED AN EXPERT TO OFFER

09:28AM 24   SCIENTIFIC OPINIONS BASED ON EMAILS AND CUSTOMER COMPLAINTS.

09:28AM 25   THEY HAVE NO CASE, NO CASE THAT HAS SUBMITTED SIMILAR OPINIONS.

09:28AM 1          THEY CITE NO SCIENTIFIC LITERATURE THAT ESTABLISHES THAT

09:28AM 2     IS A SCIENTIFICALLY VALID WAY TO REACH THESE SCIENTIFIC

09:28AM 3     CONCLUSIONS, AND THAT'S BECAUSE IT IS NOT A SCIENTIFICALLY

09:28AM 4     VALID WAY TO REACH OPINIONS ON THE SCIENTIFICALLY COMPLEX ISSUE

09:28AM 5     OF ACCURACY AND RELIABILITY.

09:28AM 6          THAT SHOULD GIVE THE COURT GREAT PAUSE, AND WE WOULD

09:28AM 7     WELCOME A DAUBERT HEARING IF THAT'S WHAT THE COURT DECIDES TO

09:28AM 8     DO, BUT NO HEARING IS GOING TO SUPPLANT THAT -- IS GOING TO

09:28AM 9     PRODUCE MATERIAL THAT DOESN'T EXIST.  THE DATA DOESN'T EXIST.

09:28AM 10    WE KNOW WHY IT DOESN'T EXIST.  WE TALKED ABOUT THAT YESTERDAY,

09:28AM 11    AND THAT'S WHY DR. MASTER IS LEFT TO OFFER OPINIONS BASED ON

09:28AM 12    EMAILS AND CUSTOMER COMPLAINTS.

09:28AM 13         THE EIGHT ASSAYS THAT YOUR HONOR INDICATED, THEY FALL INTO

09:29AM 14    TWO BUCKETS.  AS I THINK YOU KNOW, FOUR OF THOSE, WHICH ARE --

09:29AM 15    CAN I JUST PUT UP THE ELMO?

09:29AM 16              MR. WADE:  YES.

09:29AM 17              MS. SAHARIA:  THANK YOU.

09:29AM 18         YOUR HONOR, THIS IS APPENDIX A TO OUR MOTION, AND THOSE

09:29AM 19    EIGHT ASSAYS FALL INTO TWO GROUPS.  THERE ARE FOUR WHICH ARE

09:29AM 20    CALCIUM, HBA1C, HCG, AND HIV, THESE ARE THE ASSAYS FOR WHICH

09:29AM 21    DR. MASTER WAS ASKED TO OFFER AN OPINION THAT THE ASSAYS ARE

09:29AM 22    ACCURATE AND RELIABLE, AND HE WAS UNABLE TO REACH THAT OPINION.

09:29AM 23         AT EXHIBIT 9 OF OUR EXHIBITS, HE EXPLAINED THAT TO FULLY

09:29AM 24    RENDER THE OPINION THAT THE GOVERNMENT WAS LOOKING FOR, HE WAS

09:29AM 25    LOOKING FOR DOCUMENTS THAT SPECIFICALLY RELATE TO THESE FOUR

09:30AM 1    ASSAYS, AND PRESUMABLY THE GOVERNMENT WAS UNABLE TO GIVE HIM

09:30AM 2    THOSE DOCUMENTS BECAUSE HE WAS UNABLE TO OFFER AN ACTUAL

09:30AM 3    OPINION ABOUT ACCURACY AND RELIABILITY.

09:30AM 4         HE ESSENTIALLY, AS TO THESE FOUR, OFFERS A NONOPINION.  HE

09:30AM 5    SAID, AND I QUOTE AT REPORT 15, "BASED ON CUSTOMER COMPLAINTS

09:30AM 6    ON THERANOS'S INTERNAL INVESTIGATIONS, THERE WERE SIGNIFICANT

09:30AM 7    ISSUES WITH CALCIUM, HBA1C, HCG, AND HIV DURING THE TIMES THAT

09:30AM 8    THESE WERE PERFORMED ON FINGERSTICK SAMPLES.  IN SOME CASES

09:30AM 9    THERE ARE INSUFFICIENT ADDITIONAL DETAILS OF THE MATERIAL I

09:30AM 10   HAVE REVIEWED TO DETERMINE THE CAUSE OF THESE ISSUES, THE

09:30AM 11   RELATIONSHIP TO ADDED EITHER THE SAMPLE TYPE OR THERANOS'S

09:30AM 12   TECHNOLOGY OR THE RESOLUTION OF THE PROBLEM."

09:30AM 13        WE DON'T KNOW WHAT HE MEANS BY "ISSUES," WE DON'T KNOW

09:30AM 14   WHAT CUSTOMER COMPLAINTS HE LOOKED AT, AND HE DOES NOT

09:30AM 15   ARTICULATE THAT THAT IS A VALID SCIENTIFIC METHODOLOGY TO REACH

09:30AM 16   AN OPINION, AND HE DOESN'T EVEN REACH AN OPINION.  HE DOESN'T

09:30AM 17   HAVE AN OPINION AS TO THESE FOUR.  THEY MIGHT BE INACCURATE,

09:31AM 18   THEY MIGHT NOT BE INACCURATE, AND THAT'S COMPLETELY UNHELPFUL

09:31AM 19   TO A JURY.

09:31AM 20        I THINK IN THAT REGARD HIS OPINION AS TO THESE FOUR ARE

09:31AM 21   JUST LIKE THE OPINIONS THAT THE NINTH CIRCUIT REJECTED IN

09:31AM 22   DAUBERT ON REMAND FROM THE SUPREME COURT WHERE THE EXPERT

09:31AM 23   ADVANCED THE OPINION THAT A MEDICATION COULD POSSIBLY HAVE

09:31AM 24   CAUSED INJURIES, AND THE NINTH CIRCUIT SAID THAT KIND OF

09:31AM 25   POSSIBLE CAUSE OPINION IS NOT HELPFUL TO A JURY AND IS

09:31AM   1      INADMISSIBLE.

09:31AM   2          AND THAT'S EFFECTIVELY WHAT DR. MASTER IS OFFERING AS TO

09:31AM   3      THESE FOUR.  THERE MIGHT BE PROBLEMS.  I DON'T KNOW WHAT THE

09:31AM   4      PROBLEMS ARE, I DON'T KNOW WHAT CAUSED THEM.  JURY, YOU FIGURE

09:31AM   5      THAT OUT.

09:31AM   6          THAT'S NOT A PROPER EXPERT OPINION.

09:31AM   7          AS TO THE REMAINING FOUR IN THIS FIRST BUCKET -- AND THOSE

09:31AM   8      ARE, JUST FOR THE RECORD, BICARBONATE, CHLORIDE, POTASSIUM, AND

09:32AM   9      SODIUM -- I THINK THE COURT CAN AT THIS STAGE EASILY EXCLUDE

09:32AM  10      HIS OPINION ON BICARBONATE.  HE OFFERS NO BASIS WHATSOEVER, AND

09:32AM  11      THE GOVERNMENT DIDN'T DEFEND THAT ONE IN ITS OPPOSITION.

09:32AM  12          AS TO CHLORIDE, SODIUM, AND POTASSIUM, AGAIN, DR. MASTER

09:32AM  13      BASES HIS OPINION ON UNIDENTIFIED CUSTOMER COMPLAINTS AND

09:32AM  14      INTERNAL EMAILS.

09:32AM  15          AND WHEN WE INDICATED IN OUR MOTION THAT THAT IS NOT A

09:32AM  16      PROPER METHODOLOGY, THE MOST THE GOVERNMENT COULD MUSTER IS

09:32AM  17      THAT THAT METHODOLOGY IS IMPLICIT IN HIS OPINION.

09:32AM  18          THAT CLEARLY IS A RED FLAG BECAUSE THE NINTH CIRCUIT

09:32AM  19      REQUIRES THAT AN EXPERT EXPRESSLY STATE HIS METHODOLOGY.

09:32AM  20          AGAIN, THE GOVERNMENT HAS CITED THE COURT TO ZERO CASES,

09:32AM  21      ZERO ACADEMIC LITERATURE ESTABLISHING THAT TO BE A VALID

09:32AM  22      METHODOLOGY FOR A SCIENTIST TO REACH SCIENTIFIC CONCLUSIONS.

09:33AM  23          SO UNLESS THE COURT HAS QUESTIONS ABOUT THOSE EIGHT, LET

09:33AM  24      ME MOVE TO CHOLESTEROL AND VITAMIN D.

09:33AM  25              THE COURT:  THAT'S FINE, THANK YOU.

09:33AM 1        MS. SAHARIA:  AS TO THE CHOLESTEROL OPINION, AS

09:33AM 2    YOUR HONOR INDICATED, DR. MASTER IS PRIMARILY BASING HIS

09:33AM 3    OPINION ON THE ICAHN STUDY.  THIS IS A STUDY OF 60 PATIENTS IN

09:33AM 4    WHICH THE STUDY AUTHORS ORDERED THE SAME TESTS FROM THOSE

09:33AM 5    PATIENTS FROM BOTH THERANOS AND FROM TWO OTHER LAB COMPANIES.

09:33AM 6        I THINK JUST TO EXPLAIN THE RESULTS OF THAT STUDY, IN

09:33AM 7    FACT, THE STUDY AUTHORS CONCLUDED THAT FOR VIRTUALLY ALL OF THE

09:33AM 8    TESTS, THE THERANOS RESULTS AGREED WITH THE RESULTS FROM THOSE

09:33AM 9    OTHER LABS WITH THE EXCEPTION OF WITH THE EXCEPTION OF THE

09:33AM 10   LIPID PANEL, AND THE LIPID PANEL IS A PANEL THAT INCLUDES

09:33AM 11   CHOLESTEROL ASSAYS.

09:33AM 12       TELLINGLY, NO ONE INVOLVED IN THAT STUDY OF THE IS ON THE

09:33AM 13   GOVERNMENT'S LIST, AND THAT'S BECAUSE THE STUDY AUTHORS DID NOT

09:33AM 14   REACH THE CONCLUSION THAT DR. MASTER REACHES.

09:33AM 15       THE STUDY AUTHORS DID NOT REACH OPINIONS ON ACCURACY AND

09:34AM 16   RELIABILITY.  THE STUDY WAS NOT AIMED AT MEASURING THAT.

09:34AM 17       INSTEAD IT WAS AIMED AT MEASURING WHETHER THERANOS RESULTS

09:34AM 18   WERE CONSISTENT WITH THE RESULTS FROM OTHER -- FROM THESE OTHER

09:34AM 19   COMPANIES.

09:34AM 20       NOW, DR. MASTER HIMSELF ACKNOWLEDGES IN HIS REPORT THAT

09:34AM 21   THERE ARE HARMONIZATION AND STANDARDIZATION ISSUES BETWEEN

09:34AM 22   COMPANIES AND THAT'S NORMAL AND EXPECTED AT PAGE 14 OF HIS

09:34AM 23   REPORT.

09:34AM 24       HE STATED AS A GENERAL PRINCIPLE THAT FOR MANY ANALYSTS,

09:34AM 25   THERE ARE ISSUES OF STANDARDIZATION AND HARMONIZATION BETWEEN

09:34AM  1    ASSAYS USED BY VARIOUS CLINICAL LABORATORIES.

09:34AM  2         AND THE PROBLEM WITH HIS CONCLUSION HERE IS THAT HE DIDN'T

09:34AM  3    ARTICULATE ANY METHODOLOGY BY WHICH HE CONCLUDED THAT THE

09:34AM  4    DIFFERENCES AS TO THE CHOLESTEROL ASSAY IN THIS CASE WERE

09:34AM  5    SIMPLY ISSUES OF STANDARDIZATION AND HARMONIZATION THAT WAS

09:34AM  6    EXPECTED, OR WHETHER THEY RESULTED FROM SOME MORE FUNDAMENTAL

09:35AM  7    PROBLEM WITH THE THERANOS CHOLESTEROL TEST.  HE DID NOT

09:35AM  8    ARTICULATE HOW HE REACHED THAT CONCLUSION.

09:35AM  9         NOW, AS YOUR HONOR INDICATED, IT IS APPROPRIATE FOR

09:35AM 10    EXPERTS TO BASE OPINIONS ON ACADEMIC ARTICLES, AND THAT'S THE

09:35AM 11    GOVERNMENT'S PRIMARY RESPONSE.  BUT THERE ARE MANY CASES,

09:35AM 12    INCLUDING THE SUPREME COURT DECISION IN GENERAL ELECTRIC VERSUS

09:35AM 13    JOINER, THAT SAY THAT EXPERTS CANNOT RELIABLY BASE AN OPINION

09:35AM 14    ON AN ACADEMIC ARTICLE WHEN THEY GO BEYOND THE CONCLUSIONS OF

09:35AM 15    THAT ACADEMIC ARTICLE ITSELF UNLESS THEY ARTICULATE SOME

09:35AM 16    METHODOLOGY BY WHICH THEY WERE ABLE TO EXTRACT A BROADER

09:35AM 17    OPINION THAN THE ARTICLE DID.

09:35AM 18         THAT'S EXACTLY WHAT WE HAVE HERE WITH DR. MASTER.

09:35AM 19         SO I WOULD SUBMIT THAT AT A MINIMUM, THE COURT SHOULD NOT

09:35AM 20    ADMIT THE OPINION AS TO CHOLESTEROL UNTIL WE HAVE A CHANCE TO

09:35AM 21    EXAMINE DR. MASTER AT A DAUBERT HEARING TO SEE WHETHER HE WAS

09:35AM 22    ABLE TO REACH AN OPINION THAT THE STUDY AUTHORS THEMSELVES DID

09:35AM 23    NOT REACH, ESPECIALLY WHEN HE HIMSELF RECOGNIZES THAT THERE ARE

09:36AM 24    THESE HARMONIZATION ISSUES ACROSS LABORATORIES.

09:36AM 25         WITH RESPECT TO VITAMIN D, DR. MASTER BASES HIS OPINION ON

09:36AM 1    THE CMS REPORT AND MY COLLEAGUE, MR. LOOBY IS GOING TO DISCUSS

09:36AM 2    THE CMS REPORT IN MORE DETAIL WITH THE CMS MOTION.

09:36AM 3         AS HE WILL EXPLAIN, CMS DID NOT ITSELF MEASURE ACCURACY

09:36AM 4    AND LIABILITY IN ASSAYS.  THERE'S NO FINDING BY CMS THAT

09:36AM 5    THERANOS, ITS VITAMIN D WAS INACCURATE OR UNRELIABLE.

09:36AM 6         AND DR. MASTER IN HIS REPORT SIMPLY PLUCKS OUT SOME DATA

09:36AM 7    IN THE CMS REPORT THAT RELATES TO ONLY THREE DEVICES, ONE FOR A

09:36AM 8    ONE WEEK PERIOD AND TWO FOR A ONE MONTH PERIOD.

09:36AM 9         AND HE DOESN'T EXPLAIN HOW HE WAS ABLE TO EXTRAPOLATE FROM

09:36AM 10   THAT VERY LIMITED SET OF DATA TO A GENERAL OPINION ABOUT THE

09:36AM 11   ACCURACY AND RELIABILITY OF THE VITAMIN D ASSAY OVER A THREE

09:37AM 12   YEAR PERIOD.

09:37AM 13        SO AGAIN, I WOULD SUBMIT THAT WE SHOULD BE ENTITLED TO

09:37AM 14   EXAMINE HIM IF THERE'S GOING TO BE A DAUBERT HEARING ABOUT HOW

09:37AM 15   HE WAS ABLE TO EXTRAPOLATE IN A SCIENTIFICALLY VALID MANNER

09:37AM 16   BECAUSE HE DOESN'T EXPLAIN THAT IN HIS REPORT.

09:37AM 17        UNLESS THE COURT HAS QUESTIONS ABOUT THOSE TWO, I'LL MOVE

09:37AM 18   TO INDUSTRY STANDARDS.

09:37AM 19             THE COURT:  PLEASE.

09:37AM 20             MS. SAHARIA:  OKAY.  SO I THINK THERE'S TWO PROBLEMS

09:37AM 21   WITH DR. MASTER'S OPINIONS ON INDUSTRY STANDARDS, AND I DON'T

09:37AM 22   QUIBBLE WITH HIS QUALIFICATIONS AS A GENERAL MATTER.  HE'S

09:37AM 23   OBVIOUSLY A QUALIFIED LABORATORY DIRECTOR.

09:37AM 24        THE FIRST IS THAT HIS OPINIONS DON'T FIT THE CASE, AND

09:37AM 25   THAT'S BECAUSE HE IS UNABLE TO OFFER AN OPINION THAT ANY

09:37AM  1     SUPPOSED VIOLATIONS OF INDUSTRY STANDARDS ACTUALLY CAUSED

09:37AM  2     ACCURACY OR LIABILITY PROBLEMS AT THERANOS.

09:37AM  3          HE, AGAIN, OFFERS ONLY THE OPINION THAT THEY POSSIBLY

09:37AM  4     CAUSED THOSE PROBLEMS.

09:37AM  5          AND THIS GETS TO THE ISSUE THAT WE WERE TALKING ABOUT

09:38AM  6     YESTERDAY SOMEWHAT WITH MY COLLEAGUE, MR. FLEURMONT, WHICH IS

09:38AM  7     THIS CASE IS NOT ABOUT WHETHER THERANOS VIOLATED CLIA.  IT'S

09:38AM  8     NOT ABOUT WHETHER THERANOS'S LAB OPERATED IN COMPLIANCE WITH

09:38AM  9     INDUSTRY STANDARDS.

09:38AM  10          IT'S ABOUT WHETHER MS. HOLMES MADE MISREPRESENTATIONS

09:38AM  11     RELATED TO THE ACCURACY AND RELIABILITY OF THERANOS'S TESTS.

09:38AM  12          AND IF HE'S NOT ABLE TO CONNECT THESE OPINIONS ABOUT

09:38AM  13     SUPPOSED VIOLATIONS OF INDUSTRY STANDARDS TO THE ACTUAL LEGAL

09:38AM  14     QUESTION IN THIS CASE, AND HE CONCEDES THAT THE COURT WAS

09:38AM  15     DISCUSSING WITH MR. FLEURMONT THAT HE CAN'T, THEN THERE'S --

09:38AM  16     THEN THAT LOGICAL CONNECTION THAT DAUBERT REQUIRES, THAT FIT,

09:38AM  17     IS SIMPLY MISSING FROM HIS OPINIONS.

09:38AM  18          AGAIN, THE OPINION IN THIS REGARD IS VERY MUCH LIKE THE

09:38AM  19     ONE THAT I MENTIONED IN THE DAUBERT OPINION ITSELF WHERE THE

09:38AM  20     OPINION WAS JUST THAT A CERTAIN DRUG COULD HAVE CAUSED

09:38AM  21     MEDICAL -- CERTAIN INJURIES.

09:38AM  22          HERE HE'S OPINING JUST THAT SUPPOSED VIOLATIONS OF

09:39AM  23     INDUSTRY STANDARDS COULD HAVE CAUSE ACCURACY PROBLEMS, BUT HE'S

09:39AM  24     NOT ABLE TO OPINE THAT IT ACTUALLY DID.

09:39AM  25          SO FOR THAT REASON WE THINK THIS DOES NOT FIT THE CASE.

09:39AM   1        NOW, ON THE ISSUE OF WHETHER HE IS OFFERING LEGAL

09:39AM   2    OPINIONS, I THINK IT IS CLEAR THAT HE DOES INTEND TO OFFER SOME

09:39AM   3    LEGAL OPINIONS, AND I'LL POINT THE COURT TO THE TWO MOST

09:39AM   4    OBVIOUS ONES.

09:39AM   5        AT PAGE 18 OF HIS REPORT, HE OPINES THAT THERANOS DID NOT

09:39AM   6    APPROPRIATELY ENGAGE IN PROFICIENCY TESTING.  PROFICIENCY

09:39AM   7    TESTING IS GOVERNED BY CLIA AND IT'S A PROCESS BY WHICH A

09:39AM   8    LABORATORY WILL TYPICALLY OBTAIN SAMPLES FROM A THIRD PARTY AND

09:39AM   9    TEST THOSE SAMPLES TO SEE IF THEY GET THE CORRECT RESULTS.

09:39AM  10        HE ACKNOWLEDGES THAT THIS TESTING IS GOVERNED BY CLIA AT

09:39AM  11    PAGE 10, AND HE ACKNOWLEDGES THAT THERE'S SOME CIRCUMSTANCES IN

09:39AM  12    WHICH, UNDER CLIA, A LABORATORY MAY ENGAGE IN WHAT'S CALLED

09:40AM  13    ALTERNATIVE METHODS OF PROFICIENCY TESTING.

09:40AM  14        AND HE CONCLUDES THAT -- HE ACKNOWLEDGES THAT THERANOS DID

09:40AM  15    THAT, THAT IT ENGAGED IN THIS ALTERNATIVE TESTING -- AGAIN,

09:40AM  16    WHICH IS PERMITTED UNDER SOME CIRCUMSTANCES UNDER CLIA -- AND

09:40AM  17    HE ACKNOWLEDGES THAT THERANOS DID THAT BASED ON ITS

09:40AM  18    INTERPRETATION OF CLIA, BUT HE DISAGREES WITH THAT

09:40AM  19    INTERPRETATION OF CLIA -- AGAIN, THIS IS ALL AT PAGE 18 -- IN

09:40AM  20    PART BASED ON HIS OPINIONS ON WHAT THE BURDENS OF PROOF ARE

09:40AM  21    UNDER CLIA.

09:40AM  22        THAT'S CLEARLY A LEGAL OPINION.

09:40AM  23            THE COURT:  SO IF HE'S PERMITTED TO TESTIFY, BUT HIS

09:40AM  24    TESTIMONY IS PARSED OUT, HE'S NOT PERMITTED TO OFFER HIS LEGAL

09:40AM  25    OPINION ABOUT WHY HE PARTS COMPANY WITH WHAT THERANOS DID OR

09:40AM  1    SOMETHING LIKE THAT, WOULD YOU STILL HAVE OBJECTIONS ABOUT HIS

09:40AM  2    TESTIMONY?

09:40AM  3         IN OTHER WORDS, CAN WE EXCISE, CAN WE SANITIZE THOSE

09:40AM  4    OPINIONS SUCH THAT THE BALANCE AND REMAINING OPINIONS WOULD BE

09:40AM  5    APPROPRIATE AND PROPER?

09:41AM  6              MS. SAHARIA:  SO OUR POSITION IS THAT HE SHOULD NOT

09:41AM  7    BE PERMITTED TO EVEN OFFER THE LEGAL OPINION AS TO WHAT CLIA

09:41AM  8    REQUIRES.

09:41AM  9         BUT EVEN MORE PROBLEMATIC WOULD BE HIS APPLICATION OF THAT

09:41AM 10    LAW TO THE FACTS HERE, AND IN PARTICULAR IN THE WAY HE DOES

09:41AM 11    THAT, WHICH IS TO ACKNOWLEDGE THAT THERANOS HAD ONE

09:41AM 12    INTERPRETATION AND TO SAY THAT HE DISAGREES WITH THAT

09:41AM 13    INTERPRETATION.

09:41AM 14         SO I WOULD SAY, NO, HE SHOULD NOT BE ABLE TO TALK ABOUT

09:41AM 15    CLIA AND FEDERAL LAW AT ALL.  THAT IS A LEGAL OPINION.

09:41AM 16         BUT THE MOST EGREGIOUS EXAMPLE OF THAT IS HIS DISCUSSION

09:41AM 17    OF HIS DISAGREEMENT WITH THE INTERPRETATION OF THERANOS.

09:41AM 18              THE COURT:  BECAUSE HE'S, HE'S -- HE HAS EXTENSIVE

09:41AM 19    BACKGROUND.  HE KNOWS ABOUT REGULATIONS.  MAYBE WE'RE IN THE

09:41AM 20    MARGINS HERE ABOUT IS A REGULATION A LEGAL OPINION OR IS IT

09:41AM 21    INTERPRETATION OF GUIDANCE FROM A FEDERAL AGENCY, AND DO THOSE

09:41AM 22    INTERSECT SOMEHOW SUCH THAT THEY CHANGE CHARACTERS?

09:42AM 23              MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.

09:42AM 24         A REGULATION IS BINDING LAW JUST IN THE WAY THAT A LAW IS.

09:42AM 25    IT WOULD BE ONE THING, I SUPPOSE, TO BE DISCUSSING NONBINDING

09:42AM   1     GUIDANCE THAT INFORMS HOW THE INDUSTRY OPERATES.  THAT MIGHT BE

09:42AM   2     DIFFERENT.

09:42AM   3          BUT A REGULATION IS A LEGALLY BINDING OBLIGATION IN THE

09:42AM   4     SAME WAY THAT A LAW IS.

09:42AM   5          SO I DON'T VIEW THERE BEING ANY DISTINCTION BETWEEN HIM

09:42AM   6     OPINING WHAT CLIA THE FEDERAL STATUTE REQUIRE AND WHAT THE

09:42AM   7     REGULATIONS ENFORCING CLIA REQUIRE.  I THINK THEY'RE THE SAME

09:42AM   8     THINGS.

09:42AM   9          I THINK WHAT IS IMPORTANT HERE -- AND I THINK IF ALL OF

09:42AM  10     THIS COMES OUT AT TRIAL RELATING TO CMS AND FDA, WHICH WE'RE

09:42AM  11     GOING TO DISCUSS THAT LATER TODAY -- BUT YOUR HONOR WILL HEAR

09:42AM  12     THAT THESE WERE TOPICS OF GREAT DEBATE AT THE TIME.

09:42AM  13          THERANOS HAD LEGAL COUNSEL ADVISING IT ON THESE VARIOUS

09:42AM  14     ISSUES, THEY WERE ENGAGED IN DISCUSSIONS WITH THE FEDERAL

09:42AM  15     AGENCIES ABOUT THESE TOPICS, AND TO ALLOW SOMEONE TO COME IN

09:43AM  16     AFTER THE FACT AND SAY, THE POSITION THAT YOU WERE TAKING WAS

09:43AM  17     INCORRECT IS I THINK HIGHLY PROBLEMATIC.

09:43AM  18          IT'S NOT ALLOWED UNDER DAUBERT, AND IT DOESN'T FALL INTO

09:43AM  19     THE BUCKET THAT WE WERE TALKING ABOUT YESTERDAY WHERE THERE WAS

09:43AM  20     SOMEONE IN REALTIME LIKE DR. ROSENDORFF, WHO THE GOVERNMENT

09:43AM  21     CLAIMS TOLD MS. HOLMES THAT HE BELIEVED THE COMPANY WAS NOT

09:43AM  22     COMPLYING WITH VARIOUS REGULATIONS AND THAT MIGHT GO TO HER

09:43AM  23     INTENT UNDER THE GOVERNMENT'S THEORY.

09:43AM  24          THIS DOESN'T FALL UNDER THAT CATEGORY OF ADMISSIBLE

09:43AM  25     EVIDENCE.

09:43AM  1           THE COURT:  THIS IS DIFFERENT.

09:43AM  2           MS. SAHARIA:  THIS IS VERY DIFFERENT.

09:43AM  3       SO I THINK THE SECOND REALLY GOOD EXAMPLE OF THAT -- THIS

09:43AM  4  IS AT PAGE 18 AND 19 -- WHERE HE DESCRIBES A LEGAL DISPUTE

09:43AM  5  BETWEEN THERANOS AND THE FDA REGARDING WHETHER THERANOS'S

09:43AM  6  COLLECTION DEVICE QUALIFIED AS A LABORATORY DEVELOPED TEST.

09:43AM  7       AND HE ACKNOWLEDGES AGAIN THAT THERANOS WAS ADVANCING ONE

09:43AM  8  LEGAL POSITION, AND THEN HE ARTICULATES THAT HE DISAGREES WITH

09:43AM  9  THAT LEGAL POSITION BECAUSE HE'S UNAWARE OF ANY LABORATORY THAT

09:44AM 10  HAS SIMILARLY ATTEMPTED TO ADVANCE THAT LEGAL POSITION.

09:44AM 11       I THINK THAT'S THE SAME KIND OF EXAMPLE WHERE IT WOULD BE

09:44AM 12  VERY IMPROPER TO ALLOW SOMEONE WHO IS NOT A LAWYER, EVEN THOUGH

09:44AM 13  HE IS QUALIFIED AS A LAB DIRECTOR, TO COME IN AFTER THE FACT

09:44AM 14  AND BASICALLY PUT HIS THUMB ON THE SCALE OF THE FDA'S POSITION

09:44AM 15  IN THIS LEGAL DISPUTE BETWEEN FDA AND THERANOS.

09:44AM 16       SO THOSE ARE THE VERY TWO CLEAR EXAMPLES WHERE I THINK

09:44AM 17  HE'S VERY CLEARLY ARTICULATING LEGAL OPINION.

09:44AM 18           THE COURT:  OKAY.  THANK YOU VERY MUCH.

09:44AM 19           MS. SAHARIA:  THANK YOU.

09:44AM 20           THE COURT:  MR. LEACH.

09:44AM 21           MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD MORNING.

09:44AM 22  ROBERT LEACH ON BEHALF OF THE UNITED STATES.

09:44AM 23           THE COURT:  THANK YOU.  GOOD MORNING.

09:44AM 24           MR. LEACH:  LET ME START OFF WITH WHERE WE ENDED THE

09:44AM 25  CONVERSATION ABOUT WHETHER DR. MASTER'S OFFERING A LEGAL

09:44AM 1    OPINION.  HE IS NOT.

09:45AM 2         I THINK A HELPFUL WAY TO THINK ABOUT THIS, YOUR HONOR, IS

09:45AM 3    IN A HIGHLY REGULATED INDUSTRY LIKE THIS, THERE ARE INDUSTRY

09:45AM 4    STANDARDS THAT COMPANIES ABIDE BY TO MAKE SURE THAT THEIR TESTS

09:45AM 5    ARE ACCURATE AND RELIABLE, BECAUSE THEY WANT THEM TO BE

09:45AM 6    ACCURATE AND RELIABLE.  PUTTING ASIDE ANY LAW, PUTTING ASIDE

09:45AM 7    ANY REGULATION, THERE ARE GENERALLY ACCEPTED LAB PRACTICES THAT

09:45AM 8    LABS FOLLOW IN ORDER TO ENSURE ACCURACY AND RELIABILITY, AND

09:45AM 9    ONE OF THEM IS PROFICIENCY TESTING.

09:45AM 10        NOW, IN A HIGHLY REGULATED AREA, THAT MAY GET CODIFIED

09:45AM 11   SOMEWHERE AS THE LAW THAT THEY MUST DO, AND WE DON'T INTEND TO

09:45AM 12   ELICIT FROM DR. MASTER THAT YOU MUST DO X.

09:45AM 13        BUT WE DO INTEND TO ELICIT THAT FIRST BUCKET, WHAT IS THE

09:45AM 14   INDUSTRY STANDARD?  WHAT DO MOST LAB DIRECTORS, WHAT DO MOST

09:45AM 15   PEOPLE WHO ARE TRYING TO RUN A SAFE, ACCURATE, RELIABLE LAB DO

09:45AM 16   IN ORDER TO ENSURE THIS?

09:46AM 17        AND ONE OF THOSE THINGS IS PROFICIENCY TESTING.  AND

09:46AM 18   DR. MASTER ESSENTIALLY CORROBORATES AND VALIDATES

09:46AM 19   DR. ROSENDORFF THAT THERANOS WAS DOING PROFICIENCY TESTING IN A

09:46AM 20   WAY THAT DID NOT ENSURE ACCURACY AND RELIABILITY.

09:46AM 21        THEY HAD THEIR EDISON DEVICE AND THEY DIDN'T DO ANY

09:46AM 22   PROFICIENCY TESTING ON THAT EDISON DEVICE.

09:46AM 23        THE PROFICIENCY TESTING THEY DID, ORDINARY FDA APPROVED

09:46AM 24   DEVICES AND ORDINARY FDA APPROVED TESTS, AND INTERNALLY THEY

09:46AM 25   COMPARED THOSE, AND THEY'RE SAYING THAT'S ENOUGH TO ENSURE

09:46AM 1    ACCURACY AND RELIABLE RESULTS.

09:46AM 2        DR. ROSENDORFF DISAGREED WITH THAT.  HE RAISED THAT

09:46AM 3    REPEATEDLY.

09:46AM 4        AND DR. MASTER'S OPINION IS ESSENTIALLY THAT THE INDUSTRY

09:46AM 5    STANDARD IS CORROBORATIVE OF WHAT DR. ROSENDORFF IS SAYING.

09:46AM 6        THE COURT:  I'M SORRY.  SO IS THAT WHAT YOU INTEND

09:46AM 7    HIM TO SAY?  IS HE GOING TO GET ON THE STAND AND SAY, I'VE READ

09:46AM 8    DR. ROSENDORFF'S REPORT, I AGREE WITH HIS FINDINGS?

09:47AM 9        MR. LEACH:  I DON'T KNOW IF HE WOULD SAY THOSE EXACT

09:47AM 10   WORDS, BUT HE WOULD SAY PROFICIENCY TESTING IS DESIGNED TO

09:47AM 11   ENSURE ACCURACY AND RELIABILITY AND THE METHODS USED HERE DID

09:47AM 12   NOT DO THAT.

09:47AM 13       THE COURT:  AS FOUND AND AS STATED BY

09:47AM 14   DR. ROSENDORFF?

09:47AM 15       MR. LEACH:  YES, AND AS CONSISTENT WITH THE INDUSTRY

09:47AM 16   STANDARD.

09:47AM 17       THAT'S THE MOST IMPORTANT POINT.  IT'S NOT JUST

09:47AM 18   DR. ROSENDORFF WHO THINKS THIS.  THIS IS -- IF YOU GO INTO MOST

09:47AM 19   LABS, MOST PLACES, THIS WOULD NOT BE A WAY TO ENSURE ACCURACY

09:47AM 20   AND RELIABILITY.

09:47AM 21       SO I THINK IT'S -- A COMPANY DOES NOT GET A PASS FOR

09:47AM 22   DEVIATING FROM THE INDUSTRY STANDARD SIMPLY BECAUSE THAT

09:47AM 23   STANDARD GETS CODIFIED IN THE LAW.

09:47AM 24       AN EXPERT WHO LIVES AND BREATHES THOSE STANDARDS AND WHO

09:47AM 25   RUNS THE LAB AND HAS THE QUALIFICATIONS THAT DR. MASTER HAS

09:47AM 1    SHOULD BE ABLE TO OFFER AN OPINION THAT I KNOW HOW TO RUN A LAB

09:47AM 2    AND I KNOW HOW TO DO IT TO MAKE TESTS ACCURATE AND RELIABLE,

09:47AM 3    AND DOING PROFICIENCY TESTING IN THIS METHOD THE WAY

09:48AM 4    DR. ROSENDORFF IS TALKING ABOUT DOESN'T FIT.

09:48AM 5        HE DOESN'T NEED TO TALK ABOUT THE CFR.  HE DOESN'T NEED TO

09:48AM 6    TALK ABOUT WHAT CMS MANDATES.

09:48AM 7        BUT THE INDUSTRY STANDARD, WHAT COMPANIES ABIDE BY AS A

09:48AM 8    MATTER OF GENERALLY APPLICABLE LAB PRACTICES ARE SOMETHING THAT

09:48AM 9    HE'S EMINENTLY QUALIFIED TO TALK ABOUT AND CAN DO IN A WAY THAT

09:48AM 10   DOES NOT GIVE AN IMPERMISSIBLE LEGAL OPINION.

09:48AM 11       MS. SAHARIA DIDN'T ADDRESS THE QUALIFICATIONS TO TALK

09:48AM 12   ABOUT FINGERSTICK TECHNOLOGY, AND UNLESS THE COURT HAS

09:48AM 13   QUESTIONS, I'LL SUBMIT IT ON THE BRIEFING ON THAT POINT.

09:48AM 14           THE COURT:  I THINK I'VE INDICATED MY REVIEW OF

09:48AM 15   THAT.  THANK YOU.

09:48AM 16           MR. LEACH:  WITH RESPECT TO THE OPINIONS ON

09:48AM 17   PARTICULAR ASSAYS, FIRST OF ALL, I DON'T THINK THE DEFENSE IS

09:48AM 18   BEING FAIR TO DR. MASTER'S OPINION ABOUT CALCIUM, HBA1C, HCG,

09:49AM 19   AND HIV.

09:49AM 20       THEY FAULT HIM FOR NOT COMING DOWN YES OR NO.  HIS OPINION

09:49AM 21   IS MORE NUANCED, AND THAT'S TO HIS CREDIT, NOT TO HIS DETRIMENT

09:49AM 22   ON THAT, AND HE'S ESSENTIALLY SAYING, BASED ON THE MATERIAL

09:49AM 23   THAT I'VE REVIEWED, THERE'S SUFFICIENT PROBLEMS WITH THESE

09:49AM 24   ASSAYS WHERE IT RAISES DOUBTS IN A LAB DIRECTOR'S MIND ABOUT

09:49AM 25   WHETHER WE SHOULD OR SHOULDN'T BE USING THESE TESTS.  IT'S

09:49AM    1    ESSENTIALLY, THERE ARE RED FLAGS HERE.

09:49AM    2         AND, REMEMBER, THIS IS A FRAUD CASE.  MS. HOLMES WENT OUT

09:49AM    3    AND TOLD THE WORLD -- NOT THE WORLD, BUT HER INVESTORS AND

09:49AM    4    OTHERS -- THAT WE HAVE TESTS OF THE HIGHEST ACCURACY, THAT CLIA

09:49AM    5    REGULATIONS ENSURE THAT WE HAVE ACCURATE AND RELIABLE TESTS.

09:49AM    6         AND DR. MASTER'S OPINION THERE, WHICH IS BASED ON INTERNAL

09:49AM    7    THERANOS DOCUMENTS, CORROBORATED -- OR PUTS THE LIE TO THAT

09:49AM    8    ESSENTIALLY.  THERE IS SUBSTANTIAL DOUBT ABOUT THESE.

09:49AM    9         AND THE FACT THAT IT'S NOT A YES OR NO IS TO HIS CREDIT,

09:50AM   10    NOT TO -- IT'S NOT A NONOPINION.  IT'S AN OPINION THAT THERE

09:50AM   11    ARE ISSUES HERE ESSENTIALLY.

09:50AM   12         SO I THINK THERE'S ENOUGH THERE EVEN WITHOUT A <u>DAUBERT</u>

09:50AM   13    HEARING.  WE INVITE THE ABILITY TO QUESTION DR. MASTER IN SUCH

09:50AM   14    A HEARING AND, TO THE EXTENT PERMITTED, SUPPLEMENT HIS VIEWS ON

09:50AM   15    THAT POINT.

09:50AM   16         WITH RESPECT TO SODIUM, CHLORIDE AND -- EXCUSE ME.  LET ME

09:50AM   17    GO TO MY LIST.

09:50AM   18         WITH RESPECT TO SODIUM AND CHLORIDE, THE BASIS OF HIS

09:50AM   19    OPINIONS ARE LAID OUT PRIMARILY ON PAGE 14 AND 15 OF THE

09:50AM   20    REPORT, AND THE THRUST OF THIS IS BASED ON THE NUMBER OF

09:50AM   21    COMPLAINTS THAT THERANOS IS SEEING ON THESE PARTICULAR ASSAYS,

09:51AM   22    THESE ARE CALLED ISE ASSAYS WHICH THE THERANOS METHODS WERE

09:51AM   23    PARTICULARLY HARD TO MANAGE.

09:51AM   24         THEY'RE ALSO BASED ON TESTIMONY AND STATEMENTS BY

09:51AM   25    DR. ROSENDORFF WHERE DR. ROSENDORFF, AT THE END OF HIS TENURE,

09:51AM 1    IS SAYING, I DON'T KNOW IF WE CAN SPOT CRITICAL VALUES ONE WAY

09:51AM 2    OR THE OTHER BASED ON THE INTERNAL DOCUMENTS THAT HE WAS

09:51AM 3    LOOKING AT.

09:51AM 4         AND THE DEFENSE'S POSITION IS ESSENTIALLY A LAB DIRECTOR

09:51AM 5    IN HIS POSITION CANNOT EXERCISE PROFESSIONAL JUDGMENT ABOUT

09:51AM 6    WHAT THESE INTERNAL MEMOS AND INTERNAL ISSUES MEAN, THAT YOU

09:51AM 7    NEED TO DO SOME TYPE OF STUDY.

09:51AM 8         I'M NOT SURE HOW WE WOULD GET THESE PATIENTS FROM 2014 OR

09:51AM 9    2015 TO COME BACK IN AND TAKE THEIR BLOOD NOW AND WHETHER OR

09:51AM 10   NOT WE WOULD BE ABLE TO COMPARE THOSE.

09:51AM 11        SO I THINK THEY'RE SETTING UP A STRAW MAN THAT HE DIDN'T

09:51AM 12   DO THIS, AND THEREFORE, THERE'S NO METHOD OR REASONING TO HIS

09:51AM 13   CONCLUSIONS HERE.

09:51AM 14        BUT I DO THINK THAT THERE'S A BASIS THERE.  WE'RE HAPPY TO

09:52AM 15   PRESENT MORE INFORMATION IN A DAUBERT HEARING.

09:52AM 16        AND WITH RESPECT TO VITAMIN D AND CHOLESTEROL, I THINK

09:52AM 17   THIS REALLY COMES DOWN TO WEIGHT ISSUES ABOUT HIS OPINION AND

09:52AM 18   THE APPROPRIATE INFERENCES THAT YOU CAN DRAW FROM THE CMS

09:52AM 19   REPORT AND THIS STUDY.

09:52AM 20        THE THRUST OF WHAT I ANTICIPATE FROM DR. MASTER IS THE

09:52AM 21   REFERENCE RANGES YOU SEE IN THE CMS FOR VITAMIN D, OVER THE

09:52AM 22   TIME PERIOD YOU SEE THEM, WHEN YOU COMPARE THEM TO OTHER

09:52AM 23   DEVICES THAT WERE HAVING SIMILAR ISSUES WITH DIFFERENT ASSAYS,

09:52AM 24   ARE JUST SO LONG AND SO PROFOUND THAT IT MUST BE AN INSTRUMENT

09:52AM 25   ISSUE, AND IT'S CERTAINLY AN ISSUE RUNNING THIS INSTRUMENT IN

09:52AM 1    THIS LAB.

09:52AM 2        I THINK THAT'S A FAIR CONCLUSION FROM THE CMS REPORT, AND

09:52AM 3    I THINK IT'S SOMETHING THAT A LAB DIRECTOR IS EMINENTLY

09:52AM 4    QUALIFIED TO EXTRAPOLATE FROM, AND THAT'S BOLSTERED BY THE

09:53AM 5    ICAHN STUDY, AND THERE'S A DEBATE ABOUT EXACTLY WHAT THIS MEANS

09:53AM 6    AND WHAT INFERENCES YOU CAN DRAW.  I THINK THAT'S FODDER FOR

09:53AM 7    CROSS-EXAMINATION AND I DON'T THINK THAT GOES TO THE

09:53AM 8    RELIABILITY OF HIS SCIENTIFIC OPINION.

09:53AM 9        FOR THAT REASON I AGREE WITH THE COURT'S TENTATIVE THAT

09:53AM 10   THERE'S NO NEED FOR A FURTHER DAUBERT ON THAT POINT.

09:53AM 11       UNLESS THE COURT HAS FURTHER QUESTIONS, I'LL SUBMIT IT.

09:53AM 12       THE COURT:  I WONDER IF YOU COULD SPEAK A LITTLE

09:53AM 13   BIT -- MS. SAHARIA WAS SUGGESTING THAT LEGAL OPINIONS, THAT

09:53AM 14   THIS WITNESS WOULD OFFER LEGAL OPINIONS.  I WAS ASKING HER

09:53AM 15   ABOUT, WELL, WEREN'T THEY JUST REGULATIONS AND DOES HE HAVE TO

09:53AM 16   GIVE A LEGAL OPINION ABOUT THAT?  YOU HEARD HER ANSWERS.

09:53AM 17       ANYTHING YOU WANT TO TELL ME ABOUT THAT?

09:53AM 18       MR. LEACH:  HE DOES NOT HAVE TO GIVE A LEGAL OPINION

09:53AM 19   TO SAY THERANOS WAS NOT ABIDING BY THE INDUSTRY STANDARD.

09:53AM 20       THE INDUSTRY STANDARD MIGHT BE THE SAME, IT MIGHT BE

09:53AM 21   GREATER, IT MIGHT BE LESSER THAN WHAT THE LAW REQUIRES.

09:54AM 22       HE CAN GIVE WHAT IS IN THAT FIRST BUCKET, THE INDUSTRY

09:54AM 23   STANDARD, WITHOUT SAYING THAT THEY VIOLATED THE LAW OR THEY

09:54AM 24   BREACHED THIS PARTICULAR CFR.

09:54AM 25       THE COURT:  SO YOUR VISION, OR WHAT I'M HEARING YOU

09:54AM 1    SAY, IS THAT HE WOULD TESTIFY ABOUT INDUSTRY STANDARDS AND TALK

09:54AM 2    ABOUT THAT, THE JURY WOULD BE INFORMED ABOUT WHAT THOSE ARE

09:54AM 3    FROM THIS WITNESS'S OPINION.

09:54AM 4          AND THEN THE QUESTION WOULD BE POSED:  DID THERANOS FOLLOW

09:54AM 5    THE INDUSTRY STANDARDS THAT YOU'VE JUST INDICATED?

09:54AM 6                MR. LEACH:  YES.

09:54AM 7                THE COURT:  AND HE WOULD SAY YES OR NO AS TO EACH

09:54AM 8    ONE OF THOSE STANDARDS.

09:54AM 9                MR. LEACH:  YES.

09:54AM 10                THE COURT:  AND THAT IS NOT A LEGAL OPINION?

09:54AM 11                MR. LEACH:  THAT IS NOT A LEGAL OPINION.

09:54AM 12                THE COURT:  OKAY.

09:54AM 13                MR. LEACH:  LET ME FRAME IT ONE MORE WAY THAT I

09:54AM 14    FOUND HELPFUL AFTER READING THE DEFENSE BRIEF.

09:54AM 15                THE COURT:  SURE.

09:54AM 16                MR. LEACH:  I ANTICIPATE IF WE WERE TO ASK

09:54AM 17    DR. MASTER, ASSUME THE CFR DIDN'T EXIST, ASSUME CMS WASN'T

09:55AM 18    HERE.  WOULD YOU STILL DO PROFICIENCY TESTING AS A LAB

09:55AM 19    DIRECTOR?  OF COURSE I WOULD DO PROFICIENCY TESTING.  THAT'S

09:55AM 20    HOW WE KNOW OUR DEVICE IS GENERATING THE RIGHT RESULT.  WE RUN

09:55AM 21    IT ON THIS AND WE SEND IT TO THE TESTING ENTITY AND THEY TELL

09:55AM 22    US IF WE GOT IT RIGHT.

09:55AM 23          SO IF CMS DOESN'T EXIST, IF THERE IS NO REGULATION, WOULD

09:55AM 24    YOU DO THESE THINGS?  OF COURSE YOU WOULD.  ANY LAB DIRECTOR

09:55AM 25    WOULD DO THOSE THINGS.

09:55AM   1          THAT'S THE INDUSTRY STANDARD THAT HE'S EMINENTLY QUALIFIED

09:55AM   2   TO TALK ABOUT.

09:55AM   3          THE COURT:  OKAY.  THANK YOU.  THANK YOU.

09:55AM   4       MS. SAHARIA.

09:55AM   5          MS. SAHARIA:  JUST A FEW MINOR POINTS.

09:55AM   6       IF THERE WAS ANYTHING THAT WAS CLEAR FROM MR. LEACH'S

09:55AM   7   PRESENTATION IS THAT DR. MASTER IN LARGE PART SIMPLY INTENDS TO

09:55AM   8   PARROT DR. ROSENDORFF.  WE'VE HEARD IN A NUMBER OF DIFFERENT

09:55AM   9   AREAS THAT HIS OPINION IS BASED ON DR. ROSENDORFF'S TESTIMONY.

09:56AM  10       IT IS NOT APPROPRIATE FOR ONE EXPERT TO SIMPLY PARROT

09:56AM  11   EITHER THE FACT TESTIMONY OF DR. ROSENDORFF OR THE EXPERT

09:56AM  12   TESTIMONY OF DR. ROSENDORFF.

09:56AM  13       AGAIN, THE REASON WHY DR. MASTER IS DOING THAT IS BECAUSE

09:56AM  14   HE DOESN'T HAVE ACCESS TO DATA BECAUSE WE DON'T HAVE THE DATA.

09:56AM  15   SO HE'S BASING OPINIONS IN SOME CASES ON DR. ROSENDORFF'S

09:56AM  16   AFTER-THE-FACT IMPRESSIONS OF WHETHER THERANOS WAS CONDUCTING

09:56AM  17   PROPER PROFICIENCY TESTING, WHICH MAY NOT EVEN REFLECT

09:56AM  18   DR. ROSENDORFF'S REALTIME ASSESSMENTS.

09:56AM  19       IT IS CLEAR THAT DR. MASTER DOES INTEND TO OFFER LEGAL

09:56AM  20   OPINIONS, AND I GAVE THOSE EXAMPLES TO THE COURT WHERE HE'S

09:56AM  21   TALKING ABOUT INTERPRETATIONS OF THE LAW, WHERE HE'S TALKING

09:56AM  22   ABOUT BURDENS OF PROOF, DISPUTES BETWEEN THE FDA AND THERANOS.

09:56AM  23       THOSE ARE CLEARLY LEGAL OPINIONS, AND YOU CAN'T JUST

09:56AM  24   DIVORCE IN SOME HYPOTHETICAL WORLD THE INDUSTRY STANDARDS FROM

09:57AM  25   WHAT THEY MIGHT BE IF THERE WERE NO CMS OR CFR BECAUSE THAT'S

09:57AM  1    THE WORLD THAT HE LIVES IN AND THAT IS THE WORLD THAT HE WAS

09:57AM  2    TRAINED IN.

09:57AM  3        AND WHEN HE MOVED BEYOND THE GENERAL STATEMENT, YEAH, THE

09:57AM  4    INDUSTRY STANDARD REQUIRES US TO ENGAGE IN PROFICIENCY TESTING,

09:57AM  5    AND THE NEXT QUESTION IS, WELL, HOW DO YOU DETERMINE WHETHER

09:57AM  6    IT'S APPROPRIATE TO ENGAGE AN ALTERNATIVE PROFICIENCY TESTING,

09:57AM  7    FOR EXAMPLE?

09:57AM  8        THE ANSWER TO THAT IS, THE REGULATIONS TELL US WHEN WE CAN

09:57AM  9    ENGAGE IN AN ALTERNATIVE PROFICIENCY TESTING, AND I DISAGREE

09:57AM  10   WITH THE WAY THAT THERANOS WAS INTERPRETING THOSE REGULATIONS.

09:57AM  11       THAT'S CLEARLY A LEGAL OPINION.

09:57AM  12            THE COURT:  SO, MS. SAHARIA, I'M SORRY TO INTERRUPT

09:57AM  13   YOU.

09:57AM  14            MS. SAHARIA:  YES.

09:57AM  15            THE COURT:  YOU HEARD MR. LEACH ANSWERING MY

09:57AM  16   QUESTION, AND I ASKED HIM AND I KIND OF PROBED HIM, SET HIM UP,

09:57AM  17   IF YOU WILL.

09:57AM  18       WHAT WOULD THE QUESTIONING BE?  IS THIS A LEGAL OPINION OR

09:57AM  19   WHAT WOULD THAT QUESTIONING BE?

09:57AM  20       AND HE TOLD US THE LINE OF QUESTIONING THAT WOULD SUGGEST,

09:57AM  21   NO, I'M NOT ASKING HIM A LEGAL OPINION.  I'M ASKING HIM -- HE'S

09:58AM  22   QUALIFIED TO TESTIFY ABOUT INDUSTRY STANDARDS AND HE CAN TALK

09:58AM  23   ABOUT INDUSTRY STANDARDS.

09:58AM  24       AND THEN I'LL ASK HIM, DID YOU SEE THAT IN THE THERANOS

09:58AM  25   REGIME?  ANYTHING ABOUT WHAT THEY WERE DOING THAT COMPLIED WITH

09:58AM 1     OR FOLLOWED INDUSTRY STANDARDS?  YES?  NO?

09:58AM 2           MS. SAHARIA:  SO I THINK TWO PROBLEMS WITH THAT.

09:58AM 3        THE FIRST IS THE ONE WHICH I STARTED WITH, WHICH IS HIS

09:58AM 4     ANSWERS TO THAT QUESTIONS ARE GOING TO BE BASED ENTIRELY ON HIS

09:58AM 5     PARROTING OF WHAT DR. ROSENDORFF HAS SAID ABOUT WHAT THERANOS

09:58AM 6     WAS DOING, NOT ON DR. MASTER'S OWN ANALYSIS OF ACTUAL EVIDENCE

09:58AM 7     AND DATA REGARDING WHAT THERANOS WAS DOING WITH RESPECT TO

09:58AM 8     PROFICIENCY TESTING.

09:58AM 9        BUT ON THE ISSUE OF THE LEGAL OPINION, I DON'T KNOW HOW WE

09:58AM 10    CAN CROSS-EXAMINE DR. MASTER ABOUT THAT VAGUE INDUSTRY STANDARD

09:58AM 11    OPINION WITHOUT GETTING INTO THE REGULATIONS BECAUSE THE

09:58AM 12    REGULATIONS ARE WHAT INFORM THOSE INDUSTRY STANDARDS.

09:58AM 13       HE ACKNOWLEDGES THAT IN THE BEGINNING SECTION OF HIS BRIEF

09:58AM 14    WHERE HE SAYS THAT HE LAYS OUT THE INDUSTRY STANDARDS, AND ALL

09:59AM 15    OF THOSE ARE DRAWN FROM THE CFR AND FROM CLIA.

09:59AM 16       SO I DON'T KNOW HOW -- WE CAN OFFICIALLY TALK AROUND THE

09:59AM 17    SUBJECT OF THE REGULATIONS, I SUPPOSE, WITH DR. MASTER, BUT

09:59AM 18    THAT'S ARTIFICIAL AND IT WILL HAMPER OUR ABILITY TO

09:59AM 19    CROSS-EXAMINE HIM WHEN ALL OF THOSE INDUSTRY STANDARDS ARE

09:59AM 20    BASED ON FEDERAL LAW.

09:59AM 21       THANK YOU.

09:59AM 22           THE COURT:  ALL RIGHT.  THANK YOU.

09:59AM 23       MR. LEACH, ANYTHING FURTHER?

09:59AM 24           MR. LEACH:  NO, YOUR HONOR.  THANK YOU.

09:59AM 25           THE COURT:  ALL RIGHT.  THANK YOU.  AND THANK YOU

09:59AM 1    FOR THE CONVERSATION ON THIS.

09:59AM 2        I WILL -- THIS IS ONE THAT YOU'LL RECEIVE THE COURT'S

09:59AM 3    DECISION IN A WRITTEN ORDER.  I WILL TELL YOU THAT I DO INTEND

09:59AM 4    TO SCHEDULE A DAUBERT HEARING AT SOME POINT, AND WE'LL LOOK AT

09:59AM 5    OUR CALENDARS AND WE'LL CONSULT WITH YOU AS TO WHEN THE BEST

09:59AM 6    TIME FOR THAT IS, OBVIOUSLY PRIOR TO THE PRETRIAL CONFERENCE.

09:59AM 7        MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:59AM 8        THE COURT:  OKAY.  THANK YOU.

10:00AM 9        ALL RIGHT.  NEXT I BELIEVE IS DOCKET 574, MS. HOLMES'S

10:00AM 10   MOTION TO EXCLUDE EVIDENCE OF CMS SURVEY FINDINGS AND

10:00AM 11   SANCTIONS.

10:00AM 12       IT LOOKS LIKE CONCURRENT WITH THIS IS THE GOVERNMENT'S

10:00AM 13   NUMBER 6, TO ADMIT THE CMS FORM 2567.

10:00AM 14       I THINK THE CONVERSATION IS THE --

10:00AM 15       MR. LEACH:  YES.

10:00AM 16       THE COURT:  RIGHT.

10:00AM 17       MR. LOOBY:  GOOD MORNING, YOUR HONOR.  YES, I'LL BE

10:00AM 18   ADDRESSING BOTH MS. HOLMES'S MOTION TO EXCLUDE THE REPORT AND

10:00AM 19   ITS FINDINGS WITH THE CMS INSPECTIONS IN 2015 AND 2016 OF

10:00AM 20   THERANOS'S CLIA LABORATORIES.

10:00AM 21       THE GOVERNMENT'S MOTION BASICALLY DOESN'T ADDRESS ANY

10:00AM 22   ISSUES THAT ARE NOT ADDRESSED IN OUR MOTION, SO I THINK THEY

10:00AM 23   CAN BE KIND OF ADDRESSED AT THE SAME TIME.

10:00AM 24       THE COURT:  ALL RIGHT.  THANK YOU, MR. LOOBY.

10:00AM 25       MR. LOOBY:  SO THE ISSUES THESE MOTIONS RAISE FALL

INTO TWO BUCKETS, SO THERE'S THE RELEVANCY AND THE 403 ISSUES,

AND THERE'S THE HEARSAY ISSUES WITH THE REPORTS AND THE

FINDINGS THEMSELVES.

I'LL PROPOSE ADDRESSING THEM IN THAT ORDER.

THE FIRST QUESTION, IS THE EVIDENCE RELEVANT FOR THE

PURPOSES THAT THE GOVERNMENT IS OFFERING IT?

IT MIGHT SEEM STRAIGHTFORWARD, BUT ANSWERING IT ACTUALLY

INVOLVES SOME TECHNICAL CONCEPTS AND I THINK IT'S HELPFUL TO GO

OVER WHAT A CMS ENTAILS AND WHAT IT DOESN'T ENTAIL.

SO WHAT DOES A CMS INSPECTION ENTAIL?  SO AT THE HIGHEST

LEVEL, CMS INSPECTORS LOOK TO SEE WHETHER THE CLIA LAB HAS THE

SAME WRITTEN POLICIES AND PROCEDURES THAT THE REGULATIONS

REQUIRE.

AND THEY WILL LOOK FOR EVIDENCE THAT THE LAB IS COMPLYING

WITH ITS OWN PROCEDURES.

IF AN INSPECTOR FINDS THAT EITHER A REQUIRED PROCEDURE

DOESN'T EXIST OR IF THEY ENCOUNTER EVIDENCE THAT THE LAB IS NOT

FOLLOWING THEIR OWN PROCEDURES, THEY WILL MAKE A FINDING OF A

CLIA REGULATORY DEFICIENCY.

SO THESE COME IN A FEW FLAVORS.  THE ENTRY LEVEL IS WHAT

IS CALLED A STANDARD LEVEL DEFICIENCY, AND A COUPLE OF STANDARD

LEVEL DEFICIENCIES CAN ESSENTIALLY ROLL UP INTO WHAT IS CALLED

A CONDITION LEVEL DEFICIENCY, AND THEN ON TOP OF THAT, THERE

COULD BE AN IMMEDIATE JEOPARDY FINDING, AND I'LL TALK MORE

ABOUT THAT LATER.

10:02AM   1        SO THE CLIA REGULATIONS AND THE POLICIES AND PROCEDURES

10:02AM   2   THEY REQUIRE, THEY REALLY RUN THE GAMUT.  SO SOME ARE BASIC,

10:02AM   3   LIKE REQUIRING THAT THE LABORATORY HAVE ON HAND DOCUMENTATION

10:02AM   4   SHOWING THAT THE CLIA LAB STAFF HAVE APPROPRIATE EDUCATIONAL

10:02AM   5   AND EXPERIENTIAL BACKGROUND.

10:02AM   6        OTHERS ARE MORE TECHNICAL, AND WE DON'T NEED TO GO INTO

10:02AM   7   ALL OF THEM.  MY COLLEAGUES AND THE GOVERNMENT ADDRESSED

10:02AM   8   PROFICIENCY TESTING, OR PT, IN THE LAST MOTION, SO I WON'T

10:02AM   9   DWELL ON THAT.

10:02AM  10        SECOND, THERE'S QUALITY CONTROL, OR QC.  SO GENERALLY

10:02AM  11   SPEAKING, CLIA REGS, THEY REQUIRE LABORATORIES TO ADOPT QC

10:02AM  12   PROCEDURES, AND THIS INVOLVES RUNNING A CONTROL SAMPLE THROUGH

10:02AM  13   A LAB DEVICE ON A REGULAR BASIS AND SEEING IF YOU GET CLOSE

10:03AM  14   ENOUGH TO THE EXPECTED VALUE.

10:03AM  15        LABS ARE REQUIRED TO KEEP THEIR HISTORICAL QC DATA ON HAND

10:03AM  16   AND THE LAB INSPECTOR, THE CMS INSPECTOR, MIGHT ASK TO SEE THE

10:03AM  17   HISTORICAL QC DATA IN ADDITION TO LOOKING AT THE POLICIES AND

10:03AM  18   PROCEDURES THEMSELVES.

10:03AM  19        SO IF THE INSPECTOR SPOTS AN ISSUE WITH THE QC, THEN THEY

10:03AM  20   MIGHT WANT TO SEE DOCUMENTATION THAT THE LAB IDENTIFIED IT AT

10:03AM  21   THE TIME THAT THEY INVESTIGATED THE ISSUE AND THAT THEY SOLVED

10:03AM  22   THE ISSUE.

10:03AM  23        SO THE FINAL BUCKET OF ISSUES BEFORE WE MOVE ON IS QUALITY

10:03AM  24   ASSESSMENT, OR QA.  AND SO THE WAY TO THINK ABOUT THIS IS THAT

10:03AM  25   IT SITS ON TOP OF QC, AND IT INVOLVES KIND OF A MORE HOLISTIC

10:03AM 1    REVIEW OF QC, TRANSIT OF QC DATA THAT DAILY QC MONITORING MIGHT

10:03AM 2    MISS.

10:03AM 3        THOSE ARE THE KIND OF BUCKETS.

10:03AM 4        BUT BEFORE -- ONE MORE NOTE ABOUT QC IS THAT QC DATA IS

10:03AM 5    INHERENTLY DIFFERENT FROM PATIENT RESULTS.  THE QC CONTROL

10:03AM 6    SAMPLE THAT IS RUN THROUGH THE LAB'S DEVICE IS AN SYNTHETIC

10:04AM 7    MATERIAL THAT CLIA LABS CAN BUY FROM LAB SUPPLY COMPANIES.

10:04AM 8        IN OTHER WORDS, IN REVIEWING THE QC DATA, THE CMS

10:04AM 9    INSPECTOR IS NOT LOOKING AT PATIENT RESULTS.

10:04AM 10       LIKEWISE, THE COEFFICIENT OF VARIATION, OR CV PERCENTAGE,

10:04AM 11   WHICH YOU'LL SEE IN THE CMS REPORT AND ON WHICH DR. MASTER

10:04AM 12   RELIES TO EXTRAPOLATE HIS OPINIONS, THIS IS A STATISTICAL

10:04AM 13   FIGURE IN THIS INSTANCE BASED ON QC DATA AND NOT PATIENT

10:04AM 14   RESULTS.

10:04AM 15       THE SECOND THING TO KEEP IN MIND ABOUT QC IS THAT IT DOES

10:04AM 16   NOT NECESSARILY MEAN THAT THERE'S AN ISSUE WITH THE DEVICE IF

10:04AM 17   THERE'S A QC FAILURE.

10:04AM 18       THERE'S A COUPLE OF REASONS WHY THAT IS.  IT COULD BE THAT

10:04AM 19   THERE'S AN ISSUE WITH THE QC MATERIAL THAT IS RUN, LIKE IT WAS

10:04AM 20   STORED IMPROPERLY.

10:04AM 21       OR IT COULD SIGNIFY THAT THERE'S AN ISSUE WITH THE REAGENT

10:04AM 22   USED IN THE TEST, AND AT ITS MOST SIMPLE LEVEL, IT COULD JUST

10:04AM 23   BE CHALKED UP TO HUMAN ERROR.

10:04AM 24       SO HERE'S AN EXAMPLE OF HOW THIS COULD OCCUR.  SO IT'S

10:04AM 25   HELPFUL TO THINK ABOUT IT.  SO QC CONTROL SAMPLES OFTEN COME IN

10:05AM 1    VERY LOW CONCENTRATIONS AND VERY HIGH CONCENTRATIONS, AND THIS

10:05AM 2    IS DESIGNED TO TEST THE PERFORMANCE OF THE TEST AT THE

10:05AM 3    EXTREMES.

10:05AM 4         AND SO A LAB TECHNICIAN COULD MISTAKENLY RUN THE HIGH

10:05AM 5    SAMPLE WHEN THE MACHINE IS PRIMED TO ACCEPT THE LOW SAMPLE AND

10:05AM 6    THIS WOULD RESULT IN A VERY ERRANT DATA POINT.  THE TECHNICIAN

10:05AM 7    WOULD PROBABLY FIGURE THIS OUT WHEN LOOKING AT IT AND SAY,

10:05AM 8    OKAY, I KIND OF KNOW WHAT IS GOING ON HERE.

10:05AM 9         BUT THAT RESULT WILL STILL BE LOGGED IN THE MACHINE'S

10:05AM 10   HISTORICAL QC DATA WHEN AN INSPECTOR COMES IN AND ASKS TO SEE

10:05AM 11   THE RECORDS.

10:05AM 12        AND IF THAT TECHNICIAN, AFTER KIND OF FIGURING OUT WHAT

10:05AM 13   WENT WRONG, DOESN'T DOCUMENT WHAT HAPPENED, THEN IT COULD LOOK

10:05AM 14   YEARS LATER IN RETROSPECT LIKE THE LAB WAS IGNORING QC FAILURES

10:05AM 15   AND CONTINUING TO RUN PATIENT SAMPLES WITHOUT ADDRESSING KIND

10:05AM 16   OF WHAT THE ROOT CAUSE OF THE QC IS, WHEN THAT ACTUALLY ISN'T

10:05AM 17   THE CASE.

10:05AM 18        SO I THINK TAKING A STEP BACK, THE BEST WAY TO THINK ABOUT

10:05AM 19   LIKE A QC FAILURE, IT'S LIKE A RED FLAG OR AN INDICATOR THAT

10:06AM 20   SOMETHING IS AWRY, BUT IT ITSELF DOESN'T REALLY TELL US

10:06AM 21   ANYTHING ABOUT KIND OF WHAT IS UP.  IT'S UP TO THE CLIA LAB TO

10:06AM 22   FOLLOW ITS PROCEDURES, WHICH ARE USUALLY OUTLINING THE STEPS

10:06AM 23   YOU WOULD TAKE TO INVESTIGATE THAT.

10:06AM 24        SO HERE'S WHAT THE INSPECTOR DOESN'T LOOK AT.  THE CMS

10:06AM 25   INSPECTOR DOESN'T LOOK AT OR ANALYZE PATIENT DATA.

10:06AM 1      AND THIS IS WHAT THE CMS INSPECTOR, SARAH BENNETT, TOLD

10:06AM 2   THE GOVERNMENT, AND THIS IS AT DEFENSE EXHIBIT 34 AND IT'S HER

10:06AM 3   2017 GOVERNMENT INTERVIEW MEMORANDUM.

10:06AM 4      IT DOESN'T ISSUE FINDINGS THAT THE PATIENT TEST RESULTS

10:06AM 5   WERE INACCURATE OR UNRELIABLE, AND WHILE A CMS LAB INSPECTOR

10:06AM 6   MIGHT CITE A LAB FOR POOR QC PRACTICES, IT DOESN'T TAKE THAT

10:06AM 7   EXTRA STEP OF DIAGNOSING THE QC FAILURE.

10:06AM 8      IT ALSO DOESN'T MAKE A FINDING THAT PATIENT RESULTS

10:06AM 9   ACTUALLY HAVE BEEN IMPACTED BY ANY DEFICIENCIES, INCLUDING FOR

10:07AM 10  QC ISSUES.

10:07AM 11     EVEN AN IMMEDIATE JEOPARDY FINDING, WHICH IS THE MOST

10:07AM 12  SEVERE FINDING THAT A CMS INSPECTOR CAN MAKE, IT'S NOT A

10:07AM 13  FINDING THAT PATIENT HEALTH HAS ACTUALLY BEEN IMPACTED.  IF YOU

10:07AM 14  LOOK AT THE REGULATORY TEXT -- AND WE'LL PULL UP THE CMS LATER

10:07AM 15  THAT HAS THE TEXT IN IT -- BUT IT'S A FINDING THAT THERE'S A

10:07AM 16  SUFFICIENT RISK THAT PATIENT RESULTS COULD BE IMPACTED SUCH

10:07AM 17  THAT IMMEDIATE ACTION IS REQUIRED FROM THE LAB.

10:07AM 18     SO THERE'S A REASON WHY CMS DOESN'T DO THESE THINGS.  THE

10:07AM 19  REGULATORY SCHEME PUTS THE BURDEN ON THE LAB COMPANY, NOT THE

10:07AM 20  REGULATOR, TO PROVE THE NEGATIVE.

10:07AM 21     IN THE WORDS OF CMS WITNESS SARAH BENNETT, IT'S NOT CMS'S

10:07AM 22  JOB TO DO THAT FOR THE LAB COMPANY.

10:07AM 23     SO INSTEAD THE LAB MUST PROVE FOR ANY DEFICIENCY THAT IT

10:07AM 24  IDENTIFIED THE PROBLEM AT THE TIME, THAT IT HAS THE RECORDS TO

10:07AM 25  SHOW THAT IT COULD LOOK AND SAY PATIENT RESULTS WERE NOT

10:07AM 1    IMPACTED.

10:07AM 2        THIS BURDEN SHIFTING PARADIGM, PERHAPS IT MAKES SENSE IN

10:08AM 3    THE CIVIL REGULATORY CONTEXT, YOU KNOW, DEFICIENCY, WE PASS THE

10:08AM 4    BALL TO YOU, THE LAB.  YOU TELL US THAT NO PATIENT RESULTS WERE

10:08AM 5    IMPACTED, AND IF YOU CAN'T PROVE THAT WITH DOCUMENTATION, THEN

10:08AM 6    THE OBSERVATION IS GOING TO BE TURNED INTO A POTENTIAL PENALTY.

10:08AM 7        BUT THAT BURDEN SHIFTING PARADIGM IS AT THE HEART OF WHY

10:08AM 8    THE GOVERNMENT'S PROPOSED USE OF THE CMS REPORT IS SO

10:08AM 9    PROBLEMATIC IN THIS CRIMINAL CASE.

10:08AM 10       SO THAT LEADS US TO THE GOVERNMENT'S RELEVANCE THEORY.

10:08AM 11   THE GOVERNMENT ARGUES THAT THE CMS INSPECTION FINDINGS, THEY

10:08AM 12   TEND TO SHOW THE ACCURACY AND RELIABILITY ISSUES WITH

10:08AM 13   THERANOS'S TECHNOLOGY.

10:08AM 14       THEIR OPPOSITION BRIEF EVEN GOES SO FAR AS TO CLAIM THAT

10:08AM 15   THE REPORT, QUOTE, PUTS THE LIE TO THE DEFENDANT'S GRANDIOSE

10:08AM 16   CLAIMS ABOUT THERANOS'S TECHNOLOGY, AND THAT'S AT THE

10:08AM 17   OPPOSITION BRIEF TO OUR MOTION IN LIMINE AT PAGE 2.

10:08AM 18       BUT AS WE JUST WALKED THROUGH, CMS ACTUALLY DIDN'T MAKE

10:08AM 19   ANY FINDINGS ABOUT THERANOS'S TECHNOLOGY OR THE ACCURACY OR

10:08AM 20   RELIABILITY OF ANY OF ITS TESTS.  SO THAT'S AN ISSUE AT THE

10:09AM 21   START FOR THE GOVERNMENT'S THEORY.

10:09AM 22       THE GOVERNMENT ALSO RELIES VERY HELPFUL ON ISSUES WITH QC

10:09AM 23   AND HOLDS THEM OUT AS SELF-EVIDENT ISSUES UNDERLYING THE

10:09AM 24   TECHNOLOGY.

10:09AM 25       AS WE JUST DISCUSSED, THE QC CITATIONS IN THE REPORT MAKE

1   NO CLAIMS ABOUT THE ACTUAL PERFORMANCE OF THE TESTS.

2       NOW, THE GOVERNMENT DID DISCLOSE AN EXPERT WITNESS,

3   STEPHEN MASTER, WHO MY COLLEAGUE, MS. SAHARIA, JUST DISCUSSED,

4   TO LOOK AT THE QC CITATIONS IN THE CMS REPORT AND TRY TO

5   APPLY -- TO LOOK AT THE QC CITATIONS IN THE CMS REPORT AND

6   BASED ON HIS EXPERTISE TO EXTRAPOLATE FROM THEM ABOUT WHAT HE

7   THINKS PERHAPS THE QC CITATIONS SAY ABOUT THERANOS'S TESTS AND

8   THEIR PERFORMANCE.

9       HE COULDN'T FOR THE MOST PART, AS MS. SAHARIA EXPLAINED,

10   AND MS. SAHARIA EXPLAINED THE ISSUES WITH HIS OPINION THAT HE

11   DID OFFER.

12       BUT IN ANY EVENT, THE GOVERNMENT'S EXPERT DISCLOSURE ON

13   THIS ISSUE IS A CONCESSION THAT THE CMS REPORT AND THE QC

14   FINDINGS WITHIN IT, THEY DON'T SPEAK FOR THEMSELVES, AND THEY

15   DON'T TRANSLATE WITHOUT SOMEONE TO BRIDGE THAT CONCEPTUAL GAP

16   BETWEEN WHAT INPUTS WENT INTO THE CLIA REVIEW AND HOW THE

17   GOVERNMENT WANTS TO USE IT, WHICH IS EVIDENCE OF INACCURACY AND

18   UNRELIABILITY.

19       THE GOVERNMENT ALSO ASSERTS -- THEY TRY TO TURN IT AROUND

20   AND SAY, WELL, THERANOS EITHER AGREED WITH THE CITATIONS OR

21   DIDN'T CONTEST THEM, BUT THAT'S NOT EXACTLY TRUE.

22       IN ANY EVENT, BECAUSE THE FINDINGS DID NOT REACH THE

23   CONCLUSION ON ACCURACY AND RELIABILITY, EVEN IF THERANOS HAD

24   NOT CONTESTED ANY OF THE FINDINGS IN THE JANUARY 2016 REPORT,

25   IT STILL WOULDN'T BE A REPRESENTATION OR A CONCESSION FROM

10:10AM  1    THERANOS THAT THERE WERE ACCURACY OR RELIABILITY ISSUES WITH

10:10AM  2    PATIENT TEST REPORTS THAT WERE REPORTED.

10:11AM  3         SECOND, THERANOS DID REPORT TO CMS THAT, BASED ON ITS

10:11AM  4    HOLISTIC REVIEW, IT FOUND THAT ITS PRIOR QC AND Q/A PROCEDURES

10:11AM  5    AS A WHOLE WERE LACKING, AND IN RESPONSE TO THE CITATIONS WAS

10:11AM  6    FORWARD LOOKING AND IN A DIALOGUE WITH THE REGULATOR.

10:11AM  7         BUT IT'S IMPORTANT TO KEEP IN MIND THE BALL AT THAT TIME

10:11AM  8    WAS IN THERANOS'S COURT TO PROVE THE NEGATIVE.

10:11AM  9         THE JANUARY 2016 REPORT IS KIND OF THE OPENING

10:11AM 10    COMMUNICATION IN A BACK AND FORTH IN WHICH THERE'S AN

10:11AM 11    OPPORTUNITY TO EITHER KIND OF CONTEST THE CITATIONS OR TO

10:11AM 12    EXPLAIN TO THE REGULATOR KIND OF THIS IS HOW WE'RE IMPROVING

10:11AM 13    GOING FORWARD.

10:11AM 14         SO THAT'S ONE REASON WHY PUTTING THIS CMS REPORT, WHICH

10:11AM 15    HAS THESE KIND OF HEARSAY OBSERVATIONS FROM THE INSPECTOR,

10:11AM 16    SOMETIMES MULTIPLE LEVELS OF HEARSAY BECAUSE THE FINDINGS

10:11AM 17    THEMSELVES, THEY WILL INCORPORATE INFORMATION THAT WAS RELAYED

10:11AM 18    TO THE INSPECTOR FROM CLIA LAB STAFF, USUALLY NOT NAMED.

10:12AM 19         THAT'S WHY IT'S SO DANGEROUS TO KIND OF PUT THAT BEFORE

10:12AM 20    THE JURY WITHOUT THE AID OF AN EXPERT OPINION AND JUST SAY,

10:12AM 21    LOOK, HERE'S WHAT THE CMS FOUND, IT FOUND THAT THERE WERE QC

10:12AM 22    VIOLATIONS ON THESE WEEKS ON THESE TESTS.  JURY, WE'RE ASKING

10:12AM 23    YOU TO FIND THAT THIS IS EVIDENCE OF INACCURACY AND

10:12AM 24    UNRELIABILITY.

10:12AM 25         AND THE JURY IS JUST NOT EQUIPPED TO DO THAT ON ITS OWN.

10:12AM  1    THE EVIDENCE DOESN'T QUITE REACH THAT LEVEL THAT THE GOVERNMENT

10:12AM  2    WOULD HAVE IT, AND IT'S JUST GOING TO CONFUSE THE ISSUES.

10:12AM  3        AND THE REASON FOR THAT IS BECAUSE THE INSPECTION, BY

10:12AM  4    DESIGN, STOPPED SHORT OF REACHING THE TYPE OF CONCLUSION THAT

10:12AM  5    THE GOVERNMENT CLAIMS IT WOULD SHOW.

10:12AM  6        I THINK THE BEST EVIDENCE FOR THIS IS GOVERNMENT WITNESS

10:12AM  7    SARAH BENNETT.  SO SHE EXPLAINED THAT TO THE GOVERNMENT IN

10:12AM  8    2017, SHE SAID -- AND I'M PARAPHRASING -- WE AREN'T IN THE

10:12AM  9    BUSINESS OF MAKING THAT TYPE OF FINDING.

10:12AM 10        THE GOVERNMENT WENT BACK TO HER IN 2020 WHEN OUR MOTION

10:13AM 11    WAS PENDING AND SHE TOLD THEM KIND OF THE BASICALLY SAME THING.

10:13AM 12    THAT'S AT GOVERNMENT'S EXHIBIT 24, ECF 680-10.

10:13AM 13        THE TAKEAWAY FROM HER STATEMENTS TO THE GOVERNMENT IS THAT

10:13AM 14    CMS DOESN'T MAKE ACCURACY AND RELIABILITY FINDINGS.  FULL STOP.

10:13AM 15        THE GOVERNMENT'S EFFORT TO FLATTEN THIS DISTINCTION AND

10:13AM 16    PUT THE REPORT INTO EVIDENCE IS GOING TO ASK THE JURY TO MAKE A

10:13AM 17    CONNECTION THAT ITS OWN WITNESS WOULD NOT.

10:13AM 18        THE PREJUDICE FROM THIS EVIDENCE STEMS FROM THE

10:13AM 19    INTERSECTION OF TWO CONCEPTS, ONE OF WHICH IS A CONCEPT THAT

10:13AM 20    YOU HAD ADDRESSED IN DIALOG WITH MY COLLEAGUE, MR. FLEURMONT,

10:13AM 21    YESTERDAY ABOUT CAN A CIVIL REGULATORY VIOLATION AND EVIDENCE

10:13AM 22    OF THAT COMING IN AND KIND OF CONFUSING THE ISSUES AND

10:13AM 23    ENCOURAGING THE JURY TO THINK, WELL, THE GOVERNMENT FOUND THAT

10:13AM 24    THERE WERE SOME VIOLATIONS OF LAWS THAT VAGUELY HAVE TO DO WITH

10:13AM 25    LAB PERFORMANCE OR LAB HYGIENE, AND SO THE GOVERNMENT MUST HAVE

10:13AM 1    AGREED WITH THE GOVERNMENT'S ALLEGATIONS HERE THAT THE TEST

10:14AM 2    RESULTS WERE INACCURATE AND UNRELIABLE.

10:14AM 3        SO A GOOD CITATION FOR THAT KIND OF PREJUDICE IS U.S. V.

10:14AM 4    WOLF, WHICH WAS ADDRESSED YESTERDAY, AND THAT'S AT 820 F.2D

10:14AM 5    1499.

10:14AM 6        BUT HERE THE GOVERNMENT REPORT, YOU KNOW, IS EVEN MORE

10:14AM 7    PREJUDICIAL BECAUSE IT GIVES THE GOVERNMENT IMPRIMATUR TO THE

10:14AM 8    GOVERNMENT -- THE GOVERNMENT AGENCY IMPRIMATUR TO THE

10:14AM 9    GOVERNMENT, THE U.S. ATTORNEY'S OFFICE'S, ALLEGATIONS IN THIS

10:14AM 10   CASE.

10:14AM 11       SO THOSE ARE KIND OF THE RELEVANCY AND THE 403 ISSUES.

10:14AM 12       I CAN PROCEED TO THE HEARSAY ISSUES UNLESS YOUR HONOR HAS

10:14AM 13   QUESTIONS.

10:14AM 14           THE COURT:  NO.  LET'S TALK ABOUT THIS.  AND THIS IS

10:14AM 15   A DISCUSSION I THINK ABOUT 803(8) AND WHETHER THIS IS DOUBLE I

10:14AM 16   OR TRIPLE I.

10:14AM 17           MR. LOOBY:  RIGHT.  SO ACTUALLY THE GOVERNMENT MAKES

10:14AM 18   A COUPLE OF CONCESSIONS IN ITS BRIEFING THAT I THINK ARE

10:14AM 19   IMPORTANT TO PUT ON THE TABLE AT THE START.

10:15AM 20       SO THE GOVERNMENT DOESN'T CONTEST THAT 803(6), THE

10:15AM 21   BUSINESS RECORDS EXCEPTION, IS AVAILABLE TO THEM.  BECAUSE

10:15AM 22   THESE ARE PUBLIC RECORDS, THE NINTH CIRCUIT HAS HELD THAT WE'RE

10:15AM 23   IN 803 LAND, 803(8) LAND.

10:15AM 24       SO THE GOVERNMENT ALSO DOES NOT CONTEST THAT 803(8)(A)(3)

10:15AM 25   REPORTS FROM GOVERNMENT INVESTIGATIONS, DOESN'T APPLY, THAT THE

10:15AM 1      REPORT COULD BE ADMISSIBLE UNDER THAT PROVISION.

10:15AM 2           THE GOVERNMENT CONCEDES THIS BY BASICALLY NOT ADDRESSING

10:15AM 3      OUR ARGUMENTS IN OUR MOTION REGARDING THAT SUBSECTION.  INSTEAD

10:15AM 4      THE GOVERNMENT IS RELYING SOLELY ON SUBSECTION (A)(2), THE

10:15AM 5      MATTERS OBSERVED OR A DUTY TO REPORT.

10:15AM 6           SO WE HAVE TWO WAYS IN WHICH THE GOVERNMENT'S RELIANCE ON

10:15AM 7      (A)(2) KIND OF FAILS, AND ONE OF THEM IS RIGHT OUT OF THE GATE,

10:15AM 8      (A)(2) IS NOT AVAILABLE TO THEM, AND THAT'S BECAUSE WHEN

10:15AM 9      THERE'S A PIECE OF EVIDENCE THAT CONCEDEDLY, AS HERE,

10:15AM 10     CONCEDEDLY IS NOT ADMISSIBLE UNDER (A)(3), (A)(2) DOES NOT

10:16AM 11     PROVIDE THE GOVERNMENT A SECOND BITE AT THE APPLE.

10:16AM 12          SO THE BEST CASE FOR THAT THAT WE WERE ABLE TO FIND, AND I

10:16AM 13     THINK THE ONLY CASE THAT EITHER SIDE CITED THAT ADDRESSED THIS

10:16AM 14     ISSUE SQUARELY WAS THE MURGIO DECISION OUT OF THE SOUTHERN

10:16AM 15     DISTRICT OF NEW YORK -- M-U-R-G-I-O -- AND THAT'S A 2017

10:16AM 16     OPINION BY JUDGE NATHAN IN THE SOUTHERN DIRECT.  THE MURGIO

10:16AM 17     CASE LOOKED AND STARTED WITH THE TEXT OF THE RULE AND I THINK

10:16AM 18     THAT'S HELPFUL.

10:16AM 19          MS. SAHARIA, IF YOU COULD PULL UP THE RULE DEMONSTRATIVE.

10:16AM 20          WHILE SHE'S PULLING THAT UP, WHAT THIS IS, IS RULE 803(8).

10:17AM 21          ALL RIGHT.  AS WE WERE TALKING, WE'RE DEALING WITH

10:17AM 22     SUBSECTION (2) AND SUBSECTION (3).  SO A HELPFUL CANON OF

10:17AM 23     STATUTORY INTERPRETATION, WHICH IS ESSENTIALLY WHAT WE'RE DOING

10:17AM 24     HERE, IT'S KIND OF THE RULE AGAINST REDUNDANCY AND WHETHER OR

10:17AM 25     NOT A BROADER SUBSECTION WILL SUBSUME WITHIN A MORE SPECIFIC

10:17AM 1    SUBSECTION.

10:17AM 2         SO AS IT APPLIES HERE, THE QUESTION BECOMES, IS EVERY

10:17AM 3    INSTANCE OF AN (A)(3), A GOVERNMENT REPORT FROM A LEGALLY

10:17AM 4    AUTHORIZED INVESTIGATION, WOULD THAT BE SUBSUMED WITHIN (A)(2)?

10:17AM 5    ARE THOSE ALL MATTERS REPORTED BY A GOVERNMENT AGENT WHEN THEY

10:17AM 6    ARE UNDER A DUTY TO REPORT?

10:17AM 7         I THINK THE ANSWER TO THAT HAS TO BE YES, AND THIS IS KIND

10:17AM 8    OF WHAT MURGIO, THE MURGIO COURT WALKS THROUGH.

10:17AM 9         SO THE SCOPE OF (A)(2) HAS BEEN READ TO INCLUDE, YOU KNOW,

10:17AM 10   ROUTINE MATTERS REPORTED BY PUBLIC OFFICIALS IN THE SCOPE OF

10:17AM 11   THEIR EMPLOYMENT.  IT'S A LITTLE BIT LIKE KIND OF THE BUSINESS

10:18AM 12   RECORDS EXCEPTION, BUT FOR GOVERNMENT RECORDS.

10:18AM 13        NOW, WHEN A GOVERNMENT ENTITY CONDUCTS A LEGALLY

10:18AM 14   AUTHORIZED INVESTIGATION AND IT GENERATES A REPORT OF THAT WITH

10:18AM 15   ITS FINDINGS, IT'S BY DEFINITION A MATTER REPORTED WHILE THAT

10:18AM 16   AGENT WAS UNDER AN OBLIGATION TO REPORT.

10:18AM 17        SO SUBSECTION (3), I THINK THE BEST WAY TO THINK OF IT IS

10:18AM 18   IT'S A SPECIAL APPLICATION OF SUBSECTION (2).

10:18AM 19        AND THE GOVERNMENT ARGUES THAT THIS READING -- THEIR

10:18AM 20   STATUTORY INTERPRETATION ARGUMENT IS BASICALLY READING THE WORD

10:18AM 21   "OR" OUT OF THE RULE.

10:18AM 22        BUT JUST BECAUSE IT HAS THE WORD "OR" DOES NOT MEAN IT HAS

10:18AM 23   TO BE READ IN THE SUBJUNCTIVE.  IN FACT, I THINK THE MURGIO

10:18AM 24   COURT IS VERY PERSUASIVE THAT IN ORDER TO READ THIS COHERENTLY,

10:18AM 25   AND WHEN YOU LOOK AT THE DIFFERENT CATEGORIES, IT HAS TO BE THE

10:18AM 1    CASE THAT SUBSECTION (3) IS KIND OF A SPECIAL APPLICATION, IT

10:18AM 2    HAS A SPECIAL MORE KIND OF BLANKET RESTRICTION ON THE USE

10:18AM 3    AGAINST CRIMINAL DEFENDANTS, AND IT REALLY WOULD DO HARM TO THE

10:19AM 4    SCHEME THAT THEY'VE SET OUT HERE TO ALLOW THE GOVERNMENT TO

10:19AM 5    SAY, OH, WELL, IT'S REALLY -- YES, IT'S A REPORT OFFERED

10:19AM 6    AGAINST A CRIMINAL DEFENDANT, BUT IT'S ALSO A MATTER OBSERVED

10:19AM 7    UNDER AN OBLIGATION REPORT.  OF COURSE IT IS.

10:19AM 8        BUT EVEN IF, YOU KNOW, WE ACCEPT FOR THE SAKE OF ARGUMENT

10:19AM 9    THAT (2) IS THEORETICALLY AVAILABLE, THERE'S STILL TWO REASONS

10:19AM 10   WHY THIS REPORT DOES NOT FIT THERE AND THE FACTS HERE DON'T

10:19AM 11   ALLOW FOR IT.

10:19AM 12       WE ASK, YOU KNOW, WERE THE RECORDS MADE BY LAW ENFORCEMENT

10:19AM 13   AND SO THERE'S THE LAW ENFORCEMENT EXCEPTION, AND ARE THEY

10:19AM 14   REPORTING KIND OF ROUTINE, MINISTERIAL OBJECTIVE FACTS, OR DO

10:19AM 15   THEY INCLUDE OBSERVATIONS, CONCLUSIONS, SUMMARIES, KIND OF

10:19AM 16   HIGHER LEVEL THINKING FROM THE GOVERNMENT AGENT?

10:19AM 17       SO TAKING THEM IN THAT ORDER, THE CMS INSPECTORS, AND CMS

10:19AM 18   GENERALLY, IS PROPERLY CONSIDERED LAW ENFORCEMENT WITHIN THE

10:19AM 19   MEANING OF 803(8), AND THE GOVERNMENT CASES EMBRACE THE IDEA

10:20AM 20   THAT ONE DIVIDING LINE IS WHETHER OR NOT THE REGULATORY SCHEME

10:20AM 21   THAT THE AGENCY IS OVERSEEING INVOLVED A POTENTIAL FOR CRIMINAL

10:20AM 22   LIABILITY.

10:20AM 23       SO THAT'S THE HANSON CASE OUT OF THE SEVENTH CIRCUIT.

10:20AM 24   THAT'S THE BUILDING INSPECTOR CASE.  AND THE DECISION THERE,

10:20AM 25   THEY RULED THAT THE BUILDING INSPECTOR WAS NOT LAW ENFORCEMENT,

10:20AM 1    AND THE CRITICAL FACT THERE WAS THEY SAID, WELL, YOU COULD GET

10:20AM 2    A CIVIL FINE, BUT YOU COULD NEVER GET IN CRIMINAL HOT WATER

10:20AM 3    FROM THE BUILDING INSPECTOR AND SO THEY'RE NOT LAW ENFORCEMENT.

10:20AM 4        BUT CMS, THERE ARE CRIMINAL SANCTIONS AVAILABLE FOR

10:20AM 5    INTENTIONAL VIOLATIONS OF CMS.  AND WHILE MANY OF THE SANCTIONS

10:20AM 6    ARE CIVIL IN NATURE, AT LEAST THEY START THAT WAY AND THAT'S

10:20AM 7    THE ROUTINE, CMS IS MORE LIKE AN AGENCY THAT STRADDLES THAT

10:20AM 8    KIND OF CRIMINAL/CIVIL DIVIDE, LIKE THE I.R.S. OR LIKE THE

10:20AM 9    IMMIGRATION OFFICERS THAT HAVE BEEN HELD IN THE NINTH CIRCUIT

10:20AM 10   AND IN OTHER CIRCUITS TO BE LAW ENFORCEMENT WITHIN THE MEANING

10:20AM 11   OF THE RULE.

10:20AM 12            THE COURT:  DEPENDING ON WHAT THEY'RE DOING.

10:20AM 13            MR. LOOBY:  RIGHT.

10:20AM 14            THE COURT:  DEPENDING ON WHAT THEIR CONDUCT IS?

10:21AM 15            MR. LOOBY:  ABSOLUTELY, YOUR HONOR.

10:21AM 16       THERE'S KIND OF THE FIRST QUESTION OF, ARE THEY LAW

10:21AM 17   ENFORCEMENT?  AND THEN THERE'S THE SECOND QUESTION WHICH KIND

10:21AM 18   OF LOOPS BACK TO THE INQUIRY ABOUT ARE THESE ROUTINE

10:21AM 19   OBSERVATIONS OR IS THIS ADVERSARIAL?

10:21AM 20            THE COURT:  SO LICENSE PLATE READING, I THINK THAT'S

10:21AM 21   OROZCO.

10:21AM 22            MR. LOOBY:  RIGHT.  OROZCO IS THE LICENSE PLATE, AND

10:21AM 23   KIND OF A PARADIGMATIC EXAMPLE.  THERE'S HERNANDEZ-ROJAS OUT OF

10:21AM 24   THE NINTH CIRCUIT AS WELL, AND THAT INVOLVES A RECORDATION OF

10:21AM 25   LIKE A DATE OF REMOVAL, KIND OF JUST -- OR ENTRY.  I FORGET

10:21AM 1   WHICH WAY IT IS IN THAT CASE.

10:21AM 2            THE COURT:  IT'S --

10:21AM 3            MR. LOOBY:  IT'S A BORDER CROSSING.

10:21AM 4        YOU KNOW, THIS IS ENTIRELY DIFFERENT AND SUBJECTIVITY IS

10:21AM 5   BAKED INTO THE CMS REPORT FROM THE START FOR ALL OF THE REASONS

10:21AM 6   THAT WE DISCUSSED.

10:21AM 7            THE COURT:  PARDON ME.  WHEN I LOOK AT THIS, WE

10:21AM 8   THINK -- WHEN IT TALKS ABOUT LEGAL OBLIGATIONS, IT'S REALLY,

10:21AM 9   DRILLING DOWN, YOU CAN'T HAVE LAW ENFORCEMENT WHO RESPOND TO A

10:21AM 10  CRIME SCENE AND DO THEIR REPORTS, THAT'S -- YOU CAN'T HAVE THAT

10:22AM 11  COME IN.  THAT'S A POLICE REPORT.  THAT'S A CLASSIC POLICE

10:22AM 12  REPORT, AND THAT SHOULD NOT COME IN BECAUSE THAT'S -- YOU'VE

10:22AM 13  GOT ALL KINDS OF PROBLEMS WITH IT.  IT'S DONE IN THE

10:22AM 14  INVESTIGATION OF THE PROSECUTION.

10:22AM 15           MR. LOOBY:  RIGHT.

10:22AM 16           THE COURT:  AND I THINK EVERYBODY RECOGNIZES THAT.

10:22AM 17  THE GOVERNMENT RECOGNIZES THAT THAT'S NOT PROPER.

10:22AM 18       BUT HERE, THIS IS DIFFERENT.  OF COURSE IT'S DIFFERENT.

10:22AM 19       ONE OF THE QUESTIONS IS, AND I THINK MAYBE YOU'RE ALLUDING

10:22AM 20  TO THAT NOW, IS ARE THESE -- IS CMS, ARE THESE PEOPLE LAW

10:22AM 21  ENFORCEMENT?  ARE THEY LEGAL AUTHORITY?

10:22AM 22       THEY DO HAVE LEGAL AUTHORITY BASED ON THEIR JOB

10:22AM 23  DESCRIPTIONS, THE WORK THAT THEY DO, THEY HAVE SOME REGULATORY.

10:22AM 24  BUT ARE THEY REALLY -- ARE THEY LAW ENFORCEMENT OR DO THEY HAVE

10:22AM 25  AN OBLIGATION, A LEGAL OBLIGATION TO REPORT BECAUSE OF THE

10:22AM 1    NATURE OF THEIR TASK AND THEIR CHARGE?  DO I NEED TO CONSIDER

10:22AM 2    THAT?  IS THAT SOMETHING TO LOOK AT?

10:22AM 3            MR. LOOBY:  WELL, I THINK THEY ARE LAW ENFORCEMENT

10:22AM 4    WHO HAVE -- IT'S CONJUNCTIVE.  IT'S, IN SUBSECTION (2), AN

10:23AM 5    AGENT WHO HAS A LEGAL OBLIGATION TO REPORT, BUT NOT LAW

10:23AM 6    ENFORCEMENT WHEN OFFERED AGAINST A CRIMINAL DEFENDANT.

10:23AM 7        SO CMS, I THINK -- AND THIS IS ASSUMING THAT (A)(2) IS

10:23AM 8    EVEN AVAILABLE -- IT IS PROPER TO THINK OF THEM AS LAW

10:23AM 9    ENFORCEMENT IN THIS SETTING, AND THE GOVERNMENT'S BRIEFING I

10:23AM 10   THINK SAYS, OH, THE CMS REPORT WAS NOT PREPARED IN ANTICIPATION

10:23AM 11   OF THE LITIGATION, OR SOMETHING ALONG THOSE LINES.

10:23AM 12       BUT OF COURSE IT WAS, BECAUSE THIS WAS A FOR CAUSE

10:23AM 13   INSPECTION IN ADDITION TO KIND OF A ROUTINE CERTIFICATION, AND

10:23AM 14   AS YOU DISCUSSED EARLIER, IT WAS THE FEDERAL AGENCY THAT CAME

10:23AM 15   IN AND TOOK OVER CONTROL OF WHAT WOULD BE A NORMAL

10:23AM 16   CERTIFICATION, AND THAT WAS BASED BOTH ON -- ACCORDING TO

10:23AM 17   SARAH BENNETT, BOTH ON COMPLAINTS THAT THE AGENCY HAD RECEIVED

10:23AM 18   BASED ON THE ATTENTION THAT THE COMPANY HAD BEEN RECEIVING IN

10:23AM 19   THE MEDIA AND THAT'S WHAT SHE TOLD THE GOVERNMENT.

10:23AM 20           THE COURT:  SO WE'RE IN THE NINTH CIRCUIT AND

10:23AM 21   FRYBERG TEACHES US SOMETHING ABOUT THIS AREA, DOESN'T IT?  IT

10:24AM 22   TAKES THE DISTINCTION FROM THE SECOND CIRCUIT, I BELIEVE.

10:24AM 23   ISN'T FRYBERG A LITTLE MORE LIMITING?

10:24AM 24           MR. LOOBY:  THE GOVERNMENT CITES FRYBERG FOR THE

10:24AM 25   PROPOSITION THAT THE NINTH CIRCUIT, THE LAW ENFORCEMENT

10:24AM  1      EXCEPTION IS MORE LIMITED IN THE NINTH CIRCUIT THAN ELSEWHERE,

10:24AM  2      AND THAT LANGUAGE GOES ALL OF THE WAY BACK TO OROZCO IN THE

10:24AM  3      '70S, AND AT THAT TIME THE NINTH CIRCUIT WAS, FROM WHAT I

10:24AM  4      UNDERSTAND BASED ON MY RESEARCH, WAS KIND OF AT THE FOREFRONT

10:24AM  5      OF ASKING THAT FOLLOW-UP QUESTION.  IT WAS, LIKE, WE DON'T END

10:24AM  6      THE INQUIRY AT, ARE THEY LAW ENFORCEMENT?  WE ASK, OKAY, IS

10:24AM  7      THIS IMMIGRATION OFFICER, OKAY, THEY ARE LAW ENFORCEMENT, BUT

10:24AM  8      ARE THEY ENFORCING THE LAW AT THIS TIME?  IS THIS A SUBJECTIVE

10:24AM  9      ADVERSARIAL PROCEEDING OR ARE THEY JUST STAMPING A PASSPORT?

10:24AM 10          AND AT THE TIME THE NINTH CIRCUIT WAS KIND OF AT THE

10:24AM 11      FOREFRONT OF THAT UNDER THE NEW RULES OF TRACING KIND OF WHAT

10:24AM 12      WAS THE COMMON LAW EXCEPTION TO WHAT ENDED UP BEING IN THE

10:25AM 13      FEDERAL RULES OF EVIDENCE.

10:25AM 14          THE OTHER CIRCUITS HAVE CAUGHT UP, AND SO THE SEVENTH

10:25AM 15      CIRCUIT ASKS THESE SAME QUESTIONS THESE DAYS.  IT DOESN'T SAY,

10:25AM 16      OH, LAW ENFORCEMENT.  WE ASK, ARE THEY LAW ENFORCEMENT?  AND

10:25AM 17      THEN WE DON'T ASK ABOUT, WELL, IS THIS A ROUTINE OBSERVATION

10:25AM 18      THAT THEY MADE KIND OF JUST COMING IN AND DOING PAPERWORK, OR

10:25AM 19      ARE THEY OUT IN THE FIELD, ARE THEY INVESTIGATING, ARE THEY

10:25AM 20      USING THE PROFESSIONAL JUDGMENT?  IS ANOTHER CASE, ANOTHER KIND

10:25AM 21      OF PRINCIPAL THAT YOU SEE INFLUENCING THE LAW?

10:25AM 22          AND THAT'S WHAT THE CMS INSPECTORS WERE DOING BECAUSE THEY

10:25AM 23      WENT IN AND WERE LOOKING AND THEY HAD A FEW THINGS THAT THEY

10:25AM 24      WANTED TO LOOK AT.  THEY KIND OF RECOGNIZED THAT THEY WERE

10:25AM 25      GOING TO WRITE A REPORT THAT COULD LEAD TO, YOU KNOW, A BACK

10:25AM 1    AND FORTH, A DIALOGUE WITH THE REGULATED ENTITY THAT WOULD, THE

10:25AM 2    NEXT STEP UP FROM THAT IS AN ALJ PROCEEDING, AND THEN THERE IS

10:25AM 3    FEDERAL COURT REVIEW AND POTENTIAL APPEAL RIGHTS AND THE LIKE.

10:25AM 4        AND I ACTUALLY THINK IT'S HELPFUL TO -- I THINK THAT THE

10:26AM 5    STRUCTURE OF THE CMS REPORT KIND OF DRILLS THIS POINT HOME.

10:26AM 6        MS. SAHARIA, IF YOU COULD PULL UP THE REPORT?  THIS IS

10:26AM 7    DEFENSE EXHIBIT 12 AT ECF 581-1.

10:26AM 8        THIS IS WHERE WE HAVE THE JANUARY 2016 REPORT.

10:26AM 9        SO IT BEGINS WITH A COVER LETTER THAT IS NOTIFYING THE

10:26AM 10   COMPANY THAT THERE HAVE BEEN CERTAIN CONDITION AND STANDARD

10:26AM 11   LEVEL DEFICIENCIES IDENTIFIED AND THAT THERE'S BEEN AN

10:26AM 12   IMMEDIATE JEOPARDY FINDING, AND IT CITES THE REGULATORY

10:26AM 13   PROVISIONS THAT ARE IN -- THAT ARE GOING TO BE CITED LATER ON.

10:27AM 14       IT INFORMS THE LABORATORY OF ITS RULINGS AND IT REQUESTS A

10:27AM 15   RESPONSE WITHIN 10 DAYS, WHICH IS A PRETTY AGGRESSIVE

10:27AM 16   TIMEFRAME.

10:27AM 17       IF YOU LOOK AT ONE EXAMPLE OF THE CITATION -- SO WE CAN GO

10:27AM 18   TO THE FIRST DEFICIENCY -- YOU KNOW, NO PARTICULAR DEFICIENCY

10:27AM 19   IS UNIQUE.  THEY ALL FOLLOW THE SAME STRUCTURE.

10:27AM 20       THEY START OUT WITH FIRST THE REGULATORY TEXT.  EACH ONE

10:27AM 21   OF THEM, THEY COPY AND PASTE THE WHOLE REGULATION IN, AND THEN

10:27AM 22   IT SETS FORTH WHAT FEELS LIKE AN ADJUDICATION AND NOT A ROUTINE

10:27AM 23   MINISTERIAL OBSERVATION.  IT IS, I REVIEWED FACTS AND I'M

10:27AM 24   OPINING THESE FACTS AS TO THE LAW AND I'M FINDING EITHER THE

10:27AM 25   CONDITION LEVEL OR STANDARD LEVEL REGULATORY REQUIREMENT NOT

10:27AM 1    MET.

10:27AM 2         IT THEN SUMMARIZES THE FACTS IN ITS DETERMINATION AND IT

10:27AM 3    USES THE PHRASE "BASED ON."  SO EACH ONE OF THESE ARE KIND OF

10:27AM 4    LIKE A MINI LITTLE RULING FROM A GOVERNMENT AGENT WHO WENT INTO

10:27AM 5    A LABORATORY AND KIND OF HAD FREE REIN TO PICK AROUND, AND I

10:28AM 6    THINK THIS REPORT REALLY ANSWERS THE QUESTION OF, IF THIS IS

10:28AM 7    SOMETHING THAT THEY HAD AN OBLIGATION TO REPORT, IS THIS

10:28AM 8    SOMETHING THAT CAME ACROSS SARAH BENNETT'S DESK ONE DAY AND

10:28AM 9    THAT SHE STAMPED?

10:28AM 10        NO.  THIS IS A GOVERNMENT INVESTIGATION.  THAT'S REALLY

10:28AM 11   WHY IT'S (A)(3), (A)(3).  THAT'S REALLY WHY WE SHOULD ONLY BE

10:28AM 12   DEALING WITH THAT.

10:28AM 13        BUT ASSUMING THAT WE'RE IN (A)(2), THAT'S WHY CMS WAS

10:28AM 14   ACTING AS LAW ENFORCEMENT IN ITS CAPACITY.  IT'S AN ADVERSARIAL

10:28AM 15   INTERACTION, AND ADVERSARIAL DOESN'T MEAN IT HAS TO BE NASTY,

10:28AM 16   IT'S JUST, WE ARE INSPECTING YOU AND YOU HAVE TO OPEN YOUR

10:28AM 17   BOOKS AND WE ARE GOING TO LOOK AT THEM ALL AND THERE IS

10:28AM 18   POTENTIAL CIVIL AND, IMPORTANTLY, CRIMINAL LIABILITY FOR WHAT

10:28AM 19   WE FIND, AND WE'RE GOING TO TAKE THIS AND WE'RE GOING TO TELL

10:28AM 20   YOU WHAT WE FOUND AND THAT'S GOING TO KICK OFF A SERIES OF

10:29AM 21   STEPS THAT COULD VERY LIKELY LEAD TO LITIGATION.

10:29AM 22        SO I DON'T THINK THAT THIS IS JUST AN OBSERVATION,

10:29AM 23   SOMETHING THAT WAS OBSERVED UNDER A DUTY TO REPORT.

10:29AM 24             THE COURT:  ISN'T THAT THEIR CHARGE, THEY'RE

10:29AM 25   SUPPOSED TO GO OUT AND LOOK AT LABORATORIES AND THEY HAVE THEIR

10:29AM  1      CLIPBOARDS AND THEIR CHECKLISTS AND THEY PICK THINGS OFF?

10:29AM  2          MR. LOOBY:  THERE ARE NO CHECKLISTS.  THERE ARE A

10:29AM  3      FEW MANUALS THAT KIND OF EXPLAIN WHAT THEY SHOULD BE LOOKING

10:29AM  4      ATM AND THEY USE THE PHRASE KIND OF OUTCOME DETERMINATIVE.

10:29AM  5          BUT THE THRUST OF ALL OF THE GUIDANCE MATERIAL THAT CMS

10:29AM  6      PUTS UP IS THAT IT REALLY RESTS A LOT OF THE DECISION MAKING IN

10:29AM  7      THE DISCRETION OF ITS INSPECTORS.

10:29AM  8          THEY ARE GIVEN, YOU KNOW, FULL DISCRETION OVER KIND OF

10:29AM  9      WHAT YOU SHOULD ASK ABOUT, WHAT LEVEL OF DOCUMENTATION SHOULD

10:29AM  10     MAKE THEM COMFORTABLE THAT THE LAB IS EITHER COMPLIANT, OR HOW

10:29AM  11     MUCH THEY NEED TO SEE TO DETERMINE IF THEY'RE NOT COMPLIANT.

10:29AM  12         IF THEY'RE NOT COMPLIANT, IS IT STANDARD LEVEL?  IS IT

10:30AM  13     CONDITION LEVEL?  IS THERE IMMEDIATE JEOPARDY?

10:30AM  14         YOU KNOW, THERE ARE NO RULES ABOUT THIS.  AND THIS IS WHAT

10:30AM  15     SARAH BENNETT TOLD THE GOVERNMENT, AND SHE ALSO TOLD THEM THIS,

10:30AM  16     YOU KNOW, OF COURSE THERE ARE CERTAIN THINGS THAT A LAB

10:30AM  17     INSPECTOR PROBABLY HAS A -- THIS IS WHAT I DO.  I'VE BEEN ON

10:30AM  18     THE JOB FOR 20 YEARS.  I'M GOING TO LOOK AT THE QC DATA, I'M

10:30AM  19     GOING TO LOOK AT THE PC DATA.  BUT THAT -- JUST BECAUSE THOSE

10:30AM  20     ARE A LITTLE BIT ROUTINE DOESN'T MEAN THE OBSERVATIONS THEY'RE

10:30AM  21     MAKING ARE NOT REQUIRING DISCRETION, PROFESSION JUDGMENT, AND

10:30AM  22     DISCERNMENT.

10:30AM  23         I SHOULD ALSO ADD, AS I MENTIONED EARLIER, THE REPORT AT

10:30AM  24     MANY JUNCTURES WILL KIND OF SAY WHAT THE CLIA LAB STAFF AT

10:30AM  25     THERANOS TOLD THE INSPECTOR.  SO IT WILL SAY, LIKE, I FOUND

10:30AM  1    THERE WASN'T PAPERWORK FOR THIS.  I ASKED THE QA MANAGER WHERE

10:31AM  2    IS IT AND HE SAID HE COULDN'T FIND IT.

10:31AM  3        SOME OF THESE FINDINGS, AND WE DON'T HAVE TO GET INTO IT,

10:31AM  4    BUT SOME OF THESE OBSERVATIONS IN THE JANUARY REPORT, THEY'RE

10:31AM  5    VERY MUCH CONTESTED IN THE CASE AND THERE'S EVIDENCE -- THERE'S

10:31AM  6    GOING TO BE EVIDENCE IN THE CASE THAT SUGGESTS THAT MAYBE

10:31AM  7    THEY'RE AN INCOMPLETE PICTURE, AND THAT REALLY IS -- KIND OF

10:31AM  8    DRIVES HOME THE DANGER OF PUTTING IN KIND OF THE JANUARY 2016

10:31AM  9    REPORT THAT INCLUDES MULTIPLE -- THE WHOLE THING IS HEARSAY,

10:31AM  10   BUT WITHIN IT THERE'S ALSO HEARSAY.  AND IT HASN'T BEEN TESTED.

10:31AM  11       THERANOS EVENTUALLY KIND OF SETTLED THE MATTER WITH CMS.

10:31AM  12   IT DOESN'T BEHOOVE A LAB COMPANY TO KIND OF GO THROUGH EACH

10:31AM  13   CITATION NECESSARILY AND OFFER -- KIND OF FIGHT WITH THE

10:31AM  14   AGENCY.  A LOT OF THERANOS'S RESPONSES WERE, WE ARE WORKING TO

10:31AM  15   BE BETTER.

10:31AM  16              THE COURT:  OKAY.  ALL RIGHT.

10:31AM  17              MR. LOOBY:  THANK YOU, YOUR HONOR.

10:31AM  18              THE COURT:  MR. LEACH, ARE YOU RISING TO RESPOND TO

10:32AM  19   THIS?

10:32AM  20              MR. LEACH:  I AM.

10:32AM  21              THE COURT:  WELL, I'M EAGER TO HEAR YOUR RESPONSE,

10:32AM  22   BUT LET'S TAKE A BREAK.  WE'LL TAKE ABOUT 10 OR 15 MINUTES NOW.

10:32AM  23   ALL RIGHT.

10:32AM  24              MR. LEACH:  OF COURSE.

10:32AM  25              THE COURT:  THANK YOU.

10:32AM  1           THE CLERK:  THE COURT WILL TAKE A RECESS AT THIS

10:32AM  2      POINT.

10:33AM  3           (RECESS FROM 10:33 A.M. UNTIL 10:51 A.M.)

10:51AM  4           THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

10:51AM  5      PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

10:51AM  6      MR. LEACH, YOU'D LIKE TO RISE FOR THE GOVERNMENT AS TO

10:51AM  7      THIS MOTION?

10:51AM  8           MR. LEACH:  YES.  THANK YOU VERY MUCH, YOUR HONOR.

10:52AM  9      SO THE OBJECTIONS TO THE CMS SURVEY FINDINGS ARE

10:52AM  10     THREE-FOLD:  RELEVANCE, 403, AND HEARSAY, AND I'D LIKE TO TAKE

10:52AM  11     THEM IN THAT ORDER IF I COULD, YOUR HONOR.

10:52AM  12     RELEVANCE, OBVIOUSLY, IS A LOW STANDARD.  WE SET THAT

10:52AM  13     FORTH IN THE BRIEF.  AND JUST TO GIVE YOU SOME CONCRETE

10:52AM  14     EXAMPLES, IF A CMS INSPECTOR GOES INTO THERANOS LAB AND SEES

10:52AM  15     THAT AN EDISON DEVICE IS FAILING QC FOR 15 CONSECUTIVE DAYS,

10:52AM  16     THAT TENDS TO SHOW THERE ARE ISSUES WITH THE EDISON, WHICH GOES

10:52AM  17     DIRECTLY TO THE INVESTOR COUNT AND DIRECTLY TO THE PATIENT

10:52AM  18     COUNT.

10:52AM  19     IF A CMS INSPECTOR GOES INTO THE THERANOS LAB AND SEES

10:52AM  20     THAT A SET OF DOCUMENTS SHE'S ASKED FOR AND IS REVIEWING A

10:52AM  21     THERANOS EDISON DEVICE HAS FAILED QC, BUT THEY'RE STILL

10:53AM  22     REPORTING PATIENT RESULTS, THAT'S OBVIOUSLY EVIDENCE THAT THE

10:53AM  23     DEVICE ISN'T WORKING AND THAT THERANOS IS IGNORING RED FLAGS

10:53AM  24     ABOUT ITS DEVICE.

10:53AM  25     I HEARD MY FRIEND ON THE FRIEND ON THE OTHER SIDE THAT THE

10:53AM 1   QC IS AN INDICATOR THAT SOMETHING IS AWRY.  I COULDN'T AGREE

10:53AM 2   MORE WITH THAT.

10:53AM 3       AND LABS LIKE THERANOS ARE SUPPOSED TO HAVE QC PROCEDURES

10:53AM 4   TO IDENTIFY WHAT THE PROBLEM IS, INVESTIGATE IT, AND FIX IT.

10:53AM 5       THAT'S NOT A PROCEDURE CMS IS CHECKING TO MAKE SURE THAT

10:53AM 6   THEY'RE FOLLOWING THEIR OWN PROCEDURES.  CMS HAS STANDARDS AND

10:53AM 7   CONDITIONS AND IT'S MAKING SURE THOSE STANDARDS AND CONDITIONS

10:53AM 8   ARE BEING FOLLOWED.  SO IT'S MUCH MORE THAN JUST A FAILURE TO

10:53AM 9   FOLLOW PROCEDURE THERE.

10:53AM 10      AND THESE ARE NOT JUST MY RELEVANCE ARGUMENTS, YOUR HONOR.

10:53AM 11  THESE ARE RELEVANCE ARGUMENTS THAT THE DEFENDANT MADE IN

10:53AM 12  REALTIME TO HER BOARD AND ON HER WEBSITE.

10:53AM 13      SHE SAYS ONE OF THE WAYS YOU KNOW THAT THERANOS'S TESTS

10:53AM 14  ARE ACCURATE AND RELIABLE IS BECAUSE OF ITS CLIA ACCREDITATION,

10:54AM 15  BECAUSE IT'S COMPLYING WITH THESE STANDARDS AND CONDITIONS.

10:54AM 16  SHE DREW THE RELEVANCE CONNECTION.

10:54AM 17      ALTHOUGH I THINK IT'S PATENT FROM A CMS INSPECTOR GOING IN

10:54AM 18  AND LOOKING AT THE EDISONS AND LOOKING AT THE DOCUMENTS THAT

10:54AM 19  ARE PROVIDED.

10:54AM 20      IN ADDITION, I THINK THEY ARE CHERRY PICKING CERTAIN

10:54AM 21  STATEMENTS FROM SARAH BENNETT, THE CMS INSPECTOR WHO WE EXPECT

10:54AM 22  TO TESTIFY TO SAY THAT CMS REGULATIONS HAVE NOTHING TO DO WITH

10:54AM 23  ACCURACY AND RELIABILITY.  SHE WILL NOT SAY THAT.

10:54AM 24      THESE STANDARDS AND CONDITIONS ARE DESIGNED TO ENSURE

10:54AM 25  ACCURACY AND RELIABILITY.  THEY DON'T, YOU KNOW, EXIST FOR

10:54AM   1    THEIR OWN SAKE IN A VACUUM.  THEY'RE THERE AS THE MEASURES TO

10:54AM   2    MAKE SURE THAT THESE TESTS ARE ACCURATE AND RELIABLE.

10:54AM   3         AND WHAT THE GOVERNMENT IS SEEKING FROM THE CMS FINDINGS

10:54AM   4    IS THE OBSERVATIONS THAT THESE INSPECTORS MAKE WHEN THEY GO IN

10:54AM   5    IN SEPTEMBER OF 2015.  WHAT WAS THE QC DATA FOR THIS EDISON

10:55AM   6    DEVICE ON THESE DATES?  WHAT DID YOU SEE IN TERMS OF CV'S AND

10:55AM   7    STANDARD VARIATIONS FOR THESE ASSAYS?  WHAT DID YOU SEE THAT

10:55AM   8    THERANOS HAD DONE ABOUT IT WHEN THEY WERE OUT OF RANGE?  AND

10:55AM   9    THE ANSWER, FOR THE MOST PART, IS NOTHING.

10:55AM  10         AND THESE THINGS THAT CMS SEES, HEARS, AND DOES, IT'S WHAT

10:55AM  11    THEY DO EVERY DAY IN THEIR INSPECTIONS, AND THEY WILL BE

10:55AM  12    SUBJECT TO CROSS-EXAMINATION.  I JUST -- I DON'T THINK THERE'S

10:55AM  13    A CLOSE QUESTION ON RELEVANCE AND 403.

10:55AM  14         THESE OBVIOUSLY GO TO THE HEART OF THE GOVERNMENT'S

10:55AM  15    ALLEGATIONS.  I THINK SARAH BENNETT AND THE CMS STANDARDS DRAW

10:55AM  16    THE CONNECTION BETWEEN ACCURACY AND RELIABILITY, AND THIS

10:55AM  17    REALLY IS A CASE OF ONE OF THE ONLY TIMES WHERE SOMEBODY FROM

10:55AM  18    THE OUTSIDE GOT A LOOK UNDER THE HOOD AT THERANOS AND REPORTED

10:55AM  19    WHAT THEY SAW.

10:55AM  20         AND WHAT THEY SAW WAS SO TROUBLING THAT THEY ISSUED THE

10:55AM  21    FORM 2567 WHICH FOUND THAT THERE WAS IMMEDIATE JEOPARDY TO

10:56AM  22    PATIENTS BECAUSE CERTAIN STANDARDS AND CONDITIONS WEREN'T BEING

10:56AM  23    MET.

10:56AM  24              THE COURT:  CAN I ASK YOU SOMETHING?  I'M SORRY TO

10:56AM  25    INTERRUPT YOUR PRESENTATION.

10:56AM 1        BUT ON A 403 QUESTION, WOULD THAT -- IS THAT MORE

10:56AM 2   PREJUDICIAL THAN PROBATIVE?  IF THE STATEMENT COMES IN, IF THIS

10:56AM 3   COMES IN, I THINK YOUR COLLEAGUE OPPOSITE WOULD SAY, WELL, EVEN

10:56AM 4   IF IT COMES IN, JUDGE, YOU CAN'T LET THAT IN BECAUSE THAT'S FAR

10:56AM 5   TOO PREJUDICIAL AND THE PROBATIVE VALUE IS CLEARLY OUTWEIGHED

10:56AM 6   BY THE PREJUDICIAL IMPACT THAT IT WOULD HAVE ON A JURY,

10:56AM 7   INDICATING RED LIGHTS FLASHING.

10:56AM 8        MR. LEACH:  I DIDN'T HEAR THAT SPECIFIC ARGUMENT

10:56AM 9   FROM MY COLLEAGUE, AND CERTAINLY WE ARE OPEN TO REDACTIONS TO

10:56AM 10  THE REPORT, OR IF THERE ARE SPECIFIC ASPECTS LIKE THAT THAT ARE

10:56AM 11  IN THE 403 BALANCING, I CERTAINLY THINK THAT IS IN PLAY

10:57AM 12  SOMEWHERE.

10:57AM 13       BUT I'M A LITTLE HESITANT BECAUSE IT ALSO HAS VERY

10:57AM 14  SPECIFIC LEGAL CONSEQUENCES THAT ARE GOING TO BLEED INTO THE

10:57AM 15  NEXT MOTION, AND I WOULDN'T -- YOU KNOW, I CAN FORESEE

10:57AM 16  INSTANCES WHERE MY FRIENDS ON THE OTHER SIDE WANT TO MINIMIZE

10:57AM 17  THE SERIOUSNESS OF SOME OF THE THINGS THAT CMS IS FINDING AND I

10:57AM 18  WOULD WANT TO BE ABLE TO RESPOND TO THOSE.

10:57AM 19       AND ALSO ON JUST THE LEGAL CONSEQUENCES, THE DEFENDANT IS

10:57AM 20  TRYING TO RUN AWAY FROM HER ADMISSIONS AFTER THE CMS REPORT.

10:57AM 21  AFTER THIS DAMAGING REPORT, THEY TOLD CMS -- AND THIS IS AT

10:57AM 22  72-7, I'M SORRY, 727-1 -- "WE, THERANOS, SEE A GLOBAL AND

10:57AM 23  LONG-TERM FAILURE OF QUALITY CONTROL PROGRAM FOR OUR

10:57AM 24  PROPRIETARY DEVICES AND WE CONCLUDE THERE'S A POSSIBLE PATIENT

10:57AM 25  IMPACT FOR EVERY TEST REPORTED ON THE TSPU."

10:58AM 1      THAT'S THERANOS'S WORDS TO CMS THAT THEY'RE TRYING TO RUN

10:58AM 2  AWAY FROM NOW.

10:58AM 3      SO IN THIS 403 BALANCING ON, IS THERE IMMEDIATE JEOPARDY,

10:58AM 4  I DON'T WANT TO CREATE A FALSE IMPRESSION THAT THERE'S NOT

10:58AM 5  SOMETHING VERY, VERY SERIOUS HERE, AND I THINK IT'S ABSOLUTELY

10:58AM 6  CRITICAL THAT THEY ADMIT THAT THERE'S A POSSIBLE IMPACT TO

10:58AM 7  PATIENT TEST RESULTS IN THEIR RESPONSE TO CMS.

10:58AM 8      BUT CERTAINLY THAT TYPE OF -- YOU KNOW, THE CMS REPORT IS

10:58AM 9  A COMBINATION OF FACTUAL OBSERVATIONS THAT THE INSPECTOR IS

10:58AM 10  MAKING, A DETERMINATION OF IS THIS CONDITION BEING MET OR NOT

10:58AM 11  MET, AND SOLICITING A RESPONSE.

10:58AM 12      AND RESPONSE IS IMPORTANT, TOO, BECAUSE MOST OF THERANOS'S

10:58AM 13  RESPONSE IS, YOU'RE RIGHT, YOU'RE RIGHT, WE'LL FIX THAT, YOU'RE

10:58AM 14  RIGHT.

10:58AM 15      NOT THAT DIDN'T HAPPEN.

10:58AM 16      AND THOSE ARE ADMISSIONS.

10:58AM 17          THE COURT:  DOES IT MATTER THAT IT NEVER WAS FIXED?

10:59AM 18          MR. LEACH:  YES.

10:59AM 19          THE COURT:  AND ULTIMATELY, I THINK THAT'S WHAT THE

10:59AM 20  EVIDENCE WILL SHOW, THAT WHAT I'VE GLEANED HERE, THAT THERE

10:59AM 21  WASN'T COMPLIANCE SUCH THAT THERE WAS SOME TYPE OF A -- IT WENT

10:59AM 22  THROUGH A PROCEDURE AND ULTIMATELY THERE WAS A SETTLEMENT OF

10:59AM 23  SOME SORT.

10:59AM 24          MR. LEACH:  WELL, BEFORE THE SETTLEMENT, YOUR HONOR,

10:59AM 25  THERANOS ON ITS OWN ELECTS TO CLOSE, SHUTTER ITS CLIA LAB, AND

10:59AM  1     THAT IS NOT A SETTLEMENT.  IT'S A BUSINESS DECISION.  I HATE TO

10:59AM  2     USE THE WORD BUSINESS DECISION.  IT'S A DECISION THAT

10:59AM  3     MS. HOLMES MADE IN AUGUST OF 2016 TO COMPLETELY SHUTTER THE

10:59AM  4     LAB.

10:59AM  5          SHE TOLD THE PRESS, I KNOW WHAT WE'VE BUILT, AND SHE

10:59AM  6     ESSENTIALLY SAYS, I WANT TO START FROM THE GROUND UP.

10:59AM  7          SO IT DOES END WITH THE LAB BEING SHUTTERED AND THERE IS A

10:59AM  8     FORMAL SETTLEMENT YEARS LATER, BUT IT'S NOT THE SETTLEMENT BY

10:59AM  9     ITSELF THAT RESULTED IN THE LAB BEING CLOSED.

10:59AM 10          THE COURT:  THANK YOU.  SORRY TO INTERRUPT YOU.

11:00AM 11          MR. LEACH:  WITH RESPECT TO THE CONNECTION TO THE

11:00AM 12     RELEVANCE AND 403 ARGUMENTS, THERE ARE LOTS OF FACTUAL

11:00AM 13     OBSERVATIONS IN THE CMS REPORT.  WHAT IS THE CD?  WHAT DO THE

11:00AM 14     LEVEY-JENNINGS CHARTS SHOW?

11:00AM 15          AND THOSE ARE THE TYPE OF ROUTINE OBSERVATIONS POLICE

11:00AM 16     OFFICERS WOULD BE ABLE TO MAKE IF THEY CAME IN, ALTHOUGH I'M

11:00AM 17     GOING TO GET TO THE LAW ENFORCEMENT THING, AND THEY SHOULD BE

11:00AM 18     ABLE TO TESTIFY TO WHAT THEY SAW, HEARD, DID, AND CONCLUDED

11:00AM 19     DURING THAT EXAM.  THAT'S WHAT THEY DO EVERY DAY AND THEY'LL BE

11:00AM 20     SUBJECT TO CROSS-EXAMINATION.

11:00AM 21          SO I JUST DON'T THINK THAT THERE ARE, WITH THE POSSIBLE

11:00AM 22     EXCEPTION THAT YOUR HONOR IS IDENTIFYING, THERE WOULD BE

11:00AM 23     POSSIBLE RELEVANCE OR A 403 ISSUE.

11:00AM 24          WITH RESPECT TO HEARSAY, I REALLY THINK THE UPSHOT OF THE

11:01AM 25     DEFENSE ARGUMENT, YOUR HONOR, IS THAT THERE CAN'T BE GOVERNMENT

11:01AM 1    BUSINESS RECORDS.  THEY'RE READING AWAY ON SOME LEVEL 803(8)

11:01AM 2    PARALLELS TO 803(6), AND IT'S BUSINESS RECORDS FOR THE

11:01AM 3    GOVERNMENT.

11:01AM 4        THERE'S A CONFRONTATION CLAUSE ISSUE BREWING HERE.  WE

11:01AM 5    CAN'T JUST HAVE THE GOVERNMENT MARKING FBI 302'S AND RESTING

11:01AM 6    OUR CASE.  WE JUST CAN'T BE MARKING INS REPORTS FROM 20 YEARS

11:01AM 7    AGO WITHOUT THE ABILITY TO ASK QUESTIONS ABOUT WHAT HAPPENED.

11:01AM 8        THAT'S NOT GOING TO HAPPEN HERE.  SARAH BENNETT IS GOING

11:01AM 9    TO BE ON THE STAND AND CAN TESTIFY TO ALL OF THAT.

11:01AM 10       AND THEY WANT TO READ AWAY THIS WORD "OR."  WE CAN USE

11:01AM 11   803(8) TO GET IN WHAT LOOKS TO ME A LOT LIKE A GOVERNMENT

11:01AM 12   BUSINESS RECORD.

11:01AM 13       YES, THERE ARE SOME JUDGMENT AND SUBJECTIVITY IN THERE,

11:01AM 14   BUT IF YOU LOOK AT 803(6), IT TOLERATES OPINIONS FROM DOCTORS,

11:02AM 15   IT TOLERATES JUDGMENTS AND CONCLUSIONS, AND THE GOVERNMENT

11:02AM 16   SHOULD NOT GET ANY LESSER OF A BENEFIT HERE, PARTICULARLY WHEN

11:02AM 17   THE WITNESS IS GOING TO BE ON THE STAND ANSWERING QUESTIONS AND

11:02AM 18   CROSS-EXAMINED.

11:02AM 19       THERE'S A LOT OF CONVERSATION ABOUT THE LAW ENFORCEMENT

11:02AM 20   EXCEPTION.  THE NINTH CIRCUIT DOES SAY THAT YOU HAVE TO LOOK AT

11:02AM 21   THAT NARROWLY.

11:02AM 22       AND I THINK IT'S A MISTAKE TO TRY TO CATEGORIZE CMS

11:02AM 23   INSPECTORS AS LAW ENFORCEMENT PERSONNEL.  THESE ARE LARGELY

11:02AM 24   SCIENTISTS, DOCTORS.  THEY DON'T HAVE A GUN.  SARAH BENNETT

11:02AM 25   DOES NOT HAVE THE AUTHORITY TO PUT SOMEBODY IN PRISON.  SHE'S

11:02AM 1    THERE TO MAKE SURE THAT THE LAB IS MEETING CLIA REGULATIONS

11:02AM 2    WHICH ARE DESIGNED TO ENSURE ACCURACY AND RELIABILITY.

11:02AM 3         AND IF SARAH BENNETT IS LAW ENFORCEMENT PERSONNEL, THEN A

11:02AM 4    WHOLE HOST OF GOVERNMENTAL AGENTS ARE ALSO LAW ENFORCEMENT

11:03AM 5    PERSONNEL, AND YOU'RE ESSENTIALLY WEEDING OUT ANY ABILITY FOR

11:03AM 6    THE GOVERNMENT TO GET WHAT ARE ESSENTIALLY GOVERNMENT BUSINESS

11:03AM 7    RECORDS INTO EVIDENCE.

11:03AM 8         THE COURT:  I THINK WHAT MR. LOOBY'S POINT IS, AND

11:03AM 9    HE'LL REMIND US, THAT THE INSPECTORS DO HAVE SOME AUTHORITY,

11:03AM 10   THEY CAN SHUT A LAB DOWN.  HE SAID THAT THEY COULD IMPOSE OR

11:03AM 11   PERHAPS RECOMMEND CIVIL FINES, CIVIL PENALTIES.

11:03AM 12        BUT HE SEEMED TO SAY THAT THEY ALSO HAVE SOME AUTHORITY TO

11:03AM 13   EITHER RECOMMEND OR IMPOSE, I CAN'T REMEMBER WHICH HE SAID,

11:03AM 14   CRIMINAL SANCTIONS.

11:03AM 15        MR. LEACH:  I THINK THAT'S PROBABLY EQUALLY TRUE FOR

11:03AM 16   A HOST OF CIVIL AUTHORITIES WITHIN HHS, WITHIN OTHER GOVERNMENT

11:03AM 17   AGENCIES, THE S.E.C., FOR EXAMPLE.  OBVIOUSLY THEY CAN MAKE

11:03AM 18   RECOMMENDATIONS.  THEY CAN REFER SOMETHING.

11:03AM 19        I IMAGINE THAT WAS EQUALLY TRUE IN THE SEVENTH CIRCUIT

11:03AM 20   CASE WITH THE BUILDING INSPECTORS.

11:03AM 21        I THINK THE LINE THAT THE GOVERNMENT IS ADVOCATING HERE

11:04AM 22   FOR IS THAT THERE'S AN INSPECTION ABILITY, AND THEN THERE'S THE

11:04AM 23   INVESTIGATIVE FUNCTION WHERE A LAW ENFORCEMENT AGENCY IS

11:04AM 24   COMMENCING AN INVESTIGATION AND IS GOING OUT AND INTERVIEWING

11:04AM 25   FOLKS WITH AN EYE TOWARDS PROVING A CRIME VERSUS AN INSPECTOR

11:04AM 1    WHO IS THERE TO MAKE SURE THAT THE CIVIL LAW IS BEING FOLLOWED.

11:04AM 2        SO I JUST THINK IT OVERPLAYS THE ROLE OF CMS INSPECTORS TO

11:04AM 3    ANALOGIZE THEM TO AN I.R.S. CRIMINAL INVESTIGATOR OR AN FBI

11:04AM 4    AGENT.

11:04AM 5        AND IF YOU ACCEPT THAT BROAD VIEW, THAT THE POSSIBILITY OF

11:04AM 6    A CRIME BEING OUT THERE SOME DAY ANYTIME THE GOVERNMENT GOES

11:04AM 7    AND TALKS TO THEM, YOU'RE GOING TO READ -- YOU'RE GOING TO

11:04AM 8    DISABLE THE GOVERNMENT FROM EVER GETTING ANY OF THEIR DOCUMENTS

11:04AM 9    INTO EVIDENCE, AND AT A MINIMUM THEY SHOULD BE PERMITTED TO

11:04AM 10   COME IN AND TALK ABOUT WHAT THEY SAW, HEARD, DID, AND

11:05AM 11   CONCLUDED.

11:05AM 12       THE BEST NINTH CIRCUIT AUTHORITY IS FRYBERG THAT SAYS YOU

11:05AM 13   SHOULD READ THAT IN LIMITED FASHION.  THE NINTH CIRCUIT HAS

11:05AM 14   READ IT TO INCLUDE CRIMINAL LAW ENFORCEMENT OFFICERS IF THEY'RE

11:05AM 15   REALLY STICKING TO SOMETHING VERY MINISTERIAL.

11:05AM 16       I WOULD ALSO NOTE THAT 803(8) DOES NOT USE THIS SUBJECTIVE

11:05AM 17   MINISTERIAL LANGUAGE.  THE STANDARD IS, IS THE INDIVIDUAL UNDER

11:05AM 18   A LEGAL DUTY TO RECORD WHAT THEY'RE DOING, AND HERE

11:05AM 19   SARAH BENNETT ALMOST CERTAINLY IS.

11:05AM 20       MAYBE THERE'S SOME JUDGMENT IN WHAT SHE ASKED FOR, BUT

11:05AM 21   WHATEVER SHE ASKED FOR, SHE WRITES IT DOWN AND THAT'S HER DUTY

11:05AM 22   TO DO THAT.

11:05AM 23       THERE WAS SOME CONVERSATION ABOUT HEARSAY WITHIN THE

11:05AM 24   REPORT.  THERE'S, WITHIN THE REPORT, SOME STATEMENT OF THERANOS

11:05AM 25   AGENTS.  THERE'S NOT A HEARSAY PROBLEM THERE, YOUR HONOR,

11:05AM   1    BECAUSE THESE ARE STATEMENTS OF AGENTS OF MS. HOLMES.  THESE

11:05AM   2    ARE PEOPLE WHO ARE HER AGENTS UNDER OTHER DIVISIONS OF 803.

11:06AM   3          WITH THAT, YOUR HONOR, UNLESS THE COURT HAS FURTHER

11:06AM   4    QUESTIONS, I'LL SUBMIT.

11:06AM   5              THE COURT:  NO.  THANK YOU.

11:06AM   6              MR. LOOBY:  SO WITH THE COURT'S INDULGENCE, I THINK

11:06AM   7    WE'LL START WITH HEARSAY BECAUSE THAT'S WHERE WE ENDED.

11:06AM   8          SO THE GOVERNMENT IS RELYING ON THE FRYBERG CASE OUT OF

11:06AM   9    THE NINTH CIRCUIT, AND IN THE -- FRYBERG INVOLVED A RETURN OF

11:06AM  10    SERVICE FORM THAT WAS SERVED BY A TRIBAL POLICE OFFICER.  SO

11:06AM  11    THE FACT THAT THE OFFICER WAS LAW ENFORCEMENT WASN'T IN DISPUTE

11:06AM  12    IN THE CASE, BUT THE QUESTION WAS, WELL, IS THE OBSERVATION

11:06AM  13    REFLECTED ON THE RETURN OF SERVICE, THAT SERVICE HAD TAKEN

11:06AM  14    PLACE, WAS IT AN OBJECTIVE ONE, NOT THE TYPE OF SUBJECTIVE

11:07AM  15    OBSERVATION SUMMARY OPINION OR CONCLUSION OF THE LAW

11:07AM  16    ENFORCEMENT PERSONNEL.

11:07AM  17          SO THE NINTH CIRCUIT MIGHT READ LAW ENFORCEMENT NARROWLY

11:07AM  18    AS THEY SAY -- THE LAW ENFORCEMENT EXCEPTION NARROWLY AS THEY

11:07AM  19    SAY IN FRYBERG, BUT WHEN THEY SAY THAT, THEY MEAN THEY'RE

11:07AM  20    ASKING THAT SECOND QUESTION:  IS THIS LAW ENFORCEMENT OFFICER,

11:07AM  21    ARE THEY MAKING OBJECTIVE OBSERVATIONS?  ARE THEY RECORDING THE

11:07AM  22    LICENSE PLATES?  OR ARE THEY MARKING THAT SERVICE WAS INDEED

11:07AM  23    EFFECTUATED ON THIS PERSON TO PROVE THAT HE WAS GIVEN NOTICE,

11:07AM  24    WHICH WAS AN ELEMENT IN THE CASE, OR WERE THEY DOING SOMETHING

11:07AM  25    MORE?

11:07AM 1      AND FOR ALL OF THE REASONS THAT WE DISCUSSED, THE CMS

11:07AM 2  REPORT, IT'S NOT JUST AN EVERY DAY KIND OF RECORDATION.  IT'S

11:07AM 3  AN ASSESSMENT OF AN OPEN RECORD THAT THE CMS INSPECTOR HAS

11:07AM 4  DISCRETION TO CHOOSE FROM.

11:07AM 5          THE COURT:  BY A LAW ENFORCEMENT OFFICER?

11:07AM 6          MR. LOOBY:  RIGHT, RIGHT.

11:07AM 7          THE COURT:  YOUR POSITION IS PREDICATED ON THAT

11:07AM 8  PERSON BEING A LAW ENFORCEMENT OFFICER.

11:07AM 9          MR. LOOBY:  WELL, I MEAN, YES.  YES AND NO, BECAUSE

11:08AM 10 IN RULE -- IN 803(A)(2) CASES, 803(8)(A)(2) CASES, LIKE, FOR

11:08AM 11 EXAMPLE, THE ROSA CASE OUT OF THE SECOND CIRCUIT, WHICH IS A

11:08AM 12 CASE THAT THE GOVERNMENT CITES, AND THAT'S UNITED STATES V.

11:08AM 13 ROSA, AND THAT'S 11 F.3D 315, AND THAT'S A CASE INVOLVING A

11:08AM 14 MEDICAL EXAMINER AUTOPSY REPORT IN A GANG RELATED CASE.

11:08AM 15      SO THE SECOND CIRCUIT SAID MEDICAL EXAMINERS, THEY'RE NOT

11:08AM 16 LAW ENFORCEMENT.  BUT THE DISTRICT COURT PROPERLY, REGARDLESS

11:08AM 17 OF THAT, THE DISTRICT COURT PROPERLY REDACTED ALL OF THE

11:08AM 18 OPINIONS, DIAGNOSES, AND CONCLUSIONS FROM THE REPORT BECAUSE IT

11:08AM 19 WAS OFFERED UNDER SUBSECTION 803(8)(A)(2) BECAUSE THE BUSINESS

11:08AM 20 RECORD EXCEPTION FOR GOVERNMENT RECORDS, WHEN OFFERED AGAINST A

11:08AM 21 CRIMINAL DEFENDANT, IS LIMITED TO THOSE TYPES OF OBSERVATIONS.

11:09AM 22      WE'RE NOT READING OUT ANY POWER OF THE GOVERNMENT THAT

11:09AM 23 THEY HAVE.  THIS IS THE RESTRICTION THAT THE DRAFTERS OF THE

11:09AM 24 FEDERAL RULE OF EVIDENCE PUT ON.

11:09AM 25      THEY SAY IF IT'S AN INVESTIGATIVE REPORT, WHICH IS THIS

11:09AM 1    UNDER (A)(3), NO GO, IT'S NOT COMING IN AGAINST A CRIMINAL

11:09AM 2    DEFENDANT.

11:09AM 3         IF IT'S NOT THAT AND WE'RE IN 803(A)(2) LAND AND IT'S AN

11:09AM 4    OBSERVATION THAT THEY REPORTED, WELL, IT CAN COME IN IF IT'S

11:09AM 5    LIKE A BUSINESS RECORD, IF IT'S SOMETHING YOU DO EVERY DAY,

11:09AM 6    SOMETHING THAT YOU RECORD, BUT NOT SOMETHING THAT REQUIRES

11:09AM 7    OBSERVATIONS, DIAGNOSES, AND CONCLUSIONS.  SO THAT'S THE ROSA

11:09AM 8    CASE.

11:09AM 9         REALLY ALL OF THE GOVERNMENT'S CASES RECOGNIZE THIS KIND

11:09AM 10   OF DISTINCTION.  SO THE EDELMAN CASE OUT OF THE EIGHTH CIRCUIT

11:09AM 11   IN 2006, AND THAT'S AT 458 F.3D 791, SO THIS IS A MAIL FRAUD

11:09AM 12   AND MONEY LAUNDERING CASE, AND THE PIECE OF EVIDENCE AT ISSUE

11:09AM 13   IS A MEMO TO FILE BY, LIKE, A PRISON ADMINISTRATOR.  IT HELD

11:10AM 14   THE MANAGER WAS NOT LAW ENFORCEMENT, AND THE COURT WENT ON TO

11:10AM 15   SAY THE MEMO DOES NOT CONTAIN ANY OPINIONS, FINDINGS, OR

11:10AM 16   CONCLUSIONS.  IT'S A RECORD OF EVENTS COMMUNICATED TO WILSON

11:10AM 17   AND RECORDED CONTEMPORANEOUSLY WITH THE EVENT, WHICH IS

11:10AM 18   SOMETHING THAT SHE OBSERVED IN HER DAILY BUSINESS.  IT'S NOT AN

11:10AM 19   INVESTIGATION.  IT DOESN'T REQUIRE ANY KIND OF HIGHER LEVEL

11:10AM 20   THINKING.

11:10AM 21        WHEN THOSE TYPES OF DOCUMENTS ARE OFFERED UNDER A HEARSAY

11:10AM 22   EXCEPTION AGAINST A CRIMINAL DEFENDANT, THE FEDERAL RULES OF

11:10AM 23   EVIDENCE RESTRICT IT IN CERTAIN CAPACITIES.

11:10AM 24        THE COURT:  LET ME STOP YOU THERE.

11:10AM 25        MR. LEACH, COULD YOU COME FORWARD AND WE'LL DO A LITTLE

11:10AM   1     POINT AND COUNTER-POINT AS TO THIS ISSUE, PLEASE.

11:10AM   2          MR. LEACH:  AGAIN, YOUR HONOR, THESE AREN'T

11:10AM   3     DISTINCTIONS THAT ARE IN 803(B) -- OR 803(8)(B).  IT'S A DUTY

11:10AM   4     TO REPORT BY SOMEONE WHO IS NOT A LAW ENFORCEMENT PERSONNEL IN

11:11AM   5     A CRIMINAL CASE.

11:11AM   6          AND THE DEFINITION OF "LAW ENFORCEMENT PERSONNEL" DOESN'T

11:11AM   7     CHANGE BASED ON THE PARTICULAR DOCUMENT.  IT'S A CATEGORICAL

11:11AM   8     DESCRIPTION.

11:11AM   9          AND THIS DOCUMENT ISN'T THE TYPE WHERE YOU CAN PUT IT ALL

11:11AM  10     IN ONE CATEGORY OR ALL NOT IN THE CATEGORY.

11:11AM  11          SO LAW ENFORCEMENT PERSONNEL IS DESIGNED TO BE GUIDED BY

11:11AM  12     THE FUNCTIONS OF THAT OFFICER.

11:11AM  13          THERE ARE CASES WHERE SOMEBODY WHO IS A LAW ENFORCEMENT

11:11AM  14     OFFICER, THEY STILL TO TOLERATE IT UNDER 803(B) BECAUSE IT'S IN

11:11AM  15     THAT LIMITED CATEGORY.

11:11AM  16          BUT THESE CASES ARE NOT SAYING THAT IF THE PERSON ISN'T

11:11AM  17     THAT LAW ENFORCEMENT OFFICER, YOU APPLY THAT SAME TYPE OF

11:11AM  18     ANALYSIS.

11:11AM  19          THE TEST IS, ARE THEY UNDER A DUTY TO REPORT THE

11:11AM  20     INFORMATION HERE, AND SARAH BENNETT UNQUESTIONABLY WAS.

11:11AM  21          THE COURT:  WELL, MR. LOOBY SUGGESTS THAT BECAUSE

11:11AM  22     THE REPORTING GOES A LITTLE BIT FURTHER, IT CALLS FOR OPINIONS,

11:12AM  23     CONCLUSIONS, OBSERVATIONS, THAT CHANGES THE CHARACTER OF THAT

11:12AM  24     REPORT SUCH THAT IT SHOULDN'T COME IN.

11:12AM  25          MR. LEACH:  WELL, A BUILDING EXAMINER WILL GO OUT

11:12AM 1    AND SAY, WHAT ARE THE DIMENSIONS OF THIS HOUSE?  WHAT IS THE

11:12AM 2    THICKNESS OF THE CONCRETE?  WHAT IS THE STATE OF THE

11:12AM 3    ELECTRICITY?  NONE OF THOSE THINGS MAKES THAT PERSON A LAW

11:12AM 4    ENFORCEMENT OFFICER.

11:12AM 5         I CONCEDE THERE ARE INSTANCES WHERE SOMEONE WHO IS A LAW

11:12AM 6    ENFORCEMENT OFFICER IS MAKING OBSERVATIONS LIKE, YOU KNOW, THIS

11:12AM 7    GUY VIOLATED THE LAW, OR I FIND X.  BUT THAT'S EXCLUDED NOT

11:12AM 8    BECAUSE OF WHAT HE'S FINDING, IT'S EXCLUDED BECAUSE HE'S A LAW

11:12AM 9    ENFORCEMENT OFFICER.

11:12AM 10        SO I ACCEPT THAT THERE ARE GRADATIONS WITHIN THE CMS

11:12AM 11   REPORT, BUT THE CORE OF IT IS THAT WE LOOKED AT THIS DATA, THIS

11:12AM 12   DATA SAID X, THERE'S NO SUBJECTIVITY TO THAT PIECE OF IT.

11:12AM 13        AND THE ONES THAT ARE, ARE NOT EXCLUDABLE BECAUSE

11:13AM 14   SARAH BENNETT EITHER IS OR SHE IS NOT A LAW ENFORCEMENT

11:13AM 15   OFFICER.

11:13AM 16             THE COURT:  ALL RIGHT.  THANK YOU.

11:13AM 17             MR. LOOBY:  THANK YOU, YOUR HONOR.

11:13AM 18        SO I WOULD JUST SAY THAT THE ROSA CASE THAT I CITED TO YOU

11:13AM 19   AND ALSO THE EDELMANN CASES, THESE ARE GOVERNMENT CASES.  THESE

11:13AM 20   ARE 803(8)(A)(2) OR (B), DEPENDING ON WHAT THE DIGITS OF THE

11:13AM 21   FEDERAL RULES YOU'RE LOOKING AT.  THOSE ARE SUBSECTION

11:13AM 22   (2) CASES ESSENTIALLY, AND THEY ARE LIKE -- IT'S NOT IN THE

11:13AM 23   LANGUAGE OF THE RULE.  THE CASE LAW APPLYING IT DOES ASK, DOES

11:13AM 24   THE MEMO CONTAIN OPINIONS, FINDINGS, AND CONCLUSIONS?

11:13AM 25        AND THEN AN ADDITIONAL CITE, AND THIS IS ANOTHER

11:13AM  1      GOVERNMENT CASE, UNITED STATES V. LOPEZ, 762 F.3D 852, AND

11:13AM  2      THAT'S NINTH CIRCUIT 2014.  SO THAT'S AN ILLEGAL ALIEN FOUND IN

11:13AM  3      THE U.S. AFTER DEPORTATION CASE.  SO THIS IS ALSO ADDRESSING A

11:13AM  4      LAW ENFORCEMENT QUESTION.

11:13AM  5          THE COURT IS ASKING, DOES THE FORM LEAVE ROOM FOR

11:14AM  6      SUBJECTIVITY?  NO.  THIS IS LIKE A WARRANT OF DEPORTATION.

11:14AM  7      IT'S LIKE THE HERNANDEZ-ROJAS DOCUMENT.

11:14AM  8          SO I WOULD SAY THAT THIS REQUIREMENT, I'M NOT MAKING IT

11:14AM  9      UP, IT'S IN THE CASE LAW.

11:14AM  10             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  ANYTHING

11:14AM  11     FURTHER?

11:14AM  12             MR. LOOBY:  YEAH, I DID WANT TO ADDRESS -- TURNING

11:14AM  13     TO THE RELEVANCE ISSUES.  I WOULD SAY THAT THERE'S REALLY

11:14AM  14     NOTHING INCONSISTENT BETWEEN THE STATEMENTS THAT THE GOVERNMENT

11:14AM  15     RAISES THAT THERANOS MADE PRIOR TO THE INSPECTION SAYING WE ARE

11:14AM  16     CLIA CERTIFIED AND WE TAKE PRIDE IN OUR CLIA CERTIFICATION, AND

11:14AM  17     THE DEFENSE ARGUMENTS TODAY.

11:14AM  18         AND THE ONLY WAY THAT YOU FIND INCONSISTENCY THERE IS IN

11:14AM  19     MISCHARACTERIZING OUR POSITION TO SAY THAT CLIA REGULATIONS AND

11:14AM  20     CMS INSPECTIONS HAVE NOTHING TO DO WITH LAB QUALITY.

11:15AM  21         WE ARE, OF COURSE, NOT SAYING THAT.  IT'S A COMPREHENSIVE

11:15AM  22     REGULATORY SCHEME THAT SETS UP WHAT KIND OF PROCEDURES THE

11:15AM  23     DOCUMENTATION THE LAB HAS TO KEEP.

11:15AM  24         THE PURPOSE FOR IT IS, YES, TO PROMOTE HEALTHY AND GOOD

11:15AM  25     LAB PRACTICES AND, YES, LAB PERFORMANCE.

11:15AM 1          BUT THE OPPOSITE IS NOT TRUE FOR ALL OF THE REASONS THAT

11:15AM 2    WE DISCUSSED EARLIER.

11:15AM 3          ANY CLIA REGULATORY CITATION DOESN'T MEAN THAT THE LAB

11:15AM 4    IS -- A, HAS IN THE PAST PRODUCED INACCURATE OR UNRELIABLE

11:15AM 5    RESULTS, OR TYING IT TO THE ACTUAL ALLEGATIONS IN THIS CASE, IS

11:15AM 6    INCAPABLE OF DOING THAT.

11:15AM 7          THAT'S NOT WHAT THE CLIA REGULATIONS AND CITATIONS SAY.

11:15AM 8    SO IT'S THAT -- IT'S THAT GAP BETWEEN THE INHERENT LIMIT OF

11:15AM 9    WHAT THIS EVIDENCE IS AND WHAT THE GOVERNMENT WANTS THE JURY TO

11:15AM 10   DO FOR IT.

11:15AM 11         I HEARD IN MY FRIEND'S ARGUMENT THAT THIS IS JUST PATENT

11:15AM 12   IN THE FORM.  THE JURY CAN LOOK AT IT AND SEE, OH, THIS CV

11:16AM 13   PERCENTAGE IS 63 PERCENT ON THIS WEEK IN APRIL 2014.  I CAN

11:16AM 14   UNDERSTAND THAT THAT MEANS THAT THERANOS WAS INCAPABLE OF

11:16AM 15   CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

11:16AM 16         AND, RESPECTFULLY, YOUR HONOR, I DON'T KNOW HOW A JURY CAN

11:16AM 17   DO THAT FOR ALL OF THE REASONS WE SET FORTH BECAUSE THERE'S

11:16AM 18   JUST A GAP BETWEEN THE USE OF THIS EVIDENCE AND WHAT IT IS AND

11:16AM 19   ITS INHERENT LIMITATIONS AND THE DISTINCTION THAT THE -- THE

11:16AM 20   INFERENCES THAT THE GOVERNMENT WANTS THE JURY TO DRAW.

11:16AM 21              THE COURT:  IS THERE A GAP, MR. LEACH?

11:16AM 22              MR. LEACH:  THERE IS NO GAP, YOUR HONOR.

11:16AM 23         AND IF THERE IS, YOU DON'T LOOK AT ONE PIECE OF EVIDENCE

11:16AM 24   IN A VACUUM.  THERE ARE OTHER WITNESSES WHO ARE TALKING ABOUT

11:16AM 25   CV'S.  THERE'S ERICA CHEUNG, WHO IS GOING TO COME IN AND TALK

11:16AM 1    ABOUT ALL OF THE QUALITY CONTROL PROBLEMS WE HAD AND HOW WE

11:16AM 2    WERE NOT DOING ANYTHING ABOUT IT, AND I COMPLAINED TO CMS AND

11:16AM 3    THAT'S WHY CMS CAME IN.

11:16AM 4        SO THERE'S NO GAP.  READING THE REPORT, YOU SEE THAT THIS

11:17AM 5    EDISON DEVICE IS PRODUCING RESULTS FOR VITAMIN D THAT ARE WAY

11:17AM 6    OUT OF WHACK FOR MANY, MANY DAYS.  THAT IS A FACT FROM WHICH A

11:17AM 7    JURY CAN DRAW THAT TENDS TO SHOW THE EDISON DEVICE WAS NOT

11:17AM 8    CAPABLE OF DOING WHAT IT SAID IT WAS.  THERE IS NO GAP

11:17AM 9    WHATSOEVER.

11:17AM 10       AND EVEN IF THERE WAS, THIS IS NOT THE ONLY PIECE OF

11:17AM 11   EVIDENCE THAT THE GOVERNMENT IS GOING TO PRESENT.  YOU HAVE TO

11:17AM 12   LOOK AT THIS AS A RELEVANCE QUESTION LOOKING AT THE WHOLE OF

11:17AM 13   THE GOVERNMENT'S PRESENTATION.

11:17AM 14           MR. LOOBY:  WELL, TO BORROW FROM THE ANALOGY I HEARD

11:17AM 15   YESTERDAY OF KIND OF BRICKS IN THE WALL, THIS ISN'T THE TYPE OF

11:17AM 16   EVIDENCE THAT IS BEING PRESENTED TO THE JURY AS A BRICK THAT

11:17AM 17   CAN FIT INTO A WALL THAT WILL SCALE TO A CONCLUSION THE JURY

11:17AM 18   COULD MAKE ABOUT ACCURACY AND RELIABILITY.

11:17AM 19       I DON'T THINK THAT THE JURY CAN SIT THERE AND SAY, OKAY,

11:17AM 20   THESE QC RESULTS ON PAGE 54 OF THIS 100 AND ODD PAGE REPORT, IT

11:17AM 21   LOOKS LIKE THEY WERE OFF FOR THIS WEEK ON THE VITAMIN D, THE

11:18AM 22   MACHINE RUNNING VITAMIN D.  THESE AREN'T VITAMIN D RESULTS.

11:18AM 23   THESE ARE QC DATA GENERATED ON DEVICES THAT WERE RUNNING THAT

11:18AM 24   PARTICULAR ASSAY.  SO WE'RE ALREADY AT ONE LEVEL REMOVED.

11:18AM 25       AND THEN THEY'RE GOING TO TAKE THAT AND THEY ARE GOING TO

11:18AM 1   SAY THAT NUMBER SOUNDS REALLY BAD.  HERE IS SOME OTHER EVIDENCE

11:18AM 2   IN THE CASE WHERE SOMEBODY IS TALKING ABOUT QC, AND I'M GOING

11:18AM 3   TO PUT THEM TOGETHER AND I'M GOING TO SAY NOW I UNDERSTAND IN

11:18AM 4   CONTEXT WHAT THIS MEANS.

11:18AM 5       THAT'S NOT SOMETHING THAT THE JURY IS GOING TO BE ABLE TO

11:18AM 6   DO.  AND THIS REALLY GOES BOTH TO THE ACCURACY -- THE RELEVANCY

11:18AM 7   ISSUE BUT REALLY THE 403 ISSUE AS WELL WHICH IS THAT THIS GIANT

11:18AM 8   REPORT IS GOING TO BE DUMPED IN FRONT OF THE JURY, AND THEY'RE

11:18AM 9   NOT REALLY GOING TO KNOW WHAT THIS IS.

11:18AM 10      THE COURT:  THAT'S A GOOD QUESTION.  I WANTED TO --

11:18AM 11  ARE YOU ASKING THAT THE ENTIRETY OF THE REPORT COME IN?

11:18AM 12  PORTIONS OF IT?  OR YET TO BE DETERMINED?

11:18AM 13      MR. LEACH:  WE THINK THE ENTIRE REPORT SHOULD COME

11:18AM 14  IN FOR ITS CONTEXT, BUT CERTAINLY I'M HAPPY TO WORK WITH THE

11:19AM 15  OTHER SIDE FOR REDACTIONS.  BUT I THINK THE ENTIRE REPORT FOR

11:19AM 16  ITS CONTEXT IS RELEVANT.

11:19AM 17      OBVIOUSLY, I'M NOT GOING TO ASK THE JURY TO PLOW THROUGH

11:19AM 18  EVERY SINGLE PAGE, BUT IT WILL BE INCUMBENT ON THE GOVERNMENT

11:19AM 19  TO ISOLATE THE PARTICULAR OBSERVATIONS, AND WE'VE DONE SOME OF

11:19AM 20  THAT WORK IN THIS BRIEF, BUT I WOULDN'T WANT THINGS TO BE TAKEN

11:19AM 21  OUT OF CONTEXT.  BUT IT IS -- WE ARE SEEKING THE ENTIRETY OF

11:19AM 22  THE REPORT.

11:19AM 23      THE COURT:  OKAY.  ALL RIGHT.  GREAT.  THANK YOU

11:19AM 24  VERY MUCH.

11:19AM 25      MR. LEACH:  THANK YOU.

11:19AM 1          MR. LOOBY:  THANK YOU.

11:19AM 2          THE COURT:  THIS MOTION IS UNDER SUBMISSION.  THE

11:19AM 3   COURT WILL ISSUE AN ORDER, A WRITTEN ORDER.

11:19AM 4      ARE WE AT 572?  THIS IS MS. HOLMES'S MOTION TO EXCLUDE

11:20AM 5   EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS.

11:20AM 6          MR. FLEURMONT:  GOOD AFTERNOON, YOUR HONOR.

11:20AM 7      J.R. FLEURMONT FOR MS. HOLMES.

11:20AM 8          THE COURT:  THANK YOU.

11:20AM 9          MR. FLEURMONT:  YOUR HONOR, THIS MOTION CONCERNS TWO

11:20AM 10  CATEGORIES OF EVIDENCE.  THE FIRST IS ALLEGED EVIDENCE OF

11:20AM 11  THERANOS RUINING A SMALL PERCENTAGE OF ITS TESTS THAT WE

11:20AM 12  BELIEVE SHOULD BE EXCLUDED UNDER RULE 407.

11:20AM 13      IT ALSO CONCERNS EVIDENCE OF SETTLEMENTS WITH CMS AND THE

11:20AM 14  ARIZONA ATTORNEY GENERAL'S OFFICE THAT WE BELIEVE SHOULD BE

11:20AM 15  EXCLUDED UNDER RULE 408.

11:20AM 16      NOW, AS TO THE LATTER CATEGORY, THE GOVERNMENT NOTICED ITS

11:20AM 17  INTENT TO MAKE ARGUMENT ABOUT THOSE SPECIFIC SETTLEMENTS IN

11:20AM 18  OPPOSITION TO OUR MOTION, IT'S THIS CLAIM THAT IT INTENDS.  AND

11:20AM 19  SO -- THAT'S AT DOCKET 673 AT PAGE 1, FOOTNOTE 1.

11:20AM 20      SO WE JUST ASK THAT IT BE MEMORIALIZED IN AN ORDER.  SO

11:20AM 21  ACCORDINGLY I WILL JUST FOCUS ON THE VOIDING IF THAT'S OKAY

11:21AM 22  WITH YOU.

11:21AM 23          THE COURT:  OKAY.

11:21AM 24          MR. FLEURMONT:  THE EVIDENCE OF VOIDING SHOULD BE

11:21AM 25  EXCLUDED FOR TWO PRINCIPLE REASONS.  THE FIRST IS THAT IT'S

1   BARRED BY 407'S PROHIBITION ON SUBSEQUENT REMEDIAL MEASURES,

2   AND THE SECOND, IT'S BARRED BY RULE 401 AND 403 AS NOT RELEVANT

3   AND UNFAIRLY PREJUDICIAL.

4       SO STARTING WITH RULE 407.  UNDER FEDERAL RULE 407

5   EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES ARE EXCLUDED IF

6   THEY'RE OFFERED TO PROVE NEGLIGENCE, CULPABLE CONDUCT, OR A

7   DEFECT IN A PRODUCT OR ITS DESIGN.

8       IN THIS CASE IT'S 404(B) NOTICE, EXHIBIT 1, THE GOVERNMENT

9   HAS STATED ITS INTENT TO INCLUDE SUCH EVIDENCE TO SHOW THAT,

10   AND I QUOTE, "DEFENDANTS INTENDED TO DEFRAUD PATIENTS BY

11   DEPRIVING THEM OF INFORMATION THEY BELIEVED THAT THEY RECEIVED

12   AND PATRONIZING THERANOS'S SERVICES."  THAT'S ALL SAID AT

13   EXHIBIT 3 AT PAGES 74 TO 75.

14       NOW, BECAUSE THE GOVERNMENT SEEKS TO USE A SUBSEQUENT

15   REMEDIAL MEASURE TO FILL CULPABILITY, RULE 407 SQUARELY

16   APPLIES.

17       THE GOVERNMENT DOESN'T FIGHT THIS GENERAL PROPOSITION.

18   THEY SEEK TO USE A RULE OF AN EXCEPTION FOR WHEN A REMEDIAL

19   MEASURE IS DONE VOLUNTARILY.

20       THEY CITE IN RE AIRCRAFT THAT IS AT 871 F.2D 812, WHICH

21   STATES THAT THE PURPOSE OF RULE 407 IS NOT IMPLICATED IN CASES

22   INVOLVING SUBSEQUENT REMEDIAL MEASURES AND WHICH A DEFENDANT

23   DID NOT VOLUNTARILY PARTICIPATE.

24       THE PROBLEM IN THIS CASE, ALTHOUGH THERE WERE SEVERAL

25   THINGS THAT WERE REQUIRED BY CMS AND BY CLIA LAWS, VOIDING

11:23AM 1    TESTS WERE NOT ONE OF THEM.

11:23AM 2         MY COLLEAGUE, MR. LOOBY, WALKED YOU THROUGH ALL OF THE

11:23AM 3    PROVISIONS OF CMS AND THE INSPECTION PROCESS AND THAT LEADS TO

11:23AM 4    A SANCTION AND WHAT HAPPENED WITH THAT AND THE APPEAL.

11:23AM 5         IN THIS CASE IT'S CLEAR THAT THERANOS WAS REQUIRED TO

11:23AM 6    ALLOW CMS TO INVESTIGATE AND DO THE INSPECTION, AND THEY WERE

11:23AM 7    REQUIRED TO DO SOME SORT OF CORRECTIVE ACTION WITHIN TEN DAYS.

11:23AM 8         THERE IS NO EVIDENCE IN THIS CASE THAT THERANOS WAS

11:23AM 9    SPECIFICALLY REQUIRED TO VOID ANY OF THESE TESTS, AND IN FACT,

11:23AM 10   THE ONLY EVIDENCE IS TO THE CONTRARY.

11:23AM 11        THE COURT:  SO I THINK -- IS YOUR POSITION THAT

11:23AM 12   THERANOS VOLUNTARILY VOIDED THE TESTS, AND THAT'S THE WAY IT

11:23AM 13   SHOULD BE RECEIVED?

11:23AM 14        MR. FLEURMONT:  YES, YOUR HONOR, THAT IS OUR

11:23AM 15   POSITION.

11:23AM 16        AS I STATED, THE WAY THAT IT WORKS AND CMS WORKS IS THAT

11:23AM 17   ONCE THEY GIVE YOU THAT INITIAL TERMINATION THAT HAPPENED ON

11:23AM 18   JANUARY 25TH, 2016, THEY HAD TEN DAYS TO REMOVE THE IMMEDIATE

11:23AM 19   JEOPARDY AND PROVIDE A SUBMISSION.  THEY PROVIDED THAT

11:24AM 20   SUBMISSION AND THAT WAS REQUIRED.

11:24AM 21        AFTER THAT HAPPENED THERE WAS AN INITIAL IMPOSITION OF

11:24AM 22   SANCTIONS IF CMS CHOOSES TO DO SO, AND THERE'S AN APPELLATE

11:24AM 23   PROCESS THAT LEADS TO A DETERMINATION IN FRONT OF AN ALJ.

11:24AM 24        AFTER THAT INITIAL PROCESS, THAT INSPECTION AND THAT

11:24AM 25   CORRECTIVE ACTION, DECISIONS AFTER THAT ARE VOLUNTARY.  IF YOU

11:24AM 1    THINK ABOUT THE PURPOSE OF THE RULE AND WHY YOU HAVE RULE 407,

11:24AM 2    THAT'S TO ENCOURAGE SOMEONE TO DO SOMETHING THAT THEY THINK

11:24AM 3    WOULD BE HELPFUL WITHOUT WORRYING ABOUT LATER LITIGATION AND

11:24AM 4    PENALIZING THEM FOR MAKING THAT HELPFUL KIND OF ACTION.

11:24AM 5        IN THIS CASE I FEEL THAT THE PURPOSE OF THE RULE DOUBLY

11:24AM 6    APPLIES WHEN THERE ARE SOME REQUIREMENTS AND AN ENTITY DECIDED

11:24AM 7    TO DO EVEN MORE THAN WHAT IS REQUIRED PROVIDED BY THE FEDERAL

11:24AM 8    GOVERNMENT, THAT THEY SHOULD NOT BE PENALIZED FOR DOING MORE

11:24AM 9    THAN WHAT IS REQUIRED.

11:24AM 10       THE RULE AS THE CASE IN RE AIRCRAFT STATES IS THAT IF IT'S

11:25AM 11   NOT INVOLUNTARY, THEN YOU DON'T GET THE BENEFIT OF THE RULE.

11:25AM 12   BUT IF YOU GO BEYOND WHAT IS VOLUNTARY -- OR EXCUSE ME.  IF YOU

11:25AM 13   GO BEYOND WHAT IS INVOLUNTARY AND YOU WANT TO DO BETTER, AND

11:25AM 14   THAT DOESN'T NECESSARILY MEAN THAT EITHER YOU ARE SAYING THAT

11:25AM 15   THAT IS AN ADMISSION OF GUILT OR THERE IS PROBLEM, BUT YOU JUST

11:25AM 16   REVIEW YOUR PROCESS AND YOU SAY, HEY, MAYBE WE COULD DO A

11:25AM 17   LITTLE BIT BETTER HERE AND LET'S DO IT.

11:25AM 18       BUT A RULE THAT WOULD ALLOW TO USE THAT DECISION IN A

11:25AM 19   SUBSTANTIVE CRIMINAL CASE OR ANY CASE AT ALL FALLS WITHIN THE

11:25AM 20   PURPOSES OF RULE 407.

11:25AM 21           THE COURT:  SO WHEN I LOOK AT THIS, AND, AGAIN, I

11:25AM 22   MAY BE LOOKING AT IT WITH A BLURRED LENS PERHAPS, BUT WHEN I

11:25AM 23   SEE "VOLUNTARY," THAT'S, OH, OKAY, WE'RE GOING TO CHANGE THIS.

11:25AM 24   LET'S GET A MEETING TOGETHER OF ADMINISTRATION, WHOEVER THE

11:25AM 25   DECISION MAKERS ARE, AND WE'RE GOING TO CHANGE IT AND, WE'RE

11:26AM 1    GOING TO DO SOMETHING DIFFERENT BECAUSE INTERNALLY IT'S COME TO

11:26AM 2    OUR ATTENTION THAT WE SHOULD.

11:26AM 3        IS THERE A DISTINCTION BETWEEN THAT CORPORATE BUSINESS

11:26AM 4    DECISION AND ONE WHERE WE'VE BEEN CONTACTED BY A REGULATORY

11:26AM 5    OFFICE, AND WE'VE BEEN TALKING WITH THEM FOR WEEKS, MONTHS, AND

11:26AM 6    WE SEE THERE'S A PROBLEM, WE'RE GOING BACK AND FORTH WITH THEM,

11:26AM 7    AND THEY HAVE RATCHETED THIS UP SUCH THAT WE'RE GOING TO BE

11:26AM 8    PENALIZED IF WE DON'T DO SOMETHING.  LET'S KEEP TRYING TO FIX

11:26AM 9    THE PROBLEM.  OKAY.  YOU KNOW WHAT, LET'S TAKE THIS ACTION.

11:26AM 10       IS THAT VOLUNTARY OR IS THAT UNDER THE SHADOW, NOT A

11:26AM 11   THREAT PERHAPS, BUT AT LEAST WITH THE ADVICE OF THE REGULATORY

11:26AM 12   AGENCY THAT SOMETHING UNTOWARD COULD HAPPEN?  DOES THAT MOVE

11:26AM 13   THE NEEDLE ANY BIT?

11:27AM 14            MR. FLEURMONT:  YES, YOUR HONOR.  THAT'S A

11:27AM 15   COMPLICATED HYPOTHETICAL SO I CAN TAKE IT IN PART.

11:27AM 16            THE COURT:  SURE.

11:27AM 17            MR. FLEURMONT:  SO I HEARD YOUR HONOR SAY IF WE

11:27AM 18   DON'T DO SOMETHING WE'RE GOING TO BE IN TROUBLE OR GET

11:27AM 19   SANCTIONS.

11:27AM 20       IF THERE'S NOT A STRICT, A SPECIFIC DIRECTIVE OR A

11:27AM 21   SPECIFIC GUIDANCE ON WHAT THAT SOMETHING IS, THEN, YOUR HONOR,

11:27AM 22   WE SUBMIT THAT THAT IS VOLUNTARY BECAUSE YOU'RE MAKING A

11:27AM 23   DECISION OF YOUR OWN FREE WILL TO FIX A PROBLEM.

11:27AM 24            THE COURT:  SO HERE WAS THERE A TEN DAY NOTICE?

11:27AM 25            MR. FLEURMONT:  THERE WAS A TEN DAY NOTICE, YES.

11:27AM 1          THE COURT:  AND THEN THE ACTION WAS TAKEN BY THE

11:27AM 2     COMPANY?

11:27AM 3          MR. FLEURMONT:  THREE MONTHS LATER, YOUR HONOR.

11:27AM 4          THE COURT:  I SEE.  SO DOES THAT CHANGE THINGS?

11:27AM 5          MR. FLEURMONT:  NO, IT DOES NOT CHANGE THINGS FOR

11:27AM 6     OUR POSITION.  IT HELPS US OUT.  IT WAS MUCH LATER AFTER THE

11:27AM 7     TEN DAYS.

11:27AM 8          THE COURT:  I SEE.

11:27AM 9          MR. FLEURMONT:  BUT THE GOVERNMENT DOES TRY TO

11:27AM 10    SHOEHORN THIS VOLUNTARY/INVOLUNTARY DISTINCTION INTO THIS CASE

11:27AM 11    BY POINTING TO TWO ACTIONS.

11:27AM 12       THE FIRST IS CMS ITSELF.  THE GOVERNMENT ARGUES THAT CMS

11:28AM 13    REQUIRED THERANOS TO VOID THEIR TESTS.  AND THE PROBLEM WITH

11:28AM 14    THAT, AS YOUR HONOR JUST ALLUDED, THE TEN DAY REQUIREMENT.  THE

11:28AM 15    ACTIONS WERE DONE.  THEY WERE DONE -- THEY WERE EXPLAINED IN AN

11:28AM 16    APRIL 1ST LETTER, BUT THEY WERE DONE WELL AFTER THE TEN DAY

11:28AM 17    REQUIREMENT.

11:28AM 18       THE SECOND PROBLEM WITH THAT IS CRITICALLY THE

11:28AM 19    GOVERNMENT'S CMS WITNESS, MS. BENNETT, WHO WE HAVE HEARD A LOT

11:28AM 20    ABOUT TODAY, SHE SAID, AND I QUOTE, "THERANOS MADE THE DECISION

11:28AM 21    TO VOID TEST RESULTS.  CMS DIDN'T TELL THEM TO DO THAT."

11:28AM 22    THAT'S AT EXHIBIT 34, DOCKET 584-3 AT 6.  THAT'S AT THE SECOND

11:28AM 23    TO THE LAST LINE OF THAT PAGE.

11:28AM 24          THE COURT:  I READ THAT IN YOUR PLEADINGS.  YOU

11:28AM 25    POINT THAT OUT, THAT PARAGRAPH.

11:28AM 1          MR. FLEURMONT:  AND THE GOVERNMENT TALKS ABOUT

11:28AM 2   CHERRY PICKING TESTIMONY.  THAT'S ALL SHE SAYS ABOUT VOIDING.

11:28AM 3   THERE'S NO MORE CHERRIES TO PICK TO USE THAT ANALOGY.

11:28AM 4          SO SHE IS VERY CLEAR ON THAT POINT THAT IT WAS NOT

11:28AM 5   REQUIRED BY CMS.

11:28AM 6          OKAY.  SO THEN THERE WAS A SECOND REQUIREMENT, ALLEGED

11:28AM 7   REQUIREMENT THAT THE GOVERNMENT POINTS TO.  THAT'S

11:28AM 8   42 CFR 493.129(K).

11:29AM 9          THAT REQUIRES A LAB TO, WHEN ERRORS IN REPORTED PATIENT

11:29AM 10  TEST RESULTS ARE DETECTED, TO NOTIFY AND ISSUE CORRECTED

11:29AM 11  REPORTS.

11:29AM 12         THE PROBLEM WITH THAT IS THAT THERE ARE NO -- AS I'M SURE

11:29AM 13  YOUR HONOR IS VERY FAMILIAR WITH, THE VOIDING WAS DONE IN A

11:29AM 14  BLANKET FASHION WITHOUT AN ANALYSIS DONE ABOUT WHO WAS AFFECTED

11:29AM 15  AND WHO WASN'T.

11:29AM 16         THERANOS MADE A DECISION WHEN THEY WERE LOOKING BACK ON

11:29AM 17  THEIR PRIOR LAB PRACTICES THAT THIS WOULD BE SOMETHING THAT

11:29AM 18  THEY FELT THAT THEY SHOULD DO.

11:29AM 19         YOU COULD SEE HOW THAT COULD HAPPEN IN A COMPANY AS

11:29AM 20  YOUR HONOR JUST GAVE THAT HYPOTHETICAL WHEN YOU'RE UNDER

11:29AM 21  INVESTIGATION AND YOU'RE GOING BACK AND FORTH, YOU'RE

11:29AM 22  SCRUTINIZING THINGS AND YOU'RE LOOKING AT THINGS A LITTLE MORE

11:29AM 23  CLOSELY THAN YOU USUALLY WOULD.

11:29AM 24         AND A COMPANY MIGHT DECIDE, WELL, WE'RE NOT REQUIRED TO DO

11:29AM 25  THIS, BUT IT MIGHT BE GOOD PRACTICE.  AS I SAID EARLIER, THE

11:29AM 1    RULE, I THINK, IS MEANT TO PROTECT THAT TYPE OF BEHAVIOR AND

11:30AM 2    MEANT TO ENCOURAGE THAT TYPE OF BEHAVIOR.  SO BECAUSE THERE WAS

11:30AM 3    NO REQUIREMENT FOR ACTUALLY VOIDING AND BECAUSE UNDER THAT RULE

11:30AM 4    THERE WAS NOTHING ACTUALLY PROTECTED, THAT IS ALSO NOT A BASIS

11:30AM 5    FOR A REQUIREMENT IN THIS CASE.

11:30AM 6         SO THE LAST POINT I WANT TO MAKE ON THE REQUIREMENT IS THE

11:30AM 7    ISSUE ABOUT BURDEN, AND WE'VE TALKED ABOUT BURDEN SHIFTING A

11:30AM 8    LOT THROUGHOUT THESE DIFFERENT ARGUMENTS.

11:30AM 9         SO THE GOVERNMENT IN ITS OPPOSITION ESSENTIALLY SAYS THAT

11:30AM 10   IF MS. HOLMES CANNOT SHOW THAT VOIDING WAS VOLUNTARY, THEN SHE

11:30AM 11   DOES NOT GET THE BENEFIT OF THE RULE.

11:30AM 12        BUT AS YOUR HONOR KNOWS, IT'S THE PROPONENT OF THE

11:30AM 13   EVIDENCE WHO HAS THE BURDEN OF SHOWING THAT IT'S ADMISSIBLE,

11:30AM 14   AND SO IT'S THE GOVERNMENT'S BURDEN TO SHOW THAT RULE 407

11:30AM 15   DOESN'T APPLY, EVEN IF THERE'S ANOTHER EXCEPTION THAT IT WOULD

11:30AM 16   APPLY IF THE ACTIONS WERE INVOLUNTARY.

11:30AM 17        SO WE JUST WANT TO MAKE THAT CLEAR THAT IT'S THE

11:30AM 18   GOVERNMENT'S BURDEN TO SHOW THAT THESE ACTIONS WERE NOT

11:30AM 19   VOLUNTARY, NOT MS. HOLMES'S BURDEN TO SHOW THAT THEY WERE.

11:31AM 20             THE COURT:  OKAY.

11:31AM 21             MR. FLEURMONT:  JUST A COUPLE QUICK POINTS ABOUT

11:31AM 22   RELEVANCE AND PREJUDICE.  MR. LOOBY, I THINK HE EXPLAINED THE

11:31AM 23   NONRELEVANT CMS REPORT AND KIND OF THE PROCEDURES THAT

11:31AM 24   FOLLOWED.  SO I WILL JUST QUICKLY SAY THAT THIS IS NOT A CASE

11:31AM 25   ABOUT NEGLIGENT LAB PROCEDURES AND THERE'S THAT MISSING LINK

11:31AM 1    BETWEEN WHAT CMS DOES AND WHAT CMS FOUND AND THE ALLEGATIONS IN

11:31AM 2    THIS CASE.

11:31AM 3        THE LAST POINT ABOUT PREJUDICE IS THAT I WANTED TO POINT

11:31AM 4    THE COURT TO A DECISION UNITED STATES VERSUS PACIFIC GAS AND

11:31AM 5    ELECTRIC.  THAT'S AT 178 F.SUPP. 3D 927.  WE CITED THAT --

11:31AM 6        THE COURT:  I THINK YOU HEARD ME SAY YESTERDAY

11:31AM 7    YOUNG MR. SCHENK WAS INVOLVED IN THAT CASE I THINK.

11:31AM 8        MR. FLEURMONT:  HE WAS.

11:31AM 9        THAT'S CITED AT PAGE 8 OF OUR BRIEF.  THE REASON I PAUSE

11:31AM 10   IS BECAUSE I WANT TO SAY WE THINK THE GOVERNMENT

11:31AM 11   MISCHARACTERIZED THAT CASE, WHICH IS A LITTLE HARD TO SAY WHEN

11:31AM 12   THE PERSON IS RIGHT NEXT TO YOU WHO ACTUALLY ARGUED THAT CASE.

11:31AM 13       BUT THE GOVERNMENT CHARACTERIZED THIS CASE WAS JUST ONE

11:32AM 14   ABOUT PENALTIES AND ABOUT SANCTIONS AND SAYS THAT THE CASE

11:32AM 15   ESSENTIALLY SAYS THAT.  THAT CAN BE PREJUDICIAL WHEN YOU

11:32AM 16   INCLUDE EVIDENCE OF PENALTIES BECAUSE IT HAS A RISK OF THE JURY

11:32AM 17   THINKING, WELL, YOU KNOW, IF A GOVERNMENT ENTITY PENALIZES

11:32AM 18   FIRST AND ISSUED A SANCTION, THEY MUST HAVE FOUND WHAT THE JURY

11:32AM 19   IS SUPPOSED TO FIND, AND SO THEY'RE SUBSTITUTING THEIR JUDGMENT

11:32AM 20   FOR THAT.

11:32AM 21       BUT THE CASE IS NOT JUST ABOUT SANCTIONS.  JUST TO BE

11:32AM 22   CLEAR, THE CASE IS TALKING ABOUT REMEDIAL MEASURES.  I JUST

11:32AM 23   WANT TO POINT THE COURT TO PAGE 49 OF THAT OPINION WHERE THE

11:32AM 24   COURT SAYS -- THEY'RE TALKING ABOUT THE CALIFORNIA PUBLIC

11:32AM 25   UTILITIES COMMISSION.  THE COMMISSION'S ARGUMENT THAT THE

11:32AM 1    PENALTIES SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE, QUOTE,

11:32AM 2    "THE COMMISSION'S CONCLUSIONS WOULD UNFAIRLY ENCOURAGE THE JURY

11:32AM 3    TO ADVOCATE ITS CRITICAL ROLE AS FACT FINDER APPLIED WITH EQUAL

11:32AM 4    FORCE TO THE COMMISSION'S REMEDIAL MEASURES."

11:32AM 5        THE COURT GOES ON TO SAY, "THERE IS A SUBSTANTIAL RISK

11:32AM 6    THAT THE JURY MAY ASSUME THAT IF THE COMMISSION, AUTHORITATIVE

11:33AM 7    GOVERNMENT AGENCY, IMPOSED REMEDIAL MEASURES ON PG&E, THEN PG&E

11:33AM 8    WAS DESERVING A PUNISHMENT."

11:33AM 9        AND, YOUR HONOR, WE SUBMIT THE SAME RISK IS IN THIS CASE

11:33AM 10       THANK YOU.

11:33AM 11           THE COURT:  THANK YOU.  MR. LEACH.

11:33AM 12           MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD MORNING

11:33AM 13   AGAIN.

11:33AM 14       RULE 407 DOES NOT APPLY FOR AT LEAST THREE REASONS.

11:33AM 15       FIRST, THERANOS'S VOIDING OF ALL OF ITS EDISON TESTS IS

11:33AM 16   NOT A MEASURE WITHIN THE MEANING OF THE RULE.  THE DEFENDANT

11:33AM 17   ARGUES IN ITS REPLY BRIEF THAT THE GOVERNMENT CONCEDES THAT IT

11:34AM 18   WAS A SUBSEQUENT REMEDIAL MEASURE.  WE DO NOT.  WE SAY THIS ON

11:34AM 19   PAGE 7 IN NOTE 5.

11:34AM 20       THE VOIDING OF THE TEST IS NOT A MEASURE.  IT'S NOT THE

11:34AM 21   SAME THING AS A COMPANY PUTTING UP A CONE THAT SAYS "WET FLOOR

11:34AM 22   HERE, BE CAREFUL."  IT'S NOT THE SAME THING AS CHANGING THE

11:34AM 23   DESIGN OF A PRODUCT TO MAKE IT SAFER.  IT'S NOT THE SAME THING

11:34AM 24   AS FIRING AN EMPLOYEE.  IT'S AN ADMISSION THAT WHAT I SAID

11:34AM 25   BEFORE I CAN NO LONGER SAY.

11:34AM 1    AND THEY'RE ESSENTIALLY TRYING TO IMMUNIZE THE DEFENDANT

11:34AM 2    FROM ALL OF THE STATEMENTS SHE MADE ABOUT HER LAB IN 2016.

11:34AM 3    THIS IS NOT A MEASURE WITHIN THE MEANING OF THE RULE.  IT HAD

11:34AM 4    NO TENDENCY TO CORRECT ANY HARM.  MANY OF THE TESTS THAT THEY

11:34AM 5    VOIDED WERE FROM 2014 AND 2015.  SO THIS DECISION TO VOID THE

11:35AM 6    TEST IS YEARS AFTER THE FACT.  IT HAD NO TENDENCY TO ACTUALLY

11:35AM 7    CORRECT ANY HARM.

11:35AM 8    AND I THINK THE COURT'S DESCRIPTION EARLIER ABOUT IS THIS

11:35AM 9    THE SAME THING AS, YOU KNOW, A COMPANY MAKING A PROSPECTIVE

11:35AM 10   DESIGN TO ITS PRODUCT, WHICH WE WANT TO ENCOURAGE, VERSUS A

11:35AM 11   BOARD OF DIRECTORS OR CEO DECIDING WHAT TO DO WHEN THE

11:35AM 12   REGULATORS COME LOOKING.  THEY ARE NOT THE SAME THING.  THIS IS

11:35AM 13   NOT A MEASURE WITHIN THE MEANING OF THE RULE.

11:35AM 14   AND I THINK IF MY FRIEND ON THE OTHER SIDE, IF THEIR

11:35AM 15   ARGUMENT IS ADOPTED, IT WOULD ESSENTIALLY IMMUNIZE A DEFENDANT

11:35AM 16   FROM HER OWN STATEMENTS MADE AFTER THERE'S SOME SCRUTINY ON HER

11:35AM 17   CONDUCT.

11:35AM 18   THE SECOND REASON RULE 407 DOES NOT APPLY IS THAT THIS WAS

11:35AM 19   NOT VOLUNTARY, AND IT'S NOT VOLUNTARY FOR A NUMBER OF REASONS.

11:35AM 20   FIRST OF ALL, THERANOS WAS UNDER AN OBLIGATION TO

11:36AM 21   COOPERATE WITH CMS.  THAT'S IN 42 CFR 493.129(1)(K).  SO THEY

11:36AM 22   HAD TO COOPERATE WITH THIS INSPECTION.

11:36AM 23   IN ADDITION, BECAUSE OF THIS IMMEDIATE JEOPARDY FINDING,

11:36AM 24   AND I'VE TALKED ABOUT THIS IN MY PRIOR ARGUMENT, THEY WERE

11:36AM 25   REQUIRED TO ACT.  THEY HAD TO DO SOMETHING UNDER THE

11:36AM  1    REGULATION.

11:36AM  2         WHEN SARAH BENNETT SAYS WE DIDN'T TELL THEM WHAT TO DO,

11:36AM  3    THAT'S CORRECT, THEY DIDN'T TELL THEM EXACTLY WHAT TO DO.  BUT

11:36AM  4    THEY NEEDED TO DO SOMETHING, AND IT WAS ON THERANOS TO DO

11:36AM  5    SOMETHING BECAUSE OF THAT LEGAL REQUIREMENT.

11:36AM  6         AND THE THIRD LEGAL REQUIREMENT THAT IS VERY IMPORTANT

11:36AM  7    HERE IS I MAY HAVE -- THE THIRD LEGAL REQUIREMENT IS THE ONE

11:36AM  8    NOT THAT SARAH BENNETT ORDERS, BUT IT EXISTS, AND IT'S A RULE

11:36AM  9    THAT SAYS IF YOU DETECT ERRORS IN YOUR TESTS ESSENTIALLY YOU

11:37AM 10    MUST FIX THEM.

11:37AM 11         NOW, THEY SAY WE CAN'T MEET OUR BURDEN TO SHOW THEY

11:37AM 12    DETECTED THE ERROR OR THAT THIS REGULATION ACTUALLY APPLIES,

11:37AM 13    AND THEY POINT TO SELF-SERVING STATEMENTS THAT MS. HOLMES MAKES

11:37AM 14    ABOUT DOING THIS OUT OF AN ABUNDANCE OF CAUTION.

11:37AM 15         BUT IN THAT SAME BREADTH HER OWN WORDS ARE WE DID THIS

11:37AM 16    BECAUSE WE WERE DISSATISFIED WITH OUR QUALITY ASSESSMENT

11:37AM 17    PROGRAM.

11:37AM 18         IN ADDITION, THE LAB DIRECTOR AT THE TIME, THE INDIVIDUAL

11:37AM 19    THAT MS. HOLMES HIRED IN LATE 2015 OR 2016, DR. KINGSHUK DAS

11:37AM 20    SAYS, HE CONCLUDED THE EDISON DEVICES NEVER PERFORMED THE LEVEL

11:37AM 21    OF ACCURACY AND PRECISION REQUIRED AND COULD NOT HAVE GENERATED

11:37AM 22    ANY RESULTS WHICH HAD CLINICAL VALUE.

11:37AM 23         DAS SAID THERE WAS SOME PUSHBACK, BUT THIS CONCLUSION WAS

11:38AM 24    BASED ON SIX SIGNA METRICS.

11:38AM 25         THERANOS MANAGEMENT SUGGESTED THIS WAS NOT A DEVICE ISSUE

11:38AM 1    BUT RATHER A QUALITY SYSTEM ISSUE.

11:38AM 2         DAS DISAGREED WITH THAT ASSESSMENT AND DECIDED TO VOID ALL

11:38AM 3    EDISON TESTS.

11:38AM 4         DAS SAID IT WAS HIS OBLIGATION AS THE DIRECTOR OF RECORD

11:38AM 5    TO CONDUCT A PATIENT ASSESSMENT TO DETERMINE IF ANY HARM CAME

11:38AM 6    FROM A LABORATORY ERROR, AND HE DID THAT.

11:38AM 7         DR. DAS WILL TELL YOU, YOUR HONOR, THAT THIS WAS NOT

11:38AM 8    VOLUNTARY, THAT HE FELT THAT HE HAD TO DO THIS BECAUSE OF THE

11:38AM 9    REG, BECAUSE OF PATIENT SAFETY, AND BECAUSE IT WAS THE RIGHT

11:38AM 10   THING TO DO.

11:38AM 11        SO WHOEVER HAS THE BURDEN HERE, AND WHEN I WAS TALKING

11:38AM 12   ABOUT BURDEN IN THE BRIEF I WAS USING THE LANGUAGE FROM THE

11:38AM 13   PG&E CASE WHERE THE CPUC STARTS ASKING QUESTIONS AND THERE'S A

11:39AM 14   LITTLE AMBIGUITY ABOUT WHY PG&E IS DOING WHAT AND THE COURT

11:39AM 15   SAYS BASED ON THE RECORD BEFORE ME AND IT'S OBVIOUS BASED ON

11:39AM 16   THE TOTALITY OF THE FACTS THAT PG&E IS NOT DOING THIS JUST

11:39AM 17   BECAUSE IT'S A GOOD CORPORATE CITIZEN, IT'S DOING THIS BECAUSE

11:39AM 18   A REGULATORY AUTHORITY IS LOOMING OVER IT.

11:39AM 19        AND BY THE WAY, IN THIS CASE WE HAVE A REG THAT THEY HAVE

11:39AM 20   TO COMPLY WITH IF THEY DETECT ERRORS.  SO THIS WAS NOT

11:39AM 21   VOLUNTARY IN ANY WAY.  THIS IS NOT SOME GOOD CORPORATE CITIZEN

11:39AM 22   DECIDING TO DO THE RIGHT THING PROACTIVELY TO FIX THE DEVICE OR

11:39AM 23   TO DO SOMETHING.  THIS IS AN ADMISSION.  THIS IS AN ADMISSION

11:39AM 24   THAT I CANNOT SAY MY TESTS ARE CORRECT.

11:39AM 25        THE THIRD REASON WHY RULE 407 DOES NOT APPLY HERE IS

11:39AM  1    BECAUSE IT ONLY APPLIES TO MEASURES, YOUR HONOR.  IT APPLIES TO

11:39AM  2    THE ACTUAL ACT, IT APPLIES TO THE PUTTING UP THE CONE TO MAKE

11:39AM  3    SURE SOMEONE DOESN'T SLIP ON THE FLOOR, IT APPLIES TO THE

11:40AM  4    PROSPECTIVE CHANGING OF THE SAFETY DEVICE, AND IT APPLIES TO A

11:40AM  5    DISCHARGE OF AN EMPLOYEE.  WE KNOW THAT FROM THE ADVISORY

11:40AM  6    COMMITTEE NOTES IN THE RULE.

11:40AM  7        IT DOES NOT APPLY TO A COMPANY'S INTERNAL ANALYSIS, ITS

11:40AM  8    OWN AFTER-THE-FACT INVESTIGATION OF WHAT HAPPENED OR ITS

11:40AM  9    STATEMENTS ABOUT WHAT HAD HAPPENED.  IT DOESN'T APPLY TO THE

11:40AM  10   ANALYSIS.  IT APPLIES ONLY TO THE MEASURE.

11:40AM  11       AND WE CITED A TENTH CIRCUIT CASE AND AN EIGHTH CIRCUIT

11:40AM  12   CASE FOR THAT PROPOSITION.  IN THE REPLY THEY COME BACK WITH A

11:40AM  13   CASE CALLED MADDOX VERSUS CITY OF LOS ANGELES AND SAY THAT THE

11:40AM  14   RULE IS SOMEHOW DIFFERENT IN THE NINTH CIRCUIT.  IT'S NOT.

11:40AM  15   THAT'S THE RULE IN THE NINTH CIRCUIT THAT I JUST DESCRIBED.

11:40AM  16       MADDOX INVOLVED A DISCIPLINARY PROCEEDING AGAINST A POLICE

11:40AM  17   OFFICER IN A USE OF FORCE CASE.  AND DISCIPLINARY PROCEEDINGS

11:41AM  18   ARE EXACTLY LIKE THE FIRING OF AN EMPLOYEE THAT YOU SEE IN THE

11:41AM  19   ADVISORY COMMITTEE NOTES.

11:41AM  20       MS. HOLMES'S STATEMENTS AND THERANOS STATEMENTS TO CMS IN

11:41AM  21   RESPONSE TO THIS INSPECTION ARE NOT THE SAME THING.  THEIR

11:41AM  22   ANALYSIS ABOUT WHAT HAPPENED WITH THE EDISON DEVICE IS NOT THE

11:41AM  23   SAME THING.

11:41AM  24       AND IT'S NOT JUST ME SAYING THAT.  THERE ARE PLENTY OF

11:41AM  25   DISTRICT COURT CASES LOOKING AT MADDOX.  MADDOX WAS A 1988

11:41AM 1    CASE.  THERE ARE PLENTY OF DISTRICT COURT CASES THAT ADOPT THIS

11:41AM 2    READING OF MADDOX THAT IT APPLIES ONLY TO THE DISCHARGE OF THE

11:41AM 3    EMPLOYEE OR A DISCIPLINARY PROCEEDING AND NOT AN AFTER-THE-FACT

11:41AM 4    INVESTIGATION INTO WHAT HAPPENED.

11:41AM 5        AND MY CITES FOR THOSE ARE AGUILAR VERSUS CITY OF

11:41AM 6    LOS ANGELES.  THIS IS AN UNPUBLISHED NINTH CIRCUIT CASE FROM

11:41AM 7    MARCH 26TH, '21, 2021 WESTLAW 1157922.

11:42AM 8        ANOTHER CASE WHERE YOU CAN SEE THIS DISTINCTION BETWEEN

11:42AM 9    DISCIPLINARY PROCEEDINGS AND INTERNAL ANALYSIS OF WHAT HAPPENED

11:42AM 10   AFTER-THE-FACT INVESTIGATIONS TO DETERMINE WHAT HAPPENED,

11:42AM 11   ANOTHER GOOD CASE FOR THAT IS -- EXCUSE ME -- A CASE INVOLVING

11:42AM 12   THE CITY OF MILWAUKEE, 249 F.SUPP. 3D 920, AND THAT CASE FROM

11:42AM 13   THE EASTERN DISTRICT OF WISCONSIN CITES A DISTRICT OF OREGON

11:42AM 14   CASE, ARANDA VERSUS CITY OF MCMINNIVILLE, 942 F.SUPP. 2D 1096.

11:42AM 15       SO THE MADDOX CASE CAME UP IN THE REPLY.  I URGE THE

11:42AM 16   COURT TO SHEPARDIZE THAT BECAUSE I DON'T THINK IT BEARS THE

11:42AM 17   WEIGHT THAT MY FRIENDS ON THE OTHER SIDE WOULD ASCRIBE TO IT.

11:42AM 18       THERE'S ONE OTHER THING I WANT TO MAKE CLEAR.  THEY KEEP

11:42AM 19   SAYING THIS IS A SMALL NUMBER OF TESTS.  THERE SHOULD BE NO

11:43AM 20   MISUNDERSTANDING ABOUT WHAT THEY DID.  THEY VOIDED EVERY SINGLE

11:43AM 21   TEST RUN ON ITS EDISON DEVICE.  EVERY SINGLE ONE.  THEY WERE

11:43AM 22   NOT EVEN IN A POSITION TO SAY THESE ONES WERE OKAY BUT THESE

11:43AM 23   ONES WEREN'T OKAY.  THAT'S HOW BAD IT WAS.

11:43AM 24       SO THIS IS NOT SOME SMALL UNIVERSE.  THIS IS EVERY TEST

11:43AM 25   THAT THEY RAN ON WHAT THEY SAID WAS THEIR PATH BREAKING

11:43AM 1     INVENTION.  THIS IS VERY RELEVANT EVIDENCE.  407 IS NOT A BASIS

11:43AM 2     TO EXCLUDE IT.

11:43AM 3         FOR THE 403 CONSIDERATIONS HERE, IF MS. HOLMES HAS

11:43AM 4     ALTERNATIVE EXPLANATIONS FOR WHY THEY DID THIS, SHE CAN PRESENT

11:43AM 5     THAT.  IF SHE THINKS THE GOVERNMENT IS MISREADING THIS ADD

11:43AM 6     ADMISSION, SHE CAN CROSS-EXAMINE WITNESSES ABOUT THAT.  WE CAN

11:43AM 7     ASK DR. DAS EXACTLY WHY THERANOS VOIDED ALL OF ITS TESTS.

11:43AM 8         BUT THIS IS A DEEPLY RELEVANT ADMISSION.  IT DOESN'T FIT

11:44AM 9     WITHIN 407.  IT WOULD GIVE ANY FRAUDSTER WHO DOESN'T -- OR WHO

11:44AM 10    SAYS TO THE WORLD I'M NOT STANDING BY MY EARLIER STATEMENT SOME

11:44AM 11    TYPE OF PASS, AND THAT'S JUST NOT APPROPRIATE HERE.  THIS IS

11:44AM 12    ADMISSIBLE EVIDENCE, AND THE COURT SHOULD DENY THE MOTION.

11:44AM 13             THE COURT:  THANK YOU.

11:44AM 14             MR. FLEURMONT:  YOUR HONOR, I'D LIKE TO START WITH

11:44AM 15    MR. LEACH'S CONTENTION THAT IT WAS NOT A REMEDIAL MEASURE.

11:44AM 16        THE GOVERNMENT'S WHOLE THEORY OF THIS CASE IS THAT

11:44AM 17    THERANOS PUT OUT TEST RESULTS THAT WEREN'T ACCURATE THAT

11:44AM 18    AFFECTED PEOPLE'S LIVES AND IT AFFECTED SOME OF THEIR

11:44AM 19    CONDITIONS.

11:44AM 20        AT THE SAME TIME I THINK I HEAR HIM SAYING NOW THAT

11:44AM 21    ISSUING A VOIDING OF THAT TEST, PROVIDING INFORMATION TO FOLKS,

11:45AM 22    THAT OUT OF AN ABUNDANCE OF CAUTION TO NOT USE THAT FOR PATIENT

11:45AM 23    RESULTS IS NOT A MEASURE THAT WOULD -- IF I COULD JUST GO

11:45AM 24    STRAIGHT TO THE RULE -- A MEASURE TAKEN THAT WOULD HAD MADE AN

11:45AM 25    EARLIER INJURY OR HARM LESS LIKELY TO OCCUR, WHICH I THINK IS

11:45AM 1    THAT POSITION.

11:45AM 2        THEIR THEORY OF THE CASE IS INCONSISTENT WITH ACTUALLY

11:45AM 3    WHAT THE RULE REQUIRES.  THIS IS A MEASURE TAKEN TO MAKE AN

11:45AM 4    INJURY LESS LIKELY TO OCCUR.  SO WE DO THINK THAT IT DOES FALL

11:45AM 5    UNDER RULE 407 AS A REMEDIAL MEASURE.

11:45AM 6        THE SECOND POINT I'D LIKE TO DISCUSS IS MR. LEACH SAYS ON

11:45AM 7    ONE HAND THAT THERE WAS A REGULATION THAT IF YOU DETECT AN

11:45AM 8    ERROR, YOU'RE SUPPOSED TO CORRECT IT.  BUT ON THE OTHER HAND,

11:45AM 9    THEY DIDN'T DETECT ANY ERRORS BECAUSE THEY COULDN'T TELL.

11:45AM 10   THOSE ARE ALSO TWO VERY INCONSISTENT POSITIONS.

11:45AM 11       AS A LETTER ON APRIL 1ST, WHICH IS EXHIBIT 27, SIGNED BY

11:46AM 12   DR. DAS, WHO HE REFERENCES, SAYS THAT THE TESTS WERE TAKEN OUT

11:46AM 13   OF -- THE VOIDING WAS DONE OUT OF AN ABUNDANCE OF CAUTION.  IT

11:46AM 14   WAS NOT RELATED TO ANY FINDING OF PATIENT HARM.

11:46AM 15       SO THE BEST AUTHORITY THAT WE BELIEVE ON THIS IS THE

11:46AM 16   GOVERNMENT'S WITNESS SARAH BENNETT WHO IS FROM CMS AND MADE

11:46AM 17   THAT STATEMENT THAT IT WAS NOT REQUIRED TO VOID TESTS.

11:46AM 18       AND ON THE LAST -- THE LAST POINT I'D LIKE TO MAKE IS THAT

11:46AM 19   MR. LEACH POINTS TO SEVERAL OBLIGATIONS THAT I POINTED TO AS

11:46AM 20   REQUIREMENTS, BUT NONE OF THEM WERE VOIDING.  SO THE OBLIGATION

11:46AM 21   TO COOPERATE IS UNCONTESTED.  WE KNOW THEY HAVE AN OBLIGATION

11:46AM 22   TO COOPERATE.

11:46AM 23       THE OBLIGATION TO RESPOND TO THE FINDING WITHIN TEN DAYS

11:46AM 24   IS ALSO NOT CONTESTED.  WE KNEW THEY HAD THAT OBLIGATION.

11:46AM 25       I DID NOT HEAR HIM SAY THAT ANY OF THOSE REQUIREMENTS IN

| | | |
|---|---|---|
| 11:46AM | 1 | CMS REQUIRED THE VOIDING, WHICH I THINK IS A CRITICAL POINT. |
| 11:46AM | 2 | THE COURT:  OKAY. |
| 11:47AM | 3 | MR. FLEURMONT:  NO FURTHER QUESTIONS? |
| 11:47AM | 4 | THE COURT:  MR. LEACH, ANYTHING ELSE? |
| 11:47AM | 5 | MR. LEACH:  VERY BRIEFLY, YOUR HONOR. |
| 11:47AM | 6 | THE COURT:  WE CAN DO A LITTLE POINT, COUNTERPOINT. |
| 11:47AM | 7 | I FIND THAT VERY HELPFUL.  THANK YOU. |
| 11:47AM | 8 | MR. LEACH:  WE ARE SAYING THAT THE REGS REQUIRED THE |
| 11:47AM | 9 | VOIDING OF THE TESTS.  WE ARE ABSOLUTELY SAYING THAT.  AND IT'S |
| 11:47AM | 10 | NOT JUST THAT ONE REGULATORY REQUIREMENT THAT MAKES IT PLAINLY |
| 11:47AM | 11 | EVIDENCE THAT THIS IS NOT THERANOS'S CORPORATE GOOD GRACES.  IT |
| 11:47AM | 12 | IS THE FACT THAT IT WAS IN RESPONSE TO THE IMMEDIATE JEOPARDY |
| 11:47AM | 13 | FINDING AND THEIR OBLIGATION.  SO IT'S ALL THREE WORKING |
| 11:47AM | 14 | TOGETHER, BUT WE ABSOLUTELY CONTEND THAT THEY WERE REQUIRED |
| 11:47AM | 15 | UNDER THAT THIRD REGULATION TO CORRECT THE TEST. |
| 11:47AM | 16 | AND MY POINT ON, YOU KNOW, MY POINT ON THE VOIDING IS NOT |
| 11:47AM | 17 | THEY COULDN'T TELL.  THEY CAN'T TELL YOU IF IT'S A VALUE OF 50 |
| 11:47AM | 18 | VERSUS A VALUE OF 100.  THEY JUST THREW UP THEIR HANDS.  THAT'S |
| 11:47AM | 19 | MY POINT THAT THEY COULDN'T TELL. |
| 11:47AM | 20 | MR. FLEURMONT:  I GUESS MY LAST POINT, YOUR HONOR, |
| 11:47AM | 21 | IS THAT THIS IDEA THAT THEY COULDN'T TELL, AND THIS IS GOING |
| 11:47AM | 22 | BACK TO MY HYPOTHETICAL OF A CORPORATION THAT LOOKS BACK AT ITS |
| 11:48AM | 23 | PROCESSES AND SAYS, HEY, WE CAN DO A LITTLE BIT BETTER, LET'S |
| 11:48AM | 24 | DO A LITTLE BIT BETTER.  IT DOESN'T NECESSARILY MEAN THAT THEY |
| 11:48AM | 25 | HAVE DONE ANYTHING WRONG, BUT THEY SEE AN IMPROVEMENT THAT THEY |

11:48AM 1    CAN MAKE.  AND THAT WAS THE CASE IN THIS CASE.

11:48AM 2          MR. LEACH:  WHAT IMPROVEMENT, YOUR HONOR?  WHAT

11:48AM 3    IMPROVEMENTS IN THE EDISON DID THEY DO?  THEY ISSUED A PIECE OF

11:48AM 4    PAPER THAT VOIDED THE TESTS TO ALL OF THE EDISON PATIENTS.

11:48AM 5          AND EVEN IF THAT WERE A MEASURE, IT WOULDN'T APPLY TO

11:48AM 6    THEIR OWN INTERNAL CONCLUSIONS ABOUT WHAT EDISON COULD DO.

11:48AM 7          THE COURT:  YOU GET THE LAST WORD.

11:48AM 8          MR. FLEURMONT:  YOUR HONOR, I THINK THE LETTER MAKES

11:48AM 9    VERY CLEAR THAT THERE WAS A DISSATISFACTION WITH SOME LAB

11:48AM 10   PRACTICES AND THE IMPROVEMENT WAS IMPROVING THOSE LAB

11:48AM 11   PRACTICES.

11:48AM 12         THE COURT:  I SEE.

11:48AM 13         MR. FLEURMONT:  AND, YOU KNOW FOR THE REASONS IN OUR

11:48AM 14   PAPERS AND THE REASONS I'VE SAID TODAY, WE THINK RULE 407

11:48AM 15   CLEARLY APPLIES AND THE EVIDENCE OF VOIDING SHOULD BE EXCLUDED.

11:48AM 16         IF THE COURT DISAGREES THIS EVIDENCE IS HIGHLY

11:48AM 17   PREJUDICIAL, UNFAIRLY PREJUDICIAL, AND IT SHOULD BE EXCLUDED

11:48AM 18   UNDER RULE 403.

11:48AM 19         THANK YOU.

11:49AM 20         THE COURT:  THANK YOU VERY MUCH.

11:49AM 21         MR. LEACH:  THANK YOU, YOUR HONOR.

11:49AM 22         THE COURT:  WE'RE PERILOUSLY CLOSE TO THE NOON HOUR.

11:49AM 23   WHY DON'T WE TAKE OUR LUNCH BREAK NOW, AND WE'LL COME BACK AT

11:49AM 24   ABOUT 1:00 O'CLOCK, PLEASE, 1:00 O'CLOCK.  GREAT.

11:49AM 25         THE CLERK:  COURT IS IN RECESS UNTIL 1:00 P.M.  THIS

11:49AM   1        LINE SHALL TERMINATE.

11:49AM   2            (LUNCH RECESS TAKEN AT 11:49 A.M.)

|   |   |
|---|---|
| 11:49AM | 1 |

**AFTERNOON SESSION**

01:11PM  2    (COURT CONVENED AT 1:11 P.M.)

01:11PM  3         THE COURT:  ALL RIGHT.  WE'RE BACK ON THE RECORD IN

01:11PM  4    THE HOLMES MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT

01:11PM  5    ONCE AGAIN.  WE'LL CONTINUE OUR DISCUSSION ON THE MOTIONS IN

01:12PM  6    LIMINE.

01:12PM  7         LET'S SEE.  I THINK WE ARE -- ARE WE AT 573 NOW?  I

01:12PM  8    BELIEVE THAT'S WHERE WE ARE AT.  IT'S MS. HOLMES'S MOTION TO

01:12PM  9    EXCLUDE THE FDA 2015 INSPECTION EVIDENCE.

01:12PM  10        I LOOK AT THIS AND IT APPEARS, MR. LOOBY, YOU'RE APPEARING

01:12PM  11   TO ADVANCE THIS MOTION.

01:12PM  12        MR. LOOBY:  THAT'S CORRECT, YOUR HONOR.

01:12PM  13        THE COURT:  AND IT LOOKS LIKE WE'RE GOING TO HAVE A

01:12PM  14   LITTLE DÉJÀ VU ABOUT OUR CONVERSATIONS ABOUT 803, IS THAT FAIR?

01:12PM  15        MR. LOOBY:  THAT'S CORRECT, YOUR HONOR.  I'M BACK

01:12PM  16   WITH ANOTHER INSPECTION, A DIFFERENT AGENCY, AND KIND OF THE

01:12PM  17   SAME HEARSAY ISSUES.

01:12PM  18        THE COURT:  RIGHT.

01:12PM  19        MR. LOOBY:  SO I THINK WE'LL SAVE A BIT OF TIME

01:12PM  20   ADDRESSING THAT.  I WILL ADDRESS SOME OF THE UNIQUE FACTS AS

01:12PM  21   THEY APPLY TO THE FDA INSPECTION DOCUMENTS, BUT I THINK WE HAVE

01:13PM  22   GONE OVER THE BASICS OF THE ARGUMENT.

01:13PM  23        THE COURT:  OKAY.  UNLESS THERE ARE ANY NEW CASES

01:13PM  24   THAT HAVE COME DOWN IN THE LAST HOUR OR ANYTHING ELSE EITHER

01:13PM  25   SIDE WANT TO BRING TO MY ATTENTION.  AND I'M HAPPY TO HEAR.

01:13PM  1    I'M NOT TRYING TO FORECLOSE ANY FURTHER DEVELOPMENT ABOUT THAT

01:13PM  2    ISSUE.  IT'S AN INTERESTING ISSUE.

01:13PM  3            MR. LOOBY:  YES.

01:13PM  4            THE COURT:  OKAY.  THANK YOU.

01:13PM  5            MR. LOOBY:  THANK YOU, YOUR HONOR.

01:13PM  6        I THINK A LITTLE BACKGROUND CAN BE HELPFUL ABOUT THE FDA'S

01:13PM  7    ROLE IN THE CASE.  SO, AS YOUR HONOR KNOWS, THERE'S AN

01:13PM  8    INDICTMENT ALLEGATION THAT CONCERNS THE FDA, AND THAT

01:13PM  9    ALLEGATION IS THAT MS. HOLMES, SHE TOLD INVESTORS THAT THERANOS

01:13PM  10   ANALYZER AND TEST DID NOT NEED FDA CLEARANCE OR APPROVAL WHEN

01:13PM  11   THE GOVERNMENT ALLEGES SHE KNEW THAT TO NOT BE THE CASE.

01:13PM  12       SO THE GOVERNMENT ALLEGES THAT THESE REPRESENTATIONS

01:13PM  13   HAPPENED IN 2013 AND 2014 PRINCIPALLY.  IMPORTANTLY, KIND OF

01:13PM  14   THE LAST FUNDRAISING ROUND FOR INVESTORS IN THE CASE CLOSED IN

01:13PM  15   APRIL OF 2015.

01:13PM  16       THE FDA INSPECTION THAT WE'RE SET TO TALK ABOUT TODAY,

01:14PM  17   THAT BEGAN IN AUGUST OF 2015.  SO MONTHS LATER.

01:14PM  18       AND BECAUSE OF THAT, NOTHING THAT HAPPENED DURING THAT

01:14PM  19   INSPECTION COULD BE RELEVANT TO THOSE FDA RELATED

01:14PM  20   REPRESENTATIONS ABOUT WHAT WAS REQUIRED OR WAS NOT REQUIRED IN

01:14PM  21   TERMS OF APPROVAL OR CLEARANCE.

01:14PM  22       THE GOVERNMENT IN ITS OPPOSITION DOESN'T DISPUTE THIS.  IT

01:14PM  23   CONCEDES THERE'S NO CONNECTION BETWEEN THE FDA ALLEGATIONS IN

01:14PM  24   THE INDICTMENT AND THIS INSPECTION EVIDENCE BY IGNORING THAT

01:14PM  25   PART.

01:14PM   1        AND IT ACTUALLY DISCLAIMS ANY NEED TO TIE THE FDA

01:14PM   2   INSPECTION EVIDENCE TO ANY REPRESENTATION TO ANY SINGLE

01:14PM   3   INVESTOR.  IT SAYS THAT THAT'S KIND OF BESIDE THE POINT.

01:14PM   4        SO WHAT ARE WE DOING HERE?  THE GOVERNMENT NOW PROPOSES TO

01:14PM   5   USE THE FDA INSPECTION EVIDENCE IN A DIFFERENT WAY.  IT WILL

01:14PM   6   ARGUE THAT IT SHOWS THAT THERANOS BLOOD COLLECTION DEVICE,

01:14PM   7   WHICH I'LL BE REFERRING TODAY AS A CTN, IT'S A CAPILLARY TO

01:15PM   8   NANOTAINER IS WHAT THE THREE LETTERS STAND FOR.  SO HOPEFULLY

01:15PM   9   CTN IS EASY ENOUGH FOR TODAY.

01:15PM  10        THE GOVERNMENT IS GOING TO ALLEGE THAT THE INSPECTION

01:15PM  11   EVIDENCE SHOWED THAT THESE DIDN'T WORK VERY WELL.  BUT THE FDA

01:15PM  12   INSPECTION EVIDENCE IS ACTUALLY NOT RELEVANT TO THAT QUESTION.

01:15PM  13        AND THE BRIEFING KIND OF GOES INTO WHAT THIS IS AT A HIGH

01:15PM  14   LEVEL, BUT WITH THE COURT'S INDULGENCE, I ACTUALLY THINK IT

01:15PM  15   BENEFITS US TO TAKE A COUPLE STEPS BACK.

01:15PM  16        SO WE TALKED EARLIER AT LENGTH ABOUT CLIA REGULATIONS AND

01:15PM  17   CMS.  SO THAT'S THE BODY OF LAW THAT GOVERNS CLINICAL

01:15PM  18   LABORATORIES.  THERANOS OPERATED A CLINICAL LABORATORY, SO IT

01:15PM  19   HAD TO ADHERE TO CLIA, AND IT WAS REGULATED BY CMS.

01:15PM  20        THE CLIA REGULATIONS SET FORTH A COMPREHENSIVE REGULATORY

01:15PM  21   SCHEME ABOUT LAB OPERATIONS BASICALLY FROM SOUP TO NUTS.  THE

01:15PM  22   THERANOS BUSINESS MODEL WAS UNIQUE BECAUSE IT ALSO BUILT ITS

01:15PM  23   OWN DEVICES TO USE IN ITS CLIA LAB.  THAT INCLUDES THE

01:16PM  24   ANALYZER, OR TSPU, ANOTHER ACRONYM, BUT MORE IMPORTANTLY FOR

01:16PM  25   THIS NOTION, WE'RE GOING TO BE TALK ABOUT THE CTN'S WHICH

01:16PM 1    THERANOS ALSO MANUFACTURED.

01:16PM 2        NORMALLY A COMPANY THAT MANUFACTURES A MEDICAL DEVICE AND

01:16PM 3    THEN SELLS THEM TO SOME OTHER LAB USER LIKE A COMPANY THAT

01:16PM 4    OPERATES A CLINICAL LAB, THEY'RE REGULATED EXCLUSIVELY BY FDA.

01:16PM 5        FDA, NOT SURPRISINGLY, HAS MANUFACTURING, DESIGN, AND

01:16PM 6    QUALITY REQUIREMENTS ALL OF ITS OWN.  THESE ARE CALLED THE

01:16PM 7    QSR'S IN THE BRIEFING.

01:16PM 8        AND THESE GOVERN, YOU KNOW, THE TYPES OF DOCUMENTS THAT A

01:16PM 9    MANUFACTURER HAS TO KEEP, HOW IT HANDLES COMPLAINTS FROM THE

01:16PM 10   CONSUMERS, SO THE PERSON THAT YOU'RE SELLING THE DEVICE TO, HOW

01:16PM 11   IT ASSURES ITSELF BASICALLY OF THE QUALITY OF THE DEVICES THAT

01:16PM 12   IT'S MANUFACTURING THAT THEY'RE SUITABLE FOR THE INDICATIONS AT

01:16PM 13   WHICH THEY'RE APPROVED BY THE FDA.

01:16PM 14       SO THERANOS SITS AT THE MIDDLE OF THESE TWO OVERLAPPING

01:16PM 15   AND SOMEWHAT REDUNDANT REGULATORY SCHEMES, AND THE OBSERVATIONS

01:17PM 16   IN THE TWO FORM 438'S, WHICH ARE THE FDA KIND OF INSPECTION

01:17PM 17   REPORTS.

01:17PM 18       I'LL START OVER.  THE OBSERVATIONS IN THE TWO FORM 438'S,

01:17PM 19   THEY ALL EMERGE FROM THE SAME DISCONNECT BETWEEN THE FDA AND

01:17PM 20   THERANOS ABOUT HOW THESE TWO BODIES OF LAW WOULD APPLY TO

01:17PM 21   THERANOS'S BUSINESS.

01:17PM 22       SO THERANOS BELIEVED THAT IT WAS OFFERING TESTS INCLUDING

01:17PM 23   THOSE RUN ON BLOOD SAMPLES COLLECTED AND TRANSPORTED IN THE

01:17PM 24   CTN'S AS LABORATORY DEVELOPED TESTS.  THIS HAS BEEN POPPING UP

01:17PM 25   IN THE BRIEFING FROM TIME TO TIME.

01:17PM   1          LABORATORY DEVELOPED TESTS, I GUESS THE ROUGH DEFINITION

01:17PM   2     IS THAT IT IS A TEST THAT A CLINICAL LABORATORY KIND OF

01:17PM   3     MANUFACTURES IN HOUSE.  IT DOESN'T SOURCE MATERIALS FROM

01:17PM   4     OUTSIDE.

01:17PM   5          SO FDA AS A MATTER OF POLICY HISTORICALLY HAS NOT

01:18PM   6     REGULATED LDT'S.  IT'S EMBRACED THE POSITION, THE POSTURE OF

01:18PM   7     KIND OF FORBEARANCE ON THAT.  IT STILL DOESN'T.  INSTEAD, THE

01:18PM   8     PERFORMANCE OF LTD'S FALLS TO CLIA AND CMS.

01:18PM   9          SO THE FDA KNEW THAT THERANOS BELIEVED ITS TESTS WERE

01:18PM  10     LDT'S BECAUSE THERANOS TOLD THEM SO OVER AND OVER AGAIN.  AND

01:18PM  11     THE BEST THING TO LOOK AT FOR THIS FACT IS ACTUALLY THE FDA'S

01:18PM  12     INSPECTION REQUEST FORM.

01:18PM  13          SO I'LL KINDLY ASK MS. SAHARIA TO PULL UP DEFENSE

01:18PM  14     EXHIBIT 82, AND THAT'S AT ECF 231-1 FOR THE RECORD.  THIS IS

01:18PM  15     THE AUGUST 2015 INSPECTION FORM.

01:18PM  16          SO WHILE THAT'S PULLING UP, THIS BASICALLY SETS OUT THE

01:18PM  17     SCOPE OF THE REVIEW FOR THE INSPECTORS WHO ARE GOING TO BE

01:18PM  18     GOING IN AT THE END OF AUGUST OF 2015 TO REVIEW THERANOS'S

01:19PM  19     MANUFACTURING FACILITIES.

01:19PM  20               THE COURT:  WAS THIS AN INSPECTION AT THERANOS'S

01:19PM  21     REQUEST?

01:19PM  22               MR. LOOBY:  NO.  THIS IS A FOR CAUSE INSPECTION THAT

01:19PM  23     WAS INITIATED BY THE FDA AND ACTUALLY MORE OR LESS UNANNOUNCED.

01:19PM  24          SO UNLIKE THE CMS, WHICH WAS ALSO KIND OF FOR CAUSE AND

01:19PM  25     APART BUT ALSO PARTIALLY A ROUTINE RECERTIFICATION SURVEY, THIS

01:19PM  1    IS A FOR CAUSE INSPECTION BASED ON COMPLAINTS THAT THE FDA HAD

01:19PM  2    RECEIVED AND OTHER THINGS WHICH I'LL GET INTO IN WALKING US

01:19PM  3    THROUGH THIS INSPECTION REQUEST FORM.

01:19PM  4         SO, MS. SAHARIA, IF WE CAN GO TO PAGE 3 TO 4.  AND THERE'S

01:19PM  5    A SECTION CALLED OBJECTIVES.

01:19PM  6              MS. SAHARIA:  THE NEXT PAGE?

01:19PM  7              MR. LOOBY:  I THINK IT'S LIKE AT THE BREAK BETWEEN

01:19PM  8    ECF 3 AND ECF 4.

01:20PM  9         YES.  SO THIS LISTS THE REGULATORY PROVISIONS THAT THE

01:20PM 10    AGENCY IS GOING TO GO IN AND SEE KIND OF WHAT APPLIES.  AND

01:20PM 11    THAT FIRST ONE QUALITY SYSTEMS IS PART -- IS THE QSR, AND THE

01:20PM 12    OTHERS ARE ALL ABOUT MEDICAL DEVICE, KIND OF MANUFACTURING AND

01:20PM 13    RECORDKEEPING FOR MANUFACTURERS.

01:20PM 14         IF WE GO TO ECF PAGE 5 AND HERE UNDER THE NUMBER 6 THE

01:20PM 15    FIRST BIG PARAGRAPH IT SAYS, "THERANOS BELIEVES THAT BECAUSE IT

01:20PM 16    IS CURRENTLY PERFORMING ALL SAMPLE TESTING IN ITS CLIA LAB ITS

01:20PM 17    TESTING OF SAMPLES WITH VARIOUS ANALYZERS ASSAYS/ANALYTES USING

01:20PM 18    ITS MANUFACTURED ANALYZER ARE LABORATORY DEVELOPED TESTS."  SO

01:20PM 19    THIS REFLECTS THE FDA'S UNDERSTANDING OF THERANOS'S REGULATORY

01:21PM 20    POSITION.

01:21PM 21         AND IF WE GO TO ECF PAGE 6 UNDER REASON FOR INSPECTION.

01:21PM 22    IT SAYS, "CDRH," AND THAT'S A DIVISION WITHIN THE FDA, "IS

01:21PM 23    CONCERNED THAT THE FIRM MAY NOT HAVE ADEQUATE DESIGN CONTROL

01:21PM 24    PROCEDURES, COMPLAINT HANDLING AND INVESTIGATION PROCEDURES,

01:21PM 25    AND MDR," SO MEDICAL DEVICE REPORTING, "PROCEDURES GIVEN THAT

01:21PM 1    THE FIRM BELIEVES IT IS AN LDT PROVIDER, NOT A MANUFACTURER

01:21PM 2    SUBJECT TO FDA REGULATIONS."

01:21PM 3        SO THIS IS WHAT THE FDA WENT IN LOOKING FOR, QSR, FDA

01:21PM 4    SPECIFIC POLICIES AND DOCUMENTATION RELATING TO THE CTN'S,

01:21PM 5    WHICH BECAUSE OF THEIR INTERACTIONS WITH THERANOS, THEY

01:21PM 6    SUSPECTED THE COMPANY MIGHT NOT HAVE.

01:21PM 7        NOW, THERANOS DID HAVE DOCUMENTATION AND DATA ON

01:21PM 8    MANUFACTURING AND DESIGN OF THE CTN'S, AND IT DID HAVE RECORDS

01:22PM 9    TO SHOW HOW IT DEALT WITH COMPLAINTS, SO SOME OF THESE SAME

01:22PM 10    TOPICS THAT THESE REGULATIONS HIT, BUT THESE RECORDS WERE

01:22PM 11    CREATED AND MAINTAINED AS PART OF THERANOS'S CLIA

01:22PM 12    LABORATORY.

01:22PM 13        SO THEY WEREN'T IN THE FORMAT THAT THE FDA WOULD EXPECT TO

01:22PM 14    SEE IF IT WALKED INTO A PURE DEVICE MANUFACTURER AND SAID SHOW

01:22PM 15    US YOUR QSR, YOUR DESIGN STUDY, SHOW US YOUR PROCEDURE FOR

01:22PM 16    DEALING WITH MEDICAL COMPLAINTS.  THERANOS DID NOT HAVE

01:22PM 17    EVERYTHING SORT OF LAID OUT IN THE QSR FORMAT.  AND THE FDA, AS

01:22PM 18    SEEN IN THE INSPECTION REQUEST FORM, UNDERSTOOD THAT THAT MIGHT

01:22PM 19    BE THE CASE.

01:22PM 20        NOW, THERANOS EXPLAINED THIS TO THE FDA DURING THE

01:22PM 21    INSPECTION AND IN CORRESPONDENCE AFTER THE INSPECTION.  AND YOU

01:22PM 22    CAN FIND SOME OF THAT KEY CORRESPONDENCE SETTING FORTH THIS

01:22PM 23    POSITION AT DEFENSE EXHIBIT 50, AND THAT'S AT ECF 586-4.

01:23PM 24        AND WHEN I SAY "DEFENSE EXHIBIT," I MEAN THIS IS AN

01:23PM 25    EXHIBIT TO THE DEFENSE MOTION IN LIMINE TO EXCLUDE THIS

01:23PM 1     EVIDENCE.  IT'S ACTUALLY AN EXEMPLAR GOVERNMENT PROPOSED TRIAL

01:23PM 2     EXHIBIT THAT WE WOULD BE MOVING TO EXCLUDE.

01:23PM 3          SO WE DON'T NEED TO PULL THIS ONE UP AND WALK THROUGH IT,

01:23PM 4     BUT I WILL JUST SAY BRIEFLY, THAT IT IS AN EMAIL FROM AN

01:23PM 5     INSPECTOR MARY HOLE, WHO IS FDA EMPLOYEE, ATTACHING VARIOUS

01:23PM 6     THERANOS SUBMISSIONS, INCLUDING A LETTER FROM THERANOS GENERAL

01:23PM 7     COUNSEL, HEATHER KING, THAT WAS SENT DURING THE INSPECTION THAT

01:23PM 8     KIND OF LAYS OUT THE BACKGROUND THAT I JUST WALKED THROUGH JUST

01:23PM 9     NOW.

01:23PM 10         SO THE FDA'S RESPONSE WAS, AND I'M PARAPHRASING HERE, BUT

01:23PM 11    WE FIND THE CTN'S ARE ACTUALLY A CLASS 2 MEDICAL DEVICE.  WE

01:23PM 12    ARE MAKING A DETERMINATION THAT WE DISAGREE WITH YOU THAT

01:23PM 13    THEY'RE NOT AN LDT, AND YOU SHOULD HAVE BEEN ADHERING TO THE

01:23PM 14    QSR'S ALL ALONG.  SO WE'RE GOING TO CITE YOU FOR YOUR FAILURE

01:24PM 15    TO DO SO.

01:24PM 16         THEY DID THIS PRINCIPALLY WITHOUT CONSIDERING WHAT

01:24PM 17    THERANOS HAD DONE IN THE CLIA LAB BECAUSE IT JUST DOESN'T

01:24PM 18    TRANSLATE OVER.

01:24PM 19         SO YOU CAN SEE HOW THIS HAPPENED, AND THIS IS AN EXAMPLE

01:24PM 20    AT DEFENSE EXHIBIT 52, ECF 586-6.  AND AT ECF PAGE 4 OF THAT

01:24PM 21    EXHIBIT THERE'S A STATEMENT FROM AN -- IN AN EMAIL FROM

01:24PM 22    SEEMA SINGH, ANOTHER FDA INSPECTOR, WHO IS REPORTING TO HER

01:24PM 23    COLLEAGUES THAT THERANOS IS TELLING HER THAT THEY VALIDATE

01:24PM 24    THEIR TESTS IN THE CLIA LAB, BUT SHE REPORTS, I HAVE NOT LOOKED

01:24PM 25    AT ANY CLIA PERFORMANCE VALUATIONS.

01:24PM 1        SO THIS IS THE CONTEXT OF WHAT MAKES THE GOVERNMENT'S

01:24PM 2   PROPOSED USE OF THE EVIDENCE PROBLEMATIC HERE.

01:24PM 3        SO LET'S TAKE, FOR EXAMPLE, THE GOVERNMENT'S FAVORITE

01:24PM 4   OBSERVATION IN THE FORM 438 FOR THE PALO ALTO FACILITY.  SO

01:24PM 5   THERE WERE ACTUALLY TWO INSPECTIONS HERE IN NORTHERN

01:25PM 6   CALIFORNIA.  THERE WAS ONE AT THE PALO ALTO HEADQUARTERS,

01:25PM 7   BECAUSE THAT'S WHERE THE DESIGN -- SOME OF THE DESIGN

01:25PM 8   DOCUMENTATION WAS HELD, AND THEN THERE WAS ONE ACROSS THE BAY

01:25PM 9   IN NEWARK WHERE THE ACTUAL CTN'S WERE MANUFACTURED.

01:25PM 10       MS. SAHARIA, IF YOU COULD PULL UP GOVERNMENT'S EXHIBIT 14,

01:25PM 11   ECF 680, AND THIS IS AT PAGE 16.

01:25PM 12       SO WHILE SHE PULLS THIS UP, I'LL GIVE A LITTLE PRIMER ON

01:25PM 13   WHAT THIS OBSERVATION IS.  THE FDA WENT IN AND SAID WE WANT TO

01:25PM 14   SEE YOUR DESIGN AND VALIDATION DOCUMENTATION THAT YOU WOULD BE

01:25PM 15   MAINTAINING AS A DEVICE MANUFACTURER.

01:25PM 16       AND THERANOS GIVES THEM A REPORT, AND THE FDA MAKES AN

01:25PM 17   OBSERVATION AND IT SAYS IT LOOKS LIKE THE REPORT HAS FLAGGED A

01:25PM 18   FEW ASSAYS FOR FURTHER STUDY, BUT THE REPORT WAS NOT

01:26PM 19   SUBSEQUENTLY UPDATED TO REFLECT THAT ADDITIONAL WORK HAD BEEN

01:26PM 20   DONE, AND SO THAT'S THE GENESIS OF THE CITATION.  IT'S

01:26PM 21   INADEQUATE DESIGN, VALIDATION DOCUMENTATION AS A MANUFACTURER

01:26PM 22   OF A MEDICAL DEVICE.

01:26PM 23       SO THERANOS DID PROVIDE NARRATIVE EXPLANATIONS AND DATA

01:26PM 24   FROM IT'S CLIA LAB TO SHOW, OKAY, WE MIGHT NOT HAVE GONE BACK

01:26PM 25   AND UPDATED THIS MANUFACTURING PAPERWORK, BUT WE HAVE DONE

01:26PM   1       FURTHER STUDIES ON THE PERFORMANCE OF THE CTN'S.  IN FACT, THEY

01:26PM   2       HAD DONE -- ALREADY AT THAT POINT THEY HAD DONE A 510(K)

01:26PM   3       SUBMISSION TO THE FDA FOR CLEARANCE OF THE ASSAYS, AND THEY

01:26PM   4       WERE ABOUT TO SUBMIT ANOTHER ONE.

01:26PM   5           WE JUST LOOKED AT SOME OF THOSE DOCUMENTS TOGETHER.  SO

01:26PM   6       THOSE ARE THE DEFENSE EXHIBITS THAT I JUST WENT THROUGH.  I

01:26PM   7       DIDN'T PULL THEM UP, BUT THEY'RE ATTACHED TO OUR MOTION.

01:26PM   8           AND ULTIMATELY THE FDA'S POSITION IS THAT'S OF NO USE.

01:26PM   9       YOU NEED TO BE COMPILING THESE QSR'S, COMPLYING WITH THIS,

01:27PM  10       YOU'RE A MEDICAL DEVICE MANUFACTURER, WE'RE GOING TO WRITE YOU

01:27PM  11       UP.

01:27PM  12           THE GOVERNMENT WANTS TO IGNORE THIS CONTEXT.  IT WANTS TO

01:27PM  13       PUT THIS OBSERVATION BEFORE THE JURY, AND IT WANTS TO SAY THAT

01:27PM  14       THIS QSR VIOLATION MEANS THAT THERANOS, THAT TESTS RUN ON BLOOD

01:27PM  15       COLLECTED IN THE CTN'S WERE NOT CAPABLE OF PRODUCING ACCURATE

01:27PM  16       AND RELIABLE RESULTS.

01:27PM  17           THAT TYPE OF DETERMINATION WAS OUTSIDE THE SCOPE OF THIS

01:27PM  18       INSPECTION BY DEFINITION FOR ALL OF THE REASONS WE JUST

01:27PM  19       DISCUSSED.

01:27PM  20           THE SECOND BIG ISSUE WITH THE GOVERNMENT'S PROPOSED USE OF

01:27PM  21       THESE OBSERVATIONS IS THAT THEY'RE HYPER TECHNICAL.  THIS IS,

01:27PM  22       IN THE FORM 438, THIS IS KIND OF ALL OF THE ELABORATION THAT

01:27PM  23       THEY GET.  SO IN ITS OPPOSITION BRIEF THE GOVERNMENT QUOTES

01:28PM  24       THIS AND IT KINDS OF HOLDS IT OUT AS SELF-EVIDENT EVIDENCE OF

01:28PM  25       INACCURACY AND UNRELIABILITY.

01:28PM 1    THE GOVERNMENT HASN'T DISCLOSED AN EXPERT TO KIND OF

01:28PM 2 EXPLAIN WHAT IS THE CONNECTION BETWEEN DESIGN VALIDATION

01:28PM 3 MANUFACTURING DOCUMENTATION AND PERFORMANCE OF TESTS RUN ON

01:28PM 4 BLOOD COLLECTED IN THE CTN'S, OR TO EXPLAIN, OKAY, WHAT DOES

01:28PM 5 THIS CITATION MEAN WHEN APPLIED TO A COMPANY LIKE THERANOS THAT

01:28PM 6 IS ALSO ADHERING TO CLIA REGULATIONS?

01:28PM 7    FOR THESE FORM 438'S AND THE OTHER INSPECTION EVIDENCE, IT

01:28PM 8 SEEMS THAT THE GOVERNMENT'S POSITION IS THAT THE JURY COULD

01:28PM 9 JUST FIGURE IT OUT FOR THEMSELVES.

01:28PM 10    BUT WE SUBMIT THAT THAT'S NOT HELPFUL, AND THIS INSPECTION

01:28PM 11 EVIDENCE IS NOT RELEVANT, AND IT POSES A GRAVE DANGER OF JURY

01:28PM 12 CONFUSION AND UNFAIR PREJUDICE.

01:28PM 13    NOW, IT'S NO ANSWER TO SAY, WELL, THIS JUST GOES TO THE

01:29PM 14 WEIGHT.  CAN'T YOU POINT THIS OUT TO THE JURY ON

01:29PM 15 CROSS-EXAMINATION?  BUT, OF COURSE, THE DEFENSE CAN DO

01:29PM 16 CROSS-EXAMINATION, BUT IT'S NOT THE ROLE OF CROSS-EXAMINATION

01:29PM 17 TO HAVE TO SPEND LIKE MULTIPLE COURT DAYS EXPLAINING TO THE

01:29PM 18 JURY THAT THE EVIDENCE IS NOT WHAT THE GOVERNMENT REPRESENTS IT

01:29PM 19 TO BE IN A FUNDAMENTAL WAY.

01:29PM 20    THAT'S REALLY WHERE THE COURT SHOULD STEP IN.  IT SHOULD

01:29PM 21 SAVE US ALL OF THE TIME AND EFFORT ON THIS BECAUSE IT WOULD BE

01:29PM 22 A LOT OF TIME AND EFFORT.  THE DEFENSE WOULD HAVE TO CONSIDER

01:29PM 23 ASKING, LOOKING FOR AND RETAINING AN EXPERT TO EXPLAIN THESE

01:29PM 24 REGULATIONS.  WE WOULD NEED SOMEBODY TO LOOK AT THE DESIGN

01:29PM 25 STUDY AND TO REBUT KIND OF THE OBSERVATION HERE, WHICH IS THAT

01:29PM 1   IT'S NOT ADEQUATELY DOCUMENTED.

01:29PM 2       WELL, WHAT DOES THAT MEAN?  WHAT DOES THAT MEAN FOR THE

01:29PM 3   PERFORMANCE OF THE TEST?

01:29PM 4       BUT EVEN IF WE DID ALL OF THAT, THE JURY HAVING SAT

01:29PM 5   THROUGH IT, COULDN'T BE BLAMED FOR THINKING, WELL, MAYBE THERE

01:29PM 6   IS SOMETHING THERE.  BUT WE SUBMIT THAT THERE REALLY IS NOT.

01:29PM 7       SO THAT'S THE CRUX OF OUR MOTION TO EXCLUDE THE FDA

01:29PM 8   INSPECTION EVIDENCE.

01:30PM 9       AND I THINK UNLIKE THE CMS INSPECTION WHICH ACTUALLY WENT

01:30PM 10  INTO THE CLIA LAB AND WAS LOOKING AT SOME INPUT INTO ITS

01:30PM 11  PERFORMANCE, QC PT, THIS IS KIND OF REALLY QUITE A SIDE SHOW,

01:30PM 12  AND IT'S A COMPLEX ONE.  THERE'S A WHOLE OTHER SET OF

01:30PM 13  REGULATIONS THAT OTHERWISE WOULDN'T BE AT ISSUE IN THE CASE.

01:30PM 14      THE GOVERNMENT HAS PROPOSED TO USE SOME OF THE LEGAL

01:30PM 15  OBJECTIONS THAT THERANOS'S ATTORNEYS HAVE MADE TO THE

01:30PM 16  JURISDICTION TO THE FDA AS EVIDENCE OF, YOU KNOW, THE COMPANY

01:30PM 17  BEING UNCOOPERATIVE OR OTHERWISE UNHELPFUL WITH THE REGULATORS.

01:30PM 18      WE WOULD HAVE TO GO INTO WHETHER OR NOT THOSE OBJECTIONS

01:30PM 19  WERE LEGITIMATE, AND, YOU KNOW, AS WE JUST WALKED THROUGH, THIS

01:30PM 20  IS A COMPLEX AREA.  IT'S ONE WHERE THE AGENCY'S POSITIONS WERE

01:30PM 21  EVOLVING DURING THE TIME THAT THERANOS WAS IN OPERATION.

01:30PM 22      SO THE FDA AT THE TIME DURING THE OBAMA ADMINISTRATION HAD

01:30PM 23  BEEN PROPOSING A CHANGE ON HOW IT WOULD REGULATE TESTS LIKE

01:31PM 24  THIS, EVENTUALLY ISSUED SOME UNBINDING GUIDANCE THAT HAS SINCE

01:31PM 25  BEEN EITHER RESCINDED OR -- I DON'T KNOW WHAT THE STATUS OF IT

01:31PM  1    IS, BUT IT ACTUALLY DIDN'T GO THROUGH.

01:31PM  2        SO, YOUR HONOR, WE SUBMIT THAT THIS EVIDENCE, IT REALLY

01:31PM  3    IS -- IT'S NOT PROBATIVE OF ANY MATERIAL POINT IN THE CASE AND

01:31PM  4    IT SHOULD BE EXCLUDED.

01:31PM  5            THE COURT:  ALL RIGHT.

01:31PM  6            MR. LOOBY:  YOUR HONOR, ON THE HEARSAY POINT, AND

01:31PM  7    I'D JUST LIKE TO MAKE A COUPLE OF QUICK POINTS.  WE WON'T GO

01:31PM  8    INTO THE LAW BECAUSE THE ARGUMENTS ARE BASICALLY THE SAME.

01:31PM  9        BUT IN CERTAIN WAYS THE FORM 483'S, THEY FARE EVEN WORSE

01:31PM 10    UNDER THE RUBRIC THAT WE DISCUSSED.  FIRST, THEY CONTAIN PURE

01:31PM 11    LEGAL CONCLUSIONS.  THEY ACTUALLY DON'T EVEN REALLY CONTAIN

01:31PM 12    THAT MANY WHAT YOU COULD CALL FACTS.

01:31PM 13        THEN SECOND, THE GOVERNMENT HAS KIND OF ATTACHED TO ITS

01:31PM 14    OPPOSITION TO OUR MOTION IN LIMINE TWO EXHIBITS THAT ARE, YOU

01:32PM 15    KNOW, MULTIPAGE DOCUMENTS.  ONE OF THEM IS 77 PAGES LONG, AND

01:32PM 16    THAT'S GOVERNMENT EXHIBIT 14 AT ECF 680, AND THEN THERE'S

01:32PM 17    GOVERNMENT EXHIBIT 15, ECF 680-1.  THAT ONE IS 49 PAGES LONG.

01:32PM 18        AND THEY SEEM TO BE JUST COMPENDIUMS OF NARRATIVE

01:32PM 19    DOCUMENTS FROM THE INSPECTORS WHO WERE COUNTING ON A DAY-BY-DAY

01:32PM 20    BASIS WHAT THEY FOUND, WHO THEY TALKED TO, WHAT THERANOS

01:32PM 21    EMPLOYEES TOLD THEM.  UNLIKE THE CMS REPORT, THEY ARE GIVEN

01:32PM 22    NAMES.

01:32PM 23        SO WE KNOW THAT A LOT OF THE INFORMATION DID NOT COME FROM

01:32PM 24    MS. HOLMES, BUT IT CAME FROM THE PEOPLE INVOLVED IN THE DESIGN

01:32PM 25    AND MANUFACTURING WHOM THE FDA INSPECTORS WERE QUERYING.

01:32PM 1    IT'S UNCLEAR WHAT THE GOVERNMENT IS ATTEMPTING TO DO, IF

01:32PM 2    IT'S GOING TO OFFER MORE OF THESE LONG FORM NARRATIVE ACCOUNTS

01:32PM 3    OF THE INSPECTION.  THINK OF THEM KIND OF LIKE THE BACKUP

01:33PM 4    DOCUMENTS TO THIS KIND OF THE TOP LEVEL CONCLUSION.

01:33PM 5    THEY WERE NOT ON THE GOVERNMENT'S EXHIBIT LIST.  BUT NOW

01:33PM 6    THE GOVERNMENT HAS KIND OF COME AND PUT THEM IN THE OPPOSITION,

01:33PM 7    AND IT'S TAKEN THE POSITION IN THE OPPOSITION THAT THIS IS KEY

01:33PM 8    EVIDENCE IN THE CASE.

01:33PM 9    SO THERE'S A LOT OF HEARSAY.  THERE'S MULTIPLE LEVELS OF

01:33PM 10   HEARSAY PROBLEMS IN THOSE DOCUMENTS, AND WE SUBMIT THAT THEY

01:33PM 11   WOULD -- THEY SHOULD NOT BE ADMITTED.

01:33PM 12   I THINK THAT'S IT FROM THE HEARSAY POINT.  BEFORE I EITHER

01:33PM 13   TAKE QUESTIONS FROM YOUR HONOR OR RESERVE MY TIME FOR REBUTTAL,

01:33PM 14   THERE'S JUST A FEW WORDS ABOUT SOME OF THE SUPERFLUOUS EVIDENCE

01:33PM 15   THAT THE GOVERNMENT PUTS IN ITS OPPOSITION.  THESE INCLUDE LIKE

01:33PM 16   A LONG EXCERPT OF TEXT MESSAGES ALLEGEDLY SENT BETWEEN

01:33PM 17   MS. HOLMES AND MR. BALWANI DURING THE INSPECTION.  THEY ALSO

01:33PM 18   INCLUDE CHARACTERIZATIONS ABOUT THE PROPRIETARY OF THE LAWYER'S

01:33PM 19   CONDUCT AND OTHER CONDUCT DURING -- IN OBJECTING TO THE FDA AT

01:33PM 20   CERTAIN POINTS IN TIME.

01:33PM 21   ALTHOUGH I WILL NOTE THAT THERE WAS NEVER ACCESS DENIED TO

01:33PM 22   THE FDA TO DO AN INSPECTION.  THERE WERE OBJECTIONS TO THE

01:34PM 23   RECORD ESSENTIALLY AND OTHER COMPANY DOCUMENTS THAT ARE

01:34PM 24   RELATING TO THE CTN'S BUT ARE UNRELATED TO AND PREDATE THE FDA

01:34PM 25   INSPECTION.

01:34PM 1      SO I WOULD SUBMIT, YOUR HONOR, THAT THIS IS ALL JUST NOISE

01:34PM 2  TO DISTRACT FROM THE FACT THAT THE FDA INSPECTION DOES NOT BEAR

01:34PM 3  ON THE GOVERNMENT'S ACCURACY AND RELIABILITY CASE.

01:34PM 4      THE FDA INSPECTION -- AND THIS IS, KIND OF GOING BACK TO

01:34PM 5  THE 403 AND THE WASTE OF TIME ISSUES, THIS IS ALL THE STUFF

01:34PM 6  THAT COULD GET SWEPT IN IF WE ARE PERMITTED -- IF WE HAVE TO GO

01:34PM 7  DOWN THIS ROAD IN ADDRESSING WHAT HAPPENED IN AUGUST AND

01:34PM 8  SEPTEMBER OF 2015.

01:34PM 9      SO WITH THAT, YOUR HONOR.

01:34PM 10         THE COURT:  OKAY.  THANK YOU VERY MUCH.  THANK YOU.

01:34PM 11  MR. LEACH.

01:34PM 12         MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD AFTERNOON.

01:35PM 13      THE DEFENDANT'S PROPOSED ORDER SEEKS TO EXCLUDE ANY

01:35PM 14  EVIDENCE, ARGUMENT, OR REFERENCE TO THE FDA'S 2015 INSPECTION.

01:35PM 15      THERE'S BEEN A LOT OF FOCUS ON THE FORM 483'S FROM THE

01:35PM 16  NEWARK AND THE PALO ALTO LABS, BUT THEIR PROPOSED ORDER WANTS

01:35PM 17  NO MENTION THAT THE FDA CAME TO INSPECT THERANOS IN SEPTEMBER

01:35PM 18  OF 2015.

01:35PM 19      THE COURT SHOULD DECLINE TO ISSUE SUCH A SWEEPING ORDER.

01:35PM 20  THE RELEVANCE OF THIS EVIDENCE IS SIMPLE AND MANIFEST.

01:35PM 21      IN SEPTEMBER OF 2015 THE FDA, ONE OF THERANOS'S PRIMARY

01:35PM 22  REGULATORS, CAME FOR AN INSPECTION TO LOOK AT SOME OF

01:35PM 23  THERANOS'S TECHNOLOGY, THE CTN, AND TO USE A VERY NON-LEGAL

01:35PM 24  TERM, THE DEFENDANT FREAKED OUT ABOUT IT.

01:35PM 25      WE KNOW THAT FROM THE TEXT SHE SUBMITS TO MR. BALWANI WHEN

01:36PM 1    THE INSPECTORS COME.  THEY INSIST THAT EVERYTHING BE STAMPED

01:36PM 2    "CONFIDENTIAL."  THEY SAY WE'RE GOING TO RUN CIRCLES AROUND THE

01:36PM 3    FDA.  THEY SAY WE HAVE TO FIX REPRESENTATIONS ON OUR WEBSITE

01:36PM 4    BECAUSE WE MIGHT BE MARKETING THESE LDT'S BECAUSE OF THE CTN'S.

01:36PM 5        THEY TALK ABOUT STOP MAKING THE CTN'S ALTOGETHER.  THEY

01:36PM 6    TALK ABOUT HOW THEY NEED TO FIX THE CTN'S, THERANOS'S

01:36PM 7    TECHNOLOGY.

01:36PM 8        NONE OF THIS IS THE BEHAVIOR OF SOMEBODY WHO BELIEVES IN

01:36PM 9    THEIR TECHNOLOGY.  NONE OF THIS IS THE BEHAVIOR OF SOMEBODY WHO

01:36PM 10   THINKS THEIR, THAT THEIR -- THAT THE THERANOS TECHNOLOGY IS

01:36PM 11   ACCURATE AND RELIABLE.

01:36PM 12       IF THERE WERE NO PROBLEMS, INSTEAD OF HIRING THE FORMER,

01:36PM 13   YOU KNOW, A FORMER HIGH LEVEL FDA OFFICIAL WHO IS NOW AT

01:36PM 14   BOIES SCHILLER TO COME DEFEND THIS INSPECTION, MS. HOLMES WOULD

01:36PM 15   HAVE SAID COME IN, COME AND SEE EVERYTHING, HERE'S THE CTN'S,

01:37PM 16   HERE'S OUR REPORTS, WE'RE AN OPEN BOOK.

01:37PM 17       THAT'S NOT WHAT HAPPENED HERE.  THERE WERE OBJECTIONS.

01:37PM 18   THERE WERE CONTENTIOUS BACK AND FORTH BETWEEN THE FDA

01:37PM 19   INSPECTORS, AND THE TEXT MESSAGES REVEAL DEEP, DEEP ANXIETY

01:37PM 20   ABOUT WHAT THEY'RE GOING TO FIND FOR WHATEVER REASON THAT

01:37PM 21   THEY'RE THERE.  THE REASON IS ALMOST IRRELEVANT.

01:37PM 22       IT'S THE FACT THAT THEY ARE REACTING THIS WAY TO A

01:37PM 23   GOVERNMENT INSPECTION THAT REFLECTS INTENT AND KNOWLEDGE THAT

01:37PM 24   THEIR TECHNOLOGY ISN'T UP TO SNUFF.

01:37PM 25       THE COURT:  SO, MR. LEACH, IS THAT -- ARE THOSE THE

01:37PM 1    FACTS THAT YOU WOULD SEEK TO INTRODUCE, THAT IS, THE CONDUCT OF

01:37PM 2    THE PARTIES, MS. HOLMES AND OTHERS, IN REGARDS TO A SEARCH AND

01:37PM 3    INVESTIGATION BY THE FDA?  IS IT JUST THE CONDUCT THAT IS

01:37PM 4    PARAMOUNT HERE WITHOUT THE REPORT?

01:37PM 5              MR. LEACH:  THAT'S PRIMARILY WHAT I'M INTERESTED,

01:37PM 6    YOUR HONOR.  AND THE PURPOSE OF ATTACHING SOME OF THESE LENGTHY

01:37PM 7    DESCRIPTIONS OF WHAT HAPPENED DURING THE FDA INSPECTION IS TO

01:38PM 8    GIVE CONTEXT THAT EITHER HEATHER KING OR AN FDA WITNESS, IF

01:38PM 9    NECESSARY, COULD SAY MS. HOLMES SAID X DURING THE FDA

01:38PM 10   INSPECTION.  MS. HOLMES WAS VERY INVOLVED IN THE FDA

01:38PM 11   INSPECTION.  SHE SAID WE'RE ALL USING THESE CTN'S FOR

01:38PM 12   12 PERCENT OF OUR TESTS, SO YOU DON'T NEED TO BE CONCERNED

01:38PM 13   HERE.  SO IT IS PRIMARILY FOR THAT REACTION.

01:38PM 14        WE DO -- I DO CARE ABOUT THE 483, AND I'M NOT GOING TO

01:38PM 15   REARGUE THE HEARSAY ISSUE, BUT I THINK THAT THEY'RE TRYING TO

01:38PM 16   MAKE SOMETHING THAT -- A LOT MORE COMPLICATED THAN IT IS,

01:38PM 17   YOUR HONOR.  AND IF WE NEED TO NOTICE AN FDA WITNESS, AN EXPERT

01:38PM 18   TO EXPLAIN WHAT SHE WROTE ON THE FORM, WE CAN DO THAT.

01:38PM 19        BUT IT GOES TO NOTICE.  IT GOES TO THE INADEQUACY OF THE

01:38PM 20   TESTING FOR THOSE PARTICULAR FOUR ASSAYS.  THE THRUST OF WHAT

01:39PM 21   THAT FORM IS, IS THAT THEY HAD A PLAN, THEY SENT OUT THE

01:39PM 22   ACCEPTANCE CRITERIA THAT THESE ASSAYS NEED TO MEET, AND THEY

01:39PM 23   DIDN'T MEET THEM.

01:39PM 24        AND WHAT DID THEY DO?  THEY KEPT TESTING.

01:39PM 25        NOW, THERANOS INSISTS THAT THEY HAVE SOME DOCUMENTS TO

01:39PM 1    BACK THAT UP, BUT THE FDA WASN'T ACCEPTING THAT.  AND WE THINK

01:39PM 2    THOSE FACTS ARE PROBATIVE OF THE ACCURACY AND RELIABILITY OF

01:39PM 3    THE TESTS.

01:39PM 4         SO I DO CARE ABOUT THE 483, AND I THINK IT'S RELEVANT, AND

01:39PM 5    THIS IS NOT THE MASSIVE MINI TRIAL THAT IT IS MADE OUT TO BE,

01:39PM 6    BUT AN ORDER THAT EXCLUDES ALL FDA INSPECTION EVIDENCE IS WAY

01:39PM 7    TOO BROAD.

01:39PM 8         SHE MAKES MANY STATEMENTS DURING THIS TIME PERIOD THAT ARE

01:39PM 9    REFLECTIVE OF HER INTENT, HER CONTROL OF THE LAB, OVER HER

01:39PM 10   KNOWLEDGE OF THE TECHNOLOGY, AND, FRANKLY, HER ANXIETY ABOUT

01:39PM 11   WHAT THEY WERE GOING TO FIND AND WHAT THEY WERE GOING TO DO.

01:39PM 12        THE COURT:  THANK YOU.  SO THIS WOULD COME IN AS A

01:39PM 13   FOUNDATIONAL, THERE WOULD BE EVIDENCE OF THIS INSPECTION, THIS

01:40PM 14   FDA 2015 INSPECTION, AND THEN YOU SEEK TO GET IN MS. HOLMES'S

01:40PM 15   AND OTHERS' REACTIONS TO IT, ON DAY ONE AT HOUR TWO THIS IS

01:40PM 16   WHAT WAS SAID BY HER, THAT COMES IN AS AN ADMISSION OR FOR SOME

01:40PM 17   OTHER REASON?

01:40PM 18        MR. LEACH:  YES.

01:40PM 19        THE COURT:  AND THEN THE CONDUCT WAS THIS, AND THEN

01:40PM 20   THIS, AND THIS, AND THIS?

01:40PM 21        MR. LEACH:  YES.

01:40PM 22        THE COURT:  WITHOUT NECESSARILY -- I'M NOT ASKING

01:40PM 23   YOU TO CONCEDE WHETHER OR NOT YOU'LL WANT THE DOCUMENT IN, BUT

01:40PM 24   IT SOUNDS LIKE IT'S REALLY THE CONDUCT OF THE PARTIES IN

01:40PM 25   RELATION TO THE INSPECTION THAT IS TELLING.

01:40PM 1      MR. LEACH:  YES, YOUR HONOR.

01:40PM 2      NOW, I AM WORRIED ABOUT IF FOR WHATEVER REASON THE FORM

01:40PM 3  483 IS NOT PERMITTED, I AM WORRIED ABOUT THE MISPERCEPTION

01:40PM 4  ABOUT THE RELATIONSHIPS BETWEEN THE FDA AND THERANOS WERE

01:40PM 5  WONDERFUL AND HAPPY AND EVERYTHING WAS FINE.  SHE DOES MAKE

01:41PM 6  SOME STATEMENTS ABOUT THE FDA AFTERWARDS.

01:41PM 7      BUT THE CRUX OF THE GOVERNMENT'S RELEVANCE AND 403

01:41PM 8  ARGUMENTS ARE HER REACTION TO THIS INSPECTION IS DEEPLY

01:41PM 9  RELEVANT.  A SWEEPING ORDER THAT EVERYTHING IS OUT IS NOT

01:41PM 10  APPROPRIATE.  I WOULD URGE THE COURT TO WAIT TO SEE IF WE

01:41PM 11  ACTUALLY OFFER THE 483 AS OPPOSED TO THE OTHER DOCUMENTS.

01:41PM 12      BUT THE SWEEPING ORDER THAT THEY'RE ASKING FOR IS JUST NOT

01:41PM 13  WARRANTED.

01:41PM 14      THE COURT:  SO I ASKED MR. LOOBY A QUESTION ABOUT

01:41PM 15  THE TIMING OF THIS INSPECTION AND WHETHER IT WAS A REQUEST OR A

01:41PM 16  VOLUNTARY.  AND I THINK HE SAID NO, IT WAS NOT.  I THINK THAT'S

01:41PM 17  WHAT HE SAID.

01:41PM 18      I WAS CURIOUS, IT LOOKS LIKE DIDN'T THERANOS, AND

01:41PM 19  MR. LOOBY WILL SHARE HIS OPINION, DIDN'T THEY SEEK APPROVAL

01:41PM 20  FROM THE FDA IN 2013 AND THEN THERE WAS -- BETWEEN 2013 AND

01:41PM 21  2015 OBVIOUSLY THERE WERE, I PRESUME, SOME CONVERSATIONS, AND

01:42PM 22  THEN ULTIMATELY UNANNOUNCED THE FDA SHOWS UP TO DO THE

01:42PM 23  INSPECTION FOR THAT REQUEST I SUPPOSE FOR CERTIFICATION.

01:42PM 24      IS THAT THE EVENT HERE?

01:42PM 25      MR. LEACH:  THAT IS LARGELY CORRECT, YOUR HONOR.

01:42PM 1      I -- THAT IS CORRECT.

01:42PM 2              THE COURT:  FEEL FREE TO CORRECT ME.

01:42PM 3              MR. LEACH:  WELL, I'M TRYING TO THINK IF THERE'S A

01:42PM 4      NUANCE TO IT THAT I DISAGREE WITH AND OFF THE FLY I DON'T.

01:42PM 5          THERE WAS DIALOGUE BETWEEN THERANOS AND THE FDA THROUGHOUT

01:42PM 6      2013 AND 2014.

01:42PM 7          THE 2015 INSPECTION IS UNANNOUNCED.  THEY SHOW UP ON

01:42PM 8      THERANOS'S DOOR.  I CAN'T SAY SIMPLY THROUGH LACK OF

01:42PM 9      PREPARATION, YOU KNOW, EXACTLY WHO WITHIN THE FDA MADE THE

01:42PM 10     DECISION TO SHOW UP THERE, BUT IT WAS UNANNOUNCED, IT WAS --

01:42PM 11     THEY DIDN'T TELL -- THE FDA DIDN'T TELL THERANOS THEY WERE

01:43PM 12     COMING.

01:43PM 13         WE DID SEE FROM THE DOCUMENT MR. LOOBY JUST SHOWED, THIS

01:43PM 14     IS EXHIBIT 82 AT 6, THAT PART OF THE REASON THE FDA WAS THERE

01:43PM 15     WAS BECAUSE PRE-SUBMISSIONS THAT THERANOS HAD SUBMITTED RAISED

01:43PM 16     SERIOUS CONCERNS ABOUT THE SAFETY AND THE EFFECTIVENESS OF THE

01:43PM 17     CTN DEVICES BECAUSE PRELIMINARY DATA REVIEWED BY THE FDA

01:43PM 18     DEMONSTRATE THAT THE RESULTS OF SAMPLES COLLECTED AND STORED IN

01:43PM 19     THE NANOTAINER WERE MUCH LESS ACCURATE.

01:43PM 20         SO I ANTICIPATE THERE WOULD BE SOME TESTIMONY OR REASONS

01:43PM 21     WHY THE FDA SHOWED UP.  BUT IT WAS NOT, IT WAS NOT A -- IT WAS

01:43PM 22     COMPLETELY UNANNOUNCED.  THEY WERE THERE IN BOTH LOCATIONS.

01:43PM 23             THE COURT:  WAS IT -- MAYBE IT'S NOT IMPORTANT.  I'M

01:43PM 24     JUST CURIOUS OF THE TIMELINE OF THIS.

01:43PM 25         WAS THEIR SHOWING UP THERE, IT SOUNDS LIKE IT WAS

01:43PM 1    CONNECTED TO THE ORIGINAL REQUEST TO APPROVE OUR DEVICE.

01:44PM 2             MR. LEACH:  I GUESS THAT'S A FAIR INFERENCE,

01:44PM 3    YOUR HONOR.

01:44PM 4             THE COURT:  AS OPPOSED TO JUST AN UNANNOUNCED

01:44PM 5    SPOT-CHECK.  WHAT ARE YOU DOING HERE?  WE'VE NEVER SEEN YOU

01:44PM 6    BEFORE.  BUT THERE WAS SOME COMMUNICATION.

01:44PM 7         AND I GUESS, AND I DON'T KNOW IF THIS IS ACCURATE OR NOT,

01:44PM 8    BUT IS THAT -- MAYBE THIS MISPHRASES IT, BUT WAS THAT A

01:44PM 9    JUSTIFICATION FOR THE FDA BEING ON THE PROPERTY AT THAT TIME?

01:44PM 10            MR. LEACH:  I THINK THAT'S A FAIR CHARACTERIZATION,

01:44PM 11   YOUR HONOR.  I HAVEN'T REVIEWED THE FDA WITNESS STATEMENTS TO

01:44PM 12   ANSWER THAT WITH A LEVEL OF DEFINITIVENESS FOR YOUR HONOR, BUT

01:44PM 13   THERE HAD BEEN SOME ENGAGEMENT BETWEEN THE FDA.  THERE WERE

01:44PM 14   SOME 510(K) SUBMISSIONS.

01:44PM 15        AND THE DOCUMENT WE JUST LOOKED AT REFLECTS THAT SOME OF

01:44PM 16   THE REASONS FOR THE EXAM WAS ANXIETY OVER THAT DATA.

01:44PM 17            THE COURT:  FROM MS. HOLMES AND HER TEAM?

01:44PM 18            MR. LEACH:  NO, FROM THE FDA.

01:44PM 19            THE COURT:  FROM THE FDA.  I SEE.

01:44PM 20        SO I GUESS YOU WOULDN'T CALL THEM INVITEES, BUT THEY WERE

01:44PM 21   THERE BECAUSE THERE WAS AN APPLICATION MADE FOR APPROVAL.

01:45PM 22            MR. LEACH:  THERE WERE SOME APPLICATIONS FOR

01:45PM 23   APPROVAL.  I THINK THE FDA'S CONCERN WAS THAT THEY WERE USING

01:45PM 24   THE NANOTAINER IN A WAY THAT WASN'T CONSISTENT WITH THEIR VIEW

01:45PM 25   OF THE LDT FRAMEWORK.  SO IT WAS A CONCERN THAT THERANOS WAS

01:45PM 1    DOING SOMETHING WITHOUT APPROVAL.

01:45PM 2         BUT THERE CERTAINLY HAD BEEN SUBMISSIONS FOR APPROVAL BY

01:45PM 3    THERANOS TO CERTAIN ASPECTS OF THE TECHNOLOGY BEFORE.

01:45PM 4             THE COURT:  OKAY.  WHAT ABOUT MR. LOOBY TOLD US THAT

01:45PM 5    ALL OF THIS OCCURRED AFTER THE LAST ROUND OF INVESTOR --

01:45PM 6             MR. LEACH:  I THINK THAT'S A RED HERRING,

01:45PM 7    YOUR HONOR.

01:45PM 8         I THINK STATEMENTS -- A DEFENDANT CAN MAKE STATEMENTS.

01:45PM 9    FIRST OF ALL, THE SCHEME ALLEGED IN THE INDICTMENT ON THE

01:45PM 10   INVESTOR COUNT GOES THROUGH 2015.  SO THIS IS DURING THE TIME

01:45PM 11   PERIOD OF THE CONSPIRACY.

01:46PM 12        THE LAST ACTUAL MONEY THAT CAME IN THE DOOR WAS AT SOME

01:46PM 13   POINT EARLIER IN 2015, BUT WE'VE PRESENTED SOME EVIDENCE THAT

01:46PM 14   THEY WERE PURSUING PARTNERSHIPS THAT AT ONE POINT HAD AN EQUITY

01:46PM 15   COMPONENT LATE INTO 2015.

01:46PM 16        I DON'T THINK THERE WAS A MOMENT WHERE MS. HOLMES SAID I'M

01:46PM 17   DONE, DON'T NEED TO RAISE ANY MORE MONEY.  SO I DON'T THINK

01:46PM 18   IT'S AS CLEAN OF A BREAK AS THEY SUGGEST IT IS.

01:46PM 19        BUT EVEN IF IT WAS AFTER THE FACT, YOUR HONOR, A, IT'S

01:46PM 20   CLOSE IN TIME; B, A DEFENDANT CAN MAKE STATEMENTS AFTER THE

01:46PM 21   SCHEME IS COMPLETED THAT REFLECTS ANXIETY ABOUT GETTING CAUGHT

01:46PM 22   OR AN INSPECTOR COMING IN AND SEEING THEIR TECHNOLOGY IS NOT

01:46PM 23   WHAT IT IS.

01:46PM 24        IT'S HER REACTION TO THIS FDA INSPECTION THAT, YOU KNOW,

01:46PM 25   WHENEVER IT IS, AND IT IS VERY CLOSE IN TIME.  IT'S WHILE

01:46PM 1    MR. CARREYROU IS DOING SOME OF HIS RESEARCH AND IS DRAFTING THE

01:46PM 2    ARTICLE.

01:46PM 3        SO I DON'T THINK THERE IS SOME TEMPORAL CONNECTION THAT

01:47PM 4    MAKES THIS IRRELEVANT.

01:47PM 5            THE COURT:  YOU KNOW, I SHOULD HAVE -- I DON'T MEAN

01:47PM 6    TO GO BACK TO OUR CONVERSATION BEFORE THE LUNCH BREAK BUT 572,

01:47PM 7    THIS COULD COME IN CONTEXT THERE AS WELL AS TO STATEMENTS

01:47PM 8    THAT -- I THINK THOSE WERE IN 2016.  AND ARE THOSE OUTSIDE OF

01:47PM 9    THE CHARGING PERIOD SUCH THAT THEY LACK RELEVANCE?

01:47PM 10           MR. LEACH:  NOT FOR THE PATIENT COUNT, YOUR HONOR,

01:47PM 11   NO.  I DON'T HAVE THE INDICTMENT IN FRONT OF ME BUT SOME OF THE

01:47PM 12   ALLEGATIONS -- THE CONSPIRACY CONTINUES INTO 2016.

01:47PM 13       AGAIN, I'M NOT AWARE OF A RULE THAT SAYS ONLY STATEMENTS

01:47PM 14   DURING A SCHEME TO DEFRAUD ARE RELEVANT.  IF MIRACULOUSLY

01:47PM 15   MS. HOLMES WERE TO MAKE A STATEMENT TODAY RELATING TO HER

01:47PM 16   INTENT, WE WOULDN'T CERTAINLY SAY THAT HER TESTIMONY BEFORE THE

01:47PM 17   S.E.C. WAS IRRELEVANT BECAUSE IT'S THREE YEARS LATER.

01:47PM 18       IT'S CLOSE IN TIME, AND IT'S WITHIN THE CONSPIRACY ALLEGED

01:47PM 19   IN THE PATIENT COUNT, AND IT'S SO CONNECTED TO EVENTS THAT

01:47PM 20   HAPPENED DURING THE SCHEME.  I DON'T SEE SOME TEMPORAL ISSUE

01:48PM 21   THERE WITH ITS RELEVANCE.

01:48PM 22           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:48PM 23           MR. LEACH:  THANK YOU, YOUR HONOR.

01:48PM 24           THE COURT:  MR. LEACH, MAYBE YOU WANT TO STAND UP

01:48PM 25   THERE.  I MIGHT ASK YOU TO COME BACK.

01:48PM 1          MR. LEACH:  I'M HAPPY TO DO THAT, YOUR HONOR.

01:48PM 2          MR. LOOBY:  THANK YOU, YOUR HONOR.

01:48PM 3      AND OUR ARGUMENT ISN'T THAT THERE IS LIKE A SHARP CUTOFF

01:48PM 4   DATE AFTER WHICH ALL STATEMENT, ALL EVIDENCE IN THE CASE WOULD

01:48PM 5   BE IRRELEVANT AFTER THE CLOSING OF THE LAST INVESTMENT ROUND.

01:48PM 6      WHAT WE'RE TALKING ABOUT IS THE WAY THAT THE GOVERNMENT

01:48PM 7   CHARGED THE CASE THE FDA IS GOING TO BE PART OF THE CASE.

01:48PM 8   THERE IS REPRESENTATION ABOUT THE FDA, ABOUT WHAT REQUIREMENTS

01:48PM 9   WERE APPROVED, WHAT APPROVALS OR CLEARANCES WERE REQUIRED OR

01:48PM 10  NOT.

01:48PM 11     AND AS THE INSPECTION REPORT SHOWED, AT THE TIME THAT THE

01:48PM 12  FDA WENT IN, I MEAN, THE FDA AND THERANOS WERE NO STRANGERS TO

01:48PM 13  ONE ANOTHER.  THEY HAD BEEN DEALING EXTENSIVELY FOR MANY YEARS.

01:48PM 14  THERE HAVE BEEN MANY SUBMISSIONS ABOUT GETTING CLEARANCE FOR

01:49PM 15  ITS TESTS.  THAT'S ALL GOING TO BE PART OF THE CASE

01:49PM 16  ESSENTIALLY.  THAT'S PART OF THE -- IT ALL BEARS ON THE

01:49PM 17  INDICTMENT ALLEGATION.

01:49PM 18     WHAT THE INDICTMENT ALLEGATION DOESN'T RELATE TO IS THE

01:49PM 19  INSPECTION.  AND WHAT I HEARD FROM MR. LEACH IS THAT THE

01:49PM 20  INSPECTION IS BASICALLY BEING BROUGHT IN ON THE BACK OF A

01:49PM 21  HANDFUL OF TEXT MESSAGES SENT DURING THE INSPECTION.  AND SO I

01:49PM 22  THINK IF YOU LOOK AT THE GOVERNMENT'S OPPOSITION AT PAGE 674,

01:49PM 23  DOCUMENT 674 ON THE ECF, AND PAGE 5 TO 7, THESE ARE THE TEXT

01:49PM 24  MESSAGES THAT ARE NOW GOING TO BRING IN AN ENTIRE INSPECTION

01:49PM 25  AND FORM 483'S, AND MAYBE SOME NARRATIVE ACCOUNTS FROM

01:49PM  1    INSPECTORS, WE MIGHT GET A NEW GOVERNMENT WITNESS APPARENTLY

01:49PM  2    WHO HAS NOT BEEN DISCLOSED BECAUSE THE GOVERNMENT HASN'T PUT ON

01:49PM  3    ITS WITNESS LIST A SINGLE PERSON WHO WAS PRESENT FOR THE

01:49PM  4    INSPECTION AND STILL HAS NOT DONE THAT.

01:50PM  5         SO, YOU KNOW, YOUR HONOR, WE POINTED OUT IN OUR REPLY WHY

01:50PM  6    SOME OF THESE AND KIND OF CHERRY PICKED TEXT MESSAGES ARE BEING

01:50PM  7    TAKEN OUT OF CONTEXT.

01:50PM  8         AND, YOU KNOW, EVEN IF YOU WERE TO ACCEPT THE GOVERNMENT'S

01:50PM  9    READING, I DON'T THINK THAT THE FDA INSPECTION EVIDENCE AND THE

01:50PM 10    FACT OF THE INSPECTION OR THE FACT THAT THEY WERE OBSERVATIONS

01:50PM 11    THAT THERANOS WAS FOUND TO BE NONCOMPLIANT WITH THE FOOD, DRUG,

01:50PM 12    AND COSMETIC APP, THAT THOSE ARE NECESSARY TO PUT ANY OF THIS

01:50PM 13    IN CONTEXT.  THIS SEEMS TO ME LIKE IT'S REALLY KIND OF PUTTING

01:50PM 14    THE HORSE BEFORE THE CART OR THE CART BEFORE THE HORSE.  I AM

01:50PM 15    SORRY.

01:50PM 16              THE COURT:  IT'S BEEN A LONG TIME SINCE WE'VE HAD

01:50PM 17    THOSE.

01:50PM 18              MR. LOOBY:  YEAH.

01:50PM 19              THE COURT:  WHAT I WAS CURIOUS ABOUT, WHAT MR. LEACH

01:50PM 20    AND I PROBED A LITTLE BIT ABOUT IS THAT YOU HEARD MR. LOOBY

01:50PM 21    TALK VERY ARTICULATELY ABOUT THIS FORM AND THE PROBLEMS WITH

01:50PM 22    THIS FORM AND THE ISSUES WITH THE FORM AND THE ISSUES PRESENTED

01:51PM 23    IN THE FORM.  AND WHAT IS IT THAT YOU WANT IN?

01:51PM 24         IT SOUNDS LIKE WHAT THE GOVERNMENT SEEKS TO GAIN IS REALLY

01:51PM 25    THE CONDUCT OF THE PARTIES ONCE THE INSPECTORS ARE EITHER ON

01:51PM 1    SITE OR THEY HAVE GIVEN NOTICE THAT THEY'RE ON SITE AND WHAT

01:51PM 2    THEY'RE LOOKING FOR AND AS YOU REFERENCE THIS EXCHANGE OF TEXT

01:51PM 3    MESSAGES AND THE PARTIES, THE STATEMENTS.

01:51PM 4        IT'S NOT SO MUCH THE ACTUAL FORM, ALTHOUGH I'M SURE YOU

01:51PM 5    WOULD LIKE IT TO COME IN, BUT IT'S THE CONDUCT OF THE PARTIES

01:51PM 6    IN REGARDS TO -- THE FDA IS HERE AND WE THINK THAT THEY'RE

01:51PM 7    LOOKING AROUND AT OUR MACHINES.  WHAT SHOULD WE DO?  CIRCLE THE

01:51PM 8    WAGONS.  DO THIS, DO THAT.  THAT SEEMS TO BE -- IS THAT A

01:51PM 9    FAIR --

01:51PM 10               MR. LEACH:  IT'S A VERY FAIR SUMMARY, YOUR HONOR.

01:51PM 11               MR. LOOBY:  SO, YOUR HONOR, I THINK THE RELEVANCE OF

01:51PM 12   THAT TYPE OF EVIDENCE ACTUALLY -- IT RELIES ON THE FACT THAT

01:51PM 13   THE FDA INSPECTION, LIKE, HAS SOMETHING TO DO WITH THE

01:52PM 14   PERFORMANCE OF THE TEST AND THE RESULTS COMING OUT OF THE LAB.

01:52PM 15               THE COURT:  SO I LOOK AT IT AS -- AND HELP ME WITH

01:52PM 16   THIS.  THAT IS WHY I ASKED THE QUESTIONS ABOUT INITIALLY THAT

01:52PM 17   IT SEEMED LIKE IN THE COURSE OF BUSINESS THERANOS WAS SEEKING

01:52PM 18   TO GET LICENSURE OR APPROVAL OF THEIR MACHINE AND PART OF THAT

01:52PM 19   PROCESS IS NOW WE PROBABLY ARE ALL FAMILIAR WITH FDA APPROVAL.

01:52PM 20   WE HAD TO WAIT ANXIOUSLY WHILE THE FDA APPROVES CERTAIN

01:52PM 21   VACCINES THAT ALL OF US COULD GET.

01:52PM 22       SO I THINK THE PUBLIC HAS SOME GENERAL IDEA AT A HIGH

01:52PM 23   LEVEL ABOUT WHAT FDA APPROVAL IS.  BUT IT SEEMS LIKE THAT'S

01:52PM 24   WHAT THIS WAS.  THERANOS WANTED THIS TO MARKET WHEN ALBEIT IT

01:52PM 25   TOOK TWO YEARS TO GET THERE.  IT IS THE GOVERNMENT AFTER ALL,

01:52PM 1    BUT IT TOOK A WHILE TO PROCESS ALL OF THAT.

01:52PM 2        BUT THEN THIS VISIT WAS OUT OF THE ORDINARY, I SUPPOSE, IN

01:52PM 3    THAT IT WAS UNANNOUNCED, BUT THEY CERTAINLY, AS PART OF THE

01:52PM 4    PROCESS, COULD BE THERE AND DO THIS AND DO THIS INSPECTION.

01:53PM 5        THE REASONS WERE, I THINK MR. LEACH SAYS, CONCERNS THAT

01:53PM 6    THEY HAD FOR WHATEVER THE SOURCE IS OF THAT AND WHETHER THAT

01:53PM 7    COMES IN AND HOW THAT COMES IN PERHAPS IS A DIFFERENT FUNCTION.

01:53PM 8        BUT THE GENESIS OF THEM BEING THERE IS TO LOOK AND INSPECT

01:53PM 9    THESE PARTICULAR MACHINES.  SHOULD THAT COME IN WITH SOME

01:53PM 10   SANITIZATION?  I HEAR WHAT YOU'RE SAYING.  DON'T GET THE REPORT

01:53PM 11   IN BECAUSE IT SAYS ALL OF THIS BECAUSE WE DON'T WANT TO BURDEN

01:53PM 12   THE JURY WITH HAVING ANOTHER EXPERT TELL THEM WHAT THIS PAPER

01:53PM 13   SAYS.  MAYBE NOT.  BUT JUST THAT GENERAL CONCEPT.

01:53PM 14           MR. LOOBY:  SO YOUR HONOR IS RIGHT THAT THERANOS HAD

01:53PM 15   MADE SEVERAL SUBMISSIONS, INCLUDING SUBMISSIONS WITH DATA ON

01:53PM 16   ITS ANALYZERS, ITS TESTS, AND INCLUDING ON TESTS RUN ON THE

01:53PM 17   CTN'S TO THE FDA OVER THE COURSE OF SEVERAL YEARS.

01:53PM 18       SO THE FDA'S INSPECTION OF THERANOS DIDN'T LOOK AT THOSE

01:54PM 19   RECORDS.  THOSE ARE ACTUALLY KIND OF SEPARATE, AND, IN FACT,

01:54PM 20   CONTINUED AFTER THERANOS SUBMITTED A NEW 510(K) WITH NEW DATA

01:54PM 21   TO GET ITS CTN'S CLEARED, KIND OF IN THE MIDDLE OF WHILE THE

01:54PM 22   RECORD OF THE INSPECTION IS STILL GOING.

01:54PM 23       AND THERANOS CONTINUED TO ENGAGE WITH THE FDA ABOUT

01:54PM 24   GETTING EMERGENCY USE APPROVAL FOR ZIKA, Z-I-K-A, ASSAY IN

01:54PM 25   2016.

01:54PM 1      SO WHAT THE FDA INSPECTION WAS, WAS TO GO IN AND MAKE A

01:54PM 2   DETERMINATION THAT THE CTN'S ARE CLASS 2, AND SAY IF YOU'RE

01:54PM 3   DOING THAT, YOU NEED, LIKE -- YOU THOUGHT THAT YOU WERE AN LDT,

01:54PM 4   AND THAT'S WHAT THE INDICTMENT ALLEGATION IS ABOUT, BUT IN THE

01:54PM 5   PAST.

01:54PM 6      NOW WE'RE TELLING YOU YOU'VE GOT TO DO THESE QSR'S, YOU

01:54PM 7   DON'T HAVE YOUR DUCKS IN A ROW, AND WE'RE GOING TO WRITE YOU

01:54PM 8   UP.

01:54PM 9      BUT IT'S NOT ABOUT THAT THEY CAME IN AND THEY SAID, OH,

01:55PM 10  OH, WE'RE GOING TO REVIEW YOUR CLINICAL LAB TEST RESULTS.  THEY

01:55PM 11  DIDN'T TO THAT.  THAT'S A SEPARATE ORGANIZATION.  AND THEY

01:55PM 12  ACTUALLY DIDN'T EVEN LOOK AT SOME OF THE VALIDATION WORK THAT

01:55PM 13  THERANOS HAD DONE ON ITS TESTS USING THE CTN'S BECAUSE THOSE

01:55PM 14  DOCUMENTS ARE MAINTAINED IN THE CLIA LAB CONTEXT.  NOT OUR

01:55PM 15  JURISDICTION.

01:55PM 16     SO I DON'T THINK THERE'S QUITE A DIRECT LINE BETWEEN THE

01:55PM 17  TWO.  THE FDA IS GOING TO BE IN THE CASE BUT THIS PART OF IT

01:55PM 18  COULD BE VERY EASILY EXCISED.  IT HAS THE REAL POTENTIAL TO BE

01:55PM 19  QUITE THE SIDESHOW.

01:55PM 20     AND EVEN IF YOU TOOK AT FACE VALUE THAT THE TEXT MESSAGES

01:55PM 21  REFLECTED SOME FORM OF ANXIETY ABOUT THE FDA INSPECTION, IT

01:55PM 22  COULD BE THAT, YOU KNOW, WE HAVE BEEN GETTING ALONG WITH THE

01:55PM 23  FDA AND NOW THEY'RE HERE AND THAT -- I MEAN, THAT WOULD BE

01:55PM 24  TROUBLING.  I MEAN, WE CURRENTLY HAVE SUBMISSIONS WITH THEM ON

01:55PM 25  FILE.

01:55PM 1    THE COURT:  THERE'S A COMPLETE INNOCENT EXPLANATION

01:55PM 2    FOR ALL OF THIS.

01:55PM 3    MR. LOOBY:  CORRECT.  AND SO TO HAVE THESE KIND OF

01:56PM 4    AMBIGUOUS TEXT MESSAGES BE THE THING THAT DRAGS IN THIS ENTIRE

01:56PM 5    VIGNETTE ABOUT, YOU KNOW, ABOUT THE INSPECTION, TO ME IT JUST

01:56PM 6    SEEMS LIKE THAT JUICE IS DEFINITELY NOT WORTH THE SQUEEZE.

01:56PM 7    AND I THINK THE GOVERNMENT'S RELEVANCE THEORY FOR THESE

01:56PM 8    TEXT MESSAGES AND FOR THE ACTIONS AND RESPONSES, IT ALL KIND OF

01:56PM 9    PRESUPPOSES THAT THE FDA WAS THERE TO LIKE CRACK DOWN ON

01:56PM 10   THERANOS'S CLINICAL LABORATORY.

01:56PM 11   THE COURT:  WELL, THIS IS WHY I WAS CURIOUS ABOUT --

01:56PM 12   I USED THE WORD "INVITEE."  I'M NOT SUGGESTING THAT'S WHAT THEY

01:56PM 13   WERE.  BUT IT WAS NOT UNUSUAL FOR THE FDA TO BE ON SITE DURING

01:56PM 14   THE CERTIFICATION PROCESS I GUESS.  IT WAS UNUSUAL THAT THEY

01:56PM 15   DIDN'T CALL AND SAY THAT THEY WERE COMING, BUT --

01:56PM 16   MR. LOOBY:  SO I'M NOT SURE THAT'S EXACTLY RIGHT,

01:56PM 17   YOUR HONOR.  I THINK A LOT OF THE FDA SUBMISSIONS ARE DONE ON

01:56PM 18   THE PAPER.  THERE'S A LOT OF PAPER IN THIS CASE WHEN I LOOK AT

01:56PM 19   THEM AND ON WEBEX'S, AND THEY WERE EVEN DOING ZOOM BACK IN THE

01:57PM 20   DAY.

01:57PM 21   SO I DON'T KNOW HOW MUCH OF AN ON SITE INSPECTION IS PART

01:57PM 22   OF THE FDA APPROVAL PROCESS.  AND I DON'T THINK IT HAD BEEN UP

01:57PM 23   TO THIS POINT, AND THAT'S BECAUSE THIS INSPECTION WAS RELATED

01:57PM 24   TO THE FDA, LIKE THE MANUFACTURING DOCUMENTATION AND POLICIES,

01:57PM 25   AND NOT WITH THE, LIKE, REGULATORY APPROVAL APPLICATIONS.

01:57PM 1          THE COURT:  SO YOU HAD PINNED THIS, I THINK, EARLIER

01:57PM 2     TO WHETHER OR NOT THIS INSPECTION CONNECTED WITH THE

01:57PM 3     INDICTMENT, THAT IS, THE ABILITY OF THERANOS TO PRODUCE

01:57PM 4     MACHINES THAT WOULD PRODUCE THEIR RELIABLE RESULTS

01:57PM 5     CONSISTENTLY.  I THINK THAT'S WHAT YOU SAID EARLIER.

01:57PM 6          MR. LOOBY:  YEAH.

01:57PM 7          THE COURT:  LET ME TURN TO MR. LEACH.

01:57PM 8        IS THAT WHAT THIS IS ABOUT, MR. LEACH?

01:57PM 9          MR. LEACH:  THIS IS ABOUT INTENT, YOUR HONOR, AND

01:57PM 10    THE DEFENDANT'S BELIEF THAT HER TECHNOLOGY, THE CTN, WAS PART

01:57PM 11    OF THERANOS TECHNOLOGY, PARTICULARLY IN THE APPLICATION HERE.

01:58PM 12    IT WAS NOT CAPABLE OF PRODUCING ACCURATE AND RELIABLE RESULTS.

01:58PM 13       THE CONTEXT HERE IS CRITICAL.  JOHN CARREYROU IS TALKING

01:58PM 14    TO FORMER THERANOS EMPLOYEES ABOUT A STORY.  MS. HOLMES IS

01:58PM 15    GOING TO "THE WALL STREET JOURNAL" BEGGING THEM NOT TO PUBLISH

01:58PM 16    THIS STORY BEFORE SEPTEMBER OF 2015.  THEN IN SEPTEMBER OF 2015

01:58PM 17    THE FDA COMES KNOCKING.

01:58PM 18       WHAT IS HER REACTION TO ALL OF THIS?  IS IT COME ON IN,

01:58PM 19    LOOK AT EVERYTHING, TOTALLY FINE, NOTHING TO SEE HERE, WE'RE

01:58PM 20    CONFIDENT IN HOW OUR CTN'S WORK, EVERYTHING IS GREAT, YOU CAN

01:58PM 21    HAVE EVERYTHING YOU WANT?

01:58PM 22       IT'S THE EXACT OPPOSITE.  AND IT'S THE ANXIETY BETWEEN HER

01:58PM 23    AND HER PRIVATE COMMUNICATIONS BETWEEN HER AND HER CONSPIRATOR

01:58PM 24    ABOUT I'VE BEEN THINKING ABOUT TURNING THE CTN OFF.  WE NEED TO

01:58PM 25    DEVOTE ALL AVAILABLE RESOURCES TO MAKING THIS BETTER.  THOSE

01:58PM 1     ARE CRITICAL ADMISSIONS ABOUT ANXIETY ABOUT WHAT THE FDA MIGHT

01:58PM 2     FIND, ANXIETY ABOUT WHAT THEIR TECHNOLOGY COULD DO RIGHT AS

01:59PM 3     EVERYTHING IS COMING TO A HEAD.

01:59PM 4         SO WHETHER THIS WAS AFTER AN INVESTMENT, WHETHER THE FDA

01:59PM 5     WAS THERE JUST BECAUSE THEY WERE TAKING A RANDOM SAMPLE OF LABS

01:59PM 6     IN SILICON VALLEY AND JUST WANTED TO SAY HI DOESN'T MATTER.

01:59PM 7         WHAT MATTERS IS THE REACTION.  AND THE REACTION, AND I

01:59PM 8     SUBMIT A FAIR READING OF THESE TEXTS, AND THEY MAY HAVE A SIDE

01:59PM 9     TO THAT STORY, BUT THAT'S FODDER FOR CROSS-EXAMINATION, IS

01:59PM 10    FREAKING OUT.  WHAT DO WE DO ABOUT THIS?  AND THAT'S VERY

01:59PM 11    RELEVANT TO STATE OF MIND AND BELIEVED IN THE ACCURACY AND THE

01:59PM 12    RELIABILITY OF THERANOS TECHNOLOGY.

01:59PM 13            THE COURT:  ALL RIGHT.  MR. LOOBY.

01:59PM 14            MR. LOOBY:  YOUR HONOR, AGAIN, AND OBVIOUSLY THERE'S

01:59PM 15    A DIFFERENT WAY TO READ THESE TEXT MESSAGES, WHICH IS MAYBE WE

01:59PM 16    MIGHT TAKE THE CTN OFF AS WE MIGHT STOP USING THE CTN'S FOR OUR

01:59PM 17    LABORATORY DEVELOPED TESTS NOW THAT IT SEEMS LIKE FDA DOESN'T

01:59PM 18    AGREE WITH OUR POSITION ON THE LDT'S.  SO WHY DON'T WE WAIT?

02:00PM 19    WE HAVE AN APPLICATION PENDING OR THEY WERE ABOUT TO RESUBMIT

02:00PM 20    ONE TO GET CLEARANCE FOR THEM.  SO WHY DON'T WE DO THAT?

02:00PM 21        THE GOVERNMENT'S READING OF THESE ARE VERY CRIBBED, AND,

02:00PM 22    YOU KNOW, FOR THIS TO BE KIND OF THE WHOLE THING THAT JUSTIFIES

02:00PM 23    BRINGING THE FDA INSPECTION EVIDENCE, AND THEN TO SAY THAT A

02:00PM 24    LEGAL OBJECTIONS FROM THERANOS'S COUNSEL ARE, YOU KNOW, SOMEHOW

02:00PM 25    TERRIBLE INTENT EVIDENCE, TO ME IT'S QUITE THE STRETCH AND

02:00PM 1    WE'RE REALLY OUT ON A THIN READ OF RELEVANCE HERE.

02:00PM 2          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU BOTH VERY

02:00PM 3    MUCH.  THANK YOU.

02:00PM 4          MR. LEACH:  THANK YOU, YOUR HONOR.

02:00PM 5          THE COURT:  THIS MOTION IS UNDER SUBMISSION.  THANK

02:00PM 6    YOU.

02:00PM 7       I THINK 575 IS NEXT.  IS THAT YOU?

02:01PM 8          MR. LOOBY:  YES.

02:01PM 9          THE COURT:  YOU'RE GETTING YOUR BILLABLES IN TODAY.

02:01PM 10         MR. LOOBY:  YES.  I'M THE REGULATORY GUY.

02:01PM 11         THE COURT:  OKAY.

02:01PM 12         MR. LOOBY:  SO THIS MOTION IS AT ECF 575 IT DEALS

02:01PM 13   WITH THREE DISCRETE SETS OF EVIDENCE THAT SHARE IN COMMON THEIR

02:01PM 14   INCLUSION ON THE GOVERNMENT'S 404(B) DISCLOSURE AS INVOLVING

02:01PM 15   SOME SORT OF DECEIT UPON A GOVERNMENT REGULATORY AGENCY.

02:01PM 16      AT THE THRESHOLD OF THIS, I WOULD JUST SAY THAT THE

02:01PM 17   GOVERNMENT HAS KIND OF WALKED -- TRIED TO WALK BACK FROM THE

02:01PM 18   404(B) CATEGORIZATION OF THIS IN THIS OPPOSITION AND IN MANY OF

02:01PM 19   ITS OPPOSITIONS.

02:01PM 20      I'LL JUST NOTE AT THE OUTSET, THE INDICTMENT DOES NOT

02:01PM 21   ALLEGE THAT THERE WAS ANY DECEIT UPON A GOVERNMENT AGENCY.

02:01PM 22   WE'VE GONE THROUGH BRIEFING IN THE MOTION TO DISMISS STAGE

02:01PM 23   ABOUT WHO THE VICTIMS ARE IN THIS CASE, THEY'RE NOT CDPH,

02:01PM 24   THEY'RE NOT FDA, THEY'RE NOT CMS.  SO THIS IS PROPERLY

02:01PM 25   CONSIDERED 404(B) EVIDENCE, AND THE GOVERNMENT SHOULD HAVE TO

02:01PM 1    MEET 404(B) STANDARDS.

02:02PM 2         SO I'LL BE ADDRESSING THE EVIDENCE THROUGH THAT FRAMEWORK,

02:02PM 3    AND I CAN TAKE QUESTIONS FROM YOUR HONOR IN A DIFFERENT

02:02PM 4    FRAMEWORK, TOO.

02:02PM 5         SO HERE ARE THE THREE BUCKETS OF EVIDENCE THAT WE'RE GOING

02:02PM 6    TO BE TALKING ABOUT TO TODAY:  THERE'S EVIDENCE RELATED TO A

02:02PM 7    DECEMBER 2013 INSPECTION OF THERANOS CLIA LABORATORY BY A

02:02PM 8    CALIFORNIA STATE AGENCY.  THAT'S KIND OF AN AGENT OF CMS;

02:02PM 9         THERE'S A LETTER PROVIDED BY MR. BALWANI TO CMS DURING

02:02PM 10   THE 2015 INSPECTION THAT WE'VE BEEN TALKING ABOUT; AND,

02:02PM 11        FINALLY, THERE'S FACTS SURROUNDING ONE OF THERANOS'S

02:02PM 12   LABORATORY DIRECTORS, DR. SUNIL DHAWAN.

02:02PM 13             THE COURT:  D-H-A-W-A-N.

02:02PM 14             MR. LOOBY:  THAT'S CORRECT, YOUR HONOR.

02:02PM 15        I'LL PROCEED IN THAT ORDER, BUT I CAN CERTAINLY ENTERTAIN

02:02PM 16   QUESTIONS OUT OF THAT ORDER IF THAT'S YOUR HONOR'S PREFERENCE.

02:02PM 17             THE COURT:  THAT'S FINE.

02:02PM 18             MR. LOOBY:  SO JUST A LITTLE BACKGROUND ON THE 2013

02:02PM 19   INSPECTION.  SO AS I SAID, THE CALIFORNIA DEPARTMENT OF PUBLIC

02:02PM 20   HEALTH LAB FIELD SERVICES DIVISION, THEY ARE CMS'S AGENTS FOR

02:03PM 21   KIND OF ROUTINE RECERTIFICATION SURVEYS OF CLIA LABS HERE IN

02:03PM 22   CALIFORNIA.  THESE GENERALLY OCCUR EVERY TWO YEARS.  THERANOS'S

02:03PM 23   TIME FOR A RENEWAL INSPECTION CAME UP IN 2013.  THE CDPH

02:03PM 24   INSPECTION FOLLOWS THE SAME CONTOURS AS THE CMS INSPECTION THAT

02:03PM 25   WE TALKED ABOUT EARLIER.

02:03PM   1        THE KEY IS THAT THE INSPECTOR FOR CDPH, LIKE FOR CMS,

02:03PM   2   THEY'RE IN CHARGE OF WHAT DOCUMENTS THEY WANT TO LOOK AT, THEY

02:03PM   3   ARE IN CHARGE OF DETERMINING, YOU KNOW, HOW MUCH EVIDENCE THEY

02:03PM   4   WANT TO REVIEW TO GET COMFORTABLE THAT THE LAB IS EITHER

02:03PM   5   COMPLIANT OR TO GET COMFORTABLE THAT THEY HAVE ENOUGH

02:03PM   6   INFORMATION TO MAKE A DEFICIENCY CLAIM.

02:03PM   7        SO THE GOVERNMENT'S PROPOSED EVIDENCE HERE, IT RELIES ON

02:03PM   8   CONTORTING A FEW EMAILS OUT OF CONTEXT TO SUGGEST THAT

02:03PM   9   MS. HOLMES WAS INVOLVED IN STEERING THE INSPECTOR, CDPH

02:03PM  10   INSPECTOR, AWAY FROM AN AREA OF THE LAB WHERE THE THREE SERIES

02:04PM  11   TSPU WAS LOCATED.

02:04PM  12        SO AS AN INITIAL MATTER, THE GOVERNMENT HAS NOT

02:04PM  13   ESTABLISHED THAT LIKE NOT LEADING AN INSPECTOR TO A CERTAIN

02:04PM  14   AREA OF THE LAB DURING AN INSPECTION IS INHERENTLY DECEPTIVE.

02:04PM  15        AS WE DISCUSSED EARLIER, THAT'S NOT HOW LAB INSPECTIONS

02:04PM  16   WORK.  AND THE GOVERNMENT LARGELY IGNORES THAT POINT IN ITS

02:04PM  17   OPPOSITION, BUT I THINK IT'S IMPORTANT TO KEEP IN MIND.

02:04PM  18        THE SECOND PROBLEM WITH THE THEORY, I MEAN MAYBE THIS IS

02:04PM  19   THE FIRST PROBLEM WITH THE THEORY, BUT THAT IT'S CONTRADICTED

02:04PM  20   BY ALL AVAILABLE EVIDENCE AS WELL AS COMMON SENSE.

02:04PM  21        SO HERE'S WHAT WE KNOW ABOUT WHAT HAPPENED.  SO IN

02:04PM  22   PREPARING FOR THE INSPECTION THERANOS MADE SURE THAT IT HAD ITS

02:04PM  23   LDT DATA AND DOCUMENTS READY FOR INSPECTION.

02:04PM  24        AND WE KNOW THIS BECAUSE IT'S IN THE GOVERNMENT'S OWN

02:04PM  25   EXHIBIT 28, AND THAT'S AT ECF 680-14.  THAT IS AN EMAIL ABOUT

02:05PM 1   WHAT DO WE NEED TO GET OUR DUCKS IN A ROW SO THAT WE'RE READY

02:05PM 2   FOR INSPECTION BECAUSE THESE ARE SCHEDULED INSPECTIONS.

02:05PM 3       SO WE ALSO KNOW THAT THIS LDT DATA WAS IN FACT SHARED WITH

02:05PM 4   THE INSPECTOR UPON HER REQUEST.  THIS COMES FROM DEFENSE

02:05PM 5   EXHIBIT 77 AT ECF 772-3.  AND THESE ARE THERANOS'S EMPLOYEE,

02:05PM 6   DANIEL YOUNG'S, NOTES OF THE AUDIT.  AND THEY DISCUSS KIND OF

02:05PM 7   WHAT THEY WENT OVER WITH THE INSPECTOR, AND IT INCLUDES A

02:05PM 8   DISCLOSURE THAT TESTS ARE BEING RUN ON THE TSPU, THAT TESTS ARE

02:05PM 9   BEING RUN ON BLOOD SAMPLES COLLECTED BY THE CTN'S, THAT THESE

02:05PM 10  ARE BEING OFFERED AS LABORATORY DEVELOPED TESTS, AND THAT THEY

02:05PM 11  ARE BEING VALIDATED AS LABORATORY DEVELOPED TESTS AND UPON THE

02:05PM 12  INSPECTOR'S REQUEST, WHICH SHE RANDOMLY SELECTED AN LDT

02:05PM 13  VALIDATION REPORT, WHICH WAS PROVIDED TO HER.  SO THAT'S ALL IN

02:05PM 14  THAT EXHIBIT.

02:05PM 15      SO WE ALSO KNOW, AND THIS IS THE THIRD PIECE OF EVIDENCE,

02:06PM 16  WE KNOW THAT MONTHS PRIOR TO THIS INSPECTION, THERANOS HAD

02:06PM 17  ALREADY DISCLOSED TO CMS, WHICH SITS ON TOP OF THIS REGULATORY

02:06PM 18  SCHEME, THAT IT WAS USING THE TSPU IN ITS LAB TO TEST PATIENT

02:06PM 19  SAMPLES.

02:06PM 20      THIS COMES FROM DEFENSE EXHIBIT 78 AT ECF 722-4.  AND

02:06PM 21  THESE ARE MINUTES OF A NOVEMBER 4TH, 2013 MEETING OF WHICH

02:06PM 22  MEMBERS OF THE FDA AND THE CMS WERE PRESENT DURING WHICH

02:06PM 23  THERANOS'S CURRENT AND FUTURE BUSINESS MODELS WERE DISCUSSED.

02:06PM 24      SO THAT'S ALL OF THE EVIDENCE THAT REALLY SHOULD KIND OF

02:06PM 25  END THE MATTER HEAR.

02:06PM 1      BUT THERE'S A THIRD PROBLEM WITH THIS THEORY, AND THAT IS

02:06PM 2  THERE'S NO CONNECTION BETWEEN THIS EMAIL, THE DANIEL YOUNG

02:06PM 3  EMAIL, TO MADAM ROSENDORFF WHICH SAYS SOMETHING ALONG THE LINES

02:06PM 4  OF LET'S NOT REMIND HER ABOUT DOWNSTAIRS AT THIS POINT.

02:07PM 5  THERE'S NO CONNECTION BETWEEN THAT EMAIL AND MS. HOLMES.

02:07PM 6      SO THE GOVERNMENT CITES A FEW EMAILS FROM MS. HOLMES OR ON

02:07PM 7  WHICH SHE'S COPIED DISCUSSING THE PREPARATIONS FOR THE AUDIT

02:07PM 8  FOR THE PROPOSITION THAT SHE IS GENERALLY INFORMED THAT THE

02:07PM 9  AUDIT WAS HAPPENING AND INTERESTED THAT PEOPLE IN THE

02:07PM 10  LABORATORY WERE PREPARING FOR IT.

02:07PM 11      AND THEY ARGUE ESSENTIALLY, WELL, IT STANDS TO REASON THAT

02:07PM 12  SHE'S INVOLVED IN THE AUDIT PREPARATION, AND SO SHE MUST BE

02:07PM 13  BEHIND THIS INSTRUCTION FROM YOUNG TO ROSENDORFF.  THIS MUST BE

02:07PM 14  HIM COMMUNICATING A COMMAND FROM HER.

02:07PM 15      SO THAT'S -- TO THE DEFENSE'S KNOWLEDGE, YOUNG NOR

02:07PM 16  ROSENDORFF WILL TESTIFY TO THIS.  THEY CERTAINLY HAVEN'T SAID

02:07PM 17  SO IN THEIR PRIOR STATEMENTS.

02:07PM 18      SO WHERE DOES THAT LEAVE US?  IT LEAVES US IN A LAND OF

02:07PM 19  SPECULATION.  WE'RE SPECULATING ABOUT AMBIGUOUS EMAILS ABOUT

02:07PM 20  THE PATH THE REGULATOR WILL TAKE, WE'RE SPECULATING THAT THAT

02:07PM 21  MS. HOLMES WAS SOMEHOW INVOLVED, WE'RE SPECULATING THAT THIS

02:08PM 22  WAS MOTIVATED BY A DESIRE TO HIDE THINGS THAT WERE ACTUALLY

02:08PM 23  BEING DISCLOSED.

02:08PM 24      SO THE COURT SHOULD NIP THIS EXERCISE AND SPECULATION IN

02:08PM 25  THE BUD, AND THAT'S THE THRUST OF OUR ARGUMENT THERE.  AS WE

136

02:08PM   1    POINTED OUT IN OUR REPLY BRIEF, THERE COMES A POINT WHERE YOU

02:08PM   2    STACK SO MANY CONNECTIONS ON TOP OF EACH OTHER THAT THE BONDS

02:08PM   3    BREAK, AND THE EVIDENCE IS NO LONGER REALLY RELEVANT AT THAT

02:08PM   4    POINT.  AND IT CAN'T BE THE ANSWER THAT IN ALL OF THESE

02:08PM   5    INSTANCES, OH, IT'S FOR THE JURY.  IT'S REALLY THE GOVERNMENT

02:08PM   6    DISCLOSED THIS UNDER RULE 404(B).  WHEN THEY DO THAT, THEY HAVE

02:08PM   7    TO CONNECT IT TO THE DEFENDANT, THEY HAVE TO MAKE SURE IT

02:08PM   8    CONNECTS TO A MATERIAL FACT IN THE CASE, AND THEY HAVE TO

02:08PM   9    OVERCOME AN EVEN MORE HEIGHTENED 403 BALANCING TEST THAT

02:08PM   10   APPLIES IN THE 404(B) CONTEXT, AND WE SUBMIT THAT THEY HAVE NOT

02:08PM   11   COME CLOSE TO THAT FACT.

02:09PM   12       SO UNLESS YOUR HONOR HAS QUESTIONS, I'LL MOVE ON TO THE

02:09PM   13   NEXT PIECE OF EVIDENCE.  SO THIS IS THE 2015 LETTER.  THIS IS

02:09PM   14   KIND OF ANOTHER PECULIAR CASE AND ACCORDING TO THE GOVERNMENT

02:09PM   15   IT WAS HAND DELIVERED TO CMS DURING THE 2015 INSPECTION BY

02:09PM   16   MR. BALWANI.

02:09PM   17       THE GOVERNMENT -- THE LETTER ITSELF IS AT GOVERNMENT

02:09PM   18   EXHIBIT 6 TO THEIR OPPOSITION, AND THAT'S AT ECF 679-6.  WE

02:09PM   19   MOVE TO EXCLUDE IT BECAUSE AS DISCLOSED IT'S ENTIRELY UNRELATED

02:09PM   20   TO MS. HOLMES.  IT'S NOT SIGNED.

02:09PM   21       AGAIN, THIS IS RULE 404(B) EVIDENCE, AND ONE OF THE

02:09PM   22   REQUIREMENTS IS THAT THEY CONNECT IT, IN THE NINTH CIRCUIT IS

02:09PM   23   THAT THEY CONNECT IT TO MS. HOLMES.  IT SEEMS LIKE A REASONABLE

02:09PM   24   THING THAT THEY ASK THE GOVERNMENT TO DO.

02:09PM   25       BUT IN RESPONSE THEY DO THE SAME THING THAT THEY DO WITH

02:09PM 1    THE 2013 EMAIL FROM DANIEL YOUNG, WHICH IS THAT THEY POINT TO

02:09PM 2    OTHER UNRELATED INSTANCES WHERE MS. HOLMES IS INVOLVED OR AWARE

02:10PM 3    OF THE CMS INTERACTIONS WITH THE COMPANY AND EVEN STRANGELY

02:10PM 4    WITH FDA FACTS, TOO.

02:10PM 5         AND THEY SAY, WELL, OKAY, IT STANDS TO REASON THAT SHE WAS

02:10PM 6    BEHIND THIS LETTER OR ADOPTED IT AND ANY ALLEGED

02:10PM 7    MISREPRESENTATION IN IT.  THAT SPECULATIVE LINK, WE SUBMIT, IS

02:10PM 8    INSUFFICIENT TO JUSTIFY ADMISSION AT LEAST ON THE BASIS THAT

02:10PM 9    IT'S BEEN PROFFERED SO FAR.  WE THINK THE GOVERNMENT HAS NOT

02:10PM 10   MET ITS BURDEN.

02:10PM 11        FINALLY, ONE LAST POINT ON THIS LETTER IS THAT THE

02:10PM 12   GOVERNMENT'S PROPOSED USE OF THIS AS 404(B) EVIDENCE, IT

02:10PM 13   DOESN'T MAKE A WHOLE LOT OF SENSE TO ME, AND IT SUGGESTS THAT

02:10PM 14   IT'S NOT BEING USED TO PROVE A MATERIAL FACT, WHICH IS ONE OF

02:10PM 15   THE FACTORS IN THE 404(B) ANALYSIS BECAUSE ON THE ONE HAND THE

02:10PM 16   GOVERNMENT WANTS TO USE PART IT, OR PART OF THE LETTER THAT

02:10PM 17   LISTS THE DATES THAT TESTS WERE RUN ON THE TSPU IN THE CLINICAL

02:10PM 18   LAB.  THEY'RE OFFERING IT AS A TRUTHFUL STATEMENT TO THE AGENCY

02:10PM 19   ACCORDING TO THEIR OPPOSITION.

02:10PM 20        BUT ON THE OTHER HAND, IT POINTS TO A STATEMENT THAT TESTS

02:11PM 21   ARE CYCLED OFF THE TSPU OVER TIME FOR BUSINESS REASONS.  IT

02:11PM 22   CALLS IT SELF-SERVING AND MISLEADING.

02:11PM 23        IT'S NOT REALLY CLEAR TO ME HOW THIS KIND OF THROWAWAY

02:11PM 24   LINE IN A LETTER WOULD DECEIVE AN AGENCY THAT AT THAT VERY

02:11PM 25   MOMENT WAS INSPECTING THERANOS AND KIND OF HAD FREE REIN TO

02:11PM  1       INSPECT WHAT IT WANTED TO LOOK AT INCLUDING ANY QC DATA OR ANY

02:11PM  2    LAB DOCUMENTATION RELATED TO THE LDT'S.

02:11PM  3       SO FOR ALL OF THESE REASONS THE EVIDENCE IS MORE LIKELY TO

02:11PM  4    DISTRACT AND CONFUSE RATHER THAN TO ENLIGHTEN, AND IT SHOULD BE

02:11PM  5    EXCLUDED.

02:11PM  6       AND FINALLY WE GET TO DR. SUNIL DHAWAN.  SO IN LATE 2013

02:11PM  7    THERANOS HIRED DR. SUNIL DHAWAN AS THE LABORATORY DIRECTOR.  AT

02:11PM  8    THE SAME TIME THEY ALSO HIRED ANOTHER CO-LAB DIRECTOR, AND THIS

02:11PM  9    IS A WOMAN BY THE NAME OF DR. LYNETTE SAWYER.  NOW BOTH WERE

02:11PM  10   QUALIFIED TO SERVE AS CLIA LAB DIRECTORS IN THE STATE OF

02:12PM  11   CALIFORNIA, AND THAT'S NOT CONTESTED.

02:12PM  12       NEITHER OF THEM SERVED AS FULL-TIME LAB DIRECTORS AS IN

02:12PM  13   THEY WEREN'T PRESENT ON THERANOS'S CAMPUS FULL TIME.

02:12PM  14       THAT'S ENTIRELY APPROPRIATE UNDER THE CLIA REGULATIONS,

02:12PM  15   AND IT'S ACTUALLY NOT OUT OF THE ORDINARY IN THE LAB INDUSTRY

02:12PM  16   AS I UNDERSTAND IT.

02:12PM  17       NOW, SOME LABS THEY MIGHT HAVE A LAB DIRECTOR WHO IS ON

02:12PM  18   THE GROUND AND WORKS ON A NORMAL 40-HOUR WORKWEEK IN THE LAB.

02:12PM  19       BUT THE CLIA REGULATIONS, THEY TREAT THE LAB DIRECTOR AS

02:12PM  20   KIND OF THE LEGAL FIGUREHEAD OR REPOSITORY OF WHERE ALL OF THE

02:12PM  21   OBLIGATIONS LAND.  LIKE THE BUCK STOPS WITH HIM.

02:12PM  22       BUT A LOT OF THE DAY-TO-DAY OPERATIONS ARE PERMISSIBLY

02:12PM  23   DELEGATED TO THE STAFF THAT SITS UNDERNEATH THE LAB DIRECTOR.

02:12PM  24       SO THE GOVERNMENT DOESN'T CONTEST THESE FACTS, EITHER.

02:12PM  25       THE GOVERNMENT NONETHELESS, THEY WANT TO ASK THE JURY TO

02:12PM 1    DRAW A SERIES OF INFERENCES FROM HIS RENTENTION AND FACTS ABOUT

02:12PM 2    HIM THAT REQUIRES THEM TO IGNORE THESE FACTS.

02:13PM 3        SO THE INFERENCE IN PARTICULAR THAT THEY WANT TO DRAW IS

02:13PM 4    THE FACT OF HIS RETENTION SHOWS THAT MS. HOLMES WAS INDIFFERENT

02:13PM 5    TO LAB QUALITY ALTOGETHER.

02:13PM 6        I JUST DON'T SEE HOW THE GOVERNMENT CAN USE THE EVIDENCE

02:13PM 7    IN THAT WAY WITHOUT IMPLYING THAT THOSE TWO UNCONTESTED FACTS,

02:13PM 8    THAT HE WAS QUALIFIED AND THAT THERE WAS NOTHING NECESSARILY

02:13PM 9    IMPROPER ABOUT HIS PART-TIME STATUS, LIKE WITHOUT HAVING THE

02:13PM 10   JURY KIND OF IGNORE THOSE.

02:13PM 11       SO REALLY THIS IS AN IMPROPER USE OF THIS EVIDENCE UNDER

02:13PM 12   RULE 404(B) OR OTHERWISE REALLY AND THE COURT SHOULD PRECLUDE

02:13PM 13   IT.

02:13PM 14            THE COURT:  ALL RIGHT.  THANK YOU.

02:13PM 15       MR. LEACH, IS THIS YOUR DAY ALSO?

02:13PM 16            MR. LEACH:  IT IS MY DAY, YOUR HONOR.  YES.

02:13PM 17            THE COURT:  SO I LOOKED AT THIS INITIALLY,

02:13PM 18   MR. LEACH, AND I WAS CURIOUS WHAT IS THE 404(B) USE HERE?  WHAT

02:13PM 19   IS THE 404(B) ANALYSIS THAT THE GOVERNMENT IS SEEKING?  AND I'M

02:14PM 20   SURE YOU'LL TELL ME ABOUT THAT.

02:14PM 21            MR. LEACH:  YES.  INTENT, PLAN, KNOWLEDGE, STATE OF

02:14PM 22   MIND, AND TO SOME EXTENT MOTIVE, YOUR HONOR.  I'LL GO IN

02:14PM 23   REVERSE ORDER BECAUSE IT'S FRESHEST IN MY MIND AND PERHAPS THE

02:14PM 24   COURT'S.

02:14PM 25            NOVEMBER OF 2014 THERANOS WAS IN CRISIS.  THEIR LAB

02:14PM  1    DIRECTOR WOULD NO LONGER PUT HIS NAME ON THE RESULTS BEING

02:14PM  2    GENERATED BY THE CLIA LAB.  HE RESIGNED BASICALLY OUT OF

02:14PM  3    CONCERNS THAT THERANOS WAS TURNING A BLIND EYE TO ALL OF THE

02:14PM  4    PROBLEMS IN ITS LAB.

02:14PM  5              THE COURT:  IS THIS DR. ROSENDORFF?

02:14PM  6              MR. LEACH:  THIS IS DR. ROSENDORFF.

02:14PM  7         WHAT DID THERANOS DO ABOUT IT?  THEY APPROACHED

02:14PM  8    MR. BALWANI'S DERMATOLOGIST, WHO HAS NO EXPERIENCE IN A HIGH

02:14PM  9    COMPLEXITY LAB OTHER THAN HIS DERMATOLOGY PRACTICE, AND SAY YOU

02:14PM 10    WON'T HAVE TO DO ANY WORK, THIS WON'T DISTRACT FROM YOUR

02:15PM 11    PRACTICE, PLEASE COME BE OUR LAB DIRECTOR IN SUBSTANCE.  THIS

02:15PM 12    DRAGS ON FOR ABOUT SIX MONTHS, WHICH SHOWS THAT THESE TWO

02:15PM 13    DEFENDANTS ARE NOT TERRIBLY CONCERNED ABOUT FIXING THE BAD

02:15PM 14    RESULTS COMING OUT OF THEIR LAB.

02:15PM 15         AND THEY HAGGLE WITH DR. DHAWAN OVER WHAT HE'S GOING TO BE

02:15PM 16    PAID.  AND THEY ESSENTIALLY ASSURE HIM YOU'LL GET PAID, BUT YOU

02:15PM 17    WON'T HAVE TO DO ANY WORK, IT WON'T DISTRACT FROM YOUR

02:15PM 18    PRACTICE, AND IT'S ALL VERY MINIMAL.

02:15PM 19         AND THE VERY FIRST DAY THAT DR. DHAWAN STEPS INTO THE LAB

02:15PM 20    IS THE DAY THAT THE CMS INSPECTORS SHOW UP FOR THEIR

02:15PM 21    INSPECTION.

02:15PM 22         WE THINK THIS CHRONOLOGY OF HOW DR. DHAWAN WAS HIRED, WHAT

02:15PM 23    HE WAS TOLD, THE URGENCY WITH WHICH THEY'RE TRYING TO ADDRESS

02:15PM 24    THESE VERY ISSUES THAT DR. ROSENDORFF RAISED IN THE LAB ARE

02:15PM 25    RELEVANT TO THEIR INTENT UNDER 403, 404(B) OR ANY OTHER

02:16PM 1   RELEVANCE STANDARD.

02:16PM 2        THE REASON THAT FLOWS IS THAT YOU CAN HIRE SOMEBODY WHO IS

02:16PM 3   QUALIFIED, BUT SOMEBODY WHO IS NOT THE SUPERSTAR YOU WANT TO

02:16PM 4   FIX YOUR LAB.  AND YOU SEE THAT BY COMPARISON OF WHO THE

02:16PM 5   DEFENDANTS HIRE TO SUE EMPLOYEES WHO THEY THINK ARE BREACHING

02:16PM 6   THEIR AGREEMENTS TO DEAL WITH "THE WALL STREET JOURNAL."  THEY

02:16PM 7   HIRED DAVID BOIES TO TRY TO INTIMIDATE "THE WALL STREET

02:16PM 8   JOURNAL" TO BACK OFF FROM PUBLISHING THEIR ARTICLE.

02:16PM 9        THEY HIRED MR. BALWANI'S DERMATOLOGIST TO MAKE SURE THAT

02:16PM 10  THEIR HCG TESTS WERE CORRECT AND TOLD HIM THAT YOU DON'T EVEN

02:16PM 11  NEED TO COME INTO THE LAB, WE'LL PAY YOU ANYWAYS.  ALL THAT IS

02:16PM 12  RELEVANT TO HOW SERIOUSLY THESE DEFENDANTS TOOK THEIR

02:16PM 13  STATEMENTS ABOUT ACCURATE RELIABLE TESTS COMING OUT OF THE LAB.

02:16PM 14       THE COURT:  I'M SORRY.  WILL THERE BE EVIDENCE THAT

02:16PM 15  THAT'S WHAT HE WAS TOLD, THE DOCTOR WAS TOLD?

02:16PM 16       MR. LEACH:  YES.  THERE'S AN EMAIL FROM

02:16PM 17  SUNNY BALWANI TO DR. DHAWAN SAYING YOU WON'T HAVE TO DO MUCH

02:17PM 18  WORK, AND HE'S PAID ALL OF THE WAY THROUGH JUNE.

02:17PM 19       THE PAPERWORK FOR HIM BECOMING THE LAB DIRECTOR ISN'T

02:17PM 20  SUBMITTED UNTIL JUNE.  SO THERE WILL BE EVIDENCE ALONG THOSE

02:17PM 21  LINES.

02:17PM 22       WITH RESPECT TO THE 2015 CMS INSPECTION, THE DOCUMENT

02:17PM 23  WE'RE TALKING ABOUT IS HIGHLY RELEVANT.  IT'S AN ADMISSION --

02:17PM 24  FIRST OF ALL, THE TESTIMONY WILL BE FROM SARAH BENNETT THAT

02:17PM 25  MR. BALWANI HANDED HER -- HANDED MS. BENNETT THE DOCUMENTS

02:17PM 1    DURING THE CMS INSPECTION.  AND THE DOCUMENT IS ESSENTIALLY AN

02:17PM 2    ADMISSION ABOUT WHAT TEST THERANOS WAS USING THE EDISON FOR

02:17PM 3    DURING WHAT PERIODS OF TIME.  THAT PART THE GOVERNMENT WILL BE

02:17PM 4    OFFERING FOR ITS TRUTH.  IT'S A STATEMENT BY AN AGENT OF

02:18PM 5    MS. HOLMES.  IT'S HER CEO, SOMEBODY SHE WORKS WITH CLOSELY.

02:18PM 6         AND THE THRUST OF THE GOVERNMENT'S EVIDENCE IN THE

02:18PM 7    OPPOSITION IS GIVEN THE ANXIETY GOING ON OVER THE CMS

02:18PM 8    INSPECTION, GIVEN THAT MS. HOLMES WAS PRAYING DURING THE EXAM

02:18PM 9    OR DURING THE INSPECTION FOR IT TO GO WELL, THAT THE FAIR

02:18PM 10   INFERENCE IS THAT SHE'S IN COMMUNICATION WITH MR. BALWANI ABOUT

02:18PM 11   WHAT IS BEING TOLD TO CMS.  I THINK THESE ARE FAIRLY STATEMENTS

02:18PM 12   OF AN AGENT.  AND WE DON'T NEED TO PROVE 404(B) EVIDENCE BEYOND

02:18PM 13   A REASONABLE DOUBT.  IT'S SIMPLY SUFFICIENT EVIDENCE FOR A

02:18PM 14   FINDING, AND I THINK THAT'S THERE.

02:18PM 15        THE OTHER PORTION OF THIS LETTER IS A STATEMENT TO CMS TO

02:18PM 16   THE EFFECT OF WE DIDN'T STOP DOING THE TESTING BECAUSE OF

02:18PM 17   ACCURACY AND RELIABILITY CONCERNS.  WE MADE A BUSINESS DECISION

02:18PM 18   TO RETIRE THESE DOCUMENTS -- OR THESE DEVICES.

02:18PM 19        WE THINK THAT'S FALSE.  WE THINK THAT'S SAID TO THE CMS

02:18PM 20   INSPECTORS IN ORDER TO ALLAY THEIR CONCERNS, TO MINIMIZE THEIR

02:19PM 21   INSPECTION, TO ESSENTIALLY DETER THEM FROM REALLY OPENING UP

02:19PM 22   THE HOOD.

02:19PM 23        THIS IS UNDOUBTEDLY A STATEMENT BY MR. BALWANI WHO IS THE

02:19PM 24   DEFENDANT'S COCONSPIRATOR.  THIS IS CLEARLY A STATEMENT IN

02:19PM 25   FURTHERANCE OF THE CONSPIRACY TO AVOID DETECTION BY REGULATORY

02:19PM 1    AUTHORITIES.

02:19PM 2         SO UNDER 404(B) AND 403, I THINK THIS IS CLEARLY RELEVANT

02:19PM 3    TO THE EXISTENCE OF AN AGREEMENT, THE STATE OF MIND OF THE

02:19PM 4    DEFENDANT.  IT'S BOTH A TRUE STATEMENT ABOUT WE'LL OFFER IT FOR

02:19PM 5    THE TRUTH OF WHAT TESTS THERANOS WAS ACTUALLY DOING IT, BUT WE

02:19PM 6    WILL ALSO SAY THAT THIS STATEMENT ABOUT WE JUST MADE A BUSINESS

02:19PM 7    DECISION IS A WAY TO DETER CMS FROM ACTUALLY LOOKING UNDER THE

02:19PM 8    HOOD.

02:19PM 9         THE THIRD CATEGORY THAT MY FRIEND TALKED ABOUT IS THE 2013

02:20PM 10   CALIFORNIA STATE INSPECTION.  THIS IS ALSO RELEVANT UNDER 401

02:20PM 11   AND 402.  IT'S NOT 403.  TO THE EXTENT IT'S 404(B), IT MEETS

02:20PM 12   ALL OF THE STANDARDS.  IT'S OFFERED FOR THE DEFENDANT'S INTENT,

02:20PM 13   STATE OF MIND, PLAN, AND MOTIVE.

02:20PM 14        I THINK ONE OF THE EMAILS IS FROM DR. YOUNG TO

02:20PM 15   DR. ROSENDORFF ESSENTIALLY SAYING LET'S NOT REMIND THE

02:20PM 16   INSPECTOR OF THE DOWNSTAIRS LAB.  THE DOWNSTAIRS LAB IS WHERE

02:20PM 17   THEY HAD SOME SIEMENS MACHINES, SOME THIRD PARTY MACHINES, BUT

02:20PM 18   ALSO THE EDISON MACHINES THAT THEY WERE THEN USING IN THEIR

02:20PM 19   CLIA LAB.

02:20PM 20        WE THINK THE FAIR INFERENCE FROM THIS EMAIL, WHICH WE

02:20PM 21   CONNECT THROUGH DR. YOUNG AS A DIRECTION FROM MR. BALWANI, THE

02:20PM 22   COCONSPIRATOR, IS REFLECTED OF THE DESIRE ON THERANOS'S PART TO

02:21PM 23   NOT SHOW THE REGULATORS THE SECRET SAUCE.  IT'S REFLECTIVE OF

02:21PM 24   THEIR INTENT, STATE OF MIND.

02:21PM 25        A WITNESS, ELENITOBA JOHNSON, I ANTICIPATE WILL SAY SHE

02:21PM  1    TOOK ONE OF MS. HOLMES'S EMAILS AS A DIRECTION NOT TO SHOW THE

02:21PM  2    INSPECTORS THE DOWNSTAIRS LAB.

02:21PM  3         AND THE FACT THAT THEY MAY HAVE DISCLOSED SOME INFORMATION

02:21PM  4    TO CMS IN D.C. AT SOME POINT IN TIME OR THAT DR. YOUNG'S FIELD

02:21PM  5    NOTES SHOW THAT DESPITE THE DEFENDANT'S CONCERN ABOUT SECRECY

02:21PM  6    AND THE CONCERN ABOUT SHOWING THIS, THEY DISCLOSED SOME

02:21PM  7    INFORMATION ANYWAY, DOESN'T REALLY CUT AGAINST THE CORE ISSUE

02:21PM  8    WHICH WAS WHAT WAS HER STATE OF MIND WHEN SHE TOLD HER

02:21PM  9    EMPLOYEES DON'T TAKE THE INSPECTORS DOWN THERE?

02:21PM 10         AND IF SHE WERE PROUD OF HER TECHNOLOGY, IF SHE WAS

02:21PM 11    CONFIDENT IN IT, SHE WANTED TO SHOW EVERYBODY THE GREAT

02:21PM 12    INVENTION THAT SHE HAD MADE, SHE WOULD HAVE SAID SOMETHING

02:22PM 13    DIFFERENTLY, THE GOVERNMENT SUBMITS.

02:22PM 14         WE THINK THIS IS REFLECTIVE OF AN INTENT TO CONCEAL, AN

02:22PM 15    INTENT TO HIDE, AND WE DON'T NEED TO PROVE 404(B) EVIDENCE

02:22PM 16    BEYOND A REASONABLE DOUBT.  WE NEED TO HAVE SUFFICIENT EVIDENCE

02:22PM 17    TO SUPPORT THE JURY'S FINDING.  THAT'S IN THE CASE LAW WE LAY

02:22PM 18    OUT IN THE BRIEF.

02:22PM 19         AND I THINK THE COMBINATION OF THE EMAILS, DR. YOUNG

02:22PM 20    SAYING THAT MY DIRECTION TO ROSENDORFF CAME FROM BALWANI, AND

02:22PM 21    EMAILS FROM MS. HOLMES CONSISTENT WITH THAT, AND MS. JOHNSON'S

02:22PM 22    STATEMENT ARE MORE THAN SUFFICIENT TO GET THIS IN.

02:22PM 23         THE OTHER THING THAT WE DIDN'T TALK ABOUT IS THERE ARE

02:22PM 24    FINDINGS FROM THE INSPECTION IN 2013 GOING TO THE EXTENT OF

02:22PM 25    THERANOS'S QUALITY ASSESSMENT PROGRAM.  THOSE ARE OFFERED TO

02:22PM   1    SHOW NOTICE TO THE DEFENDANT.  SOME OF THE ISSUES THAT COME UP

02:22PM   2    IN THIS 2013 INSPECTION ALSO ARISE IN 2015.  SO THAT DOCUMENT

02:23PM   3    IS ADMISSIBLE FOR THE NONHEARSAY PURPOSE OF NOTICE TO THE

02:23PM   4    DEFENDANT.

02:23PM   5              THE COURT:  ALL RIGHT.

02:23PM   6              MR. LEACH:  IF THE COURT HAS NO FURTHER QUESTIONS,

02:23PM   7    I'LL SUBMIT IT.

02:23PM   8              THE COURT:  NO.  THANK YOU.

02:23PM   9              MR. LOOBY:  SO I THINK I ALSO WILL START WITH THE

02:23PM  10    LAST TOPIC, AND WE'LL WORK OUR WAY BACKWARDS.

02:23PM  11         SO, YOUR HONOR, THE GOVERNMENT STILL -- WHAT I DIDN'T HEAR

02:23PM  12    THERE IS ANY CONNECTION BETWEEN THE EVIDENCE THAT THEY HAVE

02:23PM  13    PROFFERED TO USE, THE EMAIL FROM YOUNG TO MS. HOLMES, SAYING

02:23PM  14    THAT THIS IS A COMMAND FROM MS. HOLMES.  THEY'RE STILL RELYING

02:23PM  15    ON IT BEING FAIR TO INFER THAT IT CAME FROM HER OR THAT IT

02:23PM  16    SOMEHOW WAS AUTHORIZED FROM HER, BUT AT THIS JUNCTURE THAT'S

02:23PM  17    JUST NOT SUFFICIENT TO SUPPORT AN ADMISSION OF RULE 404(B).

02:24PM  18         I THINK ANOTHER FACT THAT BEARS UPON WHY THESE AMBIGUOUS

02:24PM  19    EMAILS ARE A LITTLE BIT DANGEROUS IS THAT THE DOWNSTAIRS

02:24PM  20    LABORATORY, AND MY UNDERSTANDING OF IT, BOTH HAD AN R&D

02:24PM  21    COMPONENT AND A CLINICAL LABORATORY SEGMENT OF IT.

02:24PM  22         SO, I MEAN, THERE'S JUST A COMPLETELY INNOCUOUS REASON FOR

02:24PM  23    NOT BRINGING AN INSPECTOR THROUGH A PART OF THE LAB THAT, LIKE,

02:24PM  24    IS MORE COMPLICATED TO ACCESS UNLESS SHE ASKS TO SEE IT.

02:24PM  25         SO I'M NOT SAYING THAT THAT COMMAND CAME FROM MS. HOLMES.

02:24PM   1    THEY HAVE NOT PROFFERED EVIDENCE OF THAT.

02:24PM   2         MR. LEACH WAS TALKING ABOUT A STATEMENT FROM

02:24PM   3    ELENITOBA JOHNSON.  TO MY KNOWLEDGE THAT'S NOT CONTAINED IN HER

02:24PM   4    GOVERNMENT INTERVIEW SO I'M CURIOUS AS TO WHAT THE PROVIDENCE

02:24PM   5    OF THAT IS.

02:25PM   6         BUT ULTIMATELY WE ARE LEFT IN SPECULATION LAND STILL.  WE

02:25PM   7    HAVE NOT MOVED OFF OF IT.  WE'RE JUST GOING TO BE ASKING THE

02:25PM   8    JURY TO READ MULTIPLE INFERENCES INTO AMBIGUOUS EMAILS THAT

02:25PM   9    JUST WON'T BEAR IT.  AND THE GOVERNMENT CITES CASES -- A GOOD

02:25PM  10    CASE FROM THE EIGHTH CIRCUIT IN OUR REPLY, YOU KNOW, ABOUT

02:25PM  11    EXCLUDING KIND OF EVIDENCE THAT IS SO AMBIGUOUS THAT IT CAN BE

02:25PM  12    READ ANY WHICH NUMBER OF WAYS.

02:25PM  13         AT THAT POINT IT'S JUST NOT PROBATIVE OF ANYTHING ANYMORE,

02:25PM  14    AND WE SUBMIT THAT THAT'S WHAT THIS IS.

02:25PM  15         AND MR. LEACH IS CORRECT THAT I NEGLECTED TO ADDRESS THAT

02:25PM  16    WE ALSO MOVED TO EXCLUDE THE 2013 CDPH INSPECTION REPORT.  IT'S

02:25PM  17    HEARSAY, AND SO ALL OF THE HEARSAY ARGUMENTS THAT WE'VE ALL

02:25PM  18    BEEN DISCUSSING ALL DAY, THEY APPLY EXACTLY THE SAME WAY.

02:25PM  19         HERE, THIS NONHEARSAY PURPOSE, WHEN MR. LEACH SAYS THAT

02:25PM  20    THE EXACT SAME ISSUES SHOW UP LATER ON, I JUST DON'T KNOW IF

02:26PM  21    THAT'S BORNE OUT BY THE EVIDENCE.  I MEAN, THE CITATIONS IN THE

02:26PM  22    2013 CDP INSTRUCTION, AND IT'S ATTACHED TO THE MOTION, I MEAN,

02:26PM  23    THEY DO RELATE TO PROFICIENCY TESTING GENERALLY, BUT I THINK IT

02:26PM  24    WOULD BE HARD TO SAY THAT THEY ARE NOTICE OF KIND OF THE SAME

02:26PM  25    ISSUES.  I JUST DON'T THINK THAT THE GOVERNMENT REALLY HAS

02:26PM 1      SUBSTANTIATED THAT AT THIS POINT.

02:26PM 2          IF ANYTHING, IF THE RAPID RECERTIFICATION OF THE

02:26PM 3      LABORATORY AFTER THE 2013 INSPECTION, WHICH HAPPENED WITHIN A

02:26PM 4      FEW MONTHS, IT'S NOTICED IN THE OPPOSITE DIRECTION.  IT'S

02:26PM 5      NOTICED THAT A CDPH CAME IN, THEY SPOTTED SOME ISSUES, THESE

02:26PM 6      ARE THE THINGS THAT WE NEED TO DO TO IMPROVE, WE GOT THE GREEN

02:26PM 7      LIGHT, AND WE'RE GOING FORWARD.

02:26PM 8          SO, TO ME, IT'S ANOTHER PIECE OF AMBIGUOUS EVIDENCE THAT

02:26PM 9      IS BOTH HEARSAY AND NOT PROBATIVE OF ANYTHING AT ALL.

02:27PM 10         SO WALKING BACKWARDS IN TIME TO THE CMS OR TO THE LETTER,

02:27PM 11     AGAIN, A LOT OF MR. LEACH'S PRESENTATION KIND OF RELATED TO

02:27PM 12     OTHER EVIDENCE LIKE TEXT MESSAGES ABOUT PRAYING THAT AN

02:27PM 13     INSPECTION WOULD GO WELL.

02:27PM 14         WHAT I DIDN'T HEAR WAS REALLY ANY CONNECTION AGAIN TO

02:27PM 15     MS. HOLMES.  IT WAS JUST SORT OF, WELL, SHE'S AROUND, SHE'S

02:27PM 16     AWARE THAT THERE'S AN INSPECTION, AND SO THIS STATEMENT MUST BE

02:27PM 17     ATTRIBUTABLE TO HER.

02:27PM 18         BUT OF COURSE SHE'S AWARE THAT THERE'S BEEN AN INSPECTION.

02:27PM 19     THAT'S NOT THE SAME QUESTION AS TO WHETHER OR NOT THE

02:27PM 20     GOVERNMENT HAS PROFFERED SUFFICIENT EVIDENCE TO MAKE A FINDING,

02:27PM 21     A THRESHOLD FINDING FOR ADMISSIBILITY UNDER RULE 404(B) FOR

02:27PM 22     THIS TYPE OF EVIDENCE.

02:27PM 23         AND THEN FINALLY, REGARDING MR. DHAWAN.  AGAIN, SOME OF

02:28PM 24     THE EMAILS RELATING TO THE RETENTION OF MR. DHAWAN ARE ATTACHED

02:28PM 25     TO THE GOVERNMENT'S OPPOSITION.  I WILL SAY THAT I'VE SPENT

02:28PM 1    TIME WITH THE DOCUMENTS, AND I DON'T READ THEM AS SAYING YOU

02:28PM 2    WILL HAVE TO DO NO WORK.  THERE'S AN ESTIMATE FOR LIKE HOW MANY

02:28PM 3    HOURS THAT HE WOULD HAVE TO DEVOTE TO HIS RESPONSIBILITIES AT

02:28PM 4    THERANOS.  AND HE ALSO WAS MAINTAINING A FULL-TIME PRACTICE IN

02:28PM 5    HIS OWN CLIA HIGH COMPLEXITY REGULATED LAB.  SO I DON'T THINK

02:28PM 6    THAT THAT'S, LIKE, ANYTHING NEFARIOUS ABOUT THAT.

02:28PM 7        I THINK TO TAKE A STEP BACK, THE KIND OF COMPARISON THAT

02:28PM 8    MR. LEACH USES BETWEEN HE'S NOT THE SUPERSTAR, HE'S NOT

02:28PM 9    DAVID BOIES.  I THINK WE'RE IN A UNIQUE POSITION HERE WHERE WE

02:28PM 10   CAN SEE THE KIND OF GROSSLY UNFAIRLY PREJUDICIAL LINK THAT THE

02:28PM 11   GOVERNMENT IS TRYING TO MAKE HERE BECAUSE THEY'RE JUST REALLY

02:28PM 12   LEADING WITH IT.

02:28PM 13       I JUST DON'T THINK THAT THAT EVIDENCE IS FAIRLY AT PLAY

02:28PM 14   HERE.  I DON'T THINK THAT THAT ARGUMENT FOLLOWS FROM THE

02:29PM 15   RETENTION OF A PART-TIME LAB DIRECTOR WHO HAPPENS TO BE A

02:29PM 16   DERMATOLOGIST.

02:29PM 17       AND AGAIN, I DON'T THINK --

02:29PM 18         THE COURT:  WELL, I GUESS THE INTERESTING PART IS

02:29PM 19   THAT IT'S MR. BALWANI'S DERMATOLOGIST, BUT THERE'S NOTHING

02:29PM 20   UNTOWARD ABOUT THAT YOU SUGGEST.

02:29PM 21         MR. LOOBY:  RIGHT.  THERE IS NOTHING UNTOWARD ABOUT

02:29PM 22   THAT.

02:29PM 23       THEIR LAB DIRECTOR, ADAM ROSENDORFF, LEFT.  UNDER THE CLIA

02:29PM 24   REGULATIONS YOU NEED TO GET SOMEBODY IN LINE RIGHT AWAY.

02:29PM 25       THEY FIRST INQUIRED WITH DR. DHAWAN WHETHER OR NOT HE KNEW

02:29PM 1    ANYONE.  AND THEN WHEN THEY LEARNED -- IT'S MOSTLY MR. BALWANI

02:29PM 2    IS DOING ALL OF THIS COMMUNICATION WITH DR. DHAWAN.  IT TURNS

02:29PM 3    OUT THAT HE'S QUALIFIED.  SO THEY SIGN HIM UP FOR A PART-TIME

02:29PM 4    POSITION AND A TEMPORARY POSITION.

02:29PM 5        THE IDEA IS NOT, OKAY, YOU'RE GOING TO BE OUR FULL-TIME

02:29PM 6    LAB DIRECTOR GOING FORWARD.  IT'S MORE OF A STOPGAP.  YOU KNOW

02:29PM 7    WHAT ELSE THEY DO?  THEY HIRE LYNETTE SAWYER AT THE SAME TIME.

02:29PM 8        SO WHILE THERE ARE DISCUSSIONS, AND I WOULDN'T CALL THEM

02:30PM 9    HAGGLING OVER COMPENSATION, THERE WERE DISCUSSIONS OVER THE

02:30PM 10   MANNER IN WHICH DR. DHAWAN IS GOING TO BE COMPENSATED.

02:30PM 11       DR. SAWYER, ANOTHER UNCONTESTEDLY QUALIFIED LAB DIRECTOR,

02:30PM 12   IS REVIEWING LAB DOCUMENTATION AND SIGNING THEM.

02:30PM 13           THE COURT:  SO MAYBE THIS ISN'T 404(B).  MAYBE THIS

02:30PM 14   IS JUST FACT EVIDENCE.

02:30PM 15       WHAT'S THE HISTORY OF THE LAB DIRECTORS AT THERANOS?

02:30PM 16       WELL, WE HAD DR. ROSENDORFF.  OKAY.  HE LEFT.

02:30PM 17       WHO FOLLOWED HIM?  THIS DOCTOR.

02:30PM 18       ALL RIGHT.  WHAT WAS HIS, WHAT WAS HIS RELATION?

02:30PM 19       WELL, HE WAS A DERMATOLOGIST.  HE WAS HIRED PART TIME

02:30PM 20   WHILE THEY COULD SECURE SOMEBODY ELSE.

02:30PM 21       OKAY.  ANYTHING ELSE ABOUT HIM?

02:30PM 22       WELL, HE HAPPENED TO BE MR. BALWANI'S DERMATOLOGIST, AND

02:30PM 23   WE AGREED NOT TO HAVE HIM ON.

02:30PM 24       IS THAT JUST FACT EVIDENCE?

02:30PM 25           MR. LOOBY:  RIGHT.  AND I THINK THERE ARE CERTAIN

02:30PM 1    FACTS THAT COULD FAIRLY COME IN.  I MEAN, IT WAS DISCLOSED AS

02:30PM 2    RULE 404(B).  I THINK WITH THE GOVERNMENT'S PROPOSED USE OF IT

02:30PM 3    WITH THAT ANALOGY TO DAVID BOIES, I MEAN, THEN IT'S 404(B)

02:30PM 4    BECAUSE WE'RE TALKING ABOUT ANOTHER ACT.  IT'S A BAD ACT THAT

02:31PM 5    THEY'RE ASKING TO DERIVE EVIDENCE OF INTENT FROM.

02:31PM 6         IT'S NOT LIKE A BASELINE FACT OF, OKAY, ROSENDORFF

02:31PM 7    DEPARTED, DHAWAN WAS NEXT, HE'S A DERMATOLOGIST.  THAT IS NOT

02:31PM 8    -- THE GOVERNMENT HAS TOLD US HOW THEY'RE GOING TO USE THIS

02:31PM 9    EVIDENCE.

02:31PM 10        THE COURT:  WELL, IF IT CAME IN JUST AS FACT

02:31PM 11   EVIDENCE, AS I SAID, WHAT IS THE HISTORY OF THE LAB

02:31PM 12   SUPERVISION?  WOULD YOU ARGUE THAT THEY COULDN'T ARGUE THAT AS

02:31PM 13   INTENT TO SHOW INTENT, THE JURY COULD USE THIS TO CONSIDER,

02:31PM 14   WOW, LOOK WHAT THEY DID, THEY HIRED A DERMATOLOGIST, YOU COULD

02:31PM 15   CONSIDER THAT?

02:31PM 16        MR. LOOBY:  RIGHT.  I THINK THAT USE OF THE EVIDENCE

02:31PM 17   IS 404(B), AND I THINK ONCE THE 404(B) FRAMEWORK IS LAID OVER

02:31PM 18   IT, THE GOVERNMENT HAS TO KIND OF BE PRETTY EXPLICIT ABOUT LIKE

02:31PM 19   THE LINKAGE THAT THEY'RE GOING TO MAKE TO THE EVIDENCE IN THE

02:31PM 20   CASE AND TO INTENT.  AND SO IT WOULD BE AN ORDER EXCLUDING THE

02:31PM 21   EVIDENCE UNDER 404(B) FOR THAT PURPOSE AND IN EFFECT IT WOULD

02:32PM 22   PRECLUDE THAT TYPE OF IMPROPER ARGUMENT IN EFFECT.

02:32PM 23        THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

02:32PM 24   ANYTHING ELSE, MR. LEACH?

02:32PM 25        MR. LEACH:  NO, YOUR HONOR.

02:32PM  1          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  HAVE

02:32PM  2   WE EXHAUSTED THE MOTIONS FOR WEDNESDAY?

02:32PM  3          MS. SAHARIA:  YES, WE HAVE, YOUR HONOR.

02:32PM  4          THE COURT:  I THINK WE HAVE.

02:32PM  5      AND I FRAMED THAT QUESTION VERY CAREFULLY.  I DID NOT ASK

02:32PM  6   IF ANYONE WAS EXHAUSTED.  I NOTE THAT IT'S ABOUT 2:30.  WE'RE

02:32PM  7   AHEAD OF SCHEDULE HERE.  I JUST WONDER IF I COULD LOOK AT A

02:32PM  8   COUPLE OF TOMORROW'S, THURSDAYS.

02:32PM  9      I THINK THERE ARE A COUPLE THAT MIGHT BE -- AND I DON'T

02:32PM 10   MEAN TO CUT OFF DISCUSSION, BUT IT SEEMS LIKE THERE'S A COUPLE

02:32PM 11   OF THESE THAT WE MIGHT BE ABLE TO HANDLE WITH LITTLE

02:32PM 12   DISCUSSION.

02:32PM 13          IS THAT ALL RIGHT, MS. SAHARIA?

02:32PM 14          MS. SAHARIA:  PERHAPS, YOUR HONOR.  NOT ALL OF THE

02:32PM 15   TEAM MEMBERS WHO ARE PREPARED TO ARGUE THE MOTIONS ARE HERE

02:32PM 16   AND --

02:32PM 17          THE COURT:  WELL, THE GOVERNMENT DOESN'T OBJECT TO

02:32PM 18   THAT.

02:32PM 19          MS. SAHARIA:  AND WE DON'T HAVE ALL OF OUR NOTES,

02:33PM 20   BUT IF YOUR HONOR WANTS TO PERHAPS GIVE YOUR COMMENTS ON THE

02:33PM 21   MOTIONS, WE COULD -- THAT MIGHT SPEED ALONG HOW TO PROCEED.

02:33PM 22          THE COURT:  SURE.

02:33PM 23      WELL, LET'S START WITH NUMBER 7, WHICH IS THE GOVERNMENT'S

02:33PM 24   MIL 9, AND THAT IS TO EXCLUDE SELF-SERVING HEARSAY STATEMENTS

02:33PM 25   MADE AND OFFERED BY THE DEFENDANT.

02:33PM    1          MS. SAHARIA:  YES, YOUR HONOR.

02:33PM    2          THE COURT:  AND THE NINTH CIRCUIT LAW IS THE ORTEGA

02:33PM    3    CASE SPEAKS TO THIS, 203 FED. 3D.  THAT IS THE CASE THAT I WAS

02:33PM    4    GOING TO CALL OUT AND ASK IF THE PARTIES ARE AGREEING THAT

02:33PM    5    ORTEGA CONTROLS.

02:33PM    6          I DON'T KNOW IF THAT'S HELPFUL OR NOT.  I DON'T KNOW IF

02:33PM    7    YOU ARE READY TO SPEAK TO THAT OR NOT.

02:33PM    8          MS. SAHARIA:  I CAN SPEAK TO THAT.  LET ME JUST USE

02:33PM    9    ONE MASK.

02:33PM   10          SO, YOUR HONOR, WITH RESPECT TO THE GOVERNMENT'S MOTION TO

02:33PM   11    EXCLUDE SELF-SERVING HEARSAY STATEMENTS, I THINK THE COURT

02:34PM   12    SHOULD DENY THAT MOTION FOR THE SAME REASON THAT THE COURT IN

02:34PM   13    THE YANG AND YAGI CASES DENIED THAT MOTION, WHICH IS, OF

02:34PM   14    COURSE, WE CANNOT ADMIT MS. HOLMES'S STATEMENTS FOR THEIR

02:34PM   15    TRUTH, BUT THERE ARE MANY OTHER PROPER REASONS WHY THEY MAY BE

02:34PM   16    ADMITTED.

02:34PM   17          THEY MAY BE ADMITTED FOR A NONHEARSAY PURPOSE, THE

02:34PM   18    STATEMENT MAY BE A VERBAL COMMAND TO ANOTHER EMPLOYEE, WHICH IS

02:34PM   19    NOT ADMITTED FOR THE TRUTH.  THAT WOULD BE RELEVANT TO INTENT.

02:34PM   20    IT MAY BE ADMITTED AS A HEARSAY EXCEPTION AND A STATEMENT OF

02:34PM   21    MIND, FOR INSTANCE.  SO THERE'S MANY PURPOSES FOR WHICH WE

02:34PM   22    MIGHT ADMIT THEM.

02:34PM   23          THE GOVERNMENT HAS NOT IDENTIFIED ANY STATEMENTS AT ISSUE

02:34PM   24    RIGHT NOW, SO THE MOTION IS ENTIRELY PREMATURE.

02:34PM   25          THERE WERE TWO OTHER KIND OF SUBSIDIARY ISSUES THAT THE

02:34PM 1   GOVERNMENT RAISES IN THAT MOTION WHICH I THINK ARE ALSO

02:34PM 2   COMPLETELY PREMATURE.

02:34PM 3        ONE IS PRIOR CONSISTENT STATEMENTS AND WHAT THE SCOPE OF

02:34PM 4   OUR ABILITY TO ADMIT PRIOR CONSISTENT STATEMENTS IS.  I THINK

02:35PM 5   THAT'S JUST PREMATURE.

02:35PM 6        I WOULD JUST NOTE ONE ISSUE THERE, WHICH IS IN THE

02:35PM 7   GOVERNMENT'S MOTION IT CITES I THINK A 2008 CASE.  I DON'T

02:35PM 8   REMEMBER THE NAME OF THE CASE.  THAT WAS APPLYING THE PRIOR

02:35PM 9   STANDARD FOR PRIOR CONSISTENT STATEMENTS.  THE RULES COMMITTEE

02:35PM 10  AMENDED THAT RULE IN 2014 TO BROADEN IT TO ALLOW A WIDER

02:35PM 11  VARIETY OF PRIOR CONSISTENT STATEMENTS TO BE ADMITTED FOR THEIR

02:35PM 12  TRUTH.  SO I WOULD JUST NOTE THAT FOR THE RECORD THAT THAT IS

02:35PM 13  NOT THE RIGHT STANDARD THAT THEY HAVE CITED IN THEIR MOTIONS.

02:35PM 14       AND THEN ON THE RULE OF COMPLETENESS ISSUE, EVEN THE COURT

02:35PM 15  IN DASHNER, WHICH IS THE ONLY CASE THAT THEY RELIED ON, DENIED

02:35PM 16  THAT PART OF THE MOTION BECAUSE IT'S ENTIRELY PREMATURE.

02:35PM 17       THERE ARE THESE KIND OF HYPOTHETICAL ISSUES ADDRESSED BY

02:35PM 18  THE PARTIES ABOUT THE RULE OF COMPLETENESS AND WHETHER IT MIGHT

02:35PM 19  APPLY TO ORAL STATEMENTS AND HOW IT APPLIES WHEN THE STATEMENT

02:35PM 20  IS A HEARSAY STATEMENT.

02:35PM 21       IF YOUR HONOR WANTS US TO ADDRESS THOSE, WE CAN NOW, BUT I

02:36PM 22  THINK THEY'RE JUST COMPLETELY PREMATURE.

02:36PM 23            THE COURT:  OKAY.  THANK YOU.

02:36PM 24       WHO IS SPEAKING TO THIS MOTION?

02:36PM 25            MS. VOLKAR:  KELLY VOLKAR ON BEHALF OF THE

02:36PM  1    UNITED STATES.  IT'S A PLEASURE TO MEET YOU IN PERSON.

02:36PM  2              THE COURT:  THANK YOU.  LIKEWISE.

02:36PM  3              MS. VOLKAR:  I APOLOGIZE I DON'T HAVE ALL OF MY

02:36PM  4    NOTES IN FRONT OF ME.

02:36PM  5              THE COURT:  I DON'T MEAN TO CALL THIS OUT OF ORDER

02:36PM  6    AND TO PUT BOTH SIDES AT A DISADVANTAGE, BUT I JUST THOUGHT

02:36PM  7    THAT THE NINTH CIRCUIT LAW ON THIS IS SPELLED OUT CLEARLY I

02:36PM  8    THINK IN THE ORTEGA CASE.  AND MY QUESTION WAS GOING TO BE CAN

02:36PM  9    WE GET AGREEMENT THAT THE PARTIES ARE GOING TO FOLLOW THE

02:36PM 10    NINTH CIRCUIT LAW AND THE ORTEGA CASE.

02:36PM 11        THE GENERAL, MS. SAHARIA, AS I'M CERTAIN YOU ARE AWARE

02:36PM 12    THAT THE GENERAL PROPOSITION IS THAT A DEFENDANT CANNOT GET IN

02:36PM 13    HIS OR HER EXCULPATORY OUT-OF-COURT STATEMENTS THAT MIGHT GO TO

02:36PM 14    AN ISSUE OF INTENT IN THE CASE.

02:36PM 15              MS. SAHARIA:  WELL, I DON'T AGREE WITH THAT

02:37PM 16    FORMULATION BECAUSE THERE COULD BE EXCULPATORY STATEMENTS THAT

02:37PM 17    ARE NOT ADMITTED FOR THEIR TRUTH, RIGHT?  THERE MAY BE A

02:37PM 18    STATEMENT OF MS. HOLMES'S STATE OF MIND WHICH WOULD COME IN

02:37PM 19    UNDER A HEARSAY EXCEPTION UNDER RULE 803 I BELIEVE.

02:37PM 20              THE COURT:  OKAY.

02:37PM 21              MS. SAHARIA:  THAT MAY BE EXCULPATORY, RIGHT?  IT'S

02:37PM 22    A HELPFUL STATEMENT, BUT WE CAN ADMIT THAT BECAUSE IT'S NOT FOR

02:37PM 23    ITS TRUTH.

02:37PM 24        SO I TOTALLY AGREE THAT WE CANNOT ADMIT MS. HOLMES'S

02:37PM 25    STATEMENTS FOR THE TRUTH OF THE MATTER ASSERTED.  THE POINT I

02:37PM 1   WAS MAKING BEFORE IS THAT THERE ARE MANY EXCEPTIONS UNDER THE

02:37PM 2   HEARSAY RULES THAT WOULD ALLOW US TO ADMIT MS. HOLMES'S

02:37PM 3   STATEMENTS.

02:37PM 4               THE COURT:  TO ADVANCE THAT THEORY ANYHOW, RIGHT.

02:37PM 5               MS. SAHARIA:  YES.  AND JUST LIKE THE COURT SAID IN

02:37PM 6   YANG AND YAGI, YOU CAN'T DECIDE WHETHER ANY THE STATEMENTS

02:37PM 7   FALLS -- IS BEING ADMITTED FOR THE TRUTH OR IS BEING ADMITTED

02:37PM 8   FOR SOME OTHER PURPOSE UNTIL YOU ACTUALLY HAVE THAT STATEMENT

02:37PM 9   IN FRONT OF THE COURT.

02:37PM 10              THE COURT:  OKAY.  WELL, LET'S CONTINUE OUR

02:37PM 11  CONVERSATION ON THIS TOMORROW.  I JUST POINT OUT THE ORTEGA

02:37PM 12  CASE FOR OUR DISCUSSION.

02:37PM 13      THE OTHER ONE THAT I THOUGHT WE WOULD HAVE DISCUSSION

02:37PM 14  ABOUT IS DOCUMENT 578, MS. HOLMES'S MOTION TO EXCLUDE CERTAIN

02:38PM 15  NEWS ARTICLES.

02:38PM 16      I THOUGHT I READ THERE WAS AN AGREEMENT EXCEPT FOR PARLOFF

02:38PM 17  AND TOPEL.

02:38PM 18              MS. SAHARIA:  THAT'S MR. LOOBY'S MOTION.  I THINK WE

02:38PM 19  MIGHT PREFER TO TABLE THAT UNTIL TOMORROW IF THAT'S OKAY WITH

02:38PM 20  YOUR HONOR.

02:38PM 21              THE COURT:  SURE.  SURE.  OKAY.  THOSE WERE THE TWO

02:38PM 22  THAT I THOUGHT WE COULD HANDLE WITH SOME EFFICIENCY TODAY, BUT

02:38PM 23  THAT'S FINE.  WE'LL TALK ABOUT THOSE TOMORROW.

02:38PM 24              MS. SAHARIA:  OKAY.  THANK YOU.

02:38PM 25              THE COURT:  ALL RIGHT.  WHY DON'T WE END OUR DAY

02:38PM 1      TODAY, WHY DON'T WE END OUR DAY TODAY.

02:38PM 2          ANYTHING ELSE ANY OF THE PARTIES WANT TO RAISE TODAY OR

02:38PM 3      ANYTHING ELSE RELATED TO OUR TRIAL SCHEDULE?

02:38PM 4              MR. SCHENK:  NO, YOUR HONOR.  THANK YOU.

02:38PM 5              MS. SAHARIA:  NO, YOUR HONOR.

02:38PM 6              THE COURT:  OKAY.  THANK YOU.  HAVE A GOOD EVENING.

02:38PM 7      WE'LL SEE YOU TOMORROW.

02:38PM 8          TOMORROW AT 1:00 O'CLOCK, I THINK, MS. KRATZMANN?  IS THAT

02:39PM 9      RIGHT?

02:39PM 10             THE CLERK:  I BELIEVE IT WAS CALENDARED FOR 1:30.

02:39PM 11     WE CAN MOVE THAT UP TO 1:00 O'CLOCK.

02:39PM 12             THE COURT:  LET'S DO THAT.  I HAVE A CIVIL CALENDAR

02:39PM 13     AT 9:00 O'CLOCK AND ONE MATTER CAME OFF.  LET'S JUST SAY 1:00

02:39PM 14     O'CLOCK OUT OF AN ABUNDANCE OF CAUTION.

02:39PM 15             MS. SAHARIA:  SURE.  THANK YOU.

02:39PM 16             MR. LEACH:  TOO THANK YOU.

02:39PM 17             THE CLERK:  COURT IS ADJOURNED FOR THE DAY.  THE

02:39PM 18     CONFERENCE LINE SHALL TERMINATE.

02:39PM 19         (COURT CONCLUDED AT 2:39 P.M.)

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       IRENE RODRIGUEZ, CSR, RMR, CRR
         CERTIFICATE NUMBER 8074
17

18

19                    DATED:  MAY 12, 2021

20

21

22

23

24

25