UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CR-18-00258-EJD |
| PLAINTIFF, | ) | |
| | ) | SAN JOSE, CALIFORNIA |
| VS. | ) | |
| | ) | MAY 6, 2021 |
| ELIZABETH A. HOLMES, | ) | |
| | ) | PAGES 1 - 161 |
| DEFENDANT. | ) | |
| _____ | ) | **SEALED PAGES 152 - 161** |
| | ) | |


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                        BY:  JOHN C. BOSTIC
                             JEFFREY B. SCHENK
                        150 ALMADEN BOULEVARD, SUITE 900
                        SAN JOSE, CALIFORNIA 95113

                        BY:  ROBERT S. LEACH
                             KELLY VOLKAR
                        1301 CLAY STREET, SUITE 340S
                        OAKLAND, CALIFORNIA 94612

     (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTERS:
                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074
                        LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595

     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
        TRANSCRIPT PRODUCED WITH COMPUTER

1
2

A P P E A R A N C E S: (CONT'D)

3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
4                                  LANCE A. WADE
                                   PATRICK LOOBY
5                                  KATHERINE TREFZ
                                   AMY SAHARIA
6                                  ANDREW LEMENS
                                   J.R. FLEURMONT
7                                  SEEMA ROPER
                              725 TWELFTH STREET, N.W.
8                             WASHINGTON, D.C. 20005

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                           MAY 6, 2021 |
| 12:52PM | 2 | P R O C E E D I N G S |
| 12:52PM | 3 | (COURT CONVENED AT 1:03 P.M.) |
| 01:04PM | 4 | THE COURT:  LET'S GO ON THE RECORD IN 18-258, |
| 01:04PM | 5 | UNITED STATES VERSUS ELIZABETH HOLMES. |
| 01:04PM | 6 | I SEE ALL COUNSEL PRESENT AGAIN.  GOOD AFTERNOON. |
| 01:04PM | 7 | MS. HOLMES IS PRESENT.  AND WE'RE READY TO FINISH OUR |
| 01:04PM | 8 | DISCUSSION, OR CONTINUE OUR DISCUSSIONS I SHOULD SAY, ON THE |
| 01:04PM | 9 | PENDING IN LIMINE MOTIONS. |
| 01:04PM | 10 | WHAT I'D LIKE TO DO, MS. SAHARIA, I'D LIKE TO GIVE |
| 01:04PM | 11 | IN LIMINE MOTION, GOVERNMENT'S NUMBER 9 ONE MORE TRY. |
| 01:04PM | 12 | MS. SAHARIA:  YES.  I WOULD AS WELL, YOUR HONOR. |
| 01:04PM | 13 | THE COURT:  LET'S CALL THIS OUT OF ORDER.  THIS IS |
| 01:04PM | 14 | GOVERNMENT'S MOTION NUMBER 9 TO EXCLUDE SELF-SERVING HEARSAY |
| 01:04PM | 15 | STATEMENTS MADE AND OFFERED BY THE DEFENDANT. |
| 01:05PM | 16 | YESTERDAY I WAS TALKING ABOUT RECOGNIZING THAT THE ORTEGA |
| 01:05PM | 17 | CASE, 203 FED. 3D CONTROLS THIS ISSUE AND THAT THE COURT WOULD |
| 01:05PM | 18 | BE INCLINED TO FOLLOW NINTH CIRCUIT LAW ON THIS ISSUE. |
| 01:05PM | 19 | I THINK YOU WERE TALKING ABOUT, WELL, THERE MAY BE OTHER |
| 01:05PM | 20 | CIRCUMSTANCES WHERE OTHER STATEMENTS OF THE DEFENDANT MIGHT, |
| 01:05PM | 21 | MIGHT BE ADMISSIBLE. |
| 01:05PM | 22 | I THINK YOUR CONCERN WAS THAT THE COURT WOULD ISSUE A |
| 01:05PM | 23 | RULING, A BLANKET RULING PROHIBITING YOU FROM EVEN ATTEMPTING |
| 01:05PM | 24 | TO GET THOSE TYPES OF STATEMENTS IN. |
| 01:05PM | 25 | MS. SAHARIA:  THAT'S RIGHT. |

01:05PM 1          THE COURT:  IF THAT WAS -- YOU CAN COME TO THE

01:05PM 2   LECTERN IF YOU WOULD LIKE.  THANK YOU.

01:05PM 3        AND IF THAT WAS THE IMPRESSION THAT I LEFT YOU WITH, THAT

01:05PM 4   WAS MY MISTAKE.  I DID NOT MEAN TO INDICATE THAT.

01:05PM 5        I THINK IT IS -- I DON'T KNOW WHOSE MOTION THIS IS.

01:05PM 6        YES.  THANK YOU.  MS. VOLKAR, COME ON UP.

01:05PM 7          MS. VOLKAR:  THANK YOU, YOUR HONOR.

01:05PM 8          THE COURT:  I DIDN'T MEAN TO INDICATE THAT I WAS

01:05PM 9   GOING TO GRANT THE MOTION AND THEREBY PRECLUDE YOUR TEAM FROM

01:06PM 10  INTRODUCING OR AT LEAST ATTEMPTING TO INTRODUCE STATEMENTS THAT

01:06PM 11  YOU FELT COULD BE ADMISSIBLE FOR SOME OTHER PURPOSE OTHER THAN

01:06PM 12  WHAT ORTEGA AND THE PROGENY.

01:06PM 13          MS. SAHARIA:  THAT WAS MY CONCERN, YOUR HONOR.  I'M

01:06PM 14  PREPARED TO ADDRESS THAT IF HELPFUL, BUT I THINK WE AGREE WITH

01:06PM 15  YOUR HONOR THAT ORTEGA IMPLEMENTS RULE 801 WHICH PROHIBITS US

01:06PM 16  FROM INTRODUCING MS. HOLMES'S STATEMENTS IF THEY ARE HEARSAY.

01:06PM 17  AND THE HOLDING OF ORTEGA WAS, QUOTE, "THE DISTRICT COURT DID

01:06PM 18  NOT ABUSE ITS DISCRETION WHEN IT LIMITED ORTEGA'S ABILITY TO

01:06PM 19  ELICIT HIS EXCULPATORY HEARSAY STATEMENTS ON

01:06PM 20  CROSS-EXAMINATION."

01:06PM 21        THERE ARE MULTIPLE DECISIONS OF THIS COURT THAT THEN GO ON

01:06PM 22  TO EXPLAIN THAT THERE MAY BE CIRCUMSTANCES IN WHICH A

01:06PM 23  DEFENDANT'S OUT-OF-COURT STATEMENT IS ADMISSIBLE FOR SOME OTHER

01:06PM 24  NONHEARSAY PURPOSE, FOR INSTANCE, THE YAGI CASE BY JUDGE CHEN

01:06PM 25  AND THE YANG CASE BY JUDGE KOH.

01:06PM   1          SO WE WOULD JUST -- OF COURSE, WE INTEND TO COMPLY WITH

01:07PM   2   ORTEGA.  WE WILL NOT INTRODUCE MS. HOLMES'S STATEMENTS FOR THE

01:07PM   3   TRUTH, BUT THERE MAY BE OTHER PURPOSES SUCH AS STATE OF MIND OR

01:07PM   4   OTHER NONHEARSAY PURPOSES TO WHICH THEY COULD BE ADMISSIBLE.

01:07PM   5          THAT'S ALL THAT I WAS INTENDING, PERHAPS INARTICULATELY,

01:07PM   6   TO EXPLAIN.

01:07PM   7              THE COURT:  NO, NO.  AND I DIDN'T MEAN TO SUGGEST

01:07PM   8   THAT THERE WOULD BE A BLANKET PRECLUSION FROM EVEN THAT

01:07PM   9   ATTEMPT.

01:07PM  10          DO YOU WISH TO BE HEARD?

01:07PM  11              MS. VOLKAR:  I WOULD, YOUR HONOR.

01:07PM  12          THIS IS, AS YOU MENTIONED YESTERDAY, A STRAIGHTFORWARD

01:07PM  13   APPLICATION OF ORTEGA, AND IF THE COURT WISHES TO LOOK TO WHAT

01:07PM  14   THE GOVERNMENT IS SEEKING, IF THE COURT WOULD LOOK -- IF THE

01:07PM  15   GOVERNMENT WOULD POINT THE COURT TO A RECENT DECISION IN THIS

01:07PM  16   COURT BY JUDGE ILLSTON IN THE DASHNER CASE FROM JUST A FEW

01:07PM  17   YEARS AGO.

01:07PM  18          THE REASON WHY WE POINT TO THAT IS BECAUSE THERE ARE A LOT

01:07PM  19   OF STATEMENTS IN THIS CASE BY THE DEFENDANT TO THE MEDIA

01:07PM  20   THROUGHOUT THE LAST SEVERAL YEARS AND THAT THE DEFENDANT COULD

01:07PM  21   USE, FOR EXAMPLE, ON CROSS-EXAMINATION OF GOVERNMENT WITNESSES

01:07PM  22   OR NOT THROUGH THE DEFENDANT'S OWN TESTIMONY THAT WOULD

01:08PM  23   ESSENTIALLY, AS THE ORTEGA CASE SAYS, BE A BACKDOOR BRINGING IN

01:08PM  24   THE SELF-SERVING AND STATEMENTS ABOUT SORT OF ALTRUISTIC MOTIVE

01:08PM  25   BEHIND THE COMPANY WITHOUT ALLOWING THE GOVERNMENT THE CHANCE

01:08PM 1    FOR CROSS-EXAMINATION.

01:08PM 2         AND, OF COURSE, A DEFENDANT HAS THE RIGHT TO TESTIFY.

01:08PM 3    THAT IS HER RIGHT.  BUT IF SHE CHOOSES NOT TO TESTIFY, THEN THE

01:08PM 4    GOVERNMENT WOULD BE LEFT WITHOUT RECOURSE TO CHALLENGE OR TO

01:08PM 5    VET THESE STATEMENTS, AND THAT IS THE GOVERNMENT'S ULTIMATE

01:08PM 6    CONCERNS.  AND JUDGE ILLSTON SAW THAT IN THE DASHNER CASE.

01:08PM 7         I WOULD ALSO LIKE TO SPECIFICALLY RESPOND TO YANG AND

01:08PM 8    YAGI.  THE YANG CASE WAS BEFORE JUDGE KOH IN THIS DISTRICT, AND

01:08PM 9    THERE THE DEFENDANT SPECIFICALLY STATED THAT THEY WOULD NOT BE

01:08PM 10   INTRODUCING ANY HEARSAY STATEMENTS OF THE DEFENDANT.

01:08PM 11        WE HAVE NOT RECEIVED A SIMILAR STATEMENT IN THIS CASE SO I

01:08PM 12   BELIEVE THAT DISTINGUISHES YANG FROM THE FACTS BEFORE THE

01:08PM 13   COURT.

01:08PM 14        AND THE YAGI CASE FOCUSSED MOSTLY ON THE STATE OF MIND

01:09PM 15   EXCEPTION, WHICH AT LEAST IN THE DEFENDANT'S OPPOSITION HAS NOT

01:09PM 16   SPECIFICALLY BEEN RAISED, ALTHOUGH I BELIEVE MS. SAHARIA

01:09PM 17   REFERENCED IT YESTERDAY.

01:09PM 18        I WOULD POINT AGAIN TO JUDGE ILLSTON'S DECISION IN

01:09PM 19   DASHNER, WHICH POINTS TO A NINTH CIRCUIT CASE, COLLICOTT FROM

01:09PM 20   2013, THAT REALLY TALKS ABOUT HOW LIMITED THE STATE OF MIND

01:09PM 21   EXCEPTION IS, AND IT TALKS ABOUT THE FACT THAT IF YOU'RE TRYING

01:09PM 22   TO BRING IN HEARSAY STATEMENTS THROUGH ANOTHER WITNESS

01:09PM 23   TESTIFYING, IT IS OFTEN INADMISSIBLE UNDER THIS BASIC BLANKET

01:09PM 24   BLACK LETTER LAW RULE, AND IF IT'S SORT OF A MEMORY OR BELIEF

01:09PM 25   OF WHAT THE DEFENDANT SAID COMING IN THROUGH ANOTHER WITNESS,

01:09PM 1     THEN IT'S IRRELEVANT HEARSAY.

01:09PM 2         AGAIN, I THINK I WOULD POINT TO ALTHOUGH THERE ARE THESE

01:09PM 3     TWO DISTRICT COURT CASES OUT THERE, THEY REALLY HAVE LIMITED

01:09PM 4     APPLICATION AND THE NINTH CIRCUIT IS VERY CLEAR.  WE'RE JUST

01:09PM 5     LOOKING FOR A RULE AGAIN IN YOUR ORDER SIMILAR TO WHAT

01:09PM 6     JUDGE ILLSTON DID, WHICH IS JUST REMINDING OF THOSE GUARDRAILS

01:10PM 7     AS WE HEAD INTO TRIAL.

01:10PM 8         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

01:10PM 9     I THINK OUR CONVERSATION HAS REMINDED US OF THE

01:10PM 10    GUARDRAILS, AND I'M NOT CERTAIN I NEED TO MAKE A SPECIFIC

01:10PM 11    MOTION.  I HAVE NOT HEARD MS. SAHARIA ADVANCE A STATEMENT THAT

01:10PM 12    SHE THINKS IS APPROPRIATE NOW.  WE HAVEN'T STARTED TRIAL YET.

01:10PM 13        MS. SAHARIA:  CORRECT.  WE DON'T EVEN KNOW WHAT

01:10PM 14    STATEMENTS THEY'RE ATTEMPTING TO EXCLUDE BECAUSE THEY HAVE NOT

01:10PM 15    IDENTIFIED THEM WHICH IS WHY THE COURT IN YAGI AND YANG

01:10PM 16    DEFERRED RULING ON THE MOTION.

01:10PM 17        THE COURT:  AND I THINK WE KNOW TRIALS ARE VERY

01:10PM 18    FLUID, THEY CHANGE, THINGS CAN HAPPEN, AND I THINK IT WOULD BE

01:10PM 19    PREMATURE FOR THE COURT TO MAKE ANY KIND OF A RULING NOW BASED

01:10PM 20    ON WHAT WE KNOW THE LAW IS, BUT I DON'T HAVE THE TEXTUAL

01:10PM 21    INFORMATION IN FRONT OF ME TO ACTUALLY RULE ON A MOTION, DO I?

01:10PM 22    OTHER THAN TO RECOGNIZE AND BE GRATEFUL THAT EVERYBODY

01:10PM 23    RECOGNIZES WHAT THE LAW IS IN THE CIRCUIT AND THE STATEMENT

01:10PM 24    THAT THE COURT INTENDS TO FOLLOW AND I WILL NOTE THAT ALL

01:10PM 25    COUNSEL DO AS WELL.

| 01:10PM | 1 | MS. SAHARIA:  I AGREE, YOUR HONOR. |
| 01:10PM | 2 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 01:10PM | 3 | MS. VOLKAR:  THANK YOU. |
| 01:10PM | 4 | THE COURT:  I'LL DEFER THE MOTION.  THANK YOU. |
| 01:11PM | 5 | ALL RIGHT.  LET'S TURN OUR ATTENTION BACK TO THE FIRST |
| 01:11PM | 6 | MOTION THAT THE PARTIES HAVE INDICATED THAT THEY WOULD LIKE TO |
| 01:11PM | 7 | DISCUSS. |
| 01:11PM | 8 | IT'S DOCKET 567, AND THIS IS MS. HOLMES'S MOTION TO |
| 01:11PM | 9 | EXCLUDE EVIDENCE CONCERNING WEALTH, SPENDING, AND LIFESTYLE. |
| 01:11PM | 10 | MR. DOWNEY:  GOOD AFTERNOON, YOUR HONOR. |
| 01:11PM | 11 | THE COURT:  GOOD AFTERNOON, MR. DOWNEY. |
| 01:11PM | 12 | MR. DOWNEY:  KEVIN DOWNEY FOR MS. HOLMES. |
| 01:12PM | 13 | AS THE COURT NOTED, I'LL BE ADDRESSING THE MOTION IN |
| 01:12PM | 14 | LIMINE THAT RELATES TO WEALTH, WHICH IS AT DOCKET 567. |
| 01:12PM | 15 | I MAY ALSO REFER DURING THE COURSE OF THE ARGUMENT TO WHAT |
| 01:12PM | 16 | WE CALL THE SAHARIA AFFIDAVIT, WHICH IS TEXT IN THE DOCKET AS |
| 01:12PM | 17 | 579 AND PRINCIPALLY ANY REFERENCE I MAKE WOULD BE TO EXHIBIT 3 |
| 01:12PM | 18 | OF THAT DOCUMENT. |
| 01:12PM | 19 | OF COURSE, I'M ALWAYS HAPPY TO HEAR WHATEVER THOUGHTS THE |
| 01:12PM | 20 | COURT HAS AS TO THE ISSUES THAT HAVE DRAWN ITS FOCUS IN |
| 01:12PM | 21 | REVIEWING THE BRIEFS. |
| 01:12PM | 22 | BUT I THOUGHT THAT WHAT MIGHT BE HELPFUL FOR THE COURT AND |
| 01:12PM | 23 | PROBABLY MOST HELPFUL WOULD BE TO FOCUS ON WHAT I THINK ARE THE |
| 01:12PM | 24 | BINDING NINTH CIRCUIT CASES TO TALK ABOUT THE EVIDENCE THAT WE |
| 01:12PM | 25 | KNOW SURELY WILL COME IN DURING THE COURSE OF THE TRIAL, THE |

01:12PM  1   EVIDENCE THAT MOST CERTAINLY SHOULD NOT COME IN DURING THE

01:12PM  2   TRIAL.  AND ALSO, YOUR HONOR, I'D LIKE TO SAY IN THE LAST

01:13PM  3   PORTION OF MY COMMENTS, I WOULD LIKE TO TALK ABOUT WHAT COULD

01:13PM  4   BE COMMENTED ON DURING OPENING, AND I THINK IT'S A LITTLE

01:13PM  5   PREMATURE TO TALK ABOUT WHAT WILL BE SAID IN CLOSING, BUT MUCH

01:13PM  6   OF WHAT I WOULD SAY WOULD APPLY THERE AS WELL.

01:13PM  7        SO LET ME TALK ABOUT THE EVIDENCE FIRST THAT WILL COME IN

01:13PM  8   IN LIGHT OF REYES AND MITCHELL.  I THINK I SHOULD SAY FOR THE

01:13PM  9   COURT REPORTER THAT THE REYES CASE IS R-E-Y-E-S.

01:13PM 10        I KNOW THE COURT IS VERY FAMILIAR WITH THE FACTS OF THOSE

01:13PM 11   CASES, BUT I THOUGHT IT MIGHT BE USEFUL TO ENGAGE IN SOME

01:13PM 12   DISCUSSION OF THE PARTICULARS OF THE FACTS OF THOSE CASES TO

01:13PM 13   ANALOGIZE THEM TO WHAT I ANTICIPATE WE'LL SEE AT TRIAL.

01:13PM 14        WITH REGARD TO THE REYES CASE, AS THE COURT WELL KNOWS IT

01:13PM 15   WAS AN OPTIONS BACKDATING CASE.  THE EVIDENCE THAT WAS ADMITTED

01:13PM 16   THERE EFFECTIVELY ENDED UP BEING THE AMOUNT OF PROFIT REALIZED

01:13PM 17   BY THE DEFENDANT, WHICH ENDED UP BEING ABOUT $2 MILLION.  AT

01:13PM 18   ONE POINT IT HAD A NOTIONAL VALUE OF $130 MILLION.

01:14PM 19        THE COURT EFFECTIVELY HELD THAT BECAUSE THAT WAS SO

01:14PM 20   INTEGRAL TO THE OFFENSE AND BECAUSE IT SHOWED THAT THERE WOULD

01:14PM 21   BE A FINANCIAL GAIN, THAT IT WAS NOT INAPPROPRIATE TO ADMIT

01:14PM 22   THAT EVIDENCE.

01:14PM 23        I MUST SAY IT WAS UNDER A CLEARLY ERRONEOUS STANDARD OF

01:14PM 24   REVIEW, BUT IT DOESN'T STRIKE ME THAT IF THE STANDARD OF REVIEW

01:14PM 25   HAD BEEN DIFFERENT, WE WOULD HAVE LIKELY SEEN A DIFFERENT

01:14PM 1     RESULT.

01:14PM 2          LET ME TAKE THOSE FACTS AND APPLY THEM TO WHAT I

01:14PM 3     ANTICIPATE WE'LL SEE HERE.  THERE ARE REALLY TWO DIFFERENT

01:14PM 4     KINDS OF FINANCIAL TRANSACTIONS THAT WE'LL BE TALKING ABOUT IN

01:14PM 5     THIS CASE.  ONE IS VERY SIMPLE, AND ONE IS A LITTLE MORE

01:14PM 6     COMPLEX.

01:14PM 7          OBVIOUSLY AS THE COURT WELL KNOWS AND THE DISCUSSION OVER

01:14PM 8     THE PAST FEW DAYS HAS PRESAGED, WE WILL SEE DISCUSSION OF

01:14PM 9     PATIENTS ENGAGING IN TRANSACTIONS TO BUY BLOOD TESTS.  THAT

01:14PM 10    REALLY IS NOT FOR THE MOST PART RELEVANT TO THIS ISSUE.

01:14PM 11         WE EXPECT THAT THE AMOUNTS PAID FOR THOSE TESTS WILL COME

01:14PM 12    INTO THE CASE, AND THAT'S OBVIOUSLY OF NO CONCERN WITH RESPECT

01:15PM 13    TO THIS.

01:15PM 14         THE ISSUE THAT TOUCHES ON THE ISSUE THAT WE'RE CONCERNED

01:15PM 15    ABOUT, BUT WHICH WILL LEAD TO ADMISSIBLE EVIDENCE, IS THE

01:15PM 16    FINANCIAL TRANSACTIONS BY WHICH INVESTORS MADE INVESTMENTS

01:15PM 17    WITHIN THERANOS.

01:15PM 18         OBVIOUSLY THE AMOUNTS OF THOSE INVESTMENTS WILL BE

01:15PM 19    REFLECTED IN EXHIBITS WHICH ARE ADMITTED AT TRIAL.  THERE WILL

01:15PM 20    BE TESTIMONY ABOUT THE AMOUNTS THAT INVESTORS EXHIBITED -- THAT

01:15PM 21    INVESTORS INVESTED WITHIN THERANOS.

01:15PM 22         AT THE SAME TIME THE JURY WILL LEARN THROUGH MULTIPLE

01:15PM 23    EXHIBITS HOW MUCH THAT INVESTMENT CONSTITUTES AS A PERCENTAGE

01:15PM 24    OF THE COMPANY, THE PERCENTAGE OF THE COMPANY THAT MS. HOLMES

01:15PM 25    OWNED, AND FROM THAT THE JURY WILL OBVIOUSLY BE ABLE TO AT

01:15PM  1    LEAST ON A SNAPSHOT BASIS OVER TIME GET A SENSE OF WHAT THE

01:15PM  2    NOTIONAL VALUE OF MS. HOLMES'S WEALTH IN THE COMPANY WAS AT

01:15PM  3    THAT POINT.

01:15PM  4         I DON'T THINK THERE'S ANY WAY TO AVOID THAT IN THIS CASE,

01:15PM  5    AND I DON'T SEEK TO AVOID IT BY THIS MOTION.  I THINK IF I DID

01:16PM  6    SEEK TO AVOID IT, THE REYES CASE WOULD PROBABLY SAY I SHOULD

01:16PM  7    LOSE THAT ARGUMENT.

01:16PM  8         THIS MOTION ISN'T ABOUT THOSE ISSUES.  THIS MOTION IS

01:16PM  9    ABOUT WHAT IS IN THE GOVERNMENT'S 404(B) NOTICE AND

01:16PM  10   SPECIFICALLY WHAT IS IN EXHIBIT 3 TO THE SAHARIA AFFIDAVIT.

01:16PM  11        WHAT THE GOVERNMENT WANTS TO DO IN THIS CASE AND WHAT MOST

01:16PM  12   CERTAINLY SHOULD NOT BE ADMITTED, AND ACTUALLY TO MY KNOWLEDGE

01:16PM  13   I'VE STRUGGLED TO FIND A CASE WHERE IT'S EVER BEEN ADMITTED, IS

01:16PM  14   TO TAKE EVIDENCE WHICH IS UNRELATED TO THE CRIME, WHICH IS HOW

01:16PM  15   WEALTH, WHICH IS IN THE GOVERNMENT'S VIEW DERIVED AT LEAST IN

01:16PM  16   PART FOR FRAUDULENT ACTIVITY, TO LOOK AT THAT AND TO ASK HOW

01:16PM  17   WAS THAT MONEY SPENT.  AND THAT IS CLEARLY PROHIBITED UNDER

01:16PM  18   NINTH CIRCUIT LAW.

01:16PM  19        THE ONLY ELEMENT OF WEALTH THAT IS RELEVANT IS THE ELEMENT

01:16PM  20   OF DEMONSTRATING THAT THERE WAS A FINANCIAL GAIN OR AN

01:17PM  21   ANTICIPATED FINANCIAL GAIN TO A DEFENDANT IN CONNECTION WITH

01:17PM  22   THE TRANSACTION.

01:17PM  23        SO WHAT ARE WE SPECIFICALLY TALKING ABOUT HERE THAT I'M

01:17PM  24   CONCERNED ABOUT?  IT'S ALL OF THE EVIDENCE THAT THE GOVERNMENT

01:17PM  25   GAVE US IN CONNECTION WITH ITS DISCLOSURE CONCERNING THE

01:17PM   1   ARGUMENTS IT WANTS TO MAKE ON WEALTH, THE REASON IT WANTS TO

01:17PM   2   MAKE THOSE ARGUMENTS, AND THE DOCUMENTS THAT IT WILL SEEK TO

01:17PM   3   EXIST.

01:17PM   4        WHAT ARE THEY?  I'M NOT SURE THAT'S ENTIRELY CLEAR FOR THE

01:17PM   5   COURT FROM THE PAPERS THAT WE SUBMITTED, SO I WANT TO MAKE SURE

01:17PM   6   THAT THE COURT UNDERSTANDS IT.

01:17PM   7        LARGELY THE EVIDENCE IS IN THE FORM OF EMAILS.  MANY OF

01:17PM   8   THE EMAILS ARE ESSENTIALLY DAILY TO-DO LISTS EITHER COMPLETED

01:17PM   9   OR ANTICIPATED FOR MS. HOLMES'S ASSISTANT.  THEY ARE, I WILL

01:17PM  10   SAY TO YOUR HONOR, A VAST SUBSECTION OF DAILY EMAILS, AND

01:17PM  11   THEY'VE BEEN TENDENTIOUSLY SELECTED BY THE GOVERNMENT FOR A

01:17PM  12   PARTICULAR PURPOSE.

01:18PM  13        WHAT IS THEIR PURPOSE?  THEY REFERENCE POTENTIALLY A

01:18PM  14   DINNER AT A RESTAURANT WHICH THE GOVERNMENT CHARACTERIZES, AND

01:18PM  15   PROBABLY APPROPRIATELY SO, AS A LUXURIOUS RESTAURANT.  THEY

01:18PM  16   MIGHT REFERENCE A PURCHASE OF CLOTHING, A PURCHASE OF JEWELRY,

01:18PM  17   ET CETERA.

01:18PM  18        I ANTICIPATE THAT MY FRIENDS WILL BE EAGER TO GIVE THE

01:18PM  19   COURT MORE DETAIL ON THAT, BUT I THINK IT'S SAFE TO SAY THAT

01:18PM  20   THEY ARE EMAILS DISCUSSING PURCHASES OF WHAT MS. HOLMES WORE,

01:18PM  21   HOW HER HAIR WAS DONE, WHAT SHOES SHE CHOSE TO WEAR, WHERE SHE

01:18PM  22   STAYED, HOW SHE FLEW, ET CETERA.

01:18PM  23        NOW, TAKE THAT EVIDENCE AND COMPARE IT TO THE REYES CASE.

01:18PM  24   WE HAVE NO IDEA WHAT THE CEO OF BROCADE, MR. REYES, WORE.  WE

01:18PM  25   HAVE NO IDEA WHERE HE STAYED, WE HAVE NO IDEA HOW HE TRAVELLED

01:18PM  1    BY FLIGHT.  NONE OF THAT EVIDENCE TO THE BEST THAT I CAN

01:18PM  2    REINSTRUCT DID THE GOVERNMENT EVEN SEEK TO INTRODUCE IN THAT

01:19PM  3    CASE.

01:19PM  4         AND WHY?  FOR THE OBVIOUS REASON THAT THE FOUNDATIONAL

01:19PM  5    PRINCIPLE AROUND THIS TYPE OF EVIDENCE IS THAT EVIDENCE WHICH

01:19PM  6    IS DESIGNED MERELY TO SHOW EITHER WEALTH ON THE PART OF THE

01:19PM  7    DEFENDANT IS PRECLUDED UNDER RULE 401 OR EVIDENCE WHICH IS

01:19PM  8    DESIGNED TO INFLAME THE JURY OR TO SUGGEST TO THE JURY THAT THE

01:19PM  9    DEFENDANT HAS THE LIFESTYLE OF A WEALTHY PERSON IS CONSIDERED

01:19PM  10   INADMISSIBLE UNDER 403.

01:19PM  11        THAT IS IN NO WAY UNDERMINED BY THE RULING IN REYES NOR BY

01:19PM  12   ANY OTHER CASE CITED BY THE GOVERNMENT.

01:19PM  13        NOW, I SAY WITH RESPECT TO ALL OF THIS, YOUR HONOR, I,

01:19PM  14   AGAIN, HAVE NO ISSUE WITH THE DETAILS OF THE TRANSACTIONS

01:19PM  15   COMING IN.  WE INTEND FULLY TO EXAMINE THE DETAILS OF THOSE

01:19PM  16   TRANSACTIONS.  WE INTEND TO EXAMINE TRANSACTIONS WHICH WERE

01:19PM  17   PROPOSED TO MS. HOLMES WHICH WOULD HAVE ALLOWED HER TO CONVERT

01:20PM  18   HER HOLDINGS IN THERANOS INTO SUBSTANTIAL FINANCIAL WEALTH

01:20PM  19   WHICH SHE REJECTED CONSISTENTLY OVER MANY YEARS.  ALL OF THAT

01:20PM  20   WILL BE PART OF THIS TRIAL.

01:20PM  21        BUT WHAT SHE WORE, WHERE SHE STAYED, HOW SHE FLEW, WHAT

01:20PM  22   SHE ATE HAS NOTHING TO DO WITH THIS TRIAL.  IF THAT COMES INTO

01:20PM  23   THIS TRIAL, WE WILL BE FORCED TO STAND IN THIS COURTROOM AND

01:20PM  24   INTRODUCE THE OTHER SEVERAL HUNDREDS OF EMAILS PREPARED BY HER

01:20PM  25   ASSISTANT SHOWING WHAT HER DAILY ACTIVITIES WERE TO

01:20PM 1    CONTEXTUALIZE THE IMPRESSIONS THAT THE GOVERNMENT WILL HAVE

01:20PM 2    SOUGHT TO CREATE.

01:20PM 3        SO THOSE ARE THE TWO CATEGORIES OF EVIDENCE THAT I THINK

01:20PM 4    ARE AT ISSUE HERE.

01:20PM 5        THE THIRD ISSUE IS WHAT SHOULD THE COURT'S CONCERNS BE

01:20PM 6    BEFORE WE GET TO THE EVIDENCE?  AND I WOULD ASK YOUR HONOR AS

01:20PM 7    YOU THINK ABOUT THESE MOTIONS, I THINK YOUR HONOR CAN RECOGNIZE

01:20PM 8    THAT WE'VE HAD WHAT I THINK HAS BEEN A FRUITFUL DISCUSSION OVER

01:20PM 9    A COUPLE OF DAYS ABOUT CORE ISSUES IN THE CASE.  WHAT IS THE

01:21PM 10   SCIENCE?  WHAT IS THE TECHNOLOGY?  DOES IT DO WHAT

01:21PM 11   REPRESENTATIONS SUGGEST THAT IT COULD DO, ET CETERA?

01:21PM 12       WE'RE NOW VERY FAR ON THE PERIPHERY, AND WE'RE IN THE AREA

01:21PM 13   THAT I THINK EXPERIENCE TEACHES US IS VERY DANGEROUS BECAUSE

01:21PM 14   COMMENT ON ISSUES SUCH AS WEALTH IS PRECISELY THE KIND OF THING

01:21PM 15   THAT HAPPENS IN A CASE THAT UNDERMINES ITS INTEGRITY.

01:21PM 16       SO I WOULD ASK YOUR HONOR NOT ONLY TO CONSIDER THE

01:21PM 17   EXCLUSION THAT WE'VE ASKED FOR OF THE EVIDENCE BUT TO DO WHAT I

01:21PM 18   KNOW YOUR HONOR ALWAYS DOES, WHICH IS TO POLICE COMMENT IN

01:21PM 19   OPENING ON THIS BECAUSE I THINK THIS IS THE KIND OF

01:21PM 20   INFLAMMATORY COMMENTARY THAT COULD DO GREAT DAMAGE TO THE

01:21PM 21   TRIAL.

01:21PM 22       MANY OF THE ISSUES THAT WE HAVE BEEN DISCUSSING HERETOFORE

01:21PM 23   ARE ISSUES THAT REALISTICALLY THEY PROBABLY ARE BEST DEFERRED

01:21PM 24   AT THIS POINT.

01:21PM 25       I THINK THIS ISSUE CRIES OUT FOR A LITTLE MORE SPECIFIC

01:22PM 1    COMMENTARY FROM THE COURT AND A LITTLE CLEARER PROHIBITION ON

01:22PM 2    WHAT MAY AND MAY NOT BE SAID IN OPENING.

01:22PM 3        AND I THINK, YOUR HONOR, THE CASES ARE ABUNDANTLY CLEAR

01:22PM 4    THAT COMMENTARY WHICH SUGGESTS EITHER THAT MS. HOLMES AND HER

01:22PM 5    SPENDING ARE MOTIVATIONS FOR A CRIME IS CLEARLY PROHIBITED AS

01:22PM 6    IS THE ARGUMENT THAT THE MERE DESIRE TO CREATE WEALTH IS

01:22PM 7    PROHIBITED BY CASES THAT THE NINTH CIRCUIT HAS CITED.

01:22PM 8        SO I'D BE HAPPY TO ANSWER ANY FURTHER ANY QUESTIONS THAT

01:22PM 9    THE COURT HAS, BUT THAT'S OUR POSITION ON THIS ISSUE.

01:22PM 10            THE COURT:  ALL RIGHT.  WHO STANDS TO RESPOND?

01:22PM 11        MR. BOSTIC.  THANK YOU.

01:22PM 12        MR. BOSTIC, THANK YOU.

01:22PM 13        WHAT I HEAR MR. DOWNEY SUGGESTING IS THAT HE DOES NOT WANT

01:22PM 14    THIS PROSECUTION TO BE ONE OF A LIFESTYLE OR CLASS PROSECUTION.

01:23PM 15    I THINK YOU PROBABLY HEARD HIM SAY THAT AS WELL.

01:23PM 16        IS THAT WHAT THE GOVERNMENT INTENDS?

01:23PM 17            MR. BOSTIC:  CERTAINLY NOT, YOUR HONOR.

01:23PM 18        THE GOVERNMENT DOES NOT INTEND TO PRESENT THE EVIDENCE IN

01:23PM 19    QUESTION FOR ANY IMPROPER PURPOSE.  THE GOVERNMENT IS AWARE OF

01:23PM 20    THE NINTH CIRCUIT LAW AND THE OTHER LAWS REGARDING THE

01:23PM 21    INTRODUCTION OF THIS KIND OF EVIDENCE.

01:23PM 22        BUT I HAVE TO SAY LISTENING TO MY COUNTERPART'S ARGUMENT,

01:23PM 23    I WAS STRUCK BY THE FACT THAT WHAT HE SEEMS TO BE ASKING FOR

01:23PM 24    TODAY FEELS MUCH NARROWER THAN WHAT THE MOTION COVERS AND WHAT

01:23PM 25    THE BRIEFING COVERS.

01:23PM 1      THE ARGUMENT TODAY WAS FOCUSSED ON A SPECIFIC SUBSET OF

01:23PM 2 EVIDENCE SPECIFYING OR SPECIFICALLY DEALING WITH EMAILS BETWEEN

01:23PM 3 THE DEFENDANT AND HER ASSISTANT REGARDING TASKS FOR THAT DAY.

01:23PM 4 THERE ARE SOME OF THOSE ITEMS ON THE GOVERNMENT'S EXHIBIT LIST.

01:24PM 5 I'LL ADDRESS THOSE SHORTLY, BUT I DIDN'T HEAR MY COUNTERPART

01:24PM 6 TALK ABOUT ITEMS LIKE THE DEFENDANT'S SALARY AT THERANOS, THE

01:24PM 7 OTHER TANGIBLE OR INTANGIBLE BENEFITS THAT SHE OBTAINED FROM

01:24PM 8 HER POSITION AT THERANOS WHEREAS READING THE BRIEFING IT SEEMS

01:24PM 9 LIKE THE DEFENSE WAS SEEKING TO EXCLUDE ALL OF THAT.

01:24PM 10      I AGREE WITH MR. DOWNEY THAT THE LAW ON THIS AREA IS QUITE

01:24PM 11 CLEAR AND THAT THE PARTIES ARE SIMPLY ON DIFFERENT PAGES WHEN

01:24PM 12 IT COMES TO WHAT EVIDENCE THE GOVERNMENT IS GOING TO INTRODUCE

01:24PM 13 AND FOR WHAT PURPOSE.  SO LET ME SEE IF I CAN UNTANGLE THAT FOR

01:24PM 14 THE COURT'S BENEFIT.

01:24PM 15      IT SHOULDN'T BE CONTROVERSIAL THAT IN A FRAUD CASE WHERE

01:24PM 16 THE OUTCOME TURNS ON THE DEFENDANT'S INTENT, THE PROSECUTION IS

01:24PM 17 GOING TO INTRODUCE EVIDENCE THAT WILL ALLOW THE JURY TO

01:24PM 18 UNDERSTAND NOT JUST WHAT THE DEFENDANT DID BUT WHY.

01:24PM 19      SO HERE IT WILL BE UP TO THE JURY TO DETERMINE WHETHER

01:25PM 20 THIS DEFENDANT ENGAGED IN SCHEMES TO DEFRAUD VICTIMS.  IN ORDER

01:25PM 21 FOR THE JURY TO PERFORM THAT FUNCTION, THEY'RE ENTITLED TO HEAR

01:25PM 22 FACTS REGARDING SPECIFIC ACTIONS THAT THE DEFENDANT TOOK AND

01:25PM 23 THE DEFENDANT'S MOTIVE AND INTENT.  AND WHEN IT COMES TO MOTIVE

01:25PM 24 AND INTENT, THAT NEEDS TO INCLUDE FACTS REGARDING THE BENEFITS

01:25PM 25 THAT DEFENDANT RECEIVED FROM CARRYING OUT THOSE FRAUDULENT

SCHEMES.

THIS IS VERY IMPORTANT EVIDENCE BECAUSE THE JURY WILL BE
ASKED TO JUDGE MENTAL STATE AT THE END OF THE TRIAL.  WHEN WE
ASK THEM TO MAKE FINDINGS ABOUT AN INDIVIDUAL'S MENTAL STATE,
IT MAKES SENSE FOR THEM TO EXAMINE THE RESULTS OF THE
DEFENDANT'S ACTIONS BECAUSE IT ONLY STANDS TO REASON THAT A
PERSON INTENDS THE RESULTS OF THEIR ACTIONS.

AND IN THIS CASE WHAT RESULTED FROM DEFENDANT'S FRAUDULENT
ACTIONS WERE THAT SHE OBTAINED A SIGNIFICANT AMOUNT OF WEALTH
AS WELL AS OTHER BENEFITS, BOTH TANGIBLE AND INTANGIBLE FROM
THAT FRAUD.

THE DEFENSE CITES CASES SAYING THAT THE GOVERNMENT IS NOT
REQUIRED TO PROVE THAT A DEFENDANT PERSONALLY BENEFITTED.  JUST
TO BE CLEAR, THOSE CASES ARE IN CONTEXT OF DEFENDANT'S
CHALLENGING CONVICTIONS FOR FAILURE TO PROVE AN INTENT TO
PERSONALLY BENEFIT OR THAT THE DEFENDANT PERSONALLY BENEFITTED.

THOSE CASES HAVE NOTHING TO DO WITH WHAT KIND OF EVIDENCE
IS PERMITTED AT TRIAL, WHAT KIND OF EVIDENCE IS RELEVANT.  AND
TO THE EXTENT THAT THE CASES ADDRESS THAT, THEY MAKE IT VERY
CLEAR THAT EVIDENCE OF A FRAUDSTER'S PERSONAL BENEFIT IS
SQUARELY WITHIN THE REALM OF WHAT IS RELEVANT AT TRIAL, WHAT IS
IMPORTANT FOR A JURY TO HEAR.

THERE'S ANOTHER LINE OF CASES BARRING INTRODUCTION OF
WEALTH EVIDENCE MERELY FOR THE PURPOSE OF SHOWING THAT A
DEFENDANT IS WEALTHY OR IMPOVERISHED.

01:26PM 1           THESE CASES, THOUGH, DEAL WITH A DEFENDANT'S FINANCIAL

01:26PM 2    SITUATION INDEPENDENT FROM THE CRIMINAL CONDUCT THAT IS

01:26PM 3    CHARGED.

01:26PM 4           SO LOOKING AT CASES LIKE HATFIELD AND MITCHELL, IT'S VERY

01:26PM 5    CLEAR THAT THOSE CASES INVOLVE WHETHER IT'S APPROPRIATE FOR THE

01:26PM 6    PROSECUTION TO BRING IN EVIDENCE OF WHETHER A DEFENDANT HAPPENS

01:27PM 7    TO BE RICH OR POOR SEPARATE FROM AND INDEPENDENT FROM THE

01:27PM 8    CHARGED CONDUCT IN THE CASE.

01:27PM 9           SO THE GOVERNMENT RECOGNIZES THAT, AND THERE'S NO

01:27PM 10   INTENTION BY THE GOVERNMENT HERE TO INTRODUCE EVIDENCE

01:27PM 11   REGARDING DEFENDANT'S FINANCIAL SITUATION INDEPENDENT FROM THE

01:27PM 12   FRAUD HERE.

01:27PM 13           THE COURT:  SO PARDON ME.

01:27PM 14           MR. BOSTIC:  YES.

01:27PM 15           THE COURT:  SO IS IT THE GOVERNMENT'S POSITION THAT

01:27PM 16   BECAUSE SHE HAD A POSITION AT THERANOS, SHE IS A SALARIED

01:27PM 17   EMPLOYEE, WHATEVER IT WAS, SHE RECEIVED COMPENSATION, AND THE

01:27PM 18   GOVERNMENT BELIEVES THAT SHE ENGAGED IN FRAUDULENT CONDUCT

01:27PM 19   WHILE SHE WAS IN THAT POSITION, HER SALARY SHOULD BE BROUGHT TO

01:27PM 20   THE JURY'S ATTENTION BECAUSE IT WAS ILL-GOTTEN GAIN?

01:27PM 21           MR. BOSTIC:  THAT'S CORRECT, YOUR HONOR.

01:27PM 22           AND THAT WOULD NOT BE TRUE FOR ANY CEO.  SO IF THE DEFENSE

01:27PM 23   COMPARES THE SITUATION TO OTHER HYPOTHETICAL AND ACTUAL CEO'S

01:28PM 24   OF SUCCESSFUL COMPANIES, AND CORRECTLY NOTES THAT CEO'S OF

01:28PM 25   SUCCESSFUL COMPANIES TEND TO LIVE VERY NICE LIFESTYLES.  THEY

01:28PM 1    EARN SIGNIFICANT AMOUNTS OF MONEY, THEY EXPERIENCE A VARIETY OF

01:28PM 2    DIFFERENT KINDS OF PERKS.  THERE'S NOTHING NECESSARILY

01:28PM 3    NEFARIOUS ABOUT THAT, AND THE GOVERNMENT DOESN'T INTEND TO

01:28PM 4    SUGGEST OTHERWISE.

01:28PM 5        BUT IN THIS CASE THE EVIDENCE WILL SHOW THAT THE FRAUD IN

01:28PM 6    THIS CASE WAS THE BUT-FOR CAUSE OF THE SUCCESS OF THERANOS.

01:28PM 7        SO THIS ISN'T A SITUATION WHERE THE COMPANY IS SUCCESSFUL

01:28PM 8    AND PROFITABLE ON ITS OWN, A FRAUD OCCURS, A DISCRETE FRAUD

01:28PM 9    OCCURS AT THAT COMPANY, AND THEN THE PROSECUTION SEEKS TO

01:28PM 10   INTRODUCE EVIDENCE OF THE FOUNDER'S WEALTH FROM THE COMPANY

01:28PM 11   OPERATIONS IN GENERAL.

01:28PM 12       THE COURT:  SO THE GOVERNMENT WOULD SAY OUR

01:28PM 13   ALLEGATION IS SHE SUBMITTED FRAUD, CONSPIRED TO DO SO, SHE WAS

01:28PM 14   WHATEVER HER POSITION WAS, AND IN THAT POSITION SHE EARNED THE

01:29PM 15   SALARY OF X, THAT'S WHAT HER POSITION IS, AND SHE WAS PAID

01:29PM 16   THAT, SHE EARNED THAT FROM THE COMPANY AND SHE WAS COMMITTING

01:29PM 17   FRAUD, AND SO YOU, JURY, CAN CONSIDER THAT AS MOTIVE FOR HER

01:29PM 18   CONTINUING TO DO A FRAUD BECAUSE SHE HAD A NICE SALARY AND THE

01:29PM 19   JOB SHE WAS DOING THERE WAS FRAUDULENT AND YOU CAN CONSIDER

01:29PM 20   THAT?

01:29PM 21       MR. BOSTIC:  I THINK IT'S PARTLY THAT, BUT IT'S LESS

01:29PM 22   ABOUT PRESERVING A SITUATION THAT DEFENDANT HAPPENED TO FIND

01:29PM 23   HERSELF IN, AND IT'S MORE ABOUT HOW SHE ENDED UP IN THAT

01:29PM 24   FAVORABLE POSITION TO BEGIN WITH.

01:29PM 25       SO IN THIS CASE --

01:29PM  1          THE COURT:  SO IS IT RELEVANT BEYOND -- I'M SORRY TO

01:29PM  2     INTERRUPT YOU.

01:29PM  3          BUT IS IT RELEVANT BEYOND THAT TO SAY THAT SHE DINNED AT

01:29PM  4     EXCLUSIVE RESTAURANTS, SHE SHOPPED AT FINE STORES, SHE HAD HER

01:30PM  5     HAIR DONE AT DIFFERENT PLACES, IS THAT ALL -- IT SEEMS LIKE

01:30PM  6     THAT'S DESIGNED TO ENGAGE A CLASS CONVERSATION AMONGST THE

01:30PM  7     JURORS, WHICH I THINK YOU WOULD AGREE WOULD BE A LITTLE

01:30PM  8     DANGEROUS.

01:30PM  9          MR. BOSTIC:  I UNDERSTAND THE DANGERS AROUND THAT

01:30PM  10    KIND OF EVIDENCE, YOUR HONOR, AND I THINK THE ANSWER DEPENDS.

01:30PM  11    THE ANSWER DEPENDS ON WHETHER THAT -- WHETHER THOSE ITEMS ARE

01:30PM  12    SIMPLY ARE, AS THE DEFENSE CHARACTERIZES THEM, EXPENSES, THE

01:30PM  13    WAY THAT THE DEFENDANT SPENT THE MONEY SHE EARNED THROUGH

01:30PM  14    COMPENSATION OR WHETHER THEY WERE ADDITIONAL PERKS THAT SHE

01:30PM  15    RECEIVED FROM THE COMPANY.  SO I THINK IT MAKES SENSE TO

01:30PM  16    SEPARATE THEM INTO THOSE TWO CATEGORIES.

01:30PM  17         TO THE EXTENT THAT THEY'RE SIMPLY ITEMS OF SPENDING,

01:30PM  18    THAT'S HOW THE DEFENDANT DECIDED TO SPEND THE COMPENSATION THAT

01:30PM  19    SHE RECEIVED, I THINK IT'S SUFFICIENT FOR THE PROSECUTION'S

01:30PM  20    PURPOSES SIMPLY TO INTRODUCE THE AMOUNT OF COMPENSATION SO THE

01:30PM  21    JURY UNDERSTANDS WHAT BENEFIT WAS ACTUALLY FLOWING FROM THE

01:30PM  22    FRAUD, AND I'LL GET BACK TO THAT IN A SECOND.

01:30PM  23         BUT AS TO OTHER ITEMS, FOR EXAMPLE, THE DEFENSE MOTION

01:31PM  24    REFERENCES TRAVEL AND LODGING, AND TO THE EXTENT THAT THE

01:31PM  25    DEFENDANT CHOSE TO SPEND HER COMPENSATION TAKING LUXURY TRIPS,

01:31PM 1    AGAIN, THAT CAN ALL FALL WITHIN THE AMOUNT OF THE COMPENSATION

01:31PM 2    ITSELF.  THERE'S NO NEED FOR THE GOVERNMENT TO INTRODUCE TO THE

01:31PM 3    JURY EVIDENCE OF HOW SHE SPENT HER MONEY.  THE GOVERNMENT

01:31PM 4    UNDERSTANDS THE CASE LAW ON THAT.  THAT'S NOT WHAT THIS IS

01:31PM 5    ABOUT.

01:31PM 6        TO THE EXTENT THAT THE COMPANY, HOWEVER, IN ADDITION TO

01:31PM 7    HER SALARY PROVIDED FOR HER LUXURIOUS TRAVEL ON PRIVATE JETS,

01:31PM 8    EXPENSIVE LODGING AND TRIPS, THESE OTHER TANGIBLE AND

01:31PM 9    INTANGIBLE BENEFITS AS A RESULT OF HER POSITION IN THE COMPANY

01:31PM 10   AND ULTIMATELY AS A RESULT OF THE SUCCESS OF THE COMPANY THAT

01:31PM 11   FLOWS FROM THE FRAUD, TO THE EXTENT THAT THAT'S THE CASE, THOSE

01:31PM 12   BENEFITS BELONG IN THE SAME CATEGORY AS THE COMPENSATION AND

01:31PM 13   THE JURY SHOULD --

01:31PM 14           THE COURT:  SHOULD WE KNOW THE DISTINCTION BETWEEN

01:31PM 15   THAT TREATMENT AT THERANOS AND THE TREATMENT OF ANY OTHER

01:32PM 16   SILICON VALLEY CEO IF WE DRIVE ON HIGHWAY 101 OR IF WE DRIVE

01:32PM 17   DOWN SANDHILL ROAD OR PAGE MILL ROAD, DO WE NEED TO PULL

01:32PM 18   COMPARATORS FROM ANY OF THESE GEOGRAPHIC REASONS TO SEE IF IT'S

01:32PM 19   DIFFERENT?

01:32PM 20           MR. BOSTIC:  NO, YOUR HONOR, BECAUSE THE POINT OF

01:32PM 21   THIS EVIDENCE IS NOT TO INVITE THAT COMPARISON OR TO MAKE ANY

01:32PM 22   POINT ABOUT HOW THE DEFENDANT'S COMPENSATION OR BENEFITS

01:32PM 23   STACKED UP AGAINST OTHER CEO'S OF SUCCESSFUL COMPANIES.

01:32PM 24       BUT, AGAIN, THE POINT HERE IS THAT THE SO-CALLED SUCCESS

01:32PM 25   OF THERANOS WAS ENTIRELY THE PRODUCT OF A FRAUD.  SO IT DOESN'T

01:32PM 1    MAKE SENSE TO COMPARE THIS TO OTHER COMPANIES THAT OPERATE

01:32PM 2    LEGITIMATELY AS FAR AS WE KNOW THAT PRODUCE PROFITS NOT AS A

01:32PM 3    RESULT OF FRAUD.

01:32PM 4         HERE, FOR EXAMPLE --

01:33PM 5              THE COURT:  WELL, WOULDN'T THAT CHANGE YOUR

01:33PM 6    ARGUMENT, THOUGH, IF ALL CEO'S ARE -- FLY FIRST CLASS AND THEIR

01:33PM 7    BOARDS ALLOW THEM TO STAY AT THE FOUR SEASONS, OR WHATEVER

01:33PM 8    EXCLUSIVE HOTEL WHEN THEY TRAVEL, THEY'RE GIVEN DIFFERENT

01:33PM 9    PRIVILEGES, TREATMENTS, BECAUSE THOSE BOARDS AND THOSE

01:33PM 10   COMPANIES FEEL THAT IT'S APPROPRIATE TO HAVE HIGH RECOGNITION

01:33PM 11   FOR THEIR COMPANY, IT PROVIDES PUBLIC CONFIDENCE IN THE

01:33PM 12   COMPANY, ALL OF THOSE TYPES OF THINGS?  DOESN'T THAT GO A

01:33PM 13   LITTLE TOO FAR?  IT'S SOMETHING THAT -- WE HAD A CONFERENCE

01:33PM 14   ABOUT THIS, I THINK ON DAY ONE, ABOUT COMPARING DIFFERENT

01:33PM 15   COMPANIES AND LIFESTYLES AND THINGS.

01:33PM 16        SO THAT'S MY CONCERN.

01:33PM 17             MR. BOSTIC:  SO, YOUR HONOR, THOSE KINDS OF PERKS

01:33PM 18   ARE CERTAINLY PROBABLY PART AND PARCEL OF BEING A CEO OF A

01:33PM 19   SUCCESSFUL MULTI BILLION DOLLAR COMPANY, AND FOR A TIME

01:33PM 20   THERANOS WAS VALUED AT $9 BILLION.  DURING THAT TIME PERIOD IT

01:33PM 21   CAN BE ARGUED THAT THE DEFENDANT ENJOYED THE PERKS THAT COME

01:34PM 22   WITH BEING A CEO OF A $9 BILLION COMPANY.

01:34PM 23        BUT THE QUESTION FOR THE CASE IS WHY WAS SHE THE CEO OF A

01:34PM 24   9 BILLION COMPANY?  WHY WAS THE COMPANY VALUED THAT HIGHLY?

01:34PM 25   WHY WAS IT SO SUCCESSFUL SUCH THAT SHE WAS ABLE TO ENJOY THESE

01:34PM  1   PERKS?

01:34PM  2       AND IT TURNS OUT THE REASON THE COMPANY WAS THAT

01:34PM  3   SUCCESSFUL WAS ENTIRELY THE RESULT OF THE FRAUD ITSELF.  AND

01:34PM  4   THAT'S NOT SPECULATION, BY THE WAY.

01:34PM  5       WE KNOW THAT WHEN THE TRUTH CAME OUT ABOUT THERANOS'S

01:34PM  6   LIMITATIONS, THE FALSE STATEMENTS THAT HAD BEEN GIVEN TO THE

01:34PM  7   PUBLIC EARLIER, THAT SUCCESS EVAPORATED, FRANKLY.  THE

01:34PM  8   COMPANY'S VALUE CRATERED, AND THOSE BENEFITS GRADUALLY WENT

01:34PM  9   AWAY, AND THE COMPANY SHUDDERED.

01:34PM  10       SO IT'S NOT SPECULATION TO SAY THAT THE SUCCESS OF THE

01:34PM  11   COMPANY, THE HYPE, THE EXCITEMENT THAT SURROUNDED THE COMPANY,

01:34PM  12   THE EASE OF WHICH IT ATTRACTED INVESTORS THAT ALLOWED IT TO

01:34PM  13   FUND AND PROVIDE THOSE BENEFITS TO THE DEFENDANT, THAT WAS ALL

01:34PM  14   A PRODUCT OF THE FRAUD.

01:35PM  15       SO IN CASES LIKE REYES IT'S SIMPLER.  IT'S SIMPLER TO

01:35PM  16   SEPARATE OUT THE DEFENDANT'S, LET'S SAY, LEGITIMATE INCOME JUST

01:35PM  17   BY VIRTUE OF BEING A CEO OF WHAT WOULD BE STILL BE A SUCCESSFUL

01:35PM  18   COMPANY EVEN WITHOUT THE BACKDATING OFFENSE IN THAT CASE, IT'S

01:35PM  19   EASY TO SEPARATE THAT FROM THE SPECIFIC BENEFITS AND THE PROFIT

01:35PM  20   THAT HAS BEEN OBTAINED BY THE DEFENDANT IN THAT CASE AS A

01:35PM  21   RESULT OF THE BACKDATING.

01:35PM  22           THE COURT:  RIGHT.  THAT'S A PERSONAL PROFIT TO THAT

01:35PM  23   DEFENDANT.

01:35PM  24           MR. BOSTIC:  EXACTLY.

01:35PM  25           THE COURT:  BY BACKDATING STOCK.  THAT WAS IMMEDIATE

01:35PM  1    MONEY INTO HIS BANK ACCOUNT, HIS POCKET.

01:35PM  2         MR. BOSTIC:  BUT THE SAME PRINCIPLE APPLIES HERE.

01:35PM  3    THE RESULT OF THE FRAUD IN THIS CASE WAS NOT THAT THE ENTIRE

01:35PM  4    LOSS AMOUNT WENT DIRECTLY TO THE DEFENDANT.

01:35PM  5         AS MR. DOWNEY ALLUDED TO, THE TRANSACTIONS IN THIS CASE

01:35PM  6    INVOLVE PATIENTS PAYING THERANOS FOR TEST RESULTS AND INVESTORS

01:35PM  7    WRITING CHECKS TO THERANOS SO THAT THEY COULD PURCHASE EQUITY

01:35PM  8    IN THE COMPANY.  NEITHER OF THOSE RESULTS IN MONEY FLOWING

01:36PM  9    DIRECTLY TO THE DEFENDANT.

01:36PM  10         SO WITHOUT ALLOWING THE JURY TO UNDERSTAND HOW THIS FRAUD

01:36PM  11   BENEFITTED THE DEFENDANT, THE JURY WILL BE LEFT WITH ONLY A

01:36PM  12   PARTIAL PICTURE OF HER INTENT IN THIS CASE.

01:36PM  13         THE FACT IS THAT THE EVIDENCE OF THE BENEFITS THAT FLOWED

01:36PM  14   TO MS. HOLMES FILL IN THE LAST PIECE IN THAT PUZZLE.  THEY MAKE

01:36PM  15   IT CLEAR TO THE JURY HOW THIS BENEFIT ACTUALLY -- EXCUSE ME,

01:36PM  16   HOW THIS FRAUD ACTUALLY DID BENEFIT THE DEFENDANT WHICH IN TURN

01:36PM  17   BECOMES ADMISSIBLE EVIDENCE OF HER INTENT.

01:36PM  18         THE COURT:  SO IS IT ENOUGH TO SAY THAT SHE MADE

01:36PM  19   WHATEVER, INSERT HER SALARY HERE?  WHY ISN'T THAT ENOUGH?

01:36PM  20         MR. BOSTIC:  SO, YOUR HONOR, I THINK THAT'S PART OF

01:36PM  21   IT.  COMPENSATION SHOULD CERTAINLY BE ADMISSIBLE.

01:36PM  22         AGAIN, THE FAIR INFERENCE FROM THE JURY IS THAT SHE WOULD

01:36PM  23   NOT HAVE RECEIVED THIS FAIRLY HIGH COMPENSATION IN LINE WITH

01:36PM  24   CEO'S OF OTHER MULTI BILLION DOLLAR COMPANIES, BUT SHE WOULD

01:36PM  25   NOT HAVE RECEIVED THIS HIGH COMPENSATION WERE IT NOT FOR THE

01:37PM 1    FRAUD THAT CREATED THAT SUCCESS IN THAT COMPANY.

01:37PM 2        SO COMPENSATION IS ONE CATEGORY.  HER OWNERSHIP OF STOCK

01:37PM 3    IN THE COMPANY IS ANOTHER AND THE VALUE OF THAT STOCK.

01:37PM 4        AS A DIRECT AND PREDICTABLE AND INTENDED RESULT OF THE

01:37PM 5    FRAUD, THE VALUE OF THE STOCK OF THERANOS SKYROCKETED AND AT

01:37PM 6    SOME POINT AT LEAST ON PAPER THE DEFENDANT WAS ONE OF THE

01:37PM 7    WEALTHIEST PEOPLE IN THE WORLD.  SHE WAS A BILLIONAIRE.  THE

01:37PM 8    JURY SHOULD BE ENTITLED TO KNOW ABOUT THAT.  THAT IS CERTAINLY

01:37PM 9    PART OF THE MOTIVE EVIDENCE IN THIS CASE, AND IT HELPS EXPLAIN

01:37PM 10   WHY THE DEFENDANT TOOK THE ACTIONS THAT SHE DID.

01:37PM 11       ANOTHER CATEGORY WE'VE ALREADY DISCUSSED:  COMPANY PERKS.

01:37PM 12   SO THAT INCLUDES TRAVEL PAID FOR BY THE COMPANY, LODGING, AND

01:37PM 13   USE OF AN ASSISTANT FALLS WITHIN THAT.

01:37PM 14       YOU HEARD MR. DOWNEY REFERENCE WHAT WE EXPECT TO BE A

01:37PM 15   PROMINENT FEATURE OF THE DEFENSE AT TRIAL WHICH IS EVIDENCE

01:37PM 16   TENDING TO SHOW THAT THE DEFENDANT WAS MOTIVATED BY EITHER

01:37PM 17   ALTRUISTIC REASONS OR AT LEAST REASONS INDEPENDENT OF

01:38PM 18   ACCUMULATING WEALTH.

01:38PM 19            THE COURT:  THIS IS A DIFFERENT POINT, AND THIS IS

01:38PM 20   SOMETHING THAT I HAVE INTEREST IN, AND I WAS GOING TO ASK.

01:38PM 21       MR. WADE WILL PROBABLY COME TO THE LECTERN BY INVITATION

01:38PM 22   IN JUST A MOMENT BECAUSE IT MIGHT CHANGE THINGS IF THERE IS

01:38PM 23   EVIDENCE WHERE MS. HOLMES EXPRESSED I'M IN THIS NOT FOR PROFIT,

01:38PM 24   I'M IN THIS BECAUSE I BELIEVE IN THE GOOD OF THE WORLD, I HAVE

01:38PM 25   ALTRUISTIC INTEREST IN DOING WHAT I'M DOING, AND I TAKE NO

01:38PM 1    PERSONAL PROFIT.

01:38PM 2         DOES THAT CHANGE THINGS, MR. WADE?

01:38PM 3         I'M SORRY, MR. BOSTIC, TO INTERRUPT YOU.  IT'S A GOOD TIME

01:38PM 4    TO HAVE THIS QUESTION ANSWERED.

01:38PM 5         MR. BOSTIC:  OF COURSE, YOUR HONOR.

01:38PM 6         MR. DOWNEY:  FIRST OF ALL, LET ME SAY THAT I

01:38PM 7    APPRECIATE YOUR TAKING TEN YEARS OFF OF MY LIFE, BUT I'M

01:38PM 8    MR. DOWNEY.

01:38PM 9         THE COURT:  I BEG YOUR PARDON.  I'M SORRY.

01:38PM 10        MR. DOWNEY:  YOUR HONOR, I THINK THE REASON I BEGAN

01:38PM 11   WITH THE STRUCTURE OF THE TRANSACTION IS THAT'S REALLY THE

01:38PM 12   BEGINNING AND THE END OF THIS INQUIRY.  AND WITH RESPECT TO

01:39PM 13   MR. BOSTIC, I THINK HIS ANALYSIS OF IT SLIGHTLY MISSES IT.

01:39PM 14        IN THIS CASE THE LOSS SUFFERED, PUTATIVE LOSS SUFFERED BY

01:39PM 15   THE GOVERNMENT'S ALLEGED VICTIMS IS THE AMOUNT OF MONEY THAT

01:39PM 16   THEY PAID FOR THEIR INTEREST IN THERANOS THAT EXCEEDED WHATEVER

01:39PM 17   THE FAIR MARKET VALUE OF THERANOS WAS AT THE TIME THAT THEY

01:39PM 18   BOUGHT THAT INTEREST.

01:39PM 19        THE GOVERNMENT SAYS THAT VALUE WAS SOMETHING LESS THAN

01:39PM 20   WHAT THEY PAID AND THEY SUFFERED THROUGH A FRAUD.

01:39PM 21        WHAT IS THE JURY ENTITLED TO KNOW FROM THAT?

01:39PM 22        THE JURY IS ENTITLED TO KNOW THAT A PERCENTAGE OF THAT

01:39PM 23   LOSS ACTUALLY FLOWED TO MS. HOLMES THROUGH HER OWNERSHIP OF A

01:39PM 24   SUBSTANTIAL PORTION OF THE EQUITY IN THERANOS.  THEY DON'T --

01:39PM 25   ACTUALLY THAT DOESN'T NEED TO REALLY BE ANALYZED FOR THEM.  I

01:39PM  1    THINK OUR JURORS ARE SMART, AND THEY WILL FIGURE THAT OUT.

01:39PM  2    THAT'S THE BEGINNING AND THE END OF HOW EVIDENCE AROUND THESE

01:40PM  3    WEALTH ISSUES IS RELEVANT IN THE GOVERNMENT'S CASE.

01:40PM  4        AS I LISTENED TO MR. BOSTIC, IT IS ALMOST FRIGHTFUL TO ME

01:40PM  5    WHAT HE THINKS CAN BE ADVERTISED TO THE JURY ABOUT THIS WHILE

01:40PM  6    BY PUSHING THE CART OUT OF THE BARN BEFORE THE HORSE, WHICH WE

01:40PM  7    HAVE HEARD ABOUT OVER THE PAST FEW DAYS.

01:40PM  8        HE'S NOT ENTITLED IN OPENING TO ASSUME THAT THERE'S A

01:40PM  9    FRAUD AND THAT HE COULD COMMENT ON THE EVIDENCE IN THIS WAY

01:40PM  10   EITHER BY FEATURING IT OR PROMISING THAT IT WILL DEMONSTRATE

01:40PM  11   SOMETHING WHICH IT CAN NEVER BE USED TO DEMONSTRATE.

01:40PM  12       SO REALLY PART OF MY EMPHASIS HERE IS I THINK WE HAVE TO

01:40PM  13   LOOK VERY CLOSELY AT THE CASES THAT ALL OF THE PARTIES

01:40PM  14   RECOGNIZE ARE THE RELEVANT CASES.

01:40PM  15       NOW, HE ANSWERED YOUR HONOR BY SAYING THAT MS. HOLMES'S

01:40PM  16   SALARY IS THE RELEVANT, OR HER COMPENSATION FROM THE COMPANY IS

01:40PM  17   THE RELEVANT METRIC OR INDICATOR OF HOW MUCH SHE PROFITED.

01:41PM  18       AT THE TIME THAT MOST OF THE TRANSACTIONS THAT WE'RE

01:41PM  19   TALKING ABOUT TOOK PLACE MS. HOLMES'S SALARY WAS A COUPLE

01:41PM  20   HUNDRED THOUSAND DOLLARS A YEAR, GENEROUS MONEY TO BE SURE, BUT

01:41PM  21   NOT SOMETHING WHICH IN THIS CONTEXT IS UNUSUAL.  AND, IN FACT,

01:41PM  22   IF ANYTHING, IT'S PROBABLY UNUSUAL IN BEING LESS THAN SOME OF

01:41PM  23   HER PEERS.

01:41PM  24       I THINK AFTER THE POINT IN TIME THAT MR. BOSTIC SUGGESTS

01:41PM  25   IS THE POINT IN TIME WHERE, QUOTE-UNQUOTE, "THE FRAUD WAS

01:41PM 1    DISCOVERED," THE BOARD OF DIRECTORS OF THERANOS VOTED TO

01:41PM 2    INCREASE MS. HOLMES'S SALARY, NOT TO DECREASE IT.

01:41PM 3        SO I THINK HIS SORT OF CAVALIER ASSUMPTION THAT WE SHOULD

01:41PM 4    BEGIN THIS CASE BY ASSUMING THERE WAS A FRAUD IS WHERE HE GOES

01:41PM 5    OFF TRACK IN MULTIPLE WAYS.

01:41PM 6        IF I MIGHT COMMENT ON A FEW OTHER THINGS HE SAID BUT

01:41PM 7    I'M HAPPY TO --

01:42PM 8            THE COURT:  WELL, YOU KNOW, MR. DOWNEY, I WANTED YOU

01:42PM 9    TO ANSWER MY QUESTION.

01:42PM 10           MR. DOWNEY:  YES.

01:42PM 11           THE COURT:  WHICH IS IF THERE WAS EVIDENCE THAT YOUR

01:42PM 12   CLIENT SAID THAT I'M IN THIS NOT JUST FOR PERSONAL GAIN, I'M

01:42PM 13   NOT IN IT AT ALL FOR THAT, IT'S PURELY ALTRUISTIC ON MY PART, I

01:42PM 14   INTEND TO BENEFIT THE WORLD -- THE BETTERMENT OF THE WORLD

01:42PM 15   THROUGH MY INVENTION IN WHAT OUR COMPANY DOES, DOES THAT THEN

01:42PM 16   OPEN THE DOOR TO THIS TYPE OF INFORMATION, WELL, ACTUALLY,

01:42PM 17   LADIES AND GENTLEMEN, SHE WASN'T BECAUSE SHE BENEFITTED

01:42PM 18   GREATLY?  SHE WENT TO X PLACES, SHE FLEW ON X AIRLINES, THOSE

01:42PM 19   TYPES OF THINGS.  WOULD THAT OPEN THE DOOR TO THAT?

01:42PM 20           MR. DOWNEY:  I THINK WHAT IT WOULD OPEN THE DOOR TO

01:42PM 21   IS WHAT I'VE ALREADY DESCRIBED.  I THINK WE HAVE TO RECOGNIZE

01:42PM 22   THAT WHEN AN INVESTOR DECIDED TO INVEST IN THERANOS, NOTIONALLY

01:42PM 23   THERE WAS SOME BENEFIT TO MS. HOLMES.

01:42PM 24       NOW, SHE MAY HAVE BEEN ASKING FOR THAT INVESTMENT BECAUSE

01:42PM 25   SHE WANTED TO GROW THIS COMPANY TO THE POINT WHERE IT WOULD

01:42PM 1    CHANGE THE WORLD.  WE SUGGEST THE EVIDENCE MAY DEMONSTRATE

01:43PM 2    THAT.

01:43PM 3        NEVERTHELESS, AS A LEGAL MATTER, WHAT IS RELEVANT FOR A

01:43PM 4    FRAUD CLAIM IS, IS THERE SOME FINANCIAL LOSS TO THE INVESTOR

01:43PM 5    AND SOME FINANCIAL GAIN TO THE PERSON MAKING THE INVESTMENT?

01:43PM 6        I THINK, YOUR HONOR, THAT EVIDENCE IS RELEVANT TO STATE OF

01:43PM 7    MIND ISSUES, BUT IT'S ACTUALLY NOT RELEVANT TO THE ISSUE THAT

01:43PM 8    WE'RE DISCUSSING TODAY.

01:43PM 9        THE COURT:  ALL RIGHT.  AND I THINK IT SOUNDS LIKE

01:43PM 10   YOUR GRAVE CONCERN IS THAT THIS COMING IN AT OPENING.

01:43PM 11       MR. DOWNEY:  WELL, FOR SURE, YOUR HONOR, BECAUSE I

01:43PM 12   THINK AS THE TRIAL PROGRESSES, I THINK IT WILL BE A LITTLE BIT

01:43PM 13   EASIER TO POLICE THIS, BUT I DON'T WANT SOMETHING THAT --

01:43PM 14   PERHAPS I LEFT SOME CONFUSION IN THE COURT'S MIND AS I DID IN

01:43PM 15   MR. BOSTIC'S MIND.

01:43PM 16       WE'RE ASKING FOR THE EXCLUSION OF THE EVIDENCE THAT IS

01:43PM 17   IDENTIFIED IN ITEM 21 OF THEIR 404(B) NOTICE.  I WOULD

01:43PM 18   CERTAINLY BE HAPPY TO GO THROUGH THAT EVIDENCE IN MORE DETAIL,

01:44PM 19   BUT I DON'T THINK IT WOULD REALLY IMPROVE THE COURT'S

01:44PM 20   PERCEPTION OF THESE ISSUES OR YOUR ABILITY TO MAKE A DECISION.

01:44PM 21       THE COURT:  ALL RIGHT.  THANK YOU.  MR. BOSTIC,

01:44PM 22   THANK YOU.

01:44PM 23       MR. BOSTIC:  I HEARD ONE THING THAT MR. DOWNEY SAID

01:44PM 24   THAT I WOULD LIKE TO RESPOND TO FIRST.  HE SAID THAT WHAT

01:44PM 25   MATTERS IN A FRAUD CLAIM, AND I'M PARAPHRASING, IS THE LOSS TO

01:44PM 1    THE VICTIM AND THE GAIN TO THE DEFENDANT.

01:44PM 2         THAT'S SIMPLY INCORRECT.  AND THE CASE LAW CITED BY THE

01:44PM 3    DEFENSE ESTABLISHES THAT IT'S INCORRECT.  IT'S NOT AN ELEMENT

01:44PM 4    OF A WIRE FRAUD CLAIM THAT THE GOVERNMENT PROVE LOSS TO THE

01:44PM 5    VICTIM OR PERSONAL GAIN BY THE DEFENDANT.

01:44PM 6         WHAT MATTERS IS THE DEFENDANT'S INTENT, AND MOTIVE IS

01:44PM 7    CLOSELY TIED INTO INTENT.

01:44PM 8         SO WHEN MR. DOWNEY SAYS THAT THE FOCUS NEED ONLY BE ON THE

01:44PM 9    TRANSACTIONS, WHAT CHECKS WERE WRITTEN BY WHICH INVESTORS AND

01:44PM 10   WHEN, AND THE MERE FACT THAT MS. HOLMES BENEFITTED FROM THAT BY

01:44PM 11   VIRTUE OF HER OWNERSHIP OF THE COMPANY, THAT MISSES THE POINT.

01:45PM 12   THIS IS NOT ABOUT ESTABLISHING LOSS TO THE VICTIMS.  THIS IS

01:45PM 13   ABOUT EXPLAINING AND PROVIDING THE JURY WITH THE FACTS THAT

01:45PM 14   EXPLAIN THE DEFENDANT'S MOTIVE TO ENGAGE IN THIS FRAUD.

01:45PM 15        AND IT'S THAT EXACT MISUNDERSTANDING THAT HIGHLIGHTS THE

01:45PM 16   DANGER HERE OF HIDING THAT EVIDENCE FROM THE JURY.  IF THE JURY

01:45PM 17   SEES ONLY THAT PEOPLE INVESTED IN THERANOS, IF THEY SEE ONLY

01:45PM 18   THAT THE DEFENDANT OWNED A PORTION OF THE COMPANY, IF THEY

01:45PM 19   HEAR, AS I'M SURE THE DEFENSE WILL WANT THEM TO KNOW, THAT

01:45PM 20   DEFENDANT NEVER CASHED OUT HER STOCK AND NEVER REAPED THE

01:45PM 21   WEALTH THAT SHE HAD ON PAPER, THE JURY COULD COME TO BELIEVE

01:45PM 22   THAT HER MOTIVATIONS FOR ENGAGING IN MISCONDUCT WERE SOMETHING

01:45PM 23   OTHER THAN PERSONAL ENRICHMENT, AND THAT'S SIMPLY NOT THE CASE

01:45PM 24   BECAUSE A FULL PICTURE OF THE BENEFITS THAT SHE OBTAINED BY

01:45PM 25   VIRTUE OF THE FRAUD SHOW THE OPPOSITE.

01:45PM 1        SO THE JURY ABSOLUTELY WILL HEAR ABOUT THE MONEY THAT

01:45PM 2    FLOWED FROM THE VICTIMS TO THERANOS, BUT THEY ALSO NEED TO

01:46PM 3    UNDERSTAND HOW THE MONEY THAT CAME TO THERANOS ACTUALLY

01:46PM 4    BENEFITTED THIS DEFENDANT INDIVIDUALLY BECAUSE AT THE END OF

01:46PM 5    THE DAY THE FOCUS IS ON HER MENTAL STATE.  SO THAT'S WHY --

01:46PM 6        THE COURT:  I ANTICIPATE, JUST LOOKING AT SOME OF

01:46PM 7    THE PLEADINGS THAT HAVE BEEN PRESENTED, I ANTICIPATE THAT THERE

01:46PM 8    IS GOING TO BE AT LEAST AN ATTEMPT TO INTRODUCE EVIDENCE OF

01:46PM 9    MS. HOLMES TALKING ABOUT THE COMPANY.  AND I MIGHT SEE VIDEOS

01:46PM 10   OR SOMETHING, THOSE TYPES OF THINGS, WHERE SHE SPEAKS ABOUT

01:46PM 11   WHAT THIS TECHNOLOGY IS, THE ADVANTAGES OF IT, THE UNIQUENESS

01:46PM 12   OF IT, ET CETERA, ET CETERA, IN REGARDS TO THE MARKET.

01:46PM 13       AND I'M JUST CURIOUS IF THIS IS WHERE THIS IS GOING TO

01:46PM 14   COME IN, SHE WENT TO SO AND SO AND SHE TRAVELLED FIRST CLASS.

01:46PM 15       WE GET INTO THAT, MR. BOSTIC, AND I HAVE SOME CONCERNS

01:46PM 16   ABOUT DO WE REALLY NEED TO KNOW THE ITINERARY?  WHAT IS THE

01:47PM 17   VALUE OF DID SHE STAY AT A FOUR SEASONS VIS-A-VIS A MOTEL 6?  I

01:47PM 18   GUESS I HAVE SOME CONCERNS ABOUT THAT.

01:47PM 19       MR. BOSTIC:  UNDERSTOOD, YOUR HONOR.

01:47PM 20       I THINK THERE CERTAINLY IS A LINE THAT SHOULD NOT BE

01:47PM 21   CROSSED WHEN DISCUSSING THIS KIND OF EVIDENCE.  I THINK THERE'S

01:47PM 22   A POINT AT WHICH THE POINT HAS BEEN MADE AND THERE IS NOT NEED

01:47PM 23   TO HARP ON THESE DETAILS.  IT IS CERTAINLY NOT THE GOVERNMENT'S

01:47PM 24   INTENTION TO MAKE THIS THE FOCUS AT TRIAL.

01:47PM 25       BUT THE JURY DOES NEED TO UNDERSTAND WHY SOMEONE WOULD DO

01:47PM 1    THIS, AND THE JURY NEEDS TO UNDERSTAND THE MOTIVE FOR THE

01:47PM 2    CHARGED FRAUD.

01:47PM 3        AND I UNDERSTAND MY COUNTERPART DOESN'T WANT TO ASSUME

01:47PM 4    THAT THERE IS A FRAUD HERE, BUT WE'RE TALKING ABOUT THE

01:47PM 5    GOVERNMENT'S CASE-IN-CHIEF.

01:47PM 6            THE COURT:  WELL, IT HASN'T BEEN PROVEN YET.

01:47PM 7            MR. BOSTIC:  I AM SORRY, YOUR HONOR?

01:47PM 8            THE COURT:  SHE ENJOYS THE BENEFIT OF THE

01:47PM 9    PRESUMPTION OF INNOCENCE.  THERE IS THAT.

01:47PM 10           MR. BOSTIC:  EXACTLY, YOUR HONOR.

01:47PM 11       BUT THE GOVERNMENT IS ENTITLED TO PUT ON ITS CASE-IN-CHIEF

01:47PM 12   THAT WILL GIVE THE JURY THE EVIDENCE NECESSARY TO MAKE ITS OWN

01:47PM 13   DECISION, AND THAT'S WHAT TRIAL IS ALL ABOUT.

01:47PM 14           THE COURT:  OF COURSE.

01:47PM 15           MR. BOSTIC:  WITHOUT THAT EVIDENCE, THE JURY MIGHT

01:47PM 16   BE CONFUSED ABOUT WHY THE DEFENDANT ENGAGED IN MISCONDUCT, AND

01:48PM 17   THAT'S WHY I THINK IT'S IMPORTANT FOR THE JURY TO HAVE A FULL

01:48PM 18   PICTURE.

01:48PM 19       AND I WAS GOING THROUGH THE CATEGORIES BEFORE THAT THE

01:48PM 20   EVIDENCE THAT THE GOVERNMENT THINKS ARE RELEVANT HERE.  WE

01:48PM 21   TALKED ABOUT COMPENSATION, STOCK IN THE COMPANY, THE PERKS THAT

01:48PM 22   WE WERE TALKING ABOUT, NOT THE MOST IMPORTANT CATEGORY, BUT IT

01:48PM 23   ALSO -- THOSE ITEMS ARE RELEVANT TO THE DEFENDANT'S DECISION

01:48PM 24   NOT TO CASH IN HER STOCK AND ENRICH HERSELF FURTHER.  THE PERKS

01:48PM 25   SHE WAS ENJOYING AS A RESULT OF HER POSITION AT THIS COMPANY,

01:48PM 1    WHOSE SUCCESS HAD BEEN BOLSTERED BY THE FRAUD, THE PERKS THAT

01:48PM 2    SHE WAS ENJOYING GREATLY REDUCE THE PRESSURE ON HER TO CASH IN,

01:48PM 3    SELL STOCK, AND MAKE MORE MONEY.

01:48PM 4         SO THEY ALSO -- THESE DETAILS PROVIDE A RESPONSE TO

01:48PM 5    EVIDENCE THAT THE DEFENDANT CHOSE NOT TO CASH IN HER STOCK,

01:48PM 6    CHOSE NOT TO ASK FOR A GREATER SALARY.  SO, AGAIN, NECESSARY TO

01:48PM 7    GIVE THE JURY THE COMPLETE PICTURE.

01:48PM 8         THE FINAL CATEGORY THAT WE HAVEN'T TALKED ABOUT, BUT IT'S

01:49PM 9    MENTIONED IN THE DEFENDANT'S BRIEF, IS LIFESTYLE EVIDENCE FOR

01:49PM 10   LACK OF A BETTER WORD.

01:49PM 11        THE GOVERNMENT SHOULD BE ENTITLED TO PUT IN EVIDENCE OF

01:49PM 12   THE INTANGIBLE BENEFITS THAT THE DEFENDANT REAPED FROM THE

01:49PM 13   FRAUD.  SPECIFICALLY, THE INCREASED CACHET AND POPULARITY THAT

01:49PM 14   SHE OBTAINED FROM BEING CEO OF THE COMPANY WHO'S REPUTATION HAS

01:49PM 15   BEEN ARTIFICIALLY INFLATED BY THE MISREPRESENTATIONS IN THIS

01:49PM 16   CASE.  THAT DOES NOT HAVE TO DO WITH HOW SHE SPENT HER MONEY.

01:49PM 17   SO THIS IS NOT CONTRARY TO THE CASE LAW CITED BY THE DEFENDANT.

01:49PM 18        THE COURT:  THAT SEEMS A LITTLE INTANGIBLE, DOESN'T

01:49PM 19   IT, HOW POPULAR SHE WAS?  IS THIS A -- YOU KNOW, HOW DO YOU

01:49PM 20   GAUGE THAT?  HOW DOES THAT MEASURE?  WHAT ARE THE METRICS FOR

01:49PM 21   THAT?

01:49PM 22        MR. BOSTIC:  SO I DON'T KNOW IF THERE ARE NUMBERS

01:49PM 23   THAT COULD BE ATTACHED TO IT, YOUR HONOR.

01:49PM 24        BUT, FOR EXAMPLE, THE FACT THAT THE DEFENDANT WAS A

01:49PM 25   SUBJECT OF A MOUNTAIN OF FAVORABLE PUBLICITY IS A FACT THAT

01:50PM 1    SHOULD BE PUT IN FRONT OF THE JURY, AND WE'LL TALK ABOUT THAT.

01:50PM 2    NEWS ARTICLES TO A CERTAIN EXTENT.  BUT FAVORABLE PUBLICITY,

01:50PM 3    FAVORABLE REPUTATION.

01:50PM 4         TO THE EXTENT THAT THE DEFENDANT RECEIVED -- BECAME A

01:50PM 5    CELEBRITY IN SILICON VALLEY, TO THE EXTENT SHE MET DIGNITARIES,

01:50PM 6    POLITICIANS AND OTHER BUSINESS LEADERS AS A RESULT, THESE

01:50PM 7    THINGS WERE TRULY WERE BENEFITS, INTANGIBLE, BUT BENEFITS

01:50PM 8    NONETHELESS OF THE FRAUDULENT SCHEME.

01:50PM 9         SO IF THE JURY IS ENTITLED TO KNOW ABOUT EVIDENCE RELEVANT

01:50PM 10   TO INTENT, THE JURY SHOULD BE ENTITLED TO KNOW ABOUT THOSE

01:50PM 11   INTANGIBLE BENEFITS AS WELL THAT THE DEFENDANT REAPED FROM THE

01:50PM 12   FRAUD.

01:50PM 13             THE COURT:  OKAY.

01:50PM 14             MR. DOWNEY:  I MUST SAY MR. BOSTIC'S COMMENTS

01:50PM 15   CONCERN ME.  I ACTUALLY EXPECTED THAT WHEN I MADE CLEAR THAT WE

01:50PM 16   HAVE NO OBJECTIONS TO THE DETAILS OF THESE TRANSACTIONS BEING

01:50PM 17   ADMITTED THAT HE WOULD BE SATISFIED, BECAUSE AFTER ALL, HE HAS

01:50PM 18   AVAILABLE TO HIM THE ARGUMENT THAT SHE WOULD HAVE ACHIEVED

01:51PM 19   SUBSTANTIAL FINANCIAL GAIN FROM THESE INVESTMENTS.

01:51PM 20        LET ME TELL YOU WHERE WE ARE THAT CONCERNS ME ABOUT WHAT

01:51PM 21   MR. BOSTIC JUST SAID.  WE DON'T HAVE EVIDENCE IN THE RECORD

01:51PM 22   FROM THE GOVERNMENT AS TO WHO PAID FOR THE BENEFITS THAT

01:51PM 23   MR. BOSTIC IS DESCRIBING.  WE DON'T HAVE A QUANTIFICATION OF

01:51PM 24   FAME OR CELEBRITY OR OTHER TABLOID TYPE OF COMMENTARY.  NONE OF

01:51PM 25   THIS DO WE HAVE OTHER THAN EMAILS DISCUSSING LUXURY ITEMS,

01:51PM 1    WHICH DISCUSS A LOT OF OTHER THINGS AS WELL, AND IT'S BEING PUT

01:51PM 2    IN FRONT OF THE JURY AND THE GOVERNMENT'S PROPOSAL TO ESTABLISH

01:51PM 3    THAT SHE WAS ILL-MOTIVATED BY A DESIRE FOR LUXURY AND A DESIRE

01:51PM 4    FOR FAME.

01:51PM 5         I THINK IT'S A VERY DANGEROUS AREA AND PARTICULARLY ODD

01:51PM 6    ONE FOR THE GOVERNMENT TO ENTER WHEN THE ARGUMENTS THAT ARE

01:51PM 7    AVAILABLE TO IT UNDER CERTAIN SCENARIOS ARE THERE TO BE TAKEN.

01:51PM 8         MR. BOSTIC:  YOUR HONOR, JUST BRIEFLY ON ONE OF

01:52PM 9    THOSE POINTS.

01:52PM 10        IT'S NOT THE CASE THAT THERE IS NO EVIDENCE ABOUT WHO PAID

01:52PM 11   FOR THE BENEFITS THAT THE GOVERNMENT IS REFERENCING.  FOR

01:52PM 12   EXAMPLE, AS TO TRAVEL, WITNESSES HAVE INFORMED THE GOVERNMENT

01:52PM 13   THAT THE COMPANY PAID FOR HOLMES'S TRAVEL.

01:52PM 14        SO THE FACT THAT THIS DEFENDANT TRAVELLED ON PRIVATE JETS,

01:52PM 15   FOR EXAMPLE, THE GOVERNMENT'S UNDERSTANDING BASED ON WITNESS

01:52PM 16   STATEMENTS IS THAT THAT WAS NOT PAID FOR BY THE DEFENDANT

01:52PM 17   INDIVIDUALLY BUT PAID FOR BY THE COMPANY.  SO THAT SHOULD BE

01:52PM 18   VIEWED AS PART OF HER COMPENSATION, PART OF THE BENEFITS SHE

01:52PM 19   REAPED.

01:52PM 20        THE COURT:  IS THERE A 403 ANALYSIS THAT I SHOULD

01:52PM 21   LOOK AT HERE AS WELL, MR. BOSTIC?

01:52PM 22        MR. BOSTIC:  SO, YOUR HONOR, TWO POINTS THERE.

01:52PM 23        I THINK THE QUANTITY OF THE EVIDENCE MATTERS, OR

01:52PM 24   POTENTIALLY MATTERS FOR 403 PURPOSES, AND I STATED BEFORE THE

01:52PM 25   GOVERNMENT'S COMMITMENT NOT TO BELABOR THIS POINT.

01:52PM 1        MR. DOWNEY'S POINT THAT IN THE GRAND SCHEME OF THINGS THE

01:52PM 2   DEFENDANT'S SALARY WAS RELATIVELY MODEST OR CERTAINLY COULD

01:52PM 3   HAVE BEEN MORE ARGUABLY REDUCES THE RISK OF PREJUDICE IN THIS

01:53PM 4   CASE.

01:53PM 5        THE FACT THAT SHE DIDN'T CASH IN HER STOCK FROM THE

01:53PM 6   COMPANY ARGUABLY REDUCES THE PREJUDICE FROM THE JURY KNOWING

01:53PM 7   ABOUT THAT AMOUNT.

01:53PM 8        AND SO I THINK GIVEN THE PROBATIVE VALUE OF THIS EVIDENCE,

01:53PM 9   THE FACT THAT WITHOUT IT THE JURY TRULY WILL HAVE AN INCOMPLETE

01:53PM 10  PICTURE OF THE MOTIVE IN THIS CASE AND WHY SOMEONE WOULD HAVE

01:53PM 11  ENGAGED IN THIS CONDUCT.  GIVEN THAT PROBATIVE VALUE, I THINK

01:53PM 12  THE POTENTIAL PREJUDICIAL VALUE IS EASILY OUTWEIGHED.

01:53PM 13        THE COURT:  MR. DOWNEY, I KNOW YOUR POSITION IS

01:53PM 14  DON'T LET ANY OF IT IN, BUT IF THE COURT IS LOOKING AT THIS,

01:53PM 15  SHOULD I LOOK THROUGH A 403 LENS?

01:53PM 16        MR. DOWNEY:  YOUR HONOR, I THINK YOU SHOULD,

01:53PM 17  PARTICULARLY IN THE FORM OF WHICH IT'S PRESENTED.

01:53PM 18        TO THE EXTENT THAT EXPENSE INFORMATION INCURRED BY A

01:53PM 19  COMPANY HAS COME INTO A CASE, IT'S TYPICALLY COME IN, IN THE

01:53PM 20  FORM WHERE A LEDGER FROM THE COMPANY IS CONSULTED, THE AMOUNT

01:53PM 21  OF THE EXPENSE IS LOOKED AT.  YOU CAN VERIFY FROM THAT WHETHER

01:53PM 22  IT WAS A CORPORATE EXPENSE OR NOT AND THEN WHETHER IT WAS A

01:54PM 23  LEGITIMATE CORPORATE OFFENSE OR NOT CAN BE DEBATED.

01:54PM 24        THERE'S NO QUESTION THAT THE WITNESSES WHO MR. BOSTIC

01:54PM 25  REFERENCES WILL TELL THIS JURY THAT MS. HOLMES WAS TRAVELLING

01:54PM 1    ALMOST EXCLUSIVELY ON COMPANY BUSINESS MUCH OF WHICH WAS NOT

01:54PM 2    ONLY ENCOURAGED BY THE BOARD BUT ARRANGED BY THE BOARD OF

01:54PM 3    DIRECTORS OF THIS ENTITY.

01:54PM 4        FOR US TO HAVE TO REBUT ALL OF THAT IS NOT ONLY PUTTING IN

01:54PM 5    FRONT OF THE JURY HIGHLY PREJUDICIAL EVIDENCE, BUT IT'S PUTTING

01:54PM 6    EVIDENCE BEFORE THE JURY THAT IS HIGHLY WASTEFUL OF THE JURY

01:54PM 7    AND COURT'S TIME.  SO I THINK THERE ARE SEVERAL SEPARATE 403

01:54PM 8    ISSUES THAT I THINK YOU HAVE TO LOOK AT.

01:54PM 9        THE COURT:  ALL RIGHT.

01:54PM 10       MR. BOSTIC:  YOUR HONOR, JUST TO CLARIFY THERE

01:54PM 11   BRIEFLY.  I THINK THAT MISAPPREHENDS THE PURPOSE FOR WHICH THE

01:54PM 12   EVIDENCE IS INTRODUCED.  THERE'S NOT GOING TO BE ANY

01:54PM 13   INSINUATION BY THE GOVERNMENT THAT THESE TRIPS, FOR EXAMPLE,

01:54PM 14   WERE IMPROPER OR THAT THE BOARD DIDN'T AUTHORIZE THEM.  THAT'S

01:55PM 15   NOT WHAT THIS CASE IS ABOUT.

01:55PM 16       BUT TO SAY THAT TRAVEL ON A PRIVATE JET, STAYING AT LUXURY

01:55PM 17   HOTELS, RECEIVING FAVORABLE ATTENTION FROM DIGNITARIES AND

01:55PM 18   POLITICIANS AND OTHER PROMINENT INDIVIDUALS, TO SAY THAT THESE

01:55PM 19   THINGS ARE NOT BENEFITS AND TO SAY THAT THEY DIDN'T FLOW FROM

01:55PM 20   WHAT THE GOVERNMENT ALLEGES TO BE A FRAUD SIMPLY DOESN'T HOLD

01:55PM 21   WATER.

01:55PM 22       THE COURT:  OKAY.

01:55PM 23       MR. DOWNEY:  WHAT MR. BOSTIC JUST SAID DECIDES THIS

01:55PM 24   MOTION FOR YOU, YOUR HONOR.  THE HOLDING OF THE REYES CASE IS

01:55PM 25   THAT WEALTH WHICH IS LEGITIMATELY INCURRED, AUTHORIZED WEALTH,

01:55PM 1    CANNOT BE USED TO ARGUE THAT A DEFENDANT ENGAGED IN CRIMINAL

01:55PM 2    ACTIVITY.

01:55PM 3         WHAT HE JUST SAID IS ACCURATE, AND IT PLACES THIS CASE

01:55PM 4    SQUARELY WITHIN REYES AND MITCHELL.

01:55PM 5              MR. BOSTIC:  I'M HAPPY TO RESPOND, YOUR HONOR,

01:55PM 6    OTHERWISE SUBMITTED.

01:55PM 7              THE COURT:  THANK YOU BOTH.

01:55PM 8              MR. DOWNEY:  THANK YOU.

01:55PM 9              THE COURT:  THANK YOU VERY MUCH.  THIS WILL BE UNDER

01:55PM 10   SUBMISSION.  THANK YOU BOTH.  AN ORDER WILL COME OUT WITH THE

01:55PM 11   OTHER MOTIONS.

01:55PM 12        NEXT IS DOCKET 566 AND 576, AND I BELIEVE THESE ARE

01:56PM 13   MS. HOLMES'S MOTIONS TO EXCLUDE EVIDENCE OF THERANOS'S TRADE

01:56PM 14   SECRETS PRACTICES AND EVIDENCE REGARDING THIRD PARTY TESTING

01:56PM 15   PLATFORMS.

01:56PM 16        GOOD AFTERNOON.  ARE YOU ANDREW LEMENS?

01:56PM 17             MR. LEMENS:  I AM ANDREW LEMENS.

01:56PM 18             THE COURT:  I HAVE A POST-IT HERE THAT SOMEBODY GAVE

01:56PM 19   ME, AND I THINK THIS IS TO INTRODUCE YOU.  I GUESS THEY WERE

01:56PM 20   SAYING I NEED POST-ITS BECAUSE I WILL CONFUSE MR. DOWNEY AND

01:56PM 21   MR. WADE.

01:56PM 22             MR. LEMENS:  I'M NOT GOING TO COMMENT ON THAT,

01:56PM 23   YOUR HONOR.  IT'S VERY NICE TO SEE YOU IN PERSON.

01:56PM 24             THE COURT:  THANK YOU.  THAT'S A CONVERSATION FOR

01:56PM 25   THEM ON THE FLIGHT HOME.

01:56PM 1        MR. LEMENS:  YOUR HONOR, ANDREW LEMENS FOR

01:56PM 2   ELIZABETH HOLMES.

01:56PM 3        THE COURT:  THANK YOU.

01:56PM 4        MR. LEMENS:  I WILL BE ADDRESSING BOTH MOTIONS.  THE

01:56PM 5   MOTION TO EXCLUDE EVIDENCE OF THERANOS'S TRADE SECRETS

01:56PM 6   PRACTICES, WHICH IS DOCKET 566; AND MOTION TO EXCLUDE CERTAIN

01:56PM 7   EVIDENCE RELATING TO THE MODIFIED DEVICES, WHICH IS 576.

01:56PM 8        I WAS GOING TO PROPOSE, YOUR HONOR, THAT WE TAKE THESE

01:56PM 9   SEPARATELY.  THERE ARE SOME OVERLAPPING ISSUES, BUT I THINK

01:57PM 10  DEALING WITH THE TRADE SECRETS CASE FIRST AND TRY AND CLEAN UP

01:57PM 11  WITH THE DEVICES.

01:57PM 12       THE COURT:  WELL, LET'S TALK ABOUT THE TRADE SECRETS

01:57PM 13  FIRST.  WE'RE IN SILICON VALLEY HERE, AND THERE ARE LOTS OF

01:57PM 14  THEM HERE.

01:57PM 15       MR. LEMENS:  I WILL NOT PRESUME TO -- I UNDERSTAND

01:57PM 16  YOUR HONOR IS PROBABLY DEEPLY FAMILIAR WITH THESE ISSUES, AND I

01:57PM 17  DON'T KNOW IF YOU HAVE ANYTHING SPECIFIC THAT YOU WANTED TO GET

01:57PM 18  INTO, OTHERWISE I COULD PROVIDE SOME --

01:57PM 19       THE COURT:  I THINK THE GOVERNMENT -- MR. LEACH, ARE

01:57PM 20  YOU SPEAKING FOR THE GOVERNMENT?  OH, I AM SORRY.  MR. SCHENK.

01:57PM 21       I SUPPOSE WHEN I STARTED THIS, MR. SCHENK, I LOOKED AT THE

01:57PM 22  PLEADINGS AND I -- YES, MAYBE YOU BETTER COME UP.  THANK YOU.

01:57PM 23       I WAS LOOKING AT THIS AND I WAS THINKING WE KNOW ABOUT

01:57PM 24  TRADE SECRETS, ALL OF US DO.  WE ALL HAVE FAMILIARITY WITH

01:57PM 25  THEM.  I SUPPOSE I'M TRYING TO DISCERN WHAT ARE THE -- WHAT IS

01:57PM 1    DIFFERENT ABOUT WHAT THIS COMPANY DID TO GUARD AS THEY'RE

01:57PM 2    REQUIRED TO DO, THE LAW REQUIRES COMPANIES TO PROTECT THEIR

01:58PM 3    PROPRIETARY SECRETS, AND WHAT IS DIFFERENT FROM WHAT THERANOS

01:58PM 4    DID THAT OTHER COMPANIES ARE DOING?

01:58PM 5         AND I DON'T MEAN, MR. LEMENS, TO CUT YOU OFF.  IF YOU WANT

01:58PM 6    TO SAY SOME WORDS ON THIS, PLEASE DO.  BUT THIS IS THE AREA AT

01:58PM 7    LEAST INITIALLY WHERE I THOUGHT MY THOUGHTS AND CONVERSATION

01:58PM 8    WOULD BE HELPFUL.

01:58PM 9         BUT DO YOU WANT TO ADD SOMETHING TO THIS, MR. LEMENS?

01:58PM 10        MR. LEMENS:  NO.  I THINK YOUR HONOR IDENTIFIED THE

01:58PM 11   ISSUE THAT WE'RE CONCERNED ABOUT, AND THAT'S THAT THERE IS A

01:58PM 12   LARGE AMOUNT OF CONDUCT IN THE GOVERNMENT'S 404(B) NOTICE AS TO

01:58PM 13   THESE THREE CATEGORIES, WHICH ALL ARE ROOTED IN TRADE SECRETS

01:58PM 14   PRACTICES, THAT IS, THE INNOCUOUS OR INNOCENT CONDUCT THAT THE

01:58PM 15   NINTH CIRCUIT HAS WARNED NOT TO INTRODUCE INTO CRIMINAL CASES

01:58PM 16   IN THIS MANNER.

01:58PM 17        THE GOVERNMENT TO DATE HAS IGNORED A LARGE SEGMENT OF ITS

01:58PM 18   404(B) NOTICE IN BRIEFING THIS MOTION.  THEY'VE GONE FROM 30 OR

01:59PM 19   MORE VIGNETTES THAT THEY SOUGHT TO INTRODUCE AT TRIAL TO 3 THAT

01:59PM 20   ARE ADDRESSED IN THEIR BRIEF, AND I THINK THE GOVERNMENT SHOULD

01:59PM 21   BE LIMITED TO THOSE THREE IF THEY COME IN AT ALL.

01:59PM 22        I THINK OUR CONCERN, YOUR HONOR, IS NORMALLY IN THESE

01:59PM 23   CASES, AND I BELIEVE THIS IS TRUE UNDER THE CIVIL CONTEXT AND I

01:59PM 24   WOULD EXPECT THE SAME HERE, YOU WOULD EXPECT TO SEE SOMEONE

01:59PM 25   WITH EXPERTISE IN CORPORATE PRACTICES, IN THE INDUSTRY, IN

01:59PM 1    TRADE SECRETS TO COME DRAW THE LINE BETWEEN WHAT IS PROPER AND

01:59PM 2    IMPROPER CONDUCT.

01:59PM 3          AND WE DON'T HAVE THAT HERE.  THERE'S NO EVIDENCE OR NO

01:59PM 4    DISCLOSURE OF SOMEONE WHO WOULD HELP THE JURY UNDERSTAND IF AND

01:59PM 5    TO WHAT EXTENT THE COMPANY CROSSED A LINE OR WENT BEYOND WHAT

01:59PM 6    WOULD BE CONSIDERED REASONABLE MEASURES.

01:59PM 7          OUR CONCERN IS THAT WITHOUT THAT, IT'S UNCLEAR HOW THAT

01:59PM 8    COMES IN.  SO THAT'S ISSUE ONE.

01:59PM 9          ISSUE TWO, I THINK WHAT THE GOVERNMENT IS TRYING TO SET UP

01:59PM 10   HERE IS TO PUT MS. HOLMES WITH THE BURDEN OF MAKING THAT

02:00PM 11   DISTINCTION.  THE ONLY EVIDENCE THAT SHOULD COME IN IS TO THE

02:00PM 12   EXTENT THAT A PRACTICE OR CONDUCT WAS IMPROPER.

02:00PM 13         THE GOVERNMENT HAS INDICATED IT WANTS TO INTRODUCE

02:00PM 14   STATEMENTS THAT THE COMPANY WAS VERY SECRETIVE OR HAD A SILO

02:00PM 15   CULTURE OR WAS MORE SECRETIVE THAN WHAT A PARTICULAR WITNESS

02:00PM 16   WOULD THINK.  THAT'S NOT ENOUGH TO THEN LEAVE IT TO THE DEFENSE

02:00PM 17   TO FORCE US TO TAKE ON THE BURDEN OF DISTINGUISHING WHAT WAS

02:00PM 18   PROPER CONDUCT AND WHAT WAS NOT.  I THINK IT FALLS TO THE

02:00PM 19   GOVERNMENT, IF THEY WANT TO INTRODUCE THIS EVIDENCE, TO SHOW

02:00PM 20   THIS IS THE LEGITIMATE CONDUCT.  AND THIS IS WHERE WE THINK

02:00PM 21   THEY CROSS THE LINE.

02:00PM 22             THE COURT:  OKAY.  MR. SCHENK.  THANK YOU.

02:00PM 23             MR. SCHENK:  A FEW THOUGHTS.  FIRST, TO BEGIN BY

02:00PM 24   ANSWERING THE COURT'S QUESTION, WHICH AS I UNDERSTAND IT IS

02:00PM 25   THAT IF THIS IS NORMAL SILICON VALLEY TRADE SECRET PROTECTION

02:00PM 1    PRACTICES, THEN WHAT IS THE RELEVANCE OF THE EVIDENCE?  WHY

02:01PM 2    ALLOW THE JURY TO HEAR THAT?

02:01PM 3         AND THE ANSWER REALLY IS TWO THINGS:  FIRST, IT'S -- LET'S

02:01PM 4    ASSUME FOR A MOMENT THAT CATEGORIES 7, 8, AND 12, WHICH ARE THE

02:01PM 5    CATEGORIES AT ISSUE HERE, INCLUDE DISCUSSIONS OF WHAT THE

02:01PM 6    DEFENSE CALLS ROUTINE TRADE SECRET PROTECTION PRACTICES, THE

02:01PM 7    GOVERNMENT HAS A DIFFERENT VERSION OF THAT, TOO.

02:01PM 8         THE GOVERNMENT'S VERSION IS THERANOS'S USE OF THE

02:01PM 9    NONDISCLOSURE AGREEMENTS WAS VERY AGGRESSIVE.  THERANOS'S USE

02:01PM 10   OF SILOING INFORMATION WAS VERY AGGRESSIVE.  THERANOS'S USE OF

02:01PM 11   HIDING INFORMATION WITHIN THE FOUR WALLS OF THERANOS FROM

02:01PM 12   CERTAIN EMPLOYEES WAS DONE TO PROTECT THAT INFORMATION FROM

02:01PM 13   GETTING OUT.

02:01PM 14        AGAIN, THE GOVERNMENT'S THEORY IS THAT THIS COMPANY WAS

02:02PM 15   COMMITTING FRAUD AND AS A RESULT THEY HAD TO USE CERTAIN

02:02PM 16   TACTICS THAT THEY'RE NOW SAYING WERE TRADE SECRET PRACTICES BUT

02:02PM 17   WERE, IN FACT, DONE TO PREVENT THE DISCOVERY OF THE FRAUD, AND

02:02PM 18   I CAN GIVE A COUPLE OF EXAMPLES.

02:02PM 19        IN THE SILOING CONTEXT, IT'S IMPORTANT THAT WE TALK ABOUT

02:02PM 20   THE TIMING OF THAT.  THE GOVERNMENT HAS INTERVIEWED FORMER

02:02PM 21   EMPLOYEES WHO SAY DURING, WHAT IN SOME BRIEFING BEFORE THE

02:02PM 22   COURT HAS BEEN DESCRIBED AS THE STEALTH PHASE, WHEN THERANOS

02:02PM 23   WAS MUCH MORE SECRETIVE, LET'S SAY THE FIRST 10 YEARS OF ITS

02:02PM 24   EXISTENCE, THERE WAS MUCH MORE FREE FLOW OF INFORMATION BY THE

02:02PM 25   EMPLOYEES WHEN THERANOS -- WHICH IS COUNTERINTUITIVE.  THEY

02:02PM 1  WERE DEEMED SECRETIVE AND YET WITHIN THE COMPANY YOU COULD

02:02PM 2  DISCUSS WITH YOUR COLLEAGUES, YOUR KEY CARD COULD GIVE YOU

02:02PM 3  ACCESS TO LOTS OF DIFFERENT ROOMS.  WHEN THERANOS PIVOTED, WHEN

02:02PM 4  THERANOS BECAME MORE AGGRESSIVE IN SEEKING PUBLIC ATTENTION,

02:02PM 5  IT, IN FACT, IMPOSED MANY OF THESE SILOS.  IT PREVENTED CERTAIN

02:03PM 6  EMPLOYEES FROM TALKING TO OTHER EMPLOYEES.  IT PREVENTED

02:03PM 7  CERTAIN EMPLOYEES FROM GETTING ACCESS TO CERTAIN LABS IN THE

02:03PM 8  BUILDING.

02:03PM 9       AND THE REASON IT DID THAT IS BECAUSE WHAT THEY WERE

02:03PM 10  TELLING TO THE WORLD, WHAT THEY WERE TELLING TO THE PUBLIC WAS

02:03PM 11  DIFFERENT THAN THE TRUTH WITHIN THE COMPANY.

02:03PM 12       AND AT THE TIME THERANOS WAS HIDING BEHIND TRADE SECRET

02:03PM 13  PRACTICES.  WE CAN'T TELL YOU MORE INFORMATION ABOUT WHAT WE'RE

02:03PM 14  DOING BECAUSE IT'S TRADE SECRET.

02:03PM 15       THE COURT:  SO THIS IS -- I'M SORRY TO INTERRUPT

02:03PM 16  YOU, MR. SCHENK.  SO THIS WILL BE TIME STAMPED, THE PROSECUTION

02:03PM 17  WILL TIME STAMP THE BEHAVIOR WITH SOMETHING ELSE THAT

02:03PM 18  THERANOS -- PERHAPS THE INABILITY, FROM YOUR POSITION, THE

02:03PM 19  INABILITY FOR THEM TO CONTINUE TO PRODUCE ACCURATE TESTING.

02:03PM 20  AND AS THAT STARTED TO UNFOLD AS WE'VE KNOWN FROM THE

02:03PM 21  ALLEGATIONS IN THE BRIEFING HERE, THE GOVERNMENT'S POSITION

02:03PM 22  HERE IS THAT'S WHEN THE SECRECY BECAME TIGHTER, TIGHTER OR THE

02:04PM 23  WAGON CIRCLED CLOSER.

02:04PM 24       MR. SCHENK:  YES, YOUR HONOR.

02:04PM 25       WHEN EVIDENCE OF THIS NATURE COMES IN AT TRIAL, LARGELY

02:04PM 1    EITHER THROUGH WITNESS TESTIMONY OR EMAILS, INTERNAL COMPANY

02:04PM 2    EMAILS, IT WILL BE DISCUSSING A PRACTICE AT A PARTICULAR TIME

02:04PM 3    AT THERANOS IN THE SORT OF DEVELOPMENT OR EVOLUTION OF THE

02:04PM 4    BUSINESS.

02:04PM 5         AND YOU CAN'T SAY, AS THE DEFENSE WANTS TO RIGHT NOW, ALL

02:04PM 6    OF THE PRACTICES WERE TRADE SECRET PROTECTION PRACTICES, AND,

02:04PM 7    THEREFORE, INAPPROPRIATE FOR THE JURY TO HEAR BECAUSE THAT'S

02:04PM 8    SIMPLY NOT TRUE.  THAT'S THE EXACT ARGUMENT THAT THEY MADE AT

02:04PM 9    THE TIME TO HIDE INFORMATION FROM THE PUBLIC TO PREVENT THE

02:04PM 10   DISCOVERY OF THE FRAUD.  I'M SORRY, WE CAN'T TELL YOU ANYTHING

02:04PM 11   ABOUT THE USE OF THIRD PARTY DEVICES BECAUSE THAT'S TRADE

02:04PM 12   SECRET PRACTICES.

02:04PM 13        IN FACT, THEY USE THAT SAME ARGUMENT THAT THEY'RE

02:04PM 14   PRESENTING NOW TO THE COURT TO PREVENT INVESTORS FROM LEARNING

02:04PM 15   MORE ABOUT WHAT WAS ACTUALLY OCCURRING AT THERANOS.

02:05PM 16        THERE ARE STORIES THAT ARE CITED IN THE GOVERNMENT'S

02:05PM 17   BRIEFING TO THE COURT ABOUT INDIVIDUALS COMING TO THERANOS,

02:05PM 18   THEN-VICE PRESIDENT BIDEN, AND DURING A VISIT THERE WERE

02:05PM 19   THERANOS TSP'S, THE THERANOS BOXES SET UP TO MAKE IT APPEAR

02:05PM 20   THAT THAT'S WHAT THEY USED TO TEST THE BLOOD.

02:05PM 21        THERE'S A SIMILAR STORY THAT IS PRESENTED IN THE

02:05PM 22   GOVERNMENT'S BRIEFING REGARDING INTERACTIONS THAT MS. HOLMES

02:05PM 23   HAD WITH ROGER PARLOFF, A REPORTER, WHERE MR. PARLOFF ASKED TO

02:05PM 24   VIEW A LAB AND IS TOLD, "REMEMBER WHEN YOU SAW THE ROOM WITH

02:05PM 25   ALL OF THE THERANOS BOXES IN IT, YOU ESSENTIALLY SAW THEM."

02:05PM  1        SO TO NOW SAY IT WOULD BE UNFAIR FOR THE GOVERNMENT AT

02:05PM  2    TRIAL TO GET TO INTRODUCE EVIDENCE OF HIDING THE LAB, OF

02:05PM  3    KEEPING TIGHT REINS AROUND THE LAB IS, AGAIN, FEEDING THE SAME

02:05PM  4    KIND OF ARGUMENTS THAT WERE USED AT THE TIME TO PREVENT

02:06PM  5    DISCLOSURE OF WHAT WAS ACTUALLY GOING ON AT THERANOS.

02:06PM  6        AND IT IS REASONABLE FOR THE JURY TO GET TO MAKE THEIR OWN

02:06PM  7    DETERMINATION ON THIS FACT ISSUE.

02:06PM  8        IS IT ACTUALLY REASONABLE TRADE SECRET PRACTICES AS THE

02:06PM  9    DEFENSE WANTS TO SAY IT IS OR WERE THESE EFFORTS TAKEN TO

02:06PM 10    FURTHER THE FRAUD?  DO THEY DEMONSTRATE THE INTENT?  DO THEY

02:06PM 11    DEMONSTRATE KNOWLEDGE OF THE INTENT?

02:06PM 12            THE COURT:  SO, MR. LEMENS, IS THIS JUST FACT

02:06PM 13    EVIDENCE?

02:06PM 14            MR. LEMENS:  I THINK THAT'S AN ENTIRELY NEW ARGUMENT

02:06PM 15    FROM THE GOVERNMENT, YOUR HONOR.  SO BEAR WITH ME, AND I'LL TRY

02:06PM 16    TO SORT THROUGH THAT.  I DON'T THINK THIS IS SOMETHING THAT WE

02:06PM 17    HAVE HEARD BEFORE.

02:06PM 18        AS TO SPECIFIC EXAMPLES THAT MR. SCHENK NOTED, THE

02:06PM 19    GOVERNMENT HAS PREVIOUSLY INDICATED THAT IT WOULD NOT PURSUE

02:06PM 20    THE NARRATIVE THAT IT PREVIOUSLY DISCLOSED WITH RESPECT TO THEN

02:06PM 21    VICE PRESIDENT BIDEN.  IF THAT'S BACK ON THE TABLE, I DON'T

02:07PM 22    KNOW, BUT I THINK WE NEED SOME CLARITY AS TO WHAT THE EVIDENCE

02:07PM 23    IS.

02:07PM 24        WITH RESPECT TO MR. PARLOFF, THAT'S CERTAINLY SOMETHING

02:07PM 25    THAT THE GOVERNMENT COULD HAVE CONTESTED IN ITS BRIEF.  IT DID

```
02:07PM    1    NOT.

02:07PM    2         BUT MORE BROADLY, THIS IDEA THAT IT CHANGES OVER TIME,

02:07PM    3    THIS IDEA THAT THERE ARE IMPROPER USE OF TRADE SECRETS

02:07PM    4    PRACTICES CALLS FOR THE EXPERT TESTIMONY OF SOMEONE OF

02:07PM    5    KNOWLEDGE AND EXPERTISE IN THAT FIELD, AND THE GOVERNMENT

02:07PM    6    DOESN'T HAVE THAT.  AND HE HAS NO -- MY COLLEAGUE HAS NO

02:07PM    7    RESPONSE TO THAT.

02:07PM    8         AND I DON'T THINK IT'S FAIR TO SAY WE'LL JUST LET THE JURY

02:07PM    9    DETERMINE WHAT WAS A REASONABLE PRACTICE.

02:07PM   10         WE'RE LOOKING BACK IN TIME.  THESE PRACTICES CHANGE OVER

02:07PM   11    TIME.  I THINK -- I'LL NOTE WITH NONDISCLOSURE AGREEMENTS IN

02:07PM   12    THE LAST SEVERAL YEARS THERE'S BEEN A SEA CHANGE IN HOW THOSE

02:07PM   13    ARE USED.  SOMEONE SHOULD NEED TO CONTEXTUALIZE THAT.

02:08PM   14         IT'S DIFFERENT PERIODS IN THE COMPANY'S EXISTENCE, WHAT

02:08PM   15    MR. SCHENK REFERS TO AS STEALTH MODE VERSUS -- THE PUBLIC PHASE

02:08PM   16    OF THE COMPANY'S WORK.

02:08PM   17         HOW THE COMPANY GREW OVER TIME AND WHEN CERTAIN INTERNAL

02:08PM   18    RESTRICTIONS WOULD OR WOULD NOT BE APPROPRIATE.  ALL OF THAT

02:08PM   19    CALLS FOR EXPERT TESTIMONY AND THERE ISN'T ANYTHING.

02:08PM   20         SO I THINK WE'RE JUST -- WE'RE SETTING OURSELVES UP FOR AN

02:08PM   21    INCREDIBLY CONFUSING NARRATIVE THAT SWEEPS IN A LARGE SWATH OF

02:08PM   22    THIS INNOCUOUS CONDUCT.

02:08PM   23              MR. SCHENK:  A COUPLE OF THOUGHTS.

02:08PM   24         YOUR HONOR, THE GOVERNMENT WANTS TO OFFER THIS EVIDENCE TO

02:08PM   25    SAY THAT THESE WERE PRACTICES AT THERANOS TO PREVENT DISCOVERY
```

02:08PM    1    OF THE FRAUD.

02:08PM    2         THE DEFENSE IS THE ONE WHO WANTS TO SAY THERE'S AN

02:08PM    3    INNOCENT EXPLANATION FOR ALL OF THIS, JURY, IT'S TRADE SECRET

02:08PM    4    PRACTICES.

02:08PM    5         THAT THEN, IN THE GOVERNMENT'S ESTIMATION, BECOMES A

02:09PM    6    LEGITIMATE FACTUAL DISPUTE REGARDING CERTAIN PRACTICES,

02:09PM    7    THERANOS DID X, IT SILOED INFORMATION, IT DENIED KEY CARD

02:09PM    8    ACCESS TO CERTAIN EMPLOYEES FROM THIS LAB OR THAT LAB.

02:09PM    9         THE GOVERNMENT PUTS THESE FACTS BEFORE THE JURY AND FROM

02:09PM   10    THOSE FACTS ARGUES THESE STEPS WERE TAKEN BECAUSE THERANOS HAD

02:09PM   11    TO, OTHERWISE THE FRAUD WOULD HAVE BEEN DISCOVERED.  THEY HAD

02:09PM   12    TO IMPOSE SILOING.  THEY HAD TO RESTRICT ACCESS.

02:09PM   13              THE COURT:  SO, MR. LEMENS, WHY ISN'T THIS JUST FACT

02:09PM   14    EVIDENCE, THIS IS THE WAY THE COMPANY WAS RUN, AND THE

02:09PM   15    GOVERNMENT'S POSITION IS THAT IT IS SINISTER THE WAY IT WAS RUN

02:09PM   16    AND, LADIES AND GENTLEMEN OF THE JURY, YOU SHOULD VIEW IT AS

02:09PM   17    SUCH?

02:09PM   18         AND YOU'LL STAND UP AND SAY NO.  THIS IS HOW SILICON

02:09PM   19    VALLEY OPERATES.  YOU PROTECT YOUR TRADE SECRETS, AND THIS IS

02:09PM   20    THE WAY IT'S DONE.  THAT'S REALLY WHAT IT IS.  THERE'S NOTHING

02:09PM   21    UNTOWARD ABOUT IT.

02:10PM   22         ISN'T THAT A FACTUAL ISSUE?

02:10PM   23              MR. LEMENS:  I DON'T THINK SO, YOUR HONOR.  CLEARLY

02:10PM   24    THERE ARE FACTS, BUT I DON'T THINK IT'S A FACTUAL DISPUTE.

02:10PM   25         I THINK FOR THE GOVERNMENT TO PRESENT THAT EVIDENCE IT HAS

02:10PM   1      TO SPECIFICALLY DO IT THROUGH 404(B) WHEN WE ARE VERY FAR AWAY

02:10PM   2      FROM THE CORE ALLEGATIONS IN THE INDICTMENT.

02:10PM   3              THE COURT:  NO.  RIGHT.  I'M SUGGESTING IT IS NOT.

02:10PM   4      IT'S OUTSIDE OF THE 404(B) ARENA.  IT'S JUST PURE FACT EVIDENCE

02:10PM   5      AND FAIR COMMENT FROM BOTH SIDES ON THE EVIDENCE.

02:10PM   6              MR. LEMENS:  YEAH.  I THINK IF IT'S GOING TO DO

02:10PM   7      THAT, THE ONLY ALLEGATION IS WHEN IT WAS DONE IMPROPERLY.  AND

02:10PM   8      FOR IT TO BE IMPROPER, YOU HAVE TO GET BEYOND THE BOUNDS OF

02:10PM   9      WHAT ARE REASONABLE TRADE SECRETS MEASURES.  I DON'T

02:10PM   10     THINK ANYONE --

02:10PM   11             THE COURT:  WELL -- I'M SORRY.

02:10PM   12     ISN'T IT CIRCUMSTANTIAL EVIDENCE?  CAN'T THEY ARGUE, I'M

02:10PM   13     NOT SAYING IT IS, BUT WOULDN'T THEY BE ABLE TO ARGUE

02:10PM   14     CIRCUMSTANTIALLY THE WAGON IS NARROWED WHEN THE CART STARTED

02:11PM   15     FALLING.  PARDON ME, I'LL JUST PUT IT THAT WAY TO UNDERSTAND

02:11PM   16     WHAT WE'RE TALKING ABOUT.

02:11PM   17     CAN'T THEY ARGUE THAT IS CIRCUMSTANTIAL EVIDENCE, LADIES

02:11PM   18     AND GENTLEMEN, AND YOU SHOULD CONSIDER THAT THE WAGON CIRCLED

02:11PM   19     TIGHTER WHEN THIS HAPPENED, THAT THERE'S A UNIQUE TIME STAMP AS

02:11PM   20     TO THOSE TWO EVENTS?

02:11PM   21             MR. LEMENS:  I DON'T -- WE'RE TALKING.

02:11PM   22             THE COURT:  I'M TAKING YOU WAY OFF OF YOUR ARGUMENT

02:11PM   23     AND YOUR PRESENTATION, AND I DIDN'T MEAN TO DO THAT.

02:11PM   24             MR. LEMENS:  NO.  NO.  LET ME JUST KIND OF BRING IT

02:11PM   25     BACK TO SAY THAT THERE IS LEGITIMATE CONDUCT THROUGHOUT THE

02:11PM 1    COMPANY'S EXISTENCE.  I DON'T THINK THERE'S A DISPUTE THAT THEY

02:11PM 2    WERE DEVELOPING TECHNOLOGY, THAT THERE WAS A RESEARCH AND

02:11PM 3    DEVELOPMENT PRACTICE, THAT THERE WERE THINGS HAPPENING AT

02:11PM 4    THERANOS.

02:11PM 5         AND I DON'T KNOW HOW IT'S PERMISSIBLE TO SHIFT THAT BURDEN

02:11PM 6    TO US TO DEFEND THE LEGITIMATE CONDUCT BECAUSE I THINK THE

02:11PM 7    CONTEMPORANEOUS EVIDENCE SHOWS THAT THERE WERE TRADE SECRETS

02:11PM 8    CONCERNS, THERE WAS LITIGATION INSTITUTED BY THE COMPANY VERY

02:11PM 9    EARLY ON IN ITS EXISTENCE TO PROTECT ITS TRADE SECRETS FROM

02:12PM 10   DEPARTING EMPLOYEES.

02:12PM 11        SO WHEN THERE IS LEGITIMATE TRADE SECRET CONCERNS, AND THE

02:12PM 12   GOVERNMENT WANTS TO BLOW PAST THAT AND MAKE IT ALL SINISTER, I

02:12PM 13   THINK WE GET INTO, EVEN IF IT'S FACT EVIDENCE, EVEN IF WE'RE

02:12PM 14   OUTSIDE OF 404(B), WE HAVE GOT 403 CONCERNS THAT THE JURY IS

02:12PM 15   GOING TO SIT HERE HEARING THIS FRAMED IN A WAY BY THE

02:12PM 16   GOVERNMENT, AND WE'RE GOING TO INTRODUCE EVIDENCE OF LEGITIMATE

02:12PM 17   CONDUCT, BUT THAT SOUNDS, WHEN PRESENTED, UNFAIRLY PREJUDICIAL

02:12PM 18   AND WITH VERY LITTLE RELEVANCE TO THE REST OF THE CASE.

02:12PM 19             THE COURT:  MR. SCHENK.

02:12PM 20             MR. SCHENK:  THE COURT SHOULD ADMIT THIS EVIDENCE

02:12PM 21   BECAUSE IT IS INTEGRAL EVIDENCE AS TO HOW THERANOS WAS ABLE TO

02:12PM 22   COMMIT A FRAUD, HOW IT WAS ABLE TO SILO ITS EMPLOYEES, HOW IT

02:12PM 23   WAS ABLE TO DENY CERTAIN INFORMATION FROM ESCAPING THE FOUR

02:12PM 24   WALLS OF THERANOS.

02:12PM 25        SILOING, FOR INSTANCE, IS RELEVANT BECAUSE TWO PEOPLE WHO

02:13PM 1      FLEW ABOVE THE SILO WERE THE TWO CONSPIRATORS, MS. HOLMES AND

02:13PM 2      MR. BALWANI.

02:13PM 3           SO LOTS OF OTHER EMPLOYEES GOT SILOED BUT PEOPLE WHO HAD

02:13PM 4      THE OVERARCHING 36,000 FOOT VIEW WERE MS. HOLMES AND

02:13PM 5      MR. BALWANI, AND THE GOVERNMENT SHOULD BE ALLOWED TO PRESENT

02:13PM 6      THAT EVIDENCE TO THE JURY AND THEN ARGUE, AS THE COURT JUST

02:13PM 7      SAID, BEARING INFERENCES FROM THAT EVIDENCE.

02:13PM 8           AND I'M NOT FOLLOWING THE 403 ANALYSIS.  IT'S PREJUDICIAL

02:13PM 9      IN THAT IT'S RELEVANT, BUT IT'S NOT UNFAIRLY PREJUDICIAL.  IT'S

02:13PM 10     EVIDENCE FROM WHICH THE JURY CAN SEE HOW BUSINESS WAS CONDUCTED

02:13PM 11     AT THERANOS AND HOW IT WAS THAT THE FRAUD WAS ALLOWED TO EXIST,

02:13PM 12     HOW INFORMATION WAS KEPT WITHIN THE FOUR WALLS OF THERANOS AND

02:13PM 13     OTHERS WERE DENIED ACCESS TO THAT INFORMATION.

02:13PM 14               THE COURT:  MR. LEMENS, YOU WANT TO --

02:13PM 15               MR. LEMENS:  MAYBE GO BACKWARD ON THIS.

02:13PM 16               THE COURT:  YOU DO, YOU DO.  IT'S YOUR MOTION.

02:13PM 17               MR. LEMENS:  RIGHT.  AND I THINK MAYBE JUST, YOU

02:13PM 18     KNOW, WE'VE HEARD SOME NEW THEORIES TODAY, AND I WOULD REMIND

02:14PM 19     THE COURT WE HAVE BRIEFED THIS, THE GOVERNMENT HAS TAKEN ITS

02:14PM 20     POSITION, AND I THINK THE COURT SHOULD HOLD IT TO ITS PRIOR

02:14PM 21     REPRESENTATIONS.

02:14PM 22          I THINK THE ISSUES AND ESPECIALLY THE LEGITIMATE PRACTICES

02:14PM 23     ARE PROBLEMATIC WHEN INTRODUCED IN THE WAY THAT THE GOVERNMENT

02:14PM 24     IS SUGGESTING.

02:14PM 25          AND I DON'T SEE HOW A WITNESS CAN COME ON TO THE STAND AND

02:14PM 1    SAY I THOUGHT THE COMPANY WAS VERY SECRETIVE AND NOT TO BE

02:14PM 2    RELEVANT WITHOUT -- AND NOT TO BE INCREDIBLY PREJUDICIAL TO THE

02:14PM 3    DEFENSE WHEN WE THEN TAKE ON -- HAVE TO TAKE ON THE BURDEN OF

02:14PM 4    JUSTIFYING ALL OF THE PRACTICES.  I THINK IT'S FOR THE

02:14PM 5    GOVERNMENT TO SORT OUT WHICH PIECE OF THAT IS THE VERY PART.

02:14PM 6         THE COURT:  IF THE WITNESS SAYS I'VE WORKED IN

02:14PM 7    VARIOUS STARTUPS IN SILICON VALLEY AND I'VE NEVER, EVER

02:14PM 8    EXPERIENCED THE SHELTERING IN PLACE, THE SECRECY THAT I

02:14PM 9    EXPERIENCED DURING MY TENURE AT THIS COMPANY, IS THAT RELEVANT?

02:14PM 10        MR. LEMENS:  I THINK IF THE GOVERNMENT WOULD WANT TO

02:15PM 11   PROFFER THAT PERSON AS AN EXPERT, WE COULD GO THROUGH THE

02:15PM 12   PROCESS OF TESTING THEIR OPINIONS.

02:15PM 13        I THINK WHERE I WAS GOING TO GO, AND MAYBE WE'RE ON THE

02:15PM 14   SAME PAGE HERE, IS IF THIS EVIDENCE WAS GOING TO COME IN

02:15PM 15   THROUGH A PARTICULAR WITNESS, MAYBE WE DO NEED TO DO THIS ON A

02:15PM 16   CASE-BY-CASE BASIS BEFORE THAT WITNESS TESTIFIES, UNDERSTANDING

02:15PM 17   WHAT THE GOVERNMENT IS PROFFERING ABOUT WHAT THEY'RE GOING TO

02:15PM 18   SAY ON THIS MATTER AND WHAT THE BURDEN LOOKS LIKE, WHAT THE

02:15PM 19   PREJUDICE LOOKS LIKE, WHETHER WE'RE GOING TO CROSS INTO

02:15PM 20   EXPERTISE ABOUT TRADE SECRET PRACTICES.

02:15PM 21        SO IF YOUR HONOR IS NOT INCLINED TO RULE CERTAINLY FOR US,

02:15PM 22   BUT THERE'S A NUMBER OF ISSUES HERE THAT PERHAPS WE SHOULD DEAL

02:15PM 23   WITH THIS AT TRIAL.

02:15PM 24        THE COURT:  OKAY.  THANK YOU.

02:15PM 25        THERE'S ANOTHER PORTION OF THIS MOTION, I THINK, THAT

02:15PM  1    RELATES TO SPECIFIC CONDUCT AND INVOLVING SOME INDIVIDUALS,

02:15PM  2    SHULTZ AND CHEUNG?

02:15PM  3            MR. LEMENS:  YES, AND ON THAT I THINK THOSE ARE

02:15PM  4    ARGUMENTS THAT THE GOVERNMENT HAS PRESENTED.  IT'S NOT OUT OF

02:15PM  5    THE ORDINARY FOR EMPLOYEE DEPARTURES TO BE LITIGIOUS OR

02:16PM  6    CONFRONTATIONAL.  THE GOVERNMENT PROSECUTES INDIVIDUALS WHEN

02:16PM  7    THEY LEAVE COMPANIES FOR THEFT OF TRADE SECRETS.  THIS CAN BE A

02:16PM  8    SERIOUS INCIDENT.

02:16PM  9        WE ARE STILL WITHOUT WHO IS GOING TO EXPLAIN WHEN THOSE

02:16PM  10   PRACTICES BECOME IMPERMISSIBLE.  THERE'S STILL NO EXPERT.

02:16PM  11       I DON'T THINK MR. SHULTZ OR MS. CHEUNG ARE QUALIFIED TO

02:16PM  12   OFFER THAT TESTIMONY WHEN THIS WAS THEIR FIRST JOB OUT OF

02:16PM  13   COLLEGE.  I DON'T KNOW WHAT EXPERTISE DR. ROSENDORFF WOULD HAVE

02:16PM  14   TO OFFER THAT TESTIMONY.

02:16PM  15       SO THERE'S STILL THE ISSUES ABOUT THE OTHERWISE INNOCUOUS

02:16PM  16   CONDUCT THAT WE'VE BEEN DISCUSSING.

02:16PM  17       I THINK THESE TWO -- WELL, ONE MORE.  WHAT IS THE

02:16PM  18   CONNECTION TO MS. HOLMES IS STILL A LIVE ISSUE.  THE GOVERNMENT

02:16PM  19   HAS MADE SOME ASSERTIONS.  I THINK MS. SAHARIA IS GOING TO

02:16PM  20   ADDRESS AGENCY ISSUES IN A SUBSEQUENT MOTION AND THAT PERHAPS

02:16PM  21   THESE TWO ARE WORTH DEFERRING ON UNTIL WE GET A BETTER SENSE OF

02:16PM  22   EXACTLY WHAT THE PROFFER IS FOR FOUNDATION TO ADMIT THIS IN

02:17PM  23   THIS TRIAL.

02:17PM  24            THE COURT:  MR. SCHENK.

02:17PM  25            MR. SCHENK:  YOUR HONOR, I'M HAPPY TO ADDRESS THE

02:17PM  1      RELEVANCE OF THOSE TWO STORIES.

02:17PM  2          AGAIN, IT'S RELEVANT BECAUSE THE JURY SHOULD GET TO HEAR

02:17PM  3      WHAT THERANOS DID WHEN WHISTLE BLOWERS TRIED TO COME FORWARD,

02:17PM  4      WHEN INDIVIDUALS TRIED SAY, WHEN EMPLOYEES TRIED TO SAY WE'RE

02:17PM  5      DOING SOMETHING WRONG AND IT BOTHERS US.  AND THE GOVERNMENT

02:17PM  6      PUTS THEIR STORIES BEFORE THE JURY.

02:17PM  7          IF THE DEFENSE WANTS TO RESPOND SOMETIMES EMPLOYEE

02:17PM  8      DEPARTURES GET HOSTILE, THEY CAN MAKE THAT ARGUMENT AND THE

02:17PM  9      JURY CAN DECIDE WHICH VERSION OF THE EVENTS DID I BELIEVE?  DID

02:17PM  10     THERANOS REALLY HAVE A REASON TO GET WORRIED OR TO GET SCARED

02:17PM  11     WHEN EMPLOYEES STARTED CONTACTING REGULATORS, WHEN EMPLOYEES

02:17PM  12     STARTED TO WORRY ABOUT THE ACCURACY OF TESTS, WHEN EMPLOYEES

02:17PM  13     STARTED TO RAISE RED FLAGS?

02:17PM  14         THE JURY GETS TO DECIDE WAS THERANOS'S RESPONSE NORMAL FOR

02:18PM  15     PEOPLE THAT LIVE IN THE WORLD, NORMAL EMPLOYMENT ACTIONS AFTER

02:18PM  16     AN EMPLOYEE LEAVES AND THE RELATIONSHIP IS HOSTILE OR WAS

02:18PM  17     THERANOS TREATING THIS EMPLOYEE THAT WAY BECAUSE OF THE THREAT

02:18PM  18     THAT EMPLOYEE POSED?

02:18PM  19         AND THOSE ARE RELEVANT PIECES OF EVIDENCE FOR THE JURY TO

02:18PM  20     GET TO DECIDE WHICH VERSION OF EVENTS THEY CHOOSE TO BELIEVE.

02:18PM  21             THE COURT:  IS THAT 404(B), MR. SCHENK?

02:18PM  22             MR. SCHENK:  I THINK IT IS, BUT I THINK THE CASE LAW

02:18PM  23     SUGGESTS THAT THREATS OR INTIMIDATION IS A PROPER BASIS TO

02:18PM  24     ADMIT IT.  LET ME BE MORE CLEAR.  I THINK THERE'S A 404(B)

02:18PM  25     BASIS TO ADMIT IT.

02:18PM 1        NOW, THIS CONDUCT OCCURRED AT THE TIME OF THE FRAUD.  IN

02:18PM 2    OTHER WORDS, CONSISTENT WITH OR OVERLAPPING WITH THE TIME WHEN

02:18PM 3    THERANOS WAS SAYING ONE THING TO INVESTORS ABOUT THE ABILITY OF

02:19PM 4    ITS TECHNOLOGY, BUT KNOWING SOMETHING DIFFERENT WITHIN THE FOUR

02:19PM 5    WALLS OF THERANOS.

02:19PM 6        SO TO THAT EXTENT, NO, THERE IS CERTAINLY RELEVANT

02:19PM 7    EVIDENCE THAT THESE WITNESSES HAVE TO PROVIDE TO THE COURT THAT

02:19PM 8    IS SIMPLY JUST FACT EVIDENCE.  I WAS WORRIED ABOUT THIS TEST.

02:19PM 9    I WAS WORRIED ABOUT OUR QC.  I WAS WORRIED ABOUT X.  AND WHEN

02:19PM 10   THERANOS DIDN'T DO ANYTHING ABOUT IT, I LEFT.  SO THERE ARE

02:19PM 11   CERTAINLY ELEMENTS TO IT THAT ARE --

02:19PM 12        THE COURT:  AND THE EVIDENCE IS, I THINK IT'S IN THE

02:19PM 13   RECORD HERE AND PLEASE STOP ME IF IT IS NOT, BUT I THINK WHAT I

02:19PM 14   READ WAS AS TO THESE TWO INDIVIDUALS THAT WE'VE TALKED ABOUT,

02:19PM 15   THE GOVERNMENT WISHES TO PRESENT TO THE JURY THEIR EXPERIENCES

02:19PM 16   POST LEAVING, POST REPORTING OR AT LEAST EXPRESSING CONCERNS

02:19PM 17   ABOUT THE COMPANY AND THE EXPERIENCES THAT THEY RECEIVED

02:19PM 18   SUBSEQUENT TO THAT INVOLVE, I'LL JUST PUT IT BLACK SUV'S, BLUE

02:19PM 19   SUITS, AND NDA'S, AT HOURS OF THE DAY THAT WERE AT LEAST

02:20PM 20   OTHERWISE UNUSUAL FOR THAT TYPE OF CONDUCT.

02:20PM 21        IS THAT --

02:20PM 22        MR. SCHENK:  YES, YOUR HONOR.  AND WHAT I WAS

02:20PM 23   ATTEMPTING TO DO WAS MAYBE DRAW A DISTINCTION BETWEEN THE TYPES

02:20PM 24   OF EVIDENCE THAT EACH WITNESS WOULD PROVIDE, SOME OF IT BEING

02:20PM 25   PURE FACT, AND THEN AS THE COURT JUST SUMMARIZED, I THINK THAT

02:20PM  1      PROBABLY DOES MORE PROPERLY FALL UNDER 404(B).

02:20PM  2             THE COURT:  AND I LOOKED AT THAT AND I THOUGHT IS

02:20PM  3      THAT, AND I'M LOOKING AT MR. LEMENS NOW, IS THAT CONDUCT,

02:20PM  4      ASSUMING IT COMES IN, DOES IT COME IN BECAUSE IT'S INEXTRICABLY

02:20PM  5      INTERTWINED WITH THE CONSPIRACY AND THE CONDUCT THAT IS ALLEGED

02:20PM  6      IN THE INDICTMENT, THAT IS, THAT IN ORDER TO -- THERE WAS A

02:20PM  7      FRAUD THAT WAS ENGAGED AND IN ORDER TO CONTINUE WITH THE FRAUD

02:20PM  8      THE DEFENDANT SOUGHT OUT -- AND HERE'S A BIG LINK THAT

02:20PM  9      MR. SCHENK IS GOING TO HAVE TO OVERCOME -- HOW DOES IT TRACE

02:21PM 10      BACK TO MS. HOLMES?  PARDON ME, I DON'T MEAN TO POINT.  BUT HOW

02:21PM 11      DOES IT TRACE BACK TO HER?

02:21PM 12         BUT ENGAGING THE FRAUD, PART OF THE CONCERN WAS TO KEEP IT

02:21PM 13      SECRET, TO KEEP PEOPLE FROM SPILLING THE BEANS, IF YOU WILL,

02:21PM 14      TALKING ABOUT WHAT IS REALLY HAPPENING AND TO DO THAT THIS

02:21PM 15      BEHAVIOR WITH SUV'S, NDA'S, AFTER HOURS, WE HEARD MS. CHEUNG

02:21PM 16      TALK ABOUT HOW DID THEY EVEN FIND ME?  NO ONE KNEW MY ADDRESS.

02:21PM 17      AND IT COULD BE PERCEIVED AS A THREAT, INTIMIDATION.  ISN'T

02:21PM 18      THAT INEXTRICABLY INTERTWINED WITH A SCHEME TO DEFRAUD AND TO

02:21PM 19      KEEP IT FROM BEING DISCOVERED?

02:21PM 20         THAT'S A LOT TO TALK ABOUT.

02:21PM 21             MR. LEMENS:  I'LL TRY TO TAKE IT IN A FEW PIECES.

02:21PM 22         I DON'T THINK ANYONE WOULD DISPUTE THAT THIS IS AN

02:21PM 23      INCREDIBLY INFLAMMATORY NARRATIVE AS THE GOVERNMENT DESCRIBED

02:21PM 24      IT, SO THERE'S A HIGH RISK OF PREJUDICE.

02:21PM 25             THE COURT:  AND WE'LL TALKING ABOUT THE 403 PART,

02:21PM  1    SURE.

02:21PM  2              MR. LEMENS:  THERE'S THE LINK WHICH YOUR HONOR

02:22PM  3    MENTIONED, THERE'S THE PRESENCE OF ATTORNEYS AND PRIVILEGED

02:22PM  4    RELATIONSHIPS WHICH MS. HOLMES HOLDS, AND, OF COURSE, IS NOT

02:22PM  5    REQUIRED TO DROP.  YOU'VE GOT ATTORNEYS HERE SO WE HAVE SOME

02:22PM  6    PRIVILEGE ISSUES THAT --

02:22PM  7              THE COURT:  WELL, I DON'T THINK THERE'S ANY

02:22PM  8    CONVERSATIONS.  THERE IS CERTAINLY NO ATTORNEY-CLIENT PRIVILEGE

02:22PM  9    WITH THE CONTACTEES.

02:22PM  10             MR. LEMENS:  BUT THERE'S AN ASSERTION FROM THE

02:22PM  11   GOVERNMENT THAT MS. HOLMES DIRECTED ATTORNEYS TO DO THAT.  SO

02:22PM  12   YOU'VE GOT LAWYERS.  I JUST WANT TO GET THE ISSUES OUT ON THE

02:22PM  13   TABLE.

02:22PM  14             THE COURT:  RIGHT.

02:22PM  15             MR. LEMENS:  YOU HAVE DEPARTING EMPLOYEES WHO I

02:22PM  16   DON'T THINK THERE'S A DISPUTE ARE VIOLATING THEIR

02:22PM  17   CONFIDENTIALITY OBLIGATIONS TO THE COMPANY.

02:22PM  18        SO YOU HAVE, I THINK, WHAT IS -- I DON'T THINK IT'S A

02:22PM  19   CONTESTED OBLIGATION.

02:22PM  20        SO AGAIN WE'RE BACK AND THE SAME QUESTION IS WAS -- DID

02:22PM  21   THE COMPANY HAVE A BASIS TO LITIGATE, RIGHT?  DID THE COMPANY

02:22PM  22   HAVE -- WAS THAT A REASONABLE MEASURE?

02:22PM  23        YOU WOULD EXPECT TO SEE AN EXPERT TO COME IN AND SAY, YOU

02:22PM  24   KNOW, HERE'S THIS PORTION OF IT, YES, WE WOULD AGREE WITH AND

02:23PM  25   THIS PORTION PERHAPS WE THINK IS IMPROPER AND WE COULD JOIN THE

02:23PM 1    ARGUMENT THERE AND HAVE THAT DEBATE.

02:23PM 2        BUT FOR THE GOVERNMENT TO SEEK TO BRING IN AT LEAST SOME

02:23PM 3    OF WHICH MUST BE LEGITIMATE CONDUCT TO PROTECT ITS TRADE

02:23PM 4    SECRETS, I THINK WE GET INTO THE SAME ISSUES WE HAVE BEEN

02:23PM 5    DISCUSSING.

02:23PM 6            THE COURT:  IS THAT FOR THE JURY -- IS THAT A FACT

02:23PM 7    QUESTION FOR THE JURY TO DECIDE THAT BLACK SUV'S AFTER HOURS,

02:23PM 8    BLUE SUITS COMING OUT WITH NDA'S DEMANDING TO SIGN IT, IS THAT

02:23PM 9    FOR THE JURY TO DECIDE?

02:23PM 10           MR. LEMENS:  IF IT IS A REASONABLE MEASURE THAT A

02:23PM 11   COMPANY WOULD TAKE, I THINK IT'S FOR AN EXPERT TO OPINE.  I

02:23PM 12   THINK IT'S BEYOND WHAT YOU COULD CONSIDER LAY TESTIMONY.

02:23PM 13       YOUR HONOR HAS NOW MENTIONED BLACK SUV'S SEVERAL TIMES.

02:23PM 14   I HAVE SEARCHED THE GOVERNMENT'S PRODUCTION TO FIND REFERENCE

02:23PM 15   TO IT.  I DON'T SEE IT.  I KNOW IT'S IN THEIR BELIEF.

02:23PM 16           THE COURT:  I THOUGHT I SAW IT.

02:23PM 17           MR. LEMENS:  WELL, IT'S IN THEIR BRIEF BUT THE BRIEF

02:23PM 18   ALSO DOESN'T CITE TO EVIDENCE.

02:23PM 19           THE COURT:  THAT'S WHY I'M SAYING IT.

02:23PM 20           MR. LEMENS:  RIGHT.  WELL, I WANT TO BE VERY CAREFUL

02:24PM 21   ABOUT WHAT HAS BEEN SAID HERE.  WE'LL NEED TO MAKE SURE THAT

02:24PM 22   THERE'S A BASIS FOR THAT.

02:24PM 23       BUT I DON'T THINK THAT -- IT'S CERTAINLY NOT FOR ME TO

02:24PM 24   MAKE THE ASSESSMENT OF WHAT WAS A REASONABLE MEASURE.  I THINK

02:24PM 25   IT'S FOR SOMEONE WITH EXPERTISE IN THE FIELD.  THE GOVERNMENT

02:24PM   1      HAS NOT PROVIDED THAT PERSON.

02:24PM   2              THE COURT:  FAIR ENOUGH.  AND THIS IS WOULD BE, AS

02:24PM   3      WE HAVE TALKED ABOUT BEFORE, IF SOMEONE -- A WITNESS SAID I'VE

02:24PM   4      BEEN PRACTICING, I HAVE BEEN EMPLOYED, AND I KNOW ABOUT NDA'S,

02:24PM   5      I'VE SIGNED HUNDREDS OF THEM, I NEVER HAD AN EXPERIENCE LIKE

02:24PM   6      THIS BEFORE, THAT MIGHT BE A DIFFERENT THING?

02:24PM   7              MR. LEMENS:  RIGHT.  WE COULD THEN LITIGATE THE

02:24PM   8      BASIS AND THE METHOD AND THE RELIABILITY OF THAT OPINION.

02:24PM   9              THE COURT:  RIGHT.  OKAY.  I JUST WANT TO TURN TO

02:24PM  10      BOTH TEAMS HERE.

02:24PM  11          DOES ANYBODY NEED A BREAK?  ARE WE OKAY?

02:24PM  12              MS. SAHARIA:  WE'RE OKAY.

02:24PM  13              THE COURT:  YOUR TEAM IS OKAY?

02:24PM  14              MR. SCHENK:  YES, YOUR HONOR.  THANK YOU.

02:24PM  15              THE COURT:  ALL RIGHT.  GREAT.  THANK YOU.

02:24PM  16              MR. LEMENS:  I WOULD MOVE TO 576 IF THAT WORKS,

02:24PM  17      YOUR HONOR.

02:24PM  18              THE COURT:  ANYTHING FURTHER ON THIS?

02:24PM  19              MR. SCHENK:  NO, YOUR HONOR.

02:25PM  20              THE COURT:  OKAY.  THANK YOU.

02:25PM  21              MR. LEMENS:  SO HERE WE'RE TALKING ABOUT THE

02:25PM  22      COMPANY'S USE OF MODIFIED COMMERCIAL TESTING PLATFORMS AND I

02:25PM  23      WILL JUST QUICKLY TO REFRESH WHERE WE ARE.

02:25PM  24          MS. SAHARIA MENTIONED ON THE FIRST DAY THE COMPANY HAD

02:25PM  25      USED THREE DIFFERENT TYPES OF TECHNICAL HARDWARE IN ITS

02:25PM 1    CLINICAL LAB.  ONE WAS COMMERCIAL DEVICES WITHOUT ANY

02:25PM 2    MODIFICATION; THE SECOND WAS THE THERANOS DEVICE, THE TSPU;

02:25PM 3    AND, THE THIRD WERE COMMERCIAL DEVICES THAT THE COMPANY HAD

02:25PM 4    MODIFIED IN ORDER TO RUN A SMALL SAMPLE TEST.  AND SO THAT'S

02:25PM 5    WHAT WE'RE FOCUSSED ON HERE.

02:25PM 6        THAT -- IT'S HELPFUL TO KEEP IN MIND THAT THE COMPANY

02:25PM 7    SPENT YEARS DEVELOPING SMALL -- THE ABILITY TO RUN BLOOD TESTS

02:25PM 8    ON SMALL SAMPLES.  THAT SEPARATE AND APART FROM THE DEVICE WAS

02:25PM 9    THE FOCUS OF THEIR RESEARCH AND DEVELOPMENT EFFORTS.

02:25PM 10       AND THE CHEMISTRY IS I THINK THE TECHNICAL TERM, OR THE

02:26PM 11   RECIPE, FOR HOW YOU DO THIS IS NOT NECESSARILY UNIQUE TO THE

02:26PM 12   TSPU OR THE PROPRIETARY DEVICE.  IT COULD HAVE APPLICATION TO

02:26PM 13   OTHER PLATFORMS.

02:26PM 14       SO AT THIS POINT THE COMPANY GOES AND SAYS, WELL, CAN WE

02:26PM 15   DO THIS ON A DIFFERENT DEVICE?  COULD WE DO THIS AT A HIGHER

02:26PM 16   THROUGHPUT?  COULD WE DO THIS IN A MORE EFFICIENT WAY?

02:26PM 17       THEY ENGAGED A CROSS OR A DIVERSE TEAM OF HIGHLY QUALIFIED

02:26PM 18   SCIENTISTS.  YOU HAVE DR. YOUNG WHO IS A SENIOR LEADER AT THE

02:26PM 19   COMPANY, A PH.D. FROM M.I.T., PH.D. IN PHYSICS, PEOPLE WITH

02:26PM 20   EXPERIENCE IN THE LABORATORY WHO LOOK AT THESE DEVICES AND SAY

02:26PM 21   IS THERE SOMETHING THAT WE CAN DO WITH IT?

02:26PM 22       THEY LAND ON THE ADVIA, A-D-V-I-A, DEVICE, WHICH IS

02:26PM 23   MANUFACTURED BY SIEMENS.  IT HAS THE CAPACITY TO RUN UP TO 1800

02:26PM 24   TESTS PER HOUR.

02:26PM 25            THE COURT:  IS THIS THE MACHINE THAT IS

02:26PM  1    PROGRAMMABLE?

02:27PM  2              MR. LEMENS:  YES.  YES, YOUR HONOR.

02:27PM  3              THE COURT:  AND IT'S OPEN SOURCE TO A CERTAIN DEGREE

02:27PM  4    I BELIEVE.

02:27PM  5              MR. LEMENS:  YES, YOUR HONOR.  THERE'S AN ABILITY

02:27PM  6    FOR THE -- FOR I DON'T WANT TO CALL THEM CLIENTS BUT PEOPLE WHO

02:27PM  7    PURCHASE THAT DEVICE TO THEN ADD THEIR OWN ASSAYS, RIGHT, THEIR

02:27PM  8    LABORATORY DEVELOPED TESTS.  AND THAT'S WHAT THE COMPANY DID

02:27PM  9    HERE.

02:27PM  10       I THINK THERE'S SOME DISPUTE, BUT THE GOVERNMENT CERTAINLY

02:27PM  11   WANTS TO CHALLENGE THE NATURE OF THOSE MODIFICATIONS AND THE

02:27PM  12   SPECIFIC MODIFICATIONS, AND THEY WANT TO ALLEGE THAT THOSE

02:27PM  13   MODIFICATIONS WERE CONCEALED.

02:27PM  14              THE COURT:  WELL, THEY USE THE WORD "TAMPER" I

02:27PM  15   THINK.

02:27PM  16              MR. LEMENS:  THEY STARTED WITH TAMPER.  I THINK

02:27PM  17   THEY'VE BACKED OFF OF THAT.  THEN THEY WENT TO INDUSTRY --

02:27PM  18   INCONSISTENT WITH INDUSTRY STANDARDS OR MANUFACTURER

02:27PM  19   EXPECTATIONS, AND THEY'VE BACKED OFF FROM THAT AND THEY MADE

02:27PM  20   THE CONCESSION THAT THEY DON'T INTEND TO PRESENT EVIDENCE THAT

02:27PM  21   THESE MODIFICATIONS ARE INCONSISTENT WITH INDUSTRY STANDARDS OR

02:27PM  22   MANUFACTURER USE AGREEMENTS OR OTHERWISE IMPROPER.  I THINK

02:28PM  23   THAT'S -- HE'LL TELL ME IF I'VE GOT THE LANGUAGE WRONG.

02:28PM  24       BUT YOU SHOULD HOLD THEM TO THAT CONCESSION.

02:28PM  25       BUT THE BRIEF -- THEIR OPPOSITION, HOWEVER, AND THIS IS AT

02:28PM  1    DOCKET 666, THEN GOES ON TO SAY, WELL, THESE WERE NOT COMMON,

02:28PM  2    THESE WERE NONSTANDARD, UNUSUAL, UNKNOWN.  AND I THINK THE

02:28PM  3    IMPLICATION IS CLEAR THAT THEY WANT TO CONTINUE TO CAST DOUBT

02:28PM  4    ON THE MODIFICATIONS.

02:28PM  5        THE PROBLEM FROM OUR PERSPECTIVE IS THAT IS SCIENTIFIC AND

02:28PM  6    TECHNICAL KNOWLEDGE, AND THEY DON'T HAVE AN EXPERT WHO WILL DO

02:28PM  7    THAT.  DR. ROSENDORFF TALKS ABOUT THE RESULT THAT CAME OUT OF

02:28PM  8    THIS DEVICE, BUT HE NEVER ADDRESSES THE HARDWARE INSERT THAT

02:28PM  9    WAS DESIGNED AND SAYS THAT WAS IMPROPER OR THIS WAS

02:28PM 10    INCONSISTENT.  HE NEVER ADDRESSES THE SOFTWARE PROGRAMMING TO

02:29PM 11    SAY THE SAME.

02:29PM 12        SO I THINK WE'RE LOOKING FOR YOUR HONOR TO NOT ELIMINATE

02:29PM 13    BUT TO CONSTRAIN THE GOVERNMENT'S USE TO THE TESTIMONY IT HAS

02:29PM 14    DISCLOSED, AND CERTAINLY THERE'S NOTHING TO SUGGEST THAT THEY

02:29PM 15    CAN REFER TO THIS AS NONSTANDARD OR WE MAY SEE THEM ARGUE THE

02:29PM 16    IMPLICATION THAT THEY'RE SOMEHOW IMPROPER.

02:29PM 17        THE COURT:  OKAY.  SO, MR. SCHENK, AS I UNDERSTAND

02:29PM 18    IT, THE SIEMENS MACHINE WAS PURCHASED, IT WAS USED, IT HAS OPEN

02:29PM 19    SOURCE TO A CERTAIN POINT, DESIGNED TO ALLOW PURCHASERS,

02:29PM 20    CONSUMERS, CUSTOMERS TO BUY OR MODIFY THE MACHINE AS THEY

02:29PM 21    WANTED TO.  THAT WAS THE SALIENT FEATURES OF THE MACHINE, IT

02:29PM 22    WAS ATTRACTIVE TO VARIOUS LABORATORIES, CLIENTS.

02:29PM 23        AND HERE I THINK IT SOUNDS LIKE THE ARGUMENT IS AT SOME

02:29PM 24    POINT THE J CUP WAS USED OR INSTEAD OF THE T CUP, AND SOFTWARE

02:29PM 25    MODIFICATIONS WERE DONE, AND IT SOUNDS LIKE THE MACHINE WAS

02:30PM 1   DESIGNED TO ALLOW THOSE MODIFICATIONS SUCH THAT THE CONSUMER,

02:30PM 2   WHOEVER PURCHASED IT COULD CREATE THIS FOLK MACHINE FOR THEIR

02:30PM 3   NEEDS.

02:30PM 4       IS THERE SOMETHING UNTOWARD ABOUT THAT THAT YOU WANTED TO

02:30PM 5   RAISE?

02:30PM 6           MR. SCHENK:  YES.  A COUPLE OF THINGS.

02:30PM 7           THE COURT:  OKAY.

02:30PM 8           MR. SCHENK:  FIRST, THE FACT THAT THERANOS USED

02:30PM 9   MODIFIED SIEMENS MACHINES, I DON'T THINK EITHER SIDE IS

02:30PM 10  DISPUTING WILL COME, THAT FACT IS RELEVANT BECAUSE IF THE TSP

02:30PM 11  WORKED AS ADVERTISED, WHY THE NEED TO USE OR TO MODIFY?  THAT'S

02:30PM 12  A QUESTION THAT THE GOVERNMENT IS BARELY ALLOWED TO PRESENT AND

02:30PM 13  ARGUE FROM IN FRONT OF THE JURY.

02:30PM 14      THE QUESTION NOW -- LET ME TURN TO MODIFICATIONS OF THE

02:30PM 15  SIEMENS MACHINES.  AN EMPLOYEE, FORMER EMPLOYEE TOLD THE

02:30PM 16  GOVERNMENT THAT THE ONLY REASON THAT THERANOS WAS ALLOWED TO

02:30PM 17  MAKE THE MODIFICATIONS TO THE SIEMENS MACHINE THAT IT MENTIONED

02:30PM 18  WAS BECAUSE A SIEMENS TECH ACCIDENTALLY LEFT OPEN SOME OF THE

02:31PM 19  SOFTWARE.

02:31PM 20          THE COURT:  WELL, I SAW THAT IN SOME OF YOUR

02:31PM 21  PLEADINGS AND I WONDERED THAT'S WHAT YOU WANT TO GET IN AS FACT

02:31PM 22  EVIDENCE?

02:31PM 23          MR. SCHENK:  YES.

02:31PM 24          THE COURT:  CONTINUE.  I'M SORRY.

02:31PM 25          MR. SCHENK:  OKAY.  IT IS REASONABLE TO ARGUE, AND

02:31PM 1    WE NOTICED DR. ROSENDORFF AS AN EXPERT ON SOME OF THE

02:31PM 2    DISADVANTAGES TO THE SPECIFIC MODIFICATIONS THAT THERANOS MADE

02:31PM 3    AND COMBINED THOSE TWO FACTS.

02:31PM 4         DR. ROSENDORFF, WHO WORKED AT THERANOS AND WAS A LAB

02:31PM 5    DIRECTOR SAYING WHEN YOU MAKE THESE KIND OF MODIFICATIONS, YOU

02:31PM 6    RUN INTO PROBLEMS CAUSED BY DILUTION.  IS THE MACHINE GOING TO

02:31PM 7    PICK UP THE CONCENTRATION IN THE SAMPLE IF IT IS DILUTED AS

02:31PM 8    MUCH AS IT IS, IS THE SAMPLE VALUE IS AS SMALL AS IT IS,

02:31PM 9    COMBINE THAT FACT WITH THE FACT THAT THIS MODIFICATION, OR

02:31PM 10   MODIFICATIONS TO THE SIEMENS MACHINE OCCURRED AFTER A BACK DOOR

02:31PM 11   IS LEFT OPEN, IT'S, OF COURSE, REASONABLE FOR THE JURY TO INFER

02:32PM 12   FROM THOSE FACTS THAT THE RISK OF CREATING ACCURATE AND

02:32PM 13   RELIABLE TEST RESULTS INCREASED, THAT THOSE TWO FACTS ARE FACTS

02:32PM 14   TO PUT IN FRONT OF THE JURY AND TO DRAW THOSE INFERENCES FROM.

02:32PM 15        MR. LEMENS:  SURE.  SO I THINK THE INDIVIDUAL THAT

02:32PM 16   THEY'RE REFERENCING ABOUT THE BACK DOOR, THIS BEING SOMEWHAT,

02:32PM 17   AGAIN, AN INFLAMMATORY ACCUSATION HAD NO ROLE WITHIN THE DESIGN

02:32PM 18   OR PROJECT RELATED TO THESE DEVICES.  PERHAPS WE NEED TO DO

02:32PM 19   THAT AT TRIAL.

02:32PM 20        BUT WITH DR. ROSENDORFF THE ISSUE IS HE DOESN'T CONNECT

02:32PM 21   THE SPECIFIC MODIFICATIONS TO THE RESULT THAT HE'S CONCERNED

02:32PM 22   ABOUT, WHICH IS EXCESS DILUTION, RIGHT?  HE TALKS ABOUT EXCESS

02:32PM 23   DILUTION, AND I THINK HIS DISCLOSURE FAIRLY READ SAYS DILUTION

02:33PM 24   ISSUES CAN EXACERBATE THE EFFECT OF DEVICE BIAS.

02:33PM 25        HE DOESN'T SAY THAT THEY DO.  HE DOESN'T SAY THAT THERE'S

02:33PM 1    ANY EVIDENCE THAT THERE WAS AN ACCURACY AND RELIABILITY ISSUE

02:33PM 2    WITH RESPECT TO THESE MODIFICATIONS.

02:33PM 3        IT'S UNCLEAR -- I KNOW HE EXPLAINS THE ISSUE BUT WHAT DATA

02:33PM 4    OR METHODOLOGY HE WAS RELYING ON HERE WHEN HE REACHED THIS

02:33PM 5    CONCLUSION.  I DON'T BELIEVE HE LOOKED AT THE TESTING DATA TO

02:33PM 6    SAY THAT I'VE LOOKED AT THE RESULTS OF THESE TESTS, AND I CAN

02:33PM 7    CONCLUDE BASED ON THAT REVIEW THAT THERE WAS AN ACCURACY AND

02:33PM 8    RELIABILITY ISSUE.

02:33PM 9        SO I THINK OUR CONCERN IS THAT YOU'VE GOT A SOMEWHAT

02:33PM 10   ISOLATED OPINION THAT IS NOT ON THE FRONT END CONNECTED TO THE

02:33PM 11   MODIFICATIONS AND IS NOT ON THE BACK END CONNECTED, THERE'S NOT

02:34PM 12   A LINK TO ACCURACY AND RELIABILITY.  IT'S KIND OF A

02:34PM 13   HYPOTHETICAL MAYBE.

02:34PM 14       SO THERE'S A CONCERN THERE THAT THEY'RE DRAWING A PRETTY

02:34PM 15   BIG INFERENCE FROM THOSE TWO PIECES OF EVIDENCE AND WHETHER

02:34PM 16   THEY SHOULD BE ALLOWED TO DO.

02:34PM 17            THE COURT:  OKAY.

02:34PM 18            MR. SCHENK:  YOUR HONOR, THAT LARGELY FEELS LIKE

02:34PM 19   WEIGHT ARGUMENTS TO ME.  THEY OBVIOUSLY ARE GOING TO

02:34PM 20   CROSS-EXAMINE DR. ROSENDORFF ON THOSE TOPICS.

02:34PM 21       THE MOTION SOUGHT, AS I STOOD AND READ IT, WAS TO EXCLUDE

02:34PM 22   THE PHRASE "TAMPER WITH" OR "CONCEAL."  AND I ONLY ENDEAVOR TO

02:34PM 23   PROVIDE THE COURT WITH A BASIS FOR THE GOVERNMENT'S EVIDENCE ON

02:34PM 24   THOSE TWO PHRASES.

02:34PM 25            THE COURT:  OKAY.  ANYTHING FURTHER, MR. LEMENS?

02:34PM 1        MR. LEMENS:  I WANT TO CLARIFY.

02:34PM 2    IF THE CONCESSION IS WE'RE NOT GOING TO COMPARE THIS TO

02:34PM 3    THE INDUSTRY, WE'RE NOT GOING TO SAY IT WAS UNCOMMON OR UNUSUAL

02:34PM 4    THAT THEY WERE TAMPERED WITH, THAT THEY WERE CONCEALED OR

02:34PM 5    ALTERED, I DON'T KNOW IF THAT'S WHAT I'M HEARING BUT I THINK

02:34PM 6    THAT WAS THE REASON FOR THE MOTION.

02:34PM 7        THE COURT:  I HEARD HIM SAY "TAMPER."  I DIDN'T HEAR

02:35PM 8    HIM SAY THE OTHER THINGS.

02:35PM 9        MR. SCHENK:  YES, WE DO WANT TO ARGUE TAMPER BUT FOR

02:35PM 10   CLARIFICATION PURPOSES, WE DO NOT PLAN TO ARGUE THAT THE

02:35PM 11   MODIFICATIONS WERE UNETHICAL OR VIOLATED SOME INDUSTRY

02:35PM 12   STANDARD.

02:35PM 13       THE COURT:  IS THAT HELPFUL?

02:35PM 14       MR. LEMENS:  WE'RE BACK TO THE BEGINNING WHICH IS I

02:35PM 15   DON'T THINK THEY JUSTIFY TAMPERING, BUT --

02:35PM 16       THE COURT:  I WAS JUST GOING TO SAY IT'S THE

02:35PM 17   NOMENCLATURE I THINK NOW THAT WE'RE AT WORD "TAMPER."

02:35PM 18    AND I WAS TRYING TO LOOK AT THAT AND SAY, WELL, HOW ELSE

02:35PM 19   CAN WE USE THAT OTHER THAN TAMPER?  AND THERE MIGHT BE OTHER

02:35PM 20   WORDS THAT THE GOVERNMENT CAN USE TO JUSTIFY, MODIFY,

02:35PM 21   REPROGRAMMED AND ALL OF THAT TYPE OF THING.  TAMPERING IS KIND

02:35PM 22   OF PEJORATIVE AND UNTIL AND UNLESS THAT'S BEEN PROVEN.

02:35PM 23    I SUPPOSE YOU CAN ARGUE THAT IN YOUR CLOSING ARGUMENT.

02:35PM 24   THE EVIDENCE AND THE GOVERNMENT'S BELIEF SHOWS THAT IT WASN'T

02:35PM 25   MODIFIED, IT WAS TAMPERED, AND THAT'S HOW YOU SHOULD LOOK AT

02:35PM  1    IT, ET CETERA.  SOMETHING LIKE THAT.

02:35PM  2         OKAY.  THANKS VERY MUCH.  THANK YOU.

02:35PM  3              MR. LEMENS:  THANK YOU, YOUR HONOR.

02:36PM  4              THE COURT:  I'D LIKE TO SKIP AROUND, IF WE MAY, FROM

02:36PM  5    THE ORDER.  I HOPE THAT'S -- I'D LIKE TO COVER A COUPLE THAT

02:36PM  6    I'M HOPING MIGHT NOT TAKE TOO MUCH TIME, BUT, OF COURSE,

02:36PM  7    WHATEVER TIME WE NEED WE'LL TAKE FOR IT.

02:36PM  8         IN THAT VEIN, I WONDER IF WE SHOULD TALK ABOUT NUMBER 6,

02:37PM  9    WHICH IS THE GOVERNMENT'S NUMBER 7 TO ADMIT TEXT MESSAGES.

02:37PM 10              MS. SAHARIA:  THAT'S FINE, YOUR HONOR.

02:37PM 11              THE COURT:  MR. LEACH, GOOD AFTERNOON.

02:37PM 12              MR. LEACH:  GOOD AFTERNOON.

02:37PM 13         THIS IS THE GOVERNMENT'S MOTION TO ADMIT EXCERPTS OF

02:37PM 14    CERTAIN SPREADSHEETS OF TEXT MESSAGES FROM THE DEFENDANT.

02:37PM 15         JUST TO GIVE SOME CONTEXT, IN A PARALLEL S.E.C.

02:37PM 16    INVESTIGATION AND IN THE UNDERLYING GRAND JURY INVESTIGATION

02:37PM 17    THE DEFENDANT THROUGH HER COMPANY PRODUCED TWO SPREADSHEETS IN

02:37PM 18    RESPONSE TO SUBPOENAS SEEKING HER COMMUNICATIONS WITH

02:37PM 19    MR. BALWANI AND TEXTS SENT ON PHONES PAID FOR BY THERANOS AND

02:37PM 20    USED BY HOLMES OR BALWANI.

02:37PM 21         HER ATTORNEYS HELD THEM OUT OR HELD ONE OF THEM OUT AS A

02:38PM 22    SPREADSHEET REFLECTING TEXT MESSAGES SENT TO AND FROM

02:38PM 23    MS. HOLMES AND MR. BALWANI AS COLLECTED FROM MS. HOLMES'S

02:38PM 24    COMPANY ISSUED DEVICES.

02:38PM 25         THROUGH OUR MOTION WE'RE SEEKING ADMISSION OF PORTIONS OF

02:38PM 1    THOSE SPREADSHEETS FROM SIX PARTICULAR DATES BETWEEN NOVEMBER

02:38PM 2    OF 2013 AND OCTOBER OF 2015.  THESE DATES CORRELATE TO EVENTS

02:38PM 3    LIKE DR. ROSENDORFF'S DEPARTURE FROM THERANOS, WHICH WE HAVE

02:38PM 4    BEEN TALKING A LOT ABOUT, THE CMS INSPECTION, WHICH WE'VE

02:38PM 5    TALKED ABOUT YESTERDAY, AND CERTAIN INTERVIEWS THAT MS. HOLMES

02:38PM 6    HAD WITH PUBLICATIONS.

02:38PM 7        AS I UNDERSTAND IT THERE ARE TWO OBJECTIONS TO THIS

02:38PM 8    EVIDENCE, AUTHENTICITY AND RELEVANCE.

02:38PM 9        WE LAY OUT THE REASONS WHY THESE DOCUMENTS ARE CLEARLY

02:38PM 10   AUTHENTIC IN OUR BRIEF.  I WANT TO HIGHLIGHT JUST ONE POINT,

02:38PM 11   WHICH IS WITH RESPECT TO THE S.E.C. SPREADSHEET, HER ATTORNEYS

02:38PM 12   PRODUCED IT TO THE S.E.C. ON JULY 7TH.  FIVE DAYS LATER WITH

02:39PM 13   SOME OF THOSE SAME ATTORNEYS SITTING NEXT TO HER, THE DEFENDANT

02:39PM 14   SWORE UNDER OATH THAT SHE HAD NO REASON TO DOUBT THOSE WERE

02:39PM 15   WHAT THEY WERE.  SHE WAS ASKED QUESTIONS ABOUT SOME OF THOSE

02:39PM 16   TEXTS AND ANSWERED THOSE QUESTIONS.

02:39PM 17       AND WITH RESPECT TO AUTHENTICITY THE BURDEN HERE IS

02:39PM 18   SLIGHT.  WE DON'T NEED TO PROVE BEYOND A REASONABLE DOUBT THAT

02:39PM 19   THESE SPREADSHEETS ARE AUTHENTIC.  THERE'S ZERO DOUBT THAT THEY

02:39PM 20   ARE WHAT THEY PURPORT TO BE.  IF THE DEFENSE WANTS TO ARGUE

02:39PM 21   THAT, THEY CAN TO THE JURY.

02:39PM 22       OUR BURDEN OF FLIGHT ON AUTHENTICITY IS, IS THERE SOME

02:39PM 23   EVIDENCE TO SUPPORT A FINDING?  AND WE THINK FOR THE REASONS

02:39PM 24   LAID OUT IN OUR BRIEF THERE'S ZERO DOUBT THAT THESE ARE WHAT

02:39PM 25   THEY PURPORT TO BE.

02:39PM  1          THE SECOND OBJECTION IS RELEVANCE, AND AGAIN, THIS IS A

02:39PM  2   LOW BURDEN FOR THE GOVERNMENT.  I THINK THE RELEVANCE IS

02:39PM  3   SELF-EVIDENT FROM SOME OF THE STATEMENTS BACK AND FORTH,

02:39PM  4   PARTICULARLY WHEN YOU CORRELATE THEM TO THE TIME.  THESE WERE

02:39PM  5   SIGNIFICANT EVENTS FROM THE COMPANY.  THESE REFLECT THE

02:40PM  6   CONTEMPORANEOUS BACK AND FORTH IN THEIR PRIVATE COMMUNICATIONS.

02:40PM  7   I THINK THE RELEVANCE IS EVIDENT FROM SOME OF THE WORDS USED

02:40PM  8   "OUR LAB IS A DISASTER, WE NEED TO REBUILD," PRAYING DURING THE

02:40PM  9   INSPECTION, AND I THINK THE INFERENCES ARE QUITE OBVIOUS.  I

02:40PM 10   DON'T HAVE ANYTHING FURTHER FROM THE GOVERNMENT UNLESS THE

02:40PM 11   COURT HAS QUESTIONS.

02:40PM 12          THE COURT:  MS. SAHARIA, ARE YOU RISING TO THIS?

02:40PM 13          MS. SAHARIA:  YES.  SO, YOUR HONOR, I HEARD

02:40PM 14   MR. LEACH SAY THAT THE DEFENDANT PRODUCED THESE SPREADSHEETS

02:40PM 15   AND THAT HER ATTORNEYS PRODUCED THEM.

02:40PM 16          I THINK THAT REFLECTS A MISUNDERSTANDING THAT WE SEE

02:40PM 17   ACTUALLY ACROSS A NUMBER OF THE GOVERNMENT MOTIONS THAT WE'RE

02:40PM 18   GOING TO DISCUSS TODAY ABOUT THE ROLE OF COMPANY COUNSEL.  IT'S

02:40PM 19   BLACK LETTER LAW UNDER THE FAMOUS SUPREME COURT CASE UPJOHN

02:40PM 20   THAT WHEN COMPANY COUNSEL REPRESENTS A COMPANY, THEY DO NOT

02:40PM 21   REPRESENT THE EMPLOYEES OF THAT COMPANY.  THAT'S WHY WHEN WE

02:40PM 22   REPRESENT COMPANIES, WE GIVE UPJOHN WARNINGS TO CORPORATE

02:41PM 23   EMPLOYEES.

02:41PM 24          WILMER HALE DID NOT REPRESENT MS. HOLMES.  WILMER HALE WAS

02:41PM 25   THERANOS'S COUNSEL, MONTHS MS. HOLMES'S COUNSEL.  SO THAT'S

02:41PM 1    JUST TO CLARIFY THE RECORD.

02:41PM 2         THE COURT:  THANK YOU.  DID MS. HOLMES'S, DID YOUR

02:41PM 3    CLIENT RATIFY OR OTHERWISE ENDORSE THIS TRANSCRIPT, THIS

02:41PM 4    SPREADSHEET RATHER SUCH THAT THE AUTHENTICATION ISSUE IS NOT

02:41PM 5    BEFORE US?

02:41PM 6         MS. SAHARIA:  I DON'T BELIEVE SO.  SHE WAS PRESENTED

02:41PM 7    WITH HUNDREDS OF PAGES OF PRINTOUTS FROM THE SPREADSHEET DURING

02:41PM 8    HER DOING AND SHE SAID SHE HAD NEVER SEEN IT BEFORE.

02:41PM 9         SHE WAS THEN ASKED, DO YOU HAVE ANY REASON TO BELIEVE IT

02:41PM 10   IS NOT A COLLECTION OF TEXT MESSAGES?  AND SHE SAID NO, BUT, OF

02:41PM 11   COURSE, SHE HAD NO TIME TO COMPARE THAT DOCUMENT TO HER PHONE,

02:41PM 12   TO HER COMPUTER TO DETERMINE WHETHER IT WAS IN FACT AUTHENTIC.

02:41PM 13   AGAIN, I DON'T KNOW HOW YOU COULD EXPECT SOMEONE TO DO

02:41PM 14   THAT WITH MULTIPLE HUNDREDS OF PAGES OF SPREADSHEETS SITTING

02:42PM 15   THERE ON THE FLY SO --

02:42PM 16        THE COURT:  WOULD THE GOVERNMENT HAVE TO CALL

02:42PM 17   KATIE MORAN TO TESTIFY AS TO THE AUTHENTICITY?

02:42PM 18        MS. SAHARIA:  I THINK THEY MAY, YOUR HONOR, IF THEY

02:42PM 19   WANT TO PUT THIS INTO EVIDENCE BECAUSE IT'S NOT CLEAR AT ALL

02:42PM 20   HOW THIS WAS COMPILED.

02:42PM 21   KATIE MORAN SAYS AT -- THIS IS GOVERNMENT'S EXHIBIT I

02:42PM 22   WHICH IS 588-10.  SHE CERTIFIED THAT THIS DOCUMENT IS A

02:42PM 23   SPREADSHEET OF TEXT MESSAGES, IMESSAGES, AND SKYPE EXCHANGES

02:42PM 24   PULLED APPARENTLY FROM DIFFERENT DEVICES, DIFFERENT PHONES, A

02:42PM 25   COMPUTER, AND THEN KIND OF MADE INTO SOME HYBRID DOCUMENT OF

02:42PM  1    ALL OF THOSE DIFFERENT SOURCES.

02:42PM  2          WE DON'T KNOW HOW THEY ENSURED THEY COLLECTED ALL OF THEM.

02:42PM  3    WE DON'T KNOW HOW THEY INSURED THAT THEY COLLECTED ALL OF THE

02:42PM  4    ONES BETWEEN MS. HOLMES AND MR. BALWANI, MEANING SOME MIGHT BE

02:42PM  5    MISSING.

02:42PM  6          AND THIS DECLARATION FROM MS. MORAN, ALTHOUGH IT PURPORTS

02:43PM  7    TO BE A DECLARATION CERTIFYING RECORDS OF REGULARLY CONDUCTED

02:43PM  8    BUSINESS ACTIVITY, IT'S CLEARLY NOT A PROPER BUSINESS RECORD

02:43PM  9    CERTIFICATION UNDER RULE 803(6) A BUSINESS RECORD CERTIFICATION

02:43PM 10    MUST ESTABLISH THAT THE BUSINESS RECORD WAS MADE AT OR NEAR

02:43PM 11    THE TIME BY OR FROM INFORMATION TRANSMITTED BY SOMEONE WITH

02:43PM 12    KNOWLEDGE.  THE RECORD WAS KEPT IN THE COURSE OF REGULARLY

02:43PM 13    CONDUCTED ACTIVITY OF A BUSINESS, AND MAKING THE RECORD WAS A

02:43PM 14    REGULAR PRACTICE OF THAT BUSINESS.

02:43PM 15          HER CERTIFICATION ESTABLISHES NONE OF THOSE THINGS.  SHE'S

02:43PM 16    NOT SOMEONE THAT WOULD HAVE KNOWLEDGE OF THOSE BECAUSE SHE WAS

02:43PM 17    NOT A COMPANY EMPLOYEE.  AND WE KNOW THIS PARTICULAR DOCUMENT

02:43PM 18    WAS CREATED FOR LITIGATION THAT WAS, AS I MENTIONED, A

02:43PM 19    COMPILATION OF DIFFERENT THINGS PREPARED FOR THE S.E.C. AND

02:43PM 20    LITIGATION.

02:43PM 21          SO I DON'T THINK IT'S A BUSINESS RECORD.  SO I THINK IF

02:43PM 22    THE GOVERNMENT WANTS TO AUTHENTICATE IT, THEY'RE GOING TO HAVE

02:43PM 23    TO CALL SOMEONE TO ESTABLISH A CHAIN OF CUSTODY SO WE KNOW HOW

02:44PM 24    IT WAS MADE.

02:44PM 25          THAT'S AUTHENTICITY.  AS TO RELEVANCE, THE GOVERNMENT

02:44PM   1    PURPORTS TO BE ASKING IN ITS MOTION FOR A BLANKET RULING

02:44PM   2    ADMITTING THE TEXT MESSAGES THAT THEY IDENTIFY AND ALL SIMILAR

02:44PM   3    TEXT MESSAGES.

02:44PM   4        OF COURSE, WE DON'T DISPUTE THAT SOME COULD BE RELEVANT.

02:44PM   5    SOME MAY NOT BE RELEVANT.  SOME ARE RELEVANT IF THE GOVERNMENT

02:44PM   6    LAYS A FOUNDATION.  SOME DEPEND ON THE COURT'S RULINGS ON THE

02:44PM   7    MOTIONS IN LIMINE.

02:44PM   8        SO WE WOULD SUBMIT THAT IF THE GOVERNMENT CAN'T

02:44PM   9    AUTHENTICATE THOSE AT TRIAL, IT CAN THEN TRY TO LAY THE

02:44PM   10   FOUNDATION FOR THE TEXT MESSAGES THAT ARE RELEVANT, AND WE CAN

02:44PM   11   TAKE THEM UP IN TURN THROUGHOUT TRIAL.

02:44PM   12        THE COURT:  I DON'T THINK MR. LEACH, WHEN IT SAID

02:44PM   13   "ALL SIMILAR," HE WAS ASKING FOR A BLANKET WITHOUT PROPER

02:44PM   14   FOUNDATION.

02:44PM   15        WHAT I READ INTO THAT WAS ALL, BUT HAVE A PROPER

02:44PM   16   FOUNDATION THAT WE CAN PRESENT TO THE COURT.

02:44PM   17        WAS THAT -- WAS I CORRECT IN THAT?

02:44PM   18        MR. LEACH:  THAT'S FAIR, YOUR HONOR.  I THINK THE

02:44PM   19   POINT OF MY LANGUAGE THERE IS THAT WE'RE GOING TO WANT MORE OF

02:45PM   20   THE TEXT MESSAGES IN, BUT I WANTED TO GIVE THE COURT A FLAVOR

02:45PM   21   OF THE RELEVANCE AND THE SIGNIFICANCE OF THESE.

02:45PM   22        IF I COULD JUST RESPOND BRIEFLY TO MY FRIEND.

02:45PM   23        THE COURT:  YES.

02:45PM   24        MR. LEACH:  IT'S NOT ME WHO IS DRAWING THE

02:45PM   25   CONCLUSION.  WILMER HALE WAS REPRESENTING MS. HOLMES.  THIS IS

02:45PM  1    WHAT WILMER HALE SAID ON THE RECORD AT 588-9.  WHEN ASKED WHO

02:45PM  2    HE REPRESENTS, MR. DAVIES, THAT'S SOMEONE FROM WILMER HALE,

02:45PM  3    SAYS I REPRESENT THE COMPANY AND MS. HOLMES AS THE CEO.

02:45PM  4        MS. HOLMES WAS CEO AT THE TIME.  SHE HIRED WILMER HALE.

02:45PM  5    THE IDEA THAT SHE DID NOT RATIFY OR AUTHORIZE THESE PRODUCTIONS

02:45PM  6    TO THE S.E.C. IS, FRANKLY, IN THE GRAND JURY, IS, FRANKLY,

02:45PM  7    PREPOSTEROUS.

02:45PM  8        THESE WERE NOT PREPARED FOR LITIGATION.  THESE WERE

02:45PM  9    PREPARED IN RESPONSE TO SUBPOENAS FROM THE GOVERNMENT.  IT

02:45PM 10    WASN'T AT THE TIME THAT THERE WAS LITIGATION PENDING.  THIS WAS

02:45PM 11    SAYING GIVE US ALL OF THE TEXTS, AND THIS IS WHAT THEY GAVE US.

02:46PM 12    SO THIS WASN'T PREPARED FOR SOME LITIGATION PURPOSE.

02:46PM 13        AND WE'VE TALKED A LOT ABOUT MINI TRIALS.  I DON'T WANT TO

02:46PM 14    HAVE MINI TRIES OVER AUTHENTICATION.  AND PART OF THE REASON

02:46PM 15    FOR THE GOVERNMENT PRESENTING THIS IS WE REALLY WANT TO AVOID

02:46PM 16    WHAT I THINK IS OBVIOUS.  THIS IS WHAT IT PURPORTS TO BE.

02:46PM 17        WE'RE NOT OFFERING THIS AS A BUSINESS RECORD, YOUR HONOR.

02:46PM 18    SO MS. MORAN NOT MEETING ALL OF THE ELEMENTS OF THE BUSINESS

02:46PM 19    RECORDS EXCEPTION AND THE AUTHENTICATION DECLARATION IS NEITHER

02:46PM 20    HERE NOR THERE.  THESE ARE ADMISSIONS BY THE DEFENDANTS.  THESE

02:46PM 21    ARE STATEMENTS BY A COCONSPIRATOR.  SO I DON'T THINK WE NEED TO

02:46PM 22    ANALYZE THIS AS A BUSINESS RECORD OF THERANOS.  AND FOR THOSE

02:46PM 23    REASONS, WE URGE THE COURT TO GRANT THE MOTION.

02:46PM 24            THE COURT:  MS. SAHARIA.

02:46PM 25            MS. SAHARIA:  I WOULD JUST NOTE THAT IF THEY'RE NOT

02:46PM 1    USING THIS DECLARATION AS A BUSINESS RECORDS CERTIFICATION,

02:46PM 2    THEN IT'S HEARSAY JUST LIKE ALL OF THE OTHER LETTERS FROM

02:46PM 3    HEARSAY PURPORTING TO AUTHENTICATE THE TEXT MESSAGES.

02:46PM 4            THE COURT:  I THOUGHT ABOUT THAT.  AND WHAT ABOUT

02:46PM 5    THE COCONSPIRATOR EXCEPTION?  DOES THAT LIE IN HERE AT ALL?  DO

02:47PM 6    THEY COME IN FOR THAT?

02:47PM 7            MS. SAHARIA:  I DON'T THINK THAT HAS ANYTHING TO DO

02:47PM 8    WITH AUTHENTICITY, YOUR HONOR.  THAT POTENTIALLY COULD HAVE TO

02:47PM 9    DO WITH THE ADMISSIBILITY OF THE STATEMENTS FROM MR. BALWANI

02:47PM 10   THAT ARE CONTAINED WITHIN THE TEXT MESSAGES.

02:47PM 11        SO I DO THINK THAT THAT COULD GO TO WHETHER THEY'RE

02:47PM 12   ADMISSIBLE UNDER A HEARSAY EXCEPTION, BUT I DON'T THINK THAT

02:47PM 13   SOLVES THE AUTHENTICITY ISSUE.

02:47PM 14           THE COURT:  OKAY.  ONE THING IS WHEN I LOOKED

02:47PM 15   THROUGH THE SPREADSHEET, I THINK IT MIGHT BENEFIT WHEN WE GET

02:47PM 16   TO THAT POINT AT TRIAL TO -- IF THIS DOES COME IN AND SOME OF

02:47PM 17   THEM DO COME IN, IT MIGHT BENEFIT, AND I'M SURE YOU'LL WORK ON

02:47PM 18   THE FORMAT, THERE'S SOME TYPE OF TIME STAMPING AND I

02:47PM 19   UNDERSTAND -- I DON'T REALLY UNDERSTAND HOW TEXTS WORK, BUT I

02:47PM 20   UNDERSTAND THAT SOMETIMES THEY DON'T TIME STAMP SEQUENTIALLY.

02:47PM 21   THERE'S A BREAK OR SOMETHING.  SO IT MIGHT BENEFIT.

02:47PM 22           MR. LEACH:  WE'RE HAPPY TO WORK WITH THE OTHER SIDE

02:47PM 23   ON THAT, YOUR HONOR.  THANK YOU.

02:47PM 24           THE COURT:  OKAY.  THANK YOU.

02:47PM 25           MS. SAHARIA:  THANK YOU.

02:47PM  1              THE COURT:  GREAT.  THANK YOU.  THIS IS UNDER

02:48PM  2     SUBMISSION.

02:48PM  3          SHALL WE TRY 564 AND SEE WHAT WE CAN DO?  I KNOW WE ARE

02:48PM  4     GETTING CLOSE TO THE TOP OF THE HOUR, AND I WANT TO GIVE PEOPLE

02:48PM  5     A BREAK.  WE'VE BEEN GOING TWO HOURS IN ABOUT TEN MINUTES, BUT

02:48PM  6     MAYBE WE CAN START THIS.

02:48PM  7              MS. SAHARIA:  THAT'S FINE, YOUR HONOR.

02:48PM  8              THE COURT:  MR. LEMENS.

02:48PM  9              MR. LEMENS:  ANDREW LEMENS FOR MS. HOLMES.  THANK

02:48PM  10    YOU, YOUR HONOR.

02:48PM  11          WHAT WE'RE DEALING WITH HERE IS THREE CATEGORIES OF THE

02:48PM  12    GOVERNMENT'S 404(B) NOTICE THAT RELATE TO PRACTICES WITHIN

02:48PM  13    THERANOS'S CLINICAL LABORATORY.

02:48PM  14          FIRST, AND JUST BRIEFLY TO DESCRIBE THE PRACTICES, HOW

02:48PM  15    RESULTS WERE CALCULATED FROM THE TSPU.  SO THIS IS A DEVICE

02:49PM  16    THAT TAKES SIX MEASUREMENTS.  IT THEN -- THOSE MEASUREMENTS

02:49PM  17    WERE THEN RUN THROUGH A SERIES OF STATISTICAL TOOLS OR

02:49PM  18    ALGORITHMS.  THOSE ALGORITHMS WERE DESIGNED BY PEOPLE MUCH

02:49PM  19    SMARTER THAN ME AND PH.D.'S IN THE FIELD.  AND THEN THAT

02:49PM  20    RESULT, A SINGLE RESULT, THAT COULD BE REPORTED TO A PATIENT OR

02:49PM  21    A PHYSICIAN.

02:49PM  22          THAT PRACTICE WAS ENDORSED BY THE FDA IN 2015 WHEN IT

02:49PM  23    APPROVED THERANOS'S DEVICE TO RUN AN HSB1 ASSAY.  THAT

02:49PM  24    INFORMATION WAS PRESENT TO THE FDA IN THE APPLICATION AND THAT

02:49PM  25    IS AT DOCKET 725 AT PAGE 74.  THAT WAS THE BASIS FOR THE

02:49PM  1    SUBSEQUENT APPROVAL.

02:49PM  2        THE SECOND PRACTICE WE'RE TALKING ABOUT IS HOW REFERENCE

02:49PM  3    RANGES FOR THERANOS'S TESTS WERE ESTABLISHED.  SO REFERENCE

02:49PM  4    RANGES BEING THE RANGE OF NORMAL RESULTS YOU WOULD EXPECT TO

02:49PM  5    SEE IN A HEALTHY PATIENT.  THAT IS INFORMATION THAT IS PROVIDED

02:50PM  6    AS CONTEXT FOR THE RESULTS WHEN IT WAS RECORDED.

02:50PM  7        THERE'S OBVIOUSLY A PROCESS BY WHICH YOU SET THOSE FOR A

02:50PM  8    PARTICULAR TEST ON A PARTICULAR DEVICE, AND THEN THEY ARE

02:50PM  9    ADJUSTED OVER TIME AS MORE DATA COMES IN FROM THE TESTING

02:50PM  10   PLACE.

02:50PM  11       THE THIRD PRACTICE BEING THE CONTENT OF THE REPORT THAT

02:50PM  12   WAS PROVIDED TO PATIENTS AND PHYSICIANS WITH TEST RESULTS.  I

02:50PM  13   ASSUME ALL OF US AT SOME POINT HAVE RECEIVED ONE OF THESE

02:50PM  14   REPORTS.  THERE'S OBVIOUSLY THE RESULTS FROM THE TESTING.  THE

02:50PM  15   QUESTION THAT I THINK THE GOVERNMENT RAISES IS WHAT ELSE SHOULD

02:50PM  16   HAVE, MUST HAVE, COULD HAVE BEEN INCLUDED?

02:50PM  17       THE GOVERNMENT, I THINK, CONTENDS THAT THESE ARE IMPROPER.

02:50PM  18   OUR SUBMISSION IS THAT THEY ARE CORE SCIENTIFIC TECHNICAL AND A

02:50PM  19   SPECIALIZED KNOWLEDGE.  THAT'S CONTEMPLATED BY RULE 702 AND

02:50PM  20   THAT THEIR DISCLOSURES TO DATE ARE INSUFFICIENT TO PRESENT THIS

02:51PM  21   EVIDENCE AT TRIAL.

02:51PM  22       THERE'S A LACK OF THE INDUSTRY STANDARD OR THE SCIENTIFIC

02:51PM  23   FIELD IN WHICH THESE OF PRACTICES EXIST IN THE DISCLOSURES.

02:51PM  24   HERE WE'RE TALKING AGAIN ABOUT DR. ROSENDORFF'S DISCLOSURES.

02:51PM  25   HE'S THE LABORATORY DIRECTOR.

02:51PM  1        THE GOVERNMENT CONCEDES IT WILL NOT TRY TO COMPARE THE

02:51PM  2    THIRD PRACTICE REGARDING REPORTING TEST RESULTS TO INDUSTRY

02:51PM  3    STANDARDS, AND I THINK THE COURT SHOULD HOLD THE GOVERNMENT TO

02:51PM  4    THAT CONCESSION IN AN ORDER.

02:51PM  5        AND AS TO THE OTHER TWO PRACTICES, YOU DON'T SEE THAT IN

02:51PM  6    THEIR DISCLOSURES TO DATE, BOTH IN DR. ROSENDORFF'S EXPERT

02:51PM  7    DISCLOSURES AND THE STATEMENTS HE HAS OTHERWISE GIVEN TO THE

02:51PM  8    GOVERNMENT.

02:51PM  9        THE SECOND AND I THINK THE BIGGER PROBLEM IS THAT THE

02:51PM 10    GOVERNMENT LACKS SUFFICIENT OPINIONS FOR THE DEFENSE TO TEST

02:51PM 11    THEM OR FOR THE COURT TO TEST THEM AS PART OF ITS GATEKEEPING

02:51PM 12    FUNCTION.

02:51PM 13        TAKE THE FIRST PRACTICE RELATED TO CALCULATING RESULTS ON

02:52PM 14    THE TSPU.  DR. ROSENDORFF, AND THIS IS AT 580-4 WHICH IS

02:52PM 15    DEFENSE EXHIBIT 5 AT PAGE 13, DR. ROSENDORFF'S OPINION IN

02:52PM 16    TOTAL, THIS PROCESS WAS NOT IDEAL BECAUSE IT MAY HAVE TENDED TO

02:52PM 17    INCREASE THE APPEARANCE OF PRECISION BEYOND THE LAB TEST'S TRUE

02:52PM 18    PERFORMANCE.  IT WOULD HAVE BEEN BETTER TO RUN A GIVEN ASSAY

02:52PM 19    ONLY ONCE USING A METHOD WITH MAXIMUM ACCURACY OF PRECISION.

02:52PM 20    THAT'S IT.

02:52PM 21        THERE'S NO METHODOLOGY FOR HOW HE REACHED THIS CONCLUSION,

02:52PM 22    THERE'S NO UNDERSTANDING WHAT DATA HE RELIED ON, AND IT'S AN

02:52PM 23    AFTER-THE-FACT ANALYSIS.

02:52PM 24        WE KNOW THIS COULD NOT HAVE BEEN BASED ON WHAT HE

02:52PM 25    EXPERIENCED AT THERANOS BECAUSE HE APPROVED OF THOSE PRACTICES

02:52PM 1    AT THE TIME WHEN HE WAS THE LABORATORY DIRECTOR.  HE TOLD THE

02:52PM 2    GOVERNMENT HE DIDN'T UNDERSTAND HOW THE ALGORITHM WORKED THAT

02:52PM 3    MADE THE STATISTICAL CALCULATION.

02:52PM 4        SO IT COMES LATER IN HINDSIGHT HIS OPINION CHANGES, BUT WE

02:53PM 5    HAVE NO BASIS TO UNDERSTAND WHAT HE'S RELYING ON THROUGH THIS

02:53PM 6    NEW -- HIS NEW THINKING.  THE DISCLOSURE IS INADEQUATE.

02:53PM 7    THERE'S NO CONNECTION TO WHAT HE DID.  AND THE GOVERNMENT

02:53PM 8    HASN'T -- YOU KNOW, HAS HAD THESE OPINIONS OUT THERE FOR SOME

02:53PM 9    TIME.  IT HAS NOT SUPPLEMENTED THEM.  IT HAS NOT SOUGHT TO

02:53PM 10   SUPPLEMENT THEM.

02:53PM 11       SO IF IT'S GOING TO COME IN AT TRIAL, IF DR. ROSENDORFF IS

02:53PM 12   GOING TO BE ALLOWED TO TESTIFY, WHICH WE DON'T THINK HE SHOULD

02:53PM 13   BE AS TO THESE PRACTICES, I THINK AT THE VERY LEAST WE NEED THE

02:53PM 14   OPPORTUNITY TO TEST THEM.

02:53PM 15       NOW, I NOTE THAT YOUR HONOR HAS SCHEDULED A DAUBERT

02:53PM 16   HEARING FOR DR. MASTER.  PERHAPS THAT'S AN OPPORTUNITY FOR US

02:53PM 17   TO ADDRESS THIS ISSUE AS WELL AND FURTHER FLESH OUT THE OPINION

02:53PM 18   AND -- THE BASIS AND METHODOLOGIES FOR HIS OPINIONS, BUT YOU

02:53PM 19   NEED SOMETHING MORE BEFORE THAT EVIDENCE CAN GO TO THE JURY.

02:54PM 20       THE GOVERNMENT HAS A NUMBER OF RESPONSES TO THIS ISSUE.

02:54PM 21   WE THINK THEY'RE UNAVAILING FOR THE REFERENCE RANGES IT CLAIMS

02:54PM 22   IT'S STILL INVESTIGATING THE ISSUE.  WE'RE PRETTY CLOSE TO

02:54PM 23   TRIAL, AND THIS, AGAIN, HAS BEEN OUT IN THE ETHER FOR SOME

02:54PM 24   TIME.  I THINK THAT RINGS A LITTLE HOLLOW.

02:54PM 25       THE GOVERNMENT TRIES TO CONVERT THESE COMPLEX AND

02:54PM 1    STATISTICAL CONCEPTS INTO WHAT IT CALLS A SIMPLE HYPOTHETICAL

02:54PM 2    ABOUT AN UNDISPUTABLE TRUTH, AND THIS IS AT DOCKET 661 AT

02:54PM 3    PAGE 3 TO 4 OF ITS OPPOSITION.  THAT'S A TWO-PAGE HYPOTHETICAL

02:54PM 4    WITHOUT ANY CITATION TO LITERATURE, SCIENTIFIC REFERENCES,

02:54PM 5    TESTIMONY.  I DON'T KNOW WHERE IT CAME FROM, BUT I HAVE

02:54PM 6    QUESTIONS ABOUT ITS PREMISE AND ABOUT THE ASSUMPTIONS THAT THE

02:54PM 7    GOVERNMENT IS MAKING.

02:54PM 8         AND I DON'T -- I THINK THE HYPOTHETICAL ITSELF

02:54PM 9    DEMONSTRATES THAT THIS IS CORE 702 OPINION TESTIMONY THAT NEEDS

02:55PM 10   AN EXPERT.

02:55PM 11        AND THEN FINALLY, I THINK THE GOVERNMENT SUGGESTS, WELL,

02:55PM 12   DR. ROSENDORFF CAN FILL IN THE GAPS AT TRIAL BASED ON HIS

02:55PM 13   EXPERIENCE.  WE KNOW THAT EXPERIENCE COULDN'T HAVE COME FROM

02:55PM 14   THERANOS BECAUSE HE APPROVED OF THESE PRACTICES AT THE TIME.

02:55PM 15        THE GOVERNMENT CITES THE ADAMS CASE WHICH IS 760 F.3D 1332

02:55PM 16   OUT OF THE ELEVENTH CIRCUIT TO SUGGEST THAT EXPERIENCE ALONE IS

02:55PM 17   ENOUGH.

02:55PM 18        BUT EVEN ON ITS FACTS, ADAMS LOOKED AT -- THE EXPERT AT

02:55PM 19   ISSUE IN ADAMS HAD A METHODOLOGY, A DATA THAT THEY HAD

02:55PM 20   REVIEWED, AND SO I THINK IT'S DISTINGUISHABLE HERE.  AND WE

02:55PM 21   DON'T HAVE THAT FOR DR. ROSENDORFF.

02:55PM 22             THE COURT:  I REFERENCED THIS IN A COUPLE OF OTHER

02:55PM 23   MOTIONS, MR. LEMENS, BUT IS THIS -- COULD THIS COME IN JUST AS

02:55PM 24   FACT EVIDENCE, OBSERVATIONS OF THE LAB DIRECTOR, THIS IS HOW WE

02:55PM 25   DID THINGS AND WHEN WE DID THINGS THIS WAY, THIS IS WHAT YOU

02:56PM 1    GET?  THIS IS THE SPREAD, THIS IS THE RESULT.  CAN HE TESTIFY

02:56PM 2    ABOUT THAT WITHOUT MERGING INTO OR CHANGING LANES INTO A 702

02:56PM 3    POSITION?

02:56PM 4          MR. LEMENS:  RIGHT.  AND I THINK THIS IS GOING TO BE

02:56PM 5    AN ISSUE CLEARLY FOR DR. ROSENDORFF WE'LL ADDRESS AT TRIAL, BUT

02:56PM 6    CERTAINLY WE ARE NOT CHALLENGING HIS PERCIPIENT TESTIMONY AT

02:56PM 7    THE TIME.  BUT THESE OPINION AND THIS TESTIMONY THAT THE

02:56PM 8    GOVERNMENT HAS PROFFERED WAS NOT FROM HIS TIME AT THERANOS.  IT

02:56PM 9    COMES AFTER THE FACT.

02:56PM 10         THE COURT:  THE EXPLANATIONS, RIGHT.

02:56PM 11         MR. LEMENS:  WELL, THE SUBSEQUENT, WELL, NOW

02:56PM 12   THINKING IN RETROSPECT I HAVE A DIFFERENT VIEW.  I DON'T THINK

02:56PM 13   THAT COMES IN WITHOUT A SUFFICIENT EXPERT BASIS.

02:56PM 14       IF HE WANTS TO DESCRIBE THE FACT AS HE UNDERSTOOD IT AT

02:56PM 15   THE TIME WHILE AT THE COMPANY, I DON'T THINK WE HAVE, YOU

02:56PM 16   KNOW -- WE, OF COURSE, MAY HAVE OTHER OBJECTIONS, BUT THAT'S

02:56PM 17   NOT THE ISSUE HERE.

02:56PM 18       IT'S THOSE AFTER-THE-FACT OPINIONS OR HIS ATTEMPT TO

02:57PM 19   TAKE HIS -- WITH ONE CAVEAT, THE GOVERNMENT SEEMS TO MAKE HIS

02:57PM 20   EMAILS CONTEMPORANEOUSLY AND MAYBE CONVERT THEM INTO EXPERT

02:57PM 21   TESTIMONY.  AND I THINK YOU NEED A LITTLE BIT MORE FOR HIM TO

02:57PM 22   ADOPT THAT STATEMENT TO SUGGEST, YES, THIS IS THE INDUSTRY

02:57PM 23   STANDARD, THIS IS THE BASIS, IN ORDER FOR US TO LOOK AT AN

02:57PM 24   EMAIL THAT HE SENT SEVERAL YEARS AGO AND ASSUME IT'S AN EXPERT

02:57PM 25   OPINION TODAY.

02:57PM  1              THE COURT:  WHO SPEAKS TO THIS?  MR. BOSTIC?

02:57PM  2              MR. BOSTIC:  YES, YOUR HONOR.  GOOD AFTERNOON AGAIN.

02:57PM  3          LET ME TAKE THESE TOPICS OR THESE SUBJECT AREAS ONE AT A

02:57PM  4      TIME IF I MAY.

02:57PM  5          THE GOVERNMENT'S OVERALL POINT HERE IS THAT FOR THE VAST

02:57PM  6      MAJORITY OF THIS, AS THE COURT NOTED, THIS SHOULD BE SIMPLE

02:57PM  7      FACT EVIDENCE.  TO THE EXTENT THAT EXPERT DISCLOSURE IS

02:57PM  8      NECESSARY, THAT DISCLOSURE HAS BEEN MADE, AND IT'S SUFFICIENT.

02:57PM  9          LET ME START WITH THE MULTIPLEXING TEST RESULTS METHOD

02:58PM 10      THAT THERANOS USED.  DR. ROSENDORFF HAS EXPERIENCE AS A LAB

02:58PM 11      DIRECTOR IN MULTIPLE LOCATIONS, HE'S WORKED WITH A VARIETY OF

02:58PM 12      DIFFERENT TYPES OF DEVICES.

02:58PM 13          THE DEVICES HE WORKED WITH AT THERANOS USED A METHOD BY

02:58PM 14      WHICH ASSAYS ARE RUN MULTIPLE TIMES, RESULTS ARE GENERATED ALL

02:58PM 15      IN PARALLEL, AND THEN THE AVERAGE OF THOSE RESULTS ARE TAKEN,

02:58PM 16      AND THEN OUR UNDERSTANDING IS CERTAIN OUTLIERS, RESULTS THAT

02:58PM 17      MIGHT BE FAR AFIELD FROM THE REST, ARE DISCARDED AND NOT

02:58PM 18      INCLUDED IN THE CALCULATION.

02:58PM 19          THE END RESULT OF THIS IS THAT A MACHINE OR AN ANALYZER

02:58PM 20      CAN PRODUCE A WIDESPREAD OF RESULTS FOR ONE TEST, FOR ONE

02:58PM 21      SAMPLE INDICATING A LACK OF CONSISTENCY BUT A LIKELY LACK OF

02:58PM 22      ACCURACY AND A LACK OF RELIABILITY.  IT CAN PRODUCE THOSE

02:58PM 23      VARIETY OF RESULTS BUT OUTPUT ONLY ONE.

02:58PM 24          THE METHOD OF RUNNING EACH ASSAY MULTIPLE TIMES BUT THEN

02:59PM 25      ONLY REPORTING THE AVERAGE RESULT WOULD TEND TO MASK THAT

02:59PM   1     INACCURACY IN THE RESULTS.

02:59PM   2          SO THE COURT SHOULD NOTE THAT DR. ROSENDORFF IS NOT

02:59PM   3     ADVANCING ANY CONCLUSION FROM THIS PRACTICE THAT THERE WAS

02:59PM   4     INACCURACY IN THERANOS'S LAB TEST RESULTS.  THAT EVIDENCE IS

02:59PM   5     ELSEWHERE, AND THERE'S AMPLE EVIDENCE OF THE ACCURACY AND

02:59PM   6     RELIABILITY PROBLEMS THAT PLAGUED THERANOS'S TECHNOLOGY AND ITS

02:59PM   7     TESTS.

02:59PM   8          THIS FACT IS SIMPLY ABOUT A MANNER THAT WAS USED TO

02:59PM   9     CONTRIBUTE TO THE MASKING OR THE HIDING OF THE INACCURACY AND

02:59PM  10     THE VARIABILITY IN THERANOS'S TESTS, AND VARIABILITY IS A KEY

02:59PM  11     ISSUE IN THIS CASE.

02:59PM  12          COEFFICIENT OF VARIATION IS A STATISTIC OR A MEASURE OF

02:59PM  13     THE CONSISTENCY OF A LAB TEST RESULTS, AND DEFENDANT HERSELF

02:59PM  14     BOASTED ABOUT THERANOS'S REVOLUTIONARY LOW COEFFICIENT OF

03:00PM  15     VARIATION WHEN SOLICITING INVESTMENTS FROM VICTIMS IN THIS

03:00PM  16     CASE.  IT IS A RELEVANT FACT FOR THE JURY TO KNOW THAT THE

03:00PM  17     METHODS THAT THERANOS USED BY DEFINITION WOULD TEND TO MASK

03:00PM  18     HIGHER VARIABILITY IN THEIR LAB TEST RESULTS.

03:00PM  19          AS FAR AS METHODOLOGY FOR CONCLUDING THAT, THE OPINION

03:00PM  20     REALLY IS AS SIMPLE AS IT SEEMS.  IT DOES REQUIRE HYPOTHETICALS

03:00PM  21     POSSIBLY TO UNDERSTAND IT WELL, BUT IT SIMPLY IS A FACT OF HOW

03:00PM  22     THIS WOULD WORK.  IT DOESN'T REQUIRE DETAILED KNOWLEDGE OF THE

03:00PM  23     PRECISE ALGORITHM OR ANY KIND OF STUDY OF DATA TO BE CONDUCTED.

03:00PM  24     IT'S JUST A FACT THAT DR. ROSENDORFF CAN EXPLAIN THAT USING

03:00PM  25     THIS METHOD WOULD TEND TO CONCEAL VARIABILITY IN THESE LIVE

03:00PM 1    TEST RESULTS.

03:00PM 2         THE FACT THAT HE REACHED THIS OPINION AFTER LEAVING

03:00PM 3    THERANOS, I STRUGGLE TO SEE THE RELEVANCE OF THAT OR WHY THAT

03:00PM 4    IS A HINDRANCE TO ITS ADMISSIBILITY.

03:01PM 5         DR. ROSENDORFF IS WELL POSITIONED TO MAKE THAT CONCLUSION.

03:01PM 6    HE WAS THERE AT THERANOS WORKING WITH THESE ANALYZERS, AND SO

03:01PM 7    HE'S CERTAINLY QUALIFIED TO UNDERSTAND HOW THEY WORKED.

03:01PM 8         HIS GENERAL LAB DIRECTOR EXPERIENCE GIVES HIM A BASIS ON

03:01PM 9    WHICH TO OPINE ABOUT HOW THEY RELATED TO OTHER CONVENTIONAL

03:01PM 10   MACHINES AND THE FACT THAT HE NOW BELIEVES THAT THERANOS'S

03:01PM 11   APPROACH WAS, AS HE SAYS NOT IDEAL, THAT IT CREATED THIS RISK

03:01PM 12   OF HIDING INCONSISTENCY, THAT OPINION IS ADMISSIBLE BECAUSE

03:01PM 13   IT'S THE OPINION THAT HE HOLDS TODAY.  IT'S HIS CURRENT VIEW.

03:01PM 14   THERE'S NO REASON THAT HE SHOULD BE DISQUALIFIED FROM GIVING

03:01PM 15   THAT OPINION BECAUSE HE'S ONLY SAID IT RECENTLY.

03:01PM 16        THERE'S ALSO EVIDENCE THAT WHEN DR. ROSENDORFF WAS LAB

03:01PM 17   DIRECTOR AT THERANOS, HIS VIEWS WERE FREQUENTLY OVERRULED OR

03:01PM 18   OVERRIDDEN BY DEFENDANT AND MR. BALWANI IN PARTICULAR.

03:02PM 19        SO IT'S PROBLEMATIC FOR THE DEFENSE TO SAY THAT THE JURY

03:02PM 20   SHOULD NOT HEAR ANY CRITICISM OF THERANOS'S METHODS FROM

03:02PM 21   DR. ROSENDORFF BECAUSE HE APPROVED THEM AT THE TIME.

03:02PM 22        WELL, WHEN HE WAS THERE, HE RAISED CONCERNS, HE WAS SHOT

03:02PM 23   DOWN, AND EVENTUALLY HE WAS FORCED TO LEAVE THE COMPANY, AND AS

03:02PM 24   A RESULT IT'S NOT SURPRISING AT ALL THAT HE NOW, NOT IN

03:02PM 25   RETROSPECT BUT IN LIGHT OF HIS VIEWS AT THE TIME, HE WOULD HAVE

03:02PM   1    PROBLEMS WITH SEVERAL OF THERANOS'S APPROACHES.

03:02PM   2        SO UNLESS THE COURT HAS CONCERNS ABOUT THE FIRST TOPIC,

03:02PM   3    I'LL MOVE TO THE NEXT.

03:02PM   4            THE COURT:  NO.

03:02PM   5            MR. BOSTIC:  AS TO THE SECOND TOPIC REGARDING

03:02PM   6    REFERENCE RANGES, I SHOULD START BY JUST CLARIFYING WHAT THE

03:02PM   7    GOVERNMENT PRESENTLY INTENDS TO OFFER ON THAT TOPIC.

03:02PM   8        HERE REFERENCE RANGES ARE A RANGE OF NORMAL VALUES

03:02PM   9    ASSOCIATED WITH A PARTICULAR ASSAY.  SO WHEN A PATIENT RECEIVES

03:03PM  10    A RESULT, THE LAB ALSO WILL FIND A REFERENCE RANGE SO THAT THE

03:03PM  11    PATIENT CAN DETERMINE WHETHER THAT RESULT IS IN THE NORMAL

03:03PM  12    RANGE OR NOT.

03:03PM  13        AT TRIAL THERE WILL BE SUBSTANTIAL EVIDENCE ABOUT THE

03:03PM  14    EQUIVALENCE OR REALLY LACK OF EQUIVALENCE BETWEEN BLOOD SAMPLES

03:03PM  15    DRAWN FROM THE VEIN AND BLOOD SAMPLES TAKER FROM A FINGERSTICK.

03:03PM  16        THERE WAS AN ACTIVE AND ONGOING DISPUTE BETWEEN

03:03PM  17    DR. ROSENDORFF AND THE DEFENDANTS IN THIS CASE ABOUT WHETHER

03:03PM  18    THOSE TWO TYPES OF SAMPLES COULD BE TREATED EQUIVALENTLY, AND

03:03PM  19    THE COURT WILL HEAR THAT TESTIMONY, AND THE JURY WILL HEAR THAT

03:03PM  20    TESTIMONY.

03:03PM  21        IN PARTICULAR, DR. ROSENDORFF IS EXPECTED TO TESTIFY THAT

03:03PM  22    HE WOULD HAVE PREFERRED TO HAVE SEPARATE REFERENCE RANGES FOR

03:03PM  23    FINGERSTICK SAMPLES VERSUS VEIN DRAW SAMPLES.  AND HE CAN

03:03PM  24    EXPLAIN AND HAS EXPLAINED THE DIFFERENCES BETWEEN THOSE TWO

03:03PM  25    SAMPLES AND WHY THAT IS NECESSARY, WHY THE SAME REFERENCE RANGE

03:03PM  1    CANNOT BE USED FOR SAMPLES DRAWN FROM THOSE TWO DIFFERENT

03:03PM  2    METHODS.

03:03PM  3         THE DEFENDANTS DISAGREED, AND THE INFERENCE THAT THE JURY

03:04PM  4    CAN DRAW FROM THAT IS THAT THE DEFENDANTS WERE MORE CONCERNED

03:04PM  5    WITH CONCEALING THE USE AND RELIANCE ON THIRD PARTY DEVICES,

03:04PM  6    CONCEALING THEIR RELIANCE ON VEIN DRAWS, BUT THEY WERE MORE

03:04PM  7    CONCERNED WITH THAT THAN THEY WERE WITH PROVIDING PATIENTS AND

03:04PM  8    DOCTORS WITH THE INFORMATION THAT THEY NEEDED TO RELY ON THE

03:04PM  9    TEST RESULTS THAT THERANOS WAS PROVIDING.  SO THAT'S WHY THAT

03:04PM  10   IS RELEVANT.

03:04PM  11        IN ADDITION, IT'S SIMPLY FACT TESTIMONY IF DR. ROSENDORFF

03:04PM  12   TESTIFIES THAT HE FELT RUSHED LEADING UP TO THE LAUNCH, IF HE

03:04PM  13   FELT THERE WAS TIME PRESSURE ON HIM TO MOVE FORWARD WITHOUT

03:04PM  14   PUTTING AS MUCH WORK INTO THE REFERENCE RANGES AS HE WOULD HAVE

03:04PM  15   WANTED.  THAT HAS, I BELIEVE, BEEN DISCLOSED AS AN OPINION, OR

03:04PM  16   IF NOT, IT'S IN HIS MEMORANDA OF INTERVIEWS.  BUT THAT'S SIMPLY

03:04PM  17   FACT EVIDENCE.  IT'S NOT OPINION.  IT DOESN'T RELATE TO

03:04PM  18   INDUSTRY STANDARDS.  IT ALL GOES TO DEFENDANT'S INTENT AND HOW

03:05PM  19   DEFENDANTS PRIORITIZED THE ACCURACY OF THE TESTS VERSUS THE

03:05PM  20   REPUTATION OF THE COMPANY, WHICH IS A KEY ISSUE IN THIS CASE.

03:05PM  21        MOVING ON TO THE THIRD ISSUE.  WHEN IT COMES TO THE

03:05PM  22   INFORMATION THAT THERANOS COULD HAVE BUT DID NOT PROVIDE TO ITS

03:05PM  23   PATIENTS, THIS IS SIMPLE FACT EVIDENCE ABOUT INTENT, ABOUT

03:05PM  24   SCHEME TO DEFRAUD.  THIS HAS NOTHING TO DO, AGAIN, WITH

03:05PM  25   INDUSTRY STANDARDS OR CLIA COME COMPLIANCE.  THERE WILL BE

03:05PM 1      EVIDENCE IN A VARIETY OF FORMS THAT SHOWS THAT WHEN THERANOS

03:05PM 2      ENCOUNTERED PROBLEMS WITH ITS TESTS ESPECIALLY, IT TOOK GREAT

03:05PM 3      CARE IN CONCEALING SOME OF THE DETAIL SO THOSE PROBLEMS FROM

03:05PM 4      ITS CUSTOMERS.

03:05PM 5          THE EXAMPLES IN THE GOVERNMENT'S BRIEF AT DOCUMENT 661 ON

03:05PM 6      THE DOCKET MAKE IT CLEAR THAT AT VARIOUS INSTANCES THERANOS

03:06PM 7      COULD HAVE PROVIDED PATIENTS WITH INFORMATION THAT WOULD HAVE

03:06PM 8      BEEN BENEFICIAL FOR PATIENTS TO HAVE ABOUT WHY A RESULT MIGHT

03:06PM 9      DIFFER FROM ANOTHER RESULT, OR WHY A TEST MIGHT NOT BE

03:06PM 10     AVAILABLE, WHY A RESULT WAS VOIDED.

03:06PM 11         THERANOS WITHHELD THAT INFORMATION.  AND IT'S FAIR FOR THE

03:06PM 12     JURY TO INFER THAT THAT WAS IN FURTHERANCE OF THE FRAUD BECAUSE

03:06PM 13     HAD THAT INFORMATION BEEN DISCLOSED, HAD THOSE PATIENTS BEEN

03:06PM 14     TOLD THAT THERANOS WAS RUNNING THE SAME TESTS, FOR EXAMPLE, ON

03:06PM 15     MULTIPLE DIFFERENT TYPES OF DEVICES, THERANOS'S RELIANCE ON

03:06PM 16     THIRD PARTY DEVICES WOULD HAVE COME OUT.  AND THAT WAS A SECRET

03:06PM 17     THAT THERANOS WAS ACTIVELY WORKING TO PROTECT SO THAT PEOPLE

03:06PM 18     WOULD CONTINUE TO HAVE THE IMPRESSION THAT THERANOS HAD ONE

03:06PM 19     ANALYZER THAT COULD PERFORM ALL OF THE TESTS ON ITS MENU.

03:06PM 20         SO WHEN THERANOS MADE THE DECISION -- AND AGAIN, THESE

03:06PM 21     DECISIONS IN SEVERAL CASES CAN BE TRACED UP TO THE DEFENDANTS

03:06PM 22     IN THIS CASE.  WHEN THERANOS MADE THESE DECISIONS, OR WHEN

03:06PM 23     DEFENDANTS MADE THESE DECISIONS, IT WAS WITH THE INTENT TO

03:06PM 24     FURTHER THE FRAUD, TO CONCEAL THE TRUTH, AND THAT COMES IN AS

03:07PM 25     SIMPLE FACT EVIDENCE WITHOUT THE NEED FOR AN EXPERT OPINION.

03:07PM 1              THE COURT:  ALL RIGHT.  MR. LEMENS.

03:07PM 2              MR. LEMENS:  YOUR HONOR, I'LL BE BRIEF KNOWING THAT

03:07PM 3     I'M THE ONLY THING STANDING BETWEEN ME AND A BREAK.

03:07PM 4          SO ON THE FIRST ISSUE, DR. ROSENDORFF'S OPINION HAS

03:07PM 5     CHANGED BETWEEN THE TIME HE WAS AT THE COMPANY AND THE TIME HE

03:07PM 6     LEFT, AND I THINK WE'RE ENTITLED TO UNDERSTAND THE BASIS AND

03:07PM 7     THE METHODOLOGY FOR THIS -- NEW BELIEFS AND NEW OPINION.

03:07PM 8          ON THE REFERENCE RANGES, WHAT HE UNDERSTOOD AT THE TIME,

03:07PM 9     PERCIPIENT KNOWLEDGE, CERTAINLY I THINK YOU AND I DISCUSSED,

03:07PM 10    AND THERE MAY BE OTHER OBJECTIONS BUT THAT'S NOT THE ISSUE, BUT

03:07PM 11    IF YOU TRY TO CLOAK THAT IN THE GUISE OF EXPERT TESTIMONY OR IF

03:07PM 12    HE OFFERS AN OPINION ABOUT -- WHAT HE DOES NOT OFFER AN OPINION

03:07PM 13    SO FAR AS I'M AWARE AS WHAT IMPACT THAT COULD HAVE HAD ON THE

03:07PM 14    ACCURACY AND THE RELIABILITY OF THE TECHNOLOGY OR HOW IT

03:08PM 15    RELATES TO THE ACCURACY AND RELIABILITY OF THE TECHNOLOGY.  IF

03:08PM 16    HE'S GOING TO GO TO THAT FAR, THEN AGAIN, WE NEED A BASIS AND

03:08PM 17    METHODOLOGY UNDER 702.

03:08PM 18         AND ON THE THIRD ISSUE, MR. BOSTIC SAID THAT THIS EVIDENCE

03:08PM 19    COMES IN BECAUSE IT SHOWS WHAT COULD HAVE BEEN BENEFICIAL TO

03:08PM 20    PATIENTS OR PHYSICIANS.  THAT IS SPECIALIZED TECHNICAL

03:08PM 21    KNOWLEDGE WITHIN A VERY PARTICULAR FIELD.

03:08PM 22         IT'S UNCLEAR HOW THAT CONNECTS TO ACCURACY AND RELIABILITY

03:08PM 23    ISSUES WITH THE TECHNOLOGY, BUT EVEN WHAT SHOULD HAVE BEEN

03:08PM 24    INCLUDED OR MUST HAVE BEEN INCLUDED, FOR THE JURY TO HEAR THAT,

03:08PM 25    I THINK THEY NEED THE CONTEXT OF WHAT SOMEONE IN THAT INDUSTRY

03:08PM 1    OR SOMEONE IN THAT FIELD WOULD HAVE EXPECTED.

03:08PM 2        I DON'T THINK IT'S -- I THINK YOU START TO GET INTO 403

03:08PM 3    ISSUES IF THE GOVERNMENT IS SIMPLY GOING TO PUT FORWARD AND

03:08PM 4    SAY, WELL, COULD HE HAVE INCLUDED THAT?  OH, AND HE DIDN'T.

03:08PM 5    OKAY.  AND THEN DRAW AN IMPROPER INFERENCE.

03:08PM 6        IF THERE'S GOING TO BE A DISCUSSION OF WHAT SHOULD HAVE

03:08PM 7    BEEN INCLUDED IN THESE TEST REPORTS, IT SHOULD BE WITH A

03:08PM 8    COMPARATOR TO WHAT IS NORMALLY INCLUDED WITHIN THAT PARTICULAR

03:09PM 9    FIELD.

03:09PM 10           THE COURT:  WELL, MR. BOSTIC, ARE YOU SUGGESTING

03:09PM 11   THAT THE EVIDENCE WILL BE THAT THERANOS WILLFULLY WITHHELD

03:09PM 12   TESTING INFORMATION?

03:09PM 13           MR. BOSTIC:  YES, YOUR HONOR.

03:09PM 14       SO THIS ISN'T ABOUT WHAT COULD BE CHARACTERIZED AS A

03:09PM 15   NEGLIGENT OR WELL MEANING FAILURE TO INCLUDE ADDITIONAL DETAIL.

03:09PM 16       THIS IS ABOUT ACTIVELY WITHHOLDING INFORMATION FROM

03:09PM 17   PATIENTS AND DOCTORS WITH THE GOAL OF CONCEALING THE EXISTENCE

03:09PM 18   OF THE FRAUD.

03:09PM 19           MR. LEMENS:  WELL, IN A WORLD WHERE YOU'RE WORKING

03:09PM 20   IN A VERY SPECIALIZED FIELD, DO WE -- ARE WE REQUIRED TO REPORT

03:09PM 21   THIS, RIGHT?  IS THIS SOMETHING THAT SHOULD BE SHARED?

03:09PM 22       THE COMPANY IS CERTAINLY ENTITLED TO MAKE A DECISION, AND

03:09PM 23   THERE COULD BE INNOCENT EXPLANATIONS.  NO, WE DON'T WANT TO

03:09PM 24   CLUTTER UP OUR REPORTS.  WE WANT THESE TO BE SIMPLE AND

03:09PM 25   STRAIGHTFORWARD.  WE DON'T THINK THAT'S NECESSARY.  THERE NEEDS

1    TO BE SOME SORT OF EXPLANATION TO THE JURY TO PUT THIS IN

2    CONTEXT.

3            MR. BOSTIC:  IF I MAY PROVIDE AN EXAMPLE,

4    YOUR HONOR.

5        SO THIS IS IN THE GOVERNMENT'S BRIEF SO I WON'T BELABOR

6    THE POINT, BUT WHEN THERANOS WAS OFFERING HCG TESTS DESIGNED TO

7    PRIMARILY DETECT WHETHER A PATIENT IS PREGNANT OR NOT AND THE

8    HEALTH AND PROGRESS OF THE PREGNANCY, THERANOS ENCOUNTERED

9    REPEATED PROBLEMS WITH THE ACCURACY OF ITS HCG TESTS.

10        RATHER THAN TELL DOCTORS AND PATIENTS THAT IT WAS

11    EXPERIENCING PROBLEMS WITH THOSE TESTS, WHICH WOULD ALLOW

12    DOCTORS AND PATIENTS TO REEVALUATE RESULTS THAT THEY HAD GOTTEN

13    BEFORE, GO ELSEWHERE IF THEY NEEDED TESTING IN THE SHORT TERM,

14    THERANOS INSTEAD TOLD DOCTORS AND PATIENTS THAT THIS WAS A

15    TEMPORARY, QUOTE, "ROUTINE QUALITY CHECK RELATED TO THERANOS'S

16    EXPANDING PATIENT POPULATION."

17        SO THE JURY SHOULD KNOW ABOUT THAT BECAUSE THE JURY CAN

18    INFER FROM THAT, THAT THERANOS WAS WORKING ACTIVELY TO CONCEAL

19    THE PROBLEMS WITH ITS TESTS.

20        NOW, THIS ISN'T ABOUT WHETHER INDUSTRY STANDARD WOULD

21    REQUIRE THERANOS TO DISCLOSE THAT INFORMATION, AND IT'S NOT

22    LIKE THERE'S A REGULATION SOMEWHERE ON THE BOOK THAT REQUIRES

23    THAT.  THAT'S WHY THERE ISN'T THE TERRITORY OF EXPERT

24    TESTIMONY.  THIS ISN'T A REGULATORY ACTION.  THIS IS ABOUT THE

25    INTENT OF THE DEFENDANTS AND THEIR COCONSPIRATORS IN DECIDING

03:11PM   1    TO WITHHOLD THAT INFORMATION FROM PEOPLE WHO TURNED OUT TO BE

03:11PM   2    THE VICTIMS IN THIS CASE.

03:11PM   3              THE COURT:  SO, MR. LEMENS, THAT'S WHAT I WAS

03:11PM   4    REFERENCING BEFORE, THE FACT THAT THE CONDUCT THAT ACTUALLY WAS

03:11PM   5    TAKEN, AND, THAT IS, A DIFFERENT EXPLANATION WAS OFFERED I

03:11PM   6    SUPPOSE.

03:11PM   7              MR. LEMENS:  SURE.  I THINK IF THERE'S AN ALLEGATION

03:11PM   8    OF SOMETHING INCONSISTENT OR WITH THIS PARTICULAR EXAMPLE.

03:11PM   9         WHAT I DON'T HEAR IS THAT THEY WERE REQUIRED TO OR SHOULD

03:11PM  10    HAVE OR PUT ANY GUISE OF -- THAT THEY DID SOMETHING WRONG

03:11PM  11    COMPARED TO THE INDUSTRY, AND THAT'S I THINK WHERE OUR CONCERN

03:11PM  12    IS, IS THAT THEY'RE ASSUMING THAT YOU SHOULD HAVE DONE THIS BUT

03:11PM  13    YOU DIDN'T.

03:11PM  14         AND WHENEVER -- IF YOU'RE DEFINING WHAT AN IDEAL LAB

03:11PM  15    REPORT LOOKS LIKE OR WHAT INFORMATION SHOULD BE INCLUDED IN

03:11PM  16    THAT REPORT, THAT'S, I THINK, WHERE WE RUN INTO THIS ISSUE, AND

03:12PM  17    I THINK IT'S SOMETHING THAT WE'RE GOING TO NEED TO OR HOPEFULLY

03:12PM  18    YOUR HONOR WILL POLICE CAREFULLY AS WE PROCEED THROUGH THE

03:12PM  19    TRIAL GIVEN THE EXPERT ISSUES OF THE PREJUDICE.

03:12PM  20              THE COURT:  I THINK I CAPTURE YOUR POSITION.  THANK

03:12PM  21    YOU.

03:12PM  22              MR. BOSTIC:  YOUR HONOR, VERY BRIEFLY.

03:12PM  23         THIS IS NOT JUST ABOUT THE CONTENT OF THE LAB REPORTS.

03:12PM  24    THIS IS ALSO ABOUT THE COMMUNICATIONS BETWEEN THERANOS STAFF

03:12PM  25    AND DOCTORS AND PATIENTS AFTER THE FACT.

03:12PM 1          THE COURT:  OKAY.  ALL RIGHT.

03:12PM 2      WELL, LET'S TAKE OUR AFTERNOON BREAK NOW.  I THINK IT'S

03:12PM 3  TIME FOR THAT.  AND I KNOW I SAID 4:00 O'CLOCK.  I THOUGHT WE

03:12PM 4  WOULD RESUME MAYBE AT THE BOTTOM OF THE HOUR AND SEE WHAT WE

03:12PM 5  CAN DO.

03:12PM 6      I'M HOPEFUL THAT WE CAN GET THROUGH EVERYTHING THIS

03:12PM 7  AFTERNOON SUCH THAT WE DON'T HAVE TO CARRY OVER UNTIL TOMORROW.

03:12PM 8          DO WE THINK WE COULD DO THAT?

03:12PM 9          MS. SAHARIA:  I AM SORRY, YOUR HONOR.  DID YOU SAY

03:12PM 10  WE WOULD START AT 4:00 O'CLOCK?

03:12PM 11          THE COURT:  NO.  I SAID WE WOULD START AT THE BOTTOM

03:12PM 12  OF THE HOUR.  IS THAT 3:30?

03:12PM 13          MS. SAHARIA:  YEAH, FINE.  THAT'S FINE, YOUR HONOR.

03:12PM 14          THE COURT:  OKAY.

03:13PM 15      (RECESS FROM 3:13 P.M. UNTIL 3:36 P.M.)

03:36PM 16          THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

03:36PM 17  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:36PM 18      WE'LL CONTINUE OUR DISCUSSION ON THE MOTIONS IN LIMINE.

03:37PM 19  LET'S TURN TO DOCKET 588.  THIS IS MS. HOLMES'S MOTION TO

03:37PM 20  EXCLUDE CERTAIN NEWS ARTICLES.

03:37PM 21          MR. LOOBY:  GOOD AFTERNOON, YOUR HONOR.

03:37PM 22      SO I'LL BE ADDRESSING THIS MOTION.  THIS MOTION CONCERNS

03:37PM 23  ABOUT 50 OR SO ARTICLES ON THE GOVERNMENT'S EXHIBIT LIST.

03:37PM 24          THE COURT:  OKAY.  LET ME GIVE YOU SOME CREDIT HERE.

03:37PM 25  THIS IS PATRICK LOOBY APPEARING FOR MS. HOLMES.

03:37PM   1          MR. LOOBY:  YES.  SO THESE ARE 50 OR SO EXHIBITS OF

03:37PM   2    NEWS ARTICLES ON THE GOVERNMENT'S EXHIBIT LIST WHOSE AUTHORS

03:37PM   3    ARE NOT EXPECTED TO TESTIFY AT TRIAL BECAUSE THEY HAVE NOT BEEN

03:37PM   4    DISCLOSED BY THE GOVERNMENT ON ITS WITNESS LIST.

03:37PM   5          AND I SHOULD NOTE AT THE OUTSET THAT THE TWO ARTICLES ON

03:38PM   6    THE GOVERNMENT'S WITNESS LISTS BY THE TWO JOURNALISTS WHO HAVE

03:38PM   7    BEEN DISCLOSED, MR. ROGER PARLOFF AND ERIC TOPEL.  THIS ONE

03:38PM   8    RESERVES THE RIGHT TO OBJECT TO THE INTRODUCTION OF THOSE

03:38PM   9    ARTICLES AT TRIAL BECAUSE THEY ALSO POSE RULE 403 AND SOMETIMES

03:38PM  10    DOUBLE HEARSAY PROBLEMS.

03:38PM  11          BUT THE REASON WE SET OUT THIS MOTION IN THIS WAY PRETRIAL

03:38PM  12    IS BECAUSE AS THE CASES TEACH IN THE LAREZ VERSUS LOS ANGELES

03:38PM  13    CASE OUT OF THE NINTH CIRCUIT TEACHES WHEN THE AUTHOR OF THE

03:38PM  14    NEWS ARTICLE IS NOT PRESENT TO TESTIFY AT TRIAL, THERE IS A

03:38PM  15    THRESHOLD HEARSAY PROBLEM WITH THE INTRODUCTION OF ANY

03:38PM  16    STATEMENTS CONTAINED WITHIN THE ARTICLE, ALONG THE LINES OF A

03:38PM  17    REPRESENTATION FROM THE AUTHOR THAT THE SOURCE THAT IS QUOTED

03:38PM  18    ACTUALLY SAID WHAT THEY SAID.

03:38PM  19          SO ALL OF THE ARTICLES THAT WE'VE MOVED TO EXCLUDE SUFFER

03:38PM  20    FROM THAT SAME FATAL FLAW, AND WE SUBMIT THAT THE MOTION IS

03:39PM  21    RIPE FOR A PRETRIAL RULING THERE.

03:39PM  22          NOW, THE GOVERNMENT AGREES THAT IT CANNOT OFFER THESE

03:39PM  23    ARTICLES FOR THE TRUTH OF THE MATTER ASSERTED WITHIN THEM.

03:39PM  24          IT HAS OFFERED A SERIES OF NONHEARSAY THEORIES, BUT NONE

03:39PM  25    OF THESE SAVE THE EVIDENCE.  I THINK THEY KIND OF CONFUSE THE

03:39PM 1    ISSUES A LITTLE BIT MATTER THAN THEY ILLUMINATE.

03:39PM 2        I'LL JUST TOUCH BRIEFLY UPON THEM, AND THEN I CAN

03:39PM 3    ENTERTAIN ANY QUESTIONS THAT YOUR HONOR HAS ABOUT THE HEARSAY

03:39PM 4    ISSUES.

03:39PM 5        AND THEN I WANT TO SPEAK BRIEFLY ABOUT SOME OF THE 403

03:39PM 6    ISSUES THAT THESE ARTICLES POSE FOR THE TRIAL AS WELL.

03:39PM 7        THE FIRST THEORY THAT THE GOVERNMENT POSITS IS WHAT

03:39PM 8    THEY'RE CALLING KIND OF LIKE A BACKGROUND INFORMATION ABOUT THE

03:39PM 9    COMPANY THEORY.  AND THE WAY I READ THE GOVERNMENT'S POSITION

03:39PM 10   IS THAT THIS IS SOMETHING AKIN TO A FRAUD ON THE MARKET THEORY.

03:39PM 11   IN FACT, THEY'RE CITING CASES THAT APPLY THE 10(B) CIVIL FRAUD

03:39PM 12   ENFORCEMENT STANDARD IN THE UNITED STATES SUPREME COURT

03:40PM 13   STANDARD FROM THE BASIC CASE.  THAT KIND OF PRESUMES THAT ALL

03:40PM 14   INFORMATION IS PERFECTLY DISTRIBUTED IN A MARKET IN THE CIVIL

03:40PM 15   CONTEXT.

03:40PM 16       AND I TAKE THIS TO MEAN IN THIS CASE THAT THE GOVERNMENT

03:40PM 17   BELIEVES IT CAN OFFER ANY NEWS ARTICLE ABOUT THERANOS EVEN IF

03:40PM 18   IT DOES NOT IDENTIFY ANY ALLEGED FALSEHOOD IN THE ARTICLE, EVEN

03:40PM 19   IF IT DOES NOT CONNECT ANY ALLEGED FALSEHOOD TO MS. HOLMES, AND

03:40PM 20   EVEN IF IT DOESN'T CONNECT A SINGLE INVESTOR OR PATIENT WHO

03:40PM 21   WILL COME IN AND SAY, YEAH, I READ THIS AT THE TIME ABOUT

03:40PM 22   THERANOS AND IT INFLUENCED ME IN SOME WAY.

03:40PM 23       THE GOVERNMENT HAS CITED NO CASES TO SUPPORT THE

03:40PM 24   IMPOSITION OF THIS IDEA OF THE KIND OF BACKGROUND INFORMATION

03:40PM 25   ABOUT THE COMPANY INTO THE CRIMINAL CONTEXT.

03:40PM 1          AND ITS RELIANCE ON JUDICIAL NOTICE CASES, I SUBMIT, SHOWS

03:40PM 2   THAT IT'S KIND OF REACHING ON THIS NONHEARSAY THEORY.  THOSE

03:40PM 3   CASES HAVE NOTHING TO DO WITH THE EVIDENCE AT ISSUE HERE SO

03:41PM 4   THAT'S THE HELIOTROPE CASE AND THE VON SAHER VERSUS NORTON

03:41PM 5   SIMON MUSEUM OF ART CASE.

03:41PM 6          NOTABLY, BOTH THE COURTS IN BOTH OF THOSE DECISIONS THEY

03:41PM 7   NOTICED -- THEY WERE BOTH ARRIVED AT FOR MOTION FOR JUDGMENT ON

03:41PM 8   THE PLEADINGS IN A CIVIL MATTER OR A SIMILAR SUMMARY

03:41PM 9   ADJUDICATION.  AND THE COURTS BOTH NOTICED THAT THEY WERE

03:41PM 10  CONSTRAINED TO TAKE NOTICE OF FACTS UNDER RULE 201(B) OF THE

03:41PM 11  FEDERAL RULES OF EVIDENCE AND LIMITED IT TO NOTING FACTS THAT

03:41PM 12  ARE NOT SUBJECT TO DISPUTE.

03:41PM 13         THE GOVERNMENT'S THEORY KIND OF DOESN'T HAVE ANYTHING TO

03:41PM 14  DO WITH THOSE PRINCIPLES.  SO WE WOULD SUBMIT THAT THE COURT

03:41PM 15  NEED NOT ENTERTAIN THIS NONHEARSAY THEORY EITHER NOW OR IF THE

03:41PM 16  ARTICLES ARE OFFERED FOR THAT PURPOSE AT TRIAL.

03:41PM 17         THE SECOND NONHEARSAY PURPOSE THAT THE GOVERNMENT PUTS

03:41PM 18  FORWARD IS THAT, YOU KNOW, THE FACT OF THE COVERAGE IN THE

03:42PM 19  ARTICLES SHOULD BE ADMITTED BECAUSE THE NEWS COVERAGE ITSELF IS

03:42PM 20  A MOTIVE TO DEFRAUD.  THE KIND OF CORE PROBLEM WITH THIS THEORY

03:42PM 21  IS THAT IT DOESN'T SPEAK AT ALL TO THE CONTENT OF THE ARTICLES

03:42PM 22  AS OPPOSED TO THE FACT OF THE ARTICLES.

03:42PM 23         AND BECAUSE THE GOVERNMENT APPARENTLY DOES INTEND TO CALL

03:42PM 24  TWO JOURNALISTS AT TRIAL, AND BECAUSE IT DOES INTEND TO ASK

03:42PM 25  INVESTORS AND OTHERS ABOUT PARTICULAR NEWS ARTICLES THAT THEY

03:42PM 1    MAY HAVE ACTUALLY SEEN, THE JURY IS GOING TO BE AWARE THAT

03:42PM 2    THERE IS PRESS COVERAGE OF THERANOS AND BECAUSE OF THAT THERE'S

03:42PM 3    NO NEED TO ADMIT KIND OF THE STACKS OF NEWS ARTICLES FOR THIS

03:42PM 4    PURPOSE TO KIND OF CEMENT SOME IDEA THAT THERE'S A MOTIVE FOR

03:42PM 5    POSITIVE PRESS COVERAGE.

03:42PM 6         THE THIRD NONHEARSAY PURPOSE IS FOR EFFECT ON THE READER.

03:42PM 7    SO THE GOVERNMENT IS ARGUING HERE THAT IT NEEDS TO ADMIT THE

03:42PM 8    NEWS ARTICLE TO SHOW THEIR EFFECT ON INVESTORS, IN OTHER WORDS,

03:42PM 9    LIKE WHY THEY WERE MOTIVATED TO INVEST IN THERANOS.

03:43PM 10         AND THE GOVERNMENT PRESENTS THIS AS A NONHEARSAY PURPOSE,

03:43PM 11   BUT ACTUALLY IT DOESN'T SOLVE THE THRESHOLD HEARSAY ISSUE THAT

03:43PM 12   IS IDENTIFIED IN OUR BRIEF.

03:43PM 13         AND THE REASON FOR THAT, YOUR HONOR, IS BECAUSE TO THE

03:43PM 14   EXTENT THAT THE GOVERNMENT IS OFFERING TESTIMONY FROM INVESTORS

03:43PM 15   ABOUT THE IMPACT AN ARTICLE HAD ON THEIR DESIRE TO INVEST,

03:43PM 16   THEY'RE ACTUALLY JUST OFFERING SUBSTANTIVE EVIDENCE OF THE

03:43PM 17   ALLEGED FRAUD IN THE CASE, AND FOR THAT TO BE RELEVANT IT HAS

03:43PM 18   TO BE MATERIALLY MISLEADING AND ATTRIBUTABLE TO MS. HOLMES.

03:43PM 19         SO IF THAT'S THE CASE, THEN THERE NEEDS TO BE -- IT NEEDS

03:43PM 20   TO BE THE CASE THAT MS. HOLMES IS ACTUALLY RESPONSIBLE FOR THE

03:43PM 21   REPRESENTATIONS THAT ARE CONTAINED IN THE ARTICLE, WHICH IS A

03:43PM 22   FACTUAL ASSERTION IMPLICIT IN THE ARTICLE THAT THE AUTHOR WOULD

03:43PM 23   HAVE TO COME IN AND TESTIFY FOR.

03:43PM 24         SO A GOOD CITATION FOR THAT IS IN OUR BRIEFS, AND IT'S THE

03:43PM 25   ACLU OF NEVADA CASE VERSUS THE CITY OF LOS ANGELES, 13 F.SUPP.

2D 1064.

AND THAT'S WHEN -- THAT MAKES THE HELPFUL POINT THAT EVEN WHEN THE STATEMENT IN THE ARTICLE ON THE ONE LEVEL IS NONHEARSAY OR OFFERED FOR A NONHEARSAY PURPOSE, IT'S THE REPETITION OF THE STATEMENT IN THE NEWS ARTICLE THAT CAUSES THE HEARSAY PROBLEM.

AND THEN FINALLY, THERE'S THE ENDORSEMENT OR CIRCULATION THEORY.  WE SUBMIT THIS DOESN'T SOLVE THEIR HEARSAY PROBLEM, EITHER.

AS AN INITIAL MATTER, THE GOVERNMENT PROVIDES NO CASE LAW SUPPORTING ADMITTING NEWS ARTICLES AGAINST A CRIMINAL DEFENDANT UNDER THIS THEORY.  I MEAN, REALLY NONE OF ITS CASES SPEAK TO THAT, YOUR HONOR.

THE CASES THEY DO CITE, CICCONE, AND I DON'T KNOW IF I AM PRONOUNCING THAT CORRECTLY, BUT IT'S C-I-C-C-O-N-E, AND THAT'S AT 219 F.3D 1078.  AND THAT'S OBVIOUSLY NOT ON POINT AS WE EXPLAINED IN OUR BRIEF.

SO THE GOVERNMENT HASN'T REALLY LAID THE CONTOURS OF THIS KIND OF RATIFICATION OR ENDORSEMENT THEORY OUT, AND PERHAPS IT'S BETTER LEFT TO SETTLE AT TRIAL IN CASE THERE ARE ANY ARTICLES IN FACT OFFERED UNDER THIS THEORY.

BECAUSE EVEN IF YOU WERE TO ACCEPT THAT THIS THEORY IS ACTUALLY TRULY GETTING OUT FROM UNDER THAT THRESHOLD HEARSAY PROBLEM, IT REALLY COULD ONLY DO SO UNDER CERTAIN CIRCUMSTANCES AND PROBABLY ONLY FOR A SMALL NUMBER OF ARTICLES, AND EVEN THEN

03:45PM 1        IT PROBABLY WOULDN'T JUSTIFY ADMITTING THE ENTIRETY OF THE

03:45PM 2   ARTICLES THEMSELVES.

03:45PM 3        SO I THINK A FRAMEWORK FOR THIS THEORY TO WORK, THE

03:45PM 4   GOVERNMENT WOULD PROBABLY HAVE TO SHOW THAT THE ARTICLE WAS

03:45PM 5   LIKE ACTUALLY SHARED WITH AN INVESTOR.  THE GOVERNMENT GIVES AN

03:45PM 6   EXAMPLE OF ONE IN ITS BRIEF, BUT IT HAS NOT KIND OF LAID OUT

03:46PM 7   EXACTLY WHICH SUBSET OF ARTICLES IT'S PROPOSING TO OFFER FOR

03:46PM 8   THIS PURPOSE.

03:46PM 9        AND THEN I THINK THEY WOULD HAVE TO SHOW THAT MS. HOLMES

03:46PM 10  ACTUALLY DID SHARE THE ARTICLE OR THAT SHE WAS RESPONSIBLE FOR

03:46PM 11  THE SHARING; AND I THINK THAT THEY WOULD HAVE TO SHOW THAT THE

03:46PM 12  ARTICLE CONTAINS AN ALLEGED MISREPRESENTATION; AND THAT

03:46PM 13  MS. HOLMES WAS AWARE THAT THERE WAS AN ALLEGED

03:46PM 14  MISREPRESENTATION IN THE ARTICLE FOR THIS TO BE A RELEVANT

03:46PM 15  BASIS FOR ADMISSION.

03:46PM 16       I THINK IT'S IMPORTANT FOR THE GOVERNMENT TO HAVE TO MAKE

03:46PM 17  THESE FOUNDATIONAL SHOWING IF IT INDEED IS OFFERING ARTICLES

03:46PM 18  UNDER THIS THEORY BECAUSE THEIR BRIEF TELEGRAPHS PERHAPS A MORE

03:46PM 19  EXPANSIVE VERSION OF THIS THEORY WHERE ANY ARTICLE THAT IS

03:46PM 20  EITHER BEING CIRCULATED IN THE NEWS ECOSYSTEM ABOUT THERANOS,

03:46PM 21  WHETHER IT'S BEING TWEETED BY THE THERANOS ACCOUNT, OR WHETHER

03:46PM 22  IT'S BEING SHARED BY OTHER THERANOS EMPLOYEES THAT MS. HOLMES

03:46PM 23  IS RESPONSIBLE FOR THE CONTENT OF THOSE ARTICLES AND FOR KIND

03:46PM 24  OF REVIEWING THEM AND ISSUING CORRECTIONS, AND IF THE

03:47PM 25  GOVERNMENT IS MAKING THAT KIND OF EXPANSIVE THEORY, I THINK

03:47PM  1    IT'S IMPORTANT TO NOTE AND KEEP IN MIND THAT'S GENERALLY NOT

03:47PM  2    THE RESPONSIBILITY OF THE CEO'S, AND IT'S NOT HOW THE CRIME OF

03:47PM  3    WIRE FRAUD HAS BEEN UNDERSTOOD TO WORK IN THE CASES.

03:47PM  4         SECOND, THE REQUIREMENT OF KNOWLEDGE AND ANY MISSTATEMENTS

03:47PM  5    IN AN ARTICLE WOULD KEEP THIS FROM TURNING INTO LIKE A

03:47PM  6    NEGLIGENCE THEORY OF ADMISSIBILITY FOR THESE ARTICLES.  DID YOU

03:47PM  7    READ THE ARTICLE CLOSELY ENOUGH SUCH THAT YOU, YOU KNOW, YOU

03:47PM  8    WOULD UNDERSTAND THAT SOMEBODY MIGHT READ IT THIS WAY?

03:47PM  9         SO I THINK THAT THIS THEORY, IF THE GOVERNMENT DOES END UP

03:47PM  10   OFFERING ARTICLES PURSUANT TO IT AT TRIAL, YOU KNOW, POSES A

03:47PM  11   COUPLE TRICKY ISSUES, AND WE WOULD BE PREPARED TO DEAL WITH

03:47PM  12   THOSE AT TRIAL.

03:47PM  13              THE COURT:  OKAY.

03:47PM  14              MR. LOOBY:  BEFORE I MOVE ON, I JUST WANT TO TOUCH

03:47PM  15   QUICKLY ON SOME OF THE RULE 403 ISSUES THAT THESE ARTICLES

03:47PM  16   POSE, AND INSTEAD OF JUST TALKING GENERALLY ABOUT THE 403

03:48PM  17   STANDARD, WHICH WE'VE BEEN OVER QUITE A BIT OVER THESE PAST

03:48PM  18   THREE DAYS, WE PROVIDED A COUPLE EXAMPLE ARTICLES TO OUR

03:48PM  19   MOTION, AND THAT'S AT DEFENSE EXHIBIT 48, ECF 586-2.

03:48PM  20         AND I THINK THE PREJUDICE THAT THESE ARTICLES POSE, THE

03:48PM  21   UNFAIR PREJUDICE POSE IS KIND OF SELF-EVIDENT, BUT RATHER THAN

03:48PM  22   HAVE YOUR HONOR AND HIS CLERKS KIND OF COMB THROUGH SOME OLD

03:48PM  23   ARTICLES ABOUT THERANOS, I JUST CALL YOUR ATTENTION TO A FEW.

03:48PM  24         THERE'S "THE WALL STREET JOURNAL" ARTICLE AT ECF PAGES 1

03:48PM  25   THROUGH 12 TITLED "CREATING GROWTH, WALGREENS DISMISSED ITS

03:48PM 1    DOUBTS ABOUT THERANOS."

03:48PM 2            THE COURT:  COULD YOU CITE THAT AGAIN.  IT'S AT?

03:48PM 3            MR. LOOBY:  IT'S AT ECF PAGES 1 THROUGH 12, SO IT'S

03:48PM 4    ECF 586-2.

03:49PM 5            THE COURT:  OKAY.  THANK YOU.

03:49PM 6            MR. LOOBY:  SO THIS IS THE FIRST ARTICLE IN OUR

03:49PM 7    COMPENDIUM OF EXEMPLAR ARTICLES FROM THE GOVERNMENT'S EXHIBIT

03:49PM 8    LIST.

03:49PM 9        SO THIS ASSERTS AS FACT THAT THERANOS HAD ACCURACY

03:49PM 10   PROBLEMS WITH ITS TESTS.  IT CONTAINS ANONYMOUS QUOTES FROM

03:49PM 11   WALGREENS EXECUTIVES SAYING THAT THEY WERE, UNNAMED WALGREENS

03:49PM 12   EXECUTIVES SAYING THAT THEY WERE AFRAID OF GETTING SUED BY

03:49PM 13   THERANOS.

03:49PM 14       IT TALKS ABOUT A CIVIL FRAUD CASE THAT WAS RECENTLY, AT

03:49PM 15   THE TIME IT RECENTLY HAD BEEN FILED BY A THERANOS PATIENT.

03:49PM 16       SO -- I WON'T TICK THROUGH THEM ALL, BUT THERE'S ALSO "A

03:49PM 17   NEW YORKER" ARTICLE, AND THIS IS BY A JOURNALIST NAMED

03:49PM 18   KEN AULETTA AND THE TITLE IS "BLOOD SIMPLER."  AND THIS IS A

03:49PM 19   2014 ARTICLE, AND THIS IS AT ECF PAGES 32 THROUGH 49.

03:49PM 20       I DRAWER YOUR ATTENTION TO THIS BECAUSE THE GOVERNMENT IN

03:49PM 21   ITS OPPOSITION KIND OF TRIES TO DRAW A DISTINCTION BETWEEN

03:49PM 22   NEGATIVE NEWS OF THERANOS AND WHAT IT CHARACTERIZES AS POSITIVE

03:50PM 23   NEWS COVERAGE THAT WOULD PREDATE THE MOMENT IN TIME WHEN THE

03:50PM 24   GOVERNMENT WOULD SAY THAT THE FRAUD WAS EXPOSED, QUOTE-UNQUOTE.

03:50PM 25           BUT THIS ARTICLE PREDATES THAT MOMENT IN TIME ON THE

03:50PM 1    GOVERNMENT'S TIMELINE.

03:50PM 2         BUT IT SAYS, QUOTE, "SOME OBSERVERS ARE TROUBLED BY

03:50PM 3    THERANOS'S SECRECY."

03:50PM 4         IT CONTAINS COMMENTARY FROM THE JOURNALISTS ABOUT HOW

03:50PM 5    MS. HOLMES PRESENTS BOTH IN HER PHYSICAL PRESENTATION AND HOW

03:50PM 6    SHE PRESENTS WHEN TALKING TO ROOMS FULL OF PEOPLE.

03:50PM 7         THOSE ARE HIS OWN SUBJECTIVE OPINIONS ABOUT HOW SHE

03:50PM 8    PRESENTS.

03:50PM 9         THERE ARE QUOTES FROM QUEST DIAGNOSTICS EXECUTIVES TAKING

03:50PM 10   ISSUE WITH SEVERAL OF THERANOS'S CLAIMS ABOUT ITS TECHNOLOGY

03:50PM 11   AND SAYING BROADLY THAT FINGERSTICK BLOOD TESTS AREN'T RELIABLE

03:51PM 12   FOR CLINICAL DIAGNOSTIC TESTS.

03:51PM 13        SO I THINK, YOUR HONOR, WHERE THIS LEAVES US IS THAT THE

03:51PM 14   GOVERNMENT HAS POSITED A SERIES OF KIND OF ROUGHLY SKETCHED OUT

03:51PM 15   NONHEARSAY PURPOSES TO MOVE IN A POTENTIALLY MASSIVE AMOUNT OF

03:51PM 16   UNFAIRLY PREJUDICIAL INFORMATION, AND THESE JOURNALISTS WOULD

03:51PM 17   NOT BE ON THE STAND FOR CROSS-EXAMINATION BECAUSE THE

03:51PM 18   GOVERNMENT DOES NOT INTEND TO CALL THEM.

03:51PM 19        THEIR SOURCES, MANY OF THEM ARE ANONYMOUS.  THESE SOUND

03:51PM 20   BITES WOULD BE PUT BEFORE THE JURY WITHOUT MS. HOLMES'S ABILITY

03:51PM 21   TO CROSS-EXAMINE THE SOURCES.

03:51PM 22        SOME OF THE PEOPLE WHO THE QUOTES ARE ATTRIBUTED TO,

03:51PM 23   EITHER ANONYMOUSLY OR ATTRIBUTED TO BY NAME, ARE GOING TO BE

03:51PM 24   TRIAL WITNESSES IN THE CASE, AND A LOT OF THE CONTENT OF THE

03:51PM 25   ARTICLES DISCUSS ISSUES THAT OVERLAP WITH THE GOVERNMENT'S

03:51PM 1      ALLEGATIONS, AND THAT WILL BE AT ISSUE IN THE CASE.

03:51PM 2          SO THESE ARTICLES KIND OF REALLY HAVE NO PLACE IN THE

03:51PM 3      EVIDENCE IN THIS CASE, AND SO WE SUBMIT THAT THE COURT SHOULD

03:51PM 4      EXCLUDE THEM.

03:51PM 5              THE COURT:  ALL RIGHT.  THANK YOU.

03:52PM 6          MR. BOSTIC.

03:52PM 7              MR. BOSTIC:  YES.  YOUR HONOR, GOOD AFTERNOON AGAIN.

03:52PM 8          I THINK IT'S IMPORTANT TO START WITH THE RELIEF SOUGHT BY

03:52PM 9      THE DEFENSE'S MOTION.  AND THIS IS THE DEFENSE'S MOTION BY THE

03:52PM 10     WAY.  I THINK THE DEFENSE MAKES STRATEGIC USE OF RAISING THE

03:52PM 11     SPECTER OF THE GOVERNMENT INTRODUCING A STACK OF NEWSPAPER

03:52PM 12     ARTICLES AS AN EXHIBIT IN THIS CASE, HANDING THEM TO THE JURY

03:52PM 13     AND SAYING "HAVE AT IT, YOU CAN RELY ON THESE ARTICLES FOR THE

03:52PM 14     TRUTH OF THE STATEMENTS THEREIN."

03:52PM 15         THAT'S NOT AT ALL THE GOVERNMENT'S PLAN.  THERE'S NO

03:52PM 16     REASON TO BELIEVE THAT THAT'S THE GOVERNMENT'S PLAN, BUT LET ME

03:52PM 17     JUST SAY IT SO THAT IT'S SAID.

03:52PM 18         THIS IS NOT BEFORE THE COURT ON THE GOVERNMENT'S MOTION TO

03:52PM 19     ADMIT ALL 50 OF THE NEWS ARTICLES.  THIS IS THE DEFENSE ASKING

03:52PM 20     THE COURT FOR ONE BLANKET ORDER THAT WOULD EXCLUDE ALL OF THOSE

03:52PM 21     MATERIALS FROM CONSIDERATION BY THE JURY IN THIS CASE.

03:52PM 22         THE GOVERNMENT'S MAIN POINT IN RESPONSE IS THAT THE

03:53PM 23     DEFENSE PAINTS WITH TOO FAR BROAD -- FAR TOO BROAD A BRUSH IN

03:53PM 24     MAKING THAT REQUEST FOR RELIEF.

03:53PM 25         THESE ARTICLES REALLY NEED TO BE VIEWED ON A CASE-BY-CASE

03:53PM 1    BASIS.  AND THE GOVERNMENT HAS PROFFERED TO THE COURT THEORIES

03:53PM 2    OF ADMISSIBILITY FOR THESE ARTICLES TO SHOW, TO DEMONSTRATE WHY

03:53PM 3    A BLANKET ORDER IS INAPPROPRIATE FOR THESE CASES.

03:53PM 4        THE AUTHORITY CITED BY THE DEFENSE IS QUITE NARROW IN ITS

03:53PM 5    HOLDING AND THE DEFENSE POINTS OUT THAT THE GOVERNMENT DOESN'T

03:53PM 6    HAVE CASE AUTHORITY SUPPORTING ITS SPECIFIC THEORIES OF

03:53PM 7    ADMISSIBILITY BUT NOR DOES THE DEFENSE HAVE CASES SUPPORTING

03:53PM 8    ITS ARGUMENT THAT THESE MATERIALS CANNOT COME IN FOR THESE

03:53PM 9    NONHEARSAY PURPOSES.

03:53PM 10       THE DEFENSE CASES ARE EASILY DISTINGUISHABLE.  THE LAREZ

03:53PM 11   CASE AND ACLU VERSUS LAS VEGAS ARE BOTH ABOUT OFFERING NEWS

03:53PM 12   ARTICLES FOR THE TRUTH AND THE ACCURACY OF STATEMENTS THAT WERE

03:53PM 13   MADE IN THOSE ARTICLES.

03:53PM 14       SO SOMEONE RELEVANT TO THE LITIGATION MADE A STATEMENT AND

03:54PM 15   WAS QUOTED IN THE ARTICLE, AND A PARTY SOUGHT TO INTRODUCE THE

03:54PM 16   ARTICLE NOT TO PROVE THAT THE ARTICLE EXISTED, NOT TO SHOW THE

03:54PM 17   EFFECT ON THE READER, BUT AS SUBSTANTIVE PROOF THAT THAT ACTUAL

03:54PM 18   STATEMENT WAS MADE.  THAT'S NOT HOW THE GOVERNMENT IS SEEKING

03:54PM 19   TO USE THE ARTICLES IN THIS CASE.

03:54PM 20       WHEN NECESSARY, IF THE GOVERNMENT NEEDS TO SHOW THAT THE

03:54PM 21   DEFENDANT ACTUALLY DID MAKE A STATEMENT QUOTED IN AN ARTICLE,

03:54PM 22   IT WILL DO SO VIA AN APPROPRIATE NONHEARSAY MECHANISM, EITHER

03:54PM 23   TESTIMONY BY THE PERSON WHO HEARD THAT STATEMENT FROM

03:54PM 24   MS. HOLMES AND IN SOME CASES THERE ARE RECORDINGS OF

03:54PM 25   DEFENDANT'S CONVERSATIONS WITH JOURNALISTS.

03:54PM 1      THESE ARE THE WAYS THAT A JURY WILL BE ABLE TO CONCLUDE

03:54PM 2  THAT STATEMENTS IN THE ARTICLES ARE ACTUALLY ACCURATE AND THAT

03:54PM 3  THE DEFENDANT ACTUALLY MADE THEM, OTHERWISE THE ARTICLES ARE

03:54PM 4  COMING IN FOR DIFFERENT AND PERMISSIBLE PURPOSES.

03:54PM 5      REMOVING NEWS ARTICLES FROM THE TRIAL HERE WOULD HIDE FROM

03:54PM 6  THE JURY AN IMPORTANT TOOL THAT THIS DEFENDANT USED TO

03:55PM 7  ACCOMPLISH THE FRAUD IN THIS CASE, AND THAT'S WHY THIS IS AN

03:55PM 8  IMPORTANT MOTION, AND THAT'S WHY IT'S IMPORTANT THAT THE COURT

03:55PM 9  NOT PAINT WITH TOO BROAD A BRUSH THE WAY THAT THE DEFENSE IS.

03:55PM 10     THE IMPORTANT CATEGORY OF FACTS THAT WE'RE TALKING ABOUT

03:55PM 11 HERE IS NOT, AGAIN, THE FACTS RECORDED IN THE ARTICLES.  THE

03:55PM 12 GOVERNMENT DOES NOT NEED TO PROVE ITS CASE BY NEWS ARTICLES IN

03:55PM 13 THIS CASE.

03:55PM 14     INSTEAD, THE ESSENTIAL FACTS INVOLVE HOW THE CONTENT OF

03:55PM 15 THOSE ARTICLES REFLECTED OVERALL PUBLIC OPINION ABOUT THERANOS,

03:55PM 16 WHICH IS RELEVANT IN THIS CASE, AND IN TURN SHAPED READER'S

03:55PM 17 VIEWS OF THE COMPANY AND THEIR UNDERSTANDING OF THE COMPANY'S

03:55PM 18 POTENTIAL.  NONE OF THIS IMPLICATES THE HEARSAY PROBLEMS RAISED

03:55PM 19 BY THE DEFENSE.

03:55PM 20     I'D LIKE TO GO THROUGH THE THREE PERMISSIBLE USES OF THESE

03:55PM 21 ARTICLES IF I MIGHT.

03:55PM 22     FIRST, AS TO SHOW -- AS TO THE USE OF SHOWING FAVORABLE

03:55PM 23 PRESS COVERAGE OF THERANOS.  THIS IS AN IMPORTANT PART OF THE

03:56PM 24 STORY HERE.  THE NEWS COVERAGE SERVES AS A USEFUL BAROMETER OF

03:56PM 25 PUBLIC OPINION WHEN IT CAME TO THERANOS.  IT'S NOT IMPORTANT

03:56PM  1    THAT THE JURY RELY ON THE TRUTH OF THE STATEMENTS IN THE

03:56PM  2    ARTICLES FOR THEM TO SERVE THAT PURPOSE.  INSTEAD, THE JURY

03:56PM  3    SHOULD BE ALLOWED TO LOOK AT ARTICLES GENERALLY AND UNDERSTAND

03:56PM  4    THAT DURING THIS PERIOD OF TIME THERE WAS A LOT OF EXCITEMENT

03:56PM  5    ABOUT THE COMPANY, THAT THERE WAS FAVORABLE PRESS COVERAGE,

03:56PM  6    THAT THERE WAS WIDESPREAD PRESS COVERAGE, AND THAT'S IMPORTANT

03:56PM  7    FOR A COUPLE OF REASONS.

03:56PM  8        FIRST, IT'S PART OF THE MODE OF EVIDENCE IN THIS CASE, AND

03:56PM  9    I KNOW THE DEFENSE TOUCHED ON THIS, BUT JUST BRIEFLY.  THIS WAS

03:56PM 10    NOT JUST THE EXISTENCE OF PRESS COVERAGE, BUT QUITE FAVORABLE

03:56PM 11    PRESS COVERAGE WITH THE DEFENDANT HERSELF BEING FEATURED ON A

03:56PM 12    VARIETY OF MAGAZINE COVERS, RECEIVING ADULATION FROM THE PRESS,

03:56PM 13    AGAIN, A LOT OF HYPE AND EXCITEMENT BUILDING UP AROUND THIS

03:56PM 14    COMPANY, ITS POTENTIAL, THAT WAS THE BENEFIT THAT THE DEFENDANT

03:57PM 15    OBTAINED BY VIRTUE OF THE FRAUD.

03:57PM 16            THE COURT:  IS THAT A PERSONAL BENEFIT OR A COMPANY

03:57PM 17    BENEFIT OR CAN YOU DISTINGUISH THOSE TWO?

03:57PM 18            MR. BOSTIC:  SO IT'S CERTAINLY BOTH, YOUR HONOR.

03:57PM 19    ARGUABLY, IT IS A BENEFIT TO THE COMPANY, BUT IT'S ABSOLUTELY A

03:57PM 20    PERSONAL BENEFIT AS WELL.

03:57PM 21        AND PEOPLE CAN DIFFER ON WHETHER THEY THINK THAT CELEBRITY

03:57PM 22    IS A BLESSING OR A CURSE.  BUT PEOPLE CERTAINLY SEEK IT OUT,

03:57PM 23    YOUR HONOR, AND THE JURY IS ENTITLED TO CONCLUDE THAT THE

03:57PM 24    DEFENDANT'S DESIRE TO BE FAMOUS, TO RECEIVE THIS PRAISE, THIS

03:57PM 25    ATTENTION WAS PART OF HER MOTIVE FOR ENGAGING IN THIS SCHEME TO

03:57PM  1    DEFRAUD.

03:57PM  2        AND THE EVIDENCE SHOWS THAT THE DEFENDANT WAS VERY AWARE

03:57PM  3    OF THE PRESS COVERAGE.  THE EVIDENCE WILL SHOW AT TRIAL THAT

03:57PM  4    THE DEFENDANT CLOSELY MONITORED PRESS CONCERNING HER AND THE

03:57PM  5    COMPANY, AND THAT WILL SUPPORT THE JURY'S INFERENCE THAT THIS

03:57PM  6    WAS PART OF THE MOTIVE IN THIS CASE.

03:57PM  7        SO, AGAIN, THIS ISN'T ABOUT ASKING THE JURY TO ASSUME THE

03:58PM  8    TRUTH OF ANY STATEMENTS IN THESE ARTICLES, BUT IT'S ALSO ABOUT

03:58PM  9    MORE THAN JUST THE EXISTENCE OF THE ARTICLES.  THE JURY NEEDS

03:58PM 10    TO UNDERSTAND THAT THIS WAS FAVORABLE COVERAGE THAT BENEFITTED

03:58PM 11    THE DEFENDANT.

03:58PM 12            THE COURT:  SO WHAT IS THE GOVERNMENT'S PLAN IN THAT

03:58PM 13    REGARD?  HOW MUCH DO YOU NEED TO PUT THIS ON?

03:58PM 14        AND PERHAPS THE DEFENSE WOULD STIPULATE, YES, THAT WE'LL

03:58PM 15    STIPULATE THAT THIS STARTUP WAS WELL PUBLICIZED FOR MANY YEARS.

03:58PM 16    IT WAS IN THE MEDIA, IT WAS IN THE MEDIA'S ATTENTION, AND IT

03:58PM 17    WAS IN THE PUBLIC EYE.

03:58PM 18            MR. BOSTIC:  SO, YOUR HONOR, SOMETIMES A PARTY IN

03:58PM 19    LITIGATION WILL AGREE TO STIPULATE TO SOMETHING BECAUSE THE

03:58PM 20    IMPACT OF THE EVIDENCE WILL ACTUALLY BE MORE UNFAVORABLE TO

03:58PM 21    THEIR CASE.  I SUSPECT THAT IF THEY WERE WILLING TO STIPULATE

03:58PM 22    TO THAT, THAT MIGHT BE THE REASON.

03:58PM 23        I THINK IT'S IMPORTANT FOR THE JURY TO SEE THE EXTENT OF

03:58PM 24    THIS COVERAGE.  I DON'T THINK IT REQUIRES A LARGE VOLUME OF

03:58PM 25    EVIDENCE.  I THINK A SAMPLING OF MAGAZINE COVERS AND SOME

03:58PM 1      SAMPLE LANGUAGE FROM THOSE ARTICLES SHOWING THAT THIS WAS

03:59PM 2      POSITIVE COVERAGE OVER THE RELEVANT PERIOD OF TIME WOULD BE

03:59PM 3      SUFFICIENT.

03:59PM 4           SO, AGAIN, I DON'T THINK WE'RE TALKING ABOUT A LARGE

03:59PM 5      VOLUME OF EVIDENCE, NOR IS THIS THE MOST IMPORTANT USE OF THESE

03:59PM 6      ARTICLES.

03:59PM 7           THE SECOND CATEGORY OF PERMISSIBLE USE GETS INTO SOMETHING

03:59PM 8      A LITTLE MORE IMPORTANT, AND, THAT IS, TO SHOW THE EFFECT ON

03:59PM 9      WITNESSES WHO READ THE ARTICLE AND HOW IT INFORMED THEIR

03:59PM 10     DECISIONMAKING.

03:59PM 11          SO THE EVIDENCE AT TRIAL WILL SHOW THAT THE CONTENT OF

03:59PM 12     NEWS ARTICLES INFLUENCED THE DECISIONMAKING OF WITNESSES IN

03:59PM 13     THIS CASE, AND THAT'S TRUE AS TO INVESTORS IN PARTICULAR.

03:59PM 14               THE COURT:  SO IF THERE WERE ARTICLES THAT WERE PUT

03:59PM 15     IN BINDERS, MARKETING BINDERS, PROSPECTUS, AND A POTENTIAL

03:59PM 16     INVESTOR HAD BENEFIT OF THAT, THAT'S A DIFFERENT STORY THAN

03:59PM 17     JUST A STANDALONE ARTICLE I GUESS.

03:59PM 18               MR. BOSTIC:  CORRECT.  AND THAT, YOUR HONOR, WE'LL

03:59PM 19     GET INTO THE THIRD CATEGORY WHERE THE THEORY AND THE ALLEGATION

03:59PM 20     IS THAT THE DEFENDANT ACTIVELY USED THESE ARTICLES AS A VEHICLE

03:59PM 21     TO PRESENT MISREPRESENTATIONS TO THE VICTIMS IN THIS CASE.  SO

03:59PM 22     THAT'S CATEGORY THREE.

04:00PM 23          CATEGORY TWO, THOUGH, EVEN AS TO ARTICLES THAT WEREN'T

04:00PM 24     SENT BY DEFENDANT TO POTENTIAL INVESTORS, DEFENDANT CERTAINLY

04:00PM 25     KNEW THAT THESE ARTICLES WERE OUT THERE, GENERALLY SPEAKING,

04:00PM 1    AND THEY'RE ADMISSIBLE FOR THE EFFECT THAT THEY HAD ON

04:00PM 2    INVESTORS WHO WERE DECIDING WHETHER TO PART WITH THEIR MONEY

04:00PM 3    AND PURCHASE SHARES IN THERANOS.

04:00PM 4            THE COURT:  BUT ISN'T THAT CATEGORY THREE?

04:00PM 5            MR. BOSTIC:  SO CATEGORY THREE WOULD INVOLVE AN

04:00PM 6    ACTIVE USE BY THE DEFENDANT WHERE THE DEFENDANT ACTUALLY HAD A

04:00PM 7    ROLE EITHER IN RATIFYING THE CONTENT OF THE ARTICLE OR

04:00PM 8    SPECIFICALLY DIRECTING THAT ARTICLE TOWARDS AN INDIVIDUAL

04:00PM 9    DEFENDANT OR, EXCUSE ME, AN INDIVIDUAL VICTIM OR AT LEAST

04:00PM 10   PUBLICIZING IT ON THE THERANOS WEBSITE.

04:00PM 11           THE COURT:  AND DOESN'T CATEGORY TWO, ISN'T THAT

04:00PM 12   SOMETHING THAT IS NOT WITHIN HER CONTROL?  THAT'S MEDIA

04:00PM 13   ATTENTION, AND THAT'S POLLING, AND THAT'S REALLY UP TO THE

04:00PM 14   WHIMS OF THE EDITORS AND EVERYBODY IS A JOURNALIST THESE DAYS

04:01PM 15   I'M TOLD.

04:01PM 16       SO IS THAT FAIR TO HOLD HER TO BE SOMEWHAT RESPONSIBLE

04:01PM 17   UNLESS YOUR THEORY IS SHE PURSUED THAT ATTENTION, SHE PURSUED

04:01PM 18   THAT CELEBRITY, AND MADE HERSELF AVAILABLE FOR X MAGAZINES.

04:01PM 19           MR. BOSTIC:  THAT'S CERTAINLY TRUE, YOUR HONOR, AND

04:01PM 20   THE JURY WOULD BE REASONABLE TO INFER THAT.  BUT THIS CATEGORY

04:01PM 21   IS LESS ABOUT ATTRIBUTING STATEMENTS TO DEFENDANT, LESS ABOUT

04:01PM 22   BLAMING HER FOR THE CONTENT OF THE ARTICLES, AND MORE ABOUT

04:01PM 23   SIMPLY RECOGNIZING HOW THESE ARTICLES AFFECTED INVESTORS

04:01PM 24   THOUGHT PROCESSES, FOR EXAMPLE.  AND THE WAY THAT HAPPENED IS

04:01PM 25   THE ARTICLES MADE IT A LOT EASIER FOR THESE VICTIMS TO BE

04:01PM 1    DEFRAUDED, TO PUT IT BLUNTLY.

04:01PM 2         THE EXISTENCE OF ALL OF THIS HYPE AND EXCITEMENT AND

04:01PM 3    FAVORABLE COVERAGE ABOUT THERANOS CREATED A SENSE OF URGENCY IN

04:01PM 4    INVESTORS, THEY DIDN'T WANT TO MISS OUT ON WHAT WAS GOING TO

04:02PM 5    BE, ACCORDING TO THE COVERAGE, A LUCRATIVE INVESTMENT

04:02PM 6    OPPORTUNITY.  THE ARTICLES PRESENTED A LOT OF FAVORABLE

04:02PM 7    INFORMATION ABOUT THERANOS AND WHAT ITS TECHNOLOGY COULD DO.

04:02PM 8         THE GOVERNMENT IS ENTITLED TO ARGUE THAT DEFENDANT

04:02PM 9    EXPLOITED THAT FAVORABLE COVERAGE AND THEN IT PAVED THE WAY FOR

04:02PM 10   THE FRAUD THAT SHE ENDED UP COMMITTING.

04:02PM 11        SO AGAIN, THIS IS NOT ABOUT CONVICTING THE DEFENDANT FOR

04:02PM 12   THE CONTENT OF THOSE PARTICULAR ARTICLES.

04:02PM 13        THE EVIDENCE WILL SHOW THAT THE DEFENDANT REPEATED THE

04:02PM 14   LIES IN THESE ARTICLES AND REPEATED THOSE FALSE STATEMENTS TO

04:02PM 15   THE INDIVIDUAL VICTIMS OR CAUSED THOSE FALSE STATEMENTS TO GO

04:02PM 16   TO THE VICTIMS.

04:02PM 17        BUT THE ARTICLES THEMSELVES PRIMED THE VICTIMS TO BE

04:02PM 18   RECEPTIVE TO THAT DECEPTION, AND THAT IS AN IMPORTANT ELEMENT

04:02PM 19   OF THE STORY THAT THE JURY SHOULD NOT MISS OUT ON.

04:02PM 20        I'LL JUST POINT OUT ALTHOUGH NEITHER SIDE CITES A CASE

04:02PM 21   INVOLVING THIS PARTICULAR FACT PATTERN, OF COURSE, THAT

04:02PM 22   NONHEARSAY USE, THE USE OF NEWS ARTICLES TO SHOW THE EFFECT ON

04:03PM 23   THE READER IS WELL ESTABLISHED, AND THERE'S NO REASON TO

04:03PM 24   DEVIATE FROM THAT STANDARD RULE IN THIS CASE.

04:03PM 25        FINALLY, THE THIRD CATEGORY, THE THIRD PERMITTED USE.

1    THIS IS IMPORTANT BECAUSE ARTICLES ADMITTED UNDER THIS THEORY

2    WILL DEMONSTRATE HOW THE DEFENDANT DIDN'T JUST BENEFIT FROM THE

3    EXISTENCE OF THESE ARTICLES, BUT ACTIVELY COURTED ATTENTION

4    FROM THE PRESS AND SPECIFICALLY INJECTED THESE FALSE STATEMENTS

5    INTO THE NEWS MEDIA.

6         SO HERE THERE WILL BE INSTANCES, OF COURSE, WHERE THE

7    GOVERNMENT WILL USE TESTIMONY FROM JOURNALISTS OR RECORDINGS OF

8    INTERVIEWS TO SHOW THAT, YES, THE DEFENDANT DID MAKE A

9    PARTICULAR STATEMENT.

10        BUT AN ARTICLE SHOULD ALSO BE ADMISSIBLE IF THE EVIDENCE

11   SHOWS THAT THE DEFENDANT WAS INTERVIEWED BY A JOURNALIST, SAW A

12   COPY OF THE ARTICLE BEFORE IT WAS PUBLISHED, INCLUDING SPECIFIC

13   STATEMENTS, HAD THE CHANCE TO CORRECT ANYTHING AND DIDN'T, AND

14   LET THOSE FALSE STATEMENTS END UP IN THE ARTICLE.

15        THE ACT OF DECLINING TO TAKE THE OPPORTUNITY TO CORRECT

16   SOMETHING, THE ACT OF APPROVING THAT ARTICLE BEFORE IT WAS

17   PUBLISHED SHOULD COUNT HERE.  IT'S NOT THE SAME THING AS ASKING

18   THE JURY TO BELIEVE THE STATEMENTS IN THE ARTICLE WITHOUT ANY

19   EVIDENCE OF THE DEFENDANT'S STATEMENTS OR RATIFICATION.

20        SIMILARLY, THE JURY SHOULD BE ABLE TO HEAR ABOUT AT LEAST

21   ONE INSTANCE WHERE THE DEFENDANT WAS CONFRONTED WITH FALSE

22   STATEMENTS IN A NEWS ARTICLE FOLLOWING HER INTERVIEW AND

23   DECIDED NOT TO DO ANYTHING ABOUT IT.

24        HERE AGAIN IT'S THE FACT OF THAT CONFRONTATION, IT'S THE

25   DEFENDANT'S DECISION NOT TO DO ANYTHING TO CORRECT THE FALSE

04:04PM  1    STATEMENT IN THAT ARTICLE THAT IS THE RELEVANT FACT FOR THE

04:04PM  2    JURY.  AND THIS IS A CASE OUTLINED OR A SITUATION OUTLINED IN

04:04PM  3    THE GOVERNMENT'S BRIEFING WHERE AN IN-HOUSE THERANOS ATTORNEY

04:05PM  4    ACTUALLY BROUGHT TO THE DEFENDANT'S ATTENTION FALSE OR

04:05PM  5    MISLEADING STATEMENTS IN AN ARTICLE THAT RESULTED FROM HER

04:05PM  6    INTERVIEWS, AND SHE DID NOTHING TO REACH OUT TO THE JOURNALIST

04:05PM  7    OR CORRECT THAT FALSE INFORMATION.

04:05PM  8        WHY SHOULD THE JURY BE PRECLUDED FROM HEARING ABOUT THAT?

04:05PM  9        FINALLY, THE DEFENDANT SHOULD BE RESPONSIBLE FOR ARTICLES

04:05PM  10   THAT SHE CAUSED TO BE SENT TO INDIVIDUALS, WHETHER THOSE ARE

04:05PM  11   POTENTIAL INVESTORS, AND, THEREFORE, POTENTIAL VICTIMS IN THE

04:05PM  12   CASE OR THE PUBLIC AT LARGE.

04:05PM  13       THE EVIDENCE WILL SHOW THAT, AGAIN, THE DEFENDANT WAS VERY

04:05PM  14   INVOLVED IN MONITORING PRESS COVERAGE OF THERANOS AND HERSELF

04:05PM  15   AND VERY ACTIVE IN DECIDING WHAT ROLES, OR EXCUSE ME, IN

04:05PM  16   DECIDING WHAT ARTICLES WOULD BE SENT TO INVESTORS OR PUBLISHED

04:05PM  17   ON THERANOS'S WEBSITE OR ON SOCIAL MEDIA.

04:05PM  18       BY SENDING OUT THAT INFORMATION, THE DEFENDANT WAS

04:05PM  19   INVITING POTENTIAL VICTIMS TO RELY ON THAT INFORMATION AND

04:06PM  20   ADOPTING THE STATEMENTS THEREIN.

04:06PM  21       IT CANNOT BE THE CASE THAT A FRAUDSTER CAN HIDE BEHIND THE

04:06PM  22   SOURCE OF INFORMATION WHEN IT'S THE FRAUDSTER HERSELF WHO IS

04:06PM  23   ACTIVELY SENDING THAT INFORMATION AROUND AND CIRCULATING IT TO

04:06PM  24   VICTIMS.  THAT WOULD BE TOO GREAT A LOOPHOLE.

04:06PM  25       AS TO "THE WALL STREET JOURNAL" ARTICLE AND SOME OF THE

04:06PM  1    NEGATIVE PRESS COVERAGE, AGAIN, LET ME EMPHASIZE, THE

04:06PM  2    GOVERNMENT DOES NOT INTEND TO INTRODUCE ANY OF THAT FOR THE

04:06PM  3    TRUTH OF THE MATTERS ASSERTED IN THOSE ARTICLES.

04:06PM  4         FOR EXAMPLE, "THE WALL STREET JOURNAL ARTICLE" FROM

04:06PM  5    OCTOBER 2013 REVEALED THAT THERANOS WAS RELYING ON THIRD PARTY

04:06PM  6    MANUFACTURED DEVICES.  THAT WILL BE PROVEN THROUGH AN ABUNDANCE

04:06PM  7    OF OTHER EVIDENCE IN THE CASE.  WE WON'T BE ASKING THE JURY TO

04:06PM  8    BELIEVE THAT BECAUSE THE ARTICLE SAYS SO, BUT THAT

04:06PM  9    "WALL STREET JOURNAL" ARTICLE IS AN IMPORTANT LANDMARK IN THE

04:06PM 10    TIMELINE OF THIS CASE BECAUSE IT SHOWS WHEN KNOWLEDGE OF THE

04:06PM 11    ALLEGED FRAUD BECAME PUBLIC.

04:06PM 12         AND ESPECIALLY IMPORTANT THERE ARE DEFENDANT'S AND HER

04:07PM 13    COCONSPIRATOR'S REACTIONS TO THAT ARTICLE IN THE TIME PERIOD

04:07PM 14    FOLLOWING THE RELEASE OF THE ARTICLE WHERE IT WAS SEEN THAT

04:07PM 15    DEFENDANT AND OTHERS DOUBLE DOWNED ON THE PREVIOUS

04:07PM 16    REPRESENTATIONS.  THAT IS CERTAINLY RELEVANT TO INTENT TO

04:07PM 17    DEFRAUD, IT'S CERTAINLY RELEVANT TO KNOWLEDGE, AND IT SHOULD BE

04:07PM 18    ADMISSIBLE.

04:07PM 19         SO I'M HAPPY TO ANSWER ANY OTHER QUESTIONS THAT THE COURT

04:07PM 20    MIGHT HAVE ABOUT THOSE CATEGORIES.  OTHERWISE I'LL --

04:07PM 21              THE COURT:  I JUST HAVE ONE QUESTION.  THE ARTICLE

04:07PM 22    THAT WAS IDENTIFIED AS I THINK NUMBER 5, WAS THAT SHARED?  DO

04:07PM 23    YOU KNOW?  WAS THAT SHARED WITH INVESTORS OR WITH THE BOARD?  I

04:07PM 24    THINK IT'S NUMBER 5.

04:07PM 25         DO YOU HAVE ANY KNOWLEDGE OF THAT?

04:07PM 1          MR. BOSTIC:  YOU KNOW, I DON'T KNOW OFFHAND,

04:07PM 2     YOUR HONOR.  I APOLOGIZE.  I DO KNOW THAT A VARIETY OF ARTICLES

04:07PM 3     WERE ACTIVELY POSTED ON THE WEBSITE, TWEETED WITH MS. HOLMES'S

04:07PM 4     APPROVAL OR SHARED WITH THE BOARD OF INVESTORS.  I DON'T KNOW

04:07PM 5     FOR THAT ONE OFFHAND.

04:07PM 6          THE COURT:  ALL RIGHT.

04:07PM 7          MR. BOSTIC:  BUT THAT'S PART OF THE GOVERNMENT'S

04:08PM 8     POINT IS THAT TO EXCLUDE ALL OF THESE ARTICLES AT THIS TIME

04:08PM 9     WITHOUT ALLOWING THE GOVERNMENT TO MAKE THAT SHOWING AS TO WHY

04:08PM 10    INDIVIDUAL ARTICLES MIGHT MATTER IS PREMATURE.

04:08PM 11         THE COURT:  ALL RIGHT.  THANK YOU.

04:08PM 12    I GUESS MY FIRST QUESTION, MR. LOOBY, IS, IS IT PREMATURE

04:08PM 13    TO RULE ON THIS MOTION NOW?  AND SHOULD I DEFER THIS TO THE

04:08PM 14    TIME AND PLACE IF THE GOVERNMENT SEEKS TO INTRODUCE ANY

04:08PM 15    ARTICLES, AND THEN YOU'LL REMIND ME OF EVERYTHING THAT WE'VE

04:08PM 16    DISCUSSED THIS AFTERNOON?

04:08PM 17         MR. LOOBY:  YOUR HONOR, I THINK IT WOULD BE FAIR TO

04:08PM 18    DEFER IT IN PART.  I THINK WE STILL WOULD REQUEST AN ORDER.

04:08PM 19    YOU KNOW, THE GOVERNMENT DID CONCEDE THAT IT'S NOT OFFERING

04:08PM 20    THESE ARTICLES FOR THE TRUTH OF THE MATTER ASSERTED.  I THINK

04:08PM 21    THAT'S IMPORTANT.  THAT'S AN IMPORTANT CONCESSION.

04:08PM 22    I DIDN'T HEAR MUCH OF THE DEFENSE OF WHAT I WILL CALL THE,

04:08PM 23    LIKE, THE BACKGROUND INFORMATION.  I GOT A LITTLE CONFUSED

04:08PM 24    ABOUT WHICH CATEGORIES MR. BOSTIC, HOW HE WAS NUMBERING THEM,

04:09PM 25    BUT I'M NOT SURE THAT I HEARD A ROBUST DEFENSE OF THE THEORY OF

1    KIND OF WHAT BACKGROUND INFORMATION IS AVAILABLE TO THE -- TO

2    LIKE THE GENERAL PUBLIC.

3         AND I THINK THAT THE COURT COULD RULE THAT THAT'S NOT

4    REALLY AN APPLICABLE THEORY THAT WILL BE AVAILABLE TO THE

5    GOVERNMENT.  IT'S NOT PREMATURE TO RULE IN THAT MANNER NOW

6    BECAUSE, I MEAN, THESE EXHIBITS ARE ON THE GOVERNMENT'S EXHIBIT

7    LIST.  TRIAL IS APPROACHING.  THE SHEER VOLUME OF NEWS MEDIA

8    THAT THE GOVERNMENT HAS CHOSEN TO DISCLOSE AS EVIDENCE THAT IT

9    MIGHT SEEK TO ADMIT, IT POSES REAL TRIAL PREPARATION ISSUES

10   ABOUT KNOWING WHAT EVIDENCE IS OR ISN'T IN THE CASE.

11        BECAUSE WHEN MR. BOSTIC TALKS ABOUT ARTICLES THAT WERE

12   EITHER SHARED WITH INVESTORS OR ARTICLES HE SEEMED -- HIS

13   ARGUMENT SEEMED TO PRESUME THAT THE GOVERNMENT WOULD ACTUALLY

14   OFFER PROOF ON ALL OF THOSE FACTORS THAT I HAD PUT FORWARD AS

15   THEM NEEDING TO ME, WHICH WOULD BE THAT MS. HOLMES ACTUALLY

16   SHARED THE ARTICLE, THAT AN INVESTOR RECEIVED IT AND REVIEWED

17   IT, THAT IT CONTAINED A MISSTATEMENT THAT MS. HOLMES WAS AWARE

18   AND ALLEGED TO HAVE BEEN AWARE OF THE MISSTATEMENT.

19        THE GOVERNMENT'S EXPLANATION SOUNDS LIKE THEY PRESUME THAT

20   THEY'RE GOING TO DO HAVE TO DO ALL OF THAT, AND WE SUBMIT THAT

21   THAT'S GOING TO BE A VERY SMALL NUMBER OF ARTICLES PROBABLY

22   THAT WE'RE TALKING ABOUT.

23        BUT THE GOVERNMENT'S LIST HAS 50 ARTICLES ON IT, AND THEIR

24   THEORIES OF ADMISSIBILITY SUGGEST THAT BASICALLY ANY ARTICLE

25   ABOUT THERANOS IS FAIR GAME BECAUSE ALL OF THIS POSITIVE

04:10PM 1    PUBLICITY IS ILL-GOTTEN I SUPPOSE BECAUSE THEY'RE LABELLING IT

04:10PM 2    POSITIVE, BUT THEN MR. BOSTIC SAYS BUT SHE REPEATED THE

04:10PM 3    MISSTATEMENTS IN THEM DIRECTLY TO INVESTORS.

04:10PM 4         SO THAT KIND OF GIVES AWAY THE GAME.  THEY'RE ACTUALLY

04:10PM 5    BEING OFFERED TO SHOW THAT THERE WAS MISSTATEMENTS MADE BY

04:10PM 6    MS. HOLMES IN WHICH CASE THERE'S THE THRESHOLD QUESTION OF,

04:11PM 7    WELL, DID MS. HOLMES MAKE THE STATEMENT?  AND THE JOURNALIST IS

04:11PM 8    NOT GOING TO BE CALLED IN TO TESTIFY TO THAT TO BE

04:11PM 9    CROSS-EXAMINED TO THAT.

04:11PM 10        SO I THINK THAT THAT THRESHOLD ISSUE, HEARSAY ISSUE REALLY

04:11PM 11   PRECLUDES THAT ENTIRE FIRST BUCKET OF, I WOULD SAY, JUST LIKE

04:11PM 12   INFORMATION ECOSYSTEM.

04:11PM 13        AND I THINK, YOUR HONOR, YOU KIND OF HIT THE NAIL ON THE

04:11PM 14   HEAD WHEN YOU ASKED ABOUT THE DEGREE OF CONTROL OF MS. HOLMES

04:11PM 15   MIGHT HAVE ABOUT KIND OF HOW STORIES SPIN OUT ABOUT A COMPANY.

04:11PM 16   I THINK THAT THAT'S ACTUALLY LIKE A GOOD POINT TO MAKE.  I

04:11PM 17   MEAN, WHEN YOU SIT DOWN FOR AN INTERVIEW WITH A JOURNALIST, YOU

04:11PM 18   KNOW, YOU GIVE AN INTERVIEW AND IN CONTROL, EXCEPT IN INSTANCES

04:11PM 19   WHERE YOU ARE GIVEN KIND OF A PREVIEW OF WHAT THE ARTICLE WOULD

04:11PM 20   BE, WHICH IN THIS CASE IS GOING TO BE A VERY LIMITED SET OF

04:11PM 21   ARTICLES, THAT'S KIND OF THE END OF YOUR CONTROL OVER WHAT

04:11PM 22   HAPPENS.

04:11PM 23        AND SO THE IDEA THAT SOMEBODY WHO IS AT THE CENTER OF A

04:11PM 24   MEDIA KIND OF, I GUESS YOU COULD SAY JUST A MEDIA ECOSYSTEM,

04:12PM 25   THAT THEY'RE KIND OF IN CONTROL OF EVERY STATEMENT OR EVERY

04:12PM  1      CHARACTERIZATION OF THEIR OWN STATEMENTS AND KIND OF

04:12PM  2      PUPPETEERING THAT IS A LITTLE BIT OUTDATED, AND IT DOESN'T

04:12PM  3      REFLECT REALITY.

04:12PM  4          SO THE IDEA THAT THERE'S GOING TO BE ANY ARTICLE ABOUT

04:12PM  5      THERANOS IS SOMETHING THAT COULD HAVE INFLUENCED AN INVESTOR

04:12PM  6      BECAUSE THEY GOT CAUGHT UP INTO THE FRENZY, WHICH I'M ALSO A

04:12PM  7      LITTLE BIT SUSPICIOUS THAT AN INVESTOR IS GOING TO COME IN AND

04:12PM  8      SAY, YOU KNOW, I INVESTED BECAUSE I GOT CAUGHT UP IN A FRENZY

04:12PM  9      ALSO DOESN'T RING TRUE OF WHAT THE EVIDENCE AT TRIAL WILL SHOW.

04:12PM 10          AND THEN THE SECOND BUCKET I THINK IS ALSO RIPE FOR A

04:12PM 11      RULING NOW PRETRIAL IF YOUR HONOR IS SO PREDISPOSED, AND THAT'S

04:12PM 12      THE MOTIVE BUCKET, BECAUSE, AGAIN, THE GOVERNMENT DOESN'T WANT

04:12PM 13      TO STIPULATE TO THE FACT OF POSITIVE PRESS WHICH YOUR HONOR HAD

04:13PM 14      SUGGESTED.

04:13PM 15          THEY DON'T WANT THAT BECAUSE THEY WANT THESE ARTICLES IN

04:13PM 16      THAT HAVE THESE KIND OF SUBJECTIVE TAKES ON THE COMPANY AND

04:13PM 17      THAT REFLECT THE AUTHORIAL POINT OF VIEW.  AND SOMETIMES, EVEN

04:13PM 18      IN THE PERIOD OF TIME BEFORE, IN THE BUCKET THAT THE GOVERNMENT

04:13PM 19      MIGHT CHARACTERIZE AS POSITIVE, THERE ARE SKEPTICAL QUOTATIONS,

04:13PM 20      SOURCE OR TAKES ON THE EVIDENCE, AND THESE ARE FACTS AND PEOPLE

04:13PM 21      THAT THE JURY IS GOING TO MEET IN PERSON.

04:13PM 22          WE SUBMIT THAT THERE'S JUST NO REASON TO HAVE THESE

04:13PM 23      ARTICLES PUT IN KIND OF STACKING ON TOP OF EACH EITHER TO PROVE

04:13PM 24      A MOTIVE FOR PUBLICITY WHEN THEY POSE THOSE 403 RISKS.

04:13PM 25          I THINK FOR THE EFFECT ON THE READER AND FOR THE

04:13PM 1    ENDORSEMENT CIRCULATION THEORIES, I THINK I KIND OF ALREADY

04:13PM 2    DISCUSSED THIS A LITTLE BIT IN MY REBUTTAL, BUT I THINK THAT

04:13PM 3    THERE ARE GOING TO BE SOME THRESHOLD FACTUAL SHOWING THAT THE

04:13PM 4    GOVERNMENT IS GOING TO HAVE TO MAKE TO BE ABLE TO CLEAR THE

04:13PM 5    HEARSAY ISSUE.

04:14PM 6        I STILL -- WE DON'T REALLY HAVE ANY AUTHORITY FROM THE

04:14PM 7    GOVERNMENT THAT THE HEARSAY ISSUES WILL BE SOLVED BY THAT, AND

04:14PM 8    AT THAT POINT IT'S GOING TO BE THEIR BURDEN TO ADMIT THE

04:14PM 9    EVIDENCE.  SO MAYBE THOSE ARE ISSUES UPON WHICH THE COURT COULD

04:14PM 10   DEFER RULING, BUT I THINK THAT THERE IS ROOM HERE FOR A

04:14PM 11   PRETRIAL RULING THAT WILL SET THE PARTIES' EXPECTATIONS KIND OF

04:14PM 12   ABOUT WHAT THE PLAYING FIELD IS.

04:14PM 13       AND THEN I FINALLY WANT TO SAY ONE LAST THING ABOUT KIND

04:14PM 14   OF THE NEGATIVE -- WHAT THE GOVERNMENT IS CALLING THE NEGATIVE

04:14PM 15   MEDIA COVERAGE.  SO I THINK "THE WALL STREET JOURNAL" ARTICLE,

04:14PM 16   THE OCTOBER 2015 ARTICLE BY JOHN CARREYROU THAT MR. BOSTIC

04:14PM 17   SPECIFICALLY MENTIONED.  THIS IS ALSO IN DEFENSE EXHIBIT 48,

04:14PM 18   ECF 586-2.  AND THE TITLE OF IT IS "HOT STARTUP THERANOS HAS

04:15PM 19   STRUGGLED WITH ITS BLOOD TESTING TECHNOLOGY."  AND THAT'S AT

04:15PM 20   ECF PAGES 12 TO 24.

04:15PM 21       AND THE GOVERNMENT SAYS, WELL, WE NEED TO PUT THIS IN

04:15PM 22   EVIDENCE TO KIND OF SHOW THE EFFECT, LIKE MS. HOLMES'S RESPONSE

04:15PM 23   TO IT OR THE COMPANY'S RESPONSE TO IT.

04:15PM 24       I WOULD SUBMIT THAT THE ARTICLE ITSELF DOES NOT NEED TO BE

04:15PM 25   ADMITTED FOR THOSE PURPOSES, AND THERE'S VERY SERIOUS CONCERNS

04:15PM  1    ABOUT ADMITTING IT FOR THOSE PURPOSES.

04:15PM  2        IT'S SOURCED FROM FORMER EMPLOYEES, MOST OF WHOM ARE

04:15PM  3    ANONYMOUS COMMENTING ON THERANOS'S BLOOD TESTING PROCEDURES.

04:15PM  4            THE COURT:  SO, MR. LOOBY, IS THE COURT GOING TO BE

04:15PM  5    PUT IN A POSITION OF EXECUTIVE EDITOR AND HAVE TO READ THE

04:15PM  6    ARTICLES AND THEN MAKE A DETERMINATION?

04:15PM  7        MR. BOSTIC, IS THAT ULTIMATELY WHAT IS GOING TO HAVE TO

04:15PM  8    HAPPEN TO DETERMINE ADMISSIBILITY IN SOME OF THESE ISSUES THAT

04:15PM  9    MR. LOOBY IS TALKING ABOUT?

04:15PM 10            MR. BOSTIC:  YOUR HONOR, I THINK NOT.

04:16PM 11        FOR ONE THING, IF THERE ARE CERTAIN LINES OR STATEMENTS IN

04:16PM 12    THE ARTICLES THAT CAUSE THE DEFENSE CONCERN, FOR EXAMPLE, I

04:16PM 13    KNOW THE DEFENSE HIGHLIGHTED FOR THE COURT A NUMBER OF NEGATIVE

04:16PM 14    OR UNFAVORABLE STATEMENTS IN THE ARTICLES, INCLUDING SOME OF

04:16PM 15    THE ARTICLES THAT ARE OVERALL POSITIVE.

04:16PM 16        THE GOVERNMENT IS WILLING TO WORK WITH THE DEFENSE TO

04:16PM 17    REDACT THOSE STATEMENTS, IF NECESSARY.  THAT COULD BE ONE

04:16PM 18    POSSIBLE SOLUTION.  I THINK THAT THE WAY THAT THESE ARTICLES

04:16PM 19    COME IN WILL MAKE A DIFFERENCE.

04:16PM 20        AS TO "THE WALL STREET JOURNAL ARTICLE," I DO THINK IT'S

04:16PM 21    NECESSARY FOR THE JURORS TO UNDERSTAND SOME OF THE CONTENT OF

04:16PM 22    THAT ARTICLE IN ORDER TO HAVE ANY UNDERSTANDING OF WHAT

04:16PM 23    MS. HOLMES AND THE COMPANY DO IN RESPONSE BOTH BEFORE AND AFTER

04:16PM 24    THAT ARTICLE COMES OUT WITHOUT THE SUBSTANCE OF THE ARTICLE NOT

04:16PM 25    INTRODUCED FOR THE TRUTH BUT AT LEAST AVAILABLE TO THE JURY,

04:16PM  1    THEY'LL HAVE NO WAY TO JUDGE OR UNDERSTAND WHAT AND WHY THE

04:16PM  2    DEFENDANT TAKES CERTAIN ACTIONS.

04:16PM  3              THE COURT:  OKAY.  THANK YOU.

04:16PM  4              MR. LOOBY:  YOUR HONOR, I WOULD SAY THE TITLE KIND

04:16PM  5    OF SAYS IT ALL AND WILL EXPLAIN IT ENOUGH, "HOT STARTUP

04:17PM  6    THERANOS HAS STRUGGLED WITH ITS BLOOD TESTING TECHNOLOGY."

04:17PM  7         THE ARTICLE ITSELF CONTAINS QUOTES FROM PHYSICIANS AND

04:17PM  8    NURSES AND PATIENTS, SOME OF WHOM THE JURY WILL MEET AS TRIAL

04:17PM  9    WITNESSES.  IT CONTAINS TRIPLE HEARSAY QUOTES FROM THE WIDOW OF

04:17PM  10   A DECEASED THERANOS EMPLOYEE RELAYING INFORMATION THAT HE

04:17PM  11   ALLEGEDLY CONVEYED TO HER ABOUT HIS TIME AT THERANOS.

04:17PM  12        IT CONTAINS ASSERTIONS SOURCED TO LAB EXPERTS, QUOTE, "LAB

04:17PM  13   EXPERTS UNNAMED ABOUT THERANOS'S LAB PRACTICES THAT SAY THAT

04:17PM  14   COULD LEAD TO ERRONEOUS RESULTS."

04:17PM  15        IT'S A GROSSLY PREJUDICIAL THING TO PUT BEFORE THE JURY

04:17PM  16   AND FOR THE LIMITED PURPOSE OF KIND OF EXPLAINING THE RESPONSE,

04:17PM  17   I DON'T THINK, WE SUBMIT, THAT WE DON'T THINK IT WILL BE

04:17PM  18   NECESSARY.

04:17PM  19             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

04:17PM  20   YOU.

04:17PM  21        ALL RIGHT.  WE'RE DOWN TO 565 THAT MIGHT BE CONCURRENT

04:18PM  22   WITH THE GOVERNMENT'S NUMBER 8, I BELIEVE.

04:18PM  23             MS. SAHARIA:  YES, YOUR HONOR, I'M GOING TO ADDRESS

04:18PM  24   THOSE.

04:18PM  25             THE COURT:  ALL RIGHT.  THANK YOU.  LET ME INDICATE,

04:18PM 1       TOO, WHILE YOU COME FORWARD, WHEN WE FINISH WITH OUR DISCUSSION

04:18PM 2       ON MILS, I DO WANT TO TALK TO COUNSEL ABOUT A SEALED MATTER.

04:18PM 3       SO WE'LL GO INTO A SEALED SESSION AT THE TIME, AND I'LL LET YOU

04:18PM 4       KNOW THAT, AND WE'LL TERMINATE THE PHONE CALL, AND WE'LL GO

04:19PM 5       INTO A SEALED SESSION.

04:19PM 6               MS. SAHARIA:  UNDERSTOOD, YOUR HONOR.  LET ME JUST

04:19PM 7       GRAB A PEN.

04:19PM 8           AMY SAHARIA FOR MS. HOLMES.

04:19PM 9           AS YOUR HONOR INDICATED, THESE ARE TWO RELATED MOTIONS.

04:19PM 10      THEY ARE DISTINCT, BUT THEY RELATE TO SIMILAR ISSUES.  THE

04:19PM 11      FIRST IS DEFENSE MOTION ECF 565, AND THE SECOND IS THE

04:19PM 12      GOVERNMENT'S MOTION NUMBER 8, ECF 588.

04:19PM 13          I CAN TAKE THEM HOWEVER YOUR HONOR WOULD LIKE.  I CAN

04:19PM 14      ADDRESS OURS AND THEN LET THE GOVERNMENT RESPOND OR I CAN

04:19PM 15      ADDRESS THEM ALL TOGETHER.  WHATEVER IS MOST CONVENIENCE.

04:19PM 16              THE COURT:  I LIKE EFFICIENT -- EFFICIENCY IS WHAT I

04:19PM 17      LIKE.

04:19PM 18              MS. SAHARIA:  ESPECIALLY AT THIS HOUR OF THE DAY.

04:19PM 19      SO I WILL TRY TO BE EFFICIENT.

04:19PM 20          JUST TO PUT THE TWO MOTIONS IN CONTEXT, OUR MOTION IS

04:19PM 21      BASED ON RELEVANCE, RULE 403 AND RULE 404(B) CONSIDERATIONS AS

04:19PM 22      IT RELATES TO CONDUCT AND STATEMENTS BY THERANOS EMPLOYEES.

04:20PM 23          THE GOVERNMENT'S MOTION, JUST TO BE CLEAR, IS NOT ABOUT

04:20PM 24      RELEVANCE.  IT'S A LIMITED MOTION ABOUT KIND OF BASIC HEARSAY

04:20PM 25      PRINCIPLES.  IT DOES NOT IDENTIFY THE PARTICULAR STATEMENTS IT

04:20PM  1    WISHES TO INTRODUCE.  IT'S ASKING FOR A SORT OF ABSTRACT RULING

04:20PM  2    ON HOW THE HEARSAY PRINCIPLES APPLY TO STATEMENTS BY THERANOS

04:20PM  3    EMPLOYEES.

04:20PM  4        SO BOTH MOTIONS ARE ABOUT CONDUCT OR STATEMENTS BY

04:20PM  5    THERANOS EMPLOYEES, BUT THEY ADDRESS DIFFERENT LEGAL QUESTIONS.

04:20PM  6    SO IT'S A FUNDAMENTAL PRINCIPLE OF OUR CONSTITUTION THAT A

04:20PM  7    DEFENDANT IS CRIMINALLY LIABLE ONLY FOR HER OWN ACTS.

04:20PM  8        THERE ARE THREE WELL RECOGNIZED EXCEPTIONS TO THAT

04:20PM  9    PRINCIPLE.  ONE IS FOR CONDUCT BY COCONSPIRATORS.  THAT MAY BE

04:20PM  10   AN ISSUE FOR ANOTHER DAY IN THIS CASE, BUT THAT'S NOT THE

04:20PM  11   SUBJECT OF THIS PRESENT MOTION.

04:20PM  12       THE SECOND IS CONDUCT BY ACCOMPLICES.  THAT'S ALSO NOT THE

04:20PM  13   SUBJECT OF THIS MOTION.

04:20PM  14       AND THE THIRD IS STRICT LIABILITY OFFENSES.  WIRE FRAUD IS

04:20PM  15   NOT ONE OF THOSE OFFENSES.

04:21PM  16       ABSENT ONE OF THOSE EXCEPTIONS, THERE'S NO VICARIOUS

04:21PM  17   LIABILITY IN THE CRIMINAL LAW.  MS. HOLMES IS NOT VICARIOUSLY

04:21PM  18   LIABLE FOR EVERYTHING THAT HAPPENED AT THERANOS JUST BECAUSE

04:21PM  19   SHE WAS CEO, NOR IS SHE VICARIOUSLY LIABLE BECAUSE SHE EXERTED

04:21PM  20   SOME SORT OF INFLUENCE AT THE COMPANY AS ALL CEO'S, OF COURSE,

04:21PM  21   DO.

04:21PM  22       THE GOVERNMENT'S RULE 404(B) NOTICE, VARIOUS ARGUMENTS AND

04:21PM  23   PLEADINGS THAT IT HAS MADE IN THIS CASE GAVE THE DEFENSE PAUSE

04:21PM  24   THAT THE GOVERNMENT INTENDS TO AT LEAST HINT AT VICARIOUS

04:21PM  25   LIABILITY TYPE ARGUMENTS TO THE JURY.  IT HAS REPEATEDLY PUT AT

04:21PM  1       ISSUE IN VARIOUS ITERATIONS OF ITS 404(B) NOTICES CONDUCT BY

04:21PM  2       THERANOS AGENTS WITHOUT TYING THAT CONDUCT TO MS. HOLMES.  IT

04:21PM  3       HAS SAID THINGS LIKE "SHE IS ON THE HOOK FOR WHAT HAPPENED AT

04:21PM  4       THE COMPANY," AND THAT WAS THE IMPETUS FOR THIS PARTICULAR

04:22PM  5       MOTION.

04:22PM  6            LET ME START WITH THE PARTICULAR EVIDENCE IDENTIFIED IN

04:22PM  7       THE RULE 404(B) NOTICE, AND THEN I'LL TURN TO KIND OF THE

04:22PM  8       BROADER CONSIDERATIONS AT TRIAL.

04:22PM  9            THE GOVERNMENT PRODUCED A REVISED RULE 404(B) NOTICE IN

04:22PM  10      SEPTEMBER THAT CONTAINS VAGUE REFERENCES TO THERANOS EMPLOYEES

04:22PM  11      AND IN SOME CASES DOES NOT TIE THAT CONDUCT TO MS. HOLMES.

04:22PM  12           WE CATALOG THOSE AT PAGES 3 TO 5 OF OUR MOTION.  I DON'T

04:22PM  13      THINK IT'S NECESSARY FOR ME TO COVER THEM ALL HERE WITH THE

04:22PM  14      COURT, IN PARTICULAR BECAUSE THE GOVERNMENT DOESN'T RESPOND TO

04:22PM  15      THEM, BUT LET ME JUST HIGHLIGHT A FEW OF THOSE EXAMPLES.

04:22PM  16           THE FIRST IS THAT THE GOVERNMENT IDENTIFIES THE

04:22PM  17      EXPERIENCES OF VARIOUS PATIENTS AND SAYS THAT THOSE ARE

04:22PM  18      ADMISSIBLE TO PROVE NOTICE TO MS. HOLMES, BUT AS TO THREE OF

04:22PM  19      THOSE PATIENTS IT FAILS TO CONNECT THOSE IN IT'S 404(B) NOTICE

04:22PM  20      TO MS. HOLMES IN ANY WAY, WHICH GAVE US CONCERN THAT THE

04:23PM  21      GOVERNMENT INTENDS TO PURSUE SOME SORT OF IMPUTED KNOWLEDGE,

04:23PM  22      THEORY OR CONSTRUCTIVE NOTICE THEORY, AND THERE'S NO BASIS IN

04:23PM  23      THE CRIMINAL LAW FOR THAT KIND OF THEORY.  EITHER MS. HOLMES

04:23PM  24      HAD KNOWLEDGE OR SHE DIDN'T HAVE KNOWLEDGE.

04:23PM  25           THE SECOND IS THAT THE GOVERNMENT IDENTIFIES CONVERSATIONS

04:23PM 1    BETWEEN UNIDENTIFIED THERANOS REPRESENTATIVES SUCH AS CUSTOMER

04:23PM 2    SERVICE REPRESENTATIVES AND DOCTORS AND CLAIMS THAT THOSE

04:23PM 3    REPRESENTATIVES MADE FALSE STATEMENTS TO THE DOCTORS WITHOUT

04:23PM 4    ESTABLISHING ANY CAUSAL CONNECTION BETWEEN MS. HOLMES AND THOSE

04:23PM 5    CONVERSATIONS.

04:23PM 6        THAT MAKES THOSE ALLEGATIONS VERY DIFFERENT FROM THE

04:23PM 7    PRINCIPAL CASE THAT THE GOVERNMENT RELIES ON THAT I KNOW THE

04:23PM 8    COURT IS FAMILIAR WITH, WHICH IS THE CICCONE CASE, AS MR. LOOBY

04:23PM 9    CALLED IT, THAT'S C-I-C-C-O-N-E, FROM THE NINTH CIRCUIT.  IN

04:23PM 10   THAT CASE THE DEFENDANT ACTUALLY WROTE A SCRIPT FULL OF FALSE

04:24PM 11   STATEMENTS, GAVE THAT SCRIPT TO HIS EMPLOYEES, AND TOLD THE

04:24PM 12   EMPLOYEES WHO TO CALL WITH THAT SCRIPT.

04:24PM 13        THE COURT:  THOSE WERE CALL CENTER TYPE CONDUCT?

04:24PM 14        MS. SAHARIA:  EXACTLY.  THAT'S RIGHT.  HE WAS HELD

04:24PM 15   LIABLE FOR HIS OWN CONDUCT.  HIS CONDUCT WAS IN INSTRUCTING HIS

04:24PM 16   EMPLOYEES TO MAKE FALSE STATEMENTS.  AND, OF COURSE, WE'RE NOT

04:24PM 17   CHALLENGING THAT MS. HOLMES COULD BE LIABLE ON A THEORY THAT

04:24PM 18   SHE HERSELF DIRECTED PEOPLE TO DO SOMETHING.

04:24PM 19        OUR CONCERN HERE IS MORE ABOUT THESE BROADER THEORIES THAT

04:24PM 20   SHE'S LIABLE FOR THINGS HER EMPLOYEES DID EVEN IF SHE DIDN'T

04:24PM 21   DIRECT THOSE THINGS TO HAPPEN.  SO THAT'S CATEGORY TWO.

04:24PM 22        CATEGORY THREE, WHICH I WILL NOT DWELL ON, IS ONE THAT

04:24PM 23   YOUR HONOR TALKED ABOUT WITH MR. WADE, WHICH IS THE

04:24PM 24   GOVERNMENT'S ALLEGATIONS WITH RESPECT TO THE PRODUCTION OF THE

04:24PM 25   LIS DATABASE TO THE GOVERNMENT AND THE SUBSEQUENT DISASSEMBLY

04:24PM  1    OF THAT DATABASE.

04:24PM  2        THE GOVERNMENT ALLEGED IN ITS 404(B) NOTICE THAT THOSE

04:24PM  3    ACTIONS ARE RELEVANT TO MS. HOLMES'S INTENT.  THERE IS NOT ONE

04:25PM  4    SHRED OF EVIDENCE TYING THOSE ACTIONS TO MS. HOLMES.  WE DIDN'T

04:25PM  5    HEAR ANY SHRED OF EVIDENCE FROM THE GOVERNMENT THE OTHER DAY ON

04:25PM  6    THAT TOPIC.  ALL THEY SAID WAS THAT THEY CONTINUED TO

04:25PM  7    INVESTIGATE.  ONE WOULD HOPE THAT THEY WOULD HAVE INVESTIGATED

04:25PM  8    BEFORE MAKING THAT INFLAMMATORY STATEMENT AS TO MS. HOLMES.

04:25PM  9    I'M CONFIDENT NO SUCH EVIDENCE EXISTS.

04:25PM 10        I'M NOT GOING TO DWELL ON THAT SINCE THAT HAS BEEN COVERED

04:25PM 11    AT LENGTH.

04:25PM 12        THE FOURTH, AND THIS TOUCHES ON A POINT THAT WE WERE JUST

04:25PM 13    DISCUSSING, AND THIS IS THE ONLY ONE WE RESPOND TO IN THEIR

04:25PM 14    OPPOSITION BRIEF, IS THAT THEY POINT TO ACTS BY OUTSIDE COUNSEL

04:25PM 15    AND AT BOIES SCHILLER AS WELL AS THERANOS'S INSIDE GENERAL

04:25PM 16    COUNSEL WITH RESPECT TO "THE WALL STREET JOURNAL" WHICH THEY

04:25PM 17    CLAIM ARE EVIDENCE OF MS. HOLMES'S MENTAL STATE.  AGAIN, THEY

04:25PM 18    FAIL TO TIE THOSE ALLEGATIONS TO MS. HOLMES IN ANY WAY.

04:26PM 19        IN THEIR RESPONSE BRIEF THEY SIMPLY SAY IT'S IMPLAUSIBLE

04:26PM 20    THAT SHE DIDN'T DIRECT THOSE PARTICULAR ACTIONS.  I WOULD

04:26PM 21    SUBMIT THAT'S MERE SPECULATION.  THEY SHOULD COME FORWARD WITH

04:26PM 22    PROOF THAT SHE DIRECTED THESE ACTS AND THEY HAVE NOT DONE SO.

04:26PM 23    AND THIS IS A VERY DANGEROUS TERRITORY GIVEN THE ROLE OF

04:26PM 24    LAWYERS IN THESE PARTICULAR ACTIONS.

04:26PM 25        WE TOUCHED ON ONE OTHER CATEGORY THAT IS NOT SPECIFICALLY

04:26PM 1    MENTIONED HERE BUT WITH RESPECT TO THE CONDUCT OF THE COMPANY

04:26PM 2    VIS-A-VIS THE DEPARTURE OF CERTAIN EMPLOYEES AND WHAT HAPPENED

04:26PM 3    AFTER THEY LEFT THE COMPANY.

04:26PM 4        MY COLLEAGUE CHALLENGED THE GOVERNMENT JUST A FEW MINUTES

04:26PM 5    AGO TO ESTABLISH A CONNECTION TO MS. HOLMES, AND WE AGAIN HEARD

04:26PM 6    NO CONNECTION WHATSOEVER TO MS. HOLMES IN CONNECTION WITH THOSE

04:26PM 7    ACTIONS.

04:26PM 8        SO WE WOULD ASK THE COURT TO EXCLUDE ALL OF THE CATEGORIES

04:26PM 9    OR ALL OF THE EVIDENCE THAT WE HAVE IDENTIFIED AT PAGES 3 TO 5

04:26PM 10   OF OUR MOTION WHICH THE GOVERNMENT HAS NOT TIED TO MS. HOLMES.

04:26PM 11       THE SEPARATE QUESTION IS HOW DO WE DEAL WITH THIS ISSUE

04:27PM 12   MORE BROADLY AT TRIAL BECAUSE THERE ARE STATEMENTS IN THE

04:27PM 13   GOVERNMENT'S OPPOSITION BRIEF THAT GIVE US GREAT CONCERN THAT

04:27PM 14   THE GOVERNMENT DOESN'T KNOW WHERE TO DRAW THE LINE AND THAT

04:27PM 15   THEY MAY CONTINUE TO HINT AT THESE VICARIOUS LIABILITY KINDS OF

04:27PM 16   ARGUMENTS.

04:27PM 17       SO JUST AS A FEW EXAMPLES, AT OPPOSITION AT PAGE 6 THEY

04:27PM 18   SAY MS. HOLMES WAS WELL POSITIONED TO ENSURE THAT THE ACTIONS

04:27PM 19   OF THERANOS'S EMPLOYEES AND AGENTS FURTHERED DEFENDANT'S

04:27PM 20   SCHEMES WHENEVER POSSIBLE.

04:27PM 21       THEY SAY AGAIN AT OPPOSITION 6, HER WORDS AND ACTIONS HAD

04:27PM 22   A SIGNIFICANT EFFECT ON THE WAY THERANOS EMPLOYEES VIEWED THE

04:27PM 23   COMPANY.

04:27PM 24       THOSE KINDS OF GENERALITIES ABOUT SIGNIFICANT EFFECTS OR

04:27PM 25   INFLUENCE ARE NOT EVIDENCE.  THEY ARE NOT HER DIRECTING

04:27PM 1    PARTICULAR ACTIONS TO OCCUR.

04:27PM 2         THE GOVERNMENT CITES NO CASE IMPUTING CRIMINAL LIABILITY

04:27PM 3    ON THOSE KINDS OF GENERALITIES.

04:27PM 4         SO WE WOULD ASK THE COURT TO ENTER AN ORDER LAYING GROUND

04:28PM 5    RULES TO GOVERN THIS TRIAL GOING FORWARD THAT WOULD REQUIRE

04:28PM 6    THAT THE GOVERNMENT TO PROVE THAT MS. HOLMES DIRECTED VARIOUS

04:28PM 7    ACTIONS TO OCCUR IF THEY ARE GOING TO PUT THESE BAD ACTS OR

04:28PM 8    ALLEGED BAD ACTS AND ALLEGEDLY FALSE STATEMENTS BY THERANOS'S

04:28PM 9    EMPLOYEES AT ISSUE IN THE CASE, THERE'S A VERY WELL ESTABLISHED

04:28PM 10   GROUND TO DO THAT.  IT IS RULE 104(B) OF THE RULES OF EVIDENCE.

04:28PM 11        UNDER RULE 104(B), WHEN THE RELEVANCE OF EVIDENCE DEPENDS

04:28PM 12   ON WHETHER A FACT EXISTS, PROOF MUST BE INTRODUCED SUFFICIENT

04:28PM 13   TO SUPPORT A FINDING THAT A FACT DOES EXIST.  THE COURT MAY

04:28PM 14   ADMIT THE PROPOSED EVIDENCE ON THE CONDITION THAT THE PROOF BE

04:28PM 15   INTRODUCED LATER.

04:28PM 16        SO IF THE GOVERNMENT IS GOING TO ATTEMPT TO PUT INTO

04:28PM 17   EVIDENCE ACTS BY THERANOS EMPLOYEES THAT IT ALLEGED TO BE BAD

04:28PM 18   ACTS OR FALSE STATEMENTS, IT SHOULD BE REQUIRED TO PROFFER AT

04:28PM 19   THAT TIME HOW IT INTENDS TO CONNECT THAT ACT TO MS. HOLMES SO

04:29PM 20   THAT WE DON'T END UP IN A SITUATION WHERE THEY PUT THAT INTO

04:29PM 21   EVIDENCE AND THEN THAT CONNECTION TO MS. HOLMES NEVER

04:29PM 22   MATERIALIZES.

04:29PM 23        SO I THINK WITH THAT MAYBE I'LL LET THE GOVERNMENT RESPOND

04:29PM 24   AND THEN WE CAN TURN TO THE GOVERNMENT'S MOTIONS, UNLESS YOU

04:29PM 25   PREFER FOR ME TO GO FORWARD WITH THIS.

04:29PM  1          THE COURT:  WELL, MR. BOSTIC, ARE YOU SPEAKING TO

04:29PM  2    THIS?

04:29PM  3          MR. BOSTIC:  YES, YOUR HONOR.  GOOD AFTERNOON.

04:29PM  4       ACTUALLY, BECAUSE THESE MOTIONS ARE SO INTERRELATED, I

04:29PM  5    WOULD SUGGEST THAT WE ADDRESS THEM SIMULTANEOUSLY IN PARALLEL.

04:29PM  6    I THINK PART OF THE GOVERNMENT'S POINT HERE WILL BE THAT

04:29PM  7    BECAUSE THE HEARSAY RULES EXPRESSLY PROVIDE AN EXCEPTION AND

04:29PM  8    PERMIT THE INTRODUCTION OF STATEMENTS BY AGENTS AND EMPLOYEES,

04:29PM  9    THAT THAT DOES ACTUALLY LAY THE GROUNDWORK FOR THE ADMISSION OF

04:29PM 10    THESE STATEMENTS AND INCLUDING THE INSTANCES THAT MS. SAHARIA

04:29PM 11    JUST MENTIONED.  SO I THINK IT DOES MAKE SENSE TO VIEW THEM IN

04:29PM 12    PARALLEL.

04:29PM 13          THE COURT:  ALL RIGHT.  THANK YOU.

04:29PM 14       ONE OF THE QUESTIONS I HAVE, AND I KNOW, MS. SAHARIA, WE

04:30PM 15    HAVE TO HAVE A DISCUSSION ABOUT AGENCY AND THE EXTENT OF AGENCY

04:30PM 16    AND WHETHER OR NOT THAT LIES HERE IN THE EVIDENCE AND FACTS IN

04:30PM 17    THIS CASE OR NOT, WHETHER OR NOT WE CAN TELL THAT NOW PRETRIAL

04:30PM 18    OR WHETHER THAT IS SOMETHING THAT, AS YOU AND OTHERS HAVE

04:30PM 19    SUGGESTED THIS IS SOMETHING THAT IS GOING TO, BECAUSE WE KNOW

04:30PM 20    TRIALS ARE FLUID, WHETHER OR NOT THIS IS SOMETHING THAT THE

04:30PM 21    COURT IS GOING TO HAVE TO ENTERTAIN AT THE TIME OF EITHER THE

04:30PM 22    ATTEMPT TO INTRODUCE OR THE MATTER COMES UP.

04:30PM 23          MS. SAHARIA:  SURE.  SO TWO RESPONSES TO THAT.

04:30PM 24       I THINK FOR SURE WHEN WE'RE TALKING ABOUT WHETHER AN

04:30PM 25    EMPLOYEE IS AN AGENT OF MS. HOLMES FOR THE PURPOSE OF THE

04:30PM   1    HEARSAY RULES, WE DO THINK THAT THAT IS NOT AN ISSUE THAT CAN

04:30PM   2    BE ADDRESSED NOW.  THE GOVERNMENT WOULD HAVE TO LAY THE PROPER

04:30PM   3    FOUNDATION AT TRIAL, AND I CAN TURN TO WHAT THAT FOUNDATION

04:30PM   4    WOULD LOOK LIKE.

04:30PM   5         BUT I DISAGREE WITH MR. BOSTIC THAT THESE TWO ISSUES MERGE

04:30PM   6    TOGETHER.  THEY'RE TWO DIFFERENT GROUNDS FOR EVIDENCE TO BE

04:31PM   7    ADMITTED, ONE OF WHICH IS HEARSAY AND ONE OF WHICH IS

04:31PM   8    RELEVANCE.  AND IT MAY CERTAINLY BE THE CASE THAT IF THE

04:31PM   9    GOVERNMENT CAN ESTABLISH UNDER THE FACTORS THAT I'LL DISCUSS

04:31PM  10    THAT A PARTICULAR EMPLOYEE SHOULD QUALIFY AS AN AGENT OF

04:31PM  11    MS. HOLMES SO THAT A STATEMENT CAN COME IN AS -- FOR THE TRUTH

04:31PM  12    OF THE MATTER ASSERTED UNDER THE HEARSAY RULES, THAT'S ONE

04:31PM  13    THING, BUT TO SAY THAT MS. HOLMES IS THEN CRIMINALLY LIABLE FOR

04:31PM  14    THE ACTS OF AN AGENT, THAT IS JUST SAYING THERE IS VICARIOUS

04:31PM  15    LIABILITY UNDER THE SUBSTANTIVE CRIMINAL LAW, AND THERE'S NO

04:31PM  16    AUTHORITY FOR THAT.

04:31PM  17         THE GOVERNMENT HAS NOT CITED ANY AUTHORITY, AND THAT WOULD

04:31PM  18    BE I THINK A FLAGRANT VIOLATION OF THE DUE PROCESS CLAUSE.

04:31PM  19         SO, AGAIN, THESE ARE TWO DIFFERENT ISSUES.  ONE, WHAT IS

04:31PM  20    SHE SUBSTANTIVELY LIABLE FOR?  AND THAT GOES INTO WHAT IS

04:31PM  21    RELEVANT, WHAT COMES INTO THE CASE.

04:31PM  22         A TOTALLY SEPARATE QUESTION, ALTHOUGH IT INVOLVES THE SAME

04:31PM  23    ISSUES, IS UNDER THE HEARSAY RULES WHAT STATEMENTS CAN COME IN

04:31PM  24    FOR THE TRUTH OF THE MATTER ASSERTED.

04:32PM  25         SO I'M HAPPY TO TURN TO THAT PARTICULAR HEARSAY QUESTION.

04:32PM 1       AS I MENTIONED, THE GOVERNMENT IS ASKING THE COURT TO

04:32PM 2   ADMIT UNIDENTIFIED STATEMENTS.  I DON'T THINK THE COURT COULD

04:32PM 3   ADMIT ANY STATEMENTS AT THIS POINT.  IT'S REALLY KIND OF AN

04:32PM 4   ABSTRACT DISCUSSION ABOUT THE APPLICATION OF THE HEARSAY RULES.

04:32PM 5       AND WHAT THE GOVERNMENT IS ASKING FOR IN PARTICULAR IS A

04:32PM 6   BLANKET RULING THAT EVERY STATEMENT BY EVERY THERANOS EMPLOYEE

04:32PM 7   IS NONHEARSAY, AND THUS ADMISSIBLE FOR ITS TRUTH AS A STATEMENT

04:32PM 8   BY MS. HOLMES'S AGENT.

04:32PM 9       NOW, WE KNOW UNDER NINTH CIRCUIT LAW THAT WE LOOK TO

04:32PM 10  COMMON LAW AGENCY PRINCIPLES TO DECIDE WHO IS AN AGENT UNDER

04:32PM 11  RULE 801(D)(2)(D).  UNDER COMMON LAW AGENCY PRINCIPLES,

04:32PM 12  EMPLOYEES AT THERANOS WERE NOT MS. HOLMES'S AGENTS.  THEY WERE

04:32PM 13  AGENTS OF THERANOS, JUST LIKE SHE AS CEO WAS AN AGENT OF

04:32PM 14  THERANOS.

04:32PM 15      THE TWO -- MS. HOLMES AND EMPLOYEES OF THERANOS WERE

04:32PM 16  EFFECTIVELY COAGENTS OF THERANOS, AND WE CITED THE RESTATEMENT

04:33PM 17  OF AGENCY FOR THAT PRINCIPLE.

04:33PM 18      THE GOVERNMENT HASN'T IDENTIFIED ANY COMMON LAW AGENCY

04:33PM 19  PRINCIPALS THAT WOULD SUPPORT ITS INTERPRETATION.

04:33PM 20      NOW, UNDER THE GOVERNMENT'S RULE IT WANTS THE COURT TO

04:33PM 21  ADOPT THIS VERY BROAD NOVEL RULE THAT WOULD HOLD IN THE CASE OF

04:33PM 22  PRIVATE COMPANIES OWNED, AND CONTROLLED, AND MANAGED BY AN

04:33PM 23  INDIVIDUAL DEFENDANT, EVERY EMPLOYEE IS THE AGENT OF THE

04:33PM 24  DEFENDANT FOR PURPOSES OF RULE 801(D)(2)(D).  THEY CITE NO

04:33PM 25  COMMON LAW AGENCY PRINCIPLE IN SUPPORT OF THAT RULE, AND NO

04:33PM 1    CASE ADOPTING THAT RULE.

04:33PM 2         THERE IS, IN FACT, A VERY WELL ESTABLISHED BODY OF CASE

04:33PM 3    LAW ADDRESSING WHO IS AN AGENT OF A CORPORATE EXECUTIVE FOR

04:33PM 4    PURPOSES OF 801(D)(2)(D).  WE CITED THOSE CASES AT PAGES 15 TO

04:33PM 5    16 OF OUR OPPOSITION, AND IN THOSE CASES THE COURTS HAVE

04:33PM 6    UNIFORMLY REJECTED THE IDEA THAT ANY SUBORDINATE EMPLOYEE IS

04:33PM 7    ALWAYS CONSIDERED AN AGENT OF AN EXECUTIVE, AND THEY LOOK TO

04:34PM 8    THE DEGREE OF DAILY SUPERVISION BY THE DEFENDANT OVER A

04:34PM 9    DECLARANT.

04:34PM 10        SO THEY ASK QUESTIONS LIKE IS THE DECLARANT DIRECTLY

04:34PM 11   RESPONSIBLE TO THE DEFENDANT?  WAS THE DECLARANT HIRED DIRECTLY

04:34PM 12   BY THE DEFENDANT?  DID THE DECLARANT WORK ON MATTERS WHICH THE

04:34PM 13   DEFENDANT WAS ACTIVELY INVOLVED OR DID THE DEFENDANT DIRECT THE

04:34PM 14   DECLARANT'S WORK ON DAY-TO-DAY ON A CONTINUING BASIS?

04:34PM 15        SO WE CANNOT ANSWER THOSE QUESTIONS IN THE ABSTRACT.

04:34PM 16   THERE MIGHT BE SOME SMALL CATEGORY OF EMPLOYEES WHO COULD

04:34PM 17   QUALIFY UNDER THAT TEST, IF THAT IS A TEST THAT THE COURT WERE

04:34PM 18   TO APPLY, BUT THE GOVERNMENT HASN'T LAID ANY FOUNDATIONS FOR

04:34PM 19   THOSE FACTORS RIGHT NOW.

04:34PM 20        NOW, THE GOVERNMENT PRIMARILY RELIES ON TWO NINTH CIRCUIT

04:34PM 21   CASES, KIRK AND GIBSON.  I THINK AS YOUR HONOR PROBABLY KNOWS

04:34PM 22   FROM READING THEM, THEY CONTAIN VERY LITTLE ANALYSIS AND IN

04:34PM 23   BOTH CASES THE HOLDING WAS AN ALTERNATE HOLDING, BUT I THINK

04:34PM 24   THOSE CASES ARE PERFECTLY CONSISTENT WITH THE WELL ESTABLISHED

04:35PM 25   BODY OF CASE LAW THAT I JUST DESCRIBED BECAUSE IN BOTH OF THOSE

04:35PM 1    CASES THE DEFENDANT WAS SUPERVISING THE DECLARANTS ON A

04:35PM 2    DAY-TO-DAY BASIS.

04:35PM 3        IN KIRK THE NINTH CIRCUIT SAID EXPRESSLY IN DISCUSSING THE

04:35PM 4    FACTS OF THE CASE THAT THE DEFENDANT RAN THE DAY-TO-DAY

04:35PM 5    OPERATIONS THAT WERE AT ISSUE IN THAT CASE.  IT WAS A TIMESHARE

04:35PM 6    CLUB THAT WAS, YOU KNOW, FALSELY MAKING REPRESENTATIONS TO

04:35PM 7    CUSTOMERS.

04:35PM 8        AND THEN IN GIBSON, THIS IS ONE IS EVEN CLEARER, THE

04:35PM 9    DEFENDANT HIMSELF EXPRESSED OR INSTRUCTED THE SALESPEOPLE TO

04:35PM 10   CONVEY FALSE INFORMATION TO INVESTORS.  SO VERY MUCH LIKE THE

04:35PM 11   CICCONE CASE.  IT'S NOT SURPRISING THAT WHEN HE GAVE THOSE

04:35PM 12   DIRECT INSTRUCTIONS, THE COURT DEEMED THOSE EMPLOYEES TO BE

04:35PM 13   AGENTS.

04:35PM 14       SO WE THINK THAT THOSE CASES ARE CONSISTENT WITH THIS WELL

04:35PM 15   ESTABLISHED BODY OF CASE LAW THAT WE HAVE CITED AND THAT THE

04:35PM 16   COURT CAN'T DECIDE THIS ISSUE RIGHT NOW WITHOUT A FACTUAL

04:35PM 17   FOUNDATION FROM THE GOVERNMENT.

04:35PM 18           THE COURT:  OKAY.  THANK YOU.

04:35PM 19       MR. BOSTIC.

04:35PM 20           MR. BOSTIC:  THANK YOU, YOUR HONOR.

04:35PM 21       SO THE IMPORTANT ISSUE RAISED BY THESE MOTIONS RELATES TO

04:36PM 22   HOW THE COURT WILL DEAL WITH EVIDENCE OF STATEMENTS AND ACTIONS

04:36PM 23   BY INDIVIDUALS OTHER THAN THE DEFENDANT BUT WHERE THOSE

04:36PM 24   STATEMENTS AND ACTIONS ARE STILL CLEARLY IN FURTHERANCE OF THE

04:36PM 25   FRAUD THAT THIS DEFENDANT ORIGINATED AND THAT THIS DEFENDANT

04:36PM 1   WAS THE PRINCIPAL MOTIVATING FORCE FOR.

04:36PM 2       THE DEFENSE CITES CASES ADDRESSING THE RISK THAT A

04:36PM 3   DEFENDANT WILL BE IMPROPERLY CONVICTED FOR THE INDEPENDENT

04:36PM 4   CONDUCT OF OTHERS.  THAT'S THE LINE OF CASES CITED BY THE

04:36PM 5   DEFENSE IN ITS MOTION.

04:36PM 6       THAT RISK IS NONEXISTENT HERE.  THERE IS NO INDEPENDENT

04:36PM 7   FRAUD THAT TOOK PLACE AT THERANOS.

04:36PM 8       TO THE EXTENT THAT THERANOS AGENTS AND EMPLOYEES MADE

04:36PM 9   FALSE STATEMENTS IN FURTHERANCE OF THE FRAUD, IT WAS IN

04:36PM 10  FURTHERANCE OF THE SAME FRAUD THAT CONSTITUTES THE BASIS FOR

04:36PM 11  THE CHARGED CONDUCT IN THIS CASE.

04:36PM 12      AND EVEN WHERE INDIVIDUAL STATEMENTS CANNOT BE TRACED BACK

04:36PM 13  TO HOLMES, IN OTHER WORDS, EVEN WHERE THE DEFENDANT DID NOT SAY

04:36PM 14  HERE'S A SCRIPT, I WANT YOU TO GO SAVE THIS, IT STILL

04:37PM 15  NONETHELESS IS CLEAR FROM THE EVIDENCE AS A WHOLE THAT THOSE

04:37PM 16  STATEMENTS, THE ALLEGED BAD ACTS BY THERANOS AGENTS AND

04:37PM 17  EMPLOYEES ARE THE RESULT OF, THEY FLOW DIRECTLY FROM THE FRAUD

04:37PM 18  AND MISSTATEMENTS MADE BY THE DEFENDANT IN THIS CASE GIVEN HER

04:37PM 19  ESSENTIALLY COMPLETE CONTROL OVER THE OPERATIONS OF THE

04:37PM 20  COMPANY.

04:37PM 21          THE COURT:  SO I'M CURIOUS, HOW FAR DOES THAT

04:37PM 22  EXTEND, MR. BOSTIC?  HOW FAR DO WE EXTEND THAT?  DOES THAT GO

04:37PM 23  TO AN EMPLOYEE, A CUSTODIAN, SOMEBODY WHO IS IN CHARGE OF THE

04:37PM 24  PARKING LOT, SOMEBODY WHO IS IN CHARGE OF THE CAFETERIA AND

04:37PM 25  THEY MAKE A STATEMENT TO SOMEONE THAT THIS IS THE BEST COMPANY

04:37PM 1    THAT I HAVE EVER WORKED IN, AND I'VE NEVER BEEN TREATED BETTER

04:37PM 2    THAN THIS, THIS IS A SUCCESSFUL COMPANY, YOU SHOULD INVEST IN

04:37PM 3    THIS, IS SHE LIABLE FOR THAT?

04:37PM 4            MR. BOSTIC:  SO TWO POINTS IN RESPONSE, YOUR HONOR.

04:38PM 5        FIRST, WE'RE HERE TO TALK ABOUT ADMISSIBILITY AND NOT

04:38PM 6    NECESSARILY LIABILITY.

04:38PM 7        SO A FACT CAN BE ADMISSIBLE EVEN IF THAT FACT DOES NOT

04:38PM 8    STANDING ALONE SUPPORT A CONVICTION.  I HOPE THAT'S NOT A

04:38PM 9    CONTROVERSIAL POINT.

04:38PM 10       SO THE FALSE STATEMENT OR BAD ACT OF A THERANOS AGENT OR

04:38PM 11   EMPLOYEE CAN BE RELEVANT IN THIS CASE, IT CAN BE OKAY FOR THE

04:38PM 12   JURY TO HEAR ABOUT IT IF IT SHOWS THE EXISTENCE OF THE SCHEME

04:38PM 13   TO DEFRAUD, EVEN IF THAT STATEMENT ITSELF COULD NOT ON ITS OWN

04:38PM 14   SUPPORT THE CONVICTION OF THE DEFENDANT.

04:38PM 15       THE OTHER THING I WOULD SAY THERE IS THAT IT DOES MATTER

04:38PM 16   WHAT THE NATURE OF THE FALSE STATEMENT WAS.  HERE THE

04:38PM 17   INDICTMENT LAYS OUT SEVERAL CATEGORIES OF SPECIFIC TYPES OF

04:38PM 18   FALSE STATEMENTS THAT THIS DEFENDANT MADE ALONG WITH HER

04:38PM 19   COCONSPIRATOR.

04:38PM 20       WHEN THE DEFENDANT MAKES THOSE MISSTATEMENTS, THOSE

04:38PM 21   MISREPRESENTATIONS TO INVESTORS, TO OTHER EMPLOYEES OF THE

04:38PM 22   COMPANY, TO JOURNALISTS AS WE RECENTLY DISCUSSED, THOSE FALSE

04:39PM 23   STATEMENTS BEGIN TO PERMEATE THE ATMOSPHERE AT THERANOS.  IT'S

04:39PM 24   NO SURPRISE THAT HER AGENTS, HER EMPLOYEES THEN GO ON TO REPEAT

04:39PM 25   THOSE FALSE STATEMENTS THEREBY SPREADING THE FRAUD, SPREADING

04:39PM  1    THE MISUNDERSTANDING, SPREADING THAT FALSE INFORMATION.  THAT

04:39PM  2    CAN HAPPEN EITHER BECAUSE THOSE EMPLOYEES UNDERSTAND THAT WHILE

04:39PM  3    THIS IS NOT EXACTLY TRUE, BUT THIS IS WHAT WE'RE SAYING.  I

04:39PM  4    UNDERSTAND THIS BECAUSE I'VE GOTTEN DIRECTION FROM MY

04:39PM  5    SUPERIORS, INCLUDING THE DEFENDANTS IN THIS CASE, THAT THIS IS

04:39PM  6    HOW WE'RE GOING TO SPIN THIS ISSUE OR THIS IS HOW WE'RE GOING

04:39PM  7    TO REPRESENT WHAT IS HAPPENING HERE EVEN THOUGH IT MIGHT BE

04:39PM  8    MISLEADING.

04:39PM  9         THE COURT:  I THINK THAT'S THE DISTINCTION, ISN'T

04:39PM  10   IT, THAT IF THE EVIDENCE SHOWS THAT MS. HOLMES ACTUALLY

04:39PM  11   DIRECTED PEOPLE AND HAD REGULAR MEETINGS, AND THEY CAME IN AND

04:39PM  12   SHE SAID I WANT YOU TO SAY THIS, YOU MUST, AND HERE'S THE

04:39PM  13   SCRIPT, I'M NOT GOING TO GIVE YOU PAPER BECAUSE I DON'T WANT A

04:40PM  14   PAPER TRAIL, BUT HERE'S WHAT I WANT YOU TO SAY ABOUT OUR

04:40PM  15   COMPANY AND NOTHING ELSE?  THAT'S PRETTY EASY.  I THINK THAT'S

04:40PM  16   PRETTY STRAIGHTFORWARD.

04:40PM  17        BUT IF SHE -- IF THE GOVERNMENT ALLEGES THAT SHE MADE

04:40PM  18   FALSE STATEMENTS TO NEWSPAPERS, TO INVESTORS, AND OTHER FOLKS

04:40PM  19   BUT DIDN'T HAVE THOSE MEETINGS WHERE SHE TOLD PEOPLE TO SAY

04:40PM  20   CERTAIN THINGS, AND I THINK WHAT YOU'RE SAYING IS THE SUCCESS

04:40PM  21   OF THERANOS BASED ON MS. HOLMES'S EFFORTS, YOU ATTRIBUTE THE

04:40PM  22   SUCCESS TO HER EFFORTS IN RECRUITING INVESTORS, THAT CREATES A

04:40PM  23   CULTURE OF SUCCESS, BUT IT'S ALSO A CULTURE OF DECEIT BECAUSE

04:40PM  24   IT WAS DECEIT AT THE OUTSET AND THAT SHE SHOULD, THEREFORE --

04:40PM  25   BECAUSE SHE CREATED THAT WITH INVESTORS, SHE'S RESPONSIBLE FOR

04:40PM  1    THE NATURAL AND PROBABLE CONSEQUENCES OF THAT?

04:40PM  2         MR. BOSTIC:  I WOULD SAY IT'S SIMPLER AND MORE

04:41PM  3    CONCRETE THAN THAT, YOUR HONOR, WITH RESPECT.

04:41PM  4         I THINK INSTEAD I WOULD SAY WHERE A DEFENDANT WHO IS

04:41PM  5    PARTICIPATING IN A SCHEME TO DEFRAUD, WHO HAS DEVISED AND IS

04:41PM  6    ENGAGING IN A SCHEME TO DEFRAUD MAKES CERTAIN CATEGORIES OF

04:41PM  7    FALSE STATEMENTS REPEATEDLY OVER MONTHS AND OVER YEARS, MAKES

04:41PM  8    THOSE STATEMENTS PUBLICLY IN A WAY THAT ALLOWS HER EMPLOYEES

04:41PM  9    AND AGENTS TO BECOME AWARE THAT THIS IS WHAT MY SUPERIOR IS

04:41PM  10   SAYING, THE PERSON WHO IS DIRECTING THE WAY THAT I DO MY JOB IS

04:41PM  11   REPRESENTING THINGS TO THE WORLD IN THIS WAY, THAT WILL HAVE A

04:41PM  12   NATURAL AND UNAVOIDABLE EFFECT.

04:41PM  13        THE EFFECT WILL BE TO ENCOURAGE THOSE INDIVIDUALS, THOSE

04:41PM  14   SUBORDINATES, THOSE AGENTS TO MAKE SIMILAR STATEMENTS.  AND IF

04:41PM  15   THOSE STATEMENTS ARE FALSE, THEN THAT WILL RESULT IN A

04:41PM  16   PERPETUATION, A PROPAGATION OF THE FRAUD IN THIS CASE, AND

04:41PM  17   THAT'S WHAT HAPPENED.

04:41PM  18        SO THAT'S NOT A SURPRISE.

04:41PM  19        THE COURT:  MAY I ASK YOUR COLLEAGUE OPPOSITE HER

04:41PM  20   OPINION OF THAT?

04:41PM  21        MR. BOSTIC:  YOUR HONOR, OF COURSE.

04:41PM  22        MS. SAHARIA:  YES, YOUR HONOR.

04:41PM  23        THIS, TO ME, IS VERY DANGEROUS TERRITORY, AND THE REASON

04:42PM  24   FOR THAT IS THAT WITHOUT A DIRECTION BY MS. HOLMES OR SOME

04:42PM  25   ACTION BY HER THAT CONVEYS THAT SHE INTENDS FOR A FRAUDULENT

04:42PM 1    MISREPRESENTATION TO BE MADE, THE CRITICAL LINCHPIN ELEMENT OF

04:42PM 2    INTENT IS MISSING.  SHE WASN'T CHARGED WITH DECEIVING HER

04:42PM 3    EMPLOYEES.  SHE WAS CHARGED WITH DEFRAUDING INVESTORS AND

04:42PM 4    PAYING CUSTOMERS.

04:42PM 5         AND THE GOVERNMENT HAS TO ESTABLISH THAT SHE INTENDED FOR

04:42PM 6    FALSE REPRESENTATIONS TO BE MADE TO INVESTORS OR PAYING

04:42PM 7    CUSTOMERS FOR THE PURPOSE OF DEFRAUDING THEM.

04:42PM 8         AND TO SAY THAT, YOU KNOW, STATEMENTS SHE MADE PERMEATED

04:42PM 9    THE COMPANY, AND, THEREFORE, SHE MUST HAVE INTENDED FOR

04:42PM 10   PARTICULAR PEOPLE IN HER COMPANY TO MAKE PARTICULAR FALSE

04:42PM 11   REPRESENTATIONS TO PAYING CUSTOMERS OR INVESTORS, THIS IS --

04:42PM 12   IT'S VERY DANGEROUS.  THERE'S NO -- WE HAVEN'T DRAWN A DIRECT

04:43PM 13   CAUSAL LINK.  THERE'S NO CASES THAT HAVE ACKNOWLEDGED THIS KIND

04:43PM 14   OF CRIMINAL LIABILITY.

04:43PM 15        THE BEST CASE THAT WE HAVE WHERE THIS KIND OF THEORY, ANY

04:43PM 16   KIND OF THEORY LIKE THIS WORKED WAS THE CICCONE CASE WHERE

04:43PM 17   THERE WAS A DIRECTION FROM THE CEO.

04:43PM 18        AND I DON'T DISAGREE WITH YOUR HONOR THAT IF THERE WAS A

04:43PM 19   MEETING, OF COURSE, WHERE MS. HOLMES TOLD PEOPLE TO GO TELL THE

04:43PM 20   FOLLOWING MISREPRESENTATIONS, AND, OF COURSE, WE DON'T BELIEVE

04:43PM 21   THAT EVER HAPPENED, BUT OF COURSE IF THERE WAS THAT KIND OF

04:43PM 22   MEETING, WE'RE NOT DISPUTING THAT THAT SHOULD COME INTO

04:43PM 23   EVIDENCE.

04:43PM 24             THE COURT:  THANK YOU, MR. BOSTIC.

04:43PM 25             MR. BOSTIC:  SO, YOUR HONOR, HERE I THINK THE

04:43PM 1    DEFENSE WILL ACCUSE ME OF BLURRING THE ISSUES, BUT I THINK THAT

04:43PM 2    THE HEARSAY CASE LAW IS INSTRUCTIVE HERE BECAUSE WHEN WE GET TO

04:43PM 3    INTO THE CASE LAW DEALING WITH 801(B)(2) WE SEE THAT THE COURTS

04:43PM 4    ARE VERY COMFORTABLE ADMITTING STATEMENTS OF EMPLOYEES AND

04:43PM 5    AGENTS AS EVIDENCE OF AN ONGOING FRAUD, AND IT RELATES TO THE

04:44PM 6    RELATIONSHIP BETWEEN THE PRINCIPAL AND THE AGENT.  AND CONTRARY

04:44PM 7    TO THE DEFENSE'S ARGUMENTS, IT DOESN'T COME DOWN TO A HYPER

04:44PM 8    TECHNICAL READING OF AGENCY LAW AS IT MIGHT MATTER FOR SOME

04:44PM 9    CONTRACT OR CIVIL MATTERS.  INSTEAD, COURTS TAKE A MORE

04:44PM 10   FACT-SPECIFIC APPROACH, AND THEY LOOK AT THE DEGREE OF CONTROL

04:44PM 11   AND INFLUENCE EXERCISED BY THE PRINCIPLE.

04:44PM 12        AND HERE THOSE FACTS FAVOR THE ADMISSIBILITY OF THE

04:44PM 13   ACTIONS AND STATEMENTS OF THERANOS EMPLOYEES AS AGENTS.

04:44PM 14        THE GOVERNMENT CITES IN ITS BRIEF THE DEFENDANT'S OWN

04:44PM 15   STATEMENTS ABOUT HER DEGREE OF CONTROL AT THE COMPANY, HER

04:44PM 16   RESPONSIBILITY FOR THE OPERATIONS OF THE COMPANY.  ALL OF THE

04:44PM 17   EVIDENCE AT TRIAL WILL BEAR THAT OUT.

04:44PM 18        SHE WAS THE MAJORITY OWNER OF THE COMPANY.  SHE WAS THE

04:44PM 19   FOUNDER.  SHE WAS THE FACE OF THE COMPANY IN EVERY SENSE.  SHE

04:44PM 20   WAS INVOLVED IN ALL ASPECTS OF THE COMPANY'S OPERATION.

04:44PM 21        AND TO THE EXTENT THAT ANYONE HAD MORE CONTROL OVER A

04:45PM 22   CERTAIN ASPECT OF THE OPERATION, IT WAS HER COCONSPIRATOR AND

04:45PM 23   PARTNER, HER CODEFENDANT MR. BALWANI.

04:45PM 24        SO THERE'S NO WAY THAT THE DEFENSE FACTUALLY CAN ARGUE

04:45PM 25   THAT ANY EMPLOYEE'S ACTIVITIES WERE NOT ULTIMATELY UNDER THE

04:45PM 1    SUPERVISION AND CONTROL OF THE DEFENDANT HOLMES.

04:45PM 2          SHE ALSO WAS, OF COURSE, THE CEO.  AND THE FACT THAT THIS

04:45PM 3    FRAUD INVOLVED A CORPORATION, THE FACT THAT THE CORPORATION AND

04:45PM 4    ITS EMPLOYEES BECAME A TOOL FOR THE FRAUD IS NO REASON TO

04:45PM 5    SHIELD THE PRINCIPAL, TO SHIELD THE DEFENDANT FROM THE

04:45PM 6    RESPONSIBILITY FOR THE EFFECT OF THE FRAUD THAT SHE CREATED.

04:45PM 7          AND I THINK THE KIRK AND GIBSON CASES ARE DIRECTLY ON

04:45PM 8    POINT HERE WHEN IT COMES TO THE FACT THAT THESE KINDS OF

04:45PM 9    STATEMENTS, AS LONG AS THE PRINCIPAL DEFENDANT HAS SUFFICIENT

04:45PM 10   CONTROL OVER THE OPERATIONS, THESE STATEMENTS CAN COME IN TO

04:46PM 11   PROVE THAT MISREPRESENTATIONS WERE MADE.

04:46PM 12         AGAIN, THESE CASES DEAL WITH THE MISSTATEMENTS COMING

04:46PM 13   IN -- I'M SORRY, THE AGENT STATEMENTS COMING IN FOR THE TRUTH

04:46PM 14   OF THE MATTER AS A HEARSAY EXCEPTION, BUT THEY ALSO MAKE CLEAR

04:46PM 15   LIKE IN KIRK WHERE IT SAYS THAT STATEMENTS OF SALESPERSONS

04:46PM 16   MISREPRESENTING THE PROGRAM OF THAT PARTICULAR BUSINESS WERE

04:46PM 17   ADMISSIBLE TO PROVE THAT THE MISREPRESENTATIONS WERE MADE, NOT

04:46PM 18   NECESSARILY TO PROVE THE TRUTH OF WHAT THE SALESPERSON STATED.

04:46PM 19   THAT WAS THE GROUNDS FOR ADMISSIBILITY IN THAT CASE.  I THINK

04:46PM 20   THE SAME REASONING HOLDS TRUE HERE.

04:46PM 21         WHEN THE DEFENSE TALKS ABOUT THE TESTS FOR

04:46PM 22   ADMISSIBILITY -- EXCUSE ME, ADMISSIBILITY, AND TALKS ABOUT THE

04:46PM 23   DIFFERENT SCENARIOS UNDER WHICH AGENT STATEMENTS CAN COME IN

04:46PM 24   UNDER THIS THEORY, I THINK IT OVERSTATES THE RIGOR OF THOSE

04:46PM 25   SO-CALLED TESTS.

04:46PM  1    IN FACT, IF THE COURT LOOKS AT THE <u>AGNE</u> CASE, THAT'S THE

04:47PM  2   FIRST CIRCUIT, A-G-N-E, THAT'S A FIRST CIRCUIT CASE AT

04:47PM  3   214 F.3D 47.  THAT COURT SIMILARLY SAID, "SO WHETHER THE

04:47PM  4   STATEMENTS OF A CORPORATE EMPLOYEE MAY BE ADMITTED AGAINST A

04:47PM  5   CORPORATE OFFICER, DEPENDS UPON THE RELATIONSHIP BETWEEN THE

04:47PM  6   EMPLOYEE AND THE OFFICER.

04:47PM  7    THAT COURT THEN GOES ON TO CITE OTHER CASES AND LISTS

04:47PM  8   OTHER SCENARIOS WHERE AN EMPLOYEE'S STATEMENT COULD BE VIEWED

04:47PM  9   AS AN AGENT ADMISSION OF THE PRINCIPAL, BUT THOSE ARE SIMPLY

04:47PM 10   EXAMPLES.  IT'S NOT A MULTI FACTOR TEST I THINK AS THE DEFENSE

04:47PM 11   SUGGESTS.  THESE ARE NOT THE ONLY SCENARIOS UNDER WHICH THIS

04:47PM 12   KIND OF THEORY APPLIES.

04:47PM 13    AND IF AN AGENT'S STATEMENT CAN COME IN AS AN ADMISSION

04:47PM 14   UNDER THE SAME RULE THAT GOVERNS THE DEFENDANT'S STATEMENTS,

04:47PM 15   THEN WHY OR HOW CAN IT BE SAID THAT IT'S NOT FAIR TO BRING IN

04:47PM 16   THAT SAME STATEMENT AS EVIDENCE THAT A SCHEME TO DEFRAUD WAS

04:47PM 17   OCCURRING AND THAT THIS WAS THE TOOL AND MECHANISM BY WHICH

04:48PM 18   VICTIMS WERE IN SOME CASES HEARING THESE FALSE STATEMENTS AND

04:48PM 19   BEING MISLED.

04:48PM 20    MS. SAHARIA:  BRIEFLY.

04:48PM 21    MR. BOSTIC IS CONFLATING HEARSAY AND RELEVANCE, BUT

04:48PM 22   PUTTING THAT ASIDE, EVERY CASE THAT HAS ADMITTED A STATEMENT BY

04:48PM 23   AN EMPLOYEE AS AN EXECUTIVE'S AGENT, THE EXECUTIVE DIRECTLY

04:48PM 24   SUPERVISED THAT EMPLOYEE.

04:48PM 25    THERE ARE CASES WHERE THE STATEMENTS OF THE CFO ARE

04:48PM 1    IMPUTED TO THE CEO BECAUSE THE CEO DIRECTLY SUPERVISED THE CFO

04:48PM 2    ON A DAY-TO-DAY BASIS.

04:48PM 3        THERE IS NO CASE THAT HAS HELD THAT A CEO -- THAT THE

04:48PM 4    STATEMENTS OF 400 EMPLOYEES IN A CORPORATION ARE ADMISSIBLE

04:48PM 5    AGAINST A CORPORATE CEO.

04:48PM 6        MS. HOLMES DID NOT SUPERVISE ALL 400 EMPLOYEES OF HER

04:48PM 7    COMPANY; SHE DID NOT OVERSEE THE DAY-TO-DAY OPERATIONS OF THE

04:48PM 8    SALESPEOPLE; SHE DID NOT OVERSEE THE DAY-TO-DAY OPERATIONS OF

04:48PM 9    THE LABORATORY TECHNICIANS.  THERE WERE MANY LAYERS BETWEEN HER

04:48PM 10   AND THOSE PEOPLE, AND NO CASE RECOGNIZES THAT KIND OF IMPUTING

04:49PM 11   UNDER THE HEARSAY RULES.

04:49PM 12       THE COURT:  HER STATEMENT -- I THINK I SAW SOMETHING

04:49PM 13   THAT SAID -- ATTRIBUTED TO HER, "I AM THERANOS," OR "I HAVE

04:49PM 14   CONTROL," OR "I HAVE COMPLETE CONTROL OVER THE COMPANY,"

04:49PM 15   SOMETHING LIKE THAT.  YOU PROBABLY KNOW WHAT I'M TALKING ABOUT.

04:49PM 16       MS. SAHARIA:  YEAH.  I THINK IT WAS "OF COURSE I'M

04:49PM 17   RESPONSIBLE FOR THE COMPANY."  I THINK ANY CEO OF ANY COMPANY

04:49PM 18   WOULD SAY THE BUCK STOPS WITH ME, I'M RESPONSIBLE FOR THIS

04:49PM 19   COMPANY.

04:49PM 20       THAT DOESN'T MAKE THEM RESPONSIBLE FOR THE STATEMENTS OF

04:49PM 21   ALL OF THE HUNDREDS OF EMPLOYEES IN THAT COMPANY.

04:49PM 22       THE COURT:  WHAT DOES IT DO?  WHAT DOES IT SAY?

04:49PM 23   IT'S DESIGNED TO TELL INVESTORS, THE PUBLIC, I'M THE PUBLIC

04:49PM 24   FACE OF THE COMPANY, YOU CAN TRUST ME, AND I'M IN CHARGE.  THE

04:49PM 25   BUCK STOPS WITH ME, SO TRUST ME.

04:49PM  1        MS. SAHARIA:  WELL, THIS WAS TESTIMONY THAT SHE GAVE

04:49PM  2   TO THE S.E.C. AFTER ALL OF THE EVENTS IN QUESTION.

04:49PM  3        BUT I THINK A STATEMENT THAT "I'M RESPONSIBLE FOR THE

04:49PM  4   COMPANY" IS A STATEMENT THAT EVERY CEO WOULD MAKE.  EVERY

04:49PM  5   CEO -- THAT'S THE PERSON WHO IS ULTIMATELY RESPONSIBLE.

04:50PM  6        THE COURT:  IT'S THEIR JOB DESCRIPTION.

04:50PM  7        MS. SAHARIA:  OF COURSE.  IT DOESN'T MEAN THAT THEY

04:50PM  8   SUPERVISE EVERY EMPLOYEE OF THAT COMPANY EVERY DAY.

04:50PM  9        THE COURT:  ALL RIGHT.  THANK YOU.

04:50PM 10        MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT IS NOT

04:50PM 11   ASKING THE COURT TO RULE THAT THE STATEMENTS OR THAT ANY

04:50PM 12   STATEMENTS OF ANY OF THE 400 EMPLOYEES OF THERANOS WOULD BE

04:50PM 13   ADMISSIBLE.

04:50PM 14        I THINK WHERE WE MIGHT BE HEADED IS WHAT THE COURT

04:50PM 15   OUTLINED AT THE BEGINNING, WHICH IS THAT THIS MIGHT BE A FACT

04:50PM 16   SPECIFIC OR EVIDENCE SPECIFIC INQUIRY TO BE DECIDED IN THE

04:50PM 17   CONTEXT OF ACTUAL EVIDENCE.

04:50PM 18        BUT I'LL JUST NOTE THAT PRIMARILY THE STATEMENTS THAT

04:50PM 19   WOULD BE AT ISSUE HERE WOULD BE STATEMENTS MADE BY THE OUTWARD

04:50PM 20   FACING EMPLOYEES AT THERANOS.  THOSE WOULD BE THE EMPLOYEES WHO

04:50PM 21   DEAL WITH THE MEDIA, THE EMPLOYEES WHO DEAL WITH DOCTORS AND

04:50PM 22   PATIENTS WHEN THERE ARE QUESTIONS OR PROBLEMS WITH TEST

04:50PM 23   RESULTS.

04:50PM 24        SO WE'RE NOT TALKING ABOUT THE ENTIRE SCOPE OF THE COMPANY

04:50PM 25   BY ANY MEASURE, CERTAINLY NOT CUSTODIANS.  GENERALLY NOT LAB

04:50PM  1    TECHNICIANS, EITHER, WHEN IT COMES TO FALSE STATEMENTS MADE TO

04:50PM  2    PEOPLE ON THE OUTSIDE.

04:50PM  3        THE EVIDENCE DOES SHOW THAT THE DEFENDANT WAS VERY

04:51PM  4    INVOLVED WITH THERANOS'S DEALINGS WITH THE MEDIA, HAD

04:51PM  5    SIGNIFICANT INFLUENCE IN HOW CUSTOMER FACING STAFF MESSAGED

04:51PM  6    PROBLEMS WITH THERANOS TESTS TO PATIENTS AND DOCTORS WHO CALLED

04:51PM  7    WITH PROBLEMS.

04:51PM  8        SO IT IS ABSOLUTELY FAIR AND ONLY LOGICAL TO ALLOW THE

04:51PM  9    STATEMENTS THAT PEOPLE UNDER HER DIRECTION MADE IN THE COURSE

04:51PM  10   OF THEIR EMPLOYMENT.  THOSE STATEMENTS ARE ADMISSIBLE UNDER THE

04:51PM  11   SUBSECTION OF 801(D)(2) DEALING WITH STATEMENTS MADE BY A

04:51PM  12   PARTY'S AGENT OR EMPLOYEE, AND THEY'RE ALSO ADMISSIBLE UNDER

04:51PM  13   SUBSECTION (C) BECAUSE THEY WERE MADE BY PEOPLE WHOM THE PARTY

04:51PM  14   AUTHORIZED TO MAKE A STATEMENT ON THE SUBJECT.

04:51PM  15       AGAIN, THESE ARE PEOPLE, THERANOS EMPLOYEES ACTING

04:51PM  16   SQUARELY WITHIN THE SCOPE OF THEIR EMPLOYMENT AND

04:51PM  17   COINCIDENTALLY BUT NOT COINCIDENTALLY FURTHERING THE FRAUD

04:51PM  18   PERPETRATED BY THEIR SUPERIOR.

04:51PM  19            THE COURT:  SHOULD I, SHOULD I EVEN ASK WHETHER OR

04:51PM  20   NOT THE CODEFENDANT'S STATEMENTS ARE GOING TO BE AN ISSUE?  IS

04:52PM  21   THAT SOMETHING THAT WE DON'T HAVE TO DISCUSS TODAY?

04:52PM  22            MS. SAHARIA:  I DON'T THINK WE HAVE TO DISCUSS THAT

04:52PM  23   TODAY, YOUR HONOR.

04:52PM  24            THE COURT:  OKAY.

04:52PM  25            MS. SAHARIA:  I WOULD JUST CONCLUDE WITH TWO POINTS.

04:52PM  1    IF THEY HAVE EVIDENCE THAT SHE DID CONTROL PARTICULAR

04:52PM  2    STATEMENTS MADE TO DOCTORS, THEN THEY CAN SUBMIT THAT EVIDENCE.

04:52PM  3    WE'RE NOT CONTESTING THAT.

04:52PM  4         WE'RE CONTESTING THAT THEY CAN INFER FROM PARTICULAR

04:52PM  5    INSTANCES OF THAT HAPPENING THAT SHE CONTROLLED EVERY MESSAGE

04:52PM  6    TO EVERY DOCTOR.

04:52PM  7         SECONDLY, WITH RESPECT TO LAB TECHNICIANS, IN OUR

04:52PM  8    DISCUSSIONS YESTERDAY ABOUT CMS AND FDA THE GOVERNMENT

04:52PM  9    REPEATEDLY SAID THAT ALL OF THE DOUBLE HEARSAY PROBLEMS AND THE

04:52PM 10    CMS AND FDA REPORTS ARE SOLVED BY THE FACT THAT THE LAB

04:52PM 11    TECHNICIANS ARE MS. HOLMES'S AGENTS.  SO THAT QUESTION IS

04:52PM 12    SQUARELY BEFORE THE COURT WITH RESPECT TO LAB PERSONNEL AS

04:52PM 13    WELL.

04:52PM 14              THE COURT:  OKAY.

04:52PM 15              MS. SAHARIA:  THERE IS ONE REMAINING ISSUE, WHICH IS

04:52PM 16    THE GOVERNMENT'S MOTION TO INTRODUCE INTERROGATORY RESPONSES BY

04:53PM 17    THERANOS.  SHOULD WE ADDRESS THAT, YOUR HONOR?

04:53PM 18              THE COURT:  WE MIGHT AS WELL SINCE WE HAVE SOME

04:53PM 19    TIME, YES.

04:53PM 20              MS. SAHARIA:  YES.  THIS IS A SEPARATE ISSUE FROM

04:53PM 21    THE ONE WE WERE JUST DISCUSSING.  THIS IS THE SECOND PART OF

04:53PM 22    THE GOVERNMENT'S MOTION NUMBER 8.

04:53PM 23         THE GOVERNMENT WANTS THE COURT TO ADMIT VARIOUS

04:53PM 24    INTERROGATORY RESPONSES THAT THERANOS, THE COMPANY, MADE IN

04:53PM 25    CIVIL LITIGATION.  THIS IS CLASSIC HEARSAY.  THE GOVERNMENT --

04:53PM  1    THEY'RE OUT-OF-COURT STATEMENTS BY A THIRD PARTY THAT THE

04:53PM  2    GOVERNMENT WANTS TO BE ADMITTED FOR THEIR TRUTH, AND SO THEY'VE

04:53PM  3    INVOKED TWO EXCEPTIONS.  THEY ARGUE THAT FIRST MS. HOLMES

04:53PM  4    AUTHORIZED THE STATEMENTS, AND, SECOND, THAT SHE ADOPTED THE

04:53PM  5    STATEMENTS.  THERE'S NO EVIDENCE OF EITHER.

04:53PM  6         JUST AS BACKGROUND, THESE RESPONSES WERE MADE IN CIVIL

04:53PM  7    LITIGATION IN LATE 2016 AND EARLY 2017.

04:53PM  8         THE THERANOS'S RESPONSES FOR THE RECORD ARE GOVERNMENT'S

04:54PM  9    EXHIBIT P, Q, AND R.

04:54PM  10        THE GOVERNMENT HAD ALREADY COMMENCED ITS GRAND JURY

04:54PM  11   INVESTIGATION BY THE TIME OF THESE INTERROGATORY RESPONSES, AND

04:54PM  12   FOR THAT REASON MS. HOLMES AND THERANOS ARE SEPARATE COUNSEL IN

04:54PM  13   THIS LITIGATION.

04:54PM  14        WILMER HALE REPRESENTED THERANOS AND COOLEY REPRESENTED

04:54PM  15   MS. HOLMES.

04:54PM  16        THE THERANOS INTERROGATORY RESPONSES WERE SIGNED BY

04:54PM  17   WILMER, NOT BY COOLEY, AND ALTHOUGH MULTIPLE THERANOS EMPLOYEES

04:54PM  18   VERIFIED THOSE RESPONSES AS IS NORMAL, MS. HOLMES WAS NOT ONE

04:54PM  19   OF THEM.  SHE DID NOT VERIFY THOSE RESPONSES.

04:54PM  20        THERE'S JUST NO EVIDENCE WHATSOEVER THAT MS. HOLMES

04:54PM  21   HERSELF AUTHORIZED THE CONTENT OF THOSE RESPONSES.

04:54PM  22        THE GOVERNMENT OFFERS A FEW ARGUMENTS IN ITS REPLY BRIEF,

04:54PM  23   WHICH I'LL ADDRESS.  THE FIRST IS THAT THE RESPONSES WERE

04:54PM  24   VERIFIED BY COMPANY EMPLOYEES, ONE OF WHICH WAS HER BROTHER WHO

04:55PM  25   WAS AN EMPLOYEE OF THE COMPANY.  THERE'S NO BROTHER EXCEPTION

04:55PM  1    TO THE HEARSAY RULES, AND IT'S NOT CLEAR TO ME THAT ANY OF

04:55PM  2    THOSE ARE STATEMENTS OF THOSE PARTICULAR EMPLOYEES.  AND THEN

04:55PM  3    THAT WOULD RAISE ALL OF THE SAME AGENT ISSUES THAT WE WERE JUST

04:55PM  4    DISCUSSING ANYWAY.

04:55PM  5         THE SECOND IS THAT THE WILMER HALE ATTORNEYS WHO

04:55PM  6    REPRESENTED THE COMPANY ALSO REPRESENTED HER AS CEO OF THE

04:55PM  7    COMPANY.  WE'VE DISCUSSED THAT EARLIER TODAY.  THERE'S NO

04:55PM  8    EVIDENCE THAT WILMER HALE WAS REPRESENTING HER IN HER PERSONAL

04:55PM  9    CAPACITY IN CONNECTION WITH THE CIVIL LITIGATION.  ALL OF THE

04:55PM  10   EVIDENCE IS TO THE CONTRARY.  SHE WAS REPRESENTED BY COOLEY.

04:55PM  11        THEY POINT OUT HER DEPOSITION TESTIMONY TO THE S.E.C.

04:55PM  12   WHERE SHE WAS PRESENTED WITH THESE INTERROGATORY RESPONSES.

04:55PM  13   AND SHE SAID -- SHE DIDN'T SAY SHE APPROVED THEM OR AUTHORIZED

04:55PM  14   THEM.  SHE DIDN'T KNOW IF SHE HAD SEEN THEM.  SHE DIDN'T RECALL

04:55PM  15   WHAT A RULE WAS RESPONDING TO THEM.  ALL SHE SAID WAS SHE

04:55PM  16   ENGAGED WITH AND WORKED WITH A LEGAL TEAM IN RESPONDING TO

04:56PM  17   THEM.

04:56PM  18        EVEN IF THAT'S THE CASE, EVEN IF SHE WORKED WITH THE

04:56PM  19   ATTORNEYS AND RESPONDING TO THEM, IT DOESN'T MEAN THAT SHE

04:56PM  20   APPROVED THE CONTENT OF EVERY SINGLE ONE OF THOSE INTERROGATORY

04:56PM  21   RESPONSES.

04:56PM  22        IF IT WERE OTHERWISE ANY EMPLOYEE WHO WORKED WITH ANY

04:56PM  23   ATTORNEY WOULD SOMEHOW BE DEEMED TO HAVE AUTHORIZED ALL OF THE

04:56PM  24   CONTENT OF THOSE RESPONSES.

04:56PM  25        SO FOR ALL OF THOSE REASONS THERE'S JUST NO EVIDENCE THAT

04:56PM  1    SHE AUTHORIZED THEM.

04:56PM  2         SO THE GOVERNMENT HAS A BACKUP ARGUMENT.  THE BACKUP

04:56PM  3    ARGUMENT IS THAT SHE SERVED HER OWN INTERROGATORY RESPONSES

04:56PM  4    SIGNED BY COOLEY AND THAT SHE ADOPTED THE THERANOS RESPONSES IN

04:56PM  5    HER OWN RESPONSES.

04:56PM  6         THERE'S A COUPLE OF PROBLEMS WITH THAT ONE.  THE FIRST IS

04:56PM  7    THAT THERE'S NO BASIS TO CONCLUDE THAT SHE ADOPTED ALL OF THE

04:56PM  8    THERANOS RESPONSES.

04:56PM  9         AT MOST THE GOVERNMENT POINTS TO PARTICULAR ANSWERS WHERE

04:56PM  10   SHE CROSS-REFERENCED OTHER ANSWERS, SO IT WOULD HAVE TO BE SOME

04:56PM  11   SORT OF PARTIAL INCORPORATION ARGUMENT.

04:57PM  12        JUST AS ONE EXAMPLE, THE GOVERNMENT SAYS IN ITS MOTION

04:57PM  13   THAT IT WANTS TO INTRODUCE THERANOS'S STATEMENT ABOUT THE

04:57PM  14   NUMBER OF TESTS THAT IT RAN ON ITS PROPRIETARY DEVICE IN ITS

04:57PM  15   CLINICAL LAB.  THAT WAS MADE BY THERANOS IN RESPONSE TO

04:57PM  16   EXHIBIT -- TO INTERROGATORY NUMBER 15, WHICH IS AT GOVERNMENT

04:57PM  17   EXHIBIT P.

04:57PM  18        BUT NONE OF MS. HOLMES'S RESPONSES CROSS-REFERENCE

04:57PM  19   THERANOS RESPONSE NUMBER 15.  THERE'S JUST NO BASIS TO CONCLUDE

04:57PM  20   THAT SHE ADOPTED THAT ONE AT ALL.

04:57PM  21        WITH RESPECT TO THE ONES THAT SHE DID CROSS-REFERENCE, SHE

04:57PM  22   DIDN'T ADOPT THEM.  SHE DIDN'T EXPRESS HER BELIEF THAT THEY

04:57PM  23   WERE TRUE.  SHE SIMPLY POINTED THE COUNTERPARTY TO THE THERANOS

04:57PM  24   ONE.

04:57PM  25        AS ONE EXAMPLE IN EXHIBIT V, THIS IS MS. HOLMES'S

04:57PM 1    RESPONSES, IN RESPONSE TO NUMBER 45 SHE SAYS MS. HOLMES

04:57PM 2    RESPONDS THAT SHE WAS NOT PERSONALLY INVOLVED IN MODIFICATION

04:57PM 3    OF COMMERCIALLY AVAILABLE MACHINES, EQUIPMENT OR TECHNOLOGY

04:58PM 4    THAT THERANOS USED TO PROCESS BLOOD TESTS ON CAPILLARY BLOOD

04:58PM 5    SAMPLES OR MICRO SAMPLES.  THE SAME INTERROGATORY WAS DIRECTED

04:58PM 6    TO THE COMPANY, AND HOLMES REFERS PLAINTIFF TO THERANOS'S

04:58PM 7    RESPONSE INTERROGATORY NUMBER 64.

04:58PM 8        THAT WAS THE KIND OF LANGUAGE SHE WOULD USE TO REFER THE

04:58PM 9    COUNTERPARTY TO THE THERANOS RESPONSE, BUT NOTHING THERE ADOPTS

04:58PM 10   IT AS HER OWN.  IN FACT, SHE SAID SHE WAS NOT INVOLVED IN THAT

04:58PM 11   PARTICULAR ISSUE.

04:58PM 12       SO THE GOVERNMENT CITES NO CASE THAT HOLDS THIS KIND OF

04:58PM 13   MUTUAL LANGUAGE TO BE AN ADOPTION, AND WE SUBMIT THAT THERE'S

04:58PM 14   NO BASIS TO CONCLUDE THAT SHE EITHER AUTHORIZED OR ADOPTED

04:58PM 15   THOSE SEPARATE THERANOS'S RESPONSES.

04:58PM 16            THE COURT:  THANK YOU.  MR. BOSTIC.

04:58PM 17            MR. BOSTIC:  THANK YOU, YOUR HONOR.  JUST VERY

04:58PM 18   BRIEFLY.

04:58PM 19       THE EVIDENCE DISCUSSED BY THE DEFENSE IS ADMISSIBLE FOR

04:58PM 20   THE VERY REASONS DISCUSSED BY THE DEFENSE.

04:58PM 21       WHEN IT COMES TO WHETHER WILMER HALE REPRESENTED THE

04:58PM 22   DEFENDANT AT THAT TIME, I THINK THE DEFENSE SAID THERE'S NO

04:58PM 23   EVIDENCE THAT THAT'S THE CASE, BUT THAT'S FALSE.  THERE IS

04:59PM 24   EVIDENCE, AND IT'S CITED IN THE GOVERNMENT'S BRIEF.  THAT

04:59PM 25   EVIDENCE IS AT GOVERNMENT'S EXHIBIT U, PAGES 1 THROUGH 4 AND 13

146

04:59PM   1    WHERE IT IS CLEAR THAT WILMER HALE IS REPRESENTING MS. HOLMES

04:59PM   2    AS WELL AS THE COMPANY THERANOS ITSELF.

04:59PM   3        THE FACT THAT SHE MAY HAVE ALSO HAD HER OWN COUNSEL AT

04:59PM   4    COOLEY DOES NOT MEAN THAT THE WILMER HALE ATTORNEYS WERE NOT

04:59PM   5    ALSO REPRESENTING HER.

04:59PM   6        AND IN THE ABSENCE OF ANY EVIDENCE TO THE CONTRARY, THE

04:59PM   7    COURT SHOULD TAKE EXHIBIT U AT FACE VALUE.

04:59PM   8        WHEN IT COMES TO WHO ACTUALLY SIGNED THOSE INTERROGATORY

04:59PM   9    RESPONSES, I THINK THAT'S VERY IMPORTANT ALSO BECAUSE IT WAS

04:59PM   10   SIGNED BY SENIOR EMPLOYEES OF THE COMPANY, INCLUDING

04:59PM   11   MS. HOLMES'S BROTHER.  THAT DOES MATTER.

04:59PM   12       NO, THERE'S NOT A BROTHER EXCEPTION IN THE HEARSAY RULE,

04:59PM   13   BUT NOW WE'RE BACK UNDER 801(B)(2)(C), AND WE'RE TALKING ABOUT

04:59PM   14   SPECIFIC EMPLOYEES.  WE'RE NO LONGER IN THE ABSTRACT.

04:59PM   15       AND WHEN IT COMES TO THESE SPECIFIC EMPLOYEES, IT STRAINS

05:00PM   16   BELIEF TO ARGUE THAT THESE EMPLOYEES WERE NOT UNDER THE

05:00PM   17   SUPERVISION OF THE DEFENDANT AS CEO, IT STRAINS BELIEF TO ARGUE

05:00PM   18   THAT THEY WERE NOT AUTHORIZED TO MAKE THE STATEMENT OF SIGNING

05:00PM   19   AND VERIFYING THESE INTERROGATORY RESPONSES.

05:00PM   20       THE DEFENDANT AS CEO WOULD HAVE HAD THE PRIMARY

05:00PM   21   RESPONSIBILITY FOR DEALING WITH AND MANAGING THE COMPANY'S

05:00PM   22   LEGAL ISSUES, INCLUDING ITS RESPONSES TO LITIGATION.  OF COURSE

05:00PM   23   SHE WORKED WITH ATTORNEYS REPRESENTING THE COMPANY AND CREATING

05:00PM   24   AND APPROVING THESE INTERROGATORY RESPONSES AS HER STATEMENTS

05:00PM   25   TO THE CEO DURING HER SWORN DEPOSITION CONFIRM.

05:00PM 1      THE FACT THAT SHE DIDN'T SPECIFICALLY REMEMBER APPROVING

05:00PM 2   EACH ONE IS NO BARRIER TO THEIR ADMISSION UNDER 801(D)(2).

05:00PM 3           THE COURT:  ALL RIGHT.

05:00PM 4      MS. SAHARIA.

05:00PM 5           MS. SAHARIA:  THREE THINGS, YOUR HONOR.

05:00PM 6      EXHIBIT U, FIRST OF ALL, IS A DEPOSITION TRANSCRIPT FROM

05:01PM 7   THE S.E.C. PROCEEDINGS.  IT IS NOT THE CIVIL LITIGATION THAT

05:01PM 8   WE'RE TALKING ABOUT.  IT IS CRYSTAL CLEAR THAT MS. HOLMES HAD

05:01PM 9   SEPARATE COUNSEL IN THAT CIVIL LITIGATION.  SHE WAS NOT

05:01PM 10  REPRESENTED BY WILMER.

05:01PM 11     TO THE EXTENT THAT THE GOVERNMENT IS CLAIMING NOW THAT

05:01PM 12  WILMER ACTUALLY REPRESENTED MS. HOLMES IN HER PERSONAL CAPACITY

05:01PM 13  COMES AS A GREAT SURPRISE TO US GIVEN ALL OF THE MANY PRIVILEGE

05:01PM 14  ISSUES THAT WE'VE BEEN LITIGATING WITH THE GOVERNMENT AND WE

05:01PM 15  MAY NEED TO TAKE THAT UP SEPARATELY.

05:01PM 16     SECOND OF ALL, AGAIN, WE HEAR THIS LANGUAGE THAT WE HAVE

05:01PM 17  HEARD ALL THROUGHOUT THESE HEARINGS, IT STRAINS BELIEF.  THAT'S

05:01PM 18  JUST SPECULATION, THAT IS NOT EVIDENCE, AND IT DOES NOT STRAIN

05:01PM 19  BELIEF TO THINK THAT MS. HOLMES WAS NOT DIRECTLY SUPERVISING

05:01PM 20  THE WORK ON THESE INTERROGATORY RESPONSES FOR THE SIMPLE REASON

05:01PM 21  THAT I SAID, SHE HAD SEPARATE COUNSEL.  AND THE REASON SHE HAD

05:01PM 22  SEPARATE COUNSEL WAS BECAUSE THE GRAND JURY INVESTIGATION HAD

05:01PM 23  ALREADY COMMENCED, AND UNDER THOSE KIND OF CIRCUMSTANCES, WHAT

05:01PM 24  COMPANIES AND EMPLOYEES OFTEN DO IS TO HAVE THEIR OWN

05:02PM 25  LITIGATION COUNSEL BECAUSE OF THE DANGERS OF HAVING ONE, YOU

05:02PM  1     KNOW, THE SAME LAWYER REPRESENT THE COMPANY AND THE DEFENDANT.

05:02PM  2         IN THAT CASE SHE HAD HER OWN COUNSEL.  THERE'S NO

05:02PM  3     EVIDENCE THAT SHE SUPERVISED THE RESPONSES TO THESE

05:02PM  4     INTERROGATORIES.  THERE'S NO EVIDENCE THAT THESE EMPLOYEES

05:02PM  5     REPORTED TO HER WITH RESPECT TO THE CONTENT OF THE

05:02PM  6     INTERROGATORIES.

05:02PM  7         THE GOVERNMENT IS COMPLETELY SPECULATING.

05:02PM  8             THE COURT:  ALL RIGHT.

05:02PM  9             MR. BOSTIC:  YOUR HONOR, JUST VERY BRIEFLY ON THAT.

05:02PM 10             THE COURT:  YES, MR. BOSTIC.

05:02PM 11             MR. BOSTIC:  SO I JUST WANT TO POINT OUT THAT WHEN

05:02PM 12     IT COMES TO SPECIFIC INVOLVEMENT IN THESE INTERROGATORIES, IT

05:02PM 13     WOULD BE ONE THING IF THE DEFENSE WERE ARGUING THAT THERE HAD

05:02PM 14     BEEN A WALL PUT UP BETWEEN THE COMPANY'S REPRESENTATION AND THE

05:02PM 15     DEFENDANT'S REPRESENTATION INDIVIDUALLY AND THAT SHE HAD NO

05:02PM 16     INVOLVEMENT.

05:02PM 17         THEY'RE NOT ARGUING THAT.  THEY CAN'T ARGUE THAT IN LIGHT

05:02PM 18     OF HER STATEMENTS DURING THE DEPOSITION, BUT, YES, SHE BELIEVES

05:02PM 19     THAT SHE WAS INVOLVED IN THE PROCESS OF RESPONDING TO THESE

05:02PM 20     INTERROGATORY REQUESTS.

05:02PM 21         GIVEN THAT, IT IS SELF-EVIDENT THAT THE INDIVIDUALS AT

05:03PM 22     THERANOS WHO DID SIGN THESE INTERROGATORY REQUESTS WERE

05:03PM 23     AUTHORIZED TO DO SO BY THE DEFENDANT HERSELF AS CEO, THE PERSON

05:03PM 24     PRIMARILY RESPONSIBLE FOR THE COMPANY'S ACTIONS.

05:03PM 25             THE COURT:  OKAY.  THANK YOU.  THANK YOU VERY MUCH.

05:03PM  1                MS. SAHARIA:  THANK YOU.

05:03PM  2         YOUR HONOR, I CAN JUST REPORT TO THE COURT WITH RESPECT TO

05:03PM  3    THE VERY LAST MOTION FROM THE GOVERNMENT, WHICH WAS THE MOTION

05:03PM  4    TO COMPEL PRODUCTION OF RULE 26(2) MATERIAL THAT WE DID PRODUCE

05:03PM  5    THAT MATERIAL TO THE GOVERNMENT THIS MORNING.

05:03PM  6                THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  I

05:03PM  7    NOTICED THAT THERE WASN'T ANY REAL REQUEST FOR AN ORDER.  SO

05:03PM  8    THANK YOU.  THANK YOU FOR THE UPDATE.

05:03PM  9         ANYTHING FURTHER ON ANY OF THESE MOTIONS THAT WE'VE

05:03PM 10    DISCUSSED?

05:03PM 11                MR. DOWNEY:  YOUR HONOR, I HAVE A VERY MINOR

05:03PM 12    REQUEST.

05:03PM 13                THE COURT:  YES.

05:03PM 14                MR. DOWNEY:  I KNOW THE COURT IS GOING TO BE

05:03PM 15    SCHEDULING A DAUBERT HEARING IN CONNECTION WITH DR. MASTER.

05:03PM 16         I WONDER IF IN THAT ORDER THE COURT MIGHT REQUEST THAT ANY

05:04PM 17    SUPPLEMENTAL INFORMATION THAT DR. MASTER REVIEWS BE PROVIDED TO

05:04PM 18    US AT SOME DATE CERTAIN IN ADVANCE OF THAT HEARING, AND PERHAPS

05:04PM 19    REQUIRE WHATEVER THE SUPPLEMENT TO HIS REPORT BE, THAT IT ALSO

05:04PM 20    BE FILED WITH SOME REASONABLE TIME FOR US TO REVIEW IT.

05:04PM 21                THE COURT:  ALL RIGHT.  MR. LEACH.

05:04PM 22                MR. LEACH:  I HAVE NO PROBLEM WITH THAT CONCEPT,

05:04PM 23    YOUR HONOR.

05:04PM 24                THE COURT:  ALL RIGHT.  THANK YOU.

05:04PM 25         I WAS THINKING ABOUT FOR A DAUBERT HEARING, JUST TIMING

05:04PM   1    WISE, I HAVE NOT REALLY REACHED A DATE YET, BUT DOES SOME TIME

05:04PM   2    IN JUNE SOUND GOOD?  IS THAT TOO LATE?  IS THAT TOO EARLY?

05:04PM   3         WHAT DO YOU THINK, MR. LEACH?  IS JULY TOO LATE?

05:04PM   4              MR. LEACH:  I DON'T THINK JULY IS TOO LATE,

05:04PM   5    YOUR HONOR.  AND I NEED TO REPORT I HAVE -- GIVEN THE PACE OF

05:04PM   6    OUR OTHER RESPONSIBILITIES, I HAVE NOT HAD A CHANCE TO CONNECT

05:04PM   7    WITH THE EXPERT ABOUT HIS SCHEDULE.  SO I DID HEAR THE COURT'S

05:04PM   8    COMMENT ABOUT DOING IT BEFORE THE PRETRIAL CONFERENCE, WHICH IS

05:05PM   9    IN JUNE.  I THINK THAT'S -- WOULD PUT A LOT OF PRESSURE ON THE

05:05PM   10   PARTIES, BUT WE'LL DO WHATEVER THE COURT WISHES.  I THINK JULY

05:05PM   11   WOULD BE PERFECTLY FINE.

05:05PM   12              THE COURT:  OKAY.

05:05PM   13              MR. DOWNEY:  I WILL LEAVE IT TO YOUR HONOR.  OUR

05:05PM   14   PREFERENCE WOULD BE STRONGLY TO THE CONTRARY.  I TAKE FROM THE

05:05PM   15   AMOUNT OF MATERIAL THAT WE HAVE TO DEAL WITH, WE WOULD BE

05:05PM   16   BETTER OFF TO KNOW WHAT IS GOING TO HAPPEN.

05:05PM   17              THE COURT:  SURE.

05:05PM   18              MR. DOWNEY:  AND WE'LL BE PREPARED TO DO IT AS SOON

05:05PM   19   AS THE COURT IS, AND WE HOPE THAT WILL BE SOON.

05:05PM   20              THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU VERY

05:05PM   21   MUCH.

05:05PM   22              MR. LEACH:  ALL RIGHT.  THANK YOU.

05:05PM   23              THE COURT:  ANYTHING FURTHER FROM ANYONE ON THE

05:05PM   24   TEAMS ABOUT ANYTHING BEFORE WE END THIS PUBLIC SESSION,

05:05PM   25   MR. SCHENK?

05:05PM   1                    MR. SCHENK:  NO, YOUR HONOR.

05:05PM   2                    MS. SAHARIA:  NO, YOUR HONOR.

05:05PM   3                    THE COURT:  ALL RIGHT.  THANK YOU.  LET'S END THIS

05:05PM   4       PUBLIC SESSION THEN.

05:05PM   5           THE MOTIONS THAT THE COURT HAS NOT RULED ON ARE INDICATED

05:05PM   6       DEFERRED.  THE COURT WILL ISSUE AN ORDER ON THOSE.  THEY ARE

05:05PM   7       UNDER SUBMISSION, AND THE COURT WILL ISSUE ORDERS CONCURRENT

05:05PM   8       WITH THE OTHER ORDERS THAT HAVE BEEN MADE ON THE RECORD.  SO

05:05PM   9       THAT ENDS OUR SESSION NOW.

05:06PM  10           LET'S JUST TAKE A STANDING BREAK FOR A MINUTE WHILE

05:06PM  11       MS. KRATZMANN DOES WHAT SHE NEEDS TO DO.

05:06PM  12                    THE CLERK:  YES, YOUR HONOR.

05:06PM  13           **(SEALED PROCEEDINGS PAGES 152 - 161.)**

05:06PM  14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1
2
3                        CERTIFICATE OF REPORTER
4
5
6
7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED
8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
10    CERTIFY:
11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13    ABOVE-ENTITLED MATTER.
14
15
16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17
18         DATED:  MAY 12, 2021
19
20
21
22
23
24
25