1   JOHN D. CLINE (CA State Bar No. 237759)
    50 California Street, Suite 1500
2   San Francisco, CA 94111
    Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3   Email: cline@johndclinelaw.com

4   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
    LANCE A. WADE (Admitted Pro Hac Vice)
5   AMY MASON SAHARIA (Admitted Pro Hac Vice)
    KATHERINE TREFZ (CA State Bar No. 262770)
6   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
7   Washington, DC 20005
    Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
8   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9   Attorneys for Defendant ELIZABETH A. HOLMES

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
    UNITED STATES OF AMERICA,            )  Case No. CR-18-00258-EJD
15                                       )
              Plaintiff,                 )  **MS. HOLMES' REQUEST FOR EXPANDED**
16                                       )  **SUMMONS AND JURY QUESTIONNAIRE, AS**
         v.                              )  **WELL AS INDIVIDUAL *VOIR DIRE* WITH**
17                                       )  **COUNSEL**
    ELIZABETH HOLMES and                 )
18  RAMESH "SUNNY" BALWANI,              )
                                         )  Date: June 15, 2021
19            Defendants.                )  Time: 10:00 AM
                                         )  CTRM: 4, 5th Floor
20                                       )
                                         )  Hon. Edward J. Davila
21                                       )
                                         )
22  _____ )

23

24

25

26

27
    MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
28  INDIVIDUAL *VOIR DIRE* WITH COUNSEL
    CR-18-00258 EJD
                                        i

1

2

## NOTICE OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE, AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL

3      PLEASE TAKE NOTICE that on June 15, 2021 at 10:00 a.m., or on such other date and time as

4   the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA

5   95113, before the Honorable Edward J. Davila, Defendant Elizabeth Homes will and hereby does

6   respectfully request the Court for an Order granting an expanded summons and jury questionnaire, as

7   well as individual *voir dire* with counsel.  The Request is based on the below Memorandum of Points

8   and Authorities, the Declaration of Richard S. Cleary, Jr. and accompanying exhibits, the record in this

9   case, and any other matters that the Court deems appropriate.

10

11   DATED: May 27, 2021

12                                                         /s/ Amy Mason Saharia
                                                          KEVIN M. DOWNEY
13                                                        LANCE A. WADE
                                                          AMY MASON SAHARIA
14                                                        KATHERINE TREFZ
                                                          Attorneys for Elizabeth Holmes
15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
     INDIVIDUAL *VOIR DIRE* WITH COUNSEL
     CR-18-00258 EJD
                                                    ii

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................3

I.   Ms. Holmes Has Been the Subject of Vast, Detailed, and Deeply Inflammatory
     Pretrial Coverage That Directly Bears on the Issues at Trial.............................................3

II.  The COVID-19 Pandemic May Impact the Jury Selection Process. ...............................5

LEGAL STANDARD............................................................................................................6

ARGUMENT .........................................................................................................................8

I.   The Service of Greater Numbers of Summons Is Appropriate in this Case. ..................8

II.  An Expanded Jury Questionnaire Will Assist the Court and Parties in Identifying Bias
     and Will Streamline the Jury Selection Process. ............................................................8

     A.   Thorough Questioning Regarding Prospective Jurors' Exposure to, Familiarity
          with, and Opinions of Ms. Holmes, Theranos, and this Case Is Essential to
          Ensure the Selection of Fair and Impartial Jurors....................................................9

     B.   The Court Should Ask Questions Ordinarily Reserved for *Voir Dire* in the
          Jury Questionnaire in Order to Expedite Jury Selection.........................................11

     C.   This Court Should Continue Its Practice of Inquiring into Jurors' Experience
          with COVID-19. ....................................................................................................11

III. The Juror Questionnaire Will Facilitate a Meet-and-Confer Process Between the
     Parties, and Streamline the Jury Selection Process.......................................................12

IV.  Individual Voir Dire by the Court and Counsel Is Necessary in This Case. ................12

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

# TABLE OF AUTHORITIES

## CASES

*Irvin v. Dowd*, 366 U.S. 717 (1961)......................................................................................6

*Morgan v. Illinois*, 504 U.S. 719 (1992)..............................................................................6

*Mu'Min v. Virginia*, 500 U.S. 415 (1991)...........................................................................6

*Rosales-Lopez v. United States*, 451 U.S. 182 (1981) ........................................................6

*Silverthorne v. United States*, 400 F.2d 627 (9th Cir. 1968) ..............................1, 6, 7, 10

*Skilling v. United States*, 561 U.S. 358 (2010) ...........................................................4, 7, 9

*Smith v. Phillips*, 455 U.S. 209 (1982) ..........................................................................6, 11

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ...........................................................................9

*United States v. Affleck*, 776 F.2d 1451 (10th Cir. 1985)....................................................7

