# Exhibit 14



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Elizabeth Holmes' Mystique Unlikely To Survive Looming Trial

By **Hannah Albarazi**

Law360 (May 11, 2021, 10:04 PM EDT) -- Before Theranos founder Elizabeth Holmes and her ex-boyfriend were charged with deceiving investors and patients about their blood-testing technology's efficacy, the pair exchanged voluminous text messages that now threaten to provide jurors at Holmes' criminal trial this summer a rare window into her psyche.

The text messages between Holmes and former Theranos president and chief operating officer Ramesh "Sunny" Balwani, who were romantically involved around the time of the alleged conspiracy, could prove to be the linchpin of prosecutors' case.

One such text message concerned a laboratory where the Silicon Valley startup kept its supposedly groundbreaking fingerprick blood-testing invention, the Edison, that would later be revealed to be a malfunctioning prototype.

"Normandy lab," Balwani texted Holmes in November 2014, according to prosecutors, "is a fucking disaster zone."

Nearly a year later, as the Centers for Medicare and Medicaid Services surveyed Theranos' California lab for deficiencies, Balwani wrote to Holmes: "Our validation reports are terrible. Really painful going thru this process. Same issues FDA point out … Going bad so far. Pray."

"Praying … praying continually," Holmes writes back.

CMS ultimately determined that the deficient practices at Theranos' lab "posed immediate jeopardy to health and safety." Theranos' lab shuttered and the startup that had garnered roughly $700 million from investors and had reached a $9 billion valuation became a fallen unicorn.

Over the course of a marathon three-day pretrial hearing last week, prosecutors argued that colorful messages between Holmes, who led Theranos as CEO, and Balwani should be allowed into evidence, as they are replete with admissions that the duo hid fatal technical problems and knowingly made false statements to investors regarding Theranos' blood-testing technology.

Prosecutors say the texts reveal their deep anxiety and show the pair "freaking out" over regulators' unannounced inspections. And, because they are statements made by co-conspirators during and in furtherance of a conspiracy, the government says they are admissible as trial evidence.

But Holmes, who maintains her innocence, says the texts don't belong anywhere near jurors. Her attorneys have challenged the authenticity, relevance and completeness of the messages and cautioned in court documents that "plucking one text message out of a string of text messages could well create a misleading impression."

The fight over the text messages is just one of roughly two dozen disputes over evidence that the court has been asked to resolve ahead of Holmes' highly anticipated criminal jury trial, which is slated to begin on Aug. 31 and could run for four months.

Balwani is expected to have a separate trial in 2022.

Holmes' case will be heard by a jury more than six years after reporter John Carreyrou's Wall Street Journal articles first raised doubts about the now-defunct startup and more than three years after prosecutors hit Holmes and Balwani with **grand jury indictments** alleging conspiracy and wire fraud.

Prosecutors say the duo lied to investors and patients about Theranos' ability to perform a panoply of diagnostic tests "using only tiny drops of blood instead of the vials of blood typically drawn from an arm vein for traditional analysis," as the indictment puts it.

The question now is: Will Holmes and Balwani's text messages, emails, Skype conversations and other communications from the time of the alleged conspiracy be subjected to the scrutiny of the jury?

If so, the texts could prove to be gold for the prosecution.

Sarah Hall, senior counsel at Thompson Hine LLP and a former federal prosecutor, told Law360 that she thinks it's likely Balwani's texts with Holmes will be admitted as evidence under the co-conspirator exception to the rule against hearsay.

Hall, who is not involved in Holmes' case, said the co-conspirator exception to the hearsay rule is a "very government-friendly feature of the law of evidence" and one that "gives prosecutors a significant evidentiary advantage."

The government's burden of proof is relatively low, and Hall said the rule is so broad that prosecutors "can admit into evidence damaging and inculpatory statements against defendants in a conspiracy, even when those statements might otherwise be inadmissible hearsay in other contexts."

Eliot Rushovich, an employment attorney and managing partner at Rise Law Firm who is also not involved in Holmes' case, told Law360 that none of the text messages between Holmes and Balwani are hearsay.

"Notably, Holmes' attorneys do not object to the admission of these text messages on hearsay grounds," Rushovich said. "They are arguing that the government won't be able to authenticate the text messages at trial, question their relevance, and insist on being able to proffer their own text messages to provide a more complete picture."

"I think it's highly likely all of these text messages will be heard by the jury — and they are damning," Rushovich said.

But Hall pointed out that the court could decide to exclude Holmes and Balwani's text messages if it finds the evidence to be so inflammatory that it might lead a jury to place undue and improper emphasis on it, resulting in unfair prejudice against Holmes.

In defending their motions in limine, Holmes' defense and the prosecution's plan of attack **began to emerge**.

Among other things, Holmes' attorneys are trying to **keep away from jurors** evidence pertaining to Theranos' interactions with regulators — including the U.S. Food and Drug Administration's 2015 inspection of Theranos and CMS' survey findings and sanctions.

But CMS' statement of deficiencies regarding a Theranos lab may go to the core of the government's case. Holmes succeeded in getting the government to produce a trove of regulators' documents during discovery. But now that her attorneys have reviewed those documents, it appears they don't want them admitted as evidence.

Holmes contends that evidence of Theranos' remedial measures and settlements — including deals with the U.S. Securities and Exchange Commission, CMS, investors, Walgreens and Safeway — should all be excluded, because it is irrelevant to proving Holmes' liability and would be unfairly prejudicial.

Evidence of Holmes' luxury lifestyle, as well as a mountain of news articles about her and Theranos, are also irrelevant, Holmes told the court. But prosecutors argue that Holmes' deception was **motivated by money and fame**. They say she used the press to present misrepresentations and to "prime" her victims. Media articles from that time, the government says, show Holmes publicly made false statements to generate hype for the company and to lure investors.

Attorneys for Holmes also fought to keep out evidence that Theranos, at Holmes' direction, siloed information and used aggressive nondisclosure agreements to try to stop information about the company's problems from coming out.

Prosecutors highlighted for the court another exchange between Balwani and Holmes, sent on Oct. 21, 2015, the same day prosecutors say Holmes falsely told the Wall Street Journal that "Theranos never used commercially available lab equipment for finger-stick based tests."

In the message, Balwani tells Holmes, "Worried about your 'all fingersticks on our technology' comment."

If U.S. District Judge Edward Davila gives prosecutors the greenlight to put these and more of Holmes and Balwani's written exchanges before the jury, they could prove to be, as Rushovich said, "damning."

Counsel for the parties didn't respond to requests for comment on Tuesday.

The government is represented by John C. Bostic, Jeff Schenk, Robert S. Leach and Kelly I. Volkar of the U.S. Attorney's Office for the Northern District of California.

Holmes is represented by Lance A. Wade, Kevin M. Downey, Katherine Trefz, Amy Mason Saharia and Andrew P. Lemens of Williams & Connolly LLP, and John D. Cline.

The case is U.S. v. Holmes et al., case number 5:18-cr-00258, in the U.S. District Court for the Northern District of California.

--Editing by Nicole Bleier.

All Content © 2003-2021, Portfolio Media, Inc.