JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>　　　　Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL**<br><br>Date:　June 15, 2021<br>Time:　10:00 a.m.<br>CTRM:　4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY
QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

# **TABLE OF CONTENTS**

Page

I. The Ninth Circuit Requires Investigation into the Source, Content, and Effect of Media Exposure on Prospective Jurors in Cases of "Great Pretrial Publicity." ...................................................................................................................2

II. The Government's Decision to Pursue a Sprawling Case Requires Broader Inquiry into the Background, Life Experiences, and Perspectives of Jurors. ........................5

CONCLUSION.................................................................................................................................8

Ms. Holmes and the government agree that certain procedures are appropriate for jury selection in this case. First, the parties agree that an expanded distribution of summons is necessary. Gov't Opp'n ("Opp'n"), Dkt. 813 at 11. Second, the parties agree to meet and confer on the excusal of jurors for cause. *Id*. at 11-12. Third, the government agrees "in principle" that individual *voir dire* with counsel may be appropriate, but asks that the Court defer resolving this question. *Id*. at 12. Ms. Holmes respectfully maintains that the question of individual *voir dire* needs to be resolved now because, among other reasons, its logistics may require planning, particularly in light of the precautions taken by the Court during the COVID-19 pandemic. Finally, the government and Ms. Holmes' questionnaires contain nearly 50 identical, near-identical, or at least partially overlapping questions. *See* Appendix A.[1] Ms. Holmes hopes that the government will agree on the inclusion of some version of those questions prior to the pretrial conference.

Two categories of questions in Ms. Holmes' proposed questionnaire remain disputed: (1) those concerning media exposure and its effect; and (2) those concerning prospective jurors' life experience and perspectives, as they relate to core trial issues. Expanded questioning as to these two categories is necessary to screen for bias among prospective jurors, and to assure a fair trial.[2]

Where pretrial publicity is ample, *voir dire* should "inquire of the jury what information they [have] obtained relative to the case and their source of knowledge." *United States v. Silverthorne*, 400 F.2d 627, 639 (9th Cir. 1968). There is no question that this is such a case, with publicity that, unlike in almost all other corporate cases, has uniquely focused on Ms. Holmes personally. This requires investigation of jurors' media exposure, the content of that exposure, and its effects on the prospective jurors.

Second, questions concerning life experience and perspectives are necessary in order "to test the

---

[1] The government has proposed questions that are identical, nearly identical, or fall within the scope of the following of Ms. Holmes' proposed questions: ¶¶ 1-2, 4-6, 11-13. 16-17, 19-30, 33, 37-39, 41, 47, 49-50, 53-54, 69, 75-81, 83-85, 98-99, 103, 105, 110. The government has not proposed questions that materially overlap with the following of Ms. Holmes' proposed questions: ¶¶ 3, 7-10, 14-15, 18, 31-32, 34-36, 40, 42-46, 48, 51-52, 55-68, 70-74, 82, 86-97, 100-102, 104, 106-109, 111-112.

[2] Ms. Holmes would be happy to discuss her reasoning for each question in her questionnaire with the Court at the pre-trial conference.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

1

jury for bias or partiality." *United States v. Jones*, 722 F.2d 528, 529 (9th Cir. 1983). The Ninth Circuit has held that bias arises "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (citation omitted).[3] Ms. Holmes is entitled to explore the many "aspect[s] of the litigation" that the government has put at issue with its sweeping charges. *Id*. In addition, questions relating to jurors' perspectives are necessary to address "matters concerning which either the local community or population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact." *United States v. Burns*, 343 F. App'x 265, 2009 WL 2610791, at *1 n.3 (9th Cir. 2009).

That numerous such issues may arise at trial results from the government's choices, not Ms. Holmes'. *See infra* pp. 5-8. Its list of purported victim witnesses includes some of the world's wealthiest individuals, executives of large corporations, and venture capitalists. And the government has alleged a purported scheme involving a dizzying array of specialists: doctors, lawyers, accountants, journalists, military personnel, government workers, sophisticated investors, Ph.D's in chemistry, computer science, engineering, and biology, and more. Its exhibits include newspaper articles. In such a case, bias cannot be determined with a few summary questions.

