JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 | Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS**<br><br>Hon. Edward J. Davila |

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD

**TABLE OF CONTENTS**

Page

I. The Court Overlooked Key Evidence of Ms. Holmes' Attorney-Client Relationship with Boies Schiller. ....1

II. The Court Erred in Applying the *Graf* Test. ....4

CONCLUSION ....5

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD
i

Ms. Holmes respectfully submits, pursuant to Federal Rule of Criminal Procedure 59(a) and Local Civil Rule 72-2, the following objections to the June 3, 2012 Order ("Order") entered by Magistrate Judge Cousins, Dkt. 812, holding that Ms. Holmes lacks an individual claim of attorney-client privilege over 13 disputed documents.[1] The Order rests on legal errors and clearly erroneous factual findings that warrant correction. The foundational flaw in the Court's reasoning appears in the second line of its analysis. There, the Court framed the dispute before it as a "disagre[ement] on whether the Court should apply a subjective belief test or the *Graf* test" to evaluate whether Boies Schiller jointly represented Ms. Holmes and Theranos. Order at 3. That framing is incorrect: the *objective* record establishes that Boies Schiller jointly represented Ms. Holmes and Theranos, and the only issue in dispute is the scope of that joint representation. The *Graf* test does not answer that question. Under the Court's holding, *Graf* would supplant all rules for assessing co-client privilege when one of the clients is a corporation and another is an officer of that corporation. That is a novel and dangerous expansion of *Graf*, and, if affirmed, will foreclose the common practice of jointly representing corporations and corporate officers.

## I. The Court Overlooked Key Evidence of Ms. Holmes' Attorney-Client Relationship with Boies Schiller.

As an initial matter, Ms. Holmes need not rely on her subjective beliefs to establish that she was a Boies Schiller client over several years, and she has never advocated a "subjective belief" test. The objective fact that Ms. Holmes was a Boies Schiller client is irrefutable, as evidenced by the firm's appearance as counsel of record on her behalf in multiple legal proceedings. *See* Opp'n, Dkt. 619 at 2-4. The Court briefly acknowledged some of these facts, *see* Order at 1 ("In 2011, [Boies Schiller] began representing Holmes and Theranos in an intellectual property dispute."), while overlooking others, including Boies Schiller's continued personal representation of Ms. Holmes through 2014 in litigation in this Court and the District of Columbia and in 2016 in the District of Arizona, *see* Opp'n, Dkt. 619 at 2-

[1] The government's motion and reply are Dkt. 556 and 634; Ms. Holmes' opposition and supporting declarations are Dkt. 619; at argument on December 16, 2020, the Court ordered Ms. Holmes to make a sealed, *ex parte* submission of the 13 privileged documents and additional privileged materials supporting her position; Ms. Holmes made that sealed, *ex parte* submission on December 22, 2020.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD

1

4. The Court did not mention these undisputed, public representations in its analysis.

At the same time, the Court overstated Ms. Holmes' reliance on her own subjective belief in seeking to establish her privilege interests in the 13 documents. Ms. Holmes does not rely on her subjective belief alone. Her opposition acknowledged that a client's subjective belief must be objectively reasonable either to establish an attorney-client relationship or to mark its scope. *See* Opp'n, Dkt. 619 at 10 (citing authority for propositions that such belief must be "objectively reasonable under all the circumstances" and that courts consider a "number of factors" in that analysis (citations and internal quotation marks omitted)). The public representations spanning 2011-2014 and 2016 discussed above, along with other instances detailed in her opposition, declaration, and *ex parte* submission in which Boies Schiller attorneys advised her on all manner of topics, including those that impacted her personal rights, are *objective* evidence that reaffirms Ms. Holmes' subjective belief about the duration and scope of the Boies Schiller representation. This evidence indicates that Ms. Holmes' initial 2011 status as co-client did not change even as the scope of advice Boies Schiller offered grew over the years.

The Court cited two facts as purportedly weighing against Ms. Holmes' personal privilege interests: (1) the lack of an engagement letter; (2) Theranos' payment of Boies Schiller's fees. But the first supports the existence of a continuous joint-client relationship here and the second is not probative. First, "while written agreements limiting the scope of a joint representation might be preferable" to avoid later disputes like this one, "nothing requires this so long as the parties understand the limitations." *In re Teleglobe Comm'cns Corp.*, 493 F.3d 345, 363 (3d Cir. 2007). The absence of a writing specifying that the relationship was never joint, was no longer joint, or was joint only as to certain matters, justifies Ms. Holmes' belief (as a non-attorney) that her 2011 arrangement with Boies Schiller—which the Court itself characterized as the firm "representing *Holmes and Theranos* in an intellectual property dispute," Order at 1 (emphasis added)—had not changed. To those (like Ms. Holmes) unschooled in the federal common law of privilege, it would seem obvious that a change from a co-client relationship to one where the company was the sole client would require some form of notice. Boies Schiller never provided any such notice. Second, the Court erred in finding that Theranos'

payment of fees undermines Ms. Holmes' privilege claims. As Ms. Holmes explained, it is common for companies to pay legal fees in joint representations with their officers (whether or not under an indemnification agreement), *see* Dkt. 619 at 12 n.13, which is what occurred here, *see* 12/16/2020 Hr'g Tr. at 32-33. *See* Model R. Prof'l Conduct 1.7 cmt. [13] ("A lawyer may be paid from a source other than the client, including a co-client . . . .").

