JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ELIZABETH HOLMES and <br> RAMESH "SUNNY" BALWANI, <br><br> Defendants. | Case No. CR-18-00258-EJD <br><br> **MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT** <br><br> Hon. Edward J. Davila |

**TABLE OF CONTENTS**

Page

I.  The Court Should Strike Dr. Master's Untimely New Expert Report. ............................................. 1

II. The Court Should Exclude Dr. Master's New Opinions under Rule 702 and *Daubert*.................. 4

III. The Court Should Exclude Dr. Master's Original Opinions on HIV, HbA1c, Calcium, and Chloride.................................................................................................................................. 7

Conclusion ................................................................................................................................. 7

The Court ordered a *Daubert* hearing to "assess the reliability of Dr. Master's methodology, which he employed to provide testimony and opinions about chloride, potassium, bicarbonate, HIV, HbA1c, hCG, cholesterol, calcium, and sodium" in his March 2020 expert disclosure. Dkt. 797 at 11; *see also* 5/5/2021 Hr'g Tr. at 17:21-22 (stating that Court would order a "*Daubert* hearing, for those particular topics"). In aid of that determination, the Court ordered the government to file "[a]ny supplemental material the Government plans to rely on at the hearing" by June 18, 2021. Dkt. 797 at 11.

The government apparently finds itself unable to defend the anecdotal methodology that Dr. Master employed in his expert disclosure that is the subject of the ordered *Daubert* hearing; indeed, Dr. Master has disavowed some of his earlier opinions and has failed to supplement others. The government did not file on June 18 "supplemental material" supporting Dr. Master's disclosed methodology. Instead, it filed a new expert report employing new methodologies that were not discussed in Dr. Master's initial disclosure and introducing new opinions on ten additional Theranos assays. Supplemental Report (Supp. Rpt.), Dkt 842-1, at 1-9. The government's disclosure of brand-new expert opinions on the eve of the planned *Daubert* hearing[1] and trial violates the scheduling order and the Court's *Daubert* order. The government cannot establish good cause for its delay. The Court should strike the new report.[2]

**I. The Court Should Strike Dr. Master's Untimely New Expert Report.**

Dr. Master's "supplemental" report is no mere supplement. It contains brand-new opinions. The report purports to employ new "sigma metrics" and/or "linear correlation coefficient" methodologies to three of the nine assays at issue in the Court's *Daubert* order (bicarbonate, hCG, and sodium).[3] Dr. Master did not discuss or even mention those methodologies in his original report, nor did the

---

[1] Given the complexity of the evidence that the defense will need to use at the *Daubert* hearing in light of Dr. Master's new opinions, the defense now believes that a remote hearing conducted by videoconference will not be possible. The parties are meeting and conferring about dates for an in-person hearing and will be in touch with the Court.

[2] Dr. Master's new opinions also fail Rule 702 and *Daubert* on their merits, although Ms. Holmes has not yet had sufficient time to prepare a *Daubert* motion. Ms. Holmes previews those arguments in Part II below.

[3] Ms. Holmes attaches as Appendix A a chart showing which new methodologies do or do not relate to the at-issue assays.

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

1

government discuss them in response to Ms. Holmes' *Daubert* motion. Applying the new methodologies, Dr. Master also adds new opinions for ten assays absent from his original disclosure (Vitamin B12, Estradiol, TSH, TT3, TT4, fT4, TST, Prolactin, SHBG, and tPSA). Supp. Rpt. at 8. The new report violates the scheduling order, Rule 16, and this Court's *Daubert* order and should be stricken. If Dr. Master is permitted to offer his untimely opinions, Ms. Holmes will have no choice but to move for a two-month continuance.

<u>*The scheduling order and Rule 16*</u>. Under the scheduling order negotiated by the parties and entered by the Court, the government's Rule 16 expert disclosure was due on March 6, 2020, which was then five months before the scheduled August 4, 2020 trial date. *See* Dkt. 171 (adopting schedule in Exhibit F to Status Report, Dkt 170-6); Dkt. 83. That deadline implemented the requirement that expert disclosures be provided "in a timely fashion" to avoid surprise and mitigate the need for continuances. Fed. R. Crim. P. 16 advisory committee note.

