1   STEVEN D. ZANSBERG (SBN 177528)

2   Law Office of Steven D. Zansberg, LLC
    100 Fillmore Street, Suite 500
3   Denver, Colorado 80206
    Phone Number (303) 385-8698
4   Fax Number: (720) 650-4763
    Email:  steve@zansberglaw.com
5
    Attorney for Proposed Intervenor Dow Jones and Co.
6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12   UNITED STATES OF AMERICA          Case No. 18-cr-00258-~~EDJ~~  EJD
                      Plaintiff,
13                                      **MOTION OF DOW JONES & COMPANY,**
                  v.                    **INC. TO INTERVENE FOR LIMITED**
14                                      **PURPOSE OF SEEKING TO UNSEAL**
                                        **JUDICIAL RECORDS IN THE COURT'S**
15   ELIZABETH HOLMES and              **FILE, INCLUDING THE DOCKET;**
     RAMESH "SUNNY" BALWANI,           **MOTION TO UNSEAL JUDICIAL**
16                                      **RECORDS**
                   Defendants.
17
                                        Date: August 9, 2021
18                                      Time: 10:00 a.m. (Status Hearing Only)
                                        Courtoom: 4, 5th Floor
19                                      Hon. Edward J. Davila

20

21

22

23

24

25

26

27

28   DOW JONES AND COMPANY'S MOTION TO INTERVENE          CASE NO. 18-CR-00258-EJD
     FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
     JUDICIAL DOCUMENTS
                              - 1 -

**FILED**

Jul 30 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1

2

### DOW JONES AND COMPANY INC.'S  MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING TO UNSEAL JUDICIAL DOCUMENTS AND MOTION TO UNSEAL

3

4

5

6

7

8

9

10

PLEASE TAKE NOTICE that on August 9, 2021 at 10:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Dow Jones and Company, Inc. will and hereby does respectfully move the Court to allow it to intervene for the limited purpose of being heard in support of its Motion to Unseal Judicial Documents in the case file. The Motion is based on the below Memorandum of Points and Authorities, the Declaration of Steven D. Zansberg and accompanying exhibits, the record in this case, and any other matters that the Court deems appropriate.

11

DATED: July 28, 2021.          /s/ Steven D. Zansberg

12

13

STEVEN D. ZANSBERG
Attorney for Dow Jones and Company, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………3

TABLE OF AUTHORITIES…………………………………………………………4

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………6

FACTUAL AND PROCEDURAL BACKGROUND…………………………………6

ARGUMENT…………………………………………………………………………10

    I.    Dow Jones & Company Has Standing To Be Heard……………………….....10

    II.    Any Party Who Seeks to Maintain the Sealing of Judicial Records in This Case, Including the Docket, Bears a Heavy Burden of Proof………………...……11

    III.    No Showing Has Been Made, Nor Can Be Made, to Maintain the Sealing of the Judicial Records That Are the Subject of This Motion to Unseal……….16

        A.    At Present, the Court's Docket Unjustifiably Denies the Public Its Right to Monitor the Criminal Justice Process in This Case……….……16

        B.    The Pleadings [And, if Any Hearing Was Held, The Transcript Thereof] in Connection With the Defendants' Motion to Sever Must Be Unsealed ……………………………………………….……19

        C.    All Pleadings, as Well as the Transcript of the Closed Judicial Proceeding, in Connection With the Government's Motion to Order an Evaluation of the Ms. Holmes Pursuant to Fed. R. Crim. P. 12.2(c)(1)(B) Must Be Unsealed……………………………………..21

CONCLUSION………………………………………………………………………..22

CERTIFICATE OF SERVICE…………………………………………………....24

DOW JONES AND COMPANY'S MOTION TO INTERVENE      CASE NO. 18-CR-00258-EJD
FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
JUDICIAL DOCUMENTS

- 3 -

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                                    <u>**Page(s)**</u>

*Assoc. Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 705 F.2d 1143 (9th Cir. 1983). ...... 10,11,15, 19

*Brandt v. Medical Defense Assocs.*, 856 S.W.2d 667 (Mo. 1993) .................................................... 22

*Bus. of Custer Battlefield Museum*, 658 F.3d at 1195 .................................................................... 15

*CBS, Inc. v. U.S. Dist. Ct.,* 765 F.2d 823, 825 (9th Cir. 1985) ............................................... 10, 13

*Clark v. Dist. Ct,* 668 P.2d 3, 10 (Colo. 1983)............................................................................... 22

*Courthouse News Serv. v. Planet,* 750 F.3d 776 (9th Cir. 2014) ..................................................... 15

*Courthouse News Serv. v. Planet,* 947 F.3d 581 (9th Cir. 2020)............................................... 13, 15

*Doe v. Pub.Citizen,* 749 F.3d 246  (4th Cir. 2014) ....................................................................... 15

*Doe v. Public Citizen,* 749 F.3d 246 (4th Cir. 2014) ....................................................................... 17

*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596 (1982) ........................................................ 11

*Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994)..................................... 16

*Hartford Courant Co. v. Pellegrino,* 380 F.3d 83 (2d Cir. 2004)............................................... 16, 17

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ........................................................ 10,12, 21

*In re Knoxville News-Sentinel Co.,* 723 F.2d 470 (6th Cir. 1983)................................................... 18

*In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987) .............................................................. 15

*In re State-Record Co.,* 917 F.2d 124 (4th Cir. 1990)…………………………………………. 17

*Kamakana v. City and County of Honolulu,* 447 F.3d 1172 (9th Cir. 2006)....................... 13, 21, 22

*Konig v. Cerro,* No. C-04-2210 MJJ (N.D. Cal. Mar. 11, 2009)................................................... 11

*Leopold v. U.S. (In re Leopold),* 964 F.3d 1121 (D.C. Cir. 2020)................................................. 18

*Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110 (2d Cir. 2006)............................................. 15

*Nixon v. Warner Commc'ns, Inc.* , 435 U.S. 589 (1978) ............................................................. 14

