JOSEPH P. RUSSONIELLO
United States Attorney
BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division
STACEY P. GEIS (CASBN 181444)
JONATHAN SCHMIDT (CABSN 230646)
Assistant United States Attorneys
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-6776 (tel)
(415) 436-7234 (fax)
Jonathan.Schmidt@usdoj.gov

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Richard A. Udell
Senior Trial Attorney
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, DC 20004
(202) 305-0361 (tel)
(202) 514-8865 (fax)
Richard.Udell@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN JOSEPH COTA, and ) <br> FLEET MANAGEMENT LIMITED, ) <br> ) <br> Defendants ) <br> ) <br> _____ ) | CR 08-0160 SI <br><br> GOVERNMENT'S OPPOSITION TO DEFENDANT COTA'S MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT LIMITED <br><br> Date: September 22, 2008 <br> Rime: 11:00 a.m. <br> Judge: Hon. Susan Illston <br><br> Speedy Trial Act: Time excluded through disposition 18 U.S.C. § 3161(h)(1)(F) |

**EXHIBIT 4**

**INTRODUCTION**

This case centers on the *M/V Cosco Busan's* November 7, 2007, allision with the Bay Bridge and the resulting oil spill and migratory bird deaths.   Both the ship's pilot – Captain John Cota – and operator – Fleet Management Limited (Fleet) were charged in a July 22, 2008, second superseding indictment with several violations, including violations of the Clean Water Act and the Migratory Bird Treaty Act.  There is substantial evidence in the evidence that will be introduced against each of the defendants.

In a motion filed on August 22, 2008, Captain Cota has asked  to sever his and Fleet's trials.  Captain Cota argues that (1) Captain Cota and Fleet have inconsistent defenses, (2) Fleet's defense, which includes information regarding Captain Cota's medical condition and medication regime, manifestly prejudices Captain Cota, and (3) a joint trial will allow Fleet to introduce evidence of Captain Cota's alleged false statements on January 2006, and January 2007, which the Court has previously ruled are inadmissible in a separate trial.

The United States opposes Captain Cota's motion for the following reasons:
- The motion is premature, because at this stage, the description of Fleet's anticipated defense is conjecture;
- Captain Cota and Fleet do not have mutually antagonistic or irreconcilable defenses;
- Any reliable, relevant, evidence of Captain Cota's medical condition or medication regime that the Court would allow Fleet to introduce in a joint trial would also be admissible in a separate trial;
- To the degree that Fleet is allowed to present medical evidence that would not be admissible in a separate trial, any undue prejudice can be cured by a limiting jury instruction; and.
- judicial economy is best served by one trial, given the overlap of evidence and witnesses.

**FACTUAL BACKGROUND**

Captain Cota and Fleet are charged with negligently discharging harmful quantities of oil in violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1), 1321(b)(3). Both Captain Cota and Fleet can be held negligently liable for the same discharge of oil. *See* Restatement (Second) of Torts § 432 (1965).

The indictment alleges the following nine negligent sets of acts to both Fleet and Captain Cota:

1. Fleet and Cota failed to navigate an allision free course;

2. Fleet and Cota failed to prepare and review an adequate passage plan before departure;

3. Fleet and Cota failed to conduct an adequate review with the Pilot, Master and crew of the *M/V Cosco Busan* before departure of the official navigational charts, the proposed course, the location of the San Francisco Bay aids to navigation, and the operation of the vessel's navigational equipment;

4. Fleet and Cota departed in heavy fog;

5. Fleet and Cota proceeded at an unsafe speed during the voyage despite limited visibility;

6. Fleet and Cota failed to use the vessel's radar while making the final approach to the Bay Bridge;

7. Fleet and Cota failed to adequately read and operate the vessel's electronic chart while making the final approach to the Bay Bridge;

8. Fleet and Cota failed to adequately use the vessel's paper charts by failing to record and review positional fixes during the voyage;

9. Fleet and Cota failed to verify the vessel's position in relation to other established and recognized aids to navigation throughout the voyage.

The indictment also alleges that Fleet separately: (1) failed to adequately train the Master and crew of the *M/V Cosco Busan*, including with regard to voyage passage planning, the role of the Master and crew with a pilot, the ship's navigational procedures and the ship's navigational equipment, including the ship's electronic chart system; (2) failed to ensure that adequate lookouts were posted during the voyage; and (3) failed to notify the Pilot when the vessel went off course while making the final approach to the Delta-Echo span of the Bay Bridge.

