1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

      UNITED STATES OF AMERICA,          )
6                                        )  CR-18-00258-EJD
                     PLAINTIFF,          )
7                                        )  SAN JOSE, CALIFORNIA
                 VS.                     )
8                                        )  AUGUST 25, 2021
      ELIZABETH A. HOLMES,               )
9                                        )  PAGES 1 - 60
                     DEFENDANT.          )
10    _____    )

11

                         TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
      A P P E A R A N C E S:
14

      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                           BY:  JOHN C. BOSTIC
                                  JEFFREY B. SCHENK
16                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA 95113
17
                             BY:  ROBERT S. LEACH
18                                KELLY VOLKAR
                             1301 CLAY STREET, SUITE 340S
19                           OAKLAND, CALIFORNIA 94612

20         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

      OFFICIAL COURT REPORTER:
22                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074
23

24      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
25

1

A P P E A R A N C E S: (CONT'D)

2


3        FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                                 BY:  KEVIN M. DOWNEY
4                                     LANCE A. WADE
                                      KATHERINE TREFZ
5                                     RICHARD CLEARY
                                 725 TWELFTH STREET, N.W.
6                                WASHINGTON, D.C. 20005

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SAN JOSE, CALIFORNIA                    AUGUST 25, 2021

2                    P R O C E E D I N G S

09:05AM  3        (COURT CONVENED AT 9:05 A.M.)

09:05AM  4             THE COURT:  THIS IS UNITED STATES VERSUS

09:06AM  5    ELIZABETH HOLMES.

09:06AM  6        MAY I CAPTURE THE APPEARANCE OF THE PARTIES, PLEASE.

09:06AM  7        FOR THE GOVERNMENT.

09:06AM  8             MR. SCHENK:  GOOD MORNING, YOUR HONOR.

09:06AM  9        JEFF SCHENK, BOB LEACH, JOHN BOSTIC, AND KELLY VOLKAR ON

09:06AM 10    BEHALF OF THE UNITED STATES.

09:06AM 11             THE COURT:  THANK YOU.  GOOD MORNING, EVERYONE.

09:06AM 12             MR. LEACH:  GOOD MORNING, YOUR HONOR.

09:06AM 13             MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

09:06AM 14        KEVIN DOWNEY FOR THE DEFENDANT MS. HOLMES.  WITH ME ARE MY

09:06AM 15    COLLEAGUES LANCE WADE, KATIE TREFZ, AND RICHARD CLEARY.

09:06AM 16        MS. HOLMES IS PRESENT IN COURT THIS MORNING.

09:06AM 17             THE COURT:  THANK YOU.  GOOD MORNING TO ALL OF YOU.

09:06AM 18        THANK YOU FOR AGREEING TO COME THIS MORNING TO TALK ABOUT

09:06AM 19    OUR POTENTIAL JURY SELECTION THAT WILL BEGIN NEXT WEEK.  I

09:06AM 20    APPRECIATE THE OPPORTUNITY TO AT LEAST TRY TO MANAGE OUR

09:06AM 21    SELECTION PROCESS.

