SEALED BY ORDER OF COURT

JEFFREY B. COOPERSMITH (SBN 252819)
*Email: jcoopersmith@orrick.com*
WALTER F. BROWN (SBN 130248)
*Email: wbrown@orrick.com*
MELINDA HAAG (SBN 132612)
*Email: mhaag@orrick.com*
RANDALL S. LUSKEY (SBN 240915)
*Email: rluskey@orrick.com*
STEPHEN A. CAZARES (SBN 201864)
*Email: scazares@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

FILED
DEC 12 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE
189 SP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

HOLMES, et al.,

Defendants.

Case No. 5:18-cr-00258-EJD

**DEFENDANT RAMESH "SUNNY" BALWANI'S NOTICE OF MOTION AND MOTION TO SEVER**

Date: February 10, 2020
Time: 10:00 AM
Judge: Honorable Edward J. Davila
Ctrm: 4, 5th Floor

# FILED UNDER SEAL

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ........................................................................................................ 1

I. INTRODUCTION AND STATEMENT OF FACTS ........................................................ 2

II. DISCUSSION ................................................................................................................ 2

A. THE LAW REQUIRES THAT MR. BALWANI'S CASE BE SEVERED ...................................... 4

1. A joint trial would expose the jury to tremendously prejudicial evidence that is otherwise inadmissible against Mr. Balwani ...................... 4

2. Other reasons weigh strongly in favor of severance.................................... 8

a) Without an order of severance Mr. Balwani would be forced to conduct a massive investigation.................................................. 8

b) Ms. Holmes' defense may be irreconcilably antagonistic to Mr. Balwani's.................................................................................. 9

c) A joint trial may violate Mr. Balwani's right to confront the witnesses against him............................................................. 9

B. MR. BALWANI MUST BE TRIED FIRST TO AVOID A HOPELESSLY TAINTED JURY POOL ........................................................................................................ 10

III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Crawford v. Washington*, 541 U.S. 36 (2004) .......... 10

*Gannett Co., Inc. v. DePasquale*, 443 U.S. 368 (1979) .......... 10

*Richardson v. Marsh*, 481 U.S. 200 (1987) .......... 12

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) .......... 10

*United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995) .......... *passim*

*United States v. Brooks*, 772 F.3d 1161 (9th Cir. 2014) .......... 10

*United States v. DiBernardo*, 880 F.2d 1216 (11th Cir. 1989) .......... 11

*United States v. Edwards*, 303 F.3d 606 (5th Cir. 2002) .......... 10

*United States v. Gomez*, 725 F.3d 1121 (9th Cir. 2013) .......... 10

*United States v. Jeffries*, No. 3:10-CR-100, 2011 WL 182867 (E.D. Tenn. Jan. 20, 2011) .......... 11

*United States v. Lopez*, 915 F. Supp. 891 (E.D. Mich. 1996) .......... 6, 7, 8

*United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999) .......... 9, 10

*United States v. Odom*, 888 F.2d 1014 (4th Cir. 1989) .......... 10

*United States v. Swan*, No. 1:12-CR-00027-JAW, 2013 WL 3422022 (D. Me. July 8, 2013) .......... 6, 7, 8

*United States v. Throckmorton*, 87 F.3d 1069 (9th Cir. 1996) .......... 9

*United States v. Troiano*,
426 F. Supp. 2d 1129 (D. Haw. 2006) .......... 9

*United States v. Tuyet Thi-Bach Nguyen*,
565 F.3d 668 (9th Cir. 2009) .......... 10

*United States v. Valdes*,
262 F. Supp. 474 (D.P.R. 1967) .......... 9

*United States v. Yizar*,
956 F.2d 230 (11th Cir. 1992) .......... 10, 11

*Zafiro v. United States*,
506 U.S. 534 (1993) .......... 3, 4, 8, 9

**Rules**

Federal Rule of Criminal Procedure
§ 8(b) .......... 3, 5
§ 12.2 .......... 2
§ 12.2(b)(1) .......... 2
§ 14 .......... 4
§ 14(a) .......... 1, 3, 10

