1  ADAM A. REEVES (NYBN 2363877)
   Attorney for the United States,
2  Acting Under Authority Conferred By 28 U.S.C. § 515

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4
   JEFF SCHENK (CABN 234355)
5  JOHN C. BOSTIC (CABN 264367)
   ROBERT S. LEACH (CABN 196191)
6  VANESSA BAEHR-JONES (CABN 281715)
   Assistant United States Attorneys

7
   150 Almaden Boulevard, Suite 900
8  San Jose, California 95113
   Telephone: (408) 535-5061
9  Fax: (408) 535-5066
   Vanessa.Baehr-Jones@usdoj.gov
10
   Attorneys for United States of America
11

**FILED**

FEB 1 8 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                            SAN JOSE DIVISION

15  UNITED STATES OF AMERICA,              )  Case No. 18-CR-00258 EJD
                                           )
16          Plaintiff,                      )  UNITED STATES' SUPPLEMENTAL BRIEF IN
                                           )  OPPOSITION TO DEFENDANT RAMESH
17      v.                                  )  BALWANI'S MOTION TO SEVER
                                           )
18  ELIZABETH HOLMES and RAMESH            )  **[FILED PROVISIONALLY UNDER SEAL**
    "SUNNY" BALWANI,                       )  **PURSUANT TO COURT ORDER OF JANUARY**
19                                          )  **13, 2020]**
            Defendant.                      )
20                                          )
                                           )
21

22

23

24

25

26

27

28

GOV. SUPP. BRIEF
18-CR-00258 EJD

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

RELEVANT FACTS ............................................................................................................2

I.    Holmes Proffer.............................................................................................................2

II.   Family Member Proffers .............................................................................................3

ARGUMENT ........................................................................................................................3

I.    The Court Need Only Consider the Allegations of Sexual Abuse in Deciding
Severance ......................................................................................................................3

II.   The Allegations of Sexual Abuse Are Only Relevant If An Expert Testifies .................4

III.  Holmes Cannot State a Duress Defense and the BWS Cases Are Therefore
Inapplicable.................................................................................................................11

IV.  The Court Should Not Permit Holmes to Testify About the Sexual Abuse Allegations
If This Testimony Is Not Relevant...............................................................................14

V.   Even if Holmes Testifies to the Most Serious Allegations, the Prejudice to Balwani
Will be Minimal Because Overwhelming Evidence Will Impeach Her........................15

VI.  The Court Should Not Hold the Rule 12.2(b) Schedule In Abeyance............................17

VII. Empaneling Dual Juries Is a Practical Solution—Even in Complex White Collar
Cases ..........................................................................................................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993)...................................................................13

*Lambright v. Stewart,*
   191 F.3d 1181 (9th Cir. 1999) ...................................................18

*Reay v. Scribner,*
   369 F. App'x 847 (9th Cir. 2010) ........................................3, 4, 16

*Rock v. Arkansas,*
   483 U.S. 44 (1987).....................................................................15

*United States v. Alicea,*
   837 F.2d 103 (2d Cir.1988)........................................................15

*United States v. Andrews,*
   811 F. Supp. 2d 1158 (E.D. Pa. 2011) .......................................10

*United States v. Angwin,*
   271 F.3d 786 (9th Cir. 2001) .......................................................3

*United States v. Breinig,*
   70 F.3d 850 (6th Cir. 1995) .....................................................3, 7

*United States v. Brown,*
   880 F.2d 1012 (9th Cir. 1989) .....................................................9

*United States v. Childress,*
   58 F.3d 693 (D.C. Cir. 1995).......................................................9

*United States v. Dorrell,*
   758 F.2d 427 (9th Cir. 1985) .....................................................15

*United States v. Fernandez,*
   388 F.3d 1199 (9th Cir. 2004) ................................................4, 15

*United States v. Gonzalez,*
   599 F. App'x 727 (9th Cir. 2015) ...........................................2, 5, 6

*United States v. Haischer,*
   780 F.3d 1277 (9th Cir. 2015) ...............................................2, 6, 8

*United States v. Joetzki,*
   952 F.2d 1090 (9th Cir. 1991) ...................................................15

*United States v. Lewis,*
   716 F.2d 16 (D.C. Cir. 1983)......................................................17

*United States v. Lopez,*
    913 F.3d 807 (9th Cir. 2019) ...................................................................... 11, 12, 13

*United States v. Mezvinsky,*
    206 F. Supp. 2d 661 (E.D. Pa. 2002) ...................................................................... 10

*United States v. Moreno,*
    102 F.3d 994 (9th Cir. 1996) ...................................................................... 14, 15

*United States v. Nwoye,*
    824 F.3d 1129 (D.C. Cir. 2016) ...................................................................... 12, 13

*United States v. Rimar,*
    558 F.2d 1271 (6th Cir. 1977) ...................................................................... 17

*United States v. Swan,*
    2013 WL 3422022 (D. Me. July 8, 2013) ...................................................................... 6, 7

*United States v. Vasquez-Landaver,*
    527 F.3d 798 (9th Cir. 2008) ...................................................................... 11

*United States v. Warner,*
    971 F.2d 1189 (6th Cir. 1992) ...................................................................... 3

*Zafiro v. United States,*
    506 U.S. 534 (1993) ...................................................................... 3

## **STATUTES**

28 U.S.C. § 515 ...................................................................... 1, 19

1

**INTRODUCTION**

2　　During the hearing on February 10, 2020—after seven months of careful planning and

3 coordination—Defendants switched their theory for obtaining severance. Why? Because the

4 government's opposition, the declaration of Dr. Renee Binder, and the very exhibits that Holmes

5 provided to her own expert—presumably the best evidence she had to support her Rule 12.2(b)

6 defense—revealed that Holmes did not have a viable Rule 12.2(b) defense. Now Holmes's counsel

7 argues that the Court should grant Balwani's motion to sever immediately, before proceeding with the

8 Rule 12.2(b) process and before hearing from Dr. Mechanic, based entirely on *ex parte* proffers.

9 Defendants' new strategy raises critical questions: Why is Holmes so afraid of the Court considering

10 her defense in its entirety rather than in the piecemeal fashion that she has presented it for obtaining

11 severance? What possible interest does Holmes have in rushing the Court to sever in order to protect

12 Balwani's trial rights? Does Holmes actually intend to pursue her Rule 12.2(b) defense, submit herself

13 to a government examination, and provide Dr. Mechanic's full report and findings after obtaining

14 severance? Or, if Defendants are successful, will Holmes have an entirely different defense a year from

15 now?

