SEALED BY ORDER OF COURT

FILED
JUN 0 8 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 | Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, <br><br> Defendants. | Case No. CR-18-00258-EJD-SVK <br><br> **OPPOSITION TO GOVERNMENT'S MOTION FOR AN EXAMINATION OF DEFENDANT ELIZABETH HOLMES PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(c)** <br><br> Date: July 8, 2020 <br> Time: 10 a.m. <br><br> **FILED UNDER SEAL** <br><br> Hon. Edward J. Davila |

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

# CONTENTS

ARGUMENT ............................................................................................................................. 2

I.   The Government Has Not Justified Its Need for an Examination. ............................. 2

II.  The Government's Proposed Procedures Are Insufficient to Protect Ms. Holmes'
     Fifth and Sixth Amendment Rights ........................................................................... 3

     A.  To Protect Ms. Holmes' Fifth and Sixth Amendment Rights, the
         Examination Must Be Limited in Scope, and Ms. Holmes Must Have
         Advance Notice of the Testing and Topics ..................................................... 3

     B.  The Exam Should Not Be Video Recorded ..................................................... 6

     C.  The Government Should Not Be Permitted to Conduct Multiple
         Examinations by Multiple Examiners ............................................................. 7

     D.  Consultation with Counsel During Exam ........................................................ 8

III. The Government's Request for Mental Health Records Not Relied on By Dr.
     Mechanic Should Be Denied. .................................................................................... 8

IV.  Schedule .................................................................................................................. 10

## CASES

*Buchanan v. Kentucky*, 483 U.S. 402 (1987) ........................................................................... 3

*Estelle v. Smith*, 451 U.S. 454 (1981) ..................................................................................... 3

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ..................................................................................... 9

*Nelson v. United States*, 2010 WL 2010520 (W.D. Mo. May 18, 2010) ...................... 4, 6, 7, 8

*Stallworth v. Brollini*, 288 F.R.D. 439 (N.D. Cal. 2012) ........................................................ 10

*United States v. Christensen*, 2019 WL 1569348 (C.D. Ill. Apr. 11, 2019) .......................... 6, 7

*United States v. Davis*, 93 F.3d 1286 (6th Cir. 1996) ............................................................... 2

*United States v. Fell*, 2015 WL 13781291 (D. Vt. Oct. 9, 2015) ...................................... 6, 7, 8

*United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996) ............................................................... 9

*United States v. Impastato*, 535 F. Supp. 2d 732 (E.D. La. 2008) ........................................... 9

*United States v. Layton*, 90 F.R.D. 520 (N.D. Cal. 1981) ....................................................... 9

*United States v. Runner*, 2014 WL 4384379 (D.S.D. Sept. 3, 2014) ...................................... 6

*United States v. Seymour*, 576 F.2d 1345 (9th Cir. 1978) ....................................................... 9

*United States v. Taylor*, 320 F. Supp. 2d 790 (N.D. Ind. 2004) .............................................. 4

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) .................................... 9

*United States v. Williams*, 731 F. Supp. 2d 1012 (D. Haw. 2010) ............................... 2, 4, 8, 10

*United States v. Wilson*, 493 F. Supp. 2d 348 (E.D.N.Y. 2006) .............................................. 4

*Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997) ....................................... 10

*Wardius v. Oregon*, 412 U.S. 470 (1973) ................................................................................ 9

Fed. R. Crim. Proc. 12.2 ................................................................................................... *passim*

Fed. R. Crim. Proc. 16 .............................................................................................. 1, 8, 9, 10

Fed. R. Evid. 404 .................................................................................................................... 11

Ms. Holmes provided notice pursuant to Rule 12.2(b)(1) on December 16, 2020, the date required by the Scheduling Order and the Federal Rules of Criminal Procedure. As noted in prior pleadings, Rule 12.2(b)(1) is a notice provision. It does not replace Ms. Holmes' normal obligations to provide expert disclosures and other discoverable information pursuant to Rule 16(b)(1), nor—other than the potential for a court-ordered examination—does Rule 12.2 provide the government with discovery rights other than those set forth in Rule 16(b)(1). Due to the unusual circumstances of the severance motions in the case, the government has long had substantially more information about the nature of Ms. Holmes' forthcoming Rule 16(b)(1)(C) disclosure (and aspects of her defense) than it normally would at this point.

