**SEALED BY ORDER OF COURT**

ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
VANESSA BAEHR-JONES (CABN 281715)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    Vanessa.Baehr-Jones@usdoj.gov

Attorneys for United States of America

FILED
JUN 15 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. 18-CR-00258 EJD<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR EXAMINATION OF DEFENDANT ELIZABETH HOLMES PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(c)**<br><br>Date: July 8, 2020<br>Time: 10 a.m.<br><br>**[FILED PROVISIONALLY UNDER SEAL PURSUANT TO COURT ORDER OF JANUARY 13, 2020]** |

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES  1
18-CR-00258 EJD

## INTRODUCTION

Fundamental fairness requires the government have the ability to examine Defendant Elizabeth Holmes and present its own expert testimony to rebut her asserted Rule 12.2(b) defense. The case law uniformly supports this. *See, e.g.*, *United States v. Fell*, No. 5:01-CR-12-01, 2017 WL 9938051, at *2 (D. Vt. Jun. 1, 2017) (permitting government exam because "[i]t would be unfair to permit one side and not the other to introduce expert testimony on this central issue"); *United States v. Williams*, 731 F. Supp. 2d 1012, 1016 (D. Haw. 2010) (explaining that the court permitted a government exam and noting that "Ninth Circuit case law . . . holds that a defendant who puts his or her mental state at issue may be compelled to submit to psychiatric examinations"). In fact, Holmes cites no case in her opposition in which a court has denied the government the ability to examine a defendant after she noticed a Rule 12.2(b) defense. (*See* Opp. to Mot. to Examine at 2–3.)

The Court should not limit the scope of the government's examination at this stage when Holmes has noticed a defense based on alleged traumas spanning 13 years in defense of a fraud alleged to have spanned at least six years. (*See* Holmes Rule 12.2(b) Not.) Holmes has not yet even articulated which resulting diagnoses, or combination of diagnoses—post-traumatic stress disorder (PTSD), anxiety, or depression—her expert will assert undermined her ability to form the requisite *mens rea*. (*See id.* at 2 ("The expert may also testify regarding present diagnoses of Post-Traumatic Stress Disorder, depression, and anxiety.").) The government must be permitted to conduct a sufficient examination of Holmes so that it can adequately rebut the defense based on this broad notice.

Nor should Holmes be provided with specific questions and tests in advance of the examination. The only cases Holmes has cited in support of this request presented markedly different circumstances that do not analogize well to this case: In *Nelson v. United States*, the defendant was being evaluated for Fetal Alcohol Spectrum Disorder as potential mitigation during the penalty phase in a death penalty case. *See* No. 04CV08005, 2006 WL 6610635 (W.D. Mo. Dec. 4, 2006) (affidavit of defense expert). In *United States v. Taylor*, 320 F. Supp. 2d 790, 794 (N.D. Ind. 2004), another death penalty case, the defendant noticed his intent to introduce substance abuse evidence, also as part of mitigation. Holmes— a highly intelligent and educated defendant—has claimed she could not form the intent to commit a complex wire fraud that spanned over half a decade. She is accused of lying to investors for years as

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES   2
18-CR-00258 EJD

part of this complex fraud. Providing her with the questions and tests in advance risks undermining the truth-seeking function of the exam.

Finally, the Court should allow the government's examiners to use the procedures and team approach outlined in their attached declarations. Both Dr. Martell and Dr. Binder routinely record their forensic examinations of criminal defendants, and the Court should permit them to do so here. The Court would also be best served by having a clear record of Holmes's answers. The government has also proposed an effective team approach for the exam based on the experts' professional expertise. Courts routinely permit the government to use multiple forensic examiners during forensic psychologic and psychiatric evaluations of defendants based on their areas of expertise. *See, e.g., Williams*, 731 F. Supp. 2d at 1017 (permitting multiple government experts to conduct exam); *Hess v. Macaskill*, 67 F.3d 307 (9th Cir. 1995) (unpublished) (affirming the same). Holmes makes no showing that these procedures implicate the Fifth or Sixth Amendments. The Court should grant the government's motion for an examination under Rule 12.2(c)(1).

