CR-18-258-EJD  Case 5:18-cr-00258-EJD  Document 982  Filed 08/28/21  Page 1 of 5

SEALED BY ORDER OF COURT

FILED
JUN 15 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# DECLARATION OF DANIEL A. MARTELL, PH.D.

I, Daniel A. Martell, Ph.D., declare under penalty of perjury as follows:

1. My qualifications for offering opinions regarding Ms. Holmes' mental state include the following:

   a. I received a Bachelor's Degree in psychology with honors from Washington and Jefferson College (1980), a Master's Degree in psychology from the University of Virginia (1985), and a Ph.D. in clinical psychology from the University of Virginia (1989). I completed my clinical psychology internship specializing in forensic psychology at New York University Medical Center, Bellevue Hospital, and Kirby Forensic Psychiatric Center in New York City (1986-1987) and was awarded a Post-Doctoral Fellowship in Forensic Psychology, also at New York University Medical Center, Bellevue Hospital, and Kirby Forensic Psychiatric Center during which I specialized in forensic neuropsychology (1987-1988).

   b. I am Board Certified in Forensic Psychology by the American Board of Forensic Psychology of the American Board of Professional Psychology, Diplomate Number 5620. I am a Fellow of the American Academy of Forensic Psychology, a Fellow and Past President of the American Academy of Forensic Sciences, a Fellow of the National Academy of Neuropsychology, and an overseas Fellow of the Royal Society of Medicine in London. I am licensed as a clinical psychologist by the State of California, License Number PSY15694. I am also licensed as a clinical psychologist by the State of New York, License Number 011106.

   c. I am currently an Assistant Clinical Professor of Psychiatry and Biobehavioral Sciences at the Semel Institute for Neuroscience and Human Behavior and the Resnick Neuropsychiatric Hospital of the David Geffen School of Medicine at UCLA. From 1992 to 1996 I was a Clinical Assistant Professor in the Department of Psychiatry at New York University School of Medicine. I was a forensic research scientist at the Nathan Kline

Institute for Psychiatric Research, and the founding director of the Forensic Neuropsychology Laboratory at Kirby Forensic Psychiatric Center in New York City from 1988 to 1994.

  d. I have authored over 100 publications and presentations at professional meetings, with a research emphasis on forensic issues involving forensic psychological and neuropsychological assessment, mental disorder, brain damage, and violent criminal behavior.

  e. I have been admitted to testify as an expert witness in approximately three hundred cases, including testimony in both criminal and civil matters in federal courts throughout the U.S. and the trial courts of over 25 states. I have consulted and testified for both prosecutors and defense attorneys in criminal cases, as well as plaintiffs' and defense attorneys in civil matters.

  f. I am the president of Forensic Neuroscience Consultants, Inc., (a professional psychological corporation founded in 1998), and I have been a member of Park Dietz & Associates, Inc. (a forensic litigation consulting firm and a California corporation) and the Threat Assessment Group, Inc. (a workplace violence prevention consulting firm and a Virginia corporation) since 1994. Over the course of the 26 years that I have been associated with Park Dietz & Associates, Inc., I have had the opportunity to provide psychological and neuropsychological consultation to a wide variety of clients and fellow forensic experts working on hundreds of criminal and civil cases throughout the country and internationally.

  g. I have extensive experience administering and interpreting all manner of psychological and neuropsychological tests in the context of forensic examinations such as the one proposed here.

2.   I have been retained as a consulting expert by the United States Attorney's Office in the matter of the UNITED STATES OF AMERICA, Plaintiff, v. ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, Defendants.

3.   I have been asked to respond to concerns raised by Ms. Holmes' counsel in their OPPOSITION TO GOVERNMENT'S MOTION FOR AN EXAMINATION OF DEFENDANT ELIZABETH HOLMES PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(c), regarding the proposed psychiatric evaluation requested by the government.

4.   One primary area of concern raised by counsel for Ms. Holmes goes to the nature, scope, and content of the examination itself. First, there is the question of why two exams are necessary (i.e., one by me and one by Dr. Binder). It should be made clear that these examinations are not duplicative, but rather complementary. I view my role in this case as being one of consultation to Dr. Binder, with a focus on conducting psycho-diagnostic testing to help clarify whether Ms. Holmes ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Mindy Mechanic. Much as a physician might order bloodwork as part of a medical work-up, my consultative role in this case is to conduct objective psychological testing that will help to inform Dr. Binder's opinions in this matter.

5.   With regard to the precise tests to be administered, this is an issue that would be determined based on clinical indications at the time of the examination itself. A brief history will be taken together with a mental status examination, and the exact tests to be administered will then be determined based upon those findings and my understanding of her history and clinical presentation.

6. The testing itself will consist primarily of paper-and-pencil tests that Ms. Holmes will fill out herself. I will only rely on nationally-normed, demographically-appropriate objective tests that can compare Ms. Holmes' pattern of answers to those of known clinical groups, to aid in differential diagnosis.

7. Although the government has requested a seven-hour day to complete this testing, I would not anticipate that it would take that long. However, it is important to allow adequate time to get the testing done as efficiently as possible. My goal during this examination would be to minimize the demands placed on Ms. Holmes and complete the testing as quickly and expeditiously as possible.

8. Another primary concern raised by counsel for Ms. Holmes in their motion has to do with the request to videotape the examination. In my view, videotaping offers multiple advantages in the context of a forensic examination. First, it preserves a record of the questions asked and the answers given. This protects all parties, as it provides a transparent and accurate record of the examination proceedings. Second, the content of the examination can subsequently be transcribed, which affords a more efficient review of the examination content, as well as facilitating report preparation and allowing accurate direct quotations from the examination itself. In addition, having the examination videotaped alleviates the demands on the examiner to attempt to take accurate notes that correctly preserve a record of the questions and answers. This allows for a more natural, time-efficient, and comfortable examination process that is easier for all parties.

9.  Finally, a video recording of the examination provides an opportunity for judicial review, and if necessary, redactions to preserve the defendant's rights prior to release of the examination recording to all parties. The resulting video recordings can also be made subject to protective orders that would limit their dissemination and define the scope of their use in the present case. Such orders can serve to protect the interests of the defendant, and prevent proprietary test methodology from falling into the public domain.

10. For these reasons, it is my professional practice to videotape examinations whenever feasible.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration, consisting of 10 paragraphs, is true and correct.

Dated: _____June 15, 2020_____

_[signature]_

DANIEL A. MARTELL, PH.D, A.B.P.P.