JEFFREY B. COOPERSMITH (SBN 252819)
AMY WALSH (Admitted *Pro Hac Vice*)
GUY SINGER (Admitted *Pro Hac Vice*)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    (415) 773-5700
Facsimile:     (415) 773-5759

Email: jcoopersmith@orrick.com; awalsh@orrick.com; gsinger@orrick.com; scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

**DENIED**
*Judge Edward J. Davila*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD-SVK |
| Plaintiff, | **DEFENDANT RAMESH "SUNNY" BALWANI'S ADMINISTRATIVE MOTION FOR ACCESS TO TRIAL OF CO-DEFENDANT ELIZABETH HOLMES** |
| v. | |
| HOLMES, et al., | |
| Defendants. | Hon. Edward J. Davila |

## I. INTRODUCTION

Mr. Balwani hereby moves this Court to reserve two seats for members of his defense team at Ms. Holmes' trial in order to maintain a level playing field between the defense and prosecution leading up to Mr. Balwani's trial. Most, if not all, of the witnesses expected to testify at Ms. Holmes' trial will likely also testify at Mr. Balwani's trial. Observing their testimony live is critical to preparing for Mr. Balwani's trial. The Government is guaranteed the opportunity to observe firsthand the testimony of witnesses whose testimony is crucial to both cases. Given the large crowds expected to attend Ms. Holmes' trial and the limited seating, Mr. Balwani respectfully requests that this Court reserve two seats for members of his defense team so that they may maintain access to information and evidence from the trial of Ms. Holmes on an equal footing with the Government leading up to Mr. Balwani's own trial to follow.

Undersigned counsel conferred by email with counsel for the Government on August 22, 2021, copying Ms. Holmes' counsel as well. Government counsel advised that the Government will oppose this motion. Declaration of Jeffrey B. Coopersmith ("Coopersmith Decl."), ¶ 2.

## II. RELEVANT FACTS

Ms. Holmes' jury trial is scheduled to begin with jury selection on August 31, 2021. This upcoming trial has generated immense attention in the press and amongst the public.[1] Considering there is a forthcoming podcast that purports to take listeners "inside the courtroom," *id.*, there is good reason to expect a significant number of people from both the press and the public interested in personally attending the trial. Indeed, if the growing presence in recent Zoom and telephonic hearings is any indication, even administrative matters relating to the trial are likely to draw crowds.

"Due to the level of interest in this case," this Court issued a notice addressing "press and public access to [the] jury trial proceedings."[2] The notice indicates that the courtroom will be

---

[1] *See, e.g.*, Peter White, *'The Dropout': ABC News Podcast Returns As Elizabeth Holmes Goes On Trial*, DEADLINE (Aug. 5, 2021), https://deadline.com/2021/08/the-dropout-abc-news-podcast-returns-elizabeth-holmes-trial-1234809349/.

[2] Notice re: Press and Public Access to Jury Trial Proceedings, *United States v. Elizabeth A. Holmes, et al.*, 18-CR-00258-EJD, https://cand.uscourts.gov/judges/davila-edward-j-ejd/usa-v-holmes/ (last visited August 23, 2021).

open to the public on a "first-come, first-served" basis and that an "overflow room with live audio or video" will be available for individuals who cannot obtain seats in the courtroom itself. *Id.* At the hearing in Ms. Holmes' case on August 16, 2021, the Court reiterated that it would set up an "overflow room" at the courthouse because of the expected crowds of interested members of the press and public. The Court's website notice also states that "[t]he courtroom gallery will have some seating designated for members of the press." *Id.*

Mr. Balwani's defense team has always intended to have members present at Ms. Holmes' trial to observe firsthand the presentation of evidence. On August 13, 2021, after reading the Court's notice regarding courtroom access, one of Mr. Balwani's attorneys, Stephen A. Cazares, emailed the Courtroom Deputy, Ms. Adriana Kratzmann, to ask if the Court could reserve a seat for Mr. Balwani's defense team given "the likely large public and media interest" and the attorneys' "unique interest in the trial proceedings as counsel to a party and co-defendant (Mr. Balwani) whose case and defense will be directly impacted by the proceedings." Mr. Cazares explained that Mr. Balwani's defense team needed to "to observe witnesses first-hand as the government will of course have the same opportunity as a party to the trial."

At the August 16, 2021 hearing in Ms. Holmes' case, Ms. Holmes and the Government made requests for reserved seats. Counsel for Mr. Balwani was in the gallery but obviously had no opportunity to speak during the hearing. The Court agreed to reserve several seats for Ms. Holmes' friends and family, additional seats for Government agents, and to designate a number of seats for members of the press.[3] By our count, this would still leave approximately 30 to 35 seats for other attendees, not counting the overflow room and barring any further social distancing restrictions due to COVID-19. *Id.* This may turn out to allow adequate access by Mr. Balwani's counsel, but as explained below, we cannot be certain so reserving seats is crucial.[4]

---

[3] *See also* Yasmin Khorram & Scott Cohn, *Elizabeth Holmes' lawyers request potential jurors be quizzed about her celebrity*, CNBC (Aug. 16, 2021), https://www.cnbc.com/2021/08/16/elizabeth-holmes-theranos-trial-lawyers-request-jurors-be-quizzed-on-her-celebrity.html.

