STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Fax: (408) 535-5066
   Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' MEMORANDUM OF LAW REGARDING POTENTIAL EXHIBITS FOR ERIKA CHEUNG |
| v. | |
| ELIZABETH HOLMES, | Date: September 15, 2021 |
| Defendant. | Time: 8:30 a.m. |
| | Court: Hon. Edward J. Davila |

Despite receiving notice on September 7, 2021, of the exhibits the government intended to use with witness Erika Cheung in its case-in-chief, defense counsel waited almost a week to inform the government it would not stipulate to any of the proposed exhibits for Ms. Cheung and then handed the Court a five-page brief detailing its reasoning after Ms. Cheung took the stand.[1] Volkar Decl., Exh. 1. The government has expressed its concerns with the disruption to the trial caused by this approach.[2] The government is aware of the Federal Rules of Evidence, as well as the Court's prior orders (*e.g.*, ECF No. 798 ("MIL Order")), and has selected appropriate exhibits and witnesses to satisfy its burden of proof in its case-in-chief. While Defendant's main objection to these potential exhibits is that they constitute hearsay,[3] the documents are admissible as business records, co-conspirator statements, admissions, or for a non-hearsay purpose. Furthermore, while Defendant asserts that every document, viewed alone, must be directly connected to her on its face in order to be admissible, that is not what the Rules require. The direct versus circumstantial connection of the evidence to Defendant goes, at most, to the weight of the evidence, not the admissibility of any individual document. Additionally, because Erika Cheung (and other lab associates) reported to Defendant and Defendant's co-conspirator, Ramesh "Sunny" Balwani through other high-ranking Theranos officials in the company—including Theranos's laboratory director—the government can show a sufficient agency-like link to satisfy the Court's MIL Order (at 94–97), rendering statements by those employees adopted admissions by Theranos employees, particularly given that testimony at trial will show that Defendant was an incredibly hands-on, detail-driven CEO at Theranos.

*First*, the majority of the documents the government seeks to admit as exhibits during Erika Cheung's testimony are business records under Federal Rule of Evidence 803(6). Ms. Cheung testified

---

[1] All exhibits referenced herein are attached to the accompanying Declaration of Kelly I. Volkar in support of the Government's Brief Regarding Potential Exhibits for Erika Cheung ("Volkar Decl.").

[2] Defendant's approach is also inconsistent with the Court's comments regarding the typical trial process—during which the Court noted that objections tend to occur in the presence of the jury (09/08/2021 Hearing Transcript ("9/8 Tr.") at 497:24–498:7). Rather than adhere to that guidance, Defendant seeks to exclude virtually all exhibits the government has proposed to use with Erika Cheung outside the presence of the jury.

[3] To the extent Defendant intends to re-assert any additional evidentiary challenges that she raised in her 1000 Motion, the government reasserts its counterpoints in its Opposition. *See* ECF No. 1004 at 4–7.

U.S.' BRIEF RE ERIKA CHEUNG EXHIBITS,
CASE NO. 18-CR-258 EJD                                          1

that email was regularly used by employees to conduct work at Theranos, it was her regular practice to send emails at or near the time of the events described, that she had knowledge of the underlying events, that it was important for her and other employees to accurately convey information because other individuals in the company would rely on that information, that the information was memorialized in email in part so that employees could refer back to the information later, and that Theranos would create specific email groups to respond to challenges, including the "Normandy 911" email group to respond to issues in the Normandy lab[4] at Theranos.  09/14/2021 Hearing Transcript ("9/14 Tr.") at 836:5–839:13.  The government submits that a similar foundation will be laid for the remaining exhibits it seeks to introduce during Ms. Cheung's testimony and thus they will be admissible in their entirety as business records of Theranos.  *See* Fed. R. Evid. 803(6).

