JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

Attorney for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**DEFENDANT ELIZABETH HOLMES'**<br>**MOTION TO COMPEL COMPLIANCE WITH**<br>**SUBPOENA DUCES TECUM TO ROGER**<br>**PARLOFF**<br><br>Date:     October 6, 2021<br>Time:    11:00 a.m.<br>CTRM:  5, 4th Floor<br><br>Hon. Nathanael Cousins |

**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM
TO ROGER PARLOFF**

PLEASE TAKE NOTICE that on October 6, 2021, at 11:00 a.m., or on such other date and time as the Court may order, in Courtroom 5 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Nathanael Cousins, Defendant Elizabeth Holmes will and hereby does respectfully move the Court to compel compliance with the subpoena duces tecum issued to Roger Parloff under Fed. R. Crim. P. 17(c) and the Fifth and Sixth Amendments to the United States Constitution.  For the convenience of counsel to Mr. Parloff, Ms. Holmes respectfully asks that the hearing occur via Zoom. The Motion is based on the below Memorandum of Points and Authorities, the Declaration of John D.

1   Cline and Exhibits thereto, the record in this case, and any other matters that the Court deems appropriate.

2

3   DATED: September 17, 2021

4

5                                                    /s/ John D. Cline
                                                     JOHN D. CLINE
6                                                    Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

1

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

BACKGROUND .........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.      THE PARLOFF SUBPOENA SATISFIES RULE 17(c). ..............................................2

        A.      The Responsive Documents Are Relevant. ........................................................3

        B.      The Responsive Documents Are Admissible. ....................................................6

        C.      The Responsive Documents Are Specifically Identified. ...................................6

II.     NO REPORTER'S PRIVILEGE EXEMPTS PARLOFF FROM COMPLYING
WITH THE  SUBPOENA. ...........................................................................................................7

        A.      State Privilege Law Has No Application in a Federal Criminal Case. ...............7

        B.      Neither the First Amendment Nor Federal Common Law Provides a Privilege
                That Exempts Parloff from Ms. Holmes' Subpoena.........................................8

III.    PARLOFF'S OTHER OBJECTIONS. ..........................................................................10

CONCLUSION...........................................................................................................................10

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ........................................................8

*Crane v. Kentucky*, 476 U.S. 683 (1986) ........................................................2

*In re Grand Jury Proceedings*, 5 F.3d 397 (9th Cir. 1993) ........................................8

*In re Grand Jury Proceedings*, 867 F.2d 562 (9th Cir. 1989) ........................................7

*In re Grand Jury Subpoena*, 947 F. Supp. 1314 (E.D. Ark. 1996) ................................7

*In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111 (N.D. Cal. 2006) ...........................8

*Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975) ...........................................7, 8

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) ..............................................9

*United States v. Carriles*, 263 F.R.D. 400 (W.D. Tex. 2009) .....................................6

*United States v. Caruso*, 948 F. Supp. 382 (D.N.J. 1996) ........................................6

*United States v. Gas Pipe, Inc.*, 2018 U.S. Dist. LEXIS 182523 (N.D. Tex. June 18, 2018) .........6

*United States v. Gillock*, 445 U.S. 360 (1980) ..................................................7

*United States v. Glassdoor, Inc.*, 875 F.3d 1179 (9th Cir. 2017) ..................................8

*United States v. Jennings*, 1999 U.S. Dist. LEXIS 9534 (N.D. Ill. June 16, 1999) ........................7

*United States v. Libby*, 432 F. Supp. 2d 26 (D.D.C. 2006) ........................................8

*United States v. Nixon*, 418 U.S. 683 (1974) ..............................................2, 6, 7

*United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324 (N.D. Cal. Nov. 18, 2003) .............7, 8

*United States v. Sleugh*, 896 F.3d 1007 (9th Cir. 2018) ........................................2

*United States v. Smith*, 135 F.3d 963 (5th Cir. 1998) ..........................................8, 9

## RULES

Fed. R. Crim. P. 17(c) ..................................................................... *passim*

Fed. R. Evid. 401 ........................................................................3

Fed. R. Evid. 501 ........................................................................7

Fed. R. Evid. 801(c) ........................................................................6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    The defense has issued a subpoena duces tecum to Roger Parloff, a likely government witness.

