
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| UNITED STATES OF AMERICA, | ) | Case No.: 5:18-cr-00258 EJD (NC) |
|---|---|---|
| Plaintiffs, | ) ) | **DECLARATION OF ROGER PARLOFF** |
| v. | ) ) | **IN OPPOSITION TO MOTION TO COMPEL AND IN SUPPORT OF MOTION TO QUASH SUBPOENA** |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | ) ) | **AND** |
| Defendants. | ) ) ) ) | **IN SUPPORT OF EXPECTED MOTION *IN LIMINE* FOR PROTECTIVE ORDER ON THE SAME GROUNDS** |

**ROGER PARLOFF** declares pursuant to 28 U.S.C. 1746:

1. I am a journalist and was employed by *Fortune* as its main legal correspondent from 2004 to 2016. My last title there was Editor at Large. Prior to that I had been on staff at the *American Lawyer* for 12 years. I have received numerous awards for journalism. Since leaving *Fortune*, I have been published in *ProPublica*, *The New York Times*, *Yahoo Finance*, and in the online editions of *The New Yorker* and *New York* magazine, among others. I have a law degree from Yale Law School and practiced law briefly before turning to journalism.

2. In 2014 I interviewed Elizabeth Holmes and Ramesh Balwani about their company, Theranos. On the basis of those interviews, I wrote a feature article about Holmes and Theranos. The article appeared in *Fortune* magazine as the cover story of its June 2014

issue. It was entitled, "*This CEO Is Out for Blood*." It was highly favorable to the new enterprise and its principals, Holmes in particular. According to the Indictment in this case and in the related SEC Complaint, Theranos gave the *Fortune* cover article to investors who relied on it to their detriment.

3. While the cover story was based on the extensive interviews with Holmes, I conducted other interviews with other sources, including a number suggested by Ms. Holmes and arranged with her assistance. Beyond Ms. Holmes, there was no other public relations intermediary for the cover story. Balwani was interviewed once. A true copy of the Fortune 2014 cover story is included at Exhibits C and D to the Declaration of Holmes' counsel (Dkt. 1028-1).

4. On December 17, 2015, I published, on *Fortune*'s website, an article, "*How Theranos Misled Me.*" This article discussed new revelations about Theranos' business and Theranos' public responses to them and to questions that I had put to them. Seeing that my readers would have been misled by the prior article, I acted on what I saw as a duty to correct the prior reporting. A copy of the December 16, 2015 article appears as Exhibit E to Dkt. 1028-1.

5. Like most journalists and their publications, I take the Reporter's Privilege seriously. Journalists resist efforts to subpoena their reporting materials or to disclose sources and unpublished materials obtained in the course of their newsgathering. Journalists will in most cases resist efforts to force disclosure of both confidential materials and non-confidential materials. Yielding to subpoenas and allowing disclosure can compromise, burden, impair and even cripple the newsgathering process.

6. While this privilege is usually quite strictly and firmly asserted by journalists and news organizations, there are on rare occasions circumstances in which a journalist may find it

ethically appropriate and compelling to disclose *some* of their source materials to litigants. For example, a journalist might countenance a limited disclosure if he or she finds that a source has clearly been dishonest in their statements to them; that the journalist wrote and published an article that relied on those statements; and that readers relied on that article to their detriment.

7. That is what happened here.  In early April 2018, I received a call from the U.S. Attorney's Office in San Francisco.  They asked if I would speak with them.  I learned that the SEC had initiated an action against Theranos' principals.  According to the Complaint, the Defendants had given my *Fortune* cover article to investors.  The Government's interest in the article was therefore specifically focused on what Holmes and Balwani had told me in my interviews with them.

8. What I provided was discrete, limited and properly complete so that there could be no unfairness as to the context of the disclosed interviews.  The full interview notes and recordings with Holmes and Balwani were provided.  And they were provided not just to one side, but to all parties.  My counsel made sure that both sides received the full set of materials disclosed.  There could be no waiver thereby.  I met with the prosecutors in New York on April 12, 2018.  I did not and would not give them my entire file.  They did not ask for any such thing.  I did not provide the prosecutor, AUSA John Bostic, with any notes or recordings of any of my interviews with any other sources.  And the AUSA scrupulously did not press me for any disclosure that I said I was in any way uncomfortable disclosing.

9. Without waiving the privilege asserted here, it may be helpful to the Court to note that of the 12 categories of materials demanded in the Subpoena: Three (3) of them do not exist; Five (5) of them are confidential and entirely on background; Several include confidential

- 3 -

*Declaration of Roger Parloff*         5:18-cr-00258-EJD

comments on background; and the Three (3) that seek "communications" relate, with minor exceptions, to *Fortune* emails which I no longer have access to and which appear to no longer exist.

10. As to Heather King, she did not join Theranos until on or about May 2015, eleven months after my June 2014 cover story. Dawn Schneider did not begin consulting for Theranos until sometime after the cover story was published, and she stopped consulting for it in or around May 2015. And none of the named individuals inquired about had any medical, blood testing or engineering expertise that would have enabled them to opine on the merits or demerits of Theranos' technology. Only one was a doctor and he, I understand, was an orthopedist.

11. Most of any "communications" with sources from 2014-2016 would have been via my emails at *Fortune*. With few exceptions, I did not (nor did *Fortune*, as I understand it) retain copies of them. It is my understanding the none of the *Fortune* emails from 2014-2016 were still retained on the *Fortune* system as of 2018. I have not had access to the system since I left *Fortune* in 2016. To the extent that some may exist, they appear likely to have been obtained by the prosecutor via subpoenas to Holmes and Theranos.

I respectfully request that the Court deny Defendant's Motion to Compel in all respects and grant my expected motion *in limine* for a protective order barring my being required to testify as to my interviews of sources other than Holmes and Balwani or as to my newsgathering beyond what Holmes and Balwani told me or what documents that they or Theranos provided to me.

I affirm the truth of the foregoing under penalty of perjury.

_Roger Parloff_
Roger Parloff

Dated: October 4, 2021
Washington D.C.