1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney

2

   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JEFFREY B. SCHENK (CABN 234355)
   JOHN C. BOSTIC (CABN 264367)
5  ROBERT S. LEACH (CABN 196191)
   KELLY I. VOLKAR (CABN 301377)
6  Assistant United States Attorneys

7        150 Almaden Boulevard, Suite 900
         San Jose, California 95113
8        Telephone: (408) 535-5061
         Fax: (408) 535-5066
9        Kelly.Volkar@usdoj.gov

10 Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14 UNITED STATES OF AMERICA,              )  Case No. 18-CR-00258 EJD NMC
                                          )
15         Plaintiff,                      )  UNITED STATES' NON-OPPOSITION TO
                                          )  MOTION TO INTERVENE FOR LIMITED
16    v.                                   )  PURPOSE OF EXEMPTING JOHN CARREYROU
                                          )  FROM ECF NO. 824 ORDER
17 ELIZABETH HOLMES,                       )
                                          )  Date:  N/A
18         Defendant.                      )  Time:  N/A
                                          )  Court:  Hon. Nathanael M. Cousins
19 _____ )

20

21

22

23

24

25

26

27

28

The government does not oppose John Carreyrou's Motion to Intervene for a Limited Purpose of Moving to Exempt him from the Court's ECF No. 824 Order. *See* ECF No. 1056 (Motion to Intervene for Limited Purpose of Moving to Exempt John Carreyrou from Witness Exclusion and Gag Order [Dkt. 824] ("Mot.")). The government makes the following observations in case they are helpful to the Court:

On October 13, 2020, Defendant Elizabeth Holmes served her initial witness list in response to the government's initial witness list served on June 26, 2020. ECF No. 815 at 4. As relevant here, Defendant's initial witness list included Defendant's mother, Noel Holmes, and one of the government's case agents, FBI Special Agent Mario Scussel. Volkar Decl., Exh. 1.[1] Defendant's initial witness list did not include John Carreyrou. *Id.* Three days later, on October 16, 2020, Defendant served her Federal Rule of Criminal Procedure 16(b) expert disclosure, and a report from Dr. Mindy Mechanic—which discussed interviews with Defendant's parents—in connection with Defendant's noticed Rule 12.2 defense.

In May 2021, the Court held a hearing on motions *in limine*, including the government's motion to exclude Defendant's argument that government decisions were influenced by "coordination" with journalists or competing lab companies. During the hearing on this topic, Defendant's counsel confirmed that they "have not seen evidence that [the prosecutors who are involved in this case] have coordinated" with journalists—such as John Carreyrou—during their criminal investigation. 05/05/2021 Hearing Transcript at 8:22–9:8. In its order, the Court also found no "evidence of actual coordination" despite defense counsel's assertion that Carreyrou may have had "back-channel communications with CMS about Theranos," and granted the government's motion. ECF No. 798 ("MIL Order") at 86–88.

On June 15, 2021, following the parties' pretrial conference, the Court issued a minute order summarizing the results of the conference and issuing the following order: "Fact witnesses shall be excluded from the courtroom during testimony. Fact witnesses shall not discuss their testimony with anyone and may be able to speak with their counsel. Experts shall NOT be required to be excluded during testimony." ECF No. 824 ("824 Order"). The government believes the Court's 824 Order was

---

[1] All exhibits referenced herein are attached to the accompanying Declaration of Kelly I. Volkar in support of the Government's Non-Opposition to Carreyrou's Exemption Motion ("Volkar Decl.").

intended to avoid the risk of one fact witness's statements influencing the testimony of another fact witness. *See* Mot. at 15.

On July 8, 2021, John Carreyrou announced that he would "be there to cover" the *United States v. Holmes* trial. *See* https://twitter.com/johncarreyrou/status/1413162673550864387 (announcing upcoming podcast and providing links to the trailer); https://podcasts.apple.com/us/podcast/bad-blood-the-final-chapter/id1575738174 (noting trailer aired July 8, 2021).

On August 10, 2021, Defendant served her First Amended Witness List in response to the government's amended witness list provided on June 3, 2021. Volkar Decl., Exh. 2.[2] As relevant here, Defendant's revised list removed Noel Holmes and added John Carreyrou. *Id.* Defendant's First Amended Witness List also added three members of the trial team—John Bostic, Robert Leach, and Jeffrey Schenk—as well as the remaining government case agents not on either parties' prior lists—Christopher McCollow and George Scavdis. *Id.* On August 16, 2021, the government requested courtroom seating for the case agents and Defendant did not oppose. 08/16/2021 Hearing Transcript at 19:1–20. The case agents have helped coordinate the witnesses during the course of the government's case-in-chief and have been present in the audience for most of the trial.

