# EXHIBIT 8

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Division of Clinical Laboratory Improvement & Quality (DCLIQ)
Western and Central Operations Branch - San Francisco Office
(Denver, Kansas City, San Francisco, and Seattle)
90 7th Street, Suite 5-300 (5W)
San Francisco, CA 94103-6707



Refer to:  DCLIQ - GKY

## IMPORTANT NOTICE – PLEASE READ CAREFULLY

Via facsimile to (661) 402-6485.
*(Confirmation of successful facsimile transmission constitutes proof of receipt.)*

July 6, 2021

Adam Rosendorff, M.D., Director
CDPH Branch Laboratory
28454 Livingston Avenue
Valencia, CA 91355

CLIA Number: 05D2197416

**RE:    NOTICE OF PROPOSED SANCTIONS – CONDITIONS NOT MET - IMMEDIATE JEOPARDY.  IMPOSITION NOTICE TO FOLLOW IF PROPOSED SANCTIONS ARE IMPOSED.**

Dear Dr. Rosendorff:

**This letter provides notice of sanctions the Centers for Medicare & Medicaid Services (CMS) proposes to impose against the laboratory's Clinical Laboratory Improvement Amendments of 1988 (CLIA) certificate.  This letter also provides notice of the laboratory's opportunity to submit in writing any evidence or information as to why the proposed sanctions should not be imposed. If the sanctions are imposed, we will provide the laboratory with a separate notice setting forth hearing rights and explaining the administrative appeals process.**

For a laboratory to perform testing under CLIA, Public Law 100-578, it must comply with all CLIA requirements. These requirements are found in section 353 of the Public Health Service Act (42 U.S.C. § 263a) and Title 42 of the Code of Federal Regulations, Part 493 (42 C.F.R. Part 493). Laboratories are required to be in compliance with the applicable regulations. Compliance with these regulations is a condition of certification for the CLIA program.

CMS conducted a CLIA initial certification and complaint survey at CDPH Branch Laboratory ("the laboratory") completed on May 6, 2021. Based on this survey, the laboratory was found to be out of compliance with the following two CLIA Condition-level requirements:

   D5400: 42 C.F.R. § 493.1250   Condition: Analytic systems; and,
   D6076: 42 C.F.R. § 493.1441   Condition: Laboratories performing high
                   complexity testing; laboratory director.

In addition, CMS determined that various CLIA Standard-level requirements were not met.

Because of the serious nature of the deficiencies, the survey determined there was immediate jeopardy to health and safety. We notified CDPH Branch Laboratory by letter dated May 6, 2021, that conditions within the laboratory pose an immediate jeopardy situation. Immediate jeopardy is a situation in which immediate corrective action is necessary because the laboratory's non-compliance with one or more Condition level requirements has already caused, is causing, or is likely to cause, at any time, serious injury or harm, or death, to individuals served by the laboratory or to the health or safety of the general public. This term is synonymous with imminent and serious risk to human health and significant hazard to public health. *See* 42 C.F.R. § 493.2.

We provided the laboratory a listing of all deficiencies identified during the survey on Form CMS-2567, Statement of Deficiencies, sent as an enclosure to our May 6, 2021 letter. In the May 6, 2021 letter, we notified the laboratory to take immediate action to remove jeopardy and bring any unmet Condition-level requirement into compliance. CMS gave the laboratory ten calendar days from the date of receipt of the May 6, 2021 letter to submit a credible allegation of compliance and acceptable evidence of correction for the cited deficiencies. CMS received a submission from the laboratory in response to the May 6, 2021 letter on May 16, 2021.

After careful review, we have determined that the laboratory's submission does not constitute a credible allegation of compliance and acceptable evidence of correction for the deficiencies cited during the CLIA initial certification and complaint survey completed on May 6, 2021. In addition, the submission does not demonstrate that the laboratory has come into Condition-level compliance and abated immediate jeopardy. In general, we find that the statements made in the allegation of compliance and evidence of correction: 1) failed to adequately address the deficient practice cited; 2) are incomplete and failed to meet the criteria of acceptable evidence of correction; 3) do not ensure sustained compliance; and 4) show a lack of understanding of the CLIA requirements.

