JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

Attorney for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **DEFENDANT ELIZABETH HOLMES' OPPOSITION TO MOTION TO QUASH AND FOR PROTECTIVE ORDER AND REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Date:   October 14, 2021<br>Time:   1:30 p.m.<br>CTRM: 5, 4th Floor<br><br>Hon. Nathanael Cousins |

Roger Parloff, a journalist, has cooperated with the prosecution against two of his sources--Ms. Holmes and Mr. Balwani. Parloff never asserted any reporter's privilege in response to government requests for information. Parloff now intends to testify for the prosecution, again without asserting the reporter's privilege. His testimony for the prosecution may include authentication of recordings of his interviews of Ms. Holmes (which he produced to the grand jury without any claim of privilege), "[w]hat he took her statements to mean in the setting of the questions that he asked of her," "[w]hat he wrote and published," and "whether inconsistencies in [Ms. Holmes'] various statements over time led [Parloff] to

such a belief [that Ms. Holmes lied or deliberately misled him]." Mot. of Roger Parloff to Quash and For Protective Order, Dkt. 1063 at 11-12.

Based on his status as a journalist, Parloff requests protections other witnesses do not enjoy. He asks the Court, in advance, to restrict the scope of Ms. Holmes' cross-examination to Parloff's communications with Ms. Holmes and Mr. Balwani and to bar her from inquiring into his interviews with other persons in connection with his articles. Dkt. 1063 at 1, 19. And he asks the Court to quash Ms. Holmes' subpoena duces tecum for clearly relevant documents. *Id*. at 19. He seeks these extraordinary protections based on a version of the reporter's privilege that the Ninth Circuit and this Court have rejected and that Parloff himself never asserted when the prosecution sought information from him.

For the reasons that follow, the Court should deny Parloff's demand for these exemptions from "'the fundamental principle that the public has a right to every man's evidence.'" *United States v. Sterling*, 724 F.3d 482, 502 (4th Cir. 2013) (quoting *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990)).

I.  NO REPORTER'S PRIVILEGE EXEMPTS PARLOFF FROM FACING THOROUGH CROSS-EXAMINATION AND COMPLYING WITH THE SUBPOENA DUCES TECUM.

Parloff asserts a purported reporter's privilege under the First Amendment. But the Ninth Circuit and this Court have rejected any such privilege in criminal cases absent bad faith or harassment, neither of which exists here. *See, e.g.*, *In re Grand Jury Proceedings*, 5 F.3d 397, 400-03 (9th Cir. 1993) (in rejecting claim of scholar's privilege, court finds no basis for not "'insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial'"); *United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324, at *4 (N.D. Cal. Nov. 18, 2003) (rejecting reporter's privilege in criminal case absent bad faith or harassment).

In *Schneider*, Judge Illston concluded that "[t]he First Amendment does not shield a reporter or news organization from responding to a subpoena in a criminal case; a quash order is inappropriate unless the reporter can show that the investigation is conducted in bad faith." *Id.* at *4; *see also, e.g.*, *Sterling*, 724 F.3d at 492 ("There is no First Amendment testimonial privilege, absolute or qualified, that protects a reporter from being compelled to testify by the prosecution or the defense in criminal proceedings about criminal conduct that the reporter personally witnessed or participated in, absent a showing of bad faith,

harassment, or other such non-legitimate motive, even though the reporter promised confidentiality to his source.").

Parloff ignores *Schneider*'s analysis of the reporter's privilege. Dkt. 1063 at 10 n.8. He asserts that the stringent "bad faith or harassment" standard applies only in the grand jury context and that a far broader version of the reporter's privilege applies in both civil and criminal cases. *Id.* at 7. He relies for this assertion principally on two civil cases, *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) (*Shoen I*), and *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) (*Shoen II*). *Shoen II* provides no support for Parloff's privilege claim; the decision expressly confines its discussion of the reporter's privilege to "the appropriate test for determining whether *a civil litigant's* interest in disclosure is sufficient to override a journalist's privilege." *Id.* at 415 (emphasis added). *Shoen I* noted that in *Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975), the Ninth Circuit concluded that "the journalist's privilege recognized in *Branzburg* was a 'partial First Amendment shield' that protects journalists against compelled disclosure in all judicial proceedings, civil and criminal alike." *Shoen I*, 5 F.3d at 1292 (quoting *Farr*, 522 F.2d at 467). *Farr*, in turn, upheld a trial court order in a high-profile criminal case compelling a reporter to disclose the source of confidential information provided to him in violation of a protective order. 522 F.2d at 469. The Ninth Circuit recognized "some First Amendment protection of news sources," *id.* at 467, but it found that protection overcome by "the power and duty of the court to enter enforceable orders to protect the due-process right of accused persons," *id.* at 469. *Farr* did not address the standard to be applied when a reporter asserts the privilege to avoid testifying or producing documents in a criminal case.

Parloff tries to combine the dicta from *Shoen I* recognizing a reporter's privilege in criminal cases with the *Shoen II* showing a *civil litigant* must make to overcome the privilege. Judge Illston rejected this mix-and-match approach in *Schneider*. After discussing the two *Shoen* decisions, Judge Illston declared:

> [W]hile it is true that reporters enjoy a qualified privilege in both civil and criminal proceedings, it cannot be said that the two privileges are identical. The shield in a criminal setting is exceptionally thin. To deploy it, the reporter must demonstrate that the criminal investigation is proceeding in bad faith, or that the government has otherwise exhibited "harassment of newsmen." *Branzburg*, 408 U.S. at 709 (Powell, J., concurring). In a civil setting, on the other hand, the press enjoys much more robust protection from compelled testimony.

