JEAN-PAUL JASSY, Cal Bar No. 205513
 jpjassy@jassyvick.com
JEFFREY A. PAYNE, Cal Bar No. 279034
 jpayne@jassyvick.com
**JASSY VICK CAROLAN LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:   310-870-7048
Facsimile:   310-870-7010

Attorneys for Non-Party Journalist
and Proposed Intervenor
JOHN CARREYROU

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     vs.<br><br>ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI,<br><br>             Defendants. | Case No. 5:18-cr-00258-EJD (NC)<br><br>**REPLY** IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO EXEMPT JOHN CARREYROU FROM WITNESS EXCLUSION AND GAG ORDER; APPENDICES 1 AND 2<br><br>Date:   October 14, 2021<br>Time:   1:30 p.m.<br>Crtrm:   5, 4th Floor<br><br>Hon. Nathanael M. Cousins |

## I. INTRODUCTION

The response filed by defendant Elizabeth Holmes is most remarkable for what it does not say. Nowhere does Holmes state that she actually intends to call John Carreyrou as a witness at trial. Holmes does not dispute that she harbors animus toward Carreyrou for breaking the story that led to the downfall of Theranos; nor does she disagree that such animus is amply demonstrated in Carreyrou's brief and the Government's brief and evidence. She does not – because she cannot – disagree that the only journalist *she* put on her witness list (and thus the only journalist she seeks to exclude from trial) is Carreyrou. Instead, she insists that her desire to exclude Carreyrou – and no other journalist from trial – stems from her good faith desire to (maybe) examine Carreyrou about his newsgathering. But Holmes' Opposition does not identify a single fact that Carreyrou personally witnessed or that he could testify to with personal knowledge.

Instead, Holmes points to multiple examples where Carreyrou was asking sources, witnesses and government agents for information and/or comments – which is exactly what journalists are supposed to do. Holmes suggests that Carreyrou's "interactions" and "communications" with former Theranos employees and government bureaucrats make him a "fact witness" subject to the Exclusion Order, but – if that were the rule – then every reporter on a matter that goes to trial would always be subject to exclusion. And there is no authority for that proposition.

Holmes does not dispute that, even if she were to subpoena and call Carreyrou as a witness, she could not overcome a reporter's privilege. Instead, she inaccurately states that the reporter's privilege does not apply in federal criminal cases in the Ninth Circuit.

Finally, Holmes notes that cases often include gag orders on trial participants. That may be true, but that does not mean all gag orders are constitutional. In fact, Holmes does not dispute the long-standing rule that all prior restraints on speech are presumptively unconstitutional and can only be justified following strict scrutiny, which Holmes does not even try to satisfy here.

In sum, Holmes' Opposition does nothing to justify excluding or gagging Carreyrou – let alone putting him on her witness list in the first place. Other federal courts, faced with similar factual situations and far *less* evidence of bad faith and harassment have properly exempted reporters from exclusion and gag orders. Carreyrou's motion should be granted in full.

II. **CARREYROU SHOULD BE EXEMPTED FROM THE EXCLUSION ORDER.**

   A. **This Court Has the Discretion to Interpret Rule 615, As Other Courts Have.**

There is no reasonable dispute that the Court retains the authority to determine whether Rule 615 applies to a given witness. Holmes has no answer for the holding of Judge Patel of this Court who stated: "The decision to exempt particular witnesses from an exclusion order … is within the discretion of the court." *Siam v. Potter*, No. C 04-00129 MHP, 2006 WL 1530155, at *5 (N.D. Cal. June 5, 2006). Consistent with that discretion, Carreyrou cited two federal court decisions exempting reporters from Rule 615 exclusion orders even though the reporters were listed as potential witnesses. *U.S. v. Connolly*, 204 F. Supp. 2d 138, 138-140 (D. Mass. 2002); *U.S. v. LaBrake*, No. 02-cr-319-RAL-TGW, Dkt No. 189 (M.D. Fla. Nov. 2, 2004).[1]

   B. **Carreyrou Is Not a Fact Witness.**

The Exclusion Order only applies to "fact witnesses." Dkt. 824 at 2. Federal Rule of Evidence 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See also* Black's Law Dictionary (11th ed. 2019) (defining "fact witness" as "[a] witness who has firsthand knowledge of something based on the witness's perceptions through one or more of the five senses.").

