1  JOHN D. CLINE (CA State Bar No. 237759)
2  50 California Street, Suite 1500
   San Francisco, CA 94111
3  Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
   Email: cline@johndclinelaw.com
4
   Attorney for Defendant ELIZABETH A. HOLMES
5

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8                  SAN JOSE DIVISION

9

10  UNITED STATES OF AMERICA,          ) Case No. CR-18-00258-EJD
                                       )
11          Plaintiff,                 )
                                       ) **DEFENDANT       ELIZABETH       HOLMES'**
12      v.                             ) **OBJECTIONS     TO    ORDER    GRANTING**
                                       ) **MOTION   TO   QUASH   SUBPOENA   DUCES**
13  ELIZABETH HOLMES and               ) **TECUM   TO   ROGER   PARLOFF   AND   DENYING**
    RAMESH "SUNNY" BALWANI,            ) **MOTION   TO   COMPEL   COMPLIANCE   WITH**
14                                     ) **THE SUBPOENA**
           Defendants.                 )
15                                     )
                                       )
16                                     )
                                       )
17                                     ) Hon. Edward J. Davila
                                       )
18                                     )
                                       )
19  _____ )
20
21
22
23
24
25
26
27
28

Defendant Elizabeth Holmes objects under Fed. R. Crim. P. 59(a) to Magistrate Judge Cousins' October 14, 2021 order granting Roger Parloff's motion to quash Ms. Holmes' subpoena duces tecum and denying Ms. Holmes' motion to compel compliance with the subpoena.  Dkt. 1089; Tr. 10/14/21 at 50-52.[1]  As discussed below, the Magistrate Judge erred in concluding that Ms. Holmes' subpoena does not satisfy the requirements of Fed. R. Crim. P. 17(c): "relevancy," "admissibility," and "specificity."  *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see, e.g.*, *United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018).   Contrary to the Magistrate Judge's conclusion, the subpoena satisfies each of these requirements.  In addition, Magistrate Judge Cousins erred in concluding that the materials sought under Rule 17(c) must meet a "necessity" requirement.

## BACKGROUND

Roger Parloff is a journalist.  In June 2014, he published an article in Fortune magazine about Ms. Holmes and Theranos.  The article painted a generally favorable picture of the company.  It quoted Ms. Holmes and numerous other people.  That article appears on the government's exhibit list as Exhibit 1749. The magazine's cover is Exhibit 1750.  Cline Dec., Exhibits C, D.  Parloff interviewed Ms. Holmes again in November 2014, February 2015, and July 2015, after the first article was published.  The government has designated excerpts from those interviews as trial exhibits.  TX 2212, 2367, 2368, 2580.  Parloff wrote several articles about Theranos between the June 2014 Fortune article and the end of 2015.

Beginning in October 2015, the Wall Street Journal published a series of articles critical of Theranos.  In January 2016, Parloff published another article in Fortune titled "How Theranos Misled Me."  That article appears on the government's exhibit list as Exhibit 3033.  Cline Dec., Exhibit E.  Among other assertions in the article, Parloff states: "As much as I'd like to say that Holmes lied to me, I don't think she did.  I do believe I was misled--intentionally--but I was also culpable, in that I failed to probe certain exasperatingly opaque answers that I repeatedly received."  *Id*. at MEDIA-001045.

On April 12, 2018, Parloff met voluntarily with AUSA Bostic, an SEC attorney, and at least one FBI agent.  He provided extensive information about the process of writing the June 2014 and January

---

[1] Dkt. 1089 is attached to the accompanying Declaration of John D. Cline ("Cline Dec.") as Exhibit A.  The October 14 hearing transcript is attached as Exhibit B.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

2016 articles, including his conversations and other communications with Ms. Holmes and others. According to the FBI's memorandum of the interview, Parloff apparently has come to believe, based on something he recalled in February 2018, that Ms. Holmes not only misled him, but actually lied to him during his preparation of the June 2014 article.  The FBI memorandum does not reflect that Parloff asserted the reporter's privilege at any point during his meeting with the government.

In response to a grand jury subpoena, Parloff produced to the government the recordings and notes of his interviews with Ms. Holmes and Mr. Balwani (which the government then provided to the defense in discovery).  He did not provide any other notes or recordings associated with his preparation of the two articles.  Parloff did not assert any reporter's privilege in response to the grand jury subpoena.

