STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5061
Fax: (408) 535-5066
Kelly.Volkar@usdoj.gov
Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. 18-CR-00258 EJD<br><br>UNITED STATES' SUPPLEMENTAL BRIEF REGARDING MEDIA COALITION'S MOTION TO UNSEAL COMPLETED QUESTIONNAIRES OF SEATED JURORS AND ALTERNATES |

The Court's individual interviews with each juror and alternate have provided concrete support for the compelling interests that the government raised in its initial response (ECF No. 1033), and support maintaining the completed juror questionnaires under seal for the remainder of the trial and publicly releasing them after the completion of the trial with limited redactions to address the jurors' expressed privacy, safety, and security concerns.

**BACKGROUND**

On September 30, 2021, the Court heard oral argument on the Media Coalition's Motion to Unseal the Completed Questionnaires of the twelve jurors and five alternate jurors (collectively, "the jurors")[1] who have been selected and sworn to render the verdict in this case.[2] ECF No. 1055. During the hearing, the Court informed the parties and the Media Coalition that it intended to interview the jurors to ascertain if they have any concerns with the release of information that they were previously told would be confidential. 09/30/2021 Hearing Transcript ("9/30 Tr.") at 29:11–30:1. Thus, over a two-day period on October 12 and 13, 2021, the Court conducted *in camera* interviews with the jurors to provide them with the opportunity to be heard regarding the Media Coalition's request to unseal the completed questionnaires and to create a record of any concerns expressed by the jurors with the release of information in their completed questionnaires. *See id*. at 23:4–25, 29:11–30:1.

During the interviews, all but two of the jurors expressed some level of concern regarding either their or their family's privacy or safety/security or said that the release of certain information in their completed questionnaires would cause personal embarrassment. *See* 10/12/2021 Juror Interviews Sealed Hearing Transcript ("10/12 Tr."); 10/13/2021 Juror Interviews Sealed Hearing Transcript ("10/13 Tr."). With this information in hand, on October 14, 2021, the Court asked the parties and the Media Coalition to submit supplemental briefs to assist it in its decision on the Media Coalition's Motion. ECF No. 1088.

[1] The government notes that three jurors have since been excused. 09/14/2021 Hearing Transcript at 665:16–666:13; 10/06/2021 Hearing Transcript at 2793:17–2794:25; 10/22/2021 Hearing Transcript at 4356:22–4357:2.

[2] The Media Coalition consists of ten media companies—*i.e.*, American Broadcasting Company, Inc. d/b/a ABC News; the Associated Press; Bloomberg L.P.; The Daily Mail; Dow Jones and Company, Inc.; NBCUniversal Media, LLC; The New York Times Company; Portfolio Media, Inc.; Three Uncanny Four LLC; and the Washington Post Company. ECF No. 1026 at 3.

After reviewing the transcripts of the jurors' interviews, the government maintains that the completed questionnaires should remain under seal for the duration of the trial to protect the privacy and safety/security of the jurors and their families, the right to a fair and impartial trial, and the integrity of the trial. The government submits that its recommendation, as discussed in more detail below, appropriately balances the interests of the parties, the jurors, and the Media Coalition and public, and is narrowly tailored to address those interests. Therefore, the government respectfully asks the Court to deny the Media Coalition's request to immediately unseal the completed juror questionnaires and to order them unsealed in redacted form at the conclusion of trial.

## ARGUMENT

### I. The First Amendment Presumption of Openness Is Not Absolute

As discussed in the government's initial response (ECF No. 1033 at 2–3), the government agrees that the First Amendment affords the media a right of access to criminal trials, and specifically to jury selection. *See Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cty.*, 464 U.S. 501, 505–10 (1984) ("*Press-Enterprise I*"). However, neither the Supreme Court nor the Ninth Circuit have explicitly extended this First Amendment presumption of access to juror questionnaires. *See* ECF No. 1033 at 3. Regardless, even assuming arguendo that juror questionnaires are part of *voir dire* and that a right of access attaches to completed juror questionnaires, the First Amendment right of access is not absolute. *Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cty.*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*"); *see also Press-Enterprise I*, 464 U.S. at 505. As the Supreme Court explained in *Press-Enterprise I*, "since the development of trial by jury, the process of selection of jurors has presumptively been a public process *with exceptions* only for good cause shown." *Press-Enterprise I*, 464 U.S. at 505 (emphasis added). Indeed, the presumption of openness "may be overcome" by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. at 510. In other words, a court can deny public access to sensitive information in a criminal proceeding where (1) an overriding "compelling governmental interest" is shown and is supported by specific findings, and (2) the denial of access is "narrowly tailored to serve that interest." *Id.*

