1  JOHN D. CLINE (CA State Bar No. 237759)
   50 California Street, Suite 1500
2  San Francisco, CA 94111
   Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
3  Email: cline@johndclinelaw.com

4  Attorney for Defendant ELIZABETH A. HOLMES

5

6                  UNITED STATES DISTRICT COURT

7                 NORTHERN DISTRICT OF CALIFORNIA

8                      SAN JOSE DIVISION

9

   UNITED STATES OF AMERICA,            )   Case No. CR-18-00258-EJD
10                                       )
             Plaintiff,                  )   **MS. HOLMES' SUPPLEMENTAL RESPONSE**
11                                       )   **TO MOTION OF MEDIA COALITION TO**
                                         )   **INTERVENE FOR LIMITED PURPOSE OF**
12      v.                               )   **SEEKING THE UNSEALING OF COMPLETED**
                                         )   **QUESTIONNAIRES OF SEATED JURORS AND**
13  ELIZABETH HOLMES and                 )   **ALTERNATES; MOTION TO UNSEAL**
    RAMESH "SUNNY" BALWANI,              )   **COMPLETED QUESTIONNAIRES OF SEATED**
14                                       )   **JURORS AND ALTERNATES**
             Defendants.                 )
15                                       )
                                         )
16                                       )
                                         )
17  _____)

18

19

20

21

22

23

24

25

26

27

28

   MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
   UNSEAL
   CR-18-00258 EJD

Pursuant to the Court's October 14, 2021 Order, ECF 1088, Ms. Holmes respectfully submits this supplemental response to the media coalition's motion to unseal juror questionnaires.  Following the juror colloquies on October 12-13, 2021, Ms. Holmes now opposes that motion. ███████████ █████████████████████████████████████████████████████████████████████████ ████████████████████ Disclosure would distract the jurors and expose them to outside information and influence, and the prospect of post-verdict harassment would threaten to taint their decision-making as they deliberate in this case.  District courts have broad authority to take prophylactic "remedial measures that will prevent [this] prejudice at its inception" in order to prevent jurors from being "thrust into the role of celebrities." *Sheppard v. Maxwell*, 384 U.S. 333, 353, 363 (1966).  The Court should deny the media coalition's motion and inform the jurors of that decision as soon as possible.

## I.   Ms. Holmes' Right to a Fair Trial Outweighs Any First Amendment Rights in the Circumstances of this Case

Even if the media possessed a First Amendment right to the questionnaires (*but see* Part II *infra*), that right must give way to Ms. Holmes' fair trial rights.  In cases where a First Amendment right of access exists, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984).  "No right ranks higher than the right of the accused to a fair trial." *Id.* at 508; *see also Waller v. Georgia*, 467 U.S. 39, 45 (1984).  Other interests overcoming a First Amendment right of access include "[t]he privacy interests" of jurors. *Press-Enterprise Co.*, 464 U.S. at 512. █████████████████████████████ ██████████████████████████████████ ███████████████████████ █████████████████████████████████████████████████████ ████████████████████.[2]

---

[1] Ms. Holmes has previously documented the extensive, inflammatory nature of media coverage of this case.  *See* ECF 799-800, 817-18, 956, 987.

[2] The transcripts dated October 12 and October 13, 2021 are maintained under seal.  Given the sealed nature of the colloquies, and out of an abundance of caution, Ms. Holmes has filed an unredacted version of this pleading under seal and a redacted version of this pleading on the public docket.

MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO UNSEAL
CR-18-00258 EJD

1

1    *First*, there is a substantial risk that, if the jurors' identities are disclosed or deduced from their

2    questionnaires before the verdict, the jurors will be exposed to information about this case by (a) the

3    media; (b) family, friends, or acquaintances; or (c) random members of the public.  That exposure will

4    severely prejudice Ms. Holmes' constitutional right to be tried only on the evidence presented at trial.

