David S. Korzenik
Terence P. Keegan
Miller Korzenik Sommers Rayman LLP
1501 Broadway, Suite 2015
New York, New York 10036
Telephone: 212-752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

*Pro Hac Vice Applications to be made forthwith*

Joshua Koltun (Bar No. 173040)
Attorney
1 Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorneys for Non-Party Witness Roger Parloff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) | Case No.: 5:18-cr-00258 EJD (NC) |
| Plaintiffs, | ) ) ) | **MOTION OF ROGER PARLOFF TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER; MEMORANDUM OF LAW IN SUPPORT THEREOF AND IN OPPOSITION TO MOTION TO COMPEL** |
| v. | ) ) ) | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | ) ) ) ) | |
| Defendants. | ) ) ) | Filed Herewith: Declaration of Roger Parloff [Proposed] Order |
| | ) ) ) ) ) ) ) ) ) ) | Date:    October 13, 2021 Time:    11:00 am Place:   Remote Hearing per Court Order Judge: The Hon. Nathanael Cousins |

Joshua Koltun ATTORNEY

TABLE OF CONTENTS

MOTION AND OPPOSITION ..................................................................................................... 1

INTRODUCTION ..................................................................................................................... 2

FACTUAL BACKGROUND ..................................................................................................... 3

ARGUMENT ............................................................................................................................ 7

    I. The Ninth Circuit, the Second Circuit and Other Circuits, Recognize a Robust First
    Amendment Reporter's Privilege in All Proceedings Other than Grand Jury Proceedings ..... 7

    II. Holmes Cannot Meet the Ninth Circuit's *Shoen II* Test or the Analogous Second Circuit's
    *Gonzales* Test as to either Confidential or Non-Confidential Information ........................... 10

    III. Holmes Has Failed To Meet Her Rule 17(c) Burden Under *Nixon* ...................................... 16

CONCLUSION ....................................................................................................................... 19

TABLE OF AUTHORITIES

**Cases**

*Branzburg v. Hayes,* 408 U.S. 665 (1972) ............................................................................. 8

*Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975) ............................................................. 9, 11

*Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999).................................................. passim

*In re Grand Jury Proceedings*, 5 F.3d 397 (9th Cir. 1993) ............................................. 8, 9

*In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111 (N.D. Cal. 2006) ............................. 8

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
   991 F. Supp. 2d 464 (S.D.N.Y. 2013) ................................................. 14, 15, 16

*Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975) ........................................................ 8

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003)........................................................... 8

*Michael v. Estate of Kovarbasich*, 2015 U.S. Dist. LEXIS 16890 (C.D. Cal. Dec. 11, 2015) ............... 5

*Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) ("*Shoen II*") ........................................... 7, 11, 14

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("*Shoen I*") ........................................... 7, 9, 15

*Sikelianos v. City of New York*, 05 CIV. 7673 RJS/JCF,
   2008 WL 2465120 (S.D.N.Y. June 18, 2018) ..................................................... 14

*U.S. v. Capers*, 708 F.3d 1286 (11th Cir. 2013) ............................................................. 10

*U.S. v. Cuthbertson*, 630  F.2d 139 (3d Cir. 1980).......................................................... passim

*U.S. v. Cutler*, 6 F.3d 67 (2d Cir. 1993) ...................................................................... 7, 17

*U.S. v. Glassdoor, Inc.*, 875 F.3d 1179 (9th Cir. 2017)..................................................... 8

*U.S. v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988) .......................................... 8

*U.S. v. Libby*, 432 F. Supp. 2d 26 (D.D.C. 2006) ........................................................... 17

*U.S. v. Nixon*, 418 U.S. 683 (1974) ................................................................... 16, 17, 18

*U.S. v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976) ............................................................ 9

*U.S. v. Schneider*, 2003 U.S. Dist. LEXIS 27324 (N.D. Cal. Nov. 18, 2003) ............... 10, 16

*U.S. v. Sleugh*, 896 F.3d 1007 (9th Cir. 2018) ............................................................... 18

Joshua Koltun ATTORNEY

- ii -

*U.S. v. Smith*, 135 F.3d 963 (5th Cir. 1998) ........................................................................ 8

**Regulations**

28 C.F.R. § 50.10 .................................................................................................................. 5

**Rules**

Fed. R. Crim. P. 17 ......................................................................................................... 1, 16

Fed. R. Evid. 401 ................................................................................................................ 17

Fed. R. Evid. 801 ................................................................................................................ 18

Joshua Koltun ATTORNEY

***MOTION AND OPPOSITION***

**Roger Parloff** – a journalist and third-party witness in this proceeding – by his counsel,

**Miller Korzenik Sommers Rayman LLP and Joshua Koltun**, hereby opposes Defendant's Motion

To Compel (Dkt. 1028) ("Mot.") and moves this Court to quash the Subpoena[1] and grant an order *in*

*limine* to confine the scope of Parloff's testimony so that it only involves Parloff's interviews with

Defendants Holmes and Balwani and does not reach his interviews with any other persons.

