1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  JEFFREY B. SCHENK (CABN 234355)
   JOHN C. BOSTIC (CABN 264367)
5  ROBERT S. LEACH (CABN 196191)
   KELLY I. VOLKAR (CABN 301377)
6  Assistant United States Attorneys

7       150 Almaden Boulevard, Suite 900
        San Jose, California 95113
8       Telephone: (408) 535-5061
        Fax: (408) 535-5066
9       john.bostic@usdoj.gov

10 Attorneys for United States of America

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                           SAN JOSE DIVISION

14 | UNITED STATES OF AMERICA,        )  Case No. 18-CR-00258 EJD
                                      )
15 |       Plaintiff,                 )  UNITED STATES' OPPOSITION TO
                                      )  DEFENDANT'S MOTION TO EXCLUDE
16 |    v.                            )  CERTAIN TESTIMONY OF ROGER PARLOFF
                                      )
17 | ELIZABETH HOLMES,                )
                                      )  Court: Hon. Edward J. Davila
18 |       Defendant.                 )
                                      )
19 |_____    )

GOVT. OPP. TO MOT. TO EXCLUDE PARLOFF TESTIMONY
CASE NO. 18-CR-258 EJD

**INTRODUCTION & FACTUAL BACKGROUND**

The government opposes Defendant's Motion to Exclude Certain Testimony of Roger Parloff and to Exclude Trial Exhibit 3033. *See* ECF No. 1103 ("Mot."). If called as a witness at trial, Mr. Parloff is expected to testify about a series of conversations he had with Defendant while researching an article he eventually wrote for *Fortune* magazine and which appeared in a June 2014 issue of the publication. During those conversations, Defendant made false or misleading statements similar to the misrepresentations she made to investor victims in this case. In particular, Defendant made statements to Parloff relating to, among other things: (1) the number of tests Theranos could conduct on a single drop of blood; (2) the range and number of assays that Theranos's analyzer could perform; (3) Theranos's ability to conduct blood tests on a fingerstick sample without the need for venipuncture; (4) Theranos's use of its own analyzers as opposed to third-party devices; (5) the accuracy and reliability of Theranos's tests; and (6) the nature of the company's work with the U.S. military. Defendant's deceptive statements resulted in inaccurate or misleading information on those topics appearing in Parloff's June 2014 article. Parloff recorded Defendant's statements during interviews, sometimes with an audio recording device—used with Defendant's consent—and at other times through detailed contemporaneous notes. At trial, Parloff may testify regarding specific statements made to him by Defendant and provide context necessary to the jury's understanding of the significance of those statements.

The relevance of this testimony is evident from the allegations in the operative Indictment and the evidence at trial so far. Paragraph 12(I) of the Third Superseding Indictment expressly alleges that Defendant made false and misleading statements to members of the media in furtherance of the charged fraudulent scheme. ECF No. 469 at 7.[1] Parloff's article in particular has been highlighted already in trial. Both parties have introduced copies of his initial June 2014 cover article about Defendant and Theranos in *Fortune* magazine.[2] General James Mattis, former Theranos Board Member, and Lisa

---

[1] Defendant's false statements to journalists—including false statements to Parloff—are extensively discussed in the government's 404(b) notice to Defendant, served in September of last year. That notice explained that these false statements tend to show Defendant's plan, preparation, and intent to defraud victims by deceiving them indirectly via misleading statements to the press, as well as an absence of mistake and her motive to elevate her status and that of her company.

[2] *See* 9/22/2021 Hearing Transcript ("9/22 Tr.") at 1570:7–1574:3 (and admitting Trial Exhibit

GOVT. OPP. TO MOT. TO EXCLUDE PARLOFF TESTIMONY
CASE NO. 18-CR-258 EJD                       1

Peterson, representative of investor-victim RDV Corporation, testified that they received the article and read it. 9/22 Tr. at 1572:5–7; 10/26 Tr. at 4643:3–4. As part of the overall scheme to defraud, investors received links or references to favorable press coverage discussing Theranos and believed the content was accurate. *See* 10/22/2021 Hearing Transcript ("10/22 Tr.") at 4462:11–4463:1; 10/26 Tr. at 4771:6–4778:10; *see also* TX 4869 at 49 (Theranos PowerPoint prepared for investor Rupert Murdoch included a link to the Parloff *Fortune* article). Indeed, Peterson relied in part on the content of the *Fortune* article in preparing her recommendation for investment on behalf of investor-victim RDV Corporation. 10/26 Tr. at 4771:6–4778:10.

