1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

    UNITED STATES OF AMERICA,          )
6                                       )  CR-18-00258-EJD
                     PLAINTIFF,         )
7                                       )  SAN JOSE, CALIFORNIA
              VS.                       )
8                                       )  AUGUST 20, 2021
    ELIZABETH A. HOLMES,                )
9                                       )  PAGES 1 - 82
                     DEFENDANT.         )
10   _____    )

11

12                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE EDWARD J. DAVILA
13                  UNITED STATES DISTRICT JUDGE

14
    A P P E A R A N C E S:
15
    FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
16                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
17                        150 ALMADEN BOULEVARD, SUITE 900
                          SAN JOSE, CALIFORNIA 95113
18
                          BY:  ROBERT S. LEACH
19                             KELLY VOLKAR
                          1301 CLAY STREET, SUITE 340S
20                        OAKLAND, CALIFORNIA 94612

21        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

    OFFICIAL COURT REPORTER:
23                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                          CERTIFICATE NUMBER 8074
24
        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25            TRANSCRIPT PRODUCED WITH COMPUTER

```
1        A P P E A R A N C E S:  (CONT'D)

2

3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                             BY:   KEVIN M. DOWNEY
4                                  LANCE A. WADE
                                   PATRICK LOOBY
5                                  KATHERINE TREFZ
                                   AMY SAHARIA
6                            725 TWELFTH STREET, N.W.
                             WASHINGTON, D.C. 20005
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    AUGUST 20, 2021 |
| 2 | P R O C E E D I N G S |
| 10:08AM 3 | (COURT CONVENED AT 10:08 A.M.) |
| 10:08AM 4 | THE COURT:  LET'S GO ON THE RECORD IN OUR MORNING |
| 10:08AM 5 | MATTER.  THIS IS 18-258, UNITED STATES VERSUS ELIZABETH HOLMES. |
| 10:08AM 6 | LET ME FIRST CAPTURE THE APPEARANCES OF THE PARTIES, |
| 10:08AM 7 | PLEASE. |
| 10:08AM 8 | WHO APPEARS FOR THE GOVERNMENT? |
| 10:08AM 9 | MS. VOLKAR:  GOOD MORNING, YOUR HONOR. |
| 10:09AM 10 | KELLY VOLKAR ON BEHALF OF THE GOVERNMENT, THE UNITED |
| 10:09AM 11 | STATES OF AMERICA, AND ALONG WITH ME AT COUNSEL TABLE ARE MY |
| 10:09AM 12 | COLLEAGUES:  ROBERT LEACH, JEFF SCHENK, JOHN BOSTIC, AND OUR |
| 10:09AM 13 | SPECIAL CASE ADELAIDA HERNANDEZ. |
| 10:09AM 14 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:09AM 15 | WHO APPEARS FOR THE DEFENDANT? |
| 10:09AM 16 | MR. WADE:  GOOD MORNING, YOUR HONOR. |
| 10:09AM 17 | LANCE WADE FROM WILLIAMS & CONNOLLY ON BEHALF OF |
| 10:09AM 18 | MS. HOLMES, WHO IS PRESENT HERE IN THE COURTROOM TODAY. |
| 10:09AM 19 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:09AM 20 | MR. WADE:  ALSO PRESENT WITH ME TODAY ARE |
| 10:09AM 21 | MR. DOWNEY, MR. LOOBY, MS. TREFZ, AND MS. SAHARIA. |
| 10:09AM 22 | THE COURT:  GOOD MORNING. |
| 10:09AM 23 | THIS IS THE DATE AND TIME SET FOR SOME DISCUSSION ON SOME |
| 10:09AM 24 | MOTIONS FILED BY MS. HOLMES.  THESE ARE, LET'S SEE, DOCKETS -- |
| 10:09AM 25 | I BELIEVE IT'S 892, 895, 897, AND 899. |

10:09AM  1        AND I HAVE RECEIVED YOUR PLEADINGS, THE REPLIES.  THANK

10:09AM  2   YOU FOR THOSE.

10:09AM  3        I THOUGHT I WOULD LIKE TO GO THROUGH THOSE -- THESE WITH

10:10AM  4   STARTING WITH THE 895 I THINK IT IS.  THIS IS A MOTION TO

10:10AM  5   EXCLUDE CERTAIN NEWS ARTICLES.

10:10AM  6        MR. LOOBY, ARE YOU RISING TO THAT?

10:10AM  7             MR. LOOBY:  YES.  GOOD MORNING, YOUR HONOR.

10:10AM  8        I'LL BE ADDRESSING THIS MOTION.

10:10AM  9             THE COURT:  WHAT WOULD YOU LIKE ME TO KNOW IN

10:10AM 10   ADDITION TO WHAT YOU'VE TOLD US IN YOUR PLEADINGS?

10:10AM 11             MR. LOOBY:  SO THANK YOU, YOUR HONOR.

10:10AM 12   I THINK I CAN BE BRIEF.

10:10AM 13             THE COURT:  THAT'S ALWAYS GOOD, MR. LOOBY.

10:10AM 14             MR. LOOBY:  YES.

10:10AM 15        AND THE REASON FOR THAT IS THAT THIS IS KIND OF A

10:10AM 16   STRAIGHTFORWARD PRETRIAL CLEAN-UP MOTION.  THE SEVEN ARTICLES

10:10AM 17   ATTACHED TO THE MOTION WE SUBMIT WOULD HAVE BEEN EXCLUDED UNDER

10:10AM 18   THE COURT'S ANALYSIS IN ITS MAY IN LIMINE ORDER.

10:10AM 19        IF YOU LOOK AT THE ARTICLES, THEY EACH CONTAIN REPORTING

10:10AM 20   THE PARROTS "THE WALL STREET JOURNAL" REPORTING, AND OTHER

10:10AM 21   CRITICAL COVERAGE OF THERANOS, INVESTIGATORY PIECES THAT THE

10:10AM 22   GOVERNMENT HAS PROPOSED TO OFFER TO PROVIDE CONTEXT FOR

10:11AM 23   MS. HOLMES AND THE COMPANY'S RESPONSE.

10:11AM 24        THE COURT CORRECTLY HELD AND SAID THIS PURPOSE RELIES ON

10:11AM 25   THE TRUTH OF THE ARTICLES FOR ITS RELEVANCE AND SO THEY MUST BE

10:11AM 1     EXCLUDED.  THE GOVERNMENT'S OPPOSITION POSITS NO OTHER PURPOSE

10:11AM 2     FOR THESE ARTICLES.

10:11AM 3         SO THE COURT NEED NOT WAIT TO EXCLUDE THEM NOW ON HEARSAY

10:11AM 4     GROUNDS.  AND IF THERE WERE ANY RESERVATION ON THAT POINT, THEN

10:11AM 5     RULE 403 WOULD PROVIDE AN ALTERNATIVE BASIS.

10:11AM 6         SO UNLESS YOUR HONOR HAS ANY SPECIFIC QUESTIONS ABOUT THE

10:11AM 7     ARTICLES?

10:11AM 8           THE COURT:  WELL, I DO HAVE SOME.

10:11AM 9         DO THESE ARTICLES CONTAIN WHAT YOU WOULD DESCRIBE AS

10:11AM 10     ADMISSIONS THAT WOULD OTHERWISE BE ADMISSIBLE?

10:11AM 11           MR. LOOBY:  I DON'T BELIEVE SO, YOUR HONOR.  SOME OF

10:11AM 12     THEM PURPORT TO QUOTE MS. HOLMES --

10:11AM 13           THE COURT:  RIGHT.

10:11AM 14           MR. LOOBY:  -- OR OTHER REPRESENTATIVES OF THE

10:11AM 15     COMPANY.

10:11AM 16         AND SOME OF THEM ARE QUOTING PUBLIC APPEARANCES OF

10:11AM 17     MS. HOLMES, WHICH ARE ALSO ON THE GOVERNMENT'S EXHIBIT LIST IN

10:11AM 18     MANY CASES AS VIDEOS THAT THEY MAY PURPORT TO PLAY.

10:11AM 19         SO I DON'T THINK THAT THE ARTICLES THEMSELVES HAVE ANY

10:11AM 20     EVIDENTIARY VALUE SEPARATE AND APART FROM THOSE OTHER

10:12AM 21     STATEMENTS.

10:12AM 22         SO I DON'T SEE ANY ADMISSIONS IN THESE THAT HAVE LIKE AN

10:12AM 23     INDEPENDENT BASIS OR FOR ADMISSION.

10:12AM 24           THE COURT:  AND I THINK YOU UNDERSTAND WHY I ASKED

10:12AM 25     THE QUESTION.  THERE ARE QUOTES YOUR CLIENT APPEARED AT

10:12AM   1    CONFERENCES I THINK IN SOME OF THESE AND WAS INTERVIEWED, AND

10:12AM   2    THE ARTICLES SAYS MS. HOLMES WAS ASKED X AND SHE SAID X.

10:12AM   3            MR. LOOBY:  RIGHT.  AND SO THE ARTICLE AT THAT POINT

10:12AM   4    HAS A THRESHOLD HEARSAY ISSUE OF THE OUT-OF-COURT STATEMENT OF

10:12AM   5    THE REPORTER SAYING SHE SAID X.

10:12AM   6            THE COURT:  CORRECT.

10:12AM   7            MR. LOOBY:  AND IN SOME CASES IT'S PURPORTING TO

10:12AM   8    QUOTE AND OTHER TIMES IT IS PURPORTING TO PARAPHRASE AND THOSE

10:12AM   9    ARE EVEN MORE PROBLEMATIC IN SOME INSTANCES.

10:12AM  10            THE COURT:  I THINK WE CAN PUT THOSE ASIDE, THE

10:12AM  11    PARAPHRASE, RIGHT.

10:12AM  12            MR. LOOBY:  RIGHT, RIGHT.  BUT EVEN THE QUOTATIONS,

10:12AM  13    THE SELECTION OF THEM THAT ARE PLACED IN THE ARTICLE WHERE I

10:12AM  14    WOULD SAY THAT THE HEARSAY ISSUE STILL HASN'T BEEN SURMOUNTED

10:12AM  15    BY THE GOVERNMENT.

10:12AM  16        SO I DON'T THINK THAT THE ARTICLES ARE ADMISSIBLE JUST BY

10:12AM  17    BASIS OF HAVING THE QUOTATIONS BECAUSE OF THAT HEARSAY ISSUE.

10:13AM  18            THE COURT:  OR ANY PIECE OF THE ARTICLE THAT WOULD

10:13AM  19    IDENTIFY A QUOTE.  NOT THE ARTICLE IN TOTO BUT JUST THE QUOTE.

10:13AM  20    THAT'S NOT PARSABLE IN YOUR VIEW?

10:13AM  21            MR. LOOBY:  NO, YOUR HONOR, BECAUSE OF THAT HEARSAY

10:13AM  22    ISSUE OF THIS IS A REPORTER OR A NEWS AGENCY REPRODUCING AN

10:13AM  23    OUT-OF-COURT STATEMENT.  SO THERE'S THE DOUBLE LAYER THERE.

10:13AM  24        SO -- YES.

10:13AM  25            THE COURT:  ALL RIGHT.

10:13AM 1          MS. VOLKAR?

10:13AM 2                MS. VOLKAR:  GOOD MORNING, YOUR HONOR.

10:13AM 3                THE COURT:  I'M SORRY, MS. VOLKAR.  WE'LL ADJUST

10:13AM 4     THESE SCREENS OR THE LECTERNS AT SOME TIME SO WE DON'T HAVE

10:14AM 5     THAT IS BAR IN FRONT OF YOURS.

10:14AM 6          DON'T DO IT NOW.  THAT'S OKAY.

10:14AM 7                MS. VOLKAR:  THANK YOU, YOUR HONOR.  I'LL ALSO BE

10:14AM 8     BRIEF.

10:14AM 9          OF COURSE WE'RE HERE TODAY IN PART BECAUSE UNDER THE GUISE

10:14AM 10    OF FOLLOWING UP ON THE COURT'S PURPORTED INVITATION TO FILE

10:14AM 11    MORE MOTIONS, THE DEFENDANT IS IN FACT SEEKING TO SUBVERT

10:14AM 12    SEVERAL OF THE COURT'S THOUGHTFUL AND DETAILED RULINGS ON THE

10:14AM 13    MOTION IN LIMINE IN ITS MOTION IN LIMINE ORDER.

10:14AM 14         THE COURT HAS ALREADY ADDRESSED SEVERAL OF THESE MOTIONS

10:14AM 15    INCLUDING THE NEWS ARTICLE ONE.  THE DEFENDANT COULD HAVE AT

10:14AM 16    THAT TIME ATTACHED MORE MOTIONS.  THEY CERTAINLY SOUGHT BROAD

10:14AM 17    EXCLUSION AND DID NOT NECESSARILY HOLD BACK.  THEY DID NOT

10:14AM 18    IDENTIFY THE SEVEN ARTICLES AT THAT TIME, AND SO I BELIEVE THE

10:14AM 19    COURT'S ORDER DENYING ESSENTIALLY THE NON-ADDRESSED ONES STILL

10:14AM 20    STANDS, ESPECIALLY GIVEN THAT NO TESTIMONY HAS YET COME IN.

10:14AM 21         SO THE GOVERNMENT'S FIRST POINT IS THAT THIS ARTICLE IS

10:14AM 22    PREMATURE.  AT THIS POINT IN TIME NOTHING HAS ACTUALLY CHANGED

10:15AM 23    FROM THE COURT'S MOTION IN LIMINE ORDER.  NO TESTIMONY HAS BEEN

10:15AM 24    GIVEN.  THE TRIAL IS STILL IN THE FUTURE.  AND SEEKING TO

10:15AM 25    EXCLUDE THESE SEVEN ARTICLES AT THIS POINT IN TIME DOES NOT

10:15AM 1    ALLOW FOR THE OTHER MANNER IN WHICH THE TESTIMONY MAY COME IN

10:15AM 2    IF WE WERE TO DISCUSS THIS EVEN A MONTH FROM NOW.

10:15AM 3         NOW, WHAT MIGHT THOSE METHODS BE?

10:15AM 4         WELL, FIRST, BY THE TIME THAT CERTAIN WITNESSES ARE

10:15AM 5    ALLOWED TO TESTIFY, THE TRUTH OF THE ARTICLE OR THE TRUTH OF

10:15AM 6    WHAT IS IN THE ARTICLE MAY ALREADY BE PROVEN AT TRIAL THROUGH

10:15AM 7    LIVE TESTIMONY, THROUGH WITNESSES WHO EXPERIENCED IT FIRSTHAND,

10:15AM 8    AND AT THAT POINT IN TIME THE GOVERNMENT MAY NOT SEEK TO

10:15AM 9    INTRODUCE THE ARTICLE FOR THE PURPOSES OF THE TRUTH BUT MERELY

10:15AM 10   FOR THE EFFECT ON THE LISTENER.

10:15AM 11        IN PARTICULAR, IF THESE ARTICLES WERE SHARED WITH BOARD

10:15AM 12   MEMBERS OR INVESTORS AS A WAY -- AN THE EFFECT ON THE READER TO

10:15AM 13   SAY, YES, THERE WAS AN ARTICLE THAT MADE CLAIMS, BUT HERE'S WHY

10:15AM 14   THE COMPANY DOESN'T BELIEVE THAT THAT ARTICLE WAS ACCURATE.

10:15AM 15            THE COURT:  CAN I ASK YOU TO EXPAND ON THAT?

10:16AM 16        I NOTICED IN YOUR PLEADINGS YOU SUGGEST THE EFFECT ON THE

10:16AM 17   LISTENER, THE EFFECT ON THE READER.  IF YOU COULD EXPAND ON

10:16AM 18   THAT SO I COULD CAPTURE EXACTLY WHAT YOU MEAN, WHO IS THE

10:16AM 19   READER AND WHO IS THE LISTENER IN THAT ANALYSIS?

10:16AM 20            MS. VOLKAR:  ABSOLUTELY, YOUR HONOR.

10:16AM 21        THERE ARE SEVERAL WITNESSES, ONE OF WHOM THE DEFENDANT

10:16AM 22   HIRED IN PART TO HELP WITH THE MEDIA THAT CAME FROM

10:16AM 23   "THE WALL STREET JOURNAL'S" EXPOSE, SO TO SPEAK, OF WHAT WAS --

10:16AM 24   I'M HESITATING TO SAY THE TRUTH OF WHAT WAS GOING ON AT

10:16AM 25   THERANOS.  I KNOW THAT'S, OF COURSE, WHAT IS IN DEBATE, BUT

10:16AM 1    "THE WALL STREET JOURNAL'S" OCTOBER 2015 ARTICLE CAUSED A

10:16AM 2    REACTION AND DEFENDANT HOLMES ACTUALLY HIRED PEOPLE TO HELP

10:16AM 3    RESPOND TO THAT MEDIA.

10:16AM 4        SO THERE ARE CERTAIN WITNESSES WHOSE JOB IT WAS TO FIELD

10:16AM 5    REPORTERS TO TALK TO THEM TO PROVIDE QUOTES OF MS. HOLMES TO

10:16AM 6    REBUT OR RESPOND IN THE MEDIA TO THESE CLAIMS.

10:16AM 7        AND THOSE ARTICLES WERE POINTED TO IN A MANNER OF SAYING

10:17AM 8    THE COMPANY IS HANDLING THIS, THE COMPANY IS RESPONDING TO

10:17AM 9    THIS, AND THEY WERE MEANT TO SHOW -- IN THE GOVERNMENT'S

10:17AM 10   PERSPECTIVE, THEY WERE A WAY OF CONTINUING THE FRAUD, THEY WERE

10:17AM 11   A WAY OF CONTINUING TO CONCEAL WHAT WAS GOING ON, THE TRUTH OF

10:17AM 12   WHAT WAS HAPPENING AT THERANOS.

10:17AM 13       SO OUR POINT WOULD BE JUST AT THIS MOMENT IN TIME THE

10:17AM 14   GOVERNMENT DOES NOT NECESSARILY PLAN TO MENTION THESE SPECIFIC

10:17AM 15   ARTICLES IN ITS OPENING, BUT AT THE SAME TIME IT'S HARD TO

10:17AM 16   PREDICT IF THEY WON'T BECOME RELEVANT LATER ON FOR BOARD

10:17AM 17   MEMBERS OR INVESTORS OR POTENTIAL WITNESSES TO SAY WHY THEY

10:17AM 18   DIDN'T NECESSARILY -- "THE WALL STREET JOURNAL" WASN'T SORT OF

10:17AM 19   THE COLLAPSE OF EVERYTHING AND BOARD MEMBERS DIDN'T NECESSARILY

10:17AM 20   PLEA IMMEDIATELY THEREAFTER.

10:17AM 21           THE COURT:  I SEE.  SO ITS EFFECT ON THAT GROUP OF

10:17AM 22   INDIVIDUALS THAT YOU'VE JUST MENTIONED, BOARD MEMBERS,

10:17AM 23   POTENTIAL INVESTORS, THAT'S THE EFFECT THAT YOU'RE SPEAKING OF?

10:17AM 24           MS. VOLKAR:  AND, AGAIN, THAT'S ONE CATEGORY AND ONE

10:17AM 25   WAY TO GET AROUND THE HEARSAY.

10:17AM 1          ANOTHER WAY IS THE MEDIA PEOPLE THAT WERE HIRED IN ORDER

10:17AM 2     TO RESPOND TO "THE WALL STREET JOURNAL" ARTICLE THAT CAME OUT

10:18AM 3     AND TO ESSENTIALLY GO ON THE OFFENSIVE TO CLEAR THERANOS'S NAME

10:18AM 4     OF SORTS, THEY CAN ALSO TALK ABOUT -- SOMETIMES THEY WERE THE

10:18AM 5     ONES WHO WERE PROVIDING THE STATEMENTS TO THE MEDIA FOLKS, AND,

10:18AM 6     THEREFORE, THEY'RE OFTEN THE ONES PROVIDING THE QUOTES AND CAN

10:18AM 7     TALK ABOUT THE ACCURACY OF THOSE QUOTES.

10:18AM 8          THE COURT:  THANK YOU.

10:18AM 9          I THINK YOU MENTIONED IN YOUR OPPOSITION THAT THE MOTION

10:18AM 10    IS PREMATURE FROM YOUR POSITION IN THAT YOU SUGGEST THAT, AS

10:18AM 11    YOU JUST DID, THAT YOU INDICATE THAT YOU, THE GOVERNMENT, IS

10:18AM 12    NOT GOING TO RAISE ANY OF THESE SEVEN ARTICLES IN THEIR OPENING

10:18AM 13    STATEMENT; AND THAT RATHER THE COURT SHOULD RESERVE ITS RULING

10:18AM 14    ON THIS; AND THAT YOU, THE GOVERNMENT, WILL ADVISE MS. HOLMES

10:18AM 15    AND THE COURT SHOULD YOU WISH TO INTRODUCE ANY OF THESE

10:18AM 16    ARTICLES OR ANY INFORMATION CONTAINED IN THE ARTICLE PRIOR TO

10:18AM 17    ITS ADMISSION OR PRIOR TO YOUR GOING FORWARD SUCH THAT THE

10:19AM 18    PARTIES WOULD HAVE AN OPPORTUNITY TO THEN DISCUSS THE

10:19AM 19    ADMISSIBILITY OF THE ARTICLE OR THE PORTION OR THE SPEAKER AND

10:19AM 20    THE REASONS FOR?

10:19AM 21         MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

10:19AM 22         THE COURT:  MR. LOOBY, WHAT'S WRONG WITH THAT?

10:19AM 23         MR. LOOBY:  WELL, I THINK, YOUR HONOR, I THINK THAT

10:19AM 24    THE GOVERNMENT'S EXHIBIT LIST IS NOW NUMBERING IN THE THOUSANDS

10:19AM 25    OF EXHIBITS AND TRIAL IS, YOU KNOW, MERE WEEKS AWAY AT THIS

10:19AM 1    POINT.

10:19AM 2         JUST FROM A TRIAL PREPARATION STANDPOINT, WE SUBMIT THAT

10:19AM 3    THE HEARSAY ISSUES IN THESE ARTICLES HAVE NOT BEEN SOLVED

10:19AM 4    EITHER BY THE OPPOSITIONS IN -- THE ARGUMENTS IN THE

10:19AM 5    GOVERNMENT'S OPPOSITION BRIEF OR IN THE NEW ARGUMENTS MADE HERE

10:19AM 6    TODAY.  SO WE SUBMIT THAT THE -- IT'S RIPE FOR ADJUDICATION

10:19AM 7    NOW.

10:19AM 8              THE COURT:  WELL, WHAT IS THE PREJUDICE OF WAITING

10:19AM 9    TO SEE IF THEY EVEN WISH TO USE THEM?

10:19AM 10        I TAKE THE MOTIONS, AND THIS MIGHT APPLY TO SOME OF THE

10:20AM 11   OTHER MOTIONS HERE AND NOT IN A PEJORATIVE SENSE, BUT THIS IS

10:20AM 12   -- FIRST OF ALL, LET ME JUST SAY AT A HIGH LEVEL, I THINK YOUR

10:20AM 13   TEAM HAS ACCEPTED THE COURT'S INVITATION THAT IT MENTIONED IN

10:20AM 14   DOCKET 798, ITS MIL ORDERS INDICATING AS TO SEVERAL, IF THE

10:20AM 15   PARTIES WISH TO RAISE SOMETHING IN THE FUTURE WITH MORE

10:20AM 16   SPECIFICITY, PARTICULARLY MS. HOLMES, THE COURT WOULD RECEIVE

10:20AM 17   THAT.

10:20AM 18        AND I TAKE YOUR FOUR MOTIONS THIS MORNING AS ACCEPTING

10:20AM 19   THAT INVITATION AND RAISING THOSE ISSUES, AND I APPRECIATE

10:20AM 20   THAT.  AND THE OFFER WAS MADE, AND THAT'S WHAT WE'RE HAVING

10:20AM 21   THIS DISCUSSION ABOUT.

10:20AM 22        BUT ATTENDANT TO THAT I'M HAVE JUST CURIOUS IF, AS

10:20AM 23   MS. VOLKAR SAYS, WE'RE ON NOTICE NOW AND SHOULD WE WISH TO

10:20AM 24   INTRODUCE ANY OF THESE, WE'LL -- WE CERTAINLY KNOW WHAT THE

10:20AM 25   CURRENT OBJECTIONS ARE.  THERE MAY BE ADDITIONAL OBJECTIONS

10:21AM  1    DEPENDING ON THE STATE OF THE EVIDENCE AT THE TIME THAT THESE

10:21AM  2    ARE SOUGHT TO BE INTRODUCED, AND THAT, THAT PLANE COULD CHANGE

10:21AM  3    BECAUSE WE DON'T KNOW WHAT WITNESSES MIGHT FOUNDATIONALLY BE

10:21AM  4    CALLED UPON TO TALK ABOUT SOME OF THESE ISSUES OR OTHERS THAT

10:21AM  5    MIGHT CHANGE THE LANDSCAPE OF ADMISSIBILITY.

10:21AM  6            MR. LOOBY:  RIGHT.

10:21AM  7            THE COURT:  I THINK THAT'S WHAT I HEAR MS. VOLKAR

10:21AM  8    SUGGESTING.

10:21AM  9            MR. LOOBY:  YEAH.  AND I THINK I DISAGREE WITH THAT

10:21AM  10   ANALYSIS FROM THE GOVERNMENT BECAUSE WHETHER OR NOT THERE IS

10:21AM  11   WITNESS TESTIMONY IN THE CASE THAT EITHER ECHOES OR PARALLELS

10:21AM  12   SOME OF THE KIND OF CONTENTIONS IN THE ARTICLES I DON'T THINK

10:21AM  13   WOULD BEAR ON THE HEARSAY ISSUES IN THE ARTICLES THEMSELVES IF

10:21AM  14   THEY'RE BEING OFFERED FOR THAT PURPOSE.

10:21AM  15       I DON'T THINK YOU CAN LIKE PROVE MID TRIAL THAT SOME

10:21AM  16   CONTENTION WAS TRUE OR NOT, AND THEN THE ARTICLE IS NO LONGER

10:21AM  17   HEARSAY BECAUSE SOME OTHER WITNESS IS VOUCHING FOR SOME FACT

10:21AM  18   CONTAINED WITHIN IT.  I DON'T THINK THAT'S HOW IT WORKS.

