JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS**<br><br>Date:   November 16, 2021<br>Time:   8:00 a.m.<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD

**RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS**

PLEASE TAKE NOTICE that on November 16, 2020 at 8:00 a.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court to admit certain customer feedback reports. The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: November 12, 2021

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD
i

# MEMORANDUM OF POINTS AND AUTHORITIES

Ms. Holmes hereby renews her motion to admit specific customer feedback reports shared directly with Ms. Holmes.[1] The reports are highly relevant to Ms. Holmes' knowledge and intent as to allegations contained in the indictment and pursued by the government at trial. *See* Dkt. 469, ¶¶ 12(D), 15, 16; *see also, e.g.*, 9/8/2021 Tr. 545-46 (Gov't Opening Statement). Ms. Holmes requests that the Court admit the reports in their entirety.

# BACKGROUND

As CEO of Theranos, Ms. Holmes received certain weekly and biweekly reports of customer feedback from Theranos patient service centers at Walgreens locations. The reports were compiled from two sources. First, customers used the Theranos "app" to submit ratings and provide narrative feedback. Second, phlebotomists at Theranos patient service centers provided feedback based on their conversations with customers.

Each report reflects qualitative feedback from hundreds of customers. Although the comments are generally positive, some (contrary to the government's prior argument) are neutral or critical about one or more aspects of the customer experience. *Compare, e.g.*, Saharia Decl. Ex. 1 (TX 7476) at THPFM0000815779, *with id*. at THPFM0000815780. The reports contain customer opinions on a range of issues. They are replete with favorable comments on the price of Theranos' testing—often with concrete summaries of cost savings, insurance status, and testimonials about the real-life effects of greater access to blood testing. *See, e.g.*, Ex. 4 (TX 7571) at THPFM0003768575; Ex. 7 (TX 7576) at THPFM0003773424. The reports discuss customers' experience with the collection process, with both fingerstick and venous draws. *See, e.g.*, Ex. 5 (TX 7573) at THPFM0003102476, -77, -82. The reports also contain entries describing the collection process, and the performance of Theranos phlebotomists. *See id*. at THPFM0003102477. The reports reflect the views of first-time and repeat customers, as well as customers referred by other customers. *See, e.g.*, Ex. 2 (TX 7557) at THPFM0003768959, -63.[2]

---

[1] The reports are: TX 7476, 7557, 7561, 7571, 7573, 7575, 7576, 7579, 7583, and 7586.

[2] One report (in addition to qualitative feedback) contained quantitative data, as customers rated their experience on a scale from 1 to 5. That report tracked the ratings over time, assessing month-to-month changes in ratings on subjects including the "sample collection process" and "skill of technician." Saharia Decl. Ex. 1 (TX 7476) at THPFM0000815773.

Ms. Holmes previously sought to admit these reports at trial. The Court held that Ms. Holmes had laid an adequate foundation for admission, subject to the government's relevancy objection. 10/20/2021 Tr. 4262:6-4263:18. The government argued that the reports were irrelevant because they did not relate to "the accuracy of the tests and the quality of the results." *Id*. at 4206:14-15. The Court sustained this objection, and denied Ms. Holmes' motion under Rule 401. However, the Court expressed its openness to Ms. Holmes raising this issue again. *Id*. at 4263:14-16.

## ARGUMENT

**I.   The Customer-Feedback Reports Are Nonhearsay, Because They Are Probative of Ms. Holmes' State of Mind.**

Ms. Holmes does not intend to introduce the reports for the truth of the matter asserted. Instead, Ms. Holmes asks that the Court admit the reports for the nonhearsay purpose of showing her knowledge and intent. There is no question that the reports were sent to Ms. Holmes. In light of the limited purpose for which they would be admitted, Ms. Holmes would not object to a limiting instruction informing the jury of the nonhearsay purpose of these reports.

