STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Fax: (408) 535-5066
   Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER RE: CUSTOMER FEEDBACK REPORTS |
| v. | |
| ELIZABETH HOLMES, | |
| Defendant. | Court: Hon. Edward J. Davila |

The government opposes Defendant Elizabeth Holmes's "Renewed Motion" to Admit Certain Customer Feedback Reports—which is essentially a motion to reconsider the Court's prior oral ruling on this exact same subject. *See* ECF No. 1140 ("Motion to Reconsider"); 10/20/2021 Hearing Transcript ("10/20 Tr.") at 4201:17–4213:2, 4262:4–4263:20 (sustaining government's objection to exhibits identified in Defendant's Motion). Typically, motions to reconsider are entertained by district courts in this District only when new material facts or a change in law has occurred. *See*, *e.g.*, N.D. Cal. Civil L.R. 7-9; N.D. Cal. Crim. L.R. 2-1 (in criminal cases courts look to civil rules so long as consistent). Indeed, the District's Civil Local Rules, which occasionally apply to criminal proceedings, expressly prohibit "repeat[ing] any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." N.D. Cal. Civil L.R. 7-9(c). Here, the Court provided Defendant with a path to move to reconsider by "pars[ing] out" relevant portions of the largely irrelevant materials. 10/20 Tr. at 4262:4–4263:20. None of the above reasons are present in Defendant's Motion, which merely reiterates and adds more color to the oral arguments raised by defense counsel before the Court and rejected by the Court. *Id.* The Court should thus deny Defendant's Motion to Reconsider.

On October 20, 2021, on a break during the cross examination of former Theranos employee Daniel Edlin, defense counsel handed binders of lengthy exhibits to the government and expressed its intent to move their admission, to which the government timely raised its objections. 10/20 Tr. at 4201:17–4213:2. First, the government noted that the reports seemed to be largely positive and expressed concerns with the multiple layers of hearsay contained within the document and the authenticity or foundation that the witness, Daniel Edlin, could provide for the actual preparation of the reports or anything beyond receiving the email. *Id.* at 4202:7–24. Second, the government expressed Rule 403 concerns with the "unbalanced view of what customer and patient feedback about Theranos was" given Defendant had successfully—just the day prior—moved to exclude negative customer complaint logs from Theranos. *Id.* at 4202:25–4203:11. Defendant sought to overcome these foundational and hearsay challenges by offering the reports for Defendant's state of mind rather than for the truth of the statements contained within. *Id.* at 4203:22–4204:17. The Court noted, and the government agreed, that reviews of a patient's experience within Walgreens or with phlebotomists is

irrelevant to the accuracy and reliability of the technology. *Id.* at 4204:18–4212:22. Defendant insisted that repeat customers would counter that view. *Id.* at 4205:7–11, 4209:22–4210:3. Defense counsel also noted that most of the complaints are about adjacent *Walgreens* services, not the patients' experience with Theranos. *Id.* at 4208:16–18. The government pointed out both of those categories are still irrelevant, and any minimal probative value would be far outweighed by the prejudice if the jury were to receive these positive accounts without the negative feedback actually about the technology. *Id.* at 4210:4–4211:4. Furthermore, the government noted that "there's a lot of positive feedback about the prices and the convenience[,]" which "aren't issues in the case" and thus irrelevant. *Id.* at 4210:20–24. The Court ultimately agreed and held the reports were not relevant, noting Defendant could "parse out" excerpts that might be relevant if they were related to the actual Theranos technology. *Id.* at 4211:22–4213:2, 4262:4–4263:20.

Rather than undertake the exercise of finding portions relevant to Theranos's technology as the Court suggested, Defendant now moves to admit the entirety of the customer feedback reports, exactly as she unsuccessfully attempted orally before the Court a few weeks ago. ECF No. 1140 at 3 ("Ms. Holmes requests that the Court admit the reports in their entirety."). No facts underpinning the Court's oral ruling have changed, and Defendant's reiterated arguments continue to fall flat. Instead, Defendant concedes that the reports contain "generally favorable accounts" of Theranos patients at Walgreens locations. *Id.* at 5. And Defendant reiterates her argument that repeat customers could reflect positively on Theranos's technology "*even if the feedback itself does not discuss the technology*[.]" *Id.* at 6 (emphasis added). But this concession is critical given the Court's ruling that these reports are irrelevant because they do not relate to Theranos's technology. 10/20 Tr. at 4211:22–4213:2, 4262:4–4263:20. Indeed, if these surveys were taken by phlebotomists or at the time of the patient's blood being drawn, there could be no connection to Theranos's technology as the test would not have even been run yet. Nevertheless, Defendant continues to assert that these reports are important to demonstrate her state of mind regarding the accuracy and reliability of Theranos's tests, and that other types of errors may occur, when she lied to investors. ECF No. 1140 at 4–6.

The Court should reject Defendant's expanded claims of relevance to the charges in the Third Superseding Indictment ("TSI") as incorrect. First, Defendant inaccurately recounts the time period.

