1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>ELIZABETH A. HOLMES,<br><br>              Defendant. | Case No.  5:18-cr-00258-EJD-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION'S MOTION TO INTERVENE AND UNSEAL JUROR QUESTIONNAIRES**<br><br>Re: Dkt. No. 1026 |

Defendant Elizabeth Holmes is presently standing trial in this criminal prosecution. Between August 31 and September 2, 2021, the Court conducted in-person oral voir dire of potential jurors, upon the conclusion of which twelve seated jurors and five alternates were sworn in.  Dkt. Nos. 993, 995, 996.  Prior to the in-person voir dire proceedings, all summoned potential jurors were required to complete a juror questionnaire.  Dkt. No. 928.  The juror questionnaire states in relevant part:

> Your answers are confidential.  It is important that you understand that the Court is sensitive to your privacy.  They will be reviewed by the Judge and the lawyers in this case.  After a jury has been selected the original questionnaire will be returned to the Clerk of the Court and kept under seal and will only be disclosed, if at all, with names and other identifying information removed.

*Id.* at 2.  The completed questionnaires are currently maintained under seal in their entirety and are not available for public viewing.  A blank copy of the final version of the questionnaire is available on the public docket.  Dkt. No. 928.

A collection of media outlets consisting of American Broadcasting Company, Inc. d/b/a

1 ABC News, the Associated Press, Bloomberg L.P., The Daily Mail, Dow Jones and Company,

2 Inc., NBCUniversal Media, LLC, The New York Times Company, Portfolio Media, Inc. –

3 publisher of Law360, Three Uncanny Four LLC, and the Washington Post Company (collectively,

4 "the Media Coalition") now move to intervene for the limited purpose of unsealing the completed

5 juror questionnaires for the seated jurors and alternates.  Mot. of Media Coalition to Intervene for

6 Ltd. Purpose of Seeking the Unsealing of Completed Questionnaires of Seated Jurors and

7 Alternates, Mot. to Unseal Complete Questionnaires of Seated Jurors and Alternates ("Mot."),

8 Dkt. No. 1026.  No party opposes the Media Coalition's limited intervention.  Accordingly, the

9 Court GRANTS the motion to intervene.

10      The motion to unseal the juror questionnaires is contested.  Initially, Holmes took no

11 position on the motion, whereas the Government requested that the Court maintain the

12 questionnaires under seal for the duration of trial.  Ms. Holmes' Resp. to Mot. of Media Coalition

13 to Intervene for Ltd. Purpose of Seeking the Unsealing of Completed Questionnaires of Seated

14 Jurors and Alternates, Mot. to Unseal Complete Questionnaires of Seated Jurors and Alternates,

15 Dkt. No. 1032; U.S.' Resp. to Media Coalition Mot. to Intervene for Ltd. Purpose of Unsealing of

16 Completed Questionnaires of Seated Jurors and Alternates ("Govt. Resp."), Dkt. No. 1033.  The

17 Court heard oral argument on the motion on September 30, 2021.  Dkt. No. 1055.

18      Following the hearing, the Court informed the jury of the Media Coalition's request,

19 provided the jurors with their questionnaires for review, and spoke to each juror individually.

20 Counsel for Holmes and the Government were present during the Court's sealed in camera

21 colloquy with the jurors.  In view of the concerns the jurors voiced, the Court requested

22 supplemental briefing from the parties.  Dkt. No. 1088.  The Government maintains its position

23 that the Court should keep the questionnaires under seal for the remainder of trial and release them

24 with minimal redactions after trial is complete.  U.S.' Suppl. Br. Re Media Coalition's Mot. to

25 Unseal Completed Questionnaires of Seated Jurors and Alternates ("Govt. Suppl. Resp."), Dkt.

26 No. 1108.  Holmes now opposes the Media Coalition's motion and urges the Court to deny it

27 Case No.: 5:18-cr-00258-EJD-1

28 ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
UNSEAL JUROR QUESTIONNAIRES

