# Exhibit  H



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

**DIVISION OF ENFORCEMENT**

Jessica W. Chan
Counsel
(415) 705-2451

May 27, 2016

**VIA UPS AND EMAIL**

Theranos, Inc.
c/o Peter M. Skinner, Esq. and Andrew Z. Michaelson, Esq.
Boies, Schiller & Flexner
575 Lexington Avenue, 7th Floor
New York, NY 10022
pskinner@bsfllp.com
amichaelson@bsllp.com

Re:      **In the Matter of Theranos, Inc. (SF-4030)**

Dear Pete and Andrew:

The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission.  The subpoena requires your client, Theranos, Inc., to produce documents.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires production of the documents described in the attachment to the subpoena.  The attachment defines some terms (such as "document") before listing what must be produced.  The documents must be produced to the Commission no later than **June 10, 2016.**

Please note that if copies of a document differ in any way, they are considered separate documents and each one must be produced.  For example, if there are two copies of the same letter, but only one of them has handwritten notes on it, both the clean copy and the one with notes must be produced.

If you prefer, photocopies of the originals may be produced.  The Commission cannot reimburse copying costs.  The copies must be identical to the originals, including even faint marks or print.  If you choose to send copies, the originals must be kept in a safe place.  We will accept the copies for now, but may require production of the originals later.

If photocopies are produced, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. Please make sure the notation and number do not conceal any writing or marking on the document. If originals are produced, please do not add any identifying notations.

*Do I need to send anything else?*

You should enclose a list briefly describing each item produced. The list should state to which category number(s) in the subpoena attachment each item responds.

You also should include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and producing it all to us.

*What if I do not produce everything described in the attachment to the subpoena?*

The subpoena requires production of all the materials described in it. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what is not being produced. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and

- the reason the item was not produced.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

*Where should I send the materials?*

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

We ask that you send a copy of the cover letter to your response and a courtesy copy of the production by mail, fax, or email to:

> Jessica W. Chan, Staff Attorney
> U.S. Securities and Exchange Commission
> San Francisco Regional Office
> 44 Montgomery Street, Suite 2800
> San Francisco, California 94104
> Telephone:  (415) 705-2451
> Fax:  (415) 705-2501
> Email:  chanjes@sec.gov

## Other Important Information

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission.  This form has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions.  What should I do?*

If you have any questions concerning this matter, you may call me at (415) 705-2451.

Very truly yours,

Jessica W. Chan
Counsel, Division of Enforcement

Enclosures:    Subpoena Duces Tecum (with attachment)
                SEC Form 1662
                SEC Data Delivery Standards



**SUBPOENA**

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Theranos, Inc. (SF-4030)

To:   Theranos, Inc.
      c/o Peter M. Skinner, Esq. and Andrew Z. Michaelson, Esq.
      Boies, Schiller & Flexner LLP
      575 Lexington Avenue, 7th Floor
      New York, NY 10022

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission at the place, and no later than the date and time, specified below.

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973
Date/Time:  June 10, 2016

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
      Failure to comply may subject you to a fine and/or imprisonment.

By: _____ Date:  May 27, 2016
      Jessica W. Chan
      U.S. Securities and Exchange Commission, San Francisco Regional Office
      44 Montgomery Street, Suite 2800, San Francisco, CA 94104; Telephone (415) 705-2451
I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a Formal Order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

## ATTACHMENT

**Subpoena to Theranos, Inc.**
**In the Matter of Theranos, Inc. (SF-4030)**
**May 27, 2016**

## INSTRUCTIONS

This subpoena requires the production of certain documents, as specified in the section entitled "Production" below.  The required documents should be produced in accordance with the following requirements:

A.   You must submit all documents required to be produced by the subpoena that are in your possession, custody, or control, regardless of whether the documents are in your possession.

B.   If you claim attorney-client privilege, or any other privilege or protection from production, provide a list of the documents that you claim are privileged or protected, indicating the date prepared, authors, all recipients, the subject matters of the document, and the privilege or protection claimed, sufficiently identifying the documents to permit the staff to determine whether to request an in camera inspection by a federal district court judge.

C.   Produce the entirety of each and every document described below, without alteration, deletion, redaction, or obliteration of any information contained therein, even though such information is not specifically requested.

D.   The following rules of construction apply to this subpoena and attachment: (1) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (2) the use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

A.   "COMMUNICATIONS" means and includes, but is not limited to, any correspondence, memoranda, notes, electronic mail, telephone conversations, instant message statements, and any other conversations, conferences, or meetings.

B.   "CONCERNING" means and includes, but is not limited to, referring to, pertaining to, relating to, alluding to, bearing upon, commenting upon, touching upon, regarding, concerning, recording, evidencing, constituting, substantiating, supporting, contradicting, discussing, mentioning, including or otherwise affecting (directly or indirectly).

