1   STEPHANIE M. HINDS (CABN 154284)
    Acting United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   JEFFREY B. SCHENK (CABN 234355)
    JOHN C. BOSTIC (CABN 264367)
5   ROBERT S. LEACH (CABN 196191)
    KELLY I. VOLKAR (CABN 301377)
6   Assistant United States Attorneys

7        150 Almaden Boulevard, Suite 900
         San Jose, California 95113
8        Telephone: (408) 535-5061
         Fax: (408) 535-5066
9        Kelly.Volkar@usdoj.gov

10  Attorneys for United States of America

11                  UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14  UNITED STATES OF AMERICA,          )  Case No. 18-CR-00258 EJD
                                       )
15          Plaintiff,                 )  UNITED STATES' OPPOSITION TO
                                       )  DEFENDANT'S MOTION TO STRIKE THE
16      v.                             )  CMS REPORT (TRIAL EXHIBIT 4621A & B)
                                       )
17  ELIZABETH HOLMES,                  )  Date:   December 13, 2021
                                       )  Time:  9:00 a.m.
18          Defendant.                 )  Court: Hon. Edward J. Davila
                                       )
19  _____ )

20

21

22

23

24

25

26

27

28

1    The Court should deny Defendant's motion to strike the Centers for Medicare and Medicaid

2    Services' ("CMS") January 25, 2016 letter to Theranos' former lab director, Dr. Sunil Dhawan

3    (admitted as Trial Exhibit 4621A), and excerpts from the attached Form CMS-2567, Statement of

4    Deficiencies, for the Theranos Newark clinical laboratory (admitted as Trial Exhibit 4621B), which

5    were admitted during the testimony of Dr. Kingshuk Das (*full report available at* ECF No. 898-3).  The

6    motion raises the same issues that have been briefed, argued, and ultimately rejected by the Court

7    several times.  *See* ECF No. 798 at 16–20 (Order re: Motions *in Limine* ("MIL Order")), 989 at 7–8 &

8    n.1 (Order re: Pre-trial Motions ("MIL Order 2"))); *see also* ECF Nos. 574, 588, 659, 675, 717, 726, 810,

9    846, 850, 887, 897, 906, 1086, 1133, 1134; 11/09/2021 Hearing Transcript ("11/9 Tr.") at 5675:10–

10   5688:19, 5692:22–5697:16, 5708:20–5712:11; 11/19/2021 Hearing Transcript ("11/19 Tr.") at 7085:3–

11   7091:3.  Trial Exhibits 4621A and 4621B are relevant, not unduly prejudicial, and fall within a hearsay

12   exception.  They are non-testimonial and—to the extent the Court admitted them for a limited non-

13   hearsay purpose such as the Defendant's state of mind—they do not present Confrontation Clause

14   issues.  There is no basis now, at the close of evidence and shortly before closing arguments, for the

15   Court to change course and strike this evidence.

16                                        **BACKGROUND**

17       The Court held that evidence of the CMS survey findings (including the at issue report and cover

18   letter) were relevant, more probative than prejudicial, and not hearsay—in sum, wholly admissible—

19   after extensive briefing and argument.  ECF No. 798 (MIL Order) at 16–20, 90; *see also* ECF No. 906 at

20   4–5, 7–12 (detailing proceedings of motions *in limine* on this topic); 5/5 Tr. at 54:15–61:16, 71:6–76:10

21   (arguing the CMS report and cover letter were hearsay).  The Court explicitly found that references to

22   "CMS's finding of 'immediate jeopardy'" did not raise unfair prejudice concerns.  ECF No. 798 (MIL

23   Order) at 19.  The Court also held that the CMS survey findings (including what is now Trial Exhibits

24   4621A and 4621B) are not hearsay because they fall within the exception in Federal Rule of Evidence

25   803(8)(A)(ii), which excludes "matter[s] observed while under a legal duty to report" by non-law-

26   enforcement personnel.  ECF No. 798 (MIL Order) at 13–16, 20; *see, e.g.*, *United States v. Rosa*, 11

27   F.3d 315, 332–33 (2d Cir. 1993); *United States v. Hansen*, 583 F.2d 325, 333 (7th Cir. 1978).

28

1   Nothing in the Court's MIL Order was contingent on a CMS employee testifying.  *See* ECF No. 798

2   (MIL Order) at 13–20.

