UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-18-00258-EJD |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | VOLUME 1 |
| | ) | |
| ELIZABETH A. HOLMES, | ) | AUGUST 31, 2021 |
| | ) | |
| DEFENDANT. | ) | PAGES 1 - 264 |
| _____ | ) | |

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                       BY:  JOHN C. BOSTIC
                            JEFFREY B. SCHENK
                       150 ALMADEN BOULEVARD, SUITE 900
                       SAN JOSE, CALIFORNIA 95113

                       BY:  ROBERT S. LEACH
                            KELLY VOLKAR
                       1301 CLAY STREET, SUITE 340S
                       OAKLAND, CALIFORNIA 94612

            (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTERS:
                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
                            LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

1

A P P E A R A N C E S: (CONT'D)

2


3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                            BY:  KEVIN M. DOWNEY
4                                LANCE A. WADE
                                 KATHERINE TREFZ
5                           725 TWELFTH STREET, N.W.
                            WASHINGTON, D.C. 20005
6
                            LAW OFFICE OF JOHN D. CLINE
7                           BY:  JOHN D. CLINE
                            ONE EMBARCADERO CENTER, SUITE 500
8                           SAN FRANCISCO, CALIFORNIA 94111

9
     ALSO PRESENT:          FEDERAL BUREAU OF INVESTIGATION
10                          BY:  ADELAIDA HERNANDEZ

11
                            OFFICE OF THE U.S. ATTORNEY
12                          BY:  LAKISHA HOLLIMAN, PARALEGAL
                                 MADDI WACHS, PARALEGAL
13

14

15

16

17

18

19

20

21

22

23

24

25

|  | 1 | SAN JOSE, CALIFORNIA                    AUGUST 31, 2021 |
|--|---|--|

1      SAN JOSE, CALIFORNIA                    AUGUST 31, 2021

2                         P R O C E E D I N G S

08:55AM   3           (COURT CONVENED AT 8:55 A.M.)

08:55AM   4                THE COURT:  LET'S GO ON THE RECORD IN OUR MATTER

08:55AM   5      TODAY 18-258, UNITED STATES VERSUS ELIZABETH HOLMES.

08:55AM   6           LET ME FIRST CAPTURE THE APPEARANCES OF THE PARTIES.  WHO

08:55AM   7      APPEARS FOR THE GOVERNMENT?

08:55AM   8                MR. SCHENK:  GOOD MORNING, YOUR HONOR.

08:55AM   9           JEFF SCHENK ON BEHALF UNITED STATES, JOINED AT COUNSEL

08:55AM  10      TABLE BY JOHN BOSTIC, ROBERT LEACH, KELLY VOLKAR, FBI SPECIAL

08:55AM  11      AGENT ADELAIDA HERNANDEZ, AND THE PARALEGAL FOR THE U.S.

08:55AM  12      ATTORNEY'S OFFICE, MADDI WACHS.

08:55AM  13                THE COURT:  THANK YOU.  GOOD MORNING.

08:55AM  14           AND WHO APPEARS FOR THE DEFENSE?

08:55AM  15                MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

08:55AM  16           KEVIN DOWNEY FOR MS. HOLMES.  WITH ME ARE MY COLLEAGUES

08:55AM  17      LANCE WADE, KATIE TREFZ, AND ALSO JOHN CLINE.

08:55AM  18           MS. HOLMES IS PRESENT IN COURT TODAY.

08:55AM  19                THE COURT:  THANK YOU.  GOOD MORNING TO EACH OF YOU

08:56AM  20      AS WELL.  GOOD MORNING.  THANK YOU.

08:56AM  21           WE'RE ABOUT TO START THE VOIR DIRE PROCESS FOR THIS TRIAL.

08:56AM  22      OUR JURY HAS NOT BEEN SUMMONED UP YET.  I AM INFORMED, AND I

08:56AM  23      THINK MS. KRATZMANN INFORMED YOU, THAT REGRETTABLY WE HAD SOME

08:56AM  24      FAILURES TO APPEAR THIS MORNING ON OUR PANEL.  AND THAT CAUSES

08:56AM  25      US TO ADJUST OUR CHARTS, DOESN'T IT?

08:56AM 1       SO THE JURY IS NOT UP YET, BUT IN ANTICIPATION OF THAT, I

08:56AM 2  THOUGHT I WOULD GO OVER JUST A COUPLE OF THINGS IF I COULD WITH

08:56AM 3  YOU.

08:56AM 4       FIRST OF ALL, I WANTED TO TELL YOU THAT OUR -- YOU KNOW,

08:56AM 5  WE'VE BROKEN UP OUR PANELS IN GROUPS.

08:56AM 6       WE'RE SOCIALLY DISTANCED AS YOU CAN SEE, AND WE WILL DO --

08:56AM 7  I'M INFORMED THAT WE'RE GOING TO DO ONE PANEL A DAY FOR THE

08:56AM 8  JURORS TO COME UP, PROSPECTIVE JURORS TO COME UP.

08:56AM 9       I THINK IN OUR PREVIOUS CONVERSATIONS WE THOUGHT WE MIGHT

08:56AM 10  BE ABLE TO ACCOMPLISH PERHAPS TWO A DAY, BUT I THINK OWING TO

08:56AM 11  THE CRISIS AND THE DESIRE TO MINIMIZE TRAFFIC IN THE

08:57AM 12  COURTHOUSE, WE'RE GOING TO JUST DO ONE PANEL A DAY.

08:57AM 13       SO WE'LL DO OUR FIRST SET OF PROSPECTIVE JURORS TODAY.

08:57AM 14  WE'LL SEE WHERE WE GO.  IT'S POSSIBLE THAT WE COULD FIND SOME

08:57AM 15  MEMBERS OF THE COMMUNITY THAT CAN HEAR THIS CASE TODAY.

08:57AM 16       IF NOT, WE'LL COME BACK TOMORROW WITH THAT SECOND PANEL,

08:57AM 17  AND WE'LL DO THE SAME THING.  THAT AGAIN WOULD BE AT 9:00

08:57AM 18  O'CLOCK TOMORROW.

08:57AM 19       AS YOU KNOW, WE HAVE RESERVED THURSDAY IF WE NEED IT FOR

08:57AM 20  THAT PURPOSE.  WE WILL NOT BE IN SESSION ON FRIDAY.  AT LEAST

08:57AM 21  WE'RE NOT PLANNED TO BE IN SESSION ON FRIDAY.

08:57AM 22       SO I WANT TO LET YOU KNOW THAT.

08:57AM 23       ALSO, AS TO ANY SIDE-BAR DISCUSSIONS, WE TYPICALLY HAVE A

08:57AM 24  MICROPHONE HERE, AND WE DO THEM ON THE SIDE-BAR.  I THINK IT

08:57AM 25  WOULD BE BETTER IF WE HAD OUR SIDE-BAR CONVERSATIONS IN THE

08:57AM 1    JURY ROOM, WHICH IS JUST TO MY RIGHT HERE, AND I'VE DONE THAT

08:58AM 2    IN OTHER TRIALS THAT I'VE HAD THIS YEAR.  THAT SEEMS TO WORK

08:58AM 3    EFFICIENTLY.  OUR COURT REPORTER WILL TAKE HER MACHINE IN

08:58AM 4    THERE, AND WE CAN MEET IN THE JURY ROOM AND HAVE ANY SIDE-BAR

08:58AM 5    DISCUSSIONS THERE.

08:58AM 6         I'LL NOTE THAT, MR. DOWNEY, YOUR CLIENT HAS WAIVED HER

08:58AM 7    PARTICIPATION IN ANY SIDE-BAR CONVERSATIONS.  I RECEIVED THE

08:58AM 8    STIPULATION YESTERDAY, I BELIEVE, THANK YOU FOR THAT.

08:58AM 9         I ALSO WANTED TO CONFIRM THAT I THINK IT WAS YESTERDAY

08:58AM 10   THAT I SENT COUNSEL A LIST AFTER I REVIEWED THE QUESTIONNAIRES

08:58AM 11   FROM THE JURORS.  I REVIEWED THOSE AGAIN, AND THROUGH

08:58AM 12   MS. KRATZMANN I SENT AN EMAIL TO COUNSEL IDENTIFYING A NUMBER

08:58AM 13   OF JURORS THAT I'D LIKE YOU TO LOOK AT AGAIN TO CONSIDER ANY

08:58AM 14   ACTION THAT YOU WOULD WANT TO TAKE ON THOSE JURORS.

08:58AM 15        I WANT TO THANK YOU BOTH.  BOTH SIDES MET AND CONFERRED,

08:59AM 16   AND YOU BOTH GOT BACK TO MS. KRATZMANN AND INDICATED SOME

08:59AM 17   AGREEMENT AS TO JURORS THAT COULD BE EXCUSED.

08:59AM 18        AMONGST THOSE WERE A GROUP OF JURORS THAT HAD INDICATED ON

08:59AM 19   THEIR QUESTIONNAIRE THAT THEY HAD NOT, HAD NOT BEEN VACCINATED,

08:59AM 20   HAD NOT RECEIVED THEIR COVID VACCINATIONS.

08:59AM 21        AND MY UNDERSTANDING IS THAT THE PARTIES STIPULATED TO THE

08:59AM 22   USE OF THOSE JURORS.  I JUST WANTED TO CONFIRM THAT WITH YOU

08:59AM 23   AND PUT THAT ON THE RECORD.

08:59AM 24        THE COVID CRISIS AS WE KNOW IS UNABATED, AND IT CONTINUES

08:59AM 25   IN ALL OF OUR COMMUNITIES REGRETTABLY.  WE ARE TAKING STEPS, AS

08:59AM  1    I SAID, WITH OUR PANELS TO REDUCE FOOT TRAFFIC IN THE COURTROOM

08:59AM  2    SUCH THAT WE CAN ALL BE SAFE.  OF COURSE, THE MEDICAL

08:59AM  3    INFORMATION THAT WE HAVE IS THAT VACCINATION IS ONE OF THE MOST

08:59AM  4    IMPORTANT THINGS AN INDIVIDUAL CAN DO TO ENSURE THEIR AND THEIR

08:59AM  5    FAMILY AND THE COMMUNITY SAFETY.

09:00AM  6        OWING TO THAT AND RECOGNIZING THAT, WE ASKED THAT QUESTION

09:00AM  7    ON THE QUESTIONNAIRE.  WE RECEIVED THE INFORMATION FROM THOSE

09:00AM  8    JURORS, AND IT SEEMED THAT IT MIGHT BE SOMETHING THAT WE SHOULD

09:00AM  9    AT LEAST ADVENTURE WITH COUNSEL.  IT'S GOING TO BE A LONG

09:00AM  10   TRIAL, AND I THINK SOME OF THE PEOPLE WHO DID NOT SHOW UP TODAY

09:00AM  11   PHONED IN WITH SYMPTOMS, AND WE ADVISED THEM THROUGH OUR JURY

09:00AM  12   COMMISSIONER NOT TO COME IN AT ALL JUST OUT OF AN ABUNDANCE OF

09:00AM  13   CAUTION.  THAT'S WHAT I BELIEVE THE REASON THAT I RAISE THESE

09:00AM  14   NONVACCINATED PROSPECTIVE JURORS.

09:00AM  15       I THINK THERE WERE MAYBE TEN.  IT WAS OUT OF THE 200

09:00AM  16   PEOPLE THAT WERE SUMMONED THERE WERE ABOUT 10 THAT WERE NOT

09:00AM  17   VACCINATED.  BUT LET ME HEAR FROM THE PARTIES.

09:00AM  18       MR. SCHENK.

09:00AM  19           MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

09:01AM  20       THE COURT IS CORRECT THAT THE PARTIES MET AND CONFERRED

09:01AM  21   AND DISCUSSED THE ISSUE OF RELEASING UNVACCINATED JURORS.  AT

09:01AM  22   OUR HEARING LAST WEEK THE COURT ASKED THE PARTIES TO CONSIDER

09:01AM  23   THIS, AND THE PARTIES DID MEET AND CONFER OVER IT.  OUR

09:01AM  24   UNDERSTANDING IS THAT THE DEFENSE IS REQUESTING IT, AND THE

09:01AM  25   GOVERNMENT DOES NOT OPPOSE THAT REQUEST, AND, IN FACT, WE

09:01AM 1    SUPPORT THAT REQUEST, AND WE APPRECIATE THE COURT MAKING A

09:01AM 2    RECORD ON THIS ISSUE.

09:01AM 3        WE AGREE THAT THE CURRENT COVID CRISIS IN SANTA CLARA

09:01AM 4    COUNTY WOULD PRESENT AN UNDUE HARDSHIP TO UNVACCINATED JURORS,

09:01AM 5    ESPECIALLY DURING A TRIAL OF THIS LENGTH.

09:01AM 6        THE COURT HAS HAD TRIALS DURING THE COVID CRISIS BUT NOT

09:01AM 7    ONE OF THIS LENGTH, AND WE THINK THAT MAKES THE SITUATION

09:01AM 8    DIFFERENT THAN IN SOME PRIOR TRIALS AND IT'S BECAUSE OF THAT

09:01AM 9    UNDUE HARDSHIP PLACED ON UNVACCINATED JURORS AND ASKING THEM TO

09:01AM 10   COME TO COURT FOR SEVERAL MONTHS DURING THE LENGTH OF THIS

09:01AM 11   TRIAL WOULD BE AN UNDUE HARDSHIP, AND, THEREFORE, IT WOULD BE

09:01AM 12   APPROPRIATE TO RELEASE THESE JURORS.

09:01AM 13       I'M HAPPY TO READ OUT THE NUMBERS.  I BELIEVE IT'S NINE

09:02AM 14   JURORS:  22, 98, 100, 103, 151, 183, 199, 218, AND 233.

09:02AM 15           THE COURT:  THANK YOU.  THANK YOU, MR. SCHENK.

09:02AM 16       MR. DOWNEY.

09:02AM 17           MR. DOWNEY:  WELL, FIRST, YOUR HONOR, WE AGREE WITH

09:02AM 18   THE DISMISSAL AND EXCUSAL OF JURORS WHO HAVE NOT YET BEEN

09:02AM 19   VACCINATED FOR THE REASONS THAT I ARTICULATED LAST WEEK, AND I

09:02AM 20   AGREE WITH MR. SCHENK'S IDENTIFICATION OF JURORS WHO HAVE

09:02AM 21   INDICATED IN THE QUESTIONNAIRE THAT THEY HAVE THAT STATUS.

09:02AM 22           THE COURT:  ALL RIGHT.  THANK YOU.  AND YOU AGREE

09:02AM 23   WITH THE REASONS FOR AND THE SAFETY OF ALL OF US IN THE

09:02AM 24   COURTROOM, BUT PARTICULARLY FOR THE JURORS WHO WILL BE SITTING

09:02AM 25   NEXT TO ONE ANOTHER, ALBEIT SOCIALLY DISTANCED, BUT DISTANCED

09:03AM 1    DIFFERENT THAN IN A NORMAL TRIAL, YOU AGREE WITH THAT?

09:03AM 2          MR. DOWNEY:  I DO, YOUR HONOR.  YOU KNOW I

09:03AM 3    ARTICULATED LAST WEEK SOME JURORS WHO REMAIN ON THE PANEL MAY

09:03AM 4    HAVE PARTICULAR CONCERNS THAT I KNOW THE COURT WILL BE

09:03AM 5    SENSITIVE TO AS WE GO THROUGH THE VOIR DIRE PROCESS.

09:03AM 6          SO WE ALSO WILL TRY TO BE SYMPATHETIC WITH RESPECT TO

09:03AM 7    THOSE CONCERNS FOR INDIVIDUAL JURORS WHO HAVE, FOR EXAMPLE,

09:03AM 8    PEOPLE THAT THEY LIVE WITH WHO ARE UNVACCINATED.

09:03AM 9          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

09:03AM 10         AND THIS IS IMPORTANT FOR OUR JURY PANEL BECAUSE -- AND MY

09:03AM 11   SENSE IS THAT THIS WILL PROVIDE THEM SOME REASSURANCE.  I'M

09:03AM 12   GOING TO TALK WITH THE JURORS ABOUT THAT.  BUT THANK YOU.  I'LL

09:03AM 13   RECEIVE YOUR STIPULATION AND AGREEMENT TO THAT AND THANK YOU.

09:03AM 14   THE RECORD WILL SO REFLECT.

09:03AM 15         THE OTHER ITEM I WANTED TO CHAT ABOUT FOR JUST A MOMENT IS

09:03AM 16   VOIR DIRE AND HOW MUCH TIME EACH SIDE SHOULD GET FOR VOIR DIRE,

09:03AM 17   AND THAT IS YOUR TIME TO SPEAK WITH THE JURORS.

09:04AM 18         THOSE OF YOU WHO HAVE TRIED CASES IN MY COURTROOM BEFORE

09:04AM 19   KNOW THAT I TYPICALLY DON'T SAY, AND I THINK I SAID THIS IN OUR

09:04AM 20   PRETRIAL CONFERENCE, IT'S -- I TYPICALLY DON'T GIVE A TIME

09:04AM 21   LIMIT.  I DO SUGGEST IN TRIALS THAT I HAVE THAT THE VOIR DIRE

09:04AM 22   PROCESS CAN BE ACCOMPLISHED IN ABOUT 20 MINUTES, 15,

09:04AM 23   20 MINUTES.  THAT SEEMS TO WORK.  SOMETIMES IT GOES A LITTLE

09:04AM 24   OVER THAT.

09:04AM 25         I WAS THINKING ABOUT IN ANTICIPATION OF YOUR REQUEST FOR

09:04AM 1    SOME ADDITIONAL TIME TO ALLOW EACH SIDE ONE HOUR, ONE HOUR OF

09:04AM 2    VOIR DIRE, EACH SIDE.  YOU DON'T HAVE TO USE IT.  I KNOW NATURE

09:04AM 3    ABHORS A VACUUM, BUT I THINK YOU ALL CAN BE VERY EFFICIENT WITH

09:04AM 4    WHAT YOU DO, AND I CERTAINLY HAVE EXPERIENCED THAT THROUGH THE

09:04AM 5    COURSE OF THE LITIGATION YOU HAVE SO FAR AND I JUST WANT YOU TO

09:04AM 6    KNOW THAT, AND THAT'S THE GUIDELINES I WOULD LIKE TO IMPOSE.

09:04AM 7        ANY QUESTIONS ABOUT THAT?

09:04AM 8            MR. SCHENK:  NO QUESTIONS, THANK YOU.

09:04AM 9            MR. DOWNEY:  NO QUESTIONS ABOUT THE LENGTH, BUT I

09:05AM 10   WONDER BECAUSE I HAVE SEEN THAT YOUR HONOR'S PRACTICE IN THE

09:05AM 11   PAST HAS VARIED A LITTLE BIT.

09:05AM 12       I KNOW YOUR HONOR CONDUCTS VOIR DIRE DIRECTED AT

09:05AM 13   INDIVIDUAL JURORS.  WILL IT BE YOUR HONOR'S PREFERENCE THAT WE

09:05AM 14   QUESTION JURORS INDIVIDUALLY WHEN YOUR HONOR IS DONE OR SHOULD

09:05AM 15   WE WAIT UNTIL THE END TO CONDUCT ALL QUESTIONING?

09:05AM 16           THE COURT:  WELL, I'M GOING TO -- THANK YOU FOR

09:05AM 17   ASKING THAT.  THE WAY THAT THIS WORKS IS THAT I'LL SPEAK WITH

09:05AM 18   THE JURORS, EXCUSE ME, OUR PROSPECTIVE JURORS FIRST, AND I'LL

09:05AM 19   ASK MY QUESTIONS FIRST.

09:05AM 20       AND THEN YOU'LL HAVE THE OPPORTUNITY TO -- I'M GOING TO DO

09:05AM 21   SOMETHING A LITTLE DIFFERENT TODAY.  I SAY THAT WITH SOME

09:05AM 22   TREPIDATION, BUT I'M GOING TO -- BEFORE YOU BEGIN TO ASK YOUR

09:05AM 23   QUESTIONS, I'VE PLACED QUESTIONNAIRES -- MS. KRATZMANN IS GOING

09:05AM 24   TO HAND IT TO YOU.  IT'S JUST A VERY BRIEF SIX QUESTION PAGE

09:05AM 25   (HANDING).

09:05AM 1     AND I THOUGHT THAT JUST OWING TO THIS TRIAL AND

09:06AM 2  CIRCUMSTANCES SURROUNDING IT, I THOUGHT I WOULD ENGAGE THIS FOR

09:06AM 3  EACH JUROR, PROSPECTIVE JUROR, JUST AS AN ICE BREAKER.

09:06AM 4     WHAT I HAVE HANDED YOU IS I SUPPOSE TO ASK EACH

09:06AM 5  PROSPECTIVE JUROR TO ANSWER AN EXAM, AND IT ASKS FOR THEIR

09:06AM 6  ADDRESS, NOT ADDRESS BUT GENERAL BIOGRAPHICAL INFORMATION.  I

09:06AM 7  DO THAT, AS I SAID, AS AN ICE BREAKER FOR THE PROSPECTIVE

09:06AM 8  JURORS, BUT I THINK IT GIVES YOU AN OPPORTUNITY TO HEAR FROM

09:06AM 9  THE PROSPECTIVE JURORS AND THE PANEL I THINK.  SO WE'LL ASK

09:06AM 10  THEM TO DO THAT.

09:06AM 11     I'M NOT GOING TO HAVE THEM STAND.  I THINK EVEN THOSE WHO

09:06AM 12  MIGHT BE SEATED IN THE BACK, I'M HOPEFUL THAT WE'LL BE ABLE TO

09:06AM 13  HEAR THEM.

09:06AM 14     WE DO HAVE THE MICROPHONE.  YOU SEE IT BETWEEN YOUR

09:06AM 15  TABLES.  IF THE JURORS FROM THE BACK WISH TO ADDRESS THE COURT

09:07AM 16  AND WE'RE HAVING SOME DIFFICULTY HEARING THEM, I'LL INVITE THEM

09:07AM 17  TO THAT MICROPHONE.  I THINK WE HAVE A --

09:07AM 18     MS. KRATZMANN, DO WE HAVE A SIMILAR MICROPHONE UP IN THE

09:07AM 19  FRONT OR HAVE WE DECIDED THAT WE CAN TRY TO LISTEN TO OUR

09:07AM 20  JURORS WHO ARE IN THE BOX?

09:07AM 21     THE CLERK:  YOUR HONOR, THE OPTION WOULD BE TO COME

09:07AM 22  TO THE PODIUM WHERE MR. SCHENK IS OR RAISE THEIR VOICES.  WE

09:07AM 23  ONLY HAVE THE PODIUM OR THE MICROPHONE THERE.

09:07AM 24     THE COURT:  THAT'S FINE.  I THINK THAT WILL BE

09:07AM 25  SUFFICIENT.

| | | |
|---|---|---|
| 09:07AM | 1 | ALL RIGHT.  ANY QUESTIONS ABOUT THAT? |
| 09:07AM | 2 | MR. DOWNEY:  TWO QUESTIONS, YOUR HONOR. |
| 09:07AM | 3 | ONE RELATES NOT DIRECTLY TO THAT BUT JURORS WHO WILL BE ON |
| 09:07AM | 4 | PANEL 2 TOMORROW. |
| 09:07AM | 5 | THE COURT:  YES. |
| 09:07AM | 6 | MR. DOWNEY:  THERE'S ONE JUROR WHO IS A 78-YEAR |
| 09:07AM | 7 | OLD-MAN.  HE STATED IN HIS QUESTIONNAIRE THAT HE HAD THE OPTION |
| 09:07AM | 8 | IN COMPLETING THE QUESTIONNAIRE TO CHECK A BOX AND BE |
| 09:07AM | 9 | EXCUSED -- |
| 09:07AM | 10 | THE COURT:  HAD HE KNOWN. |
| 09:07AM | 11 | MR. DOWNEY:  AT THE TIME HE DIDN'T BECAUSE I THINK |
| 09:07AM | 12 | THE SITUATION WITH COVID WAS NOT AS SEVERE AS HE FEARS IT WILL |
| 09:08AM | 13 | BECOME AND AS A LOT OF PUBLIC DISCUSSION INDICATES IT MIGHT |
| 09:08AM | 14 | BECOME, AND HE STATES IN THE QUESTIONNAIRE THAT IF HE WERE |
| 09:08AM | 15 | FILLING THAT QUESTIONNAIRE OUT TODAY HE WOULD INDICATE THAT HE |
| 09:08AM | 16 | WAS OVER 78 AND AUTOMATICALLY BE DISMISSED. |
| 09:08AM | 17 | I WANTED TO JUST NOTIFY THE COURT THAT THE DEFENSE HAS NO |
| 09:08AM | 18 | OBJECTION TO HIS DISMISSAL.  I'VE TOLD MR. SCHENK, AND I'VE |
| 09:08AM | 19 | IDENTIFIED THAT ISSUE TO MR. SCHENK.  THE REASON I RAISE IT IS |
| 09:08AM | 20 | THAT IF THE COURT HAS AN OPPORTUNITY TO REVIEW IT DURING THE |
| 09:08AM | 21 | COURSE OF THE TODAY, AND MR. SCHENK DOES AS WELL, MAYBE WE CAN |
| 09:08AM | 22 | MAKE A DECISION AS TO THAT SO THAT HE DOESN'T HAVE TO APPEAR |
| 09:08AM | 23 | TOMORROW. |
| 09:08AM | 24 | THE COURT:  WELL, I DID READ THAT QUESTIONNAIRE AND |
| 09:08AM | 25 | THAT DID SING OUT TO ME.  I REMEMBER HIS RESPONSE TO THAT |

09:08AM 1    QUESTION.

09:08AM 2        MR. SCHENK.

09:08AM 3            MR. SCHENK:  NO OBJECTION.

09:08AM 4            THE COURT:  CAN YOU CALL OUT THE NUMBER, HIS JUROR

09:08AM 5    NUMBER?

09:08AM 6            MR. DOWNEY:  IT'S 163, YOUR HONOR.

09:08AM 7            THE COURT:  THANK YOU.  THANK YOU.

09:08AM 8        THEN WE'LL CONTACT JUROR NUMBER 163 AND OFFER HIM AN

09:08AM 9    EXCUSAL IF HE WISHES, AND WE'LL EXCUSE HIM.  THANK YOU FOR

09:09AM 10   POINTING THAT OUT.  I DID READ THAT AND I WAS -- I DID NOTE IT.

09:09AM 11   THANK YOU.

09:09AM 12            MR. DOWNEY:  THE SECOND ISSUE IS WITH RESPECT TO THE

09:09AM 13   COURT'S REFERENCE TO INDIVIDUAL DISCUSSIONS WITH JURORS.  IN

09:09AM 14   GROUP 1 THERE ARE JURORS WHO THEMSELVES HAVE EXPRESSED A

09:09AM 15   PREFERENCE TO TALK WITH THE COURT INDIVIDUALLY.

09:09AM 16       IN ADDITION TO THAT, THERE ARE SOME JURORS WHO HAVE BEEN

09:09AM 17   EXPOSED TO PUBLIC DISCUSSION OF THE CASE IN A WAY THAT WE WOULD

09:09AM 18   PREFER QUESTIONING NOT TAKE PLACE IN FRONT OF THE OTHER JURORS.

09:09AM 19       I CAN IDENTIFY THOSE JUROR NUMBERS AS WE GO ALONG.  WHAT

09:09AM 20   IS THE COURT'S PREFERENCE?

09:09AM 21            THE COURT:  WELL, THANK YOU.

09:09AM 22       I KNOW WE HAD CONVERSATION ABOUT THIS LAST WEEK, AND YOU

09:09AM 23   HAD EXPRESSED YOUR CONCERNS ABOUT THE POTENTIAL OF A

09:09AM 24   PROSPECTIVE JUROR CONTAMINATING, TAINTING THE OTHER JURY PANEL.

09:10AM 25       I TALK ABOUT THIS IN MY VOIR DIRE, AND I DO INVITE, IF A

09:10AM 1    JUROR FEELS THAT THEY MIGHT HAVE SOME STRONG OPINIONS THAT

09:10AM 2    MIGHT BE BETTER EXPRESSED PRIVATELY, I CERTAINLY GIVE AN

09:10AM 3    OPPORTUNITY TO DO THAT.

09:10AM 4         I THINK I SPEAK TWO OR THREE TIMES IN MY VOIR DIRE ABOUT

09:10AM 5    THE ABILITY FOR A PARTY TO SPEAK PRIVATELY WITH THE COURT ABOUT

09:10AM 6    ANY MATTER.

09:10AM 7         I'LL CERTAINLY RAISE THAT WITH THEM.

09:10AM 8         AND BE WATCHFUL FOR THAT IF THERE ARE JURORS WHO FOR

09:10AM 9    WHATEVER REASON ON WHATEVER TOPIC FEEL THAT THEY WANT TO HAVE

09:10AM 10   AN INDIVIDUAL CONVERSATION, WE'LL CERTAINLY PROVIDE THAT

09:10AM 11   OPPORTUNITY FOR THEM THAT IS OUTSIDE OF THE PRESENCE OF THEIR

09:10AM 12   OTHER PROSPECTIVE PANEL MEMBERS.

09:10AM 13        NOW, I'LL ALSO WATCH AND SEE --

09:10AM 14        THE CLERK:  I'M SORRY TO INTERRUPT, YOUR HONOR.

09:10AM 15   (DISCUSSION WITH THE JUDGE AND CLERK OFF THE RECORD.)

09:11AM 16        THE COURT:  SO I WILL, WHEN I'M SPEAKING WITH THE

09:11AM 17   JURORS, I WILL BE MINDFUL I WILL START TO -- IF I THINK THE

09:11AM 18   CONVERSATION IS STARTING TO VENTURE SOMEWHERE THAT GETS INTO

09:11AM 19   THAT TERRITORY, I CERTAINLY WILL POLICE THAT, IF YOU WILL.

09:11AM 20        AND IF COUNSEL FEEL -- I KNOW IT'S A LITTLE AWKWARD TO

09:11AM 21   INTERRUPT A PROSPECTIVE JUROR IN YOUR SEATS, AND YOU DON'T WANT

09:11AM 22   TO BE UNTOWARD TOWARDS THEM, BUT I MAY GLANCE YOUR WAY AND

09:11AM 23   YOU'LL SEND ME A SIGN IF YOU THINK IT'S GOING TOO FAR.

09:11AM 24        BUT I DO -- WE TALKED ABOUT WHETHER OR NOT WE SHOULD

09:11AM 25   INDIVIDUALLY SPEAK WITH EACH JUROR, AND I EXPRESSED THAT I

09:11AM 1    DIDN'T THINK THAT THAT WAS NECESSARY.  I THOUGHT THAT THE

09:11AM 2    PROTOCOLS THAT WE WERE GOING TO PLACE WOULD BE SUFFICIENT.

09:12AM 3         AND LET ME SAY THAT I THINK EVERYONE IS AWARE THAT THERE

09:12AM 4    HAS BEEN SOME RECENT PUBLICITY ABOUT THE CASE, AND I INTEND TO

09:12AM 5    ASK THE JURORS IF THEY HAVE BEEN EXPOSED TO ANY READING, NEWS,

09:12AM 6    ANY PUBLICITY AT ALL SINCE THE TIME THAT THEY HAVE COMPLETED

09:12AM 7    THEIR QUESTIONNAIRES AND TO ASK THEM ABOUT THAT.

09:12AM 8         SO WE'LL HAVE AN OPPORTUNITY TO PROBE THAT.  THAT MAY

09:12AM 9    RAISE SOME OF THESE ISSUES, MR. DOWNEY, THAT YOU'RE SPEAKING

09:12AM 10   TO, AND SO WE'LL -- ALL OF US WILL PAY ATTENTION TO THAT.

09:12AM 11        MR. DOWNEY:  WELL, I EXPECT THAT WE MAY HAVE THAT

09:12AM 12   ISSUE.  OF COURSE WE CAN'T IDENTIFY THOSE PEOPLE NOW, BUT WITH

09:12AM 13   RESPECT TO AT LEAST TEN JURORS IN POOL 1 THERE IS EXPOSURE TO

09:12AM 14   SUBSTANTIAL NEGATIVE MEDIA.  SOME OF THOSE JURORS THEMSELVES

09:12AM 15   HAVE EXPRESSED THE CONCERN THAT THEY HAVE A BIAS.  SO I THINK

09:12AM 16   WE KNOW NOW THAT SOME OF THE INFORMATION, IF THEY'RE QUESTIONED

09:13AM 17   ABOUT IT, WILL LEAD TO THE POTENTIAL PROBLEM.

09:13AM 18        I JUST REQUEST THAT -- OBVIOUSLY WE DISAGREE WITH

09:13AM 19   YOUR HONOR'S INTENDED PROCEDURE, BUT WE UNDERSTAND WHERE

09:13AM 20   YOUR HONOR IS THINKING IS WITH REGARD TO IT.

09:13AM 21        I WAS JUST WONDERING IF IT WOULD BE HELPFUL TO IDENTIFY

09:13AM 22   THOSE JURORS.

09:13AM 23        THE COURT:  IF YOU WOULD LIKE TO DO THAT FOR THE

09:13AM 24   RECORD, MR. DOWNEY, YOU MAY.

09:13AM 25        MR. DOWNEY:  YES.  AND ALSO, AS I SAY, THERE ARE

09:13AM   1    THREE INDIVIDUALS, I BELIEVE ONLY ONE OF WHOM HAVE SAID THAT

09:13AM   2    EITHER THEY HAVE BEEN VICTIMS OR THEIR FAMILY MEMBERS HAVE BEEN

09:13AM   3    VICTIMS IN CRIMES THAT ARE TYPICALLY TREATED SENSITIVELY OR IN

09:13AM   4    ONE CASE AN INDIVIDUAL HAS SAID THAT I WOULD LIKE TO SPEAK TO

09:13AM   5    THE COURT, AND I COULD IDENTIFY THOSE AS WELL.

09:13AM   6         THE COURT:  IF YOU WOULD LIKE TO.

09:13AM   7         I KNOW THAT WHEN I READ THE QUESTIONNAIRES, THERE WERE AT

09:13AM   8    LEAST IN THIS GROUP, THERE MAY HAVE BEEN ONE, MAYBE MORE.  I

09:13AM   9    KNOW THAT SEVERAL OF OUR PROSPECTIVE JURORS HAVE ASKED TO SPEAK

09:14AM  10    PRIVATELY ABOUT DIFFERENT QUESTIONS, SO I'VE NOTED THAT AS

09:14AM  11    WELL.

09:14AM  12         MR. DOWNEY:  IN THE CATEGORY OF INDIVIDUALS WHO HAVE

09:14AM  13    EITHER MADE THE REQUEST TO SPEAK TO YOUR HONOR INDIVIDUALLY OR

09:14AM  14    THEY RAISED AN ISSUE THAT SEEMS LIKE IT WOULD BE BETTER

09:14AM  15    DISCUSSED IN PRIVATE ARE JURORS 17, 35, AND 62.

09:14AM  16         I ACTUALLY HAVEN'T TRACKED IT, YOUR HONOR, SO IF ANY OF

09:14AM  17    THOSE ARE A JUROR THAT DID NOT APPEAR TODAY, I DON'T KNOW.

09:14AM  18         AND THE INDIVIDUAL JURORS WHO HAVE INDICATED EXPOSURE TO

09:14AM  19    SUBSTANTIAL MEDIA ARE JURORS NUMBER 1, JUROR NUMBER 14, JUROR

09:14AM  20    NUMBER 31, JUROR NUMBER 49, JUROR NUMBER 57, JUROR NUMBER 63,

09:14AM  21    JUROR NUMBER 64, AND JUROR NUMBER 95.

09:14AM  22         WE WOULD ASK, YOUR HONOR, WITH RESPECT TO ALL OF THOSE

09:15AM  23    JURORS THAT THEY BE QUESTIONED INDIVIDUALLY.  IT IS, IN OUR

09:15AM  24    VIEW, THE PROPER PROCEDURE UNDER THE SILVERTHORNE CASE.

09:15AM  25    YOUR HONOR HAS PREVIOUSLY GIVEN HIS REASONS FOR NOT DOING IT,

09:15AM  1    AND WE UNDERSTAND IT, BUT WE WOULD MAKE THAT REQUEST.

09:15AM  2            THE COURT:  MR. SCHENK?

09:15AM  3            MR. SCHENK:  YOUR HONOR, NOTHING FURTHER ON THAT

09:15AM  4    TOPIC.

09:15AM  5        I DO HAVE TWO SEPARATE QUESTIONS, BUT I'LL DEFER TO THE

09:15AM  6    COURT.

09:15AM  7            THE COURT:  ARE THERE SPECIFIC QUESTIONS THAT YOU

09:15AM  8    BELIEVE SHOULD BE ADVANCED INDIVIDUALLY?

09:15AM  9            MR. DOWNEY:  AS TO THOSE JURORS?

09:15AM 10            THE COURT:  YES.

09:15AM 11            MR. DOWNEY:  I THINK WITH RESPECT TO THE CRIME

09:15AM 12    VICTIMS, I CAN SAY THAT ONE OF THOSE VICTIMS -- ONE OF THOSE

09:15AM 13    INDIVIDUALS REPORTS HAVING A FAMILY MEMBER WHO WAS A VICTIM OF

09:15AM 14    A SEXUAL ASSAULT.  THAT'S JUROR NUMBER 35.

09:15AM 15        ONE OF THOSE JURORS THEMSELVES WAS A VICTIM OF DOMESTIC

09:15AM 16    VIOLENCE, THAT'S 17.

09:15AM 17        AND JUROR NUMBER 62 REPORTS BEING A CRIME VICTIM IN A

09:16AM 18    DIFFERENT CONTEXT AND HAS ASKED TO SPEAK TO YOUR HONOR, BUT

09:16AM 19    THAT JUROR I BELIEVE IS A FAILURE TO APPEAR TODAY.

09:16AM 20        WITH RESPECT TO THE MEDIA, IT'S HARD TO GENERALIZE THE

09:16AM 21    QUESTION, BUT CERTAINLY WHAT WE WANT TO AVOID IN FRONT OF THE

09:16AM 22    JURY IS ANY DISCUSSION OF WHAT THEY'VE LEARNED AND THEIR

09:16AM 23    REACTIONS TO WHAT THEY'VE LEARNED, WHICH WOULD BE THE TYPICAL

09:16AM 24    INQUIRY AS TO BIAS ON ANY ISSUE.

09:16AM 25        SO IN EFFECT, I THINK WE'RE IMPEDED IN MAKING THE NORMAL

09:16AM 1     INQUIRY INTO BIAS ISSUES BECAUSE OF THE CONCERN THAT IT WILL

09:16AM 2     AFFECT THE POOL.

09:16AM 3             THE COURT:  THIS IS, AS YOU KNOW, A QUESTION THAT

09:16AM 4     COMES UP IN EVERY TRIAL.  THERE MIGHT BE -- THE CONCERN AS TO

09:16AM 5     WHETHER ONE RESPONDS MIGHT HAVE A NEGATIVE IMPACT ON A FELLOW

09:16AM 6     PROSPECTIVE JUROR'S ABILITY TO BE FAIR AND IMPARTIAL AND

09:16AM 7     WHETHER IT WILL CHANGE THEIR THOUGHTS IN SOME WAY.  I RECOGNIZE

09:17AM 8     THAT.

09:17AM 9         I THINK OUR QUESTIONNAIRE CAPTURES THIS AREA.  AND IS IT

09:17AM 10    QUESTIONS 36 THROUGH 42 PERHAPS, THAT RANGE?  I THINK IT ASKS

09:17AM 11    THESE MEDIA TYPE QUESTIONS.

09:17AM 12        QUESTION 39 IS THE ONE THAT IS PERHAPS MORE INFORMATIVE ON

09:17AM 13    THIS ISSUE.

09:17AM 14        IT ASKED WHETHER OR NOT AS A RESULT OF ANYTHING THAT THEY

09:17AM 15    HAVE READ, LISTENED TO, SEEN, OR HEARD OF, WHETHER OR NOT THAT

09:17AM 16    WILL -- I'M PARAPHRASING -- WILL IMPAIR THEIR ABILITY TO BE

09:17AM 17    FAIR AND IMPARTIAL.  THAT'S THE QUESTION THAT I THINK WE LOOK

09:17AM 18    AT.  IN SOME OF THESE RESPONSES TO SOME OF THE PROSPECTIVE

09:17AM 19    JURORS THEY HAVE INDICATED THAT IT MAY AND THEY STATE THE

09:17AM 20    REASONS.  OTHERS HAVE SAID NO WITH A CHECK BOX.

09:17AM 21        SO THAT'S PROBABLY AN AREA OF PROBING, MAYBE, THAT YOU'RE

09:17AM 22    SPEAKING TO IN THAT CATEGORY OF QUESTIONS.  I THINK THAT'S.

09:17AM 23            MR. DOWNEY:  I THINK IT'S A PERFECT EXAMPLE,

09:17AM 24    YOUR HONOR.

09:17AM 25        AS YOUR HONOR SAYS, QUESTION 39 ASKS ALL OF THE JURORS IF

09:18AM 1    THEY ARE LIMITED IN THEIR ABILITY TO BE IMPARTIAL, UNBIASSED,

09:18AM 2    AND OBJECTIVE.

09:18AM 3        SEVERAL JURORS HAVE SAID THAT THEY'RE EITHER UNCERTAIN OR

09:18AM 4    THEY PROBABLY CANNOT BE BASED ON THEIR EXPOSURE TO MEDIA.  WHEN

09:18AM 5    THEY ARE ASKED THE QUESTION WHY IS THAT?  MANY JURORS WILL

09:18AM 6    BEGIN TO TALK ABOUT WHAT THEIR EXPERIENCE OF WATCHING OR

09:18AM 7    READING THAT MEDIA HAS BEEN.

09:18AM 8        THE COURT:  AND I THINK YOUR CONCERN -- PARDON ME

09:18AM 9    FOR INTERRUPTING YOU -- BUT YOUR CONCERN MIGHT BE THAT THEY

09:18AM 10   REPEAT, WROTE WHAT THEY'VE HEARD, WHAT THEY'VE SEEN, IF

09:18AM 11   ANYTHING, THOSE TYPES OF THINGS AS OPPOSED TO SAYING I SAW

09:18AM 12   SOMETHING THAT AFFECTED ME, I SAW A RED -- I HEARD SOMETHING

09:18AM 13   THAT AFFECTED ME, AND IT MADE ME -- CAUSED ME TO THINK JUST

09:18AM 14   WHAT I HEARD WITHOUT IDENTIFYING OR QUOTING, I SUPPOSE, FROM

09:18AM 15   THE MATERIAL.  I GUESS THAT'S WHAT I'M TALKING ABOUT.

09:18AM 16       I DON'T THINK WE NEED TO PROBE THE EXACT QUOTE.  WE DON'T

09:18AM 17   NEED SOMEONE TO COME AND GIVE US A REPORT ABOUT WHAT THEY'VE

09:19AM 18   READ, WHAT THEY'VE SEEN.

09:19AM 19       MR. DOWNEY:  WELL, YOUR HONOR -- I'M SORRY.

09:19AM 20       THE COURT:  NO, NO.  GO AHEAD.

09:19AM 21       MR. DOWNEY:  I THINK THE QUESTION IS SIMPLY WHY, WHY

09:19AM 22   DO YOU FEEL THAT YOU MIGHT NOT BE IMPARTIAL?

09:19AM 23       WE DON'T KNOW WHAT A JUROR WILL SAY IN RESPONSE TO THAT.

09:19AM 24       THE COURT:  WE DON'T.  THEY MAY SAY BECAUSE I

09:19AM 25   BELIEVE EVERYTHING THAT I SEE ON TELEVISION.  WE JUST DON'T

09:19AM   1      KNOW, YOU'RE RIGHT.  I APPRECIATE THE CONCERN THAT YOU HAVE.

09:19AM   2      IT'S NOT LOST ON ME.

09:19AM   3          I'M NOT SAYING THAT WE WON'T DO INDIVIDUAL QUESTIONING.

09:19AM   4      IT MAY BE A TIME WHEN -- A TIME WILL COME BASED ON THEIR

09:19AM   5      RESPONSES THAT THAT WOULD BE APPROPRIATE.

09:19AM   6          I GUESS WHAT I'M SAYING IS I WILL BE MINDFUL OF THAT, SIR,

09:19AM   7      AND WE'LL DO THE BEST THAT WE CAN.

09:19AM   8              MR. DOWNEY:  I APPRECIATE THAT YOUR HONOR HAS

09:19AM   9      CONSIDERED THE ISSUE EXTENSIVELY.  I BELIEVE THIS IS THE THIRD

09:19AM  10      OR FOURTH DISCUSSION THAT WE HAVE HAD ABOUT IT, AND I JUST

09:20AM  11      WANTED TO NOTE FOR THE RECORD OUR POSITION.

09:20AM  12              THE COURT:  OF COURSE.

09:20AM  13          MR. SCHENK?

09:20AM  14              MR. SCHENK:  YOUR HONOR, I'M WONDERING WHAT THE LAST

09:20AM  15      JUROR NUMBER IS THAT WE'LL DEAL WITH TODAY.  SOME OF THE JURORS

09:20AM  16      THAT MR. DOWNEY READ OFF TO THE COURT TODAY WENT UP INTO THE

09:20AM  17      90'S, AND I JUST WANT TO KNOW.

09:20AM  18              THE COURT:  LET'S SEE.  I THINK THE LAST JUROR THAT

09:20AM  19      I HAD TODAY WAS 95.

09:20AM  20          IS THAT CORRECT, MS. KRATZMANN?

09:20AM  21              THE CLERK:  JUROR NUMBER 93.

09:20AM  22              THE COURT:  NOW, MS. KRATZMANN HANDED ME A NOTE

09:20AM  23      WHILE WE WERE TALKING, AND JUROR NUMBER 214 IS DOWNSTAIRS NOW.

09:20AM  24      SHE CAME TO OUR COMMISSIONER AND APPARENTLY IS SCHEDULED FOR

09:20AM  25      TOMORROW, AND SHE APPARENTLY HAS BROUGHT TO THE COURT PROOF OF

09:21AM 1    THAT.

09:21AM 2         SHOULD WE EXCUSE JUROR 214.

09:21AM 3              MR. DOWNEY:  IF THE COURT HAS REVIEWED IT AND HAS

09:21AM 4    PROOF, WE HAVE NO OBJECTION.

09:21AM 5              THE COURT:  I HAVE NOT READ IT.  SHE'S DOWNSTAIRS IN

09:21AM 6    THE COMMISSIONER'S OFFICE, AND I'M INFORMED SHE HAS PROOF AND

09:21AM 7    OUR COMMISSIONER --

09:21AM 8              MR. DOWNEY:  I'M CERTAIN WE WILL IF WE CAN JUST TAKE

09:21AM 9    A LOOK.

09:21AM 10             THE COURT:  SURE.  MS. KRATZMANN, CAN YOU HAVE THAT

09:21AM 11   PROOF BROUGHT UP.

09:21AM 12             THE CLERK:  YES, YOUR HONOR.

09:21AM 13             THE COURT:  MR. SCHENK.

09:21AM 14             MR. SCHENK:  THIS JUROR MENTIONED THE SURGERY IN THE

09:21AM 15   QUESTIONNAIRE, AND IT WAS THE THIRD JURY, AND SO IT MUST HAVE

09:21AM 16   BEEN MOVED UP AND WE HAVE NO OBJECTION.

09:21AM 17             THE COURT:  SHOULD WE WAIT TO BRING THIS UP,

09:21AM 18   MR. DOWNEY?

09:21AM 19        DO YOU WANT TO SEE THE -- WHATEVER SHE BROUGHT?

09:21AM 20             MR. DOWNEY:  I THINK IT'S FINE TO EXCUSE HER,

09:21AM 21   YOUR HONOR.

09:21AM 22             THE COURT:  OKAY.  WE WILL EXCUSE HER.  THANK YOU.

09:22AM 23   THANK YOU BOTH.

09:22AM 24        214 IS EXCUSED FOR MEDICAL.

09:22AM 25             THE CLERK:  YOUR HONOR, YES.  WE GO UP TO 95 TODAY.

| | | |
|---|---|---|
| 09:22AM | 1 | THE COURT:  RIGHT. |
| 09:22AM | 2 | MR. DOWNEY:  YOUR HONOR, JUST ONE ADDITIONAL |
| 09:22AM | 3 | QUESTION ABOUT A JUROR. |
| 09:22AM | 4 | THE COURT:  SURE. |
| 09:22AM | 5 | MR. DOWNEY:  I THINK THE COURT INDICATED TO US THAT |
| 09:22AM | 6 | JUROR 119 WAS TO APPEAR TODAY. |
| 09:22AM | 7 | THE COURT:  MS. KRATZMANN. |
| 09:22AM | 8 | THE CLERK:  LET ME CONFIRM THAT. |
| 09:22AM | 9 | MR. SCHENK:  YOUR HONOR, WHILE WE'RE DOING THAT, I |
| 09:22AM | 10 | THINK AT SOME POINT I'D BE HAPPY TO MAKE A RECORD FOR THE |
| 09:22AM | 11 | JURORS THAT WERE EXCUSED.  BASED UPON THE AGREEMENT OF THE |
| 09:22AM | 12 | PARTIES AFTER REVIEWING COMMUNICATION FROM THE COURT YESTERDAY, |
| 09:22AM | 13 | I DON'T KNOW IF THE COURT WANTS TO DO THAT AT THE END OF THE |
| 09:23AM | 14 | DAY NOW. |
| 09:23AM | 15 | THE COURT:  WE CAN DO THAT NOW, SURE.  WE HAVE SOME |
| 09:23AM | 16 | TIME. |
| 09:23AM | 17 | THE CLERK:  YES, YOUR HONOR.  JUROR 119 IS HERE |
| 09:23AM | 18 | TODAY, SO HE WILL FOLLOW JUROR 95. |
| 09:23AM | 19 | THE COURT:  OKAY.  THANK YOU. |
| 09:23AM | 20 | (PAUSE IN PROCEEDINGS.) |
| 09:23AM | 21 | THE COURT:  MR. SCHENK? |
| 09:23AM | 22 | MR. SCHENK:  WE EXCUSED JUROR NUMBER 30 FOR TRAVEL. |
| 09:23AM | 23 | WE EXCUSED JUROR NUMBER 32.  THIS JUROR KNOWS YOUR HONOR. |
| 09:23AM | 24 | WE EXCUSED JUROR 36 FOR CHILD CARE NEEDS. |
| 09:24AM | 25 | WE EXCUSED 53 FOR HEALTH. |

| | | |
|---|---|---|
| 09:24AM | 1 | WE EXCUSED 98 FOR PARENT CARE RESPONSIBILITIES. |
| 09:24AM | 2 | WE EXCUSED JUROR 115 FOR CHILD CARE AND HEALTH. |
| 09:24AM | 3 | WE EXCUSED JUROR 140 FOR HEALTH. |
| 09:24AM | 4 | WE EXCUSED 144 FOR A FINANCIAL HARDSHIP. |
| 09:24AM | 5 | WE EXCUSED 151 FOR HEALTH. |
| 09:24AM | 6 | WE EXCUSED 152 FOR HEALTH. |
| 09:24AM | 7 | WE EXCUSED 170 FOR TRAVEL. |
| 09:25AM | 8 | WE EXCUSED 176 FOR HEALTH OF A FAMILY MEMBER. |
| 09:25AM | 9 | WE EXCUSED 193 AND 194 FOR BIAS. |
| 09:25AM | 10 | AND THEN ON A SECOND LIST WE EXCUSED 39 FOR SCHOOL, A |
| 09:25AM | 11 | UNIVERSITY STUDENT. |
| 09:25AM | 12 | WE EXCUSED JUROR 40 FOR FINANCIAL HARDSHIP. |
| 09:25AM | 13 | WE EXCUSED JUROR 100 FOR FINANCIAL HARDSHIP AND HEALTH. |
| 09:25AM | 14 | WE EXCUSED JUROR 101 FOR WORK OBLIGATIONS AND SCHOOL. |
| 09:25AM | 15 | JUROR 103 FOR HEALTH. |
| 09:25AM | 16 | 109 FOR HEALTH AND FINANCIAL. |
| 09:25AM | 17 | 125 FOR SCHOOL. |
| 09:26AM | 18 | I BELIEVE WE KEPT 127.  I BELIEVE WE DID NOT EXCUSE 127. |
| 09:26AM | 19 | MR. DOWNEY:  THAT'S CORRECT. |
| 09:26AM | 20 | MR. SCHENK:  THAT'S MY NOTES, YES. |
| 09:26AM | 21 | 158 WE EXCUSED FOR SCHOOL COMMITMENTS. |
| 09:26AM | 22 | 168 WE EXCUSED FOR HEALTH AND THE COMMUTE. |
| 09:26AM | 23 | WE EXCUSED 183 FOR TRAVEL. |
| 09:26AM | 24 | WE EXCUSED 212 FOR COMMUTE CHALLENGES. |
| 09:26AM | 25 | 222 WE EXCUSED FOR FINANCIAL HARDSHIP. |

```
09:26AM    1              233 ALSO FOR FINANCIAL HARDSHIP.

09:26AM    2                   THE COURT:  MR. DOWNEY, DO YOU AGREE WITH THAT?

09:26AM    3                   MR. DOWNEY:  WE CONCUR THAT THOSE JURORS HAVE BEEN

09:26AM    4         AGREED EXCUSALS, YOUR HONOR, AND FOR THE REASONS ARTICULATED BY

09:26AM    5         MR. SCHENK.

09:26AM    6                   THE COURT:  THANK YOU, AND THANK YOU AGAIN FOR THE

09:26AM    7         TIME LOOKING AT THOSE.  I APPRECIATE THAT.  IT SAVES US SOME

09:26AM    8         TIME, AND OF COURSE IT ALLOWED FOR LESS INCONVENIENCE OF THESE

09:27AM    9         PROSPECTIVE JURORS.  THANK YOU FOR THAT.

09:27AM   10              I THINK THAT ACCOMPLISHES EVERYTHING THAT WE NEED TO DO

09:27AM   11         NOW.  WE JUST NEED TO GET OUR FOLKS UP HERE AND THEN WE'LL

09:27AM   12         START THE VOIR DIRE PROCESS.  THAT WILL TAKE A FEW MINUTES.  AS

09:27AM   13         YOU KNOW, WE'VE GOT LIMITED ELEVATORS HERE TO BRING UP THE --

09:27AM   14              HOW MANY WILL THERE BE, MS. KRATZMANN, TOTAL, TODAY?

09:27AM   15                   THE CLERK:  LET ME CONFIRM.

09:27AM   16                   THE COURT:  THAT'S ALL RIGHT.  I THINK YOU SAID IT

09:27AM   17         WAS --

09:27AM   18                   THE CLERK:  ORIGINALLY IT WAS 38.

09:27AM   19                   THE COURT:  IT'S LESS THAN 40, FEWER THAN 40.

09:27AM   20                   MR. DOWNEY:  ACTUALLY, YOUR HONOR, ONE MORE

09:27AM   21         QUESTION.

09:27AM   22                   THE COURT:  SURE.

09:27AM   23                   MR. DOWNEY:  WHERE WOULD YOU PREFER WHERE WE ARE

09:27AM   24         WHEN WE PARTICIPATE IN VOIR DIRE?

09:27AM   25                   THE COURT:  WELL, THAT'S A GOOD QUESTION, WHERE
```

09:27AM  1    SHOULD YOU STAND?

09:28AM  2              THE CLERK:  WHEN THEY PRESENT THEIR QUESTIONS,

09:28AM  3    YOUR HONOR?

09:28AM  4              THE COURT:  I THINK WE'LL HAVE A LECTERN.  WE'LL

09:28AM  5    HAVE THE LECTERN HERE.  WE'LL HAVE A LECTERN THAT WE'LL ROLL

09:28AM  6    OUT.

09:28AM  7              THE CLERK:  IT'S THE BLACK ONE (INDICATING).

09:28AM  8              THE COURT:  YES.  IT'S NOT IDEAL.  YOU SEE THE SEATS

09:28AM  9    WITH THE SIGNS, LETTERS BEHIND YOU, AND THAT'S WHERE THE

09:28AM  10   PROSPECTIVE, BALANCE OF THE PROSPECTIVE JURORS WILL BE.

09:28AM  11       IT'S AWKWARD TO SPEAK OVER YOUR COLLEAGUE OPPOSITE'S TABLE

09:28AM  12   THERE, BUT THAT'S THE BEST THAT WE CAN DO AS FAR AS A LECTERN.

09:28AM  13       I DON'T KNOW WHAT THE PARTIES -- HOW THE PARTIES FEEL

09:28AM  14   ABOUT -- WELL, THERE'S NO WAY TO DO IT THAT IS EFFICIENT.  IF

09:28AM  15   YOU STAND BY THE MICROPHONE THERE, THEN YOU'RE FAR AWAY FROM

09:28AM  16   OUR JURY BOX AND YOU'RE SPEAKING OVER, ONCE AGAIN, COUNSEL

09:28AM  17   TABLE.

09:28AM  18       WE THOUGHT HAVING THE LECTERN THERE AND PERHAPS IN THE

09:28AM  19   ANGLE THAT WE HAVE THERE AND FOCUSSING TO THE AUDIENCE IS ABOUT

09:29AM  20   THE BEST THAT WE CAN DO.

09:29AM  21              MR. DOWNEY:  THANK YOU, YOUR HONOR.  I RECOGNIZE THE

09:29AM  22   PROBLEMS.  WE'LL DO THE BEST THAT WE CAN.  IF MORE IDEAS OCCUR

09:29AM  23   TO US, WE'LL LET YOU KNOW.

09:29AM  24              THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  THANKS.

09:29AM  25   WE'LL SEE YOU IN A FEW MINUTES.  THANK YOU.

09:29AM  1          THE CLERK:  COURT IS IN RECESS.

09:29AM  2          (RECESS FROM 9:29 A.M. UNTIL 10:04 A.M.)

10:04AM  3          (PROSPECTIVE JURORS IN AT 10:04 A.M.)

10:04AM  4          THE COURT:  THANK YOU.  PLEASE BE SEATED.  THANK YOU

10:04AM  5   FOR YOUR COURTESY.

10:04AM  6          GOOD MORNING EVERYONE.

10:04AM  7          MS. KRATZMANN, I WONDER IF YOU WOULD PLEASE ADMINISTER THE

10:04AM  8   OATH, PLEASE, TO OUR PROSPECTIVE JURORS.

10:04AM  9          THOSE OF YOU WHO ARE SEATED IN OUR PROSPECTIVE JURY SEATS

10:04AM 10   WITH THE LETTERS, IF YOU WOULD PLEASE STAND AND RAISE YOUR

10:04AM 11   RIGHT HANDS, PLEASE, OUR COURTROOM DEPUTY HAS A QUESTION FOR

10:04AM 12   YOU.

10:04AM 13          (PROSPECTIVE JURORS WERE GIVEN THE OATH.)

10:05AM 14          PROSPECTIVE JURORS:  YES.

10:05AM 15          THE COURT:  THANK YOU VERY MUCH.  PLEASE.  THANK

10:05AM 16   YOU.  GOOD MORNING AGAIN, LADIES AND GENTLEMEN.

10:05AM 17          I APOLOGIZE FOR THE DELAY THIS MORNING.  BUT, LADIES AND

10:05AM 18   GENTLEMEN, YOU HAVE BEEN SUMMONED BY THIS COURT FOR JURY

10:05AM 19   SERVICE IN A CRIMINAL CASE ENTITLED UNITED STATES OF AMERICA

10:05AM 20   VERSUS ELIZABETH HOLMES.

10:05AM 21          IN THIS CASE THE DEFENDANT ELIZABETH HOLMES IS CHARGED

10:05AM 22   WITH WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE FRAUD.  THE

10:05AM 23   INDICTMENT ALLEGES THAT MS. HOLMES WAS THE CHIEF EXECUTIVE

10:05AM 24   OFFICER, OR CEO, OF THERANOS INCORPORATED WHICH WAS IN THE

10:05AM 25   BLOOD TESTING BUSINESS.

10:05AM 1       THE INDICTMENT ALLEGES THAT THE DEFENDANT AND

10:05AM 2   RAMESH "SUNNY" BALWANI, THERANOS'S CHIEF OPERATING OFFICER, OR

10:06AM 3   COO, AND PRESIDENT, KNOWINGLY AND INTENTIONALLY DEVISED A

10:06AM 4   SCHEME OR PLAN TO DEFRAUD INVESTORS IN THERANOS AND PAYING

10:06AM 5   CUSTOMERS OF THERANOS.

10:06AM 6       THE CHARGES ARE ONLY ALLEGATIONS AND ARE NOT EVIDENCE.

10:06AM 7   THE DEFENDANT HAS ENTERED A PLEA OF NOT GUILTY TO ALL OF THE

10:06AM 8   CHARGES AND IS PRESUMED TO BE INNOCENT.  IT WILL BE THE

10:06AM 9   RESPONSIBILITY OF THE GOVERNMENT THROUGH THE TRIAL TO PROVE

10:06AM 10  THESE CHARGES BEYOND A REASONABLE DOUBT.

10:06AM 11      THE INDICTMENT ALLEGES IN COUNTS ONE AND TWO THAT

10:06AM 12  MS. HOLMES VIOLATED 18 UNITED STATES CODE SECTION 1349,

10:06AM 13  CONSPIRACY TO COMMIT WIRE FRAUD.

10:06AM 14      AND IN COUNTS THREE, FOUR, FIVE, SIX, SEVEN, EIGHT, NINE,

10:06AM 15  TEN, ELEVEN, AND TWELVE, WITH WIRE FRAUD IN VIOLATION OF UNITED

10:07AM 16  STATES CODE SECTION 1343.

10:07AM 17      NOW, THE INDICTMENT IS NOT EVIDENCE OF ANY KIND.  IT IS

10:07AM 18  THE CHARGING DOCUMENT THAT IS FILED IN THIS CASE.

10:07AM 19      TO THESE CHARGES MS. HOLMES HAS PLEADED NOT GUILTY, AND

10:07AM 20  THIS IS AN ABSOLUTE DENIAL OF THE CHARGES.  IT WILL BE THE

10:07AM 21  PURPOSE OF THIS TRIAL FOR YOU TO DETERMINE IF THE GOVERNMENT

10:07AM 22  HAS MET THEIR BURDEN IN PRESENTING THEIR CASE TO YOU.

10:07AM 23      NOW, BEFORE WE BEGIN, I WANT TO TALK WITH YOU A LITTLE BIT

10:07AM 24  ABOUT JURY SERVICE.  IT'S VERY IMPORTANT, AND AGAIN, I WELCOME

10:07AM 25  YOU TO THE COURT AND I THANK YOU AGAIN FOR YOUR SERVICE.

10:07AM 1      NOW, I'D LIKE TO EXPLAIN AND DESCRIBE FOR YOU HOW THE

10:07AM 2  TRIAL WILL GO AND BE CONDUCTED, AND WHAT YOU, AND I, AND THE

10:07AM 3  LAWYERS WILL BE DOING.

10:07AM 4      NOW, FIRST OF ALL, WHEN I REFER TO THE GOVERNMENT, I MEAN

10:07AM 5  MR. ROBERT LEACH, MS. KELLY VOLKAR, MR. JOHN BOSTIC, AND

10:07AM 6  MR. JEFF SCHENK WHO ARE THE ASSISTANT UNITED STATES ATTORNEYS

10:08AM 7  PROSECUTING THIS CASE.

10:08AM 8      MR. LEACH, WOULD YOU INTRODUCE YOUR TEAM, PLEASE?

10:08AM 9          MR. LEACH:  THANK YOU, YOUR HONOR, YES.

10:08AM 10      GOOD MORNING, EVERYONE.  MY NAME IS ROBERT LEACH.  WITH ME

10:08AM 11  IS JOHN BOSTIC, JEFF SCHENK, KELLY VOLKAR.

10:08AM 12      TO MY RIGHT IS SPECIAL AGENT ADDY HERNANDEZ WITH THE FBI,

10:08AM 13  AND SEATED AT THE TABLE HERE IS MADDI WACHS, WHO IS A PARALEGAL

10:08AM 14  IN MY OFFICE.  GOOD MORNING EVERYBODY.

10:08AM 15          THE COURT:  THANK YOU.

10:08AM 16      WHEN I REFER TO DEFENSE COUNSEL I MEAN MR. KEVIN DOWNEY,

10:08AM 17  MR. LANCE WADE, MS. AMY SAHARIA, WHO I DON'T BELIEVE IS WITH US

10:08AM 18  TODAY, MS. KATHERINE TREFZ, WHO ARE THE ATTORNEYS REPRESENTING

10:08AM 19  MS. HOLMES.

10:08AM 20      WOULD YOU PLEASE INTRODUCE YOUR TEAM, MR. DOWNEY?

10:08AM 21          MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

10:08AM 22      GOOD MORNING, LADIES AND GENTLEMEN.  MY NAME IS

10:08AM 23  KEVIN DOWNEY AND I REPRESENT THE DEFENDANT IN THIS CASE,

10:08AM 24  ELIZABETH HOLMES, WHO IS SEATED AT COUNSEL TABLE.

10:09AM 25      AS YOUR HONOR SAYS, THERE ARE A FEW COUNSEL ASSISTING IN

10:09AM 1    THAT EFFORT.

10:09AM 2         THIS IS MR. LANCE WADE, THIS IS MS. KATHERINE TREFZ, AND

10:09AM 3    THIS IS MR. JOHN CLINE WHO SERVES WITH US AS COCOUNSEL IN THE

10:09AM 4    CASE.

10:09AM 5         SEATED AT THE TABLE IS MS. ELIZABETH HOLMES, WHO YOU WILL

10:09AM 6    BE HEARING ABOUT THROUGHOUT THE TRIAL.

10:09AM 7         THANK YOU FOR BEING HERE.

10:09AM 8          THE COURT:  THANK YOU, MR. DOWNEY.

10:09AM 9         I APOLOGIZE, MR. CLINE.  I DIDN'T SEE YOU HIDDEN IN THE

10:09AM 10   CORNER THERE.  I'M SORRY, SIR.

10:09AM 11        LADIES AND GENTLEMEN, I THINK YOU'VE RECEIVED A SCHEDULE,

10:09AM 12   AND THIS CASE IS EXPECTED TO TAKE APPROXIMATELY 13 WEEKS OF

10:09AM 13   EVIDENCE IN COURT.  IT COULD BE A BIT LONGER.

10:09AM 14        THIS MORNING WE WILL BEGIN SELECTING JURORS WHO WILL SIT

10:09AM 15   TO HEAR THIS CASE.  THIS PROCESS INVOLVES INTERVIEWING SEPARATE

10:09AM 16   PANELS OF POTENTIAL JURORS OVER THE COURSE OF TODAY AND PERHAPS

10:09AM 17   TOMORROW.

10:09AM 18        AFTER OUR SESSION TODAY, YOU WILL BE PERMITTED TO LEAVE

10:10AM 19   THE COURTHOUSE.  YOU WILL BE NOTIFIED BY THE COURT WHETHER AND

10:10AM 20   WHEN YOU SHOULD RETURN TO THE COURTHOUSE.

10:10AM 21        WE'LL THEN RETURN TO COMPLETE THIS PROCESS AND WE WILL

10:10AM 22   THEN BEGIN THE TRIAL ONCE WE HAVE A JURY.

10:10AM 23        YOU SEE THE SCHEDULES ON YOUR SEATS, AND ACCORDING TO THIS

10:10AM 24   SCHEDULE, JURY DELIBERATIONS ARE ANTICIPATED TO BEGIN THE FIRST

10:10AM 25   OR SECOND WEEK OF DECEMBER.  IT COULD BE SOONER.  THESE ARE ALL

10:10AM  1    APPROXIMATIONS.

10:10AM  2         THIS MAY CHANGE, AND, OF COURSE, I'LL KEEP YOU INFORMED AS

10:10AM  3    TO OUR SCHEDULE.

10:10AM  4         NOW, AS YOU SAW IN THE QUESTIONNAIRES THAT YOU FILLED

10:10AM  5    OUT -- AND LET ME THANK YOU FOR COMING IN AND FILLING OUT THOSE

10:10AM  6    QUESTIONNAIRES.  THEY'RE VERY HELPFUL TO US.

10:10AM  7         OUR PROPOSED DAYS IN COURT WILL BE ON TUESDAYS,

10:10AM  8    WEDNESDAYS, AND FRIDAYS, POTENTIALLY FROM 9:00 A.M. TO

10:10AM  9    2:00 P.M.

10:10AM  10        NOW, IT MAY BE THAT WE CHANGE THAT SCHEDULE TO ADD SOME

10:11AM  11   TIME AND CHANGE DAYS AND I, OF COURSE, WILL DISCUSS THIS WITH

10:11AM  12   YOU IN ADVANCE OF ANY CHANGE.

10:11AM  13        I ANTICIPATE, ACCORDING TO THIS SCHEDULE NOW, THAT WE'LL

10:11AM  14   TAKE ONE BREAK OF PERHAPS 30 TO 45 MINUTES, AND WE MAY TAKE

10:11AM  15   SHORTER BREAKS IF APPROPRIATE AND AS NEEDED.

10:11AM  16        NOW, BECAUSE OF THE LENGTH OF OUR TRIAL, THIS SCHEDULE

10:11AM  17   HOPES TO ACCOMPLISH THE TAKING OF EVIDENCE IN THE TRIAL AND

10:11AM  18   AVOID THE STRESS AND FATIGUE THAT MIGHT ARISE FROM AN ALL-DAY

10:11AM  19   EVERY DAY SCHEDULE.  THAT IS THE NORM FOR SHORTER TRIALS.

10:11AM  20        NOW, WE ARE CONDUCTING OUR CASE IN THE MIDST OF THE COVID

10:11AM  21   CRISIS, AND I WANT TO TELL YOU THAT'S ANOTHER REASON WHY I

10:11AM  22   SHORTENED THE SCHEDULE TO ALLOW FOR US -- AND I'LL TALK ABOUT

10:11AM  23   THAT IN A MOMENT -- TO ALLOW FOR US TO HAVE AS LIMITED TIME AS

10:11AM  24   WE CAN, BUT YET TO EFFICIENTLY PROGRESS WITH THE COURT AND THE

10:11AM  25   TRIAL.

10:11AM 1     NOW, I ALSO REALIZE THERE ARE OCCASIONS WHEN SOMEONE MAY

10:12AM 2     NEED TO TAKE AN UNSCHEDULED BREAK FOR SOME REASON.

10:12AM 3     IF YOU'RE SEATED AS A JUROR IN THIS CASE AND IF YOU OR

10:12AM 4     ANYONE NEEDS TO TAKE A BREAK FOR WHATEVER REASON, PLEASE LET ME

10:12AM 5     KNOW AND WE CAN ACCOMPLISH THAT WITH A RECESS.

10:12AM 6     NOW, LADIES AND GENTLEMEN, AS TO THE TRIAL, THE FIRST STEP

10:12AM 7     IN THE TRIAL FOLLOWING THE SELECTION OF THE JURY IS THE

10:12AM 8     GOVERNMENT'S OPENING STATEMENT.  THE DEFENSE MAY CHOOSE TO GIVE

10:12AM 9     AN OPENING STATEMENT FOLLOWING THE GOVERNMENT OR AT THE

10:12AM 10    BEGINNING OF THE DEFENSE CASE.

10:12AM 11    THE PURPOSE OF AN OPENING STATEMENT IS TO GIVE YOU AND

10:12AM 12    PROVIDE YOU AN OVERVIEW OF WHAT THE ATTORNEYS EXPECT THE

10:12AM 13    EVIDENCE WILL SHOW.

10:12AM 14    NEXT, THE GOVERNMENT WILL OFFER THEIR EVIDENCE.  EVIDENCE

10:12AM 15    USUALLY INCLUDES WITNESSES' TESTIMONY AND EXHIBITS.

10:12AM 16    AFTER THE GOVERNMENT PRESENTS THEIR EVIDENCE, THE DEFENSE

10:12AM 17    MAY ALSO PRESENT EVIDENCE, BUT IS NOT REQUIRED TO DO SO.

10:13AM 18    BECAUSE MS. HOLMES IS PRESUMED TO BE INNOCENT, SHE DOES

10:13AM 19    NOT HAVE TO PROVE THAT SHE IS NOT GUILTY.

10:13AM 20    NOW, YOU'VE SEEN ON YOUR CHARTS AND YOUR QUESTIONNAIRES A

10:13AM 21    LIST OF WITNESSES.

10:13AM 22    COUNSEL, CAN I GET AGREEMENT FROM YOU THAT I NEED NOT READ

10:13AM 23    THE ENTIRETY OF THE WITNESS LIST ON THE RECORD NOW, BUT I CAN

10:13AM 24    REFER AND ASK THE JURORS TO LOOK AT THAT LIST?

10:13AM 25        MR. DOWNEY:  THE DEFENSE AGREES, YOUR HONOR.

10:13AM  1          MR. SCHENK:  SO AGREED.

10:13AM  2          THE COURT:  THANK YOU.

10:13AM  3      LADIES AND GENTLEMEN, IN CASES -- IN TRIALS IT'S QUITE

10:13AM  4  NORMAL FOR ME TO READ THE WITNESS LIST OUT.  AS YOU SEE IN THE

10:13AM  5  INFORMATION YOU HAVE, THE WITNESS, THE PROPOSED WITNESS LIST IS

10:13AM  6  QUITE LONG.  I DO WANT YOU TO LOOK AT IT AND TO REFER TO IT,

10:13AM  7  AND I KNOW YOU DID THIS WHEN YOU FILLED OUT THE QUESTIONNAIRE

10:13AM  8  AND ANSWERED ONE OF THE QUESTIONS THAT ASKED IF YOU KNEW OR

10:13AM  9  WERE FAMILIAR WITH ANYONE ON THAT LIST.

10:13AM  10      BUT PLEASE TAKE A MOMENT TO REVIEW THAT LIST NOW, IF YOU

10:13AM  11  WOULD, PLEASE.

10:14AM  12      WHILE YOU'RE DOING THAT, I SHOULD TELL YOU THAT THE

10:14AM  13  PARTIES ARE NOT REQUIRED AND MIGHT NOT WISH TO CALL ALL OF

10:14AM  14  THESE WITNESSES AND THEY MAY FIND IT NECESSARY TO CALL OTHER

10:14AM  15  WITNESSES.

10:14AM  16      NOW, IT MAY OCCUR THAT THE PARTIES STIPULATE TO A

10:14AM  17  WITNESS'S TESTIMONY OR AN EXHIBIT.  THIS MEANS THAT THE PARTIES

10:14AM  18  HAVE AGREED THAT THE STATEMENT, THE TESTIMONY, OR THE EXHIBIT

10:14AM  19  MAY BE INTRODUCED INTO EVIDENCE.

10:14AM  20      AFTER THE JURY HAS HEARD ALL OF THE EVIDENCE AND AFTER THE

10:14AM  21  ATTORNEYS HAVE GIVEN THEIR FINAL ARGUMENTS, I WILL THEN

10:14AM  22  INSTRUCT YOU ON THE LAW THAT APPLIES TO THE CASE.

10:14AM  23      AFTER YOU HAVE HEARD THE ARGUMENTS AND THE INSTRUCTIONS,

10:14AM  24  YOU WILL THEN RETIRE TO THE JURY ROOM TO DELIBERATE THE MERITS

10:14AM  25  OF THE CASE AND THEN TO RETURN WITH YOUR FINDINGS.

10:15AM 1       NOW, JURY SERVICE IS AN OBLIGATION.  IT MAY BE

10:15AM 2   INCONVENIENT TO YOU, BUT I HOPE YOU VIEW IT AS A PRIVILEGE TO

10:15AM 3   SERVE YOUR COMMUNITY AND TO PARTICIPATE IN YOUR SYSTEM OF

10:15AM 4   JUSTICE.

10:15AM 5       WE ALL KNOW AND WE'RE SENSITIVE TO THE FACT THAT NONE OF

10:15AM 6   YOU ARE HERE BECAUSE YOU HAVE NOTHING ELSE TO DO WITH YOUR

10:15AM 7   TIME, OR PERHAPS THAT YOU VOLUNTEERED FOR JURY DUTY OUT OF THE

10:15AM 8   GOODNESS OF YOUR HEARTS.

10:15AM 9       I RECOGNIZE THAT JURY SERVICE IS AN IMPOSITION ON EACH OF

10:15AM 10  YOU.  THIS SERVICE TAKES YOU FROM THOSE WHO NEED YOU AND RELY

10:15AM 11  ON YOU AT YOUR WORKPLACES AND AT YOUR HOMES.

10:15AM 12      FOR MANY OF US WORKING IN THE JUSTICE SYSTEM TRYING TO

10:15AM 13  IMPROVE THE QUALITY OF JUSTICE WHILE MAINTAINING FAIRNESS

10:15AM 14  ACROSS THE BOARD IS A CHALLENGE.  IT'S A CHALLENGE TO DELIVER

10:15AM 15  ON THE PROMISE OF A JURY OF ONE'S PEERS, A TRUE CROSS-SECTION

10:15AM 16  OF OUR COMMUNITY, TO EVERYONE, EXCUSE ME, WHO ENTERS OUR

10:16AM 17  COURTS.

10:16AM 18      IT'S A PROMISE THAT WE ENDEAVOR TO FULFILL AS WE RECOGNIZE

10:16AM 19  WE OURSELVES WOULD RELY ON THAT PROMISE IF WE WERE EVER TO COME

10:16AM 20  INTO THE JUSTICE SYSTEM AS A PARTY.

10:16AM 21      OUR CONSTITUTION GUARANTEES THE RIGHT TO A JURY TRIAL AND

10:16AM 22  THAT IS THE BASIS FOR ALL OF OUR OBLIGATIONS, YOURS AS WELL AS

10:16AM 23  MINE, TO SERVE AS JURORS.

10:16AM 24      I SHOULD LET YOU KNOW I GET CALLED AS A JUROR.  I WAS

10:16AM 25  SUMMONED ABOUT TWO OR THREE MONTHS AGO TO SERVE AS A JUROR IN A

10:16AM 1  CASE IN MY COMMUNITY.  SO JUDGES ARE NOT IMMUNE FROM THE

10:16AM 2  SERVICE.

10:16AM 3     YOU KNOW, FOR SOME REASON, REGRETTABLY I HAVE NEVER BEEN

10:16AM 4  SELECTED AS A JUROR.  I JUST DON'T UNDERSTAND THAT.

10:16AM 5     (LAUGHTER.)

10:16AM 6       THE COURT:  BUT MAYBE ONE DAY.

10:16AM 7     AND LET'S REFLECT FOR JUST A MOMENT.  IT IS SIGNIFICANT

10:16AM 8  NOW TO PARTICIPATE IN YOUR SERVICE SO OUR COMMUNITY, OUR

10:16AM 9  COUNTRY, AND REALLY THE WORLD CAN OBSERVE THAT EVEN DURING THE

10:16AM 10  CHALLENGE OF A PANDEMIC OUR COURTS ARE OPEN AND OUR SYSTEM,

10:17AM 11  YOUR SYSTEM OF JUSTICE ENDURES.

10:17AM 12     NOW, I WANT TO TAKE JUST A MOMENT.  I'VE TALKED ABOUT THE

10:17AM 13  COVID PROTOCOLS.  I WOULD LIKE TO SHARE WITH YOU, AND I HOPE

10:17AM 14  THIS GIVES YOU SOME COMFORT.

10:17AM 15     FIRST OF ALL, WE WILL STRIVE TO ENSURE YOUR PROTECTION,

10:17AM 16  SAFETY, AND GOOD HEALTH.  WE WILL ENGAGE DISTANCING AND FACE

10:17AM 17  MASKS AS YOU HAVE SEEN.

10:17AM 18     NOW, IF YOU ARE VACCINATED, OUR MEDICAL INFORMATION

10:17AM 19  INFORMS THAT THAT FACT SIGNIFICANTLY ENHANCES YOUR SAFETY.

10:17AM 20     NOW, PARTIES IN COURT WILL WEAR MASKS.  WITNESSES AND

10:17AM 21  PARTIES MAY BE ABLE TO REMOVE THEIR MASKS OR WEAR A CLEAR FACE

10:17AM 22  SHIELD WHEN THEY'RE TESTIFYING HERE.

10:17AM 23     YOU HAVE SEEN THE PLEXIGLASS THAT WE'VE ALSO ENGAGED.

10:17AM 24     WE WILL HAVE AIR PURIFIERS, THERE'S ONE AT THE WITNESS

10:18AM 25  STAND NOW, AND WE'LL HAVE ONE AT EACH COUNSEL TABLE.  THOSE

10:18AM  1    HAVEN'T ARRIVED YET, BUT WE EXPECT TO HAVE THOSE SOON.

10:18AM  2         WE MAY BE ABLE TO PROVIDE ANOTHER AIR PURIFIER SHOULD THE

10:18AM  3    NEED BE REQUESTED NEAR THE JURY BOX, SO KEEP THAT IN MIND.

10:18AM  4         I'D LIKE TO TALK A LITTLE BIT ABOUT OUR BUILDING HERE.

10:18AM  5    THIS COURTHOUSE IS QUITE OLD.  HISTORICALLY WE THOUGHT WE WOULD

10:18AM  6    GET A NEW COURTHOUSE ABOUT 15, 18 YEARS AGO.  UNFORTUNATELY

10:18AM  7    THOSE EFFORTS FELL SHORT.  CONGRESS, HOWEVER, DID PROVIDE THE

10:18AM  8    COURT WITH SOME MONEY TO PURCHASE A LAND SITE, SITE ACQUISITION

10:18AM  9    MONEY.  IT WAS ABOUT $10 MILLION AT THAT TIME.

10:18AM 10         UNFORTUNATELY, CONGRESS DECIDED THEY WEREN'T GOING TO

10:18AM 11    BUILD A NEW COURTHOUSE HERE IN SAN JOSE, BUT THEY DID ALLOW US

10:18AM 12    TO KEEP THE MONEY.

10:18AM 13         I SHOULD TELL YOU ABOUT FOUR YEARS AGO, I THINK ABOUT 7 OR

10:18AM 14    8 MILLION OF THOSE DOLLARS WERE SPENT ON THE COURTHOUSE.  SOME

10:19AM 15    OF IT WAS SPENT ON OUR ENTRYWAY, PUTTING NEW GLASS IN, THAT

10:19AM 16    NICE WOOD PANELING THAT YOU SAW AND ENJOYED ON YOUR WAY IN,

10:19AM 17    SOME OF THE MONEY WAS SPENT THERE.

10:19AM 18         BUT I HAVE TO BE HONEST, THE MAJORITY OF THE MONEY WAS

10:19AM 19    SPENT ON SOMETHING THAT YOU CANNOT SEE.  IT'S ON OUR ROOF.  WE

10:19AM 20    HAVE A NEW HVAC SYSTEM.  AND I'M TOLD YOU'RE THE TAXPAYERS,

10:19AM 21    THANK YOU VERY MUCH FOR SPENDING $7 MILLION ON OUR HVAC SYSTEM,

10:19AM 22    AND IT SITS ABOVE US NOW AND I WANT TO TALK ABOUT THAT.  WE

10:19AM 23    HAVE UPGRADED THIS SYSTEM TO MERV 14 FILTRATION.  NOW, THE

10:19AM 24    CURRENT GUIDANCE TELLS THAT WE SHOULD INSTALL A NEW

10:19AM 25    CONSTRUCTION MERV 13 OR BETTER, SO WE HAVE MERV 14 FILTRATION

10:19AM 1   IN THIS COURTHOUSE.

10:19AM 2        THIS SYSTEM IS ALSO -- UNFORTUNATELY, AS WE EXPERIENCE

10:19AM 3   NOW, THE SMOKE FROM WILD FIRES, THIS SYSTEM IS EXCELLENT AT

10:19AM 4   FILTERING THOSE -- AIR THAT COME FROM THOSE FIRES.

10:20AM 5        NOW, I MADE AN INQUIRY ABOUT CIRCULATION IN MY COURTROOM,

10:20AM 6   THIS COURTROOM THAT YOU'RE IN, AND I'M INFORMED THAT THE AIR IN

10:20AM 7   THIS COURTROOM CIRCULATES AT A RATE OF -- IT'S CALLED ACH --

10:20AM 8   ACH 6.3, WHICH IS AIR CHANGES PER HOUR.

10:20AM 9        NOW, WHAT THAT MEANS IS THAT THE AIR IS COMPLETELY

10:20AM 10  CIRCULATED IN THIS COURTROOM APPROXIMATELY EVERY TEN MINUTES.

10:20AM 11  IT'S A GOOD SYSTEM.  SO OUR AIR CIRCULATES, IT GOES THROUGH OUR

10:20AM 12  MERV 14 FILTERS, AND I JUST WANT YOU TO KNOW THAT THIS IS AS

10:20AM 13  SAFE AS WE CAN ACCOMPLISH IT WITH OUR HVAC SYSTEM.  I HOPE THAT

10:20AM 14  PROVIDES YOU SOME COMFORT.

10:20AM 15       THE SYSTEM RUNS TWO HOURS PRE AND POST OCCUPANCY.  THAT

10:20AM 16  MEANS WE START IT UP ABOUT 5:00 A.M. TO GET THE AIR CIRCULATED,

10:20AM 17  AND IT SHUTS DOWN ABOUT TWO HOURS AFTER CLOSING TIME, THAT IS

10:20AM 18  ABOUT 7:00 P.M.

10:20AM 19       NOW, GSA, THE GENERAL SERVICE ADMINISTRATION, THEY ARE

10:21AM 20  RESPONSIBLE FOR OUR BUILDING AND THEY HAVE ADOPTED CLEANING

10:21AM 21  GUIDELINES FROM THE CENTER FOR DISEASE CONTROL, THE CDC, AND

10:21AM 22  THESE INCLUDE ROUTINE CLEANING AND DISINFECTION OF HIGH TOUCH

10:21AM 23  SERVICES AND COMMON AND HIGH TRAFFIC AREAS.

10:21AM 24       WE HAVE FACE MASKS AND SANITIZERS TO PROVIDE YOU AS

10:21AM 25  NEEDED, SO PLEASE FEEL FREE TO REQUEST THAT FROM STAFF SHOULD

10:21AM 1     YOU NEED SOMETHING.

10:21AM 2         NOW, THE SCHEDULE I TALKED TO YOU ABOUT, OUR SCHEDULE

10:21AM 3     SEEKS TO KEEP THE TIME IN COURT SPACE SO AS NOT TO SIT MORE

10:21AM 4     THAN TWO HOURS A TIME, AT LEAST INITIALLY.  WE'LL TRY TO SPACE

10:21AM 5     BREAKS WITH AS MUCH FREQUENCY AS POSSIBLE WHILE ENSURING THE

10:21AM 6     EFFICIENT AND ORDERLY TRIAL PROCESS TO PROCEED.

10:21AM 7         NOW, THE JURY ROOM FOR DELIBERATING JURORS AND DURING

10:21AM 8     BREAKS, YOU WILL HAVE, AS JURORS, THE ENTIRETY OF MY

10:21AM 9     COLLEAGUE'S COURTROOM NEXT DOOR, NOT JUST THE SMALL JURY ROOM,

10:21AM 10    BUT THE ENTIRE COURTROOM WILL BE AVAILABLE TO YOU FOR YOUR

10:22AM 11    DELIBERATIONS, AND THIS WILL ALLOW DISTANCING DURING YOUR

10:22AM 12    MEETING AND DELIBERATIONS.

10:22AM 13        WE'VE ALSO ARRANGED FOR SOME LIGHT BREAKFAST ITEMS, FRUIT,

10:22AM 14    ROLLS, AND OTHER LIGHT BREAKFAST ITEMS, AND I THINK WE'LL BE

10:22AM 15    ABLE TO PROVIDE THOSE AT LEAST AT A MINIMUM ONE DAY A WEEK TO

10:22AM 16    SPAN THOSE THREE DAYS.

10:22AM 17        I'M TOLD THAT THE SERVICE WE USE IS QUITE GENEROUS, AND

10:22AM 18    OTHER JURORS HAVE REALLY ENJOYED THE BAGELS I'M TOLD, SO YOU

10:22AM 19    CAN LOOK FORWARD TO THAT.

10:22AM 20        NOW, LET ME TALK A LITTLE BIT ABOUT HARDSHIPS.  LET ME ASK

10:22AM 21    FIRST, IS THERE ANY MEMBER OF THE PANEL WHO HAS ANY SPECIAL

10:22AM 22    DISABILITY OR PROBLEM THAT WOULD MAKE SERVING AS A MEMBER OF

10:22AM 23    THIS JURY DIFFICULT OR IMPOSSIBLE?

10:22AM 24        LET ME SAY SOMETHING.  WE HAVE ASSISTED LISTENING DEVICES,

10:22AM 25    HEADPHONES.  IF SOMEONE NEEDS A HEADPHONE, YOU SHOULD PLEASE

```
10:22AM   1    RAISE YOUR HAND AND WE CAN GET THAT TO YOU.
10:23AM   2         THERE MAY BE SOME INDIVIDUALS WHO HAVE OTHER HEALTH
10:23AM   3    ISSUES, BACK ISSUES, SEATING ISSUES THAT WE CAN PROVIDE SOME
10:23AM   4    RELIEF FOR THAT.  WE'VE DONE THAT IN THE PAST WITH PILLOWS AND
10:23AM   5    CUSHIONS AND OTHER THINGS.
10:23AM   6         IS THERE ANYONE IN THE PANEL WHO HAS ANY SPECIAL
10:23AM   7    DISABILITY OR PROBLEM THAT THEY WOULD LIKE TO RAISE NOW?
10:23AM   8         I SEE NO HANDS.
10:23AM   9         OH, I SEE A HAND.  YES, SIR.  COULD YOU JUST TELL US WHAT
10:23AM  10    SEAT YOU'RE IN?
10:23AM  11              PROSPECTIVE JUROR:  JUROR SEAT 49.
10:23AM  12              THE COURT:  WHAT SEAT ARE YOU IN?
10:23AM  13              PROSPECTIVE JUROR:  I'M IN U.
10:23AM  14              THE COURT:  WHAT SEAT?
10:23AM  15              THE CLERK:  U.
10:23AM  16              THE COURT:  YES, MR. BURGE.  WHAT WOULD YOU LIKE ME
10:23AM  17    TO KNOW?
10:23AM  18              PROSPECTIVE JUROR:  I HAVE A HEARING ISSUE.
10:23AM  19              THE COURT:  OKAY.
10:23AM  20              PROSPECTIVE JUROR:  YOU RAISED THAT YOU HAVE
10:23AM  21    HEADPHONES.
10:23AM  22              THE COURT:  YES.
10:23AM  23              PROSPECTIVE JUROR:  I'M ACTUALLY HAVING A HARD TIME
10:23AM  24    HEARING YOU.
10:23AM  25              THE COURT:  THANK YOU.  WE'RE GOING TO GET YOU
```

| | | |
|---|---|---|
| 10:23AM | 1 | SOMETHING RIGHT NOW.  THANK YOU. |
| 10:24AM | 2 | (PAUSE IN PROCEEDINGS.) |
| 10:24AM | 3 | THE COURT:  MR. BURGE, I'M GOING TO LET YOU PUT |
| 10:24AM | 4 | THOSE ON AND SEE IF THEY'RE OPERATING APPROPRIATELY. |
| 10:24AM | 5 | THE CLERK:  THE LETTER HAS TO FACE OUT. |
| 10:25AM | 6 | THE COURT:  I THINK IT'S BETTER IF YOU PLACE IT |
| 10:25AM | 7 | UNDER YOUR CHIN.  I KNOW IT'S COUNTERINTUITIVE TO DO THAT. |
| 10:25AM | 8 | RIGHT.  I THINK THAT WORKS BETTER.  GREAT.  I SAW YOU GIVE A |
| 10:25AM | 9 | THUMBS UP. |
| 10:25AM | 10 | MR. BURGE, LET ME KNOW IF THAT FAILS TO FUNCTION OR YOU |
| 10:25AM | 11 | NEED SOME ATTENTION TO THAT AND WE'LL REPLACE THAT FOR YOU. |
| 10:25AM | 12 | ALL RIGHT, SIR? |
| 10:25AM | 13 | PROSPECTIVE JUROR:  ALL RIGHT.  THANK YOU. |
| 10:25AM | 14 | THE COURT:  ANYBODY ELSE? |
| 10:25AM | 15 | WHY DON'T YOU COME TO THE MICROPHONE, PLEASE. |
| 10:25AM | 16 | PROSPECTIVE JUROR:  73. |
| 10:25AM | 17 | THE CLERK:  HE'S IN SEAT DD, YOUR HONOR. |
| 10:25AM | 18 | THE COURT:  THANK YOU.  YES, SIR. |
| 10:25AM | 19 | PROSPECTIVE JUROR:  SO THESE DAYS I'M HAVING ISSUES. |
| 10:25AM | 20 | THE COURT:  CAN YOU SPEAK INTO THE MICROPHONE?  YOU |
| 10:25AM | 21 | CAN KEEP YOUR MASK ON, JUST SPEAK INTO THE MICROPHONE. |
| 10:25AM | 22 | PROSPECTIVE JUROR:  SO I HAVE SOME CHRONIC ISSUES, |
| 10:25AM | 23 | AND I HAVE A LITTLE BIT MORE THAN USUAL THESE DAYS. |
| 10:26AM | 24 | ONE SYMPTOM IS THAT SITTING FOR LONG PERIODS OF TIME |
| 10:26AM | 25 | CAUSES MY FACE, MY HANDS, AND MY FEET TO SWELL. |

10:26AM   1                THE COURT:  YES.

10:26AM   2                PROSPECTIVE JUROR:  AND THAT HAS NOT BEEN A PLEASANT

10:26AM   3     EXPERIENCE FOR ME.  IT CAUSES A LOT OF DISTRACTION.

10:26AM   4                THE COURT:  I SEE.  IF WE, IF WE WERE TO AFFORD --

10:26AM   5     IF YOU WERE SEATED AS A JUROR, SIR, AND YOU WERE PROVIDED

10:26AM   6     BREAKS AND YOU WERE PERMITTED TO STAND, WOULD THAT BE OF SOME

10:26AM   7     ASSISTANCE?

10:26AM   8                PROSPECTIVE JUROR:  I THINK SO.  I'M NOT REALLY

10:26AM   9     SURE, BUT I THINK SO.

10:26AM  10                THE COURT:  YES.  AND THANK YOU FOR BRINGING THIS TO

10:26AM  11     MY ATTENTION.  WE HAVE HAD JURORS WITH SIMILAR ISSUES, AND WHAT

10:26AM  12     WE CAN IS ARRANGE SEATING SUCH THAT YOU CAN STAND OR STRETCH

10:26AM  13     OR -- AND WE'LL TRY TO TAKE BREAKS AS NEEDED.

10:26AM  14         WOULD THAT BE OF ASSISTANCE TO YOU?

10:26AM  15                PROSPECTIVE JUROR:  I THINK SO.  YES, IT COULD.

10:26AM  16                THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

10:26AM  17     YOU, SIR.

10:27AM  18         ANYONE ELSE WITH AN ISSUE THAT YOU WOULD LIKE TO BRING TO

10:27AM  19     MY ATTENTION?

10:27AM  20                PROSPECTIVE JUROR:  IS THIS FOR LIKE PHYSICAL ISSUES

10:27AM  21     OR SHOULD I BRING UP A CIRCUMSTANTIAL ISSUE?

10:27AM  22                THE COURT:  I'M SORRY.  YOU'RE MS. WALLWORK?

10:27AM  23                PROSPECTIVE JUROR:  I AM.

10:27AM  24                THE COURT:  I WAS ASKING WITH ABOUT PHYSICAL THINGS

10:27AM  25     NOW.  IS THERE ANYTHING YOU WOULD LIKE ME TO KNOW ABOUT THAT?

10:27AM 1          PROSPECTIVE JUROR:  NO.  I JUST WANTED TO MAKE SURE

10:27AM 2   I DIDN'T MISS MY WINDOW.

10:27AM 3          THE COURT:  OKAY.  I THINK I CAN ANTICIPATE

10:27AM 4   SOMETHING HERE, BUT WE'LL TALK ABOUT THAT IN A MOMENT.  THANK

10:27AM 5   YOU.

10:27AM 6       NO, NO, I DON'T WANT TO DISCOURAGE YOU FROM RAISING

10:27AM 7   ANYTHING.  THANK YOU VERY MUCH.

10:27AM 8       ALL RIGHT.  WE NOW COME TO THAT PORTION -- ANYONE ELSE?

10:27AM 9       I SEE NO HANDS.

10:27AM 10      WE NOW COME TO THAT PORTION OF THE TRIAL WHERE I WILL ASK

10:27AM 11  YOU SOME QUESTIONS REGARDING YOUR QUALIFICATIONS TO SIT AS

10:27AM 12  JURORS IN THIS CASE.

10:27AM 13      COUNSEL WILL ALSO HAVE THE OPPORTUNITY TO ASK YOU SOME

10:27AM 14  QUESTIONS AS WELL.

10:28AM 15      NOW, THIS PROCESS IS VERY IMPORTANT BECAUSE THE COURT AND

10:28AM 16  THE PARTIES WANT FAIR AND IMPARTIAL JURORS, JURORS WHO ARE FREE

10:28AM 17  FROM ANY PRECONCEIVED IDEA, BELIEF, ATTITUDE, OR BIAS, OR

10:28AM 18  PREJUDICE ABOUT THE OFFENSES CHARGED OR THE ACCUSED, AND JURORS

10:28AM 19  WHO WILL DECIDE THIS CASE ONLY AFTER HEARING ALL OF THE

10:28AM 20  EVIDENCE IN THIS COURTROOM, THE ARGUMENTS OF COUNSEL, THE LAW

10:28AM 21  GIVEN TO YOU BY THE COURT, AND THEN ONLY AFTER DELIBERATING

10:28AM 22  WITH YOUR FELLOW JURORS BY THE OATH THAT YOU HAVE TAKEN, YOU

10:28AM 23  ARE OBLIGATED TO ANSWER ALL OF THESE QUESTIONS TRUTHFULLY AND

10:28AM 24  COMPLETELY.  YOU WILL HELP THE PROCESS BY VOLUNTEERING

10:28AM 25  INFORMATION ABOUT YOUR EXPERIENCES, FEELINGS, OR BIASES, IF

10:28AM 1    ANY, EVEN THOUGH YOU BELIEVE YOU CAN PUT ASIDE THOSE

10:28AM 2    EXPERIENCES, FEELINGS, OR BIASES AND SERVE AS A FAIR AND

10:29AM 3    IMPARTIAL JUROR.

10:29AM 4        IF YOU ARE SENSITIVE ABOUT ANSWERING ANY QUESTION, PLEASE

10:29AM 5    TELL ME AND WE CAN DISCUSS THE MATTER PRIVATELY WITH COUNSEL

10:29AM 6    BEING PRESENT.

10:29AM 7        WHAT WE'LL DO IS THAT WE WILL GO INTO THE JURY ROOM BEHIND

10:29AM 8    THIS DOOR HERE WITH OUR COURT REPORTER, AND WE WILL HAVE

10:29AM 9    ABSOLUTE PRIVACY SO YOU CAN SPEAK ABOUT ANY ISSUE IF YOU FEEL

10:29AM 10   THAT'S APPROPRIATE.  JUST LET ME KNOW, AND DON'T BE SHY ABOUT

10:29AM 11   THAT, PLEASE.

10:29AM 12       THIS PROCESS, THIS QUESTIONING PROCESS BY THE COURT AND BY

10:29AM 13   THE LAWYERS SEEKS TO IDENTIFY ANY MATTER, INCLUDING THOSE THAT

10:29AM 14   MIGHT BE CONTROVERSIAL, THAT RAISE AN ISSUE OF BIAS OR

10:29AM 15   INABILITY TO BE FAIR AND IMPARTIAL.

10:29AM 16       NOW, IF ANY JUROR FEELS LIKE AN ISSUE HAS ARISEN AND THEY

10:29AM 17   WOULD LIKE TO, OR YOU THINK IT MIGHT BE BETTER TO SPEAK IN

10:29AM 18   PRIVATE WITH THE COURT AND COUNSEL, PLEASE LET ME KNOW AND WE

10:30AM 19   CAN DO THAT.

10:30AM 20       NOW, FOLKS, IT'S IMPORTANT THAT YOU EXPRESS THESE ISSUES

10:30AM 21   WITH THE PARTIES, THE LAWYERS, AND MYSELF.  WE CAN AND WE WILL

10:30AM 22   MEET PRIVATELY TO ALLOW ANY JUROR TO BE FRANK AND OPEN, AND TO

10:30AM 23   NOT ALLOW ANYTHING SAID TO NEGATIVELY INFLUENCE OR AFFECT ANY

10:30AM 24   OTHER JUROR.  THIS IS IMPORTANT.

10:30AM 25       WHILE WE ALL WANT TO HEAR YOUR CANDID THOUGHTS ON TOPICS,

1    IT IS IMPORTANT THAT EXPRESSIONS ARE HEARTFELT, DO NOT TAINT OR

2    NEGATIVELY IMPACT THE FAIRNESS OF THE PANEL.

3        SO IF YOU FEEL, LADIES AND GENTLEMEN, THAT YOU HAVE AN

4    ISSUE THAT YOU THINK IS IMPORTANT TO YOU, I WANT TO KNOW ABOUT

5    IT.  THESE LAWYERS WANT TO KNOW ABOUT IT.

6        IF YOU FEEL AND YOU'RE THINKING ABOUT SPEAKING ABOUT THIS

7    OR THAT, GEE, IF I SAY WHAT I REALLY FEEL, I MIGHT, I MIGHT

8    SOMEHOW BE STATING SOMETHING THAT MIGHT INAPPROPRIATELY AFFECT

9    ANOTHER JUROR, A STRONG OPINION -- AND LET ME BE CANDID, A

10   STRONG OPINION ABOUT A CASE, THIS HAPPENS IN ALL CASES,

11   SOMETIMES PEOPLE TAKE A POSITION BECAUSE SOMETHING THAT THEY

12   HAVE HEARD, READ, OR SEEN THAT CAUSES THEM TO FORM AN OPINION,

13   AND THEY MIGHT WANT TO EXPRESS THAT IN SOME WAY.  WE WANT TO

14   KNOW ABOUT THAT.

15       BUT WHAT I WANT TO AVOID IS SOMEBODY EXPRESSING A STRONG

16   OPINION THAT MIGHT AFFECT OR OTHERWISE TAINT OTHER MEMBERS OF

17   THE JURY.

18       IF YOU FEEL THAT YOU HAVE STRONG OPINIONS ABOUT SOMETHING

19   REGARDING THIS CASE OR ANYTHING THAT YOU'VE HEARD, SEEN, OR

20   READ, OR YOU THINK YOU WOULD LIKE TO SPEAK PRIVATELY, WE CAN DO

21   THAT, AND I ABSOLUTELY INVITE YOU TO ERR ON THE SIDE OF CAUTION

22   AND TELL ME, "I THINK I SHOULD TALK ABOUT THIS PRIVATELY,

23   JUDGE."  DON'T BE SHY ABOUT THAT.  YOU CAN DO THAT.

24       NOW, IN SELECTING A JURY, EACH SIDE IS PERMITTED A CERTAIN

25   NUMBER OF WHAT ARE CALLED PEREMPTORY CHALLENGES TO PROSPECTIVE

JURORS.  THE ATTORNEY MAY EXCUSE A JUROR BECAUSE THEY FEEL THAT
THIS JUST IS NOT THE RIGHT CASE FOR THAT JUROR.

THERE ARE CHALLENGES FOR CAUSE, AND THESE ARE CHALLENGES
WHERE THE PARTY OR THE COURT FEELS THAT A PROSPECTIVE JUROR
CANNOT SIT ON A CASE BECAUSE OF A BIAS, INTEREST, OR OTHER
INABILITY TO BE FAIR AND IMPARTIAL.

AND THE COURT WILL DECIDE, I WILL DECIDE IF A JUROR SHOULD
BE EXCUSED FOR CAUSE.

THE QUESTIONS OF THE COURT AND COUNSEL AND THE ANSWERS OF
PROSPECTIVE JURORS ASSIST THE ATTORNEYS IN THEIR DECISIONS.

NOW, FOLLOWING MY QUESTIONS AND THE QUESTIONS OF COUNSEL,
THE LAWYERS WILL HAVE AN OPPORTUNITY TO MAKE ANY DECISIONS AS
TO ANY CHALLENGES THAT THEY MIGHT HAVE.  WE WILL TAKE THESE UP
AFTER WE HAVE MET WITH ALL OF THE PANELS THAT HAVE BEEN
SUMMONED IN THIS CASE AND YOU WILL BE NOTIFIED BY THE COURT
WHETHER AND WHEN YOU ARE TO RETURN TO COURT.

WE WILL ALSO SELECT FIVE ALTERNATE JURORS WHO WILL SIT
DURING THE TRIAL.

SHOULD A MEMBER OF THE SEATED 12 JURORS BE UNABLE TO
CONTINUE TO SIT AS A JUROR, THE ALTERNATE JUROR WILL REPLACE
THAT SITTING JUROR AND WILL JOIN THE OTHER JURORS IN
DELIBERATION AT THE CONCLUSION OF THE CASE.

IF THERE IS NO NEED FOR A SUBSTITUTION OF A SITTING JUROR,
THE ALTERNATE JURORS WILL NOT JOIN THE DELIBERATING JURORS OF
THE SITTING JURORS AT THE CONCLUSION OF THE CASE, BUT WILL BE

10:33AM  1     ALLOWED TO LEAVE THE COURTHOUSE SUBJECT TO BEING RECALLED TO

10:33AM  2     REPLACE A DELIBERATING JUROR SHOULD THAT NEED ARISE.

10:33AM  3          NOW, YOU HAVE COMPLETED THE QUESTIONNAIRES LAST WEEK AND

10:33AM  4     THESE HAVE BEEN VERY HELPFUL FOR ALL OF US IN PREPARATION FOR

10:33AM  5     THIS PROCESS.  SOME OF MY QUESTIONS MIGHT BE REPRESENTATIVE OR

10:33AM  6     SIMILAR TO THE QUESTIONNAIRE, AND I WILL HAVE ADDITIONAL

10:34AM  7     QUESTIONS FOR EACH OF YOU.

10:34AM  8          SO I WANT TO THANK YOU AGAIN FOR YOUR PATIENCE AND, AGAIN,

10:34AM  9     THANK YOU FOR FILLING OUT YOUR QUESTIONNAIRES.

10:34AM 10          NOW, PLEASE DO LISTEN CAREFULLY TO ALL OF THE QUESTIONS

10:34AM 11     THAT ARE ASKED AND THE ANSWERS OF PROSPECTIVE JURORS.  DOING SO

10:34AM 12     MAY ASSIST YOU IN THINKING ABOUT WHAT YOUR RESPONSE MIGHT BE.

10:34AM 13          NOW, LET ME START WITH THIS.  DO ANY OF YOU KNOW THE

10:34AM 14     ASSISTANT UNITED STATES ATTORNEYS OR ANY OF THE DEFENSE COUNSEL

10:34AM 15     OR ANY OF THEIR TEAMS?  ANYBODY HERE KNOW THESE LAWYERS OR

10:34AM 16     THEIR TEAMS?

10:34AM 17          I SEE NO HANDS.

10:34AM 18          HAVE ANY OF YOU HAD ANY BUSINESS DEALINGS WITH THE

10:34AM 19     ATTORNEYS OR BEEN REPRESENTED BY THEM OR THEIR FIRMS?

10:34AM 20          I SEE NO HANDS.

10:34AM 21          DO ANY OF YOU KNOW THE DEFENDANT, MS. HOLMES?  DOES ANYONE

10:34AM 22     HERE KNOW MS. HOLMES?

10:34AM 23          I SEE NO HANDS.

10:34AM 24          DO ANY OF YOU KNOW ANY OF THE WITNESSES ON THE WITNESS

10:34AM 25     LIST THAT YOU'VE REVIEWED?  ANYONE HAVE FAMILIARITY OR

10:34AM 1    KNOWLEDGE OR KNOW ANY OF THOSE FOLKS?

10:35AM 2         YES, I SEE A HAND IN THE BACK.

10:35AM 3         MAYBE I WOULD ASK YOU TO COME FORWARD, PLEASE, TO THE

10:35AM 4    MICROPHONE.

10:35AM 5         CAN THAT MICROPHONE MOVE.

10:35AM 6         THE CLERK:  I CAN CONFIRM I TURNED IT ON,

10:35AM 7    YOUR HONOR.

10:35AM 8         THE COURT:  CAN WE MOVE IT CLOSER TO THE RAIL THERE?

10:35AM 9         (PAUSE IN PROCEEDINGS.)

10:35AM 10        PROSPECTIVE JUROR:  YOUR HONOR, I HAVE MET

10:35AM 11   CHANNING ROBERTSON IN A PROFESSIONAL SETTING.

10:35AM 12        THE COURT:  OKAY.  I'M SORRY, CAN YOU IDENTIFY

10:35AM 13   YOURSELF?

10:35AM 14        PROSPECTIVE JUROR:  I'M JUROR NUMBER 90,

10:35AM 15   SANDRA RAMER.

10:35AM 16        THE COURT:  THANK YOU, MS. RAMER.

10:35AM 17        TELL ME ABOUT, YOU'VE MET THIS PERSON IN A PROFESSIONAL

10:35AM 18   CAPACITY?

10:35AM 19        PROSPECTIVE JUROR:  HE IS, OR WAS, A CONSULTANT FOR

10:35AM 20   THE COMPANY THAT I WORK FOR.

10:35AM 21        THE COURT:  I SEE.  YOU MET HIM.  DID YOU HAVE

10:35AM 22   OCCASION TO WORK WITH HIM ON WHATEVER IT WAS?

10:35AM 23        PROSPECTIVE JUROR:  NO, NOT DIRECTLY.

10:35AM 24        THE COURT:  WAS THIS A BRIEF INTRODUCTION AS HE CAME

10:35AM 25   TO YOUR COMPANY OR -- MAYBE YOU CAN TELL US BRIEFLY WHAT THAT

10:36AM 1    WAS.

10:36AM 2               PROSPECTIVE JUROR:  I WORK FOR A BIOTECH, AN

10:36AM 3    INDUSTRIAL BIOTECH COMPANY AND CHANNING ROBERTSON WAS A

10:36AM 4    CONSULTANT ON SOME OF THE PROJECTS THAT WE WORK ON.

10:36AM 5               THE COURT:  YES.

10:36AM 6               PROSPECTIVE JUROR:  SO MY COMPANY IS VERY CLOSE TO

10:36AM 7    STANFORD, SO HE AND SOME MEMBERS OF HIS LAB OCCASIONALLY VISIT

10:36AM 8    AND CONSULT WITH US.

10:36AM 9               THE COURT:  AND WERE YOU -- THESE CONSULTATIONS,

10:36AM 10   WERE YOU PART OF THEM?

10:36AM 11              PROSPECTIVE JUROR:  NOT DIRECTLY.

10:36AM 12              THE COURT:  I'M IMAGINING A CONFERENCE ROOM WHERE

10:36AM 13   THERE'S A PRESENTATION OR DISCUSSION.

10:36AM 14              PROSPECTIVE JUROR:  CORRECT.

10:36AM 15              THE COURT:  AND WERE YOU IN THAT ROOM?

10:36AM 16              PROSPECTIVE JUROR:  YES, YES.

10:36AM 17              THE COURT:  I SEE.  DID YOU POSE QUESTIONS TO THIS

10:36AM 18   PERSON AT ALL?

10:36AM 19              PROSPECTIVE JUROR:  YEAH, PROBABLY I DID.

10:36AM 20              THE COURT:  AND IT WAS IN A PROFESSIONAL CAPACITY?

10:36AM 21              PROSPECTIVE JUROR:  CORRECT.

10:36AM 22              THE COURT:  WERE YOU INVOLVED AT ALL WITH HIRING OR

10:36AM 23   THE CONTRACTING OF HIM?

10:36AM 24              PROSPECTIVE JUROR:  NO.

10:36AM 25              THE COURT:  WERE YOU INVOLVED AT ALL IN REVIEWING

10:36AM 1    ANY OF HIS WORK WITH HIM?

10:36AM 2            PROSPECTIVE JUROR:  NO.

10:36AM 3            THE COURT:  OTHER THAN IN THESE CONFERENCES?

10:36AM 4            PROSPECTIVE JUROR:  RIGHT.  YES.  NO.

10:37AM 5            THE COURT:  AND CAN YOU TELL US, DID YOU HAVE ANY

10:37AM 6    ONE-ON-ONE TIME WITH HIM, FIRST OF ALL?

10:37AM 7            PROSPECTIVE JUROR:  NO.

10:37AM 8            THE COURT:  I SEE.  AND WHAT WAS THE DURATION OF THE

10:37AM 9    RELATIONSHIP WITH YOUR FIRM?

10:37AM 10           PROSPECTIVE JUROR:  IT SPANNED SEVERAL YEARS.

10:37AM 11           THE COURT:  AND HOW MANY -- CAN YOU TELL US,

10:37AM 12   APPROXIMATELY HOW MANY TIMES DID YOU HAVE OCCASIONS TO MEET

10:37AM 13   WITH HIM AS YOU'VE TOLD US YOU'VE DONE?

10:37AM 14           PROSPECTIVE JUROR:  THREE OR FOUR PROBABLY.

10:37AM 15           THE COURT:  I SEE.  OKAY.

10:37AM 16        WERE THERE OTHER OCCASIONS THAT YOU MET WITH HIM OUTSIDE

10:37AM 17   OF THE WORK ARENA?

10:37AM 18           PROSPECTIVE JUROR:  NO.

10:37AM 19           THE COURT:  THERE WERE NEVER DINNER MEETINGS WITH

10:37AM 20   OTHERS, OR BREAKFAST MEETINGS?

10:37AM 21           PROSPECTIVE JUROR:  NO.  BUT SOME OF THOSE

10:37AM 22   INTERACTIONS MIGHT HAVE HAD A RECEPTION, OR SOMETIMES WE WOULD

10:37AM 23   HAVE MEETINGS, POSTER SESSIONS WITH THE CONSULTANTS AND

10:37AM 24   COLLABORATORS.

10:37AM 25           THE COURT:  I SEE.

10:37AM  1          PROSPECTIVE JUROR:  SO THERE MIGHT HAVE BEEN SOME

10:37AM  2    SOCIAL INTERACTION.

10:37AM  3          THE COURT:  DO YOU THINK -- I DON'T KNOW IF YOU CAN

10:38AM  4    ANSWER THIS QUESTION, BUT DO YOU THINK IF YOU WERE WALKING DOWN

10:38AM  5    THE STREET OUTSIDE OF THE COURTHOUSE AND HE WAS WALKING TOWARDS

10:38AM  6    YOU, DO YOU THINK HE WOULD REMEMBER YOU?

10:38AM  7          PROSPECTIVE JUROR:  NO.

10:38AM  8          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

10:38AM  9    THANK YOU.

10:38AM 10       ANYONE ELSE HAVE ANY KNOWLEDGE OF ANY OF THE WITNESSES ON

10:38AM 11    THE WITNESS LIST?

10:38AM 12       I SEE NO HANDS.

10:38AM 13       AS I TOLD YOU, THIS CASE RELATES TO MS. HOLMES AND THE

10:38AM 14    ALLEGATIONS OF WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE FRAUD

10:38AM 15    AS INDICATED IN THE INDICTMENT.

10:38AM 16       NOW, LET ME ASK YOU, HAS ANYONE READ OR HEARD OF ANY NEWS

10:38AM 17    COVERAGE OF THIS CASE?

10:38AM 18       WELL, I SEE A COUPLE OF HANDS.

10:38AM 19       WELL, LET'S TALK ABOUT THAT.  LET ME START WITH THE JURY

10:38AM 20    BOX HERE.

10:38AM 21       I JUST WANT FOLKS TO KNOW THAT WE ARE GOING TO TAKE A

10:39AM 22    BREAK AT 11:00 O'CLOCK FOR ABOUT 10 OR 15 MINUTES.  I JUST WANT

10:39AM 23    YOU TO KNOW THAT.

10:39AM 24       SO LET'S SEE.  IN RESPONSE TO THE QUESTION OF HAS ANYBODY

10:39AM 25    HEARD ABOUT COVERAGE OF THIS CASE, LET ME TELL YOU THE

10:39AM 1    FOLLOW-UP QUESTIONS ARE GOING TO BE, WHAT WAS THE MEDIA THAT

10:39AM 2    YOU HEARD ABOUT?  WAS IT THE MEDIA NEWS, RADIO, INTERNET?

10:39AM 3         I'M CURIOUS IF YOU READ, LISTENED, HEARD THE ENTIRETY OF A

10:39AM 4    STORY, AN ARTICLE.

10:39AM 5         I'M ALSO CURIOUS IF YOU DISCUSSED WITH WHAT YOU READ,

10:39AM 6    LISTENED TO, OR HEARD WITH ANYONE ELSE.

10:39AM 7         I'M ALSO CURIOUS IF WHAT YOU -- WHEN YOU HEARD THIS, THAT

10:39AM 8    IS, THE MOST RECENT, YOUR MOST RECENT CONTACTS WITH THIS

10:39AM 9    INFORMATION.

10:39AM 10        ALSO WHETHER THIS CONTACT OCCURRED AFTER YOU COMPLETED

10:39AM 11   YOUR QUESTIONNAIRE AND WHETHER AS A RESULT OF THAT INFORMATION

10:39AM 12   THAT YOU RECEIVED, IF THAT WAS ACCURATE, THAT IS, YOU RECEIVED

10:40AM 13   IT AFTER YOUR QUESTIONNAIRE, WHETHER THAT INFORMATION WOULD

10:40AM 14   CAUSE YOU TO CHANGE ANY ANSWER TO A QUESTION ON THAT

10:40AM 15   QUESTIONNAIRE.

10:40AM 16        THAT'S A LOT, I UNDERSTAND, BUT I JUST WANT TO SHARE WITH

10:40AM 17   YOU THOSE ARE THE AREAS THAT I WOULD LIKE TO EXPLORE WITH THOSE

10:40AM 18   OF YOU WHO RAISED YOUR HAND.

10:40AM 19        SO LET'S START -- LET'S SEE IF I CAN -- IS THAT

10:40AM 20   MR. MORENO?

10:40AM 21             PROSPECTIVE JUROR:  YES.

10:40AM 22             THE COURT:  THANK YOU.  WHAT WOULD YOU LIKE ME TO

10:40AM 23   KNOW, SIR?

10:40AM 24             PROSPECTIVE JUROR:  WHEN I WAS READING THE

10:40AM 25   QUESTIONNAIRE I DID RECOGNIZE THE NAME OF THE COMPANY,

10:40AM  1      THERANOS.

10:40AM  2          ASIDE FROM THAT, I DIDN'T REALLY LOOK INTO IT.  IT WASN'T

10:40AM  3      SOMETHING THAT INTERESTED ME.  SO JUST THE NAME ITSELF WAS

10:40AM  4      FAMILIAR, BUT NOTHING ELSE BESIDES THAT REALLY.

10:40AM  5              THE COURT:  OKAY.  I SEE.

10:40AM  6          ANYTHING ABOUT THAT THAT YOU THINK WOULD IMPAIR YOUR

10:40AM  7      ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE?

10:40AM  8              PROSPECTIVE JUROR:  NO.

10:40AM  9              THE COURT:  NOTHING.  THANK YOU.

10:40AM 10          LET ME SEE.  IN THE JURY BOX.  MR. BETTS -- LET'S SEE.  IS

10:40AM 11      THAT MR. BETTS?

10:41AM 12              PROSPECTIVE JUROR:  CORRECT.

10:41AM 13              THE COURT:  YES, SIR.

10:41AM 14              PROSPECTIVE JUROR:  I HEARD BRIEF OVERVIEWS OF THE

10:41AM 15      CASE AND THE THERANOS ISSUES A COUPLE YEARS AGO.

10:41AM 16              THE COURT:  CAN WE ENGAGE A SPEAKER HERE OR A

10:41AM 17      MICROPHONE, MS. KRATZMANN?

10:41AM 18              THE CLERK:  I DON'T HAVE A MOVEABLE ONE, YOUR HONOR.

10:41AM 19      BUT HE CAN COME TO THIS PODIUM IF HE WOULD LIKE, YOUR HONOR.

10:41AM 20              THE COURT:  MR. BETTS, HOW ABOUT THAT?

10:41AM 21              PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

10:41AM 22          A COUPLE OF YEARS AGO JUST A BRIEF DESCRIPTION OF THE CASE

10:41AM 23      INVOLVING THERANOS THROUGH NATIONAL PUBLIC RADIO OR BBC.

10:41AM 24              THE COURT:  I SEE.  ANYTHING SINCE THAT THAT YOU

10:41AM 25      THINK YOU HAVE SEEN OR READ?

10:41AM 1            PROSPECTIVE JUROR:  NO.

10:41AM 2            THE COURT:  HAS THAT, WHAT YOU'VE HEARD ON NPR AND

10:41AM 3    READ ABOUT, DO YOU STILL HAVE THAT FRESH IN YOUR MIND?

10:41AM 4            PROSPECTIVE JUROR:  NO.

10:41AM 5            THE COURT:  IS THERE ANYTHING ABOUT WHAT YOU HAVE

10:42AM 6    HEARD OR READ THAT WOULD AFFECT YOUR ABILITY TO BE FAIR TO BOTH

10:42AM 7    SIDES IN THIS CASE?

10:42AM 8            PROSPECTIVE JUROR:  THERE IS NOT.

10:42AM 9            THE COURT:  I APPRECIATE IT.  THANK YOU.

10:42AM 10       AND MR. SCHULTZE.

10:42AM 11           PROSPECTIVE JUROR:  YES.

10:42AM 12           THE COURT:  WHY DON'T YOU STEP TO THAT LECTERN AS

10:42AM 13   WELL.

10:42AM 14           PROSPECTIVE JUROR:  SO I BELIEVE IN SCHOOL ABOUT

10:42AM 15   MAYBE IN MARCH OR FEBRUARY THERE -- I WATCHED A TED TALK IN

10:42AM 16   CLASS THAT I THINK MENTIONED A NAME AND THE NAME OF THE COMPANY

10:42AM 17   THAT HAVE -- I DON'T HAVE TOO MUCH MEMORY OF THAT, BUT I HAVE

10:42AM 18   SEEN ALSO ARTICLES ON THE INTERNET, ON REDDIT, ON R/INVESTING,

10:42AM 19   AND I BELIEVE THERE WAS ANOTHER ONE.

10:42AM 20       BUT I'VE ALSO SEEN JUST THE HEADLINE POP UP ABOUT JURY

10:42AM 21   SELECTION, BUT I DON'T THINK THAT'S IMPORTANT.

10:43AM 22           THE COURT:  OKAY.  YOU TOLD US THAT, I THINK, IN

10:43AM 23   YOUR QUESTIONNAIRE.  YOU SAID YOU MAY HAVE WATCHED A TED TALK,

10:43AM 24   BUT YOU DON'T REMEMBER MUCH ABOUT IT; IS THAT RIGHT?

10:43AM 25           PROSPECTIVE JUROR:  YES, THAT'S CORRECT.

10:43AM  1               THE COURT:  HOW LONG AGO WAS THAT, SIR?

10:43AM  2               PROSPECTIVE JUROR:  I BELIEVE IT WAS IN MY SENIOR

10:43AM  3     YEAR ENGINEERING ETHICS CLASS.  PROBABLY MAYBE MARCH.  IT WAS

10:43AM  4     SPRING 2020, I BELIEVE.

10:43AM  5               THE COURT:  OKAY.  AND THEN YOU TOLD ME YOU SAW SOME

10:43AM  6     RECENT PUBLICITY ABOUT THE CASE.

10:43AM  7               PROSPECTIVE JUROR:  I THINK MAYBE A FEW MONTHS AGO I

10:43AM  8     SAW A POSTING ON THE INTERNET.

10:43AM  9               THE COURT:  I SEE.  IS THAT HOW YOU GET MOST OF YOUR

10:43AM 10     NEWS OR HOW YOU OBTAIN YOUR NEWS, ON THE INTERNET?

10:43AM 11               PROSPECTIVE JUROR:  YES, MOSTLY.

10:43AM 12               THE COURT:  DO YOU SUBSCRIBE TO NEWSPAPERS OR READ

10:43AM 13     NEWSPAPERS?

10:43AM 14               PROSPECTIVE JUROR:  I DON'T SUBSCRIBE REALLY TO ANY

10:43AM 15     PHYSICAL NEWSPAPERS.  I JUST SEE APPLE NEWS APP OR REDDIT NEWS.

10:44AM 16               THE COURT:  ON THE INTERNET?

10:44AM 17               PROSPECTIVE JUROR:  ON THE INTERNET.

10:44AM 18               THE COURT:  THERE ARE SOME OF MY VINTAGE, SIR, WHO

10:44AM 19     REALLY ENJOY READING HARD COPY OF NEWSPAPERS.  IT'S A -- WE

10:44AM 20     DON'T SEEM TO SEE THAT AS MUCH ANYMORE.

10:44AM 21          YOU HAVE NOT READ ANY NEWS ARTICLES IN A NEWSPAPER LIKE

10:44AM 22     THAT?

10:44AM 23               PROSPECTIVE JUROR:  NO.

10:44AM 24               THE COURT:  YOUR INFORMATION IS INTERNET AND THAT?

10:44AM 25               PROSPECTIVE JUROR:  THAT'S CORRECT.

10:44AM 1          THE COURT:  AND HAVE YOU SEEN ANYTHING RECENTLY?

10:44AM 2          PROSPECTIVE JUROR:  I SAW JUST THE HEADLINE POP UP

10:44AM 3   ABOUT JURY SELECTION FOR THIS CASE, BUT I DIDN'T READ THE

10:44AM 4   ARTICLE.

10:44AM 5          THE COURT:  OKAY.  AND WAS THAT BECAUSE YOU KNEW YOU

10:44AM 6   WERE GOING TO BE A POTENTIAL JUROR IN THE CASE?

10:44AM 7          PROSPECTIVE JUROR:  I JUST HAVE THE YAHOO FINANCE

10:44AM 8   APP ON MY PHONE AND IT JUST MAYBE POPPED UP YESTERDAY, BUT I

10:44AM 9   JUST SAW THE HEADLINE.

10:44AM 10         THE COURT:  RIGHT.  I SEE.  AND YOU DIDN'T DO ANY

10:44AM 11  OTHER RESEARCH ON THAT?

10:44AM 12         PROSPECTIVE JUROR:  NO.

10:44AM 13         THE COURT:  OKAY.  I SEE.

10:44AM 14      I DO WANT TO PROBE ONE OTHER AREA WITH YOU, IF I MAY.

10:44AM 15      I THINK YOU TOLD US ALSO IN YOUR QUESTIONNAIRE ABOUT

10:45AM 16  YOU'RE TAKING ETHICS, SOME ETHICS CLASSES AND YOU TALKED ABOUT

10:45AM 17  WHISTLEBLOWERS AND THINGS AND YOU SAID YOU REALLY SUPPORT THEM

10:45AM 18  I THINK.  IS THAT RIGHT?

10:45AM 19         PROSPECTIVE JUROR:  THAT'S CORRECT.

10:45AM 20         THE COURT:  AND IF A CASE WERE TO INVOLVE SOMETHING

10:45AM 21  CALLED A WHISTLEBLOWER OR SOMEBODY WHO YOU THOUGHT MIGHT FIT

10:45AM 22  THAT DEFINITION, WOULD THAT -- HOW WOULD THAT AFFECT YOUR

10:45AM 23  ABILITY TO BE FAIR AND IMPARTIAL AS A JUROR IN A CASE, IN THIS

10:45AM 24  CASE?

10:45AM 25         PROSPECTIVE JUROR:  SO JUST IN MY CLASSES WE'VE HAD

10:45AM 1     TO SEE SOME CASES, I GUESS, AND DECIDE WHETHER THE

10:45AM 2     WHISTLEBLOWER OR THE COMPANY IS CORRECT.

10:45AM 3          THE COURT:  AND THAT'S A -- THAT'S PART OF YOUR

10:45AM 4     EDUCATION.  THAT'S PART OF THAT CLASS?

10:45AM 5          PROSPECTIVE JUROR:  YEAH.

10:45AM 6          THE COURT:  YOU KNOW, LAWYERS TAKES ETHICS CLASSES

10:45AM 7     AS WELL AND THEY LOOK AT CASES AND THEY DISCUSS, WAS THIS THE

10:45AM 8     RIGHT THING TO DO OR THE WRONG THING?  ETHICS GIVE GUIDANCE.

10:46AM 9     THAT'S WHAT YOU WERE DOING?

10:46AM 10         PROSPECTIVE JUROR:  PRETTY SIMILAR.  IT WAS FOR

10:46AM 11    MORE, LIKE, ENGINEERING PROJECTS AND IF YOU BUILD SOMETHING AND

10:46AM 12    IT IMPACTS OR IF THERE'S SOMETHING WRONG WITH IT, SHOULD YOU

10:46AM 13    TELL SOMEBODY?

10:46AM 14         THE COURT:  SURE.  SO WHAT DO YOU THINK?  DO YOU

10:46AM 15    THINK THAT WHAT YOU LEARNED AND DISCUSSED IN THAT CLASS WILL

10:46AM 16    AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE TO

10:46AM 17    BOTH SIDES?

10:46AM 18         PROSPECTIVE JUROR:  I BELIEVE WHAT I LEARNED IS YOU

10:46AM 19    HAVE TO BE UNBIASSED FOR YOUR DECISIONS, AND IT'S A

10:46AM 20    CASE-TO-CASE BASIS.

10:46AM 21         THE COURT:  WELL, THAT'S WHAT WE'RE DOING RIGHT NOW.

10:46AM 22    WE'RE TRYING TO PROBE AND SEE IF YOU AND YOUR FELLOW

10:46AM 23    PROSPECTIVE JURORS -- YOU KNOW, WE ALL HAVE -- WE KNOW WHAT

10:46AM 24    BIAS IS.  WE ALL HAVE IT.

10:46AM 25         I SEE THAT YOU'RE WEARING A SAN FRANCISCO GIANTS SHIRT

10:46AM  1   THERE, AND YOU'RE PROUD TO SAY THEY'RE THE WORLD CHAMPIONS, NOT

10:46AM  2   FOR AWHILE, BUT MAYBE THIS YEAR.  THEY'VE GOT A GOOD TEAM.

10:46AM  3            PROSPECTIVE JUROR:  THEY'VE GOT A GOOD TEAM.

10:46AM  4            THE COURT:  YEAH, THEY HAVE A GOOD TEAM.

10:47AM  5        BUT, YOU KNOW, THERE MIGHT BE SOME OTHER -- FOR WHATEVER

10:47AM  6   REASON THEY MIGHT HAVE SOME LACK OF JUDGMENT, LET'S SAY, FROM

10:47AM  7   MY PERSPECTIVE AND SUPPORT A TEAM CALLED THE LOS ANGELES

10:47AM  8   DODGERS.

10:47AM  9        (LAUGHTER.)

10:47AM  10           THE COURT:  THERE'S SOME BIAS BUILT IN THERE.  I'M

10:47AM  11  USING THIS AS AN EXAMPLE.  I THINK YOU SHOOK YOUR HEAD FROM

10:47AM  12  LEFT TO RIGHT WHEN I MENTIONED THAT NAME.

10:47AM  13       SO PEOPLE BRING THESE BIASES IN.  WE ALL HAVE THEM.

10:47AM  14       WE ALSO HAVE IMPLICIT BIAS.  THOSE ARE MORE DIFFICULT

10:47AM  15  THINGS TO LOOK AT, AND WE TRY TO FERRET THOSE ISSUES OUT IF WE

10:47AM  16  CAN.

10:47AM  17       BEING A JUROR IS A VERY IMPORTANT JOB.  IT'S AN IMPORTANT

10:47AM  18  RESPONSIBILITY.  AND WHAT WE ASK YOU TO DO IN MY EXAMPLE OF

10:47AM  19  BASEBALL WAS THAT WE ASK YOU TO PUT ASIDE THOSE BIASES ABOUT

10:47AM  20  THE DODGERS.

10:47AM  21       I WILL CONCEDE THIS:  THEY HAVE, IN MY OPINION, THE BEST

10:47AM  22  HOME UNIFORMS IN THE LEAGUE.  THEY'RE BEAUTIFUL, AREN'T THEY?

10:47AM  23  THE RED, THE BLUE, THE WHITE.  THEY HAVE THE BEST UNIFORMS.  I

10:47AM  24  HAVE TO CONFESS THAT.

10:48AM  25       BUT NOTWITHSTANDING THAT, NOTWITHSTANDING THAT, YOU MIGHT

10:48AM  1    BE A DIEHARD GIANTS FAN AND THE CASE MIGHT BE ABOUT THE

10:48AM  2    LOS ANGELES DODGERS, AND YOU CAN'T LET THAT BIAS ABOUT THE

10:48AM  3    LOS ANGELES DODGERS AFFECT YOUR DECISION.  I'M SORRY TO BE SO

10:48AM  4    BASIC HERE.

10:48AM  5              PROSPECTIVE JUROR:  YES.

10:48AM  6              THE COURT:  IS THAT SOMETHING THAT YOU THINK YOU

10:48AM  7    COULD DO?

10:48AM  8              PROSPECTIVE JUROR:  YEAH, I THINK SO.

10:48AM  9              THE COURT:  ALL RIGHT.  THAT'S WHAT WE'VE CALLED

10:48AM  10   UPON AS JURORS.  I'M SPEAKING TO YOU, BUT THANK YOU FOR COMING

10:48AM  11   HERE BECAUSE I'M SPEAKING TO ALL OF YOUR COLLEAGUES BEHIND YOU

10:48AM  12   AND NEXT TO YOU.

10:48AM  13       WHAT WE ASK YOU TO DO, WHAT WE ASK JURORS TO DO IS TO --

10:48AM  14   OF COURSE YOU BRING THOSE BIASES THAT PEOPLE HAVE.  WE CAN'T

10:48AM  15   ASK YOU TO THROW THEM OUT THE WINDOW.  BUT YOU HAVE TO, YOU

10:48AM  16   MUST PUT THOSE BIASES ASIDE AS A JUROR WHEN YOU DECIDE THE

10:48AM  17   CASE.

10:48AM  18       AND YOUR DECISION, YOUR DECISION MUST BE BASED ONLY ON THE

10:48AM  19   EVIDENCE THAT YOU RECEIVE IN THIS COURTROOM, THE UNIVERSE OF

10:48AM  20   THIS COURTROOM, NOT ANYTHING OUTSIDE, NOT ANYTHING THAT

10:48AM  21   SOMEBODY TELLS YOU, NOT ANYTHING THAT YOU READ OUTSIDE OF THE

10:49AM  22   COURTROOM, ONLY ON THE EVIDENCE THAT IS INTRODUCED BY THESE

10:49AM  23   LAWYERS, THAT'S IT, AND THE LAW THAT I GIVE YOU.  I WILL GIVE

10:49AM  24   YOU INSTRUCTIONS AT THE END OF THE CASE THAT WILL GUIDE YOUR

10:49AM  25   DELIBERATIONS.

10:49AM  1      YOU SEE, JURORS ARE ACTUALLY JUDGES.  YOU'RE JUDGES OF THE

10:49AM  2  FACTS.  YOU GET TO DECIDE WHAT HAPPENED OR WHAT DIDN'T HAPPEN.

10:49AM  3  YOU GET TO DECIDE THAT.

10:49AM  4      BUT YOU MUST, AND YOU WILL AS A JUROR, APPLY THE LAW THAT

10:49AM  5  I GIVE TO YOU TO THE FACTS AS YOU DECIDE THEM.  BUT IT'S AN

10:49AM  6  IMPORTANT JOB, AND IT'S VERY IMPORTANT.  IT'S CRITICAL THAT

10:49AM  7  EVERY JUROR WHO SITS ON THE CASE DECIDE THIS CASE ONLY ON THE

10:49AM  8  EVIDENCE HERE AND NOT ON ANY OTHER MATERIAL THAT THEY MAY HAVE

10:49AM  9  READ, LISTENED TO, SEEN, OR BEEN EXPOSED TO.

10:49AM 10      FAMILY MEMBERS MIGHT HAVE OPINIONS ABOUT THINGS.  THAT HAS

10:49AM 11  TO STAY OUT OF YOUR DECISION FOR THIS CASE.

10:50AM 12      DO YOU UNDERSTAND THAT?

10:50AM 13          PROSPECTIVE JUROR:  YES.

10:50AM 14          THE COURT:  ANY QUESTION ABOUT THAT?

10:50AM 15          PROSPECTIVE JUROR:  NO.  THANK YOU FOR THE

10:50AM 16  EXPLANATION.

10:50AM 17          THE COURT:  YES.  THANK YOU FOR BEING ABLE TO STAND

10:50AM 18  UP HERE.  IT'S NICE TO SEE ANOTHER GIANTS FAN, AND I APPRECIATE

10:50AM 19  THE OPPORTUNITY TO DISCUSS THIS WITH YOU.

10:50AM 20      SO AS TO THE WHISTLEBLOWER, YOU'VE LEARNED ABOUT THAT IN

10:50AM 21  YOUR ENGINEERING CLASS.  YOU'VE LEARNED THOSE THINGS?

10:50AM 22          PROSPECTIVE JUROR:  YES.

10:50AM 23          THE COURT:  AND I'M SURE YOU SCORED HIGHLY ON THAT

10:50AM 24  EXAM WHEN YOU WROTE YOUR EXAM.

10:50AM 25      BUT HERE I WILL GIVE YOU, I WILL GIVE YOU THE LAW THAT YOU

10:50AM 1    APPLY TO THE FACTS AS YOU FIND THEM.

10:50AM 2        DO YOU UNDERSTAND THAT?

10:50AM 3            PROSPECTIVE JUROR:  YES.

10:50AM 4            THE COURT:  CAN YOU DO THAT?

10:50AM 5            PROSPECTIVE JUROR:  YES.

10:50AM 6            THE COURT:  WITHOUT ANY BIAS?  WITHOUT ANY THINKING

10:50AM 7    ABOUT WHAT YOU LEARNED IN YOUR CLASS, THINKING ABOUT WHAT YOUR

10:50AM 8    PROFESSOR TAUGHT YOU, BUT FOCUSSED ONLY ON THE EVIDENCE HERE?

10:50AM 9            PROSPECTIVE JUROR:  I BELIEVE SO, YES.

10:50AM 10           THE COURT:  OKAY.  ANY DOUBT ABOUT THAT?

10:50AM 11           PROSPECTIVE JUROR:  NO.

10:51AM 12           THE COURT:  OKAY.  WELL, YOU HAVE GOOD JUDGMENT.

10:51AM 13   YOU HAVE GOOD JUDGMENT.  YOU'RE SUPPORTING A GOOD BASEBALL

10:51AM 14   TEAM, SO THAT'S IMPRESSIVE ALREADY.

10:51AM 15       ALL RIGHT.  ANYTHING ELSE YOU WANT US TO KNOW ABOUT THAT?

10:51AM 16           PROSPECTIVE JUROR:  THAT'S ALL.

10:51AM 17           THE COURT:  OKAY.  THANK YOU.

10:51AM 18           PROSPECTIVE JUROR:  THANK YOU.

10:51AM 19           THE COURT:  WERE THERE OTHER HANDS IN THE JURY BOX?

10:51AM 20       YES.  IS THIS MR. LIU?

10:51AM 21           PROSPECTIVE JUROR:  YES.

10:51AM 22           THE COURT:  DO YOU WANT TO COME TO THE MICROPHONE?

10:51AM 23           PROSPECTIVE JUROR:  YES.  I'M JUROR NUMBER 20.

10:51AM 24           THE COURT:  YES, THANK YOU.

10:51AM 25           PROSPECTIVE JUROR:  I DIDN'T RAISE MY HAND EARLIER,

10:51AM 1    BUT I HEARD ABOUT THIS CASE YEARS AGO, JUST HIGH LEVEL

10:51AM 2    BASICALLY.

10:51AM 3            THE COURT:  HIGH LEVEL.  AND TELL US THE MOST RECENT

10:51AM 4    TIMING OF THE MOST RECENT INFORMATION THAT YOU'VE RECEIVED.

10:51AM 5            PROSPECTIVE JUROR:  JUST THE LATEST NEWS BECAUSE OF

10:52AM 6    THE TRIAL AND IT'S GOING TO BE STARTING PRETTY SOON, AND LAST

10:52AM 7    WEEK WHEN I CAME HERE, YOU KNOW, I KNOW WHAT IT'S ABOUT.  SO,

10:52AM 8    YEAH.

10:52AM 9            THE COURT:  FROM THE MEDIA, YOU KNOW WHAT IT'S ABOUT

10:52AM 10   FROM THE MEDIA?

10:52AM 11           PROSPECTIVE JUROR:  RIGHT.

10:52AM 12           THE COURT:  AND WHAT WAS THE LAST THING -- THE

10:52AM 13   TIMING, WHEN DID YOU MOST RECENTLY HEAR THE LAST THING?  WAS IT

10:52AM 14   IN THE PAPER YESTERDAY?  WAS IT THIS MORNING OR A WEEK AGO?

10:52AM 15           PROSPECTIVE JUROR:  IT WAS ABOUT A WEEK AGO.  IT WAS

10:52AM 16   IN THE NEWS THAT THE TRIAL IS COMING UP.

10:52AM 17           THE COURT:  AND DID YOU SEE THAT AFTER YOU COMPLETED

10:52AM 18   THE QUESTIONNAIRE OR BEFORE?

10:52AM 19           PROSPECTIVE JUROR:  BEFORE.

10:52AM 20           THE COURT:  I SEE.  DO YOU REMEMBER ANYTHING THAT

10:52AM 21   YOU READ OR HEARD OR SAW?  ANYTHING ABOUT THAT?  I'M NOT ASKING

10:52AM 22   YOU TO TELL ME WHAT IT WAS.

10:52AM 23           PROSPECTIVE JUROR:  YEAH, JUST REFRESH AND BRING

10:52AM 24   BACK MY MEMORY OF SEVERAL YEARS AGO WHEN THIS CASE FIRST CAME

10:52AM 25   OUT, YEAH.

```
10:52AM   1              THE COURT:  ALL RIGHT.  WELL, IS THERE ANYTHING

10:52AM   2     ABOUT WHAT YOU SAW, HEARD, OR READ THAT YOU THINK WILL AFFECT

10:53AM   3     YOUR ABILITY TO BE FAIR IN THIS TRIAL TODAY?

10:53AM   4              PROSPECTIVE JUROR:  YEAH, I WILL BE FAIR.  IT WON'T

10:53AM   5     AFFECT MY DECISION.

10:53AM   6              THE COURT:  OKAY.  NOTHING THAT YOU HEARD, READ, OR

10:53AM   7     SAW WILL AFFECT YOUR DECISION?

10:53AM   8              PROSPECTIVE JUROR:  RIGHT.

10:53AM   9              THE COURT:  CAN YOU MAKE YOUR DECISION -- IF YOU'RE

10:53AM  10     SELECTED AS A JUROR IN THIS CASE, CAN YOU MAKE THAT DECISION

10:53AM  11     BASED ONLY ON THE EVIDENCE THAT YOU GET IN THIS COURTROOM?

10:53AM  12              PROSPECTIVE JUROR:  YES.

10:53AM  13              THE COURT:  NOT ON ANYTHING OUTSIDE?

10:53AM  14              PROSPECTIVE JUROR:  THAT'S CORRECT.

10:53AM  15              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

10:53AM  16     YOU.

10:53AM  17          LET'S SEE.  THERE WAS MR. CHUANG; IS THAT RIGHT?

10:53AM  18              PROSPECTIVE JUROR:  YES.  I'VE READ NEWS ARTICLES ON

10:53AM  19     THE INTERNET ABOUT THIS CASE, AND I ALSO WATCHED THE

10:53AM  20     DOCUMENTARY ON THIS CASE.  SO I MAY HAVE SOME PREDISPOSED OR

10:54AM  21     BIAS.

10:54AM  22              THE COURT:  OKAY.

10:54AM  23              PROSPECTIVE JUROR:  BUT THAT WAS A COUPLE YEARS AGO.

10:54AM  24              THE COURT:  I SEE.  THAT'S WHAT MY NEXT QUESTION

10:54AM  25     WAS, WHEN DID YOU SEE THAT?
```

10:54AM 1          PROSPECTIVE JUROR:  A COUPLE YEARS AGO.

10:54AM 2          THE COURT:  OKAY.  HAVE YOU SEEN ANYTHING SINCE OR

10:54AM 3   READ ANYTHING SINCE?

10:54AM 4          PROSPECTIVE JUROR:  NO.  I DIDN'T HAVE ANY FOLLOW

10:54AM 5   UP.

10:54AM 6          THE COURT:  SO DO YOU REMEMBER TODAY, I'M NOT ASKING

10:54AM 7   WHAT YOU SAW, BUT DO YOU REMEMBER IT?

10:54AM 8          PROSPECTIVE JUROR:  BITS AND PIECES.

10:54AM 9          THE COURT:  I SEE.  OKAY.

10:54AM 10     WELL, YOU HEARD ME TALKING TO MR. SCHULTZE ABOUT THE

10:54AM 11   DECISION THAT A JUROR MAKES ONLY ON THE EVIDENCE IN THIS CASE.

10:54AM 12          PROSPECTIVE JUROR:  RIGHT.

10:54AM 13          THE COURT:  CAN YOU DO THAT?

10:54AM 14          PROSPECTIVE JUROR:  I CAN TRY TO PUT MY BIAS ASIDE

10:54AM 15   AND ONLY LOOK AT THE FACTS.

10:54AM 16          THE COURT:  OKAY.  SO DO YOU THINK -- YOU SAID YOU

10:54AM 17   COULD PUT YOUR BIAS ASIDE.  DO YOU HAVE A BIAS IN THIS CASE

10:55AM 18   RIGHT NOW?

10:55AM 19          PROSPECTIVE JUROR:  WELL, THE DOCUMENTARY KIND OF

10:55AM 20   PAINTED --

10:55AM 21          THE COURT:  PARDON ME FOR INTERRUPTING YOU.  SO YOU

10:55AM 22   SAW A DOCUMENTARY THAT IT SOUNDS LIKE IT WAS PERSUASIVE IN SOME

10:55AM 23   WAY TO YOU?

10:55AM 24          PROSPECTIVE JUROR:  I THINK IT WAS PAINTED --

10:55AM 25          THE COURT:  WELL, I'M NOT ASKING YOU EXACTLY -- I

10:55AM 1    DON'T WANT YOU TO REPEAT THE DOCUMENTARY.  I'M JUST CURIOUS

10:55AM 2    ABOUT THE EFFECT OF THAT DOCUMENTARY ON YOUR THINKING ABOUT A

10:55AM 3    JUROR, BEING A FAIR JUROR.

10:55AM 4         DO YOU UNDERSTAND MY QUESTION?

10:55AM 5              PROSPECTIVE JUROR:  I'M SORRY.  CAN YOU REPEAT?

10:55AM 6              THE COURT:  SURE.  I'M SORRY.  THAT WASN'T VERY

10:55AM 7    ARTFUL.

10:55AM 8         I'M NOT ASKING YOU TO TELL US WHAT YOU SAW, WHAT THEY

10:55AM 9    SAID.

10:55AM 10             PROSPECTIVE JUROR:  OKAY.

10:55AM 11             THE COURT:  I'M MORE INTERESTED IN HOW THAT AFFECTED

10:55AM 12   YOU AND WHETHER OR NOT IT'S CREATED A BIAS IN YOU THAT PREVENTS

10:55AM 13   YOU FROM BEING FAIR -- AND LET ME BE CANDID -- BEING FAIR TO

10:55AM 14   MS. HOLMES.

10:55AM 15        HAVE YOU, BECAUSE OF WHAT YOU READ, BECAUSE OF WHAT YOU

10:56AM 16   SAW, HAS THAT PUT YOU IN A POSITION TODAY TO MAKE YOU FEEL LIKE

10:56AM 17   I CAN'T BE FAIR TO MS. HOLMES BECAUSE I'VE SEEN SOMETHING THAT

10:56AM 18   BOTHERS ME?

10:56AM 19        OR MAYBE IT'S NOT MS. HOLMES.  MAYBE IT'S THE GOVERNMENT'S

10:56AM 20   CASE.  MAYBE YOU CAN'T BE FAIR TO THE GOVERNMENT BECAUSE OF

10:56AM 21   SOMETHING THAT YOU'VE SEEN OR HEARD.

10:56AM 22             PROSPECTIVE JUROR:  YEAH, I HAVE SOME BIASSED

10:56AM 23   OPINION.

10:56AM 24             THE COURT:  OKAY.  ABOUT THE DEFENSE?

10:56AM 25             PROSPECTIVE JUROR:  YES.

10:56AM 1          THE COURT:  I SEE.  BECAUSE OF WHAT YOU'VE SEEN?

10:56AM 2          PROSPECTIVE JUROR:  YES.

10:56AM 3          THE COURT:  RIGHT.  DO YOU THINK THERE'S ANY WAY

10:56AM 4    THAT YOU CAN PUT THAT ASIDE?

10:56AM 5          PROSPECTIVE JUROR:  YES, I CAN LOOK AT THE EVIDENCE.

10:56AM 6          THE COURT:  ALL RIGHT.  THANK YOU.

10:56AM 7       WELL, WE'RE GOING TO TAKE A BREAK NOW.  I TOLD YOU, LADIES

10:56AM 8    AND GENTLEMEN, WE WOULD TAKE A BREAK AT THE TOP OF THE HOUR FOR

10:56AM 9    A MOMENT.

10:56AM 10      I THINK WE'LL TAKE ABOUT -- LET'S TAKE -- WELL, IT'S GOING

10:56AM 11   TO TAKE SOME TIME TO GET YOU UP HERE, SO LET'S TAKE 15 MINUTES,

10:56AM 12   PLEASE.

10:56AM 13      MR. CHUANG, WHY DON'T YOU -- CAN I ASK YOU TO STAY, AND

10:56AM 14   I'D LIKE TO TALK WITH YOU A LITTLE BIT MORE ABOUT IT WITH THESE

10:56AM 15   LAWYERS.

10:56AM 16         PROSPECTIVE JUROR:  SURE.

10:57AM 17         THE COURT:  MR. CHUANG, YOU'RE NOT IN TROUBLE.  LET

10:57AM 18   ME SAY THAT, YOU'RE NOT IN TROUBLE.

10:57AM 19      (LAUGHTER.)

10:57AM 20         THE COURT:  SO LET'S TAKE A 15 MINUTES BREAK, FOLKS.

10:57AM 21      MR. CHUANG WILL REMAIN.  WE'LL REMAIN ON THE RECORD.

10:58AM 22      (JURY OUT AT 10:58 A.M.).

10:58AM 23         THE COURT:  WHY DON'T WE HAVE A SEAT.

10:58AM 24      LET ME SAY THAT THE MAJORITY OF THE JURORS HAVE LEFT THE

10:58AM 25   COURTROOM.

10:58AM  1        COULD I ASK YOU TO STEP OUTSIDE?

10:58AM  2              PROSPECTIVE JUROR:  OH, I'M SORRY.

10:58AM  3              THE COURT:  NO.  THAT'S QUITE ALL RIGHT.

10:58AM  4        (JURY OUT AT 10:58 A.M.)

10:58AM  5        (ONLY PROSPECTIVE JUROR CHUANG PRESENT.)

10:58AM  6              THE COURT:  THE RECORD SHOULD REFLECT THAT WE HAVE

10:58AM  7    TAKEN A RECESS.  OUR JURY PANEL HAS LEFT, SAVE FOR MR. CHUANG.

10:59AM  8        I WANTED TO TALK TO MR. CHUANG OUTSIDE OF THE PRESENCE OF

10:59AM  9    THE JURORS.

10:59AM 10        YOU'RE NOT IN TROUBLE.  YOU HEARD ME TALK ABOUT WHAT THIS

10:59AM 11    PROCESS IS ABOUT.  WE'RE TRYING TO SEE IF PEOPLE CAN BE FAIR

10:59AM 12    JURORS IN THE CASE, AND MY CONCERN, I HOPE YOU APPRECIATE --

10:59AM 13    AND THESE LAWYERS ARE ALSO CONCERNED -- THAT SOMEBODY MIGHT SAY

10:59AM 14    SOMETHING THAT MIGHT AFFECT SOMEONE ELSE'S OPINIONS.  YOU'RE

10:59AM 15    CERTAINLY ENTITLED TO YOUR OPINIONS AND THAT'S WHAT I WANT TO

10:59AM 16    EXPLORE RIGHT NOW.

10:59AM 17        YOU'VE TOLD US THAT BECAUSE OF WHAT YOU HAVE SEEN IN THESE

10:59AM 18    DOCUMENTARIES, I THINK YOU SAID -- I DON'T WANT TO PUT WORDS IN

10:59AM 19    YOUR MOUTH, BUT YOU SAID YOU MIGHT BE BIASSED.

10:59AM 20        WHY DON'T YOU TELL US ABOUT THAT?

10:59AM 21        MAYBE YOU CAN COME UP TO THIS MICROPHONE.  WOULD THAT BE

10:59AM 22    ALL RIGHT WITH YOU, SIR?

10:59AM 23              PROSPECTIVE JUROR:  YES.

10:59AM 24              THE COURT:  THANK YOU.

10:59AM 25              PROSPECTIVE JUROR:  SO THE DOCUMENTARY WAS PAINTING

11:00AM  1    A PICTURE THAT MS. HOLMES IS -- LIKE, A NEGATIVE PICTURE ABOUT

11:00AM  2    WHAT SHE WAS DOING AND HOW THE COMPANY WAS, LIKE --

11:00AM  3               THE COURT:  YOU KNOW, MR. CHUANG, DON'T HESITATE.

11:00AM  4    JUST TELL US.

11:00AM  5               PROSPECTIVE JUROR:  THE DOCUMENTARY SAID SHE KNOWS

11:00AM  6    ABOUT THESE FRAUDS AND SHE CONTINUES TO DO THESE FRAUDS, I

11:00AM  7    GUESS.

11:00AM  8               THE COURT:  I SEE, UH-HUH.

11:00AM  9               PROSPECTIVE JUROR:  SO THAT MIGHT HAVE AFFECT MY

11:00AM 10    OPINION.

11:00AM 11               THE COURT:  I SEE.  FROM WHAT YOU HEARD AND WHAT YOU

11:00AM 12    SAW?

11:00AM 13               PROSPECTIVE JUROR:  RIGHT.

11:00AM 14               THE COURT:  AND DO YOU THINK THAT YOU COULD PUT THAT

11:00AM 15    ASIDE AND BE FAIR TO BOTH SIDES IN THIS CASE, OR DO YOU THINK

11:00AM 16    YOU'LL HAVE A PROBLEM WITH THAT?

11:00AM 17               PROSPECTIVE JUROR:  I THINK I COULD TRY TO PUT THAT

11:00AM 18    BIAS ASIDE AND I CAN JUST LOOK AT THE FACTS AND EVIDENCE.

11:01AM 19               THE COURT:  OKAY.  THIS SOMETIMES HAPPENS IN TRIAL.

11:01AM 20    THIS WILL BE A LONG TRIAL I TOLD YOU.

11:01AM 21          BUT YOU MIGHT HEAR TESTIMONY AND YOU MIGHT THINK, OH, I

11:01AM 22    THINK I SAW THAT.  I REMEMBER THIS, WHATEVER IT WAS,

11:01AM 23    DOCUMENTARY SPEAKING ABOUT THIS.

11:01AM 24          BUT IN THE DOCUMENTARY, THEY SAID THIS.  BUT NOW I'M

11:01AM 25    HEARING SOMETHING DIFFERENT.

11:01AM  1        DO YOU THINK YOU -- YOU MIGHT FIND YOURSELF IN THAT

11:01AM  2    SITUATION, AND WHAT DO YOU THINK YOU WOULD DO?

11:01AM  3              PROSPECTIVE JUROR:  I WILL LOOK AT THE EVIDENCE

11:01AM  4    PRESENTED ONLY IN THIS COURTHOUSE.

11:01AM  5        TO BE HONEST, I DON'T REMEMBER MUCH ABOUT THE DOCUMENTARY,

11:01AM  6    ONLY, LIKE, BITS AND PIECES.

11:01AM  7              THE COURT:  I SEE.  BUT IT DID AFFECT YOU SOMEHOW?

11:01AM  8              PROSPECTIVE JUROR:  YES, IT DID.

11:01AM  9              THE COURT:  RIGHT.  I APPRECIATE YOUR CANDOR.  THANK

11:01AM 10    YOU.  THANK YOU FOR BEING HONEST.  YOU TOLD US THAT IN

11:01AM 11    QUESTIONS 38.  QUESTION 39 YOU SAID, I MAY HAVE WATCHED IT AND

11:02AM 12    IT MAY AFFECT ME TO HAVE A BIAS AGAINST THE DEFENDANT.  THAT'S

11:02AM 13    WHAT WE'RE TALKING ABOUT NOW.

11:02AM 14        DO YOU THINK THAT YOU WOULD BE ABLE TO, OR CAN YOU PUT

11:02AM 15    ASIDE ANYTHING THAT YOU'VE SAID -- OR EXCUSE ME -- YOU'VE READ

11:02AM 16    OR YOU'VE SEEN, CAN YOU PUT THAT ASIDE?

11:02AM 17              PROSPECTIVE JUROR:  YES, I CAN.

11:02AM 18              THE COURT:  AND DO YOU HAVE CERTAINTY ABOUT THAT?

11:02AM 19              PROSPECTIVE JUROR:  YES.

11:02AM 20              THE COURT:  OKAY.  I'M GOING TO LET THESE LAWYERS

11:02AM 21    ASK YOU A QUESTION ABOUT THAT, OR TWO.  THEY MAY HAVE A

11:02AM 22    QUESTION ABOUT THAT.

11:02AM 23        WOULD THAT BE ALL RIGHT?

11:02AM 24              PROSPECTIVE JUROR:  YES.

11:02AM 25              THE COURT:  OKAY.  WHY DON'T YOU -- I WANT YOU TO BE

11:02AM 1     COMFORTABLE.  WHY DON'T YOU JUST SIT IN THAT CHAIR RIGHT THERE.

11:02AM 2                     PROSPECTIVE JUROR:  THIS ONE (INDICATING)?

11:02AM 3                     THE COURT:  YEAH, THAT'S FINE.

11:02AM 4          AND I'LL ASK MR. LEACH OR MR. SCHENK, DO YOU HAVE ANY

11:02AM 5     FURTHER QUESTIONS?

11:02AM 6                     MR. SCHENK:  NO FURTHER QUESTIONS.

11:02AM 7                     THE COURT:  MR. DOWNEY, DO YOU HAVE ANY FURTHER

11:02AM 8     QUESTIONS?

11:02AM 9                     MR. DOWNEY:  I DO, YOUR HONOR.  THANK YOU.

11:02AM 10                    THE COURT:  SURE.

11:02AM 11                    MR. DOWNEY:  LET ME REPEAT WHAT HIS HONOR SAID, WE

11:02AM 12    APPRECIATE YOUR HONESTY AND DON'T WANT THE FACT THAT YOU'RE IN

11:02AM 13    COURT OR THAT I REPRESENT MS. HOLMES TO LIMIT WHAT YOU SAY AS

11:03AM 14    TO ANY OPINIONS OR BIASES OR VIEWS ABOUT THE CASE THAT YOU

11:03AM 15    HOLD.

11:03AM 16         JUDGE DAVILA POINTED YOU A MOMENT AGO TO AN ANSWER THAT

11:03AM 17    YOU GAVE IN THE QUESTIONNAIRE WHERE YOU SAID, "THE DOCUMENTARY

11:03AM 18    THAT I HAVE WATCHED MAY HAVE AFFECTED ME TO HAVE BIAS AGAINST

11:03AM 19    THE DEFENDANT."

11:03AM 20         I JUST WANT TO ASK YOU, WHEN YOU WROTE THAT, WHAT WAS IN

11:03AM 21    YOUR MIND ABOUT MS. HOLMES FROM THE DOCUMENTARY?

11:03AM 22                    PROSPECTIVE JUROR:  WELL, THE DOCUMENTARY WAS -- YOU

11:03AM 23    MEAN LIKE A NEGATIVE PICTURE ABOUT THE DEFENDANT?  THAT SHE WAS

11:03AM 24    KNOWINGLY AND INTENTIONALLY COMMITTING THE FRAUD?

11:04AM 25                    THE COURT:  HANG ON JUST A SECOND, SIR.  WE'RE GOING

11:04AM  1    TO GET YOU A MICROPHONE.

11:04AM  2         I'M SORRY, MR. DOWNEY.  I APOLOGIZE.

11:04AM  3         MR. DOWNEY, IS THE TIMING ALL RIGHT TO CONTINUE WITH YOUR

11:04AM  4    EXAMINATION?

11:04AM  5             MR. DOWNEY:  I THINK.  MAY I JUST CHECK WITH ONE

11:04AM  6    ISSUE, YOUR HONOR?

11:04AM  7             THE COURT:  YES.

11:04AM  8             MR. DOWNEY:  YOUR HONOR, WHAT TIME WERE YOU THINKING

11:04AM  9    OF BREAKING FOR LUNCH?

11:04AM  10            THE COURT:  I HADN'T THOUGHT ABOUT BREAKING,

11:04AM  11   MR. DOWNEY.

11:04AM  12            MR. DOWNEY:  WE JUST HAD MENTIONED TO YOUR HONOR --

11:04AM  13            THE COURT:  I'M TEASING YOU.  I'M TEASING YOU.  I

11:04AM  14   THOUGHT WE WOULD BREAK AT NOON.  IF WE STARTED AT 9:00, I

11:04AM  15   THOUGHT WE WOULD BREAK AT NOON.  WE GOT A LATE START TODAY, AND

11:05AM  16   I'M NOT SURPRISED ABOUT THAT.  I'M HOPING THAT WE CAN BREAK IN

11:05AM  17   50 MINUTES AT NOON.

11:05AM  18            MR. DOWNEY:  OKAY.  WHY DON'T WE CONTINUE THEN.

11:05AM  19            THE COURT:  OKAY.  THANK YOU.

11:05AM  20            MR. DOWNEY:  YOU WERE EXPLAINING TO ME, SIR, WHY YOU

11:05AM  21   GAVE THE ANSWER WHERE YOU INDICATED THAT WHAT YOU WATCHED IN

11:05AM  22   THE DOCUMENTARY MAY HAVE AFFECTED YOU TO HAVE BIAS AGAINST

11:05AM  23   MS. HOLMES.

11:05AM  24         TELL ME ABOUT THAT.

11:05AM  25            PROSPECTIVE JUROR:  SO THE DOCUMENTARY WAS GIVING,

11:05AM 1    LIKE, A NEGATIVE PICTURE ABOUT THE DEFENDANT AND I THOUGHT

11:05AM 2    THAT -- YOU KNOW, I WAS GETTING, LIKE, A NEGATIVE IMAGE OF THE

11:05AM 3    DEFENDANT FROM THE DOCUMENTARY, AND THAT'S WHY I PUT THAT ON

11:05AM 4    THE QUESTIONNAIRE THAT I RECOGNIZE THAT I HAVE SOME BIAS.

11:05AM 5          BUT, YOU KNOW, I CAN TRY TO, LIKE, PUT THAT ASIDE.

11:06AM 6               MR. DOWNEY:  TELL US ABOUT THAT WHEN YOU SAY "PUT

11:06AM 7    ASIDE."

11:06AM 8          THIS WAS A DOCUMENTARY THAT YOU WATCHED HOW MANY YEARS

11:06AM 9    AGO?

11:06AM 10              PROSPECTIVE JUROR:  I THINK IT WAS A COUPLE YEARS

11:06AM 11   AGO.  I CAN'T REMEMBER WHAT TIME.

11:06AM 12              MR. DOWNEY:  OKAY.  AND THE DOCUMENTARY STUCK WITH

11:06AM 13   YOU ENOUGH THAT YOU REMEMBERED THE REACTION THAT YOU HAD TO IT;

11:06AM 14   IS THAT RIGHT?

11:06AM 15              PROSPECTIVE JUROR:  RIGHT -- I DON'T REMEMBER THE

11:06AM 16   EXACT INFORMATION, BUT I DO REMEMBER, LIKE, I WAS GETTING A

11:06AM 17   NEGATIVE VIBE FROM THAT DOCUMENTARY.

11:06AM 18              MR. DOWNEY:  AND DO YOU THINK IF YOU WERE SELECTED

11:06AM 19   AS A JUROR HERE THAT AS DEFENSE COUNSEL WE MIGHT BE STARTING --

11:07AM 20          (PAUSE IN PROCEEDINGS.)

11:07AM 21              THE COURT:  I'M SORRY, MR. CHUANG.  YOU CAN

11:07AM 22   CONTINUE.

11:07AM 23              PROSPECTIVE JUROR:  I CAN TRY TO PUT ASIDE THE BIAS

11:07AM 24   AS I SAID AND ONLY LOOK AT THE FACTS.

11:07AM 25              MR. DOWNEY:  DO YOU THINK WHEN WE START THE TRIAL OR

11:07AM  1      THE PRESENTATION OF EVIDENCE THAT, JUST AS MS. HOLMES'S

11:07AM  2      COUNSEL, THAT WE MIGHT BE A LITTLE BEHIND BECAUSE YOU ALREADY

11:07AM  3      HAVE A VIEW OF OUR CLIENT FROM THAT DOCUMENTARY?

11:07AM  4              PROSPECTIVE JUROR:  NO.  I WILL GIVE THE TRIAL LIKE

11:07AM  5      A FAIR GROUND, A FAIR SHOT FROM BOTH SIDES.

11:07AM  6              MR. DOWNEY:  WE WANT YOUR HONEST VIEW OF THAT

11:07AM  7      BECAUSE IT'S OBVIOUSLY IMPORTANT TO US IN MAKING DECISIONS AND

11:07AM  8      IT'S IMPORTANT TO JUDGE DAVILA.

11:07AM  9          SO DO YOU THINK IF THE PERSON INVOLVED HERE WERE NOT

11:07AM 10      MS. HOLMES, BUT SOMEBODY WHO WAS CLOSE TO YOU, THAT YOU'RE

11:08AM 11      SOMEONE WHO WOULD BE PROCEEDING WITHOUT ANY BIAS AS A JUROR?

11:08AM 12      WOULD YOU WANT SOMEONE WITH YOUR MINDSET TO BE A JUROR?

11:08AM 13              PROSPECTIVE JUROR:  NO.  I WANT A FAIR JUROR.

11:08AM 14              MR. DOWNEY:  TELL ME WHY THAT IS.

11:08AM 15              PROSPECTIVE JUROR:  WELL, BECAUSE I DON'T WANT ANY

11:08AM 16      BIAS OR OPINION TO AFFECT THE FAIRNESS OF THE TRIAL, SO I WOULD

11:08AM 17      WANT SOMEBODY, LIKE, WITH UNBIASSED OPINION TO COME IN AS A

11:08AM 18      JUROR.

11:08AM 19              MR. DOWNEY:  I APPRECIATE YOUR HONESTY, SIR, AND

11:08AM 20      OPENNESS WITH US.  I KNOW IT'S NOT EASY TO COME TO THIS FORUM,

11:08AM 21      SO I APPRECIATE IT.

11:08AM 22              THE COURT:  ANYTHING FURTHER?

11:08AM 23              MR. DOWNEY:  NOTHING, YOUR HONOR.

11:08AM 24              THE COURT:  SO, MR. CHUANG, THANK YOU FOR YOUR

11:08AM 25      CANDOR.  THANK YOU FOR BEING HONEST WITH US.

11:08AM   1          SO WHAT I HEARD YOU SAY A MOMENT AGO TO MR. DOWNEY'S

11:08AM   2     QUESTION, I'M NOT SURE -- I WANT TO MAKE SURE YOU UNDERSTOOD

11:08AM   3     HIS QUESTION.

11:09AM   4          I THINK HIS QUESTION WAS, IF YOU HAD A FAMILY MEMBER WHO

11:09AM   5     WAS IN A SITUATION AND THEY WERE IN A TRIAL AND THEY HAD A

11:09AM   6     JUROR WHO HAD YOUR MINDSET ABOUT THE CASE, WOULD YOU BE

11:09AM   7     COMFORTABLE HAVING THAT PERSON ON THE JURY?

11:09AM   8          DO YOU UNDERSTAND THAT QUESTION?  DID YOU UNDERSTAND THAT?

11:09AM   9          I THINK WHAT HE WAS ASKING YOU IN ESSENCE IS, IS YOUR BIAS

11:09AM  10     SUCH THAT -- AND I'M NOT SAYING IT'S WRONG, GOOD, BAD,

11:09AM  11     ANYTHING, BUT DO YOU HOLD A BIAS?  DO YOU HOLD STRONG FEELINGS

11:09AM  12     ABOUT THIS CASE SUCH THAT YOU THINK YOU CAN'T BE FAIR?

11:09AM  13               PROSPECTIVE JUROR:  I DON'T HAVE A STRONG FEELING

11:09AM  14     ABOUT THIS CASE.  I DON'T FEEL A STRONG FEELING ABOUT THIS

11:09AM  15     CASE.

11:09AM  16               THE COURT:  OKAY.  YOU HAVE SHARED WITH US WHAT YOU

11:09AM  17     HAVE SEEN AND WHAT YOU HAVE HEARD IN THAT SHOW.  YOU SAID THAT

11:10AM  18     THEY SAID SOME THINGS THERE THAT MADE AN IMPRESSION ON YOU.

11:10AM  19          LET ME JUST ASK YOU, CAN YOU BE FAIR TO MS. HOLMES?  DO

11:10AM  20     YOU THINK YOU COULD BE FAIR TO HER?

11:10AM  21               PROSPECTIVE JUROR:  YEAH, I THINK I CAN BE FAIR.

11:10AM  22               THE COURT:  OKAY.  CAN YOU PUT ASIDE ALL THAT YOU

11:10AM  23     HAVE SEEN IN THAT SHOW BEFORE AND LISTEN TO THIS CASE AND HEAR

11:10AM  24     THIS EVIDENCE WITHOUT, WITHOUT LETTING ANY OF THAT COME IN AND

11:10AM  25     AFFECT YOUR JUDGMENT ON THIS CASE?

11:10AM   1          PROSPECTIVE JUROR:  YES, I BELIEVE I CAN.

11:10AM   2          THE COURT:  DO YOU WANT TO THINK ABOUT THAT ANSWER?

11:10AM   3   IT'S -- IT'S -- I'M JUST SAYING, IT MIGHT BE A DIFFICULT THING

11:10AM   4   TO DO IF YOU'VE SEEN THIS, SEEN SOMETHING, EVEN IF IT'S A

11:10AM   5   COUPLE YEARS AGO, AND THEN IN THIS CASE IT'S HIGHLY LIKELY THAT

11:10AM   6   YOU'LL HEAR INFORMATION THAT MIGHT BE SIMILAR TO WHAT YOU SAW

11:10AM   7   ON THAT DOCUMENTARY, AND IT MAY CAUSE YOU TO THINK, WAIT A

11:10AM   8   MINUTE, I REMEMBER READING THIS OR SEEING THIS, WHY IS THIS

11:11AM   9   DIFFERENT?

11:11AM   10          BUT THAT'S NOT WHAT YOUR JOB HERE IS.  YOUR JOB IS JUST TO

11:11AM   11   DECIDE THE CASE ON WHAT YOU HEAR IN THIS COURTROOM.  I KNOW YOU

11:11AM   12   UNDERSTAND THAT.  I'VE SAID IT SEVERAL TIMES.

11:11AM   13          BUT I SAY IT SEVERAL TIMES BECAUSE IT'S CRITICAL.  IT'S

11:11AM   14   THE MOST IMPORTANT THING.  I JUST WANT TO KNOW WHETHER OR NOT

11:11AM   15   YOU CAN DO THAT.

11:11AM   16          AND IF YOU CAN'T, THAT'S FINE.  THAT'S FINE.

11:11AM   17          IF YOU CAN, THAT'S FINE, TOO.

11:11AM   18          THAT'S JUST A QUESTION THAT THESE LAWYERS AND I WOULD LIKE

11:11AM   19   TO KNOW.

11:11AM   20          PROSPECTIVE JUROR:  YEAH, I BELIEVE I CAN DO THAT, I

11:11AM   21   CAN BE FAIR.

11:11AM   22          THE COURT:  OKAY.  DO YOU HAVE ANY QUESTION ABOUT --

11:11AM   23   YOU KNOW, THIS IS A LONG TRIAL.  MAYBE SIX WEEKS FROM NOW YOU

11:11AM   24   MIGHT THINK, OH, I REMEMBER THIS, OH, MAYBE I BETTER THINK

11:11AM   25   DIFFERENTLY BECAUSE WHAT I SAW IN THAT SHOW IS DIFFERENT FROM

11:11AM 1    WHAT HAPPENED HERE IN THE COURTROOM.

11:11AM 2         IS THAT SOMETHING THAT YOU THINK COULD HAPPEN?  I KNOW YOU

11:11AM 3    CAN'T PREDICT THE FUTURE, BUT, YEAH, THAT MIGHT HAPPEN.

11:11AM 4              PROSPECTIVE JUROR:  WELL, THAT WAS A COUPLE YEARS

11:12AM 5    AGO SO I DON'T HAVE, LIKE, VERY FRESH MEMORIES OF THEM.

11:12AM 6              THE COURT:  OKAY.  OKAY.

11:12AM 7         MR. DOWNEY, ANY FOLLOWUP?

11:12AM 8              MR. DOWNEY:  LET ME JUST ASK YOU, SINCE YOU WATCHED

11:12AM 9    THE DOCUMENTARY, HAVE YOU EXPRESSED VIEWS ABOUT MS. HOLMES OR

11:12AM 10   THERANOS TO ANYONE?

11:12AM 11             PROSPECTIVE JUROR:  NO.

11:12AM 12             MR. DOWNEY:  YOU'VE NEVER DISCUSSED WATCHING THE

11:12AM 13   DOCUMENTARY WITH ANYONE?

11:12AM 14             PROSPECTIVE JUROR:  NO.

11:12AM 15             MR. DOWNEY:  WHEN YOU SAY YOU THINK YOU'LL BE ABLE

11:12AM 16   TO PUT IT ASIDE AND BE FAIR, DO YOU HAVE IN MIND HOW YOU'LL DO

11:12AM 17   THAT?

11:12AM 18             PROSPECTIVE JUROR:  WELL, I WILL LOOK AT THE FACTS

11:12AM 19   AND THE EVIDENCE AS PRESENTED AND DECIDE BASED ON THOSE ONLY.

11:12AM 20             MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.  I

11:12AM 21   APPRECIATE THAT.

11:12AM 22             PROSPECTIVE JUROR:  YOU'RE WELCOME.

11:12AM 23             THE COURT:  ALL RIGHT.

11:12AM 24        MR. SCHENK?

11:12AM 25             MR. SCHENK:  NO FOLLOWUP, YOUR HONOR.

11:12AM 1          THE COURT:  ALL RIGHT.  MR. CHUANG, THANK YOU SO

11:12AM 2     MUCH FOR TALKING WITH US.  JUST LEAVE THE MICROPHONE.  WHY

11:12AM 3     DON'T YOU GO AHEAD AND TAKE YOUR BREAK, AND WE'LL PROBABLY HAVE

11:13AM 4     FOLKS COME BACK IN ABOUT SEVEN MINUTES.

11:13AM 5          PROSPECTIVE JUROR:  OKAY.

11:13AM 6          THE COURT:  THANK YOU SO MUCH, SIR.

11:13AM 7       DO YOU WANT TO TAKE A BREAK FOR ABOUT SEVEN MINUTES?

11:13AM 8     YEAH.

11:13AM 9          THE CLERK:  COURT IS IN RECESS.

11:13AM 10       (RECESS FROM 11:13 A.M. UNTIL 11:23 A.M.)

11:23AM 11       (JURY IN AT 11:23 A.M.)

11:23AM 12          THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

11:23AM 13     PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

11:23AM 14       THANK YOU FOR THE BREAK, LADIES AND GENTLEMEN.  LET'S

11:23AM 15     CONTINUE.

11:23AM 16       ALL RIGHT.  I SAW SOME OTHER HANDS IN RESPONSE TO MY

11:23AM 17     QUESTION ABOUT NEWS COVERAGE.

11:24AM 18       LET'S GO BACK TO THE BOX HERE.  WERE THERE ANY OTHER HANDS

11:24AM 19     HERE IN RESPONSE TO MY QUESTION ABOUT NEWS COVERAGE?

11:24AM 20       I SEE NO HANDS.

11:24AM 21       I BEG YOUR PARDON.  IS THAT MR. RAO?

11:24AM 22          PROSPECTIVE JUROR:  YES.

11:24AM 23          THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE,

11:24AM 24     SIR.

11:24AM 25          PROSPECTIVE JUROR:  I'M JUROR NUMBER 26.

11:24AM  1              THE COURT:  THANK YOU.

11:24AM  2              PROSPECTIVE JUROR:  I DID SEE A DOCUMENTARY A COUPLE

11:24AM  3    OF YEARS BACK, AND SINCE THEN I'M NOT FOLLOWING THE CASE, BUT

11:24AM  4    JUST THAT IT PIQUED MY INTEREST AND I HAVE BEEN LOOKING AT THE

11:24AM  5    MAIN HEADLINES, BUT NOT THE CASE DETAILS AND SUCH.  YEAH.  I

11:24AM  6    KNOW THERE'S SOMETHING GOING ON THERE.

11:24AM  7              THE COURT:  YES.  AND CAN YOU TELL ME WHAT THE MOST

11:24AM  8    RECENT THING THAT YOU SAW OR HEARD OR --

11:24AM  9              PROSPECTIVE JUROR:  YEAH.  SO MORE RECENTLY -- I'M

11:24AM 10    NOT AN AVID FOLLOWER, SO I HAVEN'T LOOKED UP ANY OF THE

11:25AM 11    NEWSPAPER REPORTS ON THE INTERNET FOR THIS.  I HAVE BEEN VERY

11:25AM 12    BUSY AT WORK.

11:25AM 13        SO SUBSEQUENTLY I GOT THE CALL TO COME TO JURY DUTY FOR

11:25AM 14    THIS CASE, SO I HAVEN'T DONE ANY RESEARCH SINCE THEN.

11:25AM 15              THE COURT:  OKAY.  SO THAT WAS THE -- THE LAST THING

11:25AM 16    THAT YOU SAW WAS WHAT YOU TOLD US ABOUT IN YOUR QUESTIONNAIRE?

11:25AM 17              PROSPECTIVE JUROR:  RIGHT.

11:25AM 18              THE COURT:  AND I THINK YOU SAID IT WAS A --

11:25AM 19              PROSPECTIVE JUROR:  A COUPLE OF YEARS BACK I THINK

11:25AM 20    THERE WAS A DOCUMENTARY ON "20/20," I THINK.

11:25AM 21              THE COURT:  YES, ABC "20/20"?

11:25AM 22              PROSPECTIVE JUROR:  YEAH.

11:25AM 23              THE COURT:  RIGHT.  AND YOU WATCHED THAT ENTIRE

11:25AM 24    DOCUMENTARY?

11:25AM 25              PROSPECTIVE JUROR:  YES.

11:25AM   1          THE COURT:  DO YOU REMEMBER TODAY ANYTHING WITH

11:25AM   2   GREAT CLARITY -- I'M NOT GOING TO ASK YOU WHAT IT WAS, BUT DO

11:25AM   3   YOU HAVE RECALL OF THAT?

11:25AM   4          PROSPECTIVE JUROR:  I DO HAVE RECALL.  I THINK THE

11:25AM   5   THING THAT STRUCK ME WAS THE COMPANY --

11:25AM   6          THE COURT:  YES.

11:25AM   7          PROSPECTIVE JUROR:  -- SHE WAS SO YOUNG AND IT WAS

11:25AM   8   AN INSPIRATION OF HOW THE COMPANY EVOLVED AND WHAT CASES WERE

11:25AM   9   PART OF THAT.

11:25AM  10          THE COURT:  BUT IS THERE ANYTHING ABOUT WHAT YOU SAW

11:25AM  11   AND WHAT YOU RECALL THAT YOU THINK, MR. RAO, WILL AFFECT YOUR

11:25AM  12   ABILITY TO BE FAIR TO BOTH SIDES HERE?

11:25AM  13          PROSPECTIVE JUROR:  NO, IT WILL NOT IMPAIR MY

11:26AM  14   JUDGMENT.

11:26AM  15          THE COURT:  OKAY.  THANK YOU.  YOU CAN BE FAIR TO

11:26AM  16   BOTH SIDES?

11:26AM  17          PROSPECTIVE JUROR:  YES.

11:26AM  18          THE COURT:  ALL RIGHT.  AND YOU WILL DECIDE THE CASE

11:26AM  19   ONLY ON THE EVIDENCE THAT YOU HEAR IN THIS CASE?

11:26AM  20          PROSPECTIVE JUROR:  YES.

11:26AM  21          THE COURT:  YOU CAN DO THAT NOT WITH ANYTHING ELSE

11:26AM  22   THAT YOU MAY HAVE SEEN IN THE PAST?

11:26AM  23          PROSPECTIVE JUROR:  NO.

11:26AM  24          THE COURT:  ALL RIGHT.  I THINK IN RESPONSE TO

11:26AM  25   QUESTION NUMBER 39, YOU TOLD US THAT IT WOULD NOT AFFECT YOUR

11:26AM   1    ABILITY TO BE FAIR, AND QUESTION 65 YOU SAID YOU COULD BE FAIR?

11:26AM   2              PROSPECTIVE JUROR:  YES.

11:26AM   3              THE COURT:  THANK YOU.  YOU CAN BE SEATED.  THANK

11:26AM   4    YOU.

11:26AM   5         ALL RIGHT.  LET'S SEE.  WERE THERE OTHER HANDS HERE?

11:26AM   6    LET'S STAY IN OUR FRONT ROW HERE.

11:26AM   7         MR. WITHERSPOON?

11:26AM   8              PROSPECTIVE JUROR:  YES.

11:26AM   9              THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE.

11:26AM   10   THANK YOU.

11:27AM   11             PROSPECTIVE JUROR:  I'M JUROR 29.

11:27AM   12             THE COURT:  YES, SIR, THANK YOU.

11:27AM   13             PROSPECTIVE JUROR:  LIKE THE OTHERS, I SAW STUFF

11:27AM   14   ONLINE AND HEADLINES, AND I THINK I KNOW SOME OF THE DETAILS OF

11:27AM   15   THE CASE EITHER FROM A TED TALK OR SOMETHING.  IT WAS SOMETHING

11:27AM   16   ON YOUTUBE, RIGHT, AND I DON'T THINK I WATCHED IT ALL OF THE

11:27AM   17   WAY THROUGH.

11:27AM   18        I KNOW SOME OF THE DETAILS OF THE CASE, BUT I DON'T KNOW

11:27AM   19   ANYTHING ABOUT THE CURRENT, WHAT WE'RE HERE FOR.

11:27AM   20             THE COURT:  THANK YOU, MR. WITHERSPOON.

11:27AM   21        WHEN YOU SAY YOU KNOW THE DETAILS OF THE CASE, IS THAT

11:27AM   22   FROM WHAT YOU'VE SEEN?

11:27AM   23             PROSPECTIVE JUROR:  JUST SORT OF THE GENERAL

11:27AM   24   TIMELINE AND WHAT WAS DISCUSSED IN ANY OF THOSE.  BUT I DON'T

11:27AM   25   REALLY HAVE MUCH RECOLLECTION OF IT.  THERE WASN'T --

11:27AM  1          THE COURT:  I SEE.  SO THE SOURCE OF YOUR

11:27AM  2     INFORMATION IS FROM THOSE SHOWS THAT YOU'VE SEEN, THE YOUTUBE

11:27AM  3     AND THAT?  IS THAT WHAT YOU'RE SAYING?

11:27AM  4          PROSPECTIVE JUROR:  YES, YOUR HONOR.

11:27AM  5          THE COURT:  I SEE.  AND HOW LONG -- WHAT IS THE MOST

11:27AM  6     RECENT EXPOSURE, THE MOST RECENT THING THAT YOU HAVE SEEN?

11:28AM  7          PROSPECTIVE JUROR:  JUST THE NEWS AROUND THE CASE

11:28AM  8     UNFOLDING RIGHT NOW, JUST THE HEADLINES.

11:28AM  9          THE COURT:  AND TELL ME THE MOST RECENT THING THAT

11:28AM  10    YOU'VE READ, JUST THE DATE AND TIME STAMP THAT.

11:28AM  11         PROSPECTIVE JUROR:  OH, MY GOSH.  THIS WEEK I SAW A

11:28AM  12    HEADLINE, BUT I SORT OF AVOIDED IT.

11:28AM  13         THE COURT:  DID YOU READ THE ARTICLE?

11:28AM  14         PROSPECTIVE JUROR:  NO.

11:28AM  15         THE COURT:  AND THAT WAS AT A TIME BEFORE YOU FILLED

11:28AM  16    OUT THE QUESTIONNAIRE OR AFTER?

11:28AM  17         PROSPECTIVE JUROR:  IT WAS AFTER.

11:28AM  18         THE COURT:  OKAY.  AND IN THE QUESTIONNAIRE -- I'M

11:28AM  19    CURIOUS IF YOU REMEMBER THE QUESTIONNAIRE TELLING YOU, I THINK

11:28AM  20    IT WAS ONE OF THE QUESTIONS HAD A LONG STATEMENT ABOUT JURORS

11:28AM  21    NOT LETTING OUTSIDE INFORMATION AFFECT THEM, AND HAVING READ

11:28AM  22    THAT, IS THAT WHY YOU DIDN'T FINISH THAT ARTICLE?

11:28AM  23         PROSPECTIVE JUROR:  YES, SIR.

11:28AM  24         THE COURT:  ALL RIGHT.  WELL, THANK YOU.  I

11:28AM  25    APPRECIATE YOUR FIDELITY TO THE INSTRUCTIONS AND TO THE

| | | |
|---|---|---|
| 11:28AM | 1 | OBLIGATIONS OF THE JURORS. |
| 11:28AM | 2 | SO, MR. WITHERSPOON, IS THERE ANYTHING ABOUT YOUR |
| 11:28AM | 3 | RECOLLECTION OF WHAT YOU'VE SEEN ON YOUTUBE OR ANY OF THOSE |
| 11:28AM | 4 | THINGS THAT YOU THINK WILL AFFECT IN ANY WAY YOUR ABILITY TO BE |
| 11:29AM | 5 | FAIR AND IMPARTIAL TO BOTH SIDES HERE? |
| 11:29AM | 6 | PROSPECTIVE JUROR:  I DON'T THINK IT WILL AFFECT MY |
| 11:29AM | 7 | ABILITY TO BE IMPARTIAL. |
| 11:29AM | 8 | THE COURT:  OKAY.  DO YOU HAVE GREAT CLARITY AND |
| 11:29AM | 9 | ASSURANCE OF THAT? |
| 11:29AM | 10 | PROSPECTIVE JUROR:  YES. |
| 11:29AM | 11 | THE COURT:  DO YOU THINK THAT YOU MIGHT, IF YOU SIT |
| 11:29AM | 12 | AS A JUROR IN THIS CASE AND SOME EVIDENCE COMES UP, THAT IT |
| 11:29AM | 13 | MIGHT TRIGGER A RECALL FROM SOMETHING YOU'VE SEEN IN THAT |
| 11:29AM | 14 | VIDEO, DO YOU THINK YOU MIGHT HAVE TROUBLE BALANCING WHAT |
| 11:29AM | 15 | YOU'VE SEEN ON THE YOUTUBE VIS-A-VIS WHAT YOU'VE HEARD IN THE |
| 11:29AM | 16 | COURTROOM?  WOULD THAT BE AN ISSUE FOR YOU? |
| 11:29AM | 17 | PROSPECTIVE JUROR:  NO. |
| 11:29AM | 18 | THE COURT:  WOULD YOU BE ABLE TO SEPARATE THOSE? |
| 11:29AM | 19 | PROSPECTIVE JUROR:  YES. |
| 11:29AM | 20 | THE COURT:  YOU'VE HEARD ME TALK AT GREAT LENGTH |
| 11:29AM | 21 | ABOUT THE NEED TO DECIDE THE CASE, IF YOU'RE A JUROR, ONLY ON |
| 11:29AM | 22 | THE EVIDENCE IN THIS COURTROOM.  TO DO THAT, YOU'RE FAIR TO THE |
| 11:29AM | 23 | GOVERNMENT AND YOU'RE FAIR TO MS. HOLMES.  CAN YOU DO THAT, |
| 11:29AM | 24 | SIR? |
| 11:29AM | 25 | PROSPECTIVE JUROR:  YES. |

| | | |
|---|---|---|
| 11:29AM | 1 | THE COURT:  RIGHT.  ANY QUESTION ABOUT THAT? |
| 11:29AM | 2 | PROSPECTIVE JUROR:  NO. |
| 11:30AM | 3 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 11:30AM | 4 | ARE THERE OTHER HANDS IN THE FRONT ROW?  LET ME SEE, IS |
| 11:30AM | 5 | THAT MS. GROGAN? |
| 11:30AM | 6 | I'M SORRY. |
| 11:30AM | 7 | PROSPECTIVE JUROR:  I'M SORRY, I'M JUROR NUMBER 31. |
| 11:30AM | 8 | THE COURT:  YES. |
| 11:30AM | 9 | PROSPECTIVE JUROR:  SO I THINK IT WOULD BE IMPORTANT |
| 11:30AM | 10 | TO MENTION THAT AT WORK I PARTICIPATE IN SOCIAL CHANNELS VIA |
| 11:30AM | 11 | OUR CHAT PROGRAM SLACK, AND THERE WAS AN ARTICLE SHARED SINCE |
| 11:30AM | 12 | THE QUESTIONNAIRE WAS FILLED OUT. |
| 11:30AM | 13 | I DID NOT READ IT, HOWEVER.  I DID SEE THE TITLE, AND SO I |
| 11:30AM | 14 | WANT TO MAKE SURE THAT I SAY THAT. |
| 11:30AM | 15 | THE COURT:  THANK YOU FOR RECOGNIZING THE IMPORTANCE |
| 11:30AM | 16 | OF THAT.  I APPRECIATE THAT.  WE ALL APPRECIATE THAT. |
| 11:30AM | 17 | YOU SAW THE HEADLINE, BUT YOU DIDN'T READ THE ARTICLE, AND |
| 11:31AM | 18 | THIS WAS SUBSEQUENT TO YOUR COMPLETING THE QUESTIONNAIRE? |
| 11:31AM | 19 | PROSPECTIVE JUROR:  CORRECT.  IT WAS AFTER. |
| 11:31AM | 20 | THE COURT:  RIGHT.  I SEE.  AND YOU RECOGNIZED YOUR |
| 11:31AM | 21 | RESPONSIBILITY TO STAY AWAY FROM THAT? |
| 11:31AM | 22 | PROSPECTIVE JUROR:  CORRECT, YES. |
| 11:31AM | 23 | THE COURT:  RIGHT.  IS THAT THE ONLY EXPOSURE THAT |
| 11:31AM | 24 | YOU'VE HAD? |
| 11:31AM | 25 | PROSPECTIVE JUROR:  YES. |

11:31AM 1          THE COURT:  OKAY.  ANYTHING ABOUT THAT EXPOSURE THAT

11:31AM 2    WILL IMPAIR YOUR ABILITY TO BE FAIR AND IMPARTIAL?

11:31AM 3          PROSPECTIVE JUROR:  NO, I DON'T THINK SO.

11:31AM 4          THE COURT:  ANYTHING AT ALL THAT YOU THINK RAISES A

11:31AM 5    QUESTION OF BIAS IN YOUR MIND AS TOWARDS OR AGAINST EITHER OF

11:31AM 6    THE PARTIES IN THIS CASE?

11:31AM 7          PROSPECTIVE JUROR:  I DO BELIEVE THAT MY -- I MEAN,

11:31AM 8    I MENTIONED IN THE QUESTIONNAIRE AS WELL THAT I'VE CONSUMED

11:31AM 9    SOME MATERIAL ABOUT THIS CASE, SO I DO BELIEVE THAT BEFORE

11:31AM 10   BEING CALLED TO JURY DUTY, YOU KNOW, I HAD SOME AWARENESS OF

11:31AM 11   IT.

11:31AM 12       HOWEVER, I DO STILL ALSO BELIEVE THAT I AM CAPABLE OF

11:31AM 13   PUTTING THOSE BIASES ASIDE, CRITICALLY THINKING ABOUT, YOU

11:32AM 14   KNOW, WHAT IS ACTUALLY PRESENTED IN THE TRIAL.

11:32AM 15         THE COURT:  SO I THINK YOU READ A BOOK ABOUT THIS

11:32AM 16   CASE?

11:32AM 17         PROSPECTIVE JUROR:  I DID, YES.

11:32AM 18         THE COURT:  RIGHT.  RIGHT.  AND HOW LONG AGO WAS

11:32AM 19   THAT?

11:32AM 20         PROSPECTIVE JUROR:  AT LEAST A YEAR AGO.  PROBABLY

11:32AM 21   MORE.  BEFORE THE PANDEMIC.

11:32AM 22         THE COURT:  OKAY.

11:32AM 23         PROSPECTIVE JUROR:  WHATEVER TIME WAS BEFORE THEN.

11:32AM 24         THE COURT:  RIGHT.  IT SEEMS LIKE SUCH A LONG TIME

11:32AM 25   AGO, DOESN'T IT?

11:32AM 1          PROSPECTIVE JUROR:  YES.

11:32AM 2          THE COURT:  RIGHT.  AND I READ THAT IN YOUR

11:32AM 3    QUESTIONNAIRE, AND I APPRECIATE YOUR CANDOR.

11:32AM 4        THE QUESTION IT RAISES FOR ME, AND I'M SURE THESE LAWYERS,

11:32AM 5    TOO, YOU KNOW, MS. GROGAN HAS READ A BOOK THAT WAS SPECIFICALLY

11:32AM 6    POINTED TOWARDS AT LEAST THE FACTS THAT WERE DISCUSSED IN THIS

11:32AM 7    CASE.

11:32AM 8          PROSPECTIVE JUROR:  CORRECT.

11:32AM 9          THE COURT:  WHAT AND HOW WILL THAT IMPACT HER AS TO

11:32AM 10   SIT AS A -- YOU HEARD ME TALK AS WHAT WE'RE LOOKING FOR IS FAIR

11:32AM 11   AND UNBIASSED JURORS.  OF COURSE WE CAN'T ASK YOU TO UNREAD THE

11:32AM 12   BOOK.

11:32AM 13         PROSPECTIVE JUROR:  YEAH, I DON'T THINK I COULD DO

11:32AM 14   THAT.

11:32AM 15         THE COURT:  SO THEN THE NEXT STEP IS, WELL, HOW CAN

11:32AM 16   YOU -- HAVING READ THE BOOK, HOW CAN YOU, HOW CAN YOU PUT THAT

11:33AM 17   ASIDE, WHAT YOU'VE READ, AND BE A FAIR AND IMPARTIAL JUROR IN

11:33AM 18   THIS CASE.

11:33AM 19         PROSPECTIVE JUROR:  I THINK THAT'S A FAIR QUESTION.

11:33AM 20     I BELIEVE IT HAS TO DO WITH ACKNOWLEDGING WHERE KNOWLEDGE

11:33AM 21   COMES FROM AND BEING ABLE TO IDENTIFY THAT AND SAY THIS IS THE

11:33AM 22   KNOWLEDGE THAT I HAVE FROM THIS PERIOD.  IT'S NOT PART OF MY

11:33AM 23   DECISION MAKING.

11:33AM 24     I THINK I MENTIONED EARLIER THAT I BELIEVE, YOU KNOW, I

11:33AM 25   HAVE THE ABILITY TO PUT THOSE THINGS ASIDE AND I HAVE CRITICAL

11:33AM 1      THINKING SKILLS.

11:33AM 2          HOWEVER, THAT IS MY BELIEF AND I ATTEST TO THAT I WILL DO

11:33AM 3      WHAT I CAN TO MAKE SURE THAT THAT IS THE CASE.  YEAH.

11:33AM 4          THE COURT:  WELL, WHAT I HEAR YOU SAYING, AND I'M

11:33AM 5      NOT PUTTING WORDS IN YOUR MOUTH, BUT WHAT I HEAR YOU SAYING IS,

11:33AM 6      JUDGE, I'M GOING TO DO THE BEST THAT I CAN.

11:33AM 7          PROSPECTIVE JUROR:  YES.

11:34AM 8          THE COURT:  AND WHAT HAPPENS IF -- DO I HAVE TO BE

11:34AM 9      CONCERNED THAT MS. GROGAN IS DOING THE BEST THAT SHE CAN, BUT

11:34AM 10     AT ONE POINT SHE'S GOING TO REMEMBER CHAPTER, WHATEVER, 15 OR

11:34AM 11     SOMETHING AND NOW WE'RE OFF TO THE RACES BECAUSE THAT HAS

11:34AM 12     INFECTED HER --

11:34AM 13         PROSPECTIVE JUROR:  ABILITY?

11:34AM 14         THE COURT:  -- THOUGHT PROCESS.  RIGHT, RIGHT.

11:34AM 15         PROSPECTIVE JUROR:  BUT I THINK MY CORRECT APPROACH

11:34AM 16     WOULD BE TO LET YOU ALL KNOW AND EXCUSE MYSELF FOR SOME OTHER

11:34AM 17     KIND OF INFORMATION.  IS THAT CORRECT?  I DON'T KNOW IF THAT'S

11:34AM 18     THE RIGHT ANSWER.

11:34AM 19         THE COURT:  WELL, THIS ISN'T A TEST, I PROMISE YOU.

11:34AM 20     YOU'RE AFFILIATED WITH SLACK.

11:34AM 21         PROSPECTIVE JUROR:  I'M SORRY?

11:34AM 22         THE COURT:  ARE YOU AFFILIATED WITH SLACK?

11:34AM 23         PROSPECTIVE JUROR:  NO.  THAT WAS THE CHAT PROGRAM

11:34AM 24     THAT I WAS DESCRIBING EARLIER.

11:34AM 25         THE COURT:  I SEE.  THERE'S NO RIGHT OR WRONG

11:34AM 1    ANSWERS HERE.  THERE REALLY ISN'T.

11:34AM 2              PROSPECTIVE JUROR:  OKAY.

11:34AM 3              THE COURT:  WE'RE PROBING FOR FAIRNESS.  WE REALLY

11:34AM 4    ARE.  I HOPE YOU APPRECIATE THAT.

11:34AM 5              PROSPECTIVE JUROR:  THAT'S FAIR.  YES.

11:35AM 6              THE COURT:  AND THAT'S A CONCERN THAT I'M SURE THESE

11:35AM 7    LAWYERS HAVE, I HAVE, AS TO IT WILL BE A LONG TRIAL AND DOWN

11:35AM 8    THE ROAD, OKAY, HERE COMES CHAPTER 15, I CAN NO LONGER BE FAIR.

11:35AM 9         WE'RE ASKING YOU TO PREDICT, I SUPPOSE, TODAY.  CAN YOU BE

11:35AM 10   FAIR TODAY AND CAN YOU BE FAIR THROUGHOUT THE DURATION OF THE

11:35AM 11   TRIAL?  CAN YOU KEEP THAT SPIRIT OF FAIRNESS, THAT FIDELITY TO

11:35AM 12   FAIRNESS TO BOTH SIDES HERE?

11:35AM 13        THAT'S WHAT WE ASK OF YOU.  THAT'S WHAT WE ASK OF JURORS.

11:35AM 14   THAT'S WHAT WE'RE ASKING YOU TO DO.

11:35AM 15        WHAT DO YOU THINK?

11:35AM 16             PROSPECTIVE JUROR:  AS I MENTIONED IN MY

11:35AM 17   QUESTIONNAIRE, I DO BELIEVE THAT I HAVE THE CAPACITY TO, AGAIN,

11:35AM 18   CRITICALLY THINK ABOUT INFORMATION PRESENTED TO ME.

11:35AM 19        I DON'T THINK THAT ANY HUMAN ON THE PLANET IS CAPABLE OF

11:35AM 20   HAVING ABSOLUTELY NO BIASES, BUT IT'S MORE IMPORTANT THAT THEY

11:35AM 21   CAN ACKNOWLEDGE AND RECOGNIZE THAT THEY HAVE THEM.

11:36AM 22        THAT SAID, I AM ACTUALLY, LIKE, MAYBE A LITTLE SURPRISED

11:36AM 23   THAT CONSIDERING MY CONSUMPTION OF MEDIA I'M EVEN HERE, SO I

11:36AM 24   DON'T KNOW, MAYBE I -- I DON'T KNOW.

11:36AM 25             THE COURT:  I'M SORRY.  MAYBE YOU CAN EXPLAIN THAT

11:36AM 1      TO ME.

11:36AM 2                  PROSPECTIVE JUROR:  YEAH.  I KIND OF LIKE ASSUMED

11:36AM 3      THAT THE FACT THAT I MENTIONED THAT I READ SOMETHING OR I EVEN

11:36AM 4      SAW SOMETHING, THAT THAT WOULD, YOU KNOW, LIKE DISMISS ME

11:36AM 5      IMMEDIATELY REGARDLESS OF WHETHER OR NOT I COULD SAY THAT I

11:36AM 6      WOULD PUT THAT ASIDE.

11:36AM 7                  THE COURT:  RIGHT.  I SEE.

11:36AM 8         WELL, WE ASK JURORS TO BE CANDID ABOUT THEMSELVES, AND YOU

11:36AM 9      HAVE BEEN, AND YOUR COLLEAGUES HAVE BEEN, AND YOU'VE READ THE

11:36AM 10     BOOK, AND THAT'S WHY WE'RE PROBING, WHAT DOES THAT MEAN?

11:36AM 11     YOU'VE READ THE BOOK.  DOES THAT MEAN THAT YOU CAN'T BE FAIR?

11:36AM 12     IS THAT WHAT, IS THAT WHAT YOU'RE SAYING?  OR --

11:37AM 13                 PROSPECTIVE JUROR:  I AM NOT SAYING THAT, NO.

11:37AM 14                 THE COURT:  I SEE.

11:37AM 15        YOU'RE SAYING YOU'VE READ THE BOOK, YOU UNDERSTAND THE JOB

11:37AM 16     DESCRIPTION FOR A JUROR, AND YOU'RE TELLING ME THAT YOU CAN

11:37AM 17     ADHERE TO THE JOB DESCRIPTION OF A JUROR TO DECIDE THIS CASE

11:37AM 18     ONLY ON THE EVIDENCE HERE AND PUT ASIDE ANYTHING THAT YOU'VE

11:37AM 19     BEEN EXPOSED TO?

11:37AM 20        CAN YOU DO THAT?

11:37AM 21                 PROSPECTIVE JUROR:  CORRECT.  YES.

11:37AM 22                 THE COURT:  ANY DOUBT ABOUT THAT?

11:37AM 23                 PROSPECTIVE JUROR:  NO.

11:37AM 24                 THE COURT:  OKAY.  I'M GOING TO ASK MR. SCHENK IF HE

11:37AM 25     HAS ANY QUESTIONS ON THIS TOPIC.

| | | |
|---|---|---|
| 11:37AM | 1 | MR. SCHENK:  NO QUESTIONS.  THANK YOU. |
| 11:37AM | 2 | THE COURT:  MR. DOWNEY? |
| 11:37AM | 3 | MR. DOWNEY:  MS. GROGAN, YOU READ THE BOOK |
| 11:37AM | 4 | "BAD BLOOD;" CORRECT? |
| 11:37AM | 5 | PROSPECTIVE JUROR:  CORRECT. |
| 11:37AM | 6 | MR. DOWNEY:  HOW LONG DID IT TAKE YOU TO READ THAT? |
| 11:37AM | 7 | PROSPECTIVE JUROR:  OH, I DON'T KNOW. |
| 11:37AM | 8 | MR. DOWNEY:  DO YOU HAVE AN ESTIMATE? |
| 11:37AM | 9 | PROSPECTIVE JUROR:  PROBABLY OVER A WEEK OR MORE, |
| 11:37AM | 10 | YEAH. |
| 11:37AM | 11 | MR. DOWNEY:  OKAY.  AND WHILE YOU WERE READING IT, |
| 11:37AM | 12 | DID YOU DISCUSS IT WITH ANYONE? |
| 11:38AM | 13 | PROSPECTIVE JUROR:  YES, MY PARTNER. |
| 11:38AM | 14 | MR. DOWNEY:  AND DID YOU EXPRESS ANY VIEWS ABOUT |
| 11:38AM | 15 | THERANOS OR MS. HOLMES WHEN YOU WERE DISCUSSING IT? |
| 11:38AM | 16 | PROSPECTIVE JUROR:  YES. |
| 11:38AM | 17 | MR. DOWNEY:  YOUR HONOR, I WONDER IF WE MIGHT -- |
| 11:38AM | 18 | THE COURT:  YOU WANT TO PASS -- |
| 11:38AM | 19 | MR. DOWNEY:  -- PASS ON THAT ISSUE FOR RIGHT NOW AND |
| 11:38AM | 20 | MAYBE WE CAN HAVE A SEPARATE DISCUSSION RELATED TO THAT. |
| 11:38AM | 21 | THE COURT:  ANY OTHER QUESTIONS YOU WANT TO ASK NOW, |
| 11:38AM | 22 | MR. DOWNEY? |
| 11:38AM | 23 | MR. DOWNEY:  YEAH.  I JUST WANT TO ASK YOU ABOUT |
| 11:38AM | 24 | YOUR STATEMENTS IN THE QUESTIONNAIRE AS TO BIAS. |
| 11:38AM | 25 | DO YOU FEEL LIKE YOU'VE BEEN EXPOSED TO A LOT OF |

11:38AM 1     INFORMATION ABOUT WHAT HAPPENED AT THERANOS?

11:38AM 2            PROSPECTIVE JUROR:  I WOULD PROBABLY ASK YOU TO

11:38AM 3     DEFINE "A LOT."

11:38AM 4            MR. DOWNEY:  WELL, THAT'S A FAIR QUESTION.

11:38AM 5         DID YOU FEEL LIKE YOU LEARNED AT LEAST A BASIC STORY AS TO

11:38AM 6     WHAT HAS BEEN CLAIMED THAT HAPPENED AT THERANOS?

11:38AM 7            PROSPECTIVE JUROR:  I BELIEVE I LEARNED A BASIC

11:39AM 8     STORY, YES.

11:39AM 9            THE COURT:  AND WITHOUT TELLING US WHAT IT IS, HAS

11:39AM 10    THAT GIVEN YOU ANY VIEW ON MS. HOLMES ONE WAY OR ANOTHER?

11:39AM 11           PROSPECTIVE JUROR:  NOT NECESSARILY, NO.

11:39AM 12           MR. DOWNEY:  OKAY.  SO YOU'VE BEEN ABLE TO ABSORB

11:39AM 13    THAT WITHOUT HAVING A VIEW AS TO MS. HOLMES?

11:39AM 14           PROSPECTIVE JUROR:  CORRECT.

11:39AM 15           MR. DOWNEY:  OKAY.  WE CAN HAVE THE DISCUSSION I

11:39AM 16    THINK RELATED TO THE REST OF IT LATER.

11:39AM 17           THE COURT:  WE'LL SEE IF WE HAVE A DISCUSSION.

11:39AM 18    MS. GROGAN.  THANK YOU.

11:39AM 19         ANYTHING FURTHER, MR. DOWNEY?

11:39AM 20           MR. DOWNEY:  LET ME ASK YOU ONE QUESTION MAYBE OUT

11:39AM 21    OF CURIOSITY.

11:39AM 22           PROSPECTIVE JUROR:  SURE.

11:39AM 23           MR. DOWNEY:  YOU SAID YOU WERE SURPRISED TO BE

11:39AM 24    HERE --

11:39AM 25           PROSPECTIVE JUROR:  YES.

11:39AM 1          MR. DOWNEY:  -- SIMPLY BECAUSE YOU READ THE BOOK.

11:39AM 2          PROSPECTIVE JUROR:  RIGHT.

11:39AM 3          MR. DOWNEY:  AND TELL ME, WHAT ASSUMPTION WERE YOU

11:39AM 4   HAVING WHEN YOU SAID YOU WERE SURPRISED TO BE HERE?

11:39AM 5          PROSPECTIVE JUROR:  I SORT OF HAVE BEEN OF THE

11:39AM 6   ASSUMPTION THAT IF ANYONE HAS CONSUMED ANYTHING ABOUT A GIVEN

11:39AM 7   CASE, THAT THEY WOULD AUTOMATICALLY BE UNABLE TO SERVE ON A

11:39AM 8   JURY.

11:39AM 9      SO THE FACT THAT I CONSUMED ANY INFORMATION AT ALL SEEMED

11:39AM 10  LIKE A DISQUALIFYING FACTOR, BUT MAYBE THAT WAS AN INCORRECT

11:39AM 11  ASSUMPTION ON MY PART.

11:40AM 12         MR. DOWNEY:  TELL ME WHY YOU THOUGHT PEOPLE KNOWING

11:40AM 13  ABOUT SOMETHING ABOUT A CASE IN ADVANCE MIGHT DISQUALIFY THEM.

11:40AM 14         PROSPECTIVE JUROR:  PROBABLY LIKE T.V. SHOWS, JUST

11:40AM 15  LIKE A POOR UNDERSTANDING OF THE COURTROOM.

11:40AM 16         MR. DOWNEY:  YOU'RE TELLING US EXACTLY WHY AND

11:40AM 17  YOU'RE BEING VERY HONEST.

11:40AM 18      I THINK THAT'S ALL FOR RIGHT NOW, YOUR HONOR.

11:40AM 19         PROSPECTIVE JUROR:  OKAY.

11:40AM 20         THE COURT:  THANK YOU.  WE APPRECIATE IT.

11:40AM 21         PROSPECTIVE JUROR:  ANYTHING ELSE?

11:40AM 22         THE COURT:  OH, DON'T ASK QUESTIONS, MS. GROGAN.

11:40AM 23      THERE WAS ANOTHER HAND IN YOUR ROW, WASN'T THERE,

11:40AM 24  MS. GROGAN?

11:40AM 25         YES, LET'S SEE.  MR. WONG, WHY DON'T YOU COME FORWARD.

11:40AM 1      THANK YOU, SIR.

11:40AM 2          AND WHAT JUROR NUMBER ARE YOU, MR. WONG?

11:40AM 3              PROSPECTIVE JUROR:  46.

11:40AM 4              THE COURT:  46.

11:40AM 5              PROSPECTIVE JUROR:  SO THERE WAS A "60 MINUTES"

11:40AM 6      SEGMENT A FEW YEARS AGO, SO I WATCHED THAT.

11:41AM 7              THE COURT:  YES.

11:41AM 8              PROSPECTIVE JUROR:  AND TALKED WITH MY FRIENDS.

11:41AM 9      ACTUALLY THEY KNOW A LOT MORE THAN I DO.  THEY WATCHED THE

11:41AM 10     DOCUMENTARY, READ THE BOOK, AND WE WERE JUST TALKING ABOUT

11:41AM 11     INVESTMENTS IN GENERAL.  SO THAT WAS MY EXPOSURE.

11:41AM 12             THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THAT

11:41AM 13     EXPOSURE THAT YOU THINK WILL AFFECT YOUR ABILITY TO BE FAIR TO

11:41AM 14     BOTH SIDES?

11:41AM 15             PROSPECTIVE JUROR:  NO.

11:41AM 16             THE COURT:  NOTHING ABOUT THAT.

11:41AM 17         I THINK YOU TOLD US IN RESPONSE TO QUESTION 39 THAT YOU

11:41AM 18     CAN BE FAIR, AND IN QUESTION 62 AND 65.

11:41AM 19             PROSPECTIVE JUROR:  YES.

11:41AM 20             THE COURT:  RIGHT.  ANY CHANGE ABOUT THAT?

11:41AM 21             PROSPECTIVE JUROR:  NO.

11:41AM 22             THE COURT:  YOU CAN BE FAIR TO BOTH SIDES?

11:41AM 23             PROSPECTIVE JUROR:  YES.

11:41AM 24             THE COURT:  ANY DOUBT ABOUT THAT IN YOUR MIND?

11:41AM 25             PROSPECTIVE JUROR:  NO DOUBT.

11:41AM 1             THE COURT:  OKAY.  THANK YOU.

11:41AM 2             PROSPECTIVE JUROR:  I ALSO WANTED TO MENTION THAT

11:41AM 3  OVER THE WEEKEND THERE WAS AN NPR ARTICLE THAT CAME UP OVER THE

11:42AM 4  WEEKEND.

11:42AM 5             THE COURT:  I SEE.

11:42AM 6             PROSPECTIVE JUROR:  AND I READ IT, I FINISHED THE

11:42AM 7  ARTICLE AND THEN I REALIZED I SHOULDN'T BE READING THAT, SO I'M

11:42AM 8  SORRY.

11:42AM 9             THE COURT:  NO.  THANK YOU FOR YOUR CANDOR.  I

11:42AM 10  APPRECIATE THAT.

11:42AM 11         DID THAT AFFECT -- WHAT YOU READ, WILL THAT AFFECT YOUR

11:42AM 12  ABILITY TO BE FAIR AND IMPARTIAL HERE?

11:42AM 13             PROSPECTIVE JUROR:  NO.

11:42AM 14             THE COURT:  AND CAN YOU PUT WHATEVER YOU READ IN

11:42AM 15  THAT MOST RECENT ARTICLE ASIDE AND DECIDE THIS CASE ONLY ON THE

11:42AM 16  EVIDENCE HERE?

11:42AM 17             PROSPECTIVE JUROR:  YES.

11:42AM 18             THE COURT:  ANY DOUBT THAT YOU CAN DO THAT?

11:42AM 19             PROSPECTIVE JUROR:  NO DOUBT.

11:42AM 20             THE COURT:  YOU'LL BE ABLE TO DO THAT, SIR?

11:42AM 21             PROSPECTIVE JUROR:  YES.

11:42AM 22             THE COURT:  OKAY.  THANK YOU.

11:42AM 23         THE NEXT ROW, WHERE THERE HANDS IN THE NEXT ROW BEHIND?

11:42AM 24  YES, I SEE A HAND THERE.  IS THAT MR. ROBBINS?

11:42AM 25             PROSPECTIVE JUROR:  RIGHT.

| | | |
|---|---|---|
| 11:42AM | 1 | THE COURT:  YES. |
| 11:43AM | 2 | PROSPECTIVE JUROR:  JUROR NUMBER 50. |
| 11:43AM | 3 | THE COURT:  THANK YOU, SIR. |
| 11:43AM | 4 | WHAT IS IT YOU WOULD LIKE ME TO KNOW? |
| 11:43AM | 5 | PROSPECTIVE JUROR:  I THINK I SAID IT IN THE |
| 11:43AM | 6 | QUESTIONNAIRE, BUT THE NAME RECOGNITION OF THE COMPANY WAS A |
| 11:43AM | 7 | COUPLE YEARS AGO WHEN THE SCANDAL JUST BROKE ON THE NEWS, SO I |
| 11:43AM | 8 | JUST PRETTY MUCH JUST READ HEADLINES.  I DIDN'T REALLY FOLLOW |
| 11:43AM | 9 | THE STORY. |
| 11:43AM | 10 | THE COURT:  OKAY. |
| 11:43AM | 11 | PROSPECTIVE JUROR:  THIS MORNING THERE WAS A BLURB |
| 11:43AM | 12 | ON NPR ABOUT IT, BUT I LEFT THE ROOM FOR THAT. |
| 11:43AM | 13 | THE COURT:  I SEE.  OKAY. |
| 11:43AM | 14 | IS THAT THE MOST RECENT EXPOSURE YOU'VE HAD? |
| 11:43AM | 15 | PROSPECTIVE JUROR:  YEAH. |
| 11:43AM | 16 | THE COURT:  THIS MORNING? |
| 11:43AM | 17 | PROSPECTIVE JUROR:  (NODS HEAD UP AND DOWN.) |
| 11:43AM | 18 | THE COURT:  ANYTHING OVER THE WEEKEND OR LAST WEEK? |
| 11:43AM | 19 | PROSPECTIVE JUROR:  NO. |
| 11:43AM | 20 | THE COURT: |
| 11:43AM | 21 | THANK YOU.  ANYTHING ABOUT THOSE EXPERIENCES THAT YOU |
| 11:43AM | 22 | THINK WILL AFFECT IN ANY WAY YOUR ABILITY TO BE FAIR AND |
| 11:43AM | 23 | IMPARTIAL TO BOTH SIDES HERE IF YOU'RE SELECTED AS A JUROR? |
| 11:43AM | 24 | PROSPECTIVE JUROR:  YEAH.  I DON'T THINK SO BECAUSE |
| 11:43AM | 25 | I DIDN'T REALLY FOLLOW THE STORY, SO -- |

11:43AM 1          THE COURT:  OKAY.  SO YOUR ANSWER?

11:43AM 2          PROSPECTIVE JUROR:  I BELIEVE I CAN BE IMPARTIAL,

11:44AM 3   YES.

11:44AM 4          THE COURT:  OKAY.  CAN YOU BE FAIR TO THE

11:44AM 5   GOVERNMENT?

11:44AM 6          PROSPECTIVE JUROR:  YES.

11:44AM 7          THE COURT:  CAN YOU BE FAIR TO MS. HOLMES?

11:44AM 8          PROSPECTIVE JUROR:  I BELIEVE SO.

11:44AM 9          THE COURT:  ANY DOUBT ABOUT THAT?

11:44AM 10         PROSPECTIVE JUROR:  NO.

11:44AM 11         THE COURT:  ALL RIGHT.  THANK YOU, SIR.

11:44AM 12      LET'S SEE.  IN THE ROW NEXT THERE'S A HAND.  I SEE -- YES.

11:44AM 13      IS THAT MR. BURGE?

11:44AM 14         PROSPECTIVE JUROR:  YES, SIR.

11:44AM 15         THE COURT:  YES, WHY DON'T YOU COME FORWARD.

11:44AM 16      AND YOU'RE JUROR NUMBER?

11:44AM 17         PROSPECTIVE JUROR:  JUROR NUMBER 49.

11:44AM 18         THE COURT:  THANK YOU.  YES, SIR.

11:44AM 19         PROSPECTIVE JUROR:  GOOD MORNING, YOUR HONOR.

11:44AM 20      BEFORE THE CURRENT ALLEGATIONS HIT, MY WIFE AND I WATCHED

11:44AM 21   A PROGRAM ABOUT THE COMPANY AND MS. HOLMES BECAUSE I WAS

11:45AM 22   INTERESTED IN IT.  MY LINE OF WORK IS THAT I ACTUALLY WORK FOR

11:45AM 23   A LAW FIRM AND I DO E-DISCOVERY, AND I WAS DOING AN ITC CASE

11:45AM 24   WITH BLOOD STRIPS, AND I'VE ALSO DONE SOME WORK WITH THE FDA

11:45AM 25   AND THEIR ANDA'S, AND SO I WAS INTERESTED IN THE COMPANY.

11:45AM 1        SO WE WATCHED THAT.  AND AFTER THE ALLEGATIONS, I'VE SEEN

11:45AM 2    PROGRAMS ABOUT IT.  SO I'VE SEEN BOTH SIDES.

11:45AM 3            THE COURT:  OKAY.  IS THERE ANYTHING -- TELL US THE

11:45AM 4    MOST RECENT EXPOSURE TO MEDIA THAT YOU'VE HAD.

11:45AM 5            PROSPECTIVE JUROR:  WELL, I SAW A HEADLINE FLASH

11:45AM 6    THIS LAST WEEK.  ONLY BECAUSE I'M HERE, BUT I DIDN'T READ IT.

11:45AM 7    I DIDN'T EVEN KNOW THAT IT HADN'T EVEN HAPPENED YET, SO I WAS

11:45AM 8    SURPRISED WHEN I WALKED IN HERE TO FIND OUT THIS WAS THE CASE.

11:45AM 9            THE COURT:  TO FILL OUT THE QUESTIONNAIRE YOU MEAN?

11:46AM 10           PROSPECTIVE JUROR:  YEAH.  I'VE KIND OF BEEN BURIED

11:46AM 11   IN THE PANDEMIC WITH MY PARENTS AND THE KIDS AND STUFF, SO

11:46AM 12   HAVEN'T REALLY BEEN PAYING ATTENTION TO WHAT IS REALLY GOING

11:46AM 13   ON.

11:46AM 14           THE COURT:  THANK YOU.  IS THERE ANYTHING ABOUT WHAT

11:46AM 15   YOU SAW WITH YOUR WIFE, THE SHOW, ANYTHING ABOUT THAT THAT

11:46AM 16   IMPAIRS YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES

11:46AM 17   HERE, TO THE GOVERNMENT AND TO MS. HOLMES?

11:46AM 18           PROSPECTIVE JUROR:  NO.  ONE OF THE SHOWS IS VERY

11:46AM 19   FAVORABLE, BECAUSE AT THE TIME IT WAS WHAT THEIR TEST STRIPS

11:46AM 20   DID WITHOUT -- YOU KNOW, I DON'T WANT TO -- WITHOUT DRAWING

11:46AM 21   BLOOD.

11:46AM 22           THE COURT:  SO I GUESS THE QUESTION IS, CAN YOU BE

11:46AM 23   FAIR TO THE GOVERNMENT IN THIS CASE?

11:46AM 24           PROSPECTIVE JUROR:  YES, SIR.

11:46AM 25           THE COURT:  CAN YOU BE FAIR?

11:46AM 1      PROSPECTIVE JUROR:  I THINK I CAN TAKE BOTH SIDES'

11:46AM 2 INFORMATION AND WEIGH IT EVENLY.

11:46AM 3      THE COURT:  YOU CAN BE FAIR TO MS. HOLMES?

11:46AM 4      PROSPECTIVE JUROR:  YES, SIR.

11:46AM 5      THE COURT:  AND IF YOU'RE SEATED AS A JUROR, WILL

11:47AM 6 YOU DECIDE THE CASE AND MAKE YOUR DECISION ONLY ON THE EVIDENCE

11:47AM 7 THAT YOU HEAR IN THIS COURTROOM AND NOT ANYTHING ELSE OUTSIDE

11:47AM 8 THAT YOU READ OR WERE EXPOSED TO OR ARE EXPOSED TO?  CAN YOU DO

11:47AM 9 THAT, SIR?

11:47AM 10      PROSPECTIVE JUROR:  THAT IS CORRECT.

11:47AM 11      THE COURT:  DO YOU UNDERSTAND THAT I'VE TALKED ABOUT

11:47AM 12 THIS, HOW CRITICAL THIS IS FOR JURORS?  I HOPE YOU RESPECT

11:47AM 13 THAT.

11:47AM 14      PROSPECTIVE JUROR:  I DO.

11:47AM 15      THE COURT:  GREAT.  WELL, THANK YOU.

11:47AM 16      PROSPECTIVE JUROR:  I'VE BEEN TO MANY TRIALS, SO I

11:47AM 17 KNOW HOW HARD IT IS.

11:47AM 18      THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

11:47AM 19 TO KNOW IN RESPONSE TO THIS QUESTION?

11:47AM 20      PROSPECTIVE JUROR:  NO, SIR.

11:47AM 21      THE COURT:  THANK YOU VERY MUCH, SIR.

11:47AM 22      PROSPECTIVE JUROR:  ALL RIGHT.

11:47AM 23      THE COURT:  ANYONE ELSE IN THAT ROW, MR. BURGE'S

11:47AM 24 ROW?

11:47AM 25    IF NOT, LET'S GO TO THE NEXT ROW BEHIND.  LET'S START --

11:47AM 1    IS THAT MR. TEJADA?

11:47AM 2              PROSPECTIVE JUROR:  YES.  GOOD MORNING, YOUR HONOR.

11:47AM 3    I'M JUROR NUMBER 56.

11:47AM 4              THE COURT:  THANK YOU.

11:48AM 5        WHAT WOULD YOU LIKE ME TO KNOW IN RESPONSE TO THIS

11:48AM 6    QUESTION, SIR?

11:48AM 7              PROSPECTIVE JUROR:  SO SINCE FILLING OUT THE

11:48AM 8    QUESTIONNAIRE, I'VE SEEN NEWSPAPER ARTICLES AND ONLINE ARTICLES

11:48AM 9    ABOUT THE CASE, INCLUDING AN NPR PUSH ARTICLE ABOUT THIS

11:48AM 10   HEARING IN GENERAL.

11:48AM 11       I HAVEN'T READ ANY OF THEM.  I JUST READ THE HEADLINES,

11:48AM 12   AND ONE OF THE HEADLINES WAS JURY SELECTION STARTS TODAY.  AND

11:48AM 13   MY FIRST THOUGHT WAS, YEAH, YEAH, I KNOW.

11:48AM 14       THAT ARTICLE IS ALSO HOW MY COWORKERS FIGURED OUT WHICH

11:48AM 15   CASE I WAS CALLED ON JURY DUTY ON.

11:48AM 16             THE COURT:  YOU DIDN'T SHARE THAT WITH YOUR

11:48AM 17   COWORKERS?

11:48AM 18             PROSPECTIVE JUROR:  NO, I DIDN'T SHARE IT.  THEY

11:48AM 19   JUST FIGURED IT OUT.

11:48AM 20             THE COURT:  WELL, THEY'RE SMART LAWYERS, AREN'T

11:48AM 21   THEY?

11:48AM 22             PROSPECTIVE JUROR:  YES.

11:48AM 23             THE COURT:  AND I THINK YOU WORK IN LEGAL AID.

11:48AM 24             PROSPECTIVE JUROR:  YES, I WORK IN LEGAL AID.

11:48AM 25             THE COURT:  IT IS HOUSING?

11:48AM 1          PROSPECTIVE JUROR:  IT'S MORE ACCURATE TO SAY I AM

11:48AM 2   THE ORGANIZATION'S HOUSING DEPARTMENT BECAUSE I DO THE HOUSING

11:48AM 3   LAW.

11:48AM 4          THE COURT:  I THINK I READ THAT IN YOUR

11:48AM 5   QUESTIONNAIRE.  THANK YOU.

11:48AM 6      SO GETTING BACK TO THE EXPOSURE, I'LL CALL IT MEDIA

11:49AM 7   EXPOSURE -- AND I DON'T MEAN THAT PEJORATIVE, BUT WHAT YOU'VE

11:49AM 8   SEEN OR HEARD OR READ, MR. TEJADA, WOULD THAT AFFECT YOUR

11:49AM 9   ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

11:49AM 10          PROSPECTIVE JUROR:  THERE SHOULDN'T BE.  I BARELY DO

11:49AM 11   NOT REMEMBER SOME OF THE THINGS I'VE READ BECAUSE IT WAS SO

11:49AM 12   LONG AGO.

11:49AM 13          THE COURT:  ABOUT THIS CASE?

11:49AM 14          PROSPECTIVE JUROR:  RIGHT, ABOUT THIS CASE.

11:49AM 15          THE COURT:  DO YOU COME IN AS A CLEAN SLATE?

11:49AM 16          PROSPECTIVE JUROR:  FOR THE MOST PART.

11:49AM 17      THE ONLY FACT I REMEMBER IS DEFENDANT'S PREFERENCE FOR

11:49AM 18   TURTLENECKS.

11:49AM 19          THE COURT:  OH, OKAY.  OTHER THAN THAT, ARE YOU A

11:49AM 20   CLEAN SLATE FOR THE EVIDENCE IN THIS CASE?

11:49AM 21          PROSPECTIVE JUROR:  I BELIEVE SO.  ALL I REMEMBER IS

11:49AM 22   THAT THERE WAS SOMETHING ABOUT MEDICAL DEVICES, BUT SOME OF THE

11:49AM 23   DISCUSSIONS ALONG HE'S SAYING THAT I'VE HEARD, AND MAYBE I'M

11:49AM 24   CONFLATING IT WITH SOMETHING ELSE.

11:49AM 25          THE COURT:  I SEE.  OKAY.

11:49AM   1          SO YOU'RE A TRAINED LAWYER.  YOU KNOW THE IMPORTANCE OF A

11:49AM   2    FAIR TRIAL?

11:49AM   3               PROSPECTIVE JUROR:  YES.

11:49AM   4               THE COURT:  AND YOU KNOW THAT A JUROR'S

11:50AM   5    RESPONSIBILITY IS TO MAKE THEIR DECISION WHEN THEY DECIDE A

11:50AM   6    CASE ONLY ON THE EVIDENCE THAT IS PRESENTED IN THE COURTROOM?

11:50AM   7               PROSPECTIVE JUROR:  YES.

11:50AM   8               THE COURT:  AND YOU RESPECT THAT?

11:50AM   9               PROSPECTIVE JUROR:  YES.

11:50AM  10               THE COURT:  IF YOU'RE SELECTED AS A JUROR,

11:50AM  11    MR. TEJADA, CAN DO YOU THAT?

11:50AM  12               PROSPECTIVE JUROR:  YES.

11:50AM  13               THE COURT:  YOU CAN ASSURE THE GOVERNMENT THAT

11:50AM  14    YOU'LL BE FAIR TO THEM?

11:50AM  15               PROSPECTIVE JUROR:  YES.  IF THEY HAVE SUFFICIENT

11:50AM  16    FACTS TO PROVE THE ELEMENTS OF THE CRIME, THEN THAT'S IT.

11:50AM  17               THE COURT:  AND YOU CAN ASSURE MS. HOLMES THAT

11:50AM  18    YOU'LL BE FAIR TO HER?

11:50AM  19               PROSPECTIVE JUROR:  YES.  IF ONE OF THOSE ELEMENTS

11:50AM  20    IS NOT PROVEN, THEN THERE'S NO CRIME.

11:50AM  21               THE COURT:  ALL RIGHT.  THANK YOU, SIR.

11:50AM  22               PROSPECTIVE JUROR:  THANK YOU.

11:50AM  23               THE COURT:  YOU'RE WELCOME.

11:50AM  24          IN YOUR ROW, MR. TEJADA'S ROW.

11:50AM  25          MR. TEJADA, MAYBE YOU'LL LET THESE OTHER PEOPLE PASS YOU.

11:50AM  1          IS THAT MR. KEW?  YES.

11:50AM  2          GOOD MORNING.  YOU'RE JUROR NUMBER?

11:50AM  3              PROSPECTIVE JUROR:  58.

11:50AM  4              THE COURT:  YES, SIR.

11:50AM  5              PROSPECTIVE JUROR:  I SAW THE "60 MINUTES" SPECIAL A

11:50AM  6      FEW YEARS AGO.

11:50AM  7              THE COURT:  OKAY.  ANYTHING ABOUT THAT THAT YOU

11:51AM  8      THINK WILL IMPAIR YOUR ABILITY TO BE FAIR TO BOTH SIDES?

11:51AM  9              PROSPECTIVE JUROR:  NO.

11:51AM 10              THE COURT:  OKAY.  DO YOU REMEMBER -- I'M NOT GOING

11:51AM 11      TO ASK YOU WHAT, BUT DO YOU REMEMBER ANYTHING SPECIFIC THAT

11:51AM 12      STAYS IN YOUR MIND?

11:51AM 13              PROSPECTIVE JUROR:  NO.

11:51AM 14              THE COURT:  OKAY.  ALL RIGHT.  HAVE YOU SEEN ANY

11:51AM 15      PUBLICITY RECENTLY ABOUT THIS CASE?

11:51AM 16              PROSPECTIVE JUROR:  I SAW THE HEADLINES OVER THE

11:51AM 17      WEEKEND, BUT I DIDN'T READ THOSE, NO.

11:51AM 18              THE COURT:  OKAY.  YOU KNEW YOU WERE BEING SUMMONED

11:51AM 19      FOR THIS CASE?

11:51AM 20              PROSPECTIVE JUROR:  YES.

11:51AM 21              THE COURT:  YOU FILLED OUT THAT QUESTIONNAIRE.

11:51AM 22              PROSPECTIVE JUROR:  RIGHT.

11:51AM 23              THE COURT:  THANK YOU FOR DOING THAT.

11:51AM 24          ANY DOUBT IN YOUR MIND, SIR, THAT YOU CAN BE A FAIR AND

11:51AM 25      IMPARTIAL JUROR IN THIS CASE TO THE GOVERNMENT?

11:51AM 1                    PROSPECTIVE JUROR:  NO DOUBT.

11:51AM 2                    THE COURT:  TO MS. HOLMES?

11:51AM 3                    PROSPECTIVE JUROR:  NO.

11:51AM 4          THE COURT:  YOU'LL DECIDE THE CASE ONLY ON THE

11:51AM 5    EVIDENCE THAT YOU HEAR HERE, THE ARGUMENTS OF COUNSEL, AND THE

11:51AM 6    INSTRUCTIONS THAT I GIVE YOU?

11:51AM 7         CAN YOU DO THAT?

11:51AM 8                    PROSPECTIVE JUROR:  YES.

11:51AM 9          THE COURT:  OKAY.  THANK YOU VERY MUCH.

11:51AM 10        LET'S SEE.  WHO IS NEXT IN MR. KEW'S ROW?  IS THAT

11:51AM 11   MS. GALANTE?

11:52AM 12        YES, THANK YOU.  GOOD MORNING.

11:52AM 13                   PROSPECTIVE JUROR:  GOOD MORNING.

11:52AM 14                   THE COURT:  YOU'RE JUROR NUMBER?

11:52AM 15                   PROSPECTIVE JUROR:  60.

11:52AM 16                   THE COURT:  YES.

11:52AM 17                   PROSPECTIVE JUROR:  SO AS I WAS READING THE

11:52AM 18   QUESTIONNAIRE, I SAW SOME NAMES THAT KIND OF SOUNDED FAMILIAR,

11:52AM 19   AND THEN WHEN IT MENTIONED THAT THERE WAS SOME BLOOD TESTING

11:52AM 20   DEVICE THAT WAS INVOLVED, THEN I MADE THE CONNECTION.

11:52AM 21        WELL, I THOUGHT I DID.  I WASN'T 100 PERCENT.

11:52AM 22        THEN AFTER FILLING OUT THE QUESTIONNAIRE, A DAY OR SO

11:52AM 23   LATER I SAW A HEADLINE AS I WAS OPENING UP MY BROWSER AND I SAW

11:52AM 24   THE PICTURE AND I THOUGHT, OKAY, THAT'S WHEN I CONFIRMED IN MY

11:52AM 25   MIND THAT THAT'S WHAT THE CASE WAS GOING TO BE ABOUT.

11:53AM  1      AND THE LATEST EXPOSURE WAS THIS MORNING ON MY YAHOO

11:53AM  2  FINANCE ALERT, BUT I HAVE NOT READ ANY ARTICLES SINCE THEN

11:53AM  3  BECAUSE I KNEW THAT, YOU KNOW, THERE'S A CHANCE THAT I WOULD BE

11:53AM  4  SELECTED.

11:53AM  5      SO -- BUT THAT WAS IT.

11:53AM  6          THE COURT:  OKAY.  THANK YOU.  THANK YOU FOR THAT.

11:53AM  7          PROSPECTIVE JUROR:  SO WHEN I MADE THE CONNECTION, I

11:53AM  8  REALIZED THAT I HAD SEEN I THINK IT WAS "FIRST BLOOD," SOMEBODY

11:53AM  9  MENTIONED THAT, SO THAT RAISED A BELL THAT I HAD SEEN THAT, I

11:53AM  10 DON'T KNOW, FIVE OR TEN YEARS AGO, BUT IT SEEMS LIKE A LENGTHY

11:53AM  11 AMOUNT OF TIME THAT IT WAS ON T.V.

11:53AM  12         THE COURT:  OKAY.  SO YOU HEARD ME ASK YOUR

11:53AM  13 COLLEAGUES PREVIOUSLY WHO HAD THE SAME EXPERIENCE WHETHER OR

11:53AM  14 NOT THEY REMEMBER ANYTHING ABOUT THAT AND WHETHER OR NOT THEY

11:53AM  15 FEEL THAT THAT WILL IMPAIR THEIR ABILITY IN ANY WAY TO BE FAIR

11:53AM  16 AND IMPARTIAL TO BOTH SIDES HERE.

11:54AM  17     LET ME POSE THAT QUESTION TO YOU, MS. GALANTE.

11:54AM  18         PROSPECTIVE JUROR:  I WATCHED THE EPISODES SEVERAL

11:54AM  19 YEARS AGO AND I DON'T REMEMBER ANY DETAILS THAT HAD FORMULATED

11:54AM  20 AN OPINION IN MY MIND.

11:54AM  21         THE COURT:  DO YOU THINK THAT, BECAUSE WE'RE ALL

11:54AM  22 HUMAN, IF YOU'RE SEATED AS A JUROR IN THIS CASE AND YOU'RE

11:54AM  23 HEARING THE EVIDENCE IN THIS CASE, THAT SOMETHING MIGHT COME UP

11:54AM  24 AND YOU THINK YOU SAW THAT IN WHATEVER IT WAS THAT YOU WATCHED

11:54AM  25 OR YOU LISTENED TO, IT MAY BE DIFFERENT THAN WHAT YOU HEAR IN

11:54AM 1     THIS COURTROOM.

11:54AM 2         HOW DO YOU THINK THAT YOU'LL HANDLE THAT SITUATION SHOULD

11:54AM 3     THAT ARISE?

11:54AM 4             PROSPECTIVE JUROR:  I DON'T THINK I HAVE ENOUGH

11:54AM 5     RECALL -- I MEAN, I DO HAVE SOME.  I KNEW IT WAS REGARDING SOME

11:54AM 6     TESTING DEVICES OF BLOOD.  BUT OTHER THAN THAT, I DON'T REALLY

11:54AM 7     RECALL MANY OF THE DETAILS, SO I'M KIND OF STARTING AT A CLEAN

11:55AM 8     SLATE.

11:55AM 9             THE COURT:  OKAY.  IS THAT WHAT YOU CAN TELL

11:55AM 10    MS. HOLMES, SHE STARTS AT A CLEAN SLATE WITH YOU?

11:55AM 11            PROSPECTIVE JUROR:  YES.

11:55AM 12            THE COURT:  IS THAT WHAT YOU TELL THE GOVERNMENT?

11:55AM 13            PROSPECTIVE JUROR:  ABSOLUTELY.

11:55AM 14            THE COURT:  THAT YOU CAN ASSURE THE COURT THAT

11:55AM 15    YOU'LL MAKE ANY DECISION AS A JUROR, IF YOU'RE SELECTED, ONLY

11:55AM 16    ON THE EVIDENCE THAT YOU HEAR IN THIS COURTROOM AND NOT ON ANY

11:55AM 17    EXTRANEOUS OR ANYTHING OUTSIDE, NOT ON FRIENDS, ANYTHING ELSE?

11:55AM 18            PROSPECTIVE JUROR:  YES, ABSOLUTELY.

11:55AM 19            THE COURT:  DO YOU HAVE ANY DOUBT ABOUT THAT?

11:55AM 20            PROSPECTIVE JUROR:  NO.

11:55AM 21            THE COURT:  OKAY.  YOU'RE THAT KIND OF A PERSON?

11:55AM 22    YOU'RE FIRM AND YOU CAN DO THAT?

11:55AM 23            PROSPECTIVE JUROR:  I'VE SERVED ON JURIES BEFORE AND

11:55AM 24    I KNOW THE PROCEDURE THAT YOU'RE SUPPOSED TO BE VERY OPEN

11:55AM 25    MINDED AND JUST TAKE IN INFORMATION AS IT COMES IN FROM BOTH

11:55AM 1    PARTIES.

11:55AM 2            THE COURT:  AND YOU'VE HEARD JUDGES SPEAK TO YOU

11:55AM 3    ABOUT THIS VERY TOPIC, NOT THE CASE, BUT I MEAN A JUROR'S

11:55AM 4    RESPONSIBILITY?  AND WHEN THOSE JUDGES HAVE TOLD YOU THOSE

11:55AM 5    THINGS, THEY'VE BEEN VERY EARNEST?

11:55AM 6            PROSPECTIVE JUROR:  YES.

11:55AM 7            THE COURT:  AND YOU'VE TAKEN THAT TO HEART?

11:55AM 8            PROSPECTIVE JUROR:  I HAVE.

11:55AM 9            THE COURT:  OKAY.  ANY DOUBT IN YOUR MIND,

11:55AM 10   MS. GALANTE, THAT YOU CANNOT BE FAIR?  CAN YOU BE FAIR?

11:56AM 11       LET ME ASK IT NOT IN A DOUBLE NEGATIVE, BUT LET ME ASK IT

11:56AM 12   AGAIN.

11:56AM 13       YOU HAVE NO DOUBT THAT YOU CAN BE FAIR IN THIS CASE?

11:56AM 14           PROSPECTIVE JUROR:  NO DOUBT.

11:56AM 15           THE COURT:  THANK YOU.

11:56AM 16       ANYONE ELSE IN MS. GALANTE'S ROW?

11:56AM 17       MR. RISHI?  IS THAT RIGHT?

11:56AM 18           PROSPECTIVE JUROR:  I'M JUROR NUMBER 63.

11:56AM 19           THE COURT:  YES, SIR.

11:56AM 20           PROSPECTIVE JUROR:  I THINK I SUBSCRIBE TO

11:56AM 21   "THE WALL STREET JOURNAL," SO I REMEMBER WHEN THE STORY BROKE

11:56AM 22   READING ABOUT IT AND IT PIQUED MY INTEREST.

11:56AM 23           THE COURT:  HOW LONG AGO WAS THAT?

11:56AM 24           PROSPECTIVE JUROR:  DEFINITELY PREPANDEMIC.  IT WAS

11:56AM 25   SEVERAL YEARS AGO.

11:56AM 1          THE COURT:  OKAY.

11:56AM 2          PROSPECTIVE JUROR:  BUT I DO REMEMBER FOLLOWING

11:56AM 3  THROUGH WITH THE SERIES OF ARTICLES THAT CAME, AND I DO

11:56AM 4  REMEMBER THEN ALSO SEEING THE DOCUMENTARY RELATED TO THAT AND

11:56AM 5  HAVING SOME DISCUSSIONS AT HOME BECAUSE MY WIFE WAS -- STILL

11:56AM 6  WORKS IN THE HEALTH CARE SIDE OF THINGS AND IT SEEMS LIKE

11:57AM 7  INFORMATION THAT WAS PERTINENT.

11:57AM 8          THE COURT:  I THINK YOU READ A BOOK.

11:57AM 9          PROSPECTIVE JUROR:  THAT'S RIGHT.

11:57AM 10          THE COURT:  RIGHT.

11:57AM 11          PROSPECTIVE JUROR:  SO DURING THAT SAME -- ACTUALLY,

11:57AM 12  I CAN'T GIVE YOU THE SAME EXACT TIMELINE, BUT I DID END UP

11:57AM 13  CONSUMING A LOT OF INFORMATION AT THAT POINT IN TIME.

11:57AM 14      OVER THE LAST FEW YEARS I HAVEN'T REALLY DONE MUCH, BUT I

11:57AM 15  DID SEE OBVIOUSLY, LIKE A LOT OF OTHER PEOPLE, HEADLINES, ET

11:57AM 16  CETERA, POP UP RECENTLY.

11:57AM 17          THE COURT:  I SEE.  WHAT IS THE MOST RECENT, I'LL

11:57AM 18  CALL IT EXPOSURE TO MEDIA THAT YOU'VE SEEN ABOUT THIS CASE?

11:57AM 19          PROSPECTIVE JUROR:  I THINK I SAW THINGS POP UP AS

11:57AM 20  RECENTLY AS YESTERDAY.

11:57AM 21          THE COURT:  I SEE.  DID YOU READ THE ARTICLES?

11:57AM 22          PROSPECTIVE JUROR:  I HAVE NOT.

11:57AM 23          THE COURT:  OKAY.  WELL, TELL US -- YOU KNOW, MY

11:57AM 24  QUESTIONS, YOU KNOW WHAT I'M PROBING, SIR, BASED ON WHAT --

11:57AM 25  YOUR EXPERIENCE WITH THE INFORMATION IN THIS CASE, IS THERE

11:57AM 1     ANYTHING THAT, ANYTHING ABOUT THAT THAT YOU THINK WILL AFFECT

11:58AM 2     YOUR ABILITY TO BE FAIR TO BOTH SIDES HERE?

11:58AM 3              PROSPECTIVE JUROR:  NO.  I THINK I CAN -- I KNOW

11:58AM 4     WHAT'S -- I KNOW THE ANSWERS IN TERMS OF WHAT I PUT OUT THERE.

11:58AM 5     I JUST -- I'M CONSCIOUS OF WHAT I KNOW AND WHAT I DON'T KNOW.

11:58AM 6              THE COURT:  OKAY.

11:58AM 7        THE QUESTION IS, YOU'VE CONSUMED A LOT OF INFORMATION

11:58AM 8     ABOUT THIS CASE ALREADY.

11:58AM 9              PROSPECTIVE JUROR:  THAT'S RIGHT.

11:58AM 10             THE COURT:  AND I SUPPOSE WE ASK JURORS TO DO A

11:58AM 11    HERCULEAN TASK, TO PUT THAT ASIDE AND TAKE THAT OUT OF YOUR

11:58AM 12    MIND IF YOU'RE SELECTED AS A JUROR HERE AND TO, AS I'VE SAID

11:58AM 13    MANY TIMES, AND WILL CONTINUE, TO DECIDE THE CASE ONLY ON THE

11:58AM 14    EVIDENCE HERE.

11:58AM 15       CAN YOU DO THAT, SIR?  ARE YOU THAT TYPE OF PERSON THAT

11:58AM 16    YOU CAN SEPARATE YOUR EXPOSURE AND KEEP THAT OUT THROUGHOUT THE

11:58AM 17    DURATION OF THE TRIAL?  CAN YOU DO THAT?

11:58AM 18             PROSPECTIVE JUROR:  YES.  I THINK SOMEBODY MENTIONED

11:58AM 19    ABOUT INFORMATION ATTRIBUTION.  I THINK I CAN DO THAT, AND I'VE

11:59AM 20    DONE IT FOR DIFFERENT REASONS IN THE PAST.

11:59AM 21             THE COURT:  BY YOUR PROFESSIONAL TRAINING?

11:59AM 22             PROSPECTIVE JUROR:  CORRECT.

11:59AM 23             THE COURT:  AND THAT'S SOMETHING THAT, IN YOUR

11:59AM 24    PROFESSIONAL TRAINING THAT YOU'VE, YOU'VE GAINED THAT EXPERTISE

11:59AM 25    TO PARSE OUT INFORMATION AND FOCUS ONLY ON THE DETAILS OF THE

| | | |
|---|---|---|
| 11:59AM | 1 | JOB AT HAND? |
| 11:59AM | 2 | IS THAT YOUR TRAINING? |
| 11:59AM | 3 | PROSPECTIVE JUROR:  YEAH.  I'M NOT SURE I HAVE |
| 11:59AM | 4 | EXPERTISE, BUT I HAVE EXPERIENCE IN THAT FOR SURE. |
| 11:59AM | 5 | THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WOULD LIKE |
| 11:59AM | 6 | TO SHARE WITH US, SIR, ABOUT THIS? |
| 11:59AM | 7 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 8 | THE COURT:  I NOTE THAT IN RESPONSE TO YOUR |
| 11:59AM | 9 | QUESTIONS, QUESTION 39, 62, AND 65, YOU DID INDICATE THAT YOU |
| 11:59AM | 10 | CAN BE FAIR. |
| 11:59AM | 11 | PROSPECTIVE JUROR:  THAT'S CORRECT. |
| 11:59AM | 12 | THE COURT:  ANY DOUBT IN YOUR MIND ABOUT THOSE |
| 11:59AM | 13 | QUESTIONS? |
| 11:59AM | 14 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 15 | THE COURT:  OR YOUR ANSWERS? |
| 11:59AM | 16 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 17 | THE COURT:  OKAY.  THANK YOU.  THANK YOU, SIR. |
| 11:59AM | 18 | WELL, WE'RE A LITTLE PAST THE NOON HOUR.  MAYBE WE'LL TAKE |
| 11:59AM | 19 | OUR NOON BREAK NOW, LADIES AND GENTLEMEN.  WE'LL TAKE OUR NOON |
| 11:59AM | 20 | RECESS. |
| 11:59AM | 21 | LET'S -- CAN WE TRY TO BE -- |
| 11:59AM | 22 | MS. KRATZMANN, THE JURORS WILL COLLECT THEMSELVES IN THE |
| 12:00PM | 23 | JURY ASSEMBLY ROOM; IS THAT RIGHT? |
| 12:00PM | 24 | THE CLERK:  YES, YOUR HONOR.  IF THEY CAN GO TO THE |
| 12:00PM | 25 | SECOND FLOOR JURY SELECTION ROOM WHERE THEY GATHERED THIS |

12:00PM  1    MORNING.

12:00PM  2         THE COURT:  LET ME DO THAT.

12:00PM  3       THE HANDS OF PEOPLE REMAINING, OKAY.  THERE'S JUST A FEW

12:00PM  4    OF YOU.

12:00PM  5       WE'LL GET TO YOU -- WE'LL FINISH -- WE'LL START, PARDON

12:00PM  6    ME, WITH MR. NIZENKOFF.

12:00PM  7         PROSPECTIVE JUROR:  YES.

12:00PM  8         THE COURT:  WE'LL START WITH YOU WHEN WE COME BACK,

12:00PM  9    SIR, AND THEN WE'LL GET THE REST OF THE ANSWERS.

12:00PM  10      I HAVE MANY MORE QUESTIONS, SO WE'LL GET THROUGH THIS

12:00PM  11   PROCESS.  SO THANK YOU VERY MUCH.

12:00PM  12      LET ME SAY THIS, THOUGH, BEFORE WE BREAK HERE, I DO --

12:00PM  13   YOU'RE NOT THE JURY YET.  WE'RE IN THAT PROCESS.

12:00PM  14      BUT I'M GOING TO ASK YOU DURING THIS BREAK, AND ALL YOUR

12:00PM  15   BREAKS, TO NOT READ, LOOK AT, DISCUSS, OR IN ANY WAY TALK ABOUT

12:00PM  16   THIS CASE OR YOUR POTENTIAL SERVICE FOR IT.  PLEASE AVOID

12:00PM  17   READING ANYTHING.

12:00PM  18      I MAY AT SOME POINT -- YOU KNOW, I'M AN OLD-FASHIONED

12:01PM  19   PERSON.  I LIKE THE NEWSPAPER IN MY HAND.  I UNDERSTAND THAT

12:01PM  20   YOU HAVE DEVICES.

12:01PM  21      I'M ALSO INFORMED THAT THERE ARE WAYS TO TURN OFF THESE

12:01PM  22   ALERTS, I GUESS THEY'RE CALLED NEWS ALERTS, AND THOSE TYPES OF

12:01PM  23   THINGS.  YOUNGER PEOPLE THAN ME TELL ME THAT'S POSSIBLE.

12:01PM  24      SO YOU MIGHT WANT TO EXPLORE THAT FOR THE NEXT DAY OR SO

12:01PM  25   TO SEE IF THAT'S SOMETHING THAT WOULD BE OF ASSISTANCE IN

12:01PM 1    PREVENTING YOUR EXPOSURE.

12:01PM 2          IN MY HOUSEHOLD I JUST WON'T PICK UP THE NEWSPAPER ON THE

12:01PM 3    STOOP WHEN IT COMES, BUT THAT'S EASY TO DO.  BUT THIS OTHER

12:01PM 4    TECHNOLOGY, YOU'LL DEAL WITH THAT.

12:01PM 5          SO HAVE A GOOD LUNCH.  DON'T DISCUSS ANYTHING, PLEASE.

12:01PM 6    YOU'LL COLLECT YOURSELVES ON THE SECOND FLOOR IN THE JURY ROOM

12:01PM 7    AND MS. KRATZMANN OR SOMEONE WILL THEN BRING YOU UP.

12:01PM 8          PLEASE REMEMBER WHERE YOU'RE SEATED, AND IF YOU WOULD TAKE

12:01PM 9    THOSE SEATS AGAIN I WOULD BE GRATEFUL.  THANK YOU.

12:01PM 10         THE CLERK:  WHAT TIME?

12:01PM 11         THE COURT:  I WOULD LIKE EVERYONE SEATED AGAIN BY

12:01PM 12   1:15 IF POSSIBLE.

12:02PM 13         I'D LIKE COUNSEL TO REMAIN IF YOU WOULD LIKE.

12:03PM 14         (JURY OUT AT 12:03 P.M.)

12:03PM 15         THE COURT:  THANK YOU FOR YOUR COURTESY.

12:03PM 16         THE RECORD SHOULD REFLECT THAT OUR PROSPECTIVE PANEL LEFT

12:03PM 17   THE COURTROOM AND COUNSEL IS PRESENT AND MS. HOLMES IS PRESENT.

12:03PM 18         SO WE'LL START UP AFTER THE BREAK WITH MR. NIZENKOFF.  I

12:03PM 19   THINK I SAW PERHAPS FOUR MORE HANDS, MAYBE FIVE, AND I HOPE TO

12:03PM 20   GET THROUGH THAT PROCESS WITH THEM IN THAT SAME MANNER.

12:03PM 21         AND THEN I HOPE IS I CAN GET THROUGH MY QUESTIONS.  I

12:03PM 22   MIGHT -- MY HOPE IS THAT WE CAN FINISH THIS PANEL IN THE NEXT

12:03PM 23   COUPLE OF HOURS.  I THINK WE CAN.  I DO THINK THAT WE'LL BE

12:03PM 24   ABLE TO DO THAT NOTWITHSTANDING THE QUESTIONS THAT I HAVE.

12:03PM 25         THIS AREA PROBABLY WILL TAKE SOME TIME, AS IT HAS.

12:03PM 1     THERE'S ANOTHER AREA THAT I WAS GOING TO GO INTO.

12:03PM 2          THESE ARE THE QUESTIONS THAT I TALKED ABOUT, MS. VOLKAR,

12:04PM 3     AND I DO HAVE AN AREA THAT I'M GOING TO GO INTO THERE.  I DON'T

12:04PM 4     KNOW, WE'LL SEE WHAT EXPERIENCES OUR PROSPECTIVE PANEL HAS IN

12:04PM 5     THAT REGARD.

12:04PM 6          ANY COMMENT BEFORE WE BREAK FOR LUNCH?

12:04PM 7               MR. DOWNEY:  ONE COMMENT, NOT BECAUSE IT IS ALL THAT

12:04PM 8     SIGNIFICANT, BUT IT'S A LOGISTICAL PROBLEM I THINK.

12:04PM 9          YOUR HONOR HAD ASKED A NUMBER OF JURORS WHAT THEIR

12:04PM 10    EXPOSURE HAD BEEN SINCE THE QUESTIONNAIRE HAD BEEN COMPLETED.

12:04PM 11    THEY REPEATED ACROSS SEVERAL JURORS, "I'VE SEEN HEADLINES."

12:04PM 12         AS YOUR HONOR KNOWS, WE HAD REQUESTED THAT CERTAIN

12:04PM 13    INFORMATION NOT BE MADE PUBLIC UNTIL AFTER THOSE HEADLINES HAD

12:04PM 14    BEEN SEEN.  I THINK IT'S INCUMBENT ON US TO UNDERSTAND WHAT THE

12:04PM 15    CONTENT OF THE HEADLINE IS THAT THOSE INDIVIDUALS HAVE SEEN IN

12:04PM 16    THAT IT MAY HAVE ANTICIPATED THE DEFENSE THEMES AND THE DEFENSE

12:05PM 17    CASE AND ALL OF THAT WHERE NONE IS REQUIRED.

12:05PM 18         AND SO THERE WERE FOUR OR FIVE JURORS, I THINK, IF NOT

12:05PM 19    MORE, WHO REPORTED THAT EXPERIENCE.

12:05PM 20         SO I RAISE IT BECAUSE I THINK JUST LOGISTICALLY WE NEED TO

12:05PM 21    FIND A WAY TO GET THAT INFORMATION FROM THEM.

12:05PM 22         OF COURSE IF THEY HAVE SEEN HEADLINES THAT RELATE TO

12:05PM 23    POTENTIAL DEFENSE STRATEGIES, YOU KNOW, THERE WILL BE ISSUES

12:05PM 24    THAT WE HAVE IN CONNECTION WITH THAT WHICH WE'LL PRESENT.  BUT

12:05PM 25    I THINK, AS A PRACTICAL MATTER, I JUST THINK WE NEED TO KNOW

12:05PM   1   WHAT THE CONTENT OF THOSE HEADLINES ARE.

12:05PM   2           THE COURT:  OKAY.  THANK YOU.

12:05PM   3       MR. SCHENK, ANY COMMENT ABOUT ANYTHING?

12:05PM   4           MR. SCHENK:  NO.  NOTHING FURTHER.  THANK YOU.

12:05PM   5           THE COURT:  OKAY.  ALL RIGHT.  AS I SAID, I WOULD

12:05PM   6   LIKE TO BEGIN BY 1:15 WITH THE JURORS SEATED IN THE BOX SO THAT

12:05PM   7   WE CAN HOPEFULLY GET THROUGH THIS PANEL TODAY.

12:05PM   8       ALL RIGHT.  HAVE A GOOD LUNCH.  WE'LL SEE YOU THEN.  THANK

12:05PM   9   YOU.

12:06PM  10       (LUNCH RECESS TAKEN AT 12:06 P.M.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

**AFTERNOON SESSION**

01:19PM  2      (COURT CONVENED AT 1:19 P.M.)

01:19PM  3      (JURY IN AT 1:19 P.M.)

01:19PM  4          THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

01:19PM  5  PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.  OUR PROSPECTIVE

01:19PM  6  JURY PANEL IS PRESENT.

01:19PM  7          THANK YOU, LADIES AND GENTLEMEN.

01:19PM  8          WE'LL CONTINUE WITH THE JURY SELECTION PROCESS.

01:19PM  9          LET'S SEE, I THINK, MR. NIZENKOFF, DO YOU WANT TO COME TO

01:19PM  10  THE MICROPHONE, PLEASE.

01:19PM  11          WHILE YOU WERE DOING THAT, MR. NIZENKOFF, I DID WANT TO

01:19PM  12  SAY ONE OTHER THING ABOUT COVID.

01:19PM  13          LADIES AND GENTLEMEN, I DO WANT TO TELL YOU THAT AS FAR AS

01:19PM  14  I KNOW ALL OF OUR PROSPECTIVE JURORS HAVE BEEN VACCINATED, AND

01:19PM  15  I CAN TELL YOU THAT ALL OF -- I'VE GOT PERMISSION TO TELL YOU

01:19PM  16  THAT ALL OF OUR COURT STAFF HAVE BEEN VACCINATED.  SO I JUST

01:19PM  17  WANT TO SHARE THAT WITH YOU, AND HOPEFULLY THAT BRINGS YOU SOME

01:20PM  18  COMFORT AND REASSURANCE.  THANK YOU.

01:20PM  19          MR. NIZENKOFF?

01:20PM  20          PROSPECTIVE JUROR:  I'M JUROR NUMBER 64.

01:20PM  21          THE COURT:  THANK YOU.

01:20PM  22          PROSPECTIVE JUROR:  I SAW ONE OF THE T.V. SHOWS A

01:20PM  23  COUPLE YEARS AGO, I DON'T RECALL WHICH ONE.  I KIND OF GOT THE

01:20PM  24  GIST OF WHAT IS GOING ON, BUT THE DETAILS I DON'T REMEMBER.

01:20PM  25          THE COURT:  OKAY.

01:20PM   1          PROSPECTIVE JUROR:  I'VE SEEN A COUPLE OF HEADLINES

01:20PM   2   POP UP ON MY NEWS FEED, AND I'VE IGNORED THEM AND TRY TO HIDE

01:20PM   3   THEM AND I'VE HEARD THE TOPIC COME UP ON THE RADIO THIS MORNING

01:20PM   4   AND I SWITCHED THE STATION QUICKLY.

01:20PM   5          THE COURT:  ALL RIGHT.  CAN YOU TELL US -- DO YOU

01:20PM   6   HAVE ANY RECOLLECTION OF WHAT THE HEADLINES WERE?

01:20PM   7          PROSPECTIVE JUROR:  ONE WAS ABOUT JURY SELECTION,

01:20PM   8   AND I DON'T RECALL THE OTHER ONE, THE NAME HAS POPPED UP.

01:20PM   9          THE COURT:  OKAY.  THANK YOU.

01:20PM  10      MR. NIZENKOFF, SINCE I HAVE YOU AT AN ADVANTAGE HERE AND

01:20PM  11   YOU SEEM TO HAVE KNOWLEDGE OF PHONES, IS IT POSSIBLE TO TURN

01:20PM  12   OFF THESE NOTIFICATIONS FROM NEWS FEED AND THINGS?

01:20PM  13          PROSPECTIVE JUROR:  ON MY GOOGLE FEED I CAN HIT "NOT

01:20PM  14   INTERESTED," AND SO I HOPEFULLY I CAN TURN UP --

01:21PM  15          THE COURT:  THANK YOU FOR THAT INFORMATION.

01:21PM  16      LET ME ASK YOU ABOUT SEEING THIS DOCUMENTARY THAT YOU SAW

01:21PM  17   A COUPLE YEARS AGO I THINK YOU SAID.

01:21PM  18          PROSPECTIVE JUROR:  WHENEVER IT HIT THE NEWS.

01:21PM  19          THE COURT:  RIGHT.  ANYTHING ABOUT WHAT YOU SAW THAT

01:21PM  20   STICKS WITH YOU THAT YOU THINK AFFECTS YOUR ABILITY TO BE FAIR

01:21PM  21   TO EACH SIDE HERE?

01:21PM  22          PROSPECTIVE JUROR:  NO.

01:21PM  23          THE COURT:  ANY DOUBT ABOUT THAT?

01:21PM  24          PROSPECTIVE JUROR:  YES.

01:21PM  25          THE COURT:  CAN YOU BE FAIR TO THE GOVERNMENT?

```
01:21PM   1              PROSPECTIVE JUROR:  YES.

01:21PM   2              THE COURT:  CAN YOU BE FAIR TO MS. HOLMES?

01:21PM   3              PROSPECTIVE JUROR:  YES.

01:21PM   4              THE COURT:  YOU OBVIOUSLY SAW THIS SHOW, AND YOU

01:21PM   5    HEARD ME TALK TO MS. GROGAN, HOW DO YOU UNREAD SOMETHING?  IN

01:21PM   6    THE LAW WE CALL IT UNRINGING THE BELL.

01:21PM   7              PROSPECTIVE JUROR:  A LOT OF THE SHOWS ARE FOR

01:21PM   8    ENTERTAINMENT AND THEY DON'T NECESSARILY NEED TO GET ALL OF

01:21PM   9    THEIR FACTS TRUE.

01:21PM  10              THE COURT:  OKAY.  ALL RIGHT.

01:21PM  11         DO YOU THINK YOU'LL HAVE ANY PROBLEM SEPARATING, KEEPING

01:21PM  12    THAT, PARSING THAT OUT FROM YOUR MIND AS YOU SIT AS A

01:21PM  13    DELIBERATIVE JUROR IN THIS CASE?

01:22PM  14              PROSPECTIVE JUROR:  NO, I WON'T.

01:22PM  15              THE COURT:  ANY DOUBT AT ALL?

01:22PM  16              PROSPECTIVE JUROR:  NO DOUBT.

01:22PM  17              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

01:22PM  18         WE'RE ON THE NEXT ROW.

01:22PM  19         NEXT.

01:22PM  20         LET ME SEE, IS THAT MR. PENUMUDY, IS THAT RIGHT?

01:22PM  21              PROSPECTIVE JUROR:  YES.

01:22PM  22              PROSPECTIVE JUROR:  I'M JUROR NUMBER 73.

01:22PM  23              THE COURT:  THANK YOU.

01:22PM  24              PROSPECTIVE JUROR:  OVER THE YEARS I'VE READ A FEW

01:22PM  25    ARTICLES ABOUT THE COMPANY OF THERANOS, ABOUT THE RISE AND FALL
```

01:22PM 1    OF ITS FORTUNES, AND MOST SIGNIFICANTLY IN THE QUESTIONNAIRE I

01:22PM 2    CAME ACROSS TWO ARTICLES IN THE INTERNET IN MY APPLE NEWS FEED.

01:22PM 3    ONE WAS ABOUT THE TRIAL ABOUT TO START FOR THIS CASE.  I ONLY

01:23PM 4    SKIMMED PART OF THE SUMMARY.  I DIDN'T GO THROUGH ALL OF IT.

01:23PM 5         THE SECOND HEADLINE IS -- MY MEMORY MIGHT NOT SERVE ME

01:23PM 6    RIGHT -- BUT IT SEEMED TO BE SOMETHING ABOUT SOME FRICTION

01:23PM 7    BETWEEN THERANOS AND THE OTHER DEFENDANT, MR. BALWANI.

01:23PM 8              THE COURT:  I SEE.

01:23PM 9              PROSPECTIVE JUROR:  SO THAT'S THE EXTENT OF MY

01:23PM 10   RECOLLECTION.

01:23PM 11             THE COURT:  THANK YOU, SIR.

01:23PM 12        WHEN DID YOU SEE THOSE ARTICLES, SIR?

01:23PM 13             PROSPECTIVE JUROR:  I BELIEVE IT WAS LAST WEEK.

01:23PM 14             THE COURT:  LAST WEEK.

01:23PM 15        I'M SORRY.  DID YOU READ THEM IN THEIR ENTIRETY?

01:23PM 16             PROSPECTIVE JUROR:  NO, I DID NOT.

01:23PM 17             THE COURT:  YOU READ THE HEADLINES?

01:23PM 18             PROSPECTIVE JUROR:  FOR THE ONE THAT WAS ANNOUNCING

01:23PM 19   THE TRIAL, I JUST SKIMMED PART OF THE SUMMARY.

01:23PM 20        THE OTHER ONE, ONLY THE HEADLINE.

01:23PM 21             THE COURT:  I SEE.  ALL RIGHT, SIR.

01:23PM 22        IS THERE ANYTHING ABOUT THAT INFORMATION THAT YOU THINK

01:23PM 23   WOULD AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES IN THIS

01:23PM 24   CASE?

01:23PM 25             PROSPECTIVE JUROR:  NO.

01:23PM  1          THE COURT:  ALL RIGHT.  OKAY.  THANK YOU VERY MUCH.

01:23PM  2   THANK YOU.

01:23PM  3          AND ANYONE ELSE IN THAT ROW?  YES.

01:23PM  4          IS THAT MR. ROCCAFORTE.

01:24PM  5          PROSPECTIVE JUROR:  YES.

01:24PM  6          THE COURT:  YES.

01:24PM  7          PROSPECTIVE JUROR:  I'M NUMBER 78.

01:24PM  8          THE COURT:  OKAY.  THANK YOU.

01:24PM  9          PROSPECTIVE JUROR:  SO I'M A PRODUCER AT A NEWS

01:24PM 10   RADIO STATION AND A COUPLE OF MONTHS AGO I FIRST CAME ACROSS

01:24PM 11   THIS STORY.  I KIND OF FORGOT ABOUT IT, AND THEN DURING THE

01:24PM 12   QUESTIONNAIRE WHEN THEY WERE LAYING IT OUT FOR ME, IT STARTED

01:24PM 13   TO SLOWLY COME BACK TO ME AND THEN I WAS LIKE, I THINK I MAY

01:24PM 14   HAVE HEARD OF THIS.

01:24PM 15          SO I'VE BEEN BASICALLY AVOIDING THE TOPIC SINCE THEN, BUT

01:24PM 16   YESTERDAY WHEN I WAS AT WORK IN ANTICIPATION OF JURY SELECTION,

01:24PM 17   THEY WERE RUNNING STORIES AT MY STATION, AND I WASN'T AWARE OF

01:24PM 18   THIS BECAUSE I HAD BEEN AVOIDING THE TOPIC.

01:24PM 19          I ACCIDENTALLY OVERHEARD DETAILS OF THE STORY BECAUSE I

01:24PM 20   WOULD WALK IN AND THE STORY WOULD BE PLAYING AND I'D BE LIKE,

01:24PM 21   WHAT IS THIS?

01:24PM 22          AND THEN THEY WOULD, THEN THEY WOULD NAME ALL OF THE

01:24PM 23   RELEVANT PARTIES AND I WAS LIKE, OH.  I TRIED TO AVOID IT, BUT

01:24PM 24   BECAUSE I'M WORKING IN A RADIO STATION, AUDIO IS ALL AROUND ME,

01:25PM 25   AND BECAUSE IT'S LIVE, I CAN'T JUST LIKE COMPLETELY LEAVE AND

01:25PM  1      REMOVE MYSELF FROM THE SITUATION.

01:25PM  2          SO I TRIED TO TUNE IT OUT AS BEST AS I COULD, BUT I STILL

01:25PM  3      DID OVERHEAR SOME DETAILS.

01:25PM  4              THE COURT:  HOW LONG WAS THE PIECE THAT YOU HEARD,

01:25PM  5      THE PORTIONS THAT YOU HEARD?  WHAT WAS THE DURATION?

01:25PM  6              PROSPECTIVE JUROR:  I WOULD SAY THAT I HEARD ABOUT

01:25PM  7      30 SECONDS TO A MINUTE OF MATERIAL.  PROBABLY ABOUT MAYBE A

01:25PM  8      MINUTE AND A HALF OR TWO MINUTES TOTAL.

01:25PM  9              THE COURT:  I SEE.

01:25PM  10         AND IT TALKED ABOUT THE CASE, IT TALKED ABOUT THE PARTIES

01:25PM  11     OF THE CASE?  DID IT TALK ABOUT THE EVIDENCE AND THOSE TYPES OF

01:25PM  12     THINGS?

01:25PM  13             PROSPECTIVE JUROR:  ONE THING IT DID DISCUSS WAS THE

01:25PM  14     DEFENSE STRATEGY.

01:25PM  15             THE COURT:  OKAY.  IT TALKED ABOUT AT LEAST WHAT,

01:25PM  16     WHOEVER THE PRESENTER WAS IN THIS ARTICLE, THEIR THOUGHTS ABOUT

01:25PM  17     WHAT A DEFENSE STRATEGY MIGHT BE?

01:25PM  18             PROSPECTIVE JUROR:  I BELIEVE SO.  I DON'T KNOW IF

01:25PM  19     IT WAS PHRASED AS WHAT THEY THOUGHT IT MIGHT BE OR WHAT IT WILL

01:25PM  20     BE.

01:25PM  21             THE COURT:  I SEE.  OKAY.

01:26PM  22         IN THEIR OPINION?

01:26PM  23             PROSPECTIVE JUROR:  I DON'T KNOW THAT.  I DON'T KNOW

01:26PM  24     IF IT WAS OPINION OR IF IT WAS -- IF THEY HAD SOME KIND OF

01:26PM  25     KNOWLEDGE OR WHAT THE SITUATION WAS THERE.

01:26PM  1                    THE COURT:  I SEE.

01:26PM  2                    PROSPECTIVE JUROR:  BUT IT COULD HAVE BEEN JUST

01:26PM  3       SPECULATION OR IT COULD HAVE BEEN FACT.  I'M NOT 100 PERCENT

01:26PM  4       SURE ABOUT THAT.

01:26PM  5                    THE COURT:  OKAY.  ALL RIGHT.

01:26PM  6            AND SO TELL US ABOUT HAVING HEARD THAT AND LISTENED TO

01:26PM  7       THAT FOR 30 SECONDS, A MINUTE, HOW WILL THAT AFFECT YOUR

01:26PM  8       ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES HERE IN THIS

01:26PM  9       TRIAL?

01:26PM  10                   PROSPECTIVE JUROR:  I'M NOT REALLY SURE THAT I'LL BE

01:26PM  11      ABLE TO REMAIN UNBIASSED THROUGHOUT THE DURATION OF THIS TRIAL.

01:26PM  12                   THE COURT:  AND THAT'S BECAUSE OF WHAT YOU HEARD?

01:26PM  13                   PROSPECTIVE JUROR:  YEAH, AND JUST BECAUSE OF THE

01:26PM  14      CULMINATION OF WHAT I HAVE HEARD OVERALL.

01:26PM  15                   THE COURT:  WELL, YOU TOLD US IN YOUR QUESTIONNAIRE,

01:26PM  16      I BELIEVE, THAT A FRIEND OF YOURS TOLD YOU ABOUT THE HBO

01:26PM  17      PROGRAM, BUT IT WAS UNCLEAR WHETHER OR NOT YOU HAD ACTUALLY

01:26PM  18      WATCHED IT.

01:26PM  19                   PROSPECTIVE JUROR:  RIGHT.

01:26PM  20                   THE COURT:  DID YOU WATCH IT?

01:27PM  21                   PROSPECTIVE JUROR:  I DID NOT.  BUT THE QUESTION, IF

01:27PM  22      I REMEMBER CORRECTLY, DO I KNOW OF OR HAVE SEEN, AND SO I JUST

01:27PM  23      CIRCLED IT BECAUSE IT WAS KNOW OF.

01:27PM  24            BUT I KNEW THE -- SOME OF THE DETAILS OF THE CASE AS LAID

01:27PM  25      OUT IN THE QUESTIONNAIRE BECAUSE I THINK THEY JUST -- AS I WAS

01:27PM   1      FILLING IT OUT, I JUST STARTED TO KIND OF REMEMBER A LITTLE BIT

01:27PM   2      MORE AND MORE ABOUT THE DEFENDANT IN THE CASE OVERALL.

01:27PM   3              THE COURT:  AND WHAT WAS THE SOURCE OF THAT

01:27PM   4      INFORMATION?

01:27PM   5              PROSPECTIVE JUROR:  THAT WOULD HAVE BEEN AN ARTICLE

01:27PM   6      ABOUT A FEW MONTHS PRIOR TO THE QUESTIONNAIRE.

01:27PM   7              THE COURT:  I SEE.  WELL, TELL ME ABOUT THAT.  THAT

01:27PM   8      WAS AN ONLINE ARTICLE?

01:27PM   9              PROSPECTIVE JUROR:  IT WAS.

01:27PM   10             THE COURT:  I SEE.  DO YOU REMEMBER THE SOURCE OF

01:27PM   11     IT?

01:27PM   12             PROSPECTIVE JUROR:  NO, I DON'T RECALL, BUT I -- I'M

01:27PM   13     NOT 100 PERCENT SURE, NO.

01:27PM   14             THE COURT:  OKAY.  AND HOW MANY?  CAN YOU TELL US,

01:27PM   15     HOW MANY ARTICLES DO YOU THINK YOU'VE READ LIKE THAT ONE THAT

01:27PM   16     YOU JUST TOLD US ABOUT?  HOW MANY DO YOU THINK THAT YOU'VE READ

01:28PM   17     OVER THE COURSE OF THE PAST COUPLE OF YEARS?

01:28PM   18             PROSPECTIVE JUROR:  RIGHT.  SO I THINK I'VE READ

01:28PM   19     LIKE THE INITIAL ONE AND MAYBE ANOTHER FOLLOWUP BECAUSE THERE

01:28PM   20     WAS ONE -- BECAUSE IT'S SOMEWHAT LOCAL, I WAS SOMEWHAT

01:28PM   21     INTERESTED AND LOOKED INTO IT A LITTLE BIT FURTHER, AND THEN

01:28PM   22     KIND OF FORGOT ABOUT IT FOR A FEW MONTHS.

01:28PM   23             THE COURT:  SURE.

01:28PM   24         YOU KNOW, THE SCHEDULE THAT I'VE IMPOSED HERE, OR I'D LIKE

01:28PM   25     TO ADVANCE, PARDON ME, ALLOWS, ALLOWS FOLKS TO, IF THEY WANT,

01:28PM 1    THEY CAN RETURN TO WORK, I SUPPOSE, FOR A COUPLE OF HOURS IF

01:28PM 2    THEY'RE ABLE TO.  I DON'T KNOW IF WE WORK REMOTE OR NOT.

01:28PM 3        YOU WORK IN A RADIO STATION?

01:28PM 4            PROSPECTIVE JUROR:  I DO.

01:28PM 5            THE COURT:  AND IT SOUNDS LIKE LIVE FEED IS GOING

01:28PM 6    ALL OF THE TIME FOR YOU TO HEAR.

01:28PM 7            PROSPECTIVE JUROR:  YES, IT IS.  AND WE POST UP

01:28PM 8    ONLINE AND I'M LOOKING AT MY COMPUTER INTERFACE AND I'M SEEING

01:28PM 9    THERANOS, THERANOS, THERANOS, THERANOS.  IT'S GOING TO BE HARD

01:29PM 10   TO AVOID AND THERE'S GOING TO BE SITUATIONS THAT I WOULD

01:29PM 11   IMAGINE ARISE WHERE I HAVE TO MAYBE HANDLE ONE OF THESE PIECES

01:29PM 12   OF AUDIO THAT IS ABOUT IT, OR A PIECE OF WRITING THAT IS ABOUT

01:29PM 13   IT, AND I'M NOT REALLY SURE HOW I APPROACH THAT BECAUSE I'M

01:29PM 14   SUPPOSED TO REMAIN CONFIDENTIAL AS A JUROR.

01:29PM 15           THE COURT:  RIGHT.  NO, I APPRECIATE THAT.  THANK

01:29PM 16   YOU FOR SHARING THAT.  THAT WAS A QUESTION THAT I HAD.  I SAW

01:29PM 17   YOU WORKED IN RADIO, AND I WAS CURIOUS WHAT THAT IS LIKE.

01:29PM 18       IS IT A NEWS STATION, A MUSIC STATION?

01:29PM 19           PROSPECTIVE JUROR:  IT'S NEWS.

01:29PM 20           THE COURT:  OH, IT IS.  OKAY.

01:29PM 21       HOW WOULD YOU PORTION YOURSELF OUT IN THE STATION?  HOW

01:29PM 22   COULD YOU DO THAT?

01:29PM 23           PROSPECTIVE JUROR:  I'M NOT 100 PERCENT SURE.  LIKE

01:29PM 24   I SAID, WHEN IT CAME UP YESTERDAY, YOU KNOW, IT WAS HARD TO

01:29PM 25   AVOID.

01:29PM  1                    THE COURT:  SURE.

01:29PM  2                    PROSPECTIVE JUROR:  I CAN'T JUST REALLY, LIKE, GET

01:29PM  3      UP AND WALK OUT BECAUSE WHAT WE DO IS ALL LIVE.

01:29PM  4                    THE COURT:  TELL US AGAIN WHAT YOUR JOB TITLE IS.

01:30PM  5                    PROSPECTIVE JUROR:  PRODUCER.

01:30PM  6                    THE COURT:  PRODUCER.  SO YOU PUT PROGRAMS TOGETHER,

01:30PM  7      NEWS STORIES TOGETHER?

01:30PM  8                    PROSPECTIVE JUROR:  YEAH.

01:30PM  9                    THE COURT:  AND YOU CAN TELL YOUR BOSS, I CAN'T WORK

01:30PM  10     ON ANY STORIES, PARTICULARLY ONES ABOUT THIS CASE, THAT'S EASY

01:30PM  11     ENOUGH TO DO?

01:30PM  12                    PROSPECTIVE JUROR:  I SUPPOSE, BUT IS THAT ALLOWED?

01:30PM  13                    THE COURT:  WELL, I'M NOT GOING TO ASK YOU TO QUIT

01:30PM  14     YOUR JOB, SIR.  I CAN'T DO THAT.

01:30PM  15          BUT, NO, I APPRECIATE YOUR CANDOR HERE.  I'M PROBING THIS

01:30PM  16     JUST TO SEE, YOU KNOW, THIS MAY NOT BE THE RIGHT CASE FOR YOU

01:30PM  17     MR. ROCCAFORTE, IT MAY NOT BE.

01:30PM  18          IT MAY BE BECAUSE OF THE NATURE OF -- I THINK YOU'RE A

01:30PM  19     GOOD PERSON.  WE'VE JUST MET.  YOU SEEM LIKE A FINE PERSON TO

01:30PM  20     ME.  I THINK YOU WOULD GIVE YOUR BEST EFFORTS TO TRY TO

01:30PM  21     SEPARATE YOURSELF.

01:30PM  22          YOU WORK FOR A NEWS RADIO STATION AND YOU ARE, HOW SHOULD

01:30PM  23     I SAY, SURROUNDED BY NEWS ALL DAY.  YOU JUST TOLD US ABOUT WHAT

01:30PM  24     YOUR COMPUTER SCREEN SHOWS.

01:30PM  25          I MAY NOT HAVE ANY ADDITIONAL QUESTIONS FOR THIS WITNESS.

01:30PM   1          LET ME ASK, MR. SCHENK, ANYTHING FURTHER?

01:30PM   2                MR. SCHENK:  NOTHING FROM THE GOVERNMENT,

01:31PM   3     YOUR HONOR.

01:31PM   4                MR. DOWNEY:  NOTHING, YOUR HONOR.

01:31PM   5                THE COURT:  ALL RIGHT.  MR. ROCCAFORTE, WOULD IT

01:31PM   6     BREAK YOUR HEART SEVERELY IF I EXCUSED YOU FROM THIS JURY?

01:31PM   7                PROSPECTIVE JUROR:  THAT'S FINE WITH ME.

01:31PM   8          (LAUGHTER.)

01:31PM   9                THE COURT:  RESTRAIN YOUR ENTHUSIASM,

01:31PM  10     MR. ROCCAFORTE.

01:31PM  11          THANKS VERY MUCH, SIR, AND THANK YOU FOR YOUR CANDOR.  WE

01:31PM  12     APPRECIATE IT.  WE ALL APPRECIATE YOUR CANDOR.

01:31PM  13          I JUST THINK BASED ON YOUR EMPLOYMENT CIRCUMSTANCES THAT

01:31PM  14     YOU'VE TOLD US, IT WOULD BE VERY DIFFICULT, IF NOT IMPOSSIBLE,

01:31PM  15     FOR YOU TO CARRY ON THE TASK THAT I'VE ASKED OF ALL OF THE

01:31PM  16     OTHER JURORS.

01:31PM  17          THANK YOU VERY MUCH, SIR.  BE WELL, BE HEALTHY.

01:31PM  18          YOU CAN GO DOWNSTAIRS, IF YOU WOULD, TO THE JURY ASSEMBLY

01:31PM  19     ROOM AND LET THEM KNOW WHAT HAPPENED.

01:31PM  20          WOULD YOU LEAVE THAT DOCUMENTATION BACK ON THE CHAIR

01:31PM  21     THERE?

01:31PM  22                PROSPECTIVE JUROR:  I WILL, SIR.

01:31PM  23                THE COURT:  ALL RIGHT.  THANK YOU.

01:31PM  24                PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

01:31PM  25                THE COURT:  ANYONE ELSE IN THAT ROW, BACK THERE IN

01:31PM 1 MR. ROCCAFORTE'S ROW?  I DON'T SEE ANYONE IN THE BEHIND.

01:32PM 2  ALL RIGHT.  MS. RAMER, I THINK WE TALKED EARLIER, BUT

01:32PM 3 PLEASE COME FORWARD.

01:32PM 4  PROSPECTIVE JUROR:  I'M JUROR NUMBER 90.

01:32PM 5  THE COURT:  YES.  THANK YOU.

01:32PM 6  PROSPECTIVE JUROR:  I GUESS I'VE BEEN AWARE OF

01:32PM 7 THERANOS FOR QUITE SOME TIME BECAUSE OF MY WORK IN THE BIOTECH

01:32PM 8 INDUSTRY.  IT'S A RELATIVELY SMALL COMMUNITY IN THE BAY AREA,

01:32PM 9 AND THERANOS'S BUILDING WAS RIGHT DOWN THE STREET FROM MY

01:32PM 10 BUILDING AND I'VE BEEN INTERESTED IN SORT OF THE TECHNOLOGY AND

01:32PM 11 THE CHALLENGE.

01:32PM 12 I GUESS I'VE BEEN FAMILIAR AND, YOU KNOW, IT'S QUITE A BIT

01:32PM 13 OF CONVERSATION ABOUT THE COMPANY AND PROSPECTS.

01:32PM 14  THE COURT:  SURE.  OKAY.  WELL, THANK YOU FOR THAT.

01:32PM 15 TELL US THE MOST RECENT THING.  I THINK I ASKED YOU THIS.

01:32PM 16 I'M SORRY.  WHAT IS THE MOST RECENT MEDIA OR RADIO?

01:32PM 17  PROSPECTIVE JUROR:  SAME AS WHAT EVERYBODY ELSE IS

01:32PM 18 SAYING, HEADLINES ON NEWS FEEDS THAT I'VE IGNORED.

01:32PM 19  THE COURT:  DO YOU REMEMBER IN DETAIL ANY HEADLINES

01:33PM 20 OR NEWS FEED OTHER THAN THE NAME THERANOS?

01:33PM 21  PROSPECTIVE JUROR:  NO.  THAT THE CASE WAS STARTING,

01:33PM 22 AND THERE WERE A COUPLE OF MORE VAGUE ONES ABOUT WHAT TO

01:33PM 23 EXPECT, WHICH I DIDN'T PURSUE.

01:33PM 24  THE COURT:  OKAY.  YOU DIDN'T READ THAT?

01:33PM 25  PROSPECTIVE JUROR:  I DID NOT READ THAT.

01:33PM   1          THE COURT:  I SEE.  OKAY.

01:33PM   2          WELL, SAME QUESTION THAT I ASKED YOU EARLIER THIS MORNING.

01:33PM   3   DO YOU THINK ANY OF THIS WILL AFFECT YOUR ABILITY TO BE FAIR

01:33PM   4   AND IMPARTIAL, "THIS" MEANING YOU'RE IN THE INDUSTRY.  YOU KNOW

01:33PM   5   THE TECHNOLOGY, OR YOU'RE AT LEAST TRAINED IN IT?

01:33PM   6          PROSPECTIVE JUROR:  I DON'T THINK IT WILL.

01:33PM   7          THE COURT:  I'M SORRY?

01:33PM   8          PROSPECTIVE JUROR:  I'M A SCIENTIST.  WHAT I'M

01:33PM   9   TRAINED TO DO IS TO EVALUATE FACTS AND MAKE FACT-BASED

01:33PM  10   DECISIONS.

01:33PM  11          THE COURT:  RIGHT.

01:33PM  12          PROSPECTIVE JUROR:  I FEEL LIKE I COULD BE

01:33PM  13   COMPLETELY IMPARTIAL.

01:33PM  14          THE COURT:  OKAY.  THANK YOU.  THANKS SO MUCH.

01:33PM  15          WAS IT MR. BORLIK?  DID YOU HAVE YOUR HAND UP, SIR?

01:33PM  16          PROSPECTIVE JUROR:  YEP.  I THINK I'M NUMBER 93.

01:33PM  17          THE COURT:  THANK YOU.

01:33PM  18          PROSPECTIVE JUROR:  SO I WROTE IT ON MY

01:34PM  19   QUESTIONNAIRE.  I THINK IT WAS, LIKE, THE HBO DOCUMENTARY THAT

01:34PM  20   I SAW PROBABLY OVER A YEAR AGO.  I DON'T REALLY REMEMBER WHEN.

01:34PM  21          AND THEN THERE ARE SOME SPECIFIC DETAILS THAT I REMEMBER

01:34PM  22   FROM IT.

01:34PM  23          THE COURT:  OKAY.  THAT YOU RECALL TODAY?

01:34PM  24          PROSPECTIVE JUROR:  YEAH.

01:34PM  25          THE COURT:  OKAY.  WELL, YOU HEARD MY QUESTIONS.  WE

01:34PM 1    ALL WANT TO KNOW WHETHER OR NOT THAT INFORMATION WOULD EITHER

01:34PM 2    STAY WITH YOU OR THAT YOU WOULD CALL UPON IT AS A JUROR TO MAKE

01:34PM 3    DECISIONS ABOUT THIS CASE.

01:34PM 4         PROSPECTIVE JUROR:  I CAN SAY THAT I CAN MAKE AN

01:34PM 5    EFFORT TO PUT IT OUT OF MY MIND, BUT I CAN'T SAY THAT IT WOULD

01:34PM 6    MAKE ME UNBIASSED.

01:34PM 7         THE COURT:  OKAY.  TELL ME ABOUT THAT.

01:34PM 8         PROSPECTIVE JUROR:  UM, BECAUSE IT'S SOMETHING THAT

01:34PM 9    I KNOW.

01:34PM 10        THE COURT:  YOU'RE IN THE TECH FIELD, THIS TECH,

01:34PM 11   YOU'RE AWARE OF THIS TECHNOLOGY?

01:34PM 12        PROSPECTIVE JUROR:  YEAH.  I'M AWARE OF WHAT THEY

01:35PM 13   WERE WORKING ON, AND I AM AWARE OF SOME OF THE OTHER THINGS AND

01:35PM 14   THE REASON THAT THE CASE CAME ABOUT.

01:35PM 15       IT'S REALLY HARD FOR ME TO SAY ABOUT BIAS, RIGHT, BECAUSE

01:35PM 16   IT'S SOMETHING THAT I DO KNOW.  AND I DON'T WANT TO SAY THAT I

01:35PM 17   CAN PUT IT ALL OUT OF MY MIND FOR THE REASON OF MAKING A

01:35PM 18   DECISION.

01:35PM 19        THE COURT:  SURE.  WE TALK ABOUT BIAS AND WE TALK

01:35PM 20   ABOUT IT LIKE IT'S A PEJORATIVE THING OR A BAD THING TO BE

01:35PM 21   BIASED.

01:35PM 22       BUT MAYBE ANOTHER WAY TO LOOK AT IT IN YOUR CIRCUMSTANCE

01:35PM 23   IS THAT YOU HAVE INTIMATE -- IT'S WHAT YOU DO -- YOU HAVE

01:35PM 24   INTIMACY WITH THIS TECHNOLOGY.  YOU KNOW ABOUT THE TECHNOLOGY.

01:35PM 25   YOU KNOW ABOUT AND YOU'VE TOLD US YOU KNOW ABOUT THIS BLOOD

01:35PM 1    TESTING TECHNOLOGY.  IT'S SOMETHING THAT YOU KNOW ABOUT.

01:35PM 2         WHAT I THOUGHT I HEARD YOU SAY IS THAT IT'S BECAUSE OF

01:35PM 3    THAT KNOWLEDGE THAT IT MAY BE DIFFICULT FOR YOU TO FAIRLY JUDGE

01:35PM 4    THE EVIDENCE.

01:35PM 5         I DON'T WANT TO PUT WORDS IN YOUR MOUTH, BUT IS THAT WHAT

01:36PM 6    YOU'RE SAYING?

01:36PM 7              PROSPECTIVE JUROR:  IT'S HARD FOR ME TO SAY BECAUSE

01:36PM 8    I DON'T KNOW WHAT THAT IS, RIGHT.  I DON'T KNOW WHAT THE

01:36PM 9    EVIDENCE IS.

01:36PM 10        BUT FOR THE -- IN TERMS OF THE DOCUMENTARY, RIGHT, THAT'S

01:36PM 11   WHAT I THINK THE BIAS WOULD BE FROM.

01:36PM 12             THE COURT:  I SEE.  FROM WHAT YOU SAW?

01:36PM 13             PROSPECTIVE JUROR:  YEAH.

01:36PM 14             THE COURT:  AND THE INFLUENCE THAT THAT HAD ON YOU?

01:36PM 15             PROSPECTIVE JUROR:  (NODS HEAD UP AND DOWN.)

01:36PM 16             THE COURT:  DO YOU THINK THAT WOULD AFFECT ANY

01:36PM 17   DECISION THAT YOU MIGHT MAKE AS YOU EVALUATE THE EVIDENCE IN

01:36PM 18   THIS CASE AS A SEATED JUROR?

01:36PM 19             PROSPECTIVE JUROR:  I CAN SAY NO, BUT I HAVE A DOUBT

01:36PM 20   ABOUT THAT ANSWER.

01:36PM 21             THE COURT:  WELL, I'M ASKING YOU TO BE HONEST.  I

01:36PM 22   WANT YOU TO BE HONEST.  THERE'S NO PENALTY.  THERE'S NO PENALTY

01:36PM 23   FOR BEING HONEST.  NONE AT ALL.

01:36PM 24        SO YOU CAN TRY YOU SAID?

01:36PM 25             PROSPECTIVE JUROR:  YES.

| | | |
|---|---|---|
| 01:36PM | 1 | THE COURT:  BUT DO I HEAR YOU SAYING, I CAN TRY, |
| 01:37PM | 2 | JUDGE, BUT I CAN'T PROMISE THAT IT WON'T? |
| 01:37PM | 3 | PROSPECTIVE JUROR:  YES. |
| 01:37PM | 4 | THE COURT:  AND I'M NOT TRYING TO -- I DON'T WANT TO |
| 01:37PM | 5 | SPEAK FOR YOU, I DON'T.  I'M JUST TELLING YOU WHAT I HEAR. |
| 01:37PM | 6 | PROSPECTIVE JUROR:  THAT'S WHAT I'M GETTING AT. |
| 01:37PM | 7 | THE COURT:  MR. SCHENK, ANY QUESTIONS? |
| 01:37PM | 8 | MR. SCHENK:  NO.  THANK YOU, YOUR HONOR. |
| 01:37PM | 9 | MR. DOWNEY:  NOTHING, YOUR HONOR. |
| 01:37PM | 10 | THE COURT:  ALL RIGHT.  MR. BORLIK, I APPRECIATE |
| 01:37PM | 11 | YOUR CANDOR.  THANK YOU.  I'M GOING TO EXCUSE YOU -- |
| 01:37PM | 12 | MR. BORLIK?  OH. |
| 01:37PM | 13 | (LAUGHTER.) |
| 01:37PM | 14 | THE COURT:  MR. BORLIK IS JUROR NUMBER 93. |
| 01:37PM | 15 | MR. BORLIK, I'M GOING TO EXCUSE YOU.  THANK YOU FOR |
| 01:37PM | 16 | TELLING ME ABOUT THE CHALLENGE YOU WOULD FACE. |
| 01:37PM | 17 | AND YOU DON'T HAVE TO GO DOWNSTAIRS TO CHECK OUT.  I'M |
| 01:37PM | 18 | TOLD THAT YOU CAN JUST LEAVE THE COURTHOUSE IF YOU WOULD LIKE. |
| 01:37PM | 19 | PROSPECTIVE JUROR:  OKAY. |
| 01:37PM | 20 | THE COURT:  THANK YOU. |
| 01:37PM | 21 | ANYONE ELSE? |
| 01:37PM | 22 | I SEE NO HANDS. |
| 01:37PM | 23 | ALL RIGHT.  LET ME CONTINUE WITH MY QUESTIONS, LADIES AND |
| 01:37PM | 24 | GENTLEMEN. |
| 01:38PM | 25 | AS I TOLD YOU, THIS WILL BE A LENGTHY TRIAL.  YOU KNOW |

01:38PM 1     THAT.

01:38PM 2          OH, I'M SORRY.  I PROMISED I WOULD GET BACK TO --

01:38PM 3               MR. DOWNEY:  YOUR HONOR, JUROR 3 HAS BEEN RAISING

01:38PM 4     HER HAND.

01:38PM 5               THE COURT:  YES, I JUST MENTIONED THAT.  I'M GOING

01:38PM 6     TO GET BACK TO, IS IT WALLWORK.

01:38PM 7               PROSPECTIVE JUROR:  YES.

01:38PM 8               THE COURT:  YES.

01:38PM 9               PROSPECTIVE JUROR:  SHOULD I GO TO THE MIKE?

01:38PM 10              THE COURT:  WHY DON'T YOU?

01:38PM 11              PROSPECTIVE JUROR:  ALL RIGHT.  COOL.  IT SOUNDS

01:38PM 12    LIKE FUN.

01:38PM 13              THE COURT:  WHAT IS YOUR JUROR NUMBER, MS. WALLWORK?

01:38PM 14              PROSPECTIVE JUROR:  NUMBER 3.

01:38PM 15              THE COURT:  THANK YOU.

01:38PM 16              PROSPECTIVE JUROR:  HI.  SO I SPOKE TO SOMEONE

01:38PM 17    DOWNSTAIRS AND THEY SAID I SHOULD JUST LIKE BRING THIS UP ANY

01:38PM 18    TIME I COULD BECAUSE I DIDN'T KNOW THIS AT THE TIME OF FILLING

01:38PM 19    OUT THE ORIGINAL QUESTIONNAIRE, BUT I WOULD NOT BE FINANCIALLY

01:38PM 20    ABLE TO PARTICIPATE IN THE TRIAL FOR, LIKE, THE ALLOTTED

01:38PM 21    13 WEEKS.

01:38PM 22         AT THE TIME OF THE QUESTIONNAIRE I WAS AWARE THAT MY

01:38PM 23    EMPLOYER OFFERS LIKE -- BASICALLY THEY COVER JURY DUTY TIME.

01:39PM 24         BUT WHAT I WAS TOLD JUST A COUPLE OF DAYS AGO IS THAT THEY

01:39PM 25    OFFER FIVE DAYS OF JURY DUTY TIME.  SO THAT OBVIOUSLY DOESN'T

01:39PM  1    COVER 3 DAYS A WEEK FOR 13 WEEKS, SO I WON'T BE ABLE TO

01:39PM  2    PARTICIPATE IN THE TRIAL UNFORTUNATELY.

01:39PM  3            THE COURT:  BECAUSE OF FINANCIAL CIRCUMSTANCES?

01:39PM  4            PROSPECTIVE JUROR:  YEAH, I WOULDN'T BE AFFORDING MY

01:39PM  5    APARTMENT AT THAT POINT GIVEN THE SCHEDULE, AND IT DOES LINE UP

01:39PM  6    A LITTLE BIT WITH MY TYPICAL DAYS OFF, SO I WOULD BE MISSING

01:39PM  7    LIKE FOUR DAYS PER PAY PERIOD.

01:39PM  8            THE COURT:  WE'RE GOING THREE DAYS A WEEK, AS I TOLD

01:39PM  9    YOU, AND THAT GIVES TWO OTHER FULL DAYS AND I HOPE WE CAN BREAK

01:39PM 10    BY 2:00 O'CLOCK EVERY DAY AND THAT'S MY GOAL AND IT MIGHT

01:39PM 11    EXTEND.

01:39PM 12        DOES THAT GIVE YOU ANY SOLACE OR HELP YOU IN ANY WAY?

01:40PM 13            PROSPECTIVE JUROR:  NOT REALLY.  MY APARTMENT IS

01:40PM 14    KIND OF EXPENSIVE FOR THE KIND OF INCOME I GET DEFINITELY.

01:40PM 15            THE COURT:  AND I THINK YOU'RE A BETA TESTER, IS

01:40PM 16    THAT WHAT YOU DO?

01:40PM 17            PROSPECTIVE JUROR:  IT'S A FANCY NAME FOR

01:40PM 18    ESSENTIALLY AN IN-STORE RETAIL SALESPERSON.

01:40PM 19            THE COURT:  THEY HAVE BETA TESTERS.

01:40PM 20            PROSPECTIVE JUROR:  IT'S FUN.

01:40PM 21            THE COURT:  GREAT.

01:40PM 22            PROSPECTIVE JUROR:  IT'S A GOOD JOB.

01:40PM 23            THE COURT:  AND YOU'VE BEEN THERE THREE MONTHS?

01:40PM 24            PROSPECTIVE JUROR:  YEAH, ABOUT THE SAME AMOUNT OF

01:40PM 25    TIME I'VE BEEN IN THE APARTMENT.

01:40PM 1          (LAUGHTER.)

01:40PM 2               THE COURT:  ALL RIGHT.  THANK YOU.

01:40PM 3          MR. SCHENK, ANY QUESTIONS?

01:40PM 4               MR. SCHENK:  NO.

01:40PM 5               MR. DOWNEY:  NOTHING, YOUR HONOR.

01:40PM 6               THE COURT:  ALL RIGHT.  WELL, THANK YOU,

01:40PM 7     MS. WALLWORK.  THANK YOU FOR SPENDING THE DAY WITH US TODAY.

01:40PM 8     I'M SORRY I DID NOT CALL UPON YOU EARLIER, BUT I HOPE YOU FOUND

01:40PM 9     THIS EDUCATIONAL FOR JURY SERVICE AND YOUR JUSTICE SYSTEM, AND

01:40PM 10    IT MAY THAT BE YOU'LL BE SUMMONED AGAIN EITHER IN THIS COURT OR

01:40PM 11    A STATE COURT DOWN THE ROAD TO, AGAIN, ASSIST YOUR JUSTICE

01:41PM 12    SYSTEM.  SO I'LL EXCUSE YOU.

01:41PM 13         WHY DON'T YOU LEAVE THE PAPERWORK WHEN YOU COLLECT YOUR

01:41PM 14    THINGS IF YOU WOULD, MS. WALLWORK.

01:41PM 15         YES?

01:41PM 16              PROSPECTIVE JUROR:  I HAVE A SIMILAR CONCERN TO WHAT

01:41PM 17    SHE HAS, BUT I DIDN'T KNOW IF THIS WAS THE RIGHT TIME.

01:41PM 18              THE COURT:  MR. SCHULTZE?

01:41PM 19              PROSPECTIVE JUROR:  YEAH.

01:41PM 20              THE COURT:  WHY DON'T YOU COME UP TO THE MICROPHONE

01:41PM 21    HERE.

01:41PM 22              PROSPECTIVE JUROR:  SO I HAVE A SIMILAR CONCERN TO

01:41PM 23    HER.  I DIDN'T -- WHEN I FILLED OUT THE QUESTIONNAIRE, I DIDN'T

01:41PM 24    KNOW HOW MANY DAYS MY EMPLOYER COVERED, BUT THEY ONLY COVER

01:41PM 25    SEVEN DAYS.  I SPLIT AN APARTMENT, BUT IF IT WAS $50 OR $60 A

01:42PM  1     DAY, I COULDN'T COVER THE RENT FOR IT, LET ALONE THE UTILITIES

01:42PM  2     AND FOOD AND EXPENSES LIKE THAT.

01:42PM  3            THE COURT:  DOES THE SCHEDULE THAT I'VE OFFERED HERE

01:42PM  4     HELP YOU IN SOME WAY?

01:42PM  5            PROSPECTIVE JUROR:  WHERE I WORK I'M BASICALLY LIKE,

01:42PM  6     I THINK I PUT AN APPLICATION ENGINEER.  I'M JUST A FANCY

01:42PM  7     MACHINIST FOR SILICON WAFERS.

01:42PM  8         WE'RE ONLY OPEN MONDAY THROUGH FRIDAY, LIKE, 9:0 TO 4:00

01:42PM  9     AND SO IT'S KIND OF THREE OF MY FIVE DAYS WHERE I COULD WORK.

01:42PM  10            THE COURT:  ALL RIGHT.  THANK YOU.

01:42PM  11         MR. SCHENK, DO YOU HAVE ANY QUESTIONS?

01:42PM  12            MR. SCHENK:  NO.  THANK YOU.

01:42PM  13            MR. DOWNEY:  NO, YOUR HONOR.

01:42PM  14            THE COURT:  ALL RIGHT.  THANK YOU, MR. SCHULTZE.

01:42PM  15     I'LL EXCUSE YOU.  THANK YOU, SIR.

01:42PM  16            PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

01:42PM  17            THE COURT:  YOU'RE WELCOME.

01:42PM  18         ALL RIGHT.  LET ME CONTINUE WITH MY QUESTIONS.

01:43PM  19         I HOPE YOU CAN STILL ATTEND SOME GIANTS GAMES, SIR.

01:43PM  20            PROSPECTIVE JUROR:  I HAVEN'T BEEN ABLE TO.  THANK

01:43PM  21     YOU.

01:43PM  22            THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, YOU'VE

01:43PM  23     HEARD ME TALK ABOUT MEDIA AND EXPOSURE, AND JURORS WILL BE

01:43PM  24     INSTRUCTED TO NOT READ, LISTEN TO MEDIA COVERAGE ABOUT THE

01:43PM  25     CASE, AND THIS IS IMPORTANT, AS YOU'VE HEARD ME TALK ABOUT ALL

01:43PM  1    DAY.

01:43PM  2        A JUROR'S DECISION ON THE CASE MUST BE FORMED ONLY BY THE

01:43PM  3    EVIDENCE ADMITTED AND RECEIVED IN THE COURTROOM AND NOT ON ANY

01:43PM  4    INFORMATION RECEIVED OUTSIDE OF THE COURTHOUSE.

01:43PM  5        A JUROR WHO IS EXPOSED TO ANY OUTSIDE INFORMATION MUST

01:43PM  6    REPORT THE EXPOSURE TO THE COURT.  THAT MEANS TO ME VIA MY

01:43PM  7    COURTROOM DEPUTY.

01:43PM  8        NOW, THIS MAY BE DIFFICULT.  IT'S GOING TO BE CHALLENGING.

01:43PM  9    I'VE TALKED ABOUT TURNING YOUR NOTIFICATION DEVICES AND THOSE

01:43PM  10   THINGS OFF.

01:44PM  11       IS THERE ANYONE ELSE WHO HAS ANYTHING THAT THEY WOULD LIKE

01:44PM  12   TO SHARE WITH US ABOUT WHETHER OR NOT THEY HAVE KNOWLEDGE

01:44PM  13   REGARDING THE FACTS OF THIS CASE OTHER THAN WHAT WE HAVE

01:44PM  14   ALREADY TALKED ABOUT?

01:44PM  15       I SEE NO HANDS.

01:44PM  16       IS THERE ANYTHING ABOUT THE FACT THAT THE CHARGE RELATES

01:44PM  17   TO ALLEGATIONS OF WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE

01:44PM  18   FRAUD THAT WILL AFFECT ANYONE'S ABILITY TO BE FAIR AND

01:44PM  19   IMPARTIAL?  THIS IS JUST THE NATURE OF THE CHARGES.  IS THERE

01:44PM  20   ANYTHING ABOUT THE NATURE OF THE CHARGES THAT YOU THINK WILL

01:44PM  21   CAUSE DIFFICULTY TO BE FAIR?

01:44PM  22       I SEE NO HANDS.

01:44PM  23       NOW, LET ME INQUIRE ABOUT PRIOR JURY SERVICE.  I KNOW SOME

01:44PM  24   OF YOU HAVE ANSWERED THIS QUESTION.

01:44PM  25       HOW MANY OF YOU HAVE SERVED ON JURIES PREVIOUSLY?

01:44PM  1  ALL RIGHT.  THANK YOU.

01:44PM  2  AND I THINK YOU TOLD US YOU ANSWERED THOSE QUESTIONS IN

01:44PM  3 THE QUESTIONNAIRE ABOUT YOUR JURY SERVICE.

01:44PM  4  LET ME ASK YOU COLLECTIVELY, THOSE OF YOU WHO RAISED YOUR

01:44PM  5 HANDS, SOME OF YOU HAVE SERVED IN CIVIL CASES AND SOME OF YOU

01:45PM  6 SERVED IN CRIMINAL CASES AS JURORS IN THE PAST.

01:45PM  7  IS THERE ANYTHING ABOUT YOUR PRIOR JURY SERVICE THAT YOU

01:45PM  8 THINK WILL AGAIN AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL

01:45PM  9 IN THIS TRIAL?  ANYONE HAVE ANY OBSERVATIONS ABOUT THAT?

01:45PM  10  I SEE NO HANDS.

01:45PM  11  HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ACCUSED OF WIRE

01:45PM  12 FRAUD OR ALLEGATIONS REGARDING FRAUDULENT CONDUCT?  ANYONE HAVE

01:45PM  13 OR KNOW OF ANYONE IN THOSE CIRCUMSTANCES?

01:45PM  14  I SEE NO HANDS.

01:45PM  15  NOW, LADIES AND GENTLEMEN, I WANT TO MOVE TO A DIFFERENT

01:45PM  16 TOPIC -- OH, I SEE A HAND.  YES.  I BEG YOUR PARDON.

01:45PM  17  YES, MR. PENUMUDY, YES.

01:45PM  18  PROSPECTIVE JUROR:  YES, SO I JUST FOUND OUT THAT A

01:45PM  19 FRIEND OF MINE -- WE WENT TO COLLEGE TOGETHER -- HE HAS BEEN

01:45PM  20 SENTENCED ON A WIRE FRAUD CHARGE.

01:46PM  21  THE COURT:  I SEE.  HOW LONG AGO WAS THAT, SIR?

01:46PM  22  PROSPECTIVE JUROR:  SO I THINK THE CASE WAS BROUGHT

01:46PM  23 AGAINST HIM ABOUT SIX MONTHS BACK AND THE SENTENCING HAPPENED I

01:46PM  24 THINK TWO WEEKS AGO.

01:46PM  25  THE COURT:  WAS THAT IN THIS COURTHOUSE, IN A

01:46PM 1 FEDERAL COURTHOUSE?

01:46PM 2     PROSPECTIVE JUROR:  NO.  IT'S A FEDERAL COURTHOUSE,

01:46PM 3 BUT I THINK IT'S IN SEATTLE.

01:46PM 4     THE COURT:  SEATTLE?

01:46PM 5     PROSPECTIVE JUROR:  YEAH.

01:46PM 6     THE COURT:  I SEE.  DID YOU PARTICIPATE AT ALL IN

01:46PM 7 THOSE PROCEEDINGS, SIR?

01:46PM 8     PROSPECTIVE JUROR:  NO.

01:46PM 9     THE COURT:  YOU DIDN'T TESTIFY AS A WITNESS?

01:46PM 10     PROSPECTIVE JUROR:  NO.

01:46PM 11     THE COURT:  DID YOU WRITE A LETTER TO THE COURT IN

01:46PM 12 SUPPORT OF EITHER SIDE IN THAT CASE?

01:46PM 13     PROSPECTIVE JUROR:  NO, I DID NOT.

01:46PM 14     THE COURT:  AND YOU WEREN'T A WITNESS IN THE CASE?

01:46PM 15     PROSPECTIVE JUROR:  NO.

01:46PM 16     THE COURT:  IT'S JUST A FRIEND THAT YOU KNEW THIS

01:46PM 17 HAPPENED TO?

01:46PM 18     PROSPECTIVE JUROR:  YES.

01:46PM 19     THE COURT:  AND DO YOU KNOW ANY OF THE CIRCUMSTANCES

01:46PM 20 OF THAT SITUATION THAT HE HAD?

01:46PM 21     PROSPECTIVE JUROR:  I AM AWARE OF SOME OF THE

01:46PM 22 CIRCUMSTANCES BECAUSE I FOLLOWED THAT CASE IN THE SENSE OF THE

01:46PM 23 CHARGES AND WHAT HAPPENED.

01:46PM 24     THE COURT:  YES.

01:46PM 25     PROSPECTIVE JUROR:  I EVEN SPOKE TO THAT PERSON.

01:46PM 1          THE COURT:  YOU SPOKE TO HIM?

01:46PM 2          PROSPECTIVE JUROR:  YES, I DID.

01:46PM 3          THE COURT:  I SEE.  AND DID HE SHARE WITH YOU AT

01:46PM 4  LEAST -- I'M NOT ASKING YOU TO TELL US, PLEASE DON'T, BUT DID

01:46PM 5  HE SHARE WITH YOU HIS THOUGHTS ABOUT HIS CASE?

01:47PM 6          PROSPECTIVE JUROR:  OH, A LITTLE BIT.  JUST A LITTLE

01:47PM 7  BIT.  NOT THE DETAILS OF THE CASE, BUT MORE ABOUT HOW HE FELT

01:47PM 8  ABOUT IT.

01:47PM 9          THE COURT:  I SEE.  DO YOU KNOW IF THAT CASE WENT TO

01:47PM 10 A TRIAL?

01:47PM 11         PROSPECTIVE JUROR:  I DON'T THINK SO.

01:47PM 12         THE COURT:  OKAY.  IT WAS RESOLVED IN SOME OTHER

01:47PM 13 MANNER OTHER THAN A TRIAL?

01:47PM 14         PROSPECTIVE JUROR:  YEAH.

01:47PM 15         THE COURT:  ALL RIGHT.  AND YOU SAY THE SENTENCING

01:47PM 16 WAS TWO WEEKS AGO, SOMETHING LIKE THAT?

01:47PM 17         PROSPECTIVE JUROR:  YES.

01:47PM 18         THE COURT:  I SEE.  IS THERE ANYTHING ABOUT THAT

01:47PM 19 EXPERIENCE, SIR, THAT YOU THINK AFFECTS YOUR ABILITY TO BE FAIR

01:47PM 20 AND IMPARTIAL HERE?

01:47PM 21         PROSPECTIVE JUROR:  I DON'T THINK SO.

01:47PM 22         THE COURT:  OKAY.  ALL RIGHT.  IT SOUNDS LIKE YOU

01:47PM 23 KNOW A LITTLE BIT ABOUT THE ALLEGATIONS AND WHAT THE CASE

01:47PM 24 RESOLVED ABOUT, FOR.

01:47PM 25         PROSPECTIVE JUROR:  YES.

01:47PM  1            THE COURT:  BUT NOT GREAT DETAIL.

01:47PM  2            PROSPECTIVE JUROR:  YES.

01:47PM  3            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:47PM  4            PROSPECTIVE JUROR:  ALL RIGHT.

01:47PM  5            THE COURT:  NOW, LADIES AND GENTLEMEN, I WOULD LIKE

01:47PM  6    TO MOVE TO A DIFFERENT TOPIC, AND I WANT TO ASK YOU IF YOU, IF

01:48PM  7    YOU HAVE EVER BEEN OR EVER FELT THAT YOU OR A CLOSE FRIEND OR A

01:48PM  8    RELATIVE WAS A VICTIM OF INTIMATE PARTNER VIOLENCE OR ABUSE, OR

01:48PM  9    WHAT IS KNOWN AS DOMESTIC OR RELATIONSHIP VIOLENCE?  HAS

01:48PM 10    ANYBODY HAD -- HAVE YOU BEEN INVOLVED OR DO YOU KNOW SOMEONE

01:48PM 11    WHO HAS BEEN INVOLVED IN THOSE SITUATIONS?

01:48PM 12        MR. BURGE, I THINK I SAW YOUR HAND, SIR.  WHY DON'T YOU

01:48PM 13    COME TO THE MICROPHONE?

01:48PM 14        YES, SIR.

01:48PM 15            PROSPECTIVE JUROR:  MY WIFE, BEFORE WE MET, WAS A

01:48PM 16    VICTIM OF ABUSE, AND THERE WAS ACTUALLY A CASE BROUGHT AGAINST

01:48PM 17    HER BOYFRIEND AT THE TIME AND HE WAS ARRESTED AND PUT IN JAIL,

01:48PM 18    AND THAT'S --

01:48PM 19            THE COURT:  OKAY.  THAT WAS BEFORE YOU MET YOUR

01:48PM 20    WIFE?

01:48PM 21            PROSPECTIVE JUROR:  CORRECT.

01:48PM 22            THE COURT:  YOUR SOURCE OF INFORMATION IS HER, HER

01:48PM 23    TALKING ABOUT THAT?

01:49PM 24            PROSPECTIVE JUROR:  CORRECT.

01:49PM 25            THE COURT:  AND DO YOU KNOW, SIR, HOW LONG AGO THAT

01:49PM 1    WAS?

01:49PM 2            PROSPECTIVE JUROR:  OVER 20 YEARS BECAUSE WE'VE BEEN

01:49PM 3    TOGETHER 20 YEARS NOW.

01:49PM 4            THE COURT:  OKAY.  ALL RIGHT.  HAS SHE -- I HOPE

01:49PM 5    YOU'LL PARDON ME, SIR, BUT HAVE YOU TALKED WITH YOUR WIFE ABOUT

01:49PM 6    THAT SITUATION?

01:49PM 7        AND I DON'T WANT TO KNOW WHAT IT WAS, BUT I'M CURIOUS

01:49PM 8    WHETHER OR NOT YOU HAD CONVERSATIONS ABOUT THAT?

01:49PM 9            PROSPECTIVE JUROR:  YEAH, IT COMES UP FROM TIME TO

01:49PM 10   TIME.  SHE STILL HAS ISSUES WITH WHERE HE PUNCHED HER AND

01:49PM 11   GRABBED HER AND --

01:49PM 12           THE COURT:  I SEE.

01:49PM 13           PROSPECTIVE JUROR:  AND EMOTIONALLY SHE'S VERY

01:49PM 14   SCARRED FROM IT.

01:49PM 15           THE COURT:  OKAY.

01:49PM 16           PROSPECTIVE JUROR:  SO FROM TIME TO TIME IT DOES

01:49PM 17   COME UP.

01:49PM 18           THE COURT:  I SEE.

01:49PM 19       DO YOU KNOW, SIR, WHETHER OR NOT -- AND IF YOU -- IF

01:49PM 20   IT'S -- IF YOU'D PREFER NOT TO ANSWER, PLEASE DON'T, AND JUST

01:49PM 21   TELL ME.

01:49PM 22       BUT DO YOU KNOW WHETHER SHE HAS RECEIVED THERAPY,

01:49PM 23   COUNSELLING, ANYTHING LIKE THAT OVER THE YEARS?

01:49PM 24           PROSPECTIVE JUROR:  NOT TO MY KNOWLEDGE, NO.

01:49PM 25           THE COURT:  OKAY.  ALL RIGHT.

01:50PM 1          AND YOU, OF COURSE, WERE NOT INVOLVED IN THAT PROCESS AT

01:50PM 2      ALL.

01:50PM 3              PROSPECTIVE JUROR:  NO, SIR.

01:50PM 4              THE COURT:  OKAY.  HOW IS IT -- DO YOU HAVE ANY

01:50PM 5      FEELINGS ABOUT THAT AREA IN GENERAL BASED ON YOUR WIFE'S

01:50PM 6      EXPERIENCE?

01:50PM 7              PROSPECTIVE JUROR:  BESIDES HATING HIM?  YEAH, I

01:50PM 8      MEAN, I FEEL BAD FOR HER BECAUSE IT'S SOMETHING THAT SHE CAN'T

01:50PM 9      SHAKE.  IT'S SOMETHING THAT WILL BE WITH HER FOREVER.

01:50PM 10             THE COURT:  DO YOU KNOW HOW LONG SHE WAS IN A

01:50PM 11     RELATIONSHIP WITH THIS PERSON?

01:50PM 12             PROSPECTIVE JUROR:  A COUPLE YEARS.

01:50PM 13             THE COURT:  ANYTHING ELSE YOU WANT TO SHARE WITH US

01:50PM 14     ABOUT THAT?

01:50PM 15             PROSPECTIVE JUROR:  NO, SIR.

01:50PM 16             THE COURT:  BEFORE YOU LEAVE, I DID WANT TO ASK YOU

01:50PM 17     ANOTHER QUESTION.  THIS IS ABOUT -- YOU TOLD US YOU SAW SOME

01:50PM 18     HEADLINES ABOUT THIS CASE, AND I THINK I NEGLECTED TO ASK YOU

01:50PM 19     WHAT THE HEADLINES WERE, IF YOU RECALL.

01:50PM 20             PROSPECTIVE JUROR:  I SAW ONE FOR JURY SELECTION,

01:50PM 21     AND THEN THERE WAS ONE ABOUT THE DEFENSE STRATEGY?  WAS THIS IN

01:51PM 22     A NEWSPAPER OR ELECTRONIC --

01:51PM 23             PROSPECTIVE JUROR:  THIS WAS ONLINE.

01:51PM 24             THE COURT:  AND THOSE WERE WHAT THE HEADLINES WERE?

01:51PM 25             PROSPECTIVE JUROR:  RIGHT.

01:51PM 1        THE COURT:  AND I THINK YOU TOLD US YOU DID NOT --

01:51PM 2        PROSPECTIVE JUROR:  I DID NOT READ THEM.

01:51PM 3        THE COURT:  AND THE TIMING OF THIS WAS?

01:51PM 4        PROSPECTIVE JUROR:  WITHIN THE LAST WEEK OR SO.

01:51PM 5        THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.  I

01:51PM 6  APPRECIATE IT.

01:51PM 7        PROSPECTIVE JUROR:  UH-HUH.

01:51PM 8        THE COURT:  ANYONE ELSE IN RESPONSE TO MY QUESTION?

01:51PM 9     YES, IS THAT MR. --

01:51PM 10        PROSPECTIVE JUROR:  -- WITHERSPOON.

01:51PM 11        THE COURT:  YES, MR. WITHERSPOON.  YES.

01:51PM 12        PROSPECTIVE JUROR:  I'M JUROR NUMBER 29.

01:51PM 13        THE COURT:  THANK YOU.

01:51PM 14        PROSPECTIVE JUROR:  I'M CURRENTLY UNDER SUBPOENA AND

01:51PM 15  MY WIFE IS UNDER SUBPOENA FOR A LAWSUIT.  I HAVE THE SUBPOENA

01:51PM 16  WITH ME.  IT'S INVOLVING ALLEGED ABUSE OF A MINOR.

01:51PM 17        THE COURT:  ARE YOU WITNESSES IN THAT CASE?

01:51PM 18        PROSPECTIVE JUROR:  YES, SIR.

01:51PM 19        THE COURT:  ARE YOU WITNESSES FOR, IF YOU CARE TO

01:51PM 20  SHARE WITH US, THE PROSECUTION IN THE CASE?  THE DEFENSE?

01:51PM 21        PROSPECTIVE JUROR:  THE PLAINTIFF OR -- IT'S NOT A

01:52PM 22  CRIMINAL.

01:52PM 23        THE COURT:  IT'S A CIVIL CASE?

01:52PM 24        PROSPECTIVE JUROR:  THE PLAINTIFF, YEAH.

01:52PM 25        THE COURT:  I SEE.  AND IS THAT IN SANTA CLARA

01:52PM  1    COUNTY OR SOME OTHER COUNTY?

01:52PM  2                PROSPECTIVE JUROR:  IT'S IN PLACER COUNTY.

01:52PM  3                THE COURT:  I SEE.  OKAY.

01:52PM  4           AND THIS IS INVOLVING A CHILD CUSTODY ISSUE?

01:52PM  5                PROSPECTIVE JUROR:  I'M UNAWARE OF THE

01:52PM  6    CIRCUMSTANCES.  THEY CAN'T REVEAL IT.  THE CASE IS SEALED.

01:52PM  7                THE COURT:  I SEE.  OKAY.

01:52PM  8                PROSPECTIVE JUROR:  I WAS ALSO -- JUST FULL

01:52PM  9    DISCLOSURE.  I WAS INVOLVED IN A LAWSUIT WITH THESE PEOPLE.

01:52PM 10                THE COURT:  A CIVIL LAWSUIT?

01:52PM 11                PROSPECTIVE JUROR:  YEAH, IN 2012.

01:52PM 12                THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU FOR

01:52PM 13    SHARING THAT.

01:52PM 14                PROSPECTIVE JUROR:  YEP.

01:52PM 15                THE COURT:  ANYONE ELSE IN RESPONSE TO THIS

01:52PM 16    QUESTION?

01:52PM 17           LET ME GO TO THE JURY BOX.  YES.

01:52PM 18           AND IS THAT MS. CHAMBERS?

01:52PM 19                PROSPECTIVE JUROR:  YEAH.

01:52PM 20                THE COURT:  YES.  AND IN RESPONSE TO THIS QUESTION,

01:52PM 21    LET ME SAY, IF ANYONE WISHES TO SPEAK PRIVATELY ABOUT THIS

01:53PM 22    QUESTION, WE CAN DO THAT.  I'M HAPPY TO DO THAT.

01:53PM 23           MS. CHAMBERS, THAT OF COURSE APPLIES TO YOU AS WELL.

01:53PM 24                PROSPECTIVE JUROR:  JUROR NUMBER 17.

01:53PM 25                THE COURT:  YES.

01:53PM  1            PROSPECTIVE JUROR:  MY EX-HUSBAND WAS ABUSIVE

01:53PM  2   TOWARDS ME.  A FEW INSTANCES.  IT WASN'T ANYTHING -- ONE TIME

01:53PM  3   THE POLICE GOT CALLED BECAUSE WE WERE AT MY FRIEND'S HOUSE AND

01:53PM  4   HE WAS DRUNK AND HE PULLED MY HAIR DOWN TO THE GROUND, AND SO

01:53PM  5   MY FRIENDS CALLED THE POLICE.  BUT HE WAS ARRESTED AND HE WAS

01:53PM  6   RELEASED THE NEXT DAY.

01:53PM  7            THAT WAS IN 2018.

01:53PM  8            I'M NOT REALLY -- I HAVEN'T REALLY TALKED TO HIM FOR A

01:53PM  9   LONG TIME.  HE WAS ARRESTED FOR SOMETHING ELSE ABOUT A YEAR AND

01:53PM  10  A HALF AGO.  SO I'M NOT REALLY IN CONTACT.

01:53PM  11           WE HAVE TWO KIDS, I HAVE TWO KIDS.  HE DOESN'T HAVE

01:53PM  12  CUSTODY OF THEM OR ANYTHING.

01:53PM  13           THE COURT:  OKAY.

01:53PM  14           PROSPECTIVE JUROR:  HE DOES GET TO SEE THEM

01:53PM  15  SOMETIMES.  BUT AFTER THIS RECENT ARREST, HE HAS GOT TO SEE

01:53PM  16  THEM ONCE WITH HIS MOM SUPERVISING FOR A FEW HOURS JUST BECAUSE

01:54PM  17  MY CHILDREN WANTED TO SEE THEIR DAD.

01:54PM  18           THEY'RE ALMOST 12 AND 7, SO THEY'RE, LIKE, I FEEL OLD

01:54PM  19  ENOUGH, AT LEAST THE 12-YEAR OLD TO MAKE A DECISION LIKE THAT.

01:54PM  20           BUT OTHER THAN THAT, THAT'S --

01:54PM  21           THE COURT:  OKAY.  DID YOU GO TO FAMILY COURT FOR

01:54PM  22  ANY OF THIS?

01:54PM  23           PROSPECTIVE JUROR:  NO.

01:54PM  24           THE COURT:  OKAY.  THIS WAS HANDLED OUTSIDE OF THE

01:54PM  25  COURT SYSTEM?

01:54PM 1             PROSPECTIVE JUROR:  YEAH.

01:54PM 2             THE COURT:  AND IF YOU CARE TO SHARE, HAVE YOU OR

01:54PM 3    DID YOU RECEIVE ANY COUNSELLING, THERAPY, FOR YOUR EXPERIENCE?

01:54PM 4             PROSPECTIVE JUROR:  NO.

01:54PM 5             THE COURT:  OKAY.  I'M SORRY, HOW LONG AGO WAS THIS?

01:54PM 6             PROSPECTIVE JUROR:  2018.

01:54PM 7             THE COURT:  ALL RIGHT.  OKAY.

01:54PM 8             PROSPECTIVE JUROR:  THREE YEARS AGO.

01:54PM 9             THE COURT:  OKAY.  THANK YOU.

01:54PM 10            PROSPECTIVE JUROR:  THANK YOU.

01:54PM 11            THE COURT:  YOU'RE WELCOME.

01:54PM 12        WERE THERE ANY OTHER RESPONSES?

01:54PM 13        MR. TEJADA, DID YOU HAVE A -- I THINK I SEE YOUR HAND UP.

01:54PM 14    YOUR JUROR NUMBER AGAIN IS?

01:54PM 15            PROSPECTIVE JUROR:  JUROR NUMBER 56, YOUR HONOR.

01:54PM 16            THE COURT:  THANK YOU.

01:55PM 17            PROSPECTIVE JUROR:  I HAVE TWO EXAMPLES OFF THE TOP

01:55PM 18    OF MY HEAD.  BOTH OF THEM WERE LONG-TIME FRIENDS.  ONE OF THEM

01:55PM 19    A LONG TIME FRIEND OF MY MOTHER.  SHE WAS IN AN ABUSIVE

01:55PM 20    MARRIAGE FOR A LONG TIME.

01:55PM 21        AND THE OTHER HAS A HISTORY OF ABUSIVE RELATIONSHIPS.

01:55PM 22        I SHOULD PROBABLY ALSO MENTION THAT MY ORGANIZATION DOES

01:55PM 23    HELP DOMESTIC VIOLENCE VICTIMS.  WE DO HELP WITH RESTRAINING

01:55PM 24    ORDERS AS WELL AS NEW VISAS.  THAT'S NOT MY DEPARTMENT, BUT

01:55PM 25    THAT IS SOMETHING THAT MY ORGANIZATION DOES.

01:55PM  1          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:55PM  2       HAVE YOU EVER DONE ANY OF THAT WORK?

01:55PM  3          PROSPECTIVE JUROR:  NO.  WELL, I'VE HAD TO LISTEN TO

01:55PM  4    A COUPLE OF CASES BECAUSE I DO HAVE TO TAKE INTAKES ON OUR

01:55PM  5    ORGANIZATION, BUT I DON'T SPECIFICALLY DO THE DOMESTIC VIOLENCE

01:55PM  6    WORK.

01:55PM  7          THE COURT:  I SEE.  OKAY.  THANK YOU.  THANK YOU,

01:55PM  8    SIR.

01:55PM  9       I THINK THERE WERE OTHER HANDS THERE.

01:56PM 10       MS. GROGAN.

01:56PM 11          PROSPECTIVE JUROR:  I KNOW SEVERAL FOLKS, TWO OF

01:56PM 12    WHOM I'M RELATED TO, WHO HAVE BEEN THE VICTIMS OF DOMESTIC

01:56PM 13    VIOLENCE.

01:56PM 14          THE COURT:  AND WERE YOU INVOLVED AT ALL IN THOSE

01:56PM 15    CIRCUMSTANCES?  AND BY THAT I MEAN DID YOU GO TO COURT AS A

01:56PM 16    WITNESS?  DID YOU ASSIST?  DID YOU IN ANY WAY OFFER ASSISTANCE?

01:56PM 17          PROSPECTIVE JUROR:  DRIVE SOMEBODY TO THE POLICE

01:56PM 18    OFFICE, YEAH.

01:56PM 19          THE COURT:  YEAH.  OKAY.

01:56PM 20       WERE YOU INVOLVED AT ALL IN ANY PROCEEDING, LEGAL

01:56PM 21    PROCEEDINGS INVOLVING THOSE CASES?

01:56PM 22          PROSPECTIVE JUROR:  NO.

01:56PM 23          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:56PM 24       HOW LONG AGO WAS THIS?  I'M SORRY?

01:56PM 25          PROSPECTIVE JUROR:  TEN YEARS AGO.

01:56PM  1          THE COURT:  ALL RIGHT.  THANK YOU.

01:56PM  2          ANYONE ELSE?

01:56PM  3          I SEE NO HANDS.

01:56PM  4          DO ANY OF YOU HAVE THOUGHTS ABOUT THE WORK OF

01:57PM  5   PROFESSIONALS WHO ARE INVOLVED IN CASES OF ABUSE OR VIOLENCE?

01:57PM  6   AND I'M TALKING ABOUT PROFESSIONAL COUNSELLING, EVALUATIONS,

01:57PM  7   THERAPIES, THOSE TYPES OF THINGS?  ANYONE HAVE ANY THOUGHTS

01:57PM  8   ABOUT THOSE PROFESSIONS OR THAT WORK?

01:57PM  9          I SEE NO HANDS.

01:57PM  10          HAVE ANY OF YOU KNOWN ANYONE WHO YOU THOUGHT WAS FALSELY

01:57PM  11   OR UNFAIRLY ACCUSED OF DOMESTIC VIOLENCE OR PARTNER ABUSE

01:57PM  12   ALLEGATIONS?  ANYONE KNOW ANYONE WHO YOU THINK OR KNOW WAS

01:57PM  13   FALSELY ACCUSED OF THIS TYPE OF CONDUCT?

01:57PM  14          I SEE NO HANDS.

01:57PM  15          HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ASSOCIATED WITH

01:57PM  16   OR BEEN A CONTRIBUTOR TO ANY DOMESTIC VIOLENCE, VICTIM SUPPORT

01:57PM  17   GROUP, WOMEN'S SHELTER OR ORGANIZATION SUCH AS THOSE?

01:57PM  18          YES, MR. TEJADA?

01:57PM  19              PROSPECTIVE JUROR:  SO AS I MENTIONED BEFORE, MY

01:57PM  20   ORGANIZATION DOES A LOT OF WORK WITH DOMESTIC VIOLENCE AND MY

01:58PM  21   OFFICE HAS PARTNERSHIPS WITH AT LEAST ONE SHELTER.  IT'S NOT MY

01:58PM  22   DEPARTMENT, SO I DON'T KNOW ALL OF OUR DETAILS, BUT FOR SURE WE

01:58PM  23   HAVE DONE WORK WITH DOMESTIC VIOLENCE ORGANIZATIONS.

01:58PM  24              THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.

01:58PM  25          ANYONE ELSE?

01:58PM   1          YES.  IS THAT MR. LEE?

01:58PM   2                  PROSPECTIVE JUROR:  NUMBER 94.

01:58PM   3                  THE COURT:  THANK YOU.

01:58PM   4                  PROSPECTIVE JUROR:  WOULD IT BE ALL RIGHT TO SPEAK

01:58PM   5      IN PRIVATE?

01:58PM   6                  THE COURT:  YES, SIR.  LET'S PASS THIS FOR JUST A

01:58PM   7      MOMENT AND THEN WE'LL TALK IN PRIVATE.  THANK YOU.

01:58PM   8          ANYONE ELSE?

01:58PM   9          HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN EMPLOYED BY A

01:58PM  10      LAW ENFORCEMENT OFFICE, DISTRICT ATTORNEY'S OFFICE, UNITED

01:58PM  11      STATES ATTORNEY'S OFFICE, FBI, I.R.S., OR IN THE CRIMINAL

01:58PM  12      JUSTICE SYSTEM AS A DEFENSE LAWYER, PROBATION OFFICER, OR

01:59PM  13      INVESTIGATOR?  ANYONE HAVE ANY CONTACTS IN THOSE FIELDS?

01:59PM  14          I SEE NO HANDS.

01:59PM  15          WOULD ANY OF YOU GIVE GREATER OR LESSER CREDENCE TO A

01:59PM  16      WITNESS WHO IS A LAW ENFORCEMENT OFFICER, AGENT, OR GOVERNMENT

01:59PM  17      REPRESENTATIVE SIMPLY BECAUSE THAT WITNESS IS A LAW ENFORCEMENT

01:59PM  18      OFFICER, AGENT, OR GOVERNMENT REPRESENTATIVE?

01:59PM  19          THIS QUESTION IS DESIGNED TO ASK YOU, JUST BECAUSE THE

01:59PM  20      FACT OF SOMEONE'S EMPLOYMENT IN LAW ENFORCEMENT, WOULD YOU GIVE

01:59PM  21      THAT WITNESS'S TESTIMONY GREATER OR LESSER WEIGHT JUST BECAUSE

01:59PM  22      OF THE NATURE OF THEIR EMPLOYMENT?

01:59PM  23          ANYONE FEEL THAT THEY WOULD DO THAT?

01:59PM  24          I SEE NO HANDS.

01:59PM  25          DO ANY OF YOU HAVE ANY OPINIONS ABOUT THE UNITED STATES

01:59PM 1    GOVERNMENT OR THE STATE OF CALIFORNIA OR ANY FEDERAL OR STATE

01:59PM 2    LAW ENFORCEMENT AGENCY THAT MIGHT AFFECT YOUR ABILITY TO BE

01:59PM 3    FAIR AND IMPARTIAL IN THIS CASE?

01:59PM 4        I SEE NO HANDS.

01:59PM 5        IS ANYONE OF THE OPINION THAT THE CRIMINAL JUSTICE SYSTEM

02:00PM 6    IS FUNDAMENTALLY UNFAIR SUCH THAT YOUR ABILITY TO BE FAIR AND

02:00PM 7    IMPARTIAL TO BOTH SIDES MIGHT BE IMPAIRED?  ANYONE HAVE THOSE

02:00PM 8    FEELINGS?

02:00PM 9        I SEE NO HANDS.

02:00PM 10       I'D LIKE TO TALK ABOUT THE PRESUMPTION OF INNOCENCE.

02:00PM 11       A DEFENDANT IN A CRIMINAL CASE IS PRESUMED TO BE INNOCENT.

02:00PM 12   THIS PRESUMPTION REQUIRES THE GOVERNMENT TO PROVE EACH ELEMENT

02:00PM 13   OF AN OFFENSE BEYOND A REASONABLE DOUBT.

02:00PM 14       PROOF BEYOND A REASONABLE DOUBT IS PROOF THAT LEAVES YOU

02:00PM 15   FIRMLY CONVINCED THAT THE DEFENDANT IS GUILTY.

02:00PM 16       IT IS NOT REQUIRED THAT THE GOVERNMENT PROVE GUILT BEYOND

02:00PM 17   ALL POSSIBLE DOUBT.

02:00PM 18       A REASONABLE DOUBT IS A DOUBT BASED UPON REASON AND COMMON

02:00PM 19   SENSE AND IS NOT BASED PURELY ON SPECULATION.

02:00PM 20       IT MAY ARISE FROM A CAREFUL AND IMPARTIAL CONSIDERATION OF

02:00PM 21   ALL OF THE EVIDENCE OR FROM LACK OF EVIDENCE.

02:00PM 22       IF AFTER A CAREFUL AND IMPARTIAL CONSIDERATION OF ALL OF

02:01PM 23   THE EVIDENCE YOU ARE NOT CONVINCED BEYOND A REASONABLE DOUBT

02:01PM 24   THAT THE DEFENDANT IS GUILTY, IT IS YOUR DUTY TO FIND THE

02:01PM 25   DEFENDANT NOT GUILTY.

02:01PM  1          ON THE OTHER HAND, IF AFTER A CAREFUL AND IMPARTIAL

02:01PM  2     CONSIDERATION OF ALL OF THE EVIDENCE, YOU ARE CONVINCED BEYOND

02:01PM  3     A REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY, IT IS YOUR

02:01PM  4     DUTY TO FIND THE DEFENDANT GUILTY.

02:01PM  5          NOW, CAN YOU ALL APPLY THE LAW AS I GIVE IT TO YOU,

02:01PM  6     INCLUDING THE PRESUMPTION OF INNOCENCE AND THE GOVERNMENT'S

02:01PM  7     BURDEN OF PROOF BEYOND A REASONABLE DOUBT?

02:01PM  8          IS THERE ANYONE WHO CANNOT DO THIS OR WILL HAVE DIFFICULTY

02:01PM  9     DOING THAT?

02:01PM 10          I SEE NO HANDS.

02:01PM 11          IS THERE ANYONE WHO BELIEVES THAT BECAUSE MS. HOLMES IS

02:01PM 12     PRESENT IN COURT ACCUSED OF THESE CHARGES, SHE MUST BE GUILTY?

02:01PM 13     ANYONE HAVE THAT FEELING?

02:01PM 14          I SEE NO HANDS.

02:02PM 15          IS THERE ANYONE WHO CANNOT PRESUME MS. HOLMES INNOCENT OF

02:02PM 16     THE CHARGES?

02:02PM 17          I SEE NO HANDS.

02:02PM 18          YOU UNDERSTAND THEN THAT IF, AFTER HEARING ALL OF THE

02:02PM 19     EVIDENCE, YOU DETERMINE THAT THE GOVERNMENT HAS NOT MET THEIR

02:02PM 20     BURDEN OF PROVING THE CASE BEYOND A REASONABLE DOUBT, IT WOULD

02:02PM 21     BE YOUR DUTY TO FIND THE DEFENDANT NOT GUILTY.  THAT'S THE LAW,

02:02PM 22     AND I'LL INSTRUCT YOU ON THE LAW AT THE END OF THE CASE.

02:02PM 23          IS THERE ANYONE WHO DOES NOT UNDERSTAND THAT?

02:02PM 24          I SEE NO HANDS.

02:02PM 25          IF THAT WERE TO BE THE CASE, DO YOU THINK THAT YOU COULD

02:02PM   1    DO THAT, THAT IS, REACH THAT VERDICT AND STILL FACE FAMILY AND

02:02PM   2    FRIENDS, OR WOULD FEAR OF CRITICISM MAKE THAT DIFFICULT FOR

02:02PM   3    YOU?

02:02PM   4         THIS QUESTION CALLS ON IF YOU FIND AS A JUROR THAT THAT IS

02:02PM   5    WHAT YOU SHOULD DO, WOULD YOU DO THAT WITHOUT FEAR FROM FAMILY,

02:02PM   6    FRIENDS, OR OTHER CRITICISM?  ANYONE WHO FEELS THAT THEY COULD

02:02PM   7    NOT DO THIS BECAUSE THEY WOULD BE AFRAID OF CRITICISM?

02:03PM   8         I SEE NO HANDS.

02:03PM   9         YOU HAVE SEEN A VIDEO THAT HAS DISCUSSED THE TOPIC OF

02:03PM   10   UNCONSCIOUS BIAS, AND WE'VE TALKED ABOUT THAT.  WE SHOW THAT AS

02:03PM   11   AN AID TO PROSPECTIVE JURORS AS THEY CONSIDER JURY SERVICE AND

02:03PM   12   THE TASK AHEAD OF THEM.

02:03PM   13        IT'S MEANT AS AN EDUCATIONAL TOOL TO INFORM REGARDING

02:03PM   14   RESEARCH AND STUDIES ON ISSUES OF BIAS AND UNCONSCIOUS BIAS.  I

02:03PM   15   HOPE YOU FOUND THE VIDEO INFORMATIVE AND HELPFUL.

02:03PM   16        IN OUR NATION AND STATE WE HAVE CITIZENS, RESIDENTS,

02:03PM   17   NONRESIDENTS, NONCITIZENS FROM DIFFERENT RACES, ETHIC AND

02:03PM   18   CULTURAL BACKGROUNDS.

02:03PM   19        IN THE JURISDICTION OF THIS COURT, WE ENJOY A RICH

02:03PM   20   DIVERSITY OF INDIVIDUALS AND CULTURES AND UNDER THE LAW ALL

02:03PM   21   PEOPLE WHO APPEAR IN COURT, REGARDLESS OF RACE, RELIGION,

02:03PM   22   ETHNIC HERITAGE, GENDER, AGE, OR SEXUAL ORIENTATION ARE

02:03PM   23   ENTITLED TO DUE PROCESS OF LAW AND WE GUARANTEE EACH PERSON THE

02:03PM   24   RIGHT TO A FAIR AND IMPARTIAL TRIAL.

02:04PM   25        WE ARE TO JUDGE EACH INDIVIDUAL AS WE WOULD WANT TO BE

02:04PM  1        JUDGED FAIRLY AND IMPARTIALLY.

02:04PM  2            NOW, THROUGHOUT THE COURSE OF THE TRIAL IT MAY APPEAR THAT

02:04PM  3        ONE OR MORE OF THE PARTIES OR ATTORNEYS OR WITNESSES COME FROM

02:04PM  4        A NATIONAL, RACIAL OR RELIGIOUS GROUP OR MAY HAVE A DIFFERENT

02:04PM  5        LIFESTYLE FROM YOUR OWN.

02:04PM  6            WOULD THIS IN ANY WAY AFFECT YOUR JUDGMENT OR THE WEIGHT

02:04PM  7        AND CREDIBILITY YOU WOULD GIVE TO THE EVIDENCE IN THIS CASE?

02:04PM  8            ANYONE WHO FEELS THAT?

02:04PM  9            I SEE NO HANDS.

02:04PM  10           TO REACH A VERDICT, THE JURY MUST BE UNANIMOUS.  DO ALL OF

02:04PM  11       YOU ACCEPT THE REQUIREMENT THAT THE JURY VERDICT BE UNANIMOUS?

02:04PM  12       ANYONE WHO PARTS COMPANY WITH THAT?

02:04PM  13           I SEE NO HANDS.

02:04PM  14           DOES ANYONE FEEL THAT BECAUSE OF PHILOSOPHICAL, MORALE OR

02:04PM  15       RELIGIOUS REASONS THAT THEY CANNOT SIT AS A JUROR IN A CRIMINAL

02:04PM  16       CASE OR THAT WOULD CAUSE DISCOMFORT OR INABILITY TO REACH A

02:04PM  17       VERDICT IN THIS CASE?

02:04PM  18           I SEE NO HANDS.

02:05PM  19           AS A JUROR, YOU'RE NOT TO CONSIDER OR SPECULATE ON THE

02:05PM  20       QUESTION OF PUNISHMENT.  THAT QUESTION IS SOLELY IN THE

02:05PM  21       PROVINCE OF THE COURT.

02:05PM  22           IS THERE ANYONE WHO DOES NOT UNDERSTAND THAT?

02:05PM  23           I SEE NO HANDS.

02:05PM  24           WILL YOU PERFORM YOUR DUTY TO FOLLOW THE LAW AND DECIDE

02:05PM  25       THE CASE WITHOUT REGARD TO THE POSSIBLE CONSEQUENCES?  IS THERE

02:05PM  1    ANYONE WHO CANNOT DO THAT?

02:05PM  2        I SEE NO HANDS.

02:05PM  3        IN OUR COURTS AN ACCUSED HAS THE RIGHT TO REMAIN SILENT

02:05PM  4    AND NOT TESTIFY.  A DEFENDANT MAY CHOOSE TO RELY ON THE STATE

02:05PM  5    OF THE EVIDENCE AT THE CONCLUSION OF THE GOVERNMENT'S CASE AND

02:05PM  6    PRESENT NO AFFIRMATIVE EVIDENCE.

02:05PM  7        IS THERE ANYONE WHO CANNOT ACCEPT THE DEFENDANT'S RIGHT

02:05PM  8    UNDER THE CONSTITUTION TO REMAIN SILENT AND THUS CHOOSE NOT TO

02:05PM  9    TESTIFY IN THE CASE?  ANYONE WHO HAS DIFFICULTY WITH THAT

02:05PM  10   CONCEPT?

02:06PM  11       I SEE NO HANDS.

02:06PM  12       IF MS. HOLMES RELIES ON HER RIGHT NOT TO TESTIFY, WOULD

02:06PM  13   ANYONE HOLD THAT AGAINST HER?

02:06PM  14       I SEE NO HANDS.

02:06PM  15       WOULD ANY OF YOU FEEL THAT SHE WOULD BE HIDING SOMETHING

02:06PM  16   IF SHE DID NOT TESTIFY IN THE CASE?

02:06PM  17       I SEE NO HANDS.

02:06PM  18       HAVE ANY OF -- HAVE YOU OR ANY OF YOUR FAMILY OR CLOSE

02:06PM  19   FRIENDS EVER WORKED FOR A COURT, PROSECUTION, OR A CRIMINAL

02:06PM  20   DEFENSE LAW OFFICE, INCLUDING GOVERNMENT OR PRIVATE PRACTICE?

02:06PM  21       ALL RIGHT.  MR. WITHERSPOON, WHY DON'T YOU COME UP.

02:06PM  22           PROSPECTIVE JUROR:  PRETTY MUCH EVERYBODY IN MY

02:06PM  23   FAMILY IS AN ATTORNEY.  MY GRANDFATHER, MY DAD, MY UNCLES.

02:06PM  24           THE COURT:  OKAY.

02:06PM  25           PROSPECTIVE JUROR:  MY DAD WAS AN ASSISTANT DISTRICT

02:06PM  1    ATTORNEY IN HOUSTON.

02:07PM  2                THE COURT:  OKAY.  I SEE.

02:07PM  3          AND DID THEY DISCUSS THEIR WORK WITH YOU?

02:07PM  4                PROSPECTIVE JUROR:  OH, NO.

02:07PM  5                THE COURT:  NO?

02:07PM  6                PROSPECTIVE JUROR:  NOT REALLY.

02:07PM  7                THE COURT:  OKAY.

02:07PM  8                PROSPECTIVE JUROR:  I MEAN, THE PERIPHERY.

02:07PM  9                THE COURT:  NOT IN DETAIL.

02:07PM  10               PROSPECTIVE JUROR:  HE TOOK HIS JOB SERIOUSLY I

02:07PM  11   GUESS.

02:07PM  12               THE COURT:  OKAY.  THANK YOU.

02:07PM  13               PROSPECTIVE JUROR:  YEAH.

02:07PM  14               THE COURT:  ALL RIGHT.  WHO ELSE WAS IT?

02:07PM  15   MR. TEJADA?

02:07PM  16               PROSPECTIVE JUROR:  YOUR HONOR, I'VE GOT A LOT OF

02:07PM  17   FRIENDS FROM LAW SCHOOL WHO WENT INTO CRIMINAL DEFENSE.  I HAD

02:07PM  18   A LOT OF FRIENDS WHO WANTED TO BE A PROSECUTOR.  I WANTED TO BE

02:07PM  19   A PUBLIC DEFENDER.

02:07PM  20        BUT I DON'T THINK ANY OF THEM DISCUSSED THEIR WORK THAT

02:07PM  21   MUCH WITH ME, BUT IT IS SOMETHING THAT I KNOW A LOT OF PEOPLE

02:07PM  22   WENT TO.

02:07PM  23               THE COURT:  WELL, YOU'RE A LAWYER, SO OF COURSE YOU

02:07PM  24   WENT TO LAW SCHOOL AND PEOPLE CHOSE DIFFERENT CAREER PATHS.

02:07PM  25        SO THANK YOU.  THANK YOU FOR THAT.

02:07PM 1          SOMEONE ELSE?  I THINK I SAW SOME HANDS.  YES, IN THE

02:07PM 2     FRONT ROW.  WHY DON'T YOU COME FORWARD?

02:08PM 3          IS THAT -- YOUR JUROR NUMBER?

02:08PM 4               PROSPECTIVE JUROR:  38.

02:08PM 5               THE COURT:  YES.

02:08PM 6               PROSPECTIVE JUROR:  MY WIFE, WHEN WE MOVED TO

02:08PM 7     MICHIGAN, WE GOT MARRIED THERE.  FOR A SHORT WHILE SHE DID WORK

02:08PM 8     FOR THE PROSECUTOR'S OFFICE IN THE BERRIEN COUNTY COURTHOUSE OF

02:08PM 9     SOUTHWESTERN MICHIGAN.

02:08PM 10               THE COURT:  ALL RIGHT.

02:08PM 11               PROSPECTIVE JUROR:  JUST OFF OF STUDIES AND SUCH.

02:08PM 12               THE COURT:  THANK YOU.  ANYONE ELSE?

02:08PM 13          MR. BURGE.

02:08PM 14               PROSPECTIVE JUROR:  YES.

02:08PM 15          I HAVE A COLLEAGUE/FRIEND WHEN HE LEFT OUR FIRM HE WENT TO

02:08PM 16     THE PROSECUTION OFFICE.

02:08PM 17               THE COURT:  OKAY.

02:08PM 18               PROSPECTIVE JUROR:  BUT WE DON'T DISCUSS WHAT HE'S

02:08PM 19     BEEN DOING.

02:08PM 20               THE COURT:  OKAY.  HOW LONG AGO WAS THAT, SIR?

02:08PM 21               PROSPECTIVE JUROR:  ABOUT SIX YEARS.

02:08PM 22               THE COURT:  OKAY.  THANK YOU.

02:08PM 23          I SEE A HAND.  IS THAT MS. NGUYEN?

02:08PM 24               PROSPECTIVE JUROR:  YES.

02:08PM 25               THE COURT:  71.

02:09PM 1                    PROSPECTIVE JUROR:  JUROR NUMBER 71.

02:09PM 2          MY NIECE IS A LAWYER PRIVATELY IN L.A.

02:09PM 3                    THE COURT:  OKAY.  DO YOU KNOW WHAT TYPE OF LAW SHE

02:09PM 4    PRACTICES?

02:09PM 5                    PROSPECTIVE JUROR:  AT LEAST IT WAS A LAWYER AT SOME

02:09PM 6    OFFICE, BUT THEN SHE MOVED TO BE A PRIVATE LAWYER FOR HER OWN I

02:09PM 7    THINK FOR FAMILY ISSUES.

02:09PM 8                    THE COURT:  OH, I SEE.  FAMILY LAW.  OKAY.  THANK

02:09PM 9    YOU.

02:09PM 10         YES, MR. NIZENKOFF, YES.

02:09PM 11                   PROSPECTIVE JUROR:  JUROR 64 AGAIN.

02:09PM 12         MY FATHER-IN-LAW MANY YEARS AGO WAS AN ATTORNEY AND I

02:09PM 13   THINK -- MY FATHER-IN-LAW WAS AN ATTORNEY AND SMALL CLAIMS

02:09PM 14   COURT JUDGE SEVERAL YEARS AGO, BUT IT WAS A LITTLE BEFORE I MET

02:10PM 15   HIM.

02:10PM 16         MY WIFE HAS A COUPLE OF FRIENDS WHO ARE ATTORNEYS, AND I

02:10PM 17   HAVE A COUPLE OF FRIENDS FROM COLLEGE WHO I AM NOT SUPER CLOSE

02:10PM 18   TO ANYMORE, BUT THEY ARE PATENT LAWYERS.

02:10PM 19                   THE COURT:  THERE'S NO CONNECTION TO THAT, THAT

02:10PM 20   THEY'RE PATENT LAWYERS AND YOU'RE NOT CLOSE TO THEM ANY LONGER?

02:10PM 21                   PROSPECTIVE JUROR:  NO.  JUST LOST TOUCH.

02:10PM 22         (LAUGHTER.)

02:10PM 23                   THE COURT:  THANK YOU.  NOT THAT I HAVE ANY VIEWS ON

02:10PM 24   THAT TOPIC.  I JUST WANT TO --

02:10PM 25         (LAUGHTER.)

02:10PM  1              THE COURT:  ANYONE ELSE?

02:10PM  2          I SEE NO HANDS.

02:10PM  3          HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN INVOLVED WITH OR

02:10PM  4      APPEARED AS A DEFENDANT, A VICTIM, OR A WITNESS IN ANY

02:10PM  5      INVESTIGATION BY A GOVERNMENTAL AGENCY?  THIS WOULD INCLUDE

02:10PM  6      POLICE DEPARTMENT, SHERIFF'S OFFICES, AND FEDERAL AGENCIES.

02:10PM  7          IF ANYONE WISHES TO SPEAK PRIVATELY ABOUT AN ANSWER TO

02:10PM  8      THIS QUESTION, WE CAN CERTAINLY DO THAT.

02:10PM  9          AND I'VE HEARD FROM -- MR. BURGE, YOU'VE TOLD US ABOUT

02:10PM 10      YOUR SITUATION AND WE'VE HEARD ABOUT THE OTHER SITUATION AND

02:10PM 11      FAMILY.

02:10PM 12          ANYTHING ELSE THAT ANYONE MIGHT BE INVOLVED IN?

02:11PM 13          I SEE NO HANDS.

02:11PM 14          ALL RIGHT.  WHAT I'M GOING TO DO NOW IS I THINK I WOULD

02:11PM 15      LIKE TO ALLOW COUNSEL SOME -- I HAVE TO CONFESS, AND I

02:11PM 16      APOLOGIZE, MY QUESTIONS HAVE GONE A LITTLE LONGER THAN I

02:11PM 17      THOUGHT AND I WAS GOING TO HAVE EACH OF YOU INTRODUCE

02:11PM 18      YOURSELVES, YOU HAVE THAT QUESTIONNAIRE.

02:11PM 19          BUT I THINK FOR TIME, I'D LIKE TO HAVE THE LAWYERS BEGIN

02:11PM 20      THEIR QUESTIONS IF THEY HAVE ANY NOW FOR YOU.

02:11PM 21          SO I'M GOING TO -- WE'RE GOING TO DISPENSE WITH THE

02:11PM 22      INTRODUCTION, COUNSEL.  I APOLOGIZE FOR THAT, BUT I DO WANT TO

02:11PM 23      GET TO YOUR QUESTIONS.

02:11PM 24          SO, LADIES AND GENTLEMEN, THE LAWYERS WILL HAVE AN

02:11PM 25      OPPORTUNITY TO ASK SOME QUESTIONS NOW, AND WE'LL START WITH THE

02:11PM   1    GOVERNMENT.

02:11PM   2        MR. SCHENK?

02:11PM   3            MR. SCHENK:  THANK YOU.

02:11PM   4        GOOD AFTERNOON.  YOU HEARD MY NAME IS JEFF SCHENK, AND I

02:12PM   5    REPRESENT THE UNITED STATES IN THIS PROSECUTION.

02:12PM   6        I ONLY HAVE A COUPLE OF QUESTIONS ON A FEW TOPICS THAT I'D

02:12PM   7    LIKE TO FOLLOW UP ON.

02:12PM   8        THE FIRST IS THE JUDGE ASKED IF ANYBODY HAD PRECONCEIVED

02:12PM   9    VIEWS OR OPINIONS ON LAW ENFORCEMENT AND IF A LAW ENFORCEMENT

02:12PM  10    WITNESS TESTIFIED, WOULD THEY VIEW THAT TESTIMONY EITHER MORE

02:12PM  11    FAVORABLY OR LESS FAVORABLY BASED ON THOSE PRIOR EXPERIENCES.

02:12PM  12        I WANT TO EXPAND THAT TO THE MEDICAL PROFESSION, TO

02:12PM  13    MEDICAL DOCTORS.  ANYONE HAVE PRIOR EXPERIENCE WITH PHYSICIANS

02:12PM  14    OR FOLKS IN THE MEDICAL INDUSTRY SO THAT IF YOU HEARD IN THIS

02:12PM  15    TRIAL FROM DOCTORS, YOU MIGHT GIVE THAT TESTIMONY MORE OR LESS

02:12PM  16    WEIGHT PURELY BASED ON THEIR PROFESSION?

02:12PM  17        AND I NOTE THAT IN SOME QUESTIONNAIRES, INDIVIDUALS SAID

02:12PM  18    THAT THEY HAD DISPUTES OVER BILLS BEFORE.

02:12PM  19        I THINK, MR. RISHI, IF YOU'LL ALLOW ME TO PICK ON YOU, I

02:12PM  20    THINK YOU MENTIONED THAT.  I WONDER IF DISPUTES WITH BILLS OR

02:13PM  21    WITH MEDICAL INSURANCE COMPANIES OR SOMETHING LIKE THAT WOULD

02:13PM  22    LEAD YOU TO HAVE SOME FEELINGS ABOUT MEDICAL PROFESSIONAL 'S

02:13PM  23    TESTIMONY IN THIS TRIAL?

02:13PM  24        ANY HANDS?

02:13PM  25        YES, SIR.

02:13PM   1              THE COURT:  THIS IS MR. CHUANG, I BELIEVE, YES.

02:13PM   2              PROSPECTIVE JUROR:  I WORK AS A REGISTERED NURSE IN

02:13PM   3      THE HOSPITAL.

02:13PM   4              THE COURT:  JUST A SECOND, MR. CHUANG.  WE'LL GET

02:13PM   5      YOU THE MICROPHONE.  THANK YOU FOR YOUR PATIENCE.  WE HAVE

02:13PM   6      MASKS ON AND THAT BECOMES DIFFICULT.

02:13PM   7          I'M GOING TO DISCLOSE SOMETHING THAT IS COMMON KNOWLEDGE

02:13PM   8      HERE IN THE COURTHOUSE, WE HAVE THE BEST COURT REPORTER IN THE

02:13PM   9      COURTHOUSE HERE WORKING FOR US.  BUT EVEN WITH ALL OF HER

02:13PM  10      SKILLS, IT'S DIFFICULT TO HEAR WITH THE MASKS ON, SO WE'LL HAND

02:13PM  11      YOU THE MICROPHONE TO ASSIST, THANK YOU.

02:13PM  12              PROSPECTIVE JUROR:  I WORK AS A REGISTERED NURSE IN

02:13PM  13      THE HOSPITAL, SO I INTERACT WITH ALL KINDS OF MEDICAL

02:13PM  14      PROFESSIONS.  SO I MIGHT GIVE MORE WEIGHT, YOU KNOW, IF IT'S

02:14PM  15      LIKE A DOCTOR OR A HEALTH CARE PROFESSIONAL GIVING TESTIMONIES.

02:14PM  16              MR. SCHENK:  SO THERE ARE SOME INSTANCES WHEN A

02:14PM  17      MEDICAL PROFESSIONAL MAY TESTIFY IN THE TRIAL AND THE COURT

02:14PM  18      WOULD RECEIVE THEIR TESTIMONY AS AN EXPERT.  SO THE COURT WOULD

02:14PM  19      TELL YOU THAT BECAUSE OF THEIR TRAINING, YOU'RE ALLOWED TO HEAR

02:14PM  20      THEIR OPINION ON CERTAIN TOPICS BECAUSE OF THAT EXPERTISE.

02:14PM  21          IF YOU PUT THAT ASIDE, IF THERE ARE WITNESSES THAT

02:14PM  22      TESTIFY, BUT WITHOUT BECOMING AN EXPERT, ARE JUST MEDICAL

02:14PM  23      PROFESSIONALS, WOULD YOU ALSO GIVE THOSE INDIVIDUALS MORE

02:14PM  24      WEIGHT OR WOULD YOU BE ABLE TO WEIGH THEIR TESTIMONY THE SAME

02:14PM  25      AS ANY OTHER WITNESS?

02:14PM  1                    PROSPECTIVE JUROR:  IF THEY'RE -- YOU'RE SAYING THAT

02:14PM  2       THEY'RE NOT THE EXPERTS?

02:14PM  3                    MR. SCHENK:  CORRECT.  IF THEY OBSERVED THINGS THAT

02:14PM  4       THEY'RE COMING TO TELL YOU, "I OBSERVED THE FOLLOWING, I SAW

02:14PM  5       THE FOLLOWING."

02:14PM  6                    PROSPECTIVE JUROR:  NO.  ONLY IF THEY'RE BEING

02:14PM  7       CALLED AS THE EXPERTS, THEN YEAH.

02:14PM  8                    MR. SCHENK:  THANK YOU.

02:14PM  9            ANY OTHER HANDS TO THAT QUESTION, MEDICAL PROFESSIONALS,

02:15PM 10       EITHER MORE OR LESS WEIGHT IN YOUR MIND?

02:15PM 11            THE JUDGE ALSO TALKED TO YOU A LITTLE BIT ABOUT YOUR

02:15PM 12       OBLIGATION TO AVOID THE MEDIA, ESPECIALLY THE MEDIA ABOUT THIS

02:15PM 13       CASE DURING THE TRIAL.  I APPRECIATE THAT THAT IS GOING TO BE A

02:15PM 14       CHALLENGE.  WE HAVE ALREADY HEARD FROM INDIVIDUALS WHO HAVE

02:15PM 15       SAID AFTER READING THE QUESTIONNAIRE, THEY HAVE APPRECIATED

02:15PM 16       THAT THEY WERE NOT SUPPOSED TO LEARN MORE, RESEARCH,

02:15PM 17       INVESTIGATE THIS CASE.

02:15PM 18            BUT IT APPEARED ON THEIR PHONE.

02:15PM 19            AND I'M JUST WONDERING IF ANYBODY HAS ANY CONCERNS WITH,

02:15PM 20       NOW HAVING MORE TIME TO REFLECT ON THAT, WHETHER THAT'S GOING

02:15PM 21       TO BE AN ISSUE FOR THEM.

02:15PM 22            I WILL TELL YOU IT'S A CONCERN OF MINE.  IT'S A CONCERN

02:15PM 23       THAT THE CASE HAS A LOT OF PUBLICITY, AND WE DON'T CONTROL SOME

02:15PM 24       OF THE MEDIA THAT GETS PRESENTED TO US THESE DAYS.  THE JUDGE

02:15PM 25       SUGGESTED TURNING OFF ALERTS ON YOUR PHONE AS ONE METHOD.

02:15PM 1     BUT IT IS IMPORTANT FOR BOTH SIDES TO HAVE A FAIR TRIAL.

02:16PM 2  ONE OF THE WAYS THAT WE MAKE SURE THAT THE FAIR TRIAL OCCURS IS

02:16PM 3  THAT EVERYBODY DECIDES THE CASE ON THE EVIDENCE PRESENTED IN

02:16PM 4  THIS COURTROOM, THAT THE JURY IS ONLY EVALUATING FACTS THAT ARE

02:16PM 5  PRESENTED TO IT THROUGH THE JUDGE AS THE GATEKEEPER TO ALLOW IN

02:16PM 6  APPROPRIATE EVIDENCES.

02:16PM 7     AND IF ALERTS POP UP ON YOUR PHONE AND YOU'RE TEMPTED TO

02:16PM 8  FIGURE OUT WHAT HAPPENED IN COURT YESTERDAY THROUGH THE EYES OF

02:16PM 9  A REPORTER, THAT BECOMES A PROBLEM FOR BOTH SIDES.

02:16PM 10     I WANT TO ASK AGAIN, AND I KNOW THE JUDGE HAS ALREADY

02:16PM 11  COVERED THIS WITH YOU, BUT, IS THERE ANYBODY WHO HAS A CONCERN

02:16PM 12  WITH THEIR ABILITY TO TURN AWAY FROM THAT TYPE OF MEDIA, TO

02:16PM 13  TURN OFF THE ALERTS, TO TURN OFF THE RADIO OR THE TELEVISION

02:16PM 14  WHEN THIS TYPE OF STORY COMES ON?

02:16PM 15     NO HANDS.  OKAY.

02:16PM 16     THE LAST TOPIC I WANTED TO TALK TO YOU ABOUT WAS TO FOLLOW

02:16PM 17  UP ON THE JUDGE'S QUESTION REGARDING INTERPERSONAL ABUSE OR

02:16PM 18  DOMESTIC VIOLENCE.  I DON'T WANT TO CALL ON INDIVIDUAL ONES,

02:17PM 19  INDIVIDUALLY THE PEOPLE WHO SPOKE, BUT I WAS JUST WONDERING

02:17PM 20  WHETHER ANYONE WHO DID SPEAK WILL SAY THAT THEIR PRIOR

02:17PM 21  EXPERIENCE WILL AFFECT THEIR ABILITY TO HEAR THIS CASE FAIRLY.

02:17PM 22     IF THEY HEAR EVIDENCE ABOUT THAT TOPIC, IS YOUR PRIOR

02:17PM 23  EXPERIENCE GOING TO AFFECT YOUR ABILITY TO EVALUATE THE

02:17PM 24  EVIDENCE THAT YOU HEAR IN THIS CASE?

02:17PM 25     AND I APPRECIATE IT'S DIFFICULT BECAUSE YOU DON'T KNOW

02:17PM   1      EXACTLY WHAT THE EVIDENCE IS GOING TO BE IN THIS CASE, SO I

02:17PM   2      APOLOGIZE FOR ASKING A QUESTION WITHOUT SUFFICIENT FACTS TO

02:17PM   3      ANSWER IT.

02:17PM   4           BUT TO THE BEST OF YOUR ABILITY, IS THERE ANYONE WITH

02:17PM   5      PRIOR EXPERIENCE THAT CAUSES YOU SOME CONCERN, OR IF THIS

02:17PM   6      TESTIMONY COMES IN OR IF THAT TESTIMONY COMES IN, IS IT GOING

02:17PM   7      TO TRIGGER FEELINGS THAT YOU'VE HAD, NOT NECESSARILY THAT

02:17PM   8      YOU'RE GOING TO EVALUATE THE TESTIMONY OR THE EVIDENCE

02:17PM   9      DIFFERENTLY, BUT THAT THIS JUST MIGHT NOT BE THE RIGHT CASE FOR

02:17PM  10      YOU BECAUSE YOU PREFER NOT TO PUT YOURSELF IN THAT ENVIRONMENT

02:17PM  11      BECAUSE YOU DON'T WANT TO HEAR THAT KIND OF TESTIMONY OR

02:17PM  12      EVIDENCE IF IT COMES IN.

02:18PM  13           I'M ANXIOUS TO HEAR IF SOMEBODY HAS PRIOR EXPERIENCES THAT

02:18PM  14      SUGGESTS THAT THIS MIGHT TRIGGER THEM IN A WAY THAT THEY WOULD

02:18PM  15      LIKE TO AVOID.

02:18PM  16           ANY HANDS?

02:18PM  17               THE COURT:  WHY DON'T YOU COME UP TO THE LECTERN.

02:18PM  18           IS THIS MR. LEE?

02:18PM  19           I'M SORRY.  DID YOU WANT TO SPEAK PRIVATELY ABOUT THIS,

02:18PM  20      MR. LEE?

02:18PM  21           ALL RIGHT.  I THINK WE'RE GOING TO DO THAT AT AN

02:18PM  22      APPROPRIATE TIME HERE.  SO THANK YOU FOR CALLING THAT TO OUR

02:18PM  23      ATTENTION AS WELL.

02:18PM  24               MR. SCHENK:  THANK YOU, YOUR HONOR.

02:18PM  25           NO FURTHER QUESTIONS.

02:18PM   1          THE COURT:  ALL RIGHT.  THANK YOU.

02:18PM   2          MR. DOWNEY, DO YOU HAVE QUESTIONS?

02:18PM   3          MR. DOWNEY:  YES, YOUR HONOR.

02:18PM   4     GOOD AFTERNOON, LADIES AND GENTLEMEN.  THANK YOU FOR YOUR

02:18PM   5  PATIENCE TODAY.

02:18PM   6     IT'S CLEAR TO ME FROM THE DISCUSSION THAT ALL OF YOU HAVE

02:18PM   7  HAD WITH JUDGE DAVILA AND MR. SCHENK THAT YOU'VE BEEN VERY

02:18PM   8  HONEST IN RESPONSE TO BOTH THE QUESTIONNAIRES AND TO

02:18PM   9  JUDGE DAVILA'S QUESTIONS DURING THE COURSE OF THE DAY.  THAT'S

02:19PM  10  WHAT THIS PROCESS IS ABOUT.

02:19PM  11     AS JUDGE DAVILA SAID, THERE ARE SOME CASES WHERE A

02:19PM  12  PARTICULAR PERSON MAY NOT BE THE IDEAL JUROR.

02:19PM  13     SO I THANK YOU FOR YOUR HONESTY.

02:19PM  14     I'M GOING TO ASK SOME OF YOU QUESTIONS INDIVIDUALLY AND

02:19PM  15  I'M GOING TO ASK THE PANEL QUESTIONS GENERALLY.

02:19PM  16     LET ME START THERE WITH A QUESTION THAT REALLY RELATES TO

02:19PM  17  AN INSTRUCTION THAT YOU WILL RECEIVE DURING THE COURSE OF THIS

02:19PM  18  CASE, WHICH WILL BE TO THE EFFECT THAT YOU'RE REQUIRED TO

02:19PM  19  CONSIDER ALL OF THE EVIDENCE AND SUSPEND JUDGMENT UNTIL YOU

02:19PM  20  HAVE HEARD ALL OF THE EVIDENCE AND BEGUN TO DISCUSS IT WITH

02:19PM  21  YOUR FELLOW JURORS.

02:19PM  22     IS THERE ANYONE HERE WHO, WHO FINDS IT DIFFICULT TO WAIT

02:19PM  23  TO MAKE A DECISION?  ANYONE HERE FOR WHOM THAT MIGHT BE A

02:19PM  24  DIFFICULTY?

02:19PM  25     I DON'T SEE ANY HANDS RAISING IN RESPONSE TO THAT.

```
02:19PM   1        IS THERE ANYONE WHO PREFERS TO WAIT UNTIL THEY HEAR ALL OF
02:20PM   2    THE INFORMATION BEFORE MAKING ANY DECISION, A BASIC DECISION IN
02:20PM   3    LIFE, WHETHER THEY'LL BUY A CAR, WHETHER THEY'LL BUY A HOME,
02:20PM   4    WHERE THEY MIGHT SEND THEIR CHILD TO SCHOOL?  ANYBODY HERE WHO
02:20PM   5    PREFERS TO HAVE ALL OF THE INFORMATION?
02:20PM   6        ANYONE HERE WHO FEELS THAT THEY'RE IMPATIENT AND THEY
02:20PM   7    DON'T WANT TO WAIT FOR ALL OF THE INFORMATION?
02:20PM   8        I SEE NO HANDS IN RESPONSE TO THAT.
02:20PM   9        OKAY.  THANK YOU, LADIES AND GENTLEMEN.
02:20PM  10        MAY I START WITH YOU, SIR, WHO RAISED YOUR HAND IN
02:20PM  11    RESPONSE TO THAT QUESTION.
02:20PM  12        WHAT IS YOUR JUROR NUMBER?
02:20PM  13            PROSPECTIVE JUROR:  64.
02:20PM  14            THE COURT:  MR. NIZENKOFF.
02:20PM  15            MR. DOWNEY:  YEAH.  CAN YOU TELL ME, IN CONNECTION
02:20PM  16    WITH YOUR DECISION MAKING PROCESS, ARE YOU CONFIDENT THAT
02:20PM  17    YOU'LL BE ABLE TO WAIT AND HEAR ALL OF THE EVIDENCE BEFORE YOU
02:20PM  18    MAKE A DECISION?
02:20PM  19            PROSPECTIVE JUROR:  YES, MOST DEFINITELY.
02:20PM  20            MR. DOWNEY:  OKAY.
02:20PM  21        IS THERE ANYBODY HERE WHO FEELS THAT THEY WON'T BE ABLE TO
02:20PM  22    DO THAT?
02:21PM  23        OKAY.  THANK YOU.
02:21PM  24        I'D LIKE TO ASK SOME OF YOU QUESTIONS INDIVIDUALLY, AND
02:21PM  25    I'LL MENTION YOUR JUROR NUMBER.
```

02:21PM  1           I DON'T HAVE QUESTIONS FOR EACH OF YOU.  THAT DOESN'T

02:21PM  2      REFLECT ONE WAY OR THE OTHER ON ANY PARTICULAR JUROR.

02:21PM  3           LET ME ASK JUROR NUMBER 1, WHO I DON'T THINK WE'VE HEARD

02:21PM  4      FROM THIS MORNING.

02:21PM  5           IS IT MR. SOMADUNDARAM?  SIR, YOU FILLED OUT A

02:21PM  6      QUESTIONNAIRE A FEW WEEKS AGO, AND I THINK IN THAT

02:21PM  7      QUESTIONNAIRE YOU INDICATED THAT YOU HAD HAD SOME EXPOSURE TO

02:21PM  8      MEDIA ABOUT THIS CASE.

02:21PM  9           CAN YOU TELL US WHAT THAT EXPOSURE HAS BEEN?

02:21PM  10               PROSPECTIVE JUROR:  JUST --

02:21PM  11               THE COURT:  WE'RE GOING TO GIVE YOU A MICROPHONE,

02:21PM  12      SIR.  I'M SORRY.

02:21PM  13               PROSPECTIVE JUROR:  JUST THE TYPICAL CONSUMPTION OF

02:21PM  14      MEDIA, "ECONOMIST," "BLOOMBERG," "BUSINESS WEEK," THE TYPICAL

02:22PM  15      "60 MINUTES" SHOW, ALL OF THE CONTENT THAT WAS THERE THAT CAME

02:22PM  16      OUT ABOUT THIS.

02:22PM  17               MR. DOWNEY:  SO YOU FEEL THAT THE CONTENT THAT HAS

02:22PM  18      BEEN IN THE PUBLIC ABOUT THIS YOU HAVE READ.  IS THAT BECAUSE

02:22PM  19      YOU HAVE A PARTICULAR INTEREST IN THE CASE?

02:22PM  20               PROSPECTIVE JUROR:  JUST FOLLOWING THE NEWS IN

02:22PM  21      GENERAL AND CURRENT AFFAIRS.

02:22PM  22               MR. DOWNEY:  AND I UNDERSTAND THAT YOUR WIFE IS A

02:22PM  23      CARDIOLOGIST; IS THAT RIGHT?

02:22PM  24               PROSPECTIVE JUROR:  THAT'S RIGHT.

02:22PM  25               MR. DOWNEY:  IS SHE INTERESTED IN THE SUBJECT MATTER

02:22PM 1    OF THIS CASE?

02:22PM 2              PROSPECTIVE JUROR:  SHE'S A CARDIOLOGIST AT STANFORD

02:22PM 3    SO SHE HAS EXPOSURE TO IT, BUT NOT PARTICULARLY RELEVANT TO

02:22PM 4    THIS CASE.

02:22PM 5              MR. DOWNEY:  AS I UNDERSTAND IT, YOU WERE FOLLOWING

02:22PM 6    THE CASE AT LEAST AS IT WAS DEVELOPING IN THE MEDIA; IS THAT

02:22PM 7    RIGHT?

02:22PM 8              PROSPECTIVE JUROR:  YES.

02:22PM 9              MR. DOWNEY:  AND BASED ON YOUR VIEW OF THE MEDIA AS

02:22PM 10   THE STORY WAS DEVELOPING, DID YOU HAVE A VIEW OR OPINION ABOUT

02:22PM 11   MS. HOLMES?

02:22PM 12             PROSPECTIVE JUROR:  NOT IN PARTICULAR BECAUSE

02:22PM 13   THERE'S ALWAYS TWO SIDES TO A STORY AND YOU ONLY HEAR SOMETHING

02:23PM 14   IN A SLANTED CONTEXT DEPENDING ON WHO IS WRITING IT, SO YOU

02:23PM 15   TEND TO WAIT IN THE CONTEXT OF WHAT YOU'RE READING.  IT DIDN'T

02:23PM 16   INFORM ME ONE WAY OR ANOTHER OVER A LONG PERIOD OF TIME.

02:23PM 17             MR. DOWNEY:  WHEN YOU FILLED OUT THE QUESTIONNAIRE,

02:23PM 18   YOU ANSWERED ONE OF THE QUESTIONS WHICH ASKED YOU WHETHER OR

02:23PM 19   NOT YOU HAD A QUESTION IN YOUR MIND AS TO WHETHER YOU COULD BE

02:23PM 20   FAIR, OBJECTIVE, AND IMPARTIAL.

02:23PM 21       AND YOU RESPONDED THAT YOU HAD FOLLOWED THE CASE

02:23PM 22   EXTENSIVELY BECAUSE OF YOUR CURIOSITY AND THAT THAT RAISED A

02:23PM 23   QUESTION IN YOUR MIND.

02:23PM 24       I THINK WHEN YOU WROTE THAT, THAT WAS AN ACCURATE ANSWER.

02:23PM 25             PROSPECTIVE JUROR:  UH-HUH.

02:23PM 1    MR. DOWNEY:  CAN YOU TELL ME WHAT IT WAS THAT YOU

02:23PM 2    HAD READ OR HEARD THAT MADE YOU QUESTION A LITTLE BIT YOUR

02:23PM 3    ABILITY PERHAPS TO BE FAIR AND IMPARTIAL?

02:23PM 4    PROSPECTIVE JUROR:  IT'S THE -- IN THE CONTEXT OF

02:24PM 5    SILICON VALLEY AND HOW FIRMS BUILD UP AND, LIKE, MASSIVE

02:24PM 6    COMPANIES AND THEN THEY BURN OUT, IT'S JUST -- I'M JUST

02:24PM 7    SKEPTICAL ABOUT THE PROCESS OF HOW IT HAPPENED AND WHY CERTAIN

02:24PM 8    CASES COME TO COURT AND WHY A LOT OF OTHERS WITH A SIMILAR KIND

02:24PM 9    OF SITUATION EXISTS IT DOESN'T QUITE HAPPEN THAT WAY.

02:24PM 10    MR. DOWNEY:  LET ME SEE IF I UNDERSTAND WHAT YOU'RE

02:24PM 11   SAYING.  ARE YOU SKEPTICAL ABOUT THE COMPANIES WHO HAVE

02:24PM 12   INITIALLY THAT KIND OF SUCCESS?  IS THAT WHAT YOU'RE SAYING?

02:24PM 13    PROSPECTIVE JUROR:  YES.

02:24PM 14    MR. DOWNEY:  AND DO YOU ASSOCIATE THAT VIEW

02:24PM 15   SPECIFICALLY WITH THERANOS AS WELL?

02:24PM 16    PROSPECTIVE JUROR:  BASED ON THE READING AT THE

02:24PM 17   TIME, IT SOUNDED THAT WAY.

02:24PM 18    MR. DOWNEY:  OKAY.  AND DO YOU THINK THAT THAT MIGHT

02:24PM 19   BE A VIEW THAT YOU WOULD BE CARRYING INTO THIS CASE IF YOU

02:24PM 20   BEGAN TO SIT AS A JUROR IN THE CASE?

02:24PM 21    PROSPECTIVE JUROR:  I HOPE NOT, AND I WOULD NOT WANT

02:24PM 22   MYSELF TO BE THAT WAY, BUT, YES.

02:24PM 23    MR. DOWNEY:  WELL, CAN YOU ASSURE US THAT THAT IS

02:24PM 24   SOMETHING THAT YOU WOULD NOT CARRY?

02:24PM 25    PROSPECTIVE JUROR:  YES.

02:25PM  1          MR. DOWNEY:  AND WOULD THIS BE A SITUATION WHERE YOU

02:25PM  2   WOULD BE IN A POSITION NOT TO DISCUSS YOUR SERVICE ON THE JURY

02:25PM  3   WITH YOUR WIFE?

02:25PM  4          PROSPECTIVE JUROR:  THAT'S CORRECT.

02:25PM  5          MR. DOWNEY:  AT ANY TIME DURING YOUR READING OF

02:25PM  6   BOOKS AND NEWSPAPER ARTICLES OR WATCHING DOCUMENTARIES, HAVE

02:25PM  7   YOU EVER HAD ANY OPINION ABOUT MS. HOLMES OTHER THAN THE ONE

02:25PM  8   YOU MENTIONED ABOUT BEING SKEPTICAL OF THE COMPANY?

02:25PM  9          PROSPECTIVE JUROR:  NOT IN PARTICULAR.

02:25PM 10          MR. DOWNEY:  IS THERE ANY VIEW THAT YOU HAVE ABOUT

02:25PM 11   ANY OTHER PERSON AT THERANOS AS A RESULT OF ALL OF THE

02:25PM 12   LITERATURE THAT YOU'VE READ IN THE MEDIA AND SO FORTH?

02:25PM 13          PROSPECTIVE JUROR:  NO.

02:25PM 14          MR. DOWNEY:  YOU NOTED IN THE QUESTIONNAIRE THAT YOU

02:25PM 15   HAVE A COUPLE OF VACATIONS.  IS THAT SOMETHING THAT YOU WOULD

02:25PM 16   BE ABLE TO ADJUST?  THEY WOULD OCCUR IN THE FIRST WEEK OF

02:25PM 17   SEPTEMBER OR THE SECOND WEEK?

02:25PM 18          PROSPECTIVE JUROR:  SECOND WEEK.

02:25PM 19          MR. DOWNEY:  IS THAT STILL SCHEDULED?

02:26PM 20          PROSPECTIVE JUROR:  I WOULD WAIT AND FIGURE OUT

02:26PM 21   TODAY IF I NEED TO CANCEL OR NOT.

02:26PM 22          MR. DOWNEY:  BUT YOU WOULD CANCEL BOTH OF THOSE

02:26PM 23   VACATIONS?

02:26PM 24          PROSPECTIVE JUROR:  I WOULD HAVE TO.

02:26PM 25          MR. DOWNEY:  WOULD HAVING TO DO ANY OF THAT IMPACT

02:26PM   1      ANY ABILITY TO FOCUS HERE OR ANY ATTITUDE YOU WOULD HAVE

02:26PM   2      TOWARDS THE CASE?

02:26PM   3                  PROSPECTIVE JUROR:  MY WIFE HAS BEEN ON CALL AND SHE

02:26PM   4      HAS NOT HAD A BREAK IN LITERALLY 16 MONTHS AT THIS POINT OR SO

02:26PM   5      BECAUSE OF A LOT OF THE COVID CASES AND SO THIS WAS HER FIRST

02:26PM   6      BREAK, AND SO WE WERE WORKING ON GETTING AWAY, AND NOW WE WOULD

02:26PM   7      NOT BE ABLE TO.

02:26PM   8                  MR. DOWNEY:  SHE'S A PHYSICIAN IN THE HOSPITAL; IS

02:26PM   9      THAT RIGHT?

02:26PM  10                  PROSPECTIVE JUROR:  YES.

02:26PM  11                  MR. DOWNEY:  IN FACT, SHE'S ON CALL CERTAIN NIGHTS

02:26PM  12      AND SO FORTH?

02:26PM  13                  PROSPECTIVE JUROR:  YEAH, BECAUSE OF THE COVID

02:26PM  14      PROCESS.

02:26PM  15                  MR. DOWNEY:  OKAY.  WOULD YOU BE ASKING THE COURT TO

02:26PM  16      BE EXCUSED ON THAT BASIS?

02:26PM  17                  PROSPECTIVE JUROR:  IF IT'S POSSIBLE, YES.

02:26PM  18                  MR. DOWNEY:  OKAY.  IS THERE AN OPINION ABOUT

02:26PM  19      THERANOS OR THE CASE THAT YOU'VE EXPRESSED TO ANYONE OTHER THAN

02:26PM  20      YOUR WIFE?  HAVE YOU EVER HAD CONVERSATIONS WITH PEOPLE ABOUT

02:26PM  21      THERANOS OR ABOUT MS. HOLMES?

02:26PM  22                  PROSPECTIVE JUROR:  IN CASUAL CONVERSATIONS ABOUT

02:27PM  23      INVESTMENTS AND RAPID GROWTH COMPANIES WITH FRIENDS, BUT

02:27PM  24      NOTHING IN THE RECENT PAST.

02:27PM  25                  MR. DOWNEY:  AND WHAT OPINIONS HAVE YOU EXPRESSED IN

02:27PM 1      THOSE CONVERSATIONS?

02:27PM 2                  PROSPECTIVE JUROR:  JUST HOW DRAMATIC SOME COMPANIES

02:27PM 3      GROW AND HOW BIG VALUATIONS GET, AND THEN HOW SUDDENLY THEY

02:27PM 4      DON'T EXIST ANYMORE.

02:27PM 5                  MR. DOWNEY:  OKAY.  AND YOU'VE EXPRESSED SOME VIEWS

02:27PM 6      AS TO -- YOU'VE QUESTIONED WHY THAT HAPPENS; IS THAT RIGHT?

02:27PM 7                  PROSPECTIVE JUROR:  YES.

02:27PM 8                  MR. DOWNEY:  AND SO YOU HAVE A NEGATIVE VIEW OF

02:27PM 9      THOSE COMPANIES?

02:27PM 10                 PROSPECTIVE JUROR:  JUST THE REALITY OF WHAT IT IS.

02:27PM 11                 MR. DOWNEY:  I'M SORRY, SIR?

02:27PM 12                 PROSPECTIVE JUROR:  JUST THE REALITY OF HOW IT PLAYS

02:27PM 13     OUT.

02:27PM 14                 MR. DOWNEY:  EXPLAIN THAT TO US.

02:27PM 15                 PROSPECTIVE JUROR:  A LOT OF EFFORT GOES INTO MAKING

02:27PM 16     A COMPANY SUCCESSFUL, AND WHEN THEY HAVE THE SUDDEN RISE AND

02:27PM 17     IT -- IF IT'S SUBSTANTIATED IN TERMS OF WHAT IT HAPPENS.  IF IT

02:27PM 18     ISN'T, THAT'S GREAT, BUT IN A LOT OF CASES IF IT ISN'T, IT JUST

02:27PM 19     HURTS A LOT OF PEOPLE IN THE PROCESS.

02:27PM 20                 MR. DOWNEY:  OKAY.  THANK YOU, SIR.

02:28PM 21          ANYTHING ELSE THAT YOU THINK WOULD AFFECT YOUR JURY

02:28PM 22     SERVICE HERE?

02:28PM 23                 PROSPECTIVE JUROR:  NO.

02:28PM 24                 MR. DOWNEY:  OKAY.  THANK YOU, SIR.

02:28PM 25          I'D LIKE TO TALK TO MS. GRAY FOR A MOMENT IN CONNECTION

02:28PM 1    WITH THE CASE.

02:28PM 2               PROSPECTIVE JUROR:  YES.

02:28PM 3               MR. DOWNEY:  I THINK YOU LISTENED TO ONE PODCAST IN

02:28PM 4    CONNECTION WITH THE CASE?

02:28PM 5               PROSPECTIVE JUROR:  YEAH.  WHENEVER WE CAR TRAVEL,

02:28PM 6    MY HUSBAND JUST PICKS OUT A PODCAST BASED ON SOMETHING THAT IS

02:28PM 7    POPULAR OUT THERE AND HE PICKS THE PLAY LIST, AND THAT'S WHY I

02:28PM 8    COULDN'T TELL YOU WHICH ONE, BUT WE DID ALSO LISTEN TO THE

02:28PM 9    ENTIRE PODCAST.

02:28PM 10              MR. DOWNEY:  SO THAT WAS AN AUDIO PODCAST THAT YOU

02:28PM 11   LISTENED TO?

02:28PM 12              PROSPECTIVE JUROR:  EXACTLY.

02:28PM 13              MR. DOWNEY:  AND WITHOUT GETTING INTO THE DETAILS OF

02:28PM 14   WHAT THE PODCAST WAS ABOUT, WOULD YOU SAY THE PODCAST HAD A

02:28PM 15   POSITIVE OR NEGATIVE VIEW OF MS. HOLMES?

02:28PM 16              PROSPECTIVE JUROR:  NEGATIVE.

02:28PM 17              MR. DOWNEY:  OKAY.  AND WHAT WAS YOUR VIEW OF

02:28PM 18   MS. HOLMES AT THE TIME THAT YOU FINISHED LISTENING TO THAT

02:28PM 19   PODCAST.

02:28PM 20              PROSPECTIVE JUROR:  I DON'T KNOW IF IT WAS HER

02:28PM 21   PERSONALLY OR THE COMPANY IN GENERAL, JUST, LIKE, IT WASN'T

02:29PM 22   GOING TO MAKE IT.  I ONLY -- I DON'T REMEMBER THE WHOLE

02:29PM 23   PODCAST.  I DEFINITELY REMEMBER A PERSON SPEAKING AT THE VERY

02:29PM 24   BEGINNING ABOUT HAVING MET HER AND SHE DID NOT SPEAK WELL OF

02:29PM 25   HER, AND I DO REMEMBER THAT.

02:29PM 1          MR. DOWNEY:  AND WHO WAS THAT THAT SPOKE TO YOU

02:29PM 2    ABOUT THAT?

02:29PM 3          PROSPECTIVE JUROR:  IT WAS ON THE PODCAST, A WOMAN

02:29PM 4    WHO HAS INTERVIEWED AND WHO TALKED ABOUT MEETING MS. HOLMES.

02:29PM 5          MR. DOWNEY:  AND THAT STUCK WITH YOU?

02:29PM 6          PROSPECTIVE JUROR:  UH-HUH.  OH, YES.

02:29PM 7          MR. DOWNEY:  AND SO AFTER YOU HAD LISTENED TO THE

02:29PM 8    PODCAST AND THOUGHT ABOUT IT, DID YOU CARRY A NEGATIVE VIEW

02:29PM 9    ABOUT THE COMPANY?

02:29PM 10         PROSPECTIVE JUROR:  IT WAS ENTERTAINMENT FOR CAR

02:29PM 11   TRAVEL.  IT NEVER REALLY CAME UP AGAIN UNTIL I CAME AND APPLIED

02:29PM 12   FOR JURY DUTY.  IT WASN'T ON MY MIND.

02:29PM 13         MR. DOWNEY:  AND YOU WORK ALSO, YOU WORK IN THE

02:29PM 14   LABOR AND DELIVERY?

02:29PM 15         PROSPECTIVE JUROR:  YEAH, I ALSO WORK AT THE

02:29PM 16   HOSPITAL.  I'M AN R.N.

02:29PM 17         MR. DOWNEY:  OKAY.  GOOD.  SOME OF MY BEST FRIENDS

02:29PM 18   WORK THERE.

02:29PM 19      I'M JUST KIDDING.

02:29PM 20         PROSPECTIVE JUROR:  WELL, I HOPE YOU'RE NOT KIDDING.

02:29PM 21         MR. DOWNEY:  HAS -- HAS THE THERANOS SITUATION BEEN

02:30PM 22   A SUBJECT OF DISCUSSION THERE?

02:30PM 23         PROSPECTIVE JUROR:  NO.  I WORK AT KAISER.  WE DON'T

02:30PM 24   WORK WITH ANYTHING NOT EVEN REMOTELY CLOSE TO THE AREA THOUGH.

02:30PM 25         MR. DOWNEY:  THANK YOU.

02:30PM  1            PROSPECTIVE JUROR:  I HAVE VACATION ALSO THAT WAS

02:30PM  2   LISTED ON THE THING.

02:30PM  3            MR. DOWNEY:  OH, I'M SORRY.

02:30PM  4            PROSPECTIVE JUROR:  THAT'S OKAY.  I DO WANT TO -- MY

02:30PM  5   MOM SURVIVED COVID AND I AM HOPING TO GO VISIT MY MOTHER, AND

02:30PM  6   MY SON GOT MARRIED LAST DECEMBER AND I HAVEN'T SEEN HIM SINCE

02:30PM  7   THEN, AND THOSE ARE THE TWO TRIPS THAT I PLANNED.

02:30PM  8            MR. DOWNEY:  AND THOSE WERE ALREADY PLANNED WITH I

02:30PM  9   THINK PARTICULAR DATES, RIGHT?

02:30PM  10            PROSPECTIVE JUROR:  THEY ARE.  AND I DIDN'T KNOW

02:30PM  11   THEY WERE GOING TO GO THROUGH.  I HAVE PLANS IN NOVEMBER.

02:30PM  12   COVID HAS BEEN AWFUL, AND I FINALLY HAVE SOME VACATION PLANNED.

02:30PM  13       BUT I UNDERSTAND IF I HAVE TO CANCEL.  NOTHING IS URGENT,

02:30PM  14   I GUESS.

02:30PM  15            MR. DOWNEY:  I'D LIKE TO ASK A QUESTION NEXT OF

02:30PM  16   MS. NGUYEN, JUROR 24.

02:31PM  17            PROSPECTIVE JUROR:  YES.

02:31PM  18            MR. DOWNEY:  I NOTICED IN FILLING OUT THE

02:31PM  19   QUESTIONNAIRE YOU CHECKED A PARTICULAR BOX.  I THINK YOU MIGHT

02:31PM  20   HAVE CHECKED IT IN ERROR, BUT I JUST WANT TO MAKE SURE THAT

02:31PM  21   THAT IS THE CASE.

02:31PM  22       THERE WAS A QUESTION THAT ASKED, IF THERE WAS ANYTHING

02:31PM  23   THAT CREATED A QUESTION IN YOUR MIND AS TO WHETHER YOU COULD BE

02:31PM  24   FAIR OR IMPARTIAL IN CONNECTION WITH THE CASE.

02:31PM  25       YOU CHECKED "YES," WHICH WOULD INDICATE THAT THERE WAS

```
02:31PM   1        SOME QUESTION.

02:31PM   2             IS THERE SOMETHING IN YOUR HEAD THAT MAKES YOU THINK THAT

02:31PM   3        IT MIGHT NOT BE AN APPROPRIATE CASE FOR YOU?

02:31PM   4             PROSPECTIVE JUROR:  I KNOW NOTHING ABOUT IT I GUESS.

02:31PM   5        I THINK I WOULD BE FAIR.

02:31PM   6             BUT, YOU KNOW, IN THERE I ALSO SAY THAT MY ENGLISH, MAYBE

02:31PM   7        SOME WORDS I NOT UNDERSTAND.  SO WHEN I GUESS I MAYBE MAKE A

02:31PM   8        MISTAKE, BUT I'M SURE I BE FAIR FOR EVERYTHING.

02:31PM   9             MR. DOWNEY:  OKAY.  WHEN THE DISCUSSION HAS BEEN

02:31PM  10        HAPPENING TODAY, HAVE YOU HAD ANY DIFFICULTY FOLLOWING IT,

02:32PM  11        PARTICULARLY WITH THE MASKS?

02:32PM  12             PROSPECTIVE JUROR:  I UNDERSTAND.  YES.

02:32PM  13             MR. DOWNEY:  OKAY.  SO YOU WERE ABLE TO UNDERSTAND?

02:32PM  14             PROSPECTIVE JUROR:  YES.

02:32PM  15             MR. DOWNEY:  OKAY.  WAS THERE ANYTHING IN FILLING

02:32PM  16        OUT THE QUESTIONNAIRE THAT YOU WEREN'T ABLE TO UNDERSTAND?

02:32PM  17             PROSPECTIVE JUROR:  LIKE MAYBE A COUPLE OF WORDS I

02:32PM  18        CAN'T UNDERSTAND.  BUT I LOOK ON MY PHONE AND TRANSLATE TO GET

02:32PM  19        TO THE MEANING OF THE WORD SOMETIMES.

02:32PM  20             MR. DOWNEY:  OKAY.  THANK YOU, MA'AM.

02:32PM  21             OTHER THAN THAT, YOU THINK YOU COULD BE FAIR AND

02:32PM  22        UNBIASSED?

02:32PM  23             PROSPECTIVE JUROR:  YES.

02:32PM  24             MR. DOWNEY:  OKAY.  THANK YOU, MA'AM.

02:32PM  25             MR. RAO, I DON'T WANT TO TALK TO YOU AGAIN ABOUT THE
```

02:32PM   1    MEDIA, BUT I DID WANT TO ASK YOU A QUESTION ABOUT THE QUESTION

02:32PM   2    YOU ANSWERED ON THE QUESTIONNAIRE.  AND YOU'RE NOT LOOKING AT

02:32PM   3    IT, BUT I AM.  IT WAS QUESTION 58, WHICH SAID THAT IN A

02:33PM   4    CRIMINAL PROSECUTION, THE GOVERNMENT HAS THE BURDEN OF PROVING

02:33PM   5    GUILT BEYOND A REASONABLE DOUBT.

02:33PM   6         THE DEFENDANT IS PRESUMED INNOCENT AND HAS NO BURDEN TO

02:33PM   7    PRESENT ANY EVIDENCE.

02:33PM   8         DO YOU BELIEVE A DEFENDANT HAS AN OBLIGATION TO PROVE HIS

02:33PM   9    INNOCENCE OR HER INNOCENCE OR PRODUCE ANY EVIDENCE IN ORDER TO

02:33PM  10    BE FOUND NOT GUILTY, AND YOU CHECKED "YES" IN CONNECTION WITH

02:33PM  11    THAT QUESTION, WHICH SEVERAL OTHER JURORS DID AS WELL.

02:33PM  12         I'M JUST WONDERING WHAT YOU MEANT WHEN YOU CHECKED "YES"

02:33PM  13    IN RESPONSE TO THAT QUESTION?

02:33PM  14              PROSPECTIVE JUROR:  WELL, I DIDN'T UNDERSTAND THE

02:33PM  15    QUESTION COMPLETELY.  BUT IN MY MIND, WHAT WAS GOING THROUGH MY

02:33PM  16    MIND AT THE TIME IS THAT THE DEFENDANT SHOULD BE ABLE TO

02:33PM  17    PRODUCE EVIDENCE OR SOME PROOF SAYING -- I MEAN, TO NEGATE THE

02:33PM  18    ALLEGATIONS FROM THE OTHER PARTY.

02:33PM  19         SO MAYBE THAT'S WHAT I WAS ANSWERING TO.

02:33PM  20              MR. DOWNEY:  AND IS THAT SOMETHING THAT YOU FEEL?

02:33PM  21              PROSPECTIVE JUROR:  YES.

02:33PM  22              MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.

02:33PM  23              THE COURT:  PARDON ME, MR. DOWNEY.

02:33PM  24         MR. RAO, SO I UNDERSTAND WHAT YOU JUST SAID, DO YOU MEAN

02:34PM  25    THAT YOU BELIEVE THE DEFENDANT SHOULD HAVE THE OPPORTUNITY TO

02:34PM  1      PRESENT EVIDENCE?  IS THAT WHAT YOU MEANT?

02:34PM  2              PROSPECTIVE JUROR:  YES, OPPORTUNITY.

02:34PM  3      AND ALSO THEY SHOULD BE ABLE TO, EVEN WITHOUT ASKING, THEY

02:34PM  4      SHOULD BE ABLE TO PRODUCE THE EVIDENCE OR INFORMATION FROM THE

02:34PM  5      OTHER PARTY.

02:34PM  6              MR. DOWNEY:  AND WHEN YOU SAY THEY SHOULD BE ABLE

02:34PM  7      TO, YOU MEAN THEY SHOULD DO SO, TO REBUT THE CHARGES?

02:34PM  8              PROSPECTIVE JUROR:  SHOULD AS IN LIKE LEGALLY?  NO.

02:34PM  9      BUT I GUESS -- I MEAN, WHAT I'M SAYING IS IF SOMEBODY SAYS

02:34PM 10      THAT YOU DID THIS, AND I SHOULD BE ABLE TO SAY, NO, I MEAN,

02:34PM 11      THIS IS MY EVIDENCE THAT I CAN PROVE YOU WRONG.

02:34PM 12              MR. DOWNEY:  AND THAT IN YOUR MIND WOULD SHOW THAT

02:34PM 13      SOMEONE WAS INNOCENT, FOR EXAMPLE?

02:34PM 14              PROSPECTIVE JUROR:  I MEAN, THE DOCUMENTATION OR

02:34PM 15      WHATEVER EVIDENCE IS PRESENTED, PROOF, YES.

02:34PM 16              THE COURT:  SO, MR. RAO -- PARDON ME, MR. DOWNEY.

02:34PM 17      SO, MR. RAO, WHAT YOU'RE SAYING IS THAT YOU BELIEVE THAT

02:35PM 18      THE DEFENSE SHOULD HAVE THE OPPORTUNITY, IF THEY WISH, TO PUT

02:35PM 19      EVIDENCE FORWARD?  IS THAT WHAT YOU'RE SAYING?

02:35PM 20              PROSPECTIVE JUROR:  YEAH.  NOW THAT I'M READING

02:35PM 21      THROUGH WHAT HE SAID EARLIER, THAT THE DEFENDANT IS INNOCENT

02:35PM 22      UNTIL PROVEN GUILTY, SO MAYBE I WAS NOT CLEAR ON WHAT THAT

02:35PM 23      QUESTION WAS.

02:35PM 24              THE COURT:  I SEE.

02:35PM 25              PROSPECTIVE JUROR:  IT WAS MORE LIKE SAYING THE

02:35PM  1       DEFENDANT SHOULD HAVE THE CAPACITY OR THE ABILITY TO PROVIDE

02:35PM  2       THE EVIDENCE --

02:35PM  3               THE COURT:  RIGHT.  I SEE.

02:35PM  4               PROSPECTIVE JUROR:  -- REQUIRED.

02:35PM  5               THE COURT:  AS OPPOSED TO THE OBLIGATION TO PROVE

02:35PM  6       THEIR INNOCENCE.

02:35PM  7               PROSPECTIVE JUROR:  YES, RIGHT.  MAYBE I MISREAD THE

02:35PM  8       QUESTION.

02:35PM  9               THE COURT:  I SEE.  SO YOU REMEMBER ME TALKING ABOUT

02:35PM  10      THE PRESUMPTION OF INNOCENCE?

02:35PM  11              PROSPECTIVE JUROR:  YES.

02:35PM  12              THE COURT:  AND DO YOU HAVE ANY PROBLEM WITH THAT

02:35PM  13      CONCEPT?

02:35PM  14              PROSPECTIVE JUROR:  NO.  THANK YOU FOR CLARIFYING

02:35PM  15      THAT.  I HAVE NO PROBLEM WITH THAT.

02:35PM  16              THE COURT:  THANK YOU FOR THAT, SIR.  SORRY.

02:35PM  17          THANK YOU, MR. DOWNEY.

02:35PM  18              MR. DOWNEY:  MR. WITHERSPOON, I KNOW WE'VE SPOKEN TO

02:35PM  19      YOU SEVERAL TIMES TODAY.  I JUST WANTED TO ASK YOU ABOUT SOME

02:35PM  20      OF THE HARDSHIP ISSUES RELATED TO YOUR QUESTIONNAIRE AND

02:36PM  21      RESPONSE.

02:36PM  22              PROSPECTIVE JUROR:  SURE.

02:36PM  23              MR. DOWNEY:  AS I UNDERSTAND IT, YOU MENTIONED A FEW

02:36PM  24      MOMENTS AGO THAT YOU HAVE A SUBPOENA TO APPEAR AS A WITNESS.

02:36PM  25              PROSPECTIVE JUROR:  YES, SIR.

02:36PM  1          MR. DOWNEY:  IS THAT AN APPEARANCE THAT YOU'LL BE

02:36PM  2    ABLE TO MAKE THAT DOES NOT CONFLICT WITH OUR TRIAL SCHEDULE AS

02:36PM  3    DESCRIBED BY JUDGE DAVILA?

02:36PM  4          PROSPECTIVE JUROR:  I'VE BEEN TOLD THAT I'VE BEEN

02:36PM  5    GRANTED A VIDEO CONFERENCE SO WE WON'T HAVE TO ATTEND IN PERSON

02:36PM  6    THANKFULLY.

02:36PM  7          MR. DOWNEY:  OKAY.  SO YOU'LL BE ABLE TO SERVE ON

02:36PM  8    THE JURY IF YOU'RE CHOSEN?

02:36PM  9          PROSPECTIVE JUROR:  I BELIEVE SO.

02:36PM 10          MR. DOWNEY:  YOU ALSO MENTION THAT YOUR WIFE AND

02:36PM 11    YOUR SON HAVE SOME AUTOIMMUNE ISSUES.

02:36PM 12          PROSPECTIVE JUROR:  I DON'T THINK THEY HAVE ANYTHING

02:36PM 13    THAT COULD BE REALLY PROVED OUT TO BE AUTOIMMUNE, BUT WE TRY TO

02:36PM 14    BE REALLY CAREFUL.  HE HAS SOME -- HE HAS SOME DEVELOPMENTAL

02:36PM 15    ISSUES AND WE TRY TO BE PRETTY CAREFUL ABOUT THAT.

02:36PM 16          MR. DOWNEY:  OKAY.  HAVING HEARD WHAT OUR PROCEDURES

02:36PM 17    WILL BE DURING THIS TRIAL, WOULD YOU BE COMFORTABLE IF YOU WERE

02:36PM 18    CHOSEN AS A JUROR SERVING?

02:36PM 19          PROSPECTIVE JUROR:  I THINK SO, YES.

02:37PM 20          MR. DOWNEY:  OKAY.  OKAY.

02:37PM 21       MS. HERNANDEZ, I WANTED TO ASK YOU BASICALLY THE SAME

02:37PM 22    QUESTION THAT I ASKED MR. RAO.

02:37PM 23       IN RESPONSE TO THE QUESTION ABOUT WHETHER OR NOT YOU

02:37PM 24    BELIEVE THE DEFENDANT HAS AN OBLIGATION TO PRESENT EVIDENCE,

02:37PM 25    YOU CHECKED "YES," AND THEN YOU SAID, ANYONE CAN SAY THAT

02:37PM 1    THEY'RE INNOCENT, BUT THAT'S WHY EVIDENCE IS VITAL.

02:37PM 2        DOES THAT -- TELL ME ABOUT THAT.  WHAT DID YOU MEAN WHEN

02:37PM 3    YOU WROTE THAT?

02:37PM 4        PROSPECTIVE JUROR:  I JUST SIMPLY MEANT THAT A

02:37PM 5    DECISION CAN'T BE MADE WITHOUT EVIDENCE.  SO WHOEVER IS

02:37PM 6    PROVIDING IT, IT NEEDS TO BE VALID.  OTHERWISE A DETERMINATION

02:37PM 7    CAN'T BE MADE.

02:37PM 8        MR. DOWNEY:  OKAY.  AND WOULD YOU EXPECT THE

02:37PM 9    DEFENDANT TO PRESENT EVIDENCE IN THIS CASE?

02:38PM 10       PROSPECTIVE JUROR:  NO.

02:38PM 11       MR. DOWNEY:  OKAY.  SO YOU'D BE ABLE TO JUDGE FAIRLY

02:38PM 12   IN THIS SITUATION IF MS. HOLMES DID NOT PRESENT ANY EVIDENCE AS

02:38PM 13   PART OF A DEFENSE?

02:38PM 14       PROSPECTIVE JUROR:  YES.

02:38PM 15       MR. DOWNEY:  ALL RIGHT.  BEAR WITH ME ONE MOMENT.

02:38PM 16     (PAUSE IN PROCEEDINGS.)

02:38PM 17       MR. DOWNEY:  MR. WONG, JUROR NUMBER 46.  YOU

02:38PM 18   ANSWERED SOME QUESTIONS EARLIER FROM JUDGE DAVILA REGARDING THE

02:38PM 19   MEDIA YOU'D BE EXPOSED TO.

02:38PM 20       DO YOU REMEMBER THAT?

02:38PM 21       PROSPECTIVE JUROR:  YES.

02:38PM 22       MR. DOWNEY:  AND IN CONNECTION WITH THAT YOU

02:38PM 23   MENTIONED THAT YOU HAD HAD DISCUSSIONS WITH SOME OF YOUR

02:38PM 24   FRIENDS WHO HAD AN INTEREST IN THE CASE.

02:39PM 25       DO YOU RECALL THAT?

02:39PM 1          PROSPECTIVE JUROR:  NO.  WHAT I SAID WAS PRIOR TO

02:39PM 2   THIS WHOLE JURY THING, WHEN I WATCHED THE "60 MINUTES" SEGMENT,

02:39PM 3   AND THEN MY FRIENDS WERE ALL INTO THAT, AND THEY SAW THE MOVIE,

02:39PM 4   THE DOCUMENTARY, THEY READ THE BOOK AND WE TALKED ABOUT IT, BUT

02:39PM 5   THAT WAS WAY --

02:39PM 6          MR. DOWNEY:  EXCUSE ME.  THAT WAS WHAT I MEANT TO

02:39PM 7   SAY.  I DIDN'T MEAN IN CONNECTION WITH THIS PROCEEDING.

02:39PM 8      THEY WERE CURIOUS ABOUT THERANOS IS WHAT YOU WERE SAYING?

02:39PM 9          PROSPECTIVE JUROR:  WELL, NO.  WE WERE TALKING MORE

02:39PM 10  ON THE INVESTMENT SIDE.  WE WERE SAYING THAT A LOT OF PEOPLE

02:39PM 11  LOST MONEY, AND JUST FROM THAT, OH, YEAH, I HEARD ABOUT THAT.

02:39PM 12  AND SO THEY KNOW A LOT MORE ABOUT THAT.

02:39PM 13     BUT WE DID TALK ABOUT THAT.  BUT THAT WAS QUITE A FEW

02:39PM 14  YEARS AGO.

02:39PM 15         MR. DOWNEY:  OKAY.  DID THEY EXPRESS ANY OPINIONS

02:39PM 16  ABOUT THE CASE THAT YOU RECALL?

02:39PM 17         PROSPECTIVE JUROR:  NO, WE DON'T KNOW MUCH ABOUT THE

02:39PM 18  COMPANY.

02:39PM 19         MR. DOWNEY:  OKAY.  WHAT WAS YOUR OPINION WHEN YOU

02:40PM 20  HAD THOSE DISCUSSIONS?

02:40PM 21         PROSPECTIVE JUROR:  WELL, I'M JUST GLAD I DIDN'T

02:40PM 22  INVEST IN IT.  THAT WAS -- I DIDN'T, BUT NONE OF US WERE

02:40PM 23  ACTUALLY INVESTING IN THE COMPANY, SO --

02:40PM 24         MR. DOWNEY:  FAIR ENOUGH.  SO YOU DON'T HAVE ANY

02:40PM 25  OPINION AS YOU SIT HERE TODAY REGARDING MS. HOLMES; IS THAT

02:40PM 1    RIGHT?

02:40PM 2              PROSPECTIVE JUROR:  THAT'S CORRECT.

02:40PM 3              MR. DOWNEY:  OKAY.  LET ME ASK MR. BURGE ALSO WHO WE

02:40PM 4    HAVE TALKED TO BEFORE.

02:40PM 5         MR. BURGE, YOU HAD A DISCUSSION ALSO WITH JUDGE DAVILA

02:40PM 6    ABOUT THE MEDIA.

02:40PM 7         DO YOU REMEMBER THAT?

02:40PM 8              PROSPECTIVE JUROR:  YES, SIR.

02:40PM 9              MR. DOWNEY:  AND YOU TOLD US IN RESPONSE TO THE

02:40PM 10   QUESTIONNAIRE THAT YOU HAD COMMENTED ON MS. HOLMES ON SOCIAL

02:40PM 11   MEDIA.

02:40PM 12        DO YOU REMEMBER THAT?

02:41PM 13             PROSPECTIVE JUROR:  YES, SIR.

02:41PM 14             THE COURT:  AND DO YOU REMEMBER THE CONTENT OF THAT

02:41PM 15   COMMENT?

02:41PM 16             PROSPECTIVE JUROR:  YES, I DO.

02:41PM 17             MR. DOWNEY:  AND WOULD YOU AGREE WITH ME THAT THAT

02:41PM 18   WAS A NEGATIVE COMMENT?

02:41PM 19             PROSPECTIVE JUROR:  YES.

02:41PM 20             MR. DOWNEY:  WAS THAT AN OPINION THAT YOU HELD OF

02:41PM 21   MS. HOLMES AT THE TIME THAT YOU WROTE THE COMMENT?

02:41PM 22             PROSPECTIVE JUROR:  YES.

02:41PM 23             MR. DOWNEY:  OKAY.  AND WAS THAT AN OPINION OF

02:41PM 24   MS. HOLMES AT THE TIME THAT YOU FILLED OUT THE QUESTIONNAIRE?

02:41PM 25             PROSPECTIVE JUROR:  NO.  SORRY.  I FOLLOWED THE

02:41PM 1    COMPANY BECAUSE I WAS INTERESTED IN IT BECAUSE IT CORRELATED

02:41PM 2    WITH SOME OF THE CASES THAT I WAS WORKING ON, AND AT THE TIME

02:41PM 3    THAT THE NEGATIVITY CAME OUT, I WAS REALLY DISAPPOINTED BECAUSE

02:41PM 4    I THOUGHT THE COMPANY WAS SO COOL AND SO IT WAS MORE OF A

02:41PM 5    DISAPPOINTMENT.

02:41PM 6         MR. DOWNEY:  AND DO YOU REMEMBER WHAT FORUM YOU

02:41PM 7    COMMENTED ON THE COMPANY IN?

02:41PM 8         PROSPECTIVE JUROR:  I THINK IT WAS FACEBOOK.

02:41PM 9         MR. DOWNEY:  OKAY.  AND WAS IT SOME GROUP THAT

02:41PM 10   YOU'RE A MEMBER OF, OR WAS IT JUST --

02:41PM 11        PROSPECTIVE JUROR:  NO, JUST LIKE ALL OF MY FRIENDS.

02:41PM 12        MR. DOWNEY:  OKAY.  AND YOU FELT A CERTAIN SENSE OF

02:42PM 13   DISAPPOINTMENT; IS THAT RIGHT?

02:42PM 14        PROSPECTIVE JUROR:  YES, SIR.

02:42PM 15        MR. DOWNEY:  AND IS THAT A SENTIMENT THAT YOU STILL

02:42PM 16   HAVE?

02:42PM 17        PROSPECTIVE JUROR:  NOT NECESSARILY, NO.

02:42PM 18        MR. DOWNEY:  OKAY.  WHAT HAS CHANGED ABOUT THAT?

02:42PM 19        PROSPECTIVE JUROR:  WELL, I DON'T -- COMING HERE HAS

02:42PM 20   CHANGED, RIGHT?  BECAUSE YOU HAVE TO KNOW ALL OF THE FACTS

02:42PM 21   BEFORE YOU COULD MAKE A DECISION.

02:42PM 22        SO, I MEAN, BASING SOMETHING OFF OF WHAT YOU READ IS NOT

02:42PM 23   NECESSARILY THE TRUTH, RIGHT?

02:42PM 24        AND IT WAS A GUT REACTION RESPONSE BECAUSE I WAS SO

02:42PM 25   INVOLVED IN FOLLOWING THEM.

02:42PM 1      MR. DOWNEY:  OKAY.  BUT YOU THINK HERE YOU WOULD BE

02:42PM 2   ABLE TO CONSIDER ALL OF THE EVIDENCE THAT IS PRESENTED AND NOT

02:42PM 3   LET THAT OPINION AFFECT YOUR DELIBERATIONS?

02:42PM 4      PROSPECTIVE JUROR:  YES, SIR.

02:42PM 5      MR. DOWNEY:  IS THERE -- COULD YOU TELL US A LITTLE

02:42PM 6   BIT ABOUT YOUR DEALINGS WITH THE FDA?

02:42PM 7      PROSPECTIVE JUROR:  IT'S JUST THE ANDA CASES THAT I

02:42PM 8   WORK ON, SO, LIKE, RUNNING UP THEIR PRODUCTIONS AND -- YOU

02:43PM 9   KNOW, I DON'T REALLY DO ANYTHING WITH THE FDA.  IT'S THE

02:43PM 10  ATTORNEYS WHO ARE DOING THE LETTERS.  BUT I'M KEEPING TRACK OF

02:43PM 11  WHAT IS GOING IN AND OUT AND PRODUCING TO THE OTHER SIDE AND

02:43PM 12  THE FDA THE CORRESPONDENCE FOR THE ANDA APPLICATIONS.

02:43PM 13     MR. DOWNEY:  AND IS THE NATURE OF THAT THAT THE

02:43PM 14  CLIENTS OF THE LAW FIRM ARE FILING NEW DRUG APPLICATIONS WITH

02:43PM 15  THE FDA?

02:43PM 16     PROSPECTIVE JUROR:  CORRECT.

02:43PM 17     MR. DOWNEY:  AND IS IT RIGHT THAT YOUR LAW FIRM IS

02:43PM 18  TRYING TO ASSIST THOSE CLIENTS IN GETTING THAT NEW DRUG

02:43PM 19  APPLICATION APPROVED?

02:43PM 20     PROSPECTIVE JUROR:  YES.

02:43PM 21     MR. DOWNEY:  AND IS IT THE CASE THAT THERE ARE ANY

02:43PM 22  OF THOSE NEW DRUG APPLICATIONS THAT YOU'VE WORKED ON IN THE

02:43PM 23  LAST SIX MONTHS?

02:43PM 24     PROSPECTIVE JUROR:  I'VE HAD A FEW.

02:43PM 25     MR. DOWNEY:  YOU DON'T HAVE TO IDENTIFY WHAT THEY

02:43PM  1    ARE, BUT ARE THERE CURRENTLY ANY APPLICATIONS THAT YOU'VE BEEN

02:44PM  2    INVOLVED WITH THAT ARE PENDING WITH THE FDA CURRENTLY?

02:44PM  3              PROSPECTIVE JUROR:  YES.

02:44PM  4              MR. DOWNEY:  HOW MANY?

02:44PM  5              PROSPECTIVE JUROR:  HMM.  AT LEAST FIVE OR SIX.

02:44PM  6              MR. DOWNEY:  AND DO YOU EXPECT THAT YOU'LL DO

02:44PM  7    FURTHER WORK IN CONNECTION WITH THOSE APPLICATIONS?

02:44PM  8              PROSPECTIVE JUROR:  YES, SIR.

02:44PM  9              MR. DOWNEY:  OKAY.  AM I RIGHT THAT YOU'VE BEEN ABLE

02:44PM 10    TO ADJUST ANY CONFLICTS WITH THIS TRIAL THAT YOU WOULD HAVE AS

02:44PM 11    WELL?

02:44PM 12              PROSPECTIVE JUROR:  I HAVE NOT.  I WAS JUST KIND OF

02:44PM 13    WAITING AND SEEING.

02:44PM 14              MR. DOWNEY:  WELL, TELL US ABOUT THAT.  I NOTICED IN

02:44PM 15    YOUR QUESTIONNAIRE THAT THIS MIGHT PRESENT SOME SCHEDULING

02:44PM 16    HARDSHIPS.

02:44PM 17              PROSPECTIVE JUROR:  WELL, WITH THE PANDEMIC, I'VE

02:44PM 18    BEEN LOCKED IN THE HOUSE WITH THE FAMILY AND WE HAVE NOT GONE

02:44PM 19    ANYWHERE FOR A YEAR AND A HALF.

02:45PM 20        THE KIDS ARE BACK IN SCHOOL, AND THE FALL BREAK IS THE

02:45PM 21    FIRST WEEK OF OCTOBER AND SO WE'VE PLANNED A LITTLE GETAWAY.

02:45PM 22        I'VE BEEN TAKING CARE OF MY ELDERLY PARENTS DURING THIS

02:45PM 23    WHOLE PROCESS WITH MY 12-YEAR OLD.

02:45PM 24        MY MOTHER HAS ALZHEIMER'S AND MY DAD DOESN'T GET ALONG SO

02:45PM 25    WELL.  SHE SNUCK OUT OF THE HOUSE BEFORE THE PANDEMIC STARTED,

02:45PM 1   AND WE HAD TO GO SEARCHING FOR HER, AND THAT'S WHEN ROBERT AND

02:45PM 2   I MOVED IN WITH THEM.

02:45PM 3       AND WHEN HE WAS IN SCHOOL AND DOING DISTANCE LEARNING IT

02:45PM 4   WAS HELPFUL THAT WE COULD KEEP AN EYE ON HER.  HE'S BACK, YOU

02:45PM 5   KNOW, BACK IN SESSION AS OF A WEEK AND A HALF AGO.

02:45PM 6       SO THINGS ARE KIND OF IN THE AIR WITH EVERYTHING RIGHT NOW

02:45PM 7   AS FAR AS SCHEDULING.

02:45PM 8           MR. DOWNEY:  OKAY.  SO ARE YOU ONE OF HER PRINCIPAL

02:45PM 9   CARE TAKERS?

02:45PM 10          PROSPECTIVE JUROR:  I AM.

02:45PM 11          MR. DOWNEY:  ALL RIGHT, SIR.  THANK YOU.

02:45PM 12          PROSPECTIVE JUROR:  UH-HUH.

02:46PM 13          MR. DOWNEY:  I SHOULD ASK, I ASKED MS. NGUYEN, IS

02:46PM 14  THERE ANYONE ELSE HERE WHO HAS HAD ANY DIFFICULTY EITHER

02:46PM 15  UNDERSTANDING ME OR MR. SCHENK, OR ANYTHING THAT HAS HAPPENED

02:46PM 16  IN COURT HERE TODAY BECAUSE YOU CAN'T HEAR OR FOR OTHER

02:46PM 17  REASONS?

02:46PM 18      YES, MA'AM.

02:46PM 19          PROSPECTIVE JUROR:  I DON'T --

02:46PM 20          THE COURT:  COULD YOU COME FORWARD, PLEASE?

02:46PM 21          PROSPECTIVE JUROR:  I DON'T HAVE --

02:46PM 22          THE COURT:  COULD YOU COME FORWARD, PLEASE?

02:46PM 23          PROSPECTIVE JUROR:  HI.  I DON'T HAVE HEARING

02:46PM 24  PROBLEMS, BUT ENGLISH IS MY SECOND LANGUAGE.

02:46PM 25          THE COURT:  COULD YOU TELL US YOUR JUROR NUMBER,

02:46PM 1    PLEASE.

02:46PM 2             PROSPECTIVE JUROR:  81.

02:46PM 3        SO I'M AFRAID IF A DECISION DEPENDS ON ME, I HAVEN'T BEEN

02:46PM 4    ABLE TO FOLLOW, YOU KNOW, DURING THE PROCESS ALL OF THE

02:46PM 5    TESTIMONY AND EVERYTHING, SPECIFIC WORDS.

02:46PM 6        DO YOU KNOW WHAT I MEAN?  I'M ABLE TO HAVE A CONVERSATION,

02:47PM 7    BUT MORE SPECIFIC WORDS FOR ME MAKE ME FEEL LOST IN

02:47PM 8    TRANSLATION.

02:47PM 9             MR. DOWNEY:  OKAY, MA'AM.  THAT'S BEEN TRUE OF EVEN

02:47PM 10   TODAY'S PROCEEDINGS?

02:47PM 11            PROSPECTIVE JUROR:  NO, NOT SO FAR.

02:47PM 12       IT'S HARD FOR SOMETIMES WITH ACCENTS AND STUFF.  BUT

02:47PM 13   REGULAR DAY LIKE TODAY?  NO.

02:47PM 14       SO I'M AFRAID OF THAT.

02:47PM 15            MR. DOWNEY:  YOU'VE BEEN ABLE TO FOLLOW WHAT WE HAVE

02:47PM 16   DONE TODAY?

02:47PM 17            PROSPECTIVE JUROR:  I'M SORRY?

02:47PM 18            MR. DOWNEY:  YOU'VE BEEN ABLE TO FOLLOW WHAT WE HAVE

02:47PM 19   DONE TODAY?

02:47PM 20            PROSPECTIVE JUROR:  YES.

02:47PM 21            MR. DOWNEY:  OKAY.  THANK YOU, MA'AM.

02:47PM 22       IS THERE ANYONE ELSE WHO HAS ANY CHALLENGES EITHER IN

02:47PM 23   TERMS OF HEARING OR LANGUAGE THAT HAVE MADE IT DIFFICULT TO

02:47PM 24   FOLLOW THE PROCEEDING?

02:47PM 25            OKAY.  THANK YOU.

02:47PM  1        THE COURT:  THERE'S A HAND.  IS THAT MR. GUERRERO OR

02:47PM  2   MR. NGUYEN?  EXCUSE ME.

02:47PM  3      MR. GUERRERO?

02:47PM  4        PROSPECTIVE JUROR:  YES.

02:47PM  5        THE COURT:  YES.

02:47PM  6        PROSPECTIVE JUROR:  MY JUROR NUMBER IS 55.  I ALSO

02:48PM  7   HAVE SOME TROUBLE UNDERSTANDING ENGLISH, AND THAT'S IT.  I

02:48PM  8   UNDERSTAND, BUT TO SPEAK IT'S HARDER FOR ME.

02:48PM  9        THE COURT:  SPEAKING IS MORE DIFFICULT THAN YOUR

02:48PM  10  UNDERSTANDING?

02:48PM  11       PROSPECTIVE JUROR:  YES.

02:48PM  12       THE COURT:  I SEE.  AND YOU'VE BEEN ABLE TO

02:48PM  13  UNDERSTAND --

02:48PM  14       PROSPECTIVE JUROR:  YES.

02:48PM  15       THE COURT:  -- THE PROCEEDING TODAY?

02:48PM  16       PROSPECTIVE JUROR:  YES.

02:48PM  17       THE COURT:  OKAY.  THANK YOU, SIR.

02:48PM  18       MR. DOWNEY:  YOUR HONOR, MAY I JUST ASK, YOUR HONOR,

02:48PM  19  ONE MORE THING.

02:48PM  20       THE COURT:  OH, YES.

02:48PM  21       MR. DOWNEY:  WOULD YOU BE COMFORTABLE TO

02:48PM  22  PARTICIPATE?  WOULD YOU BE ABLE TO TALK TO OTHER JURORS WHILE

02:48PM  23  THE CASE IS BEING DECIDED?

02:48PM  24       PROSPECTIVE JUROR:  YES.

02:48PM  25       MR. DOWNEY:  AND YOU'D BE COMFORTABLE DOING THAT?

02:48PM   1          PROSPECTIVE JUROR:  YEAH, I THINK SO.

02:48PM   2          MR. DOWNEY:  THANK YOU.

02:48PM   3       MR. RISHI, I HAVE SOME QUESTIONS FOR YOU.  I HAVE PROBABLY

02:48PM   4    ENOUGH QUESTIONS THAT YOU MIGHT WANT TO GET THE MICROPHONE.

02:48PM   5       (LAUGHTER.)

02:49PM   6          MR. DOWNEY:  THAT DOESN'T MEAN THEY'RE BAD

02:49PM   7    QUESTIONS.  IT JUST MEANS --

02:49PM   8       I WAS ALSO INTERESTED IN A RESPONSE THAT YOU GAVE IN THE

02:49PM   9    QUESTIONNAIRE.

02:49PM  10       FIRST OF ALL, YOU HAVE READ A LOT OF MEDIA REPORTS ABOUT

02:49PM  11    MS. HOLMES; CORRECT?

02:49PM  12          PROSPECTIVE JUROR:  CORRECT.

02:49PM  13          MR. DOWNEY:  AND YOU'VE READ THEM OVER A LONG PERIOD

02:49PM  14    OF TIME; IS THAT RIGHT?

02:49PM  15          PROSPECTIVE JUROR:  YES.  I THINK I STARTED

02:49PM  16    FOLLOWING IT WHEN IT STARTED, AND THEN A FEW YEARS BACK I

02:49PM  17    STOPPED.  BUT --

02:49PM  18          MR. DOWNEY:  OKAY.  SO YOU'VE READ A NUMBER OF

02:49PM  19    ARTICLES OVER A PERIOD OF YEARS; IS THAT CORRECT?

02:49PM  20          PROSPECTIVE JUROR:  THAT'S CORRECT.

02:49PM  21          MR. DOWNEY:  AND YOU'VE READ THE BOOK "BAD BLOOD"?

02:49PM  22          PROSPECTIVE JUROR:  UH-HUH.

02:49PM  23          MR. DOWNEY:  AND YOU ALSO WATCHED A COUPLE OF

02:49PM  24    DOCUMENTARIES ABOUT THERANOS; IS THAT RIGHT?

02:49PM  25          PROSPECTIVE JUROR:  CORRECT, I THINK "60 MINUTES."

02:49PM 1          MR. DOWNEY:  OKAY.  AND WHEN YOU CAME IN TO FILL

02:50PM 2    YOUR QUESTIONNAIRE TEN DAYS AGO OR SO, YOU SAID -- YOU ANSWERED

02:50PM 3    THE QUESTION DO YOU, TO YOUR KNOWLEDGE, OR DO YOUR FRIENDS AND

02:50PM 4    FAMILY MEMBERS HAVE STRONG OPINIONS ABOUT EITHER MS. HOLMES OR

02:50PM 5    MR. BALWANI THAT WOULD INFLUENCE YOUR ABILITY TO BE A FAIR AND

02:50PM 6    IMPARTIAL JUROR IN THIS CASE?

02:50PM 7          AND YOU CHECKED "YES," INDICATING THAT YOU MIGHT HAVE SOME

02:50PM 8    STRONG OPINIONS OR FEELINGS, OR THAT PEOPLE YOU LIVE WITH OR

02:50PM 9    WERE FRIENDS WITH MIGHT HAVE STRONG OPINIONS AND FEELINGS.

02:50PM 10         TELL US ABOUT THAT.

02:50PM 11         PROSPECTIVE JUROR:  I THINK, AS I WAS POINTING OUT

02:50PM 12   WHEN WE STARTED READING THE NEWS -- BY "WE" I MEAN ME AND MY

02:50PM 13   WIFE -- AND THIS WAS FOR "THE WALL STREET JOURNAL."

02:50PM 14         SHE WAS IN THE, OR STILL IS IN THE MEDICAL I.T. FIELD, AND

02:50PM 15   SO THINGS LIKE BLOOD TESTING, ET CETERA, WERE PART OF HER

02:51PM 16   PURVIEW.  AND I'VE HAD BLOOD TESTS, ET CETERA.

02:51PM 17         AND SO FOR US, THE GUT REACTION WHEN WE WERE TALKING ABOUT

02:51PM 18   IT WAS ESSENTIALLY THAT THERE'S A HIGH BAR THAT YOU NEED TO

02:51PM 19   HAVE AS A COMPANY WHEN YOU'RE GETTING INTO SOMETHING LIKE

02:51PM 20   MEDICAL TESTING BECAUSE THE IMPLICATIONS CAN BE SO HARSH

02:51PM 21   POTENTIALLY ON PEOPLE.

02:51PM 22         SO THAT'S SOMETHING THAT I'M CONSCIOUS OF AND THAT'S THE

02:51PM 23   REASON I CHECKED IT.

02:51PM 24         MR. DOWNEY:  AND THAT'S A VIEW THAT YOU STILL HAVE,

02:51PM 25   I ASSUME?

02:51PM   1                    PROSPECTIVE JUROR:  CORRECT.

02:51PM   2                    MR. DOWNEY:  AND DOES YOUR WIFE HAVE A SIMILAR VIEW?

02:51PM   3                    PROSPECTIVE JUROR:  YEAH, I THINK SHE DOES.

02:51PM   4                    MR. DOWNEY:  AND AM I RIGHT SHE WORKS AT WAL-MART

02:51PM   5      HEALTH?

02:51PM   6                    PROSPECTIVE JUROR:  SHE DOES CURRENTLY WORK THERE.

02:51PM   7                    MR. DOWNEY:  AND DOES SHE HAVE ANY KNOWLEDGE THROUGH

02:51PM   8      HER WORK, TO YOUR KNOWLEDGE, DOES SHE KNOW ANYTHING ABOUT

02:51PM   9      THERANOS IN CONNECTION WITH HER PROFESSIONAL DEALINGS?

02:51PM  10                    PROSPECTIVE JUROR:  I DON'T THINK SO.

02:51PM  11                    MR. DOWNEY:  OKAY.  SO AM I RIGHT THAT THE ANSWER

02:51PM  12      THAT YOU GAVE IN RESPONSE TO THAT QUESTION IS ACCURATE, YOU DO

02:51PM  13      HAVE SOME CONCERN THAT YOU MAY NOT BE FAIR, OBJECTIVE, AND

02:52PM  14      IMPARTIAL BASED ON THOSE VIEWS?

02:52PM  15                    PROSPECTIVE JUROR:  I THINK IT'S -- BACK TO THE

02:52PM  16      POINT, THE QUESTION WAS IF I HAD SOME VIEWS, AND I THINK THAT'S

02:52PM  17      WHAT I AT LEAST INTENDED TO ANSWER BY PUTTING THE CHECK BOX.

02:52PM  18          BUT LIKE I POINTED OUT EARLIER, I'M ALSO AWARE OF MY

02:52PM  19      BIASES, AND IF THE QUESTION IS CAN I RECOGNIZE THEM AND LOOK AT

02:52PM  20      OTHER EVIDENCE I'M SUPPOSED TO LOOK AT, I BELIEVE I AM CAPABLE

02:52PM  21      OF THAT.

02:52PM  22          I'M NOT SURE IF I ANSWERED YOUR QUESTION.

02:52PM  23                    MR. DOWNEY:  WELL, YOU USED A GREAT PHRASE ACTUALLY.

02:52PM  24      YOU SAID THAT YOU COULD ENGAGE IN I THINK INFORMATION

02:52PM  25      ATTRIBUTION IS THE PHRASE YOU GAVE -- THAT YOU USED.

02:52PM   1                PROSPECTIVE JUROR:  THAT'S RIGHT.

02:52PM   2                MR. DOWNEY:  YOU HAD THAT SKILL WHEN YOU INDICATED

02:52PM   3    YOU WERE WORRIED YOU MIGHT HAVE SOME BIASES AND OPINIONS,

02:52PM   4    DIDN'T YOU?

02:52PM   5                PROSPECTIVE JUROR:  CORRECT.

02:53PM   6                MR. DOWNEY:  OKAY.  AND WHETHER YOU CAN PUT THEM TO

02:53PM   7    THE SIDE OR NOT, DO YOU THINK YOU WOULD CARRY SOME BIASES AND

02:53PM   8    OPINIONS ABOUT THE SITUATION INTO THE CASE AS YOU WENT TO

02:53PM   9    DELIBERATE IN THE CASE OR TO HEAR THE CASE AS A JUROR?

02:53PM  10                PROSPECTIVE JUROR:  WILL I HAVE SOME BIASES GOING

02:53PM  11    IN?  ABSOLUTELY.

02:53PM  12                MR. DOWNEY:  ONE OTHER ISSUE I WANTED TO ASK YOU

02:53PM  13    ABOUT.  WITH RESPECT TO THE DISPUTE THAT YOU HAD RELATED TO

02:53PM  14    YOUR DAUGHTER'S TREATMENT --

02:53PM  15                PROSPECTIVE JUROR:  SAY THAT AGAIN.

02:53PM  16                MR. DOWNEY:  YES, YES.

02:53PM  17         WITH RESPECT TO THE DISPUTE THAT YOU HAD RELATED TO YOUR

02:53PM  18    DAUGHTER'S TREATMENT, I DON'T WANT TO INFRINGE IN ANY WAY ON

02:53PM  19    YOUR PRIVACY, BUT COULD YOU GIVE US AT A HIGH LEVEL A SENSE OF

02:53PM  20    WHAT THAT WAS ABOUT?

02:53PM  21                PROSPECTIVE JUROR:  I THINK -- I MEAN, NOTHING

02:53PM  22    REALLY TO HIDE.  I THINK OUR DAUGHTER, SHE'S MIDDLE SCHOOL AND

02:53PM  23    SHE WEARS HEARING AIDS AND I THINK IT'S MEDICALLY NECESSARY.

02:54PM  24         BUT THE INSURANCE NEVER COVERED THAT, OR WE HAD TO DISPUTE

02:54PM  25    IT, AND I THINK THAT WAS REALLY -- YOU KNOW, IT WAS AN

02:54PM  1    EMOTIONAL PROCESS FOR THE FAMILY AND WHAT WE FELT WAS RIGHT AND

02:54PM  2    DIDN'T QUITE GET THE REIMBURSEMENT UNTIL IT WAS A LONG-TERM

02:54PM  3    PROCESS, AND SO THAT'S WHAT I WAS ALLUDING TO.

02:54PM  4         MR. DOWNEY:  IF YOU CAN SAY, WHO WERE THE INSURERS

02:54PM  5    WHO WERE INVOLVED IN THAT DISPUTE?

02:54PM  6         PROSPECTIVE JUROR:  I BELIEVE IT WAS CIGNA AT THAT

02:54PM  7    POINT IN TIME.

02:54PM  8         MR. DOWNEY:  IS THERE ANYTHING THAT YOU THINK WOULD

02:54PM  9    INFLUENCE YOU?

02:54PM  10        PROSPECTIVE JUROR:  I DON'T THINK SO, OTHER THAN MY

02:54PM  11    TAKE-AWAY IS THAT THE MEDICAL INDUSTRY IS A COMPLEX INDUSTRY IS

02:54PM  12    ALL I CAN THINK OF.

02:54PM  13        MR. DOWNEY:  FAIR ENOUGH.  THANK YOU, SIR.

02:55PM  14      (PAUSE IN PROCEEDINGS.)

02:55PM  15        MR. DOWNEY:  MS. RAMER, I JUST HAD ONE QUESTION FOR

02:55PM  16    YOU.  YOU SAID BEFORE THAT YOU HAD SOME KNOWLEDGE OF ONE OF THE

02:55PM  17    POTENTIAL WITNESSES IN THE CASE AND YOU TALKED WITH

02:55PM  18    JUDGE DAVILA ABOUT THAT.

02:55PM  19      DO YOU REMEMBER THAT?

02:55PM  20        PROSPECTIVE JUROR:  YES.

02:55PM  21        MR. DOWNEY:  CAN YOU JUST GIVE US A SENSE ABOUT

02:55PM  22    WHETHER YOU HAVE AN OPINION ABOUT THAT WITNESS?

02:55PM  23        PROSPECTIVE JUROR:  NO, I DON'T.  I WAS JUST

02:55PM  24    DISCLOSING THAT IT WAS SOMEBODY THAT I KNOW, OR KNOW OF.

02:56PM  25        MR. DOWNEY:  AND ANYTHING PARTICULARLY NEGATIVE OR

02:56PM  1    POSITIVE ABOUT THAT PERSON?

02:56PM  2            PROSPECTIVE JUROR:  NO.  NO.  I MEAN, WE HAD CORDIAL

02:56PM  3    COLLABORATIONS WITH HIM AND HIS LAB FOR SEVERAL YEARS.  IT

02:56PM  4    ENDED, BUT IT DIDN'T END BADLY FOR ANY PARTICULAR REASON OTHER

02:56PM  5    THAN WE MOVED TO A DIFFERENT SORT OF AREA OF RESEARCH.

02:56PM  6    EVERYTHING WAS LEFT ON FINE TERMS.

02:56PM  7            MR. DOWNEY:  IS THERE ANYTHING THAT YOU WOULD HAVE

02:56PM  8    IN TERMS OF -- DOES ANY VIEW THAT YOU WOULD HAVE COME FROM THAT

02:56PM  9    EXPERIENCE, OR DO YOU HAVE ANY REASON TO HAVE ANY OTHER VIEWS

02:56PM  10   ABOUT THAT WITNESS?

02:56PM  11           PROSPECTIVE JUROR:  NO.

02:56PM  12           MR. DOWNEY:  THANK YOU.

02:57PM  13       (PAUSE IN PROCEEDINGS.)

02:57PM  14           MR. DOWNEY:  YOUR HONOR, I HAVE A QUESTION ON ONE

02:57PM  15   WITNESS, BUT I THINK THEY MAY BE A FAILURE TO APPEAR.  CAN I

02:57PM  16   JUST?

02:57PM  17           THE COURT:  OH, YEAH, PLEASE.

02:57PM  18       (PAUSE IN PROCEEDINGS.)

02:57PM  19           THE COURT:  FOLKS, IF YOU WOULD LIKE TO STAND UP AND

02:57PM  20   STRETCH YOUR LEGS, GO AHEAD AND DO THAT RIGHT NOW.  BUT FEEL

02:57PM  21   FREE TO STAND AND STRETCH.

02:57PM  22       (STRETCH BREAK.)

02:58PM  23           MR. DOWNEY:  I WANTED TO ASK MR. LEE JUST SOME

02:58PM  24   QUESTIONS ABOUT -- AND IF THEY'RE PRIVATE QUESTIONS, YOU CAN

02:58PM  25   CERTAINLY INDICATE THAT TO US.

02:58PM 1        BUT I UNDERSTAND THAT YOU MAY HAVE SOME HEALTH ISSUES THAT

02:58PM 2    WOULD AT THE VERY LEAST MAKE YOU SUSCEPTIBLE TO THE CONTRACTION

02:58PM 3    OF COVID-19.  I WONDER IF YOU COULD TELL US ABOUT THAT AND IF

02:58PM 4    THERE'S ANYTHING ABOUT THAT THAT WOULD AFFECT YOUR JURY

02:58PM 5    SERVICE.

02:58PM 6        PROSPECTIVE JUROR:  IT'S NOT VERY SERIOUS, BUT I'M A

02:58PM 7    LITTLE BIT IMMUNOCOMPROMISED, SO I'M JUST MORE SUSCEPTIBLE.  IF

02:58PM 8    I GET COVID, IT WILL HURT ME MORE.

02:59PM 9        MR. DOWNEY:  ARE THE PROCEDURES THAT HAVE BEEN

02:59PM 10   DESCRIBED TODAY BY JUDGE DAVILA, DOES THAT MAKE YOU COMFORTABLE

02:59PM 11   IN TERMS OF SERVING AS A JUROR IF YOU'RE SELECTED?

02:59PM 12       PROSPECTIVE JUROR:  I'M SORRY, COULD YOU SAY THAT

02:59PM 13   AGAIN?

02:59PM 14       MR. DOWNEY:  YES.  WOULD YOU BE COMFORTABLE IF

02:59PM 15   YOU'RE SERVING AS A JUROR, IF YOU'RE SELECTED, GIVEN WHAT

02:59PM 16   JUDGE DAVILA SAID THIS MORNING ABOUT THE PROCEDURES IN THE

02:59PM 17   COURTROOM?

02:59PM 18       PROSPECTIVE JUROR:  YEAH, WITH ALL OF THE SAFETY

02:59PM 19   PRECAUTIONS I'M COMFORTABLE.

02:59PM 20       MR. DOWNEY:  SO YOU WOULD BE ABLE TO FOCUS DURING

02:59PM 21   THE TRIAL ABOUT WHAT WAS GOING ON AND NOT BE DISTRACTED?

02:59PM 22       PROSPECTIVE JUROR:  FOR THE MOST PART.

02:59PM 23       MR. DOWNEY:  VERY GOOD.  THANK YOU, SIR.

02:59PM 24       YOU ALSO SAID IN RESPONSE TO YOUR QUESTIONNAIRE THAT YOU

02:59PM 25   HAD A BIAS AGAINST CERTAIN POSITIONS IN BUSINESS, AND THAT

02:59PM  1    INCLUDES C-LEVEL PEOPLE LIKE CEO'S.

02:59PM  2        DO YOU REMEMBER WRITING THAT?

02:59PM  3            PROSPECTIVE JUROR:  UH-HUH.

02:59PM  4            MR. DOWNEY:  TELL US ABOUT THAT.  WHERE DOES THAT

02:59PM  5    VIEW COME FROM, AND TELL US WHY YOU HAVE THAT VIEW.

03:00PM  6            PROSPECTIVE JUROR:  PLEASE STOP ME IF I SAY

03:00PM  7    SOMETHING I AM NOT SUPPOSED TO.

03:00PM  8        I WAS FIRED FROM MY LAST TWO JOBS BOTH BECAUSE OF OUR

03:00PM  9    MANAGEMENT USING MONEY WHERE THEY'RE NOT SUPPOSED TO.

03:00PM 10        I WAS SUPPOSED TO KEEP THE JOB, BUT BECAUSE OF THEIR

03:00PM 11    ACTIONS I WAS -- THEY TOLD ME THAT THEY COULDN'T KEEP ME ON

03:00PM 12    DESPITE OUR WHOLE TEAM WANTING ME TO CONTINUE AT THE JOB

03:00PM 13    BECAUSE OF LACK OF MONEY.

03:00PM 14        SO IT GAVE ME A HUGE DISTRUST WITH SOMEONE WHO IS NOT

03:00PM 15    TRANSPARENT WITH USING COMPANY MONEY.

03:00PM 16            MR. DOWNEY:  OKAY.  YOU SAID IN YOUR QUESTIONNAIRE

03:00PM 17    THAT THAT'S LEFT YOU, I THINK, WITH SOME INCLINATION TO THINK

03:00PM 18    THAT PEOPLE IN HIGH LEVEL MANAGEMENT MIGHT BE MORE LIKELY TO BE

03:00PM 19    GUILTY THAN OTHER INDIVIDUALS.  IS THAT RIGHT?

03:01PM 20            PROSPECTIVE JUROR:  AFTER COMING HERE AND LISTENING

03:01PM 21    TO MORE ABOUT BIASES, I AM MORE OPEN TO KIND OF PUT THOSE

03:01PM 22    ISSUES ASIDE.

03:01PM 23        BUT THE FEELING OF UNTRUST, BECAUSE IT WAS LOSING TWO JOBS

03:01PM 24    THAT I LOVED, IT WAS A VERY HARD AND TRAUMATIC THING TO ME.

03:01PM 25        SO WHILE I WANT TO SAY THAT I CAN PUT THOSE BIASES ASIDE,

03:01PM 1    THAT FEELING OF UNTRUST IS STILL THERE.

03:01PM 2             MR. DOWNEY:  OKAY.  AND CAN YOU SAY A LITTLE BIT

03:01PM 3    MORE WITH RESPECT TO THAT FEELING, WHAT IT MAKES YOU THINK

03:01PM 4    ABOUT SENIOR LEVEL EXECUTIVES IN A COMPANY?

03:01PM 5             PROSPECTIVE JUROR:  AS LONG AS THEY'RE NOT

03:01PM 6    TRANSPARENT ABOUT THE MONEY THAT THEY'RE USING IT FOR, IT MAKES

03:01PM 7    ME SORT OF BELIEVE THAT THEY'RE USING IT FOR PERSONAL GAIN AND

03:01PM 8    NOT THE COMPANY'S GROWTH.

03:02PM 9        ME BEING FIRED KIND OF MAKES ME FEEL, EVEN THOUGH I KNOW

03:02PM 10   IT'S NOT, I FEEL THE FEELING OF BETRAYAL THAT THEY DIRECTLY DID

03:02PM 11   SOMETHING TO HARM ME.

03:02PM 12            MR. DOWNEY:  WELL, I APPRECIATE YOU BEING SO OPEN

03:02PM 13   ABOUT THAT WITH US, AND I'M SORRY I HAVE TO ASK YOU ABOUT IT,

03:02PM 14   BUT WE'RE DOING OUR BEST TO JUST MAKE SURE THAT THE JURORS ARE

03:02PM 15   APPROPRIATE FOR THE CASE.

03:02PM 16       MY LAST SET OF QUESTIONS IS FOR JUROR NUMBER 95, MR. KRAY.

03:02PM 17   I ALSO WANTED TO JUST ASK YOU ABOUT THE COVID SITUATION.

03:02PM 18       I KNOW YOU HAVE SOME CONCERNS ABOUT, WITHOUT GETTING INTO

03:02PM 19   THE DETAILS, YOU LIVE WITH SOME PEOPLE WHO ARE UNVACCINATED.

03:02PM 20   IS THAT A CONCERN THAT YOU STILL HAVE?

03:03PM 21            PROSPECTIVE JUROR:  ACTUALLY MY DAUGHTER HAS NOW

03:03PM 22   BEEN VACCINATED, SO IT'S NOT A CONCERN.

03:03PM 23            MR. DOWNEY:  SO NOTHING ABOUT THE HEALTH ISSUES IN

03:03PM 24   THIS CASE?

03:03PM 25            PROSPECTIVE JUROR:  NO.  NO.

03:03PM 1          MR. DOWNEY:  YOU ALSO MENTIONED IN CONNECTION WITH

03:03PM 2    THE QUESTIONNAIRE THAT YOU HAD WATCHED A COUPLE OF

03:03PM 3    DOCUMENTARIES THAT RELATE TO THERANOS.

03:03PM 4          PROSPECTIVE JUROR:  WATCHED OR READ.  I DON'T REALLY

03:03PM 5    REMEMBER.

03:03PM 6          MR. DOWNEY:  YOU DON'T REALLY REMEMBER ANYTHING

03:03PM 7    ABOUT THE DOCUMENTARIES?

03:03PM 8          PROSPECTIVE JUROR:  I DON'T REMEMBER WHETHER I

03:03PM 9    WATCHED OR READ, BUT I'VE CONSUMED SOME NEWS.

03:03PM 10          MR. DOWNEY:  OH, I'M SORRY.  YEAH.  I UNDERSTAND.

03:03PM 11      AND DID YOU HAVE ANY REACTION TO THAT IN TERMS OF BEING

03:03PM 12    VIEWED AS NEGATIVE OR POSITIVE?

03:03PM 13          PROSPECTIVE JUROR:  I THINK I VIEWED IT AS NEGATIVE.

03:03PM 14          MR. DOWNEY:  OKAY.  AND THAT INCLUDED WITH RESPECT

03:03PM 15    TO MS. HOLMES?

03:03PM 16          PROSPECTIVE JUROR:  YES.

03:03PM 17          MR. DOWNEY:  OKAY.  HAVE YOU DISCUSSED THAT WITH

03:03PM 18    ANYBODY?

03:03PM 19          PROSPECTIVE JUROR:  NOT THAT I CAN REMEMBER.

03:03PM 20          MR. DOWNEY:  OKAY.  AND WAS THAT STILL A VIEW THAT

03:03PM 21    YOU HELD WHEN YOU FILLED OUT THE QUESTIONNAIRE?

03:03PM 22          PROSPECTIVE JUROR:  I THINK THAT'S HOW I'M COMING IN

03:04PM 23    RIGHT NOW, YES.

03:04PM 24          MR. DOWNEY:  OKAY.

03:04PM 25          PROSPECTIVE JUROR:  IT DOESN'T MEAN I WON'T CHANGE

03:04PM   1   MY MIND.  BUT, YES, THAT'S THE PERCEPTION THAT I HAVE, YES.

03:04PM   2            MR. DOWNEY:  OKAY.  AND INDEED I NOTICED, AGAIN,

03:04PM   3   BEING VERY I THINK OPEN AND HONEST, WHICH I CERTAINLY

03:04PM   4   APPRECIATE, YOU, IN RESPONSE TO THE GENERAL QUESTION ABOUT

03:04PM   5   WHETHER WHEN A PERSON IS CHARGED WITH A CRIME THEY'RE PROBABLY

03:04PM   6   GUILTY, YOU CHECKED THAT BOX THAT, YES, PEOPLE WHO ARE CHARGED

03:04PM   7   WITH A CRIME ARE PROBABLY GUILTY.

03:04PM   8            PROSPECTIVE JUROR:  THAT'S CORRECT.

03:04PM   9            MR. DOWNEY:  AND THAT'S A VIEW THAT YOU HAVE BASED

03:04PM  10   ON YOUR LIFE EXPERIENCE?

03:04PM  11            PROSPECTIVE JUROR:  YEAH.  CALL IT A STATISTICAL

03:04PM  12   VIEW.

03:04PM  13            MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.

03:04PM  14            PROSPECTIVE JUROR:  SURE.

03:04PM  15            MR. DOWNEY:  MR. KRAY IS OUR LAST JUROR TODAY.

03:05PM  16        (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

03:05PM  17            MR. DOWNEY:  I JUST WANT TO ASK TWO QUESTIONS OF THE

03:05PM  18   ENTIRE PANEL.

03:05PM  19        IS THERE ANYTHING THAT ANYONE FEELS LIKE THEY SAID IN THE

03:05PM  20   QUESTIONNAIRE -- WE'LL START WITH THE QUESTIONNAIRE -- THAT

03:05PM  21   THEY SAID IN THE QUESTIONNAIRE THAT IS INACCURATE OR THEY WOULD

03:05PM  22   LIKE TO CHANGE?

03:05PM  23        THAT'S JUROR NUMBER 95.

03:05PM  24            THE COURT:  MR. KRAY.

03:05PM  25            PROSPECTIVE JUROR:  I THINK THERE WAS SOMETHING

03:05PM   1    ABOUT RELIGION AND I ANSWERED NO FROM THAT QUESTION.

03:05PM   2         THERE IS NOTHING THAT PREVENTS ME FROM BEING A JUROR, BUT

03:06PM   3    I DO HAVE HOLIDAYS COMING UP, WHICH SEVERAL OVERLAP WITH

03:06PM   4    SCHEDULED COURT DAYS WHICH I WILL NOT BE ABLE TO BE PRESENT.

03:06PM   5         MR. DOWNEY:  THANK YOU, SIR.

03:06PM   6         THE COURT:  WHAT ARE THOSE?  I'M SORRY, MR. KRAY.

03:06PM   7    WHAT ARE THOSE?  SPEAK INTO THE MICROPHONE.

03:06PM   8         GO AHEAD.

03:06PM   9         PROSPECTIVE JUROR:  CAN YOU HEAR ME?

03:06PM  10         THE COURT:  YES.

03:06PM  11         PROSPECTIVE JUROR:  WHAT DID YOU WANT ME TO REPEAT?

03:06PM  12         THE COURT:  WHAT YOU JUST SAID ABOUT --

03:06PM  13         PROSPECTIVE JUROR:  THERE ARE SEVERAL RELIGIOUS

03:06PM  14    HOLIDAYS THAT ARE COMING UP IN SEPTEMBER.  FIVE OF THOSE DAYS

03:06PM  15    OVERLAP WITH THE SCHEDULED TRIAL DATES, AND I WOULD NOT BE ABLE

03:06PM  16    TO BE PRESENT.

03:06PM  17         THE COURT:  I SEE.  CAN YOU PROVIDE US THOSE DATES?

03:06PM  18    DO YOU KNOW THEM?

03:06PM  19         PROSPECTIVE JUROR:  THE 8TH, 21ST, 22ND, 28TH, AND

03:06PM  20    29TH.  THOSE ARE THE ONES THAT OVERLAP.

03:06PM  21         THE COURT:  WITH THE TRIAL?

03:06PM  22         PROSPECTIVE JUROR:  YES.

03:06PM  23         THE COURT:  I SEE.  THANK YOU, SIR.  THANK YOU.

03:06PM  24         MR. DOWNEY:  IS THERE ANYONE ELSE WHO WOULD CHANGE

03:06PM  25    OR MODIFY ANYTHING THAT THEY'VE SAID IN RESPONSE TO THE

03:07PM  1    QUESTIONS IN THE QUESTIONNAIRE?

03:07PM  2         IS THERE ANYTHING, ANY ANSWERS THAT ANYONE HAS GIVEN TODAY

03:07PM  3    TO ANY OF US, MR. SCHENK AND MYSELF, JUDGE DAVILA, THAT THEY

03:07PM  4    WOULD LIKE TO COMMENT FURTHER ON OR MODIFY IN ANY WAY?

03:07PM  5         YES, MA'AM, MS. GROGAN.

03:07PM  6              PROSPECTIVE JUROR:  YES, EARLIER -- I DON'T NEED THE

03:07PM  7    MIKE.  THIS IS CLOSE.

03:07PM  8         YOU HAD ASKED --

03:07PM  9              THE COURT:  CAN WE GET THE MIKE?

03:07PM  10             PROSPECTIVE JUROR:  YOU HAD ASKED WHETHER OR NOT I

03:07PM  11   HAD AN OPINION ABOUT READING "BAD BLOOD" AND I BELIEVE I SAID

03:07PM  12   NO.

03:07PM  13        AND AFTER THINKING ABOUT THAT SOME MORE, I DON'T KNOW THAT

03:07PM  14   THAT'S ENTIRELY ACCURATE.  I DO BELIEVE THAT I CAME OUT OF

03:07PM  15   READING THAT HAVING OPINIONS AND SOME DISAPPOINTMENT AND SOME

03:07PM  16   NEGATIVITY, SO I DON'T THINK IT'S FAIR FOR ME TO HAVE SAID NO

03:07PM  17   TO THAT QUESTION.

03:07PM  18             MR. DOWNEY:  I APPRECIATE THAT.  THANK YOU.

03:08PM  19        ANYONE ELSE WANT TO CHANGE OR MODIFY ANYTHING OR PROVIDE

03:08PM  20   ANY FURTHER INFORMATION IN CONNECTION WITH THE QUESTIONS THAT

03:08PM  21   HAVE BEEN ASKED TODAY?

03:08PM  22        THANK YOU VERY MUCH FOR YOUR PATIENCE.  THANK YOU FOR YOUR

03:08PM  23   TIME.

03:08PM  24        YOUR HONOR, I HAVE NOTHING FURTHER FOR THE PANEL.

03:08PM  25             THE COURT:  THANK YOU.  WE'RE GOING TO TAKE A BREAK

03:08PM  1      IN JUST A MOMENT, BUT I DO WANT TO FOLLOW UP WITH MR. RISHI.

03:08PM  2          MR. RISHI, THANK YOU.  YOUR LAST CONVERSATION WITH

03:08PM  3   MR. DOWNEY WHERE I THINK HE USED THE PHRASE "INFORMATION

03:08PM  4   ATTRIBUTION."  I THINK THIS WAS THE CONCEPT THAT YOU'VE READ A

03:08PM  5   LOT ABOUT THERANOS, ABOUT THIS CASE OVER THE YEARS.

03:08PM  6          I THINK YOU TOLD US -- I THINK YOU SAID THAT YOU WILL HAVE

03:08PM  7   A BIAS GOING IN ABSOLUTELY I THINK IS WHAT YOU SAID.

03:08PM  8          BUT CAN YOU INFORM US WHETHER OR NOT -- THERE WAS ANOTHER

03:08PM  9   CONCEPT ABOUT, WILL YOU BE ABLE TO PUT THAT BIAS ASIDE TO SIT

03:08PM 10   AS A FAIR AND IMPARTIAL JUROR IN THIS CASE?  IS THAT SOMETHING

03:09PM 11   THAT YOU THINK YOU CAN DO?

03:09PM 12          PROSPECTIVE JUROR:  THAT'S RIGHT.  AND THAT'S WHAT I

03:09PM 13   SIGNALLED BEFORE ALSO IS THAT -- AND I WAS USING THE WORD

03:09PM 14   "INFORMATION ATTRIBUTION" AS A VEHICLE TO TRY TO GET TO THAT

03:09PM 15   POINT OF BEING ABLE TO SAY WHILE I DO BELIEVE I HAVE PRIOR

03:09PM 16   KNOWLEDGE, AGAIN, I ALSO APPRECIATE YOUR COMMENTS ABOUT KEEPING

03:09PM 17   THIS AS A UNIVERSE OF INFORMATION WHEN MAKING THE DECISION.

03:09PM 18          SO THE WAY TO GET THERE WAS TO BE ABLE TO RECOGNIZE WHAT

03:09PM 19   IT WAS THAT I KNOW BEFOREHAND, AND THIS IS WHAT I LEARNED HERE

03:09PM 20   TO GET TO THAT POINT.

03:09PM 21          THE COURT:  AGAIN, THIS IS A -- IT'S NOT AN ACADEMIC

03:09PM 22   DISCUSSION, IT'S SOMETHING THAT WE STRIVE TO DO, BUT WE'RE ALL

03:09PM 23   HUMANS.  AND YOU HEARD ME TALK ABOUT UNREAD A BOOK, UNRING A

03:09PM 24   BELL.  THAT'S IMPOSSIBLE, OF COURSE.

03:09PM 25          SO WHAT WE ASK YOU TO DO IS YOU HAVE THIS EXPERIENCE OF

03:09PM 1    YOUR LITERATURE AND WATCHING AND READING, BUT THE QUESTION

03:10PM 2    AGAIN IS -- AND I'M SORRY TO BELABOR THIS FOR YOU -- BECAUSE I

03:10PM 3    THINK I HEARD YOU SAY YOU CAN DO THAT, YOU CAN PUT THAT ASIDE,

03:10PM 4    THAT IS, EVERYTHING THAT YOU HAVE READ, SEEN, OR HEARD, AND

03:10PM 5    DECIDE, IF YOU'RE SELECTED AS A JUROR IN THIS CASE, YOU CAN

03:10PM 6    DECIDE THIS CASE, MAKE YOUR DECISION BASED ONLY ON THE EVIDENCE

03:10PM 7    IN THIS CASE AND NOT ON ANY OUTSIDE PERIPHERAL INFORMATION.

03:10PM 8              PROSPECTIVE JUROR:  THAT IS INDEED WHAT I BELIEVE I

03:10PM 9    CAN DO.

03:10PM 10             THE COURT:  OKAY.  THANK YOU, SIR.  THANK YOU FOR

03:10PM 11   THAT.

03:10PM 12         ANY FOLLOWUP ON THAT FROM EITHER COUNSEL?

03:10PM 13             MR. SCHENK:  NO, YOUR HONOR.

03:10PM 14             MR. DOWNEY:  NO, YOUR HONOR.

03:10PM 15             THE COURT:  WE'RE GOING TO TAKE A RECESS.

03:10PM 16         MR. LEE, THIS WOULD PROBABLY BE A GOOD TIME FOR US TO

03:10PM 17   SPEAK WITH YOU ABOUT THOSE ISSUES.  SO IF YOU WOULD REMAIN?

03:10PM 18         WE'LL TAKE ABOUT 15 MINUTES.

03:10PM 19         MS. GROGAN, I'D LIKE TO HAVE YOU COME BACK A LITTLE EARLY

03:10PM 20   SO WE CAN JUST HAVE A LITTLE FOLLOWUP WITH YOU AS WELL, PLEASE.

03:10PM 21             PROSPECTIVE JUROR:  WHAT TIME WOULD YOU LIKE ME?

03:10PM 22             THE COURT:  YES, RIGHT.  WELL, WE'LL TAKE

03:11PM 23   15 MINUTES.  I THINK WE'LL BE ABOUT 10 MINUTES WITH MR. LEE,

03:11PM 24   MAYBE NO MORE THAN THAT.  THEN WE'LL BE HAPPY TO TAKE YOU UP IF

03:11PM 25   THAT'S CONVENIENT.

03:11PM  1          PROSPECTIVE JUROR:  SURE.

03:11PM  2          THE COURT:  OKAY.  ALL RIGHT.  LET'S TAKE A BREAK

03:11PM  3    NOW FOR ABOUT 15 MINUTES.

03:11PM  4       FOLKS, DO NOT DISCUSS ANYTHING ABOUT THIS CASE.  DO NOT

03:11PM  5    READ ANYTHING ABOUT THIS CASE.  PLEASE KEEP AN OPEN MIND AND

03:11PM  6    WE'LL SEE YOU IN 15 MINUTES.

03:11PM  7       THEY'RE GOING DOWNSTAIRS?

03:11PM  8          THE CLERK:  THEY NEED TO REPORT BACK HERE IN

03:11PM  9    15 MINUTES.  THANK YOU.

03:11PM  10         (JURY OUT AT 3:11 P.M.)

03:11PM  11         THE COURT:  COUNSEL, DO YOU WANT TO TAKE FIVE

03:11PM  12   MINUTES BEFORE WE ENGAGE MR. LEE, OR DO YOU WANT TO GO FORWARD

03:12PM  13   NOW?

03:12PM  14         MR. DOWNEY:  WHY DON'T WE TAKE FIVE MINUTES NOW,

03:12PM  15   YOUR HONOR?

03:12PM  16         THE COURT:  OKAY.  MR. LEE, WE'RE GOING TO TAKE

03:12PM  17   FIVE MINUTES NOW.  YES, IF YOU WANT TO TAKE A BREAK AND COME

03:12PM  18   BACK IN FOUR MINUTES, THAT WOULD BE GREAT.  THANK YOU.

03:12PM  19         PROSPECTIVE JUROR:  I JUST WANT TO ASK IF I COULD

03:12PM  20   TALK TO THE JUDGE PRIVATELY, OR WHENEVER I CAN.

03:12PM  21         (DISCUSSION OFF THE RECORD.)

03:12PM  22         THE CLERK:  CAN YOU GIVE US YOUR JUROR NUMBER,

03:12PM  23   PLEASE?

03:12PM  24         PROSPECTIVE JUROR:  42.

03:12PM  25         THE COURT:  LET'S WAIT UNTIL EVERYONE HAS GONE,

| | | |
|---|---|---|
| 03:12PM | 1 | MA'AM, AND -- |
| 03:12PM | 2 | THE CLERK:  MS. HERNANDEZ PEREZ? |
| 03:12PM | 3 | PROSPECTIVE JUROR:  YES. |
| 03:12PM | 4 | THE COURT:  AND YOU'VE EXPRESSED AN INTEREST, |
| 03:12PM | 5 | THROUGH MS. KRATZMANN, YOU WANT TO TALK TO -- |
| 03:12PM | 6 | PROSPECTIVE JUROR:  TO LIKE YOU PRIVATELY ON ONE OF |
| 03:13PM | 7 | THE QUESTIONS. |
| 03:13PM | 8 | THE COURT:  I SEE.  YOU WANT TO SPEAK ABOUT ONE OF |
| 03:13PM | 9 | THE QUESTIONS PRIVATELY WITHOUT ALL OF THE OTHER JURORS HERE? |
| 03:13PM | 10 | PROSPECTIVE JUROR:  YES. |
| 03:13PM | 11 | THE COURT:  OKAY.  WE'LL TAKE THAT UP IN -- I THINK |
| 03:13PM | 12 | THESE LAWYERS NEED A BREAK. |
| 03:13PM | 13 | PROSPECTIVE JUROR:  YEAH, THAT'S FINE. |
| 03:13PM | 14 | THE COURT:  SO WE'LL TAKE THAT UP IN JUST A MOMENT. |
| 03:13PM | 15 | PROSPECTIVE JUROR:  THANK YOU. |
| 03:13PM | 16 | THE COURT:  THANK YOU. |
| 03:13PM | 17 | (RECESS FROM 3:13 P.M. UNTIL 3:23 P.M.) |
| 03:23PM | 18 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 03:23PM | 19 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN, EXCEPT MS. HOLMES |
| 03:23PM | 20 | WILL BE HERE IN A MOMENT. |
| 03:24PM | 21 | (PAUSE IN PROCEEDINGS.) |
| 03:24PM | 22 | (JURY OUT AT 3:24 P.M.) |
| 03:24PM | 23 | (ONLY PROSPECTIVE JUROR LEE PRESENT.) |
| 03:24PM | 24 | THE COURT:  WE'RE BACK ON THE RECORD.  COUNSEL ARE |
| 03:24PM | 25 | PRESENT AND MS. HOLMES IS NOT PRESENT. |

03:24PM  1      MR. LEE, HE IS PRESENT.  HE WANTED TO SPEAK PRIVATELY WITH

03:24PM  2  COURT AND COUNSEL.

03:24PM  3      LET ME ASK, MR. DOWNEY, SHOULD WE PROCEED WITH THIS

03:24PM  4  CONVERSATION WITH YOUR CONSENT?

03:24PM  5      MR. DOWNEY:  YOU MAY, YOUR HONOR.  WE CAN DO THAT

03:24PM  6  HERE OR IN THE JURY ROOM AS YOUR HONOR HAD MENTIONED

03:24PM  7  PREVIOUSLY.

03:24PM  8      I THOUGHT THAT SOME OF THE JURORS IN EXPRESSING THESE

03:25PM  9  CONCERNS WANTED TO SPEAK WITH THE PARTIES AND THE COURT.  I'M

03:25PM 10  NOT SURE.

03:25PM 11      THEY CAN OBVIOUSLY BE ASKED ABOUT THAT.

03:25PM 12      THE COURT:  BUT FOR PURPOSES OF THESE MEETINGS,

03:25PM 13  THOUGH, YOUR CLIENT IS NOT PRESENT AND YOU'RE AGREEING TO WAIVE

03:25PM 14  HER PRESENCE FOR THIS CONVERSATION WITH THESE JURORS?

03:25PM 15      MR. DOWNEY:  YES, YOUR HONOR.

03:25PM 16      THE COURT:  OKAY.  THANK YOU.  THANK YOU.

03:25PM 17      ANY COMMENT FROM THE GOVERNMENT?

03:25PM 18      MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

03:25PM 19      THE COURT:  MR. LEE, YOU'RE PRESENT, SIR, AND YOU

03:25PM 20  WANTED TO SPEAK PRIVATELY WITH THE LAWYERS AND MYSELF.  IS THIS

03:25PM 21  A GOOD TIME TO DO THAT?  DO YOU WANT TO DO THAT NOW?

03:25PM 22      PROSPECTIVE JUROR:  SURE.

03:25PM 23      THE COURT:  SURE.  WHY DON'T YOU COME FORWARD TO THE

03:25PM 24  MICROPHONE.

03:25PM 25      LET ME ASK YOU, MR. LEE, WE'RE STILL IN A PUBLIC

03:25PM  1    COURTROOM, IN OTHER WORDS, IT'S OPEN TO THE PUBLIC.  I JUST

03:25PM  2    WANT YOU TO BE AWARE OF THAT BEFORE YOU MAKE ANY COMMENTS.  IF

03:25PM  3    THERE'S SOMETHING THAT YOU'RE GOING TO SAY THAT YOU DON'T WANT

03:25PM  4    THE PUBLIC TO KNOW, YOU NEED TO LET ME KNOW AND THE REASONS FOR

03:26PM  5    THAT.

03:26PM  6         BUT IF YOU'RE OTHERWISE COMFORTABLE SPEAKING OUTSIDE OF

03:26PM  7    THE PRESENCE OF THE OTHER JURORS, OTHERWISE RECOGNIZING THAT

03:26PM  8    THIS IS STILL A PUBLIC COURTROOM, I'M HAPPY TO HEAR FROM YOU,

03:26PM  9    SIR.

03:26PM  10            PROSPECTIVE JUROR:  THE THING I WANT TO TALK ABOUT

03:26PM  11   MIGHT MAKE ME VERY EMOTIONAL.  SO I DON'T KNOW -- I DON'T THINK

03:26PM  12   THAT'S A THING THAT I WANT TO SHOW OTHERS.

03:26PM  13            THE COURT:  I SEE.  ALL RIGHT.  DO YOU THINK THAT

03:26PM  14   WHAT YOU WANT TO SPEAK ABOUT IS SOMETHING PRIVATE TO YOU

03:26PM  15   PERSONALLY?

03:26PM  16            PROSPECTIVE JUROR:  UH-HUH.

03:26PM  17            THE COURT:  AND WILL THIS CAUSE YOU, IF IT'S IN THE

03:26PM  18   PUBLIC FORUM, WILL IT CAUSE YOU -- I'M NOT CERTAIN OF THE

03:26PM  19   EFFECT OF THAT.

03:26PM  20        ARE YOU CONCERNED THAT YOUR EMOTIONAL DISPLAY, IF YOU

03:26PM  21   BECOME EMOTIONAL, THAT'S SOMETHING THAT YOU DON'T WANT FOLKS TO

03:26PM  22   SEE?  OR IS THE INFORMATION SUCH THAT IT'S PRIVATE,

03:26PM  23   CONFIDENTIAL, AND SENSITIVE TO YOU, YOUR FAMILY, OR A PERSONAL

03:27PM  24   INTEREST?

03:27PM  25            PROSPECTIVE JUROR:  IT'S NOT THAT SENSITIVE, BUT I

03:27PM 1    JUST WORRY ABOUT WHETHER OR NOT IT WOULD INFLUENCE ABOUT HOW

03:27PM 2    OTHERS PERCEIVE THIS.  MAYBE NOT.

03:27PM 3              THE COURT:  OTHER PROSPECTIVE JURORS YOU MEAN?

03:27PM 4              PROSPECTIVE JUROR:  YEAH.

03:27PM 5              THE COURT:  OKAY.  ARE YOU COMFORTABLE TALKING NOW?

03:27PM 6              PROSPECTIVE JUROR:  SURE.

03:27PM 7              THE COURT:  IF YOU'RE NOT, TELL ME.  BUT IF YOU ARE,

03:27PM 8    WE CAN HAVE OUR CONVERSATION NOW.

03:27PM 9              PROSPECTIVE JUROR:  SURE.

03:27PM 10             THE COURT:  GO RIGHT AHEAD, SIR, IF YOU WOULD LIKE.

03:27PM 11             PROSPECTIVE JUROR:  SO YOU ASKED ABOUT WHETHER I HAD

03:27PM 12   ANY FAMILY MEMBERS WHO ARE RELATED TO CHILD ABUSE, LIKE ANY

03:27PM 13   CHILD ABUSE CASES.

03:27PM 14             THE COURT:  YES.

03:27PM 15             PROSPECTIVE JUROR:  SO THERE IS ONE FROM WITH MY

03:27PM 16   FAMILY WHERE MY LITTLE BROTHER, HE WAS -- HE ACCUSED MY MOTHER

03:27PM 17   OF ABUSING HIM WHEN HE WAS A KID, AND THIS WENT TO TRIAL.  THAT

03:27PM 18   CASE HAS BEEN A HUGE THING IN OUR FAMILY WHERE EVEN TO THIS DAY

03:28PM 19   WE STILL TALK ABOUT IT, AND EVERY TIME IT COMES UP, IT CAUSES A

03:28PM 20   LOT OF EMOTIONAL DISTRESS.

03:28PM 21        SO I THINK IF I DO -- I WANT TO BE IMPARTIAL, BUT WHEN I

03:28PM 22   DO HEAR ANYTHING WITH ABUSE, IT DOES MAKE ME VERY, VERY

03:28PM 23   EMOTIONAL.

03:28PM 24             THE COURT:  THANK YOU, SIR.

03:28PM 25        SIR, IS IT CHILD ABUSE?  IS IT ABUSE IN GENERAL?

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 03:28PM  | 1  | PROSPECTIVE JUROR:  IT'S CHILD ABUSE.                         |
| 03:28PM  | 2  | THE COURT:  OKAY.  I'M, I'M -- I HAVE CONFIDENCE              |
| 03:28PM  | 3  | THAT THERE ARE NOT ANY ISSUES IN THIS CASE REGARDING CHILD    |
| 03:28PM  | 4  | ABUSE.                                                        |
| 03:28PM  | 5  | AM I RIGHT ABOUT THAT?                                        |
| 03:28PM  | 6  | MR. SCHENK:  YOU'RE CORRECT.                                  |
| 03:28PM  | 7  | MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.                        |
| 03:28PM  | 8  | THE COURT:  SO, SIR, THERE WILL NOT BE ANY ISSUES IN          |
| 03:28PM  | 9  | THIS CASE RELATED TO CHILD ABUSE.                             |
| 03:28PM  | 10 | DOES THAT GIVE YOU SOME COMFORT?                              |
| 03:28PM  | 11 | PROSPECTIVE JUROR:  YES, ABSOLUTELY.                          |
| 03:28PM  | 12 | THE COURT:  ANYTHING ELSE YOU WOULD LIKE ME TO KNOW?          |
| 03:28PM  | 13 | PROSPECTIVE JUROR:  I BELIEVE THERE'S ANOTHER                 |
| 03:29PM  | 14 | QUESTION ABOUT WHETHER I WOULD BE IMPARTIAL TO IF POLICE      |
| 03:29PM  | 15 | OFFICERS OR LAW ENFORCEMENT --                                |
| 03:29PM  | 16 | THE COURT:  YES.                                              |
| 03:29PM  | 17 | PROSPECTIVE JUROR:  -- GAVE -- PERSONALLY, I THINK I          |
| 03:29PM  | 18 | AM IMPARTIAL TO IT, BUT MY EXPERIENCE, I ALSO WROTE THIS ON MY|
| 03:29PM  | 19 | FORM OR THE QUESTIONNAIRE, BUT MY EXPERIENCE WITH LAW         |
| 03:29PM  | 20 | ENFORCEMENT, I'VE ONLY FELT LIFE THREATENING EXPERIENCES FROM |
| 03:29PM  | 21 | THEM.                                                         |
| 03:29PM  | 22 | SO RIGHT NOW MY MIND IS CLEAR THAT I THINK I AM IMPARTIAL,    |
| 03:29PM  | 23 | BUT WHEN IT COMES TO THE MOMENT IF -- UNLESS THEY'RE GIVING   |
| 03:29PM  | 24 | LIKE NUMERICAL FACTS.  IF THEY'RE TALKING ABOUT -- IF THEY'RE |
| 03:29PM  | 25 | DEFENDING OR ACCUSING, I DON'T THINK I CAN FULLY TRUST THAT.  |

03:29PM 1          THE COURT:  I SEE.

03:29PM 2       SO IF THE LAW ENFORCEMENT, THE AGENTS ARE SPEAKING ABOUT

03:30PM 3    FACTS, NUMERICAL FACTS, DATA, YOU'RE OKAY WITH THAT?

03:30PM 4          PROSPECTIVE JUROR:  I'M PRETTY SURE I WOULD BE OKAY

03:30PM 5    WITH THAT.

03:30PM 6          THE COURT:  BUT THE CONFLICT YOU HAVE IS WITH LAW

03:30PM 7    ENFORCEMENT OFFICERS --

03:30PM 8          PROSPECTIVE JUROR:  IF THEY HAVE ANY INTENTION ON

03:30PM 9    BEING ON EITHER SIDE, LIKE IF THEY ARE TRYING TO CONVINCE US

03:30PM 10   OF -- LIKE IF THEY HAVE ANY INTENTION OF BEING THE ACCUSER OR

03:30PM 11   PART OF THE DEFENSE.

03:30PM 12         THE COURT:  IF THE LAW ENFORCEMENT OFFICER IS

03:30PM 13   ACCUSING OR -- THERE MAY BE -- I THINK YOU'LL HEAR TESTIMONY

03:30PM 14   FROM POSSIBLY AGENTS AND OTHER GOVERNMENT REPRESENTATIVES.

03:30PM 15      MR. SCHENK, CAN YOU OR ANYONE ON YOUR TEAM ADD A LITTLE

03:30PM 16   CLARITY TO THAT?

03:30PM 17         MR. SCHENK:  YES, YOUR HONOR, THAT'S CORRECT.

03:30PM 18      THERE CERTAINLY IS THE POSSIBILITY THAT LAW ENFORCEMENT

03:30PM 19   AGENTS WOULD TESTIFY ABOUT FACTS THAT THEY LEARNED DURING THE

03:30PM 20   COURSE OF THE INVESTIGATION, OR ALSO MAYBE GOVERNMENT

03:31PM 21   REGULATORS WHO COME IN AND TALK ABOUT WORK THAT THEY DID

03:31PM 22   THROUGH ENFORCEMENT OF REGULATIONS, AUDITS, THINGS LIKE THAT.

03:31PM 23         THE COURT:  I SEE.  ARE THERE -- HOW SHALL I

03:31PM 24   SAY? -- POLICE OFFICERS, BEAT OFFICERS, PATROL OFFICERS, ANY OF

03:31PM 25   THOSE TYPES OF TESTIMONY ANTICIPATED?

03:31PM   1                    MR. SCHENK:  NO LOCAL LEVEL LAW ENFORCEMENT, JUST

03:31PM   2       FEDERAL LAW ENFORCEMENT.

03:31PM   3                    THE COURT:  I SEE.

03:31PM   4             DOES THAT ASSIST YOU, SIR?

03:31PM   5                    PROSPECTIVE JUROR:  YEAH, THAT COMPLETELY DOES

03:31PM   6       ANSWER MY QUESTIONS.

03:31PM   7                    THE COURT:  ANY QUESTIONS, MR. DOWNEY?

03:31PM   8                    MR. DOWNEY:  NO, YOUR HONOR.  THANK YOU.

03:31PM   9                    THE COURT:  ANYTHING ELSE, MR. LEE, YOU WOULD LIKE

03:31PM   10      US TO KNOW?

03:31PM   11                   PROSPECTIVE JUROR:  NO.

03:31PM   12                   THE COURT:  DO YOU HAVE ANY QUESTIONS FOR ME OR ANY

03:31PM   13      QUESTIONS I CAN HELP YOU WITH?

03:31PM   14                   PROSPECTIVE JUROR:  NO.

03:31PM   15                   THE COURT:  THANK YOU VERY MUCH, MR. LEE.

03:31PM   16            IF YOU WOULD GO OUTSIDE, MR. LEE, AND I THINK MS. GROGAN

03:32PM   17      IS OUTSIDE THERE.  IF YOU COULD ASK HER TO COME IN.

03:32PM   18                   PROSPECTIVE JUROR:  NO PROBLEM.

03:32PM   19                   THE COURT:  THANK YOU.

03:32PM   20            (ONLY PROSPECTIVE JUROR GROGAN PRESENT.)

03:32PM   21                   THE COURT:  HI, MS. GROGAN.

03:32PM   22                   PROSPECTIVE JUROR:  YEAH.

03:32PM   23                   THE COURT:  HI, WELCOME BACK.  NO, NOT YOU.

03:32PM   24      MS. GROGAN.

03:32PM   25            I'M SORRY I'M SPEAKING TO SOMEONE ELSE.

03:32PM   1          WE PANTED TO FOLLOW UP, AND THIS IS ABOUT YOUR COMMENTS

03:32PM   2     EARLIER, I THINK.  YOU TOLD US, AND I THINK YOU JUST TOLD

03:32PM   3     MR. DOWNEY THAT YOU READ THIS BOOK.

03:32PM   4               PROSPECTIVE JUROR:  CORRECT, YES.

03:32PM   5               THE COURT:  AND THANK YOU FOR CORRECTING YOUR

03:32PM   6     ANSWER.  YOU HAVE SOME OPINIONS ABOUT THAT.

03:32PM   7          SO MAY I FOLLOW UP WITH THAT?  YOU'VE READ THE BOOK.  YOU

03:32PM   8     AND I TALKED ABOUT UNREADING, YOU CAN'T DO THAT.

03:32PM   9          SO WHAT -- TELL ME ABOUT THE OPINIONS YOU HAVE AND HOW

03:33PM  10     THOSE WILL IMPACT, IF AT ALL, YOUR ABILITY TO BE FAIR AND

03:33PM  11     IMPARTIAL AS A JUROR.

03:33PM  12               PROSPECTIVE JUROR:  GOTCHA.  SO I THINK WHAT I WAS

03:33PM  13     TRYING TO CLARIFY WAS YOUR QUESTION WAS AT THE TIME, DID I HAVE

03:33PM  14     ANY OPINIONS?

03:33PM  15          I BELIEVE THAT THE ANSWER IS AFTER REFLECTION, YES, I DID

03:33PM  16     HAVE SOME OPINIONS.

03:33PM  17          I WORK AT A COMPANY NOW WITH A FEMALE CEO AND IN, LIKE, A

03:33PM  18     HEALTH CARE RELATED FIELD, EVEN THOUGH I'M AN ENGINEERING

03:33PM  19     MANAGER.  SO IN SILICON VALLEY.

03:33PM  20          SO I THINK THERE WAS SOME AMOUNT OF DISAPPOINTMENT THAT I

03:33PM  21     WAS TRYING TO CONVEY THE GENERALLY SPEAKING LIKE, OH, THERE'S

03:33PM  22     NOT THAT MANY WOMEN THAT GET TO, YOU KNOW, BECOME CEO OF A HIGH

03:33PM  23     POWERED COMPANY, SO DISAPPOINTMENT IN RESPONSE TO WHAT HAPPENED

03:33PM  24     IN THE BOOK.

03:33PM  25               THE COURT:  I SEE.  OKAY.

03:33PM   1          THAT WAS IN RESPONSE TO MR. DOWNEY'S QUESTION.

03:33PM   2                 PROSPECTIVE JUROR:  CORRECT, YES.

03:34PM   3                 THE COURT:  MR. DOWNEY, DO YOU HAVE ANY FOLLOW-UP

03:34PM   4     QUESTIONS?

03:34PM   5                 MR. DOWNEY:  NO, I DON'T, YOUR HONOR.

03:34PM   6                 THE COURT:  OKAY.  MR. SCHENK, YOUR TEAM?

03:34PM   7                 MR. SCHENK:  NO, I DON'T.

03:34PM   8                 THE COURT:  THANK YOU, MS. GROGAN.  I APPRECIATE IT.

03:34PM   9                 PROSPECTIVE JUROR:  NO PROBLEM.

03:34PM  10                 THE COURT:  YOU KNOW, MS. GROGAN, I THINK

03:34PM  11     MS. HERNANDEZ IS OUTSIDE, AND IF YOU COULD ASK HER TO COME IN I

03:34PM  12     WOULD BE GRATEFUL.  THANK YOU.

03:34PM  13                 PROSPECTIVE JUROR:  THANK YOU.

03:34PM  14                 THE CLERK:  JUROR NUMBER 42.

03:34PM  15         (ONLY PROSPECTIVE JUROR HERNANDEZ PRESENT.)

03:34PM  16                 THE COURT:  MS. HERNANDEZ, HI.

03:34PM  17                 PROSPECTIVE JUROR:  YES.

03:34PM  18                 THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE

03:34PM  19     HERE.  YOU'RE JUROR NUMBER 42.

03:34PM  20                 PROSPECTIVE JUROR:  YES.

03:34PM  21                 THE COURT:  AT THE BREAK YOU INDICATED YOU WANTED TO

03:34PM  22     TALK TO US PRIVATELY.  SO WHAT WOULD YOU LIKE US TO KNOW?

03:34PM  23                 PROSPECTIVE JUROR:  SO IT WAS JUST, LIKE, THE

03:34PM  24     DOMESTIC VIOLENCE.  MY PARENTS -- MY DAD USED TO DRINK A LOT

03:34PM  25     AND MY PARENTS FOUGHT A LOT, AND IT DID GET PHYSICAL, LIKE,

03:35PM 1    SOMETIMES.  BUT HE -- WE ONLY GOT THE COPS CALLED ONCE AND THAT

03:35PM 2    WAS JUST BECAUSE, LIKE, MY COUSIN CALLED HIM SO WE CAN GET SOME

03:35PM 3    OF OUR THINGS AND LEAVE.

03:35PM 4         BUT I TRY TO BLOCK THAT OUT BECAUSE HE DID PASS AWAY FOUR

03:35PM 5    YEARS AGO BECAUSE OF DRINKING A LOT.

03:35PM 6         THAT'S ABOUT IT.

03:35PM 7              THE COURT:  THANK YOU.  THANK YOU FOR SHARING.  I

03:35PM 8    KNOW IT'S DIFFICULT TO TALK ABOUT THESE THINGS AND I APPRECIATE

03:35PM 9    YOU SHARING THAT.

03:35PM 10        WERE YOU -- MAY I ASK YOU, WERE YOU EVER INVOLVED IN ANY

03:35PM 11   LEGAL PROCEEDINGS REGARDING THOSE INCIDENTS?  DID YOU EVER GO

03:35PM 12   TO COURT OR ANY OF THAT?

03:35PM 13             PROSPECTIVE JUROR:  NO.

03:35PM 14             THE COURT:  CAN YOU TELL US, DID YOU OR ANYONE IN

03:35PM 15   YOUR FAMILY RECEIVE ANY COUNSELLING, THERAPY, OR ANY OTHER

03:35PM 16   SERVICES?

03:35PM 17             PROSPECTIVE JUROR:  NO, NONE OF US.

03:35PM 18             THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THAT

03:35PM 19   EXPERIENCE THAT YOU THINK WILL AFFECT YOUR ABILITY TO BE A FAIR

03:35PM 20   JUROR IN THIS CASE?

03:35PM 21             PROSPECTIVE JUROR:  MAYBE JUST A LITTLE BECAUSE I'M

03:35PM 22   AGAINST IT SINCE WE WENT THROUGH IT AND EVERYTHING, BUT --

03:36PM 23             THE COURT:  SURE.  OKAY.

03:36PM 24             PROSPECTIVE JUROR:  YEAH.

03:36PM 25             THE COURT:  I DON'T KNOW -- I ASK THOSE QUESTIONS AS

03:36PM   1    A GENERALITY.  I DON'T KNOW, I CAN'T TELL YOU WHAT EVIDENCE IS

03:36PM   2    GOING TO BE IN THE CASE.  I JUST DON'T KNOW.

03:36PM   3         BUT THOSE ARE JUST SOME OF MY GENERAL QUESTIONS THAT I ASK

03:36PM   4    ABOUT A CASE.

03:36PM   5         SO, MR. SCHENK, ANY QUESTIONS?

03:36PM   6              MR. SCHENK:  NOTHING FURTHER.  THANK YOU.

03:36PM   7              THE COURT:  MR. DOWNEY?

03:36PM   8              MR. DOWNEY:  NOTHING, YOUR HONOR, NOT ON THAT

03:36PM   9    SUBJECT.

03:36PM   10        I DID JUST WANT TO ASK A QUESTION ABOUT LANGUAGE IF I

03:36PM   11   MIGHT.  I BELIEVE THIS JUROR SEEMS PERFECTLY CAPABLE TO ME, BUT

03:36PM   12   SHE HAD CHECKED --

03:36PM   13             THE COURT:  I SAW THAT.

03:36PM   14        MS. HERNANDEZ, I SAW THAT YOU PUT ON THE QUESTIONNAIRE

03:36PM   15   LANGUAGE, AND YOU SAID THERE ARE SOME THINGS THAT YOU DIDN'T

03:36PM   16   QUITE UNDERSTAND THE QUESTIONS, SOME OF THE QUESTIONS, AND I

03:36PM   17   THINK YOUR LAST QUESTION WAS, YOU KNOW, SOME OF THESE I DIDN'T

03:36PM   18   QUITE UNDERSTAND.  I TRIED THE BEST I COULD.

03:36PM   19        THANK YOU FOR THAT.  THAT'S WHAT WE ASKED FOR.

03:36PM   20        LET ME APOLOGIZE FOR THE QUESTIONNAIRE.  SOMETIMES LAWYERS

03:36PM   21   AND JUDGES PUT QUESTIONS TOGETHER WITHOUT THINKING ABOUT HOW

03:37PM   22   SOMEONE -- AND WE THINK, OH, THIS IS A GREAT QUESTION, BUT WE

03:37PM   23   DON'T REALIZE HOW SOMEONE, THE LISTENER, WOULD ACTUALLY LOOK AT

03:37PM   24   IT.

03:37PM   25        THAT'S HOW I TOOK YOUR ANSWER.  I HAVE YOUR QUESTIONNAIRE

```
03:37PM   1        HERE.

03:37PM   2                    PROSPECTIVE JUROR:  YEAH.  WELL, I JUST, LIKE, WHEN

03:37PM   3        I WAS IN SCHOOL AND I HAD AN IEP, AND SO I TOOK A LONGER TIME

03:37PM   4        TO PROCESS THINGS THAT I'M TOLD, AND THAT'S JUST ABOUT IT.

03:37PM   5                    THE COURT:  I SEE.  UH-HUH.  OKAY.  YOU WENT TO

03:37PM   6        HOMESTEAD HIGH SCHOOL?

03:37PM   7                    PROSPECTIVE JUROR:  YES.

03:37PM   8                    THE COURT:  THAT'S A CALIFORNIA DISTINGUISHED HIGH

03:37PM   9        SCHOOL.

03:37PM  10                    PROSPECTIVE JUROR:  YES.

03:37PM  11                    THE COURT:  AND THAT'S ONE OF THE BEST HIGH SCHOOLS

03:37PM  12        IN THE STATE.

03:37PM  13                    PROSPECTIVE JUROR:  YES.

03:37PM  14                    THE COURT:  AND YOU HAVE A DIPLOMA FROM THAT HIGH

03:37PM  15        SCHOOL.

03:37PM  16                    PROSPECTIVE JUROR:  YES, I GRADUATED LAST YEAR.

03:37PM  17                    THE COURT:  GREAT.  AND THEY'RE THE MUSTANGS, RIGHT?

03:37PM  18                    PROSPECTIVE JUROR:  THE MUSTANGS.

03:38PM  19                    THE COURT:  THAT'S RIGHT.  AND THEY USUALLY HAVE

03:38PM  20        GOOD FOOTBALL TEAMS AND BASKETBALL TEAMS AND THEY HAVE HIGH

03:38PM  21        ACADEMICS.

03:38PM  22                    PROSPECTIVE JUROR:  UH-HUH, THEY DO.

03:38PM  23                    THE COURT:  WELL, CONGRATULATIONS ON THAT.

03:38PM  24                    PROSPECTIVE JUROR:  THANK YOU.

03:38PM  25                    THE COURT:  ANYTHING ELSE YOU WOULD LIKE US TO KNOW?
```

03:38PM   1          PROSPECTIVE JUROR:  JUST ALSO LIKE TWO DAYS.  ON

03:38PM   2   SEPTEMBER 14TH I HAVE AN ORTHODONTIST APPOINTMENT THAT WOULD

03:38PM   3   AFFECT ME COMING HERE, AND ALSO IN NOVEMBER, I THINK THE 4TH OR

03:38PM   4   THE 5TH I HAVE AN APPOINTMENT, I THINK A DOCTOR'S APPOINTMENT.

03:38PM   5          THE COURT:  MS. HERNANDEZ, DO YOU THINK THOSE ARE

03:38PM   6   APPOINTMENTS YOU COULD CHANGE IF YOU NEEDED TO, OR CHANGE THE

03:38PM   7   TIMING?  YOU HEARD ME SAY I HOPE WE CAN FINISH AT 2:00 O'CLOCK,

03:38PM   8   AND I'LL BE CANDID, THERE MAY BE DAYS THAT WE GO UNTIL

03:38PM   9   3:00 O'CLOCK.  I THOUGHT WE WOULD BE DONE BY 2:00 O'CLOCK TODAY

03:38PM  10   AND IT'S CLOSE TO 4:00.

03:38PM  11       BUT THOSE APPOINTMENTS, ARE THEY SOMETHING THAT YOU THINK

03:38PM  12   YOU MAYBE CAN GET A DIFFERENT TIME ON IF YOU HAD ENOUGH NOTICE?

03:38PM  13          PROSPECTIVE JUROR:  PROBABLY NOT THE ORTHODONTIST

03:39PM  14   BECAUSE I'M SUPPOSED TO GET OFF MY BRACES, AND THEY'RE REALLY

03:39PM  15   LIKE STRICT ON THE TIMING AND STUFF.

03:39PM  16          THE COURT:  YEAH, I UNDERSTAND THAT.

03:39PM  17          PROSPECTIVE JUROR:  THEY HAVE BOOKED EVERYONE ELSE.

03:39PM  18          THE COURT:  RIGHT.  WHAT TIME IS YOUR APPOINTMENT?

03:39PM  19          PROSPECTIVE JUROR:  AT 11:00 IN THE MORNING?

03:39PM  20          THE COURT:  AND THAT'S ON WHAT DAY?

03:39PM  21          PROSPECTIVE JUROR:  I THINK TUESDAY, SEPTEMBER 14TH.

03:39PM  22          THE COURT:  14TH, OKAY, AT 11:00.  THANK YOU FOR

03:39PM  23   LETTING US KNOW.

03:39PM  24       DO YOU KNOW THE LENGTH OF THAT APPOINTMENT?

03:39PM  25          PROSPECTIVE JUROR:  I'M NOT SURE.  SOMETIMES THEY

03:39PM 1     TAKE A WHILE TO LIKE EVEN JUST SIT ME IN THE ROOM, SO I REALLY

03:39PM 2     WOULDN'T KNOW.

03:39PM 3            THE COURT:  IS IT AN HOUR APPOINTMENT?  IS IT AN ALL

03:39PM 4     DAY APPOINTMENT?

03:39PM 5            PROSPECTIVE JUROR:  NO.  PROBABLY AT MOST JUST AN

03:39PM 6     HOUR, AN HOUR AND A HALF OR TWO MAYBE.

03:39PM 7            THE COURT:  I SEE.  ALL RIGHT.  THANK YOU.

03:39PM 8            PROSPECTIVE JUROR:  UH-HUH.

03:39PM 9            THE COURT:  ANY QUESTIONS FROM COUNSEL ABOUT THAT?

03:39PM 10           MR. SCHENK:  NO.

03:39PM 11           MR. DOWNEY:  NO.

03:39PM 12           THE COURT:  THANK YOU VERY MUCH, MS. HERNANDEZ.

03:39PM 13           PROSPECTIVE JUROR:  THANK YOU.

03:39PM 14           THE COURT:  YOU'RE WELCOME.

03:39PM 15        (NO PROSPECTIVE JURORS PRESENT.)

03:39PM 16           THE COURT:  SHOULD WE BRING OUR PANEL IN NOW?

03:39PM 17           THE CLERK:  DID YOU WANT TO SPEAK TO MR. SINGH WHO

03:40PM 18    APPROACHED ME?

03:40PM 19           THE COURT:  NO, I DON'T.  WE'RE FINE.

03:40PM 20        (PROSPECTIVE PANEL IN AT 3:40 P.M.)

03:41PM 21           THE COURT:  PLEASE BE SEATED.  THANK YOU AGAIN FOR

03:41PM 22    YOUR COURTESY.

03:41PM 23        THE RECORD SHOULD REFLECT THAT ALL PARTIES PREVIOUSLY

03:41PM 24    PRESENT ARE PRESENT ONCE AGAIN.  OUR JURY, PROSPECTIVE JURY

03:41PM 25    PANEL ARE PRESENT.

03:41PM  1        MR. DOWNEY FINISHED HIS QUESTIONS.

03:42PM  2        ANY FURTHER QUESTIONS FOR THE PANEL, MR. DOWNEY?

03:42PM  3        MR. DOWNEY:  NO, YOUR HONOR.

03:42PM  4        THE COURT:  MR. SCHENK, ANY FURTHER QUESTIONS FOR

03:42PM  5   THE PANEL?

03:42PM  6        MR. SCHENK:  NO, YOUR HONOR.

03:42PM  7        THE COURT:  I FAILED -- I'LL TAKE TWO MINUTES TO

03:42PM  8   TALK ABOUT ALTERNATE JURY SERVICE.  I THINK I TALKED TO YOU

03:42PM  9   ABOUT ALTERNATES.  WE'RE GOING TO SELECT FIVE ALTERNATES.

03:42PM 10        THE ALTERNATES, YOU HEARD ME SAY THEY'LL SIT AS JURORS IN

03:42PM 11   THE CASE, THROUGHOUT THE CASE.  THEY WILL REPLACE THE

03:42PM 12   DELIBERATING JURORS IF THE NEED ARISES.  IF A SITTING JUROR

03:42PM 13   CANNOT CONTINUE, OR IF A SITTING JUROR CANNOT CONTINUE DURING

03:42PM 14   THE EVIDENCE, THAT ALTERNATE WILL REPLACE THAT JUROR, AND THIS

03:42PM 15   IS AN IMPORTANT FUNCTION.

03:42PM 16        LET ME ASK, DO ANY OF YOU HAVE ANY -- I'M TALKING TO THE

03:42PM 17   PANEL HERE -- ANYONE HAVE ANY QUESTION ABOUT WHAT ALTERNATE

03:42PM 18   JURY SERVICE IS?

03:42PM 19        DOES ANYONE FEEL THAT THAT IS SOMETHING THAT THEY COULD

03:42PM 20   NOT DO?

03:43PM 21        THANK YOU.  THAT'S A POSSIBILITY IN THE CASE, AND THIS IS

03:43PM 22   WHEN I REMIND PEOPLE ABOUT JUNE 2ND, 1925 WHEN WALLY PIPP

03:43PM 23   PLAYED FIRST BASE FOR THE YANKEES AND HE HAD A HEADACHE THAT

03:43PM 24   DAY AND HE COULDN'T CONTINUE.

03:43PM 25        AND THE MANAGER OF THAT TEAM, MILLER HUGGINS, REPLACED

|     |     |
| --- | --- |
| 03:43PM | 1 |

HIM.  AND HE REPLACED HIM WITH A YOUNG MAN WHO JUST GRADUATED

03:43PM   2   FROM COLUMBIA UNIVERSITY.  HIS NAME WAS LOU GEHRIG.  MAYBE SOME

03:43PM   3   OF YOU HAVE HEARD OF LOU GEHRIG.

03:43PM   4       WALLY PIPP NEVER PLAYED OR STARTED FOR THE YANKEES AGAIN.

03:43PM   5   I THINK HE WAS TRADED TO CINCINNATI AFTERWARDS, AND LOU GEHRIG

03:43PM   6   WAS CALLED THE IRON HORSE, HE PLAYED 2130 CONSECUTIVE GAMES FOR

03:43PM   7   THE YANKEES, A RECORD THAT STOOD UNTIL I THINK 1995 WHEN SOME

03:43PM   8   KID CALLED CAL RIPKEN BROKE THE RECORD.

03:43PM   9       BUT THAT RECORD STOOD ALL OF THAT TIME.

03:44PM   10       I LIKE TO THINK OF ALTERNATE JURORS AS LOU GEHRIGS.  THEY

03:44PM   11   WILL STEP IN, THEY WILL DO THE JOB, AND DO A FANTASTIC JOB AS

03:44PM   12   AN ALTERNATE JUROR, AND THAT'S WHY MY REMINDER ABOUT

03:44PM   13   LOU GEHRIG, HE WAS A GREAT BASEBALL PLAYER.  I THINK HIS

03:44PM   14   BATTING AVERAGE WAS .340.  MR. SCHENK, YOU PROBABLY KNOW THAT,

03:44PM   15   OR I'M SURE COUNSEL KNOW THAT.

03:44PM   16       BUT IT'S AN IMPORTANT JOB TO BE AN ALTERNATE JUROR, AND

03:44PM   17   THAT'S WHY I REMIND YOU OF THIS OBLIGATION.

03:44PM   18       SO ANYONE HAVE ANY QUESTIONS ABOUT SERVICE AS AN ALTERNATE

03:44PM   19   JUROR?

03:44PM   20       I SEE NO HANDS.

03:44PM   21       LET ME ASK COUNSEL, MR. SCHENK, DO YOU PASS FOR CAUSE?

03:44PM   22           MR. SCHENK:  YES.

03:44PM   23           MR. DOWNEY:  WE DO HAVE SOME CHALLENGES FOR CAUSE,

03:44PM   24   YOUR HONOR.

03:44PM   25           THE COURT:  ALL RIGHT.  WE'LL TAKE THOSE UP AT

03:44PM  1    SIDE-BAR, AND AS I SAID EARLIER THIS MORNING, OUR SIDE-BAR

03:44PM  2    CONVERSATIONS WILL BE IN THE JURY ROOM.

03:44PM  3         SO LET'S DO THAT.

03:45PM  4         LADIES AND GENTLEMEN, I'M GOING TO MEET WITH THESE LAWYERS

03:45PM  5    PRIVATELY IN OUR JURY ROOM BEHIND ME.  I'M GOING TO LEAVE THE

03:45PM  6    COURTROOM.  YOU CAN STAY HERE.  YOU CAN STAND AND STRETCH.

03:45PM  7         I DON'T KNOW HOW LONG THIS WILL TAKE, BUT YOU CAN STAND

03:45PM  8    AND STRETCH FOR A MOMENT IF YOU'D LIKE.  I HOPE WE'RE NOT GOING

03:45PM  9    TO TAKE TOO LONG, BUT WE'LL TAKE WHATEVER TIME WE NEED.

03:45PM  10        BUT YOU CAN STAND HERE.

03:45PM  11        WHILE WE'RE GONE, YOU'RE NOT TO DISCUSS THE CASE AMONGST

03:45PM  12   YOURSELVES, WITH ANYONE.  YOU'RE NOT TO LOOK AT ANYTHING ON

03:45PM  13   YOUR PHONES OR OTHER NEWS OR ANYTHING ABOUT THIS CASE.

03:45PM  14        AND WE'LL BE BACK IN JUST A MOMENT.

03:45PM  15        SO, COUNSEL, MS. KRATZMANN WILL SHOW YOU HOW TO GET TO THE

03:45PM  16   JURY ROOM.

03:45PM  17             THE CLERK:  YES, YOUR HONOR.

03:45PM  18             THE COURT:  AND I'LL MEET YOU THERE.

04:48PM  19        (SIDE-BAR CONFERENCE ON THE RECORD.)

04:48PM  20             THE COURT:  WE'RE ON THE RECORD.  WE'RE AT SIDE-BAR,

04:48PM  21   WHICH OUR SIDE-BARS ARE IN THE JURY ROOM.

04:48PM  22        ALL COUNSEL ARE PRESENT.  MS. HOLMES IS NOT PRESENT.  SHE

04:48PM  23   HAS WAIVED HER APPEARANCE FOR THESE SIDE-BAR CONFERENCES.

04:48PM  24        MR. DOWNEY, YOU HAVE SOME COMMENTS?

04:48PM  25             MR. DOWNEY:  YOUR HONOR, I CAN JUST GIVE YOU THE

04:48PM 1      NUMBERS OF THE JURORS ON WHOM WE EITHER HAVE A CAUSE CHALLENGE

04:48PM 2      OR SUGGEST BASED ON A HARDSHIP SITUATION THAT THEY MENTIONED TO

04:48PM 3      BE EXCUSED.

04:48PM 4                    THE COURT:  OKAY.

04:48PM 5                    MR. DOWNEY:  THAT WOULD BE 1, 11, 14, 26, 46, 49,

04:48PM 6      63, 94, 81, AND 95.

04:48PM 7                    THE COURT:  OKAY.  DO YOU WANT TO GO THROUGH THOSE

04:48PM 8      WITH ME AS TO THE REASONS?

04:48PM 9          SO LET'S START WITH 1.

04:48PM 10                   MR. DOWNEY:  YOUR HONOR, JUROR 1 IS A JUROR WHO HAS

04:48PM 11     HAD EXPOSURE TO, BY MY COUNT GIVEN THE LENGTH OF THE MEDIA,

04:48PM 12     PROBABLY 20 HOURS OF NEGATIVE MEDIA ABOUT THE DEFENDANT; HE'S

04:48PM 13     CONSUMED A BOOK; HE'S WATCHED SEVERAL OF THE FULL-LENGTH

04:48PM 14     PROGRAMS ABOUT THE SITUATION AT THERANOS.  THEY INCLUDE "ABC

04:48PM 15     NEWS'S 20/20," "60 MINUTES" AND A TED TALK GIVEN BY A WITNESS

04:48PM 16     IN THE CASE, ERICA CHEUNG, C-H-E-U-N-G.

04:48PM 17         HE ACKNOWLEDGED IN CONNECTION WITH FILLING OUT THE

04:48PM 18     QUESTIONNAIRE THAT HE HAD A QUESTION IN HIS MIND ABOUT WHETHER

04:48PM 19     HE COULD BE FAIR, OBJECTIVE, AND IMPARTIAL IN THE CASE.

04:48PM 20         HE ACKNOWLEDGED IN RESPONSE TO SOME OF OUR DISCUSSIONS

04:48PM 21     THAT HE HAD OPINIONS RELATED TO THERANOS AND TO THE DEFENDANT.

04:48PM 22         SO WE WOULD ASK THAT HE BE DISMISSED FOR CAUSE.

04:48PM 23                   THE COURT:  MR. SCHENK?

04:48PM 24                   MR. SCHENK:  YOUR HONOR, MR. DOWNEY DID NOT ASK FOR

04:48PM 25     JUROR 31 TO BE EXCUSED FOR CAUSE, MS. GROGAN.  SHE READ THE

04:48PM   1    BOOK.

04:48PM   2         I'M A LITTLE BIT CONCERNED ABOUT A DOUBLE STANDARD HERE.

04:48PM   3    I CAME INTO THIS ROOM PREPARED TO TELL YOUR HONOR THAT I THINK

04:48PM   4    PEOPLE WHO READ THE BOOK I'M NOW CONVINCED SHOULDN'T BE ON THE

04:48PM   5    JURY.

04:48PM   6         I APPRECIATE THAT TO QUESTION 39 MANY OF THEM SAID I CAN

04:48PM   7    BE FAIR.  I THINK THAT THEY MEAN IT WHEN THEY SAY THAT, BUT

04:48PM   8    HONESTLY, I LISTENED TO MS. GROGAN WHO GOT UP AND SAID, "I'M

04:48PM   9    SURPRISED THAT I WAS ALLOWED TO BE HERE," AND THAT RANG TRUE TO

04:48PM  10    ME.

04:48PM  11         I WANTED TO WALK INTO THIS ROOM, AND I'M NOT GOING TO BACK

04:48PM  12    AWAY FROM YOU, AND TELLING YOU THAT 31 AND 63 BY MY COUNT,

04:48PM  13    THOSE ARE THE ONES WHO READ THE BOOK IN THIS GROUP, THEY SHOULD

04:48PM  14    BE EXCUSED.

04:48PM  15         I'M NOT SURE WHY THE DEFENSE IS NOT ASKING FOR 31 TO BE

04:48PM  16    EXCUSED.

04:48PM  17              THE COURT:  MR. DOWNEY?

04:48PM  18              MR. DOWNEY:  I THINK IF WE CAN STIPULATE TO JURORS

04:48PM  19    WHO HAVE NOT ONLY READ THE BOOK BUT BEEN EXPOSED TO COMPARABLE

04:48PM  20    LONG-FORM AND COMMENTARY ON THERANOS AND THE SITUATION, WE

04:48PM  21    COULD PROBABLY GET TO SOME AGREEMENT THERE.  I JUDGED JUROR 31

04:48PM  22    TO BE THE MOST CONSENSUS JUROR IN TERMS OF MAKING COMMENTS AS

04:48PM  23    TO WHEN THE BIAS AROSE.  SHE WAS CONCERNED THAT SHE HAD NOT

04:48PM  24    BEEN CANDID IN THAT REGARD.

04:48PM  25         BUT I THOUGHT I HEARD HER TO SAY THAT SHE WOULD PUT IT

04:48PM 1    ASIDE AT THAT TIME.

04:48PM 2        SO I THINK I -- I THOUGHT SHE WAS PARSING THINGS BETWEEN

04:48PM 3    HER OPINION AT THE TIME AND LATER IN A WAY THAT WAS

04:48PM 4    SATISFACTORY TO US.

04:48PM 5        BUT I CERTAINLY WOULD -- IF WE WERE TO INCLUDE NOT ONLY

04:48PM 6    THE BOOK BUT COMPARABLE CONTENT OF THE BOOK, THEN THAT'S

04:48PM 7    CERTAINLY AN APPROACH THAT WE WOULD BE WILLING TO TRY TO

04:48PM 8    STIPULATE WITH THE GOVERNMENT ON.

04:48PM 9        THE COURT:  MR. SCHENK?

04:48PM 10       MR. SCHENK:  YOUR HONOR, MR. RISHI GAVE US THE

04:48PM 11   LANGUAGE THAT WE'RE NOW USING TO DISCUSS THIS PERSON.  HE WAS

04:48PM 12   THE ONE WHO GAVE US THE PHRASE TODAY INFORMATION ATTRIBUTION.

04:48PM 13       SO IF THE DIFFERENCE BETWEEN MS. GROGAN AND MR. RISHI IS

04:48PM 14   HOW MS. GROGAN CONVINCED MR. DOWNEY THAT SHE WAS CAPABLE OF

04:48PM 15   INFORMATION ATTRIBUTION, THAT IS, DETERMINING WHEN SHE LEARNED

04:48PM 16   SOMETHING AND KEEPING THAT IN ONE SEGMENT IN HER MIND BUT NOT

04:48PM 17   OTHER FACTS, I THINK MR. RISHI FITS INTO THAT CATEGORY THE SAME

04:48PM 18   WAY, AT LEAST BY THE WAY THAT I HEARD HIS COMMENTS.

04:48PM 19       TO MORE DIRECTLY ANSWER MR. DOWNEY'S QUESTION, THOUGH, THE

04:48PM 20   GOVERNMENT WILL NOT AGREE THAT AS A WHOLE CATEGORY LONG FORM

04:48PM 21   SHOULD BE -- IF SOMEONE HAS CONSUMED LONG FORM, THEY SHOULD BE

04:48PM 22   EXCUSED.

04:48PM 23       IN MY VIEW, IN THE GOVERNMENT'S VIEW, I DRAW A LINE

04:48PM 24   BETWEEN SEEING "60 MINUTES" HOWEVER MANY MONTHS OR YEARS AGO

04:48PM 25   AND NOT RECALLING VERY MUCH OF IT AND SAYING THAT THEY CAN BE

04:48PM 1    FAIR.  I THINK THAT IS SUBSTANTIVELY DIFFERENT FROM SOMEONE

04:48PM 2    WHO, AS I THINK EITHER MR. DOWNEY OR THE JUROR SAID, MAYBE IT

04:48PM 3    TOOK ME A WEEK TO READ THE BOOK.  THAT'S A LONG TIME TO SPEND

04:48PM 4    WITH THIS MATERIAL, AND I FOUND THE COMMENT THAT MS. GROGAN

04:48PM 5    MADE PRETTY APPROPRIATE, "I'M SURPRISED I COULD MAKE IT THIS

04:48PM 6    FAR HAVING READ THE BOOK."

04:48PM 7         HONESTLY I'M TRYING TO BE FAIR TO SAY IF YOU'VE READ THE

04:48PM 8    BOOK, I DON'T THINK YOU SHOULD BE ON THE JURY.  BUT I DON'T

04:48PM 9    THINK THEY'RE AROUND LONG FORM.

04:48PM 10        THE COURT:  I APPRECIATE, MR. SCHENK, YOUR

04:48PM 11   SUGGESTION AND AN OFFER THAT EVERYONE WHO HAS READ THE BOOK

04:48PM 12   LET'S JUST EXCUSE THEM AND BE DONE WITH THEM.

04:48PM 13        MR. RISHI DID GIVE US SOME GUIDANCE.  I THOUGHT HE WAS

04:48PM 14   VERY CANDID ABOUT WHAT HE SAID.  I THINK I TAKE HIS POINT IF

04:48PM 15   MS. GROGAN IS GOING, THEN MR. RISHI SHOULD GO, TOO, BECAUSE HE

04:48PM 16   READ THE BOOK AND NOTWITHSTANDING WHAT HE SAID AND MS. GROGAN

04:48PM 17   SAID, THEY READ THE BOOK.

04:48PM 18        AND TO -- IT SEEMS LIKE IT WOULD INURE TO THE FAIRNESS OF

04:48PM 19   THE TRIAL IF FOLKS WHO HAVE READ THE BOOK ARE NOT ON THE JURY,

04:48PM 20   THEN WE DON'T HAVE TO WORRY ABOUT INFECTION FROM ANYTHING THAT

04:48PM 21   MIGHT COME UP.

04:48PM 22        MR. DOWNEY:  WELL, YOUR HONOR, IT'S CERTAINLY THE

04:48PM 23   INDICATION THAT -- I'M PLEASED THAT THE GOVERNMENT RECOGNIZES

04:48PM 24   THE EXPOSURE TO AT LEAST SOME LONG-FORM CONTENT CAN LEAD TO

04:48PM 25   BIAS HERE, AND I THINK IF THAT IS THE CASE, THEN I THINK WE'RE

04:48PM  1    GOING TO BE ON A SLIPPERY SLOPE TOWARDS MY PROPOSAL.

04:48PM  2         I ACTUALLY THINK SOME OF THE VIDEO PRESENTATION IS MUCH

04:48PM  3    WORSE THAN SOMEONE WHO HAS SAT WITH THE ENTIRE BOOK.  IT IS

04:48PM  4    GENERALLY FRAMED AS A SHORT OPENING STATEMENT FOR THE

04:48PM  5    GOVERNMENT IN THIS CASE, AND I THINK THAT IF WE COULD, IF WE

04:48PM  6    COULD EXPAND IT TO THOSE CATEGORIES, I CERTAINLY WOULD BE

04:48PM  7    PLEASED TO AGREE TO THAT.

04:48PM  8         THAT BEING SAID, IF MR. SCHENK IS MOVING FOR CAUSE ON A

04:48PM  9    JUROR AND SO FORTH, I DON'T OPPOSE THAT.

04:48PM  10        THE COURT:  WELL, WHAT I HEARD MR. SCHENK SAY IS

04:48PM  11   THAT HE WOULD AGREE TO EXCUSE JUROR NUMBER 1, JUROR NUMBER 31,

04:48PM  12   AND JUROR NUMBER 61.

04:48PM  13        MR. SCHENK?

04:48PM  14            MR. SCHENK:  63.

04:48PM  15            THE COURT:  63.  THANK YOU.  THAT'S MR. RISHI?

04:48PM  16            MR. SCHENK:  YES, YOUR HONOR.

04:48PM  17            THE COURT:  DO YOU HAVE ANY OBJECTION TO THAT?

04:48PM  18            MR. DOWNEY:  I DON'T HAVE ANY OBJECTION TO THAT,

04:48PM  19   YOUR HONOR.

04:48PM  20            THE COURT:  AND THAT'S FOR CAUSE BECAUSE THEY'VE

04:48PM  21   READ THE BOOK, MR. SCHENK, AND YOU BELIEVE THAT AFFECTS AND

04:48PM  22   OTHERWISE IMPAIRS THEIR ABILITY TO BE FAIR AND IMPARTIAL?

04:48PM  23            MR. SCHENK:  YES, YOUR HONOR.

04:48PM  24            THE COURT:  ANY COMMENT ON THAT?

04:48PM  25            MR. DOWNEY:  NO, YOUR HONOR, NOT BEYOND WHAT I'VE

04:48PM 1    ALREADY SAID.

04:48PM 2            THE COURT:  OKAY.  WELL, THANK YOU.

04:48PM 3        ALL RIGHT.  LET ME -- I'M LOOKING AT MY NOTES AS TO THESE

04:48PM 4    PROSPECTIVE JURORS.  THEY DID READ THE BOOK.  THEY DID IN A

04:48PM 5    VARIETY WAYS TELL US ABOUT THE BOOK, THEY'VE TOLD US OBVIOUSLY

04:48PM 6    THE EFFECT OF THEM IN SOME WAYS, THEY HAVE EXPRESSED IN VARIOUS

04:48PM 7    DEGREES HOW THEY CAN PUT ASIDE THOSE FEELINGS AND ANY MEMORY

04:48PM 8    THAT THEY HAVE OF IT.

04:48PM 9        IT WOULD APPEAR THAT OUT OF AN ABUNDANCE OF CAUTION,

04:48PM 10   THOUGH, THAT THOSE JURORS SHOULD BE EXCUSED AT THIS TIME

04:48PM 11   BECAUSE OF THE FACT THAT THEY'VE READ THIS BOOK.  AS I

04:48PM 12   UNDERSTAND IT, THE BOOK DETAILS IN GREAT DETAIL THE HISTORY,

04:48PM 13   THE STORY OF THERANOS AS WELL AS MS. HOLMES, AND I THINK IT

04:48PM 14   COVERS MR. BALWANI AS WELL PERHAPS, AND THE RISK OF HAVING THAT

04:48PM 15   INFECT A JURY HERE IS SOMETHING THAT I WOULD LIKE TO AVOID.

04:48PM 16       SO WE'LL EXCUSE 1, 31, AND 63.

04:48PM 17       MR. DOWNEY, NUMBER 11?

04:48PM 18           MR. DOWNEY:  YOUR HONOR, I THINK THERE ARE A FEW

04:48PM 19   ISSUES IN CONNECTION WITH THIS JUROR.  FIRST OF ALL, I DON'T

04:48PM 20   KNOW WHAT THE COURT'S ATTITUDE WAS TOWARDS THE SCHEDULED TRAVEL

04:48PM 21   FOR THIS JUROR IN TERMS OF HARDSHIP.

04:48PM 22           THE COURT:  YES.  I THINK ON SEPTEMBER 8TH TO THE

04:48PM 23   15TH, I THINK.  IS THAT RIGHT?  I THINK THAT'S --

04:48PM 24           MR. DOWNEY:  THAT'S RIGHT.  AND ALSO ON OCTOBER 16TH

04:48PM 25   TO THE 19TH.

04:48PM  1              THE COURT:  DID THIS JUROR TELL US THAT THAT COULD

04:48PM  2      BE ADJUSTED?

04:48PM  3          (PAUSE IN PROCEEDINGS.)

04:48PM  4              MR. DOWNEY:  I'M HONESTLY NOT CERTAIN, YOUR HONOR.

04:48PM  5              THE COURT:  I KNOW ONE DID.

04:48PM  6              MR. DOWNEY:  ONE DID, YES.

04:48PM  7              MR. SCHENK:  MY RECOLLECTION IS THAT SHE SAID IF IT

04:48PM  8      HAD TO BE CANCELLED IT CAN BE.

04:48PM  9              THE COURT:  I SEE.  THANK YOU, MR. SCHENK.

04:48PM 10          I THINK SHE SAID THAT'S WHY I CAME TO SEE WHAT WAS GOING

04:48PM 11      TO HAPPEN, I THINK THAT'S WHAT SHE SAID.

04:48PM 12              MR. DOWNEY:  YES.

04:48PM 13              THE COURT:  RIGHT.  MR. SCHENK, ANY COMMENT ON JUROR

04:48PM 14      NUMBER 11?

04:48PM 15              MR. SCHENK:  JUST ONE MINUTE, YOUR HONOR.

04:48PM 16              THE COURT:  SURE.  PARAGRAPH.

04:48PM 17          (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

04:48PM 18              MR. SCHENK:  I DON'T THINK THAT SHE SHOULD BE KICKED

04:48PM 19      FOR CAUSE FOR THE VACATION.

04:48PM 20              THE COURT:  I TEND TO AGREE.  I DON'T THINK THAT'S A

04:48PM 21      CAUSE CHALLENGE.  A HARDSHIP PERHAPS.  BUT I DON'T THINK IT

04:48PM 22      FALLS INTO THE CATEGORY OF A CAUSE CHALLENGE.  IT'S -- I

04:48PM 23      SUPPOSE IT'S IN THE DISCRETION OF THE JUDGE WHETHER THE JUDGE

04:48PM 24      IS GOING TO BE KIND AND ALLOW HER TO DO THE VACATION OR WHETHER

04:48PM 25      SHE CAN RESCHEDULE.

04:48PM 1          SO I'M NOT GOING TO STRIKE HER FOR CAUSE.

04:48PM 2               MR. DOWNEY:  WELL, YOUR HONOR, I HAD MENTIONED THE

04:48PM 3     VACATIONS ONLY BECAUSE THEY WERE SUBJECT TO DISCUSSION.  WE

04:48PM 4     HAVE OTHER ISSUES WITH REGARD TO THIS JUROR, OTHER BASES FOR

04:48PM 5     CAUSE.

04:48PM 6               THE COURT:  WELL, I SHOULD KNOW THOSE.

04:48PM 7               MR. DOWNEY:  YOUR HONOR, THIS IS A JUROR WHO,

04:48PM 8     INSTEAD OF LISTENING TO "BAD BLOOD," LISTENED TO A MULTI HOUR

04:48PM 9     PODCAST THAT CONTAINS AUDIO INTERVIEWS WITH MANY OF THE SAME

04:48PM 10    WITNESSES WHO ARE DISCUSSED DURING, YOU KNOW, THE COURSE OF THE

04:48PM 11    BOOK "BAD BLOOD."  IT'S GOT A SLIGHTLY DIFFERENT FOCUS, BUT

04:48PM 12    IT'S FAIR TO SAY THAT IT'S HIGHLY INFLAMMATORY AND PREJUDICIAL

04:48PM 13    AS TO MS. HOLMES.

04:48PM 14         I THINK JUROR 11, MS. GRAY, ACKNOWLEDGED THAT DURING THE

04:48PM 15    COLLOQUY ABOUT THAT EXPOSURE.

04:48PM 16         I'M NOT CERTAIN THAT THERE IS ANY REAL REASON TO BELIEVE

04:48PM 17    THAT SHE CAN PUT ASIDE THOSE VIEWS IN MAKING A DETERMINATION,

04:48PM 18    AND I CERTAINLY THINK THAT IF WE HAVE A STANDARD WHICH IS THAT

04:48PM 19    READING THE BOOK SHOULD LEAD TO DISMISSAL, I THINK CERTAINLY

04:48PM 20    LISTENING TO A MULTI HOUR PODCAST SHOULD HAVE THE SAME EFFECT.

04:48PM 21               THE COURT:  MR. SCHENK?

04:48PM 22               MR. SCHENK:  YOUR HONOR, I THINK THIS ONE FALLS IN

04:48PM 23    THE MIDDLE.  THIS IS A HARDER ONE FOR THE COURT.

04:48PM 24         I THINK THE BOOK -- I DON'T WANT TO REVISIT WHAT I SAID,

04:48PM 25    BUT I THINK THE COURT MADE A RIGHT RULING AGREEING WITH THE

04:48PM 1    PARTIES AND RELIEVING JURORS FOR CAUSE WHO READ THE BOOK.

04:48PM 2         THE DOCUMENTARIES, SOME OF THE OTHER LONG FORM, I DON'T

04:48PM 3    KNOW THAT WE'RE GOING TO REACH AGREEMENT ON.  I DON'T THINK

04:48PM 4    THAT WATCHING ONE SEVERAL YEARS AGO WITH VERY LITTLE MEMORY OF

04:48PM 5    IT IS TANTAMOUNT TO A FOR CAUSE DISMISSAL.

04:48PM 6         THE PODCAST I THINK FALLS IN THE MIDDLE.

04:48PM 7         ONE REASON IT FALLS IN THE MIDDLE IS BECAUSE SOMEONE

04:48PM 8    DOESN'T PUT THE BOOK ON FOR YOU.  YOU PICK UP THE BOOK AND READ

04:48PM 9    IT.  IT SHOWS SOME INTEREST ON YOUR PART.

04:48PM 10        THIS JUROR SPECIFICALLY SAID HER HUSBAND PUT IT ON DURING

04:48PM 11   A CAR TRIP, DURING A FAMILY DRIVE.

04:48PM 12        SHE ALSO SAID SHE REMEMBERED VERY LITTLE ABOUT IT.  MY

04:48PM 13   RECOLLECTION IS THAT I THINK SHE SAID SHE REMEMBERED ONE

04:48PM 14   INTERVIEW FROM IT.

04:48PM 15        WHAT WE NEED TO BE CONCERNED ABOUT ISN'T THAT SHE LISTENED

04:48PM 16   TO THE PODCAST, IT'S DOES SHE THEY BRING IT INTO THE

04:48PM 17   DELIBERATION ROOM OR THE COURTROOM EACH DAY THE BIAS THAT CAME

04:48PM 18   WITH, IF WE ACCEPT THE FACT THAT BIAS CAME WITH THE PODCAST,

04:48PM 19   DOES SHE BRING THAT WITH HER?

04:48PM 20        WHAT WE HAVE IS A COUPLE PIECES OF EVIDENCE THAT SUGGESTS

04:48PM 21   SHE WON'T.  SHE WASN'T THE ONE WHO PUT IT ON, SO IT WASN'T A

04:48PM 22   SUBJECT MATTER LIKE MR. RISHI.  AND IT ISN'T VERY INTERESTING

04:48PM 23   TO HER THAT SHE WAS CONSUMING EVERYTHING THAT SHE COULD FIND.

04:48PM 24   THAT SEEMS TO BE A FACT THAT SUGGESTS THAT IT WAS MORE

04:48PM 25   BACKGROUND NOISE THAN RESEARCH, THAN SOMETHING THAT SHE WAS

04:48PM  1     DOING A DEEP DIVE INTO.

04:48PM  2          THE SECOND PIECE OF EVIDENCE THAT WE HAVE IS SHE SAID SHE

04:48PM  3     DOESN'T REMEMBER VERY MUCH FROM IT.  HER MEMORY OF IT IS

04:48PM  4     SIGNIFICANTLY LIMITED COMPARED TO SOMEONE WHO, LET'S SAY, PUT

04:48PM  5     IT ON THEMSELVES AND WAS INTERESTED IN CONSUMING IT.

04:48PM  6          HONESTLY, THOUGH, IT'S A CLOSE CAUSE.  I THINK IF YOU

04:48PM  7     SPEND 8 HOURS, 10 HOURS, WHATEVER IT WAS, LISTENING TO IT, I

04:48PM  8     APPRECIATE THE ARGUMENT THAT MR. DOWNEY IS MAKING.  IT'S

04:48PM  9     SUBSTANTIVELY DIFFERENT THAN LISTENING TO "BAD BLOOD" ON TAPE?

04:48PM  10    I DON'T KNOW.  I GAVE YOU TWO REASONS WHY IT MIGHT BE, BUT IT'S

04:48PM  11    A VERY HARD CALL.

04:48PM  12              THE COURT:  NO, NO.  I APPRECIATE THAT.  THANK YOU.

04:48PM  13         SHE SAID IT'S NOT ON MY MIND.  MY TAKE FROM HER

04:48PM  14    DESCRIBING THIS, AND I FAILED TO ASK HER HOW LONG THE TRIP WAS.

04:48PM  15    IT WAS A CAR TRIP.  SHE SAID IT WAS -- I THINK SHE DID SAY, I

04:48PM  16    THINK SHE USED THE PHRASE BACKGROUND NOISE OR IT WAS ON WHILE

04:48PM  17    SHE WAS DRIVING.

04:48PM  18         SHE DID REMEMBER THAT THERE WAS A NEGATIVE VIEW OF

04:48PM  19    MS. HOLMES, SHE DOES REMEMBER THAT FROM IT.

04:48PM  20         BUT SHE THEN SAID IT'S NOT ON MY MIND.  I THINK SHE SAID

04:48PM  21    THAT IN RESPONSE TO WHEN SHE DID THE QUESTIONNAIRE, IT WASN'T

04:48PM  22    ON HER MIND ABOUT IT.

04:48PM  23         YOU KNOW, THE THING ABOUT HAVING THE OPPORTUNITY TO

04:48PM  24    ACTUALLY SEE LIVE TESTIMONY, LIVE DISCUSSION WITH THE JURORS

04:48PM  25    HERE IN A LIVE SETTING ALLOWS US TO MEASURE IN GREATER DETAIL

04:48PM  1    THAN ON A TRANSCRIPT THE DEMEANOR, THE INFLECTIONS, THEIR

04:48PM  2    EMOTIONAL CUES THAT ARE RELEASED WHEN THEY ANSWER QUESTIONS.

04:48PM  3        IT SEEMS TO ME THAT SHE WAS SAYING YES TO THE QUESTION, I

04:48PM  4    REMEMBER THE QUESTION, IT WAS ON, BUT I DON'T REMEMBER MUCH

04:48PM  5    ABOUT IT.

04:48PM  6        BUT TO MR. SCHENK'S POINT, SHE REMEMBERED IT HAD A

04:48PM  7    NEGATIVE VIEW OF MS. HOLMES.  THAT PIECE STUCK.  AND I

04:48PM  8    APPRECIATE THAT IF THAT IS A CULMINATION OF ADDITIONAL

04:48PM  9    INFORMATION THAT SHE MAY HAVE RECEIVED IN THE COURSE OF PERHAPS

04:48PM  10   THIS TRIAL AND/OR, EXCUSE ME, IN THE COVERAGE OF THIS TRIAL,

04:48PM  11   THAT CERTAINLY WOULD GIVE CONCERN, AND I THINK SIMILAR CONCERNS

04:48PM  12   ABOUT READING THE BOOK, WHAT DOES THAT DO?

04:48PM  13       SOMEBODY -- TO YOUR POINT, MR. SCHENK, SOMEBODY READ THE

04:48PM  14   BOOK, THEY EITHER PURCHASED THE BOOK OR THEY SOMEHOW OBTAINED

04:48PM  15   IT AND THAT WAS A VOLITIONAL ACT TO BE DISTINGUISHED FROM BEING

04:48PM  16   AT THE MERCY OF YOUR HUSBAND'S DECISION TO THE RADIO, WHICH IT

04:48PM  17   SOUNDS LIKE THAT'S WHAT THIS WAS.

04:48PM  18       WELL, I'LL STRIKE HER FOR THAT REASON.

04:48PM  19       NUMBER 14 I THINK IS YOUR NEXT?

04:48PM  20           MR. DOWNEY:  IT IS, YOUR HONOR.

04:48PM  21           THE COURT:  THAT'S MR. CHUANG.

04:48PM  22           MR. DOWNEY:  THAT'S MR. CHUANG WHO YOUR HONOR HAD A

04:48PM  23   LONG COLLOQUY.

04:48PM  24       WHEN HE WAS HERE TEN DAYS AGO, MR. CHUANG, NOTE IN HIS

04:48PM  25   QUESTIONNAIRE HE MAY BE BIASSED AGAINST MS. HOLMES BECAUSE OF

PRIOR KNOWLEDGE OF THIS CASE, BECAUSE OF THE -- IN CONNECTION

WITH THE DOCUMENTARY.

HE ALSO INDICATED HE WATCHED THE VIDEO, HE ALSO CIRCLED

HAVING READ "BAD BLOOD" IN CONNECTION WITH HIS KNOWLEDGE OF THE

CASE, AND THEN, OF COURSE, ACKNOWLEDGED HIS BIAS.

I THINK, YOUR HONOR, WHEN HE WAS ORIGINALLY ASKED BY ME

THE QUESTION OF SORT OF HIS FAIRNESS TO JUDGE SOMETHING

RELATIVE TO HIS COMFORT LEVEL IF IT WERE A MATTER INVOLVING HIM

OR HIS ONLY FAMILY, HE ANSWERED HE WOULDN'T BE COMFORTABLE WITH

THAT.

I KNOW YOUR HONOR HAD A SUBSEQUENT COLLOQUY WITH HIM, BUT

I THINK THE ACKNOWLEDGEMENT THAT THE SENTIMENT IS IN HIS MIND

AND IT WOULD BE DIFFICULT TO REMOVE FROM IT MEANS THAT HE IS

SOMEONE WHO HAS TAKEN A REAL VIEW AWAY FROM CONSUMING THESE

MATERIALS.

IT ALSO SEEMS TO BE THE CASE, ALTHOUGH WE'RE NOT QUITE

SURE WHAT HE SAW OR READ, HE THINKS THAT THE VIDEO WAS A

SUMMARY OF THE CONTENT IN SOME WAY OF "BAD BLOOD."  SO

EFFECTIVELY HE'S CONSUMING THE SAME TYPE OF CONTENT.

SO I APPRECIATE YOUR HONOR'S EFFORTS TO ENGAGE IN A

REHABILITATION.  I DON'T THINK IT HAS CURED HIS PRIOR STATEMENT

OF BIAS OR THE BIAS THAT IS INHERENT IN HAVING LOOKED AT AND

RECALLED THE MATERIAL THAT HE WAS EXPOSED TO.

HE HAD A PRETTY CLEAR KNOWLEDGE OF WHAT WAS SAID IN THE

DOCUMENTARY.  HE SAID THAT HE HEARD FROM THE DOCUMENTARY THAT

MS. HOLMES KNEW THAT A NEW BLOOD TESTING METHOD WAS FRAUDULENT,

BUT THAT SHE CONTINUED TO RAISE MONEY FROM INVESTORS.  THAT'S

ALMOST WHAT THE GOVERNMENT WOULD LIKE TO SAY IN ITS OPENING

STATEMENT HERE.  IT SHOWS THE ADVOCACY NATURE OF THESE PIECES

THAT THESE JURORS HAVE BEEN EXPOSED TO, AND THEY RECALLED THEM.

SO I THINK HE SHOULD BE, HE SHOULD BE DISMISSED FOR CAUSE,

YOUR HONOR.

THE COURT:  WHAT DO WE DO WITH HIS STATEMENT WHERE

HE SAID UNDER OATH, "I CAN BE FAIR"?

MR. DOWNEY:  WELL, HE ALSO SAID UNDER OATH,

YOUR HONOR, THAT HE WOULD NOT THINK THAT IF IT WAS A MATTER

INVOLVING HIM OR HIS FAMILY THAT HE WOULD THINK THAT HE WOULD

BE THE IDEAL PERSON TO SERVE AS A JUROR.

THE COURT:  I HEAR THAT QUESTION AND IN JUST ABOUT

EVERY CASE AND IT'S ALWAYS A QUESTION THAT INTERESTS ME.  IT'S

A QUESTION THAT I THINK IS CONFUSING AND SOMETIMES UNFAIR TO

SAY, WELL, IF YOU WERE ON TRIAL, WOULD YOU WANT YOU AS A JUROR?

AND IT, IT -- SOMETIMES IT'S A DIFFICULT QUESTION, I

THINK, FOR A LAYPERSON TO ASK.  IT'S A PROBING ONE TO ASK CAN

YOU BE FAIR?  BUT I'M NOT SURE HE GRASPS THE TOTALITY OF THAT.

I TRIED TO FOLLOW UP WITH HIM, AND I PROBABLY DIDN'T DO

AS GOOD OF A JOB THAT YOU DID, MR. DOWNEY, TO ASK THE QUESTION,

BECAUSE I WAS TRYING TO SEE IF HE UNDERSTOOD IT IN A WAY.

ANYTHING, MR. SCHENK, ON THIS?

MR. SCHENK:  YES, A COUPLE OF THINGS.  ONE, IF HE

04:48PM  1    READ "BAD BLOOD," HE SHOULD BE EXCUSED FOR CAUSE.  HE DIDN'T

04:48PM  2    SAY HE READ "BAD BLOOD" TODAY.  HE CIRCLED IT AND MAYBE WE CAN

04:48PM  3    ASK HIM IF HE DID.

04:48PM  4        SECOND, YOUR HONOR ASKED HIM NOT JUST CAN YOU BE FAIR, BUT

04:48PM  5    DO YOU HAVE CERTAINTY ABOUT YOUR ABILITY TO BE FAIR, AND HE

04:48PM  6    SAID YES.

04:48PM  7        HE ALSO SAID THAT HE DID NOT HAVE FRESH MEMORIES ABOUT THE

04:48PM  8    DOCUMENTARY OR OTHER THINGS THAT HE CONSUMED.

04:48PM  9        I THINK THAT MAKES HIM SUBSTANTIVELY DIFFERENT THAN JURORS

04:48PM  10   WHO HAVE CONSUMED THE CONTENT THAT MR. DOWNEY HAS DESCRIBED AS

04:48PM  11   BIASSING AND STILL REMEMBERING, AND HAVE A LOT OF FRESH

04:48PM  12   MEMORIES ABOUT IT.

04:48PM  13       YOUR HONOR HAD A LENGTHY DIALOGUE ABOUT HIS ABILITY TO BE

04:48PM  14   FAIR, AND ON SOME OCCASIONS HE USED WORDS LIKE "I MAY" OR "I

04:48PM  15   THINK," AND YOUR HONOR FOLLOWED UP ON THOSE TO SEE IF THERE WAS

04:48PM  16   CERTAINTY RECOGNIZING THAT THERE MIGHT BE A HEDGE OR AN

04:48PM  17   EXPRESSION OF HESITATION.

04:48PM  18       AND WHAT I UNDERSTOOD MR. CHUANG TO BE SAYING IS THAT I

04:48PM  19   HAVE CERTAINTY ABOUT MY ABILITY TO BE FAIR.

04:48PM  20           THE COURT:  I THINK I, AS I DID WITH SEVERAL OF THE

04:48PM  21   PROSPECTIVE JURORS, I ASKED IF THEY COULD BE FAIR TO THE

04:48PM  22   GOVERNMENT, POINTING TO TABLES, AND THEN POINTING TO

04:48PM  23   MS. HOLMES, CAN YOU BE FAIR TO HER, AND I CAN'T REMEMBER IF

04:48PM  24   MR. CHUANG WAS ONE OF THOSE, BUT I THINK HE MAY HAVE BEEN.

04:48PM  25       LET'S DO THIS.  LET'S ASK IF HE READ THE BOOK.  AND THAT

04:48PM 1     WILL GIVE US GUIDANCE.

04:48PM 2          MR. DOWNEY:  YOUR HONOR, I JUST ALSO WANT TO REMIND

04:48PM 3     YOU THAT YOUR HONOR ASKED HIM ESSENTIALLY THE QUESTION ABOUT

04:48PM 4     WHETHER HE COULD BE FAIR REPEATEDLY, AND HE REPEATEDLY SAID

04:48PM 5     BEFORE FINALLY SAYING HE COULD BE FAIR, HE REPEATEDLY SAID HE

04:48PM 6     WOULD TRY.

04:48PM 7          THE COURT:  YES.

04:48PM 8          MR. DOWNEY:  AND THAT'S A FINE ANSWER FOR AN

04:48PM 9     INDIVIDUAL TO GIVE AND IT'S AN HONEST ANSWER, BUT IT DOESN'T

04:48PM 10    QUALIFY A PERSON TO SERVE AS A JUROR.

04:48PM 11         THE ISSUE IS NOT AN ISSUE ABOUT HIS FAIRNESS.  WE KNOW HE

04:48PM 12    HAS CONCERN ABOUT HIS FAIRNESS, AND WE KNOW WHY HE HAS THAT

04:48PM 13    CONCERN.  AND I THINK IN ASKING HIM ULTIMATELY WHETHER HE CAN

04:48PM 14    BE FAIR OR NOT, WE'RE REALLY ASKING HIM WHETHER HE'S A FAIR

04:48PM 15    PERSON AS OPPOSED TO LOOKING AT HIM AS SOMEONE WHO COMES IN

04:48PM 16    WITH SUBSTANTIAL KNOWLEDGE AND IS TRYING TO BE FAIR BUT IS

04:48PM 17    AFRAID THAT HE MIGHT HAVE A BIAS.

04:48PM 18         THE COURT:  WELL, I THINK THAT'S WHAT WE'VE DONE ALL

04:48PM 19    DAY TODAY IS TO PROBE THE BIASES OF THE JURORS AND TO ASK THEM

04:48PM 20    TO TEST THEMSELVES TO SEE IF THEY CAN BE FAIR.

04:48PM 21         PEOPLE HAVE TOLD US THAT THEY HAVE BIASES AND MANY OF THEM

04:48PM 22    HAVE SAID, YES, I CAN OVERCOME THEM AND HERE'S HOW I'LL DO

04:48PM 23    THAT.

04:48PM 24         MR. CHUANG IS ONE OF THOSE INDIVIDUALS WHO I THINK THE

04:48PM 25    PAPER WORD DOESN'T REFLECT, I THINK, HIS EMOTIONAL, I'LL CALL

04:48PM 1    IT, GROWTH AS A RESULT OF OUR CONVERSATIONS.

04:48PM 2         MY SENSE IS THAT HE WAS A LITTLE TIMID AT FIRST AND THEN

04:48PM 3    AS HIS ANSWERS BEGAN -- HE BECAME A LITTLE MORE ENGAGED WITH

04:48PM 4    YOU, AND THEN WITH MR. SCHENK, AND CERTAINLY WITH THE COURT

04:48PM 5    ABOUT HIS ANSWERS.

04:48PM 6         IT SEEMED TO ME THAT HIS DEMEANOR, HIS MANNERISM SEEMED TO

04:48PM 7    SUGGEST A GREATER COMFORT IN UNDERSTANDING THE CONCEPTS THAT WE

04:48PM 8    WERE, ALL OF US WERE DISCUSSING WITH HIM.

04:48PM 9         AND MAYBE THAT IS THE TRANSITION, AND MAYBE THAT'S THE

04:48PM 10   FORMATION TO THE ULTIMATE ANSWER WHERE HE SAID I CAN'T BE FAIR.

04:48PM 11        SO LET'S -- WE'RE GOING TO ASK HIM IF HE READ THE BOOK.

04:48PM 12        LET'S MOVE TO 26.

04:48PM 13            MR. DOWNEY:  26 IS ANOTHER INDIVIDUAL WHO IS

04:48PM 14   FAMILIAR WITH THERANOS FROM AN UNKNOWN NUMBER OF NEWS ARTICLES.

04:48PM 15   HE IDENTIFIED THAT IN QUESTION 40 IN THE QUESTIONNAIRE.  HE

04:48PM 16   ALSO ACKNOWLEDGED TO WATCHING THE ABC NEWS SPECIAL PROGRAM,

04:48PM 17   WHICH AGAIN WAS FULL OF PREJUDICIAL CONTENT TO MS. HOLMES.

04:48PM 18        HE ACKNOWLEDGED THAT IN RESPONSE TO THE ORIGINAL ARTICLES

04:48PM 19   THAT HE READ, HIS INTEREST WAS PIQUED WAS THE WORD THAT HE

04:48PM 20   USED, AND THAT THIS WAS A SUBJECT MATTER THAT HE WANTED TO

04:48PM 21   LEARN ABOUT.

04:48PM 22        I THINK HE ACKNOWLEDGED IN DISCUSSION DURING OUR COLLOQUY

04:48PM 23   THAT HE HAD SOME EXPECTATION THAT A DEFENDANT WOULD PUT ON

04:48PM 24   EVIDENCE.  I THINK WITH THOSE FACTORS COMBINED, I THINK IT WILL

04:48PM 25   BE VERY DIFFICULT FOR HIM TO MAINTAIN HIS OBJECTIVITY.

04:48PM 1          AGAIN, THIS IS AN INDIVIDUAL I THINK BEING PERFECTLY

04:48PM 2    HONEST AND FORTHRIGHT AND ACKNOWLEDGING WHAT HIS MINDSET IS.

04:48PM 3          HE ACKNOWLEDGED IN RESPONSE TO YOUR HONOR THAT HE

04:48PM 4    UNDERSTANDS THE LEGAL CONSTRUCT THAT THE DEFENDANT DOESN'T HAVE

04:48PM 5    AN OBLIGATION TO PRESENT EVIDENCE.

04:48PM 6          BUT HIS MINDSET IS ONE WHERE HE'S EXPECTING THE DEFENDANT

04:48PM 7    TO REBUT AND PLACING THAT BURDEN, AND HE HAS IN HIS MIND

04:48PM 8    PARTICULAR ALLEGATIONS THAT THE DEFENDANT SHOULD REBUT.

04:48PM 9          SO I THINK AS A RESULT OF HIS MEDIA EXPOSURE AND HIS

04:48PM 10   INCLINATION IN TERMS OF HIS VIEWS OF PROCEDURE, WE WOULD ASK

04:48PM 11   THAT HE BE DISMISSED FOR CAUSE.

04:48PM 12               THE COURT:  MR. SCHENK?

04:48PM 13               MR. SCHENK:  A COUPLE OF POINTS.

04:48PM 14         I THINK JUROR NUMBER 26 IS ROUGHLY THE THIRD OR FOURTH

04:48PM 15   JUROR WE HAVE TALKED ABOUT FOR CAUSE -- I'M SORRY, IF YOU

04:48PM 16   INCLUDE 31 AND 63, THE SIXTH JUROR.  I THINK HE'S THE THIRD OR

04:48PM 17   FOURTH OF SOUTHEAST ASIAN DESCENT.  I THINK WE SHOULD MAKE A

04:48PM 18   NOTE OF THAT AT THIS POINT.

04:48PM 19         THIS JUROR SAID THAT VIEWING THE 20/20 EPISODE WOULD NOT

04:48PM 20   IMPACT MY JUDGMENT.  I THINK HE SAID THAT MS. HOLMES WAS AN

04:48PM 21   INSPIRATION.  I WROTE THAT DOWN.

04:48PM 22         HE SAW HEADLINES.  BUT WE'VE HAD OTHER JURORS WHO HAVE

04:48PM 23   EXPRESSED SEEING HEADLINES WITHOUT CONSUMPTION OF THE

04:48PM 24   UNDERLYING ARTICLE.  THERE WAS ALSO THE DIALOGUE ABOUT A

04:48PM 25   DEFENDANT'S -- ONE LAST THING ON THAT POINT.  39 AND 65 IN THE

04:48PM 1    QUESTIONNAIRE HE BOTH ANSWERED NO TO.  I THINK THOSE QUESTIONS

04:48PM 2    ARE USEFUL IN ILLUMINATING WHETHER THE PERSON CAN BE FAIR

04:48PM 3    DURING THIS TRIAL.

04:48PM 4         AND THEN FINALLY, THERE WAS A DISCUSSION ABOUT DOES A

04:48PM 5    DEFENDANT HAVE TO PROVE INNOCENCE AND A QUESTION ABOUT ALMOST

04:48PM 6    THE WORD "SHOULD."

04:48PM 7         I THINK WHAT THE JUROR WAS EXPLAINING TO US WAS THAT HE

04:48PM 8    MEANT THAT THEY SHOULD HAVE THE OPPORTUNITY, NOT THE

04:48PM 9    APPLICATION TO.

04:48PM 10        FOR THOSE REASONS, I DON'T THINK THERE'S A NEED TO STRIKE

04:48PM 11   THIS JUROR FOR CAUSE.

04:48PM 12            THE COURT:  AS TO THE LATTER POINT, THAT WAS MY

04:48PM 13   UNDERSTANDING, MR. DOWNEY, WAS THAT QUESTION ABOUT PRESUMPTION

04:48PM 14   OF INNOCENCE AND THAT'S WHY I PROBED IT AFTER.  IT SEEMED TO

04:48PM 15   ME, JUST FROM, AGAIN, LOOKING AT HIM AND LOOKING AT HIS

04:48PM 16   EXPRESSIONS, THAT THE QUESTION WAS SOMETHING THAT HE DIDN'T

04:48PM 17   CAPTURE FULLY WHEN I ASKED HIM AS A FOLLOWUP, AND I THINK I

04:48PM 18   USED THE WORDS OBLIGATIONS AND OPPORTUNITY.

04:48PM 19        AND HE SAT BACK IN HIS CHAIR AND SAID I GET IT, I

04:48PM 20   UNDERSTAND THAT NOW, AND THANK YOU, AND THANKED THE COURT FOR

04:48PM 21   CLEARING THAT UP.  HE'S A LAYPERSON, AND WE KNOW THIS

04:48PM 22   PRESUMPTION OF INNOCENCE IS A CONCEPT THAT FOLKS DON'T CARRY

04:48PM 23   AROUND WITH THEM TYPICALLY.

04:48PM 24        SO TO THAT POINT I DON'T THINK THAT CERTAINLY SUGGESTS

04:48PM 25   THAT HE'S EXPECTING THE DEFENDANT TO PUT EVIDENCE ON.  I DON'T

04:48PM   1    THINK THAT BASED ON HIS DEMEANOR WHEN HE ANSWERED THE QUESTION.

04:48PM   2        I THINK HE UNDERSTANDS, DIDN'T HE, THAT THEY SHOULD

04:48PM   3    HAVE -- IF THEY HAVE EVIDENCE TO GO AGAINST THE ACCUSATION,

04:48PM   4    THEY SHOULD BE ABLE TO PUT IT ON.  THAT'S, THAT'S THE

04:48PM   5    OPPORTUNITY.  I THINK THAT'S, THAT'S -- IT MAY HAVE BEEN WHAT

04:48PM   6    HIS MINDSET WAS.  I APPRECIATE HIS FOLLOW-UP COLLOQUY.  SO I DO

04:48PM   7    THINK THAT HE MISUNDERSTOOD THAT QUESTION.

04:48PM   8        I AM MOVED BY THE ANSWERS TO 39, 62, AND 65.

04:48PM   9        HE DID TELL US THAT HE READ -- EXCUSE ME, THAT HE SAW -- I

04:48PM  10    THINK IT WAS THAT HE WATCHED "20/20."  HE SAID IT WOULD NOT

04:48PM  11    AFFECT HIS ABILITY TO BE FAIR.  HE SAID HE CAN BE FAIR.

04:48PM  12        THE QUESTIONNAIRE ASKS TWO OR THREE OTHER PLACES, IS THERE

04:48PM  13    ANYTHING ELSE THAT YOU CAN THINK OF THAT WE SHOULD KNOW AS TO

04:48PM  14    WHETHER OR NOT YOU CAN BE FAIR?

04:48PM  15        OF COURSE HE TOLD US WHAT HE SAW.  HE TOLD US IN REGARDS

04:48PM  16    TO THAT IT WOULD NOT AFFECT HIS ABILITY TO BE FAIR.  AND I, I,

04:48PM  17    FOR ALL OF THE REASONS STATED, I BELIEVE HIM, I THINK HE WAS

04:48PM  18    CANDID ABOUT HIS RESPONSE TO THAT.

04:48PM  19        I DON'T THINK THERE'S SUFFICIENT EVIDENCE TO STRIKE HIM

04:48PM  20    FOR CAUSE AT THIS TIME.  SO I'M GOING TO OVERRULE YOUR

04:48PM  21    OBJECTION AS TO HIM.

04:48PM  22        46 IS YOUR NEXT.

04:48PM  23            MR. DOWNEY:  YES, YOUR HONOR, I BELIEVE THAT'S

04:48PM  24    RIGHT.

04:48PM  25            THE COURT:  IT'S JUROR WONG.

04:48PM 1        MR. DOWNEY:  YOUR HONOR, I JUST WANTED TO PAUSE FOR

04:48PM 2    A MOMENT WITH RESPECT TO JUROR 35 WHO WAS THE JUROR THAT WE

04:48PM 3    JUST HAD THE COLLOQUY WITH, AND I REALIZED THAT I HAD

04:48PM 4    MISUNDERSTOOD THE ANSWER IN THE QUESTIONNAIRE.  THIS IS

04:48PM 5    MS. HERNANDEZ.

04:48PM 6        THE COURT:  THIS IS JUROR --

04:48PM 7        MR. DOWNEY:  I BELIEVE 35, YOUR HONOR.

04:48PM 8        MR. SCHENK:  NO, THAT'S 42.

04:48PM 9        THE COURT:  42 IS MS. HERNANDEZ.

04:48PM 10        MR. DOWNEY:  I BEG YOUR PARDON.  I'M CONFUSING TWO

04:48PM 11   JURORS.

04:48PM 12      I HAD MISUNDERSTOOD HER RESPONSE IN THE QUESTIONNAIRE.

04:48PM 13        THE COURT:  MS. HERNANDEZ YOU'RE SPEAKING OF?

04:48PM 14        MR. DOWNEY:  YES, MS. HERNANDEZ'S QUESTIONNAIRE

04:48PM 15   RESPONSE AS BEING ABOUT LANGUAGE AND NOT ABOUT COMPREHENSION.

04:48PM 16        THE COURT:  YES.

04:48PM 17        MR. DOWNEY:  I REALIZE NOW THAT SHE WAS EXPRESSING

04:48PM 18   IN CONNECTION WITH THE CASE, IN CONNECTION WITH THE LEARNING

04:48PM 19   DISORDER, SHE HAD A DIFFICULTY PROCESSING --

04:48PM 20        THE COURT:  A LEARNING DIFFERENCE.

04:48PM 21        MR. DOWNEY:  AND I APPRECIATED THAT AS I HAVE A

04:48PM 22   CHILD WHO IS SOMEONE WHO IS NEURO DIVERSE.

04:48PM 23      I WONDER IF YOUR HONOR THINKS IN THIS CIRCUMSTANCE THAT

04:48PM 24   THE JUROR HAVING EXPRESSED THAT CONCERN IS SOMEBODY WHO IS

04:48PM 25   APPROPRIATE TO DISMISS OR NOT?

04:48PM 1      I DON'T MOVE FOR CAUSE.  I WAS JUST STRUCK BY THE JUROR'S

04:48PM 2      STATEMENT ABOUT HER OWN INABILITY TO FOLLOW SOME ASPECTS OF THE

04:48PM 3      PROCEEDING.

04:48PM 4          THE COURT:  THANK YOU.  THANK YOU.  I -- YOU KNOW,

04:48PM 5      SHE WAS -- SHE WANTED TO SPEAK PRIVATELY.  IT WAS ABOUT HER

04:48PM 6      FAMILY SITUATION WITH DOMESTIC VIOLENCE.  SHE SHARED THAT WITH

04:48PM 7      US.  I KNOW THAT WAS DIFFICULT.

04:48PM 8          AND THEN IN RESPONSE TO THE QUESTIONS, I LOOKED AT HER

04:48PM 9      QUESTIONNAIRE AS WE DID, AND I THINK A COUPLE OF PLACES SHE

04:48PM 10     SAID I DIDN'T UNDERSTAND AND I'M NOT SURE.  AND THEN SHE TOLD

04:48PM 11     US SHE HAD AN IEP, AN EDUCATIONAL PLAN THAT SCHOOLS ARE

04:48PM 12     OBLIGATED TO PROVIDE WHERE THEY NEED IT.  I TALKED TO HER ABOUT

04:48PM 13     GOING TO A CALIFORNIA DISTINGUISHED HIGH SCHOOL AND A DIPLOMA

04:48PM 14     THAT SHE MATRICULATED WITH.

04:48PM 15         IT SEEMED TO ME THAT HER QUESTIONNAIRE WAS NOT LIKE SOME

04:48PM 16     OTHERS WHERE YOU'VE SEEN WHERE WHOLESALE PAGES WERE LEFT BLANK,

04:48PM 17     IGNORED.  SHE DID GIVE A GREAT EFFORT TO FILL THIS

04:48PM 18     QUESTIONNAIRE.  IT'S A LONG QUESTIONNAIRE.  IT'S NOT AS LONG AS

04:48PM 19     THE ONE YOU WANTED, MR. DOWNEY, BUT IT'S STILL LONG.  AND SHE

04:48PM 20     GAVE IT AN EFFORT.

04:48PM 21         I THINK IN HER RESPONSES, I THINK IT WAS -- THEY WERE VERY

04:48PM 22     CANDID, AND SHE WAS TELLING US I DID THE BEST THAT I COULD.

04:48PM 23         I DID NOT SEE ANY COGNITIVE DEFICIENCIES IN HER ANSWERS TO

04:48PM 24     THE QUESTIONNAIRE.  SHE ANSWERED AS BEST SHE COULD IN THE

04:48PM 25     APPROPRIATE BOXES AND THE APPROPRIATE AREAS, AND SHE TALKED

ABOUT LANGUAGE.

MY SENSE IS, I DIDN'T FOLLOW UP ON THIS, BUT MY SENSE IS
THAT SHE MIGHT HAVE -- SHE DID TELL US SHE SOMETIMES NEEDED TO
LOOK AT THINGS.  YOU PROBED ON THIS, I THINK.  SHE NEEDS TO
LOOK AT THINGS TWICE, MAYBE A FEW TIMES TO FOCUS AND COMPREHEND
IT.  AND I THINK THAT'S AN EXPRESSION OF HER CAPACITY TO
UNDERSTAND THINGS.

I DON'T THINK KEEPING SOMEONE LIKE THAT OFF THE JURY IS
SOMETHING THAT I'D LIKE TO DO UNLESS THERE'S MORE COGNITIVE
DIFFICULTIES THAN THAT.

I THINK SHE HAS A RIGHT TO PARTICIPATE IN A JURY SERVICE
AND THE JUSTICE SYSTEM AS WELL AS ANYBODY ELSE, AND YOU'RE NOT
SAYING THIS, BUT TO EXCUSE HER BECAUSE SHE HAS AN IEP AND
OTHERWISE HAS SOME OTHER FUNCTION, YOU'RE NOT SAYING THAT, BUT
YOU'RE CALLING OUT AT LEAST THE OBSERVATION THAT SHE MADE.

MR. DOWNEY:  I WAS CALLING OUT, YOUR HONOR, SHE
HERSELF EXPRESSED SOME DIFFICULTY WITH UNDERSTANDING QUESTIONS
IN THE QUESTIONNAIRE, AND SHE EXPLAINED THAT.

MY JUDGMENT IS NOT DIFFERENT FROM YOUR HONOR'S IN TERMS OF
EVALUATING HER.  I JUST WANTED TO HAVE A DISCUSSION ABOUT IT TO
MAKE SURE BECAUSE I HAD ACTUALLY NOT ADDRESSED IT IN DETAIL
WITH HER, AND I DIDN'T THINK SHE HAD SOME OBLIGATION TO DO SO.
SO I THINK WE'RE OF ONE MIND WITH RESPECT TO HER.

THE COURT:  THANK YOU.  SHE'S A WOMAN.  SHE APPEARS
TO BE LATINA AND SHE JUST GRADUATED.  SHE'S 19.  SO THIS IS A

04:48PM   1    NEW EXPERIENCE FOR HER, RIGHT?

04:48PM   2         I DON'T KNOW WHEN -- HOW YOUNG YOU WERE WHEN YOU HAD YOUR

04:48PM   3    FIRST JURY SERVICE.

04:48PM   4              MR. WADE:  NOT 19.

04:48PM   5              THE COURT:  OKAY.  46.

04:48PM   6         WERE WE TALKING ABOUT -- THAT WAS MR. WONG, I BELIEVE.  HE

04:48PM   7    TALKED ABOUT SEEING THINGS.  HE WAS -- IT SOUNDED LIKE HE WAS

04:48PM   8    REALLY INTERESTED IN THE INVESTMENT PART OF THE CONVERSATION.

04:48PM   9              MR. DOWNEY:  WELL, YOUR HONOR, I THINK WHEN HE WAS

04:48PM   10   ASKED WHAT DID HE KNOW ABOUT MS. HOLMES IN QUESTION 40 ON THE

04:48PM   11   QUESTIONNAIRE HE SAID CEO OF THERANOS PUSHED PRODUCT ON THE

04:48PM   12   MARKET BEFORE IT'S PROVEN EFFECTIVE.

04:48PM   13        I THINK ON 41 HE WAS ASKED ABOUT MR. BALWANI AND HE

04:48PM   14   REFLECTED THAT HE WAS AWARE OF A ROMANTIC RELATIONSHIP WITH

04:48PM   15   MS. HOLMES AND BOTH CONSPIRED TO DEFRAUD INVESTORS, AND I THINK

04:48PM   16   HE EXPRESSED SOME SKEPTICISM ABOUT THE MANNER IN WHICH THE

04:48PM   17   BUSINESS OF THERANOS EVOLVED.  HE INDICATED THAT HE HAD SEEN

04:48PM   18   OTHER SUCH CIRCUMSTANCES AND THAT THEY HAVE GIVEN RISE TO SOME

04:48PM   19   CONCERN ON HIS PART IN THE PAST.

04:48PM   20        SO I THINK THIS IS AN INDIVIDUAL WHO IS, AGAIN, IS BEING

04:48PM   21   HONEST AND CANDID IN DISCUSSING THESE THINGS, BUT IS

04:48PM   22   ACKNOWLEDGING, YOU KNOW, BELIEFS AND VIEWS ABOUT THE MATTERS

04:48PM   23   THAT ARE VERY MUCH IN DISPUTE IN THE CASE.

04:48PM   24              THE COURT:  MR. SCHENK?

04:48PM   25              MR. SCHENK:  YOUR HONOR, TO QUESTIONS 39 AND 65,

04:48PM  1    THIS JUROR RESPONDED NO IN THE QUESTIONNAIRE.

04:48PM  2        TO YOUR HONOR TODAY WHEN ASKED ABOUT HIS PRIOR EXPOSURE TO

04:48PM  3    "60 MINUTES" OR CONVERSATIONS WITH FRIENDS, I THINK HE SAID

04:48PM  4    THAT HE TALKED TO FRIENDS WHO KNEW MORE THAN HE DID ABOUT THIS

04:48PM  5    CASE.

04:48PM  6        IF THAT WOULD AFFECT HIS ABILITY TO BE FAIR, HE AGAIN SAID

04:48PM  7    NO.

04:48PM  8        SO WE HAVE IT IN THE QUESTIONNAIRE AND THEN WE HAVE IT IN

04:48PM  9    COURT TODAY.

04:48PM  10        WHEN ASKED AT THE VERY END WHAT -- HE SAID SOMETHING LIKE

04:48PM  11    I'M GLAD I DIDN'T INVEST IN THERANOS, AND I THINK THAT'S WHAT

04:48PM  12    YOUR HONOR WAS GETTING AT WITH HIS FOCUS ON THE INVESTMENT SIDE

04:48PM  13    OF THINGS.

04:48PM  14        THERE'S NO QUESTION THAT HE HAS KNOWLEDGE ABOUT THE CASE.

04:48PM  15    THAT'S NOT SOMETHING THAT IS DISQUALIFYING.  IT'S BRINGING THAT

04:48PM  16    KNOWLEDGE IN THE FORM OF BIAS INTO THE COURTROOM OR INTO THE

04:48PM  17    DELIBERATION ROOM, AND IT'S AT THAT STAGE WHERE HIS ANSWERS

04:48PM  18    SUGGEST HE SHOULD NOT BE STRUCK FOR CAUSE.

04:48PM  19        MR. DOWNEY:  YOUR HONOR, HE HAS A VIEW ABOUT

04:48PM  20    MS. HOLMES AS EXPRESSED IN THE QUESTIONNAIRE, AND HE HAS A VIEW

04:48PM  21    ABOUT THERANOS AND COMPANIES LIKE THERANOS.  HE'S DISCUSSED IT

04:48PM  22    EXTENSIVELY WITH OTHER PARTIES.

04:48PM  23        THE COURT:  I DON'T THINK HE TOLD US EXTENSIVELY,

04:48PM  24    MR. DOWNEY.

04:48PM  25        I THINK HE SAID FRIENDS SAW IT.  I THINK I'M RIGHT ABOUT

04:48PM 1    THAT.  HE SAYS FRIENDS SAW IT.

04:48PM 2        BUT HIS QUESTIONNAIRE SUGGESTS THAT HE MAY HAVE SEEN IT.

04:48PM 3    HE TALKED ABOUT FRIENDS SEEING IT, THEY TALKED ABOUT IT.  I

04:48PM 4    THINK YOU FOLLOWED UP, AND MAYBE MR. SCHENK DID, ABOUT THE

04:48PM 5    CONVERSATION AND HE SAID IT WAS MORE ON THE INVESTMENTS TALKING

04:48PM 6    ABOUT A LOT OF PEOPLE WHO LOST MONEY.

04:48PM 7        I UNDERSTAND THAT MAY BE THE EVIDENCE IN THIS CASE AND

04:48PM 8    PART OF THE PROOF OF THIS CASE.  I THINK HE SAID HE DID NOT

04:48PM 9    EXPRESS HIS OPINION ABOUT THE COMPANY.

04:48PM 10       HIS OPINION WAS THAT I'M GLAD I DIDN'T INVEST IN IT, AND I

04:48PM 11   THINK HIS ANSWER TO YOUR QUESTION PERHAPS WAS, I HAVE NO

04:48PM 12   OPINION ON MS. HOLMES AS SHE SITS HERE TODAY.

04:48PM 13       THAT TELLS ME HE'S A CLEAN SLATE, ALBEIT HE HAS EXPOSURE

04:48PM 14   TO SOME OF THIS OTHER MATERIAL LIKE MANY FOLKS TOLD US ABOUT.

04:48PM 15   WE SPENT THE BETTER PART OF THE MORNING TALKING ABOUT HEADLINES

04:48PM 16   THAT PEOPLE SAW AND STORIES THAT THEY READ AND WHAT THAT MEANT

04:48PM 17   TO HIM.

04:48PM 18       MY SENSE FROM HIM, AND I STARTED THE CONVERSATION OFF

04:48PM 19   OBSERVING THAT HE WAS LOOKING AT THIS AS AN INVESTMENT

04:48PM 20   OPPORTUNITY, AND THAT SEEMS TO BE THE TOTALITY OF HIS, OR THE

04:48PM 21   MAJORITY, I SHOULD SAY, OF HIS CONVERSATIONS WITH FRIENDS.

04:48PM 22       FRIENDS SAW IT I THINK IS WHAT HE TOLD US.  I THINK HE

04:48PM 23   SAID THAT IN HIS QUESTIONNAIRE.

04:48PM 24       ALTHOUGH I HAVE A NOTE THAT SAYS THAT HE READ SOMETHING,

04:48PM 25   AND I'M NOT CERTAIN.

04:48PM 1    QUESTION 38, MAYBE YOU HAVE YOUR QUESTIONNAIRES WITH YOU.

04:48PM 2    HIS RESPONSE TO QUESTION 38, WAS IT READ?

04:48PM 3         I DON'T HAVE IT AT MY FINGERTIPS.

04:48PM 4         MR. DOWNEY:  HE SAID THAT HE HAD PERHAPS WATCHED THE

04:48PM 5    "60 MINUTES" EPISODE, AND HE DESCRIBED WITH PARTICULARITY THE

04:48PM 6    ALLEGATIONS OF -- NOT ALLEGATIONS OF THIS CASE, NOT ARISING

04:48PM 7    FROM THIS CASE, BUT JUST DESCRIBING THE FACTS OF THE CASE AS

04:48PM 8    BEING THAT MS. HOLMES AND MR. BALWANI CONSPIRED TO DEFRAUD

04:48PM 9    INVESTORS.

04:48PM 10        THE COURT:  SO HE USED THE WORD "CONSPIRED"?

04:48PM 11        MR. DOWNEY:  HE USED THE WORD "CONSPIRED."

04:48PM 12        THE COURT:  IN HIS ANSWER TO 38?

04:48PM 13        MR. SCHENK:  ARE WE TALKING ABOUT JUROR 46?

04:48PM 14        THE COURT:  46.

04:48PM 15        MR. DOWNEY:  QUESTION 38 HE CHECKS YES, AND HE WROTE

04:48PM 16   READ ARTICLES.

04:48PM 17        THE COURT:  THAT'S WHAT IT WAS.

04:48PM 18        MR. DOWNEY:  I'M SORRY, YOUR HONOR.  I HAVE HIM AS

04:48PM 19   IN 37 -- I BEG YOUR PARDON.

04:48PM 20        THE COURT:  I DON'T REMEMBER HIM USING THE WORDS

04:48PM 21   THAT I --

04:48PM 22        MR. DOWNEY:  YEAH, 40 AND 41 ARE THE ANSWERS I'M

04:48PM 23   REFERRING TO.

04:48PM 24        I DON'T KNOW ABOUT "60 MINUTES."  I THOUGHT --

04:48PM 25        THE COURT:  THIS IS JUROR NUMBER 46; IS THAT RIGHT?

04:48PM  1          MR. SCHENK:  TO QUESTION 41, JUROR 46, THE QUESTION

04:48PM  2     IS, DO YOU HAVE FAMILIARITY WITH OR HAVE YOU HEARD ABOUT

04:48PM  3     THERANOS, MR. RAMESH "SUNNY" BALWANI, OR THIS CASE?

04:48PM  4          AND HE CHECKS YES, ROMANTIC RELATIONSHIP WITH MS. HOLMES,

04:48PM  5     AND BOTH CONSPIRED TO DEFRAUD INVESTORS.

04:48PM  6          MR. DOWNEY:  YES.  AND THAT'S WHAT I READ A MOMENT

04:48PM  7     AGO, AND I ALSO READ THE ANSWER TO NUMBER 40, DO YOU KNOW OR

04:48PM  8     HAVE YOU HEARD OF THE DEFENDANT, MS. HOLMES?

04:48PM  9          HE SAID CEO OF THERANOS, PUSHED PRODUCT ON MARKET BEFORE

04:48PM 10     IT'S PROVEN EFFECTIVE.

04:48PM 11          I APPRECIATE THAT HE'S SAYING THAT HE HAS NO OPINION AS HE

04:48PM 12     SITS HERE TODAY, BUT TEN DAYS AGO THAT'S HOW HE DESCRIBED THE

04:48PM 13     SITUATION.

04:48PM 14          WHAT I WAS UNCERTAIN OF, YOUR HONOR, AND WHAT I THOUGHT

04:48PM 15     YOUR HONOR WAS ASKING ABOUT WAS WHETHER HE HAD CONSUMED SOME OF

04:48PM 16     THE LONGER FORM DOCUMENTARIES.

04:48PM 17          I HAVE TO SAY I DON'T HAVE THE FULL QUESTIONNAIRE WITH ME,

04:48PM 18     BUT I THOUGHT THAT HE HAD READ "60 MINUTES" SOMEWHERE IN THE --

04:48PM 19     YEAH, WATCHED THE "60 MINUTES" SEGMENT.

04:48PM 20          MR. SCHENK DID NOT -- IS THAT WHAT YOU WERE REFERRING TO?

04:48PM 21     I THOUGHT YOU HAD SAID THAT HE HAD CIRCLED READING ARTICLES.

04:48PM 22     HE CIRCLED, IN 37, HAVE YOU READ, WATCHED, LISTENED TO, OR HAVE

04:48PM 23     BEEN TOLD OF THE FOLLOWING?  PLEASE CIRCLE.  HE CIRCLED THE

04:48PM 24     "60 MINUTES" EPISODE, AND THEN HE WROTE, WATCHED THE

04:48PM 25     "60 MINUTES" SEGMENT.

04:48PM 1          THE COURT:  MR. SCHENK, ANYTHING FURTHER?

04:48PM 2          MR. SCHENK:  NO, YOUR HONOR.  THE SAME COMMENTS I

04:48PM 3   MADE BEFORE.  QUESTIONS 39, 65, I THINK HE DREW A DISTINCTION

04:48PM 4   BETWEEN INFORMATION THAT HE WAS AWARE OF AND BIASES THAT HE

04:48PM 5   BRINGS WITH HIM TO THE TRIAL.

04:48PM 6          THE COURT:  ANYTHING FURTHER ON HIM?

04:48PM 7          MR. DOWNEY:  YOUR HONOR, I DON'T HAVE ANYTHING

04:48PM 8   FURTHER WITH RESPECT TO 46.

04:48PM 9          THE COURT:  WELL, I'M -- THANK YOU FOR POINTING OUT

04:48PM 10  THE ANSWERS TO QUESTIONS 40 AND 41.  I DON'T HAVE THOSE

04:48PM 11  REFLECTED ON MY NOTES.

04:48PM 12      I DO HAVE 40.

04:48PM 13      BUT WHAT I SUPPOSE STICKS OUT TO ME IS THE ANSWERS TO

04:48PM 14  QUESTIONS 39, 62, AND 65 WHERE HE SAYS HE CAN BE FAIR.

04:48PM 15      OF COURSE, TO YOUR POINT, THAT WAS AT THE TIME OF THE

04:48PM 16  QUESTIONNAIRE.

04:48PM 17      WHEN IS HE BEING EVALUATED FOR JURY SERVICE, TEN DAYS AGO

04:48PM 18  OR TODAY?  AND TODAY HE SAYS, I HAVE NO OPINION ON HER AS I SIT

04:48PM 19  HERE TODAY.

04:48PM 20      DOES THAT CARRY ANY WEIGHT TO YOU, MR. DOWNEY?

04:48PM 21          MR. DOWNEY:  YOUR HONOR, I CERTAINLY BELIEVE THAT

04:48PM 22  HE'S MAKING EFFECTIVELY THE SAME STATEMENT AS MANY OTHER

04:48PM 23  JURORS.  HE'S TRYING TO BE FAIR AND TRYING TO IMPOSE, YOU KNOW,

04:48PM 24  THE -- OR INDICATE THAT HE'D COMPLY WITH THE INSTRUCTIONS.

04:48PM 25      I JUST THINK IT'S VERY DIFFICULT IN LIGHT OF, OF THE VIEWS

04:48PM 1    THAT HE HELD AS A RESULT OF WATCHING MEDIA, TALKING WITH

04:48PM 2    FRIENDS ABOUT THE THINGS THAT HE HAD SEEN IN MEDIA, BASED ON

04:48PM 3    HIS VIEW OF THERANOS, YOU KNOW, NOT BEING A UNIQUE COMPANY, BUT

04:48PM 4    ACTUALLY BE A CLASS OF COMPANIES THAT HAVE THE SAME PROBLEM

04:48PM 5    WHICH HE DESCRIBED IN COURT TODAY I THINK IN SOME DETAIL.

04:48PM 6        PERHAPS HE DIDN'T USE THE WORD EXTENSIVELY, BUT I THOUGHT

04:48PM 7    HE SAID THAT HIS FRIENDS WERE ALWAYS TALKING.

04:48PM 8        I THINK IT'S A SUBJECT ON WHICH I HAVE NO CRITICISM OF THE

04:48PM 9    MAN.  I JUST THINK HE IS SOMEONE WHO HAS FORMED VIEWS BASED ON

04:48PM 10   WHAT HE HAS BEEN EXPOSED TO.

04:48PM 11       AND I THINK HE UNDERSTANDS THE INDUSTRY SOMEWHAT AND I

04:48PM 12   THINK IT'S LED HIM TO VIEW THIS WITHIN A PARTICULAR PATTERN

04:48PM 13   THAT HE'S FAMILIAR WITH.

04:48PM 14           THE COURT:  ALL RIGHT.  THANK YOU.

04:48PM 15       LET'S TALK ABOUT 49, MR. BURGE.  THAT'S YOUR NEXT ONE, I

04:48PM 16   BELIEVE.  HE COMMENTED ON SOCIAL MEDIA.

04:48PM 17           MR. DOWNEY:  YEAH, HE COMMENTED ABOUT MS. HOLMES

04:48PM 18   BEING A FRAUD ON SOCIAL MEDIA AND THAT SHE IS A DISAPPOINTMENT

04:48PM 19   TO HIM, AND I CAN TALK MORE EXTENSIVELY ABOUT HIS SOCIAL MEDIA.

04:48PM 20       I THINK HE HAD A SIGNIFICANT HARDSHIP ISSUE.  AS I

04:48PM 21   UNDERSTAND IT, HE WAS A PRIMARY, IF NOT THE SOLE, BUT A PRIMARY

04:48PM 22   CARETAKER IN CONNECTION WITH HIS FATHER, I BELIEVE IT WAS.

04:48PM 23           MS. TREFZ:  HIS MOTHER.

04:48PM 24           THE COURT:  I BELIEVE IT WAS HIS MOTHER HAD

04:48PM 25   ALZHEIMER'S.  HE MOVED IN WITH HIS PARENTS WITH HIS SON AND

04:48PM 1    HE'S WORKING FROM HOME NOW, BUT THAT THE SON OFFERED SOME

04:48PM 2    ASSISTANCE TO THE MOTHER.

04:48PM 3         I DON'T THINK, AS TO QUESTION 1, YOU HAVE IT IN FRONT OF

04:48PM 4    YOU, DID HE INDICATE -- QUESTION 1 I THINK ASKS, IS THERE ANY

04:48PM 5    REASON YOU CAN'T SERVE HERE, AND WHAT WAS HIS RESPONSE TO

04:48PM 6    QUESTION 1?

04:48PM 7              MR. SCHENK:  YES.  I HAVE TWO CHILDREN THAT WILL

04:48PM 8    NEED TO BE SHUTTLED BACK AND FORTH TO SCHOOL AND LOOKED AFTER.

04:48PM 9              THE COURT:  HE DIDN'T SAY ANYTHING ABOUT HIS PARENT.

04:48PM 10             MS. TREFZ:  DID HE SAY IT LATER?  I THINK HE SAID IT

04:48PM 11   LATER IN THE QUESTIONNAIRE.  I APOLOGIZE.  I DON'T HAVE IT.

04:48PM 12        IN QUESTION 8, IS THERE ANYTHING ELSE GOING ON IN YOUR

04:48PM 13   LIFE?

04:48PM 14        HE SAID, YES, I LOOK AFTER MY PARENTS DAILY IN ADDITION TO

04:48PM 15   CHILD CARE.

04:48PM 16             THE COURT:  MR. SCHENK, DO YOU WANT TO BE HEARD ON

04:48PM 17   THIS?

04:48PM 18             MR. SCHENK:  MAYBE I'LL START WITH A QUESTION.  DID

04:48PM 19   HE ASK TO BE EXCUSED FOR -- I KNOW HE DIDN'T SAY THE WORD

04:48PM 20   "HARDSHIP," BUT BECAUSE OF HIS PARENTS?  I KNOW HE TALKED ABOUT

04:48PM 21   THE VACATION.  IT'S BEEN A LONG TIME SINCE HE'S GOTTEN TO TAKE

04:48PM 22   A VACATION.  I DON'T REMEMBER ASKING HIM --

04:48PM 23             THE COURT:  I DON'T THINK HE DID.  I DON'T HAVE A

04:48PM 24   RECOLLECTION.  I DON'T HAVE IT IN MY NOTES THAT HE ASKED TO BE

04:48PM 25   EXCUSED.  I DON'T THINK HE DID.

04:48PM  1    I DID NOTE HIS QUESTIONNAIRE IN MY NOTES, AND I REMEMBER

04:48PM  2 IT JUST BECAUSE OF THE -- I DON'T THINK HE TOLD US IN THE

04:48PM  3 QUESTIONNAIRE THAT HIS MOTHER HAD ALZHEIMER'S, BUT HE DID

04:48PM  4 MENTION CARE.

04:48PM  5    MR. SCHENK:  THEN THE GOVERNMENT'S VIEW IS THAT HE

04:48PM  6 SHOULD NOT BE EXCUSED, AT LEAST YET, FOR CAUSE OR HARDSHIP FOR

04:48PM  7 CARE FOR PARENTS.  I DON'T THINK HE'S ASKED FOR THAT.

04:48PM  8    MR. DOWNEY:  YOUR HONOR, I THOUGHT WHEN I HAD ASKED

04:48PM  9 HIM WHETHER THERE WAS ANY HARDSHIP, THIS IS WHAT HE HAD

04:48PM 10 MENTIONED.  BUT I CAN'T SAY I RECALL THE PRECISE STATEMENT, BUT

04:48PM 11 I THOUGHT IF HE DIDN'T ASK IN CONNECTION WITH THE QUESTIONNAIRE

04:48PM 12 THAT HE DID, BUT I MAY BE MISTAKEN ABOUT THAT.

04:48PM 13   I THINK THERE ARE OTHER ISSUES WITH REGARD TO THE JUROR

04:48PM 14 ALSO WHICH I CAN DISCUSS WITH YOUR HONOR, BUT I THOUGHT THIS

04:48PM 15 WAS A FAIRLY SYMPATHETIC HARDSHIP CASE.

04:48PM 16    THE COURT:  WELL, IT IS.  THE FACTS THAT HE'S TOLD

04:48PM 17 US ABOUT HIS MOTHER HAVING ALZHEIMER'S AND LIVING AT THE HOUSE

04:48PM 18 AND HE TALKED ABOUT THERE LIVING WITH HIS SON.  HE JUST SET THE

04:48PM 19 TABLE, BUT HE DIDN'T MAKE THE REQUEST, DID HE?

04:48PM 20   THAT'S -- HE TOLD US ABOUT THE CHALLENGES THAT HE FACES,

04:48PM 21 AND PERHAPS HE WAS LOOKING TO THE COURT TO PUT THAT ALL

04:48PM 22 TOGETHER ON MY OWN AND SAY HE SHOULD BE TAKING CARE OF HIS

04:48PM 23 MOTHER NOW THAT HIS SON WAS BACK IN.

04:48PM 24   I THINK HE SAID HE IS THE PRINCIPAL CARETAKER FOR BOTH OF

04:48PM 25 HIS PARENTS.

04:48PM  1          ALL RIGHT.  WELL, LET'S -- I'LL RELEASE HIM.  WE'LL STRIKE

04:48PM  2     HIM NOT FOR CAUSE BUT FOR HARDSHIP TO CARE FOR HIS PARENTS.

04:48PM  3          94 -- EXCUSE ME.  81 IS NEXT.  THIS IS GOMEZ-MUNO.  WE

04:48PM  4     REALLY DIDN'T TALK TO HER.  SHE STOOD UP ON HER OWN AND SAID I

04:48PM  5     HAVE A PROBLEM, I JUST WANT TO TALK ABOUT ENGLISH.

04:48PM  6          AND THEN I THINK YOU ASKED HER, MR. DOWNEY, I DON'T KNOW

04:48PM  7     IF THIS IS YOUR OBJECTION OR NOT, LANGUAGE, SHE SAID I HAVE NO

04:48PM  8     PROBLEM HEARING.  I CAN FOLLOW TODAY.

04:48PM  9          MR. DOWNEY:  YOUR HONOR, I THINK THE QUESTION WITH

04:48PM 10     REGARD TO MS. GOMEZ IS, FRANKLY, A CLOSE CALL.  I THINK SHE

04:48PM 11     INDICATED, YOU KNOW, TO MY SATISFACTION THAT NOTHING HAD

04:48PM 12     HAPPENED YET AS OF TODAY THAT WAS SOMETHING THAT SHE FELT SHE

04:48PM 13     COULDN'T UNDERSTAND.

04:48PM 14          SHE DID EXPRESS, THOUGH, SOME CONCERN ABOUT SOME

04:48PM 15     COMPREHENSION BECAUSE ENGLISH IS HER SECOND LANGUAGE, AND SHE

04:48PM 16     TOLD US IN THE QUESTIONNAIRE THAT SHE WAS AFRAID THAT SHE

04:48PM 17     WOULDN'T UNDERSTAND EVERYTHING ABOUT THE CASE BECAUSE ENGLISH

04:48PM 18     IS MY SECOND LANGUAGE, SO MY OPINION, SHE SAYS, COULD NOT BE

04:48PM 19     THE CORRECT ONE.

04:48PM 20          THAT'S A DIFFICULT JUROR FOR US NOT TO ASK TO BE EXCUSED

04:48PM 21     BECAUSE, YOU KNOW, THIS WILL BE A LONG TRIAL AND THERE MAY BE,

04:48PM 22     YOU KNOW, PRESENTATION ON SOME COMPLEX ISSUES.

04:48PM 23          SO FROM MY PERSPECTIVE, I THINK THE LANGUAGE CHALLENGES

04:48PM 24     MAY BE A BASIS AND SUGGEST THAT THIS WOMAN SHOULD NOT SERVE AS

04:48PM 25     A JUROR IN THIS CASE, WHICH HAS A LOT OF COMPLEX DOCUMENTS AND

04:48PM 1    TERMINOLOGY AND SO FORTH.

04:48PM 2             THE COURT:  OKAY.

04:48PM 3             MR. SCHENK:  I DON'T THINK THERE'S A BASIS FOR IT

04:48PM 4    YET.  SHE SAID THAT TODAY HAS BEEN OKAY.  SHE HAS BEEN ABLE TO

04:48PM 5    FOLLOW THINGS.

04:48PM 6        IF THERE'S ENOUGH IN THE QUESTIONNAIRE TO JUSTIFY FURTHER

04:48PM 7    QUESTIONING, I CERTAINLY WOULDN'T OBJECT TO DOING THAT.  BUT I

04:48PM 8    DON'T THINK THERE'S A BASIS TO EXCLUDE HER FROM JURY SERVICE AT

04:48PM 9    THIS STAGE.

04:48PM 10            THE COURT:  I, I WAS TAKEN BY HER WANTING TO AT

04:48PM 11   LEAST LET US KNOW ABOUT A LANGUAGE ISSUE.

04:48PM 12       AND SHE'S SEATED IN THE BACK, ISN'T SHE?  SHE'S ABOUT FOUR

04:48PM 13   ROWS DEEP IN THE BACK.  I'M SURE IT'S DIFFICULT TO LISTEN FOR

04:48PM 14   SOMEONE WHOSE FIRST LANGUAGE IS NOT ENGLISH THERE.

04:48PM 15       BUT SHE DID, WHEN PROBED -- AND I'M GLAD YOU ASKED THE

04:48PM 16   QUESTION, DID YOU HAVE ANY DIFFICULTY TODAY?  HAVE YOU HEARD

04:48PM 17   EVERYTHING TODAY?

04:48PM 18       AGAIN, THE RECORD DOESN'T REFLECT HER -- SHE SAID, OH,

04:48PM 19   YES, WITH THIS KIND OF VOICE, HER VOICE WAS RAISED AND WITH

04:48PM 20   ENTHUSIASM.  YES, TODAY?  NO, NOT A PROBLEM.

04:48PM 21       SO THAT WAS REASSURING TO ME THAT SHE WAS FOLLOWING

04:48PM 22   THINGS.

04:48PM 23       I UNDERSTAND THAT THE INFORMATION, THE EVIDENCE IN THE

04:48PM 24   TRIAL MIGHT BE COMPLICATED.  IT COULD BE COMPLICATED FOR ANY

04:48PM 25   LAYPERSON, AND THAT'S THE TASK OF LAWYERS TO MAKE IT ACCESSIBLE

04:48PM 1    TO EVERYONE.

04:48PM 2         SO I'M NOT GOING TO STRIKE HER FOR LANGUAGE.  I DON'T

04:48PM 3    THINK IT RISES TO THAT LEVEL, SO I'LL OVERRULE THAT OBJECTION

04:48PM 4    AS TO HER.

04:48PM 5         AND THEN 94, I BELIEVE, IS YOUR NEXT ONE.

04:48PM 6              MR. DOWNEY:  YOUR HONOR, CAN I JUST TAKE ONE MOMENT?

04:48PM 7              THE COURT:  YES.  I THINK 94 IS MR. LEE; IS THAT

04:48PM 8    RIGHT?

04:48PM 9              MS. TREFZ:  YES.

04:48PM 10             MR. SCHENK:  YES.

04:48PM 11        (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

04:48PM 12             MR. DOWNEY:  YOUR HONOR, I THINK THAT MR. SCHENK HAD

04:48PM 13   PREVIOUSLY SUGGESTED THAT THOSE JURORS WHO HAVE READ

04:48PM 14   "BAD BLOOD" SHOULD BE DISMISSED.

04:48PM 15        JUROR 90 HAD INDICATED THAT SHE HAD READ --

04:48PM 16             THE COURT:  CAN WE DO 94?

04:48PM 17             MR. DOWNEY:  YEAH, I HADN'T MENTIONED 90.

04:48PM 18             THE COURT:  RIGHT.  HE LOST HIS JOB, MR. LEE DID, AT

04:48PM 19   TWO COMPANIES.  HE'S BIASED VERSUS CEO'S.  I THINK THAT'S WHAT

04:48PM 20   HE TALKED ABOUT.

04:48PM 21             MR. DOWNEY:  YOUR HONOR, I THINK HE EXPRESSED BOTH

04:48PM 22   TODAY AND IN RESPONSE TO QUESTION 54 ON THE QUESTIONNAIRE THAT

04:48PM 23   HE HAS A BIAS AGAINST CERTAIN POSITIONS IN BUSINESS,

04:48PM 24   INDIVIDUALS LIKE CEO'S OR MANAGEMENT.

04:48PM 25        HE ALSO INDICATED THAT IF HIGH LEVEL MANAGEMENT WAS A

04:48PM   1    PARTY THAT WAS CHARGED IN RESPONSE -- THAT THEY WERE PROBABLY

04:48PM   2    GUILTY IN RESPONSE TO QUESTION 57.

04:48PM   3        SO I THINK THAT IS NOT AN APPROPRIATE JUROR TO SIT IN THIS

04:48PM   4    CASE.

04:48PM   5            THE COURT:  MR. SCHENK?

04:48PM   6            MR. SCHENK:  WE AGREE.

04:48PM   7            THE COURT:  ALL RIGHT.  WE'LL STRIKE 94.  94 WILL BE

04:48PM   8    STRICKEN FOR CAUSE.

04:48PM   9        LET'S MOVE TO 95 WHILE WE'RE HERE.  THAT'S MR. KRAY.  YOU

04:48PM   10   ASKED HIM ABOUT A QUESTION AND HE SAID PROBABLY GUILTY.

04:48PM   11           MR. DOWNEY:  HE DID, YOUR HONOR.  I THINK HE

04:48PM   12   EXPRESSED A BELIEF BEFORE THE CASE BEGAN AS TO THE APPROPRIATE

04:48PM   13   OUTCOME.  HE SAID HE WAS NOT GOING TO CHANGE THAT VIEW IN

04:48PM   14   RESPONSE TO HIS COLLOQUY WITH BOTH -- CERTAINLY WITH ME, AND I

04:48PM   15   THINK PERHAPS THE COURT.

04:48PM   16       SO I DON'T THINK HE SHOULD SERVE.

04:48PM   17       HE ALSO INDICATED ON THE QUESTIONNAIRE THAT THE DEFENDANTS

04:48PM   18   WHO ARE CHARGED ARE PROBABLY GUILTY, AND HE AFFIRMED THAT VIEW

04:48PM   19   TODAY.

04:48PM   20       I ALSO NOTED THAT AND DIDN'T INQUIRE AS TO WHAT THE

04:48PM   21   RELIGIOUS HOLIDAYS WERE OR WHAT THE -- BUT HE DID NOTE THAT HE

04:48PM   22   REFLECTED THAT HE HAD A SCHEDULE THAT WILL WOULD BE SOMEWHAT

04:48PM   23   DISRUPTIVE TO THE TRIAL SCHEDULE.

04:48PM   24           THE COURT:  HE SAID HE COULD NOT COME ON THOSE DAYS.

04:48PM   25   HE WAS VERY AFFIRMATIVE ABOUT THAT.

04:48PM 1      I'LL JUST TELL YOU THAT MS. KRATZMANN INFORMED ME IN THE

04:48PM 2      HALLWAY AS I WAS WALKING IN, I THINK WAS THIS THE JUROR,

04:48PM 3      MS. KRATZMANN, THAT YOU HAD A CONVERSATION WITH HIM ABOUT HIS

04:48PM 4      HAT?

04:48PM 5                  THE CLERK:  YES, YOUR HONOR.

04:48PM 6                  THE COURT:  MS. KRATZMANN INFORMED ME THAT THERE WAS

04:48PM 7      A JUROR, A PROSPECTIVE JUROR WHO WAS WEARING A BASEBALL CAP.

04:48PM 8      SHE ASKED HIM TO TAKE IT OFF AND HE TOLD HER HE WEARS IT FOR

04:48PM 9      RELIGIOUS REASONS, AND HE TURNED IT AROUND SO THE BRIM IS IN

04:48PM 10     THE BACK AND THAT'S HOW HE APPEARS IN COURT NOW WITH THE

04:48PM 11     REVERSE CAP.

04:48PM 12         MR. SCHENK?

04:48PM 13                 MR. SCHENK:  WE DON'T HAVE AN OBJECTION TO RELEASING

04:48PM 14     HIM FOR THE SCHEDULING CONFLICTS THAT HIS RELIGIOUS OBSERVATION

04:48PM 15     WOULD PRESENT.

04:48PM 16                 THE COURT:  ALL RIGHT.  WE'LL RELEASE MR. KRAY,

04:48PM 17     JUROR NUMBER 95.

04:48PM 18         AND THEN 90, I THINK YOU'RE SUGGESTING THAT 90 READ THE

04:48PM 19     BOOK.

04:48PM 20                 MR. DOWNEY:  SHE READ IT IN PART.  THIS IS WHAT

04:48PM 21     SHE --

04:48PM 22                 THE COURT:  OH, SHE DID.

04:48PM 23                 MR. DOWNEY:  IN THE QUESTIONNAIRE NUMBER 37.

04:48PM 24                 THE COURT:  SO WE SHOULD EXCUSE HER FOR HALF OF THE

04:48PM 25     TRIAL.

04:48PM  1          (LAUGHTER.)

04:48PM  2              MR. DOWNEY:  PERHAPS SHE ALREADY KNOWS.

04:48PM  3              THE COURT:  YOU CAN PICK WHAT HALF YOU WOULD LIKE

04:48PM  4      HER TO SIT IN.

04:48PM  5          MR. SCHENK?

04:48PM  6              MR. SCHENK:  I HATE TO BE DIFFICULT.  WE'RE ALREADY

04:48PM  7      ASKING JUROR 26 -- I'M SORRY, JUROR 14 IF HE READ THE BOOK.

04:48PM  8          CAN WE ASK JUROR 90 ABOUT THE AMOUNT OF CONSUMPTION?

04:48PM  9              THE COURT:  SURE.  YES, I THINK WE CAN DO THAT.

04:48PM 10              THE CLERK:  YOUR HONOR, CAN I GET CLARIFICATION ON

04:48PM 11      95?  IS THAT EXCUSED FOR CAUSE OR HARDSHIP?

04:48PM 12              THE COURT:  HARDSHIP.

04:48PM 13          AND I THINK THAT LEAVES JUST MR. WONG AS PENDING.  DID WE

04:48PM 14      GET RESOLUTION ON JUROR 14?

04:48PM 15              MR. SCHENK:  I THINK WE NEED TO BRING 14 BACK, BUT I

04:48PM 16      DON'T THINK YOUR HONOR RULED ON JUROR 46.

04:48PM 17              THE COURT:  THAT'S MR. WONG; IS THAT RIGHT?  I THINK

04:48PM 18      THAT'S CORRECT.

04:48PM 19              MR. SCHENK:  THAT'S CORRECT.

04:48PM 20              MS. TREFZ:  YES.

04:48PM 21              THE COURT:  OKAY.  WELL, LET'S -- MR. WONG IS

04:48PM 22      PENDING.  WHAT I'D LIKE TO DO IS TO GO OUT AND LET'S HAVE A

04:48PM 23      CONVERSATION WITH MR. CHUANG AS TO WHETHER HE READ THE BOOK,

04:48PM 24      AND THEN THE JUROR WE WERE JUST TALKING ABOUT --

04:48PM 25              MS. TREFZ:  90.

| | | |
|---|---|---|
| 04:48PM | 1 | THE COURT:  THANK YOU.  YES.  THANK YOU. |
| 04:48PM | 2 | AND THEN WE'RE CLOSE TO ENDING OUR DAY TODAY. |
| 04:48PM | 3 | TOMORROW WE HAVE HOW MANY JURORS COMING IN, MS. KRATZMANN? |
| 04:48PM | 4 | THE CLERK:  46. |
| 04:48PM | 5 | THE COURT:  OKAY. |
| 04:48PM | 6 | MR. SCHENK:  HOW MANY ARE ACTUALLY GOING TO COME IN? |
| 04:48PM | 7 | THE CLERK:  WE'LL HAVE TO FLIP A COIN ON THAT ONE. |
| 04:48PM | 8 | THE COURT:  ANYTHING FURTHER BEFORE WE GO OUT? |
| 04:48PM | 9 | MR. SCHENK:  NO, THANK YOU. |
| 04:48PM | 10 | MR. DOWNEY:  NO, YOUR HONOR. |
| 04:48PM | 11 | THE COURT:  WHEN WE GET THE ANSWERS TO THE QUESTIONS |
| 04:48PM | 12 | OF READING THE BOOK, I'LL JUST ASK YOU TO MAKE YOUR COMMENTS IN |
| 04:48PM | 13 | COURT.  WE DON'T HAVE TO COME BACK HERE. |
| 04:48PM | 14 | ALL RIGHT.  THANK YOU. |
| 04:48PM | 15 | (END OF DISCUSSION AT SIDE-BAR.) |
| 04:48PM | 16 | THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD. |
| 04:48PM | 17 | ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 04:48PM | 18 | THANK YOU FOR YOUR PATIENCE AGAIN, LADIES AND GENTLEMEN. |
| 04:48PM | 19 | I DID WANT TO FOLLOW UP WITH A COUPLE OF JURORS, AND LET'S |
| 04:48PM | 20 | SEE. |
| 04:48PM | 21 | JUROR NUMBER 90.  THAT'S MS. RAMER.  YES, WHY DON'T YOU |
| 04:49PM | 22 | COME FORWARD, MS. RAMER.  I JUST HAVE A QUESTION ABOUT -- I |
| 04:49PM | 23 | THINK YOU HAD SAID IN YOUR QUESTIONNAIRE THAT YOU HAD READ A |
| 04:49PM | 24 | BOOK. |
| 04:49PM | 25 | PROSPECTIVE JUROR:  I READ THE BEGINNING PART OF |

04:49PM 1      "BAD BLOOD."

04:49PM 2                  THE COURT:  OKAY.  AND HOW, HOW FAR DID YOU GET IN

04:49PM 3      THE BOOK?

04:49PM 4                  PROSPECTIVE JUROR:  MAYBE A CHAPTER.

04:49PM 5                  THE COURT:  OH, ONE CHAPTER?

04:49PM 6                  PROSPECTIVE JUROR:  YEAH.

04:49PM 7                  THE COURT:  OH, OKAY.

04:49PM 8                  PROSPECTIVE JUROR:  I DIDN'T LIKE THE STYLE, SO I

04:49PM 9      JUST STOPPED READING.

04:49PM 10                 THE COURT:  OKAY.  DID YOU READ -- I'M SORRY TO

04:49PM 11     DRILL DOWN ON THIS, BUT DID YOU READ THE ENTIRETY OF THE

04:49PM 12     CHAPTER, OR DID YOU SKIM THE CHAPTER?  DID YOU FINISH THE

04:49PM 13     COMPLETE CHAPTER?

04:49PM 14                 PROSPECTIVE JUROR:  I'M NOT SURE.  IT WAS A LONG

04:49PM 15     TIME AGO.  I STARTED READING IT.  IT DIDN'T APPEAL TO ME.  I

04:49PM 16     STOPPED.

04:49PM 17                 THE COURT:  OKAY.

04:49PM 18                 PROSPECTIVE JUROR:  MY GUESS IS A CHAPTER.

04:49PM 19                 THE COURT:  YOU'RE QUITE CONFIDENT THAT YOU NEVER

04:49PM 20     GOT TO CHAPTER 2?

04:49PM 21                 PROSPECTIVE JUROR:  PRETTY CONFIDENT, YEAH.

04:49PM 22                 THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

04:49PM 23        IS THERE ANYTHING ABOUT CHAPTER 1 OR ANYTHING THAT YOU'VE

04:50PM 24     READ, THE DUST COVER, ANYTHING ABOUT THAT BOOK, DID YOU READ IT

04:50PM 25     ONLINE OR DID YOU READ A HARD COPY?

04:50PM 1               PROSPECTIVE JUROR:  NO, A FRIEND GAVE ME A COPY OF

04:50PM 2  IT.

04:50PM 3               THE COURT:  A FRIEND GAVE YOU A COPY.  A HARD COPY?

04:50PM 4               PROSPECTIVE JUROR:  YES.

04:50PM 5               THE COURT:  AND THEN YOU GOT A CHAPTER IN AND THEN

04:50PM 6  YOU STOPPED?

04:50PM 7               PROSPECTIVE JUROR:  YES.

04:50PM 8               THE COURT:  DID YOU RETURN THE BOOK TO THE FRIEND?

04:50PM 9               PROSPECTIVE JUROR:  NO.  IT'S STILL -- IT'S PACKED.

04:50PM 10  I RECENTLY MOVED.  IT'S BACKED IN A BOX WITH ALL OF THE REST OF

04:50PM 11  MY BOOKS.

04:50PM 12              THE COURT:  I SEE.  YOU HAVE NO ACCESS TO IT?

04:50PM 13              PROSPECTIVE JUROR:  I MEAN, I COULD GET TO IT IF I

04:50PM 14  NEEDED TO, BUT IT WOULD INVOLVE UNPACKING AN AWFUL LOT OF BOXES

04:50PM 15  OF BOOKS.

04:50PM 16              THE COURT:  ALL RIGHT.  THANK YOU.

04:50PM 17          MR. SCHENK, ANY QUESTIONS?

04:50PM 18              MR. SCHENK:  NO, YOUR HONOR.

04:50PM 19              MR. DOWNEY:  MS. RAMER, HAVE YOU READ OR WATCHED

04:50PM 20  ANYTHING THAT WOULD SUMMARIZE THE BOOK IN ANY WAY?

04:50PM 21              PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

04:50PM 22              THE COURT:  NOTHING THAT COMES TO YOUR MIND TODAY

04:50PM 23  THAT YOU HAVE SEEN, A VIDEO OR SUMMARY?

04:50PM 24              PROSPECTIVE JUROR:  ABOUT THE CONTENTS OF THAT BOOK?

04:51PM 25              THE COURT:  YES.

04:51PM  1                    PROSPECTIVE JUROR:  NO.

04:51PM  2                    THE COURT:  ANYTHING FURTHER?

04:51PM  3                    MR. DOWNEY:  NOTHING FURTHER.

04:51PM  4                    MR. SCHENK:  NO, YOUR HONOR.

04:51PM  5                    THE COURT:  THANK YOU, MS. RAMER.

04:51PM  6             AND LET ME TURN TO JUROR 14, PLEASE.  AND THAT'S

04:51PM  7       MR. CHUANG.

04:51PM  8             YES, I HAVE THE SAME QUESTION ABOUT THE BOOK.

04:51PM  9             DID YOU READ THE BOOK, SIR?

04:51PM  10                   PROSPECTIVE JUROR:  NO, NOT THE BOOK.  I THINK IT'S

04:51PM  11      JUST --

04:51PM  12                   THE COURT:  I'M GOING TO -- YES, WHY DON'T YOU WALK

04:51PM  13      TO THE MICROPHONE.  THAT'S PROBABLY BEST.

04:51PM  14                   PROSPECTIVE JUROR:  NO.  JUST THE DOCUMENTARY, NOT

04:51PM  15      THE BOOK.

04:51PM  16                   THE COURT:  YOU DIDN'T READ THE BOOK AT ALL?

04:51PM  17                   PROSPECTIVE JUROR:  NO, I DIDN'T READ THE BOOK.

04:51PM  18                   THE COURT:  ALL RIGHT.

04:51PM  19             ANY QUESTIONS, MR. SCHENK?

04:51PM  20                   MR. SCHENK:  NO.  THANK YOU.

04:51PM  21                   THE COURT:  MR. DOWNEY?

04:51PM  22                   MR. DOWNEY:  NO, YOUR HONOR.

04:52PM  23                   THE COURT:  THANK YOU.  YOU CAN HAVE A SEAT.

04:52PM  24             MR. DOWNEY, AS TO NUMBER 90?

04:52PM  25                   MR. DOWNEY:  NO MOTION, YOUR HONOR.

04:52PM  1              THE COURT:  ALL RIGHT.  THANK YOU.

04:52PM  2          AND AS TO 14 FOR THE --

04:52PM  3              MR. DOWNEY:  I TAKE THE SAME POSITION THAT I STATED

04:52PM  4      TO YOUR HONOR WHEN WE WERE AT SIDE-BAR.

04:52PM  5              THE COURT:  ALL RIGHT.  THANK YOU.

04:53PM  6          (PAUSE IN PROCEEDINGS.)

04:53PM  7              THE COURT:  MR. SCHENK?

04:53PM  8              MR. SCHENK:  NOTHING BEYOND WHAT WE DISCUSSED AT

04:53PM  9      SIDE-BAR.

04:53PM 10              THE COURT:  THANK YOU.  ALL RIGHT.  THANK YOU.

04:53PM 11          I'M GOING TO RELIEVE -- GRANT THE MOTION AS TO JUROR

04:54PM 12      NUMBER 46, 46.

04:54PM 13          NUMBER 90 WAS WITHDRAWN.

04:54PM 14          I'LL OVERRULE AS TO 14.

04:54PM 15          SO 46, MR. WONG WAS GRANTED FOR REASONS STATED.

04:54PM 16          ANYTHING FURTHER FOR TODAY?

04:54PM 17              MR. SCHENK:  NO, YOUR HONOR.

04:54PM 18              MR. DOWNEY:  NO, YOUR HONOR.

04:54PM 19              THE COURT:  ALL RIGHT.  THANK YOU.

04:54PM 20          LADIES AND GENTLEMEN, AS I INDICATED EARLIER, WHAT YOU'RE

04:54PM 21      PERMITTED TO DO NOW, YOU'LL BE PERMITTED TO LEAVE THE

04:54PM 22      COURTHOUSE.

04:54PM 23          YOU WILL BE CONTACTED -- DID THEY GO DOWNSTAIRS?  NO.

04:54PM 24          (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

04:55PM 25      CLERK.)

04:55PM 1                    (PAUSE IN PROCEEDINGS.)

04:55PM 2                    THE COURT:  LADIES AND GENTLEMEN, PLEASE LISTEN FOR

04:55PM 3       YOUR NUMBERS.  WE HAVE MADE DECISIONS ABOUT JURORS WHO DO NOT

04:55PM 4       NEED TO CHECK IN WITH THE COURT AND YOU WILL BE RELEASED FROM

04:55PM 5       POTENTIAL JURY SERVICE.

04:55PM 6                    THOSE ARE JUROR NUMBERS:  1, 31, 63, 11, 94, 46, 49, AND

04:55PM 7       95.

04:55PM 8                    THOSE JURORS, THOSE JUROR NUMBERS, YOU'RE EXCUSED.  YOU

04:56PM 9       WILL NOT BE CALLED BACK FOR JURY SERVICE.

04:56PM 10                   ALL OF THE OTHER JURORS WHOSE NUMBERS I DID NOT CALL,

04:56PM 11      PLEASE, YOU MAY LEAVE NOW, BUT YOU MAY BE RECALLED FOR JURY

04:56PM 12      SERVICE.

04:56PM 13                   AS I SAID, WE ARE GOING TO DO THIS AGAIN TOMORROW WITH

04:56PM 14      ADDITIONAL JURORS.

04:56PM 15                   SO DO PLEASE MAKE YOURSELVES AVAILABLE.  YOU MAY RECEIVE

04:56PM 16      COMMUNICATION CALLING YOU BACK TO COURT.

04:56PM 17                   IN THE INTERIM, AGAIN, YOU ARE NOT, YOU ARE NOT TO READ,

04:56PM 18      LISTEN TO, OR TALK ABOUT ANYTHING ABOUT THIS CASE ON ANY MEDIA,

04:56PM 19      NEWS REPORT, INTERNET INFORMATION, CHAT ROOMS, FACEBOOK,

04:56PM 20      TWITTER, ANY OF THOSE TYPE OF THINGS, YOU'RE NOT TO DISCUSS THE

04:56PM 21      CASE WITH ANYONE, YOU'RE NOT TO DISCUSS ANYTHING ABOUT YOUR

04:56PM 22      POTENTIAL SERVICE IN THE CASE OR THE THINGS ABOUT IT WITH

04:56PM 23      ANYONE UNTIL YOU'RE RELIEVED FROM YOUR JURY SERVICE OR UNTIL

04:56PM 24      FURTHER COURT ORDER.

04:56PM 25                   IS THERE ANYONE WHO IS GOING TO HAVE ANY DIFFICULTY

04:57PM 1      FOLLOWING THAT ORDER?

04:57PM 2          I SEE NO HANDS.

04:57PM 3          ALL RIGHT.  THANK YOU, LADIES AND GENTLEMEN.  THANK YOU

04:57PM 4      FOR YOUR PATIENCE.  YOU'LL BE CONTACTED LATER.

04:57PM 5          I SEE A HAND.  YES, SIR?  WHAT JUROR NUMBER ARE YOU?

04:57PM 6              PROSPECTIVE JUROR:  48.

04:57PM 7              THE COURT:  48.

04:57PM 8              PROSPECTIVE JUROR:  I'M SORRY.  ME, I'M

04:57PM 9      SELF-EMPLOYED.  ME AND MY WIFE RUN A STORE AND I HAVE TO TAKE

04:57PM 10     CARE OF ALL OF MY VENDORS AND DISTRIBUTORS, AND SO IF YOU WOULD

04:57PM 11     KINDLY EXCUSE ME FROM JURY DUTY KINDLY.

04:57PM 12             THE COURT:  ALL RIGHT.  SIR, YOU HAVE NOT BEEN

04:57PM 13     SELECTED AS A JUROR IN THE CASE YET.  I DON'T KNOW IF THAT IS

04:57PM 14     GOING TO HAPPEN.

04:57PM 15             PROSPECTIVE JUROR:  RIGHT, SIR.

04:57PM 16             THE COURT:  SO IF YOU WOULD JUST STAY TUNED AND THE

04:57PM 17     COURT WILL CONTACT YOU AS TO ANYTHING FURTHER.

04:57PM 18             PROSPECTIVE JUROR:  THANK YOU, SIR.

04:57PM 19             THE COURT:  YOU'RE WELCOME.  ALL RIGHT.

04:57PM 20         AND I SEE ANOTHER HAND.

04:58PM 21         MR. PENUMUDY, IS THAT RIGHT?  DID YOU WANT TO SAY

04:58PM 22     SOMETHING?

04:58PM 23             PROSPECTIVE JUROR:  YES, YOUR HONOR.

04:58PM 24         I HAD MENTIONED EARLIER ABOUT MEDICAL CONDITIONS, AND I

04:58PM 25     WASN'T SURE WHAT THE RIGHT TIME WAS.  BUT I DO HAVE A NOTE FROM

04:58PM   1       MY DOCTOR REGARDING THAT AND TO BE EXCUSED.  I DON'T KNOW WHEN

04:58PM   2   TO PRESENT THAT, BUT I JUST WANTED TO BRING THAT UP.

04:58PM   3              THE COURT:  OH, WELL, WE TALKED ABOUT THIS EARLIER

04:58PM   4   AND I THOUGHT YOU SAID --

04:58PM   5              PROSPECTIVE JUROR:  THAT WAS NOT THE EXTENT OF ALL

04:58PM   6   OF MY CONDITIONS, SO --

04:58PM   7              THE COURT:  OH, SO YOU HAVE SOME OTHER INFORMATION

04:58PM   8   REGARDING MEDICAL ISSUES?

04:58PM   9              PROSPECTIVE JUROR:  I MEAN, I DO HAVE A NOTE.

04:58PM  10              THE COURT:  WELL, I'LL HAVE -- MS. KRATZMANN WILL

04:58PM  11   GET THAT NOTE FROM YOU AND I'LL LOOK AT IT HERE.

04:58PM  12              PROSPECTIVE JUROR:  OKAY.  OKAY.

04:58PM  13              PROSPECTIVE JUROR:  (HANDING.)

04:59PM  14         THANK YOU.

04:59PM  15              THE CLERK:  (HANDING.)

04:59PM  16              THE COURT:  LET ME SHARE THIS WITH COUNSEL.

04:59PM  17         MS. KRATZMANN.

04:59PM  18              THE CLERK:  YES, YOUR HONOR.

04:59PM  19              THE COURT:  THANK YOU, SIR.  I'VE READ THE NOTE.

05:00PM  20         COUNSEL?

05:00PM  21              MR. SCHENK:  NO OBJECTION TO DISMISSAL.

05:00PM  22              MR. DOWNEY:  NO OBJECTION.

05:00PM  23              THE COURT:  ALL RIGHT.  YOU'RE EXCUSED,

05:00PM  24   MR. PENUMUDY.  THANK YOU.

05:00PM  25              THANK YOU, FOLKS.  WE'RE IN RECESS NOW.  PLEASE REMEMBER

05:00PM THE ADMONITION. IT'S IN PLACE UNTIL YOU HEAR OTHERWISE. THANK YOU.

05:00PM COUNSEL, YOU SHOULD REMAIN FOR JUST A MOMENT.

05:00PM (JURY OUT AT 5:00 P.M.)

05:01PM THE COURT: THANK YOU. PLEASE BE SEATED.

05:01PM THE RECORD SHOULD REFLECT THAT OUR PROSPECTIVE JURY PANEL HAS LEFT. ALL COUNSEL ARE PRESENT.

05:01PM COUNSEL, ONE THING I WANTED TO INDICATE, WE DID HAVE, AS I SAID, OUR PROTOCOL WOULD BE SIDE-BARS WOULD BE HELD IN THE JURY ROOMS JUST BECAUSE OF THE INEFFICIENCY OF OUR MICROPHONE AND SPACING. AT THE BENCH HERE WE COULD NOT GET ALL COUNSEL SAFELY AROUND THIS AREA. THAT'S WHY WE HAD TO USE THE JURY DELIBERATION ROOM FOR THAT PURPOSE.

05:01PM I AM NOT GOING TO SEAL THAT TRANSCRIPT, HOWEVER. THE TRANSCRIPT OF THE DISCUSSIONS WE HAD REGARDING ANY CHALLENGES WILL REMAIN A PUBLIC ITEM ON THE TRANSCRIPT.

05:01PM SO IT'S AVAILABLE FOR PUBLIC USE SUCH THAT THE PUBLIC COULD UNDERSTAND AND PARTICIPATE AT LEAST AS TO READING OUR DISCUSSIONS REGARDING THAT.

05:02PM ANY OBJECTION TO THAT, MR. DOWNEY?

05:02PM MR. DOWNEY: NO, YOUR HONOR.

05:02PM THE COURT: MR. SCHENK?

05:02PM MR. SCHENK: NO, YOUR HONOR.

05:02PM THE COURT: ALL RIGHT. THANK YOU.

05:02PM ANYTHING FURTHER BEFORE WE END FOR THE EVENING?

05:02PM  1          MR. DOWNEY?

05:02PM  2              MR. DOWNEY:  YOUR HONOR, I WOULD JUST NOTE IN

05:02PM  3     CONNECTION WITH MR. SINGH, WHO IS JUROR NUMBER 48, WHO I THINK

05:02PM  4     IS THE GENTLEMAN WHO SPOKE, I THINK WE HAD PREVIOUSLY INDICATED

05:02PM  5     TO THE COURT THAT WE WOULD HAVE NO OBJECTION TO HIS DISMISSAL

05:02PM  6     FOR HARDSHIP.

05:02PM  7          I KNOW TODAY THAT ISSUE DID NOT COME UP WHEN YOUR HONOR

05:02PM  8     HAD ASKED THAT QUESTION.  IT'S APPARENT TO ME FROM WHAT JUST

05:02PM  9     OCCURRED THAT THERE IS A SERIOUS HARDSHIP CASE.

05:02PM 10          SO TO THE EXTENT THAT IT IS HELPFUL TO THE COURT, I JUST

05:02PM 11     WANTED TO LET THE COURT KNOW BASED ON WHAT MR. SINGH SAID IN

05:02PM 12     THE QUESTIONNAIRE AND TODAY THAT WE CONSENT TO HIS DISMISSAL.

05:03PM 13              MR. SCHENK:  YOUR HONOR, CAN I CONFIRM THAT HE

05:03PM 14     WOULDN'T COME TOMORROW REGARDLESS?

05:03PM 15              THE COURT:  THAT'S CORRECT.

05:03PM 16              MR. SCHENK:  MAY WE JUST HAVE THE EVENING TO LOOK AT

05:03PM 17     THE QUESTIONNAIRE?

05:03PM 18              THE COURT:  THAT'S FINE.  THAT'S FINE.

05:03PM 19          I RECALL HIS QUESTIONNAIRE.  I THINK HE AND HIS WIFE RUN A

05:03PM 20     LIQUOR STORE IN GILROY, CALIFORNIA.  THEY'RE THE ONLY PEOPLE

05:03PM 21     WHO -- I THINK HE SAID HE HANDLES THE MERCHANDISING AND THE

05:03PM 22     ORDERING AND THOSE TYPES OF THINGS, AND THAT'S WHAT I RECALL

05:03PM 23     FROM HIS QUESTIONNAIRE.

05:03PM 24          YES, THAT'S WHY I DIDN'T EXCUSE HIM TODAY.  HE'S NOT

05:03PM 25     COMING BACK TOMORROW AND WON'T BE PART OF THE PANEL TOMORROW,

05:03PM 1    AND WE CAN CERTAINLY LOOK AND SEE.

05:03PM 2         I HAVEN'T DONE THE MATH.  I DON'T KNOW WHERE OUR NUMBERS

05:03PM 3    ARE RIGHT NOW.

05:03PM 4         IT MAY BE -- WE DON'T KNOW, BUT IT MAY BE WITH TOMORROW'S

05:03PM 5    PANEL WE WILL HAVE SUFFICIENT JURORS SUCH THAT WE CAN BEGIN THE

05:03PM 6    PROCESS OF ANY JURY SELECTION PROPER, THAT IS, EXERCISING ANY

05:03PM 7    PEREMPTORY CHALLENGES.

05:03PM 8         I THINK WE HAVE 46 COMING IN TOMORROW, MS. KRATZMANN?

05:03PM 9              THE CLERK:  YES, YOUR HONOR.

05:03PM 10             THE COURT:  AND I'LL LET YOU DO THE MATH ON THAT

05:04PM 11   WITH WHAT WE HAVE LEFT.

05:04PM 12        WE NEED 17 JURORS, PLUS 5 FOR OUR ALTERNATES, AND WE MAY

05:04PM 13   HAVE ENOUGH WITH TOMORROW'S 46 TO ACCOMPLISH THAT.  I'M JUST

05:04PM 14   ADVANCING THAT.

05:04PM 15             THE CLERK:  YOUR HONOR, I THINK WE HAVE REMAINING,

05:04PM 16   WE HAD 39 JURORS TO DATE AND I BELIEVE YOU EXCUSED 14, AND SO

05:04PM 17   THAT LEAVES US WITH 25 IN THIS GROUP TODAY.

05:04PM 18             THE COURT:  SO IT SEEMS THAT MATHEMATICALLY IT'S

05:04PM 19   HIGHLY POSSIBLE THAT WE'LL HAVE A SUFFICIENT SUPPLY OF JURORS

05:04PM 20   WITH OUR GROUP TOMORROW.  IS THAT SAFE TO SAY, OR OBSERVE?

05:04PM 21             MR. DOWNEY:  IT SEEMS THAT WAY, YOUR HONOR.

05:04PM 22             THE COURT:  ALL OF YOU MATH WHIZZES.  OF COURSE WE

05:04PM 23   DON'T KNOW OF ANY CAUSE CHALLENGES OR WHAT WILL COME UP.

05:04PM 24        OKAY.  I JUST WANTED TO CLARIFY THAT.

05:04PM 25        WE DID RESERVE THURSDAY FOR POTENTIAL HEARING IF NEEDED,

05:04PM     1      AND SO WE STILL HAVE THAT AVAILABLE, BUT WE'LL JUST SEE WHERE

05:04PM     2      THIS TAKES US.

05:05PM     3            ALL RIGHT.  ANYTHING FURTHER FROM THE GOVERNMENT?

05:05PM     4                 MR. SCHENK:  NO.  THANK YOU.

05:05PM     5                 THE COURT:  ANYTHING FROM THE DEFENSE?

05:05PM     6                 MR. DOWNEY:  NO, YOUR HONOR.

05:05PM     7                 THE COURT:  ALL RIGHT.  HAVE A GOOD EVENING.  THANK

05:05PM     8      YOU.  I'LL SEE YOU TOMORROW MORNING.  THANK YOU.

05:05PM     9                 THE CLERK:  COURT IS ADJOURNED.

05:05PM    10            (COURT ADJOURNED AT 5:05 P.M.)

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1

2

3                     CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10  HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18         _____

19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  AUGUST 31, 2021

22

23

24

25