1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                          SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                    )
                    PLAINTIFF,       )   SAN JOSE, CALIFORNIA
7                                    )
            VS.                      )   VOLUME 14
8                                    )
   ELIZABETH A. HOLMES,              )   OCTOBER 1, 2021
9                                    )
                    DEFENDANT.       )   PAGES 2382 - 2543
10   _____  )

11

12                 TRANSCRIPT OF TRIAL PROCEEDINGS
            BEFORE THE HONORABLE EDWARD J. DAVILA
13               UNITED STATES DISTRICT JUDGE

   A P P E A R A N C E S:
14

15   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                            BY:  JOHN C. BOSTIC
16                               JEFFREY B. SCHENK
                            150 ALMADEN BOULEVARD, SUITE 900
17                          SAN JOSE, CALIFORNIA 95113

18                          BY:  ROBERT S. LEACH
                                 KELLY VOLKAR
19                          1301 CLAY STREET, SUITE 340S
                            OAKLAND, CALIFORNIA 94612
20
           (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21

22   OFFICIAL COURT REPORTERS:
                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
23                          CERTIFICATE NUMBER 8074
                            LEE-ANNE SHORTRIDGE, CSR, CRR
24                          CERTIFICATE NUMBER 9595

25             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3     FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE A. WADE
                                    KATHERINE TREFZ
 5                                  ANDREW LEMENS
                                    PATRICK LOOBY
 6                             725 TWELFTH STREET, N.W.
                               WASHINGTON, D.C. 20005
 7
                               LAW OFFICE OF JOHN D. CLINE
 8                             BY:  JOHN D. CLINE
                               ONE EMBARCADERO CENTER, SUITE 500
 9                             SAN FRANCISCO, CALIFORNIA 94111

10

11     ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
                               BY:  ADELAIDA HERNANDEZ
12
                               OFFICE OF THE U.S. ATTORNEY
13                             BY:  LAKISHA HOLLIMAN, PARALEGAL
                                    MADDI WACHS, PARALEGAL
14
                               WILLIAMS & CONNOLLY
15                             BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                             TBC
                               BY:  BRIAN BENNETT, TECHNICIAN

17

18

19

20

21

22

23

24

25
```

2384

INDEX OF PROCEEDINGS

GOVERNMENT'S:


**ADAM ROSENDORFF**
CROSS-EXAM BY MR. WADE (RES.)                    P. 2387

1                           INDEX OF EXHIBITS

2

                                      IDENT.          EVIDENCE
3        GOVERNMENT'S:

4        1589                                          2401
         3526                                          2414
5        3477                                          2421
         2099                                          2477
6        392                                           2529

7


8

         DEFENDANT'S:
9

         9939                                          2393
10       12582                                         2409
         13750                                         2419
11       12593                                         2430
         13921                                         2434
12       7440                                          2435
         12846                                         2443
13       13922                                         2450
         12793                                         2451
14       7482                                          2455
         7494                                          2469
15       13923                                         2471
         12839                                         2476
16       13863 CONDITIONALLY                           2493
         13862 CONDITIONALLY                           2496
17       13864                                         2497
         12656                                         2501
18       13875                                         2507
         12660                                         2509
19       13876                                         2511
         13877                                         2515
20       13878                                         2515
         13881                                         2521
21       7462                                          2535

22

23

24

25

|   |   |
|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    OCTOBER 1, 2021 |
| | 2 |                    P R O C E E D I N G S |
| 09:01AM | 3 |     (COURT CONVENED AT 9:01 A.M.) |
| 09:01AM | 4 |     (JURY IN AT 9:01 A.M.) |
| 09:01AM | 5 |         THE COURT:  WE'RE BACK ON THE RECORD IN |
| 09:01AM | 6 | UNITED STATES VERSUS HOLMES.  ALL COUNSEL ARE PRESENT. |
| 09:01AM | 7 | MS. HOLMES IS PRESENT. |
| 09:01AM | 8 |     OUR JURY AND ALTERNATES ARE PRESENT.  GOOD MORNING. |
| 09:01AM | 9 |     THE WITNESS IS ON THE STAND.  GOOD MORNING, DOCTOR. |
| 09:01AM | 10 |         THE WITNESS:  GOOD MORNING. |
| 09:01AM | 11 |         THE COURT:  BEFORE WE BEGIN, LADIES AND GENTLEMEN OF |
| 09:01AM | 12 | THE JURY, LET ME ASK YOU THAT QUESTION AGAIN, AND THANK YOU FOR |
| 09:01AM | 13 | YOUR PATIENCE. |
| 09:01AM | 14 |     DURING OUR BREAK I'M CURIOUS TO KNOW WHETHER ANY OF YOU |
| 09:01AM | 15 | WERE SUBJECT TO OR HAVE HAD CAUSE TO HEAR, LISTEN TO, VIEW, |
| 09:01AM | 16 | HEAR, READ, OR HAVE COMMUNICATION IN ANY WAY ABOUT ANY MATTER |
| 09:01AM | 17 | OR ISSUE INVOLVING THIS CASE? |
| 09:01AM | 18 |     AGAIN, IF ANYONE WISHES TO SPEAK PRIVATELY, PLEASE LET ME |
| 09:01AM | 19 | KNOW THAT. |
| 09:01AM | 20 |     IF ANYONE HAS HAD OCCASION TO RECEIVE INFORMATION ABOUT |
| 09:01AM | 21 | THIS CASE, PLEASE RAISE YOUR HAND NOW. |
| 09:02AM | 22 |     I SEE NO HANDS.  THANK YOU. |
| 09:02AM | 23 |     BEFORE WE RESUME OUR EXAMINATION, I JUST WANT TO REVIEW |
| 09:02AM | 24 | OUR SCHEDULE FOR NEXT WEEK, LADIES AND GENTLEMEN. |
| 09:02AM | 25 |     LADIES AND GENTLEMEN, NEXT WEEK WE'RE GOING TO HAVE A LONG |

09:02AM  1    WEEKEND.  WE WILL NOT BE IN SESSION THURSDAY THE 7TH NOR WILL

09:02AM  2    WE BE IN SESSION FRIDAY THE 8TH.  THE 11TH IS A HOLIDAY, SO WE

09:02AM  3    WILL NOT BE IN SESSION ON MONDAY THE 11TH.

09:02AM  4        WE WILL RESUME THE TRIAL ON THE 12TH, THE 12TH OF OCTOBER.

09:02AM  5    I JUST SHARE THAT WITH YOU AND COUNSEL FOR YOUR INFORMATION.

09:02AM  6        AND WE'RE IN OCTOBER ALREADY, AREN'T WE?  MY GOODNESS.

09:02AM  7        THE WITNESS IS ON THE STAND.  YOU'RE STILL UNDER OATH,

09:02AM  8    SIR.

09:02AM  9        **(GOVERNMENT'S WITNESS, ADAM ROSENDORFF, WAS PREVIOUSLY**

09:02AM  10   **SWORN.)**

09:02AM  11            THE COURT:  DID YOU HAVE A FEW MORE QUESTIONS,

09:02AM  12   MR. WADE?

09:02AM  13            MR. WADE:  I DO, YOUR HONOR.

09:02AM  14                  **CROSS-EXAMINATION (RESUMED)**

09:02AM  15   BY MR. WADE:

09:03AM  16   Q.  GOOD MORNING, DR. ROSENDORFF.

09:03AM  17   A.  GOOD MORNING.

09:03AM  18   Q.  I'D LIKE TO JUST RESET THE TABLE WHERE WE ENDED UP LAST

09:03AM  19   WEEK OR THE LAST SESSION IF THAT'S OKAY?

09:03AM  20   A.  SURE.

09:03AM  21   Q.  WE WERE TALKING ABOUT PROFICIENCY TESTING.

09:03AM  22       DO YOU RECALL THAT?

09:03AM  23   A.  YES.

09:03AM  24   Q.  AND PROFICIENCY TESTING IS A PERIODIC PROCESS TO CHECK THE

09:03AM  25   ACCURACY AND PRECISION OF TESTS IN A CLINICAL LABORATORY;

09:03AM  1    CORRECT?

09:03AM  2    A.   CORRECT.

09:03AM  3    Q.   AND IN STANDARD PROFICIENCY TESTING THE LAB RECEIVES

09:03AM  4    SAMPLES FROM AN OUTSIDE AGENCY; RIGHT?

09:03AM  5    A.   CORRECT.

09:03AM  6    Q.   AND THEY'RE NOT PATIENT SAMPLES?

09:03AM  7    A.   CORRECT.

09:03AM  8    Q.   THEY'RE SYNTHETIC?

09:03AM  9    A.   CORRECT.

09:03AM  10   Q.   ARTIFICIAL?

09:03AM  11   A.   CORRECT.

09:03AM  12   Q.   AND THEY HAVE PRESERVATIVES AND BUFFERS AND SPECIAL

09:03AM  13   PROTEINS; CORRECT?

09:03AM  14   A.   CORRECT.

09:03AM  15   Q.   AND FOR THERANOS'S PROPRIETARY TESTS, IT WAS APPROPRIATE

09:03AM  16   TO USE AN ALTERNATIVE ASSESSMENT OF PROFICIENCY, OR AAP,

09:04AM  17   PROGRAM THAT THERANOS DEVELOPED INTERNALLY; CORRECT?

09:04AM  18   A.   I CAN'T ANSWER THAT YES OR NO.

09:04AM  19   Q.   OKAY.  WELL, YOU RECALL THE LAST SESSION THAT WE WERE

09:04AM  20   TALKING ABOUT AAP; CORRECT?

09:04AM  21   A.   YES.

09:04AM  22   Q.   AND WE WERE LOOKING AT SOME EMAILS WITH YOU AND MR. YOUNG,

09:04AM  23   DR. YOUNG.

09:04AM  24       DO YOU RECALL THAT?

09:04AM  25   A.   YES.

09:04AM  1    Q.   AND IT WAS THE AAP PROGRAM THAT THE COMPANY PUT THAT

09:04AM  2    POLICY IN PLACE WITH RESPECT TO THE EDISON ASSAYS.

09:04AM  3         DO YOU RECALL THAT?

09:04AM  4    A.   I WROTE AN SOP FOR AAP.  DANIEL WROTE AN EMAIL WITH

09:04AM  5    SUGGESTIONS AS TO HOW THAT WOULD HAPPEN.

09:04AM  6         THE ACTUAL IMPLEMENTATION WAS STILL BEING DISCUSSED AT THE

09:04AM  7    TIME WHEN DANIEL SENT HIS EMAIL.

09:05AM  8    Q.   AND WE'LL COME BACK THERE IN ONE SECOND.  BUT UNDER THE

09:05AM  9    CLIA REGULATIONS, THE LAB IS NOT REQUIRED TO DO PROFICIENCY

09:05AM  10   TESTING ON EVERY TESTING METHOD IT HAS AVAILABLE TO IT;

09:05AM  11   CORRECT?

09:05AM  12   A.   UM, UNDER CLIA THERE ARE WHAT ARE CALLED CMS REGULATED

09:05AM  13   ANALYTES AND CMS LISTS THOSE ANALYTES IN THE CODE OF FEDERAL

09:05AM  14   REGULATIONS.  THOSE ARE THE ANALYTES FOR WHICH PROFICIENCY

09:05AM  15   TESTING IS REQUIRED BY LAW AND THE AGENCIES THAT YOU HAD

09:05AM  16   MENTIONED WOULD REPORT ANY FAILURES TO CMS WITH REGARDS TO

09:05AM  17   THOSE ANALYTES.

09:05AM  18   Q.   RIGHT.  BUT AND MY POINT IS THAT YOU ONLY HAVE TO DO

09:05AM  19   PROFICIENCY TESTING IF THE TESTING METHOD IS YOUR PRIMARY

09:05AM  20   METHOD; CORRECT?

09:05AM  21   A.   CORRECT.

09:05AM  22   Q.   NOW, YOU MENTIONED SOME OF YOUR DISCUSSIONS IN THE EMAILS

09:06AM  23   WITH DR. YOUNG.  LET'S GO BACK AND MAKE SURE WE'RE ON THE SAME

09:06AM  24   PAGE THERE.

09:06AM  25        IF YOU COULD PULL UP EXHIBIT 4044, OR WE'LL PULL IT UP ON

09:06AM  1      THE SCREEN.  IT'S IN EVIDENCE.

09:06AM  2            I BELIEVE IT'S ON YOUR SCREEN, DOCTOR, IF THAT'S EASIER.

09:06AM  3      A.   OKAY.

09:06AM  4      Q.   AND DO YOU RECALL THIS EMAIL?

09:06AM  5      A.   YES.  YES, I DO.

09:06AM  6      Q.   AND THIS IS AN EMAIL THAT YOU SENT --

09:06AM  7            THE CLERK:  IS IT ON THERE?

09:06AM  8            JUROR:  OKAY.

09:06AM  9            THE CLERK:  YES?

09:06AM  10           JUROR:  NOW IT'S OKAY.

09:06AM  11     BY MR. WADE:

09:06AM  12     Q.   OKAY.  NOW OUR JURY IS ABLE TO SEE IT.

09:06AM  13           ARE YOU ABLE TO SEE IT, DOCTOR?

09:06AM  14     A.   YES.

09:06AM  15     Q.   AND THIS IS AN EMAIL THAT YOU SENT IN PREPARATION FOR THE

09:06AM  16     DECEMBER 2013 INSPECTION; CORRECT?

09:06AM  17     A.   CORRECT.

09:06AM  18     Q.   AND YOU SENT THAT TO MS. HOLMES, DR. YOUNG, MR. BALWANI,

09:06AM  19     AND OTHERS; CORRECT?

09:07AM  20     A.   CORRECT.

09:07AM  21     Q.   AND YOU SEE IN THAT EMAIL THERE'S A HEADING FOR

09:07AM  22     PROFICIENCY TESTING?

09:07AM  23     A.   YES.

09:07AM  24     Q.   AND THIS EMAIL IS ON NOVEMBER 26TH, 2013; CORRECT?

09:07AM  25     A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                         2391

09:07AM   1    Q.   OKAY.  LET'S GO -- AND YOU INDICATED THAT YOU WERE WORKING

09:07AM   2    WITH DR. YOUNG TO PREPARE AN SOP REGARDING THE PROFICIENCY

09:07AM   3    TESTING PROGRAM --

09:07AM   4    A.   YES.

09:07AM   5    Q.   -- FOR THERANOS'S LDT SPECIFICALLY; CORRECT?

09:07AM   6    A.   CORRECT.

09:07AM   7    Q.   AND LET'S GO TO EXHIBIT 1580, WHICH IS ALSO IN EVIDENCE.

09:08AM   8         IF WE CAN GO TO PAGES 4 AND 5 AND JUST BLOW UP THE TOP TWO

09:08AM   9    EMAILS.

09:08AM  10         ACTUALLY, YOU KNOW WHAT, DOCTOR, YOU RECALL THERE WAS SOME

09:08AM  11    CONFUSION IN CONNECTION WITH IN THIS EMAIL CHAIN IN YOUR LAST

09:08AM  12    TESTIMONY?

09:08AM  13         DO YOU RECALL THAT?

09:08AM  14    A.   YES.

09:08AM  15    Q.   AND IF WE CAN PULL UP EXHIBIT 12478.  THAT MIGHT BE

09:08AM  16    EASIER.

09:08AM  17         DO YOU HAVE THAT IN FRONT OF YOU?  I'M SORRY, THAT'S NOT

09:08AM  18    IN EVIDENCE YET, ALTHOUGH THE EMAIL CHAIN IS IN EVIDENCE.

09:08AM  19         DO YOU HAVE THAT IN FRONT OF YOU?

09:08AM  20    A.   THE SCREEN IS BLANK RIGHT NOW.

09:08AM  21    Q.   IF YOU LOOK IN YOUR BINDER, VOLUME 2, I BELIEVE YOU'LL

09:08AM  22    FIND EXHIBIT 12478.

09:08AM  23         AND WE PUT A POST-IT NOTE ON TOP OF EACH OF YOUR BINDERS,

09:09AM  24    DOCTOR, SO YOU CAN SEE THE NUMERICAL RANGE TO TRY AND MAKE IT

09:09AM  25    EASIER FOR YOU.  OKAY?

09:09AM  1    A.   THANK YOU.  I HAVE IT.

09:09AM  2    Q.   OKAY.  DO YOU RECOGNIZE THIS TO BE A SUB EMAIL THAT WAS

09:09AM  3    WITHIN EXHIBIT 1580, PART OF THAT EMAIL CHAIN?

09:09AM  4    A.   YES.

09:09AM  5         MR. WADE:  OKAY.  I MOVE THE ADMISSION OF

09:09AM  6    EXHIBIT 12478.

09:09AM  7         MR. BOSTIC:  NO OBJECTION.

09:09AM  8         THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:09AM  9         (DEFENDANT'S EXHIBIT 12478 WAS RECEIVED IN EVIDENCE.)

09:09AM  10   BY MR. WADE:

09:09AM  11   Q.   AND THIS IS THE EMAIL, IF WE LOOK AT THE BOTTOM EMAIL

09:09AM  12   FIRST, THIS IS ON NOVEMBER 26TH, 2013; CORRECT?

09:09AM  13   A.   YES.

09:09AM  14   Q.   AND THAT'S THAT SAME DAY OF THAT PAST AGENDA EMAIL

09:09AM  15   REGARDING PREPARATIONS FOR THE INSPECTION; CORRECT?

09:09AM  16   A.   YES.

09:09AM  17   Q.   AND IT LOOKS LIKE YOU AND DANIEL IMMEDIATELY WENT TO WORK

09:10AM  18   ON PREPARING THAT SOP; CORRECT?

09:10AM  19   A.   DANIEL IS PROVIDING HIS SUGGESTIONS FOR WHAT THE SOP WOULD

09:10AM  20   LOOK LIKE AND VARIOUS ALTERNATIVES.

09:10AM  21   Q.   AND HE'S PROVIDING THEM TO YOU AND COPYING MS. HOLMES AND

09:10AM  22   MR. BALWANI; CORRECT?

09:10AM  23   A.   YES.

09:10AM  24   Q.   OKAY.  LET'S GO UP THE TOP, TO THE TOP EMAIL.

09:10AM  25         AND THEN THERE THE NEXT DAY, OR MAYBE IT'S THE, MAYBE IT'S

09:10AM  1    THE SAME DAY IF WE HAVE THIS GREENWICH MEAN TIME ISSUE.  YOU

09:10AM  2    RESPOND AND SAY, "THANKS, I'LL WRITE UP THE SOP AND INCORPORATE

09:10AM  3    WHAT WE HAVE DISCUSSED."

09:10AM  4         RIGHT?

09:10AM  5    A.   CORRECT.

09:10AM  6    Q.   AND YOU INCLUDE MR. BALWANI AND MS. HOLMES ON THAT EMAIL?

09:10AM  7    A.   CORRECT.

09:10AM  8    Q.   LET'S GO TO EXHIBIT 9939, WHICH IS NOT YET IN EVIDENCE.

09:11AM  9    IT SHOULD BE IN YOUR BINDER.

09:11AM  10   A.   I HAVE IT.

09:11AM  11   Q.   AND DO YOU RECOGNIZE THIS TO BE THE SOP THAT WAS CREATED

09:11AM  12   FOR PROFICIENCY TESTING FOR THERANOS LAB DEVELOPED TESTS ON THE

09:11AM  13   EDISON 3.5?

09:11AM  14   A.   YES.

09:11AM  15            MR. WADE:  MOVE THE ADMISSION OF EXHIBIT 9939.

09:11AM  16            MR. BOSTIC:  NO OBJECTION.

09:11AM  17            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:11AM  18        (DEFENDANT'S EXHIBIT 9939 WAS RECEIVED IN EVIDENCE.)

09:11AM  19   BY MR. WADE:

09:11AM  20   Q.   IF WE CAN BLOW UP THE TOP HALF.

09:11AM  21        DO YOU SEE IN THE UPPER RIGHT-HAND CORNER THERE IT SAYS

09:12AM  22   THE EFFECTIVE DATE IS NOVEMBER 26TH, 2013?

09:12AM  23   A.   YES.

09:12AM  24   Q.   AND THAT WAS THE DATE OF THOSE EMAILS?

09:12AM  25   A.   YES.

09:12AM  1    Q.   AND THAT'S YOUR SIGNATURE THERE ON DECEMBER 2ND, 2013?

09:12AM  2    A.   YES.  BUT IT'S -- IT APPEARS THAT IT WAS SIGNED SOME TIME

09:12AM  3    AFTER NOVEMBER 22ND -- ON DECEMBER 2ND.

09:12AM  4    Q.   IT LOOKS LIKE IT WAS SIGNED WITHIN A WEEK OR SO; CORRECT?

09:12AM  5    A.   CORRECT.

09:12AM  6    Q.   AND IN ANY EVENT, WHENEVER IT WAS EFFECTIVE OR WHENEVER IT

09:12AM  7    WAS SIGNED, WITHIN A WEEK YOU HAD FOLLOWED THROUGH ON THAT

09:12AM  8    COMMITMENT THAT YOU HAD MADE TO MS. HOLMES AND MR. BALWANI AND

09:12AM  9    YOU HAD PREPARED THE SOP; CORRECT?

09:12AM  10   A.   YES.

09:12AM  11   Q.   LET'S TAKE A LOOK AT THIS SOP.

09:12AM  12        LET'S GO TO THE THIRD PAGE AND BLOW UP THE TOP UNDER THE

09:12AM  13   PURPOSE.

09:12AM  14        AND THIS NOTES, "THE PURPOSE OF THIS PROPOSAL IS TO DEVISE

09:13AM  15   AN ALTERNATIVE ASSESSMENT PROTOCOL (AAP) FOR THE LAB DEVELOPED

09:13AM  16   TESTS ON THE EDISON 3.5 IMMUNOASSAY INSTRUMENT."

09:13AM  17        CORRECT?

09:13AM  18   A.   YOU READ THIS SENTENCE CORRECTLY.

09:13AM  19   Q.   AND THAT WAS THE PURPOSE FOR WHICH THIS POLICY WAS

09:13AM  20   PREPARED, CORRECT, SIR?

09:13AM  21   A.   YES.

09:13AM  22   Q.   AND UNDER THE SCOPE YOU NOTE THAT THIS APPLIES TO ALL OF

09:13AM  23   THE IMMUNOASSAY THAT ARE TO BE ON THE 3.5; CORRECT?

09:13AM  24   A.   YES.

09:13AM  25   Q.   AND YOU REFERENCE AT THE TIME THAT THERE WERE FOUR

09:13AM  1     IMMUNOASSAYS OFFERED; CORRECT?

09:13AM  2     A.   YES.

09:13AM  3     Q.   AND YOU NOTE THAT THE AAP SHOULD BE CONDUCTED MINIMALLY

09:14AM  4     EVERY SIX MONTHS; CORRECT?

09:14AM  5     A.   YES.

09:14AM  6     Q.   AND LET'S GO DOWN TO THE THIRD SECTION.  THIS IS ENTITLED

09:14AM  7     RESPONSIBILITIES?

09:14AM  8     A.   YES.

09:14AM  9     Q.   AND IT SAYS, "IT IS THE RESPONSIBILITY OF THE TECHNICAL

09:14AM  10    SUPERVISOR TO ENSURE THAT THE AAP IS CONDUCTED AT LEAST TWICE A

09:14AM  11    YEAR FOR ALL FOUR ANALYTES."

09:14AM  12         CORRECT?

09:14AM  13    A.   YES.

09:14AM  14    Q.   AND WHO WAS THE TECHNICAL SUPERVISOR DURING THIS TIME

09:14AM  15    PERIOD, SIR?

09:14AM  16    A.   I BELIEVE IT WAS HODA ALAMDAR.

09:14AM  17    Q.   AND I BELIEVE THERE WAS A COUPLE DAYS AGO SOME TESTIMONY

09:14AM  18    THAT MAYBE YOU SERVED IN THIS ROLE DURING THAT TIME PERIOD.

09:14AM  19         DO YOU THINK NOW IT WAS HODA?

09:14AM  20    A.   I WOULD HAVE TO LOOK AT CMS FORM 209 TO VERIFY WHAT THE

09:14AM  21    POSITIONS WERE ON THE ROSTER AT THAT TIME.

09:14AM  22    Q.   IN ANY EVENT, WHETHER IT WAS YOU OR HODA, YOU, OF COURSE,

09:14AM  23    HAD THE ULTIMATE RESPONSIBILITY OVER AAP; CORRECT?

09:15AM  24    A.   YES.

09:15AM  25    Q.   LET'S GO DOWN TO THE BOTTOM OF THAT SECTION.

ROSENDORFF CROSS BY MR. WADE (RES.)                         2396

09:15AM  1          DO YOU SEE WHERE IT SAYS, "THE LABORATORY TECHNICAL

09:15AM  2   SUPERVISOR IS RESPONSIBLE FOR THE FOLLOWING," AND THEN IT LAYS

09:15AM  3   OUT, "TO MAKE SURE THAT THE SAMPLES ARE IDENTIFIED, AND TO

09:15AM  4   ENSURE THAT OVER A 12 MONTH CYCLE, SAMPLES REPRESENTING THE

09:15AM  5   ENTIRE RANGE," AND THEN WE GO ON TO THE NEXT PAGE, "OF ASSAY

09:15AM  6   ARE SELECTED AND SUBMITTED FOR THE TESTING."

09:15AM  7          DO YOU SEE THAT?

09:15AM  8   A.   YES.

09:15AM  9   Q.   AND THAT'S WHERE WE TALKED ABOUT THAT YOU NEEDED TO MAKE

09:15AM  10  SURE THAT YOU HAD TESTS IN THE MIDDLE AND THE UPPER AND LOWER

09:15AM  11  LIMITS TO MAKE SURE THAT THE DEVICE COULD PICK UP ALL OF THOSE

09:15AM  12  RANGES; CORRECT?

09:15AM  13  A.   NO.  THE RANGE OF VALUES IN A PROFICIENCY CHALLENGE NEED

09:16AM  14  NOT BE AT THE LLOQ OR ULOQ.  THEY SHOULD INCLUDE BOTH NORMAL

09:16AM  15  AND PATHOLOGICAL VALUES.

09:16AM  16  Q.   OKAY.  AND YOU WERE COMFORTABLE IN THAT APPROACH IN THIS

09:16AM  17  POLICY?

09:16AM  18  A.   YES.

09:16AM  19  Q.   LET'S GO TO 3.4.  DO YOU SEE THERE IT SAYS, "THE

09:16AM  20  LABORATORY DIRECTOR IS RESPONSIBLE FOR THE FOLLOWING:

09:16AM  21  REVIEWING AND APPROVING EACH PT TESTING EVENTS DOCUMENTATION."

09:16AM  22          DO YOU SEE THAT?

09:16AM  23  A.   YES.

09:16AM  24  Q.   AND YOU AGREED WITH THAT AT THE TIME THAT YOU SIGNED THIS

09:16AM  25  DOCUMENT?

09:16AM   1    A.   YES.

09:16AM   2    Q.   LET'S GO OVER TO NUMBER 4.  THAT SETS FORTH THE

09:16AM   3    PROCEDURES; CORRECT?

09:16AM   4    A.   CORRECT.

09:16AM   5    Q.   AND I DON'T WANT TO GO THROUGH EVERY STEP HERE, BUT IS IT

09:16AM   6    FAIR TO SAY THAT YOU WERE TO IDENTIFY FIVE SAMPLES AND COMPARE

09:17AM   7    THE PERFORMANCE OF THOSE FIVE SAMPLES ON THE EDISON AGAINST THE

09:17AM   8    PERFORMANCE OF THOSE FIVE SAMPLES ON A GOLD STANDARD ASSAY?

09:17AM   9    A.   CORRECT.

09:17AM   10   Q.   AND IF WE GO TO THE BOTTOM THIS SETS FORTH THE ACCEPTANCE

09:17AM   11   CRITERIA.

09:17AM   12        DO YOU SEE THAT?

09:17AM   13   A.   YES.

09:17AM   14   Q.   AND THIS IS THE STANDARD THAT HAS TO BE MET IN ORDER TO

09:17AM   15   PASS THE AAP; CORRECT?

09:17AM   16   A.   CORRECT.

09:17AM   17   Q.   AND IF YOU LOOK AT 5.2 IT SAYS OUT OF THOSE FIVE

09:17AM   18   ESSENTIALLY YOU CAN MISS ONE; CORRECT?

09:17AM   19   A.   YES.

09:17AM   20   Q.   YOU HAVE TO HIT 80 PERCENT?

09:17AM   21   A.   CORRECT.

09:17AM   22   Q.   AND IF YOU LOOK AT 5.4.1, THERE'S DISCUSSION OF HOW TO

09:17AM   23   DEAL WITH FAILURES AND IF THERE ARE FAILURES, YOU NEED TO SIGN

09:17AM   24   OFF ON IT BEFORE ANYTHING ELSE HAPPENS; RIGHT?

09:18AM   25   A.   CORRECT.

09:18AM  1    Q.   AND LET'S GO TO THE NEXT PAGE.  THIS INCLUDES AGAIN THE

09:18AM  2    REFERENCES OF THE RELEVANT REGULATORY PROVISION WITHIN THE CLIA

09:18AM  3    REGULATIONS; CORRECT?

09:18AM  4    A.   CORRECT.

09:18AM  5    Q.   AND THOSE ARE PROVISION THAT ARE SET FORTH IN 7603; RIGHT?

09:18AM  6    A.   WHAT IS 7603, THE EXHIBIT NUMBER?

09:18AM  7    Q.   YOU RECALL EXHIBIT 7603 --

09:18AM  8    A.   OH, I SEE.

09:18AM  9    Q.   -- IS THE 120 PAGES OR SO OF CLIA REGULATIONS.

09:18AM  10         DO YOU RECALL THAT?

09:18AM  11   A.   YES.

09:18AM  12   Q.   AND THESE REFERENCES ARE AMONG THOSE REGULATIONS; CORRECT?

09:18AM  13   A.   YES.

09:18AM  14   Q.   NOW, YOU RECALL THAT YOU WERE ASKED ON YOUR DIRECT

09:19AM  15   TESTIMONY SEVERAL QUESTIONS ABOUT RESULTS THAT WERE SENT TO

09:19AM  16   MS. CHEUNG IN FEBRUARY OF 2014 AFTER COMMERCIAL PT SAMPLES WERE

09:19AM  17   TESTED ON AN EDISON DEVICE?

09:19AM  18   A.   I THINK ERIKA RAN THE EVENT AND SENT OUT THOSE DATA TO

09:19AM  19   OTHERS.

09:19AM  20   Q.   RIGHT.

09:19AM  21   A.   YEAH.

09:19AM  22   Q.   AND YOU RECALL THAT YOU WERE ASKED QUESTIONS ABOUT THAT?

09:19AM  23   A.   YES.

09:19AM  24   Q.   AND THEY SHOWED YOU THE SPREADSHEET THAT SHE WAS SENDING

09:19AM  25   AROUND; RIGHT?

09:19AM 1    A.   YES, YES.

09:19AM 2    Q.   ALL RIGHT.  AND THIS EXERCISE WAS NOT DONE PURSUANT TO THE

09:19AM 3    POLICY THAT YOU PUT IN PLACE; CORRECT?

09:19AM 4    A.   CORRECT.

09:19AM 5    Q.   AND IT WAS NOT AN APPROPRIATE PROFICIENCY TESTING

09:19AM 6    PROCEDURE; CORRECT?

09:19AM 7    A.   I CAN'T ANSWER THAT YES OR NO.

09:19AM 8    Q.   WELL, YOU JUST SAW THE POLICY; CORRECT?

09:19AM 9    A.   RIGHT.

09:19AM 10   Q.   AND WAS IT AN APPROPRIATE STEP UNDER THAT AAP POLICY?

09:20AM 11   A.   IT WAS A REASONABLE SPOT QC CHECK.  IT WAS NOT FOLLOWING

09:20AM 12   THAT POLICY, NO.

09:20AM 13   Q.   RIGHT.  SO IT WAS -- IF YOU THINK IT WAS A REASONABLE SPOT

09:20AM 14   QC CHECK.  THAT'S YOUR TESTIMONY?

09:20AM 15   A.   YES.

09:20AM 16   Q.   I DIDN'T ASK ABOUT THE QC CHECK.  I ASKED WHETHER IT WAS

09:20AM 17   AN APPROPRIATE APPLICATION OF THE AAP POLICY THAT YOU PUT IN

09:20AM 18   PLACE AT THE COMPANY?

09:20AM 19   A.   NO, IT DID NOT MATCH.

09:20AM 20   Q.   OKAY.  AND THAT WAS YOUR POSITION AT THE TIME; RIGHT?

09:20AM 21   A.   YES.

09:20AM 22   Q.   AND THAT WAS DR. PANDORI'S POSITION AT THE TIME?

09:20AM 23   A.   YES.  I WAS STILL CONCERNED, THOUGH, ABOUT THE DATA THAT I

09:20AM 24   WAS SEEING.

09:20AM 25   Q.   AND WE'LL GET -- WE'LL CONTINUE TO GO THROUGH THAT DATA,

09:20AM    1     SIR.  OKAY?

09:20AM    2     A.   OKAY.

09:20AM    3     Q.   AND THAT WAS DR. YOUNG'S POSITION AT THE TIME AS WELL THAT

09:20AM    4     IT DIDN'T MATCH THE AAP POLICY?

09:20AM    5     A.   THAT WAS HIS POSITION, YES.

09:20AM    6     Q.   AND AS A RESULT OF THAT INCIDENT, THERE WAS CONSIDERABLE

09:20AM    7     CONFUSION ABOUT PROFICIENCY TESTING FOR EDISON DEVICES WITHIN

09:21AM    8     THE COMPANY; CORRECT?

09:21AM    9     A.   THERE SEEMED TO BE A NUMBER OF PEOPLE TAKING VARIOUS

09:21AM   10     POSITIONS.  NOT ALL OF THEM WERE AWARE OF THIS ALTERNATIVE

09:21AM   11     ASSESSMENT PROFICIENCY SOP.

09:21AM   12     Q.   AND THEY WERE TAKING THOSE POSITIONS WITHOUT UNDERSTANDING

09:21AM   13     THE POLICY AND THAT WAS CREATING SOME CONFUSION; CORRECT?

09:21AM   14     A.   YES.

09:21AM   15     Q.   IF YOU COULD TURN YOUR ATTENTION TO 1589, WHICH I BELIEVE

09:21AM   16     IS IN THE GOVERNMENT'S BINDER.

09:21AM   17     A.   I HAVE IT.

09:21AM   18     Q.   OKAY.  IT'S IN THE GOVERNMENT'S BINDER, BUT I DON'T

09:22AM   19     BELIEVE THEY PUT IT INTO EVIDENCE.

09:22AM   20         DO YOU RECOGNIZE THIS DOCUMENT TO BE AN EMAIL THAT

09:22AM   21     INVOLVED YOU AND A NUMBER OF OTHERS WITH RESPECT TO CERTAIN QC

09:22AM   22     STEPS FOR THE EDISON?

09:22AM   23     A.   I'M STILL READING THE DOCUMENT BEFORE I CAN RESPOND TO

09:22AM   24     YOU.

09:22AM   25     Q.   WELL, JUST FOR PURPOSES OF CLARITY, THIS WAS AN EMAIL

09:22AM  1    CHAIN THAT YOU WERE ON WITH MR. BALWANI AND OTHERS IN THE LAB

09:22AM  2    IN FEBRUARY OF 2014; CORRECT?

09:22AM  3    A.   CORRECT.

09:22AM  4            MR. WADE:  MOVE THE ADMISSION OF 1589, YOUR HONOR.

09:22AM  5            MR. BOSTIC:  NO OBJECTION.

09:22AM  6            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:22AM  7        (GOVERNMENT'S EXHIBIT 1589 WAS RECEIVED IN EVIDENCE.)

09:22AM  8            MR. WADE:  IF WE CAN GO TO THE BOTTOM.

09:23AM  9    Q.   DO YOU RECALL THAT AS A RESULT OF THAT SPOT CHECK, AS YOU

09:23AM  10   DESCRIBED IT FROM MS. CHEUNG AND SOME OF THE CONFUSION, THAT

09:23AM  11   THE LABORATORY LEADERSHIP DECIDED TO DO ADDITIONAL STUDIES?

09:23AM  12   A.   I DON'T, I DON'T RECALL.  THAT'S MY UNDERSTANDING FROM

09:23AM  13   READING THE DOCUMENTS TODAY.

09:23AM  14   Q.   YOU DON'T RECALL THIS?

09:23AM  15   A.   NO.

09:23AM  16   Q.   OKAY.  YOU SEE --

09:23AM  17        ACTUALLY, IF WE CAN GO TO THE LAST EMAIL, MR. BENNETT.

09:23AM  18   THANK YOU.  BLOW THAT UP.

09:23AM  19        DO YOU SEE THIS IS AN EMAIL FROM DR. PANDORI TO YOURSELF,

09:23AM  20   MR. GEE, MS. CHEUNG, AND THREE OTHER PEOPLE WHO WORKED IN THE

09:23AM  21   CLIA LAB?

09:23AM  22   A.   YES.

09:23AM  23   Q.   AND THIS WAS THE TEAM THAT WAS WORKING ON THE EDISON

09:24AM  24   DEVICES; CORRECT?

09:24AM  25   A.   YES.  THIS WAS THE TEAM IN THE CLIA LAB WORKING ON THE

EDISONS, YES.

Q.   RIGHT.   THESE WERE -- I THINK THEY WERE ALL WOMEN, THESE
WERE THE WOMEN WHO WERE FOR THE MOST PART RUNNING THE TESTS ON
THE DEVICES; CORRECT?

A.   YES.

Q.   AND YOU WERE THERE AS WELL?

A.   YES.

Q.   AND MR. GEE WHO IS RESPONSIBLE FOR QUALITY ASSURANCE AND
QUALITY CONTROL IS THERE AS WELL?

A.   YES.

Q.   AND LET'S JUST LOOK AT THIS EMAIL.

     DO YOU SEE THE SECOND IT SAYS, "AS PER OUR DISCUSSION, WE
WILL BE APPLYING THE NEW QUALITY MEASURE TO OUR EDISON TESTS."

     DO YOU SEE THAT?

A.   YES.

Q.   AND YOU DON'T RECALL THIS, IS THAT YOUR TESTIMONY, SIR?

A.   YES.

Q.   AND THEN IT SAYS, "GOING FORWARD, ONCE PER WEEK (WEDNESDAY
THE FIRST WEEK, MONDAY THEREAFTER) WE WILL BE COLLECTING AND
COMPARING 5 SAMPLES."

     DO YOU SEE THAT?

A.   YES.

Q.   AND IT SETS FORTH THAT THOSE WILL BE COMPARED WHERE THERE
WILL BE A COMPARISON OF VENIPUNCTURE AND FINGERSTICK ASSAYS.

     DO YOU SEE THAT?

09:25AM 1    A.   YES.

09:25AM 2    Q.   OKAY.  AND IT SAYS RIGHT UNDER THOSE STEPS, "SUCH

09:25AM 3    COMPARISONS WILL BE PERFORMED INITIALLY USING THESE FOUR

09:25AM 4    TESTS," AND IT SAYS, "VITAMIN D, TPSA, FT4, AND TSH."

09:25AM 5         RIGHT?

09:25AM 6    A.   YES.

09:25AM 7    Q.   AND THOSE WERE THE FOUR TESTS THAT WERE RUN ON THE EDISON

09:25AM 8    IN THE LAB AT THAT TIME?

09:25AM 9    A.   YES.

09:25AM 10   Q.   AND -- BUT MORE WERE COMING ONLINE AROUND THIS TIME?  DO

09:25AM 11   YOU RECALL THAT FROM YESTERDAY OR ON WEDNESDAY?

09:25AM 12   A.   YES, THE PLAN WAS TO INTRODUCE MORE IMMUNOASSAYS THROUGH

09:25AM 13   THE YEAR.

09:25AM 14   Q.   AND DO YOU RECALL WHEN WE WENT THROUGH THAT CALENDAR,

09:25AM 15   THERE WERE A FEW THAT CAME ONLINE IN MARCH; RIGHT?

09:25AM 16   A.   I DON'T RECALL MARCH SPECIFICALLY.

09:26AM 17   Q.   OKAY.  WE'LL COME BACK TO THIS.

09:26AM 18        BUT IT ACTUALLY SAYS IN THE NEXT SENTENCE, WE WILL ADD

09:26AM 19   MORE TESTS TO THIS PROCESS OVER TIME; RIGHT?

09:26AM 20   A.   YES.

09:26AM 21   Q.   AND THE INITIAL FOCUS WAS ON THE FOUR BECAUSE THOSE WERE

09:26AM 22   THE FOUR THAT HAD BEEN IN THE LAB FOR THE LONGEST PERIOD OF

09:26AM 23   TIME; RIGHT?

09:26AM 24   A.   I CAN'T ANSWER THAT YES OR NO.

09:26AM 25   Q.   OKAY.  AND DR. PANDORI -- AND BY THE WAY, DR. PANDORI AT

09:26AM   1      THE TIME WAS THE CO-LAB DIRECTOR?

09:26AM   2      A.   CORRECT.

09:26AM   3      Q.   AND HE WAS YOUR NUMBER 2?

09:26AM   4      A.   YES.

09:26AM   5      Q.   AND HE HAD THE QUALIFICATIONS FOR BEING A CLIA LAB

09:26AM   6      DIRECTOR FOR A HIGH COMPLEXITY LAB; CORRECT?

09:26AM   7      A.   YES.

09:26AM   8      Q.   AND SO THERE WERE TWO DURING THIS PERIOD AT THERANOS?

09:26AM   9      A.   YES.

09:26AM   10     Q.   AND HE NOTES HOW HE SUBMITTED THIS IN-HOUSE STUDY FORM AND

09:26AM   11     HE THANKS EVERYONE FOR THEIR WILLINGNESS TO DO THAT.

09:27AM   12          DO YOU SEE THIS?

09:27AM   13     A.   YES.

09:27AM   14     Q.   AND THEN LET'S GO TO THE NEXT EMAIL UP THE CHAIN, WHICH IS

09:27AM   15     ON THE FIRST PAGE, BOTTOM EMAIL.

09:27AM   16          DO YOU SEE THAT?  THAT'S AN EMAIL FROM MR. BALWANI?

09:27AM   17     A.   YES.

09:27AM   18     Q.   TO A GROUP OF PEOPLE?

09:27AM   19     A.   YES.

09:27AM   20     Q.   AND HIGH IMPORTANCE.

09:27AM   21          DO YOU SEE THAT?

09:27AM   22     A.   YES.

09:27AM   23     Q.   AND HE TALKS ABOUT HOW THIS STUDY IS GOING TO BE DONE A

09:27AM   24     LITTLE BIT.

09:27AM   25          AND THEN AT THE BOTTOM OF THAT PARAGRAPH HE SAYS, "SO THIS

| | | |
|---|---|---|
| 09:27AM | 1 | NEEDS TO BE PERFECTLY PLANNED AND PERFECTLY EXECUTED." |
| 09:27AM | 2 | DO YOU SEE THAT? |
| 09:27AM | 3 | A.  HUH -- |
| 09:27AM | 4 | Q.  DO YOU SEE THAT? |
| 09:27AM | 5 | A.  YEAH, YEAH. |
| 09:27AM | 6 | Q.  "IF THE CLIA TEAM NEEDS HELP PULLING THE RIGHT DATA THEN |
| 09:28AM | 7 | PLEASE INCLUDE THE APPROPRIATE TEAM MEMBERS." |
| 09:28AM | 8 | DO YOU SEE THAT? |
| 09:28AM | 9 | A.  YES. |
| 09:28AM | 10 | Q.  AND "ALSO, I WOULD LIKE TO SEE A PROJECT EXECUTION PLAN |
| 09:28AM | 11 | THAT CLIA SHOULD GENERATE." |
| 09:28AM | 12 | DO YOU SEE THAT? |
| 09:28AM | 13 | A.  YES. |
| 09:28AM | 14 | Q.  "(LANGLY TO OWN)"? |
| 09:28AM | 15 | A.  YES. |
| 09:28AM | 16 | Q.  AND THAT'S MR. GEE? |
| 09:28AM | 17 | A.  YES. |
| 09:28AM | 18 | Q.  AND HE'S RESPONSIBLE FOR QUALITY ASSURANCE? |
| 09:28AM | 19 | A.  YES. |
| 09:28AM | 20 | Q.  AND MR. BALWANI IS DIRECTING THAT YOU BE THE ONE WHO OWNS |
| 09:28AM | 21 | THIS PROGRAM; CORRECT? |
| 09:28AM | 22 | A.  YES. |
| 09:28AM | 23 | Q.  AND THEN HE SAYS, "AND THEN SHARADA, SURAJ, AND DANIEL |
| 09:28AM | 24 | WILL REVIEW AND SIGN OFF BEFORE WE BEGIN THIS." |
| 09:28AM | 25 | DO YOU SEE THAT? |

09:28AM  1    A.   YES.

09:28AM  2    Q.   AND IF YOU GO BACK TO THE HEADER IN THAT EMAIL, YOU SEE

09:28AM  3    THAT MR. BALWANI ADDED IN TO THIS EMAIL CHAIN DANIEL YOUNG,

09:28AM  4    DR. YOUNG, DR. SIVARAMAN, DR. SAKSENA, AND TINA LIN.

09:28AM  5         DO YOU SEE THAT?

09:28AM  6    A.   YES.

09:28AM  7    Q.   AND THOSE WERE PEOPLE WHO HAD A LOT OF EXPERIENCE WITH THE

09:28AM  8    RESEARCH AND DEVELOPMENT OF THOSE ASSAYS; RIGHT?

09:29AM  9    A.   DANIEL AND SHARADA FOR SURE.  SURAJ AND TINA I'M NOT SURE.

09:29AM  10   Q.   BUT HE'S BRINGING THEM IN TO GET MORE EXPERTISE ON THIS

09:29AM  11   PROJECT; RIGHT?

09:29AM  12   A.   YES.

09:29AM  13   Q.   AND LET'S GO UP THE CHAIN TO THE NEXT EMAIL.

09:29AM  14        AND YOU PROVIDE SOME CLARIFICATION ON WHETHER THE

09:29AM  15   TECHNICAL ISSUES RELATING TO WHICH BLOOD TO USE.

09:29AM  16        DO YOU SEE THAT?

09:29AM  17   A.   YES.

09:29AM  18   Q.   AND THEN IN THE BOTTOM YOU SAY YOU WILL WORK WITH LANGLY

09:29AM  19   BEFORE WE SUBMIT THE PLAN TO DANIEL AND YOURSELF FOR REVIEW.

09:29AM  20        YOU'RE ENDORSING THIS APPROACH; RIGHT?

09:29AM  21   A.   YES.

09:29AM  22   Q.   AND LET'S GO UP TO THE NEXT EMAIL.

09:29AM  23   A.   I'M ACTUALLY THE ONE THAT WILL HAVE TO SIGN OFF ON THE

09:29AM  24   PLAN.

09:29AM  25   Q.   IT COULDN'T HAPPEN WITHOUT YOU IN THE CLIA LAB, RIGHT,

09:29AM   1    SIR?

09:29AM   2    A.   I WOULD HAVE TO APPROVE THE PLAN.

09:29AM   3    Q.   RIGHT.  AND YOU'RE SAYING THAT YOU'RE GOING TO REVIEW IT

09:29AM   4    AND THEN YOU'LL RUN IT BY THEM, TOO; RIGHT?

09:30AM   5    A.   YES.

09:30AM   6    Q.   AND BECAUSE THEY'RE HIGHER IN THE HIERARCHY THAN YOU?

09:30AM   7    A.   CORRECT.

09:30AM   8    Q.   AND SO THAT'S NOT UNUSUAL, RIGHT, TO RUN SOMETHING BY

09:30AM   9    YOUR --

09:30AM  10    A.   NO.

09:30AM  11    Q.   OKAY.

09:30AM  12    A.   I ALSO WANTED TO GET THEIR BUY IN TO MAKE SURE WE GET

09:30AM  13    DONE.

09:30AM  14    Q.   OKAY.  AND YOU SEE IN THE NEXT EMAIL ABOVE MR. BALWANI

09:30AM  15    RESPONDS AND THEN ON THE SECOND LINE THERE HE SAYS, "IF YOU

09:30AM  16    WANT TO RERUN THIS ONCE TO GENERATE QC DATA, I HAVE NO ISSUES

09:30AM  17    WITH THE FOLLOWING AS COMMUNICATED YESTERDAY."

09:30AM  18         DO YOU SEE HIS DISCUSSION THERE?

09:30AM  19    A.   YES.

09:30AM  20    Q.   AND HE SAYS HE WANTS IT TO BE USEFUL TO CLARIFY ANY

09:30AM  21    CONFUSION CAUSED BY THE PT SAMPLES; RIGHT?

09:30AM  22    A.   YES.

09:30AM  23    Q.   AND THAT'S THE ERIKA CHEUNG SAMPLES; RIGHT?

09:30AM  24    A.   YES.

09:30AM  25    Q.   AND THEN THE NEXT SENTENCE HE SAYS, "WE CAN DECIDE HOW

09:31AM  1      OFTEN WE NEED TO DO THIS."

09:31AM  2          DO YOU SEE THIS?

09:31AM  3      A.   YES.

09:31AM  4      Q.   AND THEN HE SAYS, "THIS IS SOMETHING THAT YOU AND MARK CAN

09:31AM  5      DECIDE AND THEN LANGLY CAN IMPLEMENT."

09:31AM  6          DO YOU SEE THAT?

09:31AM  7      A.   YES.

09:31AM  8      Q.   AND I'LL CALL YOUR ATTENTION TO 3526.

09:31AM  9      A.   WHERE IS THAT?

09:31AM  10     Q.   3526.  THERE'S A POST-IN NOTE ON TOP OF THE BINDER THAT

09:31AM  11     SHOULD TELL YOU WHICH BINDER.  I APOLOGIZE, BUT I'M NOT WORKING

09:31AM  12     OFF THE SAME BINDER AS YOU.

09:32AM  13         I'LL TELL YOU WHAT, I'M SORRY TO JUMP AROUND, DOCTOR, BUT

09:32AM  14     LET'S GO TO 12582 FIRST, AND THEN WE'LL COME BACK TO THAT EMAIL

09:32AM  15     THAT I JUST MENTIONED.

09:32AM  16     A.   OKAY.

09:32AM  17     Q.   AND DO YOU SEE THIS IS AN EMAIL BETWEEN A GROUP OF PEOPLE

09:32AM  18     WITHIN THE CLIA LAB RELATING TO VITAMIN D RESULTS IN MARCH OF

09:32AM  19     2014?

09:32AM  20     A.   YES.

09:32AM  21             MR. WADE:  MOVE THE ADMISSION OF 12582.

09:32AM  22             MR. BOSTIC:  NO OBJECTION.

09:32AM  23             MR. WADE:  LET'S GO TO THE BACK OF THE EMAIL.

09:32AM  24             THE COURT:  IT MAY BE PUBLISHED.

09:33AM  25         (DEFENDANT'S EXHIBIT 12582 WAS RECEIVED IN EVIDENCE.)

09:33AM  1            MR. WADE:  THANK YOU, YOUR HONOR.

09:33AM  2       Q.   IF WE CAN BLOW UP THE BOTTOM EMAIL.

09:33AM  3            NOW, THIS IS MR. GEE SENDING AN EMAIL TO THE PEOPLE -- THE

09:33AM  4       WOMEN WITHIN THE LAB WHO ARE RUNNING THOSE EDISON DEVICES;

09:33AM  5       RIGHT?

09:33AM  6       A.   YES.

09:33AM  7       Q.   AND COPYING YOU AND DR. PANDORI?

09:33AM  8       A.   YES.

09:33AM  9       Q.   AND HE'S ASKING FOR THE RAW DATA FROM THE VITAMIN D

09:33AM 10       RESULTS; CORRECT?

09:33AM 11       A.   YES.

09:33AM 12       Q.   AND THAT'S FROM THIS, THIS STUDY THAT WAS UNDERWAY THAT WE

09:33AM 13       WERE JUST LOOKING AT; RIGHT?

09:33AM 14       A.   I DON'T KNOW IF IT WAS UNDERWAY OR NOT.  I SAW THE

09:33AM 15       PROPOSAL.

09:33AM 16       Q.   WELL, LET'S TAKE A LOOK.  LET'S GO UP TO THE NEXT CHAIN.

09:33AM 17       IT STRADDLES THE PAGE.

09:33AM 18            BUT DO YOU SEE IT'S AN EMAIL FROM ERIKA CHEUNG, IF YOU

09:34AM 19       LOOK AT THE BOTTOM OF THE FIRST PAGE, AND THEN WHAT IS ON THE

09:34AM 20       SCREEN IS WE'LL JUST LOOK QUICKLY AT THE BOTTOM OF THE FIRST

09:34AM 21       PAGE.  I WANT TO MAKE SURE THAT YOU UNDERSTAND THE TIMING OF

09:34AM 22       THIS.

09:34AM 23       A.   UH-HUH.

09:34AM 24       Q.   OKAY.  DO YOU SEE THERE THIS IS AN EMAIL FROM ERIKA CHEUNG

09:34AM 25       AND IT RESPONDS TO THE EMAIL FROM MR. GEE?

09:34AM  1          DO YOU SEE THAT?

09:34AM  2     A.   YES.

09:34AM  3     Q.   AND THEN IF WE GO TO THE NEXT PAGE, THIS IS MS. CHEUNG

09:34AM  4     PROVIDING THAT DATA IN CONNECTION WITH THAT VITAMIN D STUDY.

09:34AM  5          DO YOU SEE THAT?

09:34AM  6     A.   YES.

09:34AM  7     Q.   AND THAT'S IN MARCH 10TH OF 2014.

09:34AM  8          DO YOU SEE THAT?

09:34AM  9     A.   YEAH.  SO THIS IS A TABLE WHERE THEY HAVE RUN FIVE SAMPLES

09:34AM  10    ON THE DIASORIN INSTRUMENT, WHICH WE WERE USING, IT WAS AN FDA

09:34AM  11    APPROVED INSTRUMENT THAT WE WERE USING TO MEASURE 25 HYDROXY,

09:35AM  12    VITAMIN D.

09:35AM  13         GO AHEAD.

09:35AM  14    Q.   AND THAT IS THE GOLD STANDARD IN THIS STUDY; CORRECT?

09:35AM  15    A.   CORRECT.

09:35AM  16    Q.   AND WHAT MS. CHEUNG IS DOING IS SHE'S SAYING HERE'S A

09:35AM  17    TABLE WHERE YOU CAN FILL IN THE INFORMATION FOR THE EDISON

09:35AM  18    DEVICES; CORRECT?

09:35AM  19    A.   THAT'S CORRECT.

09:35AM  20    Q.   LET'S GO TO THE NEXT PAGE.

09:35AM  21         AND DR. PANDORI HERE SAYS HE'S NOT SURE IF IT MATTERS, BUT

09:35AM  22    HE SAYS LET'S DO THIS BLIND TO THE PREDICATE RESULTS, MEANING

09:35AM  23    LET'S NOT LET PEOPLE KNOW WHICH SIDE OF THE TEST THAT THEY

09:35AM  24    HAVE; RIGHT?  HE WANTS THIS TO BE PURE AND ANONYMOUS; RIGHT?

09:35AM  25    A.   I'M NOT SURE WHAT HE MEANS BY BLIND BECAUSE THE TECH WOULD

09:35AM  1    BE STANDING IN FRONT OF AN EDISON PROCESSING THE SAMPLE SO THEY

09:35AM  2    COULDN'T BE BLIND TO THE METHOD BEING DEPLOYED.

09:36AM  3         I THINK HE'S ALSO SAYING THAT HE WANTS THE EDISON GROUP TO

09:36AM  4    DO THIS AND NOT R&D.

09:36AM  5    Q.   OKAY.  AND DO YOU THINK THAT'S A GOOD IDEA?

09:36AM  6    A.   YES.

09:36AM  7    Q.   OKAY.  LET'S -- AND IF YOU GO UP TO THE TOP EMAIL, YOU'LL

09:36AM  8    SEE DR. GEE AGREES WITH YOU OR AGREES WITH DR. PANDORI;

09:36AM  9    CORRECT?

09:36AM  10   A.   YES.

09:36AM  11   Q.   AND YOU'RE ON THESE EMAILS?

09:36AM  12   A.   YES.

09:36AM  13   Q.   OKAY.  LET'S GO TO, LET'S NOW GO TO 35 -- SO THIS IS

09:36AM  14   MARCH 10TH, 2014.

09:36AM  15        DO YOU SEE THAT?

09:36AM  16   A.   YES.

09:36AM  17   Q.   ALL RIGHT.  LET'S GO TO 3526.  I BELIEVE THAT'S IN THE --

09:36AM  18   IT'S NOT IN EVIDENCE.  I BELIEVE IT'S IN THE OTHER BINDER MAYBE

09:36AM  19   THAT YOU JUST PUT DOWN.

09:37AM  20   A.   OKAY.

09:37AM  21   Q.   DO YOU HAVE THAT IN FRONT OF YOU?

09:37AM  22   A.   YES.

09:37AM  23   Q.   OKAY.  AND THAT'S AN EMAIL BETWEEN A GROUP OF PEOPLE

09:37AM  24   WITHIN THE CLIA LAB WITH THE SUBJECT MATTER INTERNAL

09:37AM  25   VITAMIN D PT.

09:37AM   1          DO YOU SEE THAT?

09:37AM   2   A.   YES.

09:37AM   3              MR. WADE:  MOVE THE ADMISSION OF 3526.

09:37AM   4              MR. BOSTIC:  HEARSAY, YOUR HONOR.

09:37AM   5          (PAUSE IN PROCEEDINGS.)

09:38AM   6              MR. WADE:  YOUR HONOR, I NOTE THIS IS AN EXHIBIT

09:38AM   7   IDENTIFIED BY THE GOVERNMENT, NUMBER ONE; AND, NUMBER TWO, THIS

09:38AM   8   IS PART OF THIS ONGOING PROCESS THAT IS HAPPENING WITHIN THE

09:38AM   9   CLIA LAB.  THE WITNESS HAS ALREADY --

09:38AM   10             THE COURT:  IS THIS OFFERED FOR THE TRUTH OF THE --

09:38AM   11  WHAT IS SAID IN THE EMAIL ITSELF?

09:38AM   12             MR. WADE:  I BELIEVE I CAN LAY THE FOUNDATION FOR

09:38AM   13  THIS.  THIS IS A BUSINESS RECORD THAT IS BEING APPLIED.  IF THE

09:38AM   14  COURT REQUIRES ME TO DO THAT.

09:38AM   15         BUT IN ANY EVENT, IT WOULD BE OFFERED FOR THE STATE OF

09:38AM   16  MIND OF MS. HOLMES.

09:38AM   17             THE COURT:  AS TO WHAT ISSUE?

09:38AM   18             MR. WADE:  AS TO THE INTERNAL -- THE PERFORMANCE OF

09:38AM   19  THE INTERNAL PROFICIENCY TESTING AT THIS PERIOD IN MARCH OF

09:38AM   20  2014.

09:38AM   21             THE COURT:  YOU'RE OFFERING IT FOR THAT PURPOSE

09:38AM   22  ONLY?

09:39AM   23             MR. WADE:  I -- WHY DON'T I LAY THE FOUNDATION, AND

09:39AM   24  I WILL OFFER IT FOR THAT PURPOSE.  ALTERNATIVELY IF, IF THE

09:39AM   25  COURT DOESN'T --

09:39AM  1              THE COURT:  WELL, THAT'S MY QUESTION.

09:39AM  2              MR. WADE:  LET ME LAY --

09:39AM  3    Q.   THIS WAS AN EMAIL THAT WAS COMMUNICATED IN CONNECTION WITH

09:39AM  4    THAT STUDY THAT WE WERE JUST TALKING ABOUT; CORRECT?

09:39AM  5    A.   IT APPEARS TO BE.

09:39AM  6    Q.   YEAH.  AND THE EMAIL -- THERE WAS A LOT OF EMAIL

09:39AM  7    COMMUNICATIONS IN THIS TIME PERIOD THAT WE JUST LOOKED AT.

09:39AM  8         DO YOU RECALL SEEING THOSE?

09:39AM  9    A.   YES.

09:39AM 10    Q.   AND THOSE EMAIL COMMUNICATIONS WERE THE WAY IN WHICH THE

09:39AM 11    LAB WAS COMMUNICATING ABOUT HOW TO EXECUTE ON THIS STUDY WITHIN

09:39AM 12    THE CLIA LAB; CORRECT?

09:39AM 13    A.   YES.

09:39AM 14    Q.   AND IT WAS THE WAY IN WHICH MEMBERS OF THE TEAM WERE ON A

09:39AM 15    REGULAR BASIS SHOWING INFORMATION, SHARING INFORMATION ABOUT

09:39AM 16    WHAT WAS HAPPENING; CORRECT?

09:39AM 17    A.   YES.  BUT IT LOOKS LIKE SURAJ WENT TO SUNNY AND SHOWED HIM

09:39AM 18    SOMETHING ON PAPER.  SURAJ CAME BY AND SHARED DATA, ET CETERA.

09:40AM 19         SO WHAT I'M SAYING IS THAT THE EMAIL OBVIOUSLY WASN'T THE

09:40AM 20    EXCLUSIVE.  THERE WERE FOLKS SHOWING EACH OTHER DATA ON PAPER

09:40AM 21    AND WHATNOT.

09:40AM 22    Q.   RIGHT.  AND IN ADDITION TO THE EMAIL PRACTICES OF SHARING

09:40AM 23    INFORMATION, SOMETIMES THERE WOULD BE MEETINGS WITHIN THE CLIA

09:40AM 24    LAB; CORRECT?

09:40AM 25    A.   YES.

09:40AM   1    Q.   AND WITH THE LEADERSHIP OF THE CLIA LAB; CORRECT?

09:40AM   2    A.   THIS EMAIL IS ABOUT SURAJ COMING TO SUNNY AND SHOWING HIM

09:40AM   3    DATA FOR VITAMIN D.

09:40AM   4    Q.   OKAY.  AND WHEN YOU -- WHEN THE LAB WAS COMMUNICATING

09:40AM   5    ABOUT THESE RESULTS AND SHARING SHOWS RESULTS WITH MANAGEMENT,

09:40AM   6    WAS IT IMPORTANT THAT THE INFORMATION BE ACCURATE?

09:40AM   7    A.   SURAJ IS NOT PART OF THE LAB.

09:40AM   8         MR. WADE:  OKAY.  WHY DON'T I JUST OFFER IT FOR OUR

09:40AM   9    CLIENT'S STATE OF MIND SINCE IT APPEARS --

09:40AM  10         THE COURT:  LADIES AND GENTLEMEN, THIS EXHIBIT AND

09:40AM  11    THE CONTENTS OF IT WILL BE ADMITTED NOT FOR THE TRUTH OF THE

09:41AM  12    MATTER ASSERTED IN THE EMAIL ITSELF.

09:41AM  13         IT IS ADMITTED ONLY FOR THE PURPOSE OF ESTABLISHING

09:41AM  14    MS. HOLMES'S STATE OF MIND AS TO THE ISSUE INFORMED.  IT'S NOT

09:41AM  15    OFFERED FOR THE TRUTH OF WHAT IS STATED, ONLY AS TO

09:41AM  16    MS. HOLMES'S STATE OF MIND ON THIS ISSUE.

09:41AM  17         MR. WADE:  MAY I PUBLISH, YOUR HONOR?

09:41AM  18         THE COURT:  IT MAY BE ADMITTED FOR THAT PURPOSE.

09:41AM  19         MR. WADE:  THANK YOU, YOUR HONOR.

09:41AM  20    MAY I PUBLISH?

09:41AM  21         THE COURT:  YES.

09:41AM  22    (GOVERNMENT'S EXHIBIT 3526 WAS RECEIVED IN EVIDENCE.)

09:41AM  23    BY MR. WADE:

09:41AM  24    Q.   NOW, THIS EMAIL COMES A COUPLE OF WEEKS AFTER THE EMAIL

09:41AM  25    CHAIN WITH MR. PANDORI ABOUT THE STUDY THAT WAS GOING TO BE

09:41AM   1        DONE?

09:42AM   2        A.   I'M SORRY, I DON'T REMEMBER THE DATE OF DR. PANDORI'S

09:42AM   3    EMAIL.   I ASSUME THAT'S CORRECT, YEAH.

09:42AM   4        Q.   AND IT WAS ACTUALLY FEBRUARY 24TH, 2014?

09:42AM   5        A.   YEAH.

09:42AM   6        Q.   AND ON MARCH -- ONE OF THE TESTS BEING DONE ON THAT STUDY

09:42AM   7    WAS VITAMIN D; CORRECT?

09:42AM   8        A.   CORRECT.

09:42AM   9        Q.   AND THERE WAS PARTICULAR FOCUS ON THAT BECAUSE THAT WAS

09:42AM  10    THE DATA THAT MS. CHEUNG HAD SHARED; CORRECT?

09:42AM  11        A.   CORRECT.

09:42AM  12        Q.   OKAY.   AND YOU SEE THIS EMAIL HAS THE SUBJECT MATTER

09:42AM  13    INTERNAL VITAMIN D PT.

09:42AM  14             DO YOU SEE THAT?

09:42AM  15        A.   YES.

09:42AM  16        Q.   AND PT THERE IS BEING REFERRED TO AS PROFICIENCY TESTING;

09:42AM  17    CORRECT?

09:42AM  18        A.   YES.

09:42AM  19        Q.   AND THEN THIS SAYS, "SURAJ CAME BY AND SHARED THE INITIAL

09:42AM  20    DATA FOR PT FOR OUR VITAMIN D LOOKS GOOD."

09:42AM  21             DO YOU SEE THAT?

09:42AM  22        A.   YES.

09:42AM  23        Q.   AND WE JUST SAW IN THE EMAILS THAT MS. CHEUNG AND THE

09:43AM  24    OTHERS WHO WERE WORKING IN THE CLIA LAB ON THE EDISONS WERE

09:43AM  25    GATHERING VITAMIN D DATA; CORRECT?

```
09:43AM   1    A.   CORRECT.

09:43AM   2    Q.   OKAY.  AND IT SAYS, "IT LOOKS GOOD" HERE; RIGHT?

09:43AM   3    A.   ARE YOU ASKING ME TO READ "IT LOOKS GOOD"?

09:43AM   4    Q.   WELL, YOU SEE WHAT IT SAYS HERE?

09:43AM   5    A.   YEAH.  THAT'S MR. BALWANI'S ASSERTION.

09:43AM   6    Q.   UNDERSTOOD.  AND THAT'S SENT TO YOU; RIGHT?

09:43AM   7    A.   CORRECT.

09:43AM   8    Q.   AND DO YOU HAVE ANY REASON TO QUESTION THAT ASSERTION AS

09:43AM   9    YOU SIT HERE TODAY?

09:43AM  10    A.   YES.

09:43AM  11    Q.   YOU DO?

09:43AM  12    A.   YES.

09:43AM  13    Q.   OKAY.  YOU THINK THAT DATA WAS NOT ACCURATE?

09:43AM  14    A.   I DON'T BELIEVE MR. BALWANI IS QUALIFIED TO REVIEW THE

09:43AM  15    DATA AS FOR IT'S LOOKING GOOD, QUOTE UNQUOTE, OR NOT.

09:43AM  16    Q.   OKAY.

09:43AM  17    A.   I THINK SURAJ IS SHOWING IT TO HIM.  HE'S PART OF THE R&D

09:43AM  18    AND NOT PART OF THE CLIA LAB.  THAT IS CONCERNING TO ME.

09:43AM  19    Q.   THAT'S CONCERNING TO YOU?

09:43AM  20    A.   YES.

09:43AM  21    Q.   AND YOU'RE COPIED ON THIS EMAIL.

09:43AM  22         DO YOU SEE THAT?

09:43AM  23    A.   YES.

09:43AM  24    Q.   AND IT'S UP AT THE TOP.  DO YOU SEE THAT?

09:43AM  25    A.   YES.
```

09:44AM  1    Q.   AND SURAJ IS SAYING THAT THIS DATA OR YOUR BOSS IS

09:44AM  2    MR. BALWANI; CORRECT?

09:44AM  3    A.   CORRECT.

09:44AM  4    Q.   AND HE'S SAYING THAT HE SAW DATA THAT LOOKED GOOD?

09:44AM  5    A.   CORRECT.

09:44AM  6    Q.   AND DID YOU GO AND GET THE DATA?

09:44AM  7    A.   NO.

09:44AM  8    Q.   AND YOU DIDN'T GO AND GET THE DATA?

09:44AM  9    A.   NO.

09:44AM  10   Q.   OKAY.

09:44AM  11   A.   IT WAS NOT PRESENTED TO ME.

09:44AM  12   Q.   OKAY.  DID YOU GO AND ASK FOR IT?

09:44AM  13   A.   NO.

09:44AM  14   Q.   OKAY.  MR. BALWANI THEN SAYS, "THIS IS NOT A BIT

09:44AM  15   SURPRISING TO ME NOW THAT WE ARE COMPARING APPLES TO APPLES."

09:44AM  16        DO YOU SEE THAT?

09:44AM  17   A.   YES.

09:44AM  18   Q.   THAT YOU'RE COMPARING OR FOLLOWING A PROCEDURE THAT IS

09:44AM  19   SIMILAR TO THAT AAP WHERE YOU'RE COMPARING THE EDISON DEVICE

09:44AM  20   AGAINST THE GOLD STANDARD; CORRECT?

09:44AM  21   A.   CORRECT.

09:44AM  22   Q.   AND HE ASKED YOU TO KEEP HIM IN THE LOOP ON THAT; CORRECT?

09:44AM  23   A.   YEAH.  YES.

09:44AM  24   Q.   OKAY.  AND DR. PANDORI IS ON THE TO LINE?

09:44AM  25   A.   YES.

09:44AM   1     Q.   AND YOU'RE ON THE TO LINE?

09:44AM   2     A.   YES.

09:44AM   3     Q.   AND MR. GEE IS ON THE TO LINE?

09:44AM   4     A.   YES.

09:44AM   5     Q.   AND DANIEL YOUNG IS ON THE TO LINE?

09:44AM   6     A.   UH-HUH.

09:44AM   7     Q.   AND MR. BALWANI IS THE BOSS --

09:45AM   8              THE COURT:  IS THAT YES?

09:45AM   9              THE WITNESS:  YES.

09:45AM  10     BY MR. WADE:

09:45AM  11     Q.   -- OF THOSE PEOPLE; CORRECT?

09:45AM  12     A.   YES.

09:45AM  13     Q.   AND HE WANTS YOU TO KEEP HIM POSTED; CORRECT?

09:45AM  14     A.   I'M NOT SURE WHO HE WAS REFERRING TO WHEN HE SAYS PLEASE

09:45AM  15     KEEP ME IN THE LOOP IN REALTIME.  I'M ASSUMING HE'S ADDRESSING

09:45AM  16     THE GROUP, THE WHOLE GROUP THAT IS IN THE TO LINE.

09:45AM  17     Q.   OKAY.  AND I JUST WANT TO MAKE SURE THAT I UNDERSTAND YOUR

09:45AM  18     TESTIMONY.  IS IT YOUR TESTIMONY THAT YOU DIDN'T LOOK AT

09:45AM  19     VITAMIN D THAT WAS COMING BACK FROM THE EDISON TEAM IN

09:45AM  20     CONNECTION WITH THIS PROJECT?

09:45AM  21     A.   IT WAS NEVER PRESENTED TO ME.

09:45AM  22     Q.   LET'S GO TO 13750.

09:46AM  23     A.   OKAY.  I HAVE IT.

09:46AM  24     Q.   DO YOU SEE THIS IS AN EMAIL FROM MR. GEE TO YOU AND

09:46AM  25     DR. PANDORI AND A COUPLE OF YOUR COLLEAGUES ON MARCH 14TH,

09:46AM  1    2014?

09:46AM  2    A.   YES.

09:46AM  3              MR. WADE:  MOVE THE ADMISSION OF 13750.

09:46AM  4              MR. BOSTIC:  NO OBJECTION.  IT MAY BE PUBLISHED.

09:46AM  5         (DEFENDANT'S EXHIBIT 13750 WAS RECEIVED IN EVIDENCE.)

09:46AM  6    BY MR. WADE:

09:46AM  7    Q.   LET'S LOOK AT THE EMAIL.

09:47AM  8         DO YOU SEE THIS SAYS, "ATTACHED ARE YESTERDAY'S MINUTES"?

09:47AM  9    A.   YES.

09:47AM  10   Q.   OKAY.  AND YOU HAD REGULAR MEETINGS WITHIN THE CLIA LAB

09:47AM  11   WITH YOUR TEAM; CORRECT?

09:47AM  12   A.   YES.

09:47AM  13   Q.   AND THAT WOULD INCLUDE SOME OF THE KEY LEADERSHIP, IF YOU

09:47AM  14   WILL, WITHIN THE CLIA LAB, THE CORE PEOPLE?

09:47AM  15   A.   THE MEETINGS WERE WITH THE WHOLE CLIA LAB.

09:47AM  16   Q.   OKAY.  AND THE FOUR PEOPLE WHO ARE INCLUDED HERE, DO YOU

09:47AM  17   RECALL MS. CHIANG?

09:47AM  18   A.   YES, I REMEMBER HER, BUT I DON'T REMEMBER WHAT HER ROLE

09:47AM  19   WAS SPECIFICALLY.

09:47AM  20   Q.   WAS SHE THE GENERAL SUPERVISOR AT THIS TIME?

09:47AM  21   A.   I DO NOT RECALL.

09:47AM  22   Q.   ALL RIGHT.  AND THIS ATTACHES MINUTES; CORRECT?

09:47AM  23   A.   YES, I BELIEVE SO.

09:47AM  24   Q.   LET'S GO TO THE MINUTES.

09:47AM  25        THE DATE IS MARCH 13TH, 2014.

09:47AM 1        DO YOU SEE THAT?

09:48AM 2    A.   YES.

09:48AM 3    Q.   IF WE CAN BLOW UP ITEM 2.

09:48AM 4        DO YOU SEE THERE IT SAYS THAT THERE WAS DISCUSSION OF AAP

09:48AM 5    FOR ALL SEVEN EDISON ASSAYS?

09:48AM 6    A.   YES.

09:48AM 7    Q.   AND DO YOU HAVE ANY REASON TO QUESTION THE ACCURACY OF

09:48AM 8    THESE MINUTES?

09:48AM 9    A.   NO.  I DO NOT HAVE A CLEAR RECOLLECTION OF WHAT WAS

09:48AM 10   DISCUSSED AT THAT MEETING.  I DON'T HAVE ANY REASON TO DOUBT

09:48AM 11   THE ACCURACY OF THE MINUTES.

09:48AM 12   Q.   AND JUST SO WE'RE CLEAR, ISN'T THAT EXACTLY -- YOU WOULD

09:49AM 13   HAVE EXPECTED MR. GEE AS THE PERSON TASKED WITH THE AAP TO

09:49AM 14   PERFORM THAT; CORRECT?

09:49AM 15   A.   CORRECT.

09:49AM 16   Q.   LET'S GO TO 3477.  LET ME KNOW WHEN YOU HAVE THAT IN FRONT

09:49AM 17   OF YOU, DOCTOR.

09:49AM 18   A.   I HAVE IT.

09:49AM 19   Q.   AND THIS IS AN EMAIL BETWEEN A GROUP OF PEOPLE WITHIN THE

09:50AM 20   CLIA LAB, INCLUDING YOURSELF, DR. PANDORI, MS. ALAMDAR, AND A

09:50AM 21   COUPLE FROM OUTSIDE OF THE CLIA LAB?

09:50AM 22   A.   YES.

09:50AM 23   Q.   THIS IS IN MARCH 20TH, 2014.

09:50AM 24       DO YOU SEE THAT?

09:50AM 25   A.   YES.

09:50AM 1            MR. WADE:  MOVE FOR THE ADMISSION OF 3477.

09:50AM 2            MR. BOSTIC:  NO OBJECTION.

09:50AM 3            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:50AM 4        (GOVERNMENT'S EXHIBIT 3477 WAS RECEIVED IN EVIDENCE.)

09:50AM 5    BY MR. WADE:

09:50AM 6    Q.  IF WE CAN START AT THE BACK.  IF WE CAN BLOW UP THE BOTTOM

09:51AM 7    EMAIL.

09:51AM 8        OKAY.  THIS IS MARCH 18TH; CORRECT?

09:51AM 9    A.  YES.

09:51AM 10   Q.  AND THAT'S FOUR DAYS AFTER THE EMAIL FROM MR. BALWANI

09:51AM 11   ABOUT THE INTERNAL VITAMIN D PT; CORRECT?

09:51AM 12   A.  YES.

09:51AM 13   Q.  AND MR. GEE SAYS, "SEE ATTACHED FOR WEEK 2 VITAMIN D

09:51AM 14   RESULTS."

09:51AM 15       DO YOU SEE THAT?

09:51AM 16   A.  YES.

09:51AM 17   Q.  AND DO YOU SEE YOUR NAME THERE?

09:51AM 18   A.  YES.

09:51AM 19   Q.  AND YOU RECEIVED THAT EMAIL?

09:51AM 20   A.  YES, YES.

09:51AM 21   Q.  OKAY.  LET'S GO UP TO MR. BALWANI'S RESPONSE.

09:51AM 22       NO.  I'M SORRY.  IF WE CAN BLOW UP THE EMAIL RIGHT ABOVE

09:51AM 23   MR. GEE.  WE'RE GOING TO GO RIGHT UP THIS CHAIN.

09:51AM 24       OKAY.  DO YOU SEE MR. BALWANI RECEIVED THAT, RECEIVED

09:51AM 25   THOSE RESULTS AS WELL?

09:51AM 1    A.   YES.

09:51AM 2    Q.   AND I JUST WANT TO MAKE SURE, THERE'S BEEN SOME TESTIMONY

09:52AM 3    ABOUT WHETHER IT'S APPROPRIATE FOR MR. BALWANI TO RECEIVE

09:52AM 4    INFORMATION.

09:52AM 5         DO YOU HAVE ANY ISSUE WITH HIM BEING COPIED ON ANY OF THIS

09:52AM 6    INFORMATION?

09:52AM 7    A.   IN GENERAL, I DON'T THINK MR. BALWANI WAS QUALIFIED TO BE

09:52AM 8    DIRECTING A QC STUDY.  IT WAS NOT APPROPRIATE FOR HIM TO BE

09:52AM 9    DIRECTING CLIA STAFF OR MAKING ANY KIND OF DECISIONS TO THE

09:52AM 10   VALIDITY OF DATA.

09:52AM 11   Q.   OKAY.  BUT SHARING INFORMATION WITH HIM, WOULD THAT HAVE

09:52AM 12   BEEN OKAY?

09:52AM 13   A.   IF HE HAD REQUESTED IT THEN YES.

09:52AM 14   Q.   OKAY.  WELL, LET'S TAKE A LOOK AT THIS EMAIL.

09:52AM 15        DO YOU SEE THERE HE WILL SAY -- HE SAYS, "FOR THE NEXT

09:52AM 16   RUN, I WOULD LIKE TO NARROW DOWN WHY 1 SAMPLE IS OFF IN THIS 5

09:52AM 17   RUNS?"

09:52AM 18        DO YOU SEE THAT?

09:52AM 19   A.   YES.

09:52AM 20   Q.   THAT MEANS ONLY FOUR OUT OF FIVE PASSED; CORRECT?

09:53AM 21   A.   THAT'S WHAT THE INFERENCE -- YEAH, THAT'S THE INFERENCE,

09:53AM 22   YEAH.

09:53AM 23   Q.   OKAY.  AND JUST SO WE'RE CLEAR, FOUR OUT OF FIVE WOULD

09:53AM 24   HAVE BEEN PASSING UNDER THE AAP POLICY; RIGHT?

09:53AM 25   A.   YEAH.

09:53AM  1    Q.   AND THAT'S 80 PERCENT?

09:53AM  2    A.   CORRECT.

09:53AM  3    Q.   AND SO YOU WOULD BE ABLE TO MOVE FORWARD WITH THE

09:53AM  4    VITAMIN D TEST; CORRECT?

09:53AM  5    A.   CORRECT.

09:53AM  6    Q.   BUT HE'S SAY -- HE WANTS TO KNOW MORE ABOUT WHY THE ONE

09:53AM  7    FAILED.

09:53AM  8         DO YOU SEE THAT?

09:53AM  9    A.   SO I DON'T KNOW IF THIS STUDY WAS RUN FAITHFULLY TO THE

09:53AM  10   AAP SOP BECAUSE THAT SOP SPECIFIES THAT YOU ALSO NEED

09:53AM  11   PATHOLOGICAL SPECIMENS, RIGHT.

09:53AM  12   Q.   YOU'RE AWARE THAT THIS STUDY WAS HAPPENING WITHIN THE CLIA

09:53AM  13   LAB AT THE TIME; CORRECT?

09:53AM  14   A.   I DON'T RECALL THE STUDY.  I'M JUST READING IT HERE WITH

09:53AM  15   YOU TODAY.

09:53AM  16   Q.   OKAY.  AND YOU SEE HERE THAT HE SAYS HE WANTS TO

09:53AM  17   UNDERSTAND WHY ONE OF THE FIVE RUNS DIDN'T PASS.

09:53AM  18        DO YOU SEE THAT?

09:54AM  19   A.   YES.

09:54AM  20   Q.   AND DO YOU SEE THAT HE SAYS -- AND AGAIN, THIS IS ON

09:54AM  21   VITAMIN D, WHICH IS THE ISSUE THAT MS. CHEUNG RAISED; RIGHT?

09:54AM  22   A.   MS. CHEUNG'S EMAIL THERE WERE A NUMBER OF ANALYTES THAT

09:54AM  23   WERE -- I BELIEVE IN THE QC SPOT-CHECK THERE WERE A NUMBER OF

09:54AM  24   ANALYTES THAT WERE LOOKED AT.

09:54AM  25   Q.   BUT IN THIS PERIOD THE PARTICULAR FOCUS WAS VITAMIN D;

09:54AM  1    RIGHT?

09:54AM  2    A.   I CAN'T ANSWER THAT YES OR NO.

09:54AM  3    Q.   YOU DON'T REMEMBER.  OKAY.

09:54AM  4         HE SAYS HERE LET'S INCREASE THE NUMBER OF SAMPLES FROM 5

09:54AM  5    TO 10 OR 20 SO WE RUN MORE TESTS.

09:54AM  6         DO YOU SEE THAT?

09:54AM  7    A.   YES.

09:54AM  8    Q.   AND THAT WOULD BE DOUBLE OR 400 PERCENT OR SOMETHING MORE

09:54AM  9    THAN WHAT WAS REQUIRED UNDER AAP; RIGHT?

09:54AM  10   A.   YES.

09:54AM  11   Q.   AND THEN IF YOU GO UP TO THE NEXT EMAIL MR. GEE SAYS HE

09:55AM  12   WILL MODIFY THE STUDY PLAN TO ACCOMMODATE YOUR SUGGESTIONS.

09:55AM  13        DO YOU SEE THAT?

09:55AM  14   A.   YES.

09:55AM  15   Q.   AND THAT'S NOT APPROPRIATE, IS IT?

09:55AM  16   A.   NO.

09:55AM  17   Q.   YOU SHOULD BE THE ONE WHO IS CONSULTED ON THAT; CORRECT?

09:55AM  18   A.   CORRECT.

09:55AM  19   Q.   AND/OR DR. PANDORI; CORRECT?

09:55AM  20   A.   CORRECT.

09:55AM  21   Q.   ALL RIGHT.  LET'S GO TO THE NEXT EMAIL.

09:55AM  22        NOW HERE MR. BALWANI SAYS, ONLY IF THEY MAKE SENSE.  YOU

09:55AM  23   GUYS DECIDE BUT SEEMS LIKE MORE DATA WILL BE USEFUL; RIGHT?

09:55AM  24   A.   YES.

09:55AM  25   Q.   THAT'S EXACTLY WHAT YOU WOULD HAVE EXPECTED; CORRECT?

09:55AM 1   A.   CORRECT.

09:55AM 2   Q.   HE LET YOU DECIDE?

09:55AM 3   A.   YES.

09:56AM 4   Q.   LET'S GO UP ONE MORE EMAIL.

09:56AM 5        DR. PANDORI SAYS, "I DO LIKE THE IDEA OF RUNNING MULTIPLE

09:56AM 6   DEVICES."

09:56AM 7        DO YOU SEE THAT?

09:56AM 8   A.   YES.

09:56AM 9   Q.   AND TO GET MORE RESULTS; RIGHT?

09:56AM 10  A.   SO THE IDEA OF RUNNING MULTIPLE DEVICES WOULD BE TO MAKE

09:56AM 11  SURE YOU GET THE SAME RESULT ON TWO DIFFERENT DEVICES.

09:56AM 12  Q.   THAT THERE'S NOT VARIABILITY WITHIN THE RESULTS; CORRECT?

09:56AM 13  A.   FROM DEVICE TO DEVICE, RIGHT.

09:56AM 14  Q.   RIGHT.  AND HE SAYS THAT.

09:56AM 15       BUT HE SAYS, "INCREASING THE SAMPLE SIZE TO 10 OR 20 AND

09:56AM 16  RUNNING ON TWO DEVICES IS MORE DIFFICULT THAN IT SEEMS, FOR THE

09:56AM 17  REASON THAT WE PLAN TO ADD TSH AND FT4 TO THIS STUDY NEXT

09:56AM 18  MONDAY."

09:56AM 19       DO YOU SEE THAT?

09:56AM 20  A.   YES.

09:56AM 21  Q.   AND SO HE'S SAYING WE'RE TESTING VITAMIN D, WE'RE GOING ON

09:56AM 22  TO DO THE SAME TESTING ON TWO MORE ASSAYS; RIGHT?

09:56AM 23  A.   YES, YES.

09:56AM 24  Q.   AND THAT WAS GOING TO START ON MONDAY; RIGHT?

09:56AM 25  A.   YES, YES.

09:56AM 1    Q.   AND SO IF, IF YOU DO THAT, THAT WOULD MEAN THAT EITHER HE

09:56AM 2    SAYS THERE ARE 60 OR 120 RUNS ON THE EDISONS.

09:57AM 3         DO YOU SEE THAT?

09:57AM 4    A.   YES.

09:57AM 5    Q.   AND, AND DR. PANDORI SAYS THIS WOULD COMPLETELY OCCUPY THE

09:57AM 6    EDISONS FOR ONE OR TWO DAYS; RIGHT?

09:57AM 7    A.   YES.

09:57AM 8    Q.   AND HE SAYS HE'S CONCERNED THAT THAT MIGHT INHIBIT PATIENT

09:57AM 9    TURNAROUND TIMES; RIGHT?

09:57AM 10   A.   YES.

09:57AM 11   Q.   AND SO HE'S ACTUALLY SAYING THAT WHAT MR. BALWANI IS

09:57AM 12   PROPOSING IS EXCESSIVE?

09:57AM 13   A.   YEAH.  I MEAN, I THINK MR. BALWANI WAS PROPOSING FOR

09:57AM 14   VITAMIN D AND SAYING WE SHOULD EXTEND THIS TO THE OTHER EDISON

09:57AM 15   ANALYTES, WHICH IS APPROPRIATE.

09:57AM 16        HE'S ALSO JUST SAYING ON A PRACTICAL LEVEL THAT SAMPLE

09:57AM 17   SIZE FOR ALL OF THE ANALYTES RUNNING ON TWO DEVICES IS GOING TO

09:57AM 18   PREVENT THE REGULAR CLINICAL SAMPLES FROM BEING, YOU KNOW,

09:57AM 19   TESTED AND WILL IMPACT TURNAROUND TIMES.

09:58AM 20   Q.   RIGHT.  AND DR. PANDORI IS APPROPRIATELY WORRIED ABOUT

09:58AM 21   MAKING SURE THAT THE PATIENT TURNAROUND TIMES --

09:58AM 22   A.   YES, YES.

09:58AM 23   Q.   -- ARE ON SCHEDULE; RIGHT?

09:58AM 24   A.   YES.

09:58AM 25   Q.   AND SO HE SAYS GOOD IDEA, BUT IT'S JUST TOO MUCH; RIGHT?

09:58AM 1     A.   ESSENTIALLY.

09:58AM 2     Q.   OKAY.  LET'S LOOK UP THE CHAIN.

09:58AM 3          MR. BALWANI AGREES WITH DR. PANDORI; RIGHT?

09:58AM 4     A.   YES.

09:58AM 5     Q.   AND HE SAYS, "LET'S JUST DO THIS FOR VITAMIN D THIS WAY

09:58AM 6     AND OTHERS THE WAY ALREADY PLANNED."

09:58AM 7          DO YOU SEE THAT?

09:58AM 8     A.   YES.

09:58AM 9     Q.   AND SO WE'RE GOING TO BE DOING THESE OTHER TESTS, BUT

09:58AM 10    LET'S STILL GET SOME MORE INFORMATION ON VITAMIN D?

09:58AM 11    A.   YES.

09:58AM 12    Q.   AND LET'S GO UP TO THE TOP.

09:58AM 13    A.   THERE IS A REQUIREMENT FOR INSTRUMENT-TO-INSTRUMENT

09:58AM 14    COMPARISON WITHIN BOTH CAP AND CLIA REGULATIONS WHERE YOU MAKE

09:58AM 15    SURE THAT THE INSTRUMENTS ARE RETURNING COMPARABLE RESULTS.

09:59AM 16    THAT'S A SEPARATE EXERCISE PT.

09:59AM 17    Q.   AND THAT'S SOMETHING TOTALLY DIFFERENT FROM PT OR AAP;

09:59AM 18    CORRECT?

09:59AM 19    A.   IT'S RELATED I WOULD SAY.

09:59AM 20    Q.   BUT IT WASN'T WITHIN THAT POLICY THAT YOU PREPARED;

09:59AM 21    CORRECT?

09:59AM 22    A.   NO.

09:59AM 23    Q.   OKAY.  LET'S -- THIS IS MORE ON TRACK WITH THE POLICY THAT

09:59AM 24    YOU PREPARED; RIGHT?

09:59AM 25    A.   YES.  THERE WAS NOTHING IN THAT POLICY ABOUT RUNNING IT ON

09:59AM 1    DIFFERENT INSTRUMENTS THOUGH.

09:59AM 2    Q.   OKAY.  AND YOU AND DR. YOUNG PREPARED THAT POLICY;

09:59AM 3    CORRECT?

09:59AM 4    A.   YES.

09:59AM 5    Q.   AND YOU SIGNED THAT POLICY?

09:59AM 6    A.   YES.

09:59AM 7    Q.   AND YOU THOUGHT IT WAS A GOOD POLICY AT THE TIME; RIGHT?

09:59AM 8    A.   YES.

09:59AM 9    Q.   AND THIS IS BEING DONE CONSISTENT WITH THAT; RIGHT?

09:59AM 10   A.   YES.

09:59AM 11   Q.   OKAY.  AND IF WE GO UP THE CHAIN TO THE LAST EMAIL IN THIS

09:59AM 12   CHAIN DR. PANDORI AGREES.

09:59AM 13        DO YOU SEE THAT?

10:00AM 14        AND HE NOTES -- HE ATTACHES A PAPER ABOUT VITAMIN D

10:00AM 15   VARIABILITY.

10:00AM 16        DO YOU SEE THAT?

10:00AM 17   A.   YES.

10:00AM 18   Q.   AND VARIABILITY IS A CONCEPT THAT WE'VE TALKED ABOUT A

10:00AM 19   LITTLE BIT IN YOUR TESTIMONY.

10:00AM 20        DO YOU RECALL THAT?

10:00AM 21   A.   YES.

10:00AM 22   Q.   AND VITAMIN D IS ACTUALLY NOTORIOUSLY KIND OF A DIFFICULT

10:00AM 23   ASSAY; CORRECT?

10:00AM 24   A.   IT'S DONE A NUMBER OF DIFFERENT WAYS.  IT'S DONE MASS

10:00AM 25   SPEC, MASS SPECTROMETRY, LIPID CHROMATOGRAPHY, MASS

10:00AM  1    SPECTROMETRY, AND IT'S PROBABLY THE MOST ACCURATE WAY OF

10:00AM  2    QUANTIFYING VITAMIN D AND ITS VARIOUS METABOLITES.

10:00AM  3         DIASORIN IS CONSIDERED A VERY GOOD PLATFORM TO MEASURE

10:00AM  4    VITAMIN D IN THE INDUSTRY AT THE TIME.

10:00AM  5    Q.   DO YOU SEE HERE IN THE LAST SENTENCE DR. PANDORI NOTES

10:00AM  6    THAT VITAMIN D SEEMS NOTORIOUS FOR VARIABILITY ON EVEN FDA

10:00AM  7    APPROVED TESTS.

10:01AM  8         DO YOU SEE THAT?

10:01AM  9    A.   THAT'S HIS ASSERTION, YES.

10:01AM  10   Q.   YEAH.  OKAY.

10:01AM  11        DID YOU DISAGREE WITH THIS ASSERTION AT THIS TIME?  I

10:01AM  12   DIDN'T SEE A RESPONSE FROM YOU.

10:01AM  13   A.   I DIDN'T READ HIS PAPER.  I DON'T RECALL WHAT MY THOUGHTS

10:01AM  14   WERE ON THAT.

10:01AM  15   Q.   LET'S GO TO 1593 -- I'M SORRY, 12593.

10:01AM  16        AND WHILE YOU'RE LOOKING FOR THAT, LET ME ASK YOU THIS.

10:01AM  17   THAT EMAIL THAT WE JUST WENT THROUGH --

10:01AM  18   A.   YES.

10:01AM  19   Q.   -- DID THE GOVERNMENT SHOW YOU THAT IN CONNECTION WITH THE

10:01AM  20   PREPARATION OF YOUR TESTIMONY HERE?

10:01AM  21   A.   NO, NO.

10:01AM  22   Q.   LET'S GO TO 12593.

10:02AM  23   A.   I HAVE IT.

10:02AM  24   Q.   LET'S GO -- DO YOU SEE THIS IS AN EMAIL ON THE BOTTOM

10:02AM  25   BETWEEN YOU, DR. PANDORI, AND DR. ROSENDORFF ABOUT THE SUBJECT

10:02AM 1    PT PLAN AND COMMUNICATION?

10:02AM 2    A.   YES.

10:02AM 3    Q.   OKAY.

10:02AM 4         MR. WADE:  MOVE THE ADMISSION OF 12593.

10:02AM 5         MR. BOSTIC:  NO OBJECTION.

10:02AM 6         THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

10:02AM 7         (DEFENDANT'S EXHIBIT 12593 WAS RECEIVED IN EVIDENCE.)

10:02AM 8    BY MR. WADE:

10:02AM 9    Q.   LET'S GO TO THE BOTTOM EMAIL.

10:02AM 10        DO YOU SEE THAT'S AN EMAIL FROM MR. BALWANI TO DR. PANDORI

10:02AM 11   AND YOU?

10:02AM 12   A.   YES.

10:02AM 13   Q.   AND THE SUBJECT IS PT PLAN AND COMMUNICATION?

10:02AM 14   A.   YES.

10:02AM 15   Q.   AND PT IS PROFICIENCY TESTING?

10:03AM 16   A.   CORRECT.

10:03AM 17   Q.   AND IT SAYS, "PER OUR CONVERSATION FROM THIS WEEK, I WOULD

10:03AM 18   LIKE A COMMUNICATIONS PLAN CLEARLY DOCUMENTED ON HOW WE DO AAP

10:03AM 19   FOR PT."

10:03AM 20        DO YOU SEE THAT?

10:03AM 21   A.   YES.

10:03AM 22   Q.   AND IT SAYS, "THE SOP FOR THIS HAS ALWAYS BEEN IN PLACE,

10:03AM 23   BUT YOU MENTIONED YOU DIDN'T KNOW ABOUT THIS UNTIL THIS WEEK

10:03AM 24   AND NOW THAT YOU HAVE READ IT, YOU WANTED TO ADD A FEW MINOR

10:03AM 25   CLARIFYING DETAILS TO THIS."

ROSENDORFF CROSS BY MR. WADE (RES.)                              2431

10:03AM   1          DO YOU SEE THAT?

10:03AM   2     A.   YES.

10:03AM   3     Q.   AND THAT REFERS TO DR. PANDORI; CORRECT?

10:03AM   4     A.   CORRECT.

10:03AM   5     Q.   AND BECAUSE DR. PANDORI JOINED THE COMPANY AFTER YOU

10:03AM   6     IMPLEMENTED THAT PLAN, THAT POLICY?

10:03AM   7     A.   I HAD WRITTEN THE POLICY.

10:03AM   8     Q.   RIGHT.  AND SO HE BECAME AWARE OF IT DURING THIS TIME

10:03AM   9     PERIOD?

10:03AM  10     A.   YES.

10:03AM  11     Q.   AND HE SAYS PLEASE CORRECT ME IF I MISUNDERSTOOD THIS;

10:03AM  12     RIGHT?

10:03AM  13     A.   YES.

10:03AM  14     Q.   AND NEXT PARAGRAPH HE SAYS, "MORE IMPORTANTLY THOUGH, I

10:03AM  15     WANT OUR AAP SOP PROCESS IN A POWERPOINT IN WHICH THIS COULD BE

10:04AM  16     EASILY EXPLAINED AND UNDERSTOOD BY OTHERS IN CLIA."

10:04AM  17          DO YOU SEE THAT?

10:04AM  18     A.   YES.

10:04AM  19     Q.   AND THIS WAS BECAUSE THERE WAS SOME OF THAT CONFUSION

10:04AM  20     RELATING TO THE AAP WITHIN CLIA; RIGHT?

10:04AM  21     A.   YES.

10:04AM  22     Q.   AND SO WHAT HE WAS ASKING FOR WAS A POWERPOINT THAT

10:04AM  23     EXPLAINED THE POLICY TO EVERYONE WITHIN CLIA; RIGHT?

10:04AM  24     A.   YES.

10:04AM  25     Q.   AND SO THERE WAS NO CONFUSION?

10:04AM    1    A.   CORRECT.

10:04AM    2    Q.   AND IF YOU GO TO THE BOTTOM PARAGRAPH THERE HE ACTUALLY

10:04AM    3    ASKS FOR THAT.

10:04AM    4         HE WANTS YOU TO DO THIS, CREATE THIS POWERPOINT, AND THEN

10:04AM    5    SHOW THAT POWERPOINT TO EVERYONE IN THE GROUP; RIGHT?

10:04AM    6    A.   CORRECT.

10:04AM    7    Q.   AND THAT'S WHAT YOU DID; RIGHT?

10:04AM    8    A.   I DON'T RECALL ME SHOWING IT TO THE GROUP MYSELF.  I THINK

10:04AM    9    MARK DID.

10:04AM   10    Q.   OKAY.  WELL, LET'S GO UP THE CHAIN.  THE NEXT EMAIL.

10:05AM   11         AND HERE YOU SAY -- THIS IS AN EMAIL FROM YOU TO

10:05AM   12    MR. BALWANI COPYING MR. PANDORI; RIGHT?

10:05AM   13    A.   YES.

10:05AM   14    Q.   AND -- BUT YOU'RE ADDRESSING MR. BALWANI?

10:05AM   15    A.   YES.

10:05AM   16    Q.   AND YOU SAY, "I HAVE MODIFIED THE SOP TO REFLECT OUR

10:05AM   17    CURRENT AAP."

10:05AM   18         DO YOU SEE THAT?

10:05AM   19    A.   YES.

10:05AM   20    Q.   BUT MINOR CHANGES ONLY; RIGHT?

10:05AM   21    A.   YES.

10:05AM   22    Q.   AND YOU ADDED A SECTION ON THE ACCEPTANCE CRITERIA IN

10:05AM   23    CORRECTIVE ACTIONS; RIGHT?

10:05AM   24    A.   YES.

10:05AM   25    Q.   AND HOW TO DEAL WITH PROBLEMS IF THEY ARISE?

| | | |
|---|---|---|
| 10:05AM | 1 | A.   YES. |
| 10:05AM | 2 | Q.   AND BECAUSE SOMETIMES THEY ARISE; RIGHT? |
| 10:05AM | 3 | A.   CORRECT. |
| 10:05AM | 4 | Q.   AND THEN YOU SAY, "MARK AND I WILL PUT TOGETHER A |
| 10:05AM | 5 | POWERPOINT THAT WE CAN COMMUNICATE IN OUR CLIA GENERAL |
| 10:05AM | 6 | MEETING." |
| 10:05AM | 7 | DO YOU SEE THAT? |
| 10:05AM | 8 | A.   YES. |
| 10:05AM | 9 | Q.   AND DID HE DO THAT, SIR? |
| 10:05AM | 10 | A.   MARK PUT IT TOGETHER. |
| 10:05AM | 11 | Q.   AND DID YOU COMMUNICATE IT IN THE GENERAL CLIA MEETING |
| 10:06AM | 12 | WITH MARK PANDORI? |
| 10:06AM | 13 | A.   I DO NOT RECALL. |
| 10:06AM | 14 | Q.   AND THEN YOU SAY, DO YOU SEE THE LAST SENTENCE -- |
| 10:06AM | 15 | A.   YES. |
| 10:06AM | 16 | Q.   IT SAYS, "I AGREE THAT MISCONCEPTIONS AROUND THIS NEED TO |
| 10:06AM | 17 | BE DISPELLED." |
| 10:06AM | 18 | DO YOU SEE THAT? |
| 10:06AM | 19 | A.   YES. |
| 10:06AM | 20 | Q.   AND THAT WAS YOUR VIEW AT THE TIME; CORRECT? |
| 10:06AM | 21 | A.   YES. |
| 10:06AM | 22 | Q.   DID THE GOVERNMENT SHOW YOU THIS EMAIL IN YOUR PREP |
| 10:06AM | 23 | SESSION? |
| 10:06AM | 24 | A.   NO. |
| 10:06AM | 25 | Q.   LET'S GO TO EXHIBIT 13921. |

10:07AM   1        A.   I HAVE IT.

10:07AM   2        Q.   AND THIS IS AN EMAIL FROM YOU TO MARK PANDORI COPYING

10:07AM   3        MR. BALWANI; CORRECT?

10:07AM   4        A.   CORRECT.

10:07AM   5        Q.   AND THE SUBJECT RELATES TO PROFICIENCY TESTING ON THE

10:07AM   6        EDISON 3.5 DEVICES?

10:07AM   7        A.   CORRECT.

10:07AM   8             MR. WADE:  MOVE THE ADMISSION OF 13921.

10:07AM   9             MR. BOSTIC:  NO OBJECTION.

10:07AM  10             THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:07AM  11        (DEFENDANT'S EXHIBIT 13921 WAS RECEIVED IN EVIDENCE.)

10:07AM  12        BY MR. WADE:

10:07AM  13        Q.   AND THIS SAYS -- THIS IS AN EMAIL WHERE YOU'RE

10:07AM  14        COMMUNICATING THAT ATTACHED UPDATED EDISON AAP PROTOCOL;

10:07AM  15        CORRECT?

10:07AM  16        A.   YES.

10:07AM  17        Q.   AND THAT'S EXACTLY WHAT YOU SAID -- THIS REFLECTS THE

10:07AM  18        CHANGES THAT YOU MENTIONED TO MR. BALWANI IN THE PRIOR EMAIL;

10:07AM  19        CORRECT?

10:07AM  20        A.   YES.

10:07AM  21        Q.   AND THAT DOCUMENT IS ATTACHED AT -- IN THE FOLLOWING

10:07AM  22        PAGES, IS IT NOT?

10:07AM  23        A.   I'M SORRY, COULD YOU REPEAT?

10:08AM  24        Q.   SURE.  THE POLICY ITSELF --

10:08AM  25        A.   AH.

10:08AM  1    Q.   -- THE PROCEDURE SOP FOR PROFICIENCY TESTING FOR THERANOS

10:08AM  2    LAB DEVELOPED TESTS ON THE EDISON 3.5 DEVICES IS ATTACHED TO

10:08AM  3    THAT EMAIL; CORRECT?

10:08AM  4    A.   YES.

10:08AM  5    Q.   THIS WAS -- IS NOT THE SIGNED VERSION.  YOU WERE JUST

10:08AM  6    SENDING AN ELECTRONIC VERSION TO THEM VIA EMAIL; CORRECT?

10:08AM  7    A.   CORRECT.

10:08AM  8    Q.   OKAY.  LET'S GO TO 7440.

10:09AM  9    A.   I HAVE IT.

10:09AM  10   Q.   AND THIS IS AN EMAIL FROM DR. PANDORI TO YOU AND

10:09AM  11   MR. BALWANI IN APRIL, MID-APRIL 2014; CORRECT?

10:09AM  12   A.   YES.

10:09AM  13   Q.   AND IT ATTACHES A POWERPOINT?

10:09AM  14   A.   YES.

10:09AM  15            MR. WADE:  MOVE THE ADMISSION OF 7440.

10:09AM  16            MR. BOSTIC:  NO OBJECTION.

10:09AM  17            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:09AM  18        (DEFENDANT'S EXHIBIT 7440 WAS RECEIVED IN EVIDENCE.)

10:09AM  19   BY MR. WADE:

10:09AM  20   Q.   THIS IS AN EMAIL WHERE DR. PANDORI IS FOLLOWING THROUGH

10:09AM  21   WITH A DISCUSSION WITH MR. BALWANI AND HE'S COMMUNICATING THE

10:09AM  22   POWERPOINT PRESENTATION THAT WAS PREPARED; CORRECT?

10:09AM  23   A.   YES.

10:09AM  24   Q.   AND THIS WAS TO TRY TO DISPEL THE CONFUSION THAT WAS

10:09AM  25   EXISTING WITHIN CLIA LAB ABOUT AAP AND PT?

10:09AM  1    A.   YES.

10:09AM  2    Q.   LET'S TAKE A LOOK AT THAT POWERPOINT.

10:10AM  3         DO YOU SEE THE SUBJECT LINE HERE AND THAT'S A PICTURE OF

10:10AM  4    THE SIGN FOR THE LOCATION OF THE LAB; IS THAT RIGHT?

10:10AM  5    A.   YES.

10:10AM  6    Q.   OKAY.  AND LET'S GO TO THE NEXT PAGE.

10:10AM  7         THIS JUST PROVIDES THE GENERAL FRAMEWORK FOR WHAT IS

10:10AM  8    REQUIRED FOR PROFICIENCY TESTING BY CMS; RIGHT?

10:10AM  9    A.   CORRECT.

10:10AM  10   Q.   AND THEN IF YOU GO TO THE NEXT PAGE.

10:10AM  11        WE TALKED A LITTLE BUILT ABOUT A TARGET THE OTHER DAY.

10:10AM  12   PROFICIENCY TESTING IS DESIGNED TO ASSESS ACCURACY; RIGHT?

10:10AM  13   A.   YES.

10:10AM  14   Q.   AND, IN FACT, THE SECOND POINT THERE DO YOU SEE IT SAYS,

10:10AM  15   "YOUR LAB IS COMPARED TO PEER GROUPS ON THE BASIS OF

10:10AM  16   EQUIPMENT."

10:10AM  17        RIGHT?

10:10AM  18   A.   YES.

10:10AM  19   Q.   AND SO THAT'S KIND OF THE APPLES TO APPLES THAT HAS BEEN

10:11AM  20   REFERRED TO; RIGHT?  YOU NEED A PEER GROUP?

10:11AM  21   A.   YES.

10:11AM  22   Q.   LET'S GO TO THE NEXT PAGE.

10:11AM  23        AND HERE IT SAYS, "THERANOS TESTS HAVE NO PEER GROUPS."

10:11AM  24        RIGHT?

10:11AM  25   A.   I CAN CLARIFY IF NEEDED, OR IF NOT, WE WILL CONTINUE WITH

10:11AM   1    THE DISCUSSION.

10:11AM   2    Q.   WELL, YOU WERE SENT THIS IN ADVANCE?

10:11AM   3    A.   YES.

10:11AM   4    Q.   AND YOU ACTUALLY PROVIDED COMMENTS ON THIS.

10:11AM   5         DO YOU RECALL THAT?

10:11AM   6    A.   ON THE POWERPOINT?

10:11AM   7    Q.   YEAH.  DO YOU RECALL DOING THAT?

10:11AM   8    A.   NO.

10:11AM   9    Q.   BUT YOU WERE CERTAINLY SENT IT IN THIS EMAIL?

10:11AM  10    A.   YES.

10:11AM  11    Q.   AND DID YOU AGREE IT WAS ACCURATE AT THE TIME?

10:11AM  12    A.   THAT WHAT WAS ACCURATE?

10:11AM  13    Q.   THE POWERPOINT.  DO YOU THINK IT ACCURATELY CAPTURED PT

10:12AM  14    AND AAP?

10:12AM  15    A.   THIS INTENTION WAS MORE IN THE VEIN OF WHAT I NEED TO DO.

10:12AM  16    SITTING HERE AND GOING THROUGH THE DOCUMENTS, IT LOOKS LIKE

10:12AM  17    THIS WAS ONLY DONE FOR VITAMIN D PER THE PREVIOUS EMAILS WE

10:12AM  18    WERE REVIEWING, YEAH.

10:12AM  19    Q.   SIR, DO YOU RECALL IN THE PREVIOUS EMAILS THERE'S AN

10:12AM  20    INDICATION FROM DR. PANDORI THAT THEY WERE DOING VITAMIN D;

10:12AM  21    CORRECT?

10:12AM  22    A.   YES.

10:12AM  23    Q.   AND THERE'S AN INDICATION FROM MR. BALWANI THAT HE WANTED

10:12AM  24    TO DO EVEN MORE VITAMIN D TESTING; RIGHT?

10:12AM  25    A.   CORRECT.

10:12AM  1    Q.   AND DR. PANDORI DIDN'T WANT TO DO MORE TESTING BECAUSE HE

10:12AM  2    WANTED TO DO PT ON OTHER ANALYTES; CORRECT?

10:12AM  3    A.   YES.

10:12AM  4    Q.   AND THAT WAS IN THE WEEKS PRECEDING THIS APRIL 17TH, 2014,

10:12AM  5    PRESENTATION; CORRECT?

10:12AM  6    A.   YES.

10:12AM  7    Q.   NOW, MY QUESTION FOR YOU, SIR, IS DID YOU HAVE ANY REASON

10:12AM  8    TO QUESTION THE ACCURACY OF THIS SLIDE DECK AT THE TIME THAT

10:13AM  9    YOU RECEIVED IT FROM DR. PANDORI?

10:13AM  10   A.   I THINK THE SLIDE DECK REFLECTED WHAT I HAD WRITTEN IN THE

10:13AM  11   SOP.

10:13AM  12   Q.   OKAY.  NOW, LET'S GO BACK TO THIS EMAIL.

10:13AM  13        IT SAYS, "THERANOS TESTS HAVE NO PEER GROUPS."

10:13AM  14        DO YOU SEE THAT?

10:13AM  15   A.   CORRECT.

10:13AM  16   Q.   I'M SORRY, IF WE CAN GO BACK TO THE POWERPOINT.  ONE MORE

10:13AM  17   PAGE.  THERE YOU GO.

10:13AM  18        DO YOU HAVE THAT IN FRONT OF YOU ON THE SCREEN?

10:13AM  19   A.   YES.

10:13AM  20   Q.   IT SAYS, "NORMAL PROCESS OF PS IS THEREFORE NOT

10:13AM  21   APPROPRIATE."

10:13AM  22        RIGHT?

10:13AM  23   A.   YES.

10:13AM  24   Q.   IT SAYS, "ADDITIONALLY, THE SYNTHETIC MATRIX OF MANY

10:13AM  25   COMMERCIALLY AVAILABLE PT SAMPLES IS NOT AN APPROPRIATE ONE FOR

10:13AM   1    MANY THERANOS TESTS."

10:13AM   2         RIGHT?  DO YOU SEE THAT?

10:13AM   3    A.   THAT'S WHAT I'M READING, YES.

10:14AM   4    Q.   OKAY.  AND I BELIEVE YOU JUST TESTIFIED THAT THIS

10:14AM   5    ACCURATELY REFLECTS YOUR POLICY?

10:14AM   6    A.   YES.

10:14AM   7    Q.   ALL RIGHT.  AND THEN IT EXPLAINS, IF WE GO TO THE NEXT

10:14AM   8    SLIDE, "HOW IS PT PERFORMED THEN ON THERANOS TESTS?"

10:14AM   9         DO YOU SEE THAT?

10:14AM  10    A.   YES.

10:14AM  11    Q.   AND IT TALKS ABOUT HOW YOU LOOK TO THE CLINICAL AND

10:14AM  12    LABORATORY INSTITUTE.

10:14AM  13         DO YOU SEE THAT?

10:14AM  14    A.   YES.

10:14AM  15    Q.   AND SOMETIMES IT'S REFERRED TO AS THE CLSI?

10:14AM  16    A.   YES.

10:14AM  17    Q.   AND THAT'S A VERY AUTHORITATIVE GROUP; CORRECT?

10:14AM  18    A.   SURE.

10:14AM  19    Q.   AND SO YOU AND DR. PANDORI LOOKED TO THAT FOR GUIDANCE;

10:14AM  20    CORRECT?

10:14AM  21    A.   YES.

10:14AM  22    Q.   LET'S GO TO THE NEXT SLIDE.

10:14AM  23         AND IT EXPLAINS OUR AAP INCLUDES A COMPARISON OF A

10:14AM  24    PREDICATE FDA APPROVED METHOD.

10:14AM  25         THAT'S THE GOLD STANDARD; RIGHT?

| | | |
|---|---|---|
| 10:15AM | 1 | A.   YES. |
| 10:15AM | 2 | Q.   TO THE THERANOS METHODS; RIGHT? |
| 10:15AM | 3 | A.   YES. |
| 10:15AM | 4 | Q.   AND THEN IT SAYS USES ACTUAL CLINICAL SPECIMENS. |
| 10:15AM | 5 | DO YOU SEE THAT? |
| 10:15AM | 6 | A.   YES. |
| 10:15AM | 7 | Q.   AND THAT'S TO AVOID THAT SYNTHETIC MATRIX ISSUE THAT WAS |
| 10:15AM | 8 | ON THE PRIOR SLIDE; RIGHT? |
| 10:15AM | 9 | A.   I CAN'T ANSWER YES OR NO TO THAT QUESTION. |
| 10:15AM | 10 | Q.   SO YOU DON'T KNOW? |
| 10:15AM | 11 | A.   ARE YOU ASKING FOR MY OPINION? |
| 10:15AM | 12 | Q.   I'M, I'M ASKING IF THE REASON -- IF THAT WAS THE REASON |
| 10:15AM | 13 | THAT THE AAP METHOD WAS USED WAS TO AVOID CONCERNS ABOUT THE |
| 10:15AM | 14 | MATRIX EFFECTS, AMONG OTHER REASONS? |
| 10:15AM | 15 | A.   THOSE WERE SOME OF THE REASONS THAT HAD BEEN PROPOSED. |
| 10:15AM | 16 | Q.   OKAY.  AND THAT'S THE REASON THAT DR. PANDORI REFLECTED IN |
| 10:15AM | 17 | THIS POWERPOINT; RIGHT? |
| 10:15AM | 18 | A.   YES. |
| 10:15AM | 19 | Q.   AND LET'S GO TO THE NEXT PAGE. |
| 10:16AM | 20 | SIR, CAN YOU READ THAT FIRST BULLET FOR US, THE FIRST AT |
| 10:16AM | 21 | THE TOP OF THE PAGE? |
| 10:16AM | 22 | A.   "THE THERANOS AAP IS SUPERIOR TO STANDARD PT, AND WILL |
| 10:16AM | 23 | PROVIDE EVEN MORE QUALITY ASSURANCE." |
| 10:16AM | 24 | Q.   THANK YOU.  LET'S GO TO THE NEXT SLIDE. |
| 10:16AM | 25 | AND THIS TALKS ABOUT THE RESULTS; RIGHT? |

10:16AM  1    A.   YES.

10:16AM  2    Q.   AND IT SAYS IF AAP SHOWED ANYTHING WRONG WITH A TEST, IT

10:16AM  3    CAN BE CAPTURED AND REPAIRED VERY QUICKLY; RIGHT?

10:16AM  4    A.   YES.

10:16AM  5    Q.   THAT'S THE GOAL; RIGHT?

10:16AM  6    A.   YES.

10:16AM  7    Q.   TO MAKE SURE THAT THE TEST REMAINS SAFE AND ACCURATE;

10:16AM  8    RIGHT?

10:16AM  9    A.   ARE YOU ASKING ME IF PROBLEMS WERE REPAIRED QUICKLY IN

10:17AM  10   REALTIME?

10:17AM  11   Q.   I'M ASKING YOU IF THAT WAS THE GOAL OF THE IMPLEMENTATION

10:17AM  12   OF THIS POLICY IN THIS SLIDE DECK?

10:17AM  13   A.   WELL, THAT'S THE IDEAL -- THAT WOULD BE IDEAL, YES.

10:17AM  14   Q.   OKAY.  GREAT.

10:17AM  15       THEN THERE WAS AN OPPORTUNITY TO ASK QUESTIONS.

10:17AM  16       DO YOU RECALL WHETHER THERE WERE ANY QUESTIONS ASKED?

10:17AM  17   A.   I DO NOT RECALL.

10:17AM  18   Q.   BUT THE IDEA WAS THAT MR. BALWANI AND YOU AND DR. PANDORI

10:17AM  19   WANTED TO PUT THIS INFORMATION OUT THERE TO EVERYONE IN THE

10:17AM  20   CLIA LAB AND GIVE THEM A CHANCE TO UNDERSTAND IT AND TO ASK

10:17AM  21   QUESTIONS; RIGHT?

10:17AM  22   A.   YES.

10:17AM  23   Q.   OKAY.  NOW, I WANT TO JUMP AHEAD A LITTLE BIT TO THE FALL

10:17AM  24   OF 2014.

10:18AM  25       OKAY?

10:18AM 1    A.   SURE.

10:18AM 2    Q.   AND ON WEDNESDAY DURING YOUR TESTIMONY WE TALKED ABOUT A

10:18AM 3    MEETING THAT YOU HAD HAD WITH S.E.C. ATTORNEYS AND SOME OF THE

10:18AM 4    PROSECUTORS IN 2016 WHERE YOU STATED THAT THERE WERE GOOD

10:18AM 5    RESULTS FROM AAP ON THE EDISON MACHINES.

10:18AM 6         DO YOU RECALL THAT?

10:18AM 7    A.   YES.

10:18AM 8    Q.   AND WHAT I'D LIKE TO DO IS WALK YOU THROUGH SOME OF THE

10:18AM 9    EVENTS IN THE FALL.

10:18AM 10        IF WE CAN GO TO EXHIBIT 12846.

10:19AM 11        BY THE WAY, WHILE WE'RE LOOKING FOR THAT, THE POWERPOINT

10:19AM 12   WE JUST WENT THROUGH, DID THE GOVERNMENT SHOW YOU THAT IN YOUR

10:19AM 13   PREPARATION?

10:19AM 14   A.   YES.

10:19AM 15   Q.   THEY DID?

10:19AM 16   A.   YES.

10:19AM 17   Q.   ALL RIGHT.  12846, DO YOU SEE THAT?

10:19AM 18   A.   I HAVE IT.

10:19AM 19   Q.   OKAY.  I'D LIKE TO GO TO THE BOTTOM EMAIL.

10:19AM 20   A.   UH-HUH, YES.

10:19AM 21   Q.   YOU RECOGNIZE THIS TO BE AN EMAIL BETWEEN YOU AND MS. KHAN

10:19AM 22   AND CHRISTIAN HOLMES RELATING TO A PHYSICIAN INQUIRY IN OCTOBER

10:19AM 23   OF 2013?

10:19AM 24   A.   ARE YOU REFERRING TO THE FIRST EMAIL ON THE FIRST PAGE?

10:19AM 25   Q.   NO.  IF YOU START ON THE BACK.

10:19AM 1   A.   UH-HUH.

10:19AM 2   Q.   DO YOU SEE THE SUBJECT PHYSICIAN INQUIRY?

10:19AM 3   A.   YES.

10:19AM 4   Q.   OKAY.  AND THIS EMAIL STARTS WITH THE FOLLOWUP ON A

10:20AM 5   PHYSICIAN INQUIRY RELATING TO A TEST.

10:20AM 6        DO YOU SEE THAT?

10:20AM 7   A.   IT'S AN EMAIL FROM ANAM TO CHRISTIAN REGARDING A PHYSICIAN

10:20AM 8   INQUIRY.

10:20AM 9   Q.   RIGHT.  DO YOU SEE THAT?

10:20AM 10  A.   UH-HUH.

10:20AM 11  Q.   AND ULTIMATELY YOU'RE LOOPED IN.  DO YOU SEE THAT ON THE

10:20AM 12  NEXT PAGE?

10:20AM 13  A.   YES.

10:20AM 14       MR. WADE:  OKAY.  I'D MOVE THE ADMISSION OF

10:20AM 15  EXHIBIT 12846.

10:20AM 16       MR. BOSTIC:  NO OBJECTION.

10:20AM 17       THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:20AM 18       (DEFENDANT'S EXHIBIT 12846 WAS RECEIVED IN EVIDENCE.)

10:20AM 19       MR. WADE:  LET'S START AT THE BOTTOM OF THIS ONE,

10:20AM 20  LAST EMAIL.

10:20AM 21  Q.   OKAY.  DO YOU SEE HERE THERE'S -- DO YOU REMEMBER

10:20AM 22  MS. KHAN?  IS SHE A CUSTOMER SERVICE REPRESENTATIVE?

10:20AM 23  A.   YES.

10:20AM 24  Q.   AND SHE'S A PERSON WHO SOMETIMES FORWARDS INQUIRIES THAT

10:20AM 25  COME FROM PRACTICES; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                      2444

10:20AM   1    A.   YES.

10:20AM   2    Q.   AND WE TALKED ABOUT THE OTHER DAY THERE ARE A LOT OF

10:20AM   3    DIFFERENT INQUIRIES THAT COME FROM PRACTICES; RIGHT?

10:20AM   4    A.   YES.

10:20AM   5    Q.   AND SOME OF THEM CAN RELATE TO MINOR THINGS THAT ARE OF NO

10:20AM   6    CONCERN TO YOU?

10:20AM   7    A.   I TOOK ALL OF THE INQUIRIES SERIOUSLY, SIR.

10:21AM   8    Q.   OKAY.  I'M GLAD TO HEAR THAT.

10:21AM   9         BUT YOU WERE PARTICULARLY CONCERNED IF THERE WAS A MEDICAL

10:21AM   10   INQUIRY; RIGHT?

10:21AM   11   A.   IT'S ALSO A MEDICAL ISSUE WHEN YOU'RE ISSUING LAB RESULTS

10:21AM   12   TO PATIENTS.

10:21AM   13   Q.   OKAY.  BUT, FOR EXAMPLE, IF THE MEDICAL PRACTICE CALLED

10:21AM   14   AND SAID WE NEED MORE FORMS, THAT'S NOT SOMETHING THAT YOU

10:21AM   15   NECESSARILY NEED TO BE INVOLVED IN; RIGHT?

10:21AM   16   A.   CORRECT.

10:21AM   17   Q.   OKAY.  AND THERE COULD BE OTHER MINOR ISSUES THAT YOU

10:21AM   18   MIGHT NOT NEED TO BE INVOLVED IN, RIGHT, DR. ROSENDORFF?

10:21AM   19   A.   SURE.  CORRECT.

10:21AM   20   Q.   THIS IS AN INQUIRY THAT COMES UP WITH RESPECT TO A

10:21AM   21   PATIENT'S RESULTS.

10:21AM   22        DO YOU SEE THAT?

10:21AM   23   A.   YES.

10:21AM   24   Q.   AND I WANT TO BE CAREFUL NOT TO IDENTIFY THE PATIENT.

10:21AM   25   IT'S REDACTED ON THE SCREEN.  OKAY?

10:21AM  1        AND ONE OF THEM WAS, IF YOU GO UP THE CHAIN, MR. HOLMES

10:22AM  2   SAYS, "WE WILL REPEAT THE TESTS, AND PLEASE PASS TO ADAM

10:22AM  3   REGARDING HER REQUEST TO SPEAK WITH SOMEONE IN THE LAB."

10:22AM  4        DO YOU SEE THAT?

10:22AM  5   A.   YES.

10:22AM  6   Q.   AND THAT'S EXACTLY WHAT YOU WANTED HAPPENING; RIGHT?

10:22AM  7   A.   YES.

10:22AM  8   Q.   AND DO YOU RECALL SOMETIMES MR. HOLMES WAS ASKED ABOUT

10:22AM  9   REQUEST FOR REDRAWS BECAUSE HE HAD THE AUTHORITY TO WAIVE ANY

10:22AM  10  CHARGES FOR THAT AND COULD GRANT A TEST AT NO COST IF ONE WAS

10:22AM  11  REQUESTED?

10:22AM  12  A.   I HAVEN'T SEEN EMAILS ABOUT HIM WAIVING CHARGES.  I

10:22AM  13  HAVEN'T SEEN EMAILS ABOUT HIM APPROVING TESTS, APPROVING

10:22AM  14  REDRAWS FOR THE PURPOSE OF WAIVING CHARGES.

10:22AM  15  Q.   OKAY.  AND I DIDN'T SEE IF YOU HAD SEEN EMAILS.  WERE YOU

10:22AM  16  AWARE THAT HE HAD THE AUTHORITY TO WAIVE CHARGES IF A TEST WAS

10:22AM  17  REDONE?

10:22AM  18  A.   NO, I WAS NOT.

10:22AM  19  Q.   OKAY.  BUT HERE HE'S LOOPING YOU IN; CORRECT?  DO YOU SEE

10:22AM  20  THAT?

10:22AM  21  A.   YES.

10:22AM  22  Q.   AND IF WE GO TO THE NEXT EMAIL, MS. KHAN DOES JUST THAT;

10:23AM  23  RIGHT?

10:23AM  24  A.   YES.

10:23AM  25  Q.   AND SHE SAYS, "CAN YOU PLEASE REACH OUT TO THIS PHYSICIAN.

10:23AM  1    SHE HAS SOME QUESTIONS REGARDING HER PATIENT'S FT4 AND TSH

10:23AM  2    RESULT."

10:23AM  3        DO YOU SEE THAT?

10:23AM  4    A.   YES.

10:23AM  5    Q.   OKAY.  AND YOU RESPOND, "SURE."

10:23AM  6        DO YOU SEE THAT?

10:23AM  7    A.   YES.

10:23AM  8    Q.   AND ANOTHER ITEM THAT IS NOT RELATED TO THAT INQUIRY;

10:23AM  9    RIGHT?

10:23AM  10   A.   YES.

10:23AM  11   Q.   OKAY.  AND LET'S GO UP TO THE NEXT -- LET ME GO BACK TO

10:23AM  12   THAT ONE EMAIL FOR JUST ONE SECOND.

10:23AM  13       THAT'S ON OCTOBER 10TH, 2014; CORRECT?

10:23AM  14   A.   YES.

10:23AM  15   Q.   AND LET'S GO ONE EMAIL UP.

10:23AM  16       HERE MS. KHAN EMAILS AGAIN; CORRECT?

10:23AM  17   A.   YES.

10:23AM  18   Q.   AND SHE SAYS, "CAN YOU PLEASE REACH OUT TO THIS PHYSICIAN?

10:23AM  19   SHE CALLED AGAIN TODAY BECAUSE SHE HASN'T HEARD FROM ANYONE

10:24AM  20   YET.  SHE SENT HER PATIENT BACK YESTERDAY AND THE FT4 RESULT

10:24AM  21   WAS LOW AGAIN."

10:24AM  22       DO YOU SEE THAT?

10:24AM  23   A.   YES.

10:24AM  24   Q.   AND A WEEK HAD GONE BY AND YOU HAD NOT RETURNED THAT PHONE

10:24AM  25   CALL, CORRECT, SIR?

10:24AM 1    A.   YES, IT APPEARS SO.

10:24AM 2    Q.   OKAY.  SO YOU ASKED FOR THE PHONE NUMBER.

10:24AM 3         IF WE GO UP THE CHAIN, AND DO YOU SEE YOU ASKED FOR THE

10:24AM 4    PHONE NUMBER AGAIN?

10:24AM 5    A.   YES.

10:24AM 6    Q.   AND THEN YOU WERE GOING TO CALL; RIGHT?

10:24AM 7    A.   YES.

10:24AM 8    Q.   AND WE ALL MAKE MISTAKES; RIGHT?

10:24AM 9    A.   SURE.

10:24AM 10   Q.   LET'S GO TO THE NEXT PAGE.

10:24AM 11        HERE YOU REPORT ON THE CALL WITH DR. KRAL.

10:25AM 12        DO YOU SEE THAT?

10:25AM 13   A.   YES.

10:25AM 14   Q.   AND YOU SAY -- YOU EXPLAIN HOW SHE'S PUZZLED ABOUT THE

10:25AM 15   RESULTS AND YOU EXPLAIN WHAT -- SOMETHING ABOUT WHAT YOU

10:25AM 16   COMMUNICATED THERE.

10:25AM 17        DO YOU SEE THAT?

10:25AM 18   A.   YES.

10:25AM 19   Q.   AND THEN DO YOU SEE THAT SHE SAYS WE DISCUSSED THE

10:25AM 20   POSSIBILITY OF WHAT MIGHT BE CAUSING THE RESULTS.  IT'S A VERY

10:25AM 21   TECHNICAL ISSUE THERE; RIGHT?

10:25AM 22   A.   YES.

10:25AM 23   Q.   AND I DON'T WANT TO GET BOGGED DOWN IN THAT.

10:25AM 24        BUT YOU ALSO SAY WE DISCUSSED THE EQUILIBRIUM DIALYSIS IS

10:25AM 25   THE GOLD STANDARD ASSAY FOR FT4.

10:25AM   1         DO YOU SEE THAT?

10:25AM   2    A.   YES.

10:25AM   3    Q.   AND DO YOU SEE THE NEXT SENTENCE THERE, IT SAYS, "THE M.D.

10:25AM   4    IS EXTREMELY POSITIVE AND EXCITED ABOUT THERANOS AND WANTS US

10:25AM   5    TO 'CRUSH QUEST DIAGNOSTICS'"?

10:25AM   6    A.   I SEE THAT.

10:25AM   7    Q.   AND THAT'S WHAT WAS COMMUNICATED TO YOU FROM THAT DOCTOR?

10:25AM   8    A.   YES.

10:25AM   9    Q.   AND LET'S LOOK AT THIS NEXT ISSUE.  AND, NO, I'M SORRY,

10:25AM   10   THE BOTTOM EMAIL IN THAT CHAIN.  IT STARTS "NOTE."  I WANT TO

10:26AM   11   FOCUS ON THAT.

10:26AM   12        DO YOU SEE THAT?

10:26AM   13   A.   YES.

10:26AM   14   Q.   AND IT SAYS, "AAP PERFORMED ON 4/18/2014 INDICATES THAT

10:26AM   15   THE THERANOS METHOD IS, ON AVERAGE, 10 PERCENT LOWER THAN

10:26AM   16   PREDICATE."

10:26AM   17        DO YOU SEE THAT?

10:26AM   18   A.   YES.

10:26AM   19   Q.   AND WHICH IS ACCEPTABLE?

10:26AM   20   A.   YES.

10:26AM   21   Q.   AND THAT WAS YOUR AAP; CORRECT?

10:26AM   22   A.   YES, IT APPEARS SO.

10:26AM   23   Q.   AND LET'S GO UP THE CHAIN.

10:26AM   24        YOU THEN FORWARD THIS TO MR. HOLMES.

10:26AM   25        DO YOU SEE THAT?

10:26AM   1    A.   YES.

10:26AM   2    Q.   IF WE CAN CAPTURE ALL OF THE EMAILS AT THE TOP THERE.

10:26AM   3         HE THANKS YOU FOR THE FEEDBACK.  HE WANTS YOU TO KNOW THAT

10:26AM   4    THE LOOP HAD BEEN CLOSED ON THAT; RIGHT.

10:26AM   5    A.   YES.

10:26AM   6    Q.   BECAUSE HE HAD A ROLE IN SUPERVISING CUSTOMER SERVICE;

10:27AM   7    RIGHT?

10:27AM   8    A.   YES.

10:27AM   9    Q.   AND CUSTOMER SERVICE WAS IMPORTANT AT THERANOS, WAS IT

10:27AM   10   NOT?

10:27AM   11   A.   I CAN'T ANSWER YES OR NO.

10:27AM   12   Q.   WAS IT IMPORTANT TO YOU, SIR?

10:27AM   13   A.   YES.

10:27AM   14   Q.   OKAY.  AND AS A GENERAL MATTER, YOU HAD RETURNED DOCTOR

10:27AM   15   CALLS MUCH MORE QUICKLY THAN THAT I ASSUME.

10:27AM   16   A.   YES.

10:27AM   17   Q.   YEAH.  LET'S GO TO EXHIBIT 13922.

10:27AM   18   A.   OKAY.

10:27AM   19   Q.   OKAY.  AND DO YOU SEE THAT THIS IS AN ISSUE, ANOTHER

10:28AM   20   PHYSICIAN CALL BACK ISSUE.  THIS ONE IS IN LATE SEPTEMBER 2014.

10:28AM   21        DO YOU SEE THAT?

10:28AM   22   A.   YES, YES.

10:28AM   23   Q.   AND THIS ONE WAS SOME -- A QUESTION THAT APPEARS TO RELATE

10:28AM   24   TO TESTOSTERONE; RIGHT?

10:28AM   25   A.   YES.

| | | |
|---|---|---|
| 10:28AM | 1 | Q.   AND HERE -- |
| 10:28AM | 2 | MOVE TO ADMIT 13922. |
| 10:28AM | 3 | MR. BOSTIC:  NO OBJECTION. |
| 10:28AM | 4 | THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH. |
| 10:28AM | 5 | (DEFENDANT'S EXHIBIT 13922 WAS RECEIVED IN EVIDENCE.) |
| 10:28AM | 6 | BY MR. WADE: |
| 10:28AM | 7 | Q.   AND DO YOU SEE ON THIS EMAIL CHAIN THERE ARE A NUMBER OF |
| 10:28AM | 8 | PEOPLE INVOLVED IN THIS, RIGHT, UP AT THE TOP? |
| 10:28AM | 9 | A.   YES. |
| 10:28AM | 10 | Q.   AND ONE OF THEM IS MR. HOLMES; RIGHT?  DO YOU SEE THAT? |
| 10:28AM | 11 | A.   YES. |
| 10:28AM | 12 | Q.   AND THIS WAS AN INQUIRY THAT HAD APPROPRIATELY BEEN |
| 10:29AM | 13 | REFERRED TO YOU ABOUT A CONSULTATION WITH A DOCTOR; RIGHT? |
| 10:29AM | 14 | A.   I DON'T RECALL THE BACKGROUND.  IT'S ME ASKING ABOUT AAP |
| 10:29AM | 15 | FOR TESTOSTERONE.  I JUST DON'T REMEMBER THE BACKGROUND ON IT. |
| 10:29AM | 16 | Q.   OKAY.  WELL, LET'S BLOW UP THAT SENTENCE. |
| 10:29AM | 17 | YOU WERE TALKING ABOUT WANTING TO GET THAT INFORMATION IN |
| 10:29AM | 18 | CONNECTION WITH YOUR INQUIRY ON THIS DOCTOR; RIGHT? |
| 10:29AM | 19 | A.   YES. |
| 10:29AM | 20 | Q.   OKAY.  LET'S GO TO EXHIBIT 12793. |
| 10:29AM | 21 | A.   AND SO THEY DIDN'T ACTUALLY ANSWER MY QUESTION HERE. |
| 10:29AM | 22 | Q.   I DON'T HAVE THAT EMAIL, SIR. |
| 10:29AM | 23 | A.   I'M SORRY, WHICH EMAIL? |
| 10:29AM | 24 | Q.   I DON'T HAVE THE RESPONSIVE EMAIL TO PUT IN FRONT OF YOU. |
| 10:29AM | 25 | A.   OH, I SEE.  I SEE. |

ROSENDORFF CROSS BY MR. WADE (RES.)

10:29AM  1    Q.   COULD WE GO TO 12793.

10:30AM  2    A.   I HAVE IT.

10:30AM  3    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

10:30AM  4    A.   YES.

10:30AM  5    Q.   AND THIS FOLLOWS UP ON -- IF YOU GO TO -- DO YOU SEE THIS

10:30AM  6    IS ANOTHER EMAIL ABOUT AN INQUIRY RELATING TO THE TESTOSTERONE

10:30AM  7    ISSUE?

10:30AM  8    A.   YES.

10:30AM  9    Q.   OKAY.

10:30AM  10        MOVE THE ADMISSION OF 12793.

10:30AM  11            MR. BOSTIC:  NO OBJECTION.

10:30AM  12            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:30AM  13        (DEFENDANT'S EXHIBIT 12793 WAS RECEIVED IN EVIDENCE.)

10:30AM  14    BY MR. WADE:

10:30AM  15    Q.   AND IF WE CAN GO TO THE LAST EMAIL.

10:31AM  16    A.   YES.

10:31AM  17    Q.   THIS IS -- I JUST WANT TO NOTE THIS IS AN ISSUE FOR A

10:31AM  18    PHYSICIAN WHO CALLED; CORRECT?

10:31AM  19    A.   YES.

10:31AM  20    Q.   AND THEY'RE ASKING THAT A FOLLOWUP BE DONE?

10:31AM  21    A.   YES.

10:31AM  22    Q.   DO YOU SEE THAT?

10:31AM  23    A.   YES.

10:31AM  24    Q.   OKAY.  IF WE GO UP TO THE 3:29 P.M. EMAIL, DO YOU SEE

10:31AM  25    MS. SCHEER IS HELPFULLY PROVIDING INFORMATION AND REMINDING YOU

10:31AM  1    TO CALL BECAUSE THE PHYSICIAN HAD WANTED TO CALL AT 4:00;

10:31AM  2    RIGHT?

10:31AM  3    A.   YES.

10:31AM  4    Q.   AND SHE'S REMINDING YOU AT 3:30?

10:31AM  5    A.   YES.

10:31AM  6    Q.   OKAY.  AND IF WE GO UP ONE EMAIL INITIALLY WHICH IS THE

10:32AM  7    PRIOR PAGE, YOU RESPOND -- THIS IS OCTOBER 1ST, 2014.

10:32AM  8        DO YOU SEE THAT?

10:32AM  9    A.   YES.

10:32AM  10   Q.   AND LET'S GO TO THE NEXT PAGE.

10:32AM  11       ALL RIGHT.  IF YOU CAN -- AND DO YOU SEE GENERALLY ALL OF

10:32AM  12   THE REDACTED INFORMATION ON THERE?

10:32AM  13   A.   YES.

10:32AM  14   Q.   DO YOU SEE THAT ON THE SCREEN?

10:32AM  15   A.   YES.

10:32AM  16   Q.   THAT IS ALL PATIENT IDENTIFYING INFORMATION?

10:32AM  17   A.   YES.

10:32AM  18   Q.   AND YOU UNDERSTAND THAT WE'RE REDACTING IT HERE?

10:32AM  19   A.   YES.

10:32AM  20   Q.   FOR THAT PURPOSE?

10:32AM  21   A.   APPROPRIATELY.

10:32AM  22   Q.   BECAUSE THAT'S IMPORTANT; RIGHT?

10:32AM  23   A.   TO PROTECT PHI, ABSOLUTELY.  YES.

10:32AM  24   Q.   AND IF YOU GO TO THE BOTTOM THERE, DO YOU SEE -- LET'S

10:32AM  25   BLOW THAT UP.

10:33AM  1        DO YOU SEE IT SAYS, "FINALLY, AS LAB DIRECTOR --" NOW THIS

10:33AM  2   WAS A PATIENT INQUIRY WHERE YOU WERE ASKED TO TALK ABOUT

10:33AM  3   TESTOSTERONE; RIGHT?

10:33AM  4   A.   YES.

10:33AM  5   Q.   AND YOU SAY, "FINALLY, AS LAB DIRECTOR, I NEED TO SIGN OFF

10:33AM  6   ON PROFICIENCY TESTING/AAP FOR VITAMIN D AND TESTOSTERONE,

10:33AM  7   WHICH HAVE BOTH BEEN IN PRODUCTION FOR ALMOST A YEAR, WITHOUT

10:33AM  8   (TO MY KNOWLEDGE), A FULLY EXECUTED AAP PLAN AND DATA."

10:33AM  9        DO YOU SEE THAT?

10:33AM 10   A.   YES.

10:33AM 11   Q.   AND YOU SAY, "THIS DATA NEEDS TO BE SHARED ALSO WITH OUR

10:33AM 12   QA/QC DIRECTOR AND BE AVAILABLE FOR CLIA INSPECTIONS."

10:33AM 13        DO YOU SEE THAT?

10:33AM 14   A.   YES.

10:33AM 15   Q.   AND THAT JUST KIND OF -- LET'S GO BACK UP TO THE HEADING

10:33AM 16   OF THAT.

10:33AM 17        THAT EMAIL WAS SOMEWHAT RAISED OUT OF NOWHERE AND YOU'RE

10:33AM 18   ADDRESSING IT TO ELENA AND CHRISTIAN.

10:33AM 19        DO YOU SEE THAT?  IT'S ON THE SCREEN.

10:33AM 20   A.   AND MAX, YEAH.

10:34AM 21   Q.   AND NOW, ELENA AND CHRISTIAN DON'T HAVE ANYTHING TO DO

10:34AM 22   WITH AAP AND PT; CORRECT?

10:34AM 23   A.   THAT'S CORRECT.

10:34AM 24   Q.   AND THEY HAVE NO ROLE IN THAT WHATSOEVER?

10:34AM 25   A.   CORRECT.

10:34AM 1    Q.   AND IF THEY CAME IN THE LAB AND TRIED TO DO AAP AND PT,

10:34AM 2    YOU WOULD THROW THEM OUT OF THE LAB, WOULDN'T YOU?

10:34AM 3    A.   CORRECT.

10:34AM 4    Q.   OKAY.  LET'S GO UP ONE EMAIL.  YOU RESPOND TO -- YOU

10:34AM 5    FORWARD THIS TO MR. BALWANI ON OCTOBER 1ST.

10:34AM 6         DO YOU SEE THAT?

10:34AM 7    A.   YES.

10:34AM 8    Q.   NOW, LET'S GO TO EXHIBIT 7482.

10:34AM 9    A.   SO NOW MR. BALWANI IS AWARE OF MY REQUEST FOR THE AAP

10:34AM 10   DATA.

10:34AM 11   Q.   YES, I SEE THAT.  LET'S GO TO 7482 AND DISCUSS THAT SOME

10:35AM 12   MORE.  OKAY?

10:35AM 13   A.   I HAVE IT.

10:35AM 14   Q.   DO YOU HAVE THAT IN FRONT OF YOU?

10:35AM 15   A.   YES.

10:35AM 16   Q.   AND DO YOU SEE THAT AS AN EMAIL BETWEEN YOU AND

10:35AM 17   MR. BALWANI?

10:35AM 18   A.   YES.

10:35AM 19   Q.   ON OCTOBER 9TH, 2014?

10:35AM 20   A.   YES.

10:35AM 21   Q.   AND IF YOU GO DOWN THE EMAIL CHAIN, THERE ARE A FEW OTHERS

10:35AM 22   ON THE EMAIL CHAIN AS WELL, CHRISTIAN HOLMES.

10:35AM 23        DO YOU SEE THAT?

10:36AM 24   A.   YES.

10:36AM 25   Q.   IF I COULD PAUSE HERE FOR A SECOND.  AND I WANT TO GO BACK

| | | |
|---|---|---|
| 10:36AM | 1 | TO 12793.  OKAY. |
| 10:36AM | 2 | IF WE GO TO THE BOTTOM THERE -- WE'LL PUT IT UP ON THE |
| 10:36AM | 3 | SCREEN FOR YOU.  IT WILL BE A QUICK ONE. |
| 10:36AM | 4 | IF WE GO TO THE BOTTOM THERE, YOU HAD RAISED THIS ISSUE -- |
| 10:36AM | 5 | YOU HAD GIVEN THE REPORT ON DR. PALMER; RIGHT? |
| 10:36AM | 6 | A.  YES. |
| 10:36AM | 7 | Q.  AND THIS IS OCTOBER 1ST, 2014; RIGHT? |
| 10:36AM | 8 | A.  YES. |
| 10:36AM | 9 | Q.  AND IF YOU GO TO THE NEXT PAGE THERE ARE SOME QUESTIONS |
| 10:37AM | 10 | THAT ARE RAISED THERE THAT NEEDED TO BE LOOKED INTO; CORRECT? |
| 10:37AM | 11 | A.  YES.  THE FIRST TESTOSTERONE VALUES OF 280 AND 309 WERE |
| 10:37AM | 12 | VERY, VERY DIFFERENT FROM TESTOSTERONE THAT WAS TESTED A FEW |
| 10:37AM | 13 | DAYS LATER, WHICH WAS 705. |
| 10:37AM | 14 | Q.  AND SO OCTOBER 1ST, THAT NEEDED TO BE LOOKED INTO; RIGHT? |
| 10:37AM | 15 | A.  YES. |
| 10:37AM | 16 | Q.  AND LET'S GO BACK TO 7482, WHICH I CAN'T REMEMBER IF I |
| 10:37AM | 17 | MOVED IT INTO EVIDENCE. |
| 10:37AM | 18 | I WOULD MOVE IT INTO EVIDENCE IF I HAVEN'T. |
| 10:37AM | 19 | MR. BOSTIC:  NO OBJECTION. |
| 10:37AM | 20 | THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED. |
| 10:37AM | 21 | (DEFENDANT'S EXHIBIT 7482 WAS RECEIVED IN EVIDENCE.) |
| 10:37AM | 22 | BY MR. WADE: |
| 10:37AM | 23 | Q.  IF WE CAN GO TO THE BACK PAGE AND THE BOTTOM EMAIL.  IT'S |
| 10:37AM | 24 | SPLIT ACROSS TWO PAGES. |
| 10:38AM | 25 | DO YOU SEE THIS IS ABOUT DR. PALMER AGAIN? |

10:38AM   1              DO YOU SEE THAT?

10:38AM   2       A.   7482?

10:38AM   3       Q.   YEAH, SORRY.  I'LL GIVE YOU A SECOND TO FIND IT.  7482?

10:38AM   4       A.   I HAVE IT.

10:38AM   5       Q.   OKAY.  AND THIS IS ABOUT DR. PALMER AGAIN.

10:38AM   6              DO YOU SEE THAT?

10:38AM   7       A.   YES.

10:38AM   8       Q.   AND THIS IS OCTOBER 9TH?

10:38AM   9       A.   YES.

10:38AM  10       Q.   DO YOU SEE THAT?

10:38AM  11       A.   YES.

10:38AM  12       Q.   AND AMELIA AGUIRRE?

10:38AM  13       A.   AGUIRRE.

10:38AM  14       Q.   SHE'S EMAILING YOU.

10:38AM  15              AND IF WE GO OVER THE TEXT OF THE EMAIL IT SAYS, "WERE YOU

10:38AM  16       SPEAKING WITH A DR. A. PALMER REGARDING FREE AND TOTAL

10:38AM  17       TESTOSTERONE?  HE SAID HE WAS WAITING FOR A CALLBACK ABOUT A

10:38AM  18       PATIENT."

10:38AM  19              DO YOU SEE THAT?

10:38AM  20       A.   DON'T MENTION THE NAME.

10:38AM  21                  THE COURT:  STRIKE THAT.

10:39AM  22                  MR. WADE:  CAN WE REMOVE THAT?  MY APOLOGIES.

10:39AM  23                  THE COURT:  THAT'S STRICKEN FROM THE RECORD.

10:39AM  24       BY MR. WADE:

10:39AM  25       Q.   THANK YOU, DOCTOR.  MY APOLOGIES.

10:39AM  1          DO YOU SEE THERE'S REFERENCE TO A PARTICULAR PATIENT

10:39AM  2     THERE?

10:39AM  3     A.   YES.

10:39AM  4     Q.   AND THAT'S THE SAME PATIENT THAT WAS DISCUSSED IN THE

10:39AM  5     PRIOR EMAIL; CORRECT?

10:39AM  6     A.   YES.

10:39AM  7     Q.   OKAY.  AND THERE'S INFORMATION PROVIDED ON HOW TO REACH

10:39AM  8     THE DOCTOR.

10:39AM  9          DO YOU SEE THAT?

10:39AM  10    A.   YES.

10:39AM  11    Q.   AND IT SAYS, "HE'S HOPING TO GET A CALL BACK TODAY."

10:39AM  12         DO YOU SEE THAT?

10:39AM  13    A.   YES, YES.

10:39AM  14    Q.   OKAY.  AND THEN LET'S LOOK -- NOW, HERE AGAIN, THIS HAD

10:39AM  15    BEEN A WEEK SINCE YOU LAST TALKED TO THE DOCTOR; RIGHT?

10:39AM  16    A.   MY RECOLLECTION IS THAT I DID TALK TO DR. PALMER ABOUT

10:39AM  17    THIS.

10:39AM  18    Q.   YOU TALKED TO THE DOCTOR ON OCTOBER 1ST.  WE SAW THAT.

10:39AM  19         DO YOU REMEMBER?

10:39AM  20    A.   YES.

10:39AM  21    Q.   AND THEN THIS IS OCTOBER 9TH AND THEY'RE SAYING --

10:39AM  22    A.   DO YOU WANT US TO TALK AGAIN?

10:40AM  23    Q.   HE'S WAITING FOR A CALL BACK FROM YOU.

10:40AM  24         DO YOU SEE THAT?

10:40AM  25    A.   YES, YES, I SEE THAT.

10:40AM  1    Q.   OKAY.  AND SO THIS IS ANOTHER INSTANCE IN THIS PERIOD IN

10:40AM  2    EARLY OCTOBER WHERE ABOUT A WEEK HAD PAST SINCE YOU HAD

10:40AM  3    RETURNED THE DOCTOR'S CALL; RIGHT?

10:40AM  4    A.   I HAD ALREADY SPOKEN TO HIM ON ONE OCCASION AND MY -- IT

10:40AM  5    WAS NOT MY UNDERSTANDING THAT HE WANTED ANOTHER PHONE CALL FROM

10:40AM  6    ME.

10:40AM  7    Q.   OKAY.  WELL, LET'S LOOK, LET'S LOOK UP -- AND IT'S

10:40AM  8    IMPORTANT FOR YOU TO HANDLE THOSE CALLS WITH THE DOCTORS;

10:40AM  9    RIGHT?

10:40AM  10   A.   YES.

10:40AM  11   Q.   BECAUSE THAT'S MEDICAL INFORMATION AND YOU'RE THE ONE WHO

10:40AM  12   IS QUALIFIED TO DO THAT; RIGHT?

10:40AM  13   A.   YES.

10:40AM  14   Q.   OKAY.  LET'S LOOK UP THE CHAIN.

10:40AM  15   A.   I SEE IT ON THE SCREEN.

10:40AM  16   Q.   YEAH.  OKAY.  HERE YOU SAY LET CHRISTIAN HANDLE THIS?

10:41AM  17   A.   YES.

10:41AM  18   Q.   AND WHICH IS EXACTLY THE THING THAT YOU HAD BEEN SAYING ON

10:41AM  19   YOUR DIRECT EXAMINATION SHOULDN'T HAPPEN; CORRECT?

10:41AM  20   A.   I, I CAN EXPLAIN.

10:41AM  21        I DIDN'T FEEL I HAD A GOOD EXPLANATION FOR THE DISCREPANT

10:41AM  22   TESTOSTERONE VALUES, AND I REALLY DIDN'T KNOW WHAT I COULD TELL

10:41AM  23   THE PHYSICIAN MORE THAN I TOLD HIM ON THE FIRST PHONE CALL.

10:41AM  24   Q.   WELL, DON'T YOU THINK, DON'T YOU THINK UNDER YOUR

10:41AM  25   OBLIGATIONS UNDER CLIA THAT IF A DOCTOR CALLS YOU AND ASKS FOR

10:41AM  1    A CALL BACK TODAY ON A PATIENT MEDICAL ISSUE, THAT YOU AT LEAST

10:41AM  2    OWE THEM A RETURN PHONE CALL?

10:41AM  3    A.   YES.

10:41AM  4    Q.   OKAY.  AND WAS THERE SOMETHING HAPPENING IN THIS PERIOD,

10:41AM  5    DR. ROSENDORFF, THAT WAS -- APART FROM YOUR THING AT THERANOS

10:41AM  6    THAT WAS MAKING IT DIFFICULT FOR YOU TO GET BACK TO DOCTORS

10:41AM  7    BECAUSE THERE'S A COUPLE OF THESE THAT HAVE COME UP IN THIS

10:41AM  8    PERIOD?

10:41AM  9    A.   I WAS BECOMING FRUSTRATED AT MY INABILITY TO EXPLAIN

10:41AM  10   DISCREPANT RESULTS.  IT CULMINATED ON ONE OR TWO OCCASIONS WITH

10:41AM  11   MY REFUSAL TO JUSTIFY THE DISCREPANT RESULTS TO PHYSICIANS.

10:42AM  12   Q.   RIGHT, BUT YOU'RE --

10:42AM  13   A.   GO AHEAD.

10:42AM  14   Q.   BUT YOU'RE JUST BEING ASKED TO CALL THE DOCTOR AND HAVE A

10:42AM  15   CONVERSATION HERE; RIGHT?

10:42AM  16   A.   YES.  THE DOCTOR IS WANTING ME TO EXPLAIN WHY THE RESULTS

10:42AM  17   ARE DISCREPANT.

10:42AM  18   Q.   WELL, THE DOCTOR IS ASKING FOR A CONVERSATION ABOUT A

10:42AM  19   MEDICAL ISSUE; RIGHT?

10:42AM  20   A.   LABORATORY ISSUE, YES.

10:42AM  21   Q.   YEAH.  RELATING TO A PATIENT?

10:42AM  22   A.   YES.

10:42AM  23   Q.   AND I BELIEVE IT'S YOUR TESTIMONY THAT THAT IS SOMETHING

10:42AM  24   THAT YOU NEED TO BE THE PERSON TO HANDLE; CORRECT?

10:42AM  25   A.   CORRECT.

10:42AM   1   Q.   OKAY.  BUT YOU'RE NOT DOING THAT, ARE YOU, SIR?

10:42AM   2   A.   I CAN'T ANSWER YES OR NO.

10:42AM   3   Q.   THIS IS FORWARDED TO MR. HOLMES.

10:42AM   4        DO YOU SEE THAT IF WE GO UP THE CHAIN?

10:42AM   5   A.   YES.

10:42AM   6   Q.   OKAY.  AND HE'S ASKED TO CALL DR. PALMER.

10:42AM   7        DO YOU SEE THAT?

10:42AM   8   A.   YES.

10:42AM   9   Q.   AND BECAUSE THAT'S WHAT YOU ASKED TO HAVE HAPPEN; RIGHT?

10:43AM  10   A.   YES.

10:43AM  11   Q.   OKAY.

10:43AM  12   A.   AS I MENTIONED, I HAD ALREADY SPOKEN TO DR. PALMER ON THIS

10:43AM  13   ISSUE ON A PREVIOUS OCCASION.

10:43AM  14   Q.   RIGHT.  AND YOU UNDERSTOOD FROM THE CUSTOMER SERVICE

10:43AM  15   PERSON THAT THAT DOCTOR WANTED TO TALK TO YOU AGAIN THAT

10:43AM  16   AFTERNOON?

10:43AM  17   A.   YES.

10:43AM  18   Q.   OKAY.  AND IF WE CAN TAKE THE REST OF THAT PAGE AND

10:43AM  19   JUST --

10:43AM  20        MR. HOLMES SENDS THIS TO MAX FOSQUE AND SUNNY BALWANI.

10:43AM  21        DO YOU SEE THAT?

10:43AM  22   A.   YES.

10:43AM  23   Q.   AND MR. BALWANI RESPONDS?  IF WE GO TO THE FIRST PAGE.

10:43AM  24        DO YOU SEE THAT?

10:43AM  25   A.   YES.

10:43AM  1    Q.   AND THIS IS HIS RESPONSE?

10:43AM  2    A.   YES.

10:43AM  3    Q.   OKAY.  AND IF WE JUST ZOOM OUT FOR A SECOND, IT'S A PRETTY

10:43AM  4    DETAILED RESPONSE, ISN'T IT?

10:43AM  5    A.   IT'S A LONG RESPONSE.

10:43AM  6    Q.   OKAY.  AND LET'S LOOK AT THAT, OKAY?

10:44AM  7    A.   YES.

10:44AM  8    Q.   IN THE FIRST PARAGRAPH HE ADDRESSES ISSUES THAT ARE

10:44AM  9    SPECIFIC TO THE QUESTION FROM THE DOCTOR.

10:44AM  10        DO YOU SEE THAT?

10:44AM  11   A.   YES.

10:44AM  12   Q.   OKAY.  AND HE PROVIDES INFORMATION RELATING TO THAT

10:44AM  13   PATIENT; RIGHT?

10:44AM  14   A.   YES.

10:44AM  15   Q.   AND THEN IF YOU SEE -- AND WE TALKED ABOUT WHEN THERE'S A

10:44AM  16   PATIENT INQUIRY, SOMETIMES INFORMATION WOULD BE GATHERED AND IT

10:44AM  17   WOULD BE PROVIDED SO IT COULD BE CONSIDERED AND ANALYZED IN

10:44AM  18   CONNECTION WITH RESPONDING TO THE DOCTOR; RIGHT?

10:44AM  19   A.   YES.

10:44AM  20   Q.   OKAY.  AND IN THE SECOND PARAGRAPH HE ADDRESSES THE ISSUE

10:44AM  21   THAT YOU HAD RAISED IN THE OTHER EMAIL ABOUT AAP?

10:44AM  22   A.   YES.

10:44AM  23   Q.   RIGHT?

10:44AM  24   A.   YES.

10:44AM  25   Q.   OKAY.  AND HE NOTES, "WE ARE DOING MONTHLY (MOST CASES

10:44AM   1       WEEKLY) IQP (AAP) FOR EACH ASSAY ON EDISONS AND OTHER DEVICES

10:45AM   2       DOWNSTAIRS."

10:45AM   3           DO YOU SEE THAT?

10:45AM   4       A.   I SEE THAT.

10:45AM   5       Q.   OKAY.

10:45AM   6       A.   I DON'T AGREE WITH IT, BUT I SEE IT.

10:45AM   7       Q.   AND HE SAYS, "ALL OF THIS DATA IS 100 PERCENT ON THE

10:45AM   8       FOLDERS ACCESSIBLE TO YOU AND HAD BEEN AGREED UPON OVER

10:45AM   9       6 MONTHS AGO."

10:45AM  10           DO YOU SEE THAT?

10:45AM  11       A.   YES.

10:45AM  12       Q.   AND HE SAYS, "WE SHOULD TAKE THIS DATA AND FORMALIZE IT

10:45AM  13       FOR THE REVIEW AND SIGN OFF."

10:45AM  14           DO YOU SEE THAT?

10:45AM  15       A.   YES.

10:45AM  16       Q.   AND HE SAYS, "LANGLY IS NOT THE RIGHT PERSON FOR THIS AS

10:45AM  17       HE IS BARELY KEEPING UP WITH OTHER WORK."

10:45AM  18           DO YOU SEE THAT?

10:45AM  19       A.   YES.

10:45AM  20       Q.   AND THEN HE SAYS, "AS YOU MAY RECALL, WE ARE DOING

10:45AM  21       EQUIVALENT AAP ON A WEEKLY BASES."

10:45AM  22           DO YOU SEE THAT?

10:45AM  23       A.   YES.

10:45AM  24       Q.   AND THEN IF YOU GO DOWN A LITTLE BIT HE TALKS ABOUT THE

10:46AM  25       POWERPOINT.

10:46AM  1        DO YOU SEE THAT?

10:46AM  2    A.  YES.

10:46AM  3    Q.  AND HE SAYS, "YOU AND MARK HAD CREATED A POWERPOINT FOR

10:46AM  4    CLIA TEAM AND YOU GUYS ACTUALLY HAD POINTED OUT THAT DOING THIS

10:46AM  5    WEEKLY JUST MAY BE TOO EXCESSIVE."

10:46AM  6        DO YOU SEE THAT?

10:46AM  7    A.  YES.

10:46AM  8    Q.  AND THAT'S THAT DR. PANDORI EMAIL THAT WE JUST TALKED

10:46AM  9    ABOUT, DR. PANDORI SAID IT WAS A LITTLE EXCESSIVE BECAUSE IT

10:46AM  10    WOULD INTERFERE WITH THE OPERATIONS.

10:46AM  11        DO YOU RECALL THAT?

10:46AM  12    A.  YES.

10:46AM  13    Q.  AND THAT'S WHAT HE'S REFERRING TO RIGHT HERE SIX MONTHS

10:46AM  14    LATER; RIGHT?

10:46AM  15    A.  YES.

10:46AM  16    Q.  OKAY.  AND THEN THE LAST SENTENCE HE SAYS WE'RE ONLY

10:46AM  17    REQUIRED TO DO THESE AAP'S ONCE PER FOUR MONTHS.

10:46AM  18        DO YOU SEE THAT?

10:46AM  19    A.  YES.

10:46AM  20    Q.  AND IT WAS ACTUALLY ONCE PER SIX MONTHS PER THE POLICY;

10:46AM  21    RIGHT?

10:46AM  22    A.  YES.

10:46AM  23    Q.  OKAY.  LET'S GO TO THE NEXT PARAGRAPH.  THIS PARAGRAPH

10:47AM  24    TALKS ABOUT SOMETHING YOU KNOW WELL.

10:47AM  25        IT SAYS IN ADDITION WE HAVE SEPARATE DAILY QC; RIGHT?

10:47AM   1    A.   YES.

10:47AM   2    Q.   AND THAT ALL OF THE ASSAYS AND ALL DEVICES FOR CLIA AND

10:47AM   3    THAT IS ALREADY IN PLACE FOR EACH DEVICE AND ASSAY.

10:47AM   4         DO YOU SEE THAT?

10:47AM   5    A.   YES.

10:47AM   6    Q.   AND YOU AGREED WITH THAT; RIGHT?  THAT WAS BEING DONE?

10:47AM   7    A.   YES.

10:47AM   8    Q.   OKAY.  LET'S GO TO THE NEXT PARAGRAPH.

10:47AM   9         NOW, HERE HE NOTES THAT A GROUP OF THEM LOOK AT THIS DATA

10:47AM   10   ON ALMOST A DAILY BASIS.

10:47AM   11        DO YOU SEE THAT?

10:47AM   12   A.   YES.

10:47AM   13   Q.   AND WHILE IT'S NOT NEEDED FOR CLIA, IT'S ACTUALLY -- DOING

10:47AM   14   THAT REGULAR TESTING OF ACCURACY WAS HELPFUL FOR R&D HE SAYS

10:47AM   15   HERE; RIGHT?

10:47AM   16   A.   I DON'T SEE THAT.

10:48AM   17   Q.   OKAY.  LET ME READ THE SECOND SENTENCE.

10:48AM   18        DO YOU SEE WHERE HE SAYS THEY'RE LOOKING AT IT ALMOST

10:48AM   19   DAILY?  DO YOU SEE THAT?

10:48AM   20   A.   YES.

10:48AM   21   Q.   AND "HE" IS MR. BALWANI?

10:48AM   22   A.   YES.

10:48AM   23   Q.   AND THEN YOU HAVE DR. PANGARKAR?

10:48AM   24   A.   YES.

10:48AM   25   Q.   DR. YOUNG?

10:48AM  1    A.   YES.

10:48AM  2    Q.   DR. DOSHI?

10:48AM  3    A.   YES.

10:48AM  4    Q.   AND THEY'RE LOOKING AT THAT IQP APP DATA ON ALMOST A DAILY

10:48AM  5    BASIS; IS THAT RIGHT?

10:48AM  6    A.   YES.

10:48AM  7    Q.   OKAY.  AND THEN IT SAYS, THIS IS NOT NEEDED FOR CLIA

10:48AM  8    PURPOSES.

10:48AM  9        THAT'S TRUE, RIGHT, YOU DIDN'T NEED DAILY AAP FOR CLIA?

10:48AM  10   A.   NOT DAILY.  YOU NEED A PROFICIENCY PROGRAM.

10:48AM  11   Q.   RIGHT.

10:48AM  12   A.   YEAH.

10:48AM  13   Q.   BUT HE SAYS FOR PRODUCT DEVELOPMENT AND PRODUCT

10:48AM  14   IMPROVEMENT PURPOSES IT'S USEFUL; RIGHT?

10:48AM  15   A.   I SEE.

10:48AM  16   Q.   AND THEN HE SAYS, "I WOULD RECOMMEND IF YOU WANT TO GET

10:49AM  17   WEEKLY BRIEFINGS ON THIS, YOU SET UP TIME WITH NISHIT AND

10:49AM  18   CHINMAY ON THE 13 ELISA ASSAYS, CBC, AND ADVIA ASSAYS, AND I

10:49AM  19   KNOW THEY WILL BE VERY HAPPY IN WALKING YOU THRU THIS."

10:49AM  20        DO YOU SEE THIS?

10:49AM  21   A.   THOSE FOLKS WERE NOT IMPLEMENTING THE AAP AS I SET OUT IN

10:49AM  22   MY SOP FOR THOSE 13 ASSAYS.

10:49AM  23        I'M NOT CLEAR ON EXACTLY WHAT THEY WERE DOING AND THE DATA

10:49AM  24   WAS NOT ACCESSIBLE IN THE DRIVE AS SUNNY IS ASSERTING.

10:49AM  25   Q.   WELL, HE'S SAYING RIGHT HERE IN THIS EMAIL, IF YOU WANT

10:49AM  1    IT, YOU CAN GET A WEEKLY BRIEFING ON IT; CORRECT?

10:49AM  2    A.   YES.

10:49AM  3    Q.   AND THAT'S WHAT HE'S SAYING RIGHT THERE?

10:49AM  4    A.   YES.

10:49AM  5    Q.   AND HE'S SAYING WHAT IS HAPPENING; RIGHT?

10:49AM  6    A.   YES.

10:49AM  7    Q.   AND DID YOU GO AND GET THAT BRIEFING?

10:49AM  8    A.   I WENT INTO THE FILE TO TRY TO PULL UP THE AAP DATA.

10:49AM  9    Q.   OKAY.

10:50AM  10   A.   IT WAS HARDLY INCOMPLETE.

10:50AM  11   Q.   OKAY.  DID YOU TALK TO THESE FOLKS ABOUT WHAT YOU WERE

10:50AM  12   DOING?

10:50AM  13   A.   I SPOKE TO CHINMAY ABOUT AAP FOR CBC'S.

10:50AM  14   Q.   OKAY.  LET'S CONTINUE WITH THIS EMAIL.

10:50AM  15       DID YOU GO -- IN RESPONSE TO THIS SUGGESTION FROM

10:50AM  16   MR. BALWANI, IS IT YOUR TESTIMONY THAT IN OCTOBER IN 2014 YOU

10:50AM  17   ACTUALLY WENT AND HAD MEETINGS ABOUT THIS?

10:50AM  18   A.   I DON'T RECALL.

10:50AM  19   Q.   OKAY.  AND IF YOU LOOK AT THE BOTTOM, NUMBER 6, IT SAYS,

10:50AM  20   "DESPITE ALL OF OUR BEST EFFORTS, THERE WILL BE RESULTS THAT

10:50AM  21   ARE UNEXPECTED."

10:50AM  22       NOW, YOU WOULD AGREE WITH THAT; RIGHT?

10:50AM  23   A.   YES.

10:50AM  24   Q.   AND NO LAB IS PERFECT; RIGHT?

10:50AM  25   A.   YES.

10:50AM   1    Q.   EVERY LAB MAKES SOME ERRORS?

10:50AM   2    A.   SURE.

10:50AM   3    Q.   THE -- HOWEVER, IF THERE ARE ANY DISCREPANCIES IN RESULTS,

10:51AM   4    THE BEST IS TO INVESTIGATE, WHICH IS WHAT WE ALWAYS DO."

10:51AM   5         DO YOU SEE THAT?

10:51AM   6    A.   YES.

10:51AM   7    Q.   OKAY.  AND THEN HE SAYS, "IN THAT REGARD, THE TEAM WOULD

10:51AM   8    APPRECIATE YOUR INVOLVEMENT IN THAT PROCESS BUT YOU NEED TO

10:51AM   9    BRING UP THE RIGHT ISSUES TO THE RIGHT PEOPLE."

10:51AM   10        RIGHT?

10:51AM   11   A.   YES.

10:51AM   12   Q.   HE SAYS, "THE ATTACHED EMAIL," WHICH WAS THE EMAIL, THE

10:51AM   13   OCTOBER EMAIL WHERE YOU RAISED THIS ISSUE WITH THE CUSTOMER

10:51AM   14   SERVICE REPRESENTATIVE AND MR. HOLMES --

10:51AM   15   A.   YES.

10:51AM   16   Q.   -- HE DIDN'T THINK THAT WAS APPROPRIATE, DID HE?

10:51AM   17   A.   I DID NOT ADDRESS THAT REQUEST TO THE RIGHT PEOPLE TO

10:51AM   18   SOLVE THAT PROBLEM.

10:51AM   19   Q.   OKAY.  SO YOU AGREE WITH HIM THAT THAT WAS NOT ADDRESSED

10:51AM   20   TO THE RIGHT PEOPLE?

10:51AM   21   A.   CORRECT.

10:51AM   22   Q.   OKAY.

10:51AM   23   A.   I THINK THE PURPOSE OF MY REQUEST WAS TO MAKE CHRISTIAN

10:51AM   24   AWARE THAT MY REVIEW OF THE AAP WAS NOT BEING PROVIDED TO ME

10:51AM   25   AND NOT BEING DONE.  THAT -- YOU KNOW, ONE PROBLEM AND THE ROOT

10:52AM  1    CAUSE OF THE INVESTIGATION WAS THAT THE AAP WAS INCOMPLETE

10:52AM  2    ESSENTIALLY.

10:52AM  3    Q.   ALL RIGHT.  BUT YOU AGREE WITH MR. BALWANI THAT THE PLACE

10:52AM  4    TO RAISE ANY CONCERNS THAT YOU HAVE WITH THE AAP IS NOT WITH A

10:52AM  5    CALL SERVICE REPRESENTATIVE; RIGHT?

10:52AM  6    A.   CORRECT.

10:52AM  7    Q.   BECAUSE THEY HAVE NO CONTROL OR ABILITY TO DEAL WITH THAT

10:52AM  8    AT ALL; RIGHT?

10:52AM  9    A.   CORRECT.

10:52AM  10   Q.   DO YOU RECALL -- THIS EMAIL WAS SENT ON OCTOBER 9TH, 2014.

10:52AM  11        DO YOU SEE THAT?

10:52AM  12   A.   YES.

10:52AM  13   Q.   AND IF OUR GREENWICH MEAN TIME CALCULATOR IS RIGHT, THAT

10:53AM  14   IS PROBABLY SOME POINT MIDAFTERNOON, SEVEN OR EIGHT HOURS, OR

10:53AM  15   MAYBE IT'S 9:00 P.M.?

10:53AM  16   A.   I DON'T KNOW.

10:53AM  17   Q.   OKAY.  YOU DON'T KNOW.  BUT IT'S ON OCTOBER 9TH, 2014?

10:53AM  18   A.   YES.

10:53AM  19   Q.   DO YOU SEE THAT?

10:53AM  20   A.   YES.

10:53AM  21   Q.   AND IN RESPONSE TO YOUR CONCERNS, A MEETING WAS SCHEDULED

10:53AM  22   TO DISCUSS AAP; CORRECT?

10:53AM  23   A.   YES.

10:53AM  24   Q.   AND LET'S GO TO 13 --

10:53AM  25   A.   THAT'S BECAUSE IT WASN'T BEING IMPLEMENTED.

10:53AM  1    Q.   LET'S GO TO 7494.

10:54AM  2    A.   I HAVE THAT.

10:54AM  3    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

10:54AM  4         AND DO YOU SEE THAT AS AN EMAIL AND A MEETING INVITE

10:54AM  5    RELATING TO THAT MEETING AND IT ATTACHES ALSO A DRAFT POLICY?

10:54AM  6         DO YOU SEE THAT?

10:54AM  7    A.   YES.

10:54AM  8              MR. WADE:  MOVE THE ADMISSION OF 7494.

10:54AM  9              MR. BOSTIC:  NO OBJECTION.

10:54AM  10             THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

10:54AM  11        (DEFENDANT'S EXHIBIT 7494 WAS RECEIVED IN EVIDENCE.)

10:54AM  12   BY MR. WADE:

10:54AM  13   Q.   FOR NOW I JUST WANT TO DRAW YOUR ATTENTION TO THE BOTTOM

10:54AM  14   OF THIS DOCUMENT.

10:54AM  15        DO YOU SEE THAT THIS IS A, THIS IS A MEETING REQUEST FROM

10:54AM  16   MR. BALWANI ON THURSDAY, OCTOBER 9TH, AT 5:25 P.M.

10:54AM  17        OKAY.

10:54AM  18   A.   YES.

10:54AM  19   Q.   AND SO IF IT'S GREENWICH MEAN TIME IN THAT PRIOR EMAIL,

10:54AM  20   IT'S JUST A COUPLE HOURS AFTER HE SENT YOU THAT PRIOR EMAIL;

10:54AM  21   RIGHT?

10:54AM  22   A.   OKAY.

10:54AM  23   Q.   AND DO YOU SEE THAT HE INCLUDES A BIG GROUP OF PEOPLE ON

10:54AM  24   IQP/AAP DECISIONS.

10:55AM  25        DO YOU SEE THAT?

| | | |
|---|---|---|
| 10:55AM | 1 | A.   YES. |
| 10:55AM | 2 | Q.   AND THE PLAN FORWARD? |
| 10:55AM | 3 | A.   YES. |
| 10:55AM | 4 | Q.   OKAY.  AND HE PROPOSES TO ME TUESDAY, OCTOBER 14TH? |
| 10:55AM | 5 | A.   YES. |
| 10:55AM | 6 | Q.   OKAY.  NOW, DO YOU RECALL INITIALLY -- AND HE'S SENDING |
| 10:55AM | 7 | YOU THIS INITIALLY, LET'S SCHEDULE A MEETING; RIGHT? |
| 10:55AM | 8 | A.   YES. |
| 10:55AM | 9 | Q.   WITH THE TOP PEOPLE IN THE COMPANY? |
| 10:55AM | 10 | A.   YES. |
| 10:55AM | 11 | Q.   OKAY.  LET'S GO TO EXHIBIT 13923. |
| 10:55AM | 12 | A.   WHICH BINDER IS THAT IN? |
| 10:55AM | 13 | Q.   I BELIEVE IT SHOULD BE IN THE BACK OF YOUR SECOND BINDER. |
| 10:56AM | 14 | A.   139? |
| 10:56AM | 15 | Q.   13923? |
| 10:56AM | 16 | A.   IT IS NOT THERE. |
| 10:56AM | 17 | Q.   I'M SORRY? |
| 10:56AM | 18 | A.   IT IS NOT THERE.  I'M SORRY. |
| 10:56AM | 19 | MS. TREFZ:  THE VERY BACK. |
| 10:56AM | 20 | MR. WADE:  MAY I APPROACH, YOUR HONOR? |
| 10:56AM | 21 | THE COURT:  YES. |
| 10:56AM | 22 | BY MR. WADE: |
| 10:56AM | 23 | Q.   DO YOU HAVE 13923 IN FRONT OF YOU, DR. ROSENDORFF? |
| 10:56AM | 24 | A.   YES, I DO. |
| 10:56AM | 25 | Q.   AND DO YOU RECOGNIZE THIS TO BE TWO DIFFERENT CALENDAR |

ROSENDORFF CROSS BY MR. WADE (RES.)

10:56AM   1    ENTRIES RELATING TO THE IQP AAP DECISIONS AND PLAN FORWARD?  DO

10:57AM   2    YOU SEE THAT?

10:57AM   3    A.   YES.

10:57AM   4    Q.   AND DO YOU SEE YOU'RE AN ADDRESSEE?

10:57AM   5    A.   YES.

10:57AM   6         MR. WADE:  I MOVE THE ADMISSION OF 13923.

10:57AM   7         MR. BOSTIC:  NO OBJECTION.

10:57AM   8         THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:57AM   9         (DEFENDANT'S EXHIBIT 13923 WAS RECEIVED IN EVIDENCE.)

10:57AM   10   BY MR. WADE:

10:57AM   11   Q.   NOW, DO YOU SEE THIS IS INITIALLY SCHEDULED FOR FRIDAY,

10:57AM   12   10/10/2014?

10:57AM   13        DO YOU SEE THAT?

10:57AM   14   A.   YES.

10:57AM   15   Q.   AND THAT WAS THE VERY NEXT DAY AFTER THAT EMAIL WAS SENT

10:57AM   16   FROM MR. BALWANI; CORRECT?

10:57AM   17   A.   CORRECT.

10:57AM   18   Q.   OKAY.  AND LET'S GO TO THE NEXT PAGE.

10:57AM   19        AND IT WAS RESCHEDULED SEVERAL DAYS LATER AFTER YOUR

10:57AM   20   REQUEST; RIGHT?

10:57AM   21   A.   YES.

10:57AM   22   Q.   AND THE ENTIRE LEADERSHIP OF THE COMPANY WAS WILLING TO

10:58AM   23   MEET WITH YOU THE NEXT DAY; RIGHT?

10:58AM   24   A.   YES.

10:58AM   25   Q.   AND -- BUT YOU WERE ASKING FOR IT TO BE DELAYED?

10:58AM 1    A.   YES.

10:58AM 2    Q.   AND DO YOU KNOW WHY?

10:58AM 3    A.   I DO NOT RECALL.

10:58AM 4    Q.   LET'S GO BACK TO 7494 NOW IF WE COULD.

10:58AM 5         NOW, DO YOU SEE THE MEETING WHICH WAS MOVED TO

10:58AM 6    OCTOBER 14TH, 2014?  THERE WAS SOME WORK DONE IN ADVANCE OF

10:58AM 7    THAT; CORRECT?

10:58AM 8    A.   I'M AT 7494, AND I'M LOOKING AT AN EMAIL FROM DANIEL TO A

10:58AM 9    BUNCH OF FOLKS.

10:58AM 10   Q.   AND DO YOU SEE THAT IN ADVANCE OF THAT OCTOBER 14TH

10:58AM 11   MEETING, DR. YOUNG SENT A DRAFT POLICY THAT HAD PROPOSED

10:59AM 12   UPDATES FOR AAP.

10:59AM 13        DO YOU SEE THAT?

10:59AM 14   A.   YES.

10:59AM 15   Q.   AND HE SENT THAT AROUND TO THE GROUP IN ADVANCE OF THE

10:59AM 16   MEETING; CORRECT?

10:59AM 17   A.   YES.

10:59AM 18   Q.   AND YOU RECEIVED THAT?

10:59AM 19   A.   YES.

10:59AM 20   Q.   ALL RIGHT.  NOW --

10:59AM 21   A.   THIS POLICY REFERS TO THE ELISA ASSAYS.

10:59AM 22   Q.   RIGHT.  AND THERE WERE, THERE WERE -- IN FACT, HE SAYS --

10:59AM 23   DO YOU SEE THE BOTTOM THERE?  HE SAYS, "THIS PROTOCOL WAS

10:59AM 24   WRITTEN FOR ELISA ASSAYS AND IS CURRENTLY BEING SIMILARLY

10:59AM 25   EXTENDED TO CYTOMETRY AND THEN TO GC."

10:59AM  1          DO YOU SEE THAT?

10:59AM  2   A.   YES.

10:59AM  3   Q.   AND GC IS GENERAL CHEMISTRY?

10:59AM  4   A.   YES.

10:59AM  5   Q.   AND IT'S ACTUALLY NOT DR. YOUNG'S RESPONSIBILITY TO DRAFT

10:59AM  6   THE POLICY; RIGHT?

10:59AM  7   A.   YES.

10:59AM  8   Q.   IT'S YOURS?

10:59AM  9   A.   YES.

10:59AM  10  Q.   OKAY.  BUT HE'S BEING HELPFUL HERE?  HE'S SENDING

10:59AM  11  LANGUAGE; RIGHT?

10:59AM  12  A.   YES.

10:59AM  13  Q.   IN ADVANCE OF THE MEETING THAT YOU'RE GOING TO HAVE WITH

11:00AM  14  THE SENIOR LEADERSHIP OF THE COMPANY ON THIS ISSUE; RIGHT?

11:00AM  15  A.   YES.

11:00AM  16  Q.   AND, IN FACT, YOU DO HAVE THAT MEETING, DON'T YOU?

11:00AM  17  A.   YES.

11:00AM  18  Q.   AND YOU HAVE THE OPPORTUNITY TO DISCUSS THIS POLICY;

11:00AM  19  RIGHT?

11:00AM  20  A.   YES.

11:00AM  21  Q.   AND DO YOU RECALL, I BELIEVE YOUR TESTIMONY IS IN ADDITION

11:00AM  22  TO THOSE PEOPLE THAT WE TALKED ABOUT, BRAD ARINGTON WAS IN THE

11:00AM  23  MEETING; RIGHT?

11:00AM  24  A.   YES, HE WAS.

11:00AM  25  Q.   AND HE WAS ONE OF THE LAWYERS WHO SPECIALIZES IN

11:00AM  1    REGULATORY ISSUES; RIGHT?

11:00AM  2    A.   YES.

11:00AM  3    Q.   OKAY.  AND WERE THERE ANY LIMITATIONS IN THAT MEETING ON

11:00AM  4    YOUR ABILITY TO SAY ANYTHING OR TO DISCUSS ANYTHING?

11:00AM  5    A.   NO.

11:00AM  6    Q.   OKAY.  NOW JUST SO I'M CLEAR, DO YOU RECALL THAT THIS

11:00AM  7    MEETING, THIS MEETING WAS THE MEETING THAT YOU DISCUSSED ON

11:00AM  8    YOUR DIRECT TESTIMONY?

11:00AM  9         DO YOU RECALL?

11:00AM  10   A.   YES.

11:00AM  11   Q.   AND YOU DISCUSSED THE MEETING WITH ALL OF THE SENIOR

11:01AM  12   LEADERSHIP IN THE COMPANY.

11:01AM  13        DO YOU RECALL THAT?

11:01AM  14   A.   YES.

11:01AM  15   Q.   AND IN YOUR TESTIMONY ON DIRECT EXAMINATION YOU THOUGHT IT

11:01AM  16   WAS IN MID 2014; RIGHT?

11:01AM  17   A.   YES.

11:01AM  18   Q.   AND DO YOU RECALL THAT?

11:01AM  19   A.   YES.

11:01AM  20   Q.   AND DO YOU RECALL THEN THE GOVERNMENT ASKED, WELL, DID

11:01AM  21   ANYTHING HAPPEN IN THOSE INTERVENING MONTHS BETWEEN MID 2014

11:01AM  22   AND WHEN YOU LEFT THE COMPANY?

11:01AM  23        DO YOU RECALL THAT?

11:01AM  24   A.   YES.

11:01AM  25   Q.   AND YOU SAID NO?

11:01AM  1    A.   YES.

11:01AM  2    Q.   RIGHT?

11:01AM  3         WELL, IN FACT, IT WAS IN MID-OCTOBER OF 2014, WAS IT NOT?

11:01AM  4    A.   UNDERSTOOD.  I READ THIS EMAIL, YES.

11:01AM  5    Q.   IS THAT CORRECT?

11:01AM  6    A.   YEAH.

11:01AM  7    Q.   AND YOU LEFT ABOUT A MONTH LATER; RIGHT?

11:01AM  8    A.   YES.

11:01AM  9         THE COURT:  ARE YOU MOVING INTO ANOTHER AREA?

11:01AM  10        MR. WADE:  I'M ALMOST DONE WITH THIS LINE,

11:01AM  11   YOUR HONOR.  I'M CONSCIOUS OF THE TIME.  AND THEN MAYBE WE CAN

11:02AM  12   TAKE A BREAK.

11:02AM  13        THE COURT:  SURE.

11:02AM  14   BY MR. WADE:

11:02AM  15   Q.   AND COMING OUT OF THAT MEETING YOU HAD SOME COMMUNICATIONS

11:02AM  16   AND FOLLOWUP ON IT; CORRECT?

11:02AM  17   A.   I BELIEVE SO.

11:02AM  18   Q.   OKAY.  LET'S GO TO EXHIBIT 12839.

11:02AM  19        I THINK IT SHOULD BE IN THE MIDDLE OF VOLUME 2?

11:03AM  20   A.   I HAVE IT.

11:03AM  21   Q.   AND THIS IS AN EMAIL FOLLOWING UP ON THAT CLIA LAB MEETING

11:03AM  22   ON OCTOBER 15TH, 2014.

11:03AM  23        DO YOU SEE THAT?

11:03AM  24   A.   YES, YES.

11:03AM  25   Q.   AND THIS IS SENT FROM -- THIS IS BETWEEN YOU AND

11:03AM  1    MR. BALWANI?

11:03AM  2    A.   YES.

11:03AM  3              MR. WADE:  MOVE THE ADMISSION OF 12839.

11:03AM  4              MR. BOSTIC:  NO OBJECTION.

11:03AM  5              THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

11:03AM  6         (DEFENDANT'S EXHIBIT 12839 WAS RECEIVED IN EVIDENCE.)

11:03AM  7              MR. WADE:  LET'S GO TO THE BOTTOM AND BLOW THAT UP.

11:03AM  8    Q.   ON THE BOTTOM MR. BALWANI SAYS, "WE HAVE A MEETING ON OUR

11:03AM  9    CALENDARS PER YOUR REQUEST."

11:03AM  10        DO YOU SEE THAT?

11:03AM  11   A.   YES.

11:03AM  12   Q.   AND THERE WAS ACTUALLY ANOTHER MEETING SCHEDULED FOLLOWING

11:03AM  13   THAT OTHER BIG MEETING; RIGHT?

11:03AM  14   A.   I DO NOT RECALL.

11:03AM  15   Q.   OKAY.  CAN YOU REASONABLY INFER THAT FROM THIS STATEMENT?

11:03AM  16   A.   I'M NOT SURE WHAT WAS GOING ON HERE.

11:03AM  17   Q.   HE SAYS HERE, "I THINK WE DISCUSSED THE POINTS YOU WANTED

11:03AM  18   TO DISCUSS YESTERDAY OR ARE THERE OTHER POINTS YOU WANTED TO

11:04AM  19   DISCUSS?  IF NOT THEN CAN I REMOVE THIS FROM THE CALENDARS."

11:04AM  20        DO YOU SEE THAT?

11:04AM  21   A.   YES.

11:04AM  22   Q.   AND SO WHAT HE'S SAYING IS THAT YOU'VE HAD A CHANCE TO

11:04AM  23   RAISE ALL OF YOUR ISSUES; IS THAT RIGHT?

11:04AM  24   A.   YES.

11:04AM  25   Q.   "WE HAVE ANOTHER MEETING ON THE CALENDAR AND DO YOU WANT

11:04AM   1    TO HAVE THAT MEETING AND RAISE SOME MORE ISSUES?"

11:04AM   2         RIGHT?

11:04AM   3         AND WHAT IS YOUR RESPONSE?  DO YOU NEED TO HAVE THAT NEXT

11:04AM   4    MEETING?

11:04AM   5    A.   I SAID, "YES AGREED.  THANK YOU."

11:04AM   6    Q.   MEANING YOU DON'T NEED TO HAVE IT; RIGHT?

11:04AM   7    A.   RIGHT.

11:04AM   8    Q.   LET'S GO TO 2099.

11:05AM   9    A.   I HAVE IT.

11:05AM   10   Q.   AND DO YOU SEE THAT?  AND DO YOU SEE THIS IS AN EMAIL

11:05AM   11   BETWEEN YOU, MR. ARINGTON, AND DR. YOUNG ON OCTOBER 16TH, 2014?

11:05AM   12   A.   YES.

11:05AM   13   Q.   AND THIS REFERS TO PROFICIENCY TESTING AND AAP; CORRECT?

11:05AM   14   A.   YES.

11:05AM   15        MR. WADE:  AND MOVE THE ADMISSION OF EXHIBIT 2099?

11:05AM   16        MR. BOSTIC:  NO OBJECTION.

11:05AM   17        THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

11:05AM   18        (GOVERNMENT'S EXHIBIT 2099 WAS RECEIVED IN EVIDENCE.)

11:05AM   19   BY MR. WADE:

11:05AM   20   Q.   NOW, THIS IS THE DAY AFTER THE MEETING WITH THE

11:05AM   21   MR. ARINGTON AND THE SENIOR LEADERSHIP; CORRECT?

11:05AM   22   A.   YES.

11:05AM   23   Q.   AND YOU'RE FOLLOWING UP ON THAT MEETING; CORRECT?

11:05AM   24   A.   CORRECT.

11:05AM   25   Q.   AND YOU SAY IN HERE AND YOU GIVE SOME DIRECTION ON WHAT

11:05AM 1    NEEDS TO BE DONE WITH CMS AND YOU, YOU SET FORTH -- IT SAYS AT

11:06AM 2    THE TOP, "I WOULD LIKE TO DE-ENROLL IN CMS REPORTING FOR THE

11:06AM 3    FOLLOWING ANALYTES BASED ON THE FACT THAT THEY ARE NO LONGER

11:06AM 4    RUN ON METHODS FOR WHICH THERE IS A PEER-GROUP."

11:06AM 5        DO YOU SEE THAT?

11:06AM 6    A.   YES.

11:06AM 7    Q.   THE LDT'S; RIGHT?

11:06AM 8    A.   YES.

11:06AM 9    Q.   AND THIS IS YOUR DECISION TO MAKE AS THE LAB DIRECTOR;

11:06AM 10   RIGHT?

11:06AM 11   A.   YES.

11:06AM 12   Q.   AND SO THE DECISION THAT YOU'RE MAKING HERE IS TO SWITCH

11:06AM 13   FROM THE OLD BIG MACHINE TEST FOR PURPOSES OF PROFICIENCY

11:06AM 14   TESTING TO AAP FOR THE EDISON DEVICES; CORRECT?

11:06AM 15   A.   I BELIEVE WHAT I SAID WAS THAT WE SHOULD STILL RUN

11:06AM 16   PROFICIENCY ON THE LARGER INSTRUMENTS BUT NOT REPORT IT BECAUSE

11:06AM 17   IT'S NO LONGER OUR PRIMARY METHOD.

11:06AM 18   Q.   RIGHT.  SO YOU'RE SAYING FOR OFFICIAL CLIA COMPLIANCE

11:06AM 19   PURPOSES --

11:06AM 20   A.   YES.

11:06AM 21   Q.   -- YOU ARE DIRECTING HERE ON OCTOBER 16TH --

11:06AM 22   A.   YES.

11:06AM 23   Q.   -- THAT YOU WANT THE EDISON AAP TO BE WHAT IS USED FOR THE

11:07AM 24   ANALYTES; RIGHT?

11:07AM 25   A.   YES.

11:07AM   1      Q.   THAT'S YOUR DIRECTION?

11:07AM   2      A.   YES.

11:07AM   3      Q.   BECAUSE THAT'S YOUR JUDGMENT UNDER THOSE REGULATIONS,

11:07AM   4      RIGHT, SIR?

11:07AM   5      A.   YES.

11:07AM   6      Q.   OKAY.  BUT YOU'RE STILL GOING TO DO THE PROFICIENCY

11:07AM   7      TESTING ON THE OTHER METHOD EVEN THOUGH YOU'RE NOT REQUIRED TO

11:07AM   8      DO IT; RIGHT?

11:07AM   9      A.   CORRECT.

11:07AM   10     Q.   BECAUSE THAT'S GOOD PRACTICE?

11:07AM   11     A.   CORRECT.

11:07AM   12     Q.   AND YOU'RE SETTING FORTH WHAT NEEDS TO BE DONE IN

11:07AM   13     OCTOBER 16TH, 2014?

11:07AM   14     A.   CORRECT.

11:07AM   15     Q.   THE DAY AFTER THAT MEETING WITH, WITH THE LEADERSHIP OF

11:07AM   16     THE COMPANY; CORRECT?

11:07AM   17     A.   YES.

11:07AM   18     Q.   AND NOW LET ME GO BACK TO 12846.

11:07AM   19          LET'S BLOW THIS UP.  IT'S AT THE BOTTOM.  IT'S UP ON THE

11:08AM   20     SCREEN.  THIS IS THE ONLY THING I'M GOING TO ASK IF YOU WANT TO

11:08AM   21     READ IT THERE.

11:08AM   22          DO YOU SEE IT?

11:08AM   23     A.   YES.

11:08AM   24     Q.   THIS IS OCTOBER 17TH, 2014; CORRECT?

11:08AM   25     A.   YES.

11:08AM 1    Q.   AND THIS IS TWO DAYS AFTER THE MEETING WITH SENIOR

11:08AM 2    LEADERSHIP; CORRECT?

11:08AM 3    A.   YES.

11:08AM 4    Q.   AND IT'S ONE DAY AFTER YOUR MEETING WITH MR. ARINGTON;

11:08AM 5    CORRECT?

11:08AM 6    A.   YES.

11:08AM 7    Q.   AND THIS IS WHERE YOU TALK ABOUT THE AAP THAT WAS

11:08AM 8    PERFORMED ON APRIL 18TH, 2014; CORRECT?

11:08AM 9    A.   YES.

11:08AM 10           MR. WADE:  THIS WOULD BE A GOOD PLACE TO BREAK,

11:08AM 11   YOUR HONOR.

11:08AM 12           THE COURT:  ALL RIGHT.  LET'S TAKE OUR MORNING

11:08AM 13   RECESS, LADIES AND GENTLEMEN.  LET'S TAKE 20 MINUTES, PLEASE,

11:08AM 14   20 MINUTES, AND WE'LL BE BACK TO FINISH OUR SESSION.

11:08AM 15        THANK YOU.

11:08AM 16        (RECESS FROM 11:08 A.M. UNTIL 11:37 A.M.)

11:37AM 17           THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES

11:37AM 18   PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

11:37AM 19        WOULD YOU LIKE TO CONTINUE?

11:37AM 20           MR. WADE:  I WOULD, YOUR HONOR.  THANK YOU.

11:37AM 21           THE COURT:  PLEASE.

11:37AM 22   BY MR. WADE:

11:37AM 23   Q.   DR. ROSENDORFF, I'D LIKE TO SWITCH TOPICS AND ASK YOU SOME

11:37AM 24   QUESTIONS ABOUT HCG.

11:37AM 25   A.   SURE.

11:37AM   1    Q.   OKAY.  IF WE COULD START BY PULLING UP EXHIBIT 4836.  AND

11:38AM   2    IF WE CAN GO TO THE THIRD PAGE AND FOCUS ON THE EMAIL AT THE

11:38AM   3    TOP THERE.  OKAY.

11:38AM   4         DO YOU RECALL YOU WERE ASKED SOME QUESTIONS ABOUT THIS IN

11:38AM   5    YOUR DIRECT EXAMINATION?

11:38AM   6    A.   YES.

11:38AM   7    Q.   THIS WAS AN OCTOBER 2013 EMAIL THAT RELATED TO HCG

11:38AM   8    PRECISION?

11:38AM   9    A.   YES.

11:38AM  10    Q.   AND THE GOVERNMENT ASKED YOU ABOUT HOW THE HCG PROCESS --

11:38AM  11    WHAT HCG IS AND ITS IMPORTANCE IN PREGNANCY.

11:38AM  12         DO YOU RECALL THAT?

11:38AM  13    A.   YES, YES.

11:38AM  14    Q.   AND IN PARTICULAR THEY FOCUSSED ON THIS PIECE OF THE

11:38AM  15    EVIDENCE.

11:38AM  16         DO YOU SEE THAT?

11:38AM  17         THIS EMAIL WHERE IT TALKS ABOUT TOTAL ALLOWABLE ERROR.

11:38AM  18         DO YOU SEE THAT?

11:38AM  19    A.   YES, YES.

11:38AM  20    Q.   AND THE PRECISION EFFECTS THAT WERE RELEVANT IN THE DATA

11:38AM  21    THAT WAS COMING BACK.

11:38AM  22         DO YOU SEE THAT?

11:38AM  23    A.   YES.

11:38AM  24    Q.   AND THEY ASKED YOU A NUMBER OF QUESTIONS ABOUT HOW IF YOU

11:39AM  25    RELAXED THE PERCENTAGE OF TOTAL ALLOWABLE ERROR, THAT THAT

11:39AM  1     WOULD MAKE THE TEST LESS ACCURATE; RIGHT?

11:39AM  2         DO YOU RECALL THAT?

11:39AM  3     A.   YES.

11:39AM  4     Q.   AND THAT THAT -- MAYBE THEY ASKED IF IT'S A GOOD THING OR

11:39AM  5     A BAD THING.  AND IT'S A BAD THING; RIGHT?

11:39AM  6     A.   YES.

11:39AM  7     Q.   AND THEY NEXT BROUGHT YOU TO --

11:39AM  8         IF WE CAN GO TO THE EMAIL ON THE SECOND PAGE IN THE

11:39AM  9     MIDDLE.

11:39AM  10        THEY BROUGHT YOU TO THIS EMAIL.

11:39AM  11        DO YOU UNDERSTAND THAT?

11:39AM  12    A.   YES.

11:39AM  13    Q.   AND THEY TALKED ABOUT YOUR CONCERNS WITH RELAXING TOTAL

11:39AM  14    ALLOWABLE ERROR; RIGHT?

11:39AM  15    A.   YES.

11:39AM  16    Q.   BECAUSE IT WOULD MAKE THAT A LOT MORE ACCURATE.

11:39AM  17        DO YOU RECALL?  INACCURATE?

11:39AM  18    A.   CORRECT.

11:39AM  19    Q.   OKAY.  AND THEY THEN ASKED YOU WHETHER YOU GENERALLY

11:40AM  20    RECALL HCG ISSUES AT THE COMPANY WITH RESPECT TO ACCURACY;

11:40AM  21    RIGHT?

11:40AM  22    A.   YES.

11:40AM  23    Q.   OKAY.  AND THEN I DON'T KNOW IF YOU RECALL, BUT THEY

11:40AM  24    JUMPED FROM OCTOBER 30TH TO AN EMAIL LATER IN 2014; RIGHT?

11:40AM  25    A.   I DON'T RECALL.

11:40AM  1    Q.   OKAY.  I WANT TO STAY WITH THIS OCTOBER 30TH EMAIL.  OKAY?

11:40AM  2    A.   UH-HUH.

11:40AM  3    Q.   AND I WANT TO CLARIFY THAT.  OKAY?

11:40AM  4    A.   YES.

11:40AM  5    Q.   THIS IS AN EMAIL -- LET'S START WITH SOME DATES THAT ARE

11:40AM  6    RELEVANT HERE.

11:40AM  7         THIS IS AN EMAIL ON OCTOBER 30TH, 2013; CORRECT?

11:40AM  8    A.   YES.

11:40AM  9    Q.   AND DO YOU RECALL FROM OUR EXERCISE YESTERDAY THE DATE ON

11:40AM  10   WHICH HCG WAS VALIDATED FOR USE IN THE CLIA LAB?

11:40AM  11   A.   I DON'T RECALL THE DATE.

11:40AM  12   Q.   OKAY.  WE'LL GO TO THAT IN A SECOND.

11:41AM  13        THIS IS AN EMAIL WITH DR. SIVARAMAN; RIGHT?

11:41AM  14   A.   YES.

11:41AM  15   Q.   AND DO YOU SEE THAT?

11:41AM  16        AND DR. SIVARAMAN WAS IN CHARGE IN THIS PERIOD OF THE

11:41AM  17   RESEARCH AND DEVELOPMENT, RIGHT, FOR ELISA ASSAYS?

11:41AM  18   A.   CORRECT.

11:41AM  19   Q.   AND SHE IS COMING TO YOU, ALONG WITH DR. YOUNG, TO SEEK

11:41AM  20   YOUR GUIDANCE ON THE STANDARDS THAT SHOULD BE USED FOR

11:41AM  21   VALIDATION; RIGHT?

11:41AM  22   A.   YES.

11:41AM  23   Q.   AND THEY'RE SAYING TO YOU, BECAUSE YOU'RE THE EXPERT ON

11:41AM  24   THESE ISSUES, RIGHT, THEY'RE ASKING YOU WHAT IS PERMISSIBLE

11:41AM  25   HERE; RIGHT?

11:41AM  1    A.   YES, YES.

11:41AM  2    Q.   AND THEY'RE TRYING TO GET YOUR GUIDANCE ON THIS EMAIL;

11:41AM  3    CORRECT?

11:41AM  4    A.   YES, YES.

11:41AM  5    Q.   AND THAT'S WHAT YOU'RE PROVIDING; RIGHT?

11:41AM  6    A.   YES.

11:41AM  7    Q.   OKAY.  AND LET'S LOOK AT THE VALIDATION REPORT.  WE'LL

11:41AM  8    JUST BRING IT UP.  WE ONLY NEED THE DATE.  IT'S EXHIBIT 9196.

11:42AM  9         LET'S JUST BLOW UP THE DATE.

11:42AM  10        DO YOU SEE THE HCG VALIDATION REPORT THAT YOU SIGNED FOR

11:42AM  11   USE OF THIS ASSAY IN THE CLIA LAB WAS MARCH 19TH, 2014;

11:42AM  12   CORRECT?

11:42AM  13   A.   YES.

11:42AM  14   Q.   OKAY.  LET'S BRING UP THAT CALENDAR DEMONSTRATIVE IF WE

11:42AM  15   CAN.

11:42AM  16        SO THE CIRCLE THAT I JUST PUT ON THE SCREEN WAS THE

11:42AM  17   CONCERN THAT WAS EXPRESSED; RIGHT?  THAT WAS THIS ISSUE THAT

11:42AM  18   THE GOVERNMENT ASKED YOU ABOUT OR 4836; RIGHT?

11:43AM  19   A.   ARE YOU TALKING ABOUT KARTHIK ASKING ME TO RELAX THE TOTAL

11:43AM  20   ALLOWABLE ERROR?

11:43AM  21   Q.   YEAH, WHEN THEY MADE THAT INQUIRY.

11:43AM  22   A.   YEAH.

11:43AM  23   Q.   IT'S ON THAT DATE; RIGHT?

11:43AM  24   A.   YEAH.

11:43AM  25   Q.   AND THE VALIDATION REPORT IS RIGHT HERE; RIGHT?

11:43AM   1      A.   CORRECT.

11:43AM   2      Q.   IT'S ON MARCH 19TH?

11:43AM   3      A.   CORRECT.

11:43AM   4      Q.   AND IN ALL OF THOSE INTERVENING MONTHS IN BETWEEN THERE,

11:43AM   5      THERE WERE NO HCG EDISON ASSAYS THAT WERE USED IN CLIA LAB;

11:43AM   6      CORRECT?

11:43AM   7      A.   NO.

11:43AM   8      Q.   OKAY.  AND IF THEY WERE WORKING IN R&D TO GET THAT ASSAY

11:43AM   9      IN A PLACE WHERE IT WAS APPROPRIATE FOR USE IN THE CLIA LAB,

11:43AM   10     WAS IT APPROPRIATE FOR THEM TO COME TO YOU AND SEEK GUIDANCE ON

11:43AM   11     TOTAL ALLOWABLE ERROR ISSUES?

11:43AM   12     A.   YES.

11:43AM   13     Q.   AND WAS IT, IN FACT, EVEN REALLY ADVISABLE FOR THEM TO GO

11:44AM   14     AND DO THAT?

11:44AM   15     A.   YES.

11:44AM   16     Q.   OKAY.  NOW, WE CAN TAKE THAT DOWN, MR. BENNETT.  THANK

11:44AM   17     YOU.

11:44AM   18          COULD YOU WIPE THIS SCREEN, MS. KRATZMANN.

11:44AM   19               THE CLERK:  YES.

11:44AM   20               MR. WADE:  THANK YOU.

11:44AM   21     Q.   NOW, I WANT TO GO TO SOME OF THE, I WANT TO GO TO SOME OF

11:44AM   22     THE ISSUES WITH HCG THAT CAME UP IN 2014.  OKAY?

11:44AM   23     A.   OKAY.

11:44AM   24     Q.   AND DO YOU RECALL THERE WAS SOME TESTIMONY THAT YOU HAD

11:44AM   25     ABOUT A DISCUSSION THAT YOU HAD WITH MS. HOLMES WHERE YOU WERE

11:44AM  1    FREAKING OUT; RIGHT?

11:44AM  2    A.   YES.

11:44AM  3    Q.   AND I BELIEVE IT WAS YOUR TESTIMONY THAT SHE WAS KIND OF

11:44AM  4    INDIFFERENT; RIGHT?

11:44AM  5    A.   YES.

11:44AM  6    Q.   AND YOU STAND BY THAT TESTIMONY TODAY?

11:44AM  7    A.   I DID NOT USE THE WORD "INDIFFERENT."  SHE SEEMED PRETTY

11:45AM  8    CALM ABOUT THE WHOLE THING.

11:45AM  9         SHE DIDN'T SEEM TO SHARE MY LEVEL OF ALARM.

11:45AM  10   Q.   AND URGENCY?

11:45AM  11   A.   CORRECT.

11:45AM  12   Q.   OKAY.  LET'S LOOK BRIEFLY AT EXHIBIT 4222, WHICH IS IN

11:45AM  13   EVIDENCE.

11:45AM  14        THIS IS A DOCUMENT THAT YOU'RE NOT ON, BUT YOU WERE SHOWED

11:45AM  15   THIS DOCUMENT THE OTHER DAY.

11:45AM  16        IF WE CAN LOOK AT -- DO YOU SEE IN THE EMAIL DOWN THERE IT

11:45AM  17   MENTIONS AN HCG ISSUE THAT COMES UP?  DO YOU SEE THAT?  IT JUST

11:45AM  18   IDENTIFIES THAT THERE'S AN HCG --

11:45AM  19   A.   YES.

11:45AM  20   Q.   OKAY.  LET'S GO UP THE CHAIN AND BLOW UP THE THREE EMAILS

11:45AM  21   AT THE TOP.

11:45AM  22        AND DO YOU SEE THAT THAT HCG ISSUE IS COMMUNICATED FROM

11:45AM  23   MR. BALWANI TO MS. HOLMES AT 4:45 P.M.

11:46AM  24        DO YOU SEE THAT?

11:46AM  25   A.   YES, YES.

11:46AM  1    Q.   DO YOU SEE THAT RIGHT HERE (INDICATING)?

11:46AM  2    A.   YES.

11:46AM  3    Q.   OKAY.  AND DO YOU SEE THAT SHE RESPONDS SIX MINUTES LATER?

11:46AM  4    A.   YES.

11:46AM  5    Q.   ASKING "HOW DID THAT HAPPEN?"

11:46AM  6    A.   YES, YES.

11:46AM  7    Q.   OKAY.  I'M DONE WITH THAT EXHIBIT.

11:46AM  8         IF WE CAN BRING UP EXHIBIT 4145, WHICH IS IN EVIDENCE.

11:46AM  9    AND IF WE CAN FOCUS UP AT THE TOP.

11:47AM  10        DO YOU RECALL -- YOU'RE WELCOME TO LOOK AT THE WHOLE

11:47AM  11   DOCUMENT, TOO.

11:47AM  12        BUT DO YOU RECALL THAT THIS WAS AN EMAIL THAT WAS

11:47AM  13   FORWARDED FROM MR. BALWANI TO MS. HOLMES AND SHE RESPONDED

11:47AM  14   THAT, "I'VE DONE MANY MEETINGS ON THIS TODAY"?

11:47AM  15        DO YOU RECALL THIS?

11:47AM  16   A.   YES.

11:47AM  17   Q.   AND DO YOU RECALL THAT YOU WERE ASKED WHETHER THE

11:47AM  18   GOVERNMENT -- BY THE GOVERNMENT WHETHER YOU WERE IN ANY OF

11:47AM  19   THOSE MEETINGS AND YOU SAID YOU WERE NOT?

11:47AM  20        DO YOU RECALL THAT?

11:47AM  21   A.   YES.

11:47AM  22   Q.   OKAY.  I'D LIKE TO GO THROUGH THE TIMELINE HERE AND PUT

11:47AM  23   THE FACTS OUT.  OKAY?

11:47AM  24        AND I HAVE A DEMONSTRATIVE THAT I'M GOING TO USE TO DO

11:47AM  25   THAT.  OKAY?

11:47AM   1        THIS IS SOMETHING THAT I WOULD NORMALLY DO ON LIKE A PIECE

11:47AM   2    OF PAPER OR FLIP CHART, BUT WITH OUR CURRENT LOGISTICAL

11:48AM   3    SITUATION IT'S A LITTLE DIFFICULT SO I'M GOING TO TRY TO DO IT

11:48AM   4    ELECTRONICALLY.  OKAY?

11:48AM   5    A.   SURE.

11:48AM   6    Q.   LET'S GO BACK TO 4145.  LET'S BRING UP 4145 AND GO TO THE

11:48AM   7    LAST EMAIL IN 4145.

11:48AM   8        LET'S START THERE.  DO YOU SEE THAT AT 1:56 P.M. ON

11:48AM   9    MAY 29TH, 2014 THERE WAS AN ISSUE THAT WAS RAISED WITH RESPECT

11:48AM  10    TO HCG?

11:48AM  11    A.   YES.

11:48AM  12    Q.   AND DO YOU SEE THE INDICATION THAT THE RESULTS ARE BEING

11:48AM  13    HELD UNTIL FURTHER NOTICE RIGHT THERE.

11:48AM  14        DO YOU SEE THAT?

11:48AM  15    A.   YES, YES.

11:48AM  16    Q.   IF WE CAN DO A SPLIT SCREEN WHERE WE PULL UP THE GRAPHIC

11:48AM  17    AND JUST PUT THAT DATE UP.

11:49AM  18        ANY OBJECTION TO THE FIRST ENTRY THERE?

11:49AM  19            MR. BOSTIC:  NO OBJECTION.

11:49AM  20    BY MR. WADE:

11:49AM  21    Q.   SO THIS IS THURSDAY, MAY 29TH, 2014, IN THE FIRST ENTRY.

11:49AM  22    AND LET'S GO NEXT.

11:49AM  23        ON THE TIMELINE LET'S PUT UP WHAT WE JUST TALKED ABOUT

11:49AM  24    WITH DR. ROSENDORFF, THE CUSTOMER SERVICE EMAILS.

11:49AM  25        DO YOU SEE THAT?

11:49AM   1    A.   YES.

11:49AM   2    Q.   AND LET'S WORK UP THE CHAIN AND LET'S WORK UP TO 2:56 P.M.

11:49AM   3       YOU'RE NOT ON THIS EMAIL, BUT THIS IS AN EMAIL FROM

11:49AM   4    DR. YOUNG TO MR. BALWANI.

11:49AM   5       DO YOU SEE THAT?

11:49AM   6    A.   YES.

11:49AM   7    Q.   AND DO YOU SEE ON THE BOTTOM -- AND IT'S AT 2:56 P.M.

11:49AM   8       DO YOU SEE THAT?

11:49AM   9    A.   YES.

11:49AM   10    Q.   AND IT SAYS, "I ASKED ADAM TO CALL THE DOCTOR TO ASK ABOUT

11:49AM   11    THE CLINICAL SITUATION."

11:50AM   12       AND IT SAYS, "AND THEN WE WILL BE ABLE TO DECIDE IF WE

11:50AM   13    WANT TO RELEASE THE RESULTS."

11:50AM   14       RIGHT?

11:50AM   15    A.   YES.

11:50AM   16    Q.   AND THAT WAS APPROPRIATE; CORRECT?

11:50AM   17    A.   YES.

11:50AM   18    Q.   AND YOU WERE THE ONE WHO WAS SUPPOSED TO COMMUNICATE AND

11:50AM   19    REACH OUT TO THE DOCTOR?

11:50AM   20    A.   YES.

11:50AM   21    Q.   AND ONE OF YOUR DOTTED LINE BOSSES, DR. YOUNG, IS

11:50AM   22    REPORTING TO ANOTHER BOSS ABOUT WHAT IS HAPPENING ON THAT.

11:50AM   23       DO YOU SEE THAT?

11:50AM   24    A.   YES.

11:50AM   25    Q.   OKAY.  LET'S ADD THAT ITEM TO OUR TIMELINE.  OKAY?

11:50AM   1      A.   YES.

11:50AM   2      Q.   AND THEN THE NEXT ENTRY, THE NEXT EMAIL UP THE CHAIN

11:50AM   3      MR. BALWANI SAYS TO KEEP HIM IN THE LOOP.  OKAY?

11:50AM   4      A.   YES.

11:50AM   5      Q.   "I ASSUME THIS WAS RUN ON EDISONS?"

11:51AM   6      A.   YES.

11:51AM   7      Q.   AND THEN LET'S WORK OUR WAY UP THE CHAIN THERE TO OUR NEXT

11:51AM   8      EMAIL.

11:51AM   9           AND THIS IS A REPORT FROM DR. YOUNG WHERE IT SAYS, "WE

11:51AM  10      SPOKE WITH THE ORDERING PHYSICIAN, AND MADE THE DECISION TO

11:51AM  11      COLLECT ANOTHER SAMPLE.  WE ARE NOT REPORTING OUT THE VERY LOW

11:51AM  12      RESULT."

11:51AM  13           DO YOU SEE THAT?

11:51AM  14      A.   YES.

11:51AM  15      Q.   AND THAT WAS YOU WHO SPOKE TO THAT PHYSICIAN; CORRECT?

11:51AM  16      A.   I DO NOT RECALL.

11:51AM  17      Q.   OKAY.  BUT YOU SAW THE EMAIL BELOW WHERE YOU WERE THE ONE

11:51AM  18      WHO WAS GOING TO BE CALLING THE PHYSICIAN?

11:51AM  19           DO YOU RECALL THAT?

11:51AM  20      A.   DANIEL SAYING THAT HE ASKED ME TO CALL, YES.

11:51AM  21      Q.   OKAY.  AND THEN AT THIS TIME AT 5:37 IT'S BEING REPORTED

11:51AM  22      THAT THAT COMMUNICATION HAD HAPPENED, THAT THE RESULTS ARE

11:51AM  23      BEING HELD AND A NEW RESULT IS HAPPENING.

11:51AM  24           DO YOU SEE THAT?

11:51AM  25      A.   THE DECISION WAS MADE TO COLLECT ANOTHER SAMPLE, RIGHT.

11:52AM  1    Q.   OKAY.

11:52AM  2    A.   NOT JUST A NEW RESULT.

11:52AM  3    Q.   ANOTHER SAMPLE SO YOU COULD RERUN IT; CORRECT?

11:52AM  4    A.   CORRECT.

11:52AM  5    Q.   A REDRAW.  IS THAT CALLED A REDRAW?

11:52AM  6    A.   CORRECT.

11:52AM  7    Q.   OKAY.  LET'S PUT THAT ITEM UP ON THE TIMELINE, THE

11:52AM  8    DEMONSTRATIVE.

11:52AM  9         OKAY.  NOW LET'S GO UP TO THE TOP EMAILS.  OKAY.

11:52AM 10         AND THIS IS THE ONE WHERE MS. HOLMES SAYS SHE'S BEEN IN

11:52AM 11    MANY MEETINGS ON THIS.  BUT YOU WEREN'T IN ANY OF THE MEETINGS

11:52AM 12    WITH HER; IS THAT RIGHT?

11:52AM 13    A.   I DON'T RECALL BEING IN ANY MEETINGS WITH HER.

11:52AM 14    Q.   I BELIEVE YOU TESTIFIED THAT YOU WERE NOT IN ANY MEETINGS;

11:52AM 15    IS THAT RIGHT?

11:52AM 16    A.   I DON'T BELIEVE I WAS IN ANY MEETINGS WITH HER.

11:52AM 17    Q.   OKAY.  WELL, LET'S TAKE A LOOK.  LET'S ADD THAT ITEM TO

11:52AM 18    THE CHRONOLOGY.  IF I DID A TIMELINE CALCULATION, THE INTERNET

11:53AM 19    HAS IT -- AND IF THAT IS GREENWICH MEAN TIME THAT WOULD PUT

11:53AM 20    THAT AT 6:20 P.M.  OKAY?

11:53AM 21    A.   OKAY.

11:53AM 22    Q.   AND SO LET'S ADD THAT TO OUR TIMELINE.

11:53AM 23         DO YOU SEE IT OVER THERE?

11:53AM 24    A.   YES.

11:53AM 25    Q.   NOW, LET'S GO TO EXHIBIT 13862.

11:53AM 1          OR ACTUALLY, IT MIGHT BE EASIER TO SEE IT EASIER, I'M

11:53AM 2    GOING TO GO TO 13862, 13863, 64, AND -- 62, 63, AND 64.  OKAY.

11:53AM 3    THEY'RE RIGHT NEXT TO EACH OTHER.  GO AHEAD AND GRAB THOSE,

11:53AM 4    DOCTOR.

11:54AM 5          OKAY.  LET ME DRAW YOUR ATTENTION FIRST TO 13863.

11:54AM 6    A.   YES.

11:54AM 7    Q.   DO YOU SEE THAT?

11:54AM 8    A.   YES.

11:54AM 9    Q.   AND DO YOU SEE THAT'S AN OUTLOOK CALENDAR?

11:54AM 10   A.   YES.

11:54AM 11   Q.   AND DO YOU RECOGNIZE THAT AS MS. HOLMES'S OUTLOOK

11:54AM 12   CALENDAR?

11:54AM 13   A.   YES.

11:54AM 14   Q.   OKAY.

11:54AM 15          I MOVE THE ADMISSION OF 13863.

11:54AM 16              MR. BOSTIC:  OBJECTION TO FOUNDATION AND

11:54AM 17   AUTHENTICITY.

11:54AM 18              THE COURT:  MAYBE YOU SHOULD LAY A FOUNDATION.

11:54AM 19              MR. WADE:  I ASKED THAT THIS CONDITIONALLY BE

11:54AM 20   SUBMITTED.  I BELIEVE WE STIPULATED TO THE AUTHENTICITY OF THE

11:54AM 21   UNDERLYING DATA.

11:54AM 22              THE COURT:  MR. BOSTIC --

11:54AM 23              MR. WADE:  IF NOT, WE CERTAINLY CAN WITH OUR PWC

11:54AM 24   FRIEND.

11:54AM 25              MR. BOSTIC:  YOUR HONOR, ESPECIALLY ON FOUNDATION,

11:54AM   1      ONE NEEDS TO BE LAID.

11:54AM   2                THE COURT:  CAN YOU LAY A FOUNDATION?

11:54AM   3                MR. WADE:  THROUGH THIS WITNESS?

11:54AM   4                THE COURT:  YES.

11:54AM   5                MR. WADE:  I DON'T KNOW.  WE CAN CALL HIM BACK AND

11:55AM   6      THAT'S WHY I ASK THAT IT BE --

11:55AM   7                THE COURT:  CAN YOU LAY A FOUNDATION WITH THIS

11:55AM   8      WITNESS OR YOU THINK NOT?

11:55AM   9                MR. WADE:  I DON'T THINK I CAN LAY A FOUNDATION WITH

11:55AM  10      THIS WITNESS.  SO I WOULD ASK UNDER 104 THAT THIS BE

11:55AM  11      CONDITIONALLY SUBMITTED.  I WILL REPRESENT TO THE COURT THAT I

11:55AM  12      CAN EASILY LAY A FOUNDATION FOR THIS DOCUMENT.

11:55AM  13                THE COURT:  ALL RIGHT.  THIS IS 13863?

11:55AM  14                MR. WADE:  YES.

11:55AM  15                THE COURT:  ALL RIGHT.  THIS WILL BE CONDITIONALLY

11:55AM  16      ADMITTED SUBJECT TO MOTION TO STRIKE FOR LACK OF A FOUNDATION.

11:55AM  17                MR. WADE:  THANK YOU, YOUR HONOR.

11:55AM  18                THE COURT:  IT WILL BE ADMITTED CONDITIONALLY.

11:55AM  19                MR. WADE:  CAN WE PUBLISH, YOUR HONOR?

11:55AM  20                THE COURT:  YES, YES.

11:55AM  21           (DEFENDANT'S EXHIBIT 13863 WAS CONDITIONALLY RECEIVED IN

11:55AM  22      EVIDENCE.)

11:55AM  23      BY MR. WADE:

11:55AM  24      Q.   LET'S BLOW UP THE MIDDLE.

11:55AM  25                THIS IS MAY 29TH, 2014.

11:55AM  1          DO YOU SEE THAT?

11:55AM  2   A.   YES.

11:55AM  3   Q.   AND DO YOU SEE THERE IT SAYS MEETING WITH ADAM ROSENDORFF

11:55AM  4   AT 3:00 O'CLOCK?

11:55AM  5   A.   YES.

11:55AM  6   Q.   AND DO YOU SEE THERE'S A MEETING WITH DANIEL YOUNG AS

11:55AM  7   WELL?

11:55AM  8   A.   YES.

11:55AM  9   Q.   OKAY.

11:55AM  10  A.   A NUMBER OF THOSE ARE OVERLAPPING MEETINGS.  I DON'T

11:56AM  11  RECALL MEETING WITH MS. YOUNG ON THIS ISSUE.  I'M SORRY, I

11:56AM  12  DON'T RECALL MEETING WITH MS. HOLMES ON THIS ISSUE.

11:56AM  13  Q.   I BELIEVE YOUR TESTIMONY WAS THAT YOU DID NOT MEET WITH

11:56AM  14  MS. HOLMES; IS THAT CORRECT?

11:56AM  15  A.   OKAY.

11:56AM  16  Q.   THAT WAS YOUR TESTIMONY ON DIRECT; RIGHT?

11:56AM  17  A.   I BELIEVE SO.

11:56AM  18  Q.   OKAY.  DID THE GOVERNMENT SHOW YOU THE CALENDAR ENTRIES?

11:56AM  19  A.   NO.

11:56AM  20  Q.   OKAY.  LET'S GO TO 13862, WHICH I WOULD ASK TO BE

11:56AM  21  CONDITIONALLY ADMITTED UNDER THE SAME REPRESENTATION AND THE

11:56AM  22  SAME CONDITIONS, YOUR HONOR.  IT'S JUST A DIFFERENT FORMAT OF

11:56AM  23  THE SAME DATA.

11:56AM  24          THE COURT:  RIGHT.  ARE YOU ASKING -- THERE'S SOME

11:56AM  25  WRITING ON THIS DATA.  ARE YOU ASKING THAT THAT BE ADMITTED

11:56AM  1    ALSO?

11:56AM  2            MR. WADE:  I AM.  I ONLY INTEND TO DRAW THE

11:56AM  3    WITNESS'S ATTENTION TO ONE SMALL PIECE OF IT, BUT IF THE

11:56AM  4    GOVERNMENT WOULD LIKE IT REDACTED, I'M HAPPY TO.

11:56AM  5            MR. BOSTIC:  SAME OBJECTIONS AS BEFORE, YOUR HONOR.

11:57AM  6    THERE ARE ALSO HEARSAY ISSUES WITH THIS DOCUMENT.

11:57AM  7            THE COURT:  WHAT -- CAN YOU REDACT THAT PORTION OR

11:57AM  8    LET THE GOVERNMENT KNOW WHAT PORTION THAT YOU'RE GOING TO SPEAK

11:57AM  9    TO?

11:57AM 10            MR. WADE:  SURE.  MY SENSE IS THAT THEY HAVE AN

11:57AM 11    IDEA.

11:57AM 12            MR. BOSTIC:  SAME OBJECTIONS, YOUR HONOR,

11:57AM 13    FOUNDATION, AUTHENTICITY, AND HEARSAY.

11:57AM 14            THE COURT:  ALL RIGHT.  AS TO THE HEARSAY OBJECTION,

11:57AM 15    THAT IS WHY I AM CURIOUS AS TO WHICH PORTION --

11:57AM 16            MR. WADE:  I WOULD OFFER IT JUST FOR THE STATE OF

11:57AM 17    MIND OF MS. HOLMES.

11:57AM 18            THE COURT:  OKAY.  SO I SHOULD KNOW WHAT IT IS THAT

11:57AM 19    YOU'RE SEEKING.

11:57AM 20            MR. WADE:  IT IS ONLY THE PORTION UNDER 4:00

11:57AM 21    O'CLOCK, THE TWO ITEMS, ONE AT 4:00 O'CLOCK TO 4:20 AND ONE

11:57AM 22    FROM 4:25 TO 4:30 ON PAGE 415.

11:58AM 23            THE COURT:  AND THOSE ARE -- I SEE THOSE ITEMS ON

11:58AM 24    THE CALENDAR.  THOSE ARE REFERENCING IN THE WRITTEN MATERIALS

11:58AM 25    AS WELL?

11:58AM 1      MR. WADE:  THESE ARE THE OTHER ITEMS I'M GOING TO

11:58AM 2   REFERENCE, YOUR HONOR, OTHER THAN THE DATE ITSELF.

11:58AM 3         (PAUSE IN PROCEEDINGS.)

11:58AM 4         THE COURT:  I'M SORRY.  ARE YOU SEEKING TO INTRODUCE

11:58AM 5   ANY OF THE WRITINGS?

11:58AM 6         MR. WADE:  NO.

11:58AM 7         THE COURT:  JUST WHAT YOU HAVE HIGHLIGHTED?

11:58AM 8         MR. WADE:  YES, AND THE DATE.

11:58AM 9         THE COURT:  CORRECT.  GOTCHA.  OKAY.

11:58AM 10        THOSE WILL BE CONDITIONALLY ADMITTED SUBJECT TO A MOTION

11:58AM 11  TO STRIKE FOR LACK OF FOUNDATION.  NONE OF THE WRITTEN MATERIAL

11:58AM 12  IS GOING TO BE OFFERED.

11:58AM 13        MR. WADE:  THANK YOU, YOUR HONOR.

11:58AM 14     MAY WE PUBLISH?

11:58AM 15        THE COURT:  YES.

11:58AM 16     (DEFENDANT'S EXHIBIT 13862 WAS CONDITIONALLY RECEIVED IN

11:59AM 17  EVIDENCE.)

11:59AM 18  BY MR. WADE:

11:59AM 19  Q.   DO YOU SEE THERE AN ENTRY ON THE CALENDAR FOR A MEETING

11:59AM 20  WITH YOU FOLLOWED IMMEDIATELY BY A MEETING WITH DR. YOUNG?

11:59AM 21  A.   YES.

11:59AM 22  Q.   AND DO YOU SEE THE TOPICS DISCUSSED HCG PATIENT DATA?

11:59AM 23  A.   WITH DR. YOUNG, YES.

11:59AM 24  Q.   DO YOU SEE THAT?

11:59AM 25  A.   YES.

| | | |
|---|---|---|
| 11:59AM | 1 | Q.   OKAY.  LET'S GO BACK TO THE DEMONSTRATIVE, AND LET'S ADD |
| 11:59AM | 2 | THOSE ITEMS. |
| 11:59AM | 3 | LET'S GO TO DOCUMENT 13864. |
| 11:59AM | 4 | DO YOU SEE THAT? |
| 11:59AM | 5 | A.   YES. |
| 11:59AM | 6 | Q.   AND THAT'S AN EMAIL MEETING, EMAIL YOU RECEIVED FROM |
| 12:00PM | 7 | MS. HOLMES'S ASSISTANT ON MAY 30TH, 2014? |
| 12:00PM | 8 | DO YOU SEE THAT? |
| 12:00PM | 9 | A.   YES. |
| 12:00PM | 10 | MR. WADE:  I MOVE THE ADMISSION OF 13864. |
| 12:00PM | 11 | MR. BOSTIC:  NO OBJECTION. |
| 12:00PM | 12 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 12:00PM | 13 | (DEFENDANT'S EXHIBIT 13864 WAS RECEIVED IN EVIDENCE.) |
| 12:00PM | 14 | MR. WADE:  LET'S GO THAT UP. |
| 12:00PM | 15 | Q.   THIS IS THE NEXT DAY, CORRECT, SIR? |
| 12:00PM | 16 | A.   YES. |
| 12:00PM | 17 | Q.   AND DO YOU SEE THAT MS. HOLMES'S ASSISTANT FOLLOWS UP THE |
| 12:00PM | 18 | NEXT DAY AND ASKED YOU TO COORDINATE ANOTHER CLIA MEETING THAT |
| 12:00PM | 19 | AFTERNOON AT 4:00 P.M. |
| 12:00PM | 20 | DO YOU SEE THAT? |
| 12:00PM | 21 | A.   YES. |
| 12:00PM | 22 | Q.   AND ASKS YOU TO GIVE A LIST OF ATTENDEES FOR THAT SESSION? |
| 12:00PM | 23 | A.   YES. |
| 12:00PM | 24 | Q.   DO YOU SEE THAT? |
| 12:00PM | 25 | A.   YES. |

12:00PM   1    Q.   AND UP AT THE TOP IT SAYS 10:34 P.M.  THAT IS

12:00PM   2    GREENWICH MEAN TIME, 3:30 P.M. PACIFIC, WHICH GIVEN THAT

12:01PM   3    THEY'RE SUGGESTING A 4:00 P.M. MEETING.  WOULD THAT SEEM LIKE

12:01PM   4    THAT WAS THE ONLY REASONABLE TIMING INFERENCE?

12:01PM   5    A.   YEAH, THAT'S PRETTY SHORT NOTICE TO BE SETTING UP A

12:01PM   6    MEETING.

12:01PM   7    Q.   IT WAS AN URGENT MEETING; RIGHT?

12:01PM   8    A.   I DON'T KNOW WHAT MS. HOLMES INTENDED TO DISCUSS IN THAT

12:01PM   9    MEETING.

12:01PM   10   Q.   OKAY.  YOU DON'T RECALL THE SUBSTANCE OF THAT MEETING?

12:01PM   11   A.   NO.

12:01PM   12   Q.   OKAY.  LET'S ADD THAT TO THE TIMELINE.  LET'S GO NEXT TO

12:01PM   13   EXHIBIT 4147.

12:01PM   14   A.   I HAVE IT.

12:01PM   15   Q.   OKAY.  AND DO YOU SEE THIS EMAIL?

12:02PM   16   A.   YES.

12:02PM   17   Q.   AND THIS IS THE EMAIL WHERE YOU STOPPED THE HCG TESTING

12:02PM   18   AND DIRECTED THAT THAT NOT OCCUR; RIGHT?

12:02PM   19   A.   I DIRECTED FOR THE TESTING TO BE RUN ON THE IMMULITE.

12:02PM   20   Q.   RIGHT.  AND FOR THE EDISON HCG TESTING TO BE HELD; RIGHT?

12:02PM   21   A.   CORRECT.

12:02PM   22   Q.   OKAY.  AND THAT'S AT 7:52 ON THAT FRIDAY, MAY 30TH;

12:02PM   23   CORRECT?

12:02PM   24   A.   YES.

12:02PM   25   Q.   AND THAT'S JUST A COUPLE OF HOURS AFTER 4:00 O'CLOCK ON

| | | |
|---|---|---|
| 12:02PM | 1 | THAT FRIDAY, IS IT NOT? |
| 12:02PM | 2 | A.   IS THIS STILL GREENWICH MEAN TIME?  I DON'T KNOW.  IS THIS |
| 12:02PM | 3 | PACIFIC OR? |
| 12:02PM | 4 | Q.   I DON'T KNOW.  USUALLY IT'S THE TOP EMAIL THAT ADJUSTS, |
| 12:02PM | 5 | BUT DO YOU RECALL WHEN YOU SENT THIS EMAIL? |
| 12:02PM | 6 | A.   DO I HAVE AN INDEPENDENT RECOLLECTION IF I SENT THIS EMAIL |
| 12:02PM | 7 | FROM SEVEN YEARS AGO? |
| 12:02PM | 8 | Q.   NO. |
| 12:02PM | 9 | A.   NO, I DO NOT. |
| 12:02PM | 10 | Q.   I WOULD BE SURPRISED IF YOU DID.  IN FACT, YOU DON'T EVEN |
| 12:03PM | 11 | REMEMBER HAVING A MEETING OR INTERACTING WITH MS. HOLMES ON |
| 12:03PM | 12 | THIS HCG DURING THIS TIME PERIOD, DO YOU? |
| 12:03PM | 13 | A.   I CAN'T ANSWER YES OR NO. |
| 12:03PM | 14 | Q.   OKAY.  LET'S GO TO THE NEXT. |
| 12:03PM | 15 | WELL, YOU DON'T RECALL THE MEETING; RIGHT?  THAT WAS YOUR |
| 12:03PM | 16 | TESTIMONY ON DIRECT? |
| 12:03PM | 17 | A.   RIGHT. |
| 12:03PM | 18 | Q.   AND THE FACT THAT THIS HAS HAPPENED IS REPORTED UP, DO YOU |
| 12:03PM | 19 | SEE THAT, TO MS. HOLMES? |
| 12:03PM | 20 | A.   YEAH. |
| 12:03PM | 21 | Q.   SO SHE IS AWARE THAT THAT TEST HAD BEEN HELD? |
| 12:03PM | 22 | A.   YES. |
| 12:03PM | 23 | Q.   A FEW HOURS AFTER THAT 4:00 O'CLOCK MEETING? |
| 12:03PM | 24 | A.   IT LOOKS LIKE IT WAS THE NEXT DAY, YEAH.  THIS IS SATURDAY |
| 12:03PM | 25 | NOW THAT MR. BALWANI IS EMAILING MS. HOLMES ABOUT THIS ISSUE. |

ROSENDORFF CROSS BY MR. WADE (RES.)

```
12:03PM   1    Q.   RIGHT.  BUT IT WAS PULLED -- THE TEST WAS PULLED, IF WE GO

12:03PM   2    BACK TO THE OTHER EMAIL, JUST A FEW HOURS AFTER THAT 4:00

12:03PM   3    O'CLOCK MEETING?

12:03PM   4    A.   IT LOOKS LIKE IT, CORRECT.

12:03PM   5    Q.   LET'S GO BACK TO THE DEMONSTRATIVE.  LET'S ADD THAT.

12:04PM   6         I HAVE TO ASK YOU, SIR, DO YOU STAND BY YOUR TESTIMONY

12:04PM   7    THAT YOU DID NOT MEET WITH MS. HOLMES ON THESE HCG ISSUES

12:04PM   8    DURING THIS TIME PERIOD?

12:04PM   9    A.   YES.

12:04PM  10    Q.   YOU DO?

12:04PM  11    A.   YES.

12:04PM  12    Q.   OKAY.

12:04PM  13    A.   I RECALL -- I'M SORRY.

12:04PM  14    Q.   I'D LIKE TO TALK MORE ABOUT 4147.

12:04PM  15         DO YOU SEE THAT?  THIS IS THE EMAIL WHERE YOU STOPPED THE

12:05PM  16    TESTING.

12:05PM  17         DO YOU RECALL THAT?

12:05PM  18    A.   YES.

12:05PM  19    Q.   OKAY.  AND DO YOU RECALL THAT THE GOVERNMENT ASKED YOU

12:05PM  20    ABOUT A COUPLE OF OTHER EXHIBITS WHERE THEY SHOWED TESTING THAT

12:05PM  21    HAPPENED LATER IN TIME?

12:05PM  22    A.   YES.

12:05PM  23    Q.   AND THEY ASKED YOU, THEY ASKED YOU IF YOU WERE AWARE THAT

12:05PM  24    TESTING HAD, ON THE EDISON DEVICE FOR HCG, HAD BEEN

12:05PM  25    RE-IMPLEMENTED?
```

12:05PM   1      A.   YES.

12:05PM   2      Q.   AND YOU SAID YOU WERE NOT AWARE OF THAT?

12:05PM   3      A.   I WAS NOT AWARE.

12:05PM   4      Q.   YOU WERE NOT AWARE OF THAT.

12:05PM   5           AND YOU SAID -- THE SUGGESTION WAS THAT YOU WERE BEING

12:05PM   6      COUNTERMANDED; RIGHT?

12:05PM   7      A.   I DON'T KNOW WHAT THE SUGGESTION WAS.  I'M JUST TESTIFYING

12:05PM   8      THAT I WAS NOT AWARE.

12:05PM   9      Q.   YOU WERE NOT AWARE THAT THE HCG TEST WAS GOING -- EVER

12:06PM  10      WENT BACK ON THE EDISON DEVICE?

12:06PM  11      A.   CORRECT.

12:06PM  12      Q.   OKAY.  LET'S LOOK AT SOME DOCUMENTS.  LET'S GO TO 12656.

12:06PM  13           THIS IS AN EMAIL BETWEEN YOU AND AT DIFFERENT TIMES

12:06PM  14      MR. BALWANI AND DR. YOUNG AND DR. PANGARKAR; CORRECT?

12:06PM  15      A.   YES.

12:06PM  16      Q.   AND IT'S DATED JUNE 4TH, 2014; CORRECT?

12:06PM  17      A.   YES.

12:06PM  18      Q.   AND JUST A FEW DAYS AFTER THESE EVENTS THAT WE'VE BEEN

12:07PM  19      TALKING ABOUT?

12:07PM  20      A.   CORRECT.

12:07PM  21              MR. WADE:  OKAY.  MOVE TO ADMIT 12656.

12:07PM  22              MR. BOSTIC:  NO OBJECTION.

12:07PM  23              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:07PM  24         (DEFENDANT'S EXHIBIT 12656 WAS RECEIVED IN EVIDENCE.)

12:07PM  25      BY MR. WADE:

12:07PM   1    Q.   LET'S START WITH THE BOTTOM EMAIL.

12:07PM   2         DO YOU SEE THIS IS AN EMAIL FROM DR. BALWANI -- OR

12:07PM   3    MR. BALWANI TO DR. YOUNG AND DR. PANGARKAR?

12:07PM   4    A.   YES.

12:07PM   5    Q.   AND IT SAYS THAT YOU CAME BACK EXTREMELY FRUSTRATED THAT

12:07PM   6    AS LAB DIRECTOR THAT YOU'RE NOT BEING KEPT IN THE LOOP WITH

12:07PM   7    RESPECT TO CERTAIN CLIA R&D EXPERIMENTS.

12:07PM   8         DO YOU RECALL THAT?

12:07PM   9    A.   YES.

12:07PM  10    Q.   AND THAT YOU WERE FRUSTRATED THAT YOU WEREN'T AWARE THAT

12:07PM  11    THEY WERE HAPPENING?

12:07PM  12    A.   YES.

12:07PM  13    Q.   AND THEN IT SAYS, YOU CITED THE EXAMPLE OF AN HCG SAMPLE

12:08PM  14    THAT WAS DILUTED AND RAN AND ADAM DIDN'T KNOW WHAT IT WAS.

12:08PM  15         DO YOU SEE THAT?

12:08PM  16    A.   YES.

12:08PM  17    Q.   OKAY.  AND THEN HE EXPLAINS DOWN BELOW THAT HIS

12:08PM  18    UNDERSTANDING IS THAT THAT WAS EXPERIMENTAL; RIGHT?

12:08PM  19    A.   OKAY.

12:08PM  20    Q.   DO YOU SEE THAT'S WHAT HE SAYS?

12:08PM  21    A.   THAT'S WHAT HE'S SAYING.

12:08PM  22    Q.   BUT HE'S STILL SAYING THAT YOU SHOULD BE IN THE LOOP ON

12:08PM  23    IT; RIGHT?

12:08PM  24    A.   WHERE ARE YOU READING THAT?

12:08PM  25    Q.   WELL, LET'S GO TO THE SECOND PAGE.

12:08PM   1    A.   OH, I SEE.  I'VE GOT IT.  YEAH.

12:08PM   2    Q.   OKAY.  AND IT SAYS YOU HAD ALSO SENT AN EMAIL TO THE CLIA

12:08PM   3    LAB ABOUT NOT RUNNING ANY HCG EXAMPLES ON EDISONS, AND HE

12:08PM   4    DOESN'T KNOW IF THAT WAS CARRIED THROUGH ON OR IF WE LATER

12:09PM   5    DETERMINED THAT THE DATA WAS CORRECT AND GOOD TO GO.

12:09PM   6         DO YOU SEE THAT?

12:09PM   7    A.   YES.

12:09PM   8    Q.   AND THAT'S BECAUSE AN EXPERIMENT WAS BEING RUN WITHIN THE

12:09PM   9    CLIA LAB?

12:09PM  10    A.   I'M NOT FOLLOWING YOU AT ALL, I'M SORRY.

12:09PM  11    Q.   WELL, DO YOU SEE ON THE PRIOR PAGE HE HAD TALKED ABOUT

12:09PM  12    THERE WAS SOME KIND OF EXPERIMENTAL RUN THAT WAS HAPPENING?

12:09PM  13    A.   YES.

12:09PM  14    Q.   OKAY.  AND THE SUGGESTION WAS THAT MAYBE THAT CREATED SOME

12:09PM  15    KIND OF CONFUSION BECAUSE YOU THOUGHT THAT YOU PUT A HALT TO

12:09PM  16    ALL HCG TESTING?

12:09PM  17    A.   YEAH, I DIDN'T -- I DON'T HAVE AN INDEPENDENT RECOLLECTION

12:09PM  18    OF THIS, BUT IT LOOKS LIKE I'M FRUSTRATED BECAUSE I DON'T KNOW

12:09PM  19    IF THAT'S AN EXPERIMENTAL RUN OR THAT'S A PATIENT RUN, AND I'VE

12:09PM  20    ALREADY TOLD FOLKS TO STOP RUNNING HCG ON THE EDISONS.

12:09PM  21    Q.   RIGHT.  AND MR. BALWANI SAYS TO THOSE GENTLEMEN, THIS

12:09PM  22    INFORMATION HAS TO GO THROUGH HIM; RIGHT?

12:09PM  23    A.   YES.

12:09PM  24    Q.   AND IN THE NEXT PARAGRAPH HE SAYS, "WE NEED TO HONOR SOP'S

12:10PM  25    AND PROCESSES IN CLIA AND IF THERE ARE R&D EXPERIMENTS WE WANT

12:10PM   1    TO RUN THEN THEY SHOULD BE CLEARLY LABELED AS SUCH."

12:10PM   2         DO YOU SEE THAT?

12:10PM   3    A.   YES.

12:10PM   4    Q.   OKAY.  AND THEN HE ASKS, "CAN YOU GUYS PLEASE TOUCH BASE

12:10PM   5    WITH ADAM SO HE IS IN THE LOOP ON ALL HCG DECISIONS ON

12:10PM   6    EDISONS."

12:10PM   7         DO YOU SEE THAT?

12:10PM   8    A.   I SEE THAT.

12:10PM   9    Q.   OKAY.  LET'S GO TO THE NEXT EMAIL UP THE CHAIN.

12:10PM   10        DO YOU SEE THERE DANIEL SAYS THAT HE UPDATED YOU OVER THE

12:10PM   11   WEEKEND?  DO YOU SEE THAT?

12:10PM   12   A.   YES.

12:10PM   13   Q.   REGARDING THE REVIEW OF THE PAST HCG DATA AND WHAT THEY'RE

12:10PM   14   LOOKING AT MOVING FORWARD.

12:10PM   15        DO YOU SEE THAT?

12:10PM   16   A.   YES.

12:10PM   17   Q.   AND THERE HAD BEEN A HALT ON FRIDAY; RIGHT?

12:10PM   18   A.   YES.

12:10PM   19   Q.   AND THERE WAS WORK BEING DONE OVER THE WEEKEND TO ASSESS

12:10PM   20   WHETHER IT WAS OKAY TO DO THE HCG TEST; RIGHT?

12:10PM   21   A.   I DON'T KNOW WHAT THE WORK WAS CONDUCTED OR WHAT THE

12:10PM   22   INTENTION WAS.

12:10PM   23   Q.   BUT IT SAYS HERE THAT THEY HAD UPDATED YOU ON THAT.

12:11PM   24        DO YOU SEE THAT?

12:11PM   25   A.   IT'S PRETTY VAGUE.  I DON'T REALLY KNOW WHAT DANIEL MEANS

12:11PM 1    IN THIS EMAIL TO BE HONEST.

12:11PM 2    Q.   OKAY.  DO YOU SEE THE PART WHERE IT SAYS, "I UPDATED ADAM

12:11PM 3    OVER THE WEEKEND REGARDING OUR REVIEW OF THE PAST DATA FOR HCG

12:11PM 4    DATA AND WHAT WE WERE LOOKING AT MOVING FORWARDS."

12:11PM 5         DO YOU SEE THAT?

12:11PM 6    A.   YES.

12:11PM 7    Q.   AND DO YOU SEE THE SUBJECT LINE HCG ON EDISONS?

12:11PM 8    A.   YES.

12:11PM 9    Q.   AND DO YOU SEE THAT IT SAYS, "WE'LL UPDATE HIM ON THE

12:11PM 10   LATEST EFFORTS ON THIS"?

12:11PM 11   A.   YES.

12:11PM 12   Q.   OKAY.

12:11PM 13   A.   IT LOOKS LIKE THEY'RE TRYING TO DO TROUBLESHOOTING AND

12:11PM 14   LOOKING AT PREVIOUS DATA AND WHATNOT?

12:11PM 15   Q.   BECAUSE YOU HAD HALTED TESTING, RIGHT, SIR?

12:11PM 16   A.   CORRECT.

12:11PM 17   Q.   YEAH.  AND SO THEY WERE TRYING TO FIGURE OUT WHAT WAS

12:11PM 18   GOING ON WITH THE ASSAYS; CORRECT?

12:11PM 19   A.   YES.

12:11PM 20   Q.   OKAY.  AND ISN'T THAT WHAT YOU WOULD EXPECT EVERYONE IN

12:11PM 21   THE COMPANY TO DO AT THAT POINT FOR AN IMPORTANT TEST LIKE HCG?

12:11PM 22   A.   FOR ME THE URGENCY WAS TO HAVE AN HCG TEST THAT WAS

12:11PM 23   ACCURATE.

12:11PM 24        THE URGENCY WAS NOT TO PUT IT STRAIGHT BACK ON THE EDISON.

12:12PM 25   Q.   BUT WHEN THERE'S A PROBLEM, YOU WANT TO LOOK INTO THE

12:12PM  1    PROBLEM AND ADDRESS IT; RIGHT?

12:12PM  2    A.   OF COURSE.

12:12PM  3    Q.   OKAY.  LET'S GO UP THE CHAIN.

12:12PM  4         DO YOU SEE THERE MR. BALWANI ACTUALLY FORWARDS THIS TO

12:12PM  5    YOU; RIGHT?

12:12PM  6    A.   YES.

12:12PM  7    Q.   AND HE TELLS YOU THAT HE'S GOING TO CONTINUE TO MONITOR

12:12PM  8    THIS AND MAKE SURE THAT THIS IS PART OF THE CULTURE; RIGHT?

12:12PM  9    A.   YES.

12:12PM 10    Q.   AND HE'S NOT TRYING TO UNDERMINE YOUR AUTHORITY; RIGHT?

12:12PM 11    A.   THAT CALLS FOR SPECULATION.

12:12PM 12    Q.   OKAY.  I DON'T WANT YOU TO SPECULATE.

12:12PM 13    A.   OKAY.

12:12PM 14    Q.   YOU ACKNOWLEDGE IT AND SAY IT MAKES SENSE.

12:12PM 15         SO WERE YOU SPECULATING AT THAT TIME?  LET'S GO UP THE

12:12PM 16    CHAIN.

12:12PM 17         DOES THIS HELP INFORM YOUR VIEW AS TO WHETHER

12:12PM 18    MR. BALWANI'S VIEW MADE SENSE?

12:12PM 19    A.   I'M AGREEING WITH THE SENTIMENT THAT HE'S EXPRESSING AT

12:12PM 20    THAT TIME, YES.

12:12PM 21    Q.   OKAY.  LET'S GO TO 13875.

12:13PM 22         DO YOU HAVE THAT IN FRONT OF YOU, SIR?

12:13PM 23    A.   YES.

12:13PM 24    Q.   DO YOU SEE THIS IS ANOTHER EMAIL DURING THAT SAME TIME

12:13PM 25    PERIOD ON HCG ISSUES?

12:13PM 1    A.    YES.

12:13PM 2              MR. WADE:  OKAY.  MOVE THE ADMISSION OF 13875.

12:13PM 3              MR. BOSTIC:  NO OBJECTION.

12:13PM 4              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:13PM 5         (DEFENDANT'S EXHIBIT 13875 WAS RECEIVED IN EVIDENCE.)

12:13PM 6              MR. WADE:  LET'S GO TO THE BOTTOM.

12:13PM 7    Q.    AND THIS IS AN EMAIL FROM YOU TO MR. BALWANI AND

12:13PM 8    DR. YOUNG; RIGHT?

12:13PM 9    A.    YES.

12:13PM 10   Q.    AND YOU KNOW FROM MR. BALWANI THAT THE THREE OF YOU HAD

12:14PM 11   DISCUSSED THE PLAN FOR HCG.

12:14PM 12        DO YOU SEE THAT?

12:14PM 13   A.    YES.

12:14PM 14   Q.    OKAY.  AND THEY TALK ABOUT THE WORK THAT IS BEING DONE TO

12:14PM 15   TRY TO FIGURE OUT THAT ASSAY?

12:14PM 16   A.    YES.

12:14PM 17   Q.    AND YOU'RE TALKING ABOUT THAT?

12:14PM 18   A.    YES.

12:14PM 19   Q.    OKAY.  BECAUSE YOU WERE IN THE LOOP THERE NOW; RIGHT?

12:14PM 20   A.    YES.

12:14PM 21   Q.    AND YOU SAY DOWN ON THE BOTTOM THAT YOU'RE GOING TO CHANGE

12:14PM 22   HCG TO A VACUTAINER AND RUN IT ON THE IMMULITE; RIGHT?

12:14PM 23   A.    CORRECT.

12:14PM 24   Q.    AND THAT'S THE PREDICATE DEVICE?

12:14PM 25   A.    CORRECT.

12:14PM   1      Q.   RIGHT?

12:14PM   2           AND THEN YOU'RE GOING TO HOLD THE EDISON ORDERS AND CALL

12:14PM   3      FOR A REDRAW AS NEEDED; RIGHT?

12:14PM   4      A.   CORRECT.

12:14PM   5      Q.   OKAY.  WHILE YOU'RE LOOKING AT THIS?

12:14PM   6      A.   CORRECT.

12:14PM   7      Q.   OKAY.  LET'S GO UP THE CHAIN.

12:14PM   8           AND THEN DR. YOUNG NOTES WE'RE GOING TO ALSO REPEAT THE

12:14PM   9      IQP STUDY TODAY?

12:15PM  10      A.   YES.

12:15PM  11      Q.   AND THAT'S THE PRIOR STUDY WE HAVE SEEN IN SOME EMAILS?

12:15PM  12      A.   YES.

12:15PM  13      Q.   AND TO TEST THE ACCURACY OF THE HCG ASSAY?

12:15PM  14      A.   YES.

12:15PM  15      Q.   OKAY.  AND THEY'RE WORKING ON THAT TODAY?

12:15PM  16      A.   YES.

12:15PM  17      Q.   WHICH WAS WEDNESDAY, JUNE 4TH, 2014; RIGHT?

12:15PM  18      A.   YES.

12:15PM  19      Q.   OKAY.  AND YOU'RE IN THE LOOP ON THIS; CORRECT?

12:15PM  20      A.   YES, YES.

12:15PM  21      Q.   OKAY.  LET'S GO TO 12660.

12:15PM  22      A.   OKAY.

12:15PM  23      Q.   DO YOU HAVE THAT IN FRONT OF YOU?

12:15PM  24      A.   YES.

12:15PM  25      Q.   AND DO YOU SEE THAT THIS IS ANOTHER EMAIL ON HCG TESTING

12:15PM   1      IN THIS SAME TIME PERIOD?

12:15PM   2      A.   YES.

12:15PM   3      Q.   WITH PEOPLE IN THE CLIA LAB?

12:15PM   4      A.   YES.

12:15PM   5              MR. WADE:  MOVE THE ADMISSION OF 12660.

12:15PM   6              MR. BOSTIC:  NO OBJECTION.

12:15PM   7              THE WITNESS:  I'M NOT ON THE EMAIL BY THE WAY.

12:15PM   8              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:16PM   9          (DEFENDANT'S EXHIBIT 12660 WAS RECEIVED IN EVIDENCE.)

12:16PM   10     BY MR. WADE:

12:16PM   11     Q.   LET'S GO TO THE BOTTOM.  DO YOU SEE THE LAST EMAIL

12:16PM   12     ACTUALLY ON THE BOTTOM OF THE SECOND PAGE?

12:16PM   13     A.   YES.

12:16PM   14     Q.   THIS IS THE EMAIL WHERE YOU'RE HOLDING THE RESULTS.

12:16PM   15          DO YOU SEE THAT?

12:16PM   16     A.   YES.

12:16PM   17     Q.   AND LET'S GO UP TO THE EMAIL JUST ABOVE IT THAT SAYS, "HI

12:16PM   18     ADAM," FROM HODA?

12:16PM   19     A.   YES.

12:16PM   20     Q.   AND IT SAYS THAT SHE SEES SOME RESULTS IN LIS FOR HCG FROM

12:16PM   21     EDISON.

12:16PM   22          DO YOU SEE THAT?

12:16PM   23     A.   YES.

12:16PM   24     Q.   AND SHE'S WONDERING IF THEY CAN BE RELEASED OR IF THEY

12:16PM   25     NEED TO BE SWITCHED.

12:16PM  1              DO YOU SEE THAT?

12:16PM  2      A.   YES.

12:16PM  3      Q.   OKAY.  LET'S GO UP THE CHAIN.  THIS IS THEN FORWARDED

12:17PM  4      TO -- MR. BALWANI IS ON THE CHAIN.  I THINK MAYBE HE GETS THE

12:17PM  5      CLS EMAILS?

12:17PM  6      A.   I HAVE NO IDEA.

12:17PM  7      Q.   OKAY.  LET'S GO TO THE EMAIL ABOVE THAT FROM DR. YOUNG.

12:17PM  8              OKAY.  AND HE REPORTS TO MR. BALWANI AND MR. PANGARKAR

12:17PM  9      THAT HE WAS JUST SPEAKING WITH YOU ABOUT THIS AND THAT YOU'RE

12:17PM  10     GOING TO HOLD THE RESULT UNTIL THE STUDY WE ARE RUNNING ON THE

12:17PM  11     EDISON ASSAY IS DONE.

12:17PM  12             DO YOU SEE THAT?

12:17PM  13     A.   YES.

12:17PM  14     Q.   AND THAT THE DATA SHOULD BE READY TONIGHT.  EVERYONE WAS

12:17PM  15     WORKING HARD TO GET THAT STUDY DONE; RIGHT?

12:17PM  16     A.   YES.

12:17PM  17     Q.   OKAY.  AND LET'S -- AND THAT'S -- IF YOU GO UP TO THE TOP,

12:17PM  18     YOU CAN SEE WITH MR. PANGARKAR'S EMAIL THAT THAT'S THAT IQP AAP

12:17PM  19     LIKE STUDY FOR A HCG?

12:18PM  20     A.   I'M NOT SURE REALLY WHAT WAS ENTAILED IN THE IQP.

12:18PM  21     Q.   OKAY.  DO YOU SEE THERE IT SAYS THAT THE LAST IQP WAS

12:18PM  22     PERFORMED ON 5-6 AND DEMONSTRATED GOOD CONCORDANCE?

12:18PM  23             DO YOU SEE THAT?

12:18PM  24     A.   YES, ACCORDING TO CHINMAY.

12:18PM  25     Q.   AND THAT SUGGESTS THE RESULTS ARE GOOD?

12:18PM  1    A.   NO.  CHINMAY IS MAKING AN ASSERTION ABOUT THE RESULTS

12:18PM  2    BEING GOOD.

12:18PM  3    Q.   I UNDERSTAND.

12:18PM  4         DO YOU RECALL THE RESULTS FROM THE IQP THAT WAS DONE IN

12:18PM  5    THIS TIME PERIOD ON HCG?

12:18PM  6    A.   NO, I DO NOT.

12:18PM  7    Q.   LET'S GO NEXT TO 13876.

12:19PM  8         DO YOU HAVE THAT EMAIL IN FRONT OF YOU?

12:19PM  9    A.   YES.

12:19PM  10   Q.   AND THAT'S ANOTHER EMAIL ON HCG; CORRECT?

12:19PM  11   A.   YES.

12:19PM  12   Q.   AND THAT'S ON MID-JUNE 2014?

12:19PM  13   A.   YES.

12:19PM  14             MR. WADE:  I MOVE THE ADMISSION OF 13876.

12:19PM  15             MR. BOSTIC:  NO OBJECTION.

12:19PM  16             THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

12:19PM  17        (DEFENDANT'S EXHIBIT 13876 WAS RECEIVED IN EVIDENCE.)

12:19PM  18             MR. WADE:  LET'S GO TO THE BOTTOM OF THE FIRST PAGE

12:19PM  19   AND IT CARRIES OVER.

12:19PM  20   Q.   DO YOU SEE THIS IS JUNE 16TH, 2014, AT 10:30 OR SO?

12:19PM  21   A.   YES.

12:19PM  22   Q.   OKAY.  AND THAT CARRIES OVER TO THE SECOND PAGE.  LET'S

12:19PM  23   LOOK AT THE SUBSTANCE OF THE EMAIL.  YOU ASK FOR A STATUS

12:19PM  24   UPDATE ON THE HCG ON THE EDISON; RIGHT?

12:20PM  25   A.   YES.

12:20PM  1      Q.   BECAUSE THERE WERE EFFORTS BEING MADE TO FIGURE OUT

12:20PM  2      GETTING IT BACK ON LINE.

12:20PM  3           DO YOU RECALL THAT, THE STUDIES?

12:20PM  4      A.   YES.

12:20PM  5      Q.   AND LET'S GO UP THE CHAIN.

12:20PM  6           IT THEN SAYS, "BASED ON REPORTS SINCE FRIDAY, WE HAVE BEEN

12:20PM  7      CONSISTENTLY PASSING QC -- SO WE DON'T HAVE A PROBLEM WITH THE

12:20PM  8      CURRENT BUILD."

12:20PM  9           DO YOU SEE THAT?

12:20PM  10     A.   YES.

12:20PM  11     Q.   AND THAT MEANS THAT THE CURRENT BUILD IS THE CARTRIDGE

12:20PM  12     BUILD?

12:20PM  13     A.   I DON'T RECALL.

12:20PM  14     Q.   OKAY.  THE QC IS BEING DONE ON DEVICES THAT ARE RUNNING

12:20PM  15     WITHIN THE CLIA LAB; RIGHT?

12:20PM  16     A.   I DON'T KNOW ACTUALLY.  HE'S SAYING THAT IT'S CONSISTENTLY

12:20PM  17     PASSING QC.

12:20PM  18          I DON'T KNOW IF HE'S RUNNING QC ON EDISONS, WHERE THOSE

12:20PM  19     EDISONS ARE, IF THEY'RE IN THE CLIA LAB, IF THEY'VE BEEN

12:20PM  20     QUALIFIED IN THE CLIA LAB.  I HAVE NO IDEA WHAT EDISONS HE'S

12:20PM  21     RUNNING THIS QC ON.

12:20PM  22     Q.   LET'S WORK UP THE CHAIN.  YOU RESPOND AND SAY, "GREAT

12:20PM  23     THANKS."

12:20PM  24          DO YOU SEE THAT?

12:20PM  25     A.   YES.

12:20PM   1    Q.   AND LET'S GRAB THE REST OF THE EMAILS FROM THE TOP.  IT

12:21PM   2    SAYS, "IN PARALLEL, A NEW BUILD HAS ALSO BEEN PLANNED AND IS ON

12:21PM   3    HIGH PRIORITY."

12:21PM   4        DO YOU SEE THAT?

12:21PM   5    A.   YES.

12:21PM   6    Q.   AND THEY'RE WORKING ON ANOTHER ONE.

12:21PM   7        AND YOU ASK "SO HCG IS BACK ON VACUTAINERS."

12:21PM   8        DO YOU SEE THAT?

12:21PM   9    A.   YES.

12:21PM  10    Q.   AND IF IT WAS BACK ON VACUTAINERS, THAT WOULD MEAN IT

12:21PM  11    WOULD HAVE TO GO OFF OF THE EDISON AND BACK ON THE VACUTAINERS;

12:21PM  12    RIGHT?

12:21PM  13    A.   YES.

12:21PM  14    Q.   AND THAT SUGGESTS IT WAS ON EDISON DURING THIS TIME

12:21PM  15    PERIOD; RIGHT?

12:21PM  16    A.   I DON'T KNOW.

12:21PM  17    Q.   WELL, LET'S LOOK AT THE TOP EMAIL.

12:21PM  18        MR. BALWANI MAKES CLEAR IT WAS ACTUALLY ON THE NANOTAINERS

12:21PM  19    WHICH WERE BEING USED ON THE EDISON DEVICE DURING THIS TIME

12:21PM  20    PERIOD, DOES IT NOT?

12:21PM  21    A.   WELL, THAT'S HIS ASSERTION.

12:21PM  22    Q.   OKAY.  DID YOU DO ANY FOLLOWUP TO SEE WHETHER THIS WAS THE

12:21PM  23    CASE IN THIS PERIOD?

12:21PM  24    A.   NO, I WASN'T POLICE -- I MADE A DECISION THAT HCG SHOULD

12:22PM  25    BE ON VACUTAINERS.  I ASSUMED THAT WAS BEING FOLLOWED ON.  I

12:22PM   1        DIDN'T DO ANY POLICING ON MY OWN OF THIS.

12:22PM   2        Q.   SIR, YOU WERE ACTIVELY INVOLVED IN THE RESEARCH AND

12:22PM   3        DEVELOPMENT WORK THAT WAS BEING DONE ON THAT AND THE

12:22PM   4        INVESTIGATION THAT WAS BEING DONE TO WORK TO GET THE EDISON

12:22PM   5        ASSAY BACK ONLINE; RIGHT?

12:22PM   6        A.   I WAS INFORMED OF THE INVESTIGATION EFFORTS, YES.

12:22PM   7        Q.   YEAH.  AND YOU'RE ASKING QUESTIONS AND THEY'RE TELLING YOU

12:22PM   8        IN THIS EMAIL THAT IT'S BACK ON THE EDISON DEVICE, ARE THEY

12:22PM   9        NOT, SIR?

12:22PM   10       A.   THAT'S WHAT SUNNY IS SAYING, YES.

12:22PM   11       Q.   OKAY.  YOU'RE BEING TOLD AT THIS TIME IT'S BACK ON THE

12:22PM   12       EDISON DEVICE?

12:22PM   13       A.   YES.

12:22PM   14       Q.   LET'S GO TO 13877.

12:23PM   15            DO YOU HAVE THAT IN FRONT OF YOU?

12:23PM   16       A.   13877?

12:23PM   17       Q.   CORRECT.

12:23PM   18       A.   I HAVE THAT.

12:23PM   19       Q.   YOU HAVE THAT IN FRONT OF YOU?

12:23PM   20       A.   YES.

12:23PM   21       Q.   AND THAT'S ANOTHER EMAIL ON HCG IN JUNE OF 2014?

12:23PM   22       A.   YES.

12:23PM   23            MR. WADE:  MOVE THE ADMISSION OF 13877.

12:23PM   24            MR. BOSTIC:  NO OBJECTION.

12:23PM   25            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:23PM  1          (DEFENDANT'S EXHIBIT 13877 WAS RECEIVED IN EVIDENCE.)

12:23PM  2               MR. WADE:  AND IF WE CAN JUST BLOW UP THE TOP THIRD

12:23PM  3     OR SO.

12:23PM  4     Q.   THIS IS AN EMAIL FROM MAX FOSQUE TO A GROUP OF PEOPLE

12:23PM  5     WITHIN THE CLIA LAB.

12:23PM  6          DO YOU SEE THAT?

12:23PM  7     A.   YES.

12:23PM  8     Q.   AND THAT INCLUDES YOU.  DO YOU SEE THAT?

12:23PM  9     A.   YES.

12:23PM  10    Q.   AND THIS IS DISCUSSING THE USE OF THE EDISON DEVICE IN THE

12:23PM  11    CLIA LAB?

12:23PM  12    A.   YES.

12:23PM  13    Q.   IN JUNE 18TH, 2014?

12:24PM  14    A.   YES.

12:24PM  15    Q.   AND THAT'S AFTER YOUR HOLD; CORRECT?

12:24PM  16    A.   CORRECT.

12:24PM  17    Q.   LET'S GO TO 13878.  THAT'S ANOTHER EMAIL ABOUT HCG ON THE

12:24PM  18    EDISON DEVICE; CORRECT?

12:24PM  19    A.   YES.

12:24PM  20               MR. WADE:  I WOULD MOVE 13878.

12:24PM  21               MR. BOSTIC:  NO OBJECTION.

12:24PM  22               THE COURT:  IT'S ADMITTED AND MAY BE PUBLISHED.

12:24PM  23          (DEFENDANT'S EXHIBIT 13878 WAS RECEIVED IN EVIDENCE.)

12:24PM  24    BY MR. WADE:

12:24PM  25    Q.   SIR, THIS EMAIL REFLECTS DISCUSSION ABOUT THE USE OF THE

12:24PM   1    EDISON DEVICE IN THE CLIA LAB IN JULY OF 2014?

12:24PM   2    A.   YES.

12:24PM   3    Q.   I DON'T HAVE ANY OTHER QUESTIONS ON THIS ONE.

12:25PM   4         I HAVE ANOTHER LINE OF HCG QUESTIONING THAT I'D LIKE TO

12:25PM   5    ASK YOU ABOUT SOME OF YOUR TESTIMONY RELATING TO EXHIBIT 4840.

12:25PM   6         IF WE CAN BRING THAT UP.

12:25PM   7         IF WE CAN BLOW UP THE EMAIL IN THE MIDDLE.

12:25PM   8         DO YOU RECALL BEING ASKED QUESTIONS ABOUT THESE EMAILS?

12:25PM   9    A.   YES.

12:25PM  10    Q.   AND IN PARTICULAR I THINK THE GOVERNMENT FOCUSSED YOU --

12:26PM  11    IF YOU LOOK AT THAT BOTTOM EMAIL IT SAYS, "HCG RIGHT NOW IS

12:26PM  12    CAUSING SOME SERIOUS ISSUES AND PATIENT COMPLAINTS."

12:26PM  13         DO YOU SEE THAT?

12:26PM  14    A.   YES, YES.

12:26PM  15    Q.   AND HE SAYS HE'S BEEN SPENDING ALL OF HIS MORNING TALKING

12:26PM  16    TO DOCTORS ABOUT HCG?

12:26PM  17    A.   I SEE THAT.

12:26PM  18    Q.   AND YOU WERE ASKED WHETHER YOU WERE PART OF THE

12:26PM  19    CONVERSATIONS WITH DOCTORS IN THIS TIME PERIOD ON HCG?

12:26PM  20    A.   I DON'T RECALL.

12:26PM  21    Q.   AND DO YOU RECALL BEING QUESTIONED THAT THERE WAS A

12:26PM  22    SUGGESTION THAT THIS WAS A MEDICAL ISSUE AND YOU SHOULD BE, YOU

12:26PM  23    SHOULD BE INVOLVED IN MEDICAL ISSUES; RIGHT?

12:26PM  24         DO YOU RECALL THAT?

12:26PM  25    A.   I DON'T KNOW IF YOU'RE REFERRING TO AN EMAIL OR TO THE

12:27PM 1    GOVERNMENT'S LINE OF QUESTIONING OR WHAT YOU'RE REALLY

12:27PM 2    REFERRING TO RIGHT NOW.

12:27PM 3    Q.   I'M REFERRING TO THE GOVERNMENT'S LINE OF QUESTIONING

12:27PM 4    ABOUT THIS EMAIL.

12:27PM 5    A.   UH-HUH.

12:27PM 6    Q.   AND THEY WERE TRYING TO SUGGEST THAT YOU SHOULD BE

12:27PM 7    INVOLVED IN MEDICAL ISSUES; CORRECT?

12:27PM 8    A.   YES.

12:27PM 9    Q.   AND YOU THOUGHT YOU SHOULD?

12:27PM 10   A.   YES.

12:27PM 11   Q.   AND YOU DIDN'T THINK YOU WERE; CORRECT?

12:27PM 12   A.   YES.

12:27PM 13   Q.   OKAY.  LET'S -- LET ME FOCUS ON THE -- LET ME FOCUS

12:27PM 14   PARTICULARLY ON THAT LAST LINE THERE.  YOU SEE, "IT'S A

12:27PM 15   SENSITIVE ONE OBVIOUSLY B/C OF PEOPLE FINDING OUT IF PREGNANT."

12:27PM 16       DO YOU SEE THAT?

12:27PM 17   A.   YES.

12:27PM 18   Q.   AND THAT'S WHAT -- LET ME START OVER.

12:27PM 19       AN HCG TEST WILL HELP INFORM PEOPLE, A WOMAN IF SHE'S

12:27PM 20   PREGNANT; CORRECT?

12:27PM 21   A.   YES.

12:27PM 22   Q.   LET'S LOOK UP THIS CHAIN.

12:28PM 23       DO YOU RECALL WHAT THE ISSUE WAS THAT MR. HOLMES WAS

12:28PM 24   ADDRESSING HERE WHEN YOU LOOK AT THIS NEXT EMAIL UP HERE?

12:28PM 25       LET'S HIGHLIGHT IT.

12:28PM  1          THERE WERE CAPACITY ISSUES; RIGHT?

12:28PM  2   A.   YES.

12:28PM  3   Q.   NOT MEDICAL ISSUES?

12:28PM  4   A.   YES.

12:28PM  5   Q.   THESE WERE CAPACITY ISSUES; CORRECT?

12:28PM  6   A.   YES.  THAT'S WHAT CHRISTIAN IS SAYING, YES.

12:28PM  7   Q.   OKAY.  AND THAT WAS THE CASE, WAS IT NOT?

12:28PM  8   A.   I CAN EXPLAIN WHY.

12:28PM  9   Q.   I'M JUST ASKING RIGHT NOW.

12:28PM 10   A.   I DON'T RECALL IF THERE WERE CAPACITY ISSUES.  I DON'T

12:28PM 11   RECALL IF THERE WERE CAPACITY ISSUES AT THAT TIME.

12:28PM 12   Q.   OKAY.  AND JUST SO WE'RE CLEAR, THIS IS RAISED AT 2:35.

12:28PM 13        DO YOU SEE THAT?

12:28PM 14   A.   12:35.

12:28PM 15   Q.   I'M SORRY, 12:35.

12:29PM 16   A.   YES.

12:29PM 17   Q.   THANK YOU.  AND DO YOU SEE MS. HOLMES RESPONDS THAT SHE

12:29PM 18   WILL RESPOND WITHIN A HALF HOUR AND SAY SHE'LL CONNECT AS SOON

12:29PM 19   AS SHE'S OUT; RIGHT?

12:29PM 20   A.   YES.

12:29PM 21   Q.   AND 30 MINUTES.  DO YOU CONSIDER THAT A PROMPT RESPONSE?

12:29PM 22   A.   YES.

12:29PM 23   Q.   OKAY.  LET'S JUST GO UP TO THE TOP AGAIN BECAUSE I THINK

12:29PM 24   MAYBE YOU WERE ASKING ABOUT THIS PIECE OF AN EMAIL.  SAME

12:29PM 25   DOCUMENT.

12:29PM   1          LET'S BLOW UP THAT TOP EMAIL.

12:29PM   2          AND IT TALKS ABOUT HOW MR. HOLMES HAD JUST SPOKE WITH ONE

12:29PM   3    OF THE PATIENT'S HUSBANDS AND THE DOCTOR.

12:29PM   4          DO YOU SEE THAT?

12:30PM   5    A.   YES.

12:30PM   6    Q.   AND THAT DOCTOR HAD APPARENTLY SENT SEVERAL PEOPLE THERE?

12:30PM   7    A.   YES.

12:30PM   8    Q.   OVER FOUR DAYS; RIGHT?

12:30PM   9    A.   YES, YES.

12:30PM  10    Q.   AND ORIGINALLY HE SAID HE WON'T SEND US ANY MORE PATIENTS

12:30PM  11    BECAUSE WE'VE HAD ISSUES WITH ALL THREE; RIGHT?

12:30PM  12    A.   YES.

12:30PM  13    Q.   AND THE ISSUES WITH ALL THREE WERE THAT THE RESPONSES WERE

12:30PM  14    NOT COMING BACK; RIGHT?

12:30PM  15    A.   I DON'T KNOW IF THE ISSUES WERE ACCURACY OR TURNAROUND

12:30PM  16    TIME.

12:30PM  17    Q.   OKAY.  WELL, LET'S TAKE A LOOK AT THE LAST CHAIN IN THE

12:30PM  18    EMAIL, THE LAST TWO EMAILS ON THE BOTTOM OF PAGE 3.

12:30PM  19          AND I DON'T THINK THE GOVERNMENT SHOWED YOU THESE.

12:30PM  20          OKAY.  NOW, THESE ARE EMAILS FROM THE CUSTOMER SERVICE

12:30PM  21    FOLKS; RIGHT?

12:30PM  22    A.   YES.

12:30PM  23    Q.   AND BOTH OF THESE EMAILS TALK ABOUT DOCTORS CALLING

12:30PM  24    LOOKING FOR RESULTS; RIGHT?

12:31PM  25    A.   YES.

12:31PM   1    Q.   NOT COMPLAINING ABOUT INACCURATE RESULTS, BUT LOOKING FOR

12:31PM   2    RESULTS?

12:31PM   3    A.   CORRECT.

12:31PM   4    Q.   BECAUSE THEY HAD NOT GOTTEN THE RESULTS BACK; RIGHT?

12:31PM   5    A.   YES, THAT'S WHAT IT LOOKS LIKE.

12:31PM   6    Q.   OKAY.  NOW LET'S GO BACK UP TO THE TOP EMAIL.

12:31PM   7         AND DO YOU RECALL THAT THAT IS WHAT MR. HOLMES WAS TALKING

12:31PM   8    ABOUT IN THIS TIME PERIOD?

12:31PM   9         MAYBE IF WE LOOK AT THAT SECOND PARAGRAPH IT WILL HELP.

12:31PM  10    DO YOU SEE THERE IT SAYS, "AS FOR CURRENT STATUS OF HCG, WE ARE

12:31PM  11    WORKING IN PARALLEL TO RUN SAMPLE ON EDISON AS WELL AS

12:31PM  12    IMMULITE.  BUT WE FOUND OUT THIS MORNING THAT REAGENTS FOR

12:31PM  13    IMMULITE ARE ON ORDER AND BACK ORDERED."

12:31PM  14         DO YOU SEE THAT?

12:31PM  15    A.   UH-HUH, UH-HUH.

12:31PM  16    Q.   AND SO THIS HCG ISSUE WAS A BACKLOG ISSUE.

12:31PM  17         DO YOU RECALL THAT?

12:31PM  18    A.   I DON'T RECALL.  I DON'T RECALL FROM 2,000, NO, I DON'T

12:31PM  19    RECALL THAT.

12:32PM  20    Q.   OKAY.  DO YOU RECALL THAT THERE WERE PATIENTS THAT WERE

12:32PM  21    WAITING TO GET THE RESULTS AND THAT THAT WAS THE PROBLEM?

12:32PM  22    A.   I'M READING THAT FROM THE EMAIL THAT YOU'RE SHOWING ME,

12:32PM  23    YES.

12:32PM  24    Q.   WELL, LET'S SEE IF WE CAN HELP YOU REFRESH.  LET'S LOOK AT

12:32PM  25    13881.

| | | |
|---|---|---|
| 12:32PM | 1 | A.   OKAY. |
| 12:32PM | 2 | Q.   AND THIS IS AN EMAIL WITH VARIOUS PEOPLE IN THE CHAIN, THE |
| 12:32PM | 3 | SUBJECT OF WHICH IS INVENTORY; CORRECT? |
| 12:32PM | 4 | A.   YES. |
| 12:32PM | 5 | Q.   AND IT RELATES TO REAGENT INVENTORY; CORRECT? |
| 12:32PM | 6 | A.   YES. |
| 12:33PM | 7 | Q.   WITHIN THE CLIA LAB? |
| 12:33PM | 8 | A.   YES. |
| 12:33PM | 9 | Q.   FOR A NON-THERANOS MACHINE; RIGHT? |
| 12:33PM | 10 | A.   YES. |
| 12:33PM | 11 | MR. WADE:  OKAY.  MOVE THE ADMISSION OF 13881. |
| 12:33PM | 12 | MR. BOSTIC:  NO OBJECTION. |
| 12:33PM | 13 | THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED. |
| 12:33PM | 14 | (DEFENDANT'S EXHIBIT 13881 WAS RECEIVED IN EVIDENCE.) |
| 12:33PM | 15 | BY MR. WADE: |
| 12:33PM | 16 | Q.   OKAY.  LET'S GO TO THE END. |
| 12:33PM | 17 | SO THIS IS MR. BALWANI FOLLOWING UP ON THAT IMMULITE |
| 12:33PM | 18 | REAGENT ISSUE THAT WAS MENTIONED BY MS. HOLMES; CORRECT? |
| 12:34PM | 19 | A.   YES. |
| 12:34PM | 20 | Q.   AND HE'S SAYING -- HE'S ASKING WHAT IS HAPPENING; RIGHT? |
| 12:34PM | 21 | A.   YES. |
| 12:34PM | 22 | Q.   AND HE'S ASKING WHO WAS RESPONSIBLE BECAUSE HE JUST |
| 12:34PM | 23 | DISCOVERED THAT YOU RAN OUT OF HCG REAGENT FOR THE IMMULITE; |
| 12:34PM | 24 | RIGHT? |
| 12:34PM | 25 | A.   YES. |

12:34PM   1      Q.   AND THAT'S A PROBLEM BECAUSE IT'S CREATING A BACKLOG;

12:34PM   2      RIGHT?

12:34PM   3      A.   YES.

12:34PM   4      Q.   OKAY.  AND WHO IS RESPONSIBLE FOR ENSURING THAT THERE ARE

12:34PM   5      REAGENTS WITHIN THE CLIA LAB?

12:34PM   6      A.   A SUPERVISOR.

12:34PM   7      Q.   OKAY.

12:34PM   8      A.   OR A CLS, SOMETHING LIKE THAT.

12:34PM   9      Q.   OKAY.  SOMEONE UNDER YOUR GROUP?

12:34PM  10      A.   YES.

12:34PM  11      Q.   OKAY.  AND IF WE JUST GO UP THE CHAIN.

12:34PM  12           AND IF WE HAVE THE CHAIN -- I'M SORRY, YOU HAD THE RIGHT

12:35PM  13      EMAIL, MR. BENNETT.

12:35PM  14           YOU PROVIDED CLARIFICATION FOR MR. BALWANI ON WHY THERE

12:35PM  15      WAS THIS HCG BACKLOG IN THE CLIA LAB ON THE IMMULITE; RIGHT?

12:35PM  16      A.   YES.

12:35PM  17      Q.   AND YOU NOTE WHOSE RESPONSIBILITY IT WAS; RIGHT?

12:35PM  18      A.   YES.

12:35PM  19      Q.   OKAY.  JUST SO WE'RE CLEAR, THIS HAD NOTHING TO DO WITH

12:35PM  20      THE EDISON DEVICE, THIS WAS AN IMMULITE ISSUE?

12:35PM  21      A.   CORRECT.

12:35PM  22      Q.   AND A SUPPLY OR INVENTORY ISSUE; RIGHT?

12:35PM  23      A.   CORRECT.

12:35PM  24      Q.   AND LET'S GO UP JUST TO THE TOP EMAIL.  THIS IS AN EMAIL

12:35PM  25      WHERE YOU'RE HAVING A DISCUSSION WITH MR. BALWANI ABOUT ONE OF

12:35PM  1    YOUR SUBORDINATES; RIGHT?

12:36PM  2    A.  CORRECT.

12:36PM  3    Q.  AND ABOUT SOME CHALLENGES THAT YOU WERE HAVING IN

12:36PM  4    MANAGEMENT OF THAT SUBORDINATE; CORRECT?

12:36PM  5    A.  YES.

12:36PM  6    Q.  AND TALKING THROUGH WITH YOUR SUPERVISOR WAYS IN WHICH YOU

12:36PM  7    MIGHT WORK TO IMPROVE THAT; IS THAT FAIR?

12:36PM  8    A.  YES, YES.

12:36PM  9    Q.  OKAY.  AND THAT'S A PERFECTLY APPROPRIATE CONVERSATION TO

12:36PM  10   HAVE WITH TWO MORE SENIOR PEOPLE ABOUT A SUBORDINATE; IS IT

12:36PM  11   NOT?

12:36PM  12   A.  IN MY -- YES, IN MY OPINION.

12:36PM  13   Q.  OKAY.  I DON'T HAVE ANY MORE QUESTIONS ON THAT TOPIC, SIR.

12:37PM  14       I'D LIKE TO ASK YOU A FEW QUESTIONS, SIR, ABOUT WHAT I'M

12:37PM  15   GOING TO REFER TO AS THE SIXTH TIP POLICY.  OKAY?

12:37PM  16   A.  OKAY.

12:37PM  17   Q.  NOW, THE EDISON DEVICES HAD SIX TIPS THAT HAD RAN IN ORDER

12:37PM  18   TO PERFORM ON EACH INDIVIDUAL BLOOD SAMPLE; IS THAT CORRECT?

12:37PM  19   A.  NOT ORIGINALLY.  THE ORIGINAL EDISON DEVICES HAD THREE

12:37PM  20   TIPS.

12:37PM  21   Q.  IT HAD THREE TIPS?

12:37PM  22   A.  CORRECT.

12:37PM  23   Q.  AND THEN IT WAS MODIFIED IN EARLY 2014 TO USE SIX TIPS;

12:37PM  24   RIGHT?

12:37PM  25   A.  I BELIEVE SO.

ROSENDORFF CROSS BY MR. WADE (RES.)

12:37PM   1   Q.   AND DO YOU RECALL THAT -- AND JUST SO THE JURY IS CLEAR,

12:38PM   2   EACH OF THOSE TIPS ESSENTIALLY DELIVERS A RESULT; CORRECT?  OR

12:38PM   3   WHY DON'T YOU EXPLAIN TO US HOW EACH OF THOSE SIX TIPS OPERATE

12:38PM   4   WITHIN THE EDISON?

12:38PM   5   A.   YEAH.  THOSE TIPS ARE -- I DON'T WANT TO GET TOO

12:38PM   6   TECHNICAL, BUT THE TIPS ARE COATED WITH ANTIBODIES.  EACH TIP

12:38PM   7   IS EXPOSED TO THE PATIENT SAMPLE.  THE ANTIBODIES BIND TO THE

12:38PM   8   ANALYTE, AND THEN A SECONDARY ANTIBODY DETECTS THE PRIMARY

12:38PM   9   ANTIBODY.  THE SECONDARY ANTIBODY IS CONJUGATED TO A

12:38PM  10   CHLOROPHYLL, WHICH IS FLUORESCENT.  EACH TIP GIVES OUT A

12:38PM  11   SIGNAL.  THERE ARE DIFFERENT CONFIGURATIONS.  I WON'T GO INTO

12:39PM  12   THAT WHETHER IT'S A COMPETITIVE ELISA OR A DIRECT OR INDIRECT.

12:39PM  13   AND ESSENTIALLY EACH TIP REPORTS OUT A RESULT IN A RELATIVE

12:39PM  14   LIGHT UNITS AND IN CONCENTRATION.

12:39PM  15   Q.   AND SO YOU HAVE SIX RESULTS FOR ONE SAMPLE; CORRECT?

12:39PM  16   A.   CORRECT.

12:39PM  17   Q.   AND THAT'S FOR A SINGLE ASSAY?

12:39PM  18   A.   CORRECT.

12:39PM  19   Q.   AND ACTUALLY FOR EACH ASSAY; CORRECT?

12:39PM  20   A.   CORRECT.

12:39PM  21   Q.   AND UNDER THE POLICY THAT THE COMPANY ADOPTED AFTER IT

12:39PM  22   MOVED TO THE SIXTH TIP POLICY OR THE SIXTH TIP FORMAT?

12:39PM  23   A.   YES.

12:39PM  24   Q.   TWO RESULTS OF THOSE SIX TIPS COULD BE DISCARDED AND THEN

12:39PM  25   THE REMAINING FOUR RESULTS FROM THE FOUR OTHER TIPS WOULD BE

12:39PM   1    AVERAGE TO PRODUCE THE RESULT; CORRECT?

12:40PM   2    A.   CORRECT.

12:40PM   3    Q.   OKAY.  AND I UNDERSTAND THAT THIS PRACTICE WHERE YOU MOVED

12:40PM   4    TO AN AVERAGE FOUR WAS SOMETHING THAT WAS DEVELOPED BY

12:40PM   5    DR. YOUNG; IS THAT CORRECT?

12:40PM   6    A.   CORRECT.

12:40PM   7    Q.   AND I UNDERSTAND THAT WAS SOMETHING THAT YOU APPROVED;

12:40PM   8    CORRECT?

12:40PM   9    A.   THERE WAS NO FORMAL PROCEDURE SOP REGARDING -- OR POLICY

12:40PM   10   REQUIRING ASSAY DETECTION.  I WAS TOLD BY DANIEL THAT THERE WAS

12:40PM   11   AN ALGORITHM INSIDE THE 3.5 THAT WOULD DO THOSE AUTOMATICALLY.

12:40PM   12   Q.   RIGHT.  BECAUSE INITIALLY IT WAS DONE MANUALLY BEFORE IT

12:40PM   13   WAS AUTOMATED; RIGHT?

12:40PM   14   A.   I BELIEVE SO.

12:40PM   15   Q.   AND THEN THAT POLICY OF AVERAGING THE FOUR AND REMOVING

12:40PM   16   THE TWO WAS AUTOMATED, YOU UNDERSTAND, WITHIN THE ALGORITHM;

12:41PM   17   RIGHT?

12:41PM   18   A.   YES.

12:41PM   19   Q.   AND YOU KNEW THAT WAS GOING TO HAPPEN?

12:41PM   20   A.   YES.

12:41PM   21   Q.   AND THAT WASN'T A SECRET; RIGHT?

12:41PM   22   A.   DANIEL TOLD ME THAT'S WHAT WAS GOING TO HAPPEN.

12:41PM   23   Q.   AND YOU APPROVED OF THAT; CORRECT?

12:41PM   24   A.   I THOUGHT IT WAS REASONABLE, YES.

12:41PM   25   Q.   OKAY.  WELL, DO YOU RECALL --

12:41PM  1    A.   I THOUGHT IT WAS UNUSUAL.  I HADN'T REALLY HEARD OF THIS

12:41PM  2    BEING DONE BEFORE.

12:41PM  3    Q.   RIGHT.  DO YOU RECALL THAT YOU WERE ASKED IF THAT WAS

12:41PM  4    SOMETHING THAT YOU APPROVED IN YOUR DEPOSITION AND YOU SAID

12:41PM  5    YES?

12:41PM  6    A.   YES.

12:41PM  7    Q.   OKAY.  AND DOES THAT REMAIN TRUE TODAY?

12:41PM  8    A.   YES.

12:41PM  9    Q.   OKAY.  AND OTHER SCIENTISTS IN THE LAB APPROVED OF IT AS

12:41PM  10   WELL; CORRECT?

12:41PM  11   A.   I DON'T KNOW.

12:41PM  12   Q.   DO YOU RECALL IN YOUR DEPOSITION THAT YOU WERE ASKED THAT

12:41PM  13   OTHER SCIENTISTS IN THE LAB APPROVED AS WELL, CORRECT, AND YOU

12:41PM  14   SAID YES?

12:41PM  15   A.   I SUPPOSE SO.  I DON'T RECALL EVERY WORD OF MY DEPOSITION,

12:42PM  16   NO.

12:42PM  17   Q.   OKAY.  DR. PANDORI APPROVED OF IT; RIGHT?

12:42PM  18   A.   I DON'T KNOW.

12:42PM  19   Q.   YOU RECALL IN YOUR DEPOSITION THAT YOU SAID THAT

12:42PM  20   DR. PANDORI APPROVED OF IT?

12:42PM  21   A.   I DON'T KNOW.

12:42PM  22   Q.   WHY DON'T WE TAKE A LOOK.  THIS IS GOING TO BE DX 11000.

12:43PM  23        THE COURT:  IS THIS TO REFRESH A WITNESS'S

12:43PM  24   RECOLLECTION?

12:43PM  25        MR. WADE:  IT IS, YOUR HONOR.  IT'S IN ONE OF THE

12:43PM  1    YELLOW BINDERS.  IT'S YOUR DEPOSITION TESTIMONY FROM ARIZONA.

12:43PM  2            THE WITNESS:  OH, I THOUGHT WE WERE TALKING ABOUT MY

12:43PM  3    TESTIMONY YESTERDAY WITH THE GOVERNMENT.  I'M SORRY.  I

12:43PM  4    MISUNDERSTOOD WHAT YOU WERE REFERRING TO.

12:43PM  5    BY MR. WADE:

12:43PM  6    Q.   OKAY.  LET ME TRY AGAIN.

12:43PM  7         DO YOU RECALL TESTIFYING IN YOUR DEPOSITION IN ARIZONA

12:43PM  8    UNDER OATH; CORRECT?

12:43PM  9    A.   YES.

12:43PM  10   Q.   AND YOU RAISED YOUR HAND AND AGREED TO TELL THE TRUTH?

12:43PM  11   A.   YES.

12:43PM  12   Q.   OKAY.  AND DO YOU RECALL BEING ASKED WHETHER DR. PANDORI

12:43PM  13   APPROVED OF THIS AND YOU ANSWERED YES?

12:43PM  14   A.   I HONESTLY DON'T RECALL WHAT WAS DISCUSSED IN THE

12:43PM  15   DEPOSITION.  I CAN READ THROUGH THE TRANSCRIPT.

12:43PM  16   Q.   IF YOU COULD DRAW YOUR ATTENTION TO PAGE 228, LINES 18 TO

12:44PM  17   22 AND READ THEM TO YOURSELF, AND LET ME KNOW WHEN YOU'RE DONE,

12:44PM  18   DOCTOR.

12:44PM  19            (PAUSE IN PROCEEDINGS.)

12:44PM  20            THE WITNESS:  I'VE READ IT.

12:44PM  21   BY MR. WADE:

12:44PM  22   Q.   OKAY.  DOES THAT REFRESH YOUR RECOLLECTION THAT YOU

12:44PM  23   TESTIFIED THAT DR. PANDORI APPROVED OF THIS PRACTICE AS WELL?

12:44PM  24   A.   AS I SAID, I DON'T HAVE AN INDEPENDENT RECOLLECTION OF MY

12:44PM  25   DEPOSITION.  I'M JUST READING THE CONTENT, AND THAT'S WHAT IT

12:44PM   1    SAYS, YES.

12:44PM   2    Q.   AND DOES THAT REFRESH YOUR RECOLLECTION THAT THAT'S

12:44PM   3    WHAT -- THAT WAS YOUR VIEW?

12:44PM   4    A.   NO, IT DOES NOT REFRESH MY RECOLLECTION.

12:44PM   5    Q.   OKAY.  AND JUST SO WE'RE CLEAR, THIS WAS -- THIS WOULD NOT

12:44PM   6    BE A POLICY THAT WOULD BE IMPLEMENTED BY MS. HOLMES AS THE CEO

12:44PM   7    OF THE COMPANY; CORRECT?

12:44PM   8    A.   NO.

12:44PM   9    Q.   AND IT WAS IN THE CLIA LAB?

12:44PM  10    A.   YEAH.

12:44PM  11    Q.   AND IT WAS UNDER YOUR CONTROL; RIGHT?

12:45PM  12    A.   I TRIED TO CONTROL EVERYTHING THAT I POSSIBLY COULD.

12:45PM  13    Q.   RIGHT.  I UNDERSTAND.  AND YOU, UNDER THE REGULATIONS,

12:45PM  14    WERE IN CHARGE OF THE CLIA LAB?

12:45PM  15    A.   YES.

12:45PM  16    Q.   AND THIS POLICY OF THE SIXTH TIP PRACTICE IN AVERAGING

12:45PM  17    FOUR OF THOSE RESULTS WAS SOMETHING THAT WAS WELL-KNOWN TO YOU;

12:45PM  18    RIGHT?

12:45PM  19    A.   YES, YES.

12:45PM  20    Q.   AND IT WAS BEING DONE BOTH ON RESULTS AND QUALITY CONTROL;

12:45PM  21    RIGHT?

12:45PM  22    A.   YES, YES.

12:45PM  23    Q.   YES.  AND YOU APPROVED OF THAT PRACTICE; RIGHT?

12:45PM  24    A.   I DISCUSSED IT WITH DANIEL, AND I BELIEVE I AGREED AND

12:45PM  25    APPROVED IT AND DISCUSSED IT WITH HIM, YEAH.

12:45PM  1    Q.   YES.  AND JUST SO YOU'RE AWARE, I BELIEVE YOU WERE ASKED A

12:45PM  2    QUESTION DURING YOUR DIRECT EXAMINATION RELATING TO WHETHER ANY

12:45PM  3    COMMERCIAL DEVICES AVERAGE CALCULATIONS; RIGHT?

12:45PM  4    A.   YES.

12:45PM  5    Q.   YES.  LET'S TAKE A LOOK AT EXHIBIT 392, WHICH IS A BIG

12:46PM  6    ONE, BUT I'M ONLY GOING TO ASK YOU ABOUT A VERY SMALL PORTION

12:46PM  7    OF IT.

12:46PM  8         LET ME KNOW WHEN YOU HAVE THAT.

12:46PM  9    A.   THIS IS THE OPERATOR'S GUIDE TO THE IMMULITE.

12:46PM  10   Q.   THIS IS THE OPERATOR'S GUIDE TO THE IMMULITE IMMUNOASSAY

12:46PM  11   SYSTEM; CORRECT?

12:46PM  12   A.   YES.

12:46PM  13   Q.   AND THIS WAS ONE OF THE DEVICES THAT WAS USED IN THE CLIA

12:46PM  14   LAB; RIGHT?

12:46PM  15   A.   YES.

12:46PM  16        MR. WADE:  I MOVE THE ADMISSION OF 392.

12:46PM  17        MR. BOSTIC:  NO OBJECTION.

12:46PM  18        THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:46PM  19   (GOVERNMENT'S EXHIBIT 392 WAS RECEIVED IN EVIDENCE.)

12:46PM  20        MR. WADE:  I THINK EVERYONE WILL BE THANKFUL WE'RE

12:46PM  21   GOING TO LOOK AT ONE PAGE OF THIS.

12:47PM  22        (LAUGHTER.)

12:47PM  23   BY MR. WADE:

12:47PM  24   Q.   I'D ASK YOU TO LOOK AT PAGE 41 OF THE EXHIBIT NUMBER THAT

12:47PM  25   IS.  LET ME KNOW WHEN YOU'RE THERE.

12:47PM  1    A.   OKAY.

12:47PM  2    Q.   DO YOU SEE AT THE TOP OF THAT PAGE IT TALKS ABOUT THE

12:47PM  3    INSTRUMENT READINGS?

12:47PM  4         DO YOU SEE THAT?

12:47PM  5    A.   YES.

12:47PM  6    Q.   AND IT EXCLUDES CERTAIN OF THE DARK COUNTS FROM ITS

12:47PM  7    CALCULATION; CORRECT?

12:47PM  8    A.   YES.

12:47PM  9    Q.   AND THEN IT AVERAGES FIVE INDIVIDUAL READINGS; CORRECT?

12:47PM 10    A.   YES.

12:47PM 11    Q.   I DON'T HAVE ANY OTHER QUESTIONS ABOUT THAT.

12:47PM 12    A.   OKAY.

12:47PM 13    Q.   DO YOU RECALL YOU WERE ASKED SOME QUESTIONS ABOUT DEMOS;

12:48PM 14    RIGHT?

12:48PM 15    A.   YES.

12:48PM 16    Q.   AND I JUST WANT TO MAKE SURE THE RECORD IS CLEAR, YOU WERE

12:48PM 17    NOT IN THE ROOM WITH ANY VIP'S OR INVESTORS?

12:48PM 18    A.   NO, I WAS NOT.

12:48PM 19    Q.   THE ONLY QUESTION I HAVE FOR YOU RELATING TO THAT IS YOU

12:48PM 20    WEREN'T CONCERNED ABOUT THE RESOURCES ASSIGNED TO DEMOS, THAT

12:48PM 21    THEY WEREN'T DISRUPTIVE IN THE LAB; RIGHT?

12:48PM 22    A.   NO, NOT AT ALL.

12:49PM 23    Q.   WE'VE TALKED A LOT AT DIFFERENT TIMES ABOUT THE DOCTOR

12:49PM 24    INQUIRIES AND THE HANDLING OF THE DOCTOR INQUIRIES.

12:49PM 25         DO YOU RECALL THAT?

12:49PM  1    A.   YES.

12:49PM  2    Q.   AND DO YOU RECALL THAT THERE WERE MULTIPLE WAYS THAT

12:49PM  3    THERANOS HAD FOR DOCTORS TO RAISE QUESTIONS; RIGHT?

12:49PM  4         WELL, THEY HAD A CUSTOMER SERVICE LINE; RIGHT?

12:49PM  5    A.   YES, YES.

12:49PM  6    Q.   AND DID THAT GO TO YOUR DESK AND DID YOU PICK UP THE

12:49PM  7    PHONE?

12:49PM  8    A.   NO.

12:49PM  9    Q.   THANKFULLY.

12:49PM  10   A.   SURE.

12:49PM  11   Q.   THAT COULD BE A TOUGH JOB; RIGHT?

12:49PM  12   A.   SURE.

12:49PM  13   Q.   AND YOU COULD BE FIELDING A LOT OF QUESTIONS; RIGHT?

12:49PM  14   A.   I STILL DO THAT AT MY CURRENT JOB.

12:49PM  15   Q.   WHAT IS YOUR CURRENT JOB?

12:49PM  16   A.   I'M A LAB DIRECTOR AT THE VALENCIA BRANCH LABORATORY.

12:49PM  17   IT'S A JOINT VENTURE BETWEEN PERKIN ELMER AND THE CALIFORNIA

12:49PM  18   DEPARTMENT OF PUBLIC HEALTH FOR COVID TESTING.

12:50PM  19   Q.   AND YOU STILL FIELD --

12:50PM  20   A.   YES.

12:50PM  21   Q.   -- QUESTIONS TODAY?

12:50PM  22   A.   YES.

12:50PM  23   Q.   BUT FOR THE MOST PART THERE ARE A LOT OF -- THERE ARE

12:50PM  24   CUSTOMER SERVICE REPRESENTATIVES WHO ARE SUPPOSED TO KIND OF

12:50PM  25   SEPARATE THE WHEAT FROM THE SHAFT; RIGHT?

12:50PM   1    A.   IDEALLY, YES.

12:50PM   2    Q.   AND THEY RAISED THE ISSUES THAT ARE APPROPRIATE FOR YOUR

12:50PM   3    CONSIDERATION; RIGHT?

12:50PM   4    A.   YES.

12:50PM   5    Q.   OKAY.  AND THERE ARE ALSO SALES REPRESENTATIVES THAT ARE

12:50PM   6    OFTEN OUT IN THE FIELD AND THEY'RE DEALING WITH DOCTORS; RIGHT?

12:50PM   7    A.   YES.  LUCKILY FOR COVID, IT'S NOT SOMETHING THAT YOU HAVE

12:50PM   8    TO GO OUT AND SELL TO PEOPLE.

12:50PM   9    Q.   YEAH.

12:50PM   10   A.   IT'S SOMETHING THAT IS REALLY NEEDED.

12:50PM   11   Q.   SO YOU'RE NOT DOING THAT IN YOUR CURRENT JOB?

12:50PM   12   A.   NO.

12:50PM   13   Q.   BUT IN THERANOS, AT THERANOS THEY WERE OUT AS PART OF

12:50PM   14   THEIR COMMERCIAL EFFORTS AND THEY HAD PEOPLE OUT TALKING TO

12:50PM   15   DOCTORS; RIGHT?

12:50PM   16   A.   I WASN'T REALLY AWARE OF THE SALES, THE THERANOS SALES

12:50PM   17   FORCE AND WHAT THE ACTIVITIES WERE IN THAT REGARD.  I WASN'T

12:50PM   18   INVOLVED.

12:51PM   19   Q.   WELL, YOU TALKED ABOUT, YOU MAY RECALL, ON TUESDAY ABOUT

12:51PM   20   ALL OF THE PEOPLE AT THERANOS WHO WERE CONTRIBUTING TO MAKING

12:51PM   21   THE SYSTEM WORK; RIGHT?

12:51PM   22       DO YOU RECALL THAT?

12:51PM   23   A.   YES.

12:51PM   24   Q.   AND THAT INVOLVED A LOT OF DIFFERENT PEOPLE WHO WOULD TAKE

12:51PM   25   INPUTS FROM DIFFERENT CUSTOMERS; RIGHT?

12:51PM 1    A.   YES.

12:51PM 2    Q.   AND SOMETIMES THOSE ISSUES WOULD BE APPROPRIATE FOR YOU;

12:51PM 3    RIGHT?

12:51PM 4    A.   YES.

12:51PM 5    Q.   AND SOMETIMES THEY WOULDN'T BE APPROPRIATE FOR YOU; IS

12:51PM 6    THAT RIGHT?

12:51PM 7    A.   YES, YES.

12:51PM 8    Q.   AND WHEN IT CAME TO THE INTERPRETATION OF THE TEST

12:51PM 9    RESULTS, THAT IS A THING THAT YOU NEEDED TO BE INVOLVED IN;

12:51PM 10   RIGHT?

12:51PM 11   A.   YES.

12:51PM 12   Q.   BECAUSE THERE'S ACTUALLY A SPECIFIC REGULATION WITHIN THE

12:51PM 13   FEDERAL CLIA LAB REGULATIONS THAT RELATE TO THE INTERPRETATION

12:51PM 14   OF LAB RESULTS; CORRECT?

12:51PM 15   A.   CORRECT.

12:51PM 16   Q.   BUT THEY DON'T REQUIRE YOU TO DEAL WITH EACH AND EVERY

12:51PM 17   THING THAT COMES UP; RIGHT?

12:51PM 18   A.   I BELIEVE THE REGULATIONS SAY THAT THE LABORATORY MUST

12:51PM 19   MAKE AVAILABLE TO CLIENTS CONSULTATION REGARDING INTERPRETATION

12:52PM 20   OF TEST RESULTS.  SOMETHING TO THAT EFFECT.

12:52PM 21      IN OTHER WORDS, IF SOMEBODY CALLS AND WANTED TO KNOW HOW

12:52PM 22   YOU INTERPRET A TEST, A LAB DIRECTOR WOULD HANDLE THAT, YEAH.

12:52PM 23   Q.   RIGHT.  THE REGULATION REQUIRES THAT THE LAB DIRECTOR MUST

12:52PM 24   ENSURE THAT CONSULTATION IS AVAILABLE TO THE LABORATORY'S

12:52PM 25   CLIENTS ON MATTERS RELATING TO THE QUALITY OF THE TEST RESULTS

12:52PM  1    REPORTED AND THEIR INTERPRETATION CONCERNING SPECIFIC PATIENT

12:52PM  2    CONDITIONS; RIGHT?

12:52PM  3    A.   ARE YOU READING THE STATUTE?

12:52PM  4    Q.   I AM.  I WOULD BE HAPPY TO SHOW IT TO YOU.

12:52PM  5    A.   THAT'S FINE.  IT SOUNDS LIKE YOU ARE, YEAH.

12:52PM  6    Q.   AND DOES THAT SOUND ABOUT RIGHT?

12:52PM  7    A.   YES.

12:52PM  8    Q.   AND SO THE REQUIREMENT IS THAT YOU NEED TO BE AVAILABLE TO

12:52PM  9    DO THAT; RIGHT?

12:52PM  10   A.   YES, YES.

12:52PM  11   Q.   AND NOT THAT YOU HAVE TO BE THE ONLY AND EXCLUSIVE PERSON

12:52PM  12   WHO DOES IT; RIGHT?

12:53PM  13   A.   THAT'S RIGHT.

12:53PM  14   Q.   AND SOMETIMES DOCTORS WOULD RAISE ISSUES AND -- OR HAVE

12:53PM  15   QUESTIONS, AND IT WOULDN'T PROMPT -- AND THEY WOULDN'T HAVE

12:53PM  16   MUCH VALIDITY TO IT OR IT WOULDN'T BE OF REAL CONCERN TO YOU;

12:53PM  17   CORRECT?

12:53PM  18   A.   BY THE TIME THAT THEY WERE ESCALATED TO ME, THE VAST

12:53PM  19   MAJORITY OF THEM POINTED TO SERIOUS ISSUES.

12:53PM  20   Q.   OKAY.  OKAY.

12:53PM  21        WELL, LET'S LOOK AT ONE OF THEM.  TAKE A LOOK AT 7462.

12:53PM  22   A.   I'M SORRY.  AGAIN, WHAT VOLUME AND WHAT BINDER?

12:54PM  23   Q.   EXHIBIT 7462, WHICH SHOULD BE IN THE VOLUME 1 OF THE BLACK

12:54PM  24   BINDER.

12:54PM  25   A.   7462.  YES, I HAVE THAT.

12:54PM  1    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

12:54PM  2    A.   YES.

12:54PM  3    Q.   AND YOU SEE THAT AS AN EMAIL RELATING TO A QUESTION THAT A

12:54PM  4    DOCTOR POSED TO YOU?

12:54PM  5    A.   YES.

12:54PM  6    Q.   AND DO YOU SEE THAT?

12:54PM  7    A.   YES.

12:54PM  8    Q.   OKAY.  AND --

12:54PM  9         I MOVE THE ADMISSION OF 7462.

12:54PM  10             MR. BOSTIC:  NO OBJECTION.

12:54PM  11             THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:54PM  12        (DEFENDANT'S EXHIBIT 7462 WAS RECEIVED IN EVIDENCE.)

12:54PM  13   BY MR. WADE:

12:54PM  14   Q.   OKAY.  AND WE'LL GO VERY QUICKLY THROUGH THIS.  BUT LET'S

12:54PM  15   JUST, TO MAKE SURE EVERYONE IS ON THE SAME PAGE, LET'S JUST GO

12:55PM  16   TO THE LAST EMAIL.

12:55PM  17        DO YOU SEE THAT?

12:55PM  18   A.   YES.

12:55PM  19   Q.   AND THIS -- AGAIN, WE'VE SEEN MANY OF THESE WHERE THE

12:55PM  20   CUSTOMER SERVICE REPRESENTATIVE FIELDS A CALL?

12:55PM  21   A.   YES.

12:55PM  22   Q.   AND THIS ONE SAYS THAT THE PARTICULAR DOCTOR IS

12:55PM  23   QUESTIONING THE RESULTS.

12:55PM  24        DO YOU SEE THAT?

12:55PM  25   A.   AND HE WOULD LIKE TO BE CALLED ABOUT THE RESULTS, YES.

12:55PM   1    Q.   AND THIS IS OF A LIPID PANEL?

12:55PM   2    A.   YES.

12:55PM   3    Q.   AND THIS IS ESCALATED TO YOU IN THE FIRST INSTANCE;

12:55PM   4    CORRECT?

12:55PM   5    A.   YES.

12:55PM   6    Q.   AND CONTACT INFORMATION IS PROVIDED.  DO YOU SEE THAT?

12:55PM   7    A.   YES.

12:55PM   8    Q.   AND SOME INFORMATION IS GATHERED THROUGHOUT THE COURSE OF

12:55PM   9    THIS EMAIL; CORRECT?

12:55PM  10    A.   YES.

12:55PM  11    Q.   AND YOU'RE GETTING UP TO SPEED ON THE ISSUE.  IS THAT A

12:56PM  12    FAIR SUMMARY OF THE COUPLE OF EMAILS?

12:56PM  13    A.   YES.

12:56PM  14    Q.   AND LET'S GO TO THE FIRST PAGE.

12:56PM  15         AND AT THE BOTTOM DO YOU SEE IT SAYS NISHIT DOSHI?

12:56PM  16    A.   YES.

12:56PM  17    Q.   AND LET'S GO OVER TO THE EMAIL THAT CARRIES OVER TO THE

12:56PM  18    NEXT PAGE, JUST THE TOP THERE.

12:56PM  19         HE HAD FORWARDED ALONG SOME OF THESE COMMUNICATIONS.

12:56PM  20         HE SAID, "SUNNY, I AM NOT SURE IF YOU READ THIS ALREADY.

12:56PM  21         "WE ARE CONFIDENT ABOUT OUR LIPID PANEL RESULTS BASED ON

12:56PM  22    THE DAILY RUNS WHERE WE COMPARE FINGERSTICK SAMPLES TO NEAT

12:56PM  23    VENOUS (PREDICATE)."

12:56PM  24         DO YOU SEE THAT?

12:56PM  25    A.   YES.

12:56PM  1    Q.   THERE WAS A COMPARISON TESTING; RIGHT?

12:56PM  2    A.   IT LOOKS THAT WAY.

12:56PM  3    Q.   YEAH.  AND TO ASSURE THE ACCURACY OF THE TEST; RIGHT?

12:57PM  4    A.   YES.

12:57PM  5    Q.   OKAY.  AND IF YOU GO UP TO THE NEXT EMAIL MR. BALWANI

12:57PM  6    FOLLOWS UP WITH YOU?

12:57PM  7    A.   YES.

12:57PM  8    Q.   AND HE DOESN'T CALL THE DOCTOR DIRECTLY HIMSELF; RIGHT?

12:57PM  9    A.   CORRECT.

12:57PM 10    Q.   AND HE SAYS, "WE NEED TO CALL THIS DOCTOR AND BE A BIT

12:57PM 11    MORE FIRM ABOUT OUR PERFORMANCE.  WE CAN DO A REDRAW, BUT HIS

12:57PM 12    IGNORANT COMMENTS ARE NOT OK.  YOU CAN EXPLAIN TO HIM WE RUN

12:57PM 13    THOUSANDS OF SAMPLES AND OUR SAMPLE TRACKING IS VERY TIGHT."

12:57PM 14        DO YOU SEE THAT?

12:57PM 15    A.   YES.

12:57PM 16    Q.   BUT HE ALSO SAYS THAT, "WE CAN DO A REDRAW FOR NO CHARGE

12:57PM 17    TO THE PATIENT, NO PROBLEMS."

12:57PM 18        RIGHT?

12:57PM 19    A.   YES.

12:57PM 20    Q.   ULTIMATELY THE PATIENT SUPPOSED TO --

12:57PM 21    A.   YES.

12:57PM 22    Q.   OKAY.  LET'S GO UP TO THE NEXT CHAIN.

12:58PM 23        AND YOU CALLED THE DOCTOR IN FACT; RIGHT?

12:58PM 24    A.   YES.

12:58PM 25    Q.   AND YOU REPORTED BACK THAT YOU'RE EMPHATIC WITH DR. CHEN

12:58PM  1    REGARDING OUR RIGOROUS VALIDATION AND QUALITY PROCESS; RIGHT?

12:58PM  2    A.   YES.

12:58PM  3    Q.   AND YOU BELIEVED THAT AT THE TIME; RIGHT?

12:58PM  4    A.   YES.

12:58PM  5    Q.   AND YOU SAID THAT, "I DID NOT AGREE WITH ANY OF DR. CHEN'S

12:58PM  6    INSINUATIONS."

12:58PM  7         RIGHT?

12:58PM  8    A.   YES.

12:58PM  9    Q.   AND THEN YOU SAID, "IN MY EXPERIENCE THERE ARE ALWAYS A

12:58PM  10   HANDFUL OF M.D.'S WHO REFUSE TO ACKNOWLEDGE SCIENTIFIC DATA

12:58PM  11   ABOUT THEIR PATIENTS."

12:58PM  12        DO YOU SEE THAT?

12:58PM  13   A.   YES.

12:58PM  14   Q.   BUT YOU REVIEWED ALL OF THE RELEVANT INFORMATION; RIGHT?

12:58PM  15   A.   YES.

12:58PM  16   Q.   AND THE CTN IMAGE; RIGHT?

12:58PM  17   A.   YES.

12:58PM  18   Q.   AND THERE'S A PICTURE OF BLOOD SAMPLE THAT IS TAKEN IN THE

12:58PM  19   MACHINE?

12:58PM  20   A.   CORRECT.

12:58PM  21   Q.   AND YOU CAN GO AND LOOK AT THAT TO MAKE SURE THE SAMPLE

12:58PM  22   HAS INTEGRITY; RIGHT?

12:58PM  23   A.   YES.

12:58PM  24   Q.   AND YOU DID THAT?

12:58PM  25   A.   YES.

12:58PM  1    Q.   AND THOSE WERE CERTAIN IN THE LIS; RIGHT?

12:58PM  2    A.   I THINK SO.  I DON'T RECALL.

12:59PM  3    Q.   OKAY.  AND YOU LOOKED AT THAT AND YOU LOOKED AT THE QC

12:59PM  4    DATA; RIGHT?

12:59PM  5    A.   YES.

12:59PM  6    Q.   AND THAT WAS PERFORMING?

12:59PM  7    A.   YES.

12:59PM  8    Q.   CORRECT?

12:59PM  9         AND SO THAT WAS THE BASIS FOR YOUR COMFORT IN DEFENDING

12:59PM  10   THOSE RESULTS; IS THAT CORRECT?

12:59PM  11   A.   YES.

12:59PM  12   Q.   OKAY.  AND LET'S JUST GO TO THE EMAIL AT THE TOP.

12:59PM  13        AND HE THANKS YOU FOR DOING THIS.

12:59PM  14        HE SAYS HE APPRECIATES IT.  AND HE SAYS, "SOME WILL ALWAYS

12:59PM  15   BE DOUBTERS -- HAPPENS WITH NEW TECHNOLOGY."

12:59PM  16        DO YOU SEE THAT?

12:59PM  17   A.   YES.

12:59PM  18            MR. WADE:  AND THIS MIGHT BE A GOOD PLACE TO BREAK,

12:59PM  19   YOUR HONOR.

12:59PM  20            THE COURT:  LET'S DO THAT.  THANK YOU.

12:59PM  21        LADIES AND GENTLEMEN, WE'LL TAKE OUR NOON -- EXCUSE ME,

12:59PM  22   OUR RECESS FOR THE WEEKEND.  WE'LL RESUME AGAIN ON TUESDAY,

12:59PM  23   TUESDAY NEXT AT 9:00 A.M.

12:59PM  24        LADIES AND GENTLEMEN, PLEASE RECALL THE ADMONITION,

12:59PM  25   PLEASE.  YOU MUST NOT COMMUNICATE WITH ANYONE IN ANY WAY ABOUT

12:59PM  1    THIS CASE, AND YOU MUST IGNORE ANY INFORMATION ABOUT THE CASE

12:59PM  2    THAT YOU MIGHT SEE WHILE BROWSING THE INTERNET OR ANY OF YOUR

01:00PM  3    SOCIAL MEDIA FEEDS.

01:00PM  4        PLEASE ALSO DO NOT -- PLEASE IGNORE RATHER, PLEASE IGNORE

01:00PM  5    ANY MEDIA THAT YOU MIGHT SEE OR COME ACROSS DURING THE WEEKEND.

01:00PM  6    IF YOU SEE SOMETHING IN THE NEWSPAPER OR THE TELEVISION OR

01:00PM  7    NEWSPAPER OR LISTEN TO SOMETHING, PLEASE TURN AWAY AND TURN THE

01:00PM  8    DEVICE OFF.

01:00PM  9        I'LL ASK YOU AGAIN TUESDAY NEXT WHETHER OR NOT YOU'VE HAD

01:00PM  10   OCCASION TO SUFFER ANY ADDITIONAL INFORMATION ABOUT THE CASE,

01:00PM  11   OTHER THAN WHAT YOU'VE HEARD HERE.

01:00PM  12       OTHER THAN THAT, PLEASE ENJOY THE WEEKEND AND HAVE A GOOD

01:00PM  13   WEEKEND, AND WE'LL SEE YOU NEXT WEEK.  THANK YOU.

01:00PM  14       YOU MAY STAND DOWN, DOCTOR.  THANK YOU.

01:01PM  15       (JURY OUT AT 1:01 P.M.)

01:01PM  16           THE COURT:  PLEASE BE SEATED.  THANK YOU.

01:01PM  17       THANK YOU.  THE RECORD SHOULD REFLECT OUR JURY HAS LEFT

01:01PM  18   FOR THE WEEKEND AND DR. ROSENDORFF HAS LEFT THE COURTROOM.

01:01PM  19       ALL COUNSEL AND THE DEFENDANT ARE PRESENT.

01:01PM  20       ANYTHING FURTHER BEFORE WE BREAK?

01:01PM  21           MR. BOSTIC:  VERY BRIEFLY, YOUR HONOR.

01:01PM  22       JUST FOR PLANNING AND HOUSEKEEPING PURPOSES NEXT WEEK, IF

01:01PM  23   WE COULD HAVE AN ESTIMATE AS TO HOW MUCH LONGER THE DEFENSE HAS

01:01PM  24   WITH THIS WITNESS?

01:01PM  25       WE HAVE OUT-OF-TOWN WITNESSES THAT WE'RE TRYING TO PLAN

01:01PM  1    THEIR TRAVEL.

01:01PM  2              THE COURT:  SURE.  MR. WADE, CAN YOU HELP US WITH

01:01PM  3    THAT QUESTION?

01:01PM  4              MR. WADE:  THE SHORT ANSWER IS YES.  THE QUESTION IS

01:02PM  5    WHEN.

01:02PM  6         MR. BOSTIC RAISED THAT.  I SUGGEST THAT WE CONFER OVER THE

01:02PM  7    WEEKEND.  I UNDERSTAND THAT NEED, AND WE WILL GIVE GUIDANCE.  I

01:02PM  8    WOULD EXPECT THAT WE'LL TAKE PROBABLY ALL OF THE DAY ON

01:02PM  9    TUESDAY.

01:02PM  10             THE COURT:  OKAY.  IS THAT HELPFUL?

01:02PM  11             MR. BOSTIC:  THAT'S HELPFUL TO NOTE, YOUR HONOR.

01:02PM  12   THANK YOU.

01:02PM  13             THE COURT:  THANK YOU.

01:02PM  14             MR. WADE:  BUT AS I GO THROUGH I'LL STAY IN

01:02PM  15   COMMUNICATION WITH THE GOVERNMENT ON THAT.  I WANT TO MAKE SURE

01:02PM  16   THAT THEY'RE ABLE TO GIVE THEIR WITNESSES AS MUCH NOTICE AS

01:02PM  17   NECESSARY.

01:02PM  18             THE COURT:  THANK YOU.  I APPRECIATE THAT

01:02PM  19   COOPERATION.  PLEASE COMMUNICATE WITH THE COURT THROUGH

01:02PM  20   MS. KRATZMANN IF THERE'S ANY ISSUE THAT COMES UP THAT YOU FEEL

01:02PM  21   YOU WOULD LIKE TO MEET IN ADVANCE OF TUESDAY OR TUESDAY MORNING

01:02PM  22   OR ANY OTHER ISSUE.

01:02PM  23             MR. WADE:  THE GOVERNMENT -- WE'VE BEEN IN CONTINUED

01:02PM  24   COMMUNICATIONS ON THESE ISSUES AND PLEDGE TO HAVE MORE OVER THE

01:02PM  25   WEEKEND.

01:02PM   1        DOES THE COURT HAVE A PREFERENCE IF WE FEEL LIKE ISSUES

01:02PM   2    NEED TO BE RAISED JUST IN THE IMMEDIATE SCHEDULING PERIOD ON

01:03PM   3    MONDAY AND TUESDAY, WOULD THE COURT HAVE A PREFERENCE TO DO

01:03PM   4    THAT ON MONDAY OR TUESDAY?

01:03PM   5        THE COURT:  WELL, I THINK OUR CAL --

01:03PM   6        MS. KRATZMANN, CAN YOU REMIND US OF OUR CALENDAR ON

01:03PM   7    MONDAY?  I THINK WE HAVE A MATTER IN THE MORNING.

01:03PM   8        THE CLERK:  WE HAVE A MATTER IN THE MORNING AT 10:00

01:03PM   9    AND THEN YOU HAVE THE AFTERNOON PROBABLY FROM 1:30 TO 3:00,

01:03PM  10    3:15.

01:03PM  11        AFTER THAT YOU WOULD BE AVAILABLE.

01:03PM  12        MR. WADE:  WOULD IT BE THE COURT'S PREFERENCE TO DO

01:03PM  13    IT LATE IN THE AFTERNOON ON MONDAY IF THE GOVERNMENT WANTS TO

01:03PM  14    RAISE ISSUES OR SHOULD WE DO IT IN THE MORNING?  EITHER ONE IS

01:03PM  15    FINE BY THE -- FROM THE DEFENSE.

01:03PM  16        MR. BOSTIC:  YOUR HONOR, ON THAT POINT, WE WILL BE

01:03PM  17    GUIDED BY THE COURT.

01:03PM  18        UNLESS THE DEFENSE BELIEVES OTHERWISE, I DON'T THINK THESE

01:03PM  19    ISSUES WILL REQUIRE MORE TIME THAN WOULD BE AVAILABLE TUESDAY

01:03PM  20    MORNING.

01:03PM  21        SO I WOULD SUGGEST THAT WE HANDLE IT TUESDAY MORNING

01:03PM  22    UNLESS THESE ISSUES EXPAND DURING MY CONVERSATIONS WITH

01:04PM  23    MR. WADE OVER THE WEEKEND.

01:04PM  24        MR. WADE:  THAT SOUNDS LIKE A GOOD IDEA.  IF WE

01:04PM  25    THINK THERE'S ANY DANGER, WHY DON'T WE ADVISE THE COURT AND

01:04PM  1    COME IN MONDAY AFTERNOON.

01:04PM  2              THE COURT:  I APPRECIATE THAT.  SO THE DEFAULT WOULD

01:04PM  3    BE WE COULD DO ANYTHING ON TUESDAY, AND IF NOT, YOU FOLKS WILL

01:04PM  4    TALK, AND YOU'LL LET MS. KRATZMANN KNOW, AND WE'LL SCHEDULE

01:04PM  5    ACCORDINGLY.

01:04PM  6              MR. BOSTIC:  YES, YOUR HONOR.

01:04PM  7              THE COURT:  GREAT.  ALL RIGHT.

01:04PM  8              MR. WADE:  THANK YOU, YOUR HONOR.  HAVE A GOOD

01:04PM  9    WEEKEND.

01:04PM  10             THE COURT:  HAVE A GOOD WEEKEND.

01:04PM  11             THE CLERK:  COURT IS ADJOURNED.

01:04PM  12         (COURT ADJOURNED AT 1:04 P.M.)

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10  HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    IRENE RODRIGUEZ, CSR, CRR
    CERTIFICATE NUMBER 8076
17

18  _____

19  LEE-ANNE SHORTRIDGE, CSR, CRR
    CERTIFICATE NUMBER 9595
20

21       DATED:  OCTOBER 1, 2021

22

23

24

25