1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

  UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                  )
                 PLAINTIFF,        )   SAN JOSE, CALIFORNIA
7                                  )
        VS.                        )   VOLUME 29
8                                  )
  ELIZABETH A. HOLMES,             )   NOVEMBER 8, 2021
9                                  )
                 DEFENDANT.        )   PAGES 5598 - 5670
10 _____ )

11
                    TRANSCRIPT OF TRIAL PROCEEDINGS
12            BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
   A P P E A R A N C E S:
14
   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
16                        150 ALMADEN BOULEVARD, SUITE 900
                          SAN JOSE, CALIFORNIA 95113
17
                          BY:  ROBERT S. LEACH
18                        1301 CLAY STREET, SUITE 340S
                          OAKLAND, CALIFORNIA 94612
19
        (APPEARANCES CONTINUED ON THE NEXT PAGE.)
20

21 OFFICIAL COURT REPORTERS:
                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
22                        CERTIFICATE NUMBER 8074
                          LEE-ANNE SHORTRIDGE, CSR, CRR
23                        CERTIFICATE NUMBER 9595

24     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
25

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  KATHERINE TREFZ
                                    RICHARD CLEARY
 5                             725 TWELFTH STREET, N.W.
                               WASHINGTON, D.C. 20005
 6
                               LAW OFFICE OF JOHN D. CLINE
 7                             BY:  JOHN D. CLINE
                               ONE EMBARCADERO CENTER, SUITE 500
 8                             SAN FRANCISCO, CALIFORNIA 94111

 9
      ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
10                             BY:  ADELAIDA HERNANDEZ

