1

2                        UNITED STATES DISTRICT COURT

3                       NORTHERN DISTRICT OF CALIFORNIA

4                            SAN JOSE DIVISION

5

        UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                        )
                        PLAINTIFF,       )   SAN JOSE, CALIFORNIA
7                                        )
                   VS.                   )   VOLUME 43
8                                        )
        ELIZABETH A. HOLMES,             )   DECEMBER 8, 2021
9                                        )
                        DEFENDANT.       )   PAGES 8568 - 8660
10      _____  )

11

                        TRANSCRIPT OF TRIAL PROCEEDINGS
12                  BEFORE THE HONORABLE EDWARD J. DAVILA
                       UNITED STATES DISTRICT JUDGE
13
        A P P E A R A N C E S:
14

        FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                             BY:  JOHN C. BOSTIC
                                    JEFFREY B. SCHENK
16                             150 ALMADEN BOULEVARD, SUITE 900
                               SAN JOSE, CALIFORNIA 95113
17
                               BY:  ROBERT S. LEACH
18                                  KELLY VOLKAR
                               1301 CLAY STREET, SUITE 340S
19                             OAKLAND, CALIFORNIA 94612

20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

        OFFICIAL COURT REPORTERS:
22                             IRENE L. RODRIGUEZ, CSR, RMR, CRR
                               CERTIFICATE NUMBER 8074
23                             LEE-ANNE SHORTRIDGE, CSR, CRR
                               CERTIFICATE NUMBER 9595
24
             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                 TRANSCRIPT PRODUCED WITH COMPUTER

```
1        A P P E A R A N C E S: (CONT'D)
2
3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
4                                   LANCE A. WADE
                                    KATHERINE TREFZ
5                                   AMY SAHARIA
                                    SEEMA ROPER
6                                   J.R. FLEURMONT
                                    RICHARD CLEARY
7                                   PATRICK LOOBY
                               725 TWELFTH STREET, N.W.
8                              WASHINGTON, D.C. 20005

9                              LAW OFFICE OF JOHN D. CLINE
                               BY:  JOHN D. CLINE
10                             ONE EMBARCADERO CENTER, SUITE 500
                               SAN FRANCISCO, CALIFORNIA 94111
11
12    ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
                               BY:  ADELAIDA HERNANDEZ
13
                               OFFICE OF THE U.S. ATTORNEY
14                             BY:  LAKISHA HOLLIMAN, PARALEGAL
                                    MADDI WACHS, PARALEGAL
15
                               WILLIAMS & CONNOLLY
16                             BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

17                             TBC
                               BY:  BRIAN BENNETT, TECHNICIAN
18
19
20
21
22
23
24
25
```

1                              INDEX OF PROCEEDINGS

2

        DEFENDANT'S:

3

4       **ELIZABETH HOLMES**
        REDIRECT EXAM BY MR. DOWNEY (RES.)          P. 8573
5       RECROSS-EXAM BY MR. LEACH                   P. 8615

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          INDEX OF EXHIBITS

2                                      IDENT.      EVIDENCE

3        GOVERNMENT'S:

4

5

6

7        DEFENDANT'S:

8        7476                                      8580
         14259                                     8581
9        7586A, PAGE 1, LIMITED PURPOSE            8641
         13288A, LIMITED PURPOSE                   8641
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        SAN JOSE, CALIFORNIA                    DECEMBER 8, 2021

 2                        P R O C E E D I N G S

 3             (COURT CONVENED AT 9:04 A.M.)

 4             (JURY IN AT 9:04 A.M.)

