UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-18-00258-EJD |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | VOLUME 44 |
| | ) | |
| ELIZABETH A. HOLMES, | ) | DECEMBER 10, 2021 |
| | ) | |
| DEFENDANT. | ) | PAGES 8661 - 8826 |
| _____ | ) | |

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                        BY:  JOHN C. BOSTIC
                             JEFFREY B. SCHENK
                        150 ALMADEN BOULEVARD, SUITE 900
                        SAN JOSE, CALIFORNIA 95113

                        BY:  ROBERT S. LEACH
                             KELLY VOLKAR
                        1301 CLAY STREET, SUITE 340S
                        OAKLAND, CALIFORNIA 94612

      (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTERS:
                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                        CERTIFICATE NUMBER 8074
                        LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595

      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

8662

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                         BY:  KEVIN M. DOWNEY
                              LANCE A. WADE
                              KATHERINE TREFZ
                              AMY SAHARIA
                              ANDREW LEMENS
                              SEEMA ROPER
                              J.R. FLEURMONT
                              RICHARD CLEARY
                              PATRICK LOOBY
                         725 TWELFTH STREET, N.W.
                         WASHINGTON, D.C. 20005

1    SAN JOSE, CALIFORNIA                    DECEMBER 10, 2021

09:09AM   2                    P R O C E E D I N G S

09:09AM   3        (COURT CONVENED AT 9:09 A.M.)

09:10AM   4        (JURY OUT AT 9:10 A.M.)

09:10AM   5            THE COURT:  WE ARE ON THE RECORD.  ALL COUNSEL ARE

09:10AM   6    PRESENT.  MS. HOLMES IS PRESENT.  WE'RE OUTSIDE OF THE PRESENCE

09:10AM   7    OF THE JURY.

09:10AM   8        WE'RE HERE TO JUST REVIEW, IF WE CAN, INSTRUCTIONS.

09:10AM   9        WE DID RECEIVE 1188, WHICH WAS THE JOINT PROPOSED

09:10AM  10    INSTRUCTIONS.  THANK YOU FOR THAT.  THAT WAS HELPFUL.  I'VE

09:10AM  11    LOOKED OVER THAT, AND I'M HAPPY TO DISCUSS SOME OF THESE WITH

09:10AM  12    YOU.

09:10AM  13        WE'LL SEE HOW FAR WE GET THIS MORNING.  IT MAY BE THAT WE

09:10AM  14    CAN -- I HOPE WE CAN ACCOMPLISH GETTING THROUGH THE MAJORITY OF

09:10AM  15    THESE TODAY SUCH THAT, AS OUR PLAN WAS, AS YOU RECALL, WE HAVE

09:10AM  16    MONDAY TO FINISH UP, AND THEN WE'RE DARK TWO DAYS, AND THEN

09:11AM  17    THURSDAY NEXT, AND FRIDAY, WE'VE ALLOCATED FOR CLOSING.

09:11AM  18        MY HOPE IS THAT WE CAN GET -- IT WOULD BE GREAT IF WE CAN

09:11AM  19    GET RESOLUTION OF THE INSTRUCTIONS TODAY SUCH THAT YOU CAN HAVE

09:11AM  20    THEM FOR YOUR PLANNING PURPOSES, AND WE CAN WORK ON THEM AND

09:11AM  21    MAYBE GET A FINALIZED COPY, AN AGREED COPY FOR MONDAY, BY

09:11AM  22    MONDAY, SO THE PARTIES CAN USE THIS.  THAT'S WHAT I HOPE TO

09:11AM  23    ACCOMPLISH.  I HOPE WE CAN GET THAT DONE TODAY.

09:11AM  24        WE'LL PROBABLY TAKE A BREAK.  ASSUMING WE CAN'T GET THIS

09:11AM  25    DONE IN 40 MINUTES, WHAT TIME SHOULD WE BREAK TODAY?

09:11AM  1              MR. DOWNEY:  I THINK, YOUR HONOR, SOMETIME IN THAT

09:11AM  2    11:00 TO 11:30 TIME WOULD BE GOOD.

09:11AM  3              THE COURT:  ALL RIGHT.  THANK YOU.

09:11AM  4        ANYTHING BEFORE WE START?  I JUST INTEND TO GO THROUGH

09:11AM  5    THESE FROM THE BEGINNING.

09:11AM  6        BUT ANYTHING FROM EITHER SIDE BEFORE WE START?

09:12AM  7        MS. SAHARIA?

09:12AM  8              MS. SAHARIA:  YES, YOUR HONOR.

09:12AM  9        GOOD MORNING, YOUR HONOR.

09:12AM  10             THE COURT:  GOOD MORNING.

09:12AM  11             MS. SAHARIA:  I JUST NOTED -- I JUST WANTED TO NOTE

09:12AM  12   THAT THE PARTIES NEGLECTED TO MEET AND CONFER ABOUT THE VERDICT

09:12AM  13   FORM.  I REALIZED LAST NIGHT THAT WE HAD FAILED TO PROPOSE TO

09:12AM  14   THE COURT A VERDICT FORM.

09:12AM  15        WE HAVE, OF COURSE, BOTH PROPOSED OUR OWN VERSIONS OF

09:12AM  16   VERDICT FORMS.  SO TIME PERMITTING, PERHAPS WE CAN TAKE THOSE

09:12AM  17   UP AT THE END OF THE INSTRUCTIONS.

09:12AM  18             THE COURT:  SURE.  OKAY.

09:12AM  19             MS. SAHARIA:  I APOLOGIZE FOR THAT.

09:12AM  20             THE COURT:  NO, NO, NO.  THAT'S QUITE ALL RIGHT.

09:12AM  21             MS. SAHARIA:  AND IS IT THE COURT'S INTENTION THAT

09:12AM  22   WE JUST PROCEED THROUGH 1188 AND TAKE UP THE INSTRUCTIONS IN

09:12AM  23   ORDER?

09:12AM  24             THE COURT:  I THINK SO.

09:12AM  25             MS. SAHARIA:  I THINK THAT MAKES SENSE TO ME AS

09:12AM  1    WELL.

09:12AM  2              THE COURT:  IT DOES TO ME.

09:12AM  3         MS. VOLKAR, ARE YOU SPEAKING?

09:12AM  4              MS. SAHARIA:  I'M GOING TO DEFER TO MR. CLEARY, WHO

09:12AM  5    IS GOING TO ADDRESS THE FIRST SEVERAL INSTRUCTIONS.

09:12AM  6              THE COURT:  OKAY.  THANK YOU.

09:12AM  7              MS. VOLKAR:  YES, YOUR HONOR.

09:12AM  8         KELLY VOLKAR ON BEHALF OF THE UNITED STATES.  AND I'LL BE

09:13AM  9    SHARING THE PODIUM TODAY WITH MR. LEACH.

09:13AM  10             THE COURT:  GREAT.  THANK YOU.

09:13AM  11             MR. CLEARY:  YOUR HONOR, RICHARD CLEARY ON BEHALF OF

09:13AM  12   MS. HOLMES.

09:13AM  13             THE COURT:  THANK YOU.  GOOD MORNING.

09:13AM  14             MR. CLEARY:  GOOD MORNING, YOUR HONOR.

09:13AM  15             THE COURT:  SO LET'S JUST MARSHAL THROUGH.

09:13AM  16        WE'LL START WITH 1 -- JURY INSTRUCTION 1.  WHAT I INTEND

09:13AM  17   TO DO IS GIVE WHAT I GAVE IN THE PRELIMINARIES FOR THIS, WHICH

09:13AM  18   I THINK YOU DO KNOW DOES INCLUDE THE LANGUAGE THAT IS

09:13AM  19   HIGHLIGHTED.  SO I INTEND TO STICK WITH THAT.

09:13AM  20             MR. CLEARY:  THANK YOU, YOUR HONOR.

09:13AM  21             THE COURT:  AND LET'S MOVE TO NUMBER 2.  THE -- WHAT

09:13AM  22   I -- AT THE START OF LINE 4 -- AND THIS IS ALL REFERENCING

09:13AM  23   DOCKET 1188 -- WHAT I INTEND TO DO HERE IS THE FIRST LINE,

09:13AM  24   EXCUSE ME, LINE 4, THE INDICTMENT IS NOT EVIDENCE, AND THEN

09:13AM  25   I'LL READ, "MS. HOLMES, THE DEFENDANT, HAS PLEADED NOT GUILTY

09:14AM  1    TO THE CHARGES," AND THEN I'LL READ "MS. HOLMES" THROUGHOUT THE

09:14AM  2    BALANCE OF THE INSTRUCTION.

09:14AM  3         AND THEN GOING DOWN TO LINE 8, I'M NOT GOING TO GIVE LINE

09:14AM  4    9 THROUGH 19, AND THAT'S THE DEFENSE ADDITIONS TO THE MODEL

09:14AM  5    INSTRUCTION.

09:14AM  6              MR. CLEARY:  YOUR HONOR, IF I MAY?

09:14AM  7              THE COURT:  YES.

09:14AM  8              MR. CLEARY:  ONE POINT OF CLARIFICATION.

09:14AM  9         I UNDERSTAND THE COURT'S INTENTION ON LINE 4 OF PAGE 3 OF

09:14AM  10   ECF 1188 TO USE "MS. HOLMES, THE DEFENDANT," IN THE INITIAL

09:14AM  11   REFERENCE AND THEN "MS. HOLMES" THEREAFTER.

09:14AM  12        IS IT THE COURT'S INTENTION TO USE SIMPLY "MS. HOLMES" FOR

09:14AM  13   THE DURATION OF THE INSTRUCTIONS?

09:14AM  14             THE COURT:  I THINK I WILL UNLESS THERE'S SOMETHING

09:14AM  15   ELSE THAT -- I HAVEN'T SEEN IT -- UNLESS THERE'S SOMETHING ELSE

09:14AM  16   THAT WOULD CALL OUT FOR IT.

09:15AM  17        BUT THAT'S MY THOUGHT.

09:15AM  18        AS WE GO THROUGH THEM, WE'LL LOOK AND SEE WHETHER OR NOT

09:15AM  19   THAT SHOULD BE CHANGED.

09:15AM  20             MR. CLEARY:  THANK YOU, YOUR HONOR.

09:15AM  21             THE COURT:  YOU'RE WELCOME.

09:15AM  22             MR. CLEARY:  YOUR HONOR, IF I MAY, THE DEFENSE

09:15AM  23   ACKNOWLEDGES THAT THE COURT PREVIOUSLY CONSIDERED AND DECLINED

09:15AM  24   TO GIVE PARAGRAPHS 2 AND 3, LINES 19 THROUGH -- 9 THROUGH 19 OF

09:15AM  25   JURY INSTRUCTION NUMBER 2 AT THE PRELIMINARY INSTRUCTIONS

09:15AM  1    STAGE.  SO WE UNDERSTAND THAT.

09:15AM  2        AND WE JUST OBJECT TO THE ABSENCE OF THESE FOR -- I CAN

09:15AM  3    WALK THE COURT BRIEFLY THROUGH THE REASONS JUST TO PRESERVE OUR

09:15AM  4    RIGHTS.

09:15AM  5            THE COURT:  BUT DO YOU WANT TO INCORPORATE BY

09:15AM  6    REFERENCE YOUR PREVIOUS OBJECTIONS?

09:15AM  7            MR. CLEARY:  YES, YOUR HONOR.  WE CAN INCORPORATE BY

09:15AM  8    REFERENCE OUR PREVIOUS OBJECTIONS, AND THEN THE OBJECTIONS

09:15AM  9    IDENTIFIED IN ECF 1174 JUST FOR EFFICIENCY THIS MORNING.

09:15AM  10            THE COURT:  SURE.  THAT'S FINE.  SO NOTED.  THANK

09:16AM  11   YOU.

09:16AM  12       LET'S SEE, 3.  THERE'S NO OBJECTION TO 3.  THIS IS

09:16AM  13   INSTRUCTION NUMBER 3.  THIS IS MODEL INSTRUCTION 215.  I'LL

09:16AM  14   GIVE THAT.

09:16AM  15       THERE'S NO OBJECTION TO 3.4, WHICH IS JURY INSTRUCTION 4.

09:16AM  16   I'LL GIVE THAT.

09:16AM  17       INSTRUCTION 5, WHICH IS THE REASONABLE DOUBT INSTRUCTION,

09:16AM  18   I HAVE LOOKED AT THIS AND I INTEND TO GIVE THE MODEL

09:16AM  19   INSTRUCTION, WHICH WOULD BE TO DELETE THE BLUE SECTION.  AND

09:16AM  20   FOR THE RECORD, THAT'S LINES 7 THROUGH 10 I THINK IS

09:16AM  21   MS. HOLMES'S SUGGESTION, AND I WON'T GIVE THAT.

09:16AM  22       I'LL INCORPORATE BY REFERENCE YOUR PREVIOUS OBJECTIONS IF

09:16AM  23   YOU WOULD LIKE.

09:16AM  24            MR. CLEARY:  YES, YOUR HONOR.

09:16AM  25        AGAIN, THESE ARE IDENTIFIED AT ECF 1174 INCLUDING THE

09:17AM 1    VELASQUEZ CASE AND THE GARCIA-FREGOSO CASE, BOTH OF WHICH ARE

09:17AM 2    CITED IN THAT PLEADING.

09:17AM 3              THE COURT:  RIGHT, F-R-E-G-O-S-O.

09:17AM 4        AND LOOKING AT THAT, GARCIA-FREGOSO, IT SEEMS TO

09:17AM 5    HESITATE -- THE ADDITION OF "HESITATE TO ACT" IS UNNECESSARY.

09:17AM 6    THAT'S PART OF THE EVALUATION THAT I MADE.

09:17AM 7        SO I'LL GIVE THE MODEL.

09:17AM 8        MS. VOLKAR, SING OUT ANYTHING IF YOU HAVE ANYTHING YOU

09:17AM 9    WANT TO ADD FOR THE RECORD.

09:17AM 10             MS. VOLKAR:  I WILL, YOUR HONOR.

09:17AM 11       I THINK WE MIGHT HAVE DISCUSSED THIS LAST TIME, BUT IN

09:17AM 12   CASE WE DIDN'T AND FOR PURPOSES OF THE RECORD, THE GOVERNMENT'S

09:17AM 13   POSITION IS TO GIVE THE MODEL AS THE COURT INTENDS TO, AND THE

09:17AM 14   GOVERNMENT JUST SPECIFICALLY CALLS THE COURT'S ATTENTION TO

09:17AM 15   THIS MODEL INSTRUCTION ON REASONABLE DOUBT 3.5 WAS REVISED

09:17AM 16   SEPTEMBER OF 2021, JUST A COUPLE MONTHS AGO.

09:17AM 17       AND WHAT WAS AMENDED WAS THE COMMENTARY, NOT THE ACTUAL

09:18AM 18   INSTRUCTION --

09:18AM 19             THE COURT:  RIGHT.

09:18AM 20             MS. VOLKAR:  -- TO MOVE TO THE FIRST LINE OF THE

09:18AM 21   COMMENTARY THAT THE NINTH CIRCUIT HAS REPEATEDLY UPHELD THIS

09:18AM 22   INSTRUCTION.

09:18AM 23       SO THAT'S THE GOVERNMENT'S POSITION.

09:18AM 24             THE COURT:  ALL RIGHT.  THANK YOU.

09:18AM 25       LET'S MOVE TO NUMBER 6, WHICH IS 3.6, THE COURT WILL GIVE.

8669

09:18AM 1       3.7, WHAT IS NOT EVIDENCE, THE COURT WILL GIVE.

09:18AM 2       JURY INSTRUCTION NUMBER 8, WHICH IS 3.8, I THINK

09:18AM 3  MS. HOLMES WOULD LIKE TO HAVE THE EXAMPLE, THE GARDEN HOSE

09:18AM 4  EXAMPLE.

09:18AM 5       MR. CLEARY:  YES, YOUR HONOR, WE WOULD.

09:18AM 6       THE COURT:  RIGHT.  ALL RIGHT.  WE'LL TALK ABOUT

09:18AM 7  GARDEN HOSES.  I'LL GIVE THAT WITH THAT ADDITION.

09:18AM 8       MS. VOLKAR:  YOUR HONOR, IF THE GOVERNMENT MAY BE

09:18AM 9  HEARD ON THAT ONE?

09:18AM 10       THE COURT:  SURE, OF COURSE.

09:18AM 11       MS. VOLKAR:  WE UNDERSTAND OF COURSE THIS IS IN THE

09:18AM 12  COMMENTARY TO THE MODEL INSTRUCTIONS.

09:18AM 13       THIS WOULD BE AN EXAMPLE OF THE COURT GAVE IT AT THE

09:18AM 14  OUTSET, AND I THINK IT CAN BE HELPFUL TO THE JURY, ESPECIALLY

09:18AM 15  FOR THOSE WHO HAVE NOT SERVED ON A JURY BEFORE, TO UNDERSTAND

09:18AM 16  THE DIFFERENCE.

09:18AM 17       NOW AT THE CLOSE OF EVIDENCE, WITH ALL OF THE EVIDENCE IN,

09:18AM 18  THIS EXAMPLE, OF COURSE, HAS NOTHING TO DO WITH THIS CASE, AND

09:19AM 19  THE JURY HAS BEEN LISTENING TO THE VARIOUS TYPES OF EVIDENCE

09:19AM 20  THROUGHOUT THE CASE.

09:19AM 21       AND OF COURSE I THINK WE SHOULD ALWAYS KEEP IN MIND THE

09:19AM 22  LENGTH OVERALL OF THE INSTRUCTIONS, AND THIS DOES ADD ANOTHER

09:19AM 23  PARAGRAPH TO LENGTHY INSTRUCTIONS.

09:19AM 24       SO FOR THOSE REASONS, THE GOVERNMENT SUBMITS IT'S

09:19AM 25  UNNECESSARY TO REPEAT THIS PORTION OF THE INSTRUCTION.

09:19AM  1        BUT WE, OF COURSE, DEFER TO THE COURT.

09:19AM  2            THE COURT:  ALL RIGHT.  THANK YOU.

09:19AM  3        JUST FOR CONSISTENCY AS TO THIS CONCEPT, I THINK I'LL,

09:19AM  4   I'LL GIVE IT.  I THINK IT ASSISTS THE JURY, WILL ASSIST THE

09:19AM  5   JURY.  AND THIS IS JURY INSTRUCTION NUMBER 8.

09:19AM  6        I APPRECIATE THE RECOGNITION OF THE NEED FOR BREVITY.  I

09:19AM  7   ASSURE YOU, THERE WILL BE SOME MORE BREVITY WE'LL CAPTURE AS WE

09:19AM  8   GO FORWARD.

09:19AM  9        (LAUGHTER.)

09:19AM  10           THE COURT:  JURY INSTRUCTION NUMBER 9, CREDIBILITY

09:19AM  11  OF WITNESSES, I'LL GIVE THAT.

09:19AM  12       NUMBER 10 IS 3.10, AND I LOOKED AT THIS AND I THINK WHAT I

09:20AM  13  WILL READ HERE IS THE FIRST LINE THAT BEGINS ON LINE 3 AND ENDS

09:20AM  14  AT LINE 4 I'LL GIVE.  "YOU ARE HERE ONLY TO DETERMINE WHETHER

09:20AM  15  MS. HOLMES IS GUILTY OR NOT GUILTY OF THE CHARGES IN THE

09:20AM  16  INDICTMENT."

09:20AM  17       AND THEN I'LL READ AFTER THAT, "MS. HOLMES IS NOT ON TRIAL

09:20AM  18  FOR ANY CONDUCT THAT TOOK PLACE BEFORE THE TIME PERIODS OF THE

09:20AM  19  ALLEGED OFFENSES."

09:20AM  20           MR. CLEARY:  YOUR HONOR, IS THE COURT'S INTENTION TO

09:20AM  21  READ THE SECOND SENTENCE, "MS. HOLMES IS NOT ON TRIAL FOR ANY

09:21AM  22  CONDUCT OR OFFENSE NOT CHARGED IN THE INDICTMENT"?

09:21AM  23           THE COURT:  NO.  NO.  I WOULD CUT THAT OUT.

09:21AM  24           MR. CLEARY:  YOUR HONOR, IF I MAY, MS. HOLMES

09:21AM  25  CERTAINLY APPRECIATES THE COURT'S INTENTION TO GIVE THAT

09:21AM   1    FINAL -- WHAT WE UNDERSTAND IS THE LINE HIGHLIGHTED IN BLUE ON

09:21AM   2    PAGE 12 IN CONNECTION WITH JURY INSTRUCTION NUMBER 10.

09:21AM   3         WE WOULD ASK THAT THE COURT ALSO INCLUDE THAT SECOND LINE

09:21AM   4    FOR THE FOLLOWING REASON:

09:21AM   5         THE LINE CONCERNING MS. HOLMES NOT BEING ON TRIAL FOR

09:21AM   6    CONDUCT THAT TOOK PLACE BEFORE THE TIME PERIODS OF THE ALLEGED

09:21AM   7    OFFENSES IN THE INDICTMENT IS VERY HELPFUL IN GUARDING AGAINST

09:21AM   8    IMPROPER CONVICTION BASED ON CONDUCT THAT PREDATES 2010 OR

09:21AM   9    PREDATES 2013, DEPENDING ON THE PARTICULAR CONSPIRACY AT ISSUE.

09:21AM  10         THE DEFENSE IS ALSO CONCERNED ABOUT EVIDENCE IN THE RECORD

09:21AM  11    THAT GOES BEYOND THE FOUR CORNERS OF THE INDICTMENT, BUT FALLS

09:21AM  12    WITHIN THE TIME PERIOD OF THE INDICTMENT.

09:22AM  13         TO TAKE AN EXAMPLE, THE COURT WILL RECALL ITS EXCHANGE

09:22AM  14    WITH MR. DOWNEY CONCERNING REPRESENTATIONS TO THE DEPARTMENT OF

09:22AM  15    DEFENSE.  THAT'S THE TYPE OF EVIDENCE THAT WOULD NOT FALL

09:22AM  16    WITHIN THE FOUR CORNERS OF THE INDICTMENT AND WOULD NOT BE A

09:22AM  17    FACTUAL ALLEGATION CONTAINED IN THE INDICTMENT, A THEORY OF

09:22AM  18    LIABILITY, SPECIFICALLY ANY ALLEGED MISSTATEMENTS TO THE

09:22AM  19    DEPARTMENT OF DEFENSE ON WHICH A CONVICTION COULD PROPERLY

09:22AM  20    RELY.

09:22AM  21         AND THIS SECOND SENTENCE, WE BELIEVE, GUARDS AGAINST THAT

09:22AM  22    JUST BY EXPLAINING OVERALL THAT MS. HOLMES IS NOT ON TRIAL FOR

09:22AM  23    ANY CONDUCT OR OFFENSE NOT CHARGED IN THE INDICTMENT.

09:22AM  24              THE COURT:  OKAY.

09:22AM  25         MS. VOLKAR?

09:22AM 1          MS. VOLKAR:  YOUR HONOR, THE PARTIES ARE NOT TOO FAR

09:22AM 2    APART ON THIS INSTRUCTION, AND THAT'S BECAUSE THE FIRST TWO

09:22AM 3    SENTENCES ARE BASED ON THE MODEL INSTRUCTION, AND THE

09:22AM 4    GOVERNMENT HAS NO ISSUE WITH THAT.  WE THINK THAT THAT IS AN

09:23AM 5    ACCURATE STATEMENT THAT SHE'S NOT ON TRIAL FOR ANY CONDUCT OR

09:23AM 6    OFFENSE NOT CHARGED IN THE INDICTMENT.

09:23AM 7          WE FIND THAT THE FOLLOWING SENTENCE IS MERELY REDUNDANT,

09:23AM 8    AND I THINK THAT'S PROBABLY WHAT YOUR HONOR WAS THINKING WHEN

09:23AM 9    YOU COMBINED THE TWO SENTENCES TOGETHER.

09:23AM 10         AND SO WE WOULD SAY THAT TO ADDRESS THE DEFENSE'S CONCERN

09:23AM 11   THAT MR. CLEARY JUST RAISED, THE EASY ANSWER IS TO PROVIDE THE

09:23AM 12   TWO SENTENCES FROM THE MODEL INSTRUCTION, AND THAT REALLY

09:23AM 13   COVERS IT.

09:23AM 14         THE COURT:  I THINK IT'S -- I THINK THE POINT HERE

09:23AM 15   IS THAT MS. HOLMES NOT BE -- THAT THE JURY NOT, NOT ENGAGE OR

09:23AM 16   NOT CONVICT HER ON CONDUCT THAT IS OUTSIDE OF WHAT THE

09:23AM 17   GOVERNMENT HAS ALLEGED, AND THIS IS AN ATTEMPT TO KEEP THEM IN

09:23AM 18   THOSE LANES.  I APPRECIATE THAT.

09:23AM 19         AND I DON'T THINK THAT -- I DO THINK THAT THAT LAST

09:23AM 20   SENTENCE IS UNNECESSARY.

09:23AM 21         I'M GOING TO GIVE IT AS MODIFIED.  I THINK THAT

09:23AM 22   ACCOMPLISHES WHAT YOUR CONCERNS ARE, MR. CLEARY.

09:24AM 23         MR. CLEARY:  WELL, YOUR HONOR, WE WOULD OBJECT FOR

09:24AM 24   THE REASONS IDENTIFIED IN ECF 1174, AND ALTHOUGH WE ARE PLEASED

09:24AM 25   TO HEAR THAT THE COURT INTENDS TO GIVE THE FIRST TWO SENTENCES

09:24AM   1     OF THE MODEL INSTRUCTION, BECAUSE THE -- WE BELIEVE THAT THE

09:24AM   2     MODEL INSTRUCTION AND THE SUPPLEMENTAL SENTENCE PROPOSED BY THE

09:24AM   3     DEFENSE ARE NECESSARY IN THIS CASE BECAUSE THERE'S BEEN

09:24AM   4     EVIDENCE AS DISCUSSED DURING THE ALLEGED CONSPIRACY PERIODS

09:24AM   5     OUTSIDE OF THE FOUR CORNERS OF THE FACTUAL ALLEGATIONS

09:24AM   6     CONTAINED IN THE INDICTMENT, AND THEN THERE HAS ALSO BEEN A

09:24AM   7     SUBSTANTIAL VOLUME OF TESTIMONY SPECIFICALLY BY INVESTORS, BUT

09:24AM   8     ALSO BY PHARMA WITNESSES, CONCERNING INTERACTIONS WITH

09:24AM   9     MS. HOLMES AND OTHER EVIDENCE THAT PREDATES THE 2010 OR 2013

09:24AM  10     TIME PERIOD.

09:24AM  11          SO FOR THAT REASON WE WOULD ASK THAT THE COURT GIVE

09:24AM  12     THAT -- THE THIRD SENTENCE, UNDERSTANDING THE COURT'S RULING.

09:24AM  13               THE COURT:  ALL RIGHT.  WELL, YOU'VE MADE YOUR

09:25AM  14     RECORD.  THANK YOU.

09:25AM  15          MS. VOLKAR, ARE YOU GOING TO ARGUE ANY ACTIVITIES OUTSIDE

09:25AM  16     OF THE CHARGED CONDUCT?

09:25AM  17               MS. VOLKAR:  YOUR HONOR, ONLY WHAT THE COURT HAS

09:25AM  18     HEARD THROUGHOUT THIS TRIAL, WHICH IS THAT THE PRE-INDICTMENT

09:25AM  19     ACTIONS SOMETIMES INFORM -- FOR EXAMPLE, WHAT INVESTORS KNEW

09:25AM  20     BEFOREHAND MIGHT INFORM HOW THEY HEARD INFORMATION FROM

09:25AM  21     MS. HOLMES DURING THE ALLEGED TIME PERIOD.

09:25AM  22          BUT OF COURSE WE HAVE IT LATER IN THESE INSTRUCTIONS, THE

09:25AM  23     ALLEGED TIME PERIODS ARE CLEARLY DEFINED.

09:25AM  24          WE CERTAINLY DO NOT PLAN TO ARGUE THAT SHE IS ON TRIAL OR

09:25AM  25     THAT THE JURY SHOULD FIND HER GUILTY BASED ON ANY PRIOR, OR ANY

8674

09:25AM  1      ACTIVITY PRIOR TO 2010.

09:25AM  2          BUT AS WE HAVE SAID THROUGHOUT THIS TRIAL, THAT ACTIVITY

09:25AM  3      CAN BE RELEVANT TO SHED LIGHT ON CONDUCT THAT OCCURS DURING THE

09:25AM  4      INDICTMENT, AND WE WILL BE VERY CLEAR ABOUT THAT AS WE DISCUSS

09:25AM  5      IT WITH THE JURY.

09:25AM  6          THE COURT:  I THINK WHEN WE GET TO THE INSTRUCTIONS

09:25AM  7      ALSO, THE INSTRUCTIONS THEMSELVES AS TO THE OFFENSES ARE VERY

09:25AM  8      CLEAR AND DELINEATE TIME PERIODS, AND I THINK WE'LL SEE THAT

09:26AM  9      WHEN WE GET TO THEM.

09:26AM 10          BUT YOUR OBJECTIONS ARE NOTED.  THANK YOU.

09:26AM 11          MR. CLEARY:  THANK YOU, YOUR HONOR.

09:26AM 12      I'M GOING TO TURN THE FLOOR OVER TO MS. SAHARIA.

09:26AM 13          THE COURT:  OKAY.  WE'RE NOW AT INSTRUCTION

09:26AM 14      NUMBER 11, AND THIS IS -- THERE'S NO OBJECTION TO 11 OR 12 OR

09:26AM 15      15, I THINK -- 13, PARDON ME, WHICH IS THE DUAL ROLE TESTIMONY.

09:26AM 16          LET ME BE CLEAR ABOUT THAT.  NO OBJECTION TO 11.

09:26AM 17          NO OBJECTION TO 12 AS I UNDERSTAND IT.

09:26AM 18          MS. VOLKAR:  CORRECT.

09:26AM 19          MS. SAHARIA:  CORRECT.

09:26AM 20          THE COURT:  NUMBER 13 IS MODEL 4.15, DUAL ROLE

09:26AM 21      TESTIMONY.

09:26AM 22          I JUST WANTED TO ASK, ARE THE PARTIES SATISFIED WITH

09:26AM 23      GIVING THE DUAL ROLE INSTRUCTION HERE AT THIS POINT?

09:27AM 24          MS. SAHARIA:  YOU MEAN AS OPPOSED TO ELSEWHERE IN

09:27AM 25      THE INSTRUCTIONS?

09:27AM 1      THE COURT:  YES, OR AT ANY OTHER TIME.  LET ME SAY

09:27AM 2  THAT.

09:27AM 3      MS. SAHARIA:  I THINK SO, YOUR HONOR.  BUT I'M HAPPY

09:27AM 4  TO GO BACK AND LOOK WHETHER THERE'S ANY NATURAL PLACE FOR IT.

09:27AM 5  YOU KNOW, WE DON'T HAVE A CLASSIC EXPERT INSTRUCTION --

09:27AM 6      THE COURT:  RIGHT.

09:27AM 7      MS. SAHARIA:  -- BECAUSE THE GOVERNMENT DIDN'T CALL

09:27AM 8  ANY EXPERTS IN THIS CASE.

09:27AM 9    SO I THINK IT'S A FINE PLACE FOR IT, BUT LET ME THINK

09:27AM 10  ABOUT IT AND WE CAN PROPOSE.

09:27AM 11      THE COURT:  WELL, LET ME BE CLEAR, I DON'T HAVE AN

09:27AM 12  OBJECTION TO THE LOCATION OF IT.  THERE WAS DUAL ROLE --

09:27AM 13  POTENTIAL DUAL TESTIMONY GIVEN DURING THE TRIAL AS INDICATED IN

09:27AM 14  THIS INSTRUCTION.

09:27AM 15    WHAT THE COURT DID NOT DO AT THE TIME THIS TESTIMONY WAS

09:27AM 16  GIVEN, I DID NOT INFORM THE JURY AT THAT TIME ABOUT THE

09:27AM 17  POTENTIAL OF THE DUAL TESTIMONY AND HOW THEY SHOULD CONSIDER --

09:27AM 18      MS. SAHARIA:  UNDERSTOOD.

09:27AM 19      THE COURT:  -- IT AT THE TIME OF THE TESTIMONY.

09:27AM 20    MY SENSE WAS THAT WASN'T NECESSARY GIVEN THE SPECIFICS,

09:27AM 21  AND MY SENSE WAS AT THE TIME THE JURY WAS ABLE TO DISTINGUISH

09:28AM 22  BETWEEN FACT AS THE DOCTORS TESTIFIED AND EXPERT AS THEY

09:28AM 23  TESTIFIED.  SO I DIDN'T FIND IT NECESSARY TO GIVE IT THEN, AND

09:28AM 24  I DIDN'T HEAR FROM EITHER SIDE A REQUEST TO GIVE IT AT THAT

09:28AM 25  POINT.

09:28AM 1      THAT'S WHY I RAISE THE POINT NOW.  I DO THINK IT'S

09:28AM 2  APPROPRIATE TO GIVE THE DUAL ROLE TESTIMONY INSTRUCTION.  I

09:28AM 3  THINK THE WAY THAT YOU HAVE MET AND CONFERRED AND PARSED IT OUT

09:28AM 4  HERE IS SUFFICIENT FOR THAT PURPOSE SUCH THAT THE JURY IS

09:28AM 5  INFORMED AS TO THAT TESTIMONY, AND THEY'LL RECALL IT, I'M SURE,

09:28AM 6  AND YOU'LL SPEAK TO IT.

09:28AM 7      THAT'S WHAT I WANTED TO --

09:28AM 8          MS. SAHARIA:  I AGREE, YOUR HONOR.

09:28AM 9          THE COURT:  RIGHT.

09:28AM 10          MS. VOLKAR:  I AGREE, TOO, YOUR HONOR.  IN THE

09:28AM 11  MOMENT I RECALL THE COURT BEING QUITE CLEAR WHAT THE EXPERTISE

09:28AM 12  REFERRED TO AND THERE WAS SPECIFICITY IN THE MOMENT, AND I

09:28AM 13  THINK THAT'S PART OF WHY NEITHER SIDE FELT THAT THERE WAS NEED

09:28AM 14  FOR ADDITIONAL ELABORATION AT THAT POINT IN TIME.

09:29AM 15          THE COURT:  RIGHT.

09:29AM 16          MS. VOLKAR:  AS FAR AS WHERE THIS FALLS IN THE

09:29AM 17  INSTRUCTIONS, I THINK THIS IS IN THE ROW OF DIFFERENT

09:29AM 18  CATEGORIES OF EVIDENCE THAT THE JURY HAS BEFORE IT TO CONSIDER,

09:29AM 19  AND SO IT SEEMS A LOGICAL PLACE TO US.

09:29AM 20      IF THE COURT WANTED TO MOVE IT, FOR EXAMPLE, TO RIGHT

09:29AM 21  AFTER THE CREDIBILITY OF WITNESSES INSTRUCTIONS, OR SOMETHING

09:29AM 22  OF THAT NATURE, I DON'T SEE ANY ISSUE WITH THAT.

09:29AM 23      BUT I THINK IT'S FINE WHERE IT IS.

09:29AM 24          THE COURT:  I'M HAPPY TO HAVE IT HERE.

09:29AM 25          MS. SAHARIA:  THAT'S FINE.  I THINK THERE'S NO

09:29AM 1      LOGICAL PLACE FOR IT TO GO.

09:29AM 2              THE COURT:  RIGHT.  AND THEN MY COMMENT AND

09:29AM 3      MS. VOLKAR'S OBSERVATION ABOUT THE TESTIMONY DURING THE TRIAL,

09:29AM 4      YOU AGREE WITH THAT?

09:29AM 5              MS. SAHARIA:  NEITHER PARTY REQUESTED A

09:29AM 6      CONTEMPORANEOUS INSTRUCTION, SO I THINK WE ARE WHERE WE ARE,

09:29AM 7      WHICH IS TO PUT IT IN THE FINAL INSTRUCTIONS.

09:29AM 8              THE COURT:  OKAY.  LET'S SEE.  14 IS CHARTS AND

09:29AM 9      SUMMARIES NOT ADMITTED, AND 15 IS CHARTS AND SUMMARIES

09:29AM 10     ADMITTED.

09:29AM 11          I'LL GIVE THOSE.

09:29AM 12          NOW WE'RE AT 16, AND THIS IS CONSPIRACY AND THE ELEMENTS.

09:30AM 13          AND WE HAVE TO TALK ABOUT THIS.  LET ME SAY, IT IS VERY

09:30AM 14     HELPFUL THE WAY YOU HAVE PROVIDED THE BLUE/YELLOW HERE FOR YOUR

09:30AM 15     ADDITIONS, AND THAT WAS HELPFUL FOR ME AS I WENT THROUGH THESE.

09:30AM 16          SO AS TO 16, WHICH IS CONSPIRACY ELEMENTS, I WILL -- AND

09:30AM 17     WE WILL GO DOWN TO, I THINK IT'S LINE 23, I THINK IT IS -- AND

09:30AM 18     I WILL GIVE A VARIATION OF LINE 23, AND IT WILL READ:  "NOR IS

09:30AM 19     IT ENOUGH THAT THEY HAD A BUSINESS OR ROMANTIC RELATIONSHIP."

09:31AM 20             MS. VOLKAR:  YOUR HONOR, MAY THE GOVERNMENT BE HEARD

09:31AM 21     ON THAT?

09:31AM 22             THE COURT:  YES.

09:31AM 23             MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT OBJECTS EVEN

09:31AM 24     TO THE COURT'S PROPOSED MODIFIED VERSION.  THERE IS NO

09:31AM 25     SUPPORT -- THE CASE THAT IS CITED I'LL COME BACK TO THAT IN A

09:31AM 1    MOMENT -- THERE'S NO NINTH CIRCUIT SUPPORT, AT LEAST THAT WE'VE

09:31AM 2    BEEN PROVIDED OR THAT THE GOVERNMENT HAS BEEN ABLE TO FIND, TO

09:31AM 3    SUPPORT THE INSTRUCTION THAT THEY WANT HERE, THAT WORKING

09:31AM 4    TOGETHER OR HAVING A ROMANTIC RELATIONSHIP IS NOT ENOUGH.

09:31AM 5        AND I WORRY THAT HAVING THAT IN THE INSTRUCTIONS COULD

09:31AM 6    CONFUSE THE JURY THAT THAT COULD CERTAINLY BE A PIECE ALONG THE

09:31AM 7    WAY TO THEM BEING IN A CONSPIRACY TOGETHER.

09:31AM 8        THE ESPINOZA-VALDEZ CASE THAT THEY CITE HERE HAS VERY

09:31AM 9    DIFFERENT FACTS.  I'M SURE YOUR HONOR HAS READ IT, BUT IT'S A

09:31AM 10   PERSON WHO HAPPENS TO BE SOME DISTANCE AWAY FROM TWO OTHERS,

09:31AM 11   HAS A BACKPACK, IS NEAR THE BORDER OF MEXICO, AND WAS ON TRIAL

09:31AM 12   FOR CONSPIRACY TO SMUGGLE DRUGS.

09:32AM 13       AND THE GOVERNMENT'S THEORY WAS THAT THAT PERSON MUST HAVE

09:32AM 14   BEEN ASSOCIATED WITH THE TWO PEOPLE HE WAS WALKING NEAR BECAUSE

09:32AM 15   THEY WERE ALL FOUND IN THE SAME LOCATION.

09:32AM 16       DRUGS WERE NOT FOUND ON ANY OF THEM.  IT WAS REALLY JUST A

09:32AM 17   THEORY OF THIS IS A COMMON DRUG SMUGGLING ROUTE AND THOSE

09:32AM 18   PEOPLE HAPPENED TO BE NEAR EACH OTHER.

09:32AM 19       AND THAT WAS THE NINTH CIRCUIT SAYING MERE ASSOCIATION IS

09:32AM 20   NOT ENOUGH.

09:32AM 21       THAT, TO ME, IS A FAR CRY FROM THE WORKING TOGETHER IS NOT

09:32AM 22   ENOUGH, THE ROMANTIC RELATIONSHIP IS NOT ENOUGH.

09:32AM 23       I WOULD HOPE THAT WE CAN ALL AGREE THAT THOSE FACTORS --

09:32AM 24   THEY AT LEAST SEEM TO BE PART OF A FACTOR INDICATING THAT ONE

09:32AM 25   MIGHT BE IN A CONSPIRACY.  ONE WOULD CERTAINLY BE A LOT CLOSER

09:32AM  1        TO SOMEONE THEY'RE IN A ROMANTIC RELATIONSHIP WITH.

09:32AM  2            SO I JUST GO BACK TO THE NINTH CIRCUIT HAS NEVER ENDORSED

09:32AM  3        ANYTHING CLOSE TO THIS INSTRUCTION.

09:32AM  4            AND THE INTIMATE PARTNER PORTION, THE ROMANTIC

09:32AM  5        RELATIONSHIP THAT YOUR HONOR JUST MENTIONED, THAT WAS ADDED FOR

09:32AM  6        THE FIRST TIME YESTERDAY, AND THAT IS REALLY WHERE THE

09:32AM  7        GOVERNMENT STRENUOUSLY, STRENUOUSLY OBJECTS.  THERE'S NOTHING

09:32AM  8        THAT INDICATES THAT THAT CANNOT BE A PIECE IN THE PUZZLE

09:33AM  9        TOWARDS SHOWING THAT A CONSPIRACY EXITS, AND WE WORRY THAT IT

09:33AM 10        WOULD BE MISLEADING TO THE JURY TO INCLUDE SUCH AN INSTRUCTION

09:33AM 11        HERE.

09:33AM 12             THE COURT:  THANK YOU.  AND I APPRECIATE THAT.

09:33AM 13            DO YOU THINK IF WE ADDED SOME -- IF THE COURT WERE

09:33AM 14        INCLINED TO GIVE THIS, IF WE ADDED SOMETHING, "NOR IS IT

09:33AM 15        STANDING ALONE," SOME LANGUAGE LIKE THAT OR SOME MODIFICATION?

09:33AM 16            I THINK I UNDERSTAND YOUR CONCERN THAT THE JURY MIGHT LOOK

09:33AM 17        AT THIS AND SAY, WELL, THERE WAS -- THEY DID WORK TOGETHER,

09:33AM 18        THERE WAS A RELATIONSHIP, THEREFORE, THERE'S NOT GUILT HERE

09:33AM 19        BECAUSE OF THAT.

09:33AM 20            IT SEEMS LIKE YOU WANT TO -- I DON'T WANT TO USE THE WORD

09:33AM 21        "SANITIZE," BUT SOMEHOW ENSURE THAT THE JURY DOESN'T -- IF THIS

09:33AM 22        CONCEPT IS GIVEN TO THEM, THAT THEY DON'T ABUSE IT.

09:33AM 23             MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

09:33AM 24            AND I WOULD SAY THAT I THINK RIGHT ABOVE IT, AS THE COURT

09:33AM 25        WILL READ THE ELEMENTS, THAT DOES PROTECT AGAINST THAT.  I

8680

09:33AM 1    DON'T THINK THAT THE "STANDING ALONE" LANGUAGE WOULD SUFFICE TO

09:34AM 2    ALLAY THE GOVERNMENT'S CONCERNS.

09:34AM 3         THE REASON I SAY THAT IS BECAUSE OF COURSE THE ELEMENTS,

09:34AM 4    WHICH WE ALL KNOW, ARE AN AGREEMENT BETWEEN TWO OR MORE PERSONS

09:34AM 5    TO COMMIT WIRE FRAUD, AND THAT SHE BECAME A MEMBER OF THE

09:34AM 6    CONSPIRACY KNOWING OF ONE OF ITS OBJECTS AND HELPING TO INTEND

09:34AM 7    TO ACCOMPLISH IT, SO OF COURSE THE JURY WILL ALREADY HAVE HEARD

09:34AM 8    THAT IN CONTEXT.

09:34AM 9         AND WE UNDERSTAND, FOR EXAMPLE, IN THE SENTENCE PRIOR ON

09:34AM 10   LINES 21 TO 22, "IT'S NOT ENOUGH, HOWEVER, THAT THEY SIMPLY

09:34AM 11   MET, DISCUSSED MATTERS OF COMMON INTEREST, ACTED IN SIMILAR

09:34AM 12   WAYS, WORKED TOGETHER, OR PERHAPS HELPED ONE ANOTHER," IF THE

09:34AM 13   DEFENSE WANT THAT'S CONCEPT TO BE IN THERE.

09:34AM 14        BUT WE DO STRENUOUSLY OBJECT TO THE ROMANTIC RELATIONSHIP

09:34AM 15   OR TO SINGLING OUT THE FACT THAT THEY WORKED TOGETHER.

09:34AM 16        OF COURSE THAT IS PART OF IT.  OF COURSE HOW CLOSE THEY

09:34AM 17   ARE, THE ALMOST 500 PAGES OF TEXT MESSAGES, THOSE DO GO TO AND

09:34AM 18   INDICATE THAT THERE MIGHT HAVE BEEN A CONSPIRACY, AND TO

09:34AM 19   INDICATE OTHERWISE IN THE INSTRUCTIONS I THINK WOULD BE

09:35AM 20   MISLEADING TO THE JURY.

09:35AM 21             THE COURT:  WELL, THOSE ARE GOOD POINTS.

09:35AM 22        MS. SAHARIA?

09:35AM 23             MS. SAHARIA:  I THINK THE "STANDING ALONE" LANGUAGE

09:35AM 24   THAT YOUR HONOR PROPOSED PERFECTLY RESOLVES THE GOVERNMENT'S

09:35AM 25   CONCERN, WHICH IS THE GOVERNMENT'S POSITION, AS I UNDERSTAND

09:35AM  1    IT, IS THAT THE FACT THAT THEY HAD A ROMANTIC RELATIONSHIP IS

09:35AM  2    EVIDENCE, IS SOME RELEVANT EVIDENCE OF A CONSPIRACY.

09:35AM  3         AND THAT'S EXACTLY OUR WORRY HERE, WHICH IS THAT THE JURY

09:35AM  4    MIGHT CONCLUDE FROM THE MERE FACT OF A ROMANTIC RELATIONSHIP OR

09:35AM  5    FROM THE MERE FACT OF A BUSINESS RELATIONSHIP THAT A CONSPIRACY

09:35AM  6    EXISTED.

09:35AM  7         AND SO I THINK THE COURT'S PROPOSAL TO ADD THE "STANDING

09:35AM  8    ALONE" LANGUAGE KIND OF CAPTURES THE MIDDLE GROUND BETWEEN THE

09:35AM  9    TWO PARTIES, WHICH IS THE JURY CAN CONSIDER IT, BUT IT CAN'T

09:35AM  10   CONSIDER THAT BY ITSELF.  THAT'S NOT ENOUGH.

09:35AM  11        AND THE NINTH CIRCUIT CASE LAW MAKES THAT VERY CLEAR.

09:35AM  12   IT'S BLACK LETTER LAW THAT MERE ASSOCIATION OF SOME KIND IS NOT

09:35AM  13   ENOUGH.

09:35AM  14        THE GOVERNMENT BEARS THE BURDEN TO PROVE A MEETING OF THE

09:35AM  15   MINDS BEYOND MERE ASSOCIATION, AND IN THE CONTEXT OF THIS CASE

09:36AM  16   WHERE YOU HAVE TWO PEOPLE WHO ARE BOTH BUSINESS ASSOCIATES AND

09:36AM  17   ROMANTIC ASSOCIATES, WE THINK IT'S IMPORTANT TO CONVEY THAT TO

09:36AM  18   THE JURY IN THIS WAY.

09:36AM  19        SO WE WOULD BE PERFECTLY SATISFIED WITH THE COURT'S -- THE

09:36AM  20   FIRST PROPOSAL THAT THE COURT GAVE WITH THE BUSINESS OR THE

09:36AM  21   ROMANTIC RELATIONSHIP LANGUAGE, AND EVEN ADDING THE "STANDING

09:36AM  22   ALONE" LANGUAGE WOULD BE FINE WITH US AS WELL.

09:36AM  23             THE COURT:  ALL RIGHT.

09:36AM  24             MS. VOLKAR:  YOUR HONOR, I THINK THE GOVERNMENT DOES

09:36AM  25   OBJECT.  I DON'T THINK NINTH CIRCUIT LAW IS CLEAR THAT -- I'M

8682

09:36AM 1      NOT AWARE OF A CASE THAT TALKS ABOUT THE ROMANTIC RELATIONSHIP

09:36AM 2      IN THIS CATEGORY OF MERE ASSOCIATION IS NOT ENOUGH.

09:36AM 3          I THINK MOST OF US WOULD ARGUE THAT A ROMANTIC

09:36AM 4      RELATIONSHIP IS SOMETHING BEYOND MERE ASSOCIATION, SO I DO

09:36AM 5      THINK IT'S A LITTLE BIT IN THE GREY AREA.

09:36AM 6          IF THE COURT IS INCLINED TO GIVE IT, WE DO REQUEST THAT

09:36AM 7      THE "STANDING ALONE" LANGUAGE BE ADDED TO MAKE THAT CLEAR THAT

09:36AM 8      THE COURT IS SAYING THE BUSINESS OR ROMANTIC RELATIONSHIP

09:36AM 9      STANDING ALONE IS NOT SUFFICIENT, THAT THERE DOES HAVE TO BE

09:36AM 10     THE MEETING OF THE MINDS.

09:36AM 11         BUT THE GOVERNMENT DOES OBJECT OVERALL.

09:37AM 12             THE COURT:  ALL RIGHT.  THANK YOU.

09:37AM 13         SO WHEN I LOOKED AT IT FIRST, INTIMATE PARTNER, I THOUGHT

09:37AM 14     THAT WAS TOO SPECIFIC --

09:37AM 15             MS. SAHARIA:  UNDERSTOOD, YOUR HONOR.

09:37AM 16             THE COURT:  -- AND ARGUMENTATIVE.  AND I'M HAPPY TO

09:37AM 17     RECEIVE ANOTHER DEFINITION OF WHAT YOU THINK THE RELATIONSHIP

09:37AM 18     SHOULD BE CALLED, MS. VOLKAR, SOMETHING OTHER THAN ROMANTIC

09:37AM 19     RELATIONSHIP.

09:37AM 20             MS. VOLKAR:  I DON'T TAKE ISSUE WITH THE COURT'S

09:37AM 21     CHARACTERIZATION.  IT'S MORE SO THE CONCEPT ITSELF.

09:37AM 22             THE COURT:  SURE.

09:37AM 23             MS. VOLKAR:  SO IF IT'S GOING TO BE REFERENCED, I

09:37AM 24     THINK THE FORMULATION THAT YOUR HONOR JUST MENTIONED, WHICH IS

09:37AM 25     "THE BUSINESS AND ROMANTIC RELATIONSHIP STANDING ALONE IS NOT

09:37AM 1    ENOUGH," THAT WOULD BE ACCEPTABLE IF THE COURT IS GOING TO GIVE

09:37AM 2    THIS.

09:37AM 3        BUT THE GOVERNMENT'S POSITION IS THAT IT SHOULDN'T BE

09:37AM 4    GIVEN AT ALL.

09:37AM 5            THE COURT:  PRESERVING YOUR OBJECTION.

09:37AM 6            MS. VOLKAR:  EXACTLY.

09:37AM 7            THE COURT:  OKAY.  THANK YOU.

09:37AM 8        TURNING THE PAGE, AND THIS IS PAGE 18, ECF PAGE 19, I AM

09:38AM 9    NOT INCLINED TO GIVE THE HIGHLIGHTING THAT BEGINS AT THE END OF

09:38AM 10   THAT AND OVER TO THE TOP OF LINES 1 AND 2 AS THE DEFENSE

09:38AM 11   REQUESTED.

09:38AM 12       I'LL GIVE THE LINES 3 THROUGH 10, "ONE BECOMES A MEMBER,"

09:38AM 13   AND IT ENDS AT LINE 10, "CONSPIRACY EXISTS."

09:38AM 14       THE NEXT SECTION THAT IS ON LINES 11 THROUGH 16 IS 822,

09:38AM 15   ISN'T IT?

09:38AM 16           MS. SAHARIA:  YES, YOUR HONOR.  WE TOOK TO HEART THE

09:38AM 17   COURT'S REQUEST THAT WE SHORTEN OUR PROPOSED VERSION OF 8.22,

09:38AM 18   AND SO WE DID PROPOSE A SHORTER VERSION OF 8.22, WHICH IS THE

09:38AM 19   MULTIPLE CONSPIRACIES INSTRUCTION.

09:38AM 20       AND I DO THINK IT'S IMPORTANT TO CONVEY THIS CONCEPT TO

09:38AM 21   THE JURY HERE, NOT ONLY BECAUSE THE GOVERNMENT HAS CHARGED TWO

09:38AM 22   DIFFERENT CONSPIRACIES, BUT AS MR. CLEARY WAS ALLUDING TO,

09:39AM 23   THERE IS EVIDENCE IN THE RECORD THAT THE GOVERNMENT PUT INTO

09:39AM 24   ITS CASE ABOUT REPRESENTATIONS TO OTHER FORMS OF INDIVIDUALS OR

09:39AM 25   COMPANIES THAT ARE NOT PART OF THE CHARGED CONSPIRACIES, THE

09:39AM 1     PHARMACEUTICAL COMPANIES, THE DEPARTMENT OF DEFENSE,

09:39AM 2     REGULATORS.

09:39AM 3          AND IT'S IMPORTANT, GIVEN THOSE FACTS, THAT THAT'S THE

09:39AM 4     TYPE OF SITUATION WHERE THE NINTH CIRCUIT HAS SAID A MULTIPLE

09:39AM 5     CONSPIRACIES INSTRUCTION SHOULD BE GIVEN, IF THERE'S A RISK

09:39AM 6     THAT THE JURY COULD FIND THAT A DIFFERENT CONSPIRACY EXISTS,

09:39AM 7     THE COURT SHOULD GIVE THIS MULTIPLE CONSPIRACIES INSTRUCTION,

09:39AM 8     INSTRUCTING THE JURY THAT IT NEEDS TO FIND ONLY THE CONSPIRACY

09:39AM 9     THAT WAS CHARGED IN THE INDICTMENT.

09:39AM 10          THE COURT:  SO WHEN WE LOOK AT THE -- THANK YOU.

09:39AM 11         SO WHEN WE LOOK AT THE USE NOTE, THE USE NOTE INFORMS US

09:39AM 12    THAT THIS COULD BE GIVEN WHEN THERE'S A SINGLE, A SINGLE

09:39AM 13    CONSPIRACY ALLEGED, AND THAT THERE IS SOME DANGER THAT THE

09:39AM 14    FACTS MIGHT YIELD SOMETHING DIFFERENT FROM THE CHARGED CONDUCT.

09:40AM 15         AND HERE, WHEN I LOOK AT THESE HERE, I THINK THE TWO

09:40AM 16    CONSPIRACIES ARE VERY DISTINCT AND THEY'RE CHARGED WITH VERY

09:40AM 17    CLEAR LANGUAGE, AND IT SEEMS LIKE THE CHARGING DOCUMENT, AS

09:40AM 18    WELL AS THE FOLLOWING INSTRUCTIONS, DELINEATE SPECIFICALLY WHAT

09:40AM 19    THE CONSPIRACIES ARE.

09:40AM 20         SO I GUESS THE QUESTION I HAVE IS, WHAT IS THE OTHER

09:40AM 21    CONSPIRACY?  WHAT ARE THE OTHER CONSPIRACIES?  YOU'VE TOLD ME

09:40AM 22    ABOUT DOD AND SOME OTHER THINGS.  BUT, MS. SAHARIA, I'M NOT

09:40AM 23    SURE WE'RE --

09:40AM 24          MS. SAHARIA:  WELL, THAT'S JUST OUR CONCERN,

09:40AM 25    YOUR HONOR, WHICH IS THAT THE JURY COULD BE -- GIVEN THE AMOUNT

8685

09:40AM   1     OF EVIDENCE THAT CAME INTO THIS CASE ABOUT REPRESENTATIONS TO

09:40AM   2     OTHER PARTIES, THAT THE JURY COULD MISTAKENLY CONCLUDE THAT

09:40AM   3     SOME OTHER CONSPIRACY EXISTED, LIKE A CONSPIRACY TO DEFRAUD THE

09:40AM   4     DEPARTMENT OF DEFENSE, AND IT'S IMPORTANT TO GIVE THE JURY THE

09:40AM   5     INSTRUCTION FOR THAT REASON.

09:40AM   6              THE COURT:  MS. VOLKAR?

09:40AM   7              MS. VOLKAR:  YOUR HONOR, I THINK THE COURT CAPTURED

09:40AM   8     IT EXACTLY.  THE TWO CONSPIRACIES ARE CHARGED.  THEY'RE VERY

09:41AM   9     DISTINCT.  THEY'RE VERY CLEAR.

09:41AM  10         THE GOVERNMENT WILL NOT BE ARGUING, AS WE REPRESENTED TO

09:41AM  11     YOUR HONOR PREVIOUSLY, THAT THERE WAS ANY CONSPIRACY TO DEFRAUD

09:41AM  12     THE DEPARTMENT OF DEFENSE.

09:41AM  13         I DO NOT THINK THAT THE EVIDENCE ALONE WILL LEAD THE JURY

09:41AM  14     TO THINK ABOUT THAT.

09:41AM  15         HONESTLY, JUST THE PRIOR PAGE OF THIS INSTRUCTION, WHICH

09:41AM  16     THE PARTIES DO AGREE TO, DEFINES THE TWO CONSPIRACIES,

09:41AM  17     CONSPIRING TO COMMIT WIRE FRAUD AGAINST INVESTORS AND THERANOS

09:41AM  18     DURING A SPECIFIC PERIOD OF TIME; AND CONSPIRING TO COMMIT WIRE

09:41AM  19     FRAUD AGAINST PATIENTS WHO PAID FOR THERANOS'S BLOOD TESTING

09:41AM  20     SERVICES, ALSO DURING A SPECIFIC PERIOD OF TIME.  I DON'T THINK

09:41AM  21     THERE'S ANY RISK FOR CONFUSION HERE, AND THEREFORE, THERE'S NO

09:41AM  22     NEED TO PROVIDE THE MULTIPLE CONSPIRACIES INSTRUCTION.

09:41AM  23              THE COURT:  ANYTHING FURTHER?

09:41AM  24              MS. SAHARIA:  NOTHING FURTHER, YOUR HONOR.

09:41AM  25              THE COURT:  ALL RIGHT.  THANK YOU.

09:41AM 1          MS. SAHARIA:  I DO JUST WANT TO CONFIRM, AT THE

09:41AM 2     BOTTOM OF 18, THE COURT WILL GIVE THE YELLOW LANGUAGE, JUST NOT

09:42AM 3     THE BLUE VERSION OF THE LANGUAGE; CORRECT?

09:42AM 4          THE COURT:  I'M SORRY, WHERE ARE YOU?

09:42AM 5          MS. SAHARIA:  I'M SORRY.  THE BOTTOM OF 18.

09:42AM 6          THE COURT:  PAGE 18?

09:42AM 7          MS. SAHARIA:  YES.  YOU'LL GIVE THE YELLOW LANGUAGE;

09:42AM 8     CORRECT?

09:42AM 9          THE COURT:  YES, THAT'S RIGHT.

09:42AM 10         MS. SAHARIA:  IF I MAY JUST STATE FOR THE RECORD TWO

09:42AM 11    ADDITIONAL OBJECTIONS AS THEY RELATE TO CONSPIRACY?

09:42AM 12         THE COURT:  SURE.

09:42AM 13         MS. SAHARIA:  WE'VE ALREADY COVERED OUR OBJECTIONS

09:42AM 14    TO THE LACK OF AN OVERT ACT ELEMENT, AND I'M NOT GOING TO

09:42AM 15    REPEAT THAT ONE.

09:42AM 16         THE COURT:  RIGHT.

09:42AM 17         MS. SAHARIA:  I DO JUST WANT TO NOTE THAT WE DO

09:42AM 18    REITERATE THE MOTION THAT WE MADE AT THE MOTION TO DISMISS

09:42AM 19    STAGE, THAT OUR POSITION IS THAT THE GOVERNMENT IMPROPERLY

09:42AM 20    EXPANDED THE SCOPE OF THE CHARGED INVESTOR CONSPIRACY AND THE

09:42AM 21    SECOND AND THIRD SUPERSEDING INDICTMENT, SUCH THAT THE THIRD

09:42AM 22    SUPERSEDING INDICTMENT DOES NOT RELATE BACK TO THE ORIGINAL

09:42AM 23    INDICTMENT.

09:42AM 24         THE RESULT OF THAT WOULD BE THAT THE JURY WOULD NEED TO BE

09:42AM 25    INSTRUCTED THAT IT NEEDED TO FIND THAT THE INDICTMENT CONTINUED

09:42AM  1    PAST THE DATE THAT IS FIVE YEARS BEFORE THE RETURN OF THE

09:42AM  2    SECOND SUPERSEDING INDICTMENT.

09:42AM  3         THE COURT HAS REJECTED THAT ARGUMENT, BUT IF THE COURT HAD

09:43AM  4    ACCEPTED IT, WE WOULD HAVE REQUESTED A JURY INSTRUCTION ON THE

09:43AM  5    STATUTE OF LIMITATIONS.

09:43AM  6              THE COURT:  UNDERSTOOD.

09:43AM  7         MS. VOLKAR, DO YOU WANT TO BE HEARD?

09:43AM  8              MS. VOLKAR:  THE GOVERNMENT RELIES ON ITS FILINGS

09:43AM  9    AND AGREES WITH THE COURT'S RULING.

09:43AM  10             THE COURT:  OKAY.  THANK YOU.

09:43AM  11        SO I'M NOT GOING TO GIVE -- RETURNING NOW TO 1188,

09:43AM  12   ECF PAGE 20, PAGE 19 OF THE DOCUMENT, I WON'T GIVE LINES 11

09:43AM  13   THROUGH 16.  THE COURT FINDS THAT'S NOT NECESSARY HERE.

09:43AM  14        THE COURT FINDS THAT THE AS CHARGED, AND IN THE OTHER

09:43AM  15   INSTRUCTIONS, THE TWO, THE TWO CONSPIRACIES ARE SUFFICIENTLY

09:43AM  16   DESCRIBED SUCH THAT THERE DOES NOT APPEAR TO THE COURT THAT

09:43AM  17   THERE WOULD BE JURY CONFUSION AS TO THOSE TWO CONSPIRACIES SUCH

09:43AM  18   THAT 8.22 IS NOT NECESSARY.  I WON'T GIVE 8.22.

09:43AM  19        INITIALLY LET ME SAY THAT I WOULDN'T GIVE 8.22 COMBINED

09:44AM  20   WITH THIS INSTRUCTION.  I THINK THAT'S MORE CONFUSING,

09:44AM  21   CANDIDLY.  BUT I'M NOT GOING TO GIVE IT, SO ENOUGH SAID ON

09:44AM  22   THAT.

09:44AM  23        LET'S MOVE TO 17.  17 IS THE DEFINITION OF WILLFULLY.  I

09:44AM  24   KNOW WE HAD SOME SPIRITED CONVERSATION ABOUT THIS, AND THE

09:44AM  25   BRYAN CASE, BRYAN VERSUS U.S., 524 U.S. 184, THAT THE

8688

```
09:44AM   1        PARTIES -- I THINK BOTH OF YOU TALK ABOUT BRYAN IN RESPONSE.

09:44AM   2             AND, MS. VOLKAR, DO YOU WANT TO BE HEARD ON THIS?

09:44AM   3             MS. VOLKAR:  JUST TO CLARIFY THAT THE AUTHORITY THAT

09:44AM   4   IS ON THIS PAGE UNDER 17 IS WHAT THE DEFENSE SUGGESTS SUPPORTS

09:44AM   5   ITS DEFINITION.

09:44AM   6        THE GOVERNMENT STRONGLY DISAGREES AND THINKS THAT

09:44AM   7   WILLFULLY IS NOT IN THE STATUTE OF 1349.  IT'S NOT IN THE

09:44AM   8   STATUTE FOR CONSPIRACY.

09:44AM   9        WE TOOK YOUR HONOR UP ON THE SUGGESTION OF LOOKING AT

09:45AM  10   CALJIC AND THE OTHER CASES, AND I WOULD NOTE THAT IN THE

09:45AM  11   COMMENTS TO THE CALJIC SECTION, IT SAYS LOOK TO WHETHER

09:45AM  12   WILLFULLY IS IN THE STATUTE.

09:45AM  13        SO I JUST THINK THAT WE FAIL AT STEP ONE.  BUT IF THE

09:45AM  14   COURT IS SO INCLINED -- AND WE'RE GOING TO HAVE THIS

09:45AM  15   CONVERSATION A FEW TIMES TODAY --

09:45AM  16             THE COURT:  RIGHT.

09:45AM  17             MS. VOLKAR:  -- I THINK THE DEFENSE IS TRYING TO

09:45AM  18   HEIGHTEN THE MENS REA FOR WIRE FRAUD UNDULY AND THIS IS ONE OF

09:45AM  19   THOSE INSTANCES.

09:45AM  20        THE GOVERNMENT CERTAINLY OBJECTS TO THE DEFINITION THAT

09:45AM  21   THEY HAVE, WHICH IS THAT THE DEFENDANT HAS TO KNOW THE LAW AND

09:45AM  22   VIOLATE IT.  THAT'S TYPICALLY RESERVED FOR TAX FRAUD CASES AND

09:45AM  23   CERTAINLY NOT APPROPRIATE HERE.

09:45AM  24             THE COURT:  THANK YOU.

09:45AM  25        AND I LOOKED AT THE CALJIC THAT I SUGGESTED, THAT'S CALJIC
```

8689

09:45AM 1        1.20, AND THEN WHEN I LOOK AT THE USE NOTE THERE, IT SAYS NOT

09:45AM 2        TO USE IT FOR SPECIFIC INTENT OFFENSES.

09:45AM 3            SO THAT'S INFORMATIVE, AT LEAST FROM THE CALIFORNIA

09:45AM 4        COURTS.

09:45AM 5            MS. SAHARIA?

09:46AM 6                MS. SAHARIA:  YOUR HONOR, WE WOULD STRONGLY OBJECT

09:46AM 7        TO USING THE CALIFORNIA STANDARD IN THIS CASE.  THE GOVERNMENT

09:46AM 8        CITED NO AUTHORITY FOR IMPORTING A STATE LAW DEFINITION INTO

09:46AM 9        THIS FEDERAL CRIMINAL CASE.

09:46AM 10           AND AS THE COURT NOTES, THIS IS A SPECIFIC INTENT CASE,

09:46AM 11       AND IN PARTICULAR, THE INTENT FOR WIRE FRAUD IS THE INTENT TO

09:46AM 12       INJURE SOMEONE.  IT'S THE INTENT TO DEPRIVE SOMEONE OF MONEY OR

09:46AM 13       PROPERTY.

09:46AM 14           SO TO USE THIS DEFINITION OF WILLFULLY TO DEFINE THE

09:46AM 15       CONSPIRACY TO COMMIT WIRE FRAUD WHEN THIS DEFINITION SAYS THE

09:46AM 16       WORD "WILLFULLY" DOES NOT REQUIRE ANY INTENT TO INJURE ANOTHER

09:46AM 17       WOULD BE SQUARELY CONTRARY TO THIS SPECIFIC INTENT TO COMMIT

09:46AM 18       WIRE FRAUD.

09:46AM 19           SO WE JUST THINK THAT THE STATE LAW DEFINITION IS

09:46AM 20       COMPLETELY INAPPLICABLE HERE AND WOULD BE AN ERROR TO GIVE.

09:46AM 21           WE SUBMIT THE COURT SHOULD GIVE THE BRYAN INSTRUCTION, BUT

09:46AM 22       IF NOT THE BRYAN INSTRUCTION, THEN NO INSTRUCTION AS OPPOSED TO

09:46AM 23       THIS CALIFORNIA INSTRUCTION --

09:46AM 24               THE COURT:  WELL, DON'T POINT THE FINGER AT

09:47AM 25       MS. VOLKAR.  THAT WAS THE COURT'S SUGGESTION TO LOOK AT IT AND

8690

09:47AM  1    SEE IF THERE WAS LANGUAGE THERE THAT COULD BE IMPORTED AND

09:47AM  2    OTHERWISE WORDSMITHED TO ASSIST US.

09:47AM  3        MS. SAHARIA:  I CAN BRIEFLY ELABORATE ON WHY WE

09:47AM  4    THINK THE BRYAN STANDARD IS THE RIGHT STANDARD.  WE DID COVER

09:47AM  5    THAT A LITTLE BIT LAST WEEK.

09:47AM  6        BUT I TAKE ISSUE WITH MS. VOLKAR'S SUGGESTION THAT BRYAN

09:47AM  7    IS A HEIGHTENED STANDARD OF WILLFULNESS THAT APPLIES ONLY IN

09:47AM  8    SPECIALIZED CASES.

09:47AM  9        IN FACT, BRYAN SAYS THE OPPOSITE.  BRYAN SAYS, "AS A

09:47AM 10    GENERAL MATTER, WHEN USED IN THE CRIMINAL CONTEXT, A WILLFUL

09:47AM 11    ACT IS ONE UNDERTAKEN WITH A BAD PURPOSE.  IN OTHER WORDS, IN

09:47AM 12    ORDER TO ESTABLISH A WILLFUL VIOLATION OF A STATUTE, THE

09:47AM 13    GOVERNMENT MUST PROVE THAT THE DEFENDANT ACTED WITH KNOWLEDGE

09:47AM 14    THAT HIS CONDUCT WAS UNLAWFUL."

09:47AM 15        THE DEFENDANT IN BRYAN WAS ADVOCATING AN EVEN HIGHER

09:47AM 16    STANDARD OF WILLFULNESS, AND THE CASES DISTINGUISH BETWEEN THE

09:47AM 17    BRYAN STANDARD, WHICH IS A LESSER OR DEFAULT STANDARD, AND THEN

09:48AM 18    A HIGHER STANDARD WHERE IN THESE COMPLEX CASES, LIKE TAX CASES,

09:48AM 19    THE COURT SOMETIMES REQUIRES A DEFENDANT TO KNOW OF THE

09:48AM 20    PARTICULAR STATUTE AT ISSUE.

09:48AM 21        AND THAT'S NOT OUR ARGUMENT HERE, NOT THAT MS. HOLMES

09:48AM 22    NEEDED TO KNOW OF THE WIRE FRAUD STATUTE, BUT JUST THE GENERAL

09:48AM 23    DEFAULT PRINCIPLE THAT TO ACT WILLFULLY, ONE NEEDS TO INTENT TO

09:48AM 24    ACT UNLAWFULLY, EVEN IF KNOWING OF THE PARTICULAR STATUTE.

09:48AM 25        AND THE NINTH CIRCUIT'S DECISION IN UNITED STATES VERSUS

09:48AM  1    HERNANDEZ, WHICH IS CITED IN THE COMMENTARY TO THIS MODEL

09:48AM  2    RULE -- AND THAT'S AT 859 F.3D 817, NINTH CIRCUIT 2017 -- HAS A

09:48AM  3    VERY GOOD DISCUSSION OF THIS, AND THAT CASE CHARACTERIZES THE

09:48AM  4    BRYAN STANDARD AS, QUOTE, "THE LOWER STANDARD OF WILLFULNESS,"

09:48AM  5    AND IT APPROVES THE DEFINITION OF WILLFULNESS TAKEN FROM THE

09:48AM  6    BRYAN CASE, WHICH IS, "A PERSON ACTS WILLFULLY IF HE ACTS

09:48AM  7    INTENTIONALLY AND PURPOSEFULLY AND WITH THE INTENT TO DO

09:49AM  8    SOMETHING THAT THE LAW FORBIDS, THAT IS, WITH A BAD PURPOSE TO

09:49AM  9    DISOBEY OR DISREGARD THE LAW."

09:49AM  10          WE THINK IT MAKES PERFECT SENSE TO APPLY THIS DEFINITION

09:49AM  11    TO THE CONSPIRACY COUNT BECAUSE THE INSTRUCTIONS FOR CONSPIRACY

09:49AM  12    ALSO PROVIDE THAT THE CRIME OF CONSPIRACY IS THE AGREEMENT TO

09:49AM  13    DO SOMETHING UNLAWFUL.  THAT IS ACTUALLY IN THESE INSTRUCTIONS.

09:49AM  14          AND THAT'S IN PERFECT HARMONY WITH BRYAN'S DEFINITION OF

09:49AM  15    WILLFULNESS.  AND AS WE'VE ALREADY DISCUSSED, THE MODEL

09:49AM  16    INSTRUCTIONS USE THE ADVERB "WILLFULLY" IN TWO PLACES.

09:49AM  17          SO WE SUBMIT THE COURT SHOULD GIVE THE DEFINITION THAT WE

09:49AM  18    HAVE GIVEN, WHICH IS THE BRYAN DEFINITION.  IT'S THE DEFAULT

09:49AM  19    STANDARD IN FEDERAL CRIMINAL LAW.

09:49AM  20          BUT IF THE COURT DOESN'T GIVE THAT, IT CERTAINLY SHOULD

09:49AM  21    NOT GIVE THE STATE LAW DEFINITION GIVEN THAT THIS IS A SPECIFIC

09:49AM  22    INTENT CRIME.

09:49AM  23              THE COURT:  ANYTHING FURTHER, MS. VOLKAR?

09:49AM  24              MS. VOLKAR:  YOUR HONOR, THE PARTIES DO SEEM TO

09:49AM  25    AGREE ON ONE THING, WHICH IS DEPENDING ON THE COURT'S VIEW OF

8692

09:50AM   1    BRYAN, NO INSTRUCTION SHOULD BE GIVEN, AND THAT IS BECAUSE

09:50AM   2    CERTAINLY THE INSTRUCTION THAT THEY HAVE SUGGESTED IS

09:50AM   3    INAPPROPRIATE.

09:50AM   4        AND BRYAN STARTS WITH THERE IS WILLFULLY IN THE STATUTE

09:50AM   5    AND IT IS INTERPRETING A WORD IN THE STATUTE, AND THE ENTIRE

09:50AM   6    OPINION IS ABOUT THAT.

09:50AM   7        AND I WOULD SUBMIT -- I DIDN'T SEE HERNANDEZ IN THE CASES,

09:50AM   8    THE PAGE LONG AUTHORITY CITED HERE.  I DO SEE A LOT OF OUT OF

09:50AM   9    CIRCUIT CASES.

09:50AM  10            THE COURT:  RIGHT.

09:50AM  11            MS. VOLKAR:  I LOOKED AT THE NINTH CIRCUIT CASES.

09:50AM  12    THEY ARE ALL REGULATORY FRAUD VIOLATION CASES THAT HAVE A

09:50AM  13    HIGHER MENS REA, AND EVEN AMONGST THOSE THERE ARE TIERS.

09:50AM  14    SECURITY FRAUD AND CERTAIN HEALTH CARE FRAUD TEND TO HAVE AN

09:50AM  15    INSTRUCTION THAT IS CLOSER TO WHAT THE CALJIC INSTRUCTION IS.

09:50AM  16        ONLY TAX FRAUD CASES THAT I HAVE FOUND TEND TO HAVE THIS

09:50AM  17    HIGHEST ONE OF YOU HAD TO KNOW THE LAW AND KNOW THAT YOU WERE

09:50AM  18    VIOLATING IT.

09:50AM  19        THAT'S RESERVED FOR THE HIGHEST CATEGORY OF REGULATORY

09:50AM  20    FRAUD VIOLATIONS.

09:50AM  21        AS YOU WILL HEAR THE PARTIES AT MULTIPLE TIMES TODAY, I

09:51AM  22    BELIEVE WE AGREE THIS IS NOT A REGULATORY FRAUD VIOLATION CASE.

09:51AM  23        IN FACT, YOUR HONOR INDICATED THAT THE COURT WILL GIVE AN

09:51AM  24    INSTRUCTION ON THAT, AND WE'LL GET THERE LATER.

09:51AM  25        WE ARE JUST SIMPLY SAYING THAT IF THIS IS NOT A REGULATORY

8693

09:51AM 1    FRAUD VIOLATION CASE, WHICH I BELIEVE THE PARTIES AGREE ON,

09:51AM 2    THEN THE HEIGHTENED MENS REA THAT GOES WITH THAT SHOULD ALSO BE

09:51AM 3    OMITTED, AND THAT MEANS THERE SHOULD NOT BE A DEFINITION OF

09:51AM 4    WILLFULNESS.

09:51AM 5        THAT MEANS THAT KNOWINGLY AND THE SPECIFIC INTENT TO

09:51AM 6    DEFRAUD, WHICH HAS BEEN DEFINED BY THE NINTH CIRCUIT OVER AND

09:51AM 7    OVER AND OVER AGAIN, IS WHAT THE MENS REA STANDARD SHOULD BE.

09:51AM 8        THERE SHOULD NOT BE ANY ATTEMPT TO INJECT A HIGHER MENS

09:51AM 9    REA IN THIS STRAIGHTFORWARD WIRE FRAUD AND CONSPIRACY TO COMMIT

09:51AM 10   WIRE FRAUD CASE.

09:51AM 11       AND THE LAST POINT I WANT TO MAKE ON THAT IS, AGAIN, THAT

09:51AM 12   WILLFULLY IS NOT IN THE STATUTE.

09:51AM 13       AND IF THE COURT DID WANT TO GIVE ANYTHING TO FURTHER

09:51AM 14   EXPLAIN THE STRAY REFERENCES OF WILLFULLY IN THE FURTHER

09:51AM 15   EXPLANATION OF THE ELEMENTS OF CONSPIRACY, IT'S REALLY JUST THE

09:52AM 16   INTENT TO ACT WITH PURPOSE, WHICH IS ALONG THE LINES OF WHAT

09:52AM 17   CALJIC SAYS.

09:52AM 18       THE GOVERNMENT'S FIRST POSITION IS REALLY THIS INSTRUCTION

09:52AM 19   WILL INJECT CONFUSION, IT'S NOT WARRANTED, WILLFULLY IS NOT IN

09:52AM 20   THE STATUTE, AND THUS, THIS INSTRUCTION SHOULD NOT BE GIVEN.

09:52AM 21           THE COURT:  WELL, THANK YOU.

09:52AM 22       WE DO NOTE THAT WILLFULLY APPEARS.

09:52AM 23           MS. SAHARIA:  IT DOES.

09:52AM 24           THE COURT:  THERE ARE TWO PLACES WHERE IT'S USED.

09:52AM 25   THAT CAUSED ME SOME CONCERN.  I LOOKED AT THE NORA CASE THAT

8694

09:52AM 1    WAS CITED, 988 F.3D.  AND THAT SEEMED TO -- DID THAT INVOLVE A

09:52AM 2    1349 TYPE CASE?

09:52AM 3            MS. SAHARIA:  IT DID, YOUR HONOR.

09:52AM 4            THE COURT:  IT'S A FIFTH CIRCUIT CASE, I UNDERSTAND

09:52AM 5    THAT, BUT IT DID PROVIDE SOME GUIDANCE AS TO WHEN YOU HAVE THE

09:52AM 6    WORD WILLFULLY, LEAVING IT OUT THERE JUST ALONE IS -- THAT'S

09:52AM 7    WHERE MY CONCERN WAS AS FAR AS JURY CONFUSION, AND DO WE NEED

09:52AM 8    TO ANSWER THAT?  DO WE NEED TO TELL THEM WHAT IS WILLFULLY?

09:53AM 9        WILL WE -- IF WE DON'T, WHAT DO WE DO IN THE FUTURE WHEN

09:53AM 10   THE JURY SENDS A QUESTION OUT AND SAYS, "TELL US ABOUT

09:53AM 11   WILLFULLY."  WHAT SHOULD WE DO WITH THAT?

09:53AM 12           MS. VOLKAR:  I THINK, YOUR HONOR, WE SHOULD WAIT

09:53AM 13   UNTIL THAT -- IF THAT OCCURS, WAIT UNTIL THAT OCCURS.

09:53AM 14       THEN, OF COURSE, THE PARTIES MAY BE BACK HERE HAVING A

09:53AM 15   SIMILAR DEBATE.

09:53AM 16       BUT I DON'T THINK THAT IT IS CONFUSING IN THE BROADER

09:53AM 17   CONTEXT THAT THE WORD "WILLFULLY" IS USED.  ESSENTIALLY IT'S

09:53AM 18   NOT IN THE ELEMENTS OF CONSPIRACY OF INSTRUCTION 16 THAT WE

09:53AM 19   WERE JUST TALKING ABOUT.

09:53AM 20       IT IS TALKING ABOUT WILLFULLY PARTICIPATING AND WILLFULLY

09:53AM 21   JOINING A CONSPIRACY.  AND, AGAIN, I DON'T THINK THAT THAT

09:53AM 22   ALONE WOULD INJECT JUROR CONFUSION.  I THINK SOME PEOPLE COULD

09:53AM 23   READ THAT TO SAY VOLUNTARILY AND NOT AGAINST YOUR WILL.  I

09:53AM 24   THINK THAT'S ONE DEFINITION THAT COULD BE.

09:53AM 25       BUT I ALSO WANT TO JUST STEP BACK TO THE DEFINITION THAT

09:53AM 1    THE DEFENSE IS PROPOSING, THE DANGER THERE IS HEIGHTENING THE

09:54AM 2    MENS REA AND THERE IS A DEARTH OF NINTH CIRCUIT CASE LAW IN

09:54AM 3    THIS AREA.  I THINK BOTH SIDES ACKNOWLEDGE THAT BY NOT CITING

09:54AM 4    MORE FOR THE COURT TO LOOK AT.

09:54AM 5        BUT I WOULD ARGUE THAT THAT IS BECAUSE THE INTENT TO

09:54AM 6    DEFRAUD AND THE SPECIFIC INTENT OF THIS CONTEXT IS SO WELL

09:54AM 7    DEFINED, AND THE REASON THERE'S A DEARTH OF CASE LAW IS BECAUSE

09:54AM 8    THE NINTH CIRCUIT HAS NOT FOLLOWED THESE OTHER CIRCUITS THAT

09:54AM 9    HAVE REQUIRED A HIGHER MENS REA.

09:54AM 10       THE NINTH CIRCUIT, AS SHOWN IN MILLER AND OTHER VERY

09:54AM 11   RECENT CASES, KNOWS EXACTLY WHAT THE MENS REA IS IN THESE

09:54AM 12   CONTEXTS AND HAS REPEATEDLY AFFIRMED IT.

09:54AM 13       I'M NOT AWARE OF ANY DISTRICT COURT IN THIS DISTRICT, FOR

09:54AM 14   EXAMPLE, THAT HAS PROVIDED A WILLFULLY INSTRUCTION IN THE

09:54AM 15   CONSPIRACY TO COMMIT WIRE FRAUD CONTEXT WHEN THERE WASN'T ALSO

09:54AM 16   A SECURITIES FRAUD, TAX FRAUD, REGULATORY FRAUD CASE THAT I'VE

09:54AM 17   TALKED ABOUT.

09:54AM 18       SO I JUST HAVE NOT SEEN A COURT IN THIS DISTRICT GIVE THIS

09:54AM 19   INSTRUCTION WHEN IT'S JUST CONSPIRACY TO COMMIT WIRE FRAUD.

09:55AM 20           THE COURT:  THANK YOU.

09:55AM 21       WHEN I WAS LOOKING AT THIS, IF I WERE TO GIVE THIS, I

09:55AM 22   WOULD STOP AT LINE 4 AFTER THE WORD "FORBIDS" AND I WOULD NOT

09:55AM 23   GIVE THE REST OF THOSE TWO SENTENCES, OR THE REST OF THAT

09:55AM 24   SENTENCE AND THE FOLLOWING.  I JUST DON'T THINK THAT'S

09:55AM 25   APPROPRIATE.

09:55AM  1          I DON'T THINK THAT CHANGES YOUR OPINION, MS. VOLKAR.

09:55AM  2              MS. VOLKAR:  IT DOESN'T, YOUR HONOR.

09:55AM  3          AND I JUST HAVE TO ADD THERE THAT WITH THE INTENT TO DO

09:55AM  4     SOMETHING THE LAW FORBIDS, THAT GETS DANGEROUSLY CLOSE TO THE

09:55AM  5     WILLFULLY DEFINITION FOR TAX FRAUD CASES, AND THE NINTH CIRCUIT

09:55AM  6     HAS ACKNOWLEDGED THAT'S THE HIGHEST MENS REA ASSOCIATED WITH

09:55AM  7     THESE REGULATORY FRAUD CASES.

09:55AM  8          SO THERE'S JUST, THERE'S A LOT OF DANGER IN DOING THAT.

09:55AM  9     IT'S HEIGHTENING THE MENS REA THAT THE JURY HAS TO FIND.  IT

09:55AM  10    WOULD BE INAPPROPRIATE GIVEN THE CHARGES IN THIS CASE.

09:55AM  11             THE COURT:  OKAY.  WELL, THANK YOU FOR THE COMMENT.

09:55AM  12         THIS IS ONE I MIGHT THINK ABOUT A LITTLE BIT.  SO THANK

09:55AM  13    YOU, THIS IS HELPFUL.

09:56AM  14         LET'S MOVE TO 18.  I THINK WE'RE ON 18.  THIS IS 8.23,

09:56AM  15    MODEL INSTRUCTION 8.23.

09:56AM  16         THE SUGGESTED LANGUAGE FROM MS. HOLMES IS LINE 18.

09:56AM  17         I'M NOT INCLINED TO GIVE THAT, MS. SAHARIA.  DO YOU WANT

09:56AM  18    TO BE HEARD?

09:56AM  19             MS. SAHARIA:  I DON'T NEED TO BE HEARD ON THAT ONE,

09:56AM  20    YOUR HONOR.

09:56AM  21             THE COURT:  ALL RIGHT.  THANK YOU.

09:56AM  22         LET ME JUST SAY I THINK THAT'S NEEDLESSLY DUPLICATIVE OF

09:56AM  23    OTHER INFORMATION ALREADY PROVIDED.

09:56AM  24         NOW WE'RE ON INSTRUCTION 19, WHICH IS THE PINKERTON.  I'LL

09:56AM  25    GIVE THAT OVER YOUR OBJECTION, MS. SAHARIA.

8697

09:56AM  1         MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:56AM  2         THE COURT:  AND NOW WE'RE AT 20, WHICH IS WIRE

09:56AM  3    FRAUD.

09:56AM  4         MS. VOLKAR:  YOUR HONOR, I'LL TURN THE MIKE OVER TO

09:56AM  5    MY COLLEAGUE, MR. LEACH.

09:57AM  6         THE COURT:  ALL RIGHT.  THANK YOU.

09:57AM  7       THIS IS MODEL 8.124, MODEL 8.124.

09:57AM  8       I'M ON ECF PAGE 26, AND IT LOOKS LIKE THERE'S NO

09:57AM  9    DISCUSSION ON THE FIRST PAGE, EXCUSE ME -- YES, 26.

09:57AM  10      ON ECF 27 THERE'S SOME SUGGESTIONS HERE.

09:57AM  11        MS. SAHARIA:  YOUR HONOR, IF I MAY BE HEARD ON THE

09:57AM  12   FIRST PAGE JUST VERY BRIEFLY?

09:57AM  13        THE COURT:  SURE.

09:57AM  14        MS. SAHARIA:  WE DID MISS ONE THING, WHICH IS IN THE

09:57AM  15   FIRST PARAGRAPH, IT REFERS TO THE THIRD SUPERSEDING INDICTMENT.

09:57AM  16   ELSEWHERE THE INSTRUCTIONS JUST SAY "THE INDICTMENT," WHICH WE

09:57AM  17   THINK IS MORE APPROPRIATE.

09:57AM  18        THE COURT:  YES.

09:57AM  19        MS. SAHARIA:  AND WE JUST MISSED THAT ONE REFERENCE,

09:57AM  20   SO I WOULD REQUEST THAT IT JUST SAY "THE INDICTMENT."

09:57AM  21        THE COURT:  ANY OBJECTION TO THAT?

09:57AM  22        MR. LEACH:  NO OBJECTION TO THAT, YOUR HONOR.

09:57AM  23   THAT'S FINE.

09:57AM  24        THE COURT:  OKAY.  ALL RIGHT.  THROUGHOUT THE

09:57AM  25   INSTRUCTIONS I -- I DID NOTE THAT AS WELL.  THANK YOU.  SO

09:58AM  1    THROUGHOUT THE INSTRUCTIONS IT SHOULD JUST REFERENCE THE

09:58AM  2    INDICTMENT.

09:58AM  3           MS. SAHARIA:  THAT'S OUR PREFERENCE, YOUR HONOR.

09:58AM  4           THE COURT:  AS TO EACH INSTRUCTION WHERE IT APPEARS.

09:58AM  5           MR. LEACH:  YES.

09:58AM  6           MS. SAHARIA:  THE ONLY OTHER THING I WOULD NOTE ON

09:58AM  7    THE FIRST PAGE IS, AGAIN, AS I DID ON CONSPIRACY, I DID WANT TO

09:58AM  8    RESTATE FOR THE RECORD OUR STATUTE OF LIMITATIONS OBJECTION TO

09:58AM  9    THESE VARIOUS COUNTS OF WIRE FRAUD, AND HAD THE COURT RULED

09:58AM  10   DIFFERENTLY ON THE MOTION TO DISMISS, WE WOULD BE ASKING FOR A

09:58AM  11   STATUTE OF LIMITATIONS INSTRUCTION TO THE JURY, WHICH WOULD

09:58AM  12   FORECLOSE MOST OF THESE COUNTS.

09:58AM  13          SO I JUST WANT TO RESTATE THAT OBJECTION FOR THE RECORD.

09:58AM  14          THE COURT:  OKAY.  THANK YOU.

09:58AM  15          WELL, LET ME JUST START OFF WITH MY OBSERVATIONS.  ON

09:58AM  16   PAGE -- DOCUMENT PAGE 26, ECF PAGE 27, LINES 1 AND 2, THE COURT

09:58AM  17   IS INCLINED TO CHANGE THAT -- THOSE TWO AND, CANDIDLY,

09:58AM  18   INCORPORATE THE LANGUAGE FROM PAGE 18, LINES 10 THROUGH 12,

09:59AM  19   WHICH WOULD READ, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY

09:59AM  20   OF EACH SCHEME TO DEFRAUD, YOU MUST ALL UNANIMOUSLY AGREE WITH

09:59AM  21   RESPECT TO EACH COUNT THAT THE GOVERNMENT HAS PROVED EACH OF

09:59AM  22   THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT."

09:59AM  23          MS. SAHARIA:  THAT'S FINE, YOUR HONOR.

09:59AM  24          MR. LEACH:  COULD YOU SAY THAT ONE MORE TIME,

09:59AM  25   YOUR HONOR?

09:59AM 1             THE COURT:  SURE.

09:59AM 2             "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF EACH SCHEME

09:59AM 3      TO DEFRAUD, YOU MUST ALL UNANIMOUSLY AGREE WITH RESPECT TO EACH

09:59AM 4      COUNT THAT THE GOVERNMENT HAS PROVED EACH OF THE FOLLOWING

09:59AM 5      ELEMENTS BEYOND A REASONABLE DOUBT," AND THEN THERE'S A COLON

09:59AM 6      THERE.

09:59AM 7             MS. SAHARIA:  SO COULD I TAKE BACK MY PRIOR --

09:59AM 8             THE COURT:  YES.

10:00AM 9             MS. SAHARIA:  -- THAT'S FINE, YOUR HONOR?

10:00AM 10     I DO THINK YOUR HONOR SAID "IN ORDER FOR MS. HOLMES TO BE

10:00AM 11     FOUND GUILTY OF EACH SCHEME TO DEFRAUD," AND "SCHEME TO

10:00AM 12     DEFRAUD" IS JUST ONE ELEMENT OF WIRE FRAUD.

10:00AM 13            SO I THINK PERHAPS WHAT IT SHOULD SAY IS, "TO BE FOUND

10:00AM 14     GUILTY OF EACH COUNT OF WIRE FRAUD, YOU MUST ALL UNANIMOUSLY

10:00AM 15     AGREE THAT THE GOVERNMENT HAS PROVED."

10:00AM 16            I THINK IT'S NOT QUITE CORRECT TO CALL IT "TO BE FOUND

10:00AM 17     GUILTY OF A SCHEME TO DEFRAUD," BECAUSE THESE ARE INDIVIDUAL

10:00AM 18     COUNTS OF WIRE FRAUD.

10:00AM 19            THE COURT:  WELL, I -- WHEN I LOOK BACK AT WHAT I

10:00AM 20     TOLD YOU I'M QUOTING FROM, PAGE 18, LINES 10 THROUGH 12, IT

10:00AM 21     ACTUALLY READS, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF

10:01AM 22     EITHER CHARGE."

10:01AM 23            MS. SAHARIA:  CORRECT, BECAUSE THE CHARGES THERE ARE

10:01AM 24     CONSPIRACY, AND HERE THE CHARGE IS NOT A SCHEME TO DEFRAUD, BUT

10:01AM 25     WIRE FRAUD.

10:01AM 1          THE COURT:  WIRE FRAUD, RIGHT.

10:01AM 2          MS. SAHARIA:  EXACTLY.

10:01AM 3          THE COURT:  I UNDERSTAND YOUR DISTINCTION THERE.

10:01AM 4       MR. LEACH?

10:01AM 5          MR. LEACH:  IF I UNDERSTAND THE COURT'S PROPOSAL,

10:01AM 6   IT'S, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF EACH COUNT

10:01AM 7   OF WIRE FRAUD" OR CURRENTLY "SCHEME TO DEFRAUD, YOU MUST ALL

10:01AM 8   UNANIMOUSLY AGREE WITH RESPECT TO EACH COUNT THAT THE

10:01AM 9   GOVERNMENT HAS PROVED THE FOLLOWING," THAT WOULD BE FINE WITH

10:01AM 10  THE GOVERNMENT, YOUR HONOR.

10:01AM 11         THE COURT:  OKAY.  SO LET'S INSERT "COUNT OF WIRE

10:01AM 12  FRAUD" IN PLACE OF "SCHEME TO DEFRAUD."

10:01AM 13      MOVING DOWN.  THE NEXT IS LINE 5.  I WILL ACCEPT THE

10:01AM 14  OMITTED FACTS.

10:01AM 15         MS. SAHARIA:  MAY I BE HEARD ON THAT, YOUR HONOR?

10:02AM 16         THE COURT:  YES.

10:02AM 17         MS. SAHARIA:  I'D LIKE TO MAKE TWO POINTS WITH

10:02AM 18  RESPECT TO OMISSIONS, AND THIS PERMEATES THE INSTRUCTIONS,

10:02AM 19  THESE OBJECTIONS.

10:02AM 20         THE COURT:  OKAY.

10:02AM 21         MS. SAHARIA:  FIRST, AND I WANT TO BE CLEAR THAT I'M

10:02AM 22  DISTINGUISHING A PURE OMISSION DUTY TO DISCLOSE THEORY FROM THE

10:02AM 23  GOVERNMENT'S HALF-TRUTH THEORY, WHICH IS IN THE NEXT SENTENCE,

10:02AM 24  WHICH WE HAVE NOT OBJECTED TO.

10:02AM 25      BUT WHEN IT COMES TO A DUTY TO DISCLOSE, WHICH GIVES RISE

1    TO A PURE OMISSION THEORY, I WANT TO TAKE THAT IN TWO PARTS.

2         FIRST, WITH RESPECT TO THE PATIENT RELATED COUNTS, WE

3    MOVED TO DISMISS THE INDICTMENT, AT THIS POINT I THINK ALMOST

4    TWO YEARS AGO, INSOFAR AS AN ALLEGED OMISSIONS THEORY AND BASED

5    ON A DUTY TO DISCLOSE, AND IN RESPONSE THE GOVERNMENT ARGUED

6    THAT IT HAD ADEQUATELY ALLEGED AN OMISSIONS THEORY BASED ON A

7    DUTY TO DISCLOSE ONLY AS TO INVESTORS.  THAT'S AT ECF 266,

8    PAGE 9.

9         IT DID NOT ARGUE THAT MS. HOLMES OWED A DUTY TO DISCLOSE

10   AS TO PATIENTS.

11        THE COURT'S RULING ON THE MOTION TO DISMISS HELD THAT THE

12   GOVERNMENT HAD ALLEGED A DUTY TO DISCLOSE ONLY AS TO INVESTORS.

13   THAT'S AT ECF 330 AT PAGES 24 TO 26.

14        THE GOVERNMENT HAS NEVER CLAIMED IN THIS CASE IN RESPONSE

15   TO ANY OF OUR ARGUMENTS WITH RESPECT TO OMISSIONS THAT

16   MS. HOLMES COULD POSSIBLY HAVE AN INFORMAL FIDUCIARY TYPE OF

17   RELATIONSHIP WITH PATIENTS, AND IT'S OUR POSITION THAT AS A

18   RESULT, IF THE COURT IS GOING TO CHARGE AN OMISSIONS THEORY AT

19   ALL, IT NEEDS TO BE LIMITED TO THE INVESTOR SCHEME AND NOT

20   APPLIED TO THE PATIENT SCHEME, AND THAT WOULD REQUIRE SOME

21   REVISIONS IF THE COURT IS GOING TO CHARGE ON OMISSIONS.

22        THAT'S POINT ONE.

23        NOW, WHEN IT COMES TO INVESTORS, THE COURT'S PRIOR RULING

24   ON THE MOTION TO DISMISS ESTABLISHED ONLY THAT THE GOVERNMENT

25   HAD ALLEGED FACTS GIVING RISE TO A DUTY TO DISCLOSE TO

10:03AM  1    INVESTORS.

10:03AM  2        WE, OF COURSE, STAND ON OUR OBJECTIONS WITH RESPECT TO

10:04AM  3    THAT RULING.

10:04AM  4        BUT IT WAS STILL INCUMBENT ON THE GOVERNMENT TO COME

10:04AM  5    FORWARD WITH EVIDENCE AT TRIAL THAT WOULD PERMIT A CHARGE TO

10:04AM  6    THE JURY ON THIS THEORY, AND WE SUBMIT THAT THE GOVERNMENT HAS

10:04AM  7    FAILED TO DO THAT.

10:04AM  8        THE TEST FOR A DUTY TO DISCLOSE COMES FROM THE

10:04AM  9    NINTH CIRCUIT'S DECISION IN UNITED STATES VERSUS SHIELDS,

10:04AM  10   844 F.3D 819.

10:04AM  11       THAT CASE HOLDS THAT A DUTY TO DISCLOSE REQUIRES EITHER A

10:04AM  12   FORMAL FIDUCIARY RELATIONSHIP OR AN INFORMAL TRUSTING

10:04AM  13   RELATIONSHIP IN WHICH ONE PARTY ACTS FOR THE BENEFIT OF

10:04AM  14   ANOTHER, AND INDUCES THE TRUSTING PART TO RELAX THE CARE AND

10:04AM  15   VIGILANCE WHICH IT WOULD ORDINARILY EXERCISE.

10:04AM  16       AND THERE ARE TWO PARTS TO THAT TEST.  ONE, ONE PARTY MUST

10:04AM  17   ACT FOR THE BENEFIT OF ANOTHER; AND THEN IT MUST INDUCE THE

10:04AM  18   TRUSTING PARTY TO RELAX CARE AND VIGILANCE.

10:04AM  19       ON THAT LATTER ELEMENT, THE TRUST NEEDS TO BE CREATED BY

10:04AM  20   THE DEFENDANT'S POSITION IN THE TRANSACTION.  THAT COMES FROM

10:04AM  21   THE MILOVANOVIC CASE, 678 F.3D 713.

10:05AM  22       NO EVIDENCE SATISFIES THIS TEST WHEN IT COMES TO THE

10:05AM  23   INVESTORS.  THERE'S NO EVIDENCE THAT MS. HOLMES WAS ACTING FOR

10:05AM  24   THE BENEFIT OF POTENTIAL INVESTORS AS OPPOSED TO FOR THE

10:05AM  25   BENEFIT OF THERANOS.  THERE'S NO AGENCY TYPE OF RELATIONSHIP

10:05AM  1    BETWEEN MS. HOLMES AND POTENTIAL INVESTORS, NO EVIDENCE THAT

10:05AM  2    HER POSITION IN THE RELATIONSHIP INDUCED INVESTORS TO RELAX THE

10:05AM  3    CARE AND VIGILANCE THEY WOULD ORDINARILY EXERCISE.

10:05AM  4        THE GOVERNMENT'S EVIDENCE ESTABLISHES NOTHING MORE THAN A

10:05AM  5    NORMAL ARM'S LENGTH TRANSACTION, WHICH CANNOT SATISFY THE TEST

10:05AM  6    FOR A DUTY TO DISCLOSE.

10:05AM  7        EACH INVESTOR WITNESS WAS A SOPHISTICATED INVESTOR.  TWO

10:05AM  8    WERE LARGE NATIONAL COMPANIES.  WALGREENS REPRESENTED IN ITS

10:05AM  9    AGREEMENT WITH THERANOS THAT THERANOS WAS NOT ITS AGENT AND DID

10:05AM  10   NOT HAVE AUTHORITY TO REPRESENT IT.  THAT'S TX 372, PAGE 19.

10:05AM  11       SAFEWAY MADE THE SAME EXACT REPRESENTATION, TX 387,

10:05AM  12   PAGE 21.

10:06AM  13       THE OTHER INVESTORS WERE WEALTHY, EXPERIENCED INVESTORS,

10:06AM  14   ALL OF WHOM AFFIRMED THAT THEY WERE ACCREDITED INVESTORS WITHIN

10:06AM  15   THE MEANING OF THE S.E.C. RULES, AND THEIR AGREEMENTS WITH

10:06AM  16   THERANOS AFFIRMATIVELY DISCLAIMED AN INFORMAL FIDUCIARY

10:06AM  17   RELATIONSHIP WITH THERANOS.

10:06AM  18       SECTION 4.3 OF THE INVESTOR AGREEMENT, TX 1505 IS ONE

10:06AM  19   EXAMPLE, BUT THEY'RE ALL THE SAME, AND I QUOTE, "SUCH INVESTOR

10:06AM  20   OR ITS PURCHASER REPRESENTATIVE CAN PROTECT ITS OWN INTERESTS."

10:06AM  21   EACH INVESTOR CERTIFIED TO THAT, THAT THEY WERE NOT RELYING ON

10:06AM  22   MS. HOLMES TO PROTECT THEIR INTERESTS, THEY WERE PROTECTING

10:06AM  23   THEIR OWN INTERESTS.

10:06AM  24       THEY ALSO CERTIFIED THAT EACH INVESTOR, QUOTE, "HAS SUCH

10:06AM  25   KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS SO

10:06AM 1     THAT SUCH INVESTOR IS CAPABLE OF EVALUATING THE MERITS AND

10:06AM 2     RISKS OF ITS INVESTMENT IN THE COMPANY."

10:06AM 3         SECTION 4.5, THEY WENT ON TO ACKNOWLEDGE THAT THEY WERE

10:07AM 4     NOT NECESSARILY RECEIVING ALL INFORMATION FROM THERANOS.  THEY

10:07AM 5     ACKNOWLEDGED THAT THE DISCUSSIONS AND INFORMATION THAT THEY

10:07AM 6     RECEIVED, QUOTE, "WERE INTENDED TO DESCRIBE CERTAIN ASPECTS OF

10:07AM 7     THE COMPANY'S BUSINESS AND PROSPECTS, BUT WERE NOT NECESSARILY

10:07AM 8     A THOROUGH OR EXHAUSTIVE DESCRIPTION."

10:07AM 9         THEY WERE THUS ADMITTING THAT THERE WAS SOME INFORMATION

10:07AM 10    THAT WAS NOT SHARED WITH THEM, IN OTHER WORDS, THAT THERE MAY

10:07AM 11    BE OMISSIONS, AND WE SUBMIT THAT TO IMPLY A DUTY TO DISCLOSE ON

10:07AM 12    THESE FACTS WITH THESE INVESTORS WOULD BE ERROR, IT WOULD

10:07AM 13    REWRITE THE PARTIES' AGREEMENTS, AND IT WOULD CREATE A DUTY

10:07AM 14    RESPECTIVELY THAT NEVER EXISTED IN REAL TIME.

10:07AM 15        WE STRENUOUSLY OBJECT TO ANY INSTRUCTION ON A DUTY TO

10:07AM 16    DISCLOSE OR OMISSIONS.

10:07AM 17             THE COURT:  ALL RIGHT.  THANK YOU.

10:07AM 18        MR. LEACH?

10:07AM 19             MR. LEACH:  YOUR HONOR, I THINK THE LANGUAGE IN THE

10:07AM 20    PROPOSED INSTRUCTION ON PAGE 27 FROM LINE 17 TO 21 CURES ALL OF

10:07AM 21    THE CONCERNS THAT MS. SAHARIA IS EXPRESSING, AND SHE'S CITED TO

10:08AM 22    EVIDENCE IN THE RECORD FROM WHICH A JURY MIGHT FIND THERE WAS

10:08AM 23    NO DUTY, AND I SUSPECT THOSE ARE ARGUMENTS THAT WILL BE MADE IN

10:08AM 24    CLOSING AND WILL GO TO THE WEIGHT OF THE EVIDENCE AND WHETHER

10:08AM 25    THERE'S A SUFFICIENT FOUNDATION HERE.

10:08AM 1    SO I THINK THE INSTRUCTION AT LEAST I ASSUME WE'RE

10:08AM 2  GETTING -- THE PORTION I ASSUME WE'RE GETTING TO LAYS OUT FOR

10:08AM 3  THE JURY EXACTLY WHAT IT NEEDS TO FIND FOR THIS OMISSIONS

10:08AM 4  THEORY TO WORK.

10:08AM 5    I DO THINK THAT THERE IS EVIDENCE IN THE RECORD THAT

10:08AM 6  SUPPORTS AN OMISSIONS THEORY, SPECIFICALLY WITH RESPECT TO SOME

10:08AM 7  OF THE EARLY INVESTORS, LIKE MR. EISENMAN AND MR. LUCAS WHO

10:08AM 8  SAID THAT THEY HAD BEEN LONG-TIME SHAREHOLDERS WITH THERANOS,

10:08AM 9  THEY GOT LIMITED INFORMATION FROM THEM, THEY GREW TO TRUST

10:08AM 10  MS. HOLMES AND, FOR LACK OF A BETTER WORD, LET THEIR GUARD

10:08AM 11  DOWN.

10:08AM 12    SO I THINK THERE ARE FACTS FROM WHICH A JURY COULD FIND

10:08AM 13  THIS PORTION OF THE INSTRUCTION SATISFIED, AND SO ON THAT BASIS

10:08AM 14  I THINK IT'S APPROPRIATE TO GIVE AN OMISSIONS INSTRUCTION HERE.

10:09AM 15    THEY'D MADE A LOT OF ARGUMENTS THAT GO TO THE WEIGHT OF

10:09AM 16  WHETHER THE JURY CAN OR CAN'T FIND THAT, BUT THE INSTRUCTIONS

10:09AM 17  AS THEY'RE WRITTEN ARE LAYING OUT THE PREDICATE FOR WHAT THE

10:09AM 18  OMISSIONS THEORY WOULD ENTAIL.

10:09AM 19    WITH RESPECT TO THE PATIENT POINT, I THINK WE'RE NOT

10:09AM 20  ARGUING A DUTY TO DISCLOSE TO PATIENTS BASED ON OMISSIONS.

10:09AM 21  THAT COULD BE CURED BY SIMPLY SAYING, "YOU MAY NOT CONVICT

10:09AM 22  MS. HOLMES OF A WIRE THEORY BASED ON OMISSIONS WITH RESPECT TO

10:09AM 23  COUNTS," WHATEVER THE PATIENT COUNTS ARE.  SO I THINK THERE IS

10:09AM 24  A WAY TO ADDRESS THAT.

10:09AM 25    THE COURT:  SO YOU AGREE WITH THE PATIENTS, THEY'RE

10:09AM  1    NOT PART OF AN OMISSION?

10:09AM  2              MR. LEACH:  I DO.  I WOULD WANT TO BE CAREFUL ON HOW

10:09AM  3    THAT IS ADDRESSED BECAUSE I THINK WE SHOULD HAVE ONE

10:09AM  4    INSTRUCTION FOR WIRE FRAUD AND NOT MULTIPLE INSTRUCTIONS.

10:09AM  5              THE COURT:  SURE.

10:09AM  6              MR. LEACH:  BUT WITH RESPECT TO THE INVESTORS, I DO

10:09AM  7    THINK THERE ARE FACTS IN THE RECORD SUPPORTING THE ARGUMENT

10:09AM  8    THAT INVESTORS LET THEIR GUARD DOWN IN PART BECAUSE OF THE

10:09AM  9    TIGHTLY HELD NATURE OF INFORMATION THAT MS. HOLMES CONDUCTED

10:10AM  10   HERSELF WITH, PARTLY BECAUSE OF THE LONG-TERM RELATIONSHIP WITH

10:10AM  11   SOME OF THE INVESTORS WITH THERANOS, PART OF THE WAYS

10:10AM  12   MS. HOLMES ENCOURAGED INVESTORS TO RELY SOLELY ON PUBLIC

10:10AM  13   INFORMATION AS OPPOSED TO WHAT SHE WAS RECEIVING, AND I THINK

10:10AM  14   THIS LANGUAGE AT 17 THROUGH 21 TELLS, ON PAGE 27, TELLS THE

10:10AM  15   JURY EXACTLY WHAT THEY NEED TO FIND IN ORDER TO RELY ON OMITTED

10:10AM  16   FACTS.

10:10AM  17              THE COURT:  PAGE 27 OF THE DOCUMENT, NOT THE ECF

10:10AM  18   PAGE?

10:10AM  19              MR. LEACH:  PAGE 27 AT ECF -- OH, PAGE 28 OF THE

10:10AM  20   ECF, YES, THANK YOU.

10:10AM  21              THE COURT:  RIGHT.

10:10AM  22          WHAT ABOUT MS. SAHARIA'S COMMENT THAT THE INVESTORS WERE

10:10AM  23   UNDER A CONTRACTUAL RELATIONSHIP AND THAT THAT SHOULD OBVIATE

10:10AM  24   ANY OTHER, ANY OTHER CONCERN ABOUT OMISSIONS BECAUSE THEY WERE

10:10AM  25   UNDER CONTRACT?

10:10AM 1          MR. LEACH:  I THINK THAT'S A WEIGHT ARGUMENT,

10:10AM 2     YOUR HONOR, NOT A, IS IT APPROPRIATE TO INSTRUCT ON THIS?

10:10AM 3     ALAN EISENMAN TESTIFIED THAT'S BOILER PLATE, THAT -- YOU KNOW,

10:11AM 4     THAT WAS HIS TESTIMONY.  AND SO HE'S SAYING, "YES, I SIGNED

10:11AM 5     THAT, BUT BOTH PARTIES KNEW THAT THAT'S BOILER PLATE THAT WE

10:11AM 6     HAVE TO DO TO DO THAT TRANSACTION."

10:11AM 7          AND IT'S A WEIGHT ARGUMENT.

10:11AM 8          THE COURT:  DOES THERE -- AND, MS. SAHARIA, DOES

10:11AM 9     THERE HAVE TO BE -- IF THERE WERE FURTHER REFINEMENT ON THIS,

10:11AM 10    THAT THE JURY FIND THAT THEY ACTED ON RELIANCE OR SOME OTHER

10:11AM 11    MEASURE FROM MS. HOLMES'S REPRESENTATION, THEN PERHAPS THAT

10:11AM 12    WOULD ALLOW FOR AN OMISSION IF THEIR CONTRACTUAL BELIEF WAS

10:11AM 13    OVERCOME BY REPRESENTATIONS, MISREPRESENTATIONS, I COULD SEE

10:11AM 14    WHERE IT MIGHT, IT MIGHT LIE THEN.

10:11AM 15         MS. SAHARIA:  I RESPECTFULLY THINK THAT WOULD NOT

10:11AM 16    SATISFY THE SHIELDS TEST BECAUSE A DUTY TO DISCLOSE DOES NOT

10:11AM 17    ARISE SIMPLY BECAUSE ONE PARTY IS MISLED BY ANOTHER.

10:11AM 18         IF THAT WERE THE CASE, THERE WOULD BE A DUTY TO DISCLOSE

10:12AM 19    ANY TIME THERE'S AN AFFIRMATIVE MISREPRESENTATION.

10:12AM 20         THE SHIELDS TEST REQUIRES THAT THERE BE SOMETHING AKIN TO

10:12AM 21    AN INFORMAL FIDUCIARY RELATIONSHIP, AND THAT IS IN WHICH ONE

10:12AM 22    PARTY IS ACTING FOR THE BENEFIT OF THE OTHER PARTY, SO AGENCY

10:12AM 23    TYPE SITUATIONS, WHICH WE SIMPLY DON'T HAVE HERE.

10:12AM 24         AND I DON'T QUITE UNDERSTAND MR. LEACH'S COMMENT THAT

10:12AM 25    INVESTORS LIKE MR. EISENMAN RELAXED THEIR DUTY OF CARE BECAUSE

10:12AM 1    THEY KNEW SHE WASN'T GIVING THEM ALL OF THE INFORMATION.

10:12AM 2        IF THEY KNEW SHE WASN'T GIVING THEM ALL OF THE

10:12AM 3    INFORMATION, THEN HOW COULD THERE POSSIBLY BE AN INFORMAL

10:12AM 4    FIDUCIARY RELATIONSHIP IN WHICH SHE HAD A DUTY TO DISCLOSE?

10:12AM 5    THEY KNEW THAT THEY WERE NOT RECEIVING ALL OF THE INFORMATION.

10:12AM 6        SO I DO NOT THINK THAT THERE IS EVIDENCE IN THE RECORD

10:12AM 7    THAT SUPPORTS THE GIVING OF THIS INFORMATION.

10:12AM 8        AND IT'S NO ANSWER TO SAY THAT, WELL, THE INSTRUCTION IS

10:12AM 9    IN HERE, SO THE JURY WILL JUST FOLLOW IT, BECAUSE ANY

10:12AM 10   INSTRUCTION NEEDS TO HAVE SOME EVIDENTIARY BASIS IN THE RECORD

10:12AM 11   BEFORE IT'S GIVEN TO THE JURY, AND WE AGAIN SUBMIT THERE'S JUST

10:13AM 12   NO EVIDENTIARY BASIS ON THIS RECORD TO INSTRUCT THE JURY THAT

10:13AM 13   THEY COULD FIND THAT THESE INVESTORS, THESE SOPHISTICATED

10:13AM 14   INVESTORS, HAD AN INFORMAL FIDUCIARY RELATIONSHIP WITH

10:13AM 15   MS. HOLMES.

10:13AM 16           THE COURT:  WELL, MR. LEACH, IS THERE -- MY SENSE IS

10:13AM 17   THAT THE GOVERNMENT'S THEORY IS THAT EVERYONE WAS MISLED.

10:13AM 18   DESPITE THEIR SOPHISTICATION, THEY WERE MISLED AND OVERCOME.

10:13AM 19           MR. LEACH:  YES, YOUR HONOR.

10:13AM 20           THE COURT:  AND IS THERE ANOTHER WAY TO GET YOUR

10:13AM 21   ARGUMENT IN TO INSTRUCT THE JURY ON THAT ABSENT AN OMISSION?

10:13AM 22       I'M TRYING TO SEE WHETHER -- IF IT'S A MISLEADING, IF

10:13AM 23   THAT'S THE GOVERNMENT'S CASE, THAT MS. HOLMES MISLED, DOES THAT

10:13AM 24   NECESSARILY CAPTURE OMISSION?  OR IS IT REALLY MISSTATEMENT?

10:13AM 25   OR ARE THEY THE SAME THING?

10:13AM  1          MR. LEACH:  I'M NOT SURE IF THAT WOULD CAPTURE IT,

10:13AM  2  YOUR HONOR, AND PART OF THE CONCERN HERE IS THAT I THINK

10:14AM  3  THERE'S GOING TO BE SOME FORM OF ARGUMENT THAT THE DEFENDANT

10:14AM  4  CONTRACTED HER WAY OUT OF FRAUD, THAT SHE HAD THESE LENGTHY

10:14AM  5  INVESTOR AGREEMENTS THAT DESCRIBED ACCESS TO INFORMATION, AND

10:14AM  6  BECAUSE I DID THAT, I GET A FREE PASS FOR EVERYTHING I SAY TO

10:14AM  7  THEM, INCLUDING INVESTORS WITH WHOM SHE HAD LONG-TERM

10:14AM  8  RELATIONSHIPS OVER THE COURSE OF MANY, MANY YEARS, AND, YOU

10:14AM  9  KNOW, SHE WAS A FIDUCIARY TO HER SHAREHOLDERS IN THE SENSE OF

10:14AM 10  HER SERVING AS THE CEO.

10:14AM 11        SO I'M NOT SURE THE COURT'S PROPOSAL WOULD SATISFY THE

10:14AM 12  GOVERNMENT.

10:14AM 13        AND AGAIN, THE JURY IS BEING INSTRUCTED ON WHAT IT'S

10:14AM 14  REQUIRED TO FIND FOR THIS OMISSIONS THEORY TO WORK, AND IT CAN

10:14AM 15  ACCEPT -- YOU KNOW, IF IN THE DEFENSE CLOSING IF THEY'RE SAYING

10:14AM 16  THIS WAS NOT A FIDUCIARY RELATIONSHIP, LOOK AT THE CONTRACTS,

10:14AM 17  THE JURY MAY ACCEPT THAT.

10:14AM 18        THE JURY MAY ACCEPT ALAN EISENMAN'S TESTIMONY THAT, "YES,

10:14AM 19  I SIGNED THIS, BUT I TRUSTED MS. HOLMES AND MR. BALWANI, THAT

10:15AM 20  THEY WEREN'T LEADING ME ASTRAY HERE."

10:15AM 21        SO I THINK SO LONG AS THE COURT IS LAYING OUT WHAT THE

10:15AM 22  OMISSIONS THEORY REQUIRES, IT'S AN APPROPRIATE INSTRUCTION ON

10:15AM 23  THE LAW AND THE PARTIES CAN ARGUE THE WEIGHT OF THE FACTS AS

10:15AM 24  THEY SEE THEM THERE.

10:15AM 25        THE COURT:  SO NOTHING PRECLUDES MS. SAHARIA FROM

10:15AM 1    ARGUING TO THE JURY, WITH YOUR INCLUSION HERE, NOTHING

10:15AM 2    PRECLUDES HER FROM ARGUING TO THE JURY THAT THERE IS NO

10:15AM 3    OMISSIONS IN THIS CASE BECAUSE LOOK AT THE CONTRACT, AND THAT'S

10:15AM 4    A FACTUAL FINDING THAT THEY CAN MAKE, THAT THE CONTRACT

10:15AM 5    SUGGESTS THAT THERE'S NO FIDUCIARY RELATIONSHIP.

10:15AM 6            MR. LEACH:  YES.

10:15AM 7            THE COURT:  AND THEREFORE, IT DOESN'T LIE.

10:15AM 8        AND WHAT IS THE OMISSION THEORY THEN?  IS IT THAT

10:15AM 9    MS. HOLMES OMITTED THE FINANCIAL -- THE TRUE FINANCIAL STATUS

10:15AM 10   OF THE BUSINESS, THE TRUE BUSINESS RELATIONSHIPS WITH THIRD

10:15AM 11   PARTIES?  IS THAT THE OMISSION, OR IS THAT A MISREPRESENTATION?

10:15AM 12       I'M BACK TO THAT DISTINCTION.

10:16AM 13           MR. LEACH:  I THINK THERE ARE BOTH FALSE

10:16AM 14   REPRESENTATIONS AND OMISSIONS.  I THINK ONE COULD ARGUE THAT

10:16AM 15   HAVING A DEMO WITH THE MINILAB AS THE DEVICE IN THE ROOM AND

10:16AM 16   SAYING, HERE IS HOW WE DO PATIENT TESTING, THAT THAT IS A

10:16AM 17   DECEITFUL HALF-TRUTH IF THEY'RE DOING TESTING WITH THIRD PARTY

10:16AM 18   SIEMENS MACHINES.

10:16AM 19       I THINK WITHOUT THE DEVICE THERE, OR WITHOUT SOME OTHER

10:16AM 20   STATEMENTS SIMPLY OMITTING THE FACT THAT THEY'RE USING MODIFIED

10:16AM 21   THIRD PARTY DEVICES MIGHT BE A PURE OMISSION.

10:16AM 22       SO I THINK IT'S A BLEND OF FALSE STATEMENTS, HALF-TRUTHS,

10:16AM 23   WHICH DO BY THEMSELVES GIVE RISE TO A DUTY TO DISCLOSE, AND, IN

10:16AM 24   SOME CIRCUMSTANCES, PURE OMISSIONS, YOUR HONOR.

10:16AM 25           THE COURT:  SO, MS. SAHARIA, WHY DOESN'T LINE 17,

10:16AM 1    WHY DON'T THOSE ALLOW YOU TO ARGUE SUCH THAT YOU'RE PROTECTED?

10:17AM 2         MS. SAHARIA:  WELL, THEY DO ALLOW US TO ARGUE,

10:17AM 3    YOUR HONOR.

10:17AM 4       BUT, AGAIN, I COME BACK TO THE POINT THAT THE COURT SHOULD

10:17AM 5    NOT BE INSTRUCTING ON A THEORY THAT LACKS EVIDENTIARY BASIS,

10:17AM 6    AND I STILL HAVEN'T HEARD ANY EVIDENTIARY BASIS FOR THERE BEING

10:17AM 7    AN INFORMAL FIDUCIARY RELATIONSHIP.

10:17AM 8       IT'S NOT JUST ENOUGH THAT ONE PARTY BELIEVES THE OTHER, OR

10:17AM 9    THAT ONE PARTY TRUSTS THE OTHER.  THAT'S NOT WHAT THE SHIELDS

10:17AM 10   TEST STATES.  IT STATES THAT ONE PARTY NEEDS TO BE ACTING FOR

10:17AM 11   THE OTHER, FOR THE BENEFIT OF THE OTHER, AND THAT'S NOT THE

10:17AM 12   KIND OF RELATIONSHIP THAT WE HAVE HERE.  SO I JUST COME BACK TO

10:17AM 13   THAT.

10:17AM 14      THERE'S NO EVIDENTIARY BASIS FOR THIS.

10:17AM 15      MR. LEACH'S EXAMPLES WERE ALL HALF-TRUTH TYPE OF EXAMPLES

10:17AM 16   TO IMPLY -- THAT'S DISTINCT.  WE'RE NOT TALKING ABOUT

10:17AM 17   HALF-TRUTHS.  WE'RE TALKING ABOUT A PURE DUTY TO DISCLOSE.

10:17AM 18      THE ARGUMENT THAT THEY MIGHT MAKE IN CLOSING THAT

10:17AM 19   MS. HOLMES HAD A DUTY TO TELL INVESTORS EVERY SINGLE THING

10:17AM 20   ABOUT THE COMPANY, EVEN IF SHE DIDN'T SAY ANYTHING ABOUT THOSE

10:17AM 21   ASPECTS OF THE COMPANY, THAT'S THE DANGER OF A DUTY TO DISCLOSE

10:18AM 22   THEORY IN THIS CASE.

10:18AM 23         THE COURT:  MR. LEACH, ANYTHING FURTHER?

10:18AM 24         MR. LEACH:  I DON'T BELIEVE IT'S THE GOVERNMENT'S

10:18AM 25   INTENTION TO ARGUE THAT SHE HAD A DUTY TO DISCLOSE EVERY SINGLE

10:18AM   1    FACT ABOUT THERANOS, AND WE SUBMIT THIS INSTRUCTION IS

10:18AM   2    APPROPRIATE AS WORDED AND THE INCLUSION OF LINES 17 THROUGH 21

10:18AM   3    GIVE THE DEFENSE THE LATITUDE TO ARGUE THE GOVERNMENT SIMPLY

10:18AM   4    HASN'T MET ITS BURDEN THERE.

10:18AM   5            THE COURT:  ALL RIGHT.  THANK YOU.

10:18AM   6        I'M GOING TO LOOK AT THIS SOME MORE, AND I APPRECIATE YOUR

10:18AM   7    COMMENTS ON THIS.

10:18AM   8            MS. SAHARIA:  THANK YOU, YOUR HONOR.

10:18AM   9            THE COURT:  LET'S SEE.

10:18AM  10            MS. SAHARIA:  I THINK WE'RE UP TO A SCHEME TO

10:18AM  11    DEFRAUD.  THIS IS LINE 5 ON ECF PAGE 27.

10:19AM  12        THIS IS THE LANGUAGE THAT THE COURT INCLUDED IN THE

10:19AM  13    PRELIMINARY INSTRUCTIONS.

10:19AM  14            THE COURT:  I WAS LOOKING AT LINE 7, EXPRESSIONS OF

10:19AM  15    OPINIONS, ASPIRATIONS, ET CETERA.  THAT'S WHAT MS. HOLMES IS

10:19AM  16    ASKING.

10:19AM  17        AND I'M WONDERING ABOUT, IS THIS RELATED TO GOOD FAITH, A

10:19AM  18    GOOD FAITH INSTRUCTION?

10:19AM  19            MS. SAHARIA:  WELL, IT IS, YOUR HONOR.  INSOFAR AS

10:19AM  20    WE TALKED ABOUT LAST WEEK, WE THINK THERE IS NINTH CIRCUIT CASE

10:19AM  21    LAW THAT I ACKNOWLEDGE SAYS THAT THESE KIND OF PUFFERY

10:19AM  22    INSTRUCTIONS ARE NOT NECESSARY WHEN THE COURT INSTRUCTS ON THE

10:19AM  23    CONCEPT OF GOOD FAITH.

10:19AM  24        AND SO I ACKNOWLEDGE THAT IF THE COURT WERE TO GIVE A GOOD

10:20AM  25    FAITH, I WOULD HAVE A HARD TIME STANDING HERE AND ASKING THE

8713

10:20AM 1   COURT TO ALSO GIVE THIS INSTRUCTION, AND IT'S OUR PREFERENCE

10:20AM 2   THAT THE COURT GIVE A GOOD FAITH INSTRUCTION AS OPPOSED TO THIS

10:20AM 3   ONE.

10:20AM 4            THE COURT:  I SEE.  THAT WAS MY NEXT QUESTION, WHAT

10:20AM 5   IS YOUR PREFERENCE?

10:20AM 6            MS. SAHARIA:  THAT'S OUR PREFERENCE, BUT WE'LL TALK

10:20AM 7   ABOUT WHAT THE GOOD FAITH INSTRUCTION SAYS.  I DON'T WANT TO

10:20AM 8   CONCEDE THAT ALL THE WAY YET.

10:20AM 9            THE COURT:  SO JUST RETURNING TO LINE 5, I'M SORRY.

10:20AM 10  THE COURT WILL GIVE, INTENDS TO GIVE THE HIGHLIGHTED, THAT ONE

10:20AM 11  SENTENCE THAT ENDS AT LINE 6, "A SCHEME TO DEFRAUD IS A

10:20AM 12  DECEPTIVE SCHEME TO DEPRIVE A PERSON OF MONEY OR PROPERTY."

10:20AM 13       AND THEN THERE'S NO OBJECTION TO THE FOLLOWING SENTENCE.

10:20AM 14       WE WERE TALKING ABOUT THIS EXPRESSION, WHICH IS -- AND

10:20AM 15  THAT'S PULLED, I THINK -- YOUR FOOTNOTE THERE CITES FROM CIVIL

10:20AM 16  CASES.  AND I THINK THOSE ARE ALL CIVIL CASES --

10:20AM 17            MS. SAHARIA:  THAT'S CORRECT.

10:21AM 18            THE COURT:  -- THAT CITE TO.

10:21AM 19       MR. LEACH, ANYTHING ON THIS?

10:21AM 20            MR. LEACH:  CIVIL CASES INCLUDING A LANHAM ACT CASE

10:21AM 21  AND NOT A WIRE FRAUD CASE, AND I THINK THE AUTHORITY CITED IS A

10:21AM 22  VERY THIN READ FOR TINKERING WITH THE MODEL HERE.

10:21AM 23       I ALSO THINK IT'S ARGUMENTATIVE AND SIMPLY NOT NECESSARY.

10:21AM 24            THE COURT:  OKAY.  WELL, I LOOKED AT THIS AND I'M

10:21AM 25  NOT INCLINED TO GIVE THIS.  AND I KNOW WE'LL HAVE A DISCUSSION

10:21AM  1    ABOUT GOOD FAITH IN A MOMENT.

10:21AM  2        THIS IS REALLY -- WHAT I'M CAPTURING HERE IS THE

10:21AM  3    EXPRESSIONS OF OPINION, I THINK ASPIRATIONS AND THOSE TYPES OF

10:21AM  4    THINGS THAT WE'VE HEARD ABOUT.

10:21AM  5        LET'S SEE.  MOVING DOWN ON LINE 9 NOW, FACTS OMITTED,

10:21AM  6    WE'LL HAVE TO DEAL WITH THAT.

10:22AM  7        MS. SAHARIA:  THAT'S THE SAME ISSUE.

10:22AM  8        THE COURT:  RIGHT, RIGHT.  WE'LL HAVE TO DEAL WITH

10:22AM  9    THAT AND I'LL THINK ABOUT THAT.

10:22AM  10       LINE 10, FACTS -- EXCUSE ME, "STATEMENTS ARE MATERIAL IF,"

10:22AM  11   AND THEN THE BLUE IS MS. HOLMES'S.

10:22AM  12       MS. SAHARIA:  CORRECT, YOUR HONOR.  WE JUST THINK

10:22AM  13   IT'S IMPORTANT TO CONVEY TO THE JURY THAT IT CAN CONSIDER THE

10:22AM  14   WHOLE CONTEXT OF THE STATEMENTS TO DETERMINE THEIR MATERIALITY,

10:22AM  15   AND THAT COMES FROM THE DISTRICT COURT'S OPINION IN BOGUCKI,

10:22AM  16   WHICH IS A GOOD EXAMPLE OF THE COURT CONSIDERING THE CONTEXT IN

10:22AM  17   WHICH STATEMENTS WERE MADE TO DETERMINE WHETHER OR NOT THEY

10:22AM  18   WERE MATERIAL.

10:22AM  19       MR. LEACH:  I THINK IT UNNECESSARILY DEVIATES FROM

10:22AM  20   THE MODEL, YOUR HONOR.  THE BOGUCKI CASE, THAT'S A HOLDING ON A

10:22AM  21   RULE 29 MOTION, NOT AN ARTICULATION OF THE APPROPRIATE JURY

10:22AM  22   INSTRUCTION.

10:22AM  23       I THINK THE MODEL CAPTURES WHAT IS REQUIRED, WHICH IS THAT

10:22AM  24   THE STATEMENTS HAD A NATURAL TENDENCY TO INFLUENCE OR WERE

10:22AM  25   CAPABLE OF INFLUENCING A PERSON TO PART WITH MONEY OR PROPERTY.

10:22AM 1      SO I DON'T THINK IT'S NECESSARY TO MAKE ANY CHANGES THERE.

10:23AM 2           THE COURT:  THANK YOU.  I'M INCLINED TO STICK WITH

10:23AM 3      THE MODEL ON THIS, MS. SAHARIA, AND NOT GIVE YOUR HIGHLIGHTED

10:23AM 4      SUGGESTION THERE.

10:23AM 5           MS. SAHARIA:  UNDERSTOOD.

10:23AM 6           THE COURT:  AND IT WILL CONTINUE TO THE END.

10:23AM 7      NOW WE'RE ON -- I BELIEVE WE'RE ON LINE 12.

10:23AM 8           MS. SAHARIA:  CORRECT.

10:23AM 9      SO I THINK THE PARTIES ARE FAIRLY CLOSE HERE.  SO THE

10:23AM 10     MODEL INSTRUCTION IS "THE INTENT TO DECEIVE AND CHEAT."  IT

10:23AM 11     USED TO BE "CHEAT OR DECEIT," AND YOUR HONOR KNOWS IT WAS NOW

10:23AM 12     CHANGED TO "DECEIVE AND CHEAT."

10:23AM 13     THE WORD "CHEAT" BY ITSELF I ACTUALLY THINK IS RATHER

10:23AM 14     VAGUE AND UNHELPFUL TO A JURY.

10:23AM 15     SO THE PARTIES HAVE BOTH AGREED TO SAY, "THAT IS, TO

10:23AM 16     DEPRIVE SOMEONE OF MONEY OR PROPERTY" TO HELP THE JURY

10:23AM 17     UNDERSTAND WHAT "CHEAT" MEANS.

10:23AM 18     THE DISPUTE IS BETWEEN THE GOVERNMENT'S PROPOSAL, WHICH IS

10:24AM 19     TO SAY "MEANS OF DECEPTION," AND OUR PROPOSAL, WHICH IS TO SAY,

10:24AM 20     "DECEIVING THAT PERSON."

10:24AM 21          THE COURT:  RIGHT.

10:24AM 22          MS. SAHARIA:  AND THE REASON FOR "DECEIVING THAT

10:24AM 23     PERSON" IS TO INCORPORATE THE CONVERGENCE PRINCIPLE THAT WE'VE

10:24AM 24     TALKED ABOUT IN THIS CASE BEFORE, WHICH COMES FROM THE NINTH

10:24AM 25     CIRCUIT'S DECISION IN UNITED STATES CIRCUIT LEW, L-E-W, AND

10:24AM 1    THAT'S AN IMPORTANT CONCEPT IN THIS CASE WHERE WE DO HAVE

10:24AM 2    CLAIMS THAT REPRESENTATIONS WERE MADE TO INDIVIDUALS WHO WERE

10:24AM 3    NOT THE PERSON WHO WAS BEING DEPRIVED OF MONEY OR PROPERTY, IN

10:24AM 4    THIS CASE THE PAYING PATIENTS, AND WE HAD A LOT OF DISCUSSION

10:24AM 5    AROUND THE FACT THAT THE GOVERNMENT, SOME OF ITS ALLEGATIONS

10:24AM 6    RELATE TO REPRESENTATIONS MADE PERHAPS TO DOCTORS AND NOT TO

10:24AM 7    PATIENTS.

10:24AM 8        SO WE JUST THINK IT'S IMPORTANT FOR THE JURY TO HAVE

10:24AM 9    LANGUAGE THAT TIES THE PERSON BEING DEPRIVED TO THE DECEPTION

10:24AM 10   TO INCORPORATE THE CONVERGENCE PRINCIPLE OF LEW.

10:24AM 11           THE COURT:  LEW WAS THE IMMIGRATION ATTORNEY, I

10:25AM 12   BELIEVE.

10:25AM 13           MS. SAHARIA:  CORRECT.

10:25AM 14           THE COURT:  AND THE REAL DEFRAUDED PERSON WAS NOT

10:25AM 15   THE CLIENTS, BUT THE GOVERNMENT, I THINK.

10:25AM 16           MS. SAHARIA:  THAT'S RIGHT, YOUR HONOR.

10:25AM 17           THE COURT:  RIGHT.

10:25AM 18           MR. LEACH:  YOUR HONOR, I THINK THE COURT CURED THE

10:25AM 19   LEW PROBLEM, TO THE EXTENT THAT THE COURT SAW IT, WITH ITS

10:25AM 20   ORDER ON THE MOTION TO DISMISS WHERE, YOU KNOW, THE COUNTS ON

10:25AM 21   THE PATIENTS ARE COUNTS TO DEFRAUD PAYING PATIENTS.

10:25AM 22       AND IN A SCHEME TO DEFRAUD, YOU CERTAINLY CAN USE MEANS OF

10:25AM 23   DECEPTION DIRECTED AT A THIRD PARTY IF THE VICTIM IS CLOSELY

10:25AM 24   CONNECTED TO THAT THIRD PARTY.

10:25AM 25       YOU KNOW, I THINK THIS WOULD GIVE A, AN UNDULY NARROW VIEW

10:25AM  1    OF HOW WIRE FRAUD CAN BE COMMITTED.

10:25AM  2        I WOULD ALSO SAY THE MODEL INSTRUCTION STOPS AT, "THAT IS,

10:25AM  3    THE INTENT TO DECEIVE AND CHEAT."  WE'RE ALREADY GETTING INTO

10:25AM  4    LAND HERE WHERE WE'RE EXPANDING FROM THE MODEL, AND I THINK IF

10:25AM  5    WE'RE GOING TO DO THAT, "MEANS OF DECEPTION" IS CONSISTENT WITH

10:25AM  6    THE LANGUAGE OF "SCHEME TO DEFRAUD" AND "OBTAIN MONEY OR

10:25AM  7    PROPERTY BY MEANS OF FALSE AND FRAUDULENT MISREPRESENTATIONS."

10:26AM  8        THERE'S NO LEW PROBLEM THE WAY THE CASE IS CURRENTLY

10:26AM  9    CHARGED, AND WE WOULD URGE THE COURT, IF IT'S GOING TO GO

10:26AM 10    BEYOND THE MODEL, TO USE "MEANS OF DECEPTION."

10:26AM 11            THE COURT:  ALL RIGHT.  THANK YOU.

10:26AM 12        I LOOKED AT THIS AND I APPRECIATE IT.  I WILL GIVE THE

10:26AM 13    "MEANS OF DECEPTION."  I THINK THAT'S THE APPROPRIATE

10:26AM 14    INSTRUCTION.

10:26AM 15        SO IT WOULD READ, "THIRD, MS. HOLMES ACTED WITH THE INTENT

10:26AM 16    TO DEFRAUD, THAT IS, THE INTENT TO DECEIVE AND CHEAT.  THE

10:26AM 17    INTENT TO DECEIVE AND CHEAT MEANS AN INTENT TO DEPRIVE SOMEONE

10:26AM 18    OF MONEY OR PROPERTY BY MEANS OF DECEPTION."

10:26AM 19            MS. SAHARIA:  THAT'S BETTER THAN THE TO THAT IS,

10:26AM 20    WHICH WE DIDN'T CATCH.

10:26AM 21            MR. LEACH:  WE AGREE, YOUR HONOR.

10:26AM 22            THE COURT:  ALL RIGHT.  THANK YOU.

10:26AM 23            MS. SAHARIA:  I STILL STAND ON MY OBJECTION TO

10:26AM 24    "DECEIVING THAT PERSON" -- TO NOT INCLUDING "DECEIVING THAT

10:27AM 25    PERSON," BUT I AGREE WITH THE COURT'S GRAMMATICAL REPHRASING OF

10:27AM  1    THE SENTENCE.

10:27AM  2         THE COURT:  ALL RIGHT.  THANK YOU, AND YOUR

10:27AM  3    OBJECTION IS NOTED.

10:27AM  4         NEXT WE'RE DOWN TO, I THINK IT'S LINE 17.

10:27AM  5         AND I WANTED TO ASK, IS THE GOVERNMENT GOING TO ARGUE THE

10:27AM  6    UNPROFITABILITY OR THE FAILURE OF A COMPANY IN ANY MANNER?  I

10:27AM  7    SEE THAT IS SOMEWHAT CAPTURED HERE IN THE HIGHLIGHTED, "A

10:27AM  8    SCHEME TO DEFRAUD MUST MISREPRESENT AN ESSENTIAL ELEMENT OF THE

10:27AM  9    BARGAIN.  A SCHEME TO DEFRAUD IS NOT TO BE INFERRED SOLELY

10:27AM  10   BECAUSE A VENTURE TURNED OUT TO BE UNPROFITABLE OR FAILED."

10:27AM  11        AND I JUST -- MR. LEACH, CAN YOU JUST HELP ME OUT ON THAT?

10:27AM  12   IS THAT SOMETHING THAT YOU'RE GOING TO DO?  AND IF YOU'RE NOT,

10:27AM  13   THEN WHY DO WE NEED THIS IN THE INSTRUCTIONS IS MY THOUGHT.

10:27AM  14        MR. LEACH:  I DON'T THINK WE NEED THIS IN THE

10:27AM  15   INSTRUCTIONS, YOUR HONOR.

10:27AM  16        IT IS NOT OUR INTENTION TO ARGUE THE FACT THAT THERANOS

10:28AM  17   FAILED, BY ITSELF, IS SUFFICIENT EVIDENCE TO FIND WIRE FRAUD.

10:28AM  18        WE INTEND TO ARGUE THAT MS. HOLMES MADE FALSE

10:28AM  19   REPRESENTATIONS TO INVESTORS AND PATIENTS TO INDUCE THEM INTO

10:28AM  20   THE TRANSACTIONS.

10:28AM  21        WE WORRY ABOUT THAT -- SO IT'S NOT OUR INTENTION TO SAY

10:28AM  22   THAT SIMPLY BECAUSE THERANOS FAILED, YOU MAY CONVICT.

10:28AM  23        CERTAINLY THE FACT THAT THERANOS FAILED IS OUT THERE, BUT

10:28AM  24   IT'S NOT OUR INTENTION TO MAKE ANY ARGUMENT THAT THAT FACT,

10:28AM  25   STANDING ALONE, IS A BASIS FOR A CONVICTION.

8719

10:28AM 1      WITH RESPECT TO THE FIRST SENTENCE, YOUR HONOR, MY CONCERN

10:28AM 2  ABOUT THIS IS, A, IT'S IMPORTING CONCEPTS FROM OUT OF CIRCUIT

10:28AM 3  CASES AND I FEEL THAT WE'RE STRAYING FAR FROM WHAT THE

10:28AM 4  NINTH CIRCUIT SAID HERE.

10:28AM 5      BUT MORE FUNDAMENTALLY, AND THIS GOES BACK TO SOME OF THE

10:28AM 6  CONTRACTS, I'M WORRIED THE DEFENSE IS GOING TO ARGUE, YOU KNOW,

10:29AM 7  THE BARGAIN HERE WAS YOU'RE MAKING A SPECULATIVE INVESTMENT,

10:29AM 8  YOU HAVE ALL OF THE ACCESS YOU POSSIBLY COULD HAVE, AND

10:29AM 9  THEREFORE, YOU WEREN'T DEFRAUDED EVEN THOUGH OTHER

10:29AM 10  REPRESENTATIONS WERE MADE TO YOU.

10:29AM 11      SO I THINK THIS LANGUAGE HERE IS A LITTLE BIT DANGEROUS.

10:29AM 12      AND IT IS NOT OUR INTENTION TO ARGUE THAT WIRE FRAUD IS

10:29AM 13  ANYTHING OTHER THAN WHAT THE COURT HAS OUTLINED IN THE

10:29AM 14  INSTRUCTIONS ABOVE.

10:29AM 15      SO WE THINK THIS IS UNNECESSARY, IT'S POSSIBLY MISLEADING

10:29AM 16  AND COULD CONFUSE THE JURY THAT SOMEHOW, BECAUSE OF SOME

10:29AM 17  CONTRACTUAL LANGUAGE ABOUT THE SPECULATIVE NATURE OF AN

10:29AM 18  INVESTMENT, THAT INVESTORS GOT WHAT THEY BARGAINED FOR AND YOU

10:29AM 19  SHOULD FIND THAT THEY WEREN'T DEFRAUDED.

10:29AM 20          MS. SAHARIA:  SO IF I MAY ADDRESS THE FIRST

10:29AM 21  SENTENCE, YOUR HONOR?

10:29AM 22          THE COURT:  YES.

10:29AM 23          MS. SAHARIA:  OUR CONCERN WITH THE FIRST SENTENCE

10:29AM 24  REALLY GOES NOT TO THE INVESTOR COUNTS, BUT TO THE PATIENT

10:29AM 25  COUNTS.

```
10:29AM   1          AND THIS IS INTENDED TO REFLECT THE PRINCIPLE WHICH WE'VE
10:30AM   2     ADDRESSED BEFORE, WHICH IS THAT MERELY TRICKING SOMEONE INTO
10:30AM   3     ENTERING INTO A TRANSACTION IS NOT WIRE FRAUD IF THEY GOT WHAT
10:30AM   4     THEY PAID FOR.
10:30AM   5          YOU HAVE TO INDUCE THEM TO ENTER THE TRANSACTION BY
10:30AM   6     MISREPRESENTING AN ESSENTIAL ELEMENT OF THE BARGAIN.
10:30AM   7          HERE, MANY PATIENTS RECEIVED ACCURATE AND RELIABLE BLOOD
10:30AM   8     TESTS.
10:30AM   9          AND SO THE GOVERNMENT CANNOT PROVE WIRE FRAUD BY SHOWING
10:30AM  10     THAT THOSE PATIENTS MIGHT NOT HAVE BOUGHT A THERANOS BLOOD TEST
10:30AM  11     IF THEY SIMPLY KNEW X, Y, OR Z, IF WHAT THEY GOT WAS AN
10:30AM  12     ACCURATE AND RELIABLE TEST.
10:30AM  13          AND BECAUSE MANY PATIENTS DID GET ACCURATE AND RELIABLE
10:30AM  14     TESTS --
10:30AM  15               THE COURT:  BECAUSE?  I'M SORRY?
10:30AM  16               MS. SAHARIA:  BECAUSE MANY PATIENTS DID RECEIVE
10:30AM  17     ACCURATE AND RELIABLE TESTS, THERE WAS NOTHING MISREPRESENTED
10:30AM  18     TO THEM ABOUT AN ESSENTIAL ELEMENT OF THE BARGAIN.
10:30AM  19          THAT'S OUR CONCERN ABOUT -- WITH THE FIRST SENTENCE AND
10:30AM  20     THAT'S WHY WE THINK IT'S IMPORTANT TO INCLUDE THAT SENTENCE
10:30AM  21     HERE.
10:30AM  22               THE COURT:  WAS THERE EVIDENCE THAT PAYING PATIENTS
10:30AM  23     RECEIVED INACCURATE TESTS?
10:30AM  24               MS. SAHARIA:  I'M SURE THE GOVERNMENT WILL, WILL
10:30AM  25     CLAIM THAT THERE IS EVIDENCE THAT SOME PATIENTS RECEIVED
```

```
10:31AM   1    INACCURATE TESTS.

10:31AM   2              THE COURT:  DOES THAT HAVE ANY EFFECT ON WHETHER OR

10:31AM   3    NOT THIS SHOULD STAY IN OR OUT?

10:31AM   4              MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR, BECAUSE

10:31AM   5    AS I RECALL, THEY HAVE PROVEN ONLY PERHAPS TWO OF THOSE TESTS

10:31AM   6    OUT OF MANY MILLIONS.

10:31AM   7              MR. LEACH:  WELL, WE PROVED THAT ALL OF THE TESTS ON

10:31AM   8    THE EDISON DEVICE WERE VOIDED, YOUR HONOR.

10:31AM   9        SO I'M NOT SURE IT'S A DEFENSE TO THE PARTICULAR WIRE

10:31AM  10    FRAUD CLAIMS THAT ARE CHARGED HERE AGAINST PATIENTS TO SAY THAT

10:31AM  11    THERE WERE OTHERS WHO RECEIVED COMPLETELY ACCURATE RESULTS.

10:31AM  12        AND SO IT'S NOT THE INTENTION OF THE GOVERNMENT TO ARGUE

10:31AM  13    ANYTHING INCONSISTENT WITH WHAT IS IN THE BLUE HERE.

10:31AM  14        I REALLY THINK IT'S UNNECESSARY AT THIS POINT.

10:31AM  15        IF THE DEFENSE HAS CONCERNS AFTER HEARING THE GOVERNMENT'S

10:31AM  16    ARGUMENT, I THINK WE CAN ADDRESS THAT THEN.

10:31AM  17        BUT I JUST THINK THAT WE'RE ADDING TO ALREADY A LENGTHY

10:31AM  18    INSTRUCTION IN WAYS THAT DON'T HAVE NINTH CIRCUIT SUPPORT OR

10:31AM  19    CITES, AND REALLY ARE ADDRESSING PROBLEMS THAT I DON'T THINK

10:32AM  20    ARE GOING TO ARISE.

10:32AM  21              THE COURT:  OKAY.

10:32AM  22              MS. SAHARIA:  THAT'S IT, YOUR HONOR.

10:32AM  23              THE COURT:  ALL RIGHT.  THANK YOU.

10:32AM  24        I JUST SEE THIS AS UNNECESSARY, MS. SAHARIA.  I DON'T

10:32AM  25    THINK THIS IS NECESSARY TO CAPTURE -- I THINK THE BALANCE OF
```

10:32AM   1    THE INSTRUCTIONS ALLOW BOTH PARTIES TO ARGUE THE EVIDENCE, AND

10:32AM   2    I'M NOT GOING TO GIVE THIS.

10:32AM   3         TURNING THEN TO THE YELLOW HIGHLIGHTING AT THE BOTTOM OF

10:32AM   4    LINE 19, AND THEN CARRYING OVER TO PAGE 27, ECF 28, THAT LARGE

10:32AM   5    PARAGRAPH, I WASN'T INCLINED TO GIVE THIS, BUT I'M --

10:32AM   6    MR. LEACH, I'M HAPPY TO HEAR FROM YOU IF YOU WOULD LIKE.

10:32AM   7              MR. LEACH:  YOUR HONOR, THIS IS DRAWN DIRECTLY FROM

10:32AM   8    AN INSTRUCTION THAT WAS GIVEN IN THE WOODS CASE AND APPROVED BY

10:32AM   9    THE NINTH CIRCUIT.

10:32AM  10         I'LL SUBMIT ON OUR PRIOR ARGUMENTS, BUT I THINK THIS IS AN

10:32AM  11    ACCURATE STATEMENT OF THE LAW.  BUT I'LL STAND ON OUR PRIOR

10:33AM  12    ARGUMENTS.

10:33AM  13              THE COURT:  OKAY.

10:33AM  14              MS. SAHARIA:  I'M HAPPY TO ADDRESS WHY THOSE CASES

10:33AM  15    WERE NOT ON POINT, BUT IF I'M ALREADY AHEAD, I'M NOT GOING TO

10:33AM  16    WASTE THE COURT'S TIME ON THIS ONE.

10:33AM  17         IF YOUR HONOR WANTS ARGUMENT ON THAT ONE, I'M HAPPY TO

10:33AM  18    OFFER IT.

10:33AM  19              THE COURT:  THERE'S THAT VICTORY FROM THE JAWS --

10:33AM  20              MS. SAHARIA:  THAT'S RIGHT.

10:33AM  21              THE COURT:  OR DEFEAT FROM THE JAWS OF VICTORY, YES,

10:33AM  22    INDEED.

10:33AM  23         I WAS LOOKING AT THE LAST SENTENCE ON LINE 5 AND WONDERING

10:33AM  24    WHETHER OR NOT THAT SHOULD BE MODIFIED IN SOME MANNER.

10:33AM  25              MS. SAHARIA:  DO YOU MEAN THE FINAL HIGHLIGHTED

10:33AM 1    SENTENCE?  I'M NOT SURE WHICH SENTENCE.

10:33AM 2         THE COURT:  "YOU, AS MEMBERS OF THE JURY, DO NOT

10:33AM 3    NEED TO ALL AGREE ON WHICH STATEMENTS WERE FALSE."  I'M LOOKING

10:33AM 4    AT THIS AS KIND OF A UNANIMITY TYPE.  DO WE NEED TO ADD

10:33AM 5    SOMETHING THERE?

10:33AM 6         MS. SAHARIA:  I THINK IF YOU'RE GOING TO INCLUDE

10:33AM 7    THAT LANGUAGE, THEN THE COURT SHOULD ALSO INCLUDE OUR UNANIMITY

10:34AM 8    LANGUAGE AT THE BOTTOM OF THE PAGE, WHICH IS THE BLUE LANGUAGE,

10:34AM 9    WHICH MAKES CLEAR THAT THEY DO NEED TO BE UNANIMOUS ON THE

10:34AM 10   PARTICULAR SCHEME, EVEN IF THEY DON'T NEED TO BE UNANIMOUS ON

10:34AM 11   THE PARTICULAR STATEMENT.

10:34AM 12        BUT I THINK PERHAPS A BETTER APPROACH IS TO PERHAPS NOT

10:34AM 13   INCLUDE EITHER OF THOSE TWO SENTENCES.  I DON'T THINK THEY'RE

10:34AM 14   NECESSARY.

10:34AM 15        THE COURT:  SO I LOOKED AT THESE, AND THAT'S EXACTLY

10:34AM 16   WHAT I WAS WONDERING, IF I COLLAPSED BOTH OF THESE TOGETHER, IF

10:34AM 17   WE STARTED WITH LINES 22 THROUGH 23, AND THEN ADDED LINES 5

10:34AM 18   THROUGH 7.

10:34AM 19        BUT PERHAPS I'M OVER WORDSMITHING.

10:34AM 20        MR. LEACH:  YOUR HONOR, THE GOVERNMENT WOULD BE FINE

10:34AM 21   WITH THAT.  WE -- I DON'T THINK A SPECIFIC UNANIMITY

10:34AM 22   INSTRUCTION IS REQUIRED HERE.

10:34AM 23        AND IF THE COURT WERE INCLINED TO GIVE 22 THROUGH 23, WE

10:34AM 24   THINK IT'S IMPORTANT TO ALSO INCLUDE 5 THROUGH 7.

10:34AM 25        BUT I THINK THE COURT'S EARLIER --

10:35AM 1          THE COURT:  RIGHT.

10:35AM 2          MR. LEACH:  -- PROPOSAL EXPRESSES THE JURY MUST

10:35AM 3    UNANIMOUSLY FIND.

10:35AM 4      SO THE GOVERNMENT WOULD BE FINE EITHER WITH NO INSTRUCTION

10:35AM 5    THERE AT ALL, OR THE BLUE PART WITH THOSE TWO LINES FROM THE

10:35AM 6    YELLOW ADDED.

10:35AM 7          MS. SAHARIA:  I THINK I'M FINE WITH NEITHER OF THOSE

10:35AM 8    INSTRUCTIONS, BECAUSE AS MR. LEACH INDICATED, THE COURT DID, I

10:35AM 9    THINK, BEEF UP THE UNANIMOUS PART AT THE BEGINNING OF THIS

10:35AM 10   INSTRUCTION.

10:35AM 11         THE COURT:  RIGHT.  OKAY.  THANK YOU.  I APPRECIATE

10:35AM 12   THAT THEN.

10:35AM 13     I'M NOT GOING TO GIVE LINES 1 THROUGH 7 AS I INDICATED.

10:35AM 14     AND I'M NOT INCLINED TO GIVE AS WELL, LET'S SEE, THE

10:35AM 15   HIGHLIGHTED IN LINES 9 THROUGH 12, MR. LEACH.  I JUST DON'T

10:35AM 16   THINK THAT'S NECESSARY.  I'M HAPPY TO HEAR FROM YOU IF YOU

10:35AM 17   WISH.

10:35AM 18         MR. LEACH:  I DO HAVE SOME CONCERNS HERE,

10:35AM 19   YOUR HONOR.

10:35AM 20     IN ONE OF THE WIRES -- ONE OF THE CHARGED WIRES IS A

10:35AM 21   PAYMENT TO AN ADVERTISING COMPANY.  ONE OF THE CHARGED WIRES

10:35AM 22   IS, IF MEMORY SERVES, A PHONE CALL ABOUT A TEST.

10:36AM 23     I DON'T WANT THE JURY TO BE CONFUSED THAT FOR A "FRAUD

10:36AM 24   CLAIM," IT NEEDS TO FIND THAT THE WIRE ITSELF WAS FALSE AND

10:36AM 25   MISLEADING.

10:36AM  1       IT'S A WIRE THAT IS IN FURTHERANCE OF AN ESSENTIAL PART OF

10:36AM  2  THE SCHEME.

10:36AM  3       SO THIS IS LANGUAGE THAT HAS BEEN GIVEN BY THE COURT

10:36AM  4  BEFORE IN PRIOR INSTRUCTIONS.

10:36AM  5            THE COURT:  RIGHT.

10:36AM  6            MR. LEACH:  FROM OUR LAST DIALOGUE, I HEARD ARGUMENT

10:36AM  7  THAT THIS LANGUAGE WAS OBJECTIONABLE BECAUSE OF THE ARGUMENT IT

10:36AM  8  DOESN'T MATTER, OR THE LANGUAGE IN LINE 11 WHERE IT SAYS IT

10:36AM  9  DOES NOT MATTER.

10:36AM 10       I THINK WE WOULD BE EQUALLY FINE WITH LANGUAGE, "NOR MUST

10:36AM 11  YOU FIND THAT THE SCHEME OR PLAN WAS SUCCESSFUL," AND ADDING

10:36AM 12  THE WORDS "ESSENTIAL PART OF THE SCHEME" IN THE LINE ABOVE IN

10:36AM 13  10.

10:36AM 14       SO I THINK THIS IS GOING TO TWO THINGS:  ONE, THE

10:37AM 15  ARGUMENT THAT MS. HOLMES -- THIS ADDRESSES AN ARGUMENT THAT I

10:37AM 16  THINK WE'RE GOING TO HEAR THAT MS. HOLMES DIDN'T PROFIT IN ANY

10:37AM 17  WAY FROM THIS, AND I THINK THE JURY SHOULD NOT BE MISLED THAT

10:37AM 18  THAT'S SOMETHING THAT THEY NEED TO FIND IN ORDER TO FIND THAT

10:37AM 19  WIRE FRAUD OCCURRED HERE; AND WE ALSO WANT TO COMBAT AGAINST

10:37AM 20  THE CONCERN THAT, YOU KNOW, WHAT WOULD OTHERWISE BE INNOCUOUS

10:37AM 21  NONFALSE WIRES CAN STILL BE A WIRE COMMUNICATION IN FURTHERANCE

10:37AM 22  OF THE SCHEME.

10:37AM 23            SO THAT'S WHY WE PROPOSED THAT.

10:37AM 24            THE COURT:  WELL, I APPRECIATE THAT.  THAT'S HELPFUL

10:37AM 25  AS TO THE REASONS WHY.

8726

10:37AM 1         AND I'M NOT BEING CRITICAL OF THE LANGUAGE HERE, BUT I WAS

10:37AM 2    TRYING TO -- WHAT IS THIS INTENDING TO CONVEY?

10:37AM 3         AND THEN AS TO THE LAST LANGUAGE ON LINE 12 REGARDING

10:37AM 4    MS. HOLMES INTENDING TO REPAY, AND I KNOW THAT'S FROM CASES

10:37AM 5    THAT SAY THAT'S NOT A DEFENSE.

10:37AM 6         IS THERE GOING TO BE ARGUMENT OF THAT?

10:37AM 7              MS. SAHARIA:  NO, YOUR HONOR.

10:37AM 8         THAT KIND OF INSTRUCTION -- AND I WOULD POINT THE COURT TO

10:37AM 9    THE SECOND CIRCUIT CASE IN UNITED STATES VERSUS ROSSOMONDO,

10:38AM 10   WHICH IS AT 144 F.3D 197, SECOND CIRCUIT 1998, WHICH WE'LL

10:38AM 11   DISCUSS WHEN WE GET TO GOOD FAITH AS WELL.

10:38AM 12        THAT CASE MAKES CLEAR THAT THAT KIND OF INSTRUCTION MAY BE

10:38AM 13   APPROPRIATE IN A CASE WHERE THE DEFENDANT IS CLAIMING, "I

10:38AM 14   INTENDED TO CAUSE A HARM IN THE SHORT TERM, BUT I THOUGHT IT

10:38AM 15   WOULD WORK OUT IN THE LONG TERM."

10:38AM 16        AND THAT'S NOT OUR DEFENSE HERE.  WE ALREADY HAD

10:38AM 17   DISCUSSION ABOUT THAT AT THE MOTION IN LIMINE STAGE.  WE'RE NOT

10:38AM 18   GOING TO ARGUE THAT.

10:38AM 19        THE SECOND CIRCUIT, IN THE CASE I JUST CITED, ACTUALLY

10:38AM 20   REVERSED THE CONVICTION WHERE THE COURT GAVE THAT INSTRUCTION

10:38AM 21   BECAUSE THE COURT FOUND THAT UNDER THE CIRCUMSTANCES OF THAT

10:38AM 22   CASE, WHERE THE DEFENDANT WASN'T MAKING THAT KIND OF ARGUMENT,

10:38AM 23   IT WAS MISLEADING TO THE JURY TO GIVE THAT TYPE OF INSTRUCTION.

10:38AM 24        SO WE DO OBJECT TO THAT FINAL SENTENCE FOR THAT REASON.

10:38AM 25        AS TO THE OTHER TWO SENTENCES --

10:38AM  1          THE COURT:  PARDON ME.  LET ME JUST STOP YOU THERE.

10:38AM  2          WELL, MR. LEACH, ON THE REPRESENTATION THAT THE DEFENSE IS

10:38AM  3     NOT GOING TO ARGUE THAT AS A DEFENSE IN ANY WAY, I JUST DON'T

10:39AM  4     KNOW WHY WE WOULD LEAVE THIS IN HERE.

10:39AM  5          SO I'M INCLINED NOT TO GIVE IT WITH THAT REPRESENTATION.

10:39AM  6     LET ME SAY THAT.

10:39AM  7          MR. LEACH:  BASED ON THAT REPRESENTATION,

10:39AM  8     YOUR HONOR, WE'LL SUBMIT ON OUR ARGUMENT.  I UNDERSTAND THE

10:39AM  9     COURT'S POSITION.

10:39AM  10         THE COURT:  SO LET'S GO BACK.

10:39AM  11     MS. SAHARIA?

10:39AM  12         MS. SAHARIA:  SURE.  SO ON THE FIRST PART ON THE

10:39AM  13     YELLOW HIGHLIGHTING, ON THE MATERIAL TRANSMITTED BY WIRE, I

10:39AM  14     DON'T THINK THERE'S ANY RISK OF THE JURY BEING CONFUSED.

10:39AM  15         MOST OF THE WIRES HERE ARE THE INVESTORS SENDING MONEY TO

10:39AM  16     THERANOS, WHICH, OF COURSE, THE SENDING OF MONEY DOES NOT

10:39AM  17     ITSELF CONTAIN A FALSE STATEMENT.  IT'S NOT A DECEPTIVE

10:39AM  18     TRANSMISSION.

10:39AM  19         SO I JUST DON'T SEE HOW THE JURY COULD BE CONFUSED ABOUT

10:39AM  20     THAT ELEMENT.

10:39AM  21         OF COURSE WE'RE NOT GOING TO ARGUE TO THE JURY THAT IT

10:39AM  22     CAN'T CONVICT ON THOSE COUNTS BECAUSE THE WIRE TRANSFER DID NOT

10:39AM  23     ITSELF CONTAIN FALSE OR MISLEADING STATEMENTS.

10:39AM  24         SO I JUST DON'T SEE THAT AS BEING NECESSARY IN THIS CASE.

10:40AM  25         WE STAND ON THE PRIOR OBJECTION THAT WE ALSO CONVEYED,

10:40AM 1    THAT IT MISSTATES THE WIRE COMMUNICATION ELEMENT BY SAYING THAT

10:40AM 2    AS LONG AS THE WIRE COMMUNICATION WAS USED AS A PART OF THIS

10:40AM 3    SCHEME, AS OPPOSED TO CARRYING OUT AN ESSENTIAL PART OF THE

10:40AM 4    SCHEME.

10:40AM 5        BUT FUNDAMENTALLY, I JUST DON'T SEE THAT AS BEING -- AS

10:40AM 6    BEING LIKELY TO BE A SOURCE OF JURY CONFUSION AND, OF COURSE,

10:40AM 7    WE'RE NOT GOING TO ARGUE THAT.

10:40AM 8        AND THEN ON THE SECOND PART OF IT, WHICH IS, "NOR DOES IT

10:40AM 9    MATTER WHETHER THIS SCHEME OR PLAN WAS SUCCESSFUL OR THAT ANY

10:40AM 10   MONEY OR PROPERTY WAS OBTAINED," AGAIN, I JUST DON'T THINK SEE

10:40AM 11   THIS AS BEING HELPFUL TO THE JURY ON THE FACTS OF THIS CASE.

10:40AM 12       OF COURSE, THE GOVERNMENT CLAIMS THAT MONEY OR PROPERTY

10:40AM 13   WAS OBTAINED ON THIS CASE.  THAT'S THEIR THEORY OF THE CASE, SO

10:40AM 14   I'M NOT SURE WHY WE WOULD BE TELLING THE JURY THAT.

10:40AM 15       AND THE SAME WITH "NOR DOES IT MATTER WHETHER THE SCHEME

10:40AM 16   OR PLAN WAS SUCCESSFUL," THE "DOES NOT MATTER" LANGUAGE IS

10:41AM 17   QUITE OBJECTIONABLE BECAUSE IT IS RELEVANT WHETHER THE SCHEME

10:41AM 18   WAS SUCCESSFUL.  THAT'S ALWAYS RELEVANT TO INTENT OR

10:41AM 19   MATERIALITY.

10:41AM 20       AGAIN, IT'S JUST GOVERNMENT ARGUMENT THAT I DO NOT THINK

10:41AM 21   IT HAS ANY PLACE IN THESE INSTRUCTIONS, SIMILAR TO THE SENTENCE

10:41AM 22   THAT WE JUST TALKED ABOUT ON LINE 12.  IT'S THE SAME KIND OF

10:41AM 23   CONCEPT.

10:41AM 24           MR. LEACH:  I DON'T THINK IT'S ARGUMENT, YOUR HONOR.

10:41AM 25       I'M AGREEING WITH MS. SAHARIA THAT IF WE WANT TO CHANGE

10:41AM 1    "NOR DOES IT MATTER" TO "NOR MUST YOU FIND THE SCHEME OR PLAN

10:41AM 2    WAS SUCCESSFUL OR THAT ANY MONEY OR PROPERTY WAS OBTAINED," I

10:41AM 3    THINK THAT JUST UNDERSCORES THAT THEY DON'T NEED TO FIND

10:41AM 4    SUCCESS OF THE SCHEME OR ACTUAL OBTAINING OF THE MONEY OR

10:41AM 5    PROPERTY IN A PERSONAL WAY TO MS. HOLMES.

10:41AM 6         SO THAT'S WHAT WE'RE GETTING AT THERE.

10:41AM 7              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:42AM 8         IT LOOKS LIKE THIS ONE I'M GOING TO LOOK AT A LITTLE MORE

10:42AM 9    WITH SOME WORDSMITHING AND SEE IF THERE'S A CHANGE.

10:42AM 10        I THINK I UNDERSTAND YOUR CONCERN, MR. LEACH, ABOUT

10:42AM 11   LETTING THE JURY KNOW THAT -- I GUESS YOUR CONCERN IS THAT THE

10:42AM 12   MATERIAL TRANSMITTED DOESN'T HAVE TO BE FRAUDULENT OR FALSE IN

10:42AM 13   ANY WAY.

10:42AM 14        I'M NOT SURE THAT THIS CAPTURES THAT A LITTLE BIT.  MAYBE

10:42AM 15   YOU CAN WORK ON IT DURING OUR BREAK.  WE'RE GOING TO BREAK IN

10:42AM 16   ABOUT 15 OR 20 MINUTES.

10:42AM 17             MR. LEACH:  I WAS THINKING IN THE MOMENT, YOUR

10:42AM 18   HONOR, THAT I THINK I COULD DO IT PRETTY SIMPLY, "THE WIRE

10:42AM 19   ITSELF NEED NOT BE FALSE OR MISLEADING."

10:42AM 20             THE COURT:  THAT SOUNDS BETTER.

10:42AM 21             MR. LEACH:  BUT I'LL WORK ON THE BREAK ON THAT.

10:42AM 22             THE COURT:  OKAY.  IF I'M GRADING YOUR PAPERS, THAT

10:42AM 23   SOUNDS BETTER.

10:42AM 24             MR. LEACH:  OKAY.

10:42AM 25             THE COURT:  LET'S MOVE DOWN.

10:42AM 1        I'M NEXT HERE AT LINE 17.

10:42AM 2            MS. SAHARIA:  I THINK THIS IS ALREADY COVERED BY OUR

10:42AM 3    DISCUSSIONS ON OMISSIONS, WITH JUST REITERATING MR. LEACH'S

10:43AM 4    CONCESSION THAT THEY'RE NOT CLAIMING AN OMISSIONS THEORY AS TO

10:43AM 5    PATIENTS, SO AT A MINIMUM WE'LL NEED TO DO SOME WORDSMITHING

10:43AM 6    HERE IF THE COURT DOES INSTRUCT AS TO INVESTORS.

10:43AM 7            THE COURT:  RIGHT.  OKAY.

10:43AM 8        ALL RIGHT.  LET'S MOVE TO PAGE 29.  THIS IS INSTRUCTION

10:43AM 9    21, INTENT TO DEFRAUD.

10:43AM 10       LET ME JUST SAY, THE COURT IS INCLINED TO GIVE THE MODEL

10:43AM 11   ON THIS, WHICH IS SHORT AND SWEET.  IT'S 5.12.  "AN INTENT TO

10:43AM 12   DEFRAUD IS AN INTENT TO DECEIVE AND CHEAT."  I THINK THAT'S

10:43AM 13   WHAT THE MODEL IS AND THAT'S WHAT I'M INCLINED TO GIVE.

10:43AM 14       I'M HAPPY TO HEAR YOUR OBJECTIONS.

10:44AM 15           MS. SAHARIA:  THAT'S FINE, YOUR HONOR.  WE ALREADY

10:44AM 16   DISCUSSED A LONGER VERSION OF THAT IN THE WIRE FRAUD

10:44AM 17   INSTRUCTION.

10:44AM 18           THE COURT:  RIGHT.

10:44AM 19           MS. SAHARIA:  AND I THINK THE COURT DID AGREE TO

10:44AM 20   GIVE A LONGER VERSION THERE.

10:44AM 21       SO IF THE COURT IS GOING TO GIVE THE SOMEWHAT LONGER

10:44AM 22   VERSION THERE, I WOULD SUGGEST THE COURT SHOULD JUST GIVE THE

10:44AM 23   SAME LANGUAGE HERE SO AS NOT TO SUGGEST TO THE JURY THAT

10:44AM 24   THERE'S SOME DISTINCTION BETWEEN THE TWO PLACES.  SO I WOULD

10:44AM 25   JUST SUGGESTS THE COURT MIRROR THE LANGUAGE THAT IT'S GOING TO

8731

10:44AM 1    USE IN THE WIRE FRAUD INSTRUCTION ITSELF AND JUST MIRROR THAT

10:44AM 2    HERE.

10:44AM 3              THE COURT:  OKAY.

10:44AM 4         MS. VOLKAR?

10:44AM 5              MR. LEACH:  I'M GOING TO HAND IT BACK TO MS. VOLKAR.

10:44AM 6              THE COURT:  SURE.

10:44AM 7              MS. VOLKAR:  THANK YOU, YOUR HONOR.

10:44AM 8         THE GOVERNMENT AGREES THAT THE COURT SHOULD GIVE THE

10:44AM 9    MODEL.  ALONG THE LINES OF NOT NEEDING TO REPEAT SOMETHING OVER

10:44AM 10   AND OVER AGAIN IN THE INSTRUCTIONS, AGREEING TO THE LONGER

10:44AM 11   VERSION IN THE PRIOR INSTRUCTION, I DON'T KNOW THAT THE COURT

10:44AM 12   NEEDS TO REPEAT IT HERE.

10:45AM 13        IF THE COURT WERE GOING TO REPEAT IT, WE THINK IT SHOULD

10:45AM 14   BE THE EXACT SAME FORMULATION.

10:45AM 15        AND I UNDERSTAND FROM WHAT THE COURT IS SAYING THAT THE

10:45AM 16   COURT DOES NOT INTEND TO GIVE A GOOD FAITH INSTRUCTION, AND THE

10:45AM 17   GOVERNMENT AGREES WITH THAT.

10:45AM 18             THE COURT:  OKAY.  WELL, I'LL LOOK AT THE LONG WIRE

10:45AM 19   FRAUD AND SEE IF IT'S APPROPRIATE TO GIVE IT HERE AGAIN.  I

10:45AM 20   DON'T WANT TO GET INTO JURY CONFUSION, OF COURSE, AND HAVE THEM

10:45AM 21   WONDER WHY IT'S LONGER IN ONE AND NOT THE OTHER.

10:45AM 22             MS. SAHARIA:  JURORS SOMETIMES PARSE LANGUAGE, AND

10:45AM 23   IF THEY SEE ONE PHRASE IN ONE PLACE AND A DIFFERENT PHRASE IN

10:45AM 24   ANOTHER PLACE, I JUST DON'T WANT THEM TO BE CONFUSED.

10:45AM 25             THE COURT:  RIGHT.  AND I WANT TO AVOID JURY

10:45AM  1      QUESTIONS IF WE CAN TO KEEP THEM DELIBERATING.

10:45AM  2          MS. VOLKAR?

10:45AM  3              MS. VOLKAR:  AND, YOUR HONOR, THE GOVERNMENT'S

10:45AM  4      POSITION ON THAT IS THAT THE LANGUAGE THAT THE COURT AND THE

10:45AM  5      PARTIES JUST AGREED UPON IN THE WIRE FRAUD WAS, WAS WHAT

10:45AM  6      MILLER, THE MILLER CASE USED.

10:45AM  7              THE COURT:  RIGHT.

10:45AM  8              MS. VOLKAR:  AND SO I THINK THAT'S APPROPRIATE.

10:46AM  9          AND IF THE COURT WANTS TO GIVE IT A SECOND TIME, WE DON'T

10:46AM  10     OBJECT TO THAT.  AGAIN, IT'S THE LANGUAGE FROM MILLER.

10:46AM  11         BUT WE ALSO THINK THE MODEL ITSELF IS SUFFICIENT.

10:46AM  12             THE COURT:  ALL RIGHT.

10:46AM  13         MS. SAHARIA?

10:46AM  14             MS. SAHARIA:  YES.  I WASN'T SURE WHETHER THE

10:46AM  15     COURT'S COMMENT MEANT THAT YOU DECIDED NOT TO GIVE A GOOD FAITH

10:46AM  16     INSTRUCTION, OR WHETHER WE SHOULD STILL DISCUSS THAT.

10:46AM  17             THE COURT:  NO, I THINK WE'RE DISCUSSING THAT.

10:46AM  18             MS. SAHARIA:  WE HAD JUST PUT OUR GOOD FAITH LINE IN

10:46AM  19     THIS INSTRUCTION, BUT OF COURSE IT COULD BE PULLED OUT AS A

10:46AM  20     SEPARATE GOOD FAITH INSTRUCTION.

10:46AM  21             THE COURT:  YES.

10:46AM  22             MS. SAHARIA:  WE TOOK TO HEART THE COURT'S

10:46AM  23     ADMONITION WITH RESPECT TO LENGTH, AND SO WE HAVE PROPOSED A

10:46AM  24     VERY SHORT GOOD FAITH INSTRUCTION THAT JUST SIMPLY INFORMS THE

10:46AM  25     JURY THAT GOOD FAITH IS INCONSISTENT WITH A FINDING THAT

10:46AM 1        MS. HOLMES ACTED WITH THE INTENT TO DEFRAUD.

10:46AM 2            THAT'S WHY WE PUT IT IN THE INTENT TO DEFRAUD INSTRUCTION.

10:46AM 3            THE GOVERNMENT HAS PROPOSED THREE SENTENCES, ONE BEING

10:46AM 4    KIND OF THE DEFENSE ARTICULATION OF GOOD FAITH, AND THEN TWO

10:46AM 5    GOVERNMENT SENTENCES THAT CONVEY THE GOVERNMENT'S THEORY OF THE

10:46AM 6    CASE.

10:47AM 7            IT'S NOT A BALANCED INSTRUCTION.

10:47AM 8            THE SECOND SENTENCE I WILL SAY I THINK IS UNOBJECTIONABLE

10:47AM 9    IN THE GOVERNMENT'S INSTRUCTION.  IT IS A CORRECT STATEMENT OF

10:47AM 10   THE LAW.

10:47AM 11           WE STRONGLY OBJECT TO THE LAST SENTENCE.  I DID MORE

10:47AM 12   THINKING ABOUT THAT SENTENCE OVER THE PAST WEEK.  THIS WAS IN

10:47AM 13   THE TARALLO INSTRUCTION, BUT AS WE DID MORE RESEARCH AND LOOKED

10:47AM 14   AT THE CASE I CITED TO THE COURT, THE ROSSOMONDO CASE, THAT'S

10:47AM 15   WHERE THE SECOND CIRCUIT REVERSED A CONVICTION BASED ON SIMILAR

10:47AM 16   LANGUAGE.

10:47AM 17           THIS SENTENCE BY ITSELF IS VERY CONFUSING TO THE JURY

10:47AM 18   BECAUSE GOOD FAITH AND THE HONEST BELIEF IN THE ULTIMATE

10:47AM 19   SUCCESS OF AN ENTERPRISE MAY ITSELF MEAN THAT MS. HOLMES ACTED

10:47AM 20   IN COMPLETE GOOD FAITH BECAUSE SHE BELIEVED WHAT SHE WAS SAYING

10:47AM 21   WAS TRUE.

10:47AM 22           THIS TYPE OF SENTENCE IS GIVEN IN THE SITUATION, LIKE I

10:47AM 23   SAID BEFORE, WHERE A DEFENDANT ENGAGES IN FRAUD, BUT THINKS

10:48AM 24   THAT "I'LL MAKE IT ALL WORK IN THE LONG RUN," AND THAT'S NOT

10:48AM 25   OUR DEFENSE HERE, AND WE'RE VERY CONCERNED THAT THAT FINAL

10:48AM  1    SENTENCE WILL MISLEAD THE JURY.

10:48AM  2         SO IF THE COURT IS INCLINED TO GIVE TWO SENTENCES, WE

10:48AM  3    WOULD GIVE THE FIRST AND THE SECOND SENTENCE OF THE GOVERNMENT

10:48AM  4    INSTRUCTION, OR JUST GIVE OUR ONE SENTENCE.

10:48AM  5              MS. VOLKAR:  WELL, YOUR HONOR, I RECALL BACK TO OUR

10:48AM  6    CONVERSATION LAST FRIDAY, AND I THINK ONE OF THE THINGS I

10:48AM  7    POINTED OUT THERE IS THAT THE GOOD FAITH INSTRUCTION THAT THE

10:48AM  8    DEFENSE HAD PREVIOUSLY SUGGESTED WAS ONE SIDED AND DIDN'T

10:48AM  9    INCLUDE ALL OF THE PORTIONS OF TARALLO.  IT'S FUNNY THAT WE'RE

10:48AM 10    NOW IN THE REVERSE SITUATION BECAUSE THIS IS LANGUAGE EXACTLY

10:48AM 11    PULLED FROM TARALLO.

10:48AM 12         THE GOVERNMENT'S POSITION IS A GOOD FAITH INSTRUCTION

10:48AM 13    SHOULD NOT BE GIVEN.  AND THE GOVERNMENT IS VERY CONCERNED AT

10:48AM 14    EVEN THOUGH IT'S ONE SENTENCE AND SHORTER, THE LANGUAGE THAT

10:48AM 15    THE DEFENSE ADDED TO THE TOP OF PAGE 29, LINES 4 TO 5, BECAUSE

10:49AM 16    IT STILL PROVIDES AN INCOMPLETE PICTURE OF GOOD FAITH.

10:49AM 17         AND I'LL GIVE THE MOST OBVIOUS EXAMPLE.

10:49AM 18         "GOOD FAITH ON THE PART OF MS. HOLMES."  GOOD FAITH AS TO

10:49AM 19    WHAT?

10:49AM 20         THAT LANGUAGE RIGHT THERE IS AN INACCURATE STATEMENT OF

10:49AM 21    NINTH CIRCUIT LAW AND IT VIOLATES THIS COURT'S MOTION IN LIMINE

10:49AM 22    ORDER AT 798, PAGES 88 TO 90 WHICH PARSED THERE ARE DIFFERENT

10:49AM 23    TYPES OF GOOD FAITH.  IT HAS TO BE GOOD FAITH BELIEF IN THE

10:49AM 24    TRUTH OF MISREPRESENTATIONS.  IT HAS TO BE A PARTICULARIZED

10:49AM 25    TYPE OF GOOD FAITH.

10:49AM  1      AND I BELIEVE WE SUGGESTED THAT LANGUAGE.  THE DEFENSE

10:49AM  2  REJECTED IT.

10:49AM  3      THEY WANT TO BE ABLE TO JUST CLAIM SOME ROSY FEELINGS

10:49AM  4  ABOUT HOW THINGS WOULD WORK OUT.

10:49AM  5      EVERY FRAUD CASE IS SOMEONE BELIEVING IT WILL WORK OUT

10:49AM  6  DOWN THE LINE.  IN PONZI SCHEMES IT'S "I'M GOING TO BE ABLE TO

10:49AM  7  PAY BACK THOSE FIRST PEOPLE AND EVENTUALLY I'M GOING TO BE ABLE

10:49AM  8  TO MAKE IT WORK, AND I'LL BE ABLE TO PAY EVERYONE BACK, AND IT

10:50AM  9  WILL BE GREAT."

10:50AM  10      WHAT I JUST HEARD MS. SAHARIA SAY IS THIS IS NOT A CASE

10:50AM  11  WHERE MS. HOLMES THOUGHT IT WOULD WORK OUT IN THE LONG RUN.

10:50AM  12      I COULD NOT DISAGREE MORE STRONGLY.  SHE ABSOLUTELY

10:50AM  13  THOUGHT IT WOULD WORK OUT IN THE LONG RUN.  SHE THOUGHT SHE

10:50AM  14  COULD EVENTUALLY GET HER TECHNOLOGY TO WORK.  AND THEN THE

10:50AM  15  STATEMENTS THAT SHE MADE WOULDN'T NECESSARILY BE AS FALSE OR

10:50AM  16  MISLEADING AS THEY WERE WHEN SHE MAKES THEM.

10:50AM  17      I'M SORRY.  THE FIRST POINT IS THAT A GOOD FAITH

10:50AM  18  INSTRUCTION IS NOT NEEDED AS LONG AS THE COURT IS IMPROPERLY

10:50AM  19  INSTRUCTING ON THE INTENT TO DEFRAUD, AND WE BELIEVE THAT WE'RE

10:50AM  20  VERY CLOSE ON REACHING THAT AGREEMENT.

10:50AM  21      IF A GOOD FAITH INSTRUCTION IS GOING TO BE GIVEN, THEN IT

10:50AM  22  SHOULD ACCURATELY STATE THE LAW, IT SHOULD ACCURATELY STATE

10:50AM  23  WHAT THAT GOOD FAITH BELIEF IS, OTHERWISE IT RUNS AFOUL OF THIS

10:50AM  24  COURT'S ORDER, NINTH CIRCUIT CASE LAW.  AND BECAUSE OF THE

10:50AM  25  PARTIES' DISCUSSION LAST WEEK, THE GOVERNMENT SUGGESTED AN

10:50AM 1  INSTRUCTION THAT WAS A SHORTER VERSION OF THE PAGE LONG

10:50AM 2  INSTRUCTION GIVEN IN TARALLO, AND THAT IS AN ACCURATE STATEMENT

10:51AM 3  OF NINTH CIRCUIT LAW, NOT SECOND CIRCUIT LAW.

10:51AM 4          THE COURT:  ALL RIGHT.  THANK YOU.

10:51AM 5      LET ME JUST OFFER YOU SOMETHING HERE AND SEE WHAT YOUR

10:51AM 6  THOUGHTS ARE.  "YOU MAY DETERMINE WHETHER MS. HOLMES HAD AN

10:51AM 7  HONEST, GOOD FAITH BELIEF IN THE TRUTH OF THE SPECIFIC

10:51AM 8  MISREPRESENTATIONS ALLEGED IN THE INDICTMENT IN DETERMINING

10:51AM 9  WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO DEFRAUD."

10:51AM 10     WE CAN CHANGE "DEFENDANT" TO "MS. HOLMES," MS. SAHARIA.

10:51AM 11         MS. SAHARIA:  COULD I DISCUSS THAT WITH THE TEAM

10:51AM 12 DURING THE BREAK, WHICH I THINK IS COMING UP SOON.  I THINK IT

10:51AM 13 WOULD HELPFUL FOR US TO DISCUSS THAT.

10:52AM 14         THE COURT:  DO YOU WANT ME TO REPEAT IT?

10:52AM 15         MS. SAHARIA:  IF YOU COULD REPEAT THAT, THAT WOULD

10:52AM 16 BE GREAT.

10:52AM 17         THE COURT:  SURE.  "YOU MAY DETERMINE WHETHER

10:52AM 18 MS. HOLMES HAD AN HONEST, GOOD FAITH BELIEF IN THE TRUTH OF THE

10:52AM 19 SPECIFIC MISREPRESENTATIONS ALLEGED IN THE INDICTMENT IN

10:52AM 20 DETERMINING WHETHER OR NOT MS. HOLMES ACTED WITH INTENT TO

10:52AM 21 DEFRAUD."

10:52AM 22         MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT'S OBJECTION

10:52AM 23 THERE IS THAT THAT ONLY ADDRESSES ONE OF THE TWO PROBLEMS.

10:52AM 24 THAT ADDRESSES THE SPECIFICITY OF WHAT GOOD FAITH WE'RE TALKING

10:52AM 25 ABOUT THAT MORE ALIGNS WITH THE COURT'S PRIOR MOTION IN LIMINE

10:52AM 1    ORDER.  SO THAT SOLVES THAT PROBLEM.

10:52AM 2        BUT THEN IT'S STILL THE UNBALANCED DESCRIPTION OF WHAT A

10:52AM 3    GOOD FAITH DEFENSE IS.  THAT'S ESSENTIALLY THE FIRST SENTENCE

10:52AM 4    OF THE GOVERNMENT'S PROPOSED GOOD FAITH WITHOUT THE BALANCING

10:52AM 5    IF SHE KNOWINGLY MADE MISREPRESENTATIONS IN THE MOMENT.

10:52AM 6        AND WE WOULD PUSH FOR THE THIRD SENTENCE FROM TARALLO THAT

10:53AM 7    SAYS, "A GOOD FAITH BELIEF THAT THE BUSINESS WILL ULTIMATELY

10:53AM 8    WORK OUT OR THE THING THAT YOU'RE MISREPRESENTING WILL

10:53AM 9    ULTIMATELY BECOME TRUE," THAT IS NOT SUFFICIENT FOR A GOOD

10:53AM 10   FAITH BELIEF DEFENSE, EITHER.

10:53AM 11            THE COURT:  OKAY.

10:53AM 12            MS. SAHARIA:  AGAIN, I WANT TO DISCUSS IT WITH MY

10:53AM 13   TEAM, BUT I DO THINK THE COURT'S INSTRUCTION DOES CONTAIN

10:53AM 14   BALANCE BECAUSE IT SAYS WHETHER OR NOT SHE ACTED WITH THE

10:53AM 15   INTENT TO DEFRAUD AND WHETHER -- THE WORD "WHETHER" CONNOTES IT

10:53AM 16   COULD BE ONE, IT COULD BE THE OTHER.

10:53AM 17       BUT LET ME TALK ABOUT IT WITH THE TEAM AT THE BREAK AND

10:53AM 18   COME BACK TO THE COURT.

10:53AM 19       BUT I DO, AGAIN, STRENUOUSLY OBJECT TO THAT LAST SENTENCE.

10:53AM 20   JUST CONTRARY TO MS. VOLKAR'S REPRESENTATIONS A FEW MINUTES

10:53AM 21   AGO, IT IS VERY MUCH OUR POSITION THAT MS. HOLMES DID BELIEVE

10:53AM 22   IN THE SUCCESS OF THERANOS OVER THE LONG TERM.

10:53AM 23       OUR POINT IS THAT THIS INSTRUCTION MAY MAKE SENSE IN A

10:53AM 24   CASE WHERE A DEFENDANT IS TRYING TO ARGUE, YES, I REALIZED I

10:54AM 25   WAS DOING SOMETHING WRONG, BUT THAT DOESN'T MATTER BECAUSE I

10:54AM 1    THOUGHT I WOULD WORK IT OUT IN THE LONG TERM.

10:54AM 2         THAT'S NOT OUR DEFENSE.  WE'RE NOT GOING TO ARGUE THAT.

10:54AM 3    WE'VE HAD THAT DISCUSSION ALREADY.  SO I JUST DON'T SEE THAT

10:54AM 4    INSTRUCTION AS BEING HELPFUL, AND I THINK IT WILL MISLEAD THE

10:54AM 5    JURY.

10:54AM 6              THE COURT:  OKAY.

10:54AM 7              MS. SAHARIA:  THAT'S IT, YOUR HONOR.

10:54AM 8              MS. VOLKAR:  AND, YOUR HONOR, MY COLLEAGUE,

10:54AM 9    MR. LEACH, POINTED OUT THE COURT MIGHT HAVE BEEN READING FROM

10:54AM 10   THE COMMENTARY.

10:54AM 11        I JUST NOTE THAT THERE'S A SENTENCE IMMEDIATELY FOLLOWING

10:54AM 12   WHAT THE COURT READ, WHICH IS MORE ALONG THE LINES OF WHAT THE

10:54AM 13   GOVERNMENT IS SUGGESTING FOR BALANCE, WHICH IS "THE DEFENDANT'S

10:54AM 14   BELIEF THAT THE VICTIM OF THE FRAUD WILL BE PAID IN THE FUTURE

10:54AM 15   OR WILL SUSTAIN NO ECONOMIC LOSS IS NO DEFENSE TO THE CRIME."

10:54AM 16        SO, AGAIN, I JUST GO BACK TO IF WE'RE IN THE LAND OF GOOD

10:54AM 17   FAITH, WHICH THE GOVERNMENT STILL STRENUOUSLY ARGUES WE SHOULD

10:54AM 18   NOT BE, BUT IF WE ARE, IT NEEDS TO BE A BALANCED VERSION OF

10:54AM 19   GOOD FAITH.  AND THERE'S A LOT OF DANGER HERE BECAUSE OF THE

10:54AM 20   DEFENSE'S THEORY, BECAUSE THEY WANT TO USE HALF OF THAT

10:54AM 21   DEFINITION AND LAUNCH FROM THERE, AND THAT'S WHY IT'S

10:55AM 22   CRITICALLY IMPORTANT WE HAVE A BALANCED INSTRUCTION FOR THE

10:55AM 23   JURY ON WHAT THE LAW IN THE NINTH CIRCUIT IS.

10:55AM 24             THE COURT:  OKAY.  WELL, THANK YOU.  WE'RE GOING TO

10:55AM 25   TAKE OUR BREAK IN JUST A MINUTE.

8739

10:55AM   1          I WANT TO TALK ABOUT ONE LAST THING, AND THIS IS YOUR

10:55AM   2     OPPORTUNITY TO WORDSMITH THOSE AS WELL.

10:55AM   3          YOU'RE ABSOLUTELY RIGHT, I LOOKED AT THAT COMMENT, AND NOT

10:55AM   4     EVERYTHING FITS AND ALL CASES ARE DIFFERENT, BUT IT DOESN'T

10:55AM   5     SEEM THAT THAT LAST LINE, AS WRITTEN, IS APPLICABLE.  BUT I'M

10:55AM   6     HAPPY TO LET YOU WORDSMITH AND SEE WHAT COMES UP.

10:55AM   7          LET'S TURN TO 23, INSTRUCTION 23 FOR JUST A MOMENT, AND

10:55AM   8     THIS IS ON 31, ECF PAGE 32, KNOWINGLY.

10:55AM   9          LET ME JUST SAY I'M INCLINED TO GIVE THE MODEL 5.7 ON

10:55AM  10     THIS.  BUT I'M HAPPY TO HEAR FROM YOU.

10:56AM  11          MS. SAHARIA:  BRIEFLY.  OF COURSE, THE WORD

10:56AM  12     "OMISSIONS" APPEARS, AND SO THAT'S JUST OUR STANDING OBJECTION.

10:56AM  13          WE DO REQUEST THAT THE COURT ADD THE TWO SENTENCES IN BLUE

10:56AM  14     WHICH CONVEY I THINK THE IMPORTANT PRINCIPLE THAT IS NOT

10:56AM  15     ELSEWHERE CONVEYED IN THESE INSTRUCTIONS, THAT THE JURY NEEDS

10:56AM  16     TO FIND PERSONAL KNOWLEDGE ON THE PART OF MS. HOLMES, AND THAT

10:56AM  17     KNOWLEDGE OF OTHERS CANNOT BE IMPUTED TO HER, WHETHER IT'S A

10:56AM  18     THERANOS EMPLOYEE, WHETHER IT'S AN ALLEGED EVEN COCONSPIRATOR.

10:56AM  19          WE'VE HAD DISCUSSION AROUND THAT PRINCIPLE AND IN

10:56AM  20     CONNECTION WITH THE MOTIONS IN LIMINE, AND IT COMES FROM

10:56AM  21     STRAIGHT FROM NINTH CIRCUIT CASE LAW, THE PHILLIPS CASE, THAT

10:56AM  22     WE CITED TO THE COURT.

10:56AM  23          I DO THINK THERE'S A DANGER IN THIS CASE GIVEN THAT THE

10:56AM  24     GOVERNMENT DID PRESENT, I THINK, A LARGE VOLUME OF EVIDENCE OF

10:56AM  25     THINGS THAT OTHER PEOPLE AT THERANOS KNEW THAT WAS NEVER

10:56AM 1    BROUGHT TO MS. HOLMES'S ATTENTION.  AND SO THIS IS AN IMPORTANT

10:57AM 2    CONCEPT IN THIS CASE GIVEN THE RECORD THAT WILL BE BEFORE THE

10:57AM 3    JURY.

10:57AM 4              MS. VOLKAR:  YOUR HONOR, I THINK THE MODEL

10:57AM 5    INSTRUCTION COVERS IT.  I THINK THAT SPECIFICALLY THE SECOND

10:57AM 6    SENTENCE THAT THE GOVERNMENT SUGGESTED SHOULD BE INCLUDED AS IT

10:57AM 7    IS IN BRACKETS IN THE MODEL.

10:57AM 8        AGAIN, THIS IS NOT A REGULATORY FRAUD CASE THAT WOULD HAVE

10:57AM 9    A HIGHER MENS REA.  AND BASED ON THE COMMENTS, THAT MEANS THIS

10:57AM 10   IS A SENTENCE THAT IS APPROPRIATE HERE.

10:57AM 11       AS FOR THE DEFENSE SUGGESTION IN BLUE, THE PHILLIPS CASE

10:57AM 12   IS A CASE FROM OVER 50 YEARS AGO.  IT HASN'T BEEN INCORPORATED

10:57AM 13   INTO THE MODEL INSTRUCTION I THINK FOR A REASON.  IT IS AN

10:57AM 14   EVIDENTIARY CASE THAT THE NINTH CIRCUIT WAS DISCUSSING WHETHER

10:57AM 15   OR NOT IT WAS PROPER FOR THE COURT TO ADMIT CERTAIN EVIDENCE.

10:57AM 16       I KNOW THAT THE COURT HAS HAD THIS CASE IN MIND.  IT'S

10:57AM 17   BEEN RAISED SEVERAL TIMES THROUGHOUT THIS TRIAL, AND THE COURT

10:57AM 18   HAS HAD IT IN MIND IN ADMITTING OR NOT ADMITTING CERTAIN

10:57AM 19   EVIDENCE, MOST NOTABLY THE NEGATIVE CUSTOMER COMPLAINTS, WHICH

10:58AM 20   THE COURT REJECTED BASED ON THIS CASE.  THAT DOESN'T MEAN THAT

10:58AM 21   IT REQUIRES AN INSTRUCTION TO GO WITH IT.

10:58AM 22       THERE'S NOTHING EVEN IN THE CASE ITSELF, THE PHILLIPS CASE

10:58AM 23   ITSELF, THAT WOULD PERMIT THAT OR SUGGEST THAT THAT'S

10:58AM 24   APPROPRIATE.

10:58AM 25              THE COURT:  OKAY.

8741

| | | |
|---|---|---|
| 10:58AM | 1 | MS. SAHARIA:  THAT'S IT, YOUR HONOR. |
| 10:58AM | 2 | THE COURT:  OKAY.  THANK YOU. |
| 10:58AM | 3 | LET'S TAKE A BREAK NOW AND LET YOU WORDSMITH.  I'LL DO THE |
| 10:58AM | 4 | SAME.  WE'LL COME BACK AND CHAT SOME MORE.  THANK YOU. |
| 10:58AM | 5 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 10:58AM | 6 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 10:58AM | 7 | THE CLERK:  WHAT TIME WILL YOU BE RESUMING, |
| 10:58AM | 8 | YOUR HONOR? |
| 10:58AM | 9 | THE COURT:  I'M SORRY? |
| 10:58AM | 10 | THE CLERK:  WHAT TIME WILL YOU BE RESUMING? |
| 10:58AM | 11 | MS. SAHARIA:  CAN WE HAVE HALF AN HOUR? |
| 10:58AM | 12 | THE COURT:  LET'S SEE, IT'S 11:00 NOW.  SHOULD WE |
| 10:58AM | 13 | SAY 60 MINUTES?  IS THAT GOOD? |
| 10:58AM | 14 | MS. SAHARIA:  I'M SORRY. |
| 10:58AM | 15 | THE COURT:  SO 60 MINUTES?  AN HOUR? |
| 10:58AM | 16 | MS. VOLKAR:  THAT'S FINE. |
| 10:58AM | 17 | MS. SAHARIA:  I THINK HALF AN HOUR WOULD BE FINE |
| 10:58AM | 18 | WITH US, BUT IF THE COURT NEEDS TO DO SOMETHING, AN HOUR IS |
| 10:58AM | 19 | FINE AS WELL. |
| 10:58AM | 20 | THE COURT:  NO.  THAT'S FINE.  WE'VE BEEN TAKING |
| 10:58AM | 21 | 30 MINUTES BREAKS.  LET'S EXTEND IT TO 15, 45 MINUTES. |
| 10:59AM | 22 | MS. VOLKAR:  I WAS LIKE 15 IS A LITTLE SHORT, |
| 10:59AM | 23 | YOUR HONOR, BUT 45 MINUTES IS GREAT. |
| 10:59AM | 24 | MS. SAHARIA:  THANK YOU. |
| 10:59AM | 25 | (LAUGHTER.) |

8742

| | | |
|---|---|---|
| 10:59AM | 1 | (RECESS FROM 10:59 A.M. UNTIL 12:09 P.M.) |
| 12:09PM | 2 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 12:09PM | 3 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 12:09PM | 4 | WE'LL CONTINUE WITH OUR DISCUSSION ON JURY INSTRUCTIONS. |
| 12:09PM | 5 | WE'RE OUTSIDE OF THE PRESENCE OF THE JURY AGAIN. |
| 12:09PM | 6 | LET ME ASK, DID YOU ACCOMPLISH ANYTHING DURING THE BREAK? |
| 12:09PM | 7 | MS. VOLKAR:  I DID, YOUR HONOR. |
| 12:09PM | 8 | THE COURT:  GREAT. |
| 12:09PM | 9 | MS. VOLKAR:  AND I'D LIKE TO DISCUSS OR CIRCLE BACK |
| 12:09PM | 10 | FOR A COUPLE POINTS ON THE MENS REA BEFORE WE MOVE ON TO OTHER |
| 12:09PM | 11 | INSTRUCTIONS. |
| 12:09PM | 12 | THE COURT:  SURE. |
| 12:09PM | 13 | MS. VOLKAR:  SO FIRST, I MIGHT HAVE SAID THIS, BUT I |
| 12:09PM | 14 | DID WANT TO BE CLEAR FOR THE RECORD THAT THIS IS NOT A |
| 12:09PM | 15 | REGULATORY FRAUD CASE, THIS IS NOT A TAX FRAUD CASE, NOT A |
| 12:09PM | 16 | SECURITIES FRAUD CASE, NOT A HEALTH CARE FRAUD CASE. |
| 12:09PM | 17 | I KNOW THIS IS CIRCLING FAR BACK, BUT WITH RESPECT TO THE |
| 12:09PM | 18 | WILLFULLY INSTRUCTION, I STILL HAVE NOT YET FOUND IN THE |
| 12:09PM | 19 | NINTH CIRCUIT OR THIS DISTRICT A CASE THAT HAS PROVIDED A |
| 12:10PM | 20 | WILLFULLY INSTRUCTION WHEN THERE IS NOT ONE OF THOSE HEIGHTENED |
| 12:10PM | 21 | MENS REA IN REGULATORY FRAUD CHARGES INVOLVED IN THE CASE. |
| 12:10PM | 22 | I'VE LOOKED AT THE NORA CASE, THE FIFTH CIRCUIT CASE THAT |
| 12:10PM | 23 | YOUR HONOR POINTED OUT -- |
| 12:10PM | 24 | THE COURT:  RIGHT. |
| 12:10PM | 25 | MS. VOLKAR:  -- AND THAT WAS A HEALTH FRAUD CASE. |

12:10PM 1     AND YOUR HONOR MIGHT HAVE ALSO NOTICED THIS, BUT THE

12:10PM 2  STATUTE, 1347, HAS THE WORD "WILLFULLY" IN IT, WHEREAS 1343 AND

12:10PM 3  1349 OF COURSE DO NOT.

12:10PM 4     SO I HAD THE OPPORTUNITY OVER THE BREAK TO LOOK AT NORA

12:10PM 5  AND I WOULD WANTED TO REITERATE THAT THE GOVERNMENT HAS STILL

12:10PM 6  NOT YET FOUND A CASE WHERE NO REGULATORY FRAUD VIOLATIONS ARE

12:10PM 7  AT PLAY, AND YET, THE WILLFULLY DEFINITION IS GIVEN.

12:10PM 8     THE WAY I SEE THAT TYING WITH THE GOOD FAITH INSTRUCTION

12:10PM 9  WHERE WE LEFT OFF ON, THE GOOD FAITH INSTRUCTION IS FREQUENTLY

12:10PM 10  GIVEN WHEN THERE IS A REGULATORY FRAUD VIOLATION OR WHEN ONE OF

12:10PM 11  THOSE HEIGHTENED MENS REA IS AT ISSUE, AND THE REASON IS

12:11PM 12  BECAUSE A GOOD FAITH BELIEF CAN NEGATE THAT HIGHER MENS REA.

12:11PM 13     THE REASON WHY THE NINTH CIRCUIT SAYS THAT GOOD FAITH

12:11PM 14  INSTRUCTIONS ARE UNNECESSARY WHEN KNOWINGLY IS PROPERLY

12:11PM 15  DEFINED -- AND HERE WE HAVE THE INTENT TO DECEIVE AND CHEAT --

12:11PM 16  IS BECAUSE IT IS THE LOWER BAR OF MENS REA AND IT'S NOT THAT

12:11PM 17  HEIGHTENED STANDARD.

12:11PM 18     NOW, I UNDERSTAND THAT WE'RE LIKELY IN A LAND WHERE WE'RE

12:11PM 19  GIVING THE GOOD FAITH INSTRUCTION, AND SO I TOOK THE TIME TO

12:11PM 20  LOOK AT THE PORTION THE COURT REFERENCED, WHICH IS IN THE

12:11PM 21  COMMENTARY OF MODEL INSTRUCTION 5.12.

12:11PM 22     AND THE GOVERNMENT DOES JUST -- WE ARE FINE WITH THAT

12:11PM 23  FIRST SENTENCE THAT YOUR HONOR READ ALOUD, AND EVEN

12:11PM 24  UNDERSTANDING THAT "MS. HOLMES" WOULD BE SUBSTITUTED FOR "THE

12:11PM 25  DEFENDANT," THE GOVERNMENT DOES WANT TO REITERATE THE SECOND

12:11PM 1    SENTENCE, "THE DEFENDANT'S BELIEF THAT THE VICTIMS WILL BE PAID

12:12PM 2    IN THE FUTURE OR SUFFER NO ECONOMIC LOSS," SHOULD BE GIVEN, AND

12:12PM 3    A COUPLE OF INSTANCES OF FACTS IN THIS CASE THAT WE THINK

12:12PM 4    SUPPORT THAT SECOND SENTENCE INCLUDE -- ONE OF THE COMMON

12:12PM 5    THEMES IN THE CROSS-EXAMINATIONS OF INVESTORS IN THIS CASE

12:12PM 6    FOCUSSED ON THE INCREASED VALUE OF THOSE INVESTOR'S SHARES OVER

12:12PM 7    TIME, AND THAT DISCUSSION ABOUT WHETHER OR NOT THOSE INVESTORS

12:12PM 8    COULD HAVE SOLD OR COULD HAVE MADE MORE MONEY OVER TIME MIGHT

12:12PM 9    BE CONFUSING WITHOUT THE SECOND SENTENCE THAT I REFERENCED.

12:12PM 10        THERE'S ALSO -- THE END OF THE CROSS-EXAMINATION OF

12:12PM 11   DR. DAS ENDED WITH THE QUOTE FROM A MOVIE, YOUR HONOR PROBABLY

12:12PM 12   REMEMBERS, AND IT WAS SOMETHING ALONG THE LINES -- I WON'T DO

12:12PM 13   IT JUSTICE, BUT IT WAS SOMETHING ALONG THE LINES OF IF IT'S NOT

12:12PM 14   ALL RIGHT YET, THEN IT'S NOT YET THE END, WHICH IS AGAIN THIS

12:12PM 15   IDEA THAT IT WILL WORK OUT IN THE FUTURE.

12:13PM 16        AND THE FINAL POINT IS THAT ONE OF THE KEY TENETS OF THIS

12:13PM 17   CASE AND WHAT WE UNDERSTAND TO BE PART OF THE DEFENSE IS THAT

12:13PM 18   MS. HOLMES BELIEVED THE 4 SERIES OR MINILAB WOULD WORK ONE DAY,

12:13PM 19   AND THEREFORE, HER STATEMENTS TO INVESTORS WERE NOT MISLEADING

12:13PM 20   BECAUSE SHE WAS TALKING ABOUT THE CAPABILITIES OF THE DEVICE

12:13PM 21   AND SOMETHING THAT MIGHT WORK OUT IN THE FUTURE.

12:13PM 22        SO WE JUST WANTED TO FURTHER SUPPORT OUR ARGUMENT THAT IF

12:13PM 23   THE COURT IS GOING TO GIVE A GOOD FAITH INSTRUCTION, WE DO NOT

12:13PM 24   HAVE ANY -- WE DO NOT OBJECT TO THAT FIRST SENTENCE IN THE

12:13PM 25   COMMENTARY THAT THE COURT READ, BUT WE WOULD REQUEST THAT THE

12:13PM 1   SECOND SENTENCE BE GIVEN AS WELL.

12:13PM 2           THE COURT:  ALL RIGHT.  THANK YOU.

12:13PM 3           MS. SAHARIA:  I DON'T WANT TO REHASH THE WILLFULLY

12:13PM 4   ISSUE.

12:13PM 5       RESPECTFULLY, THE GOVERNMENT IS CONFLATING A BUNCH OF

12:13PM 6   DIFFERENT THINGS HERE.  THE BRYAN WILLFUL STANDARD IS THE LOWER

12:13PM 7   STANDARD OF WILLFULNESS.  IT'S NOT THE STANDARD THAT APPLIES ON

12:14PM 8   REGULATORY CASES.  THAT'S THE HIGHER STANDARD THAT REQUIRES

12:14PM 9   KNOWLEDGE OF A SPECIFIC STATUTE, AND THAT'S NOT OUR ARGUMENT

12:14PM 10  HERE.  SO I JUST WANT TO MAKE THAT CLEAR.

12:14PM 11      BUT I THINK THAT'S A TOTALLY SEPARATE ISSUE THAN THE GOOD

12:14PM 12  FAITH INSTRUCTION.

12:14PM 13      WE ARE FINE WITH THE FIRST SENTENCE THAT THE COURT

12:14PM 14  PROPOSED, ALTHOUGH I WOULD SUGGEST THAT THE FIRST VERB

12:14PM 15  "DETERMINED" MIGHT MAKE MORE SENSE IF IT READ "CONSIDER," ONLY

12:14PM 16  BECAUSE THE WORD "DETERMINING" ALSO APPEARS IN THE SENTENCE,

12:14PM 17  AND I THINK IT IS MORE NATURAL TO SAY "YOU MAY CONSIDER WHETHER

12:14PM 18  A DEFENDANT HAD AN HONEST GOOD FAITH BELIEF," ET CETERA, "IN

12:14PM 19  DETERMINE WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO

12:14PM 20  DEFRAUD."

12:14PM 21      SO I THINK THAT WOULD BE A MORE NATURAL WAY TO PHRASE THAT

12:14PM 22  SENTENCE.

12:14PM 23      AND I WANTED TO CLARIFY, IS IT THE COURT'S INTENTION TO

12:14PM 24  INCLUDE THAT SENTENCE IN THE INTENT TO DEFRAUD INSTRUCTION?  OR

12:14PM 25  IS IT A SEPARATE INSTRUCTION?

| | | |
|---|---|---|
| 12:14PM | 1 | THE COURT:  I THINK A SEPARATE INSTRUCTION IS WHAT I |
| 12:14PM | 2 | HAD IN MIND. |
| 12:15PM | 3 | MS. SAHARIA:  WE WOULD SUGGEST IT MIGHT MAKE MORE |
| 12:15PM | 4 | SENSE TO PUT IT IN THE INTENT TO DEFRAUD INSTRUCTION BECAUSE IT |
| 12:15PM | 5 | IS EXPLAINING HOW THE JURY MAY GO ABOUT DETERMINING WHETHER |
| 12:15PM | 6 | THERE IS AN INTENT TO DEFRAUD, AND THE COMMENT IN THE MODEL |
| 12:15PM | 7 | RULES IS IN THE INSTRUCTION 5.12 ON INTENT TO DEFRAUD. |
| 12:15PM | 8 | SO THAT WOULD BE OUR SUGGESTION.  THAT'S JUST OUR |
| 12:15PM | 9 | SUGGESTION AS TO WHERE IT COULD GO. |
| 12:15PM | 10 | WE DO OBJECT TO THAT FINAL SENTENCE.  IT DOESN'T FIT THE |
| 12:15PM | 11 | FACTS OF THE CASE. |
| 12:15PM | 12 | WE'VE HAD THIS DISCUSSION ALREADY.  WE'RE NOT GOING TO |
| 12:15PM | 13 | ARGUE THAT AN INTENT TO DEFRAUD IS NOT INTENT TO DEFRAUD IF SHE |
| 12:15PM | 14 | INTENDED -- IF SHE THOUGHT THEY WOULD BE REPAID IN THE FUTURE. |
| 12:15PM | 15 | THAT'S JUST NOT OUR ARGUMENT.  WE'RE NOT GOING TO SAY THAT. |
| 12:15PM | 16 | I HAVE A NUMBER OF OBJECTIONS TO THE LANGUAGE OF THE |
| 12:15PM | 17 | SENTENCE IF THE COURT WAS CONSIDERING GIVING IT.  I DON'T THINK |
| 12:15PM | 18 | IT'S FAIR TO SAY "THE VICTIMS OF THE FRAUD." |
| 12:15PM | 19 | THAT SUGGESTS A FRAUD HAS OCCURRED AND THERE ARE VICTIMS. |
| 12:15PM | 20 | IF THE COURT WERE GOING TO GIVE SOME VERSION OF THIS |
| 12:15PM | 21 | SENTENCE, I THINK YOU WOULD NEED TO ADD THE "STANDING ALONE" |
| 12:16PM | 22 | KIND OF LANGUAGE THAT WE WERE TALKING ABOUT BEFORE TO NOT |
| 12:16PM | 23 | MISLEAD THE JURY. |
| 12:16PM | 24 | BUT FUNDAMENTALLY, OUR POSITION IS THAT THE SENTENCE DOES |
| 12:16PM | 25 | NOT FIT THIS CASE AND SHOULD NOT BE GIVEN. |

12:16PM   1              THE COURT:  ALL RIGHT.  THANK YOU.

12:16PM   2          SO YOU'RE SUGGESTING, MS. SAHARIA, INSTEAD OF "DETERMINE,"

12:16PM   3      "CONSIDER"?

12:16PM   4              MS. SAHARIA:  "YOU MAY CONSIDER," CORRECT.

12:16PM   5              THE COURT:  AND OTHERWISE YOU'RE FINE WITH AT LEAST

12:16PM   6      THE COURT'S SUGGESTION OF SUBSTITUTING "MS. HOLMES" FOR

12:16PM   7      "DEFENDANT"?

12:16PM   8              MS. SAHARIA:  YES, YOUR HONOR.

12:16PM   9              THE COURT:  ALL RIGHT.  THANK YOU.

12:16PM  10          ANYTHING FURTHER ON THIS?

12:16PM  11              MS. VOLKAR:  THE GOVERNMENT IS FINE WITH "CONSIDER"

12:16PM  12      RATHER THAN "DETERMINE."

12:16PM  13          THE GOVERNMENT DOES THINK IT SHOULD BE A SEPARATE

12:16PM  14      INSTRUCTION.  I RISK REPEATING MYSELF FOR THE UMPTEENTH TIME,

12:16PM  15      BUT THE NINTH CIRCUIT, OF COURSE, SAYS A GOOD FAITH INSTRUCTION

12:16PM  16      IS NOT REQUIRED WHEN INTENT TO DEFRAUD IS PROPERLY DEFINED.

12:16PM  17          I WORRY THAT CONFLATING THOSE TWO MUDDIES THE WATERS EVEN

12:16PM  18      FURTHER, SO I WOULD ARGUE THAT IT SHOULD BE A SEPARATE

12:17PM  19      INSTRUCTION.

12:17PM  20              THE COURT:  ALL RIGHT.  THANK YOU.

12:17PM  21          I DO THINK IT SHOULD BE A SEPARATE INSTRUCTION.  I DON'T

12:17PM  22      WANT TO CONFLATE IT WITH THE OTHER.  I DON'T KNOW IF IT SHOULD

12:17PM  23      BE ENTITLED "GOOD FAITH DEFENSE."  I'M NOT SURE THAT'S THE

12:17PM  24      RIGHT TITLE.

12:17PM  25              MS. SAHARIA:  I WOULD ADVISE AGAINST THE WORD

12:17PM 1    "DEFENSE" BECAUSE THAT MAKES IT SOUND LIKE WE BEAR THE BURDEN

12:17PM 2    TO PROVE GOOD FAITH --

12:17PM 3              THE COURT:  RIGHT.

12:17PM 4              MS. SAHARIA:  -- AND THAT'S NOT SO.  IT'S JUST

12:17PM 5    NEGATING THE GOVERNMENT'S BURDEN.

12:17PM 6         PERHAPS "GOOD FAITH OF THE DEFENDANT," OR "GOOD FAITH OF

12:17PM 7    MS. HOLMES" MIGHT BE A BETTER FORMULATION.

12:17PM 8              MS. VOLKAR:  I'VE SEEN "GOOD FAITH DEFENSE" USED BY

12:17PM 9    OTHER COURTS IN THIS DISTRICT.  I DON'T KNOW THAT THE COURT

12:17PM 10   READS THE TITLE OF THE INSTRUCTION TO THE JURY, BUT --

12:17PM 11             THE COURT:  NO, I DON'T.

12:17PM 12             MS. SAHARIA:  I'M SO SORRY.

12:17PM 13        I DON'T KNOW IF THE VERSION OF THE INSTRUCTIONS THE COURT

12:17PM 14   SENDS BACK TO THE JURY ROOM HAS THE TITLES.  IF SO, I WOULD

12:17PM 15   CONTINUE TO OBJECT TO THAT TITLE.

12:17PM 16             THE COURT:  IT DOES.  IT DOES HAVE JUST THE TITLES

12:17PM 17   ON IT.  AND I DON'T READ THE TITLES OF THE INSTRUCTION.

12:18PM 18        IT WILL READ JURY INSTRUCTION NUMBER, WHATEVER IT IS, AND

12:18PM 19   THEN IT WILL HAVE A TITLE, YOU KNOW, PRESUMPTION OF INNOCENCE,

12:18PM 20   THOSE TYPES OF THINGS.

12:18PM 21             MS. SAHARIA:  RIGHT.  YOU COULD JUST USE "GOOD

12:18PM 22   FAITH," YOUR HONOR, I THINK THAT WOULD BE FINE AS WELL.

12:18PM 23        I DO OBJECT TO THE WORD "DEFENSE" BECAUSE IT MAKES IT

12:18PM 24   SOUND LIKE IT'S A DEFENSE THAT WE NEED TO PROVE.

12:18PM 25             THE COURT:  OKAY.

12:18PM   1        ANYTHING FURTHER ON THIS?

12:18PM   2             MS. VOLKAR:  NO, YOUR HONOR.

12:18PM   3             THE COURT:  ALL RIGHT.  THANK YOU.

12:18PM   4        ALL RIGHT.  THE COURT IS GOING TO GIVE THE SUGGESTION THAT

12:18PM   5   I PROPOSED TO YOU, CHANGING MODEL 5.12.

12:18PM   6        I'M NOT GOING TO GIVE THE FINAL SENTENCE SUGGESTED BY THE

12:18PM   7   GOVERNMENT AT LINE 15 THROUGH 16.

12:18PM   8        I'LL CHANGE "DETERMINE" TO "CONSIDER," AND WE'LL CHANGE

12:18PM   9   THE TITLE TO "GOOD FAITH" AND LEAVE IT AT THAT, STRIKING

12:18PM   10  "DEFENSE."

12:18PM   11        THIS IS FOR YOUR PREPARATION, WHOEVER IS DOING THIS.

12:19PM   12             MS. SAHARIA:  THANK YOU.

12:19PM   13        JUST TO BE CLEAR, YOUR HONOR, YOU'RE GOING TO SWAP OUT THE

12:19PM   14  GOVERNMENT'S PROPOSAL AT 12 TO 17 WITH THE LANGUAGE THAT THE

12:19PM   15  COURT READ FROM THE MODEL; RIGHT?

12:19PM   16             THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

12:19PM   17             MS. VOLKAR:  YOUR HONOR, JUST TO ALSO CLARIFY, DOES

12:19PM   18  THAT INCLUDE THE SECOND SENTENCE THAT THE GOVERNMENT REQUESTED

12:19PM   19  FROM THE COMMENTARY IN THE MODEL?

12:19PM   20             THE COURT:  WELL, I HADN'T PUT THAT IN.  I WAS JUST

12:19PM   21  GIVING MINE THAT I READ TO YOU.

12:19PM   22        YOU WOULD LIKE THAT SECOND SENTENCE ADDED?

12:19PM   23             MS. VOLKAR:  YES, YOUR HONOR.

12:19PM   24             THE COURT:  ANY OBJECTION TO THAT, MS. SAHARIA?

12:19PM   25             MS. SAHARIA:  YES.  I THINK THAT'S WHAT I WAS

12:19PM 1    SPEAKING TO A FEW MINUTES AGO.  WE DO OBJECT TO THE SENTENCE,

12:19PM 2    "HOWEVER, A DEFENDANT'S BELIEF THAT THE VICTIMS OF THE FRAUD

12:19PM 3    WILL BE PAID IN THE FUTURE OR WILL SUSTAIN NO ECONOMIC LOSS IS

12:19PM 4    NO DEFENSE TO THE CRIME."

12:19PM 5         WE DO OBJECT TO THAT SENTENCE.  I DON'T THINK IT FITS THIS

12:19PM 6    CASE.  IT'S NOT WHAT WE'RE GOING TO ARGUE.

12:20PM 7         THAT'S AN INSTRUCTION THAT REBUTS A DEFENSE ARGUMENT THAT

12:20PM 8    IT DOESN'T MATTER IF I DEFRAUDED SOMEONE AS LONG AS I THOUGHT

12:20PM 9    THEY WOULD BE MADE WHOLE IN THE END.

12:20PM 10        WE'RE NOT GOING TO ARGUE THAT.  I THINK IT'S A MISLEADING

12:20PM 11   SENTENCE ON THE FACTS OF THIS CASE.

12:20PM 12        BUT, AGAIN, IF THE COURT WERE GOING TO GIVE IT, I THINK IT

12:20PM 13   WOULD BE APPROPRIATE TO ADD SOME SORT OF "STANDING ALONE"

12:20PM 14   LANGUAGE, BUT I DO THINK THAT IT'S NOT REQUIRED ON THE FACTS OF

12:20PM 15   THIS CASE AND COULD CONFUSE THE JURY.

12:20PM 16             THE COURT:  YES.

12:20PM 17             MS. VOLKAR:  YOUR HONOR, THIS WAS WHAT I WAS

12:20PM 18   SPEAKING TO EARLIER.  I THINK THIS ALREADY HAS BEEN ARGUED

12:20PM 19   REPEATEDLY THROUGH THE DEFENSE'S CROSS-EXAMINATION.  I LISTED

12:20PM 20   OFF THREE EXAMPLES THAT I COULD THINK OF OFF THE TOP OF MY

12:20PM 21   HEAD, WHICH IS THE CROSS-EXAMINATION OF INVESTORS FOCUSSED ON

12:20PM 22   THE INCREASING VALUE OF THEIR SHARES OVER TIME.  I'M

12:21PM 23   SPECIFICALLY THINKING OF WITH MR. EISENMAN THERE WAS DISCUSSION

12:21PM 24   ABOUT HOW THERE WERE MULTIPLE OPPORTUNITIES THAT HE COULD HAVE

12:21PM 25   SOLD HIS SHARES.

12:21PM 1     AND THEN THERE WAS THE CROSS-EXAMINATION OF DR. DAS WITH

12:21PM 2 THE QUOTE FROM THE MOVIE, IF IT'S NOT ALL RIGHT, THEN IT'S NOT

12:21PM 3 YET THE END.  THAT SEEMS TO SPEAK EXACTLY TO THIS, SOMETHING

12:21PM 4 BETTER WILL COME ALONG IN THE FUTURE.

12:21PM 5     AND THEN ONE OF THE CORE PIECES OF THE CASE, AS I

12:21PM 6 UNDERSTAND MS. HOLMES'S TESTIMONY, THAT SHE UNDERSTOOD THE 4

12:21PM 7 SERIES OR THE MINILAB HAD THE CAPABILITY TO DO ALL OF THE TESTS

12:21PM 8 AND THAT'S WHY SHE WAS NOT MISLEADING THE INVESTORS, ONE DAY IT

12:21PM 9 WOULD WORK.

12:21PM 10     AND THAT IS TALKING ABOUT WHAT WOULD COME ABOUT IN THE

12:21PM 11 FUTURE.

12:21PM 12          THE COURT:  SO HOW WOULD YOURS READ THEN?

12:21PM 13          MS. VOLKAR:  YOUR HONOR, IN KEEPING WITH -- ONE OF

12:21PM 14 TWO THINGS.  ONE, OF COURSE WE PROPOSED THE INSTRUCTION FROM

12:21PM 15 TARALLO.

12:21PM 16     BUT TAKING THE COURT'S DIRECTION OF LOOKING AT THE

12:21PM 17 COMMENTARY, WE WOULD JUST ASK TO INCLUDE THAT SECOND SENTENCE,

12:21PM 18 "HOWEVER, A DEFENDANT'S BELIEF THAT THE VICTIMS OF THE FRAUD

12:22PM 19 WILL BE PAID IN THE FUTURE OR WILL SUSTAIN NO ECONOMIC LOSS IS

12:22PM 20 NO DEFENSE TO THE CRIME."

12:22PM 21          MS. SAHARIA:  IF I MAY, YOUR HONOR, THE PROBLEM IS

12:22PM 22 THAT A DEFENDANT'S BELIEF THAT VICTIMS WILL SUSTAIN NO ECONOMIC

12:22PM 23 LOSS MAY INDEED BE A DEFENSE TO THE CRIME BECAUSE THAT IS

12:22PM 24 RELEVANT EVIDENCE THAT THE DEFENDANT THOUGHT WHAT SHE WAS

12:22PM 25 SAYING WAS TRUE, THAT SHE THOUGHT THAT SHE WAS -- SHE HAD A

12:22PM 1    SUCCESSFUL COMPANY, THAT SHE BELIEVED IN THE TRUTH OF WHAT SHE

12:22PM 2    WAS SAYING.  THAT IS A DEFENSE.

12:22PM 3         IT'S NOT A DEFENSE IF SHE IS KNOWINGLY MISLEADING PEOPLE.

12:22PM 4    BUT THE FACT THAT A DEFENDANT BELIEVES THAT HER VICTIMS OR

12:22PM 5    SUPPOSED VICTIMS WILL NOT SUSTAIN A LOSS MAY ITSELF BE EVIDENCE

12:22PM 6    THAT, THAT SHE BELIEVED WHAT SHE WAS SAYING WAS TRUE.

12:22PM 7         SO THAT VERY WELL COULD MISLEAD THE JURY.

12:22PM 8              THE COURT:  WELL, AND WHAT YOU'VE TOLD ME IS THAT'S

12:22PM 9    NOT WHAT YOU'RE GOING TO ARGUE --

12:22PM 10             MS. SAHARIA:  CORRECT, YOUR HONOR.

12:22PM 11             THE COURT:  -- BUT I UNDERSTAND THAT IT POTENTIALLY

12:23PM 12   COULD.

12:23PM 13        I GUESS THE LANGUAGE OF THAT IS SOMETHING THAT I WAS

12:23PM 14   UNCOMFORTABLE WITH, MS. VOLKAR.

12:23PM 15        I JUST --

12:23PM 16             MS. VOLKAR:  YOUR HONOR --

12:23PM 17             THE COURT:  THAT THE VICTIMS OF THE FRAUD WILL BE

12:23PM 18   PAID IN THE FUTURE, I'M NOT SURE THAT -- THAT LANGUAGE RELATES,

12:23PM 19   OF COURSE, DOESN'T IT, TO SOME OTHER TYPE OF A FACT PATTERN

12:23PM 20   MORE SO THAN THIS, I THINK.

12:23PM 21             MS. VOLKAR:  YOUR HONOR, I GO BACK TO THAT'S PART OF

12:23PM 22   WHY THE GOVERNMENT OFFERED THE TARALLO FORMULATION IN OUR -- IN

12:23PM 23   THE ECF 1188, THE LAST TWO LINES, WHICH I UNDERSTAND THE COURT

12:23PM 24   WAS PLANNING TO STRIKE.  THIS IS FROM TARALLO.

12:23PM 25             THE COURT:  RIGHT.

12:23PM  1          MS. VOLKAR:  "WHILE GOOD FAITH IS A DEFENSE TO WIRE

12:23PM  2    FRAUD, AN HONEST BELIEF IN THE ULTIMATE SUCCESS OF THE

12:23PM  3    ENTERPRISE IS NOT IN ITSELF A DEFENSE."

12:23PM  4        AND I THINK WHERE THE DISAGREEMENT BETWEEN THE PARTIES IS,

12:24PM  5    THE NINTH CIRCUIT HAS REPEATEDLY AFFIRMED THIS OVER AND OVER

12:24PM  6    AND OVER AGAIN.  IT'S IN THE COMMENTARY TO THE MODEL

12:24PM  7    INSTRUCTION.  IT'S IN TARALLO.

12:24PM  8        THEY DON'T LIKE THAT LANGUAGE BECAUSE IT LIMITS THE

12:24PM  9    DEFENSE THAT THEY WANT TO MAKE, BUT THAT'S EXACTLY WHY THE

12:24PM  10   GOVERNMENT THINKS IT MUST BE IN THE INSTRUCTION.

12:24PM  11       IT'S MISLEADING TO THE JURY TO NOT HAVE SOMETHING LIKE

12:24PM  12   THAT AS A GUARDRAIL AGAINST WHAT WE EXPECT THE DEFENSE WILL

12:24PM  13   ARGUE IN SOME WAY, SHAPE, OR FORM IN THEIR CLOSING ARGUMENTS.

12:24PM  14          MS. SAHARIA:  THAT'S JUST NOT TRUE, YOUR HONOR.  WE

12:24PM  15   ARE NOT GOING TO MAKE ARGUMENTS THAT ARE FORECLOSED BY LAW.

12:24PM  16       THE ISSUE IS NOT THAT THIS LANGUAGE FORECLOSES ARGUMENTS

12:24PM  17   WE WANT TO MAKE.  IT'S THAT THE JURY WILL BE MISLED INTO

12:24PM  18   THINKING THAT MS. HOLMES -- TO TAKE THE GOVERNMENT'S PROPOSAL

12:24PM  19   AT ECF 1188, ECF PAGE 30, THE JURY WILL BE MISLED INTO THINKING

12:24PM  20   THAT IF MS. HOLMES HAD AN HONEST BELIEF IN THE ULTIMATE SUCCESS

12:25PM  21   OF THE ENTERPRISE -- WHICH OF COURSE SHE DID, SHE VERY MUCH

12:25PM  22   BELIEVED IN THERANOS -- THAT THAT SOMEHOW IS NOT RELEVANT TO

12:25PM  23   THEIR DETERMINATION.

12:25PM  24       AND OF COURSE IT'S RELEVANT TO THEIR DETERMINATION OF

12:25PM  25   WHETHER SHE INTENDED TO DEFRAUD.  THAT IS A RELEVANT FACT IF

12:25PM 1   SHE TRULY BELIEVED THAT THERANOS HAD COME UP WITH TECHNOLOGY

12:25PM 2   THAT WORKED AND THAT WAS GOING TO SUCCEED.  THAT'S HIGHLY

12:25PM 3   RELEVANT.

12:25PM 4        THIS LANGUAGE WILL MISLEAD THE JURY.

12:25PM 5            THE COURT:  WELL, IF IT'S QUALIFIED, MS. SAHARIA,

12:25PM 6   "IS NOT IN ITSELF," "IS NOT WITHOUT MORE" --

12:25PM 7            MS. SAHARIA:  I THINK IT'S STILL CONFUSING IN MY

12:25PM 8   VIEW.  AN HONEST BELIEF IN THE ULTIMATE SUCCESS OF THE

12:25PM 9   ENTERPRISE IS NOT IN ITSELF A DEFENSE.

12:25PM 10       IT IS A DEFENSE.  IF THERE'S -- IF IT'S ACCOMPANIED WITH

12:25PM 11  FALSE AND MISLEADING -- KNOWINGLY FALSE AND MISLEADING

12:25PM 12  STATEMENTS, IT MAY NOT BE A DEFENSE.  BUT THAT CONCEPT ISN'T IN

12:25PM 13  THIS SENTENCE.

12:25PM 14       I THINK YOUR HONOR'S PROPOSAL TO INCLUDE THE FIRST

12:25PM 15  LANGUAGE FROM THE MODEL COMMENTARY MAKES PERFECT SENSE.  IT'S A

12:26PM 16  BALANCED STATEMENT.  IT DOESN'T TELL THE JURY WHICH WAY TO COME

12:26PM 17  OUT.  IT SAYS, "YOU MAY CONSIDER WHETHER, IN DETERMINING

12:26PM 18  WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO DEFRAUD."

12:26PM 19       THE GOVERNMENT CAN ARGUE FROM THAT SENTENCE EVERYTHING IT

12:26PM 20  WANTS TO ARGUE.  IT CAN ARGUE THAT MS. HOLMES DIDN'T HAVE AN

12:26PM 21  HONEST GOOD FAITH BELIEF IN THE TRUTH OF THE

12:26PM 22  MISREPRESENTATIONS.  IT CAN MAKE ALL OF THE ARGUMENTS IT WANTS

12:26PM 23  TO MAKE FROM THAT SENTENCE.

12:26PM 24           THE COURT:  WHEN I LOOKED AT MY PROPOSAL, I WAS

12:26PM 25  ACTUALLY LOOKING AT JUST THE REVERSE.  I WAS LOOKING AT THIS

8755

12:26PM 1    SAYING, WELL, THE GOVERNMENT -- EXCUSE ME, THE DEFENSE WILL

12:26PM 2    STILL BE ABLE TO ARGUE WHATEVER.

12:26PM 3            MS. SAHARIA:  WE BOTH CAN ARGUE WHATEVER FROM THAT

12:26PM 4    SENTENCE, YOUR HONOR.

12:26PM 5            THE COURT:  THAT'S WHAT I WAS LOOKING AT.

12:26PM 6        ALL RIGHT.  THANK YOU.

12:26PM 7        I'M GOING TO KEEP IT AS IS, MS. VOLKAR.  THANK YOU FOR

12:26PM 8    YOUR COMMENT.

12:26PM 9        ALL RIGHT.  WHAT ELSE?

12:26PM 10           MS. SAHARIA:  I THINK WE'RE UP TO AIDING AND

12:26PM 11   ABETTING, YOUR HONOR.

12:26PM 12           MS. VOLKAR:  I'M GOING TO LET MR. LEACH COME TO THE

12:27PM 13   PODIUM, YOUR HONOR.

12:27PM 14           THE COURT:  ALL RIGHT.  ONE THING I WANTED TO -- I'M

12:27PM 15   SORRY, MS. VOLKAR, BEFORE YOU LEAVE, I WAS LOOKING AT MAYBE

12:27PM 16   REFINING A COUPLE OF THE INSTRUCTIONS.

12:27PM 17       KNOWINGLY, I THINK YOU WERE TALKING ABOUT KNOWINGLY?

12:27PM 18           MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

12:27PM 19           THE COURT:  AND IT SEEMS TO ME THAT MAYBE WE NEED TO

12:27PM 20   DESCRIBE KNOWINGLY AND WILLFULLY AND ADHERE THEM TO THE

12:27PM 21   SPECIFIC INSTRUCTIONS, THAT IS, CONSPIRACY AND WIRE FRAUD.

12:27PM 22       AND I WONDER IF WE NEED TO -- BECAUSE I LOOK AT THESE AND

12:27PM 23   THERE MIGHT BE SOME JUROR CONFUSION AS TO THOSE, WITHOUT

12:27PM 24   TETHERING THEM TO THE INSTRUCTIONS SPECIFIC, AND I WONDERED IF,

12:27PM 25   FOR KNOWINGLY -- I'M AT 23, NUMBER 23 -- IF WE CAN ADD SOME

8756

12:27PM  1    LANGUAGE THAT SAYS "AS DESCRIBED IN INSTRUCTION 20 MEANS," OR

12:27PM  2    SOMETHING LIKE THAT.

12:27PM  3        AND THE SAME THING WITH WILLFULLY, "AS DESCRIBED IN

12:27PM  4    INSTRUCTION NUMBER," WHATEVER CONSPIRACY IS.

12:28PM  5            MS. SAHARIA:  I THINK THAT WOULD BE FINE,

12:28PM  6    YOUR HONOR.  OUR CONCERN WITH THIS INSTRUCTION IS THAT WE DO

12:28PM  7    THINK THAT THERE IS SOME CONFLICT BETWEEN THE KNOWING STANDARD

12:28PM  8    AND THE WILLFULLY STANDARD, AND SO IT MIGHT HELP TO ALLEVIATE

12:28PM  9    SOME CONFUSION IF THAT WERE INCLUDED.

12:28PM  10           THE COURT:  IT SEEMS LIKE IF THEY'RE TETHERED TO

12:28PM  11   THOSE SPECIFIC INSTRUCTIONS, THAT WOULD ELIMINATE ANY OF THAT

12:28PM  12   CROSS CONFUSION.

12:28PM  13           MS. VOLKAR:  WELL, YOUR HONOR, I THINK THIS IS WHERE

12:28PM  14   THE FUNDAMENTAL DISAGREEMENT LIES.  WHEN I LOOK AT INSTRUCTION

12:28PM  15   NUMBER 16, THE SECOND ELEMENT IS THAT SHE BECAME A MEMBER OF

12:28PM  16   THE ALLEGED CONSPIRACY KNOWING OF AT LEAST ONE OF ITS OBJECTS.

12:28PM  17       AND THE DEFENSE ORIGINALLY WANTED TO INSERT IN THERE "AND

12:28PM  18   WILLFULLY HELPING TO INTEND TO ACCOMPLISH THAT," AND I BELIEVE

12:28PM  19   THAT'S STILL THEIR POSITION OF WHERE THAT WILLFULLY FILLS IN.

12:28PM  20       I THINK IT'S READING WORDS THAT AREN'T IN THE STATUTE,

12:28PM  21   THAT AREN'T IN THE ELEMENTS.

12:28PM  22       I THINK THE GREATER RISK FOR JURY CONFUSION IS TETHERING

12:28PM  23   ONE INSTRUCTION TO ONE AND NOT TO BOTH WHEN I THINK THE

12:28PM  24   STANDARD IS KNOWINGLY -- THE STANDARD IS THE INTENT TO DECEIVE

12:29PM  25   AND CHEAT.

8757

12:29PM   1        I WORRY THAT TETHERING THEM IN THAT MANNER COULD CAUSE

12:29PM   2    GREATER CONFUSION ON WHAT THE STANDARD OF MENS REA IS.

12:29PM   3            MS. SAHARIA:  I'M HAPPY TO LOOK AT, IF THE COURT IS

12:29PM   4    GOING TO PROPOSE SOMETHING, TO LOOK AT THAT.

12:29PM   5            THE COURT:  WELL, I LOOKED AT THAT, AND I'VE DONE

12:29PM   6    THAT IN OTHER INSTRUCTIONS BEFORE WHERE THERE MIGHT SOME

12:29PM   7    CONFUSION.

12:29PM   8        IF THE PARTIES THINK THAT AT THE RISK OF CONFUSION, AND

12:29PM   9    YOU'RE ACCEPTING THAT THE RISK OF CONFUSION DOESN'T EXIST, OR

12:29PM  10    IF I'M DOING TOO MUCH ON THIS, I'M HAPPY TO LEAVE IT AS IS.

12:29PM  11        BUT I JUST LOOKED AT IT AS A POSSIBILITY TO CLEAN UP ANY

12:29PM  12    POSSIBLE CONFUSION THERE.

12:29PM  13        BUT IF YOU FEEL IT'S NOT NECESSARY, I WON'T GIVE IT.

12:29PM  14            MS. SAHARIA:  I THINK IT DEPENDS ON WHAT THE COURT

12:29PM  15    ULTIMATELY DOES WITH THE WILLFULLY INSTRUCTION, BUT I CAN SEE A

12:29PM  16    POTENTIAL FOR CONFUSION IF THE COURT ACCEPTS OUR PROPOSAL OR

12:29PM  17    PART OF OUR PROPOSAL.

12:29PM  18        SO I DO THINK THAT THERE'S A POTENTIAL FOR CONFUSION

12:30PM  19    BETWEEN THE KNOWING DEFINITION AND THE WILLFULLY DEFINITION --

12:30PM  20            THE COURT:  OKAY.

12:30PM  21            MS. SAHARIA:  -- WHICH IS WHY WE HAD OBJECTED TO

12:30PM  22    PART OF THE KNOWINGLY DEFINITION IN THE FIRST PLACE.

12:30PM  23            THE COURT:  ALL RIGHT.  WELL, LET'S RETURN TO THIS.

12:30PM  24        LET'S GO ON TO, YES, AIDING AND ABETTING.  THAT'S

12:30PM  25    MR. LEACH?

12:30PM 1          MR. LEACH:  YES, YOUR HONOR.

12:30PM 2          MS. VOLKAR:  THANK YOU, YOUR HONOR.

12:30PM 3          THE COURT:  ALL RIGHT.  MR. LEACH, DO YOU WANT TO GO

12:30PM 4    FIRST ON THIS?

12:30PM 5          MR. LEACH:  THE COURT SHOULD GIVE THE MODEL

12:30PM 6    INSTRUCTION FOR AIDING AND ABETTING.  THIS IS A CONCEPT THAT IS

12:30PM 7    APPLIED TO ALL TYPES OF CRIMINAL CASES THROUGHOUT THE

12:30PM 8    NINTH CIRCUIT.  I DON'T SEE ANYTHING UNIQUE TO THIS CASE TO

12:30PM 9    CAUSE THE COURT TO DEVIATE FROM THAT.

12:30PM 10         WE HAD PROPOSED THE LANGUAGE IN YELLOW, WHICH IS DRAWN

12:30PM 11   DIRECTLY FROM THE MODEL INSTRUCTION.

12:31PM 12         THE DEFENSE IS PROPOSING TO ADD "TOOK AN AFFIRMATIVE ACT

12:31PM 13   TO AID, COUNSEL, COMMAND."  AND THEIR CITATION TO THAT IS THE

12:31PM 14   ROSEMOND CASE.  THE ROSEMOND CASE IS CITED IN THE MODEL

12:31PM 15   INSTRUCTION, AND WITHOUT A RECOMMENDATION THAT THIS LANGUAGE

12:31PM 16   ABOUT AN AFFIRMATIVE ACT BE ADDED.

12:31PM 17         IN ADDITION, THE MODEL INSTRUCTION HAS FOUR ELEMENTS FOR

12:31PM 18   AIDING AND ABETTING.  THE DEFENSE IS PROPOSING A FIFTH ELEMENT

12:31PM 19   THAT IT'S LABELLED AT LINES 16 THROUGH 17, ADDING THE MENTAL

12:31PM 20   STATE FOR INTENT TO DEFRAUD.

12:31PM 21         WE OBJECT TO THAT.  THE COURT SHOULD GIVE THE MODEL

12:31PM 22   INSTRUCTION.

12:31PM 23         THE COURT:  OKAY.  THANK YOU.

12:31PM 24         MS. SAHARIA:  JUST A FEW POINTS, YOUR HONOR.

12:31PM 25         WE DO OBJECT TO THIS INSTRUCTION IN ITS ENTIRETY.  THE

12:31PM  1      INDICTMENT DOES NOT CHARGE AIDING AND ABETTING OR EVEN CITE

12:31PM  2      SECTION 2 OF 18 U.S.C.

12:31PM  3          I UNDERSTAND, OF COURSE, THAT AIDING AND ABETTING IS

12:32PM  4      IMPLIED IN ALL INDICTMENT, AND SO THAT IN AND OF ITSELF IS NOT

12:32PM  5      DISPOSITIVE.

12:32PM  6          THE PARTIES FILED PROPOSED JURY INSTRUCTIONS BEFORE TRIAL.

12:32PM  7      THE GOVERNMENT DID NOT INCLUDE AN AIDING AND ABETTING

12:32PM  8      INSTRUCTION IN ITS PROPOSED INSTRUCTIONS.

12:32PM  9          THOSE INSTRUCTIONS SERVED TO PUT THE COURT AND THE

12:32PM 10      PARTIES, THE DEFENSE, ON NOTICE AS TO WHAT THEORIES OF

12:32PM 11      LIABILITY THE GOVERNMENT INTENDED TO PURSUE AT TRIAL.

12:32PM 12          WE HAD NO NOTICE BEFORE TRIAL THAT THEY INTENDED TO PURSUE

12:32PM 13      AN AIDING AND ABETTING THEORY OF LIABILITY.

12:32PM 14          WE THEN HAD A DISCUSSION OF AIDING AND ABETTING BEFORE THE

12:32PM 15      TESTIMONY OF DR. DAS WHEN IT CAME TO AIDING AND ABETTING CLIA

12:32PM 16      VIOLATIONS.  THE GOVERNMENT NEVER SUGGESTED IN THAT COLLOQUY

12:32PM 17      THAT AIDING AND ABETTING WAS AT ISSUE IN THIS CASE.

12:32PM 18          SO WE SUBMIT THAT TO SPRING AIDING AND ABETTING LIABILITY

12:32PM 19      ON US AT THE CLOSE OF EVIDENCE IS PREJUDICIAL.

12:32PM 20          I WOULD CITE THE COURT TO THE U.S.A. V. GASKINS CASE,

12:32PM 21      849 F.2D 454, NINTH CIRCUIT 1988, WHERE THE COURT SAID THAT

12:33PM 22      "LIABILITY AS PRINCIPAL AND AS AIDER AND ABETTOR ARE TWO

12:33PM 23      DIFFERENT THEORIES OF LIABILITY, TWO CONCEPTUALLY DIFFERENT

12:33PM 24      THEORIES."  AND THE COURT SAID THAT THE DEFENSE MIGHT ARGUING

12:33PM 25      AIDING AND ABETTING LIABILITY DIFFERENTLY THAN PRINCIPAL

12:33PM  1    LIABILITY IF IT WAS ON NOTICE.

12:33PM  2        THAT CASE IS A LITTLE DIFFERENT, I WILL CONCEDE, BECAUSE

12:33PM  3    IN THAT CASE THE COURT DECIDED TO INSTRUCT ON AIDING AND

12:33PM  4    ABETTING LIABILITY AFTER CLOSING ARGUMENTS FOR THE FIRST TIME,

12:33PM  5    SO I WILL CONCEDE IT'S A LITTLE DIFFERENT.

12:33PM  6        BUT WE WILL SUBMIT THAT THERE SHOULD BE NO AIDING AND

12:33PM  7    ABETTING INSTRUCTION AT ALL.

12:33PM  8        BUT PUTTING THAT ASIDE, AND I DON'T WANT TO BELABOR THAT,

12:33PM  9    WE DO HAVE A FEW OBJECTIONS TO THE LANGUAGE OF THE INSTRUCTION.

12:33PM 10        FIRST, WE DO REQUEST THAT THE COURT INCLUDE AT LINE 10 THE

12:33PM 11    WORDS "TOOK AN AFFIRMATIVE ACT," WHICH COMES FROM THE SUPREME

12:33PM 12    COURT'S DECISION AT ROSEMOND; AND SECOND, AT LINES 16 AND 17,

12:34PM 13    WE DO THINK THIS ELEMENT OF AIDING AND ABETTING LIABILITY IS

12:34PM 14    ABSENT FROM THE MODEL INSTRUCTION.

12:34PM 15        NINTH CIRCUIT CASE LAW MAKES CLEAR THAT THERE ARE TWO

12:34PM 16    INTENTS THAT ARE REQUIRED AS PART OF AIDING AND ABETTING

12:34PM 17    LIABILITY.  THERE IS THE INTENT TO FACILITATE THE UNDERLYING

12:34PM 18    CRIME, BUT THERE'S ALSO YOU NEED TO HAVE THE UNDERLYING INTENT

12:34PM 19    OF THAT CRIME, IN THIS CASE THE INTENT TO DEFRAUD.

12:34PM 20        WE CITED THE COURT, AT FOOTNOTE 35, TO THE SAYETSITTY

12:34PM 21    CASE -- THAT'S S-A-Y-E-T-S-I-T-T-Y -- AND AGAIN, THE GASKINS

12:34PM 22    CASE WHICH LAY OUT THE ELEMENTS OF AIDING AND ABETTING

12:34PM 23    LIABILITY AND IDENTIFY THOSE TWO INTENTS AS SEPARATE ELEMENTS

12:34PM 24    OF THAT LIABILITY, AND THAT'S MISSING FROM THE MODEL

12:34PM 25    INSTRUCTION.

1   TWO OTHER VERY BRIEF POINTS.  I DO THINK IT READS SOMEWHAT

2   ODDLY TO SAY AT LINES 12, 14, AND THEN LINE 1 OF THE NEXT PAGE

3   TO SAY COUNTS THREE THROUGH EIGHT AND TEN THROUGH TWELVE,

4   WITHOUT SAYING "WIRE CHARGE AS CHARGED IN."  FOR INSTANCE, IF

5   YOU LOOK AT LINE 14, IT WOULD READ, UNDER THE GOVERNMENT'S

6   PROPOSAL, "MS. HOLMES ACTED WITH THE INTENT TO FACILITATE

7   COUNTS THREE THROUGH EIGHT."  THAT READS A LITTLE ODDLY TO ME.

8   THE INTENT IS TO FACILITATE THE OFFENSE, AND THE OFFENSE

9   HERE IS WIRE FRAUD, AND SO WE THINK THAT LANGUAGE SHOULD BE

10   ADDED IN THOSE LOCATIONS.

11   AND THEN THE LAST POINT I WOULD MAKE IS ON THE NEXT PAGE,

12   ECF 34, LINES 6 AND 7.  THE MODEL INSTRUCTION READS AS IF

13   THERE'S TWO DEFENDANTS IN THE CASE AND IS TELLING THE JURY YOU

14   DON'T NEED TO DECIDE WHICH DEFENDANT IS THE PRINCIPAL AND WHICH

15   IS THE AIDER AND ABETTOR.

16   THAT LANGUAGE DOESN'T MAKE SENSE IN THIS CASE SINCE

17   THERE'S ONLY ONE DEFENDANT, SO WE THINK THE COURT SHOULD CHANGE

18   "WHICH DEFENDANT" TO "WHICH PERSON."

19   THE COURT:  OKAY.  THANK YOU.

20   MR. LEACH?

21   MR. LEACH:  YOUR HONOR, WITH RESPECT TO THE NOTICE

22   POINT, THE DEFENDANT CONCEDES THAT AIDING AND ABETTING

23   LIABILITY IS IMPLICIT IN EVERY INDICTMENT.

24   THE INDICTMENT DOESN'T SPELL OUT PINKERTON LIABILITY, IT

25   DOESN'T SPELL OUT THE COSCHEMER THEORY OF LIABILITY.  THERE'S

8762

12:36PM   1    BEEN AMPLE NOTICE THERE, AND WE SHOULD GIVE AN INSTRUCTION FOR

12:36PM   2    ANY THEORY THAT IS SUPPORTED BY THE EVIDENCE AT THE END OF THE

12:36PM   3    DAY.  SO I DON'T THINK THE NOTICE ARGUMENT IS WELL TAKEN.

12:36PM   4        I HAVE NO PROBLEM WITH THE LAST TWO SUGGESTIONS

12:36PM   5    MS. SAHARIA WAS MAKING ABOUT, ON LINE 14, SAYING, "WIRE FRAUD

12:36PM   6    AS CHARGED IN," AND I HAVE NO PROBLEM WITH, ON PAGE 34, LINES 6

12:36PM   7    TO 7, SAYING, "WHICH PERSON ACTUALLY COMMITTED THE CRIME, AND

12:36PM   8    WHICH PERSON AIDED AND ABETTED."

12:36PM   9        AND I JUST SEE NO OTHER REASON TO DEVIATE FROM THE MODEL

12:36PM   10   INSTRUCTION UNDER THE CIRCUMSTANCES.

12:36PM   11        THE COURT:  OKAY.  WHY SHOULDN'T WE STAY WITH THE

12:37PM   12   MODEL LANGUAGE ON LINE 10?  YOUR SUGGESTED LANGUAGE,

12:37PM   13   MS. SAHARIA, DOESN'T THE, DOESN'T THE MODEL ACCOMPLISH THAT?

12:37PM   14        MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.  I THINK

12:37PM   15   THE LANGUAGE "AIDED," AND PARTICULARLY "COUNSELLED" IS A WORD

12:37PM   16   THAT MAY NOT CONNOTE AN ACTUAL AFFIRMATIVE ACT.

12:37PM   17        SO WE THINK THAT THAT LANGUAGE, "AIDED, COUNSELLED,

12:37PM   18   COMMANDED, INDUCED, OR PROCURED" IS NOT CLEAR ENOUGH TO MAKE

12:37PM   19   CLEAR TO THE JURY THAT AN AFFIRMATIVE ACT IS REQUIRED, WHICH

12:37PM   20   THE SUPREME COURT MADE CLEAR IN THE ROSEMOND CASE.

12:37PM   21        THE COURT:  OKAY.

12:37PM   22        MS. SAHARIA:  JUST TO BE CLEAR, OUR SUGGESTION TO

12:37PM   23   ADD THE LANGUAGE "WIRE FRAUD AS CHARGED IN" IS AT BOTH LINES 12

12:37PM   24   AND 14, AND THEN LINE 1 OF THE NEXT PAGE.

12:38PM   25        THE COURT:  WE'LL MAKE THOSE CHANGES TO THE WIRE

12:38PM  1    FRAUD AS INDICATED, AND CHANGING "DEFENDANT" TO "PERSON" ON

12:38PM  2    LINES 6 AND 7.  I THINK THOSE ARE APPROPRIATE.

12:38PM  3         AND I'M GOING TO USE THE MODEL INSTRUCTION WITH THE FOUR

12:38PM  4    ELEMENTS.  I THINK THAT'S SUFFICIENT TO FULLY INFORM, AND THE

12:38PM  5    PARTIES CAN ARGUE THE STATE OF THE EVIDENCE.

12:38PM  6         LET'S MOVE NEXT TO 25, AND THIS IS SCHEME TO DEFRAUD.

12:38PM  7              MS. SAHARIA:  THIS IS COSCHEMER LIABILITY,

12:38PM  8    YOUR HONOR?

12:38PM  9              THE COURT:  YES.

12:38PM 10         MS. SAHARIA, LET ME JUST START OUT, YOU KNOW, YOURS IS

12:39PM 11    QUITE LENGTHY.

12:39PM 12              MS. SAHARIA:  IT IS, YOUR HONOR, ALTHOUGH I WILL SAY

12:39PM 13    THAT OURS IS NO LENGTHIER THAN THE PINKERTON INSTRUCTION

12:39PM 14    BECAUSE WE DIVIDED IT.

12:39PM 15              THE COURT:  I UNDERSTAND.

12:39PM 16              MS. SAHARIA:  AS WE SAID BEFORE, AND AS THE

12:39PM 17    GOVERNMENT AGREED IN THE PINKERTON ONE, THERE ARE TWO DIFFERENT

12:39PM 18    SCHEMES, JUST LIKE THERE ARE TWO DIFFERENT CONSPIRACIES, AND SO

12:39PM 19    THEY AGREED IN THE PINKERTON ONE TO DIVIDE IT SO THE JURY IS

12:39PM 20    NOT CONFUSED BETWEEN THE SCHEMES AND THE ACTS.

12:39PM 21         BUT WHAT I WILL SAY IS THE FOLLOWING:  PUTTING ASIDE OUR

12:39PM 22    MORE GENERAL OBJECTION TO COSCHEMER LIABILITY IN GENERAL,

12:39PM 23    THERE'S TWO FUNDAMENTAL PROBLEMS WITH THE GOVERNMENT AND MODEL

12:39PM 24    INSTRUCTION.

12:39PM 25         THE FIRST IS THE FAILURE TO MATCH UP THE SCHEMES WITH THE

12:39PM 1 COUNTS, WHICH IS AN ISSUE HERE BECAUSE THERE'S TWO DIFFERENT

12:39PM 2 SCHEMES.

12:39PM 3   BUT EVEN MORE FUNDAMENTALLY THAN THAT, THE MODEL

12:39PM 4 INSTRUCTION IN MY VIEW IS BIZARRELY INADEQUATE WHEN YOU COMPARE

12:39PM 5 IT TO ALL OF THE OTHER MODEL INSTRUCTIONS, WHICH TELL THE JURY

12:40PM 6 THAT THEY NEED TO FIND CERTAIN ELEMENTS BEYOND A REASONABLE

12:40PM 7 DOUBT.

12:40PM 8   AND THAT'S HOW ALL OF THE OTHER MODEL INSTRUCTIONS AND

12:40PM 9 INSTRUCTIONS THAT WE'VE BEEN DISCUSSING ARE FRAMED.  THEY TELL

12:40PM 10 THE JURY, "TO FIND MS. HOLMES GUILTY ON BLAH BLAH BLAH, YOU

12:40PM 11 NEED TO FIND BEYOND A REASONABLE DOUBT THE FOLLOWING ELEMENTS."

12:40PM 12   THIS MODEL INSTRUCTION ON COSCHEMER LIABILITY DOES NONE OF

12:40PM 13 THAT.  THERE'S NO, NO REQUIREMENT HERE TO FIND LIABILITY BEYOND

12:40PM 14 A REASONABLE DOUBT, AND IT DOESN'T LIST THE ELEMENTS FOR THE

12:40PM 15 JURY IN THE WAY THAT EVERY OTHER INSTRUCTION DOES.

12:40PM 16   SO ALL THAT WE DID IS TO MODEL THE COSCHEMER LIABILITY

12:40PM 17 INSTRUCTION AFTER ALL OF THE OTHER INSTRUCTIONS, INCLUDING THE

12:40PM 18 PINKERTON INSTRUCTION, BY TELLING THE JURY THAT IT NEEDS TO

12:40PM 19 FIND THE ELEMENTS BEYOND A REASONABLE DOUBT.

12:40PM 20   SUBSTANTIVELY I DON'T THINK IT'S REALLY ANY DIFFERENT THAN

12:40PM 21 THE GOVERNMENT MODEL AND PINKERTON.  IT'S JUST THAT WE PUT IT

12:41PM 22 IN THE FORMAT THAT THE JURY WILL UNDERSTAND AND THAT CONVEYS

12:41PM 23 THE GOVERNMENT'S BURDEN OF PROOF, WHICH IS ABSENT FROM THE

12:41PM 24 MODEL.

12:41PM 25   (PAUSE IN PROCEEDINGS.)

12:41PM  1    THE COURT:  MR. LEACH, OTHER THAN THE LENGTH OF THE

12:41PM  2    DEFENSE PROPOSED INSTRUCTIONS, DOES IT OTHERWISE COMPORT WITH

12:41PM  3    THE MODEL?

12:41PM  4    MR. LEACH:  I THINK THERE ARE ELEMENTS THAT THE

12:41PM  5    GOVERNMENT WOULD STILL OBJECT TO, YOUR HONOR.

12:41PM  6    IN LINE 18 IT SAYS, "BASED ON THE FACTS THAT WERE KNOWN TO

12:41PM  7    HER," I THINK THAT'S AN ADDITION FROM BOTH THE MODEL FOR

12:42PM  8    COSCHEMER LIABILITY, BUT ALSO THE MODEL FOR PINKERTON

12:42PM  9    LIABILITY.  SO I THINK THAT'S ADDING LANGUAGE THAT WOULD NOT BE

12:42PM  10   REQUIRED.

12:42PM  11   MS. SAHARIA:  THAT'S CORRECT, YOUR HONOR.

12:42PM  12   AND WE DID AGREE TO REMOVE THAT LANGUAGE FROM THE AGREED

12:42PM  13   UPON PINKERTON INSTRUCTION, SO ASSUMING WE COULD OTHERWISE

12:42PM  14   AGREE ON THIS INSTRUCTION, I THINK WE WOULD BE FINE REMOVING

12:42PM  15   THAT LANGUAGE AS WELL.

12:42PM  16   THE COURT:  OKAY.  THANK YOU.

12:42PM  17   MR. LEACH:  OTHER THAN THAT, YOUR HONOR, I'M NOT

12:42PM  18   CURRENTLY IDENTIFYING ANYTHING THAT IS -- THAT WOULD DIFFER

12:42PM  19   FROM THE PINKERTON THEORY.

12:42PM  20   BUT, AGAIN, I THINK THE MODEL CAPTURES WHAT -- ADEQUATELY

12:43PM  21   DESCRIBES THE THEORY OF LIABILITY.

12:43PM  22   IF THE CRITICISM IS THAT IT DOESN'T SAY "BEYOND A

12:43PM  23   REASONABLE DOUBT," I THINK THAT'S INSTRUCTED ELSEWHERE, BUT I

12:43PM  24   DO THINK THAT ELEMENT COULD BE ADDED TO THE MODEL.

12:43PM  25   BUT OUR COMPLAINTS HERE WERE LARGELY THAT IT'S ADDING IN

12:43PM 1    THAT ONE PART, AND IT'S ALSO LONGER THAN NECESSARY TO TELL THE

12:43PM 2    JURY WHAT IT NEEDS TO KNOW.

12:43PM 3              THE COURT:  ALL RIGHT.  THANK YOU.

12:43PM 4         I'LL GIVE THIS AS MODIFIED, EDITING LINE 18 AS YOU BOTH

12:43PM 5    AGREED TO DO.

12:43PM 6              MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:43PM 7         AND WE WOULD CONSENT TO REMOVE THE SAME LANGUAGE ON THE

12:43PM 8    NEXT PAGE, WHICH IS LINE 14.

12:43PM 9              THE COURT:  YES.

12:43PM 10             MS. SAHARIA:  IT'S REPEATED TWICE.

12:43PM 11             THE COURT:  ALL RIGHT.  THANK YOU.

12:43PM 12        WE'RE NOW ON 27, WHICH IS VICTIM'S CONDUCT, AND THIS IS

12:43PM 13   THE OMISSION AGAIN.

12:43PM 14             MS. SAHARIA:  CORRECT.  APART FROM THAT, WE HAVE

12:43PM 15   AGREED TO THE GOVERNMENT'S PROPOSAL.

12:43PM 16             THE COURT:  WE'RE GOING TO TALK ABOUT OMISSIONS

12:43PM 17   AGAIN IN JUST A MOMENT.

12:43PM 18             MR. LEACH:  YOUR HONOR, I MIGHT BE ABLE TO --

12:44PM 19             THE COURT:  HELP OUT?

12:44PM 20             MR. LEACH:  -- CIRCUMSCRIBE AND HELP OUT ON THAT

12:44PM 21   DISCUSSION.

12:44PM 22             THE COURT:  SURE.

12:44PM 23             MR. LEACH:  HAVING CONSIDERED THE DEFENSE ARGUMENTS

12:44PM 24   AND AFTER DISCUSSION AND UPON SOME REFLECTION, WE WOULD BE FINE

12:44PM 25   TAKING OUT THE OMISSIONS THEORY IN THE WIRE FRAUD INSTRUCTION,

```
12:44PM   1    AND WE WOULD BE FINE TAKING OUT "FACTS OMITTED" IN THIS
12:44PM   2    PARTICULAR INSTRUCTION.
12:44PM   3              THE COURT:  OKAY.
12:44PM   4              MR. LEACH:  SO THIS IS JURY INSTRUCTION NUMBER 20
12:44PM   5    BEGINNING ON PAGE 26.  WE WOULD AGREE TO TAKE OUT "OMITTED
12:44PM   6    FACTS" IN LINE 5 AND LINE 9; AND REMOVING, ON PAGE 28, LINES 17
12:44PM   7    TO 21, THE ONE SPELLING OUT THE THEORY FOR OMISSIONS.
12:45PM   8       I THINK IT'S WARRANTED BY THE EVIDENCE, BUT IT IS NOT THE
12:45PM   9    GOVERNMENT'S INTENTION TO ARGUE AN OMISSIONS THEORY, SO IN
12:45PM   10   LIGHT OF THE COURT'S COMMENTS AND SOME OF THE ARGUMENT, WE'RE
12:45PM   11   PREPARED TO TAKE THAT OUT.
12:45PM   12             THE COURT:  ALL RIGHT.  THANK YOU.  THAT IS WHAT WE
12:45PM   13   WERE GOING TO CIRCLE BACK TO, AND I WANTED TO ASK THAT
12:45PM   14   QUESTION.
12:45PM   15      BUT LET ME HEAR MS. SAHARIA'S OBJECTION.
12:45PM   16             MS. SAHARIA:  I DON'T HAVE ANY OBJECTION TO REMOVING
12:45PM   17   OMISSIONS.  I WOULD CERTAINLY AGREE WITH THAT.
12:45PM   18      I DO WANT TO CAREFULLY GO BACK AND LOOK AT THE REST OF THE
12:45PM   19   INSTRUCTIONS, BECAUSE I THINK THERE'S A FEW OTHER PLACES WHERE
12:45PM   20   OMISSIONS LANGUAGE APPEARS, AND I JUST WANT TO MAKE SURE THAT
12:45PM   21   WE'RE BEING CONSISTENT.  BUT I JUST WANT TO HAVE THE
12:45PM   22   OPPORTUNITY TO DO THAT.
12:45PM   23             THE COURT:  THANK YOU.  WHEN WE FINISH OUR
12:45PM   24   CONVERSATION HERE, HOPEFULLY WE CAN -- I THINK WE'RE VERY
12:45PM   25   CLOSE --
```

8768

```
12:45PM   1              MS. SAHARIA:  I THINK SO, YOUR HONOR.

12:45PM   2              THE COURT:  -- TO FINISHING THIS.  THEN WHAT I'M

12:45PM   3   GOING TO DO IS TASK THE PARTIES TO GO BACK, REVIEW, AND SEE IF,

12:45PM   4   SOMETIME TODAY, YOU CAN COME UP WITH A FINALIZED COPY, SHARE IT

12:45PM   5   WITH THE COURT, AND WE CAN HAVE ANOTHER MEETING BY ZOOM OR YOU

12:46PM   6   CAN COME BACK HERE, WHATEVER YOU WOULD LIKE TO DO, TO FINALIZE

12:46PM   7   THINGS.

12:46PM   8              MR. LEACH:  I DO WANT TO BE CLEAR, YOUR HONOR.

12:46PM   9   OMISSIONS DOES SHOW UP IN JURY INSTRUCTION NUMBER 23 ON THE

12:46PM  10   DEFINITION OF KNOWINGLY.

12:46PM  11       WE DO THINK IT'S APPROPRIATE TO KEEP OMISSIONS IN THE

12:46PM  12   DEFINITION OF THE INTENT HERE BECAUSE THE THINGS THAT

12:46PM  13   MS. HOLMES DOES NOT SAY IN THE CONTEXT OF AN ENTIRE

12:46PM  14   CONVERSATION MIGHT HAVE SOME BEARING ON HER MENTAL STATE,

12:46PM  15   WHETHER SHE ACTED KNOWINGLY.  SO IT'S NOT IN BRACKETS IN THE

12:46PM  16   MODEL INSTRUCTION FOR KNOWINGLY, AND WE THINK IT'S APPROPRIATE

12:46PM  17   TO KEEP IT IN THERE.

12:46PM  18       BUT IT'S THE GOVERNMENT'S INTENTION NOT TO RELY ON THE

12:46PM  19   OMISSIONS THEORY FOR WIRE FRAUD IN THAT INSTRUCTION, AND IF

12:46PM  20   IT'S IN ADDITIONAL ONES, SUCH AS THE VICTIM'S NEGLIGENCE,

12:46PM  21   ALLEGED NEGLIGENCE THAT WE'RE LOOKING AT NOW, WE'LL WORK WITH

12:46PM  22   MS. SAHARIA TO MAKE SURE THAT'S OUT.

12:46PM  23              THE COURT:  OKAY.

12:46PM  24              MS. SAHARIA:  I'LL LOOK AT THE KNOWINGLY ONE.  I

12:46PM  25   JUST WANT TO THINK ABOUT IT.  SO WE CAN MEET AND CONFER WITH
```

12:47PM 1    THE GOVERNMENT ABOUT THAT.

12:47PM 2              THE COURT:  ALL RIGHT.  THANK YOU.

12:47PM 3         LINE 28, SUCCESS OF THE SCHEME.

12:47PM 4              MR. LEACH:  WE THOUGHT THE COURT GOT IT RIGHT IN THE

12:47PM 5    CHANG CASE BY INCLUDING THIS INSTRUCTION.

12:47PM 6         THIS DOVETAILS SIGNIFICANTLY WITH THE GOOD FAITH ARGUMENT

12:47PM 7    THAT WE'VE BEEN HAVING.  WE DO THINK THE SECOND LINE HERE IS

12:47PM 8    PARTICULARLY IMPORTANT GIVEN SOME OF THE ARGUMENTS THAT THE

12:47PM 9    DEFENSE HAS MADE IN TERMS OF HER SELLING HER STOCK.

12:47PM 10        BUT WE THOUGHT THIS INSTRUCTION WAS APPROPRIATELY GIVEN IN

12:47PM 11   CHANG AND THE CHANNELS THE LANGUAGE OF TARALLO AND IS

12:47PM 12   APPROPRIATE HERE.

12:47PM 13             MS. SAHARIA:  I THINK WE'VE ALREADY DISCUSSED THIS

12:47PM 14   CONCEPT A LOT TODAY, SO I DON'T WANT TO BELABOR THE POINT.

12:47PM 15        WE DON'T THINK IT FITS THE FACTS OF THE CASE.

12:47PM 16        I WOULD JUST NOTE AGAIN THAT WE HAD THIS DISCUSSION LAST

12:47PM 17   WEEK.  I DON'T THINK THE FIRST SENTENCE IS A CORRECT STATEMENT

12:47PM 18   OF THE LAW BECAUSE IT SAYS "SUCCESS IS NOT MATERIAL."

12:48PM 19        IT CERTAINLY IS RELEVANT, AND THAT WORD COULD MISLEAD THE

12:48PM 20   JURY.

12:48PM 21        IF THE COURT WERE GOING TO GIVE SUCH AN INSTRUCTION, I

12:48PM 22   THINK "MATERIAL" WOULD NEED TO BE "REQUIRED" OR "NECESSARY" OR

12:48PM 23   SOME SIMILAR LANGUAGE.

12:48PM 24        BUT, AGAIN, THIS IS -- I JUST DON'T THINK THIS FITS THE

12:48PM 25   FACTS OF THIS CASE.  THE GOVERNMENT IS NOT -- THIS IS AN

8770

12:48PM 1    INSTRUCTION THAT IS GIVEN WHEN THE DEFENDANT TRIES TO DEFRAUD

12:48PM 2    SOMEONE AND DOESN'T, IS UNSUCCESSFUL IN DOING SO.

12:48PM 3         HERE THE GOVERNMENT'S CASE IS THAT MS. HOLMES WAS CAPABLE

12:48PM 4    AND DID DEFRAUD PEOPLE.  WE OBVIOUSLY DISAGREE WITH THAT.

12:48PM 5         BUT I JUST DON'T THINK THAT THIS FITS THIS CASE.

12:48PM 6         THE COURT:  WELL, THERE'S -- YOU KNOW, THE WITNESSES

12:48PM 7    TESTIFIED AND THERE WAS EXAMINATION, BOTH DIRECT AND CROSS, AS

12:48PM 8    TO A WIDE, BROAD CATEGORY OF CONDUCT AND STATEMENTS AND

12:48PM 9    INFORMATION THAT WAS SHARED AND THAT WAS NOT SHARED.

12:48PM 10        SO LOOKING AT IT THROUGH A BROAD LENS, I DON'T THINK IT'S

12:49PM 11   INAPPROPRIATE TO GIVE THIS.

12:49PM 12        BUT I DO TAKE YOUR POINT ABOUT "MATERIAL" AND MAYBE

12:49PM 13   "NECESSARY" OR SOME OTHER DESCRIPTOR COULD BE USED THERE,

12:49PM 14   MR. LEACH.

12:49PM 15        MR. LEACH:  WE'RE FINE WITH "REQUIRED" OR "IS NOT

12:49PM 16   NECESSARY."

12:49PM 17        THE COURT:  LET'S PUT "IS NOT NECESSARY."

12:49PM 18       AND I'LL NOTE YOUR COMMENTS, MS. SAHARIA.

12:49PM 19        MS. SAHARIA:  THANK YOU.

12:49PM 20        THE COURT:  THE NEXT IS RESPONDEAT SUPERIOR.

12:49PM 21        MS. SAHARIA:  I'M HAPPILY GOING TO CEDE THE PODIUM

12:49PM 22   NOW TO MR. LEMENS.

12:49PM 23        MR. LEMENS:  GOOD AFTERNOON, YOUR HONOR.

12:49PM 24        THE COURT:  GOOD AFTERNOON.

12:49PM 25        MR. LEMENS:  ANDREW LEMENS FOR MS. HOLMES.

12:49PM  1          THE COURT:  WHY SHOULD THIS BE GIVEN?  WHY IS THIS

12:50PM  2     RELEVANT TO THE CASE HERE, MR. LEMENS?

12:50PM  3          MR. LEMENS:  I THINK, YOUR HONOR, THIS HEARKENS BACK

12:50PM  4     TO THE MOTION IN LIMINE ORDER THAT YOU ENTERED RECOGNIZING A

12:50PM  5     CONCERN ABOUT TESTIMONY OR EVIDENCE RELATED TO MS. HOLMES'S

12:50PM  6     ROLE, OR ANY INFLUENCE OR AUTHORITY RELATED TO THAT ROLE, AND

12:50PM  7     IN PARTICULAR HER STATUS AS CEO.  THAT'S DOCKET 798 AT PAGE 59.

12:50PM  8          THERE'S BEEN CONSIDERABLE EVIDENCE FROM THE GOVERNMENT IN

12:50PM  9     THIS CASE, TESTIMONY ABOUT MS. HOLMES'S ROLE AT THE COMPANY,

12:50PM 10     HER LEVEL OF AUTHORITY AT THE COMPANY, STATEMENTS FROM HER THAT

12:50PM 11     SHE WAS THE CEO AND SHE HAD RESPONSIBILITY.

12:50PM 12          MR. LEACH ADDUCED ON CROSS-EXAMINATION STATEMENTS, I AM --

12:50PM 13     ALL ROADS LED TO HER, THE BUCK STOPS WITH HER.

12:50PM 14          IN JUSTIFYING THOSE STATEMENTS, THE GOVERNMENT HAS NOTED

12:50PM 15     THAT THEY ARE ADMISSIONS.

12:50PM 16          AND OF COURSE HER ROLE AND POSITION AS CEO IS NOT A

12:50PM 17     GENERAL ADMISSION OF CRIMINAL LIABILITY.  IT'S EXACTLY THE

12:51PM 18     CONCERN THAT ANIMATED OUR MOTION IN LIMINE DISCUSSION.

12:51PM 19          IN LIGHT OF THE EVIDENCE THAT HAS COME IN, WE THINK AN

12:51PM 20     INSTRUCTION HERE IS APPROPRIATE SIMPLY TO REMIND THE JURY THAT

12:51PM 21     HER POSITION AT THE COMPANY IS NOT SUFFICIENT FROM WHICH TO

12:51PM 22     INFER LIABILITY.

12:51PM 23          THE COURT:  OKAY.

12:51PM 24     MR. LEACH?

12:51PM 25          MR. LEACH:  THIS IS ARGUMENT, YOUR HONOR, AND IT'S

8772

12:51PM 1    SINGLING OUT PARTICULAR CATEGORIES OF EVIDENCE THAT ARE FAIR

12:51PM 2    GAME FOR BOTH PARTIES TO ARGUE.

12:51PM 3        WE ELICITED ON CROSS-EXAMINATION OF MS. HOLMES HER TITLE

12:51PM 4    AND HER AUTHORITY WITHIN THE COMPANY.

12:51PM 5        THE REDIRECT WAS FILLED WITH ARGUMENTS, THAT DOESN'T MEAN

12:51PM 6    YOU KNOW EVERYTHING AT THE COMPANY.

12:51PM 7        SO I REALLY THINK THIS IS ARGUMENTATIVE.  IT'S NOT

12:51PM 8    SOMETHING THAT THE JURY IS REQUIRED TO FIND OR NOT FIND.

12:51PM 9        THE COURT IS ALREADY INSTRUCTING, IN CONNECTION WITH THE

12:51PM 10   CONSPIRACY CHARGE, THAT IT'S NOT ENOUGH THAT CONSPIRATORS

12:52PM 11   SIMPLY MET, DISCUSSED MATTERS OF COMMON INTEREST, ACTED IN

12:52PM 12   SIMILAR WAYS, OR PERHAPS HELPED ONE ANOTHER, NOR IS IT ENOUGH

12:52PM 13   THAT THEY HAD A BUSINESS OR ROMANTIC RELATIONSHIP.

12:52PM 14       THE COURT IS INSTRUCTING IN OTHER AREAS THAT, YOU KNOW,

12:52PM 15   ONE FACT BY ITSELF IS NOT SUFFICIENT TO FIND LIABILITY.

12:52PM 16       I THINK THIS IS A, A DEFENSE THEORY DRESSED UP IN A LEGAL

12:52PM 17   INSTRUCTION THAT SIMPLY IS NOT NECESSARY AND IS ARGUMENT, AND

12:52PM 18   IT IS ALSO TO SOME EXTENT COVERED BY OTHER INSTRUCTIONS.

12:52PM 19           THE COURT:  MR. LEMENS, ANYTHING?

12:52PM 20           MR. LEMENS:  I THINK IF THEY'RE GOING TO MAKE THE

12:52PM 21   ARGUMENT THAT SHE HAS SOME ULTIMATE RESPONSIBILITY AS CEO,

12:52PM 22   THERE'S A VIABLE AND NECESSARY INSTRUCTION IN LIGHT OF WHAT THE

12:52PM 23   COURT HAS PREVIOUSLY FOUND AT THE MOTION IN LIMINE STAGE.

12:52PM 24           THE COURT:  WELL, THAT WAS -- THANK YOU.  AND THAT

12:52PM 25   FINDING WAS RELATED TO CERTAIN OTHER EVIDENCE COMING IN WITHOUT

12:52PM 1     ADDITIONAL FOUNDATION.  IT WAS -- I THINK SOME OF IT RELATED TO

12:53PM 2     AGENCY AND WHETHER OR NOT CERTAIN STATEMENTS COULD COME IN.

12:53PM 3          AND THIS ALMOST SOUNDS LIKE IT'S STRICT LIABILITY AND THAT

12:53PM 4     IF SHE'S THE CEO, EVERYTHING THAT SHE DID, SAID, AND ANYTHING

12:53PM 5     THAT THE COMPANY DID FALLS BACK TO HER.

12:53PM 6          I KNOW THERE WAS TESTIMONY FROM BOTH SIDES, BOTH CROSS AND

12:53PM 7     DIRECT EXAMINATION, THERE WAS ADDITIONAL EVIDENCE, I THINK,

12:53PM 8     SOME -- IT MIGHT HAVE BEEN ONE OF THE VIDEOS THAT WE SAW OR

12:53PM 9     CERTAINLY SOME OF THE OTHER WRITINGS THAT SUGGESTED THAT.

12:53PM 10         I DON'T -- ARE YOU GOING TO ARGUE STRICT LIABILITY?

12:53PM 11              MR. LEACH:  NO, YOUR HONOR.

12:53PM 12              THE COURT:  I DON'T THINK THIS IS NECESSARY.  I

12:53PM 13    UNDERSTAND THE SPIRIT OF THIS.  I'M NOT GOING TO GIVE THIS.

12:53PM 14         I THINK THE PARTIES WILL BE ABLE TO ARGUE THE EVIDENCE

12:53PM 15    SUFFICIENTLY TO KEEP -- NOW THAT THE GOVERNMENT IS NOT GOING TO

12:53PM 16    ARGUE STRICT LIABILITY OR A THEORY LIKE THAT, I THINK THE

12:53PM 17    DEFENSE WILL BE ABLE TO SUGGEST TO THE JURY THAT WHATEVER THEY

12:54PM 18    NEED TO DO, THAT HER POSITION AT THE COMPANY WAS NOT IN AND OF

12:54PM 19    ITSELF ENOUGH TO FIND VIOLATIONS AS INDICATED IN THE

12:54PM 20    INDICTMENT.

12:54PM 21         SO I'M NOT GOING TO GIVE THAT INSTRUCTION.

12:54PM 22         NUMBER 30 IS NEXT.

12:54PM 23              MR. LEMENS:  YOUR HONOR, WE'LL JUST PRESERVE OUR

12:54PM 24    OBJECTION.

12:54PM 25              THE COURT:  YES, OF COURSE.

8774

12:54PM  1          MR. LEMENS:  OKAY.

12:54PM  2          THE COURT:  AND NUMBER 30 IS THE DEFENSE PROPOSAL,

12:54PM  3   REGULATORY VIOLATIONS, SUGGESTED NUMBER 30 FROM THE GOVERNMENT,

12:54PM  4   THIS IS REGARDING -- I THINK I SAID, OR I TOLD THE PARTIES I

12:54PM  5   WOULD GIVE AN INSTRUCTION LIKE THIS.

12:54PM  6       I WAS CONCERNED A COUPLE OF TIMES DURING THE TESTIMONY --

12:54PM  7   I MAY HAVE ADVISED THE JURY ALSO -- BUT I CERTAINLY TOLD

12:54PM  8   COUNSEL THAT THERE WAS CONCERN OF THE COURT THAT PROOF OF A

12:54PM  9   VIOLATION OF A CIVIL REGULATION WOULD NOT SUFFICE FOR A

12:54PM  10  CONVICTION IN THE CASE AND SOMEHOW WE NEEDED TO IMPART THAT.

12:54PM  11         THIS IS BOTH OF YOUR EFFORTS TO INFORM THE JURY OF THAT, I

12:54PM  12  THINK.

12:55PM  13         MR. LEACH:  THAT'S CORRECT, YOUR HONOR.

12:55PM  14         MR. LEMENS:  YES, YOUR HONOR.

12:55PM  15         THE COURT:  RIGHT.

12:55PM  16      SO LET ME JUST SAY, MR. LEMENS, LINES 7 THROUGH 9 I DON'T

12:55PM  17  THINK WERE NECESSARY.  AND LINE 4, THE END OF LINE 4, GIVING

12:55PM  18  THEM KNOWLEDGE, THE JURY KNOWLEDGE ABOUT FINAL DETERMINATION,

12:55PM  19  I'M NOT SURE THAT'S NECESSARY TO ACCOMPLISH WHAT WE NEED TO DO.

12:55PM  20         MR. LEMENS:  AND THAT WOULD CONTINUE THROUGH TO THE

12:55PM  21  END OF LINE 6?

12:55PM  22         THE COURT:  THAT'S CORRECT.  THAT'S CORRECT.

12:55PM  23         MR. LEMENS:  SO THE COURT WOULD BE INCLINED TO GIVE

12:55PM  24  LINES 10 THROUGH 13?

12:55PM  25         THE COURT:  WELL, I'M TELLING YOU MY INITIAL --

8775

| | | |
|---|---|---|
| 12:55PM | 1 | MR. LEMENS:  OKAY. |
| 12:55PM | 2 | THE COURT:  JUST MY INITIAL SANITATION, I'LL CALL IT |
| 12:55PM | 3 | HERE, JUST GOING THROUGH THESE. |
| 12:55PM | 4 | MR. LEMENS:  IF I MIGHT JUST RESPOND TO THOSE TWO |
| 12:55PM | 5 | SPECIFICALLY? |
| 12:55PM | 6 | THE COURT:  YES, PLEASE. |
| 12:56PM | 7 | MR. LEMENS:  AND THEN WE CAN CONTINUE. |
| 12:56PM | 8 | I THINK LINES 7 THROUGH 9 WERE RESPONSIVE TO COMMENTS THAT |
| 12:56PM | 9 | WE HEARD FROM THE COURT REGARDING NEGLIGENCE, CONCERN ABOUT A |
| 12:56PM | 10 | NEGLIGENCE STANDARD. |
| 12:56PM | 11 | THE COURT:  RIGHT. |
| 12:56PM | 12 | MR. LEMENS:  AND I THINK OUR POSITION IS THAT IT IS |
| 12:56PM | 13 | APPROPRIATE AND NECESSARY. |
| 12:56PM | 14 | AT LINES 4 THROUGH 6, I THINK MR. LEACH AND I ARE GOING TO |
| 12:56PM | 15 | TUMBLE INTO A DISCUSSION ABOUT WHAT THE RECORD SHOWS SHORTLY, |
| 12:56PM | 16 | BUT OUR POSITION IS THAT THERE HASN'T BEEN EVIDENCE OF A |
| 12:56PM | 17 | REGULATORY VIOLATION IN THE CASE AND THE JURY SHOULD BE |
| 12:56PM | 18 | INSTRUCTED NOT AS TO ACTUAL VIOLATIONS, BUT ALLEGED VIOLATIONS |
| 12:56PM | 19 | OR EVIDENCE OF REGULATIONS GENERALLY.  THAT IS THE POSITION |
| 12:56PM | 20 | ANIMATING LINES 4 THROUGH 6. |
| 12:56PM | 21 | SO WE WOULD PRESERVE OUR POSITIONS THERE. |
| 12:56PM | 22 | THE COURT:  OKAY.  WELL, LET ME ASK YOU TO CRITIQUE, |
| 12:57PM | 23 | MR. LEMENS, THE GOVERNMENT'S VERSION FOUND ON ECF 42, PAGE 41 |
| 12:57PM | 24 | OF THE DOCUMENT, "YOU'VE HEARD REFERENCE AT TIMES DURING THE |
| 12:57PM | 25 | TRIAL TO FEDERAL REGULATIONS ENFORCED BY," AND THEN IT |

8776

12:57PM 1    DESCRIBES CMS AND FDA.  AND THEY THEN INDICATE, "IN AND OF

12:57PM 2    ITSELF, A VIOLATION OF THESE REGULATIONS," ET CETERA, "DOES NOT

12:57PM 3    ESTABLISH A VIOLATION OF CRIMINAL LAW.  HOWEVER, IT MAY BE

12:57PM 4    CONSIDERED."

12:57PM 5        WHAT IS WRONG WITH THAT LANGUAGE?

12:57PM 6            MR. LEMENS:  SO I THINK THERE'S A FEW THINGS.

12:57PM 7        I'LL START WITH THE FIRST SENTENCE.  THERE'S BEEN NO

12:57PM 8    EVIDENCE AS TO FDA REGULATIONS OR VIOLATIONS IN THE CASE.

12:57PM 9        THERE WAS CERTAINLY DISCUSSION OF AN INSPECTION.  THERE

12:57PM 10   WAS NO TESTIMONY AS TO THE RESOLUTION OF THAT INSPECTION, ANY

12:57PM 11   FINDINGS RESULTING FROM THAT INSPECTION.

12:57PM 12       CERTAINLY WE HAD THAT BACK AND FORTH PRETRIAL AS TO

12:57PM 13   VARIOUS ASPECTS OF THE FDA AND ITS ACTIVITIES WITH RESPECT TO

12:58PM 14   THERANOS, BUT THAT DID NOT COME INTO THE RECORD IN THE CASE.

12:58PM 15       SO I THINK THE FDA AND THE REFERENCE TO THE FDA IS

12:58PM 16   INAPPROPRIATE HERE.

12:58PM 17           THE COURT:  WELL, IT SAYS "REGULATIONS ENFORCED."

12:58PM 18       THE VIOLATIONS COME IN THE SECOND SENTENCE I THINK.

12:58PM 19           MR. LEMENS:  RIGHT.  AND I'M NOT AWARE OF EVEN ANY

12:58PM 20   DISCUSSION OF REGULATIONS RELATED TO THE FDA.  THAT WOULD NOT

12:58PM 21   BE APPROPRIATE.

12:58PM 22       AS TO THE SECOND SENTENCE, IT PRESUMES A VIOLATION.  I

12:58PM 23   THINK AT THE VERY LEAST, THE REFERENCE SHOULD BE TO "IN AND OF

12:58PM 24   ITSELF AN ALLEGED VIOLATION OF THESE REGULATIONS" FOR THE SAME

12:58PM 25   REASONS THAT I JUST EXPLAINED.

8777

```
12:58PM   1          AND THEN IN THE THIRD SENTENCE, I THINK THE COURT HAD

12:58PM   2    EXPRESSED SOME CONCERN WITH THE JURY CONSIDERING THIS EVIDENCE.

12:59PM   3          THE FINAL SENTENCE OF WHAT THE GOVERNMENT HAS PROPOSED,

12:59PM   4    STARTING WITH LINE 6 AND CONTINUING THROUGH LINE 8, IN OUR

12:59PM   5    READING SUGGESTS THAT THE JURY CONSIDER THAT EVIDENCE, AND IT

12:59PM   6    SUGGESTS THE JURY CONSIDER THAT EVIDENCE IN CONNECTION WITH

12:59PM   7    EACH ELEMENT OF THE OFFENSE, AS OPPOSED TO SIMPLY FOR

12:59PM   8    MS. HOLMES'S NOTICE, WHICH IS THE LIMITED PURPOSE THAT THE

12:59PM   9    REGULATORY -- THE CMS REPORT AND OTHER TESTIMONY SURROUNDING

12:59PM  10    THAT REPORT CAME IN IN THE CASE.

12:59PM  11          SO I THINK THERE ARE SEVERAL ISSUES WITH WHAT THE

12:59PM  12    GOVERNMENT HAS PROPOSED.

12:59PM  13          I WILL NOTE ALSO FOR THE RECORD THAT THE GOVERNMENT CITED

12:59PM  14    TO THE HUSSAIN AND THE REYES CASE.

12:59PM  15          WE THINK THE RELIANCE THERE IS MISPLACED.  BOTH OF THOSE

12:59PM  16    HAD TO DO WITH ACCOUNTING STANDARDS IN WHICH THE ACCOUNTING

12:59PM  17    STANDARD, REVENUE RECOGNITION, BACKDATING OPTIONS WAS CENTRAL

12:59PM  18    TO THE STATEMENTS OR THE MISREPRESENTATIONS AT ISSUE.

01:00PM  19          THAT IS NOT THE CASE HERE.

01:00PM  20          SECOND, IN THE REYES CASE IN PARTICULAR, THE REGULATORY

01:00PM  21    VIOLATION WAS UNDISPUTED, AND THAT'S REFLECTED IN -- IT'S

01:00PM  22    REFLECTED IN THE CASE.  I CAN HAND IT UP TO THE COURT.

01:00PM  23          I JUST THINK THAT THIS IS A VERY DIFFERENT SITUATION WHERE

01:00PM  24    THERE'S BEEN NO ESTABLISHED VIOLATION OF A REGULATION, AND THE

01:00PM  25    JURY SHOULD NOT BE INSTRUCTED AS SUCH.
```

01:00PM  1          THE COURT:  OKAY.  THANK YOU.

01:00PM  2       MR. LEACH?

01:00PM  3          MR. LEACH:  I'LL GO IN REVERSE ORDER, YOUR HONOR,

01:00PM  4    WITH THE GOVERNMENT'S INSTRUCTION, WHICH I THINK GETS IT

01:00PM  5    EXACTLY RIGHT AND IS TRIED AND TRUE FROM OTHER CASES IN THIS

01:00PM  6    DISTRICT.

01:00PM  7       YES, HUSSAIN AND REYES INVOLVED ACCOUNTING VIOLATIONS, AND

01:00PM  8    IN REYES VIOLATIONS OF SOME OF THE SECURITIES LAWS, BUT THE

01:00PM  9    OVERALL PRINCIPLE IS THE SAME.  YOU'VE HEARD EVIDENCE THAT

01:00PM  10   SOMETHING OTHER THAN THE PARTICULAR STATUTE THAT IS AT ISSUE

01:00PM  11   MAY OR MAY HAVE NOT HAVE BEEN VIOLATED; THEY'RE NOT ON TRIAL

01:01PM  12   FOR THOSE OFFENSES; THEY'RE NOT ON TRIAL FOR THOSE GAAP

01:01PM  13   VIOLATIONS; THEY'RE ON TRIAL FOR WIRE FRAUD AND CONSPIRACY, AND

01:01PM  14   YOU SHOULD CONSIDER THAT EVIDENCE IN CONNECTION WITH THE

01:01PM  15   ELEMENTS THAT YOU'RE BEING ASKED TO CONSIDER HERE.

01:01PM  16      SO I THINK THIS INSTRUCTION GETS IT EXACTLY RIGHT.

01:01PM  17      I'M FINE WITH ADDING "AN ALLEGED" BEGINNING AT LINE 5.  WE

01:01PM  18   DON'T MEAN TO SUGGEST A VIOLATION ACTUALLY OCCURRED.

01:01PM  19      I DO THINK THERE HAS BEEN TESTIMONY ABOUT FDA REGULATIONS.

01:01PM  20   MS. HOLMES TESTIFIED THAT THEY STOPPED USING THE NANOTAINER IN

01:01PM  21   RESPONSE TO COMMENTS DURING THE FDA INSPECTION.

01:01PM  22      THERE'S ALSO BEEN TESTIMONY ABOUT SUBMISSIONS, EITHER

01:01PM  23   PRESUBMISSIONS OR 510K SUBMISSIONS.

01:01PM  24      SO I DO THINK THERE'S BEEN SOME REFERENCE TO THOSE FEDERAL

01:01PM  25   REGULATIONS AND I THINK THIS WOULD AID THE JURY.

```
01:01PM  1        SO WHAT I THINK THE CONCEPT THAT THE COURT WANTS TO

01:01PM  2    EXPRESS, AND I THINK IT'S A FAIR CONCEPT TO EXPRESS, IS THAT

01:02PM  3    YOU'VE HEARD EVIDENCE ABOUT A REGULATORY SCHEME AND POTENTIAL

01:02PM  4    VIOLATIONS.  THEY'RE NOT ON TRIAL FOR THOSE OFFENSES.  YOU CAN

01:02PM  5    CONSIDER THAT EVIDENCE LIKE YOU CAN CONSIDER ALL OF THE

01:02PM  6    EVIDENCE IN THIS CASE IN LIGHT OF THE ELEMENTS THAT THE

01:02PM  7    GOVERNMENT IS REQUIRED TO PROVE.  BUT IN AND OF ITSELF, AN

01:02PM  8    ALLEGED VIOLATION OF THOSE REGULATIONS IS NOT WHAT YOU'RE BEING

01:02PM  9    ASKED TO DECIDE HERE.

01:02PM  10       SO WE THINK THAT'S CAPTURED IN THE GOVERNMENT PROPOSAL.

01:02PM  11   IT'S BEEN TRIED AND TRUE IN OTHER SIMILAR CIRCUMSTANCES, AND WE

01:02PM  12   URGE THE COURT TO ADOPT IT.

01:02PM  13       WITH RESPECT TO PAGE 41, WE HAVE NO PROBLEM WITH THE FIRST

01:02PM  14   LINE, "YOU HAVE HEARD EVIDENCE REGARDING ALLEGED VIOLATIONS OF

01:02PM  15   REGULATIONS AND INDUSTRY STANDARDS."  I THINK THAT'S

01:02PM  16   UNOBJECTIONABLE.

01:02PM  17       THE NEXT TWO LINES ARE ACTUALLY FACTUAL ASSERTIONS.  "YOU

01:02PM  18   SHOULD KNOW THERE'S BEEN NO FINAL DETERMINATION," I MEAN,

01:03PM  19   THAT'S A STATEMENT OF FACT, NOT A STATEMENT OF THE LAW THAT IS

01:03PM  20   GOVERNING HERE, AND SO I DON'T THINK IT WOULD BE APPROPRIATE TO

01:03PM  21   INSTRUCT THE JURY ON WHAT HAPPENED OR DIDN'T HAPPEN AFTER THIS

01:03PM  22   CASE.

01:03PM  23       "MANY OF THE ALLEGED VIOLATIONS WERE DISPUTED."  AGAIN,

01:03PM  24   THAT'S A FACTUAL MATTER.  IF MS. HOLMES WANTED TO ELICIT

01:03PM  25   TESTIMONY ON THAT, SHE WAS FREE TO DO SO.  I THINK SHE CHOSE
```

01:03PM  1    NOT TO BECAUSE SHE WANTS TO USE THE CMS REPORT AND ITS FINDINGS

01:03PM  2    NOW AS THE EPIPHANY MOMENT FOR BREAKING OFF THE RELATIONSHIP

01:03PM  3    WITH MR. BALWANI.

01:03PM  4        THE -- WE AGREE THAT PARAGRAPHS -- OR LINES 7 THROUGH 9

01:03PM  5    ARE OBJECTIONABLE.  I THINK INJECTING DIFFERENT BURDENS OF

01:03PM  6    PROOF AND NOTING THAT INDUSTRY STANDARDS DON'T CARRY THE FORCE

01:03PM  7    OF LAW WILL JUST INJECT CONFUSION.

01:03PM  8        AND THEN WITH RESPECT TO 10 AND 13, I THINK THE CONCEPT

01:03PM  9    THERE IS VERY SIMILAR TO WHAT WE'RE TRYING TO GET AT IN OUR

01:04PM 10    INSTRUCTION.  I OBJECT TO STARTING AN INSTRUCTION BY SAYING

01:04PM 11    "MS. HOLMES IS NOT GUILTY OF ANY OF THE OFFENSES."  I THINK

01:04PM 12    THAT'S ARGUMENT.

01:04PM 13        BUT IF THE IDEA IS, YOU'VE HEARD EVIDENCE OF REGULATORY

01:04PM 14    VIOLATIONS, SHE'S NOT ON TRIAL FOR THOSE REGULATIONS, THE POINT

01:04PM 15    OF THIS EVIDENCE IS TO CONSIDER -- YOU MAY CONSIDER THIS

01:04PM 16    EVIDENCE IN THE CONTEXT OF THE ELEMENTS THAT THE GOVERNMENT

01:04PM 17    NEEDS TO PROVE FOR WIRE FRAUD AND CONSPIRACY, I THINK THIS IS

01:04PM 18    GETTING AT SOMETHING SIMILAR TO WHAT WE TRIED TO GET AT WITH

01:04PM 19    OUR LANGUAGE.

01:04PM 20        SO FOR THOSE REASONS I THINK OUR INSTRUCTION IS BETTER AND

01:04PM 21    MORE APPROPRIATE, AND I THINK THE COURT HAS IDENTIFIED ASPECTS

01:04PM 22    ON PAGE 41 THAT ARE PARTICULARLY OBJECTIONABLE TO THE

01:04PM 23    GOVERNMENT.

01:04PM 24            THE COURT:  ALL RIGHT.  THANK YOU.

01:04PM 25        SO, MR. LEACH, IF WE USED LINE 4 FROM PAGE 40, THAT IS

8781

01:04PM  1    MS. HOLMES'S -- "YOU HAVE HEARD EVIDENCE REGARDING ALLEGED

01:04PM  2    VIOLATIONS OF REGULATIONS AND INDUSTRY STANDARDS," AND THEN

01:05PM  3    WENT DOWN TO LINE 10, AGAIN OF MS. HOLMES, "MS. HOLMES IS NOT

01:05PM  4    GUILTY OF ANY OF THE OFFENSES ALLEGED," AND THEN READ THROUGH

01:05PM  5    13, AND THEN ADD YOUR LINE 6, "HOWEVER, EVIDENCE OF SUCH

01:05PM  6    REGULATORY VIOLATIONS MAY BE CONSIDERED, ALONG WITH OTHER

01:05PM  7    EVIDENCE IN LIGHT OF," AND THE SPECIFIC ELEMENTS, I WONDER

01:05PM  8    IF -- I'M NOT SURE THAT SPECIFIC ELEMENTS DESCRIBES

01:05PM  9    SUFFICIENTLY.

01:05PM  10        I THINK I UNDERSTAND WHAT YOU MEAN.  I'M NOT SURE A JURY

01:05PM  11    WOULD CAPTURE THAT AS EASILY.

01:05PM  12        WHAT I'M SAYING IS TO PUT THOSE TWO IN AND ADD YOUR --

01:05PM  13    THIS LAST LINE AS THE FINAL.

01:05PM  14            MR. LEACH:  THAT WOULD BE -- THAT WOULD BE FINE,

01:05PM  15    YOUR HONOR, AND I'M HAPPY TO WORK WITH THE DEFENSE TO TRY TO

01:06PM  16    CONNECT THOSE TWO.

01:06PM  17            THE COURT:  AND IT MAY BE SPECIFIC ELEMENTS IS THE

01:06PM  18    ONLY WAY TO PROPERLY GUIDE THE JURY AS TO WHAT NEEDS TO BE

01:06PM  19    PROVED FOR EACH COUNT.

01:06PM  20            MR. LEACH:  YOU CAN EVEN JUST SAY, "IN CONNECTION

01:06PM  21    WITH" -- OR "IN ASSESSING WHETHER THE GOVERNMENT HAS PROVED

01:06PM  22    EACH OF THE COUNTS CHARGED IN THE INDICTMENT."

01:06PM  23            THE COURT:  SHOULD I LET YOU WORDSMITH THAT A BIT?

01:06PM  24            MR. LEACH:  I'M SURE I COULD DO IT A LITTLE BIT

01:06PM  25    BETTER THAN ON THE FLY.

01:06PM 1    MR. LEMENS:  I IMAGINE WE'LL HAVE SOME THOUGHTS AS

01:06PM 2    WELL, AND I'LL OF COURSE NEED TO CONSULT WITH MY COLLEAGUES.

01:06PM 3         THE COURT:  WITH YOUR TEAM, SURE.

01:06PM 4         MR. LEMENS:  I THINK I'D JUST NOTE, I THINK THERE'S

01:06PM 5    STILL THE CONCERN THAT THE SUGGESTION THAT THAT EVIDENCE HAS

01:06PM 6    COME IN IN THE CASE FOR ANYTHING OTHER THAN MS. HOLMES'S NOTICE

01:06PM 7    IS, OF COURSE, OF CONCERN TO THE DEFENSE.

01:06PM 8         THE COURT:  RIGHT.  AND I THINK I INSTRUCTED THE

01:07PM 9    JURY OF THAT, I INFORMED THEM AT THE TIME THAT SOME EVIDENCE

01:07PM 10   CAME IN, THAT IT WENT TO HER STATE OF MIND.  I THINK THAT WAS

01:07PM 11   THE OBJECTION IF I'M NOT MISTAKEN.

01:07PM 12        MR. LEMENS:  THAT WAS OUR UNDERSTANDING AS WELL.

01:07PM 13   I THINK THE GOVERNMENT IS NOW TAKING A DIFFERENT -- A

01:07PM 14   SLIGHTLY DIFFERENT POSITION, WHICH KIND OF TUMBLES US INTO

01:07PM 15   NUMBER 31, SO PERHAPS MR. LEACH AND I CAN TAKE NUMBER 30 AND

01:07PM 16   SEE WHAT WE CAN DO AND WHERE OUR RESPECTIVE POSITIONS ARE.  BUT

01:07PM 17   I DON'T KNOW IF THERE'S ANYTHING MORE WE CAN ACCOMPLISH THERE

01:07PM 18   RIGHT NOW.

01:07PM 19        THE COURT:  OKAY.  AND 31, THIS CMS REPORT, I'M

01:07PM 20   NOT -- I JUST DON'T KNOW ABOUT FOCUSSING THE JURY AS TO A

01:07PM 21   SPECIFIC EXHIBIT.  IT JUST SEEMS LIKE THIS IS ARGUMENT AND IT

01:07PM 22   DOESN'T BELONG IN AN INSTRUCTION.  THAT'S JUST MY VIEW OF IT.

01:07PM 23        MR. LEMENS:  SO I THINK IT'S, TO THE GOVERNMENT, AN

01:07PM 24   IMPORTANT DOCUMENT IN THE CASE.  IT CAME IN THROUGH ONE OF

01:07PM 25   THEIR KEY WITNESSES WHO WAS HIGHLIGHTED IN OPENING AND WHO I

01:07PM 1    EXPECT WE'LL HEAR MUCH ABOUT IN CLOSING ARGUMENT.  WE PROPOSED

01:08PM 2    IT FOR THAT REASON.

01:08PM 3        THE GOVERNMENT HAS TAKEN THE POSITION THAT 4621A CAME IN

01:08PM 4    FOR ITS TRUTH.

01:08PM 5        WE THINK THE RECORD AS A WHOLE STRONGLY SUGGESTS THAT IS

01:08PM 6    NOT THE CASE, AND I'M HAPPY TO WALK THE COURT THROUGH THAT

01:08PM 7    RECORD.

01:08PM 8        BUT OUR UNDERSTANDING IS THAT ALL OF 4621, THE PORTIONS OF

01:08PM 9    THAT WHICH WERE ADMITTED, WHICH ARE A AND B, WERE ADMITTED FOR

01:08PM 10   NOTICE PURPOSES, AND THAT WAS NOTICE TO MS. HOLMES, AND FOR A

01:08PM 11   LIMITED PURPOSE.

01:08PM 12       WE THINK IT WOULD BE NECESSARY AND APPROPRIATE TO INSTRUCT

01:08PM 13   THE JURY AS TO THAT GIVEN WHAT THE -- WE EXPECT THE GOVERNMENT

01:08PM 14   VIEWS AS THE IMPORTANCE OF THIS DOCUMENT.

01:08PM 15       BUT AT THE VERY LEAST, TO CLEAR UP THE RECORD AS WE

01:08PM 16   PREPARE FOR CLOSING ARGUMENTS, WE SHOULD GET CERTAINTY ON HOW

01:08PM 17   THOSE EXHIBITS CAME IN AND FOR WHAT PURPOSE.

01:08PM 18            THE COURT:  MS. VOLKAR?

01:08PM 19            MS. VOLKAR:  HI, YOUR HONOR.  I'LL BE ADDRESSING

01:09PM 20   THIS ONE.

01:09PM 21       SO THERE ARE TWO ISSUES:  ONE, WHETHER OR NOT THERE SHOULD

01:09PM 22   BE AN INSTRUCTION SINGLING OUT A PIECE OF EVIDENCE.

01:09PM 23       THE GOVERNMENT'S POSITION ALIGNS WITH THAT OF THE COURT,

01:09PM 24   WHICH IS THERE SHOULD NOT BE AN INSTRUCTION FOCUSSED ON ONE

01:09PM 25   PIECE OF EVIDENCE.

01:09PM 1      THERE HAVE BEEN A MULTITUDE OF EXHIBITS THAT HAVE COME IN

01:09PM 2   IN THIS CASE FOR A LIMITED PURPOSE.  OFF THE TOP OF MY HEAD I

01:09PM 3   CAN THINK OF A LOT OF 2016 AND 2017 MATERIALS, THE AACC

01:09PM 4   CONFERENCE MATERIALS, THE DOCUMENTS THAT DEFENDANT SUBMITTED

01:09PM 5   FOR PEER REVIEW, AND I CAN THINK OF A DOZEN EXHIBITS THAT THE

01:09PM 6   DEFENSE SUBMITTED THAT I THINK IS GOING TO BE CORE TO THEIR

01:09PM 7   CASE OF WHY SHE STILL BELIEVED IN THE TECHNOLOGY IN LATER TIME

01:09PM 8   PERIODS.  THOSE EXHIBITS CAME IN FOR THE LIMITED PURPOSE OF HER

01:09PM 9   STATE OF MIND.

01:09PM 10      BUT I DO AGREE WITH MR. LEMENS THAT THERE IS ALSO A

01:09PM 11   FACTUAL DISPUTE, OR A DISPUTE ABOUT THE RECORD, AND IN THAT

01:09PM 12   REGARD I'D ACTUALLY LIKE TO HAND UP, IF I COULD, YOUR HONOR,

01:09PM 13   JUST A COUPLE OF PAGES OF TRANSCRIPT.

01:09PM 14         THE COURT:  SURE.

01:10PM 15         MS. VOLKAR:  (HANDING.)

01:10PM 16      SO FIRST AND FOREMOST, THE REASON WHY THERE IS A TRIAL

01:10PM 17   EXHIBIT 4621A AND 4621B IS BECAUSE THE FIRST, THE COVER LETTER,

01:10PM 18   CAME IN ENTIRELY WITHOUT LIMITATION, AND THAT'S THE PORTION OF

01:10PM 19   THE TRANSCRIPT THAT I JUST HANDED TO YOUR HONOR.

01:10PM 20      AND 4621B CAME IN FOR A LIMITED PURPOSE BECAUSE COUNSEL

01:10PM 21   OBJECTED IN THE MOMENT, THE COURT INQUIRED OF THE GOVERNMENT

01:10PM 22   WHAT THE PURPOSE WAS, AND IN THE MOMENT THE GOVERNMENT AGREED

01:10PM 23   TO SEEK ADMISSION ONLY FOR A LIMITED PURPOSE.

01:10PM 24      THE GOVERNMENT'S POSITION HAS ALWAYS BEEN, AND REMAINS TO

01:10PM 25   THIS DAY, THAT THE CMS REPORT IS ADMISSIBLE IN ITS ENTIRETY.

8785

01:10PM  1          THE FIRST TIME AROUND WHEN WE ARGUED THIS SEVERAL MONTHS

01:10PM  2     AGO, THE COURT AGREED WITH THE GOVERNMENT AND GRANTED WHOLESALE

01:10PM  3     ADMISSION OF THE CMS REPORT, OF COURSE, IN ECF 798 AT PAGES 16

01:11PM  4     TO 20.

01:11PM  5          THE DEFENSE HAS SINCE SUBMITTED FOUR MOTIONS TO

01:11PM  6     RECONSIDER.  THEY'VE NAMED THEM DIFFERENT THINGS.  THEY CALL IT

01:11PM  7     WHATEVER -- THEY CALL IT DIFFERENT TOPICS.  BUT THEY HAVE BEEN

01:11PM  8     ASKING THE COURT REPEATEDLY, OVER AND OVER AND OVER AGAIN, TO

01:11PM  9     RECONSIDER THAT INITIAL ORDER, WHICH IN THE GOVERNMENT'S VIEW

01:11PM  10    WAS ENTIRELY PROPER.  THE CMS REPORT IS ADMISSIBLE IN ITS

01:11PM  11    ENTIRETY.

01:11PM  12         AND I DON'T WANT TO REHASH ALL OF THOSE ARGUMENTS HERE.

01:11PM  13         BUT THEN I WANT TO FAST FORWARD TO THE NOVEMBER 9TH DAY.

01:11PM  14         NOW, ON NOVEMBER 9TH WHEN THIS WAS DISCUSSED YET AGAIN

01:11PM  15    AMONG THE PARTIES AND THE COURT, THE GOVERNMENT PUT FORWARD

01:11PM  16    THAT TO -- THE GOVERNMENT PUT FORWARD AS AN ALTERNATIVE, YET

01:11PM  17    ANOTHER ALTERNATIVE IN ADDITION TO ITS OTHER ARGUMENTS, THAT AT

01:11PM  18    THE VERY LEAST THE ENTIRETY OF THE DOCUMENT COULD COME IN FOR

01:11PM  19    HER STATE OF MIND SO THAT THE PARTIES, THE GOVERNMENT, AND THE

01:11PM  20    COURT DIDN'T HAVE TO SPEND TIME NIT-PICKING LINE BY LINE ALL OF

01:12PM  21    THE DIFFERENT REDACTIONS THAT THE DEFENSE WAS SUGGESTING.

01:12PM  22         THERE WAS NO RESOLUTION AT THE END OF THAT DISCUSSION.

01:12PM  23    THEY HAVE CITED THE PORTIONS OF THE RECORD.  I'VE READ THEM.

01:12PM  24    THERE'S NO RESOLUTION.

01:12PM  25         THEN IN THE MOMENT, WHEN DR. DAS WAS TESTIFYING -- AND

01:12PM 1    THIS IS WHERE I POINT YOUR HONOR SPECIFICALLY TO 5802 THAT I

01:12PM 2    HANDED UP, LINES 5 THROUGH 13 -- THE GOVERNMENT SOUGHT TO ADMIT

01:12PM 3    PAGES 1 THROUGH 4, WHICH IS THE COVER LETTER.

01:12PM 4        THE COURT SAID, "I DO THINK AN APPROPRIATE FOUNDATION HAS

01:12PM 5    BEEN LAID," OVERRULING THE OBJECTIONS THAT WERE MADE EARLIER,

01:12PM 6    "THIS WILL BE ADMITTED OVER OBJECTION."

01:12PM 7        AND THEN IT SAYS THE GOVERNMENT'S EXHIBIT WAS ADMITTED AND

01:12PM 8    RECEIVED INTO EVIDENCE.

01:12PM 9        AND THEN THE PARTIES -- AND THEN MR. LEACH AND THE WITNESS

01:12PM 10   CONTINUED TO DISCUSS THE LETTER.

01:12PM 11       THAT WAS THE ADMISSION OF 4621A.

01:12PM 12       THERE'S NO INSTRUCTION FROM THE COURT HERE TO THE JURY

01:12PM 13   THAT THIS IS FOR A LIMITED PURPOSE.  THERE'S NO INSTRUCTION AT

01:13PM 14   THIS POINT IN TIME.

01:13PM 15       THERE WAS NO CLARIFICATION FROM DEFENSE COUNSEL WHAT WAS

01:13PM 16   THE PURPOSE FOR THIS.  THAT COMES LATER.

01:13PM 17       LATER, 10, 15 MINUTES LATER, MR. LEACH SOUGHT TO INTRODUCE

01:13PM 18   A NARROWED DOWN PORTION OF THE CMS REPORT.  IN THE MOMENT

01:13PM 19   DEFENSE COUNSEL ASKED WHAT THE PURPOSE WAS.

01:13PM 20       AND FOR, TO BE FRANK, THE ORDERLY PROGRESSION, AND TO NOT

01:13PM 21   RELITIGATE THE ISSUE FOR THE FIFTH TIME IN FRONT OF THE JURY,

01:13PM 22   THE GOVERNMENT OFFERED IT FOR A LIMITED PURPOSE OF

01:13PM 23   MS. HOLMES'S -- NOTICE TO MS. HOLMES.

01:13PM 24            THE COURT:  THOSE SPECIFIC PAGES?

01:13PM 25            MS. VOLKAR:  THOSE SPECIFIC PAGES.

8787

01:13PM 1      AND THAT'S WHY, AT THE END OF THE DAY, YOUR HONOR, THOSE

01:13PM 2   SPECIFIC PAGES WERE COLLECTED IN 4621B, AND THEY'RE NOTED IN

01:13PM 3   THE TRIAL LOG, AND ALSO IN THOSE PORTIONS OF THE RECORD.  I

01:13PM 4   APOLOGIZE I DON'T HAVE THOSE, BUT DEFENSE COUNSEL CITED TO

01:13PM 5   THEM.

01:13PM 6      YOUR HONOR TURNED TO THE JURY AND INSTRUCTED THEM, AS YOU

01:13PM 7   DO WHENEVER EVIDENCE IS ADMITTED FOR A LIMITED PURPOSE, THAT

01:13PM 8   THOSE PAGES WERE TO BE ADMITTED FOR THE LIMITED PURPOSE OF

01:14PM 9   NOTICE TO MS. HOLMES.

01:14PM 10      THE RECORD IS AS CLEAR AS DAY.  THE REASON THAT THERE ARE

01:14PM 11   TWO EXHIBITS CURRENTLY IN THE FORM THAT IS GOING TO GO BACK TO

01:14PM 12   THE JURY IS BECAUSE ONE WAS ADMITTED WHOLESALE AND ONE WAS

01:14PM 13   ADMITTED FOR A LIMITED PURPOSE.

01:14PM 14      NOW, WHY THIS IS SURPRISING TO THE GOVERNMENT TO HEAR

01:14PM 15   ABOUT THIS ESSENTIALLY FOR THE FIRST TIME IN THE LAST WEEK IS

01:14PM 16   THERE HAVE BEEN MULTIPLE TIMES THROUGHOUT THIS TRIAL -- YOUR

01:14PM 17   HONOR IS FAMILIAR -- WHEN EITHER SIDE SEEKS TO CLARIFY, WHAT IS

01:14PM 18   THE STATE OF THE DOCUMENT?  OR WAS THIS PARTIALLY ADMITTED?  OR

01:14PM 19   WHAT WAS THE PURPOSE AT THE END OF THE DAY, OR EVEN THE NEXT

01:14PM 20   DAY AFTER READING THE TRANSCRIPT, OR EVEN A WEEK LATER

01:14PM 21   OCCASIONALLY.

01:14PM 22      WE ARE HEARING ABOUT THIS NOW WHEN EVIDENCE HAS CLOSED.

01:14PM 23   EVIDENCE HAS CLOSED, AND THE DEFENSE IS TRYING TO RETROACTIVELY

01:14PM 24   CHANGE THE RECORD AND TO GIVE AN INSTRUCTION TO THE JURY

01:14PM 25   TELLING IT FOR THE FIRST TIME THAT THEY MUST CONSIDER 4621A FOR

8788

01:15PM 1    A LIMITED PURPOSE.

01:15PM 2        THIS IS A GOOD JURY.  THEY'VE BEEN TAKING NOTES.  WHEN

01:15PM 3    YOUR HONOR SAYS THAT SOMETHING IS ADMITTED FOR A LIMITED

01:15PM 4    PURPOSE, THEY TAKE NOTES.  THEY SCRIBBLE DOWN.  THEY WRITE NEXT

01:15PM 5    TO IT THAT THAT'S WHAT IT IS FOR.

01:15PM 6        THEY WON'T HAVE THAT IN THEIR NOTES FOR PAGES 1 THROUGH 4

01:15PM 7    IN THE CMS LETTER.

01:15PM 8        SO WE THINK THAT THE RECORD IS ABSOLUTELY CLEAR.  THESE

01:15PM 9    PAGES SHOW IT.  THERE'S BEEN PLENTY OF ARGUMENT ABOUT THE CMS

01:15PM 10   REPORT.  THE GOVERNMENT'S POSITION HASN'T CHANGED.

01:15PM 11       BUT THE KEY HERE IS, WHAT IS THE STATE OF THE EVIDENCE?

01:15PM 12       AND I DO THINK IT MATTERS FOR THE PARTIES TO HAVE CLARITY

01:15PM 13   ON THIS GOING INTO CLOSING ARGUMENT.

01:15PM 14       DESPITE MY DISCUSSION ABOUT THE STATE OF THE RECORD, OF

01:15PM 15   COURSE THIS INSTRUCTION SHOULD NOT BE GIVEN, OR IF THERE'S SOME

01:15PM 16   KIND OF INSTRUCTION, IT SHOULD APPLY TO ALL OF THE EVIDENCE IN

01:15PM 17   THE CASE THAT HAS COME IN FOR A LIMITED PURPOSE.

01:15PM 18           THE COURT:  THANK YOU.

01:15PM 19           MR. LEMENS:  YES, IF YOU LOOK AT THESE TWO PAGES,

01:15PM 20   MS. VOLKAR HAS EXPLAINED WHAT HAPPENED IN THE COURTROOM.

01:15PM 21       SHE IGNORES THE LONGER CONTEXT OF THIS REPORT, WHICH

01:15PM 22   STARTED BACK WHEN WE STARTED LITIGATING THIS ISSUE AT THE

01:15PM 23   MOTIONS IN LIMINE STAGE, AT WHICH POINT THIS DOCUMENT WAS

01:16PM 24   LITIGATED TOGETHER, BOTH THE COVER LETTER AND ITS ATTACHMENT.

01:16PM 25           THE COURT:  WHAT ABOUT THE EVIDENCE THAT WAS

01:16PM 1    ACTUALLY ADMITTED TO THE JURY AND FOR THAT LIMITED PURPOSE,

01:16PM 2    THEY HAVE IT?  ARE YOU SEEKING NOW TO CHANGE THAT?

01:16PM 3              MR. LEMENS:  NO.  I THINK THE RECORD AS A WHOLE

01:16PM 4    REFLECTS THAT EVERYONE UNDERSTOOD AT THE TIME THAT THAT

01:16PM 5    EVIDENCE CAME IN FOR A LIMITED PURPOSE, AND IF YOUR HONOR

01:16PM 6    PERHAPS WOULD BEAR WITH ME JUST TO KIND OF EXPLAIN THE BEFORE

01:16PM 7    AND AFTER OF THIS SHORT PORTION SHE SHOWED YOU.

01:16PM 8         PRIOR TO THE TRIAL THE COURT MADE CLEAR -- AND THIS IS AT

01:16PM 9    DOCKET 989 AT 7 -- THAT IT WOULD TREAT THE COVER LETTER AND THE

01:16PM 10   LETTER TOGETHER.  THE ATTACHMENT IS A REPORT.  THE COVER LETTER

01:16PM 11   SUMMARIZES THE FINDINGS IN THAT REPORT.  THERE'S REALLY NO WAY

01:16PM 12   TO DISTINGUISH THE TWO AS SEPARATE.  BOTH SPEAK OF FINDINGS

01:16PM 13   FROM CMS.  BOTH SPEAK TO THE SAME EVENT.  THE REPORT -- THE

01:16PM 14   COVER LETTER SIMPLY SUMMARIZES WHAT IS CONTAINED THEREIN.

01:16PM 15        PRIOR TO THE TRIAL, WE MOVED TO EXCLUDE THE REPORT.  THE

01:17PM 16   GOVERNMENT'S EXPLANATION AT THAT TIME WAS THAT THERE IS NO

01:17PM 17   UNFAIR PREJUDICE BECAUSE THE DEFENSE WILL BE ABLE TO

01:17PM 18   CROSS-EXAMINE A CMS WITNESS, EITHER MS. BENNETT OR

01:17PM 19   MR. YAMAMOTO, AND THAT WILL THUS ELIMINATE THE 403 CONCERNS AND

01:17PM 20   THE LITANY OF CONCERNS THAT WE RAISED.

01:17PM 21        THE MORNING, SEVERAL DAYS BEFORE AND THEN THE MORNING OF,

01:17PM 22   THE GOVERNMENT TOOK THE POSITION THAT IT WOULD ADMIT THE REPORT

01:17PM 23   NOT THROUGH A CMS WITNESS, BUT THROUGH DR. DAS.

01:17PM 24        DR. DAS OBVIOUSLY DID NOT DRAFT THE REPORT.  HE COULD BE

01:17PM 25   CROSS-EXAMINED ABOUT ITS CREATION OR THE CONTEXT IN WHICH IT

01:17PM   1    WAS DRAFTED.

01:17PM   2        AND THE GOVERNMENT'S RESPONSE AT THAT POINT WAS, DON'T

01:17PM   3    WORRY, THIS JUST HAS TO COME IN JUST FOR STATE OF MIND.  IT CAN

01:17PM   4    COME IN FOR A NONHEARSAY PURPOSE.

01:17PM   5        MR. LEACH, AT PAGE 5693 OF THE TRANSCRIPT, "THE ENTIRETY

01:17PM   6    OF THE DOCUMENT IS ADMISSIBLE FOR HER STATE OF MIND FOR A

01:18PM   7    NONHEARSAY PURPOSE."

01:18PM   8        LATER THAT SAME PAGE, "SO I THINK THAT'S AN APPROPRIATE

01:18PM   9    USE OF THE 2567.  HE CAN AUTHENTICATE IT.  HE GOT IT AND IT'S

01:18PM  10    BEING OFFERED HERE FOR A NONHEARSAY PURPOSE."

01:18PM  11        "CERTAINLY WE CAN AUTHENTICATE IT THROUGH SARA BENNETT OR

01:18PM  12    GARY YAMAMOTO OR ANOTHER CMS WITNESS, BUT I DON'T THINK WE HAVE

01:18PM  13    TO FOR THE PURPOSES THAT WE'RE USING IT FOR WITH DR. DAS."

01:18PM  14        THAT WAS THE DISCUSSION THE MORNING IT WAS ADMITTED.

01:18PM  15        WHEN MR. LEACH LAID A FOUNDATION FOR THE REPORT WITH

01:18PM  16    DR. DAS, IT WAS WITH RESPECT TO THE NOTICE OF MS. HOLMES.

01:18PM  17        THE COVER LETTER, THE FIRST FOUR PAGES, WERE FIRST OFFERED

01:18PM  18    AFTER THAT FOUNDATION.

01:18PM  19        MR. WADE OBJECTED, CITING THE MORNING'S DISCUSSION, AND

01:18PM  20    THE COURT ADMITTED THE DOCUMENT OVER THAT OBJECTION.

01:18PM  21        MR. LEACH THEN WENT TO OFFER TWO ADDITIONAL SECTIONS OF

01:18PM  22    THE DOCUMENT.  HE OFFERED THE FIRST FOUR PAGES.  THIS IS AT

01:19PM  23    5809 OF THE TRANSCRIPT.  HE LAID THE SAME FOUNDATION.  MR. WADE

01:19PM  24    MADE THE SAME OBJECTION.  THE COURT OVERRULED THE OBJECTION AND

01:19PM  25    THEN GAVE A LIMITING INSTRUCTION TO THE JURY THAT IT WAS COMING

8791

01:19PM  1      IN FOR MS. HOLMES'S STATE OF MIND.

01:19PM  2          IMPORTANTLY, THE THIRD TIME THAT PORTIONS OF THE DOCUMENT

01:19PM  3      CAME IN -- THIS IS AT 5813 OF THE TRANSCRIPT -- MR. LEACH LAID

01:19PM  4      THE SAME OBJECTION, OR SAME FOUNDATION.

01:19PM  5          MR. WADE MADE THE SAME OBJECTION.

01:19PM  6          AND THE COURT'S COMMENTS -- THIS IS AT 5813, LINES 14 TO

01:19PM  7      15 -- "IT'S NOT FOR THE TRUTH OF THE MATTER.  IS THIS LIKEWISE

01:19PM  8      AS THE PREVIOUS ADMISSIONS?" PLURAL.

01:19PM  9          "MR. LEACH:  YES, YOUR HONOR, FOR STATE OF MIND."

01:19PM  10          WE ALL UNDERSTOOD IN THE MOMENT THAT THE COVER LETTER, THE

01:19PM  11      FIRST ADMISSION AND THE FIRST SET OF PAGES FROM THE REPORT,

01:20PM  12      WERE ADMITTED FOR MS. HOLMES'S STATE OF MIND.  THERE'S NO

01:20PM  13      DISPUTE ABOUT THAT.

01:20PM  14          THE COURT OVERRULED THE OBJECTION AND WE WENT ON.

01:20PM  15          AFTER DR. DAS'S TESTIMONY, AFTER THE GOVERNMENT HAD CLOSED

01:20PM  16      ITS CASE, MR. LOOBY CAME UP AND MADE A MOTION TO STRIKE THE

01:20PM  17      REPORT IN LIGHT OF THE 403 CONCERNS.

01:20PM  18          MR. LEACH MADE THE SAME REPRESENTATION TO THE COURT THAT

01:20PM  19      THE DOCUMENT, BOTH 4621A AND 4621B, WAS ADMISSIBLE BECAUSE IT

01:20PM  20      WAS OFFERED FOR A NONHEARSAY PURPOSE.

01:20PM  21          THAT SHOULD DO IT.  THE GOVERNMENT'S POSITION ON THIS HAS

01:20PM  22      BEEN CLEAR.  OUR UNDERSTANDING ON THIS HAS BEEN CLEAR.  WE'RE

01:20PM  23      NOT TRYING TO REOPEN OR RECREATE OR CREATE MISCHIEF, AS

01:20PM  24      MS. VOLKAR SUGGESTS.

01:20PM  25          AND I WOULD POINT YOUR HONOR TO THE PORTIONS OF THE

01:20PM   1        TRANSCRIPT THAT I HAVE CITED.

01:20PM   2              THE COURT:  SO LET ME ASK YOU, WHY DO YOU NEED THIS

01:20PM   3        INSTRUCTION?  YOU CAN ARGUE IT.  I DON'T THINK YOU NEED THE

01:20PM   4        INSTRUCTION.

01:20PM   5              MR. LEMENS:  WELL, AT THE VERY LEAST, I THINK WE

01:21PM   6        NEED CLARITY THAT IT CAME IN FOR NOTICE SO THAT THE GOVERNMENT

01:21PM   7        DOESN'T STAND UP IN CLOSING AND PUT UP THE COVER LETTER AND

01:21PM   8        SUGGEST IT WAS OFFERED AND MAKE ARGUMENTS BASED ON THE FACT

01:21PM   9        THAT IT WAS OFFERED FOR ITS TRUTH.

01:21PM   10            THE INSTRUCTION WE THINK IS IMPORTANT.  I, OF COURSE,

01:21PM   11       UNDERSTAND IF THE COURT HAS A DIFFERENT VIEW.  BUT WE THINK

01:21PM   12       IT'S AN IMPORTANT DOCUMENT IN THE CASE.

01:21PM   13             THE COURT:  NO, SURE.

01:21PM   14             MR. LEMENS:  AND IN LIGHT OF THE CONFUSION THAT THE

01:21PM   15       GOVERNMENT HAS JUST PERHAPS EVEN JUSTIFIES THE INSTRUCTION EVEN

01:21PM   16       FURTHER.

01:21PM   17             THE COURT:  OKAY.

01:21PM   18             MS. VOLKAR:  WELL, YOUR HONOR, I THINK IT'S NO

01:21PM   19       SURPRISE TO SAY -- MR. LEMENS MULTIPLE TIMES SAID WE ALL

01:21PM   20       UNDERSTOOD.  AND I ALSO THOUGHT WE ALL UNDERSTOOD IN THE ROOM

01:21PM   21       WHAT HAPPENED BECAUSE YOUR HONOR WAS CRYSTAL CLEAR, THIS

01:21PM   22       DOCUMENT IS ADMITTED, NO QUALIFICATIONS, UNLIKE ALL OF THE

01:21PM   23       OTHER TIMES IN THE CASE WHEN YOU'VE TURNED TO THE JURY AND

01:21PM   24       GIVEN THE TYPICAL INSTRUCTION THAT GOES WITH EVIDENCE THAT'S

01:21PM   25       FOR A LIMITED PURPOSE.

01:21PM   1          THAT DIDN'T HAPPEN FOR THE COVER LETTER.  THAT, AGAIN, IS

01:21PM   2     WHY THERE'S A 4621A AND A 4621B.

01:21PM   3          AND AT THE END OF EVERY TRIAL DAY, THERE IS THE WONDERFUL

01:21PM   4     SUPPORT STAFF THAT MEET AND TALK ABOUT THIS.  THERE WAS NO

01:22PM   5     UNCERTAINTY THERE, EITHER.  4621A WAS ENTIRELY ADMITTED, NO

01:22PM   6     LIMITATION.  4621B WAS ADMITTED FOR A LIMITED PURPOSE.

01:22PM   7          IT'S REFLECTED IN THE COURT'S TRIAL LOG AND MINUTE ORDER

01:22PM   8     FOR THE DAY.

01:22PM   9          THERE WAS NO CONFUSION IN THE MOMENT.  THAT PART I AGREE

01:22PM  10     WITH.

01:22PM  11          THE CONFUSION NOW IS SURPRISING APPARENTLY TO BOTH SIDES.

01:22PM  12     AND, AGAIN, THERE WAS AN EASY WAY TO SOLVE THIS IF THERE WAS

01:22PM  13     ANY AMBIGUITY.  THEN AT THE END OF EACH TRIAL DAY, AFTER

01:22PM  14     LOOKING BACK AT THE RECORD, EACH SIDE HAS FREQUENTLY SOUGHT

01:22PM  15     CLARIFICATION FROM YOUR HONOR AND ASKED THE COURT TO GO BACK

01:22PM  16     AND INSTRUCT THE JURY THAT WHEN I MEANT THIS LIMITING

01:22PM  17     INSTRUCTION, I MEANT IT WITH RESPECT TO EACH OF THESE EXHIBITS,

01:22PM  18     OR I MEANT IT WITH RESPECTS TO ALL OF THIS.

01:22PM  19          THAT NEVER HAPPENED.

01:22PM  20          SO FROM THE JURY'S PERSPECTIVE RIGHT NOW, WHICH IS WHAT WE

01:22PM  21     CARE ABOUT, I THINK, FOR PURPOSES OF THE STATE OF THE EVIDENCE,

01:22PM  22     THIS IS WHAT THEY HEARD.

01:22PM  23          WHAT THEY HEARD WAS ADMITTED, AND THEY DIDN'T HEAR ANY

01:22PM  24     LIMITING INSTRUCTIONS ON THIS PIECE.

01:22PM  25          I WOULD LIKE TO ADDRESS MR. LEMENS'S BROADER CONTEXT

01:23PM  1    POINT, BUT IF YOUR HONOR --

01:23PM  2            THE COURT:  GO RIGHT AHEAD.  GO RIGHT AHEAD.

01:23PM  3            MS. VOLKAR:  SO ON THE BROADER CONTEXT POINT, AGAIN,

01:23PM  4    I GO BACK TO THE GOVERNMENT'S POSITION HAS BEEN THE SAME THE

01:23PM  5    ENTIRE TIME, THAT THE CMS REPORT IS FULLY ADMISSIBLE.

01:23PM  6        THE FIRST MOTION TO RECONSIDER THAT I STOOD UP HERE AND

01:23PM  7    DISCUSSED WITH YOUR HONOR BACK IN AUGUST, THE DEFENSE WAS

01:23PM  8    TAKING THE POSITION THAT WHEN THE COURT GRANTED THE

01:23PM  9    GOVERNMENT'S REQUEST TO ADMIT THE CMS REPORT, THAT DIDN'T

01:23PM  10   EXTEND TO THE COVER LETTER.

01:23PM  11       WHAT UNDID THEM WAS THEIR OWN MOTION IN LIMINE WHICH

01:23PM  12   COVERED BOTH, AND THE COURT'S RULING WAS CLEARLY APPLICABLE TO

01:23PM  13   BOTH, THAT THEY WERE GRANTED.

01:23PM  14       BUT WE'RE STANDING HERE WITH MR. LEMENS SAYING THAT

01:23PM  15   THEY'VE ALWAYS BEEN THE SAME.

01:23PM  16       THE DEFENSE TOOK THE POSITION IN AUGUST THAT THE COVER

01:23PM  17   LETTER SHOULD BE TREATED DIFFERENTLY FROM THE CMS REPORT.

01:23PM  18       THE GOVERNMENT HAS ARGUED CONSISTENTLY THAT THE DOCUMENT

01:24PM  19   IS FULLY ADMISSIBLE, AND ARGUED AS AN ALTERNATIVE POSITION THAT

01:24PM  20   IT COULD COME IN FOR THE NONHEARSAY PURPOSE OF HER STATE OF

01:24PM  21   MIND, AND IT TOOK THAT ALTERNATIVE POSITION THE MORNING OF

01:24PM  22   DR. DAS'S TESTIMONY IN LARGE PART BECAUSE THE DEFENSE WANTED TO

01:24PM  23   CONTINUE TO GO LINE BY LINE AND DO A BUNCH OF REDACTIONS.

01:24PM  24       THE GOVERNMENT LISTENED TO THEIR OBJECTIONS, EVEN THOUGH,

01:24PM  25   UNDER THE COURT'S PRIOR RULING, THE ENTIRE CMS REPORT WAS

01:24PM  1    ADMISSIBLE, AND THE GOVERNMENT SOUGHT TO REDUCE WHAT IT WAS

01:24PM  2    SEEKING TO ADMIT THROUGH DR. DAS.

01:24PM  3         AND THERE IS A DIFFERENCE BETWEEN THE COVER LETTER AND THE

01:24PM  4    CMS REPORT, HOW IT CAME IN THROUGH DR. DAS.

01:24PM  5         DR. DAS DID HIS OWN INDEPENDENT INVESTIGATION OF THE

01:24PM  6    FINDINGS IN THE CMS REPORT AND HE AGREED WITH THEM 100 PERCENT.

01:24PM  7         NOW, THAT'S ALSO TESTIMONY THAT THEY WANT OUT BECAUSE IT'S

01:24PM  8    BAD FOR THEIR CASE.

01:24PM  9         BUT THAT'S NOT THE STANDARD HERE.  THE STANDARD IS

01:24PM 10    ADMISSIBILITY.

01:24PM 11         AND WHEN MR. LOOBY STOOD UP HERE A FEW DAYS LATER AND

01:24PM 12    ARGUED THAT THIS MATERIAL SHOULD BE STRICKEN FROM THE RECORD,

01:25PM 13    HE ARGUED ABOUT THE CONFRONTATION CLAUSE.

01:25PM 14         WHAT IS THE POINT OF ARGUING ABOUT THE CONFRONTATION

01:25PM 15    CLAUSE IF NONE OF IT CAME IN FOR A -- LIKE, IF IT CAME IN ONLY

01:25PM 16    FOR A NONHEARSAY PURPOSE?

01:25PM 17         WHEN MR. LEACH TALKED ABOUT THAT AND SAID THAT IN

01:25PM 18    RESPONSE, HE WAS, IF NOT EXPLICITLY, IMPLICITLY TALKING ABOUT

01:25PM 19    4621B.

01:25PM 20         BUT I WOULD PUT FORWARD, WHY WOULD THEY EVEN BE ARGUING

01:25PM 21    ABOUT THE CONFRONTATION CLAUSE IF THE ENTIRETY CAME IN FOR A

01:25PM 22    NONHEARSAY PURPOSE?

01:25PM 23              THE COURT:  THANK YOU.

01:25PM 24         SO IS THERE A DANGER THAT THE JURY WILL BE CONFUSED

01:25PM 25    BECAUSE SOME OF THIS WAS ADMITTED FOR A PURPOSE OTHER THAN

01:25PM   1    STATE OF MIND?

01:25PM   2              MS. VOLKAR:  I DON'T THINK SO, YOUR HONOR, BECAUSE I

01:25PM   3    THINK THE STATE OF THE JURORS' NOTES RIGHT NOW IS THAT PAGES --

01:25PM   4    AGAIN, I'M LOOKING AT THE TRANSCRIPT PAGE -- OR 5802 FROM

01:25PM   5    NOVEMBER 9TH.  THE STATE OF THE JURORS' NOTES IS THAT PAGES 1

01:25PM   6    THROUGH 4 OF 4621, WHICH IS NOW LABELLED 4621A, IS FULLY

01:25PM   7    ADMITTED.

01:25PM   8        AND THEN I'M SURE THAT THEIR NOTES ALSO REFLECT THAT 4621,

01:26PM   9    WHICH HAS BEEN LABELLED 4621B, WHICH IS THE REPORT -- THIS IS

01:26PM  10    NOT WITHIN THE SAME DOCUMENT -- CERTAIN PAGES OF THAT CAME IN,

01:26PM  11    BUT FOR A LIMITED PURPOSE.

01:26PM  12        AND TO THE EXTENT THAT YOUR HONOR IS WORRIED ABOUT ONE

01:26PM  13    DOCUMENT BEING PARSED OUT IN THAT MANNER, THERE HAVE BEEN TIMES

01:26PM  14    DURING THIS TRIAL THAT, WITHIN ONE EMAIL, A TOP EMAIL GOES TO

01:26PM  15    MS. HOLMES OR IS FROM MS. HOLMES AND THE COURT HAS INSTRUCTED

01:26PM  16    THAT THAT ONE EMAIL IS ADMITTED FOR A LIMITED PURPOSE.

01:26PM  17        THESE JURORS ARE SMART, THEY'RE PAYING ATTENTION, THEY'RE

01:26PM  18    TAKING NOTES.

01:26PM  19        WHEN YOUR HONOR GIVES INSTRUCTIONS, THE NINTH CIRCUIT IS

01:26PM  20    CLEAR THAT WE PRESUME THE JURORS FOLLOW THE COURT'S

01:26PM  21    INSTRUCTIONS.

01:26PM  22        AND HERE THE RECORD COULD NOT BE CLEARER.

01:26PM  23        SO, YES, THERE'S A LONG HISTORY AND CONTEXT OF ARGUING

01:26PM  24    ABOUT THE CMS REPORT AMONG THE PARTIES.  THE COURT IS VERY

01:26PM  25    FAMILIAR WITH THAT.

01:26PM 1          BUT WHAT WE NEED RIGHT NOW IS CLARITY ON THE RECORD, AND

01:26PM 2     THE GOVERNMENT'S POSITION HAS BEEN, FOR THE LAST MONTH, THAT IT

01:26PM 3     COULD NOT BE CLEARER THAT THE LETTER IS FULLY ADMITTED IN

01:27PM 4     4621A, AND THE CMS REPORT PORTIONS WERE ONLY ADMITTED FOR THE

01:27PM 5     LIMITED PURPOSE OF HER STATE OF MIND.

01:27PM 6          THE COURT:  OKAY.

01:27PM 7          MS. VOLKAR:  AND WE DON'T NEED AN INSTRUCTION ON

01:27PM 8     EITHER.

01:27PM 9          THE COURT:  AND IS THE GOVERNMENT INTENDING TO ARGUE

01:27PM 10    IN THEIR ARGUMENT SOMETHING DIFFERENT?  ARE YOU INTENDING TO

01:27PM 11    ARGUE THAT THE CMS, PARTS OF THE CMS LETTER WERE -- ARE FOR THE

01:27PM 12    TRUTH OF THE MATTER ASSERTED THAT WERE NOT OFFERED FOR THE

01:27PM 13    TRUTH OF THE MATTER ASSERTED, BUT ONLY FOR STATE OF MIND?

01:27PM 14        DO YOU UNDERSTAND MY QUESTION?

01:27PM 15         MS. VOLKAR:  I DO, AND I WANT TO BE CRYSTAL CLEAR IN

01:27PM 16    RESPONSE.

01:27PM 17        4621B, THE CMS REPORT, BECAUSE THAT WAS ADMITTED NOT FOR

01:27PM 18    THE TRUTH OF THE MATTER ASSERTED AND ONLY TO HER STATE OF MIND,

01:27PM 19    THE GOVERNMENT IN ITS CLOSING ARGUMENTS WAS SPECIFICALLY NOT

01:27PM 20    INTENDING TO ARGUE THAT WITH RESPECT TO THE TRUTH OF THE

01:27PM 21    DOCUMENT.

01:27PM 22        THE GOVERNMENT UNDERSTOOD 4621B WAS ADMITTED FOR A LIMITED

01:27PM 23    PURPOSE.

01:27PM 24        4621A, THE COVER LETTER, THE GOVERNMENT WAS INTENDING TO

01:28PM 25    ARGUE THAT TO THE FULL BENEFIT THAT IT THOUGHT IT WAS ENTITLED,

8798

01:28PM 1    WHICH WAS FOR THE TRUTH.

01:28PM 2         AND IN THE MOMENT, IT WASN'T CLARIFIED.  DEFENDANT WAITED

01:28PM 3    UNTIL AFTER THE CLOSE OF EVIDENCE TO BRING THIS UP.

01:28PM 4         AND I GO BACK TO EVEN THE INSTRUCTION THEY'RE IMPOSING --

01:28PM 5    OH, SORRY.

01:28PM 6         EACH THE INSTRUCTION THAT THEY'RE SUGGESTING RECOGNIZES

01:28PM 7    THE SPLIT BETWEEN THE TWO DOCUMENTS.  THE ONLY REASON FOR THE

01:28PM 8    SPLIT, THE 4621A AND THE 4621B, WAS BECAUSE THEY WERE ADMITTED

01:28PM 9    FOR DIFFERENT PURPOSES.

01:28PM 10         THE COURT:  AND I THINK YOU'RE SAYING THE RECORD

01:28PM 11   REFLECTS B WAS ADMITTED FOR STATE OF MIND ONLY.

01:28PM 12         MS. VOLKAR:  CORRECT.  AND THE GOVERNMENT ENTIRELY

01:28PM 13   INTENDS TO ABIDE BY THAT.

01:28PM 14         THE COURT:  OKAY.

01:28PM 15         MR. LEMENS:  YOUR HONOR, IF I MAY?  THE COVER LETTER

01:28PM 16   I'LL JUST READ:  "AS A RESULT OF THE SURVEY, IT WAS DETERMINED

01:28PM 17   THAT YOUR FACILITY IS NOT IN COMPLIANCE WITH ALL OF THE

01:28PM 18   CONDITIONS REQUIRED FOR CERTIFICATION."

01:28PM 19         THE GOVERNMENT SOUGHT TO PREVENT US FROM CROSS-EXAMINING A

01:28PM 20   CMS WITNESS ON THAT STATEMENT ON THE PREPARATION OF THIS

01:28PM 21   DOCUMENT BY ARGUING THAT THIS WOULD COME IN FOR A NONHEARSAY

01:29PM 22   PURPOSE AND ONLY FOR MS. HOLMES'S STATE OF MIND.

01:29PM 23         THAT WAS THE ARGUMENT.  THAT WAS THE ARGUMENT MR. LEACH

01:29PM 24   MADE AFTER -- DURING THE MOTION TO STRIKE.

01:29PM 25         THE SECOND REASON IS IT CAME IN FOR THE STATE OF MIND ON

01:29PM 1     MS. HOLMES, AND WE ASKED QUESTIONS OF DR. DAS THAT TOUCHED ON

01:29PM 2     HER STATE OF MIND.  SO IT CAME IN FOR A NONHEARSAY PURPOSE.

01:29PM 3     THAT'S PAGE 7089 OF THE TRANSCRIPT.

01:29PM 4         WE'VE BEEN VERY CLEAR ABOUT OUR POSITION.  WE EITHER

01:29PM 5     WANTED TO BE ABLE TO CROSS A CMS WITNESS ON THE CREATION OF

01:29PM 6     THAT DOCUMENT, OR AT THE VERY LEAST IT SHOULD COME IN FOR -- WE

01:29PM 7     WERE TOLD IT WAS COMING IN FOR A NONHEARSAY PURPOSE.

01:29PM 8         WE STILL OBJECTED BECAUSE WE STILL HAVE CONCERNS.  WE

01:29PM 9     STILL HAVE A PENDING MOTION BECAUSE OF THE ANIMATING CONCERNS

01:29PM 10    UNDER 403.

01:29PM 11        BUFF THE GOVERNMENT'S POSITION NOW, TO TRY TO PUT THIS

01:29PM 12    DOCUMENT IN FOR ITS TRUTH, TO ARGUE THAT REGULATORY VIOLATIONS

01:29PM 13    WERE ESTABLISHED, TO ARGUE THAT IT SHOULD HAVE BEEN KNOWN IS

01:29PM 14    BAFFLING TO ME.

01:29PM 15        I THINK THE TRANSCRIPT IS CLEAR.  YOUR HONOR REFERRED TO

01:30PM 16    PREVIOUS ADMISSIONS.  YOUR HONOR REFERRED TO AN INSTRUCTION

01:30PM 17    REFERENCING THESE EXHIBITS AT PAGE 5813 TO 5814.  AND I THINK

01:30PM 18    THE JURY WAS PROPERLY INSTRUCTED AS TO THE LIMITED PURPOSE.

01:30PM 19        TO SUGGEST THAT IT CAN COME IN NOW FOR ITS TRUTH RAISES

01:30PM 20    CONCERNS, GREAT CONCERNS FOR THE DEFENSE.

01:30PM 21             THE COURT:  OKAY.

01:30PM 22             MS. VOLKAR:  YOUR HONOR, IF I MAY JUST CLARIFY TWO

01:30PM 23    POINTS?

01:30PM 24        I THINK, ONE, YOUR HONOR PROBABLY REMEMBERS IT, BUT IF YOU

01:30PM 25    WERE TO LOOK BACK AT THE TRANSCRIPT, THE ARGUMENT -- MR. LEACH

01:30PM 1    ALSO SAID THAT THE CMS REPORT IS NOT TESTIMONIAL.

01:30PM 2         SO IT WASN'T JUST THAT THE ONLY REASON THAT THIS COULD

01:30PM 3    COME IN THROUGH DR. DAS WAS BECAUSE IT WENT TO HER STATE OF

01:30PM 4    MIND.  IT WAS AN ALTERNATIVE ARGUMENT.

01:30PM 5         THE GOVERNMENT'S PRIMARY POSITION WAS, IS, AND WILL

01:30PM 6    CONTINUE TO BE, THAT THE CMS REPORT AND THE LETTER ARE NOT

01:30PM 7    TESTIMONIAL.

01:30PM 8         THAT WAS ARGUED EACH OF THE SAME TIMES.  MR. LEMENS JUST

01:30PM 9    IS NOT READING THE FULL ARGUMENT BECAUSE IT SPANS MANY PAGES,

01:31PM 10   TO BE FAIR.

01:31PM 11        AND THEN THE SECOND POINT IS WHEN YOUR HONOR WAS TALKING

01:31PM 12   ABOUT THE PREVIOUS ADMISSIONS, THIS WAS IN A TIME PERIOD WHEN

01:31PM 13   MR. LEACH WAS MOVING THROUGH CERTAIN PAGES OF THE REPORT, AND

01:31PM 14   YOU'LL RECALL CERTAIN PAGES AND VERY SPECIFIC SECTIONS WERE

01:31PM 15   BEING ADMITTED TO TRY TO AVOID ASSAYS THAT WERE NOT ON THE BILL

01:31PM 16   OF PARTICULARS, ADDRESSING A DIFFERENT CONCERN THAT THE DEFENSE

01:31PM 17   HAS RAISED.

01:31PM 18        SO WHEN YOUR HONOR WAS TALKING ABOUT THESE ADMISSIONS, WE

01:31PM 19   WERE TALKING ABOUT THE PORTIONS OF THE CMS REPORT THAT WERE

01:31PM 20   COMING IN IN PIECES.

01:31PM 21        ALL OF THE CMS REPORT WAS INCLUDED AS 4621B, THAT WAS

01:31PM 22   ADMITTED FOR A LIMITED PURPOSE, THE GOVERNMENT UNDERSTANDS

01:31PM 23   THAT.

01:31PM 24             THE COURT:  ALL RIGHT.  WELL, I THINK I'M GOING TO

01:31PM 25   NEED TO LOOK AT THE TRANSCRIPT.

01:31PM  1          THIS SHOULD HAVE BEEN RAISED, I THINK, AT SOME POINT IN

01:31PM  2     TIME PRIOR TO JURY INSTRUCTIONS.

01:31PM  3          MR. LEMENS:  YOUR HONOR, THE DISPUTE TUMBLED OUT

01:31PM  4     WHEN THE GOVERNMENT INFORMED US OF THEIR POSITION.

01:31PM  5          THE COURT:  NO, I WISH WE HAD TIME TO DISCUSS THIS A

01:31PM  6     LITTLE EARLIER THAN WHERE WE ARE NOW.

01:31PM  7          BUT LET ME JUST STATE, I STILL, I'M STILL -- I DON'T HAVE

01:32PM  8     GREAT COMFORT GIVING AN INSTRUCTION THAT RELATES TO A SPECIFIC

01:32PM  9     PIECE OF EVIDENCE.  I JUST AM NOT -- I'M TROUBLED BY THAT.

01:32PM 10          AND I THINK THE GENESIS OF THIS IS BECAUSE YOU HAVE SOME

01:32PM 11     DIFFERENCES AS TO WHAT THE EVIDENCE IS.

01:32PM 12          MR. LEMENS:  AND WE RECOGNIZE THE COURT'S POSITION

01:32PM 13     AND PRESERVE, OF COURSE, OURS, THAT ISSUE BEING INCLUDED.

01:32PM 14          THE COURT:  WELL, LET ME JUST SAY, I THINK I'M GOING

01:32PM 15     TO HAVE TO READ THESE TRANSCRIPTS AGAIN, THE PAGES.  IF YOU

01:32PM 16     HAVE A SUMMATION OF THOSE THAT YOU'D LIKE ME TO LOOK AT, YOU'LL

01:32PM 17     GIVE ME THOSE, THOSE PAGES.

01:32PM 18          MR. LEMENS:  OF COURSE.

01:32PM 19          MS. VOLKAR:  YOUR HONOR, IT IS ON 1188.  IN FACT,

01:32PM 20     MERE MINUTES BEFORE WE FILED, DEFENSE ADDED ADDITIONAL

01:32PM 21     CITATIONS.

01:32PM 22          SO ON 1188, ECF PAGE 43, THE DEFENSE ADDED THE -- I'M

01:32PM 23     SORRY, THERE'S THE AUTHORITY THERE.  THE DEFENSE SIGNIFICANTLY

01:32PM 24     ADDED TO THAT AFTER THE GOVERNMENT PROVIDED ITS TRANSCRIPT

01:33PM 25     LINES, WHICH ARE INCLUDED IN FOOTNOTE 40 AT THE BOTTOM OF THAT

01:33PM 1      SAME PAGE.

01:33PM 2               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:33PM 3               MS. VOLKAR:  THANK YOU, YOUR HONOR.

01:33PM 4               THE COURT:  LET'S TURN TO 32, TRADE SECRETS.

01:33PM 5          I'VE LOOKED AT THIS.  LET ME, JUST FOR BREVITY'S SAKE, I

01:33PM 6      HAVE -- THIS IS DEFENSE TRADE SECRETS.

01:33PM 7          I HAVE SOME DISCOMFORT WITH LINES 3 THROUGH 10, WHICH IS

01:33PM 8      THE, I GUESS, FOUNDATIONAL, I'LL CALL IT, ABOUT CALIFORNIA LAW.

01:33PM 9               IT SEEMS TO ME, MR. LEMENS, THAT THE REAL INSTRUCTION, OR

01:33PM 10     WHAT YOU WOULD SEEK TO INFORM THE JURY OF IS BEGINNING AT LINE

01:33PM 11     11, "EVIDENCE THAT MS. HOLMES OR THERANOS TOOK REASONABLE

01:34PM 12     EFFORTS TO PROTECT TRADE SECRETS IS NOT EVIDENCE THAT

01:34PM 13     MS. HOLMES ACTED WITH AN INTENT TO DEFRAUD."

01:34PM 14               MR. LEMENS:  I CERTAINLY THINK THAT'S THE POINT OF

01:34PM 15     THE INSTRUCTION, YOUR HONOR.  I THINK THE PRIOR LINES IN OUR

01:34PM 16     VIEW ARE IMPORTANT TO INSTRUCT THE JURY WHAT THE LAW IS, AS IS

01:34PM 17     THE PROVINCE OF THE COURT.

01:34PM 18         I'M CERTAIN, HAD THE DEFENSE CALLED AN EXPERT TO TRY TO

01:34PM 19     OFFER THAT TESTIMONY AS TO WHAT THE LAW REQUIRES, IT WOULD HAVE

01:34PM 20     BEEN INAPPROPRIATE AND OBJECTIONABLE, WHICH IS WHY WE DIDN'T DO

01:34PM 21     THAT.

01:34PM 22         I THINK WHAT WE HAVE SUMMARIZED IS WHAT WE UNDERSTAND TO

01:34PM 23     BE THE STATE OF THE LAW.  WE HAVE TRIED TO DO SO IN A NEUTRAL

01:34PM 24     MANNER.

01:34PM 25         I HAVE NOT -- TO MY KNOWLEDGE, THE GOVERNMENT HAS NOT

01:34PM 1    OFFERED A COMPETING VIEW OF WHAT THE TRADE SECRETS LAW IS.

01:34PM 2         THEY'VE, OF COURSE, RAISED CONCERNS WITH THIS INSTRUCTION

01:34PM 3    AS A WHOLE, BUT I DON'T UNDERSTAND THERE TO BE ANY DISPUTE

01:34PM 4    ABOUT WHAT THE STATE OF CALIFORNIA LAW IS.  AND IT'S CITED, OF

01:34PM 5    COURSE, IN THE AUTHORITY THAT WE HAVE PROVIDED.

01:35PM 6         THE COURT:  WHAT IS IN THE EVIDENCE REGARDING TRADE

01:35PM 7    SECRETS?  HAS THERE BEEN ANY -- FIRST OF ALL, THERE'S NO EXPERT

01:35PM 8    TESTIMONY ABOUT TRADE SECRETS AS I RECALL.

01:35PM 9         MR. LEACH:  THERE'S NOT EXPERT TESTIMONY, YOUR

01:35PM 10   HONOR.

01:35PM 11        THERE IS AN EMAIL THAT WAS ADMITTED DURING MS. HOLMES'S

01:35PM 12   TESTIMONY SPELLING OUT THE COMPANY'S POLICY WITH RESPECT TO

01:35PM 13   TRADE SECRETS.

01:35PM 14        THE COURT:  THAT WAS A DRAFT?

01:35PM 15        MR. LEACH:  IT WAS A DRAFT, CORRECT.  SO THERE'S

01:35PM 16   THAT EVIDENCE ABOUT THE BACK AND FORTH SHE HAD WITH --

01:35PM 17        THE COURT:  BUT IS THERE EVIDENCE THAT THAT WAS THE

01:35PM 18   COMPANY'S POLICY THAT WAS ADHERED TO, ACCEPTED, FOLLOWED?  IT

01:35PM 19   SEEMS LIKE THAT WAS INFORMATIVE TO MS. HOLMES, BUT THERE'S -- I

01:35PM 20   DON'T RECALL ANY EVIDENCE THAT THAT WAS COMPANY POLICY.

01:35PM 21        MR. LEACH:  I DON'T HAVE A CLEAR MEMORY, YOUR HONOR,

01:35PM 22   BUT IT DOESN'T MATTER, AND LET ME PLEASE TELL YOU WHY.

01:35PM 23        THE COURT:  SURE.

01:35PM 24        MR. LEACH:  THE JURY IS NOT REQUIRED TO FIND

01:35PM 25   ANYTHING RELATING TO TRADE SECRETS.  THIS IS A RED HERRING

01:35PM   1       INSTRUCTION.

01:35PM   2           THE JURY IS REQUIRED TO FIND, DID SHE HAVE THE INTENT TO

01:36PM   3   DECEIVE OR TO CHEAT?

01:36PM   4           NOW, THE GOVERNMENT ARGUES SHE DID NOT DISCLOSE THE USE OF

01:36PM   5   THIRD PARTY SIEMENS MACHINES TO INVESTORS, TO MR. PARLOFF, TO

01:36PM   6   OTHER AUDIENCES.

01:36PM   7           HER RESPONSE TO THAT IS, I WAS PROHIBITED FROM DOING THAT,

01:36PM   8   OR I THOUGHT I WAS PROHIBITED FROM DOING THAT BECAUSE OF TRADE

01:36PM   9   SECRETS LAW.

01:36PM   10          WHAT TRADE SECRETS LAW IS OR IS NOT IS IRRELEVANT.

01:36PM   11          WHAT MATTERS IS WHAT IS IN HER HEAD WITH RESPECT TO HER

01:36PM   12  INTENT.

01:36PM   13          SHE COULD BE TOTALLY RIGHT.  SHE COULD BE TOTALLY WRONG.

01:36PM   14          IT'S A FACTUAL MATTER RELATING TO WHAT HER INTENT IS AND

01:36PM   15  WHAT HER UNDERSTANDING IS.

01:36PM   16          SO THERE'S NO POINT TO INSTRUCTING ON WHAT TRADE SECRETS

01:36PM   17  LAW, THE OBJECTIVE, IS.

01:36PM   18          WHAT MATTERS IS WHAT IS IN HER MIND AND WHAT HER INTENT

01:36PM   19  WAS.

01:36PM   20          AND THE GOVERNMENT'S CONCERN IS ACTUALLY MOST ACUTE WITH

01:36PM   21  THE LAST TWO LINES THAT YOUR HONOR WAS SUGGESTING MIGHT BE

01:37PM   22  APPROPRIATE.  WE THINK IT'S TOTALLY INAPPROPRIATE.  WE THINK

01:37PM   23  THAT THIS IS SINGLING OUT PARTICULAR EVIDENCE.

01:37PM   24          I THINK THE COURT SHOULD NOT BE IN THE BUSINESS OF DOING

01:37PM   25  THAT.

8805

01:37PM 1    AND THIS IS COMPLETELY UNBALANCED WITH RESPECT TO TRADE

01:37PM 2  SECRETS LAWS, YOUR HONOR, BECAUSE A PARTY CAN PROTECT ITS TRADE

01:37PM 3  SECRETS THROUGH A CONFIDENTIALITY AGREEMENT.

01:37PM 4    THIS IS BLACK LETTER LAW IN THE NINTH CIRCUIT.  I WOULD

01:37PM 5  CITE UNITED STATES VERSUS NOSAL, 844 F.3D 1024.  IT'S A 2016

01:37PM 6  CASE.  THERE HAS BEEN SOME APPEALS FROM THAT, BUT I DON'T THINK

01:37PM 7  IT TOUCHES ON THIS ISSUE, WHICH IS A COMPANY CAN PROTECT ITS

01:37PM 8  TRADE SECRETS THROUGH CONFIDENTIALITY AGREEMENTS.

01:37PM 9    AND WHAT IS BEING PROPOSED HERE IS TOTALLY UNNECESSARY.

01:37PM 10    WHAT MATTERS IS WHAT WAS IN MS. HOLMES'S MIND.  MAYBE SHE

01:37PM 11  THOUGHT SHE WAS REASONABLY PROTECTING TRADE SECRETS.  MAYBE SHE

01:38PM 12  COULD HAVE GOTTEN A CONFIDENTIALITY AGREEMENT WITH WALGREENS,

01:38PM 13  OR A MORE ROBUST CONFIDENTIALITY AGREEMENT AND PROTECTED

01:38PM 14  HERSELF THAT WAY.

01:38PM 15    BUT THIS IS INSTRUCTING ON AN AREA OF LAW THAT THE JURY

01:38PM 16  DOES NOT NEED TO DECIDE.

01:38PM 17    THE COURT:  WELL, THAT WAS -- EXCUSE ME.  THAT'S A

01:38PM 18  CONCERN THAT I HAD.

01:38PM 19    ISN'T THIS ASKING US TO ASK THE JURY TO DETERMINE WHETHER

01:38PM 20  OR NOT THERE WAS A TRADE SECRET AND WHETHER OR NOT THERE WAS A

01:38PM 21  VIOLATION OF A TRADE SECRET?

01:38PM 22    IT SEEMS LIKE THAT IS ANCILLARY.  WHAT IS REALLY AT ISSUE

01:38PM 23  IS WHAT YOUR CLIENT BELIEVED IN HER, IN HER MIND, AND DO WE

01:38PM 24  NEED TO -- DO WE NEED TO TELL THEM, THE JURY, THAT THEY HAVE TO

01:38PM 25  FIND OUT WHAT A TRADE SECRET IS?  THAT SEEMS TO BE BEYOND THE

01:38PM 1    SCOPE HERE.

01:38PM 2         MR. LEMENS:  WELL, IT'S BEEN OUR POSITION THAT NONE

01:38PM 3    OF THIS SHOULD COME IN.  I THINK THE LAST TIME I WAS UP HERE IN

01:38PM 4    FRONT OF THE COURT, WE WERE TALKING ABOUT THIS SAME ISSUE BACK

01:38PM 5    IN MAY, AND THE COURT ALLOWED THE EVIDENCE OF REASONABLE

01:39PM 6    MEASURES TO COME IN.

01:39PM 7         OUR POSITION HAS BEEN AND CONTINUES TO BE THAT THAT IS --

01:39PM 8    ANYTHING THAT CONSTITUTES A REASONABLE MEASURE IS LEGALLY

01:39PM 9    REQUIRED CONDUCT AND, AS SUCH, IS NOT PROPERLY CONSIDERED BY A

01:39PM 10   JURY IN DETERMINING MS. HOLMES'S LIABILITY.

01:39PM 11        I WILL CITE THE VALLEJO CASE, THAT'S UNITED STATES V.

01:39PM 12   VALLEJO, V-A-L-L-E-J-O, 237 F.3D 1008.  THAT'S OUT OF THE

01:39PM 13   NINTH CIRCUIT.

01:39PM 14        THE GOVERNMENT, THROUGHOUT ITS CASE, HAS PUT EVIDENCE INTO

01:39PM 15   THE RECORD OF TRADE SECRETS -- OF CONFIDENTIALITY PRACTICES,

01:39PM 16   LIMITATIONS ON INFORMATION WITHIN THE COMPANY.  WE HEARD THAT

01:39PM 17   FROM MS. GANGAKHEDKAR, DR. ROSENDORFF, AND MR. EDLIN, THE USE

01:39PM 18   OF NONDISCLOSURE AGREEMENTS, LIMITATIONS ON ACCESS, THE

01:39PM 19   PRESENCE OF SECURITY.

01:39PM 20        THEY HAVE PUT THIS EVIDENCE INTO THE CASE.

01:39PM 21        WE, OF COURSE -- THEY, OF COURSE, CROSS-EXAMINED

01:39PM 22   MS. HOLMES ABOUT CERTAIN PRACTICES, THE USE OF LITIGATION, THE

01:40PM 23   FACT THAT THE COMPANY AGGRESSIVELY PROTECTED ITS INTELLECTUAL

01:40PM 24   PROPERTY.  I THINK THAT WAS A THEME OF MR. LEACH'S

01:40PM 25   CROSS-EXAMINATION.

8807

01:40PM   1      OUR POINT IS NOT TO LITIGATE THROUGH INSTRUCTIONS WHAT IS

01:40PM   2  AND IS NOT A REASONABLE MEASURE.

01:40PM   3      YOU'LL SEE IN WHAT WE PROPOSED WE DO NOT SUGGEST THAT

01:40PM   4  NONDISCLOSURE AGREEMENTS ARE OR ARE NOT REASONABLE, THAT THE

01:40PM   5  CONDUCT THAT THE COMPANY ENGAGED IS OR IS NOT REASONABLE.

01:40PM   6      IT'S SIMPLY TO INFORM THE JURY THAT REASONABLE EFFORTS ARE

01:40PM   7  REQUIRED UNDER CALIFORNIA LAW, AND REASONABLE EFFORTS CANNOT BE

01:40PM   8  CONSIDERED IN THE CONTEXT OF THIS CASE.

01:40PM   9      THE COURT:  I'M NOT SURE THIS INFORMS AS TO THAT.

01:40PM  10  PARDON ME.

01:40PM  11      I THINK I UNDERSTAND YOUR POINT, BUT I THINK THIS IS TOO

01:40PM  12  BROAD WHEN YOU'RE GIVING A BACKGROUND ABOUT CALIFORNIA LAW.  IT

01:40PM  13  JUST SEEMS TO ME YOU'RE ASKING THE JURY TO MAKE A DECISION AS

01:41PM  14  TO WHAT CALIFORNIA LAW IS, AND THEN TO DETERMINE REASONABLE

01:41PM  15  EFFORTS, AND I DON'T THINK THAT'S APPROPRIATE.

01:41PM  16      I JUST -- I THINK ON DIRECT SOME OF THIS TRADE SECRETS

01:41PM  17  INFORMATION CAME UP, AND PERHAPS THAT WAS IN RESPONSE TO THE

01:41PM  18  EVIDENCE THAT HAD COME IN FROM OTHER WITNESSES ON THE

01:41PM  19  PROSECUTION, BUT --

01:41PM  20      MR. LEMENS:  I TAKE YOUR HONOR'S POINT THAT THIS IS

01:41PM  21  BROAD AND PERHAPS AS A THEME HAS BEEN TOO LONG.

01:41PM  22      I DO THINK, AT THE VERY LEAST, THE LAST TWO LINES ARE

01:41PM  23  NECESSARY IN LIGHT OF THE VALLEJO CASE AND THIS CONCEPT OF

01:41PM  24  LEGALLY REQUIRED CONDUCT.  BUT I'M HAPPY TO CAUCUS WITH THE

01:41PM  25  TEAM AND SEE IF THERE'S SOMETHING THAT WE CAN DO THAT ADDRESSES

01:41PM 1     THE COURT'S CONCERNS.

01:41PM 2              THE COURT:  WELL, THANK YOU.

01:41PM 3         I'M NOT INCLINED TO GIVE THIS AS IT IS FOR THE REASONS

01:41PM 4     THAT I HAVE OBSERVED AND MENTIONED.

01:41PM 5         "REASONABLE EFFORTS," YOU KNOW, I'LL ALLOW YOU TO WORK ON

01:42PM 6     THAT.  I DON'T KNOW IF THERE'S OTHER LANGUAGE THAT CAN BE USED

01:42PM 7     ABOUT MS. HOLMES'S CONDUCT, AS SHE TESTIFIED, MAY BE CONSIDERED

01:42PM 8     WITH ALL OF THE OTHER EVIDENCE AS TO HER INTENT TO DEFRAUD.

01:42PM 9     THAT'S REALLY WHAT THIS FOCUSES ON, AND I'M NOT SURE YOU NEED

01:42PM 10    TO SPECIFY TRADE SECRETS.  YOU CAN CERTAINLY ARGUE THAT.

01:42PM 11        BUT IT'S REALLY THE EFFORTS THAT SHE MADE.  IT'S A

01:42PM 12    COLLECTIVE EFFORT, I THINK WHAT I HEAR YOU SAYING, THAT THE

01:42PM 13    COMPANY MAY HAVE MADE.  AND WE'RE TALKING ABOUT -- I THINK

01:42PM 14    THERE WAS EVIDENCE ABOUT PEOPLE HAVING TO CHECK IN WITH

01:42PM 15    SECURITY AND THOSE TYPES OF THINGS.

01:42PM 16        IS THAT WHAT THIS IS REALLY COVERING?

01:42PM 17             MR. LEMENS:  YEAH, THERE'S A BEVY OF EVIDENCE IN THE

01:42PM 18    RECORD, AND I IMAGINE THE GOVERNMENT WILL ARGUE THAT THE

01:42PM 19    COMPANY CREATED A BROAD CULTURE OF SECRECY.  THEY WILL TRY TO

01:42PM 20    USE ALL OF THAT EVIDENCE TO SUGGEST A BROADER THEME IN THEIR

01:42PM 21    CLOSING ARGUMENT.

01:42PM 22        THAT IS, OF COURSE, WHAT WE'RE CONCERNED ABOUT.  LEGALLY

01:43PM 23    REQUIRED CONDUCT IS NOT AN APPROPRIATE CONSIDERATION BY THE

01:43PM 24    JURY.  REASONABLE MEASURES FALL WITHIN THAT BUCKET OF LEGALLY

01:43PM 25    REQUIRED CONDUCT.

01:43PM 1          THE COURT:  MAYBE THAT'S WHAT YOU SHOULD -- MAYBE

01:43PM 2     THAT'S HOW YOU SHOULD --

01:43PM 3          MR. LEMENS:  YOU KNOW, IF I KEEP TALKING, I MIGHT

01:43PM 4     WRITE IT MYSELF.  BUT LET ME TALK TO THE TEAM AND SEE WHAT WE

01:43PM 5     CAN COME UP WITH.

01:43PM 6          THE COURT:  THAT SOUNDED VERY SIMPLE AND ELEGANT,

01:43PM 7     AND THAT IS REALLY WHAT THE CONCEPT IS, WITHOUT HAVING TO

01:43PM 8     SPECIFY.  AND THEN YOUR TEAM, WHOEVER IT IS WHO HAS THE

01:43PM 9     PRIVILEGE OF ARGUING, CAN CERTAINLY MAKE THAT ARGUMENT, "THAT

01:43PM 10    THE EVIDENCE SHOWS THAT THIS IS CONSISTENT WITH."

01:43PM 11        THAT'S REALLY THE SPIRIT OF WHAT YOU WANT TO BE ABLE TO

01:43PM 12    DO, I THINK.

01:43PM 13        MR. LEMENS:  THAT'S CORRECT, YOUR HONOR.

01:43PM 14        THE COURT:  SO I'LL LET YOU WORK ON THAT.  WE'LL

01:43PM 15    PASS THIS.

01:43PM 16        THE NEXT IS NUMBER OF WITNESSES.

01:43PM 17        MR. LEMENS:  I'M GOING TO PASS THE PODIUM TO

01:43PM 18    MR. CLEARY.

01:43PM 19        THE COURT:  OKAY.  THANK YOU.

01:43PM 20        IS THERE A MODEL INSTRUCTION THAT TALKS ABOUT NOT MAKING A

01:43PM 21    DECISION BASED ON THE NUMBER OF WITNESSES?

01:44PM 22        MR. LEACH:  THERE IS, YOUR HONOR, AND THE COURT HAS

01:44PM 23    ALREADY AGREED TO GIVE IT AT JURY INSTRUCTION NUMBER 9, WHICH

01:44PM 24    SAYS, "THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT

01:44PM 25    NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY ABOUT

01:44PM 1    IT.  WHAT IS IMPORTANT IS HOW BELIEVABLE THE WITNESSES ARE AND

01:44PM 2    HOW MUCH WEIGHT YOU THINK THEIR TESTIMONY DESERVES."

01:44PM 3         THE SAME INSTRUCTION ALSO SAYS "YOU CAN BELIEVE SOME OF

01:44PM 4    WHAT A WITNESS SAYS, ALL OF IT, OR NONE OF IT."

01:44PM 5         THE DEFENSE'S PROPOSED INSTRUCTION FROM THE SAND MODEL

01:44PM 6    FEDERAL JURY INSTRUCTIONS IS WAY TOO LONG.  IT'S ARGUMENT IN

01:44PM 7    LIGHT OF OTHER INSTRUCTIONS THAT THE COURT HAS ALREADY GIVEN.

01:44PM 8    IT REPEATS THE BURDEN OF PROOF BEYOND A REASONABLE DOUBT,

01:44PM 9    AGAIN, WHOLLY UNNECESSARILY, AND WE THINK THESE CONCEPTS ARE

01:44PM 10   ADEQUATELY ADDRESSED BY THE CREDIBILITY OF WITNESSES

01:44PM 11   INSTRUCTIONS.

01:44PM 12        THE COURT:  WELL, WITH THAT, MR. CLEARY, WELCOME TO

01:44PM 13   THE LECTERN.

01:44PM 14        MR. CLEARY:  IT'S GOOD TO BE BACK, YOUR HONOR.

01:44PM 15        RICHARD CLEARY ON BEHALF OF MS. HOLMES.

01:45PM 16        THE INSTRUCTION THAT MR. LEACH JUST REFERENCED, I THINK,

01:45PM 17   ADDRESSES AN ANALYTICALLY CONCEPTUALLY DISTINCT POINT, WHICH IS

01:45PM 18   THE NUMBER OF WITNESSES WHO TESTIFY TO A PARTICULAR PROPOSITION

01:45PM 19   AND THE WEIGHT THAT SHOULD BE AFFORDED TO THAT PARTICULAR

01:45PM 20   PROPOSITION SIMPLY BY VIRTUE OF THE NUMBER OF WITNESSES WHO

01:45PM 21   TESTIFY TO IT, THE SAND MODEL INSTRUCTION, THE FIFTH CIRCUIT

01:45PM 22   INSTRUCTIONS, THE SIXTH CIRCUIT INSTRUCTIONS HAVE A DIFFERENT

01:45PM 23   PURPOSE, WHICH IS SIMPLY TO INSTRUCT THE JURY AS TO THE OVERALL

01:45PM 24   NUMBER OF WITNESSES IN A CASE CALLED BY EITHER SIDE.

01:45PM 25        AND HERE, AS THE COURT WELL KNOWS, THE GOVERNMENT CALLED

8811

01:45PM  1    29 WITNESSES.  MS. HOLMES CALLED 3 WITNESSES.  THERE HAS BEEN

01:45PM  2    AS LOPSIDED PRESENTATION.

01:45PM  3        SOME OF THE WITNESSES CALLED BY THE GOVERNMENT MS. HOLMES

01:45PM  4    MAY WELL HAVE CALLED EITHER TO INTRODUCE DOCUMENTS THROUGH, OR

01:45PM  5    WE MAY HAVE CALLED OTHER WITNESSES BECAUSE THE COURT PERMITTED

01:46PM  6    US TO INTRODUCE AFFIRMATIVE EVIDENCE THROUGH CERTAIN WITNESSES.

01:46PM  7        AND HERE THIS IS JUST A STANDARD INSTRUCTION FROM THE SAND

01:46PM  8    MODEL TO MAKE SURE THAT THE JURY DOES NOT DRAW ANY INFERENCES

01:46PM  9    AS TO MS. HOLMES'S GUILT OR INNOCENCE SIMPLY BY REFERENCE TO

01:46PM  10   THE NUMBER OF WITNESSES CALLED IN THE CASE OVERALL.

01:46PM  11        THE COURT:  SURE.  NO, I THINK I UNDERSTAND THAT.

01:46PM  12        THERE'S SOME CONCERN FROM A DEFENSE POSITION PERHAPS THAT

01:46PM  13   BECAUSE THE GOVERNMENT BEARS THE BURDEN OF PROOF, IT'S -- AND A

01:46PM  14   JURY MIGHT NOT PUT THIS TOGETHER, BUT THEY'RE GOING TO CALL AS

01:46PM  15   MANY WITNESSES AS THEY FEEL THEY NEED TO TO PROVE THEIR CASE,

01:46PM  16   AND OFTENTIMES THAT MAY OUTNUMBER THE DEFENSE BECAUSE THE

01:46PM  17   DEFENSE, AS YOU KNOW, YOU DON'T HAVE TO PUT ANYTHING ON BECAUSE

01:46PM  18   OF THAT BURDEN.

01:46PM  19        AND THIS INSTRUCTION, AND THE ONE THAT MR. LEACH

01:47PM  20   REFERENCED, WHICH IS A MODEL INSTRUCTION, RECOGNIZES THAT, THAT

01:47PM  21   THE JURY SHOULD NOT, SHOULD NOT WEIGH THE EVIDENCE JUST BECAUSE

01:47PM  22   OF THE NUMBER OF WITNESSES THAT TESTIFY ABOUT A FACT OR TESTIFY

01:47PM  23   FOR A SIDE.  THAT'S NOT PROPER.

01:47PM  24        IT REALLY DOES BOIL DOWN TO THE QUALITY OF THE WITNESSES'

01:47PM  25   TESTIMONY AND WHAT THE JURY DOES WITH THAT TESTIMONY, AND HOW

01:47PM  1   THEY BELIEVED THE TESTIMONY.

01:47PM  2       AND THE FACT THAT THE DEFENSE CALLS FEWER WITNESSES THAN

01:47PM  3   THE GOVERNMENT MIGHT ALSO BE SEEN AS RELIANCE ON THE STATE OF

01:47PM  4   THE EVIDENCE AND THAT THE DEFENSE FEELS THAT THEY HAVEN'T

01:47PM  5   PROVED THEIR CASE AND WE DON'T HAVE TO PROVE IT FOR THEM AND

01:47PM  6   WE'RE NOT GOING TO OFFER ANYTHING ELSE BECAUSE THEY HAVEN'T

01:47PM  7   PROVED THEIR CASE.

01:47PM  8       I JUST -- I THINK THAT THE MODEL INSTRUCTIONS, MR. CLEARY,

01:47PM  9   PROPERLY INFORM THE JURY THAT THEY'RE NOT TO CONSIDER, AND THEY

01:47PM 10   DON'T ADD UP WITNESSES AND THEN KEEP A SCORE CARD ON WITNESSES.

01:47PM 11       I THINK THE MODEL INSTRUCTION PROPERLY INFORMS THE JURY

01:47PM 12   THAT THEY NEED TO CONSIDER NOT JUST THE NUMBER, AND THEY

01:48PM 13   SHOULDN'T JUST CONSIDER THE NUMBER AS A WEIGHT ON A SCALE, BUT

01:48PM 14   RATHER THE QUALITY AND THE NATURE OF THE WITNESS'S TESTIMONY,

01:48PM 15   INCLUDING THEIR DEMEANOR, THEIR BELIEVABILITY, THEIR

01:48PM 16   CREDIBILITY.  THE COURT GIVES THEM A MODEL INSTRUCTION THAT HAS

01:48PM 17   SEVERAL FACTORS THAT THEY MAY CONSIDER, INCLUDING ANYTHING ELSE

01:48PM 18   THAT THE JURY FEELS BEARS ON BELIEVABILITY AND CREDIBILITY IN

01:48PM 19   THEIR ASSESSMENT OF THE TESTIMONY.

01:48PM 20       AND I THINK THAT'S A RATHER FULSOME INFORMATION FOR THE

01:48PM 21   JURY TO HAVE.  SO I'M RESPECTFULLY GOING TO DECLINE YOUR

01:48PM 22   INVITATION TO GIVE THIS, WITH YOUR OBJECTION NOTED.

01:48PM 23           MR. CLEARY:  THANK YOU, YOUR HONOR.

01:48PM 24           THE COURT:  YOU'RE WELCOME.

01:48PM 25       NUMBER 34 I THINK IS THE DUTY TO DELIBERATE, WE'RE NOW IN

8813

01:48PM 1    THE FINAL INSTRUCTIONS, AND I'LL USE THIS CONSISTENT WITH WHAT

01:48PM 2    I'VE DONE PREVIOUSLY.

01:48PM 3            MR. CLEARY:  THAT MAKES SENSE TO US, YOUR HONOR.

01:48PM 4            THE COURT:  AND THEN 35, I THINK YOU'D LIKE TO GIVE

01:48PM 5    GOOGLE SOME FREE ADVERTISING HERE.

01:49PM 6            MR. CLEARY:  THIS WAS INCLUDED IN THE PRELIMINARY

01:49PM 7    INSTRUCTIONS AT OUR REQUEST.  WE THINK IT'S CLARIFYING AND

01:49PM 8    OBVIOUSLY IT'S VERY MINOR FOR THE JURY.

01:49PM 9            MR. LEACH:  NO FURTHER ARGUMENT, YOUR HONOR.  THE

01:49PM 10   COURT HAS BEEN VERY CAREFUL IN REMINDING THE JURY NOT TO

01:49PM 11   CONSIDER OUTSIDE EVIDENCE.  THIS IS FINE.

01:49PM 12           THE COURT:  WE'LL RECOGNIZE GOOGLE.  WE'LL GIVE THEM

01:49PM 13   THAT.

01:49PM 14       HAVE WE -- LET'S SEE.  OH, YES.  PUNISHMENT, ALLEGED

01:49PM 15   OFFENSE, OFFENSES, EXCUSE ME.

01:49PM 16       ANY OBJECTION TO THAT, MR. LEACH, FROM YOUR TEAM?

01:49PM 17           MR. LEACH:  NO, YOUR HONOR.

01:49PM 18           THE COURT:  ALL RIGHT.  WE'LL GIVE THAT, MR. CLEARY.

01:49PM 19           MR. CLEARY:  NOW, YOUR HONOR, I'M GOING TO RETURN

01:49PM 20   THE PODIUM TO MR. LEMENS.

01:49PM 21           THE COURT:  OH, OKAY?  WE'RE NOT FINISHED?  WE HAVE

01:49PM 22   MORE TO DO?

01:49PM 23           MR. LEACH:  YOUR HONOR, I THINK ON THE LAST PAGE,

01:49PM 24   PAGE 54, THERE IS SOME HIGHLIGHTED LANGUAGE ABOUT THE READBACK

01:49PM 25   OR PLAYBACK INSTRUCTION.

8814

01:49PM 1      WE PUT THIS IN HERE BECAUSE WE THOUGHT IT COULD EMERGE AT

01:50PM 2  SOME POINT, BUT WE'RE NOT ASKING THE COURT TO GIVE IT IN ITS

01:50PM 3  FINAL INSTRUCTIONS TO THE JURY.

01:50PM 4          THE COURT:  RIGHT.

01:50PM 5          MR. LEACH:  AND I SUPPOSE WE CAN WAIT UNTIL WE GET A

01:50PM 6  REQUEST TO DECIDE HOW TO HANDLE THIS.

01:50PM 7          MR. CLEARY:  WE AGREE WITH THAT.  IT WOULD BE

01:50PM 8  PREMATURE TO INCLUDE IT, AND WE'LL JUST ADDRESS THAT ISSUE IF

01:50PM 9  AND WHEN IT ARISES AND RESERVE ANY OBJECTIONS UNTIL THAT TIME.

01:50PM 10         THE COURT:  OKAY.  WELL, WE'LL BE THINKING ABOUT

01:50PM 11 THIS.

01:50PM 12     I APPRECIATE YOU NOT WANTING TO INVITE THE JURY TO COME

01:50PM 13 BACK AND HEAR THE TRIAL AGAIN THROUGH TRANSCRIPT TESTIMONY.

01:50PM 14     ALL RIGHT.  THANK YOU.

01:50PM 15     ALL RIGHT.  WELL, I THINK WE ALL HAVE SOME WORK TO DO.

01:50PM 16     MS. VOLKAR?

01:50PM 17         MS. VOLKAR:  YOUR HONOR, BECAUSE I UNDERSTOOD THE

01:50PM 18 COURT WOULD LIKE THE PARTIES TO SUBMIT A REVISED VERSION,

01:50PM 19 REALLY JUST A COUPLE OF CLARIFYING QUESTIONS ON THAT.

01:50PM 20     ONE, DO YOU WANT US TO REFILE, OR WOULD SUBMITTING A WORD

01:50PM 21 VERSION UPDATED TO MS. KRATZMANN SUFFICE?

01:50PM 22         THE COURT:  YES, THE LATTER, PLEASE.  YEAH, YOU

01:51PM 23 DON'T HAVE TO REFILE.

01:51PM 24     YOU'RE OKAY WITH THAT IF BOTH SIDES ARE OKAY WITH THAT?

01:51PM 25         MS. VOLKAR:  THAT WORKS FOR THE GOVERNMENT.

8815

01:51PM 1     MR. LEMENS:  AND FOR MS. HOLMES, YOUR HONOR.

01:51PM 2     I THINK I WOULD JUST -- I THINK THE ONE THING WE LEFT OFF

01:51PM 3  WAS THE VERDICT FORM, AND I BELIEVE WHERE WE LEFT OFF WITH

01:51PM 4  MS. SAHARIA IS THAT WE WOULD MEET AND CONFER AND PROVIDE AN

01:51PM 5  UPDATED COPY BEFORE WE GET INTO IT WITH THE COURT.

01:51PM 6     THE COURT:  THAT SOUNDS GREAT.

01:51PM 7     MS. VOLKAR:  I'M HAPPY TO SUBMIT THAT ALONG WITH THE

01:51PM 8  WORD VERSION.

01:51PM 9     THE COURT:  OKAY.

01:51PM 10    MS. VOLKAR:  TO AID THE PARTIES IN PROVIDING THAT

01:51PM 11 UPDATED WORD DOCUMENT, THERE WERE TWO PORTIONS AT LEAST THAT I

01:51PM 12 WAS CONFUSED ABOUT, AND IT MAY JUST BE ME.

01:51PM 13    ON THE CMS REPORT INSTRUCTION, NOT TO REOPEN THAT

01:51PM 14 DISCUSSION, BUT I THOUGHT THE COURT MIGHT HAVE BEEN TRENDING

01:51PM 15 TOWARDS NOT GIVING THE INSTRUCTION.

01:51PM 16    I THOUGHT IN LIGHT OF THE PARTIES' DISPUTE ABOUT THE STATE

01:51PM 17 OF THE RECORD, I LOST WHERE WE LANDED WITH RESPECT TO THE

01:51PM 18 ACTUAL INSTRUCTION.

01:51PM 19    THE COURT:  I WANT TO READ THE PORTIONS OF THE

01:51PM 20 TRANSCRIPTS JUST TO GIVE ME SOME GUIDANCE AND GREATER

01:51PM 21 INFORMATION, SO WE'RE GOING TO DEFER THAT ONE FOR NOW.

01:52PM 22    YOU CAN PUT AN ASTERISK, WHATEVER IT IS, IN YOUR -- IN THE

01:52PM 23 WORD DOC JUST AS A PLACEHOLDER.

01:52PM 24    MS. VOLKAR:  WILL DO, YOUR HONOR.

01:52PM 25    AGAIN, THE GOVERNMENT, SO IT WASN'T LOST IN OUR OTHER

8816

01:52PM 1    ARGUMENT, THINKS EITHER NO INSTRUCTION OR A GENERIC INSTRUCTION

01:52PM 2    FOR ALL EVIDENCE THAT WAS ADMITTED FOR A LIMITED PURPOSE SHOULD

01:52PM 3    BE GIVEN.

01:52PM 4            THE COURT:  OKAY.

01:52PM 5            MS. VOLKAR:  I DON'T KNOW IF MR. LEMENS WANTS TO

01:52PM 6    RESPOND TO THAT.

01:52PM 7        THE LAST PORTION I WANTED TO CLARIFY WAS ON KNOWINGLY, SO

01:52PM 8    I'LL LET MR. LEMENS RESPOND TO THAT IF HE WANTS TO.

01:52PM 9            THE COURT:  OKAY.

01:52PM 10           MR. LEMENS:  I DON'T HAVE ANYTHING FURTHER ON THAT

01:52PM 11   OTHER THAN WE'LL AWAIT THE COURT'S GUIDANCE AFTER IT HAS A

01:52PM 12   CHANCE TO REVIEW THE TRANSCRIPT.

01:52PM 13           THE COURT:  OH, I'M SORRY, MS. SAHARIA, DO YOU HAVE

01:52PM 14   SOMETHING?

01:52PM 15           MR. LEMENS:  I'M GOING TO LET HER SPEAK TO THE

01:52PM 16   KNOWINGLY ISSUE.

01:52PM 17           THE COURT:  OKAY.

01:52PM 18           MS. SAHARIA:  I DON'T HAVE ANYTHING, YOUR HONOR.

01:52PM 19       BUT IF MS. VOLKAR WANTS TO DISCUSS KNOWINGLY, THEN I'M

01:52PM 20   HAPPY TO DISCUSS IT.

01:52PM 21       I DON'T HAVE ANYTHING ELSE TO RAISE.

01:52PM 22           THE COURT:  OKAY.

01:52PM 23           MS. VOLKAR:  THIS IS JUST ANOTHER CLARIFICATION.  IT

01:52PM 24   WAS RIGHT BEFORE OUR BREAK, WE WERE DISCUSSING THE KNOWINGLY

01:52PM 25   INSTRUCTION ON PAGE 31.

01:53PM 1      WE DISCUSSED BOTH THE GOVERNMENT'S ADDITION, WHICH THE

01:53PM 2    DEFENSE OBJECTS TO IN YELLOW, THAT WAS OF COURSE BRACKETED

01:53PM 3    LANGUAGE FROM THE MODEL, AND THEN WE ALSO DISCUSSED THE

01:53PM 4    DEFENSE'S ADDED PORTIONS ON LINES 7 TO 9 THAT THE GOVERNMENT

01:53PM 5    OBJECTS TO.

01:53PM 6      I WASN'T CLEAR WHERE THE COURT LANDED, IF WE SHOULD MAKE

01:53PM 7    ANY CHANGES TO THAT, RESUBMIT IT AS IS, OR IF THE COURT HAD ANY

01:53PM 8    DIRECTION TO GIVE TO THE PARTIES AT THIS TIME.

01:53PM 9          THE COURT:  SURE.  WELL, MY DIRECTION IS KEEP THIS

01:53PM 10   AS A PLACE HOLDER AND I'LL HAVE MS. KRATZMANN PROBABLY SEND YOU

01:53PM 11   AN EMAIL ABOUT THIS.  I'LL DO THAT WHEN I LOOK AT THESE OTHER

01:53PM 12   TRANSCRIPTS.

01:53PM 13     SO JUST KEEP IT OPEN.  KEEP IT OPEN.

01:53PM 14          MS. SAHARIA:  OKAY.

01:53PM 15          MS. VOLKAR:  THANK YOU.  THAT'S ALL I WANTED TO

01:53PM 16   CLARIFY.

01:53PM 17          THE COURT:  I DID HAVE -- ANYTHING ELSE,

01:53PM 18   MS. SAHARIA?

01:53PM 19          MS. SAHARIA:  NO, YOUR HONOR.

01:53PM 20          THE COURT:  OH, I'M SORRY.  MR. LEACH, ANYTHING?

01:53PM 21          MR. LEACH:  THERE WAS ONE OTHER MATTER, AND I'M SO

01:53PM 22   SORRY TO DO THIS PIECEMEAL.

01:53PM 23          THE COURT:  NO, NOT AT ALL.

01:53PM 24          MR. LEACH:  AND I HAVEN'T HAD A CHANCE TO TALK TO

01:53PM 25   MS. SAHARIA ABOUT THIS, BUT IN THE INSTRUCTION FOR WIRE FRAUD,

01:54PM 1    WE CURRENTLY JUST HAVE THE DATES AND THE DOLLAR AMOUNTS OF THE

01:54PM 2    WIRES.  THIS IS ON PAGE 26.

01:54PM 3            THE COURT:  ECF 26, 25 OF THE DOCUMENT.

01:54PM 4            MR. LEACH:  YES, ECF 26, 25 OF THE DOCUMENT.

01:54PM 5        BEGINNING AT LINE 8 THROUGH 19, WE'RE IDENTIFYING THE

01:54PM 6    WIRES BY DATES AND DOLLAR AMOUNT.

01:54PM 7        IT MAY BE HELPFUL TO THE JURY TO ALSO IDENTIFY THE

01:54PM 8    PARTICULAR INVESTOR THAT IT RELATES TO, AND WE WOULD RECOMMEND

01:54PM 9    INSERTING, AT THE END OF EACH SENTENCE, A PARENTHETICAL JUST

01:54PM 10   RELATING TO "AND THE INVESTOR NAME."

01:54PM 11           THE COURT:  THAT MIGHT BE HELPFUL.

01:54PM 12           MS. SAHARIA:  MY INITIAL INSTINCT IS TO SAY THAT

01:54PM 13   THOSE INVESTOR NAMES ARE NOT IN THE INDICTMENT.

01:55PM 14       THE PATIENT NAMES ARE IN THE INDICTMENT, WHICH IS WHY THEY

01:55PM 15   WERE INCLUDED, BUT THE INVESTOR NAMES ARE NOT.

01:55PM 16       I ASSUME, OF COURSE, THE GOVERNMENT WILL PROBABLY PUT UP A

01:55PM 17   CHART FOR THE JURY IN CLOSING THAT SHOWS THE NAMES

01:55PM 18   CORRESPONDING TO THE COUNTS AND THE DOLLAR FIGURES, BUT I'M NOT

01:55PM 19   SURE THAT WE SHOULD BE PUTTING THE NAMES IN WHEN IT'S NOT IN

01:55PM 20   THE INDICTMENT.

01:55PM 21       BUT LET ME TALK TO MY TEAM AND WE'LL CONSIDER THE REQUEST.

01:55PM 22           THE COURT:  WELL, IF IT'S PUT IN PARENTHETICALLY, I

01:55PM 23   THINK IT'S FOR IDENTIFICATION TO AID, AS LONG AS THERE'S

01:55PM 24   AGREEMENT THAT THE PARTY RELATES TO THE SPECIFIC COUNT.

01:55PM 25           MS. SAHARIA:  I THINK THAT WE KNOW WHICH PARTY

8819

01:55PM 1    RELATES TO WHICH COUNT.  SO LET ME CONFER WITH MR. LEACH ABOUT

01:55PM 2    THAT.

01:55PM 3         THE COURT:  OKAY.  I DON'T SEE THE REAL HARM IN

01:55PM 4    THAT.  I DON'T SEE ANY CONFUSION.  IT WOULD PROBABLY BE MORE

01:55PM 5    HELPFUL TO THE JURY.  THEY HAVE GOT JURY BINDERS, REMEMBER,

01:55PM 6    THAT THEY HAVE ALL OF THE PARTIES AND WITNESSES.

01:55PM 7         MS. SAHARIA:  UNDERSTOOD.

01:55PM 8         THE COURT:  I HAD A COUPLE THAT I WANTED TO, A

01:55PM 9    COUPLE OF THOUGHTS THAT I WANTED TO RAISE, AND I DON'T KNOW WHO

01:55PM 10   IS GOING TO SPEAK TO THESE FROM EACH SIDE, BUT I THINK

01:56PM 11   MR. DOWNEY TALKED ABOUT TIMING OF ARGUMENT, AND MAYBE THAT WAS

01:56PM 12   SOMETHING THAT MR. SCHENK WAS TALKING ABOUT AS FAR AS WE KNOW

01:56PM 13   WE HAVE THE 16TH AND 17TH.

01:56PM 14        MS. SAHARIA:  I'LL LET MR. DOWNEY COMMENT ON IT,

01:56PM 15   YOUR HONOR.

01:56PM 16        THE COURT:  OKAY, THANK YOU.

01:56PM 17     AND I THINK YOU WANTED TO DISCUSS TIMING SUCH THAT THERE

01:56PM 18   WON'T BE, OR WE CAN MINIMIZE INTERRUPTIONS OF YOUR ARGUMENTS.

01:56PM 19        MR. DOWNEY:  I THINK THAT MR. SCHENK AND I TALKED

01:56PM 20   ABOUT THIS DURING THE LUNCH BREAK, AND I THINK HE'S NOT YET

01:56PM 21   QUITE SURE HOW LONG HE'LL BE.

01:56PM 22        THE COURT:  OKAY.

01:56PM 23        MR. DOWNEY:  BUT IT SEEMS LIKE HE THINKS HE'LL BE

01:56PM 24   LONG ENOUGH THAT REALISTICALLY THE DEFENSE ARGUMENT WILL

01:56PM 25   PROBABLY HAVE TO BE DIVIDED BETWEEN THURSDAY AFTERNOON, THE

8820

| | | |
|---|---|---|
| 01:56PM | 1 | 16TH, AND THEN EXTEND INTO FRIDAY MORNING. |
| 01:56PM | 2 | SO I'LL DO MY BEST, AS WE GET CLOSER, TO GIVE THE COURT A |
| 01:56PM | 3 | SENSE OF WHAT THE DIVISION IS. |
| 01:57PM | 4 | THE COURT:  THANK YOU.  THAT WILL BE HELPFUL SO I |
| 01:57PM | 5 | KNOW WHEN TO DO BREAKS AND WHEN NOT. |
| 01:57PM | 6 | I DON'T WANT TO INTERRUPT YOUR ARGUMENTS UNTOWARDLY IF I |
| 01:57PM | 7 | CAN AVOID IT. |
| 01:57PM | 8 | MR. DOWNEY:  RIGHT. |
| 01:57PM | 9 | THE COURT:  AND IF WE NEED TO HAVE ANY OTHER BREAKS, |
| 01:57PM | 10 | YOU'LL FACTOR THAT INTO YOUR PRESENTATIONS, TOO. |
| 01:57PM | 11 | MR. DOWNEY:  THAT'S RIGHT.  AND I'LL GIVE -- I DON'T |
| 01:57PM | 12 | THINK IT WILL BE INCONSISTENT WITH THE WAY THAT WE'VE BROKEN |
| 01:57PM | 13 | DURING THE COURSE OF THE TRIAL.  BUT I'LL TALK TO MR. SCHENK IN |
| 01:57PM | 14 | ADVANCE ABOUT, YOU KNOW, HOW FREQUENTLY BREAKS WOULD PROBABLY |
| 01:57PM | 15 | BE APPROPRIATE. |
| 01:57PM | 16 | THE COURT:  OKAY. |
| 01:57PM | 17 | MR. SCHENK? |
| 01:57PM | 18 | MR. SCHENK:  JUST ONE QUESTION ON THAT, YOUR HONOR. |
| 01:57PM | 19 | IF THE ARGUMENT WAS GOING TO GO PAST A TIME WE WOULD TAKE |
| 01:57PM | 20 | BREAKS, 11:30, LET'S SAY, WOULD IT BE HELPFUL TO PLAN A BREAK |
| 01:57PM | 21 | AT 11:30, EVEN IF THE CLOSING ARGUMENT HASN'T BEEN COMPLETED BY |
| 01:57PM | 22 | THEN? |
| 01:57PM | 23 | THE COURT:  WELL, LET'S -- YOU KNOW, IT PROBABLY |
| 01:57PM | 24 | WOULD BE BEST IF WE CAN PLAN AHEAD AND I CAN INFORM THE JURY OF |
| 01:57PM | 25 | THAT. |

01:57PM 1    SOMETIMES, YOU KNOW, AS ARGUMENTS GO, I DON'T WANT THEM TO

01:57PM 2    GET RESTLESS, AND IF THEY KNOW THERE'S A TIME PERIOD WHEN

01:58PM 3    THEY'RE GOING TO BREAK, THAT'S SOMETIMES HELPFUL.

01:58PM 4        SO IF YOU CAN COORDINATE THAT, I THINK THAT WOULD BE

01:58PM 5    HELPFUL FOR EVERYBODY.

01:58PM 6            MR. DOWNEY:  WE'LL TALK ABOUT THAT, YOUR HONOR.  I

01:58PM 7    THINK WE'LL KNOW MORE AS WE GET CLOSER.

01:58PM 8            THE COURT:  RIGHT.

01:58PM 9        WHAT ABOUT -- THE OTHER QUESTION THAT I ASKED YOU WAS YOUR

01:58PM 10   THOUGHTS, IF YOU HAVE ANY, ABOUT WHETHER OR NOT I SHOULD GIVE

01:58PM 11   THE JURY A COPY OF THE INSTRUCTIONS WHILE THEY'RE BEING

01:58PM 12   INSTRUCTED?  I TOLD YOU MY PRACTICE IS NOT TO DO THAT

01:58PM 13   REGULARLY.  THIS MIGHT BE A DIFFERENT CASE.

01:58PM 14       BUT I JUST WANTED TO REMIND YOU OF THAT.  GIVE IT SOME

01:58PM 15   THOUGHT.  YOU DON'T HAVE TO TELL ME NOW.

01:58PM 16       THEY DO -- EACH JUROR DOES GET AN INDIVIDUAL COPY OF THE

01:58PM 17   INSTRUCTIONS IN THE DELIBERATION ROOM.  EACH ONE HAS A COPY.

01:58PM 18   THE QUESTION IS, SHOULD I GIVE ONE TO THEM WHILE I'M

01:58PM 19   INSTRUCTING?  THAT'S UP TO YOU, OR NOT UP TO YOU, BUT I WANT

01:58PM 20   YOUR INPUT ON THAT.

01:58PM 21       AND I ALSO WANTED TO ASK ABOUT -- I'VE LOOKED AT THE

01:58PM 22   INSTRUCTIONS.  I THINK I HAVE TALKED A LITTLE BIT ABOUT, I'LL

01:58PM 23   JUST USE THE TERM, HAISCHER AND THAT TYPE OF ARGUMENT AND/OR

01:59PM 24   CONCURRENT INSTRUCTION.

01:59PM 25       I DIDN'T SEE ANY IN HERE, WHICH MEANS TO ME THE PARTIES

8822

01:59PM 1     AREN'T INTENDING TO INFORM THE JURY OF THAT.

01:59PM 2          THE NEXT QUESTION I HAVE IS, DOES THE COURT NEED TO BE

01:59PM 3     MINDFUL, CONCERNED ABOUT ANY COMMENT ABOUT HAISCHER-TYPE

01:59PM 4     CONDUCT, MATERIAL THAT IS GOING TO BE PRESENTED TO THE JURY

01:59PM 5     THAT MIGHT EITHER RAISE AN OBJECTION OR BE OBJECTIONABLE

01:59PM 6     BECAUSE IT'S -- THERE'S NO FOUNDATION?

01:59PM 7          FOR EXAMPLE, EXPERT TESTIMONY, ET CETERA, THOSE TYPES OF

01:59PM 8     THINGS.

01:59PM 9          I'M JUST LOOKING AHEAD AT THAT TO AVOID AN OBJECTION

01:59PM 10    DURING EITHER OF YOUR CLOSINGS, WHICH I KNOW THAT NO LAWYER

01:59PM 11    LIKES.

01:59PM 12         I JUST RAISE IT AS AN ISSUE.  IT'S AT LEAST SOMETHING I'M

01:59PM 13    THINKING ABOUT.

01:59PM 14              MR. DOWNEY:  WE'LL THINK ABOUT THAT, YOUR HONOR.

02:00PM 15         MY SENSE IS THAT I THINK THE INSTRUCTION ACTUALLY -- IT'S

02:00PM 16    A LITTLE AMBIGUOUS FROM THE RECORD IN HAISCHER BECAUSE I THINK

02:00PM 17    THE INSTRUCTION GIVEN THE SECOND TIME AFTER THE REMAND WAS WITH

02:00PM 18    THE BENEFIT OF AN EXPERT --

02:00PM 19              THE COURT:  RIGHT.

02:00PM 20              MR. DOWNEY:  -- BUT I THINK THE INSTRUCTIONS

02:00PM 21    NEVERTHELESS ON CORE INTENT BOTH TIMES KIND OF MIRRORED CORE

02:00PM 22    INTENT INSTRUCTIONS, SO I DON'T KNOW THAT THERE'S ANY ISSUE

02:00PM 23    AROUND THAT.

02:00PM 24         BUT WE'LL LOOK AT THAT IN LIGHT OF YOUR HONOR'S COMMENT.

02:00PM 25              THE COURT:  RIGHT.  I JUST -- YOU KNOW, I HOPE

02:00PM   1      YOU'LL PARDON ME, BUT I'M JUST LOOKING AHEAD THINKING, WELL, I

02:00PM   2      COULD SEE A POTENTIAL WHERE THERE MIGHT BE AN ARGUMENT THAT,

02:00PM   3      YOU KNOW -- AND YOU'LL PARDON ME -- THAT OVERSTATES THE

02:00PM   4      EVIDENCE, IF YOU WILL, THAT IS PERMISSIBLE THAT OVERSTATES THE

02:00PM   5      EVIDENCE WITHOUT, FOR EXAMPLE, EXPERT TESTIMONY OR THOSE TYPES

02:00PM   6      OF THINGS.

02:00PM   7          AND THIS IS RELATED REALLY TO, LET ME JUST BE CLEAR, STATE

02:00PM   8      OF MIND TYPE ISSUES AND WHAT IS NEEDED FOR THAT.

02:00PM   9              MR. DOWNEY:  I THINK I UNDERSTAND THE GIST OF

02:00PM  10      YOUR HONOR'S COMMENTS AND I DON'T ANTICIPATE IT.

02:01PM  11          BUT I WOULD ALSO SAY THAT I THINK THERE ARE A NUMBER OF

02:01PM  12      ISSUES, IN LIGHT OF THE FORM IN WHICH EVIDENCE HAS BEEN

02:01PM  13      ADMITTED ON BOTH SIDES, THAT WE'RE MINDFUL OF THAT MIGHT RAISE

02:01PM  14      POTENTIAL ISSUES DURING THE GOVERNMENT'S CLOSING, AND I THINK

02:01PM  15      IF IT'S HELPFUL TO THE COURT, YOU KNOW, WE WOULD CERTAINLY BE

02:01PM  16      HAPPY TO FLAG THOSE IN ADVANCE TO -- YOU KNOW, BECAUSE THERE

02:01PM  17      CERTAINLY ARE -- I THINK, AS YOUR HONOR SAW TODAY, THERE'S

02:01PM  18      CONFUSION AROUND A PARTICULAR PIECE OF EVIDENCE WHICH HAS BEEN

02:01PM  19      MUCH DISCUSSED, BUT THERE'S BEEN A GOOD DEAL OF OTHER EVIDENCE

02:01PM  20      ADMITTED FOR A LIMITED PURPOSE, AND I WOULDN'T WANT TO SEE THAT

02:01PM  21      PURPOSE EXCEEDED IN THE GOVERNMENT'S CLOSING.

02:01PM  22              MR. SCHENK:  I DON'T HAVE A RESPONSE TO THAT LAST

02:01PM  23      COMMENT.

02:01PM  24          I APPRECIATE THE COURT RAISING THE CONCERNS REGARDING THE

02:01PM  25      LACK OF EXPERT TESTIMONY AND WHETHER THAT AFFECTS THE ARGUMENTS

02:01PM  1    THAT CAN BE MADE.

02:01PM  2         I THINK IT MIGHT BE ONE OF THOSE THAT WE JUST HAVE TO SEE

02:01PM  3    IT.  IT WOULD BE NICE TO AVOID THOSE ISSUES DURING CLOSING.

02:01PM  4    WE'LL THINK ON THAT, AND IF WE HAVE SOME FURTHER SUGGESTIONS,

02:02PM  5    WE'LL MAKE THEM TO THE COURT.

02:02PM  6         THE COURT:  RIGHT.  I JUST WANTED TO SHARE WITH YOU

02:02PM  7    MY THOUGHT AS WE'RE GOING INTO THE WEEKEND WHEN YOU'LL BE DOING

02:02PM  8    YOUR PREPARATIONS AND ONGOING.

02:02PM  9         SO WE'LL SEE WHERE WE ARE WITH THIS.  I'M GOING TO BE HERE

02:02PM 10    MONDAY MORNING.

02:02PM 11         I HOPE THAT WE CAN GET THIS DONE TODAY, "THIS" MEANING THE

02:02PM 12    INSTRUCTIONS, TODAY SO YOU CAN HAVE THEM.

02:02PM 13         BUT I'LL BE HERE ON MONDAY.  YOU KNOW I'M NOT HERE TUESDAY

02:02PM 14    AND WEDNESDAY.

02:02PM 15         MAYBE WE SHOULD PLAN ON TOUCHING BASE IN ANY EVENT MONDAY

02:02PM 16    SOMETIME JUST TO GET A STATUS ON THINGS.

02:02PM 17         MR. DOWNEY:  THAT WOULD BE FINE, YOUR HONOR.

02:02PM 18         CAN I JUST RECONFIRM ON THE SCHEDULE, WE'LL BE HERE ON THE

02:02PM 19    16TH AND 17TH?

02:02PM 20         THE COURT:  THAT'S RIGHT.

02:02PM 21         MR. DOWNEY:  AND THEN THE JURY WILL BE DELIBERATING

02:02PM 22    THE 20TH, THE 21ST, AND THE 23RD.

02:02PM 23         THE COURT:  CORRECT.

02:02PM 24         MR. DOWNEY:  AND THEN FROM THERE, DO WE SEE WHERE WE

02:02PM 25    ARE?

8825

02:02PM 1          THE COURT:  I THINK SO.  I BELIEVE -- MY

02:02PM 2     RECOLLECTION IS THAT THE JURY TOLD US THAT THEY WILL DELIBERATE

02:02PM 3     THAT WEEK, THE WEEK OF THE 20TH, SAVE FOR THE 22ND.

02:03PM 4          MR. DOWNEY:  THAT'S RIGHT.

02:03PM 5          IT WOULD NOT BE MY PREFERENCE, FRANKLY, YOUR HONOR, TO ASK

02:03PM 6     THEM TO COME IN THE WEEK OF THE 27TH JUST BECAUSE OF THE EFFECT

02:03PM 7     OF THE -- THAT THAT MIGHT HAVE ON THE JURY AND RECOGNIZING THE

02:03PM 8     HOLIDAY.

02:03PM 9          MY PREFERENCE, JUST TO LET THE COURT KNOW, WOULD BE THAT

02:03PM 10    THEY BE ASKED TO COME BACK ON THE 3RD IF THEY HAVEN'T REACHED A

02:03PM 11    VERDICT BY THE 23RD.  BUT I'LL LEAVE THAT FOR THE COURT'S

02:03PM 12    CONSIDERATION.

02:03PM 13         MR. SCHENK:  I THINK FIRST WE CAN DEAL WITH THAT ON

02:03PM 14    THE 23RD, AND TO SOME EXTENT I WOULD THINK THAT WE DEFER TO THE

02:03PM 15    JURY AND WHAT THEIR DESIRES ARE, OBVIOUSLY IF THE COURT IS

02:03PM 16    AVAILABLE.

02:03PM 17         IF THE COURT IS NOT AVAILABLE, THEN WE HAVE OUR ANSWER.

02:03PM 18         BUT IF THE JURY IS INTERESTED IN DELIBERATING AND THINKS

02:03PM 19    THAT THEY WILL BE HERE AND THEY CAN BE PRODUCTIVE, I DON'T KNOW

02:03PM 20    THAT WE SHOULD ACTIVELY DISCOURAGE THAT.

02:03PM 21         BUT MAYBE THAT'S SOMETHING TO TAKE UP, IF NECESSARY, ON

02:03PM 22    THE 23RD.

02:04PM 23         THE COURT:  RIGHT.  I CAN'T RECALL IF WE TOLD THEM

02:04PM 24    THAT WE WOULD BE AVAILABLE THE WEEK OF THE 27TH.

02:04PM 25         I MEAN, I WILL BE IF THAT'S NEEDED, BUT I THINK I TOLD

8826

02:04PM 1    THEM WE COULD -- MAYBE I TOLD YOU WE COULD ARGUE AND THEN PUT

02:04PM 2    THE WHOLE -- THEIR DELIBERATIONS OVER TO THE FIRST OF THE YEAR.

02:04PM 3    THAT WASN'T DESIRABLE.

02:04PM 4         MR. DOWNEY:  I THINK MY THOUGHT WOULD SIMPLY BE THAT

02:04PM 5    THEY BE TOLD AT SOME POINT THAT IF THEY'RE NOT DONE BY THE

02:04PM 6    23RD, THEY HAVE THE OPTION OF COMING BACK ON THE 3RD AND NOT

02:04PM 7    BEING HERE ON THE 27TH SO IT DOESN'T HAVE ANY UNDUE EFFECT ON

02:04PM 8    THEIR DELIBERATIONS.

02:04PM 9         THE COURT:  ALL RIGHT.  WELL, I'M ALWAYS LEERY ABOUT

02:04PM 10   TRYING TO GIVE ANY KIND OF LIMITS OR TIME LIMITATIONS OR THINGS

02:04PM 11   TO THEM.  I DON'T WANT TO DISRUPT THAT DELIBERATIVE PROCESS.

02:04PM 12        MR. DOWNEY:  RIGHT.

02:04PM 13        THE COURT:  SO LET'S JUST -- YEAH.  OKAY.  WE'LL

02:05PM 14   KEEP AN EYE ON IT.

02:05PM 15        MR. DOWNEY:  GOOD ENOUGH.  THANKS, YOUR HONOR.

02:05PM 16        THE COURT:  OKAY.

02:05PM 17        THE CLERK:  COURT IS ADJOURNED.

02:05PM 18      (COURT ADJOURNED AT 2:05 P.M.)

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15                    _____

16                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8076
17

18                    _____

19                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
20

21                    DATED:  DECEMBER 10, 2021

22

23

24

25