1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

    UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
6                                    )
                        PLAINTIFF,   )  SAN JOSE, CALIFORNIA
7                                    )
              VS.                    )  VOLUME 45
8                                    )
    ELIZABETH A. HOLMES,             )  DECEMBER 13, 2021
9                                    )
                        DEFENDANT.   )  PAGES 8827 - 8898
10   _____ )

11
                     TRANSCRIPT OF TRIAL PROCEEDINGS
12               BEFORE THE HONORABLE EDWARD J. DAVILA
                     UNITED STATES DISTRICT JUDGE
13
    A P P E A R A N C E S:
14
    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                         BY:  JOHN C. BOSTIC
                                JEFFREY B. SCHENK
16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
17
                           BY:  ROBERT S. LEACH
18                              KELLY VOLKAR
                           1301 CLAY STREET, SUITE 340S
19                         OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
    OFFICIAL COURT REPORTERS:
22                              IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                CERTIFICATE NUMBER 8074
23                              LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER

1

A P P E A R A N C E S: (CONT'D)

2

3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                             BY:  KEVIN M. DOWNEY
4                                 LANCE A. WADE
                                  KATHERINE TREFZ
5                                 AMY SAHARIA
                                  ANDREW LEMENS
6                                 SEEMA ROPER
                                  J.R. FLEURMONT
7                                 RICHARD CLEARY
                                  PATRICK LOOBY
8                            725 TWELFTH STREET, N.W.
                             WASHINGTON, D.C. 20005
9
                             LAW OFFICE OF JOHN D. CLINE
10                           BY:  JOHN D. CLINE
                             ONE EMBARCADERO CENTER, SUITE 500
11                           SAN FRANCISCO, CALIFORNIA 94111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|      |    |                                                                          |
|------|----|--------------------------------------------------------------------------|
|      | 1  | SAN JOSE, CALIFORNIA                    DECEMBER 13, 2021                  |
| 09:07AM | 2  | P R O C E E D I N G S                                                     |
| 09:07AM | 3  | (COURT CONVENED AT 9:07 A.M.)                                             |
| 09:07AM | 4  | (JURY OUT AT 9:07 A.M.)                                                   |
| 09:07AM | 5  | THE COURT:  THANK YOU.  PLEASE BE SEATED.                                 |
| 09:07AM | 6  | WE'RE ON THE RECORD IN THE HOLMES MATTER.  ALL COUNSEL ARE                |
| 09:07AM | 7  | PRESENT AND MS. HOLMES IS PRESENT.                                        |
| 09:07AM | 8  | GOOD MORNING EVERYONE.  WE'RE HERE TO DISCUSS SOME FINAL                  |
| 09:07AM | 9  | ISSUES ON THE INSTRUCTIONS, JURY INSTRUCTIONS.                            |
| 09:07AM | 10 | I DID RECEIVE YOUR SUBMISSIONS OVER THE WEEKEND.  THANK                   |
| 09:08AM | 11 | YOU FOR THOSE.  THEY WERE HELPFUL.                                        |
| 09:08AM | 12 | THIS IS 1191 AND 1192, AND THAT RELATED TO THE 4621A AND B                |
| 09:08AM | 13 | THAT WE HAD SOME CONVERSATIONS ABOUT.                                     |
| 09:08AM | 14 | I KNOW THERE'S -- WE'LL TALK ABOUT THAT, AND THERE ARE A                  |
| 09:08AM | 15 | FEW OTHER INSTRUCTIONS ALSO THAT I THINK I ASKED YOU TO, AT               |
| 09:08AM | 16 | LEAST ONE, TO MEET AND CONFER ABOUT, AND SOME OTHERS THAT I HAD           |
| 09:08AM | 17 | TAKEN UNDER SUBMISSION.                                                   |
| 09:08AM | 18 | LET ME ASK THE PARTIES WHO ARE GOING TO SPEAK TO THESE,                   |
| 09:08AM | 19 | FIRST OF ALL, IS THERE ANYTHING YOU WOULD LIKE ME TO KNOW?                |
| 09:08AM | 20 | MAYBE YOU'VE HAD SOME CONFERENCE AND REACHED SOME OTHER                   |
| 09:08AM | 21 | RESOLUTIONS, HE ASKED OPTIMISTICALLY?                                     |
| 09:08AM | 22 | GOOD MORNING, MS. VOLKAR.                                                 |
| 09:08AM | 23 | MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  KELLY VOLKAR                      |
| 09:08AM | 24 | ON BEHALF OF THE UNITED STATES.                                           |
| 09:09AM | 25 | MAY I REMOVE MY MASK?                                                     |

09:09AM 1          THE COURT:  YES, AND MS. SAHARIA LIKEWISE.

09:09AM 2     THANK YOU.  GOOD MORNING.

09:09AM 3          MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:09AM 4          MS. VOLKAR:  WHILE FRIDAY FEELS LIKE A LONG TIME

09:09AM 5     AGO, I THINK, IF I UNDERSTOOD THE COURT'S QUESTION CORRECTLY,

09:09AM 6     THE PARTIES DID MEET AND CONFER AT LEAST ABOUT THE TRADE

09:09AM 7     SECRETS INSTRUCTION, AND I'LL LET MS. SAHARIA SPEAK TO THAT.

09:09AM 8          MY UNDERSTANDING IS THAT THE DEFENSE WITHDREW ITS REQUEST

09:09AM 9     IN THAT REGARD, AND I THINK THE REMAINDER OF THE MEET AND

09:09AM 10    CONFER IS REFLECTED IN THE SUBMISSION WE SENT ON FRIDAY.

09:09AM 11         BUT IF I'VE MISCHARACTERIZED ANYTHING, I'LL TURN IT OVER

09:09AM 12    TO MS. SAHARIA.

09:09AM 13         THE COURT:  OKAY.  THANK YOU.

09:09AM 14    GOOD MORNING.

09:09AM 15         MS. SAHARIA:  THAT'S CORRECT, YOUR HONOR.  WE DID

09:09AM 16    MEET AND CONFER WITH THE GOVERNMENT FOLLOWING COURT ON FRIDAY,

09:09AM 17    AND THE RESULT OF THAT MEET AND CONFER IS REFLECTED IN THE

09:09AM 18    DOCUMENT THAT I EMAILED MS. KRATZMANN ON FRIDAY EVENING.

09:09AM 19         WE WERE ABLE TO REACH AGREEMENT WITH THE GOVERNMENT ON A

09:09AM 20    NUMBER OF THE OUTSTANDING ISSUES, FOR EXAMPLE, THE ALLEGED

09:09AM 21    VIOLATIONS OR REGULATIONS INSTRUCTION.

09:09AM 22         SO EVERYTHING THAT IS IN THAT DOCUMENT THAT IS NOT

09:09AM 23    HIGHLIGHTED, THE PARTIES EITHER REACHED AGREEMENT OR THE

09:10AM 24    DOCUMENT SIMPLY REFLECTS THE COURT'S RULINGS AS REFLECTED ON

09:10AM 25    THE RECORD FROM FRIDAY.

09:10AM 1      THE ONLY ISSUES THAT WE UNDERSTOOD TO BE REMAINING FOR THE

09:10AM 2    COURT'S RESOLUTION WERE THE ONES HIGHLIGHTED, AND MS. VOLKAR IS

09:10AM 3    RIGHT THAT WE ELECTED TO WITHDRAW OUR REQUEST FOR A TRADE

09:10AM 4    SECRET INSTRUCTION.

09:10AM 5           THE COURT:  OKAY.

09:10AM 6           MS. SAHARIA:  I'M PREPARED TO ADDRESS THOSE

09:10AM 7    INSTRUCTIONAL ISSUES, BUT MR. LEMENS IS GOING TO ADDRESS THE

09:10AM 8    FILINGS WITH RESPECT TO THE CMS REPORT.

09:10AM 9      SO IF YOUR HONOR WANTS TO START THERE?

09:10AM 10          THE COURT:  WELL, WHILE YOU'RE AT THE LECTERN, LET'S

09:10AM 11   TALK ABOUT SOME OF THE OTHERS.  I BELIEVE I HAVE THE PACKET

09:10AM 12   THAT YOU SUBMITTED ON SATURDAY -- FRIDAY NIGHT, PARDON ME.

09:10AM 13     JURY INSTRUCTION NUMBER 17, THIS IS WILLFULLY.  I KNOW THE

09:10AM 14   GOVERNMENT -- I NOTE THE NOTE BEGINNING ON LINE 6, THE

09:10AM 15   GOVERNMENT OBJECTS TO THIS.

09:11AM 16     THE COURT'S LANGUAGE THAT IT HAD TALKED ABOUT APPEARS AT

09:11AM 17   LINES 3 AND 4, THAT SENTENCE.

09:11AM 18     ANYTHING FURTHER ON THIS, MS. VOLKAR?

09:11AM 19          MS. VOLKAR:  NO, YOUR HONOR.

09:11AM 20   THE GOVERNMENT RESTS ON ITS PRIOR ARGUMENTS.

09:11AM 21          THE COURT:  ALL RIGHT.  THANK YOU.

09:11AM 22          MS. SAHARIA:  NOTHING FURTHER, YOUR HONOR.

09:11AM 23          THE COURT:  ALL RIGHT.  THANK YOU.

09:11AM 24     I'LL GIVE THIS, AS I INDICATED, LINES 3 AND 4, I'LL GIVE

09:11AM 25   THIS OVER THE GOVERNMENT'S OBJECTIONS.

09:11AM 1      INSTRUCTION 20.  WE HAD DISCUSSION ABOUT IDENTIFYING THE

09:11AM 2  INDIVIDUALS RELATED TO EACH CHARGE, AND I SEE INSTRUCTION 20

09:11AM 3  CAPTURES THAT.

09:11AM 4      MS. SAHARIA:  YES, WE DO OBJECT TO THIS.

09:11AM 5      PROVING THE WIRES IS AN ELEMENT OF THE GOVERNMENT'S BURDEN

09:11AM 6  OF PROOF.  IT DOES BEAR THAT BURDEN OF PROOF TO PROVE THE WIRES

09:11AM 7  BEYOND A REASONABLE DOUBT.  THAT INCLUDES PROVING THE FACT OF

09:12AM 8  THE WIRES AND WHO THEY RELATE TO, THAT THEY WERE THERANOS

09:12AM 9  INVESTORS.

09:12AM 10      IT'S OUR POSITION THAT ADDING THESE NAMES INTO THE

09:12AM 11  INSTRUCTIONS TO THE JURY IMPROPERLY RELIEVES THE GOVERNMENT OF

09:12AM 12  PART OF ITS BURDEN OF PROOF TO PROVE THESE WIRES BEYOND A

09:12AM 13  REASONABLE DOUBT, AND FOR THAT REASON IT WOULD BE IMPROPER TO

09:12AM 14  PUT THEM IN THE INSTRUCTIONS.

09:12AM 15      THE COURT:  ALL RIGHT.  THANK YOU.

09:12AM 16      MS. VOLKAR:  YOUR HONOR, I THINK IT -- THE

09:12AM 17  GOVERNMENT'S POSITION IS THAT THIS IS SIMPLY IDENTIFYING FOR

09:12AM 18  THE JURY TO MAKE IT A LITTLE BIT EASIER THAN JUST THE DOLLAR

09:12AM 19  FIGURES, WHICH COUNT RELATES TO WHICH INVESTOR VICTIM WHO

09:12AM 20  TESTIFIED.

09:12AM 21      I BELIEVE AT THE OUTSET THE INSTRUCTIONS SAY THE

09:12AM 22  GOVERNMENT MUST PROVE ALL ASPECTS BEYOND A REASONABLE DOUBT.  I

09:12AM 23  DO NOT BELIEVE IT RELIEVES THE GOVERNMENT OF ANY BURDEN.

09:12AM 24      THE COURT:  THANK YOU.

09:12AM 25      IS THERE CONCERN, MS. SAHARIA, THAT THE JURY MIGHT LOOK AT

09:12AM 1    THE DECEMBER 30TH ALLEGATIONS REGARDING MR. EISENMAN AND

09:12AM 2    SOMEHOW CONFUSE THAT WITH THE COUNT 7, THE 99 MILLION RELATING

09:13AM 3    TO DYNASTY?  IS THAT PART OF YOUR CONCERN?

09:13AM 4         MS. SAHARIA:  NO.  MY CONCERN IS SIMPLY THAT THE

09:13AM 5    GOVERNMENT BEARS THE BURDEN TO PROVE THESE ALLEGATIONS AND

09:13AM 6    THESE NAMES DO NOT APPEAR IN THE INDICTMENT.

09:13AM 7         ONLY THE DATES AND THE DOLLAR FIGURES APPEAR IN THE

09:13AM 8    INDICTMENT.

09:13AM 9         SO IT'S THE GOVERNMENT'S BURDEN TO ARGUE TO THE JURY IN

09:13AM 10   CLOSING THAT THE EVIDENCE PROVED THESE WIRES.  I ASSUME PART OF

09:13AM 11   THAT WILL BE SHOWING ITS PROOF TO THE JURY AS TO WHICH WIRES

09:13AM 12   RELATE TO WHICH INDIVIDUALS.  THAT'S WHAT THEY WILL DO IN

09:13AM 13   CLOSING ARGUEMENT.

09:13AM 14   I JUST DON'T THINK IT'S APPROPRIATE FOR THE COURT TO BE

09:13AM 15   DOING THAT FOR THE GOVERNMENT TO MAKE IT EASIER FOR THEM.

09:13AM 16   MS. VOLKAR USED THE WORD "EASIER."  THAT'S OUR CONCERN,

09:13AM 17   THIS MAKES IT EASIER FOR THE GOVERNMENT TO PROVE ITS CASE

09:13AM 18   BEYOND A REASONABLE DOUBT WHEN INFORMATION THAT IS NOT IN THE

09:13AM 19   INDICTMENT THAT IS PART OF ITS BURDEN OF PROOF IS ADDED TO THE

09:13AM 20   JURY INSTRUCTIONS.

09:13AM 21        THE COURT:  IS IT YOUR CONCERN THAT IF THE COURT

09:13AM 22   GIVES THIS INSTRUCTION, IT GIVES ITS IMPRIMATUR THAT THE JURY

09:14AM 23   SHOULD FIND EACH OF THESE --

09:14AM 24        MS. SAHARIA:  YES, EXACTLY.

09:14AM 25        THE COURT:  -- FOR EACH OF THE VICTIMS INDICATED?

09:14AM  1    IS THAT YOUR CONCERN?

09:14AM  2              MS. SAHARIA:  THAT IS OUR CONCERN, THAT IT'S THE

09:14AM  3    GOVERNMENT'S BURDEN AND THE COURT SHOULD NOT BE HELPING THE

09:14AM  4    GOVERNMENT MEET THAT BURDEN.

09:14AM  5              THE COURT:  WELL, I THINK I MAY HAVE SUGGESTED THIS.

09:14AM  6    I'M NOT SURE IF THE GOVERNMENT DID, BUT I SUGGESTED THIS AS A

09:14AM  7    WAY TO ASSIST, TO HELP THE JURY -- NOT TO HELP THE GOVERNMENT,

09:14AM  8    NOT TO HELP THE DEFENSE -- BUT RATHER TO INFORM THE JURY AS TO

09:14AM  9    WHICH OF THESE ALLEGATIONS RELATED TO WHICH COUNT.

09:14AM  10        I THINK WE HAD TALKED ALSO ABOUT PROVIDING THE JURY WITH

09:14AM  11   ANOTHER DOCUMENT THAT CONTAINED ALL OF THIS INFORMATION.  WHAT

09:14AM  12   HAS HAPPENED TO THAT?

09:14AM  13             MS. SAHARIA:  SO WE HAD TALKED ABOUT THE POTENTIAL

09:14AM  14   OF GIVING THE JURY A REDACTED INDICTMENT.

09:14AM  15        WE HAVE GONE BACK AND LOOKED AT THE INDICTMENT.  WE DON'T

09:14AM  16   SEE A WAY TO FEASIBLY REDACT THE INDICTMENT.  THAT DOESN'T GIVE

09:15AM  17   THE JURY GOVERNMENT ARGUMENT IN THE INDICTMENT.

09:15AM  18        IT'S OUR POSITION THAT THE INSTRUCTIONS AS THEY'RE

09:15AM  19   CURRENTLY WORDED GIVES THE JURY THE CORE INFORMATION WITH

09:15AM  20   RESPECT TO WHAT IS THE OBJECT OF BOTH SCHEMES AND CONSPIRACIES,

09:15AM  21   THE RELEVANT DATES, AND THE DATES OF THE WIRES.

09:15AM  22        AND THEN PRESUMABLY THE PARTIES WILL ARGUE TO THE JURY IN

09:15AM  23   CLOSING THE MISREPRESENTATIONS THAT ARE ALLEGED IN THE

09:15AM  24   INDICTMENT.

09:15AM  25             SO IT'S OUR POSITION THAT NO FURTHER DOCUMENT NEEDS TO GO

09:15AM 1    BACK TO THE JURY.

09:15AM 2              THE COURT:  WELL, I THINK THIS IS A SWITCH IN YOUR

09:15AM 3    POSITION, OR YOUR TEAM'S POSITION.

09:15AM 4         YOU HAD ADVOCATED PREVIOUSLY THAT A DOCUMENT THAT INFORMS

09:15AM 5    FULSOME SHOULD BE PROVIDED TO THE JURY TO ASSIST THEM.  I

09:15AM 6    AGREED WITH THAT, AND THAT'S WHY I THOUGHT A REDACTED VERSION,

09:15AM 7    A SOMEHOW MODIFIED VERSION OF THE INDICTMENT WOULD BE HELPFUL.

09:16AM 8              MS. SAHARIA:  THAT'S RIGHT, YOUR HONOR.

09:16AM 9         I THINK I SAID AT THAT FIRST CONFERENCE THAT I WANTED TO

09:16AM 10   CONFER WITH MY TEAM ABOUT WHETHER WE THOUGHT IT COULD WORK TO

09:16AM 11   REDACT THE INDICTMENT, AND WE DID GO BACK AND LOOK AT THE

09:16AM 12   INDICTMENT.

09:16AM 13        AND WE DON'T SEE A GOOD WAY TO DO THAT, TO GIVE -- THAT

09:16AM 14   WOULDN'T GIVE THE JURY IMPROPER ARGUMENT FROM THE GOVERNMENT.

09:16AM 15        AS YOUR HONOR KNOWS, IT'S A SPEAKING INDICTMENT.  IT

09:16AM 16   CONTAINS, YOU KNOW, LOTS OF ALLEGATIONS THROUGHOUT THE

09:16AM 17   INDICTMENT.

09:16AM 18        AND SO WE JUST DIDN'T SEE A GOOD WAY TO DO THAT.

09:16AM 19        SO WE DO THINK THAT AT THE TIME THAT WE FIRST MET, SOME OF

09:16AM 20   THE LANGUAGE THAT IS NOW IN THESE INSTRUCTIONS WITH RESPECT TO

09:16AM 21   THE OBJECTS OF THE VARIOUS SCHEMES WERE NOT IN THE DRAFT FROM

09:16AM 22   THE GOVERNMENT.  THEY HAVE NOW AGREED TO ADD THAT INFORMATION.

09:16AM 23        SO I DO THINK THAT THIS IS NOW A MORE FULSOME DOCUMENT

09:16AM 24   THAT ARTICULATES THE DATES, THE OBJECTS OF THE SCHEMES AND

09:16AM 25   CONSPIRACIES, WHICH ONES RELATE TO PATIENTS, PAYING PATIENTS,

8836

| | | |
|---|---|---|
| 09:16AM | 1 | WHICH ONES RELATE TO INVESTORS. |
| 09:17AM | 2 | SO I DO THINK THAT THERE IS SIGNIFICANTLY MORE INFORMATION |
| 09:17AM | 3 | IN THIS NOW THAN THERE WAS WHEN WE FIRST MET TWO FRIDAYS AGO. |
| 09:17AM | 4 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:17AM | 5 | IT WAS MY INTENTION, IF THE JURY WOULD RECEIVE AN |
| 09:17AM | 6 | INDICTMENT, TO NOT GIVE THEM THE ENTIRETY OF THE INDICTMENT |
| 09:17AM | 7 | THAT HAD ALL OF THE SUMMATION OF THE FACTS AND THE ALLEGATIONS, |
| 09:17AM | 8 | BUT RATHER JUST THE CHARGING PORTION.  THAT'S WHAT I THOUGHT |
| 09:17AM | 9 | YOU WOULD WORK ON. |
| 09:17AM | 10 | IS THAT WHAT YOU WORKED ON, AS OPPOSED TO ALL OF THE |
| 09:17AM | 11 | PRELIMINARY LANGUAGE? |
| 09:17AM | 12 | MS. SAHARIA:  BY "CHARGING PORTION," DO YOU MEAN |
| 09:17AM | 13 | JUST THE COUNTS AT THE END, YOUR HONOR? |
| 09:17AM | 14 | THE COURT:  YES, WITHOUT THE LANGUAGE, THE PREFATORY |
| 09:17AM | 15 | LANGUAGE. |
| 09:17AM | 16 | MS. SAHARIA:  WE WERE LOOKING AT THE LANGUAGE OF THE |
| 09:17AM | 17 | ALLEGED MISREPRESENTATIONS, WHICH LARGELY IS IN PARAGRAPH 12, |
| 09:17AM | 18 | AND THEN I THINK PRIMARILY PARAGRAPH 16 AS IT RELATES TO THE |
| 09:17AM | 19 | PATIENTS. |
| 09:17AM | 20 | AND THAT'S WHAT WE WERE CONCERNED ABOUT, THAT WE DIDN'T |
| 09:18AM | 21 | SEE A GOOD WAY TO GIVE THOSE PARAGRAPHS TO THE JURY WITHOUT |
| 09:18AM | 22 | KIND OF EXPOSING THEM TO WHAT WE VIEW AS IMPROPER ARGUMENT IN |
| 09:18AM | 23 | THE INDICTMENT. |
| 09:18AM | 24 | THE COUNTS, I THINK, PROBABLY ARE LESS OBJECTIONABLE, BUT |
| 09:18AM | 25 | I WOULD WANT TO GO BACK AND LOOK AT THAT ONE MORE TIME. |

09:18AM 1          THE COURT:  OKAY.

