STEVEN D. ZANSBERG (SBN 177528)

Law Office of Steven D. Zansberg, LLC
100 Fillmore Street, Suite 500
Denver, Colorado 80206
Phone Number (303) 385-8698
Fax Number: (720) 650-4763
Email:  steve@zansberglaw.com

Attorney for Intervenor Dow Jones & Company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. 18-cr-00258-EJD<br><br>**REPLY OF DOW JONES & COMPANY,<br>INC. IN SUPPORT OF ITS MOTION TO<br>UNSEAL JUDICIAL RECORDS**<br><br>.<br>Courtroom: 4, 5th Floor<br>Hon. Edward J. Davila |

1    Dow Jones & Company, Inc. ("Dow Jones"), by and through its undersigned counsel,

2    respectfully submits this Reply in support of its Motion to Unseal Judicial Records, ECF No. 1353

3    ("the Motion").

4                                    **INTRODUCTION**

5    Dow Jones deliberately did not set its Motion for a hearing, so that it can be resolved

6    expeditiously, without even further delay, and without further taxing the Court's and the parties'

7    resources.  All three parties have filed separate Responses to the Motion.  No party opposes Dow

8    Jones's request that all entries in the public docket be properly identified, as this Court committed to

9    do last August.

10   The Government does not oppose unsealing the motions papers and hearing transcripts that

11   make reference to Ms. Holmes's possible presentation of a mental health affirmative defense under

12   Rule 12.2 in the now completed trial of her case.   Mr. Balwani asserts that only the information

13   actually disclosed in Ms. Holmes's public testimony – wherein she claimed she was the victim of

14   sexual and emotional abuse, and which Mr. Balwani has publicly categorically denied – should be

15   unsealed, lest his rights to a fair trial be prejudiced.  Ms. Holmes urges the Court to maintain the

16   sealing of *all* such records (the status quo), on grounds that she did not present any expert testimony

17   in support of that affirmative defense.  Because Ms. Holmes opted to waive her rights under the

18   Fifth Amendment and her trial is over, the basis for the Court's temporarily sealing those judicial

19   records is no longer in effect. The Court has repeatedly instructed the jurors to avoid all press

20   reports concerning the case, so Mr. Balwani's concerns about prejudice to his fair trial rights are

21   completely speculative and insufficient. Those records should therefore be unsealed forthwith.

22   With respect to the transcripts of two closed hearings the Court held, without notice, in the

23   final days of the Holmes case, the Government's Response informs the public, for the first time, that

24   some portion of those hearings apparently concerned one or more jurors in that case, but it fails to

25   explain the nature of such discussion.  The Government repeats its arguments for withholding the

26   completed juror questionnaires, without acknowledging that they are now a matter of public record.

27   Ms. Holmes opposes the unsealing of those transcripts for reasons she apparently refuses to make

28

public, even in general terms.  At present, there is no public Order that explains why the public was

excluded from those two hearings or that enters the requisite judicial findings that closure of mid-

trial judicial *proceedings* in a criminal case was necessitated by a governmental interest "of the

highest order," that there was a "substantial probability" that such interest would be prejudiced by

conducting the hearing in public (or unsealing the transcripts now that the Holmes trial has been

completed), *and* that there are no "less restrictive means," including release of redacted transcripts,

available to adequately protect any such interest.  In short, both the original closure of those

proceedings and the continued blanket sealing of the transcripts thereof do not satisfy the clear

requirements imposed by the First Amendment.

## ARGUMENT

**I.   The Court Should Forthwith Identify the Subject Matter of all Docket Entries Presently Identified Only as "SEALED DOCUMENT"**

As indicated above, no party opposes this request, which was first made by Dow Jones in

August 2021.  Despite the Court's on-the-record commitment to so identify all such sealed

documents, at the hearing convened on August 26, 2021 (ECF No. 959), as of this date 187 entries

in the public docket continue to be improperly de-identified. While Dow Jones recognizes that the

Court has myriad other demands on its time and limited staffing resources, absent a documented

showing of unreasonable administrative burdens, the public's right to contemporaneous access to

judicial records cannot be overcome.  *See, e.g., Courthouse News Serv. v. Planet*, No. CV 11-08083

SJO (FFMx), 2016 U.S. Dist. LEXIS 105197, at *62 (C.D. Cal. May 26, 2016) ("to the extent

Planet might argue that such a practice would have been cost-prohibitive or unduly labor intensive,

he has not quantified the cost . . . nor has he detailed the additional labor that would have been

required . . . . Absent such evidence, the Court cannot 'articulate facts demonstrating an

administrative burden sufficient to deny access.'") (citation omitted), *aff' in part rev'd in part*, 947

F.3d 581, 597 (9th Cir. 2020) (holding that "Ventura County's no-access-before-process policy

bears no real relationship to the County's legitimate administrative concerns about . . . efficient

court administration"); *see also United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993)

(holding unconstitutional the district court's maintenance of a dual-docketing system, where certain

docket entries were visible only to the parties, and expressly rejecting the argument that unsealing would bind the court to a "formal procedure that is unduly burdensome"). Dow Jones once again respectfully urges the Court to quickly complete the unsealing of the docket in this case, as it committed to do in August 2021.

