JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000  │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING**<br><br>Date:     October 3, 2022<br>Time:    1:30 PM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

**MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE**

**AN EVIDENTIARY HEARING**

PLEASE TAKE NOTICE that on October 3, 2022 at 1:30 pm or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court for a new trial or, alternatively, an evidentiary hearing based on newly discovered evidence.  Ms. Holmes makes this motion pursuant to Federal Rule of Criminal Procedure 33.  The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: September 6, 2022

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

**TABLE OF CONTENTS**

Page

BACKGROUND ..................................................................................................................1
    A.    Dr. Rosendorff's Trial Testimony...........................................................................1
    B.    Dr. Rosendorff's Encounter at Ms. Holmes' Home ...............................................4
LEGAL STANDARD..........................................................................................................5
ARGUMENT.......................................................................................................................6
I.    The Newly Discovered Evidence Warrants a New Trial....................................................6
II.    At a Minimum, the Court Should Order an Evidentiary Hearing....................................11
CONCLUSION..................................................................................................................12

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Balestreri v. United States*, 224 F.2d 915 (9th Cir. 1955) .................................................................. 10

*Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) ..................................................................................... 2

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................................................................. 8

*Napue v. Illinois*, 360 U.S. 264 (1959) ................................................................................................. 2

*United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992) ................................. 5

*United States v. Butler*, 567 F.2d 885 (9th Cir. 1978) .......................................................................... 8

*United States v. Davis*, 960 F.2d 820 (9th Cir. 1992) ........................................................................ 10

*United States v. Fulcher*, 250 F.3d 244 (4th Cir. 2001) ................................................................ 7, 11

*United States v. Harrington*, 410 F.3d 598 (9th Cir. 2005) ........................................................... 5, 10

*United States v. Hernandez-Rodriguez*, 443 F.3d 138 (1st Cir. 2006) ............................................... 11

*United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) ........................................................................ 8

*United States v. Krasny*, 607 F.2d 840 (9th Cir. 1979) ...................................................................... 10

*United States v. McKinney*, 952 F.2d 333 (9th Cir. 1991) ................................................................... 6

*United States v. Mendez*, 619 F. App'x 644 (9th Cir. 2015) .......................................................... 6, 10

*United States v. Navarro-Garcia*, 926 F.2d 818 (9th Cir. 1991) ................................................. 11, 12

*United States v. Vozzella*, 124 F.3d 389 (2d Cir. 1997) ...................................................................... 7

*United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989) ............................................................. 6, 10

*United States v. Walker*, 546 F. Supp. 805 (D. Haw. 1982) ............................................................... 7

*United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991) .................................................................... 10

## RULES

Cal. R. Prof'l Conduct 4.2(a) ................................................................................................................. 5

Fed. R. Crim. P. 33 ..................................................................................................................... 1, 5, 11

## OTHER AUTHORITIES

1 Weinstein's Evidence ¶ 401[07] (1985) ............................................................................................. 9

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

On August 8, 2022, at 4:51pm PT, Dr. Adam Rosendorff left a voicemail for Ms. Holmes' counsel asking if he could set up a meeting between Ms. Holmes and Dr. Rosendorff. An hour and 15 minutes later, without hearing back, Dr. Rosendorff appeared at Ms. Holmes' residence. Ms. Holmes' partner, William Evans, answered the door. In the course of two short conversations described in more detail below, Dr. Rosendorff stated, among other things: (1) he tried to answer the questions honestly at Ms. Holmes' trial, but the government tried to make everyone look bad; (2) the government made things seem worse than they were; (3) everyone at Theranos was working hard to do something good and meaningful; (4) he felt that he had done something wrong, apparently in connection with Ms. Holmes' trial; (5) he wanted to talk to Ms. Holmes; (6) he thought a conversation with Ms. Holmes would be healing for both of them; (7) both she and he were young at the time of the events; and (8) these concerns were weighing on him to the point where he had difficulty sleeping.

