UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ELIZABETH A. HOLMES,<br>Defendant. | Case No.  5:18-cr-00258-EJD-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**<br><br>Re: Dkt. No. 1291 |

Defendant Elizabeth Holmes was indicted on ten counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 3–12), and two counts of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Counts 1–2). Following a four-month long trial, the jury reached a partial verdict. The jury unanimously found Defendant guilty of four counts, Counts 1, 6, 7, and 8, which charged conspiracy to commit wire fraud and wire fraud against Theranos investors. *See* Third Superseding Indictment ("TSI"), Dkt. No. 469. The jury did not reach a unanimous verdict as to Counts 3, 4, and 5, and the Court declared a mistrial as to those counts. The jury acquitted Defendant of Counts 2, 10, 11, and 12, which charged conspiracy to commit wire fraud and wire fraud as to paying patients.

Defendant moves for a judgment of acquittal as to Counts 1, 6, 7, and 8. The Government opposes this motion, arguing that the overwhelming weight of the evidence admitted at trial supports the jury's conviction of Defendant as to each and every element of Counts 1, 6, 7, and 8. Having reviewed the Parties' papers, the relevant case law, and having had the benefit of oral argument on September 1, 2022, the Court **DENIES** Defendant's motion for judgment of acquittal.

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
1

Federal Rule of Criminal Procedure 29 permits a court to set aside a jury's guilty verdict and enter a judgment of acquittal only if "the evidence is insufficient to sustain a conviction." Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Courts accord great deference to a jury's determination. *See Jackson*, 443 U.S. at 318–19. "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010). The Court must find that under 18 U.S.C. § 1343 and 18 U.S.C. § 1349 no rational jury could have convicted Defendant of conspiracy to commit wire fraud and wire fraud against Theranos investors. That is, the Court must conclude that, viewing the facts in the light most favorable to the government, "the government's proof was insufficient as a matter of law." *Id.*; *see also United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). Pursuant to this standard, the Court holds that is sufficient evidence to convict Defendant of Counts 1, 6, 7, and 8.

1. To prove a conspiracy to commit wire fraud under § 1349, the government had to prove (1) that Defendant and co-defendant Sunny Balwani agreed to commit wire fraud and (2) that Defendant became a member of the alleged conspiracy knowing one of its objects and intending to help accomplish it. The evidence showed, and a reasonable juror could find, that Defendant and Mr. Balwani conspired with each other to commit wire fraud to "save" Theranos from financial ruin. Through the trial, evidence was presented about Theranos's financial status, including evidence about Theranos's financial position in 2009, prior to the indictment period. Importantly, at trial, the evidence showed that in 2009, Theranos received a loan to save the company from financial collapse. *See* 09/08/21 Tr. at 633–35. The evidence further showed that following this loan, Theranos turned its attention away from pharmaceutical companies and toward retail companies, like Walgreens and Safeway, because the money from pharmaceutical companies was not sufficient to sustain the company. The evidence also showed that in November 2013,

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
2

Theranos was down to $15 million, with a burn rate of one to two million per week. Walgreens declined to give a further investment without seeing more progress. Defendant and Mr. Balwani then pursued private investors and used Theranos's relationships with Walgreens and Safeway as proof of Theranos's success, despite knowing that Theranos's relationships with retail companies were stagnating.

Text messages and emails between Defendant and Mr. Balwani during this time support the jury's conclusion that the co-defendants conspired to commit wire fraud. In November 2014, Dr. Rosendorff resigned from Theranos, citing concerns about being forced to vouch for results that he did not trust. Around the same time, Defendant texts Mr. Balwani that they "need to stop fighting fires by not creating them." Shortly after that, Mr. Balwani texts Defendant about the state of the CLIA lab, writing that the "Normandy lab is an [expletive] disaster zone." In that same time frame, Defendant texts Mr. Balwani about securing a $150 million investment from the Walton family and about securing an investment from Mr. Murdoch. Less than two weeks after that, Defendant texts Mr. Balwani about what to include in the Murdoch investment binder. The materials admitted at trial demonstrate that concerns about the lab, concerns about "fires" at Theranos, and concerns from Theranos's own lab director were not included in the investment binder. A rational juror, viewing the evidence in the light most favorable to the prosecution, could have concluded that Defendant and Mr. Balwani conspired to commit wire fraud knowing at least one of the conspiracy's objects—to obtain money from investors—and worked together to accomplish the goal of the conspiracy. The evidence supports a conclusion that Defendant and Mr. Balwani lied to investors about the capabilities, and financial security, of Theranos to obtain investments to keep Theranos afloat.

