JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and<br>RAMESH “SUNNY” BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES’ MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE FROM MR. BALWANI’S TRIAL**<br><br>Date: October 3, 2022<br>Time: 1:30 PM<br>CTRM: 4, 5th Floor<br><br>Hon. Edward J. Davila |

**MOTION FOR NEW TRIAL BASED ON**
**NEWLY DISCOVERED EVIDENCE FROM MR. BALWANI'S TRIAL**

PLEASE TAKE NOTICE that on October 3, 2022 at 1:30 p.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court for a new trial based on newly discovered evidence. Ms. Holmes makes this motion pursuant to Federal Rule of Criminal Procedure 33. The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: September 7, 2022

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**TABLE OF CONTENTS**

BACKGROUND ....... 2
- I. Procedural History ....... 2
- II. Evidence and Argument Concerning Ms. Holmes' Relationship with Mr. Balwani ....... 2
  - A. Ms. Holmes' Trial ....... 2
  - B. Mr. Balwani's Trial ....... 4

ARGUMENT ....... 5

CONCLUSION ....... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

Ms. Holmes' relationship with her co-defendant Mr. Balwani is central to this case. The government charged Ms. Holmes and Mr. Balwani as co-conspirators and co-schemers. The government put their relationship at issue in its opening statement in Ms. Holmes' trial, and sought to position the two as romantic partners who ran Theranos as equals. The government strenuously contested any suggestion that Mr. Balwani exercised influence over Ms. Holmes, and even argued to the jury that aspects of the relationship that were inconsistent with the government's theory were irrelevant to the jury's deliberations.

With Ms. Holmes' trial in the rearview mirror, however, the government reversed course. During Mr. Balwani's trial, the government adopted a new narrative. It elicited testimony about the difference in age and experience between Ms. Holmes and Mr. Balwani, and it introduced some of the same text messages that Ms. Holmes had introduced at her trial to exemplify Mr. Balwani's control and influence. From this evidence, the government argued to the jury in closing argument that Mr. Balwani's "close relationship with Ms. Holmes would have given him a lot of influence over her" and that his "input would carry a lot of weight with her." *Balwani* 6/24/22 Tr. 7652:9-17.

The government's statements in closing argument during Mr. Balwani's trial reflect a dramatic shift in the government's position about the nature of Ms. Holmes' relationship with Mr. Balwani. Had the government tried Mr. Balwani first and pursued a theory that Mr. Balwani had a lot of influence over the much younger and less experienced Ms. Holmes, then Ms. Holmes could have admitted the government's prior statements at her trial as statements of a party opponent under Federal Rule of Evidence 801(d)(2). Doing so would have fundamentally changed the government's evidence about the existence of a criminal conspiracy and the role Mr. Balwani played at the company with respect to representations made to potential investors. It would probably have resulted in an acquittal on the counts of conviction. Ms. Holmes, however, was not able to introduce this evidence because it was not available to her at her trial, in part because the government demanded that she be tried ahead of Mr. Balwani. Because the government's statements constitute newly discovered evidence that would

probably lead to Ms. Holmes' acquittal, the Court should order a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## BACKGROUND

### I. Procedural History

At the outset of this case, Ms. Holmes and Mr. Balwani were named as co-defendants in a single indictment. In December 2019, Mr. Balwani moved to sever his trial. Dkt. 967. Mr. Balwani requested that he be tried first in light of anticipated publicity. *Id.* at 10. The government opposed Mr. Balwani's motion, and argued that even if the cases were severed, "Holmes must be tried first." Dkt. 1104 at 25. In March 2020, the Court found good cause to sever the trials and granted in part and denied in part Mr. Balwani's motion. Dkt. 362 at 1; *see also* Dkt. 977. The Court also ordered—consistent with the government's request—that Ms. Holmes be tried first. Dkt. 362 at 1.

Ms. Holmes' trial commenced in August 2021 on 12 charged offenses: conspiracy to commit wire fraud against investors (Count 1) and patients (Count 2), and wire fraud against investors (Counts 3-8) and patients (Counts 9-12). Dkt. 469. During the trial, the Court granted the government's motion to dismiss Count 9. Dkt. 1152 at 4. The jury acquitted Ms. Holmes of the patient-related counts (Counts 2 and 10-12). Dkt. 1235. The jury was unable to reach a unanimous verdict on Counts 3-5, and the government has moved to dismiss those counts. Dkt. 1255. The jury convicted Ms. Holmes of conspiracy to commit wire fraud against investors (Count 1) and three counts of wire fraud corresponding to wires by investors in the C-2 fundraising round in 2014 (Counts 6-8). Dkt. 1235.

