JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | Date:    October 3, 2022<br>Time:    1:30 PM<br>CTRM:  4, 5th Floor |
| Defendants. | Hon. Edward J. Davila |

**MOTION FOR A NEW TRIAL BASED ON
<u>NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE</u>**

PLEASE TAKE NOTICE that on October 3, 2022 at 1:30 p.m., or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court for a new trial based on newly discovered evidence.  Ms. Holmes makes this motion pursuant to Federal Rule of Criminal Procedure 33.  The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: September 7, 2022

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD

i

# TABLE OF CONTENTS

Page

BACKGROUND ...................................................................................................................1

I.      Ms. Holmes' Trial .................................................................................................1

II.     Mr. Balwani's Trial ...............................................................................................2

ARGUMENT ......................................................................................................................4

I.      Ms. Holmes Is Entitled to a New Trial Because the Government Violated
        *Brady v. Maryland*. ..............................................................................................4

        A.      The Documents Underlying the *Brady* Letter Were Favorable to Ms.
                Holmes. ....................................................................................................5

        B.      The Government Suppressed the Documents Underlying the *Brady*
                Letter. .......................................................................................................7

        C.      The Documents Underlying the *Brady* Letter Were Material. .............7

        D.      Ms. Holmes Is Entitled to Discovery and an Evidentiary Hearing.......12

II.     The Government Emails Would Warrant a New Trial Even If They Were Not
        *Brady/Giglio* Material. ......................................................................................13

CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arizona v. Youngblood*, 488 U.S. 51 (1988)……………………………………………………….2, 6, 7

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................... *passim*

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................................. *passim*

*Comstock v. Humphries*, 786 F.3d 701 (9th Cir. 2015) ......................................................5, 7

*Cone v. Bell*, 556 U.S. 449 (2009) ...........................................................................................7

*Kyles v. Whitley*, 514 U.S. 419 (1995)...............................................................................5, 7

*United States v. Agurs*, 427 U.S. 97 (1976) ...........................................................................4

*United States v. Bagley*, 473 U.S. 667 (1985) .................................................................8, 11

*United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013)..............................................................4

*United States v. Harrington*, 410 F.3d 598 (9th Cir. 2005) .................................................14

*United States v. Hernandez-Mesa*, 720 F.3d 760 (9th Cir. 2013)........................................14

*United States v. Howell*, 231 F.3d 615 (9th Cir. 2000).........................................................5

*United States v. Liew*, 856 F.3d 585 (9th Cir. 2017) ...........................................................12

*United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979)..........................................2, 6, 7

*United States v. Mazzarella*, 784 F.3d 532 (9th Cir. 2015) ................................................12

*United States v. Pasha*, 797 F.3d 1122 (D.C. Cir. 2015).....................................................11

*United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013).....................................................4

*United States v. Van Griffin*, 874 F.2d 634 (9th Cir. 1989) ...................................................5

*Wearry v. Cain*, 577 U.S. 385 (2016) (per curiam) ...............................................................7

## RULES

Fed. R. Crim. P. 16 .............................................................................................. *passim*

Fed. R. Crim. P. 33 ....................................................................................................4

Fed. R. Evid. 404 ...................................................................................................................1

Fed. R. Evid. 801 ...................................................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

On June 2, 2022, nearly five months after Ms. Holmes' verdict, the government produced emails relating to the role of three prosecutors in the loss of the LIS database, the repository of Theranos testing and quality control data.  The government produced the emails in response to this Court's order requiring production to Ms. Holmes' co-defendant, Mr. Balwani, under *Brady v. Maryland*, 373 U.S. 83 (1963).  Dkt. 1464 at 6-7.  Ms. Holmes had requested these specific emails since November 2020 under *Brady*, *Giglio v. United States*, 405 U.S. 150 (1972), and Fed. R. Crim. P. 16.  Because the documents are favorable to Ms. Holmes, were suppressed by the government during her trial, and are material, the government has violated *Brady* and *Giglio*.  Although there has been extensive motion practice concerning the LIS, the government's *Brady* and *Giglio* violations surface new issues and cast the prior motion practice in a different light.  A new trial and evidentiary hearing are necessary.

## BACKGROUND

### I.    Ms. Holmes' Trial

The Court is familiar with Ms. Holmes' efforts to obtain information relating to the quality of the government's investigation into the LIS.  Briefly, following the government's March 6, 2020 Rule 404(b) letter incorrectly insinuating that Ms. Holmes was at fault for the loss of the LIS, Ms. Holmes sent the government a series of letters and emails seeking information relating to the loss of the LIS database.  *See* Dkt. 736-3 (Mar. 13, 2020); Dkt. 736-5 (Mar. 23, 2020); Dkt. 811-9 (July 7, 2020); Dkt. 811-7 (Aug. 4, 2020); Dkt. 811-5 (Aug. to Oct. 2020); *cf*. Dkt. 736-2 (Mar. 11, 2020).  Ms. Holmes repeatedly cited *Brady*, *Giglio*, and Rule 16 as a basis for her requests.  Eventually, the government produced a letter concerning the conduct of unnamed government attorneys and personnel in connection with the loss of the LIS (Oct. 29, 2020 "*Brady* Letter").  Dkt. 732-2 (redacted); Dkt. 736-7 (under seal).  Ms. Holmes promptly requested the documents underlying the *Brady* letter and the names of individuals identified therein.  *See* Dkt. 811-2 (Nov. 2020 to Feb. 2021); Dkt. 811-4 (Nov. 18, 2020); Dkt. 811-1 (May 25, 2021).  The government refused to provide the requested information and materials.

