# Exhibit 5

LAW OFFICES
WILLIAMS & CONNOLLY LLP

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

LANCE A. WADE
(202) 434-5300
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 5, 2022

<u>Via Email</u>

Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Mr. John C. Bostic, Esquire
Ms. Kelly I. Volkar, Esquire
Ms. Amani S. Floyd, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

Re: <u>*United States v. Holmes*, 18-cr-158 (N.D. Cal.)</u>

Dear Counsel:

In light of the government's June 2, 2022 production, Ms. Holmes has grave concerns about the government's compliance with *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.

Ms. Holmes has long maintained that she is constitutionally entitled to all the documents underlying the government's October 29, 2020 *Brady* Letter ("*Brady* Letter"). *See* Ms. Holmes' Mot. to Suppress, ECF No. 810 at 8 n. 13 (seeking evidence under *Brady*, *Giglio*, and Rule 16); Ms. Holmes' Reply in Support of Mot. to Suppress, ECF 850 at 14-15 (same); ECF Nos. 811-2, 811-4, Exs. 2, 4, L. Wade Decl. in Support of Ms. Holmes' Mot. to Suppress (cataloguing repeated requests by defense for documents underlying *Brady* Letter). The government refused to produce these materials prior to or during Ms. Holmes' trial, and only produced some of them when ordered by the Court to do so in a subsequent trial. The government's recent production makes clear that there is additional, currently withheld *Brady*/*Giglio* material to which Ms. Holmes is entitled.

**WILLIAMS & CONNOLLY**LLP®
L. Wade to J. Schenk et al.
July 5, 2022
Page 2

The government's recent production raises or renews (among others) the following questions:

1. What happened in the October 2018 meeting between Ms. Holliman and "the AUSAs", in which the government decided to pursue some leads and not others?[1] The government has never produced emails, notes, or memoranda relating to that meeting. Nor has the government produced any summaries of participants' recollections of the meeting. All that information is *Brady* material.

2. At that October 2018 meeting, "the AUSAs" and Ms. Holliman made the decision not to ask Theranos if "they'[d] consider handing over their physical SQL server [so] we [i.e., government expert support staff] can set it up in a workroom." US1-001847 at 2. According to expert testimony in Mr. Balwani's trial, that option would have preserved the LIS. *See United States v. Balwani*, 18-cr-258-2, 6/9/2022 Tr. 6736:13-25, 6737:17-6738:12, 6746:23-6747:7, 6820:24-6821:18 ("Q. Okay. And this option, would that have worked? A. This would have worked."), 6822:25-6823:11 (R. Sonnier). Why did the government not seek this "[p]ossible [r]oute[] [f]orward" to preserving the LIS? US1-001847 at 2.

3. Why did the *Brady* Letter fail to name Mr. Schenk, Mr. Leach, and Mr. Bostic? Furthermore, why did the letter describe them as "attorneys for the government" and not as "members of the prosecution team"?

4. Why are there no examples of Mr. Schenk, Mr. Leach, or Mr. Bostic responding to email correspondence regarding the preservation of the LIS? *See, e.g.*, US1-001847 at 1-2 (10/5/2018 email re: "Possible Routes Forward"). Please confirm that no such emails exist; if no such email responses exist, that fact is *Brady* information. If such emails exist, please produce them or explain why they have not been produced. Additionally, please produce any withheld materials (whether or not memorialized in writing) concerning communications among members of the prosecution team and/or Ms. Holliman relating to the preservation of the LIS in fall 2018 and thereafter.

5. Did Ms. Peirce forward the hard drive to IT, as forecast in Ms. Holliman's September 12, 2018 email? US1-001841 at 3. If so, when did that occur, and what steps were taken by IT personnel thereafter? Please answer these questions, and produce any additional email correspondence involving Ms.

---

[1] US1-001847 ("I had a meeting with the AUSAs on the case regarding our options and we all decided to do the following ….").

Holliman, Ms. Peirce, and/or any other member of the IT or litigation support staff relating to the preservation of the LIS.

6. Why did the government not inform the Court of its difficulty in accessing the LIS in fall 2018, despite Ms. Holliman's email referring to the "need to let the Judge know the status of all discovery" at an upcoming status conference? US1-001841 at 1.

7. Why did the government not inform the defense of its difficulty in accessing the LIS in connection with the joint status report filed on October 12, 2018? As you will recall, the parties submitted a joint status report detailing some of the logistical issues associated with the government's production, including the need to use a special Department of Justice Litigation Technology Service Center (LTSC) in South Carolina in order to process the productions. Joint Status Memorandum, ECF No. 55 at 2. The government wrote a first draft of that submission. The government did not inform the Court or the defense of the status of accessing the LIS in that submission, or at the October 15, 2018 status conference, *see* 10/15/18 Minute Order, ECF No. 57 (noting appearance of Mr. Schenk, Mr. Leach, Mr. Bostic).

8. Did "the AUSAs" investigate using the Department of Justice LTSC to access the LIS, given that the government was already using that center to process other discovery materials in this case? ECF No. 55 at 2.

9. Did Ms. Holliman add Mr. Schenk, Mr. Leach, and Mr. Bostic to the email thread on October 4, 2018 on her own initiative? US1-001841 at 1. Did one or more members of the prosecution team check with Ms. Holliman about the status of the LIS extraction, or otherwise prompt her to add them to the email thread? If one or more members of the prosecution team did check in on the status of the LIS extraction, what did they say to Ms. Holliman?

10. According to produced material, Ms. Holliman planned to be out of the office from October 5, 2018 to October 19, 2018. US1-001841 at 1. During those two weeks, did Mr. Schenk, Mr. Leach, and/or Mr. Bostic communicate with each or any other government personnel concerning the preservation of the LIS? What did the individuals involved in those communications say?

11. Did Steve O'Neill tell Mr. Bostic on October 15, 2018 there was someone other than Mr. Balwani who knew how to access the LIS—even if Mr. O'Neill could not "identify" the person? If so, what steps did Mr. Bostic take to "identify" this individual? *Compare* US1-001857 at 1 *with* 10/29/2020 *Brady* Letter, ¶ 48. And did Mr. Bostic contact counsel for Mr. Balwani?

WILLIAMS & CONNOLLY LLP
L. Wade to J. Schenk et al.
July 5, 2022
Page 4

12. Why did Ms. Holliman tell Ms. Peirce on October 30, 2018 that the prosecution would seek production of the LIS from the "defense" (presumably, Ms. Holliman meant from "the Assignee") in a "standard way," when counsel for the Assignee had told members of the prosecution team on October 15 that the Assignee did not "have the code" for the LIS? *Compare* US1-001847 *with* US1-001857 at 1. Were there discussions between October 15 and October 30 that indicated to the government that the Assignee could, in fact, produce the LIS in a standard way? Did the government reach back out to the Assignee after October 30 seeking the production of the LIS in this manner?

13. Why did the prosecution team not notify Ms. Holmes by "4/15" of its inability to access the LIS, if, as Mr. Leach stated by email, it was "important to have everything out" by that date? US1-001846 at 2. And does "4/15" refer to April 15, 2019?

14. Given the apparent importance of "4/15", why did the government not produce a copy of the LIS database to the defense until summer 2020?

The answers to these questions (and all related documents) constitute currently withheld *Brady*/*Giglio* information, to which Ms. Holmes is entitled.[2] Please produce that information immediately.

Sincerely,

Lance A. Wade

---

[2] The government's June 2, 2022 production also appears to have omitted the exhibits associated with the interview of Mike Wei. Please produce those exhibits.