1   STEPHANIE M. HINDS (CABN 154284)
United States Attorney

2

THOMAS S. COLTHURST (CABN 99493)
3   Chief, Criminal Division

4   JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
5   ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
6   Assistant United States Attorneys

7        150 Almaden Boulevard, Suite 900
San Jose, California 95113
8        Telephone: (408) 535-5061
Fax: (408) 535-5066
9        Kelly.Volkar@usdoj.gov

10  Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14  UNITED STATES OF AMERICA,            )   Case No. 18-CR-00258 EJD
                                         )
15          Plaintiff,                   )   UNITED STATES' OPPOSITION TO
                                         )   DEFENDANT ELIZABETH HOLMES' MOTION
16     v.                                )   FOR NEW TRIAL PURSUANT TO FEDERAL
                                         )   RULE OF CRIMINAL PROCEDURE 33 BASED
17  ELIZABETH HOLMES,                    )   ON GOVERNMENT ARGUMENTS IN CO-
                                         )   DEFENDANT BALWANI'S TRIAL (ECF NO.
18          Defendant.                   )   1576)
                                         )
19                                       )   Date:   October 3, 2022
                                         )   Time:   1:30 p.m.
20                                       )   Court:  Hon. Edward J. Davila
                                         )
21  _____     )

22

23

24

25

26

27

28

TABLE OF CONTENTS

INTRODUCTION………………………………………………………………………………...1

PROCEDURAL BACKGROUND………………………………………………………………1

LEGAL STANDARD…………………………………………………………………………..2

ARGUMENT…………………………………………………………………………………...3

    A. Defendant's Rule 33 Motion re: Government Argument in Balwani Trial Fails to Meet Her Burden Under All of the Requisite Five Factors……………………………………………...3

       1. The Defendants' Relationship Status Is Not New Evidence……………………………...4

       2. Defendant Was Not Diligent…………………………………………………………8

       3. The Defendants' Relative "Influence" Over One Another Is Not Material, and Government Arguments to That Effect Are Even Less So………………………………..9

       4. Defendant's Rule 33 Motion re: Government Argument in Balwani Trial Identifies Cumulative and Impeachment Evidence………………………………………………...10

       5. The Purported New Evidence Would Not Result in an Acquittal………………....…..13

    B. Any Variance Between the Government's Arguments Is Harmless…………………………16

    C. Defendant's New Trial Claims Are Not Based on Newly Discovered Evidence and Thus Are Untimely…………………………………………………………………………………...16

CONCLUSION……………………………………………………………………………...17

# TABLE OF AUTHORITIES

Cases

*Eberhart v. United States*,
   546 U.S. 12 (2005)...................................................................................................... 17

*Fort Bend County, Texas v. Davis*,
   139 S. Ct. 1843 (2019)................................................................................................. 17

*Freund v. Nycomed Amersham*,
   347 F.3d 752 (9th Cir. 2003) ........................................................................................ 2

*Herring v. New York*,
   422 U.S. 853 (1975)..................................................................................................... 12

*United States v. Bakshinian*,
   65 F. Supp. 2d 1104 (C.D. Cal. 1999) .................................................................. 11, 12

*United States v. Caballero*,
   745 F. App'x 32 (9th Cir. 2018) ............................................................................. 5, 12

*United States v. Cimera*,
   459 F.3d 452 (3d Cir. 2006)........................................................................................... 2

*United States v. Cohen*,
   685 F. App'x 609 (9th Cir. 2017) ................................................................................ 10

*United States v. DiPaolo*,
   835 F.2d 46 (2d Cir. 1987)............................................................................................. 3

*United States v. George*,
   420 F.3d 991 (9th Cir. 2005) ................................................................................. 10, 14

*United States v. Gray*,
   876 F.2d 1411 (9th Cir. 1989) ....................................................................................... 7

*United States v. Halali*, No. 14-CR-627-SI, 2017 WL 3232566 (N.D. Cal. July 28, 2017), *aff'd*,
   950 F.3d 596 (9th Cir. 2020) ......................................................................................... 2

*United States v. Hanoum*,
   33 F.3d 1128 (9th Cir. 1994) ................................................................................. 16, 17

*United States v. Harrington*,
   410 F.3d 598 (9th Cir. 2005) ................................................................................... 3, 11

*United States v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009) (*en banc*) ........................................................... 5, 7, 11

*United States v. Jinian*, No. 09-CR-1103-JSW, 2011 WL 5056978 (N.D. Cal. Oct. 24, 2011), *aff'd*,
    725 F.3d 954 (9th Cir. 2013) ......................................................................................... 2

*United States v. Kenny*,
    645 F.2d 1323 (9th Cir. 1981) ................................................................................. 9, 14

*United States v. King*,
    660 F.3d 1071 (9th Cir. 2011) .......................................................................................... 3

*United States v. Lockett*,
    919 F.2d 585 (9th Cir. 1990) ................................................................................... 5, 12

*United States v. Parker*,
    903 F.2d 91 (2d Cir. 1990) ............................................................................................. 10

*United States v. Pimentel*,
    654 F.2d 538 (9th Cir. 1981) ........................................................................................... 2

*United States v. Prantil*,
    764 F.2d 548 (9th Cir. 1985) ......................................................................................... 12

*United States v. Reyes-Alvarado*,
    963 F.2d 1184 (9th Cir. 1992) ...................................................................................... 12

*United States v. Showalter*,
    569 F.3d 1150 (9th Cir. 2009) .................................................................................... 2, 5

*United States v. Smith*,
    62 F.3d 641 (4th Cir. 1995) ........................................................................................... 10

*United States v. Steel*,
    759 F.2d 706 (9th Cir. 1985) ........................................................................................... 3

*United States v. Tamez*,
    44 F. App'x 790 (9th Cir. 2002) ...................................................................................... 5

*United States v. Tucker*,
    641 F.3d 1110 (9th Cir. 2011) ......................................................................................... 7

*United States v. Vrieling*,
    577 F. App'x 716 (9th Cir. 2014) ............................................................................ 10, 16