*United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1983).....................................................12

*United States v. Beckner*, 69 F.3d 1290 (5th Cir. 1996) ....................................................10

*United States v. Brewer*, 776 F. App'x 442 (9th Cir. 2019) ...............................................12

*United States v. Burns*, 343 F. App'x 265, 2009 WL 2610791 (9th Cir. 2009) .......................7, 10

*United States v. Felton*, 239 F. Supp. 2d 122 (D. Mass. 2003) ...........................................8

*United States v. Gal*, 606 F. App'x 868 (9th Cir. 2015)....................................................12

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979).............................................6, 7, 12

*United States v. Helmsley*, 733 F. Supp. 600 (S.D.N.Y. 1989) ..........................................8

*United States v. Hougen*, 20-cr-00432-EJD.......................................................................11

*United States v. Houlihan*, 926 F. Supp. 14 (D. Mass. 1996).............................................8

*United States v. Huefile,* 687 F.2d 1305 (10th Cir. 1982) .................................................9

*United States v. Jones*, 566 F.3d 353 (3d Cir. 2009) ..........................................................7

*United States v. Jones*, 722 F.3d 528 (9th Cir. 1983) .........................................................7

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990)......................................7

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998)..................................................7

*United States v. Moore*, 651 F.3d 300 (D.C. Cir. 2011) ...................................................7

*United States v. Rocha*, 19-cr-00382-EJD ...................................................................11

*United States v. Rocha*, 19-cr-382-EJD ........................................................................11

*United States v. Tsarnaev*, 968 F.3d 24 (1st Cir. 2020), *cert. granted* 2021 WL 1072279
    (Mar. 22, 2021) ..............................................................................................7, 8, 9

*United States v. Washington*, 819 F.2d 221 (9th Cir. 1987) ............................................6

*United States v. Wittig*, 2005 WL 758605 (D. Kan. Apr. 4, 2005)....................................8

## CONSTITUTION

U.S. Const. amend. V ……………………………………………………………….......... 6

U.S. Const. amend. VI ..........................................................................................6, 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      The Ninth Circuit has long recognized that courts "must spare no effort to secure an impartial

3 panel" of jurors.  *Silverthorne v. United States*, 400 F.2d 627, 639 (9th Cir. 1968).  To that end, this

4 Court instructed the parties to propose *voir dire* questions, a jury questionnaire, and/or proposed jury

5 instructions on May 27, 2020.  Revised Scheduling Order, Dkt. 650 (Dec. 18, 2020).  Ms. Holmes has

6 filed proposed jury instructions and a proposed draft questionnaire with this pleading.[1]

7      In light of the extraordinary, highly prejudicial publicity of this case and the issues associated

8 with the COVID-19 pandemic, jury selection presents special challenges.  Ms. Holmes seeks both to

9 protect her constitutional rights and to proceed in an efficient manner for the Court and the parties.  With

10 these objectives in mind, Ms. Holmes proposes the following, tiered approach to jury selection for the

11 Court's consideration:

12      ***Expanded Distribution of Summons***: Ms. Holmes understands that the Court is likely to instruct

13 the Jury Commissioner to distribute a greater number of summons than usual in this case.  Ms. Holmes

14 believes that this course of action is appropriate in order to account for prospective jurors unable to

15 participate in trial due to the duration of this trial and COVID-related hardship, and to account for the

16 possibility that substantial numbers of jurors may need to be excused for cause by reason of their

17 exposure to the massive, prejudicial pretrial publicity in this case.

18      ***Expanded Questionnaire***: Ms. Holmes has proposed a written jury questionnaire.  The proposed

19 questionnaire will allow the Court to assess the degree of juror exposure to the vast, varied, and highly

20 prejudicial coverage directly bearing on the issues in this case, and ascertain any bias resulting from that

21 exposure.  It also contains questions that are often reserved for in-person *voir dire* to allow the Court to

22 minimize the in-court time associated with jury selection, which may be desirable in light of an

23

24      [1] Ms. Holmes has not proposed standardized *voir dire* questions.  Instead, Ms. Holmes

25 respectfully proposes that the Court issue a detailed jury questionnaire, and utilize in-person *voir dire* to
ask tailored questions of prospective jurors based on their responses to the questionnaire.  Ms. Holmes

26 believes that this will produce an efficient process designed to assure the selection of a fair and impartial
jury.

27

28 MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

1   increased number of prospective jurors, as well as questions prompted by the COVID-19 pandemic.[2]

2        ***Meet-and-Confer***: After receipt of prospective jurors' completed questionnaires by the Court,

3   Ms. Holmes asks that the Court allow the parties to meet and confer, and, based on their review of the

4   completed questionnaires, to propose the excusal of select prospective jurors for cause.  This is another

5   measure followed in high-profile cases, and Ms. Holmes understands that this Court has employed such

6   a procedure in recent trials.