**I.     The Ninth Circuit Requires Investigation into the Source, Content, and Effect of Media Exposure on Prospective Jurors in Cases of "Great Pretrial Publicity."**

In cases where "pretrial publicity is great," the Ninth Circuit requires inquiry into the sources, content, and effect of potential jurors' media exposure. *Silverthorne*, 400 F.2d at 637-39. The Court's examination during *voir dire* "must not be so general that it does not adequately probe the possibility of prejudice," nor can it "simply call for the jurors' subjective assessment of their own impartiality." *United States v. Giese*, 597 F.2d 1170, 1183 (9th Cir. 1979) (citation omitted). The government does

---

[3] In addition to implied bias based on a prospective juror's relationship to the subject matter of the case, *voir dire* questioning may reveal "actual bias" based on a juror's responses to specific questions. *Gonzalez*, 214 F.3d at 1112. "[P]ersonal experience" may be relevant to a determination of actual bias. *Id*.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

not dispute that this case triggers the requirements of this Ninth Circuit precedent.[4]  *See* Ms. Holmes' Request for Expanded Summons and Jury Questionnaire as well as Individual Voir Dire with Counsel ("Request"), Dkt. 799 at 3-6, 8-11.

Consistent with the case law, Ms. Holmes proposes questions relating to prospective jurors' media habits and potential exposure to coverage of Ms. Holmes, Theranos, and this case, as well as the effects of that exposure.  *See* Ms. Holmes' Proposed Questionnaire, Dkt. 808 ¶¶ 49-58 (Part IV: Media Exposure), ¶¶ 66-71 (Part VI: Familiarity with the Case).  The government concedes that some questioning about media habits, exposure, and effects is necessary.  Opp'n at 1; Gov't Proposed Questionnaire, Dkt. 802 ¶¶ 20-21; *see also id*. ¶¶ 42-43 (asking prospective jurors whether they have "heard or read anything about this case" and whether that "would affect how [they] judge the facts or the person accused").

Although the government concedes the principle that such media-related questions are necessary, its proposed questions are demonstrably inadequate.  First, they are substantially under-inclusive.  Examples that leap from the page include:

- The government asks about "main sources of news," but neglects to ask how frequently the prospective juror consumes those sources.

- The government does not ask about social media habits, despite the fact that many prospective jurors could rely on social media for their news (and the fact that social media are awash in negative content relating to Ms. Holmes).  *Cf*. 9th Cir. Model Jury

---

[4] In its responsive pleading, the government fails to address *Silverthorne* or its progeny, or even cite these cases.  Instead, the government (at 7-11) cites the three-part test that is used to resolve motions to transfer venue on the basis of presumed prejudice in a particular community—it does *not* set out the legal standard for determining the sufficiency of jury selection procedures.  *Compare United States v. Skilling*, 561 U.S. 358, 377-385 (2010) (applying three-factor test when reviewing the defendant's motion to transfer venue), *with id.* at 386-395 (assessing the adequacy of *voir dire* under a different standard in a different section of the opinion).  Although some facts may be relevant to the distinct questions whether an entire community is presumptively prejudiced (necessitating transfer) and whether particular jury selection procedures are adequate, these remain distinct legal questions.  For this reason, the government's test is inapplicable to the legal question at issue here and does not supersede or abrogate the long line of Ninth Circuit cases cited by Ms. Holmes.  Indeed, *Seattle Times Co. v. U.S. Dist. Court for W. Dist of Wash.*, 845 F.2d 1513 (9th Cir. 1988), cited four times by the government, involved a claim under the First Amendment to the public right of access to pretrial filings, not a challenge to jury selection procedures.

Instructions §§ 1.8, 2.1, 7.2 (model instructions that address social media use).[5]

- The government singles out financial news, just one of the types of media to have covered Ms. Holmes, Theranos, and this case in recent years, although other forms of media coverage are overwhelmingly negative. *See* Request at 2 n. 2; *id.* at 3-5.