The Court overlooked this evidence supporting Ms. Holmes' understanding because it wrongly concluded that Ms. Holmes' intent was irrelevant to the inquiry. *See* Order at 3, 5. However, it has long been the rule, including in the Ninth Circuit, that an attorney-client relationship can arise based on a client's objectively reasonable understanding. *See, e.g.*, *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (objectively reasonable belief sufficient to establish attorney-client relationship); *accord Westinghouse Elec. Corp v. Kerr-McGee Corp.*, 580 F.2d 13311, 1319 (7th Cir. 1978) ("The professional relationship for purposes of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" (quoting McCormick on Evidence § 88 (2d ed. 1972)). This principle extends also to joint- or co-client representations, where a single attorney represents more than one client, with the slight modification that both the clients' and the attorney(s)'s subjective intent are relevant. *See, e.g.*, *FDIC v. Ogden Corp.*, 202 F.3d 454, 463 (1st Cir. 2000) (co-client relationship determined by evaluating clients' objectively reasonable beliefs); *see also In re Teleglobe*, 493 F.3d at 363 ("The keys to deciding the scope of a joint representation are the parties' intent and expectations, and so a district court should consider carefully (in addition to the content of the communications themselves) any testimony from the parties and their attorneys on those areas."). Here, the subjective intent of Boies Schiller lawyers is clear: they signed court pleadings on Ms. Holmes' behalf.

According to the Court, *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), uprooted this long-standing principle in any case where the co-clients are a corporation and a corporate executive, even where an attorney has represented both parties as joint clients. For the reasons set forth in the following section, that novel holding misunderstands the *Graf* rule and threatens significant consequences for the

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD

3

viability of co-client arrangements in this Circuit.

## II. The Court Erred in Applying the *Graf* Test.

The Court's holding that *Graf* applies was legal error. *Graf* concerned a problem not implicated here—namely, a situation where a company employee whom corporate counsel did not contemporaneously accept as a client later claims an implied attorney-client relationship with corporate counsel. The rule operates to limit this type of post hoc implied representation in such cases:

> [A]ny time a corporation retains counsel, counsel will have to talk to individual employees to represent the company effectively. The *Bevill* test responds to this reality by ensuring that a corporation is free to obtain information from its officers, employees, and consultants about company matters and then control the attorney-client privilege, waiving it when necessary to serve corporate interests.[2]

610 F.3d at 1160-61. Under *Graf*, then, even the officer's objectively reasonable belief will not suffice to claim a personal privilege. And even if she can satisfy the five-factor *Graf* test, she has no privilege claim over any communications relating to company affairs.

But *Graf*'s policy rationale, and the five-factor test that effectuates it, has no relevance where the officer and her company were actual co-clients of the same law firm at the outset of the representation. Applying *Graf* in that situation would destroy co-client representations. Because co-client representations are limited to situations where the clients' interests are aligned, *see, e.g.*, *Teleglobe*, 493 F.3d at 363, any privileged communications in that context necessarily would relate "to the company's business." Were *Graf* to apply, it would leave the individual co-client without any privilege interests. The Court's reading of *Graf* would preclude clients' ability knowingly to enter into these common arrangements. *See* Restatement (Third) of the Law Governing Lawyers § 131 (2000) ("For example, when an organization is accused of wrongdoing, an individual such as a director, officer, or other agent will sometimes be charged as well, and the lawyer representing the organization might be asked also to represent the individual."); *see also In re Ahlan Indus., Inc.*, 2020 WL 3620332, at *11-*12 (Bankr.

---

[2] *Bevill* refers to the Third Circuit's decision in *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120 (3d Cir. 1986), which set out the 5-factor test the Ninth Circuit adopted in *Graf*.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD

4

W.D. Mich. July 2, 2020) (finding that corporate entities and individual executives engaged in a "common legal effort to defend…litigation" were "clients" with unique privilege interests for purposes of their communications with legal counsel); *Voss v. Sutardja*, 2015 WL 349444, at *12 (N.D. Cal. Jan. 26, 2015) (permitting joint representation of company and officers at early stage of derivative suit and rejecting plaintiffs' arguments regarding conflicts).

The Court further erred in describing *Graf*'s facts as "analogous" and "parallel" to the present case. Order at 3-4. The only factual similarity the Court identified was that both Graf and Ms. Holmes were indicted for alleged fraud related to "the operation of a company." *Id.* at 3. That is where the similarities end. Critically, in *Graf*, none of the attorneys admitted to representing Graf in connection with company-related matters and one testified he "would have refused to represent Graf personally had he ever been asked." 610 F.3d at 1163.[3] A retainer letter from one firm named the company as the sole client. *See id.* at 1162-63. The record in *Graf* appears devoid of any objective evidence to support the existence of a true joint-client representation. As such, Graf's claims were subject to (and flunked) the five-part *Bevill* test to evaluate whether any personal privilege arose by implication during his interactions with company counsel.

This case could not be further from Graf's. As a longstanding client of Boies Schiller and a named co-plaintiff and co-defendant alongside Theranos in various matters, Ms. Holmes was undoubtedly a co-client. The only question is whether Ms. Holmes' belief as to the scope of that representation was objectively reasonable, a question that *Graf* does not answer.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in Ms. Holmes' Opposition, Dkt. 619, to the government's motion and on the record at the December 16, 2020 hearing, this Court should overrule Judge Cousins' Order and hold that Ms. Holmes holds a privilege in the 13 disputed documents.

---

[3] One of the two firms at issue previously represented Graf and a separate company on an unrelated matter, and the company's General Counsel represented Graf in family law, bankruptcy, and business matters before and after his tenure as General Counsel. *Id.* at 1162-64.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD

5

DATED: June 17, 2021

Respectfully submitted,

/s/ Lance Wade
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' OBJECTIONS TO ORDER GRANTING GOVERNMENT'S MOTION TO DETERMINE THAT DEFENDANT LACKS INDIVIDUAL PRIVILEGE INTERESTS IN DISPUTED DOCUMENTS
CR-18-00258 EJD
6

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Lance Wade
LANCE WADE
Attorney for Elizabeth Holmes