The government's new disclosure for Dr. Master is more than one year late. It comes less than two weeks before the court-ordered *Daubert* hearing, and only two months before trial. Ms. Holmes negotiated the pre-trial schedule to provide sufficient time to respond to expert opinions in this complex case. The introduction of untimely new expert opinions on the eve of trial will prejudice her defense. It is unrealistic to expect Ms. Holmes to cross-examine Dr. Master on his new opinions at trial in two months. Defense counsel have already diverted precious trial preparation time to understanding the new opinions and reviewing the 1,000 pages of cited material. That diversion of resources will continue; counsel will need to prepare a new *Daubert* motion targeting the new opinions. Ms. Holmes will need to re-consider whether to disclose her own responsive expert. And all this will need to occur during a time when counsel will lack ready access to their client.

The only appropriate remedy for the government's violation of the scheduling order is to strike the new report. *See United States v. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) ("[T]he court has inherent authority to enforce its specific discovery order, which the government would violate if it were to call undisclosed nonexpert witnesses."); Fed. R. Crim. P.16 (d)(2) (providing that when a party fails to comply with Rule 16, including a court order, the court may, as relevant here, "(B) grant a continuance;

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

2

1  (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is
2  just under the circumstances"). In determining which sanction to employ in cases of untimely
3  government disclosures, "the Court should typically consider three factors: '(1) the reason for the
4  government's delay in production; (2) the extent of prejudice to the defendant as a result of the delay;
5  and (3) the feasibility of curing the prejudice with a continuance.'" *United States v. Yagi*, 2013 WL
6  10570994, at *16 (N.D. Cal. Oct. 17, 2013) (excluding expert testimony when government failed to
7  serve timely disclosures).

8       Each factor favors striking the report. The government offered no reason for its delay, and none
9  exists. Nearly every document on which Dr. Master bases his new opinions has been in the
10 government's possession for years. The government apparently provided the documents to Dr. Master
11 on May 26, 2021, Declaration of Amy Mason Saharia (Saharia Decl.), Ex. A. (5/26/2021 Email from Dr.
12 Master to R. Leach), following the Court's *Daubert* order and at a time when the government was
13 resisting the defense's efforts to schedule a prompt *Daubert* hearing, Saharia Decl. Ex. B (6/5/2021
14 Email from R. Leach to L. Wade).

15      Nor does Dr. Master provide any reason for his failure to identify his new methodology in his
16 initial disclosure. Dr. Master states that sigma statistics "were first introduced into laboratory medicine
17 in the early 1970s in a paper by Dr. James Westgard" and "thus, they have a long and well-established
18 role in laboratory medicine analytics." Supp. Rpt. at 2. If that is so, there is no excuse for Dr. Master's
19 failure to apply this methodology in his first report. The same is true for his new linear correlation
20 coefficient analysis. Dr. Master explains that he applied this analysis using Theranos' validation reports,
21 Supp. Rpt. at 1, but, contrary to Dr. Master's assertion, those are not "newly available" documents, *id*. at
22 4. The government has long had these documents. And, in the Appendix to his original report, Dr.
23 Master cited several validation reports including US-FDA-0024744 (chloride), US-FDA-0024797
24 (potassium), and US-FDA-0024827 (sodium). Initial Dr. Master Rpt., Dkt. 580-5, at 49 (Mar. 6, 2020);
25 *see also* Saharia Decl., Ex. C (USAO-006934), but nonetheless did not mention this methodology in his
26 initial disclosure.