*Oregonian Publ'g Co. v. U.S. Dist. Ct.,* 920 F.2d 1462 (9th Cir. 1990) ............................. 10,12, 14

*Ottawa Office Integ. Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215 (S.D.N.Y. 2001) ............. 22

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.,* 156 F.3d 940, 950 (9th Cir. 1998)................... 10, 14, 20

*Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1 (1986) ................................................................... 12, 13

*Press-Enter. Co. v. Super. Ct* 464 U.S. 501 (1985) .................................................................. 11, 13

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980)........................................... 11, 12

*San Jose Merc. News, Inc. v. U.S. Dist. Ct. for N. Dist. of Cal.,* 187 F.3d 1096 (9th Cir. 1999) ..... 10

*Seattle Times Co. v. U.S. Dist. Ct.* 845 F.2d 1513, 1517 (9th Cir. 1988) .................................... 10

*State v. Easterling*, 137 P.3d 825 (Wash. 2006) ............................................................................ 20

*State v. Turrentine*, 730 F.2d 238 (Ariz. Ct. App. 1986) ............................................................. 22

*Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178 (4th Cir. 1988) ........................................ 18

*Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989) ........................................................... 10

*Unabom Trial Media Coalition v. U.S. Dist. Ct. for the E. Dist. of Cal.*, 183 F.3d 949 (9th Cir. 1999) ........................................................................................................................................ 10

*U.S. v. Aguilar*, No. 2: 15-cr-041-GEB (E.D. Cal. Nov. 13, 2017) .............................................. 14

*U.S. v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982)..…………………………………………. 10, 14

27

28

*U. S. v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188 (9th Cir. 2011) ............... 12

*U.S. v. Carpenter*, 923 F.3d 1172 (9th Cir. 2019) ............................................................ 13

*U.S. v. Doe*, 870 F.3d 991 (9th Cir. 2017) ....................................................................... 13

*U.S. v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014)…………..10, 13,14,16, 17, 20, 21

*U.S. v. Kaczynski*, 154 F.3d 930 (9th Cir. 1998)................................................... 10, 21, 22

*U.S. v. Morales*, No. 2:13-cr-00335-GEB (E.D. Cal. Apr. 6, 2016).................................... 17

*U.S. v. Pickard*, 733 F.3d 1297 (10th Cir. 2013) ............................................................ 15

*U.S. v. Sattar*, 471 F. Supp. 2d 380 (S.D.N.Y. 2006) ..................................................... 21

*U.S. v. Schlette*, 842 F.2d 1574 (9th Cir. 1988) ......................................................... 10,12

*U.S. v. Sleugh*, 896 F.3d 1007 (9th Cir. 2018) .......................................................... 12, 13

*U.S. v. Valenti*, 987 F.2d 708 (11th Cir. 1993) .............................................................. 17

*Valley Broad. v. U. S. Dist. Ct.*, 798 F.2d 1289 (9th Cir. 1986) ....................................... 10

*Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991).......................................... 17

*Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.,* 898 F.2d 1371 (8th Cir. 1990) ........................ 18

## **Rules**

Fed. R. Civ. P. 12.2 ..........................................................................................6, 9, 21, 22

Fed. R. Cr. P. 8.............................................................................................................. 8, 20

N.D. Cal. Crim. L.R. 56.1(b) ...................................................................................... 11

N.D. Cal. Crim. L.R. 56-1(c) ....................................................................................... 15

## **Other**

John Carreyrou, *Hot Startup Theranos Has Struggled With Its Blood-Test Technology*, Wall St. J.,
    (Oct. 16, 2015)……………………………………………………………………… 6,7

Chance Conner & George Lane*, Experts Warn of 1-Trial Problem*, Denver Post (Oct. 3, 1996)… 20

Chance Conner, *Issue of Two Trials Comes To Head,* Denver Post (Oct. 2, 1996) ...................... 19

George Lane, *McVeigh, Nichols Get Separate Trial,* Denver Post (Oct. 26, 1996) ....................... 20

*Ron Leuty, Theranos Adds Kovacevich to All-Sar Board*, San Fran. Bus. Times (Aug. 2, 2013) . . . 7

Jeffrey Ng, *Theranos to Appeal Regulatory Sanctions*, Wall St. J. (Aug. 26, 2016)……………… 7

Jo Thomas, *Two Suspects in Oklahoma City Bombing Seek Separate Trials*, N.Y. Times
    (Sept. 8, 1996)……………………………………………………………………… 19

Chris Weaver, *Agony, Alarm and Anger for People Hurt by Theranos's Botched Blood* Test, Wall
    St. J. (Oct. 20,  2016)……………………………………………………………… 6

DOW JONES AND COMPANY'S MOTION TO INTERVENE        CASE NO. 18-CR-00258-EJD
FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
JUDICIAL DOCUMENTS

- 5 -

## MEMORANDUM OF POINTS AND AUTHORITIES

Dow Jones & Company, Inc. ("Dow Jones"), publisher of *The Wall Street Journal*, by and through its undersigned counsel, respectfully moves this honorable Court for leave to intervene for the limited purpose of seeking access to judicial records that are on file in this Court but are presently under seal, without the requisite findings having been entered. Among the documents Dow Jones asks the Court to unseal forthwith are (1) the Docket, in which roughly 40% of all entries presently lack any identifying information (appearing only as "Sealed Document"), (2) all pleadings associated with the Defendants' motion to sever their trials, and (3) all pleadings and the closed hearing transcript associated with the Government's motion for a psychological evaluation of Defendant Elizabeth Holmes pursuant to Fed. R. Cr. P. 12.2(c)(1)(B).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants Elizabeth Holmes, the founder and former Chief Executive Officer of Theranos, Inc., and Ramesh "Sunny" Balwani, Theranos' former President, have been charged with twelve felony counts. Reporting in *The Wall Street Journal* has played a significant role in questioning the public-facing representations that the company, then valued at $9 billion, had made in marketing its services. *See, e.g.,* John Carreyrou, *Hot Startup Theranos Has Struggled With Its Blood-Test Technology*, The Wall St. J., (Oct. 16, 2015), https://www.wsj.com/articles/theranos-has-struggled-with-blood-tests-1444881901. Starting in 2013, Theranos, under Defendant's leadership, garnered a significant amount of media attention, including from its own press releases touting (among other things) that its board of directors included former U.S. Secretaries of State George Shultz and Henry Kissinger, former U.S. Secretary of Defense William Perry, former U.S. Senator Sam Nunn, and retired four-star Marine General James ("Mad Dog") Mattis. *See* https://news.theranos.com/2013/07/29/theranos-announces-new-members-of-its-board-of-directors; *see also Ron Leuty, Theranos Adds Kovacevich to All-Sar Board*, San Francisco Bus. Times (Aug.