3

The evidence against Captain Cota and Fleet is largely the same. At a separate trial for either defendant, the United States would seek to introduce the following:

- background information on sailing in the San Francisco Bay,

- information regarding the weather conditions on the morning of November 7, 2007,

- a full rendition of the *M/V Cosoc Busan's* transit from the Oakland inner-harbor to the Bay Bridge, a playback of the radar, radio traffic and electronic chart during the transit, and

- information about the clean-up after the allision.

Captain Cota is also charged with making false statements in his January 2006, and January 2007, merchant mariner physical examination report. These false statements are not alleged to be a cause of the November 7, 2007, oil spill and the Court severed these charges from the Clean Water Act and Migratory Bird Act charges.

The indictment does not allege that Captain Cota's medical conditions or medications caused the discharge on November 7, 2007. Fleet has suggested that Captain Cota's medical conditions or medication regime contributed to the November 7, 2007, oil spill. Neither the United States nor Fleet has formally moved to admit evidence of Captain Cota's medical condition or medication regime, and the Court has yet to rule on whether this evidence is reliable, relevant or admissible.[1]

**LAW**

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 of the Rules, in turn, permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder."

---

[1]Evidence of Captain Cota's medical condition and medication may be relevant to Fleet's defense only if it negates the government's proof that Fleet failed to exercise reasonable care and this failure was a cause in fact and a proximate cause of the oil spill. *See United States v. Hanousek,* 176 F.3d 116 (1999).

The federal system has a preference for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993)  Joint trials play a vital role in the criminal justice system. *Id*. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. *Id*. at 538.  Courts have repeatedly approved of joint trials. *Id*.

Courts may grant a severance when mutually antagonistic or irreconcilable defenses are *unduly* prejudicial. *Id*.  Antagonistic defenses "are not prejudicial per se." *Id*. at 538. Mere "antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a co-defendant . . . is insufficient to require severance." *United States v. Throckmorton* 87 F.3d 1069, 1072 (9th Cir. 1996).  Similarly, inconsistency in defense positions is insufficient to warrant severance. *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir.1991).  Courts have reversed few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. *Zafiro* at 238. And, the Supreme Court has declined to adopt a bright line rule mandating severance whenever co-defendant have conflicting defenses. *Id*. at 539.

 To warrant severance based on antagonistic defenses, co-defendants must show that their defenses are irreconcilable and mutually exclusive. *See United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir.1992).  Defenses are mutually exclusive when "acquittal of one co-defendant would necessarily call for the conviction of the other." *Tootick*, at 1081. An oft-repeated formulation in the Ninth Circuit is: "To be entitled to severance on the basis of antagonistic defenses, a defendant must show that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, at 1072.

Rule 14 does not require severance even if prejudice is shown, but rather, "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro* at 539.  Generally the "risk of prejudice posed by joint trial can be cured by proper instruction." *United States v. Hanley*, 190 F.3d 1017, 1027 (9th Cir. 1999)(citations and

internal quotes omitted).

# ARGUMENT

Captain Cota makes three arguments for why a severance is appropriate. First, Cota argues that his and Fleets defenses conflict. Second, Cota argues that Fleet will seek to introduce evidence regarding Captain Cota's medical condition and medications, and that evidence, Captain Cota argues, would be manifestly prejudicial. Finally, Captain Cota argues that Fleet will seek to introduce evidence of Captain Cota's false statements to the Coast Guard. Each of these arguments are discussed below.

## 1. Captain Cota and Fleet's Defenses are Not Mutually Antagonistic

Captain Cota's argument that his and Fleets defenses are mutually antagonistic is unpersuasive. First, neither Captain Cota nor Fleet have revealed their defense at trial. Until they do, Captain Cota's prediction of Fleet's defense is too speculative to conclude that their defenses are antagonistic.

Next, even if Captain Cota's prediction about Fleet's defense is correct, the defenses are not mutually antagonistic. Captain Cota suggests that Fleet will argue that he was negligent. Structurally there is nothing antagonistic about each defendant arguing that the other defendant was negligent. It does not follow that if one party is negligent the other is or is not negligent. Here neither party, one party or both parties can be found negligent. This case is not like a case where only one defendant could have pulled the trigger. Thus, the two defenses are not "irreconcilable and mutually exclusive." *See United States v. Sherlock*, 962 F.2d 1349, 1363.