09:06AM 22        RECALL THAT I HAD OFFERED COUNSEL THE OPPORTUNITY TO MEET

09:06AM 23    AND CONFER REGARDING THE JURY QUESTIONNAIRES TO SEE IF YOU

09:07AM 24    MIGHT REACH SOME AGREEMENT AS TO INITIAL STRIKES, EXCUSALS THAT

09:07AM 25    WE COULD DO IN ADVANCE OF BRINGING IN THOSE JURORS TO AVOID
```

09:07AM 1    INCONVENIENCE TO THEM AND TO SAVE US ALL SOME TIME.  SO THANK

09:07AM 2    YOU FOR THAT.

09:07AM 3        I HAVE -- I THINK I RECEIVED IT WAS LAST NIGHT AROUND 7:00

09:07AM 4    P.M.  I HAVE THAT, AND I'VE REVIEWED SOME OF IT, BUT WE'LL TALK

09:07AM 5    ABOUT THAT THIS MORNING.

09:07AM 6        I'D LIKE TO JUST LET YOU KNOW A COUPLE OF THINGS ABOUT OUR

09:07AM 7    COURTROOMS.  REGRETTABLY, FOR SOME REASON OUR AUDIO VISUAL

09:07AM 8    SYSTEM IN THIS COURTROOM DECIDED THAT THIS WEEK WOULD BE A GOOD

09:07AM 9    TIME TO BREAK DOWN, AND SO WE HAVE NO MICROPHONE SERVICE.  WE

09:07AM 10   HAVE NO ABILITY TO USE OUR COMPUTER SYSTEMS HERE IN THE

09:08AM 11   COURTROOM.

09:08AM 12       SO WE'RE ALL MASKED.  WE RECOGNIZE THE HEALTH SITUATION IN

09:08AM 13   OUR COMMUNITIES, AND WE'LL TALK A LITTLE BIT ABOUT THAT AS

09:08AM 14   WELL.

09:08AM 15       BUT I'M INFORMED BY THE I.T. PEOPLE THAT SOMEONE WILL BE

09:08AM 16   IN TOMORROW TO MY COURTROOM HERE TO EXAMINE AND SEE IF THEY CAN

09:08AM 17   SOMEHOW RESOLVE THAT ISSUE.

09:08AM 18       CANDIDLY, THE I.T. PERSON TOLD ME THAT IT'S UNLIKELY THAT

09:08AM 19   THEY WILL BE ABLE TO REPAIR THIS FOR NEXT WEEK.  IF THAT COMES

09:08AM 20   TO PASS, THEN OUR JURY SELECTION WILL BE IN THE COURTROOM 1,

09:08AM 21   OUR CEREMONIAL COURTROOM.  SO WE'LL MOVE THERE FOR JURY

09:08AM 22   SELECTION.

09:08AM 23       HOPEFULLY WE CAN GET SOME SMART TECHS WHO CAN SOLVE THIS

09:08AM 24   ISSUE, AND THEN WE CAN COME BACK TO THIS COURTROOM WHERE I HOPE

09:08AM 25   THE TRIAL WILL TAKE PLACE.  WE ALL HAVE COMFORT WITH THIS

09:08AM   1        COURTROOM, AND I THINK WE'VE LOOKED AT IT FOR YOUR NEEDS FOR

09:09AM   2        YOUR TECHS, ET CETERA.  SO I HOPE WE CAN USE THIS COURTROOM FOR

09:09AM   3        THAT PURPOSE.

09:09AM   4             THIS MAY CAUSE SOME DISRUPTION THOUGH AS FAR AS THE

09:09AM   5        OVERFLOW ROOM I TALKED ABOUT.  I DON'T KNOW IF AND HOW THE I.T.

09:09AM   6        PEOPLE WILL BE ABLE TO POPULATE THAT, BUT WE'LL SEE.

09:09AM   7             IT MAY BE THAT -- AND I.T. HAS SUGGESTED TO ME THAT

09:09AM   8        INSTEAD OF AN AUDIO VISUAL IN THE OVERFILL ROOM, THAT WE JUST

09:09AM   9        USE AUDIO, AND THAT MIGHT BE EASIER.  I DON'T KNOW.  I PROMISED

09:09AM  10        EVERYONE WE WOULD HAVE A CAMERA HERE.  WE WERE GOING TO MEET

09:09AM  11        WITH THE I.T. PEOPLE TO LOOK AT CAMERA ANGLES AND THOSE TYPES

09:09AM  12        OF THINGS.  IT SOUNDS LIKE THAT'S GOING TO BE DEFERRED FOR SOME

09:09AM  13        TIME.  I DON'T KNOW WHAT IT IS, BUT WE'LL GET OUR FOLKS ON IT

09:09AM  14        AS QUICKLY AS WE CAN.

09:09AM  15             SO I APOLOGIZE FOR THAT, BUT WE'LL JUST MANAGE IT AS WE

09:10AM  16        CAN.

09:10AM  17             SO ANOTHER DIFFICULTY OF THIS IS WE'RE GOING TO DO OUR

09:10AM  18        JURY SELECTION, IT SOUNDS LIKE, IN THE CEREMONIAL COURTROOM,

09:10AM  19        AND THEN WE WILL REPLICATE THAT OVER HERE, WON'T WE, AND PUT

09:10AM  20        PEOPLE IN THE BOX HERE.

09:10AM  21             LET ME TELL YOU I HAVE CONSULTED WITH OUR COURT.  THE

09:10AM  22        NORTHERN DISTRICT HAS HAD THE OPPORTUNITY AND THE BENEFIT TO

09:10AM  23        ENGAGE A DOCTOR, I BELIEVE HE'S AN EPIDEMIOLOGIST, AND WE HAD

09:10AM  24        CONSULTED WITH HIM LAST YEAR ABOUT CERTAIN HEALTH CONCERNS, AND

09:10AM  25        HOW WE IN BEST PRACTICES WITH RECOMMENDATIONS MIGHT THINK ABOUT

09:10AM 1     RUNNING OUR COURTROOMS.

09:10AM 2         I HAD OCCASION TO PUT SOME QUESTIONS BEFORE THE DOCTOR,

09:10AM 3     BECAUSE I, OF COURSE, LIKE ALL OF US, HAVE CONCERNS ABOUT THIS.

09:10AM 4     THERE WERE SOME ANSWERS THAT HE RESPONDED TO AND HE SUGGESTS

09:11AM 5     THAT WE -- FIRST OF ALL, HE SUGGESTS THAT WE SPACE OUR JURORS

09:11AM 6     AS BEST AS POSSIBLE.

09:11AM 7         YOU KNOW, IN OUR NORMAL JURY SETTING WE FILL THE BOX AS

09:11AM 8     BEST WE CAN SEATED NEXT TO ONE ANOTHER.  THAT'S MY PLAN, OUR

09:11AM 9     INITIAL TIME.  WE TALKED ABOUT THIS LAST TIME THAT I HAD HOPED

09:11AM 10    TO FILL THE BOX AND THEN PERHAPS HAVE THREE SEATS ON EITHER

09:11AM 11    SIDE.  THAT WOULD, I THINK, COMPLEMENT OUR FULL JURY AND OUR

09:11AM 12    ALTERNATES.

09:11AM 13        IT MAY BE, AND WE'LL LOOK AT THIS AND I'LL MAKE A DECISION

09:11AM 14    PROBABLY WHEN WE GET CLOSER, A LITTLE CLOSER TO THE TRIAL, AS

09:11AM 15    TO WHETHER OR NOT, AND DEPENDING ON VACCINATION, COMFORT LEVEL

09:11AM 16    AND THE STATE OF THINGS, WHETHER OR NOT WE'LL SPACE THE JURORS

09:11AM 17    IN SOME WAY AND IN SOME MANNER, WE'LL LOOK AT THAT.

09:11AM 18        IT MAY BE, AND I'VE TALKED ABOUT THIS BEFORE, WE HAVE TO

09:12AM 19    USE AND SEAT SOME JURORS IN THE GALLERY, AND I'LL LOOK AT THAT

09:12AM 20    AND SEE HOW THAT WORKS.

09:12AM 21        I WANT TO MAKE SURE IF WE DO THAT, I WANT TO ENSURE THAT

09:12AM 22    THOSE JURORS WHO ARE IN THE GALLERY WILL HAVE AN OPPORTUNITY TO

09:12AM 23    VIEW THE MONITORS.  I HAVE LOOKED AT THE SIDELINES FOR THEM SO

09:12AM 24    THEY CAN SEE EVIDENCE THAT IS PRESENTED.  ONCE I.T. DOES THEIR

09:12AM 25    MAGIC AND FIX OUR COURTROOM, THEY WILL BE ABLE TO SEE ALL OF

| | |
|---|---|
| 09:12AM | 1 |
| 09:12AM | 2 |
| 09:12AM | 3 |
| 09:12AM | 4 |
| 09:12AM | 5 |
| 09:12AM | 6 |
| 09:12AM | 7 |
| 09:12AM | 8 |
| 09:12AM | 9 |
| 09:13AM | 10 |
| 09:13AM | 11 |
| 09:13AM | 12 |
| 09:13AM | 13 |
| 09:13AM | 14 |
| 09:13AM | 15 |
| 09:13AM | 16 |
| 09:13AM | 17 |
| 09:13AM | 18 |
| 09:13AM | 19 |
| 09:13AM | 20 |
| 09:13AM | 21 |
| 09:14AM | 22 |
| 09:14AM | 23 |
| 09:14AM | 24 |
| 09:14AM | 25 |

THE EVIDENCE.

SO THOSE ARE SOME ISSUES THAT HAVE COME UP.

IF WE DO, IF WE DO SEAT JURORS IN THE GALLERY, AND I SAY THIS FOR MEMBERS OF THE PUBLIC THAT MIGHT HAVE INTEREST, AND ALSO IN REGARDS TO YOUR REQUESTED GUESTS AND SEATING, I INTEND TO HAVE A ROW THAT IS BLANK BEHIND ANY JURORS THAT ARE SEATED IN THE GALLERY.  SO NO ONE WOULD SIT IMMEDIATELY BEHIND THEM.

THE DOCTOR SUGGESTED THAT ACTUALLY THAT WE, THE COURT, LIMIT AS MUCH AS POSSIBLE EVERYONE COMING INTO THE COURTROOM FOR SAFETY SAKE.  THAT'S ONE OF THE SUGGESTIONS THAT I THINK MANY CIRCUITS AND DISTRICTS ACROSS THE COUNTRY HAVE LOOKED AT.

BUT INITIALLY I'LL KEEP ONE ROW SEPARATE BEHIND WHATEVER JURORS ARE THERE.

ALSO, IF WE DO ENGAGE THAT PROCESS, MY INTENT IS TO ROTATE THE SEATING SO THAT WE MIGHT HAVE THE JURORS THAT ARE IN THE GALLERY SIT FOR ONE WEEK, AND THEN THE NEXT WEEK THEY'LL CHANGE PLACES WITH THOSE IN THE JURY BOX.  I MIGHT DO THAT FOR THEIR COMFORT LEVEL AND ALSO TO JUST PERHAPS LET THEM FEEL AND LET EVERYONE ENJOY THE JURY PROCESS WITH A LITTLE MORE DIGNITY SHALL WE SAY.  THAT'S MY HOPE AS WELL.

IF WE DO, IF WE DO FIND THAT SOMEONE IN THE TRIAL OR A PARTICIPANT OR SOMEONE OR A JUROR REPORTS A POSITIVE TEST, WE'LL FOLLOW THE CDC GUIDELINES AS TO HOW TO APPROACH THAT.

ONE THING I WANT TO PUT FORWARD TO YOU, COUNSEL, IS WHETHER OR NOT IN YOUR MEETING CONFERENCE, WHETHER OR NOT

09:14AM 1    YOU'VE DISCUSSED THE DESIRE FOR BOTH OF YOUR TEAMS TO STIPULATE

09:14AM 2    TO HAVE ONLY VACCINATED PEOPLE ON THE JURY.  I'M NOT GOING TO

09:14AM 3    ORDER THAT, BUT THAT'S SOMETHING THAT IF THE PARTIES MEET AND

09:14AM 4    CONFER AND YOU STIPULATE TO, I'LL CERTAINLY CONSIDER THAT

09:14AM 5    STIPULATION.  THAT WOULD BE YOUR AGREEMENT FOR JURY SERVICE.

09:14AM 6        NOW, THE CDC GUIDELINES TELL US THAT PEOPLE WHO ARE

09:14AM 7    VACCINATED AND ASYMPTOMATIC CAN CONTINUE TO COME TO THE COURT

09:15AM 8    BUT THEY MUST WEAR A MASK BUT THEY SHOULD BE TESTED I THINK ON

09:15AM 9    DAYS THREE AND FIVE.  WE WILL TELL EVERYONE THAT IF THEY FEEL

09:15AM 10   SYMPTOMATIC THEY ARE NOT TO COME TO THE COURTHOUSE, THEY'RE NOT

09:15AM 11   TO COME, AND NOTIFY US IMMEDIATELY AS TO THAT SITUATION.

09:15AM 12       ALSO, AS TO WITNESSES, I'M GOING TO ASK YOU, EACH SIDE, TO

09:15AM 13   TELL AND INFORM YOUR WITNESSES TO PRESCREEN FOR SYMPTOMS AND TO

09:15AM 14   NOTIFY THE COURT IF YOU RECEIVE INFORMATION THAT THEY ARE

09:15AM 15   SYMPTOMATIC, HAVE BEEN EXPOSED OR HAVE ANY OTHER HEALTH

09:15AM 16   CONDITION.

09:15AM 17       THEY ALSO WILL BE WEARING MASKS IN THE COURTROOM.  IT MAY

09:15AM 18   BE THAT THEIR MASKS WILL BE REMOVED WHEN THEY TESTIFY OR WE'LL

09:15AM 19   HAVE A CLEAR SHIELD FOR THEM SO THE MASKS CAN BE REMOVED AT

09:15AM 20   THAT TIME.

09:15AM 21       BUT I'M GOING TO ASK YOU TO PLEASE HAVE YOUR WITNESSES IN

09:15AM 22   ADVANCE PRESCREEN, DETERMINE THEIR VACCINATION STATUS, THEIR

09:16AM 23   EXPOSURE STATUS, THAT WOULD BE HELPFUL.

09:16AM 24       I'VE TALKED ABOUT PREVIOUSLY, AND THIS IS JUST

09:16AM 25   INFORMATIONAL, I'VE TALKED ABOUT LOOKING FOR TESTING AND RAPID

09:16AM 1    TESTING AND THE ABILITY TO DO THAT.  I THINK I TOLD YOU I DID

09:16AM 2    SOME INITIAL SEARCHING.  OF COURSE, OUR GOOD STAFF DID MORE

09:16AM 3    THOROUGH SEARCHING AND FOUND THAT REGRETTABLY THE COST TO

09:16AM 4    ENGAGE THAT RAPID TESTING FOR ALL PARTICIPANTS IN THE TRIAL,

09:16AM 5    NOT THE PUBLIC BUT JUST PARTICIPANTS, WOULD BE ABOUT $20,000.

09:16AM 6    WE'RE NOT ABLE TO ADVANCE THAT.  SO WE WON'T BE ABLE TO GO

09:16AM 7    FORWARD WITH THAT OPTION.

09:16AM 8         NOW, WE KNOW THAT, AND I THINK THE DOCTOR OBSERVES THAT IT

09:16AM 9    SEEMS THAT THE, AT LEAST IN OUR AREA HERE, THAT THE NUMBERS,

09:17AM 10   I'LL JUST CALL THEM NUMBERS, SEEM TO BE PLATEAUING, WHICH

09:17AM 11   SUGGESTS THAT IN THE NEXT TWO, THREE, FOUR WEEKS THERE MAY BE A

09:17AM 12   DECLINE IN THE POSITIVE TESTS AND HOSPITALIZATIONS, AND SO

09:17AM 13   WE'LL HOPE THAT THAT IS TRUE.  IF THAT DOES COME TO PASS, THEN

09:17AM 14   I THINK WE CAN AVOID AND MINIMIZE ANY DISRUPTIONS.

09:17AM 15        I TELL YOU THE DOCTOR DOES RECOMMEND THAT WE LIMIT THE

09:17AM 16   NUMBER OF PEOPLE IN THE COURTROOM.  WE MAY HAVE ANOTHER TRIAL

09:17AM 17   GOING IN THIS BUILDING AT THE SAME TIME AS OUR TRIAL HERE.

09:17AM 18   THAT TRIAL DOES NOT HAVE THE SAME LENGTH AND DURATION AS THIS

09:17AM 19   TRIAL, BUT IT WILL, OF COURSE, INCREASE THE NUMBER OF PEOPLE

09:17AM 20   THAT ARE IN THE COURTHOUSE, THE ELEVATORS.

09:17AM 21        I TELL YOU THIS IN ADVANCE, WE ARE GOING TO HAVE TO BE

09:17AM 22   PATIENT AS PEOPLE COME UP THE ELEVATORS.  WE'RE ON THE FIFTH

09:18AM 23   FLOOR.  SO WE'RE GOING TO HAVE TO MANAGE OUR TIME IN THAT

09:18AM 24   REGARD.

09:18AM 25        I'M GOING TO -- I TOLD THE DOCTOR AND INFORMED THE DOCTOR

09:18AM 1    ABOUT MY PLAN OF HOW WE'RE GOING TO CONDUCT THE TRIAL IT LOOKS

09:18AM 2    LIKE WITH MAYBE 2 HOUR INCREMENTS WITH MAYBE A 30, 45 MINUTE

09:18AM 3    BREAK IN BETWEEN, AND THEN OTHER BREAKS AS NEEDED, SHORTER

09:18AM 4    BREAKS, 10 MINUTES, OR SOMETHING LIKE THAT, OR ANY BREAK AS

09:18AM 5    NEEDED.

09:18AM 6        HE SUGGESTS AS MANY BREAKS AS POSSIBLE, OF COURSE, BUT

09:18AM 7    WE'LL DO THE BEST THAT WE CAN IN THAT REGARD.

09:18AM 8        WE WILL HAVE, THE COURT WILL HAVE N95 MASKS TO DISTRIBUTE

09:18AM 9    TO PARTICIPANTS IN THE TRIAL, NOT THE PUBLIC, BUT PARTICIPANTS,

09:18AM 10   ANY WITNESSES OR TEAMS THAT YOU HAVE IF YOU DON'T HAVE ACCESS

09:18AM 11   TO THOSE.

09:18AM 12       I'M INFORMED, I THINK WE KNOW THIS, IT'S COMMON KNOWLEDGE

09:19AM 13   NOW THAT CLOTH MASKS ALONE ARE THE LEAST EFFECTIVE AND DOUBLE

09:19AM 14   MASKING IS, OF COURSE, SUGGESTED BY MEDICAL PROFESSIONALS NOW.

09:19AM 15       SO THAT'S THE UPDATE ON THE PROTOCOLS OF WHAT WE'LL DO,

09:19AM 16   AND, UNFORTUNATELY, WHERE WE'RE GOING TO HAVE TO MOVE FOR A

09:19AM 17   BRIEF PERIOD OF TIME FOR THE JURY SELECTION.

09:19AM 18       ANY QUESTIONS, COMMENTS, SUGGESTIONS FROM EITHER SIDE

09:19AM 19   ABOUT THAT?

09:19AM 20           MR. SCHENK:  JUST ONE QUESTION.

09:19AM 21       YOUR HONOR SUGGESTED THAT IF A JUROR IS DISPLAYING

09:19AM 22   SYMPTOMS, THEY'RE GOING TO BE ASKED TO CONTACT THE COURT AND TO

09:19AM 23   NOT COME TO COURT THAT DAY.

09:20AM 24       I WONDER IF THE COURT OR IF THE COURT WANTS THE PARTIES TO

09:20AM 25   MEET AND CONFER ABOUT THE TRIAL RESPONSE TO THAT.  DO WE HAVE

09:20AM   1    SORT OF A SET -- DO WE PAUSE FOR ONE DAY AND EVALUATE OR THREE

09:20AM   2    DAYS OR REMOVE THE JUROR?  I JUST WONDER IF WE SHOULD HAVE A

09:20AM   3    PLAN IN THAT EVENT?

09:20AM   4         THE COURT:  WELL, WE SHOULD HAVE A PLAN, I THINK WE

09:20AM   5    SHOULD, AND THAT'S WHY I'VE RAISED IT THIS MORNING SO WE CAN

09:20AM   6    THINK ABOUT WHAT THE PROTOCOLS ARE, AND I INVITE YOU TO LOOK AT

09:20AM   7    THE CDC WEBSITE TO GET INFORMATION IF YOU WISH.

09:20AM   8         BUT IF WE DO, IF WE DO GET A CALL FROM A JUROR -- IN A

09:20AM   9    TRIAL I HAD EARLIER THIS YEAR THIS HAPPENED.  A JUROR CONTACTED

09:20AM  10    MS. KRATZMANN AND SAID HE WAS FEELING ILL.  HE ATTRIBUTED IT TO

09:20AM  11    SOMETHING -- A MEAL THAT HE HAD.

09:20AM  12         I TOLD HIM THROUGH MS. KRATZMANN TO JUST STAY AT HOME, WE

09:20AM  13    WEREN'T GOING TO, THAT WAS IN MARCH OR FEBRUARY, I SAID I'M NOT

09:21AM  14    GOING TO TAKE A CHANCE, THANK YOU.  WE EXCUSED HIM.  WE HAD

09:21AM  15    ALTERNATES.  WE EXCUSED HIM, AND AN ALTERNATE TOOK HIS PLACE,

09:21AM  16    AND WE DID THAT ON THE FLY WITH THE AGREEMENT OF COUNSEL, OF

09:21AM  17    COURSE.

09:21AM  18         SO WE CAN AND WE SHOULD, AND I INVITE YOU TO MEET AND

09:21AM  19    CONFER TO DISCUSS THAT, IF IT'S A WITNESS OR A JUROR, HOW LONG

09:21AM  20    WILL A BREAK BE, WHAT IS THE SYMPTOM.  SO, YES, I THINK WE'LL

09:21AM  21    HAVE TO MANAGE THAT.

09:21AM  22         IT MAY BE THAT WE'LL MAKE A DECISION THAT IT'S EASIER TO

09:21AM  23    EXCUSE A JUROR, AND THEN WE CAN CONTINUE AND PROCEED WITH THE

09:21AM  24    TRIAL.  AND IF IT'S A WITNESS, WE'LL PROBABLY HAVE TO TAKE A

09:21AM  25    BREAK, WON'T WE?  AND YOU'LL HAVE TO AGREE UPON WHETHER OR NOT

09:21AM  1      WE CAN BREAK THE EVIDENCE WITH THAT TESTIMONY AND COME BACK OR

09:21AM  2      CONTINUE OR WHETHER YOU'D LIKE TO CALL AND AGREE TO CALL A

09:21AM  3      WITNESS OUT OF ORDER TO FOLLOW THROUGH.

09:21AM  4          SO THOSE ARE THINGS THAT I INVITE YOU TO MEET AND CONFER

09:21AM  5      AND DISCUSS.

09:22AM  6              MR. SCHENK:  THANK YOU.

09:22AM  7              THE COURT:  AND WE'LL DO THE SAME.  YOU KNOW, WE

09:22AM  8      HOPE THAT ALL OF US CONTINUE TO TAKE SAFETY MEASURES AND REMAIN

09:22AM  9      HEALTHY, BUT IF STAFF, SOMEONE FEELS ASYMPTOMATIC, THAT'S

09:22AM  10     IMPORTANT, AND FOR THE SAFETY OF ALL OF US, WE NEED TO DIVULGE

09:22AM  11     THAT INFORMATION.

09:22AM  12         OUR LIVES HAVE CHANGED A BIT, INCLUDING OUR COURT LIVES.

09:22AM  13     IT'S IMPORTANT THAT OUR JUSTICE SYSTEM, YOUR JUSTICE SYSTEM

09:22AM  14     REMAINS OPEN AND SO EVERYONE HAS ACCESS TO THE COURTS, BUT, WE,

09:22AM  15     OF COURSE, WANT TO DO IT IN A SAFE MANNER SO EVERYONE IS SAFE.

09:22AM  16     THAT'S WHAT I'LL ENDEAVOR TO DO.

09:22AM  17         SO IF YOUR TEAMS COULD DISCUSS THAT, WHAT PROTOCOL YOU

09:22AM  18     MIGHT ENGAGE, THAT WOULD BE HELPFUL, TOO, SO WE'LL BE PREPARED

09:22AM  19     SHOULD THAT COME UP.

09:22AM  20             MR. SCHENK:  YES.

09:22AM  21             THE COURT:  I DON'T KNOW IF THAT ANSWERS YOUR

09:22AM  22     QUESTION.

09:22AM  23             MR. SCHENK:  IT DOES.  THANK YOU.

09:22AM  24             THE COURT:  MR. DOWNEY.

09:22AM  25             MR. DOWNEY:  YOUR HONOR, ONE DIFFICULTY, OF COURSE,

09:23AM 1   WITH RESPECT TO PROTOCOLS AND ALL OF THESE MANAGEMENT ISSUES IS

09:23AM 2   WE DON'T YET HAVE A JURY, AND WE DON'T KNOW WHAT THEIR COMFORT

09:23AM 3   LEVEL WILL BE WITH RESPECT TO THESE ISSUES.

09:23AM 4       WE KNOW FROM REVIEW OF THE QUESTIONNAIRES THAT SOME OF THE

09:23AM 5   JURORS HAVE EXPRESSED CONCERN ABOUT THOSE ISSUES.  WE WILL MEET

09:23AM 6   AND CONFER AS DIRECTED BY THE GOVERNMENT.  WE'RE AMENABLE TO

09:23AM 7   THE DISMISSAL OF JURORS WHO HAVE NOT YET RECEIVED A VACCINE FOR

09:23AM 8   ONE REASON OR ANOTHER, AND I THINK THERE CAN BE SEVERAL

09:23AM 9   DIFFERENT REASONS FOR THAT AS WELL AS JURORS WHO FOR SOME OTHER

09:23AM 10  REASON ARE VULNERABLE TO CONTRACTING THE VACCINE BECAUSE

09:23AM 11  THEY'RE IMMUNO COMPROMISED OR BECAUSE THEY LIVE WITH JURORS WHO

09:23AM 12  OR LIVE WITH OR COHABITATE WITH INDIVIDUALS WHO ARE NOT ABLE TO

09:23AM 13  BE VACCINATED OR HAVE CHOSEN NOT TO BE VACCINATED.

09:23AM 14      I THINK AS WE PICK THE JURY IT WILL BE IMPORTANT TO KEEP