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 10, 2020, at 10:00 a.m., or at such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Ramesh "Sunny" Balwani will and hereby does move this Court for an order severing the defendants for trial on the ground that joinder is prejudicial to Mr. Balwani under Federal Rule of Criminal Procedure 14(a). Mr. Balwani further moves for an order providing that his trial should proceed first, and directing that all filings related to this severance motion and the reasons for it be under seal, on the ground that otherwise the jury pool for Mr. Balwani's trial would be incurably tainted by an inevitable frenzy of negative publicity. This motion is based on the Federal Rules of Criminal Procedure, the accompanying memorandum of points and authorities, the files and records in this matter, and upon such further argument and evidence as may be presented prior to and during the hearing.

Dated: December 3, 2019

Respectfully Submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

JEFFREY B. COOPERSMITH

Attorneys for Defendant Ramesh "Sunny" Balwani

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF FACTS

On September 18, 2019, undersigned counsel received a letter from counsel for defendant Elizabeth Holmes stating that Ms. Holmes will file a Rule 12.2(b)(1) notice of her intention "to introduce expert evidence at trial related to a mental condition bearing on guilt." *See* Declaration of Jeffrey B. Coopersmith ("Coopersmith Decl."), ¶ 3, Ex. A (Holmes Letter) at 1. According to the letter, Ms. Holmes' expert will testify about, among other things, "intimate partner violence/abuse (including at least psychological, emotional, [REDACTED] suffered by Ms. Holmes at the hands of Mr. Balwani," "the abusive tactics used by Mr. Balwani that allowed him to exert control over [Ms. Holmes]," and "the psychological impact of the relationship on Ms. Holmes during the time period of the relationship and in connection with the charged conspiracy." *Id.* The expert may also "identify diagnoses of Post Traumatic Stress Disorder, [REDACTED] and the relationship between Ms. Holmes and Mr. Balwani." *Id.*

This momentous development leaves Mr. Balwani no choice other than to move this Court to sever his trial from Mr. Holmes' trial to avoid devasting prejudice to his case. Mr. Balwani unequivocally denies that he engaged in any abuse at any time. But regardless of its merit, the prejudice Mr. Balwani will suffer if Ms. Holmes presents or even publicly discloses this defense, particularly in a case as high profile as this one, is so extreme that severance is essential to preserve Mr. Balwani's right to a fair trial. For the same reason, Mr. Balwani asks that this motion, and all other papers relating to or that would have the effect of disclosing the alleged abuse defense (including responses to this motion and Ms. Holmes' notice under Federal Rule of Criminal Procedure 12.2), be filed under seal. It also is essential that Mr. Balwani's case, once severed from Ms. Holmes' case, proceed to trial first so that the jury pool for Mr. Balwani's case will not be incurably tainted by the sensational and inflammatory public reporting that will inevitably accompany Ms. Holmes' "abuse" defense.

### II. DISCUSSION

A severance is the only option here, and Mr. Balwani must be tried first. The Federal Rules of Criminal Procedure outline a two-step process for determining whether joinder of

defendants is appropriate in a criminal action. Rule 8(b) permits the government to charge multiple defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Even if joinder would be proper under Rule 8(b), however, Rule 14(a) permits a court to sever the defendants if joinder "appears to prejudice" one of them. *See Zafiro v. United States*, 506 U.S. 534, 538 (1993).

A severance is necessary under Rule 14(a) because the defense Ms. Holmes now advances unquestionably undermines Mr. Balwani's constitutional rights. Specifically, Ms. Holmes' allegations would expose the jury to incendiary character evidence that would be inadmissible against Mr. Balwani if he were tried alone, violating his due process rights under the Fifth Amendment to the U.S. Constitution. This prejudice to Mr. Balwani is so palpable that severance is required on this basis alone.