16　　What is clear is that Defendants do not want the Court to hear from Dr. Mechanic. Instead, they

17 want the Court to decide severance in a vacuum. The Court should decline to make such a critical case

18 decision based on this record. There is a real possibility that Dr. Mechanic's testimony would be fatal to

19 Holmes's ability to admit <u>any</u> fact witness testimony in support of her *mens rea* defense. Dr. Mechanic

20 interviewed all of the potential Rule 12.2(b) witnesses as part of her evaluation, and █████████

21 ████████████████████████████████████████████████████████████

22 ████████████████　█████████████████　██████████ then this Court should

23 exclude them. Most critically, if Dr. Mechanic cannot state how Holmes's allegations against Balwani

24 undermined her *mens rea* to commit wire fraud, then the Court should exclude the entire Rule 12.2(b)

25 //

26 //

27

28

GOV. SUPP. BRIEF
18-CR-00258 EJD　　　　　　　　　　1

1  defense.[1]  Defendants should not be permitted to rush the Court to judgment on severance in order to

2  avoid an airing out of their failed Rule 12.2(b) defense.  That would be an injustice.

3       Without Dr. Mechanic's testimony connecting Holmes's experience of intimate partner abuse

4  (IPA) with her purported mental disorders at the time of the offense, none of the fact witness testimony

5  about Balwani's abuse is relevant.  The law does not support a *mens rea* defense based solely on fact

6  witness testimony of sexual and emotional abuse absent some connection between the abuse and

7  defendant's mental state at the time of the offense.  *See, e.g.*, *United States v. Gonzalez*, 599 F. App'x

8  727 (9th Cir. 2015); *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015).  In almost every

9  case, this type of defense will require expert testimony.  Even in *Haischer*, the most helpful case for

10  Holmes's fact-witness argument, the defendant noticed a Rule 12.2(b) defense on remand and presented

11  testimony from her expert psychologist during her retrial.  The other cases on which Defendants rely

12  either fail to address threshold admissibility questions and merely stand for the general proposition that

13  fact witness testimony may support a *mens rea* defense, or address the admissibility of Battered

14  Women's Syndrome (BWS) evidence as part of a duress defense and are therefore inapplicable here.

15       The Court should decline to rush to judgment on severance before considering the admissibility

16  of Holmes's Rule 12.2(b) defense.  Instead, it should order the schedule set forth during the February 10,

17  2020, hearing.

18  **RELEVANT FACTS**

19  **I.    Holmes Proffer**

20       The government assumes for the sake of argument that Holmes has submitted an *ex parte* proffer

21  stating the allegations set forth in Dr. Mechanic's declaration.  (*See* Amended Mechanic Decl. at 11–13.)

22  //

23  //

24

25      [1] Defendant Holmes has repeatedly argued that the only reason the Court does not have this

26 information is because Dr. Mechanic's declaration for her motion to sever only covered Holmes's
current mental state.  But when the Court ordered Holmes to supplement Dr. Mechanic's declaration

27 with anything—even a paragraph—supporting her Rule 12.2(b) defense, she could not.  Notably,
counsel for Holmes has never asserted in any of their many filings on this issue nor during the two

28 hearings that Dr. Mechanic can, in fact, testify that Holmes's experience of IPV and resulting PTSD,
depression, and anxiety undermined her ability to form the *mens rea* to commit wire fraud.

## II.    Family Member Proffers

Since Dr. Mechanic did not include any statements from Holmes's family members in her amended declaration, the government presumes that Holmes's parents and brother cannot corroborate Holmes's specific allegations of sexual and physical abuse. Thus, the government assumes for the sake of argument that the family members' testimony will encompass more general observations about Holmes's demeanor over the relevant time period, that they observed Balwani and Holmes fighting and that Holmes seemed affected by it, and even appeared depressed.

## ARGUMENT

### I.    The Court Need Only Consider the Allegations of Sexual Abuse in Deciding Severance

As an initial matter,

(Amended Mechanic Decl. at 12–13.)  The case law is clear that severance presents an extraordinary remedy when two co-conspirators are properly joined and is only warranted when the potential prejudice of a joint trial rises to such a high level that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Even trials where one defendant presents evidence of domestic violence suffered at the hands of her co-defendant will not necessarily require severance. *See, e.g.*, *Reay v. Scribner*, 369 F. App'x 847, 848–49 (9th Cir. 2010) (holding that denial of defendant's motion for severance from his co-defendant wife did not violate his due process rights where wife testified about defendant's domestic violence). *See also United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995) (noting that this was "an exceptional case" where "its unique facts"—testimony from two psychiatrist and psychologist experts about Breinig's infidelities and abuse over the course of the co-defendants' 24-year marriage—resulted in "severely and unfairly" prejudicing the defendant).