The government now moves for an examination of Ms. Holmes pursuant to Federal Rule of Criminal Procedure 12.2(c), certain discovery pursuant to Rule 16(b) and/or supposed conceptions of fundamental fairness, and a schedule. Each of those items is addressed in more detail below.

A court-ordered examination, while permissible pursuant to Rule 12.2(c), is not automatic and must be considered on a case-by-case basis. Ms. Holmes objects to an examination because the government has not sufficiently articulated why it needs a proposed examination and has not provided sufficient notice of the procedures to ensure Ms. Holmes' constitutional rights are protected. Because of the substantial Fifth and Sixth Amendment rights implicated by such an examination, if an examination is ordered, the scope of any examination must be limited only to rebuttal, the procedures must be carefully tailored, and sufficient notice of the scope and procedures must be provided to allow for the meaningful protection of those rights. The government's proposed procedures do not sufficiently protect those rights; accordingly, Ms. Holmes objects to any examination that does not comport with the procedures set forth below, including: advance notice, an opportunity to object to specific testing and topics as outside the scope of a permissible rebuttal exam, and the availability (though not physical presence) of counsel. Additionally, Ms. Holmes objects to video or audio recording of the examination and to the government's attempt to conduct multiple examinations.

With respect to discovery, Ms. Holmes will make her disclosures related to Dr. Mechanic, including any expert disclosure and report of examination, on the date the Court sets for her expert

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

1

disclosures. Ms. Holmes will also produce test results, raw testing data, and Dr. Mechanic's notes of interviews conducted for her examination. The Court should deny the government's request that Ms. Holmes produce medical records in her possession beyond those reviewed by Dr. Mechanic.

Finally, with respect to schedule, Ms. Holmes requests that the Court defer her expert disclosure deadline until after the charging document has been set and, if the Court orders an examination, that any schedule contemplate notice of and a chance to object to the government's intended topics and procedures.

## ARGUMENT

### I. The Government Has Not Justified Its Need for an Examination.

Rule 12.2(c)(1)(B) permits the Court to order an examination of Ms. Holmes, but it does not *entitle* the government to an examination. In and of itself, "the introduction of expert testimony regarding a mental condition, disease, or defect does not particularly suggest the need for an examination of the defendant, let alone require it." *United States v. Davis*, 93 F.3d 1286, 1292-93 (6th Cir. 1996). Accordingly, before the court orders an examination, it should "determine whether an examination is even necessary because 'unlike a claim of insanity, a mental condition, disease or defect requires a case by case analysis to determine whether a psychiatric or psychological examination of the defendant will be necessary for the government fairly to rebut the defendant's expert evidence.'" *United States v. Williams*, 731 F. Supp. 2d 1012, 1019 (D. Haw. 2010) (quoting *Davis*, 93 F.3d at 1293). This determination is doubly important because a court-ordered examination implicates Ms. Holmes' Fifth Amendment right: while the Fifth Amendment does not preclude a court-ordered examination of a defendant who has noticed her intent to rely on an expert examination, the scope of the Fifth Amendment waiver (and therefore a government examination) is limited to *rebuttal* only. *See id.* at 1017-19; Fed. R. Crim. P. 12.2(c)(4).

Here, the government has argued generally that fundamental fairness argues in favor of an examination and that Rule 12.2(c) permits one, but, despite having notice of the topics disclosed in Ms. Holmes' Rule 12.2 notice for months, its motion does not articulate why *in this case* an examination is necessary. And it has not provided any information about the substantive contours of the examination.