## ARGUMENT

### I.     The Government Cannot Rebut Holmes's Rule 12.2 Defense Absent An Exam

It is absolutely critical that the government's rebuttal expert be permitted to question and evaluate Holmes under Rule 12.2(c). It would be fundamentally unfair for the jury to hear from Holmes's retained expert psychologist—who spent 14 hours interviewing Holmes in person—without the government's expert being able to present similarly informed testimony. "When a defendant raises a defense that relies on an expert examination of [her] mental condition, the Fifth Amendment does not protect [her] from being compelled to submit to a *similar examination* conducted on behalf of the prosecution or from the introduction of evidence from that examination for the purpose of *rebutting* the defense." *Williams*, 731 F. Supp. 2d at 1017 (emphasis in original). Absent a government exam, the government will have no ability to rebut the many assertions and claims set forth in Dr. Mechanic's declaration.

A Rule 12.2(c) exam is particularly critical here. This is not a case involving medical or psychiatric records which the government's experts could review and analyze for the jury in rebuttal. That is because Holmes has provided no psychiatric records to support her claim of a mental disease or

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES   3
18-CR-00258 EJD

1 | defect bearing on guilt. Nor is this a case where the government expert could thoroughly review a video
2 | recording of Holmes's exam by her expert. Holmes chose to neither video nor audio record the 14 hours
3 | of in-person evaluation conducted by her expert. Finally, this is not a case where the defense has
4 | produced other documentary evidence to the government which supports the proffered defense, and
5 | which the government's expert could use to complete a thorough review. [REDACTED]
6 | [REDACTED]
7 | [REDACTED]
8 | [REDACTED]
9 | In this context, it is critical that the government's rebuttal expert have an opportunity to question
10 | Holmes about her claims that she experienced IPV at the hands of Balwani, and review psychological
11 | testing that would provide insight into whether and how Holmes's experiences may have caused the
12 | psychological conditions asserted in the Rule 12.2(b) notice, namely, PTSD, anxiety, or depression.
13 | (*See* Holmes Rule 12.2 Not. at 2.) [REDACTED]
14 | [REDACTED]
15 | [REDACTED]
16 | [REDACTED] Fundamental fairness and the truth-seeking function of trial require the government expert
17 | have this opportunity. *Kansas v. Cheever*, 571 U.S. 87, 94–95 (2013); *Fell*, 2017 WL 9938051, at *2.
18 | Notably, Holmes cites no case in which the government was denied the opportunity to conduct
19 | its own exam to rebut a Rule 12.2(b) defense. (*See* Opp. to Mot. to Examine at 2–3.) To the contrary,
20 | the district courts in the cases Holmes cites all permitted the government to conduct its own exams.[1]
21 | *See, e.g., Williams*, 731 F. Supp. 2d 1012; *United States v. Wilson*, 493 F. Supp. 2d 348 (E.D.N.Y.
22 | 2006); *United States v. Taylor*, 320 F. Supp. 2d 790 (N.D. Ind. 2004). Indeed, the purpose of Rule
23 | 12.2(b) notice is to provide the government with sufficient information for it to obtain a similarly
24 |
25 |
26 | [1] Holmes quotes from *United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996), but the court's holding there that Rule 12.2(c) did not provide a basis for the district court to order an exam was superseded by the 2002 amendments to Rule 12.2. *See* Fed. R. Crim. P. 12.2 advisory committee's notes on 2002 amendments. Moreover, the court in *Davis* still held that the district court could order an exam under its own inherent authority. 93 F.3d at 1296 ("However, the district court has the inherent authority to order a reasonable, non-custodial examination of the defendant under the circumstances of this case.").