[4] Mr. Balwani's attorneys are prepared to arrive early to secure seats at Ms. Holmes' trial on a "first-come, first-served" basis. Nonetheless, the unpredictable size of the crowds and the possibility of being excluded from the courtroom compel Mr. Balwani to file this formal request so that even on the busiest days his counsel will have access.

On August 20, 2021, one of Mr. Balwani's attorneys—who was in the courtroom to observe a motion hearing in Ms. Holmes' case—spoke with Ms. Kratzmann informally and learned that the Court may not intend to provide for any reserved seats at Ms. Holmes' trial for Mr. Balwani's counsel. Accordingly, Mr. Balwani is filing this motion to ensure there is clarity on this issue as well as a record of his request and its disposition.

## III. ARGUMENT

### A. Fundamental Fairness Requires that Mr. Balwani's Defense Team Have Access to Ms. Holmes' Trial on a Level Playing Field with the Prosecution

Guaranteeing access for Mr. Balwani's attorneys to observe Ms. Holmes' trial ensures that the Government will not have greater access to relevant evidence and thus an unfair advantage in preparing for Mr. Balwani's trial. As the Supreme Court has recognized, "increasing the evidence available to both parties[] enhances the fairness of the adversary system," especially in criminal cases where the prosecution has inherent advantages in information gathering. *Wardius v. Oregon*, 412 U.S. 470, 474 (1973); *see also id.* (due process "speak[s] to the balance of forces between the accused and his accuser"). When it comes to accessing evidence, there must "be a two-way street." *Id.* at 475. "Indeed, the State's inherent information-gathering advantages suggest that if there is to be any imbalance in [accessing evidence], it should work in the defendant's favor." *Id.* at n. 9. Here, the Government is guaranteed the opportunity to observe firsthand the live testimony of witnesses who are likely to testify at both Ms. Holmes' and Mr. Balwani's trials. Mr. Balwani requests that his defense team be afforded that same opportunity.[5]

### B. Firsthand Observation of Co-Defendant Elizabeth Holmes' Trial is Critical

Mr. Balwani's defense team cannot replicate the firsthand observation of live testimony guaranteed to members of the Government by listening to a live audio or limited video feed, or by

---

[5] Moreover, Mr. Balwani should have *at least* as much access to Ms. Holmes' trial as the press. Mr. Balwani does not dispute that the press should have full access to the live testimony during the course of Ms. Holmes' trial (and his trial, for that matter). As a co-defendant in the same case who is facing his own trial after that of Ms. Holmes, Mr. Balwani has a substantial interest in observing the live testimony on an equal footing with the Government. Whereas Mr. Balwani's request to access the trial of his co-defendant is animated by due process considerations, *see Wardius*, 412 U.S. at 473-74, the press has "no right to information about a trial superior to that of the general public," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978).

1  reviewing written transcripts.  "There can be no doubt that seeing a witness testify live assists …
2  in evaluating the witness's credibility."  *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995).
3  An untruthful witness might provide inconsistent testimony and plainly reveal their dishonesty,
4  but indicia of credibility are often subtler:  A witness might fidget uncomfortably while on the
5  stand, avoid eye contact with the defendant or the questioner, or deliver their testimony in an
6  otherwise unconvincing manner.  Only those individuals present in the courtroom "can be aware
7  of [these] variations in demeanor and tone of voice that bear so heavily on the listener's
8  understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S.
9  564, 575 (1985); *see also Mejia*, 69 F.3d at 315 ("Live testimony enables [one] to see the
10 witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of
11 the witness's voice.").

For this reason, it is important that Mr. Balwani's defense team observe firsthand the witnesses at Ms. Holmes' trial, most of whom are also likely to testify at Mr. Balwani's trial. Alternatives, such as listening to an audio or limited video feed or reviewing transcripts, do not provide the same information and will not allow Mr. Balwani's attorneys to effectively observe the Government's case as the Government will be able to do.  Given the intense media and public interest in Ms. Holmes' trial and the large crowds expected to attend, Mr. Balwani seeks to ensure that his defense team can observe these nonverbal indicia of credibility "that bear so heavily on" the case. *Anderson*, 470 U.S. at 575.

### IV.  CONCLUSION

For the foregoing reasons, Mr. Balwani requests that this Court reserve two seats for members of his defense team at Ms. Holmes' jury trial.

Dated: August 23, 2021


DENIED
Judge Edward J. Davila

Respectfully submitted,
ORRICK HERRINGTON & SUTCLIFFE LLP

By:  */s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith
Attorney for Defendant
RAMESH BALWANI