The Ninth Circuit recently endorsed admitting emails as business records where they meet the factors of Rule 803(6), as the documents at issue here do.  *See United States v. Lischewski*, --- F. App'x ---, No. 20-10211, 2021 WL 2826474, at *3 (9th Cir. July 7, 2021) ("The district court did not abuse its discretion in admitting [appellant's] email as a business record under Federal Rule of Evidence 803(6)."). Email has become the standard form of business communication in the modern age.  Emails may qualify as business records under Rule 803(6) when (1) they are kept in the course of a regularly conducted business activity and made as a regular practice, (2) they are written at or near the time of the event, and (3) the opponent fails to show they are untrustworthy.  Fed. R. Evid. 803(6); *see* Wright & Miller, 30B Fed. Prac. & Proc. § 6864 (2021 ed.) ("An email can qualify for admission under Rule 803(6) . . . [and the requisite] showing will often be possible.").

Although the Ninth Circuit expressed skepticism a quarter century ago about whether emails sent in the course of performing business duties were categorically a business activity, it did not hold that an email could *never* be a business record.  *See Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (finding that the emails in question containing "highly derogatory and offensive description" of an employee were properly excluded under Rule 403 and were less of a business activity than a monthly inventory printout).  Since *Monotype*, district courts across the Ninth Circuit have

---

[4] The part of the lab where Theranos kept its proprietary devices, such as the Edison, was called "Normandy."

recognized the change in business practice in recent decades, including the common and frequent use of emails in the daily course of business, and have held that emails are admissible under Rule 803(6) so long as the parties lay a proper foundation.  *See*, *e.g.*, *Ionian Corp. v. Country Mut. Ins. Co.*, 836 F. Supp. 2d 1173, 1193 (D. Or. 2011) (admitting an email as a business record); *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-CV-5129, 2011 WL 4079223, at *7 (N.D. Cal. Sept. 12, 2011) (admitting emails as business records).  Thus, the mere fact that the business record is in the form of an email is no categorical bar to admissibility.

Contrary to Defendant's assertion in the five-page brief handed to the Court earlier today, the documents the government seeks to admit do not contain "[c]asual communication between employees" of Theranos.  Memo. at 2.  Rather, these were emails generated pursuant to a company practice of sharing relevant information of the inner workings of Theranos's lab to ensure the systematic creation of reliable records upon which the company's executives—including Defendant—could act if necessary.  Indeed, Ms. Cheung testified that the "Normandy 911" email group was created by the company for the purpose of "troubleshoot[ing] any problems that [ ] arose while we were working" and the exhibit already admitted shows both Defendant and co-Defendant Balwani being looped into the issue for potential solutions.  9/14 Tr. at 838:17–24, 845:23–850:10.  Other examples include Exhibit 1227, which consists of emails between Theranos employees regarding a pending demo test for a VIP.  Emails like that exhibit were the mechanism by which those employees coordinated and executed demos—a regularly conducted activity at Theranos.  Similarly, Exhibits like 1323, 1524, and 1528 all contain contemporaneous reports from Theranos employees regarding issues they were directly observing in Theranos's clinical lab.  Those employees were under a duty to report and memorialize those issues, and the evidence shows that email was the medium through which that occurred in the usual course of business.  Similarly, Exhibit 1633 contains an email transmitting quality control data from the month of March 2014 to Theranos's lab director.  Both the QC testing itself and the lab director's review of that data were essential components of the company's operation, and the fact that these functions took place over email does not prevent the resulting communications from qualifying as business records.

These examples demonstrate that the exhibits the government seeks to admit are not casual communications among employees as Defendant asserts, but rather work-related emails about important

topics where the incentive for accuracy and completeness is essential so that senior management may rely upon the statements in making business decisions for Theranos. Thus, the government submits they are admissible under the business records hearsay exception under Rule 803(6).

*Second*, to the extent the Court does not find the exhibits are wholly admissible under the business records exception to hearsay, there are also several non-hearsay purposes for multiple exhibits, including as opposing party statements under Rule 801(d)(2). The Court addressed and declined to adopt a categorical rule regarding attributing Theranos employee statements to Defendant during the motions *in limine*. *See* MIL Order 94–97; *id.* at 95 (citing Ninth Circuit case law that "support[s] the Government's position" that Theranos employees' statements may be attributable to Defendant but declining to issue a categorical ruling). But the Court indicated it was likely to permit such statements by Theranos employees as non-hearsay under Rule 801(d)(2)(D) where the scope of the relationship and subject matter are sufficiently tied to Defendant Holmes. The government submits that the proposed exhibits will easily meet the Court's set standard.