3  Declaration of John D. Cline ("Cline Dec."), Exhibit A.  Parloff has objected to the subpoena.  Cline Dec.,

4  Exhibit B.  He asserts that the subpoena does not comply with Federal Rule of Criminal Procedure 17(c),

5  and he claims a purported reporter's privilege.  Parloff is wrong on both points.  The subpoena easily

6  passes muster under Rule 17(c), and no reporter's privilege exists in federal criminal cases absent a

7  showing of bad faith or harassment.  Parloff has made no such showing here.  The Court should direct

8  Parloff to comply with the subpoena.

9

## BACKGROUND

10    Roger Parloff is a journalist.  In June 2014, he published an article in Fortune magazine about Ms.

11  Holmes and Theranos.  The article painted a generally favorable picture of the company.  It quoted Ms.

12  Holmes and numerous other people.  That article appears on the government's exhibit list as Exhibit 1749.

13  The magazine's cover is Exhibit 1750.  Cline Dec., Exhibits C, D.

14    Beginning in October 2015, the Wall Street Journal published a series of articles critical of

15  Theranos.  In January 2016, Parloff published another article in Fortune titled "How Theranos Misled

16  Me." That article appears on the government's exhibit list as Exhibit 3033.  Cline Dec., Exhibit E.  Among

17  other assertions in the article, Parloff states:  "As much as I'd like to say that Holmes lied to me, I don't

18  think she did.  I do believe I was misled--intentionally--but I was also culpable, in that I failed to probe

19  certain exasperatingly opaque answers that I repeatedly received." *Id*. at MEDIA-001045.

20    On April 12, 2018, Parloff met voluntarily with AUSA Bostic, an SEC attorney, and at least one

21  FBI agent.  He provided extensive information about the process of writing the June 2014 and January

22  2016 articles, including his conversations and other communications with Ms. Holmes and others.

23  According to the FBI's memorandum of the interview, Parloff apparently has come to believe, based on

24  something he recalled in February 2018, that Ms. Holmes not only misled him, but actually lied to him

25  during his preparation of the June 2014 article.  The FBI memorandum does not reflect that Parloff asserted

26  the reporter's privilege at any point during his meeting with the government.

27    In response to a grand jury subpoena, Parloff produced to the government the recordings and notes

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

1

1    of his interviews with Ms. Holmes and Mr. Balwani (which the government then provided to the defense
2    in discovery).  He apparently did not provide any other notes or recordings associated with his preparation
3    of the two articles.  As far as the defense is aware, Parloff did not assert any reporter's privilege in response
4    to the grand jury subpoena.

5        The government has listed Parloff as a potential prosecution witness.  Dkt. 999 at 5.  The
6    government referred to Parloff and his June 2014 article in its opening statement.  9/8/21 Hr'g Tr. at 546.
7    It asserted that "[s]ome of the misrepresentations [allegedly made by Ms. Holmes] were also made to a
8    news reporter named Roger Parloff of 'Fortune' magazine who wrote an article titled 'This CEO Is Out
9    for Blood.'  This was published in June of 2014 before a number of the investments that you will hear
10   about. . . .  The defendant used the Parloff article to obtain further investments, and her deceit of reporters
11   was an important way that she executed her fraud."  *Id*.

12       On August 24, 2021, counsel for Ms. Holmes sent a trial subpoena duces tecum to Parloff by email.
13   Cline Dec., Exhibit A.  Following discussions between counsel, Ms. Holmes and Parloff agreed that in
14   lieu of a motion to quash, Parloff would serve objections on defense counsel; that Ms. Holmes would then
15   file a motion to compel, which Parloff would have two weeks to oppose; and that, with the Court's
16   permission, the hearing on the motion would occur by Zoom to spare Parloff the expense of his counsel's
17   travel from New York to San Jose.  In accordance with that agreement, Parloff served his objections on
18   September 15.  Cline Dec., Exhibit B.