The government does not approve of any attempt by Defendant to use her First Amended Witness List, which was served subsequent to the Court's 824 Order, as a method of controlling who may be present in the courtroom to watch her public trial. John Carreyrou was present in the audience during jury selection and opening statements for the *Holmes* trial. On a break during jury selection, defense counsel requested that the courtroom deputy exclude Carreyrou from the proceedings given that he was on their witness list. The government noted that most of the prosecution team would need to be excluded under the same logic. No further discussion occurred at this time. As the Court is well aware, John Bostic, Robert Leach, and Jeffrey Schenk have appeared in Court every trial day despite being listed as potential witnesses on Defendant's First Amended Witness List. Defendant's mother,

---

[2] The Court subsequently requested that the parties publicly file their witness lists, and both parties did so in advance of opening statements. ECF Nos. 999, 1003. Defendant's publicly filed list matches her First Amended Witness List served on the government on August 10, 2021. The government believes the accompanying Exhibit 1 is the first public filing of Defendant's initial October 2020 witness list.

Noel Holmes—who was removed from Defendant's revised witness list—has also been regularly present at trial.

The government also notes that Defendant's text messages with Co-Defendant Ramesh "Sunny" Balwani show a particular focus on John Carreyrou at key points during his journalistic investigation:

- On April 21, 2015, within two weeks of internally admitting they will need to "narrow[ ] down [the offered test] menu to hit high [fingerstick] %" required by Walgreens, Defendant Holmes and Co-Defendant Balwani exchanged text messages about Carreyrou showing up in Arizona to get his blood tested ("Wsj guy might show up tomorrow" and "[s]eems like this guy is looking to write something negative."). Volkar Decl., Exh. 3 at 1–4. Defendants tried to guess which test Carreyrou may request and attempted to ensure it was done by fingerstick (*e.g.*, "So if he comes it may be 3 fs [fingerstick]"). *Id.* at 3–4. Defendant Holmes also mentioned their "oppo guy knows him well[.]" *Id.*

- On April 25, 2015, within the same week, Co-Defendant Balwani referenced a meeting with Fusion GPS (*id.* at 3, 5), which is an opposition research firm founded by former *Wall Street Journal* investigative journalists. *See* https://en.wikipedia.org/wiki/Fusion_GPS. Defendant Holmes responded: "We'll get killer package for when meet w[ith] carreyrou to turn this into our story[.]" Volkar Decl., Exh. 3 at 5. That same day, Balwani finished a meeting and told Holmes: "I am worried about over exposure without solid substance which is lacking right now." *Id.* at 5–6. Holmes agreed that they could talk more about it, but also insisted that "we have enough new ne[w]s to do different each piece . . . And drown out and refute the crap[.]" *Id.*

- On April 28 and 29, 2015, Holmes and Balwani continued to discuss how to respond to Carreyrou and his request for more information. *Id.* at 7–9. Defendant Holmes suggested that they "think about what access [to] give to reporter" but "shouldn't do it reactive[ly]" and should do so "without setting precedent of someone getting access just because they challenge [us.]" *Id.* at 7. Balwani agreed and stated: "Best would be to turn it around on others." *Id.* Holmes informed Balwani that "Carreyrou is French" to which Balwani replied: "Very funny. Explain[s] everything[.]" *Id.* at 8. Defendants further described Carreyrou as a "cynic" and Balwani noted that he had the same "struggle" "with fusiongps[.]" *Id.* Defendants discussed

how to change skeptics' views and Balwani stated he "would like to use money and influence and PR" and Holmes responded "100% [¶] And leverage[.]"  *Id.* at 9.

- Throughout summer 2015, Defendants continued to "narrow[ ] down in CLIA" who may have been acting as a confidential source for Carreyrou, believing "[i]t is Tyler [Shultz,] Erika [Cheung,] and Adam [Rosendorff.]"  *Id.* at 10–16.  Holmes even suggested "send[ing] legal letter[s]" to the confidential sources with cease and desist language.  *Id.*  Defendants referred to Carreyrou as "jc" and his investigation as a "smear campaign."  *Id.* at 14.  Balwani even met with doctors whom Carreyrou had contacted and convinced one to "call JC and tel [sic] him not to use her name.  I turned this into a customer service call and she was not expecting a kind grateful me" and Holmes responded:  "Awesome been thinking about it non stop[.]"  *Id.* at 16.