As we advised the laboratory in our May 6, 2021 letter, a credible allegation of compliance, as defined by regulation (42 C.F.R. § 493.2), is a statement or document that is:

1) Made by a representative of a laboratory with a history of having maintained a commitment to compliance and taking corrective action when required;

2) Realistic in terms of the possibility of the corrective action being accomplished between the date of the survey and the date of the allegation; and

3) Indicates resolution of the problem.

It is important to note that the allegation of compliance must be complete and address each of the deficiencies cited in the Statement of Deficiencies to be credible. For each deficiency, the allegation of compliance must include a corrective action date that is realistic in terms of the action being accomplished between the date of the survey and the planned date of completion.

2

As we also advised the laboratory in our May 6, 2021 letter, the laboratory's allegation of compliance must be substantiated by acceptable evidence of correction, which must include:

1) Documentation showing what corrective action(s) have been taken for patients found to have been affected by the deficient practice;

2) How the laboratory has identified other patients having the potential to be affected by the same deficient practice and what corrective action(s) have been taken;

3) What measure has been put into place or what systemic changes the laboratory has made to ensure that the deficient practice does not recur; and

4) How the corrective action(s) is being monitored to ensure the deficient practice does not recur.

The following explanation details why the laboratory's May 16, 2021 submission does not constitute a credible allegation of compliance and acceptable evidence of correction:

D5209
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

In the submission, the laboratory stated: "No staff were due for 6-month or 12-month competency assessment because the laboratory had been open less than 6 months [as of the onsite March 2021 CLIA survey/investigation]." However, we note that records titled "Training and Competency Record" were provided, which indicated that testing personnel were determined to be competent before March 2021. In addition, since these records were all dated before the March 2021 CLIA survey/investigation, the laboratory did not explain why these records were not available at the time of the onsite survey/investigation.

We also note that the laboratory has been operational for more than six months as of the submission date. Yet, the laboratory provided no documents indicating that the laboratory had effectuated its six-month laboratory staff competency assessment.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

D5400
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

See our reviews of D5423, D5429, D5481, D5789, and D5791.

D5423

**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

Based on "CLIA 42 CFR [§] 493.1253 and FDA [Food and Drug Administration] guidance [Policy for Coronavirus Disease – 2019 Tests During the Public Health Emergency (Revised), May 2020]," the laboratory's May 16, 2021 cover letter and May 15, 2021 allegation of compliance assert that its SARS-CoV-2 test "is a fully validated LDT [laboratory developed test]." The laboratory makes additional references in the cover letter and allegation of compliance to "the FDA permitted right to reference," the laboratory's ability to "leverage studies for interfering substances from the EUA [Emergency Use Authorization]," and "bridge studies as per FDA guidance."

The laboratory's assertions imply that it has met the CLIA requirement at 42 C.F.R. § 493.1253(b)(2) by following the cited FDA guidance and applying certain data submitted to the FDA for another test system that the FDA approved under the FDA's EUA.

The CLIA requirement at 42 C.F.R. § 493.1253(b)(2) has not been waived or in any way modified by the cited FDA guidance and remains in full force and effect. Under that requirement, "[e]ach laboratory that modifies an FDA-cleared or approved test system, or introduces a test system not subject to FDA clearance or approval (including methods developed in-house and standardized methods such as test book procedures), or uses a test system in which performance specifications are not provide by the manufacturer *must,* before reporting patient test results, *establish for each test system the performance specifications*" (emphasis added) as further specified in the regulation. The actions described by the laboratory do not meet this requirement, and the laboratory has not otherwise demonstrated that it had established performance specifications for its SARS-CoV-2 test as required.

We also note that in the submission, the laboratory:
- Referenced the following but provided no supporting documentation for:
    - Viral transport media (PrimeSource MTM (molecular transport medium)) validation;
    - The establishment of cycle threshold (CT) cutoff values for patient test result reporting; and,
    - "Attached White paper" for high CT values.

- Did not explain:
    - Why test results recorded in "Table 1a," "Table 1b," "Table 1c," "Table 1d," "Table 1e," and "Table 1f" differed between specimens that were heat activated and heat inactivated; and,
    - Why the laboratory's "validation report" was dated effective 11/23/2020; however, patient specimen testing began on 11/2/2020.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

4

D5429

**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

In the submission, the laboratory referenced the following but provided no supporting documents for:
- Maintenance quality assessment monthly audits;
- The "laboratory's continuous improvement and correction action process;" and,
- Retrospective review.