*Schneider*, 2003 U.S. Dist. LEXIS 27324, at *10; *see, e.g., Sterling*, 724 F.3d at 498 ("Subpoenas in

MS. HOLMES' OPPOSITION RE MOTION TO QUASH
AND REPLY RE MOTION TO COMPEL
CR-18-00258 EJD                                    3

criminal cases are driven by the quite different and compelling public interest in effective criminal investigation and prosecution, an interest that simply is not present in civil cases."). As *Schneider* and *Sterling* make clear, the relevant distinction is not between grand jury investigations and all other proceedings, as Parloff maintains; it is between civil proceedings and criminal proceedings (including both criminal trials and grand jury investigations of potential crimes). In criminal proceedings, a reporter may claim protection only if he demonstrates bad faith or harassment--a showing Parloff does not even attempt to make.

II.   THE PARLOFF SUBPOENA SATISFIES RULE 17(c).

As Ms. Holmes demonstrated in her motion to compel, Dkt. 1028 at 2-7, the subpoena duces tecum to Parloff meets the requirements of "relevancy," "admissibility," and "specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). Parloff offers several points in response.

First, he asserts that he no longer possesses or has access to some responsive documents. It goes without saying that Parloff has no obligation to produce materials outside his control.

Second, Parloff disputes the relevance of the documents Ms. Holmes seeks. But if Parloff intends to testify about (among other things) "[w]hat he took [Ms. Holmes'] statements to mean in the setting of the questions that he asked of her" and "whether inconsistencies in [Ms. Holmes'] various statements over time led [Parloff] to such a belief [that Ms. Holmes lied or deliberately misled him]," Parloff Mot., Dkt. 1063 at 11-12, then the other information available to him is obviously relevant. That information may cast doubt on Parloff's claims about what he understood Ms. Holmes' statements to mean and his alleged belief that Ms. Holmes lied to him. And, because Ms. Holmes "suggested" a number of the sources and assisted in arranging interviews with them, Parloff Decl., Dkt. 1063-1 ¶ 3, the information concerning those interviews also demonstrates her lack of any intent to mislead Parloff.

Parloff suggests that his interviews with Ms. Holmes occurred before his first article was published in June 2014, and he implies that events occurring after that date are irrelevant. In fact, Parloff interviewed Ms. Holmes again in November 2014, February 2015, and July 2015, after the first article was published. The government has designated excerpts from those interviews as trial exhibits. TX 2212, 2367, 2368, 2580. Although Parloff wrote several articles about Theranos between the June 2014 Fortune article and

the end of 2015, he apparently did not conclude that Ms. Holmes had misled him until after the Wall Street Journal published articles critical of the company in the fall of 2015. The information Parloff obtained about Theranos during that period is relevant to challenge his claim that Ms. Holmes misled him and to demonstrate bias--in particular, to show that in the wake of the Journal articles, Parloff tried to avoid professional embarrassment by blaming Ms. Holmes for his own failures as a reporter.

Parloff asserts that the persons named in Ms. Holmes' subpoena "have no expertise in blood testing, medicine or engineering." Parloff Mot., Dkt. 1063 at 13. That is incorrect. One of those persons is Dr. David Helfet, described in Parloff's June 2014 article as the chief of orthopedic trauma at the Hospital for Special Surgery in Manhattan. Cline Dec., Dkt. 1028-1, Exhibit C, at MEDIA-000016. Dr. Helfet told Parloff that he had "review[ed] voluminous validation studies supplied to him by the company," *id*., contradicting another of Parloff's claims: that his sources "likely only echo what they were told by Holmes," Parloff Mot., Dkt. 1063 at 13. Parloff also interviewed representatives of three hospital chains and at least one of Theranos' competitors, all of whom presumably have expertise in medicine or blood testing or both and none of whom are likely to have "echo[ed] what they were told by Holmes." Cline Decl., Dkt. 1028-1, Exhibit C, at MEDIA-000014-16.

In short: Parloff had a wealth of sources. Many provided information consistent with the information he obtained in his interviews with Ms. Holmes. Others, including Theranos' competitors, criticized the company on many of the very issues on which Parloff claims Ms. Holmes misled him. To permit Parloff to claim at trial that Ms. Holmes misled him while barring access to evidence that will disprove that claim and show Ms. Holmes' good faith would violate her Fifth and Sixth Amendment right to compel production of favorable evidence.

## CONCLUSION

For the foregoing reasons, Ms. Holmes respectfully requests that the Court deny Parloff's motion for protective order and to quash, grant Ms. Holmes' motion to compel, and order Parloff to produce the documents and recordings set forth in the attachment to the subpoena.

1 | DATED: October 13, 2021

/s/ John D. Cline
JOHN D. CLINE
Attorney for Elizabeth Holmes

MS. HOLMES' OPPOSITION RE MOTION TO QUASH
AND REPLY RE MOTION TO COMPEL
CR-18-00258 EJD                                    6

# CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, I filed the foregoing pleading via ECF, which will serve all parties. In addition, I emailed a copy of the pleading to David Korzenick, attorney for Roger Parloff.

/s/ John D. Cline
JOHN D. CLINE
Attorney for Elizabeth Holmes