Despite Holmes' assertions to the contrary, Carreyrou is not a "fact witness." Opp. at 1-3. First, the Government's Rule 404(b) disclosures do not establish that Carreyrou is a fact witness to anything. *See* Opp. at 1:23-25 (citing Dkt. 580-2 at 22-24, 58-62, 77). Rule 404(b) concerns evidence of prior bad acts that the Government may rely upon at trial, but Carreyrou has no personal knowledge of the material referencing him in Dkt. 580-2. For example, Carreyrou was not there when Holmes made statements claiming Carreyrou was "on a 'jihad,'" *id.* at 22-23, or when she helped lead a chant of "'Fuck you Carreyrou,'" *id.* at 59, or when Holmes harassed doctors not

---

[1] The motion and order in the *LaBrake* case are attached to this brief as Appendices 1 and 2, respectively, for the Court's convenience.

to speak with Carreyrou, *id.* at 59, or when she tried to convince Rupert Murdoch to shut down Carreyrou's reporting, *id.* at 60.[2]

Second, Carreyrou's "interactions" with other witnesses do not translate to him having personal or percipient knowledge of underlying events. Carreyrou does not dispute that he was and is a reporter investigating Theranos, Holmes and Ramesh "Sunny" Balwani. He also does not dispute that he gathered information, facts and comments from various sources, including former Theranos employees and government agents. Carreyrou is an investigative reporter, and that is what investigative reporters do: They gather information, including by interviewing individuals with percipient knowledge of the events subject to the reporter's investigation. By Holmes' rationale, any investigative reporter who interacts with *anyone* who later becomes a potential witness automatically becomes a "fact witness" because the reporter learns underlying facts. There is no legal authority to support that expansive understanding of the meaning of "fact witness."

Third, for the same reasons as noted above, Carreyrou's communications with other witnesses do not transform Carreyrou into a percipient witness of any underlying facts or events.

Fourth, for the same reasons as the second and third points above, Carreyrou's communications with government agents do not make him a percipient witness of any events or activities.[3] None of the purported evidence advanced by Holmes demonstrates otherwise. Holmes points to efforts by Carreyrou to gather comments and information for upcoming news reports and his book. *E.g.*, Cline Decl., Exs. 1, 3, 4, 5, 6 and 7.[4] That is standard journalistic activity, intended

---

[2] Moreover, Carreyrou has no control over what the Government does with its filings in this action, and played no role in the Government's Rule 404(b) disclosures. There is no evidence that Carreyrou is working with any party in this case. The Court granted a motion in limine precluding Holmes from arguing that the prosecutors' charging decisions were "influenced by 'coordination' with journalists." Dkt. 798 at 87. Indeed, Carreyrou is entirely independent, he will not willingly testify for any party, and he would oppose any subpoena to testify.

[3] To the extent Holmes believes Carreyrou should have to testify about unpublished newsgathering, Carreyrou objects under the reporter's privilege. *See* Mot. at 9-16.

[4] Holmes also points to an email exchange that does not include Carreyrou or mention Carreyrou by name. Cline Decl. Ex. 2. Exhibit 2, read chronologically, shows that Theranos' General Counsel Heather King is trying to "direct" unnamed "journalists" that are supposedly "trying to spread mis-information" about lab tests being run by Theranos. *Id.* at 5-6. CMS then asks for and receives a list of the lab tests from King, and then CMS employees realizes that they were unaware of the tests being performed by Theranos (i.e., that Theranos' chief lawyer revealed the information). *Id.* at 2-5. As for a complaint, CMS notes that a complaint had previously been "submitted to NY State"

---

to confirm accuracy and balance to a story. *See, e.g.,* https://www.spj.org/ethicscode.asp (Society of Professional Journalists Code of Ethics). What Holmes shows the Court is that Carreyrou is a diligent and ethical reporter, not that he had personal or percipient knowledge of any underlying events or activity at Theranos.

**C. Carreyrou Was Listed By Holmes in Bad Faith and is Unlikely to be Called.**

Holmes concedes and agrees that evidence of bad faith or harassment can defeat a subpoena to a reporter. Opp. at 8:8-10; Mot. at 5:24-6:2.[5] Carreyrou and the Government presented considerable evidence of Holmes' bad faith motive to harass Carreyrou. Holmes does not address or dispute any of that. Apparently, Holmes hopes the Court will forget that such evidence exists.

Holmes insists that Carreyrou was listed as a witness in good faith, Opp. at 6-7, but that is belied by: (1) the unrebutted evidence of Holmes' animus for Carreyrou; (2) Holmes' failure to identify any percipient facts known by Carreyrou; (3) Holmes failure to subpoena Carreyrou even though he was in the courtroom for jury selection and opening statements; and, most glaringly, (4) Holmes's failure in her Opposition to represent to the Court that she actually intends to call Carreyrou as a witness. Merely reciting "good faith" does not make it so.