The government has listed Parloff as a potential prosecution witness.  Dkt. 999 at 5.  The government referred to Parloff and his June 2014 article in its opening statement.  9/8/21 Tr. at 546.  It asserted that "[s]ome of the misrepresentations [allegedly made by Ms. Holmes] were also made to a news reporter named Roger Parloff of 'Fortune' magazine who wrote an article titled 'This CEO Is Out for Blood.'  This was published in June of 2014 before a number of the investments that you will hear about. . . .  The defendant used the Parloff article to obtain further investments, and her deceit of reporters was an important way that she executed her fraud."  *Id*.  According to Parloff's counsel, his testimony for the government may include authentication of recordings of his interviews of Ms. Holmes, "[w]hat he took her statements to mean in the setting of the questions that he asked of her," "[w]hat he wrote and published," and "whether inconsistencies in [Ms. Holmes'] various statements over time led [Parloff] to such a belief [that Ms. Holmes lied or deliberately misled him]."  Dkt. 1063 at 11-12.[2]

On August 24, 2021, counsel for Ms. Holmes sent a trial subpoena duces tecum to Parloff by email. Cline Dec., Exhibit F.  Parloff asserted objections to the subpoena; Ms. Holmes moved to compel compliance, Dkt. 1028, 1082; and Parloff moved to quash, Dkt. 1063.  Parloff asserted the reporter's privilege and contended that the subpoena did not comply with Rule 17(c) as interpreted in *Nixon* and

---

[2] In a motion in limine filed at the same time as these objections, Ms. Holmes contends that Parloff's testimony should be limited to authenticating the recordings of Ms. Holmes and his June 2014 article.  The scope of Parloff's testimony may bear on the relevance of the requested documents.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

*Sleugh.*

On October 14, Magistrate Judge Cousins heard argument on the motions. At the conclusion of the argument, Magistrate Judge Cousins granted Parloff's motion to quash and denied Ms. Holmes' motion to compel. Magistrate Judge Cousins concluded that Ms. Holmes failed to satisfy any of the three *Nixon* requirements under Rule 17(c). In addition, Magistrate Judge Cousins found that Ms. Holmes had not "established the necessity of this information." He declined to reach the reporter's privilege. Dkt. 1089; Tr. 10/14/21 at 50-52.[3]

## OBJECTIONS

Ms. Holmes objects to Magistrate Judge Cousins' conclusion that the subpoena duces tecum to Parloff does not meet the *Nixon* requirements of relevance, admissibility, and specificity. We address those requirements in turn. We object as well to Magistrate Judge Cousins' conclusion that the materials sought under Rule 17(c) must satisfy a "necessity" standard. We note at the outset that Rule 17(c) implements Ms. Holmes' Fifth and Sixth Amendment right to compel the production of evidence for her defense. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Sleugh*, 896 F.3d at 1012. The rule must be applied with that constitutional guarantee in mind.

I.    RELEVANCE.

The documents the subpoena requests are relevant under Fed. R. Evid. 401 (1) to challenge the government's contention that Ms. Holmes misled or lied to Parloff; (2) to demonstrate that Ms. Holmes and Theranos encouraged Parloff to speak with scientists, business executives, and others with knowledge of Theranos and its technology; and (3) to show Parloff's bias--in particular, to show that once the Wall Street Journal began publishing articles critical of Theranos in October 2015, Parloff sought to avoid professional embarrassment by shifting the focus from his own reporting to Ms. Holmes' alleged effort to mislead him. At a minimum, Ms. Holmes has made the showing found sufficient to compel the production of tapes in *Nixon*: that "the identity of the participants and the time and place of the conversations, taken

---

[3] Because Magistrate Judge Cousins did not reach the reporter's privilege, we do not address it in these objections. Ms. Holmes demonstrated that no reporter's privilege applies here at Dkt. 1028 at 7-9 and Dkt. 1082 at 2-4.

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

3

1   in their total context, permit a rational inference that at least part of the conversations relate to the offenses

2   charged in the indictment." *Nixon*, 418 U.S. at 700.

3       Categories 1 through 6 in the subpoena attachment request notes and recordings for interviews

4   Parloff conducted, by telephone and in person, in advance of the June 2014 article.  We expect these notes

5   and recordings to show that, with the encouragement of Ms. Holmes and Theranos, Parloff obtained

6   substantial information about Theranos and its technology from persons other than Ms. Holmes and that

7   the information he obtained was consistent with the information Ms. Holmes provided before the article

8   was published.