Here, the government has identified several compelling interests that "override" the Media Coalition's interest in access to the completed juror questionnaires—and the jurors' responses to the

Court's individual interviews concretely demonstrate those interests are well-founded. Those interests include protecting the privacy, safety, and security of the jurors and their families; ensuring that the parties receive a fair trial by an impartial and attentive jury; and protecting the integrity of this ongoing trial by preventing potential jury tampering.[3] *See* ECF No. 1033 at 3–9. Yet, the government's recommendation does not go so far as to ask the Court to deny the Media Coalition access to the completed juror questionnaires indefinitely or entirely. Instead, the government recommends that the Court maintain the completed juror questionnaires under seal until the conclusion of trial, at which point the government recommends that the Court unseal the completed questionnaires in redacted form to address the legitimate privacy concerns of the jurors. The government submits that this recommendation appropriately balances the compelling interests of the parties, the jurors, and the Media Coalition, and is narrowly tailored to address those interests.

## II. The Government's Recommendation Is Permissible Under the Law

While the government acknowledges that such instances are sparse, other courts have delayed disclosure or partially closed portions of *voir dire* where, like here, there are compelling interests that, on balance, override the public's right of immediate access. For example, in *United States v. Taveras*, a case in which the defendant asked the court to seal the juror questionnaire until the close of trial, the court decided to adhere to the normal practice of the district and released blank versions of the questionnaire to the media during *voir dire*, but ruled that "[t]he completed forms w[ould] not be available since, conceivably, they could be traced to individual jurors who have revealed highly personal information on the promise of confidentiality." 436 F. Supp. 2d 493, 505 (E.D.N.Y. 2006), *aff'd in part and vacated in part on other grounds in United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008). Thus, the court prioritized the privacy of the jurors and the court's promise of confidentiality over the media's interest in access to the completed questionnaires. *See id.*

[3] The Media Coalition concedes that "legitimate claims to privacy on the part of jurors and avoiding jury tampering are unquestionably compelling interests." 9/30 Tr. at 6:11–13. At the time of the hearing on the Media Coalition's Motion, the Defendant had not taken a position on the Motion (ECF No. 1032), but the government also noted that a criminal defendant's Sixth Amendment right to a fair trial also can be a compelling interest. *See Press-Enterprise I*, 464 U.S. at 508 ("No right ranks higher than the right of the accused to a fair trial."); ECF No. 1033 at 3.

Similarly, in *United States v. Wecht*, a case in which the media requested access to jurors' names and home addresses and to the completed questionnaires of prospective jurors in a high-profile case, the court ruled that it would empanel an anonymous jury and allow the media to review copies of the completed questionnaires, excluding pages with jurors' names and addresses, inside of the courtroom at the conclusion of trial. No. 06-0026, 2007 U.S. Dist. LEXUS 98902 at *48, *57–58 (W.D. Pa. Dec. 21, 2007), *vacated in part by* 537 F.3d 222, 226–27 & n.9 (3d Cir. 2008). The court came to its decision "after balancing the right of the public to access to the voir dire process with the corresponding interests of privacy to the prospective jurors, as well as the interests of parties (and the public) in selecting a fair and impartial jury." *Id*. at *57–58. Importantly, the court noted that the media had access to a blank version of the questionnaire via the ECF docket and that the media would be allowed in the courtroom during for-cause rulings and the final *voir dire* process. *Id*. at *46 n.8, *58–59. The Third Circuit vacated the opinion in part with respect to the jurors' names but did not disturb the district court's planned procedure with respect to the juror questionnaires. *United States v. Wecht*, 537 F.3d 222, 227 n.9 (3d Cir. 2008).