5    Although the coalition's counsel represented that his ten clients will not contact the jurors during

6    their service, he could not make that representation for other members of the media, nor could he

7    promise that his clients would refrain from publishing the information.  9/30/21 Hr'g Tr. 12-14, 24.  In

8    this age of blogging and social media, anyone with access to the internet can call themselves the

9    "media."  Internet sleuthing—including discovery of the identities of persons in the public eye—is a

10   popular pastime.  If *any* information from the questionnaires is made public, even if identity information

11   is redacted, less scrupulous media outlets and/or internet sleuths following this case will likely deduce

12   and publicize the jurors' identities.  Even if the ten coalition members promise to behave responsibly,

13   this Court cannot realistically protect the jurors from becoming "media prey" if their identities are

14   publicly revealed or deduced from partial disclosure of their questionnaires.  *United States v.*

15   *Blagojevich*, 614 F.3d 287, 292 (7th Cir. 2010) (Posner, J., dissenting from denial of reh'g en banc).[3]

16   Additionally, once the jurors' identities become public, their identities will spread rapidly across

17   social media and other media outlets.  Family members, friends, and acquaintances will learn about the

18   jurors' roles in this case.  ████████████████████████████████

19   ███████████████████████████████████████████████████████

20   ██████████████████████████████████

21   Finally on this point, the risk of unsolicited contact from the public is severe.  The government

22   has represented that "counsel for the government have received several unsolicited emails from

23

24   [3] In the *Blagojevich* case, the Seventh Circuit panel required the district judge to make findings

25   justifying withholding juror names from the public before the verdict.  612 F.3d 558, 564-65 (7th Cir.
     2010).  Judge Posner would have held that the existing record already sufficed to justify such action.  On

26   remand, Judge Zagel made such findings and kept the juror names confidential until after the verdict,
     and again followed that course during the second trial.  *See* 2011 WL 812116, at *4 (N.D. Ill. Feb. 28,

27   2011).  The government's prior assertion that the Seventh Circuit panel "required the district court to
     release the names of seated jurors" is incorrect.  ECF 1033 at 4.

28   MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
     UNSEAL
     CR-18-00258 EJD

1   members of the public expressing views on the merits and underlying facts of the case." ECF 1033, at 6.

2   Undersigned counsel represents that defense counsel have received *many* such unsolicited emails, phone

3   calls, and letters from members of the public. And, as the Court has observed, a member of the public

4   harassed jurors as they entered the courthouse. 9/30/21 Hr'g Tr. 18-19. These are concrete facts—not

5   "baseless conjecture," as the media previously posited. ECF 1036, at 5. These facts distinguish this

6   case from many others and allow the Court to make a factual finding that the substantial risk of exposure

7   to outside information warrants withholding the juror questionnaires. If the jurors' identities are

8   revealed before the verdict, members of the public who follow this case almost certainly will contact

9   jurors. It will be impossible to shield the jurors from such unsolicited contact.

10         This risk of exposure to "expressions of opinion from both cranks and friends" led the Supreme

11   Court to warn in *Sheppard* that prophylactic remedial measures are required to "prevent the prejudice at

12   its inception." 384 U.S. at 353, 363. In high-profile cases generating significant media attention like

13   this one, courts have frequently found that shielding juror information from the public is necessary to

14   protect the defendant's right to be tried only upon the evidence presented in the courtroom. *See, e.g.*,

15   *United States v. Blagojevich*, 743 F. Supp. 2d 794, 802 (N.D. Ill. 2010) (finding "evidence that if jurors'

16   names are made public, they will be subjected to improper outside contact" based in part on unsolicited

17   communications received by judge from members of the public); *United States v. Black*, 483 F. Supp. 2d

18   618, 630 (N.D. Ill. 2007) ("to disclose the jurors' names in a high-profile trial such as this would create

19   the unnecessary risk that, during the course of the trial, jurors will be subjected to improper and

20   presumptive prejudicial contact").

21         *Second*, it is evident that the fear of the onslaught of media and public attention that would

22   follow a verdict in this case if the jurors' identities are revealed poses a significant risk to the jurors'

23   decision-making process. As Judge Posner put it, "[a] degree of anonymity . . . allows jurors to focus on

24   the facts rather than on how the public might receive their verdict." *Blagojevich*, 614 F.3d at 293.

25   Following acquittals in other high-profile cases, members of the public threatened jurors' safety, made

26   death threats, and otherwise harassed jurors. *See* Scott Ritter, Note, *Beyond the Verdict: Why Courts*

27   *Must Protect Jurors from the Public Before, During, and After High-Profile Cases*, 89 Ind. L.J. 911,

28   MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
     UNSEAL
     CR-18-00258 EJD

                                            3

911-12 (2014); *see also United States v. Blagojevich*, 2011 WL 812116, at *1-2 (N.D. Ill. Feb. 28, 2011) (describing a threatening phone call to a juror following the split verdict in the first *Blagojevich* trial, which prompted a federal investigation, and describing "abusive" conduct by the media, which included flying a helicopter over a juror's house and knocking on a juror's door every fifteen minutes until almost midnight); *United States v. Brown*, 250 F.3d 907, 921-22 (5th Cir. 2004) (stating that "[t]hreats of intimidation and harassment do not necessarily end with the conclusion of trial" and affirming order denying access to juror questionnaires and names).