Given the stage at which Defendant's Motion To Compel was made and the late stage in this

proceeding at which the Subpoena was emailed to Parloff, we do not know how the Court would

prefer to engage the pending motion regarding document discovery and the motion *in limine* for a

protective order regarding testimony.  All motions and cross-motions address identical issues, to wit:

whether or not there exists a robust Reporter's Privilege in the Ninth and Second Circuits, and

whether the materials and information as to which the subpoena is addressed are matters as to which

Holmes has made a proper showing to overcome that Reporter's Privilege, or indeed that she is

entitled to such information under Fed. R. Crim. P. 17.  The same papers would serve to assert

Respondent Parloff's legal position as they effect ***both*** documents and testimony.  In view of trial

management needs, the Court may prefer to take up both motions before Magistrate Judge Cousins or

before Judge Davila.  Judge Davila may want the benefit of Magistrate Cousins' assessment first.  We

request the Court's guidance as to how it will hear and rule on these parallel applications.  At a

minimum, we believe it would conserve judicial resources if the parties conducted some argument

---

[1] Holmes and Parloff counsel stipulated to presentation of these issues  on a motion to compel rather than by way of motion to quash.  The motion to quash here is made as a pro forma matter to avoid any waiver of rights.

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

(outside the jury), concerning the potential assertion of Reporter's Privilege, to obtain at least a preliminary ruling that will enable to testimony and raising of objections to proceed smoothly. [2]

### *MEMORANDUM OF LAW*

#### *Introduction*

Let us begin by making clear what is ***not*** at issue on these cross motions. Roger Parloff voluntarily supplied his notes and recordings of his interviews with Defendants Holmes and Ramesh "Sunny" Balwani to the U.S. Attorney. He did not do so selectively; but provided them in full and complete context. He made sure that both sides received the same materials. He will appear at trial to testify as to his communications with Holmes, and does not expect to assert the Reporter's Privilege with respect to such communications.

What ***is*** at issue on these motions is Holmes' effort to obtain documents, and to examine Parloff at trial, concerning his communications with a number of persons *other than* Holmes or Balwani. As to this material and information, he ***does*** assert the Reporter's Privilege. Holmes has not shown that she can overcome that privilege as to these materials, or even that she can meet the requirements of Rule 17 for such materials.

This is a fishing expedition in which Holmes' counsel can at best hope to find something interesting, useful or colorful. The stated "relevance" of the materials sought is incoherent; their putative "admissibility" is at best hypothetical and improbable; and the so-called "specificity" of the requests wishful and manufactured. A good number of the "notes and recordings" demanded do not exist. Holmes' counsel is guessing. The claim that none of the materials are "confidential" is likewise simply false. Some are in whole or in part confidential or on background.

---

[2] The ***Subpoena*** can be found as ***Exhibit A*** to the Declaration of John D. Cline in Support of Holmes' Motion To Compel (Dkt. 1028-1, at 4); 2) ***Parloff's Objections*** to the Subpoena are attached as ***Exhibit B*** (*id.* at 9); and 3) ***Parloff's Declaration*** in opposition to Holmes' Motion To Compel and in support of his cross-motion to quash or modify accompanies this Memorandum.

### Factual Background

**Parloff Background:** Roger Parloff is a journalist who was employed by *Fortune* as its main legal correspondent from 2004 to 2016. His last title there was Editor at Large. Prior to that he had been on staff at the *American Lawyer* for 12 years. Parloff has received numerous awards for journalism. Since leaving *Fortune*, he has been published in *ProPublica*, *The New York Times*, *Yahoo Finance*, and in the online editions of *The New Yorker* and *New York* magazine, among others. Parloff has a law degree from Yale Law School and practiced law briefly before turning to journalism.

**Fortune's 2014 Cover Article about Theranos:** In 2014 Parloff interviewed Elizabeth Holmes and Ramesh Balwani about their company, Theranos. On the basis of those interviews, Parloff wrote a feature article about Holmes and Theranos. The article appeared in *Fortune* magazine as the cover story of its June 2014 issue. It was entitled, "*This CEO Is Out for Blood.*" It was highly favorable to the new enterprise and its principals, Holmes in particular. According to the Indictment and SEC Complaint, Theranos gave the *Fortune* cover article to investors who relied on it to their detriment. The *Fortune* cover story appears as **Exhibits C and D** (Dkt. 1028-1, at 17, 30).

While the cover story was based on the extensive interviews with Holmes, Parloff conducted other interviews with other sources, some of them suggested by Ms. Holmes and arranged with her assistance. Beyond Ms. Holmes, there was no other public relations intermediary for the cover story. Balwani was interviewed once.

**Parloff's Subsequent December 2015 Report:** On December 17, 2015, Parloff published, on *Fortune's* website, an article, "*How Theranos Misled Me.*" This article discussed new revelations about Theranos' business and Theranos' public responses to them and to questions that Parloff had put to them. Seeing that his readers would have been misled by the prior article, Parloff acted on what he saw as his duty to correct the prior reporting. *See* **Exhibit E** (Dkt. 1028-1, at 32).

Joshua Koltun ATTORNEY

***Parloff's Limited Waiver of the Reporter's Privilege***:  Most serious journalists and their publications, take the Reporter's Privilege seriously.  They resist efforts to subpoena their reporting materials or to disclose sources and unpublished materials obtained in the course of their newsgathering.  Journalists will in most cases resist efforts to force disclosure of both confidential materials and non-confidential materials.  Yielding to subpoenas and allowing disclosure can compromise, burden, impair and even cripple the newsgathering process.