The government has also presented evidence that Defendant had some control over the content of an opinion piece published in the *Wall Street Journal* by Joseph Rago the same day that Theranos and Walgreens issued a press release announcing their partnership. 10/19 Tr. at 3979:19–3987:8 (and admitting TX 1090); 9/22 Tr. at 1548:1–1553:16 (and admitting TX 1106). Dan Edlin testified that Rago interviewed Defendant and provided an opportunity for her to suggest changes or alterations to his article before he published it, but apparently did not seek to remove or modify claims about testing accuracy. 10/19 Tr. at 3979:19–3987:8. General Mattis had previously testified that Defendant sent a link to the Rago article to current shareholders in September 2013 and that he believed it was important to provide because the statements in the article "showed the maturation of the technology that was going out to be used" for patients. 9/22 Tr. at 1547:15–1549:6 (and admitting TX 5407). Thus, the government has already demonstrated Defendant's practice of feeding information to a news outlet and then using the resulting article to attract investors to Theranos.

With the instant motion, Defendant seeks to severely limit Parloff's testimony, effectively restricting his role to that of a document custodian. But several of Defendant's objections are moot because they relate to topics that will not be part of Parloff's anticipated testimony, including Defendant's intent and the truth or falsity of her statements. As described below, Parloff's testimony

---

("TX") 1776); 10/26/2021 Hearing Transcript ("10/26 Tr.") at 4640:1–4643:7 (and admitting TX 1944); *id.* at 4727:22–4730:5 (and admitting TX 12751); *see also* TX 4869 at 49 (admitted at 10/19/2021 ("10/19 Tr.") Hearing Transcript at 3997:4–18).

will be restricted to matters within his personal knowledge based on the entirety of his conversations with Defendant.

As to Exhibit 3033—Parloff's follow-up article titled "How Theranos Misled Me"—the government will not seek to admit Trial Exhibit 3033 during the direct examination of Parloff, but reserves the right to introduce that article for a non-hearsay purpose should the defense open the door by questioning Parloff about statements he made in that article.

Because Parloff's testimony will consist of admissible factual statements and necessary context, the Court should deny Defendant's motion *in limine*.

## ARGUMENT

### I. Parloff May Provide Context and Testify as to His Understanding of Defendant's Statements

Defendant seeks to limit Parloff's role at trial to authenticating recordings and notes of his conversations with Holmes, but cites no case law supporting this restrictive approach. The authority cited by Defendant targets types of testimony that are not at issue here. For example, Defendant relies on *Coca-Cola Co. v. Overland Inc.*, 692 F.2d 1250 (9th Cir. 1982), for the proposition that a witness may not testify about their subjective beliefs regarding the intent of others. (Mot. at 3). The government, however, is not seeking to elicit Parloff's opinions about *what Defendant intended* during their conversations. That matter is outside his personal knowledge. For similar reasons, the government will not ask Parloff to opine on Defendant's overall credibility or whether her statements to him were true or false. Because he does not have firsthand information regarding the capabilities of Theranos's analyzers or the general activities of the company, he is in no position to testify on those topics.

Instead, Parloff may testify to the following:

- Specific statements Defendant made to him during interviews, including facts that were not disclosed by Defendant during those conversations;
- Context for certain exchanges during those interviews, including his purpose in asking certain questions, how questions and answers fit into the overall series of conversations between him and Defendant, and what he understood from Defendant's answers; and relatedly,

- How Defendant's statements influenced and supported the content of the article Parloff published in *Fortune* in June 2014—the article that contributed to Defendant's deception of victims as part of the charged scheme to defraud.