10:21AM  19       BUT BEYOND THAT, WHAT I HEARD IS THAT THE EFFECT ON THE

10:21AM  20   READER.  I CONCEIVE OF THAT AS THE SAME ARGUMENT, THE SAME

10:22AM  21   CONTEXT FOR THE COMPANY'S RESPONSE AND MS. HOLMES'S RESPONSE

10:22AM  22   THAT THE COURT ALREADY ADDRESSED IN ITS IN LIMINE RULING.

10:22AM  23       I UNDERSTAND WE'RE HERE ON THE EVE OF TRIAL, BUT WE HAD

10:22AM  24   HOPED THAT THIS PARTICULAR MOTION IN PARTICULAR WOULD BE RATHER

10:22AM  25   STRAIGHTFORWARD.  THIS IS A CLEAN-UP MOTION.  THESE ARTICLES

```
10:22AM    1    WITH DID NOT ATTACH TO THE PRIOR MOTION JUST TO LIMIT THE
10:22AM    2    NUMBER OF PAPERS.
10:22AM    3         SO I DON'T WANT TO BELABOR THE POINT, BUT I THINK THE
10:22AM    4    COURT'S ANALYSIS IS KIND OF THE RULE THAT WE'RE OPERATING UNDER
10:22AM    5    RIGHT NOW, AND THESE ARTICLES ARE EXCLUDED UNDER IT OR SHOULD
10:22AM    6    BE.
10:22AM    7              THE COURT:  UNTIL AND UNLESS THERE'S OTHERWISE
10:22AM    8    EVIDENCE THAT SUGGESTS THEIR ADMISSIBILITY.
10:22AM    9              MR. LOOBY:  CORRECT, AS THE NATURE OF ANY IN LIMINE
10:22AM   10    RULING FOR SURE, YOUR HONOR.
10:22AM   11         BUT I THINK AS OF RIGHT NOW IN TERMS OF WHETHER THIS
10:22AM   12    IN LIMINE RULING IS MORE OR LESS SUSCEPTIBLE TO RESOLUTION NOW
10:22AM   13    THAN ANY OTHER, I SUBMIT THAT IT IS.
10:22AM   14              THE COURT:  OKAY.  WELL, THANK YOU.
10:22AM   15         MS. VOLKAR, WHAT I THINK I HEAR YOU SAYING IS THANK YOU
10:23AM   16    FOR THE NOTICE AND WE'RE NOT GOING TO -- WE UNDERSTAND THE
10:23AM   17    COURT'S ORDER IN 798, AND WE'RE NOT GOING TO AT THIS TIME
10:23AM   18    INTRODUCE ANY OF THESE.  IF WE INTEND TO, WE'LL CERTAINLY
10:23AM   19    INFORM THE COURT OF THAT.  MS. HOLMES HAS THE RIGHT AT THAT
10:23AM   20    POINT TO LODGE ANY OBJECTIONS.
10:23AM   21              MS. VOLKAR:  THAT'S RIGHT, YOUR HONOR.  WE JUST
10:23AM   22    THINK IT'S SIMPLY PREMATURE AT THIS POINT IN TIME.  I THINK
10:23AM   23    WE'RE IN NO DIFFERENT POSITION THAN WE WERE WHEN WE WERE
10:23AM   24    ARGUING THESE MOTIONS BEFORE YOUR HONOR MONTHS AGO AND NOT A
10:23AM   25    SINGLE WITNESS HAS TESTIFIED YET, AND, THEREFORE, I THINK IT'S
```

10:23AM 1     PREMATURE TO RULE ON THESE NOW.

10:23AM 2              THE COURT:  ALL RIGHT.  ANYTHING FURTHER, MR. LOOBY?

10:23AM 3              MR. LOOBY:  NO, YOUR HONOR.

10:23AM 4              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  I

10:23AM 5     APPRECIATE IT.  THANK YOU.

10:23AM 6          LET'S TURN TO 899.  THIS IS MS. HOLMES'S RENEWED MOTION TO

10:23AM 7     EXCLUDE CERTAIN DOCTOR TESTIMONY.

10:23AM 8          GOOD MORNING, MS. TREFZ.

10:23AM 9              MS. TREFZ:  GOOD MORNING, YOUR HONOR.

10:23AM 10             THE COURT:  WHAT WOULD YOU LIKE ME TO KNOW ABOUT

10:24AM 11    THIS?

10:24AM 12             MS. TREFZ:  YOUR HONOR, THIS MOTION IS ALSO A

10:24AM 13    CLEAN-UP MOTION, AND AS THE COURT NOTED, THIS IS MS. HOLMES'S

10:24AM 14    RENEWED MOTION TO EXCLUDE CERTAIN DOCTOR TESTIMONY.  WE VIEW IT

10:24AM 15    AS FAIRLY SIMPLE.

10:24AM 16         THE COURT'S MOTION IN LIMINE ORDER INDICATED THAT IF THE

10:24AM 17    GOVERNMENT HAD NOT PROVIDED UPDATED DISCLOSURES AS TO CERTAIN

10:24AM 18    OF THE DOCTOR EXPERT WITNESS POTENTIAL AREAS OF TESTIMONY THAT

10:24AM 19    WE COULD RENEW OUR MOTION.

10:24AM 20         WE AGREED WITH THE GOVERNMENT THAT THEY WOULD PROVIDE

10:24AM 21    AMENDED DISCLOSURES AS OF JULY 30TH.  THEY DID THAT.

10:24AM 22         THEIR AMENDED DISCLOSURES SUBSTANTIALLY NARROWED THE

10:24AM 23    POTENTIAL SCOPE OF THE TESTIMONY AND IN PARTICULAR, YOU KNOW,

10:24AM 24    IDENTIFIED PARTICULAR PATIENTS, CUT OUT SOME OF THE DOCTORS.

10:24AM 25             ALL WE'RE ASKING FOR HERE IS A RULING THAT DOCTOR EXPERT

10:24AM 1     TESTIMONY ABOUT ALLEGEDLY INACCURATE TESTS BEYOND WHAT HAS BEEN

10:25AM 2     NOTICED IN THIS JULY 30TH LETTER BE EXCLUDED AS INSUFFICIENTLY

10:25AM 3     DISCLOSED UNDER RULE 16.

10:25AM 4            THE COURT:  OKAY.  THANK YOU.

10:25AM 5       I TAKE THIS -- I LOOKED AT THIS AND IT SAID, "JUDGE, WE

10:25AM 6     RECEIVED YOUR ORDER AND ON AUGUST 20TH WE WOULD LIKE TO DISCUSS

10:25AM 7     TO REMIND YOU AND HAVE THE GOVERNMENT SAY WHAT YOU SAID AND NO

10:25AM 8     MORE."

10:25AM 9       IS THIS JUST A REAFFIRMING OF THE COURT'S PREVIOUS ORDER?

10:25AM 10         MS. TREFZ:  WELL, I THINK IT'S A LITTLE BIT

10:25AM 11     DIFFERENT.

10:25AM 12       IN A SENSE YES, BUT IN A SENSE IT'S A SLIGHTLY DIFFERENT

10:25AM 13     CONTEXT BECAUSE THE COURT TECHNICALLY DENIED OUR MOTION ON

10:25AM 14     RULE 16 BEFORE AND INVITED US TO RENEW THE MOTION.  SO WE ARE

10:25AM 15     NOW RENEWING THE MOTION.

10:25AM 16       SO LIKE I SAID, IT'S A LITTLE BIT OF A CLEANUP.  WE

10:25AM 17     UNDERSTAND THAT THE GOVERNMENT SAYS IT'S GOING TO HOLD ITSELF

10:25AM 18     TO THESE DISCLOSURES, WHICH IS GREAT.  WE WOULD JUST APPRECIATE

10:25AM 19     AN ORDER MAKING THAT CLEAR, AND WE THINK THAT THAT'S

10:25AM 20     APPROPRIATE BECAUSE, YOU KNOW, THERE ARE STILL EXHIBITS ON

10:26AM 21     THEIR EXHIBIT LIST AND WITNESSES DISCLOSED THAT HAVE BEEN SORT

10:26AM 22     OF WE THINK DISCLAIMED BY THE UPDATED DISCLOSURE.

10:26AM 23         THE COURT:  RIGHT.  THEY'RE NOT ON THE LIST ANYMORE.

10:26AM 24         MS. TREFZ:  WELL, THEY ARE IS THE PROBLEM.  AND SO

10:26AM 25     WE JUST WANT TO MAKE CLEAR THAT THEY'RE NOT IF THAT MAKES

| | | |
|---|---|---|
| 10:26AM | 1 | SENSE. |
| 10:26AM | 2 | THE COURT:  FOR THIS PURPOSE? |
| 10:26AM | 3 | MS. TREFZ:  WELL, FOR THIS PURPOSE BUT AT LEAST ONE |
| 10:26AM | 4 | OF THE DOCTORS, FOR EXAMPLE, DR. ACHARYA, YOU KNOW, HIS CV IS |
| 10:26AM | 5 | STILL ON THE GOVERNMENT'S EXHIBIT LIST AS OF MONDAY, AND HE WAS |
| 10:26AM | 6 | STILL INCLUDED AS A POTENTIAL WITNESS ON THE GOVERNMENT'S -- ON |
| 10:26AM | 7 | THE JUROR QUESTIONNAIRE.  AND FROM OUR PERSPECTIVE WE'RE NOT |
| 10:26AM | 8 | SURE WHAT OF HIS TESTIMONY, POTENTIAL TESTIMONY THAT HAS NOT |
| 10:26AM | 9 | BEEN, THAT HAS NOT BEEN DISCLAIMED COULD EVEN POSSIBLY COME IN. |
| 10:26AM | 10 | SO WE'RE JUST A LITTLE BIT WEARY, AND WE WOULD JUST LIKE |
| 10:26AM | 11 | IT TO BE CLEAR. |
| 10:26AM | 12 | THE COURT:  OKAY.  MS. VOLKAR, YOU'RE RISING TO |
| 10:27AM | 13 | THIS? |
| 10:27AM | 14 | MS. VOLKAR:  I AM, YOUR HONOR.  THANK YOU. |
| 10:27AM | 15 | THE FIRST THING THAT STRIKES ME, YOUR HONOR, IS THAT |
| 10:27AM | 16 | COUNSEL'S STATEMENT CONFIRMS THAT THIS IS SIMPLY A MOTION TO |
| 10:27AM | 17 | RECONSIDER YOUR HONOR'S PRIOR RULING, AND THE GOVERNMENT |
| 10:27AM | 18 | SUBMITS THAT IT IS ENTIRELY UNNECESSARY. |
| 10:27AM | 19 | THE -- COUNSEL READS YOUR RULING CORRECTLY, BUT TAKES IT |
| 10:27AM | 20 | AS AN INVITATION THAT THE GOVERNMENT DOES NOT SEE. |
| 10:27AM | 21 | YOUR HONOR SAID, "IF THE GOVERNMENT DOES NOT PROVIDE |
| 10:27AM | 22 | UPDATED DISCLOSURES, YOU COULD BRING A MOTION." |
| 10:27AM | 23 | THEY ASKED FOR THOSE UPDATED DISCLOSURES BY JULY 30TH, AND |
| 10:27AM | 24 | WE GAVE THEM.  WE SUPPLEMENTED OUR DISCLOSURES, AND WE DID |
| 10:27AM | 25 | EVERYTHING THAT THEY ASKED AND THIS COURT ORDERED US TO DO. |

10:27AM 1    AT THIS POINT IN TIME A FURTHER ORDER IS ABSOLUTELY

10:27AM 2  UNNECESSARY.

10:27AM 3    AND THE GOVERNMENT'S CONCERN HERE IS REALLY BASED ON

10:27AM 4  SEVERAL OF THE DISPUTES THAT WE'VE HAD WITH THE DEFENSE AND

10:27AM 5  WHAT THIS ORDER MIGHT MEAN.

10:27AM 6    WHAT DO WE MEAN BY THAT?  AS WE DESCRIBED IN OUR

10:27AM 7  OPPOSITION, THIS IS AN EXAMPLE THE DEFENSE MIGHT TAKE THE

10:27AM 8  SUPPLEMENTAL DISCLOSURE TO BE THE EQUIVALENT OF AN EXPERT

10:28AM 9  REPORT AND TRY TO CLAIM THAT THE WITNESSES CANNOT TESTIFY

10:28AM 10  BEYOND WHAT THE GOVERNMENT HAS DISCLOSED IN A NOTICE DISCLOSURE

10:28AM 11  AS THE GENERAL TOPICS OF WHAT THEY MIGHT TALK ABOUT.

10:28AM 12    THEY MIGHT ALSO USE THIS TO PROHIBIT ADDITIONAL EXPERT

10:28AM 13  TESTIMONY OR OTHER WAYS THAT WE HAVEN'T YET THOUGHT ABOUT.

10:28AM 14    BUT AT THE POINT IN TIME WHAT WE'RE TRYING TO SAY IS NO

10:28AM 15  FURTHER ORDER IS NEEDED ON THIS TOPIC.  THE COURT'S MOTION IN

10:28AM 16  LIMINE ORDER ABSOLUTELY ADDRESSED THIS, TOLD THE GOVERNMENT

10:28AM 17  WHAT TO DO, THE GOVERNMENT FOLLOWED EXACTLY WHAT THE COURT SAID

10:28AM 18  TO DO AND PROVIDED ITS SUPPLEMENTAL DISCLOSURES.

10:28AM 19    NOW, TO THE EXTENT THAT COUNSEL TALKS ABOUT THE ADDITIONAL

10:28AM 20  DOCUMENT OR THE JUROR QUESTIONNAIRE, OF COURSE WE JUST DECIDED

10:28AM 21  ON MONDAY THAT THE GOVERNMENT WILL BE PROVIDING THE FIRST HALF

10:28AM 22  OF ITS WITNESSES BY A CERTAIN DATE, THE SECOND HALF OF ITS

10:28AM 23  WITNESSES.

10:28AM 24    DEFENSE COUNSEL IS GOING TO HAVE ALL OF THE NOTICE THAT IT

10:28AM 25  NEEDS IN ORDER TO PREPARE ITS DEFENSE AS WE GO FORWARD.

10:28AM 1      OF COURSE THE GOVERNMENT WAS REFINING ITS CASE AS TIME

10:29AM 2  WENT ALONG, BUT THAT DOES NOT MEAN THAT WE'RE GOING TO GO

10:29AM 3  BEYOND OR AGAINST OUR SUPPLEMENTAL DISCLOSURES.

10:29AM 4      WE MADE THEM ACCORDING TO THE COURT'S ORDER, AND WE STAND

10:29AM 5  BY THEM.  NO FURTHER ORDER IS NEEDED TO HOLD THE GOVERNMENT TO

10:29AM 6  ITS DISCLOSURES.

10:29AM 7          THE COURT:  DOES THE GOVERNMENT UNDERSTAND ITS

10:29AM 8  OBLIGATIONS, RESTRICTIONS, AND LIMITATIONS BASED ON THE COURT'S

10:29AM 9  ORDER IN DOCUMENT 798?

10:29AM 10          MS. VOLKAR:  IT DOES, YOUR HONOR.

10:29AM 11          THE COURT:  DO YOU NEED ANY CLARITY ABOUT THAT?

10:29AM 12          MS. VOLKAR:  NO, WE DO NOT, YOUR HONOR.

10:29AM 13          THE COURT:  THANK YOU.

10:29AM 14      MS. TREFZ.

10:29AM 15          MS. TREFZ:  THE ONLY THING I WOULD SAY, YOUR HONOR,

10:29AM 16  IS THAT I'M A LITTLE CONFUSED BY THE OBJECTION IN PART BECAUSE

10:29AM 17  WHAT I HEARD MS. VOLKAR SAY WAS, YOU KNOW, WE'RE CONCERNED THAT

10:29AM 18  THEY THINK THAT IF THE WITNESS TESTIFIES OUTSIDE OF WHAT HAS

10:29AM 19  BEEN DISCLOSED THAT, YOU KNOW, WE'RE GOING TO GET AN OBJECTION.

10:29AM 20      I THINK TWO MINOR POINTS RELATED TO THAT.  ONE IS THAT,

10:29AM 21  INDEED, IF THE WITNESS TESTIFIES OUTSIDE OF WHAT HAS BEEN

10:29AM 22  NOTICED IN THE EXPERT DISCLOSURE ON EXPERT TOPICS, YOU ARE

10:30AM 23  ABSOLUTELY GOING TO GET AN OBJECTION ON THAT, AND THAT IS TRUE

10:30AM 24  WHETHER OR NOT THE COURT ISSUES AN ORDER.  IT IS ACTUALLY NOT

10:30AM 25  REALLY, I THINK, ADDRESSED BY THE REQUESTED ORDER.

10:30AM 1    OUR REQUESTED ORDER IS FAIRLY SPECIFIC, AND IT IS

10:30AM 2    ESSENTIALLY THESE ARE THE PATIENTS, AND THESE ARE THE TESTS

10:30AM 3    THAT THESE DOCTORS ARE GOING TO TALK ABOUT, AND THEY'RE NOT

10:30AM 4    GOING TO TALK ABOUT ANY OTHER PATIENTS, AND THEY'RE NOT GOING

10:30AM 5    TO TALK ABOUT ANY OTHER TESTS, AND THERE'S NOT GOING TO BE A

10:30AM 6    NEW DOCTOR TO COME IN TO TALK ABOUT AN ADDITIONAL PATIENT OR

10:30AM 7    TEST.  THAT'S WHAT WE'RE WORRIED ABOUT HERE.

10:30AM 8        AND OBVIOUSLY THE GOVERNMENT HAS ITS OBLIGATION WITH

10:30AM 9    RESPECT TO THE REST OF THE DISCLOSURES.  WE'VE MADE OUR

10:30AM 10   OBJECTIONS, YOU KNOW, IN THE PAST.  WE HAD A VERY LONG

10:30AM 11   DISCUSSION ABOUT IT BEFORE.  WE'RE NOT LOOKING TO RELITIGATE

10:30AM 12   THAT.

10:30AM 13       ALL WE'RE TRYING TO DO IS SAY THESE ARE THE TESTS, THESE

10:30AM 14   ARE THE PATIENTS, AND THAT'S IT.

10:30AM 15           THE COURT:  I THINK THAT'S WHAT THE DISCLOSURE SAYS.

10:30AM 16           MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

10:30AM 17           THE COURT:  RIGHT.

10:30AM 18           MS. VOLKAR:  IN FACT, YOUR HONOR, IF I MAY?

10:31AM 19       COUNSEL'S STATEMENTS AGAIN SHOW EXACTLY WHAT THE

10:31AM 20   GOVERNMENT IS CONCERNED BY, WHICH IS THAT THE DISCLOSURE IS

10:31AM 21   GOING TO BE USED BEYOND WHAT IT IS, A DISCLOSURE MADE PURSUANT

10:31AM 22   TO THE RULES, PURSUANT TO THIS COURT'S ORDER, AND, OF COURSE,

10:31AM 23   THE GOVERNMENT IS GOING TO BE BOUND BY ITS DISCLOSURE.

10:31AM 24       WE ABSOLUTELY UNDERSTAND OUR OBLIGATIONS.  BUT TO THE

10:31AM 25   EXTENT THAT ANY FURTHER ORDER OF THE COURT IS GOING TO BE USED

10:31AM 1    AS SOMETHING TO BE USED AGAINST THE GOVERNMENT AS A TOOL IN THE

10:31AM 2    FUTURE PROCEEDINGS, THAT IS ABSOLUTELY WHAT WE ARE CONCERNED

10:31AM 3    ABOUT AND WHY WE THINK THERE'S NO NEED FOR A FURTHER ORDER.

10:31AM 4         THE COURT:  OKAY.  GREAT.  THANK YOU VERY MUCH.

10:31AM 5    THANKS FOR THE DISCUSSION.  I APPRECIATE IT.

10:31AM 6         LET'S MOVE TO 897, AND THIS IS MS. HOLMES'S MOTION TO

10:32AM 7    PARTIALLY REDACT AGENCY REPORTS.

10:32AM 8         MR. LOOBY, GOOD MORNING AGAIN.

10:32AM 9         MR. LOOBY:  GOOD MORNING AGAIN, YOUR HONOR.

10:32AM 10        SO AS WE NOTED IN OUR REPLY BRIEF, THE PARTIES AGREE THAT

10:32AM 11   THE THREE REPORTS ARE NOT FULLY ADMISSIBLE IN THEIR UNREDACTED

10:32AM 12   FORM.  THE REMAINING DISPUTES ARE RELATED TO THE TIMING FOR

10:32AM 13   WHEN THE COURT SHOULD RULE ON THE THREE GROUPINGS OF

10:32AM 14   REDACTIONS.

10:32AM 15        AS FOR ALL BUT ARGUABLY ONE OF THOSE GROUPINGS THE

10:32AM 16   REDACTIONS FOR DOUBLE HEARSAY, WHICH I'LL ADDRESS LAST, WE

10:32AM 17   SUBMIT THAT THE COURT MAY RULE ON THE REDACTIONS NOW.

10:32AM 18        SO AS FOR THE REDACTIONS FOR TESTS NOT IN THE BILL OF

10:32AM 19   PARTICULARS, THE GOVERNMENT HAS ARTICULATED NO PERMISSIBLE

10:32AM 20   PURPOSE FOR OFFERING PORTIONS OF THE CMS REPORT THAT RELATE

10:32AM 21   EXCLUSIVELY TO THOSE TESTS.

10:32AM 22        TO BE HONEST, I WOULD BE HARD PRESSED TO THINK OF ONE FOR

10:33AM 23   THEM.  THE GOVERNMENT OFFERED THE CMS FINDINGS AS EVIDENCE

10:33AM 24   BEARING ON ACCURACY AND RELIABILITY OF THERANOS'S TESTS.

10:33AM 25        THE COURT RULED ON THE WHOLE THAT THEY WERE RELEVANT FOR

10:33AM   1    THAT PURPOSE.

10:33AM   2         THE REDACTIONS SIMPLY SEEK TO SQUARE THAT RULING WITH THE

10:33AM   3    COURT'S SEPARATE RULING ON THE BILL OF PARTICULARS AND THE

10:33AM   4    TESTS NOT AT ISSUE IN THE CASE.

10:33AM   5         SO AS WE UNDERSTAND IT, THE GOVERNMENT HAS TWO MAIN

10:33AM   6    COMPLAINTS FOR THIS CATEGORY OF REDACTIONS.  THE FIRST IS THAT

10:33AM   7    THEY WEREN'T GIVEN A CHANCE TO ARTICULATE ANY PURPOSE AND THE

10:33AM   8    SECOND RELATES TO THE EXTENT OF THE REDACTIONS NECESSARY FOR

10:33AM   9    THIS PURPOSE.

10:33AM   10        ON THE FIRST ARGUMENT WE RESPECTFULLY SUBMIT THAT THE

10:33AM   11   OPPOSITION BRIEF WAS JUST THAT OPPORTUNITY TO ARTICULATE A NEW

10:33AM   12   RELEVANCE THEORY FOR THESE PORTIONS OF THE REPORT AND THE

10:33AM   13   GOVERNMENT CHOSE TO FOREGO IT.

10:33AM   14        ON THE SECOND POINT, THE PORTION OF THE REPORT THAT DEALS

10:33AM   15   WITH TESTS THAT ARE NOT AT ISSUE IN THIS CASE IS WHAT IT IS,

10:33AM   16   AND THAT'S BECAUSE WE HAVE TO MEET THE CMS REPORT WHERE IT IS.

10:34AM   17        THE REALITY THAT LARGE PORTIONS OF THE REPORT ARE

10:34AM   18   IRRELEVANT, IT NECESSARILY FOLLOWS FROM THE FACT THAT THERANOS

10:34AM   19   OFFERED A MUCH BROADER MENU OF TESTS THAN THOSE THAT THE

10:34AM   20   GOVERNMENT HAS INCLUDED IN ITS INDICTMENT IN THIS CASE.

10:34AM   21        SO IT'S NOT SURPRISING THAT AN AUDIT OF THE OVERALL LAB

10:34AM   22   WOULD SWEEP IN A LOT OF FINDINGS THAT ARE IRRELEVANT.

10:34AM   23        AND THOSE FINDINGS HAVE NO PLACE IN THE CASE UNDER THE

10:34AM   24   COURT'S ORDER, AND WE SUBMIT THAT THE COURT SHOULD ADOPT OUR

10:34AM   25   PROPOSED REDACTIONS FOR THIS PURPOSE.

| | |
|---|---|
| 10:34AM | 1 |
| 10:34AM | 2 |
| 10:34AM | 3 |
| 10:34AM | 4 |
| 10:34AM | 5 |
| 10:34AM | 6 |

10:34AM 1      SO AS FOR THE REDACTIONS FOR HIGH LEVEL OBSERVER ANALYSIS

10:34AM 2   UNDER RULE 803(8)(A), WE SUBMIT THAT THE COURT HAS BEFORE IT

10:34AM 3   WHAT IT NEEDS TO RULE ON THESE REDACTIONS AS WELL.  THESE ARE

10:34AM 4   LIMITED REDACTIONS TARGETED AT PORTIONS OF THE REPORT THAT

10:34AM 5   CONTAIN EVALUATIVE CONCLUSIONS THAT GO BEYOND FACTUAL

10:34AM 6   OBSERVATIONS.

10:34AM 7      SO IN TERMS OF THE VOLUME OF THE PROPOSED REDACTIONS,

10:34AM 8   THESE ARE ACTUALLY A MUCH SMALLER PORTION OF THE PROPOSED

10:35AM 9   REDACTIONS IN THE REPORTS.

10:35AM 10      THE PARTIES DISAGREE HERE --

10:35AM 11          THE COURT:  I'M SORRY TO INTERRUPT HERE.  ARE THESE

10:35AM 12   EXHIBIT 4?

10:35AM 13          MR. LOOBY:  YES.  SO THIS IS -- EXHIBIT 4 IS THE

10:35AM 14   FORM 483 FOR THE PALO ALTO FACILITY WITH OUR PROPOSED

10:35AM 15   REDACTIONS FOR THIS PURPOSE.