**II.  The Customer-Feedback Reports Are Relevant to Indictment Allegations Concerning Theranos' Partnership with Walgreens.**

The government has alleged that Ms. Holmes knowingly made materially false statements to investors concerning the state of Theranos' partnership with Walgreens, and that Ms. Holmes did so with knowledge of concerns about Theranos' performance. Dkt. 469, ¶ 12(D). The customer feedback reports are highly relevant to this allegation. The reports show what Ms. Holmes understood about the state of Theranos' partnership with Walgreens; what she understood about Theranos' performance at Walgreens; and what she believed about the prospects for expansion beyond the pilot program. Ms. Holmes may use this evidence to meet the government's case against her.

The indictment alleges that Ms. Holmes told investors that "Theranos presently had an expanding partnership with Walgreens," when Ms. Holmes "knew, by late 2014, that Theranos' retail Walgreens rollout had stalled because of several issues, including that Walgreen's executives had concerns with Theranos' performance." Dkt. 469, ¶ 12(D). In its opening statement, the government argued that Ms. Holmes "lied to investors about the status of the Walgreens rollout." 9/8/2021 Tr.

545:1-3.  Specifically, the government argued that "[d]espite the fact that the Walgreens rollout was stalling and would never recover, [Ms. Holmes] was telling her investors that Theranos would be in hundreds of Walgreens by the end of 2015."  *Id*. at 545:24-546:2.

The customer-feedback reports are highly relevant evidence of Ms. Holmes' understanding of the status and prospects for the Theranos-Walgreens partnership (and Theranos' commercial testing offering more broadly).  They tie directly to the government's allegation regarding performance concerns because they provide accounts—generally favorable accounts—of the experience of Theranos customers at these locations.  The reports reflect what Ms. Holmes was told about Theranos' performance, and are thus relevant to her understanding of how the Walgreens roll-out was progressing at the time, as well as the likelihood of continued expansion.  They show what Ms. Holmes was told about the competitive advantages of the Theranos-Walgreens partnership, such as pricing and convenience.  And they show that Ms. Holmes was told that customers were willing to undergo venous draws, which contextualizes testimony that the government sought to introduce from former Walgreens employees about the importance of fingerstick testing as a metric for future expansion.  All of this supports a good-faith belief that the Walgreens relationship was healthy and would grow in the future.

Ms. Holmes received these reports in 2014 and 2015, during the very period of time in which the government alleges that she lied to investors about the continued expansion of the Theranos-Walgreens partnership.  The indictment alleges a conspiracy and scheme to defraud investors from 2010 to 2015.  Dkt. 469, ¶¶ 11, 20.  The jury was informed in the Court's preliminary instructions that the conspiracy alleged in Count 1 lasted "during the period 2010 to 2015."  9/8/21 Tr. 519.  These reports are relevant to show what Ms. Holmes understood the state of the Walgreens relationship to be, and what she believed to be the state of the Theranos operation in Walgreens stores during that period of time.

**III.    The Customer-Feedback Reports Are Relevant to Indictment Allegations Concerning the Performance of Theranos Technology.**

The indictment alleges that Ms. Holmes knew that Theranos technology was not capable of consistently producing accurate and reliable results.  Dkt. 469, ¶ 16.  The reports tend to negate this allegation.  Some statements compare Theranos tests with tests from other laboratories.  Other reports contain testimonials from repeat visitors, or visitors who were referred by other Theranos customers.

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD

Ms. Holmes reasonably could have inferred that repeat customers would not enthusiastically endorse Theranos—much less return for testing—if they harbored concerns about the accuracy and reliability of Theranos results. The mere existence of feedback from such customers—even if the feedback itself does not discuss the technology—is evidence of Ms. Holmes' belief that Theranos was providing accurate and reliable test results; if it were otherwise, customers would not be returning to Theranos or referring their acquaintances. Although Ms. Holmes does not concede that evidence of individual test results are probative of accuracy, she may contest the government's anecdotal case (which relies on such evidence) with corresponding anecdotes. *See* 9/21/2021 Tr. 1446:25-1447:4 (lay opinion on accuracy of Theranos test results).

The reports also give notice of the types of errors that can occur in the pre-analytic phase. These are relevant to show Ms. Holmes' state of mind as to the potential sources for alleged lab errors other than Theranos technology. *See, e.g.*, Ex. 6 (TX 7575) at THPFM0003769488 ("[the phlebotomist] had a mix up somehow of labels on the vacutainers").