1    One exhibit that Defendant seeks to admit (Trial Exhibit 7476, *available at* ECF No. 1141-1) is from
2    October 1, 2014, but all remaining exhibits are sent to Defendant between May 31, 2015 and August 23,
3    2015 (*see* ECF No. 1141 at 2–3), after all investments to Theranos were made.  *See* TSI, ECF No. 469
4    ¶ 24 (listing Counts 3-8 with the latest investment on October 31, 2014); 10/20/2021 Hearing Transcript
5    at 3948:25–3951:15 (testimony of Daniel Edlin discussing Rupert Murdoch as a potential investor in
6    January 2015).  And the email summary of the single exhibit that was sent to Defendant before some
7    investors invested in Theranos in October 2014 underscores the Court's relevancy concern because it is
8    not related to Theranos's technology at all:  a Theranos employee emails Defendant to say that the
9    "Check in process receiv[ed] the lowest star rating" and describing the "negative feedback is primarily
10   about long lines / wait times, slow check in, and a few bathroom cleanliness concerns" and noted that it
11   was "a small data set" but better signage and branding would be needed.  ECF No. 1141-1 at 2.
12   By contrast, mere days earlier, Defendant was emailed by co-Defendant Balwani regarding inaccurate
13   hCG tests.  *See* Trial Exhibit 4222.  Thus, these customer reports are irrelevant to show Defendant's
14   state of mind as it relates to what she told investors regarding the accuracy and reliability of Theranos
15   tests because she would have received the majority of these reports after she pitched investors.[1]

16       Second, Defendant confuses the TSI's claims with respect to Walgreens.  ECF No. 1140 at 4–5.
17   Defendant seems to assert that customer feedback reports based on their experience within the
18   Walgreens store could somehow inform Defendant's state of mind regarding how *Walgreens executives*
19   viewed the success—or lack thereof—of the Walgreens rollout.  *Compare id.*, *with* TSI, ECF No. 469
20   ¶ 12(D) (asserting Holmes knew by late 2014 that the Walgreens rollout had stalled because
21   "Walgreens's executives had concerns with Theranos's performance").  These customer reports have no
22   bearing on whether Walgreens executives were satisfied with the amount of fingerstick versus venous
23   draws that Theranos was doing, and to the extent there is minimal relevance, Defendant already
24   explored that on cross-examination with Nimesh Jhaveri who agreed that customers were generally

---

[1] The vast majority of these reports were also sent to Defendant after Theranos had already ceased using its proprietary Edison device to run patient samples.  *See* Trial Exhibit 4533 (providing date ranges during which the twelve assays run on Theranos's Edison devices were used for patient samples and only two were offered after May 31, 2015, with both ceasing on June 25, 2015).  Thus, these reports are also irrelevant to Defendant's state of mind regarding the state of Theranos's Edison device for the patient counts.

satisfied—these reports would merely be cumulative and unnecessary.  *See* 10/14/2021 Hearing Transcript at 3668:10–16.

Third, Defendant asserts these patient reports regarding their experience within the Walgreens store are relevant to demonstrate Theranos offered cheaper blood tests than conventional laboratories (ECF No. 1140 at 6)—but that is not at issue in this case.  *See* TSI, ECF No. 469 ¶¶ 12(A), 15, 16 (not including price among Defendant's knowing misrepresentations); 10/20 Tr. at 4210:20–24 (noting price and convenience are not issues in the case).  For example, the TSI alleges that Defendants advertised that Theranos could provide "accurate, fast, reliable, and cheap blood tests and test results" despite Defendants knowing "that Theranos's technology was, in fact, *not capable of consistently producing accurate and reliable results*" and "through omissions concerning the limits of and problems *with Theranos's technologies.*"  *Id.* ¶¶ 15, 16.  Thus, the government has not alleged that Defendants lied about Theranos's pricing as compared with other companies and that cannot serve as the basis for rendering these reports relevant.

Finally, Defendant continues to assert these reports should be admitted to show her state of mind with respect to the Theranos technology and relationship with Walgreens (ECF No. 1140 at 4, 7)—but she cannot overcome the Federal Rules of Evidence 401 and 403 barriers that the Court previously identified.  10/20 Tr. at 4211:22–4213:2, 4262:4–4263:20.  For the reasons discussed above, these reports are irrelevant to the charged conduct in the TSI as they largely do not relate to the capabilities of Theranos's technology—and Defendant failed to identify any specific relevant portions—nor do they reflect on what Walgreens *executives* (rather than customers) thought about the state of the companies' relationship in late 2014.  Whatever minimal relevance the reports have is significantly outweighed by the prejudice under a Rule 403 analysis.  While Defendant suggests a limiting instruction that these reports are not offered for their truth (ECF No. 1140 at 4), such an instruction would not correct the unbalanced and misleading story that would be presented to the jury, as the government described in person, since the Court excluded logs of patient complaints *about the blood test results that they received from Theranos*.  10/20 Tr. at 4202:25–4203:11, 4210:4–4211:4; *contra* ECF No. 1140 at 7.  Defendant notes that some of the presentations to investors included positive testimonials from Theranos

patients at Walgreens stores—but that just further proves that these reports are cumulative and unnecessary given their minimal (if any) relevance. *Id.* at 6–7 n.3.

      For the reasons stated above, the government respectfully requests that the Court uphold its prior ruling and deny Defendant's Motion to Reconsider.

DATED: November 14, 2021        Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

   */s/ Kelly I. Volkar*
JEFFREY B. SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
KELLY I. VOLKAR
Assistant United States Attorneys