United States District Court
Northern District of California

outright.  Ms. Holmes' Suppl. Resp. to Mot. of Media Coalition to Intervene for Ltd. Purpose of Seeking the Unsealing of Completed Questionnaires of Seated Jurors and Alternates, Mot. to Unseal Complete Questionnaires of Seated Jurors and Alternates ("Holmes Suppl. Resp."), Dkt. No. 1109.  The Media Coalition contends that the Court should unseal immediately all portions of the completed questionnaires to which none of the jurors or alternates expressly objected.  Media Coalition's Suppl. Reply in Supp. of Its Mot. to Unseal Completed Questionnaires of Seated Jurors and Alternates ("Suppl. Reply"), Dkt. No. 1118 at 2.

The United States Supreme Court has held that the right to attend criminal proceedings "is implicit in the guarantees of the First Amendment." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980).  The First Amendment right of public access extends to pretrial proceedings as well as documents filed in connection with those proceedings. *Associated Press v. U.S. Dist. Court for Cent. Dist. of Cal*., 705 F.2d 1143, 1145 (9th Cir. 1983); *see also Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) ("Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978))).  Access to judicial records, however, is "not absolute." *Kamakana*, 447 F.3d at 1178.  The Supreme Court "has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984).

As the Government notes—and the Media Coalition does not dispute—neither the Supreme Court nor the Ninth Circuit have expressly extended the presumption of access to juror questionnaires.  *See, e.g.*, *Jensen v. Obenland*, No. C15-1094 JCC, 2016 WL 2930440, at *5 (W.D. Wash. May 19, 2016) (denying habeas relief where petitioner could not establish violation of well-established federal law in part because "the Supreme Court has never held that the sealing of juror questionnaires violates the public trial right"), *aff'd*, 705 F. App'x 657 (9th Cir. 2017).  The parties agree that the standard the Supreme Court articulated in *Press-Enterprise Company v.*

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO UNSEAL JUROR QUESTIONNAIRES

*Superior Court of California, Riverside County*, 464 U.S. 501 (1984) applies to the Media

Coalition's motion:

> Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest.
>
> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 509–10 (internal quotation marks and citations omitted).

### A.    Compelling Governmental Interests

Holmes and the Government argue that there are two compelling interests that justify maintaining the juror questionnaires under seal, at least for the time being: Holmes's Sixth Amendment right to a fair and impartial jury trial, and jurors' privacy interests. The factual record in this case demonstrates the overriding weight of these interests.

### 1.    Fair and impartial trial

The Supreme Court has declared that "[n]o right ranks higher than the right of the accused to a fair trial." *Press-Enter.*, 464 U.S. at 508. "[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46.

Over the past 12 weeks of trial, several events have given the Court cause for concern about outside attempts to communicate with or influence the jury. Early on, an unidentified member of the public "shout[ed] as the jurors wait[ed] to go through security" to enter the courthouse: "Don't forget the MeToo movement," prompting the Court to remind all those present that tampering with the jury could result in a criminal investigation. Trial Tr. vol. 6 at 668:3–669:1, Sept. 14, 2021. Friends, coworkers, and family members of both potential and seated jurors

United States District Court
Northern District of California

United States District Court
Northern District of California

1  have deduced that their service relates to this trial and have sought to discuss it with them.  *See,*

2  *e.g.*, Trial Tr. vol. 2 at 329:10–330:12, 339:1–340:20, Sept. 1, 2021.  One potential juror received

3  unsolicited texts from a friend that included news articles about the trial.  *Id.* at 363:19–364:23.  A

4  friend of a seated juror called her in reaction to a news report he saw related to the trial.  Trial Tr.

5  vol. 6 at 671:20–673:10, Sept. 14, 2021.

6       These events have occurred against a backdrop of intense public interest unlike any the

7  undersigned has experienced before on any case.  From the very beginning, this case has been the

8  subject of profound media scrutiny, as evidenced by the breadth of the composition of the Media

9  Coalition and their daily news reports and social media posts about the trial.[1]  In one incident, a

10  member of the media contacted a doctor whose patient's name was inadvertently disclosed to the

11  public in a trial exhibit.  Neither the doctor not the patient are listed as a potential witness by either

12  party, but the journalist sought them out anyway.  Trial Tr. vol. 15 at 2579:5–2582:8, Oct. 5, 2021.