C.   "DOCUMENT" and "DOCUMENTS" mean and include, but are not limited to, any and all records in your possession, custody or control, whether drafts or final versions, originals or annotated or non-identical copies, however and by whomever created, produced or stored (manually, mechanically, electronically or otherwise), including,

without limitation, books, papers, files, notes, account statements, confirmations, reports, correspondence, electronic files, e-mail, instant messages, text messages, Internet sites, World Wide Web pages, memoranda, ledger sheets, reports, telegrams, telexes, telephone bills, messages or logs, notes or minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, computer programs, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, microfilm, microfiche and other storage devices.  "DOCUMENT" and "DOCUMENTS" shall also include all "writings," "recordings" and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence and all "electronically stored information" as the term is used in Rules 26 and 34 of the Federal Rules of Civil Procedure.

D.      "PEER VENTURES GROUP IV" means PEER Ventures Group IV, LP, the entities and their divisions, groups, subsidiaries, predecessors, successors and affiliates, as well as current and former officers, directors, members, general and limited partners, employees, attorneys, accountants, agents, representatives, and any person acting on behalf of PEER Ventures Group IV, LP with express, implied or apparent authority to do so or under its direction or control.

E.      "PEER VENTURE PARTNERS" means PEER Venture Partners, the entities and their divisions, groups, subsidiaries, predecessors, successors and affiliates, as well as current and former officers, directors, members, general and limited partners, employees, attorneys, accountants, agents, representatives, and any person acting on behalf of PEER Venture Partners with express, implied or apparent authority to do so or under its direction or control.

F.      "THERANOS" means Theranos, Inc., the entities and their divisions, groups, subsidiaries, predecessors, successors and affiliates, as well as current and former officers, directors, members, general and limited partners, employees, attorneys, accountants, agents, representatives, and any person acting on behalf of Theranos, Inc. with express, implied or apparent authority to do so or under its direction or control.

## PRODUCTION

1.      DOCUMENTS sufficient to identify all former THERANOS employees since the date of THERANOS' formation, including (1) their period of employment; (2) their positions or titles at the company at the time they departed; and (3) their contact information, including their addresses, phone numbers, and email addresses.

2.      DOCUMENTS sufficient to identify all divisions within THERANOS, the responsibility of each division, and reporting lines since the date of THERANOS' formation, including, but not limited to, historical organizational charts.

3.      For the individuals shown on TS-0000001, DOCUMENTS sufficient to describe their roles and responsibilities at THERANOS.

4.      DOCUMENTS sufficient to identify all THERANOS employees involved in research and development of THERANOS' proprietary technology since THERANOS' formation, including these employees' titles or positions and, if they are still currently employed by the company, who in TS-0000001 is their top-line supervisor.

5.      DOCUMENTS sufficient to show how much money has been spent by THERANOS on research and development for each fiscal year since THERANOS's formation.

6.      From January 1, 2010 to the date of production, all monthly or other periodic statements for any bank or brokerage accounts in the name of or for the benefit of THERANOS.

7.      From January 1, 2010 to the date of production, all (a) accounting records including general ledgers and subsidiary ledgers; (b) DOCUMENTS sufficient to understand the accounting systems or software utilized by THERANOS; and (c) income tax returns filed by THERANOS.

8.      From January 1, 2010 to the date of production, all DOCUMENTS CONCERNING any bank or cash account reconciliation performed by THERANOS.

9.      The THERANOS human resources or employee file for any current or former employee who has been the subject of any enforcement, or threatened enforcement, by THERANOS of any confidentiality provision as a result of communicating with any party outside of THERANOS.

10.     All DOCUMENTS that were provided by THERANOS to the Centers for Medicare and Medicaid Services ("CMS") during any of CMS's onsite surveys of THERANOS or any meetings between CMS and THERANOS, including, but not limited to, (a) a September 23, 2015 letter that was provided to CMS surveyors during the onsite survey that took place from September 22-23, 2015; (b) DOCUMENTS titled, "Theranos Background" that contain a summary of Phase I: Current Model and Phase II: Proposed model after 510(k) clearance; and (c) DOCUMENTS titled, "Overview of Sample Processing Workflow Prepared for FDA: Phase I and Phase II of Theranos Business Operations."

11.     All DOCUMENTS that were provided by THERANOS to the U.S. Food and Drug Administration ("FDA") during any of FDA's onsite inspections of THERANOS or any meetings between FDA and THERANOS.

12.     All COMMUNICATIONS CONCERNING CMS, including, but not limited to, COMMUNICATIONS CONCERNING the proficiency testing results submitted to the CMS in 2014.

13.     All COMMUNICATIONS CONCERNING the FDA.

14. All COMMUNICATIONS CONCERNING the Arizona Department of Health Services.

15. All COMMUNICATIONS CONCERNING or with the New York State Department of Health.

16. All COMMUNICATIONS CONCERNING or with the California Department of Public Health.

17. All DOCUMENTS CONCERNING any validation work performed on THERNANOS's proprietary technology by an outside party.

18. All DOCUMENTS provided by THERANOS to Walgreens, Safeway, United Health Group, or Blue Cross Blue Shield Association.