3        On the eve of trial, Defendant moved for reconsideration, asserting, among other things, that the

4   Court's holding in the MIL Order did not encompass the cover letter.  ECF Nos. 897, 906.  The Court

5   disagreed, holding that "no new arguments have been presented" by Defendant and "reject[ing]

6   Holmes's assertions that the cover letter is 'new' and not covered in the MIL Order."  ECF No. 989

7   (MIL Order 2) at 7–8 & n.1.  Again, nothing in the Court's MIL Order 2 was contingent on a CMS

8   employee testifying.  During trial, Defendant again sought to exclude a similar CMS-related document

9   on the same bases.  *See* ECF No. 1086.

10       The government provided notice of its intent to seek admission of the entirety of the CMS report

11  and cover letter, as contained in Trial Exhibit 4621, through Dr. Kingshuk Das (*see* ECF No. 1133), and

12  the Court heard argument, which was the first time the Defendant raised potential Confrontation Clause

13  issues if a CMS employee did not testify.  *See* 11/9 Tr. at 5675:10–5688:19, 5692:22–5697:16, 5708:20–

14  5712:11.  The government responded that Trial Exhibit 4621, containing the CMS report and cover

15  letter, are not testimonial or, in the alternative to admitting for its truth, the entirety could also be

16  admitted for the non-hearsay purpose of the Defendant's state of mind.  *See id.* at 5676:16–5680:9,

17  5692:22–5694:23.  At this point in time in the trial, Defendant had repeatedly put her state of mind at

18  issue, as the government pointed out.  *See* ECF No. 1133 at 3–5 (detailing evidence admitted during trial

19  for Defendant's state of mind after the January 2016 CMS Report).  When defense counsel noted that

20  the government had not previously raised the alternative theory of admitting Trial Exhibit 4621 for a

21  non-hearsay purpose relating to Defendant's state of mind, the Court responded that "[i]t could be

22  both"—meaning the evidence can *both* be relevant for showing the truth that the tests were inaccurate

23  and unreliable *and* go to the Defendant's state of mind or knowledge of the technology's capabilities.

24  11/9 Tr. at 5696:1–11.  Defendant noted her understanding that the government still intended to seek

25  admission of the entirety of Trial Exhibit 4621.  *Id.* at 5709:5–5712:11.

26       During the testimony of Dr. Das, the laboratory director hired by Defendant to respond to

27  concerns raised by CMS and ultimately tasked with analyzing and responding to the CMS survey

28  findings in Trial Exhibit 4621, the government sought to admit only portions of the exhibit.  First, the

1   government sought admission of the first four pages containing the cover letter, without qualification or

2   limitation.  *Id.* at 5800:8–5803:11.  The Court overruled Defendant's objections, which incorporated

3   objections raised in her briefing and prior oral argument and admitted the cover letter—also without

4   qualification or limitation.  *Id.* at 5801:19–5802:13; *see* ECF No. 1136 at 3.  This was later labeled Trial

5   Exhibit 4621A for clarity.  The government then offered portions of the report, and the Court clarified

6   that it was being offered for the limited purpose of Defendant's state of mind.  *See* 11/9 Tr. at 5809:16–

7   5814:4, 5852:1–19.  These portions of the CMS Statement of Deficiencies were later labeled Trial

8   Exhibit 4621B for clarity.  *Compare id.* at 5801:19–5802:13 (admitting the cover letter without

9   limitation), *with id.* at 5809:16–5814:4 (admitting portions of the report for a limited purpose).

10          After the government rested, Defendant once again renewed her objections, this time moving to

11   strike admission of Trial Exhibits 4621A and 4621B along with portions of Dr. Das' testimony

12   regarding the exhibits.  11/19 Tr. at 7085:5–7091:3.