11

12    TELEPHONICALLY:          JOSHUA KOLTUN
                               DAVID KORZENIK
13

14

15

16

17

18

19

20

21

22

23

24

25
```

5600

|          | 1  | SAN JOSE, CALIFORNIA                          NOVEMBER 8, 2021 |
| 10:04AM  | 2  | P R O C E E D I N G S |
| 10:04AM  | 3  | (COURT CONVENED AT 10:04 A.M.) |
| 10:04AM  | 4  | (JURY OUT AT 10:04 A.M.) |
| 10:04AM  | 5  | THE COURT:  LET'S GO ON THE RECORD IN THE HOLMES |
| 10:04AM  | 6  | MATTER, 18-258. |
| 10:05AM  | 7  | THIS IS A SESSION OUTSIDE OF THE PRESENCE OF THE JURY TO |
| 10:05AM  | 8  | DISCUSS CERTAIN MOTIONS. |
| 10:05AM  | 9  | LET'S SEE, THE GOVERNMENT IS PRESENT, MR. SCHENK, |
| 10:05AM  | 10 | MR. BOSTIC, MR. LEACH. |
| 10:05AM  | 11 | THE DEFENSE IS PRESENT. |
| 10:05AM  | 12 | MR. CLINE, ARE YOU GOING TO ARGUE THIS? |
| 10:05AM  | 13 | MR. CLINE:  I AM.  AND MS. HOLMES IS NOT HERE, BUT |
| 10:05AM  | 14 | SHE FILED A WAIVER OF HER APPEARANCE. |
| 10:05AM  | 15 | THE COURT:  YES, I DID RECEIVE THAT. |
| 10:05AM  | 16 | SO DO YOU FORMALLY THEN WAIVE HER APPEARANCE AND AGREE TO |
| 10:05AM  | 17 | PROCEED IN THIS MATTER WITHOUT HER BEING PERSONALLY PRESENT, |
| 10:05AM  | 18 | MR. CLINE? |
| 10:05AM  | 19 | MR. CLINE:  WE DO. |
| 10:05AM  | 20 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:05AM  | 21 | ALSO, I THINK WE HAVE SOMEONE PARTICIPATING ON THE |
| 10:05AM  | 22 | TELEPHONE? |
| 10:05AM  | 23 | MR. KORZENIK:  YES, YOUR HONOR. |
| 10:05AM  | 24 | DAVID KORZENIK READY TO ADDRESS THE PENDING MOTION. |
| 10:05AM  | 25 | AND ALSO WITH ME LISTENING IS JOSH COLTON. |

5601

10:05AM 1       THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING.

10:05AM 2       COUNSEL, IF YOU COULD COME FORWARD, PLEASE.  THANK YOU.

10:05AM 3       THIS MORNING WE'RE DISCUSSING DOCKET 1103, WHICH IS

10:06AM 4  MS. HOLMES'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF

10:06AM 5  ROGER PARLOFF AND TO EXCLUDE IT LOOKS LIKE EXHIBIT 3733.

10:06AM 6       I'VE READ THAT, AS WELL AS 1115, WHICH IS THE GOVERNMENT'S

10:06AM 7  OPPOSITION.

10:06AM 8       AND I'VE ALSO READ 1114, WHICH IS THE KORZENIK OPPOSITION

10:06AM 9  AND RESPONSE.

10:06AM 10       AND I THINK 1117 WAS ALSO THE GOVERNMENT'S -- EXCUSE ME,

10:06AM 11  MR. CLINE.  THAT WAS YOUR REPLY I THINK?

10:06AM 12            MR. CLINE:  YES, YOUR HONOR.

10:06AM 13            THE COURT:  RIGHT.  SO HAVING READ ALL OF THOSE

10:06AM 14  THINGS, INCLUDING MR. BOSTIC'S STATEMENT -- AND LAST TIME, LAST

10:06AM 15  TIME WE WERE HERE, WE WERE DISCUSSING A LITTLE BIT IN

10:06AM 16  ANTICIPATION WHAT CONTEXT MEANS AND THOSE ADDITIONAL QUESTIONS

10:06AM 17  THAT YOU WANT TO ASK.

10:06AM 18       MY SENSE IS THAT WE SHOULD ASK MR. BOSTIC TO GO FORWARD.

10:07AM 19       BUT, MR. CLINE, ANYTHING YOU WOULD LIKE TO STATE BEFORE WE

10:07AM 20  TURN TO MR. BOSTIC?

10:07AM 21            MR. CLINE:  I THINK IT WOULD BE HELPFUL TO HAVE

10:07AM 22  MR. BOSTIC GO FORWARD.

10:07AM 23       I WILL SAY THIS, THAT MR. BOSTIC AND I SPOKE ON FRIDAY.

10:07AM 24  IT WAS A GOOD CONVERSATION.

10:07AM 25       I'M NOT SURE THAT WE NARROWED OUR DIFFERENCES, BUT I THINK

10:07AM 1   EACH OF US UNDERSTANDS EACH OTHER'S POSITIONS MORE CLEARLY.  SO

10:07AM 2   I THINK THIS SHOULD PROCEED PRETTY EFFICIENTLY.

10:07AM 3          THE COURT:  ALL RIGHT.  THANK YOU.

10:07AM 4       MR. BOSTIC?

10:07AM 5          MR. BOSTIC:  YES.  THANK YOU.

10:07AM 6       LET ME START BY BRIEFLY HIGHLIGHTING WHAT IS NOT IN

10:07AM 7   CONTENTION BETWEEN THE PARTIES, AND MR. CLINE CAN CORRECT ME IF

10:07AM 8   I GET ANYTHING WRONG.

10:07AM 9       BUT MY UNDERSTANDING IS THAT A LOT OF WHAT IS OBJECTED TO

10:07AM 10  IN THE DEFENSE'S FILING IS ACTUALLY NOT AN INTENDED PART OF

10:07AM 11  MR. PARLOFF'S TESTIMONY.

10:07AM 12      FOR EXAMPLE, AT NO TIME WILL THE GOVERNMENT ASK

10:07AM 13  MR. PARLOFF TO PASS JUDGMENT ON THE TRUTH OR FALSITY OF

10:07AM 14  MS. HOLMES'S STATEMENT TO HIM OR THE MATERIALS THAT HE RECEIVED

10:07AM 15  FROM THERANOS.

10:07AM 16      SIMILARLY, I DO NOT INTEND TO ASK HIM QUESTIONS ABOUT

10:07AM 17  MS. HOLMES'S CREDIBILITY OR VERACITY OR HONESTY, THINGS LIKE

10:08AM 18  THAT THAT I THINK THIS WITNESS IS NOT IN A POSITION TO TESTIFY,

10:08AM 19  AND I WOULD UNDERSTAND 403 OBJECTIONS TO THAT.

10:08AM 20      SO THE GOVERNMENT UNDERSTANDS WHERE THAT LINE IS.

10:08AM 21      SIMILARLY, WE'RE NOT GOING TO ASK THIS WITNESS TO COMMENT

10:08AM 22  ON COMPARISONS BETWEEN WHAT MS. HOLMES TOLD HIM AND WHAT HE

10:08AM 23  LATER LEARNED THROUGH OTHER REPORTING.  THAT WOULD BE A HEARSAY

10:08AM 24  BASIS FOR HIM TO COMMENT ON THAT COMPARISON, SO WE'RE NOT GOING

10:08AM 25  TO GO INTO THAT EITHER.

10:08AM  1        LET ME TRY TO BREAK DOWN THE CATEGORIES OF WHAT THIS

10:08AM  2   WITNESS WILL TESTIFY ON.

10:08AM  3        FIRST OF ALL, HE WILL AUTHENTICATE THE RECORDINGS OF

10:08AM  4   CONVERSATIONS THAT HE HAD WITH MS. HOLMES, AS WELL AS EMAILS

10:08AM  5   THAT HE RECEIVED FROM THE COMPANY, WRITTEN MATERIALS.

10:08AM  6        HE WILL TALK ABOUT TOURS THAT HE HAD OF FACILITIES AT

10:08AM  7   THERANOS.  I DON'T BELIEVE THERE'S A DISPUTE AS TO THE

10:08AM  8   ADMISSIBILITY OF THAT TESTIMONY.

10:08AM  9        HE'LL EXPLAIN COMMENTS THAT MS. HOLMES MADE IN THE CONTEXT

10:09AM  10  OF THEIR LARGER CONVERSATIONS.

10:09AM  11       AND HERE'S WHERE I THINK I CAN HELP THE COURT'S

10:09AM  12  UNDERSTANDING OF WHAT THE GOVERNMENT MEANS BY CONTEXT.

10:09AM  13       I BELIEVE THERE ARE APPROXIMATELY TEN HOURS OF RECORDED

10:09AM  14  CONVERSATIONS BETWEEN MS. HOLMES AND MR. PARLOFF.  THE

10:09AM  15  GOVERNMENT, FOR A NUMBER OF REASONS, DOESN'T INTEND TO

10:09AM  16  INTRODUCE THAT ENTIRE TEN HOUR RECORDING.

10:09AM  17       THAT SAID, MR. PARLOFF HAS MEMORIES OF THOSE CONVERSATIONS

10:09AM  18  AND HE'S REVIEWED THOSE RECORDINGS TO REFRESH HIS RECOLLECTION,

10:09AM  19  SO HE SHOULD BE ABLE TO TESTIFY NOT JUST ABOUT SPECIFIC

10:09AM  20  STATEMENTS THAT MS. HOLMES MADE IN PORTIONS THAT THE GOVERNMENT

10:09AM  21  WILL PLAY FOR THE JURY, BUT ALSO HOW THOSE PORTIONS AND

10:09AM  22  STATEMENTS FIT INTO THEIR OVERALL CONVERSATIONS.

10:09AM  23       SO THAT COULD BE QUESTIONS LIKE, FOR EXAMPLE, WHETHER A

10:09AM  24  TOPIC HAD COME UP BEFORE, WHETHER THAT HAD BEEN THE ONLY TIME

10:09AM  25  THAT THEY HAD DISCUSSED THAT TOPIC OR WHETHER IT WAS A REPEATED

5604

10:09AM   1    TOPIC IN THEIR CONVERSATIONS; WHETHER WHAT MS. HOLMES SAID IN A

10:10AM   2    CERTAIN STATEMENT WAS EITHER THE SAME AS OR DIFFERENT FROM WHAT

10:10AM   3    SHE HAD SAID IN OTHER CONVERSATIONS WHEN THAT SAME TOPIC HAD

10:10AM   4    COME UP.

10:10AM   5         THIS IS JUST FACTUAL TESTIMONY.  THIS IS A WITNESS

10:10AM   6    TESTIFYING ABOUT THE CONTENT OF A COMMUNICATION OR A

10:10AM   7    CONVERSATION THAT HE PARTICIPATED IN, SO THAT SHOULDN'T BE

10:10AM   8    CONTROVERSIAL.

10:10AM   9              THE COURT:  I'M SORRY, MR. BOSTIC.

10:10AM  10         SO THAT WOULD BE, ON TUESDAY SHE SAID THIS, AND ON

10:10AM  11    THURSDAY SHE SAID, TO THE SAME QUESTION, THIS, SOMETHING LIKE

10:10AM  12    THAT?

10:10AM  13              MR. BOSTIC:  IT MIGHT BE AS SIMPLE AS, ON

10:10AM  14    APRIL 17TH, SHE TOLD YOU X.  IS THAT CONSISTENT WITH WHAT SHE

10:10AM  15    TOLD YOU ON OTHER OCCASIONS?  SO HE SHOULD BE ABLE TO COMMENT

10:10AM  16    ON SOMETHING LIKE THAT.

10:10AM  17         THERE WILL ALSO BE SITUATIONS WHERE STATEMENTS IN THE

10:10AM  18    RECORDED CONVERSATIONS REQUIRE SOME CONTEXT TO UNDERSTAND WHAT

10:10AM  19    THE PARTIES ARE TALKING ABOUT.

10:10AM  20         SO, FOR EXAMPLE, THERE'S AT LEAST ONE CASE WHERE

10:10AM  21    MS. HOLMES MAKES A STATEMENT REFERENCING A TOUR OF A FACILITY

10:11AM  22    THAT MR. PARLOFF HAD HAD AND WHAT HE HAD SEEN ON THAT TOUR.

10:11AM  23         SO AT THAT POINT HE'LL NEED TO EXPLAIN, SO THAT THE JURY

10:11AM  24    CAN UNDERSTAND THAT STATEMENT AND WHAT THAT IS REFERRING TO,

10:11AM  25    HE'LL NEED TO EXPLAIN WHAT HE SAW IN THAT TOUR AND THE

10:11AM  1    INFORMATION THAT HE RECEIVED IN THAT SEPARATE CONTEXT TO PUT

10:11AM  2    THE NECESSARY BACKGROUND ON MS. HOLMES'S STATEMENTS THERE.

10:11AM  3         SIMILARLY, I MIGHT ASK QUESTIONS ABOUT THINGS THAT

10:11AM  4    MS. HOLMES DID NOT TELL HIM.  SO BECAUSE HE PARTICIPATED IN

10:11AM  5    THOSE MANY CONVERSATIONS, HE CAN SAY, MS. HOLMES NEVER TOLD ME

10:11AM  6    X, Y, OR Z.  HE'LL BE ABLE TO SAY THAT SHE DID NOT TELL HIM,

10:11AM  7    FOR EXAMPLE, ABOUT THE COMPANY'S RELIANCE ON THIRD PARTY

10:11AM  8    MACHINES.  THAT'S A RELEVANT FACT.

10:11AM  9         BESIDES ASKING HIM THAT SIMPLE QUESTION, THE ONLY OTHER

10:11AM  10   WAY TO PROVE IT WOULD BE TO PLAY THE ENTIRE TEN HOUR PORTION OF

10:12AM  11   THE RECORDING, WHICH I DON'T THINK THE DEFENSE IS ADVOCATING

10:12AM  12   FOR EITHER.

10:12AM  13        THE COURT:  SO WOULD YOU -- AS TO THAT POINT, WOULD

10:12AM  14   YOU, MR. BOSTIC, THEN ASK HIM, DID SHE EVER MENTION ANYTHING

10:12AM  15   ABOUT THIRD PARTY MACHINES BEING USED AT THE COMPANY?

10:12AM  16        MR. BOSTIC:  THAT WOULD BE ONE EXAMPLE OF THAT KIND

10:12AM  17   OF A QUESTION, YES, YOUR HONOR.

10:12AM  18        THE COURT:  AND I GUESS THE FOLLOWUP IS, DID HE EVER

10:12AM  19   ASK THAT QUESTION?

10:12AM  20        MR. BOSTIC:  I THINK THAT WOULD ALSO BE AN

10:12AM  21   ADMISSIBLE OR A PROPER QUESTION FOR EITHER THE GOVERNMENT TO

10:12AM  22   ASK OR FOR THE DEFENSE TO ASK ON CROSS.

10:12AM  23        I DON'T WANT TO GET -- I KNOW THE DEFENSE HAS CONCERNS

10:12AM  24   ABOUT MR. PARLOFF TESTIFYING ABOUT WHY HE DID OR DID NOT ASK A

10:12AM  25   CERTAIN QUESTION, AND SO I WOULD INTEND NOT TO GO TOO FAR INTO

10:12AM 1   THAT ON DIRECT.

10:12AM 2       BUT BASED ON THE CONTEXT OF THE CROSS, I MAY NEED TO COME

10:12AM 3   BACK AND LET HIM HAVE THE OPPORTUNITY TO EXPLAIN WHY HE DID OR

10:12AM 4   DID NOT ASK A CERTAIN QUESTION.

10:12AM 5       THE COURT:  SURE.  OKAY.

10:12AM 6       MR. BOSTIC:  SO THAT'S WHAT THE GOVERNMENT MEANS BY

10:12AM 7   CONTEXT.

10:13AM 8       SIMILARLY, I THINK THAT IT'S APPROPRIATE AND USEFUL FOR

10:13AM 9   THE WITNESS TO CONNECT CERTAIN STATEMENTS THAT MS. HOLMES MADE

10:13AM 10  TO THE CONTENT OF THE ARTICLE THAT HE PUBLISHED.  SO THIS MIGHT

10:13AM 11  BE, FOR EXAMPLE, PLAYING A CLIP OR HAVING THE WITNESS TESTIFY

10:13AM 12  ABOUT INFORMATION HE RECEIVED FROM MS. HOLMES, THEN POINTING TO

10:13AM 13  A STATEMENT OR A PARAGRAPH IN THE ARTICLE AND ASKING WHETHER

10:13AM 14  THAT'S CONSISTENT WITH WHAT MS. HOLMES TOLD HIM.

10:13AM 15      AND THIS IS THE -- THE POINT OF THE TESTIMONY IS TO SHOW

10:13AM 16  HOW MS. HOLMES'S STATEMENTS TO THIS JOURNALIST ENDED UP BEING

10:13AM 17  DISTILLED DOWN INTO A PACKAGE, THAT IS, THE ARTICLE ITSELF THAT

10:13AM 18  WAS PUBLISHED, AND THEN GIVEN BY HOLMES TO INVESTORS IN THE

10:13AM 19  COMPANY.

10:13AM 20      SO THE CONTENT OF THE ARTICLE IS IMPORTANT, AND THIS IS

10:13AM 21  MERELY TO CONNECT THE CONTENT OF THE ARTICLE TO THE STATEMENTS

10:13AM 22  THAT MS. HOLMES MADE.

10:13AM 23      THERE MAY ALSO BE QUESTIONS UNDER THAT CATEGORY TO THE

10:13AM 24  EFFECT OF, IF MS. HOLMES HAD TOLD YOU X, WOULD YOU HAVE

10:14AM 25  INCLUDED THAT DETAIL IN THE ARTICLE OR WOULD THAT HAVE CHANGED

10:14AM  1     THIS STATEMENT IN THE ARTICLE, FOR EXAMPLE?

10:14AM  2          I THINK THAT'S AN APPROPRIATE QUESTION TO SHOW, AGAIN, HOW

10:14AM  3     MS. HOLMES'S INFORMATION GIVEN TO MR. PARLOFF AFFECTED WHAT

10:14AM  4     THAT ARTICLE ACTUALLY SAID IN THE ARTICLE THAT WENT TO THE

10:14AM  5     INVESTORS.

10:14AM  6          AND I THINK THE FINAL CATEGORY OF QUESTIONS THAT WE SHOULD

10:14AM  7     TALK ABOUT ARE QUESTIONS THAT GO TO THE WITNESS'S UNDERSTANDING

10:14AM  8     OF STATEMENTS MADE BY MS. HOLMES.  AND I UNDERSTAND THE DEFENSE

10:14AM  9     HAS OBJECTIONS HERE.

10:14AM 10          THE POINT OF THESE QUESTIONS -- AND THESE WOULD BE

10:14AM 11     QUESTIONS LIKE, WHAT WAS YOUR UNDERSTANDING ABOUT THE NUMBER OF

10:14AM 12     TESTS THAT THERANOS'S DEVICE COULD RUN BASED ON THAT STATEMENT

10:14AM 13     FROM MS. HOLMES?

10:14AM 14          AND I THINK THE DEFENSE, AND I'LL LET MR. CLINE SPEAK FOR

10:14AM 15     HIMSELF, BUT THE DEFENSE OBJECTS THAT MR. PARLOFF'S SUBJECTIVE

10:15AM 16     UNDERSTANDING IS NOT RELEVANT HERE.

10:15AM 17          THE GOVERNMENT DISAGREES WITH THAT.

10:15AM 18          THE INDICTMENT SPECIFICALLY ALLEGES IN PARAGRAPH 12(I)

10:15AM 19     THAT IT WAS PART OF THE SCHEME TO DEFRAUD THAT THE DEFENDANT

10:15AM 20     MADE FALSE AND MISLEADING STATEMENTS TO JOURNALISTS AND THEN

10:15AM 21     PASSED ALONG THE ARTICLES TO INVESTORS AND VICTIMS.

10:15AM 22          SHOWING THAT THIS WITNESS WAS DECEIVED BY THE DEFENDANT IS

10:15AM 23     NOT THE SAME THING AS ALLEGING THAT THIS VICTIM -- OR THAT THIS

10:15AM 24     WITNESS IS A VICTIM OF THE SCHEME TO DEFRAUD.  THOSE ARE TWO

10:15AM 25     DIFFERENT THINGS.

10:15AM 1        AND ACTUALLY PREPARING FOR THIS HEARING, I CAME ACROSS THE

10:15AM 2    COURT'S ORDER ON THE DEFENDANT'S MOTION TO DISMISS THE

10:15AM 3    SUPERSEDING INDICTMENTS, AND THE COURT WILL RECALL THAT SEVERAL

10:15AM 4    MONTHS AGO THE DEFENSE WAS OBJECTING TO LANGUAGE IN THE

10:15AM 5    INDICTMENTS THAT RELATED TO THE DECEPTION OF DOCTORS.

10:15AM 6        AND THE DEFENSE WAS ADVANCING THE ARGUMENT THAT THE

10:15AM 7    DECEPTION OF SOMEONE OTHER THAN A VICTIM COULD NOT BE PROBATIVE

10:16AM 8    AS TO THE DEFENDANT'S INTENT TO DECEIVE ACTUAL VICTIMS.

10:16AM 9        THE COURT DISAGREED WITH THAT, AND THAT'S AT ECF 552 AT

10:16AM 10    PAGES 26 TO 27.  AND THE COURT SAID THAT TO THE EXTENT THAT THE

10:16AM 11    DEFENDANTS BELIEVE ALLEGATIONS THAT A DEFENDANT DECEIVED ONE

10:16AM 12    PARTY CANNOT BE PROBATIVE OF AN INTENT TO DEFRAUD ANOTHER, THE

10:16AM 13    COURT CANNOT AGREE.  THERE'S NO QUESTION THAT DOCTORS MAY SERVE

10:16AM 14    AS CONDUITS OF INFORMATION TO THEIR PATIENTS.

10:16AM 15        THAT'S THE SAME THING THAT HAPPENED HERE.  THIS WITNESS

10:16AM 16    WAS A CONDUIT OF MISLEADING INFORMATION TO VICTIMS IN THIS

10:16AM 17    CASE, AND FOR THAT REASON HIS UNDERSTANDING AND THE FACT THAT

10:16AM 18    HE WAS HIMSELF DECEIVED IS A NECESSARY PART OF EXPLAINING THE

10:16AM 19    MECHANISM OF HOW THOSE ARTICLES WERE USED TO DECEIVE THE

10:16AM 20    VICTIMS.

10:16AM 21        THE COURT:  THANK YOU.

10:16AM 22        TELL ME A LITTLE BIT ABOUT HOW THAT WOULD, TO THE EXTENT

10:16AM 23    THAT YOU CAN, JUST AN EXAMPLE OF A QUESTION, HIS UNDERSTANDING

10:17AM 24    OF HER STATEMENTS.  IT'S KIND OF BROAD.  THAT STATEMENT IS

10:17AM 25    BROAD, PARDON ME.

5609

10:17AM 1    BUT WHAT DOES THAT MEAN?  AND YOU JUST SAID, WELL, THE

10:17AM 2  NUMBER OF MACHINES OR THE NUMBER OF ASSAYS AND THOSE TYPES OF