 5                  THE COURT:  WE ARE BACK ON THE RECORD IN THE HOLMES

 6        MATTER.  ALL LADIES AND GENTLEMEN OF THE JURY ARE PRESENT.

 7             ALL COUNSEL ARE PRESENT, AND MS. HOLMES IS PRESENT.

 8             IN JUST A MOMENT I'LL ASK MS. HOLMES TO RESUME THE STAND.

 9             LADIES AND GENTLEMEN, LET ME ASK YOU, DURING THE EVENING,

10        DID ANY OF YOU MEMBERS OF OUR JURY HAVE CAUSE TO COME ACROSS,

11        DISCUSS, LISTEN TO, READ OR SEE ANYTHING HAVING TO DO WITH THIS

12        CASE?  IF SO, PLEASE, RAISE YOUR HAND.

13             THANK YOU.  I SEE NO HANDS.  THANK YOU VERY MUCH.

14             MS. HOLMES, MAY I INVITE YOU BACK TO THE STAND, PLEASE.

15             PLEASE TAKE A SEAT.  MAKE YOURSELF COMFORTABLE AGAIN.

16             I'LL REMIND YOU THAT YOU'RE STILL UNDER OATH.

17                  THE WITNESS:  THANK YOU.

18                  THE COURT:  YOU'RE WELCOME.  IF YOU COULD JUST STATE

19        YOUR NAME, PLEASE.

20                  THE WITNESS:  MY NAME IS ELIZABETH HOLMES.

21             (DEFENDANT'S WITNESS, ELIZABETH HOLMES, WAS PREVIOUSLY

22        SWORN.)

23                  THE COURT:  MR. DOWNEY, WOULD YOU LIKE TO CONTINUE?

24                  MR. DOWNEY:  YES, YOUR HONOR.  THANK YOU.

25        ///
```

### REDIRECT EXAMINATION (RESUMED)

BY MR. DOWNEY:

Q.   GOOD MORNING, MS. HOLMES.

A.   GOOD MORNING.

        MR. DOWNEY:  YOUR HONOR, BEFORE I BEGIN, I'D LIKE TO

TAKE CARE OF A HOUSEKEEPING MATTER RELATED TO MS. HOLMES'S

EXAMINATION.

     YOUR HONOR WILL RECALL THAT I MOVED TO ADMIT

EXHIBIT 13288, WHICH WAS THE FDA SUBMISSION IN CONNECTION WITH

THE THERANOS 4.0 SYSTEM AND THE ASSAY, AND THAT WAS QUITE A

LENGTHY DOCUMENT.  YOUR HONOR ASKED ME TO REDUCE IT TO ITS

ESSENTIAL PARTS, WHICH I'VE DONE AND I'VE SHOWN TO MR. LEACH.

     I WILL MOVE TO ADMIT IT AS EXHIBIT 13288A AND SUGGEST,

WITH THE GOVERNMENT'S CONSENT, REQUEST THE COURT STRIKE ANY

PRIOR VERSION OF 13288 OR 13288A.

        THE COURT:  MR. LEACH?

        MR. LEACH:  YOUR HONOR, I RECEIVED THIS ABOUT

20 MINUTES AGO.  I DON'T OBJECT TO IT COMING IN FOR A

NONHEARSAY PURPOSE, AND I WOULD JUST LIKE THE OPPORTUNITY TO

REVIEW IT IN DUE COURSE TO SEE IF THERE ARE ADDITIONS FROM THE

GOVERNMENT'S PERSPECTIVE.

     BUT SUBJECT TO THE PRIOR LIMITATIONS, I HAVE NO OBJECTION.

        MR. DOWNEY:  THAT'S FINE OF COURSE, YOUR HONOR.

        THE COURT:  ARE YOU GOING TO REFER TO THIS?

        MR. DOWNEY:  NO.

09:07AM  1        I JUST WANTED TO --

09:07AM  2              THE COURT:  THANK YOU FOR THAT.  WE'LL TAKE IT UNDER

09:07AM  3    SUBMISSION FOR ADMISSION.

09:07AM  4        MR. LEACH, I'LL GIVE YOUR TEAM AN OPPORTUNITY TO REVIEW

09:07AM  5    IT, EXCUSE ME, AND FORMALLY INTRODUCE IT.

09:07AM  6        THAT IS BEFORE YOUR CASE ENDS, WE'LL TAKE CARE OF THAT.

09:07AM  7              MR. LEACH:  THANK YOU, YOUR HONOR.

09:07AM  8              THE COURT:  ALSO, LET ME DRAW ATTENTION, SINCE WE'RE

09:07AM  9    DOING HOUSEKEEPING HERE, EXHIBIT 14259 WAS A DOCUMENT THAT WAS

09:07AM 10    AN EXHIBIT THAT WAS GOING TO BE INTRODUCED, I THINK.  WE HAD

09:07AM 11    SOME DISCUSSION ABOUT THAT.  THE COURT MADE A RULING ON IT

09:07AM 12    OUTSIDE OF THE PRESENCE OF THE JURY.

09:07AM 13        ARE YOU SEEKING ADMISSION OF THAT?

09:07AM 14              MR. DOWNEY:  WE ARE, YOUR HONOR.  AND I WAS GOING TO

09:07AM 15    HAVE -- JUST DO A BRIEF MOTION TO MOVE THE ADMISSION OF THAT IN

09:07AM 16    A FEW MOMENTS.

09:07AM 17              THE COURT:  ALL RIGHT.  THAT'S FINE.  I JUST WANTED

09:07AM 18    TO REMIND THE PARTIES OF THAT.

09:07AM 19    BY MR. DOWNEY:

09:07AM 20    Q.  MS. HOLMES, DO YOU RECALL THAT ON YOUR CROSS-EXAMINATION,

09:07AM 21    MR. LEACH WAS ASKING YOU ABOUT THE STATE OF THERANOS'S

09:08AM 22    RELATIONSHIP WITH WALGREENS IN 2014 AND 2015?

09:08AM 23    A.  I DO.

09:08AM 24    Q.  AND DO YOU RECALL THAT HE SHOWED YOU AN EMAIL THAT

09:08AM 25    MR. JHAVERI SENT TO MR. BALWANI IN AUGUST OF 2014 THAT

09:08AM   1      IDENTIFIED PATIENT SUCCESS AND SATISFACTION AS ONE OF THE

09:08AM   2      CRITERIA FOR THE PARTNERSHIP GOING FORWARD?

09:08AM   3      A.   I DO.

09:08AM   4      Q.   NOW, I THINK YOU TESTIFIED ON YOUR DIRECT EXAMINATION THAT

09:08AM   5      YOU RECEIVED FEEDBACK ABOUT THERANOS'S PERFORMANCE AT WALGREENS

09:08AM   6      PERIODICALLY.

09:08AM   7      A.   YES.

09:08AM   8      Q.   LET ME ASK YOU TO LOOK AT AN EXHIBIT, WHICH IS 7586A.

09:08AM   9           YOUR HONOR, MAY I APPROACH THE WITNESS?

09:08AM   10               THE COURT:  YES.

09:09AM   11     BY MR. DOWNEY:

09:09AM   12     Q.   (HANDING.)

09:09AM   13     A.   THANK YOU.

09:09AM   14     Q.   AND DO YOU SEE THAT 7586A IS AN EMAIL FROM SOMEONE NAMED

09:09AM   15     RYAN KARPEL TO YOU FROM AUGUST OF 2015, AND IT ATTACHES -- HAS

09:09AM   16     AN ATTACHMENT TO IT?

09:09AM   17     A.   I DO.

09:09AM   18     Q.   AND IS THIS SOMETHING THAT YOU RECEIVED IN OR AROUND

09:09AM   19     AUGUST OF 2015?

09:09AM   20     A.   YES.

09:09AM   21     Q.   IS IT SOMETHING THAT YOU REVIEWED AT THAT TIME?

09:09AM   22     A.   IT IS.

09:09AM   23     Q.   AND DOES THIS ATTACHMENT CONTAIN -- IS THIS A REDACTED

09:09AM   24     VERSION OF FEEDBACK FROM PATIENTS ABOUT THEIR EXPERIENCES AT

09:10AM   25     WALGREENS?

| | | |
|---|---|---|
| 09:10AM | 1 | A.   YES. |
| 09:10AM | 2 | MR. DOWNEY:  YOUR HONOR, I MOVE THE ADMISSION OF |
| 09:10AM | 3 | 7586A. |
| 09:10AM | 4 | MR. LEACH:  YOUR HONOR, 401, 403, AND I BELIEVE THIS |
| 09:10AM | 5 | WAS PART OF AN EARLIER DISCUSSION. |
| 09:11AM | 6 | (PAUSE IN PROCEEDINGS.) |
| 09:11AM | 7 | THE COURT:  MR. DOWNEY, I'M GOING TO NEED SOME |
| 09:11AM | 8 | CONVERSATION WITH YOU ABOUT THIS BEFORE I ADMIT IT. |
| 09:11AM | 9 | IS IT POSSIBLE FOR YOU TO MOVE TO ANOTHER TOPIC? |
| 09:11AM | 10 | MR. DOWNEY:  IT CERTAINLY IS, YOUR HONOR.  AND WE |
| 09:11AM | 11 | CAN DO THAT AT A BREAK. |
| 09:12AM | 12 | THE COURT:  THANK YOU. |
| 09:12AM | 13 | BY MR. DOWNEY: |
| 09:12AM | 14 | Q.   LET ME ASK YOU, THE DOCUMENT THAT IS 7586A IS SOMETHING |
| 09:12AM | 15 | THAT INFORMED YOUR VIEWS ABOUT CURRENT AND FUTURE PROSPECTS |
| 09:12AM | 16 | ABOUT A ROLLOUT OF THERANOS SERVICE CENTERS AT WALGREENS |
| 09:12AM | 17 | STORES? |
| 09:12AM | 18 | A.   IT DID. |
| 09:12AM | 19 | Q.   NOW, THE TIME PERIOD THAT YOU WERE DISCUSSING WITH |
| 09:12AM | 20 | MR. LEACH ON YOUR CROSS-EXAMINATION RELATED TO HOW THE |
| 09:12AM | 21 | PARTNERSHIP WITH WALGREENS WAS GOING WAS THE FALL OF 2014. |
| 09:12AM | 22 | DO YOU RECALL THAT? |
| 09:12AM | 23 | A.   I DO. |
| 09:12AM | 24 | Q.   I'D LIKE TO ASK YOU TO LOOK AT ANOTHER EXHIBIT FROM THAT |
| 09:12AM | 25 | TIME PERIOD. |

09:12AM   1        YOUR HONOR, MAY I APPROACH THE WITNESS AGAIN?

09:12AM   2              THE COURT:  YES.

09:12AM   3   BY MR. DOWNEY:

09:12AM   4   Q.   (HANDING.)

09:12AM   5   A.   THANK YOU.

09:12AM   6   Q.   AND DO YOU SEE WHEN YOU LOOK AT THE ADDRESS ON THE FIRST

09:13AM   7   PAGE OF THIS DOCUMENT THAT IT'S AN EMAIL FROM JEFFREY BLICKMAN?

09:13AM   8   A.   YES.

09:13AM   9   Q.   AND THAT YOU AND SEVERAL OTHERS AT THERANOS ARE RECIPIENTS

09:13AM   10  OF THE EMAIL?

09:13AM   11  A.   I DO.

09:13AM   12  Q.   AND CAN -- DO YOU RECOGNIZE THIS DOCUMENT?

09:13AM   13  A.   I DO.

09:13AM   14  Q.   AND WHAT IS THE DOCUMENT?

09:13AM   15  A.   IT'S A POWERPOINT PRESENTATION THAT WAS SENT TO US SHOWING

09:14AM   16  THE FEEDBACK FROM PEOPLE IN THE STORES, POSITIVE AND NEGATIVE,

09:14AM   17  THAT WAS BEING COLLECTED.

09:14AM   18  Q.   AND WHO PREPARED AND SENT THIS DOCUMENT TO YOU?

09:14AM   19  A.   I BELIEVE IT'S ORIGINALLY PREPARED BY THE PROJECT MANAGERS

09:14AM   20  WHO WERE INTERFACING WITH PEOPLE IN ARIZONA, AND THEN

09:14AM   21  JEFF BLICKMAN, WHO IS ANOTHER ONE OF THE PROJECT MANAGEMENT

09:14AM   22  TEAM, SENT IT TO ME.

09:14AM   23              MR. DOWNEY:  OKAY.

09:14AM   24        YOUR HONOR, I MOVE THE ADMISSION OF 7476.

09:14AM   25              MR. LEACH:  SAME OBJECTIONS, 401, 403, AND I THINK

09:14AM   1    THIS IS THE SAME WITH THE PRIOR EXHIBIT.

09:15AM   2         (PAUSE IN PROCEEDINGS.)

09:15AM   3              THE COURT:  MR. DOWNEY, I THINK THE DEFENSE HAD AN

09:15AM   4    EXHIBIT PREVIOUSLY THAT WAS SIMILAR TO THIS.

09:15AM   5              MR. DOWNEY:  THERE WERE SOME EXHIBITS INTRODUCED

09:15AM   6    THROUGH MR. JHAVERI WHO WAS PRIVY TO THE SAME TYPES OF

09:15AM   7    COMMUNICATIONS.

09:15AM   8         I DON'T THINK THE EMAIL THAT IS ON THE FIRST PAGE OF THE

09:15AM   9    EXHIBIT REFLECTING THE TRANSMISSION IS PART OF THE RECORD.

09:15AM  10              THE COURT:  RIGHT.  I'M TRYING TO -- I JUST DON'T

09:15AM  11    HAVE IT AT MY FINGERTIPS NOW.

09:15AM  12         MAYBE, MR. LEACH, YOU RECALL WHETHER OR NOT THERE WERE

09:15AM  13    SIMILAR DOCUMENTS THAT WERE INTRODUCED AT SOME OTHER TIME.

09:15AM  14         MR. DOWNEY, DO YOU KNOW?

09:15AM  15              MR. DOWNEY:  I THINK MR. JHAVERI'S TESTIMONY IS WHEN

09:15AM  16    SOME SIMILAR DOCUMENTS WITH THE, WITH THE FEEDBACK, FOR

09:15AM  17    EXAMPLE, THERE'S SOME GRAPHIC IMAGES.

09:15AM  18              THE COURT:  RIGHT.

09:15AM  19              MR. DOWNEY:  I THINK THAT WAS DURING HIS TESTIMONY

09:15AM  20    BACK SEVERAL MONTHS AGO.

09:15AM  21              THE COURT:  MR. LEACH, DO YOU HAVE RECOLLECTION OF

09:15AM  22    THIS?

09:15AM  23              MR. LEACH:  I DON'T, YOUR HONOR.  I APOLOGIZE.

09:16AM  24              THE COURT:  OKAY.  AND THESE WOULD BE INTRODUCED FOR

09:16AM  25    WHAT PURPOSE?

09:16AM  1    MR. DOWNEY:  THIS IS FOR HER UNDERSTANDING OF THE

09:16AM  2  STATE OF THE THERANOS/WALGREENS PARTNERSHIP AT THE TIME THAT --

09:16AM  3  OTHER DOCUMENTS WERE INTRODUCED YESTERDAY ON THE SAME ISSUE BY

09:16AM  4  MR. LEACH.

09:16AM  5    THE COURT:  SO THIS IS NOT INTRODUCED FOR THE TRUTH

09:16AM  6  OF THE MATTERS ASSERTED HERE, BUT YOU'RE SUGGESTING THAT THIS

09:16AM  7  IS -- THE RELEVANCE OF THIS IS TO SHOW WHETHER OR NOT THIS

09:16AM  8  INFORMED MS. HOLMES AS TO HER KNOWLEDGE OF THE WALGREENS

09:16AM  9  ENDEAVOR AT THIS PARTICULAR MOMENT IN TIME?

09:16AM  10    MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.  AND I DON'T

09:16AM  11  HAVE THE EXHIBIT AT MY FINGERTIPS, BUT I ACTUALLY THINK THAT

09:16AM  12  THE ATTACHMENTS, AT LEAST A SUBSTANTIAL PART OF THEM, WAS, AS

09:17AM  13  YOUR HONOR SAYS, ALREADY INTRODUCED, AND I'LL GET THE EXHIBIT

09:17AM  14  NUMBER AT A BREAK.

09:17AM  15    REALLY THE POINT OF THIS IS JUST TO REFLECT THAT IT WAS

09:17AM  16  COMMUNICATED TO MS. HOLMES.

09:17AM  17    THE COURT:  ALL RIGHT.  THANK YOU.

09:17AM  18    I'LL ADMIT IT FOR THAT LIMITED PURPOSE.

09:17AM  19    LADIES AND GENTLEMEN, THE DOCUMENTS THAT YOU'RE ABOUT TO

09:17AM  20  SEE, AND THEY CONSIST OF CHARTS AND GRAPHS AND THINGS, THEY'RE

09:17AM  21  ADMITTED NOT FOR THE TRUTH OF THE MATTER ASSERTED IN THE

09:17AM  22  DOCUMENTS BUT THEIR RELEVANCE, AND THEY'RE ADMITTED ONLY AS TO

09:17AM  23  THE ISSUE OF MS. HOLMES'S KNOWLEDGE, STATE OF MIND AS TO THE

09:17AM  24  MERGER, THE WALGREENS ENGAGEMENT AT THIS PARTICULAR MOMENT IN

09:17AM  25  TIME.

09:17AM  1          AND THEY WILL BE ADMITTED FOR THAT LIMITED PURPOSE.

09:17AM  2          THEY CAN BE PUBLISHED.

09:17AM  3          (DEFENDANT'S EXHIBIT 7476, LIMITED PURPOSE, WAS RECEIVED

09:17AM  4     IN EVIDENCE.)

09:17AM  5               MR. DOWNEY:  IF WE CAN DISPLAY THE EMAIL ON THE

09:17AM  6     COVER.

09:18AM  7     Q.   AND IF YOU LOOK, DO YOU SEE THAT THIS IS AN EMAIL THAT

09:18AM  8     MR. BLICKMAN SENT TO YOU IN OCTOBER OF 2014?

09:18AM  9     A.   YES.

09:18AM 10     Q.   AND DO YOU SEE IN THE FIRST PARAGRAPH HE INDICATES THAT

09:18AM 11     HE'S ATTACHING EXPERIENCE SURVEY RESULTS FOR ESSENTIALLY THE

09:18AM 12     MONTH OF SEPTEMBER?

09:18AM 13     A.   I DO.

09:18AM 14     Q.   AND THEN IF YOU GO TO THE ATTACHMENTS ON PAGE 2, DO YOU

09:18AM 15     SEE THAT THERE'S AN EXPERIENCE SURVEY SUMMARY?

09:18AM 16     A.   YES.

09:18AM 17     Q.   AND IN YOUR UNDERSTANDING, DID THIS RESULT FROM PATIENTS

09:18AM 18     GRADING THEIR EXPERIENCE ON A SCALE OF 1 TO 5 FOR VARIOUS

09:18AM 19     FACTORS?

09:18AM 20     A.   IT DID.

09:18AM 21     Q.   AND DID YOU UNDERSTAND THAT, AS OF OCTOBER 2014, THAT THIS

09:18AM 22     WAS THE LEVEL OF PATIENT SATISFACTION FOR PATIENTS WHO HAD

09:18AM 23     VISITED DURING THE MONTH OF SEPTEMBER?

09:19AM 24     A.   I DID.

09:19AM 25     Q.   OKAY.  YOU CAN TAKE THAT DOWN, MR. BENNETT.

09:19AM   1        DO YOU RECALL EARLIER IN THE TRIAL THAT MS. TOMPKINS

09:19AM   2   TESTIFIED, WHO WAS A PATIENT WHO GOT AN HIV TEST AT A THERANOS

09:19AM   3   SERVICE CENTER?

09:19AM   4   A.   I DO.

09:19AM   5   Q.   AND DO YOU KNOW WHETHER THE HIV TEST AT THERANOS WAS

09:19AM   6   OFFERED ON THERANOS PROPRIETARY EQUIPMENT OR ON A COMMERCIAL

09:19AM   7   MACHINE?

09:19AM   8   A.   IT WAS ON A COMMERCIAL MACHINE.

09:19AM   9   Q.   I'D LIKE TO DISPLAY EXHIBIT --

09:19AM  10        I'D LIKE TO MOVE EXHIBIT 14259 INTO EVIDENCE, WHICH IS THE

09:19AM  11   EXHIBIT THAT YOUR HONOR MENTIONED EARLIER THIS MORNING.

09:19AM  12             THE COURT:   THAT WILL BE ADMITTED.

09:19AM  13        (DEFENDANT'S EXHIBIT 14259 WAS RECEIVED IN EVIDENCE.)

09:19AM  14             MR. LEACH:   YOUR HONOR, I DON'T OBJECT TO ADMISSION

09:19AM  15   OF THE DOCUMENT.

09:19AM  16        I DO THINK THAT THIS IS BEYOND THE SCOPE OF THE DIRECT --

09:19AM  17   OF THE CROSS.

09:19AM  18             MR. DOWNEY:   WELL, THAT'S FINE.  I WON'T DISPLAY IT.

09:20AM  19   WE CAN DISCUSS IT LATER.

09:20AM  20             THE COURT:   THAT'S FINE.

09:20AM  21   BY MR. DOWNEY:

09:20AM  22   Q.   NOW, DO YOU RECALL THAT DURING THE CROSS-EXAMINATION THAT

09:20AM  23   YOU -- WHERE YOU AND MR. LEACH HAD A DISCUSSION ABOUT SOME TEXT

09:20AM  24   MESSAGES RELATED TO THE WALGREENS/THERANOS RELATIONSHIP FROM

09:20AM  25   NOVEMBER OF 2014?

09:20AM   1      A.   I DO.

09:20AM   2      Q.   AND DO YOU REMEMBER THAT ONE OF THOSE TEXT MESSAGES FROM

09:20AM   3      MR. BALWANI SAID TO YOU, "WE CAN'T SCALE WITH WAG"?

09:20AM   4           DO YOU RECALL THAT?

09:20AM   5      A.   I DO.

09:20AM   6      Q.   AND WAG WAS A REFERENCE THERE TO WALGREENS?

09:20AM   7      A.   YES.

09:20AM   8      Q.   NOW, DURING THE SAME PERIOD THAT YOU RECEIVED THAT TEXT

09:20AM   9      FROM MR. BALWANI, WERE YOU ALSO IN CONTACT WITH SENIOR

09:20AM   10     EXECUTIVES FROM WALGREENS?

09:20AM   11     A.   YES.

09:20AM   12     Q.   AND WAS ONE OF THOSE INDIVIDUALS ALEX GOURLAY?

09:21AM   13     A.   YES.

09:21AM   14     Q.   AND WAS HE AN ULTIMATE DECISION-MAKER WITH REGARD TO THE

09:21AM   15     THERANOS/WALGREENS PARTNERSHIP?

09:21AM   16     A.   HE WAS.

09:21AM   17     Q.   AFTER THE DATE OF MR. BALWANI'S TEXT TO YOU ON

09:21AM   18     NOVEMBER 19TH, 2014, DID YOU MEET WITH MR. GOURLAY TO DISCUSS

09:21AM   19     THE STATE OF THE THERANOS/WALGREENS PARTNERSHIP?

09:21AM   20     A.   I DID.

09:21AM   21     Q.   WHEN DID YOU HAVE THAT MEETING?

09:21AM   22     A.   IN DECEMBER 2014.

09:21AM   23     Q.   AND CAN YOU DESCRIBE WHAT HAPPENED AT THAT MEETING?

09:21AM   24     A.   YES.  WE DISCUSSED MOVING FORWARD WITH A RENT MODEL IN

09:21AM   25     WHICH THERANOS WOULD TAKE OWNERSHIP OF THE SPACES IN THE STORE

09:21AM  1    SO THAT THEY COULD BE DESIGNED AND CUSTOMIZED FOR THE

09:21AM  2    EXPERIENCE THAT WE WERE TRYING TO BUILD AND PROCEED WITH A

09:21AM  3    NATIONAL ROLLOUT.

09:21AM  4    Q.   WAS WALGREENS AMENABLE TO THAT PROPOSAL?

09:21AM  5    A.   YES.

09:21AM  6    Q.   YOU WERE ALSO ASKED IN THE SAME SEQUENCE OF QUESTIONS BY

09:22AM  7    MR. LEACH ABOUT INTERACTIONS THAT MR. BALWANI WAS HAVING WITH

09:22AM  8    CVS.

09:22AM  9         DO YOU RECALL THAT?

09:22AM  10   A.   I DO.

09:22AM  11   Q.   AND YOU TESTIFIED THAT THAT WAS HAPPENING DURING THE

09:22AM  12   COURSE OF YOUR PARTNERSHIP WITH WALGREENS TO ROLL OUT THERANOS

09:22AM  13   SERVICE CENTERS IN WALGREENS.

09:22AM  14        DO YOU RECALL THAT?

09:22AM  15   A.   YES.

09:22AM  16   Q.   WAS YOUR -- WERE THE DISCUSSIONS THAT THERANOS WAS HAVING

09:22AM  17   WITH CVS INCONSISTENT WITH ANY OBLIGATIONS THAT THERANOS HAD TO

09:22AM  18   WALGREENS?

09:22AM  19   A.   NO.

09:22AM  20   Q.   WHY WERE YOU HAVING DISCUSSIONS WITH CVS AT THE SAME TIME

09:22AM  21   THAT YOU WERE IN PARTNERSHIP WITH WALGREENS?

09:22AM  22   A.   THAT PARTICULAR DISCUSSION, I THINK, HAD TO DO WITH THE

09:22AM  23   DEPLOYMENT FOR BLUE CROSS BLUE SHIELD INSURANCE CONTRACT THAT

09:22AM  24   WE HAD IN PENNSYLVANIA, AND WALGREENS DID NOT WANT TO OPEN

09:22AM  25   STORES IN THAT GEOGRAPHY, SO WE WERE PROCEEDING WITH CVS

09:23AM 1     ACCORDING TO THE TERMS OF OUR CONTRACT WITH WALGREENS.

09:23AM 2     Q.   AND DID YOU DISCLOSE THAT TO WALGREENS?

09:23AM 3     A.   YES.

09:23AM 4     Q.   I WANT TO TURN FROM TALKING ABOUT WALGREENS TO TALKING

09:23AM 5     ABOUT THE PROCESS OF DEVELOPING THE 4.0 SERIES DEVICE AT

09:23AM 6     THERANOS AND THE QUESTIONS THAT MR. LEACH ASKED YOU ABOUT THAT.

09:23AM 7          DO YOU RECALL THAT MR. LEACH SHOWED YOU THE DOCUMENT THAT

09:23AM 8     I HAD SHOWED YOU ON DIRECT EXAMINATION, WHICH WAS A

09:23AM 9     PRESENTATION THAT DR. GIBBONS GAVE IN FEBRUARY OF 2010?

09:23AM 10    A.   I DO.

09:23AM 11    Q.   AND DO YOU RECALL THAT MR. LEACH ASKED YOU, WAS THAT THE

09:23AM 12    MONTH PRIOR TO THE TIME THAT YOU HAD MET WITH WALGREENS AND

09:23AM 13    SAFEWAY, AND YOU ANSWERED THAT IT WAS?

09:23AM 14    A.   YES.

09:23AM 15    Q.   WAS THE PRESENTATION THAT YOU RECEIVED FROM DR. GIBBONS

09:23AM 16    THE FIRST TIME THAT THERE WAS A DISCUSSION INSIDE OF THERANOS

09:23AM 17    ABOUT EXPANDING THE CAPABILITIES OF THERANOS SYSTEMS?

09:23AM 18    A.   NO.

09:23AM 19    Q.   WAS THERE A PROCESS THAT WAS ONGOING AS OF FEBRUARY 2010?

09:24AM 20    A.   THERE WAS.

09:24AM 21    Q.   HOW LONG HAD THAT PROCESS BEEN ONGOING AT THERANOS AT THAT

09:24AM 22    TIME?

09:24AM 23    A.   SINCE 2008.

09:24AM 24    Q.   NOW, MR. LEACH MENTIONED THE CONVERSATIONS THAT YOU HAD IN

09:24AM 25    CLOSE PROXIMITY TO THE POWERPOINT PRESENTATION BY DR. GIBBONS.

09:24AM 1     I'D LIKE TO ASK YOU WHETHER YOU TALKED TO SCIENTISTS AND

09:24AM 2   ENGINEERS AT WALGREENS BEFORE YOU MET WITH THOSE ENTITIES TO

09:24AM 3   UNDERSTAND WHAT COULD AND COULD NOT BE REPRESENTED.

09:24AM 4     DID YOU DO THAT?

09:24AM 5   A.   SCIENTISTS AND ENGINEERS AT THERANOS?

09:24AM 6   Q.   YES.

09:24AM 7   A.   I DID.

09:24AM 8   Q.   I'D LIKE TO BRING UP EXHIBIT 7100, WHICH IS ALREADY IN

09:24AM 9   EVIDENCE.

09:24AM 10     AND I DIRECT YOUR ATTENTION TO THE BOTTOM EMAIL, WHICH IS

09:25AM 11   AN EMAIL FROM YOU TO DR. GIBBONS AND MR. BALWANI AND

09:25AM 12   MR. FRENZEL WAS COPIED.

09:25AM 13     DR. GIBBONS AND MR. FRENZEL WERE TWO OF THE PEOPLE WORKING

09:25AM 14   ON THE 4.0 SYSTEM?

09:25AM 15   A.   YES.

09:25AM 16   Q.   AND IN THE FIRST PARAGRAPH YOU SAY, "HERE'S THE GENERAL

09:25AM 17   CHEMISTRY PANEL WE WANT TO HAVE," AND THEN YOU LIST A SERIES OF

09:25AM 18   TESTS.

09:25AM 19     DO YOU RECALL SENDING THAT TO DR. GIBBONS AND MR. FRENZEL?

09:25AM 20   A.   I DO.

09:25AM 21   Q.   AND WHAT WAS YOUR PURPOSE IN SENDING THESE EMAILS TO THEM?

09:25AM 22   A.   THESE WERE TESTS WE WANTED TO DISCUSS WITH OUR RETAIL

09:25AM 23   PARTNERS, AND I WANTED TO MAKE SURE BEFORE SAYING WE COULD DO

09:25AM 24   THEM THAT OUR SCIENTISTS AND ENGINEERS BELIEVED WE COULD ON THE

09:25AM 25   TIMEFRAME THAT WE WERE DISCUSSING WITH THE RETAIL PARTNERS.

09:25AM   1    Q.   AND LET'S LOOK AT THE RESPONSE TO THAT ABOVE.

09:25AM   2         AND DO YOU SEE THAT DR. GIBBONS RESPONDED TO YOU IN THIS

09:25AM   3    EMAIL FROM FEBRUARY OF 2010?

09:26AM   4    A.   I DO.

09:26AM   5    Q.   AND DO YOU SEE THE FIRST PARAGRAPH WHERE HE RESPONDED,

09:26AM   6    "THE ATTACHED PRESENTS MY ANALYSIS OF HOW THE ANALYTES YOU

09:26AM   7    LISTED WOULD BE MEASURED IN SYSTEM 4.0.  ESSENTIALLY ALL ARE

09:26AM   8    POSSIBLE IN THE PROPOSED SYSTEM."

09:26AM   9         DO YOU SEE THAT?

09:26AM   10   A.   YES.

09:26AM   11   Q.   AND DID THAT INFORM REPRESENTATIONS THAT YOU SUBSEQUENTLY

09:26AM   12   MADE TO WALGREENS AND SAFEWAY ABOUT THE CAPABILITIES THAT

09:26AM   13   THERANOS WOULD BE ABLE TO DEVELOP?

09:26AM   14   A.   YES.

09:26AM   15   Q.   LET ME ALSO ASK YOU TO LOOK AT EXHIBIT 15004, WHICH IS

09:26AM   16   ALREADY IN EVIDENCE.

09:26AM   17        AND I WANT TO DIRECT YOUR ATTENTION TO THE EMAIL IN THE

09:26AM   18   MIDDLE OF THE PAGE.

09:26AM   19        DO YOU SEE THAT THIS IS AN EMAIL, AND IF YOU LOOK AT THE

09:26AM   20   TOP OF THE PAGE, ON THIS EXCHANGE ARE YOURSELF AND THEN

09:26AM   21   DR. YOUNG, AND MR. FRENZEL, AND DR. GIBBONS, AND OTHERS?

09:27AM   22   A.   YES.

09:27AM   23   Q.   OKAY.  LET'S RETURN TO THE MIDDLE.

09:27AM   24        AND THEN DO YOU SEE THAT YOU'VE LANDED AND YOU DIRECT A

09:27AM   25   QUESTION TO THAT GROUP AND SAY, "I WILL WANT TO HIGHLIGHT AND

09:27AM 1      QUANTIFY NUMERICALLY AS POSSIBLE."

09:27AM 2           AND YOU ASK A SERIES OF QUESTIONS.

09:27AM 3           DO YOU SEE THAT?

09:27AM 4      A.   I DO.

09:27AM 5      Q.   AND DO YOU SEE THE FIRST QUESTION IS, "WHY AND HOW OUR

09:27AM 6      PLATFORM WILL BE CAPABLE OF THE FULL RANGE OF ASSAYS AND BE AT

09:27AM 7      LEAST AS GOOD AS THE CRO."

09:27AM 8           DO YOU SEE THAT?

09:27AM 9      A.   I DO.

09:27AM 10     Q.   AND WHAT IS THE CRO?

09:27AM 11     A.   IT'S THE CONTRACT RESEARCH ORGANIZATION.  IN THIS CASE

09:27AM 12     IT'S THE TRADITIONAL LAB THAT WOULD OTHERWISE BE USED.

09:27AM 13     Q.   OKAY.  AND THEN IF WE LOOK ABOVE THAT EMAIL, DO YOU SEE

09:27AM 14     THAT DR. GIBBONS RESPONDED TO THAT QUESTION?

09:27AM 15     A.   YES.

09:27AM 16     Q.   AND DO YOU THINK -- DO YOU SEE THAT IN THE FIRST SENTENCE

09:27AM 17     HE SAYS, "I THINK WE HAVE DEMONSTRATED CAPABILITIES FULLY

09:27AM 18     EQUIVALENT TO LAB METHODS IN AREAS WHERE WE HAVE DONE ASSAY

09:28AM 19     DEVELOPMENT"?

09:28AM 20     A.   YES.

09:28AM 21     Q.   AND DO YOU SEE THAT HE THEN GOES ON TO COMPARE THE

09:28AM 22     THERANOS 4.0 SYSTEM FAVORABLY TO OTHER LABS AT THAT TIME?

09:28AM 23     A.   YES.

09:28AM 24     Q.   AND DO YOU SEE THE SUBJECT MATTER HERE IS GSK?

09:28AM 25     A.   YES.

09:28AM   1    Q.   AND THAT'S A REFERENCE TO THE PHARMACEUTICAL COMPANY?

09:28AM   2    A.   IT IS.

09:28AM   3    Q.   AND DO YOU RECALL DISCUSSING GSK IN CONNECTION WITH THE

09:28AM   4    LOGO ISSUE YESTERDAY?

09:28AM   5    A.   I DO.

09:28AM   6    Q.   AND WAS THIS A PRESENTATION THAT YOU WERE MAKING TO THEM

09:28AM   7    AT THAT TIME?

09:28AM   8    A.   YES.

09:28AM   9    Q.   YOU CAN PUT THAT ASIDE.

09:28AM  10         I JUST WANT TO MAKE SURE THAT WE PROPERLY DATE SOME OF THE

09:28AM  11    DOCUMENTS THAT YOU WERE ASKED ABOUT YESTERDAY DURING YOUR

09:28AM  12    CROSS-EXAMINATION ABOUT WHEN TESTS WERE OFFERED IN THE LAB.

09:28AM  13         DO YOU RECALL HAVING DISCUSSION WITH MR. LEACH ABOUT THE

09:28AM  14    DATES ON WHICH TESTS REFERRED TO AS ISE'S BEGAN TO BE OFFERED

09:29AM  15    IN THE LAB?

09:29AM  16    A.   I DO.

09:29AM  17    Q.   AND THE ISE'S WERE SODIUM, CALCIUM, AND POTASSIUM?

09:29AM  18    A.   I THINK SO, YES.

09:29AM  19    Q.   AND HE SHOWED YOU A REPORT FROM DR. YOUNG.

09:29AM  20         DO YOU RECALL THAT?

09:29AM  21    A.   I DO.

09:29AM  22    Q.   AND THAT REPORT WAS FROM OCTOBER.

09:29AM  23         DO YOU RECALL THAT?

09:29AM  24    A.   YES.

09:29AM  25    Q.   WERE THOSE ASSAYS ULTIMATELY VALIDATED TO RUN ON THE