09:18AM 2       MS. VOLKAR?

09:18AM 3          MS. VOLKAR:  THE GOVERNMENT'S POSITION REMAINS THAT

09:18AM 4    THE COURT COULD READ OR GIVE THE INDICTMENT TO THE JURY.

09:18AM 5       WHEN WE SPOKE ABOUT THIS BEFORE, I BELIEVE THE DEFENSE

09:18AM 6    RAISED CONCERNS ABOUT A POTENTIAL VARIANCE, AND THE BEST WAY TO

09:18AM 7    AVOID A VARIANCE IS TO READ THE INDICTMENT.

09:18AM 8       THE GOVERNMENT SEES NOTHING IMPROPER WITH THAT, BUT ALSO

09:18AM 9    SUBMITS THAT THE JURY INSTRUCTIONS THAT THE PARTIES HAVE AGREED

09:18AM 10   ON THUS FAR DO LAY OUT EACH OF THE INDIVIDUAL COUNTS IN A

09:18AM 11   MANNER THAT, IF THE DEFENSE STRONGLY OBJECTS TO PROVIDING THE

09:18AM 12   INDICTMENT, WE DON'T THINK IT'S NEEDED GIVEN THE CURRENT STATE

09:18AM 13   OF THE INSTRUCTIONS.

09:18AM 14      I DO WANT TO LOOP BACK TO THE NAMES OF THE VICTIMS.

09:18AM 15         THE COURT:  YES.

09:19AM 16         MS. VOLKAR:  I GO BACK TO THE COURT'S POINT THAT

09:19AM 17   ADDING THE NAMES OF THE INVESTOR VICTIMS IS REALLY JUST TO

09:19AM 18   ASSIST THE JURORS.

09:19AM 19      I DO NOT BELIEVE THERE IS ANY CONTESTING FROM THE DEFENSE

09:19AM 20   WHICH WIRE RELATES TO WHICH VICTIM.

09:19AM 21      ADDING THE NAME IS REALLY JUST A TOOL FOR THE JURY TO BE

09:19AM 22   ABLE TO LINK UP A DOLLAR FIGURE WITH THE VICTIM THAT TESTIFIED

09:19AM 23   ABOUT IT, AND OF COURSE THEY'LL HAVE THE WIRE ITSELF WHICH

09:19AM 24   LISTS THE VICTIM.

09:19AM 25      I'M SORRY.  I DON'T HAVE THE EXHIBIT NUMBER OFF THE TOP OF

8838

09:19AM 1 MY HEAD, BUT THAT'S WHAT I LOOKED AT WHEN I ADDED THE VICTIMS'

09:19AM 2 NAMES HERE.

09:19AM 3 SO THAT'S WHY I ASSERT THAT IT'S NOT LESSENING THE

09:19AM 4 GOVERNMENT'S BURDEN OF PROOF, IT REALLY IS JUST TO ASSIST THE

09:19AM 5 JURY, AND I BELIEVE IT'S A FACT THAT IS NOT IN CONTENTION.

09:19AM 6 I DON'T THINK THE DEFENSE IS GOING TO ARGUE IN CLOSING

09:19AM 7 ARGUMENTS THAT THE 5 MILLION WIRED BY PERSON X WAS ACTUALLY BY

09:20AM 8 PERSON Y ON THAT DATE.

09:20AM 9 THE COURT: THANK YOU. THANK YOU.

09:20AM 10 I'M TRYING TO SEE HOW THIS PREJUDICES YOU.

09:20AM 11 AND, MS. SAHARIA, I THINK YOU'RE SAYING THAT, WELL, THEY

09:20AM 12 HAVE TO PROVE THAT THE 990 CAME TO MR. EISENMAN.

09:20AM 13 MS. SAHARIA: CAME FROM MR. EISENMAN.

09:20AM 14 THE COURT: RIGHT. BUT IT SAYS RELATING TO, IT

09:20AM 15 DOESN'T SAY -- DOESN'T THAT CHANGE IT? IT DOESN'T --

09:20AM 16 MS. SAHARIA: I DON'T THINK SO, YOUR HONOR. THE

09:20AM 17 FACT THAT WE DON'T CONTEST WHICH WIRES RELATE TO WHICH

09:20AM 18 INDIVIDUALS DOESN'T MATTER BECAUSE, AGAIN, WE'RE THE DEFENDANT.

09:20AM 19 WE HAVE NO BURDEN TO CONTEST ANYTHING.

09:20AM 20 THE GOVERNMENT HAS THE BURDEN TO PROVE EVERY ELEMENT

09:20AM 21 BEYOND A REASONABLE DOUBT, EVEN IF WE DON'T CONTEST ANYTHING.

09:20AM 22 SO THE GOVERNMENT, I ASSUME, WILL MAKE A CHART AND IT WILL

09:20AM 23 SHOW THE CHART TO THE JURY IN CLOSING AND THE CHART WILL

09:20AM 24 LINK ITS EVIDENCE AND WILL SHOW THE JURY ITS EVIDENCE AND WILL

09:21AM 25 LINK THE AMOUNTS TO THE VICTIMS, AND THAT'S PROPER CLOSING

09:21AM  1   ARGUMENT AND THE JURY CAN TAKE NOTES.

09:21AM  2         BUT THAT'S THE GOVERNMENT'S BURDEN.  THE COURT SHOULDN'T

09:21AM  3   BE DOING THE GOVERNMENT'S WORK FOR IT IN THE INSTRUCTIONS.

09:21AM  4         SO I'LL JUST REST ON THAT.

09:21AM  5              THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

09:21AM  6              MS. VOLKAR:  JUST THAT THE INSTRUCTIONS SAY THAT THE

09:21AM  7   GOVERNMENT MUST PROVE EVERYTHING BEYOND A REASONABLE DOUBT.

09:21AM  8         AND WITH THAT, THE GOVERNMENT RESTS.

09:21AM  9              THE COURT:  THANK YOU.

09:21AM 10         I DO THINK THAT IDENTIFYING THESE IN THE INSTRUCTIONS IS

09:21AM 11   MORE HELPFUL TO THE JURY.  I REALLY DO.  I DON'T SEE THE

09:21AM 12   PREJUDICE.

09:21AM 13         I UNDERSTAND, MS. SAHARIA, YOUR POINT THAT, WELL, THE

09:21AM 14   GOVERNMENT HAS TO CONNECT THESE UP, AND IF THEY WANT TO DO IT,

09:21AM 15   THEY CAN DO IT IN THEIR CHART ON A POWERPOINT.

09:21AM 16         YOU HAVE CONCERN, YOU HAVE GRAVE CONCERN THAT SOMEHOW THIS

09:21AM 17   MEANS THAT THE COURT IS ASSISTING THE GOVERNMENT IN THEIR

09:21AM 18   PROSECUTION.

09:21AM 19         ALL RIGHT.  I WILL NOT GIVE THESE.

09:21AM 20         AND THE GOVERNMENT CAN IDENTIFY THESE AS THEY WISH IN

09:21AM 21   THEIR CLOSING ARGUMENT, AND THE JURY WILL BE TASKED TO SEE IF

09:22AM 22   THE GOVERNMENT MET THEIR BURDEN AS TO EACH OF THESE COUNTS.

09:22AM 23         ALL RIGHT?

09:22AM 24              MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:22AM 25              THE COURT:  PAGE 23, LINE 19, THERE'S -- I THINK YOU

09:22AM  1    OBJECT TO THAT SENTENCE, MS. SAHARIA?

09:22AM  2              MS. SAHARIA:  I'M SORRY, LINE 4?

09:22AM  3              THE COURT:  I'M ON PAGE 23, THE SAME INSTRUCTION.

09:22AM  4              MS. SAHARIA:  OH, I'M SORRY.  YES, YES, I WAS

09:22AM  5    LOOKING AT INSTRUCTION 23.  APOLOGIES, YOUR HONOR.

09:22AM  6         YES, WE HAD THIS DISCUSSION LAST WEEK.  THE GOVERNMENT HAD

09:22AM  7    PROPOSED A PARAGRAPH ON THIS TOPIC WHICH THE COURT SAID IT

09:22AM  8    WOULDN'T GIVE.

09:22AM  9         THE GOVERNMENT IS NOW PROPOSING THIS LINE.

09:22AM 10         AGAIN, THERE'S NO NEED FOR THE SENTENCE.  IT'S NOT GOING

09:22AM 11    TO -- THE JURY WILL NOT BE CONFUSED ABOUT THIS POINT.  THE

09:22AM 12    WIRES IN THIS CASE, THE MAJORITY OF THEM ARE JUST WIRING MONEY.

09:22AM 13         SO I JUST DON'T SEE HOW THE JURY COULD POSSIBLY BE

09:22AM 14    CONFUSED THAT THE WIRE NEEDS TO BE FALSE OR MISLEADING IF THE

09:23AM 15    WIRE IS MONEY.

09:23AM 16         WE'RE NOT GOING TO ARGUE TO THE JURY THAT THE WIRE NEEDS

09:23AM 17    TO BE FALSE OR MISLEADING.  I JUST DON'T SEE THE POINT OF THE

09:23AM 18    SENTENCE.

09:23AM 19              THE COURT:  OKAY.

09:23AM 20              MS. SAHARIA:  AND IT'S NOT A MODEL INSTRUCTION.

09:23AM 21              THE COURT:  OKAY.

09:23AM 22              MS. VOLKAR:  YOUR HONOR, THIS WAS BECAUSE OF THE

09:23AM 23    DISCUSSION BETWEEN THE COURT AND MR. LEACH LAST FRIDAY, WHICH

09:23AM 24    IS THE POINT THE GOVERNMENT WAS TRYING TO CONVEY WITH THE PRIOR

09:23AM 25    PARAGRAPH WAS A STATEMENT OF THE LAW.

09:23AM  1     WE UNDERSTAND IF THE COURT WANTS TO GIVE THE MODEL

09:23AM  2   INSTRUCTION, BUT WE DID WANT TO PROPOSE THE SENTENCE THAT GOT

09:23AM  3   MORE TO THE HEART OF WHAT WE WERE TRYING TO SAY.

09:23AM  4          THE COURT:  MS. VOLKAR, IF I GIVE THIS, DOES IT LEND

09:23AM  5   ANY CONFUSION, DO YOU THINK?  DOES THIS ADD TO CONFUSION?

09:23AM  6   EXCUSE ME.

09:23AM  7          MS. VOLKAR:  I DO NOT BELIEVE SO.  I THINK IT IS A

09:23AM  8   CLEAR STATEMENT OF THE LAW AND IT MAKES CLEAR -- NOT EVERYBODY

09:23AM  9   IS FAMILIAR WITH WIRE FRAUD, AND IT MAKES CLEAR THAT WIRE

09:24AM 10   ITSELF DOES NOT HAVE TO BE FRAUDULENT OF MISREP -- MISLEADING.

09:24AM 11   EXCUSE ME.

09:24AM 12          THE COURT:  SO TELL ME -- REMIND ME AGAIN WHAT THIS

09:24AM 13   MEANS, EXCUSE ME, WHAT THIS MEANS, "THE WIRE ITSELF NEED NOT BE

09:24AM 14   FALSE OR MISLEADING."  WHAT DOES THAT INFORM THE JURY?

09:24AM 15          MS. VOLKAR:  I THINK WE HAVE SEEN CASE LAW WHERE

09:24AM 16   THE -- WHAT IS SENT IN THE MAIL IS, FOR EXAMPLE, A FRAUDULENT

09:24AM 17   ADVERTISEMENT.

09:24AM 18      AND I THINK THIS IS A CASE WHERE THE WIRE IS RELATING TO

09:24AM 19   OR IN FURTHERANCE OF THE SCHEME WHERE, AS MS. SAHARIA POINTED

09:24AM 20   OUT, SEVERAL OF THE INVESTORS ARE SIMPLY WIRING MONEY, OR IN

09:24AM 21   ONE INSTANCE A PATIENT CALLED TO TALK ABOUT A BLOOD TEST

09:24AM 22   RESULT, RATHER THAN NECESSARILY RECEIVING THE INACCURATE RESULT

09:24AM 23   BY FAX AS A DIFFERENT PATIENT DID.

09:24AM 24      SO I THINK IT'S JUST TRYING TO CLEAR UP FOR THE JURY THAT

09:24AM 25   WHILE IN SOME INSTANCES THE WIRE MAY ITSELF BE THE FRAUDULENT

09:25AM 1    DOCUMENT, THAT'S NOT TRUE IN ALL CASES, AND IT'S NOT THE

09:25AM 2    GOVERNMENT'S BURDEN TO PROVE THAT UNDER THE LAW OF THE

09:25AM 3    NINTH CIRCUIT.

09:25AM 4            THE COURT:  OKAY.

09:25AM 5        MS. SAHARIA?

09:25AM 6            MS. SAHARIA:  THE INSTRUCTION INFORMS THE JURY AS TO

09:25AM 7    WHAT THE WIRING ELEMENT IS.  THAT'S THE FOURTH ELEMENT AT LINES

09:25AM 8    14 TO 15.  THAT IS THE MODEL INSTRUCTION.

09:25AM 9        THE WIRE SIMPLY NEEDS TO BE USED TO CARRY OUT OR ATTEMPT

09:25AM 10   TO CARRY OUT AN ESSENTIAL PART OF THE SCHEME.

09:25AM 11       THIS LINE IS JUST THE GOVERNMENT ARGUMENT ABOUT THE WIRING

09:25AM 12   ELEMENT.

09:25AM 13       AND AGAIN, THERE'S JUST NO POTENTIAL FOR THE JURY TO BE

09:25AM 14   CONFUSED HERE GIVEN WHAT THE GOVERNMENT HAS CHARGED AS THE

09:25AM 15   WIRES.  I DON'T SEE THE NEED FOR THIS SENTENCE.

09:25AM 16           THE COURT:  MS. VOLKAR, I THINK IF I'M GOING TO GIVE

09:26AM 17   THIS, I THINK IT SHOULD BE GIVEN FOLLOWING THE END OF THE

09:26AM 18   SENTENCE IN THE FOURTH AS MS. SAHARIA POINTS OUT.

09:26AM 19       IT SEEMS THAT IF IT WOULD BE GIVEN, IT WOULD FLOW BETTER

09:26AM 20   THERE IF I MOVED IT TO FOLLOW THE WORD "SCHEME."

09:26AM 21           MS. VOLKAR:  THAT WOULD BE FINE, YOUR HONOR.

09:26AM 22           THE COURT:  SO I'LL GIVE THIS AND I'LL MOVE IT TO

09:26AM 23   THAT LOCATION FOLLOWING THE WORD "SCHEME" IN THE FOURTH -- IT'S

09:26AM 24   ON LINE 14, PAGE 23 OF THE SUBMISSION.

09:26AM 25       AND I'LL NOTE YOUR OBJECTIONS, MS. SAHARIA.

09:26AM 1     MS. SAHARIA:  THANK YOU.

09:26AM 2     THE COURT:  KNOWINGLY IS INSTRUCTION 23, AND

09:27AM 3 MR. WADE'S FAVORITE CASE, PHILLIPS, IS CITED HERE.

09:27AM 4     MS. SAHARIA:  YES, YOUR HONOR.

09:27AM 5     THE COURT:  RIGHT.  AS ARE THE MODEL INSTRUCTIONS.

09:27AM 6     MS. SAHARIA:  CORRECT.

09:27AM 7     THE COURT:  SO WE HAVE SOME TENSION BETWEEN THOSE

09:27AM 8 TWO CONCEPTS.

09:27AM 9   MS. SAHARIA, WHAT SHOULD BE GIVEN?

09:27AM 10    MS. SAHARIA:  WELL, I DON'T THINK THERE'S ANY

09:27AM 11 TENSION BETWEEN THE TWO CONCEPTS.  THE FIRST PARAGRAPH IS THE

09:27AM 12 MODEL INSTRUCTION.

09:27AM 13   THE SECOND PARAGRAPH IS AN INSTRUCTION THAT IS TAILORED TO

09:27AM 14 THE FACTS OF THIS CASE WHERE THE GOVERNMENT HAS PUT INTO

09:27AM 15 EVIDENCE LARGE SWATHS OF EVIDENCE ABOUT INFORMATION THAT NEVER

09:27AM 16 WENT TO MS. HOLMES.

09:27AM 17   ONE OF ITS FIRST WITNESSES, FOR EXAMPLE, WAS ERIKA CHEUNG,

09:27AM 18 WHO TESTIFIED ABOUT HER CONCERNS IN THE LAB THAT SHE NEVER ONCE

09:27AM 19 COMMUNICATED TO MS. HOLMES.

09:27AM 20   SO GIVEN THE WAY THAT THE GOVERNMENT HAS PROVED ITS CASE,

09:27AM 21 WE THINK IT'S VERY IMPORTANT FOR THE JURY TO UNDERSTAND THAT IT

09:27AM 22 IS NOT PERMITTED TO IMPUTE KNOWLEDGE FROM OTHER THERANOS

09:28AM 23 EMPLOYEES, FROM ALLEGED -- AN ALLEGED COCONSPIRATOR, FROM

09:28AM 24 ALLEGED AGENTS OF MS. HOLMES.  THAT'S BLACK LETTER LAW.  THE

09:28AM 25 PHILLIPS CASE SQUARELY HOLDS THAT.

09:28AM 1       SO WE THINK GIVEN THE FACTS OF THIS CASE, IT'S VERY

09:28AM 2   IMPORTANT FOR THE JURY TO HEAR THAT INSTRUCTION.

09:28AM 3       THERE'S NO TENSION BETWEEN THAT AND WHAT IT MEANS TO ACT

09:28AM 4   KNOWINGLY.  THIS IS SIMPLY EXPLAINING TO THE JURY THAT TO ACT

09:28AM 5   KNOWINGLY, MS. HOLMES HERSELF NEEDS TO BE AWARE OF THE RELEVANT

09:28AM 6   FACTS AND THE JURY CAN'T IMPUTE ANYONE ELSE'S KNOWLEDGE TO HER.

09:28AM 7       THE COURT:  THANK YOU.

09:28AM 8   WHAT ABOUT OMISSION?  SHOULD THAT REMAIN HERE ON LINE 5?

09:28AM 9       MS. SAHARIA:  I DON'T BELIEVE SO, YOUR HONOR.

09:28AM 10      THIS GOES TO THE POINT THAT WE WERE DISCUSSING LAST WEEK.

09:28AM 11  THE GOVERNMENT DID AGREE TO DROP ITS OMISSIONS AND DUTY TO

09:28AM 12  DISCLOSE THEORY.  THE WORD "OMISSIONS" HAS BEEN REMOVED FROM

09:29AM 13  THE REMAINDER OF THE INSTRUCTIONS.

09:29AM 14      AS I UNDERSTAND IT FROM MR. LEACH LAST WEEK, IT'S HIS VIEW

09:29AM 15  THAT THE WORD "OMISSIONS" HERE STILL BELONGS HERE BECAUSE THIS

09:29AM 16  IS NOT DIRECTLY IMPLICATING THE DUTY TO DISCLOSE.

09:29AM 17      BUT I THINK, GIVEN THAT THERE'S NO DUTY TO DISCLOSE THEORY

09:29AM 18  IN THIS CASE ANYMORE, THE WORD "OMISSIONS" WILL CONFUSE THE

09:29AM 19  JURY.  I'M NOT EVEN SURE HOW THE JURY COULD INFER KNOWLEDGE

09:29AM 20  FROM AN OMISSION UNLESS THERE WAS A DUTY TO DISCLOSE.

09:29AM 21      I DON'T EVEN KNOW WHAT THE PURPOSE OF THAT WORD IS IN THIS

09:29AM 22  SENTENCE, AND I'M CONCERNED THAT IT WILL SUGGEST TO THE JURY

09:29AM 23  THAT MS. HOLMES DID HAVE SOME DUTY TO DISCLOSE INFORMATION THAT

09:29AM 24  WAS OMITTED.

09:29AM 25      I JUST, I THINK IT'S HIGHLY MISLEADING HERE AND SHOULD BE

09:29AM 1     ELIMINATED.

09:29AM 2              THE COURT:  OKAY.  THANK YOU.

09:29AM 3         AND WHAT IS YOUR VIEW ON THE COURT GIVING BOTH OF THESE?

09:29AM 4              MS. SAHARIA:  I THINK IF THE COURT IS GOING TO GIVE

09:29AM 5     THE FIRST PARAGRAPH, WE WOULD ASK THAT THE COURT ADD THE SECOND

09:29AM 6     PARAGRAPH SO THAT THEY BOTH BE GIVEN TOGETHER.

09:29AM 7              THE COURT:  ALL RIGHT.  THANK YOU.

09:29AM 8         MS. VOLKAR?

09:29AM 9              MS. VOLKAR:  YOUR HONOR, THERE IS TENSION BETWEEN

09:30AM 10    THE MODEL INSTRUCTION AND THE PHILLIPS INSTRUCTION.

09:30AM 11        AND AS THE GOVERNMENT POINTED OUT LAST WEEK, PHILLIPS IS A

09:30AM 12    CASE FROM 1965.  IT'S BEEN AROUND FOR A LONG TIME.  AS FAR AS I

09:30AM 13    KNOW, IT'S OFTEN CITED BY CRIMINAL DEFENDANTS, YET IT HAS NEVER

09:30AM 14    MADE ITS WAY INTO THE MODEL INSTRUCTIONS, NOT EVEN AS BRACKETED

09:30AM 15    LANGUAGE, AND I THINK THAT REALLY SHOULD INFORM YOUR HONOR'S

09:30AM 16    RULING HERE.

09:30AM 17        THE KNOWINGLY STANDARD IS WELL DEFINED.  IT'S DEFINED IN

09:30AM 18    THE MODEL.  IT ENCOMPASSES THE CONCEPTS THAT THEY'RE TRYING TO

09:30AM 19    ADD THROUGH THE PHILLIPS CASE.

09:30AM 20        AND THE DEFENSE, OF COURSE, CAN MAKE THESE ARGUMENTS IN

09:30AM 21    THEIR CLOSING ARGUMENT, BUT IT DOESN'T HAVE ANY PLACE IN THE

09:30AM 22    COURT'S INSTRUCTIONS BECAUSE, FOR EXAMPLE, THE FIRST SENTENCE

09:30AM 23    SAYS, "AN ACT IS DONE KNOWINGLY IF MS. HOLMES IS AWARE."