## II.   The Court Should Forthwith Unseal All Motions Papers And Transcripts in the Holmes Case That Discuss Her Potential Introduction of Affirmative Defense Evidence Under Federal Rule 12.2 Which Served as the Basis for This Court's Rulings on Said Motions

The Government does not oppose the unsealing of the judicial documents, and it contests Mr. Balwani's claims that he presently possesses the same interests with respect to those records as Ms. Holmes did before she chose to testify in her own behalf.  *See* ECF No. 1373 at 1 n.1. Obviously, the interests the Court recognized during the Holmes trial with respect to her right not to have her "testimony" (including her compelled statements to a government mental health expert) be introduced until she waived her right's under the Fifth Amendment have absolutely no application to Mr. Balwani.  He has not asserted any potential defense of mental health incapacity under Rule 12.2, and Ms. Holmes' statements disclosed to the public outside of his trial cannot possibly implicate his rights under the Fifth Amendment against compelled self-incrimination.

Ms. Holmes objects to the unsealing of the records that the Court previously ruled would remain provisionally sealed until such time as Ms. Holmes chose to waive her rights under the Fifth Amendment.  She argues that her statements in those sealed judicial records concerning her alleged mental condition directly implicate her Fifth Amendment right against compelled self-incrimination.  ECF 1370 at 4.  As Ms. Holmes points out "*admission* [at her trial] *of expert testimony* based on compelled statement by Ms. Holmes *would have violated the Fifth Amendment* unless Ms. Holmes waived her privilege by presenting relevant expert testimony.  *Id*. at ll. 3 – 5 (emphasis added).  It is undisputed that Ms. Holmes put on no such expert testimony in her now-completed trial.  Nor did the Government introduce any expert testimony based on her compelled statements (as ordered by this Court, see ECF No. 507).  Of course, Dow Jones's Motion does not seek to introduce any evidence in Ms. Holmes's completed trial, nor in any other one.  What it does

1    seek, by invoking the public's rights under the First Amendment, is to inspect judicial records in a

2    completed criminal case that reflect directly on the conduct of a federal court.

3            All of the judicial records concerning Ms. Holmes's reservation of her right to offer such

4    expert testimony under Rule 12.2, beginning with her required notification to the Court and the

5    Government, ECF No. 507, were considered by this Court as the basis for its issuing substantive

6    rulings thereon.  *See, e.g.,* ECF Nos. 444, 507; *see United States v. Sleugh*, 896 F.3d 1007, 1014 (9th

7    Cir. 2018) ("judicial records . . . are those materials on which a court relies in determining the litigants'

8    substantive rights" ) (citations omitted).   Notwithstanding Ms. Holmes's opinion that "Dow Jones

9    has minimal First Amendment interest" in reviewing those papers, including the transcript of a

10   closed hearing conducted on July 14, 2020 (ECF No. 444) – it is obvious that the public has a

11   profound interest in observing the conduct of judges and the criminal justice system.  *See e.g.,*

12   *Landmark Commc'ns v. Virginia*, 435 U.S. 829, 839 (1978) ("The operations of the courts and the

13   judicial conduct of judges are matters of *utmost public concern*") (emphasis added); *United States v.*

14   *Schlette*, 842 F.2d 1574, 1583 (9th Cir. 1988) ("Publishing sufficient information to allow the public to

15   join in a dialogue about the courts and the treatment of defendants can only have a positive impact on

16   the public's perception of our judicial system. If the system has flaws, it is all the better that these flaws

17   be exposed and subjected to public comment.").

18           Ms. Holmes testified at her own trial, thereby forever waiving all rights she had under the

19   Fifth Amendment not to be compelled to answer questions, under oath, regarding any aspects of the

20   underlying events.  *Johnson v. United States*, 318 U.S. 189, 195 (1943) (an accused's "voluntary

21   offer of testimony upon any fact is a waiver as to *all other relevant facts*, because of the necessary

22   connection between all") (italics in original) (citation omitted); *Raffel v. United States*, 271 U.S.

23   494, 496 (1926).  Indeed, on cross-examination, Ms. Holmes was questioned extensively about her

24   claimed emotional and sexual abuse by Mr. Balwani, and the extent to which it may have negated

25   her mental state of knowingly issuing false or misleading statements about Theranos's services.

26   There is simply no basis, in law or logic, to continue the sealing of judicial records in *a completed*

27   *criminal case* on grounds of her no-longer-existing rights under the Fifth Amendment.

28

Nor can Ms. Holmes claim to retain any "personal privacy" interests in information that she and her counsel have tendered to this Court and to the Government, even under provisional sealing, for possible introduction at trial. *See* ECF No. 881 at 22 (citing numerous authorities); *see also Hopkins v. State*, 799 So. 2d 874, 881 (Miss. 2001) ("it is difficult to see how Hopkins intended the medical records to remain confidential when he provided a copy of those records to the prosecutor during the third trial"); *see also In re von Bulow*, 828 F.2d 94, 103 (2d Cir.1987) (holding that defendant's doctor-patient privilege was waived through discussion in open court: "[m]atters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak.")