As the Court knows, Dr. Rosendorff was an important witness; indeed, the government viewed him as a star witness. The government mentioned him more than any other government witness in both opening and closing statements, and Dr. Rosendorff testified longer than any other government witness.

Due to the ethical restrictions on lawyers' communications with represented parties, Ms. Holmes' counsel are unable to return Dr. Rosendorff's call to probe the precise meaning of his statements. Under any interpretation of his statements, the statements warrant a new trial under Rule 33. But, at a minimum, and to the extent the Court has any doubt about whether a new trial is required, the Court should order an evidentiary hearing and permit Ms. Holmes to subpoena Dr. Rosendorff to testify about his concerns.

## BACKGROUND

**A.    Dr. Rosendorff's Trial Testimony**

The Court is familiar with Dr. Rosendorff. He was Theranos' laboratory director from April 2013 to November 2014. Holmes 9/24/21 Tr. 1702:19-1703:1. Even before Ms. Holmes' trial commenced, Dr. Rosendorff was a major focus of the government's case. The government met with Dr.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

1

1  Rosendorff at least eight times, and noticed him as an expert as early as March 2020.  Holmes 9/28/21
2  Tr. 1963:20-1967:16; Dkt. 580-3 at 7-8 (Gov't 3/6/2020 Notice of Expert Disclosure).

3  During trial, the government featured Dr. Rosendorff repeatedly in its opening statement as a
4  witness who would testify as to issues related to technology, the state of the clinical laboratory, and
5  intent.  Holmes 9/8/21 Tr. 547-556.  The government mentioned Dr. Rosendorff more than any other
6  government witness during its opening statement.

7  After deciding not to produce its retained hematology expert for a *Daubert* hearing, and lacking
8  any statistically significant evidence concerning the accuracy and reliability of Theranos technology, the
9  government was forced to rely heavily on Dr. Rosendorff's testimony during Ms. Holmes' trial.  The
10 government's examination of Dr. Rosendorff led to a host of misleading statements that Ms. Holmes'
11 counsel was forced to correct on cross-examination.  *See, e.g.*, Holmes 9/28/21 Tr. 1974:15-1975:25,
12 1977:9-25 (Dr. Rosendorff's reasons for leaving the company); 2011:16-2014:16 (date and nature of
13 Theranos' launch); 1981:25-1983:8 (Dr. Rosendorff confirming that the government failed to show him
14 any policy documents or validation reports); 2256:18-2257:22 (correcting the government's implication
15 that proficiency testing was not performed); 2476:17-2477:7 (establishing that all of Dr. Rosendorff's
16 concerns regarding proficiency testing were addressed).  Indeed, Ms. Holmes counsel alerted the Court
17 that "the breadth of the [cross-]examination" was driven in part by "substantial concerns about what was
18 [elicited] in direct under *Napue* [*v. Illinois*]" and its progeny, which compelled Ms. Holmes to "clarify
19 the record."  Holmes 10/5/21 Tr. 2714:3-8[1] (citing *Napue v. Illinois*, 360 U.S. 264 (1959)).[2]  Due to the
20 misleading nature of the government's presentation, throughout the cross-examination Ms. Holmes'

---

[1] Ms. Holmes later informed the Court that the government's questioning of Dr. Rosendorff also improperly implied facts not in the record concerning the propriety of Theranos' scientific data.  Holmes 10/15/21 Tr. 3838:4-3839:2.

[2] In *Napue*, the Supreme Court held "that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269.  "[I]f it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'" *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005).

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD
2

counsel asked Dr. Rosendorff to confirm that he was being truthful in his testimony. *See, e.g.*, Holmes 9/28/21 Tr. 1973:8-1974:7.