The close personal relationship between the co-defendants further supports the determination. *See United States v. Sanders*, 952 F.3d 263, 275 n.10 (5th Cir. 2020) (citing *United States v. Willett*, 751 F.3d 335, 340 (5th Cir. 2014) (characterizing as circumstantial evidence the existence of a family relationship and the defendant's position of authority within the organization); *United States v. Cherniavsky*, 732 F. App'x 601, 602 (9th Cir. 2018). Likewise, the

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
3

co-defendants' response to John Carreyrou, first in trying to ensure he received a fingerstick test rather than the typical veinous draw, and later in trying to figure out which former employees served as his sources, is circumstantial evidence of knowledge. Further, after the Wall Street Journal article that exposed Theranos was published, Mr. Balwani texted Defendant that "Walgreens [was] freaking out" due to the lack of transparency. Defendant responded that they needed to respond that they had not decided to shut off the fingerstick testing. Mr. Balwani then responded that this was a "bad idea" because "they know" so it is better to "be transparent." This, in conjunction with the other evidence of financial troubles and a scaled approach to fundraising, is more than sufficient for a reasonable juror to conclude that Defendant conspired with Mr. Balwani to defraud investors. Indeed, "[a] tacit agreement may be inferred from the conspirators' conduct as well as other circumstantial evidence," such as "a common motive, joint action in pursuit of a common objective, and a coordinated cover-up." *Untied States v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018).

2. The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme, and (3) specific intent to defraud.[1] There is sufficient evidence to convict Defendant on Counts 6–8. Defendant represented to investors, like Brian Grossman, that Theranos used its own proprietary technology to run assays, when in fact Theranos used third-party devices. For example, when Brian Grossman got a blood draw, it was a vein draw rather than a fingerstick draw. He followed up with Defendant and was repeatedly assured that the vein draw was only because of the test he ordered. He was never told that his test was going to be run on a non-Theranos device. In fact, he was under the impression that his test was run on a Theranos device, when it was actually run on an unmodified third-party device. Defendant spends great time arguing that she did not disclose the use of third-party devices based

---

[1] Defendant brings constructive amendment and variance arguments, which the government argues are the subject of a Rule 33 motion, rather than a Rule 29 motion. The Court need not resolve this dispute. There is sufficient evidence to support Counts 6–8 outside the identified constructive amendment and variance grounds (*i.e.*, statements about the department of defense and the pharmaceutical companies).

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
4

on trade secret protection. But Defendant presented this argument at trial and the jury rejected it. The evidence at trial also demonstrated that Defendant made false representations to investors regarding Theranos's relationship with Walgreens. For example, Defendant told investors that Walgreens planned to expand with Theranos to 900 stores, when in fact she knew that only 200 stores were predicted. A rational juror could find that the totality of the evidence, including evidence regarding Theranos's precarious financial position, showed that Defendant lied to investors about Theranos's technology, growth, and potential to secure funding. Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence that a rational trier of fact could have found the essential elements of wire fraud beyond a reasonable doubt.

Finally, while not a specific directive for Rule 29, the Court notes this history of this case as further support of the jury's rational decision making. The jury deliberated for eight days and returned a split verdict. This history reflects that the jury carefully considered the evidence, the arguments of counsel, and the court's instructions as to each of the counts alleged.

For these reasons, the Court **DENIES** Defendant's motion for judgment of acquittal.

**IT IS SO ORDERED.**

Dated: September 6, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
5