Mr. Balwani's separate trial commenced in March 2022 on the same 12 charged offenses. In July 2022, the jury convicted Mr. Balwani on all 12 counts. Dkt. 1507.

### II. Evidence and Argument Concerning Ms. Holmes' Relationship with Mr. Balwani

#### A. Ms. Holmes' Trial

At Ms. Holmes' trial, the government framed her relationship with Mr. Balwani as one between "romantic partners" who "controlled Theranos as *equals*." *Holmes* 9/8/21 Tr. 552:23-553:5 (Gov't Opening) (emphasis added). The government asked witnesses whether they were aware of a romantic relationship between Ms. Holmes and Mr. Balwani. *Holmes* 10/6/21 Tr. 2981:5-8 (S. Burd), 10/19/21

Tr. 4058:21-4059:7 (D. Edlin). The government questioned Daniel Edlin about the "dynamic" between Ms. Holmes and Mr. Balwani, asking if they operated as "co-equals." *Holmes* 10/19/21 Tr. 4057:14-4058:20 (D. Edlin). The government also introduced in its case excerpts of text messages between Ms. Holmes and Mr. Balwani.

During the defense case, Ms. Holmes testified about the nature of her 13-year relationship with Mr. Balwani. *Holmes* 11/29/21 Tr. 7846:11-7879:21. She testified that she did not question Mr. Balwani's business acumen, that she trusted him, and that she did not often overrule Mr. Balwani in the operational areas for which he was responsible. *Id.* at 7875:15-25, 7879:16-21. When asked about the impact of her personal relationship with Mr. Balwani on her work at Theranos, Ms. Holmes explained that Mr. Balwani "impacted everything about who I was, and I don't fully understand that." *Id.* at 7879:12-15.

The government cross-examined Ms. Holmes extensively about her relationship with Mr. Balwani. The government sought to establish that Mr. Balwani was subordinate to Ms. Holmes at Theranos, that they made "decisions for the company together," and that there were areas within the company where "Mr. Balwani deferred" to Ms. Holmes. *Holmes* 11/30/21 Tr. 8006:13-22, 8093:9-8094:3, 8094:20-8097:22. The government focused intensely on Ms. Holmes' text messages with Mr. Balwani, asking her to read to the jury exchanges that—in the government's view—reflected expressions of "love and affection" or instances where Mr. Balwani was being transparent about issues at Theranos. *E.g.*, *id.* at 8027:5-8089:11.

At the end of the trial, the government argued to the jury that aspects of Ms. Holmes' relationship with Mr. Balwani—in particular, his abuse during the conspiracy period—were not relevant to the charged offenses. *E.g.*, *Holmes* 12/16/21 Tr. 9025:25-9026:15 (Gov't Closing) ("The case is about false statements made to investors and false statements made to patients. You do not need to decide the question about whether that abuse happened."). During its rebuttal argument, the government encouraged the jury to assess Ms. Holmes' credibility and her "interest in the outcome of the case" when deciding whether to "believe" her testimony about the relationship. *Holmes* 12/17/21 Tr. 9307:1-22 (Gov't Rebuttal). The government also suggested more broadly that there was "no evidence regarding a

link between what Mr. Balwani and Ms. Holmes's relationship was like and the conduct that she's charged with committing" (even though the government itself linked the relationship to the charged conduct when it put the nature of the relationship at issue in its opening statement and case-in-chief). *Holmes* 12/17/21 Tr. 9307:5-9308:16 (Gov't Rebuttal). The government then argued to the jury that Ms. Holmes "had authority over Mr. Balwani" at Theranos, and that she "did not need encouragement" from Mr. Balwani in order to commit the alleged offenses. *Id.* at 9309:20-9310:17 (Gov't Rebuttal).

**B. Mr. Balwani's Trial**

At Mr. Balwani's trial, the government took a decidedly different approach. The government again called Daniel Edlin to testify about the relationship. This time, however, the government elicited additional evidence that it had avoided at Ms. Holmes' trial. The government asked Mr. Edlin to identify the age difference between Ms. Holmes and Mr. Balwani, as well as Ms. Holmes' and Mr. Balwani's respective experience in business before working at Theranos. *Balwani* 4/13/22 Tr. 2580:13-24, 2581:6-14 (Edlin). The government also introduced through Mr. Edlin a November 2014 text message from Mr. Balwani telling Ms. Holmes: "Awesome, U r listening and paying attention." *Id.* at 2580:9-13 (discussing Balwani TX 5387I at 13). At Ms. Holmes' trial, Ms. Holmes had introduced this same text message in her defense case to evidence Mr. Balwani's influence over her. *Holmes* 11/29/22 Tr. 7863:24-7864:22 (discussing *Holmes* TX 5387F at 3).