Ms. Holmes then moved for production of the documents and identification of the government personnel referenced in the letter.  Dkts. 810, 850.  Ms. Holmes argued that she was entitled to this

1   information (1) to support her motion to suppress under *Arizona v. Youngblood*, 488 U.S. 51 (1988), and

2   *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (en banc) (Kennedy, J.) (controlling

3   op.),[1] and independently (2) under *Brady*, *Giglio*, and Rule 16.  *See* Dkt. 810 at 8 & n.13; Dkt. 850 at

4   14-15.  Ms. Holmes argued that the documents were relevant to "the quality of the government's

5   conduct in failing to preserve the LIS."  Dkt. 810 at 8 & n.13.  Ms. Holmes also argued that the

6   documents were necessary to prepare her defense, including to determine whether to present evidence

7   related to the loss of the LIS database at trial.  *See* Dkt. 850 at 15; 7/7/2021 Tr. 40:13-41:1.

8          The Court denied Ms. Holmes' motion to compel.  The Court held that "delving into the

9   Government's actions with respect to the LIS database after August 31, 2018" was "not relevant;" that

10  *Brady* "is not a pretrial discovery tool;" and that Ms. Holmes had "not indicated why any of the

11  information or evidence she seeks is relevant, helpful in establishing her defense, not cumulative, or not

12  exempt from disclosure due to deliberative privilege and/or work product protection."  Dkt. 887 at 17.

13  The Court "defer[red] ruling on whether the Government must provide additional related documents

14  unless and until the Government elicits testimony concerning the LIS database from those witnesses."

15  *Id*. at 18.  The government did not elicit such testimony, so the documents were not produced to Ms.

16  Holmes.  Ms. Holmes was convicted of Count 1 (conspiracy to commit wire fraud against investors) and

17  Counts 6-8 (wire fraud against investors).  The jury acquitted Ms. Holmes of four counts, was unable to

18  reach a verdict on three counts, and the Court dismissed one count during trial upon the government's

19  motion.

20  **II.    Mr. Balwani's Trial**

21         Mr. Balwani also sought the same documents underpinning specific paragraphs of the

22  government's October 29, 2020 *Brady* letter.  Before trial, Mr. Balwani moved to compel production of

23  "all documents related to [the government's] decision not to capture the LIS."  Dkt. 1156 at 62.  That

24  motion was denied.  Dkt. 1326 at 37.  At trial, Mr. Balwani referred to the government's failure to

---

26  [1] Ms. Holmes moved to suppress evidence of testing results, customer complaints, and the
findings in the CMS Report under the Due Process Clause, *Youngblood*, 488 U.S. 51, and, separately,
under the balancing test in *Loud Hawk*, 628 F.2d 1139, 1151 (Kennedy, J.) (controlling op.).  Dkts. 810,
27  811, 850, 851.  She renewed that motion at the close of trial under both sources of authority and moved
to strike specific evidence from the trial record.  11/19/2021 Tr. 7100-7102.

28  MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD

preserve the LIS in his opening statement, 3/22/2022 Tr. 1051-52, 1105-11, and later moved to compel production of documents underlying specific paragraphs of the October 29, 2020 *Brady* letter, Dkt. 1425.

In response to that later motion, the Court ordered disclosure of the documents on the grounds that Mr. Balwani had "articulated a specific defense," namely, the thoroughness or quality of the government's investigation.  Dkt. 1464 at 3-4.  Although the Court observed that Rule 16 applied only to pretrial disclosures, it held that, "[w]hile the jury may very well ultimately find Balwani's defense unconvincing, *Brady* requires the Government to provide him the information to present that defense." *Id*. at 6.  The Court rejected the government's assertion of work-product privilege.  *Id*. at 6-7.