*United States v. Waggoner*,
    339 F.3d 915 (9th Cir. 2003) ......................................................................................... 13

*United States v. Weber*,
    721 F.2d 266 (9th Cir. 1983) ......................................................................................... 10

## Statutes

18 U.S.C. § 1343 ........................................................................................................ 1

18 U.S.C. § 1349 ........................................................................................................ 1

## Rules

Fed. R. Crim. P. 12.2 ................................................................................................ 9

Fed. R. Crim. P. 29 ................................................................................................... 1

Fed. R. Crim. P. 33 ........................................................................................... 1, 2, 16

Fed. R. Crim. P. 52 .............................................................................................. 3, 16

Fed. R. Evid. 401 .................................................................................................... 11

Fed. R. Evid. 403 ............................................................................................... 11, 12

Fed. R. Evid. 601 ..................................................................................................... 6

Fed. R. Evid. 801 .................................................................................................... 10

**INTRODUCTION**

The Court should deny Defendant Elizabeth Holmes' multiple untimely motions for a new trial, pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"), because none of her motions cites any new, material evidence, nor would the subject of any of the motions alter the great weight of evidence presented against her and—consequently—the jury's verdict. *See* ECF No. 1574 ("Rule 33 Motion re: Dr. Rosendorff"); ECF No. 1576 ("Rule 33 Motion re: Government Argument in Balwani Trial"); ECF No. 1577 ("Rule 33 Motion re: LIS-Related Documents"). Bereft of any colorable legal or factual arguments to raise in challenging her conviction on Counts 1, 6, 7, and 8 for wire fraud and conspiracy to commit wire fraud against investors in Theranos, Defendant Holmes has chosen to belatedly assert claims for a new trial—based on facts long known to her—mere weeks before her sentencing date. The Court should reject Defendant's manufactured urgency, reject any ploy to delay her inevitable sentencing, deny Defendant's request for unnecessary evidentiary hearings, and deny her eleventh-hour barrage of Rule 33 motions.

**PROCEDURAL BACKGROUND**

On January 3, 2022, after a nearly four-month trial, a jury unanimously found Defendant Holmes guilty of four counts, Counts 1, 6, 7, and 8 of the Third Superseding Indictment ("TSI") (ECF No. 469), charging conspiracy to commit wire fraud and wire fraud against investors in Theranos, in violation of 18 U.S.C. §§ 1343, 1349. ECF No. 1235; *see also* ECF No. 1395 at 4–5 (providing more detailed background of trial and post-trial dates). Over the course of nearly four months of trial, the government presented testimony from 29 witnesses during its case-in-chief, Defendant chose to testify and call two additional witnesses in her case-in-chief, and the Court admitted over 900 exhibits. *See generally United States v. Holmes*, ECF Nos. 1256–1306, 1324. On January 12, 2022, the parties stipulated to, and the Court approved, an extended briefing schedule for Defendant to file post-trial motions. ECF No. 1252. Rather than the 14-day deadline provided for in Rule 33, Defendant had until March 4, 2022, to file such motions. *Id.* However, Defendant elected not to file anything by that extended deadline, and the government subsequently responded to her pending oral motion for acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29"). ECF No. 1395. On July 7, 2022, a separate jury convicted co-Defendant Ramesh "Sunny" Balwani of all twelve counts in the TSI. ECF No. 1507.

On September 1, 2022, the Court held a hearing on Defendant's Rule 29 motion for acquittal and, at the end of the hearing, issued a preliminary order denying the motion, which was followed shortly by a written order denying the motion.  ECF Nos. 1573, 1575; *see also* 09/01/2022 Hearing Transcript ("9/1 Tr.").  More than eight months after the jury's verdict, half a year after the agreed-upon extended deadline for such motions, and mere weeks before her sentencing date, Defendant filed three separate Rule 33 motions.  ECF Nos. 1574, 1576, 1577.  In ECF No. 1574, Defendant points to statements Dr. Adam Rosendorff allegedly made to Defendant's current partner in early August 2022 expressing compassion in light of the consequences Defendant may face as a result of the jury's guilty verdict.  In ECF No. 1576, Defendant claims the government described her and co-Defendant Balwani's relationship, and respective power therein, differently in her trial versus the subsequent severed trial of Balwani, which concluded in early July 2022.  In ECF No. 1577, Defendant points to emails regarding the government's attempt to access the LIS database in 2018 that were produced pursuant to the Court's order (ECF No. 1464) in early June 2022 during co-Defendant Balwani's trial, but contain the same substantive information known to Defendant since at least October 2020.

## LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  A motion for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'"  *United States v. Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009) (quoting *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)).  The district court "enjoys broad discretion with regard to a new trial motion" as it is "most familiar with the context of the trial" and the defendant.  *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003).  Courts in this district have acknowledged, however, that Rule 33 still imposes a high bar requiring the district court to focus on assessing "whether failing to grant a new trial would result in manifest injustice" such as finding that "there is a real concern that an innocent person may have been convicted."  *United States v. Halali*, No. 14-CR-627-SI, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017), *aff'd*, 950 F.3d 596 (9th Cir. 2020); *United States v. Jinian*, No. 09-CR-1103-JSW, 2011 WL 5056978, at *7 (N.D. Cal. Oct. 24, 2011), *aff'd*, 725 F.3d 954 (9th Cir. 2013).  The defendant bears a heavy burden in meeting the requirements to establish a new trial is warranted.  *See, e.g., United States*

v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006).  Furthermore, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded" as harmless error.  Fed. R. Crim. P. 52(a) & advisory committee's note.

To prevail on a motion for a new trial based on alleged newly discovered evidence, a defendant must demonstrate five separate and independent factors:  (1) the evidence must be newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial.  *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (citation omitted).  "This five-prong test is difficult to meet."  *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985); *see also United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987) ("Motions for a new trial based upon newly discovered evidence are granted only with great caution, in *the most extraordinary circumstances*." (internal citations and quotations omitted)).  On appeal, a district court's denial of a request to grant a new trial is reviewed for an abuse of discretion.  *United States v. King*, 660 F.3d 1071, 1076 (9th Cir. 2011).