7        ***Individual Voir Dire by the Court and Counsel***: In order to minimize the risk that discussion of

8   individual prospective jurors' knowledge of publicity is exposed to the entire panel, Ms. Holmes

9   believes that individual *voir dire* is necessary in this case and will prevent tainting jurors.  Ms. Holmes

10  notes that the Ninth Circuit urges the use of individual *voir dire* in cases where, like this one, significant

11  publicity has occurred prior to trial.  *See infra* pp. 6-7.  Ms. Holmes believes that an extensive jury

12  questionnaire can streamline the individual *voir dire* process, and, if the Court accepts her proposed

13  questionnaire, expects to ask tailored questions based on jurors' answers to the questionnaire.

14                                    *        *        *

15       Ms. Holmes discusses each of these steps in greater detail below.  Before doing so, she briefly

16  surveys the extraordinary, prejudicial media coverage of both her and this case; some effects of the

17

18       [2] As undersigned counsel informed the Court at a recent hearing, Ms. Holmes shared her draft
    proposed questionnaire with the government more than three weeks ago with a view to filing a
19  questionnaire jointly. Ex. 52 (5/5/2021 K. Downey email to R. Leach).  The government took one week
    to respond. When it did so, the government refused to identify the questions that it found objectionable,
20  and stated that it saw "no meaningful prospect of agreement based on [Ms. Holmes'] proposed
    questionnaire."  *Id.* (5/12/2021 R. Leach Email to K. Downey).  In order to facilitate review by this
21  Court, and in light of the number of routine questions in her draft questionnaire, Ms. Holmes' counsel
    asked the government if it could identify the questions to which it did (and did not) object.  *Id.*
22  (5/20/2021 K. Downey Email to R. Leach).  The government did not engage with this request, and
    instead transmitted its proposed questionnaire to Ms. Holmes' counsel less than two days prior to the
23  Court's deadline.  *Id.* (5/25/2021 R. Leach Email to K. Downey).  At that point, it was too late to confer.

24       The government's questionnaire asks only the standard questions about what the prospective
    juror has seen or heard about this case; what the prospective juror's "main sources of news" are; and
25  (arbitrarily) whether the prospective juror consumes "financial news"—just one of the many categories
    of outlets to have covered this case over the last five-plus years.  These stock questions are plainly
26  inadequate in a case with such pervasive and pervasively negative publicity.  We will endeavor to
    identify those questions on which we can agree in advance of the pretrial conference in an effort to
27  minimize the Court's burden.

28  MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
    INDIVIDUAL *VOIR DIRE* WITH COUNSEL
    CR-18-00258 EJD

                                    2

COVID-19 pandemic on the jury selection process; and the governing case law on the need for effective *voir dire* to protect her constitutional rights to due process and a fair trial.  Ms. Holmes looks forward to working collaboratively with the Court and the government to set up an efficient process designed to ensure the selection of fair and impartial jurors.

## BACKGROUND

## I.   Ms. Holmes Has Been the Subject of Vast, Detailed, and Deeply Inflammatory Pretrial Coverage That Directly Bears on the Issues at Trial.

Ms. Holmes respectfully submits that the pretrial publicity in this case puts her constitutional rights in grave jeopardy for the following reasons.

*First*, the publicity relating to this case is pervasive.  The coverage of this case sweeps across numerous types of media, saturating prospective jurors from all walks of life.  Coverage has included a best-selling book, Declaration of Richard S. Cleary, Jr. ("Cleary Decl.") Ex. 1; multiple high-profile documentaries and long-form, televised news stories, Exs. 2-4; podcasts, *e.g.*, Ex. 5; and a forthcoming television drama series and major motion picture, Exs. 6, 15.  Publicity encompasses local print and online news, *e.g.*, Ex. 28; national news, *e.g.*, Ex. 3; local television, *e.g.*, Ex. 8; cable television, *e.g.*, Ex. 29; technology news, *e.g.*, Ex. 26; health, medical, and biotechnology news, *e.g.*, Ex. 11; financial news, *e.g.*, Cleary Decl. ¶ 2(c); political news, *e.g.*, Ex. 13; legal press, *e.g.*, Ex. 14; entertainment news, *e.g.*, Ex. 15; foreign press, *e.g.*, Ex. 16; and long-form journalism, *e.g.*, Ex. 17; among others.

A simple Google search for Theranos AND Holmes generates more than 400,000 results.  Cleary Decl. ¶ 2(a).  The same search on LexisAdvance, when filtered for news, generates more than 10,000 results.  *Id*. ¶ 2(b).  LexisAdvance designates more than 3,700 of those articles as "Negative Personal News" and more than 2,800 as "Negative Business News."  *Id*. ¶ 2(b)(i); *see also id*. ¶ 2(c) (summarizing ProQuest search results).  Social media and "machine learning" (which "pushes" users toward more content of the same kind) further expand the reach of this pretrial publicity.