Second, although the government recognizes the need to "prompt" prospective jurors, *see, e.g.,* Dkt. 802 ¶ 20 (listing forms of media), ¶ 21 (identifying particular type of news), its questions do not identify with specificity the sources and outlets responsible for negative coverage of this case, or journalists who have reported on this case for years. That information is essential for the Court and counsel to assess prospective jurors' past exposure (and potential exposure during trial) to prejudicial information, and therefore ascertain the presence or absence of bias. Although "general" questions may surface vague recollections on the part of prospective jurors, the case law deems such questions insufficient in cases involving "prejudicial pretrial publicity." *Giese*, 597 F.2d at 1183; *see also* Request at 9-10 & n.8 (explaining danger in failing to ask specific questions).

Third, the government's questions are poorly crafted. The government's principal media-related question merges three distinct inquiries into a single question—what type of media the prospective juror relies upon for news; what sites and stations he or she uses; and, on those stations, what programs he or she listens to or views. Having combined these three questions into one, the government demands a narrative response by the prospective juror. This sort of question is likely to cause confusion. Some jurors may respond generally about types of media, others may focus on sites or stations, while others may describe particular programs. Still others, confused by the question, will give a meager answer, and move on. These scattershot responses will not facilitate an informed meet-and-confer, or streamline *voir dire*.

By contrast, Ms. Holmes' questionnaire conducts the same basic inquiry into media habits and exposure, but does so in a more complete and cogent way. First, Ms. Holmes identifies the core

---

[5] *See* Declaration of Richard S. Cleary, Jr. in Support of Ms. Holmes' Reply in Support of Request for Expanded Summons and Jury Questionnaire as well as Individual Voir Dire with Counsel ¶ 2(a)-(e) ("2d Cleary Decl.") (summarizing searches of social media relating to Ms. Holmes, Theranos, and this case).

questions relating to media habits and exposure—where prospective jurors go for their news (and how often they do so), whether and how they use social media, their exposure to the particular journalists, sources, and publications that have covered the people and issues in this case, their general view on the veracity of media coverage, and any specific exposure to Ms. Holmes, Theranos, or her co-defendant, Mr. Ramesh "Sunny" Balwani, in the media. *See infra* p. 4.

Second, Ms. Holmes identifies particular journalists, sources, and publications in order to refresh the recollection of jurors, and focus their answers. *Id.* This is necessary in light of the vast but highly varied coverage of this case, and the fact that adverse coverage has been ongoing for nearly six years. But there are important, refined differences across these sources. Outlets have different readerships; the volume of pretrial coverage is higher in some than others; different outlets have focused on different features of the case; and some outlets are more inflammatory in tone, while others are prejudicial because they purport to provide "insider" accounts of the events at issue, much of which is contested and/or will be inadmissible at trial. Collecting this information will allow Ms. Holmes to ask, as necessary, informed follow-up questions at *voir dire* in order to assess how media coverage has affected the prospective jurors' views.

Third, although Ms. Holmes' questionnaire generally covers the same topics as the government's, Ms. Holmes has carefully delineated her questions, and asked them one-by-one. *See id.* Ms. Holmes' pinpointed questions will promote jurors' comprehension of the questionnaire, and streamline the meet-and-confer process and *voir dire*.

**II.    The Government's Decision to Pursue a Sprawling Case Requires Broader Inquiry into the Background, Life Experiences, and Perspectives of Jurors.**

The government has charged a sweeping case. As a consequence, the Court and counsel must investigate a broader swathe of jurors' backgrounds, life experiences, and perspectives than would otherwise be necessary. *See* Ms. Holmes' Proposed Questionnaire, Dkt. 808 ¶¶ 11-36 (Part II: Background), ¶¶ 37-48 (Part III: Life Experience), ¶¶ 59-65 (Part V: Nature of the Charges), ¶¶ 66-79 (Part VI: Familiarity with the Case), ¶¶ 80-112 (Part VII: Experience with Legal System).[6]

---

[6] Ms. Holmes also proposes standard and COVID-related questions in her questionnaire. Dkt.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