27      As already explained, the government's untimely disclosure, if permitted, will prejudice Ms.
28

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

3

1  Holmes.  But a continuance also would prejudice Ms. Holmes.  Ms. Holmes has been diligently
2  preparing for trial based on the current trial date, and delaying the trial by two months would push the
3  trial into the holiday period and likely reduce the number of available jurors.  The only appropriate
4  remedy is to strike the report and exclude all opinions therein.  *See United States v. Valdez*, 2019 WL
5  539074, at *2 (N.D. Cal. Feb. 11, 2019) ("The plain purpose of Rule 16 is to prevent exactly the
6  situation threatened here— a defendant facing imminent trial without an adequate opportunity to prepare
7  for evidence that the government intends to use against him.").  As referenced above, absent such relief,
8  Ms. Holmes will be forced to move for a two-month continuance to attempt to mitigate the resulting
9  prejudice.  *See United States v. Kloehn*, 620 F.3d 1122, 1127-29 (9th Cir. 2010) (explaining four-factor
10 inquiry for continuance).

<u>*The Court's Daubert ruling.*</u>  The new report also violates the Court's *Daubert* ruling and should be stricken for that additional reason.  The Court ordered a *Daubert* hearing to "assess the reliability of Dr. Master's methodology, which he employed to provide testimony and opinions about chloride, potassium, bicarbonate, HIV, HbA1c, hCG, cholesterol, calcium, and sodium" in his March 2020 disclosure.  Dkt. 797 at 11.  Dr. Master's new report does not identify supplemental material supporting the methodology (if any) that he employed in the disclosure that is the subject of the pending *Daubert* motion.  As already discussed, it instead discloses brand-new methodologies and new opinions on ten different assays.  No reasonable interpretation of the Court's order permits the government to disclose brand-new methodologies and opinions.

**II.     The Court Should Exclude Dr. Master's New Opinions under Rule 702 and *Daubert*.**

Ms. Holmes has not had sufficient time to prepare a *Daubert* motion targeting Dr. Master's new opinions.  Nonetheless, Ms. Holmes expects that the evidence at the *Daubert* hearing will reveal substantial flaws in Dr. Master's new opinions that preclude their admission.  Ms. Holmes offers the following preliminary thoughts:

1.     Although Dr. Master focuses his new report on "sigma metrics" and/or "linear correlation coefficient" methodologies, he does not appear to actually apply those methodologies to most of the nine assays at issue in the Court's *Daubert* order.  He applies those methodologies only to three of the nine

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

4

assays. *See* App. A. He provides no justification for his failure to apply these methodologies to the remaining six assays.

2. Dr. Master does not establish the validity of the metrics on which he is basing his calculations. He appears to have plucked metrics out of Theranos documents and input them into his calculations without explaining how he chose which metrics to use. For example, he identifies various $R^2$ values that he found in Theranos documents in his report, but does not explain why he chose these $R^2$ values instead of others, or why he used values calculated on one date but not on other dates.

3. Dr. Master's claim that sigma statistics "have a long and well-established role in laboratory medicine analytics," Supp. Rpt. at 2, appears suspect, as we will develop at the hearing.

4. Dr. Master's lack of access to the underlying data precludes him from establishing the reliability of his calculations. Dr. Master's new calculations rest on inputs that he did not calculate. For example, sigma calculations involve two levels of calculations. First, one must calculate metrics such as bias and imprecision from raw Theranos data. Then, those calculated metrics are input into the sigma calculation. Dr. Master does not have the raw data. As a result, as he acknowledges, he cannot independently conduct the first level of calculations. Supp. Rpt. at 4. Instead, he conducted only the second level of calculations using as inputs "the company's own stated TEa, bias, and imprecision." *Id.* In other words, he is relying on inputs calculated by Theranos scientists. The government has not explained how it intends to establish the reliability of the inputs into Dr. Master's calculations, as it has not disclosed any other expert testimony from Theranos scientists on this subject.

Although an expert may "present the findings and conclusions of those whose work he or she supervised and that he or she could personally replicate if necessary," an expert cannot simply summarize another witness's data. *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017). Dr. Master did not supervise Theranos scientists, and he cannot replicate their analysis because he does not have the raw data. He is simply parroting their calculations. *See Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *12 (N.D. Cal. Aug. 22, 2016) ("Rule 703 . . . does not permit an expert to simply parrot the opinions of another expert").