1  2,      2013),      http://www.bizjournals.com/sanfrancisco/print-edition/2013/08/02/theranos-adds-
2  kovacevich-to-allstar.html.

3         Starting in October 2015, *The Wall Street Journal* published a series of articles reporting
4  that Theranos's technology did not work as advertised, that the Company tried to cover up its
5  failures, and that patients' lives had been turned upside down and their health jeopardized. *See, e.g.,*
6  John Carreyrou, *Hot Startup Theranos Has Struggled With Its Blood-Test Technology*, Wall St. J.,
7  (Oct. 16, 2015); Chris Weaver, *Agony, Alarm and Anger for People Hurt by Theranos's Botched*
8  *Blood Tests*, Wall St. J. (Oct. 20,   2016), https://www.wsj.com/articles/the-patients-hurt-by-
9  theranos-1476973026.      In the wake of that reporting, Theranos and its two principals were
10 formally sanctioned by the Centers for Medicare and Medicaid Services ("CMS") at the Food and
11 Drug Administration. *See* Jeffrey Ng, *Theranos to Appeal Regulatory Sanctions*, Wall St. J. (Aug.
12 26,  2016),  https://www.wsj.com/articles/theranos-to-appeal-regulatory-sanctions-1472243735.  In
13 October 2016, Theranos announced it would close its clinical labs and refocus its resources on
14 developing a miniaturized blood-testing device to sell to third parties. *See* Press Release, Theranos,
15 "An      Open      Letter      From      Elizabeth      Holmes,"      (Oct.      5,      2016),
16 https://news.theranos.com/2016/10/05/an-open-letter-elizabeth-holmes/.   In April 2017, Theranos
17 reached a settlement with CMS, affirming that, consistent with its new business plans, it would not
18 own, operate, or direct any clinical labs for two years. *See* Christopher Weaver, *Theranos Agrees*
19 *Not  to  Operate  Blood  Lab  for  Two  Years,* Wall  St.  J.  (Apr.  17,  2017),
20 https://www.wsj.com/articles/theranos-agrees-not-to-operate-blood-lab-for-two-years-1492472259.
21 Also in April 2017, Theranos announced a settlement with the Arizona Attorney General, agreeing
22 to reimburse $4.65 million to Arizona consumers for all the amounts they paid for blood testing
23 services between 2013 and 2016. *See* Press Release, Theranos, "Theranos, Arizona Attorney
24 General  Reach  Agreement  on  Full  Restitution  to  State  Consumers,"  (Apr.  18,  2017),
25 https://www.businesswire.com/news/home/20170418006032/en/Theranos-Arizona-Attorney-
26 General-Reach-Agreement-on-Full-Restitution-to-State-Consumers.

27
28

On March 14, 2018, the U.S. Securities and Exchange Commission charged Defendants with having deceived investors by "massive fraud" through false or exaggerated claims about the accuracy of the company's blood-testing technology; Holmes settled the charges by agreeing to pay a $500,000 fine, return 18.9 million shares to the company, and relinquish her voting control of Theranos, as well as agreeing to be barred from serving as an officer or director of any public company for ten years. *See* SEC, Press Release: *Theranos, CEO Holmes, and Former President Balwani Charged With Massive Fraud* (Mar. 14, 2018),   https://www.sec.gov/news/press-release/2018-41.

In June 2018, a federal grand jury indicted Defendants on nine counts of wire fraud and two counts of conspiracy to commit wire fraud for distributing blood tests with falsified results to consumers. *See* Dkt. No. 1.

On some unknown date, the two co-Defendants filed a joint motion to sever their trials. The only document appearing on the court's public docket that contains the word "sever" is the Order granting that motion, Dkt. No. 362. *See* **Exhibit 1** (copy of court's docket). Presumably the Government filed a Response to the motion seeking severance of the two Defendants' trials, and presumably, the Defendants filed a Reply in support of their motion. It is unknown, from the Court's docket and from the order granting the motion to sever (Dkt. No. 362) whether any hearing was conducted regarding that motion. Nor does the Order granting the Defendants' motion (Dkt. No. 362) provide the Court's reasons for granting the motion. Not only are all of the aforementioned substantive pleadings that formed the basis for the Court's ruling completely under seal, they do not even appear (in any identifiable form) on the Court's docket. *See* **Exhibit 1.** On information and belief, subsequent to the Court's order granting the motion to sever the two Defendants' cases, the Government moved to have the two cases re-joined together pursuant to Fed. R. Cr. P. 8, the Defendants filed a Response to that motion, the Government filed a Reply in support of it, and, presumably, the Court entered an Order denying the Government's motion. None of those events are identified on the Court's public docket.