Captain Cota further suggests that Fleet will argue that "there was no visible evidence of Captain Cota's inability and thus the crew was blameless in failing to stop him." (Def. Mem. at 7) This too is not a mutually antagonistic defense. A jury can accept Fleet's argument that Captain Cota showed no visible signs of incompetence, and still acquit Captain Cota.

## 2. A Joint Trial will Not Lead to the Introduction of Prejudicial Information

Captain Cota's argument that Fleet will seek to introduce prejudicial evidence

regarding his medical condition and medication regime is similarly uncompelling.  Here too, the argument is too speculative to be the basis for a severance ruling.  Since Fleet has not revealed the evidence they will seek to introduce at trial, it is impossible to determine if the anticipated evidence is unduly prejudicial.  Medical evidence is, of course, not *per se* prejudicial.

Assuming it is Fleet's intention to introduce medical evidence, the Court has yet to rule on its reliability, admissibility or relevance.  If evidence of Captain Cota's medical condition and medication regime is relevant to Captain Cota's negligence, then presumably it would be admissible both in the United States case in chief in a joint trial against both defendants or in separate trial against Captain Cota.  In that case, the evidence is not unduly prejudicial and severance is not neccessary.  If, however, medical evidence is unreliable or irrelevant to whether Captain Cota was negligent, it should be inadmissable whether sponsored by Fleet or the United States in a joint trial or the United States in a separate trial.  If the medical evidence is inadmissable, then severance is not needed.

Captain Cota further suggests that Fleet will introduce medical evidence to account for the lack of visible signs of Captain Cota's incompetence. (Def Mot. at 7) While this theory is speculation and may not be presented to the court, it does not appear to be an adequate basis for admitting medical evidence.  Medical evidence is irrelevant to whether the crew saw or Captain Cota exhibited "visible evidence of his inability".  The overt signs of being incapacitated either did or did not exist, regardless of Captain Cota's medical issues.  If Captain Cota displayed no signs of incompetence, the medical evidence, at most, explains the discrepancy between how he acted and what he displayed.  However, it is  not evidence of whether there were overt signs of incompetence.  The medical reason for why Captain Cota allegedly did not show visible signs of his inability is irrelevant to the case.

To the extent that the Court might allow Fleet to introduce medical evidence that it would not allow the United States to introduce in its case-in-chief, the Court can prevent

7

any undue prejudice with a limiting jury instruction.

### 3. Fleet Should not be Allowed to Admit Captain Cota's January 2006 and January 2007 False Statements

Finally Captain Cota's argument that Fleet will try to introduce Captain Cota's alleged false statements is unpersuasive. Here the court has ruled that Captain Cota's statement in January 2006 and January 2007 are irrelevant to his actions on November 7, 2007. The Court's earlier ruling regarding the admissibility of the January 2006 and January 2007 false statements in a separate trial should apply equally to a joint trial.

### 4. The Cases Captain Cota's cites are Not Persuasive

Captain Cota cites two Ninth Circuit cases in support of his motion – *United States v Tootick* 972 F.2d 1078 (9th Cir. 1991) and *United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999). Both cases are distinguishable. In both cases, unlike here, the defense presented mutually exclusive defenses, defense counsel introduced inadmissable evidence or made improper arguments and the court did not adequately intervene.

The *Tootick* case, unlike the present case, is a classic case of mutually exclusive defenses. The case involved two defendants – Charles Frank and Moses Tootick charged with a single stabbing. The only people present at the stabbing were the two defendants and the victim. There was no suggestion that the victim injured himself. Thus, only one person could have committed the stabbing. At trial Frank testified that Tootick committed the stabbing on a hillside while he, in a car, watched in horror. Tootick, in turn, argued that Frank committed the stabbing while he, in a drunken stupor was either passed out or asleep. The Ninth Circuit found that the trial should have been severed because "[e]ach defense theory contradicted the other in such a way that the acquittal of one necessitated] the conviction of the other." *Id*. at 1081.