09:24AM 15  IN MIND WHETHER THERE IS GOOD REASON TO DISMISS JURORS WHO HAVE

09:24AM 16  A HIGHER RISK OF CONTRACTING COVID AND SPREADING IT TO OTHER

09:24AM 17  PARTICIPANTS IN THE TRIAL AND OTHER JURORS.

09:24AM 18      SO WE'LL MEET WITH THE GOVERNMENT AND SEE IF THAT IS AN

09:24AM 19  ISSUE THAT WE CAN RESOLVE BETWEEN US AND MAKE A PROPOSAL, BUT I

09:24AM 20  THINK WITH ALL OF THE PROTOCOLS AND SO FORTH, OF COURSE, AND

09:24AM 21  YOUR HONOR HAS SAID THIS ON A NUMBER OF OCCASIONS, YOU KNOW,

09:24AM 22  THE JURORS MAY HAVE A PREFERENCE AND MAY BE VERY OUTSPOKEN IN

09:24AM 23  ARTICULATING THAT AND PARTICULARLY AND UNDERSTANDABLY IN TERMS

09:24AM 24  OF THEIR HEALTH.

09:24AM 25      SO WE'LL DO THE BEST WE CAN WITH THE ISSUES IN ADVANCE,

09:24AM 1    BUT WE'LL MANAGE THEM NO DOUBT AS WE GO ALONG.

09:24AM 2              THE COURT:  SURE.  WE CAN'T PREPARE FOR EVERYTHING,

09:24AM 3    BUT WE DO THE BEST WE CAN.

09:24AM 4        I KNOW A RECENT TRIAL IN THIS COURTHOUSE THE JURORS

09:24AM 5    EXPRESSED THE DESIRE TO SIT NEXT TO ONE ANOTHER AND NOT BE

09:24AM 6    DISPERSED IN THE COURTROOM.  THEY WERE VERY COMFORTABLE.

09:25AM 7    PERHAPS THAT WAS PART OF THE TRIAL, BUT MAYBE THERE WAS INQUIRY

09:25AM 8    ABOUT THEIR VACCINATION STATUS, ET CETERA, AND THE JURORS, AT

09:25AM 9    LEAST FOR PART OF THAT TRIAL OR THE MAJORITY OF THAT TRIAL, MY

09:25AM 10   UNDERSTANDING, SAT NEXT TO ONE ANOTHER MUCH LIKE ONE DOES IN AN

09:25AM 11   AIRPLANE, AND THEY WERE QUITE COMFORTABLE WITH THAT.

09:25AM 12       SO THAT'S ANOTHER POSSIBILITY, OF COURSE.

09:25AM 13       LET ME SAY WE HAVE -- I HAVE ORDERED AND THEY'RE ON ORDER

09:25AM 14   TWO AIR PURIFIERS, ONE FOR EACH TABLE, AND WE'LL HAVE THOSE

09:25AM 15   COME IN.  I'M HOPEFUL THAT WE'LL HAVE ELECTRICITY TO RUN THOSE

09:25AM 16   WHEN THE TRIAL STARTS, I EXPECT WE WILL, BUT WE'LL HAVE THOSE

09:25AM 17   FOR EACH TABLE AS WELL AS IN ADDITION TO THE WITNESS STAND,

09:25AM 18   WE'LL HAVE THAT, TOO.

09:25AM 19       SO I CAN'T TELL YOU WHEN THEY'LL BE DELIVERED, BUT THEY'LL

09:25AM 20   BE HERE FOR THE TRIAL, AND I'LL LET YOU KNOW THAT.

09:25AM 21       OKAY.  ALL RIGHT.  THANKS VERY MUCH.  THANK YOU.

09:25AM 22       ANYTHING ELSE BEFORE WE MOVE TO YOUR AGREED UPON

09:26AM 23   DISMISSAL?

09:26AM 24             MR. SCHENK:  NO, YOUR HONOR.

09:26AM 25             MR. DOWNEY:  NO, YOUR HONOR.

09:26AM  1              THE COURT:  OKAY.  THANK YOU.

09:26AM  2         SO I DID, I STARTED OFF SAYING OF COURSE YOU WILL HAVE THE

09:26AM  3    OPPORTUNITY TO LOOK AT THE QUESTIONNAIRES.  THANK YOU FOR

09:26AM  4    COPYING THEM, FOR PROVIDING THEM TO THE COURT.

09:26AM  5         I HAVE YOUR LIST OF AGREED DISMISSALS, AND I THOUGHT WE

09:26AM  6    WOULD GO THROUGH THOSE.

09:26AM  7         FIRST, YOU INFORMED THE COURT THAT I THINK MS. HOLMES

09:26AM  8    WOULD LIKE TO DISCUSS SOME OTHER CATEGORIES REGARDING

09:26AM  9    EXPRESSIONS OF VULNERABILITY IN THEIR QUESTIONNAIRES AND THEN

09:26AM  10   SOME OTHERS FOR BIAS REASONS.

09:26AM  11        LET ME JUST SAY AT THE OUTSET, THE BIAS, IT SEEMS TO ME --

09:26AM  12   I'M GLAD YOU IDENTIFIED THOSE, I'M THANKFUL AND GRATEFUL FOR

09:26AM  13   THAT, BUT I DON'T THINK WE CAN EXCLUDE TODAY JURORS JUST WHO

09:27AM  14   HAVE EXPRESSED OR AT LEAST YOU'VE IDENTIFIED AN EXPRESSION THAT

09:27AM  15   MIGHT BE CONSIDERED BIAS.

09:27AM  16        MY SENSE IS THAT WE'LL NEED TO TALK TO THOSE JURORS, AND

09:27AM  17   THE COURT WOULD NEED TO EXPLORE THOSE EXPRESSIONS AND TO SEE

09:27AM  18   MORE THAN EXPRESSED IN THE QUESTIONNAIRE WHAT THAT BIAS IS AND

09:27AM  19   WHETHER OR NOT ANY PERCEIVED BIAS CAN BE SET ASIDE IN THE

09:27AM  20   NORMAL VOIR DIRE PROCESS.

09:27AM  21        SO I DON'T THINK WE'LL -- I DON'T THINK TODAY THAT I'M

09:27AM  22   INCLINED TO EXCUSE CERTAIN JURORS.  I APPRECIATE RAISING THAT

09:27AM  23   TO MY ATTENTION.

09:27AM  24        MAYBE THAT WASN'T YOUR THOUGHT IN THAT REGARD, MR. DOWNEY.

09:27AM  25              MR. DOWNEY:  YOUR HONOR, IT WAS NOT MY THOUGHT THAT

09:27AM   1      WE WOULD EXCUSE THEM TODAY, OR, FRANKLY, ANY JURORS OTHER THAN

09:27AM   2   THOSE WHOM THERE HAD BEEN A STIPULATION.

09:27AM   3      I JUST WANTED TO TELL THE COURT HOW WE ARE THINKING ABOUT

09:27AM   4   THE BIAS ISSUE IN PART SO THAT THE COURT CAN HAVE IT IN MIND

09:28AM   5   WHEN WE ACTUALLY DO HAVE THE JURORS HERE.

09:28AM   6      YOUR HONOR IS RIGHT THAT IN A TYPICAL CASE BIAS WOULD BE A

09:28AM   7   SUBJECT OF INQUIRY DURING VOIR DIRE, AND THAT THE COURT WOULD

09:28AM   8   ASSESS IT, AND THAT IS, YOU KNOW, THE OVERWHELMINGLY NORMAL

09:28AM   9   PROCEDURE WITH RESPECT TO DISCERNING ACTUAL BIAS.

09:28AM  10      HOWEVER, THERE ARE OTHER FORMS OF BIAS THAT THE

09:28AM  11   NINTH CIRCUIT AND THE SUPREME COURT HAVE RECOGNIZED THAT CAN BE

09:28AM  12   CREATED BY EXPOSURE OF JURORS TO INFORMATION OUTSIDE OF COURT,

09:28AM  13   WHICH RELATES DIRECTLY TO THE DEFENDANT, AND THAT INFORMATION

09:28AM  14   CAN GIVE RISE TO IMPLIED BIAS.

09:28AM  15      AND IN THOSE INSTANCES, YOU KNOW, JUROR STATEMENTS OF

09:28AM  16   IMPARTIALITY ARE INSUFFICIENT TO DEMONSTRATE THAT THAT JUROR IS

09:28AM  17   QUALIFIED TO SERVE.

09:28AM  18      WE HAVE IN CONNECTION WITH THE QUESTIONNAIRES ALREADY

09:29AM  19   IDENTIFIED A BUCKET OF, I DON'T KNOW, 30-PLUS JURORS WHO HAVE

09:29AM  20   ACKNOWLEDGED THAT THEY'VE BEEN EXPOSED TO LONG FORM PREJUDICIAL

09:29AM  21   PUBLICITY ABOUT THE DEFENDANT.

09:29AM  22      UNDER THE GONZALEZ CASE IN THE NINTH CIRCUIT AND THE

09:29AM  23   MARSHALL CASE THE OLD SUPREME COURT CASE, IMPLIED BIAS FROM

09:29AM  24   EXPOSURE TO PREJUDICIAL INFORMATION OUTSIDE OF COURT THAT IS

09:29AM  25   SPECIFIC TO THE DEFENDANT, WE'RE GOING TO ASK THAT THOSE JURORS

09:29AM 1    BE DISMISSED.  I WANTED TO FLAG THAT ISSUE FOR THE COURT SO

09:29AM 2    THAT THE COURT HAD IN MIND BEFORE WE BEGAN.

09:29AM 3        BUT I DON'T EXPECT TO GO THROUGH THOSE JURORS TODAY.

09:29AM 4            THE COURT:  OKAY.  THANK YOU VERY MUCH.  THANK YOU.

09:29AM 5        AND I KNOW IN YOUR TRANCHE OF AGREED STRIKES, I'LL CALL

09:29AM 6    THEM, THERE ARE -- THERE APPEAR TO BE A FEW THAT HAVE, AT LEAST

09:30AM 7    AS I HAVE REVIEWED THEIR QUESTIONNAIRES, HAVE EXPRESSED STRONG

09:30AM 8    OPINIONS ABOUT THE CASE SUCH THAT BOTH SIDES FELT THAT THEY

09:30AM 9    COULD NOT BE, SHALL I SAY, REHABILITATED BECAUSE OF THE

09:30AM 10   EXPRESSION, IT'S APPROPRIATE TO DISMISS THEM NOW, AND I CAPTURE

09:30AM 11   THAT.

09:30AM 12           MR. DOWNEY:  THERE'S NO QUESTION, YOUR HONOR, THAT

09:30AM 13   THERE'S A NUMBER OF QUESTIONNAIRES WHERE ACTUAL BIAS AGAINST

09:30AM 14   THE DEFENDANT HAS BEEN EXPRESSED CLEARLY, AND THAT'S CERTAINLY

09:30AM 15   A BASIS FOR DISMISSAL, AND THE ISSUE THAT I'M RAISING FOR

09:30AM 16   YOUR HONOR IS REALLY ONE TO CONSIDER THAT IS INDEPENDENT OF THE

09:30AM 17   COLLOQUY THAT WILL HAPPEN WITH THE JURORS.

09:30AM 18           THE COURT:  RIGHT.  OKAY.  THANK YOU.

09:30AM 19       WELL, LET'S GO THROUGH THE -- I THOUGHT WE SHOULD GO

09:30AM 20   THROUGH THE QUESTIONNAIRES.  I SUGGESTED TO YOU THAT YOU SHOULD

09:30AM 21   BEAR IN MIND ANY BATSON ISSUES IN YOUR AGREED-UPON STRIKES.  SO

09:30AM 22   I'D LIKE TO DISCUSS THAT AS WELL, OR AT LEAST OBSERVE THAT AS

09:31AM 23   WELL.

09:31AM 24       AND AS I HAVE YOUR LIST, THE FIRST IS, I'M JUST GOING TO

09:31AM 25   IDENTIFY THEM BY NUMBERS, JUROR NUMBER 4, AND I THINK THIS

09:31AM 1      IS -- IT LOOKS LIKE THIS IS A LANGUAGE ISSUE.

09:31AM 2              MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR, FROM THE

09:31AM 3      PERSPECTIVE OF THE DEFENSE.

09:31AM 4              MR. SCHENK:  YES, YOUR HONOR.

09:31AM 5              THE COURT:  ALL RIGHT.  THANK YOU.

09:31AM 6          I'VE REVIEWED THIS QUESTIONNAIRE, AND I DO AGREE THAT THE

09:31AM 7      QUESTIONNAIRE, THE WAY IT'S FILLED OUT, IT DOES PRESENT THAT

09:31AM 8      THIS INDIVIDUAL, JUROR NUMBER 4, DOES HAVE AN ISSUE WITH

09:31AM 9      UNDERSTANDING THE ENGLISH LANGUAGE COMPREHENSION THAT WOULD

09:31AM 10     JEOPARDIZE HIS ABILITY TO PARTICIPATE AS A JUROR IN THE CASE.

09:31AM 11         SO I'LL ACCEPT YOUR STIPULATION AS TO JUROR NUMBER 4.

09:31AM 12     THAT JUROR WILL BE DISMISSED.

09:32AM 13         JUROR NUMBER 9.  IS IT BIAS AS TO THIS JUROR?

09:32AM 14             MR. SCHENK:  YES, YOUR HONOR.  I BELIEVE THIS IS THE

09:32AM 15     JUROR WHO SAID THAT THIS JUROR KNEW PEOPLE WHO LOST MONEY IN

09:32AM 16     THERANOS.

09:32AM 17             THE COURT:  MR. DOWNEY?

09:32AM 18             MR. DOWNEY:  YOUR HONOR, I THINK THE BIAS ISSUE WITH

09:32AM 19     REGARD TO THIS JUROR.  THERE IS ALSO SOME CONCERN WITH THIS

09:32AM 20     JUROR ABOUT EXPOSURE OF CHILDREN, EXPOSURE TO PEOPLE THAT THEY

09:32AM 21     LIVE WITH WHO ARE OLDER WHO HAVE PARTICULAR VULNERABILITY TO

09:32AM 22     CONTRACTING COVID.  AGAIN, IF THAT WERE TO OCCUR, IT WOULD

09:32AM 23     DISRUPT THE TRIAL, AND ON THAT BASIS WE WOULD SUGGEST

09:32AM 24     DISMISSAL.

09:32AM 25             THE COURT:  ALL RIGHT.  THANK YOU.

09:32AM 1       I'VE LOOKED AT THE ANSWER TO THE QUESTIONNAIRE.  I NOTICED

09:32AM 2    THAT FAMILIAL SITUATION.  I'VE ALSO LOOKED AT THE RESPONSES TO

09:32AM 3    62 AND 63, AND IT DOES APPEAR THAT THIS JUROR WOULD BE EXCUSED

09:33AM 4    FOR THIS JUROR TO BE ON THE PANEL.

09:33AM 5       SO I'LL EXCUSE JUROR NUMBER 9.  NUMBER 9 IS EXCUSED.

09:33AM 6       NEXT IS 13.  I BELIEVE -- IS THIS A LANGUAGE ISSUE ALSO?

09:33AM 7       MR. SCHENK:  YES.

09:33AM 8       MR. DOWNEY:  YES, YOUR HONOR.

09:33AM 9       THE COURT:  ALL RIGHT.  THE QUESTIONNAIRE SEEMS TO

09:33AM 10   INFORM AS SUCH THAT ENGLISH IS NOT THIS POTENTIAL JUROR'S FIRST

09:33AM 11   LANGUAGE.  THERE'S A RESPONSE TO A QUESTION SPECIFICALLY AS TO

09:33AM 12   THE LACK OF FACILITY WITH THE ENGLISH LANGUAGE, SO I'LL STRIKE

09:33AM 13   JUROR NUMBER 13.

09:33AM 14      NUMBER 15.  I THINK THIS IS ALSO AN ENGLISH ISSUE.

09:33AM 15      MR. SCHENK:  YES.

09:33AM 16      MR. DOWNEY:  YES, YOUR HONOR.

09:33AM 17      THE COURT:  ALL RIGHT.  THE QUESTIONNAIRE SEEMS TO

09:33AM 18   INDICATE, SO WE'LL EXCUSE JUROR NUMBER 15.  THANK YOU.

09:33AM 19      JUROR NUMBER 33.  IS THIS A BIAS SITUATION?

09:34AM 20      MR. SCHENK:  YES.

09:34AM 21      MR. DOWNEY:  YES, YOUR HONOR.

09:34AM 22      THE COURT:  COUNSEL, THANK YOU FOR YOUR COURTESY.

09:34AM 23   YOU CAN REMAIN SEATED.  I DON'T WANT YOU TO STRAIN YOUR BACKS

09:34AM 24   STANDING UP.  I APPRECIATE IT.

09:34AM 25      WE'RE WITHOUT MICROPHONES SO I WOULD APPRECIATE IT, FOR

09:34AM  1    THE COURT REPORTER'S BENEFIT, IF YOU COULD JUST SPEAK UP, AND

09:34AM  2    THAT WOULD BE HELPFUL FOR HER.

09:34AM  3        THANK YOU.  I'VE READ THE QUESTIONNAIRE FOR JUROR NUMBER

09:34AM  4    33, AND THE COURT WILL EXCUSE JUROR NUMBER 33.  ALL OF THESE

09:34AM  5    ARE PER YOUR STIPULATIONS AS WELL.  THANK YOU.

09:34AM  6        34.  THIS LOOKS LIKE IT MIGHT BE A HARDSHIP SITUATION.

09:34AM  7        DO COUNSEL WANT TO ARTICULATE?

09:35AM  8            MR. SCHENK:  YES, YOUR HONOR.  THERE'S A CHILD CARE

09:35AM  9    ISSUE WITH JUROR NUMBER 34.

09:35AM  10            THE COURT:  DO YOU AGREE WITH THAT?

09:35AM  11            MR. DOWNEY:  WE DO, YOUR HONOR.  THERE ALSO IS

09:35AM  12    SUBSTANTIAL EXPOSURE TO PERSONS WHO ARE NOT CAPABLE AND HAVE

09:35AM  13    BEEN VACCINATED AND ON THAT BASIS WE WOULD ASK --

09:35AM  14            THE COURT:  ALL RIGHT.  WE'LL DISMISS JUROR NUMBER

09:35AM  15    34.

09:35AM  16        JUROR NUMBER 37.  IS THIS A LANGUAGE ISSUE?

09:35AM  17            MR. SCHENK:  NO, YOUR HONOR.

09:35AM  18            MR. DOWNEY:  IT IS, YOUR HONOR, YES.

09:35AM  19            THE COURT:  WELL, I HAVE A QUESTION ABOUT THAT.

09:35AM  20        IT APPEARS THAT THIS JUROR MATRICULATED FROM THE

09:35AM  21    UNIVERSITY OF SOUTHERN CALIFORNIA WITH A MASTER'S IN SCIENCE,

09:35AM  22    IN COMP SCI.

09:35AM  23        AM I RIGHT ABOUT THAT?  DOES THAT SEEM TO SUGGEST THAT --

09:35AM  24            MR. SCHENK:  YES, YOUR HONOR.  I BELIEVE THAT THIS

09:35AM  25    IS THE JUROR WHO SAID THAT SOMETIMES THIS JUROR NEEDED TO

09:36AM 1     GUESS.

09:36AM 2          THE COURT:  I DID READ THAT, "RUN INTO SOME UNKNOWN

09:36AM 3     VOCABULARIES AND HAVE TO GUESS."

09:36AM 4          MR. SCHENK:  THERE'S ALSO A POTENTIAL BIAS ISSUE

09:36AM 5     THERE, AND THE JUROR MAKES A STATEMENT ABOUT I BELIEVE THE WORD

09:36AM 6     IS DEFAULT CONCLUSIONS HAVING BEEN REACHED FOR THIS JUROR.

09:36AM 7          MR. DOWNEY:  YOUR HONOR, WE AGREE IN ALL RESPECTS.

09:36AM 8      I THINK THE ANSWERS TO 62 AND 68 REFLECT AT LEAST SOME

09:36AM 9     LIMITATION AND UNDERSTANDING OF THE LANGUAGE, AND THEN THE

09:36AM 10    ANSWER TO 39 REFLECTS BIAS.

09:36AM 11         THE COURT:  WELL, IT'S -- AS I SAID, THE UNIVERSITY

09:36AM 12    OF SOUTHERN CALIFORNIA IS A GREAT UNIVERSITY.  I THINK ONE HAS

09:37AM 13    TO HAVE A CERTAIN COMMAND OF ENGLISH TO GET A MASTER'S IN

09:37AM 14    COMP SCI, ONE OF THE MORE DIFFICULT MAJORS, SO THAT WAS

09:37AM 15    CONCERNING TO ME.

09:37AM 16     BUT I UNDERSTAND YOUR POSITION ON THE ANSWERS TO THE OTHER

09:37AM 17    QUESTIONS.

09:37AM 18     WE'LL STRIKE JUROR NUMBER 37, AND I'LL AGREE WITH YOUR

09:37AM 19    DISMISSAL FINDING THAT THERE IS A BIAS ISSUE THERE AS WELL.

09:37AM 20         JUROR NUMBER 41.  IS THIS A BIAS STRIKE AS WELL?

09:37AM 21         MR. SCHENK:  IT IS.

09:37AM 22         MR. DOWNEY:  YES, YOUR HONOR.

09:37AM 23         THE COURT:  ALL RIGHT.  THANK YOU.

09:37AM 24     I'VE LOOKED AT SOME RESPONSES TO THE QUESTIONS, QUESTION

09:37AM 25    61 AND OTHERS THAT INFORM, AND I'LL AGREE TO DISMISS JUROR

09:37AM 1    NUMBER 41.

09:37AM 2         JUROR NUMBER 51.  WHO WOULD LIKE TO COMMENT ON JUROR

09:38AM 3    NUMBER 51?

09:38AM 4         MR. SCHENK:  I BELIEVE THERE'S TWO ISSUES HERE.

09:38AM 5    THERE'S AN EXPRESSION OF A FINANCIAL HARDSHIP, AND I THINK THIS

09:38AM 6    WAS THE JUROR WHO WAS APPROACHED BY THERANOS OR EMPLOYED.

09:38AM 7         MR. DOWNEY:  WE CONCUR WITH THAT, YOUR HONOR.  THE

09:38AM 8    RESPONSES TO 1 AND 8 REFLECT THAT THIS IS A SOLO PRACTITIONER

09:38AM 9    WHO CAN'T CONDUCT HIS PRACTICE AND THAT HE ALSO HAS

09:38AM 10   EXTRAORDINARY NEEDS IN CARING FOR A SPECIAL NEEDS CHILD.

09:38AM 11        AND THEN AS MR. SCHENK SAYS, THE RESPONSE TO 62 AND 41

09:38AM 12   INDICATE THAT HE'S HAD SOME PRIOR EXPERIENCE RELATED TO

09:38AM 13   THERANOS IN THE CASE.

09:38AM 14        THE COURT:  ALL RIGHT.  THANK YOU.

09:38AM 15        I'VE ALSO LOOKED AT THE FURTHER EXPLANATION AS TO QUESTION

09:38AM 16   NUMBER 65 WITH SOME INTRIGUING INTEREST, BUT I THINK FOR THE

09:39AM 17   REASONS THAT YOU'VE INDICATED THAT WE SHOULD, AND I'LL AGREE TO

09:39AM 18   YOUR STIPULATED DISMISSAL OF JUROR NUMBER 51.

09:39AM 19        JUROR NUMBER 61.  I BELIEVE THIS IS A HARDSHIP REGARDING

09:39AM 20   COLLEGE.

09:39AM 21        MR. SCHENK:  YES.

09:39AM 22        THE COURT:  WE'LL HAVE TO GO TO 54.  EXCUSE ME.

09:39AM 23        MR. DOWNEY:  THAT'S RIGHT.  THIS YOUNG MAN IS

09:39AM 24   LEAVING OUT OF THE DISTRICT, AS I UNDERSTAND IT, FOR COLLEGE.

09:39AM 25        THE COURT:  RIGHT.  SO I'LL EXCUSE JUROR NUMBER 61.

09:39AM 1          MR. DOWNEY:  YOUR HONOR, I DON'T KNOW IF WE

09:39AM 2     DISCUSSED JUROR NUMBER 54.

09:39AM 3          THE COURT:  WE HAVEN'T.  NO.  I'VE SKIPPED OVER

09:39AM 4     THAT.

09:39AM 5        WHY DON'T YOU TELL ME ABOUT JUROR 54.

09:39AM 6          MR. DOWNEY:  IT APPEARS 54 ALSO PRESENTS AN ISSUE

09:39AM 7     RELATED TO LANGUAGE BUT 95 PERCENT OF THE QUESTIONNAIRE WAS --

09:39AM 8          THE COURT:  BLANK.

09:39AM 9          MR. DOWNEY:  -- LEFT BLANK, AND THEN THERE WAS AN

09:40AM 10    INDICATION THAT THE QUESTIONS WERE NOT UNDERSTOOD ON THE

09:40AM 11    QUESTIONNAIRE.

09:40AM 12         THE COURT:  I NOTED THAT.  I'LL AGREE TO DISMISS

09:40AM 13    JUROR NUMBER 54.

09:40AM 14      66.  IS THIS AN EMPLOYMENT ISSUE?  I THINK THIS IS --

09:40AM 15    EMPLOYMENT IS -- I'VE LOOKED, AND WE'VE ALL SEEN THIS TYPE OF

09:40AM 16    EMPLOYMENT IDENTIFIED IN THE PRESS AND MEDIA.  THIS PERSON

09:40AM 17    WORKS IN THE COVID HEALTH CARE.

09:40AM 18      SO I'LL EXCUSE 66 AS A CONFLICT WITH EMPLOYMENT.

09:40AM 19      67.  EXCUSE ME.

09:40AM 20         MR. DOWNEY:  I THINK, YOUR HONOR, THIS IS A HARDSHIP

09:40AM 21    SITUATION THAT IS DISCUSSED IN RESPONSE TO QUESTION 1 BASED ON

09:41AM 22    AN ELDER CARE SITUATION FOR ELDERLY PARENTS WHO SUFFER FROM

09:41AM 23    DEMENTIA.

09:41AM 24         MR. SCHENK:  YES, WE AGREE.

09:41AM 25         THE COURT:  AND JUROR NUMBER 67 HAS PARENTS AGE 92