Several other considerations also weigh in favor of severance. First, without a severance ruling at the earliest possible time based on this motion, Mr. Balwani would be forced to launch a massive, expensive, distracting, and time-consuming investigation to be prepared to counter the abuse allegations at a joint trial. Such an investigation would be impossible to conduct in secret, thus risking heavy publicity that would incurably taint the jury pool. With a severance, no such investigation would be necessary. Second, Ms. Holmes' defense—including that Mr. Balwani utilized "abusive tactics" that "allowed him to exert control" over Ms. Holmes—may prove to be irreconcilably antagonistic to Mr. Balwani's defense that he did not commit the crimes the indictment alleges. Third, because it likely will not be known whether Ms. Holmes intends to testify until late into the trial and well after jeopardy attaches, there also is a risk that Mr. Balwani would have no opportunity to challenge statements she made to her expert about the alleged abuse forming a basis for the expert's opinion, violating his confrontation rights under the Sixth Amendment.

It is also vital that Mr. Balwani be tried first. The Court has discretion to sequence the trials and should exercise that discretion to protect Mr. Balwani from the prejudicial impact inherent to public disclosure of Ms. Holmes' intended defense. This prosecution, and Theranos in

general, has already drawn massive press coverage, and this will continue. The unavoidable publicity surrounding Ms. Holmes' claims that Mr. Balwani psychologically and sexually abused her, if disclosed before Mr. Balwani's trial, would incurably poison the jury pool.

Considering the severe, unfair prejudice a joint trial would cause for Mr. Balwani, this Court should grant a severance, order that Mr. Balwani be tried first, and order that all materials relating to this matter be filed under seal.

## A. THE LAW REQUIRES THAT MR. BALWANI'S CASE BE SEVERED.

### 1. A joint trial would expose the jury to tremendously prejudicial evidence that is otherwise inadmissible against Mr. Balwani.

The Supreme Court has held that "a district court should grant a severance under Rule 14" if (1) "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or (2) a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "Such a risk might occur," the Court explained, "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* Here, Ms. Holmes intends to offer evidence against her co-defendant, Mr. Balwani, to claim she is innocent at his expense.

This case presents precisely the risk the Supreme Court identified in *Zafiro*. Ms. Holmes' letter makes clear that she will present profoundly inflammatory allegations against Mr. Balwani, including expert testimony that he "psychological[ly], emotional[ly], and sexual[ly] abuse[d]" her, and that "the abusive tactics used by Mr. Balwani … allowed him to exert control over her." Coopersmith Decl., Ex. A (Holmes Letter) at 1. These allegations, and any evidence Ms. Holmes attempts to produce to support them, are wholly irrelevant to Mr. Balwani's guilt or innocence in this case and would never be allowed into evidence were Mr. Balwani tried alone. Under these circumstances, severance is the only way to preserve Mr. Balwani's right to a fair trial.

The handful of federal courts faced with these unusual circumstances have ruled that severance is necessary. The leading case—*United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995)—is a near carbon copy of this one. There, Norbert Breinig and his ex-wife, Joan Moore, were

charged with tax evasion. Breinig moved for severance on the ground that he and Moore intended to raise "violently antagonistic" defenses. *Id.* at 851–52. The district court denied the motion and the two were tried together.

At trial, Moore used precisely the defense Ms. Holmes now advances. She "claimed that she lacked the capacity to form the requisite *mens rea* to have evaded taxes 'wilfully' because she was dominated and controlled by Breinig," who, she alleged, "'manipulated' her throughout the course of a twenty-four-year marriage." *Id.* at 852. Moore also presented her defense in the same way Ms. Holmes intends to—"based largely on the testimony of a psychiatrist and a psychologist" who, "[o]ver Breinig's objections, … testified to Moore's mental instability; … extreme insecurities; … suicidal tendencies; and … low self-esteem." *Id.* While the district court allowed the joint trial and admitted "[a]ll of this evidence … only in support of Moore's defenses," that evidence "amounted, nevertheless, to dramatic evidence of Breinig's bad character." *Id.* After hearing that evidence, the jury convicted Breinig and acquitted Moore. *Id.* at 851.