Co-conspirators often point the finger at each other during trial and make all sorts of accusations that do not rise to this level. *See, e.g.*, *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (testimony from one co-defendant about the other co-defendant's "domineering commands" did not present mutually

1   antagonistic defense requiring severance); *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)

2   ("Hostility among defendants or the attempt of one defendant to save himself by inculpating another

3   does not require that defendants be tried separately."). Instead, limiting instructions "explaining how

4   and against whom certain evidence may be considered, can reduce or eliminate any possibility of

5   prejudice arising from a joint trial." *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

6       Thus, the Court need not consider whether the following potential fact testimony would require

7   severance: (1) "Mr. Balwani was often physically present in Ms. Holmes' office"; (2) Balwani acted

8   generally "controlling" and monitored Holmes's emails, calls, or texts; (3) "Mr. Balwani was combative

9   with Ms. Holmes"; and (4) "Ms. Holmes was isolated by Mr. Balwani." (Balwani Reply at 8 (listing

10   examples of arguably prejudicial fact witness testimony); Holmes Reply at 2 (same).) Any fact witness

11   testimony regarding the above conduct—without more—would not require Balwani to be tried

12   separately. Thus, whether these statements are admissible is immaterial to Balwani's motion to sever.

13   **II.    The Allegations of Sexual Abuse Are Only Relevant If An Expert Testifies**

14       Defendants ask the Court to sever without considering Dr. Mechanic's testimony and based

15   solely on the proffered *ex parte* testimony. But absent Dr. Mechanic's expert testimony, the most

16   salacious allegations of sexual abuse are not probative of any material fact and therefore should be

17   excluded under Rules 401 and 402. Moreover, these allegations are exactly the type of evidence likely

18   to confuse the issues and mislead the jury, and should therefore also be excluded under Rule 403.

19   Indeed, among all of the cases the government could find in which a district court grappled with

20   threshold relevancy questions relating to a defendant's claims of physical and sexual abuse, none of the

21   courts admitted testimony about the abuse without either (1) expert testimony showing how the abuse

22   affected the defendant's mental state, or (2) some evidence that the abuse could form the basis of a

23   duress defense.[2] Without something more, the testimony failed to survive the Rule 403 balancing test.

---

[2] The one specific allegation of physical abuse detailed in Dr. Mechanic's amended declaration, Balwani throwing a textbook at Holmes, does not appear to resemble the type of repeated physical violence that might result in a diagnosis of Battered Women's Syndrome. Nor does this allegation—without more context—appear to rise to the level of the domestic violence described in *Reay v. Scribner*, 369 F. App'x at 848–49, where severance was <u>not</u> required. Finally, it is not clear when or where this incident occurred and, thus, without more, it is impossible to determine how relevant or prejudicial this allegation may be.

In *United States v. Gonzalez*, for example, the district court considered defendant's request to admit her own testimony about her history of horrific physical and sexual abuse to show that she did not knowingly and willfully participate in the charged crimes of mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering, and conspiracy to commit money laundering. (Baehr-Jones Decl., Exh. 1, Defendant's Motion in Limine, at 8–13.) During the hearing on the motion, the court noted that the only evidence of the abuse were the defendant's own statements. (Baehr-Jones Decl., Exh. 2, Transcript of Motion Hearing at 8.) The court found that the abuse, including repeated sexual molestations and instances of physical abuse by family members, was not relevant "without some other connection" to the crime, which the defense did not have. (*Id.* at 9.) Without an expert to "tie [the abuse evidence] into this case," the defense was effectively asking the jurors to act as "amateur psychologists." (*Id.* at 8–9.) The court elaborated:

> What you would need is you would need a psychologist to say, okay, I examined her, she had all these issues, and because of that she would be afraid to ask—a person in that situation would be afraid to ask questions, would be afraid to say no to anybody. I don't know if that's the case. But you need some type of evidence like that. You don't have it.

(*Id.* at 10.) Balanced against the fact that the defendant's testimony, on its own, lacked probative value, was the high potential for prejudice:

> Furthermore, it is highly, absolutely highly, overwhelmingly prejudicial. It's a play to the jury. Let this woman off because she's had a terrible life. That's exactly what I see without any tie-in. . . . And, you know, it's a sad situation, but [the jury] ha[s] to decide this case based not on sadness or emotion.

(*Id.* at 9–10, 14.) The court noted that the defense might have been able to show some "tie in" through a duress defense if Gonzalez had offered any evidence that she had suffered from battered women's syndrome, but the defense had not made such a proffer. (*Id.* at 23.) Accordingly, the district court held that the Rule 403 factors "overwhelmingly" weighed against the testimony's "very little probative value," and excluded the defendant's testimony about her sexual and physical abuse. (*Id.* at 10.)

The Ninth Circuit upheld the district court's ruling in *United States v. Gonzalez*, 599 F. App'x 727 (9th Cir. 2015). The court found that the evidence of Gonzalez's "abusive childhood and other details of her personal history" was "highly prejudicial." *Id.* at 728. The court further found that the

1   evidence "ha[d] very little, if any, relevance or probative value absent some expert testimony connecting

2   the past abuse [Gonzalez] suffered to her mental state at the time of the crime." *Id.* But Gonzalez did

3   not proffer any expert testimony. *Id.* "Given the 'scant' probative value of the evidence, the district

4   court properly determined that the danger of unfair prejudice substantially outweighed the probative

5   value of the evidence in this case." *Id.* (citing *United States v. Haischer*, 780 F.3d 1277 (9th Cir. 2015)).

6       Here, just like *Gonzalez*, the only evidence supporting Holmes's allegations of sexual abuse at

7   the hands of Balwani are her own statements.[3]  Just like *Gonzalez*, without expert testimony tying the

8   instances of alleged sexual abuse to Holmes's mental state at the time she committed the fraud, the

9   testimony has very little, if any, relevance or probative value. And just like *Gonzalez*, the testimony has

10  the high probability of prejudicing and misleading the jury, and confusing the issues in the case. The

11  Ninth Circuit in *Gonzalez* correctly applied its holding in *Haischer*: fact witness testimony about abuse

12  as part of a "*mens rea*" defense *must* be connected to the defendant's mental state at the time of the

13  offense. Absent this connection, the testimony is inadmissible.