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

2

The combination of this failure to justify and the failure to articulate the procedures to be utilized and topics to be covered heightens Ms. Holmes' concerns that the government will push the bounds of any examination well beyond the constitutional limits. These concerns are particularly acute given the government's recent attempt to dramatically expand the scope of the charges two years after its original indictment. Ms. Holmes therefore objects to the government's request. Before an examination is ordered, the government should be required to articulate the specific need for, scope of, and tests and topics to be covered during the examination.

## II.   The Government's Proposed Procedures Are Insufficient to Protect Ms. Holmes' Fifth and Sixth Amendment Rights.

If the Court determines that an examination is appropriate, Rule 12.2(c) requires the Court to order the procedures that should govern the examination. Fed. R. Crim. P. 12.2(c)(1)(B) ("If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined *under procedures ordered by the court*." (emphasis added)). The government has asked that the Court order certain procedures. In the event the Court orders an examination, Ms. Holmes does not object to the government's proposed length of examination, the proposed limitation on attendees, or the proposed type of location. Additionally, in the event the Court orders an examination, Ms. Holmes will work with the government to propose a reasonable completion date.

As discussed below, Ms. Holmes objects to certain of the proposed procedures and believes that further procedures must be ordered to sufficiently protect her Constitutional rights.

### A.   To Protect Ms. Holmes' Fifth and Sixth Amendment Rights, the Examination Must Be Limited in Scope, and Ms. Holmes Must Have Advance Notice of the Testing and Topics.

Ms. Holmes requests that any court-ordered procedures expressly limit the examination to rebuttal and provide for appropriate safeguards to limit the scope of the examination. A court-ordered examination implicates Ms. Holmes' Fifth and Sixth Amendment rights. *See Buchanan v. Kentucky*, 483 U.S. 402, 424-25 (1987); *Estelle v. Smith*, 451 U.S. 454, 464-65 (1981). While the Constitution does not prohibit a court-ordered examination where a defendant relies on an expert's examination, the Fifth Amendment waiver implicated by the defendant's expert's examination is limited to the topics of

that examination. Importantly, the Fifth Amendment requires that any government examination be limited to "a *similar examination* conducted on behalf of the prosecution." *Williams*, 731 F. Supp. 2d at 1017 (emphasis in original); *see id.* at 1017-20. The government is not permitted, for example, to use the examination to "*ascertain[] another possible motive for Defendant's actions*[,]" *id.* at 1017 (emphasis in original), or to use the examination as an opportunity to cross examine Ms. Holmes on the myriad and evolving issues the government has raised in the case, *see id.* at 1019. The examination must be tailored to rebutting the mental condition testimony noticed by Ms. Holmes. *Id.*; *see also United States v. Taylor*, 320 F. Supp. 2d 790, 794 (N.D. Ind. 2004) (ordering government could not use certain psychological testing because it was not appropriate rebuttal).

      Advance notice of the details of the proposed examination is important to protecting these rights. Indeed, courts often require specific notice of the testing to be administered and the topics to be covered during an examination for exactly that reason. *See, e.g., United States v. Wilson*, 493 F. Supp. 2d 348, 360 (E.D.N.Y. 2006) (granting an examination and continuing: "As noted above, before any such testing can occur, certain procedures will need to be worked out in connection with the testing so that the court and the Defendant are certain that Wilson's Fifth and Sixth Amendment rights are protected."); *Nelson v. United States*, 2010 WL 2010520, at *4 (W.D. Mo. May 18, 2010). Such notice permits a defendant to object to topics and testing that go beyond rebuttal, as well as to exercise her Sixth Amendment right to be counseled on the examination.[1]

      Here, the government has refused to provide advance notice of the tests to be administered or to provide notice as to the anticipated topics of inquiry in its proposed examinations. In fact, it has not even acknowledged the limited scope of a potential examination. The risk that the government examination will be inappropriately broad is particularly of concern to Ms. Holmes here because neither of the government's proposed examiners appears to have expertise in intimate partner abuse; rather, each is a generalist. *See* Decl. of Kevin M. Downey, Exs. A (Renée Binder CV), B (Daniel Martell CV).