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES    4
18-CR-00258 EJD

qualified expert and conduct similar testing to what the defense expert has completed. *See United States v. Skates*, No. 15-CR-00285-LHK-2, 2018 WL 6002321, at *3 (N.D. Cal. Nov. 15, 2018) (requiring notice include "the kinds of mental health experts who will testify at trial and the nature of any examinations that such experts have conducted or will conduct" because "[m]eaningful disclosure under Rule 12.2 prevents undue delay by protecting the government's right to develop rebuttal evidence fairly and efficiently"); *see also United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) (finding the government had been prejudiced by lack of notice of the defendant's intent to present expert testimony because it "did not have sufficient time prior to trial to have the defendant examined by its own expert witnesses"). An examination is necessary here.

## II. The Government's Proposed Procedures Will Facilitate a Fair Exam

Holmes objects to various procedures proposed by the government, namely, video recording, the scope and process of the exam, and the use of a psychologist and psychiatrist team. The government's procedures, however, will help facilitate a fair and transparent examination and reflect the standard practices of the government's experts. The Court should permit the examination under the procedures set forth in the government's motion.

### A. Video Recording the Exam Will Protect the Examiners and Holmes, and Will Assist the Court in Evaluating the Admissibility of the Defense

Both Dr. Martell and Dr. Binder routinely record their forensic examinations of defendants. Dr. Martell videotapes examinations "whenever feasible" because this (1) "protects all parties, as it provides a transparent and accurate record of the examination proceedings"; (2) "facilitat[es] report preparation and allow[s] accurate direct quotations from the examination itself"; (3) "alleviates the demands on the examiner to attempt to take accurate notes that correctly preserve a record of the questions and answers" thereby allowing for "a more natural, time-efficient, and comfortable examination process"; and (4) "provides an opportunity for judicial review." (June 15, 2020, Decl. of Dr. Daniel A. Martell ("Martell Decl.") ¶¶ 8–10.) Dr. Binder explains in her declaration that her standard practice is to audio record all forensic interviews (1) to ensure she represents what the evaluee said "with 100% accuracy" when testifying under oath; (2) to clarify any discrepancy should the evaluee deny having said something; and (3) for her own protection in the unlikely case of a claim of misconduct. (Binder Decl. ¶ 4.)

Video recording the government's exam of Holmes will also aid the Court. It is likely that the Court will need to review video footage of the exam to make threshold admissibility determinations. For instance, if Holmes exhibits evidence of malingering behavior while being examined, *e.g.*, purposefully delaying her responses or frequently interrupting to consult with counsel, the Court would need to determine if this conduct warranted excluding the defense. *See, e.g., United States v. Telles*, No. CR 16-0424 JSW, Doc. No. 252 (N.D. Cal. Oct. 12, 2018) (excluding defense expert testimony after defendant malingered and failed to cooperate during the government expert's exam); *United States v. Cruz-Ramirez*, No. CR 08-0730 WHA, 2011 WL 2446278, at *1 (N.D. Cal. June 17, 2011) (same). Having an accurate record of the exam, with corresponding transcripts, would be crucial to the Court's determination. It would further aid the Court to be able to evaluate Holmes's observable demeanor through a video recording. A clear record would also be important to the appellate court on review.

But even beyond admissibility questions, a transcript of the exam would be important for the Court in addressing any defense objections to Dr. Binder's testimony during trial. As Dr. Binder notes, it is possible Holmes may claim she said something different to Dr. Binder than what Dr. Binder recorded in the report. (Binder Decl. ¶ 4.) Having a transcript will allow the Court to rule on such matters efficiently without having to make its own credibility determinations.

Finally, videotaping the exam also comports with the American Bar Association's Guidelines on Criminal Justice Mental Health Standards, "which provide in pertinent part that '[a]ll court-ordered evaluations of defendant initiated by the prosecution should be recorded on audiotape or, if possible, on videotape, and a copy of the recording should be provided promptly to the defense attorney.'" *See Fell*, 2015 WL 13781291, at *2. Holmes claims in her opposition that recording should only be done at the request of the defense, but it is for the Court to determine how best to protect the defendant's Fifth Amendment rights and create an accurate record. *See United States v. Johnson*, 362 F. Supp. 2d 1043, 1089 (N.D. Iowa 2005) (denying defendant's request to have counsel present at examination and instead ordering the government exam be audio recorded). And it is well within the Court's discretion to order that a mental health examination be videotaped. *United States v. Sampson*, 335 F. Supp. 2d 166, 247–48 (D. Mass. 2004); Fed. R. Crim. P. 12.2(c)(1)(B) (stating that the "court may . . . order the defendant to be examined under procedures ordered by the court"); Fed. R. Crim. P. 12.2(b) advisory committee note