A large portion of the proposed exhibits are exchanges with Dr. Adam Rosendorff, Theranos's then-Lab Director, who will testify that they regularly communicated with and provided information to Defendant. Indeed, Dr. Rosendorff is expected to testify that he raised many of the issues reflected in the proposed exhibits to both Balwani *and* Holmes directly. In addition, a couple of documents involve Dr. Daniel Young, Theranos's sole Vice President and third-in-charge at Theranos. Statements by Balwani, Dr. Rosendorff, Dr. Young, or Daniel Edlin—all of whom directly reported to Defendant—are admissible as statements of an agent, and Erika Cheung was frequently sending business information to them, thereby supporting the inference that the information was also communicated to Defendant. The mere fact that Defendant is not herself directly on an email from Ms. Cheung is an issue that goes to weight, not admissibility.

Finally, certain of the exhibits the government will seek to admit included communications from or to Defendant's co-conspirator and romantic partner, Sunny Balwani. These emails certainly qualify under Rule 801(d)(2)(D) and some may qualify as co-conspirator's statements under Rule 801(d)(2)(E). *See*, *e.g.*, Exhibit 1589. Even under the Defendant's view of the case, she asserts she relied on Balwani when it came to the Normandy lab (9/8 Tr. at 599:2–600:17), but she never asserted that he misled her

as to how poorly it was performing.  Rather, the evidence will show that Balwani and Holmes were in regular contact about lab operations and other issues at Theranos, with Balwani telling Holmes on at least one occasion that the "Normandy lab is a [ ] disaster zone."  Volkar Decl., Exh. 2.

Ultimately, Defendant seeks to hide from the jury the fact that multiple scientists and every lab director with access to relevant data who worked at Theranos during the relevant time period had serious concerns with the accuracy and reliability of Theranos's technology.  Defendant's claim that she was unaware of these issues in real-time, or overly relied on co-Defendant Balwani's descriptions of the lab, is meritless.  Indeed, the government intends to present evidence that the issues with the lab were repeatedly raised to Defendant and co-Defendant, but those employees' concerns were dismissed or contradicted without supporting evidence.  These emails serve as circumstantial evidence that Defendant Holmes knew of the issues in the lab given their pervasiveness along with the direct evidence of statements made to her.

***Third***, some of the exhibits the government intends to admit during Ms. Cheung's testimony serve non-hearsay purposes such as showing the effect on Ms. Cheung that caused her to ultimately raise concerns to upper management at Theranos and later blow the whistle to federal regulators.  *See* Exhibit 1660 (showing Defendant's direct knowledge of issues in the lab); *Lischewski*, --- F. App'x ---, 2021 WL 2826474, at *3 (finding emails admissible to show "state of mind of the persons on the email").  Ms. Cheung's realization that Holmes and Balwani were not responsive to reports of the issues with Theranos's blood testing device that could have an effect on people's health is part of what compelled her to report the issues to CMS rather than continuing to use channels within the company to voice her concerns, and these documents are pertinent to the non-hearsay purpose of showing her state of mind and explaining her subsequent steps.  Some are also not hearsay because they involve commands and direction about how to proceed.

In sum, the Court should reject Defendant's hearsay challenges and admit the government's proposed exhibits.  To the extent the documents are not explicitly mentioned in this short brief, the government submits they fall along the same lines and that defense counsel has not presented a reason why they cannot follow the typical trial process outlined by the Court and raise their objections in the presence of the jury.

| | | |
|---|---|---|
| 1 | DATED: September 14, 2021 | Respectfully submitted, |
| 2 | | STEPHANIE M. HINDS |
| 3 | | Acting United States Attorney |
| 4 | | */s/ Kelly I. Volkar* |
| 5 | | JEFFREY B. SCHENK<br>JOHN C. BOSTIC |
| 6 | | ROBERT S. LEACH<br>KELLY I. VOLKAR |
| 7 | | Assistant United States Attorneys |