19                                   **ARGUMENT**

20       We first demonstrate that the subpoena duces tecum complies with Federal Rule of Criminal
21   Procedure 17(c).  We then turn to Parloff's assertion of a purported reporter's privilege.  Finally, we
22   respond to Parloff's other, more perfunctory objections to the subpoena.

23   I.     THE PARLOFF SUBPOENA SATISFIES RULE 17(c).

24       The Fifth and Sixth Amendments guarantee Ms. Holmes' right to compel the production of
25   evidence for her defense.  *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Rule 17(c) implements
26   that constitutional mandate.  *See United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018).  In *United*
27   *States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court recognized three requirements for a Rule 17(c)

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

trial subpoena duces tecum: "relevancy," "admissibility," and "specificity." *Id*. at 700; *see, e.g., Sleugh*, 896 F.3d at 1012.  The Parloff subpoena satisfies each of those requirements.

### A.    The Responsive Documents Are Relevant.

The documents the subpoena requests are relevant under Federal Rule of Evidence 401 (1) to challenge the government's contention that Ms. Holmes misled or lied to Parloff; (2) to demonstrate that Ms. Holmes and Theranos encouraged Parloff to speak with scientists, business executives, and others with knowledge of Theranos and its technology; and (3) to show Parloff's bias--in particular, to show that once the Wall Street Journal began publishing articles critical of Theranos in October 2015, Parloff sought to avoid professional embarrassment by shifting the focus from his own reporting to Ms. Holmes' alleged effort to mislead him.

Categories 1 through 6 in the subpoena attachment request notes and recordings for interviews Parloff conducted, by telephone and in person, in advance of the June 2014 article.  We expect these notes and recordings to show that, with the encouragement of Ms. Holmes and Theranos, Parloff obtained substantial information about Theranos and its technology from persons other than Ms. Holmes and that the information he obtained was consistent with the information Ms. Holmes provided before the article was published.

**David Boies (Category 1).**  Attorney David Boies represented Theranos and Ms. Holmes in an intellectual property case in this District from fall 2011 until March 2014.  Soon after the case concluded, Parloff contacted Boies with the idea of writing an article about it.  According to the memorandum of Parloff's interview with the government, Boies urged him to write instead about Ms. Holmes.  The June 2014 article refers to Boies and paraphrases information he provided about Ms. Holmes and Theranos. Cline Dec., Exhibit C, at MEDIA-000017-18.  The information Boies provided Parloff in their meeting on March 31, 2014 is relevant for the reasons outlined above, particularly because by that point Boies had detailed knowledge of Theranos' technology.

**Greg Wasson (Category 2).**  Wasson was CEO of Walgreens at the time of Parloff's reporting for the June 2014 article.  Parloff cited his interview with Wasson in discussing Walgreen's plan to expand its partnership with Theranos.  Cline Dec., Exhibit C, at MEDIA-000015.  The government alleges that

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

1   Ms. Holmes misled investors concerning whether and to what extent the Theranos-Walgreens partnership
2   was expected to continue expanding, or whether, as the government alleges, it had "stalled."  Wasson's
3   statements to Parloff will show that Ms. Holmes did not mislead Parloff about the Walgreens partnership
4   or, as the government alleges, use Parloff's article to mislead potential investors.

5      **Dr. David Helfet (Category 3).**  Parloff interviewed Dr. David Helfet for the June 2014 article.
6   At the time of Parloff's interview, Dr. Helfet was chief of orthopedic trauma at the Hospital for Special
7   Surgery in Manhattan.  Dr. Helfet had reviewed data on Theranos' small-sample tests.  Parloff's article
8   quotes Dr. Helfet as stating, "It's real data. . . .  It's not their interpretation."  Cline Dec., Exhibit C, at
9   MEDIA-000016.  The government alleges that Ms. Holmes deceived Parloff (and investors who read his
10  reporting) on this topic.  The notes and recording of Parloff's interview with Dr. Helfet will show that his
11  statements about Theranos' technology were consistent with Ms. Holmes' statements.  The evidence will
12  tend to refute the government's contention that Ms. Holmes misled Parloff (and, through him, investors)
13  about Theranos' technology.