- In late September 2015, as CMS was conducting its inspection, Balwani texted Holmes:  "Very hostile so far.  They say [sic] have complaints."  *Id.* at 17–19.  Holmes suspected Tyler Shultz and Dr. Adam Rosendorff as the likely source of complaints that CMS had received and "JC himself playing literally off lab comments is likely the other[.]"  *Id.*  Balwani later "confirm[ed] 100% Erika Cheung" after he reviewed the email that had been sent to CMS.  *Id.*  Holmes responded:  "Not surprising."  *Id.*  Within the same week, Defendants discussed how Carreyrou had continued to contact other individuals meeting with Theranos, such as Eric Lander from the Broad Institute.  *Id.* at 20–23; *see* https://www.broadinstitute.org/bios/eric-s-lander.  Holmes also discussed a meeting with "Rupert"—likely Rupert Murdoch who later invested in Theranos and who owns the *Wall Street Journal*—and stated "No discussion on wsj . . . Which was good[.]"  Volkar Decl., Exh. 3 at 23; *see* https://www.forbes.com/profile/rupert-murdoch/?sh=6176f538b1af.  Defendants continued to speculate on who may have been providing information to Carreyrou into early October 2015.  Volkar Decl., Exh. 3 at 24–25.

- On October 15, 2015—the day that the *Wall Street Journal* published John Carreyrou's exposé that Theranos ran only a small percentage of its blood tests using the fingerstick method and those tests were plagued with inaccuracy and reliability problems, titled *Theranos Has*

*Struggled with Blood Tests*[3]—Balwani texted Holmes "Jc article is out. [¶] Don't react" to which Holmes replied:  "I'm going to respond on Twitter" and expressed a desire to get their message out.  Volkar Decl., Exh. 3 at 26–31.  Defendants discussed having "[o]ur people" do a "tweet drown out" with positive Twitter messages—Balwani suggested "[e]ach person is going to tweet 8 tweets[.]"  *Id.* at 27–29.  While discussing the company's response to Carreyrou's article, Defendant Holmes stated she was "ok with less blood and discomfort" language, but Balwani expressed concern with taking that risk because he was "worried about FDA and cms[.]"  *Id.* at 28–29.  Holmes responded:  "We made such [a] big deal when they were here about venipuncture being less blood I am comfortable with it" and Balwani said "Ok[.]"  *Id.*  Holmes also emailed "Rupert[.]"  *Id.* at 29–30.

- Throughout the next week in October 2015, Defendants continued to discuss their response to Carreyrou's article and their edits to an email drafted by David Boise—at which point Holmes stated:  "I am comfortable with saying the death and sex thing to Rupert [because] it makes the point" and explained why she never met with Carreyrou.  *Id.*  Balwani disagreed and lamented:  "I think it is important to send this email but doesn't help with public beating.  All our partners are bailing one at a time and same with investors."  *Id.*  Balwani also informed Holmes that he recently found out that the CLIA lab failed on multiple levels and stated "[i]t is going to be [sic] very difficult 12 months."  *Id.* at 31; *see also id.* at 32–33 (describing Walgreens' reaction); *id.* at 34 (Balwani expressing concern about Holmes stating "all fingersticks on our technology").

- On November 17, 2015, Balwani expressed doubt about how the Defendants handled "this business and in PR" and confirmed that investors "think we could have handled wsj different from start [sic][.]"  *Id.* at 35–36.

//

//

//

---

[3] *Available at* https://www.wsj.com/articles/DJFVW00120151015ebafa9go1; *see also* ECF 586-2.

In sum, the government does not oppose Carreyrou's Motion and its requested relief, as the government does not believe the Motion's requested relief conflicts with the Court's intended purpose behind its 824 Order.

DATED:  October 8, 2021                          Respectfully submitted,

                                                 STEPHANIE M. HINDS
                                                 Acting United States Attorney


                                                   /s/ Kelly I. Volkar
                                                 JEFFREY B. SCHENK
                                                 JOHN C. BOSTIC
                                                 ROBERT S. LEACH
                                                 KELLY I. VOLKAR
                                                 Assistant United States Attorneys