We note that in its submission, the laboratory stated that its ". . .retrospective analysis is ongoing." This statement clearly indicates that the laboratory had not completed its corrective actions for this deficient practice.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

D5481

**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

In the submission, the laboratory referenced the following but provided no supporting documents for:
- Repeated patient test run; and,
- "Draft [mock inspection] SOP" and training.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

D5789

**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

The laboratory's response is not credible because modifications made to various portions of their electronic results pathway do not translate from one portion to another over time. These modifications then create situations with inadequate tracking of patient information to ensure accurate and reliable patient test reports.

In the submission, the laboratory referenced the following but provided no supporting documentation of:

- A written procedure detailing how audits or routine review of historical data is to be performed indicating that there was no impact on patient test results.
- The laboratory effectuating these audits/reviews.

5

- Patient reports showing that the historical modifications of CT values and corresponding result interpretations in laboratory data records did not impact patient test results displayed on patient reports.
- A written procedure detailing the "monthly end-to-end tracer" audit and evidence that it has been effectuated.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

D5791
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

In its submission, the laboratory stated the following:

- "Prior to the inspection on March 10, 2021, the laboratory had self-identified, in mid-December, that not all maintenance records were completed, and some were missing supervisor review and/or supervisor dated review. This deviation from written procedure and regulation entered the laboratory's continuous improvement and correction action process."
- "The laboratory has taken corrective action; however retrospective analysis is ongoing."

The laboratory provided no documentation supporting these statements and clearly indicates that the laboratory's corrective actions for this deficient practice had not been completed.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

D6076
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

See our review of D6085, D6094, D6097, and D6102.

D6085
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

See our review of D5423.

D6094
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

See our review of D5791.

D6097
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

See our review of D5481.

D6102
**The laboratory's allegation of compliance is not credible, and evidence of correction is not acceptable.**

While the laboratory provided a substantial amount of records indicating various laboratory training requirements and tracking mechanisms to monitor those requirements, the presentation of the material did not appear comprehensive to cover all staff in a manner that would indicate completion of training according to laboratory policies and procedures. For example, there was no master list showing which staff performed what tasks, no list of what trainings were required for specific tasks, and no list of when those trainings were assigned, and completion was documented.

The laboratory failed to adequately address this deficiency and provide acceptable evidence of correction consisting of the required documentation and information set forth above and in our May 6, 2021 letter.

**Proposed Sanctions**

Accordingly, pursuant to 42 C.F.R. §§ 493.1806, 493.1814, and 493.1840(a)(3), **based on the finding of immediate jeopardy and the laboratory's failure to meet all CLIA Condition-level requirements, and based on the failure by the owners and director of the laboratory to comply with certificate requirements and performance standards as evidenced by the deficiencies cited during the CLIA recertification and complaint survey completed on March 10, 2021**, CMS is proposing the following sanctions against the CLIA certificate of CDPH Branch Laboratory:

- 42 U.S.C. § 263a(i), and 42 C.F.R. §§ 493.1806, 493.1840(a)(3), and 493.1840(e) – Principal Sanction: **Revocation** of the laboratory's CLIA certificate effective **60 calendar days from the notice of imposition**. If imposed, the laboratory has 60 calendar days to appeal the determination to revoke the laboratory's CLIA certificate. If a timely hearing request is received, revocation of the laboratory's CLIA certificate will become effective following the administrative hearing decision if our determination of non-compliance is upheld.

- 42 C.F.R. §§ 493.1806, 493.1812, 493.1840(a)(3), and 493.1840(d)(2)(i) – Principal Sanction: **Suspension** of the laboratory's CLIA certificate effective **eight calendar days from the notice of imposition** based on the finding of immediate jeopardy. The limitation will take effect regardless of whether a hearing request is filed and will remain in effect until the laboratory's CLIA certificate is revoked.

7

- 42 C.R.R. §§ 493.1806(c)(3), 493.1810(c)(2)(ii), 493.1810(d), and 493.1834 - Alternative Sanction: **Civil Money Penalty (CMP)** of $21,410 per day for each day of non-compliance effective **five calendar days from the notice of imposition**. If the laboratory requests a hearing, the CMP will not be collected until after the hearing decision is rendered. However, the $21,410 per day will begin to accrue five (5) days from the notice of imposition and will continue to accrue until it can be verified that all the cited deficiencies have been corrected and the laboratory is in compliance with all Condition-level requirements, or the laboratory's CLIA certificate is suspended.