This is the same type of maneuver rejected by other courts where there was less or no evidence of bad faith. In *Connolly*, the court exempted two reporters from an exclusion order. 204 F. Supp. 2d 138. Contrary to Holmes' description of the case, Opp. at 7, in *Connolly*, both the government *and* the defense subpoenaed the reporters, and the defense had not limited the prospective testimony to simply verifying the accuracy of statements in articles. 204 F. Supp. 2d at 139 (the government was willing to limit the examination, but the defense was only willing to consider doing so). And, again contrary to Holmes' assertion, Opp. at 7, the case was not limited to reporters who "simply reported on events from the courtroom." Opp. at 7. The reporters in

---

and was "forwarded to CMS," but that someone named "Gary" did not get it. *Id.* at 2. Nothing in Exhibit 2 shows that Carreyrou personally registered a complaint or had personal knowledge about the substance of any complaint.

[5] Holmes suggests in a footnote that it would be acceptable to put Carreyrou on her witness list, exclude him from attending trial, gag him and then never even subpoena him. That alone demonstrates bad faith. In *LaBrake*, the Court noted as one of its rationales for exempting a journalist from an exclusion order was that she had not been subpoenaed. App'x 1 at 1; App'x 2.

*Connolly* had considerable experience in reporting on the background subject matter of the case prior to trial. 204 F. Supp. 2d at 139. Likewise, the reporter who was exempted from an exclusion order in *LaBrake* had been "reporting on the issues involved in the case since its inception and intend[ed] to cover the trial as a reporter." App'x 1 at 1-2; App'x 2.

### D. **Holmes' Ruse Undermines Carreyrou's First Amendment Rights and Privileges.**

Holmes does not dispute that Carreyrou has a right – like all of the other reporters covering her trial – to be present in the courtroom during witness testimony. The case she cites requires that any exclusion must be subjected to strict scrutiny – *i.e.*, that the exclusion must satisfy a compelling state interest and be narrowly tailored. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606-607 & n. 17. Her argument, without any analysis, is simply that her rights outweigh Carreyrou's. There is nothing narrowly tailored about keeping Carreyrou out of the courtroom for *all* testimony in the trial.

Holmes misrepresents to the Court that there is no First Amendment-based or common law reporter's privilege in federal criminal cases. Opp. at 8:8-25. The Ninth Circuit has clearly held that "the journalist's privilege recognized in *Branzburg* [is] a partial First Amendment shield that protects journalists against compelled disclosure in **all judicial proceedings, civil and criminal alike**." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (*Shoen I*) (emphasis added); *accord U.S. v. Cuthbertson*, 651 U.S. 139, 147 (3d Cir. 1980) (same) (applying First Amendment-based privilege in criminal case); *U.S. v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) (same). In *U.S. v. Pretzinger*, 542 F.2d 517, 520-21 (9th Cir. 1976), the Ninth Circuit affirmed a decision not to compel reporter to disclose a source in criminal case. *See also Shoen v. Shoen*, 48 F.3d 412, 414 (9th Cir. 1995) (*Shoen II*) (reaffirming application of First Amendment-based privilege); *Farr v. Pitchess*, 522 F.2d 464, 467-468 (9th Cir. 1975) (recognizing constitutionally based reporter's privilege in criminal case).[6]

---

[6] The reporter's privilege is treated differently in grand jury cases versus non-grand jury, criminal cases. Holmes' Opposition misunderstands the reporter's privilege in the Ninth Circuit. Opp. at 8. Other than *Farr*, where the constitutionally based qualified privilege was recognized in a criminal case but overcome, 522 F.2d at 467-468, the reporter's privilege cases cited by Holmes are in the grand jury context. *See In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397, 402 (9th Cir. 1993) (distinguishing *Farr* and noting that the *Farr* court "balanced the conflicting interests raised by that

Since Holmes refuses to acknowledge Ninth Circuit authority on the qualified reporter's privilege, it is not surprising that she makes no effort to explain how she might overcome the privilege.  She can't.  This is quite revealing because all of the matters Holmes raises that she *might* call him to testify about are either available from other sources (*e.g.*, CMS employees or former Theranos employees); or cumulative to the testimony from other witnesses; or unimportant to the case (*e.g., who* sent CMS a third-party complaint first registered with New York, rather than the merits of the contents of that third-party complaint).  *Shoen II*, 48 F.3d at 416.  Holmes cannot show that she could or would secure testimony from Carreyrou as to anything at all, and there is therefore no reason he should be on the witness list – let alone excluded from trial.

Finally, Holmes claims that Carreyrou is not being treated differently than other reporters, but the key point that she refuses to acknowledge is that Carreyrou is the only journalist on *her* witness list.  Opp. at 9.  Roger Parloff is cooperating with the Government, and he is on the Government's witness list.  *Id.*  Likewise, Eric Topol is on the Government's witness list.  *Id.* Holmes, on the other hand, has singled out Carreyrou for exclusion and that should not be countenanced by the Court.