9       **David Boies (Category 1).**  Attorney David Boies represented Theranos and Ms. Holmes in an

10  intellectual property case in this District from fall 2011 until March 2014.  Soon after the case concluded,

11  Parloff contacted Boies with the idea of writing an article about it.  According to the memorandum of

12  Parloff's interview with the government, Boies urged him to write instead about Ms. Holmes.  The June

13  2014 article refers to Boies and paraphrases information he provided about Ms. Holmes and Theranos.

14  Cline Dec., Exhibit E, at MEDIA-000017-18.  The information Boies provided Parloff in their meeting

15  on March 31, 2014 is relevant for the reasons outlined above, particularly because by that point Boies had

16  detailed knowledge of Theranos' technology.

17      **Greg Wasson (Category 2).**  Wasson was CEO of Walgreens at the time of Parloff's reporting for

18  the June 2014 article.  Parloff cited his interview with Wasson in discussing Walgreen's plan to expand its

19  partnership with Theranos.  Cline Dec., Exhibit E, at MEDIA-000015.  The government alleges that Ms.

20  Holmes misled investors concerning whether and to what extent the Theranos-Walgreens partnership was

21  expected to continue expanding, or whether, as the government alleges, it had "stalled."  Wasson's

22  statements to Parloff will show that Ms. Holmes did not mislead Parloff about the Walgreens partnership

23  or, as the government alleges, use Parloff's article to mislead potential investors.

24      **Dr. David Helfet (Category 3).**  Parloff interviewed Dr. David Helfet for the June 2014 article.

25  At the time of Parloff's interview, Dr. Helfet was chief of orthopedic trauma at the Hospital for Special

26  Surgery in Manhattan.  Dr. Helfet had reviewed data on Theranos' small-sample tests.  Parloff's article

27  quotes Dr. Helfet as stating, "It's real data. . . .  It's not their interpretation."  Cline Dec., Exhibit E, at

28  MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES
TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

MEDIA-000016.  The government alleges that Ms. Holmes deceived Parloff (and investors who read his reporting) on this topic.  The notes and recording of Parloff's interview with Dr. Helfet will show that his statements about Theranos' technology were consistent with Ms. Holmes' statements.  The evidence will tend to refute the government's contention that Ms. Holmes misled Parloff (and, through him, investors) about Theranos' technology.

**Mark Laret (Category 4).**  In 2014, Laret was President and CEO of UCSF.  Theranos had been in discussions with UCSF about potential partnership opportunities.  Parloff interviewed Laret and quoted him in the June 2014 article.  Cline Dec., Exhibit E, at MEDIA-000015-16.  Laret's statements to Parloff will tend to show that Ms. Holmes did not mislead Parloff about Theranos' potential partnerships with UCSF and other hospitals.

**William Perry (Category 5).**  Former Secretary of Defense William Perry was a member of Theranos' board of directors in 2014.  According to the FBI memorandum of Parloff's meeting with the government, he interviewed Perry for the June 2014 article.  Parloff told the government that the subject of MedEvac helicopters came up in the interview, which Parloff recorded.  Perry's statements to Parloff will tend to rebut any suggestion that Ms. Holmes misled Parloff about the use of Theranos technology by the Department of Defense.

**Bert Zimmerli (Category 6).**  In 2014, Zimmerli was the CFO of Intermountain Health.  Intermountain was a Theranos investor (through PEER ventures), with the investment closing in 2013.  After the investment, Zimmerli met with Theranos to discuss a strategic partnership between the entities.  The June 2014 article notes that Intermountain was "working closely with Theranos with the aim of deploying its lab services."  Cline Dec., Exhibit E, at MEDIA-000015.  Parloff's communications with Zimmerli will show that Parloff had a source other than Ms. Holmes for his reporting on the Intermountain relationship, that the information from that source was consistent with the information Ms. Holmes provided, and that Ms. Holmes did not mislead Parloff on that point.

The remaining categories are relevant for the reasons that follow:

**Heather King (Category 7).**  Heather King spoke with Parloff on May 5, 2015.  At that time, she was a former partner at Boies' firm and had just become in-house general counsel at Theranos.  Parloff

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

contacted King about a negative story that had been published concerning Theranos, and King responded. The information provided reflects another source for Parloff's reporting and shows Theranos' efforts to address his questions as he raised them.