Likewise, in *Matter of Daily News, L.P. v. Wiley*, a case in which seven media organizations sought a writ of mandamus compelling a trial court to, among other things, unseal completed juror questionnaires after the trial court denied the media organizations' request, a state appellate court ruled that the trial court did not commit clear error in denying the media organizations' request as "[t]he trial court struck an appropriate balance of the privacy interests of the jurors with the qualified right of public access by releasing a blank questionnaire to the press." 6 N.Y.S.3d 19, 23 (N.Y. App. Div. 2015). The appellate court emphasized that "[m]ost importantly," the media was present when jurors were questioned in open court and that all for-cause and peremptory challenges were exercised in open court. *Id*. Thus, the state appellate court found that the trial court's decision was "permissibly limited" and "balanc[ed] the defendant's compelling right to a fair trial against the public's right of access to a criminal proceeding." *Id*.

Here, the Court provided the media and public with access to a blank version of the questionnaire before *voir dire* began. ECF No. 928. The Court then conducted all of *voir dire* in open court, including for-cause challenges. *See* ECF No. 946, 993, 995, 996. While the Court and the parties would reference

prospective jurors' answers to the completed questionnaires in reaching decisions, the media and public had access to which questions were being referenced based on the blank questionnaire form and thus had access to the general topic underlying the decision. Therefore, this case is akin to those described above finding a partial closing appropriate and is similar to the partial closing of *voir dire* that the Ninth Circuit approved in *United States v. Lee*, 290 F. App'x 977 (9th Cir. 2008). In *Lee*, a district court conducted juror questioning and preemptory challenges in open court but held for-cause challenges in chambers. *Id.* at 978. The Ninth Circuit found "no plain error" despite "the Supreme Court [holding] that the right to a public trial encompasses voir dire . . . and recognizing that the Sixth Amendment right to a public trial is at least as broad as the public's First Amendment right recognized in *Press-Enterprise.*" *Id*. (citations omitted).

In sum, the combination of these cases above goes to show that the government's recommendation is permissible.

**III. There Are Sufficient Facts on the Record to Warrant Maintaining the Completed Questionnaires Under Seal Through the Conclusion of Trial**

If, based on the record before it, the Court: (1) makes "specific findings" that demonstrate that there is a "substantial probability" that the compelling interests articulated by the government "will be prejudiced by publicity" and that closure would prevent such prejudice, and (2) considers "reasonable alternatives to closure" and determines that they cannot adequately protect those interests, then closure is proper. *See Press-Enterprise II*, 478 U.S. at 14.

**A. The Juror Interviews and Events that Have Already Occurred in the Trial Show a "Substantial Probability" of Harm to Compelling Governmental Interests**

Here, over a two-day period, the Court heard from each of the current jurors (and alternates) about their concerns, or lack thereof, about the potential unsealing of their completed questionnaires. All but two of the jurors expressed some level of concern regarding the release of information in their questionnaires. *See* 10/12 and 10/13 Trs. Many of the jurors raised privacy or security concerns regarding the release of their personally identifiable information, general place of residence, occupation, and/or educational background. *See*, *e.g.*, 10/12 Tr. at 3220:11–14, 3232:7–3233:8, 3241:9–3242:8, 3248:3–9; 10/13 Tr. at 3294:23–3296:3, 3313:13–3314:4, 3327:19–3328:6. Several jurors also raised privacy and

security concerns relating to the release of information about their family members, including their children, some of whom are minors. *See*, *e.g.*, 10/12 Tr. at 3218:18–3219:19, 3220:15–3222:2, 3234:2–25, 3243:19–3244:1, 3270:6–18, 3271:17–3272:21; 10/13 Tr. at 3319:17–22, 3327:19–3328:6. As anticipated, some jurors expressed privacy concerns regarding personal health issues they disclosed or their answers to Question 32. *See*, *e.g.*, 10/12 Tr. at 3218:14–3220:10, 3255:9–17; 10/13 Tr. at 3324:16–3325:2.

At the core of many of the jurors' concerns was an overall concern about the extent of media coverage of the trial and what that means for their exposure during and after the trial. *See*, *e.g.*, 10/12 Tr. at 3213:6–12, 3230:16–3231:1, 3244:12–16, 3252:18–3254:13; 10/13 Tr. at 3296:20–3297:15; 3304:12–3305:13, 3333:6–10. More than one juror expressed concern about whether unwanted media attention directed at them and their partners could have negative implications for them or their partner at their place of employment. *See*, *e.g.*, 10/12 Tr. at 3220:23–3221:20, 3234:1–25, 3271:2–5; 10/13 Tr. at 3295:6–3296:3, 3327:19–3328:25, 3333:6–3334:17. At least one juror indicated that releasing information from the questionnaires would tend to make that juror less candid on jury questionnaires in the future. *See*, *e.g.*, 10/13 Tr. at 3359:14–18.