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████

    *Third*, if the jurors' names and questionnaires are released during trial, the resulting invasion of privacy, concern about their personal safety and security, and concern about family members' privacy will distract the jurors from their duties as jurors. "[J]urors may well feel a sense of invasion that accompanies a personal investigation, and knowledge that the media is conducting such an investigation carries a significant risk that jurors will not be able to function effectively." *Blagojevich*, 743 F. Supp. 2d at 805; *see also Black*, 483 F. Supp. 2d at 630-31 ███████████████████████████████ ████████████████████████████████████████████ Even the fear of such disclosure after trial will distract jurors from their duties. ██████████████████ ███████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████

6   ██

7        Given these considerations and the inevitable "drumbeat of publicity" that would accompany

8   disclosure of the questionnaires, *Brown*, 250 F.3d at 919-20, the court sensibly told jurors in advance

9   that their responses would remain confidential.  In that situation, other courts have recognized that

10   disclosure would interfere with jurors' exercise of their duties.  As Judge Zagel explained, jurors'

11   "ang[er] at having been induced by false pretenses to agree to take months out of their life to perform

12   jury service" is "likely to interfere with the jurors' ability to perform their duties."  *Blagojevich*, 743 F.

13   Supp. 2d at 805-06 (internal quotation marks omitted); *see also Brown*, 250 F.3d at 919-20 (noting that

14   the district court's denial of post-verdict access to juror names "rest[ed] on an earlier promise of

15   anonymity" made in a case involving a "drumbeat of publicity"); *Copley Press, Inc. v. Superior Court*,

16   228 Cal. App. 3d 77, 89-90 (1991) (concluding that it would be "unfair" "to not honor the trial court's

17   assurance of confidentiality" to the venire members notwithstanding subsequent determination that

18   media had First Amendment right to questionnaires); ████████████████████████████

19        For all these reasons, any disclosure of the questionnaires threatens Ms. Holmes' fair trial rights.

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████  Although Ms. Holmes submits that any disclosure of the questionnaires presents a substantial

23   risk of revealing the jurors' identities and compromising her fair trial rights, Ms. Holmes notes that

24   narrower alternatives to permanent withholding of the questionnaires exist.  First, the Court could

25

26   ────────────────────

27   ████████████████████████████████████████████████████████

28   MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
    UNSEAL
    CR-18-00258 EJD

1  release the questionnaires, with heavy redactions to conceal any information from which juror identities

2  might be deduced, only *after* the verdict. *See, e.g.*, *Gannett Co. v. DePasquale*, 443 U.S. 368, 390-93

3  (1979) (holding that post-judgment access to transcript of sealed pre-trial hearing satisfied the media's

4  First Amendment rights). And, if the Court releases the questionnaires after the verdict (it should not), it

5  should redact the jurors' names and all other information that could be used to identify the jurors, such

6  as residence, employment, and family information, to protect against the substantial risks to Ms.

7  Holmes' fair trial rights discussed above.

8  **II.     The First Amendment Does Not Provide a Qualified Right of Access to Juror Identities**

9          The Court can deny the media coalition's motion on the basis of the balancing test discussed

10  above without resolving the threshold question whether the media has a First Amendment right of access

11  in the first place. But the Court should also hold that there is no First Amendment right at all to juror

12  identities. This analysis asks whether (1) "the place and process have historically been open to the press

13  and general public" (the "experience" test) and (2) "public access plays a significant positive role in the

14  functioning of the particular process in question" (the "logic" test). *Press-Enterprise Co. v. Superior*

15  *Court*, 478 U.S. 1, 8 (1986).

16          Numerous courts have rejected media arguments that the First Amendment confers a right to

17  access juror identities. *See, e.g.*, *Brown*, 250 F.3d at 914, 921 (5th Cir. 2004) (holding, in high-profile

18  case, that "a trial court may refuse to allow the media to inspect documents not a matter of public record,

19  including jurors' names and addresses," affirming order denying request for post-verdict release of juror

20  identities and questionnaires, and observing that jurors "need not become unwilling pawns in the

21  frenzied media battle"); *Black*, 483 F. Supp. 2d at 623-30; *Gannett Co. v. State*, 571 A.2d 735, 743-51

22  (Del. 1990); *Morgan v. Dickerson*, --- P.3d ----, 2021 WL 3046844, at *4-6 (Ariz. Ct. App. 2021).