While this privilege is usually quite strictly and firmly asserted by journalists and news organizations, there are on rare occasions circumstances in which a journalist may find it ethically appropriate and compelling to disclose *some* of their source materials to litigants.  For example, a journalist might ethically agree to a limited waiver of the valued reporter's privilege if he or she finds that a source has clearly been dishonest in their statements to them; that the journalist wrote and published an article that relied on those statements; and that readers relied on that article to their detriment.

That is what happened here.  In early April 2018, Parloff received a call from the U.S. Attorney's Office in San Francisco.  They asked if he would speak with them.  Parloff learned that the SEC had initiated an action against Theranos' principals.  According to the Complaint, the Defendants had given his *Fortune* cover article to investors.  The Government's interest in the article was therefore specifically focused on what Holmes and Balwani had told Parloff in his interviews with them.

What Parloff provided was discrete, limited and properly complete so that there could be no unfairness as to the context of the disclosed interviews.  The full interview notes and recordings were provided.  And they were provided not just to one side, but to all parties.  Parloff's counsel made sure that both sides received the full set of materials disclosed.  Parloff met with the prosecutors in New York on April 12, 2018.  He did not give them his entire file, nor would he have – nor did they ask for

Joshua Koltun ATTORNEY

it. Parloff did not provide the prosecutor, AUSA John Bostic, with any notes or recordings of any of his interviews with any other sources. And the AUSA scrupulously did not press Parloff for any disclosure that he said he was in any way uncomfortable disclosing. The AUSA and Parloff knew that there were DOJ Guidelines that recognized the Reporter's Privilege imperatives. Among other things, those Guidelines require DOJ approval before any subpoena may be issued to compel a journalist to disclose newsgathering materials. They articulate the purpose behind the privilege. And they provide a structure by which reasonable, focused and limited disclosures can be sought. *See* 28 C.F.R. § 50.10.

That Parloff waived the Reporter's Privilege as to his interviews with Holmes does not mean that he has waived it as to all matters. A waiver will only be found where disclosure to one party of material would unfairly prejudice the other; where (as here) the same material has been provided to both sides, there is no unfairness. *Michael v. Estate of Kovarbasich*, 2015 U.S. Dist. LEXIS 168901, at *12-15 (C.D. Cal. Dec. 11, 2015). To suggest otherwise, would make any form of proper compliance impossible and it would force resistance to any subpoena no matter how limited or reasonable it might be.

***The Reporter's Privilege cannot be overcome, and indeed, Rule 17 cannot be met, by speculation that something helpful might turn up.*** The reality is that Defendant's counsel has no idea what is to be found in the reporter's files that they now want to "inspect." Counsel certainly has no idea what any such "notes" or "recordings" or "communications" [3] might say or contain, and has provided no coherent account as to how such material would be relevant to the case. Holmes states

---

[3] Most of any "communications" with sources from 2014-2016 would have been via Parloff's emails at *Fortune*. However, neither Parloff (nor, as Parloff understands, *Fortune*) retained copies of them. None of the *Fortune* emails from 2014-2016 were still retained on the *Fortune* system as of 2018. Parloff has not had access to the system since he left *Fortune* in 2016. To the extent that some may exist, they appear to have been obtained by the prosecutor via subpoenas to Holmes and Theranos.

Joshua Koltun ATTORNEY

that the information it hopes to obtain concerning Parloff's interviews with these other persons is "consistent with the information Holmes provided before the article was published." Mot. at 3:13-16.

So what? Parloff himself is not in a position to give admissible testimony as to the truth or falsity of any of the statements in his articles, as he had no direct personal knowledge of the underlying facts. Holmes, on the other hand, has such knowledge. This is not a libel trial, in which the mix of competing evidence available to a reporter at the time he wrote some article might possibly be at issue. Elizabeth Holmes is on trial, and it is her conduct and state of mind that matters.

If Holmes told Parloff things that were untrue, the possibility that these statements were seconded by other interviewees is irrelevant to whether Holmes misled investors via the *Fortune* cover story that she and Theranos distributed to investors. Insofar as Holmes circulated Parloff's *Fortune* article to investors, she essentially adopted the statements in that articles as Theranos' own representations, and ***she*** knew whether they were true or false.

***The Information is Accessible by Other Means***: Of course, even if it were true that some of these individuals told Parloff the same things as Holmes, it is more than likely that their own source of information was Holmes. Parloff cannot give admissible testimony as to the ultimate source of these person's knowledge. But they can. Most if not all of these "sources" are available to Defendant and within the reach of subpoena. Some may be witnesses in the trial. Defendant has long had access to all of the interviewees inquired about in her Subpoena. Defendant can get whatever she might seek – relevant or not – directly from those witnesses without having to overcome a reporter's privilege to do so. Defendant has had over two years in which to do this. It is also significant that "consistent" statements are by definition cumulative. Needless to say, an inconsistent statement would not be helpful to Holmes.