Defendant objects to the second category of testimony referenced above, but that contextual information is the kind of background that any witness would be expected to provide when describing a conversation in which they participated. Such testimony does not ask the witness to go beyond their personal knowledge, even where it might call for an opinion. Federal Rule of Evidence 701(a) explicitly permits non-expert testimony of a fact witness "in the form of an opinion . . . that is . . . rationally based on the witness's perception[.]" Fed. R. Evid. 701(a). And courts recognize that "[l]ay witnesses may offer their interpretations of their conversations." *See, e.g.*, *United States v. Gilbertson*, 970 F.3d 939, 951 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2793 (2021).

Contrary to Defendant's Motion, evidence regarding Parloff's understanding of representations made by Defendant does not invite the jury to find that Parloff was a victim of fraud—even if it tends to prove that he was deceived. The government anticipates that the Court will instruct the jury on the elements of the charged offense, which require more than mere deception. For the government's part, it will not argue that Parloff is a victim in this case. Thus, the risk of jury confusion from such evidence is minimal. To the contrary, this kind of evidence is highly probative because it will aid the jury in understanding why Parloff asked certain questions and refrained from asking others, why he wrote what he did in June 2014 and, in turn, how Defendant used that article in furtherance of her scheme to defraud. The fact that Defendant used Parloff as a "conduit" (Mot. at 4) for misleading information does not make his personal understanding of her statements irrelevant. In fact, the opposite is true: Defendant knew she had to deceive Parloff to ensure that his article contained the misleading information she wanted him to help disseminate to prospective victims. This was part of Defendant's plan to use the media in furtherance of the fraud, and allowing showing that she was successful in misleading Parloff allows the jury to see that plan in action.

Accordingly, the Court should permit Parloff to testify about the substance of his conversations with Defendant, including the contextual information necessary for the jury to understand how Defendant's statements shaped his understanding as reflected in the articles he published.

## II. The Government Does Not Intend to Introduce Exhibit 3033

The government does not presently intend to seek admission of Exhibit 3033, the correction / retraction article Parloff published after concluding that he had been misled by Defendant. It is worth noting that the article is explicitly not covered by Defendant's MIL regarding news articles "written by 'journalists who will not testify at trial' (those being 'journalists other than Mr. Parloff and Dr. Topol')." MIL Order, ECF No. 798 at 40. However, the government acknowledges that the article contains statements not admissible for their truth. The government reserves the right to reference or introduce portions of that article in response to questioning from the defense regarding its content. And of course, to the extent Parloff has a *non-hearsay* basis to do so, he may testify as to how his understanding regarding Theranos changed over time following the publication of his June 2014 article.

## III. The Ruling on Defendant's Rule 17 Subpoena to Parloff Does Not Affect the Permissible Scope of His Testimony

Defendant asserts that the government's potential topics of direct examination are "inappropriate" because Magistrate Judge Cousins quashed her subpoena to Parloff for information from "numerous sources at Ms. Holmes' referral." ECF No. 1103 at 6. As discussed above, however, the government does not plan to elicit some of the categories of testimony to which Defendant objects. In light of the scope of Parloff's anticipated testimony, Defendant offers no reason to upset Judge Cousins's holding that "the defense has not established the relevance, admissibility, materiality, need, or specificity of [the materials] they're seeking" in the Rule 17 subpoena issued to Parloff. 10/14/2021 Hearing Transcript Before Judge Cousins ("10/14 Tr.") at 50:18–20. Judge Cousins further noted that Defendant's request for additional notes and transcripts beyond those associated with Parloff's interviews of the named defendants amounts to a "fishing expedition" and is "far afield from what's at issue in the case and what's being tried." *Id.* at 50:24–51:22.

Defendant has not shown why Parloff's testimony should be severely restricted. Her separate failure to meet the Rule 17 standard in connection with the Parloff subpoena does not save her argument here.

/ /

# CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion *in limine* to narrow the testimony of Roger Parloff.

DATED: October 29, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

  */s/ John C. Bostic*
JEFFREY B. SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
KELLY I. VOLKAR
Assistant United States Attorneys