10:35AM 16          THE COURT:  SO LET ME ASK YOU, MR. LOOBY -- AND

10:35AM 17   THANKS FOR PROVIDING YOUR SUGGESTED REDACTIONS.  898-4, PAGE 2

10:35AM 18   OF 8 IT -- UNDER OBSERVATION 1 I THINK YOU INDICATE WHAT YOUR

10:35AM 19   DESIRED REDACTIONS ARE.  THOSE ARE THE SAME ON PAGE 4,

10:35AM 20   OBSERVATIONS 2, 3, 4.

10:35AM 21          MR. LOOBY:  YES.

10:35AM 22          THE COURT:  AS WELL AS OBSERVATION 5.

10:35AM 23          MR. LOOBY:  YES.

10:35AM 24          THE COURT:  AND IT'S THAT ONE SENTENCE, ISN'T IT,

10:35AM 25   "DESIGN VALIDATION DID NOT ENSURE THAT THE DEVICE CONFORMS TO

10:35AM 1    DEFINED USER NEEDS AND INTENDED USES"?

10:35AM 2         MR. LOOBY:  YES, YOUR HONOR.

10:35AM 3    SO THIS PORTION OF THE OBSERVATION IS LIKE THE TOP LEVEL

10:36AM 4    EVALUATIVE CONCLUSION, AND IT'S TIED TO SOME REGULATORY

10:36AM 5    REQUIREMENT OR OBLIGATION, AND IT'S SUPPORTED AFTER THE --

10:36AM 6    SPECIFICALLY BY FACTUAL OBSERVATIONS OR ELABORATION, AND WE

10:36AM 7    PROPOSE TO REDACT THOSE UNDER THE COURT'S ANALYSIS.

10:36AM 8    WE UNDERSTAND THAT THE COURT -- UNDER THE COURT'S ANALYSIS

10:36AM 9    THAT LARGE PORTIONS OF THESE REPORTS ARE GOING -- WERE HELD TO

10:36AM 10   BE ADMISSIBLE UNDER SUBSECTION 2 OF THE RULE, BUT WE SUBMIT

10:36AM 11   THAT UNDER THE COURT'S ANALYSIS AND CONSISTENT WITH IT IN THE

10:36AM 12   ROSA CASE, WHICH IS CITED, THAT THIS IS THE TYPE OF REDACTION

10:36AM 13   THAT EVEN IN A REPORT THAT FALLS UNDER THAT RULE IS STILL

10:36AM 14   SUBJECT TO PARTIAL EXCLUSION.

10:36AM 15   THE GOVERNMENT SAID, OH, THESE ARE SO SIMPLE.  WHY DID

10:36AM 16   THESE NEED TO BE REDACTED?

10:36AM 17   WE SUBMIT, YOUR HONOR, THEY HAVE IT ALL WRONG.  THESE ARE

10:36AM 18   ACTUALLY PORTIONS OF THE REPORT THAT REFLECT LIKE A LATER IN

10:36AM 19   TIME EVALUATION OF THE RECORD TO A REGULATORY STANDARD.  SO

10:37AM 20   THEY DO REFLECT A HIGH LEVEL ANALYSIS OF REGULATORY EXPERTISE

10:37AM 21   AND REGULATORY THINKING.

10:37AM 22        THE COURT:  THANK YOU.

10:37AM 23   WHEN I LOOKED AT THE FORM, THIS IS THE FDA 483 FORM AND IN

10:37AM 24   THE SECOND BOX -- ACTUALLY, THE FIRST BOX BELOW THE

10:37AM 25   INFORMATION, THAT IS, THE DISTRICT ADDRESS AND THE NAME OF THE

| | |
|---|---|
| 10:37AM 1 | INDIVIDUAL SERVED, IF YOU LOOK IN THAT BOX, IT DESCRIBES WHAT |
| 10:37AM 2 | THE DOCUMENT IS, AND I THINK IN THAT BOX IT USES THE WORD |
| 10:37AM 3 | "OBSERVATIONS" I THINK FIVE TIMES. |
| 10:37AM 4 | MR. LOOBY:  YES. |
| 10:37AM 5 | THE COURT:  AND IT TALKS ABOUT OBSERVATIONS. |
| 10:37AM 6 | AND THEN IN THE NEXT LARGE BOX THERE'S ANOTHER WORD |
| 10:37AM 7 | "OBSERVATIONS" USED AGAIN. |
| 10:37AM 8 | AND THEN IN THE LARGE BOX THAT IS ACTUALLY THE REPORTING |
| 10:37AM 9 | PART OF THE BOX IT STARTS OFF TALKING ABOUT "WE OBSERVED, |
| 10:37AM 10 | DURING THE INSPECTION WE OBSERVED." |
| 10:37AM 11 | AND THEN IT SAYS, AS THE GOVERNMENT FORMS TEND TO DO, |
| 10:37AM 12 | REPETITIVE, OBSERVATION 1.  AND THEN IT HAS -- THE NEXT THING |
| 10:38AM 13 | IS THE SENTENCE THAT WE TALKED ABOUT THAT YOU WOULD LIKE |
| 10:38AM 14 | REDACTED. |
| 10:38AM 15 | MR. LOOBY:  YES. |
| 10:38AM 16 | THE COURT:  IT SEEMS TO BE, AT LEAST FROM THE |
| 10:38AM 17 | VERBIAGE, THAT THIS IS ALL OBSERVATIONAL AND NOT EVALUATIVE. |
| 10:38AM 18 | MR. LOOBY:  SO, YOUR HONOR, I THINK IT'S -- THE |
| 10:38AM 19 | LINGO IN THE 483 IS OBSERVATION, THE ENTIRE KIND OF, YOU KNOW, |
| 10:38AM 20 | THE ENTIRE CITATION IS FRAMED AS THAT. |
| 10:38AM 21 | BUT IT ACTUALLY GOES BEYOND THAT.  I THINK THERE'S THE |
| 10:38AM 22 | MONICKER OBSERVATION OF USING THAT WORD, AND THAT WORD ALIGNS |
| 10:38AM 23 | WITH THE ANALYSIS IN THE CASES AND THE RULE, BUT I THINK IT'S |
| 10:38AM 24 | ALMOST MORE OF A COINCIDENCE IN THAT SENSE BECAUSE THESE ARE -- |
| 10:38AM 25 | TO BRING US OVER TO THE CMS REPORT, WHICH I THINK PRESENTS AN |

10:38AM   1   ANALOGOUS SITUATION, THOSE ARE CALLED DEFICIENCIES, BUT THEY'RE

10:38AM   2   STRUCTURED ALMOST THE SAME WAY, WHICH IS, YOU KNOW, HERE'S THE

10:38AM   3   STANDARD THAT -- WE CAME AND WE LOOKED AT SOME EVIDENCE, HERE'S

10:38AM   4   THE EVIDENCE, AND THEN HERE'S OUR CONCLUSION.

10:38AM   5        SO THIS WHOLE THING IS FRAMED AS AN OBSERVATION, BUT WE

10:39AM   6   SUBMIT THAT THE SENTENCE THAT WE'VE PROPOSED TO BE REDACTED IS

10:39AM   7   ACTUALLY AN EVALUATIVE CONCLUSION WITHIN THAT OBSERVATION.

10:39AM   8        SO I UNDERSTAND, YOUR HONOR, THE WAY THAT THE FORM IS LAID

10:39AM   9   OUT.  IT COULD BE SUSCEPTIBLE TO BEING READ AS THESE ARE ALL

10:39AM  10   JUST FACTS THAT WE SAW LIKE LYING AROUND WHEN WE WERE WALKING

10:39AM  11   THROUGH THE LABORATORY OR LOOKING AT THE DOCUMENTATION, BUT IF

10:39AM  12   YOU LOOK AT THE CONTENT OF THE SENTENCE, IT'S ACTUALLY A LITTLE

10:39AM  13   BIT MORE THAN THAT.

10:39AM  14           THE COURT:  WELL, WHEN I COMPARE THAT ONE SENTENCE,

10:39AM  15   AND THEN BELOW IN EACH OF THE EXHIBITS THAT WE'VE TALKED ABOUT,

10:39AM  16   EACH OF THOSE THAT WE'VE TALKED ABOUT, IT SEEMS LIKE THE

10:39AM  17   LANGUAGE, FOR EXAMPLE, AFTER THE SENTENCE THAT WE WERE JUST

10:39AM  18   DISCUSSING IT, THEN THE NEXT WORD IS "SPECIFICALLY."

10:39AM  19        AND THEN IT LISTS A AND B.  AND THEY'RE CORRECT, IT IS

10:39AM  20   VERY SPECIFIC, ISN'T IT?  IT TALKS ABOUT FAILURE TO ADDRESS ALL

10:39AM  21   ASSAYS OF THE ASSAYS ADDRESSED, AND THEN IT LISTS THEM.

10:40AM  22   THERE'S NO REFERENCE TO ANY DOCUMENTATIONS TO ADDRESS FAILURES.

10:40AM  23   IT'S SPECIFIC INFORMATION.

10:40AM  24        AND IT SEEMS THAT THAT IS MORE, TO YOUR POINT, THAT SEEMS

10:40AM  25   TO BE MORE CLOSER TO YOUR POINT THAN THE ONE SENTENCE THAT YOU

10:40AM 1    SEEK TO HAVE REDACTED.

10:40AM 2         MR. LOOBY:  I UNDERSTAND THAT.

10:40AM 3     I THINK THE WAY I READ IT IS THAT YOU PROVIDED THIS TEST

10:40AM 4    PLAN ASSAY, AND THEN THE TITLE OF THE REPORT, AND THEN THIS IS

10:40AM 5    THE -- COMING AFTER IT IS LIKE THIS IS WHAT WE OBSERVED IN THE

10:40AM 6    REPORT.  WE LOOKED AT THE REPORT, AND THIS IS HOW WE INTERPRET

10:40AM 7    WHAT IT IS SAYING WHAT IS IN IT, WHAT IS NOT IN IT.

10:40AM 8     AND THEN YOU GO UP TO THE TOP AND THEY SAY, "BASED ON

10:40AM 9    THAT, BASED ON THAT, WE DON'T THINK THAT THIS DOCUMENTATION

10:40AM 10   ENSURES THE DEVICE CONFORMS TO DEFINE USER NEEDS AND INTENDED

10:40AM 11   USES."  THAT'S AN FDA LIKE REGULATORY REQUIREMENT.

10:40AM 12    SO I THINK EVEN THOUGH THESE LATER FACTS ARE MORE

10:40AM 13   SPECIFIC, THEY'RE ACTUALLY CHARACTERIZING A DOCUMENT THAT THE

10:41AM 14   AGENCY DID REVIEW, AND I GUESS YOU COULD SAY OBSERVED.

10:41AM 15    AND THEN THE TOP LEVEL CONCLUSION THAT WE'VE PROPOSED TO

10:41AM 16   REDACT IS, OKAY, WHAT DOES THAT MEAN IN TERMS OF THE COMPANY'S

10:41AM 17   REGULATORY COMPLIANCE?

10:41AM 18       THE COURT:  I SEE.

10:41AM 19    COULD A WITNESS CLEAR UP THAT, IF A WITNESS WERE PRODUCED

10:41AM 20   TO TESTIFY AS TO WHAT WAS DONE, WHAT THESE MEAN, WOULD THAT

10:41AM 21   REDUCE YOUR ANXIETY ABOUT REDACTION?

10:41AM 22      MR. LOOBY:  WELL, I THINK, YOUR HONOR, THIS WOULD

10:41AM 23   STILL BE AN OUT-OF-COURT STATEMENT.  SO EVEN IF A WITNESS COULD

10:41AM 24   COME IN, AND IT WAS ONE OF THE INSPECTORS OR SOMEONE WHO COULD

10:41AM 25   SPEAK FROM THEIR PERSONAL KNOWLEDGE ABOUT WHAT WAS FOUND IN THE

10:41AM   1    INSPECTION, I THINK THAT LIVE TESTIMONY WOULDN'T POSE -- IT MAY

10:41AM   2    POSE SOME OTHER ISSUES, BUT IT WOULDN'T POSE ANY HEARSAY ISSUES

10:41AM   3    AS A REPORT ADMITTED UNDER THE EXCEPTION FOR MATTERS OBSERVED

10:42AM   4    UNDER A DUTY TO REPORT.

10:42AM   5         SO I THINK THIS QUESTION ABOUT THE ADMISSIBILITY OF THE

10:42AM   6    REPORT IS SEPARATE FROM THAT.  SO I'M NOT SURE IF THAT WOULD

10:42AM   7    AFFECT OUR POSITION.

10:42AM   8             THE COURT:  OKAY.  ALL RIGHT.

10:42AM   9         LET ME ASK YOU IF I MADE A COMMENT ON 898-6, AND THAT'S

10:42AM  10    PAGE 6.

10:42AM  11             MR. LOOBY:  YES, YOUR HONOR.

10:42AM  12             THE COURT:  YOU HAVE THREE SPECIFIC REASONS TO ASK

10:42AM  13    THAT THIS BE REDACTED AS WELL AS THE FOLLOWING PAGES, I

10:42AM  14    BELIEVE.  WELL, IT'S JUST A, B, C AS TO THAT AND THE FOLLOWING

10:42AM  15    PAGE.

10:42AM  16             MR. LOOBY:  YES.  AND WE DID THE CODING JUST BECAUSE

10:42AM  17    IT IS SUCH A VOLUMINOUS REPORT.

10:42AM  18         SO WHEN AN ENTIRE TEST -- WHEN AN ENTIRE DEFICIENCY

10:42AM  19    RELATES TO A TEST NOT ISSUED, IT WILL SOMETIMES CAPTURE WITHIN

10:43AM  20    IT EVALUATIVE CONCLUSIONS THAT OTHERWISE WOULD BE REDACTABLE,

10:43AM  21    BUT BECAUSE THAT'S THE BLANKET REDACTION THAT KIND OF COVERS

10:43AM  22    IT.  SO YOU'LL SEE OFTENTIMES THERE'S A, B, AND C APPLYING TO

10:43AM  23    ALL OF THEM.

10:43AM  24             THE COURT:  OKAY.  WELL, LET'S WAIT FOR FURTHER

10:43AM  25    DISCUSSION AFTER I HEAR FROM THE GOVERNMENT.

10:43AM 1          ANYTHING ELSE YOU WANT ME TO --

10:43AM 2                  MR. LOOBY:  YES.  I DID JUST WANT TO TALK ABOUT THE

10:43AM 3      CMS COVER LETTER FOR A MOMENT.

10:43AM 4                  THE COURT:  RIGHT.

10:43AM 5                  MR. LOOBY:  SO WE DISAGREE WITH THE GOVERNMENT THAT

10:43AM 6      THE COURT'S MAY ORDER CAN AND SHOULD BE READ TO HAVE ALREADY

10:43AM 7      ADMITTED THE CMS COVER LETTER.

10:43AM 8                  THE COURT:  SO THAT'S AN INTERESTING ISSUE -- I KEEP

10:43AM 9      INTERRUPTING, AND I APOLOGIZE, MR. LOOBY, BUT I JUST WANT TO

10:43AM 10     CAPTURE MY THOUGHT.

10:43AM 11                 MR. LOOBY:  YES.

10:43AM 12                 THE COURT:  IT SEEMS WHEN WE WERE DISCUSSING THE

10:43AM 13     MOTIONS IN LIMINE, I BELIEVE THE GOVERNMENT WAS ACCURATE IN

10:43AM 14     SUGGESTING THAT YOUR TEAM TALKED ABOUT THE COVER LETTER AND

10:43AM 15     YOUR RESPONSE, AND IT WAS PART OF THE CONVERSATION REGARDING

10:43AM 16     THE CMS.  YOU CALLED IT OUT.

10:44AM 17         AND, OF COURSE, THE COURT DID NOT PARSE OUT EACH PAGE OF

10:44AM 18     THE CMS REPORT THAT IT SAID IT WAS GOING TO ALLOW IN.  IT SAID

10:44AM 19     THE CMS REPORT IS IN.

10:44AM 20         AND I THINK, MS. VOLKAR -- I DON'T MEAN TO SPEAK FOR

10:44AM 21     HER -- BUT IT SEEMS THAT THE GOVERNMENT'S POSITION IS, WELL, IT

10:44AM 22     WAS PART OF THE DISCUSSION AND IN FOR A PENNY, YOU KNOW, IT ALL

10:44AM 23     WAS SUBSUMED IN THAT.

10:44AM 24         AND YOU THINK DIFFERENTLY?

10:44AM 25                 MR. LOOBY:  I THINK DIFFERENTLY.  AND, YOUR HONOR, I

10:44AM 1    REMEMBER IT WELL, OUR EXCHANGE ON THIS --

10:44AM 2         THE COURT:  RIGHT.

10:44AM 3         MR. LOOBY:  -- BECAUSE WE TALKED ABOUT THE IMMEDIATE

10:44AM 4    JEOPARDY FINDING AND WHETHER OR NOT THAT WAS RELEVANT OR

10:44AM 5    UNFAIRLY PREJUDICIAL.

10:44AM 6         AND THE IMMEDIATE JEOPARDY FINDING DOES APPEAR IN THE

10:44AM 7    LETTER, AND I THINK THE CONTEXT IS IMPORTANT THAT WE HAD MOVED

10:44AM 8    NOT TO EXCLUDE NOT JUST THE FORM 2567 AND ITS FINDINGS, BUT ALL

10:44AM 9    TESTIMONY AND EVIDENCE RELATING TO THE CMS INSPECTION AND ITS

10:44AM 10   FINDINGS.

10:44AM 11        AND WHEN WE WERE HAVING THAT EXCHANGE, I UNDERSTOOD IT TO

10:44AM 12   BE ABOUT, WELL, IS THIS RELEVANT?  IS IT UNFAIRLY PREJUDICIAL?

10:44AM 13        AND I UNDERSTAND, YOUR HONOR -- WE UNDERSTAND YOUR HONOR'S

10:45AM 14   RULING ON THAT, BUT WE DON'T UNDERSTAND A RELEVANCE OR UNFAIR

10:45AM 15   PREJUDICE RULING MEANING THAT ANY OUT-OF-COURT STATEMENT ABOUT

10:45AM 16   THE IMMEDIATE JEOPARDY FINDING IN ANY DOCUMENT IS NOT HEARSAY

10:45AM 17   BECAUSE IT RELATES TO A MATTER OBSERVED.

10:45AM 18        WE SUBMIT THAT ANY OUT-OF-COURT STATEMENT WOULD STILL NEED

10:45AM 19   TO FIT WITHIN A HEARSAY EXCEPTION.

10:45AM 20        THE GOVERNMENT HAD MOVED TO ADMIT SPECIFICALLY THE REPORT

10:45AM 21   ITSELF BECAUSE THEIR REQUESTED RELIEF WAS MORE NARROW, AND THE

10:45AM 22   COURT'S HEARSAY ANALYSIS PRECEDED WITH RESPECT TO THE REPORT.

10:45AM 23        SO WE DON'T THINK THAT THE CMS LETTER FITS WITHIN THE

10:45AM 24   EXCEPTION THAT THE REPORT HAS BEEN RULED TO FALL UNDER FOR ALL

10:45AM 25   OF THE REASONS STATED IN OUR BRIEFING, WHICH THE GOVERNMENT

10:45AM  1    LARGELY IGNORES.

10:45AM  2              THE COURT:  OKAY.  THANK YOU.

10:45AM  3         I INTERRUPTED YOU, MR. LOOBY.  DID YOU WANT TO --

10:45AM  4              MR. LOOBY:  OH.  JUST FINALLY, AND MAKE WE CAN

10:46AM  5    ADDRESS THIS A LITTLE LATER ON, BUT WITH RESPECT TO THE DOUBLE

10:46AM  6    HEARSAY REDACTIONS, WE UNDERSTAND THAT THE COURT'S RULING

10:46AM  7    PERMITS THE GOVERNMENT TO TRY TO LAY THE FOUNDATION TO ADMIT

10:46AM  8    THESE STATEMENTS IN THE REPORT.

10:46AM  9         WE SUBMIT THAT THEY HAVE NOT DONE SO NOW.  WE ALSO SUBMIT

10:46AM  10   THAT THEY WON'T BE ABLE TO DO SO WITH RESPECT TO THESE SPECIFIC

10:46AM  11   LAB STAFF WHO WERE QUOTED IN THE REPORT.

10:46AM  12        BUT WE ALSO ACKNOWLEDGE IF THE COURT WERE TO DEFER ON ANY

10:46AM  13   ISSUE RELATED TO THIS MOTION, THIS IS THE CATEGORY WHERE IT

10:46AM  14   MIGHT MAKE SENSE.

10:46AM  15        WE ASK, HOWEVER, THAT IF THE COURT DOES DEFER ON THIS

10:46AM  16   ISSUE, WE DO SO BY LEAVING THE REDACTIONS IN PLACE FOR NOW, AND

10:46AM  17   THEN WE CAN REVISIT THEM IF AND WHEN THE GOVERNMENT BELIEVES

10:46AM  18   THAT IT HAS LAID THE FOUNDATION FOR THE ADMISSION OF THOSE

10:46AM  19   PARTICULAR STATEMENTS.

10:46AM  20             THE COURT:  THANK YOU FOR THAT.  THANKS FOR THAT

10:46AM  21   OBSERVATION.  I THINK YOU'RE DOVETAILING ON THE COURT'S

10:46AM  22   INVITATION TO RAISE CERTAIN ISSUES AND CONCURRENT WITH THAT IS

10:46AM  23   WHAT IS THE TIMING FOR THAT?

10:46AM  24        AND YOU AND YOUR TEAM HAVE INDICATED, WELL, IT'S NOW.  WE

10:47AM  25   WANT TO TELL YOU WHAT OUR OBJECTIONS ARE AND THESE, I THINK

10:47AM 1    YOUR TEAM IS SUGGESTING, THESE OBJECTIONS ARE DIFFERENT FROM

10:47AM 2    OUR ARGUMENTS AT THE MIL HEARING BECAUSE THAT'S WHAT I ASKED

10:47AM 3    YOU TO DO, NOT SAME ARGUMENTS BUT DIFFERENT ARGUMENTS AS TO

10:47AM 4    SPECIFIC PIECES OF EVIDENCE.  THAT'S WHAT YOU'VE DONE HERE.

10:47AM 5        I APPRECIATE YOU RECOGNIZING AND USING THE WORD "DEFER."

10:47AM 6    BECAUSE IT JUST MAY BE -- WE DON'T KNOW.  THE TRIAL HAS NOT

10:47AM 7    STARTED YET.  THE EVIDENCE HAS NOT YET BEEN INTRODUCED.  AND I

10:47AM 8    SUPPOSE THERE IS A POSSIBILITY FOR FOUNDATIONAL PRESENTATION AS

10:47AM 9    TO SOME OF THESE THINGS, I THINK YOU CONCEDE THAT AS YOU'VE

10:47AM 10   JUST SAID, FOR SOME OF THESE, POTENTIALLY ALL BUT AT LEAST SOME

10:47AM 11   OF THEM.  I APPRECIATE THE OBSERVATION.

10:47AM 12            MR. LOOBY:  YES.  YOU KNOW, WE RAISE IT NOW BECAUSE

10:47AM 13   WE RECOGNIZE ALSO THAT THIS PRESENTS SOME DIFFICULT ISSUES, AND

10:47AM 14   THESE ARE LONG REPORTS WITH A LOT OF PROPOSED REDACTIONS.

10:47AM 15       WE SUBMIT THAT THIS IS THE TIME TO START TALKING ABOUT

10:47AM 16   THIS AND TO RAISE OUR OBJECTIONS ON IT AT THE COURT'S

10:48AM 17   INVITATION.

10:48AM 18       WE ALSO SUBMIT THAT SOME OF THEM, LIKE THE BILL OF

10:48AM 19   PARTICULARS TESTS, I MEAN, THE GOVERNMENT DIDN'T OFFER ANY

10:48AM 20   PERMISSIBLE PURPOSE.  THAT'S THE BULK OF THE REDACTIONS, AND I

10:48AM 21   DON'T SEE THAT CHANGING.

10:48AM 22       SO EVEN IF THE COURT WERE TO DEFER ON ADOPTING THE ACTUAL

10:48AM 23   REDACTIONS, I THINK THE GOVERNMENT HAS NOT OFFERED A

10:48AM 24   PERMISSIBLE PURPOSE FOR THOSE.

10:48AM 25            THE COURT:  AND THEY MAY NOT INTRODUCE THEM IN THEIR

10:48AM   1    CASE-IN-CHIEF FOR ALL WE KNOW.

10:48AM   2         MR. LOOBY:  RIGHT.  IN THEIR OPPOSITION, ONE OF

10:48AM   3    THEIR COMPLAINTS WAS, YOU KNOW, WE DIDN'T HAVE AN OPPORTUNITY

10:48AM   4    TO SAY WHICH PORTIONS OF THE REPORT WE ACTUALLY WANT TO USE AND

10:48AM   5    WHY.

10:48AM   6         YOU KNOW, IT'S -- AGAIN, I SOUND LIKE A BROKEN RECORD, BUT

10:48AM   7    TRIAL IS DAYS AWAY AT THIS POINT AND THESE ARE, YOU KNOW,

10:48AM   8    IMPORTANT PIECES OF EVIDENCE POTENTIALLY IN THE CASE.  I THINK

10:48AM   9    ANY CLARITY THAT WE CAN GAIN SOONER RATHER THAN LATER WOULD

10:48AM  10    AVOID DISRUPTING THE PROCEEDINGS AND JUST MAKE EVERYTHING

10:48AM  11    SIMPLER FOR EVERYBODY.

10:49AM  12         THE COURT:  OKAY.  THANK YOU.

10:49AM  13    MS. VOLKAR.

10:49AM  14         MS. VOLKAR:  THANK YOU, YOUR HONOR.

10:49AM  15    I WANT TO START WITH MY COLLEAGUE'S LAST COMMENT THERE

10:49AM  16    WHICH IS WE ARE DAYS AWAY FROM TRIAL AND THAT MAKES IT ALMOST

10:49AM  17    MORE ABSURD TO ME THAT PARTICULARLY WITH THIS RULING WITH THE

10:49AM  18    CMS, THIS IS NOT -- THIS IS THE MOST CLEAREST EXAMPLE OF A

10:49AM  19    MOTION TO RECONSIDER.  THIS IS NOT AN INSTANCE WHERE THE COURT

10:49AM  20    INVITED FURTHER COMMENT FROM DEFENSE COUNSEL.