**IV.    The Customer-Feedback Reports Are Relevant to Indictment Allegations Concerning Representations Made to Investors and Customers as to the Price of Theranos Testing.**

The indictment alleges that Ms. Holmes and Mr. Balwani "devised a scheme to defraud patients, through advertisements and marketing materials, through explicit and implicit claims concerning Theranos' ability to provide accurate, fast, reliable, and cheap blood tests and test results." Dkt. 469, ¶ 15; *id*. ¶ 16; *see also* Dkt. 330 at 38 (the indictment "alleges that Defendants used advertisements and marketing materials to misrepresent Theranos' ability to provide accurate, reliable, fast, and cheap blood tests"). The government has questioned witnesses about Theranos pricing. *See, e.g.,* 10/12/2021 Tr. 3193:10-3194:5.

The customer feedback reports contain numerous comments praising Theranos' pricing model—both in its transparency and in the cost of services. *See supra* p. 1. Ms. Holmes may elicit evidence of what she was told about Theranos pricing and what she was told about the importance of price to customers.[3]

---

[3] Ms. Holmes notes that the Court has previously admitted, at the government's request, testimonials concerning Theranos from doctors and customers. Those testimonials were contained in

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD
4

**V.     The Exclusion of the Customer-Service Spreadsheets Cannot Justify the Exclusion of the Customer-Feedback Reports.**

The government has argued that the reports should be excluded because the Court denied the government's motion to admit certain customer-service spreadsheets that were not authenticated and that were never sent to Ms. Holmes. 10/20/2021 Tr. 4203; *see* Dkt. 798 at 74-75. The government maintains that admitting the reports sought to be admitted by Ms. Holmes, but not the spreadsheets, would leave the jury "with an unbalanced view of what customer and patient feedback about Theranos was." 10/20/2021 Tr. 4203. This argument misunderstands the purpose and evidentiary basis for the respective evidence.

The spreadsheets that the government sought to admit were never shared with Ms. Holmes. They say nothing about what she was told, knew, or believed, and the government has not established any hearsay exception or other nonhearsay purpose for the spreadsheets or the multiple layers of hearsay they contain. The government was unable to lay a foundation for these spreadsheets, 10/19/21 Tr. 4009-12, and the Court's Motion in Limine Order independently precludes the government from "introduc[ing] the specific details of the complaints" under Rule 403, Dkt. 798 at 74.

By contrast, the reports at issue were sent on a regular basis to Ms. Holmes. They were an important source of information about the Walgreens rollout, and the prospects for Theranos' commercial product going forward—an "on the ground" perspective of Theranos customers and phlebotomists of the product as it was being offered. The government's argument reflects nothing more than the indisputable fact that the customer feedback reports were shared with Ms. Holmes but the customer service spreadsheets were not. If Ms. Holmes received an "unbalanced view of what customer and patient feedback about Theranos was," in the government's words, that is highly relevant to her intent. It would be highly misleading, and unfairly prejudicial to Ms. Holmes, to exclude evidence of her knowledge and intent as to central issues in this trial. The government's supposed concern is easily remedied by a limiting instruction explaining that the customer feedback reports are being admitted only to show Ms. Holmes' knowledge and not for their truth.[4]

---

slide decks provided to investors. *See* TX 3387 at 325-330; TX 4858 at 54-59.

[4] The government has previously argued that the customer-service spreadsheets are admissible if

**CONCLUSION**

For the foregoing reasons, the Court should grant Ms. Holmes' Motion.

DATED: November 12, 2021                    Respectfully submitted,

                                                                   /s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

---

they were sent to Mr. Balwani.  10/19/2021 Tr. 3912.  That is not correct.  As the Court is aware, the Ninth Circuit has held that the knowledge of a co-conspirator may not be attributed to the defendant.  *See Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1965).

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD

6

# CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' RENEWED MOTION TO ADMIT CERTAIN CUSTOMER FEEDBACK REPORTS
CR-18-00258 EJD