13       Interested members of the public have also attended trial on a daily basis.  One member of

14  the public photographed courtroom proceedings while the jury was present and seated, despite

15  unambiguous signage posted throughout the courthouse advising of the prohibition of any

16  photography or video recording of court proceedings.  Trial Tr. vol. 26 at 4996:16–4998:8, Nov. 2,

17  2021.  This act forced the Court to interrupt ongoing testimony and call for a recess in order to

18  attend to the issue.  *Id.*

19       Also of significance is the fact that three jurors have already been dismissed for good

20  cause, leaving only two alternates.  This trial proceeds in the shadow of a nearly two-year long

21  pandemic.  The Court also considers the upcoming holiday season and its attendant travel and

22

23

---

24  [1] "The case has attracted intense interest . . . . White-collar trials don't often pack courtrooms, but the star power of Ms. Holmes has made this one an exception.  Spectator seats are at capacity, journalists report on every detail and paparazzi hang around outside the courthouse to catch the arrivals and departures of Ms. Holmes, her family and some witnesses."  Sara Randazzo & Heather Somerville, At Theranos Trial, Plumbing, Sudoku, Clacking Keyboards Challenge a Judge, The Wall Street Journal, Nov. 18, 2021, at 1, https://www.wsj.com/articles/theranos-trial-elizabeth-holmes-plumbing-sudoku-judge-11637241185.

27  Case No.: 5:18-cr-00258-EJD-1

28  ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO UNSEAL JUROR QUESTIONNAIRES

1    gatherings that increase the risks of jurors contracting COVID-19 or engaging with long-missed

2    friends and family eager to catch up and quiz them about their juror service.  The Court would be

3    remiss to ignore these background factors.

4           In view of these events and contexts, the Court is concerned about the extent to which

5    jurors have been distracted and the potential for future distractions or outside influence over the

6    jury.  A distracted jury cannot properly evaluate the evidence and thus cannot be fair and

7    impartial.  A juror exposed to outside evidence may not be able to unhear or otherwise disregard

8    that evidence.  During the Court's in camera colloquy with individual jurors, several of the jurors

9    voiced concerns that the release of certain information from their questionnaires would make it

10   more difficult for them to follow the Court's admonitions not to discuss the case with others and

11   not to access media reports on the case.  *See, e.g.*, Trial Tr. vol. 17 ("10/12/2021 Tr.") at 3231:12-

12   23, 3233:10-20, 3238:11-13, 3271:4-10, Oct. 12, 2021; Trial Tr. vol. 18 ("10/13/2021 Tr.") at

13   3320:13-16, Oct. 13, 2021; *United States v. Black*, 483 F. Supp. 2d 618, 631 (N.D. Ill. 2007)

14   ("[P]ublic reports discussing the jurors' specific identities (or other personal information about the

15   jurors) also would undermine the jurors' ability to adhere to the Court's repeated instructions not

16   to read, watch, or listen to any media coverage regarding this case.").  Some jurors also voiced

17   concerns about repercussions of the release of the questionnaires even after the completion of trial.

18   *See, e.g.*, 10/12/2021 Tr. at 3213:3-12; 10/13/2021 Tr. at 3296:20–3297:15, 3309:7–3310:13,

19   3333:6–3334:16.  One juror admitted that she was so disturbed by the Media Coalition's request

20   and its ramifications that she was partially distracted during testimony because she was thinking of

21   what to say to the Court in her impending interview.  10/12/2021 Tr. at 3261:19-22; 10/13/2021

22   Tr. at 3349:2–3350:25, 3353:22–3355:7.  These distractions—potential and realized—pose a

23   threat to the administration of a fair and impartial trial.