19. All signed agreements between THERANOS and United Health Group.

20. All signed agreements between THERANOS and Blue Cross Blue Shield Association.

21. From January 1, 2013 to the date of production, all COMMUNICATIONS CONCERNING or with United Health Group.

22. From January 1, 2013 to the date of production, all COMMUNICATIONS CONCERNING or with Blue Cross Blue Shield Association.

23. Since THERANOS' formation, all COMMUNICATIONS CONCERNING or with the U.S. Department of Defense, including, but not limited to, the U.S. Military or U.S. Navy.

24. All signed agreements with the U.S. Department of Defense, including, but not limited to, the U.S. Military or U.S. Navy.

25. Since THERANOS' formation, DOCUMENTS sufficient to show all revenues generated by work performed for the U.S. Department of Defense, including, but not limited to, the U.S. Military or U.S. Navy.  Such DOCUMENTS may include, but not be limited to, invoices and payment confirmations.

26. From January 1, 2013 to the date of production, all DOCUMENTS and/or COMMUNICATIONS CONCERNING or with PEER VENTURES GROUP IV and/or PEER VENTURE PARTNERS.

27. From January 1, 2013 to the date of production, all DOCUMENTS provided by THERANOS to PEER VENTURES GROUP IV and/or PEER VENTURE PARTNERS.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5. *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E.  Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F.  Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G.  Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H.  Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1.  To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2.  To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3.  To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4.  By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**U.S. Securities and Exchange Commission**

**<u>Data Delivery Standards</u>**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   **<u><i>Any proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.**</u></i>

General Instructions ...................................................................................................................................1

Delivery Formats ......................................................................................................................................2

    I.   *Concordance*® Imaged Productions.......................................................................................2

        1.  Images ...........................................................................................................................2

        2.  *Concordance Image*®  or Opticon Cross-Reference File ..........................................2

        3.  *Concordance*® Data File.............................................................................................3

        4.  Text ...............................................................................................................................3

        5.  Linked Native Files ......................................................................................................3

    II.  Native File Productions without loadfiles...........................................................................3

    III.  Adobe PDF File Productions…………..………....................................................3

    IV.  Audio Files ..........................................................................................................................4

    V.  Video Files...........................................................................................................................4

    VI.  Electronic Trade and Bank Records ...................................................................................4

    VII.  Electronic Phone Records ...................................................................................................4

**General Instructions**

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet*. **(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)**

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

Rev 10/2014

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
   a. A list of each piece of media included in the production with its unique production volume number
   b. A list of custodians, identifying the Bates range for each custodian
   c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted.
10. All data productions must be produced using industry standard self-extracting encryption software.
11. Passwords for documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
12. All productions should be produced free of computer viruses.
13. Additional technical descriptions can be found in the addendum to this document.

\*Please note that productions that come via United States Postal Service are subject to Mail Irradiation, as a result electronic productions may be damaged.\*

**Delivery Formats**

**I.** ***Concordance® Imaged Productions***
The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

   **1. Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format.
   b. File names cannot contain embedded spaces or special characters (including the comma).
   c. Folder names cannot contain embedded spaces or special characters (including the comma).
   d. All TIFF image files must have a unique file name, i.e. Bates number.
   e. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
   f. The number of TIFF files per folder should not exceed 500 files.
   g. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
   h. AUTOCAD/photograph files should be produced as a single page JPEG file.

2. **Concordance Image® OR Opticon Cross-Reference File**

The image cross-reference file to link the images to the database should be a comma- delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pag*

3. *Concordance®* **Data File**

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a.   The first line of the .DAT file must be a header row identifying the field names.

   b.   The .DAT file must use the following *Concordance®* default delimiters:
Comma ¶ ASCII character (020)
Quote þ ASCII character (254)

   c.   Date fields should be provided in the format:  mm/dd/yyyy

   d.   Date and time fields must be two separate fields.

   e.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

   f.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.

   g.   For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.

   h.   BEGATT and ENDATT fields must be two separate fields.

   i.   A complete list of metadata fields is available in **Addendum A** to this document.

4. **Text**

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file.  We require document level ANSI text files, named per the FIRSTBATES/Image Key. (Please note in the cover letter if any non-ANSI text files are included in the production.)  Extracted text must be in a separate folder, one text file per document.  The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.

   a.   Native file documents must be named per the FIRSTBATES number.

   b.   The full path of the native file must be provided in the .DAT file for the LINK field.

   c.   The number of native files per folder should not exceed 500 files.

II.   **Native File Production without Loadfiles**

With prior approval, native files may be produced without loadfiles.  The files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

III.   **Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

   1.   PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).

   2.   All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document.

   3.   All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.

   4.   If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

**V.    Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

   a. The metadata that must be included is outline in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

4

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated<br>for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated<br>in each record representing an attachment "child"<br>document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in<br>each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email:  mailbox where the email resided<br>Native: Individual from whom the document<br>originated |
| FROM | John Smith | Email:  Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple<br>entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email:  Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be<br>combined with the DATE_SENT field; |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

5

U.S. Securities and Exchange Commission
Data Delivery Standards

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|------|------------------------|--------------------------------------------------------------------------------------------------------|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Loadfile:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

Rev 10/2014

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 10/2014