13                                            **ARGUMENT**

14          The entirety of CMS's survey findings as included in the whole Trial Exhibit 4621 is admissible

15   because it is relevant, not unduly prejudicial, and not hearsay, as this Court found many months ago.

16   *See* ECF No. 798 (MIL Order) at 16–20, 989 (MIL Order 2) at 7–8 & n.1; *see*, *e.g.*, ECF Nos. 675, 906,

17   1133 (the government incorporates by reference its prior filings on this topic).  The only new argument

18   Defendant raises in her motion to strike is a potential Confrontation Clause claim—but Trial Exhibits

19   4621A and 4621B are not testimonial.  *See* 11/9 Tr. at 5675:10–5688:19, 5692:22–5697:16, 5708:20–

20   5712:11.  Furthermore, to the extent the Court admitted the exhibits for a limited non-hearsay purpose,

21   the Confrontation Clause is not implicated.  Thus, Trial Exhibit 4621 remains wholly admissible in its

22   entirety and the Court should not strike the portions admitted in Trial Exhibits 4621A and 4621B.

23   **I.     The January 2016 CMS Report (Trial Exhibit 4621B) and Accompanying Cover Letter
         (Trial Exhibit 4621A) Are Relevant and Not Unduly Prejudicial**

24

25          The findings within the January 2016 CMS Report are relevant to the inability of Theranos to

26   provide accurate and reliable tests during 2014 and 2015, as well as Defendant's knowledge of this

27   inability.  The Third Superseding Indictment ("TSI") alleges that Defendant devised a scheme to defraud

28   patients between approximately 2013 and 2016—when Theranos elected to shutter its lab following

interactions with CMS.  ECF No. 469 ¶¶ 14–18.  Specifically, the TSI alleges that from 2013 to 2016, the entire time Theranos was providing testing services to patients, Theranos represented to doctors and patients that Theranos could provide accurate, fast, reliable, and cheap blood tests and test results when Defendant knew that Theranos was not, in fact, capable of consistently producing accurate and reliable results.  *Id.*

Trial Exhibits 4621A and 4621B—which relate to patient testing that Theranos conducted in 2014 and 2015—are directly relevant to allegations in the TSI.  CMS, or a state agency on its behalf, inspects laboratories once every two years.  09/29/2021 Hearing Transcript ("9/29 Tr.") at 2114:10– 2118:3; 11/29/2021 Hearing Transcript ("11/29 Tr.") at 7794:1–16, 7809:3–20, 7811:10–22; 12/07/2021 Hearing Transcript ("12/7 Tr.") at 8438:15–24.  When California's state agency inspected Theranos' California lab in 2013, Defendant admitted it was largely using unmodified, FDA-approved commercially available third-party analyzers, and had only three or four lab-developed tests running on Theranos technology.  12/7 Tr. at 8438:15–8440:21.  By the time of its next inspection in 2015, CMS had received complaints, including from Erika Cheung, about Theranos' blood testing practices in its CLIA lab.  09/15/2021 Hearing Transcript ("9/15 Tr.") at 985:8–986:5; 12/7 Tr. at 8493:3–6. Ms. Cheung and others at Theranos had escalated these issues to Defendant and co-Defendant Balwani to no avail in early 2014.  *See* 9/15 Tr. at 973:1–981:18; 11/30/2021 Hearing Transcript ("11/30 Tr.") at 7972:13–7977:8, 7979:1–7993:3 (Defendant acknowledging that she now knows Ms. Cheung and Tyler Shultz were right but at the time in 2014 she minimized the seriousness of the issues they were raising).