10:17AM 3  THINGS.  IS THAT DIFFERENT THAN ASKING THE QUESTION, HOW MANY

10:17AM 4  ASSAYS DID SHE SAY THE MACHINES COULD RUN?  AND SHE SAID 50,

10:17AM 5  100, 5, WHATEVER THE ANSWER IS, AND ISN'T THAT ENOUGH OR

10:17AM 6  DOES -- DO YOU NEED HIS UNDERSTANDING OF THAT ANSWER?

10:17AM 7    MR. BOSTIC:  SO, FOR EXAMPLE, YOUR HONOR, THERE IS,

10:17AM 8  THERE IS ONE CONVERSATION WHERE MS. HOLMES TELLS MR. PARLOFF

10:17AM 9  THAT SHE CAN'T TALK ABOUT THE ACTUAL USE IN AFGHANISTAN OF THE

10:17AM 10  COMPANY'S TECHNOLOGY.

10:17AM 11    I WOULD CONSIDER ASKING MR. PARLOFF A QUESTION ABOUT THAT

10:17AM 12  STATEMENT TO THE EFFECT OF, DID YOU UNDERSTAND FROM

10:18AM 13  MS. HOLMES'S STATEMENT THAT THERE WAS SOME ACTUAL USE OCCURRING

10:18AM 14  IN AFGHANISTAN AT THAT TIME?

10:18AM 15    SO IT'S AS SIMPLE AS JUST TO GIVE HIM A CHANCE TO EXPLAIN

10:18AM 16  THE EFFECT THAT THOSE STATEMENTS WERE HAVING ON HIM AND HOW THE

10:18AM 17  INFORMATION FROM MS. HOLMES WAS SHAPING HIS UNDERSTANDING ABOUT

10:18AM 18  WHAT THE TECHNOLOGY CAN DO AND HOW IT WAS BEING USED, BECAUSE

10:18AM 19  THAT UNDERSTANDING IS WHAT ENDED UP SHAPING THE CONTENT OF THE

10:18AM 20  ARTICLE.

10:18AM 21    THE COURT:  ALL RIGHT.  AND I THINK I UNDERSTAND

10:18AM 22  YOUR ARGUMENT THAT TO THE EXTENT THAT WHATEVER INFORMATION HE

10:18AM 23  RECEIVED FROM HER, EITHER STATEMENTS, WHATEVER, AND I THINK YOU

10:18AM 24  TOUCH ON THIS IN THE PLEADINGS AS WELL, WITNESSES CAN TESTIFY

10:18AM 25  ABOUT OBSERVATIONS OF THE PARTY THAT THEY'RE TALKING TO.  WERE

5610

10:18AM 1    THEY NERVOUS?  WHATEVER THAT IS.  I DON'T KNOW IF THAT'S

10:18AM 2    RELEVANT HERE.

10:18AM 3         BUT A WITNESS COULD CERTAINLY TALK ABOUT THOSE TYPES OF

10:18AM 4    THINGS AS WELL IN ADDITION TO.

10:18AM 5         ONE CONCERN I HAVE IS THE ISSUE ABOUT -- THAT RELATES TO

10:19AM 6    THE SUBPOENA ISSUE AND WHETHER OR NOT INFORMATION IS GOING TO

10:19AM 7    BE ADDRESSED THAT MIGHT CALL UPON OTHER INDIVIDUALS THAT

10:19AM 8    MR. PARLOFF TALKED TO SUCH THAT WE NEED TO WORRY ABOUT WHETHER

10:19AM 9    OR NOT OTHER INFORMATION IS AT ISSUE IN THE CASE.

10:19AM 10        IT SOUNDS LIKE, FROM WHAT YOU'VE TOLD ME, THAT HE IS GOING

10:19AM 11   TO TESTIFY ABOUT HIS INTERVIEW AND THE ANSWERS THAT SHE GAVE,

10:19AM 12   PERHAPS HIS UNDERSTANDING OF THOSE ANSWERS CONTEXTUAL WITH

10:19AM 13   HIS -- WHY HE WROTE THE ARTICLE, WHY HE PUT CERTAIN STATEMENTS

10:19AM 14   IN HIS ARTICLE, BUT NOT AS TO ANYTHING ELSE HE LEARNED IN OTHER

10:19AM 15   RESEARCH FROM OTHER INDIVIDUALS THAT MIGHT IMPACT THAT

10:19AM 16   SUBPOENA.

10:19AM 17             MR. BOSTIC:  THAT'S CORRECT, YOUR HONOR.

10:19AM 18        THE GOVERNMENT DOES NOT INTEND TO ASK MR. PARLOFF ABOUT

10:20AM 19   STATEMENTS MADE BY INDIVIDUALS OTHER THAN MS. HOLMES OR ABOUT

10:20AM 20   HIS OWN INDEPENDENT RESEARCH OR INFORMATION HE MIGHT HAVE

10:20AM 21   GLEANED FROM OTHER SOURCES.

10:20AM 22        THE FOCUS HERE, PROPERLY, SHOULD BE ON WHAT THE DEFENDANT

10:20AM 23   TOLD HIM, INFORMATION THAT SHE SUPPLIED, AND WHAT INFERENCES

10:20AM 24   CAN BE DRAWN ABOUT HER INTENT FROM THAT.

10:20AM 25             THE COURT:  ALL RIGHT.  THERE'S SOME -- I READ

10:20AM 1    SOMEWHERE WHERE SHE APPARENTLY TOLD HIM TO CONTACT THESE OTHER

10:20AM 2    PEOPLE FOR HIS STORY, AND HE TOLD HER TO CONTACT, I THINK,

10:20AM 3    SCIENTISTS OR OTHER INDIVIDUALS.

10:20AM 4        IS THAT GOING TO COME UP AT ALL IN YOUR EXAMINATION?

10:20AM 5            MR. BOSTIC:  NOT IN THE GOVERNMENT'S DIRECT,

10:20AM 6    YOUR HONOR.

10:20AM 7            THE COURT:  OKAY.  THANK YOU.

10:20AM 8        MR. CLINE?

10:20AM 9            MR. CLINE:  YES, YOUR HONOR.  LET ME TAKE THOSE IN

10:20AM 10   REVERSE ORDER IF I COULD.

10:20AM 11       LET ME START WITH MR. PARLOFF'S UNDERSTANDING, AND MAYBE

10:20AM 12   ACTUALLY STEP BACK FOR A SECOND AND SAY WHAT WE ARE TRYING TO

10:20AM 13   DO HERE, AS A WAY OF -- BOTH AS A MATTER OF RELEVANCE AND 403,

10:21AM 14   AND ALSO AS A MATTER OF AVOIDING THE SUBPOENA AND PRIVILEGE

10:21AM 15   ISSUES THAT LURK ON THE PERIPHERY HERE, IS KEEP MR. PARLOFF TO

10:21AM 16   THE OBJECTIVE FACTS.

10:21AM 17       SO, FOR EXAMPLE, HE CAN TESTIFY ABOUT HE, HE HAD AN IDEA

10:21AM 18   ABOUT WRITING AN ARTICLE FOR "FORTUNE," HE PITCHED IT TO

10:21AM 19   "FORTUNE."  AS PART OF THAT PROCESS HE INTERVIEWED MS. HOLMES.

10:21AM 20       AND THEN, OF COURSE, HE HAS TAPES OF THOSE INTERVIEWS.  SO

10:21AM 21   THERE WON'T BE ANY QUESTIONS ABOUT WHAT MS. HOLMES SAID.

10:21AM 22       NOW, THERE MAY VERY WELL BE COMPLETENESS ISSUES THAT WE'LL

10:21AM 23   HAVE TO WRESTLE WITH A LITTLE BIT FURTHER DOWN THE ROAD.  I'M

10:21AM 24   SURE THERE WILL BE ACTUALLY.

10:21AM 25       BUT APART FROM THAT, IT WILL BE AN OBJECTIVE FACT WHAT MS.

10:21AM 1    HOLMES SAID TO MR. PARLOFF, WHAT HE ASKED HER, WHAT SHE SAID TO

10:21AM 2    HIM, THE WHOLE EXCHANGE.

10:21AM 3         THE NEXT OBJECTIVE FACT IS THAT HE WROTE AN ARTICLE, AND

10:22AM 4    THAT ARTICLE IS ALREADY IN EVIDENCE.  HE'LL AUTHENTICATE IT

10:22AM 5    AGAIN.

10:22AM 6         AND THEN THE THIRD OBJECTIVE FACT, AND THIS IS SOMETHING

10:22AM 7    THAT MR. PARLOFF CAN'T TESTIFY ABOUT, BUT IT'S -- IT IS

10:22AM 8    INTEGRAL TO THIS CONDUIT THEORY, IS, WHAT DID MS. HOLMES DO

10:22AM 9    WITH THAT ARTICLE?  DID SHE USE IT TO IN SOME WAY DECEIVE

10:22AM 10   INVESTORS?

10:22AM 11        SO THOSE ARE KIND OF THE THREE OBJECTIVE PILLARS OF WHAT

10:22AM 12   THE GOVERNMENT IS TRYING TO PROVE HERE.

10:22AM 13        WHAT DID MS. HOLMES -- WHAT WAS MR. PARLOFF DOING?  HE WAS

10:22AM 14   WRITING AN ARTICLE FOR FORTUNE.

10:22AM 15        WHAT DID MS. HOLMES SAY TO HIM?  WHAT DID HE END UP

10:22AM 16   WRITING?  AND THEN WHAT DID MS. HOLMES DO WITH THE ARTICLE?

10:22AM 17             THE COURT:  BUT HE CAN'T TESTIFY AS TO THE LATTER?

10:22AM 18             MR. CLINE:  HE CANNOT.  HE CANNOT.

10:22AM 19        BUT JUST IN TERMS OF THE GOVERNMENT'S THEORY, THAT'S THE

10:22AM 20   FINAL PIECE OF IT.

10:22AM 21        IF THE ARTICLE HAD NEVER BEEN PUBLISHED, THIS WOULD JUST

10:22AM 22   HAVE BEEN AN IDEA, YOU KNOW, HER STATEMENTS MIGHT HAVE

10:22AM 23   INDEPENDENT EVIDENTIARY SIGNIFICANCE, LIKE A STATEMENT TO A

10:23AM 24   HAIR DRESSER WOULD, BUT THE CONDUIT THEORY WOULDN'T EXIST.

10:23AM 25        THE POINT OF THIS IS THAT THIS ARTICLE GETS PUBLISHED AND

10:23AM 1   THEN IT GETS USED WITH INVESTORS, AND HE CAN'T TESTIFY TO THAT.

10:23AM 2        SO THE CLOSER WE ADHERE TO THOSE OBJECTIVE FACTS, THE LESS

10:23AM 3   WE HAVE TO WORRY ABOUT WHAT OTHER PEOPLE TOLD HIM, PRIVILEGE

10:23AM 4   ISSUES, THE SUBPOENA AND SO FORTH.

10:23AM 5        THE MORE WE VEER AWAY FROM THOSE, THE MORE WE'RE GOING TO

10:23AM 6   GET INTO THOSE THINGS.

10:23AM 7        SO WITH THAT SORT OF FRAME, LET'S TALK ABOUT HIS

10:23AM 8   UNDERSTANDING.  AND THE EXAMPLE THAT MR. BOSTIC GAVE MIGHT BE A

10:23AM 9   HELPFUL ONE.

10:23AM 10       HE ASKED MS. HOLMES WHAT USE THE MILITARY WAS MAKING OR

10:23AM 11  WHAT WAS GOING ON IN AFGHANISTAN OR WHATEVER.

10:23AM 12       AND SHE SAID -- I'M PARAPHRASING MR. BOSTIC.  SHE SAYS, I

10:23AM 13  CAN'T TELL YOU.

10:23AM 14       SO MR. BOSTIC WANTS HIM TO TESTIFY, WANTS MR. PARLOFF TO

10:23AM 15  TESTIFY, I TOOK FROM THAT SOMETHING OTHER THAN WHAT MS. HOLMES

10:23AM 16  ACTUALLY SAID.  I INFERRED FROM THAT SOMETHING DIFFERENT.

10:24AM 17       WELL, MR. PARLOFF, IN THE COURSE OF HIS REPORTING, TALKED

10:24AM 18  TO GENERAL MATTIS, HE TALKED TO FORMER SECRETARY OF DEFENSE

10:24AM 19  WILLIAM PERRY, BOTH OF WHOM WERE ON THE THERANOS BOARD AT THE

10:24AM 20  TIME, AND HE TALKED WITH THEM ABOUT THAT ISSUE.

10:24AM 21       AND SO IF MR. PARLOFF IS GOING TO SAY, THAT WAS MY

10:24AM 22  UNDERSTANDING, I GET TO PROBE THAT, IT SEEMS TO ME, AND SUGGEST

10:24AM 23  THAT THAT UNDERSTANDING EITHER, A, WAS UNREASONABLE OR PERHAPS

10:24AM 24  NOT CREDIBLE; OR, B, THAT THE -- IF HE CAME AWAY WITH THAT

10:24AM 25  UNDERSTANDING, IT WAS NOT AS A RESULT OF WHATEVER MS. HOLMES

5614

10:24AM  1    SAID TO HIM, IT WAS A RESULT OF TALKING TO THESE OTHER PEOPLE.

10:24AM  2           THE COURT:  SO IF HE SAYS, "MY UNDERSTANDING BASED

10:24AM  3    ON WHAT SHE TOLD ME DURING THAT INTERVIEW WAS X" --

10:24AM  4           MR. CLINE:  RIGHT.

10:24AM  5           THE COURT:  -- AND THAT'S IT, THAT WAS THE QUESTION,

10:24AM  6    "WHAT WAS YOUR UNDERSTANDING BASED ON WHAT SHE TOLD YOU," NOT

10:24AM  7    WHAT GENERAL MATTIS OR ANYONE ELSE SAID, BUT JUST BASED ON WHAT

10:25AM  8    SHE TOLD YOU, ISN'T THAT PROPER?

10:25AM  9           MR. CLINE:  NO, I DON'T THINK IT IS.  I THINK "WHAT

10:25AM  10   DID SHE TELL YOU" IS CERTAINLY PROPER.  HIS SUBJECTIVE

10:25AM  11   UNDERSTANDING OF THAT, FIRST OF ALL, I THINK IS IRRELEVANT AND

10:25AM  12   I THINK IT'S 403.

10:25AM  13      BUT BEYOND THAT, I SHOULD NOT HAVE TO JUST TAKE THAT AT

10:25AM  14   FACE VALUE.  I SHOULD NOT HAVE TO JUST SAY, OKAY, THAT'S WHAT

10:25AM  15   YOU SAY, I CAN'T CHALLENGE IT.  I GET TO CHALLENGE IT.

10:25AM  16      AND THE CHALLENGE IS, IF YOU CAME AWAY, MR. PARLOFF, WITH

10:25AM  17   THAT IMPRESSION OF WHAT WAS GOING ON IN AFGHANISTAN, IT'S NOT

10:25AM  18   BASED ON MS. HOLMES'S REFUSAL TO TELL YOU, IT'S BASED ON YOUR

10:25AM  19   CONVERSATIONS WITH THESE OTHER PEOPLE.

10:25AM  20           THE COURT:  IF THAT FORMED THE -- I'M SORRY TO

10:25AM  21   INTERRUPT YOU.

10:25AM  22      BUT IF THAT INFORMED PART OF HIS STORY, IN OTHER WORDS, IF

10:25AM  23   HE DID ADDITIONAL RESEARCH AND TALKED TO MATTIS AND OTHER

10:25AM  24   PEOPLE, AND THAT'S THE INFORMATION THAT GOT INTO THE STORY --

10:25AM  25   THIS IS WHERE I HAVE SOME CONCERNS ABOUT BLEEDING OVER,

10:25AM 1    MR. BOSTIC, I'M LOOKING AT YOU -- IF HE SAID OR IF HE'S

10:26AM 2    QUESTIONED, WHAT DID SHE TELL YOU ABOUT AFGHANISTAN?

10:26AM 3        SHE SAID WHATEVER SHE SAID.

10:26AM 4        AND THAT COMES IN ALONE, THAT'S IT, AND THEN YOU MOVE TO

10:26AM 5    ANOTHER TOPIC, THERE'S NO OBJECTION TO THAT BECAUSE HE'S SAYING

10:26AM 6    THAT'S WHAT SHE SAID.

10:26AM 7        AND THEN IT'S UP TO, I SUPPOSE, OTHER WITNESSES TO TIE ALL

10:26AM 8    OF THAT TOGETHER.

10:26AM 9        BUT I DO HAVE SOME CONCERN ABOUT IF IT GOES FURTHER

10:26AM 10   THAN -- IF HE USED OTHER INFORMATION FOR HIS STORY, THEN THAT'S

10:26AM 11   THE CONCERN THAT I HAVE, AND HOW DO WE PARSE THAT OUT?  AND

10:26AM 12   DOES THAT THEN BLEED INTO THE 17 SUBPOENA THAT IS BEFORE US?

10:26AM 13       MR. BOSTIC:  SO A FEW POINTS IN RESPONSE,

10:26AM 14   YOUR HONOR.

10:26AM 15       THE COURT:  SURE.

10:26AM 16       MR. BOSTIC:  FIRST, JUST TO MAKE SURE THAT WE'RE

10:26AM 17   THINKING OF THIS EXAMPLE ACCURATELY, WITH THE USE IN

10:26AM 18   AFGHANISTAN, I'M NOT SURE WHAT THE QUESTION WAS.  I DON'T

10:26AM 19   REMEMBER OFFHAND.

10:26AM 20       BUT I UNDERSTAND THE RESPONSE FROM MS. HOLMES WAS "I CAN'T

10:27AM 21   TELL YOU ABOUT THE ACTUAL USE IN AFGHANISTAN."

10:27AM 22       SO IT'S SOMETHING MORE THAN "I CAN'T TELL YOU."  THERE'S

10:27AM 23   AN IMPLICIT STATEMENT OR ASSERTION IN THAT STATEMENT.  WHEN

10:27AM 24   SOMEONE SAYS, "I CAN'T TELL YOU ABOUT THE ACTUAL USE IN

10:27AM 25   AFGHANISTAN," IT DOES IMPLY THAT THERE IS ACTUAL USE IN

10:27AM 1     AFGHANISTAN.

10:27AM 2          SO THE QUESTION TO MR. PARLOFF WOULD BE SOMETHING TO THE

10:27AM 3     EFFECT OF, "DID YOU UNDERSTAND THAT TO IMPLY OR TO BE TELLING

10:27AM 4     YOU THAT THERE WAS ACTUAL USE OCCURRING IN AFGHANISTAN?"

10:27AM 5          SO, AGAIN, THIS IS ABOUT CONNECTING THE ACTUAL LANGUAGE

10:27AM 6     FROM THE DEFENDANT TO MR. PARLOFF'S UNDERSTANDING.

10:27AM 7          THE REASON WHY IT'S NOT IRRELEVANT, THE REASON WHY IT

10:27AM 8     MATTERS IS BECAUSE MR. PARLOFF WASN'T A CONDUIT OF MS. HOLMES'S

10:27AM 9     STATEMENTS.  IT'S NOT THAT HE TOOK THESE STATEMENTS AND MADE

10:27AM 10    THESE RECORDINGS AND PROVIDED THESE RECORDINGS TO THE PUBLIC.

10:27AM 11    THAT WOULD BE ONE THING.

10:27AM 12         WHAT ACTUALLY HAPPENED WAS THAT HE HAD CONVERSATIONS WITH

10:28AM 13    MS. HOLMES AND HE DEVELOPED AN UNDERSTANDING OF WHAT THE TRUTH

10:28AM 14    WAS ABOUT THERANOS BASED ON THOSE CONVERSATIONS, AND THEN HIS

10:28AM 15    UNDERSTANDING SHAPED THE CONTENT OF THE ARTICLE.

10:28AM 16         SO HE WASN'T JUST A CONDUIT FOR MR. HOLMES'S STATEMENTS.

10:28AM 17    HE WAS A CONDUIT OF INACCURATE OR MISLEADING IMPRESSIONS OR

10:28AM 18    UNDERSTANDING, AND SO IT'S IMPORTANT FOR THE JURY TO HEAR ABOUT

10:28AM 19    WHAT HE TOOK FROM MS. HOLMES'S STATEMENTS BECAUSE THAT'S WHAT

10:28AM 20    ACTUALLY INFORMED THE CONTENT OF THE ARTICLE.

10:28AM 21         THAT DOES NOT CREATE DISCOVERY PROBLEMS AND IT DOESN'T

10:28AM 22    NECESSITATE GETTING INTO WHAT OTHER PEOPLE SAID, AND HERE'S

10:28AM 23    WHY.  I NOTICED THAT WHEN MR. CLINE WAS DISCUSSING THIS, HE

10:28AM 24    SAID HE WANTED TO BE ABLE TO CHALLENGE MR. PARLOFF'S

10:28AM 25    UNDERSTANDINGS TO SHOW WHETHER THEY WERE UNREASONABLE, FOR

5617

10:28AM 1      EXAMPLE, WHETHER MR. PARLOFF DREW AN UNREASONABLE UNDERSTANDING

10:28AM 2      FROM WHAT MS. HOLMES SAID.

10:28AM 3          THIS IS NOT A CASE WHERE -- FIRST OF ALL, MR. PARLOFF IS

10:28AM 4      NOT A VICTIM OF THE FRAUD.  EVEN IF HE WERE, THE GOVERNMENT

10:29AM 5      WOULD NOT BE REQUIRED TO SHOW RELIANCE, MUCH LESS REASONABLE

10:29AM 6      RELIANCE.

10:29AM 7          SO IF THIS WERE A CASE WHERE THE GOVERNMENT HAD TO SHOW

10:29AM 8      REASONABLE RELIANCE AS TO THIS INDIVIDUAL, IT WOULD BE MORE

10:29AM 9      RELEVANT WHAT OTHER INFORMATION WAS AVAILABLE TO HIM.

10:29AM 10         AND AS TO VICTIMS IN THIS CASE, ACTUAL VICTIMS, THE

10:29AM 11     DEFENSE HAS BEEN ABLE TO EXPLORE OTHER SOURCES OF INFORMATION

10:29AM 12     THAT WERE AVAILABLE TO THOSE VICTIMS BECAUSE THAT IS ARGUABLY

10:29AM 13     RELEVANT TO MATERIALITY.

10:29AM 14         MATERIALITY IS NOT RELEVANT AS TO THIS WITNESS EITHER.

10:29AM 15         THE GOVERNMENT IS SEEKING TO SHOW NOT THAT HE WAS A VICTIM

10:29AM 16     OF THE FRAUD, BUT ONLY THAT HE WAS DECEIVED.  THE FACT THAT HE

10:29AM 17     WAS DECEIVED IS RELEVANT AND IT'S PROBATIVE OF MS. HOLMES'S

10:29AM 18     INTENT TO DECEIVE THE ACTUAL VICTIMS.  THIS IS ALLEGED IN THE

10:29AM 19     INDICTMENT.  WE PROVIDED SUBSTANTIAL NOTICE OF THIS UNDER

10:29AM 20     404(B) AS WELL.

10:29AM 21         SO TO BE ABLE TO SHOW THAT HE WAS DECEIVED BY MS. HOLMES'S

10:29AM 22     STATEMENTS, AGAIN, KEEPING THE FOCUS JUST ON THOSE STATEMENTS,

10:30AM 23     SHOULD BE PERMISSIBLE.

10:30AM 24         IT'S UNCLEAR WHAT RELEVANCE THE STATEMENTS THAT OTHERS

10:30AM 25     MADE COULD HAVE TO THAT QUESTION.

| | | |
|---|---|---|
| 10:30AM | 1 | FOR EXAMPLE, IF OTHER PEOPLE MADE STATEMENTS THAT WERE |