09:29AM   1    THERANOS PROPRIETARY ANALYZER?

09:29AM   2    A.   ON ONE OF OUR METHODS, YES.

09:29AM   3    Q.   LET ME SHOW YOU EXHIBIT 9086, WHICH IS ALREADY IN

09:29AM   4    EVIDENCE.

09:29AM   5         AND DO YOU RECOGNIZE THIS AS A VALIDATION REPORT FOR THE

09:29AM   6    CALCIUM ASSAY?

09:29AM   7    A.   I DO.

09:29AM   8    Q.   AND THIS CALCIUM ASSAY WAS TO BE RUN ON THE MODIFIED

09:29AM   9    DEVICE.

09:29AM   10        DO YOU SEE THAT?

09:29AM   11   A.   YES.

09:30AM   12   Q.   AND THEN BELOW DO YOU SEE SIGNATURES BY DR. YOUNG AND

09:30AM   13   DR. ROSENDORFF AT THE BOTTOM?

09:30AM   14   A.   I DO.

09:30AM   15   Q.   AND DO YOU SEE THAT THOSE ARE -- APPEAR TO BE DATED

09:30AM   16   NOVEMBER 7TH, 2013?

09:30AM   17   A.   YES.

09:30AM   18   Q.   SO WOULD THE CALCIUM ASSAY HAVE BEEN OFFERED ON THE

09:30AM   19   SIEMENS ANALYZER AT SOME POINT AFTER THAT DATE?

09:30AM   20   A.   IT WOULD HAVE.

09:30AM   21   Q.   LET ME ASK YOU TO LOOK NEXT AT EXHIBIT 9098.

09:30AM   22        AND DO YOU SEE THIS IS A VALIDATION REPORT FOR CHLORIDE?

09:30AM   23   A.   I DO.

09:30AM   24   Q.   AND DO YOU SEE THAT AT THE BOTTOM IT'S ALSO SIGNED BY

09:30AM   25   DR. YOUNG AND DR. ROSENDORFF?

| | | |
|---|---|---|
| 09:30AM | 1 | A.   YES. |
| 09:30AM | 2 | Q.   AND DO YOU SEE THAT THE LATER SIGNATURE IS DR. YOUNG'S ON |
| 09:30AM | 3 | NOVEMBER 8TH? |
| 09:30AM | 4 | A.   I DO. |
| 09:30AM | 5 | Q.   AND WAS THIS ALSO VALIDATED AT THIS DATE FOR RUNNING ON |
| 09:31AM | 6 | THE MODIFIED SIEMENS MACHINES? |
| 09:31AM | 7 | A.   IT WAS. |
| 09:31AM | 8 | Q.   AND TO YOUR KNOWLEDGE, NO ASSAYS WERE RUN PRIOR TO THE |
| 09:31AM | 9 | TIME THAT THEY WERE VALIDATED BY DR. ROSENDORFF AT THIS TIME; |
| 09:31AM | 10 | IS THAT RIGHT? |
| 09:31AM | 11 | A.   CORRECT. |
| 09:31AM | 12 | Q.   AND NO ASSAYS WERE EVER OFFERED IN THE CLIA LAB THAT |
| 09:31AM | 13 | WEREN'T VALIDATED BY THE LAB DIRECTOR; CORRECT? |
| 09:31AM | 14 | A.   THAT'S RIGHT. |
| 09:31AM | 15 | Q.   AND IN EACH INSTANCE, A REVIEWER OR A RESEARCH AND |
| 09:31AM | 16 | DEVELOPMENT PERSON LIKE DR. YOUNG WOULD ALSO REVIEW AND APPROVE |
| 09:31AM | 17 | THE OFFERING OF THE ASSAY; IS THAT RIGHT? |
| 09:31AM | 18 | A.   YES. |
| 09:31AM | 19 | Q.   LET'S LOOK AT POTASSIUM NEXT AT EXHIBIT 9098.  THIS IS |
| 09:31AM | 20 | ALREADY IN EVIDENCE ALSO.  IF WE COULD DISPLAY THE FIRST PAGE. |
| 09:32AM | 21 | THE COURT:  WHAT IS THE EXHIBIT NUMBER? |
| 09:32AM | 22 | MR. DOWNEY:  9098. |
| 09:32AM | 23 | THE COURT:  THAT'S NOT WHAT WE WERE JUST LOOKING AT? |
| 09:32AM | 24 | MR. DOWNEY:  NO. |
| 09:32AM | 25 | I'M SORRY, YOUR HONOR.  I THINK THAT'S MY MISTAKE.  I |

09:32AM 1    THINK THAT'S WHAT WE WERE JUST LOOKING AT.

09:32AM 2         THE COURT:  I THOUGHT SO, YES.

09:32AM 3         MR. DOWNEY:  ALL RIGHT.

09:32AM 4    Q.   LET ME JUST ASK YOU A FEW QUESTIONS ABOUT MR. PARLOFF.

09:32AM 5    A.   YES.

09:32AM 6    Q.   DO YOU RECALL MR. LEACH ASKING YOU ABOUT THE STATEMENT IN

09:32AM 7    MR. PARLOFF'S ARTICLE THAT THERANOS DID NOT BUY THIRD PARTY

09:32AM 8    ANALYZERS FROM OTHERS?

09:32AM 9    A.   I DO.

09:32AM 10   Q.   DID YOU EVER SAY TO MR. PARLOFF THAT THERANOS NEVER IN ANY

09:32AM 11   CONTEXT BOUGHT THIRD PARTY ANALYZERS?

09:32AM 12   A.   NO.

09:32AM 13   Q.   DID YOU SAY TO HIM THAT THERANOS INTENDED TO SEEK APPROVAL

09:32AM 14   FROM THE FDA FOR ITS 4 SERIES SYSTEM?

09:33AM 15   A.   I DID.

09:33AM 16   Q.   DID YOU TELL HIM THAT ALL OF THE TESTS THAT WOULD BE PART

09:33AM 17   OF THOSE FDA SUBMISSIONS WOULD BE DEVELOPED AND MANUFACTURED BY

09:33AM 18   THERANOS?

09:33AM 19   A.   I DID.

09:33AM 20   Q.   DID YOU TELL HIM THAT THE ANALYZER THAT WOULD BE PART OF

09:33AM 21   THOSE FDA SUBMISSIONS WOULD BE DEVELOPED AND MANUFACTURED BY

09:33AM 22   THERANOS?

09:33AM 23        MR. LEACH:  LEADING, YOUR HONOR.

09:33AM 24        THE COURT:  THEY ARE LEADING IN THE FORM OF THE

09:33AM 25   QUESTION.

HOLMES REDIRECT BY MR. DOWNEY (RES.)

09:33AM  1       I'LL ALLOW YOU TO ANSWER THE QUESTION, MS. HOLMES.  YOU

09:33AM  2   CAN ANSWER THE LAST QUESTION.

09:33AM  3           THE WITNESS:  OKAY.

09:33AM  4       YES, I DID.

09:33AM  5           MR. DOWNEY:  LET ME ASK THE QUESTION DIFFERENTLY.

09:33AM  6   Q.   WHAT DID HE TELL YOU -- WHAT DID YOU TELL HIM AS TO HOW

09:33AM  7   THE ANALYZER WOULD BE -- THAT WAS BEING USED IN CONNECTION WITH

09:33AM  8   FDA SUBMISSIONS WOULD BE DEVELOPED AND MANUFACTURED?

09:33AM  9   A.   I TOLD HIM THAT WE WERE COMPLETELY VERTICALLY INTEGRATED,

09:33AM 10   THAT IT WAS ALL MANUFACTURED IN HOUSE BY THERANOS.

09:33AM 11   Q.   AND THAT WAS -- WAS THAT REFERRING TO THE THERANOS

09:33AM 12   PROPRIETARY ANALYZER?

09:34AM 13   A.   YES.

09:34AM 14   Q.   I'D LIKE YOU ALSO TO LOOK AT THE DOCUMENT THAT MR. LEACH

09:34AM 15   SHOWED YOU THAT WAS EXHIBIT 5727.

09:34AM 16       ON THE FIRST PAGE, DO YOU SEE THAT THIS IS THE EMAIL WHICH

09:34AM 17   THERANOS TRANSMITTED TO INVESTORS IN THERANOS A COPY OF PARLOFF

09:34AM 18   ARTICLE?

09:34AM 19   A.   I THINK SO, YES.

09:34AM 20   Q.   I'D LIKE TO ASK YOU TO LOOK NOW AT THE SECOND PAGE OF THAT

09:34AM 21   EXHIBIT, I BELIEVE.

09:34AM 22       AND UNDER THE -- IN THE TEXT DO YOU SEE THAT THE -- IN THE

09:35AM 23   SECOND PARAGRAPH THAT BEGINS, "WITH THIS EMAIL"?

09:35AM 24   A.   YES.

09:35AM 25   Q.   DO YOU SEE THAT YOU SHARE IN THE FIRST SENTENCE THE

09:35AM  1      "FORTUNE" MAGAZINE STORY?

09:35AM  2      A.   YES.

09:35AM  3      Q.   AND THEN IN THE SECOND SENTENCE IT READS, "FORTUNE DID

09:35AM  4      IN-DEPTH RESEARCH TO UNDERSTAND THE IMPACT OUR WORK WILL HAVE

09:35AM  5      ON THE WORLD."

09:35AM  6           DO YOU SEE THAT?

09:35AM  7      A.   YES.

09:35AM  8      Q.   AND IN THE SECOND PART YOU SAY, "WE SELECTIVELY SHARED

09:35AM  9      MORE OF OUR WORK FOR THIS PIECE."

09:35AM  10          DO YOU SEE THAT?

09:35AM  11     A.   I DO.

09:35AM  12     Q.   AND I'D LIKE TO ASK YOU ABOUT BOTH PIECES OF THAT.

09:35AM  13          WHAT DID YOU UNDERSTAND WAS MEANT BY THE IMPACT THAT

09:35AM  14     THERANOS'S WORK WOULD HAVE ON THE WORLD?

09:35AM  15     A.   HOW OUR SYSTEMS COULD HELP PEOPLE AND THE IMPACT IT WOULD

09:35AM  16     MAKE IN HEALTH CARE.

09:35AM  17     Q.   AND WAS THAT SOMETHING THAT YOU WANTED YOUR INVESTORS TO

09:35AM  18     KNOW ABOUT?

09:35AM  19     A.   VERY MUCH SO.

09:35AM  20     Q.   AND THEN YOU REFERENCE SELECTIVELY SHARING MORE OF

09:36AM  21     THERANOS'S WORK FOR THE PIECE.

09:36AM  22          DO YOU SEE THAT?

09:36AM  23     A.   YES.

09:36AM  24     Q.   AND WHAT DID THAT MEAN IN THIS CONTEXT?

09:36AM  25     A.   THAT OVER TIME WE HAD PLANNED TO INTRODUCE MORE AND MORE

09:36AM   1    OF OUR TECHNOLOGY AND PROCESSES, AND FOR THIS PIECE WE HAD

09:36AM   2    DISCUSSED SOME OF THEM, WHICH WE WOULD NOW BE SHARING PUBLICLY,

09:36AM   3    BUT NOT ALL OF THEM.

09:36AM   4    Q.   ALL RIGHT.  LET ME TURN TO ASKING YOU ABOUT THE INSPECTION

09:36AM   5    IN 2013 THAT MR. LEACH ASKED YOU ABOUT YESTERDAY.

09:36AM   6    A.   YES.

09:36AM   7    Q.   IS IT THE CASE THAT CMS INSPECTS LABORATORIES EVERY TWO

09:36AM   8    YEARS?

09:36AM   9    A.   THAT'S MY UNDERSTANDING.

09:36AM   10   Q.   AND WAS THIS INSPECTION PART OF THAT REGULAR CYCLE?

09:36AM   11   A.   YES.

09:36AM   12   Q.   AND AT THE TIME THAT THIS INSPECTION TOOK PLACE, THERANOS

09:37AM   13   WAS OPERATING AS A CLINICAL LAB SERVING PATIENTS; IS THAT

09:37AM   14   RIGHT?

09:37AM   15   A.   YES.

09:37AM   16   Q.   MR. LEACH ASKED YOU WHETHER THE INSPECTOR EVER SAW A 3.5

09:37AM   17   DEVICE.

09:37AM   18        DO YOU RECALL THAT?

09:37AM   19   A.   YES.

09:37AM   20   Q.   I'D LIKE TO ASK YOU TO LOOK AT EXHIBIT 7368, WHICH IS

09:37AM   21   ALREADY IN EVIDENCE.

09:37AM   22        AND DO YOU SEE THAT THIS IS THE DOCUMENT WHERE DR. YOUNG

09:37AM   23   SENT YOU NOTES FROM HIS PARTICIPATION IN THAT AUDIT?

09:37AM   24   A.   I DO.

09:37AM   25   Q.   AND IF YOU GO TO THE SECOND PAGE, THE NUMBERED 5, IF WE

09:37AM   1    COULD BLOW THAT UP.

09:37AM   2         AND DO YOU SEE THAT IT REFERS TO THE AUDITOR?

09:37AM   3    A.   YES.

09:37AM   4    Q.   AND IT SAYS, "THE AUDITOR ASKED IF WE HAVE ANY NEW TESTS

09:37AM   5    OFFERED SINCE THE LAST AUDIT"?

09:37AM   6    A.   YES.

09:37AM   7    Q.   AND WAS THE LAST AUDIT IN 2011?

09:38AM   8    A.   IT WAS.

09:38AM   9    Q.   AND THAT WAS THE -- WAS THAT THE AUDIT THAT YOU AND I

09:38AM  10    DISCUSSED ON DIRECT EXAMINATION WHERE THERE WERE NO

09:38AM  11    DEFICIENCIES IN THE THERANOS LAB?

09:38AM  12    A.   YES.

09:38AM  13    Q.   AND THEN IT SAYS, "ADAM."

09:38AM  14         DOES THAT REFER TO DR. ROSENDORFF?

09:38AM  15    A.   YES.

09:38AM  16    Q.   AND IT SAYS, "SAID YES AND SPOKE ABOUT ALL OF THE LDT'S."

09:38AM  17         DO YOU SEE THAT?

09:38AM  18    A.   YES.

09:38AM  19    Q.   AND HE "MENTIONED EDISON 3.5, FLOW CYTOMETER, ADVIA, AND

09:38AM  20    NORMANDY LAB."

09:38AM  21         DO YOU SEE THAT?

09:38AM  22    A.   I DO.

09:38AM  23    Q.   AND IS THAT A REFERENCE TO ALL OF THE LDT'S IN THERANOS'S

09:38AM  24    LABS?

09:38AM  25    A.   IT IS.

09:38AM   1    Q.   AND DO YOU KNOW ONE WAY OR ANOTHER WHETHER THE AUDITOR, IN

09:38AM   2    RESPONSE TO BEING INFORMED OF THESE, ASKED TO SEE THOSE

09:38AM   3    TECHNOLOGIES?

09:38AM   4    A.   I DON'T.

09:38AM   5    Q.   AND DO YOU KNOW, FROM REVIEW OF THE NOTES, THAT THE

09:38AM   6    AUDITOR DID ASK TO SEE VALIDATION REPORTS AND DATA ABOUT THEIR

09:38AM   7    PERFORMANCE?

09:39AM   8    A.   YES.

09:39AM   9    Q.   DID YOU UNDERSTAND THAT AN INSPECTOR WHO IS CONDUCTING AN

09:39AM   10   INSPECTION FOR CMS CAN ASK TO LOOK AT ANYTHING IN A LAB THAT

09:39AM   11   THEY WANT?

09:39AM   12   A.   OF COURSE.

09:39AM   13   Q.   I WANT TO ASK YOU JUST BRIEFLY ABOUT THE QUESTIONS THAT

09:39AM   14   MR. LEACH ASKED YOU LAST WEEK ABOUT YOUR RELATIONSHIP WITH

09:39AM   15   MR. BALWANI.

09:39AM   16        DO YOU RECALL THOSE QUESTIONS?

09:39AM   17   A.   I DO.

09:39AM   18   Q.   AND DO YOU RECALL THAT HE ASKED YOU A LARGE NUMBER OF

09:39AM   19   QUESTIONS ABOUT WHETHER, WHEN MR. BALWANI TOLD YOU SOMETHING,

09:39AM   20   HE WAS HIDING SOMETHING FROM YOU?

09:39AM   21        DO YOU RECALL THAT?

09:39AM   22   A.   I DO.

09:39AM   23   Q.   DID MR. BALWANI FREQUENTLY SHARE IDEAS WITH YOU?

09:39AM   24   A.   YES.

09:39AM   25   Q.   AND DID HE DO THAT BY TEXT?

09:39AM 1    A.   YES.

09:39AM 2    Q.   DID HE DO IT ORALLY AS WELL?

09:39AM 3    A.   HE DID.

09:39AM 4    Q.   AND DID HE ON OCCASION VENT HIS FRUSTRATION ABOUT EVENTS

09:40AM 5    AT THERANOS?

09:40AM 6    A.   HE DID.

09:40AM 7    Q.   DID HE DO THAT BY TEXT?

09:40AM 8    A.   YES.

09:40AM 9    Q.   AND DID HE DO THAT IN PERSON ORALLY ON SOME OCCASIONS?

09:40AM 10   A.   HE DID.

09:40AM 11   Q.   DID HE CRITICIZE INDIVIDUALS AT THERANOS AS BEING

09:40AM 12   INCOMPETENT?

09:40AM 13   A.   HE DID.

09:40AM 14   Q.   DID HE CRITICIZE YOU IN YOUR PERFORMANCE?

09:40AM 15   A.   YES.

09:40AM 16   Q.   WE SAW SEVERAL INSTANCES IN WHICH MR. LEACH SHOWED YOU

09:40AM 17   WHERE MR. BALWANI RAISED AN ISSUE ABOUT A PROBLEM OR AN ISSUE

09:40AM 18   THAT HE SAW AT THERANOS, AND IN RESPONSIVE TEXTS YOU SEEMED TO

09:40AM 19   AGREE WITH HIM.

09:40AM 20        DO YOU RECALL THAT?

09:40AM 21   A.   I DO.

09:40AM 22   Q.   I WANT TO JUST SHOW YOU A FEW OF THOSE BACK AND FORTHS TO

09:40AM 23   GIVE YOU AN OPPORTUNITY TO COMMENT ON WHAT WAS GOING ON.

09:40AM 24        SO I'D LIKE TO PUT UP 5387D, WHICH WAS INTRODUCED BY THE

09:41AM 25   GOVERNMENT, AND SHOW YOU ONE OF THOSE EXCHANGES.

09:41AM   1          IF WE GO TO PAGE 24, AND WE BLOW UP SORT OF THE TOP HALF

09:41AM   2     THERE.

09:41AM   3          DO YOU SEE THAT THIS IS A SERIES OF EXCHANGES BETWEEN YOU

09:41AM   4     AND MR. BALWANI WHERE HE'S TALKING ABOUT THE CALL CENTER

09:41AM   5     MANAGER, AND THE CALL CENTER TEAM?

09:41AM   6          DO YOU SEE THAT?

09:41AM   7     A.   YES.

09:41AM   8     Q.   AND WHAT IS THE CALL CENTER AT THERANOS?

09:41AM   9     A.   THE CALL CENTER SUPPORTED THE CLINICAL LAB AND WAS A PLACE

09:41AM  10     FOR PATIENTS AND PHYSICIANS TO CALL IF THEY HAD QUESTIONS OR

09:41AM  11     WANTED TO SPEAK WITH SOMEONE IN THE LABORATORY.

09:41AM  12     Q.   AND WAS THAT A FUNCTION THAT YOUR BROTHER WAS INVOLVED

09:41AM  13     WITH AT THIS TIME?

09:41AM  14     A.   HE WAS.

09:41AM  15     Q.   ALL RIGHT.  AND DO YOU SEE THAT HE BEGINS BY SAYING, "WE

09:41AM  16     NEED THE CALL CENTER MANAGER, NEW CALL CENTER TEAM, GET

09:41AM  17     RECURRENT CREW OUT OF DOCS FACING COMMUNICATIONS"?

09:42AM  18          DO YOU SEE THAT?

09:42AM  19     A.   I DO.

09:42AM  20     Q.   AND DO YOU SEE A COUPLE TEXTS DOWN HE SAYS, "FUNDAMENTALLY

09:42AM  21     WE NEED TO STOP FIGHTING FIRES BY NOT CREATING THEM"?

09:42AM  22          DO YOU SEE THAT?

09:42AM  23     A.   I DO.

09:42AM  24     Q.   AND THEN YOU AGREE AND SAY, "YES."

09:42AM  25          AND THEN THERE'S MORE DISCUSSION ABOUT THE CALL CENTER.

09:42AM 1        DO YOU SEE THAT?

09:42AM 2   A.   I DO.

09:42AM 3   Q.   AND THEN IF WE GO DOWN TO 5:52 A.M., THERE'S A TEXT FROM

09:42AM 4   YOU TO HIM WHERE YOU SAY, "FUNDAMENTALLY WE NEED TO STOP

09:42AM 5   FIGHTING FIRES BY NOT CREATING THEM."

09:42AM 6        CAN YOU EXPLAIN THAT EXCHANGE WHERE YOU'RE REPEATING WHAT

09:42AM 7   IT LOOKS LIKE WORD FOR WORD WHAT MR. BALWANI HAD TEXT YOU ABOUT

09:42AM 8   45 MINUTES BEFORE?

09:42AM 9   A.   YES.  SUNNY WOULD OFTEN BLOW OFF STEAM OR VENT THROUGH

09:42AM 10  TEXTS, AND I TRIED TO NOT IGNITE HIM IN THE WAY THAT I

09:43AM 11  RESPONDED.

09:43AM 12       AND I KNEW THAT REPEATING BACK TO HIM THINGS THAT HE HAD

09:43AM 13  SAID TO ME SHOWED THAT I WAS PAYING ATTENTION, THAT I WAS

09:43AM 14  LISTENING TO HIM, AND I WOULD DO THAT TO SHOW HIM THAT I

09:43AM 15  UNDERSTOOD THE POINT THAT HE WAS MAKING, I'M PAYING ATTENTION,

09:43AM 16  I'M LISTENING.

09:43AM 17  Q.   OKAY.  I THINK JUST FOR THE -- IN THE INTEREST OF CLARITY

09:43AM 18  OF THE RECORD, I SAID 45 MINUTES LATER AND I THINK IT'S ABOUT

09:43AM 19  3 MINUTES LATER.

09:43AM 20       DO YOU SEE THAT?

09:43AM 21  A.   I DO.

09:43AM 22  Q.   OKAY.  LET ME ASK YOU, WERE THERE SITUATIONS AFTER HE

09:43AM 23  VENTED A CONCERN THAT HE WOULD TALK ABOUT WHAT HE WOULD DO IN

09:43AM 24  RESPONSE TO THAT CONCERN?

09:43AM 25  A.   YES.

09:43AM  1    Q.   AND WHAT DID HE TYPICALLY SAY?

09:43AM  2    A.   THAT HE WAS GOING TO PERSONALLY TAKE OVER WHATEVER AREA HE

09:43AM  3    WAS UPSET ABOUT AND OWN IT AND FIX WHATEVER PROBLEMS EXISTED.

09:43AM  4    Q.   AND DID YOU GENERALLY ACCEPT THAT IF HE MADE THAT

09:43AM  5    PROPOSAL?

09:43AM  6    A.   I DID.

09:43AM  7    Q.   LET'S LOOK AT PAGE 9 OF THE SAME EXHIBIT, 5387D.  I WANT

09:44AM  8    TO LOOK AT THE SECOND TEXT HERE WHICH BEGINS ON MAY 9TH AT

09:44AM  9    1:13:39 A.M.

09:44AM  10        DO YOU SEE THAT?

09:44AM  11   A.   I DO.

09:44AM  12   Q.   AND DO YOU SEE THERE'S A TEXT FROM MR. BALWANI TO YOU THAT

09:44AM  13   SAYS, "I NEED ABOUT A MONTH OF TOTAL FREE TIME TO TAKE OVER

09:44AM  14   DEVICE COMPLETELY AND MOVE IT 100 PERCENT TO .NET."

09:44AM  15        DO YOU SEE THAT?

09:44AM  16   A.   I DO.

09:44AM  17   Q.   AND DO YOU SEE THAT THIS IS DATED MAY 2012?

09:44AM  18   A.   YES.

09:44AM  19   Q.   AND IS .NET, WHAT IS THAT A REFERENCE TO?

09:44AM  20   A.   IT'S A SOFTWARE.  HE'S TALKING ABOUT REWRITING ALL OF THE

09:44AM  21   SOFTWARE ON THE DEVICE.

09:44AM  22   Q.   AND IS THE DEVICE SOMETHING THAT YOU HAD BEEN INVOLVED IN

09:44AM  23   MANAGING THE PROCESS RELATED TO IT?

09:44AM  24   A.   YES.

09:44AM  25   Q.   AND WHAT WAS HE PROPOSING AT THIS POINT?

HOLMES REDIRECT BY MR. DOWNEY (RES.)                                8601

| | | |
|---|---|---|
| 09:44AM | 1 | A.   THAT HE TAKE IT OVER AND, AS PART OF DOING THAT |
| 09:45AM | 2 | TRANSITION, THE SOFTWARE THAT WE WERE USING TO NEW SOFTWARE. |
| 09:45AM | 3 | Q.   AND IF YOU LOOK AT THREE TEXTS DOWN FROM THAT, THE TEXT |
| 09:45AM | 4 | THAT BEGINS, "I AM EXHAUSTED." |
| 09:45AM | 5 | A.   YES. |
| 09:45AM | 6 | Q.   AND DO YOU SEE THAT HE SAYS, "I AM EXHAUSTED TRYING TO |
| 09:45AM | 7 | ENCOURAGE MEDEI AND LOREN" -- |
| 09:45AM | 8 | WHO ARE THEY? |
| 09:45AM | 9 | A.   TWO OF OUR SOFTWARE DEVELOPERS. |
| 09:45AM | 10 | Q.   -- "TO GET THE JOB DONE." |
| 09:45AM | 11 | AND HE MENTIONS TWO OTHER INDIVIDUALS.  WHO ARE THEY? |
| 09:45AM | 12 | A.   TWO MORE SOFTWARE DEVELOPERS. |
| 09:45AM | 13 | Q.   AND THEN IN THE LAST LINE HE SAYS, "WE WILL BE DONE IN A |
| 09:45AM | 14 | MONTH WITH THIS." |
| 09:45AM | 15 | DO YOU SEE THAT? |
| 09:45AM | 16 | A.   I DO. |
| 09:45AM | 17 | Q.   AND THEN YOU RESPOND "AMAZING"? |
| 09:45AM | 18 | DO YOU SEE THAT? |
| 09:45AM | 19 | A.   YES. |
| 09:45AM | 20 | Q.   AND THEN "MY JOB IS TO HELP YOU SPEND THE TIME ON THAT." |
| 09:45AM | 21 | DO YOU SEE THAT? |
| 09:45AM | 22 | A.   YES. |
| 09:45AM | 23 | Q.   AND WHAT WERE YOU COMMUNICATING TO HIM ON THAT? |
| 09:45AM | 24 | A.   I WAS TRYING TO BE SUPPORTIVE AND SAY, GREAT, LET ME HELP |
| 09:45AM | 25 | YOU SPEND TIME ON THAT SO YOU CAN SOLVE WHATEVER PROBLEMS YOU |

09:46AM   1    SEE AND GET IT DONE WITHIN A MONTH.

09:46AM   2    Q.   OKAY.  NOW, LET ME ASK YOU SPECIFICALLY ABOUT THE TEXTS

09:46AM   3    THAT MR. BALWANI SENT TO YOU THAT MR. LEACH SHOWED TO YOU

09:46AM   4    RELATED TO MR. ROSENDORFF'S DEPARTURE AND ISSUES AROUND THE

09:46AM   5    NORMANDY LAB AT THAT TIME.

09:46AM   6         DO YOU RECALL THAT EXCHANGE WITH MR. LEACH?

09:46AM   7    A.   I DO.

09:46AM   8    Q.   LET ME GO TO PAGE 29 OF THESE TEXTS.

09:46AM   9         AND DO YOU SEE WHERE HE SAYS, "NORMANDY LAB IS A DISASTER

09:46AM  10    ZONE," MORE OR LESS HE SAYS THAT, AND THEN HE SAYS, "GLAD I

09:46AM  11    CAME HERE.  WILL WORK ON FIXING THIS"?

09:46AM  12         DO YOU SEE THAT?

09:46AM  13    A.   I DO.

09:46AM  14    Q.   AND THEN YOUR RESPONSE WAS, "MEANT TO BE THAT YOU'RE THERE

09:46AM  15    APPARENTLY -- WHAT HAPPENED."

09:46AM  16         DO YOU SEE THAT?

09:46AM  17    A.   YES.

09:46AM  18    Q.   AND THEN HE GOES DOWN A COUPLE TEXTS DOWN AND SAYS HE'S

09:47AM  19    "IN NORMANDY."

09:47AM  20         AND THAT'S A REFERENCE TO THE LAB; IS THAT RIGHT?

09:47AM  21    A.   IT IS.

09:47AM  22    Q.   AND THEN HE SAYS HE'LL CALL WHEN HE LEAVES?

09:47AM  23    A.   YES.

09:47AM  24    Q.   AND A COUPLE LINES DOWN FROM THAT, HE SAYS, "I WILL GET

09:47AM  25    TINA OUT."

HOLMES REDIRECT BY MR. DOWNEY (RES.)                          8603

09:47AM   1          WHO WAS TINA?

09:47AM   2     A.   SHE WAS A PERSON IN PRODUCT MANAGEMENT.

09:47AM   3     Q.   AND WAS THAT SOMEBODY -- WAS SHE PLAYING A ROLE WITH

09:47AM   4     REGARD TO THE CLINICAL LAB?

09:47AM   5     A.   SHE WAS.  SHE WAS ASSIGNED TO THE LABORATORY DEVELOPED

09:47AM   6     TESTS.

09:47AM   7     Q.   AND THEN IN THE SECOND SENTENCE HE SAYS, "WE NEED A

09:47AM   8     SOFTWARE PERSON RUNNING THIS."

09:47AM   9          DO YOU SEE THAT?

09:47AM  10     A.   YES.

09:47AM  11     Q.   AND SOFTWARE PEOPLE WERE PEOPLE WHO WORKED FOR

09:47AM  12     MR. BALWANI; IS THAT RIGHT?

09:47AM  13     A.   THEY WERE.

09:47AM  14     Q.   WERE THEY TYPICALLY PEOPLE THAT HE HAD HIRED INTO

09:47AM  15     THERANOS?

09:47AM  16     A.   YES.

09:47AM  17     Q.   AND THEN HE SAYS, "BETWEEN TINA AND MAX WE HAVE A MESS."

09:47AM  18          IS THAT MAX FOSQUE?

09:47AM  19     A.   YES.

09:47AM  20     Q.   IS THIS A POINT WHERE MR. BALWANI BEGAN TO TAKE A MORE

09:47AM  21     ACTIVE ROLE AT THE LAB?

09:48AM  22     A.   HE DID.

09:48AM  23     Q.   LET ME SHOW YOU ONE MORE SERIES OF TEXTS FROM APRIL OF

09:48AM  24     2015.  THIS IS ON PAGE 59 ON 5387D.

09:48AM  25          DO YOU SEE THIS BEGINS WITH MR. BALWANI TEXTING YOU

09:48AM  1    SAYING, "IT IS MOST MADDENING THERE IS NO FOCUS ON ANY CHEM

09:48AM  2    TEAMS AND NO PRODUCT COMING OUT."

09:48AM  3        WHAT IS CHEM TEAMS A REFERENCE TO?

09:48AM  4    A.   HE'S TALKING ABOUT ONE OF THE R&D CHEMISTRY TEAMS.

09:48AM  5    Q.   AND IS R&D A FUNCTION THAT YOU HAD BEEN IN CHARGE OF

09:48AM  6    HISTORICALLY AT THE COMPANY?

09:48AM  7    A.   IT IS.

09:48AM  8    Q.   AND HE'S CRITICIZING THE FOCUS WITHIN THAT TEAM?

09:48AM  9    A.   YES.

09:48AM  10   Q.   AND YOU RESPONDED, "I KNOW.

09:49AM  11       "LEADERSHIP."

09:49AM  12   A.   YES.

09:49AM  13   Q.   AND HE SAYS, "I AM TAKING OVER ALL CHEM TEAMS PER

09:49AM  14   DISCUSSION AND WILL BEGIN DOING DAILY MEETINGS."

09:49AM  15       DO YOU SEE THAT?

09:49AM  16   A.   I DO.

09:49AM  17   Q.   AND IS THIS ANOTHER AREA WHERE HE TOOK CONTROL AT THIS

09:49AM  18   TIME AFTER COMPLAINING ABOUT THE PERFORMANCE OF THE PEOPLE

09:49AM  19   WORKING IN THE AREA?

09:49AM  20   A.   HE DID.

09:49AM  21   Q.   NOW, I WANT TO ASK YOU ABOUT THE SERIES OF QUESTIONS THAT

09:49AM  22   MR. LEACH ASKED YOU ABOUT WHETHER MR. BALWANI WAS OPEN WITH

09:49AM  23   YOU.

09:49AM  24       DO YOU RECALL THAT?

09:49AM  25   A.   I DO.

09:49AM   1    Q.   AND, OF COURSE, WHEN YOU HEARD HE HAD A CONCERN, YOU

09:49AM   2    UNDERSTOOD THE CONCERN THAT HE WAS EXPRESSING; IS THAT RIGHT?

09:49AM   3    A.   I THINK SO.

09:49AM   4    Q.   BUT DO YOU KNOW WHETHER AT THE TIME HE WAS TELLING YOU OF

09:49AM   5    EVERY ISSUE THAT HE SAW?

09:49AM   6    A.   NO.

09:49AM   7    Q.   DO YOU KNOW WHETHER HE WAS TELLING YOU OF EVERY ISSUE

09:49AM   8    THERE WAS UNDER HIS LEADERSHIP?

09:49AM   9    A.   NO.

09:49AM   10   Q.   DID HE TEND TO BE SELF-CRITICAL IN CONNECTION WITH HIS

09:49AM   11   MANAGEMENT OF AREAS?

09:49AM   12   A.   HE WAS NOT.

09:49AM   13   Q.   DID YOU EVENTUALLY LEARN THAT CONDITIONS IN SOME OF HIS

09:50AM   14   FUNCTIONS WERE WORSE THAN YOU HAD BELIEVED FOR MOST OF HIS TIME

09:50AM   15   AT THERANOS?

09:50AM   16   A.   I DID.

09:50AM   17   Q.   WERE SOME OF THOSE IN CONNECTION WITH PERFORMANCE OF THE

09:50AM   18   CLIA LAB?

09:50AM   19   A.   YES.

09:50AM   20   Q.   MR. LEACH ALSO ASKED YOU ABOUT ADVISORS THAT YOU WORKED

09:50AM   21   WITH AND INTERACTED WITH WHILE YOU WERE AT THERANOS.

09:50AM   22        DO YOU RECALL THAT?

09:50AM   23   A.   I DO.

09:50AM   24   Q.   AND HE ASKED YOU ABOUT, FOR EXAMPLE, GENERAL MATTIS.

09:50AM   25        DO YOU RECALL?

09:50AM   1    A.   I DO, YES.

09:50AM   2    Q.   AND MR. KISSINGER, AND MR. SHULTZ, AND OTHERS.

09:50AM   3         DO YOU RECALL?

09:50AM   4    A.   YES.

09:50AM   5    Q.   AND MOST OF THOSE INDIVIDUALS WERE MEMBERS OF THE BOARD OF

09:50AM   6    DIRECTORS; IS THAT RIGHT?

09:50AM   7    A.   THEY WERE.

09:50AM   8    Q.   AND YOU WOULD TALK TO THEM IN CONNECTION WITH BOARD

09:50AM   9    AFFAIRS; IS THAT RIGHT?

09:50AM  10    A.   I DID.

09:50AM  11    Q.   BUT IN THE PERIOD BETWEEN 2010 AND 2015, HOW FREQUENTLY

09:50AM  12    DID YOU TALK TO MR. BALWANI ABOUT EVENTS AT THERANOS?

09:50AM  13    A.   ALL OF THE TIME.

09:50AM  14    Q.   WHO WAS THE MOST IMPORTANT ADVISOR TO YOU IN CONNECTION

09:51AM  15    WITH THERANOS?

09:51AM  16    A.   SUNNY WAS.

09:51AM  17    Q.   I WANT TO ASK YOU LASTLY ABOUT THE END OF THE

09:51AM  18    RELATIONSHIP.

09:51AM  19         MR. LEACH SHOWED YOU SOME TEXTS WHERE YOU HAD SOME TEXTS

09:51AM  20    AFTER YOU DEPARTED FROM THE HOME THAT YOU HAD SHARED WITH

09:51AM  21    MR. BALWANI.

09:51AM  22         DO YOU RECALL THAT?

09:51AM  23    A.   I DO.

09:51AM  24    Q.   AND SOME OF THOSE TEXTS EXPRESSED, YOU KNOW, STILL

09:51AM  25    AFFECTIONATE FEELINGS TOWARD MR. BALWANI.

HOLMES REDIRECT BY MR. DOWNEY (RES.)                              8607