09:30AM 24        NOW, SHE COULD BE AWARE OF INFORMATION THAT SHE LEARNS

09:30AM 25    FROM HER COCONSPIRATOR, THAT SHE LEARNS FROM MR. BALWANI WITH

09:30AM   1      RESPECT TO WHAT ERIKA CHEUNG TOLD HIM.

09:30AM   2          AND I DO THINK THAT THERE IS EVIDENCE IN THIS CASE THAT

09:30AM   3      THERE WAS AT LEAST SOME COMMUNICATION ON THAT FRONT.

09:31AM   4          SO JUST BECAUSE ERIKA CHEUNG DID NOT NECESSARILY TALK TO

09:31AM   5      MS. HOLMES DIRECTLY, THERE IS OTHER EVIDENCE THAT, FOR EXAMPLE,

09:31AM   6      SHE KNEW TYLER SHULTZ TALKED TO MS. HOLMES DIRECTLY, AND, OF

09:31AM   7      COURSE, MS. HOLMES TESTIFIED ABOUT THAT.

09:31AM   8          AND THERE WAS COPIOUS CONVERSATION BETWEEN MS. HOLMES AND

09:31AM   9      HER COCONSPIRATOR.

09:31AM   10         SO I THINK IT'S MISLEADING TO INCLUDE THE PHILLIPS

09:31AM   11     INSTRUCTION HERE, THAT THE JURY HAS TO PUT BLINDERS ON AND

09:31AM   12     NARROW ITS FOCUS IN TERMS OF WHAT IT'S ALLOWED TO INCLUDE.

09:31AM   13         AND I WANT TO GO BACK TO WHAT THE PHILLIPS CASE ACTUALLY

09:31AM   14     SAYS.  THE PHILLIPS CASE WAS AN EVIDENTIARY RULING, WHETHER OR

09:31AM   15     NOT DOCUMENTS SHOULD BE ADMITTED THAT ONE COCONSPIRATOR NEVER

09:31AM   16     SAW, AND I BELIEVE THAT WAS ONE OF THOSE CASES WHERE THE

09:31AM   17     DOCUMENT ITSELF WAS A VEHICLE OF THE FRAUD.

09:31AM   18         AND ONE OF THE COCONSPIRATORS NEVER SAW THE OTHER -- THE

09:31AM   19     DOCUMENT, THE LETTER THAT THE OTHER COCONSPIRATOR ACTUALLY

09:31AM   20     SENT.

09:31AM   21         AND THE QUESTION BEFORE THE NINTH CIRCUIT IN THE DISTRICT

09:31AM   22     COURT IN THAT CASE WAS WHETHER OR NOT THE DOCUMENT THAT THE

09:31AM   23     COCONSPIRATOR NEVER SAW SHOULD BE ADMITTED IN THE CASE OF THE

09:31AM   24     DEFENDANT WHO HAD NEVER SEEN THE DOCUMENT.

09:32AM   25         YOUR HONOR RELIED ON THIS CASE, THE PHILLIPS CASE, IN

```
09:32AM   1    REJECTING THE GOVERNMENT'S PROFFER OF THE STACK OF NEGATIVE
09:32AM   2    COMPLAINTS ABOUT ACCURACY AND RELIABILITY THAT WAS SENT TO
09:32AM   3    MR. BALWANI, BUT NOT SENT TO MS. HOLMES.
09:32AM   4         YOUR HONOR HAS BEEN FOLLOWING THE PHILLIPS CASE ALL ALONG.
09:32AM   5         AND IT JUST SIMPLY HAS NOTHING TO DO WITH INSTRUCTIONAL
09:32AM   6    ERROR, IT HAS NOTHING TO DO WITH INSTRUCTIONS, IT'S NOT IN THE
09:32AM   7    MODEL INSTRUCTIONS FOR A REASON AFTER MORE THAN 50 YEARS, AND
09:32AM   8    THERE'S NO REASON TO GIVE IT NOW.
09:32AM   9         AND I'M ALSO HAPPY TO RESPOND TO THE OMISSIONS POINT.
09:32AM  10              THE COURT:  YES, PLEASE.
09:32AM  11              MS. VOLKAR:  SO WE DID, THROUGH MEET AND CONFER,
09:32AM  12    AGREE TO DROP THE OMISSIONS FROM THE MIDDLE SENTENCE, THE
09:32AM  13    SECOND SENTENCE, BECAUSE WE BELIEVED THAT WAS TIED TO THE
09:32AM  14    OMISSIONS THEORY.
09:32AM  15         I THINK IT'S AGAIN NOTEWORTHY THAT IN THE LAST SENTENCE OF
09:32AM  16    THE MODEL, "OMISSIONS" IS NOT IN BRACKETS.  AND THAT'S BECAUSE
09:32AM  17    WHEN WE'RE TALKING ABOUT WHAT A DEFENDANT KNOWS OR IS AWARE OF,
09:32AM  18    THAT IS A BROADER STANDARD.  YOU CAN ENCOMPASS EVERYTHING THAT
09:33AM  19    IS WITHIN THAT PERSON'S KNOWLEDGE AND WHEELHOUSE, WHETHER IT
09:33AM  20    WAS TOLD TO THEM BY COCONSPIRATORS, WHETHER IT WAS SHOWED TO
09:33AM  21    THEM THROUGH DOCUMENTS, HOW THEY CAME TO BE AWARE OF IT.
09:33AM  22         THAT DOES RELATE TO THE KNOWINGLY STANDARD, AND THAT MAY
09:33AM  23    INCLUDE OMISSIONS.  THAT MAY INCLUDE FORWARDING AN EMAIL WITH
09:33AM  24    THE "FORTUNE" ARTICLE AND NOT POINTING OUT THAT IT HAS
09:33AM  25    INACCURATE STATEMENTS IN IT.
```

09:33AM  1        THAT ALL CAN BE ENCOMPASSED IN WHAT A DEFENDANT KNOWS.

09:33AM  2        IT'S A BROADER STANDARD FOR THE JURY TO CONSIDER WHAT ONE

09:33AM  3   PERSON IS AWARE OF WHEN WE'RE TALKING ABOUT THE MENS REA FOR A

09:33AM  4   CRIMINAL OFFENSE.

09:33AM  5        IT'S NOT AN OMISSIONS THEORY.  IT'S NOT TIED TO A

09:33AM  6   FIDUCIARY DUTY.  IT'S JUST THE WHOLE MIX OF INFORMATION THAT

09:33AM  7   GOES TO A DEFENDANT'S STATE OF MIND.

09:33AM  8            THE COURT:  AND THE GOVERNMENT IS NOT GOING TO

09:33AM  9   ARGUE -- BY WITHDRAWING YOUR ADMISSIONS IN THE OTHER

09:33AM  10  INSTRUCTIONS, YOU'VE INDICATED THAT YOU'RE NOT GOING TO ARGUE

09:33AM  11  AN OMISSIONS THEORY IN YOUR CASE.

09:34AM  12           MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

09:34AM  13           MS. SAHARIA:  I WOULD JUST NOTE THAT MS. VOLKAR'S

09:34AM  14  ARGUMENT ON THE PHILLIPS LANGUAGE SHOWS EXACTLY WHY THIS

09:34AM  15  INSTRUCTION IS NECESSARY.

09:34AM  16       I'M NOT AWARE OF ANY EVIDENCE THAT IN REALTIME MR. BALWANI

09:34AM  17  INFORMED MS. HOLMES OF WHAT MS. CHEUNG SAID.

09:34AM  18       AND MS. VOLKAR SUGGESTED THAT THE JURY COULD INFER THAT

09:34AM  19  COMMUNICATION OCCURRED SIMPLY FROM THE FACT THAT THEY'RE

09:34AM  20  ALLEGED COCONSPIRATORS.

09:34AM  21       THAT'S EXACTLY WHAT PHILLIPS PROHIBITS AND THAT'S EXACTLY

09:34AM  22  WHY THIS INSTRUCTION SHOULD BE GIVEN TO THE JURY.

09:34AM  23           THE COURT:  WELL, YOU'RE AWARE, I THINK, THAT

09:34AM  24  MS. VOLKAR'S MEMORY OF THE FACTS OF PHILLIPS IS ACCURATE.  IT

09:34AM  25  WAS REALLY ABOUT DOCUMENTS.  IT WAS LETTERS AND IT WAS THE LAND

8849

09:34AM 1   FRAUD CASE, AND I THINK THEY ENGAGED A -- THE DEFENDANTS

09:34AM 2   ENGAGED AN ADVERTISING COMPANY TO ASSIST IN THEIR FRAUD,

09:34AM 3   SENDING THESE DOCUMENTS OUT.

09:34AM 4        WASN'T THAT THE ISSUE THERE, THE LETTERS?

09:34AM 5             MS. SAHARIA:  THAT'S RIGHT.  THE ISSUE THERE WAS

09:34AM 6   WHETHER INFORMATION, IN THAT CASE DOCUMENTS THAT WERE KNOWN TO

09:35AM 7   ONE COCONSPIRATOR, COULD BE -- WHETHER THE COCONSPIRATOR'S

09:35AM 8   KNOWLEDGE OF THOSE DOCUMENTS COULD BE IMPUTED TO THE OTHER

09:35AM 9   ALLEGED COCONSPIRATOR, AND THE NINTH CIRCUIT SAID, NO, IT COULD

09:35AM 10  NOT.

09:35AM 11       THAT'S THE SAME POINT THAT WE'RE MAKING HERE, WHICH IS TO

09:35AM 12  THE EXTENT THAT MR. BALWANI RECEIVED INFORMATION FROM THERANOS

09:35AM 13  EMPLOYEES, BUT THAT INFORMATION WAS NOT COMMUNICATED TO

09:35AM 14  MS. HOLMES, IT IS IMPROPER FOR THE JURY TO INFER THAT

09:35AM 15  MS. HOLMES HAS KNOWLEDGE OF THAT INFORMATION SIMPLY BECAUSE THE

09:35AM 16  GOVERNMENT IS ALLEGING THEM TO BE COCONSPIRATORS.

09:35AM 17       IT'S THE EXACT SAME PRINCIPLE.  THE FACT THAT WE HAVE HAD

09:35AM 18  SO MUCH EVIDENCE IN THIS CASE ALONG THESE LINES OF THINGS THAT

09:35AM 19  WERE NOT COMMUNICATED TO MS. HOLMES I THINK SHOWS WHY THIS

09:35AM 20  INSTRUCTION IS CRITICAL IN THIS CASE.

09:35AM 21             THE COURT:  WELL, WHAT -- YOUR POINT IS THAT THE

09:35AM 22  JURY MUST FIND THAT MS. HOLMES, IF THEY FIND THAT SHE ACTED

09:35AM 23  KNOWINGLY, THAT SHE HERSELF HAD KNOWLEDGE OF THE FACT, SHE

09:36AM 24  HERSELF.

09:36AM 25             MS. SAHARIA:  CORRECT.

8850

09:36AM 1          THE COURT:  RIGHT.  AND NOT ANYONE ELSE.

09:36AM 2      I COULD SEE ADDING THAT ONE SENTENCE.

09:36AM 3          MS. SAHARIA:  THE FIRST SENTENCE, YOUR HONOR?

09:36AM 4          THE COURT:  YES.

09:36AM 5          MS. SAHARIA:  THAT WOULD BE BETTER THAN NEITHER OF

09:36AM 6      THEM.  WE DO REQUEST BOTH OF THEM.

09:36AM 7      AND I DO WORRY THAT IF THE GOVERNMENT MAKES ARGUMENT IN

09:36AM 8      CLOSING SIMILAR TO WHAT WE JUST HEARD, WE WILL BE COMING BACK

09:36AM 9      TO THE COURT AND ASKING THE COURT TO ADD THAT SECOND SENTENCE

09:36AM 10     TO THE EXTENT THAT THE ARGUMENT STRAYS INTO THIS IMPROPER

09:36AM 11     IMPUTING THEORY.

09:36AM 12     BUT I WOULD BE HAPPY IF THE COURT WOULD, AT A MINIMUM, ADD

09:36AM 13     THE FIRST SENTENCE, ALTHOUGH WE REQUEST THE SECOND SENTENCE AS

09:36AM 14     WELL.

09:36AM 15         THE COURT:  I THINK GIVING THE SECOND -- PARDON ME,

09:36AM 16     THE FIRST SENTENCE IS -- WHEN I LOOK AT IT, IT'S SOMEWHAT

09:36AM 17     CUMULATIVE OF THE FIRST SENTENCE, ISN'T IT?  IT'S A REPETITIVE

09:36AM 18     STATEMENT OF THE FIRST SENTENCE.

09:36AM 19     MS. VOLKAR?

09:36AM 20         MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT JUST POINTS

09:37AM 21     OUT, AGAIN, THAT THE MODEL INSTRUCTION HAS BEEN AROUND FOR A

09:37AM 22     LONG TIME.  THIS CASE HAS BEEN OUT THERE FOR 50 YEARS.  THIS

09:37AM 23     HASN'T BEEN ADDED FOR A REASON.  IT WASN'T EVEN AN

09:37AM 24     INSTRUCTIONAL ERROR CASE.  IT WAS ABOUT AN EVIDENTIARY ISSUE.

09:37AM 25     YOUR HONOR HAS BEEN FOLLOWING THIS CASE IN MAKING

8851

09:37AM  1    EVIDENTIARY RULINGS AND THE GOVERNMENT IS NOT CONTESTING THAT

09:37AM  2    HERE.

09:37AM  3         THERE'S JUST NO NEED TO ADD THIS TO THE TRIED AND TRUE

09:37AM  4    STANDARD OF KNOWINGLY THAT IS USED DAY IN AND DAY OUT IN WIRE

09:37AM  5    FRAUD CASES, IN CRIMINAL CASES.

09:37AM  6         I JUST -- I REALLY DON'T -- I FAIL TO SEE HOW THIS ONE

09:37AM  7    CASE FROM 1965 THAT ISN'T EVEN AN INSTRUCTIONAL ERROR CASE

09:37AM  8    WARRANTS CHANGING THE MODEL INSTRUCTION GIVEN IN EVERY WIRE

09:37AM  9    FRAUD CASE.

09:37AM  10        THE COURT:  WELL, TO THE POINT THAT MS. VOLKAR

09:37AM  11   MAKES, SHE'S -- EXCUSE ME, MS. SAHARIA MAKES, SHE'S CONCERNED

09:37AM  12   THAT THERE MIGHT BE SOME PHILLIPS ISSUE.

09:37AM  13        I DON'T SEE IT, FRANKLY.  I THINK THE FACTS ARE

09:37AM  14   SIGNIFICANTLY DISTINGUISHABLE IN THAT CASE.

09:37AM  15        BUT I'LL GIVE THAT SENTENCE, THAT ONE SENTENCE.

09:38AM  16        I'M NOT GOING TO GIVE THE SECOND SENTENCE, MS. SAHARIA.

09:38AM  17        MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:38AM  18        THE COURT:  BUT I'LL GIVE THE FIRST SENTENCE.

09:38AM  19   INSTRUCTION 26, I THINK YOU WANT TO REMOVE "ALLEGED."

09:38AM  20        MS. SAHARIA:  WE WANT TO ADD "ALLEGED."

09:38AM  21        THE COURT:  EXCUSE ME, YOU WANT TO ADD "ALLEGED."

09:38AM  22        MS. VOLKAR:  YOUR HONOR, EXCUSE ME.  SORRY TO CIRCLE

09:38AM  23   BACK.  WHAT ABOUT THE OMISSIONS POINT?

09:38AM  24        THE COURT:  I'M GOING TO LEAVE THAT.

09:38AM  25        MS. VOLKAR:  OKAY.  THANK YOU.

09:38AM 1          THE COURT:  MS. VOLKAR, ALLEGED?

09:38AM 2          MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT OBJECTS TO

09:38AM 3     REFERRING TO THEM AS ALLEGED VICTIMS.  WE UNDERSTAND WHY THEY

09:38AM 4     WANT TO ADD "ALLEGED CRIME" OR "ALLEGED CONSPIRACY," EVEN

09:38AM 5     THOUGH THE MODEL INSTRUCTIONS USED IN EVERY CASE DON'T HAVE

09:38AM 6     THEM IN THERE, AND OF COURSE THAT IS TRUE OF EVERY CRIMINAL

09:38AM 7     CASE.

09:38AM 8          THESE ARE VICTIMS, AND THE DEFENSE HAS REJECTED THAT ALL

09:38AM 9     ALONG, AND THEY ARE ENTITLED TO THEIR VIEW, BUT THEY ARE

09:38AM 10    VICTIMS AND I THINK IT DOES A DISSERVICE TO CALLED THEM ALLEGED

09:38AM 11    VICTIMS.  IT'S REALLY NOT FAIR.

09:38AM 12         MS. SAHARIA:  YOUR HONOR, IT'S THE GOVERNMENT'S --

09:39AM 13    THEIR CLAIM IS THAT THEY'RE VICTIMS AND WE'RE, OF COURSE,

09:39AM 14    ENTITLED TO DISPUTE THAT THEY ARE VICTIMS.

09:39AM 15         THE WORD "VICTIMS" CONNOTES THAT A CRIME HAS OCCURRED.

09:39AM 16    THIS WHOLE CASE IS ABOUT WHETHER A CRIME HAS OCCURRED.

09:39AM 17         THE COURT:  UNDERSTOOD.  BUT "ALLEGED" IS NOT IN THE

09:39AM 18    MODEL INSTRUCTIONS.

09:39AM 19         MS. SAHARIA:  THIS IS NOT A MODEL INSTRUCTION.  THIS

09:39AM 20    IS A GOVERNMENT WRITTEN INSTRUCTION.

09:39AM 21         THE COURT:  I UNDERSTAND.  BUT "ALLEGED" IS NOT --

09:39AM 22    YOU DON'T SEE THAT IN THE INSTRUCTIONS WHERE YOU'VE ASKED ME TO

09:39AM 23    ADD IT, AND I THINK I --

09:39AM 24         MS. SAHARIA:  I DON'T THINK THE WORD "VICTIM" IS IN

09:39AM 25    THE INSTRUCTIONS EITHER.  TO BE FAIR, THE WORD "VICTIM" IS NOT

09:39AM 1    IN THE MODEL INSTRUCTIONS EITHER.

09:39AM 2         THIS IS NOT A MODEL INSTRUCTION.  THIS IS AN INSTRUCTION

09:39AM 3    THAT THE GOVERNMENT WROTE, AND WE HAVE AGREED TO THE CONCEPT OF

09:39AM 4    THIS INSTRUCTION AS PART OF THE MEET AND CONFER PROCESS.  WE

09:39AM 5    DID NOT OBJECT TO THIS INSTRUCTION.

09:39AM 6         WE SIMPLY OBJECT TO CALLING INVESTORS VICTIMS WHEN THAT'S

09:39AM 7    PART OF THE GOVERNMENT'S BURDEN OF PROOF.

09:39AM 8              THE COURT:  WHAT SHOULD THEY BE CALLED?

09:39AM 9              MS. SAHARIA:  ALLEGED VICTIMS.  THE GOVERNMENT

09:39AM 10   ALLEGES THAT THEY'RE VICTIMS.  THAT'S WHAT THEY ALLEGE IN THE

09:40AM 11   INDICTMENT.

09:40AM 12             THE COURT:  WHAT SHOULD THEY BE CALLED IF THEY'RE

09:40AM 13   NOT CALLED VICTIMS?

09:40AM 14             MS. SAHARIA:  YOU COULD SAY "INVESTORS' CONDUCT," IT

09:40AM 15   COULD BE "WIRE FRAUD," THE TITLE COULD BE "WIRE FRAUD

09:40AM 16   INVESTORS' CONDUCT," AND THEN THE FIRST SENTENCE COULD READ,

09:40AM 17   "AN INVESTOR'S NEGLIGENCE IS NOT A DEFENSE TO WIRE FRAUD."

09:40AM 18        THE NEXT SENTENCE REFERS TO THEM AS INVESTORS.  THIS

09:40AM 19   SENTENCE IS ABOUT THE INVESTORS.

09:40AM 20        SO I THINK, GIVEN THAT THE SECOND SENTENCE EXPRESSLY USES

09:40AM 21   THE WORD "INVESTORS," THE COURT COULD SUBSTITUTE "INVESTORS"

09:40AM 22   FOR "VICTIMS" AND THAT WOULD ALSO RESOLVE OUR CONCERN.

09:40AM 23        (PAUSE IN PROCEEDINGS.)

09:40AM 24             MS. VOLKAR:  YOUR HONOR, MAY I BE HEARD ON THAT

09:40AM 25   POINT?

8854

```
09:40AM   1              THE COURT:  YES.

09:40AM   2              MS. VOLKAR:  I FEEL LIKE WE'RE BACK SLIDING.  THIS

09:40AM   3   IS AN INSTRUCTION THAT, THROUGH THE MEET AND CONFER PROCESS,

09:40AM   4   THE PARTIES ACTUALLY SUBSTANTIALLY AGREED ABOUT.  THAT, OF

09:41AM   5   COURSE, DIDN'T HAVE TO BE THE CASE.

09:41AM   6              BUT WHEN WE CAME BEFORE YOUR HONOR THIS PAST FRIDAY, THE

09:41AM   7   WORD "ALLEGED" WASN'T IN THERE AND THE PARTIES AGREED TO

09:41AM   8   EVERYTHING BUT THE WORD "OMISSIONS" IN THIS INSTRUCTION, AND

09:41AM   9   NOW WE'RE MOVING FROM NOT JUST ADDING THE WORD "ALLEGED" ON

09:41AM  10   FRIDAY AFTER WE HAD THE HEARING BEFORE YOUR HONOR, BUT CHANGING

09:41AM  11   IT TO A DIFFERENT WORD ENTIRELY.

09:41AM  12              IF THE DEFENSE DISAGREED WITH THIS INSTRUCTION, WE COULD

09:41AM  13   HAVE CONTINUED TO DISCUSS THAT DURING THE MEET AND CONFER

09:41AM  14   PROCESS.

09:41AM  15              SO I STRONGLY OBJECT TO THE BACK SLIDING OF PROGRESS THAT

09:41AM  16   WE'RE DOING HERE, AND I CERTAINLY OBJECT TO THE CONCEPT THAT

09:41AM  17   PEOPLE WHO LOST MONEY IN THIS SCHEME, WHETHER OR NOT MS. HOLMES

09:41AM  18   WAS PART OF IT, THERE ARE CERTAINLY OTHER WAYS THAT THE

09:41AM  19   DEFENDANTS CAN POINT TO YOU.

09:41AM  20              THESE PEOPLE DID LOSE MONEY BECAUSE THEY WERE LIED TO.

09:41AM  21   THEY ARE VICTIMS.

09:41AM  22              I THINK TRYING TO REFER TO THEM AS INVESTORS IS JUST ALONG

09:41AM  23   THE LINES OF BLAMING THE VICTIM THAT YOUR HONOR HAS POINTED OUT

09:41AM  24   THE DEFENSE SHOULD NOT BE ALLOWED TO DO, BOTH IN THE MOTIONS IN

09:41AM  25   LIMINE STAGE AND THROUGHOUT THE TRIAL.
```

09:42AM 1      THIS INSTRUCTION IS A DIRECT RESPONSE TO THAT AND AN

09:42AM 2   ATTEMPT TO PUT GUARDRAILS IN, AND NOW THEY'RE TRYING TO GO BACK

09:42AM 3   TO, WELL, THEY'RE JUST INVESTORS AND MAYBE THEY DESERVED TO

09:42AM 4   LOSE MONEY.