To the extent that any third-party's legitimate privacy rights would be threatened by the disclosure of information not already public such that the Court finds the right of access to be defeated, the appropriate solution is redaction of material rather than blanket sealing. *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014) ("Redactions shall be limited . . . and should sweep no more broadly than necessary to protect [the compelling state interest]"); *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (trial judge should consider alternatives to "wholesale sealing of the papers" such as the "redaction of names and perhaps portions of the . . . materials contained in the motion papers").

Lastly, Mr. Balwani's concern that unsealing the motion papers and transcript at issue from the Holmes case will prejudice his right to a fair trial is the paradigmatic "speculation and conjecture" that courts have consistently rejected as an insufficient "showing" to overcome the public's First Amendment-based right of access. *See, e.g., In re Associated Press* (*United States v. Moussaoui*), 172 F. App'x 1, 5, 2006 U.S. App. LEXIS 7371 at *10 (4th Cir. 2006) (rejecting criminal defendant's objection to press' request for access to trial exhibits, noting that "the district court has repeatedly instructed the jurors not to expose themselves to media coverage of the trial; daily questioning by the court demonstrates that the jurors have obeyed this instruction. *See Valley Broadcasting Co. v. United States Dist. Court*, 798 F.2d 1289, 1297 (9th Cir. 1986) (rejecting, as speculative, supposition that jurors might disregard instructions not to watch media coverage of trial

[. . .])"); *see also Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant" of a fair trial).

Because no party has satisfied the rigorous standard imposed by the First Amendment to overcome the public's strong presumptive right of access to the judicial records concerning Ms. Holmes's assertion, before trial, that she suffered from a mental health condition relevant to the charges against her, and which formed the basis for this Court's substantive rulings thereon, those records should be unsealed forthwith.

**III.    The Court Should Forthwith Unseal The Transcripts of the Two Mid-Trial Judicial Proceedings That Were Improperly Closed to the Public Without Entry of the Judicial Findings Required by the First Amendment**

Mr. Balwani does not oppose the unsealing of the transcripts of the two closed hearings the Court conducted on November 22 and December 28, 2021.  Ms. Holmes objects to unsealing any portion of those transcripts for reasons she has entirely withheld from public view and from undersigned counsel.  *See* ECF No. 1370 at 5.  The Government opposes the unsealing of these transcripts, citing the same concerns it raised in response to the motion by Media Petitioners to unseal the completed juror questionnaires in the Holmes case. ECF No. 1373 at 3.

Following the discharge of the jury at the conclusion of the Holmes trial, the Court unsealed redacted versions of all completed juror questionnaires.  ECF No. 1248.   Thus, the Court recognized that the concerns raised by Ms. Holmes and the Government regarding juror safety, privacy, and concerns about juror "distraction" *during the trial* were largely, if not entirely, no longer a concern.  The same is undoubtedly true of the vast bulk, if not the entirety, of the two closed hearing transcripts, whatever the particular subjects were discussed in those proceedings.

As previously indicated, to date, no public Court order – whether in writing or issued orally from the bench – has set forth the findings required by the First Amendment prior to the closure of a judicial proceeding.  *See, e.g., Oregonian Publ'g Co. v. U.S. Dist. Ct.,* 920 F.2d 1462 (9th Cir. 1990). Nor has any party articulated any governmental interest "of the highest order" that necessitates the continued sealing of those transcripts or demonstrated that no "less restrictive alternative means,"

1  including the release of partially redacted transcripts, cannot adequately protect such interests.  *See,*

2  *e.g., Phoenix Newspapers, Inc v. U.S. Dist. Ct.*, 156 F.3d at 947, 951 (9th Cir. 1998) (reversing District

3  Court's blanket sealing of hearing transcript because "[e]ven where denial of access is appropriate, it

4  must be no greater than necessary to protect the interest justifying it" and "redaction would have

5  safeguarded the jurors' anonymity").

6      Accordingly, the transcripts of two judicial proceedings from which the public was

7  unconstitutionally excluded should be unsealed forthwith.

8

9                    **CONCLUSION**

10

11      For the reasons set forth in the Motion and above, the Court should enter an Order unsealing

    all of the judicial records at issue forthwith.

12

13  DATED: March 26, 2022

14                    */s/ Steven D. Zansberg*

15                    STEVEN D. ZANSBERG
                    Attorney for Dow Jones & Company, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY OF DOW JONES & COMPANY IN SUPPORT OF                    CASE NO. 18-CR-00258-EJD
ITS MOTION TO UNSEAL JUDICIAL DOCUMENTS

                    - 7 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2022, a copy of this filing was delivered via ECF to all counsel of record.

*/s/ Steven D. Zansberg*
STEVEN D. ZANSBERG