Significant issues also arose concerning Dr. Rosendorff's bias. Holmes 10/5/21 Tr. 2548:22-2576:17, 2705:5-2720:25. Ms. Holmes informed the Court of the serious potential for Dr. Rosendorff to provide biased testimony in favor of the government due to the pending government investigations into the three positions that he held post-Theranos—Perkin Elmer, Invitae, and uBiome. *Id.* The post-employment issues concerned Dr. Rosendorff's competence as a lab director, as well as his motivation to shift the blame for any Theranos issues to others including Ms. Holmes.

The Court permitted limited questioning about Dr. Rosendorff's employment at PerkinElmer on the ground that it was relevant "to potential issue[s] of bias." Holmes 10/5/21 Tr. 2709:14-2710:19, 2717:5-2720:25. The Court forbade questioning regarding "the nature of any investigation, the quality of the investigation, [or] [Dr. Rosendorff's] specific role in it." *Id.* at 2710:11-22. The Court excluded examination about Invitae as "inappropriate character evidence" under Rule 404(a)(1). *Id.* at 2709:5-13. And it excluded examination about uBiome under Rule 403 because the Court understood that a federal investigation into that lab "did not have anything to do with the operation of the lab per se." *Id.* at 2708:2-2709:4. Soon after the Court's ruling, the government opened the door by asking Dr. Rosendorff to compare his experience at Theranos with his experience at other laboratories. *Id.* at 2866:8-23. Ms. Holmes again requested to question Dr. Rosendorff about his post-employment issues as well as his bias. *See id.* at 2867:15-2888:11. The Court declined and, recognizing that the government opened the door to the issue, instructed the jury to disregard the government's questions and Dr. Rosendorff's answer. *Id.* at 2889:23-2890:10.

The government featured Dr. Rosendorff repeatedly in its closing arguments, again mentioning Dr. Rosendorff more than any other witness. *See* Holmes 12/16/21 and 12/17/22 Tr. (collectively referencing Dr. Rosendorff *over 50 times*). Recently, in the government's Opposition to Ms. Holmes' Rule 29 motion, the government repeatedly emphasized Dr. Rosendorff's interactions with Ms. Holmes.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

3

Dkt. 1395 at 11. During the hearing on that motion, the government cited to Dr. Rosendorff's testimony in support of its argument. 9/1/22 Hr'g Tr. 24:8-25:3.

### B. Dr. Rosendorff's Encounter at Ms. Holmes' Home

On August 8, 2022, at approximately 6:05pm, Dr. Rosendorff arrived at Ms. Holmes' home. Declaration of William B. Evans ("Evans Decl.") ¶ 1; *see also* Evans Decl., Ex. A. As Dr. Rosendorff approached the home, her partner, William Evans, noticed Dr. Rosendorff walking towards the front door and went to answer it. Evans Decl. ¶ 2. Mr. Evans did not immediately recognize Dr. Rosendorff, but did so after Dr. Rosendorff introduced himself. *Id.* ¶ 3. Dr. Rosendorff seemed to be in distress and his voice was trembling. Ex. A at 1. His cellphone was open to his camera, although it did not appear that he was recording. *Id.* During this brief interaction outside the front door, Dr. Rosendorff repeatedly stated that he needed to talk to Ms. Holmes. *Id.* Mr. Evans explained that Ms. Holmes could not talk to anyone and that Dr. Rosendorff needed to leave. *Id.*

Dr. Rosendorff attempted to leave the property but was driving the wrong way. *Id.* Mr. Evans approached Dr. Rosendorff in his vehicle at the top of the driveway in order to direct Dr. Rosendorff in the right direction. *Id.* A second conversation then occurred at the top of the driveway, with Mr. Evans outside the car at the window and Dr. Rosendorff in the driver's seat. Evans Decl. ¶ 4 Dr. Rosendorff explained that he wanted to speak to Ms. Holmes because it would be "healing for both himself and Elizabeth to talk." Ex. A at 1. He stated that "when he was called as a witness he tried to answer the questions honestly but that the prosecutors tried to make everyone look bad" and that "the government made things sound worse than they were when he was up on the stand during his testimony." *Id.* Dr. Rosendorff stated that "Theranos was early in his and [Ms. Holmes'] career," that "everyone was just doing the best they could," and "everyone was working so hard to do something good and meaningful." *Id.* He stated that "he fe[lt] guilty" and that he "felt like he had done something wrong," apparently in connection with his testimony in Ms. Holmes' case. *Id.* He stated that these issues were "weighing on him" and that "he was having trouble sleeping." *Id.*