With this evidence in the record in Mr. Balwani's trial, the government asked the jury during its closing arguments to consider Mr. Balwani's "influence over Ms. Holmes" on account of his age, experience, and the nature of their relationship. Specifically, the government made the following statements:

> It's no surprise that Mr. Balwani had a lot of authority. Besides his position that we talked about, you can also infer that his close relationship with Ms. Holmes would have given him a lot of influence over her, more than just his title alone would provide.
>
> Remember also that Mr. Balwani was older and more experienced than Ms. Holmes. So it would be no surprise that his advise, his input would carry a lot of weight with her. And that's what showed up in the text messages.

*Balwani* 6/24/22 Tr. 7652:9-17 (Gov't Rebuttal); *see also id*. at 7650:10-12 (Gov't Rebuttal) ("But when it comes to his control at the company, his decision making power, the evidence has shown that he had a lot at the company and that he wielded it.").

**ARGUMENT**

Ms. Holmes is entitled to a new trial under Rule 33 because there is (1) newly discovered evidence that (2) she was diligent in seeking; (3) is material to the issues at trial; (4) is not cumulative or merely impeaching; and (5) indicates that she probably would be acquitted in a new trial. *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005).

*First*, the government's admissions during its closing arguments at Mr. Balwani's trial about Mr. Balwani's influence over Ms. Holmes are admissible and newly discovered evidence. Statements by government prosecutors during closing arguments are admissible against the government in a criminal trial as statements of a party opponent under Federal Rule of Evidence 801(d)(2). *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1105-11 (C.D. Cal. 1999) (exculpatory statements during government's closing in the severed trial of a co-defendant were admissible subject only to Rules 401 and 403); *see also United States v. Kattar*, 840 F.2d 118, 130–31 (1st. Cir. 1988); *United States v. Morgan*, 581 F.2d 933, 937 (D.C. Cir. 1978). And it was only in June 2022—after years of investigating and prosecuting this case and after the conclusion of Ms. Holmes' trial—that the government first conceded that Mr. Balwani had "a lot of influence over" Ms. Holmes and that his advice "would carry a lot of weight with her." *Balwani* 6/24/22 Tr. 7652:9-17. Ms. Holmes could not have been aware of the government's position given that it pursued exactly the opposite strategy at Ms. Holmes' trial, arguing that Ms. Holmes was superior to and not reliant on Mr. Balwani. If Mr. Balwani had been tried first, or if the government had made this concession before Ms. Holmes' trial, Ms. Holmes could have introduced such statements into evidence at her trial.

*Second*, Ms. Holmes was diligent in seeking this new evidence. Ms. Holmes had no way to obtain this evidence until the closing arguments in Mr. Balwani's case.

*Third,* the government's statements about Mr. Balwani's authority at Theranos and influence over Ms. Holmes are material to the issues at Ms. Holmes' trial. The government itself put Ms. Holmes'

relationship with Mr. Balwani at issue. It raised the relationship as early as its opening statement, *Holmes* 9/8/21 Tr. 552:23-553:3, and introduced evidence about that relationship throughout its case-in-chief. *E.g.*, *Holmes* 9/8/21 Tr. 4058:21-4059:7. The government sought to portray the two as equals, in order to make it more likely that they conspired and schemed together. Ms. Holmes, in her testimony, attempted to rebut the government's narrative. She sought to prove that she did not view herself as Mr. Balwani's equal and that she trusted and relied on Mr. Balwani to act in the company's best interests.