On June 2, 2022, the government produced the at-issue documents, consistent with the Court order.  *See* Ex. 1.  The production included emails between the prosecution team and other government personnel from fall 2018 relating to the LIS, as well as emails between members of the prosecution team and counsel for the Theranos Assignee relating to the LIS.  Some emails had previously been produced to the defense, but most had not.  Mr. Balwani and the government admitted into evidence three emails from the production, two of which were not previously produced.  *See* Ex. 2 (TX 20832) (not previously produced); Ex. 3 (TX 5917); Ex. 4 (TX 5943) (not previously produced).  Two emails identified options for preserving the LIS, Ex. 2 (TX 20832); Ex. 4 (TX 5943), and one of those emails showed that the government had chosen to pursue some but not others, Ex. 4 (TX 5943).  Mr. Balwani's counsel reviewed one of the newly produced emails (TX 20832) with Mr. Balwani's expert Richard Sonnier, who testified that one of the specified options (securing the physical Theranos server and setting it up in a government workroom) would have preserved the LIS.  *United States v. Balwani*, 18-cr-258-2, 6/9/2022 Tr. 6736-6738, 67466747, 6820-6823; *see also* 6/23/2022 Tr. 7526-7528 (Balwani closing argument) (quoting email).  The emails also revealed that Jeffrey Schenk, Robert Leach, and John Bostic were the unnamed "government attorneys" whose conduct was described in the *Brady* letter.[2]  In closing

---

[2] Although previously produced documents had made clear that Mr. Schenk and Mr. Bostic were involved in other events relating to the loss of the LIS, the government had never disclosed the identities of the unnamed prosecutors and other government personnel involved in the events in fall 2018, and whose conduct was summarized in the *Brady* letter.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE
CR-18-00258 EJD

arguments, the government and Mr. Balwani disputed the implications of the loss of the LIS.  6/23/2022 Tr. 7520-7539 (Balwani Closing); 6/21/2022 Tr. 7077-7081 (Gov't Closing).

On July 5, 2022 (and again on July 21, 2022), counsel for Ms. Holmes requested information and documents, pursuant to *Brady* and *Giglio*, relating to the recently disclosed emails.  Exs. 5, 6.  On July 28, the government "respectfully decline[d] the request" to answer any questions in the July 5 letter.  Ex. 7.

## ARGUMENT

### I.  Ms. Holmes Is Entitled to a New Trial Because the Government Violated *Brady v. Maryland*.

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The "interest of justice" requires a new trial when the government fails to produce "material" information that it was required to produce under *Brady* and/or *Giglio*.  In this circumstance, a defendant need not make the showing required for a typical new trial motion based on newly discovered evidence—*i.e.*, that the newly discovered evidence probably would result in an acquittal.  *See United States v. Agurs*, 427 U.S. 97, 111-112 & n. 19 (1976) ("If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the [government's] possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.").  Instead, to grant a new trial for a *Brady* violation, "the district court must merely determine that the documents, if favorable to [the defendant], undermine its confidence in the outcome and that there is a 'reasonable probability' of a different result."  *United States v. Doe*, 705 F.3d 1134, 1152–53 (9th Cir. 2013) (standard for new trial under *Brady* is "much relaxed standard" than under Rule 16).

In a post-trial posture, a *Brady* violation has three components: the information at issue must be (1) favorable to the defense (either because it was exculpatory or impeaching); (2) suppressed by the prosecution (whether willfully or inadvertently); and (3) material to the guilt or innocence of the defendant.  *See United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013).

### A.      The Documents Underlying the *Brady* Letter Were Favorable to Ms. Holmes.

For three reasons, the emails in the government's June 2, 2022 production unquestionably "would tend to call the government's case into doubt," and thus are "favorable . . . for *Brady* purposes." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015).  Critically, these emails are admissible for nonhearsay purposes and as statements of a party opponent. Fed. R. Evid. 801(d)(2); *United States v. Van Griffin*, 874 F.2d 634, 638 (9th Cir. 1989).

*First*, the emails undermine the quality of the government's investigation.  *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995).  As the Ninth Circuit has explained, "information which might have raised the opportunity to attack the thoroughness and even good faith of the investigation constitutes material, exculpatory evidence." *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (cleaned up).  The new emails confirm that the three prosecutors at counsel's table throughout Ms. Holmes' trial failed to take specific steps recommended by expert government personnel to access, collect, and preserve the central repository for patient testing data and quality control data.  The emails also illustrate the extent to which the government concealed its failure to preserve the LIS from Ms. Holmes' counsel in fall 2018— when, according to expert testimony in Mr. Balwani's case, the LIS could have been reconstituted through physical servers.  *See supra* p. 3.  For example, the emails show:

- Mr. Schenk, Mr. Leach, and Mr. Bostic, at an October 2018 meeting, decided not to pursue certain options recommended to them to preserve the LIS.  Ex. 4 (TX 5943) at 1-2.[3]

- Mr. Schenk, Mr. Leach, and Mr. Bostic ignored Ms. Holliman's (a government paralegal) email referring to the "need to let the Judge know the status of all discovery" at an upcoming status conference in October 2018.  Ex. 8 (US1-001841) at 1.[4]

---

[3] No documents, notes, or other information has been made available concerning what occurred at this meeting, despite Ms. Holmes' repeated requests.  At that meeting, members of the prosecution team apparently decided to "push[]" the Assignee to produce the LIS, and to "Check with the FBI (or other agencies) to see if they have a resource that can process large SQL database archives."  Ex. 4 (TX 5943) at 1.  The government has never produced evidence substantiating that it did, in fact, check with the FBI or other agencies about potential resources for accessing the LIS.

[4] The government did not raise the LIS issue with the Court or with Ms. Holmes' counsel.  *See* Dkt. No. 55 at 2; 10/15/18 Minute Order, Dkt. No. 57.  Notably, the parties' joint submission discussed scheduling issues in the government's production of other materials, and explained that the government had enlisted a DOJ facility in South Carolina to process that discovery.  But the joint submission made no reference to the LIS database.  Dkt. 55.  The government wrote a first draft of that submission.  Ex. 10 (Oct. 11, 2018 Email from J. Schenk to L. Wade).

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD

5

- The government did not produce any email response from Mr. Schenk, Mr. Leach, or Mr. Bostic to Ms. Holliman's or Ms. Peirce's (a government litigation support expert) emails concerning possible methods for accessing and preserving the LIS.

- Counsel for the Assignee informed Mr. Bostic on October 15, 2018 that someone other than Mr. Balwani may have known how to access the LIS.  Ex. 9 (US1-001857).[5]

- Ms. Holliman said on October 30, 2018 that Mr. Schenk, Mr. Leach, and Mr. Bostic decided to seek production of the LIS from the Assignee in "the standard way," even though Mr. Bostic was told on October 15 that the Assignee believed it "was encrypted" and "did not have the code" for the LIS.  *Compare* Ex. 4 (TX 5943) at 1, *with* Ex. 9 (US1-001857) at 1.

- Mr. Leach told Ms. Holliman that it was "important to have everything out" by "4/15" (presumably April 15, 2019).  Ex. 11 (US-001846) at 2.  Nevertheless, the government did not produce a copy of the LIS database to Ms. Holmes until June 26, 2020.

For the reasons explained in prior pleadings, the evidence contained in the LIS would have been central to any full and fair assessment of the government's accuracy-and-reliability allegations, as well as Ms. Holmes' ability to confront witnesses and evidence against her (and thereby present a complete defense), and would have informed Ms. Holmes' trial strategy.  Dkt. 469, ¶¶ 12(A), 16; *see* Dkts. 730, 810, 850; *see also* 11/19/2021 Tr. 7100-7102.

*Second*, the emails tend to prove bias on the part of the prosecutors to present evidence, and elicit testimony, that diverted attention from the poor quality of their investigation.  *See supra* pp. 5-6. Had the emails been available at trial, Ms. Holmes could have used them to cast doubt on the prosecutors' bias.

*Third*, the documents strengthen Ms. Holmes' motions to suppress (and related mid-trial motion to strike) by substantiating the poor quality of the government's conduct in failing to take appropriate steps to preserve the LIS.  *See* Dkts. 810, 850, 11/19/2021 Tr. 7100-7102.  Ms. Holmes moved under the Due Process Clause, *Arizona v. Youngblood*, 488 U.S. 51 (1988), and, in the alternative, under the balancing test in *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (en banc) (Kennedy,

---

[5] This email shows that the government's *Brady* letter was misleading.  *Compare* Ex. 9 (US-001857) at 1 ("John asked about the LIS data base that they cannot access, I told him that I believe it was encrypted and that we don't have the code, maybe two former employees know how to unravel it, Sonny [sic] Balwani was one, Tom - do you recall the other"), *with* Dkt. 732-2 ¶ 48, p. 22 ("Assignee counsel opined that Sunny Balwani would likely be able to decrypt the database, but could not identify anyone else who they thought could accomplish the task.").

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE
CR-18-00258 EJD

1  J.) (controlling op.), to suppress anecdotal evidence relating to test results.  The June 2, 2022 production

2  relates directly to the quality of the government's conduct—a critical factor under both frameworks.

3  Although there are important open questions concerning the government's conduct in fall 2018

4  (requiring an evidentiary hearing), *see infra* pp. 12-13, these emails strengthen the showing of bad faith

5  under *Youngblood*, and, at a minimum, warrant suppression under *Loud Hawk*.  Using the factors

6  identified by then-Judge Kennedy, the emails demonstrate that the government "acted in disregard for

7  the interests of the accused," was at a minimum "negligent in failing to adhere to established and

8  reasonable standards of care for police and prosecutorial functions" (i.e., the standards recommended by

9  expert government personnel), and that "the acts were deliberate."  *Loud Hawk*, 628 F.2d at 1152

10  (controlling op.).  The emails, when combined with evidence of the prejudice associated with the loss of

11  the LIS, *see, e.g.*, 11/19/22, Tr. 7100-7102, entitle Ms. Holmes to her requested relief:  suppression of

12  the evidence and testimony identified in her prior motions, *see id.*; Dkts. 810, 850.

13  **B.     The Government Suppressed the Documents Underlying the *Brady* Letter.**

14       The government suppressed the at-issue evidence.  The government refused, in response to

15  specific requests grounded in *Brady*, to provide Ms. Holmes with the evidence.  *See supra* pp. 1-3.

16  "Evidence is suppressed where it is known to the [government] and not disclosed to the defendant."

17  *Comstock*, 786 F.3d at 709 (cleaned up).  Here, the government disclosed the documents 18 months after

18  Ms. Holmes first requested them, and nearly 5 months after her verdict.

19  **C.     The Documents Underlying the *Brady* Letter Were Material.**

20       Evidence—whether exculpatory, impeaching, or both—"qualifies as material when there is any

21  reasonable likelihood it could have affected the judgment of the jury."  *Wearry v. Cain*, 577 U.S. 385,

22  392 (2016) (per curiam) (quoting *Giglio*, 405 U.S. at 154) (internal quotation marks omitted); *see also*

23  *Cone v. Bell*, 556 U.S. 449, 452 (2009) (question is whether "withheld evidence would have altered at

24  least one juror's assessment").  The inquiry thus "is not whether the defendant would more likely than

25  not have received a different verdict with the evidence, but whether in its absence he received a fair trial,

26  understood as a trial resulting in a verdict worthy of confidence."  *Kyles*, 514 U.S. at 434.  In other

27  words, the test for materiality "is not a sufficiency of evidence test."  *Id.*  Rather, the test requires

28  MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD

1   consideration not only of the evidence itself, but also the impact of its suppression on defense strategy,

2   including on the cross-examination of key government witnesses.  *United States v. Bagley*, 473 U.S.

3   667, 676 (1985).

4        The emails underlying the *Brady* letter were material.  There is a reasonable probability that this

5   admissible evidence—which shows that Mr. Schenk, Mr. Leach, and Mr. Bostic knowingly disregarded

6   available routes to access the LIS—would have resulted in Ms. Holmes' acquittal.

7        For starters, the evidence undermines the quality of the government's investigation.  *See supra*

8   pp. 5-6.  The testimony of the government's own witnesses makes clear that any thorough, good faith

9   investigation of the "accuracy and reliability" of Theranos technology, *see* Dkt. 469, ¶¶ 12(A), 16,

10   would have prioritized accessing, collecting, and preserving the LIS.[6]  The government's knowing

11   failure to do so discredits its entire case.

12        Dr. Adam Rosendorff, the director of Theranos' CLIA laboratory, testified that he relied on the

13   LIS to investigate potential issues in the laboratory: "Folks like Max Fosque who ran the LIS, I would

14   gather all of the information to do an investigation in instances where there was a patient complaint or a

15   doctor complaint, et cetera."  9/28/2021 Tr. 2091; *see also* 10/6/2021 Tr. 2908-2909 ("I would see how

16   the Theranos results had been trending, . . . see how many are out of reference range.  I would do an

17   investigation.").  And Dr. Rosendorff agreed that only after "someone who had access to LIS gather[ed]

18   all – scrape[d] all of the details . . . would [he] be in a position to fully analyze" a test result.  9/28/2021

19   Tr. 2091-2092; *accord* 9/29/2021 Tr. 2182-2186 (Rosendorff) (testifying about use of LIS to assess the

20   source of any potential pre-analytic, analytic, or post-analytic error for any particular patient); 9/28/2021

21   Tr. 2092-2093 (Rosendorff) (the LIS permits querying data for a particular time period for specific

22   assays to see if the data "told you anything").  Dr. Rosendorff told the jury that Theranos was required

23   "by law" to store "all of the laboratory results" in the LIS, 9/28/2021 Tr. 2088; *see also id*. at 2089, and

24   stated that (before becoming lab director) he familiarized himself with the LIS, *id.* at 2065.

25

26

27        [6] *See* 9/17/2021 Tr. 1078-80 (Cheung); 9/28/2021 Tr. 2065, 2087-2093 (Rosendorff); 9/29/2021
Tr. 2182-2186 (Rosendorff); 10/5/2021 Tr. 2719, 2735 (Rosendorff); 10/6/2021 Tr. 2908-2912
(Rosendorff); 11/9/2021 Tr. 5751-56 (Sawyer); TX 13655 (LIS Standard Operating Procedure).

28   MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD

1    Erika Cheung likewise said that the data underlying her testimony concerning quality control

2    once resided on the LIS.  The LIS was "a comprehensive database that you utilize in order to result out

3    clinical diagnostic results," and included "quality control information."  9/17/2021 Tr. 1079 ("[LIS] is a

4    database that you keep all of the patient records and patient information, the clinician information, the

5    patient results, you'll store quality control information, the technicians in charge of running the patient

6    sample, the clinical lab scientist who would be responsible for reviewing the information.").

7    Dr. Kingshuk Das, although not testifying directly to the capabilities of the LIS, testified

8    extensively about patient impact assessments that relied on patient testing and quality control data that

9    (according to Dr. Rosendorff and/or Ms. Cheung) resided in the LIS.  The memorandum for Dr. Das'

10   June 7, 2021 interview with the government states that "[t]his information [quality control data] resided

11   in Theranos' LIS [Laboratory Information System] database."  Ex. 12 (US-REPORTS-0026721) at 1.

12   Furthermore, Ms. Holmes would have been able to use the new emails to show the prosecutors'

13   bias—that is, their motive to minimize the significance of the LIS or to inflate the significance of

14   anecdotal testing results, to compensate for their failure to obtain this critical evidence.  The government

15   suggested in questioning, for example, that the LIS system was not important.  *See, e.g.*, 10/05/2021 Tr.

16   2734-37 (A. Rosendorff) ("Q. You also talked about being able to identify inaccurate test results based

17   on patient factors and the way the patient presents?  A. Yes.  Q. And are those patient factors logged in

18   LIS?  A.  No."); *id.* ("Q. And, for example, if someone received a positive test saying that they were

19   suffering from a certain disease and then they later received a negative test indicating that they weren't

20   suffering from that disease from another laboratory, would that information be logged in [LIS]?  A.

21   No."); 11/9/2021 Tr. 5774 (L. Sawyer) ("Q. You never used the LIS system, did you?  A. No.  Q. You

22   never drew a patient record from the LIS System? A. I did not.").

23   The government even suggested (with no good-faith basis) that Theranos data that resided in the

24   LIS was unreliable or even falsified.  *See* 10/14/2021 Tr. 3704 (Jhaveri) ("Q. Do you know whether

25   Walgreens was ever given access to raw test data to be satisfied, to reach the conclusion that they were

26   satisfied?  A. For that particular issue I do not remember."); 10/15/2021 Tr. 3829 (Dhawan) ("Q. You

27   didn't ask anybody to substantiate the data; is that right?  A. My assumption was that the data was

28   MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
     RELATING TO LIS DATABASE
     CR-18-00258 EJD

1  correct, so I didn't go further."); *id.* at 3831 ("Q. And you were assuming that people at Theranos were

2  conducting those tests in an accurate manner?  A. That was my assumption.  Q. And did you do anything

3  to confirm that?  A. I didn't have any reason or need to confirm it.").[7]  Ms. Holmes raised concerns

4  about the government's line of examination at trial.  10/15/2021 Tr. 3838-43.

5          These lines of questioning incorrectly suggested that the LIS data (and the functionality of the

6  LIS itself) would not have been relevant either to prove or to confront the government's accuracy-and-

7  reliability allegations.  That is not true.  As Dr. Rosendorff explained, the LIS could have been used to

8  investigate accuracy and reliability as a statistical matter even without knowing patient information.

9  10/6/2021 Tr. 2908-2909 (using LIS to "see how the Theranos results had been trending" and "how

10  many are out of reference range" as part of an "investigation" into alleged accuracy issues); TX 13655

11  (LIS tracked "critical values" for test result).  The LIS would also have been vital to confronting specific

12  anecdotes—and therefore the allegation that any particular questionable result was the product of an

13  issue with Theranos technology, rather than some other cause.  *See* 9/29/2021 Tr. 2182-86 (Rosendorff).

14  For both categories of evidence—opinions based on broader data sets (like Dr. Das' patient impact

15  assessments) and individual anecdotes (like Dr. Rosendorff's testimony)—Ms. Holmes was left to stitch

16  together cross-examinations from scattered company emails and documents, without the central

17  repository of data.  If Ms. Holmes had presented the suppressed emails showing the prosecutors'

18  personal culpability in failing to take steps to preserve the database, the jury would have understood the

19  prosecutors' personal motivation to push this incorrect narrative.

20          The emails also would have informed Ms. Holmes' trial strategy—specifically, the emails would

21  have informed the decision whether to present evidence and argument regarding the government's

22

23          [7] The government made similar insinuations as to the reliability of data originating with the R&D
24  lab.  These insinuations would have affected jurors' perception of the integrity of Theranos' data
generally, including in the LIS.  10/5/2021 Tr. 2746 (Rosendorff) ("Q. All of the validation work that
25  you witnessed at Theranos, that you were involved in, I'm curious about how you viewed that work and
those documents at the time you left the company?  How did that factor into your decision?  A. I started
26  to lose faith that the validation data actually reflected what had been in done in R&D during their
validation work."); *see also* 10/6/2021 Tr. 2815 (Rosendorff).
27

28  MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD
                                                    10

1   failure to investigate and preserve this critical evidence, and whether to seek a jury instruction regarding

2   that failure. *See Bagley*, 473 U.S. at 682-83 ("[T]he reviewing court may consider directly any adverse

3   effect that the prosecutor's failure to respond might have had on the preparation or presentation of the

4   defendant's case."); *United States v. Pasha*, 797 F.3d 1122, 1134 (D.C. Cir. 2015) (*Brady* test requires

5   "accounting for how the defense may have changed its preparation or presentation if the exculpatory

6   information had been disclosed").  Ms. Holmes needed to decide at trial whether, and to what extent, to

7   argue that the "LIS [was] unavailable because of the Government's failure to obtain it."  Dkt. 798 at 58.

8   With this admissible evidence relating to the prosecutors, Ms. Holmes would have been able to make a

9   more informed decision as to whether to present this argument, including whether to cross-examine

10  government witnesses who testified to the performance of Theranos technology on the current

11  unavailability of the LIS.  With admissible documentary evidence showing the poor quality of the

12  government investigation, the risk that the jury would (erroneously and without evidence) fault Ms.

13  Holmes for the loss of the LIS would be greatly diminished.

14          Finally, for the reasons previously stated, the emails reaffirmed that suppression was warranted.

15  *See supra* pp. 6-7.  In her renewed motion to suppress and to strike, Ms. Holmes requested that the Court

16  strike (1) evidence from customers related to their specific testing results; (2) evidence from doctors or

17  other medical professionals relating to customers' specific testing results; (3) the CMS report's

18  discussion of quality control results and other testing data in the LIS; (4) all other customer complaints

19  or testing results offered by other fact witnesses; and (5) all evidence relating to quality control data or

20  any other data in the LIS from fact witnesses.  *See generally* 11/19/2021 Tr. 7100-7102.  Had Ms.

21  Holmes' motion to suppress (or subsequent motion to strike) been granted, the government's case would

22  have looked dramatically different.  The government would have lacked evidence supporting the core

23  allegation of the case: that Ms. Holmes knowingly misrepresented the capabilities of Theranos

24  technology.  *See* Dkt. 469, ¶ 12(A), 16.  The government's closing places this allegation at the heart of

25  the investor counts.  *See, e.g.*, 12/16/2021 Tr. 8910.

26

27

28  MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
    RELATING TO LIS DATABASE
    CR-18-00258 EJD

                                        11

**D.    Ms. Holmes Is Entitled to Discovery and an Evidentiary Hearing.**

The government's June 2, 2022 document production establishes the need for an evidentiary hearing.  *See United States v. Mazzarella*, 784 F.3d 532, 541 (9th Cir. 2015) (abuse of discretion in district court's denial of post-trial/post-sentencing *Brady* evidentiary hearing); *see also United States v. Liew*, 856 F.3d 585, 604-605 (9th Cir. 2017) (vacating post-trial order denying request for production of agent notes and remanding for *in camera* review of notes to determine whether they were *Brady* material).  Ms. Holmes previously requested an evidentiary hearing to resolve important factual disputes relating to the loss of the LIS, and hereby renews that request (along with the request for any LIS-related documents or information underlying the *Brady* letter that were not produced to Mr. Balwani, who requested communications and materials underlying specific paragraphs).  *See* Dkt. 850 at 9-13.  The recent production of *Brady* material raises or renews the following questions:

- What happened in the October 2018 meeting between Ms. Holliman and "the AUSAs", in which the government decided to pursue some leads and not others?  Ex. 4 (TX 5943) at 1; *see supra* p. 5 & n. 3.

- At that October 2018 meeting, why did "the AUSAs" decide not to ask Theranos if "they'[d] consider handing over their physical SQL server [so] we [i.e., government expert support staff] can set it up in a workroom."  Ex. 4 (TX 5943) at 2.

- Did the government ask the FBI or any other agency how to preserve and access the LIS?

- Why did the *Brady* Letter fail to name Mr. Schenk, Mr. Leach, and Mr. Bostic?

- Why are there no responses from Mr. Schenk, Mr. Leach, or Mr. Bostic to email correspondence regarding the preservation of the LIS?  *See, e.g.*, Ex. 4 (TX 5943) at 1-2 (10/5/2018 email re: "Possible Routes Forward").

- Did Ms. Peirce forward the hard drive to IT, as forecast in Ms. Holliman's September 12, 2018 email?  Ex. 8 (US1-001841) at 4.  If so, when, and what steps were taken by IT personnel thereafter?

- Why did the government not inform the Court of its difficulty accessing the LIS in fall 2018, despite Ms. Holliman's email referring to the "need to let the Judge know the status of all discovery" at an upcoming status conference?  Ex. 8 (US1-001841) at 1.

- Why did the government not inform the defense of its difficulty accessing the LIS in connection with the joint status report filed on October 12, 2018?

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE
CR-18-00258 EJD

- Did the government investigate using the Department of Justice Litigation Technology Service Center to access the LIS?  *See* Dkt. 55 at 2.

- Did Ms. Holliman add Mr. Schenk, Mr. Leach, and Mr. Bostic to the email thread on October 4, 2018 on her own initiative?  Ex. 8 (US1-001841) at 1.  Did one or more prosecutors check with Ms. Holliman about the status of the LIS extraction, or otherwise prompt her to add them to the email thread?  If yes, what did they say to Ms. Holliman?

- According to produced material, Ms. Holliman planned to be out of the office from October 5, 2018 to October 19, 2018.  Ex. 8 (US1-001841) at 1.  During that period, did Mr. Schenk, Mr. Leach, and/or Mr. Bostic communicate with each or any other government personnel concerning the preservation of the LIS?  What did the individuals involved in those communications say?

- What steps (if any) did Mr. Bostic take to "identify" the individual other than Mr. Balwani who, according to Steve O'Neill's email, may know how to access the LIS?  *Compare* Ex. 9 (US1-001857) at 1, *with* Dkt. 732-2  ¶ 48 (Oct. 29, 2020 *Brady* Letter).

- Why did Ms. Holliman tell Ms. Peirce on October 30, 2018 that the prosecution would seek production of the LIS from the "defense" in a "standard way," when Assignee counsel had told prosecutors on October 15 that the Assignee did not "have the code"?  *Compare* Ex. 4 (US1-001847), *with* Ex. 9 (US1-001857) at 1.  Were there discussions between October 15 and October 30 that indicated to the government that the Assignee could, in fact, produce the LIS in a standard way?  Did the government contact the Assignee after October 30 seeking production of the LIS in this manner?

- Why did the prosecution team not notify Ms. Holmes by "4/15" of its inability to access the LIS?  Ex. 11 (US1-001846) at 2.

- Why did the government not produce a copy of the LIS to the defense until June 26, 2020?

## II.    The Government Emails Would Warrant a New Trial Even If They Were Not *Brady/Giglio* Material.

Even if the Court concluded that the government was not required to produce this exculpatory evidence under *Brady* and *Giglio*, the new evidence would nonetheless warrant a new trial.  When a defendant obtains newly discovered evidence that the government had no constitutional obligation to disclose, a new trial is warranted on the following conditions:

> (1) the evidence is newly discovered; (2) the defendant was diligent in seeking in the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE
CR-18-00258 EJD

13

*See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005).  Each condition is satisfied here.

*First*, the documents were produced to Ms. Holmes after trial.  *See supra* pp. 3-4.

*Second*, Ms. Holmes diligently sought to obtain this evidence through correspondence and motion practice.  *See supra* pp. 1-3.

*Third*, the emails were not cumulative, because they are not additional evidence to that which was presented at trial as to a fact.  The emails constituted admissible evidence, identified the specific "government attorneys" involved in the events of fall 2018 relating to the loss of the LIS, and revealed information (beyond what was contained in the *Brady* letter) relating to the government's failure to preserve the LIS.

Nor were they "merely impeaching."  To begin, the emails are admissible evidence affirmatively proving the poor quality of the government's investigation.  *See supra* pp. 5-6.  Separately, the emails affirmatively explain why the government did not present the jury with actual data, why the government's accuracy-and-reliability case is unreliable, and why Ms. Holmes was unable to confront witnesses with actual data.  None of those purposes are "impeachment."

*Fourth*, for the reasons previously discussed, this evidence is material.  The evidence is material under Rule 16, as "'the information [Ms. Holmes seeks] would have helped' [her] prepare a defense." *United States v. Hernandez-Mesa*, 720 F.3d 760, 768 (9th Cir. 2013) ("Materiality is a low threshold. . . . Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" (quoting *Doe*, 705 F.3d at 1151)).  Here, there is no question that these emails would have informed Ms. Holmes' decision whether or not to put at issue the loss of the LIS.  *See supra* pp. 6, 11.

*Fifth*, it is probable that the jury would acquit Ms. Holmes if it knew about the prosecutors' role in the loss of the central body of evidence in this case, or were Ms. Holmes' motions to suppress and strike granted.  The emails show not only that the prosecutors conducted a sloppy and incomplete investigation, but that they knowingly disregarded recognized options for potentially preserving the LIS, and denied Ms. Holmes the evidence needed to confront the allegations against her.  *See supra* pp. 5-11.

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE RELATING TO LIS DATABASE
CR-18-00258 EJD

14

1    This failure would affect the jury's perception of the government's presentation and the prosecutors'

2    motives writ large.  *See supra* pp. 7-11.  Lastly, as mentioned, the emails require the suppression of

3    critical evidence in this case, on which the government relied for its allegation that Ms. Holmes made

4    false statements concerning the accuracy and reliability of Theranos technology.  *See supra* p. 11.

5                                              **CONCLUSION**

6            For the foregoing reasons, the Court should grant Ms. Holmes' Motion, conduct and evidentiary

7    hearing, and order a new trial.

8

9    DATED:  September 7, 2022                          Respectfully submitted,

10                                                       /s/ Amy Mason Saharia
                                                          KEVIN DOWNEY
11                                                        LANCE WADE
                                                          AMY MASON SAHARIA
12                                                        KATHERINE TREFZ
                                                          Attorneys for Elizabeth Holmes
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
     RELATING TO LIS DATABASE
     CR-18-00258 EJD
                                                    15

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on September 7, 2022 a copy of this filing was delivered via ECF on all

3

counsel of record.

4

5

/s/ Amy Mason Saharia

AMY MASON SAHARIA

6

Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE
RELATING TO LIS DATABASE
CR-18-00258 EJD