# ARGUMENT

## A.  Defendant's Rule 33 Motion re: Government Argument in Balwani Trial Fails to Meet Her Burden Under All of the Requisite Five Factors

Defendant Holmes seeks a new trial based on a few lines plucked out of context from the government's rebuttal argument in the trial of her co-Defendant Balwani ("*Balwani* trial").  *Cf.* ECF No. 1576.  The Court should deny Defendant's Rule 33 Motion re: Government Argument in Balwani Trial because she cannot meet her significant burden for any of the five factors required for her to prevail.

Defendant spills a great deal of ink discussing known facts and evidence introduced in both Defendants' trials, such as the difference in age and prior business experience between the Defendants and certain text messages.  Stripping away references to evidence that was admitted at both trials—and thus cannot possibly be "new"—Defendant's challenge hinges entirely on a few sentences in the government's rebuttal argument during the *Balwani* trial.  ECF No. 1576 at 7.  But, when reviewed in context, the government's argument is entirely consistent with Defendants' conviction on the conspiracy count, and the evidence demonstrating that the two worked in tandem, wielded the most power and

1   control within Theranos, communicated constantly, and had the ability to influence one another.  Indeed,

2   the government's statements in rebuttal at the *Balwani* trial that a "close relationship" supported the

3   inference that co-Defendant Balwani had "influence" over Defendant Holmes are not meaningfully

4   different from the government's argument *in the rebuttal at Defendant's trial* that "no one is saying that

5   Mr. Balwani was a good influence[.]"  *Compare* 12/17/21 *Holmes* Trial Transcript ("12/17 Tr.") at

6   9306–9312, *with* 06/24/22 *Balwani* Trial Transcript ("6/24 Tr.") at 7649–7657.  For the same reasons,

7   the so-called "evidence" is cumulative or, at most, an attempt to impeach the government.

8           Furthermore, to the extent arguments made by counsel are properly considered "evidence"

9   (contrary to the Court's repeated instructions to the jury), the government's perception of Defendants'

10  respective mental states is not material to Defendant's intent to deceive and cheat investor-victims.  If

11  she genuinely thought the prosecution's view of co-Defendant Balwani's "influence" over her was

12  relevant and admissible, she could have advocated for him to be tried first rather than remain agnostic to

13  the order of the trials.  But the fact remains that the government has no personal knowledge of

14  Defendants' relationship or respective power therein.  The government could only argue, based on the

15  evidence presented at each trial and reasonable inferences drawn from that evidence, to rebut each

16  respective Defendants' attempt to point to the other as more powerful in the relationship.  And

17  Defendant Holmes testified herself in her trial that co-Defendant Balwani did not force her to make false

18  statements or otherwise control her decision-making as relevant to the fraudulent scheme.  On cross-

19  examination, she admitted that all decisions at Theranos were hers as well as co-Defendant Balwani's

20  and that at times Balwani deferred to her.  In addition to her own testimony, overwhelming evidence

21  was admitted before the jury showing Defendants' close collaboration on topics relevant to the charges.

22  *See*, *e.g.*, ECF No. 1395.  Thus, Defendant cannot show that it is probable she would be acquitted in a

23  new trial even if she could meet any of the other factors.

24          **1.      The Defendants' Relationship Status Is Not New Evidence**

25          As a threshold matter, the Court should deny Defendant's Rule 33 Motion re: Government

26  Argument in Balwani Trial because it does not refer to any "new" information.  The Ninth Circuit has

27  repeatedly upheld denials of Rule 33 motions based on newly discovered evidence where the substantive

28  information—even if contained in a new or different form post-trial—was known before the jury

1   reached a verdict.  *See*, *e.g.*, *United States v. Hinkson*, 585 F.3d 1247, 1264–65 (9th Cir. 2009)

2   (*en banc*); *see also United States v. Caballero*, 745 F. App'x 32, 33 (9th Cir. 2018).  Indeed, the Ninth

3   Circuit has long held that "a court must exercise great caution in considering evidence to be 'newly

4   discovered' when it existed all along and was unavailable" solely because defendant did not or could not

5   call the relevant witness to testify to the facts at trial.  *United States v. Lockett*, 919 F.2d 585, 591–92

6   (9th Cir. 1990) (rejecting a defendant's claim for a new trial based on "new" evidence where a co-

7   defendant who chose not to testify at trial provided a declaration after her trial asserting she would

8   testify favorably to defendant if he were retried); *see also Showalter*, 569 F.3d at 1154–55 (affirming

9   district court's denial of defendant's request to withdraw guilty plea because witness declarations were

10   not "new" evidence as the defendant could have compelled the witnesses to testify on his behalf at trial).

11   As a result, the Ninth Circuit has upheld district court denials of Rule 33 motions where the evidence

12   asserted was not, in fact, "newly discovered" as required.  *See*, *e.g.*, *Hinkson*, 585 F.3d at 1257–58,

13   1264–65; *United States v. Tamez*, 44 F. App'x 790, 791 (9th Cir. 2002).

14        Here, Defendant knew all of the relevant information before the jury reached a verdict in her

15   case.  Defendant knew that her co-Defendant Balwani was almost twice her age when she met him and

16   had more business experience.  *See*, *e.g.*, ECF No. 600 (Exhibit 4) ¶ 56 (hereinafter "Dr. Renee Binder's

17   Rebuttal Report"); ECF No. 600 (Exhibit 2) p.11 (hereinafter "Dr. Mindy Mechanic's Report").  She

18   testified to this information.  11/29/21 *Holmes* Trial Transcript ("11/29 Tr.") at 7847.  Defendant knew

19   that co-Defendant Balwani was an important mentor who often gave her advice, and that sometimes he

20   deferred to her and other times she deferred to him.  *See*, *e.g.*, 11/29 Tr. at 7846–7847 (testifying that co-

21   Defendant Balwani did not always defer to her); ECF No. 1163 at 6; ECF No. 1175; Dr. Renee Binder's

22   Rebuttal Report ¶¶ 97, 98, 101; Dr. Mindy Mechanic's Report pp.11, 15.  Indeed, Defendant testified

23   that Balwani would defer to her in certain aspects of the business such as the relationship with Safeway,

24   the military relationships, Theranos' inventions, and marketing strategy, among others.  11/30/21

25   *Holmes* Trial Transcript ("11/30 Tr.") at 8094–8100.  By contrast, Defendant Holmes described co-

26   Defendant Balwani as the ultimate decision-maker with respect to the company's finances, operations in

27   the CLIA lab, and relationship with Walgreens.  *See*, *e.g.*, 11/29 Tr. at 7795, 7832; 11/30 Tr. at 8096;

28   ECF No. 1163 at 6 (Defendant seeking to admit prior statements of co-Defendant Balwani taking

1    ownership over certain aspects of the business and citing corroborating testimony from her trial in

2    support); ECF No. 1175; Dr. Renee Binder's Rebuttal Report ¶ 97.  Defendant Holmes was the founder

3    and Chief Executive Officer of Theranos and she testified she had the ability to fire co-Defendant

4    Balwani at any time.  11/30 Tr. at 8093–8094.  This is consistent with how the government described the

5    co-conspirators' division of responsibilities in closing arguments.  12/16/21 *Holmes* Trial Transcript

6    ("12/16 Tr.") at 8945–8953, 9007–9009; 12/17 Tr. at 9306–9312.

7            While discussed throughout her motion, evidence regarding the age difference and experience

8    level as well as certain text messages exchanged between Defendants—admitted by the Court at both

9    trials—is not "new."  Defendant emphasizes that she sought admission of the evidence at her trial while

10   the government sought admission of the same or similar evidence at the *Balwani* trial (ECF No. 1576 at

11   5–8), but Defendant has not cited a case granting a new trial under Rule 33 based on "newly discovered

12   evidence" when a different party admits that same evidence in severed trials—and the government has

13   found no such precedent.  The Court should reject any invitation to be the first court to do so.

14           Defendant attempts to avoid the fact that she has known the underlying information for years by

15   focusing on selective, cherry-picked statements in the government's rebuttal argument at the *Balwani*

16   trial (labeled "the government's admissions") and characterizing it as "new" because the government

17   said it.  *See* ECF No. 1576 at 8.  But the Court instructed the respective juries in each trial that

18   "arguments by the lawyers are not evidence[,]" that "[t]he lawyers are not witnesses[,]" and that "what

19   the lawyers have said in their opening statements, closing arguments, and at other times is intended to

20   help you interpret the evidence, but is not evidence."  ECF Nos. 1206 at 8, 1485 at 8.  This well-

21   established principle stems from the fact that the lawyers in a trial do not have any personal knowledge

22   of the events that occurred (*see* Fed. R. Evid. 601), and thus only serve to help the jury interpret the

23   underlying evidence admitted at trial.  So too here.  The government has no personal knowledge of the

24   underlying facts in Defendants' prior relationship; and it would be absurd to ask the Court to allow a

25   prosecutor to testify as a witness to his or her views of a criminal defendant's mental state.  Not

26   surprisingly, Defendant fails to cite a single case where a court granted a new trial based on a

27   prosecutor's argument in a subsequent trial.

28

1      Regardless, the government has consistently asserted that both Defendants influenced or deferred

2  to each other and had respective roles in the conspiracy to defraud investors.  *See*, *e.g.*, *Hinkson*, 585

3  F.3d at 1257–58, 1264–65 (affirming denial of motion for new trial where *information* was not new,

4  only the format in which it was presented).  For example, Defendant's motion focuses on the

5  government's argument in rebuttal during the *Balwani* trial that the jury could "infer that [Balwani's]

6  close relationship with Ms. Holmes would have given him a lot of influence over her" (ECF No. 1576 at

7  4, 7), even though the government made nearly identical arguments in rebuttal during Defendant's trial.

8  Specifically, the government argued during Defendant's trial that "Holmes admitted [in her testimony]

9  that there were aspects of the business relationship where Mr. Balwani deferred to her" but also that

10  "**no one is saying that Mr. Balwani was a good influence** in this case" given that "[h]e's the

11  coconspirator [and] was a part of the scheme to defraud."  12/17 Tr. at 9309–9310 (emphasis added).

12      Furthermore, "it is fair advocacy for the prosecution to advance an argument in rebuttal to which

13  the defendant has opened the door."  *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989)

14  (internal quotation omitted); *see also United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011)

15  ("Prosecutors can argue reasonable inferences based on the record and have considerable leeway to

16  strike hard blows based on the evidence and all reasonable inferences from the evidence[.]" (internal

17  citations and quotations omitted)).  In Defendant's trial, she testified that she was a victim of abuse by

18  co-Defendant Balwani, and the government was permitted to respond in rebuttal by highlighting

19  evidence showing that Balwani also deferred to her at times as well as the lack of connection that her

20  testimony had to the charges at issue.  12/17 Tr. at 9306–9312.  By contrast, in co-Defendant Balwani's

21  trial, he claimed in closing argument that he "bought into [Defendant's] vision [ ] with his time [and] his

22  own money" because he was struck by Defendant's "charisma, her ability to hold the room, her vision"

23  and "[e]veryone was listening to Elizabeth Holmes" due in part to her "commanding voice."  06/22/22

24  *Balwani* Trial Transcript ("6/22 Tr.") at 7239–7244.  It was fair advocacy for the government to argue in

25  rebuttal, based on the evidence introduced at trial, that co-Defendant Balwani was not victimized by

26  Defendant Holmes but rather made decisions at Theranos, too, which demonstrated his criminal intent.

27  6/24 Tr. at 7649–7657; *see also* 06/21/22 *Balwani* Trial Transcript ("6/21 Tr.") at 7083–7086.

28

1   Each respective Defendant had an incentive to claim the other was in control of decision-making

2   and attempt to distance themselves from the fraudulent scheme; and the government was permitted to

3   rebut such a claim by emphasizing evidence showing that Defendants constantly made decisions in

4   tandem and deferred to each other in certain areas of the business.  Even if the Defendants had been tried

5   jointly, it would be incumbent on the government to rebut their respective arguments and highlight the

6   respective roles of each individual Defendant within the scheme.  Indeed, immediately before discussing

7   Balwani's authority within Theranos, the government in rebuttal during his trial discussed how

8   Defendant Holmes and co-Defendant Balwani "collaborated together on many, if not all, aspects of

9   running this company," that Theranos "was an organization run and controlled by two people who

10  wielded that power together," "that they both had a great deal of authority in the company," and thus

11  "they were partners in every sense of the word."  6/24 Tr. at 7649–7652.  Arguing that one Defendant

12  had influence over the other in certain respects does not exculpate the other Defendant—or undercut the

13  government's argument that Defendants controlled Theranos equally and made significant decisions

14  related to the scheme to defraud in consultation with each other.  Rather, it shows the very coordination

15  that partly gives rise to the conspiracy of which both Defendants were convicted.

16  The Court should thus deny Defendant's Rule 33 Motion re: Government Argument in Balwani

17  Trial because it does not identify any "new" information or "evidence" as contemplated by Rule 33.

### 2.      Defendant Was Not Diligent

19  Defendant's motion also fails the second prong of the five-factor test.  Defendant asserts she was

20  diligent because she could not have obtained the "evidence" that is the government's admissions in co-

21  Defendant Balwani's trial until after closing arguments in that trial.  ECF No. 1576 at 8.  But Defendant

22  could have insisted that she be tried second, which would have aligned with her co-Defendant's request

23  to be tried first.  *See id.* at 5.  She did not.  Instead, she remained agnostic and took no position as to the

24  relative order of the severed trials.  *See generally* 03/20/2020 Hearing Transcript.  Members of the

25  prosecution team were on Defendant's witness list (*see* ECF No. 1003), Defendant should have

26  exercised diligence by asserting that co-Defendant Balwani's trial should proceed first upon severance

27  and attempted to call members of the government team to testify as witnesses if she truly thought these

28  admissions important to the outcome of her trial.

**3.     The Defendants' Relative "Influence" Over One Another Is Not Material, and Government Arguments to That Effect Are Even Less So**

Defendant fails to meet the materiality factor, as well.  Defendant claims that the government's statements in rebuttal argument during the *Balwani* trial that he had influence over Defendant Holmes and that she would accept his input would be relevant to support her testimony that co-Defendant Balwani abused her and thus demonstrate Defendants could not be considered coequals in decision-making at Theranos.  ECF No. 1576 at 9; *see also* ECF No. 1467 at 9 n.4 (asserting that Defendant's testimony alleging that Balwani abused her supports that they were not coequals in the company).  Specifically, Defendant asserts that these "government admissions"—presumably isolated from the immediately preceding statements referring to Defendants as "partners in every sense" (6/24 Tr. at 7649–7652)—are relevant to her knowledge and intent as well as whether Defendants entered into a conspiracy.  ECF No. 1576 at 9.  But Defendant's own testimony undercuts this argument.  In response to questions by her own counsel, Defendant testified that Balwani did not force her to make any statements, did not control her interactions with investors (such as Walgreens and Safeway) or Theranos' Board of Directors, and that she did not know "what impact, if any, [her] personal relationship with Mr. Balwani [had] on [her] work at Theranos[.]"  11/29 Tr. at 7878–7879; *see also* 11/30 Tr. at 8063–8064 (Defendant testifying all decisions at Theranos were hers as well as co-Defendant Balwani's).  There is no basis for Defendant to argue that non-evidentiary statements by the prosecution team (who lack personal knowledge) about Balwani's influence over her would hold more sway over the jury than her own testimony on that point.  *See United States v. Kenny*, 645 F.2d 1323, 1344 (9th Cir. 1981) (rejecting claim of new evidence in light of defendant's testimony).  Defendant elected not to pursue her noticed Federal Rule of Criminal Procedure 12.2 defense, could not herself describe if there were any legal significance of the alleged abuse on the criminal charges against her, and thus Defendant's testimony on this topic is simply irrelevant to her convictions.  Tellingly, her counsel did not even reference Defendant's testimony regarding the alleged abuse by Balwani—including whether he exerted control or influence over her as a result—during closing arguments, and it should thus similarly play no role in the Court's analysis here.

1    Moreover, Defendant has repeatedly argued that her romantic relationship with co-Defendant

2    Balwani, alone, is insufficient to demonstrate a conspiracy.  *See*, *e.g.*, ECF No. 1467 at 9 & n.4.  The

3    jury was instructed as much.  ECF No. 1206 at 17.  The government has consistently argued that

4    Defendants' romantic relationship is one of many factors demonstrating the existence of a conspiracy

5    and scheme to defraud.  *See*, *e.g.*, 9/1 Tr. at 23:2–24:4.  It is thus highly unlikely that government

6    statements that one romantic partner could influence or provide meaningful input to the other would be

7    at all relevant to the jury in evaluating one factor within a larger mosaic demonstrating the existence of a

8    conspiracy.  *See United States v. George*, 420 F.3d 991, 1001 (9th Cir. 2005) (holding newly discovered

9    evidence was not material where it established, at most, "a collateral point" otherwise developed at

10   trial); *cf.* ECF No. 1575 at 3–4 (finding Defendants' relationship to be an additional factor providing

11   support for the conspiracy conviction—not the sole support).  Therefore, the Court should deny

12   Defendant's motion because the "government admissions" are immaterial to an element of the crimes

13   charged.  *See United States v. Vrieling*, 577 F. App'x 716, 717 (9th Cir. 2014).

14
            **4.    Defendant's Rule 33 Motion re: Government Argument in Balwani Trial**
15          **Identifies Cumulative and Impeachment Evidence**

16          The Court should also deny Defendant's Rule 33 Motion re: Government Argument in Balwani

17   Trial because it relates to inadmissible evidence that, at most, would be cumulative or used for

18   impeachment purposes if Defendant were to be granted a new trial.  Defendant must also be able to

19   show that the government's statements in co-Defendant Balwani's trial would be admissible.  *See*, *e.g.*,

20   *United States v. Cohen*, 685 F. App'x 609, 610 (9th Cir. 2017) (holding "no abuse of discretion in the

21   district court's finding that [defendant] failed to produce any *admissible* newly discovered evidence"

22   (emphasis added)).[1]  For admissibility, it is at best unclear whether statements made by the government

23   in a prior trial's closing argument would be admissible non-hearsay under Federal Rule of Evidence

24   801(d)(2), given the circuits who have addressed the issue are split and the Ninth Circuit has not

25

26   [1] *See also United States v. Smith*, 62 F.3d 641, 649 (4th Cir. 1995) (language of Rule 33 requires
     "evidence that would be admissible were a new trial to be granted"); *United States v. Parker*, 903 F.2d
27   91, 102–03 (2d Cir. 1990) (requirement that newly discovered evidence would produce an acquittal in a
     new trial presupposes that the evidence would be admissible); *United States v. Weber*, 721 F.2d 266, 268
28   (9th Cir. 1983) (defining "newly discovered evidence" as "admissible in court and previously
     unavailable to the defendant").

weighed in. *See*, *e.g.*, ECF No. 1464 at 11–12 (citing several cases that have rejected similar hearsay arguments with respect to seeking to admit *Brady* letters); *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1105–06 (C.D. Cal. 1999) (describing circuit split and siding with courts who held such statements are party admissions). Regardless of whether such statements are non-hearsay, Defendant still has to overcome other admissibility bars such as Federal Rules of Evidence 401 and 403 to meet this factor for seeking a new trial. *See*, *e.g.*, *Hinkson*, 585 F.3d at 1265 (upholding district court's determination that "new" evidence would be inadmissible under Rule 403 balancing test); *Bakshinian*, 65 F. Supp. 2d at 1110. This she cannot do. In *Bakshinian*, cited by Defendant (ECF No. 1576 at 8), the district court considered a defendant's pretrial request to admit government argument made during the already completed, severed trial of a co-defendant. *Id.* at 1104–06. The court held such statements would be non-hearsay (noting there is a circuit split), but reserved ruling on the issue as it was pretrial and the government asserted it would not be presenting inconsistent theories at trial; indeed, the court "note[d] that the admission of a statement by the government in a prior case would raise substantial dangers of confusing the jury and wasting time" which outweighed the probative value. *Id.* at 1110. The court expressed strong reservation that the government's arguments would overcome the admissibility hurdles of Federal Rules of Evidence 401 and 403 unless the government presented inconsistent theories. Here, the government did not argue inconsistent theories and thus the "government admissions" would likely be deemed inadmissible by the Court.

Even if the Court determines the government's statements might be admissible, Defendant is not entitled to a new trial if such evidence is cumulative or merely impeaching. *Harrington*, 410 F.3d at 601. Here, the "evidence" is particularly cumulative given that the government made substantially similar arguments in rebuttal in both cases, including arguing in Defendant's trial that "no one is saying that Mr. Balwani was a good influence[.]" 12/17 Tr. at 9309–9310. Moreover, the probative value Defendant identifies is to add credibility to her testimony and essentially impeach the government's assertion that Defendants were coequals. *See* ECF No. 1576 at 9–10. But that purpose demonstrates both the impeachment and cumulative nature of the "evidence," neither of which warrant a new trial under Rule 33. By definition corroborating evidence is cumulative of evidence already presented during a trial.

1    The cumulative and impeaching nature of the statements are exacerbated by their low probative

2    worth.  Any minimal probative value in having the opposing party corroborate a witness' testimony is

3    substantially outweighed by the confusion it would cause as well as the undue delay and waste of time.

4    Fed. R. Evid. 403; *see Bakshinian*, 65 F. Supp. 2d at 1110.  For example, there was ample evidence

5    admitted at trial through text messages, emails, and witness testimony, demonstrating Defendants'

6    relationship and respective control at Theranos.  *See*, ECF Nos. 1395, 1486 (detailing examples of

7    evidence admitted at trial); *see also* 09/22/21 *Holmes* Trial Transcript at 1555 (General James Mattis

8    testified that Defendant Holmes was in charge for 90% to 100% of Theranos Board of Director

9    meetings); 10/06/21 *Holmes* Trial Transcript at 2980 (Steve Burd testified that Defendant Holmes

10   "owned the room" whenever she was talking).  Defendant had her the opportunity to present facts as

11   favorably to her defense as possible.  *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 858 (1975) ("[I]t has

12   universally been held that counsel for the defense has a right to make a closing summation to the jury,

13   no matter how strong the case for the prosecution may appear to the presiding judge.").  These so-called

14   "government admissions"—without a basis in personal knowledge—would not move the needle.

15        Furthermore, Defendant has not suggested through which witness she would seek to introduce

16   these government admissions, let alone how the government would respond.  Defendant would have to

17   overcome a high burden to call a member of the prosecution team to testify as a witness at trial.  *See*,

18   *e.g.*, *United States v. Prantil*, 764 F.2d 548, 554 (9th Cir. 1985) ("[C]ourts have generally disfavored

19   allowing a participating prosecutor to testify[] at a criminal trial. . . .  This reluctance is understandable

20   particularly when the defendant seeks to call the prosecutor as a witness.").  And Defendant attempted to

21   call her co-Defendant Balwani at her trial (to prove unavailability and seek to admit portions of his prior

22   sworn testimony), but his counsel asserted his Fifth Amendment right to remain silent on his behalf.

23   11/30 Tr. at 8195–8197.  The Ninth Circuit has repeatedly held that witnesses known to a criminal

24   defendant who could have been called at trial to testify do not constitute "newly considered evidence"

25   even if it is a co-defendant seeking to provide favorable testimony once the risk of negative

26   consequences to the co-defendant has been extinguished.  *See, e.g.*, *Caballero*, 745 F. App'x at 33;

27   *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992); *Lockett*, 919 F.2d at 591–92.

28

1    Similarly, in order to avoid misleading the jury, any hypothetical Rule 403 balancing analysis by

2    the Court would have to also account for the government's ability to introduce additional statements

3    giving context to the isolated sentences Defendant has chosen.  For example, the government might seek

4    to admit the immediately preceding argument stating that Defendants "collaborated together on many, if

5    not all, aspects of running this company," "that they both had a great deal of authority in the company,"

6    and thus "they were partners in every sense of the word."  6/24 Tr. at 7649–7652.  To be sure, the

7    government does not believe its argument that Balwani had "influence" over the Defendant is any more

8    admissible than its opinion that Defendant acted willfully and with intent to defraud, but admission of

9    the former would require latitude for the government to demonstrate the latter.

10    In sum, even if Defendant sought to introduce these cumulative "government admissions" to

11    somehow impeach the prosecution team, there are multiple hurdles to their admissibility, and the Court

12    should reject Defendant's request for a new trial on this basis.  *See*, *e.g.*, *United States v. Waggoner*, 339

13    F.3d 915, 919 (9th Cir. 2003) (evidence "was cumulative, impeachment-related, or both" and thus did

14    not warrant a new trial).

15    **5.    The Purported New Evidence Would Not Result in an Acquittal**

16    Defendant's motion fails to meet the final factor for a new trial based on newly discovered

17    evidence, as well.  While Defendant asserts that the "government's admissions" that co-Defendant

18    Balwani had influence over her and provided input would preclude the government from arguing

19    Defendants operated as coequals (ECF No. 1576 at 11), it is perfectly consistent to argue that coequals

20    could substantially influence one another.  As co-conspirators, the government has consistently argued

21    that both Defendants had the ability to influence each other and deferred to one another on certain

22    topics.  Indeed, Defendant Holmes admitted on cross examination that she jointly made decisions at

23    Theranos with co-Defendant Balwani.  *See* 11/30 Tr. at 8063 ("Q.  [ ]He's saying your decisions are his

24    decisions, too. / A.  He's saying that all of the Theranos decisions were his decisions too. / Q.  Okay.

25    And they were your decisions too? / A.  Yes. / Q.  Because you're the CEO? / A.  Exactly.").

26    Throughout nearly four months of trial, the jury heard from more than 30 witnesses and reviewed

27    over 900 admitted exhibits.  The jury had the opportunity to observe Defendant Holmes over the course

28    of seven days as she testified, to hear her story from her perspective, to evaluate her credibility, and to

assess for itself whether the alleged abuse impacted her criminal intent.  *See*, *e.g.*, *Kenny*, 645 F.2d at

1344 (rejecting request for new trial due largely to defendant's non-credible testimony).  The jury had

volumes of text messages and emails between Defendant and Balwani demonstrating their close,

collaborative relationship.  A separate jury heard substantially similar evidence and convicted co-

Defendant Balwani of the same offenses, including both conspiracy counts in the TSI—severely

undercutting her claim that if these admissions were stated in her trial they would lead to an acquittal.

*See* ECF No. 1507.  The evidence against both Defendants is overwhelming and a few lines of argument

by the government taken out of context would not likely lead to an acquittal if Defendant were retried.

Finally, a side-by-side comparison shows that the government has consistently argued both

Defendants exercised decision-making authority at Theranos:

**Government's Opening Statements:**

- *Holmes* Trial:  "Elizabeth Holmes and Sunny Balwani were more than business partners.  They were also romantic partners.  The Defendant and Balwani had been romantically involved for many years before he officially joined Theranos and they were romantically involved after.  The Defendant and Balwani controlled Theranos as equals and made significant decisions in consultation with each other as partners do."  9/8 Tr. at 552–553.

- *Balwani* Trial:  "The evidence will show that they ran the company together.  The Defendant and Holmes controlled Theranos as equals and made significant decisions in consultation with each other as partners.  You will see how they regularly talked to each other.  You will see how closely they collaborated, and you will see how they were partners in everything, including their crimes."  3/22 Tr. at 1041–1042; *see also id.* at 1026, 1038–1039.

**Government's Rebuttal Arguments:**

- *Holmes* Trial:  "Let's talk now about Sunny Balwani.  You heard in Ms. Holmes's testimony about her experience in her relationship with Mr. Balwani.  I wonder if any of you feel like that testimony makes your job more difficult or more complicated?  It's understandable if it does for a couple of reasons:  First, we know that hearing about someone having gone through a painful experience is difficult.  It's difficult for us to sit and listen to someone talk about something painful or hurtful that they have been through.  It's natural to have a reaction to hearing someone talk about something like that.  It's natural to have a strong reaction to something like that.  So that's one way that hearing that testimony might make your job as jurors more difficult.  The second way it might make you feel that it makes your job more complicated is that you might be wondering how Ms. Holmes's claims of abuse affects your analysis of the fraud in this case, or whether it affects the analysis at all.
  . . .
  [Y]ou need to make up your own minds about what happened here, and when all is said and done, you may end up feeling like you're not in a position to make conclusions about exactly what happened between the Defendant and Mr. Balwani.  There is extensive evidence in the

record of the charged fraud in this case.  There is much less evidence about what happened between Ms. Holmes and Mr. Balwani in their personal relationship.  So this is a critical thing to understand.  You do not need to reach a conclusion regarding what happened with Ms. Holmes and Mr. Balwani in order to render your verdict in this case.  It's important to note that there's no evidence here connecting those allegations of abuse with the actual charged conduct.  Even Ms. Holmes herself when she was on the stand didn't make that connection for you.  There's no evidence regarding a link between what Mr. Balwani and Ms. Holmes's relationship was like and the conduct that she's charged with committing. . . .

So the important question then is, what was Mr. Balwani's role in the charged conduct?  How did his involvement relate to the crime that is at issue here?  First of all, it's important to note that the witnesses in this case, from former employees to outsiders who dealt with Theranos, consistently testified that they understood Ms. Holmes was in charge of the company and even had authority over Mr. Balwani.  Ms. Holmes admitted that in her testimony, that there were aspects of the business relationship where Mr. Balwani deferred to her, and specifically she confirmed that Mr. Balwani deferred to her on aspects of inventions and devices at Theranos.  Remember especially that there's no evidence in this case that Mr. Balwani ever expressly ordered Ms. Holmes to be dishonest.  In fact, there are examples cited during the government's closing of instances where Mr. Balwani either cautioned Ms. Holmes away from being dishonest about something, or expressed concern about an untrue statement that she had made.  Now, no one is saying that Mr. Balwani was a good influence in this case.  He's the coconspirator.  He was part of the scheme to defraud.  But the evidence showed that Ms. Holmes did not need encouragement from Mr. Balwani in order to be dishonest and deceptive."  12/17 Tr. at 9306–9312.

- *Balwani* Trial: "Let's talk next about Elizabeth Holmes and her role here.  The defense made some mention of Ms. Holmes in their closing, and the suggestion was that Mr. Balwani would have had the same perspective on Ms. Holmes as everyone else that you heard about in this case; that he would have been impressed by her charisma, her dedication, her intelligence.  And those things may be true to a certain extent.  But you should not believe that Mr. Balwani's perspective on Ms. Holmes was the outsider's perspective.  He would not have been star struck by her.  He knew her very well.  As you know, they were not just business partners, they were also romantic partners.  They collaborated together on many, if not all, aspects of running this company[.]  So they were partners in every sense of the word. . . .

[The defense said] that Mr. Balwani was a very senior officer at Theranos, that the defense wasn't claiming otherwise, and that he was responsible, along with Ms. Holmes, for the operation at Theranos.  That is true, and that is what the evidence has shown.  The evidence has shown that Ms. Holmes and Mr. Balwani were really in their own category of leadership at the company.  Some companies you might imagine are a ladder with people at all different levels of leadership, some companies might be run by a single person.  This was an organization run and controlled by two people who wielded that power together, and that's what the evidence has shown, that's what the documents show, that's what the witnesses have testified to.  Mr. Balwani was with Ms. Holmes at the top of the org chart for the company.  He was the Chief Operating Officer and President.  Ms. Holmes and Mr. Balwani were also the only two officers of the company who were on the Board as well. . . .

1
2
3
4
5
6
7
8
9
10

[Daniel Edlin] testified that [Defendants] collaborated on many things, that he saw them having conversations frequently about the company, that they both had a great deal of authority in the company, and that they were in their own category at the company in terms of having access to all information.  You heard witnesses talk about how information at the company was siloed, how there were rules and restrictions on the ability of employees to share information, not just outside of the company but within the company as well.  There were secrets that employees were required to keep from each other.  None of that applied to Mr. Balwani or Ms. Holmes.  That's what Mr. Edlin told you.  They were the only people who had that status, the status of being allowed to know everything that was happening in the company.  And the evidence suggests that they did have complete comprehensive knowledge of what was happening at Theranos, and importantly for this case, what was not happening at Theranos.  It's no surprise that Mr. Balwani had a lot of authority.  Besides his position that we talked about, you can also infer that his close relationship with Ms. Holmes would have given him a lot of influence over her, more than just his title alone would provide.  Remember also that Mr. Balwani was older and more experienced than Ms. Holmes.  So it would be no surprise that his advise [sic], his input would carry a lot of weight with her.  And that's what showed up in the text messages. . . ."  6/24 Tr. at 7649–7652; *see also id.* at 7630.

11
12      In sum, Defendant cannot meet her heavy burden to show that she would probably be acquitted if
13  these cherry-picked, isolated lines from the government's rebuttal argument in the *Balwani* trial were
14  admitted in a new trial.  Therefore, the Court should deny Defendant's Rule 33 Motion re: Government
15  Argument in Balwani Trial.
16      **B.     Any Variance Between the Government's Arguments Is Harmless**
17      As the government recently detailed in response to Defendant's Rule 29 motion for acquittal,
18  overwhelming evidence supports the jury's verdict convicting her of Counts 1, 6, 7, and 8.  ECF Nos.
19  1395, 1486.  The addition of "government admissions" that at times co-Defendant Balwani influenced
20  Defendant Holmes (and at times the opposite occurred), would be a harmless addition at most (*see*
21  Fed. R. Crim. P. 52(a)), and would not affect the outcome of Defendant's trial.
22
23      **C.     Defendant's New Trial Claims Are Not Based on Newly Discovered Evidence and Thus Are Untimely**
24      "Any motion for a new trial grounded on any reason other than newly discovered evidence must
25  be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  To qualify as a
26  Rule 33 motion based on "newly discovered evidence" the evidence must "relate[ ] to the elements of
27  the crime charged."  *Vrieling*, 577 F. App'x at 717 (quoting *United States v. Hanoum*, 33 F.3d 1128,
28

1   1130 (9th Cir. 1994)).  Otherwise, such motions are subject to the timeliness requirements of

2   Rule 33(b)(2).  *See id.*  Rule 33's timeliness requirement is a mandatory claim-processing rule that must

3   be enforced when properly invoked, as here.  *Eberhart v. United States*, 546 U.S. 12, 13 (2005)

4   (per curiam) ("[Rule 33(b)(2)'s] deadline is rigid."); *see also Fort Bend County, Texas v. Davis*,

5   139 S. Ct. 1843, 1849 (2019) (stating that claim-processing rules are those that "seek to promote the

6   orderly progress of litigation by requiring that the parties take certain procedural steps at certain

7   specified times" (quotation omitted)).  The government asserts that Defendant's three Rule 33 motions

8   do not address "newly discovered" evidence, do not materially address evidence that relates to the

9   elements of the crimes she was convicted of, were filed more than six months past the relevant deadline,

10  and thus are untimely and barred under *Eberhart*.

11                                    **CONCLUSION**

12          For the reasons stated above, the government respectfully requests that the Court deny Defendant

13  Holmes' Rule 33 Motion re: Government Argument in Balwani Trial (ECF No. 1576).

14

15  DATED:  September 21, 2022                    Respectfully submitted,

16                                               STEPHANIE M. HINDS
                                                 United States Attorney
17

18                                                */s/ Kelly I. Volkar*
                                                 _____
19                                               JEFFREY B. SCHENK
                                                 JOHN C. BOSTIC
20                                               ROBERT S. LEACH
                                                 KELLY I. VOLKAR
21                                               Assistant United States Attorneys

22

23

24

25

26

27

28