*Second*, the publicity is pervasively negative.  Ms. Holmes is routinely referred to in derisive and inflammatory terms that are directly relevant to the wire fraud charges in this case.  Media coverage

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

describes her as a "fraud," "fraudster," "con artist," "disgraced Theranos founder," "scam artist," and a "raging psychopath[]." *See, e.g.*, Exs. 20, 21, 22, 24. Outlets have described Theranos as a "house of cards," Ex. 17; a "fraud," Ex. 20; and a "scam," *id*. The media coverage also trades on prejudicial tropes and recurring themes, often relating to Ms. Holmes' demeanor, voice, and physical appearance. *E.g.*, Exs. 16, 17.

*Third*, coverage of this kind has been ongoing for years. Highly negative publicity traces to at least fall 2015. The cumulative effect of this torrent of prejudicial coverage is unmistakable.

*Fourth*, in contrast to other high-profile cases featuring corporate executives, *e.g.*, *Skilling v. United States*, 561 U.S. 358, 383 n.15 (2010), the coverage has focused intensely on Ms. Holmes personally, not simply on the circumstances of Theranos' corporate dissolution.

*Fifth*, the coverage often presents disputed issues in this case as matters of established fact. Much of the coverage purports to rely on accounts of anonymous "insiders" and "whistleblowers." *E.g.*, Ex. 1. Some coverage purports to quote Ms. Holmes, often with commentary interpreting or characterizing those putative statements. *E.g.*, Exs. 27, 39. Viewers and/or readers will naturally feel as if they have intimate, neutral knowledge of the innerworkings of the company, Ms. Holmes' conduct, and her intent. In addition, the coverage inevitably includes matters that will not be at issue in this case.

*Sixth*, the publicity is diffuse and varied, touching on every major issue identified in the indictment, as well as many other ancillary issues. Here is a sampling of topics covered by the media over the past five years:

- Ms. Holmes' hair, makeup, clothing, voice, and blinking patterns, Exs. 16, 17;
- Ms. Holmes' relationship with Mr. Balwani, Ex. 31;
- Ms. Holmes' psychological profile, Ex. 44;
- Ms. Holmes' choice of apartment, Ex. 33;
- The composition, background, and qualifications of Theranos' Board of Directors, Ex. 34;
- The accuracy of Theranos' technology, Ex. 45;

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

4

- Theranos' interactions with FDA and CMS, Exs. 36, 42;

- Theranos' use of fingerstick testing, Ex. 37;

- Theranos' use of venous draws, Ex. 38;

- Theranos' use of third-party devices, Ex. 39;

- Theranos' business partnerships with Walgreens and Safeway, Exs. 9, 40;

- Prior civil litigation and settlements involving Ms. Holmes and/or Theranos, Ex. 41;

- Specific laboratory practices, such as the use of quality control, Ex. 45;

- Theranos' dealings with doctors and customers, Ex. 46;

- Theranos' measures to protect its trade secrets, Ex. 51; and

- The maximum sentence associated with the charged offenses, Ex. 35.

*Lastly*, media coverage has assiduously tracked pretrial developments in this case. Many articles purport to summarize pending legal motions, rulings, and evidence. Journalists have highlighted content that has been excluded from evidence, Ex. 49, and speculated about the contents of under seal filings. Articles often selectively recount the evidence, Ex. 48, characterize the strength of legal arguments, Ex. 14, spin out possible theories of the defense, Ex. 50, purport to say what the evidence "show[s]," Ex. 43, and hint at the outcome of trial, Ex. 14.[3]

## II.   The COVID-19 Pandemic May Impact the Jury Selection Process.

Recent months have witnessed encouraging developments in the COVID-19 pandemic. Vaccines have been broadly distributed, COVID cases and fatalities are sharply decreasing in many states, and the CDC has issued new guidance relating to the wearing of masks indoors for those who have received the vaccine. Indeed, in light of this new CDC guidance, at least one federal court has issued an order dispensing with the face-mask requirement for fully vaccinated individuals.[4] Ms. Holmes and undersigned counsel are hopeful that these positive trends will continue.

---

[3] In addition, specific articles have already been the subject of a pretrial ruling. *See* Order re: Motions in Limine, Dkt. 798 at 43-44.

[4] In re: Restrictions on Courthouse Access due to COVID-19, COVID-19 Order, 3:20-mc-23-J-32 (M.D. Fla. May 21, 2021), https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-covid-19-order-may-21-2021-3-20-mc-23-j-32.pdf.

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

1    Nevertheless, Ms. Holmes anticipates that the COVID-19 pandemic may inform the jury

2   selection process in two ways.  A greater number of prospective jurors may be excused for hardship than

3   typically occurred prior to the pandemic.  And it is possible that certain prospective jurors will have

4   subjective concerns relating to the COVID-19 pandemic that may affect their ability to serve as fair and

5   impartial jurors.  *See infra* pp. 11-12.

6                              **LEGAL STANDARD**

7    The Due Process Clause and the Sixth Amendment guarantee the right to trial before an impartial

8   jury.  A searching jury selection process is critical to preserving that right.  *Morgan v. Illinois*, 504 U.S.

9   719, 729 (1992).  The questioning of jurors that occurs in the *voir dire* process "serves the dual purposes

10   of enabling the court to select an impartial jury and assisting counsel in exercising peremptory

11   challenges."  *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).  "Without an adequate *voir dire* the trial

12   judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's

13   instructions and evaluate the evidence cannot be fulfilled."  *Rosales-Lopez v. United States*, 451 U.S.

14   182, 188 (1981).  Thorough *voir dire* is necessary because jurors "may have an interest in concealing

15   [their] own bias" or "may be unaware of it."  *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor,

16   J., concurring).

17    When "pretrial publicity is great, the trial judge must exercise correspondingly great care in all

18   aspects of the case relating to publicity which might tend to defeat or impair the rights of an accused."

19   *Silverthorne*, 400 F.2d at 637-38.  The jury selection process thus must be "reasonably sufficient to test

20   the jury for bias or partiality."  *United States v. Washington*, 819 F.2d 221, 224 (9th Cir. 1987).  *Voir*

21   *dire* "must not simply call for the jurors' subjective assessment of their own impartiality, and it must not

22   be so general that it does not adequately probe the possibility of prejudice."  *United States v. Giese*, 597

23   F.2d 1170, 1183 (9th Cir. 1979) (citation omitted); *see also Irvin v. Dowd*, 366 U.S. 717, 728 (1961)

24   (assigning "little weight" to prospective juror's statement that "he would be fair and impartial" because

25   "[y]ou can't forget what you hear and see").

26

27

28   MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

As the Ninth Circuit has explained, in cases featuring great pretrial publicity, "[a] general question directed to the entire group of prospective jurors is inadequate," and "[t]he district court should conduct a careful, individual examination of each prospective juror, preferably out of the presence of other jurors." *Giese*, 597 F.2d at 1183.  In order to facilitate "an objective evaluation of each juror's impartiality," such cases require inquiry into "what information [prospective jurors] have obtained relative to the case and their source of knowledge." *Silverthorne*, 400 F.2d at 639.

In addition, "there are three instances in which specific questioning is required upon the defendant's request":

> (1) When the case carries racial overtones; (2) the case involves other matters concerning which either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact; or (3) when the case involves other forms of bias . . . which have become evident through experience with juries.

*United States v. Burns*, 343 F. App'x 265, 2009 WL 2610791 at *1 n. 3 (9th Cir. 2009) (quoting *United States v. Jones*, 722 F.3d 528, 529-30 (9th Cir. 1983)).  When none of these situations applies, specific questioning about possible bias is appropriate when a particular question "is reasonably calculated to discover an actual and likely source of prejudice, rather than pursue a speculative will-o-the-wisp." *Jones*, 722 F.3d at 530 (quoting *United States v. Robinson*, 475 F.2d 376, 381 (D.C. Cir. 1973)).

The federal courts have implemented and approved probing *voir dire* procedures in high-profile and controversial cases in order to provide defendants a full and fair opportunity to explore the biases and prejudices of prospective jurors.  These procedures include expanded numbers of summoned prospective jurors, detailed jury questionnaires, individual questioning of prospective jurors, and attorney participation in *voir dire*.[5]

---

[5] *See, e.g.*, *Skilling*, 561 U.S. at 384, 371, 389 (district court rejected government's "sparer inquiries" in favor of extensive questionnaire proposed by defendant, and utilized follow-up *voir dire* with individual jurors); *United States v. Tsarnaev*, 968 F.3d 24, 46-47 (1st Cir. 2020) (100-question questionnaire and 21 days of individual *voir dire*), *cert. granted* 2021 WL 1072279 (Mar. 22, 2021); *United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) (selection process included a "detailed questionnaire" and "the attorneys were deeply involved in the process of questioning jurors," with many dismissed for cause given bias towards gangs); *United States v. McVeigh*, 153 F.3d 1166, 1181, 1184 (10th Cir. 1998) (prospective jurors completed an "extended questionnaire" and were questioned individually at length by both the court and counsel); *United States v. Maldonado-Rivera*, 922 F.2d 934, 971 (2d Cir. 1990) (court used "written questionnaire consisting of 65 questions tailored to the facts of

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

7

**ARGUMENT**

Searching *voir dire* is necessary in this case.   Ms. Holmes respectfully suggests the following proposed jury selection process.  This process is designed both to protect Ms. Holmes' constitutional rights and to chart an efficient path for the Court, parties, and prospective jurors.

## I.     The Service of Greater Numbers of Summons Is Appropriate in this Case.

As mentioned, Ms. Holmes understands that the Court is likely to request that a greater number of summons than usual be distributed to prospective jurors.  Ms. Holmes agrees with this course, which is necessitated by the duration of this trial, the COVID-19 pandemic, and the prospect that large numbers of prospective jurors may merit excusal for cause.[6]

## II.     An Expanded Jury Questionnaire Will Assist the Court and Parties in Identifying Bias and Will Streamline the Jury Selection Process.

Ms. Holmes respectfully submits that the standard jury questionnaire should be expanded in three ways.  First, the questionnaire should ask questions calculated to identify the prospective juror's exposure to prejudicial pretrial coverage of Ms. Holmes, Theranos, and this case.  Second, the questionnaire should include questions directed toward the prospective juror's experience with the COVID-19 pandemic.  Third, the questionnaire should incorporate questions ordinarily reserved for in-person *voir dire* in order to streamline that process.

---

this case" and defense counsel individually questioned prospective jurors); *United States v. Affleck*, 776 F.2d 1451, 1455 (10th Cir. 1985) (44-page questionnaire and *voir dire* conducted by the court and counsel); *United States v. Wittig*, 2005 WL 758605 at *1 (D. Kan. Apr. 4, 2005) (court used intra-district transfer, juror questionnaires, and individualized, sequestered *voir dire*); *United States v. Felton*, 239 F. Supp. 2d 122, 125 (D. Mass. 2003) (potential jurors completed lengthy questionnaire, attorneys individually questioned jurors, and court granted additional peremptory challenges to defendants); *United States v. Houlihan*, 926 F. Supp. 14, 16 (D. Mass. 1996) (*voir dire* included questionnaire, "followed by individual questioning conducted by counsel"); *United States v. Helmsley*, 733 F. Supp. 600, 610 & n.8 (S.D.N.Y. 1989) (prospective jurors completed "comprehensive juror questionnaires" and court individually interviewed potential jurors with all counsel present).

[6] The recent, high-profile *Tsarnaev* jury selection is illustrative.  In that case, 1,373 prospective jurors arrived at the courthouse to complete extensive jury questionnaires.  *Tsarnaev*, 968 F.3d at 46. After both sides agreed to excuse "many" jurors, the Court called only 256 for in-person *voir dire*, and, after individual *voir dire*, deemed 75 of those provisionally qualified to sit on the jury.  *Id.* at 47, 50.

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

**A.  Thorough Questioning Regarding Prospective Jurors' Exposure to, Familiarity with, and Opinions of Ms. Holmes, Theranos, and this Case Is Essential to Ensure the Selection of Fair and Impartial Jurors.**

Extensive questioning about prospective jurors' exposure to pretrial publicity, familiarity with Ms. Holmes, Theranos, or her co-defendant, and opinions on those subjects is indispensable to ensuring a fair trial.  The extensive pretrial coverage discussed above creates the potential for biased jurors, and (apart from Ms. Holmes' due process and fair trial rights) presents a panoply of constitutional issues associated with jurors' exposure to information that is inadmissible at trial.  *See, e.g., Tsarnaev*, 968 F.3d at 59 (noting that certain statements in the media "could not constitutionally be admitted into evidence"), *cert. granted* 2021 WL 1072279 (Mar. 22, 2021); *cf. Taylor v. Kentucky*, 436 U.S. 478, 485 (1978) ("[O]ne accused of a crime is entitled to have [her] guilt or innocence determined solely on the basis of the evidence introduced at trial.").

The pervasive and pervasively negative coverage of Ms. Holmes described above have conveyed "the kind of vivid, unforgettable information" that invariably produces prejudice in the reader or viewer. *Skilling*, 561 U.S. at 384; *see supra* pp. 3-5 (summarizing content).  This is the sort of "blatantly prejudicial information of the type readers or viewers [cannot] reasonably be expected to shut from sight." *Id.* at 382.[7]

Ms. Holmes respectfully submits that an extensive pretrial questionnaire presents the best method for surfacing bias in jurors in an efficient manner.  Questionnaires are often used in combination with in-person *voir dire* in high-profile cases.  *See supra* p. 7 n. 5.  Although her proposed questionnaire is lengthy, Ms. Holmes believes that it will (in the end) facilitate a more efficient process, as it will allow the Court and parties to excuse prospective jurors for cause in advance of *voir dire*, and to focus the in-person *voir dire* process.  For example, Ms. Holmes has included box-checking questions for a

---

[7] The Supreme Court has mentioned that, in some cases, the prejudice associated with adverse pretrial publicity may be lessened when (for example) the corporation, but not the corporate executive, is the focus of attention.  *Skilling*, 561 U.S. at 384 n.17; *see also United States v. Hueftle*, 687 F.2d 1305, 1310 (10th Cir. 1982) (same).  That is not the case here.  Ms. Holmes was uniquely identified with Theranos, and the coverage has been laser-focused on her.

MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

1  number of key issues in order to minimize the time associated with completing the questionnaire, while

2  enabling follow-up questions during in-person *voir dire*.[8]

3        Under the law of this Circuit, this case warrants expanded jury selection procedures to ascertain

4  the degree and effect of pretrial media exposure on prospective jurors for two, independent reasons.

5  First, because the "pretrial publicity is great," it is necessary to "inquire of the jury what information

6  [prospective jurors have] obtained relative to the case and their source of knowledge." *Silverthorne*, 400

7  F.2d at 638-39.  Such information furnishes an objective basis for the Court's determination as to

8  whether an individual juror has bias or prejudice, and therefore must be excused.[9]  *Id*.  Second, this is a

9  case in which "specific questioning is required upon the defendant's request" because the case "involves

10  . . . matters concerning which either the local community or the population at large is commonly known

11  to harbor strong feelings," which may "significantly skew deliberations."  *Burns*, 2009 WL 2610791, at

12  *1 n. 3.[10]

13        Some jurors will undoubtedly confess bias in response to standard *voir dire* questions concerning

14  their opinion of Ms. Holmes' guilt or innocence.  But for others, the Court and parties will confront the

15  difficult task of sifting through objective information to ascertain whether a prospective juror is able to

16

17      [8] Ms. Holmes has also included certain questions relating to prospective jurors' media-
18  consumption habits.  In light of the deluge of negative publicity in recent years, it is very possible that a
   juror will sincerely fail to recall exposure to a particular issue during *voir dire* in response to a general
19  question.  But at trial, that juror may be reminded of, for example, a particular story he or she read that
   purported to discuss one of the many subjects at issue in the case.  The questionnaire is designed to
20  surface this sort of exposure by identifying specific outlets and journalists with particularly noteworthy
   coverage of Ms. Holmes, Theranos, and this case.

21      [9] Ms. Holmes' counsel has tendered a declaration that contains an anecdotal sampling of
22  approximately 45 media sources in support of this pleading.  *See* Cleary Decl., Exs. 1-51.  The
   declaration also recounts the results of internet and database searches on this subject.  Although Ms.
23  Holmes does not believe a more fulsome proffer is necessary under the case law, she would be happy to
   provide the Court with whatever additional materials would aid its assessment of the extent of the
24  pretrial publicity.  *See United States v. Beckner*, 69 F.3d 1290, 1292-93 (5th Cir. 1996) (finding
   "sufficient evidence of pretrial publicity to raise a significant possibility of prejudice" based on
25  declaration of "forty-eight newspaper articles from the local newspaper and a video tape of excerpts
   from eight local television broadcasts").

26      [10] Ms. Holmes' proposed questionnaire also guards against "other forms of bias . . . which have
   become evident through experience with juries," including animus against corporate executives.  *Burns*,
27  2009 WL 2610791 at *1 n. 3.

28  MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
   INDIVIDUAL *VOIR DIRE* WITH COUNSEL
   CR-18-00258 EJD

1   participate fairly and impartially in this trial.  Ms. Holmes' proposed questionnaire is designed to elicit

2   the key information to assist the Court and parties in that undertaking.  She respectfully requests that the

3   Court adopt the questions in her questionnaire relating to prospective jurors' exposure to, knowledge of,

4   and opinions of the key individuals and issues in this case.

5       **B.     The Court Should Ask Questions Ordinarily Reserved for *Voir Dire* in the Jury
            Questionnaire in Order to Expedite Jury Selection.**

6

7       Ms. Holmes understands that the Court ordinarily asks a number of questions relating to

8   prospective jurors' background, life experiences, and perspectives on the subject matter of the trial

9   during voir dire.  *See, e.g.*, *United States v. Hougen*, 20-cr-00432-EJD, Jury Selection Tr. 38:1-74:23

10  (N.D. Cal. Apr. 2, 2021); *United States v. Rocha*, 19-cr-00382-EJD, Jury Selection Tr. 44:18-69:10

11  (N.D. Cal. Mar. 9, 2021).  Ms. Holmes has included questions of this kind in her questionnaire.  Given

12  the breadth of the government's allegations and complexity of the subject matter in this case, a greater

13  number of questions about jurors' life experiences and perspectives may be necessary here than in other

14  cases.  For example, the government has charged two separate conspiracies, one focused on investors

15  and the other focused on customers of Theranos' blood testing services; *voir dire* must necessarily

16  explore jurors' experiences with both types of activities (and nearly all potential jurors will have

17  received blood testing services in their lifetimes).  Ms. Holmes respectfully requests that the Court

18  include such questions in the jury questionnaire in order to minimize the amount of time required for in-

19  person *voir dire*.

20      **C.     This Court Should Continue Its Practice of Inquiring into Jurors' Experience with
            COVID-19.**

21

22      COVID-related questions are important to identifying fair and impartial jurors.  Ms. Holmes

23  understands that this Court recently included questions bearing on prospective jurors' experience with

24  COVID-19 in a questionnaire used in *United States v. Rocha*, 19-cr-382-EJD.[11]  As the Court knows,

25

26  _____
        [11] The government provided a copy of the Court's questionnaire in *Rocha* to undersigned
    counsel.

27
    MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
28  INDIVIDUAL *VOIR DIRE* WITH COUNSEL
    CR-18-00258 EJD

1   prospective jurors may naturally have varied perceptions of the risk associated with COVID.  For some,

2   the prospect of contracting COVID-19 may be a distraction that would directly bear on Ms. Holmes' due

3   process right to "a jury capable and willing to decide the case solely on the evidence before it." *Phillips*,

4   455 U.S. at 217.  The case law recognizes the risks associated with jurors who fail to pay attention to

5   trial proceedings,[12] and the Ninth Circuit has affirmed a court's excusal for cause of a juror because of

6   her "severe anxiety regarding her service." *United States v. Gal*, 606 F. App'x 868, 873 (9th Cir. 2015).

7   **III.    The Juror Questionnaire Will Facilitate a Meet-and-Confer Process Between the Parties, and Streamline the Jury Selection Process.**

8

9        Ms. Holmes believes that an extensive questionnaire will furnish the basis for agreements

10   between the parties (with the consent of the Court) to excuse prospective jurors for cause.  She

11   respectfully asks that the Court allow the parties to meet and confer, and propose names of prospective

12   jurors for excusal based on their answers to the questionnaire.  Ms. Holmes understands that this Court

13   has encouraged such a practice in recent trials, and that the parties in other high-profile cases have had

14   success in excusing large numbers of jurors following the completion of extensive jury questionnaires.

15   *See, e.g., supra* p. 8 n.6.

16   **IV.    Individual Voir Dire by the Court and Counsel Is Necessary in This Case.**

17        In order to minimize the risk of the spread of taint based on prospective jurors' exposure to

18   pretrial publicity, Ms. Holmes believes individual *voir dire* by the Court and counsel is necessary.

19   When "pretrial publicity is great," the Ninth Circuit has been unmistakably clear: "[t]he district court

20   should conduct a careful, individual examination of each prospective juror, preferably out of the

21   presence of other jurors." *Giese*, 597 F.2d at 1183.  "A general question directed to the entire group of

22   prospective jurors is inadequate." *Id*.  Moreover, individual *voir dire* involving counsel is a common

23   practice in high-profile cases. *See supra* p. 6-7 & n. 5.

24

---

25   [12] *See, e.g.*, *United States v. Brewer*, 776 F. App'x 442, 442 (9th Cir. 2019) (vacating conviction due to lack of investigation by Court into prejudice caused by sleeping juror); *United States v. Barrett*,

26   703 F.2d 1076, 1083 & n.13 (9th Cir. 1983) (presence of a sleeping juror who misses essential parts of the proceeding may violate Sixth Amendment right to impartial jury).

27

28   MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

1                              *       *       *

2          For the foregoing reasons Ms. Holmes respectfully requests the Court to adopt the above-

3   mentioned procedure.

4

5          DATED: May 27, 2021

6

7

8

9                                            /s/ Amy Mason Saharia
                                             KEVIN DOWNEY
10                                           LANCE WADE
                                             AMY MASON SAHARIA
11                                           KATHERINE TREFZ
                                             Attorneys for Elizabeth Holmes
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
     INDIVIDUAL *VOIR DIRE* WITH COUNSEL
     CR-18-00258 EJD
                                        13

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on May 27, 2021, a copy of this filing was delivered via ECF on all counsel

3    of record.

4

5

6                                                      /s/ Amy Mason Saharia
                                                       AMY MASON SAHARIA
7                                                      Attorney for Elizabeth Holmes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    MS. HOLMES' REQUEST FOR EXPANDED SUMMONS, JURY QUESTIONNAIRE, AND
      INDIVIDUAL *VOIR DIRE* WITH COUNSEL
      CR-18-00258 EJD