Two lines of Ninth Circuit case law guarantee Ms. Holmes' right to ask questions of this kind. First, the Ninth Circuit has held that the questions propounded during *voir dire* must be "reasonably sufficient to test the jury for bias or partiality." *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir. 1979). Because bias may arise from prospective jurors' relationship to issues at trial, *see Gonzalez*, 214 F.3d at 1112, a broadly charged case requires more extensive *voir dire*.[7] Second, when a case implicates "matters concerning which either the local community or the population at large is commonly known to harbor strong feelings" and which "may significantly skew deliberations," the Ninth Circuit has held that defendants are entitled to ask specific questions about those issues. *Burns*, 2009 WL 2610791, at *1 n.3; *see infra* pp. 7-8.

The breadth of the government's case is extraordinary. Start with the operative indictment, which discusses blood testing methods and technology, Dkt. 469 ¶¶ 12(A), 16; laboratories, *id.* ¶¶ 14, 17; financial modeling, *id.* ¶ 12(B); investing, *id.* ¶ 12(B)-(C), (G); solicitation of investments, *id.*; pharmacies, ¶ 12(D); various governmental agencies, *id.* ¶ 12(E)-(F); the federal regulatory approval processes, *id.* ¶ 12(F); pharmaceutical companies and research institutions in the United States and abroad, *id.* ¶ 12(H); public relations and media, *id.* ¶ 12(I); and medical practice and healthcare, *id.* ¶ 15.

The indictment is, of course, just the beginning. The government has subsequently produced three letters describing its anticipated evidence pursuant to Fed. R. Evid. 404(b), including one numbering 85 pages. *See* Dkt. 580 (Mar. 6, 2020 Ltr.); Dkt. 580-1 (Apr. 3, 2020 Ltr.), Dkt. 580-2 (Sept. 28, 2020 Ltr.). The most recent letter touches on, among others, the following topics not identified in the indictment: corporate governance, *id.* at 16-24; trade secrets, *id.* at 51-57; regulatory compliance, *id.* at 63-65; "industry standards and government rules regarding research and development procedures, medical devices and clinical laboratory practices," *id.* at 65-68; and computer science, information

---

808, ¶¶ 1-10.

[7] The Ninth Circuit has found bias based on prospective jurors' relatives' relationship to the subject matter at issue. *See Gonzalez*, 214 F.3d at 1113-14 (finding actual and implied bias in cocaine distribution case because juror's husband had engaged in drug dealing, and the juror admitted the experience was painful and was one reason for a subsequent divorce); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (implied bias in heroin distribution case when juror's sons were serving prison terms for heroin-related offenses). In a number of proposed questions, the government asks only about the experience of the prospective juror, implicitly excluding that juror's family and friends.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

technology, and data storage, *see id.* at 79-81.  And the government has noticed more than 175 witnesses and more than 4,500 exhibits for trial.

The government has proposed certain questions relating to a subset of subjects likely to arise at trial.  But (again) having conceded the principle that such questions are necessary, the government's proposal is under-inclusive, and therefore deficient.  For example:

- The government does not ask about jurors' training or professional experience with pharmacies, health insurance, corporate governance, regulatory compliance, or scientific research, despite asking about training in law, "business, finance, investing, medicine, medical devices, or blood or lab testing."  Gov't Proposed Questionnaire, Dkt. 802 ¶ 12.
- The government does not ask whether prospective jurors have ever worked for or applied to work for Theranos, despite asking whether they have invested in Theranos and used its blood-testing services.
- The government does not ask about specific funds, entities, or law firms that will appear in the case, despite asking whether prospective jurors know specific witnesses.[8]

The government also makes no effort to engage with matters about which prospective jurors may have strong opinions that could skew deliberations.[9]  *Burns*, 2009 WL 2610791, at *1 n. 3.  Those

---

[8] The government also does not ask certain routine questions about language proficiency, jurors' views on defendants' assertion of their Fifth Amendment rights, the presumption of innocence, the reasonable doubt standard, or whether prospective jurors would grant more credibility to the testimony of a law enforcement witness than to the testimony of others.  *See Baldwin*, 607 F.2d at 1297 (reversing conviction in part because district court refused to ask whether jurors would give greater or lesser weight to law enforcement witness); *Gonzalez*, 214 F.3d at 1111 (noting that defense counsel asked prospective jurors "whether anyone would have a problem following the reasonable doubt . . . instruction[]");*United States v. Hougen*, 20-cr-00432-EJD, 4/2/2021 Hr'g Tr. 72:21-73:7 (N.D. Cal.) (Court: "In our courts an accused has the right to remain silent and not testify. A defendant may choose to rely on the state of the evidence at the conclusion of the government's case and to present no evidence. Do each of you accept the defendant's right under the constitution to remain silent and thus choose not to testify? . . . Do you accept the defendant's right under the constitution to remain silent and not testify? Anyone who does not? . . . If Mr. Hougen relies on his right not to testify[,] will anyone hold that against him?"); *id*. at 157:19-160:3 (Court excusing juror for cause because of lack of language proficiency); *cf*. Ninth Circuit Model Instructions §§ 1.2, 3.2, 3.3 (rev. March 2021) (presumption of innocence and Fifth Amendment right not to testify).

[9] In recent pleadings, the government has referenced matters currently under seal.  *See* Gov't Opp'n at 2 n.1, 7, 12; *see also* Gov't Proposed Jury Instructions, Dkt. 804 at 1.  Ms. Holmes looks forward to discussing those issues with the Court in the appropriate forum.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

7

subjects include the "tech" community,[10] start-up companies,[11] investing and finance,[12] lobbying,[13] corporate executives,[14] and blood testing.[15] *See* Ms. Holmes' Proposed Questionnaire, Dkt. 808 ¶¶ 23, 37, 41-46, 59-64, 89-90.

For its part, Ms. Holmes' questionnaire inquires into jurors' experiences with and perspectives on the principal subject matters that the government has put at issue at trial, and asks direct questions about prospective jurors' opinions on particularly sensitive topics. *See supra* p. 5.[16] Absent expanded questioning on these subjects, the Court will lack "any reasonable assurances that prejudice would be discovered if present." *Baldwin*, 607 F.2d at 1298.

A more circumscribed questionnaire would be appropriate if a more reasonably circumscribed case had been charged. As it is, bias cannot be determined with a few summary questions based on a brief summary of some of allegations of the case and a few (seemingly randomly selected) of the dozens of topics that will arise at trial. Only Ms. Holmes's proposed questionnaire will help to ensure a fair jury with reasonable protection against later discovery of bias.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Ms. Holmes' Request for Expanded Summons and Jury Questionnaire as well as Individual *Voir Dire* with Counsel, Dkt. 799, this Court should grant Ms. Holmes' request.

---

[10] *E.g.*, 2d Cleary Decl., Ex. 54-55.

[11] *E.g.*, *id*. Ex. 55.

[12] E.g., *id.* Ex. 57.

[13] *E.g., id*. Ex. 59.

[14] *E.g., id*. Ex. 59-61.

[15] *E.g., id*. Ex. 58.

[16] Although Ms. Holmes believes that the possibility of bias on these and other subjects at trial is sufficiently high to entitle her to specific questioning, she would happily explain her reasoning for each question, and its purpose in identifying bias, at the pretrial conference. *See Jones*, 722 F.2d at 530.

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

| | |
|---|---|
| DATED: June 7, 2021 | Respectfully submitted,<br><br>/s/ Amy Mason Saharia<br>KEVIN DOWNEY<br>LANCE WADE<br>AMY MASON SAHARIA<br>KATHERINE TREFZ<br>Attorneys for Elizabeth Holmes |

MS. HOLMES' REPLY IN SUPPORT OF REQUEST FOR EXPANDED SUMMONS AND JURY QUESTIONNAIRE AS WELL AS INDIVIDUAL *VOIR DIRE* WITH COUNSEL
CR-18-00258 EJD

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021 a copy of this filing was delivered via ECF on all counsel of record.

          /s/ Amy Mason Saharia
          AMY MASON SAHARIA
          Attorney for Elizabeth Holmes