Anticipating this defect, Dr. Master states that he is "confident that [his] conclusions are not

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

hampered by a lack of access to adequate data" because his sigma calculations are "similar" to calculations described by Dr. Kingshuk Das, Theranos' former laboratory director, in a government interview on February 21, 2021. Ex. D (US-REPORTS-0024149).[4] That observation misses the point. Dr. Master cannot blindly input into his mathematical formula metrics calculated by others that rest on data to which Dr. Master lacks access. Dr. Master does not know what the data is, how it was gathered, and whether it was reliably calculated. A qualified expert needs to establish the reliability of the inputs into Dr. Master's formulas. The government has disclosed no expert who can do that. Dr. Master's new calculations are an unreliable and unsupported attempt to replicate Dr. Das' 2016 analysis.

5. In his "Additional Remarks," Dr. Master provides yet additional new opinions. Supp. Rpt. at 9. He remarks that "Theranos knew or should have known that results from fingerstick samples obtained using the Theranos collection device were completely inappropriate for clinical use." *Id.* Similarly, he remarks that based on review of data for the ten new assays he believes there was a pervasive problem with the Edison 3.5 platform. *Id.* These opinions fail *Daubert* for the following additional reasons.

First, Dr. Master fails to explain why his opinion is tied to the Theranos collection device. He does not review any collection device data nor explain how any data shows that use of the collection device—as opposed to other factors—caused any of supposed problems on which he opines. *Id.* Relatedly, he does not disclose any methodology he applied to reach this opinion.

Second, Dr. Master's opinion about what Theranos "knew or should have known" is impermissible because experts cannot permissibly express views as to someone else's knowledge, intent, or purpose. *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *Lofton v. McNeil Consumer & Specialty Pharmaceuticals*, 2008 WL 4878066, at *6-7 (N.D. Tex. July 25, 2008) (opinions "regarding Defendants' ethical obligations, motive, state of mind, asserted

---

[4] Dr. Das cannot testify to any opinions he reached based on this analysis because the government has not noticed him as an expert. For a fact witness to testify about opinions based on their expertise, the offering party must abide by the disclosure requirements of Fed. R. Crim. P. 16. *See* Fed. R. Evid. 701 advisory committee's notes to the 2000 amendment.

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

6

knowledge, and alleged conduct" excluded as "personal opinions or legal conclusions based on Defendants' alleged behavior").

Finally, Dr. Master's remark about "a pervasive problem" with the Edison 3.5 is outside the scope of the Court's *Daubert* order because it rests on Dr. Master's opinions about the ten new assays. Ms. Holmes moved to exclude Master's opinion regarding "problems with the Edison" in her *Daubert* motion, Dkt. 560 at 17-19, 23-24, and the government failed to respond to that argument in its opposition, Dkt. 668; *see also* Reply In Support of *Daubert* Motion, Dkt. 704 at 12, 14-15. The government cannot revive this waived opinion.

### III. The Court Should Exclude Dr. Master's Original Opinions on HIV, HbA1c, Calcium, and Chloride.

For independent reasons, the Court should exclude Dr. Master's opinions on HIV, HbA1C, calcium, and chloride. Dr. Master has not provided any additional evidence or analysis to support his opinions on HIV and HbA1C. *See* Supp. Rpt. at 8 ("I have no additional information on Theranos HIV or Hba1c testing, and nothing to add to my original report."). What is more, he has disavowed his prior opinions for calcium and chloride. *See id.* (stating that the data for calcium and chloride show the assays were, respectively, operating "reasonably consistent with other clinical assays with respect to precision and stability" and in their "operational behavior"). The Court should exclude Dr. Master's (prior) opinions on these four assays without a *Daubert* hearing.

### CONCLUSION

For the foregoing reasons, the Court should strike the Supplemental Report, exclude Dr. Master's prior opinions on HIV, HbA1c, calcium and chloride, and proceed with a *Daubert* hearing on the remainder of the topics referenced in the Court's Order. Dkt. 797 at 11.

| | | |
|---|---|---|
| 1 | DATED: June 25, 2021 | Respectfully submitted, |

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
CR-18-00258-EJD

8

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL EXPERT REPORT
18-CR-00258-EJD