On December 16, 2019, the Defendant Holmes notified the Government that she intends "to introduce expert evidence [of Dr. Mindy Mechanic]  relating to a mental disease or defect or any other mental condition of the defendant bearing on . . .  the issue of guilt." Dkt. No. 507 at 1. Accordingly, on March 31, 2020 the Government filed a motion asking the Court, pursuant to Fed. R. Cr.. 12.2(c)(1)(B), to order Ms. Holmes to submit to an independent psychological evaluation. *Id.* at 2 (referring to Dkt. No. 382).  On June 8, 2020, Ms. Holmes filed her Response in opposition to Government's motion.  *Id.* (referring to Dkt. No. 414).  On June 15, 2020, the Government filed a Reply in support of its Motion.  *Id.* (referring to Dkt. No. 431).  On July 14, 2020, the Court conducted a hearing, closed to the public, on the Government's motion and granted it from the bench.  *Id.* (referring to Dkt. No. 444).  In its written ruling explaining the grounds for granting the Government's motion, and outlining the procedures for the independent mental health examination (Dkt. No. 507), the Court disclosed that the Government would divide the "14 hours of examination across two experts [Dr. Martell, a psychologist, and Dr. Binder, a psychiatrist] instead of using a single expert." Dkt. No. 507 at 5 (referring to Declaration of Dr. Binder, Dkt. No. 432, and Declaration of Dr. Martell, Dkt. No. 434).

On information and belief, subsequent to the entry of the Court's order (Dkt. No. 507), the Government has sought to exclude the testimony of the expert witness retained by Ms. Holmes (Dr. Mechanic), the Defendant has responded to that motion, the Government has replied, and, presumably the Court has ruled on the Government's motion.  None of those filings are identified in the Court's public docket.  In addition, none of the aforementioned judicial documents (Dkt. Nos. 382, 383, 414, 431, 432, 434, or 444), which are all specifically referenced in the Court's order granting Dkt. 382, the Government's earlier motion, appears on the Court's docket in a manner that informs the public about their substance; instead, they are all identified on the Court's docket merely as "Sealed Document."  *See* **Exhibit 1** to Declaration of Steven D. Zansberg.

## ARGUMENT

### I.      Dow Jones & Company Has Standing To Be Heard

As discussed further below, the United States Court of Appeals for the Ninth Circuit has, on numerous occasions, recognized the right of the press to be heard (on equal, but no greater footing, than any other member of the public) with respect to any order that closes a judicial proceeding or seals a judicial document on file in a criminal case.  *See, e.g., U.S. v. Brooklier*, 685 F.2d 1162, 1172 (9th Cir. 1982); *Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 705 F.2d 1143, 1145 (9th Cir. 1983). *CBS, Inc. v. U.S. Dist. Ct.,* 765 F.2d 823, 825 (9th Cir. 1985); *Valley Broad. v. U. S. Dist. Ct.*, 798 F.2d 1289, 1291 (9th Cir. 1986); *U.S. v. Schlette*, 842 F.2d 1574, 1584 (9th Cir. 1988); *Seattle Times Co. v. U.S. Dist. Court.* 845 F.2d 1513, 1517 (9th Cir. 1988); *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1212 n.2 (9th Cir. 1989); *Oregonian Publ'g Co. v. U.S. Dist. Ct.,* 920 F.2d 1462, 1464 (9th Cir. 1990); *United States v. Kaczynski*, 154 F.3d 930, 931 (9th Cir. 1998) (affirming District Court's "order granting in part the motion of intervenors-appellees *Sacramento Bee*, *San Francisco Examiner*, and *CBS Broadcasting, Inc. . . .* to unseal Kaczynski's psychiatric competency report"); *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.,* 156 F.3d 940, 950 (9th Cir. 1998); *San Jose Mercury News, Inc. v. U.S. Dist. Ct. for N. Dist. of Cal.,* 187 F.3d 1096, 1103 (9th Cir. 1999); *Unabom Trial Media Coalition v. U.S. Dist. Ct. for the E. Dist. of Cal.*, 183 F.3d 949 (9th Cir. 1999); *In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008); *U.S. v. Index Newspapers LLC*, 766 F.3d 1072, 1083 (9th Cir. 2014).  Indeed, the Ninth Circuit has made absolutely clear, in a case concerning the sealing of a transcript of a closed hearing in a criminal case, that

> if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press *to afford them the opportunity to object* or offer alternatives. If objections are made, a hearing on the objections must be held as soon as possible.

*Phoenix Newspapers, Inc.,* 156 F.3d at 949 (emphasis added); *Oregonian Pub. Co.*, 920 F.2d at 1466 ("those excluded from the proceeding [or judicial documents] must be afforded a reasonable

DOW JONES AND COMPANY'S MOTION TO INTERVENE                CASE NO. 18-CR-00258-EJD
FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
JUDICIAL DOCUMENTS

- 10 -

opportunity to state their objections");  *Cf. Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 609 n. 25 (1982) ("representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'") (citation omitted); *Konig v. Cerro*, No. C-04-2210 MJJ, at *2 (N.D. Cal. Mar. 11, 2009) (granting a non-party's motion to intervene to seek unsealing of judicial documents because "Kay, as a member of the 'general public,' is entitled 'to be heard on the question'") (citations omitted).  Accordingly, Dow Jones has standing to be heard with respect to the court's sealing of judicial documents in this case.

## II.     Any Party Who Seeks to Maintain the Sealing of Judicial Records in This Case, Including the Docket, Bears a Heavy Burden of Proof

The United States Supreme Court has held that the right to attend criminal proceedings "is implicit in the guarantees of the First Amendment." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980). In extending this right to include not only access to criminal trials, but voir dire proceedings as well, the Supreme Court noted that "[t]he value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1985). Moreover, "[o]penness  . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 508; *see also* N.D. Cal. Crim. L.R. 56.1(b), Commentary ("As a public forum, the Court has a policy of providing to the public full access to documents filed with the Court.").

Nearly forty years ago, the Ninth Circuit held that there is "a [F]irst [A]mendment right of [public] access to pretrial documents in general." *Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.* , 705 F.2d 1143, 1145 (9th Cir. 1983). The importance of allowing access to court records and proceedings is rooted in the understanding that "public examination, study, and comment" are "essential" to the proper functioning of the criminal justice system. *CBS, Inc. v. District Court*, 765 F.2d 823, 826 (9th Cir. 1985) (holding that the public's qualified First Amendment right of

DOW JONES AND COMPANY'S MOTION TO INTERVENE                    CASE NO. 18-CR-00258-EJD
FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
JUDICIAL DOCUMENTS

- 11 -

access applies to post-conviction motion to reduce defendant's sentence); *In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) (holding that the public's qualified First Amendment right of access applies to: (1) a plea agreement cooperation addendum; (2) the government's motion to seal the plea agreement and memorandum in support of it; (3) the district court's orders granting the government's motion to seal; (4) the transcript of the defendant's plea colloquy; and (5) portions of the hearings on the transcripts of the hearings on the governments motion to seal).

"Publishing sufficient information to allow the public to join in a dialogue about the courts and the treatment of defendants can only have a positive impact on the public's perception of our judicial system.  If the system has flaws, it is all the better that these flaws be exposed and subjected to public comment." *United States v. Schlette*, 842 F.2d 1574, 1583 (9th Cir. 1988). As the Ninth Circuit has reminded, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990) (quoting *Richmond Newspapers,* 448 U.S. at 572); *see also United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018) ("Shrouding the mechanics of a criminal case in secrecy places the public's interest in a transparent judicial system at risk.").

"The law recognizes two qualified rights of access to judicial proceedings and records. . . ." *United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011). There is "'a First Amendment right of access to criminal proceedings' *and documents therein." Id.* (emphasis added) (quoting *Press-Enter. Co. v. Super. Ct.* , 478 U.S. 1, 8 (1986)). There is also "a common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.* , 435 U.S. 589, 597 (1978)). "The First Amendment is generally understood to provide a stronger right of access than the common law." *Id.* at 1197 n.7. Nevertheless, even under the weaker common law-based right of public access, a proponent of sealing judicial records bears the burden of demonstrating "compelling reasons supported by specific factual findings." *Kamakana v. City and County of*

*Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted); *Id.* ("if the court decides to seal certain judicial records [under the common law standard] it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.") (internal quotation marks and citation omitted).[1]

Courts must ask two questions to determine whether a qualified First Amendment right of public access applies to a particular proceeding or document: (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. II* , 478 U.S. at 8. This two-part test is commonly referred to as the "experience and logic" test. *Id.* at 9; *Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) (adopting that test); *United States v. Doe*, 870 F.3d 991, 996-97 (9th Cir. 2017) (same).  Notably, however, the Ninth Circuit has held that "as far as the First Amendment right is concerned, 'logic alone, even without experience, may be enough to establish the right.'" *Index Newspapers LLC*, 766 F.3d at 1094 (citing *Copley,* 518 F.3d at 1026).

Closure of court records and proceedings, "although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press- Enterprise*, 464 U.S. at 509. When the "experience and logic" test is satisfied, the public's presumptive right to access judicial documents "may be overcome only by an overriding interest based on findings that the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *CBS*, 765 F.2d at 825; *see also United States v. Carpenter*, 923 F.3d 1172, 1178 (9th Cir. 2019). Accordingly,

> [t]o restrict public access under the First Amendment presumed right of access doctrine, two procedural requirements and three substantive requirements must be satisfied.

---

[1] *See United States v. Sleugh*, 896 F.3d 1007, 1014 (9th Cir. 2018) ("the common law right of access ordinarily attaches to 'judicial records,' which 'are those materials on which a court relies in determining the litigants' substantive rights.'" ) (citations omitted).

To satisfy the procedural sealing requirements, "(1) those excluded from the proceeding [or judicial documents] must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings." *Oregonian Pub. Co.*, 920 F.2d at 1466. The procedural sealing requirements generally obligate the movant to "'provide a kind of index to the judicial documents' that the [party] desires to file under seal, so as to 'endow the public and press with the capacity to exercise a perceived right' to access all or part of said documents." *United States v. Morales*, No. 2:13-CR-00335-GEB, 2016 WL 1375627, at *1 (E.D. Cal. Apr. 7, 2016) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).

To satisfy the substantive requirements, the movant must show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) *there are no alternatives to closure* that would adequately protect the compelling interest." *Oregonian Pub. Co.*, 920 F.2d at 1466 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986)). "The[se] procedural and substantive safeguards . . . are not mere punctilios, to be observed when convenient. They provide the essential, indeed only, means by which the public's voice can be heard." *Phoenix Newspapers, Inc. v. U.S. Dist. Court*, 156 F.3d 940, 951 (9th Cir. 1998).

*United States v. Aguilar*, No. 2: 15-cr-041-GEB, at *5-6 (E.D. Cal. Nov. 13, 2017); *see also Oregonian Publ'g*, 920 F.2d at 1467 (holding that "the burden is upon the proponent of [sealing] to justify a [sealing] order.").

Among the alternatives that the Court must consider and expressly find ineffective is the public release of a redacted version of a judicial document. *See, e.g. Phoenix Newspapers, Inc.*, 156 F.3d at 947, 951 (reversing District Court's blanket sealing of hearing transcript because "[e]ven where denial of access is appropriate, it must be no greater than necessary to protect the interest justifying it" and "redaction would have safeguarded the jurors' anonymity") (quoting *Brooklier*, 685 F.2d at 1172); *Index Newspapers LLC*, 766 F.3d at 1095 ("redaction is an adequate alternative to closure . . . and it is preferred given our strong tradition of open court proceedings. Redactions shall be limited . . .  and should sweep no more broadly than necessary to protect [the compelling

state interest]"); *Accord In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (trial judge should consider alternatives to "wholesale sealing of the papers" such as the "redaction of names and perhaps portions of the . . . materials contained in the motion papers"); *Cf.* N.D. Cal. Crim. L.R. 56-1(c)(2)(C) (requiring, in most cases, that parties file a "redacted version of the document that is sought to be filed under seal"). Both the Ninth Circuit and numerous other federal courts have required the disclosure of redacted versions of judicial records under the common law right of access. *See, e.g., Bus. of Custer Battlefield Museum*, 658 F.3d at 1195 & n. 5 (9th Cir.) (noting that, "[i]n many cases, courts can accommodate [the government's] concerns by redacting sensitive information rather than refusing to unseal the materials entirely"); *Accord United States v. Pickard*, 733 F.3d 1297, 1304-05 (10th Cir. 2013) (criticizing district court for not having considered "whether selectively redacting just the still sensitive, and previously undisclosed, information . . . would adequately serve the government's interest").

The public's presumptive right to inspect judicial records is a right of contemporaneous, immediate access. *See, e.g., Assoc. Press v. U.S. Dist. Ct. for C.D. Cal.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (notwithstanding "that some of these pretrial documents might only be under seal for, at a minimum, 48 hours . . . the effect of the order is a total restraint on the public's first amendment right of access even though the restraint is limited in time"); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) ("a qualified First Amendment right of access extends to *timely* access to" newly filed pleadings) (emphasis added); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) (finding that the "media entity's expression is chilled by the *delay in access* to [newly filed civil] complaints") (emphasis added); *Doe v. Pub.Citizen*, 749 F.3d 246, 272 (4th Cir. 2014)  ("the public and press generally have a contemporaneous right of access to court documents …when the right applies."); *Lugosch v. Pyramid Co. of Onondaga*,, 435 F.3d 110, 126 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found."); *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d

893, 897 (7th Cir. 1994) ("once found to be appropriate, access [to judicial records] should be immediate and contemporaneous.").

**III.     No Showing Has Been Made, Nor Can Be Made, to Maintain the Sealing of the Judicial Records That Are the Subject of This Motion to Unseal**

Dow Jones respectfully asks the Court to unseal forthwith three sets of judicial documents that presently are under seal: (1) the Court's docket, (2) the pleadings and hearing transcript (if any) in connection with the Defendants' motion to sever their trials, and (3) the pleadings and hearing transcript in connection with the Government's motion for a court-ordered psychological evaluation of the Ms. Holmes, and the Government's subsequent *Daubert* challenge to Ms. Holmes' designated expert witness.

**A.  At Present, the Court's Docket Unjustifiably Denies the Public Its Right to Monitor the Criminal Justice Process in This Case**

As summarized above, the public docket in this case is largely, and effectively, sealed from public view because the vast bulk of the documents on file are marked simply "Sealed Document." *See* **Exhibit 1.**  Indeed, of the 880 docket entries as of the July 26, 2021 some 351 are so identified, giving the public no opportunity to understand what motions, response, replies, declarations, exhibits, etc. are contained in the Court's file but are unavailable to the public.

Although the Ninth Circuit has not yet directly addressed this issue,[2] other federal Circuit Courts have concluded that both the "experience" and "logic" tests required for a First Amendment right of access to attach are fully satisfied with respect to the court's docket in criminal (and civil) cases.  *See, e.g., Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 100 (2d Cir. 2004) ("the ability

---

[2] Without stating whether its decision was based on the First Amendment or the common law, the Ninth Circuit has ordered a District Court to unseal its docket in a criminal contempt case.  *See U.S. v. Index Newspapers LLC,* 766 F.3d 1072, 1085 (9th Cir. 2014) ("we hold that it is not sufficient for documents to be declared publicly available *without a meaningful ability for the public to find and access those documents*. . . . [W]e hold that *the district court must unseal its docket* to allow the public to access those transcripts and filings to which it is entitled.") (emphasis added).

of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible. In this respect, docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment."), quoted and cited with favor in *Courthouse News Serv. v. Planet*, 750 F.3d 776, 787 (9th Cir. 2014)); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) ("The ability of the public and press to inspect docket sheets is a critical component to providing meaningful access to civil proceedings"); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (finding a public docket was necessary to protect the public's and the media's constitutional rights of access to criminal proceedings); *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (holding that motions to seal plea agreements, for which there is a First Amendment right of access, must be publicly docketed); *In re State-Record Co.,* 917 F.2d 124, 128-29 (4th Cir. 1990) (requiring public docketing of a criminal proceeding because of the constitutional right of access); *see also United States v. Morales*, No. 2:13-cr-00335-GEB, at *1 (E.D. Cal. Apr. 6, 2016) ("A publicly filed sealing notice is required to 'provide a kind of index to [the] judicial . . . documents' that the government desires to file under seal, so as to 'endow the public and press with the capacity to exercise [a perceived] right[]' to access all or part of said documents.") (quoting and citing *Hartford Courant Co*., 380 F.3d at 100).

Accordingly, the public's right to access a comprehensible public docket "may be overcome [only] if: (1) the government has a compelling interest; (2) there is a substantial probability that the interest will be harmed by disclosure; *and* (3) there are no adequate alternatives to maintaining the [docket] under seal." *Index Newspapers LLC*, 766 F.3d at 1095 (citation omitted) (emphasis added).  That stringent test has not been met and Dow Jones respectfully maintains that it cannot be met.

The Court's Order granting the Government's Motion (Dkt. No. 507) already identifies – by docket number  (382, 383, 414, 431, 432, 434, and 444), date of filing, and the essential nature of –

all of the pleadings associated with that motion. Accordingly, there is  no *compelling* interest that

justifies the listing of those judicial records in the Court's docket merely as "Sealed Document."

Moreover, even courts that have recognized only a common-law based right of public

access to court dockets have explained why the presumption of access to such records is so strong:

> [Court dockets are] judicial records because they are "created and kept [by
> courts] for the purpose of memorializing or recording ... matter[s] of legal
> significance." *Wash. Legal Found. v. U.S. Sentencing Comm'n* , 89 F.3d 897,
> 905 (D.C. Cir. 1996). In a docket, a judge or clerk "briefly notes all the
> proceedings and filings in a court case." *Docket* , BLACK'S LAW
> DICTIONARY (11th ed. 2019). A court case is by definition a "matter of legal
> significance," and the docket memorializes it. Moreover, dockets provide a
> "kind of index to judicial proceedings and documents," facilitating public
> access to the underlying documents. *Hartford Courant Co. v. Pellegrino* , 380
> F.3d 83, 93 (2d Cir. 2004). *It would make little sense to provide public access
> to court documents but not to the indices that record them and thus make them
> accessible.*

*Leopold v. U.S. (In re Leopold)*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) (emphasis added); *see also*

*Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.,* 898 F.2d 1371, 1377 (8th Cir. 1990) (ordering

court to produce a redacted public docket of a sealed case to protect a common law right of access);

*Stone v. Univ. of Maryland Med. Sys. Corp.,* 855 F.2d 178, 181 (4th Cir. 1988) (requiring district

court to maintain a public docket where parties have at least a common law right of access to

proceedings); *In re Knoxville News-Sentinel Co.,* 723 F.2d 470, 475-76 (6th Cir. 1983)

(admonishing district court to publicly docket motions to seal proceedings where there is at least a

common law right of access).  Even under the less-stringent standard of the common law right of

public access, no "compelling reason" can be shown to justify sealing multiple innocuous, non-

prejudicial descriptions of documents from the docket, such as "Defendants' Motion to Sever

Trials," "Government's Response to Defendants' Motion to Sever Trials," "Administrative Motion

of the Defendant to File [certain documents] Under Seal," etc.[3]

---

[3] Document 851 is a Declaration filed in support of the Defendant's motion to reply in
support of her motion to suppress evidence of customer complaints and testing results as well as

DOW JONES AND COMPANY'S MOTION TO INTERVENE                    CASE NO. 18-CR-00258-EJD
FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
JUDICIAL DOCUMENTS

- 18 -

**B.** **The Pleadings [And, if Any Hearing Was Held, The Transcript Thereof] in Connection With the Defendants' Motion to Sever Must Be Unsealed**

Because the Court's Docket presently does not identify which documents comprised the Defendants' motion to sever their trials, the Government's Response, or the Defendants' Reply in support of their motion (nor any Declarations and/or exhibits filed therewith), nor whether a hearing was conducted (outside the presence of the public) on that motion, the public, including Dow Jones, cannot identify those judicial documents by Document number.   Nevertheless, all of those judicial documents constitute pre-trial records that formed the basis for the Court's decision, as set forth in the Court's order.  Accordingly, they are all "judicial records" to which a strong presumptive right of public access attaches.  *See, e.g., Associated Press*, 705 F.2d at 1145 ("a [F]irst [A]mendment right of [public] access to pretrial documents in general").

There is a general recognition that motions seeking severance of claims and/or defendants are presumptively open for public inspection, precisely because such public scrutiny furthers the truth-finding process.   Indeed, these types of filings are routinely filed not under seal and such motions are adjudicated in hearings open to the public.  For example, in the prosecution of Timothy McVeigh and Terry Lynn Nichols, who were jointly charged with the fatal bombing of the Alfred P. Murrah federal building in Oklahoma City in April 1995, their motions seeking severance of their trials were filed publicly, *see* Jo Thomas, *Two Suspects in Oklahoma City Bombing Seek Separate Trials*, N.Y. Times (Sept. 8, 1996) (reporting verbatim excerpts from the motion to sever trials), https://www.nytimes.com/1996/09/08/us/two-suspects-in-oklahoma-city-bombing-seek-separate-trials.html, and the court's hearing on that motion was open to the public,  *see,* Chance Conner, *Issue of Two Trials Comes To Head,* Denver Post (Oct. 2, 1996),

---

findings in CMS report, and it states that nine (9) exhibits have been filed under seal pursuant to the "Administrative Motion for Leave to File Documents Under Seal and accompanying Declaration of Lance Wade in Support of that Administrative Motion" but neither that Administrative Motion nor the Declaration in support of it appear on the Court's docket.

---

1   https://extras.denverpost.com/bomb/news81.htm; Chance Conner and George Lane, *Experts Warn*

2   *of 1-Trial* Problem, Denver Post (Oct. 3, 1996), https://extras.denverpost.com/bomb/news84.htm, as

3   was the judge's order explaining *why* he had granted the defendants' motion the sever their trials.

4   *See* George Lane, *McVeigh, Nichols Get Separate Trial*, Denver Post (Oct. 26, 1996),

5   https://extras.denverpost.com/bomb/news91.htm.  *See also State v. Easterling*, 137 P.3d 825 (Wash.

6   2006) (holding that closure of the courtroom during motion to sever trial, where the court failed to

7   identify an overriding interest warranting closure, violated the public's First Amendment right of

8   access to criminal proceedings).

9        One need only examine the records on file in this Court in *U.S. v. Cota*, 08-cr-00160-SI, to

10   see that motions seeking to sever trials, responses thereto, reply briefs, and the transcripts of any

11   hearing on such publicly-filed motions are not subject to automatic or presumed sealing.  *See*

12   **Exhibits 2 - 6** to Declaration of Steven D. Zansberg; *see also* **Exhibit 7** to Declaration of Steven D.

13   Zansberg (order unsealing severance motions papers in *U.S. v. Hurbace*, No.  17-cr-00110-APG-

14   CWH (D. Nev. Feb. 27, 2019)).

15        Because there is both a general practice of providing public access to pleadings filed in

16   connection with criminal defendants' motions to sever trials, and because providing public access to

17   such filings unquestionably promotes the function of instilling trust and public confidence in the

18   criminal justice system, any party wishing to maintain the sealing of the judicial documents

19   concerning these Defendants' motion seeking separate trials must show that "(1) the [party] has a

20   compelling interest; (2) there is a substantial probability that the interest will be harmed by

21   disclosure; *and* (3) there are no adequate alternatives to maintaining the filings under seal."  *Index*

22   *Newspapers LLC*, 766 F.3d at 1095 (citation omitted) (emphasis added).  That stringent test has not

23   been met and Dow Jones respectfully maintains that it cannot be met. And the same applies to any

24   subsequent filings in connection with the Government's request, by formal motion, to have the two

25   Defendants' trials joined, again, pursuant to Fed. R. Cr. P. 8.

26

27

28   DOW JONES AND COMPANY'S MOTION TO INTERVENE          CASE NO. 18-CR-00258-EJD
     FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
     JUDICIAL DOCUMENTS

1    Once again, the Court may conclude, upon the proper showing, that certain discreet piece(s)

2    of information should be redacted.  *See, e.g., Phoenix Newspapers, Inc.*, 156 F.3d at 947; *Index*

3    *Newspapers LLC*, 766 F.3d at 1095 ("Redactions . . . should sweep no more broadly than necessary

4    to protect [the compelling state interest]").

5    **C.    All Pleadings, as Well as the Transcript of the Closed Judicial Proceeding, in
     Connection With the Government's Motion to Order an Evaluation of Ms.**

6    **Holmes Pursuant to Fed. R. Crim. P. 12.2(c)(1)(B) Must Be Unsealed**

7    As set forth above, in its publicly filed (partially redacted) Order (Dkt. No. 507) granting the

8    Government's motion, numerous judicial documents that were filed previously, and upon which the

9    Court expressly relied as the grounds for its ruling (Dkt. Nos. 382, 383, 414, 431, 432, 434),

10   including a transcript of a closed hearing (Dkt. No. 444), were referenced and the contents thereof

11   reasonably described.  *See* Dkt. No. 507 at 1-2.  Yet, at present, all of those judicial documents

12   remain completely under seal. So too, do all subsequently-filed motion papers connected to the

13   Government's effort to exclude the Defendant's expert witness, Dr. Mechanic, from testifying at

14   trial under the *Daubert* standard.

15   Once again, both "experience" and "logic" dictate that those judicial documents are subject

16   to the First Amendment right of presumed public access.  *But see Kaczynski*, 154 F.3d at 931

17   (holding that the psychiatric competency evaluation of the defendant must be unsealed under the

18   common law without need to reach the First Amendment right of public access); *U.S. v. Sattar*, 471

19   F. Supp. 2d 380, 387-90 (S.D.N.Y. 2006) (requiring psychiatric evaluation of the defendant

20   submitted as part of the sentencing process to be publicly filed with limited redactions to protect the

21   privacy of information on the defendant's personal history that was not germane to sentencing, also

22   without need to reach the First Amendment right of access).  Of course, the portions of the parties'

23   pleadings that recite the applicable case law, as set out in the Court's Order (Dkt. No. 507), cannot

24   justifiably be maintained under seal.

25

26

27

28   DOW JONES AND COMPANY'S MOTION TO INTERVENE                    CASE NO. 18-CR-00258-EJD
     FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
     JUDICIAL DOCUMENTS

1    Nor is there any basis to keep under seal, as supposedly "privileged," any portion of those

2    documents that describe or discuss the Defendant's claimed mental or psychological condition that

3    she has raised as an affirmative defense to the criminal charges against her.  By affirmatively

4    placing that mental health condition at issue, through the notice she provided pursuant to Fed. R. Cr.

5    R. 12.2, Ms. Holmes waived any claim of privilege or confidentiality she may have had with respect

6    to any records filed herein that concern that condition.  *See, e.g., Kaczynski*, 154 F.3d  at 931;

7    *Ottawa Office Integration Inc. v. FTF Business Systems, Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y.

8    2001) ("It is well settled that a party waives his doctor-patient privilege *when he puts his medical*

9    *condition into issue*.") (citations omitted) (emphasis added); *Clark v. District Court,* 668 P.2d 3, 10

10   (Colo. 1983) ("When[ever] the privilege holder pleads a physical or mental condition as the basis of

11   a claim or as an affirmative defense. . .  he thereby impliedly waives any claim of confidentiality

12   respecting that same condition."); *State v. Turrentine*, 730 P.2d 238, 243 (Ariz. Ct. App. 1986)

13   ("When appellant opened the door to the issue of his sanity, he necessarily opened the door to

14   statements he had made to the physicians."); *Cf. Brandt v. Medical Defense Assocs.*, 856 S.W.2d

15   667, 674 (Mo. 1993) ("Once the [litigant]  makes a decision to [place his physical or psychological

16   condition at issue], this decision carries with it the recognition that any information within the

17   knowledge of the treating physician relevant to the litigated issues will no longer be confidential.").[4]

18                                          **CONCLUSION**

19       For the reasons set forth above, Dow Jones and Company respectfully asks the Court to

20   allow it to intervene and to forthwith unseal the pleadings and hearing transcripts associated with

21   Defendants' Motion to Sever, those associated with the Government's motion seeking to compel

22

23   [4]  Of course, that the Protective Orders entered in this case recognized confidentiality with respect
     to medical and mental health information exchanged in discovery is of no moment to the present

24   Motion which concerns the right of public access to materials filed with the Court.  *See, e.g.*,
     *Kamakana v. City and Cnty. of Honolulu,* 447 F.3d 1172, 1181–82 (9th Cir. 2006) (party opposing

25   unsealing of sealed documents filed pursuant to stipulated protective order bears burden of showing
     why documents should remain sealed under standard applicable to judicial records).

26

27

28   DOW JONES AND COMPANY'S MOTION TO INTERVENE             CASE NO. 18-CR-00258-EJD
     FOR LIMITED PURPOSE OF SEEKING TO UNSEAL
     JUDICIAL DOCUMENTS

Ms. Holmes to submit to an evaluation pursuant to Fed. R. Civ. P. 12.2(c)(1)(B), and to provide the public with access to a docket that accurately reflects the substance of all materials that have been filed and received by the Clerk of the Court.


DATED: July 28, 2021

*/s/ Steven D. Zansberg*

STEVEN D. ZANSBERG
Attorney for Dow Jones and Company, Inc.

1

**CERTIFICATE OF SERVICE**

2

 I hereby certify that on July 28, 2021, a copy of this filing was delivered via email on all counsel
of record. If any counsel indicates they wish to receive a paper copy of this filing, I further certify
that I will deposit in U.S. postal service for next day delivery.

3

4

5

*/s/ Steven D. Zansberg*
STEVEN D. ZANSBERG

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28