Standing alone the contradictory defense theories, in *Tootick* would not have merited a severance. The court's conclusion to reverse rested, not on the existence of antagonistic defenses, but "on the number and types of prejudicial incidents that were not corrected by

instructions from the court." *Id*. at 1083.  The court cites several examples of the defense

counsel making unsubstantiated claims about the co-defendant and the court's failure to

instruct.  For example, the court cites Tootick's opening statement, which contained

"unbridled accusations" few of which were proved at trial.  The court comments on the

trial judge's failure to make any "admonitory comment or give an "additional

instruction." *Id*. 1083-1084.  The Ninth Circuit notes that "[w]ith proper limiting

instructions, even the admission of a nontestfying co-defendant's confession can be found

not to create prejudice." *Id*. at 1085.  Thus, unlike the present case, *Tootick* involved truly

mutually antagonistic defenses exacerbated by improper arguments and anemic

instructions.

The *Mayfield* case is similarly distinguishable from the present case.  In *Mayfield,* the

police found crack cocaine on a kitchen tale where they had just seen the two co-

defendants sitting.  One defendant  – Manyale Gilbert – gave a confession which also

implicated Jerry Mayfield.  At trial Gilbert argued that the drugs belonged exclusively to

Mayfield.  To make his argument, Gilbert's attorney disregarded two pretrial rulings and

elicited two hearsay statements implicating Mayfield.  As in *Tootick,* the *Mayfield* trial

court failed to give adequate instructions.

In a pretrial ruling the court admitted Gilbert's statement on the condition that

references to Mayfield be redacted.  At trial, Gilbert's  attorney elicited testimony from a

police officer making it apparent that Gilbert's confession implicated Mayfield.  The

court, however, failed to give a limiting instruction telling the jury that the statements

only applied to Gilbert.  Gilbert's attorney again "flouted the district court's pretrial

decision," *id* at 899, and elicited testimony that the search warrant was based on a

confidential informant who explicitly named Mayfield.  Neither Gilbert nor the

confidential informant testified, and Mayfield was precluded from cross-examining

Gilbert nor the confidential informant on their statements implicating him.  In closing

Gilbert's counsel forcefully reinforced the erroneously admitted evidence.

On review the Ninth Circuit found the "core of the codefendant's case [was] so

irreconcilable with the core of Mayfield's own defense that the acceptance of the co-defendant's theory by the jury precluded] acquittal of the defendant. *Id*. at 900 (citations and internal quotations omitted).  More troubling, however, the joint trial "compromised a specific trial right the right to confront witnesses." *Id.* (Citations and internal quotations omitted).   The Ninth Circuit found that the prejudice came not from antagonistic defense, but rather, "from the interplay between the informant's statement, Gilbert's out-of-court confession, and Gilbert's counsel closing argument. *Id*. at 905.

Despite these problems the Ninth Circuit found that the district court could have either "sever[ed] or use[d] more rigorous and timely jury instructions to mitigate the prejudice." *Id*. at 906.

The present case unlike *Tootick,* and *Mayfield* does not involve mutually exclusive defenses.  And, unlike *Tootick,* and *Mayfield*, here the potential problems of unbridled accusations can be remedied with proper instructions and admonitions.

**4. Judicial Economy Dictates One Trial**

Given the lack of undue prejudice to Captain Cota should the two defendants be tried together, judicial economy is also best served by one trial.  The case against both defendants is primarily a negligence case.  As such, almost all of the evidence will be the same for both defendants.  The witnesses will be the same, including the six crew members currently detained.  Any expert witnesses will be the same.  The exhibits will also be the same, both documentary evidence as well as the computer software necessary to show the jury the complete transit of the *M/V Cosco Busan* from the Port of Oakland to the allision with the Bay Bridge.   To present the exact same evidence in two separate trials would not best serve the interests of the Court or the government.

### CONCLUSION

The United States opposes defendant Cota's motion to sever because Captain Cota and Fleet do not have mutually antagonistic defenses, any statements about what evidence would be admissible at a joint trial, but inadmissible at a separate trial is extremely speculative, any prejudice can be cured by a limiting instruction, and judicial economy is

best served.  Accordingly, the government respectfully requests that the Court deny

Captain Cota's motion to sever.

                                        Respectfully submitted,


JOSEPH P. RUSSONIELLO                   RONALD J. TENPAS
United States Attorney                  Assistant Attorney General
BRIAN J. STRETCH                        Environment and Natural Resources
Chief, Criminal Division                Division
                                        United States Department of Justice


By:_____S/S_____           By:_____S/S_____
JONATHAN SCHMIDT                        RICHARD A. UDELL
Assistant United States Attorney        Senior Trial Attorney
                                        Environmental Crimes Section


DATED: September 12, 2008