```
09:41AM   1    AND 94, AND I THINK IT WOULD PRESENT A HARDSHIP FOR THE

09:41AM   2    DURATION OF THIS TRIAL.

09:41AM   3         I WILL DISMISS JUROR NUMBER 67 FOR HARDSHIP.

09:41AM   4         69.  IS THIS A BIAS ISSUE?

09:41AM   5              MR. SCHENK:  YOUR HONOR, I THINK IT'S THAT IN

09:41AM   6    ADDITION TO SOME NEED TO CARE FOR A CHILD AT HOME WITH A

09:41AM   7    MEDICAL CONDITION.

09:41AM   8              MR. DOWNEY:  YES, YOUR HONOR.  THE RESPONSE TO

09:41AM   9    NUMBER 1 INDICATES THAT IN THIS WOMAN'S FAMILY THEY HAD A

09:41AM  10    RECENT TRAGIC EVENT THAT SHE'S HELPING THE FAMILY COPE WITH,

09:42AM  11    AND THEN THERE ARE SOME BIAS ISSUES THAT ARE PRESENTED BY THE

09:42AM  12    RESPONSE TO QUESTION 39.

09:42AM  13              THE COURT:  ALL RIGHT.  THANK YOU.

09:42AM  14         I'LL AGREE TO YOUR STIPULATION, AND WE'LL DISMISS 69.

09:42AM  15         72.

09:42AM  16              MR. SCHENK:  YOUR HONOR, THIS IS A BIAS ISSUE, AND I

09:42AM  17    BELIEVE ALSO THAT THIS JUROR IS BEGINNING STUDENT TEACHING.

09:42AM  18              THE COURT:  YES, I SEE THAT.

09:42AM  19         SO IT COULD BE A CONFLICT ISSUE WITH EMPLOYMENT?

09:42AM  20              MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

09:42AM  21              THE COURT:  ALL RIGHT.  THANK YOU.

09:42AM  22         WE'LL DISMISS JUROR NUMBER 72.

09:42AM  23         75.

09:42AM  24              MR. SCHENK:  THIS IS A BIAS ISSUE.

09:42AM  25              THE COURT:  I SEE THAT EXPRESSED IN SOME QUESTIONS,
```

09:43AM  1      MR. DOWNEY, SOME ANSWERS TO QUESTIONS.

09:43AM  2              MR. DOWNEY:  YOUR HONOR, WE AGREE.

09:43AM  3              THE COURT:  THANK YOU.  THE COURT ALSO AGREES AND

09:43AM  4      WILL DISMISS JUROR NUMBER 75.

09:43AM  5          76.  THIS IS --

09:43AM  6              MR. DOWNEY:  YOUR HONOR, FROM THE DEFENSE'S

09:43AM  7      PERSPECTIVE, THIS WAS A HARDSHIP SITUATION WHERE WE HAVE A

09:43AM  8      WOMAN WHO IS A TEACHER, AND SHE'S UNABLE TO BE REPLACED IN

09:43AM  9      CONNECTION WITH TEACHING AT THE SCHOOL.

09:43AM  10          IF THAT REMAINS THE CASE, CHILDREN I THINK HOPING TO

09:43AM  11     RETURN TO SCHOOL WON'T BE ABLE TO SO WE THOUGHT IN LIGHT OF

09:43AM  12     THAT PARTICULARLY AND GIVEN THE SITUATION IN THE COUNTRY AND

09:43AM  13     PEOPLE RETURNING TO SCHOOL SHE MIGHT BE DISMISSED.

09:43AM  14              THE COURT:  I NOTE THAT IN QUESTIONS 1 AND 2, IT'S

09:43AM  15     INTERESTING THAT THIS PERSON IS A SECOND GRADE TEACHER BUT HE

09:44AM  16     OR SHE SAYS THAT THEIR ENGLISH LANGUAGE IS NOT 100 PERCENT.

09:44AM  17          BUT I THINK THE CHANCE THAT HER SCHOOL AND STUDENTS WOULD

09:44AM  18     BE NEGATIVELY IMPACTED BY THIS JUROR'S PARTICIPATION SUGGESTS A

09:44AM  19     HARDSHIP, AND I'LL DISMISS JUROR NUMBER 76.

09:44AM  20          NUMBER 77.

09:44AM  21              MR. SCHENK:  I BELIEVE IT'S THE FINANCIAL HARDSHIP.

09:44AM  22              THE COURT:  DO YOU AGREE?

09:44AM  23              MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR.  THIS IS AN

09:44AM  24     INDIVIDUAL WHO WON'T BE PAID GIVEN THE DURATION OF THE TRIAL.

09:44AM  25     I THINK IT PRESENTS A HARDSHIP.

```
09:44AM   1         THIS IS ALSO AN INDIVIDUAL WHO FALLS INTO THE CATEGORY

09:44AM   2    THAT I MENTIONED TO YOUR HONOR WHEN WE WERE DISCUSSING COVID.

09:44AM   3    THIS IS AN INDIVIDUAL WHO ISN'T VACCINATED AND IN LIGHT OF THE

09:44AM   4    EXTRAORDINARY NATURE OF THIS TRIAL, IT PROBABLY WOULD NOT BE AN

09:44AM   5    IDEAL JUROR.

09:44AM   6         THE COURT:  THANK YOU.  I SEE THAT THIS WOULD BE AN

09:45AM   7    ECONOMIC HARDSHIP FOR JUROR NUMBER 77.

09:45AM   8         WE'LL DISMISS THAT JUROR.

09:45AM   9         82.

09:45AM  10         MR. SCHENK:  I THINK THIS IS A FINANCIAL HARDSHIP

09:45AM  11    AND ALSO MIGHT BE BIAS QUESTION AS WELL.

09:45AM  12         MR. DOWNEY:  WE AGREE, YOUR HONOR.

09:45AM  13         THE COURT:  THANK YOU.  I'VE REVIEWED THIS, AND IT

09:45AM  14    DOES APPEAR THAT THIS WOULD BE A FINANCIAL HARDSHIP FOR THIS

09:45AM  15    JUROR.

09:45AM  16         WE'LL EXCUSE JUROR NUMBER 82.

09:45AM  17         107.

09:45AM  18         MR. SCHENK:  I BELIEVE THIS WAS A JUROR WHO

09:45AM  19    INTERVIEWED AT THERANOS.

09:45AM  20         MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR.

09:45AM  21         THE COURT:  OH.  THANK YOU.  THAT DOES PRESENT SOME

09:45AM  22    POTENTIAL BIAS ISSUES AND OTHER CONFLICTS.  SO THIS, AS I

09:45AM  23    SOMETIMES SAY IN THE VOIR DIRE, THIS IS JUST PROBABLY NOT THE

09:45AM  24    RIGHT CASE FOR THIS PARTICULAR JUROR.

09:45AM  25         SO I'LL EXCUSE AND AGREE WITH YOUR DISMISSAL OF 105.
```

09:46AM 1          111.

09:46AM 2                  MR. SCHENK:  THIS WOULD BE A BIAS ISSUE, YOUR HONOR.

09:46AM 3                  MR. DOWNEY:  WE AGREE, YOUR HONOR.

09:46AM 4          (PAUSE IN PROCEEDINGS.)

09:46AM 5                  THE COURT:  I SEE THAT EXPRESSED IN SOME QUESTIONS,

09:46AM 6   AND I'VE LOOKED AT THIS, AND I'M NOT CONVINCED THAT ANY VOIR

09:46AM 7   DIRE WOULD ACTUALLY ASSIST IN DETERMINING ANY ABILITY TO SET

09:46AM 8   ASIDE ANY EXPRESS BIAS.

09:46AM 9          SO I'LL AGREE WITH YOUR STIPULATED DISMISSAL OF 111.

09:46AM 10          118.

09:46AM 11                  MR. DOWNEY:  YOUR HONOR, THIS IS A JUROR WHO

09:46AM 12   EXPRESSED SOME RACIAL PREJUDICE IN RESPONSE TO QUESTION NUMBER

09:47AM 13   54 AND ALSO APPEARS TO EXPRESS BIAS IN RESPONSE TO QUESTION 39.

09:47AM 14                  MR. SCHENK:  YOUR HONOR, I BELIEVE 118 APPLIED TO

09:47AM 15   WORK AT THERANOS.

09:47AM 16                  MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR, 42.  I SEE

09:47AM 17   THAT AS WELL, YES.

09:47AM 18                  THE COURT:  ALL RIGHT.  THE COURT WILL DISMISS JUROR

09:47AM 19   NUMBER 118.

09:47AM 20          123 I THINK IT IS.  IS THAT NEXT?

09:47AM 21                  MR. SCHENK:  YES.

09:47AM 22          THIS WOULD BE A LANGUAGE ISSUE.

09:47AM 23                  MR. DOWNEY:  WE AGREE, YOUR HONOR.

09:47AM 24                  THE COURT:  ALL RIGHT.  THANK YOU.

09:47AM 25          I'LL DISMISS PER YOUR AGREEMENT 123.

09:47AM 1           128.

09:48AM 2           MR. SCHENK:  I BELIEVE THIS JUROR EXPRESSED CONCERNS

09:48AM 3  ABOUT THE COMMUTE, THE DRIVE AND THE LENGTH OF THE COMMUTE TO

09:48AM 4  THE COURTHOUSE.

09:48AM 5           THE COURT:  YES, I NOTE THAT.  THIS JUROR LIVES IN

09:48AM 6  THE JURISDICTION OF THIS COURT, MONTEREY COUNTY, AND THIS

09:48AM 7  JUROR, POTENTIAL JUROR EXPRESSES CONCERN INDICATING THAT THIS

09:48AM 8  JUROR IS AN ANXIOUS DRIVER AND EXPRESSES DOUBT ABOUT AN ABILITY

09:48AM 9  TO HAVE A CLEAR MENTAL STATE HAVING COMMUTED TO THIS

09:48AM 10  COURTHOUSE.

09:48AM 11        THAT DOES CREATE A PROBLEM.  I SAW THAT, AND I THOUGHT WE

09:48AM 12  MIGHT BE ABLE TO EXPLORE THAT.

09:48AM 13           MR. DOWNEY:  YOUR HONOR, I THINK AS WELL THE

09:48AM 14  RESPONSES TO QUESTIONS 36 TO 41 REFLECT SOME PREJUDGMENT AND

09:49AM 15  BIAS THAT WILL BE A BASIS FOR DISMISSAL.

09:49AM 16           THE COURT:  WELL, I SEE THAT.  I APPRECIATE THAT.

09:49AM 17        BUT I THINK I'M MORE CONCERNED WITH THIS WITNESS'S

09:49AM 18  INABILITY TO HAVE A CLEAR MIND ONCE THEY'VE ARRIVED AT THE

09:49AM 19  COURTHOUSE, AND THAT'S PARAMOUNT FOR A JURY TO PARTICIPATE.

09:49AM 20        SO I'LL EXCUSE JUROR NUMBER 128.

09:49AM 21        129.

09:49AM 22           MR. SCHENK:  THIS JUROR IS MOVING.

09:49AM 23           THE COURT:  YES.  GOING TO THE GREAT STATE OF

09:49AM 24  COLORADO.  SO WE SHOULD ALLOW THAT TO OCCUR.

09:49AM 25        I'LL EXCUSE JUROR NUMBER 129.

09:49AM 1            130.  EXCUSE ME, 139.

09:50AM 2                  MR. SCHENK:  YOUR HONOR, I BELIEVE THIS IS A BIAS.

09:50AM 3                  MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR.

09:50AM 4                  THE COURT:  YES, I THINK I SEE THAT IN THE

09:50AM 5      RESPONSES.

09:50AM 6            I'LL EXCUSE 139.

09:50AM 7            187.

09:50AM 8                  MR. SCHENK:  THIS IS A BIAS AND PRIOR EXPOSURE TO

09:50AM 9      THIS PARTICULAR CASE.

09:50AM 10                 MR. DOWNEY:  YOUR HONOR, THIS JUROR WAS A GRAND

09:50AM 11     JUROR IN THIS MATTER, WHICH WAS INDICATED IN RESPONSE TO

09:50AM 12     QUESTION 31.

09:50AM 13                 THE COURT:  YES, I SEE THAT.

09:50AM 14           WHAT ARE THE ODDS OF THAT HAPPENING?  THIS JUROR WILL BE

09:50AM 15     EXCUSED.

09:50AM 16           THIS JUROR WAS A GRAND JUROR AND SAT ON THE GRAND JURY

09:50AM 17     THAT RETURNED AN INDICTMENT IN THIS CASE, AND, OF COURSE, IT

09:50AM 18     WOULD BE UNFAIR TO HAVE THAT JUROR SIT ON A TRIAL.

09:50AM 19                 THE CLERK:  YOUR HONOR, WAS THAT NUMBER 187?

09:51AM 20                 THE COURT:  187.  IS THAT RIGHT, COUNSEL?

09:51AM 21                 MR. SCHENK:  YES.

09:51AM 22                 THE COURT:  200.

09:51AM 23                 MR. SCHENK:  I BELIEVE THIS JUROR HAS A HARDSHIP --

09:51AM 24                 THE COURT:  HAIR STYLIST?

09:51AM 25           MR. DOWNEY, DO YOU SEE THAT?

09:51AM 1          MR. DOWNEY:  WE SEE THAT.

09:51AM 2          THE COURT:  NUMBER 201.

09:51AM 3          MR. SCHENK:  THIS JUROR IS MOVING IN 30 TO 60 DAYS.

09:51AM 4          THE COURT:  DO YOU AGREE, MR. DOWNEY?

09:51AM 5          MR. DOWNEY:  WE DO, YOUR HONOR.

09:51AM 6          THE COURT:  THANK YOU.  THIS JUROR APPEARS TO BE

09:51AM 7    MOVING SOON, IMMINENTLY.

09:52AM 8       SO WE'LL EXCUSE OR DISMISS JUROR NUMBER 201.

09:52AM 9       202.

09:52AM 10          MR. SCHENK:  THIS JUROR HAS A VERY LENGTHY TRIP

09:52AM 11   COMING UP.

09:52AM 12          THE COURT:  YES.  AND THERE'S ALSO AN EXPRESSION OF

09:52AM 13   LANGUAGE DIFFICULTIES.

09:52AM 14       MR. DOWNEY?

09:52AM 15          MR. DOWNEY:  YOUR HONOR, WE AGREE ON BOTH ISSUES.

09:52AM 16   THE JUROR HAS EXPRESSED ON NUMEROUS OCCASIONS DIFFICULTY

09:52AM 17   UNDERSTANDING THE QUESTIONNAIRE.

09:52AM 18       I RECOGNIZE THE JUROR HAS ANSWERED MANY QUESTIONS IN THE

09:52AM 19   QUESTIONNAIRE, BUT IT RAISED THE CONCERN ON OUR PART AS WELL AS

09:52AM 20   THE ISSUE THAT MR. SCHENK IDENTIFIED WITH RESPECT TO TRAVEL.

09:53AM 21       (PAUSE IN PROCEEDINGS.)

09:53AM 22          THE COURT:  YES.  I SEE THAT THE JUROR PREPURCHASED

09:53AM 23   TICKETS AND PLANS TO STAY OUT OF THE CONTINENTAL OF THE

09:53AM 24   UNITED STATES FOR A PERIOD OF TIME.

09:53AM 25       SO WE'LL EXCUSE JUROR 202.

09:53AM 1       203.

09:53AM 2           MR. SCHENK:  YOUR HONOR, I BELIEVE THIS IS A

09:53AM 3 LANGUAGE ISSUE.  THE JUROR DIDN'T ANSWER MOST OF THE QUESTIONS.

09:53AM 4           THE COURT:  THE QUESTIONNAIRE IS BLANK.  I DON'T

09:54AM 5 KNOW WHAT THE REASON FOR THAT IS.

09:54AM 6       MR. WADE, DO YOU HAVE ANY THOUGHTS?

09:54AM 7           MR. DOWNEY:  WELL, WE MADE THE SAME ASSUMPTION.

09:54AM 8           THE COURT:  MR. DOWNEY, I AM SORRY.

09:54AM 9           MR. DOWNEY:  IT'S FINE IF YOU CALL ME MR. WADE.  IT

09:54AM 10 MAKES ME FEEL YOUNGER.

09:54AM 11       SO 213 IS -- YOU KNOW, WE INFERRED A LANGUAGE DIFFICULTY

09:54AM 12 WHICH I THINK MR. SCHENK DID AS WELL.

09:54AM 13           THE COURT:  THERE WERE RESPONSES TO TWO QUESTIONS,

09:54AM 14 MAYBE THREE, AND WHICH INFORMED THAT THIS POTENTIAL JUROR DID

09:54AM 15 ACTUALLY FILL OUT THE QUESTIONNAIRE.

09:54AM 16       THE QUESTIONNAIRE IS NOT SIGNED, AND I HAD CONCERNS

09:55AM 17 WHETHER OR NOT THIS PERSON ACTUALLY SHOWED UP AND APPEARED.  AS

09:55AM 18 I SAID, THERE WERE RESPONSES TO SOME QUESTIONS, AND I DO THINK

09:55AM 19 THAT THE APPROPRIATE INFERENCE IS THAT THERE WAS A LANGUAGE

09:55AM 20 ISSUE, SO I'LL DISMISS JUROR NUMBER 213.

09:55AM 21       235.

09:55AM 22           MR. SCHENK:  YOUR HONOR, THIS JUROR IS MOVING TO

09:55AM 23 OREGON.  I BELIEVE THIS JUROR IS ALSO THE ONE THAT CONTACTED

09:55AM 24 THE COURT FOLLOWING THE COMPLETION OF THE QUESTIONNAIRE TO

09:55AM 25 SUGGEST THAT THEY FORGOT TO INCLUDE UPCOMING TRAVEL.  I DON'T

09:55AM  1    KNOW IF THAT'S SEPARATE FROM OREGON ON NOT, BUT I THINK THE

09:55AM  2    MOVE IS THE BASIS FOR EXCUSAL.

09:55AM  3                THE COURT:  YES.  AND THERE WAS A JUROR WHO

09:55AM  4    CONTACTED MS. KRATZMANN, AND I THINK MS. KRATZMANN FORWARDED

09:55AM  5    THE EMAIL TO EACH OF YOU INDICATING.

09:55AM  6        AS TO THIS JUROR, IT APPEARS THAT THIS JUROR IS MOVING TO

09:55AM  7    OREGON.

09:55AM  8                MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR.

09:55AM  9                THE COURT:  AND WE'LL EXCUSE JUROR NUMBER 235.

09:56AM 10        236.

09:56AM 11                MR. SCHENK:  YOUR HONOR, THIS JUROR HAS A MEDICAL

09:56AM 12    CONDITION AND INDICATES THAT THIS JUROR HAS EVEN BROUGHT WITH

09:56AM 13    THE JUROR A DOCTOR'S NOTE.

09:56AM 14                THE COURT:  YES, I SEE THAT.  THE CONDITION IS

09:56AM 15    EXPRESSED IN THE QUESTION NUMBER 8.

09:56AM 16        MR. DOWNEY?

09:56AM 17                MR. DOWNEY:  YOUR HONOR, WE CONCUR.

09:56AM 18                THE COURT:  SO I'LL DISMISS AND OTHERWISE EXCUSE

09:56AM 19    JUROR NUMBER 236.

09:56AM 20        THAT EXHAUSTS THE LIST OF AGREED-UPON STIPULATED

09:56AM 21    DISMISSALS THAT THE COURT HAS ENGAGED.  I HAVE LOOKED AT EACH

09:56AM 22    OF THESE AND NOTED THE REASONS FOR THE DISMISSALS.  I THINK

09:56AM 23    THOSE REASONS ARE APPROPRIATE, AND THEY ARE SUSTAINED BY THE

09:57AM 24    RESPONSES TO THE QUESTIONS, AND YOUR REASONS THAT WE HAVE SAID

09:57AM 25    ON THE RECORD OF THOSE.  AND I DON'T SEE AT THIS TIME THAT

09:57AM  1    THERE ARE ANY BATSON ISSUES AS TO ANY OF THESE STRIKES.  I

09:57AM  2    THINK COUNSEL HAVE ARTICULATED SUFFICIENT GROUNDS FOR STRIKING

09:57AM  3    THEM INDEPENDENT OF ANY BATSON ISSUE SO I DON'T SEE THAT THAT

09:57AM  4    IS AN ISSUE HERE.

09:57AM  5         WOULD EITHER OF YOU LIKE TO COMMENT ON THAT?

09:57AM  6              MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

09:57AM  7              MR. DOWNEY:  NO, YOUR HONOR.

09:57AM  8              THE COURT:  ALL RIGHT.  THANK YOU.

09:57AM  9         SO WE'LL EXCUSE AND OTHERWISE DISMISS THOSE JURORS FROM

09:57AM  10   COMING.  THEY WON'T COME TO COURT NEXT WEEK.  SO THEY WON'T BE

09:57AM  11   PART OF OUR JURY POOL, POTENTIAL POOL.

09:57AM  12        YOU SHOULD ADJUST YOUR, AND I KNOW YOU WILL, YOUR

09:57AM  13   SCHEDULES AND THE ORDER OF HOW THEY WILL BE SEATED.

09:57AM  14        TO THAT, WHAT I INTEND TO DO IS HAVE THE JURORS COME IN --

09:57AM  15   IT SOUNDS LIKE WE'LL HAVE A MAXIMUM OF 50 PER GROUP.  WE'LL SEE

09:57AM  16   HOW MANY WE CAN FIT IN THE COURTROOM.  IT'S MY HOPE THAT WE

09:57AM  17   CAN, NOTWITHSTANDING WHAT I'VE SAID EARLIER, WE CAN FILL THE

09:58AM  18   JURY BOX FOR THE VOIR DIRE PROCESS, AND WE'LL DO THAT

09:58AM  19   ACCORDING, AGAIN, BY NUMBERS.

09:58AM  20        TYPICALLY I START SEAT NUMBER 1 IN THE FAR LEFT AND THEN

09:58AM  21   FILL IN ACCORDINGLY, AND WE WILL ENGAGE A VOIR DIRE PROCESS FOR

09:58AM  22   EACH OF THE REMAINING GROUPS THAT WE'LL HAVE.

09:58AM  23        IT SOUNDS LIKE IT MIGHT BE THREE SEPARATE VOIR DIRES,

09:58AM  24   MAYBE MORE, BUT IT SOUNDS LIKE THAT'S WHAT WILL HAPPEN.

09:58AM  25        JUST TO INFORM YOU, IT WILL BE THREE SEPARATE VOIR DIRES,

09:58AM 1    WHICH IS TO SAY I'LL READ THE COURT'S VOIR DIRE, I'LL ENGAGE MY

09:58AM 2    VOIR DIRE AS I TOLD YOU I WOULD, AND THEN COUNSEL WILL HAVE AN

09:58AM 3    OPPORTUNITY TO ASK SOME FOLLOW-UP QUESTIONS AS WELL.  WE'LL DO

09:58AM 4    THAT FOR EACH PANEL.

09:58AM 5        SO IT COULD BE A LONG DAY, A COUPLE OF DAYS IF NEEDED.

09:58AM 6        MR. SCHENK.

09:59AM 7            MR. SCHENK:  DOES THE COURT EXCUSE FOR CAUSE BEFORE

09:59AM 8    THE ATTORNEY CONDUCTED VOIR DIRE PORTION?

09:59AM 9            THE COURT:  SOMETIMES.  IT MAY COME UP WHEN WE -- A

09:59AM 10   JUROR MAY EXPRESS SOME REASON THAT WASN'T EXPRESSED IN THE

09:59AM 11   QUESTIONNAIRE.  AS YOU KNOW THAT SOMETIMES HAPPENS, AND IF IT'S

09:59AM 12   APPROPRIATE, I'LL DO THAT.

09:59AM 13       I MAY ASK COUNSEL FOR YOUR THOUGHTS ON IT.  IF COUNSEL

09:59AM 14   WANT TO SPEAK AT THE BENCH, WE CAN DO THAT AS WELL.

09:59AM 15       I DON'T KNOW IF I'VE DONE THIS.  IT REMINDS ME,

09:59AM 16   MR. DOWNEY, CAN I GET A WAIVER OF YOUR CLIENT'S PRESENCE FOR

09:59AM 17   ANY BENCH CONFERENCES?

09:59AM 18           MR. DOWNEY:  MY CLIENT IS AMENABLE TO THAT.  IT'S AN

09:59AM 19   ISSUE THAT WE'VE DISCUSSED IN LIGHT OF YOUR HONOR'S NORMAL

09:59AM 20   PROCEDURES, BUT I DON'T THINK THAT THERE'S BEEN A STIPULATION

09:59AM 21   SUBMITTED, AND WE'RE HAPPY TO DO THAT.

09:59AM 22           THE COURT:  OKAY.  THANK YOU.  IF YOU WOULD, THAT

09:59AM 23   WOULD BE HELPFUL SO OUR SIDE CONFERENCES CAN BE MINIMIZED AS

10:00AM 24   FAR AS INDIVIDUALS PARTICIPATING.

10:00AM 25       SO IF YOU INTEND TO DO THAT, WAIVE HER PRESENCE AT THOSE

10:00AM  1   SIDE CONFERENCES, RELYING ON THOSE LAWYERS WHO PARTICIPATE IN

10:00AM  2   THE CONFERENCE FULLY INFORMING HER OF THE NATURE OF THE

10:00AM  3   CONFERENCE AND CONSULTING WITH HER FOR ANY NEEDS PRIOR TO GOING

10:00AM  4   FORWARD, I WOULD RECEIVE AND ACCEPT THAT STIPULATION.

10:00AM  5           MR. DOWNEY:  YOUR HONOR, MAY I ASK A COUPLE OF

10:00AM  6   QUESTIONS --

10:00AM  7           THE COURT:  YES, PLEASE.

10:00AM  8           MR. DOWNEY:  -- AS TO WHAT YOUR HONOR DESCRIBED AS

10:00AM  9   THE INTENDED PROCEDURE.

10:00AM  10      WHEN THE 50 JURORS ARE BROUGHT IN, AM I TO UNDERSTAND THAT

10:00AM  11  THE COURT IS CONDUCTING VOIR DIRE WITH THE ENTIRE 50, NOT JUST

10:00AM  12  WITH THOSE IN THE BOX?

10:00AM  13          THE COURT:  WELL, I'M GOING TO ASK QUESTIONS.  WHEN

10:00AM  14  I ASK MY QUESTIONS, I'M GOING TO DIRECT THOSE QUESTIONS TO THE

10:00AM  15  JURORS IN THE BOX, NOT TO THOSE REMAINING IN THE AUDIENCE, IN

10:01AM  16  THE GALLERY.  SO WE'LL HAVE TO DO THAT ROTATION AS YOU MAY, IF

10:01AM  17  YOU'VE READ VOIR DIRE THAT I'VE DONE IN OTHER TRIALS, I DO

10:01AM  18  REMIND THOSE IN THE GALLERY TO PAY ATTENTION BECAUSE IT MAY

10:01AM  19  COME TO PASS THAT THEY, TOO, WILL BE CALLED TO THE JURY BOX

10:01AM  20  ITSELF.

10:01AM  21      SO FOR THIS, FOR THIS TRIAL I THINK IT BEST TO FOCUS ON

10:01AM  22  OUR 15, 17, HOWEVER MANY WE FIT IN THE JURY BOX WITH THOSE

10:01AM  23  QUESTIONS, AND THEN FOLLOW UP WITH ANY THAT ARE ADDED TO THE

10:01AM  24  BOX.

10:01AM  25          MR. DOWNEY:  THE SECOND QUESTION I HAVE, YOUR HONOR,

10:01AM   1      IS WE HAD MADE A REQUEST BEFORE WE HAD THE BENEFIT OF THE

10:01AM   2      QUESTIONNAIRES THAT TO THE EXTENT THAT THE JURORS HAVE

10:01AM   3      INDICATED THAT THEY HAVE CONSUMED MEDIA, AND IT MAY HAVE HAD AN

10:01AM   4      EFFECT ON THEIR PERCEPTIONS OF THE CASE, THAT WE CONDUCT

10:01AM   5      INDIVIDUALIZED VOIR DIRE WITH RESPECT TO THOSE JURORS.  I RENEW

10:02AM   6      THAT REQUEST.

10:02AM   7           BUT IN ADDITION TO THAT, I WOULD JUST LIKE TO GET AN

10:02AM   8      UNDERSTANDING OF DOES THE COURT INTEND TO IDENTIFY ANY

10:02AM   9      INDIVIDUAL JURORS WITH WHOM IT INTENDS TO CONDUCT AN INDIVIDUAL

10:02AM  10      VOIR DIRE AT THIS TIME?

10:02AM  11           THE COURT:  I DON'T AT THIS TIME.

10:02AM  12           WHAT I THINK WE'LL ALL PAY ATTENTION TO THAT, DEPENDING ON

10:02AM  13      THE RESPONSES, AND ONE OF THE REASONS THAT WE HAD THE

10:02AM  14      QUESTIONNAIRES WAS TO IDENTIFY AS BEST AS POSSIBLE PRETRIAL ANY

10:02AM  15      MEDIA EXPOSURE AND ALSO TO ASK WHETHER OR NOT THAT PROSPECTIVE

10:02AM  16      JUROR'S OPINION THAT HAS INFECTED THEIR ABILITY TO BE FAIR AND

10:02AM  17      IMPARTIAL IN THE CASE.  THEY'VE EXPRESSED THAT TO SOME EXTENT

10:02AM  18      IN THE QUESTIONNAIRES.  WE CAN FOLLOW UP WITH THAT DURING OUR

10:02AM  19      VOIR DIRE PROCESS.

10:02AM  20           IF THERE BECOMES A SITUATION WHERE SOMEONE BEGINS TO

10:03AM  21      EXPRESS SOMETHING THAT THE COURT FEELS IS INAPPROPRIATE, I'LL

10:03AM  22      CERTAINLY DO WHAT I NEED TO DO TO EITHER CURTAIL THE

10:03AM  23      CONVERSATION OR SUGGEST THAT WE HAVE A PRIVATE CONVERSATION

10:03AM  24      WITH THAT INDIVIDUAL JUROR.

10:03AM  25           MR. DOWNEY:  WELL, BASED ON THE RESPONSES TO THE

10:03AM   1   QUESTIONNAIRES, YOUR HONOR, I THINK WE KNOW THAT 30 TO 40 AT

10:03AM   2   LEAST OF THE REMAINING JURORS HAVE CONSUMED SUBSTANTIAL, AND

10:03AM   3   WHEN I SAY "SUBSTANTIAL" I MEAN LENGTHY, EXTRAJUDICIAL MATERIAL

10:03AM   4   ABOUT THE CASE AND ABOUT THE DEFENDANT.

10:03AM   5       I THINK WE'RE VERY VULNERABLE TO ANY OF THOSE JURORS

10:03AM   6   COMMENTING IN SOME WAY AS EITHER THE COURT OR THE LAWYERS

10:03AM   7   CONDUCT VOIR DIRE ABOUT THE CONTENTS OF THOSE MEDIA

10:03AM   8   PRESENTATIONS THAT THEY'VE SEEN.

10:03AM   9       SO I WOULD JUST URGE THE COURT IN THOSE INSTANCES AS WELL

10:03AM  10   AS OTHERS, REGARDLESS OF WHETHER THE JUROR HAS HIM OR HERSELF

10:04AM  11   STATED THAT THEY HAVE PERCEIVED IMPARTIALITY, THAT THOSE VOIR

10:04AM  12   DIRES BE CONDUCTED OUT OF THE PRESENCE OF THE OTHER JURORS.

10:04AM  13       I DON'T KNOW THAT WE CAN COUNT EITHER ON OURSELVES OR ON

10:04AM  14   THE JUROR'S OWN PERCEPTIONS OF THEIR BIAS TO AVOID A PROBLEM

10:04AM  15   WITH RESPECT TO THAT.

10:04AM  16           THE COURT:  ALL RIGHT.  THANK YOU.  I THINK YOU

10:04AM  17   IDENTIFY THOSE IN YOUR SECOND PARAGRAPH OF THE SECOND GROUPING

10:04AM  18   OF JURORS.

10:04AM  19           MR. DOWNEY:  YES.  JUST TO BE CLEAR, I HAD GIVEN TO

10:04AM  20   THE COURT A LIST OF JURORS WHO HAVE CONSUMED SOME FORM OF LONG

10:04AM  21   FORM MEDIA.  THAT'S INCOMPLETE AS TO JURORS WHO HAVE

10:04AM  22   ACKNOWLEDGED WITHOUT IDENTIFYING WHAT MEDIA THEY'VE CONSUMED

10:04AM  23   WHO HAVE SAID I HAVE CONSUMED MEDIA.

10:04AM  24       THESE ARE JURORS WHO HAVE SAID THAT THEY HAVE CONSUMED ONE

10:04AM  25   OF A SPECIFIED GROUP OF MEDIA THAT INCLUDES BOOKS, LENGTHY

10:05AM  1    PODCASTS, LENGTHY -- YOU KNOW, MULTIPLE HOUR TELEVISION SHOWS

10:05AM  2    ABOUT THE CASE.

10:05AM  3        I'M NOT SURE HOW WE CAN REALLY DISCERN EITHER WHAT THAT

10:05AM  4    JUROR HAS GATHERED FROM DOING THAT OR WITHOUT SOME FORM OF VOIR

10:05AM  5    DIRE OF THOSE WITNESSES.

10:05AM  6        I APPRECIATE MANY OF THE JURORS HAVE SAID IN THE

10:05AM  7    QUESTIONNAIRE, AND I BELIEVE THEM, "I'LL TRY TO BE FAIR."

10:05AM  8        AND WHAT MORE COULD WE ASK AN HONEST PERSON TO SAY THAN

10:05AM  9    THAT?

10:05AM  10       BUT I DON'T THINK THAT THAT MEANS THAT WE'RE NOT AT RISK

10:05AM  11   OF SUBSTANTIAL PREJUDICE TO THE ENTIRE GROUP OF JURORS WHO ARE

10:05AM  12   PRESENT IN THE COURTROOM AT THAT TIME.

10:05AM  13           THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND YOUR

10:05AM  14   CONCERN.  WE'VE TALKED ABOUT THIS PREVIOUSLY WHETHER DURING THE

10:05AM  15   COLLOQUY OF A PARTICULAR JUROR THAT JUROR MIGHT EXPRESS

10:05AM  16   SOMETHING THAT WILL TAINT OR OTHERWISE INFLUENCE THE REMAINING

10:06AM  17   JURORS WHO MAY NOT HAVE THE SAME OPINION.

10:06AM  18       OF COURSE THAT IS ALWAYS A RISK IN EVERY TRIAL, ISN'T IT?

10:06AM  19   IT IS.

10:06AM  20       I UNDERSTAND THIS CASE YOU'RE SUGGESTING HAS, BECAUSE OF

10:06AM  21   THE NATURE OF THE MEDIA COVERAGE AND THE INTEREST IN THE CASE,

10:06AM  22   THAT YOU SUGGEST THAT THIS CASE HAS CERTAIN CONVERSATIONS THAT

10:06AM  23   MIGHT EXPOSE OTHER JURORS TO INFORMATION THAT THEY OTHERWISE

10:06AM  24   WOULD NOT HAVE OR OTHERWISE MIGHT AFFECT THEIR ABILITIES, AND

10:06AM  25   THAT'S WHY YOU'RE ASKING THAT THE COURT BE CONCERNED ABOUT

10:06AM   1        INDIVIDUAL VOIR DIRE AS TO THOSE WITNESSES, JURORS.  I THINK

10:06AM   2   THESE ARE LISTED IN THE PARAGRAPH WHERE IT STARTS, "SECOND."

10:06AM   3        IS THAT RIGHT?

10:06AM   4            MR. DOWNEY:  WELL, THEY ARE, BUT THESE ARE JURORS

10:06AM   5   WHO SAY THAT THEY HAVE SEEN ONE OF ABOUT -- AND CAN REMEMBER

10:06AM   6   THE NAMES OF ONE OF ABOUT TEN DIFFERENT MEDIA PRESENTATIONS AND

10:07AM   7   THOSE INCLUDE A BOOK, A LENGTHY CABLE TELEVISION SHOW, A

10:07AM   8   MULTIPART PODCASTS, TWO NETWORK PRESENTATIONS OR AUDIO BOOKS

10:07AM   9   AND POD TALKS BY WITNESSES IN THE CASE.

10:07AM  10        THE LIST THAT I'VE GIVEN YOU THAT IS LABELED SECOND IS

10:07AM  11   JUST WITNESSES WHO SAY I HAVE SEEN AND CONSUMED ONE OF THOSE

10:07AM  12   FORMS OF MEDIA.  THERE ARE MANY, MANY MORE WITNESSES WHO SAY I

10:07AM  13   HAVE BEEN EXPOSED TO MEDIA, I DON'T RECALL --

10:07AM  14            THE COURT:  HE MEANT JURORS.

10:07AM  15            MR. DOWNEY:  -- JURORS WHO SAY THAT I'VE BEEN

10:07AM  16   EXPOSED TO MEDIA.  I DON'T RECALL WHETHER IT'S ONE OF THESE OR

10:07AM  17   NOT.

10:07AM  18        SOME HAVE SAID I KNOW I'VE WATCHED A DOCUMENTARY.  I

10:07AM  19   HAVEN'T INCLUDED THOSE INDIVIDUALS IN THE PARAGRAPH LABELED

10:07AM  20   SECOND.

10:07AM  21        AND I WILL SUBMIT TO THE COURT THE MEDIA THAT THOSE JURORS

10:07AM  22   WHO ARE LISTED IN THE PARAGRAPH BEGINNING SECOND HAVE CONSUMED.

10:08AM  23        AND I THINK -- I WON'T REHEARSE THE PREJUDICE THAT THAT

10:08AM  24   COULD VISIT ON MS. HOLMES, BUT I THINK IF THE COURT SAMPLES

10:08AM  25   JUST A PORTION OF EACH OF THOSE FORMS OF MEDIA, THE COURT WILL

10:08AM 1      AGREE.

10:08AM 2              THE COURT:  OKAY.  THANK YOU.

10:08AM 3              MR. DOWNEY:  AND, YOUR HONOR, JUST TO CLARIFY MY

10:08AM 4      CONCERN.  OF COURSE THE DANGERS ARE MANY AND UNPREDICTABLE.

10:08AM 5      THE WITNESS MAY SAY I RECALL LEARNING THIS, BUT THEY MAY STATE

10:08AM 6      A FACT.  THEY MAY STATE A VIEW.

10:08AM 7          I DON'T KNOW EVERYTHING THAT WILL COME UP IN A COLLOQUY

10:08AM 8      WITH A JUROR WHO HAS CONSUMED THAT KIND OF MEDIA, BUT WE KNOW

10:08AM 9      THAT IT CAN TAINT THE POOL, AND, RESPECTFULLY, I WOULD SAY

10:08AM 10     THAT'S WHY THE NINTH CIRCUIT HAS ENCOURAGED THE DISTRICT COURTS

10:08AM 11     AND INDEED SUGGESTED IT'S A MERE REQUIREMENT IN CASES WITH

10:08AM 12     SUBSTANTIAL MEDIA TO HAVE INDIVIDUALIZED SEQUESTERED VOIR DIRE.

10:08AM 13         THAT'S A DISCUSSION THAT YOUR HONOR AND I HAVE HAD BEFORE,

10:08AM 14     BUT I RENEW THAT REQUEST IN LIGHT OF THE RESPONSES TO THE

10:09AM 15     QUESTIONNAIRE.

10:09AM 16             THE COURT:  THANK YOU.

10:09AM 17         MR. SCHENK.

10:09AM 18             MR. SCHENK:  YOUR HONOR, FIRST, BY MY COUNT I THINK

10:09AM 19     LESS THAN HALF OF THE INDIVIDUALS THAT FILLED OUT THE

10:09AM 20     QUESTIONNAIRE HAD PRIOR EXPOSURE TO THIS CASE, TO MS. HOLMES,

10:09AM 21     TO MR. BALWANI.

10:09AM 22         AS THE COURT POINTED OUT, ONE JUROR SAYING SOMETHING

10:09AM 23     DURING THE VOIR DIRE PROCESS THAT COULD BE HEARD AND INFLUENCE

10:09AM 24     OTHER JURORS IS A RISK IN EVERY CASE IN JURY SELECTION, IN

10:09AM 25     EVERY CASE.

10:09AM 1   I ANTICIPATE THAT THE COURT WILL INSTRUCT JURORS WHEN

10:09AM 2   THEY'RE ANSWERING THE QUESTIONS ABOUT THE IMPORTANCE OF

10:09AM 3   ANSWERING THE QUESTIONS TRUTHFULLY BUT NOT VOLUNTEERING THE

10:09AM 4   CONTENT OF SOMETHING THAT THEY'VE WATCHED OR READ.

10:09AM 5   I THINK THAT THERE'S A WAY TO MAKE SURE THAT WE KNOW

10:09AM 6   WHETHER THE JUROR HAS PRIOR EXPOSURE, WHETHER THAT EXPOSURE WAS

10:10AM 7   SIGNIFICANT OR NOT.

10:10AM 8   BUT I DON'T THINK WE NEED TO HAVE THE JURORS REENACT

10:10AM 9   SCENES OR DESCRIBE WHAT THEIR PRIOR EXPOSURE WAS, IF I

10:10AM 10   UNDERSTAND MR. DOWNEY'S CONCERN TO BE POLLUTION, ONE JUROR'S

10:10AM 11   DESCRIPTIONS BECOMING MEMORABLE FOR ANOTHER JUROR.

10:10AM 12   AND I THINK WHEN THE COURT INFORMS THE JURORS THAT IT'S

10:10AM 13   IMPORTANT TO SHARE INFORMATION AND ANSWER QUESTIONS HONESTLY,

10:10AM 14   BUT IT IS NOT NECESSARY FOR A JUROR TO FULLY SUMMARIZE THEIR

10:10AM 15   PRIOR EXPOSURE, I THINK WE CAN SOLVE THAT PROBLEM.

10:10AM 16   THOUGH I WANT TO ACKNOWLEDGE, THERE CERTAINLY COULD BE

10:10AM 17   SOME INSTANCES WHEN THE JUROR HAS HAD THE KIND OF EXPOSURE THAT

10:10AM 18   THE PARTIES OR THE COURT THINK NEEDS AN INDIVIDUALIZED VOIR

10:10AM 19   DIRE.

10:10AM 20   I DON'T THINK IT'S NECESSARY AT THE OUTSET TODAY TO SAY

10:10AM 21   HERE IS A LIST OF JUROR NUMBERS, AND WE'RE GOING TO

10:10AM 22   INDIVIDUALLY VOIR DIRE EVERY ONE OF THEM, THAT'S NOT NECESSARY.

10:11AM 23   BUT, YES, IS THERE THE OPPORTUNITY FOR THE COURT TO HEAR

10:11AM 24   IN RESPONSE TO A QUESTION A SUGGESTION THAT FURTHER, FURTHER

10:11AM 25   INDIVIDUAL VOIR DIRE IS NECESSARY?  I THINK THAT IS ALWAYS

10:11AM 1   TRUE.

10:11AM 2        IN FACT, THE COURT, I'M SURE, NOTICED THERE WERE A HANDFUL

10:11AM 3   OF JURORS WHO WROTE ON OTHER QUESTIONS THAT THEY WANTED TO

10:11AM 4   SPEAK PRIVATELY WITH THE COURT.

10:11AM 5        SO THERE CERTAINLY WILL BE TO SOME EXTENT INDIVIDUALIZED

10:11AM 6   VOIR DIRE WHEN THE NEED ARISES, BUT WHAT I DON'T THINK IS

10:11AM 7   NECESSARY IS TODAY TO SAY HERE'S A LIST OF LET'S CALL IT A

10:11AM 8   DOZEN OR A DOZEN AND A HALF JURORS, AND WE HAVE TO INDIVIDUALLY

10:11AM 9   VOIR DIRE ALL OF THEM.  AND AS I UNDERSTAND MR. DOWNEY TO BE

10:11AM 10  SAYING, THAT ISN'T IT, THESE ARE JUST THE JURORS WHO RECOGNIZED

10:11AM 11  PRIOR EXPOSURE TO A PARTICULAR WHEN PROMPTED BY A PARTICULAR

10:11AM 12  MEDIA SOURCE.

10:11AM 13       THERE COULD BE OTHER JURORS THAT ESSENTIALLY SOUNDS TO ME

10:11AM 14  LIKE INDIVIDUAL VOIR DIRE FOR THE ENTIRE VENIRE PANEL.  THAT

10:12AM 15  CERTAINLY IS NOT NECESSARY.

10:12AM 16            THE COURT:  THANK YOU.

10:12AM 17            MR. DOWNEY:  WELL, YOUR HONOR, THERE ARE TWO ISSUES

10:12AM 18  WHEN CONDUCTING THIS VOIR DIRE.

10:12AM 19       ONE IS DOES THE INDIVIDUAL JURORS WHO IS BEING ASKED

10:12AM 20  QUESTIONS HAVE BIAS AS A RESULT OF THE MEDIA THAT THEY HAVE

10:12AM 21  CONSUMED, AND THE SECOND CONCERN IS IN ELICITING THAT ARE WE

10:12AM 22  GOING TO EXPOSE WHAT THEY KNOW OR HOW THEY FEEL TO THE WHOLE

10:12AM 23  PANEL?

10:12AM 24       I APPRECIATE MR. SCHENK'S CONFIDENCE IN MY SKILL OR THE

10:12AM 25  COURT'S SKILL AND HAVING AN ABILITY TO NAVIGATE THAT IN FRONT

10:12AM   1       OF, YOU KNOW, 49 OTHER JURORS.

10:12AM   2             I WILL TELL THE COURT CANDIDLY, I'M NOT SURE I CAN DO IT.

10:12AM   3             SO I THINK WE'RE ENTITLED BOTH TO KNOW THAT THE INDIVIDUAL

10:12AM   4       JUROR WHO HAS HAD SUBSTANTIAL EXPOSURE TO ASSURE THEY'RE NOT

10:12AM   5       BIASSED, AND I DON'T THINK WE SHOULD DO THAT AT RISK OF

10:12AM   6       POLLUTING THE ENTIRE POOL OF JURORS.

10:12AM   7             I THINK MR. SCHENK IS SORT OF BOTH PART RIGHT AND PART

10:12AM   8       WRONG IN HOW HE CHARACTERIZES THE PROCESS.  HE'S RIGHT THAT

10:13AM   9       50 PERCENT OF THE QUESTIONNAIRES PROBABLY, APPROXIMATELY,

10:13AM  10       REFLECT THAT JURORS HAVE HAD SOME EXPOSURE THROUGH MEDIA TO

10:13AM  11       THIS CASE.  OF THAT NUMBER, A THIRD, 40 PERCENT INDICATE THAT

10:13AM  12       THEY HAVE HAD SOME FORM OF THIS LONG FORM MEDIA.

10:13AM  13             I THINK IT'S GOING TO BE VERY DIFFICULT FOR THE REASONS I

10:13AM  14       STATE FOR THOSE INDIVIDUALS TO SERVE, AND I THINK WHEN THE

10:13AM  15       COURT LOOKS AT WHAT THEY'VE LOOKED AT THE COURT WILL AGREE.

10:13AM  16             BUT THERE ARE OTHER JURORS WHO HAVE BEEN, AS THE COURT

10:13AM  17       WOULD EXPECT, VERY CANDID.  ONE JUROR WAS ASKED, YOU KNOW, CAN

10:13AM  18       YOU PUT ASIDE WHAT YOU KNOW?  AND HE SAID, WELL, I'LL TRY.  BUT

10:13AM  19       WHAT IF I REMEMBER SOMETHING DURING THE COURSE OF THE TRIAL?

10:13AM  20       THAT'S A COLLOQUY THAT YOUR HONOR AND I HAVE HAD BEFORE.

10:13AM  21             I THINK WITHOUT KNOWING WHAT THE JURORS KNOW, WHAT THEY'VE

10:13AM  22       BEEN EXPOSED TO, AND HOW THEY FEEL ABOUT IT, I DON'T THINK THAT

10:13AM  23       WE CAN ELIMINATE THE POSSIBILITY THAT THEY'RE SUFFERING FROM

10:14AM  24       SOME ACTUAL BIAS AS WELL AS THAT THEY'RE SUFFERING FROM SOME

10:14AM  25       IMPLIED BIAS UNDER THE STANDARDS SET FORTH BY THE NINTH CIRCUIT

10:14AM 1    IN UNDERSTAND STATES VERSUS GONZALEZ AND BY SUPREME COURT CASES

10:14AM 2    PRIOR TO THAT.

10:14AM 3       I WOULD GIVE THE COURT, YOU KNOW, A SIMPLE ANALOGY THAT

10:14AM 4    DEMONSTRATES THE PROBLEM.  THERE'S A SUPREME COURT CASE THAT IS

10:14AM 5    AN OLDER CASE BUT ITS PRINCIPLES NEVERTHELESS APPLY HERE, WHICH

10:14AM 6    IS MARSHALL VERSUS UNITED STATES, 360 UNITED STATES 310, 1959.

10:14AM 7       THE ISSUE THERE WAS A GROUP OF JURORS ON A JURY THAT HAD

10:14AM 8    ALREADY BEEN SEATED WERE EXPOSED TO INFORMATION ABOUT THE

10:14AM 9    DEFENDANT THAT HAD BEEN EXCLUDED FROM THE TRIAL.  SO IT WAS NOT

10:14AM 10   GOING TO COME INTO EVIDENCE, BUT IT WAS CLEARLY PREJUDICIAL AS

10:15AM 11   TO THE DEFENDANT.

10:15AM 12      THE JURORS ENGAGED IN A COLLOQUY WITH THE JUDGE MID TRIAL

10:15AM 13   WHERE THEY WERE ASKED, CAN YOU PUT THIS OUT OF YOUR MIND?

10:15AM 14      AND THE JURORS WHO REMAINED ALL SAID, YES, I CAN PUT THAT

10:15AM 15   OUT OF MY MIND.

10:15AM 16      THAT'S THE TYPE OF COLLOQUY THAT THE COURT IS IMAGINING

10:15AM 17   WITH THE JURORS IN THIS INSTANCE.

10:15AM 18      AND THE SUPREME COURT SAID, WELL, DESPITE THAT EXPLANATION

10:15AM 19   AND DESPITE THEIR STATED ABILITY TO BE FAIR, THE EXPOSURE TO

10:15AM 20   THIS INFORMATION IS BAD ENOUGH THAT IT CONSTITUTES A FORM OF

10:15AM 21   IMPLIED BIAS WHICH CANNOT BE CURED BY THE JUROR'S OWN STATEMENT

10:15AM 22   OF NONBIAS.

10:15AM 23      THAT IS THIS SITUATION, YOUR HONOR, EXCEPT THAT THE

10:15AM 24   NEWSPAPER ARTICLE THAT THESE JURORS HAVE BEEN EXPOSED TO IS

10:15AM 25   ESSENTIALLY -- AND IN SOME CASES JURORS ON THE LIST THAT I LIST

10:16AM 1    AS SECOND, THEY HAVE BEEN EXPOSED TO 10, 12, 14 HOURS ON

10:16AM 2    NONJUDICIAL PRESENTATION WHICH CONTAINS INADMISSIBLE,

10:16AM 3    INFLAMMATORY, OFTEN INACCURATE INFORMATION ABOUT THIS

10:16AM 4    DEFENDANT.  THAT IS HOW THIS TRIAL WILL START WITH JURORS LIKE

10:16AM 5    THAT IN THE BOX.

10:16AM 6         NOW, I THINK THAT INFORMATION AND THE EXPOSURE OF THAT

10:16AM 7    INFORMATION IS ENOUGH TO EXCLUDE IT IN THIS CASE, AND THAT'S

10:16AM 8    WHY I WANTED TO SUBMIT THE INFORMATION SO THE COURT HAD AN

10:16AM 9    OPPORTUNITY TO RECEIVE IT BUT THE NOTION THAT IN A DIALOGUE

10:16AM 10   WITH A JUROR LIKE THAT THERE'S NOT GOING TO BE A SPREAD OF THE

10:16AM 11   NEGATIVE INFORMATION, I THINK THERE WILL BE, YOUR HONOR.

10:16AM 12        SO I'VE SAID ENOUGH ON THE ISSUE.  YOUR HONOR UNDERSTANDS

10:16AM 13   MY POSITION.  I DON'T THINK IT IS THE PARADE OF HORRIBLES THAT

10:16AM 14   MR. SCHENK THREATENS.  I THINK THE COURT HAS MANAGED THE

10:17AM 15   PROCESS SO WE CAN IDENTIFY THOSE JURORS.  WE DON'T HAVE TO

10:17AM 16   ENGAGE IN INDIVIDUAL VOIR DIRE WITH THE ENTIRE PANEL.  WE KNOW

10:17AM 17   THE JURORS WHO MIGHT PRESENT A PROBLEM AND THOSE WHO MAY NOT.

10:17AM 18        THE COURT:  AND THOSE ARE IDENTIFIED IN THE

10:17AM 19   PARAGRAPH THAT STARTS "SECOND"?

10:17AM 20        MR. DOWNEY:  WELL, YOUR HONOR, I WOULD WANT TO

10:17AM 21   EXPAND THAT TO INCLUDE A LIST OF ADDITIONAL JURORS WHO HAVEN'T

10:17AM 22   SIMPLY ACKNOWLEDGED A SPECIFIC FORM OF MEDIA, BUT IN SOME CASES

10:17AM 23   HAVE SAID I'VE BEEN SUBSTANTIALLY EXPOSED TO THE MEDIA, I JUST

10:17AM 24   CAN'T RECALL WHICH OF THESE PROGRAMS I'VE SEEN.

10:17AM 25        THE COURT:  ALL RIGHT.  WELL, THANK YOU.

10:17AM 1     I THINK AT THE OUTSET YOU WERE DISCUSSING THIS, AND I

10:17AM 2     THINK I SUGGESTED TO EVERYONE THAT THERE MIGHT BE SURPRISE AS

10:17AM 3     TO THE NUMBER OF RESPONSES OF PROSPECTIVE JURORS WHO HAVE HEARD

10:17AM 4     NOTHING ABOUT THIS CASE AND YOUR COMMENTS, THOSE ARE THE JURORS

10:17AM 5     YOU WANT, JURORS WHO HAVE HAD NO CONNECTION, KNOW NOTHING ABOUT

10:17AM 6     THIS CASE, HAVE READ NOTHING ABOUT IT, HAVE NOT BEEN EXPOSED TO

10:17AM 7     THE MEDIA, THAT WOULD BE -- IT SOUNDS LIKE THE IDEAL JUROR FOR

10:18AM 8     YOU AND PERHAPS FOR THE GOVERNMENT AS WELL TO COME IN WITH A

10:18AM 9     CLEAN SLATE NOT HAVING ANY PRIOR KNOWLEDGE ABOUT THIS CASE, THE

10:18AM 10    FACTS OR THE PARTIES ATTENDANT TO IT.

10:18AM 11        I THINK THAT'S YOUR GOAL.  YOU RECOGNIZE THAT'S NOT

10:18AM 12    POSSIBLE OF COURSE.

10:18AM 13            MR. DOWNEY:  I WOULD SAY IT DIFFERENTLY, YOUR HONOR.

10:18AM 14        MY GOAL IS TO HAVE A JURY THAT DOESN'T SUFFER FROM ANY

10:18AM 15    ACTUAL BIAS OR IMPLIED BIAS.

10:18AM 16        JURORS WHO HAVE BEEN EXPOSED TO CERTAIN MEDIA MATERIAL

10:18AM 17    SUFFER FROM IMPLIED BIAS IN THIS CASE REGARDLESS OF THEIR OWN

10:18AM 18    STATEMENTS OF IMPARTIALITY.

10:18AM 19        I THINK OTHER JURORS, SOME OF WHO HAVE ALREADY

10:18AM 20    ACKNOWLEDGED IT --

10:18AM 21            THE COURT:  SO, MR. DOWNEY, WHAT WE'RE TRYING TO DO

10:18AM 22    IS TO FILTER THOSE AND TO TRY TO SEE HOW CAN WE GET A FAIR

10:18AM 23    JUROR FOR YOUR CLIENT, FOR THE GOVERNMENT.

10:18AM 24            MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

10:18AM 25            THE COURT:  I UNDERSTAND THAT.  BUT YOU SUGGEST THAT

10:18AM 1      THE SEARCH FOR IMPLIED BIAS MIGHT BE A FUTILE SEARCH BECAUSE

10:18AM 2      SOMEONE MIGHT SAY SOMETHING, DESPITE ALL OF OUR BEST EFFORTS AT

10:19AM 3      VOIR DIRE AND REMINDING THEM OF NINTH CIRCUIT JURY INSTRUCTIONS

10:19AM 4      AND REMINDING THEM OF THE INTEGRITY OF THE TRIAL PROCESS THAT

10:19AM 5      THEY MUST KEEP AN OPEN MIND THROUGHOUT THE TRIAL AND NOT MAKE

10:19AM 6      SNAP JUDGMENTS AND NOT MAKE ANY DECISIONS UNTIL THEY HAVE BEEN

10:19AM 7      INSTRUCTED AND THEY BEGIN THEIR DELIBERATIONS IN THE JURY ROOM.

10:19AM 8          BUT THE CONCERN IS THAT, WELL, DURING THE MIDDLE OF THE

10:19AM 9      TRIAL SOMEONE MIGHT JUST SAY, GEE, I JUST REMEMBERED SOMETHING

10:19AM 10     THAT I FORGOT TO TELL THEM ABOUT TEN WEEKS AGO.  THAT SOMETIMES

10:19AM 11     HAPPENS.

10:19AM 12         JURORS SOMETIMES TELL US, AND THEY'LL BE INSTRUCTED IN

10:19AM 13     THIS CASE THAT THEY SHOULD STAY AWAY FROM MEDIA, THEY SHOULD

10:19AM 14     LOOK AWAY, NOT READ ARTICLES.

10:19AM 15         IT MAY BE THAT AT EACH SESSION THE COURT WILL MAKE

10:19AM 16     INQUIRIES IF THEY'VE HEARD, READ, OR DISCUSSED ANYTHING, AND TO

10:19AM 17     SHARE WITH US WHAT THAT IS, AND THEN TO PROBE THAT.

10:20AM 18         AGAIN, SO WE'LL DO THE BEST THAT WE CAN TO ENSURE THAT

10:20AM 19     THOSE JURORS ARE JUST FOCUSSED ON THE UNIVERSE OF THE EVIDENCE

10:20AM 20     IN THIS COURTROOM SUCH THAT THEY CAN MAKE THEIR DECISION BASED

10:20AM 21     ON THAT UNIVERSE.

10:20AM 22         AND WE DO THE BEST THAT WE CAN.  AND I KNOW YOUR

10:20AM 23     SUGGESTIONS ARE HEARTFELT, AND YOU'RE SUGGESTING THAT IF WE, AT

10:20AM 24     A MINIMUM, ENGAGE IN SOME INDIVIDUAL VOIR DIRE WITH THESE

10:20AM 25     PARTICULAR WITNESSES, YOU'LL BE SATISFIED BECAUSE YOU'LL HAVE

10:20AM 1   AN OPPORTUNITY TO PROBE AND PERHAPS THEN ASK THE COURT TO

10:20AM 2   EXCUSE THESE JURORS BECAUSE, AS YOU'VE SAID, THEY HAVE IMPLICIT

10:20AM 3   BIAS THAT CANNOT BE OVERCOME.

10:20AM 4      I'M JUST TRYING TO GET A PREVIEW IF SOMEBODY FROM YOUR

10:20AM 5   POSITION, IN YOUR POSITION, MR. DOWNEY, IF SOMEONE IS EXPOSED

10:20AM 6   TO MEDIA, YOU SUGGEST THAT THAT MEANS THAT THEY MAY HAVE

10:20AM 7   IMPLICIT BIAS, THEY MAY BE BIASSED, THEY MIGHT HAVE EXPLICIT

10:21AM 8   BIAS BASED ON THAT EXPOSURE, IS THERE ANY WAY THAT ANY WITNESS,

10:21AM 9   EXCUSE ME, ANY JUROR WHO IS EXPOSED TO MEDIA, HAS EXPRESSED A

10:21AM 10  POSITION?  IS THERE ANY WAY THAT JUROR COULD BE REHABILITATED

10:21AM 11  IN YOUR MIND?

10:21AM 12          MR. DOWNEY:  OF COURSE, YOUR HONOR.  I THINK THERE

10:21AM 13  ARE A FEW DIFFERENT ISSUES FLOATING AROUND.

10:21AM 14     WITH RESPECT TO THE JURORS WHO ARE IN THE PARAGRAPH THAT

10:21AM 15  BEGINS "SECOND" IN WHAT WAS PREVIOUSLY SUBMITTED TO THE COURT,

10:21AM 16  WE KNOW THE CONTENT OF WHAT THAT JUROR HAS BEEN EXPOSED TO.

10:21AM 17     THEY ARE, YOU KNOW, VERY SIMILAR TO THE JURORS IN MARSHALL

10:21AM 18  WITH THE EXCEPTION THAT THEIR EXPOSURE TO OUT-OF-COURT EVIDENCE

10:21AM 19  IS A THOUSAND TIMES WHAT THE JURORS IN MARSHALL WERE EXPOSED

10:21AM 20  TO.

10:21AM 21          THE COURT:  WELL, WHAT YOU'RE SAYING IN YOUR EMAIL

10:21AM 22  IS THAT THE COURT SHOULD EXCUSE THEM NOW.

10:21AM 23          MR. DOWNEY:  I'M SAYING THE EXPOSURE TO THAT GIVES

10:22AM 24  RISE TO AN IMPLIED BIAS.  I THINK WE'LL FIND --

10:22AM 25          THE COURT:  PARDON ME.  BUT IS THAT RIGHT?  YOU'RE

10:22AM  1    SAYING THAT THEY SHOULD BE EXCUSED NOW?

10:22AM  2              MR. DOWNEY:  I AM, YOUR HONOR.

10:22AM  3              THE COURT:  BEFORE THEY COME INTO THE COURTROOM AND

10:22AM  4    BEFORE WE EVEN TALK TO THEM?

10:22AM  5              MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

10:22AM  6              THE COURT:  SO THESE ARE PEOPLE THAT YOU DON'T WANT

10:22AM  7    TO HAVE AN INDIVIDUAL VOIR DIRE, YOU WOULD LIKE THEM TO NEVER

10:22AM  8    ENTER THE COURTHOUSE?

10:22AM  9              MR. DOWNEY:  THAT IS MY REQUEST, YOUR HONOR, YES.

10:22AM  10             THE COURT:  OKAY.

10:22AM  11             MR. DOWNEY:  AND IT IS ON THE BASIS OF THAT

10:22AM  12   EXPOSURE, AND I'LL SUBMIT SO THE COURT HAS IT WHAT THAT

10:22AM  13   EXPOSURE IS.

10:22AM  14             THE COURT:  NOW, IT IS CONTAINED IN THEIR

10:22AM  15   QUESTIONNAIRES?

10:22AM  16             MR. DOWNEY:  I'M SORRY?

10:22AM  17             THE COURT:  CONTAINED IN THEIR QUESTIONNAIRES?

10:22AM  18             MR. DOWNEY:  WHAT THEY HAVE VIEWED IS CONTAINED IN

10:22AM  19   THEIR QUESTIONNAIRES, YES.

10:22AM  20             THE COURT:  RIGHT.  OKAY.

10:22AM  21             MR. DOWNEY:  AND THE FRAMING THAT YOUR HONOR GIVES

10:22AM  22   TO THE BALANCE OF MY CONCERNS I THINK IS NOT CORRECT.

10:22AM  23        WE ALL KNOW THAT JURORS CAN BE EXPOSED TO MEDIA, AND WHICH

10:22AM  24   CONCERNS THE MATTER THAT THEY ARE GOING TO SIT ON AS A JUROR,

10:22AM  25   AND THAT DOES NOT AUTOMATICALLY LEAD TO THEIR DISMISSAL AS

10:23AM 1       JURORS, AND IT DOESN'T AUTOMATICALLY LEAD TO A FORM OF BIAS.

10:23AM 2              THERE PROBABLY ARE, AMONGST THE REMAINING JURORS, SOME

10:23AM 3       JURORS WHO FIT THAT DESCRIPTION.  THEY HAVEN'T REFLECTED THAT

10:23AM 4       THEY HAVE CONSUMED ANY OF THIS EXTRA JUDICIAL MATERIAL FROM --

10:23AM 5       INCLUDING FROM WITNESSES IN THE CASE, BUT THEY'RE KNOWLEDGEABLE

10:23AM 6       ABOUT THE CASE.  SOME INDICATE REALLY THEY'RE MORE

10:23AM 7       KNOWLEDGEABLE ABOUT THE CASE BECAUSE OF THE PROCEEDINGS THAT

10:23AM 8       ARE TAKING PLACE IN FRONT OF YOUR HONOR.

10:23AM 9              THOSE ARE THE KINDS OF BIAS AND IMPARTIALITY THAT CAN BE,

10:23AM 10      I THINK, APPROPRIATELY EVALUATED THROUGH VOIR DIRE WITH THOSE

10:23AM 11      JURORS.

10:23AM 12             SO IT'S NOT THE CASE THAT EXPOSURE TO MEDIA IS A PER SE

10:23AM 13      BASIS FOR DISQUALIFICATION OF A JUROR.

10:24AM 14             WHEN WE KNOW WHAT THE EXPOSURE HAS BEEN, WHEN WE KNOW ITS

10:24AM 15      CONTENT, WHEN WE KNOW ITS PREJUDICE, WE KNOW THAT SOME OF THOSE

10:24AM 16      JURORS HAVE BEEN EXPOSED TO INFORMATION GIVING RISE TO AN

10:24AM 17      IMPLIED BIAS THAT THEIR OWN JUDGMENT OF IMPARTIALITY IS NOT

10:24AM 18      SUFFICIENT TO CURE.

10:24AM 19                  THE COURT:  ALL RIGHT.  THANK YOU.

10:24AM 20             DO YOU WISH TO BE HEARD, MR. SCHENK?

10:24AM 21                  MR. SCHENK:  I'LL KEEP IT BRIEF.

10:24AM 22             AT THE BEGINNING OF THIS HEARING THIS MORNING MR. DOWNEY

10:24AM 23      STOOD AT THE LECTERN AND TOLD THE COURT HE WAS NOT ASKING FOR

10:24AM 24      THE COURT TO EXCUSE ANY OF THE JURORS OTHER THAN THE ONES

10:24AM 25      AGREED UPON.

10:24AM  1      I THINK NOW HE'S SAYING WHAT I MEANT -- WHAT I THINK HE

10:24AM  2   MEANT BY THAT IS I AM ASKING THE COURT TO EXCUSE JURORS AT

10:24AM  3   LEAST ON THE PARAGRAPH WE'RE CALLING "SECOND."  AS ONE EXAMPLE,

10:24AM  4   IN PARAGRAPH SECOND JUROR 238 IS LISTED THERE THAT JUROR DIDN'T

10:25AM  5   HAVE ANY EXPOSURE TO THERANOS THROUGH THE NEWS.  I DON'T KNOW

10:25AM  6   IF THAT WAS AN ACCIDENTAL INCLUSION OR IF THE DEFENSE IS

10:25AM  7   SUGGESTING "SECOND" INCLUDES JURORS WHO CONSUMED MEDIA, WHO

10:25AM  8   WRITE THAT THEY ARE ON FACEBOOK OR WATCH THE NEWS, BUT DIDN'T

10:25AM  9   HAVE ANY EXPOSURE TO THERANOS OR MS. HOLMES.  I THINK THIS IS

10:25AM  10  ALL EVIDENCE AND SUPPORT FOR SOMETHING THAT SHOULD OCCUR IN THE

10:25AM  11  COURTROOM DURING VOIR DIRE.

10:25AM  12     THE COURT DOES NOT NEED TO TODAY SAY EXPOSURE IS ENOUGH TO

10:25AM  13  SUSTAIN THE FOR CAUSE CHALLENGE AT THIS STAGE, BUT RATHER IF WE

10:25AM  14  BRING THE JURORS, EXCUSE ME, INTO THE COURTROOM AND ASK THEM

10:25AM  15  QUESTIONS AND THEN MAKE DETERMINATIONS.  I THINK THAT'S -- MY

10:25AM  16  UNDERSTANDING IS THAT THAT'S THE COURT'S PLAN, AND THAT'S

10:26AM  17  CERTAINLY WHAT THE GOVERNMENT WOULD PREFER.

10:26AM  18          THE COURT:  MR. DOWNEY, DID YOU HAVE ANYTHING ELSE

10:26AM  19  TO SAY?

10:26AM  20          MR. DOWNEY:  NO, YOUR HONOR.  I THINK THE REPEATED

10:26AM  21  CHARACTERIZATIONS OF THE DEFENSE'S POSITION SAYING BEING

10:26AM  22  EXPOSED TO THE MEDIA IS A PER SE BASIS DISQUALIFICATION IS

10:26AM  23  INACCURATE.

10:26AM  24          THE COURT:  YOU'RE NOT SAYING THAT?

10:26AM  25          MR. DOWNEY:  I AM NOT SAYING THAT.

10:26AM  1      WHAT I AM SAYING IS THAT IF YOU'VE BEEN EXPOSED TO CONTACT

10:26AM  2  WHICH IS SO PREJUDICIAL THAT A JUROR WHO HAS SEEN THAT CANNOT

10:26AM  3  BE FAIR, THEN I THINK THAT JUROR SHOULD BE EXCUSED.

10:26AM  4      WITH A NUMBER OF THESE JURORS, WE DON'T KNOW WHAT THEY'VE

10:26AM  5  BEEN EXPOSED TO.

10:26AM  6          THE COURT:  WE DON'T KNOW ABOUT 238 ACCORDING TO

10:26AM  7  MR. SCHENK.

10:26AM  8          MR. DOWNEY:  WELL, IF THERE ARE ANY ON HERE THAT ARE

10:26AM  9  ON HERE IN ERROR, WE'LL CORRECT THAT.  BUT THE POINT IS THAT I

10:26AM  10  THINK MR. SCHENK WOULD ACKNOWLEDGE THAT THERE ARE MANY JURORS

10:26AM  11  THAT THE GOVERNMENT DID NOT AGREE TO DISMISS WHO HAVE CONSUMED

10:27AM  12  THE MEDIA THAT I HAVE IDENTIFIED AND WE'LL SUBMIT TO THE COURT.

10:27AM  13          THE COURT:  ALL RIGHT.  THANKS VERY MUCH.  THANK YOU

10:27AM  14  FOR PROVIDING YOUR LIST.  I'LL, OF COURSE, REVIEW THOSE AGAIN

10:27AM  15  FOR THE ISSUES THAT YOU'VE RAISED.

10:27AM  16      ANYTHING ELSE FOR TODAY?

10:27AM  17          MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

10:27AM  18          MR. DOWNEY:  NO, YOUR HONOR.

10:27AM  19      DOES YOUR HONOR TYPICALLY GIVE COUNSEL A SENSE IN ADVANCE

10:27AM  20  OF WHAT THE COURT'S VOIR DIRE WILL BE?

10:27AM  21          THE COURT:  NO.

10:27AM  22          MR. DOWNEY:  NO?

10:27AM  23          THE COURT:  NO.

10:27AM  24          MR. DOWNEY:  I'M JUST ASKING, YOUR HONOR.

10:27AM  25          THE COURT:  YES.  NO.  I'M PAUSING BECAUSE I DON'T

10:27AM 1    THINK I'VE EVER DONE THAT, BUT --

10:27AM 2              MR. DOWNEY:  SINCE I'M FROM OUT OF TOWN I JUST --

10:27AM 3              THE COURT:  NO, NO.  I WAS PAUSING TO SEE IF I'VE

10:27AM 4    EVER DONE THAT, AND I THINK I RELY ON MY VOIR DIRE IS PART OF

10:27AM 5    THE RECORD, AND I KNOW COUNSEL CAN PERUSE THE RECORD OF PRIOR

10:27AM 6    TRIALS AND SEE THE COURT'S VOIR DIRE AND WHETHER IT'S CHANGED

10:28AM 7    OR NOT.

10:28AM 8              MR. DOWNEY:  I THINK IF THE COURT IS SAYING THAT IF

10:28AM 9    YOU EXPECT IT WILL BE SIMILAR TO THE VOIR DIRE THAT YOU'VE

10:28AM 10   GIVEN IN OTHER CASES, I HAVE LOOKED AT THAT, AND IT'S REALLY

10:28AM 11   THE ANSWER TO MY QUESTION.

10:28AM 12             THE COURT:  THERE WILL BE DIFFERENCES.  EVERY TRIAL

10:28AM 13   IS DIFFERENT.

10:28AM 14     I'VE TOLD YOU I'M GOING TO ASK QUESTIONS ABOUT OTHER

10:28AM 15   TOPICS.  I'LL CALL THEM THE "MS. VOLKAR QUESTIONS" -- PARDON

10:28AM 16   ME, MS. VOLKAR -- BUT I RAISED IT IN RESPONSE TO HER QUESTION,

10:28AM 17   BUT I DO INTEND TO GO INTO THAT AREA, AND WE'LL SEE WHERE THAT

10:28AM 18   TAKES US.

10:28AM 19     I CAN'T TELL YOU EXACTLY WHAT THOSE QUESTIONS ARE NOW, BUT

10:28AM 20   I DO GIVE YOU SOME HEADS UP THAT I WILL EXPLORE SOME OF THOSE

10:28AM 21   ISSUES.  I THINK IT'S APPROPRIATE TO DO IN THIS CASE.

10:28AM 22             MR. DOWNEY:  AND I GATHER JUST FROM YOUR COMMENT

10:28AM 23   THAT THE COURT IS STILL CONSIDERING WHAT THAT WILL BE?

10:28AM 24             THE COURT:  YES.  RIGHT.

10:28AM 25     OKAY.  LET ME SEE.  I DON'T THINK I HAVE ANYTHING ELSE TO

| | |
|---|---|
| 10:29AM | 1 |
| 10:29AM | 2 |
| 10:29AM | 3 |
| 10:29AM | 4 |
| 10:29AM | 5 |
| 10:29AM | 6 |
| 10:29AM | 7 |
| 10:29AM | 8 |
| 10:29AM | 9 |
| 10:29AM | 10 |
| 10:29AM | 11 |
| 10:29AM | 12 |
| 10:29AM | 13 |
| 10:29AM | 14 |
| 10:29AM | 15 |
| 10:29AM | 16 |
| 10:30AM | 17 |
| 10:30AM | 18 |
| 10:30AM | 19 |
| 10:30AM | 20 |
| 10:30AM | 21 |
| 10:30AM | 22 |
| 10:30AM | 23 |
| 10:30AM | 24 |
| 10:30AM | 25 |

INFORM YOU.  WE HAVE A SESSION TOMORROW WITH OTHER COUNSEL.

THAT'S A ZOOM SESSION, I BELIEVE.

          IS THAT RIGHT, MS. KRATZMANN?

                    THE CLERK:  YES, YOUR HONOR.

                    THE COURT:  IT'S A REMOTE HEARING.  SO WE'LL HAVE

THAT TOMORROW.

          AND THEN WE'LL HAVE FRIDAY TO TAKE UP ANY OTHER ISSUES

THAT COME UP.

          I DID HAVE A THOUGHT ABOUT PLEADINGS.  WE WERE TALKING

ABOUT FILING PLEADINGS, AND I WONDER IF WE COULD ENGAGE A

PROTOCOL WHERE WE TALKED ABOUT TIMING WITH MR. BOSTIC AND WHEN

HE SHOULD NOTIFY WITNESSES.  I THINK I SAID THURSDAY SOME TIME,

WAS IT 7:00 P.M., OR SOMETHING LIKE THAT?

          MAYBE WE SHOULD SET A TIME FOR THE DEFENSE TO FILE ANY

MOTIONS BY NOON ON SATURDAY, AND THAT -- MY CALCULATION BY THAT

EQUALLY SPLITS UP THE WEEKEND FOR YOU TO PREPARE AND DEFENSE TO

PREPARE AND FILE A MOTION, AND THEN THE GOVERNMENT TO HAVE A

DAY AND A HALF TO FILE ANY RESPONSE.  IT SEEMS LIKE THAT WOULD

BE A FAIR DISTRIBUTION OF THAT TIME.

                    MR. DOWNEY:  WELL, YOUR HONOR, TRUTHFULLY, WITH

RESPECT TO MANY OF THE WITNESSES IN THE CASE, IT WILL -- THE

REASON I ASKED FOR THURSDAY AT 6:00 P.M. IS JUST ACTUALLY

PULLING THE EXHIBITS IN THIS CASE, JUST THE NATURE OF THE CASE.

                    THE COURT:  RIGHT.

                    MR. DOWNEY:  IT WILL TAKE ALL DAY FRIDAY.  SO WE'RE

10:30AM  1    NOT GOING TO BE IN A POSITION TO FILE SOMETHING BY SATURDAY AT

10:30AM  2    NOON.

10:30AM  3         WHAT I WOULD SAY TO YOUR HONOR IS WHAT I SAID IN THE

10:30AM  4    HEARING, I'M HAPPY TO ENGAGE A PROTOCOL WHERE WE IDENTIFY, YOU

10:30AM  5    KNOW, BEFORE WE HAVE WRITTEN ANY BRIEF BY SATURDAY, YOU KNOW,

10:30AM  6    48 HOURS LATER SOMETHING, THESE ARE THE ISSUES WE INTEND TO

10:30AM  7    RAISE WITH AN EXPLANATION OF WHAT THOSE ISSUES ARE SO THAT THE

10:30AM  8    GOVERNMENT CAN CONSIDER WHETHER IT WANTS TO PREPARE SOMETHING,

10:30AM  9    ET CETERA.

10:30AM  10        BUT I DON'T REALISTICALLY THINK THAT I CAN CONDENSE THE

10:31AM  11   SCHEDULE BEYOND WHAT I'VE PROPOSED.  I'M SORRY, I JUST THINK

10:31AM  12   THAT'S THE NATURE OF WHAT WE'RE DEALING WITH.

10:31AM  13        AND I AGREE WITH YOUR HONOR, YOU KNOW, WE WANT THE

10:31AM  14   GOVERNMENT TO HAVE AN OPPORTUNITY TO RESPOND, SO I'M HAPPY TO

10:31AM  15   DO WHATEVER IS HELPFUL TO THE GOVERNMENT AND TO THE COURT.

10:31AM  16             THE COURT:  BY NOON ON SATURDAY, THERE'S A THOUGHT?

10:31AM  17             MR. DOWNEY:  WHAT'S THAT?

10:31AM  18             THE COURT:  HOW ABOUT NOON ON SATURDAY?

10:31AM  19             MR. DOWNEY:  YOUR HONOR, I PROPOSED THE SCHEDULE I

10:31AM  20   PROPOSED BECAUSE THE GOVERNMENT HAS, FRANKLY, READILY AGREED TO

10:31AM  21   IT WHERE THERE'S NOT A MONDAY JURY, AND, YOU KNOW, THAT SEEMS

10:31AM  22   TO HAVE WORKED JUST FINE IN THOSE CASES.

10:31AM  23             THE COURT:  WELL, LET ME JUST STATE SOMETHING HERE.

10:31AM  24   YOU KNOW, YOU BOTH HAVE TEAMS.  YOU'VE GOT A TEAM OF LAWYERS,

10:31AM  25   PEOPLE WHISPERING IN YOUR EARS AND WE'RE GOING THROUGH TRIAL,

10:31AM  1    ET CETERA.  YOU'VE GOT FANTASTIC LAWYERS, AND THE GOVERNMENT

10:31AM  2    DOES THE SAME.  YOU HAVE THE FULL ARMAMENT OF THE UNITED STATES

10:31AM  3    GOVERNMENT ON THEIR SIDE, I GET THAT.

10:31AM  4         YOU KNOW AS A FORMER LAW CLERK, I HAVE THREE, THREE LAW

10:32AM  5    CLERKS.  AND I KNOW THIS WILL SURPRISE YOU, BUT I DO HAVE A

10:32AM  6    VERY ACTIVE CIVIL CALENDAR.  I HAVE 400 CASES ON MY CIVIL

10:32AM  7    DOCKET.  SO WE'RE BUSY, TOO.

10:32AM  8         SO I TELL YOU THAT NOT TO SAY WOE IS ME.  THIS WAS THE JOB

10:32AM  9    WE ALL TOOK, MY LAW CLERKS AND I, HEAVY SHOULDERS DO WE HAVE.

10:32AM  10   BUT I JUST SAY THAT TO, AND I KNOW YOU APPRECIATE IT, MOTIONS

10:32AM  11   THAT ARE FILED SUNDAY NIGHT AT 10:00 P.M. FOR A HEARING ON A

10:32AM  12   MONDAY OR EVENING A TUESDAY MORNING CREATE SERIOUS

10:32AM  13   DIFFICULTIES, PARTICULARLY IN A TRIAL OF THIS SIZE, YOU'RE

10:32AM  14   TELLING ME IT'S A VERY COMPLEX TRIAL, I'VE HEARD THAT FROM BOTH

10:32AM  15   SIDES.

10:32AM  16        SO I JUST WANT TO THROW THAT OUT TO YOU TO HAVE SOME

10:32AM  17   CONSIDERATION.

10:32AM  18             MR. DOWNEY:  YOUR HONOR, I TAKE THAT TO HEART.  THE

10:32AM  19   REASON I HAD PROPOSED ANY PROTOCOL HERE IS THE ISSUES THAT

10:32AM  20   TYPICALLY ARISE IN THESE MOTIONS ARE TYPICALLY EVIDENTIARY

10:33AM  21   ISSUES, YOU KNOW, THAT WOULD ORDINARILY BE IN MANY CASES

10:33AM  22   RESOLVED ON THE FLY.  THE DIFFERENCE BETWEEN THIS CASE AND

10:33AM  23   THOSE CASES IS, YOU KNOW, WE'RE GOING TO BE FLYING PROBABLY A

10:33AM  24   LOT.

10:33AM  25        SO THE ISSUE IN MANY INSTANCES IS REALLY JUST THAT THE

10:33AM 1     COURT HAS A HEADS UP AND CAN DO IT.  TYPICALLY IT DOESN'T

10:33AM 2     REQUIRE AN ADJUDICATION BY THE COURT IN ADVANCE, BUT IT GIVES

10:33AM 3     ALL PARTIES, YOU KNOW, AN ADVANCE OPPORTUNITY TO CONSIDER THE

10:33AM 4     ISSUES AND STATE THEIR LEGAL POSITION.

10:33AM 5         THE REASON I'M JUST REACTING TO THE PROTOCOL THAT

10:33AM 6     YOUR HONOR RAISES IS IF WE'RE GOING TO HAVE SUCH A PROTOCOL, I

10:33AM 7     WANT THE COURT TO GAIN CONFIDENCE AS WE GO FORWARD THAT WE'RE

10:33AM 8     REALLY IDENTIFYING THE ISSUES IN ADVANCE BECAUSE WE DON'T HAVE

10:33AM 9     MUCH TIME WITH THE JURY.  WE'VE JUST DISCUSSED, YOU KNOW, THE

10:33AM 10    COMPLICATIONS THAT ARE PRESENTED BY THE PANDEMIC.  I THINK

10:33AM 11    WE'RE VERY COGNIZANT OF THE FACT THAT WE ALL NEED TO WORK

10:34AM 12    TOGETHER TO HAVE THIS TRIAL BE ONE THAT, YOU KNOW, FINISHES,

10:34AM 13    ONE THAT AVOIDS DELAYS, AND THE SPIRIT OF MY PROPOSAL WAS IN

10:34AM 14    THAT REGARD.

10:34AM 15        SO WE WILL TRY TO ACT CONSISTENT WITH THAT.

10:34AM 16            THE COURT:  WELL, THANK YOU.  I KNOW NEITHER SIDE IS

10:34AM 17    GOING TO ACT WITH ANY DESIRE TO INCONVENIENCE THE COURT FILING

10:34AM 18    SOMETHING AT MIDNIGHT AND EXPECTING THE COURT TO RULE ON

10:34AM 19    SOMETHING THE NEXT DAY.  I APPRECIATE YOUR COMMENT ABOUT THIS

10:34AM 20    IS A HEADS UP FOR AN EVIDENTIARY ISSUE THAT MIGHT GIVE THE

10:34AM 21    COURT ADVANCE NOTICE OF AN OBJECTION OR AT LEAST GIVE SOME

10:34AM 22    NOTICE ABOUT AN ISSUE AS OPPOSED TO AN ACTUAL MOTION THAT WILL

10:34AM 23    PERHAPS DISRUPT THE TRIAL SCHEDULE AND HAVE TO BE ARGUED,

10:34AM 24    ET CETERA, ET CETERA.  THAT SOMETIMES HAPPENS, TOO.

10:34AM 25        I DREW AN ANALOGY TO PATENT CASES AND SUGGEST THAT IN

10:35AM   1   PATENT CASES IT'S NOT UNUSUAL TO HAVE THE LAWYERS FILE A MOTION

10:35AM   2   THE NIGHT BEFORE THAT MUST BE HEARD THE NEXT DAY BEFORE THE

10:35AM   3   JURY COMES IN.

10:35AM   4        I THINK I TOLD YOU I HAVE COLLEAGUES, I THINK I'VE DONE IT

10:35AM   5   ON OCCASION, TO SAY THAT YOU CAN FILE A MOTION, BUT WE'RE NOT

10:35AM   6   GOING TO HEAR IT FOR 48 HOURS BECAUSE WE NEED TIME TO LOOK AT

10:35AM   7   IT AND REVIEW IT, SO DON'T THINK THAT THE TRIAL WILL STOP

10:35AM   8   BECAUSE OF THAT.

10:35AM   9        THOSE ARE PATENT CASES AND CIVIL CASES AND DIFFERENT

10:35AM  10   RIGHTS INVOLVED IN THAT CASE AS OPPOSED TO A CRIMINAL CASE.  I

10:35AM  11   RESPECT THAT.  I APPRECIATE THAT ALL OF YOU RESPECT THAT, TOO,

10:35AM  12   AS WELL AS THE WORKLOAD OF THE COURT AND YOUR DESIRE TO MAKE

10:35AM  13   THE TRIAL GO FORWARD SUCH THAT BOTH OF YOU CAN ACHIEVE YOUR

10:35AM  14   GOALS OF A FAIR TRIAL WITH A FAIR AND UNBIASSED JURY WHO WILL

10:35AM  15   LISTEN TO THE EVIDENCE, LISTEN TO THE ARGUMENTS OF COUNSEL,

10:35AM  16   HEAR THE INSTRUCTIONS OF THE COURT, DELIBERATE THE CASE FULLY,

10:35AM  17   AND THEREBY REACH A VERDICT THAT IS FAIR AND JUST IN THE CASE.

10:35AM  18   THAT'S WHAT YOU'RE BOTH PURSUING HERE, AND I'M HAPPY TO HELP

10:36AM  19   YOU IN THAT PURSUIT.  SO THANK YOU VERY MUCH.

10:36AM  20        MR. DOWNEY:  YOUR HONOR, WHAT I MIGHT SUGGEST WITH

10:36AM  21   RESPECT TO PROTOCOL IS IF WE CAN ADOPT THE THURSDAY NIGHT

10:36AM  22   NOTICE.  WHY DON'T WE, FOR THE FIRST COUPLE OF WEEKS, IF THERE

10:36AM  23   ARE ISSUES, WE WILL PRESENT THE MOTIONS AS WE SUGGEST ON MONDAY

10:36AM  24   MORNING.  IF THAT'S PRESENTING AN ISSUE FOR THE COURT BECAUSE

10:36AM  25   THE COURT CAN'T DO IT, WE'RE HAPPY TO WORK WITH THE COURT AND

10:36AM  1   THE GOVERNMENT TO ADOPT A DIFFERENT PROTOCOL.

10:36AM  2       BUT THIS IS CERTAINLY OFFERED IN THE SPIRIT THAT

10:36AM  3   YOUR HONOR IS DISCUSSING SO WE'LL -- IF WE TRY THE PROCEDURE

10:36AM  4   AND IT FAILS, I THINK THE COURT WILL BE UNHAPPY WITH US, AND

10:36AM  5   I'M AWARE OF THAT.

10:36AM  6       THE COURT:  MR. BOSTIC?

10:36AM  7       MR. BOSTIC:  YOUR HONOR, IF I COULD BE HEARD BRIEFLY

10:36AM  8   ON THAT.

10:36AM  9       I THINK THE COURT IS RECOGNIZING THE GOVERNMENT'S CONCERN

10:36AM 10   WITH THAT PLAN.  AND JUST TO REITERATE, WHAT WE'RE TALKING

10:36AM 11   ABOUT IS GIVING THE DEFENSE APPROXIMATELY THREE DAYS AND CHANGE

10:36AM 12   TO PREPARE A SUBMISSION TO THE COURT.  IT COMES IN MONDAY

10:37AM 13   MORNING.  IT MIGHT RELATE TO A WITNESS SET TO TESTIFY FIRST

10:37AM 14   THING TUESDAY MORNING.

10:37AM 15       I UNDERSTAND MR. DOWNEY'S POINT THAT IN SOME CASES THE

10:37AM 16   GOVERNMENT COULD RESPOND TO THAT ORALLY, BUT MY CONCERN IS THAT

10:37AM 17   IF SOMETHING TAKES THREE DAYS FOR THE DEFENSE TO ADDRESS AND

10:37AM 18   PREPARE, IT MIGHT DESERVE MORE CONSIDERATION FROM THE

10:37AM 19   GOVERNMENT THAN AN HOUR OR TWO IN ADVANCE OF A COURT HEARING.

10:37AM 20       I WOULD LIKE MY TEAM, FRANKLY, TO HAVE THE TIME TO DEVOTE

10:37AM 21   ANY NEEDED ATTENTION TO THOSE ISSUES, AND I WOULD LIKE THE

10:37AM 22   COURT TO HAVE WHATEVER TIME IT NEEDS ON THOSE ISSUES.

10:37AM 23       SO I APPRECIATE THE COURT CONSIDERING THAT AND GIVING IT

10:37AM 24   ATTENTION, AND I DON'T SEE WHY THE COURT'S PROPOSED SCHEDULE

10:37AM 25   WOULD NOT WORK IN THIS CASE.

10:37AM   1          THE COURT:  THANK YOU.

10:37AM   2          YOU KNOW, ONE THING THAT I THINK WE ALL RECOGNIZE NOT JUST

10:37AM   3     IN TRIALS BUT JUST IN ABOUT EVERYTHING WE DO, THE HARDEST THING

10:37AM   4     IS GETTING STARTED, ISN'T IT?  AND ONCE WE GET STARTED, MY

10:37AM   5     SENSE IS THAT ALL OF OUR EXPERIENCES, ALL OF, I'LL SAY, WISDOM

10:38AM   6     ON YOUR PART, WILL ALLOW THIS TRIAL TO COMMENCE AND OPERATE

10:38AM   7     SMOOTHLY.  THERE WILL BE HICCUPS, THERE ALWAYS ARE, AND THERE

10:38AM   8     WILL BE ISSUES WE NEED TO RESOLVE, BUT I APPRECIATE BOTH SIDES,

10:38AM   9     NOTWITHSTANDING YOUR COMMENTS HERE, BUT YOUR EXPRESSED DESIRE

10:38AM   10    TO COOPERATE TO THE ENDS THAT I'VE SUGGESTED.

10:38AM   11         AGAIN, THE MOST DIFFICULT THING WITH JUST ABOUT ANYTHING

10:38AM   12    IS GETTING STARTED.  WE'RE DOING THAT NOW, AND WE'RE WORKING

10:38AM   13    THROUGH THESE INITIAL ISSUES, AND WE'LL RESOLVE THEM, AND WE'LL

10:38AM   14    CONTINUE TO DO SO AS THE TRIAL BEGINS.

10:38AM   15         IT'S DIFFICULT TO GET APPROPRIATE AUDIO VISUAL CONNECTION

10:38AM   16    AS WELL.

10:38AM   17         (LAUGHTER.)

10:38AM   18         THE COURT:  HOPEFULLY THAT CAN BE RESOLVED.  WE ARE

10:38AM   19    AFTER ALL IN THE BREAK BASKET OF SILICON VALLEY SO HOPEFULLY

10:38AM   20    THAT HELPS.

10:38AM   21         ALL RIGHT.  THANK YOU VERY MUCH.  STAY HEALTHY, AND WE'LL

10:39AM   22    SEE YOU ON ZOOM TOMORROW.

10:39AM   23         ALL RIGHT.  THANK YOU.

10:39AM   24         THE CLERK:  COURT IS ADJOURNED.

10:39AM   25         (COURT CONCLUDED AT 10:39 A.M.)