The Sixth Circuit reversed. *Id.* Despite the federal system's "strong preference for joint trials" and the "great deference" to which district courts are entitled when making severance determinations, the panel rightly held that the "severe[] and unfair[] prejudice[]" Breinig suffered in his joint trial trumped all other considerations:

> The unfairness in Breinig's trial resulted … from … impermissible and highly inflammatory evidence of [Breinig's] bad character. The jury was told, by well-credentialed experts, that Breinig was an adulterous, mentally abusive, and manipulating spouse. Such testimony, of course, would have been inadmissible against him under any theory of the Federal Rules of Evidence on a trial for tax evasion. Because Breinig's credibility was in issue, the jury's consideration of categorically inadmissible evidence was manifestly prejudicial, and unfairly so. It provided the government with an unfair windfall that the rules of evidence and elemental notions of fairness would otherwise not allow, and that Rule 8(b) does not envision.

*Id.* at 853. The panel held that, given Moore's allegations, the district court's refusal to grant a severance was not simply incorrect, but an abuse of discretion. *Id.*

District courts faced with these circumstances have reached the same conclusion. In

*United States v. Lopez*, Rene Cardona and Sandra Lopez were jointly indicted on drug conspiracy charges. 915 F. Supp. 891, 894–95 (E.D. Mich. 1996). Cardona moved for severance on learning that "Lopez intend[ed] to offer evidence in her defense that Cardona beat and/or coerced her into committing criminal activity," arguing that Lopez's defense would "severely prejudice[ him] in the eyes of a jury." *Id.* at 900.[1] The court agreed. It held that the evidence Lopez intended to introduce about Cardona's alleged abuse and coercion would be "inadmissible against Cardona if he were tried independently" and would "expose [him] to the same degree of prejudice which justified the reversal in *Breinig*." *Id.* at 901. Any remedial measures "less drastic" than a severance, the court emphasized, "such as limiting instructions, [would] not suffice to cure this substantial risk of prejudice." *Id.*

Similarly, in *United States v. Swan*, a married couple—Mr. and Mrs. Swan—were jointly indicted for extortion, fraud, and other crimes. No. 1:12-CR-00027-JAW, 2013 WL 3422022, at *1 (D. Me. July 8, 2013). Mr. Swan moved for severance after Mrs. Swan—like both Ms. Holmes (here) and Joan Moore (in *Breinig*)—argued that she lacked the necessary *mens rea* because Mr. Swan was "controlling and physically abusive." *Id.* at *2. The government objected to severance. It complained that the case, which was expected to take "15 full trial days, involve about 120 witnesses—almost all of whom are not law enforcement witnesses—and hundreds of trial exhibits," would be too burdensome to try twice. *Id.* at *3. The government also was "decidedly skeptical" of Ms. Swan's story, noting that she had failed to "produce any documents confirming that she is a victim of domestic abuse" or even "notice of an expert witness" who would support her claims. *Id.* The government also claimed that a limiting instruction would cure any prejudice. *Id.* at *4.

The court disagreed. While aware of the additional "expense, time and trouble" separate trials would require, *id.* at *5, it held that the risk of prejudice to Mr. Swan was simply too severe:

> If [Mr. Swan's] case were tried separately, his wife's allegations of

[1] Cardona also argued that the prejudice would be "magnified" if Lopez "[did] not testify" at the trial, as that would "depriv[e] Cardona of an opportunity to cross examine her on this element of her defense." *Id.* As Mr. Balwani explains below, he likely will be similarly prejudiced if Ms. Holmes does not testify.

> spousal abuse would be inadmissible and the jury would focus on whether the Government had proven its criminal charges against him beyond a reasonable doubt. However, if his case is tried with his wife, the jury will likely hear her contention that Marshall Swan emotionally and physically abused her and Marshall Swan will therefore be compelled to defend himself not only against the prosecutor's case against him but also his wife's case against him. … If the jury were to hear this evidence against [him], there is the risk that they would convict him not because he committed the charged crimes of federal criminal fraud but because they believe he committed uncharged crimes of spousal abuse, or at least that their ability to judge him fairly on the merits would be compromised.

*Id.* at *4. Given the severity of the prejudice against Mr. Swan, the court "[was] not convinced that a jury instruction limiting the jury's use of this evidence would be successful." *Id.* at *5. "[W]here the basic fairness of the trial is at issue," it concluded, **"the Defendant's right to a fair trial must trump the extra expense.**" *Id.* (emphasis added).

Mr. Balwani must be severed from Ms. Holmes for precisely the reasons *Breinig*, *Lopez*, and *Swan* give: the severe, unfair, and unavoidable prejudice created by a joint trial. Ms. Holmes intends to use "well-credentialed experts" to introduce "impermissible and highly inflammatory evidence of [Mr. Balwani's] bad character." *Breinig*, 70 F.3d at 853. She will allege not only that Mr. Balwani was "manipulating" and "mentally abusive," as in *Breinig*, *id.*, and physically abusive, as in *Lopez*, 915 F. Supp. at 901, and *Swan*, 2013 WL 3422022, at *4, but also that Mr. Balwani engaged in "intimate partner violence/abuse," Coopersmith Decl., Ex. A (Holmes Letter) at 1, a uniquely incendiary and profoundly prejudicial claim.

These allegations and any evidence supporting them would be "inadmissible against [Mr. Balwani] under any theory of the Federal Rules of Evidence on a trial for [fraud]." *Breinig*, 70 F.3d at 853. And for good reason. Were the court to allow such "categorically inadmissible evidence," *id.*, Mr. Balwani would be in the deeply unfair position of having to "defend himself not only against the prosecutor's case against him but also [Ms. Holmes'] case against him," *Swan*, 2013 WL 3422022, at *4. There is great risk, moreover, that after hearing this evidence the jury would "convict [Mr. Balwani] not because he committed the charged crimes of federal criminal fraud but because they believe he committed uncharged crimes of [partner] abuse." *Id.* At the very least, "their ability to judge [Mr. Balwani] fairly on the merits would be

compromised." *Id.*; *see Zafiro*, 506 U.S. at 539 (district courts "should grant a severance" where a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence"). All this would amount to an "unfair windfall" for the government, one "that the rules of evidence and elemental notions of fairness would otherwise not allow." *Breinig*, 70 F.3d at 853.

In sum, a joint trial would "manifestly" and "unfairly" prejudice Mr. Balwani. *Id.* Because "less drastic measures, such as limiting instructions, will not suffice to cure this substantial risk of prejudice," *Lopez*, 915 F. Supp. at 901, this Court should sever him from Ms. Holmes.

**2. Other reasons weigh strongly in favor of severance.**

Mr. Balwani may be severely prejudiced by a joint trial for three other reasons.

**a) Without an order of severance Mr. Balwani would be forced to conduct a massive investigation.**

If the Court does not grant a severance now, then Mr. Balwani will suffer extreme prejudice by being forced to prepare for two trials: the government's fraud case, and Ms. Holmes' domestic abuse case. He would need to subpoena medical records, identify, locate, and interview dozens of witnesses, retain experts, request psychological evaluations, and otherwise prepare to combat Ms. Holmes' inflammatory allegations against him. The fraud and conspiracy charges in the indictment already present an extraordinarily complex case involving complicated regulatory frameworks, technical evidence, and millions of pages of documents. Investigating and defending against what amounts to an entirely different case by Ms. Holmes would impose an impossible burden on Mr. Balwani. Requiring a second investigation of this magnitude would also threaten to delay these proceedings. It would take Mr. Balwani many months to interview fact witnesses, obtain documents responsive to subpoenas, and adequately prepare counter-experts to rebut Ms. Holmes' abuse allegations, all while preparing to defend against the indicted fraud and conspiracy charges. Such a time-consuming, expensive, and distracting investigation by Mr. Balwani will not be necessary if this Court grants a severance and the other relief sought in this motion.

**b) Ms. Holmes' defense may be irreconcilably antagonistic to Mr. Balwani's.**

Second, Ms. Holmes' trial theory, including that Mr. Balwani used "abusive tactics that allowed him to exert control over" her in the course of running Theranos, may prove irreconcilably antagonistic to Mr. Balwani's defense that he did not commit fraud or conspiracy. "[S]everance should be granted when the defendant 'shows that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant.'" *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999) (quoting *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996)). A severance is warranted in such cases because the jury is "prevented … from making a reliable judgment about [the defendant's] guilt." *Id.*; *see also Zafiro*, 506 U.S. at 539.

This is precisely what may happen if Ms. Holmes and Mr. Balwani are tried together. Ms. Holmes apparently intends to argue that she is not guilty of fraud or conspiracy because Mr. Balwani's alleged abusive conduct let him "exert control over her." Coopersmith Decl., Ex. A (Holmes Letter) at 1. At trial, this defense may amount to, or be perceived by the jury as, an allegation that *Mr. Balwani* committed fraud and victimized Ms. Holmes in the process. Mr. Balwani's defense, by contrast, is simply that he did not commit the fraud alleged in the indictment and did not conspire with or direct Ms. Holmes to do so. Severance is required when acceptance of a co-defendant's defense precludes acquittal of the other defendant. *Mayfield*, 189 F.3d at 899; *United States v. Troiano*, 426 F. Supp. 2d 1129, 1135 (D. Haw. 2006); *United States v. Valdes*, 262 F. Supp. 474, 476 (D.P.R. 1967).

**c) A joint trial may violate Mr. Balwani's right to confront the witnesses against him.**

Whether Ms. Holmes decides to testify likely will not be known until sometime during the defense case. As her September 18 letter states, Ms. Holmes intends to make her case of abuse by Mr. Balwani, at least in part, through an expert. Such an expert must necessarily base his or her opinion testimony on interviews of Ms. Holmes. This presents a grave risk that the expert, on direct or on cross examination, will disclose either a summary or detailed information Ms.

Holmes provided. Indeed, Ms. Holmes will likely have an incentive to have the expert provide detailed information about her claims of abuse to try to make the expert's testimony appear credible. These circumstances risk depriving Mr. Balwani of his Sixth Amendment right to confront Ms. Holmes. *See Mayfield*, 189 F.3d at 901 ("Confrontation Clause violations can require a court to sever trials.").[2]

### B. MR. BALWANI MUST BE TRIED FIRST TO AVOID A HOPELESSLY TAINTED JURY POOL.

In addition to granting severance, the Court should order the government to try Mr. Balwani first. Because of the intense wave of publicity that already surrounds this case and the explosive nature of Ms. Holmes' accusations against Mr. Balwani, trying him second would incurably poison the jury pool.

In addressing prejudicial joinder, the Court may "provide any … relief that justice requires." Fed. R. Crim. P. 14(a). The Court's authority includes discretion to order the sequence of trials after severance. *United States v. Yizar*, 956 F.2d 230, 233 n.17 (11th Cir. 1992). In exercising that discretion, it is appropriate to "consider the possible impact upon public opinion" of the Court's decision. *United States v. Odom*, 888 F.2d 1014, 1018 (4th Cir. 1989) (affirming district court's decision about which co-defendant to sever and which to try based on effect on public opinion and public confidence in the judicial system). "To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). Courts have taken a variety of steps to fulfill that duty and shield defendants from the prejudicial effects

[2] "[T]he Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial' if the statements are offered to 'establish the truth of the matter asserted,' unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination." *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54, 59–60 n.9 (2004)). This prohibition applies even if "a co-defendant, as opposed to the prosecutor, elicit[s] the hearsay statement." *United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009). It also applies to expert testimony if a question asked at trial "could be understood to query the content of [the expert's] previous interviews." *United States v. Gomez*, 725 F.3d 1121, 1129–30 (9th Cir. 2013).

of pretrial publicity. *See, e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) (noting that court may transfer case to another venue to guard against danger of pretrial publicity); *United States v. Edwards*, 303 F.3d 606, 617 (5th Cir. 2002) (approving closing of courtroom for criminal proceedings and noting that information from proceedings can become public and be "highly prejudicial to the defendant"); *United States v. Jeffries*, No. 3:10-CR-100, 2011 WL 182867, at *3 (E.D. Tenn. Jan. 20, 2011) (continuing trial because of pretrial publicity). While defendants lack an "absolute right to be tried in a certain order," courts should evaluate each case "on its own facts." *United States v. DiBernardo*, 880 F.2d 1216, 1229 (11th Cir. 1989).

Here, those facts point only one way. Just as Ms. Holmes' allegations will taint the jury if she and Mr. Balwani are tried together, those same allegations will taint the jury pool if the cases are severed but Ms. Holmes is tried first. *See Yizar*, 956 F.2d at 233 (recognizing a trial court's ability, after granting severance of co-defendants, to sequence the trials to avoid the unfairness severance was designed to prevent).

It is no exaggeration to call this one of the most closely watched criminal cases in the country. There have been **hundreds** of stories in newspapers and on television about the investigation and prosecution of Mr. Balwani and Ms. Holmes, and **hundreds of thousands** of relevant Google hits. And the traditional press coverage of this case only scratches the surface of the publicity surrounding it. The alleged conduct at issue also has been the subject of a bestselling book, an HBO documentary, and a podcast. *See* Amy Kaufman, *A Bestselling Book, Hit Podcast and Now a New Documentary: Why Is Everyone So Obsessed with Elizabeth Holmes?*, L.A. Times (Mar. 16, 2019).[3] Indeed, a feature film from an Academy Award–nominated director is in the works. *See id.* There is also a forthcoming TV series based on the events underlying the government's case. Rick Porter, *Kate McKinnon to Star in Elizabeth Holmes Limited Series at Hulu*, Hollywood Reporter (Apr. 10, 2019).[4] This public attention is particularly intense in the Bay Area—where local newspapers and stations have published more than 150 stories on top of

---

[3] https://www.latimes.com/entertainment/movies/la-et-mn-alex-gibney-elizabeth-holmes-theranos-20190316-story.html.

[4] https://www.hollywoodreporter.com/live-feed/kate-mckinnon-star-elizabeth-holmes-limited-series-at-hulu-1201075.

the national coverage—from which the jury will be drawn. *See* Coopersmith Decl. ¶ 4.

Few charges are more loaded than sexual abuse. When leveled in high-profile matters, they always generate intense media coverage. *See, e.g.*, The New York Times, *The Reporters Who Exposed Harvey Weinstein*, N.Y. Times (Sept. 13, 2019)[5]; Brian Steinberg, *Media Coverage of Sexual Assault, #MeToo, Is Rising*, Variety (Oct. 5, 2018) (noting 30% increase in number of articles on sexual assault in major newspapers between May 2017 and August 2018, and even larger increase when articles solely covering the #MeToo movement, but not sexual assault itself, are included)[6]. Exposing the jury pool to the highly charged coverage of Ms. Holmes' intended defense would work incalculable harm on Mr. Balwani's chances of a fair trial. Moreover, Mr. Balwani does not seek "the advantage of knowing the prosecution's case beforehand" by being tried last. *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). To the contrary, he asks to be tried first. Mr. Balwani wants only what the Constitution promises: a fair trial in front of an impartial jury. That can only be guaranteed if Mr. Balwani's trial proceeds first.

## III. CONCLUSION

For these reasons, Mr. Balwani requests that the Court grant his motion to sever, order that his trial proceed before Ms. Holmes', and further order that all materials relating to Ms. Holmes' alleged abuse defense be filed under seal.

Dated: December 3, 2019

ORRICK, HERRINGTON & SUTCLIFFE LLP

JEFFREY B. COOPERSMITH

Attorneys for Defendant Ramesh "Sunny" Balwani

[5] https://www.nytimes.com/2019/09/13/us/the-reporters-who-exposed-harvey-weinstein.html.
[6] https://variety.com/2018/biz/news/media-coverage-sexual-assault-metoo-1202970077/.