14      Balwani relies heavily on *United States v. Swan*, in his motion to sever and supplemental brief.

15  But there the district court had some evidence—in addition to the testimony of defendant Carole

16  Swan—of the connection between the abuse and its potential relevance at trial.[4]  Defendant Swan

17  submitted to the district court the affidavit of Julia Hausman, an employee of an organization called Safe

18  Voices. (Baehr-Jones Decl., Exh. 3.) Ms. Hausman attested that the abuse Swan described to her was

19  "indicative of domestic violence battering." (*Id.* at 1.) Ms. Hausman further stated that she believed

20  Swan was in "significant danger," and that her extreme fear had prevented her from fleeing her home

21  earlier. (*Id.*) Swan's allegations also involved extreme violence: "black eyes, bruised ribs, and clumps

22  of hair being pulled from her head as she was dragged from room to room." *United States v. Swan*, No.

23  1:12-CR-00027-JAW, 2013 WL 3422022, at *4 (D. Me. July 8, 2013). Based on this evidence and the

27      [4] Balwani misquotes the opinion in *Swan*, seemingly attributing to the district court what was

28  actually the government's assertion, summarized by the district court, that Swan "failed to produce any documents confirming that she is a victim of domestic abuse." (Balwani Reply at 4.)

GOV. SUPP. BRIEF
18-CR-00258 EJD                                              6

1    proffers of defense counsel, the district court could have reasonably concluded that defendant Swan
2    might be able to raise a duress defense during trial.

3        Here, of course, Holmes does not allege severe physical abuse and is not raising a duress defense
4    —nor could ████████████████████████████████████████ Unlike *Swan*,
5    the Court need not sever out of an abundance of caution that this defense might come in during the trial.

6        *Swan* is also a particularly unpersuasive case for Defendants for other reasons.  The district court
7    there granted severance over the government's skepticism of Swan's claims of spousal abuse and
8    suspicion that this was part of a joint defense strategy.  *Swan*, 2013 WL 3422022, at *3, 5.  During trial,
9    defendant Swan took the stand and, indeed, lied at length, prompting the district court to apply a two-
10   level enhancement for obstruction at sentencing:

11   > In the court's view, the defendant lied repeatedly throughout the course of her
12   > dealings with the judicial process, and the court is, frankly, reluctant to go on and
       isolate out each of these lies, hold them up, examine them under *Dunnigan* and
13   > recite the elements because I, frankly, do not want to embarrass the defendant any
       more than her situation calls for. . . .

14   (Baehr-Jones Decl., Exh. 4 at 14.)  The court further noted in a post-trial order on her motion for bail:
15   "[The government] states that her 'perjury during these criminal proceedings was pervasive, a fact *her*
16   *counsel* conceded at sentencing and that resulted in an obstruction of justice enhancement.'"  (*Id.*, Exh. 5
17   at 5 (emphasis added).)  If anything, *Swan* is a cautionary tale about granting severance based solely on
18   one co-conspirator's claims of abuse.

19       In *Breinig*, another case on which Defendants rely, expert testimony provided the tie between the
20   allegations of abuse and the defendant's mental state.  There, an expert psychiatrist and an expert
21   psychologist both testified during the trial about the diminished capacity of Breinig's former wife and
22   co-defendant, Joan Moore.  *Breinig*, 70 F.3d at 852.  Specifically, they testified about "Moore's mental
23   instability; to her extreme insecurities; to her suicidal tendencies; to Breinig's infidelities; and to
24   Moore's low self-esteem," and how this created in her an "extreme dependence on Breinig."  *Id.*  One of
25   the experts had even treated Moore several years before the trial.  *Id.*  The district court docket also
26   shows that Moore underwent a competency evaluation shortly before trial.  Thus, the district court had
27   extensive expert evidence before it prior to trial, and prior to deciding severance, regarding Moore's
28

mental health condition. That factual record is dramatically different from what is before the Court here. *Breinig* also provides no support for the argument that a defendant's own testimony about physical and sexual abuse by her co-defendant—absent any expert opinion—is admissible as part of a *mens rea* defense. To the contrary, the record in *Breinig* shows a defense based entirely on expert testimony.

Finally, even *Haischer*—the best case for Holmes's argument that fact witness testimony alone can support her *mens rea* defense—shows that this theoretical proposition has limited practical application. In *Haischer*, the district court conducted an evidentiary hearing before the first trial to determine whether Haischer could make a prima facia showing for a duress defense. The court allowed in witness testimony in support of this defense, but excluded other evidence of the abuse. During trial, the defense abandoned the duress defense, and attempted to admit the abuse evidence in support of a *mens rea* defense. The district court then excluded the evidence. On appeal, the Ninth Circuit reversed the district court's decision to exclude the evidence of abuse, holding that "[a]lthough the evidence of abuse was less probative of Haischer's lack of knowledge or intent than it was of Haischer's potential duress defense, the evidence was not so minimally probative that it was proper to exclude it entirely." *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015). There, though, the fact witness testimony itself connected the abuse to the defendant's mental state at the time of the offense, since a third-party witness saw Haischer signing the fraudulent documents while her abuser and co-conspirator withheld medical treatment for her broken leg. *Id.* at 1280. *Haischer* therefore presents a highly unusual set of facts where the fact witness testimony, on its own, was directly relevant. It is an outlier.[5]

But, even in *Haischer*, the Ninth Circuit's opinion served to outline a theoretical defense and not the defense Haischer actually presented during her retrial. On remand, Haischer did not rely solely on fact witnesses to present her *mens rea* defense. Instead, she noticed a defense expert pursuant to Rule 12.2(b), and presented testimony from an expert psychologist during trial. Thus, even though a fact-witness *mens rea* defense based on abuse may exist in theory, the government could find no examples where a defendant had actually advanced such a defense at trial.

---

[5] Indeed, the government could find no other cases with similar fact patterns, where the fact witness testimony, on its own, established the connection between the alleged abuse and the defendant's *mens rea*.

1    This makes sense since the power of this kind of psychiatric expert testimony is precisely what
2  prompted Congress to limit its admissibility in the IDRA. It is far more powerful for an apparently
3  neutral expert to explain to a jury how a defendant's mental state may have affected her *mens rea* than
4  for a defendant's family member to testify that she looked depressed. That is why Holmes is not asking
5  this Court to admit only fact witnesses, but has noticed a Rule 12.2(b) defense.

6    Aside from the above cases, Holmes relies on two appellate court cases that stand for the general
7  proposition that fact witnesses may also be admissible as part of a *mens rea* defense. (*See* Holmes
8  Reply at 4 (citing *United States v. Brown*, 880 F.2d 1012, 1017 (9th Cir. 1989); *United States v.*
9  *Childress*, 58 F.3d 693, 729 (D.C. Cir. 1995)).) But because these are appellate courts sitting in review,
10  their decisions do not address threshold relevancy questions under Rule 401 and 403 for specific pieces
11  of evidence or testimony. *See, e.g.*, *Childress*, 58 F.3d at 729 ("[T]he district court can only make a
12  final determination about the probity of the evidence after further inquiry and voir dire of the expert.").
13  In fact, in both cases, the courts remanded for the district courts to make these threshold admissibility
14  decisions.

15    The government does not dispute that, as a general matter, fact witness testimony can be
16  admitted absent expert testimony to support a *mens rea* defense. But fact witness testimony about a
17  defendant's mental state can run the gamut: there is obviously a big difference between statements from
18  a defendant's family members that a defendant seemed depressed and out-of-sorts at the time of the
19  offense, which has minimal probative value and minimal prejudicial effect, and a defendant's own
20  testimony about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ years removed from the offense, which
21  has little to no value and a high likelihood of prejudicing the jury. The relevant questions here, then, are
22  (1) whether each statement of proffered fact witness testimony is, on its own, probative of Holmes's
23  ability to form the intent to deceive, and (2) if so, whether that probative value is outweighed by Rule
24  403 concerns.[6] To answer these questions, the Court needs to consider Dr. Mechanic's findings and
25  conduct a *Daubert* hearing.

26

---

27    [6] To be clear, this is a statement-by-statement analysis. It may be that some fact witness
testimony from Holmes's family members has minimal probative value, but also little chance of raising
28  Rule 403 concerns. Thus, this testimony might be admissible. Of course, there would be little need to
sever the trial based on such testimony.

1    Defendant Holmes noticed a Rule 12.2(b) defense after being evaluated by a forensic

2  psychologist. Thus, this is not a case where she will rely solely on fact witness testimony to put on her

3  *mens rea* defense.[7] It is therefore impossible for the Court to consider admissibility of the fact witness

4  testimony without considering whether the Rule 12.2(b) defense as a whole is admissible. There is a

5  distinct possibility that after a *Daubert* hearing, the Court will exclude Dr. Mechanic's testimony and

6  find that none of the fact witnesses whom she interviewed can provide relevant testimony about

7  Holmes's ability to form the intent to deceive. As the government set forth in its opposition, the

8  evidence here does not support

9  ███████████████████████████████ (*See also* Binder Decl. ¶¶ 9–13, 20–33.)

10  Moreover, a *mens rea* defense in the context of a years-long fraud case is incredibly hard to raise, since

11  it is highly unlikely that a defendant will be so impaired that she will fail to comprehend the nature of

12  her actions over the course of years. *See, e.g., United States v. Mezvinsky*, 206 F. Supp. 2d 661, 672

13  n.13 (E.D. Pa. 2002) (noting that no court in any reported decision had upheld a *mens rea* defense when

14  the criminal activity spanned more than a week); *United States v. Andrews*, 811 F. Supp. 2d 1158, 1176

15  (E.D. Pa. 2011) ("Her alleged scheme to defraud spanned more than four years, and all experts

16  recognize that her condition did not persist uninterrupted during this time period."). The *Daubert*

17  hearing will therefore not only determine whether Dr. Mechanic's testimony is admitted, but will also

18  decide whether the fact witness testimony is relevant and admissible. Critically, if Dr. Mechanic opines

19  that Holmes's experience of IPA did not negate her ability to form the *mens rea* to commit wire fraud,

20  then the Court should exclude the entire defense.

21    The Court should not consider fact witness testimony in a piecemeal fashion, while the defense

22  keeps the Court in the dark about what Dr. Mechanic might say. What if Dr. Mechanic testifies that

23  none of the family members' statements informed her diagnosis of Holmes's mental conditions? What

24  if Dr. Mechanic testifies that a particular lay observation does not support the conclusion that Holmes's

25  mental state at the time of the offense was so impaired she could not form intent to deceive? Finally,

26

27    [7] Counsel for Holmes repeated at the February 10, 2020, hearing that there would be some expert testimony presented as part of Holmes's *mens rea* defense.

28  ███████████████████████████████████████

1   what if Dr. Mechanic testifies that Holmes's mental state at the time of the offense was not so impaired

2   as to affect her ability to understand the nature of her circumstances or the wrongfulness of her actions?

3   If so, then the entire Rule 12.2(b) defense, including the fact witness testimony and including the most

4   salacious allegations against Balwani, would be properly excluded.  The Court should decline to be

5   rushed to sever these defendants as part of what is now clearly a joint defense strategy.[9]

6   **III.     Holmes Cannot State a Duress Defense and the BWS Cases Are Therefore Inapplicable**

7            The remainder of the cases on which Holmes and Balwani rely in their Reply briefs are

8   inapplicable because they address expert testimony admitted in support of duress defenses.  (Holmes

9   Reply at 3; Balwani Reply at 5.)  Holmes cites these cases in support of admitting expert testimony "to

10  contextualize and address common misconceptions about abusive relationships," but fails to set forth the

11  threshold test for the admissibility of such testimony:  the three-element prima facie showing necessary

12  to admit a duress defense.  *See United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008)

13  (setting forth the standard for admitting a duress defense).

14           In *United States v. Lopez*, 913 F.3d 807 (9th Cir. 2019), for instance, the Ninth Circuit held that

15  expert testimony regarding Battered Women's Syndrome (BWS) may be relevant as part of a duress

16  defense.  The court first reiterated, though, the well-established test for a duress defense:  "In order to

17  establish the defense, a defendant bears the burden of proving three elements by a preponderance of the

18  evidence: (1) she was under an immediate threat of death or serious bodily injury, (2) she had a well

19  grounded fear that the threat would be carried out, and (3) she had no reasonable opportunity to escape."

20  *Id.* at 813 (internal quotations and alterations omitted).  The court then held that evidence of BWS could

21  be admitted to provide context to whether a reasonable defendant in the same particular circumstances

22  would have a well-grounded fear of the threat and would reasonably believe that she had no reasonably

23  opportunity to escape.  *Id.* at 819–24.  Thus, expert testimony on BWS may—depending on the trial

24  //

25

26           [9] The government detailed in its opposition how counsel for Holmes appeared to coordinate the
    severance motions with counsel for Balwani in their September 18, 2019, letter.  After the government
27  filed its opposition, Holmes filed a reply in support of *Balwani's* motion to sever.  Finally, if there were
    any doubt that this was a joint defense strategy before the February 10, 2020, hearing, it was clear when
28  Holmes's lead counsel argued strenuously in support of *Balwani's* motion to sever that these motions
    were part of a joint strategy.

1  court's decisions regarding the proper scope—be admissible in support of the second two elements of

2  the duress defense. *Id.* at 826.

3      Similarly, in *United States v. Nwoye*, 824 F.3d 1129 (D.C. Cir. 2016)—another case Holmes

4  cites—the D.C. Circuit considered whether expert testimony on BWS should have been admitted in

5  support of the defendant's duress defense. Again, the court began with the test for a duress defense. In

6  the D.C. Circuit, the test requires the defendant produce sufficient evidence to establish "(i) that she

7  acted under an unlawful threat of imminent death or serious bodily injury, and (ii) that there was no

8  reasonable, legal alternative to committing the crime." *Id.* at 1135 (internal quotations omitted). The

9  court then went on to evaluate whether the testimony was reliable and relevant. The court held that

10  expert testimony regarding BWS could assist in evaluating the objective reasonableness of the first

11  prong of duress, "the imminent harm prong," and the second prong, "the no-reasonable alternative

12  prong." *Id.* at 1137–38. The court noted that this holding was supported by other courts that found this

13  type of expert testimony on BWS admissible in the context of self-defense. *Id.* at 1138.

14      *Lopez* and *Nwoye* are inapplicable here for a number of reasons. First, Holmes does not assert

15  she suffered from BWS. Dr. Mechanic opines in her declaration that Holmes experienced intimate

16  partner abuse (IPA), not BWS.[10] (Amended Mechanic Decl. at 13–14.) BWS is defined in the case law

17  as "severe, repeated domestic abuse" in which "repeated beatings diminish the battered woman's

18  motivation to respond and instill in her a negative belief about the effectiveness of her actions." *Lopez*,

19  913 F.3d at 816 (internal quotations and citations omitted). Victims who suffer from BWS "face

20  significant impediments to leaving abusive relationships" because they "risk a retaliatory escalation in

21  violence against themselves or those close to them." *Nwoye*, 824 F.3d at 1137–38 (citing Mary Ann

22  Dutton, *Validity of "Battered Woman Syndrome" in Criminal Cases Involving Battered Women*, in

23  DEPARTMENT OF JUSTICE, ET AL., THE VALIDITY AND USE OF EVIDENCE CONCERNING BATTERING AND

24  ITS EFFECTS IN CRIMINAL TRIALS pt. I, at 14–15 (1996). In contrast, Dr. Mechanic describes IPA as

25  "fundamentally about control, not physical violence." (Amended Mechanic Decl. at 8.) Dr. Mechanic

26

27      [10] BWS is a subcategory of Posttraumatic Stress Disorder, which may develop in victims of IPA,

28  but has its own set of diagnostic criteria. *See* Lenore Walker, *Battered Woman Syndrome*, PSYCHIATRIC TIMES, *available at:* https://www.psychiatrictimes.com/trauma-and-violence/battered-woman-syndrome.

only references one specific example of reported physical abuse between Balwani and Holmes. (*Id.* at 13.) Her evaluation instead focuses on the "emotional abuse and control tactics" that "were a hallmark of the relationship." (*Id.*)

Second, Holmes is not asserting a duress defense—nor could she based on the allegations outlined in Dr. Mechanic's declaration. Her self-reported allegations of abuse do not establish (1) that she was under an immediate threat of death or serious bodily injury, (2) that she had a well grounded fear that the threat would be carried out, nor (3) that she had no reasonable opportunity to escape. *Lopez* and *Nwoye* specifically addressed BWS in the context of duress, setting forth how this type of physical abuse might affect a victim's perception of violent, physical threats and her ability to leave the abuser, and therefore might be relevant to a fact-finder evaluating the elements of a duress defense. *See generally Lopez*, 913 F.3d at 819–24; *Nwoye*, 824 F.3d at 1135–38. But a duress defense is entirely different from the defense Holmes seeks to present—that PTSD, depression, and anxiety resulting from IPA undermined her *mens rea* to commit wire fraud. Neither *Lopez* nor *Nwoye* addressed the admissibility of expert testimony about BWS in support of a *mens rea* or Rule 12.2(b) defense. Nor did these cases address the admissibility of fact witness testimony. Thus, neither case provides any support for Holmes's current assertion that her own allegations of abuse against Balwani are admissible in support of her *mens rea* defense regardless of whether the Court admits expert testimony.

What is revealing, though, in both the *Lopez* and *Nwoye* opinions is the careful analysis each court undertook to consider whether, and specifically how, the challenged expert testimony may be relevant. Holmes cites these cases for the general proposition that expert testimony about abuse is helpful to "contextualize and address common misconceptions." (Holmes Reply at 3.) But these opinions actually stand for a much different conclusion: expert testimony on BWS—like all expert testimony—should be considered carefully in the context of the specific issue for which it is being offered to determine whether it is reliable and relevant. *See Nwoye*, 824 F.3d at 1136 ("For expert testimony to be admissible in federal court, it must be both reliable and relevant.") (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). In the duress context, expert testimony about BWS describes specifically why a defendant may reasonably fear her abuser's threats and believe she has no opportunity to escape, and therefore is relevant to material issues of the

defense. Holmes's standard for admitting IPA testimony, in contrast, would effectively swallow this entire defense. Any defendant—no matter whether he or she had met the three-part test for admitting a duress defense—could admit expert testimony on BWS as part of an expansive *mens rea* defense. This would render meaningless the careful analysis of the Ninth Circuit in *Lopez* describing how this expert testimony may be relevant. This cannot be the standard. The Court should decline to skip over the threshold admissibility inquiry here in Defendants' rush to sever.

Holmes's counsel has repeatedly asserted she is *not* presenting a duress defense. Therefore, none of the duress cases provides a basis for admitting her expert testimony in support of her Rule 12.2(b) defense. And these cases certainly do not support her theory that the Court should sever now based solely on fact witness proffers.

## IV.    The Court Should Not Permit Holmes to Testify About the Sexual Abuse Allegations If This Testimony Is Not Relevant

Counsel for Holmes has repeatedly cited Holmes's Fifth and Sixth Amendment rights to testify in her defense in arguing that the Court should decide Balwani's severance motion now, based solely on her proffer. But this blanket assertion of a defendant's rights has nothing to do with whether her testimony is admissible under the law. Even a defendant's right to testify has limits.

In *United States v. Moreno*, for instance, the Ninth Circuit upheld the district court's exclusion of the defendant's testimony about his own mental state. 102 F.3d 994 (9th Cir. 1996). At trial, defendant Moreno attempted to admit his own testimony about gang compulsion or coercion to prove the absence of criminal *mens rea*. *Id.* at 996. The district court excluded Moreno's testimony, finding that he had failed to present prima facie evidence of duress in his proffer of evidence, and that the crime of possession with intent to distribute cocaine base did not contain a *mens rea* element. *Id.* at 996–97. On appeal, the Ninth Circuit affirmed, holding that Moreno had "failed to demonstrate that he did not have the opportunity to escape the threatened harm," and the district court therefore did not err in excluding the duress defense. *Id.* at 997–98.

The court went on, though, to analyze whether Moreno nevertheless had a constitutional right to testify in his own defense. *Id.* at 998–99. The court held that he did not. *Id.* "The constitutional right to testify is not absolute," the court explained. *Id.* at 998. The right is limited to "relevant testimony," and

1    "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."

2    *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)) (internal quotation marks omitted). "Without

3    question, the Government has a legitimate interest in excluding evidence which is not relevant or is

4    confusing under Rule 402 and Rule 403 of the Federal Rules of Evidence." *Id.*   The court concluded

5    that "[w]hile the constitutional right to testify permits a defendant to choose whether or not to take the

6    witness stand, it does not authorize a defendant to present irrelevant testimony." *Id.* at 999. *See also*

7    *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir. 1985) (holding that if the evidence does not support

8    a defense as a matter of law, "the trial court should exclude the defense and the evidence offered in

9    support"); *United States v. Alicea*, 837 F.2d 103, 107 (2d Cir.1988) (holding there was no violation of

10   the right to testify where the trial court excludes the evidence of a duress defense that fails as a matter of

11   law).

12          Here too, if the Court finds, after holding a *Daubert* hearing, that Dr. Mechanic's testimony does

13   not support Holmes's proposed Rule 12.2(b) defense, and that Holmes's allegations of abuse against

14   Balwani therefore have very little, if any, probative value, the Court can and should exclude her

15   testimony about the alleged abuse.  Holmes does *not* have a constitutional right to take the stand and

16   testify about whatever she wants.  The rules of evidence govern her testimony just like they govern

17   every other witness's testimony.  The Court should therefore decline to rush to judgment on severance

18   simply because Holmes's counsel asserts she has a constitutional right to testify.  The *Daubert* hearing

19   will determine the scope of her admissible testimony.

20   **V.     Even if Holmes Testifies to the Most Serious Allegations, the Prejudice to Balwani Will be**
         **Minimal Because Overwhelming Evidence Will Impeach Her**

21          The Court's analysis for purposes of severance, though, does not end with the question of

22   admissibility.  Even assuming arguendo that the two most serious allegations will be admitted at trial,

23   the question for the Court is then whether these allegations, with a proper limiting instruction, would so

24   prejudice Balwani that he would be denied his right to a fair trial.  *Fernandez*, 388 F.3d at 1241 ("[A]

25   district court's careful and frequent limiting instructions to the jury, explaining how and against whom

26   certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a

27   joint trial."); *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) ("A defendant seeking

28

1   severance based on the 'spillover' effect of evidence admitted against a co-defendant must also

2   demonstrate the insufficiency of limiting instructions given by the judge.").

3       The potential prejudice of Holmes's testimony depends not only on the words that come out of

4   her mouth, but also on the effectiveness of her testimony. ███████████████████████

5   ████████████████████████████████████████████████████████████████

6

7   ████████████████████████████████████ This will tend to impeach her claims that

8   Balwani controlled her actions, abused her emotionally, and diminished her ability to deceive the

9   victims. ███████████████████████████████████████████████████████

10  █████████████████████████████████████ The government also expects to confront

11  Holmes with the many video recordings of her cogently and intelligently presenting on Theranos during

12  the time of the fraud. In these videos, Holmes comes across as a highly functioning and articulate

13  individual who is aware of her actions, shows remorse when she realizes it would benefit her, and acts

14  deliberately and intentionally. This evidence directly contradicts her claim that she could not form the

15  requisite intent. The jury will be able to judge Holmes's mental condition for themselves.

16      After the government's cross-examination, it is quite possible that rather than prejudicing

17  Balwani, Holmes's testimony could serve the opposite end. If the jury believes that Holmes's testimony

18  is misleading and self-serving, they may well have sympathy for Balwani and discount Holmes's

19  allegations. The jury may consider her claims of abuse to be an attempt to shift the blame, and therefore

20  may ultimately view her as more culpable than Balwani. At the very least, the potential prejudice to

21  Balwani of Holmes's testimony will be much reduced.

22      The Court must consider the most salacious allegations as part of the entire evidence in the case.

23  *Reay*, 369 F. App'x at 848–49 (considering the prejudice of the co-defendant's domestic violence

24  testimony in the context of the strong evidence in the case and the court's limiting instruction).

25  Considering Holmes's allegations in context, her testimony—on its own—would not deny Balwani his

26  right to a fair trial.

27  //

28

## VI.   The Court Should Not Hold the Rule 12.2(b) Schedule In Abeyance

The Court should decline Holmes's request to hold in abeyance the Rule 12.2(b) schedule. Regardless of the Court's ultimate holding on severance, the government anticipates that this process will take time and, as counsel for Holmes indicated during the February 10, 2020, hearing, will likely require additional litigation. There is no reason to wait to begin this process. If the process begins now, even a contested Rule 12.2(b) process should not disrupt the current trial date.

Holmes's strenuous objections to the Rule 12.2(b) schedule also raise serious questions about her motives: Why is Holmes so resistant to moving forward with the Rule 12.2(b) defense that she herself noticed? If severance is granted, will she withdraw her notice a year from now and avoid ever having to submit to a government examination? A joint defense strategy to obtain severance now should not be the basis to hold in abeyance a reasonable schedule for completing the Rule 12.2(b) process. The Court should decline to delay this process any further.

## VII.   Empaneling Dual Juries Is a Practical Solution—Even in Complex White Collar Cases

Finally, Defendant Balwani suggests in his Reply that dual juries are not used in white collar cases or in complex cases. This is incorrect. In *United States v. Lewis*, 716 F.2d 16, 19–20 (D.C. Cir. 1983), for example, the D.C. Circuit approved the use of dual juries in a bribery public corruption case. In *United States v. Rimar*, 558 F.2d 1271 (6th Cir. 1977), the Sixth Circuit upheld a highly complex use of dual juries to try four defendants, two of whom were tried before the dual juries, and two of whom were tried before the judge who sat as trier of fact. Though complex, the court held this did not create "an atmosphere so confusing as to deprive [defendants] of a fair trial." *Id.* at 1273. No court has limited the use of dual juries to trials of violent crimes, nor would such a limitation make any analytical sense.

It is not the length of a case, nor the subject matter, that renders the use of dual juries more or less difficult. Procedurally, the difficulty of dual juries arises from how many times one of the juries may need to be removed during the presentation of the evidence. In a case with numerous inadmissible *Bruton* statements, where one jury may need to be removed repeatedly during the government's case-in-chief, this can present logistical hurdles and could risk exposing one jury improperly to the *Bruton* statements.

//

1    The logistics here, in contrast, would be relatively simple.  The government does not anticipate

2  that either jury would need to be excused from any part of the government's case.  None of the

3  government's expected witnesses are expected to testify about arguably prejudicial instances of Balwani

4  physically or sexually abusing Holmes.  Nor does the government anticipate Holmes would be able to

5  establish a foundation for asking questions that could raise these allegations of abuse on cross-

6  examination.  The juries would only be excused from the other defendant's defense case, which should

7  not result in that lengthy of a delay and would be relatively straightforward.  This is one of those cases

8  where "the use of dual juries can actually palliate, rather than exacerbate, the risks of a joint trial."

9  *Lambright v. Stewart*, 191 F.3d 1181, 1186 (9th Cir. 1999).  Indeed, "where the main reason for a

10  severance [is] one specific class of evidence, the use of dual juries can capture both the advantages of a

11  joint trial and the protections of separate trials."  *Id.*

12    Contrary to Balwani's assertion, there would be no need to sequester the jury.  Balwani has not

13  presented any survey evidence to show that the venire in the Northern District of California has been

14  hopelessly tainted by the press coverage surrounding Theranos.  The government anticipates that voir

15  dire will reveal a large number of potential jurors who have little, in any, knowledge of Theranos,

16  Holmes, or Balwani.  There is no reason to conclude that the seated jurors in this case would be unable

17  to abide by the Court's instruction not to read or watch any media coverage of the trial.  Balwani's

18  arguments to the contrary are baseless.

19  //

20  //

21  //

22

23

24

25

26

27

28

**CONCLUSION**

On this record, Defendants have failed to show either lay or expert testimony about alleged abuse will be admitted to any extent necessitating severance. The government therefore asks the Court to delay ruling on the motions to sever, and instead proceed with the schedule it set forth during the February 10, 2020, hearing. Before deciding severance, the Court should hold a *Daubert* hearing.

DATED: February 18, 2020

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
VANESSA BAEHR-JONES
Assistant United States Attorneys