---

[1] In *Williams*, the court considered the motions related to the scope of the examinations after they had been administered, pursuant to the stipulation of the parties. 731 F. Supp. 2d at 1015. In that case, a taint team was ordered to address specific objections to scope of the examinations. *Id.* at 1027-28.

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

4

1    General descriptions of the proposed examinations, such as seven hours of "psychological
2 testing" by Dr. Martell and a "psychiatric evaluation" by Dr. Binder, do not give sufficient notice to
3 address these concerns. There are many psychological tests utilizing different methods and having
4 different purposes. While some tests may present no issue or only a *Daubert* issue that can be addressed
5 later, the use of others might reach the level of a Fifth Amendment violation. It would be outside the
6 scope of an appropriate rebuttal exam, for example, for Dr. Martell to administer the Psychopathy
7 Checklist – Revised, a tool used to assess the presence of psychopathy, in order to address the disclosed
8 scope of Dr. Mechanic's potential testimony. Moreover, it seems unlikely that Dr. Martell would *only*
9 be performing psychological testing. Psychological testing is not an end in forensic evaluation—it is
10 one tool among many, as Dr. Martell seemed to recognize himself earlier this year. Jan. 5, 2020 Martell
11 Decl. ¶¶ 9, 10 (attached as Exhibit 3 to Jan. 7, 2020 Baehr-Jones Decl., Dkt. No. 221).

12    Ms. Holmes requests that any Court order compelling an examination make clear that the
13 examination is limited to rebuttal of the specific topics that Ms. Holmes has noticed. Ms. Holmes has
14 informed the government that those topics include "whether and how Ms. Holmes' relationship with Mr.
15 Balwani was consistent with intimate partner abuse; whether and how Ms. Holmes' psychological
16 responses during and after the relationship were consistent with the typical reactions of victims of an
17 abusive relationship; and Ms. Holmes' particular vulnerability to an abusive relationship, ▓▓▓▓▓
18 ▓▓▓▓▓▓ Ex. 1 to Mar. 31, 2020 Baehr-Jones Decl. (Jan. 17, 2020 Ltr. from Trefz to Baehr-
19 Jones, *et al.*) at 1. Ms. Holmes additionally informed the government that the forensic evaluation would
20 be "focused on the referral questions of whether Ms. Holmes suffered from intimate partner abuse in her
21 relationship with Mr. Balwani during the period of the alleged conspiracy; if so, what was the nature and
22 extent of the abuse; and the psychological effects of such abuse." *Id.* at 2. Ms. Holmes has provided the
23 government with notice of the testing that was conducted.

24    Moreover, if an examination is ordered, Ms. Holmes also requests the Court employ one of the
25 following measures to protect her Fifth and Sixth Amendment rights: (1) set an appropriate date for the
26 government to provide notice of the particular procedures (including testing, structured interview
27 methods, and interview topics) and an opportunity to object *in advance of* the examination or (2) order

28
OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

that the results of the examinations and any testing be provided directly to Ms. Holmes' counsel before being provided to or discussed with the prosecution team so that Fifth Amendment issues can be addressed without permitting the prosecution team access to material obtained in violation of Ms. Holmes' Fifth Amendment right.

### B. The Exam Should Not Be Video Recorded.

The Court should deny the government's request that the examination be recorded by video or means other than the examiner's notes. Courts have recognized that recording a psychological examination can have a negative effect on the integrity of the interview and, where a recording of the government's examination is ordered, it is ordered for the protection and benefit of the defendant. Accordingly, where the defendant objects to the recording of an examination, courts have regularly denied a request to record the examination. *See, e.g.*, *United States v. Christensen*, 2019 WL 1569348, at *2-3 (C.D. Ill. Apr. 11, 2019) (government request to record its examination of defendant denied); *United States v. Fell*, 2015 WL 13781291, at *3 (D. Vt. Oct. 9, 2015) (defense request to record government examination granted, government request to record defense examination denied); *United States v. Runner*, 2014 WL 4384379, at *2 (D.S.D. Sept. 3, 2014) (defendant request that government examination be recorded denied); *Nelson*, 2010 WL 2010520, at *3 (government request to record its examination of defendant denied).

*Christensen* is instructive. There, the government sought to have its own forensic mental examination recorded, over the defendant's objection. The court noted that "[n]umerous federal courts have chosen not to allow recording of examinations when one party objects[,]" "due in part to the effect that the recording would have on the integrity of the interview." 2019 WL 1569348 at *2. The court further explained that, "[t]o the extent the courts have allowed video recording of such examinations, it appears to have been for the benefit of [the] Defendant." *Id.* at *3. The court therefore denied the request. The court in *Nelson* reached the same conclusion. There, the government proposed that its examination be both audio and video recorded, citing to the ABA Criminal Justice Mental Health Standards. 2010 WL 2010520 at *3. Because "this standard was enacted to protect the rights of the defendant and does not confer a right on the prosecution to record the examination[,]" the court held that

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

6

1  "if [defense] counsel does not wish the examination to be recorded, the Government has no right to
2  insist on this condition." *Id.*
3       The government cites *Fell* to support its request. But as the *Christensen* court noted, *Fell* stands
4  for the proposition that video recording is for the benefit of the defense. 2019 WL 1569348 at *3. In
5  *Fell*, the government requested an order requiring either that all examinations be videotaped or that none
6  be videotaped. *Fell*, 2015 WL 13781291 at *1. The defendant opposed, arguing that government
7  evaluations should be recorded but the defense evaluations need not be. *Id.* The court ordered that the
8  government evaluations be recorded to protect the defendant's Fifth Amendment rights, but denied the
9  request that defense examinations be recorded, rejecting the government's fundamental fairness
10 argument. *Id.* at *3 ("The Government's argument that recording defense examinations will 'level the
11 playing field' is perhaps intuitively attractive, but ultimately not persuasive. As the Second Circuit has
12 observed, a criminal prosecution 'is in no sense a symmetrical proceeding.'" (citing *United States v.
13 Turkish*, 623 F.2d 769, 774 (2d Cir. 1980))).
14      Ms. Holmes requests that the Court deny the government's request that the examination be
15 recorded.

16  **C.   The Government Should Not Be Permitted to Conduct Multiple Examinations by Multiple Examiners.**
17

18      The government has proposed that it be permitted to have two different forensic examiners with
19 apparently similar qualifications perform examinations of Ms. Holmes—Dr. Martell to perform
20 unidentified "psychological testing" for seven hours and Dr. Binder to perform an unexplained seven-
21 hour "psychiatric evaluation" of Ms. Holmes. It has presented no justification for this approach, made
22 no effort to distinguish among the examinations or to explain why one of its experts' examinations
23 would be insufficient in this context, and made no argument as to how these two examinations are, in
24 fact, only one. The lack of any justification is particularly notable in this case, where Ms. Holmes has
25 informed the government that only one examiner will examine her. Examinations under 12.2(c) are not
26 an opportunity for the government to fish for an expert that supports its view. *See, e.g., Nelson*, 2010
27 WL 2010520 at *3 (ordering that the government must select either psychiatrist Dr. Dietz or Dr. Martell
28

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

7

(the government's expert here) for the examination but could not use both).[2] The Court should order that the government choose either Dr. Martell or Dr. Binder for its examination of Ms. Holmes.

### D. Consultation with Counsel During Exam

Finally, the Court should order that although defense counsel will not be present in the examination, Ms. Holmes' counsel will be available either physically nearby or via phone during the examination. This will allow Ms. Holmes to exercise her Fifth and Sixth Amendment rights meaningfully while providing minimal intrusion into the forensic examination. Other courts have ordered that counsel be permitted live access to the examination, a step beyond the measures requested here. *See, e.g., Nelson*, 2010 WL 2010520 at *3 (permitting defense counsel to monitor via live audio feed for consultation purposes).

## III. The Government's Request for Mental Health Records Not Relied on By Dr. Mechanic Should Be Denied.

The government moves to compel various discovery. Ms. Holmes has never declined to produce information discoverable under Rule 16(b); she has simply insisted that she will fulfill her disclosure obligations according to the Scheduling Order set by the Court. The Court has deferred setting a date for Ms. Holmes' expert disclosures. On the date that is set, Ms. Holmes will produce any report by Dr. Mechanic associated with the disclosures, as well as Dr. Mechanic's interview notes and raw testing data and test results in her possession, custody, or control.[3]

---

[2] In situations where multiple government examinations have been ordered, it appears that the experts have distinct specialties that bear on the issues raised by the defendant and/or the defendant has employed multiple examiners. *See, e.g., Fell*, 372 F. Supp. 2d at 761-62 (where defendant had 3 experts and government had 2, denying government opportunity to have a third expert examine, noting that "Rule 12.2 gives the government the ability to select one expert, not three" and finding only the previously-agreed 2 experts could finish their examinations); *Williams*, 731 F. Supp. 2d at 1016 (two defense examiners, no objection to three government examiners).

[3] Federal Rule of Criminal Procedure 16(b)(1)(B) does not require the production of any reports of examination or test results until the government produces its own examination report and test results. *See* Fed. R. Crim. P. 16(b)(1)(B)(disclosure required if "the government complies," containing no exception for 12.2(b)). However, Ms. Holmes will produce these materials in conjunction with her expert disclosure in order to facilitate the Court's consideration of the government's request for a rebuttal examination and the adjudication of the appropriate limits and procedures related to any rebuttal exam.

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

8

1    The government has requested the production of "any mental health records in the possession of
2    Ms. Holmes." It has not specified the basis for this request or what, if anything, it seeks beyond the
3    material reviewed or prepared by Dr. Mechanic. "Congress has [] addressed the kinds of information the
4    government and defendants are obligated to provide to each other before trial by way of discovery and
5    the district court's authority to enforce those obligations." *United States v. W.R. Grace*, 526 F.3d 499,
6    510 (9th Cir. 2008) (en banc) (emphasis removed). The defendant's obligations are specifically laid out
7    in the Federal Rules of Criminal Procedure, and are not "expansive . . . due to 'constitutional limitations
8    that are thought to restrict prosecutorial discovery.'" *United States v. Impastato*, 535 F. Supp. 2d 732,
9    742-43 (E.D. La. 2008) (quoting 2 Charles Alan Wright, et al., Fed. Prac. & Proc. Crim. § 255 (3d ed.
10   2007)). The government has no right to discovery from a criminal defendant beyond what those rules
11   provide. *United States v. Seymour*, 576 F.2d 1345, 1349 (9th Cir. 1978) ("[W]e do not approve the entry
12   of the subject order and do not sanction a practice which would require a defendant to supply
13   information beyond the provisions of Rule 16, F.R.Crim.P.").[4]

14   Ms. Holmes will produce medical records prepared or considered by Dr. Mechanic or those on
15   which Ms. Holmes will rely in her case-in-chief at trial. Fed. R. Crim. P. 16(b)(1). To the extent the
16   government seeks *other* medical records, the Court should deny the motion. There is no Rule 16 basis
17   on which to produce such material. Indeed, the government does not cite a rule or provision entitling it
18   to these records, apparently relying instead on "fairness" arguments that have long been rejected. *See*
19   Gov't Mot. at 7. *Contra United States v. Layton*, 90 F.R.D. 520, 522 (N.D. Cal. 1981); *contra also*
20   *Seymour*, 576 F.2d at 1349.

21   Moreover, the government's suggestion that Ms. Holmes has generally waived the
22   psychotherapist-patient privilege is misplaced. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (holding that

---

[4] This is so even though the Constitution and courts may compel *the government* to provide discovery beyond what is specifically described in Federal Rule of Criminal Procedure 16. *See W.R. Grace*, 526 F.3d at 510–11 & n.7 (permitting the court to order additional discovery from the government only), *overruling in part United States v. Hicks*, 103 F.3d 837, 841 (9th Cir. 1996) (prohibiting a court from ordering additional discovery from the government or the defendant). After all, "the State's inherent information-gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Wardius v. Oregon*, 412 U.S. 470, 475 n.9 (1973).

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

"confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure"). Courts in this district generally recognize a waiver of the psychotherapist-patient privilege only when a party "affirmatively rel[ies] on psychotherapist-patient communications in support of her claim." *Stallworth v. Brollini*, 288 F.R.D. 439, 443-44 (N.D. Cal. 2012) (collecting cases). This approach looks to whether a party is using particular privileged therapist-patient communications to further her own cause by, for example, relying on the advice or findings of her treating psychotherapist. *See Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229 (D. Mass. 1997). In this case, Ms. Holmes has noticed her intent to offer the testimony of Dr. Mindy Mechanic, who is not Ms. Holmes' treating psychologist. Ms. Holmes' communications *with Dr. Mechanic* are not protected by the psychotherapist-patient privilege in this case. But Ms. Holmes' retention of Dr. Mechanic does not waive the privilege with regard to the mental health records created by mental health professionals *other than* Dr. Mechanic (which Dr. Mechanic has not reviewed or relied upon).[5]

The Court should deny the government's request to the extent it seeks discovery outside of the bounds of Rule 16(b).

## IV. Schedule

The government proposes a separate schedule for briefing related to Ms. Holmes' anticipated disclosures regarding Dr. Mechanic, though its requested dates are moot. Ms. Holmes makes the following observations about the potential schedule.

First, as noted above, the Court previously deferred setting a date for Ms. Holmes' expert disclosures. Ms. Holmes requests that the Court continue to hold that date in abeyance. In light of the government's stated intention to seek a second superseding indictment that would greatly expand the case, including doubling the length of the alleged investor conspiracy, Ms. Holmes believes that the date for her expert disclosures should be deferred until after the charging document is settled and the government has made any intended or required updates to its own expert and Rule 404(b) disclosures.

---

[5] ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

1  Moreover, Ms. Holmes requests that any disclosure date ordered by the Court be set not less than 14
2  days from the date of the order setting the schedule.
3        Second, if the Court orders an examination, Ms. Holmes does not object to the principle that
4  there would be a date by which the examination must occur, a date for the government's rebuttal
5  disclosures, and dates for potential briefing on related motions. Ms. Holmes submits that any
6  examination should not occur until after Ms. Holmes has made her expert disclosures to ensure any
7  examination is properly limited in scope to rebuttal. Ms. Holmes also requests that the schedule include
8  the following:

| Proposed Event | Proposed Deadline |
|---|---|
| Disclosure to Ms. Holmes of the anticipated tests, procedures, and topics to be used and addressed during the examination | 14 days prior to examination |
| Objections to proposed testing procedures and scope, if any | 10 days prior to examination |
| Responses to objections to proposed testing procedures and scope | 6 days prior to examination |

DATED: June 8, 2020

KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
JOHN D. CLINE
Attorneys for Elizabeth Holmes

OPPOSITION TO GOVERNMENT MOTION FOR EXAM PURSUANT TO 12.2(c)
CR-18-00258 EJD SKV

11