("The [2002] amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition."). The Court will be in a much better position to decide admissibility issues—including any claims by defense that the government's expert testimony exceeds the scope of the rebuttal—if the Court has an accurate record of the government's exam. Holmes provides no evidence or reason that recording would have a negative impact on the interview.

Nor should Holmes be provided with the recording—or any government test results or examination reports—before the government. As the First Circuit explained in *Gruning v. DiPaolo*, 311 F.3d 69, 73 (1st Cir. 2002), permitting the government to hear the audio tape of the defendant's psychiatric exam was "far removed from Fifth Amendment compulsion," because "[t]he prosecution would have had possession of incriminating statements, but could not have used the statements in court unless the defense put the psychiatric evaluation into issue by having petitioner or his psychiatric expert testify." *Id.* In other words, there is no Fifth Amendment right for the defense to assert over the government's ability to access the results of its own examination of Holmes. Holmes can still challenge the admissibility of the government expert's rebuttal testimony before trial or choose not to testify.

**B.  Providing the Specific Testing and Topics in Advance Would Undermine the Truth-Seeking Function of the Exam and Interfere with the Experts' Clinical Judgment**

Defendant Holmes seeks to limit and preview the government expert's exam, but the scope of the government's rebuttal is directly tied to the scope of Holmes's defense. The government expert cannot adequately rebut Dr. Mechanic's assertions without being able to evaluate Holmes's claims regarding her experience of IPV ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*See* Binder Decl. ¶¶ 7–8) Here, Holmes has asserted a defense relying on factual claims that span 13 years, beginning in 2003 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (*See* Holmes Rule 12.2 Not. at 1.) It would be impossible for the government's rebuttal expert to evaluate the asserted long-term psychological effects of these claimed traumatic events without conducting thorough psychological testing and evaluation that covers the same time period and addresses all of the potential resulting diagnoses noticed by the defense. *See Williams*, 731 F. Supp. 2d at 1017. The examination must allow the government rebuttal expert to evaluate how these alleged

experiences and psychological effects related to the commission of the multi-year fraud.

Because Holmes claims that IPV triggered psychological reactions that impaired her cognitive function, it is equally crucial that Dr. Binder be able to evaluate what may have mitigated or exacerbated these effects. As Dr. Binder explains:

> In order to give opinions, within reasonable medical certainty, about these issues, it is important that I obtain information about pre-existing conditions and concurrent stressors which could mitigate or exacerbate the effect of trauma and interpersonal violence. An understanding of other possible stressors impacting an individual during a period of emotional distress, or the role that past emotional distress may have played in the individual's reaction to more recent events, is important in determining the nature, cause, and extent of psychological distress that could have affected her state of mind at the time of her actions.

(Binder Decl. ¶ 7.) Dr. Binder will therefore need to consider Holmes's "personal history, work history, educational history, substance abuse history, medical and psychiatric history, a history of relationships and traumas and a legal history," in order to understand Holmes's response to the alleged IPV events. (*Id.* ¶ 8.) Defendant Holmes noticed an incredibly broad Rule 12.2(b) defense, and has refused to provide any further expert disclosures to the government which would narrow the defense. Accordingly, the government expert must be able to ask questions that will permit her to provide her own informed professional opinion in rebuttal.

Holmes relies on *Williams*, 731 F. Supp. 2d 1012, to argue that the Court should preemptively limit the scope of the government exam. (Opp. to Mot. to Examine at 3–4.) But the court in *Williams* was addressing a different question: whether test results and expert testimony already obtained during the government exam could properly be admitted in rebuttal. *Id.* at 1016 n.6 (noting the government examinations had already occurred). Here, it is impossible for the Court to answer that question at this stage. All the Court has to consider are the two paragraphs in Holmes's Rule 12.2(b) Notice, which generally assert that Holmes experienced intimate partner abuse during her relationship with Balwani, is ▇▇▇▇ and may have "present diagnoses of Post-Traumatic Stress Disorder, depression, and anxiety." (Holmes Rule 12.2(b) Not. at 1–2.) It will not be clear which tests and questions may be relevant to rebut this defense at trial until the Court has received expert disclosures from both the defendant's Rule 12.2(b) expert and the government's rebuttal expert. Any limits on the scope of the government's rebuttal can be addressed then.

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES   8
18-CR-00258 EJD

Holmes also asks for a preview of the questions and tests. This would be neither appropriate given the wide-sweeping notice she has provided, nor advisable. Defendant Holmes is an incredibly high-functioning and intelligent defendant. The evidence will show that she lied to sophisticated investors for years, deceiving them into investing millions of dollars in her fraudulent scheme. Providing this defendant with the specific tests and questions of the examination beforehand would significantly undermine the examiners' ability to obtain truthful and accurate responses. This is not a case like *Nelson*, 2006 WL 6610635, or *Taylor*, 320 F. Supp. 2d 790, where the defendants sought to introduce evidence of Fetal Alcohol Syndrome and substance abuse, respectively, as mitigation during the penalty phases of their death penalty trials. Here, Holmes has claimed that she could not form the requisite *mens rea* to commit wire fraud over the course of many years, during which time she was the CEO of a multi-million dollar company. The government has repeatedly expressed its concern that Holmes's defense is part of a joint defense strategy to obtain severance, and emphasized that the evidence here does <u>not</u> provide any support to her claimed defense. Given the context of her Rule 12.2(b) notice, the government has significant concerns that Holmes may attempt to deceive or malinger in the course of the examination.

Moreover, it is crucial that Dr. Martell and Dr. Binder be able to use their expertise to administer tests and ask questions which are appropriate based on their clinical observations. As Dr. Martell explains in his declaration:

> With regard to the precise tests to be administered, this is an issue that would be determined based on clinical indications at the time of the examination itself. A brief history will be taken together with a mental status examination, and the exact tests to be administered will then be determined based upon those findings and my understanding of her history and clinical presentation.[2]

(Martell Decl. ¶ 5.) Providing Holmes with a preview of the tests and topics is not warranted here, and in fact, would interfere with the truth-seeking function of the exam. At the very least, if the Court is inclined to order the government to disclose a list of potential tests in advance, defense counsel should be directed not to discuss with Holmes the names or nature of the tests disclosed. *See United States v. Northington*, No. CRIM.A. 07-550-05, 2012 WL 4024944, at *2 (E.D. Pa. Sept. 12, 2012) (ordering

---

[2] Should the Court have any concerns with the potential scope of testing, the government can provide the Court with a list of potential tests and topic areas *in camera* prior to the exam.

GOV. REPLY - MOT. TO EXAMINE DEF. HOLMES   9
18-CR-00258 EJD

government to provide list of tests, but requiring defense counsel not disclose the tests to defendant). Additionally, the Court should not order advanced disclosure of any tests for malingering. *See id.* ("[D]defense counsel have failed to offer any reason why advance notice of the names of malingering tests is necessary to protect Defendant's rights.").

### C. Courts Regularly Allow the Government To Select An Appropriate Team of Experts to Administer Psychological and Psychiatric Exams

The government has also proposed an effective team approach for the exam based on each experts' respective backgrounds and professional expertise. As Dr. Martell explains, he is a trained psychologist who is experienced in administering psychological testing. (Martell Decl. ¶ 1.) His psychological testing will serve like the "bloodwork as part of a medical work-up," which will "help to inform Dr. Binder's opinions in this matter." (*Id.* ¶ 4.) His testing would not be "duplicative, but rather complementary." (*Id.*) Dr. Binder's declaration similarly asserts: "A psychiatric examination is complementary to the psychological exam, it is not a repeat of the psychological exam." (Binder Decl. ¶ 6.) "Independent psychiatric and psychological examinations increase the quality of the scientific evidence provided to the trier of fact and have been routinely employed for decades in forensic psychiatric examinations." (*Id.*)

The case law also supports such a team approach. Courts routinely permit the government to use multiple forensic examiners during forensic psychologic and psychiatric evaluations of defendants based on their areas of expertise. *See, e.g., Fell*, 372 F. Supp. 2d at 761–62 (two government experts permitted); *Williams*, 731 F. Supp. 2d at 1017 (permitting multiple government experts to conduct exam); *Hess*, 67 F.3d 307 (affirming the same). In *Hess*, the Ninth Circuit explained "[t]he State was permitted to have Hess examined by experts of its choosing[.]" *Id.* Holmes has failed to articulate how it would prejudice her for the government to use one expert who is experienced in administering psychological tests to conduct the testing, while a second expert, who is a trained psychiatrist, conducts the psychiatric evaluation. These two portions of the exam would not be duplicative. As explained by both Dr. Martell and Dr. Binder, the testing would serve to inform Dr. Binder's preparation and administration of the psychiatric evaluation. (Martell Decl. ¶ 4; Binder Decl. ¶¶ 5–6.)

//

### D. The Government Does Not Oppose Counsel for Holmes Being Nearby

Finally, the government does not oppose counsel for Holmes being present in a nearby room or available by phone during the examination. However, frequent interruptions to consult with counsel might significantly interfere with the experts' ability to conduct a fulsome exam. Additionally, if Holmes chooses to avoid, or not participate fully, in a Court-ordered examination, this would be grounds for excluding the Rule 12.2(b) defense.

### III. The Court Should Compel Discovery of All Relevant Mental Health Records

In noticing her Rule 12.2(b) defense, Holmes has put at issue her experience of alleged traumas, and her resulting psychological reactions, beginning in 2003 and continuing until 2016. She has also asserted that her expert may testify about "present diagnoses." (Holmes Rule 12.2(b) Not. at 2.) Because Holmes has placed these facts at issue, she cannot now claim her mental health records are protected by the privilege. *See, e.g., Oliphant v. Dep't of Transp.*, 171 F. App'x 885, 888 (2d Cir. 2006); *Doe v. Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Schoffstall v. Henderson*, 223 F.3d 818, 822 (8th Cir. 2000); *Woodall v. Pitchard*, No. 08–CV–6228 (JWF), 2012 WL 1113605, at *2 (W.D.N.Y. Mar. 30, 2012); *Sunegova v. Vill. of Rye Brook*, No. 09–CV–4956 (KMK), 2011 WL 660424, at *10 (S.D.N.Y. Dec. 22, 2011); *Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 195 (D. Conn. 2009). "The privilege is deemed waived in such circumstances because of the unfairness that would result 'from a party's advancing a claim to a court . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim.'" *United States v. Wilson*, No. 04-CR-1016 NGG, 2012 WL 3890951, at *5 (E.D.N.Y. Sept. 7, 2012) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 303 (2d Cir. 2003); *see also Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010) ("[W]aiver is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information related to those issues." (internal quotation marks omitted)).

Holmes asserts in a footnote in her opposition that she was not treated by a psychotherapist during the time period of her relationship with Balwani or during the time period of the alleged conspiracies. (Opp. to Mot. to Examine at 10 n.5.) But this does not answer the question of whether she

has in her possession any other mental health records from this period. Moreover, since her notice places her current diagnoses at issue, the Court should compel production of any current records as well.

## CONCLUSION

For the foregoing reasons, the government requests the Court grant the government's motion to examine Holmes pursuant to Rule 12.2(c)(1).

DATED: June 15, 2020

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

*/s/ Vanessa Baehr-Jones*

VANESSA BAEHR-JONES
JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
Assistant United States Attorneys