14     **Mark Laret (Category 4).**  In 2014, Laret was President and CEO of UCSF.  Theranos had been
15  in discussions with UCSF about potential partnership opportunities.  Parloff interviewed Laret and quoted
16  him in the June 2014 article.  Cline Dec., Exhibit C, at MEDIA-000015-16.  Laret's statements to Parloff
17  will tend to show that Ms. Holmes did not mislead Parloff about Theranos' potential partnerships with
18  UCSF and other hospitals.

19     **William Perry (Category 5).**  Former Secretary of Defense William Perry was a member of
20  Theranos' board of directors in 2014.  According to the FBI memorandum of Parloff's meeting with the
21  government, he interviewed Perry for the June 2014 article.  Parloff told the government that the subject
22  of MedEvac helicopters came up in the interview, which Parloff recorded.  Perry's statements to Parloff
23  will tend to rebut any suggestion that Ms. Holmes misled Parloff about the use of Theranos technology
24  by the Department of Defense.

25     **Bert Zimmerli (Category 6).**  In 2014, Zimmerli was the CFO of Intermountain
26  Health.  Intermountain was a Theranos investor (through PEER ventures), with the investment closing in
27  2013.  After the investment, Zimmerli met with Theranos to discuss a strategic partnership between the

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

entities.  The June 2014 article notes that Intermountain was "working closely with Theranos with the aim of deploying its lab services."  Cline Dec., Exhibit C, at MEDIA-000015.  Parloff's communications with Zimmerli will show that Parloff had a source other than Ms. Holmes for his reporting on the Intermountain relationship, that the information from that source was consistent with the information Ms. Holmes provided, and that Ms. Holmes did not mislead Parloff on that point.

The remaining categories are relevant for the reasons that follow:

**Heather King (Category 7).**  Heather King spoke with Parloff on May 5, 2015.  At that time, she was a former partner at Boies' firm and had just become in-house general counsel at Theranos.  Parloff contacted King about a negative story that had been published concerning Theranos, and King responded.  The information provided reflects another source for Parloff's reporting and shows Theranos' efforts to address his questions as he raised them.

**David Boies (Category 8).**  On October 13, 2015, Boies became a member of the Theranos board of directors, as well as its outside legal counsel.  On October 15, 2015, the Wall Street Journal published the first of a series of critical articles about Theranos and Ms. Holmes.  On October 30, 2015, Parloff spoke with Boies.  The content of the conversation is relevant to show Boies' role in directing the response to the Wall Street Journal's criticisms and to impeach Parloff by exposing his desire to avoid professional embarrassment by shifting responsibility to Ms. Holmes.

**Other laboratories (Categories 9 and 10).**  Throughout 2014 and 2015, Parloff had regular communications with Theranos' competitors, whom he described to Theranos as "incumbents" in the clinical laboratory industry.  That industry was then, and remains today, dominated by two incumbents— Quest Diagnostics and Laboratory Corporation of America.  The June 2014 article attributes a quote skeptical of Theranos to a consultant affiliated with Quest.  Cline Dec., Exhibit C, at MEDIA-000016.  In their discussions with Parloff, agents of these "incumbents" leveled constant criticisms at Theranos.  These communications are relevant to show that Parloff was alerted to every point on which he alleges Ms. Holmes misled him.

**Dawn Schneider (Category 11).**  Dawn Schneider was a Boies Schiller employee in spring 2014, when Parloff was preparing his June 2014 article on Ms. Holmes and Theranos.  Boies Schiller, through

1    Schneider and others, provided media advice to Ms. Holmes and Theranos, including with respect to the

2    Parloff interactions.  Schneider coordinated Theranos' interactions with Parloff in advance of the June

3    2014 article, and she continued to discuss Theranos with Parloff after the article was published.  In 2015,

4    Theranos hired Schneider directly to consult on media relations.  Parloff's communications with

5    Schneider will show that he had full access to Theranos, the opportunity to ask any question he wanted on

6    issues he did not fully understand, and a channel through which to express the concerns that he claimed

7    to harbor in his January 2016 article.  In addition, Parloff's communications with Schneider following

8    publication of the critical Wall Street Journal articles beginning in October 2015 will demonstrate his

9    desire to avoid professional embarrassment by attributing any errors in his reporting to Ms. Holmes, rather

10   than to his own journalistic failings.

11        **David Boies (Category 12).**  As discussed above, Boies played two important roles at Theranos

12   (legal counsel and board member), introduced Parloff to Theranos and Ms. Holmes in 2014, and

13   maintained a close relationship with Parloff.  His discussions with Parloff about Theranos throughout the

14   2014 through 2016 period are relevant for the reasons identified above.

15        **B.    The Responsive Documents Are Admissible.**

16        Parloff asserts that the requested documents are "patent hearsay" and therefore inadmissible.  Cline

17   Dec., Exhibit B, at 4.  That is incorrect.  The documents Ms. Holmes seeks are non-hearsay, because she

18   will not offer the statements they contain for their truth.  Fed. R. Evid. 801(c).  Instead, as discussed above,

19   those statements will be offered (1) to challenge the government's contention that Ms. Holmes misled or

20   lied to Parloff; (2) to demonstrate that Ms. Holmes and Theranos encouraged Parloff to speak with

21   scientists, business executives, and others with knowledge of Theranos and its technology; and (3) to show

22   Parloff's bias.

23        **C.    The Responsive Documents Are Specifically Identified.**

24        Ms. Holmes' subpoena specifically identifies the documents to be produced.  Categories 1 through

25   8 request notes and recordings for specific meetings and phone calls on specific dates with specific people.

26   Categories 9 through 12 cover a broader range of material but are defined with as much specificity as

27   possible.  Courts have repeatedly found similar document descriptions to satisfy *Nixon*.  *See, e.g., United*

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

*States v. Gas Pipe, Inc.*, 2018 U.S. Dist. LEXIS 182523, at \*8-\*17 (N.D. Tex. June 18, 2018) (Rule 17(c) subpoena for "[a]ny documents" in several categories sufficiently specific); *United States v. Carriles*, 263 F.R.D. 400, 405 (W.D. Tex. 2009) (Rule 17(c) subpoena sufficiently specific where it "specifies a limited set of original recordings, known to exist, of a specific content, involving known participants during a delineated time frame."); *United States v. Caruso*, 948 F. Supp. 382, 396, 398-99 (D.N.J. 1996) (enforcing Rule 17(c) subpoena for "[a]ll documents" in several categories).

For these reasons, the subpoena duces tecum to Parloff satisfies Rule 17(c) as interpreted in *Nixon*.

II.   **NO REPORTER'S PRIVILEGE EXEMPTS PARLOFF FROM COMPLYING WITH THE SUBPOENA.**

Parloff asserts a purported reporter's privilege under New York, California, and federal law. Cline Dec., Exhibit B at 3-4. No such privilege exempts him from complying with Ms. Holmes' subpoena.

   A.   **State Privilege Law Has No Application in a Federal Criminal Case.**

State privilege law has no application in this federal criminal case. Under Fed. R. Evid. 501, there are four potential grounds for a privilege in a federal criminal case: federal common law, the United States Constitution, a federal statute, or rules prescribed by the United States Supreme Court. State privilege law applies only "in a civil case" where "state law supplies the rule of decision." Fed. R. Evid. 501; *see, e.g.*, *United States v. Gillock*, 445 U.S. 360, 368 (1980) ("[T]he House Conference Committee Report on the Federal Rules of Evidence leaves little doubt that Rule 501 requires the application of federal privilege law in criminal cases brought in federal court."); *In re Grand Jury Proceedings*, 867 F.2d 562, 564 (9th Cir. 1989) ("[F]ederal privilege law, not state law, must be applied in criminal cases brought in federal court.").

Parloff's reliance on New York and California reporter shield laws is thus misplaced. *See, e.g.*, *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975) (rejecting argument that California reporter's privilege applied to federal grand jury subpoena); *United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324, at \*5-\*6 (N.D. Cal. Nov. 18, 2003) (Illston, J.) ("A state law privilege granting the media absolute protection from compelled testimony cannot be used in federal court on a federal charge. *See* Federal Rule of Evidence 501."); *United States v. Jennings*, 1999 U.S. Dist. LEXIS 9534, at \*3-\*4 (N.D. Ill. June 16, 1999) (Illinois reporter's privilege "provides no guidance" in deciding reporter's motion to quash

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

subpoena in federal criminal case); *In re Grand Jury Subpoena*, 947 F. Supp. 1314, 1321 (E.D. Ark. 1996) (reporter's privilege under Arkansas Constitution not applicable to federal grand jury subpoena).

**B.     Neither the First Amendment Nor Federal Common Law Provides a Privilege That Exempts Parloff from Ms. Holmes' Subpoena.**

The Ninth Circuit and this Court have rejected a reporter's privilege under the First Amendment or federal common law in federal criminal cases absent bad faith or harassment. *See, e.g.*, *United States v. Glassdoor, Inc.*, 875 F.3d 1179, 1189-92 (9th Cir. 2017) (no reporter's privilege or other First Amendment-based privilege in grand jury context absent bad faith); *In re Grand Jury Proceedings*, 5 F.3d 397, 400-03 (9th Cir. 1993) (discussing reporter's privilege in rejecting claim of scholar's privilege; court finds no basis for not "insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial"); *Lewis*, 517 F.2d at 237-38 (rejecting First Amendment and federal common law claims of reporter's privilege absent bad faith or harassment); *In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1115-19 (N.D. Cal. 2006) (White, J.) (no First Amendment or federal common law reporter's privilege in grand jury context); *Schneider*, 2003 U.S. Dist. LEXIS 27324, at *4 (rejecting First Amendment reporter's privilege in criminal case absent bad faith or harassment); *see also, e.g.*, *United States v. Smith*, 135 F.3d 963, 968-73 (5th Cir. 1998) (no reporter's privilege for non-confidential information in federal criminal case absent bad faith or harassment); *United States v. Libby*, 432 F. Supp. 2d 26, 43-50 (D.D.C. 2006) (rejecting assertion of reporter's privilege in response to defense Rule 17(c) trial subpoenas).

The *Schneider* privilege claim--like Parloff's claim--arose in the context of a Rule 17(c) trial subpoena duces tecum.  The indictment in *Schneider* charged an elaborate tax evasion scheme.  The government issued a trial subpoena duces tecum to ABC for materials relating to a "20/20" segment involving the defendant's activities.  The subpoena sought recordings of statements made to undercover ABC employees by the defendant or his co-conspirators; marketing material obtained by undercover ABC employees at a conference the defendant hosted; and names and contact information for all ABC employees who attended the conference.  *See Schneider*, 2003 U.S. Dist. LEXIS 27324, at *3.  ABC moved to quash the subpoena, asserting (among other grounds) a reporter's privilege rooted in the First Amendment.

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

8

1      The Court denied ABC's motion.  Relying on *Branzburg v. Hayes*, 408 U.S. 665 (1972), Judge

2  Illston concluded that "[t]he First Amendment does not shield a reporter or news organization from

3  responding to a subpoena in a criminal case; a quash order is inappropriate unless the reporter can show

4  that the investigation is conducted in bad faith." *Id*. at *4; *see id*. at *10 ("The shield [for reporters] in a

5  criminal setting is exceptionally thin.  To deploy it, the reporter must demonstrate that the criminal

6  investigation is proceeding in bad faith, or that the government has otherwise exhibited 'harassment of

7  newsmen.'") (quoting *Branzburg*, 408 U.S. at 709 (Powell, J., concurring)).  Parloff has made no such

8  showing here, and his claim of privilege must therefore be rejected.

9      Parloff's privilege claim is especially weak under these circumstances.  First, as discussed in more

10  detail above, the subpoena does not call for the disclosure of any confidential sources.  *See, e.g.*, *McKevitt*

11  *v. Pallasch*, 339 F.3d 530, 534 (7th Cir. 2003) ("When the information in the reporter's possession does

12  not come from a confidential source, it is difficult to see what possible bearing the First Amendment could

13  have on the question of compelled disclosure."); *Smith*, 135 F.3d at 972 (noting potential concern with

14  compelling reporters to "unnecessarily reveal[] the identities of confidential sources").  Several of the

15  persons whose communications with Parloff the subpoena seeks were quoted or cited in the June 2014

16  article.  Others worked for Theranos or were referred to Parloff by Theranos.  This is not a circumstance

17  where a reporter is being compelled to reveal the identity of a source to whom he has promised

18  confidentiality.

19      In addition, Parloff has voluntarily given at least one interview to the government about the articles

20  in question, including his communications with Ms. Holmes, without--as far as we are aware--asserting

21  any reporter's privilege.  He produced recordings and notes of his interviews with Ms. Holmes and Mr.

22  Balwani in response to a grand jury subpoena, again (as far as we know) without asserting any privilege.

23  He apparently will testify for the government about his communications with Ms. Holmes without

24  asserting any privilege.  Having elected not to raise--and thus to waive--the purported reporter's privilege

25  to cooperate with the prosecution, Parloff should not be permitted to assert it now to deny Ms. Holmes

26  evidence she needs in her defense.

27

28

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

III.     PARLOFF'S OTHER OBJECTIONS.

Parloff asserts a litany of other objections that appear to be cut and pasted from a civil discovery response.  Cline Dec., Exhibit B, at 5-7.  Most are addressed in the preceding discussion.  We briefly touch on four points.

First, Parloff's claims of undue burden ring hollow, given his ready cooperation with the government.  Nonetheless, Ms. Holmes' counsel has worked, and will continue to work, with Parloff's counsel to minimize the burden to the extent possible (for example, by agreeing to proceed with the hearing on this motion via Zoom if the Court will permit that procedure).

Second, there is no requirement, under the First Amendment or federal common law as interpreted by the Supreme Court, the Ninth Circuit, or this Court, that a party in a federal criminal case "exhaust other avenues of discovery" before seeking documents from a journalist; that requirement exists, if at all, in civil cases.  In any event, Parloff's notes and recordings of the interviews and other communications are not available from any other source of which we are aware.

Third, Ms. Holmes' subpoena does not request that Parloff identify "each communication with sources and editors, etc. . . . along with its date and subject matter."  Cline Dec., Exhibit B, at 6.  His objection on that point is puzzling.

Finally, Ms. Holmes' subpoena does not call for any documents "that might be covered by the attorney-client or other applicable privilege," Cline Dec., Exhibit B, at 7, unless Parloff is claiming an attorney-client privilege for his communications with Boies.  If he makes such a claim, we will address it in Ms. Holmes' reply memorandum.

### CONCLUSION

For the foregoing reasons, Ms. Holmes respectfully requests that the Court order Parloff to produce the documents and recordings set forth in the attachment to the subpoena.

DATED: September 17, 2021                              /s/ John D. Cline_____
                                                      JOHN D. CLINE
                                                      Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2021, I filed this motion and the accompanying declaration and exhibits via ECF, which will serve all parties.  In addition, I emailed a copy of this motion, along with its supporting declaration and exhibits, to David Korzenick, attorney for Roger Parloff.

/s/ John D. Cline
JOHN D. CLINE
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO COMPEL
CR-18-00258 EJD