    In determining the amount of the penalty, CMS has taken into account the following factors: (1) the laboratory was found to be out of compliance with two CLIA Condition-level requirements as well as numerous Standard-level CLIA requirements during the survey completed on May 6, 2021; (2) the deficiencies cited during the survey were so serious as to result in the determination of immediate jeopardy to patient health and safety; (3) the laboratory failed to remove the jeopardy after being provided an opportunity to do so; (4) the laboratory failed to come into Condition-level compliance after being provided ample opportunity to do so; (5) the laboratory failed to meet all analytic system requirements specified in 42 C.F.R. §§ 493.1251 through 493.1283; (6) the laboratory failed to meet all requirements for a laboratory director of a laboratory performing high complexity testing, specified in 42 C.F.R. §§ 493.1443 and 493.1445; and (7) the laboratory has expressed no rational reasons for its failure to achieve compliance with all applicable Condition-level CLIA requirements.

    Pursuant to 42 C.F.R. § 493.1834(e)(2)(iii), if the laboratory waives its right to a hearing[1], the amount of the CMP may be reduced by 35 percent (35%). If you would like to waive your right to a hearing regarding the imposition of any CMP, you must do so by submitting your written notice of waiver to the following address within sixty (60) calendar days from the date of receipt of the imposition notice:

    > Karen Fuller, Manager
    > Division of Clinical Laboratory Improvement & Quality (DCLIQ)
    > Western and Central Operations Branch – San Francisco Office
    > Centers for Medicare & Medicaid Services
    > 90 7th Street, Suite S-300 (5W)
    > San Francisco, CA  94103-6707

- 42 C.F.R. §§ 493.1806(c)(1), 493.1832(b)(2), 493.1844(d)(1), and 493.1844(g)(1) – Alternative Sanction: **Directed Portion of a Plan of Correction** effective **five calendar days from the notice of imposition**. The laboratory will be directed to submit to this office within <u>ten</u> calendar days from the date of the notice of imposition of sanctions a list of the names and addresses of all physicians and other clients who have used some or all of the laboratory's services from November 2020 to the present date. CMS may use this list to

---

[1] *See* 42 C.F.R. § 493.1834(e)(2) for hearing rights regarding proposed CMPs. You will be provided another opportunity to appeal or claim the 35% reduction in a subsequent letter if CMS decides to impose any sanctions, including a CMP.

8

advise the laboratory's clients of its non-compliance and the nature and effective date of any sanctions imposed against the laboratory. The effective date of this sanction will not be delayed due to the filing of a hearing request.

- 42 C.F.R. §§ 493.1804(b)(1)(ii), 493.1804(b)(2), 493.1807(b), 493.1808(b), 493.1826, 493.1844(d)(1), and 493.1844(h)(2) – Medicare Principal Sanction: **Suspension of the laboratory's approval to receive Medicare payments** for any services performed on or after **eight calendar days from the notice of imposition**.

  As a consequence of the suspension of the approval to receive Medicare for services performed, under Section 1902(a)(9)(C) of the Social Security Act and 42 C.F.R. § 440.30(c), payment under the Medicaid program, Title XIX of the Social Security Act, will no longer be available to the laboratory for all laboratory services performed effective **eight calendar days from the notice of imposition.**

- 42 C.F.R. §§ 493.1807(a), 493.1808(a), 493.1842, and 493.1844(d)(3) – Principal Sanction: **Cancellation of the laboratory's approval to receive Medicare payments** for all laboratory services effective **60 calendar days from the notice of imposition**. This sanction will be effectuated even if the laboratory files a timely appeal.

  Moreover, in accordance with Section 1902(a)(9)(C) of the Social Security Act and 42 C.F.R. § 440.30(c) and 493.1809, payment under the Medicaid program, Title XIX of the Social Security Act, will no longer be available to the laboratory for all laboratory services effective **60 calendar days from the notice of imposition**. See 42 C.F.R. § 440.2(b).

The laboratory is advised that the above sanctions cannot be avoided by the closure, discontinuation of testing, voluntary withdrawal from the CLIA program, or changes in the certificate to a lower level of testing. CMS will not change a laboratory's CLIA certificate type while an enforcement action is pending. In addition, a laboratory's CLIA certificate will remain active while an enforcement action is pending.

**When the laboratory's CLIA certificate is revoked, the laboratory will not be permitted to perform any testing, including waived testing and provider performed microscopy procedures, regardless of whether or not the laboratory charges for the testing.[2] When the laboratory's CLIA certificate is limited for the specialty of hematology, the laboratory will not be permitted to perform any hematology testing, including waived testing and provider performed microscopy procedures, regardless of whether or not the laboratory charges for the testing[3].** Also, upon revocation of a laboratory's CLIA certificate 42 U.S.C. § 263a(i)(3) and 42 C.F.R. § 493.1840(a)(8) prohibit the owners or operator(s) (including the laboratory director – see 42 C.F.R. § 493.2) from owning or operating (or directing) a laboratory for at least two years

---

[2] The laboratory may continue to perform parallel testing on patient specimens if needed to implement corrective actions. However, the laboratory may not report any patient test results during the period when its CLIA certificate is revoked.

[3] The laboratory may continue to perform parallel testing on patient hematology specimens if needed to implement corrective actions. However, the laboratory may not report any patient hematology test results during the period when its CLIA certificate is limited for the specialty of hematology.

9

from the date of the revocation. This prohibition applies to the owner, operator, and laboratory director at the time the deficiencies which led to the proposal of sanctions were identified by CMS.

Please note that in accordance with 42 U.S.C. § 263a(i)(2), CMS is authorized to suspend the CLIA certificate of a laboratory before holding a hearing where the failure to comply with CLIA requirements presents an imminent and serious risk to human health, as has been determined in the case of CDPH Branch Laboratory. As further provided under this section of the statute, if the laboratory requests a hearing, it is entitled to have the hearing commence within 60 days of the effective date of the suspension. The laboratory must specify in any request for a hearing to challenge the suspension of its CLIA certificate whether it wishes the hearing to commence within 60 days.

Please be advised that the determination that a laboratory's deficiencies pose immediate jeopardy is not subject to appeal. Please also be advised that the determination of which alternative sanction or sanctions to impose, including the amount of a Civil Money Penalty to impose per day or violation, is not subject to appeal. *See* 42 C.F.R. § 493.1844(c)(4) and (c)(6).

Please note that pursuant to 42 C.F.R. § 493.1840(a)(7), failure to comply with an alternative sanction, such as a CMP or a Directed Plan of Correction, is a separate and distinct basis for limitation, suspension, or revocation of any CLIA certificate.

**Instructions for Sending in Your Response**

**The laboratory has ten calendar days from the date of this notice, or until July 16, 2021 to submit in writing any evidence or information as to why the sanctions detailed above should not be imposed.** If a response is not made, is untimely, or does not successfully rebut the bases for the proposed sanctions, we will notify the laboratory in writing that we will proceed to impose the above-referenced sanctions. We will provide information regarding the laboratory's hearing rights and a description of the appeals process at that time.

All responses, as well as any future correspondence about this survey, should be sent to:

> Karen Fuller, Manager
> Division of Clinical Laboratory Improvement & Quality (DCLIQ)
> Western and Central Operations Branch – San Francisco Office
> Centers for Medicare & Medicaid Services
> 90 7th Street, Suite S-300 (5W)
> San Francisco, CA  94103-6707

If the sanctions become effective as referenced above, in accordance with 42 C.F.R. § 493.1850(a)(2), information regarding the actions against the laboratory's CLIA certificate will appear in the Laboratory Registry for the calendar year in which the actions are imposed. In addition, pursuant to 42 C.F.R. § 493.1844(g)(1), we will notify the general public by posting the information on the Survey & Certification website at

https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/SurveyCertificationGenInfo/Termination-Notices.html.

Please contact Gary Yamamoto by telephone at ▉▉▉▉▉▉▉▉ or by e-mail at gary.yamamoto@cms.hhs.gov or Josh Cohen by telephone at ▉▉▉▉▉▉▉▉ or by e-mail at joshua.cohen@cms.hhs.gov with any questions concerning this letter.

Sincerely,

**Karen M. Fuller -S**
Digitally signed by Karen M. Fuller -S
Date: 2021.07.06 06:36:43 -07'00'

Karen Fuller, Manager
Division of Clinical Laboratory
    Improvement & Quality (DCLIQ)
Western and Central Operations Branch
(Denver, Kansas City, San Francisco, and Seattle)

cc:    California Department of Public Health, Laboratory Field Services