### E.  Carreyrou Can Be Treated as an Expert Witness or Summary Witness.

Even if Carreyrou actually were subpoenaed and called to the stand, he can be considered the equivalent of a "summary witness," who is not a "fact witness," and therefore not subject to the

---

case where the societal interest was different in order to determine the existence of a privilege, but did so **only because** that case – unlike *Branzburg [v. Hayes*, 408 U.S. 665 (1972)] or the present case –did not involve testimony before a grand jury") (emphasis added); *Lewis v. U.S.*, 517 F.2d 236, 237 (9th Cir. 1975) (grand jury context); *In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1115 (N.D. Cal. 2006) (recognizing First Amendment privilege in other criminal contexts, but rejecting application where grand jury was involved).  The disparate treatment of grand jury cases stems from the facts of *Branzburg*, where reporters were called to testify before grand juries about their **eyewitness observations** of criminal activity, 408 U.S. at 692, which is not the case here.  *See also Farr*, 522 F.2d at 468 (Ninth Circuit holding that "[t]he application of the *Branzburg* holding to **non-grand jury** cases" requires balancing of the First Amendment privilege against competing interests) (emphasis added).  Although the reporters in *Branzburg* were compelled to testify before those grand juries, a majority of the *Branzburg* court still recognized First Amendment protections for reporters in grand jury and other contexts.  408 U.S. at 681; *id.* at 710 (Powell, J., concurring). Any potential subpoena in this case does not involve a grand jury so the grand jury cases cited by Holmes are inapposite.  It is telling that Holmes ignores the **non**-grand jury cases where a First-Amendment based privilege is clearly recognized in the Ninth Circuit and elsewhere nationwide.

Exclusion Order. *See* Mot. at 4:26-5:5; *see also U.S. v. Barnwell*, No. 15 Cr. 620 (NSR), 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017) (acknowledging argument that "the rationale for sequestering witnesses does not apply to a summary witness"); *U.S. v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991) (recognizing that "the decision to permit a witness to remain in the courtroom is within the discretion of the trial judge and should not normally be disturbed on appeal," and affirming district court's decision to permit a summary witness to remain in the courtroom); *U.S. v. Bender*, No. 10-20084, 2014 WL 11309793, at *2 (E.D. Mich. Mar. 10, 2014) (granting motion to permit summary witness to remain in courtroom during trial and noting, "Like experts, summary witnesses do not testify to the facts of the case, but rather testify based on the testimony of others." (internal quotation marks omitted)).

As the Court suggested in its October 8, 2021 Order, Dkt. 1074, Carreyrou could also be considered an expert for the purposes of the Exclusion Order, Dkt. 824.

### III.    CARREYROU SHOULD BE EXEMPTED FROM THE GAG ORDER.

#### A. **Holmes Does Not Dispute That the Gag Order is Presumptively Unconstitutional.**

Holmes does not dispute that the Gag Order is a prior restraint, or that all prior restraints are presumptively unconstitutional. Mot. at 17:10-15. Nor does Holmes disagree with the strict scrutiny required of gag orders as set forth in *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985). *See also* Mot. at 17:16-18:2. Holmes claims that "*Levine* expressly *endorsed* restrictions on fact witnesses." Opp. at 9:27 (emphasis in original). Holmes is wrong for two reasons. First, the gag order in *Levine* did not apply to witnesses – it only applied to attorneys: "the district court removed the parties and witnesses from the scope of the order. The revised order applie[d] only to the attorneys[.]" *Levine*, 764 F.2d at 593. Second, the *Levine* court concluded that the order – even as it applied only to attorneys – was unconstitutional because it was overbroad. *Id.* at 599.

#### B. **Holmes Does Not Overcome the Strict Scrutiny Imposed on All Gag Orders.**

Holmes does not argue that she can satisfy the first part of the strict scrutiny of a gag order: that "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest." Mot. at 19 (citing *Levine*, 764 F.2d at 595). That alone should defeat the Gag Order as it may apply to Carreyrou.

Holmes does argue that the Gag Order is narrowly tailored to apply only to Carreyrou's testimony itself.  Opp. at 10:14-18.  But that is a given.  An order restricting speech on *any* and *all* aspects of his testimony is not tailored at all, let alone narrowly.  *See* Mot. at 20:1-12.

Holmes also does not explore any of the less restrictive alternatives proposed in the case law.  Mot. at 20:13-26.  Again, that alone should defeat the Gag Order as it may apply to Carreyrou.

### IV.   CONCLUSION

Carreyrou respectfully requests that his Motion be granted in full.

DATED:  October 13, 2021            JASSY VICK CAROLAN LLP

          /s/   Jean-Paul Jassy
          JEAN-PAUL JASSY
          Counsel for Non-Party Journalist
          and Proposed Intervenor
          JOHN CARREYROU

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2021, a copy of this filing was delivered via email to all counsel of record at the email addresses listed on the CM/ECF for this case

                                             /s/  Jean-Paul Jassy
                                             JEAN-PAUL JASSY