**David Boies (Category 8).**  On October 13, 2015, Boies became a member of the Theranos board of directors, as well as its outside legal counsel.  On October 15, 2015, the Wall Street Journal published the first of a series of critical articles about Theranos and Ms. Holmes.  On October 30, 2015, Parloff spoke with Boies.  The content of the conversation is relevant to show Boies' role in directing the response to the Wall Street Journal's criticisms and to impeach Parloff by exposing his desire to avoid professional embarrassment by shifting responsibility to Ms. Holmes.

**Other laboratories (Categories 9 and 10).**  Throughout 2014 and 2015, Parloff had regular communications with Theranos' competitors, whom he described to Theranos as "incumbents" in the clinical laboratory industry.  That industry was then, and remains today, dominated by two incumbents— Quest Diagnostics and Laboratory Corporation of America.  The June 2014 article attributes a quote skeptical of Theranos to a consultant affiliated with Quest.  Cline Dec., Exhibit E, at MEDIA-000016.  In their discussions with Parloff, agents of these "incumbents" leveled constant criticisms at Theranos.  These communications are relevant to show that Parloff was alerted to every point on which he alleges Ms. Holmes misled him.

**Dawn Schneider (Category 11).**  Dawn Schneider was a Boies Schiller employee in spring 2014, when Parloff was preparing his June 2014 article on Ms. Holmes and Theranos.  Boies Schiller, through Schneider and others, provided media advice to Ms. Holmes and Theranos, including with respect to the Parloff interactions.  Schneider coordinated Theranos' interactions with Parloff in advance of the June 2014 article, and she continued to discuss Theranos with Parloff after the article was published.  In 2015, Theranos hired Schneider directly to consult on media relations.  Parloff's communications with Schneider will show that he had full access to Theranos, the opportunity to ask any question he wanted on issues he did not fully understand, and a channel through which to express the concerns that he claimed to harbor in his January 2016 article.  In addition, Parloff's communications with Schneider following publication of the critical Wall Street Journal articles beginning in October 2015 will demonstrate his desire to avoid

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

6

1 professional embarrassment by attributing any errors in his reporting to Ms. Holmes, rather than to his

2 own journalistic failings.

3      **David Boies (Category 12).**  As discussed above, Boies played two important roles at Theranos

4 (legal counsel and board member), introduced Parloff to Theranos and Ms. Holmes in 2014, and

5 maintained a close relationship with Parloff.  His discussions with Parloff about Theranos throughout the

6 2014 through 2016 period are relevant for the reasons identified above.

7      Magistrate Judge Cousins concluded that the requested documents are not relevant because "[t]he

8 state of mind of Roger Parloff or any other witness who might be hearing from another witness is just not

9 relevant to the proceedings." Tr. 10/14/21 at 51.  That is not correct.  As discussed above, the requested

10 documents are relevant to show Parloff's bias.  "Proof of bias is almost always relevant because the jury,

11 as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which

12 might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52

13 (1984).  Moreover, if the Court permits Parloff to testify (as his counsel suggests) about "[w]hat he took

14 [Ms. Holmes'] statements to mean in the setting of the questions that he asked of her" and "whether

15 inconsistencies in [Ms. Holmes'] various statements over time led [Parloff] to such a belief [that Ms.

16 Holmes lied or deliberately misled him]," Dkt. 1063 at 11-12, then his "state of mind"--his understanding

17 of Ms. Holmes' meaning and his belief that she had misled him--plainly is relevant, and Ms. Holmes has

18 a Fifth and Sixth Amendment right to compel the production of evidence that bears on those issues.

19 II.    ADMISSIBILITY.

20      Magistrate Judge Cousins concluded that the subpoenaed documents did not satisfy the

21 admissibility requirement of *Nixon*, but he did not explain that conclusion apart from finding (incorrectly,

22 in our view) that the documents are not relevant.  Tr. 10/14/21 at 50.  Parloff asserted that the documents

23 are hearsay, as well as irrelevant.  Dkt. 1063 at 18.  That is incorrect.  The documents Ms. Holmes seeks

24 are non-hearsay, because she will not offer the statements they contain for their truth.  Fed. R. Evid. 801(c).

25 Instead, as discussed above, those statements will be offered (1) to challenge the government's contention

26 that Ms. Holmes misled or lied to Parloff; (2) to demonstrate that Ms. Holmes and Theranos encouraged

27 Parloff to speak with scientists, business executives, and others with knowledge of Theranos and its

28 MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES
TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD

1  technology; and (3) to show Parloff's bias.

2  III.   SPECIFICITY.

3        Ms. Holmes' subpoena specifically identifies the documents to be produced.  Categories 1 through

4  8 request notes and recordings for specific meetings and phone calls on specific dates with specific people.

5  *See, e.g., Nixon*, 418 U.S. at 688 (tapes described in similar terms; subpoena enforced).  Categories 9

6  through 12 cover a broader range of material but are defined with as much specificity as possible.  Courts

7  have repeatedly found similar document descriptions to satisfy *Nixon*.  *See, e.g., United States v. Gas Pipe,*

8  *Inc.*, 2018 U.S. Dist. LEXIS 182523, at *8-*17 (N.D. Tex. June 18, 2018) (Rule 17(c) subpoena for "[a]ny

9  documents" in several categories sufficiently specific); *United States v. Carriles*, 263 F.R.D. 400, 405

10  (W.D. Tex. 2009) (Rule 17(c) subpoena sufficiently specific where it "specifies a limited set of original

11  recordings, known to exist, of a specific content, involving known participants during a delineated time

12  frame"); *United States v. Caruso*, 948 F. Supp. 382, 396, 398-99 (D.N.J. 1996) (enforcing Rule 17(c)

13  subpoena for "[a]ll documents" in several categories).

14        Magistrate Judge Cousins found this to be "faux specificity," because Ms. Holmes is "guessing"

15  that the requested documents exist and that they will be "helpful to the defense."  Tr. 10/14/21 at 50-51.

16  But there is no requirement that the party issuing a Rule 17(c) subpoena know with certainty that the

17  requested documents exist.  As this Court has observed (through Judge Breyer), "the proponent of a

18  subpoena cannot be expected to identify the materials he seeks in exacting detail, when (as demonstrated

19  by the fact that he must employ a subpoena) he does not have access to them."  *United States v. Reyes*,

20  239 F.R.D. 591, 599 (N.D. Cal. 2006) (citing *Nixon*, 418 U.S. at 700).  Nor is there any requirement that

21  the documents be "helpful" to the subpoena proponent's case.  All that must be shown for a subpoena

22  requesting production of documents at trial is relevance, admissibility, and specificity.  Magistrate Judge

23  Cousins erred in imposing additional requirements.

24  IV.   NECESSITY.

25        In a similar vein, Magistrate Judge Cousins erred in requiring that Ms. Holmes show "the necessity

26  of [the subpoenaed] information."  Tr. 10/14/21 at 52; *see id*. at 50 (citing "need" as a showing Ms. Holmes

27  must make).  Neither *Nixon* nor *Sleugh* imposes any such requirement on a subpoena that calls for

28  MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES
    TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
    CR-18-00258 EJD

production of documents *at trial*.  If "necessity" must be shown--which we dispute--it is the necessity for *pretrial production*, not the necessity for *the information* in making the party's case.  *See, e.g., United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (party requesting documents under Rule 17(c) must show relevance, admissibility, and specificity; to justify pretrial production, party must "also demonstrate that the subpoenaed materials are not available from any other source and their examination and processing should not await trial in the circumstances shown"); *United States v. Cuthbertson*, 630 F.2d 139, 145 (3d Cir. 1980) (discussing showing for pretrial production of evidentiary material).  When, as here, the subpoena seeks production of documents at trial, the proponent has no obligation to meet a "necessity" standard.  Magistrate Judge Cousins erred in concluding otherwise.

## CONCLUSION

For the foregoing reasons, Ms. Holmes respectfully requests that the Court order Parloff to produce the documents and recordings set forth in the attachment to the subpoena.


DATED: October 21, 2021                     /s/ John D. Cline_____
                                            JOHN D. CLINE
                                            Attorney for Elizabeth Holmes

MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
CR-18-00258 EJD
9

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on October 21, 2021, I filed these objections and the accompanying

3  declaration and exhibits via ECF, which will serve all parties.

4

5                                        /s/ John D. Cline
                                          JOHN D. CLINE
6                                         Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  MS. HOLMES' OBJECTIONS TO ORDER GRANTING MOTION TO QUASH SUBPOENA DUCES
    TECUM TO ROGER PARLOFF AND DENYING MOTION TO COMPEL COMPLIANCE
    CR-18-00258 EJD