Of particular note, several of the jurors raised concerns that the release of certain information from their completed questionnaires would potentially make it more difficult for them to adhere to the Court's admonitions not to discuss the case with others and/or access media reports on the case. *See*, *e.g.*, 10/12 Tr. at 3231:12–23, 3233:10–20, 3238:11-13, 3271:4-10; 10/13 Tr. at 3320:13–16; *see also* ECF No. 1033 at 5 (identifying risk that it would be more difficult for jurors to ignore media *about them*). In sum, the jurors raised many of the same concerns that the government did in its initial Response to the Media Coalition's Motion. ECF No. 1033.

Furthermore, it is also important to note that while counsel for the Media Coalition represents respectable media organizations, he does not and cannot control what happens with the information once it is in the public sphere.[4] If the Court were to unseal the completed juror questionnaires *during* trial,

---

[4] For example, the government referred in its initial filing to the Court's admonition against jury tampering in response to a woman who shouted about the "Me Too" movement (*id.* at 4), and some social media accounts have indicated that the same woman returned wearing a "Me Too" shirt but sat in the overflow courtroom. *See* Atkins, Dorothy, TWITTER (Oct. 13, 2021), *available at*

every journalist and member of the public would have access to them—thus, drawing unnecessary attention to the jurors and potentially compromising the privacy and safety of the jurors, the right to a fair and impartial trial, and the integrity of the trial. The Court has already seen an instance in which a journalist reached out to an individual who is not on either party's witness list based on a patient name in a trial exhibit that was inadvertently disclosed to the public in this case. *See* 10/05/2021 Hearing Transcript ("10/5 Tr.") at 2579:5–2582:8. That incident goes to show the resourcefulness of journalists and the overall interest that members of the public have with individuals associated with this trial, beyond just the defendant and witnesses in this case. *See also* Khorram, Yasmin, *Third Juror Dismissed in Elizabeth Holmes Trial After Found Playing Sudoku*, CNBC (Oct. 22, 2021), *available at* https://www.cnbc.com/2021/10/22/third-juror-dismissed-in-trial-of-theranos-founder-elizabeth-holmes-.html. Moreover, two additional jurors have been dismissed since the Media Coalition originally filed its Motion, and thus the government asserts that avoiding any additional distraction or unwanted media attention to preserve the integrity of the trial process is a compelling enough reason to maintain the status quo for the remainder of the ongoing trial. Therefore, the government submits that based on the record before the Court, there are sufficient facts to make "specific findings" that there is a "substantial probability" that the compelling interests articulated by the government would be prejudiced by unsealing the juror questionnaires before the end of this trial—all of which is reasonably avoidable if the Court were to maintain the completed questionnaires under seal until the conclusion of trial and then release redacted versions of the questionnaires to the public at that time.

**B. The Court Is Considering Alternatives, But None of Them Adequately Protect the Compelling Interests Articulated by the Government**

As made clear during the jurors' interviews, the Court is considering alternatives to the government's recommendation. However, the government continues to submit that its recommendation strikes the most appropriate balance between the interests of the jurors, the parties, and the Media Coalition and the public, as it does not completely preclude access to the completed juror questionnaires. It only calls for a delayed disclosure of the completed questionnaires in order to protect the compelling interests

https://twitter.com/doratki/status/1448316443984945153.

of the jurors, the defendant, and the government. If the Court adopts the government's recommendation, the Media Coalition will have access to the completed questionnaires, just not in a time or in a manner that runs the risk of compromising an ongoing trial.

**CONCLUSION**

For all the reasons stated above, in the government's prior briefing, and on the record, the government respectfully asks the court to deny the Media Coalition's Motion to Unseal the Completed Questionnaires without prejudice and order the completed questionnaires unsealed in redacted form at the conclusion of trial.

DATED: October 25, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

_/s/ *Kelly I. Volkar and Amani S. Floyd*_
JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
KELLY I. VOLKAR
AMANI S. FLOYD
Assistant United States Attorneys