23  Other courts, including the Ninth Circuit, have accepted as given the premise that courts can withhold

24  juror identities. *See Phoenix Newspapers, Inc. v. U.S. District Court*, 156 F.3d 940, 951 (9th Cir. 1998);

25  *ABC, Inc. v. Stewart*, 360 F.3d 90, 104-05 (2d Cir. 2004); Order, *United States v. Bonds*, Case No. 07-

26  732, ECF 284, at 9 (N.D. Cal. Mar. 14, 2011).

27

28  MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
    UNSEAL
    CR-18-00258 EJD

1    Neither the experience test nor the logic test points to a First Amendment right to jurors'

2    identities.  There is no historical right of access to juror names:  notably, when Congress enacted the

3    Jury Selection and Service Act in 1968, the Act's drafters commented on "the present diversity of

4    practice" around the nation on whether to disclose juror names, noting that some courts "keep juror

5    names confidential for fear of jury tampering."  H.R. Rep. 90-1076, at 11 (1968).  Nor does disclosure of

6    juror identities logically play a positive role in the functioning of criminal trials.  To the contrary, as the

7    Supreme Court has observed, mid-trial disclosure of juror identities threatens to expose jurors to outside

8    information that corrupts the trial process.  *See Sheppard*, 384 U.S. at 353.  The Court commented that

9    reversals of convictions in such circumstances "are but palliatives; the cure lies in those remedial

10   measures that will prevent the prejudice at its inception."  *Id.* at 363.

11                                              *       *       *

12   Ms. Holmes is concerned that this issue has cast a cloud over these proceedings.  As long the

13   jurors fear that "they [will] become unwilling pawns in the frenzied media battle" following a verdict in

14   this case, *Brown*, 250 F.3d at 921, they may not be able to fairly judge Ms. Holmes' innocence or guilt.

15   ██████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████  And if their identities are disclosed

17   during trial, it is inevitable that multiple jurors will be exposed to prejudicial publicity about this case,

18   requiring a mistrial.  It is unclear if the prejudicial consequences of the events related to this motion can

19   be reversed, and Ms. Holmes reserves the right to move for a mistrial as future events develop.  At a

20   minimum, to attempt to mitigate the prejudice to Ms. Holmes, the Court should deny the motion and

21   inform the jurors of that decision as soon as possible.

22

23

24

25

26

27

28   MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
     UNSEAL
     CR-18-00258 EJD
                                                7

1  DATED: October 25, 2021

2

3                                        /s/ John D. Cline
                                         JOHN D. CLINE
4                                        Attorney for Elizabeth Holmes

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
    UNSEAL
    CR-18-00258 EJD

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on October 25, 2021 a copy of this filing was delivered via ECF on all

3  counsel of record.

4
         Jeffrey B. Coopersmith
5        Stephen A. Cazares
         Amy Walsh
6        ORRICK, HERRINGTON & SUTCLIFFE LLP
         jcoopersmith@orrick.com
7        scazares@orrick.com
         awalsh@orrick.com
8

9        *Attorneys for Ramesh "Sunny" Balwani*

10       Jeffrey Benjamin Schenk
         John Curtis Bostic
11       Robert S. Leach
         Kelly I. Volkar
12       Amani S. Floyd
         UNITED STATES ATTORNEY'S OFFICE
13       NORTHERN DISTRICT OF CALIFORNIA

14
         jeffrey.b.schenk@usdoj.gov
15       john.bostic@usdoj.gov
         robert.leach@usdoj.gov
16       kelly.volkar@usdoj.gov
         amani.floyd@usdoj.gov
17

18       *Attorneys for United States*

19       Steven D. Zansberg
         LAW OFFICE OF STEVEN D. ZANSBERG, LLC
20       steve@zansberglaw.com

21
         *Attorney for Media Coalition*
22

23

24                                            /s/ John D. Cline
                                              JOHN D. CLINE
25                                            Attorney for Elizabeth Holmes

26

27

28
     MS. HOLMES' SUPPLEMENTAL RESPONSE TO MOTION TO INTERVENE AND MOTION TO
     UNSEAL
     CR-18-00258 EJD