***Background Facts about the Materials Sought***: Without waiving the privilege asserted here, it will be instructive to note at the outset that of the 12 categories of materials demanded in the

Joshua Koltun ATTORNEY

Subpoena: Three (3) of them do not exist; Five (5) of them are confidential and entirely on background; Several include confidential comments on background; and the Three (3) that seek "communications" relate, with minor exceptions, to *Fortune* emails which Parloff no longer has access to and which appear to no longer exist. As to Heather King, she did not join Theranos until on or about May 2015, eleven months after Parloff's June 2014 cover story. Dawn Schneider did not begin consulting for Theranos until sometime after the cover story was published, and she stopped consulting for it in or around May 2015. And none of the named persons inquired about had any medical expertise that would have enabled them to opine on the merits or demerits of Theranos' technology. None of this justifies a wishful search through a journalist's files.

### *ARGUMENT*

I.   **The Ninth Circuit, the Second Circuit and Other Circuits, Recognize a Robust First Amendment Reporter's Privilege in All Proceedings Other than Grand Jury Proceedings**

The Ninth Circuit is among those circuits, including the Second Circuit – where Parloff lives and works and where *Fortune* is published – that recognize a robust First Amendment Reporter's privilege in all but the grand jury context. In *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*"), the court set out the test for overcoming that privilege; the party seeking information must show that the requested material is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." This test applies to non-confidential information as well as confidential. *Shoen v. Shoen*, 5 F.3d 1289, 1295 (9th Cir. 1993) ("*Shoen I*")[4] The Second Circuit, in *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29,

---

[4] "[T]he journalist's privilege applies to a journalist's resource materials even in the absence of the element of confidentiality. We add, however, that the absence of confidentiality may be considered in the balance of competing interests as a factor that diminishes the journalist's, and the public's, interest in non-disclosure." *Id.*; *accord, U.S. v. Cutler*, 6 F.3d 67, 71 (2d Cir. 1993) ("[T]o protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.") (citations omitted). "We see no legally-principled reason for drawing a distinction between civil and criminal cases," the *Cutler* court added, "when considering whether the

Joshua Koltun ATTORNEY

35 (2d Cir. 1999), similarly recognizes a qualified Reporter's Privilege for non-confidential and confidential information:

> "If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press or insisted on remaining anonymous because of the likelihood that they would be sucked into litigation." [5]

The *Gonzales* test, though using different language, is similar in substance to *Shoen II*. Disclosure of confidential or non-confidential newsgathering materials can be compelled "only upon a clear and specific showing that the information is: (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources." *Gonzales*, 194 F.3d at 31 (citations omitted).

Holmes' counsel argues that "The Fifth and Sixth Amendments guarantee [her] right to compel the production of evidence for her defense," and that federal grand jury courts have rejected any First Amendment reporter's privilege "absent bad faith or harassment." *See* Mot. at 2:24-25, 8:5-19. This "bad faith and harassment" test comes from *Branzburg v. Hayes,* 408 U.S. 665 (1972), in which the Supreme Court recognized a weaker Reporter's Privilege in the grand jury contexts. The

---

[5] It is true that some Circuits have taken a different view, and have declined to recognize a Reporter's Privilege; but since these Circuits are expressly departing from the doctrine prevailing in this Circuit and in the Second Circuit, the cases relied upon by Holmes are inapplicable. See *U.S. v. Smith*, 135 F.3d 963, 969 (5th Cir. 1998) ("Although some courts have taken from Justice Powell's concurrence a mandate to construct a broad, qualified newsreporters' privilege in criminal cases, [citing *U.S. v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988) and *U.S. v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980)] we decline to do so.") ; *McKevitt v. Pallasch*, 339 F.3d 530, 532-33 (7th Cir. 2003) (Siding with 5th Circuit and *Smith*, specifically noting disagreement with *Schoen, Gonzalez, and Cuthbertson*).

reporter's interest in confidentiality should yield to the moving party's need for probative evidence." *Id.* (citation omitted). Further, even the Department of Justice's own guidelines recognize these values when seeking confidential or non-confidential information from journalists – in the grand jury context or otherwise. See 28 C.F.R. § 50.10.

Joshua Koltun ATTORNEY

Ninth Circuit cases relied upon by Holmes are grand jury cases. [6]  Among the reasons why grand jury testimony is distinguishable from other proceedings is that the grand jury itself is deemed to be a procedural check on government overreach, and because the grand jury operates in secrecy.

But the Ninth Circuit has expressly confined the holding of *Branzburg* to the grand jury context.  In one of the early cases following *Branzburg,* the Ninth Circuit commented that "The application of the *Branzburg* holding to non-grand jury cases seems to require that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest."  *Farr v. Pitchess*, 522 F.2d 464, 468 (9th Cir. 1975).  *Farr* involved a criminal case, in which the information sought from the journalist would have revealed who among the prosecutors or court personnel had leaked information in direct violation of a court order to protect defendant's right to avoid prejudicial pretrial publicity rights.  *Id.* at 468-69.  While in that context the court held that the criminal justice system's interest in enforcing its own orders outweighed the journalist's interest in preserving confidentiality, it did not apply the "bad faith and harassment" test proposed by Holmes.  *See also U.S. v. Pretzinger*, 542 F.2d 517, 520-21 (9th Cir. 1976) (district judge properly balanced "the interest of confidentiality of news sources against the needs of the criminal justice system to know the identity of the source in determining whether or not to require disclosure," and did not err in refusing to require disclosure of the sources' identity.)

Indeed, in *In re Grand Jury Proceedings*, relied upon by Holmes, the Ninth Circuit quite expressly noted that in *Farr* it had applied a different standard from *Branzburg* because it did not involve "testimony before the grand jury." 5 F.3d at 402.

---

[6] *See* Mot. at 7:9-9:27 (citing *Branzburg* and *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975); *United States v. Glassdoor, Inc.*, 875 F.3d 1179, 1189-92 (9th Cir. 2017); *In re Grand Jury Proceedings*, 5 F.3d 397, 400-03 (9th Cir. 1993); *In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1115-19 (N.D. Cal. 2006).

Joshua Koltun ATTORNEY

In *Shoen I,* the Ninth Circuit, in upholding the Reporter's Privilege in the civil context, expressly relied on cases that had held that the Reporter's Privilege applied in criminal cases (outside the grand jury context.) *Shoen I*, 5 F.3d at 1294-96 (citing *LaRouche Campaign* and *Cuthbertson*).

As the Court reasoned in *Cuthbertson,* "A defendant's "sixth amendment and due process rights certainly are not irrelevant when a journalists' privilege is asserted," but rather than negate the privilege, they are "important factors that must be considered in deciding whether, in the circumstances of an individual case, the privilege must yield to the defendant's need for the information." 630 F.2d at 147-48 (relying on *Farr* among other authorities). [7]

Tellingly, Holmes never mentions any of the landmark rulings from the Ninth or Second or other Circuits, proceeding on the assumption that there simply is no Reporter's Privilege in federal court. And, as discussed further in Section III, Rule 17 imposes similar limitations on a criminal litigant's use of a trial subpoena (not the same as a grand jury subpoena, for which there are different considerations). Speculation is a decisively inadequate basis for subjecting Parloff to the Subpoena's demands. [8]

## II.    Holmes Cannot Meet the Ninth Circuit's *Shoen II* Test or the Analogous Second Circuit's *Gonzales* Test as to either Confidential or Non-Confidential Information

---

[7] Similarly, the Second Circuit, in *Gonzales*, noted how in a previous case, a criminal defendant "*had to show a sufficient need for the information* to overcome the privilege." 194 F.3d at 34; *Cutler*, 6 F.3d at 73-74; *see id.* at 34 n.3. More recently, the Eleventh Circuit, in *U.S. v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013), affirmed a district court's denial of motion to compel compliance with a Rule 17 subpoena, and held that the "qualified privilege for journalists, [which] allow[s] them to resist compelled disclosure of their professional news gathering efforts[,] . . . . shields reporters in both criminal and civil proceedings."

[8] Holmes' reliance on *United States v. Schneider* is odd, to say the least. According to Holmes, the journalist in that criminal case had moved to quash a subpoena on reporter's privilege grounds and "the Court denied [the] motion. Mot. at 8:25-9:1. But, actually the Court in *Schneider* **granted the motion to quash,** on the grounds, among other things, that the government had "failed to exhaust the variety of discovery sources already available to it." *United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324, at *1, *21 (N.D. Cal. Nov. 18, 2003). As discussed herein, Holmes subpoena fails for the same reason. To be sure, the Court grounded its ruling on Rule 17 rather than the Reporter's Privilege. The statement in that case that the *Branzburg* bad faith/harassment standard applies in criminal cases outside the grand jury contact was unnecessary to the Court's disposal of the motion, and ignored the considerable authority to the contrary.

One cannot address the assertion of a Reporter's Privilege without addressing either the Ninth Circuit's ruling in *Shoen II*, or the Second Circuit's ruling in *Gonzales*. But that is what Defendant has done here. She cites neither. She addresses neither of the Ninth and Second Circuits' parallel tests.

The tests are largely consistent on 1) the basis of the privilege, 2) the balancing analysis that the privilege calls for; and 3) the tests that they apply which use slightly different language for the same substantive tests. Both *Shoen II* and *Gonzales* found the Reporter's Privilege to be based on the First Amendment on their reading of *Branzburg* as well as on the federal common law privilege. *Schoen II*, 48 F.3d at 414; *Gonzales*, 194 F.3d at 35 n.6. Both ruled that the privilege applied to non-confidential newsgathering materials as well as to confidential materials. *Schoen II*, 48 F.3d at 414; *Gonzales* 194 F.3d at 36. Both applied the same balancing analysis to their tests. And both imposed specificity requirements that an inquiring party must meet. No sifting is allowed, nor are open searches permitted to see if the test *might* be met. One does not get to break the privilege to test the privilege. [9]

***The Limited Relevance of Parloff's Testimony***: To examine whether Holmes requested materials or potential testimony meets the relevant test, let us review the limited testimony as to which Parloff has waived the privilege, and consider how anything outside the bounds of that limited testimony could be relevant or admissible.

Parloff can and will testify as to only three things: 1) What Holmes said to him; 2) What he took her statements to mean in the setting of the questions that he asked of her; and 3) What he wrote

---

[9] *See Farr*, 522 F.2d at 468-69. The qualified privilege requires "that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." *Id.* at 468.

Joshua Koltun ATTORNEY

and published.  He can and will authenticate the Cover Article and the notes and tapes of his

interviews with Holmes.

He cannot testify, for example, that Holmes showed his *Fortune* cover story to investors.  He

may understand that to be so via third parties, as reporters often do, but he cannot testify to that on

personal knowledge.  His knowledge of that is through hearsay.  That is something that the prosecutor

must prove independently.  Such hearsay is properly the stuff of news reporting; but not of trials.

If either the prosecution or defense wishes to examine Parloff as to any belief he may presently

have as to whether Holmes lied or deliberately misled him, there is only a limited extent to which such

testimony might be relevant or admissible.  He could testify, for example, as to whether

inconsistencies in her various statements over time led him to such a belief.  But he cannot provide

admissible testimony as to the underlying truth or falsity of the medical/technical representations

made by Holmes or anyone else, as he has no direct personal knowledge thereof and is not an expert

witness.

Parloff's testimony and indeed the trial cannot be about how his articles were researched,

whether he should or should not have believed Holmes at different points in time, or how he learned

from other reporting, like that of the *Wall Street Journal*'s John Carreyrou, that Holmes was lying.

Those are interesting things for a documentary or other news and commentary, but they are not the

stuff that a trial should include or feature.

Defendant's Subpoena and Motion reach for interview notes and recordings of over nine other

possible sources.  Presumably, Defendant's counsel would like to argue with Parloff that he should

have believed Holmes because of what other sources said at the time.  But what Parloff believed and

when is of no import.  The prosecution must prove the falsehoods independently of Parloff –

independently of any hearsay he may have gleaned from other sources.  Such hearsay, if it exists, is

irrelevant, inappropriate and inadmissible.  What Parloff can contribute to the issue of the falsehood of

Holmes 2014 statements to him is limited: specifically, the fact that those statements baldly

contradicted statements that Holmes later told Parloff in 2015.

As to the notes and recordings of other interviews, Defendant does not know what is in the

interview notes or recordings of other sources. But what is known about them is this: 1) The named

individuals have no expertise in blood testing, medicine or engineering; 2) they likely only echo what

they were told by Holmes; 3) the notes and recordings of their interviews might well reveal that they

were laboring under the same falsehoods that many others were. If there are such things to be found

in the interviews, the prosecutor does not presently have them. And the prosecutor does not presently

have them because Parloff did not give them to the prosecutor.

We review here what the *Shoen II* and *Gonzales* tests require when a litigant seeks to compel a

non-party journalist to disclose both confidential and non-confidential news-gathering materials.

A necessary corollary of the robust test applied in both the Ninth and Second Circuits in order

to overcome the Reporter's Privilege, is that a party cannot use court processes to conduct a fishing

expedition into the media's files. *Gonzales* is probably the most frequently cited authority on this

issue in the lower federal district courts within the Second Circuit and by other circuit courts as well.

The most frequently cited passage from *Gonzales* is its articulation of the purpose and foundation of

the Reporter's Privilege. That passage is instructive on how the Reporter's Privilege test should be

applied:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely
> become standard operating procedure for those litigating against an entity that had been
> the subject of press attention to ***sift through press files*** in search of information
> supporting their claims. The resulting wholesale exposure of press files to litigant
> scrutiny would burden the press with heavy costs of subpoena compliance, and could
> otherwise impair its ability to perform its duties—particularly if potential sources were
> deterred from speaking to the press, or insisted on remaining anonymous, because of
> the likelihood that they would be sucked into litigation. Incentives would also arise for
> press entities to clean out files containing potentially valuable information lest they
> incur substantial costs in the event of future subpoenas.

*Id.* at 35 (emphasis added). Judge Leval follows this statement of purpose with this conclusion:

Joshua Koltun ATTORNEY

For these reasons, we reaffirm that the qualified privilege for journalists applies to nonconfidential, as well as to confidential information.

*Id.* At least two important principles are to be drawn from the *Gonzales* Court's articulation of the special purpose of this Privilege:

a. ***No "Sifting" through Journalists' Files*:** Parties should not be empowered by courts to "sift" through a journalist's files to see ***if*** there might be some possibly useful materials that will aid their case. *Gonzales*, 194 F.3d at 35 (emphasis added); *see, e.g., Sikelianos v. City of New York*, 05 CIV. 7673 RJS/JCF, 2008 WL 2465120 at *1 (S.D.N.Y. June 18, 2018) ("A litigant seeking nonconfidential materials will not be granted unfettered access to 'sift through journalists['] files in search of information supporting [his] claims . . ..'" (internal brackets omitted).

b. ***Particularized/Specific Need Required*:** There must be *particularized need*; not just a general contention that the files sought must be relevant because they are all "about" the subjects or possible interviewees of a news report that overlap the subjects of the litigation. Generalized likely or generalized possible relevance will not do. The material to be disclosed must be specifically identified – enough to be able to show that it will be "clearly relevant to an *important* issue in the case," *Shoen II,* 48 F.3d at 417, i.e., relevant to a "*significant"* matter in the case – one that could not be obtained by other means. *Gonzales*, 194 F.3d at 36 (emphasis added). Listing known or potential sources does not achieve that. The subpoenaing party's interest must be concretely identified before it is balanced against the harm to the journalist. Here the need is not particularized, not likely relevant, and not admissible.

***Required Nexus to a "Significant Issue"*:** Speculation about likely relevance must be attached to a "significant issue." That means that generalized statements of possible or likely relevance will not suffice. *See, e.g., In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464,

- 14 -

469 (S.D.N.Y. 2013) ("*In re McCray*"), *citing Gonzales*, 193 F.3d at 36 and *Sikelianos*, 2008 WL 2465120 at *1. And they should not suffice, since that can be said of most reporters' files. There might be some good materials for a sparkling cross-examination; there might be some good observations about the parties that offer nice color commentary at a trial; or there might be some cumulative evidence that give further weight to a case. Surely there might be something along those lines in most reporters' files. But that kind of inquiry – that kind of sifting – is precisely what is prohibited.

**Balancing Test:** The test is a species of "balancing" test since it attempts to assess and weigh the need of the litigant (relevance, significance and unavailability) against the harm and burden imposed on the non-party journalist. The *Gonzales* court points with approval to the "balancing" called for by the Third Circuit in *Cuthbertson*, 630 F.2d at 147, a case which also cited with approval by the Ninth Circuit in *Shoen I*, 5 F.3d at 1295-96. The test requires "balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case." *Id.*

When confidential materials are at issue, *Shoen/Gonzales* demands an even stricter test. It is not sufficient to contend that something in the file might provide some fodder for cross-examination; or that they might reveal *cumulative* proof; or that it might furnish color commentary or background.

*In re McCray* was a high-profile civil case adjunct to a criminal case involving the Central Park Five. Applying the balancing test, the court rejected efforts to obtain unpublished, non-confidential outtakes from a documentary about the Central Park Five. *In re McCray*, 991 F. Supp. 2d at 470. There, the subpoenaing Defendants offered a "laundry list of reasons" why the interview outtakes sought might be relevant as potential impeachment material. *Id.* at 470 n.2. But the court held that was "insufficient." *Id.* at 470.

Joshua Koltun ATTORNEY

- 15 -

Like Defendant Holmes and like the plaintiff in *Sikelianos*, the *In re McCray* defendants could not point to any particular interview or outtake that would provide the evidence they sought. *See id.* As with Holmes and *Sikelianos*, the defendants only made general claims that the outtakes were likely to contain relevant material. *See id.* And like the plaintiff in *Sikelianos*, even though defendants did show specificity for the outtakes, that factor was "not enough to overcome the standard for relevance under *Gonzales*." *Id.* There was no nexus to a significant issue in the case.

The *In re McCray* court also found that the defendants failed to meet the second prong of the *Gonzales* test, which states that the requesting party must show that the materials sought are "not reasonably obtainable from other sources." *Id.*, citing *Gonzales*, 194 F.3d at 36. Here Holmes had and has access to the other listed sources – for over two years.

### III. Holmes Has Failed To Meet Her Rule 17(c) Burden Under *Nixon*

Holmes acknowledges that her Subpoena must satisfy the "relevancy," "admissibility" and "specificity" requirements of Fed. R. Crim. P. 17(c). Mot. at 2:26-3:2, citing *U.S. v. Nixon*, 418 U.S. 683, 700 (1974). However, as Parloff asserted in his Objections to the Subpoena, Holmes has failed to clear each of the Rule 17 hurdles. *See **Exhibit B*** (Dkt. 1028-1, at 12-13).

As the Supreme Court in *Nixon* noted, a criminal subpoena duces tecum "was not intended to provide a means of discovery for criminal cases." 418 U.S. at 698-99 (citation omitted). *See also Cuthbertson*, 630 F.2d at 146 ("Courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."). Courts premise production of documents under Rule 17(c) upon the moving party showing:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the

Joshua Koltun ATTORNEY

trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699-700 (citation omitted). *See also* Mot. at 7:23-24, 8:5-28, citing *Schneider*, 2003 U.S. Dist. LEXIS 27324, at *16-17, 21 (quashing Rule 17 subpoena under *Nixon* where moving party had failed to show material sought was "relevant, specific, and non-cumulative").

Holmes' own authority recognizes that "only relevant and admissible documents that are requested with specificity must be produced." Mot. 8:5-28, citing *U.S. v. Libby*, 432 F. Supp. 2d 26, 48 (D.D.C. 2006). "And this will encompass a limited category of documents in a limited number of cases." *Id.* Here, unlike in *Libby*, Parloff's conversations with Holmes do not "form the predicate for several charges in the indictment." *Id.* Nevertheless, Parloff has provided recordings and notes of his conversations with Defendant – without being commanded to do so, as in the likes of *Libby*, *Cutler*, and *Nixon*. *See id.*; *Cutler*, 6 F.3d at 73; *see also Nixon*, 418 U.S. at 700-01 ("most of the tapes" at issue "apparently contain conversations to which one or more of the defendants named in the indictment were party"). In other words, Parloff has provided any documents that are reasonably deemed "relevant and admissible" already. But not more. That some are "relevant and admissible" does not make all "relevant and admissible." If that were so, there would be no need for Rule 17 or *Shoen* analysis. Holmes' overreaching logic does away with any kind of specificity requirement. That is not the law.

Holmes' relevance theory for Parloff's unpublished source materials – as to Parloff's potential testimony or otherwise – makes no sense. Even if the materials tended to make it "more probable" that Parloff's other sources made statements that were "consistent with the information Ms. Holmes provided," that "fact" would be of no "consequence" in determining the truth of Holmes' statements to investors. Mot. at 3:13-16; Fed. R. Evid. 401. As discussed above, the possibility that Holmes' statements were seconded by other interviewees is irrelevant to whether Holmes misled investors. Here, as in *Cutler*, "The comparative impact of [the defendant's] public statements . . . manifestly

Joshua Koltun ATTORNEY

depends upon what was published on that subject, not upon what is in the Reporters' unpublished notes." 6 F.3d at 74.

As to admissibility, Holmes claims the unpublished materials she seeks are "non-hearsay, because she will not offer the statements they contain for their truth." Mot. at 6:17-18, citing Fed. R. Evid. 801(c). Yet she seeks unpublished statements that are "consistent with" her own. Mot. at 3:15. That sounds like "truth" simply by another name.

Again, Holmes does not know what statements Parloff's unpublished materials contain. As the *Cuthbertson* court noted, "the mere hope that some exculpatory material might turn up" does not justify enforcement of a subpoena under Rule 17(c). 630 F.2d at 146.

*United States v. Sleugh* – Holmes' Ninth Circuit authority referencing the *Nixon* test – leads to the same result. 896 F.3d 1007 (9th Cir. 2018); *see* Mot. at 2:25-3:2. In that case, a criminal defendant sought access to the sealed Rule 17(c) subpoena applications of a co-defendant who had testified against him. 896 F.3d at 1011. The Ninth Circuit affirmed the lower court's denial of that access. *Id.* at 1018. The defendant had failed to "explain," the Ninth Circuit stated, how the materials "could be used to show that [the co-defendant's] trial testimony was false. Sleugh *simply speculates* that the assertions of counsel in [the co-defendant's] Rule 17(c) subpoena applications must be different from [his] trial testimony." *Id.* at 1015 (emphasis added). Underlying the defendant's argument was an "assumption" that the co-defendant's trial testimony "was inconsistent with any defense theory that [the co-defendant's] counsel proffered in the pre-trial Rule 17(c) subpoena applications." *Id.* "Sleugh assumes too much," the Ninth Circuit concluded, noting that "[n]othing about the face of [the] Rule 17(c) subpoena applications suggests that the affidavits in support of those applications would be likely to undercut [the co-defendant's] testimony." *Id.*

Here – to the extent the Government calls Parloff to testify – Holmes has pointed to nothing in Parloff's *Fortune* articles (*see* **Exhibits C-E**, Dkt. 1028-1, at 16-35) that would suggest any

*Joshua Koltun* ATTORNEY

- 18 -

unpublished reporting material would be likely to undercut what the articles reported. *Id.* As shown, Holmes "simply speculates" and ultimately "assumes too much." *Id.* [10]

### CONCLUSION

Because Holmes has failed to meet the necessary tests under either the robust Reporter's Privilege recognized by this and the Second Circuit, or Rule 17, this Court should deny Holmes' Motion To Compel in all respects. The Court should also grant a Protective Order or Motion *in Limine* limiting the scope of Parloff's testimony to that concerning his communications with Defendants Holmes and Balwani, together with such other and further relief as the Court deems just and proper, including fees and costs.

Respectfully submitted,

October 4, 2021

_____/s/_____
Joshua Koltun

_____/s/_____
David S. Korzenik

_____/s/_____
Terence P. Keegan

Attorneys for Non-Party Witness Roger Parloff

---

[10] Holmes also hopes to find impeachment material to wield against Parloff and "expos[e] his "bias." Mot. at 3:7-10, 5:16, 6:22. However, such prior statements "ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." *Cuthbertson*, 630 F.2d at 144; *Nixon*, 418 U.S. at 701-02. Even where a movant has specified would-be impeachment statements – which Holmes has not – courts do not grant access to such material until after the witness testifies, to the extent the witness testifies at all. *See Cuthbertson*, 630 F.2d at 145. And the canard of "bias" makes even less sense here. The *Fortune* cover article was entirely favorable to Holmes. It reports favorably *what Holmes said*.

Joshua Koltun ATTORNEY

# CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2021, I filed this motion/memorandum, the accompanying declaration of Roger Parloff, and the [Proposed] Order via email to the Court's Criminal Case Systems Administrator/Docket Clerk for entry onto the electronic docket (as we do not yet have access to that docket), and for ECF service on all parties.  In addition, I emailed a copy of this motion/memorandum, declaration and [proposed] order on October 4, 2021 to John D. Cline, attorney for Elizabeth Holmes.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 4, 2021 at San Francisco, California

_____/s/_____
Joshua Koltun