10:49AM  21         THEY ESSENTIALLY TOOK YOUR HONOR'S RULING WITH RESPECT TO

10:49AM  22    THE FDA AND OTHER ASPECTS OF THE MOTION IN LIMINE RULING AND

10:49AM  23    ARE TRYING TO APPLY IT TO ONE OF THE CLEAREST, MOST CRISP

10:49AM  24    STATEMENTS THAT YOU HAVE MADE IN YOUR MOTION IN LIMINE ORDER,

10:49AM  25    WHICH IS TO GRANT THE GOVERNMENT'S ADMISSION OF THE CMS REPORT

10:49AM  1    AND TO DENY THEIR REQUEST TO NOT ONLY EXCLUDE THE CMS REPORT,

10:49AM  2    BUT THE CMS LETTER WHICH WAS TALKED ABOUT FOR AT LEAST A HALF

10:49AM  3    HOUR AT THE HEARING, NOT JUST FOR RELEVANCE AND UNDUE

10:49AM  4    PREJUDICE, BUT ALSO FOR HEARSAY.

10:49AM  5        THEY'RE TRYING TO TURN YOUR HONOR'S RULING ON ITS HEAD

10:49AM  6    MERE WEEKS BEFORE TRIAL.

10:49AM  7        AND THE GOVERNMENT AND WE STRENUOUSLY OBJECT TO BOTH THE

10:50AM  8    REPLY AND TO MR. LOOBY'S SUGGESTION THAT THE PARTIES AGREE THAT

10:50AM  9    SOME REDACTIONS ARE REQUIRED.

10:50AM  10        WE ABSOLUTELY DO NOT BOTH AGREE THAT REDACTIONS ARE

10:50AM  11    REQUIRED.  WE AGREE THAT YOUR HONOR MADE RULINGS IN OTHER

10:50AM  12    REGARDS, BUT YOUR HONOR CLEARLY ADMITTED THE CMS REPORT AND

10:50AM  13    WITHOUT ANY CAVEATS THAT I'M AWARE OF.

10:50AM  14        I JUST WANTED TO READ FROM YOUR HONOR'S ORDER WHICH SAYS,

10:50AM  15    "FOR THE REASONS ABOVE, THE COURT DENIES HOLMES'S MOTION TO

10:50AM  16    EXCLUDE THE EVIDENCE ARISING OUT OF THE CMS SURVEYS IN

10:50AM  17    QUESTION," THIS IS PAGE 20 OF ECF 798.  "THE COURT GRANTS THE

10:50AM  18    GOVERNMENT'S MOTION TO ADMIT THE JANUARY 26TH, 2016, FORM CMS

10:50AM  19    2567 STATEMENT OF DEFICIENCIES," PERIOD.

10:50AM  20        AND, YOUR HONOR, I KNOW THAT WE'RE GOING TO TALK A BIT

10:50AM  21    ABOUT WHY I THINK THEIR OTHER OBJECTIONS DON'T HAVE MERIT, BUT

10:50AM  22    I WANT TO START WITH THAT THIS IS THE CLEAREST EXAMPLE OF A

10:50AM  23    MOTION TO RECONSIDER THE COURT'S UNEQUIVOCAL STATEMENT THAT DID

10:50AM  24    NOT INVITE FURTHER COMMENT.

10:50AM  25        WITH THE FDA REPORTS, I COMPLETELY AGREE WITH YOUR HONOR,

10:51AM 1    YOU INVITED FURTHER COMMENT, DEFENSE COUNSEL TOOK YOU UP ON IT,

10:51AM 2    BUT IN THE MEANTIME THEY'RE TRYING TO BRING INTO YOUR COMMENTS

10:51AM 3    ON THE FDA REPORTS A RULING THAT WAS CLEAR AND UNEQUIVOCAL ON

10:51AM 4    THE CMS REPORT, AND, THEREFORE, TODAY WE'RE HAVING A LOT OF THE

10:51AM 5    SAME DISCUSSIONS THAT WE HAD MONTHS AGO.

10:51AM 6         AND I WANT TO START ON THAT POINT WITH THE BILL OF

10:51AM 7    PARTICULARS BECAUSE ONE OF THE THINGS THAT I JUST HEARD

10:51AM 8    OPPOSING COUNSEL SAY IS THAT THE GOVERNMENT HAS NEVER PROVIDED

10:51AM 9    ANY THEORY OF RELEVANCE FOR THE ASSAYS NOT IN THE BILL OF

10:51AM 10   PARTICULARS, BUT THAT'S ABSOLUTELY NOT CORRECT.

10:51AM 11        THE GOVERNMENT PROVIDED EXACTLY THAT MULTIPLE THEORIES OF

10:51AM 12   RELEVANCE IN ITS OPPOSITION TO -- OR SORRY, IN ITS OPPOSITION

10:51AM 13   TO THE CMS REPORT AND IN CONNECTION WITH ITS MOTION IN LIMINE

10:51AM 14   TO ACCEPT THE MOTION IN LIMINE REPORT.

10:51AM 15        AND SPECIFICALLY -- ONE MOMENT, YOUR HONOR.

10:52AM 16        (PAUSE IN PROCEEDINGS.)

10:52AM 17             MS. VOLKAR:   ECF 664 AT 5 THE GOVERNMENT EXPLAINED

10:52AM 18   HOW IT COULD BE USED FOR SHOWING NOT JUST THAT THERE WERE

10:52AM 19   INACCURATE AND UNRELIABLE TESTS FOR THE TESTS IN THE BILL OF

10:52AM 20   PARTICULARS, BUT THEY COULD ALSO SHOW THAT THERE WERE

10:52AM 21   DEFICIENCIES IN THERANOS'S OVERALL LAB PRACTICES AND A LACK OF

10:52AM 22   DOCUMENTATION ABOUT QUALITY CONTROL OR QUALITY ASSURANCE FROM

10:52AM 23   WHICH JURORS COULD INFER INFORMATION THAT IS RELEVANT ABOUT THE

10:52AM 24   TESTS.

10:52AM 25        AND WHAT I'M TRYING TO SAY THERE, YOUR HONOR, THERE ARE

10:52AM 1    MULTIPLE WAYS IN WHICH THIS INFORMATION IN THE CMS REPORT COULD

10:52AM 2    BE RELEVANT EVEN IF IT'S NOT TALKING ABOUT THE INACCURACY OR

10:52AM 3    UNRELIABILITY OF AN ASSAY THAT IS NOT ON THE BILL OF

10:52AM 4    PARTICULARS.

10:52AM 5        AND I SAY THIS, AND I'M ACTUALLY GENUINELY SURPRISED ABOUT

10:52AM 6    OPPOSING COUNSEL'S ASSISTANCE ON THIS BECAUSE THIS WAS DEBATED

10:53AM 7    FOR HOURS AT THE MOTION IN LIMINE HEARING.  AND YOUR HONOR

10:53AM 8    THOROUGHLY AND THOUGHTFULLY WENT THROUGH THIS AND DECIDED IN

10:53AM 9    THE GOVERNMENT'S FAVOR THAT, YES, THIS WAS.

10:53AM 10       AND JUST AS AN EXAMPLE, AND I THINK YOUR HONOR WAS LOOKING

10:53AM 11   AT THIS, IF YOU LOOK AT THE FIRST FIVE PAGES OF THE CMS REPORT,

10:53AM 12   WHICH IS PAGE 6, 898-6 THAT YOU WERE REFERRING TO, IS ENTIRELY

10:53AM 13   HIGHLIGHTED.  AND THERE ARE PAGES AND PAGES AND PAGES OF THE

10:53AM 14   126 PAGE REPORT THAT ARE JUST ENTIRELY HIGHLIGHTED AND

10:53AM 15   REDACTED.

10:53AM 16       AND AS I STATED IN MY OPPOSITION TO THEIR MOTION TO

10:53AM 17   RECONSIDER, WHAT THEY SEEK TO DO IS TURN THE GOVERNMENT'S --

10:53AM 18   I'M SORRY, TO TURN THE COURT'S MOTION IN LIMINE GRANTING THE

10:53AM 19   GOVERNMENT'S -- I'M SORRY, THE COURT'S ORDER GRANTING THE

10:53AM 20   GOVERNMENT'S MOTION IN LIMINE TO INCLUDE THE CMS REPORT INTO

10:53AM 21   INCLUDING LESS THAN 15 PERCENT, LESS THAN A QUARTER OF THAT

10:53AM 22   REPORT.

10:53AM 23       THEY WANT TO TURN THE COURT'S ORDER ENTIRELY ON ITS HEAD

10:53AM 24   AND EXCLUDE THREE-QUARTERS OF THE REPORT AND MOST ANYTHING THAT

10:54AM 25   ACTUALLY RELATES TO WHAT THERANOS WAS OR WASN'T DOING IN THE

10:54AM  1      EYES OF CMS.

10:54AM  2           SO I JUST WANT TO STRENUOUSLY PUT FORTH THE GOVERNMENT'S

10:54AM  3      POSITION THAT OUT OF ALL OF THE MOTIONS, THIS ONE IS THE MOST

10:54AM  4      OBVIOUSLY A MOTION TO RECONSIDER WHERE THE COURT PREVIOUSLY

10:54AM  5      WAS.

10:54AM  6               THE COURT:  ALL RIGHT.  THANK YOU.

10:54AM  7               MR. LOOBY:  SO, YOUR HONOR, ON THE HEARSAY POINT IN

10:54AM  8      PARTICULAR, IN THE COURT'S ANALYSIS IN ITS IN LIMINE RULING AND

10:54AM  9      IT INCORPORATED THE DISCUSSION OF THE HEARSAY ISSUES FROM THE

10:54AM  10     FDA REPORT, AND THAT'S WHERE THE COURT OBSERVED THAT THERE ARE

10:54AM  11     SOME OBSERVATIONS IN THE FDA INSPECTION DOCUMENTS THAT GO

10:54AM  12     BEYOND MERE ANALYSIS, AND WE SUBMIT A MERE FACTUAL OBSERVATIONS

10:54AM  13     TO INCLUDE THE HIGH LEVEL ANALYSIS AND THAT THOSE MIGHT NOT BE

10:54AM  14     ADMISSIBLE UNDER THE HEARSAY RULE.

10:54AM  15          WE SUBMIT THE SAME IS TRUE WITH THE CMS REPORT.

10:54AM  16          AND I THINK THE OTHER THING ABOUT MY FRIEND'S ARGUMENT IS

10:55AM  17     THAT, YES, YOUR HONOR ADMITTED THE CMS REPORT ITSELF, BUT

10:55AM  18     YOUR HONOR ALSO EXCLUDED EVIDENCE RELATING TO ACCURACY AND

10:55AM  19     RELIABILITY OF TESTS NOT AT ISSUE IN THE BILL OF PARTICULARS.

10:55AM  20          IF YOU GO TO THAT FIRST DEFICIENCY ON PAGE 6 OF 898-6

10:55AM  21     BECAUSE WE WERE ALL THERE, IF YOU LOOK AT WHY IT'S COMPLETELY

10:55AM  22     IRRELEVANT AND JUSTIFIABLY REDACTED, THE CONTENT OF IT IS THAT

10:55AM  23     THE LABORATORY WAS ENROLLED IN A COLLEGE OF AMERICAN

10:55AM  24     PATHOLOGIST PT PROGRAM FOR THIS SPECIFIC ASSAY ALKALINE

10:55AM  25     PHOSPHATE, ALPTPPT, AND THAT THEY HAD A NONGRADED RESULT THAT

10:55AM   1    NEEDED TO BE INVESTIGATED.

10:55AM   2         I DON'T SEE HOW THIS IS RELEVANT TO ANY OF THE THEORIES

10:55AM   3    THAT THE GOVERNMENT HAS PUT FORWARD, AND SO WE PROPOSE THAT

10:56AM   4    THESE OBSERVATIONS BE REDACTED.

10:56AM   5         AND I HAVEN'T HEARD ANY RELEVANCE THEORY THAT WOULD MAKE

10:56AM   6    THIS AN ISSUE IN THE CASE.

10:56AM   7              THE COURT:  LOOKING AT THAT SAME PAGE, IT LOOKS LIKE

10:56AM   8    PARAGRAPH OR ITEM D, IS THAT THE HEARSAY OR AN EXAMPLE OF THE

10:56AM   9    HEARSAY THAT YOU THINK IS OBVIOUS HERE?

10:56AM  10              MR. LOOBY:  YES, YOUR HONOR.

10:56AM  11         SO THIS ONE IS CODED A, B, AND C BECAUSE IT CONTAINS

10:56AM  12    WITHIN IT ALL OF THE DIFFERENT REDACTIONS.  SO IT'S COMPLETELY

10:56AM  13    IRRELEVANT BECAUSE IT RELATES EXCLUSIVELY TO A TEST NOT AT

10:56AM  14    ISSUE.

10:56AM  15         AND I WILL SAY, YOUR HONOR, WE DIDN'T REDACT OBSERVATIONS

10:56AM  16    THAT RELATED TO LAB PRACTICES THAT COULD POTENTIALLY IMPACT

10:56AM  17    OTHER TESTS.  LIKE, FOR EXAMPLE, THERE ARE OBSERVATIONS ABOUT

10:56AM  18    FREEZER TEMPERATURES.  SO WHERE WE COULDN'T DETERMINE

10:56AM  19    ABSOLUTELY THAT THIS DOESN'T RELATE TO A TEST NOT AT ISSUE, WE

10:56AM  20    PROPOSED TO LEAVE THOSE UNREDACTED, EVEN THOUGH THE CONNECTION

10:56AM  21    BETWEEN THAT AND ANY ISSUE IN THE CASE IS A LITTLE TENUOUS IN

10:56AM  22    MY OPINION.

10:56AM  23         YOU KNOW, WE WERE CONSERVATIVE IN REDACTING FOR WHAT IS

10:56AM  24    NOT AT ISSUE IN THE CASE.  THE FACT THAT IT'S A SUBSTANTIAL

10:57AM  25    PORTION OF THE REPORT, I MEAN IT -- LIKE I SAID BEFORE, IT'S AN

10:57AM 1    AUDIT OF THE ENTIRE LABORATORY PRACTICE AND DIFFERENT TESTS

10:57AM 2    EACH HAVE THEIR OWN FINDINGS, AND THERE ARE CERTAIN TESTS THAT

10:57AM 3    ARE NOT AT ISSUE IN THE CASE.  THERE A LOT OF TESTS THAT ARE

10:57AM 4    NOT AT ISSUE IN THE CASE.

10:57AM 5         THE COURT:  I UNDERSTAND.

10:57AM 6       THIS GETTING BACK TO THIS D, IT SAYS, "THE GENERAL

10:57AM 7    SUPERVISOR STATED THAT THE QUALITY CONTROL," ET CETERA.  THAT'S

10:57AM 8    THE HEARSAY PORTION?

10:57AM 9         MR. LOOBY:  YES.

10:57AM 10        THE COURT:  AS WELL AS THE FOLLOWING E, "THE MANAGER

10:57AM 11   CONFIRMED"?

10:57AM 12        MR. LOOBY:  YES.

10:57AM 13        THE COURT:  MAYBE THAT'S NOT AS STRONG OF A HEARSAY

10:57AM 14   ISSUE, BUT THAT'S THE HEARSAY THAT YOU'RE TALKING ABOUT?

10:57AM 15        MR. LOOBY:  YEAH.  THEY VARY IN THE WAY THAT THEY

10:57AM 16   DESCRIBE THE INFORMATION ORALLY RELAYED FROM THE LAB STAFF, BUT

10:57AM 17   IT'S ALL -- THE BASIS OF THE OBSERVATIONS ARE WHAT WAS TOLD TO

10:57AM 18   THE INSPECTOR.

10:57AM 19        MS. VOLKAR:  YOUR HONOR, IF I MAY?  I WANT TO

10:57AM 20   RESPOND TO THAT AND ALSO TO SEVERAL COMMENTS THAT MR. LOOBY

10:57AM 21   MADE EARLIER AS WELL.

10:57AM 22       SO FIRST AND FOREMOST WITH THE DOUBLE HEARSAY, AGAIN, I GO

10:57AM 23   BACK TO THIS IS ONE OF THE CLEAREST EXAMPLES OF SOMETHING THAT

10:58AM 24   THE COURT HAS REALLY ALREADY DECIDED, AND THEY'RE JUST

10:58AM 25   ESSENTIALLY ASKING THE COURT TO RECONSIDER OR TO REVISIT ITS

10:58AM  1        PRIOR RULING.

10:58AM  2             AND WHAT DO I MEAN BY THAT?  IN A PRIOR PART -- IN A

10:58AM  3        DIFFERENT PART OF YOUR ORDER AT 2527 YOU TALKED ABOUT A

10:58AM  4        DIFFERENT CMS REPORT, THE SEPTEMBER 5TH, 2015 CMS LETTER AND

10:58AM  5        FOUND THAT IT WAS SUFFICIENTLY LINKED TO MS. HOLMES TO OVERCOME

10:58AM  6        THE AGENCY CONCERNS THAT YOUR HONOR HAD FOR THE ADOPTED

10:58AM  7        ADMISSIONS.

10:58AM  8             IN THAT SAME GOVERNMENT'S OPPOSITION ECF 677, THE

10:58AM  9        GOVERNMENT TALKED ABOUT ALSO THESE SAME CMS, THE SAME

10:58AM  10       INSPECTION, HOW MS. HOLMES SHADOWED THE CMS INSPECTOR DURING

10:58AM  11       ONE OF THEM.  EVERYONE SHE TALKED TO MS. HOLMES WAS THERE.

10:58AM  12            SO THE IDEA THAT THESE ARE DIFFERENT EVENTS OR THAT THE

10:58AM  13       STATEMENTS THAT MIGHT HAVE MADE THEIR WAY INTO THIS REPORT

10:58AM  14       DIDN'T HAVE MS. HOLMES ESSENTIALLY RIGHT THERE THE ENTIRE TIME

10:58AM  15       DOESN'T MAKE ANY SENSE.

10:58AM  16            AND I GO BACK TO YOUR HONOR FOUND THAT ESPECIALLY WHEN ALL

10:58AM  17       OF THESE ITEMS WERE CRYSTAL CLEAR IN EVERYONE'S MINDS MONTHS

10:59AM  18       AGO AS WE BRIEFED THIS EXTENSIVELY.  YES, YOUR HONOR'S RULING

10:59AM  19       ONLY RELATED TO ONE LETTER, BUT IT EXTENDS TO THESE OTHER ITEMS

10:59AM  20       AS WELL.

10:59AM  21            AND I WOULD POSIT THAT THAT'S WHY YOUR HONOR DID FIND THAT

10:59AM  22       THERE WAS NO HEARSAY PROBLEMS WITH THE CMS REPORT WHEN YOU

10:59AM  23       DECIDED TO ADMIT IT MONTHS AGO.

10:59AM  24            AND I ALSO -- ON THAT SAME TOPIC, THE CMS LETTER THAT WE

10:59AM  25       WERE TALKING ABOUT BEFORE, THERE WAS A LENGTHY BACK AND FORTH

10:59AM   1   BETWEEN THE PARTIES AND YOUR HONOR ABOUT WHETHER OR NOT THE CMS

10:59AM   2   LETTER CONSTITUTED HEARSAY AS WELL AS RELEVANCE AND UNDUE

10:59AM   3   PREJUDICE.

10:59AM   4       AND IN YOUR HONOR'S RULING WHEN YOU SAID YOU DID NOT FIND

10:59AM   5   A HEARSAY PROBLEM, YOU TALKED ABOUT THE CMS HEARSAY FINDINGS

10:59AM   6   AND SANCTIONS.  YOU DID NOT LIMIT IT JUST TO THE CMS REPORT

10:59AM   7   WHEN YOU FOUND THERE WAS NOT A HEARSAY PROBLEM.

10:59AM   8       AND SO I GO -- THEN THERE ARE, OF COURSE, REASONS FOR

10:59AM   9   THAT, WHICH, AGAIN, WE TALKED ABOUT MONTHS AGO, BUT I'M HAPPY

10:59AM  10   TO REPEAT HERE.

10:59AM  11       FOR EXAMPLE, THE CMS COVER LETTER TALKS ABOUT THE EFFECT

10:59AM  12   ON THE HEARER.  WHAT DID MS. HOLMES DO IN RESPONSE TO RECEIVING

11:00AM  13   THAT LETTER THAT WAS TITLED IMMEDIATE JEOPARDY.

11:00AM  14       WHAT WAS THE NEXT STEPS THAT THERANOS HAD TO TAKE IN A

11:00AM  15   LEGAL OBLIGATION WAY TO RESPOND TO AND REACT TO THAT?

11:00AM  16       AGAIN, I'M TRYING TO REPEAT ARGUMENTS THAT I KNOW

11:00AM  17   YOUR HONOR HAS ALREADY HEARD, BUT AT THE SAME TIME THIS HAS

11:00AM  18   BEEN DISCUSSED VERY THOROUGHLY, AND I GUESS THE GOVERNMENT'S

11:00AM  19   POSITION AT THE SIMPLEST IS THAT THIS HAS ALREADY BEEN

11:00AM  20   DISCUSSED AND DECIDED.

11:00AM  21       THE LAST PART THAT I WANTED TO TALK ABOUT WAS THE FDA

11:00AM  22   REPORTS.  AND I JUST WANTED TO SAY THAT THE GOVERNMENT AGREES

11:00AM  23   WITH YOUR HONOR, THEY SAY OBSERVATIONS.  THE SENTENCE THAT

11:00AM  24   THEY'RE SEEKING TO REDACT DOESN'T REALLY MAKE SENSE COMPARED TO

11:00AM  25   WHAT FOLLOWS BY THE WORD "SPECIFICALLY," AS YOU POINTED OUT.

11:00AM 1      BUT REALLY THE CMS REPORT IS THE ONE THAT WE UNDERSTAND

11:00AM 2    YOUR HONOR INVITED FURTHER COMMENT ON THE FDA REPORTS.

11:01AM 3      THE CMS REPORT WE JUST THINK WE'RE SURPRISED WE'RE HERE

11:01AM 4    TODAY DISCUSSING IT GIVEN HOW CLEAR YOUR HONOR'S RULING WAS AND

11:01AM 5    HOW THOROUGHLY THE PARTIES DISCUSSED EXACTLY THESE ISSUES MERE

11:01AM 6    MONTHS AGO.

11:01AM 7      THE COURT:  ALL RIGHT.  THANK YOU.

11:01AM 8      MR. LOOBY:  YES, YOUR HONOR.  AND I'LL BE BRIEF.

11:01AM 9    JUST TWO POINTS.

11:01AM 10      THE FIRST ONE RELATING TO THE SEPARATE LETTER CONVEYED

11:01AM 11   FROM MR. BALWANI TO CMS THAT THE COURT HAD RULED -- WE HAD

11:01AM 12   MOVED TO EXCLUDE THAT.  IT WAS DISCLOSED AS 404(B) EVIDENCE,

11:01AM 13   AND WE HAD MOVED TO EXCLUDE IT AS IRRELEVANT AND ALSO

11:01AM 14   INSUFFICIENTLY TIED TO MS. HOLMES UNDER 401 AND 404(B).

11:01AM 15      AND THE COURT'S RULING THAT IT WAS SUFFICIENTLY LINKED

11:01AM 16   BECAUSE IT'S A RELEVANCE RULING, IT'S NOT AN AGENCY RULING THAT

11:01AM 17   EVERY LAB STAFF INVOLVED IN THE CMS AUDIT WHO WERE SPOKEN TO BY

11:01AM 18   THE CMS INSPECTORS, WHO WERE INVOLVED IN ANY WAY IN THE

11:01AM 19   LABORATORY WERE MS. HOLMES'S AGENTS.

11:01AM 20      MORE SPECIFICALLY, WE ALSO DISCUSSED WHETHER OR NOT

11:02AM 21   GENERALLY AGENTS OR EMPLOYEES OF THERANOS WERE AGENTS OF

11:02AM 22   MS. HOLMES OR THE COMPANY, AND THE COURT DEFERRED AND DENIED

11:02AM 23   THE GOVERNMENT'S REQUEST TO FIND THAT AT THAT TIME.

11:02AM 24      THE CMS LETTER FROM MR. BALWANI, THE LETTER FROM

11:02AM 25   MR. BALWANI TO CMS DOESN'T PROVIDE THAT LINK.  IT DOESN'T EVEN

11:02AM  1    COME CLOSE IN MY OPINION.

11:02AM  2        SO I THINK THAT THAT -- WHETHER OR NOT THE GOVERNMENT CAN

11:02AM  3    LAY THE FOUNDATION FOR THE AGENCY LINK BETWEEN MS. HOLMES AND

11:02AM  4    THE SPECIFIC EMPLOYEES THAT ARE QUOTED IN THE CMS REPORT IS

11:02AM  5    UNRESOLVED AS OF NOW UNDER THE COURT'S PRIOR RULINGS.

11:02AM  6        AND THEN FINALLY, WITH REGARD TO THE CMS COVER LETTER.  I

11:02AM  7    UNDERSTAND IN OUR OPPOSITION WE HAD DEFINED THE COVER LETTER

11:02AM  8    AND THE REPORT COLLECTIVELY AND THAT WE HAD DISCUSSED THE COVER

11:02AM  9    LETTER AND THE REPORT TOGETHER HERE ON DIFFERENT BALANCES OF

11:02AM  10   RELEVANCE, UNFAIR PREJUDICE, HEARSAY, THE GAMUT.

11:03AM  11       BUT WHAT I DON'T HEAR FROM THE GOVERNMENT IS ANY

11:03AM  12   EXPLANATION FOR WHY IT FITS UNDER RULE 803(8)(A) OTHER THAN

11:03AM  13   JUST TRYING TO SAY THAT THE COURT HAS ALREADY DECIDED THIS.

11:03AM  14       WE DON'T READ THE COURT'S ORDER THAT WAY.  YOUR HONOR

11:03AM  15   KNOWS WHAT IT HELD AND DIDN'T HOLD.  AND SO IF THAT'S THE CASE,

11:03AM  16   WE WOULD SUBMIT THAT THE GOVERNMENT HAS MADE NO STRONG ARGUMENT

11:03AM  17   FOR WHY IT SHOULD BE ALSO ADMITTED BECAUSE IT IS AN

11:03AM  18   OUT-OF-COURT STATEMENT THAT THE COURT PURPORTS TO OFFER FOR ITS

11:03AM  19   TRUTH.

11:03AM  20           MS. VOLKAR:  YOUR HONOR, IF I MAY?

11:03AM  21       I WANT TO GO BACK TO -- I HEARD MR. LOOBY SAY THAT THEY

11:03AM  22   WERE CONSERVATIVE IN THEIR REDACTIONS, AND I THINK IT'S THE

11:03AM  23   GOVERNMENT'S CLEAR POSITION THAT IT JUST DEFIES LOGIC THAT YOU

11:03AM  24   CAN BE CONSERVATIVE IN YOUR REDACTION AND SEEK TO REDACT

11:03AM  25   THREE-QUARTERS OF A REPORT.

11:03AM 1          THE GOVERNMENT BELIEVES THAT TO THE EXTENT THAT THEIR

11:03AM 2     CONCERNS HAVE ANY MERIT, YOUR HONOR CAN COVER THIS BY A

11:03AM 3     LIMITING INSTRUCTION.

11:03AM 4          BUT I THINK AS FAR AS THE HEARSAY POINT GOES, WE HAVE

11:04AM 5     EXPLAINED HOW THIS FITS UNDER THE RELEVANT RULE.  WE'VE

11:04AM 6     EXPLAINED IT AT LENGTH IN THE MOTION IN LIMINE HEARING PROCESS,

11:04AM 7     AND YOUR HONOR, AGAIN, MAYBE I'M READING TOO MUCH INTO YOUR

11:04AM 8     RULING, BUT YOUR HONOR THOROUGHLY WENT THROUGH IT AND SIDED

11:04AM 9     WITH THE GOVERNMENT ESPECIALLY WITH RESPECT TO THE CMS

11:04AM 10    REPORT.

11:04AM 11         AND WE PUT FORTH THAT BECAUSE OF THE LENGTHY DISCUSSION

11:04AM 12    ABOUT THE CMS LETTER, YOUR HONOR ALSO REACHED THAT SAME

11:04AM 13    CONCLUSION WITH THE CMS LETTER IN DENYING THEIRS.

11:04AM 14         AND IF WE'RE WRONG ABOUT THAT, WE'RE HAPPY TO PROVIDE MORE

11:04AM 15    REASONS WHY WE THINK THAT IT FITS WITHIN THE HEARSAY EXCEPTION,

11:04AM 16    BUT WE JUST THINK THAT THEY READ IT TOO BROADLY.

11:04AM 17              THE COURT:  WHAT LIMITING INSTRUCTION WOULD YOU

11:04AM 18    SUGGEST?

11:04AM 19              MS. VOLKAR:  WELL, SPECIFICALLY -- SO THEY'VE

11:04AM 20    POINTED OUT THAT THE MAJORITY OF THEIR REDACTIONS RELATE TO

11:04AM 21    ASSAYS THAT ARE NOT IN THE BILL OF PARTICULARS.  AND WE THINK

11:04AM 22    THAT AN EASY SOLUTION IN ADMITTING THIS REPORT IS THAT TO THE

11:04AM 23    EXTENT THAT ANY OF THE PORTIONS TALK ABOUT ASSAYS THAT ARE NOT

11:04AM 24    IN A LIST WE CAN PROVIDE THEM OR A LIST THAT THE COURT COULD

11:05AM 25    READ OFF, YOU'RE NOT TO TAKE ANY STATEMENTS IN THE REPORT AS

11:05AM  1    STATING THAT THOSE WERE INACCURATE OR UNRELIABLE TESTS.

11:05AM  2        THE GOVERNMENT IS HERE TO PROVE THAT THERANOS HAD

11:05AM  3    INACCURATE OR UNRELIABLE TESTS IN THESE ASSAYS.  AND WE CAN

11:05AM  4    CRAFT LANGUAGE PERHAPS A LITTLE BIT MORE COHERENT THAN THAT

11:05AM  5    WITH SOME TIME, BUT THE GENERAL IDEA BEING THAT WHEN IT TALKS

11:05AM  6    ABOUT LACK OF DOCUMENTATION OR NOT HAVING QC POLICIES OR

11:05AM  7    QC PROTOCOLS, THAT MIGHT BE AN INDICATION THAT THE LAB WAS NOT

11:05AM  8    VERY WELL RUN, BUT THAT DOESN'T NECESSARILY BY IN AND OF ITSELF

11:05AM  9    MEAN THAT AN ASSAY THAT IS NOT ON THE BILL OF PARTICULARS WAS

11:05AM  10   INACCURATE OR UNRELIABLE, AND THE GOVERNMENT IS NOT SEEKING TO

11:05AM  11   PROVE THAT.

11:05AM  12       SO ANOTHER WAY OF SAYING WHAT I'M SAYING IS THAT THE

11:05AM  13   GOVERNMENT IS ABIDING BY THE COURT'S RULING ON THE BILL OF

11:05AM  14   PARTICULARS, BUT THAT ISN'T A REASON TO REDACT AS MUCH AS THEY

11:05AM  15   SEEK TO REDACT FROM THIS REPORT WHEN A LIMITING INSTRUCTION

11:05AM  16   COULD EASILY CURE IT AND ANY CONCERNS THAT THEY HAVE.

11:05AM  17       THE COURT:  ONE THING I DO WANT TO SAY, MR. LOOBY,

11:06AM  18   BEFORE YOU SPEAK TO THIS, I DO HAVE SOME CONCERN ABOUT THE

11:06AM  19   ADMISSION OF EVIDENCE OF A VIOLATION OF A CIVIL REGULATION AND

11:06AM  20   WHETHER OR NOT, OR WHETHER THAT'S GOING TO BE USED IN THE

11:06AM  21   GOVERNMENT'S CASE-IN-CHIEF TO ARGUE A CRIMINAL VIOLATION.

11:06AM  22       WE ALL KNOW THAT'S NOT PERMITTED.

11:06AM  23       AND SO I WANT TO DRAW CAUTION TO EVERYONE.  THAT'S WHERE I

11:06AM  24   THINK PERHAPS A LIMITING INSTRUCTION MIGHT BE NEEDED SHOULD

11:06AM  25   THAT COME UP, AND I ADVISE EVERYONE TO PAY ATTENTION TO THAT,

11:06AM 1    OR TO OTHERWISE, AS EVIDENCE EVOLVES OR IS INTRODUCED, THAT THE

11:06AM 2    PARTIES PAY ATTENTION TO THAT.  I DON'T WANT THAT CONCEPT TO BE

11:06AM 3    OVERLOOKED.

11:06AM 4        IT MAY BE THAT I'LL INVITE YOU TO THINK ABOUT WHAT TYPES

11:06AM 5    OF INSTRUCTIONS WOULD BE APPROPRIATE AT THE TIME THAT THAT

11:06AM 6    EVIDENCE IS INTRODUCED THAT THE JURY SHOULD KNOW ABOUT.

11:07AM 7            MS. VOLKAR:  THE GOVERNMENT IS HAPPY TO COMPLY WITH

11:07AM 8    THAT, YOUR HONOR.  THANK YOU.

11:07AM 9            MR. LOOBY:  AND JUST ONE FINAL WORD ON THAT,

11:07AM 10   YOUR HONOR, WHICH IS THAT THE COURT'S ORDER ON THE TEST NOT IN

11:07AM 11   THE BILL OF PARTICULARS PUTS THE ONUS ON THE GOVERNMENT TO

11:07AM 12   ARTICULATE A PERMISSIBLE PURPOSE OF RELEVANCE.  AND WHAT I

11:07AM 13   UNDERSTAND THE GOVERNMENT TO SAY IS THAT THESE OTHER PORTIONS

11:07AM 14   OF THE REPORT MIGHT SHOW THAT THERE WERE POOR LAB PRACTICES.

11:07AM 15       WE SUBMIT THAT THAT'S NOT RELEVANT AND IS ACTUALLY

11:07AM 16   ESPECIALLY PREJUDICIAL FOR THE REASON THAT YOU JUST

11:07AM 17   ARTICULATED, YOUR HONOR, WHICH IS THAT MS. HOLMES IS NOT ON

11:07AM 18   TRIAL FOR RUNNING A LAB THAT WAS IN VIOLATION OF THE CLIA

11:07AM 19   REGULATIONS, AND SO PUTTING BEFORE THE JURY EVEN WITH A

11:07AM 20   LIMITING INSTRUCTION A BIG THICK REPORT THAT PRIMARILY RELATES

11:07AM 21   TO THAT AND THAT IS THE PRIMARY RELEVANCE THEORY I THINK IS

11:07AM 22   VERY PROBLEMATIC, AND SO WE WOULD SUBMIT THAT THE REDACTIONS

11:07AM 23   ARE THE MORE APPROPRIATE PATH.

11:07AM 24            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

11:07AM 25            MS. VOLKAR:  THANK YOU, YOUR HONOR.

| | | |
|---|---|---|
| 11:07AM | 1 | THE COURT:  YOU'RE WELCOME. |
| 11:08AM | 2 | NOW LET'S TURN TO 912.  I THINK THAT IS THE ONLY MOTION |
| 11:08AM | 3 | LEFT.  THIS IS MS. HOLMES'S MOTION TO STRIKE DR. DAS, I |
| 11:08AM | 4 | BELIEVE. |
| 11:08AM | 5 | (PAUSE IN PROCEEDINGS.) |
| 11:08AM | 6 | MR. WADE:  GOOD MORNING, YOUR HONOR. |
| 11:08AM | 7 | LANCE WADE ON BEHALF OF MS. HOLMES. |
| 11:08AM | 8 | I THINK -- I JUST WANT TO BE SURE WE'RE ON THE SAME PAGE. |
| 11:09AM | 9 | I BELIEVE I HAVE DOCKET 892. |
| 11:09AM | 10 | THE COURT:  OH, YOU MIGHT HAVE IT.  I WAS REFERRING |
| 11:09AM | 11 | TO ONE OF THE OTHER PLEADINGS IN REGARDS TO THAT. |
| 11:09AM | 12 | MR. WADE:  MAYBE ONE OF THE REPLIES. |
| 11:09AM | 13 | THE COURT:  YES. |
| 11:09AM | 14 | MR. WADE:  JUST SO THE RECORD IS CLEAR AND WE'RE ON |
| 11:09AM | 15 | THE SAME PAGE. |
| 11:09AM | 16 | THE COURT:  IT IS CLEAR.  THANK YOU. |
| 11:09AM | 17 | MR. WADE:  WE'RE HERE TODAY -- THANK YOU. |
| 11:09AM | 18 | THIS IS NOT A RESULT OF AN INVITATION FROM THE COURT TO |
| 11:09AM | 19 | OFFER ANOTHER PLEADING.  THIS IS SORT OF A DE NOVO ISSUE THAT |
| 11:09AM | 20 | RESULTED FROM THE GOVERNMENT'S UNTIMELY DISCLOSURE OF EXPERT |
| 11:09AM | 21 | WITNESS TESTIMONY. |
| 11:09AM | 22 | THE COURT:  SO HERE'S -- I'M SORRY TO INTERRUPT YOU. |
| 11:09AM | 23 | BUT LET ME ASK YOU TO -- THIS IS WHAT I'M INTERESTED IN:  AS TO |
| 11:09AM | 24 | THE NOTICE ISSUE, AND WHAT PREJUDICE, IF ANY, THAT BRINGS, WAS |
| 11:09AM | 25 | THERE A NOTICE ISSUE.  IF THERE WAS, WHAT IS THE PREJUDICE OF |

| | |
|---|---|
| 11:09AM | 1 |

THAT?  WHAT IS THE REMEDY, VARIOUS REMEDIES FOR THAT?

I KNOW YOU TALK IN YOUR PLEADINGS ABOUT A LACK OF ABILITY TO INVESTIGATE AND ALSO TO DO A DAUBERT TYPE OF INVESTIGATION AND/OR HEARING.

AND I REMIND ALL OF US THAT THERE IS STILL A DAUBERT PENDING, ISN'T THERE, IN THIS CASE?  AND I'D LIKE YOU TO TALK A LITTLE BIT ABOUT IF THERE IS A DAUBERT FOR THIS WITNESS, ASSUMING THIS WITNESS IS BEING OFFERED AS AN EXPERT, WHETHER OR NOT THAT DAUBERT, ONE OF THE REMEDIES MIGHT BE, SINCE WE HAVE A DAUBERT HEARING THAT IS YET UNNOTICED, WOULD IT BE APPROPRIATE TO CONTINUE A DAUBERT HEARING FOR THIS WITNESS, IF NEEDED, TO THAT YET UNIDENTIFIED DATE?

THAT'S WHAT I'M -- THOSE ARE THE THINGS THAT I'M FOCUSSED ON HERE.

AND I SUPPOSE WHEN THE GOVERNMENT GETS UP, I'M CURIOUS, WHAT IS THIS WITNESS?  IS HE AN EXPERT OR IS HE A PERCIPIENT WITNESS?

IF HE'S JUST A PERCIPIENT WITNESS, YOU PROBABLY WOULD SIT DOWN.

MR. WADE:  IF HE WAS JUST A PERCIPIENT WITNESS, YOUR HONOR, WE WOULDN'T HAVE FILED THE MOTION.

AND THE GOVERNMENT, TO TRY TO FORGIVE THE TARDY DISCLOSURE, SUGGESTED JUST THAT.  I HAVE YET TO -- I HAVE YET TO HAVE A CASE WHERE WE HAVE MADE AN OBJECTION UNDER 701 AND 702 WHERE THE GOVERNMENT HASN'T SAID -- HASN'T MADE THAT

11:11AM 1      ARGUMENT.

11:11AM 2           OF COURSE, THE NINTH CIRCUIT CASE LAW ON THIS IS QUITE

11:11AM 3      CLEAR.  AND WHEN THE -- WHEN THE TESTIMONY OF A PERCIPIENT

11:11AM 4      WITNESS GETS INTO THE REALM OF OFFERING A SCIENTIFIC OPINION

11:11AM 5      THAT IS BASED ON SPECIALIZED KNOWLEDGE, SCIENTIFIC TECHNICAL

11:11AM 6      KNOWLEDGE, ALGORITHMS AND THE LIKE, IT'S -- 702 APPLIES AND

11:11AM 7      RULE 16 APPLIES.  AND THAT'S WHERE WE ARE HERE.

11:11AM 8           THE COURT WILL NOTE I PASSED UP AND SHARED WITH COUNSEL

11:11AM 9      EXHIBIT 1 FOR THIS HEARING, WHICH IS ECF 893-3, BUT THIS TIME

11:12AM 10     WITH THE ATTACHMENTS.

11:12AM 11          TO AVOID CRASHING THE GOVERNMENT'S COMPUTER SYSTEM, WE

11:12AM 12     DECIDED NOT TO TRY TO FILE THIS ON ECF.  OF COURSE, THE

11:12AM 13     PROSECUTION HAS HAD THIS.  THEY PRODUCED IT TO US.

11:12AM 14          BUT IF YOU JUST FLIP THROUGH THIS, YOU'LL SEE THAT THIS IS

11:12AM 15     THE REPORT OF DR. DAS ON JUNE 7TH, 2021.  IT'S A FOUR PAGE

11:12AM 16     REPORT.  AND HE OPINES WITHIN THIS ON THE ATTACHMENTS TO THE

11:12AM 17     REPORT WHICH MAKE UP ABOUT 600 PAGES OF DATA AND OTHER SUMMARY

11:12AM 18     INFORMATION THAT CONTAINS EXTENSIVE ANALYSIS.

11:12AM 19          WITHIN THAT WHEN YOU LOOK AT THE REPORT CAREFULLY, AND, IF

11:12AM 20     NECESSARY, I'D BE HAPPY TO BRING THE COURT PARAGRAPH BY

11:12AM 21     PARAGRAPH THROUGH IT, BUT I DON'T WANT TO WASTE ANYONE'S TIME,

11:12AM 22     YOU WILL SEE THAT DR. DAS DID NOT PREPARE ANY OF THESE

11:12AM 23     MATERIALS.  NONE OF THEM.

11:12AM 24          THESE ARE MATERIALS THAT WERE PREPARED BY OTHERS, THEY

11:13AM 25     WERE PUT IN FRONT OF THE WITNESS BY THE GOVERNMENT, AND THEY

11:13AM 1    ASKED HIM FOR HIS INTERPRETATION AND HIS CONCLUSIONS, WHICH IS

11:13AM 2    EXACTLY THE SAME KIND OF TESTIMONY OR EXACTLY THE SAME KIND OF

11:13AM 3    PROCESS THAT YOU WOULD DO IF YOU RETAINED AN EXPERT AND ASKED

11:13AM 4    THEM TO OFFER OPINIONS.

11:13AM 5        SO WITH RESPECT TO VIRTUALLY EVERYTHING WITHIN THE

11:13AM 6    SECOND 302, IT IS, IT IS AKIN, DIRECTLY AKIN TO RETAINED EXPERT

11:13AM 7    TESTIMONY.

11:13AM 8        NOW, WITH RESPECT TO CERTAIN OTHER INFORMATION THAT THE

11:13AM 9    GOVERNMENT HAS IDENTIFIED, IT IS DEFICIENT IN THE SENSE THAT IT

11:13AM 10   DOESN'T GIVE US A SUFFICIENT BASES AND METHODOLOGY TO PREPARE

11:13AM 11   TO EXAMINE DR. DAS.

11:13AM 12       SO WITHIN THE FIRST 302 DR. DAS TALKS ABOUT SOME

11:13AM 13   CALCULATIONS THAT HE DID USING A SIGMA 6 ANALYSIS, AND THAT HE

11:14AM 14   CAME TO CERTAIN CONCLUSIONS AS A RESULT.

11:14AM 15       AND HE REFERENCES THE BASIS OF THAT, THE DOCUMENT, THAT HE

11:14AM 16   WAS SHOWN AT THE TIME, BUT WE DON'T HAVE THE DOCUMENT.  SO WE

11:14AM 17   HAVE NO WAY TO ASSESS WHETHER HIS CONCLUSIONS ARE RIGHT, WHAT

11:14AM 18   HIS CONCLUSIONS TRULY MEAN.  WE MAY AGREE WITH HIS CONCLUSIONS

11:14AM 19   DEPENDING UPON WHAT THE UNDERLYING INFORMATION WAS.

11:14AM 20       OF COURSE, MS. HOLMES WAS THE PERSON WHO HIRED DR. DAS TO

11:14AM 21   COME IN AND ADDRESS THESE ISSUES.  SO IT MAY WELL BE THAT WE

11:14AM 22   AGREE WITH THEM.  BUT WE DON'T HAVE THE BASIS TO KNOW WHAT HIS

11:14AM 23   SCIENTIFIC TESTIMONY IS GOING TO BE.

11:14AM 24       SIMILARLY, AT 893-4 IS A DOCUMENT WHICH IS A -- SOME SORT

11:14AM 25   OF DRAFT WRITING THAT WAS BEING PREPARED WITHIN THE COMPANY

11:14AM  1    THAT MAY HAVE BEEN PREPARED BY DR. DAS.

11:14AM  2         WE DON'T KNOW REALLY WHAT THIS DOCUMENT IS OTHER THAN AT

11:15AM  3    LEAST ONE LEVEL OF HEARSAY.  IT'S A HEARSAY DOCUMENT BECAUSE

11:15AM  4    IT'S NOT A FINAL DOCUMENT IN ANY RESPECT, AND THERE ARE

11:15AM  5    PROBABLY IN CERTAIN CASES MULTIPLE LAYERS OF HEARSAY WITHIN

11:15AM  6    THIS.

11:15AM  7         BUT SIGNIFICANTLY, IF THE COURT LOOKS THROUGH THIS, IT

11:15AM  8    WILL SEE REPEATED SENTENCES THAT ARE FOLLOWED BY EXHIBIT XX.

11:15AM  9    EXHIBIT XX IS MERELY A PLACEHOLDER FOR WHATEVER THE DATA WAS

11:15AM 10    THAT WOULD SUPPORT THAT CONCLUSION IN THE VIEW OF THIS EXPERT

11:15AM 11    WITNESS.

11:15AM 12         SO --

11:15AM 13              THE COURT:  SO LET ME --

11:15AM 14              MR. WADE:  YES.

11:15AM 15              THE COURT:  I DON'T MEAN TO INTERRUPT YOU, BUT I'M

11:15AM 16    GOING TO.

11:15AM 17         I'M REALLY INTERESTED IN RULE 16 AND WHAT ROLE THAT HAS AT

11:15AM 18    ALL IN YOUR REQUEST.

11:15AM 19              MR. WADE:  RULE 16 IS AT THE HEART OF THE REQUEST,

11:15AM 20    YOUR HONOR, BECAUSE EVERYTHING --

11:15AM 21              THE COURT:  THAT'S WHAT I'D LIKE YOU TO TALK ABOUT.

11:15AM 22              MR. WADE:  YEAH.  BECAUSE EVERYTHING THAT I JUST

11:15AM 23    IDENTIFIED IN CONNECTION WITH THAT IS MATERIAL THAT WOULD NEED

11:15AM 24    TO BE IDENTIFIED UNDER RULE 16.

11:15AM 25              THE GOVERNMENT PUSHES -- THE GOVERNMENT BASICALLY MAKES NO

11:16AM  1    SUBSTANTIVE DISCLOSURE WITH RESPECT TO DR. DAS.

11:16AM  2                THE COURT:  TELL ME A TIMELINE.

11:16AM  3                MR. WADE:  I'M SORRY?

11:16AM  4                THE COURT:  TIMELINE?

11:16AM  5                MR. WADE:  A TIMELINE OF THESE DISCLOSURES?  OH,

11:16AM  6    SURE.

11:16AM  7         THE GOVERNMENT PRODUCED AN INTERVIEW THAT THEY CONDUCTED

11:16AM  8    ON FEBRUARY 1ST, 2021.

11:16AM  9                THE COURT:  AND WHAT I'M SPECIFICALLY INTERESTED IN,

11:16AM  10   AND I'M JUST GIVING FAIR WARNING TO THE GOVERNMENT, I HAVE SOME

11:16AM  11   CONCERNS ABOUT THE RULE 16 DISCLOSURE, AND I'D LIKE TO KNOW

11:16AM  12   WHAT ARE THE TIMELINES FOR THE DISCLOSURE, THE NOTICE OF

11:16AM  13   DISCLOSURE AS AN EXPERT.  THAT'S REALLY WHAT I'M FOCUSSED ON.

11:16AM  14        I THINK I UNDERSTAND ALL OF THE THINGS THAT THIS WITNESS

11:16AM  15   WOULD PROVIDE AS AN EXPERT WITNESS.  I UNDERSTAND THAT.

11:16AM  16        I'M GOING TO ASK MS. VOLKAR WHETHER OR NOT THIS IS AN

11:16AM  17   EXPERT WITNESS OR A PERCIPIENT WITNESS.  THERE'S A DIFFERENCE.

11:16AM  18        AND THERE'S ACTUALLY -- THE REAL ISSUE IS WHAT THE

11:17AM  19   TESTIMONY IS, ISN'T IT, NOT WHAT TYPE OF WITNESS IT IS, IT'S

11:17AM  20   WHAT THE TESTIMONY OF THE WITNESS WILL BE.

11:17AM  21        BUT IF IT'S AN EXPERT, THEN I KNOW WE HAVE SOME -- RULE 16

11:17AM  22   GIVES US SOME GUIDANCE.  THAT'S WHAT I'M FOCUSSED ON, MR. WADE.

11:17AM  23   SO DO YOU WANT TO SHARE WITH ME YOUR THOUGHTS ON IT?

11:17AM  24                MR. WADE:  I BELIEVE IT GOES TO THE REMEDIES WHICH

11:17AM  25   WAS ONE OF THE TWO QUESTIONS THAT I WAS GOING TO GET TO NEXT.

11:17AM 1        SO, YES, I WILL.

11:17AM 2        THE DISCLOSURE OF DR. DAS AS A WITNESS OF ANY KIND, SO NOT

11:17AM 3    AN EXPERT WITNESS, BUT HE WAS NOT ADDED TO THE WITNESS LIST

11:17AM 4    UNTIL JUNE 3RD.

11:17AM 5        WE THEN RECEIVED WHAT THE GOVERNMENT SUGGESTS IS AN EXPERT

11:17AM 6    DISCLOSURE ON JULY 29TH, 2021.  THAT'S EXHIBIT A TO OUR MOTION.

11:17AM 7    YOU CAN SEE THE EMAIL.

11:17AM 8        IT'S NONSUBSTANTIVE.  IT DOESN'T SAY ESSENTIALLY ANYTHING.

11:17AM 9    IT JUST POINTS TO A VARIETY OF THINGS, INCLUDING THE DOCUMENTS

11:17AM 10   THAT I'VE IDENTIFIED, THE REPORTS, AND IT POINTS TO ALL OF THE

11:18AM 11   MATERIALS UPON WHICH DR. MASTER RELIED, THEIR RETAINED EXPERT,

11:18AM 12   ALL OF THE MATERIALS TO WHICH HE RELIED UPON IN OFFERING HIS

11:18AM 13   EXPERT OPINION AS FILED ON THE DOCKET.

11:18AM 14       THERE'S NO INDICATION THAT DR. DAS HAS ACTUALLY LOOKED AT

11:18AM 15   THOSE MATERIALS ACCORDING TO THE REPORTS OF THE INTERVIEW.

11:18AM 16       AND THE GOVERNMENT ESSENTIALLY SAYS, YOU KNOW, WITHIN

11:18AM 17   THESE, YOU KNOW, THOUSANDS OF PAGES OF MATERIAL IS THE EXPERT

11:18AM 18   DISCLOSURE, WHICH IS CLEARLY DEFICIENT FOR THE REASONS THAT

11:18AM 19   I'VE JUST IDENTIFIED.

11:18AM 20       SO WE GOT THAT NOTICE ON JULY 29TH, 2021.

11:18AM 21          THE COURT:  SO LET'S TALK ABOUT THE TIMELINE.

11:18AM 22       I THINK YOU DO THIS IN THE PLEADINGS, BUT I JUST WANT THE

11:18AM 23   RECORD TO BE CLEAR ABOUT THIS.

11:18AM 24       THERE WAS SOME DISCUSSION BETWEEN THE PARTIES, THAT IS YOU

11:18AM 25   AND THE GOVERNMENT, AS TO AN AGREED UPON DISCLOSURE DATE.

| | |
|---|---|
| 11:18AM | 1 |
| 11:19AM | 2 |
| 11:19AM | 3 |
| 11:19AM | 4 |
| 11:19AM | 5 |
| 11:19AM | 6 |
| 11:19AM | 7 |
| 11:19AM | 8 |
| 11:19AM | 9 |
| 11:19AM | 10 |
| 11:19AM | 11 |
| 11:19AM | 12 |
| 11:19AM | 13 |
| 11:19AM | 14 |
| 11:19AM | 15 |
| 11:19AM | 16 |
| 11:19AM | 17 |
| 11:19AM | 18 |
| 11:20AM | 19 |
| 11:20AM | 20 |
| 11:20AM | 21 |
| 11:20AM | 22 |
| 11:20AM | 23 |
| 11:20AM | 24 |
| 11:20AM | 25 |

1   IS THAT CORRECT?  IS THAT ACCURATE?

2        MR. WADE:  THERE WAS, YOUR HONOR.

3   THE GOVERNMENT AGREED TO MAKE THEIR DISCLOSURES BY

4   MARCH 6TH OF 2020, APPROACHING 18 MONTHS AGO.

5        THE COURT:  RIGHT.  AND JUST WALK ME THROUGH THAT,

6   PLEASE, FOR THE RECORD.

7   WHAT HAPPENED NEXT?

8        MR. WADE:  THE GOVERNMENT MADE THEIR DISCLOSURE ON

9   MARCH 6TH OF 2020 OF CERTAIN LAB DIRECTORS THAT PREVIOUSLY

10  WORKED AT THERANOS.  THEY WERE OBVIOUSLY AWARE OF ALL OF THE

11  LAB DIRECTORS AT THERANOS GIVEN THEIR INVESTIGATION AND

12  INDICTMENT IN THIS CASE.

13  SINCE THEN WE HAVE SPENT THE ENSUING YEAR-PLUS PREPARING

14  TO EXAMINE THOSE WITNESSES, WORKING WITH EXPERTS AND WORKING TO

15  PREPARE TO EITHER CHALLENGE THE VALIDITY OF THE EXPERT

16  TESTIMONY OR TO CONFRONT THE WITNESSES AT TRIAL.

17  AS YOUR HONOR KNOWS, THERE WAS EXTENSIVE MOTIONS PRACTICE

18  STARTING LAST YEAR, I BELIEVE, AND BLENDING INTO THIS YEAR WITH

19  RESPECT TO DR. MASTER.

20  THE COURT IDENTIFIED CERTAIN DEFICIENCIES WITH RESPECT TO

21  DR. MASTER AND ORDERED A DAUBERT HEARING TO OCCUR.  THAT

22  DAUBERT HEARING, FOR REASONS THAT I BELIEVE THE COURT IS AWARE

23  OF, WILL LIKELY HAPPEN MID TRIAL CLOSER TO WHEN DR. MASTER

24  WOULD TESTIFY.

25  AND AMIDST ALL OF THIS, WHILE THE GOVERNMENT HAS BEEN

11:20AM 1    AWARE OF THESE ISSUES AND THEY'VE BEEN AWARE OF DR. DAS FOR

11:20AM 2    FIVE YEARS, BUT THEY WERE -- THEY SPOKE TO HIM AS A WITNESS IN

11:20AM 3    I BELIEVE JANUARY OR FEBRUARY, AND THEY SPOKE TO HIM AGAIN IN

11:20AM 4    JUNE.  THEY NEVER BOTHERED TO IDENTIFY AND DISCLOSE HIM AS A

11:20AM 5    WITNESS UNTIL JULY.

11:20AM 6            THE COURT:  OKAY.  I'M SORRY.  ALL RIGHT.

11:20AM 7        SO THE MARCH DATE, AND THEN THERE WAS SOME DISCUSSION

11:20AM 8    BETWEEN YOU AND THE GOVERNMENT.

11:20AM 9        WAS THERE SOME AGREEMENT ABOUT THE GOVERNMENT AGREED TO

11:20AM 10   DISCLOSE BY JULY 29TH, I BELIEVE IT WAS?

11:21AM 11           MR. WADE:  NO.

11:21AM 12           THE COURT:  OKAY.

11:21AM 13           MR. WADE:  THERE WAS NO AGREEMENT WITH RESPECT TO

11:21AM 14   DR. DAS AT ALL.  IT CAME OUT OF LEFT FIELD.

11:21AM 15           THE COURT:  WAS THERE AN AGREEMENT?  MY QUESTION WAS

11:21AM 16   NOT SPECIFIC TO DR. DAS.  MY QUESTION WAS, WAS THERE AN

11:21AM 17   AGREEMENT THAT DISCLOSURE WOULD BE MADE BY JULY 29TH?

11:21AM 18           MR. WADE:  NOT THAT I'M AWARE OF, YOUR HONOR.

11:21AM 19       YOU MAY HAVE BEEN REFERRING TO SOME OF THE SUPPLEMENTAL

11:21AM 20   DISCLOSURES THAT RELATED TO THE DOCTORS.

11:21AM 21           THE COURT:  WHAT, WHAT -- SO JUST FOCUSSED ON THIS

11:21AM 22   WITNESS.

11:21AM 23           MR. WADE:  YES.

11:21AM 24           THE COURT:  AND I'M TRYING TO GLEAN WHAT THE

11:21AM 25   DEADLINES WERE FOR DISCLOSURE OF EXPERTS.  THAT'S REALLY THE

11:21AM 1     QUESTION I WANT TO ASK YOU.

11:21AM 2             MR. WADE:  THE DEADLINES FOR DISCLOSURES OF EXPERTS

11:21AM 3     WAS MARCH OF 2020, PERIOD.

11:21AM 4             THE COURT:  OKAY.  OKAY.

11:21AM 5             MR. WADE:  AND THIS WITNESS WAS DISCLOSED THE END OF

11:21AM 6     JULY.

11:21AM 7             THE COURT:  JULY 29, 28, 29 I THINK IT WAS.

11:21AM 8             MR. WADE:  JULY 29TH OF 2021.

11:22AM 9             THE COURT:  AND THAT JULY 29TH DATE WAS AN

11:22AM 10    AGREED-UPON DISCLOSURE DATE THAT YOUR TEAM AND THE GOVERNMENT

11:22AM 11    ENGAGED FOR WHAT PURPOSE?  WHAT WAS SUPPOSED TO BE DISCLOSED BY

11:22AM 12    JULY 29TH?

11:22AM 13            MR. WADE:  THERE WAS NOT AGREEMENT THAT RELATED TO

11:22AM 14    THIS DISCLOSURE, YOUR HONOR.

11:22AM 15            THE COURT:  I UNDERSTAND THAT.

11:22AM 16        BUT WAS THERE ANY AGREEMENT THAT WAS MADE THAT THE

11:22AM 17    GOVERNMENT WOULD PROVIDE DISCLOSURES BY JULY 29TH?

11:22AM 18            MS. VOLKAR:  YOUR HONOR, I CAN ANSWER THAT QUESTION

11:22AM 19    IF YOU WOULD LIKE ME TO?

11:22AM 20            THE COURT:  THANK YOU.

11:22AM 21            MS. VOLKAR:  SO THE GOVERNMENT -- THE DEFENSE

11:22AM 22    COUNSEL ASKED THE GOVERNMENT TO DISCLOSE ANY OF THE TREATING

11:22AM 23    PHYSICIANS WITH RESPECT TO THE PATIENTS AND BECAUSE OF THE

11:22AM 24    COURT'S ORDER TALKING ABOUT GIVING THEM SUFFICIENT NOTICE AND

11:22AM 25    UNDER RULE 16 FOR EXPERT PURPOSES, THEY SENT US A LETTER ASKING

11:22AM  1    US TO DISCLOSE THAT BY JULY 30TH SO THAT WE WOULD MEET OUR

11:22AM  2    OBLIGATIONS AND MEET THE RULE 16 OBLIGATIONS WITH RESPECTS TO

11:22AM  3    THE TREATING PHYSICIANS.

11:22AM  4         AND OUR ARGUMENT IN OUR OPPOSITION IS THAT IF THAT WAS

11:22AM  5    SUFFICIENT NOTICE FOR THOSE EXPERTS, IT'S ALSO SUFFICIENT FOR

11:23AM  6    DR. DAS.

11:23AM  7              THE COURT:  THAT'S WHERE I WAS GETTING TO, MR. WADE.

11:23AM  8    SORRY TO TAKE YOU DOWN A CIRCUITOUS PATH ON THAT.

11:23AM  9         I THINK YOUR ARGUMENT IS THAT WHAT MS. VOLKAR JUST

11:23AM  10   INDICATED WAS FOR SPECIFIC DOCTORS, THE ONES WE'VE TALKED ABOUT

11:23AM  11   PREVIOUSLY.

11:23AM  12        BUT WHAT I THINK YOUR ARGUMENT IS, AND HELP ME, YOUR

11:23AM  13   ARGUMENT IS, WELL, IN ADDITION TO THOSE DOCTORS, THEY ALSO

11:23AM  14   IDENTIFIED DR. DAS AT THAT TIME; IS THAT WHAT HAPPENED?

11:23AM  15             MR. WADE:  IT WAS ACTUALLY A COMPLETELY SEPARATE

11:23AM  16   EVENT THAT HAD IN MANY WAYS -- AND PART OF THE REASON MAYBE I

11:23AM  17   WAS CONFUSED OR A LITTLE SLOW ON THE UPTAKE, YOUR HONOR, IS THE

11:23AM  18   DISCLOSURE OF DR. DAS REALLY HAD NOTHING TO DO WITH THE

11:23AM  19   TREATING PHYSICIANS.

11:23AM  20             THE COURT:  UNDERSTOOD.  THAT'S YOUR BEST ARGUMENT,

11:23AM  21   ISN'T IT?

11:23AM  22             MR. WADE:  YES.

11:23AM  23             THE COURT:  "WE GOT THIS INFORMATION ON JULY 29TH.

11:23AM  24   WE DIDN'T KNOW DR. DAS WAS GOING TO BE INCLUDED, AND WE WERE

11:23AM  25   SURPRISED TO HEAR ON JULY 29TH THAT THE GOVERNMENT HAS

11:23AM  1    IDENTIFIED AN EXPERT."

11:23AM  2         MR. WADE:  WE WOULD HAVE BEEN SURPRISED TO RECEIVE

11:23AM  3    THIS DISCLOSURE ON JULY 29TH OF 2020 --

11:24AM  4         THE COURT:  AGREED.

11:24AM  5         MR. WADE:  -- GIVEN THE DEADLINE.  BUT

11:24AM  6    PARTICULARLY --

11:24AM  7         THE COURT:  I THINK THAT'S YOUR ARGUMENT, ISN'T IT?

11:24AM  8         MR. WADE:  YES, THAT'S RIGHT.

11:24AM  9         THE COURT:  THAT'S WHAT I READ IN YOUR PLEADINGS.

11:24AM  10        WE EXPECTED TO GET CERTAIN DOCTORS, THE UNIVERSE OF

11:24AM  11   DOCTORS THAT WE TALKED ABOUT THE OTHER MOTION, AND WE AGREED WE

11:24AM  12   WOULD GET IT ON THE 29TH.

11:24AM  13        THE GOVERNMENT, IN ADDITION TO THAT, PROVIDED DR. DAS AS

11:24AM  14   AN EXPERT, AND WE'RE UPSET ABOUT THAT BECAUSE THE DISCLOSURE

11:24AM  15   WAS MONTHS, MONTHS BEFORE.

11:24AM  16        MR. WADE:  THAT'S RIGHT.

11:24AM  17        THE COURT:  IS THAT YOUR POSITION?

11:24AM  18        MR. WADE:  THAT IS OUR POSITION.  IT'S CLEARLY A

11:24AM  19   TARDY DISCLOSURE, AND IT'S CLEARLY A DEFICIENT DISCLOSURE AS

11:24AM  20   WELL.

11:24AM  21        THE COURT:  AS TO THE EXPERT.  OKAY.  AS TO AN

11:24AM  22   EXPERT.

11:24AM  23        MR. WADE:  YEAH.

11:24AM  24        THE COURT:  DR. DAS, AND THIS IS THE QUESTION THAT

11:24AM  25   MS. VOLKAR IS GOING TO ANSWER, WHETHER OR NOT -- WHO IS THIS

11:24AM 1    WITNESS AND WHAT IS HE.

11:24AM 2          LET ME SHIFT TO MS. VOLKAR FOR JUST A MINUTE.

11:24AM 3              MR. WADE:  SURE.

11:24AM 4              THE COURT:  MS. VOLKAR, THANK YOU FOR GETTING ME TO

11:24AM 5    AT LEAST TO WHERE I'M INTERESTED IN.

11:24AM 6              MS. VOLKAR:  ABSOLUTELY, YOUR HONOR.

11:25AM 7          AND WITH THAT, I WANT TO TALK ABOUT WHO DR. DAS IS FOR

11:25AM 8    JUST A MOMENT, BECAUSE IT IS THE GOVERNMENT'S POSITION THAT

11:25AM 9    HE'S NOT AN EXPERT, HE IS A PERCIPIENT WITNESS.

11:25AM 10         BUT I WANT TO FIRST DIRECTLY ANSWER THE COURT'S QUESTIONS,

11:25AM 11   WHICH IS THE TIMELINE.

11:25AM 12         SO THE GOVERNMENT FIRST INTERVIEWED DR. DAS IN FEBRUARY OF

11:25AM 13   2021.  THE GOVERNMENT HADN'T INTERVIEWED HIM BEFORE THAT DATE.

11:25AM 14         TWO WEEKS LATER THE GOVERNMENT INCLUDED THAT SUMMARY OF

11:25AM 15   HIS INTERVIEW IN ITS RESPONSE IN CONNECTION WITH THE MOTION IN

11:25AM 16   LIMINE ORDER AND QUOTED FROM IT.  IN FACT, THE GOVERNMENT WAS

11:25AM 17   TALKING ABOUT HOW MULTIPLE LAB DIRECTORS HAD STATED THAT THE

11:25AM 18   TESTS WERE INACCURATE AND UNRELIABLE QUOTING DR. ROSENDORFF

11:25AM 19   QUOTING DR. DAS.

11:25AM 20         THEN DEFENDANT INCLUDED IN HER MATERIALS THE LETTER FROM

11:25AM 21   DR. DAS TO CMS WHICH CONTAINS A LOT OF HIS SAME STATEMENTS THAT

11:25AM 22   HE SAID TO THE GOVERNMENT IN HIS INTERVIEW.

11:25AM 23         AND THE COURT ULTIMATELY DISCUSSED THAT LETTER, THAT

11:25AM 24   APRIL 2016 LETTER TO CMS IN ITS MOTION IN LIMINE ORDER AT

11:25AM 25   PAGE 32.

11:26AM   1        JUNE 3RD THE GOVERNMENT PROVIDED AN AMENDED WITNESS LIST

11:26AM   2    AND INCLUDED DR. DAS.  AND TO THE EXTENT THAT THE COURT IS

11:26AM   3    CURIOUS ABOUT THE DATES THAT OCCURRED IN 2020, I JUST WANT TO

11:26AM   4    TAKE THE COURT BACK FOR A MOMENT AND REMIND EVERYONE IN THE

11:26AM   5    COURTROOM THAT AT THAT MOMENT IN TIME TRIAL WAS SCHEDULED FOR

11:26AM   6    JULY 2020.  THE GOVERNMENT WAS MEETING ITS DISCLOSURE

11:26AM   7    OBLIGATIONS WHEN TRIAL AT THE TIME WAS APPROXIMATELY FOUR

11:26AM   8    MONTHS AWAY.

11:26AM   9        AND, OF COURSE, THE GOVERNMENT, I'M SURE BOTH PARTIES,

11:26AM  10    CONTINUED WITH TRIAL PREPARATION DURING THOSE FOUR MONTHS, BUT

11:26AM  11    UNBEKNOWNST TO EVERYONE A GLOBAL PANDEMIC OCCURRED AND DELAYED

11:26AM  12    THE TRIAL DATE FOR MORE THAN A YEAR.  AND HERE WE ARE.

11:26AM  13        SO THAT'S MY LONGWINDED WAY OF SAYING THAT THERE ARE A LOT

11:26AM  14    OF THINGS THAT OCCURRED FROM THAT INITIAL DISCLOSURE DATE TO

11:26AM  15    THE DISCLOSURE DATE THAT WE'RE TALKING ABOUT NOW, AND TO THE

11:26AM  16    BEST OF MY KNOWLEDGE, THERE WAS NO INTERIM REQUIREMENT FOR AN

11:26AM  17    UPDATED WITNESS LIST.

11:26AM  18        AND TO THE EXTENT THAT THEY IN THEIR REPLY, THE DEFENDANT

11:26AM  19    SAYS HOW COULD WE KNOW TO CHALLENGE A WITNESS WHO WAS NOT

11:26AM  20    DISCLOSED TO US?  BUT MAYBE NOT THE VAST MAJORITY BUT A

11:27AM  21    SUBSTANTIAL PORTION OF THE DEFENDANT'S MOTIONS IN LIMINE

11:27AM  22    CHALLENGED ITEMS THAT WERE NOT YET ON THE GOVERNMENT'S OFFICIAL

11:27AM  23    EXHIBIT LIST OR WITNESS LIST, MOST OBVIOUSLY THE AGENCY REPORTS

11:27AM  24    THAT WE WERE JUST TALKING ABOUT A MOMENT AGO.  THE FDA REPORTS

11:27AM  25    AND THE CMS REPORTS WERE NOT AT THE TIME ON THE GOVERNMENT'S

11:27AM 1    EXHIBIT LIST.  IN FACT, THEY COMPLAIN ABOUT THAT IN THEIR

11:27AM 2    MOTIONS THAT ARE CURRENTLY BEFORE THE COURT.

11:27AM 3        BUT THAT DIDN'T STOP THEM FROM FILING A MOTION IN LIMINE

11:27AM 4    ABOUT IT.

11:27AM 5        THE REASON I BRING THAT IN, YOUR HONOR, IS BECAUSE DR. DAS

11:27AM 6    WAS DISCLOSED TO THEM, THE SUBSTANCE OF HIS TESTIMONY, IN

11:27AM 7    MID-FEBRUARY OF 2021, TWO WEEKS AFTER THE GOVERNMENT SPOKE TO

11:27AM 8    HIM.  THE GOVERNMENT --

11:27AM 9        THE COURT:  I'M SORRY TO INTERRUPT YOU, MS. VOLKAR.

11:27AM 10       SO THAT -- THE SUBSTANCE OF HIS TESTIMONY, I THINK YOU

11:27AM 11   JUST SAID, IS THAT SUFFICIENT TO PUT A PARTY ON NOTICE THAT

11:27AM 12   THIS IS GOING TO BE AN INTENDED EXPERT WITNESS?

11:27AM 13       MS. VOLKAR:  WELL, YOUR HONOR, AGAIN, THE

11:27AM 14   GOVERNMENT'S POSITION IS THAT HE IS NOT AN EXPERT, BUT I WOULD

11:28AM 15   ALSO SAY THAT AT THE VERY LEAST THEY WERE ON NOTICE OF THE

11:28AM 16   SUBSTANCE OF HIS TESTIMONY.

11:28AM 17       AND I THINK THAT'S PARTICULARLY IMPORTANT IN THIS CASE

11:28AM 18   WHEN ONE OF THEIR MOTIONS IN LIMINE MOVED TO EXCLUDE PORTIONS

11:28AM 19   OF DR. ROSENDORFF, ANOTHER LAB DIRECTOR'S TESTIMONY AS LACKING

11:28AM 20   EXPERT SUPPORT.

11:28AM 21       AS I POINT OUT IN MY OPPOSITION, A LOT OF THE COMPLAINTS

11:28AM 22   THAT THE DEFENDANT RAISED IN THAT MOTION IN LIMINE COULD APPLY

11:28AM 23   EQUALLY TO DR. DAS, WHICH IS ESSENTIALLY IN HIS ROLE AS A LAB

11:28AM 24   DIRECTOR, IN HIS DAY-TO-DAY BUSINESS AS HE WAS MAKING DECISIONS

11:28AM 25   THAT THE DEFENDANT HIRED HIM TO MAKE, THOSE MAY BE BASED ON

11:28AM 1    SCIENTIFIC OR PARTICULARIZED KNOWLEDGE, AND, THEREFORE, IT

11:28AM 2    NEEDS EXPERT SUPPORT.

11:28AM 3        YOUR HONOR LARGELY SIDED WITH THE GOVERNMENT AND SAID

11:28AM 4    ACTUALLY HE'S JUST TESTIFYING AS A PERCIPIENT WITNESS AND IN

11:28AM 5    HIS LAY CAPACITY, EVEN IF IT MIGHT BE MORE THAN THE AVERAGE

11:28AM 6    PERSON MIGHT KNOW OFF THE TOP OF THEIR HEAD, BUT BASED ON HIS

11:28AM 7    KNOWLEDGE AND EXPERIENCE, HE WAS DOING HIS DAY-TO-DAY JOB.

11:28AM 8        AND I'LL POINT YOUR HONOR --

11:29AM 9            THE COURT:  SO, MS. VOLKAR, IF -- AND I JUST HEARD

11:29AM 10   YOU SAY DR. DAS IS NOT BEING OFFERED BY THE GOVERNMENT AS AN

11:29AM 11   EXPERT WITNESS?

11:29AM 12           MS. VOLKAR:  WELL, YOUR HONOR, AND THIS IS THE LAST

11:29AM 13   POINT THAT I HAD WANTED TO MAKE --

11:29AM 14           THE COURT:  SURE.

11:29AM 15           MS. VOLKAR:  -- WHICH IS OUR POSITION IS THAT HE'S

11:29AM 16   NOT AN EXPERT.

11:29AM 17       IF YOU LOOK AT THE DISCLOSURE THAT WE SENT TO THE

11:29AM 18   DEFENDANT ON JULY 29TH, 2021, WE SAID ALTHOUGH WE SUBMIT IT IS

11:29AM 19   NOT NECESSARY, AND THE GOVERNMENT SAYS WE SUBMIT IT IS NOT

11:29AM 20   NECESSARY BECAUSE WE BELIEVE DR. DAS IS TESTIFYING AS A

11:29AM 21   PERCIPIENT WITNESS, NOT AN EXPERT WITNESS, BUT WE OURSELVES

11:29AM 22   WERE PUT ON NOTICE THAT DEFENDANT WAS LIKELY TO DISAGREE WITH

11:29AM 23   US BECAUSE IN A FOOTNOTE TO THEIR JUNE 25TH, 2021 FILING

11:29AM 24   REGARDING -- CONTESTING DR. MASTER'S SUPPLEMENTAL REPORT THEY

11:29AM 25   FLAGGED, THERE'S NO WAY THAT DR. DAS COULD TESTIFY ABOUT ANY OF

| | | |
|---|---|---|
| 11:29AM | 1 | THESE ITEMS THAT HE WITNESSED AS LAB DIRECTOR AT THERANOS |
| 11:29AM | 2 | BECAUSE THE GOVERNMENT HAS NOT NOTICED HIM AS AN EXPERT. |
| 11:30AM | 3 | SO HERE WE ARE JUNE 2021, WE, FOLLOWING THE COURT'S MOTION |
| 11:30AM | 4 | IN LIMINE ORDERS, BELIEVE WE ARE EVEN MORE SECURE IN OUR BELIEF |
| 11:30AM | 5 | THAT DR. DAS IS NOT AN EXPERT, WE GET NOTICE FOR THE FIRST TIME |
| 11:30AM | 6 | FROM THEM THAT THEY BELIEVE THAT DR. DAS IS -- THE SUBSTANCE OF |
| 11:30AM | 7 | HIS TESTIMONY, WHICH THEY'RE OBVIOUSLY AWARE OF, MIGHT BE |
| 11:30AM | 8 | EXPERT TESTIMONY. |
| 11:30AM | 9 | WITHIN A MONTH OF THAT, WE PROVIDED THAT DISCLOSURE OUT OF |
| 11:30AM | 10 | AN ABUNDANCE OF CAUTION SAYING ALTHOUGH WE SUBMIT IT'S NOT |
| 11:30AM | 11 | NECESSARY, WE ARE PROVIDING YOU YOUR RULE 16 NOTICE.  IF YOU |
| 11:30AM | 12 | BELIEVE THIS IS EXPERT TESTIMONY, THEN HE'S GOING TO TESTIFY |
| 11:30AM | 13 | ABOUT WHAT HE SAID IN THOSE INTERVIEWS.  WE DON'T BELIEVE IT IS |
| 11:30AM | 14 | EXPERT TESTIMONY. |
| 11:30AM | 15 | SO THAT'S MY WAY OF SAYING, YOUR HONOR, FOR THE NOTICE |
| 11:30AM | 16 | POINT, THEY HAD NOTICE OF THE SUBSTANCE.  AS SOON AS WE |
| 11:30AM | 17 | UNDERSTOOD THAT THEY MIGHT CONSIDER IT EXPERT TESTIMONY, EVEN |
| 11:30AM | 18 | IF WE DISAGREED, WE'VE PROVIDED THEM THAT NOTICE. |
| 11:30AM | 19 | AND TO YOUR POINT, YOUR HONOR, WHERE IS THE PREJUDICE? |
| 11:30AM | 20 | THAT IS OUR QUESTION, WHERE IS THE PREJUDICE? |
| 11:30AM | 21 | THEY ALREADY FILED MOTIONS IN LIMINE ON SIMILAR TOPICS |
| 11:30AM | 22 | WITH RESPECT TO DR. ROSENDORFF THAT COULD EASILY BE APPLIED OR |
| 11:31AM | 23 | THEY COULD ARGUE ABOUT WHETHER THEY ARE OR ARE NOT APPLICABLE |
| 11:31AM | 24 | TO DR. DAS.  THERE'S A DAUBERT HEARING.  THE BINDER THAT |
| 11:31AM | 25 | MR. WADE BROUGHT TODAY, THOSE ARE ALSO THE MATERIALS WITH |

11:31AM 1    RESPECT TO DR. MASTER.  THAT'S IN PART, PART OF THE REASON WHY

11:31AM 2    THEY ASKED TO MOVE AND TO VACATE THE DAUBERT HEARING WHICH

11:31AM 3    WOULD HAVE OTHERWISE ALREADY OCCURRED WITH RESPECT TO

11:31AM 4    DR. MASTER BECAUSE THEY WANTED TIME TO GO THROUGH THOSE

11:31AM 5    MATERIALS.

11:31AM 6        WHAT I'M SUBMITTING TO YOU, YOUR HONOR, IS THAT THESE

11:31AM 7    ISSUES HAVE BEEN THERE, ARE THERE, THEY'RE VERY MUCH AWARE OF

11:31AM 8    THEM.  THERE'S NO PREJUDICE WITH RESPECT TO THIS PURPORTEDLY

11:31AM 9    LATE DISCLOSURE OF DR. DAS.

11:31AM 10       NOW, WITH YOUR HONOR'S PERMISSION, I'D REALLY LIKE TO TALK

11:31AM 11   ABOUT WHY I THINK DR. DAS IS NOT AN EXPERT.

11:31AM 12           THE COURT:  THAT'S MY QUESTION IS IF HE'S NOT AN

11:31AM 13   EXPERT, THEN WE DON'T HAVE TO WORRY ABOUT RULE 16 AS AN EXPERT.

11:31AM 14   WE DON'T HAVE TO WORRY ABOUT DAUBERTS, ET CETERA.

11:31AM 15       BUT WHAT WE DO HAVE TO HAVE CONCERN ABOUT, THE COURT HAS

11:31AM 16   TO BE CONCERNED ABOUT IS WHETHER OR NOT HIS TESTIMONY WILL PART

11:32AM 17   FROM THAT OF A LAY OBSERVER AND MOVE INTO MORE TECHNICAL

11:32AM 18   TESTIMONY WHERE OTHER TYPES OF EXPERTISE ANALYSIS WOULD BE

11:32AM 19   REQUIRED TO RECEIVE.

11:32AM 20           MS. VOLKAR:  ABSOLUTELY, YOUR HONOR.

11:32AM 21       AND THAT'S WHERE I WANTED TO FIRST NOTE BECAUSE I DO

11:32AM 22   APOLOGIZE, IT'S NOT IN MY OPPOSITION, BUT JUST DOWN THE HALL

11:32AM 23   JUDGE FREEMAN ACTUALLY RECENTLY RULED ON A VERY SIMILAR ISSUE

11:32AM 24   WITH RESPECT TO ENGINEERS IN THE CHEN CASE, AS YOU MIGHT KNOW

11:32AM 25   IS STILL GOING ON AT THIS MOMENT IN TIME.  AND THAT'S CASE

11:32AM 1    NUMBER 5-17-CR-603, ECF 291, PAGES 15 TO 16.  SHE ACTUALLY

11:32AM 2    TALKS ABOUT HOW THE ENGINEERS ARE JUST TALKING ABOUT THEIR

11:32AM 3    DAY-TO-DAY ABILITIES.  THEY MAY HAVE PARTICULARIZED KNOWLEDGE.

11:32AM 4    THEY'RE NOT TESTIFYING ABOUT WHETHER OR NOT IT'S A TRADE

11:32AM 5    SECRETS, THE QUESTION THAT IS AT ISSUE IN THAT CASE, BUT

11:32AM 6    THEY'RE ALLOWED TO TALK ABOUT HOW THEY CAME TO THE DECISIONS

11:33AM 7    THEY REACHED, AND WHAT THEY WERE DOING, AND HOW THEY WERE

11:33AM 8    FURTHERING THEIR DAY-TO-DAY JOB THAT THEY WERE HIRED FOR.

11:33AM 9            THE COURT:  THERE ARE CASES THAT SPEAK TO THAT.  WE

11:33AM 10   KNOW THAT THERE ARE NINTH CIRCUIT CASES AND OTHER CIRCUITS THAT

11:33AM 11   TALK ABOUT THAT DISTINCTION.  THAT'S WHAT I SUPPOSE YOU'RE

11:33AM 12   GOING TO TELL ME NOW ABOUT WHY THIS WITNESS CAN TESTIFY AS A

11:33AM 13   LAY WITNESS AND WHETHER OR NOT THERE'S GOING TO BE CONCERNS

11:33AM 14   ABOUT EXPERTISE THAT THE COURT HAS TO POLICE OR THERE WILL BE

11:33AM 15   OBJECTIONS, THOSE TYPES OF THINGS.

11:33AM 16        WE ALL KNOW WHAT'S GOING TO HAPPEN.

11:33AM 17            MS. VOLKAR:  RIGHT.  THAT'S CORRECT, YOUR HONOR.

11:33AM 18        AND WE SUBMIT, AS WE PROVIDED A LITTLE BIT OF A

11:33AM 19   DESCRIPTION IN OUR OPPOSITION FOR THE COURT, THAT DR. DAS IS

11:33AM 20   GOING TO TESTIFY ABOUT HE WAS HIRED AS LAB DIRECTOR AT THERANOS

11:33AM 21   IN LATE 2015, STARTED AS A CONTRACTOR ROLE, BECAME A

11:33AM 22   FULL-FLEDGED EMPLOYEE IN 2016.

11:33AM 23        AND WHEN HE WAS INTERVIEWED BY THE DEFENDANT HOLMES AND

11:34AM 24   HER CODEFENDANT, BALWANI, HE WAS TOLD WE WANT YOU TO SORT OF

11:34AM 25   RESPOND TO SOMETHING.  HE DIDN'T KNOW EXACTLY WHAT IT WAS AT

11:34AM 1    THE TIME, BUT IT TURNED OUT THEY HIRED HIM TO HELP RESPOND TO

11:34AM 2    THE CMS INVESTIGATION.  AND BECAUSE OF THAT, HE WAS ONE OF THE

11:34AM 3    KEY PEOPLE THAT WAS PUT IN CHARGE OF MARSHALLING AND GETTING

11:34AM 4    THE FACTS AND RESPONDING TO CMS, AND HE ULTIMATELY CONCLUDED

11:34AM 5    THAT CMS WAS 100 PERCENT CORRECT IN ITS FINDINGS.

11:34AM 6        AND HE, IN HIS DAY-TO-DAY JOB, WAS REVIEWING WHAT THE LAB

11:34AM 7    PRACTICES WERE, HOW THE TESTS WERE BEING RUN, THE QC, AND IN

11:34AM 8    MULTIPLE DIFFERENT WAYS HE WAS TESTING WHETHER OR NOT HE

11:34AM 9    THOUGHT IT WAS UP TO PAR, AND HE, IN HIS EXPERIENCE AS SOMEONE

11:34AM 10   WHO WAS HIRED FOR THIS PURPOSE AS A LAB DIRECTOR, DETERMINED IT

11:34AM 11   DID NOT MEET EVEN THE LOWEST BAR.

11:34AM 12       AND WHEN HE WENT TO EXPLAIN THAT TO MS. HOLMES, THE CEO,

11:34AM 13   WHEN HE WENT TO TELL HIS BOSS WE NEED TO DO SOMETHING

11:34AM 14   DIFFERENTLY, HE DECIDED TO USE A SIGMA METRIC BECAUSE HE

11:34AM 15   THOUGHT IT WAS THE EASIEST WAY TO CONVEY WHAT HE SAW AS A

11:35AM 16   LARGER PROBLEM.

11:35AM 17       SO HE USED ESSENTIALLY THIS MATHEMATICAL FORMULA, AND HE

11:35AM 18   DESCRIBED EXACTLY HOW IT'S CALCULATED, IT'S ADDITION,

11:35AM 19   SUBTRACTION, AND DIVISION, AND HE SAYS BASED ON DATA THAT IS

11:35AM 20   INCLUDED IN THERANOS'S GENERATED DOCUMENTS, AND HE SAYS THIS

11:35AM 21   PRODUCES ONE NUMBER THAT HE THINKS IT'S EASY TO CONVEY WHY HE

11:35AM 22   HAD CONCERNS ABOUT THE ACCURACY OR RELIABILITY OF THE TESTS.

11:35AM 23       SO WHAT I'M TRYING TO GET AT THERE, YOUR HONOR, IS THAT

11:35AM 24   HE'S TALKING ABOUT IN HIS DAY-TO-DAY HE WAS INFORMING

11:35AM 25   MS. HOLMES ABOUT WHY AND HOW THEY SHOULD RESPOND TO CMS.  HE

11:35AM 1     WAS EXPLAINING WHY AND HOW HE THOUGHT THAT THERE WERE

11:35AM 2     DEFICIENCIES IN THE LAB THAT NEEDED TO BE CORRECTED, HE WAS

11:35AM 3     TALKING ABOUT THE QUALITY CONTROL AND ANY ERRORS THAT HE SAW IN

11:35AM 4     IT.

11:35AM 5         AND ALTHOUGH ALL OF THAT MAY SOUND SCIENTIFIC TO YOU OR I

11:35AM 6     OR OTHERS IN THE COURTROOM, AT THE END OF THE DAY, HE WAS DOING

11:36AM 7     THE JOB HE WAS HIRED TO DO, AND HE WAS PASSING ON THE

11:36AM 8     INFORMATION THAT HE WAS ASKED AND HIRED TO PASS ON.

11:36AM 9         AND WHEN HE COMES TO TESTIFY, IF YOUR HONOR WANTS TO PLACE

11:36AM 10    ANY LIMITATIONS ON, FOR EXAMPLE, HOW DETAILED HE DESCRIBES

11:36AM 11    THOSE UNDERLYING PROCESSES, AT THE END OF THE DAY WHAT HE'S

11:36AM 12    GOING TO TESTIFY ABOUT IS I DID MY JOB, AS A RESULT OF DOING MY

11:36AM 13    JOB, I DETERMINED THAT THESE TESTS DID NOT MEET EVEN THE LOWEST

11:36AM 14    BAR AND I HAD TO GO TELL MY BOSS THAT.  AND I NEEDED TO BE ABLE

11:36AM 15    TO EXPLAIN IT IN A WAY --

11:36AM 16        THE COURT:  AND IF HE SAYS THAT WITHOUT REFERENCE TO

11:36AM 17    A SIGMA ANALYSIS, OR SOMETHING LIKE THAT, THAT'S DIFFERENT,

11:36AM 18    ISN'T IT?

11:36AM 19       IF HE SAYS MY JOB IS TO ENSURE THAT THE LAB IS OPERATING

11:36AM 20    AS REPRESENTED AND IN COMPLIANCE WITH ALL REGULATIONS, I

11:36AM 21    CHECKED X TO DO THAT, AND I LOOK AT A SPREADSHEET, FOR EXAMPLE,

11:36AM 22    THAT TELLS ME, INFORMS ME OF MY RESPONSIBILITIES, AND I GATHER

11:36AM 23    THAT INFORMATION, AND I REPORT IT TO MY BOSS.

11:37AM 24        MS. VOLKAR:  I MOSTLY AGREE, YOUR HONOR.

11:37AM 25       I WOULD ALSO SUBMIT THAT THE SIGMA METRIC, MUCH LIKE

11:37AM 1   SEVERAL OF THE ITEMS THAT WE TALKED ABOUT WITH RESPECT TO

11:37AM 2   DR. ROSENDORFF IN THE MOTION IN LIMINE, THE MULTIPLEX SEEN, THE

11:37AM 3   REFERENCE RANGES, AT THE END OF THE DAY THESE ARE STILL THINGS

11:37AM 4   THAT DO NOT REQUIRE SOME ELABORATE METHODOLOGY OR DEEP

11:37AM 5   EXPLANATION, AT LEAST THAT'S THE GOVERNMENT'S POSITION.  AND SO

11:37AM 6   WE BELIEVE --

11:37AM 7            THE COURT:  WELL, THAT'S A QUESTION, IS IT EVERY DAY

11:37AM 8   LIFE REASONING?  DOES IT REQUIRE SPECIFIC SPECIALIST REASONING?

11:37AM 9   THAT'S THE ISSUE, ISN'T IT?

11:37AM 10      AND HE MAY TESTIFY I LOOK AT THIS, I GOT THE RESULTS, PART

11:37AM 11  OF THESE RESULTS I BELIEVE ARE GENERATED BY USING SOMETHING

11:37AM 12  CALLED THE SIGMA, WHATEVER IT IS, AND NOT TESTIFY ABOUT WHAT

11:37AM 13  THE SIGMA IS.  AND YOU MIGHT HAVE AN EXPERT COME IN AND SAY

11:37AM 14  THIS IS WHAT THE SIGMA IS, BUT IT DOESN'T COME THROUGH HIM.

11:37AM 15           MS. VOLKAR:  YOUR HONOR, THAT'S ENTIRELY POSSIBLE.

11:37AM 16  AND IF THE COURT WERE TO RULE THAT, THE GOVERNMENT WOULD

11:38AM 17  ABSOLUTELY FOLLOW THAT, ESPECIALLY BECAUSE, OF COURSE, WE STILL

11:38AM 18  HAVE DR. MASTER THAT I KNOW WE'VE BEEN TALKING ABOUT TODAY.

11:38AM 19      BUT I DO WANT TO POINT YOUR HONOR BACK TO THE CHEN CASE

11:38AM 20  WITH JUDGE FREEMAN THAT I MENTIONED BECAUSE IN HER ORDER SHE

11:38AM 21  ACTUALLY TALKS ABOUT HOW THE ADVISORY COMMITTEE NOTES POINT OUT

11:38AM 22  THAT IT'S SPECIALIZED KNOWLEDGE THAT ONE WOULDN'T NECESSARILY

11:38AM 23  HAVE BUT NOT NECESSARILY SOMETHING THAT WAS GARNERED JUST AS A

11:38AM 24  RESULT OF BEING IN HIS OR HER POSITION WITH THE EXPERTISE THAT

11:38AM 25  THEY HAVE.

11:38AM  1          THE COURT:  I THINK WE ALL UNDERSTAND THAT.  PEOPLE

11:38AM  2   HAVE JOB DESCRIPTIONS, AND THEY'RE ENTITLED TO TALK ABOUT THEIR

11:38AM  3   JOB DESCRIPTIONS.

11:38AM  4          BUT IF THEY START TALKING ABOUT THINGS THAT ARE OUTSIDE,

11:38AM  5   AS THE CASES TELL US, EVERY-DAY-LIFE-TYPE SITUATIONS, THAT

11:38AM  6   BECOMES THE ISSUE THEN, WHEN DOES, WHEN DOES A NON-EXPERT

11:38AM  7   TESTIMONY MORPH INTO EXPERTISE?

11:38AM  8          AS I'VE SAID, THAT'S SOMETHING THAT WE'LL PROBABLY HAVE TO

11:38AM  9   LOOK AT HERE.

11:39AM  10          IF YOU'RE NOT OFFERING THIS WITNESS AS AN EXPERT, THEN I

11:39AM  11   EXPECT MR. WADE'S TEAM WILL RISE TO THEIR FEET IF THEY BELIEVE

11:39AM  12   THAT THE TESTIMONY MOVES INTO THE EXPERTISE LANE.

11:39AM  13          MS. VOLKAR:  WELL, YOUR HONOR, IF THAT IS THE CASE,

11:39AM  14   THEN THE GOVERNMENT WOULD RESPECTFULLY REQUEST THAT DR. DAS BE

11:39AM  15   EXPLICITLY ALLOWED TO TESTIFY THAT HE RAN MULTIPLE TESTS, EVEN

11:39AM  16   IF HE DOESN'T TALK ABOUT WHAT THOSE TESTS ARE, AND HE

11:39AM  17   CONSIDERED IN MULTIPLE DIFFERENT WAYS HOW IT COULD -- WHETHER

11:39AM  18   IT WAS OR WAS NOT MEETING, AGAIN, THAT LOWEST BAR THAT HE

11:39AM  19   TALKED ABOUT, AND THAT WHEN HE DETERMINED IT WAS NOT, HE NEEDED

11:39AM  20   TO GO TELL HIS BOSS, AND HE CHOSE TO DO SO IN A WAY THAT MADE

11:39AM  21   SENSE.

11:39AM  22          THE COURT:  SURE.

11:39AM  23          MS. VOLKAR:  NONE OF THAT TALKED ABOUT ANY SCIENCE

11:39AM  24   PER SE, BUT WE WOULD WANT HIM TO BE ABLE TO TALK AND TESTIFY TO

11:39AM  25   THOSE FACTS WHICH IS EXACTLY WHAT HE SAID IN HIS INTERVIEWS.

11:39AM 1               THE COURT:  OKAY.

11:39AM 2               MR. WADE:  WHAT COUNSEL JUST DESCRIBED, YOUR HONOR,

11:39AM 3    IS AN OPINION THAT HE FORMED ON THE BASIS OF SCIENTIFIC

11:39AM 4    KNOWLEDGE IN A METHODOLOGY.

11:40AM 5               WITH ALL DUE RESPECT, THE 6 SIGMA CALCULATION, AS THE

11:40AM 6    COURT WILL LEARN DURING THIS TRIAL, IS ANYTHING BUT EASY AND IT

11:40AM 7    IS ANYTHING BUT DE RIGUEUR IN THE DAY-TO-DAY LIFE OF NEARLY

11:40AM 8    ANYONE.  IT IS QUITE A COMPLICATED CALCULATION.

11:40AM 9               AND A BIG QUESTION WHEN YOU GET TO A CALCULATION LIKE THAT

11:40AM 10   IS WHAT IS THE CALCULATION SO THAT THE DEFENDANT HAS NOTICE AND

11:40AM 11   CAN CONFRONT THE WITNESS.

11:40AM 12              THE CALCULATION IS BASED UPON DATA.  WE DON'T KNOW WHAT

11:40AM 13   THE DATA IS.

11:40AM 14              SO THEY WANT TO OFFER THE ULTIMATE OPINION OF THIS EXPERT,

11:40AM 15   BUT THEY DON'T WANT TO COMPLY WITH RULE 16 THAT GIVES US THE

11:40AM 16   BASIS AND THE METHODOLOGY SO THAT WE CAN SAY THAT WAS CORRECT

11:40AM 17   OR NOT CORRECT.

11:40AM 18              HE DID IT IN HIS JOB.  HIS JOB, SO WE'RE CLEAR, IS A

11:40AM 19   PERCIPIENT WITNESS, HE WAS A UNIQUE PERCIPIENT WITNESS.  HE

11:40AM 20   WASN'T OBSERVING THE LAB ON A PROSPECTIVE BASIS.  NONE OF THE

11:41AM 21   ISSUES THAT THEY WANT TO TALK TO HIM ABOUT RELATE TO ONGOING

11:41AM 22   SORT OF FORWARD LOOKING OR PRESENT SENSE ACTIVITY.

11:41AM 23              THEY ALL RELATE TO RETROSPECTIVE ACTIVITY, HIM LOOKING AT

11:41AM 24   DATA, LOOKING AT INFORMATION, PROVIDING A SPECIALIZED

11:41AM 25   KNOWLEDGE, AND COMING TO OPINIONS.

11:41AM  1       THE SECOND 302 HE DOES WITH RESPECT TO THE SIX INCH BINDER

11:41AM  2   ON YOUR HONOR'S DESK.  NONE OF THAT RELATES IN ANY WAY TO

11:41AM  3   ANYTHING THAT HE ACTUALLY DID AT THE TIME.  HE'S INTERPRETING

11:41AM  4   DOCUMENTS THAT HE DIDN'T AUTHOR.

11:41AM  5           THE COURT:  MR. WADE, IS IT -- IS THERE ANY WAY THAT

11:41AM  6   THIS WITNESS COULD TESTIFY AS A PERCIPIENT WITNESS IN YOUR

11:41AM  7   OPINION?

11:41AM  8           MR. WADE:  HE CAN.  PROBABLY I'M GUESSING 20 PERCENT

11:41AM  9   OF HIS TESTIMONY I THINK COULD COME IN.

11:41AM 10       I'D BE HAPPY -- IF THE COURT AND COUNSEL PREFER NOT TO

11:41AM 11   OFFER HIM AS AN EXPERT AND WANTS TO GO LINE BY LINE THROUGH THE

11:42AM 12   302'S AND THE EXHIBITS, I'D BE HAPPY TO POINT OUT THE EXPERT

11:42AM 13   TESTIMONY.  IT'S ACTUALLY NOT THAT DIFFICULT.  WHEN YOU LOOK AT

11:42AM 14   THE 302'S IT SAYS CONCLUDES OPINIONS.  IT'S VERY EXPLICIT.

11:42AM 15           THE COURT:  WELL, MS. VOLKAR TELLS US THEY'RE NOT

11:42AM 16   GOING TO OFFER HIM AS AN EXPERT.  SHE DID THAT AS AN ABUNDANCE

11:42AM 17   OF CAUTION BASED ON A FOOTNOTE IN ONE OF YOUR PLEADINGS, AND

11:42AM 18   SHE THOUGHT OUT OF AN ABUNDANCE OF CAUTION THEY SHOULD JUST

11:42AM 19   INDICATE AS MUCH.

11:42AM 20       WHAT SHE TELLS US TODAY THIS IS NOT AN EXPERT WITNESS.

11:42AM 21   THIS IS NOT A WITNESS THAT THEY INTEND TO HAVE A 702 HEARING OR

11:42AM 22   ANY OF THOSE ANALYSES.  IT'S A PERCIPIENT WITNESS.

11:42AM 23       WHAT WE'RE TALKING ABOUT NOW IS WHAT IS THE -- WHAT ARE

11:42AM 24   THE PARAMETERS FOR THAT PERCIPIENT WITNESS TESTIMONY AS OPPOSED

11:42AM 25   TO GETTING INTO THE EXPERT LANE AND STAYING IN THE PERCIPIENT

11:43AM 1    WITNESS LANE.  I THINK THAT'S WHAT WE'RE TALKING ABOUT.

11:43AM 2        I'M CURIOUS WHETHER THIS IS GOING TO BE BECAUSE HE'S NOT

11:43AM 3    GOING TO BE CALLED AS AN EXPERT WITNESS BUT RATHER AS A

11:43AM 4    PERCIPIENT WITNESS, IS THIS SOMETHING THAT WE'LL HAVE TO POLICE

11:43AM 5    AS THE WITNESS TESTIFIES?  IS THIS SOMETHING THAT THE

11:43AM 6    GOVERNMENT WOULD PROVIDE A PROFFER OR AN AREA, AND I'M NOT

11:43AM 7    ASKING YOU TO DO THAT, BUT PROVIDE SOME TYPE OF EVIDENCE OF

11:43AM 8    THESE ARE THE QUESTIONS THAT WE'RE GOING TO ASK?  THIS IS WHAT

11:43AM 9    IT IS.

11:43AM 10       YOU'VE TOLD ME ABOUT THAT ALREADY.  I HAVE SOME CONCERNS

11:43AM 11   ABOUT THE SIGMA 6, WHATEVER THAT IS.  I CAN'T EVEN PRONOUNCE IT

11:43AM 12   CORRECTLY IT'S SO COMPLICATED.

11:43AM 13       SO I THINK THAT'S PROBABLY OUTSIDE THE PURVIEW OF A

11:43AM 14   REASONABLE EVERY DAY LIFE JURY PERSON.  BUT I DO THINK -- LET

11:43AM 15   ME JUST CUT TO THE CHASE, I DO THINK, MR. WADE, THAT THE

11:43AM 16   WITNESS COULD TESTIFY AS A PERCIPIENT WITNESS AND NOT GET INTO

11:43AM 17   ANY OF THOSE SPECIFICS.  I DO THINK THAT'S POSSIBLE.

11:44AM 18       I TALKED A LITTLE BIT ABOUT A HYPOTHETICAL WHERE THAT

11:44AM 19   MIGHT HAPPEN.  THIS IS MY JOB, THIS IS WHAT I DO, I GET THE

11:44AM 20   RESULTS, I LOOK AT THE RESULTS, AND ACCORDING TO -- I COMPARE

11:44AM 21   IT TO WHATEVER IT IS, AND THAT'S NOT MY OPINION, IT'S THE

11:44AM 22   RESULTS, AND I'M REPORTING THE RESULTS.  YOU KNOW, IT'S AT A

11:44AM 23   HIGH LEVEL, OF COURSE.  BUT THOSE TYPES OF TESTIMONY DO NOT, IT

11:44AM 24   SEEMS, INTERFERE INTO AN EXPERT ANALYSIS.

11:44AM 25           MR. WADE:  YOUR HONOR, IF WE CAN PROPERLY AVOID THE

11:44AM 1    OPINIONS AND CONCLUSIONS AND THINGS THAT HE DID BASED UPON HIS

11:44AM 2    EXPERTISE, WE'D BE HAPPY TO LIMIT IT TO THAT 20 PERCENT AND,

11:44AM 3    YOU KNOW, MOVE FORWARD.

11:44AM 4         WHAT I'M HESITANT ABOUT, YOUR HONOR, IS WE'VE GOTTEN THIS

11:44AM 5    DISCLOSURE OVER A YEAR LATE, AND COUNSEL IS RIGHT THAT THE

11:44AM 6    TRIAL HAS MOVED, BUT WE'VE ALSO ALWAYS IN THIS CASE, AS

11:44AM 7    EVERYONE KNOWS, WE CUED THOSE DISCLOSURES TO MOTIONS PRACTICE

11:44AM 8    SO THAT WE CAN PREPARE AND PRESENT EVERYTHING IN AN ORDERLY

11:45AM 9    WAY, WHICH WE'VE DONE WITH RESPECT TO ALL OF THE OTHER MATTERS

11:45AM 10   THAT HAVE GONE UP, AND WE'VE PREPARED FOR TRIAL ACCORDINGLY.

11:45AM 11        SO THIS IS, THIS IS UNQUESTIONABLY LATE.

11:45AM 12        BUT MY CONCERN IS THAT IF WE WAIT AND DEFER ON THIS, WE'RE

11:45AM 13   NOT GOING TO DRAW THE LINES THE WAY THAT WE THINK IS

11:45AM 14   APPROPRIATE, AND THEN THEY'RE GOING TO TRY TO OFFER EXPERT

11:45AM 15   TESTIMONY WITH EVEN LESS NOTICE.

11:45AM 16        SO I DO HAVE SOME -- AND IF THE COURT WANTS TO WAIT AND

11:45AM 17   JUST RULE AND DRAW THE LINES AND CALL BALLS AND STRIKES AND

11:45AM 18   THIS IS IN, THIS IS OUT, WE WILL BE WILLING TO DEFER TO THAT.

11:45AM 19        BUT I WANT TO BE MINDFUL OF THE CASES, YOUR HONOR, AS I

11:45AM 20   HEAR COUNSEL TALK.  THE NINTH CIRCUIT HAS BEEN VERY CLEAR AND

11:45AM 21   AN ANALOGOUS SET OF CIRCUMSTANCES ARE THESE LAW ENFORCEMENT

11:45AM 22   AGENT CASES WHERE YOU'RE DRIVING THE CAR AND YOU'RE OBSERVING

11:45AM 23   THINGS AND THE CAR GOES FROM THIS LANE TO THAT LANE AND THAT

11:45AM 24   LANE TO THIS LANE, AND I CAN RELAY ALL OF THAT TO THE JURY AND

11:46AM 25   I CAN DO IT AND DESCRIBE IT AS AN FBI SPECIAL AGENT, ET CETERA,

11:46AM 1      ET CETERA, RIGHT?

11:46AM 2          BUT WHEN I SAY THIS MEANS SOMETHING, I CONCLUDED THIS

11:46AM 3      MEANT SOMETHING, THAT'S EXPERT TESTIMONY.

11:46AM 4          THE COURT:  THAT'S FIGUEROA-LOPEZ THAT YOU'RE

11:46AM 5      TALKING ABOUT.

11:46AM 6          MR. WADE:  IT IS.

11:46AM 7          THE COURT:  OF COURSE WE KNOW THAT THAT WAS A

11:46AM 8      HARMLESS ERROR FINDING AT THE END, BUT THERE WAS MENTION OF

11:46AM 9      THOSE FACTS AND WHAT HAPPENED AND HOW THERE WAS A CROSSOVER OF

11:46AM 10     EXPERTISE, AND THAT'S A GOOD EXAMPLE IN THE DRUG CASES.  WELL,

11:46AM 11     THIS WAS -- THE OFFICER TESTIFIED, I THINK, IN MY OPINION,

11:46AM 12     THESE ARE ACTIVITIES THAT ARE DONE BY DRUG DEALERS.  IN MY

11:46AM 13     OPINION, THESE ARE THINGS THAT ARE DONE BY DRUG DEALERS,

11:46AM 14     ET CETERA, WITHOUT BEING PROPERLY, PROPERLY IDENTIFIED AS AN

11:46AM 15     EXPERT WITNESS THE COURT SO FOUND.  EXACTLY.

11:46AM 16         MR. WADE:  AND HIS OPINION WAS TIED TO ACTION IN

11:46AM 17     THAT CASE AS WELL, WHICH IS IMPORTANT TO REMEMBER IN HIS LINE

11:46AM 18     OF DUTY AND IN HIS JOB.

11:46AM 19         THE COURT:  BASED ON TRAINING AND EXPERIENCE.  HAVE

11:46AM 20     YOU EVER HEARD OF THAT BEFORE?

11:46AM 21         MR. WADE:  BASED ON TRAINING AND EXPERIENCE IN HIS

11:46AM 22     LINE OF DUTY MANY OF THE SAME THINGS THAT COUNSEL WAS JUST

11:47AM 23     SPEAKING ABOUT WITH RESPECT TO DAS, AND HE TOOK ACTION BASED

11:47AM 24     UPON THAT.

11:47AM 25         THE COURT:  RIGHT.

11:47AM  1           MR. WADE:  SAME THING.

11:47AM  2           THE COURT:  I UNDERSTAND.  I THINK I GET THAT.

11:47AM  3           MS. VOLKAR:  YOUR HONOR, IF I MAY BE HEARD?

11:47AM  4      SO FIRST OF ALL, I THINK PART OF THE REASON THAT WE'RE

11:47AM  5  HERE TODAY IS WHAT CONCERNS ME IN HEARING MR. WADE'S STATEMENTS

11:47AM  6  IS THAT THEY THINK ONLY 20 PERCENT OF DR. DAS'S TESTIMONY IS

11:47AM  7  GOING TO BE ADMISSIBLE.

11:47AM  8      FRANKLY, ALTHOUGH I UNDERSTAND THE STATEMENTS FROM

11:47AM  9  YOUR HONOR, THE GOVERNMENT SUBMITS THAT EVERYTHING THAT IS IN

11:47AM 10  HIS 302'S, THE INTERVIEWS OF HIM, WOULD NOT BE EXPERT TESTIMONY

11:47AM 11  AND COMPLETELY UNDERSTAND IF THE COURT DISAGREES ON THE SIGMA

11:47AM 12  POINT, FOR EXAMPLE, ALTHOUGH WE RESERVE OUR POSITION, BUT

11:47AM 13  CERTAINLY NOT DOWN TO 20 PERCENT OF WHAT HE'S GOING TO TESTIFY

11:47AM 14  ABOUT.

11:47AM 15      ALL I'M SAYING IS THAT IT DOES SEEM THAT THIS IS SORT OF

11:47AM 16  BREWING UP FOR FURTHER, FURTHER DEBATE, AND THAT SEEMS

11:47AM 17  SOMETHING LIKE CLEARER LINES NEED TO BE DRAWN AT THIS POINT IN

11:47AM 18  TIME, OR, AGAIN, ALTHOUGH THE COURT SUBMITS -- ALTHOUGH THE

11:48AM 19  GOVERNMENT SUBMITS IT'S NOT NECESSARY, WE SUBMIT THERE'S NO

11:48AM 20  PREJUDICE AND THAT THE DISCLOSURE OF HIM AS AN EXPERT WAS NOT

11:48AM 21  UNTIMELY, AND TO THE EXTENT THAT THE COURT DISAGREES, DR. DAS

11:48AM 22  COULD BE SUBMITTED FOR A DAUBERT HEARING.  OF COURSE, WE HAVE

11:48AM 23  ONE THAT IS NOT YET SCHEDULED ON SIMILAR TOPICS.  WE STILL

11:48AM 24  DISAGREE AND DON'T THINK THAT THEY'VE BEEN PREJUDICED IN ANY

11:48AM 25  WAY, SHAPE, OR FORM.

11:48AM 1      THEY ABSOLUTELY KNOW WHAT HE'S GOING TO TALK ABOUT.  THEY

11:48AM 2  ABSOLUTELY KNOW THE BASES FOR WHAT HE'S GOING TO TALK ABOUT.

11:48AM 3  IT OVERLAPS WITH SEVERAL WITNESSES.  THIS IS NOT THE FIRST TIME

11:48AM 4  THAT WE'VE BEEN TALKING ABOUT THIS.

11:48AM 5      I ACTUALLY WANTED TO POINT TO THE FIGUEROA-LOPEZ CASE THAT

11:48AM 6  YOUR HONOR HAS BEEN TALKING ABOUT.  THERE THEY FOUND -- WELL,

11:48AM 7  FIRST OF ALL, THEY FOUND THAT TESTIMONY ABOUT SUSPICIOUS

11:48AM 8  BEHAVIOR DIDN'T NECESSARILY CROSS THE LINES, BUT THERE WAS

11:48AM 9  CERTAINLY TESTIMONY THAT DID NOT CROSS THE LINE.

11:48AM 10      BUT EVEN WHEN THEY FOUND A RULE 16 VIOLATION IN A CASE

11:48AM 11  WHEN THE GOVERNMENT NEVER GAVE RULE 16 DISCLOSURE, THEY HELD IT

11:48AM 12  IS HARMLESS BECAUSE RULE 16 DOES NOT REQUIRE THE EXCLUSION OF

11:49AM 13  EFFECTIVE TESTIMONY.

11:49AM 14      IF THE PERSON HAS THE EXPERTISE AND HAS THE TESTIMONY THAT

11:49AM 15  SUPPORTS HIM AS AN EXPERT, THE COURT IN THAT CASE FOUND, WELL,

11:49AM 16  HE WOULD HAVE BEEN DEEMED AN EXPERT.

11:49AM 17      I SUBMIT TO YOUR HONOR HERE THAT THAT'S EXACTLY WHAT WE'RE

11:49AM 18  LOOKING AT.  DR. DAS IS AN EXPERT.  THE GOVERNMENT DID NOT

11:49AM 19  UNTIMELY DISCLOSE HIM.  THEY DISCLOSED HIM PROMPTLY WHEN WE

11:49AM 20  LEARNED THAT THE DEFENDANT MIGHT DISAGREE WITH US ABOUT THE

11:49AM 21  CATEGORY THAT HIS TESTIMONY CALLS INTO, THEY'VE HAD THE

11:49AM 22  SUBSTANCE OF HIS TESTIMONY FOR MORE THAN SIX MONTHS, AND,

11:49AM 23  AGAIN, THE GOVERNMENT SUBMITS THAT DR. DAS'S TESTIMONY SHOULD

11:49AM 24  BE ALLOWED IN, IN FULL AS PROPOSED.

11:49AM 25      AND IF THE COURT DOES DISAGREE WITH US, THEN PERHAPS WE

11:49AM   1    NEED TO HAVE A <u>DAUBERT</u> HEARING, BUT WE REALLY URGE THAT THAT'S

11:49AM   2    NOT NECESSARY.  HE IS AN EXPERT, AND HE IS QUALIFIED TO TALK

11:49AM   3    ABOUT THESE TOPICS.

11:49AM   4            THE COURT:  BUT YOU -- WHAT I HEARD YOU SAY

11:49AM   5    THOUGH -- I'M SORRY, MS. VOLKAR.  JUST SO I CAN GET CLARITY,

11:49AM   6    YOU'RE NOT -- IT'S NOT YOUR INTENT TO -- YOU DON'T BELIEVE THAT

11:49AM   7    YOU NEED TO OFFER HIM AS AN EXPERT, AND IT SOUNDS LIKE YOU'RE

11:50AM   8    NOT DOING THAT.

11:50AM   9            MS. VOLKAR:  THAT'S NOT OUR INTENTION, YOUR HONOR.

11:50AM  10     AGAIN, BECAUSE WE BELIEVE THAT HE'S TESTIFYING ABOUT WHAT

11:50AM  11    HE OBSERVED IN HIS ROLE AS LAB DIRECTOR.  WE BELIEVE THAT HE'S

11:50AM  12    TESTIFIED ABOUT THINGS THAT HE WITNESSED AND PARTICIPATED IN IN

11:50AM  13    THE ROLE THAT HE WAS HIRED FOR BY MS. HOLMES TO DO AT THERANOS,

11:50AM  14    AND SO BECAUSE OF THAT HE CAN CERTAINLY DO THAT WITHOUT

11:50AM  15    REFERENCE TO, FOR EXAMPLE, THE SIGMA METRICS.

11:50AM  16            THE COURT:  RIGHT.

11:50AM  17            MS. VOLKAR:  AGAIN, THE SIGMA METRICS WAS ONE OF

11:50AM  18    MULTIPLE TYPES OF ANALYSES HE RAN IN ORDER TO ANSWER THE

11:50AM  19    QUESTIONS THAT MS. HOLMES AND OTHERS AT THE COMPANY WANTED TO

11:50AM  20    KNOW WHICH WAS IN CONNECTION WITH THE CMS INSPECTION.

11:50AM  21     AND HE USED THE SIGMA METRIC IN PART BECAUSE HE THOUGHT IT

11:50AM  22    WAS ONE OF THE EASIEST WAYS TO EXPLAIN IT BECAUSE IT ULTIMATELY

11:50AM  23    RESULTS IN ONE NUMBER.

11:50AM  24            THE COURT:  THAT'S WHAT HE USED AS A TOOL TO CONVEY

11:50AM  25    THE INFORMATION.  I UNDERSTAND THAT.

| | | |
|---|---|---|
| 11:50AM | 1 | AND HE MAY BE -- YOU'VE HEARD ME.  I THINK I HAVE SOME |
| 11:50AM | 2 | CONCERNS WITH THAT IF HE'S NOT GOING TO BE AN EXPERT. |
| 11:50AM | 3 | MS. VOLKAR:  UH-HUH. |
| 11:50AM | 4 | THE COURT:  AND THAT'S A HEADS UP TO YOU HOW YOU |
| 11:51AM | 5 | WANT TO FASHION YOUR EXAMINATION IF HE'S NOT AN EXPERT. |
| 11:51AM | 6 | MS. VOLKAR:  YES. |
| 11:51AM | 7 | THE COURT:  AND, MR. WADE, I'M NOT INCLINED TODAY TO |
| 11:51AM | 8 | GIVE 20 PERCENT LIMITATION ON TESTIMONY BECAUSE WE DON'T KNOW |
| 11:51AM | 9 | WHAT THAT IS YET.  BASED ON MS. VOLKAR'S REPRESENTATION HERE, I |
| 11:51AM | 10 | DON'T THINK IT'S APPROPRIATE FOR ME TO WHOLESALE LIMIT ANYTHING |
| 11:51AM | 11 | NOW. |
| 11:51AM | 12 | I THINK I'VE SHARED WITH YOU MY CONCERNS.  I ASKED ABOUT |
| 11:51AM | 13 | RULE 16.  I WAS CONCERNED ABOUT THAT AS AN EXPERT NOTICE. |
| 11:51AM | 14 | WHAT I UNDERSTAND NOW IS, ALTHOUGH MS. VOLKAR BELIEVES |
| 11:51AM | 15 | THERE'S NO RULE 16 VIOLATION SHE BELIEVES SHE CAN, IF NEEDED, |
| 11:51AM | 16 | ENGAGE A DAUBERT OR OTHERWISE QUALIFY THIS WITNESS AS AN |
| 11:51AM | 17 | EXPERT, BUT WHAT I HEAR HER TELLING US TODAY IS THIS WITNESS IS |
| 11:51AM | 18 | GOING TO BE CALLED AS A PERCIPIENT WITNESS. |
| 11:51AM | 19 | THE QUESTION OF WHETHER OR NOT THAT TESTIMONY LEAVES THE |
| 11:51AM | 20 | PUBLIC ARENA, IF YOU WILL, OR CALLS UPON EXPERTISE FOR ITS |
| 11:52AM | 21 | FOUNDATION IS ONE THAT WE'LL JUST HAVE TO WAIT AND SEE. |
| 11:52AM | 22 | I'VE GIVEN YOU -- I DON'T WANT TO CALL IT AN ADMONITION, |
| 11:52AM | 23 | BUT I'VE GIVEN YOU MY CONCERNS.  LET ME PUT IT THAT WAY. |
| 11:52AM | 24 | MS. VOLKAR:  YOUR HONOR, IF I MAY JUST FOLLOW UP |
| 11:52AM | 25 | WITH ONE MORE POINT RELATED TO DR. ROSENDORFF IN THE COURT'S |

11:52AM 1    MOTION IN LIMINE ORDER, WHEN DISCUSSING WHETHER OR NOT HE CAN

11:52AM 2    TALK ABOUT VIOLATIONS OF INDUSTRY STANDARD AND GOVERNMENT

11:52AM 3    REGULATIONS AND THOSE TYPES OF THINGS, I THINK ALONG A SIMILAR

11:52AM 4    VEIN HERE, THIS COURT HELD THAT HE COULD ABSOLUTELY TALK ABOUT

11:52AM 5    SUCH ITEMS WHEN EVALUATING MS. HOLMES'S INTENT IN THE ALLEGED

11:52AM 6    SCHEME TO DEFRAUD.

11:52AM 7         SO WE JUST WANTED TO PUT FORTH THAT OF COURSE THERE'S

11:52AM 8    ANOTHER ASPECT AS TO WHY ALL OF THIS IS RELEVANT AND PERTINENT

11:52AM 9    AND PERCIPIENT TESTIMONY.

11:52AM 10             THE COURT:  OKAY.  THANK YOU.

11:52AM 11             MR. WADE:  YOUR HONOR, A COUPLE OF MORE POINTS, AND

11:52AM 12   MAYBE THIS IS AN EFFORT TO TRY TO SEEK CLARITY HERE BECAUSE I

11:52AM 13   STILL -- I DON'T -- FIRST OF ALL, DR. ROSENDORFF IS A DISCLOSED

11:52AM 14   EXPERT, OKAY?  SO WE KNEW HE WAS GOING TO BE AN EXPERT, IT WAS

11:52AM 15   TIMELY, AND THE LITIGATION PROCEEDED WITH THE BENEFIT OF THAT.

11:52AM 16        SECOND, I HAVE HEARD COUNSEL SAY THEY BELIEVE THAT THEY

11:53AM 17   CAN OFFER EVERYTHING THAT THEY'VE IDENTIFIED AS PERCIPIENT

11:53AM 18   WITNESS TESTIMONY, AND THEY'RE NOT GOING TO DO A RULE 16

11:53AM 19   DISCLOSURE.

11:53AM 20        BUT RESPECTFULLY, YOUR HONOR, IT'S PLAIN FROM THE RECORD

11:53AM 21   BEFORE THE COURT THAT THAT IS NOT THE CASE.  SO KICKING THIS

11:53AM 22   CAN DOWN THE ROAD AND SAYING WE DON'T NEED TO GET DISCLOSURE

11:53AM 23   HERE IS CREATING A SERIOUS RISK OF THE NEED FOR A CONTINUANCE

11:53AM 24   DOWN THE ROAD BECAUSE I'M NOT EXACTLY SURE WHAT IT IS THAT

11:53AM 25   WE'RE SUPPOSED TO DO HERE.

11:53AM 1      AM I SUPPOSED TO PREPARE TO EXAMINE HIM AS A WITNESS

11:53AM 2      BECAUSE NOW I'M, QUOTE-UNQUOTE, "ON NOTICE OF HIS EXPERT

11:53AM 3      TESTIMONY"?  BECAUSE THAT NOTICE IS DEFICIENT.

11:53AM 4          AND SO IF -- AND IT'S NOT NECESSARILY CURABLE JUST THROUGH

11:53AM 5      A DAUBERT HEARING.  THERE WOULD BE ADDITIONAL BACK WORK THAT

11:53AM 6      WOULD NEED TO BE DONE.  SO I HAVE SOME SERIOUS CONCERNS ABOUT

11:54AM 7      JUST KICKING THIS CAN DOWN THE ROAD.

11:54AM 8          I WANT TO BE CLEAR, I THINK A LOT OF THESE ISSUES ARE

11:54AM 9      EXPERT WITNESSES -- EXPERT ISSUES, AND IF WE DEFER THEM, IT'S

11:54AM 10     CREATING RISK FOR THE COURT.

11:54AM 11             THE COURT:  WELL, I APPRECIATE YOU LOOKING OUT FOR

11:54AM 12     THE COURT.  I ALWAYS DO.

11:54AM 13             MR. WADE:  IT'S GREAT RISK FOR ALL OF US,

11:54AM 14     YOUR HONOR, BECAUSE I THINK WE ALL WANT TO PROCEED AS QUICKLY

11:54AM 15     AS WE CAN.

11:54AM 16             THE COURT:  WE ALL DO, WE WANT TO PROCEED AS

11:54AM 17     EFFICIENTLY AS WE CAN AND ALSO RESPECTING EVERYONE'S INTERESTS

11:54AM 18     AND RIGHTS IN THE CASE.

11:54AM 19         I HOPE I SHARED WITH YOU MY CONCERNS ABOUT THE RULE 16.  I

11:54AM 20     DON'T KNOW IF I COULD BE ANY MORE TRANSPARENT THAN TO TELL YOU

11:54AM 21     THAT.

11:54AM 22         WHAT I ALSO HEARD IS THAT THIS WITNESS IS GOING TO BE --

11:54AM 23     IS NOT CALLED AS AN EXPERT, BUT HE WILL BE CALLED AS A

11:54AM 24     PERCIPIENT WITNESS.

11:54AM 25         AND WE ALL KNOW IN LITIGATION EVERYONE PROCEEDS AT THEIR

11:54AM 1    OWN PERIL.  IF A WITNESS IS CALLED AND IF THERE'S A DIVERSION

11:54AM 2    FROM WHAT THE COURT BELIEVES IS APPROPRIATE TESTIMONY, I'M SURE

11:54AM 3    I'LL HEAR ABOUT IT.

11:55AM 4    THERE WAS A MOTION ASKING ME TO SO ADVISE THE JURY IN SOME

11:55AM 5    PRELIMINARY INSTRUCTIONS, IF I RECALL CORRECTLY, BUT -- SO

11:55AM 6    THAT'S -- THANK YOU FOR THE HELP HERE.  I DON'T WANT TO BE COY

11:55AM 7    HERE, BUT I WAS CONCERNED ABOUT RULE 16.  I THINK I'VE GOT

11:55AM 8    INFORMATION ABOUT THAT.

11:55AM 9    MY NEXT CONCERN WAS WHAT IS THIS WITNESS, PERCIPIENT OR

11:55AM 10    EXPERT?

11:55AM 11    IT SOUNDS LIKE MS. VOLKAR'S ARGUMENT IS THAT HE COULD BE

11:55AM 12    EITHER, HE COULD BE BOTH, BUT FOR TODAY'S PURPOSE, JUDGE, WE'RE

11:55AM 13    GOING TO CALL HIM AS A PERCIPIENT WITNESS, AND HE'S GOING TO

11:55AM 14    TESTIFY AS SUCH.

11:55AM 15    I'VE SHARED WITH YOU MY CONCERNS ABOUT THE SIGMA 6, AND I

11:55AM 16    DO THINK THAT THAT GOES BEYOND THE EVERY DAY LIFE EXPERIENCES

11:55AM 17    OF THE JURY, AND YOU CAN TAKE THAT CAUTION FOR WHAT IT IS AND

11:55AM 18    WHAT IT IS WORTH.

11:55AM 19    BUT THERE ARE OTHER AVENUES, AND WE ALL AGREE THAT THERE

11:55AM 20    ARE PERCIPIENT WITNESSES THAT CAN TESTIFY ABOUT THEIR JOBS,

11:55AM 21    ABOUT WHAT THEY DO, WHAT THEIR JOB TITLE ENCOMPASSES, AND WHAT

11:56AM 22    THEIR JOB DUTIES ARE, AND THOSE DON'T NECESSARILY GO INTO AN

11:56AM 23    EXPERTISE TYPE OF ANALYSIS.  IT'S WHAT THEY DO.  IT'S THE

11:56AM 24    INFORMATION THAT THEY GATHER WITHOUT ANY ANALYTICS.  IT'S WHAT

11:56AM 25    THEY DO.

11:56AM  1          MR. WADE, WHEN YOU GO BACK TO SCHOOL FOR YOUR KIDS AND

11:56AM  2     THEY SAY WHAT DOES A LAWYER DO?

11:56AM  3          WELL, I OBJECT BECAUSE I HAVE A DUTY TO OBJECT I'M

11:56AM  4     INFORMED.

11:56AM  5          WELL, WHAT DO YOU DO?

11:56AM  6          WELL, I OBJECT ABOUT RULE 805.

11:56AM  7          WELL, WHAT IS RULE 805?

11:56AM  8          AND THEN IF YOU START GETTING INTO A DISCOURSE WITH THESE

11:56AM  9     FIFTH GRADERS, THEN IT BECOMES EXPERTISE.  IF YOU SAY, WELL,

11:56AM  10    IT'S JUST SOMETHING THAT WE DO AND YOU CAN'T SAY WHAT IS

11:56AM  11    OUTSIDE OF THE COURT, THAT'S FAIR ENOUGH, THAT'S THE

11:56AM  12    DESCRIPTION.

11:56AM  13         SO LET ME JUST LEAVE IT WITH THAT.  THANK YOU FOR YOUR

11:56AM  14    HELP.  HAVE A GOOD WEEKEND, EVERYONE.  BE SAFE.

11:56AM  15         WE'LL PROBABLY -- ARE WE GOING TO GET TOGETHER NEXT WEEK

11:56AM  16    SOME TIME?  I THINK WE NEED TO GET TOGETHER TO TALK ABOUT JURY

11:57AM  17    SELECTION ISSUES.

11:57AM  18              MR. WADE:  WE'LL BE CONFERRING WITH THE GOVERNMENT,

11:57AM  19    AND WE'LL BE IN TOUCH WITH THE COURT.

11:57AM  20         HAVE WE WORKED OUT THE TIMING?  I THINK MONDAY THE NEXT

11:57AM  21    BATCH OF MATERIALS WILL COME BACK TO THE COURT GIVEN THE COURT

11:57AM  22    IS NOT AVAILABLE ON THE WEEKEND BUT WE'VE BEEN SHARING WITH THE

11:57AM  23    GOVERNMENT ON A TIMELY BASIS.

11:57AM  24              THE COURT:  GREAT.  TERRIFIC.  AND WE'LL HAVE TIME

11:57AM  25    NEXT WEEK TO MEET REGARDING ANY JURY SELECTION ISSUES THAT HAVE

11:57AM  1      NOT YET BEEN RESOLVED.

11:57AM  2                  MR. WADE:  GOOD.

11:57AM  3                  MR. LEACH:  AND, YOUR HONOR, WE DO HAVE THE HEARING

11:57AM  4      ON THURSDAY AS WELL.

11:57AM  5                  THE COURT:  WE DO.  SO WE'LL BE TOGETHER ON THAT

11:57AM  6      DATE AS WELL.

11:57AM  7                  MS. VOLKAR:  YES.  THANK YOU, YOUR HONOR.

11:57AM  8                  THE CLERK:  COURT IS ADJOURNED.

11:57AM  9              (COURT CONCLUDED AT 11:57 A.M.)

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16                        IRENE RODRIGUEZ, CSR, RMR, CRR
                          CERTIFICATE NUMBER 8074
17

18                        DATED:  AUGUST 23, 2021
19

20

21

22

23

24

25