24           The Court understands and respects the Media Coalition's position and the public's right to

25   access.  However, the representations (or lack thereof) made at the September 30 hearing on the

26   motion provide the Court and jury with little comfort or reassurance.  Counsel for the Media

27
     Case No.: 5:18-cr-00258-EJD-1
28   ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
     UNSEAL JUROR QUESTIONNAIRES

United States District Court
Northern District of California

Coalition was unable to explain why the Media Coalition seeks the jurors' information, nor was he able to provide a concrete explanation of what the Media Coalition intends to do with the jurors' information once they have it.  Tr. of Sept. 30, 2021 Zoom Proceedings ("9/30/2021 Hearing Tr."), Dkt. No. 1061 at 12:19–13:14 ("I can tell you they intend to review them and decide what to do with their rights under the [Sixth] Amendment. . . . [W]hat they intend to do with the information is much like . . . what they would do with the information they obtained in open court . . . .  They choose to publish what they choose to publish, and they choose to do with it what they choose to do with it."), 24:14-15 ("Why they want it, I can't tell you.  What they intend to do with it, I can't tell you.").  Counsel was at least able to represent that no member of the Media Coalition would contact jurors during their service.  *Id.* at 13:3-5.  The Court appreciates and relies on that pledge, and it is confident that the Media Coalition will act only in the utmost ethical manner.[2]

While the Media Coalition may be willing to police itself and abide by its own self-imposed restrictions and ethical obligations, the Court cannot necessarily say the same for any other journalist or media outlet that is not a member of the Media Coalition, or any unknown third parties or members of the public.  At least one juror recognized this distinct possibility.  *See, e.g.*,

---

[2] The Society of Professional Journalists has published its Code of Ethics, which lists as one of the four principles of ethical journalism the "minimiz[ation of] harm."  Specifically, the Code requires journalists to, among other things:

- "Balance the public's need for information against potential harm or discomfort. Pursuit of the news is not a license for arrogance or undue intrusiveness."

- "Recognize that legal access to information differs from an ethical justification to publish or broadcast."

- "Realize that private people have a greater right to control information about themselves than public figures and others who seek power, influence or attention. Weigh the consequences of publishing or broadcasting personal information."

- "Balance a suspect's right to a fair trial with the public's right to know."

SPJ Code of Ethics, Soc'y of Professional Journalists (Sept. 6, 2014, 4:49 PM), https://www.spj.org/ethicscode.asp.

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
UNSEAL JUROR QUESTIONNAIRES

United States District Court
Northern District of California

1    10/12/2021 Tr. at 3265:16–3266:2.  Members of the public have already sent numerous

2    unsolicited communications about this case to counsel for both Holmes and the Government.

3    Govt. Resp. at 6; Holmes Suppl. Resp. at 3.  The Court and its staff have also received similar

4    unsolicited communications.  The Media Coalition brushes these acts aside, disregarding the

5    possibility—or even probability—that jurors have not received similar communications thus far

6    precisely because their identifying information has not yet been released.  Suppl. Reply at 7.  The

7    Court finds that if jurors' identifying information were released, a substantial likelihood exists that

8    they, too, would be the target of such unwanted contact.

9                              **2.      Jurors' privacy interests**

10         Jurors' privacy may also constitute a compelling interest justifying sealing.  *Press-Enter.*,

11   464 U.S. at 511 ("The jury selection process may, in some circumstances, give rise to a

12   compelling interest of a prospective juror when interrogation touches on deeply personal matters

13   that person has legitimate reasons for keeping out of the public domain.").

14         During the interviews, all but two of the jurors expressed some level of concern regarding

15   either their own or their family's privacy or safety and security, or said that the release of certain

16   information in their completed questionnaires would cause personal embarrassment.  *See*

17   10/12/2021 Tr.; 10/13/2021 Tr.  Many jurors raised privacy or security concerns regarding the

18   release of their personally identifiable information, residence, occupation, and/or educational

19   background.  *See, e.g.*, 10/12/2021 Tr. at 3220:11–14, 3232:7–3233:8, 3241:9–3242:8, 3248:3–9;

20   10/13/2021 Tr. at 3294:23–3296:3, 3313:13–3314:4, 3327:19–3328:6.  Several jurors also raised

21   privacy and security concerns relating to the release of information about their family members,

22   including their children, some of whom are minors.  *See, e.g.*, 10/12/2021 Tr. at 3218:18–3219:19,

23   3220:15–3222:2, 3234:2–25, 3243:19–3244:1, 3270:6–18, 3271:17–3272:21; 10/13/2021 Tr. at

24   3319:17–22, 3327:19–3328:6.  Some jurors expressed privacy concerns regarding personal health

25   issues or experience as crime victims.  *See, e.g.*, 10/12/2021 Tr. at 3218:14–3220:10, 3255:9–17;

26   10/13/2021 Tr. at 3324:16–3325:2.

27

28

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
UNSEAL JUROR QUESTIONNAIRES

8

United States District Court
Northern District of California

Many jurors exhibited an overall worry about the extent of media coverage of the trial and the consequences of that coverage for their exposure during and after the trial. *See, e.g.*, 10/12/2021 Tr. at 3213:6-12, 3230:16–3231:1, 3244:12-16, 3252:18–3254:13; 10/13/2021 Tr. at 3296:20–3297:15, 3304:12–3305:13, 3333:6-10. More than one juror expressed concern about whether unwanted media attention directed at them could have negative implications for them or their partners at their place of employment. *See, e.g.*, 10/12/2021 Tr. at 3220:23–3221:20, 3234:1-25, 3271:2-5; 10/13/2021 Tr. at 3295:6–3296:3, 3327:19–3328:25, 3333:6–3334:17.

Finally, as ancillary matter, the Court further finds that the facts of this case also implicate the interests in promoting juror candor and willingness to serve on juries. One juror who has previously served on multiple juries indicated to the Court that she was contemplating ceasing service in this trial altogether if it meant the Court would not have to release her questionnaire to the Media Coalition. 10/12/2021 Tr. at 3261:23-24; 10/13/2021 Tr. at 3355:23-24, 3358:3–3361:4. She also stated multiple times that releasing her information would dissuade her from any future jury service in any court. 10/12/2021 Tr. at 3258:18–3360:8; 10/13/2021 Tr. at 3355:15-19, 3359:11-15. Keeping at least some minimal information sealed would assist in avoiding a chilling effect on future willingness to serve as a juror.

The Media Coalition concedes that the fair trial and privacy interests are compelling. Mot. at 6–7; Media Coalition's Reply in Supp. of Its Mot. to Intervene for Ltd. Purpose of Seeking the Unsealing of Completed Questionnaires of Seated Jurors and Alternates, Mot. to Unseal Complete Questionnaires of Seated Jurors and Alternates ("Reply"), Dkt. No. 1036 at 3; 9/30/2021 Hearing Tr. at 6:10-13 (acknowledging that "legitimate claims to privacy on the part of jurors and avoiding jury tampering are unquestionably compelling interests"). Based on the collective facts described above, the Court finds that release of the juror questionnaires poses a substantial probability of harm to these compelling interests.

**B.** **Narrowly Tailored Sealing**

Having established that the facts of this case justify maintaining the questionnaires under

United States District Court
Northern District of California

1   seal to protect the compelling interests of Holmes's Sixth Amendment right to a fair and impartial

2   trial and the jurors' privacy, the Court considers what, if any, reasonable alternatives to complete

3   closure exist.

4          With respect to timing, Holmes and the Court urge the Court to withhold the

5   questionnaires until after the jury renders a verdict, whereas the Media Coalition seeks the

6   questionnaires immediately.  Based on the facts and circumstances discussed above, the Court

7   believes that in view of the jurors' stated concerns about potential contact by the Media Coalition

8   or others, unsealing the questionnaires now would pose a high risk of distracting the jury and

9   compromising the trial.  Waiting to release the questionnaires until after the jurors have been

10  released from service will minimize this risk.  The Government has now completed its case-in-

11  chief, and the Court believes—perhaps optimistically—that the evidence phase will conclude in a

12  matter of a few court days.

13         With respect to redactions, not all of the information in the questionnaires implicates

14  deeply personal or private information.  At a minimum, Holmes and the Government urge the

15  Court to redact jurors' names and other identifying information, such as residence, employment,

16  and family information.  Govt. Resp. at 9–10; Holmes Suppl. Resp. at 5–6; Govt. Suppl. Resp. at

17  3.  The Media Coalition acknowledges the appropriateness of certain redactions, including

18  information regarding jurors' "children's school settings, their spouse's employers, and personal

19  or family health issues."  Suppl. Reply at 4 n.6.  The Media Coalition argues that redacting jurors'

20  names is unnecessary because their last names were already announced in open court at the

21  conclusion of voir dire.  *Id.* at 6.  But the questionnaires contain the jurors' full names, and even a

22  surname could easily reveal a juror's identity when paired with other information in the

23  questionnaire, such as geographic residential location or place of employment.

24         The Media Coalition suggests the Court make copies of the completed questionnaires

25  available for inspection, as Judge Illston did in *United States v. Bonds*, No. C-07-00732-SI, 2011

26  WL 902207 (N.D. Cal. Mar. 14, 2011).  The Court notes that *Bonds* withheld the jurors' names

27

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
    UNSEAL JUROR QUESTIONNAIRES

1   during trial to minimize the risk of inappropriate contact.  *Id.* at \*9.  The circumstances in *Bonds*,

2   however, are distinguishable from those now before the Court in important ways.  The *Bonds*

3   questionnaires were not yet in final form at the time of Judge Illston's order, and the court had not

4   yet conducted voir dire.  *Id.* at \*10.  The *Bonds* court did not conduct interviews in an effort to

5   understand juror privacy concerns on an individualized basis.  And most significantly, the *Bonds*

6   court did not have before it a history of specific incidences in which outside parties attempted to

7   communicate with the jurors about the case.  *Bonds*, therefore, was based largely on hypotheticals.

8   The Media Coalition's suggestion that offering copies for inspection would dissuade malefactors

9   is likewise speculative.  The Court need not resort to what-ifs; it has concrete facts before it that

10  inform of the substantial risk to the identified compelling interests.

11          Accordingly, the Court finds it appropriate to maintain the completed juror questionnaires

12  under seal for the remainder of the trial.  After the jury renders a verdict and the Court has released

13  the jurors from service, the Court will partially unseal the questionnaires with limited redactions as

14  follows:

15          **Juror No. 1**: This juror expressed no concerns about the release of any of the information

16  in the questionnaire.  10/12/2021 Tr. at 3203:3–3206:17.  The Court will unseal this juror's

17  questionnaire in full with no redactions.

18          **Juror No. 2**: This juror expressed concerns regarding the release of personally identifying

19  information.  10/13/2021 Tr. at 3292:9–3300:16.  The Court finds it appropriate to redact the

20  juror's name, town/neighborhood of residence, and employer name in the interest of privacy.

21          **Juror No. 3**: This juror expressed concerns about numerous items in the questionnaire.

22  10/12/2021 Tr. at 3205:19–3216:13.  Of those specified items, the Court finds it appropriate to

23  redact the name of the juror's partner's employer in the interest of privacy, and a portion of the

24  answer to Question 30, which contains personal medical information.  The Court further finds it

25  appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the

26  interest of privacy.

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**Juror No. 4**: This juror expressed concerns about the release of all information in the questionnaire, particularly personally identifying information and information about family members, including minor children. 10/13/2021 Tr. at 3300:19–3311:10. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and the names of the juror's and juror's partner's employers in the interest of privacy.

**Juror No. 5**: This juror expressed concerns about multiple items in the questionnaire. 10/12/2021Tr. at 3216:15–3222:19. After the Court conducted the in camera interviews but before the parties submitted their supplemental briefing, the Court excused this juror. Trial Tr. vol. 23 at 4343:6–4356:7, Oct. 22, 2021. Because this juror is no longer seated, the Court understands the juror's questionnaire to fall outside the scope of the Media Coalition's request and therefore will not release it.

**Juror No. 6**: This juror expressed no concerns about the release of any of the information in the questionnaire. 10/12/2021 Tr. at 3222:22–3227:11. The Court will unseal this juror's questionnaire in full with no redactions.

**Juror No. 7**: This juror expressed concerns about the release of any personally identifying information in the questionnaire, particularly the combination of information that could reveal one's identity. 10/12/2021 Tr. at 3227:12–3238:25. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and the names of the juror's and juror's partner's employers in the interest of privacy. The Court also finds it appropriate to redact the location and date in the answer to Question 47.

**Juror No. 8**: This juror expressed concerns about the release of all information in the questionnaire, particularly personally identifying information. 10/12/2021 Tr. at 3239:2–3245:25. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the interest of privacy.

**Juror No. 9**: This juror expressed concerns about personally identifying information, including geographic residential information. 10/13/2021 Tr. at 3311:13–3317:24. The Court

finds it appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the interest of privacy.

**Juror No. 10**: This juror expressed concerns about some of the information in the questionnaire, including a relative's name and the name of the juror's employer. 10/12/2021 Tr. at 3246:1–3250:13. The Court finds it appropriate to redact the juror's name, relative's name, and employer name in the interest of privacy.

**Juror No. 11**: This juror expressed general concerns about safety and privacy of the juror and the juror's family. 10/13/2021 Tr. at 3318:1–3325:17. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the interest of privacy.

**Juror No. 12**: This juror expressed concerns about the release of all information generally, as well as certain specific concerns. 10/12/2021 Tr. at 3250:16–3267:22. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the interest of privacy. The Court further finds it appropriate to redact a portion of the answer to Question 2 concerning personal medical information, the names of past employers in response to Question 31, and the locations and dates in the answer to Question 47. The Court also finds it appropriate to redact a portion of the further explanation on page 24, which relates to private personal and legal information of the juror's close relative.

**Alternate No. 3[3]**: This juror expressed concerns about release of information concerning the juror's name, residence, employment, educational background, and minor child. 10/12/2021 Tr. at 3267:24–3274:6. The Court finds it appropriate to redact the juror's name, town/neighborhood of residence, and employer name in the interest of privacy.

**Alternate No. 4**: This juror expressed concern about release of information about the juror's employment and family members, and the effect of that release on their safety. 10/13/2021

---

[3] Alternate No. 3 was promoted in Juror No. 5's place. Trial Tr. vol. 23 at 4355:23–4356:6, Oct. 22, 2021.

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO UNSEAL JUROR QUESTIONNAIRES

1   Tr. at 3325:21–3331:3.  The Court finds it appropriate to redact the juror's name,

2   town/neighborhood of residence, and the names of the juror's and juror's partner's employers in

3   the interest of privacy.

4       **Alternate No. 5**: This juror expressed concerns about the effect of release of information

5   generally and specifically in connection with the juror's employer and the juror's relationship with

6   their partner.  10/13/2021 Tr. at 3331:6–3337:1.  The Court finds it appropriate to redact the

7   juror's name, town/neighborhood of residence, and the names of the juror's and juror's partner's

8   employers in the interest of privacy.

9       The Court believes that this course best balances the compelling interests of ensuring a fair

10   trial and respecting juror privacy with the public's right to access, and that there are no less

11   restrictive means available to protect those interests.

12      **C.     Conclusion**

13      For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the

14   Media Coalition's motion.

15      **IT IS SO ORDERED.**

16   Dated: November 19, 2021

17

18   _____

19   EDWARD J. DAVILA
     United States District Judge

20

21

22

23

24

25

26

27

28

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING IN PART AND DENYING IN PART MEDIA COALITION MOT. TO
UNSEAL JUROR QUESTIONNAIRES

14

*United States District Court*
*Northern District of California*