In fall 2015, CMS analyzed paperwork and Theranos' lab practices from 2014 and 2015— essentially since the last state-run inspection—and found widespread issues.  *See generally* 11/9 Tr. at 5818:8–5835:14, 5854:11–17, 5855:22–5857:7.  Defendant hired Dr. Das to internally analyze CMS's findings and respond to the CMS report Theranos received in January 2016.  *Id.* at 5784:11–21, 5794:23–5795:16.  In doing so, Dr. Das did his own independent analysis, reviewed a broader universe of data than had been provided to CMS, and concluded that the deficiencies identified in the CMS report were only a "representative" sample of the actual deficiencies within Theranos' Newark laboratory.  *Id.* at 5818:8–5835:14, 5854:11–17, 5855:22–5857:7; 11/10/2021 Hearing Transcript ("11/10 Tr.") at 6023:5–6025:18.  Indeed, Dr. Das found in his internal review that there were multiple instances where

Case 5:18-cr-00258-EJD   Document 1192   Filed 12/12/21   Page 6 of 11

Theranos reported patient results in 2014 and 2015 *after* Theranos' proprietary blood analyzer (the Edison) had failed quality control. *Id.* at 5856:23–5857:7. Dr. Das reviewed Theranos' own quality control data from 2014 and 2015 found "a possible patient impact for every test reported" that was performed on the Edison and thus urged Defendant to void all tests run on Theranos' proprietary blood analyzer and for a few other assays. *Id.* at 5828:15–5834:24. Dr. Das testified that he "found these [Theranos proprietary] instruments to be unsuitable for clinical use." *Id.* at 5835:5–14.

Trial Exhibits 4621A and 4621B are directly relevant to allegations in the TSI, particularly because the information within connects back to what Defendant was told in real-time by Erika Cheung and Tyler Shultz, whose complaints Defendant now concedes were validated by CMS's findings in 2015 and early 2016. 11/30 Tr. at 7972:13–7977:8, 7979:1–7993:3. Defendant minimized the complaints Ms. Cheung and Mr. Shultz raised in 2014, and Defendant also minimized the CMS findings in January 2016 despite hearing of even more widespread issues from Dr. Das contemporaneously. *See id.*; 11/9 Tr. at 5830:4–5834:24; 10/26/2021 Hearing Transcript ("10/26 Tr.") at 4709:16–24. From the combination of this evidence, the jury could infer that Defendant knew that Theranos' technology was incapable of providing accurate and reliable results to patients at the same time she represented the opposite to investors and patients.

Moreover, Trial Exhibits 4621A and 4621B are also relevant because Defendant has repeatedly put her actions and state of mind in 2016 at issue during the trial thus far. From opening statements through her own testimony, Defendant has repeatedly put at issue events occurring after the CMS inspection and resulting report and cover letter, purportedly to demonstrate Defendant's state of mind with respect to the capability of Theranos' technology. *See, e.g.*, 09/08/2021 Hearing Transcript at 560:1–23, 609:10–613:6 (describing events in 2016–2018 in opening statement); 09/22/2021 Hearing Transcript at 1648:4–1655:10 (admitting exhibits over government objection relating to positive feedback Defendant received in 2016); *id.* at 1645:15–1646:5 (discussing AACC conference in August 2016); 10/26 Tr. at 4828:4–4831:23 (questioning Lisa Peterson about Defendant's presentation at the AACC conference); *id.* at 4592:8–4593:20 (arguing AACC video where Defendant defends Theranos's technology is admissible to show her state of mind in August 2016); 10/13/2021 Hearing Transcript at 3505:2–3508:19 (asking Wade Miquelon, former CFO of Walgreens, about encouraging and positive

CASE NO. 18-CR-258 EJD                    5

1  emails he sent to Defendant in 2016 when he was no longer employed by Walgreens); *see also*

2  09/17/2021 Hearing Transcript at 1117:4–1120:2 (questioning Erika Cheung about a Theranos patent

3  application from 2016 that the witness noted was filed after she left the company).

4         Defendant has even introduced evidence beyond the charged conspiracy period for the patient

5  counts by questioning witnesses about events in December 2016 and even late 2017, well after Theranos

6  ceased providing blood testing services to patients. *See* 9/22 Tr. at 1646:6–1648:3 (questioning General

7  Mattis about Theranos participating in a comparative study with UCSF in late 2017); 10/20/2021

8  Hearing Transcript at 4263:22–4266:1 (questioning Daniel Edlin regarding Dr. Robertson and whether

9  Theranos created a technology advisory board in December 2016).  In her defense case, Defendant

10 called a witness—Dr. Fabrizio Bonanni—whose entire role at Theranos began after the charged period

11 and addressed events in 2016 and beyond.  11/19 Tr. at 7181:6–7235:8.  Finally, Defendant herself

12 chose to testify and discussed the AACC conference in August 2016 and sought admission of multiple

13 exhibits to demonstrate her state of mind regarding the capabilities of Theranos' technology in the form

14 of submissions for peer review in 2016 and 2017.  *See* 11/29 Tr. at 7893:18–7909:9.

15        Defendant asserts that Trial Exhibits 4621A and 4621B must be excluded under Federal Rule of

16 Evidence 403 because she was unable to put the CMS report and cover letter in context through cross

17 examination of a CMS employee.  11/19 Tr. at 7085:3–7087:25.  But Defendant had the opportunity to

18 cross examine Erika Cheung, Dr. Adam Rosendorff, and Dr. Kingshuk Das, and Defendant herself

19 elected to testify and provide additional detail regarding the process of CMS inspections.  It is unclear

20 what further context Defendant believes is needed, and certainly nothing more is required under Rule

21 403.  Indeed, the portion of the CMS findings that Defendant previously objected to under Rule 403 was

22 the "immediate jeopardy" language, but she has since acquiesced to the introduction of such evidence

23 through her own rule of completeness arguments to the "Today Show" video clip in April 2016 (Exhibit

24 3152).  10/26 Tr. at 4584:2–4596:24, 4702:4–4708:24 (admitting the entirety of Exhibit 3152 as

25 requested by Defendant, and Exhibit 3152 recounts CMS's finding of "immediate jeopardy" against

26 Theranos).  The Court should reject Defendant's claim, as it has done previously, and hold again that the

27 CMS survey findings as admitted in part in Trial Exhibits 4621A and 4621B are relevant and more

28

1    probative than prejudicial.  ECF Nos. 798 (MIL Order) at 16–20, 989 (MIL Order 2) at 7–8 & n.1.[1]

2    **II.    Trial Exhibits 4621A and 4621B Fall Within a Hearsay Exception, Are Not Testimonial,**
3    **and Are Admissible for a Non-Hearsay Purpose**

4              The Court previously held that the CMS survey findings (including what has since been admitted

5    in Trial Exhibits 4621A and 4621B) were not hearsay because they fell within the public records

6    exception under Federal Rule of Evidence 803(8)(A)(ii).  ECF No. 798 (MIL Order) at 13–16, 20.

7    Specifically, the Court found that the CMS inspectors were not law enforcement personnel and that the

8    report was created while under a legal duty to report akin to building inspectors.  *Id.* (citing *United*

9    *States v. Fryberg*, 854 F.3d 1126, 1131 (9th Cir. 2017)); *see, e.g., Rosa*, 11 F.3d at 332–33 (statements

10   admissible under hearsay exception because law enforcement prohibition "should not be applied in the

11   context of reports of public officials having different responsibilities"); *Hansen*, 583 F.2d at 333

12   (city building inspectors are not law enforcement for hearsay purposes).  That ruling remains

13   undisturbed, and thus Trial Exhibits 4621A and 4621B are not excludable hearsay.[2]  Based on a similar

14   analysis, the Court should also hold that Trial Exhibits 4621A and 4621B are not testimonial for

15   purposes of the Confrontation Clause.  Furthermore, any exhibits the Court admitted for non-hearsay

16   purposes such as state of mind do not present a Confrontation Clause issue.

17             As a threshold matter, Trial Exhibit 4621B was not introduced for its truth, so the Confrontation

18   Clause does not apply to that exhibit.  *See United States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir.

19   2012) ("[E]ven testimonial statements may be admitted without confrontation if they are offered 'for

20   purposes other than establishing the truth of the matter asserted' and, therefore, constitute nonhearsay."

21   (citation omitted)).  Trial Exhibit 4621B was admitted for a limited, non-hearsay purpose and not for the

22   truth of the matter contained within portions of the report.[3]  Thus, Trial Exhibit 4621B does not present

23

24   _____

     [1] The relevance of Trial Exhibits 4621A and 4621B are manifest whether or not they come in for the
25   truth of the matter asserted or for a more limited purpose.

26   [2] Furthermore, the portions ultimately admitted do not contain hearsay within hearsay, and thus
     Defendant's pretrial challenge on that basis does not apply.  *Cf.* ECF No. 897.

27   [3] If the Court disagrees with the government's position that the record indicates Trial Exhibit 4621A was
28   admitted without limitation (11/9 Tr. at 5801:19–5802:13), then the government extends this argument
     to Trial Exhibit 4621A, as well.

1   a Confrontation Clause issue.  Witnesses at issue for the Confrontation Clause are those "who bear

2   testimony," and "testimony" is defined "as 'a solemn declaration or affirmation *made for the purpose of*

3   *establishing or proving some fact.*'"  *Clark*, 576 U.S. at 243 (quoting *Crawford*, 541 U.S. at 51)

4   (emphasis added).  Trial Exhibit 4621B was not admitted for the truth of its contents and thus the

5   confrontation clause concerns are simply not present with respect to that exhibit.

6        Trial Exhibits 4621A and 4621B are not testimonial because they were not prepared with

7   prosecutorial or law enforcement purposes.  The Supreme Court held in *Crawford v. Washington* that

8   "[t]estimonial statements of witnesses" where the Defendant has a right to cross examine that witness

9   include three categories:  (1) "*ex parte* in-court testimony or its functional equivalent—that is, material

10  such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-

11  examine, or similar pretrial statements that declarants would reasonably expect to be used

12  prosecutorially"; (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as

13  affidavits, depositions, prior testimony, or confessions"; and (3) "statements that were made under

14  circumstances which would lead an objective witness reasonably to believe that the statement would be

15  available for use at a later trial."  541 U.S. 36, 51–52 (2004) (internal citations and quotations omitted).

16  The Supreme Court later clarified that "[s]tatements are nontestimonial"—even if made to the police—

17  when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing

18  emergency."  *Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements made to police in an

19  emergency 911 call are not testimonial).  More recently, the Supreme Court has further held that

20  "statements to persons other than law enforcement officers . . . are much less likely to be testimonial

21  than statements to law enforcement officers."  *Ohio v. Clark*, 576 U.S. 237, 244–46 (2015) (statements

22  made by a child to their teacher about abuse are not testimonial).

23       Trial Exhibits 4621A and 4621B do not meet any of the three definitions of testimonial

24  statements under *Crawford* and its progeny, so they remain admissible and should not be stricken.  First,

25  the CMS inspectors—Sarah Bennett and Gary Yamamoto—did not "reasonably expect" the report "to

26  be used prosecutorially."  *Cf. id.*  Rather, as described above, the CMS employees performed their bi-

27  annual survey of Theranos' laboratory and provided a statement of deficiencies for Theranos to correct.

28  Not all CMS reports lead to criminal prosecutions.  *See* 9/29 Tr. at 2114:10–2116:14, 2149:1–2150:3

1    (noting that typically CMS inspections may list deficiencies for laboratories to improve and then the

2    agency moves on).  Nor is there any indication in the record that the CMS survey findings were created

3    for trial or a prosecutorial purpose or for anything other than the purpose the Court identified previously:

4    "[to] indicate violations of federal regulations that themselves are meant to ensure, among other things,

5    the accuracy and reliability of certain kinds of clinical laboratory work."  ECF No. 798 (MIL Order) at

6    18.  Instead, as the Court found in the MIL Order, the report and cover letter were "reports prepared by

7    non-law enforcement civil government employees such as city building inspectors, medical examiners,

8    and prison case managers."  *Id.* at 13–16, 20.  The fact that CMS inspectors are not law enforcement

9    personnel further support this conclusion.  In sum, this evidence is more akin to *Davis* and *Ohio* and is

10   nontestimonial.

11        Second, the January 2016 CMS Report is not an "extrajudicial statement" or "formalized

12   testimonial material[]" akin to "affidavits, depositions, prior testimony, or confessions," such as the

13   "certificate of analysis" the Supreme Court held was testimonial in *Melendez-Diaz v. Massachusetts*.

14   557 U.S. 305, 310–11 (2009) (holding that "certificates of analysis," notarized reports showing the

15   results of a forensic drug analysis, were testimonial evidence).  The "certificate of analysis" was created

16   at law enforcement's request to analyze drug quantity for purposes of an upcoming criminal case.  *Id.* at

17   307–09.  By contrast, the CMS survey findings summarized in the report and cover letter were generated

18   after a routine inspection by CMS inspectors and *not* at the request of law enforcement.  *Cf. id.* at 316–

19   17 (noting the affidavit was created in response to a police request).

20        Third and finally, the CMS report and cover letter were not prepared under circumstances meant

21   to make it "available for use at a later trial."  *Crawford*, 541 U.S. at 51–52.  The Supreme Court has

22   delineated not only between law enforcement and non-law enforcement, but also between emergency

23   and non-emergency situations.  *See Ohio*, 576 U.S. at 246; *Davis*, 547 U.S. at 822.  The CMS

24   inspectors' primary purpose was to investigate the complaints they had received about Theranos'

25   California lab and determine whether or not any "deficiencies" needed to be corrected to protect patient

26   safety.  It is not enough that they are government employees and that they happened to uncover evidence

27   that happens to aid a criminal prosecution brought years later.  In the moment the report and cover letter

28   were created it was in a non-emergency situation and drafted by non-law enforcement personnel without

1   any contemporaneous intent to use in a criminal prosecution.  Therefore, they are not testimonial.

2         Finally, even if this Court were to find that Trial Exhibits 4621A and 4621B are testimonial and

3   should be stricken, Dr. Das' testimony should not be stricken because he was subject to cross

4   examination as the Confrontation Clause requires.  The Confrontation Clause permits criminal

5   defendants to face their accusers and test their statements through cross examination.  *Crawford*, 541

6   U.S. at 68.  Dr. Das testified at trial that he did his own independent analysis of the portions of the

7   January 2016 CMS findings included in Trial Exhibits 4621A and 4621B, he even reviewed a broader

8   universe of data than had been provided to the CMS inspectors, and he concluded that the deficiencies

9   identified by CMS were only a "representative" sample of the actual deficiencies within Theranos'

10  Newark laboratory.  11/9 Tr. at 5818:8–5835:14, 5854:11–17, 5855:22–5857:7; 11/10 Tr. at 6023:5–

11  6025:18.  Defendant had the opportunity to cross examine Dr. Das and did so.  The jury was given the

12  opportunity to assess Dr. Das' credibility.  Contrary to Defendant's claim, Dr. Das was not a conduit for

13  the CMS employees' conclusions in the report, but rather he explained his own observations based on an

14  analysis that Defendant asked him to conduct.  Even if the Court had not admitted Trial Exhibits 4621A

15  and 4621B, Dr. Das would have been permitted to reference the documents to refresh his recollection

16  and otherwise provide the same testimony.  Thus, any ruling on Trial Exhibits 4621A and 4621B should

17  not extend to Dr. Das' testimony.

## CONCLUSION

19        For these reasons and those stated in the government's prior filings on this topic, the Court

20  should deny Defendant's motion to strike Trial Exhibits 4621A and 4621B.

22  DATED:  December 12, 2021                    Respectfully submitted,

23                                              STEPHANIE M. HINDS
24                                              Acting United States Attorney

25                                                  */s/ Kelly I. Volkar*
26                                              JEFFREY B. SCHENK
                                                JOHN C. BOSTIC
27                                              ROBERT S. LEACH
                                                KELLY I. VOLKAR
28                                              Assistant United States Attorneys