| 10:30AM | 2 | CONSISTENT WITH WHAT MS. HOLMES SAID -- FIRST OF ALL, MANY, IF |
| 10:30AM | 3 | NOT ALL, OF THESE INDIVIDUALS WOULD HAVE HAD MS. HOLMES AS |
| 10:30AM | 4 | THEIR PRIMARY SOURCE OF INFORMATION, SO ITS UNCLEAR HOW MUCH |
| 10:30AM | 5 | VALUE THEIR STATEMENTS OR INFORMATION WOULD HAVE SEPARATE FROM |
| 10:30AM | 6 | THE DEFENDANT'S. |
| 10:30AM | 7 | BUT REGARDLESS, IT SEEMS LIKE THE MOST IMPACTFUL USE OF |
| 10:30AM | 8 | OTHER STATEMENTS WOULD BE TO BOLSTER MS. HOLMES'S CLAIMS AND |
| 10:30AM | 9 | ASSERTIONS.  SO IF MS. HOLMES SAID SOMETHING THAT THE |
| 10:30AM | 10 | GOVERNMENT IS POINTING TO AS FALSE AND THE DEFENSE CAN SHOW |
| 10:30AM | 11 | OTHER PEOPLE SAID THE SAME THING, WELL, YOU MIGHT THINK THAT |
| 10:30AM | 12 | MIGHT REHABILITATE MS. HOLMES'S CREDIBILITY AND SHOW THAT OTHER |
| 10:30AM | 13 | PEOPLE WERE SAYING THE SAME THING, MAYBE IT WAS TRUE. |
| 10:30AM | 14 | BUT THAT'S AN IMPERMISSIBLE HEARSAY USE OF THOSE OUT OF |
| 10:31AM | 15 | COURT STATEMENTS BY NONTESTIFYING INDIVIDUALS.  SO THEY CAN'T |
| 10:31AM | 16 | COME IN FOR THAT PURPOSE. |
| 10:31AM | 17 | TO THE EXTENT THAT THEY WERE ALSO MISLEADING, AGAIN, IT'S |
| 10:31AM | 18 | UNCLEAR WHY THAT WOULD MATTER HERE.  THE FOCUS IS ON THIS |
| 10:31AM | 19 | DEFENDANT'S INTENT.  SO THE FACT THAT OTHER PEOPLE EITHER |
| 10:31AM | 20 | KNOWINGLY OR UNKNOWINGLY PASSED ALONG SIMILARLY MISLEADING |
| 10:31AM | 21 | INFORMATION, IF THAT IS INDEED THE CASE, AND WE DON'T HAVE ANY |
| 10:31AM | 22 | REASON TO KNOW OR BELIEVE THAT IS THE CASE, BUT IF THAT |
| 10:31AM | 23 | HAPPENED, IT'S UNCLEAR WHY THAT SHOULD MATTER FOR THIS JURY |
| 10:31AM | 24 | WHOSE TASK IS TO JUDGE THE DEFENDANT'S INTENT, NOT SCRUTINIZE |
| 10:31AM | 25 | THIS WITNESS AND DETERMINE WHETHER HE HAD A REASONABLE |

10:31AM  1   FOUNDATION FOR ARRIVING AT THE BELIEFS THAT HE DID.

10:31AM  2         THE COURT:  IS -- THANK YOU.

10:31AM  3     IF THE QUESTION ABOUT AFGHANISTAN WERE ASKED AND IF THE

10:31AM  4   QUESTION, THE FOLLOW-UP QUESTION FROM YOU, WAS, DID IT APPEAR

10:32AM  5   THAT THAT INFORMATION WAS CONFIDENTIAL AND THAT'S WHY SHE

10:32AM  6   COULDN'T TELL YOU, I THINK THAT WOULD BE A PERMISSIBLE

10:32AM  7   QUESTION, AND I THINK I WOULD ALLOW HER -- HIM TO ANSWER THAT

10:32AM  8   QUESTION, "I CAN'T TELL YOU THAT."  WELL, IT MUST BE

10:32AM  9   CONFIDENTIAL.

10:32AM  10        SHE PROBABLY DIDN'T SAY THAT.  I DON'T KNOW.

10:32AM  11        BUT THAT TYPE OF INFERENCE IS ONE.

10:32AM  12        BUT, AGAIN, I GET BACK TO -- THE CONCERN THAT I HAVE IS

10:32AM  13   THE ULTIMATE WORK PRODUCT, HIS STORY, AND WHETHER INFORMATION

10:32AM  14   THAT, IF HE WROTE ABOUT AFGHANISTAN AND WROTE THINGS OTHER THAN

10:32AM  15   WHAT SHE ACTUALLY SAID, IS THERE A SOURCE, A SECONDARY SOURCE

10:32AM  16   FOR THAT INFORMATION?

10:32AM  17        AND I UNDERSTAND IN THE ABSTRACT MR. CLINE'S POINT, WELL,

10:32AM  18   IF THE STORY WAS NOT INFORMED BY WHAT SHE SAID BUT BY

10:32AM  19   ADDITIONAL RESEARCH, WE SHOULD BE ABLE TO ASK THAT QUESTION.

10:32AM  20        THAT'S THE CONCERN THAT I HAVE ABOUT THAT, AND HOW FAR

10:32AM  21   DOES THAT GO?

10:32AM  22        I, I -- AS I SAID, I THINK HE CAN ASK CERTAIN QUESTIONS,

10:33AM  23   DID SHE APPEAR -- DID THAT SUGGEST CONFIDENTIALITY BECAUSE SHE

10:33AM  24   COULDN'T SAY THAT?  OR DID IT SUGGEST IGNORANCE THAT SHE JUST

10:33AM  25   DIDN'T KNOW?

10:33AM 1       I SUPPOSE THOSE ARE BOTH REASONABLE INFERENCES I SUPPOSE.

10:33AM 2       I CAN'T SAY THAT.  DOES THAT MEAN IT'S CONFIDENTIAL?  DOES

10:33AM 3  IT MEAN SHE DIDN'T KNOW?  I DON'T KNOW.

10:33AM 4       MR. CLINE?

10:33AM 5           MR. CLINE:  I CERTAINLY THING HE CANNOT BE PERMITTED

10:33AM 6  TO OFFER HIS UNDERSTANDING AND HAVE IT BE UNCHALLENGEABLE, IN

10:33AM 7  EFFECT, BY US.

10:33AM 8       AND I THINK QUESTIONING HIM ABOUT OTHER SOURCES OF

10:33AM 9  INFORMATION ON THE SAME TOPIC THAT WE KNOW HE TALKED TO WOULD

10:33AM 10 CLEARLY BE PERMISSIBLE IF THAT HAPPENED.

10:33AM 11      AS TO YOUR HONOR'S EXAMPLE, EVEN THAT MAKES ME ANXIOUS.

10:33AM 12 THE MORE WE GET INTO MR. PARLOFF'S SUBJECTIVE STATE OF MIND AS

10:33AM 13 OPPOSED TO SIMPLY HIS, HE TOOK THESE STATEMENTS, HE WROTE THIS

10:34AM 14 ARTICLE -- AND AGAIN, THIS IS NOT SOMETHING THAT HE CAN TESTIFY

10:34AM 15 ABOUT, BUT THE GOVERNMENT CAN PROVE IT, OR ATTEMPT TO PROVE

10:34AM 16 IT -- WHAT MS. HOLMES DID WITH THAT ARTICLE, THAT'S WHAT IS

10:34AM 17 IMPORTANT HERE, AND HOW WHAT MS. HOLMES SAID TRANSLATED INTO

10:34AM 18 THE ARTICLE IS REALLY BESIDE THE POINT.

10:34AM 19          THE COURT:  CAN HE ASK, WELL, DID SHE APPEAR NERVOUS

10:34AM 20 DURING THE INTERVIEW?  DID SHE APPEAR -- WHAT WAS HER DEMEANOR?

10:34AM 21      HE CAN CERTAINLY ASK THOSE QUESTIONS.  A WITNESS CAN

10:34AM 22 TESTIFY ABOUT THOSE THINGS, CAN'T THEY?

10:34AM 23          MR. CLINE:  WITHIN NARROW LIMITS.

10:34AM 24          THE COURT:  WE HEARD A LAB WITNESS SAY THAT THE

10:34AM 25 ANSWERS WERE CAGEY.  I THINK THEY USED THAT TERM.

| | | |
|---|---|---|
| 10:34AM | 1 | DO YOU RECALL THAT? |
| 10:34AM | 2 | MR. CLINE:  I DO RECALL THAT. |
| 10:34AM | 3 | BUT I ALSO REMEMBER WHEN MR. WEBER WANTED TO TESTIFY THAT |
| 10:34AM | 4 | MS. HOLMES WAS EVASIVE, I HAD VERY STRONG OBJECTIONS TO THAT. |
| 10:34AM | 5 | THE COURT:  SURE. |
| 10:34AM | 6 | MR. CLINE:  THIS IS A WITNESS, YOUR HONOR, WHO -- |
| 10:35AM | 7 | SOMETHING BAD HAPPENED WITH THIS WITNESS.  WHAT I MEAN BY THAT |
| 10:35AM | 8 | IS HE WROTE THIS GLOWING ARTICLE, AND A YEAR AND A HALF LATER |
| 10:35AM | 9 | MR. CARREYROU WROTE HIS ARTICLE, AND THIS WITNESS WAS BADLY |
| 10:35AM | 10 | EMBARRASSED. |
| 10:35AM | 11 | AND HE ENDED UP WRITING AN ARTICLE WHICH THE GOVERNMENT |
| 10:35AM | 12 | AGREES IT'S NOT GOING TO TRY TO ADMIT, AND I'M CERTAINLY NOT |
| 10:35AM | 13 | GOING TO OPEN THE DOOR FOR IT, IN WHICH HE BASICALLY SAYS, I |
| 10:35AM | 14 | WAS MISLED. |
| 10:35AM | 15 | ANY OPPORTUNITY -- THIS IS MY FEAR.  NOW, I HAVE NEVER MET |
| 10:35AM | 16 | MR. PARLOFF, AND I HAVE NO REASON TO THINK THAT HE'S NOT AN |
| 10:35AM | 17 | HONORABLE FELLOW, BUT MY FEAR IS THAT IF HE'S GIVEN ANY |
| 10:35AM | 18 | OPPORTUNITY TO VOICE A SUBJECTIVE VIEW, IT'S GOING TO BE |
| 10:35AM | 19 | PREJUDICIAL, DAMAGING, AND SOMETHING THAT I'M NOT GOING TO BE |
| 10:35AM | 20 | ABLE TO DO ANYTHING WITH. |
| 10:35AM | 21 | SO THE MORE OPPORTUNITY HE HAS FOR THAT, THE MORE LIKELY |
| 10:35AM | 22 | WE ARE TO GET INTO TROUBLE; AND THE MORE HE'S CONSTRAINED TO |
| 10:35AM | 23 | WHAT I THINK IS TRULY RELEVANT TO THIS CONDUIT THEORY, WHICH IS |
| 10:35AM | 24 | KIND OF THE OBJECTIVE FACTS, THE BETTER OFF WE'RE ALL GOING TO |
| 10:35AM | 25 | BE. |

10:35AM  1          SO THAT'S MY CONCERN.

10:36AM  2          I'M ALWAYS TROUBLED WHEN WITNESSES START TESTIFYING, WELL,

10:36AM  3     SHE WAS, SHE WAS CAGEY.

10:36AM  4          WELL, WHAT DOES THAT EVEN MEAN?  AND HOW MUCH IS THAT VIEW

10:36AM  5     INFORMED BY RETROSPECT?

10:36AM  6          NOW, IN MR. WEBER'S CASE, HE WROTE THAT AT THE TIME, SO

10:36AM  7     THAT WAS ACTUALLY HIS OPINION AT THE TIME FOR WHATEVER IT IS

10:36AM  8     WORTH.  I STILL DON'T THINK IT WAS ADMISSIBLE, BUT THAT WAS HIS

10:36AM  9     OPINION AT THE TIME.

10:36AM  10         HERE WHAT WE'RE TALKING ABOUT, IT'S NOT THAT MR. PARLOFF

10:36AM  11    RECORDED AT THE TIME HIS OPINION OF MS. HOLMES'S DEMEANOR.

10:36AM  12    HE'S GOING TO BE TESTIFYING ABOUT THAT WITH ALL OF THIS

10:36AM  13    AFTERMATH IN HIS MIND.

10:36AM  14         AND SO IT, IT IS NOT GOING TO BE PRETTY.

10:36AM  15         AND I DON'T THINK IT'S RELEVANT.  I THINK IT'S 403

10:36AM  16    MATERIAL.  I DON'T THINK IT OUGHT TO COME IN.

10:36AM  17         I REALLY THINK HE NEEDS TO BE CONFINED TO THE OBJECTIVE

10:36AM  18    FACTS.

10:36AM  19              MR. BOSTIC:  AND, YOUR HONOR, ON THAT --

10:36AM  20              THE COURT:  GO AHEAD.

10:36AM  21              MR. BOSTIC:  ON THAT KIND OF QUESTION, I DISAGREE

10:36AM  22    WITH MR. CLINE.  I THINK THAT WOULD BE ADMISSIBLE AND

10:37AM  23    APPROPRIATE, BUT I DON'T INTEND TO ASK THIS WITNESS ABOUT

10:37AM  24    MS. HOLMES'S DEMEANOR.

10:37AM  25         I DON'T THINK HE HAS MUCH TO OFFER ON THAT FRONT, SO IT'S

10:37AM  1    NOT MY PRESENT INTENTION TO GO THERE.  SO HOPEFULLY THAT'S

10:37AM  2    COMFORTING TO MR. CLINE.

10:37AM  3        I THINK THAT'S DIFFERENT, THOUGH, FROM ASKING HIM ABOUT

10:37AM  4    HIS UNDERSTANDING OF WHAT MS. HOLMES SAID.

10:37AM  5        AND I WANT TO GO BACK TO CONTEXT JUST BRIEFLY BECAUSE I

10:37AM  6    THINK THAT PART OF WHY THIS IS NECESSARY IS BECAUSE HE DID HAVE

10:37AM  7    MANY LENGTHY CONVERSATIONS WITH MS. HOLMES.  HE WAS PROVIDED

10:37AM  8    WRITTEN MATERIALS FROM THE COMPANY, INCLUDING THE PURPORTED

10:37AM  9    PHARMA REPORTS, SLIDE PRESENTATIONS, HE HAD TOURS.

10:37AM  10       SO PROVIDING HIS UNDERSTANDING REGARDING SPECIFIC

10:37AM  11   STATEMENTS THAT MS. HOLMES MADE GIVES THE JURY THE BENEFIT OF

10:37AM  12   THE CONTEXT THAT HE HAD AND THE PREVIOUS CONVERSATIONS AND THE

10:37AM  13   UNDERSTANDING THAT HE HAD BUILT UP ABOUT WHAT THOSE STATEMENTS

10:37AM  14   MEANT.

10:38AM  15       AND IF I COULD, LET ME PROVIDE ONE OR TWO ADDITIONAL

10:38AM  16   EXAMPLES THAT MIGHT HELP KIND OF ILLUMINATE THAT.

10:38AM  17       SO, FOR EXAMPLE, MS. HOLMES SAID AT SOME POINT THAT SHE

10:38AM  18   DIDN'T WANT MR. PARLOFF TO USE THE WORD "DEVICE" IN THE

10:38AM  19   "FORTUNE" ARTICLE.  HE ASKED HER WHY AND WHAT IS THE

10:38AM  20   SENSITIVITY AROUND THAT?  AND SHE SAID SOMETHING LIKE "THE FACT

10:38AM  21   THAT WE HAVE A SINGLE DEVICE THAT CAN PERFORM ANY TEST IS A BIG

10:38AM  22   DEAL."

10:38AM  23       SHE WANTED TO KEEP THAT A SECRET SHE TOLD MR. PARLOFF.

10:38AM  24       I WOULD WANT TO ASK HIM, IN CONNECTION WITH THAT, DID YOU

10:38AM  25   UNDERSTAND FROM MR. HOLMES'S STATEMENT THAT THEY DID, IN FACT,

10:38AM 1   HAVE A SINGLE DEVICE THAT COULD PERFORM ANY TEST?

10:38AM 2       THIS IS JUST ASKING HIM ABOUT THE LANGUAGE THAT SHE HAD

10:39AM 3   JUST STATED.  SO THIS IS NOT GETTING INTO WHAT OTHER PEOPLE

10:39AM 4   MIGHT HAVE SAID.  THIS IS JUST ASKING, WHAT DID YOU TAKE FROM

10:39AM 5   MS. HOLMES'S STATEMENT ON THAT DATE?

10:39AM 6           THE COURT:  WHAT IS WRONG WITH THAT, MR. CLINE?

10:39AM 7           MR. CLINE:  BECAUSE IT IS -- WHAT HE TOOK FROM HER

10:39AM 8   STATEMENT IS TOTALLY IRRELEVANT.  THEY CAN PLAY FOR THE JURY

10:39AM 9   WHAT MS. HOLMES ACTUALLY SAID, THEY CAN ARGUE TO THE JURY WHAT

10:39AM 10  THAT MEANT.

10:39AM 11      BUT WHAT MR. PARLOFF TOOK FROM THAT, WHY IS THAT

10:39AM 12  IMPORTANT?

10:39AM 13          THE COURT:  WELL, CAN HE ASK HIM -- DOES IT BECOME

10:39AM 14  MORE RELEVANT IF, WHAT DID YOU TAKE FROM THAT AND DID YOU WRITE

10:39AM 15  THAT IN YOUR ARTICLE?

10:39AM 16      YES, THAT'S WHAT I WROTE IN MY ARTICLE BECAUSE THAT'S WHAT

10:39AM 17  I TOOK FROM HER STATEMENT.

10:39AM 18          MR. CLINE:  EVEN THAT, YOUR HONOR, TO ME THIS

10:39AM 19  LINKAGE BETWEEN WHAT SHE SAID AND WHAT HE PUT IN HIS ARTICLE

10:39AM 20  DOESN'T MAKE ANY DIFFERENCE.

10:39AM 21          THE COURT:  BUT HE'S THE AUTHOR.  THAT'S --

10:39AM 22          MR. CLINE:  HE IS THE AUTHOR, BUT HE'S NOT -- HIS --

10:39AM 23  HE'S PLAYING A LIMITED ROLE HERE, AND THE LIMITED ROLE IS THAT

10:39AM 24  HE TOOK STATEMENTS FROM MS. HOLMES, HE WROTE AN ARTICLE.

10:40AM 25      SOME OF THOSE STATEMENTS MIGHT BE ADMISSIBLE WHETHER HE

10:40AM  1   HAD EVER WRITTEN AN ARTICLE OR NOT.  THEY'RE JUST STATEMENTS

10:40AM  2   THAT MS. HOLMES MADE.  IF THEY ARE RELEVANT AND THEY'RE

10:40AM  3   OTHERWISE ADMISSIBLE, THEY COME IN.

10:40AM  4        THE ARTICLE IS THE REAL KEY POINT HERE, BECAUSE THE

10:40AM  5   GOVERNMENT'S THEORY IS ONCE THIS ARTICLE WAS PRODUCED,

10:40AM  6   MS. HOLMES TOOK IT AND USED IT TO GET INVESTORS.

10:40AM  7        NOW, IF SHE HAD NEVER TALKED TO MR. PARLOFF BUT THE

10:40AM  8   ARTICLE CONTAINED A BUNCH OF THINGS THAT SHE KNEW TO BE FALSE

10:40AM  9   AND SHE HAD TAKEN IT OUT AND USED IT WITH INVESTORS, THE

10:40AM  10  GOVERNMENT COULD BE MAKING THE SAME ARGUMENT.

10:40AM  11       SO WHAT PARLOFF THOUGHT AND WHAT CONNECTION HE MADE

10:40AM  12  BETWEEN WHAT SHE SAID AND WHAT HE WROTE IN THE ARTICLE, IT JUST

10:40AM  13  DOESN'T MATTER.

10:40AM  14       AND THE PROBLEM WITH IT IS -- IN SOME CONTEXTS IT WOULD BE

10:40AM  15  KIND OF HARMLESS.  I MEAN, SURE, HE CAN EXPLAIN IT.

10:40AM  16       IT'S NOT HARMLESS HERE, AND IT'S PARTICULARLY NOT HARMLESS

10:40AM  17  BECAUSE THE JURY IS GOING TO HAVE HER ACTUAL WORDS IN MOST

10:41AM  18  INSTANCES.  I MEAN, THEY WILL HAVE A RECORDING OF EXACTLY WHAT

10:41AM  19  SHE SAID.

10:41AM  20       AND TO ALLOW HIM TO GLOSS THAT, TO NOT -- TO GO BEYOND

10:41AM  21  WHAT SHE ACTUALLY SAID AND PUT HIS OWN, NO DOUBT PEJORATIVE

10:41AM  22  CAST ON IT, PEJORATIVE IN LIGHT OF EVERYTHING THAT HAS HAPPENED

10:41AM  23  SINCE, IS JUST UNFAIR.

10:41AM  24       AND, OF COURSE, THERE'S NOTHING WHATSOEVER THAT I CAN DO

10:41AM  25  WITH THAT ON CROSS.  I CAN SAY, SHE SAID X AND NOW YOU'RE

10:41AM 1    SAYING THAT YOU UNDERSTOOD Y.  BUT WHERE IS THAT GOING TO GET

10:41AM 2    ME?  IT'S JUST UNFAIR AND IT'S TOTALLY UNNECESSARY.

10:41AM 3         THE COURT:  I GUESS, HOW DO YOU QUESTION THE AUTHOR

10:41AM 4    THEN?  HE ASKED A QUESTION, SHE SAID THIS, AND IT APPEARED IN

10:41AM 5    HIS STORY.

10:41AM 6         CAN'T THE GOVERNMENT SAY, YOU ASKED THIS QUESTION, SHE

10:41AM 7    ANSWERED, AND DID YOU INCORPORATE HER ANSWER INTO YOUR STORY?

10:41AM 8         YES.

10:41AM 9         WHERE IS IT?  IS IT THIS PAGE?  IS IT THIS LINE?  AND

10:41AM 10   THAT'S WHY YOU WROTE IT?

10:42AM 11        MR. CLINE:  WELL, THAT ACTUALLY GETS US TO ANOTHER

10:42AM 12   OF MR. BOSTIC'S POINTS AND MAYBE I SHOULD MOVE THERE WITH YOUR

10:42AM 13   HONOR'S PERMISSION.

10:42AM 14        THE COURT:  SURE.

10:42AM 15        MR. CLINE:  THESE THINGS TEND TO BE --

10:42AM 16        THE COURT:  THEY OVERLAP A LITTLE.

10:42AM 17        MR. CLINE:  -- OVERLAPPING.  THIS IS -- I'M SKIPPING

10:42AM 18   OVER ONE OF THEM, MOVING IN REVERSE ORDER, AND I'LL COME BACK

10:42AM 19   TO IT.

10:42AM 20        CONNECTING WHAT MS. HOLMES SAID TO THE CONTENT.  THIS IS A

10:42AM 21   LITTLE BIT MORE NUANCED BECAUSE IF MS. HOLMES SAID SOMETHING

10:42AM 22   AND IT'S QUOTED IN THE ARTICLE, I DON'T HAVE ANY PROBLEM WITH

10:42AM 23   MR. PARLOFF SAYING, YEAH, SHE TOLD ME THAT, AND HERE'S WHEN SHE

10:42AM 24   TOLD ME THAT, APRIL 7TH, 2014.  HERE IT IS, AND HERE IT IS

10:42AM 25   QUOTED IN THE ARTICLE.

10:42AM 1       IF MR. PARLOFF PARAPHRASES SOMETHING AND ATTRIBUTES IT TO

10:42AM 2   MS. HOLMES, HE CAN SAY -- I THINK HE COULD SAY, HERE IS WHERE I

10:42AM 3   DREW THAT PARAPHRASE FROM.  HERE'S WHAT SHE SAID, HERE'S MY

10:42AM 4   PARAPHRASE.

10:42AM 5       I DON'T THINK HE CAN GO BEYOND THAT AND SAY, HERE'S WHY I

10:42AM 6   PARAPHRASED IT THAT WAY, BUT I THINK THE CONNECTION CAN BE

10:43AM 7   DRAWN.

10:43AM 8       WHERE WE GET INTO TROUBLE IS IF THERE ARE THINGS IN THE

10:43AM 9   ARTICLE THAT ARE NOT ATTRIBUTED TO ANYONE, STATEMENTS ABOUT

10:43AM 10  THERANOS'S OPERATIONS, AND HE SAYS, I BASED THAT ON WHAT

10:43AM 11  ELIZABETH HOLMES TOLD ME, THEN WE GET INTO WHAT OTHER PEOPLE

10:43AM 12  TOLD HIM.

10:43AM 13      AND THAT'S GOING TO BE A PROBLEM BECAUSE HE TALKED TO A

10:43AM 14  LOT OF PEOPLE ABOUT A BROAD RANGE OF TOPICS, INCLUDING ALMOST

10:43AM 15  EVERYTHING THAT HE TALKED TO MS. HOLMES ABOUT, AND IF HE TRIES

10:43AM 16  TO SAY, I WROTE THAT THAT WAY BECAUSE ELIZABETH HOLMES TOLD

10:43AM 17  ME X, I THINK I GET TO SAY, WELL, THESE OTHER PEOPLE TOLD YOU X

10:43AM 18  ALSO AND YOU DIDN'T WRITE THAT JUST BASED ON WHAT

10:43AM 19  ELIZABETH HOLMES TOLD YOU, YOU WROTE THAT BASED ON WHAT A LOT

10:43AM 20  OF OTHER PEOPLE TOLD YOU AS WELL?

10:43AM 21      SO THERE ARE GRADATIONS ON THAT POINT.  WHERE HE QUOTES

10:43AM 22  HER, OF COURSE HE CAN SAY THAT'S A QUOTE, HERE'S WHERE SHE SAID

10:43AM 23  IT, I HAVE IT RECORDED, HERE IT IS IN THE ARTICLE.

10:43AM 24      WHERE HE PARAPHRASES HER, ELIZABETH HOLMES TOLD ME, AND

10:43AM 25  THEN IT'S NOT A DIRECT QUOTE, IT'S A PARAPHRASE, I THINK THAT'S

10:44AM 1    PROBABLY OKAY, TOO.

10:44AM 2        THE PROBLEM COMES IN THESE UNATTRIBUTED STATEMENTS WHERE I

10:44AM 3    THINK I GET TO CHALLENGE A CLAIM ON HIS PART THAT, OH, YEAH, I

10:44AM 4    BASED THAT ON WHAT ELIZABETH HOLMES TOLD ME.

10:44AM 5        THE COURT:  DO YOU HAVE -- HAVE YOU IDENTIFIED THOSE

10:44AM 6    PARTICULAR STATEMENTS IN THE ARTICLE?

10:44AM 7        MR. CLINE:  WELL, THERE ARE -- THE ARTICLE IS FULL

10:44AM 8    OF STATEMENTS OF ONE KIND OR ANOTHER ABOUT THERANOS AND I'M NOT

10:44AM 9    SURE WHICH ONES THE GOVERNMENT IS GOING TO FOCUS ON.

10:44AM 10       THERE ARE CERTAINLY QUOTES FROM MS. HOLMES THAT ARE EASILY

10:44AM 11   IDENTIFIED IN THE ARTICLE, AND THERE ARE ALSO PARAPHRASES OF

10:44AM 12   MS. HOLMES IN THE ARTICLE THAT ARE EASILY IDENTIFIED.

10:44AM 13       WHAT I DON'T KNOW IS WHAT EFFORT THE GOVERNMENT IS GOING

10:44AM 14   TO MAKE TO LINK THE PORTIONS THAT IT PLANS TO PLAY WITH

10:44AM 15   UNATTRIBUTED STATEMENTS IN THE ARTICLE.

10:44AM 16       THE COURT:  LET ME JUST BE CLEAR.  THIS ARTICLE IS

10:44AM 17   IN EVIDENCE.

10:44AM 18       MR. CLINE:  IT IS.

10:44AM 19       MR. BOSTIC:  YES, YOUR HONOR.

10:44AM 20       MR. CLINE:  IT IS.

10:44AM 21       MR. BOSTIC:  AND I THINK I CAN PROVIDE SOME CONCRETE

10:44AM 22   EXAMPLES THERE, TOO, IF IT'S HELPFUL.

10:45AM 23       THE COURT:  SURE.

10:45AM 24       MR. BOSTIC:  I FIND THAT POSITION EXPRESSED BY

10:45AM 25   MR. CLINE TO BE A LITTLE CONFUSING IN LIGHT OF EXAMPLES LIKE

10:45AM 1    THIS:  THE ARTICLE SAYS, FOR EXAMPLE, "IMPORTANTLY, IT'S NOT

10:45AM 2    JUST THE BLOOD DRAWS THAT ARE TINY.  IT'S ALSO THE ANALYTICAL

10:45AM 3    SYSTEMS THERANOS USES TO PERFORM THE TESTS.  THEY TAKE UP A

10:45AM 4    SMALL FRACTION OF THE FOOTPRINT REQUIRED BY A CONVENTIONAL LAB

10:45AM 5    TODAY."

10:45AM 6        THAT'S A PARAGRAPH ON ITS OWN.  IT'S NOT A QUOTE FROM

10:45AM 7    MS. HOLMES.  IT DOESN'T SAY, MS. HOLMES TOLD ME SOMETHING TO

10:45AM 8    THIS EFFECT.

10:45AM 9        SO UNDER THE POSITION THAT MR. CLINE JUST ARTICULATED, THE

10:45AM 10   GOVERNMENT I THINK WOULD NOT BE PERMITTED TO LINK THIS TO ANY

10:45AM 11   STATEMENT BY MS. HOLMES.

10:45AM 12       BUT IN THE RECORDINGS, THERE ARE MULTIPLE OCCASIONS WHERE

10:45AM 13   MS. HOLMES TALKS ABOUT THE SMALL SIZE OF A THERANOS ANALYZERS.

10:45AM 14       SO I TRULY CANNOT THINK OF A REASON WHY IT WOULD BE

10:45AM 15   INAPPROPRIATE OR INADMISSIBLE FOR THE JURY TO HEAR THOSE

10:45AM 16   STATEMENTS, MS. HOLMES SAYING THE ANALYZERS ARE SMALL, HERE'S

10:45AM 17   HOW BIG THEY ARE, OTHER LABS HAVE THESE BIG ANALYZERS, WE'RE

10:46AM 18   DIFFERENT, AND THEN TO POINT TO THIS LANGUAGE IN THE ARTICLE

10:46AM 19   AND SIMPLY HAVE THIS WITNESS CONFIRM THAT THAT LANGUAGE WAS

10:46AM 20   CONSISTENT WITH WHAT MS. HOLMES SAID.

10:46AM 21       AS FAR AS WHAT OTHER PEOPLE MIGHT HAVE TOLD HIM, I WOULD

10:46AM 22   STEER CLEAR OF ASKING HIM WHETHER A STATEMENT IN THE ARTICLE

10:46AM 23   WAS SOLELY BASED ON WHAT MS. HOLMES SAID.  THAT'S NOT RELEVANT

10:46AM 24   TO THIS CASE OR TO THE JURY'S ANALYSIS.

10:46AM 25       AND I STILL JUST DON'T UNDERSTAND WHY THE STATEMENTS MADE

10:46AM  1    BY OTHERS WOULD BE RELEVANT OR IMPORTANT FOR THE JURY TO KNOW

10:46AM  2    ABOUT.  IF MS. HOLMES MADE A STATEMENT THAT IS CONSISTENT WITH

10:46AM  3    WHAT IS IN THE ARTICLE, WHY DOES IT MATTER THAT OTHER PEOPLE

10:46AM  4    SAID SOMETHING THE SAME OR DIFFERENT, ESPECIALLY IF THOSE

10:46AM  5    STATEMENTS ARE NOT COMING IN FOR THEIR TRUTH?  I JUST HAVEN'T

10:46AM  6    HEARD THAT EXPLANATION ARTICULATED BY THE DEFENSE.

10:46AM  7            THE COURT:  SURE.

10:46AM  8        WHAT ABOUT MR. BOSTIC'S HYPOTHETICAL?  THAT'S NOT A

10:46AM  9    PROBLEM, I TAKE IT.

10:47AM  10           MR. CLINE:  IF MS. HOLMES IS THE ONLY SOURCE OF SOME

10:47AM  11   PARTICULAR FACT, THERE'S NO NEED FOR HIM TO LINK IT.  I DON'T

10:47AM  12   THINK IT'S RELEVANT.  I DON'T THINK THE LINKAGE IS IMPORTANT.

10:47AM  13       BUT IN THAT UNIQUE INSTANCE, IT MAY NOT OPEN UP THE KIND

10:47AM  14   OF CROSS THAT I'VE BEEN TALKING ABOUT, ALTHOUGH IF OTHER PEOPLE

10:47AM  15   PROVIDED THAT SAME INFORMATION AND HE SAYS, I WROTE THIS BASED

10:47AM  16   ON WHAT MS. HOLMES TOLD ME, THEN I'M GOING TO GET INTO THOSE

10:47AM  17   OTHER AREAS.

10:47AM  18       NOW, THAT MAY BE AN INSTANCE WHERE THERE ISN'T SOMEBODY

10:47AM  19   ELSE, SO MY CONCERN IS MORE THEORETICAL THAN REAL.

10:47AM  20       BUT THERE ARE PLENTY OF OTHER EXAMPLES.  THE AFGHANISTAN

10:47AM  21   ONE IS A PERFECT ILLUSTRATION WHERE MR. PARLOFF TALKED TO A

10:47AM  22   NUMBER OF PEOPLE ABOUT WHATEVER THE TOPIC WAS, AND THERE'S JUST

10:47AM  23   NO WAY THAT HE SHOULD BE PERMITTED TO SAY, I WROTE THAT BASED

10:47AM  24   ON WHAT ELIZABETH HOLMES TOLD ME, AND HAVE ME NOT ABLE TO SAY,

10:48AM  25   WELL, NOW, WAIT A MINUTE, YOU'RE SAYING THAT ELIZABETH HOLMES

10:48AM 1    WAS RESPONSIBLE FOR CAUSING YOU TO PUT THAT IN THE ARTICLE WHEN

10:48AM 2    YOU TALKED TO SECRETARY PERRY, YOU TALKED TO GENERAL MATTIS,

10:48AM 3    AND I DON'T MEAN TO -- I'M USING THIS AS A PURELY HYPOTHETICAL

10:48AM 4    EXAMPLE.

10:48AM 5              THE COURT:  SURE.

10:48AM 6              MR. CLINE:  I'M NOT ATTRIBUTING PARTICULAR

10:48AM 7    STATEMENTS TO THOSE PEOPLE.  I WANT TO BE CLEAR ABOUT THAT.

10:48AM 8    BUT THAT'S JUST AN EXAMPLE.

10:48AM 9         OR TAKE THE WALGREENS RELATIONSHIP.  MS. HOLMES AND

10:48AM 10   MR. PARLOFF TALKED ABOUT THE WALGREENS RELATIONSHIP.

10:48AM 11        WELL, MR. PARLOFF ALSO TALKED TO THE CEO OF WALGREENS, AND

10:48AM 12   SO IF HE WROTE SOMETHING IN THE ARTICLE ABOUT THE RELATIONSHIP

10:48AM 13   WITH WALGREENS AND TRIES TO ATTRIBUTE THAT TO MS. HOLMES, I CAN

10:48AM 14   CERTAINLY SAY, NOW, WAIT A MINUTE, YOU ALSO -- YOU TALKED TO

10:48AM 15   THE CEO OF WALGREENS AND THE CEO OF WALGREENS TOLD YOU X, Y,

10:48AM 16   AND Z.

10:48AM 17        I JUST DON'T SEE HOW WE CAN PRESENT TO THE JURY A FALSE

10:49AM 18   PICTURE OF BASICALLY PARLOFF TALKS TO HOLMES, HOLMES SAYS X,

10:49AM 19   PARLOFF WRITES X, AND WE LOOK AT ALL OF THAT AS IF THAT'S ALL

10:49AM 20   THAT HAPPENED.

10:49AM 21        PARLOFF DID A -- HE TALKED TO A WHOLE BUNCH OF PEOPLE.

10:49AM 22              THE COURT:  WELL, SHE TOLD HIM TO, RIGHT?  SHE GAVE

10:49AM 23   HIM OTHER SOURCES TO SPEAK TO?

10:49AM 24              MR. CLINE:  SHE DID, AND HE TALKED TO A NUMBER OF

10:49AM 25   PEOPLE THAT SHE RECOMMENDED.

10:49AM 1          I THINK HE ALSO TALKED TO OTHER PEOPLE.

10:49AM 2          HE TALKED, FOR EXAMPLE, TO REPRESENTATIVES FROM QUEST AND

10:49AM 3   LABCORP, THE BIGGEST COMPETITORS.

10:49AM 4          THE COURT:  SO HOW DO WE DEAL WITH THAT ISSUE IF

10:49AM 5   THAT COMES UP?  I DON'T KNOW IF IT'S GOING TO, BUT, MR. BOSTIC,

10:49AM 6   HAVE YOU THOUGHT ABOUT THAT?

10:49AM 7          MR. BOSTIC:  THE GOVERNMENT WON'T ASK ABOUT THOSE

10:49AM 8   OTHER CONVERSATIONS, YOUR HONOR.  I DON'T KNOW IF THAT IS

10:49AM 9   ENOUGH TO -- I'M SORRY, GO AHEAD.

10:49AM 10         THE COURT:  I'M SORRY TO INTERRUPT YOU.

10:49AM 11         BUT IF SHE SAYS -- OR PARLOFF SAYS, WELL, SHE TOLD ME TO

10:49AM 12  TALK TO ASK OTHER PEOPLE.

10:49AM 13         DID YOU TALK TO OTHER PEOPLE?

10:49AM 14         YES.

10:49AM 15         THEN THAT DOOR IS OPENED, IS IT?  I KNOW YOU'RE GOING TO

10:50AM 16  STAY AWAY FROM THAT.

10:50AM 17         BUT, I DON'T KNOW.  WHAT DO YOU THINK ABOUT THAT,

10:50AM 18  MR. CLINE?

10:50AM 19         MR. CLINE:  WELL, I THINK THE FACT THAT MS. HOLMES

10:50AM 20  URGED HIM TO TALK TO OTHER PEOPLE IS AN EXCULPATORY FACT.  I

10:50AM 21  THINK THAT WILL UNDOUBTEDLY -- I MEAN, IT'S APPARENT FROM THE

10:50AM 22  ARTICLE ITSELF.  I THINK IT WILL LIKELY COME OUT IN ONE FORM OR

10:50AM 23  ANOTHER JUST AS HE'S DESCRIBING WHAT HE DID.

10:50AM 24         IF HE'S CONFINED TO THE OBJECTIVE FACTS, THEN I WILL ASK

10:50AM 25  RELATIVELY LITTLE ABOUT THOSE OTHER INQUIRIES.

10:50AM 1      HERE'S THE BASIC PROBLEM:  AS LONG AS HE'S CONFINED TO

10:50AM 2  SORT OF THE OBJECTIVE FACTS, I TALKED TO ELIZABETH HOLMES, SHE

10:50AM 3  TOLD ME X, I WROTE AN ARTICLE, HERE IT IS, GOOD-BYE, I DON'T

10:50AM 4  THINK WE NEED TO GET INTO THE AREAS THAT MR. PARLOFF IS

10:50AM 5  CONCERNED ABOUT ON PRIVILEGE GROUNDS AND CONFIDENTIALITY

10:50AM 6  GROUNDS, THE WHOLE SUBPOENA ISSUE, AS WELL AS AREAS OF

10:51AM 7  CROSS-EXAMINATION THAT I THINK MR. PARLOFF WOULD FIND

10:51AM 8  OBJECTIONABLE, RIGHTLY OR WRONGLY.

10:51AM 9      THE FURTHER WE STRAY AWAY FROM THAT, AND IN PARTICULAR IF

10:51AM 10  WE START GETTING INTO THESE DISCUSSIONS OF I, I, YOU KNOW, I

10:51AM 11  BASED WHAT I WROTE ON WHAT MS. HOLMES TOLD ME, WE'RE GOING TO

10:51AM 12  START GETTING INTO THOSE AREAS.

10:51AM 13      AND I THINK IT IS PARTICULARLY IMPORTANT TO BE ABLE TO GET

10:51AM 14  INTO THOSE AREAS IN LIGHT OF THE FACT THAT IN MANY INSTANCES

10:51AM 15  MS. HOLMES DID URGE MR. PARLOFF TO TALK TO PEOPLE.

10:51AM 16      AND THESE WEREN'T -- YOU KNOW, I THINK THE GOVERNMENT

10:51AM 17  WOULD LIKE TO PORTRAY IT AS PEOPLE WHO ARE SORT OF UNDER HER

10:51AM 18  CONTROL.

10:51AM 19      WE'RE TALKING ABOUT THE HEAD OF UCSF, WE'RE TALKING ABOUT

10:51AM 20  THE CEO OF WALGREENS, WE'RE TALKING ABOUT DR. DAVID HELFET WHO

10:51AM 21  IS --

10:51AM 22      THE COURT:  AND ARE ANY OF THOSE RELATED TO THE

10:51AM 23  SUBPOENA?

10:51AM 24      MR. CLINE:  YES, YES, THEY ARE.

10:52AM 25      BUT AGAIN -- SORRY TO KEEP SOUNDING LIKE A BROKEN RECORD

10:52AM  1    HERE, BUT THE MORE WE CAN CONFINE THIS TO THESE OBJECTIVE FACTS

10:52AM  2    AND STAY AWAY FROM MR. PARLOFF'S KIND OF SUBJECTIVE LINKAGES

10:52AM  3    AND IMPRESSIONS AND SO FORTH, THE LESS RELEVANCE THE SUBSTANCE

10:52AM  4    OF WHAT THOSE PEOPLE TOLD THEM HAS.

10:52AM  5            THE COURT:  SURE.  I UNDERSTAND THAT.

10:52AM  6        BUT MR. BOSTIC'S EXAMPLE ABOUT THE MACHINE, SHE SAID THE

10:52AM  7    MACHINE COULD DO THIS, BUT SHE DIDN'T WANT TO TALK ABOUT IT,

10:52AM  8    AND THOSE TYPES OF THINGS.

10:52AM  9            AND THEN HE PUT IN HIS ARTICLE, NOT A DIRECT QUOTE, BUT HE

10:52AM  10   WROTE IN HIS ARTICLE, THE MACHINES ARE SMALL, THEY'RE THIS,

10:52AM  11   THEY'RE THAT, THEY'RE THAT.

10:52AM  12       YOU DON'T HAVE A PROBLEM WITH THAT?

10:52AM  13           MR. CLINE:  I DON'T HAVE A PROBLEM WITH HIM

10:52AM  14   SAYING -- PLAYING THE RECORDING OF WHAT SHE ACTUALLY TOLD HIM

10:52AM  15   SO IT'S NOT HIS IMPRESSION OF IT OR HIS UNDERSTANDING OF IT,

10:52AM  16   THIS IS WHAT SHE SAID, I DON'T HAVE A PROBLEM WITH HIM SAYING,

10:52AM  17   I WROTE IN MY ARTICLE X, Y, AND Z.

10:52AM  18       I THINK THE LINKAGE IS FOR THE GOVERNMENT TO MAKE IN

10:52AM  19   ARGUMENT AND FOR US TO DISPUTE IN ARGUMENT.

10:53AM  20       I THINK IT MAY BE -- AND I'M NOT COMMITTING MYSELF TO

10:53AM  21   THIS -- BUT IT MAY BE IN THAT ONE INSTANCE THAT MR. BOSTIC

10:53AM  22   PICKED, NONE OF THOSE OTHER PEOPLE SHE TALKED TO WOULD HAVE

10:53AM  23   ADVISED HER ON THAT PARTICULAR TOPIC.

10:53AM  24       SO IT MIGHT BE, JUST AS A FACTUAL MATTER, THAT ON THAT ONE

10:53AM  25   TOPIC MY CROSS -- I WOULDN'T HAVE ANYTHING TO CROSS HIM ABOUT.

10:53AM  1        BUT I DON'T THINK MR. BOSTIC PLANS TO JUST ASK THAT ONE

10:53AM  2    EXAMPLE.  I THINK HE'S GOT PROBABLY A RANGE OF THINGS THAT

10:53AM  3    HE -- WHERE HE WANTS TO DRAW THOSE SAME LINKAGES AND WE'RE

10:53AM  4    GOING TO GET INTO THESE OTHER AREAS AS SOON AS HE STARTS TO

10:53AM  5    LINK WHAT SHE SAID TO WHAT HE WROTE.

10:53AM  6        AND WHAT TROUBLES ME ABOUT IT IS IT'S TOTALLY UNNECESSARY

10:53AM  7    TO THE REAL POINT THAT THE GOVERNMENT WANTS TO MAKE, WHICH IS

10:53AM  8    SHE TALKED TO HIM, SHE SAID THESE THINGS, HE WROTE AN ARTICLE,

10:53AM  9    AND THE CRITICAL POINT IS THAT SHE TOOK AN ARTICLE THAT --

10:53AM  10    ACCORDING TO THE GOVERNMENT -- IS FULL OF FALSE THINGS AND --

10:53AM  11    AGAIN, ACCORDING TO THE GOVERNMENT -- USED IT WITH INVESTORS.

10:54AM  12        THAT'S WHAT IS IMPORTANT HERE.

10:54AM  13            THE COURT:  I UNDERSTAND THAT, AND I THINK

10:54AM  14    MR. BOSTIC DOES, TOO.  I THINK THE GOVERNMENT DOES, TOO.

10:54AM  15        AND WE'RE FLIRTING WITH THE MARGINS HERE ABOUT HOW FAR AND

10:54AM  16    WHAT DOORS MIGHT BE OPENED OR NOT.

10:54AM  17        MR. BOSTIC?

10:54AM  18            MR. BOSTIC:  YES, YOUR HONOR.

10:54AM  19        SO I THINK THIS WITNESS OBVIOUSLY IS IN THE BEST POSITION

10:54AM  20    TO TESTIFY ABOUT THE LINKAGE BETWEEN WHAT MS. HOLMES SAID AND

10:54AM  21    WHAT ENDS UP IN THE ARTICLE.  HE'S THE ONE WHO HAD THE

10:54AM  22    CONVERSATION WITH MS. HOLMES.  HE'S THE ONE WHO CREATED THE

10:54AM  23    ARTICLE.

10:54AM  24        MR. CLINE KEEPS USING A CONSTRUCTION OF A QUESTION LIKE, I

10:54AM  25    WROTE THIS BASED ON WHAT MS. HOLMES TOLD ME.

5636

10:54AM  1          AND I THINK HIS CONCERN IS THE IMPLICATION THAT

10:54AM  2     INFORMATION IN THE ARTICLE MIGHT BE SOLELY ATTRIBUTED TO

10:54AM  3     MS. HOLMES.

10:54AM  4          THE GOVERNMENT HAS NO INTEREST IN DRIVING HOME THAT POINT

10:54AM  5     AND SHOWING THAT THIS INFORMATION ONLY CAME FROM MS. HOLMES.

10:54AM  6          THE POINT INSTEAD IS ON MS. HOLMES'S INTENT, AND THE

10:54AM  7     GOVERNMENT IS PERMITTED TO SHOW THAT SHE INTENDED TO DECEIVE

10:55AM  8     THIS WITNESS.

10:55AM  9          THAT'S NOT THE SAME THING AS SAYING HE'S A VICTIM OF THE

10:55AM 10     FRAUD, BUT I WANT TO BE CLEAR THAT THAT IS AN ACCEPTABLE

10:55AM 11     ARGUMENT AND SUBJECT OF TESTIMONY FOR THIS WITNESS, THE

10:55AM 12     DEFENDANT'S INTENT TO DECEIVE HIM.

10:55AM 13               THE COURT:  SURE.  SURE.

10:55AM 14               MR. BOSTIC:  AND WHEN IT COMES TO THAT, WHY SHOULD

10:55AM 15     THE WITNESS NOT BE ABLE TO EXPLAIN THE EFFECT THAT MS. HOLMES'S

10:55AM 16     STATEMENTS, AGAIN, HER STATEMENTS ALONE, WERE HAVING ON HIS

10:55AM 17     UNDERSTANDING OF WHAT THE COMPANY'S TECHNOLOGY COULD DO?

10:55AM 18          AND I STILL JUST HAVEN'T HEARD -- I HEARD MR. CLINE TALK

10:55AM 19     ABOUT THE FACT THAT MS. HOLMES ENCOURAGED THE WITNESS TO TALK

10:55AM 20     TO OTHER INDIVIDUALS, I SEE THE ARGUMENT THAT THAT MIGHT BE

10:55AM 21     RELEVANT TO HER STATE OF MIND.  IF SHE'S SENDING HIM TO SEEK

10:55AM 22     OTHER SOURCES OF INFORMATION, I THINK THAT'S A FAIR POINT FOR

10:55AM 23     THEM TO BRING OUT IF IT'S WITHIN THE SCOPE OF THE DIRECT AND

10:55AM 24     OTHERWISE ADMISSIBLE.

10:55AM 25          BUT THAT POINT CAN BE MADE WITHOUT REFERENCE TO THE

10:55AM  1    CONTENT OF THE CONVERSATIONS THAT HE HAD WITH THOSE

10:55AM  2    INDIVIDUALS.

10:55AM  3         I JUST DON'T SEE WHY THE SUBSTANCE OF HIS COMMUNICATIONS

10:56AM  4    WITH THOSE OTHER INDIVIDUALS PLAYS TO THAT POINT.

10:56AM  5         CONVERSATIONS THAT MS. HOLMES WASN'T PRESENT AT,

10:56AM  6    CONVERSATIONS WHERE THE STATEMENTS THAT THOSE WITNESSES MADE

10:56AM  7    ARE JUST HEARSAY.

10:56AM  8         SO IF THEY'RE COMING IN FOR THE TRUTH AS CONFIRMATION OF

10:56AM  9    WHAT MS. HOLMES SAID, THAT'S AN IMPERMISSIBLE USE OF THOSE

10:56AM 10    STATEMENTS, AND I CAN'T THINK OF A PERMISSIBLE ONE.

10:56AM 11         THE COURT:  SO WHAT DO WE -- HOW DO WE DEAL WITH

10:56AM 12    THAT THOUGH?  THE ARTICLE IS NOT JUST AN INTERVIEW OF

10:56AM 13    MS. HOLMES APPARENTLY.  HE DID SOME ADDITIONAL RESEARCH.  HE

10:56AM 14    MAY HAVE TALKED TO PEOPLE AT HER URGING REQUEST TO INFORM HIM

10:56AM 15    SO HE COULD WRITE THE ARTICLE.

10:56AM 16         AND HOW DO YOU -- HOW DO WE CROSS THOSE BRIDGES WHEN THEY

10:56AM 17    COME UP AS TO CERTAIN TOPICS AND THINGS?

10:56AM 18         I THINK THIS IS A REAL ISSUE THAT WE HAVE TO NAVIGATE VERY

10:56AM 19    CAREFULLY.

10:56AM 20         MR. BOSTIC:  I THINK PART OF IT, YOUR HONOR, IS THAT

10:56AM 21    IT'S ON THE GOVERNMENT TO MAKE SURE THAT OUR QUESTIONS ARE

10:57AM 22    FRAMED NOT TO MAKE THE SUGGESTION THAT MS. HOLMES WAS THE ONLY

10:57AM 23    SOURCE OF INFORMATION FOR THE ARTICLE OR THAT OTHER PEOPLE

10:57AM 24    MIGHT NOT HAVE SAID CONSISTENT THINGS.

10:57AM 25         AS LONG AS THAT IMPLICATION ISN'T MADE, THEN THAT FALSE

5638

10:57AM 1   IMPRESSION WON'T BE MADE IN THE JURY'S MINDS.

10:57AM 2       THIS ISN'T ABOUT LOOKING AT THE ARTICLE AND DETERMINING

10:57AM 3   WHO IS RESPONSIBLE FOR EACH LINE IN THE ARTICLE.

10:57AM 4       THE FOCUS HERE IS ON THE DEFENDANT'S INTENT AND THE

10:57AM 5   STATEMENTS SHE MADE, SOME OF WHICH ARE RELEVANT JUST BECAUSE

10:57AM 6   THEY'RE DECEPTIVE STATEMENTS ON THEIR OWN, SOME CAN BE TIED TO

10:57AM 7   LANGUAGE IN THE ARTICLE.

10:57AM 8       BUT THE FACT IS THAT THE DEFENDANT, WHILE SHE WAS SPEAKING

10:57AM 9   TO MR. PARLOFF, INTENDED TO DECEIVE HIM, AND I THINK THAT WILL

10:57AM 10  BE CLEAR FROM THE RECORDINGS AND THE STATEMENTS THAT THE

10:57AM 11  WITNESS RECOUNTS.

10:57AM 12      THE FACT THAT THOSE STATEMENTS CREATED A FALSE IMPRESSION

10:57AM 13  IN THE WITNESS'S MIND THAT THEN RESULTED IN A FALSE IMPRESSION

10:58AM 14  BEING CONVEYED IN THE ARTICLE IS WHAT THIS IS ALL ABOUT.

10:58AM 15          THE COURT:  SURE.

10:58AM 16          MR. BOSTIC:  AND TO THE EXTENT THAT HE HAD OTHER

10:58AM 17  SOURCES --

10:58AM 18          THE COURT:  RIGHT.  BUT HE'S NOT GOING TO SAY, "I

10:58AM 19  WAS LIED TO"?

10:58AM 20          MR. BOSTIC:  NO, YOUR HONOR.

10:58AM 21          THE COURT:  HE'S GOING TO SAY, I WAS WRITING A STORY

10:58AM 22  AND THIS IS WHAT WAS SAID AND HERE'S WHAT I WROTE AT THAT

10:58AM 23  PARTICULAR TIME.

10:58AM 24      HE'S NOT GOING TO TALK AT ALL ABOUT HIS LATER ARTICLE.

10:58AM 25          AND I KNOW THAT THE OTHER ISSUE I HAVE IS WHETHER OR NOT

5639

10:58AM 1    YOU'RE GOING TO TRY TO RAISE, MR. CLINE, SOME BIAS OR SOMETHING

10:58AM 2    BECAUSE OF HIS SUBSEQUENT ARTICLE AND BRING IT IN SOMEHOW,

10:58AM 3    BECAUSE AS YOU'VE TOLD ME, I THINK YOUR PLEADINGS SUGGEST, HE'S

10:58AM 4    VERY BIASSED AGAINST HER, HE'S UPSET WITH HER, SHE CAUSED HIS

10:58AM 5    REPUTATION TO BE DAMAGED IN THE JOURNALISTIC COMMUNITY AND,

10:58AM 6    THEREFORE, HE HAS AN AX TO GRIND.

10:58AM 7         AND AS YOU KNOW, WE'VE TALKED ABOUT IT, BIAS IS ALWAYS

10:58AM 8    RELEVANT.

10:58AM 9         I DON'T KNOW HOW FAR YOU'RE GOING TO GO WITH THAT, AND IF

10:58AM 10   YOU DO, THAT CREATES OTHER ISSUES, DOESN'T IT?

10:59AM 11        BUT BACK TO MR. BOSTIC FOR A SECOND.

10:59AM 12            MR. CLINE:  SURE.

10:59AM 13            THE COURT:  I UNDERSTAND THAT THE ARTICLE IS PART OF

10:59AM 14   THE GOVERNMENT'S CASE, IT SOUNDS LIKE, AS TO DECEPTION, THAT

10:59AM 15   SHE USED IT TO DECEIVE.

10:59AM 16        HIS PART IN THIS IS NOT -- HIS PART IS HE WAS THE AUTHOR.

10:59AM 17   THE FACT THAT HE MAY OR MAY NOT HAVE BEEN DECEIVED IS NOT

10:59AM 18   RELEVANT.  THE FACT IS, HE'S THE SCRIVENER AND HE WROTE THE

10:59AM 19   ARTICLE BASED ON HER STATEMENTS, HE MEMORIALIZED HER STATEMENTS

10:59AM 20   IN AN ARTICLE THAT WAS SUBSEQUENTLY USED BY HER, AND THAT'S THE

10:59AM 21   IMPORTANT PART OF IT.

10:59AM 22            MR. BOSTIC:  THAT'S AN IMPORTANT PART, YOUR HONOR.

10:59AM 23   I THINK THE FACT THAT HE WAS DECEIVED IS RELEVANT BECAUSE IT'S

10:59AM 24   RELEVANT OF HER INTENT TO DECEIVE.

10:59AM 25            THE COURT:  AND HOW DOES HIS DECEPTION COME IN?  ARE

5640

| | | |
|---|---|---|
| 10:59AM | 1 | YOU EVER GOING TO ASK HIM, DID YOU FEEL THAT YOU WERE DECEIVED? |
| 10:59AM | 2 | MR. BOSTIC:  NO, YOUR HONOR. |
| 10:59AM | 3 | THE COURT:  OF COURSE NOT. |
| 10:59AM | 4 | MR. BOSTIC:  BECAUSE HE DOESN'T HAVE A BASIS TO SAY |
| 10:59AM | 5 | THAT. |
| 10:59AM | 6 | THE COURT:  RIGHT. |
| 10:59AM | 7 | MR. BOSTIC:  BECAUSE THAT WOULD REQUIRE HIM TO JUDGE |
| 10:59AM | 8 | THE TRUTH OF WHAT MS. HOLMES SAID. |
| 10:59AM | 9 | THE COURT:  EXACTLY. |
| 10:59AM | 10 | MR. BOSTIC:  SO THAT'S WHAT WE'RE GOING TO BE |
| 11:00AM | 11 | CAREFUL TO STAY AWAY FROM. |
| 11:00AM | 12 | BUT THE FACT THAT HE CAME AWAY FROM CONVERSATIONS WITH |
| 11:00AM | 13 | MS. HOLMES BELIEVING X WHEN THE JURY KNOWS THAT NOT X WAS TRUE, |
| 11:00AM | 14 | THAT'S AN IMPORTANT FACT. |
| 11:00AM | 15 | THE COURT:  SO YOU BELIEVED WHAT SHE TOLD YOU? |
| 11:00AM | 16 | YES. |
| 11:00AM | 17 | YOU WROTE THE ARTICLE BASED ON THOSE BELIEFS? |
| 11:00AM | 18 | YES. |
| 11:00AM | 19 | AND WE MOVE ON. |
| 11:00AM | 20 | MR. BOSTIC:  YES, YOUR HONOR.  THE ONLY REASON I'M |
| 11:00AM | 21 | PUSHING BACK ON BEING ABLE TO GET INTO HIS UNDERSTANDING, LET |
| 11:00AM | 22 | ME PROVIDE ONE MORE EXAMPLE AND MAYBE THIS ONE WILL HELP. |
| 11:00AM | 23 | THE COURT:  SURE. |
| 11:00AM | 24 | MR. BOSTIC:  THERE WILL BE SOME CASES WHERE A |
| 11:00AM | 25 | STATEMENT FROM MS. HOLMES NEEDS TO BE PLACED IN THE CONTEXT OF |

11:00AM  1    MR. PARLOFF'S OVERALL UNDERSTANDING, INFORMED BY THEIR SEVERAL

11:00AM  2    CONVERSATIONS, IN ORDER TO MAKE SENSE TO THE JURY.

11:00AM  3         FOR EXAMPLE, I DON'T HAVE THE EXACT LANGUAGE IN FRONT OF

11:00AM  4    ME, BUT THERE'S A POINT WHERE MR. PARLOFF ASKS ABOUT THE

11:00AM  5    ARIZONA LAB AND WHAT IS BEING DONE THERE.

11:00AM  6         AND THE COURT MAY KNOW THAT THE ARIZONA LAB OPERATED BY

11:00AM  7    THERANOS DID NOT RUN ANY LABORATORY DEVELOPED TESTS, IT ONLY

11:01AM  8    RAN FDA APPROVED NONTHERANOS ASSAYS, THE SAME WAY THAT ANY

11:01AM  9    OTHER LAB WOULD DO.

11:01AM  10        WHEN MR. PARLOFF ASKED ABOUT THAT AND THE NEED FOR VEIN

11:01AM  11   PUNCTURE, MS. HOLMES SAID SOMETHING TO THE EFFECT OF, WELL,

11:01AM  12   THAT RELATES TO OUR REFERENCE LAB SERVICE WHERE WE'RE DOING

11:01AM  13   ESOTERIC TESTS, SOMETHING DIFFERENT FROM WE'RE JUST RUNNING RUN

11:01AM  14   OF THE MILL TESTS THERE THE WAY THAT ANY OTHER LAB WOULD.

11:01AM  15        THEY PREVIOUSLY HAD SPOKEN ABOUT ESOTERIC TESTS AND

11:01AM  16   REFERENCE LABS, SO IT'S IMPORTANT IN THAT CASE TO BE ABLE TO

11:01AM  17   ASK HIM, WHAT DID YOU UNDERSTAND HER ANSWER TO MEAN?  WHAT DID

11:01AM  18   SHE MEAN BY ESOTERIC TESTS?  AND WHAT DID THAT MEAN ABOUT WHAT

11:01AM  19   THEY WERE DOING IN THE PHOENIX LAB?  WHAT WAS SHE SAYING TO YOU

11:01AM  20   AS YOU UNDERSTOOD IT?

11:01AM  21        BECAUSE HE HAS A BACKGROUND TO UNDERSTAND THAT, SUPPLIED

11:01AM  22   BY HER, THAT THE JURY WON'T HAVE.

11:01AM  23        SO IN ORDER FOR THE SIGNIFICANCE TO COME THROUGH TO THE

11:01AM  24   JURY, IT'S IMPORTANT THAT HE BE ABLE TO PROVIDE THAT.

11:01AM  25        IT'S NOT AN OPINION, IT'S SIMPLY THE ADDITIONAL CONTEXT TO

11:01AM 1       UNDERSTAND THAT.

11:02AM 2           KEEPING IT OUT ROBS THE TESTIMONY OF SOME OF ITS IMPACT

11:02AM 3       AND SIGNIFICANCE, SO IT BENEFITS THE DEFENSE, BUT I DON'T THINK

11:02AM 4       THOSE POINTS ARE IRRELEVANT OR INADMISSIBLE.

11:02AM 5               THE COURT:  SO THAT'S A SITUATION WHERE SHE TOLD YOU

11:02AM 6       X ABOUT THE PHOENIX LABS AT ONE TIME, AND THEN YOU ASKED HER

11:02AM 7       AGAIN AND SHE SAID THIS ABOUT THE PHOENIX LABS, DIFFERENT THAN

11:02AM 8       THE PREVIOUS STATEMENT?

11:02AM 9               MR. BOSTIC:  I DON'T THINK THAT'S AN EXAMPLE OF

11:02AM 10      INCONSISTENT STATEMENTS ON DIFFERENT OCCASIONS.

11:02AM 11          I THINK INSTEAD IT'S THAT, THROUGH THE COURSE OF THEIR

11:02AM 12      CONVERSATIONS, MR. PARLOFF HAD DEVELOPED AN UNDERSTANDING ABOUT

11:02AM 13      WHAT AN ESOTERIC TEST WAS.

11:02AM 14          AN ESOTERIC TEST WOULD BE SOMETHING THAT WAS RARELY

11:02AM 15      ORDERED, IT'S TYPICALLY VERY EXPENSIVE, MAYBE ONLY A TINY

11:02AM 16      SEGMENT OF THE POPULATION NEEDS IT.

11:02AM 17          SO WHEN MS. HOLMES SAYS, THE PHOENIX LAB IS THERE TO DO

11:03AM 18      ESOTERIC TESTS AS PART OF OUR REFERENCE LAB SERVICE, SHE WAS

11:03AM 19      TELLING HIM, BASED UPON THEIR PREVIOUS CONVERSATIONS, THAT THAT

11:03AM 20      LAB WAS FOCUSSED ON DOING THESE SPECIALIZED RARE TESTS.

11:03AM 21          THAT WASN'T TRUE.

11:03AM 22          BUT IN ORDER FOR THE JURY TO UNDERSTAND KIND OF THE INTENT

11:03AM 23      BEHIND HER STATEMENT, THEY NEED TO UNDERSTAND WHAT A LISTENER

11:03AM 24      IN MR. PARLOFF'S POSITION, WITH HIS BACKGROUND, WOULD HAVE

11:03AM 25      TAKEN FROM IT, AND SO THAT'S WHAT HE SHOULD BE ALLOWED TO

5643

11:03AM 1    PROVIDE.

11:03AM 2         THE COURT:  OKAY.

11:03AM 3         MR. CLINE:  AND I DISAGREE WITH THAT.

11:03AM 4    I MEAN, IF THE GOVERNMENT WANTS TO PLAY THE RELEVANT, WHAT

11:03AM 5    THEY CONSIDER TO BE THE RELEVANT PORTIONS OF MS. HOLMES'S

11:03AM 6    STATEMENT AND THEN ARGUE, AS MR. BOSTIC JUST DID, TO THE JURY

11:03AM 7    ULTIMATELY THAT THIS WAS A LIE BECAUSE OF X, Y, AND Z, OF

11:03AM 8    COURSE THEY CAN DO THAT.

11:03AM 9    BUT TO ADD TO THAT THE GLOSS OF MR. PARLOFF'S

11:03AM 10   UNDERSTANDING, IT'S, IT'S -- IT INVITES -- IT JUST INVITES A

11:04AM 11   MESS HERE.

11:04AM 12   AND LET ME GIVE YOU HAVE AN EXAMPLE OF WHY IT INVITES

11:04AM 13   THAT.  YOU MENTIONED BIASSED A MOMENT AGO, WHICH IS SOMETHING I

11:04AM 14   DIDN'T REALLY TALK ABOUT EARLY ON, BUT THE MORE WE GET INTO

11:04AM 15   MR. PARLOFF'S SUBJECTIVE VIEWS, WHICH, OF COURSE, ARE NOT --

11:04AM 16   HE'S NOT ABLE TO TESTIFY NOW ABOUT WHAT HE THOUGHT AT THE TIME.

11:04AM 17   EVERYTHING IS FILTERED THROUGH THE EVENTS THAT HAVE HAPPENED

11:04AM 18   OVER THE LAST SEVEN YEARS, AND A LOT HAS HAPPENED IN

11:04AM 19   MR. PARLOFF'S LIFE AND OTHERWISE.

11:04AM 20   SO WHEN HE STARTS TALKING ABOUT HIS SUBJECTIVE VIEWS OF

11:04AM 21   WHAT SHE SAID, NOT HER ACTUAL WORDS, THOSE OF COURSE ARE

11:04AM 22   ADMISSIBLE, BUT NOW HE'S GLOSSING THEM, BIAS AND OTHER

11:04AM 23   IMPEACHMENT METHODOLOGIES COME VERY MUCH INTO PLAY.

11:04AM 24   AND THE FACT THAT HE'S BIASSED BASED ON WHAT HE PERCEIVES

11:04AM 25   AS HAVING BEEN MISLED, AND PERHAPS ON OTHER ISSUES AS WELL,

11:05AM 1      COMES DIRECTLY INTO PLAY.

11:05AM 2           I WILL TELL YOU THAT IF WE STICK TO SORT OF THE PROGRAM

11:05AM 3      THAT I HAVE TALKED ABOUT, I DON'T PLAN TO GET INTO ANY OF THAT,

11:05AM 4      BECAUSE IT JUST TURNS INTO A BIG MESS THAT WILL -- IT WILL

11:05AM 5      AFFECT MR. PARLOFF, IT WILL HURT THE GOVERNMENT, AND NO DOUBT

11:05AM 6      SOME OF IT WILL SPLATTER BACK ON US.  IT'S JUST A MESS.

11:05AM 7           AND IT'S ALSO GOING TO IMPLICATE THESE PRIVILEGE ISSUES

11:05AM 8      AND THESE OTHER ISSUES THAT MR. PARLOFF WANTS TO STAY AWAY

11:05AM 9      FROM.

11:05AM 10          AND ALTHOUGH I DISAGREE WITH HIM ON THE LAW, I UNDERSTAND

11:05AM 11     WHY HE WANTS TO TAKE THAT VIEW.

11:05AM 12          AND, IN FACT, I'M CONFIDENT THAT THAT IS WHY MR. PARLOFF

11:05AM 13     HIMSELF IN HIS PLEADING HAS TAKEN A VERY NARROW VIEW OF WHAT

11:05AM 14     HIS PERMISSIBLE TESTIMONY WOULD BE.  I THINK HE WANTS TO STAY

11:05AM 15     AWAY FROM ALL OF THAT.  SO DO I.

11:05AM 16          BUT THE MORE WE GET INTO HIS SUBJECTIVE IMPRESSION, THE

11:05AM 17     MORE WE'RE GOING TO BE TALKING ABOUT A RANGE OF ISSUES THAT

11:05AM 18     WILL CREATE NOTHING BUT PROBLEMS, AND BIAS IS CERTAINLY ONE OF

11:06AM 19     THEM.  THESE OTHER SOURCES ARE ANOTHER.

11:06AM 20          I UNDERSTAND WHY THE GOVERNMENT WANTS TO DO THAT, BECAUSE

11:06AM 21     THEY HAVE A WITNESS HERE WHO WILL, IN EVERY INSTANCE, PUT THE

11:06AM 22     MOST PEJORATIVE POSSIBLE TWIST ON THINGS AND IN THE MOST

11:06AM 23     FAVORABLE TO THE GOVERNMENT.

11:06AM 24          I DON'T THINK THE COURT SHOULD ALLOW IT UNDER RULE 403,

11:06AM 25     BUT ALSO FOR THE PRACTICAL REASONS THAT WE'RE JUST GOING TO

11:06AM 1    CREATE A MESS IF WE GO DOWN THAT ROAD.

11:06AM 2            THE COURT:  OKAY.  DID YOU HAVE ANOTHER TOPIC YOU

11:06AM 3    WANTED TO GET BACK TO?

11:06AM 4            MR. CLINE:  I DID.  LET ME GO THROUGH THEM IN

11:06AM 5    REVERSE.

11:06AM 6        MR. BOSTIC MENTIONED, AND WE TALKED ABOUT THIS A LITTLE

11:06AM 7    BIT IN OUR PHONE CALL ON FRIDAY, IF MS. HOLMES HAD TOLD YOU X,

11:06AM 8    WOULD YOU HAVE WRITTEN WHAT YOU WROTE?

11:06AM 9        I THINK, AGAIN, THAT'S JUST TOTAL SPECULATION AT THIS

11:06AM 10   POINT, AND THE FACT THAT HE IS NOT -- IF HE WERE AN INVESTOR,

11:06AM 11   THEN MAYBE THAT QUESTION WOULD GO TO MATERIALITY.

11:07AM 12       BUT AS MR. BOSTIC HAS SAID, AND I AGREE, MATERIALITY IS

11:07AM 13   NOT AN ISSUE WITH MR. PARLOFF.

11:07AM 14       HERE IT'S JUST PURE SPECULATION, AND OF COURSE IN EVERY

11:07AM 15   INSTANCE HE'S GOING TO SAY, OH, NO, I WOULD NEVER HAVE WRITTEN

11:07AM 16   THAT IF ONLY I HAD KNOWN X, Y, AND Z.

11:07AM 17           THE COURT:  WELL, THAT LOOKS A LITTLE BROAD,

11:07AM 18   MR. BOSTIC.  WOULD YOU HAVE WRITTEN IT DIFFERENTLY IF SHE HAD

11:07AM 19   SAID SOMETHING?  IS THAT A QUESTION THAT YOU INTEND TO ASK HIM?

11:07AM 20           MR. BOSTIC:  YES, YOUR HONOR.

11:07AM 21       FIRST OF ALL, THAT'S NOT SPECULATION.  IT'S ASKING THE

11:07AM 22   WITNESS ABOUT HIS OWN DECISIONS, NOT ABOUT SOMEONE ELSE'S OR

11:07AM 23   NOT SOMETHING IN THE FUTURE.

11:07AM 24       HERE'S AN EXAMPLE.  THE ARTICLE TALKS ABOUT THE NUMBER OF

11:07AM 25   TESTS THAT COULD BE RUN ON THERANOS'S TECHNOLOGY.

5646

11:07AM 1    IF MS. HOLMES HAD TOLD HIM -- AND I THINK THE ARTICLE

11:07AM 2  SAYS -- I FORGET WHETHER IT SAYS 200 OR 1,000 TESTS CAN BE RUN,

11:07AM 3  BUT THE QUESTION MIGHT BE SOMETHING LIKE, IF MS. HOLMES HAD

11:07AM 4  TOLD YOU THAT THE MAJORITY OF THERANOS'S TESTS WERE ACTUALLY

11:08AM 5  RUN ON THIRD PARTY DEVICES, WOULD THAT HAVE AFFECTED THAT

11:08AM 6  STATEMENT IN THE ARTICLE?

11:08AM 7    I THINK THE ANSWER IS OBVIOUS.  I THINK THE ANSWER IS YES,

11:08AM 8  OF COURSE IT WOULD HAVE, BECAUSE THE ARTICLE GIVES THE

11:08AM 9  IMPRESSION THAT ALL OF THOSE TESTS ARE BEING RUN ON THE

11:08AM 10  THERANOS TECHNOLOGY.

11:08AM 11    SO IF MS. HOLMES HAD TOLD HIM ABOUT THE COMPANY'S RELIANCE

11:08AM 12  ON THIRD PARTY DEVICES, WOULD THAT HAVE AFFECTED THE

11:08AM 13  INFORMATION THAT WAS THEN CONVEYED IN THE ARTICLE?

11:08AM 14    THE COURT:  WELL, THAT SOUNDS LIKE IT'S A SHE SAID

11:08AM 15  ONE THING, THEY'RE BEING RUN ON ONE TYPE OF MACHINE, AND

11:08AM 16  THEN -- I THINK YOU'VE ASKED THIS OF INVESTORS -- YOU KNOW, IF

11:08AM 17  YOU KNEW THAT THEY WEREN'T RUN -- IF YOU KNEW THAT THEY WERE

11:08AM 18  RUN ON A THIRD PARTY'S, AS OPPOSED TO THE COMPANY'S MACHINES,

11:08AM 19  WOULD THAT HAVE CHANGED YOUR OPINION?  ISN'T THIS THE SAME

11:08AM 20  QUESTION?

11:08AM 21    MR. BOSTIC:  I THINK IT'S SIMILAR, YOUR HONOR.  IT'S

11:08AM 22  ASKED FOR A DIFFERENT REASON.

11:08AM 23    THE COURT:  RIGHT.

11:08AM 24    MR. BOSTIC:  I THINK --

11:08AM 25    THE COURT:  AND WHY ISN'T THAT, WHY ISN'T THAT

11:08AM 1    PERMISSIBLE?

11:08AM 2            MR. CLINE:  HERE'S THE DIFFERENCE.  WITH INVESTORS,

11:08AM 3    THEY HAVE TO PROVE MATERIALITY.  SO A QUESTION LIKE THAT, EVEN

11:09AM 4    IF THE ANSWER IS OBVIOUS, GOES TO THE MATERIALITY OF THE

11:09AM 5    INFORMATION.

11:09AM 6        MATERIALITY IS IRRELEVANT WHEN IT COMES TO MR. PARLOFF.

11:09AM 7    IT DOESN'T MATTER WHETHER THE STATEMENTS WERE MATERIAL OR NOT.

11:09AM 8            THE COURT:  BUT DOESN'T IT COME IN TO PROVE, AS

11:09AM 9    MR. BOSTIC SAID, AT LEAST IT'S INFORMATION THAT THE JURY CAN

11:09AM 10   CONSIDER AS TO WHETHER OR NOT THERE WAS DECEPTION?  NOT AS TO

11:09AM 11   THIS WITNESS, BUT AS TO HOW SHE USED IT, AND THE GOVERNMENT IS

11:09AM 12   GOING TO ARGUE THAT'S PART OF THE PLAN AND SCHEME.

11:09AM 13           MR. CLINE:  AND THE GOVERNMENT CAN ARGUE THAT ALL IT

11:09AM 14   WANTS.

11:09AM 15       BUT THIS WITNESS SHOULD NOT BE PERMITTED SIMPLY TO

11:09AM 16   RECITE -- IN EFFECT WHAT HE'LL BE DOING IS DESCRIBING WHAT HE

11:09AM 17   LATER WROTE IN HIS NOW, YOU KNOW, WE'VE AGREED, INADMISSIBLE

11:09AM 18   2016 ARTICLE.  IF SHE TOLD YOU THIS, WOULD YOU HAVE WRITTEN

11:09AM 19   THIS?  IF SHE TOLD YOU THAT, WOULD YOU HAVE WRITTEN THAT?

11:09AM 20       IT'S NOT RELEVANT.  IT'S 403 MATERIAL.  AND, OF COURSE,

11:10AM 21   IT'S NOTHING THAT CAN COULD POSSIBLY CROSS-EXAMINE HIM ON.

11:10AM 22       AND IT'S SPECULATIVE.  HE'S TESTIFYING NOW WITH THE

11:10AM 23   BENEFIT OF SEVEN YEARS OF HINDSIGHT, SO OF COURSE HE'S GOING TO

11:10AM 24   SAY THAT.

11:10AM 25           THE COURT:  RIGHT.  BUT IF AT THE TIME, AND I

5648

11:10AM 1    DON'T -- YOU KNOW, I DON'T KNOW WHEN THE INTERVIEW WAS AND ALL

11:10AM 2    OF THAT -- BUT IF AT THE TIME, IF AT THE TIME THE MACHINES

11:10AM 3    WEREN'T RUNNING AS SHE SAID THEY WERE, AND THAT SEEMS TO BE IN

11:10AM 4    EVIDENCE NOW, I THINK.  IF IT IS, I THINK YOU CAN TIE THAT IN

11:10AM 5    THE TIME STAMP, THAT THE MACHINES WERE NOT RUNNING, AND I'M

11:10AM 6    JUST USING THIS AS AN EXAMPLE.

11:10AM 7         CAN'T HE ASK THAT THE TIME, TIME STAMP THOSE MACHINES?  IF

11:10AM 8    ON THIS DATE SHE HAD TOLD YOU X, THAT THESE MACHINES WERE

11:10AM 9    RUNNING, WOULD YOU HAVE PUT THAT IN?

11:10AM 10            MR. CLINE:  I ABSOLUTELY DO NOT THINK SO,

11:10AM 11   YOUR HONOR.

11:10AM 12        AGAIN, IT'S TOTALLY UNLIKE AN INVESTOR WHO IS MAKING AN

11:10AM 13   INVESTMENT DECISION AND SO MATERIALITY IS IN PLAY.

11:10AM 14        IT DOESN'T MAKE THE SLIGHTEST DIFFERENCE TO WHAT THE JURY

11:11AM 15   HAS TO DECIDE, WHETHER MR. PARLOFF WOULD HAVE WRITTEN WHAT HE

11:11AM 16   WROTE OR WOULD HAVE WRITTEN SOMETHING DIFFERENT IF HE HAD KNOWN

11:11AM 17   CERTAIN FACTS THAT, ALLEGED FACTS THAT HE DIDN'T KNOW.  IT'S

11:11AM 18   IRRELEVANT.

11:11AM 19            THE COURT:  SO IT'S -- I GUESS IT'S EQUALLY

11:11AM 20   IRRELEVANT THAT IF MR. BOSTIC WERE NOT TO ASK THAT QUESTION,

11:11AM 21   BUT WERE TO ASK, SHE SAID THE MACHINES WERE RUNNING, X AMOUNT

11:11AM 22   OF MACHINES WERE RUNNING X TYPES OF TESTS, WOULD YOU BE

11:11AM 23   SURPRISED TO KNOW THAT ON THE TIME THAT THEY WEREN'T?

11:11AM 24            MR. CLINE:  TOTALLY 100 PERCENT IN MY VIEW

11:11AM 25   IRRELEVANT AND 403 MATERIAL.

11:11AM 1    WHETHER MR. PARLOFF WOULD BE SURPRISED BY SOMETHING?  WHO

11:11AM 2    CARES.  IT'S JUST NOT RELEVANT TO WHAT THE JURY HAS TO DECIDE.

11:11AM 3        THE COURT:  AND YOUR POINT IS THAT THAT EVIDENCE IS

11:11AM 4    ALREADY IN BEFORE THE JURY BECAUSE THE JURY HAS EVIDENCE NOW

11:11AM 5    THAT THE MACHINES WERE EITHER RUNNING OR NOT RUNNING OR

11:11AM 6    WHATEVER.

11:11AM 7        MR. CLINE:  THE JURY HAS PLENTY OF EVIDENCE.  THERE

11:12AM 8    WILL NO DOUBT BE MORE BEFORE THE CASE IS OVER.

11:12AM 9        AND IN CLOSING ARGUMENT, THE GOVERNMENT OF COURSE IS

11:12AM 10   PERFECTLY FREE TO GET UP AND LINK THESE FACTS TOGETHER.

11:12AM 11       HERE IS WHAT DR. ROSENDORFF TOLD YOU, HERE IS WHAT

11:12AM 12   MS. HOLMES SAID, HERE IS WHAT SHOWED UP IN THE ARTICLE, AND

11:12AM 13   THEN HERE IS WHAT MS. HOLMES DID WITH THE ARTICLE.

11:12AM 14       BUT THAT'S CLOSING ARGUMENT.

11:12AM 15       AND TO ASK THIS MAN, WOULD YOU BE SURPRISED TO KNOW X?

11:12AM 16   HIS SURPRISE OR LACK OF SURPRISE IS IRRELEVANT.

11:12AM 17       SIMILARLY, HIS NOW IN RETROSPECT VIEW THAT HAD HE KNOWN X,

11:12AM 18   Y, AND Z HE WOULD HAVE WRITTEN SOMETHING DIFFERENT, IT HAS

11:12AM 19   NOTHING TO DO WITH WHAT THE JURY HAS TO DECIDE AND IT'S JUST

11:12AM 20   PREJUDICIAL AND IT IS A WAY OF SMUGGLING INTO THE CASE THE

11:12AM 21   EFFECT, AT LEAST, OF HIS 2016 ARTICLE.

11:12AM 22       MR. BOSTIC:  YOUR HONOR, HERE IS WHY THAT IS

11:12AM 23   RELEVANT.  IT'S RELEVANT NOT BECAUSE WE NEED TO SHOW

11:12AM 24   MATERIALITY WITH THIS WITNESS, BUT BECAUSE IT'S HIGHLY

11:12AM 25   PROBATIVE OF MS. HOLMES'S INTENT IN MAKING THE STATEMENTS THAT

11:13AM 1     SHE MADE TO MR. PARLOFF AND IN WITHHOLDING THE INFORMATION THAT

11:13AM 2     SHE WITHHELD FROM HIM.

11:13AM 3          HER INTENT WAS TO END UP AT THE END OF THE DAY WITH THIS

11:13AM 4     ARTICLE.  THIS ARTICLE SAYS SEVERAL VERY POSITIVE AND FALSE

11:13AM 5     THINGS ABOUT THE COMPANY.

11:13AM 6          SHE WANTED THIS PRODUCT AT THE END OF THE DAY.  IN ORDER

11:13AM 7     TO ACCOMPLISH THAT, SHE HAD HOURS OF CONVERSATIONS WITH

11:13AM 8     MR. PARLOFF WHERE SHE CULTIVATED A FALSE IMPRESSION IN HIS MIND

11:13AM 9     ABOUT WHAT THE TECHNOLOGY COULD DO.

11:13AM 10         WHEN SHE DECIDED NOT TO PROVIDE HIM WITH A CERTAIN FACT,

11:13AM 11    FOR EXAMPLE, THE COMPANY'S RELIANCE ON THIRD PARTY DEVICES, IT

11:13AM 12    WAS TO PRESERVE THE FALSE IMPRESSION THAT SHE HAD OTHERWISE

11:13AM 13    CREATED IN HIS MIND AND TO MAKE SURE THAT, OR AT LEAST TO

11:13AM 14    MAXIMIZE THE CHANCES OF THE ARTICLE CONTAINING THAT SAME

11:13AM 15    POSITIVE SPIN, THAT SAME FALSE EXAGGERATED IMPRESSION OF WHAT

11:13AM 16    THE THERANOS TECHNOLOGY COULD DO.

11:13AM 17         SO THE QUESTION, IF MS. HOLMES HAD TOLD YOU ABOUT THE

11:14AM 18    RELIANCE ON THIRD PARTY DEVICES, WOULD THAT HAVE CHANGED THIS

11:14AM 19    CONTENT IN THE ARTICLE IS RELEVANT BECAUSE IT SHOWS THAT

11:14AM 20    MS. HOLMES'S PLAN WORKED.  HER INTENT TO WITHHOLD THAT

11:14AM 21    INFORMATION BECAUSE IT WOULD HAVE JEOPARDIZED THE POSITIVE,

11:14AM 22    HELPFUL PRODUCT THAT SHE WAS ABOUT TO GIVE OUT OF THIS PROCESS,

11:14AM 23    I THINK THERE'S NOTHING WRONG WITH HAVING HIM EXPLAIN THAT.

11:14AM 24              THE COURT:  DO YOU NEED THAT, MR. BOSTIC?  DO YOU

11:14AM 25    THINK YOU NEED THAT TO TIE ALL OF THAT TOGETHER?

11:14AM 1      I REALIZE -- AND, AGAIN, I'M NOT -- I DON'T EVER WANT TO

11:14AM 2   GET INTO EITHER OF YOUR CASES, YOU PUT YOUR CASE ON, BUT I AM

11:14AM 3   JUST WONDERING, DON'T YOU HAVE THAT SUFFICIENT INFORMATION JUST

11:14AM 4   WITH THE ARTICLE ITSELF THAT YOU CAN MAKE THAT ARGUMENT WITHOUT

11:14AM 5   THE NEED TO PUSH THE MARGIN ON IT?

11:14AM 6          MR. BOSTIC:  MY INTENTION CERTAINLY IS NOT TO PUSH

11:14AM 7   THE MARGIN, YOUR HONOR.

11:14AM 8          THE COURT:  IT'S MY WORDS, NOT YOURS, OF COURSE.

11:15AM 9          MR. BOSTIC:  NO, NO.  WE'RE HERE FOR THE COURT'S

11:15AM 10  GUIDANCE, SO I'LL ULTIMATELY BE GUIDED BY THE COURT'S THINKING

11:15AM 11  ON THIS.

11:15AM 12     I THINK THAT IS APPROPRIATE.  I THINK IT'S NORMAL TO ASK A

11:15AM 13  WITNESS TO TESTIFY ABOUT HIS REACTION TO A CONVERSATION THAT HE

11:15AM 14  WAS HAVING.

11:15AM 15     WE'RE NOT CALLING HIM A VICTIM.  THAT WOULD CREATE

11:15AM 16  PROBLEMS.

11:15AM 17          THE COURT:  RIGHT.

11:15AM 18          MR. BOSTIC:  WE'RE NOT HAVING HIM OPINE ON THE

11:15AM 19  DEFENDANT'S CREDIBILITY OR TRUTHFULNESS.  THAT WOULD CAUSE A

11:15AM 20  PROBLEM.

11:15AM 21     THOSE ARE THE THIRD RAILS THAT WE'RE STAYING FAR AWAY

11:15AM 22  FROM.

11:15AM 23     I THINK THE QUESTIONS THAT WE DO INTEND TO ASK ARE

11:15AM 24  PERMISSIBLE.

11:15AM 25     I UNDERSTAND WHY THE DEFENSE WOULD WANT THIS WITNESS'S

11:15AM 1    ROLE TO BE MORE RESTRICTED AND MECHANICAL, BUT I DON'T THINK

11:15AM 2    THE LAW SUPPORTS THEM ON IT.

11:15AM 3                THE COURT:  OKAY.

11:15AM 4                MR. CLINE:  YOUR HONOR, SHALL I MOVE TO ANOTHER

11:15AM 5    TOPIC?

11:15AM 6                THE COURT:  YES.  SURE.

11:15AM 7                MR. CLINE:  WE PROBABLY HAVE BEATEN THAT ONE PRETTY

11:15AM 8    CLOSE TO DEATH.

11:15AM 9        MR. BOSTIC MENTIONED -- AND THIS IS AN AREA WHERE I THINK

11:15AM 10   WE ACTUALLY MAY AGREE, AMONG OTHERS.  I MEAN, WE ACTUALLY HAVE

11:15AM 11   NARROWED THINGS QUITE A BIT.

11:16AM 12       BUT HE, I THINK, PROPOSES TO HAVE MR. PARLOFF TESTIFY TO

11:16AM 13   THINGS LIKE HE WAS GIVEN A TOUR OF THE FACILITIES.

11:16AM 14       I DON'T HAVE ANY CONCERN WITH THAT.  HE'S AN EYEWITNESS.

11:16AM 15   HE SAW WHAT HE SAW.  HE CAN TESTIFY TO THAT.

11:16AM 16       GOING A TINY BIT FARTHER, THERE ARE TIMES IN THESE, IN

11:16AM 17   THESE TAPES WHERE IT'S CLEAR THAT THEY ARE DISCUSSING SOMETHING

11:16AM 18   ELSE.  AND IN PARTICULAR, FOR EXAMPLE, THEY -- I THINK AT ONE

11:16AM 19   POINT THEY GO THROUGH A SLIDE DECK.  SO THE TAPE RECORDS THE

11:16AM 20   DISCUSSION, BUT THE DISCUSSION IS ABOUT SLIDES THAT ARE -- THAT

11:16AM 21   THEY'RE BOTH, AS FAR AS I CAN TELL, SITTING THERE LOOKING AT.

11:16AM 22       IT SEEMS TO ME THAT MR. PARLOFF COULD SAY, AS WE WERE

11:16AM 23   HAVING THIS CONVERSATION, WE WERE GOING THROUGH THE SLIDES.

11:16AM 24       IT MAY BE THAT THE GOVERNMENT WILL ACTUALLY HAVE THE

11:16AM 25   SLIDES IN HAND AND PUT THEM UP.

11:16AM    1        AND HE'LL SAY, YEAH, THAT'S THE SLIDE THAT WE WERE TALKING

11:17AM    2    ABOUT.

11:17AM    3        THAT TYPE OF CONTEXT, WHICH, AGAIN, IS JUST OBJECTIVE

11:17AM    4    FACT, I DON'T HAVE A PROBLEM WITH.

11:17AM    5        SO THINGS THAT HE PERSONALLY WITNESSED, YOU KNOW, HE TOOK

11:17AM    6    A TOUR, HE SAW THIS, HE SAW THAT, AND FACTS LIKE THAT THAT ARE

11:17AM    7    REALLY ESSENTIAL TO UNDERSTAND WHAT THEY'RE TALKING ABOUT, YOU

11:17AM    8    KNOW, IN THE CONTEXT OF THE TAPE, I DON'T HAVE ANY PARTICULAR

11:17AM    9    PROBLEMS WITH THAT.

11:17AM   10        BEYOND THAT, AS I'VE SAID OVER AND OVER AND OVER, WE GET

11:17AM   11    INTO, WE GET INTO TROUBLE.

11:17AM   12        MR. BOSTIC PROPOSES TO ASK MR. PARLOFF WHETHER STATEMENTS

11:17AM   13    THAT MS. HOLMES MADE ON ONE DAY WERE CONSISTENT WITH STATEMENTS

11:17AM   14    SHE MADE ON ANOTHER DAY.

11:17AM   15        AGAIN, I JUST DON'T THINK THAT THAT'S SOMETHING THAT

11:17AM   16    MR. PARLOFF OUGHT TO BE TESTIFYING ABOUT.  IT IS A SUBJECTIVE

11:17AM   17    ASSESSMENT ON HIS PART.

11:17AM   18        IT, IT IS FINE FOR THE GOVERNMENT TO PLAY THE RELEVANT,

11:18AM   19    WHAT THEY CONSIDER TO BE THE RELEVANT SECTIONS, OBVIOUSLY

11:18AM   20    SUBJECT TO 106, AND IF THERE ARE INCONSISTENCIES, PRESUMABLY

11:18AM   21    THOSE WILL BE OBVIOUS TO THE JURY, AND IF NECESSARY, THE

11:18AM   22    GOVERNMENT CAN ARGUE THEM IN CLOSING.

11:18AM   23        BUT TO ALLOW MR. PARLOFF TO EDITORIALIZE ON WHETHER ONE

11:18AM   24    STATEMENT WAS CONSISTENT WITH ANOTHER IS JUST AN INVITATION TO

11:18AM   25    START TO GET INTO AREAS THAT WE DON'T NEED TO GET INTO.  IT'S

| | |
|---|---|
| 11:18AM | 1 |

UNNECESSARY AND BOUND TO BE PROBLEMATIC.

THE COURT:  WELL, CAN'T HE SAY -- AND WE TALKED ABOUT THIS PREVIOUSLY -- ON X DAY SHE SAID THIS, AND ON THEN THIS DAY, SHE SAID SOMETHING DIFFERENT?

WHY CAN'T HE, WHY CAN'T HE TESTIFY ABOUT THAT TO THE SAME QUESTION?

MR. BOSTIC:  WHAT THE GOVERNMENT CAN DO IS PLAY THE RELEVANT PORTIONS, AND ON -- AGAIN, I'M JUST TOTALLY MAKING THIS UP.  ON APRIL 7TH THEY HAVE AN INTERVIEW, AND MS. HOLMES SAYS WE CAN RUN A MILLION TESTS, YOU KNOW, FROM A SINGLE DROP OF BLOOD.

AND ON JUNE 1ST THEY HAVE AN ANOTHER INTERVIEW, AND HE ASKS, HOW MANY TESTS CAN YOU RUN ON A SINGLE DROP OF BLOOD?  AND SHE SAYS 50.

WELL, THE GOVERNMENT CAN PUT THOSE STATEMENTS IN.  THE INCONSISTENCY WILL BE OBVIOUS.  IT'S NOT GOING TO NEED A GLOSS FROM MR. --

THE COURT:  WELL, NO.  ISN'T THE GLOSS, YOU ASKED HER THIS ON THIS DAY.  DIDN'T SAY SHE SOMETHING DIFFERENT IN JUNE?

YES.

WHAT DID SHE SAY IN JUNE?

MR. CLINE:  AND WHERE I PART COMPANY A LITTLE BIT WITH THE COURT IS, DID SHE SAY SOMETHING DIFFERENT IN JUNE?

THE COURT:  BUT SHE DID IN THE HYPOTHETICAL.

```
11:18AM   1    UNNECESSARY AND BOUND TO BE PROBLEMATIC.
11:18AM   2            THE COURT:  WELL, CAN'T HE SAY -- AND WE TALKED
11:18AM   3    ABOUT THIS PREVIOUSLY -- ON X DAY SHE SAID THIS, AND ON THEN
11:18AM   4    THIS DAY, SHE SAID SOMETHING DIFFERENT?
11:18AM   5        WHY CAN'T HE, WHY CAN'T HE TESTIFY ABOUT THAT TO THE SAME
11:18AM   6    QUESTION?
11:18AM   7            MR. BOSTIC:  WHAT THE GOVERNMENT CAN DO IS PLAY THE
11:18AM   8    RELEVANT PORTIONS, AND ON -- AGAIN, I'M JUST TOTALLY MAKING
11:19AM   9    THIS UP.  ON APRIL 7TH THEY HAVE AN INTERVIEW, AND MS. HOLMES
11:19AM  10    SAYS WE CAN RUN A MILLION TESTS, YOU KNOW, FROM A SINGLE DROP
11:19AM  11    OF BLOOD.
11:19AM  12        AND ON JUNE 1ST THEY HAVE AN ANOTHER INTERVIEW, AND HE
11:19AM  13    ASKS, HOW MANY TESTS CAN YOU RUN ON A SINGLE DROP OF BLOOD?
11:19AM  14    AND SHE SAYS 50.
11:19AM  15        WELL, THE GOVERNMENT CAN PUT THOSE STATEMENTS IN.  THE
11:19AM  16    INCONSISTENCY WILL BE OBVIOUS.  IT'S NOT GOING TO NEED A GLOSS
11:19AM  17    FROM MR. --
11:19AM  18            THE COURT:  WELL, NO.  ISN'T THE GLOSS, YOU ASKED
11:19AM  19    HER THIS ON THIS DAY.  DIDN'T SAY SHE SOMETHING DIFFERENT IN
11:19AM  20    JUNE?
11:19AM  21        YES.
11:19AM  22    WHAT DID SHE SAY IN JUNE?
11:19AM  23            MR. CLINE:  AND WHERE I PART COMPANY A LITTLE BIT
11:19AM  24    WITH THE COURT IS, DID SHE SAY SOMETHING DIFFERENT IN JUNE?
11:19AM  25            THE COURT:  BUT SHE DID IN THE HYPOTHETICAL.
```

5655

11:19AM  1          MR. CLINE:  BUT WHY NOT -- THE CLEANEST WAY TO

11:19AM  2     HANDLE THAT WOULD BE, DID SHE SAY -- DID YOU ASK HER THIS

11:19AM  3     QUESTION?

11:19AM  4          YES, I DID.

11:19AM  5          I'M GOING TO PLAY YOU WHAT SHE SAID ON APRIL 7TH.

11:19AM  6          HE PLAYS IT.

11:19AM  7          DID YOU ASK THE QUESTION AGAIN?

11:19AM  8          YES.

11:20AM  9          I'M GOING TO PLAY YOU WHAT SHE SAID.  HERE IT IS.

11:20AM 10          THE --

11:20AM 11          THE COURT:  AND THEN THE QUESTION IS, WAS THE SECOND

11:20AM 12     QUESTION AND ANSWER DIFFERENT THAN THE SECOND TIME?  IT'S THE

11:20AM 13     SAME THING.  IT'S SEMANTICS.  I UNDERSTAND THE DELIVERY MIGHT

11:20AM 14     BE A LITTLE DIFFERENT, BUT THOSE TYPES OF QUESTIONS I DON'T

11:20AM 15     HAVE A PROBLEM WITH.

11:20AM 16          DID SHE SAY SOMETHING DIFFERENT?

11:20AM 17          WELL, YES AND NO.

11:20AM 18          AND THEN YOU PLAY THE TAPE.  IS THAT WHAT SHE SAID?

11:20AM 19          MR. CLINE:  WHERE WE'RE GOING TO GET INTO DIFFICULTY

11:20AM 20     IS -- THE EXAMPLE I GAVE, THE DIFFERENCE WAS OBVIOUS.  IT MAKES

11:20AM 21     NO DIFFERENCE WHETHER HE SAYS THE ANSWERS WERE DIFFERENT.  THEY

11:20AM 22     WERE OBVIOUSLY DIFFERENT.

11:20AM 23          THERE WILL BE MUCH MORE SUBTLE EXAMPLES WHERE WHETHER WHAT

11:20AM 24     SHE SAID WAS INCONSISTENT IS VERY MUCH IN DOUBT.

11:20AM 25          AND ALLOWING HIM TO PUT HIS GLOSS ON IT IS GOING TO

5656

11:20AM 1    TROUBLESOME.

11:20AM 2            THE COURT:  SURE.  I UNDERSTAND THOSE WHERE YOU GET

11:20AM 3    TO, WELL, IT MIGHT BE -- YOU KNOW, IT MIGHT BE A SHADE OF A

11:20AM 4    COLOR OR SOMETHING LIKE THAT.

11:20AM 5        BUT IF IT'S A STATEMENT THAT IS COMPLETELY DIFFERENT, THEN

11:20AM 6    THE QUESTION, DOESN'T IT HAVE TO BE, DID SHE SAY DIFFERENT?

11:21AM 7    THE QUESTION COULD BE, WAS SHE CONSISTENT IN HER RESPONSE IN

11:21AM 8    THE SECOND QUESTION?

11:21AM 9        YES, NO.

11:21AM 10       YOU KNOW, WE'RE GOING TO HAVE A -- I DON'T WANT TO EDIT

11:21AM 11   THE WHOLE TESTIMONY, AND I DON'T THINK WE HAVE TO.  I THINK

11:21AM 12   THERE'S SOME OF THESE QUESTIONS I UNDERSTAND AND IT'S GOOD THAT

11:21AM 13   WE'RE HAVING THE CONVERSATION.  IT GIVES ME A HEADS UP ON IT.

11:21AM 14           MR. CLINE:  AND IT MAY BE ON ITEMS LIKE THAT,

11:21AM 15   YOUR HONOR, WE MAY HAVE TO OBJECT SORT OF ON THE FLY.

11:21AM 16           THE COURT:  RIGHT.

11:21AM 17           MR. CLINE:  BECAUSE THERE WILL BE GRADATIONS.

11:21AM 18           THE COURT:  RIGHT.

11:21AM 19           MR. CLINE:  BUT I DEFINITELY WANT TO FLAG THE ISSUE

11:21AM 20   AND LET YOU KNOW MY CONCERN ABOUT IT.

11:21AM 21           THE COURT:  NO.  I APPRECIATE THAT.

11:21AM 22           MR. CLINE:  ON THAT TYPE OF QUESTION, IF I COULD

11:21AM 23   JUST BRIEFLY?

11:21AM 24           THE COURT:  YES, PLEASE.

11:21AM 25           MR. CLINE:  SO I THINK THIS IS THE THEME.  IF THE

11:21AM 1   DEFENSE COULD RESTRICT THIS WITNESS'S ROLE TO SIMPLY

11:21AM 2   AUTHENTICATING THE RECORDINGS AND THEN LEAVING THE STAND, THAT

11:21AM 3   WOULD BE A GREAT OUTCOME FOR THEM.

11:21AM 4       THE LAW DOESN'T REQUIRE SO NARROW A ROLE FOR HIM.

11:21AM 5       HE'S ALLOWED TO TESTIFY ABOUT THE SUBSTANCE OF

11:22AM 6   CONVERSATIONS THAT HE HAD AND THE CONTENT OF THOSE

11:22AM 7   COMMUNICATIONS REGARDLESS OF WHETHER THE AUDIO IS BEING PLAYED.

11:22AM 8       WHAT I HEARD MR. CLINE SAY IS THAT IF THERE'S AUDIO OF A

11:22AM 9   CONVERSATION, THE GOVERNMENT NEEDS TO DEFAULT TO THE AUDIO AND

11:22AM 10  CAN'T RELY ON THE WITNESS TO TALK ABOUT THE CONTENT.

11:22AM 11      BUT THAT'S NOT TRUE.  UNDER RULE 102, THE REQUIREMENT OF

11:22AM 12  THE ORIGINAL, IT'S ONLY IF WE WERE TRYING TO PROVE THE CONTENT

11:22AM 13  OF THE RECORDING THROUGH A WITNESS'S TESTIMONY THAT WE WOULD

11:22AM 14  RUN INTO PROBLEMS WITH THAT RULE.

11:22AM 15      DESPITE THE EXISTENCE OF A RECORDING, THE WITNESS CAN

11:22AM 16  TESTIFY ABOUT THE SUBSTANCE OF THE CONVERSATION WITHOUT

11:22AM 17  INTRODUCING A SPECIFIC RECORDING.

11:22AM 18      IN SOME OF THESE INSTANCES, BY THE WAY, MAYBE MOST OF

11:22AM 19  THEM, THE EXPECTED ANSWER WOULD BE, YOU KNOW, TO THE QUESTION,

11:22AM 20  DID MS. HOLMES ADDRESS THIS TOPIC ON OTHER OCCASIONS?

11:22AM 21      YES, AND SHE SAID SOMETHING SIMILAR.

11:22AM 22      AND THE POINT THERE IS TO SHOW THAT THIS WAS A RECURRING

11:22AM 23  TOPIC IN THEIR CONVERSATION.

11:22AM 24          THE COURT:  SURE.

11:22AM 25          MR. BOSTIC:  AND THE FACT THAT MS. HOLMES SAID

5658

11:23AM 1    CONSISTENTLY MISLEADING THINGS OVER TIME IS RELEVANT TO HER

11:23AM 2    ABSENCE OF MISTAKE, SO THAT'S WHY IT'S IMPORTANT FOR THE JURY

11:23AM 3    TO UNDERSTAND THAT.

11:23AM 4         THE GOVERNMENT SHOULD NOT HAVE TO PLAY FIVE CLIPS IN ORDER

11:23AM 5    TO ACCOMPLISH THAT.  THAT'S JUST A WASTE OF TIME AND THE RULES

11:23AM 6    DON'T REQUIRE IT.

11:23AM 7         AND JUST ON THE COMMENTS THAT HAVE BEEN MADE ABOUT

11:23AM 8    MR. PARLOFF'S BIAS, I SHOULD SAY THAT I DON'T WANT THE COURT TO

11:23AM 9    BE IMAGINING THIS WITNESS AS SOMEONE WHO HAS A BONE TO PICK

11:23AM 10   WITH THE DEFENDANT AND WHO IS GOING TO TAKE EVERY OPPORTUNITY

11:23AM 11   TO SAY SOMETHING PEJORATIVE AS MR. CLINE FEARS.  THAT'S NOT

11:23AM 12   WHAT I EXPECT FROM THIS WITNESS.

11:23AM 13        I THINK THE REPORTS THAT HAVE BEEN PROVIDED TO THE DEFENSE

11:23AM 14   SHOW THAT, IF ANYTHING, THIS WITNESS, FOR A TIME, WISHED THAT

11:23AM 15   HE HAD ASKED BETTER QUESTIONS OF THE DEFENDANT AND THAT HE HAD

11:23AM 16   DONE MORE TO ASK DIRECT QUESTIONS GETTING AT THE TRUTH OF WHAT

11:23AM 17   WAS HAPPENING, AND FOR A TIME HE BLAMED HIMSELF.

11:23AM 18        I DON'T THINK HE DOES ANY LONGER, AND I THINK THE

11:23AM 19   RECORDINGS SHOW THAT HE DID, IN FACT, ASK THE DIRECT QUESTIONS

11:23AM 20   THAT HE SHOULD HAVE.

11:23AM 21        BUT I DON'T EXPECT THIS WITNESS TO BE LOOKING FOR AN

11:24AM 22   OPPORTUNITY TO CRITICIZE OR SAY BAD THINGS ABOUT THE DEFENDANT.

11:24AM 23        SO TO THE EXTENT THAT THAT'S THE DEFENSE'S CONCERN OR THE

11:24AM 24   COURT'S, I THINK IT'S OVERBLOWN.

11:24AM 25             THE COURT:  OKAY.  THANK YOU.

11:24AM 1          MR. CLINE:  I THINK WE HAVE COVERED THE TOPICS THAT

11:24AM 2   MR. BOSTIC WENT OVER, AND I THINK THE COURT UNDERSTANDS OUR

11:24AM 3   CONCERN AND SORT OF THE FRAMEWORK THAT WE'RE OPERATING IN.

11:24AM 4          THE OTHER ISSUE OUT THERE, OF COURSE, IS THE SUBPOENA,

11:24AM 5   WHICH IS, I THINK, PRINCIPALLY WHY MR. KORZENIK IS ON THE LINE.

11:24AM 6          I GUESS WHAT I WOULD SUGGEST ON THAT IS THAT WE WAIT FOR

11:24AM 7   THE COURT'S RULING ON THE MOTION IN LIMINE, AND IT MAY BE THAT

11:24AM 8   THE SUBPOENA ISSUE WILL LARGELY VANISH, AND THAT WOULD BE

11:24AM 9   BECAUSE THE RELEVANCE OF THESE OTHER STATEMENTS BECOME SO

11:24AM 10  ATTENUATED THAT YOUR HONOR CONCLUDES, AND I MIGHT EVEN

11:25AM 11  CONCLUDE, THAT THE GAME IS NOT WORTH THE CANDLE AND IT'S

11:25AM 12  PARTICULARLY BECAUSE MR. PARLOFF OBVIOUSLY FEELS VERY STRONGLY

11:25AM 13  ABOUT THE PRIVILEGE ISSUE.

11:25AM 14         SO RATHER THAN REPEAT ALL OF THE ARGUMENTS WE'VE JUST BEEN

11:25AM 15  MAKING ABOUT THE SUBPOENA, WHAT I WOULD SUGGEST IS THAT WE

11:25AM 16  AWAIT THE COURT'S RULING ON THE MOTION IN LIMINE AND THEN SEE

11:25AM 17  IF THERE'S STILL ANYTHING TO DISCUSS ON THE SUBPOENA.  THERE

11:25AM 18  MAY BE, THERE MAY NOT BE.  BUT IT WILL CERTAINLY INFORM OUR

11:25AM 19  DISCUSSION ON THAT.

11:25AM 20         THE COURT:  THANK YOU FOR THAT.

11:25AM 21         THE ONE THING, AND I TAKE IT FROM BOTH OF YOU, IS THAT

11:25AM 22  NEITHER SIDE WANTS TO GET TO ANY THIRD PARTY CONVERSATIONS SUCH

11:25AM 23  THAT WE DEAL WITH THE SUBPOENA AND ALL OF THOSE OTHER ISSUES,

11:25AM 24  AND LET ME JOIN THAT CAMP AS WELL.  I DON'T THINK IT'S

11:25AM 25  NECESSARY.

| | | |
|---|---|---|
| 11:25AM | 1 | MR. CLINE:  WE WOULD ABSOLUTELY PREFER NOT TO.  BUT, |
| 11:25AM | 2 | AGAIN, IT'S GOING TO DEPEND ON THE SCOPE OF THE DIRECT.  I |
| 11:25AM | 3 | MEAN -- |
| 11:25AM | 4 | THE COURT:  NO.  I UNDERSTAND THAT.  IT'S A LOOMING |
| 11:25AM | 5 | ISSUE THAT LOOMS OVER ALL OF US -- |
| 11:25AM | 6 | MR. CLINE:  YES. |
| 11:25AM | 7 | THE COURT:  -- IN THAT REGARD, BUT I'M GLAD WE'RE |
| 11:26AM | 8 | ALL OF COMMON PURPOSE HERE TO AVOID IT. |
| 11:26AM | 9 | MR. CLINE:  YES. |
| 11:26AM | 10 | THE COURT:  AND I WOULD ENCOURAGE BOTH SIDES TO DO |
| 11:26AM | 11 | THAT SUCH THAT WE DON'T IMPLICATE THAT AND CREATE ANOTHER |
| 11:26AM | 12 | OPPORTUNITY TO TAKE TIME AWAY ON AN IMPORTANT ISSUE, BUT TAKE |
| 11:26AM | 13 | TIME AWAY FROM THE EVIDENCE THAT IS BEING PUT BEFORE THE JURY. |
| 11:26AM | 14 | WE'RE GETTING CLOSE TO THE HOLIDAY SEASON HERE AND I KNOW |
| 11:26AM | 15 | THESE JURORS ARE PROBABLY GETTING A LITTLE ANXIOUS ABOUT |
| 11:26AM | 16 | SCHEDULING, AND I'M ANXIOUS ABOUT SCHEDULING AS WELL. |
| 11:26AM | 17 | I'M CONCERNED ABOUT OUR SHORT WEEK TODAY AND HOW MUCH TIME |
| 11:26AM | 18 | WE'RE GOING TO TAKE IN TOMORROW MORNING'S CONVERSATION ABOUT |
| 11:26AM | 19 | WHAT THAT ENTAILS. |
| 11:26AM | 20 | SO LET ME STATE THAT -- LET ME JUST INDICATE -- ANYTHING |
| 11:26AM | 21 | FURTHER BEFORE WE -- |
| 11:26AM | 22 | MR. BOSTIC:  NO, YOUR HONOR, UNLESS THE COURT HAS |
| 11:26AM | 23 | ANY QUESTIONS. |
| 11:26AM | 24 | MR. CLINE:  NO, YOUR HONOR. |
| 11:26AM | 25 | THE COURT:  I DON'T HAVE ANY REAL QUESTIONS.  YOU'VE |

11:26AM 1    BEEN HELPFUL IN ANSWERING THE QUESTIONS THAT I PUT TO YOU

11:26AM 2    TODAY.

11:26AM 3        I WAS CONCERNED ABOUT THE DEFINITION OF WHAT CONTEXT MEANT

11:26AM 4    AND WHERE THAT WAS GOING TO GO.  I THINK WE TALKED ABOUT

11:27AM 5    CONNECTING THE STATEMENTS AND THOSE TYPES OF THINGS, AS WELL AS

11:27AM 6    THE WITNESS'S UNDERSTANDING OF HER STATEMENTS.

11:27AM 7        I THINK I UNDERSTAND, MR. CLINE, YOUR POSITION.

11:27AM 8        AND, MR. BOSTIC, I DO HAVE -- I THINK I RAISED THESE LAST

11:27AM 9    WEEK -- I DO HAVE SOME CONCERNS ABOUT THE CONTEXT AND WHERE

11:27AM 10   DOES THAT GO?  WHAT DOES THAT MEAN?

11:27AM 11       I'M GOING TO -- I DO THINK THAT SOME OF THE QUESTIONS,

11:27AM 12   THAT IF YOU ASK THEM IN THE WAY THAT YOU SUGGESTED IN A

11:27AM 13   WHOLESALE WAY MIGHT BE OBJECTIONABLE UNDER 403 AND OTHERWISE.

11:27AM 14   IF SHE TOLD YOU X, WOULD YOU HAVE WRITTEN Y?

11:27AM 15       NOW, THERE'S A WAY TO GET THAT INFORMATION IN, I THINK, OR

11:27AM 16   TO PROBE THAT AREA.  BUT IT MAY CALL FOR SPECULATION IN THAT

11:27AM 17   SPECULATING IF SHE HAD SAID SOMETHING, AND THEN SPECULATING,

11:27AM 18   WOULD HE HAVE WRITTEN IT?

11:27AM 19       WE'VE TALKED A LITTLE BIT ABOUT THE PARAMETERS OF THAT.

11:28AM 20   IF HE KNEW INFORMATION -- AND AGAIN, THE TIME STAMP AREA THAT

11:28AM 21   I'M PAUSING BECAUSE I DON'T WANT TO GET INTO WHAT HE WROTE

11:28AM 22   SUBSEQUENTLY AND SO WE'RE GOING TO HAVE TO AVOID THAT.

11:28AM 23       I DO THINK THAT THE WITNESS COULD TESTIFY ABOUT HIS

11:28AM 24   OBSERVATIONS OF HER, AND I USE THE WORD "DEMEANOR," BUT HE CAN

11:28AM 25   SAY, WAS IT A FRIENDLY CONVERSATION?  WAS SHE COOPERATIVE?  DID

11:28AM 1    SHE ANSWER?  DID SHE SEEM TO BE EAGER TO GIVE YOU INFORMATION?

11:28AM 2    IS THAT REPRESENTED IN THE FACT THAT YOU GOT A TOUR?  AND HOW

11:28AM 3    DID THE TOUR GO?

11:28AM 4         THOSE TYPE OF BACKGROUND THAT WOULD FRAME THE CONTEXT,

11:28AM 5    I'LL USE THAT WORD, OF THE RELATIONSHIP DURING THE INTERVIEW, I

11:28AM 6    THINK THAT'S FAIR GAME.  I THINK HE -- AND THEN I THINK THIS

11:28AM 7    WITNESS CAN TESTIFY ABOUT THAT.

11:28AM 8         WAS SHE, YOU KNOW, WAS SHE VOLUNTARILY GIVING YOU

11:28AM 9    INFORMATION?  DID SHE PROVIDE IT?  WAS SHE HESITANT?  WAS SHE

11:28AM 10   RETICENT ABOUT ANYTHING?

11:29AM 11        I THINK THAT'S FAIR GAME AND HE CAN OFFER HIS OPINIONS

11:29AM 12   ABOUT THAT.  HE'S A JOURNALIST, AND I THINK PART OF HIS

11:29AM 13   EXPERIENCE IS -- YOU KNOW, HE'S LOOKING AT THE SUBJECT MUCH

11:29AM 14   LIKE AN ARTIST LOOKS AT A MODEL WHEN SHE PAINTS.  I THINK IT'S

11:29AM 15   THE SAME TYPE OF THING.

11:29AM 16        MR. CLINE, YOU WANTED TO COMMENT?

11:29AM 17            MR. CLINE:  I WAS JUST GOING TO SAY, I SUSPECT THAT

11:29AM 18   WE ARE ALL LARGELY IN AGREEMENT ON THAT TOPIC, AND IT'S

11:29AM 19   PROBABLY AN AREA WHERE QUESTION-BY-QUESTION OBJECTIONS WILL BE

11:29AM 20   NECESSARY.

11:29AM 21            THE COURT:  RIGHT, I THINK SO.

11:29AM 22        BUT IN GENERAL, I THINK -- I JUST WANT TO LET YOU KNOW, IN

11:29AM 23   GENERAL, I THINK HE CAN TESTIFY ABOUT THAT.

11:29AM 24        AND YOU'RE GOING TO STAY AWAY FROM -- AS YOUR PLEADINGS

11:29AM 25   SUGGEST, HE'S NOT GOING TO BE ASKED, DID YOU FEEL SHE WAS

11:29AM   1   LYING?  GIVE US YOUR OPINION OF HER VERACITY, ANYTHING OF THOSE

11:29AM   2   THINGS.

11:29AM   3        AS YOU'VE SAID, MR. BOSTIC, THOSE ARE NOT RELEVANT FOR HIS

11:29AM   4   TESTIMONY.

11:29AM   5        HIS UNDERSTANDING OF HER STATEMENTS, HE MAY BE ABLE TO

11:30AM   6   TESTIFY ABOUT THAT.  HE MIGHT BE ABLE TO, DEPENDING ON THE

11:30AM   7   QUESTIONS.

11:30AM   8        HE CAN'T SAY, WELL, DO YOU THINK SHE MEANT X?  I'M NOT

11:30AM   9   GOING TO ALLOW THAT TYPE OF QUESTION.

11:30AM  10        BUT SHE ANSWERED IN THIS WAY, OR WHEN SHE SAID THIS, IS

11:30AM  11   THAT WHAT FORMED YOUR OPINION SUCH THAT IT APPEARED IN YOUR

11:30AM  12   ARTICLE?

11:30AM  13        THOSE TYPES OF QUESTIONS, I THINK, ARE -- AGAIN, WE MAY

11:30AM  14   HAVE TO GO QUESTION BY QUESTION ON THIS, BUT I JUST WANTED TO

11:30AM  15   INFORM YOU ABOUT MY THINKING ABOUT THAT.

11:30AM  16        I THINK HE CAN TESTIFY IN A LIMITED DEGREE ABOUT HER

11:30AM  17   RESPONSES, HIS UNDERSTANDING SUCH THAT IT FORMED THE BASIS FOR

11:30AM  18   HIS ARTICLE.

11:30AM  19        NOW, GOING FURTHER LIKE YOU TALKED ABOUT, MR. CLINE, I

11:30AM  20   AGREE WITH YOU, I DON'T THINK HE CAN WHOLESALE GO FORWARD AND

11:30AM  21   SAY, WELL, I THINK SHE MEANT THIS AND THAT'S WHY I WROTE Y, AS

11:30AM  22   OPPOSED TO, SHE TOLD ME THIS AND THIS IS WHAT I WROTE.

11:31AM  23        AND MAYBE THERE'S NOT A GREAT DISTINCTION BETWEEN THOSE

11:31AM  24   TWO THINGS, BUT IT DEPENDS, AGAIN, ON THE QUESTION AND THE

11:31AM  25   ANSWER.

11:31AM  1          BUT I DO THINK THAT HE'S -- THERE'S SOME -- HE'S A

11:31AM  2     JOURNALIST.  HE INTERVIEWED.  I'M SURE MR. BOSTIC WILL BE

11:31AM  3     INFORMED ABOUT HIS BACKGROUND AS A JOURNALIST, HOW MANY

11:31AM  4     ARTICLES HE'S WRITTEN, HIS EXPERIENCE, ET CETERA.

11:31AM  5          AND HE MAY EVEN PROBE AS TO, WHAT DO YOU NORMALLY DO WHEN

11:31AM  6     YOU DO AN INTERVIEW LIKE THIS?  WHAT IS IMPORTANT TO WRITING A

11:31AM  7     STORY?

11:31AM  8          HE'LL TALK ABOUT JOURNALISTIC INTEGRITY PERHAPS.  HE'LL

11:31AM  9     TALK ABOUT PERHAPS -- WE KNOW THAT THERE ARE JOURNALISTS, A

11:31AM  10    STANDARD OF ETHICS THAT JOURNALISTS HAVE TO FOLLOW.

11:31AM  11         I DON'T KNOW.  BUT ALL OF THOSE QUESTIONS, I KNOW THEY

11:31AM  12    EXIST, BUT I DON'T KNOW IF HE REFERENCED THEM FOR THIS, BUT --

11:31AM  13    SO THOSE ARE, I THINK, QUESTIONS THAT ARE OPEN TO INQUIRY.

11:31AM  14         BUT DRILLING DOWN ON TO SOME OF THESE OTHERS, MR. BOSTIC,

11:32AM  15    I THINK I DO STILL HAVE SOME CONCERNS ABOUT GOING TOO FAR WITH

11:32AM  16    THE CONTEXT AS IT'S CALLED AND THESE OTHER QUESTIONS ABOUT

11:32AM  17    SPECULATION.

11:32AM  18         I'M TELLING YOU THIS TO PERHAPS ASK YOU TO FRAME THOSE

11:32AM  19    QUESTIONS AND GIVE SOME THOUGHT TO THOSE QUESTIONS IN A WAY

11:32AM  20    THAT WOULD AVOID THAT.

11:32AM  21         BECAUSE, MR. CLINE, YOU KNOW, YOU OBVIOUSLY WILL BRING TO

11:32AM  22    MY ATTENTION ANY OBJECTION THAT YOU THINK MIGHT EXIST.

11:32AM  23             MR. CLINE:  I WILL CERTAINLY DO THAT.

11:32AM  24         AGAIN, FOR THE MOMENT I THINK WE'RE PUTTING THE SUBPOENA

11:32AM  25    ASIDE.

11:32AM  1             THE COURT:  YES, I THINK SO.

11:32AM  2             MR. CLINE:  AND I'M CONTENT TO DO THAT.

11:32AM  3             THE COURT:  I, I --

11:32AM  4             MR. CLINE:  WITH THE UNDERSTANDING THAT IF THE

11:32AM  5    TESTIMONY STRAYS, I MAY ASK AT A BREAK IF WE CAN ENFORCE IT.

11:32AM  6             THE COURT:  SURE.

11:32AM  7             MR. CLINE:  I WANT TO EMPHASIZE, I HOPE THAT WE

11:32AM  8    DON'T GET TO THAT POINT.

11:33AM  9             THE COURT:  WELL, I'D LIKE TO KEEP THE HERD ON THE

11:33AM 10    PATH AND NOT HAVE ANY STRAYS HERE.

11:33AM 11             MR. CLINE:  YES.

11:33AM 12             THE COURT:  SO WE'RE IN COMMON PURPOSE FOR THAT.

11:33AM 13    SURE.

11:33AM 14             MR. CLINE:  BUT I THINK BECAUSE MR. BOSTIC CONTROLS

11:33AM 15    THE DIRECT HERE, I THINK IT'S GOING TO BE LARGELY UP TO HIM.

11:33AM 16             THE COURT:  RIGHT.

11:33AM 17             MR. CLINE:  AND FROM TALKING WITH HIM, I THINK WE

11:33AM 18    HAVE A PRETTY GOOD UNDERSTANDING OF EACH OTHER'S POSITION.

11:33AM 19             THE COURT:  RIGHT.

11:33AM 20             MR. BOSTIC:  I AGREE, YOUR HONOR.

11:33AM 21        THE COURT'S COMMENTS HAVE BEEN HELPFUL.  THE GOVERNMENT

11:33AM 22    WILL DO ITS BEST TO CRAFT ITS QUESTIONS TO ADHERE TO THE

11:33AM 23    GUIDANCE FROM THE COURT.

11:33AM 24             THE COURT:  AND, YOU KNOW, NEITHER PARTY SHOULD FEEL

11:33AM 25    SHY ABOUT RAISING OBJECTIONS, AND THEY MIGHT BE 403 OR OTHER,

5666

11:33AM 1   BUT LET ME SAY I'M COGNIZANT OF THE 403 ISSUE THAT OVERLAPS ALL

11:33AM 2   OF THIS POTENTIAL TESTIMONY.

11:33AM 3           MR. CLINE:  YES.

11:33AM 4           THE COURT:  AND, MR. CLINE, I KNOW YOU'RE GOING TO

11:33AM 5   AVOID GETTING INTO THE SECOND ARTICLE BECAUSE WE DON'T WANT TO

11:33AM 6   OPEN THAT DOOR.

11:33AM 7           MR. CLINE:  WE DO NOT.

11:33AM 8           THE COURT:  AND LET'S SEE.  WHO WAS ON THE LINE

11:34AM 9   AGAIN?  IS THAT --

11:34AM 10          MR. KORZENIK:  YES, DAVID KORZENIK.

11:34AM 11          THE COURT:  YES.  I HOPE THIS CONVERSATION HAS BEEN

11:34AM 12  OF HELPFUL TO YOU.  WHAT I'M GOING TO DO IS I'M NOT GOING TO

11:34AM 13  DISTURB JUDGE COUSINS'S RULING AT THIS TIME, AND WE'LL KEEP THE

11:34AM 14  OBJECTIONS BEFORE THIS COURT UNDER SUBMISSION PENDING THE

11:34AM 15  TESTIMONY OF THIS WITNESS AND WHETHER OR NOT WE NEED TO REVISIT

11:34AM 16  YOUR MOTION AND WHETHER OR NOT THE COURT HAS TO RULE ON THE

11:34AM 17  OBJECTIONS WILL BE DEPENDENT ON THE TESTIMONY OF MR. PARLOFF.

11:34AM 18      BUT I THINK THAT OUR CONVERSATION THIS MORNING ABOUT THE

11:34AM 19  PARAMETERS OF HIS CONVERSATION CERTAINLY HELP ME TO INFORM ME

11:34AM 20  AS TO WHAT WE CAN EXPECT.

11:34AM 21      AND I HOPE IT'S INFORMED YOU AS TO HOW YOUR DIRECT AND

11:34AM 22  CROSS SHOULD BE CONDUCTED.

11:34AM 23          MR. KORZENIK:  YES, YOUR HONOR.

11:34AM 24      I'LL JUST MAKE THIS BRIEF COMMENT.  I THINK IT LOOKS TO ME

11:34AM 25  AS IF THE PARTIES HAVE KIND OF SOME SENSE OF THE BOUNDARIES AND

11:35AM  1    WHAT THEY NEED TO DO.  AND I'M NOT GOING TO WEIGH IN ON

11:35AM  2    RELEVANCE, THAT'S NOT MY BUSINESS.

11:35AM  3        BUT I DO UNDERSTAND, TOO, WHY THE -- BUT I'M SYMPATHETIC,

11:35AM  4    I WILL SAY, WHY MR. CLINE WOULD LIKE TO KEEP THE RULE 17 AND

11:35AM  5    REPORTER'S PRIVILEGE ISSUE THE ON THE GRIDDLE.

11:35AM  6        BUT I WOULD JUST REMIND THE COURT THAT MAGISTRATE JUDGE

11:35AM  7    COUSINS'S RULING WAS ONE THAT HE DESCRIBED AS "NOT CLOSE,"

11:35AM  8    THAT HE SAID THAT THEY HAD NOT ESTABLISHED THE RELEVANCE, THE

11:35AM  9    ADMISSIBILITY, MATERIALITY, NEED OR SPECIFICITY FOR WHAT THEY

11:35AM 10    ARE SEEKING, AND HE SAID THIS WAS REALLY MORE GUESSING, A

11:35AM 11    FISHING EXPEDITION.

11:35AM 12        AND I MUST SAY THAT I THINK WHAT MR. CLINE HAS BEEN

11:36AM 13    BUILDING HIS ARGUMENTS ON BEFORE MAGISTRATE JUDGE COUSINS, AND

11:36AM 14    EVEN TODAY AS WELL, IS LARGELY SPECULATION AND FANTASY ABOUT

11:36AM 15    WHAT THOSE OTHER WITNESSES MIGHT HAVE SAID WHEN THOSE WITNESSES

11:36AM 16    HAVE ALL BEEN AT HIS COMMAND BY SUBPOENA, WHEN MOST OF THEM

11:36AM 17    HAVE BEEN WITNESSES IN THE TRIAL AND WILL BE.  AND SO THAT

11:36AM 18    THERE IS STILL, WHATEVER HE MIGHT IMAGINE, MIGHT BE THERE, HE

11:36AM 19    SHOULD BE CAREFUL BECAUSE IT'S MORE LIKELY TO BE HARMFUL TO

11:36AM 20    HIM.  WE DID NOT GIVE THESE THINGS, OTHER INTERVIEWS TO ANYONE.

11:36AM 21    WE WANTED TO PRESERVE OUR PRIVILEGE AND OUR COMMITMENTS OF

11:36AM 22    CONFIDENTIALITY TO AT LEAST FIVE OF THEM.

11:36AM 23        BUT A LOT OF WHAT I'M HEARING FROM MR. CLINE IS BASED

11:36AM 24    LARGELY ON HIGHLY SPECULATIVE IMAGININGS OF WHAT THIS MATERIAL

11:37AM 25    MIGHT INCLUDE, AND I WOULD SAY THAT IF HE BREAKS OUR PRIVILEGE,

11:37AM 1      HE MAY HURT HIMSELF MORE THAN THIS PROSECUTOR.

11:37AM 2              MR. CLINE:  MR. KORZENIK HAS BEEN KIND ENOUGH TO

11:37AM 3      WARN ME OF THAT POSSIBILITY EVER SINCE WE'VE BEEN TALKING, AND

11:37AM 4      I'M PROCEEDING WITH FULL AWARENESS.

11:37AM 5              THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.  I

11:37AM 6      APPRECIATE THAT.

11:37AM 7              MR. KORZENIK:  THE MAIN POINT THAT I MAKE IS THAT

11:37AM 8      THIS WAS NOT A CLOSE CALL ON THE ISSUE OF RULE 17, AND SINCE

11:37AM 9      THE FACTORS OF RULE 17 OVERLAP SUBSTANTIALLY WITH THE FACTORS

11:37AM 10     TO BE CONSIDERED ON THE REPORTER'S PRIVILEGE, I DON'T SEE IT AS

11:37AM 11     BEING A CLOSE CALL HERE.

11:37AM 12             THE COURT:  WELL, IT, IT -- I APPRECIATE THAT

11:37AM 13     OBSERVATION.  AND, OF COURSE, I RESPECT JUDGE COUSINS AND HIS

11:37AM 14     OBSERVATION.

11:37AM 15         OF COURSE, THE PLAYING FIELD MAY CHANGE DEPENDENT ON WHAT

11:37AM 16     TESTIMONIAL EVIDENCE COMES IN THAT MIGHT HAVE SOME RELATIONSHIP

11:38AM 17     WITH JUDGE COUSIN'S ORDER AND THE SUBPOENA, THAT COULD CHANGE.

11:38AM 18         SO, AGAIN, JUDGE COUSINS WAS -- HIS WISDOM IS TIME STAMPED

11:38AM 19     WITH THE MOTION AND THE TIME AND THE FACTS THAT IT PRESENTED TO

11:38AM 20     HIM.  I'M NOT CERTAIN THAT THINGS WILL CHANGE.  I THINK OUR

11:38AM 21     CONVERSATION THIS MORNING, WITH ALL COUNSEL, HAS INFORMED US

11:38AM 22     ALL THAT WE HOPE THINGS DON'T CHANGE, AND THAT THE MATERIAL

11:38AM 23     THAT THE GOVERNMENT SEEKS TO INTRODUCE IN ITS CASE-IN-CHIEF CAN

11:38AM 24     BE ACHIEVED, AND THAT EVIDENCE CAN BE ACHIEVED WITHOUT

11:38AM 25     VIOLATION OF ANY OF THE SPIRIT OF JUDGE COUSINS'S ORDER.

11:38AM 1      AND I THINK MR. CLINE RESPECTS THAT, TOO.  HE'S BEEN

11:38AM 2  WARNED BY YOU NOW, AND MAYBE WARNING IS TOO HARSH A WORD, BUT

11:38AM 3  YOU'VE INFORMED HIM A COUPLE OF TIMES OF WHAT IS IN THE

11:38AM 4  PANDORA'S BOX AND I THINK HE WANTS TO STAY AWAY FROM IT.

11:38AM 5      SO FAIR ENOUGH.  ALL RIGHT.

11:38AM 6          MR. BOSTIC:  YOUR HONOR, JUST TO MAKE CERTAIN THAT I

11:38AM 7  UNDERSTAND WHERE THE LINE IS THERE, AND MR. CLINE AND I MAY

11:39AM 8  DISAGREE.

11:39AM 9      BUT, FOR EXAMPLE, IF THE GOVERNMENT ASKS A QUESTION, YOU

11:39AM 10 KNOW, MS. HOLMES TOLD YOU X ON THIS DATE, I'LL DIRECT YOUR

11:39AM 11 ATTENTION TO THIS LINE IN THE ARTICLE, IS THAT CONSISTENT WITH

11:39AM 12 WHAT MS. HOLMES TOLD YOU ON THAT DATE AND AT OTHER TIMES DURING

11:39AM 13 THE CONVERSATION?

11:39AM 14     MY POSITION WOULD BE THAT THAT'S IN LINE WITH THE COURT'S

11:39AM 15 GUIDANCE TODAY.

11:39AM 16     I ALSO WOULD NOT THINK THAT THAT WOULD OPEN THE DOOR TO

11:39AM 17 TESTIMONY OR ADDITIONAL DISCOVERY ABOUT THIRD PARTY STATEMENTS,

11:39AM 18 BUT I JUST WANT TO MAKE SURE THAT I'M UNDERSTANDING.

11:39AM 19          THE COURT:  CONCEPTUALLY, I DON'T HAVE A PROBLEM

11:39AM 20 WITH THAT PHRASING AND THAT QUESTION.  I THINK THAT'S ENTIRELY

11:39AM 21 APPROPRIATE.

11:39AM 22          MR. CLINE:  PHRASED EXACTLY THAT WAY, IT MAY AVOID

11:39AM 23 THE PROBLEMS THAT WE'RE TALKING ABOUT, BUT I'M JUST TELLING

11:39AM 24 MOSTLY MR. BOSTIC TO REALLY BE CAREFUL BECAUSE IT DOESN'T TAKE

11:39AM 25 MUCH OF A TWEAK TO THAT QUESTION AND WE'RE RIGHT INTO THE

5670

11:39AM 1    PROBLEM THAT WE'RE ALL TRYING TO AVOID.

11:40AM 2              THE COURT:  AND I THINK -- I APPRECIATE THAT,

11:40AM 3    MR. CLINE.  AND I THINK YOU WANT TO AVOID TWEAKS.  AND YOU'RE

11:40AM 4    IN CONTROL OF THE TWEAKING, AND SO THE QUESTIONS THAT YOU ASK,

11:40AM 5    I KNOW WE TALKED ABOUT THIS LAST WEEK, YOU DON'T WANT TO

11:40AM 6    INTENTIONALLY GO SOMEWHERE AND OPEN A DOOR.

11:40AM 7              MR. CLINE:  YOU WILL FIND ME ON CROSS CAREFULLY

11:40AM 8    TIPTOEING.

11:40AM 9              THE COURT:  ALL RIGHT.  GOOD.  THANKS.  GOOD SEEING

11:40AM 10   YOU.

11:40AM 11       AND TOMORROW WE'RE GETTING TOGETHER AT 8:00 O'CLOCK

11:40AM 12   TOMORROW, ARE WE?

11:40AM 13             MR. DOWNEY:  YES, YOUR HONOR.

11:40AM 14             THE COURT:  ALL RIGHT.  THANK YOU.

11:40AM 15             MR. KORZENIK:  THANK YOU VERY MUCH, YOUR HONOR.

11:40AM 16             THE COURT:  YOU'RE WELCOME.  THANK YOU.  WE'LL

11:40AM 17   DISENGAGE THE LINE NOW.

11:40AM 18             MR. KORZENIK:  OKAY.

11:40AM 19         (COURT ADJOURNED AT 11:40 A.M.)

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      IRENE RODRIGUEZ, CSR, CRR
      CERTIFICATE NUMBER 8076
17

18    _____

19    LEE-ANNE SHORTRIDGE, CSR, CRR
      CERTIFICATE NUMBER 9595
20

21         DATED:  NOVEMBER 8, 2021

22

23

24

25