```
09:51AM   1              DO YOU RECALL THAT?

09:51AM   2    A.   I DO.

09:51AM   3    Q.   DID YOU END THAT RELATIONSHIP IN A SINGLE MOMENT, OR WAS

09:51AM   4    IT A PROCESS OF GETTING OUT OF THAT RELATIONSHIP?

09:51AM   5    A.   IT WAS A PROCESS.

09:51AM   6    Q.   AND AFTER YOU WERE ABLE TO END YOUR RELATIONSHIP WITH

09:51AM   7    MR. BALWANI, DID YOU SEE HIM AGAIN PRIOR TO, LET'S SAY, JUNE OF

09:51AM   8    2018?

09:51AM   9    A.   I DID.

09:51AM  10    Q.   ON WHAT OCCASIONS DID YOU SEE HIM?

09:51AM  11    A.   HE SHOWED UP AT THE CHURCH I WOULD GO TO AT NIGHT AND AT

09:52AM  12    THE DISH, WHICH WAS WHERE I USED TO RUN AROUND STANFORD, THE

09:52AM  13    PLACES I WOULD GO OUTSIDE OF WORK.

09:52AM  14    Q.   AND DID YOU HAVE ANY CONTACT WITH HIM?

09:52AM  15              MR. LEACH:  YOUR HONOR -- YOUR HONOR, OBJECTION.

09:52AM  16              THE COURT:  EXCUSE ME.

09:52AM  17              MR. LEACH:  RELEVANCE, 403 AS TO THE TIME PERIOD.

09:52AM  18              THE COURT:  DO YOU WANT TO --

09:52AM  19              MR. DOWNEY:  I DON'T NEED TO EXPAND FURTHER.

09:52AM  20              THE COURT:  OKAY.  ALL RIGHT.

09:52AM  21    BY MR. DOWNEY:

09:52AM  22    Q.   I WANT TO ALSO ASK YOU ABOUT THE LLC THAT MR. LEACH ASKED

09:52AM  23    YOU ABOUT.

09:52AM  24         DO YOU RECALL THAT?

09:52AM  25    A.   I DO.
```

09:52AM  1    Q.   AND HE SHOWED YOU A DOCUMENT THAT INDICATED THAT YOU AND

09:52AM  2    MR. BALWANI HAD 50 PERCENT OWNERSHIP EACH IN CONNECTION WITH AN

09:52AM  3    LLC.

09:52AM  4         DO YOU REMEMBER THAT?

09:52AM  5    A.   I DO.

09:52AM  6    Q.   AND THAT LLC WAS CALLED HMFR?

09:52AM  7    A.   IT WAS.

09:52AM  8    Q.   AND THEN MR. LEACH SHOWED YOU A PICTURE OF A HOUSE;

09:52AM  9    CORRECT?

09:52AM  10   A.   HE DID.

09:52AM  11   Q.   AND HE ASKED YOU, DO YOU RECALL, IF THAT HOUSE WAS SOLD?

09:52AM  12   A.   YES.

09:52AM  13   Q.   AND DO YOU RECALL HIM ASKING YOU IF THE LLC OWNED THE

09:53AM  14   HOUSE?

09:53AM  15   A.   YES.

09:53AM  16   Q.   ALL RIGHT.  AND WAS THAT LLC DISSOLVED?

09:53AM  17   A.   YES.

09:53AM  18   Q.   AND DOES IT EXIST TODAY?

09:53AM  19   A.   NO.

09:53AM  20   Q.   WHEN THE LLC DISSOLVED, DID YOU GET ANY PROCEEDS IN

09:53AM  21   CONNECTION WITH THE SALE OF THAT HOUSE?

09:53AM  22   A.   NO.

09:53AM  23             MR. LEACH:  OBJECTION.  RELEVANCE, 403.

09:53AM  24             MR. DOWNEY:  HE OPENED THE DOOR TO THIS ON DIRECT --

09:53AM  25   ON CROSS-EXAMINATION.  I THINK I'M ENTITLED TO --

09:53AM  1          THE COURT:  THERE WAS SOME TESTIMONY.  I'LL ALLOW

09:53AM  2   THAT QUESTION TO BE ANSWERED.

09:53AM  3       REASK THE QUESTION.

09:53AM  4          MR. DOWNEY:  RIGHT.

09:53AM  5   Q.   DID YOU REALIZE ANY MONIES FROM THE ASSETS THAT WERE SOLD

09:53AM  6   AS PART OF THAT LLC?

09:53AM  7   A.   NO.

09:53AM  8   Q.   I WANT TO ASK YOU FINALLY JUST SOME QUESTIONS ABOUT THE

09:53AM  9   RESEARCH AND DEVELOPMENT PROCESS AT THERANOS AND ABOUT YOUR

09:53AM 10   ROLE WITH REGARD TO THE RESEARCH AND DEVELOPMENT PROCESS.

09:53AM 11       I THINK YOU'VE TESTIFIED ON A FEW OCCASIONS THAT YOU SPENT

09:54AM 12   MUCH MORE OF YOUR TIME WORKING ON RESEARCH AND DEVELOPMENT THAN

09:54AM 13   IN CONNECTION WITH THE CLINICAL LAB; IS THAT FAIR?

09:54AM 14   A.   I DID.

09:54AM 15   Q.   AND THE RESEARCH AND DEVELOPMENT LAB WAS DEVELOPING

09:54AM 16   PROPRIETARY TECHNOLOGY; IS THAT RIGHT?

09:54AM 17   A.   YES.

09:54AM 18   Q.   DID YOU RECEIVE REGULAR UPDATES ABOUT THAT PROGRESS IN THE

09:54AM 19   PERIOD -- WITH RESPECT TO RESEARCH AND DEVELOPMENT IN THE

09:54AM 20   PERIOD BETWEEN 2010 AND 2013?

09:54AM 21   A.   I DID.

09:54AM 22   Q.   AND WERE THOSE UPDATES FROM THE SCIENTISTS WHO LED THE

09:54AM 23   VARIOUS TECHNOLOGY TEAMS WITHIN THERANOS?

09:54AM 24   A.   YES.

09:54AM 25   Q.   AND DO YOU HAVE ANY REASON TO DOUBT THEIR SINCERITY IN

09:54AM   1    REPORTING TO YOU WHERE THEY THOUGHT THE PROGRESS OF THAT

09:54AM   2    TECHNOLOGY WAS DURING THAT PERIOD?

09:54AM   3    A.   NOT AT ALL.

09:54AM   4    Q.   AND YOU ALSO -- DID YOU RECEIVE UPDATES IN CONNECTION WITH

09:54AM   5    THERANOS'S EFFORT TO HAVE THE 4.0 DEVICE AND THE 4.0 SYSTEM

09:55AM   6    READY TO SUBMIT AN APPLICATION TO THE FDA FOR APPROVAL FOR?

09:55AM   7    A.   I DID.

09:55AM   8    Q.   AND DID THEY -- DO YOU HAVE ANY REASON TO DOUBT WHAT

09:55AM   9    THEY -- THE SINCERITY OF WHAT THEY REPORTED TO YOU IN THAT

09:55AM  10    REGARD?

09:55AM  11    A.   I DO NOT.

09:55AM  12    Q.   WHEN YOU SPOKE TO OUTSIDERS, PARTNERS, AND POTENTIAL

09:55AM  13    INVESTORS, WAS WHAT YOU SAID ABOUT THERANOS'S TECHNOLOGY

09:55AM  14    CAPABILITIES INFORMED BY WHAT YOU WERE HEARING FROM THOSE

09:55AM  15    INDIVIDUALS WITHIN THERANOS?

09:55AM  16    A.   YES.

09:55AM  17    Q.   AND DID YOU UNDERSTAND THAT THE COMPANY HAD DEVELOPED A

09:55AM  18    REAL PRODUCT THAT COULD BE USED IN CONNECTION WITH ANALYSIS OF

09:55AM  19    BLOOD SAMPLES?

09:55AM  20    A.   I DID.

09:55AM  21    Q.   WHEN YOU HAD QUESTIONS TO VERIFY WHETHER OR NOT THE

09:55AM  22    TECHNOLOGY AT THERANOS HAD A PARTICULAR CAPABILITY, WHO DID YOU

09:55AM  23    ASK?

09:55AM  24    A.   I ASKED OUR SCIENTISTS AND ENGINEERS AND MEMBERS OF THE

09:55AM  25    TECHNICAL TEAMS FOR DIFFERENT TYPES OF TESTS.

09:56AM 1    Q.   YOU TESTIFIED WHEN MR. LEACH WAS EXAMINING YOU THAT IN

09:56AM 2    YOUR ROLE AS CEO, YOU THOUGHT THAT THE BUCK STOPPED WITH YOU;

09:56AM 3    IS THAT RIGHT?

09:56AM 4    A.   I DID.

09:56AM 5    Q.   AND IS THAT AN ACCURATE STATEMENT OF HOW YOU FEEL?

09:56AM 6    A.   IT IS.

09:56AM 7    Q.   BUT IS IT ALSO AN ACCURATE STATEMENT THAT BETWEEN 2010 AND

09:56AM 8    2016, WERE YOU AWARE OF EVERYTHING THAT HAPPENED AT THERANOS?

09:56AM 9    A.   NO.

09:56AM 10   Q.   AND BETWEEN 2010 AND 2016, WERE YOU INVOLVED IN ALL OF THE

09:56AM 11   DECISIONS THAT THE COMPANY MADE?

09:56AM 12   A.   I WAS NOT.

09:56AM 13   Q.   DID YOU EVER AT ANY TIME TAKE STEPS TO TRY TO MISLEAD

09:56AM 14   PEOPLE WHO INVESTED IN THERANOS?

09:56AM 15   A.   NEVER.

09:56AM 16   Q.   AND YOU RECOGNIZED THAT THEY INVESTED IN THE VISION THAT

09:56AM 17   YOU ARTICULATED AND ULTIMATELY LOST YOUR MONEY -- LOST THEIR

09:56AM 18   MONEY?

09:56AM 19            MR. LEACH:  OBJECTION.  OBJECTION.  LEADING.

09:56AM 20            THE COURT:  SUSTAINED.

09:56AM 21   BY MR. DOWNEY:

09:56AM 22   Q.   WELL, DO YOU RECOGNIZE THAT THEY LOST MONEY?

09:57AM 23   A.   I DO.

09:57AM 24   Q.   WAS THAT THE RESULT OF YOUR ATTEMPTING TO MISLEAD THEM IN

09:57AM 25   CONNECTION WITH ASKING THEM TO INVEST IN THERANOS?

HOLMES REDIRECT BY MR. DOWNEY (RES.)                           8612

09:57AM   1    A.   OF COURSE NOT.

09:57AM   2    Q.   YOU ALSO TALKED FREQUENTLY ABOUT THE BENEFITS FOR PATIENTS

09:57AM   3    OF THERANOS SYSTEMS.

09:57AM   4         DO YOU REMEMBER THAT?

09:57AM   5    A.   I DO.

09:57AM   6    Q.   AND DID YOU AT ANY TIME TRY TO LEAD PATIENTS TO BELIEVE

09:57AM   7    THAT THERANOS COULD OFFER ACCURATE AND RELIABLE SERVICES WHEN

09:57AM   8    YOU KNEW IT COULDN'T?

09:57AM   9    A.   OF COURSE NOT.

09:57AM  10    Q.   IN CONNECTION WITH GAINING CONFIDENCE IN THE CAPABILITIES

09:57AM  11    OF THERANOS AND WHAT YOU WERE SAYING ABOUT IT, YOU'VE TESTIFIED

09:57AM  12    SEVERAL TIMES THAT YOU HIRED A NUMBER OF SCIENTIFIC LEADERS.

09:57AM  13         DO YOU RECALL THAT?

09:57AM  14    A.   I DO.

09:57AM  15    Q.   AND DID THAT INCLUDE DR. YOUNG?

09:57AM  16    A.   YES.

09:57AM  17    Q.   AND DR. PANGARKAR?

09:57AM  18    A.   YES.

09:57AM  19    Q.   AND DR. ANEKAL?

09:58AM  20    A.   YES.

09:58AM  21    Q.   AND DR. SIVARAMAN?

09:58AM  22    A.   YES.

09:58AM  23    Q.   AND DR. SAKSENA?

09:58AM  24    A.   YES.

09:58AM  25    Q.   AND WERE ALL OF THEM LEADERS OF VARIOUS RESEARCH GROUPS

09:58AM   1    WITHIN THERANOS?

09:58AM   2    A.   THEY WERE.

09:58AM   3    Q.   AND ARE ALL OF THEM WORKING TODAY IN CONNECTION WITH OTHER

09:58AM   4    TECHNOLOGY AND BIOTECH VENTURES?

09:58AM   5    A.   THEY ARE.

09:58AM   6    Q.   AND YOU ALSO WERE COUNSELLED BY CAPABLE EXPERTS IN

09:58AM   7    MARKETING; IS THAT FAIR TO SAY?

09:58AM   8    A.   YES.

09:58AM   9    Q.   AND DID THERANOS HAVE IN-HOUSE LAWYERS TO CONSULT IT IN

09:58AM   10   CONNECTION WITH ITS ACTIVITIES?

09:58AM   11   A.   WE DID.

09:58AM   12   Q.   MR. LEACH ASKED YOU A NUMBER OF QUESTIONS ABOUT THE NUMBER

09:58AM   13   OF SHARES THAT YOU OWNED IN THERANOS.

09:58AM   14        DO YOU REMEMBER THAT?

09:58AM   15   A.   I DO.

09:58AM   16   Q.   AND HE SHOWED YOU A PARTICULAR NUMBER.  IT WAS SEVERAL

09:58AM   17   HUNDRED MILLION SHARES.

09:58AM   18        DO YOU RECALL THAT?

09:58AM   19   A.   YES.

09:58AM   20   Q.   AND WAS IT EVER THE CASE AT ANY TIME BETWEEN THE FOUNDING

09:58AM   21   OF THE COMPANY AND THE TIME THAT THE COMPANY CEASED ITS

09:58AM   22   EXISTENCE IN 2018 THAT YOU EVER SOLD A SINGLE SHARE OF THAT

09:59AM   23   STOCK?

09:59AM   24   A.   NO.

09:59AM   25   Q.   WHEN YOU WERE OUT ASKING OTHERS TO INVEST IN THE COMPANY

09:59AM  1    THAT YOU HAD FOUNDED, WHAT DID YOU TYPICALLY WANT TO CONVEY TO

09:59AM  2    THEM AS A QUESTION OF WHY THEY SHOULD INVEST IN THERANOS?

09:59AM  3    A.   I WANTED TO CONVEY THE IMPACT THE COMPANY COULD MAKE FOR

09:59AM  4    PEOPLE AND FOR HEALTH CARE.  THEY WERE PEOPLE WHO WERE

09:59AM  5    LONG-TERM INVESTORS, AND I WANTED TO TALK ABOUT WHAT THIS

09:59AM  6    COMPANY COULD DO A YEAR FROM NOW, FIVE YEARS FROM NOW, TEN

09:59AM  7    YEARS FROM NOW.

09:59AM  8         THEY WEREN'T INTERESTED IN TODAY OR TOMORROW OR NEXT

09:59AM  9    MONTH.  THEY WERE INTERESTED IN WHAT KIND OF CHANGE WE COULD

09:59AM  10   MAKE.

09:59AM  11   Q.   WELL, DID YOU EVER FOCUS IN YOUR COMMENTARY ON THE CURRENT

09:59AM  12   TEST MENU IN THE CLIA LAB, FOR EXAMPLE?

09:59AM  13   A.   I DID NOT.

09:59AM  14   Q.   DID YOU FOCUS IN YOUR COMMENTS ON THE TECHNOLOGY THAT

09:59AM  15   THERANOS HAD INVENTED AND ITS CAPABILITIES OVER THE LONG RUN?

10:00AM  16   A.   I DID.  I TALKED ABOUT WHAT WE'D CREATED AND WHAT IT COULD

10:00AM  17   DO, WHAT WAS POSSIBLE.

10:00AM  18   Q.   OKAY.

10:00AM  19        YOUR HONOR, MAY I JUST HAVE ONE MOMENT?  I WANT TO GET ONE

10:00AM  20   DOCUMENT.

10:00AM  21             THE COURT:  YES.

10:00AM  22        (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

10:00AM  23             MR. DOWNEY:  YOUR HONOR, I JUST WANTED TO MAKE SURE

10:00AM  24   I RESERVE THE ABILITY TO CLEAR UP ANY ISSUES TO THE REDUCED

10:00AM  25   EXHIBIT, AND THEN I'LL BE DONE.

10:00AM   1              THE COURT:  OKAY.  THAT'S FINE.  THANK YOU.

10:00AM   2              MR. DOWNEY:  THANK YOU, MS. HOLMES.

10:00AM   3              THE WITNESS:  THANK YOU.

10:00AM   4              THE COURT:  DO YOU HAVE RECROSS?

10:00AM   5              MR. LEACH:  BRIEFLY, YOUR HONOR, YES.

10:01AM   6                       **RECROSS-EXAMINATION**

10:01AM   7    BY MR. LEACH:

10:01AM   8    Q.   GOOD MORNING, MS. HOLMES.

10:01AM   9    A.   GOOD MORNING.

10:01AM   10   Q.   YOU WERE ASKED A NUMBER OF QUESTIONS ON REDIRECT

10:01AM   11   EXAMINATION ABOUT 15055, AN EMAIL REGARDING TRADE SECRET POLICY

10:01AM   12   REMINDER.

10:01AM   13        DO YOU RECALL TESTIFYING ABOUT THAT?

10:01AM   14   A.   I DO.

10:01AM   15              MR. LEACH:  MS. KRATZMANN, IF I COULD USE THE ELMO

10:02AM   16   FOR THIS?

10:02AM   17              THE CLERK:  YES, COUNSEL.

10:02AM   18   BY MR. LEACH:

10:02AM   19   Q.   DO YOU SEE THE DATE OF MAY 2ND, 2012, MS. HOLMES, ON THIS

10:02AM   20   EMAIL?

10:02AM   21   A.   I DO.

10:02AM   22   Q.   AND THIS IS FROM ONE OF YOUR ATTORNEYS, DAVID DOYLE?

10:02AM   23   A.   IT IS.

10:02AM   24   Q.   HE WAS IN-HOUSE AT THERANOS?

10:02AM   25   A.   HE WAS.

10:02AM  1    Q.   AND IN THIS TIME PERIOD, YOU WERE EMBROILED IN A PATENT

10:02AM  2    LAWSUIT REGARDING SOME OF YOUR TECHNOLOGY; CORRECT?

10:02AM  3    A.   WE WERE.

10:02AM  4    Q.   OKAY.  AND THE IDEA OF TRADE SECRETS WAS TOP OF MIND TO

10:02AM  5    YOU IN THIS TIME PERIOD.

10:02AM  6         DID I HEAR YOU TESTIFY TO THAT?

10:02AM  7    A.   IT WAS.

10:02AM  8    Q.   OKAY.  AND YOU WERE ASKING MR. DOYLE TO PUT TOGETHER A

10:02AM  9    POLICY SO THAT PEOPLE UNDERSTOOD WHAT THEY COULD DO, WHAT THEY

10:02AM  10   COULDN'T DO, AND WHAT THEY SHOULD DO; CORRECT?

10:02AM  11   A.   I DID.

10:02AM  12   Q.   OKAY.  AND PART OF THAT POLICY SAYS, "A TRADE SECRET IS"

10:02AM  13   INFORMATION" -- "IS SIMPLY ANY INFORMATION THAT:  (A) THE OWNER

10:03AM  14   MAKES REASONABLE EFFORTS TO KEEP SECRET; AND, (B) HAS ECONOMIC

10:03AM  15   VALUE BECAUSE IT IS NOT GENERALLY KNOWN (TO THE PUBLIC OR A

10:03AM  16   COMPETITOR);" CORRECT?

10:03AM  17   A.   YES.

10:03AM  18   Q.   NOW, WALGREENS WAS NOT YOUR COMPETITOR; CORRECT?

10:03AM  19   A.   THEY WERE NOT.

10:03AM  20   Q.   THEY WERE YOUR PARTNER?

10:03AM  21   A.   THEY WERE.  WE WERE WORRIED ABOUT THEM POTENTIALLY GETTING

10:03AM  22   INTO THE LAB BUSINESS DIRECTLY, BUT THEY WERE A PARTNER.

10:03AM  23   Q.   THEY WERE YOUR PARTNER.

10:03AM  24        AND YOU HAD A CONFIDENTIALITY AGREEMENT WITH THEM?

10:03AM  25   A.   WE DID.

10:03AM 1    Q.   AND THEY WEREN'T THE PUBLIC, THEY WERE YOUR PARTNER?

10:03AM 2    A.   YES.

10:03AM 3    Q.   AND LATER ON THE POLICY THAT YOU PUT TOGETHER WITH

10:03AM 4    MR. DOYLE SAYS, "THE DEFINING CHARACTERISTIC OF A TRADE SECRET,

10:03AM 5    IN FACT, IS THAT IT IS NEVER DISCLOSED PUBLICLY;" CORRECT?

10:03AM 6    A.   YES.

10:03AM 7    Q.   AND YOU SAID MANY THINGS TO WALGREENS THAT YOU DIDN'T SAY

10:03AM 8    PUBLICLY; CORRECT?

10:03AM 9    A.   CORRECT.

10:03AM 10   Q.   AND IT ALSO SAYS, "PROVIDED THE HOLD" -- LET ME START

10:03AM 11   AGAIN.  "PROVIDED THE HOLDER EMPLOYS REASONABLE EFFORTS TO

10:04AM 12   PROTECT A TRADE SECRET, HE OR SHE MAY FILE SUIT WHENEVER THE

10:04AM 13   SECRET IS DISCLOSED THROUGH 'IMPROPER MEANS.'"

10:04AM 14        DO YOU SEE "IMPROPER MEANS" IN QUOTES?

10:04AM 15   A.   I DO.

10:04AM 16   Q.   AND IMPROPER MEANS INCLUDES "THEFT, BRIBERY,

10:04AM 17   MISREPRESENTATION, BREACH OF A DUTY (CONTRACTUAL OR

10:04AM 18   OTHERWISE)."

10:04AM 19        DO YOU SEE THAT?

10:04AM 20   A.   I DO.

10:04AM 21   Q.   AND YOU UNDERSTOOD THIS TO MEAN THAT IMPROPER MEANS MIGHT

10:04AM 22   BE IF A PARTY HAS A CONFIDENTIALITY AGREEMENT, BUT BREACHES IT?

10:04AM 23   A.   YES.

10:04AM 24   Q.   AND PART OF THE MEASURES YOU AND MR. DOYLE ARE DISCUSSING

10:04AM 25   HERE ARE REQUIRING VISITORS TO THERANOS FACILITIES TO SIGN A

HOLMES RECROSS BY MR. LEACH                                      8618

10:04AM   1      CDA.  THAT'S A CONFIDENTIAL DISCLOSURE AGREEMENT?

10:04AM   2      A.   IT IS.

10:04AM   3      Q.   AND ANOTHER ONE YOU'RE TALKING ABOUT REQUIRING ALL VENDORS

10:04AM   4      OR OTHER POTENTIAL BUSINESS PARTNERS TO SIGN AN ENTITY CDA

10:04AM   5      PRIOR TO COMMENCING DISCUSSIONS OF ANY THERANOS CONFIDENTIAL

10:05AM   6      INFORMATION; CORRECT?

10:05AM   7      A.   YES.

10:05AM   8      Q.   AND SO YOUR POLICY CONTEMPLATED DISCLOSING CONFIDENTIAL

10:05AM   9      INFORMATION TO PARTNERS WITH A CDA; CORRECT?

10:05AM  10      A.   YES, YES.

10:05AM  11      Q.   AND, IN FACT, YOU TOLD WALGREENS MANY CONFIDENTIAL ASPECTS

10:05AM  12      OF YOUR BUSINESS; CORRECT?

10:05AM  13      A.   WE DID.

10:05AM  14      Q.   AND YOU TOLD PHARMACEUTICAL COMPANIES MANY CONFIDENTIAL

10:05AM  15      ASPECTS OF YOUR BUSINESS; CORRECT?

10:05AM  16      A.   YES.

10:05AM  17      Q.   BECAUSE YOU HAD AN AGREEMENT WITH THEM WHERE THEY AGREED

10:05AM  18      TO KEEP YOUR SECRETS; CORRECT?

10:05AM  19      A.   WE HAD A CONFIDENTIALITY AGREEMENT WITH THEM.

10:05AM  20      Q.   YEAH.  AND YOU WERE COMFORTABLE WITH THAT?

10:05AM  21      A.   I WAS.

10:05AM  22      Q.   ANOTHER PROVISION HERE IS REQUIRING ALL NEW AND EXISTING

10:05AM  23      EMPLOYEES, CONSULTANTS, AND OTHER TEAM MEMBERS TO SIGN

10:05AM  24      INDIVIDUAL CDA'S, AS WELL AS PROJECT SPECIFIC CDA'S.

10:05AM  25           DO YOU SEE THAT?

10:05AM  1    A.   YES.

10:05AM  2    Q.   AND SO YOUR POLICY CONTEMPLATED GIVING CONFIDENTIAL

10:06AM  3    INFORMATION TO CONSULTANTS WHO WERE NOT EMPLOYEES OF THERANOS;

10:06AM  4    CORRECT?

10:06AM  5    A.   IT DID.

10:06AM  6    Q.   AND YOU HAD A NUMBER OF CONSULTANTS WHO WORKED WITHIN THE

10:06AM  7    FOUR WALLS OF THERANOS, BUT YOU GAVE THEM CONFIDENTIAL

10:06AM  8    INFORMATION; CORRECT?

10:06AM  9    A.   YES.

10:06AM  10   Q.   AND PURSUANT TO THOSE AGREEMENTS, YOU TRUSTED THEM TO

10:06AM  11   HONOR THOSE SECRETS; CORRECT?

10:06AM  12   A.   YES.

10:06AM  13   Q.   YOUR POLICY ALSO CONTEMPLATED PROACTIVELY EDUCATING NEW

10:06AM  14   EMPLOYEES, PARTNERS, AND OTHERS AS APPROPRIATE ABOUT YOUR

10:06AM  15   CONFIDENTIALITY EXPECTATIONS; CORRECT?

10:06AM  16   A.   YES.

10:06AM  17   Q.   AND SO YOUR POLICY IS CONTEMPLATING TALKING TO PARTNERS

10:06AM  18   ABOUT THEIR CONFIDENTIALITY OBLIGATIONS; CORRECT?

10:06AM  19   A.   YES.

10:06AM  20   Q.   AND WALGREENS WAS A PARTNER?

10:06AM  21   A.   THEY WERE.

10:06AM  22   Q.   AND YOU ALSO TALKED ABOUT REMINDING PARTNERS OF THEIR

10:06AM  23   ONGOING CONFIDENTIALITY OBLIGATIONS.

10:06AM  24        WAS THAT A PART OF THE POLICY --

10:06AM  25   A.   YES.

| | | |
|---|---|---|
| 10:06AM | 1 | Q.   -- IN THAT LAST BULLET? |
| 10:06AM | 2 | A.   YES. |
| 10:06AM | 3 | Q.   SO IF YOUR RELATIONSHIP WITH WALGREENS FOR WHATEVER REASON |
| 10:07AM | 4 | ENDED, THIS CONTEMPLATES TALKING TO YOUR PARTNER ABOUT THEIR |
| 10:07AM | 5 | CONFIDENTIALITY AGREEMENTS, THE SECRETS THAT YOU SHARED WITH |
| 10:07AM | 6 | THEM? |
| 10:07AM | 7 | A.   IT DOES. |
| 10:07AM | 8 | Q.   OKAY.  YOU WERE ALSO ASKED SOME QUESTIONS ABOUT GSK. |
| 10:07AM | 9 | DO YOU RECALL GSK? |
| 10:07AM | 10 | A.   I DO. |
| 10:07AM | 11 | Q.   OKAY.  AND I WANT TO SHOW YOU WHAT IS IN EVIDENCE AS |
| 10:07AM | 12 | 14111. |
| 10:07AM | 13 | DO YOU RECALL SOME TESTIMONY ABOUT THIS AGREEMENT? |
| 10:07AM | 14 | A.   MY TESTIMONY? |
| 10:07AM | 15 | Q.   YES. |
| 10:07AM | 16 | A.   YES. |
| 10:07AM | 17 | Q.   AND ARE YOU AWARE OF ANY OTHER AGREEMENTS WITH GSK? |
| 10:07AM | 18 | A.   I AM. |
| 10:07AM | 19 | Q.   WHICH ONE? |
| 10:07AM | 20 | A.   THERE'S A MASTER SERVICES AGREEMENT THAT IS ENTERED INTO I |
| 10:07AM | 21 | THINK IN 2010 OR SO. |
| 10:07AM | 22 | Q.   OKAY.  OTHER THAN THAT MASTER SERVICES AGREEMENT, ANYTHING |
| 10:07AM | 23 | ELSE? |
| 10:07AM | 24 | A.   YES. |
| 10:07AM | 25 | Q.   WHICH ONE? |

HOLMES RECROSS BY MR. LEACH

10:07AM  1    A.   THERE'S A STATEMENT OF WORK THAT IS ENTERED INTO WITH GSK

10:07AM  2    BIOLOGICALS.

10:07AM  3    Q.   IN WHAT YEAR?

10:08AM  4    A.   I THINK 2010ISH.

10:08AM  5    Q.   OKAY.

10:08AM  6    A.   I'M NOT EXACTLY SURE.

10:08AM  7    Q.   OKAY.  OTHER THAN THAT, ANYTHING ELSE?

10:08AM  8    A.   NO.

10:08AM  9    Q.   OKAY.  AND YOU -- THIS AGREEMENT TALKS ABOUT -- LET ME

10:08AM  10   START WITH PARAGRAPH 6.

10:08AM  11       DO YOU SEE THE HEADING "CONFIDENTIALITY"?

10:08AM  12   A.   I DO.

10:08AM  13   Q.   AND MANY OF YOUR PHARMA AGREEMENTS WOULD HAVE

10:08AM  14   CONFIDENTIALITY AGREEMENTS GOVERNING THE SHARE OF INFORMATION?

10:08AM  15   A.   YES.

10:08AM  16   Q.   AND THIS ONE SAYS IN 6.2, "THERANOS AND GSK EACH HEREBY

10:08AM  17   RECOGNIZE AND ACKNOWLEDGE THAT THE OTHER PARTY'S CONFIDENTIAL

10:08AM  18   INFORMATION CONSTITUTES VALUABLE AND PROPRIETARY INFORMATION."

10:08AM  19       CORRECT?

10:08AM  20   A.   IT DOES.

10:08AM  21   Q.   AND YOU WERE COMFORTABLE SHARING VALUABLE AND PROPRIETARY

10:08AM  22   INFORMATION WITH GSK AND OTHER PHARMACEUTICAL COMPANIES BECAUSE

10:08AM  23   YOU KNEW THAT YOU HAD THESE AGREEMENTS WHERE THEY WOULD KEEP

10:08AM  24   YOUR SECRETS?

10:09AM  25   A.   I WAS.

10:09AM  1    Q.   OKAY.  YOU WERE ALSO ASKED SOME QUESTIONS ABOUT A RENT

10:09AM  2    MODEL WITH WALGREENS.

10:09AM  3    A.   YES.

10:09AM  4    Q.   AND YOU HAD DISCUSSIONS WITH MR. GOURLAY ABOUT THAT?

10:09AM  5    A.   I DID.

10:09AM  6    Q.   NOTHING EVER CAME OF THE RENT MODEL; CORRECT?

10:09AM  7    A.   NO.

10:09AM  8    Q.   YOU NEVER MODIFIED YOUR AGREEMENT WITH WALGREENS?

10:09AM  9    A.   WE STARTED TO.  WE WERE GOING THROUGH CONTRACT AMENDMENTS.

10:09AM  10   Q.   OKAY.  BUT YOU NEVER CONSUMMATED ANYTHING; CORRECT?

10:09AM  11   A.   WE DID NOT.

10:09AM  12   Q.   OKAY.  AND YOU NEVER EXPANDED BEYOND THE 41 STORES THAT WE

10:09AM  13   TALKED ABOUT ON CROSS-EXAMINATION?

10:09AM  14   A.   THAT'S RIGHT.

10:09AM  15   Q.   OKAY.  YOU WERE ALSO ASKED A NUMBER OF QUESTIONS ABOUT

10:09AM  16   THERANOS'S CASH POSITION IN SEPTEMBER OF 2013 ON REDIRECT.

10:09AM  17        DO YOU RECALL THAT TESTIMONY?

10:09AM  18   A.   I DO.

10:09AM  19   Q.   OKAY.  AND I'D LIKE TO SHOW YOU EXHIBIT -- THE NATIVE FILE

10:09AM  20   FOR EXHIBIT 5172.

10:10AM  21        DO YOU RECALL BEING ASKED QUESTIONS ABOUT THIS ON

10:10AM  22   CROSS-EXAMINATION, MS. HOLMES?

10:10AM  23   A.   I DO.

10:10AM  24   Q.   AND MR. DOWNEY SHOWED YOU AN EMAIL FROM WADE MIQUELON IN

10:10AM  25   THE SEPTEMBER 2013 TIME PERIOD WITH A DRAFT TERM SHEET ON IT;

10:10AM  1    CORRECT?

10:10AM  2    A.   HE DID.

10:10AM  3    Q.   OKAY.  AND THAT'S EXHIBIT 1083.  IS THAT CONSISTENT WITH

10:10AM  4    YOUR MEMORY?

10:10AM  5    A.   I DON'T KNOW.

10:10AM  6    Q.   OKAY.  BUT HE SHOWED YOU AN EMAIL WITH A DRAFT AGREEMENT

10:10AM  7    FROM THE SEPTEMBER TIME PERIOD; CORRECT?

10:10AM  8    A.   HE DID.

10:10AM  9    Q.   AND THE ACTUAL AGREEMENT THAT YOU REACHED WITH WALGREENS

10:10AM  10   IS AT THE END OF DECEMBER 2013; CORRECT?

10:10AM  11   A.   YES.

10:10AM  12   Q.   AND THE 75 MILLION THAT YOU'RE TALKING ABOUT IN THAT

10:10AM  13   DECEMBER 2013 AGREEMENT DOESN'T COME IN UNTIL JANUARY OF 2014;

10:10AM  14   ISN'T THAT CORRECT?

10:10AM  15   A.   I'M NOT -- I REMEMBERED IT AS DECEMBER 31ST, BUT IT COULD

10:10AM  16   HAVE BEEN JANUARY.

10:10AM  17   Q.   LET'S LOOK AT THE SPREADSHEET.

10:11AM  18       DO YOU SEE IN COLUMN EN WHERE THERANOS HAS $587,000 IN ITS

10:11AM  19   COMERICA BANK ACCOUNT?

10:11AM  20   A.   I DO.

10:11AM  21   Q.   AND THIS IS THE END OF SEPTEMBER OF 2013?

10:11AM  22   A.   YES.

10:11AM  23   Q.   AND IF WE COULD ZOOM OUT A LITTLE BIT, MS. HOLLIMAN.  A

10:11AM  24   LITTLE BIT MORE.  THANK YOU.

10:11AM  25       AND IF WE CAN SCROLL DOWN A LITTLE BIT MORE TO THE OTHER.

10:11AM  1    THANK YOU.

10:11AM  2         AND WE TALKED A LITTLE BIT ON DIRECT EXAMINATION ABOUT THE

10:11AM  3    MONIES THAT COME IN FOR OPTION/STOCK PROCEEDS AT THE END OF

10:11AM  4    SEPTEMBER.

10:11AM  5         DO YOU RECALL THAT TESTIMONY?

10:11AM  6    A.   OPTION/STOCK PROCEEDS?  I DO.  I DO.

10:12AM  7    Q.   IF YOU LOOK IN ROW 27, AND IN EL, THAT'S THE MONEY FROM

10:12AM  8    PEER VENTURES AND DON LUCAS JUNIOR'S FUND?

10:12AM  9    A.   IT IS.

10:12AM  10   Q.   AND IF WE SCROLL TO THE RIGHT, MS. HOLLIMAN.  RIGHT THERE.

10:12AM  11        DO YOU SEE IN F, COLUMN FC, THERE'S THE AMOUNT IN ROW 26

10:12AM  12   OF $75 MILLION?

10:12AM  13   A.   YEP.

10:12AM  14   Q.   THAT'S THE INNOVATION FEE THAT WALGREENS ADVANCED AT THE

10:12AM  15   END OF 2013, BEGINNING PART OF 2014; CORRECT?

10:12AM  16   A.   IT IS.

10:12AM  17   Q.   SO THAT MONEY DOES NOT COME IN IN SEPTEMBER, IT COMES IN

10:12AM  18   IN JANUARY OF 2014?

10:12AM  19   A.   CORRECT.

10:12AM  20   Q.   YOU WERE ALSO ASKED SOME QUESTIONS ABOUT THE SALE OF

10:12AM  21   227 PARK LANE IN ATHERTON.

10:12AM  22        DO YOU RECALL THAT TESTIMONY?

10:12AM  23   A.   I DO.

10:12AM  24   Q.   THAT HAPPENS IN 2018, DOESN'T IT?

10:13AM  25   A.   I HAVE NO IDEA WHEN IT WAS SOLD.

HOLMES RECROSS BY MR. LEACH                                          8625

10:13AM  1    Q.   THAT HAPPENS IN 2018 WELL -- AT THE SAME TIME PERIOD THAT

10:13AM  2    YOU AND MR. BALWANI ARE UNDER SOME SCRUTINY BY THE S.E.C.;

10:13AM  3    ISN'T THAT CORRECT?

10:13AM  4    A.   I DO NOT KNOW IF HE SOLD HIS HOUSE.

10:13AM  5    Q.   YOU DON'T KNOW THE TIME PERIOD OF WHEN THAT LLC WAS

10:13AM  6    DISSOLVED?

10:13AM  7    A.   I FOUND OUT THAT IT WAS DISSOLVED LATER.

10:13AM  8    Q.   BUT YOU DON'T KNOW WHEN?

10:13AM  9    A.   I DON'T.

10:13AM  10   Q.   OKAY.  AND YOU DON'T KNOW WHETHER IT WAS AT A TIME PERIOD

10:13AM  11   WHEN BOTH YOU AND MR. BALWANI WERE UNDER SCRUTINY BY THE

10:13AM  12   S.E.C.; CORRECT?

10:13AM  13   A.   I DON'T.  I DIDN'T DISSOLVE IT.

10:13AM  14   Q.   YOU WERE ASKED QUESTIONS ABOUT WHAT INVESTORS EXPECTED

10:13AM  15   FROM YOU IN TERMS OF YOUR -- WHAT YOU WERE TRYING TO

10:13AM  16   COMMUNICATE TO THEM IN TERMS OF YOUR VISION.

10:13AM  17        DO YOU RECALL SOME TESTIMONY AT THE END ABOUT THAT?

10:13AM  18   A.   I DO.

10:13AM  19   Q.   YOU MADE REPRESENTATIONS TO THERANOS INVESTORS ABOUT

10:14AM  20   THERANOS'S CURRENT CAPABILITIES, DIDN'T YOU?

10:14AM  21   A.   I'M SURE IN SOME CASES WE TALKED ABOUT IT.

10:14AM  22   Q.   OKAY.  AND YOU UNDERSTOOD THAT THEY WERE ENTITLED TO

10:14AM  23   TRUTHFUL ANSWERS ABOUT THERANOS'S CURRENT CAPABILITIES;

10:14AM  24   CORRECT?

10:14AM  25   A.   OF COURSE.

| | | |
|---|---|---|
| 10:14AM | 1 | MR. LEACH:  MAY I HAVE A MOMENT, YOUR HONOR? |
| 10:14AM | 2 | THE COURT:  YES. |
| 10:14AM | 3 | (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.) |
| 10:14AM | 4 | MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR. |
| 10:14AM | 5 | THANK YOU, MS. HOLMES. |
| 10:14AM | 6 | THE WITNESS:  THANK YOU. |
| 10:14AM | 7 | MR. DOWNEY:  NOTHING FURTHER. |
| 10:14AM | 8 | THE COURT:  MR. DOWNEY? |
| 10:14AM | 9 | MR. DOWNEY:  YOUR HONOR, I HAVE NO FURTHER QUESTIONS |
| 10:14AM | 10 | SUBJECT TO HOW YOUR HONOR WANTS TO HANDLE THAT EXHIBIT THAT I |
| 10:14AM | 11 | PASSED UP IN THE BINDER. |
| 10:15AM | 12 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:15AM | 13 | LET ME ASK YOU, SHOULD WE HAVE MS. HOLMES THEN STAND DOWN |
| 10:15AM | 14 | NOW?  DO YOU NEED HER? |
| 10:15AM | 15 | MR. DOWNEY:  IF -- I DON'T NEED HER FURTHER, I |
| 10:15AM | 16 | THINK, TO AUTHENTICATE IT, SO I THINK WE COULD HAVE THAT |
| 10:15AM | 17 | DISCUSSION WITHOUT MS. HOLMES. |
| 10:15AM | 18 | THE COURT:  ALL RIGHT. |
| 10:15AM | 19 | YOU CAN STAND DOWN.  THANK YOU. |
| 10:15AM | 20 | LET ME ASK YOU, MR. DOWNEY, DO WE NEED TO RESOLVE THIS |
| 10:15AM | 21 | BEFORE I ASK YOU ABOUT ANY OTHER EVIDENCE? |
| 10:15AM | 22 | MR. DOWNEY:  I THINK THAT MIGHT BE USEFUL, |
| 10:15AM | 23 | YOUR HONOR. |
| 10:15AM | 24 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 10:15AM | 25 | LET'S TAKE JUST A COUPLE OF MINUTES, LADIES AND GENTLEMEN. |

10:15AM 1    WE'RE GOING TO TAKE A RECESS.  I NEED TO TALK TO THE LAWYERS

10:15AM 2    ABOUT SOMETHING.

10:15AM 3         SO WE'LL TAKE A BRIEF RECESS.

10:16AM 4         (JURY OUT AT 10:16 A.M.)

10:16AM 5              THE COURT:  THANK YOU.  PLEASE BE SEATED.

10:16AM 6         THE RECORD SHOULD REFLECT THAT OUR JURY HAS LEFT.  ALL

10:16AM 7    COUNSEL AND MS. HOLMES REMAIN IN THE COURTROOM.

10:16AM 8         AND THIS IS -- LET'S SEE.  THIS IS REGARDING IS IT 7586A?

10:16AM 9    IS THAT THE EXHIBIT?

10:16AM 10             MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.  I THINK WHAT

10:16AM 11   HAD HAPPENED BEFORE, BUT I DON'T WANT TO --

10:16AM 12             THE COURT:  COME ON UP.

10:16AM 13             MR. DOWNEY:  I THINK WE SOUGHT TO ADMIT AND WE LAID

10:16AM 14   THE FOUNDATION.  I DON'T KNOW IF YOUR HONOR FORMALLY ADMITTED

10:16AM 15   IT.  I THINK IT WAS JUST A QUESTION OF MAKING IT MORE USER

10:16AM 16   FRIENDLY.

10:16AM 17        BUT I CERTAINLY WANT TO GIVE HIM AN OPPORTUNITY TO REVIEW

10:16AM 18   IT.  I KNOW HE HAS REVIEWED IT HISTORICALLY, AND IT'S THE

10:16AM 19   DESCRIPTION OF THE INVENTION THAT IS IN THERE.

10:16AM 20        I THINK THE REST OF IT MS. HOLMES TESTIFIED ABOUT, SO WE

10:16AM 21   DON'T NEED A FURTHER ENTRY OF THAT PART OF THE EXHIBIT.

10:16AM 22             THE COURT:  THIS IS 7 --

10:16AM 23             MR. DOWNEY:  I'M SORRY, YOUR HONOR.  YOU'RE TALKING

10:17AM 24   ABOUT THE -- I'M SORRY.  I'M CONFUSED BETWEEN MY EXHIBITS.

10:17AM 25        YEAH, YOUR HONOR WAS TALKING ABOUT THE CUSTOMER SERVICE,

```
10:17AM   1        YEAH.

10:17AM   2                THE COURT:  RIGHT.

10:17AM   3                MR. DOWNEY:  WE HAVE MOVED TO ADMIT THOSE EXHIBITS,

10:17AM   4        AND I HAVE THEM IN UNREDACTED FORM IF THAT'S THE PREFERENCE FOR

10:17AM   5        SOME REASON OF THE GOVERNMENT.  I SUSPECT NOT.

10:17AM   6          I THINK THE REDACTIONS WERE DESIGNED TO BE CONSISTENT WITH

10:17AM   7        SEVERAL DISCUSSIONS THAT YOUR HONOR HAD.

10:17AM   8                THE COURT:  WELL, LET'S TALK ABOUT THIS FIRST,

10:17AM   9        7586A.

10:17AM  10          MR. LEACH, I INDICATED I WOULD ALLOW YOUR TEAM TO LOOK AT

10:17AM  11        THIS.  I DON'T KNOW IF YOU'VE HAD OCCASION TO DO THAT, IF

10:17AM  12        YOU'RE PREPARED TO DISCUSS THIS.

10:17AM  13                MR. LEACH:  YOUR HONOR, I'M SORRY.  I HAVEN'T LOOKED

10:17AM  14        AT IT.  THIS WAS A 5-, 600 PAGE DOCUMENT.  THE DEFENSE GAVE ME

10:17AM  15        A BINDER OF EXCERPTS FROM IT.

10:17AM  16                MR. DOWNEY:  I THINK WE'RE TALKING ABOUT A DIFFERENT

10:17AM  17        EXHIBIT NOW.

10:17AM  18                MR. LEACH:  OH.

10:17AM  19                THE COURT:  THIS IS THE ONE THAT WAS ENTERED --

10:17AM  20        SOUGHT TO BE INTRODUCED TODAY, THIS MORNING.

10:17AM  21                MR. DOWNEY:  YEAH.

10:18AM  22                MR. LEACH:  WE OBJECT ON 401, 403, HEARSAY, AND

10:18AM  23        OTHER GROUNDS, YOUR HONOR.

10:18AM  24          I THINK THIS TOUCHES ON THE ISSUE OF, YOU KNOW, WHAT IS

10:18AM  25        THE RELEVANCE OF A CUSTOMER HAVING A POSITIVE EXPERIENCE IN THE
```

10:18AM 1    WELLNESS CENTER BEFORE THEY GET THEIR BLOOD TESTS.

10:18AM 2        I THINK THIS DOESN'T GO AT ALL TO THE ACCURACY OF THE

10:18AM 3    TESTS.

10:18AM 4        THE EMAIL THAT THEY'RE OFFERING HERE IS FROM AUGUST OF

10:18AM 5    2015, WHICH IS IN A TIME PERIOD WHEN THEY'RE UNDER SCRUTINY BY

10:18AM 6    THE FDA, CMS, AND "THE WALL STREET JOURNAL."

10:18AM 7        SO I THINK THERE ARE REASONS TO WONDER WHY THIS FEEDBACK

10:18AM 8    IS BEING CIRCULATED AND GENERATED.

10:18AM 9        I DON'T SEE HOW IT GOES TO MS. HOLMES'S STATE OF MIND

10:18AM 10   ABOUT REPRESENTATIONS OF THE TECHNOLOGY TO INVESTORS IN THE

10:18AM 11   2014 AND EARLY 2015 TIME PERIOD.

10:18AM 12       SO FOR ALL OF THE REASONS WE'VE DISCUSSED, WE RENEW OUR

10:19AM 13   OBJECTIONS TO THIS.

10:19AM 14       BUT I DON'T THINK I HAVE ANYTHING FURTHER THAN WHAT

10:19AM 15   MR. BOSTIC AND MS. VOLKAR HAVE ARTICULATED.

10:19AM 16           THE COURT:  AND MR. BOSTIC AND MS. VOLKAR'S

10:19AM 17   OBJECTIONS, THEY'RE STATED IN 1184 AS TO THE PRIOR DOCUMENT.

10:19AM 18       I THINK THOSE ARE TRANSFERRABLE, IF YOU WILL, IF I CAN USE

10:19AM 19   THAT PHRASE, FOR THIS PIECE ALSO.

10:19AM 20           MR. LEACH:  YES.

10:19AM 21           THE COURT:  I DO NOTE THAT MS. HOLMES DID TESTIFY

10:19AM 22   JUST A FEW MINUTES AGO ABOUT THE SAME ISSUES THAT ARE INVOLVED

10:19AM 23   IN THESE DOCUMENTS.  SHE WAS INFORMED ABOUT CUSTOMER SERVICE.

10:19AM 24   AS A MATTER OF FACT, I INTRODUCED A CUSTOMER SERVICE DOCUMENT

10:19AM 25   OVER OBJECTION OF THE GOVERNMENT, AND THAT DISPLAYED CUSTOMER

10:19AM 1    SATISFACTION.

10:19AM 2         SHE TESTIFIED TO THE EXTENT THAT THAT INFORMED HER STATE

10:19AM 3    OF MIND AS TO THE RELATIONSHIP WITH WALGREENS AT THAT MOMENT IN

10:19AM 4    TIME.

10:19AM 5         SO I DO THINK THAT THAT IS IN EVIDENCE, AND THE DEFENSE

10:20AM 6    HAS THAT TO DO WITH IT WHATEVER THEY WISH.

10:20AM 7         I'M LOOKING AT THESE, AND I DO, I DO THINK THAT I'M GOING

10:20AM 8    TO SUSTAIN THE OBJECTION AS TO THESE.  I LOOK AT THE TIME

10:20AM 9    PERIOD OF THESE VIS-A-VIS THE CASE AND THAT CAUSES SOME

10:20AM 10   CONCERN.

10:20AM 11        I ALSO LOOK AT THESE AND THEY'RE INVOLVING -- FIRST OF

10:20AM 12   ALL, THEY'RE FROM PHLEBOTOMISTS, AND THEY TALK ABOUT THEIR

10:20AM 13   CUSTOMER EXPERIENCE AT THE STORES.

10:20AM 14        THEY DON'T RELATE -- I HAVEN'T SEEN ONE -- AND IF THERE IS

10:20AM 15   ONE, PLEASE POINT IT OUT TO ME, MR. DOWNEY.

10:20AM 16        I DON'T SEE ANY RESPONSE HERE THAT SPEAKS TO ACCURACY AND

10:20AM 17   RELIABILITY.  THESE SEEM TO ALL BE RELATED TO THE PRICING.

10:20AM 18        AND THERE'S A COUPLE OF COMMENTS HERE ABOUT THE EXTRACTION

10:20AM 19   EXPERIENCE AND WHAT A POSITIVE EVENT THAT WAS.

10:20AM 20        BUT THEY SEEM TO RELATE TO PRICING.

10:21AM 21        AND INCORPORATING THE COMMENTS THAT THE COURT MADE AS TO

10:21AM 22   THE OTHER DOCUMENT, I JUST DON'T SEE THE RELEVANCE OF THAT.

10:21AM 23        I DO NOTE, AND I THINK THE RECORD REFLECTS, THAT YOUR

10:21AM 24   CLIENT WAS NOT DEPRIVED OR DENIED THE OPPORTUNITY TO DISCUSS

10:21AM 25   CUSTOMER EXPERIENCE AT WALGREENS.  SHE DID THAT ON YOUR, ON

10:21AM 1    YOUR REDIRECT, AND I ALLOWED THAT EXHIBIT TO COME IN.

10:21AM 2         SO I DO THINK THE RECORD REFLECTS THAT SHE DOES HAVE THAT,

10:21AM 3    AND SHE DID SPEAK TO THAT, FOR WHATEVER VALUE THAT HAS.

10:21AM 4         BUT I'M GOING TO DENY -- OR SUSTAIN THE OBJECTION, PARDON

10:21AM 5    ME, AS TO 7586A.

10:21AM 6         I SUPPOSE FOR HOUSEKEEPING WE SHOULD TURN TO THE OTHER

10:21AM 7    DOCUMENT AS WELL.

10:21AM 8         MR. DOWNEY:  YOUR HONOR, I DON'T WANT TO BELABOR IT,

10:21AM 9    BUT I JUST WANT TO SAY FOR THE RECORD THAT IN 7586A, THE FIRST

10:21AM 10   ENTRY IN THE EMAIL WHICH IS THEN REFLECTED IN THE ATTACHMENT,

10:21AM 11   WHICH IS A REPORT SET, IS A REPORT ON A PATIENT COMPARING HIS

10:22AM 12   TEST RESULTS TO THE TEST RESULTS FROM ANOTHER LAB THAT HE USES

10:22AM 13   AS A PHYSICIAN, AND HE FINDS THE RESULTS TO BE -- THE WORD HE

10:22AM 14   USES IS "CONGRUENT," WHICH I THINK HE MEANS THEY'RE EFFECTIVELY

10:22AM 15   THE SAME.

10:22AM 16        SO I ONLY HIGHLIGHT THAT TO SAY THAT WE DID ACTUALLY TRY

10:22AM 17   TO INCLUDE SEVERAL INSTANCES WHERE THERE WERE COMMENTS AS TO

10:22AM 18   ACCURACY, AND YOUR HONOR IS FAMILIAR WITH ALL OF THE COMMENTS

10:22AM 19   WE HAVE MADE BEFORE ABOUT WHAT RETURN VISITS REFLECT.

10:22AM 20        BUT PUTTING THAT TO THE SIDE, THERE ARE COMMENTS IN HERE

10:22AM 21   THAT GO TO THE ACCURACY ISSUE.

10:22AM 22        I WOULD SAY IT'S A BIT OF A -- IT LEAVES US AT A BIT OF A

10:22AM 23   DISPARITY WITH THE GOVERNMENT EVIDENCE WHERE THEY HAVE BEEN

10:22AM 24   ABLE TO INTRODUCE ANECDOTES THAT THE DEFENDANT KNOWS NOTHING

10:22AM 25   ABOUT WHERE A PATIENT COMES IN AND SAYS, I HAVE GOTTEN AN

10:23AM 1    INACCURATE RESULT.

10:23AM 2         WE HAVE EVIDENCE THAT THE DEFENDANT KNEW ABOUT WHERE

10:23AM 3    SOMEONE WITH FAMILIARITY WITH THE BLOOD TESTING PROCESS SAYS, I

10:23AM 4    THINK THESE RESULTS ARE VERY ACCURATE, AND WE CAN'T INTRODUCE

10:23AM 5    THAT.

10:23AM 6         SO THAT DOES LEAVE US AT A DISPARITY, BUT I DON'T WANT TO

10:23AM 7    BELABOR THE ISSUE.

10:23AM 8              THE COURT:  WELL, LET ME REVISIT THAT, AND THANK YOU

10:23AM 9    FOR POINTING THAT OUT.

10:23AM 10        I LOOK AT THE ACTUAL COMMENTS FROM THE PHLEBOTOMISTS, AND

10:23AM 11   THOSE WERE WHAT I WAS LOOKING AT IN THE OTHER DOCUMENT, AND

10:23AM 12   THOSE WERE PHLEBOTOMIST REPORTS.

10:23AM 13        WE TALKED ABOUT THE PHLEBOTOMIST BEING EMPLOYEES OF THE

10:23AM 14   COMPANY, AND THEY WERE WRITING THEIR COMMENTS FROM THE PATIENTS

10:23AM 15   THAT CAME IN.

10:23AM 16        THOSE EXPERIENCES WERE REALLY RELATED TO THE CUSTOMER

10:23AM 17   EXPERIENCE OF THE DRAW, THE LIGHTING, ALL OF THAT TYPE OF

10:23AM 18   THING.  THAT'S WHAT WE DISCUSSED PREVIOUSLY.

10:23AM 19        AS I NOTED, THERE WEREN'T -- IN THAT PREVIOUS SET, THERE

10:23AM 20   DID NOT SEEM TO BE ANYTHING, ANYTHING AS TO ACCURACY.

10:23AM 21        MR. DOWNEY, YOU POINT OUT IN THE FIRST, WHERE IT SAYS

10:24AM 22   HIGHLIGHTS, GUEST QUOTE, THIS MR. KARPEL IS FORWARDING THIS

10:24AM 23   EMAIL.

10:24AM 24        AND I DO SEE THAT LAST SENTENCE, LAB CROSS-CHECKED

10:24AM 25   CONGRUENT.

10:24AM 1        AND YOU SUGGEST THAT THAT IS A STATEMENT THAT POSSIBLY

10:24AM 2   RELATES TO ACCURACY?

10:24AM 3            MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

10:24AM 4            THE COURT:  OKAY.

10:24AM 5        MR. LEACH, ANY COMMENT?

10:24AM 6            MR. LEACH:  NO.  WE'LL STAND ON OUR PRIOR ARGUMENTS,

10:24AM 7   YOUR HONOR, OTHER THAN I THINK WHAT THEY REALLY WANT THIS IN

10:24AM 8   FOR IS THE TRUTH, A COMMENT BY AN ANONYMOUS PHYSICIAN ABOUT

10:24AM 9   UNKNOWN TESTS ON UNKNOWN DATES.

10:24AM 10       AND WHATEVER THE WORD "CONGRUENT" MEANS COMPARED TO OTHER

10:24AM 11  LABS IS REALLY IN 403 LAND, I SUBMIT, AND THIS STRAY COMMENT

10:24AM 12  AND LENGTHY EXHIBIT I REALLY DON'T THINK HAS THE PROBATIVE

10:24AM 13  VALUE THAT THEY'RE ARGUING FOR.

10:25AM 14           THE COURT:  ALL RIGHT.  THANK YOU.

10:25AM 15       WELL, LET ME SAY THAT YOU WOULD NOT INTRODUCE THIS FOR THE

10:25AM 16  TRUTH OF THE MATTER ASSERTED, BUT JUST AS TO INFORM MS. HOLMES

10:25AM 17  AS TO HER INFORMATION AND BASE OF KNOWLEDGE FOR HOW THE LABS

10:25AM 18  WERE PERFORMING ON AUGUST 23RD, 2015?

10:25AM 19           MR. DOWNEY:  WELL, I THINK IF IT'S ADMISSIBLE, IT'S

10:25AM 20  ADMISSIBLE UNDER SOME EXCEPTION, SO I WILL SAY IT CERTAINLY IS

10:25AM 21  RELEVANT TO THAT.

10:25AM 22       AND I DON'T THINK THAT I CAN OFFER IT FOR THE TRUTH OF THE

10:25AM 23  MATTER ASSERTED, BUT I DO THINK IT GOES TO HER STATE OF MIND.

10:25AM 24       I THINK THE OTHER TESTIMONY, JUST TO REMIND YOUR HONOR, IS

10:25AM 25  THAT THIS IS A ROUTINE WEEKLY OR BIWEEKLY TRANSMISSION, SO I

10:25AM 1      THINK IT WOULD QUALIFY AS A BUSINESS RECORD AS WELL.

10:25AM 2          BUT --

10:25AM 3              THE COURT:  WELL, I DON'T KNOW IF THERE WAS A

10:25AM 4      FOUNDATION FOR THIS PARTICULAR DOCUMENT.  THAT MAY HAVE GONE

10:25AM 5      FOR THE OTHERS, AND AS I SAID BEFORE WHEN WE WERE TALKING ABOUT

10:25AM 6      THAT OTHER PACKET, THERE WAS NO EVIDENCE THAT MS. HOLMES

10:25AM 7      ACTUALLY READ THAT.  THAT WAS THAT THICK STACK OF PHLEBOTOMIST

10:26AM 8      REPORTS AND --

10:26AM 9              MR. DOWNEY:  WHAT I OFFERED TODAY WAS JUST A SUBSET.

10:26AM 10             THE COURT:  CORRECT, CORRECT.  I UNDERSTOOD THAT.

10:26AM 11             MR. DOWNEY:  YEAH, YEAH.

10:26AM 12             THE COURT:  RIGHT.

10:26AM 13         SO LET ME DO THIS, I'M GOING TO REVISIT -- I WILL ADMIT

10:26AM 14     THE FIRST PAGE, THE EMAIL.

10:26AM 15             MR. DOWNEY:  OKAY.

10:26AM 16             THE COURT:  AND THAT WILL BE ADMITTED NOT FOR THE

10:26AM 17     TRUTH OF THE MATTER ASSERTED, BUT SOLELY FOR THE ISSUE OF

10:26AM 18     INFORMING MS. HOLMES'S KNOWLEDGE, STATE OF MIND AS TO

10:26AM 19     WALGREENS'S RELATIONSHIP IN THE DRAWS AND THE TESTING THAT WAS

10:26AM 20     GOING THERE.

10:26AM 21         THE JURY CAN GIVE IT WHATEVER WEIGHT THEY FEEL IS

10:26AM 22     APPROPRIATE, AND SO I'LL ADMIT THAT ONLY.

10:26AM 23         I'M NOT GOING TO ADMIT THE OTHER PHLEBOTOMIST REPORTS FOR

10:26AM 24     THE SAME REASONS THAT I INDICATED IN THE OTHER DOCUMENTS.

10:26AM 25             AND AS TO THE REQUEST TO -- THE RENEWED REQUEST, YES, IT'S

8635

10:27AM 1    1180, TO ADMIT CUSTOMER FEEDBACK RECORDS, I'VE READ 1180 AND

10:27AM 2    THE GOVERNMENT'S 1184 AS TO THAT, AND I'M NOT GOING TO DISTURB

10:27AM 3    THE COURT'S PREVIOUS ORDER.

10:27AM 4        I THINK THAT THE COURT'S PREVIOUS ORDER SUSTAINING THE

10:27AM 5    OBJECTION WILL REMAIN.  I HAVEN'T HEARD ANYTHING THAT CHANGES

10:27AM 6    THE COURT'S POSITION ON THAT.

10:27AM 7        AS I SAID, I WAS CURIOUS WHETHER OR NOT THERE WOULD BE

10:27AM 8    TESTIMONY ABOUT ACTUAL DOCUMENTS AND THAT SET BEING READ, AND

10:27AM 9    THE RECORD REFLECTS -- I DON'T THINK THERE'S A RECORD OF THAT.

10:27AM 10       SO I'M NOT GOING TO DISTURB THAT ORDER.

10:27AM 11       BUT I WILL ADMIT THIS.  WE CAN DO THAT IN FRONT OF THE

10:27AM 12   JURY WHEN THEY RETURN.

10:27AM 13           MR. DOWNEY:  YOUR HONOR, I CAN HIGHLIGHT THESE.

10:27AM 14       BUT IN THE, IN THE ATTACHMENT -- I THINK THERE HAS BEEN

10:27AM 15   PRIOR TESTIMONY IN THE CASE FROM MR. EDLIN THAT THE SOURCES OF

10:28AM 16   THESE COMMENTS IN THESE ATTACHMENTS ARE TWO-FOLD.

10:28AM 17       ONE IS THAT THERE'S PHLEBOTOMIST FEEDBACK, AND IF -- ON

10:28AM 18   THE PAGES THAT WE'LL NUMBER, I'M ACTUALLY LOOKING AT THE FULL

10:28AM 19   EXHIBIT, BUT BETWEEN 1784 AND 1865, THOSE ARE PHLEBOTOMIST

10:28AM 20   COMMENTS.

10:28AM 21       SOME OF THE OTHER COMMENTS ARE DIRECT COMMENTS FROM THE

10:28AM 22   PATIENTS THEMSELVES.

10:28AM 23       SO THAT'S ONE THING THAT I WANT TO SAY.

10:28AM 24       THE OTHER -- THE OTHER, YOU KNOW, WHERE THEIR QUOTES ARE

10:28AM 25   EMBODIED OR EMBEDDED IN WHAT WAS SAID.

10:28AM   1            THE OTHER THING I WANT TO MENTION, YOUR HONOR, IS SIMILAR

10:28AM   2      TO THE FIRST ENTRY, WHEN WE DID THIS REDACTION, SOME OF THE

10:28AM   3      ENTRIES REFLECT COMMENTARY FROM PATIENTS THAT I ALSO ENDEAVORED

10:28AM   4      TO EXCLUDE THINGS ACCORDING TO CERTAIN CRITERIA, BUT THINGS

10:28AM   5      WHICH RELATED TO ACCURACY, I THINK THERE WERE A FEW MORE THAN

10:28AM   6      JUST THIS FIRST EMAIL ENTRY.

10:29AM   7            SO IF I TOOK A MOMENT, I COULD GO THROUGH THEM AND

10:29AM   8      IDENTIFY THOSE FOR YOUR HONOR.  BUT THEY'RE TO THE SAME EFFECT,

10:29AM   9      I THINK, AND WOULD COME IN UNDER THE SAME THEORY.

10:29AM  10            THE COURT:  WELL, I SEE ON 48542, THAT'S THE EMAIL

10:29AM  11      THAT I JUST ADMITTED.  THIS IS NOT PAGINATED, I'M SORRY.

10:29AM  12            MR. DOWNEY:  RIGHT.

10:29AM  13            THE COURT:  IT'S THE AUGUST 15TH, 2015.

10:29AM  14      AND WE DON'T KNOW -- I KNOW THERE'S BEEN SOME TESTIMONY

10:29AM  15      THAT THE PHLEBOTOMISTS TOOK INFORMATION FROM THE PATIENTS AND

10:29AM  16      THEN PRESUMABLY THEY ENTERED IT INTO WHATEVER THAT DATABASE IS.

10:29AM  17            I THINK THERE'S SOME TESTIMONY THAT THE TECHNOLOGY ALLOWED

10:29AM  18      A CUSTOMER, A PATIENT, TO SELF --

10:29AM  19            MR. DOWNEY:  THAT'S RIGHT.

10:29AM  20            THE COURT:  -- ADD THAT INFORMATION.  WE DON'T KNOW

10:29AM  21      WHICH IS WHICH HERE.

10:30AM  22            I DON'T THINK THERE'S A -- I SUPPOSE WE COULD LOOK AT THE

10:30AM  23      GRAMMAR AND KIND OF INTUIT THAT, BUT --

10:30AM  24            MR. DOWNEY:  I THINK THAT IS THE NATURE OF IT,

10:30AM  25      YOUR HONOR.

| | | |
|---|---|---|
| 10:30AM | 1 | THE COURT:  RIGHT.  RIGHT. |
| 10:30AM | 2 | SO LOOKING AT THE RELIABILITY OF THAT, I THINK THAT ALSO |
| 10:30AM | 3 | INFORMS THE COURT AS TO ITS DECISION. |
| 10:30AM | 4 | SO I THINK BY ADMITTING THE DOCUMENT, THE EMAIL, AS I |
| 10:30AM | 5 | SAID, IT DID CAPTURE ONE OF THE ACCURACIES THAT YOU'VE SHOWN |
| 10:30AM | 6 | HERE.  IT'S ACTUALLY A -- THE ACTUAL REPORT. |
| 10:30AM | 7 | ALL RIGHT.  THANK YOU. |
| 10:30AM | 8 | ANYTHING FURTHER ON THIS THEN? |
| 10:30AM | 9 | MR. LEACH:  NO, YOUR HONOR. |
| 10:30AM | 10 | MR. DOWNEY:  NO, YOUR HONOR. |
| 10:30AM | 11 | SHOULD WE HANDLE THE FDA DOCUMENT?  I DON'T HAVE THE |
| 10:30AM | 12 | EXHIBIT NUMBER WITH ME. |
| 10:30AM | 13 | THE COURT:  WHY DON'T WE -- WE SHOULD DO THAT IN |
| 10:30AM | 14 | FRONT OF THE JURY. |
| 10:30AM | 15 | MR. DOWNEY:  YES. |
| 10:30AM | 16 | THE COURT:  I THINK WE WILL ADMIT THAT. |
| 10:30AM | 17 | MR. DOWNEY:  AND MAYBE MR. LEACH CAN LET US KNOW |
| 10:30AM | 18 | BEFORE WE RESUME WITH THE JURY WHERE HE IS ON THAT. |
| 10:30AM | 19 | THE COURT:  OKAY. |
| 10:30AM | 20 | MR. LEACH? |
| 10:30AM | 21 | MR. LEACH:  AS I WAS SAYING, YOUR HONOR, IT'S A 500 |
| 10:30AM | 22 | PAGE DOCUMENT.  I GOT THE EXCERPTS AT 8:40 THIS MORNING.  I |
| 10:30AM | 23 | WANT TO BRIEFLY REVIEW THE EXCERPTS TO MAKE SURE THAT -- |
| 10:31AM | 24 | THE COURT:  RIGHT. |
| 10:31AM | 25 | MR. LEACH:  -- THERE'S NOT SOME LEVEL OF CHERRY |

10:31AM 1   PICKING, WHICH I NEVER THINK MY COLLEAGUES WOULD DO.

10:31AM 2       BUT I JUST HAVE NOT HAD TIME TO LOOK AT IT AND I

10:31AM 3   RESPECTFULLY REQUEST FIVE OR TEN MINUTES TO DO THAT.

10:31AM 4       MR. DOWNEY:  YEAH.

10:31AM 5       AND I WILL SAY -- MR. LEACH WOULDN'T APPRECIATE THIS GIVEN

10:31AM 6   THAT HE WAS DOING OTHER THINGS, IT'S JUST THE FIRST 167 PAGES

10:31AM 7   OF THE DESCRIPTION, WHICH IS MOSTLY DIAGRAMS.

10:31AM 8       THE COURT:  YOU HAVE THREE MINUTES, MR. LEACH.

10:31AM 9       MR. DOWNEY:  I THINK HE'S READ IT BEFORE, UNLESS I

10:31AM 10   DON'T KNOW MY MAN.

10:31AM 11       THE COURT:  CHERRY PICKING USED TO BE THE COIN OF

10:31AM 12   THE REALM HERE IN THE VALLEY OF THE HEART'S DELIGHT.  THAT WAS

10:31AM 13   MANY DECADES AGO.  BUT HOPEFULLY THERE'S NO ORCHARD IN THE

10:31AM 14   COURTROOM, SO --

10:31AM 15       ALL RIGHT.  WHAT SHOULD WE DO?  SHOULD WE TAKE A BREAK NOW

10:31AM 16   BEFORE WE --

10:31AM 17       MR. DOWNEY:  I THINK IT WOULD BE HELPFUL, FOR

10:31AM 18   EFFICIENCY, IF WE CAN HAVE ABOUT ANOTHER 20 MINUTES.

10:31AM 19       IS THAT ALL RIGHT?

10:31AM 20       THE COURT:  SURE.  AND YOU'LL TELL US WHETHER OR NOT

10:32AM 21   WE HAVE ANOTHER WITNESS?

10:32AM 22       MR. DOWNEY:  YES.

10:32AM 23       THE COURT:  ALL RIGHT.  LET'S DO THAT.  THANK YOU.

10:32AM 24       THE CLERK:  COURT IS IN RECESS.

10:32AM 25       (RECESS FROM 10:32 A.M. UNTIL 11:03 A.M.)

11:04AM 1          THE COURT:  WE'RE BACK ON THE RECORD IN THE HOLMES

11:04AM 2     MATTER.  ALL COUNSEL ARE PRESENT AND MS. HOLMES IS PRESENT.

11:04AM 3          WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.

11:04AM 4          MR. LEACH, DID YOU HAVE AN OPPORTUNITY TO REVIEW THE

11:04AM 5     EXHIBIT?

11:04AM 6          MR. LEACH:  I DID, YOUR HONOR, AND I HAVE NO

11:04AM 7     OBJECTION TO 1328A -- THE MASKS AND DISTANCE ARE CONSPIRING

11:04AM 8     AGAINST ME.

11:04AM 9          I HAVE NO OBJECTION TO THE ADMISSION OF 1328A FOR THE

11:04AM 10    NONHEARSAY PURPOSE OF THIS BEING FILED AND SUBMITTED TO THE

11:04AM 11    FDA, WHICH I THINK WAS THE LIMITATION IMPOSED BY THE COURT

11:04AM 12    PREVIOUSLY.

11:04AM 13         BUT I'VE REVIEWED THE EXCERPTS AND I DON'T OBJECT TO THE

11:04AM 14    EXCERPTS.

11:04AM 15         THE COURT:  ALL RIGHT.  THANK YOU.

11:04AM 16    MR. DOWNEY, THIS IS BEING INTRODUCED FOR WHAT PURPOSE?

11:04AM 17         MR. DOWNEY:  IT'S BEING INTRODUCED TO REBUT THE

11:05AM 18    GOVERNMENT'S CLAIM THAT THE DEFENDANT BELIEVED THAT THE SERIES

11:05AM 19    4 DID NOT FUNCTION PROPERLY, AND THIS EVIDENCE DEMONSTRATES

11:05AM 20    WHAT A LARGE GROUP OF PEOPLE AT THERANOS BELIEVED ABOUT THAT

11:05AM 21    SYSTEM AND FILED.

11:05AM 22         SO IT CLEARLY GOES TO HER STATE OF MIND, AMONGST OTHER

11:05AM 23    THINGS.

11:05AM 24         THE COURT:  SO IS IT OFFERED, AGAIN, FOR THE TRUTH

11:05AM 25    OF THE MATTER ASSERTED IN THE DOCUMENT?

11:05AM  1          MR. DOWNEY:  IT'S NOT OFFERED FOR THE TRUTH,

11:05AM  2     YOUR HONOR.

11:05AM  3          THE COURT:  ALL RIGHT.  AS TO HER UNDERSTANDING OF

11:05AM  4     THE DEVICES, SHOULD I CALL IT, OR --

11:05AM  5          MR. DOWNEY:  THE SYSTEM I THINK IS THE APPROPRIATE

11:05AM  6     DESIGNATION.

11:05AM  7          AND I WOULD SAY THE CORRECT TERM IS "VALIDITY."

11:05AM  8          THE COURT:  MR. LEACH?

11:05AM  9          MR. LEACH:  SUBJECT TO THAT, YOUR HONOR, WE'RE FINE.

11:05AM  10          THE COURT:  OKAY.  ALL RIGHT.

11:06AM  11     SHOULD WE BRING THE JURY IN THEN?

11:06AM  12          MR. LEACH:  YES, YOUR HONOR.

11:06AM  13          MR. DOWNEY:  AND SHALL I MOVE WHEN THE JURY COMES IN

11:06AM  14     7586A AND 1328A.

11:06AM  15          THE COURT:  YES, LET'S DO THAT.

11:06AM  16          MR. DOWNEY:  THANK YOU.

11:08AM  17          (JURY IN AT 11:08 A.M.)

11:08AM  18          THE COURT:  ALL RIGHT.  THANK YOU.

11:08AM  19     PLEASE BE SEATED.  WE'RE BACK ON THE RECORD.  ALL COUNSEL

11:08AM  20     ARE PRESENT.  OUR JURY IS PRESENT.  MS. HOLMES IS PRESENT.

11:08AM  21     MR. DOWNEY, YOU HAD -- YOU WOULD LIKE TO MOVE SOME PIECES

11:08AM  22     INTO EVIDENCE, SOME DOCUMENTS INTO EVIDENCE?

11:08AM  23          MR. DOWNEY:  YES, SIR.

11:08AM  24     I THINK WE HAVE PENDING MOTIONS TO ADMIT EXHIBIT 7586A.

11:08AM  25          THE COURT:  YES.  AND SUBJECT TO YOUR COMMENTS,

11:09AM 1    MR. LEACH, ANYTHING FURTHER ON THIS?

11:09AM 2            MR. LEACH:  NO, YOUR HONOR.

11:09AM 3            THE COURT:  ALL RIGHT.  I'LL NOTE THOSE COMMENTS.

11:09AM 4        I'LL ADMIT 7586A, THE FIRST PAGE, WHICH IS THE EMAIL.

11:09AM 5        AND THIS IS ADMITTED, LADIES AND GENTLEMEN, AGAIN, NOT FOR

11:09AM 6    THE TRUTH OF THE MATTER ASSERTED IN THE EMAIL, BUT AS TO THE

11:09AM 7    STATE OF MIND, AS IT INFORMS THE STATE OF MIND OF MS. HOLMES AS

11:09AM 8    TO THE ARRANGEMENT WITH WALGREENS.

11:09AM 9        AND FOR THAT LIMITED PURPOSE IT'S ADMITTED.

11:09AM 10        (DEFENDANT'S EXHIBIT 7586A, PAGE 1, LIMITED PURPOSE ONLY,

11:09AM 11    WAS RECEIVED IN EVIDENCE.)

11:09AM 12            THE COURT:  AND YOU HAVE ANOTHER DOCUMENT?

11:09AM 13            MR. DOWNEY:  YES, YOUR HONOR.  WE STILL HAVE PENDING

11:09AM 14    THE MOTION TO ADMIT 13288A.

11:09AM 15            THE COURT:  ALL RIGHT.  MR. LEACH?

11:09AM 16            MR. LEACH:  NOTHING FURTHER.

11:09AM 17            THE COURT:  ALL RIGHT.  THAT WILL BE ADMITTED.

11:09AM 18        THIS IS ADMITTED FOR THE SAME REASON AS THE OTHER PURPOSE,

11:09AM 19    RATHER, AS THE OTHER DOCUMENT, AS TO THE STATE OF MIND OF

11:10AM 20    MS. HOLMES.  NOT FOR THE TRUTH OF THE MATTER ASSERTED IN THE

11:10AM 21    DOCUMENT, BUT ONLY AS TO THE ISSUE OF THE STATE OF MIND OF

11:10AM 22    MS. HOLMES AS TO SYSTEM VALIDITY.

11:10AM 23        AND FOR THAT LIMITED PURPOSE ONLY, THAT IS ADMITTED.

11:10AM 24        (DEFENDANT'S EXHIBIT 13288A, LIMITED PURPOSE, WAS RECEIVED

11:10AM 25    IN EVIDENCE.)

11:10AM  1          MR. DOWNEY:  AND, YOUR HONOR, WITH THAT RESOLVED,

11:10AM  2     MS. HOLMES RESTS.

11:10AM  3          THE COURT:  ALL RIGHT.

11:10AM  4     LADIES AND GENTLEMEN, THIS MEANS THAT THE DEFENSE HAS

11:10AM  5     RESTED.  THEY HAVE PUT ALL IN OF THE EVIDENCE THAT THEY WISH IN

11:10AM  6     THE CASE.

11:10AM  7          I'LL NOW TURN TO THE GOVERNMENT AND ASK IF THE GOVERNMENT

11:10AM  8     HAS ANY REBUTTAL EVIDENCE?

11:10AM  9          MR. SCHENK:  YOUR HONOR, NO, THE GOVERNMENT HAS NO

11:10AM  10    REBUTTAL CASE.

11:10AM  11         THE COURT:  ALL RIGHT.  THE GOVERNMENT HAS

11:10AM  12    PREVIOUSLY RESTED.

11:10AM  13    LADIES AND GENTLEMEN, WHAT THIS MEANS THEN IS THAT ALL OF

11:10AM  14    THE EVIDENCE THAT THE JURY WILL NEED AND REQUIRE TO DELIBERATE

11:10AM  15    AND MAKE THEIR DECISIONS IS NOW COMPLETED.

11:10AM  16    THE NEXT PHASE OF THE CASE IS FOR YOU TO HEAR CLOSING

11:11AM  17    ARGUMENTS IN THE MATTER.

11:11AM  18    BEFORE YOU HEAR THE CLOSING ARGUMENTS -- AFTER YOU HEAR

11:11AM  19    THE CLOSING ARGUMENTS YOU'LL HEAR THE INSTRUCTIONS, PARDON ME.

11:11AM  20    BUT WE HAVE NOT COMPLETED THE INSTRUCTIONS YET, AND I NEED

11:11AM  21    TO TALK WITH THE LAWYERS ABOUT GOING OVER THOSE INSTRUCTIONS

11:11AM  22    AND TO PREPARE THOSE SO THAT WE CAN THEN PRESENT THE ARGUMENT

11:11AM  23    TO YOU AND HAVE YOU BEGIN YOUR DELIBERATIONS.

11:11AM  24    I WANT TO TALK ABOUT TIMING FOR THIS FOR JUST A MOMENT

11:11AM  25    WITH YOU.

11:11AM  1        MY SENSE IS THAT COUNSEL AND THE COURT WILL MOST LIKELY

11:11AM  2   MEET THIS WEEK TO ACCOMPLISH THIS TASK OF COMPLETING THE JURY

11:11AM  3   INSTRUCTIONS, REVIEWING THE LAW THAT APPLIES TO THE CASE,

11:11AM  4   PREPARING THOSE FINAL INSTRUCTIONS THAT YOU WILL HAVE.

11:11AM  5        MY SENSE IS THAT IT WILL LIKELY TAKE THE REST OF THIS WEEK

11:11AM  6   TO ACCOMPLISH THAT.

11:12AM  7        I'M LOOKING AT THE SCHEDULE, AND I -- IT SEEMS TO ME THAT

11:12AM  8   WE MAY BE ABLE TO ENGAGE CLOSING ARGUMENTS -- AND LET ME ASK

11:12AM  9   COUNSEL TO CHIME IN ON THIS -- PERHAPS DECEMBER 16TH AND 17TH.

11:12AM  10       BUT LET ME JUST -- KUNYU, DO YOU HAVE A CALENDAR FOR ME?

11:12AM  11           THE CLERK:  (HANDING.)

11:12AM  12           THE COURT:  THANK YOU.

11:12AM  13       OF COURSE I RECOGNIZE THAT THE HOLIDAY SEASON PRESENTS

11:12AM  14   SOME ISSUES, BUT I DO WANT TO SUGGEST SOMETHING TO YOU, LADIES

11:12AM  15   AND GENTLEMEN OF THE JURY.  I'M PROBABLY GOING TO BREAK FOR A

11:12AM  16   MOMENT AND ALLOW YOU TO THINK ABOUT THIS, MAKE PHONE CALLS AND

11:12AM  17   LOOK AT YOUR SCHEDULES.

11:12AM  18       BUT WHAT I WOULD CONTEMPLATE IS THAT WE, REGRETTABLY, ARE

11:13AM  19   NOT AVAILABLE ON THE 14TH AND 15TH OF NEXT WEEK.

11:13AM  20       SO AS I SAID, MY THOUGHT IS THAT -- AND I'M GOING TO TALK

11:13AM  21   TO THE LAWYERS SOME MORE, BUT IT SEEMS LIKE IF WE AIM, IF WE

11:13AM  22   AIM TOWARDS THE 16TH AND 17TH FOR CLOSING ARGUMENTS --

11:13AM  23       AND LET ME ASK COUNSEL, DO COUNSEL THINK THAT CLOSING

11:13AM  24   ARGUMENTS WILL -- WE SHOULD RESERVE TWO DAYS FOR THAT?

11:13AM  25           MR. SCHENK:  YES, YOUR HONOR, I THINK THAT'S

11:13AM   1        APPROPRIATE.

11:13AM   2                 MR. DOWNEY:  THAT MAKES SENSE TO US, YOUR HONOR.

11:13AM   3                 THE COURT:  ALL RIGHT.  THANK YOU.

11:13AM   4        SO IT LOOKS LIKE THOSE TWO DATES WOULD BE THE EARLIEST

11:13AM   5   DATE THAT WE WOULD ENGAGE CLOSING FINAL ARGUMENTS FROM BOTH

11:13AM   6   SIDES, RECOGNIZING THEN THAT DELIBERATIONS WOULD BEGIN THE WEEK

11:13AM   7   OF THE 20TH.

11:13AM   8        NOW, LET ME SAY, THAT'S A HOLIDAY WEEK.  I RECOGNIZE THAT.

11:13AM   9   AND I WANT YOU TO KNOW THAT I WOULD -- WE WON'T BE IN

11:13AM   10  DELIBERATIONS ON THE 24TH.  LET ME JUST SAY THAT AT THE

11:13AM   11  OUTRIGHT.

11:13AM   12       IT COULD BE THAT WE DON'T HAVE TO SCHEDULE DELIBERATIONS

11:14AM   13  ON THE 23RD AS WELL.

11:14AM   14       IF WE GO INTO THE FOLLOWING WEEK, AGAIN, WE COULD SCHEDULE

11:14AM   15  DELIBERATIONS NOT EVERY DAY, BUT YOU COULD SCHEDULE THOSE AS

11:14AM   16  YOU, AS YOU NEED AND AS YOU DESIRE.

11:14AM   17       I'M LOOKING AT THIS SCHEDULE, BUT I KNOW THIS EXCEEDS THE

11:14AM   18  TIME THAT WE TOLD YOU THIS TRIAL WOULD TAKE, HOW MUCH TIME YOU

11:14AM   19  WOULD NEED TO INVEST.  THIS EXTENDS BEYOND THAT.

11:14AM   20       I DON'T KNOW IF ANY OF YOU HAVE MADE PLANS FOR THE

11:14AM   21  HOLIDAYS THAT MIGHT CAUSE A DISRUPTION IN THIS SCHEDULE, BUT I

11:14AM   22  WANTED TO SHARE THIS SCHEDULE WITH YOU NOW.

11:14AM   23       AND I'LL ASK MS. KRATZMANN TO -- I THINK WE HAVE SOME

11:14AM   24  CALENDARS THAT WE CAN PROVIDE.

11:14AM   25       PERHAPS, COUNSEL, WE'LL TAKE ANOTHER RECESS TO ALLOW THE

11:14AM  1      JURY TO ABSORB THIS.

11:14AM  2           LOOK AT YOUR SCHEDULES, AND IF YOU NEED TO MAKE PHONE

11:15AM  3      CALLS, THAT TYPE OF THING, I'LL INVITE YOU TO DO THAT.  AND

11:15AM  4      THEN WE'LL COME BACK AND I CAN ASK YOU WHETHER OR NOT THE

11:15AM  5      SCHEDULE THAT I'VE PROPOSED HERE IS GOING TO CREATE AN ISSUE

11:15AM  6      FOR YOU OR ANY PROBLEMS, AND WE CAN DISCUSS FURTHER.

11:15AM  7           THIS IS REALLY REGARDING YOUR AVAILABILITY FOR THE

11:15AM  8      DELIBERATIONS.

11:15AM  9           SO, AGAIN, IT'S ANTICIPATED THAT FINAL ARGUMENTS WOULD

11:15AM  10     ENCOMPASS THE 16TH AND 17TH OF DECEMBER, WHICH MEANS THAT IF WE

11:15AM  11     BROKE TODAY, WE WOULDN'T SEE YOU AGAIN FOR ANOTHER WEEK.

11:15AM  12          WE WOULD BE BACK IN SESSION ON THE 16TH AND 17TH.  YOU

11:15AM  13     WOULD GET THE CASE FRIDAY, THE 17TH, AND THEN BEGIN

11:15AM  14     DELIBERATIONS THE FOLLOWING WEEK AND THE WEEK AFTER THAT AS

11:15AM  15     NEEDED.

11:15AM  16          THERE IS AN ALTERNATIVE.  I JUST WANT TO SHARE THIS WITH

11:15AM  17     YOU ALSO.  IT'S POSSIBLE THAT WE CAN GO BEYOND THE 25TH OF

11:15AM  18     DECEMBER AND THE 31ST IF NEEDED AND START DELIBERATIONS IN

11:16AM  19     JANUARY.  THAT'S PROBABLY NOT THE PREFERABLE, BUT THAT'S

11:16AM  20     AVAILABLE.

11:16AM  21          BUT I JUST WANT YOU TO CONSIDER THAT.

11:16AM  22          SO LET'S -- COUNSEL, ANYTHING YOU WANT TO ADD TO THIS

11:16AM  23     REGARDING SCHEDULING?

11:16AM  24               MR. SCHENK:  NO.  THANK YOU.

11:16AM  25               MR. DOWNEY:  NOTHING FROM US, YOUR HONOR.

11:16AM 1          THE COURT:  ALL RIGHT.  THANK YOU.

11:16AM 2          LADIES AND GENTLEMEN, LET ME LET YOU TAKE A BREAK, LET YOU

11:16AM 3    ABSORB THIS, AND WE'LL COME BACK AT ABOUT THE BOTTOM OF THE

11:16AM 4    HOUR AND WE CAN HAVE FURTHER DISCUSSIONS AND YOU CAN INFORM THE

11:16AM 5    COURT OF ANY THOUGHTS THAT THE JURY HAS.

11:16AM 6          SO WE'LL BE IN RECESS.

11:16AM 7          (JURY OUT AT 11:16 A.M.)

11:17AM 8          THE COURT:  ALL RIGHT.  PLEASE BE SEATED.

11:17AM 9          THE RECORD SHOULD REFLECT THAT THE JURY HAS LEFT FOR THE

11:17AM 10   BREAK.

11:17AM 11         LET ME JUST TURN TO COUNSEL.  ANYTHING THAT COUNSEL WANTS

11:17AM 12   TO PUT ON THE RECORD?

11:17AM 13         MR. DOWNEY:  YOUR HONOR, SINCE WE'VE REACHED THE

11:17AM 14   CLOSE OF EVIDENCE, MS. HOLMES RENEWS THE MOTION FILED UNDER

11:17AM 15   RULE 29 AT THE CONCLUSION OF THE GOVERNMENT'S CASE, AND I'LL

11:17AM 16   SAY THAT FOR THE RECORD.

11:17AM 17         THE COURT:  I NOTE THAT.  THANK YOU.

11:17AM 18         I DON'T KNOW IF -- DOES THE GOVERNMENT WISH TO BE HEARD ON

11:17AM 19   THE RULE 29 SUBMISSION?  THE PARTIES -- LET ME ASK, DO THE

11:17AM 20   PARTIES WANT ADDITIONAL BRIEFING ON THIS?

11:17AM 21         THIS IS ANOTHER ISSUE THAT MIGHT AFFECT OUR DISCUSSIONS ON

11:17AM 22   THE INSTRUCTIONS AS WELL, THE TIMING OF THIS, ALTHOUGH WE COULD

11:17AM 23   ENGAGE A HEARING OR A DISCUSSION AT SOME OTHER TIME.

11:17AM 24         MR. LEACH?

11:17AM 25         MR. LEACH:  I'LL BE GUIDED BY THE COURT, YOUR HONOR.

11:18AM  1          I DON'T HAVE A PARTICULAR ARGUMENT TO MAKE AT THIS POINT,

11:18AM  2     BUT IF THERE'S AN ISSUE THAT THE COURT WANTS BRIEFING OR

11:18AM  3     ARGUMENTS ON FROM THE GOVERNMENT, WE'RE HAPPY TO SUBMIT THAT ON

11:18AM  4     ANY SCHEDULE THE COURT WISHES.

11:18AM  5               THE COURT:  OKAY.  THANK YOU.

11:18AM  6          MS. SAHARIA?

11:18AM  7               MS. SAHARIA:  ONE MOMENT, YOUR HONOR.  I COME WITH A

11:18AM  8     LOT OF BAGGAGE.

11:18AM  9          GOOD MORNING, YOUR HONOR.

11:18AM 10          WHEN WE FIRST MOVED AT THE END OF THE GOVERNMENT'S CASE,

11:18AM 11     WE DEFERRED ARGUMENT ON THAT MOTION.  THE COURT RESERVED

11:18AM 12     RULING.

11:18AM 13          WE'RE HAPPY TO -- WE DID NOT FILE A WRITTEN MOTION AT THAT

11:18AM 14     TIME.

11:18AM 15               THE COURT:  RIGHT.

11:18AM 16               MS. SAHARIA:  IF YOUR HONOR WOULD LIKE A MOTION IN

11:18AM 17     WRITING, WE CAN CERTAINLY PROVIDE ONE.  WE COULD ARGUE ORALLY

11:18AM 18     SOMETIME THIS WEEK IF THE COURT WANTS TO HEAR ORAL ARGUMENT, OR

11:18AM 19     THE COURT COULD RESERVE AND WE CAN BRIEF IT POST VERDICT IF

11:18AM 20     THAT BECOMES NECESSARY.

11:18AM 21          IT'S THE COURT'S PREFERENCE.

11:18AM 22               THE COURT:  ALL RIGHT.  THANK YOU.

11:18AM 23          ANY OBJECTIONS TO THAT POST-VERDICT CONVERSATION ON THE --

11:19AM 24     IT HAS BEEN PRESERVED AND RESERVED, AND I DO REFLECT THAT ON

11:19AM 25     THE RECORD, OF COURSE.

11:19AM 1          MR. LEACH:  IT'S BEEN PRESERVED AT THE CLOSE OF THE

11:19AM 2    GOVERNMENT'S CASE, AS WELL AS THE CLOSE OF THE DEFENSE CASE.

11:19AM 3          WE HAVE NO OBJECTION TO DOING IT POST VERDICT.

11:19AM 4          THE COURT:  ALL RIGHT.  IT SEEMS TO ME THAT, BECAUSE

11:19AM 5    OF THE COMPRESSION OF TIME, I'D LIKE YOUR TEAMS TO DEVOTE SOME

11:19AM 6    ATTENTION TO THE INSTRUCTIONS.

11:19AM 7          MS. SAHARIA:  I AGREE, YOUR HONOR.

11:19AM 8          THE COURT:  AND THEN WE CAN TAKE UP ANY OTHER ISSUE

11:19AM 9    AS WE NEED IT.

11:19AM 10         AS TO INSTRUCTIONS, MY THOUGHT IS TO GIVE YOU A DEADLINE

11:19AM 11   ON FILING INSTRUCTIONS.  MY THOUGHT WAS THAT WE WOULD PROBABLY

11:19AM 12   RESERVE THIS FRIDAY, THE 10TH, TO BEGIN DISCUSSION OF THOSE.

11:19AM 13   MONDAY, THE 13TH, IS AVAILABLE AS WELL.

11:19AM 14         MS. SAHARIA:  I THINK THAT MAKES SENSE, YOUR HONOR.

11:19AM 15         WE HAVE BEEN MEETING AND CONFERRING WITH THE GOVERNMENT

11:19AM 16   WITH THE GOAL OF GIVING THE COURT ONE FILING THAT WOULD BE A

11:20AM 17   JOINT FILING FROM BOTH PARTIES THAT WOULD REFLECT WHICH

11:20AM 18   INSTRUCTIONS ARE NOT IN DISPUTE.

11:20AM 19         AND THEN AS WE DID WITH THE PRELIMINARY ONES, I THINK OUR

11:20AM 20   INTENTION WOULD BE TO HIGHLIGHT FOR THE COURT THE LANGUAGE THAT

11:20AM 21   IS IN DISPUTE.  AND THERE MAY BE A FEW INSTRUCTIONS WHERE WE

11:20AM 22   NEED TO SUBMIT COMPETING INSTRUCTIONS TO THE COURT.

11:20AM 23         WE, WE EXCHANGED DRAFTS OVER THE WEEKEND.  WE LAST

11:20AM 24   EXCHANGED OUR DRAFT WITH THE GOVERNMENT ON SUNDAY.  WE'RE

11:20AM 25   WAITING TO HEAR BACK FROM THE GOVERNMENT.

11:20AM 1    ASSUMING THEY CAN RESPOND TODAY, MY GOAL WAS TO FILE BY

11:20AM 2    TONIGHT, OR MAYBE AT THE EARLIEST TOMORROW MORNING, THIS JOINT

11:20AM 3    DRAFT THAT THE COURT COULD THEN HAVE TOMORROW WITH, AND WE CAN

11:20AM 4    MEET ON FRIDAY, AND I THINK THAT WILL HELP STREAMLINE OUR

11:20AM 5    DISCUSSION, ASSUMING THAT PROPOSAL IS STILL ACCEPTABLE TO THE

11:20AM 6    GOVERNMENT.

11:20AM 7         MR. LEACH:  IT IS.

11:20AM 8         THE COURT:  OKAY.  WELL, THAT'S VERY GENEROUS OF

11:20AM 9    YOU.

11:20AM 10        I HAD -- IN MY NOTES HERE, I REFLECTED NOON TOMORROW TO

11:20AM 11   HAVE A FILING.

11:20AM 12        MS. SAHARIA:  THAT WOULD BE -- I THINK THAT WOULD BE

11:20AM 13   SATISFACTORY, YOUR HONOR.

11:20AM 14        THE COURT:  DOES THAT WORK FOR YOU?

11:21AM 15        MR. LEACH:  IT DOES, YOUR HONOR.  THANK YOU.

11:21AM 16        THE COURT:  LET'S DO THAT THEN.  IF YOU COULD FILE

11:21AM 17   YOUR JOINT SUBMISSION TOMORROW BY NOON, THAT WOULD GIVE MY TEAM

11:21AM 18   AN OPPORTUNITY TO LOOK AT IT AND SEE WHAT WE COULD DO, AND THEN

11:21AM 19   WE'LL HAVE DISCUSSIONS ON -- BEGIN DISCUSSIONS ON FRIDAY

11:21AM 20   MORNING AND SEE WHERE WE GO.

11:21AM 21        LET ME ASK -- ANYTHING FURTHER ON THAT?  ON THE

11:21AM 22   INSTRUCTIONS?

11:21AM 23        MS. SAHARIA:  NO, YOUR HONOR.  9:00 O'CLOCK ON

11:21AM 24   FRIDAY I ASSUME?

11:21AM 25        THE COURT:  YES.  YES.

11:21AM  1        LET ME ASK YOUR THOUGHTS ABOUT SCHEDULING.  YOU HEARD ME

11:21AM  2    TELL THE JURY ABOUT POTENTIAL SCHEDULES.

11:21AM  3        IT SEEMS LIKE -- JUST THE WAY THAT WE'RE GOING, IT SEEMS

11:21AM  4    LIKE THE 16TH AND 17TH WOULD BE THE DAYS, PROBABLY THE EARLIEST

11:21AM  5    DAYS WE COULD GET ARGUMENT.

11:21AM  6        AND THEN DEPENDING ON THE JURY'S AVAILABILITY, THEY WOULD

11:21AM  7    GO OUT AND FORMALLY BEGIN DELIBERATIONS I SHOULD SAY ON THE

11:21AM  8    WEEK OF THE 20TH IF THEY'RE AVAILABLE.

11:22AM  9        ANY COMMENTS ABOUT THIS SCHEDULE AND/OR IF FOR SOME REASON

11:22AM  10   THE JURY THINKS THAT THEY SHOULD TAKE A CHRISTMAS BREAK AND

11:22AM  11   COME BACK AFTER THE NEW YEAR BEGINS?

11:22AM  12       ANY THOUGHTS ABOUT THAT?

11:22AM  13            MS. SAHARIA:  I'LL DEFER THAT TO MR. DOWNEY.

11:22AM  14            MR. LEACH:  I THINK MR. SCHENK AND I HAVE THE SAME

11:22AM  15   VIEWS, BUT I'LL LET HIM EXPRESS THEM.

11:22AM  16            THE COURT:  OKAY.

11:22AM  17            MR. SCHENK:  JUST TWO THOUGHTS.

11:22AM  18       FIRST, IF THE CLOSINGS COMPLETE EARLY ENOUGH ON FRIDAY,

11:22AM  19   THE 17TH, I THINK WE CAN ENCOURAGE THEM TO BEGIN DELIBERATIONS

11:22AM  20   THAT DAY.  I KNOW THE COURT HAS BEEN SUGGESTING THAT THE

11:22AM  21   DELIBERATIONS BEGIN THE WEEK OF THE 20TH, BUT IT'S POSSIBLE WE

11:22AM  22   WOULD NOT NEED TWO FULL DAYS AND, AS A RESULT, I THINK THEY

11:22AM  23   COULD BEGIN THEIR DELIBERATIONS ON THE 17TH.

11:22AM  24       OTHERWISE I THINK THE SCHEDULE MAKES SENSE.

11:22AM  25       THE QUESTION OF WHETHER, IF THE JURY IS UNAVAILABLE THE

11:22AM 1    WEEK OF THE 20TH AND ALSO UNAVAILABLE THE WEEK OF THE 27TH,

11:23AM 2    WHETHER WE SHOULD DEFER THE ARGUMENTS TO JANUARY, IN ADDITION

11:23AM 3    TO DELIBERATION, I THINK IS SOMETHING THAT WE SHOULD TAKE UP IF

11:23AM 4    WE REACH THAT, THAT EVENTUALITY.

11:23AM 5        AT THIS POINT, I CHOOSE TO REMAIN OPTIMISTIC THAT THE JURY

11:23AM 6    IS GOING TO BE AVAILABLE TO DELIBERATE SOME DAYS EACH OF THOSE

11:23AM 7    WEEKS, AND I THINK IF WE'RE FACED WITH A SITUATION WHERE

11:23AM 8    THEY'RE COMPLETELY UNAVAILABLE FOR TWO FULL WEEKS, THEN WE

11:23AM 9    SHOULD DISCUSS WHAT MAKES SENSE FOR ARGUMENT.

11:23AM 10            THE COURT:  OKAY.  THANK YOU.

11:23AM 11            MR. DOWNEY:  I THINK IT'S SENSIBLE TO AWAIT THEIR

11:23AM 12   SCHEDULE.  CERTAINLY THE FIRST PART OF THE SCHEDULE IS FINE,

11:23AM 13   AND HOPEFULLY THEY ARE AVAILABLE DURING THE WEEK OF THE 20TH,

11:23AM 14   AND FROM THERE I THINK LET'S SEE WHAT THEIR AVAILABILITY IS.

11:23AM 15            THE COURT:  OKAY.  OKAY.

11:23AM 16            MR. DOWNEY:  THANKS, YOUR HONOR.

11:23AM 17            THE COURT:  GREAT.  THANK YOU.

11:23AM 18        WE'LL SEE YOU AT THE BOTTOM OF THE HOUR.

11:23AM 19            MR. DOWNEY:  THANK YOU.

11:23AM 20            THE CLERK:  COURT IS IN RECESS.

11:23AM 21        (RECESS FROM 11:23 A.M. UNTIL 11:33 A.M.)

11:33AM 22            THE COURT:  WE'RE BACK ON THE RECORD.  ALL COUNSEL

11:33AM 23   AND MS. HOLMES ARE PRESENT.

11:33AM 24        WE'RE OUTSIDE THE PRESENCE OF THE JURY.

11:33AM 25        TWO JURORS COMMUNICATED TO MS. KRATZMANN THEIR

11:34AM 1      AVAILABILITY.

11:34AM 2          JUROR NUMBER 7 I THINK IS UNAVAILABLE THE 22ND OF

11:34AM 3      DECEMBER, BUT IS OTHERWISE AMENABLE TO THE SCHEDULE THE COURT

11:34AM 4      PROPOSED.

11:34AM 5          JUROR NUMBER 5 HAS AN APPOINTMENT ON THE 16TH OF DECEMBER,

11:34AM 6      BUT WILL ENDEAVOR TO RESCHEDULE THAT SUCH THAT JUROR NUMBER 5

11:34AM 7      COULD PARTICIPATE AS WELL.

11:34AM 8          THOSE WERE THE ONLY TWO COMMUNICATIONS, MS. KRATZMANN,

11:34AM 9      THAT YOU RECEIVED FROM THE JURY?

11:34AM 10             THE CLERK:  YES, YOUR HONOR.

11:34AM 11             THE COURT:  SO IT SOUNDS LIKE THE JURY IS OTHERWISE

11:34AM 12     AVAILABLE.

11:34AM 13         WE'LL BRING THEM IN NOW AND I'LL FORMALLY ASK AVAILABILITY

11:34AM 14     AND WE'LL HEAR FROM THEM.

11:34AM 15         ANYTHING FURTHER BEFORE WE BRING THE JURY IN?

11:35AM 16             MR. DOWNEY:  NOT FROM US, YOUR HONOR.

11:35AM 17             MR. LEACH:  YOUR HONOR, NOT RELATING TO THE

11:35AM 18     SCHEDULE.

11:35AM 19         THERE IS A POSSIBLE MOTION THAT WE WANTED TO TALK ABOUT

11:35AM 20     WITH THE COURT.  WE CAN EITHER DO IT NOW --

11:35AM 21             THE COURT:  SURE.  LET'S TALK ABOUT IT NOW, SURE.

11:35AM 22             MR. LEACH:  THE COURT HAS NOTED IN A COUPLE

11:35AM 23     INSTANCES POTENTIAL ISSUES RELATING TO TESTIMONY BY MS. HOLMES

11:35AM 24     RELATING TO EVENTS IN 2003 AND EVENTS VIS-A-VIS HER AND

11:35AM 25     MR. BALWANI AND WHETHER THOSE ARE ADMISSIBLE WITHOUT EXPERT

11:35AM 1    TESTIMONY.

11:35AM 2         THE DEFENSE HAS ELECTED NOT TO CALL THAT EXPERT.

11:35AM 3         IT IS THE GOVERNMENT'S INTENTION TO MOVE TO STRIKE

11:35AM 4    PORTIONS OF THE TESTIMONY, AND WE WANTED TO RAISE THIS ISSUE

11:35AM 5    WITH THE COURT AS WE'RE TALKING ABOUT SCHEDULE AND TALK ABOUT

11:35AM 6    THE APPROPRIATE WAY FOR US TO DO THAT AND TIMING FOR THAT.

11:35AM 7         I THINK TOP OF MIND ARE THERE WERE A NUMBER OF ALLEGATIONS

11:35AM 8    ABOUT AN INCIDENT AT STANFORD IN 2003, MORE THAN SEVEN YEARS

11:36AM 9    BEFORE THE CONSPIRACY, THAT DOES NOT HAVE ANY APPARENT

11:36AM 10   RELEVANCE AND RAISES SIGNIFICANT 403 CONCERNS.

11:36AM 11        I THINK THAT ALSO TIES WITH A NUMBER OF OTHER INCIDENTS

11:36AM 12   THAT WERE DESCRIBED IN THE DIRECT EXAMINATION.

11:36AM 13        I HAVEN'T HAD TIME TO GATHER THE PARTICULAR CASE CITES,

11:36AM 14   BUT WE WANT TO DO THAT IN WHATEVER FORM OR MANNER THE COURT

11:36AM 15   WOULD FIND USEFUL.

11:36AM 16             THE COURT:  ALL RIGHT.  THANK YOU.

11:36AM 17        WELL, THIS MIGHT INTERPLAY WITH OUR SCHEDULE AS FAR AS

11:36AM 18   INSTRUCTIONS, BECAUSE DEPENDING ON THE COURT'S RULING, THAT

11:36AM 19   COULD AFFECT THE INSTRUCTIONS AND WHETHER OR NOT THERE'S

11:36AM 20   MODIFICATION OF INSTRUCTIONS.

11:36AM 21             MR. LEACH:  WE COULD HAVE SOMETHING ON FILE AT THE

11:36AM 22   NOON DEADLINE TOMORROW IF THAT SUITS THE COURT.

11:36AM 23             THE COURT:  WELL, IF YOU WANT TO FILE SOMETHING

11:36AM 24   INITIALLY, THAT WOULD BE HELPFUL, I THINK, AS TO WHAT YOUR

11:36AM 25   POSITION IS.

11:36AM 1          MR. LEACH:  OKAY.

11:36AM 2          THE COURT:  AND THEN, MR. DOWNEY, ANYTHING YOU WANT

11:36AM 3    TO SAY?

11:36AM 4

11:37AM 5          MR. DOWNEY:  WE'LL AWAIT THE MOTION, YOUR HONOR.

11:37AM 6       BUT I THINK WE OUGHT TO GET IT RESOLVED QUICKLY AND, OF

11:37AM 7    COURSE, THE -- I DON'T THINK WITH RESPECT TO ANYTHING THAT

11:37AM 8    MR. LEACH MENTIONED THAT IT WAS OBJECTED TO CONTEMPORANEOUSLY,

11:37AM 9    SO THERE'S OBVIOUSLY BEEN A BIG EFFECT ON THE RECORD BY THE

11:37AM 10   FAILURE TO DO THAT, INCLUDING THAT WE DID NOT OBJECT TO

11:37AM 11   CORRESPONDING CROSS-EXAMINATION.

11:37AM 12      SO WE'LL DISCUSS THOSE ISSUES IN THE CONTEXT OF THE

11:37AM 13   MERITS, BUT I'M SURPRISED TO HEAR THAT MOTION AFTER THE CLOSE

11:37AM 14   OF EVIDENCE.

11:37AM 15      BUT IF MR. LEACH FILES BY NOON TOMORROW, WE WOULD BE HAPPY

11:37AM 16   TO TRY TO AT LEAST HAVE A DISCUSSION, EVEN IF WE'RE NOT ABLE IN

11:37AM 17   A POSITION TO FILE SOMETHING BEFORE FRIDAY, WE WOULD BE IN A

11:37AM 18   POSITION TO HAVE A DISCUSSION WITH YOUR HONOR ON FRIDAY ON THAT

11:37AM 19   SUBJECT.

11:37AM 20         THE COURT:  ALL RIGHT.

11:37AM 21      MR. LEACH?

11:37AM 22         MR. LEACH:  NOTHING MORE THAN I THINK THE COURT

11:37AM 23   NOTED IN ITS ORDER TO SEVER THE CASE, AND I THINK IT'S OBVIOUS

11:37AM 24   FROM SOME OF THE ISSUES THAT WERE RAISED, THERE WAS CONDITIONAL

11:38AM 25   RELEVANCE TO SOME OF WHAT SHE WAS TESTIFYING TO IF THERE WAS

11:38AM 1      EXPERT TESTIMONY.  BUT NOW THAT THERE'S NONE, I THINK THAT

11:38AM 2      ISSUE NEEDS TO BE ADDRESSED.

11:38AM 3          SO I DON'T THINK THERE'S ANYTHING IN THE TIMING AS WE'RE

11:38AM 4      RAISING THIS THAT IS INAPPROPRIATE.

11:38AM 5          I THINK THE DEFENSE HAS HEARD THE COURT'S COMMENTS A

11:38AM 6      NUMBER OF TIMES ON THIS ISSUE, AND SO WE'LL PUT OUR SUBMISSION

11:38AM 7      TOGETHER AND GET THAT ON FILE TOMORROW.

11:38AM 8              THE COURT:  ALL RIGHT.

11:38AM 9          IT SEEMS LIKE A MR. LEACH'S POINT IS THAT THERE WAS A 12.2

11:38AM 10     NOTICE MADE, AS IS REQUIRED BY THE RULES, AND THAT ENGAGED

11:38AM 11     CERTAIN NOTICE AND THE PARTIES TOOK CERTAIN ACTIONS BECAUSE OF

11:38AM 12     THAT.

11:38AM 13         AND I'LL JUST WAIT TO HEAR, MR. LEACH, YOUR THOUGHTS ABOUT

11:38AM 14     THE STATE OF THE EVIDENCE AND HOW ALL OF THAT RELATES TO THE

11:38AM 15     TESTIMONY.

11:38AM 16             MR. LEACH:  WILL DO, YOUR HONOR.

11:38AM 17             THE COURT:  OKAY.  ALL RIGHT.

11:38AM 18             MR. DOWNEY:  THANK YOU, YOUR HONOR.

11:38AM 19             THE COURT:  OKAY.

11:40AM 20         (PAUSE IN PROCEEDINGS.)

11:40AM 21         (JURY IN AT 11:40 A.M.)

11:40AM 22             THE COURT:  ALL RIGHT.  THANK YOU.

11:41AM 23         PLEASE BE SEATED.  WE ARE BACK ON THE RECORD.  ALL PARTIES

11:41AM 24     PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

11:41AM 25         OUR JURY IS PRESENT.

11:41AM 1           LADIES AND GENTLEMEN, I UNDERSTAND THAT -- MS. KRATZMANN

11:41AM 2 HAS INFORMED ME THAT TWO JURORS HAVE INDICATED COMMENTS ON THE

11:41AM 3 SCHEDULE THAT I PROPOSED.

11:41AM 4           I UNDERSTAND ONE JUROR IS NOT AVAILABLE ON THE 22ND OF

11:41AM 5 DECEMBER, BUT OTHERWISE WOULD BE AVAILABLE TO DELIBERATE IF WE

11:41AM 6 WERE NOT IN SESSION ON THAT DATE.

11:41AM 7           AND MY SENSE IS THAT THE COURT WOULD ACCOMMODATE THAT

11:41AM 8 SCHEDULE SHOULD THAT BE HELPFUL TO THE JUROR.

11:41AM 9           I ALSO AM INFORMED THAT ONE JUROR HAS A MEDICAL ISSUE --

11:41AM 10 APPOINTMENT, PARDON ME, I SHOULD SAY AN APPOINTMENT -- ON THE

11:42AM 11 16TH OF DECEMBER, BUT IS -- IT SOUNDS LIKE THAT COULD BE

11:42AM 12 RESCHEDULED, AND I THINK EFFORTS ARE GOING TO BE MADE TO

11:42AM 13 RESCHEDULE THAT SUCH THAT, AT LEAST FOR NOW, THAT JUROR WOULD

11:42AM 14 BE -- CAN I ASK, WILL THAT JUROR BE AVAILABLE -- THIS IS JUROR

11:42AM 15 NUMBER 5.

11:42AM 16           DO YOU THINK YOU WILL BE AVAILABLE ON THE 16TH, JUROR

11:42AM 17 NUMBER 5?

11:42AM 18                JUROR:  YES, YOUR HONOR.

11:42AM 19                THE COURT:  ALL RIGHT.  THANK YOU.

11:42AM 20           SO, COUNSEL, IT SOUNDS LIKE THE SCHEDULE THAT I PROPOSED

11:42AM 21 COULD BE ENGAGED SAVE FOR THE 22ND.  THE 22ND WOULD BE A DAY

11:42AM 22 THAT THE JURY WOULD NOT BE DELIBERATING ON.

11:42AM 23           LET ME JUST ASK THE JURY COLLECTIVELY, IF I RECOGNIZE THAT

11:42AM 24 YOU WOULD NOT BE IN SESSION ON THE 22ND, AND THAT JUROR

11:42AM 25 NUMBER 5 IS GOING TO RESCHEDULE THE APPOINTMENT ON THE 16TH,

11:42AM 1    DOES THE SCHEDULE THAT THE COURT PROPOSED TO YOU -- IS THERE

11:43AM 2    ANYONE THAT HAS ANY OTHER ISSUE WITH THAT SCHEDULE?

11:43AM 3        IF SO, IF YOU WOULD JUST RAISE YOUR HAND.

11:43AM 4        YOU ARE SO GOOD AT NOT RAISING YOUR HANDS WHEN I ASK YOU

11:43AM 5    MY QUESTIONS.

11:43AM 6        SO THANK YOU.  THANK YOU VERY MUCH.

11:43AM 7        SO WE'LL ADOPT THAT SCHEDULE.

11:43AM 8        SO, LADIES AND GENTLEMEN, LET'S DO THIS.  WE WILL BREAK

11:43AM 9    NOW, AND THE NEXT TIME THAT WE WILL SEE YOU, UNLESS YOU'RE

11:43AM 10   NOTIFIED OF ANY OTHER EXTENSION, THE NEXT TIME THAT WE WOULD

11:43AM 11   SEE YOU WOULD BE ON DECEMBER 16TH, DECEMBER 16TH AT 9:00 A.M.,

11:43AM 12   AND THAT WOULD BE FOR CLOSING ARGUMENTS, CLOSING FINAL

11:43AM 13   ARGUMENTS.

11:43AM 14       SO I WOULD ASK YOU TO ADJUST YOUR SCHEDULES APPROPRIATELY

11:43AM 15   FOR THAT.

11:43AM 16       I ANTICIPATE THE ARGUMENTS MAY TAKE TWO DAYS.  WE MAY GO

11:43AM 17   INTO THE 17TH.  IT MAY NOT TAKE US UNTIL THE END OF THE DAY ON

11:44AM 18   THE 17TH.

11:44AM 19       IF THAT OCCURS, IF THERE IS TIME REMAINING ON THE 17TH, I

11:44AM 20   WILL THEN INSTRUCT YOU, I'LL READ YOU THE INSTRUCTIONS, AND YOU

11:44AM 21   CAN BEGIN THE DELIBERATIONS AS SOON AS THE COURT HAS GIVEN YOU

11:44AM 22   THE FINAL INSTRUCTIONS.

11:44AM 23       SO WITH THAT, WE'LL BE IN RECESS FOR TODAY.  WE'LL SEE YOU

11:44AM 24   AGAIN NEXT ON DECEMBER 16TH AT 9:00 A.M. IF YOU WOULD COLLECT

11:44AM 25   YOURSELVES ACCORDINGLY.

11:44AM  1        AND MS. KRATZMANN WILL BE IN TOUCH WITH YOU SHOULD THERE

11:44AM  2   BE ANY DEVIATION OR CHANGE IN THIS SCHEDULE.

11:44AM  3        AND SHOULD ANYTHING OCCUR IN YOUR SCHEDULES, I WOULD

11:44AM  4   INVITE YOU TO PLEASE CONTACT MS. KRATZMANN AND LET HER KNOW SO

11:44AM  5   THAT WE CAN, WE CAN HAVE NOTICE OF THAT.

11:44AM  6        SO WE'LL SEE YOU NEXT WEEK.

11:44AM  7        BUT LET ME TELL YOU AND REMIND YOU, IT'S EVER SO IMPORTANT

11:44AM  8   NOW FOR YOU TO PLEASE DO NOT DISCUSS WITH ANYONE, DO NOT DO ANY

11:45AM  9   RESEARCH, DO NOT LISTEN TO, READ, OR IN ANY WAY COME INTO ANY

11:45AM  10  INFORMATION ABOUT THIS CASE.

11:45AM  11       DO NOT MAKE ANY OPINIONS ABOUT IT, AND DO NOT MAKE ANY

11:45AM  12  DECISIONS ABOUT THIS CASE.

11:45AM  13       YOU MAY ONLY DO THAT FOLLOWING THE ARGUMENTS AND FOLLOWING

11:45AM  14  THE INSTRUCTIONS, AND YOU MAY BEGIN ANY DELIBERATION ONLY WHEN

11:45AM  15  YOU'VE BEEN GIVEN THE CASE AND YOU'VE RETIRED TO THE

11:45AM  16  DELIBERATION ROOM TO BEGIN THEN YOUR DISCUSSIONS AND SHARING

11:45AM  17  INFORMATION AND THOUGHTS ABOUT THE CASE.

11:45AM  18       BUT DO NOT REACH ANY CONCLUSION ABOUT THIS CASE UNTIL

11:45AM  19  THEN.

11:45AM  20       SO PLEASE, WITH THAT ADMONISHMENT, WE WILL RECESS TODAY,

11:45AM  21  AND WE'LL SEE YOU BACK ON THE 16TH.

11:45AM  22       AGAIN, THE FIRST THING I'M GOING TO ASK YOU IS THAT

11:45AM  23  QUESTION AGAIN, WHETHER OR NOT ANY OF YOU SHOULD RAISE YOUR

11:45AM  24  HANDS REGARDING CONTACT WITH ANY INFORMATION THAT YOU MAY HAVE

11:45AM  25  SEEN.

11:45AM  1          PLEASE AVOID THAT.  IT'S -- AS YOU MIGHT IMAGINE, THE

11:46AM  2   CASE -- THE EVIDENCE IS NOW IN, SO IT'S CRITICALLY IMPORTANT

11:46AM  3   THAT YOU CONTINUE TO MAINTAIN VIGILANCE TO AVOID INFORMATION

11:46AM  4   ABOUT ANYTHING TO DO WITH THIS CASE.

11:46AM  5          HAVE A GOOD DAY.  WE'LL SEE YOU BACK ON THE 16TH.

11:46AM  6          THANK YOU.

11:46AM  7          (JURY OUT AT 11:46 A.M.).

11:46AM  8              THE COURT:  ALL RIGHT.  PLEASE BE SEATED.

11:46AM  9          THE RECORD SHOULD REFLECT THAT OUR JURY HAS LEFT FOR THE

11:46AM  10  RECESS.

11:46AM  11         COUNSEL, ANYTHING FURTHER BEFORE WE BREAK?

11:46AM  12             MR. SCHENK:  NOT FROM THE GOVERNMENT.  THANK YOU.

11:46AM  13             MR. DOWNEY:  YOUR HONOR, I WONDER IF BEFORE WE MEET

11:46AM  14  ON FRIDAY, MAYBE MR. SCHENK AND I CAN TALK ABOUT THE CLOSING

11:47AM  15  ARGUMENTS.  I'M OBVIOUSLY NOT KEEN TO HAVE A LENGTHY CLOSING

11:47AM  16  ARGUMENT ON THE BACK END OF THE DAY AND TO HAVE THE GOVERNMENT

11:47AM  17  HAVE TWO CLOSINGS ON CONSECUTIVE MORNINGS.  SO MAYBE WE'LL SEE

11:47AM  18  HOW LONG EACH OF US WANTS TO BE AND WE'LL PROPOSE SOME SCHEDULE

11:47AM  19  IN CONNECTION WITH THAT.

11:47AM  20             THE COURT:  OKAY.  THANK YOU.

11:47AM  21         RESTRAIN YOUR ENTHUSIASM, MR. SCHENK.

11:47AM  22         (LAUGHTER.)

11:47AM  23             THE COURT:  ALL RIGHT.  THANK YOU.

11:47AM  24         AND I APPRECIATE YOUR CONTINUED COOPERATION AND EFFORTS IN

11:47AM  25  DISCUSSING MATTERS TO ASSIST BOTH YOUR TEAMS AND THE EFFICIENCY

11:47AM 1    OF THE CASE GOING FORWARD.  I APPRECIATE THAT.

11:47AM 2        ALL RIGHT.  WE'LL AWAIT YOUR SUBMISSIONS TOMORROW, AND

11:47AM 3    THEN WE'LL SEE EACH OTHER ON THE 10TH AT 9:00 A.M.

11:47AM 4            MR. DOWNEY:  THANK YOU, YOUR HONOR.

11:47AM 5            THE COURT:  ALL RIGHT.  THANK YOU.

11:47AM 6            THE CLERK:  COURT IS ADJOURNED.

11:47AM 7        (COURT ADJOURNED AT 11:47 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                           CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18         _____
19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  DECEMBER 8, 2021

22

23

24

25