09:42AM 5      THAT'S NOT PROPER, YOUR HONOR.

09:42AM 6         MS. SAHARIA:  YOUR HONOR, WE'RE NOT ARGUING THAT

09:42AM 7   MAYBE THEY DESERVED TO LOSE MONEY.  THAT'S NOT A FAIR ARGUMENT

09:42AM 8   FROM MS. VOLKAR.

09:42AM 9      BOTH PARTIES, AS WE'VE BEEN CRAFTING THESE INSTRUCTIONS,

09:42AM 10  HAVE REALIZED THINGS THAT WE OBJECT TO.

09:42AM 11     WE REALIZED ON FRIDAY THAT WE OBJECT TO THE WORD "VICTIM."

09:42AM 12  THEY REALIZED THEY WANTED TO ADD THE NAMES OF THE INVESTORS.

09:42AM 13  WE'RE ALL ACTING IN GOOD FAITH HERE.

09:42AM 14     BUT THE FACT OF WHETHER THEY'RE VICTIMS PRESUPPOSES THAT A

09:42AM 15  CRIME HAS OCCURRED, AND THAT'S WHAT THE JURY IS SUPPOSED TO

09:42AM 16  DECIDE, SO LET'S NOT CALL THEM AFFIRMATIVELY VICTIMS.

09:42AM 17        THE COURT:  IS THERE ANY QUESTION THAT THEY LOST

09:42AM 18  MONEY, THEY LOST THEIR INVESTMENT?

09:42AM 19        MS. SAHARIA:  NO, YOUR HONOR.  BUT THAT DOESN'T MEAN

09:42AM 20  THEY'RE A VICTIM.

09:42AM 21        THE COURT:  SHOULD WE CALL THEM THEN "INVESTORS WHO

09:42AM 22  LOST THEIR INVESTMENT," OR WORDSMITH THAT SOMEHOW SO THAT

09:42AM 23  REFLECTS WHAT REALLY HAPPENED?

09:43AM 24        MS. SAHARIA:  THE INDICTMENT --

09:43AM 25        THE COURT:  YOU SUGGEST THAT THEY'RE NOT VICTIMS YET

```
09:43AM   1    BECAUSE THAT HAS NOT YET BEEN PROVED.
09:43AM   2         BUT WHAT WE KNOW IS THAT THEY HAVE LOST MONEY.
09:43AM   3         MS. SAHARIA:  THE INDICTMENT CALLS THEM "INVESTORS,"
09:43AM   4    SO LET'S USE THE WORD OF THE INDICTMENT AND CALL THEM
09:43AM   5    "INVESTORS," YOUR HONOR.
09:43AM   6         THE COURT:  AND SHOULD WE IDENTIFY THEM IN SOME
09:43AM   7    MANNER AS THE INVESTORS WHO LOST MONEY SOMEHOW?  DO YOU WANT TO
09:43AM   8    WORDSMITH THAT?  I'LL GIVE YOU A CHANCE TO DO THAT WHILE WE
09:43AM   9    MOVE ON TO THE OTHERS.
09:43AM  10         MS. SAHARIA:  I WILL CONSIDER THAT WHILE WE TALK
09:43AM  11    ABOUT THE CMS REPORT, YOUR HONOR.
09:43AM  12         THE COURT:  RIGHT.
09:43AM  13         MS. SAHARIA:  IF WE COULD SKIP THE CMS REPORT AND
09:43AM  14    JUST BRIEFLY TOUCH ON THE VERDICT FORM?  I THINK THAT'S THE
09:43AM  15    ONLY REMAINING ISSUE.
09:43AM  16         THE COURT:  OKAY.
09:43AM  17         MS. SAHARIA:  THE PARTIES ARE IN AGREEMENT AS TO THE
09:43AM  18    SUBSTANCE OF THE VERDICT FORM, WITH ONE EXCEPTION, WHICH IS
09:43AM  19    IT'S OUR POSITION THAT THE WORD "NOT GUILTY" SHOULD GO BEFORE
09:43AM  20    THE WORD "GUILTY."  GIVEN THE PRESUMPTION OF INNOCENCE, IT'S
09:43AM  21    APPROPRIATE FOR THE WORD "NOT GUILTY" TO GO FIRST SINCE
09:44AM  22    MS. HOLMES IS PRESUMED TO BE INNOCENT.
09:44AM  23         THE COURT:  UNDERSTOOD.
09:44AM  24         MS. VOLKAR:  YOUR HONOR, WE JUST MIMICKED, AS FAR AS
09:44AM  25    WE KNOW, EVERY VERDICT FORM THAT WE'RE USED TO SEEING.  IT JUST
```

09:44AM 1    TENDS TO READ, IN ORDER, GUILTY/NOT GUILTY, AND I THINK THAT,

09:44AM 2    AS WITH A LOT OF THE INSTRUCTIONS, THAT THE DEFENSE IS OVERLY

09:44AM 3    WORDSMITHING AND TRYING TO SPLIT HAIRS WHERE IT'S REALLY JUST

09:44AM 4    UNNECESSARY.

09:44AM 5           THE COURT:  THANK YOU.

09:44AM 6       I'LL LEAVE THE VERDICT FORM AS GUILTY/NOT GUILTY.  THAT'S

09:44AM 7    WHAT I'VE DONE IN MY PRACTICE.

09:44AM 8           MS. SAHARIA:  UNDERSTOOD.

09:44AM 9           THE COURT:  I DON'T THINK THERE'S ANYTHING UNTOWARD

09:44AM 10   ABOUT IT.  I DON'T THINK IT PREJUDICES A DEFENDANT AT ALL.

09:44AM 11      THE JURY IS GOING TO BE ADVISED OF THE PRESUMPTION OF

09:44AM 12   INNOCENCE.  THEY WERE THOROUGHLY VETTED ON THAT CONCEPT DURING

09:44AM 13   VOIR DIRE BOTH FROM COUNSEL AND FROM THE COURT, AND I'VE DONE

09:44AM 14   THAT -- I THINK I'VE MADE SOME COMMENTS ABOUT THAT THROUGHOUT

09:44AM 15   THE TRIAL IN REGARDS TO CERTAIN TOPICS THAT HAVE COME UP.

09:44AM 16          MS. SAHARIA:  BEFORE I CEDE THE PODIUM TO MR. LEMENS

09:44AM 17   ON THE CMS ISSUE, I JUST KIND OF WANTED TO MAKE ONE POINT CLEAR

09:45AM 18   WITH RESPECT TO OUR OBJECTIONS, AND THEN TALK ABOUT THE PROCESS

09:45AM 19   OF READING THE INSTRUCTIONS TO THE JURY.

09:45AM 20      IN THE PRIOR CHARGE CONFERENCES, OF COURSE WE DIDN'T HAVE

09:45AM 21   DRAFT INSTRUCTIONS YET FROM THE COURT, SO WE WERE OBJECTING TO

09:45AM 22   EITHER THE GOVERNMENT'S PROPOSAL OR THE MODEL INSTRUCTIONS.

09:45AM 23      I JUST WANT TO MAKE CLEAR AND REITERATE TO THE EXTENT THAT

09:45AM 24   THE COURT HAS NOW ADOPTED THOSE MODELS OR ADOPTED THE

09:45AM 25   GOVERNMENT'S PROPOSALS, OF COURSE WE HAVE THE SAME OBJECTIONS,

09:45AM 1    AND I JUST WANTED TO REITERATE THOSE FOR THE RECORD.

09:45AM 2              THE COURT:  OKAY.

09:45AM 3              MS. SAHARIA:  AND THEN WITH RESPECT TO THE READING

09:45AM 4    OF THE INSTRUCTIONS TO THE JURY, AS THE COURT NO DOUBT KNOWS,

09:45AM 5    RULE 30(D) REQUIRES THAT THERE BE, OR AT LEAST SUGGESTS, THAT

09:45AM 6    THERE BE ANOTHER OBJECTION RIGHT AFTER THE INSTRUCTIONS ARE

09:45AM 7    READ TO THE JURY BEFORE THEY RETIRE.

09:45AM 8         THE NINTH CIRCUIT HAS ALLOWED THAT TO OCCUR BY AN

09:45AM 9    INCORPORATING OF THE PREVIOUSLY STATED OBJECTIONS.

09:45AM 10        WE ARE ENTITLED TO DO THAT OUTSIDE OF THE HEARING OF THE

09:46AM 11   JURY, BUT OF COURSE WE'RE NOT HAVING BENCH CONFERENCES WITH THE

09:46AM 12   COURT DUE TO THE COVID PROTOCOLS.

09:46AM 13        SO I WASN'T SURE IF THE COURT HAD AN IDEA AS TO HOW WE

09:46AM 14   MIGHT DO THAT OUTSIDE OF THE HEARING OF THE JURY.

09:46AM 15        I THOUGHT PERHAPS THE COURT COULD STATE ON THE RECORD, IF

09:46AM 16   THE GOVERNMENT WILL CONCEDE TO THIS, "I NOW INCORPORATE BOTH

09:46AM 17   PARTIES' PRIOR OBJECTIONS," AND JUST ASK IF THERE ARE ANY

09:46AM 18   ADDITIONAL OBJECTIONS AT THAT TIME.

09:46AM 19        I JUST WOULD THROW THAT OUT AS A PROPOSAL FOR HOW TO

09:46AM 20   HANDLE THAT.

09:46AM 21             THE COURT:  WELL, THANK YOU.

09:46AM 22        THE COURT DOES, AT THE CONCLUSION OF THE READING OF THE

09:46AM 23   INSTRUCTIONS, THE COURT DOES TURN TO EACH TABLE AND ASK, "ARE

09:46AM 24   THERE ANY OBJECTIONS TO THE COURT'S READING OF THE

09:46AM 25   INSTRUCTIONS?"

09:46AM 1      AND I THINK THE SPIRIT OF THAT IS, DID THE COURT MAKE A

09:46AM 2   MISTAKE --

09:46AM 3           MS. SAHARIA:  UNDERSTOOD, YOUR HONOR.

09:46AM 4           THE COURT:  -- WHEN IT READ WHAT WE HAD PREVIOUSLY

09:46AM 5   AGREED TO.  THAT'S WHY WE'RE MEETING THIS MORNING.

09:46AM 6           MS. SAHARIA:  YES.

09:46AM 7           THE COURT:  AND THAT'S THE REAL SPIRIT, I BELIEVE,

09:46AM 8   OF THAT QUESTION, IS IF THE COURT MADE A MISTAKE IN READING,

09:46AM 9   THAT'S THE TIME TO CORRECT IT.

09:47AM 10      ARE YOU SUGGESTING, MS. SAHARIA, THAT IF YOU ANSWER "NO

09:47AM 11  OBJECTION" TO THAT, THAT MEANS THAT YOU'RE SAYING --

09:47AM 12          MS. SAHARIA:  I HAVE SOMETIMES SEEN THE GOVERNMENT

09:47AM 13  MAKE THAT ARGUMENT -- I'M NOT SUGGESTING THAT THESE PROSECUTORS

09:47AM 14  WOULD -- BUT THERE'S SOME CASE LAW THAT SUGGESTS THAT IT'S

09:47AM 15  APPROPRIATE AT THAT TIME JUST TO SAY "WE INCORPORATE BY

09:47AM 16  REFERENCE OUR PRIOR OBJECTIONS," AND LEAVE IT AT THAT.

09:47AM 17      SO I JUST WANTED TO THROW OUT THAT WE WOULD FEEL MORE

09:47AM 18  COMFORTABLE IF WE HAD THE OPPORTUNITY TO SAY "WE INCORPORATE

09:47AM 19  OUR PRIOR OBJECTIONS."

09:47AM 20          THE COURT:  IN FRONT OF THE JURY?

09:47AM 21          MS. SAHARIA:  NO, WE PREFER NOT TO DO THAT IN FRONT

09:47AM 22  OF THE JURY.

09:47AM 23          THE COURT:  SO WHEN I ASK THE QUESTION, "DO YOU HAVE

09:47AM 24  ANY OBJECTIONS TO THE COURT'S READING OF THE INSTRUCTIONS," AND

09:47AM 25  IF YOU DO --

8860

09:47AM 1          MS. SAHARIA:  IF WE DO, WE WOULD SAY, "YES, YOUR

09:47AM 2    HONOR," AND WE WOULD HAVE TO EXCUSE THE JURY.

09:47AM 3          BUT I ASSUME THE COURT WILL READ THEM PROPERLY, SO I DON'T

09:47AM 4    ANTICIPATE THAT HAPPENING.

09:47AM 5          PERHAPS WE CAN JUST SAY "NOTHING FURTHER, YOUR HONOR," AND

09:47AM 6    THEN YOUR HONOR CAN JUST SAY SOMETHING LIKE, "I UNDERSTAND THE

09:48AM 7    PARTIES TO INCORPORATE THEIR PRIOR OBJECTIONS," SOMETHING LIKE

09:48AM 8    THAT.

09:48AM 9          THE COURT:  CAN'T WE DO THAT IN ADVANCE OF THAT?

09:48AM 10          MS. SAHARIA:  WE COULD DO THAT RIGHT IN ADVANCE OF

09:48AM 11    THE READING, WHENEVER THERE'S AN APPROPRIATE BREAK, MAYBE WE

09:48AM 12    COULD DO SOMETHING LIKE THAT.

09:48AM 13          THE COURT:  OKAY.

09:48AM 14        MS. VOLKAR?

09:48AM 15          MS. VOLKAR:  YOUR HONOR, I DON'T SEE ANY REASON WHY

09:48AM 16    THE PARTIES CAN'T DO WHAT THEY'VE DONE SORT OF AT OTHER POINTS

09:48AM 17    DURING THE TRIAL IN FRONT OF THE JURY WHEN THERE HAS BEEN

09:48AM 18    LENGTHY DISCUSSION THE MORNING OF, SUCH AS "WE INCORPORATE OUR

09:48AM 19    PRIOR DISCUSSION," OR "NOTHING FURTHER BEYOND OUR PRIOR

09:48AM 20    DISCUSSION" OR "NOTHING FURTHER BEYOND OUR PRIOR OBJECTIONS."

09:48AM 21    I THINK THE PARTIES HAVE BEEN DOING THAT THROUGHOUT THIS TRIAL.

09:48AM 22          PERHAPS I'M NOT FULLY SEEING THE ISSUE HERE, BUT I GUESS

09:48AM 23    THAT'S THE GOVERNMENT'S POSITION IS SOMETHING LIKE THAT COULD

09:48AM 24    BE SAID.

09:48AM 25          MS. SAHARIA:  I THINK WE COULD SAY "NOTHING FURTHER

09:48AM 1    IN ADDITION, YOUR HONOR."  BUT IF THE COURT COULD THEN SAY,

09:48AM 2    "UNDERSTOOD, THE PRIOR OBJECTIONS ARE INCORPORATED," SOMETHING

09:48AM 3    LIKE THAT WOULD BE HELPFUL TO US, YOUR HONOR.

09:48AM 4            THE COURT:  WELL, THERE'S NOTHING MAGICAL ABOUT

09:48AM 5    READING THE INSTRUCTIONS THAT SOMEHOW EVISCERATES YOUR PRIOR

09:49AM 6    OBJECTIONS.  THEY'RE IN THE RECORD.

09:49AM 7            MS. SAHARIA:  YES, YOUR HONOR.

09:49AM 8            THE COURT:  AND THEY'RE PRESERVED.

09:49AM 9            MS. SAHARIA:  THANK YOU.

09:49AM 10           THE COURT:  BUT IF YOU WOULD LIKE ME, OUT OF AN

09:49AM 11   ABUNDANCE OF CAUTION, TO ALLOW YOU TO STATE THAT, I'LL LET YOU

09:49AM 12   STATE THAT ON THE RECORD IF YOU WOULD LIKE.

09:49AM 13           MS. SAHARIA:  OKAY.  THANK YOU.

09:49AM 14           MS. VOLKAR:  THAT'S FINE WITH THE GOVERNMENT.  THANK

09:49AM 15   YOU.

09:49AM 16           MS. SAHARIA:  I'M GOING TO TURN THE PODIUM OVER TO

09:49AM 17   MR. LEMENS.

09:49AM 18           THE COURT:  OKAY.

09:49AM 19        (PAUSE IN PROCEEDINGS.)

09:49AM 20           THE COURT:  MS. SAHARIA, MS. KRATZMANN JUST PROVIDED

09:49AM 21   ME A COPY OF THE VERDICT FORM, AND IS THERE A NUMERICAL --

09:49AM 22   LET'S SEE, IT'S ON PAGE 2.

09:49AM 23           MS. SAHARIA:  WELL, BECAUSE A COUNT WAS ELIMINATED,

09:49AM 24   WE SKIPPED THAT NUMBER SO THAT THE NUMBERS IN THE PARAGRAPHS

09:49AM 25   CORRESPOND TO THE NUMBERS OF THE COUNT.  THE COURT COULD CHOOSE

09:49AM   1    TO DO IT DIFFERENTLY.  THAT WAS THE REASON FOR THAT MISSING

09:49AM   2    NUMBER.

09:49AM   3             THE COURT:  OKAY.

09:49AM   4             MS. SAHARIA:  THAT'S THE COUNT THAT WAS DISMISSED BY

09:49AM   5    THE GOVERNMENT.

09:49AM   6             THE COURT:  MS. VOLKAR?

09:50AM   7             MS. VOLKAR:  THE GOVERNMENT AGREED TO THAT

09:50AM   8    FORMULATION.  IT JUST MAKES IT A LITTLE BIT EASIER, EIGHT IS

09:50AM   9    EIGHT AND TEN IS TEN.

09:50AM  10        BUT WE DON'T OBJECT IF THE COURT WANTS TO NUMERICALLY

09:50AM  11    ORDER THE PARAGRAPHS.

09:50AM  12        (DISCUSSION OFF THE RECORD.)

09:50AM  13             THE COURT:  WELL, I THINK WE HAVE AN INTELLIGENT AND

09:50AM  14    SMART JURY, BUT THE CONCERN IS WHETHER OR NOT THEY'LL NOT

09:50AM  15    UNDERSTAND THAT NINE IS GONE.  DO WE NEED TO ADD SOMETHING

09:50AM  16    HERE, OR WOULD THAT BE TOO MUCH INFORMATION FOR THEM?

09:50AM  17             MS. SAHARIA:  I THINK THE GOVERNMENT, AS I RECALL,

09:50AM  18    DISMISSED THAT COUNT IN FRONT OF THE JURY, SO I DON'T THINK

09:50AM  19    THERE'S ANY NEED TO ADD THAT TO THE VERDICT FORM.

09:50AM  20        I DON'T FEEL STRONGLY ABOUT THE NUMBERING OF THE

09:50AM  21    PARAGRAPHS.  IF YOUR HONOR WANTS THEM TO GO IN NUMERICAL ORDER

09:51AM  22    AND SKIP NINE, THAT'S FINE WITH ME.

09:51AM  23             THE COURT:  WELL, WE'RE DOING SO MUCH TO HELP THIS

09:51AM  24    JURY UNDERSTAND THINGS.

09:51AM  25             MS. VOLKAR:  I AGREE, YOUR HONOR.

09:51AM 1          I WOULD RATHER JUST NUMERICALLY ORDER THE PARAGRAPHS THAN

09:51AM 2    TRY TO CONTINUE TO ADD ANYTHING TO THE VERDICT FORM.  I THINK

09:51AM 3    THE PARTIES HAVE DONE A LOT IN MEET AND CONFER THUS FAR AND

09:51AM 4    THERE'S NO REASON TO INTERJECT SOMETHING FURTHER IN THAT.

09:51AM 5          THE COURT:  SO YOU'D LIKE TO RENUMBER THEM SO

09:51AM 6    THERE'S NO SKIP, NO BREAK?

09:51AM 7          MS. VOLKAR:  I PREFER THAT.  I DO THINK I'M FINE THE

09:51AM 8    WAY IT IS, BUT I'M IN THE SAME POSITION AS MS. SAHARIA, I DON'T

09:51AM 9    HAVE A STRONG POSITION ABOUT RENUMBERING IF THE COURT THINKS

09:51AM 10   THAT WOULD BE EASIER FOR THE JURY.

09:51AM 11         MS. SAHARIA:  IT'S UP TO THE COURT'S PREFERENCE.

09:51AM 12         THE COURT:  WELL, WHAT DO YOU THINK IS GOING TO BE

09:51AM 13   EASIER FOR THE JURY TO CAPTURE?  ARE WE GOING TO HAVE JURY

09:51AM 14   CONFUSION IF THERE IS NO NINE, OR WILL THEY UNDERSTAND THAT

09:51AM 15   NINE WAS DISMISSED?

09:51AM 16         MS. SAHARIA:  THEY WERE TOLD ABOUT THE DISMISSAL IN

09:52AM 17   THEIR PRESENCE, SO I'M NOT SURE THAT THEY WILL BE CONFUSED.

09:52AM 18         THE COURT:  I SUPPOSE WE STILL HAVE TO TALK ABOUT IF

09:52AM 19   THEY'RE GOING TO GET SOMETHING, EITHER THE INDICTMENT OR

09:52AM 20   SOMETHING THAT IS LIKE THE INDICTMENT THAT HAS THE FULSOME.  I

09:52AM 21   KNOW YOU WERE CONCERNED ABOUT THAT, MS. SAHARIA, AND I DON'T

09:52AM 22   KNOW IF THE GOVERNMENT STILL INTENDS TO DO SOMETHING TO PROVIDE

09:52AM 23   THEM WITH A LIST OF THE CHARGES.

09:52AM 24         MS. SAHARIA:  I THINK I HEARD MS. VOLKAR SAY THAT

09:52AM 25   THEY THINK THAT THE INSTRUCTIONS ARE SUFFICIENT FOR THAT

09:52AM   1    PURPOSE, AND THAT'S OUR POSITION AS WELL.

09:52AM   2         I'M -- I WILL GO BACK AND LOOK AT JUST THE COUNTS, THE

09:52AM   3    COUNT PARAGRAPHS, AND I CAN CONFER WITH MY TEAM ABOUT THAT.

09:52AM   4              THE COURT:  OKAY.

09:52AM   5              MS. SAHARIA:  BUT OUR POSITION IS THAT WE THINK THE

09:52AM   6    INSTRUCTIONS ARE SUFFICIENT.

09:52AM   7              THE COURT:  ALL RIGHT.  THANK YOU.

09:52AM   8         I'LL LEAVE IT AS IS.  IT'S MY EXPERIENCE THAT COUNSEL

09:52AM   9    ALWAYS REFERENCE THE VERDICT FORM MORE -- USUALLY REFERENCE THE

09:52AM  10    VERDICT FORM WHEN THEY ASK THE JURY TO DO WHAT THEY WOULD LIKE

09:52AM  11    THEM TO DO, AND THEY REFERENCE THE VERDICT FORM AND IT'S

09:52AM  12    AVAILABLE FOR YOU TO DO THAT IF YOU WISH, IF YOU THINK

09:52AM  13    CLARIFICATION IS NEEDED.

09:52AM  14              MS. SAHARIA:  THANK YOU.

09:52AM  15              THE COURT:  SO I'LL LEAVE IT AS IT IS WITHOUT

09:53AM  16    RENUMBERING IT.

09:53AM  17         OKAY?

09:53AM  18              MS. SAHARIA:  THANK YOU.

09:53AM  19              MS. VOLKAR:  THANK YOU, YOUR HONOR.

09:53AM  20         ONE LAST POINT BEFORE MS. SAHARIA LEAVES THE PODIUM.

09:53AM  21         GOING BACK TO THE ALLEGED VICTIM OR THE VICTIM'S CONDUCT,

09:53AM  22    I WOULD LIKE TO SAY THAT THE GOVERNMENT'S POSITION IS THAT IF

09:53AM  23    WORDSMITHING IS GOING TO OCCUR, THEN "ALLEGED VICTIM" IS BETTER

09:53AM  24    THAN -- I KNOW THERE WERE MULTIPLE OTHER FORMULATIONS THAT THE

09:53AM  25    COURT WAS GOING TO CONSIDER, AND I KNOW MS. SAHARIA WAS GOING

09:53AM 1    TO THINK ABOUT THEM.

09:53AM 2         SO I WANTED TO, FOR HER BENEFIT, SAY THAT THE GOVERNMENT'S

09:53AM 3    PREFERENCE WOULD BE TO ADD JUST "ALLEGED VICTIM" RATHER THAN TO

09:53AM 4    GO BACK AND TRY AND RESTART NEGOTIATING ABOUT WHAT THE PROPER

09:53AM 5    DESCRIPTION OF THIS CLASS OF INDIVIDUALS IS.

09:53AM 6         THE COURT:  ALL RIGHT.  THANK YOU.

09:53AM 7         MS. SAHARIA:  THAT'S FINE WITH ME, YOUR HONOR.

09:53AM 8         THE COURT:  YOU'RE STILL GOING TO WORDSMITH THOUGH.

09:53AM 9         MS. SAHARIA:  I WILL, BUT IT SOUNDS LIKE MS. VOLKAR

09:53AM 10   WOULD TAKE "ALLEGED VICTIM" OVER ANY WORDSMITHING, BUT I'M

09:53AM 11   HAPPY TO GO BACK AND LOOK AT IT.

09:53AM 12        THE COURT:  WELL, LET'S SEE HOW CREATIVE YOU CAN BE

09:53AM 13   WHILE I'M TALKING TO MR. LEMENS.  I'M SURE YOU'LL COME UP WITH

09:53AM 14   SOMETHING.

09:53AM 15        MS. SAHARIA:  OKAY.  I'LL TRY TO BE CREATIVE,

09:54AM 16   YOUR HONOR.

09:54AM 17        THE COURT:  ALL RIGHT.

09:54AM 18   CMS REPORT.  AND THIS IS REGARDING JURY INSTRUCTION 29, I

09:54AM 19   BELIEVE.

09:54AM 20        MR. LEMENS:  I BELIEVE THAT'S HOW WE GOT HERE,

09:54AM 21   YOUR HONOR, YES.

09:54AM 22        THE COURT:  AND I HAVE 29, WHICH WAS -- I THINK WE

09:54AM 23   TALKED ABOUT THIS LAST WEEK ON FRIDAY, AND THE WHOLE TOPIC IS

09:54AM 24   WHETHER OR NOT 4621A AND B SHOULD COME IN FOR THE LIMITED

09:54AM 25   PURPOSE OF STATE OF MIND.  I THINK ONE OF THEM WAS ADMITTED FOR

09:54AM 1      THAT PURPOSE, AND THE OTHER ONE WASN'T.

09:54AM 2           I TOLD YOU I WAS GOING TO READ THE TRANSCRIPTS OVER THE

09:54AM 3      WEEKEND.  I DID.  YOU IDENTIFIED PORTIONS THAT YOU WOULD LIKE

09:54AM 4      ME TO READ.  THAT WAS HELPFUL.

09:54AM 5           I THINK, MR. CLEARLY, YOU PROVIDED THE COURT WITH SOME

09:54AM 6      TRANSCRIPTS FRIDAY THAT I LOOKED AT ALSO AND READ OTHER

09:54AM 7      PORTIONS OF THE TRANSCRIPT.

09:54AM 8           SO WHAT ELSE WOULD YOU LIKE ME TO KNOW ON THIS?

09:54AM 9                MR. LEMENS:  SO I THINK, JUST FOR THE RECORD,

09:54AM 10     ANDREW LEMENS FOR THE RECORD.

09:55AM 11               THE COURT:  I SAID MR. CLEARY, DIDN'T I?  I

09:55AM 12     APOLOGIZE.

09:55AM 13               MR. LEMENS:  WE LOOK VERY SIMILAR.

09:55AM 14               THE COURT:  WHICH ONE OF YOU IS YOUNGER?  OH, YOU

09:55AM 15     CAN ANSWER THAT LATER.

09:55AM 16               MR. LEMENS:  HE IS, I THINK.

09:55AM 17          (LAUGHTER.)

09:55AM 18               THE COURT:  YOU ALL LOOK TERRIBLY YOUNG TO ME.

09:55AM 19               MR. LEMENS:  IF IT GIVES YOUR HONOR COMFORT, THIS IS

09:55AM 20     A COMMON PROBLEM WE'VE BEEN HAVING THROUGHOUT OUR TIME IN

09:55AM 21     SAN JOSE.

09:55AM 22          I WILL JUST SAY ON THE MOTION, MS. HOLMES'S POSITION IS,

09:55AM 23     OF COURSE, THAT THE DOCUMENTS, BOTH A AND B, CAME IN FOR A

09:55AM 24     LIMITED PURPOSE.

09:55AM 25          I THINK THE GOVERNMENT'S POSITION IS NOW 4621A CAME IN FOR

09:55AM 1    ITS TRUTH.  WE DISAGREE FOR THE REASONS WE SET FORTH IN OUR

09:55AM 2    PLEADING BOTH AS TO WHAT OCCURRED PRIOR TO DR. DAS'S TESTIMONY,

09:55AM 3    DURING DR. DAS'S TESTIMONY, AND THEN THE REPRESENTATIONS THAT

09:55AM 4    WERE MADE AFTER DR. DAS'S TESTIMONY AT THE CLOSE OF THE

09:55AM 5    GOVERNMENT'S CASE.

09:55AM 6        EVEN IF THEY CAME IN FOR THAT LIMITED PURPOSE, WE HAVE

09:56AM 7    CONCERNS UNDER RULE 403.  THOSE CONCERNS ARE THAT THE REPORT

09:56AM 8    ITSELF, THE CONTENT OF THE REPORT, AND THE CONTENT OF THE COVER

09:56AM 9    LETTER HAS VERY LITTLE PROBATIVE VALUE, IF ANYTHING, TO THE

09:56AM 10   ISSUES IN THE CASE, AND CONSIDERABLE PREJUDICE IN LIGHT OF THE

09:56AM 11   GOVERNMENT'S FAILURE TO CALL A CMS WITNESS WHO COULD PROVIDE

09:56AM 12   CONTEXT AROUND THE REPORT, HOW IT WAS DRAFTED, WHAT DECISIONS

09:56AM 13   WERE MADE AND, IN THE COURSE OF THAT DRAFTING, WHAT WAS

09:56AM 14   INCLUDED, WHAT WASN'T INCLUDED AND WHY, WHAT OTHER INFLUENCES

09:56AM 15   OR FACTORS WERE CONSIDERED BY CMS IN PUTTING THIS DOCUMENT

09:56AM 16   TOGETHER, AND, OF COURSE, JUST THE NATURE OF THE DOCUMENT

09:56AM 17   ITSELF AND THE IMPRIMATUR THAT IT CREATES EVEN IF COMING IN FOR

09:56AM 18   NOTICE.

09:56AM 19       I THINK THE GOVERNMENT HAS PUT FORWARD SEVERAL ARGUMENTS

09:56AM 20   AS TO ITS RELEVANCE.  THOSE ARE GENERAL STATEMENTS ABOUT, AS I

09:56AM 21   UNDERSTAND THEM, YOU KNOW, WE'VE TALKED -- YOU KNOW, THERE WAS

09:56AM 22   EVIDENCE ABOUT WHAT HAPPENED IN 2016 IN THIS CASE, AND

09:57AM 23   THEREFORE, THIS COMES IN.

09:57AM 24       OUR POSITION IS THAT THEY NEED TO CONNECT IT MORE CLOSELY

09:57AM 25   OR MORE DIRECTLY TO A SPECIFIC ISSUE.  WE DO NOT DISPUTE THAT

THE FACT OF THE CMS REPORT WAS ISSUED, THE FACT THAT AN

INSPECTION HAD OCCURRED, I THINK THERE'S EVEN BEEN SOME

TESTIMONY THAT THE CMS REPORT WAS GENERALLY NEGATIVE.

BUT THAT DOES NOT JUSTIFY THE ADMISSION OF THIS DOCUMENT

SIMPLY FOR NOTICE.  IF IT CAME IN FOR NOTICE, IF IT CAME IN FOR

STATE OF MIND, IT NEEDS TO CONNECT TO SOMETHING.  WHAT DOES

THAT STATE OF MIND INFORM?

I THINK THE BEST ANALOGY THAT I FOUND OVER THE WEEKEND

AFTER THINKING QUITE A BIT ABOUT THIS IS "THE

WALL STREET JOURNAL" ARTICLE THAT YOUR HONOR EXCLUDED FROM

EVIDENCE, OR THE SERIES OF ARTICLES.

THERE WAS PLENTY OF TESTIMONY IN THE CASE ABOUT THOSE

ARTICLES, THE FACT OF THOSE ARTICLES, WHAT HAPPENED AS A RESULT

OF THOSE ARTICLES, OR WHAT COULD HAVE HAPPENED, KIND OF HOW

THOSE ARTICLES WERE RESPONDED TO.

BUT THE ARTICLES DIDN'T NEED TO COME IN.

THAT'S THE SAME SITUATION HERE.  WE HAVE A REPORT, WE HAVE

A COVER LETTER THAT HAS INCREDIBLY PREJUDICIAL LANGUAGE, HAS

IMPLICATIONS OR SUGGESTIONS BASED ON THAT LANGUAGE, AND WAS NOT

SUBJECT TO CROSS-EXAMINATION SUCH THAT THE JURY UNDERSTANDS

WHAT IT MEANS BECAUSE THE GOVERNMENT DECIDED NOT TO CALL THE

WITNESS WHO COULD PROVIDE THAT CONTEXT.

SO THAT'S ALL TO SAY IT DIDN'T COME IN FOR ITS TRUTH,

NEITHER A NOR B IN OUR POSITION, AND EVEN IF IT CAME IN FOR

THAT LIMITED PURPOSE, IT SHOULD BE STRUCK UNDER 403.

09:58AM  1          THE COURT:  DOES IT -- THANK YOU.

09:58AM  2      DOES IT, DOES IT GO -- 4621, LET'S TALK ABOUT A AND B.

09:58AM  3      IF THE COURT FINDS THAT, IN LOOKING AT -- AND MS. VOLKAR,

09:58AM  4  I KNOW YOU'RE LISTENING CAREFULLY HERE -- BUT IN LOOKING AT THE

09:58AM  5  TOTALITY OF THE CONVERSATIONS IN THE TRANSCRIPTS, INCLUDING

09:58AM  6  CONVERSATION AT THE MIL AND OTHERS, IF THE COURT WERE TO FIND

09:59AM  7  THAT THE TOTALITY OF ALL OF THOSE CONVERSATIONS PRIOR TO THE

09:59AM  8  INTRODUCTION OF THE DOCUMENTS AND IN THE WAY THAT THEY WERE

09:59AM  9  INTRODUCED SUGGESTS THAT PARTIES WERE UNDER THE BELIEF THAT

09:59AM 10  THEY WERE COMING IN NOT FOR THEIR TRUTH, BUT JUST FOR THE ISSUE

09:59AM 11  OF NOTICE AND STATE OF MIND OF MS. HOLMES, THEN THE COURT --

09:59AM 12  AND IF THE COURT DECIDED TO ADMIT A AND B FOR THAT LIMITED

09:59AM 13  PURPOSE AND GIVE YOUR 29, FORMERLY 31, IT SEEMS THAT THAT MIGHT

09:59AM 14  ASSUAGE YOUR CONCERNS.

09:59AM 15          MR. LEMENS:  WE CERTAINLY OBJECT TO THE DOCUMENTS

09:59AM 16  COMING IN FOR THEIR TRUTH.

09:59AM 17      EVERYTHING I HAVE JUST EXPLAINED WOULD ALSO -- WE HAVE THE

09:59AM 18  SAME CONCERNS IF THEY CAME IN FOR A LIMITED PURPOSE BECAUSE

09:59AM 19  THERE WAS NO WITNESS TO CONTEXTUALIZE THE DOCUMENT.  THERE WAS

09:59AM 20  NO -- YOU KNOW, THEY STILL ARE INFLAMMATORY IF NOT EXPLAINED.

10:00AM 21      OF COURSE, YOU KNOW, THOSE CONCERNS WOULD BE GREATER

10:00AM 22  SUBSTANTIALLY IF THE DOCUMENTS CAME IN FOR THEIR TRUTH, BUT

10:00AM 23  THAT DOESN'T ASSUAGE ALL OF OUR CONCERNS.

10:00AM 24      AND, IN FACT, I THINK AS YOUR HONOR WILL RECALL, OUR

10:00AM 25  MOTION TO STRIKE WAS PREMISED ON THE IDEA THAT THEY CAME IN FOR

10:00AM 1  NOTICE, AND I BELIEVE MULTIPLE TIMES THAT WE HAVE TOLD THE

10:00AM 2  COURT THAT OUR CONCERNS WOULD HAVE BEEN RESOLVED IF THE

10:00AM 3  GOVERNMENT CALLED MS. BENNETT OR MR. YAMAMOTO TO TESTIFY ABOUT

10:00AM 4  THE DOCUMENT.  THAT DID NOT OCCUR.

10:00AM 5      AND BECAUSE THAT DID NOT OCCUR, WE THINK THE DOCUMENT

10:00AM 6  SHOULD BE STRUCK EVEN FOR THE LIMITED PURPOSE OF NOTICE.

10:00AM 7          THE COURT:  WELL, THANK YOU.

10:00AM 8      DON'T THEY SHOW, THE DOCUMENTS, THE DOCUMENTS TEND TO

10:00AM 9  SHOW -- AND THIS IS IN LIGHT OF THE EVIDENCE, BOTH EVIDENCE

10:00AM 10  THAT WAS DERIVED IN THE GOVERNMENT'S CASE, BUT ALSO IN

10:00AM 11  CROSS-EXAMINATION, AND I THINK WE ALL KNOW THAT THE DEFENSE

10:00AM 12  CASE IS TYPICALLY BEGINNING CROSS-EXAMINATION.  I THINK ONE OF

10:00AM 13  YOUR COLLEAGUES MAY HAVE SAID THAT.

10:00AM 14      AND SO THERE WAS EVIDENCE THAT WAS DEVELOPED THROUGH

10:01AM 15  CROSS-EXAMINATION THAT DID SOMEWHAT TETHER, CONNECT

10:01AM 16  MS. HOLMES'S STATE OF MIND, OR AT LEAST HER KNOWLEDGE, OF WHAT

10:01AM 17  WAS GOING ON IN THE LAB SUCH THAT UNDER 403, THESE DOCUMENTS, A

10:01AM 18  AND B, COULD PROVIDE SOME INFORMATION ABOUT WHETHER OR NOT SHE

10:01AM 19  WAS AWARE OF THE DEFICIENCIES IN THE LABS AND WHETHER OR NOT

10:01AM 20  SHE TOOK ANY ACTION ABOUT IT.

10:01AM 21          MR. LEMENS:  WELL, CERTAINLY IF THEY COME IN FOR

10:01AM 22  NOTICE -- THE DOCUMENTS WERE ISSUED AND ARE DATED IN JANUARY OF

10:01AM 23  2016 -- IT WOULD ONLY BE NOTICE AFTER THAT DATE.

10:01AM 24      FOR THE GOVERNMENT TO USE -- AND I'VE SEEN THIS ARGUMENT,

10:01AM 25  OF COURSE, IN THE GOVERNMENT'S PLEADING.

8871

```
10:01AM   1        FOR THE GOVERNMENT TO USE THAT DOCUMENT RETROACTIVELY

10:01AM   2   WOULD BE A PURPOSE FOR -- REQUIRING ITS TRUTH, AND FOR THE

10:01AM   3   GOVERNMENT TO TRY TO CONNECT THE CLAIMS OR THE STATEMENTS IN

10:01AM   4   THAT DOCUMENT TO TESTIMONY OR WHAT OCCURRED PREVIOUSLY WOULD

10:01AM   5   REQUIRE IT TO COME IN FOR ITS TRUTH, WHICH IS NOT WHAT HAPPENED

10:02AM   6   AND WE THINK IS, IS -- WOULD BE INCREDIBLY PROBLEMATIC.

10:02AM   7        THE COURT:  SO THE INVESTIGATION OCCURRED IN 2015, I

10:02AM   8   THINK.  IS THAT -- THAT'S WHEN CMS CAME, AND EARLIER, AND THEY

10:02AM   9   DRAFTED A REPORT IN NOVEMBER, I THINK IT WAS.

10:02AM  10        MR. LEMENS:  I BELIEVE WHAT THE RECORD REFLECTS IS

10:02AM  11   THAT THERE WAS AN INSPECTION IN SEPTEMBER, AND THERE WAS A

10:02AM  12   SUBSEQUENT FOLLOW-ON INSPECTION IN NOVEMBER, AND THERE'S OF

10:02AM  13   COURSE BEEN TESTIMONY ABOUT THAT, AND THAT THE REPORT ITSELF

10:02AM  14   WAS ISSUED IN JANUARY, AND IT WAS PROVIDED TO THE COMPANY IN

10:02AM  15   JANUARY.

10:02AM  16        THE COURT:  RIGHT.

10:02AM  17        MR. LEMENS:  SO TO THE EXTENT THE REPORT COMES IN

10:02AM  18   FOR NOTICE, IT IS NOTICE AS OF THE DATE IT IS ISSUED.

10:02AM  19        THE COURT:  AND WE HAVE EVIDENCE THAT YOUR CLIENT,

10:02AM  20   MS. HOLMES, TOOK SOME ACTION SUBSEQUENT TO HER NOTICE.

10:02AM  21    ISN'T THAT WHEN SHE FORMED THE BOARD, THE ADVISORY BOARD

10:02AM  22   AND DID SOME -- MADE SOME EMPLOYMENT DECISIONS AND OTHER

10:02AM  23   THINGS?

10:02AM  24        MR. LEMENS:  CERTAINLY, YOUR HONOR.

10:02AM  25    I THINK OUR POSITION IS THAT YOU DON'T NEED THE DOCUMENT
```

10:03AM 1    TO COME IN FOR THE GOVERNMENT TO MAKE ITS ARGUMENT ABOUT THE

10:03AM 2    REPORT, THE FACT THAT THE REPORT WAS NEGATIVE.

10:03AM 3         THE FACT THAT THERE WAS CONSIDERABLE TESTIMONY ABOUT THE

10:03AM 4    INSPECTION APART FROM THE DOCUMENT I THINK IS, IS IMPORTANT,

10:03AM 5    THE FACT THAT THE GOVERNMENT WAS ABLE TO ASK WITNESSES ABOUT

10:03AM 6    THE INSPECTION OR THE REPORT OR THE IMPLICATIONS THEREOF

10:03AM 7    WITHOUT THE DOCUMENT.  FOR EXAMPLE, THEY DID NOT SHOW

10:03AM 8    MS. HOLMES THE DOCUMENT.  THEY DID NOT ASK HER QUESTIONS ABOUT

10:03AM 9    THE DOCUMENT.  THEY WERE ABLE TO JUST --

10:03AM 10        THE COURT:  SO I THOUGHT ALSO ABOUT -- WE'VE HAD

10:03AM 11   TESTIMONY FROM MS. CHEUNG AND MR. SHULTZ ABOUT THE LAB AND

10:03AM 12   MS. HOLMES HAVING NOTICE, POTENTIAL NOTICE ABOUT THAT FROM

10:03AM 13   THOSE PARTIES IN SOME MANNER.

10:03AM 14        MR. LEMENS:  UH-HUH.

10:03AM 15        THE COURT:  DOES THIS TIE BACK TO THAT?  WOULDN'T

10:03AM 16   THAT BE RELEVANT FOR THAT CONSIDERATION AS TO NOTICE?

10:04AM 17        MR. LEMENS:  AGAIN, IF THE REPORT IS ISSUED IN

10:04AM 18   JANUARY -- AND I BELIEVE THE TESTIMONY FROM MS. CHEUNG IS THAT

10:04AM 19   HER CONCERNS, AND MR. SHULTZ, WAS THAT THEIR CONCERNS WERE

10:04AM 20   RAISED IN 2014.

10:04AM 21        MS. CHEUNG TESTIFIED THAT SHE DID NOT INFORM MS. HOLMES OF

10:04AM 22   THOSE CONCERNS IN 2014.  MR. SHULTZ DID.

10:04AM 23        THE FACT THAT MS. HOLMES LATER RECEIVED NOTICE IN 2016 OF

10:04AM 24   PROBLEMS WITH THE LAB, TO CONNECT THE TWO -- ONE, THERE'S NO

10:04AM 25   EVIDENCE IN THE RECORD CONNECTING THOSE TWO.  THE GOVERNMENT,

10:04AM 1    AGAIN, DID NOT SHOW MS. HOLMES THE REPORT AND ASK HER, YOU

10:04AM 2    KNOW, DOES THIS LINE UP WITH MR. SHULTZ'S CONCERNS AS YOU

10:04AM 3    UNDERSTOOD THEM?  THEY ASKED THE QUESTION AT THE GENERAL LEVEL,

10:04AM 4    AND I BELIEVE HER TESTIMONY WAS THAT IT DID NOT.

10:04AM 5        BUT I DON'T SEE WHERE THE CONNECTION IS BETWEEN THOSE TWO.

10:04AM 6    IT'S, IT'S -- THERE'S EITHER -- THERE'S SOME SORT OF MISSING

10:04AM 7    LINK IN WHAT THE GOVERNMENT SEEKS TO ARGUE.

10:04AM 8        BUT CERTAINLY NOT A REPORT THAT COMES IN FOR NOTICE IN

10:04AM 9    2016 CAN THEN BE USED RETROACTIVELY TO PROVE THAT MS. CHEUNG OR

10:04AM 10   MR. SHULTZ WAS, IN FACT, CORRECT.

10:04AM 11       PERHAPS THE GOVERNMENT COULD ARGUE SOMETHING AS OF 2016,

10:05AM 12   BUT TO GO BACK EARLIER AND SUGGEST STATE OF MIND IN 2014 USING

10:05AM 13   NOTICE THAT WAS GIVEN IN 2016 SEEMS LIKE WE HAVE A LOGICAL

10:05AM 14   ISSUE.

10:05AM 15           THE COURT:  SO I THINK WHAT YOU'RE SAYING IS THAT

10:05AM 16   YOU OBJECT TO IT COMING IN AT ALL, BUT IF IT COMES IN FOR

10:05AM 17   NOTICE, THE NOTICE IS FROM JANUARY 2016 FORWARD, AND THE

10:05AM 18   GOVERNMENT WOULD NOT BE PERMITTED THEN TO ARGUE THAT SHE

10:05AM 19   RECEIVED -- SHE, MS. HOLMES -- RECEIVED NOTICE IN JANUARY OF

10:05AM 20   2016 AND YOU SHOULD, JURY, LADIES AND GENTLEMEN OF THE JURY,

10:05AM 21   THEN FIND THAT SHE KNEW IN 2013 AND 2014 THAT THERE WERE

10:05AM 22   PROBLEMS.  YOU CAN'T USE THAT PIECE OF EVIDENCE.

10:05AM 23       THEY COULD CONSIDER MR. CHEUNG -- OR MS. CHEUNG,

10:05AM 24   MR. SHULTZ AND OTHER INDICIA AS THEY DECIDE THAT, BUT THEY

10:05AM 25   CAN'T USE THE CMS REPORT GOING BACK.

8874

```
10:05AM   1          IS THAT WHAT YOU'RE SAYING?

10:05AM   2               MR. LEMENS:  I BELIEVE THAT'S A FAIR

10:06AM   3      CHARACTERIZATION, YOUR HONOR.

10:06AM   4               THE COURT:  OKAY.

10:06AM   5          MS. VOLKAR?

10:06AM   6               MS. VOLKAR:  YOUR HONOR, IT WON'T SURPRISE YOU TO

10:06AM   7      LEARN THAT THE GOVERNMENT STRONGLY DISAGREES.

10:06AM   8          BUT TWO KEY ISSUES, AND I DON'T WANT TO LOSE SIGHT OF THE

10:06AM   9      FIRST ONE, THE MAIN REASON THAT WE'RE HERE IS THE JURY

10:06AM  10      INSTRUCTION, AND THE GOVERNMENT, AGAIN, STRONGLY OBJECTS TO ANY

10:06AM  11      INSTRUCTION THAT SINGLES OUT A PIECE OF EVIDENCE ALONG THE

10:06AM  12      LINES OF WHAT THE DEFENSE HAS SUGGESTED IN WHAT I THINK IS NOW

10:06AM  13      NUMBER 29.

10:06AM  14          I APOLOGIZE.  I'M WORKING OFF OF AN OUTDATED COPY.

10:06AM  15          IN FACT, IN MY SPARE TIME THIS WEEKEND I WENT BACK AND

10:06AM  16      LOOKED AT ALL OF THE DOCUMENTS THAT WERE ADMITTED FOR A LIMITED

10:06AM  17      PURPOSE.  THERE'S APPROXIMATELY 20.

10:06AM  18          THE MAJORITY OF THEM ARE AFTER 2016 OR AFTER 2017,

10:06AM  19      INCLUDING, AS WE PUT IN OUR PAPERS, THE MULTIPLE DOCUMENTS

10:06AM  20      DEFENDANTS SUBMITTED FOR PEER REVIEW TO SHOW THAT THE

10:06AM  21      TECHNOLOGY WORKED, INCLUDING SEVERAL THINGS RELATED TO THE AACC

10:06AM  22      CONFERENCE THAT THE DEFENDANT AND OUR TEAM HAS ARGUED WAS

10:07AM  23      RELEVANT TO HER STATE OF MIND TO SHOW THAT THE TECHNOLOGY

10:07AM  24      WORKED.

10:07AM  25          ALL OF THOSE THINGS ARE AFTER THE CMS REPORT AND AFTER A
```

8875

10:07AM   1       STATEMENT FROM REGULATORS AND HER OWN INTERNAL TEAM, DR. DAS,

10:07AM   2       THAT THE DEVICE, OR AT LEAST A VERSION OF IT, DID NOT WORK, AND

10:07AM   3       THE VERSION THAT THEY WERE USING FOR PATIENTS DID NOT WORK.

10:07AM   4              THE COURT:  AND THOSE EXHIBITS WERE ADMITTED BY THE

10:07AM   5       DEFENSE?

10:07AM   6              MS. VOLKAR:  CORRECT, YOUR HONOR.

10:07AM   7          AND THERE WERE -- THERE ARE SEVERAL OTHER CATEGORIES AS

10:07AM   8       WELL, BUT I THINK THAT THOSE ARE THE ONES WITH THE CLOSEST

10:07AM   9       DIRECT TIE BECAUSE THEY ALL RELATE TO WHAT IS THE CAPABILITY OF

10:07AM  10       THE TECHNOLOGY IN 2016.

10:07AM  11          OF COURSE YOUR HONOR ALREADY NOTED THIS, AND THERE IS

10:07AM  12       EVIDENCE TO THIS EFFECT, TWO THINGS:  ONE, THE CMS INSPECTORS

10:07AM  13       HAVE SAID IN INTERVIEWS TO THE GOVERNMENT -- OF COURSE THEY

10:07AM  14       DIDN'T TESTIFY AT THIS TRIAL -- THAT THEY TOLD MS. HOLMES OF

10:07AM  15       THE STATE OF THE FINDINGS AND THAT IT WAS GOING TO BE IMMEDIATE

10:07AM  16       JEOPARDY AT THE CONCLUSION OF THE HEARINGS IN FALL OF 2015.

10:07AM  17          THAT EVIDENCE HAS NOT COME IN IN THAT FORM IN THIS TRIAL.

10:08AM  18          WHAT HAS COME IN IN THIS TRIAL -- AND A LOT OF IT, QUITE

10:08AM  19       FRANKLY, THROUGH THE TESTIMONY OF MS. HOLMES THROUGH BOTH

10:08AM  20       CROSS-EXAMINATION AND DIRECT -- IS THAT SHE LEARNED FROM

10:08AM  21       MR. BALWANI THAT THE INSPECTIONS WERE GOING VERY POORLY SUCH

10:08AM  22       THAT SHE FELT SHE HAD TO SHOW UP FOR THE LAST DAY THAT THE CMS

10:08AM  23       INSPECTORS WERE THERE IN NOVEMBER OF 2015.

10:08AM  24          THAT'S FAIRLY IN THE RECORD.  THAT'S FAIR FOR THE

10:08AM  25       GOVERNMENT TO ARGUE.

8876

10:08AM   1         I BELIEVE ON CROSS-EXAMINATION THE GOVERNMENT QUESTIONED

10:08AM   2    WHY SHE WAITED UNTIL JANUARY OF 2016 TO SEE THE REPORT TO SORT

10:08AM   3    OF KNOW EXACTLY HOW BAD THINGS WERE AND START CHANGING THINGS.

10:08AM   4    I WANT TO SAY HER ANSWER WAS "I DON'T KNOW."

10:08AM   5         BUT AGAIN, I WANT TO MAKE SURE THAT THE RECORD IS CLEAR OF

10:08AM   6    SORT OF WHAT IS IN THE RECORD TO ARGUE.  SHE HAD ENOUGH

10:08AM   7    KNOWLEDGE OF THE STATE OF THE LAB IN FALL OF 2015 TO THINK THAT

10:08AM   8    SHE HAD TO COME BACK FOR THE LAST DAY OF THE CMS INSPECTION.

10:08AM   9         AND THE GOVERNMENT CAN FAIRLY ARGUE FROM THAT.

10:08AM  10         NOW, TURNING TO --

10:08AM  11              THE COURT:  AND YOU DON'T NEED THESE TO ARGUE THAT?

10:09AM  12    YOU WOULDN'T NEED 4621A OR B TO ARGUE THAT?

10:09AM  13              MS. VOLKAR:  YOUR HONOR, THAT'S CORRECT.

10:09AM  14         BUT I REALLY DON'T WANT TO LOSE SIGHT OF -- THE DEFENSE

10:09AM  15    HAS REALLY NOT PUT FORWARD ANY ARGUMENT TO STRIKE 4621A AND B,

10:09AM  16    AND THAT'S WHERE I WANTED TO LAND, BECAUSE WHAT I HEARD

10:09AM  17    MR. LEMENS SAY A MOMENT AGO IS "THIS IS LIKE THE 'THE

10:09AM  18    WALL STREET JOURNAL' ARTICLE."

10:09AM  19         THINKING BACK TO THE MOTION IN LIMINE STAGE, THE

10:09AM  20    GOVERNMENT WANTED TO ADMIT "THE WALL STREET JOURNAL" AS WELL.

10:09AM  21    THE COURT STRUCK THAT FOR A HEARSAY PURPOSE.

10:09AM  22         WE'RE IN A VERY DIFFERENT LAND HERE.  THE COURT DID NOT

10:09AM  23    STRIKE THAT FOR A 403 PURPOSE.

10:09AM  24         THE DEFENSE ARGUED, I THINK JUST LAST WEEK, 403 IS A RARE

10:09AM  25    REMEDY TO BE USED AND CERTAINLY SHOULDN'T BE -- TO UNDO A

```
10:09AM   1        COURT'S PRIOR EVIDENTIARY RULING AND NOT ON SORT OF THE THIN

10:09AM   2        READ THAT THEY'RE PUTTING FORWARD.

10:09AM   3              I WANT TO GET THERE IN A MOMENT AS WELL.

10:09AM   4              WHERE I REALLY WANT TO START IS THE INCONSISTENCY IN THE

10:09AM   5        DEFENSE'S POSITION.

10:09AM   6              THEY BOTH SAY THAT THEY HAVE ALWAYS THOUGHT 4621A AND B

10:10AM   7        CAME IN FOR A LIMITED PURPOSE, BUT THEY MOVED TO STRIKE ON 403

10:10AM   8        AND CONFRONTATION CLAUSE GROUNDS.

10:10AM   9              THEIR PLEADING YESTERDAY MAKES CLEAR THAT THEY UNDERSTAND

10:10AM  10        THAT THERE'S NO CONFRONTATION CLAUSE ISSUE IF THE TWO EXHIBITS

10:10AM  11        CAME IN FOR A LIMITED PURPOSE.

10:10AM  12              BOTH OF THOSE THINGS CANNOT BE TRUE AT THE SAME TIME.

10:10AM  13              NOW, THE GOVERNMENT'S POSITION IS THAT, IN THE MOMENT, ONE

10:10AM  14        DOCUMENT CAME IN FOR ITS TRUTH, THE COVER LETTER, AND ONE

10:10AM  15        DOCUMENT CAME IN FOR A LIMITED PURPOSE.

10:10AM  16              THE GOVERNMENT UNDERSTANDS IF THE COURT -- AND AS THE

10:10AM  17        DEFENSE PUTS FORWARD IN THE GRANDER CONTEXT OF THINGS, IF

10:10AM  18        EVERYTHING CAME IN FOR A MORE LIMITED PURPOSE FOR HER STATE OF

10:10AM  19        MIND, THAT'S FINE.  THEN THERE'S NO CONFRONTATION CLAUSE

10:10AM  20        ISSUES.

10:10AM  21              BUT THEN THERE'S CERTAINLY NO GROUNDS FOR A MOTION TO

10:10AM  22        STRIKE BECAUSE THEN ALL THEY HAVE LEFT WITH IS WHAT MR. LEMENS

10:10AM  23        STARTED WITH, RULE 403, AND THAT'S A VERY THIN READ THAT I

10:10AM  24        WOULD NOW LIKE TO ADDRESS.

10:10AM  25              BUT I DO WANT TO MAKE VERY CRYSTAL CLEAR, THEY'VE BEEN
```

10:10AM 1    SAYING "CONFRONTATION CLAUSE."

10:11AM 2         UNDER THEIR VIEW OF THE EVENTS, THAT IT WAS CRYSTAL CLEAR

10:11AM 3    TO EVERYONE IN THE ROOM THAT THE DOCUMENTS CAME IN ONLY FOR A

10:11AM 4    LIMITED PURPOSES, THERE'S NO CONFRONTATION CLAUSE ISSUE.

10:11AM 5         SO TURNING TO THE 403.

10:11AM 6         SO FOR THE 403 CONCERNS, MR. LEMENS TALKED ABOUT HOW

10:11AM 7    THERE'S NO CMS WITNESS TO CONNECT THE DOTS.

10:11AM 8         FIRST OF ALL, THEY HAVE PREVIOUSLY OBJECTED TO, AND OBJECT

10:11AM 9    IN THIS PLEADING, TO THE IMMEDIATE JEOPARDY LANGUAGE.

10:11AM 10        THAT LANGUAGE IS ALREADY IN, AND IT CAME IN THROUGH "THE

10:11AM 11   TODAY SHOW" CLIP THAT CAME IN BECAUSE THE DEFENDANT WANTED,

10:11AM 12   THROUGH RULE 106, THE ENTIRE CLIP TO BE PLAYED.

10:11AM 13        THE GOVERNMENT HAD SUGGESTED JUST MS. HOLMES'S STATEMENTS.

10:11AM 14   THE DEFENSE WANTED THE ENTIRE CLIP TO BE PLAYED.

10:11AM 15        IMMEDIATE JEOPARDY IS IN THE RECORD, AND IN THE RECORD FOR

10:11AM 16   ITS TRUTH.

10:11AM 17        I HAVE NOT HEARD THEM OBJECT TO THAT, BUT I JUST WANT TO

10:11AM 18   POINT OUT THAT EVEN IF THE CMS REPORT GOES AWAY, THAT'S FAIR

10:11AM 19   GAME FOR THE GOVERNMENT TO ARGUE.

10:11AM 20        SECOND, I WANT TO POINT OUT THAT I'M NOT ENTIRELY SURE

10:12AM 21   WHAT ENTIRE MORE CONTEXT THEY THINK THAT A CMS WITNESS WOULD

10:12AM 22   GIVE TO THESE DOCUMENTS.

10:12AM 23        THERE'S DR. DAS WHO TESTIFIED, WHO WAS ON THE STAND AND

10:12AM 24   SUBJECT TO CROSS-EXAMINATION, WHO THE DEFENDANT HIRED TO

10:12AM 25   ANALYZE AND THOROUGHLY VET THE ISSUES THAT WERE RAISED IN THE

8879

10:12AM 1       CMS REPORT AND GIVE HIS OUTPUT, AND THAT'S EXACTLY WHAT HE DID.

10:12AM 2           SO, AGAIN, I THINK THAT THE DOCUMENT IS IMPORTANT FOR

10:12AM 3       GIVING CONTEXT TO WHAT DR. DAS DID, WHAT DEFENDANT HIRED HIM TO

10:12AM 4       DO, AND ALL OF THE SUBSEQUENT ACTIONS THAT THE DEFENDANT AND

10:12AM 5       THE COMPANY TOOK.

10:12AM 6           AND THE LAST THING I REALLY WANT TO POINT OUT, IT IS

10:12AM 7       IMPORTANT BECAUSE DEFENDANT THEN MINIMIZED THOSE FINDINGS TO

10:12AM 8       INVESTORS IN A LOWLY MANNER TO SORT OF KEEP THE WOOL OVER THE

10:12AM 9       INVESTORS' EYES AND TO AVOID HAVING SORT OF THE SCHEME TO

10:12AM 10      UNRAVEL, AND THAT IS IMPORTANT IN 2016, ESPECIALLY GIVEN ALL OF

10:12AM 11      THE EVIDENCE THAT THE DEFENSE HAS ADMITTED SHOWING HER, THE

10:12AM 12      DEFENDANT'S, STATE OF MIND WITH RESPECT TO THE TECHNOLOGY AFTER

10:13AM 13      THIS REPORT CAME OUT.

10:13AM 14          IT'S A CRITICAL PIECE OF EVIDENCE.  RULE 403 IS NOT A

10:13AM 15      BASIS TO OVERTURN THE COURT'S PRIOR EVIDENTIARY RULING, AND THE

10:13AM 16      DEFENSE ESSENTIALLY ADMITS THAT THERE'S NO CONFRONTATION CLAUSE

10:13AM 17      ISSUE HERE.

10:13AM 18          THE COURT:  THANK YOU.

10:13AM 19          DR. DAS IN HIS TESTIMONY, IF I RECALL, HE TALKED ABOUT HOW

10:13AM 20      HE WAS HIRED TO LOOK AT THE PROBLEMS, LOOK AT THE ISSUES, AND I

10:13AM 21      THINK BRING IT TO CODE.  I FORGET THE PHRASE HE USED.

10:13AM 22          BUT DID HE TESTIFY THAT IN HIS INDEPENDENT REVIEW, HE

10:13AM 23      FOUND DISPARITIES GREATER THAN THE CMS REPORT?  AND I THINK HE

10:13AM 24      TESTIFIED ABOUT THAT AND REFLECTED ON SOME OF THE ASSAYS THAT

10:13AM 25      HE THOUGHT HAD PROBLEMS IN ADDITION TO CMS.

10:13AM 1          THAT'S MY RECOLLECTION.  IS THAT YOURS?

10:13AM 2              MR. LEMENS:  SO DR. DAS'S TESTIMONY I THINK WE HAVE

10:13AM 3      SEPARATE AND INDEPENDENT CONCERNS WITH, WHICH I DON'T THINK ARE

10:13AM 4      GERMANE OR THAT WE NEED TO TUMBLE OURSELVES INTO TODAY.

10:14AM 5          AND, YOU KNOW, THE TESTIMONY YOUR HONOR IS DESCRIBING, I

10:14AM 6      THINK OUR CONCERN IS WHERE THAT EXPERT LINE IS WITH HIS

10:14AM 7      RETROSPECTIVE ANALYSIS.

10:14AM 8          BUT FOR THE PURPOSES OF THIS DOCUMENT, I THINK THE

10:14AM 9      GOVERNMENT'S POSITION KIND OF SOLVES THE ISSUE, WHICH IS THEY

10:14AM 10     SAY, I BELIEVE ON THE LAST PAGE OF THEIR BRIEF THAT WAS FILED

10:14AM 11     OVER THE WEEKEND, WE DON'T NEED THE REPORT FOR DR. DAS.  RIGHT?

10:14AM 12         DR. DAS WAS JUST A VEHICLE TO GET THIS DOCUMENT INTO

10:14AM 13     EVIDENCE.  DR. DAS'S TESTIMONY, IN THE GOVERNMENT'S VIEW,

10:14AM 14     STANDS APART FROM 4621.

10:14AM 15         SO I DON'T THINK IT'S REALLY RELEVANT TO THE CONSIDERATION

10:14AM 16     HERE.  DR. DAS CERTAINLY LOOKED AT THE REPORT DURING HIS

10:14AM 17     TESTIMONY.  HE WAS ASKED TO READ OR SPEAK ABOUT WHETHER HE

10:14AM 18     SHARED PORTIONS OF THAT REPORT WITH MS. HOLMES, OR DISCUSSED

10:14AM 19     PORTIONS OF THAT REPORT WITH MS. HOLMES.

10:14AM 20         BUT THERE IS, OF COURSE, A SEPARATE -- THERE IS SEPARATE

10:15AM 21     TESTIMONY FROM HIM ABOUT HIS INVESTIGATION AND REVIEW WHICH

10:15AM 22     YOUR HONOR HAS JUST DESCRIBED.

10:15AM 23         ON THAT POINT, DR. DAS, OF COURSE, WAS AND COULD HAVE

10:15AM 24     BEEN -- OR WAS CROSS-EXAMINED ABOUT HIS TESTIMONY.

10:15AM 25         THE CMS WITNESSES ARE UNIQUE -- AND I THINK THIS IS

10:15AM 1    IMPORTANT -- BECAUSE THEY COULD FURTHER EXPLAIN WHAT THE REPORT

10:15AM 2    IS.  THEY COULD PROVIDE CONTEXT AROUND THE REPORT.

10:15AM 3        DR. DAS WAS NEVER AN INSPECTOR.  I DON'T KNOW IF WE'VE

10:15AM 4    SEEN OR HEARD TESTIMONY FROM ANYONE WITH EXPERIENCE AS AN

10:15AM 5    INSPECTOR.

10:15AM 6        MS. BENNETT HAS SAID IN PRIOR INTERVIEWS AND TESTIMONY

10:15AM 7    THAT CMS DOESN'T DETERMINE WHETHER TESTS ARE ACCURATE.  SHE HAS

10:15AM 8    SUGGESTED THAT CMS DOESN'T LOOK AT PATIENT DATA, AND WE BELIEVE

10:15AM 9    SHE WOULD TESTIFY THAT CMS'S CONCLUSIONS ARE, TO SOME DEGREE,

10:15AM 10   SUBJECTIVE, IN ADDITION TO BEING ABLE TO LAY CLEAR FOR THE JURY

10:15AM 11   EVERYTHING ELSE THAT WENT INTO THIS REPORT.

10:16AM 12       THE GOVERNMENT DIDN'T CALL HER.  THE GOVERNMENT DIDN'T

10:16AM 13   CALL MR. YAMAMOTO.

10:16AM 14       SO WE'RE LEFT WITH A HOLE IN THE RECORD THAT UNDERLIES

10:16AM 15   THIS DOCUMENT AND THAT, TO US, IS A SIGNIFICANT PROBLEM.

10:16AM 16            THE COURT:  OKAY.  THANK YOU.

10:16AM 17            MS. VOLKAR:  YOUR HONOR, THE FACT THAT DR. DAS'S

10:16AM 18   TESTIMONY IS SEPARATE FROM 4621, WHICH IT CERTAINLY IS, DOES

10:16AM 19   NOT MEAN THAT 4621 IS THEREFORE INADMISSIBLE.

10:16AM 20       THE PARTIES -- AND THE COURT IS VERY FAMILIAR WITH THIS --

10:16AM 21   HAVE HAD MANY DISPUTES OVER THE CMS REPORT FOR THE BETTER PART

10:16AM 22   OF THIS PAST YEAR.

10:16AM 23       THIS IS NOT AN ISSUE THAT HAS BEEN LIGHTLY LITIGATED.

10:16AM 24   THIS HAS BEEN THOROUGHLY LITIGATED.

10:16AM 25       AFTER THOROUGH LITIGATION, HEARING THE EVIDENCE, THE COURT

8882

10:16AM 1    OVERRULED THE DEFENSE'S OBJECTIONS AND ADMITTED IT.  THERE'S NO

10:16AM 2    403 REASON TO GO BACK AND OVERTURN THE COURT'S EVIDENTIARY

10:16AM 3    DECISION THAT WAS MADE SOUNDLY WITHIN ITS DISCRETION AND ON THE

10:16AM 4    BASIS OF A LOT OF INFORMATION AND INPUT FROM BOTH SIDES.

10:16AM 5        IT WAS A SOUND DECISION, AND 403 IS NOT A REASON TO GO

10:17AM 6    BACK AND RECONSIDER IT NOW.

10:17AM 7        THE FACT THAT DR. DAS'S TESTIMONY COULD STAND SEPARATE

10:17AM 8    FROM THAT DOESN'T CHANGE THE FOCUS OF TODAY, WHICH IS WHETHER

10:17AM 9    OR NOT 4621 SHOULD BE STRICKEN FROM THE RECORD AFTER THE CLOSE

10:17AM 10   OF EVIDENCE BEFORE -- AFTER THE GOVERNMENT HAS GIVEN UP ITS

10:17AM 11   RIGHT TO CALL REBUTTAL WITNESSES.

10:17AM 12       ALSO, I WANT TO CORRECT ONE THING THAT MR. LEMENS SAID.

10:17AM 13   HE SAID THAT THERE WAS NO TESTIMONY FROM ANYONE WHO HAD BEEN AN

10:17AM 14   INSPECTOR.  THAT'S FALSE.

10:17AM 15       DR. SAWYER TESTIFIED, IN A SIGNIFICANT PORTION OF THE

10:17AM 16   CROSS-EXAMINATION -- AND I THINK MAYBE MR. LEMENS AGREES WITH

10:17AM 17   ME NOW -- BUT A SIGNIFICANT PORTION OF HER CROSS-EXAMINATION

10:17AM 18   WAS ABOUT HER TIME AS AN INSPECTOR AND WHAT SHE HAD DONE.

10:17AM 19       THERE'S A LOT IN THIS RECORD.  THERE'S THE CROSS OF

10:17AM 20   MS. CHEUNG AND THE CROSS OF DR. ROSENDORFF WHERE I THINK A GOOD

10:17AM 21   40 MINUTE CHUNK, OR LONGER, WAS ABOUT THE CMS INSPECTION, HOW

10:17AM 22   OFTEN IT OCCURS, WHAT THEY LOOK AT.  THERE'S 40 TO 50 PAGES OF

10:18AM 23   TRANSCRIPT IN HIS CROSS-EXAMINATION ABOUT THAT.

10:18AM 24       THERE'S DR. DAS WHO TESTIFIED.

10:18AM 25       AND THEN THERE IS MS. HOLMES, WHO ELECTED TO TAKE THE

8883

10:18AM 1    STAND, AND BOTH IN HER DIRECT AND IN HER CROSS TALKED A

10:18AM 2    SIGNIFICANT DEAL ABOUT THE CMS INSPECTION AND WHAT THEY DO AND

10:18AM 3    HOW IT OCCURRED.

10:18AM 4        THERE'S A LOT OF CITES IN OUR BRIEF TO THIS RESPECT, BUT

10:18AM 5    THE RECORD IS REPLETE WITH EXAMPLES OF WHAT CMS IS, WHAT THEY

10:18AM 6    DO, HOW THE INSPECTION OCCURRED, THE FACT THAT THIS WAS A

10:18AM 7    ROUTINE INSPECTION.

10:18AM 8        AND I DON'T MEAN TO RETREAD OLD GROUND, BUT YOUR HONOR DID

10:18AM 9    HAVE A LOT OF THIS INFORMATION BEFORE THE COURT WHEN IT

10:18AM 10   DECIDED, BASED ON THE TOTALITY OF THE RECORD AT THE TIME, TO

10:18AM 11   OVERRULE DEFENSE'S OBJECTIONS AND ADMIT THE REPORT.

10:18AM 12       I UNDERSTAND THE ENTIRETY OF IT, I THINK THIS IS WHERE WE

10:18AM 13   ARE AT IT RIGHT NOW, THE ENTIRETY OF IT FOR A LIMITED PURPOSE,

10:18AM 14   AND THERE'S NO BASIS TO STRIKE IT NOW, AND THERE'S CERTAINLY NO

10:18AM 15   BASIS TO CALL IT OUT IN A JURY INSTRUCTION.

10:18AM 16               THE COURT:  OKAY.

10:18AM 17               MR. LEMENS:  I WILL CEDE MS. SAWYER SLIPPED MY MIND,

10:19AM 18   SO I WILL TAKE THAT BACK.

10:19AM 19       BUT NO ONE TESTIFIED TO WHAT HAPPENED AT CMS WITH RESPECT

10:19AM 20   TO THIS INSPECTION AND THIS REPORT.  THAT'S, OF COURSE, OUR

10:19AM 21   CONCERN.

10:19AM 22       WE THINK THE GOVERNMENT'S REPRESENTATIONS AND STATEMENTS

10:19AM 23   THAT IT INTENDED TO CALL A CMS WITNESS FROM THE OUTSET OF OUR

10:19AM 24   LITIGATION OVER THIS DOCUMENT SHOWS THE IMPORTANCE THAT THAT

10:19AM 25   HAD.

8884

| | | |
|---|---|---|
| 10:19AM | 1 | THAT WITNESS DID NOT APPEAR AND THIS DOCUMENT SHOULD THUS |
| 10:19AM | 2 | BE STRUCK EVEN IF IT WAS OFFERED FOR A LIMITED PURPOSE. |
| 10:19AM | 3 | THE COURT:  OKAY. |
| 10:19AM | 4 | ANYTHING FURTHER, MS. VOLKAR? |
| 10:19AM | 5 | MS. VOLKAR:  YOUR HONOR, ONLY TO SAY THAT THE |
| 10:19AM | 6 | GOVERNMENT'S STATEMENT THAT IT INTENDED TO CALL A CMS WITNESS |
| 10:19AM | 7 | DOESN'T IMPACT HOW THE EVIDENCE COMES IN AT TRIAL. |
| 10:19AM | 8 | THE DEFENSE, OF COURSE, MADE REPRESENTATIONS ABOUT CALLING |
| 10:19AM | 9 | A DEFENSE EXPERT AND DIDN'T DO IT.  THINGS HAPPEN AT TRIAL. |
| 10:19AM | 10 | THAT JUST HAS NO BEARING ON WHAT ACTUALLY OCCURRED AND HOW |
| 10:19AM | 11 | THE DOCUMENTS WERE ACTUALLY ADMITTED. |
| 10:19AM | 12 | THE COURT:  OKAY. |
| 10:19AM | 13 | ANYTHING FURTHER? |
| 10:20AM | 14 | MR. LEMENS:  NOTHING FURTHER. |
| 10:20AM | 15 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:20AM | 16 | MS. VOLKAR:  CAN WE TURN TO THE JURY INSTRUCTION, |
| 10:20AM | 17 | YOUR HONOR, OR -- |
| 10:20AM | 18 | THE COURT:  YES, YES.  GO RIGHT AHEAD. |
| 10:20AM | 19 | MS. VOLKAR:  JUST NUMBER 29. |
| 10:20AM | 20 | THE COURT:  YES. |
| 10:20AM | 21 | MS. VOLKAR:  I THINK THE GOVERNMENT'S POSITION IS |
| 10:20AM | 22 | CLEAR, BUT WE WOULD LIKE AN INDICATION FROM THE COURT. |
| 10:20AM | 23 | WE STRONGLY OBJECT TO REALLY ANY INSTRUCTION BEING GIVEN, |
| 10:20AM | 24 | AND IF THE INSTRUCTION IS GOING TO BE GIVEN, WE ASK THAT IT |
| 10:20AM | 25 | SIMPLY BE ABOUT ALL EVIDENCE THAT WAS ADMITTED FOR A LIMITED |

10:20AM 1     PURPOSE.

10:20AM 2         I PUT TOGETHER A LIST OF THOSE EXHIBIT NUMBERS THAT I'M

10:20AM 3     HAPPY TO SHARE WITH THE COURT AND THE OTHER SIDE, AND WE WOULD

10:20AM 4     PREFER IT JUST BE EXHIBITS ADMITTED FOR A LIMITED PURPOSE, IF

10:20AM 5     ANY INSTRUCTION IS GOING TO BE GIVEN.

10:20AM 6         BUT THE GOVERNMENT'S POSITION IS THAT REALLY THIS IS NOT

10:20AM 7     NECESSARY.  THE JURY TOOK NOTES.

10:20AM 8         ONE WAY THAT WE COULD SOLVE ANY CONFUSION IS BY REMOVING

10:20AM 9     THE A AND B SEPARATION AND HAVING IT JUST BE 4621.  I THINK

10:20AM 10     THERE ARE A LOT OF DIFFERENT WAYS THAT WE CAN SOLVE THIS

10:20AM 11     WITHOUT AN INSTRUCTION SINGLING OUT ONE PIECE OF EVIDENCE.

10:21AM 12         THE COURT:  OKAY.  I THINK ONE OF THE ISSUES

10:21AM 13     REGARDING THIS WAS, I THINK IT WAS B THAT WAS ISSUED AND THE

10:21AM 14     COURT ADMONISHED.  THE COURT DID NOT ADMONISH ON A, AND THAT'S

10:21AM 15     THE DISTINCTION THAT WE'RE HAVING HERE.

10:21AM 16         SO I'M HAPPY TO LOOK AT WHAT YOU HAVE.  THAT MIGHT BE A

10:21AM 17     SOLUTION THAT CAPTURES EVERYTHING.

10:21AM 18         MS. VOLKAR:  YOUR HONOR, ONE THING THAT THE

10:21AM 19     GOVERNMENT DOES WANT TO BE CLEAR ABOUT, THE DEFENSE DID

10:21AM 20     ACCURATELY STATE, IN REFLECTING THE RECORD, THAT 4621A WAS NOT

10:21AM 21     STATED IN FRONT OF THE JURY, AND 4621B WAS NOT STATED IN FRONT

10:21AM 22     OF THE JURY.

10:21AM 23         IT WAS PAGES 1 THROUGH 4 OF 4621, AND PAGES 48 THROUGH 55

10:21AM 24     OF 4621.

10:21AM 25         MY UNDERSTANDING WAS THAT, FOR CLARITY AFTERWARDS, THAT

8886

10:21AM  1    WAS WHEN THEY WERE SEPARATED.  AND SO IF YOUR HONOR READS THE

10:21AM  2    RECORD AND THINKS IT'S CLEAR THAT THE ENTIRETY OF THE PAGES

10:21AM  3    WERE FOR A LIMITED PURPOSE, I DO THINK THAT JUST REMOVING THE

10:21AM  4    DISTINCTION A VERSUS B, WHICH WAS NOT PRESENTED TO THE JURY,

10:22AM  5    WOULD BE AN EASY FIX.

10:22AM  6              THE COURT:  WELL, THANK YOU FOR RAISING THAT POINT.

10:22AM  7         THE DEFENSE RAISED IT IN THEIR, IN THEIR BRIEFING, THAT

10:22AM  8    THEY WEREN'T PRESENT AT THE CONCLUSION OF THE DAY WHEN THE

10:22AM  9    EXHIBITS WERE FINALIZED, AS I'VE TASKED YOU TO DO, AND PUT THEM

10:22AM 10    ON THE THUMB DRIVE EVERY DAY.

10:22AM 11         I DON'T KNOW WHY YOU WEREN'T HERE TO DO THAT.  MY

10:22AM 12    ASSUMPTION -- NOT YOU -- BUT I DON'T KNOW WHY THERE WASN'T A

10:22AM 13    MEETING.

10:22AM 14         MY ASSUMPTION WAS THAT WAS WHAT WAS HAPPENING, THAT THE

10:22AM 15    DEFENSE AND THE PROSECUTION WERE MEETING, MAKING SURE THAT, AT

10:22AM 16    THE END OF THE DAY, THE COLLECTIVE EXHIBITS THAT WERE ADMITTED

10:22AM 17    WERE ACTUALLY WHAT YOU THOUGHT WERE ADMITTED AND ACCURATELY

10:22AM 18    NUMBERED AND IDENTIFIED SO WE WOULD AVOID, AT THE END OF THE

10:22AM 19    LAST DAY BEFORE JURY INSTRUCTIONS, TRYING TO RENUMBER EXHIBITS

10:22AM 20    AND ALL OF THAT.

10:22AM 21              MR. LEMENS:  I UNDERSTAND, YOUR HONOR.

10:22AM 22         I THINK OUR REPRESENTATION WAS THAT AN ATTORNEY FOR THE

10:23AM 23    DEFENSE WAS NOT PRESENT, AND OF COURSE OUR WONDERFUL TEAM, A

10:23AM 24    MEMBER OF OUR TEAM WAS THERE DOING THE ADMINISTRATIVE WORK.

10:23AM 25         I DON'T THINK ANY SUBSTANTIVE DECISIONS WERE MADE DURING

8887

10:23AM   1    THAT DISCUSSION.  I THINK THAT'S THE RELEVANT POINT SO FAR AS

10:23AM   2    WE'RE CONCERNED, NOR WOULD IT HAVE BEEN APPROPRIATE FOR ANY

10:23AM   3    SUBSTANTIVE DISCUSSIONS TO OCCUR AT THAT POINT.

10:23AM   4         BUT WE TAKE YOUR HONOR'S POINT.

10:23AM   5         I THINK -- AND I WILL NEED TO CONFER WITH THE TEAM.  WE'RE

10:23AM   6    HAPPY TO CONSIDER, OF COURSE, MS. VOLKAR'S PROPOSALS.  WE HAVE

10:23AM   7    NOT SEEN THOSE.

10:23AM   8              THE COURT:  SURE.

10:23AM   9              MR. LEMENS:  I THINK THE FACT THAT WE HAVE HAD THIS

10:23AM  10    DISCUSSION BOTH TODAY AND ON FRIDAY SUGGEST THAT PERHAPS SOME

10:23AM  11    CLARIFYING INSTRUCTION IS APPROPRIATE.

10:23AM  12         BUT WE'LL, OF COURSE, AWAIT THE COURT'S GUIDANCE AND

10:23AM  13    WE'LL --

10:23AM  14              THE COURT:  WELL, LET ME SAY, I THINK THERE IS.  I

10:23AM  15    THINK THERE IS.

10:23AM  16         IT WOULD BE APPROPRIATE, GIVEN THAT WE'VE NOW IDENTIFIED

10:23AM  17    THESE AS A AND B, AND I THINK THE PARTIES AGREE THAT THAT

10:23AM  18    DIDN'T HAPPEN IN FRONT OF THE JURY.  IT WAS PORTIONS OF THE

10:23AM  19    DOCUMENTS THAT WERE READ, SO THE JURY DOESN'T KNOW WHAT A AND B

10:24AM  20    ARE.

10:24AM  21         SO IT MIGHT BE BETTER TO COLLECTIVELY REFERENCE ITEMS THAT

10:24AM  22    WERE INSTRUCTED.

10:24AM  23         BUT WE DO -- THE RECORD DOES NEED TO MAKE CLEAR THEN

10:24AM  24    THAT -- BECAUSE THERE'S A GAP.  A WAS NOT -- THEY WEREN'T

10:24AM  25    INFORMED THAT IT WAS FOR THEIR -- FOR NOTICE ONLY.

8888

10:24AM 1           THE COURT -- LET ME JUST SAY, I INTEND TO FIND THAT THEY

10:24AM 2     WERE JUST FOR NOTICE, SO WE WILL NEED TO CORRECT THE RECORD, OR

10:24AM 3     IN THE INSTRUCTIONS SOMEHOW TO INDICATE THAT -- INFORM THE JURY

10:24AM 4     THAT THE A PORTION -- WE'LL CALL IT THE A PORTION -- WAS ALSO

10:24AM 5     NOT FOR THE TRUTH, BUT JUST FOR NOTICE.

10:24AM 6           MS. VOLKAR:  YOUR HONOR, IF I MAY SUGGEST A WAY TO

10:24AM 7     DO SO.  THERE HAVE BEEN MULTIPLE TIMES THROUGHOUT THIS TRIAL

10:24AM 8     THAT EITHER THE PARTIES OR THE COURT HAVE TURNED TO THE JURY

10:24AM 9     AND SAID, "FOR HOUSEKEEPING PURPOSES, WE WANT TO NOTE THIS."

10:25AM 10          I DO THINK THAT IT COULD BE AS SIMPLE AS, "FOR

10:25AM 11    HOUSEKEEPING PURPOSES, ALL PAGES OF 4621 WERE ADMITTED FOR A

10:25AM 12    LIMITED PURPOSE."

10:25AM 13          AGAIN, THE GOVERNMENT'S POSITION IS THAT IT SHOULD NOT BE

10:25AM 14    SINGLED OUT IN A JURY INSTRUCTION THAT IS GOING TO GO BACK WITH

10:25AM 15    THE JURY.  I DO THINK THAT THAT UNFAIRLY PUTS A THUMB ON THE

10:25AM 16    SCALE FOR ONE PIECE OF EVIDENCE WHEN THERE HAVE BEEN MULTIPLE

10:25AM 17    PIECES OF EVIDENCE ADMITTED FOR A LIMITED PURPOSE.

10:25AM 18          I DO AGREE THAT IF WE WANT TO BE CLEAR FOR THE JURY, IT'S

10:25AM 19    WORTH SAYING THAT TO THE JURY IN SOME MANNER, BUT I DO THINK

10:25AM 20    THAT SOMETHING SHORT OF INCLUDING AN INSTRUCTION COULD

10:25AM 21    ACCOMPLISH THAT.

10:25AM 22          AND THE LAST POINT I WANTED TO SAY IS THE COURT, OF

10:25AM 23    COURSE, ORDERED THE PARTIES, AT THE OUTSET OF TRIAL, TO MEET

10:25AM 24    EVERY DAY AND TO FINALIZE THE EXHIBITS BEFORE THEY WERE GIVEN

10:25AM 25    TO THE PUBLIC.

10:25AM 1    I CAN REPRESENT THAT I'VE RELIED AS MUCH ON OUR SUPPORT

10:25AM 2    STAFF AND OUR PARALEGAL, BUT I'VE ALSO, IF I THOUGHT THERE WAS

10:26AM 3    SOMETHING IN DISPUTE, ASKED HER TO NOTIFY ME IF THERE WAS ANY

10:26AM 4    DISPUTE OR ANY ISSUES, AND PART OF WHY I KNOW THE BACKGROUND OF

10:26AM 5    4621A AND B IS THAT I LEARNED THERE WAS NO DISPUTE AND THAT'S

10:26AM 6    WHY ATTORNEYS WERE NOT NEEDED TO GET INVOLVED.

10:26AM 7        I DON'T WANT TO CAST ANY ASPERSIONS BECAUSE I THINK WE

10:26AM 8    HAVE WONDERFUL PEOPLE --

10:26AM 9            THE COURT:  I'M NOT DOING THAT.  LET ME BE CLEAR.

10:26AM 10   I'M NOT -- BOTH OF YOUR TEAMS HAVE WORKED TREMENDOUSLY ON THIS

10:26AM 11   CASE, AND I APPRECIATE THEIR EFFORTS.  IT'S BENEFITED ALL OF

10:26AM 12   US.

10:26AM 13       AND WHEN I SAY THAT, I MEAN OUR COURT REPORTER, MY STAFF,

10:26AM 14   THE COURT STAFF, I KNOW YOUR TEAMS AS WELL.  IT'S BEEN A LONG

10:26AM 15   TRIAL AND THERE'S A LOT OF EXHIBITS.

10:26AM 16       SO IT'S NOT UNUSUAL TO FIND HICCUPS.  I'LL CALL THEM THAT.

10:26AM 17           MR. LEMENS:  PERHAPS MAYBE JUST FOR LOGISTICS,

10:26AM 18   MS. VOLKAR AND US AND OUR RESPECTIVE TEAMS COULD DISCUSS AND

10:26AM 19   EITHER COME UP WITH COMPETING PROPOSALS OR PROPOSALS TO THE

10:26AM 20   COURT, PROBABLY TODAY OR AS SOON AS POSSIBLE.

10:26AM 21           THE COURT:  I'M HOPING THAT WE CAN -- MY GOAL WAS TO

10:27AM 22   FINALIZE INSTRUCTIONS TODAY SO THAT EACH PARTY WOULD HAVE THEM,

10:27AM 23   INCLUDING THE COURT.  AND YOU HAVE TWO DAYS TO PREPARE

10:27AM 24   ARGUMENT.  THAT'S PROBABLY MORE THAN YOU NEED, BUT AT LEAST YOU

10:27AM 25   HAVE IT.

10:27AM  1      MS. VOLKAR:  WHAT WOULD BE MOST BENEFICIAL TO THE

10:27AM  2  GOVERNMENT, YOUR HONOR, IS IF THE COURT WERE TO INDICATE -- I

10:27AM  3  THINK THERE ARE MULTIPLE OPTIONS ON THE TABLE.

10:27AM  4      ONE IS IF THE COURT IS INTENDING TO GIVE AN INSTRUCTION ON

10:27AM  5  THE EVIDENCE THAT WAS ADMITTED FOR A LIMITED PURPOSE, AGAIN,

10:27AM  6  THE GOVERNMENT'S POSITION IS THAT THE JURY HAS BEEN TAKING

10:27AM  7  NOTES WHEN THE COURT SAYS IT.  I THINK I GAVE ONE EXAMPLE OF

10:27AM  8  HOW THIS PARTICULAR PIECE OF EVIDENCE COULD BE ADDRESSED AS A

10:27AM  9  HOUSEKEEPING MATTER AND NOT IN THE JURY INSTRUCTIONS.

10:27AM 10      IF THE COURT IS INCLINED TO GIVE AN INSTRUCTION, THEN I

10:27AM 11  THINK WHAT MR. LEMENS JUST SUGGESTED OF PROVIDING COMPETING

10:27AM 12  PROPOSALS IS LIKELY THE BEST WAY TO GO.

10:27AM 13      BUT IF THE COURT IS AT ALL SWAYED BY THE GOVERNMENT'S

10:27AM 14  POINT THAT THERE REALLY IS NO NEED TO SINGLE OUT A PIECE OF

10:28AM 15  EVIDENCE LIKE THIS AND THE JURY HAS TAKEN NOTES AND IF WE

10:28AM 16  CLARIFY THIS ONE HICCUP, I THINK THAT WOULD DO IT, THAT WOULD

10:28AM 17  HELP.

10:28AM 18      THE COURT:  THANK YOU.

10:28AM 19      I THINK THAT TALKING ABOUT THE EVIDENCE JUST BEFORE THE

10:28AM 20  CLOSING IS NOT MY PREFERENCE.  I THINK THAT WOULD BETTER BE

10:28AM 21  ADDRESSED IN AN INSTRUCTION SO THE JURY COULD BE FOCUSSED ON

10:28AM 22  THE ARGUMENTS AND THEN HAVE THE INSTRUCTIONS.

10:28AM 23      IT MAY BE THAT WHOEVER IS GOING TO ARGUE THE CASE WILL

10:28AM 24  REFERENCE THE INSTRUCTIONS.  THAT'S WHAT HAPPENS IN CLOSING

10:28AM 25  ARGUMENTS.

10:28AM  1      I WANT THESE TO BE FINALIZED SO YOUR LAWYERS CAN USE THEM

10:28AM  2   AS YOU SEE FIT IN THE CLOSINGS, AND PERHAPS THEY CAN

10:28AM  3   REFERENCE -- INCORPORATE IN THEIR COMMENTS AND REFERENCE THE

10:28AM  4   NUANCES OF THIS TESTIMONY, AS WELL AS ALL OF THE OTHERS.

10:28AM  5      AND I AGREE, MS. VOLKAR, THE JURY HAS BEEN, WHEN I'VE

10:28AM  6   INDICATED -- I THINK THERE'S ONLY ONE JUROR WHO I HAVEN'T SEEN

10:29AM  7   TAKE A NOTE, BUT EVERYONE ELSE IS TAKING NOTES, AND THEY'VE

10:29AM  8   NOTED THAT.

10:29AM  9      SO AT LEAST FOR THAT ONE JUROR WHO PERHAPS HAS A

10:29AM  10  PHOTOGRAPHIC MEMORY, THE INSTRUCTION -- IF NOT, THE INSTRUCTION

10:29AM  11  WOULD BE HELPFUL TO FULLY INFORM AT LEAST THAT ONE JUROR.

10:29AM  12     SO LET'S USE THAT PREMISE, AND I'LL GIVE YOU AN

10:29AM  13  OPPORTUNITY TO WORDSMITH WITH MS. SAHARIA AND SEE IF SOMETHING

10:29AM  14  COULD COME UP.

10:29AM  15         MS. VOLKAR:  THAT WAS GOING TO BE MY LAST QUESTION,

10:29AM  16  YOUR HONOR, WHICH IS I THINK THIS MAY BE THE ONLY OUTSTANDING

10:29AM  17  ISSUE LEFT, OTHER THAN THE "ALLEGED" VERSUS "VICTIMS."

10:29AM  18     I DON'T KNOW IF YOU WANT TO RESOLVE THAT NOW TO TAKE AN

10:29AM  19  ISSUE OFF THE TABLE, BUT MAYBE WE NEED TO INVITE MS. SAHARIA

10:29AM  20  UP.

10:29AM  21         THE COURT:  MS. SAHARIA, ARE YOU READY?

10:29AM  22         MS. SAHARIA:  YOUR HONOR, I DON'T HAVE ANY BRILLIANT

10:30AM  23  SOLUTIONS OTHER THAN TO SAY "ALLEGED VICTIMS" OR "INVESTORS" OR

10:30AM  24  PERHAPS "CONDUCT OF INVESTORS IDENTIFIED IN THE INDICTMENT."

10:30AM  25     I'LL STAND ON THOSE TWO COMPETING PROPOSALS FOR THE COURT

10:30AM  1      TO EITHER CALL THEM JUST "INVESTORS" AS THE SECOND SENTENCE

10:30AM  2      ALREADY CALLS THEM, OR TO CALL THEM "ALLEGED VICTIMS."

10:30AM  3              THE COURT:  MS. VOLKAR, DO YOU HAVE A PREFERENCE IF

10:30AM  4      THE COURT IS GOING TO MODIFY THAT INSTRUCTION?

10:30AM  5              MS. VOLKAR:  IF THE COURT IS GOING TO MODIFY IT, I

10:30AM  6      THINK THE GOVERNMENT'S PREFERENCE WOULD BE "ALLEGED VICTIMS."

10:30AM  7              THE COURT:  WE'LL LEAVE IT "ALLEGED VICTIMS," OR

10:30AM  8      WE'LL ADD "ALLEGED VICTIMS," PARDON ME.

10:30AM  9              MS. SAHARIA:  THANK YOU.

10:30AM 10      AND JUST ONE FINAL POINT.  I DID LOOK AT THE COUNTS OF THE

10:30AM 11      INDICTMENT, AND I DO CONTINUE TO OBJECT TO GIVING THOSE TO THE

10:30AM 12      JURY.

10:30AM 13      I THINK THERE'S A NUMBER OF THINGS THAT WOULD EITHER NEED

10:30AM 14      TO BE REDACTED OR THAT WILL CONFUSE THE JURY.

10:30AM 15      SO JUST TO GIVE THE COURT A LIST OF THOSE, FOR INSTANCE,

10:30AM 16      YOU KNOW, EACH OF THE COUNTS INCORPORATES ALL OF THE PRIOR

10:31AM 17      PARAGRAPHS BY REFERENCE, AND I THINK THAT COULD BE CONFUSING TO

10:31AM 18      THE JURY IF THEY DON'T HAVE THOSE PARAGRAPHS.

10:31AM 19      THOSE PARAGRAPHS ARE THE SPEAKING ALLEGATIONS THAT WE

10:31AM 20      PARTICULARLY OBJECT TO, AND SO I THINK THAT GIVING THIS TO THE

10:31AM 21      JURY MIGHT CONFUSE THE JURY.

10:31AM 22      OF COURSE EACH COUNT REFERENCES BOTH MS. HOLMES AND

10:31AM 23      MR. BALWANI.

10:31AM 24      PARAGRAPH 22 TALKS ABOUT INDUCING DOCTORS TO REFER

10:31AM 25      PATIENTS AS PART OF THE CHARGED CONDUCT, WHICH WE OBJECT TO.

10:31AM  1          AND THEN SEVERAL OF THE PARAGRAPHS, PARAGRAPH 24 AND

10:31AM  2   PARAGRAPH 26 REFERENCE THE GOVERNMENT'S NOW ABANDONED DUTY TO

10:31AM  3   DISCLOSE THEORY.  THAT WOULD NEED TO BE REDACTED.

10:31AM  4          SO GIVEN THE NEED FOR SOME SORT OF REDACTIONS, I JUST

10:31AM  5   THINK IT WOULD BE UNHELPFUL TO THE JURY.  TO GIVE THEM EVEN THE

10:31AM  6   COUNTS WOULD REQUIRE SOME SORT OF REDACTIONS, AND I THINK IT

10:31AM  7   WOULD BE CONFUSING TO THE JURY TO GIVE IT TO THEM.

10:32AM  8          I THINK I HEARD THE GOVERNMENT SAY THAT THEY'RE CONTENT

10:32AM  9   THAT THE INSTRUCTIONS SUFFICIENTLY GIVE THE JURY THE CORE OF

10:32AM 10   THE INDICTMENT, AND WE'RE CONTENT WITH THAT AS WELL,

10:32AM 11   YOUR HONOR.

10:32AM 12          MS. VOLKAR:  YOUR HONOR, I THINK THAT THE PARTIES

10:32AM 13   ARE BOTH GOING TO ARGUE BEFORE THE COURT GIVES ITS

10:32AM 14   INSTRUCTIONS.  THE GOVERNMENT IS VERY AWARE THAT THE COURT'S

10:32AM 15   INSTRUCTIONS, OF COURSE, HAVE PARTICULAR SIGNIFICANCE FOR THE

10:32AM 16   JURY.

10:32AM 17          WHAT I RECALL THE DEBATE BEING ABOUT BEFOREHAND WAS A

10:32AM 18   CONCERN OF VARIANCE BETWEEN ANYTHING THE COURT DESCRIBED AND

10:32AM 19   THE INDICTMENT.

10:32AM 20          SO THE GOVERNMENT'S POSITION IS, QUITE SIMPLY, EITHER THE

10:32AM 21   INDICTMENT SHOULD BE READ AS IS OR SOME PORTION, OR THE

10:32AM 22   INSTRUCTION SHOULD BE GIVEN JUST AS THE PARTIES HAVE AGREED.

10:32AM 23          SO IF THE DEFENSE IS CONTENT WITH THE INSTRUCTIONS AS THE

10:32AM 24   PARTIES AGREE, THEN THAT'S FINE BY THE GOVERNMENT AS WELL.

10:32AM 25          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:32AM   1          WHEN I LOOK AT THE DOCUMENT 469, WHICH IS THE THIRD

10:32AM   2     SUPERSEDING INDICTMENT, PAGE 9, FOR EXAMPLE, LISTS COUNTS THREE

10:32AM   3     THROUGH EIGHT.  PAGE 10 LISTS COUNTS NINE THROUGH TEN IN THE

10:32AM   4     GRAPHICAL BOXES.  THAT'S WHAT I WAS THINKING MIGHT BE HELPFUL

10:33AM   5     TO THE JURY.

10:33AM   6          BUT PERHAPS --

10:33AM   7               MS. SAHARIA:  I DON'T OBJECT TO THE BOXES, BUT I DO

10:33AM   8     THINK THAT THE CONTENT OF THE BOXES HAS BEEN INCORPORATED INTO

10:33AM   9     THE INSTRUCTIONS, AT LEAST THE DATE AND THE AMOUNT AND THE

10:33AM  10     CORRESPONDING COUNTS.

10:33AM  11          SO I THINK THEY HAVE THE CORE OF THAT INFORMATION.

10:33AM  12               THE COURT:  WELL, IF IT'S GOING TO BE PROBLEMATIC --

10:33AM  13     YOU KNOW, I'D LIKE TO THINK I'M A PROBLEM SOLVER THAN A PROBLEM

10:33AM  14     CREATOR, SO LET'S LEAVE IT AS IS AND WE'LL LEAVE IT UP TO YOU

10:33AM  15     TO DECIDE HOW TO PRESENT THE INFORMATION TO THE JURY FOR YOUR

10:33AM  16     BEST BENEFIT.

10:33AM  17          OKAY?

10:33AM  18               MS. SAHARIA:  BOTH PARTIES ARE CAPABLE OF DOING

10:33AM  19     THAT, YOUR HONOR.

10:33AM  20               THE COURT:  I THINK SO.  I THINK SO.  ALL RIGHT.

10:33AM  21               MS. SAHARIA:  SO WE JUST OWE THE COURT THEN THE

10:33AM  22     PROPOSAL AND THE CMS REPORT INSTRUCTION?

10:33AM  23               THE COURT:  RIGHT.  RIGHT.  I KNOW YOU'RE GOING TO

10:33AM  24     WORK HARD ON THAT.  AS I SAID, I WOULD LIKE TO GET THE

10:33AM  25     INSTRUCTIONS SETTLED.

10:33AM  1          MS. SAHARIA:  WE'LL DO THAT AS SOON AS WE GO BACK TO

10:34AM  2    OUR RESPECTIVE WORKPLACES, YOUR HONOR.

10:34AM  3          THE COURT:  OKAY.  GREAT.  I'LL EAGERLY AWAIT YOUR

10:34AM  4    WORK PRODUCT.

10:34AM  5       ANYTHING ELSE BEFORE WE BREAK?

10:34AM  6          MS. VOLKAR:  NO, YOUR HONOR.

10:34AM  7          MS. SAHARIA:  YOUR HONOR, MR. DOWNEY MAY HAVE

10:34AM  8    SOMETHING.

10:34AM  9          THE COURT:  YES.

10:34AM 10          MR. DOWNEY:  THIS IS A VERY SMALL ISSUE, YOUR HONOR,

10:34AM 11    BUT YOUR HONOR HAD RAISED THE ISSUE ON FRIDAY AND I THINK ONE

10:34AM 12    TIME BEFORE ABOUT WHETHER THE JURY SHOULD HAVE THE WRITTEN

10:34AM 13    INSTRUCTIONS AS THEY'RE CHARGED.

10:34AM 14          THE COURT:  RIGHT.

10:34AM 15          MR. DOWNEY:  OBVIOUSLY IT'S THE COURT'S PREFERENCE,

10:34AM 16    BUT MY REACTION UPON THINKING ABOUT IT IS THAT, YOU KNOW,

10:34AM 17    AMONGST 12 PEOPLE WE HAVE PEOPLE WHO LEARN DIFFERENTLY, AND I

10:34AM 18    THINK GIVING THEM THE INSTRUCTIONS WHILE YOUR HONOR IS CHARGING

10:34AM 19    THEM ORALLY IS LIKELY TO CAUSE THEM TO FOCUS ON THE WRITTEN

10:34AM 20    DOCUMENT.

10:34AM 21       SO OBVIOUSLY WITHOUT ANY MAGIC, BUT MY OWN PREFERENCE

10:34AM 22    WOULD BE IF THEY LISTEN TO YOUR HONOR WHILE THEY DON'T HAVE THE

10:34AM 23    DOCUMENT, OBVIOUSLY THEY WILL HAVE THE DOCUMENT LATER.

10:34AM 24       SO I JUST WANTED TO PROVIDE THAT FEEDBACK.

10:34AM 25          THE COURT:  DO YOU HAVE AN OPINION ON THIS,

10:35AM  1      MS. VOLKAR?

10:35AM  2            MS. VOLKAR:  THE GOVERNMENT DEFERS TO THE COURT.  I

10:35AM  3      BELIEVE THE COURT'S TYPICAL PRACTICE IS TO READ IT ORALLY AND

10:35AM  4      THEN PROVIDE A WRITTEN VERSION LATER.

10:35AM  5         AS MR. DOWNEY SUGGESTS, THAT COVERS ALL TYPES OF LEARNERS,

10:35AM  6      AND I THINK THAT WOULD BE FINE WITH THE GOVERNMENT.

10:35AM  7            THE COURT:  OKAY.  THAT'S WHAT I'LL DO THEN.

10:35AM  8         THAT'S BEEN MY NORMAL PRACTICE, AS I INDICATED.  I WANTED

10:35AM  9      TO INQUIRE OF THE PARTIES WHETHER THE COURT SHOULD DEVIATE FROM

10:35AM 10      THAT.

10:35AM 11         ALL RIGHT.  THANK YOU.

10:35AM 12         MR. DOWNEY, DID YOU -- AND I THINK MR. SCHENK WAS PART OF

10:35AM 13      THE DISCUSSION -- DID YOU REACH SOME AGREEMENT ON A SCHEDULING

10:35AM 14      OR A BREAKING OF THE ARGUMENTS AND WHETHER YOU WANT TO INVOLVE

10:35AM 15      ME IN THAT?

10:35AM 16            MR. DOWNEY:  YOU KNOW, YOUR HONOR, I THINK

10:35AM 17      MR. SCHENK IS PROBABLY STILL DECIDING ON OVERALL LENGTH.

10:35AM 18      THAT'S WHERE HE WAS ON FRIDAY.

10:35AM 19            THE COURT:  AND I'M NOT ASKING YOU TO COMMIT.  I

10:35AM 20      JUST WANT TO KNOW IF YOU WANT ME TO BE --

10:35AM 21            MR. DOWNEY:  I THINK I'LL IDENTIFY TO HIM IN ANY

10:35AM 22      EVENT WHEN A BREAK IS NEEDED, AND I THINK HE CAN PLAN AROUND

10:35AM 23      THAT I ASSUME.

10:35AM 24            THE COURT:  MR. SCHENK?

10:35AM 25            MR. SCHENK:  YES.  MY UNDERSTANDING, FROM OUR

10:36AM  1    DISCUSSION ON FRIDAY, WAS THAT DURING THE TRIAL WE HAVE TENDED

10:36AM  2    TO TAKE BREAKS AROUND 11:30, AND THE GOVERNMENT, IF ITS CLOSING

10:36AM  3    IS STILL GOING ON AT THAT POINT, MAYBE COULD FIND A CONVENIENT

10:36AM  4    TIME TO STOP RIGHT AROUND THAT TIME, LET'S SAY SOMETIME BETWEEN

10:36AM  5    11:00 OR 11:30, OR SOMEWHERE AROUND THERE, AND I THINK THAT

10:36AM  6    WOULD BE THE PLAN IS I'LL TRY TO PAY ATTENTION TO THE CLOCK AND

10:36AM  7    LOOK UP AND OFFER A TIME.

10:36AM  8        BUT I ALSO --

10:36AM  9            MR. DOWNEY:  I THINK, JUST FOR RESOLUTION OF IT AND

10:36AM 10    CONSISTENT WITH OUR PRACTICE, I WOULD SAY LET'S BREAK AT 11:15

10:36AM 11    AND HE CAN PLAN AROUND THAT.

10:36AM 12            MR. SCHENK:  YES, I'LL DO MY BEST.  SOMETIMES ONE

10:36AM 13    GETS LOST.

10:36AM 14            MR. DOWNEY:  UNDERSTOOD.

10:36AM 15            THE COURT:  BUT NO LATER THAN 11:30.  DOES THAT

10:36AM 16    WORK?

10:36AM 17            MR. DOWNEY:  I THINK THAT'S FINE, YOUR HONOR.

10:36AM 18            MR. SCHENK:  SURE.

10:36AM 19            THE COURT:  AND THAT WILL BE A 30 MINUTE BREAK?

10:36AM 20            MR. SCHENK:  YES.

10:36AM 21            MR. DOWNEY:  YES.

10:36AM 22            THE COURT:  OKAY.  AND THEN WE'LL COME BACK AND

10:36AM 23    FINISH WHATEVER.

10:36AM 24        IF YOU FEEL -- IF EITHER PARTY FEELS THAT, NOTWITHSTANDING

10:37AM 25    OUR SCHEDULED BREAKS -- WE'LL DO 11:30, AND THEN IS IT 1:30?

8898

10:37AM 1           MR. DOWNEY:  I THINK THAT'S RIGHT, YOUR HONOR.

10:37AM 2           THE COURT:  IF YOU FEEL THAT WE NEED TO TAKE A BREAK

10:37AM 3   FOR WHATEVER REASON, YOU SHOULD LET ME KNOW, OR PLAN THAT IN

10:37AM 4   YOUR ARGUMENTS.  IF YOU'RE GOING TO GO THREE MORE HOURS, WE

10:37AM 5   PROBABLY SHOULD TAKE A BREAK.

10:37AM 6       OKAY.  THAT'S HELPFUL.

10:37AM 7           MR. DOWNEY:  THANK YOU, YOUR HONOR.

10:37AM 8           MR. SCHENK:  THANK YOU.

10:37AM 9           THE CLERK:  COURT IS ADJOURNED.

10:37AM 10       (COURT ADJOURNED AT 10:37 A.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3          CERTIFICATE OF REPORTERS
4
5
6
7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE
8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10    HEREBY CERTIFY:
11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13    ABOVE-ENTITLED MATTER.
14
15
16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17
18         _____
19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20
21         DATED:  DECEMBER 13, 2021
22
23
24
25