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

Shortly before Dr. Rosendorff went to Ms. Holmes' home, he left a voicemail for Ms. Holmes' counsel Lance Wade. Decl. of Lance A. Wade ("Wade Decl.") ¶ 1 & Ex. 1. Mr. Wade received that voicemail at 7:51pm ET (4:51pm PT), and it lasted approximately thirty seconds. Wade Decl., Ex. 1. In the voicemail, Dr. Rosendorff identified himself and explained that he was calling because "he want[s] to try to visit Elizabeth at [her residence]; [he would] like to see her again" and that he thought "it would be quite healing for her and for [him]." Wade Decl. ¶ 5. Dr. Rosendorff asked if it was possible for Mr. Wade to arrange a visit between Dr. Rosendorff and Ms. Holmes at her residence. *Id.* Mr. Wade did not respond directly to Dr. Rosendorff given the ethical restrictions on communicating with represented parties. *See* Cal. R. Prof'l Conduct 4.2(a) ("a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer"). The next day, Mr. Wade instead contacted the attorney who had appeared at Ms. Holmes' trial with Dr. Rosendorff. Wade Decl., Ex. 2. The attorney responded that there was no need for Mr. Wade to return the call. *Id.*

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). Ordinarily, a new trial should be ordered under Rule 33 on the basis of newly discovered evidence where a defendant shows the following: (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial. *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005).

However, "when the motion implicates governmental misconduct," a defendant is not required to demonstrate that the newly discovered evidence would have probably resulted in an acquittal in a new trial, but needs to show only that there was a reasonable probability that the result would have been

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

5

different if the evidence was available to the defense. *United States v. Walgren*, 885 F.2d 1417, 1427-28 (9th Cir. 1989).

## ARGUMENT

Dr. Rosendorff's statements reflecting his concerns with the government's presentation of his trial testimony, along with his comments that bear on Ms. Holmes' intent, put the integrity of the jury verdict against Ms. Holmes in grave doubt. The Court should grant a new trial or, at the very least, order an evidentiary hearing.

### I. The Newly Discovered Evidence Warrants a New Trial

Dr. Rosendorff's statements satisfy each requirement for a new trial:

***Newly Discovered.*** Dr. Rosendorff's statements on August 8, 2022 occurred seven months after the conclusion of Ms. Holmes' trial. The information he revealed—including his belief that everyone at Theranos was "working so hard to do something good and meaningful" and his concern about how the government presented his testimony—is newly discovered evidence. *United States v. Mendez*, 619 F. App'x 644, 646 (9th Cir. 2015) (reversing and remanding after district court erroneously denied Rule 33 motion and stating that police report was newly discovered when the defendant and his attorneys "did not have access to [the evidence] prior to trial"); *see also United States v. McKinney*, 952 F.2d 333, 335 (9th Cir. 1991) (evidence is newly discovered under Rule 33 when discovered after the verdict was received).

***Diligence in Discovery.*** Similarly, Ms. Holmes' lack of access to this evidence was not the result of a failure to act with diligence. To the contrary, Ms. Holmes' counsel tried to elicit this evidence when asking Dr. Rosendorff at trial whether he testified truthfully. Holmes 9/28/21 Tr. 1973:8-1974:7. Despite this questioning, Dr. Rosendorff did not indicate while on the stand that "he tried to answer questions honestly" but that the government "made things sound worse than they were when he was up on the stand during his testimony." *Compare* Evans Decl., Ex. A., *with* Holmes 9/28/21 Tr. 1973:8-1974:7. Because this information was not revealed to Ms. Holmes despite her efforts at trial to probe what she viewed as the misleading nature of the government's presentation, the due diligence

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

6

prong is satisfied. *See United States v. Fulcher*, 250 F.3d 244, 250 (4th Cir. 2001) (diligence prong is satisfied when "there is simply no indication from the record that a more probing cross-examination would have elicited any of the facts that came to light following the trial"); *United States v. Walker*, 546 F. Supp. 805, 811 (D. Haw. 1982) ("Due diligence means ordinary, rather than extraordinary, diligence.").

***Material to Issues at Trial.*** Dr. Rosendorff's statements are material. To be sure, the exact meaning of Dr. Rosendorff's statements is unclear. Potential meanings include the following:

1. He "*tried* to answer the questions honestly," Evans Decl., Ex. A at 1 (emphasis added), but his attempt to be honest was not always successful, meaning that he provided untruthful testimony to the jury. This interpretation would explain why he said he "felt like he had done something wrong." *Id.*

2. He answered the government's questions honestly, but nonetheless the resulting presentation of evidence was misleading, raising potential concerns under *Napue*, discussed above. *See, e.g.*, *United States v. Vozzella*, 124 F.3d 389, 390 (2d Cir. 1997) (recognizing that *Napue* applied to "the use of evidence that was in part false and otherwise so misleading as to amount to falsity").

3. He answered the government's inculpatory questions honestly, but the government did not ask him about exculpatory information he had provided to the government (that the government did not disclose to the defense).

4. He answered the questions honestly, but the government's cherry-picked questioning and exhibits and his resulting testimony presented an incomplete picture to the jury and made things seem "worse than they were"—for example, by failing to present to the jury a complete, accurate picture of his time at Theranos, his many positive interactions with Ms. Holmes, and his view that "everyone was just doing the best they could" and was "working so hard to do something good and meaningful." Evans Decl., Ex. A at 1.

Under any interpretation of Dr. Rosendorff's statements, the statements are material to the case.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

7

Even assuming he meant version 4, which is the most conservative interpretation of his statements, that statement would have fundamentally changed the jury's perception of the case.

For starters, testimony from a government star witness that the government cherry-picked evidence and/or testimony to make things seem worse than they were would have gravely damaged the reliability of the government's investigation and presentation of evidence and bolstered Ms. Holmes' defense.  Evidence undermining the reliability of the government's investigation is necessarily material. *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (evidence was material because it could have been used to attack the reliability of the government's investigation); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("[I]nformation which might 'have raised opportunities to attack . . . the thoroughness and even good faith of the investigation . . .' constitutes exculpatory, material evidence.").  And this testimony almost certainly would have diminished the weight the jury would have ascribed to Dr. Rosendorff's testimony, which the government used to support key elements of its case.  *See United States v. Butler*, 567 F.2d 885, 890–91 (9th Cir. 1978) ("Both by casting doubt on the prosecution case and by increasing the scope of the closing defense arguments, disclosure of the exact nature of the prosecution's dealings with its key witness would certainly have affected the weight given his testimony by the jury.").

Ms. Holmes specifically argued to the jury that the government's cherry-picked evidence "obscured the full picture" and that the government was incorrectly viewing the evidence through a "dirty lens."  *See* Holmes 12/16/21 Tr. 9031:19-9041:10.  Notably, Ms. Holmes attempted to demonstrate the government's cherry-picking of evidence through Dr. Rosendorff's cross-examination. *See* Holmes 9/29/21 Tr. 2139:15-2146:22 (showing government did not introduce on direct examination full email chain related to inspection of CLIA lab that showed transparency in dealing with inspectors); Holmes 10/5/21 Tr. at 2651:5-2657:25 (showing government raised issues with bicarbonate assay on direct examination, but did not introduce emails that showed the issue was investigated and addressed within 24 hours).  This argument was central to Ms. Holmes' defense:  it was the very first argument that defense counsel made in closing argument.  Dr. Rosendorff's statements would have powerfully

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

corroborated this defense.

Dr. Rosendorff's statements also are material to Ms. Holmes' alleged intent to defraud.  To secure a conviction on the investor counts the government had to show, *inter alia*, that Ms. Holmes knowingly made material misrepresentations with intent to deceive.  The government relied on Dr. Rosendorff in its closing argument when discussing the requisite knowledge and falsity elements of wire fraud.  *See, e.g.*, Holmes 12/16/21 Tr. 8975:6-10 ("Dr. Rosendorff said that in the middle of 2014 he had conversations with Ms. Holmes about QC control . . . again, more knowledge evidence.").  Dr. Rosendorff's statements that "everyone at Theranos" was doing their "best" and "working so hard to do something good and meaningful" would have directly undermined the government's intent arguments.  No doubt exists that Ms. Holmes would have featured these statements prominently in her closing.  Especially coming from a star government witness, these statements would have been material to intent.

***Not Cumulative or Merely Impeaching.***  The evidence is not cumulative.  "Evidence is cumulative if repetitive, *and* if the small increment of probability it adds may not warrant the time spent in introducing it." 1 Weinstein's Evidence ¶ 401[07] (1985).  Dr. Rosendorff did not testify at trial that the government's questioning obscured an accurate depiction of his tenure at Theranos, despite Ms. Holmes' counsel's repeated questioning about the government's tactics.

Nor is this evidence merely impeaching.  Dr. Rosendorff's statement that everyone at Theranos "was just doing the best they could" that "everyone was working so hard to do something good and meaningful" is affirmative evidence of Ms. Holmes' intent.  Evans Decl., Ex. A.  And his statement that the government's presentation was an attempt "to make everybody look bad" and that the government "made things sound worse than they were" is affirmative evidence negating the quality of the government's investigation and trial presentation.  *Id.*

Even if the evidence could be considered impeachment in part, that fact does not defeat the motion.  Although "[o]rdinarily, evidence impeaching a witness will not be material . . . [i]n some situations, however, the newly-discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness's testimony totally incredible." *United States*

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

9

*v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992); *see also United States v. Wallach*, 935 F.2d 445, 458 (2d Cir. 1991) (concluding that new evidence impeaching the government's central witness was sufficiently powerful to require a new trial); *Balestreri v. United States*, 224 F.2d 915, 917 (9th Cir. 1955) ("To deny in every case a motion for a new trial on the ground of newly discovered evidence for the sole reason that the evidence was 'merely impeachment' might often lead to injustice."). Dr. Rosendorff was an important witness and his new statements materially undermine his testimony.

***Likelihood of Acquittal.*** The final element overlaps considerably with the materiality element discussed above. *See United States v. Krasny*, 607 F.2d 840, 845 n.3 (9th Cir. 1979) (citing favorably the reasoning that "two of the traditional prerequisites for prevailing on a motion for a new trial based upon newly discovered evidence, *i.e.*, that the newly discovered evidence be material and that it probably would produce an acquittal on retrial, are really two means of measuring the same thing").

As an initial matter, Dr. Rosendorff's statements raise the possibility that the government may have engaged in misconduct. Dr. Rosendorff's statements to Mr. Evans are not sufficiently precise for Ms. Holmes to accuse the government of misconduct at this time. But if misconduct occurred, Ms. Holmes need not demonstrate that the evidence would probably lead to an acquittal. *Walgren*, 885 F.2d at 1428. Rather, the applicable standard would be whether there is a reasonable probability that the result would have been different if the evidence had been available at trial. *Id.* At a minimum, the Court should order an evidentiary hearing to determine whether misconduct occurred.

Even under the more stringent standard, the last factor is met because the new evidence indicates that "a new trial would probably result in acquittal." *Harrington*, 410 F.3d at 601. For all the reasons already stated, and even ascribing the most conservative meaning to Dr. Rosendorff's statements, if the jury had heard from Dr. Rosendorff that the government cherry-picked evidence to make things seem worse than they were and that everyone was doing their best and working hard to do something good and meaningful, the jury would have viewed this case very differently. Dr. Rosendorff's statements would have "significantly bolstered [Ms. Holmes'] defense and directly rebutted the government's primary response." *Mendez*, 619 F. App'x at 646 (reversing denial of new trial motion after holding that

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

10

"[a] new trial, with the benefit of [newly discovered records], would probably result in acquittal"); *see also Fulcher*, 250 F.3d at 251, 255 (affirming district court findings that new evidence "would paint a 'significantly more persuasive picture than the one presented to the jury at trial,'" and would "certainly create a record more favorable for [the defendants]"); *United States v. Hernandez-Rodriguez*, 443 F.3d 138, 146 (1st Cir. 2006) (reversing denial of new trial motion where "district judge failed to consider the full import of the defendant's new evidence"). Even without this new testimony, this was a close case, as evidenced by the split verdict. Had Dr. Rosendorff provided these statements to the jury, Ms. Holmes probably would have been acquitted.

## II. At a Minimum, the Court Should Order an Evidentiary Hearing

At a minimum, the Court should hold an evidentiary hearing both to determine the meaning of Dr. Rosendorff's statements and to determine whether any government misconduct occurred. As discussed above, Ms. Holmes' counsel are unable to return Dr. Rosendorff's phone call to ascertain the meaning of his statements. If the Court has any doubts about whether Dr. Rosendorff's statements warrant a new trial, an evidentiary hearing will provide the Court the facts necessary to decide the motion.

An evidentiary hearing must be held on a motion for a new trial "[u]less the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial." *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991). In determining whether to grant a hearing, "the district court must be guided 'by the content of the allegations, including the seriousness of the alleged misconduct or bias, and the credibility of the source.'" *Id.*

The "content of the allegations" here weighs in favor of a granting a hearing. Dr. Rosendorff's statements suggest that the government's presentation of evidence may have misled the jury, whether intentionally or not. His statements suggest that there is strong reason to doubt the credibility of a key government witness. And his statements at least raise the possibility of government misconduct. As already discussed, if government misconduct occurred, that would alter the applicable standard for

1  obtaining a new trial. Thus, to the extent the Court has any doubt that a new trial is required under the
2  normal Rule 33 standard, at a minimum, it should conduct a hearing to determine whether misconduct
3  occurred.
4       Second, there is no reason to doubt the credibility of Dr. Rosendorff's statements or that Mr.
5  Evans has accurately conveyed those statements. Dr. Rosendorff's recorded voicemail for Ms. Holmes'
6  counsel is consistent with Mr. Evans' account of his interactions with Dr. Rosendorff and Dr.
7  Rosendorff's statements. *Compare* Evans Decl., Ex. A at 1; *with* Wade Decl. ¶ 5. Nothing in the
8  current record refutes Dr. Rosendorff's recent statements. *See Navarro-Garcia*, 926 F.2d at 823 ("The
9  district court made no finding that the affidavit lacked credibility. Moreover, there is nothing in the
10 record that would support such a conclusion.").
11      The Court should hear directly from Dr. Rosendorff at an evidentiary hearing.

## CONCLUSION

13      For the foregoing reasons, the Court should grant Ms. Holmes' motion for a new trial or, at a
14 minimum, order an evidentiary hearing.

16 DATED: September 6, 2022

                                         /s/ Amy Mason Saharia
                                         KEVIN DOWNEY
                                         LANCE WADE
                                         AMY MASON SAHARIA
                                         KATHERINE TREFZ
                                         Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2022 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE, REGARDING ADAM ROSENDORFF OR IN THE ALTERNATIVE AN EVIDENTIARY HEARING
CR-18-00258 EJD