Ms. Holmes' understanding of what was happening at Theranos as informed by Mr. Balwani is relevant to her knowledge and intent with respect to the representations to investors that underlie Counts 1, 6, 7, and 8. *See* Third Superseding Indictment, Dkt. 469 ¶ 12. Ms. Holmes' trust in Mr. Balwani explains what Ms. Holmes understood about aspects of Theranos' operations that Mr. Balwani managed—for example, the financial projections that were provided to investors and the operations of the clinical laboratory—and the extent to which she relied on Mr. Balwani in those areas, which tie directly to representations identified by the government in the operative indictment. *Id.*

The nature of Ms. Holmes' relationship with Mr. Balwani—and specifically the influence that he had over her—is also material to determining whether Ms. Holmes entered into a conspiracy with Mr. Balwani, which is a necessary element of Count 1. The government cannot dispute this when it has repeatedly sought to portray Ms. Holmes and Mr. Balwani as romantic co-equals as part of its case for a conspiracy. Indeed, the government highlighted their romantic relationship as highly relevant to the conspiracy count at oral argument on Ms. Holmes' Rule 29 motion. 9/1/22 Hr'ing Tr. 23:2-24:4 ("[Y]ou can consider the relationships, the business and the romantic relationship…."). And the government did not object when Ms. Holmes presented evidence that she and Mr. Balwani were not co-equals and that her relationship with Mr. Balwani was an abusive one in an attempt to rebut the government's conspiracy allegation.

*Fourth*, the government's statements constitute substantive evidence that is not cumulative or merely impeaching. At her trial, Ms. Holmes was the only defense witness to testify as to Mr. Balwani's influence, age, and experience. She was cross-examined extensively by the government, and the government argued to the jury that it could discredit her testimony about her relationship with Mr.

Balwani. The government's own statements that corroborate Ms. Holmes' testimony are obviously not cumulative. Instead, those statements would have bolstered the same testimony that the government asked Ms. Holmes' jury to disbelieve.

*Finally*, the government's statements, if admitted, probably would result in an acquittal. This was a close case. The jury acquitted Ms. Holmes on four counts, and was unable to reach a unanimous verdict on three more. Ms. Holmes was convicted only of one count of conspiracy to commit wire fraud and three counts of wire fraud in connection with investments that occurred in 2014.

If Ms. Holmes' jury had heard that the government itself admitted that Mr. Balwani was "older and more experienced" than Ms. Holmes, that he exercised "a lot of influence" over her, and that his "input would carry a lot of weight with her," it probably would have acquitted Ms. Holmes on the remaining counts. *Balwani* 6/24/22 Tr. 7652:9-17. The resulting record would have been vastly different. With this evidence, the jury could not have viewed Ms. Holmes and Mr. Balwani as "co-equals"—as the government incorrectly depicted them at Ms. Holmes' trial. *Holmes* 9/8/21 Tr. 553:3-5 The jury would understand—because the government would have to concede—that Ms. Holmes' youth and inexperience led her to rely on Mr. Balwani's judgment and knowledge. The jury also would understand that Mr. Balwani's abuse of Ms. Holmes reinforced this dynamic of reliance. A defendant who relies in good faith on others lacks the mental state required to commit conspiracy and/or wire fraud. *See* Jury Instr. No. 22, Dkt. 1206 at 26.

The jury probably would acquit Ms. Holmes on Count 1 with this evidence because the government's concession about the nature of Ms. Holmes' relationship with Mr. Balwani would reinforce her defense that she did not conspire with him to commit wire fraud. Deferring to another's "input" is not an agreement to commit wire fraud, as is required to find conspiracy. *See* Jury Instr. No. 16, Dkt. 1206 at 17 (requiring an agreement to commit wire fraud as charged in the Indictment); *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994) ("[S]imple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient.").

Likewise, this evidence makes it likely that Ms. Holmes would be acquitted as to Counts 6, 7, and 8, which involved representations to potential investors in 2014. It is undisputed that Mr. Balwani had responsibility for many of the operational areas at issue in those representations—for example, the development of financial projections and the operation of the clinical laboratory. *Holmes* 12/16/21 Tr. 8944:17-20 (Gov't Closing) ("Mr. Balwani handled the finances, I think is a fair word, more than Ms. Holmes at Theranos."); *id.* at 8943:25 (Gov't Closing) ("Mr. Balwani ran the lab."). What was disputed at Ms. Holmes' trial was Ms. Holmes' reliance on Mr. Balwani in these operational areas, as well as her knowledge and intent with respect to the representations that were made. The government's concession that Mr. Balwani had more experience than Ms. Holmes, as well as a unique influence over her, corroborates Ms. Holmes' testimony on this issue. It also would preclude (or at least constrain) the government's efforts to discredit Ms. Holmes' reliance on Mr. Balwani by framing their relationship as one of romantic partners who ran Theranos as equals. With those changes to the evidentiary record, Ms. Holmes probably would be acquitted.

**CONCLUSION**

For the foregoing reasons, the Court should grant Ms. Holmes' Motion and order a new trial.

DATED: September 7, 2022

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2022 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes