1    STEPHANIE M. HINDS (CABN 154284)
     United States Attorney
2
     THOMAS S. COLTHURST (CABN 99493)
3    Chief, Criminal Division

4    JEFFREY B. SCHENK (CABN 234355)
     JOHN C. BOSTIC (CABN 264367)
5    ROBERT S. LEACH (CABN 196191)
     KELLY I. VOLKAR (CABN 301377)
6    Assistant United States Attorneys

7         150 Almaden Boulevard, Suite 900
          San Jose, California 95113
8         Telephone: (408) 535-5061
          Fax: (408) 535-5066
9         Kelly.Volkar@usdoj.gov

10   Attorneys for United States of America

11                   UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14   UNITED STATES OF AMERICA,          )   Case No. 18-CR-00258 EJD
                                        )
15        Plaintiff,                    )   UNITED STATES' OPPOSITION TO
                                        )   DEFENDANT ELIZABETH HOLMES' MOTION
16   v.                                 )   FOR NEW TRIAL PURSUANT TO FEDERAL
                                        )   RULE OF CRIMINAL PROCEDURE 33 BASED
17   ELIZABETH HOLMES,                  )   ON DOCUMENTS RELATED TO THE LIS
                                        )   DATABASE (ECF NO. 1577)
18        Defendant.                    )
                                        )   Date:   October 3, 2022
19                                      )   Time:   1:30 p.m.
                                        )   Court:  Hon. Edward J. Davila
20   _____)

21

22

23

24

25

26

27

28

U.S.' OPP'N TO DEF.'S RULE 33 MOT. RE: LIS-RELATED DOCUMENTS,
CASE NO. 18-CR-258 EJD

1

TABLE OF CONTENTS

2

INTRODUCTION …………………………………...……………………………………………..1

3

BACKGROUND………………………………………………………………………………..2

4

   A.  Proceedings Before Defendant Holmes' Trial………………………………………………2

5

   B.  Proceedings During Defendant Holmes' Trial………………………………………5

6

   C.  Proceedings Before Co-Defendant Balwani's Trial………………………………………6

7

   D.  Proceedings During Co-Defendant Balwani's Trial………………………………………7

8

   E.  Defendant's Untimely Motion for a New Trial…………………………………………...9

9

ARGUMENT………………………………………………………………………………...9

10

   A.  Defendant's Rule 33 Motion re: LIS-Related Documents Does Not Satisfy the Stringent

11

       Requirements for a New Trial Based on Newly Discovered Evidence…………………………...9

12

      1.  The LIS-Related Documents Do Not Provide New Information……………………………10

13

      2.  Defendant Was Not Diligent…………………………………………………………12

14

      3.  The LIS-Related Documents Are Not Material…………………………………………...14

15

      4.  The LIS-Related Documents Are Cumulative and Impeachment Evidence………………...16

16

      5.  The LIS-Related Documents Would Not Result in an Acquittal……………………………18

17

   B.  Defendant Is Not Entitled to a New Trial Because No Violation of *Brady v. Maryland*, 373 U.S.

18

       83 (1963), Occurred…………………………………………………………………...21

19

      1.  The LIS-Related Documents Are Not Admissible or Exculpatory…………………………21

20

      2.  The Substance of the LIS-Related Documents Was Not Suppressed………………………22

21

      3.  The LIS-Related Documents Are Not Material Because the Result of the Proceeding Would

22

        Not Have Been Different…………………………………………………………………23

23

   C.  An Evidentiary Hearing Is Unnecessary……………………………………………………25

24

CONCLUSION………………………………………………………………………………..25

25

26

27

28

TABLE OF AUTHORITIES

Cases

*Barker v. Fleming*,
   423 F.3d 1085 (9th Cir. 2005) ................................................................................ 23

*Brady v. Maryland*,
   373 U.S. 83 (1963) ..................................................................................... 2, 21

*Buchanan v. United States*,
   2013 WL 4761025 (S.D. Cal. Sept. 4, 2013) .......................................................... 23

*Carter v. Bell*,
   218 F.3d 581 (6th Cir. 2000) ................................................................................. 22

*Comstock v. Humphries*,
   786 F.3d 701 (9th Cir. 2015) ................................................................................. 22

*DeBerry v. Wolff*,
   513 F.2d 1336 (8th Cir. 1975) ............................................................................... 23

*Giglio v. United States*,
   405 U.S. 150 (1972) ............................................................................................... 2

*Jencks v. United States*,
   353 U.S. 657 (1957) ...................................................................................... 2, 3, 6, 7

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ....................................................................................... 21, 23

*Morris v. Ylst*,
   447 F.3d 735 (9th Cir. 2006) ................................................................................. 22

*United States v. Agurs*,
   427 U.S. 97 (1976) ................................................................................................ 23

*United States v. Bagley*,
   473 U.S. 667 (1985) .............................................................................................. 21

*United States v. Bakshinian*,
   65 F. Supp. 2d 1104 (C.D. Cal. 1999) ................................................................... 17

*United States v. Brugnara*,
   856 F.3d 1198 (9th Cir. 2017) ............................................................................... 13

*United States v. Caballero*,
   745 F. App'x 32 (9th Cir. 2018) ........................................................................... 10

*United States v. Cohen*,
    685 F. App'x 609 (9th Cir. 2017) .................................................................................. 17

*United States v. George*,
    420 F.3d 991 (9th Cir. 2005) ................................................................................. 14, 16

*United States v. Hanoum*,
    33 F.3d 1128 (9th Cir. 1994) ..................................................................................... 14

*United States v. Harrington*,
    410 F.3d 598 (9th Cir. 2005) ................................................................................... 9, 17

*United States v. Henderson*,
    250 F. App'x 34 (5th Cir. 2007) ................................................................................. 23

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) (*en banc*) ....................................................... 10, 17, 18

*United States v. Kenny*,
    645 F.2d 1323 (9th Cir. 1981) ................................................................................... 20

*United States v. Kohring*,
    637 F.3d 895 (9th Cir. 2011) ..................................................................................... 21

*United States v. Lockett*,
    919 F.2d 585 (9th Cir. 1990) ..................................................................................... 12

*United States v. Moalin*,
    973 F.3d 977 (9th Cir. 2020) ..................................................................................... 23

*United States v. Nace*,
    561 F.2d 763 (9th Cir. 1977) ..................................................................................... 25

*United States v. Prantil*,
    764 F.2d 548 (9th Cir. 1985) ..................................................................................... 18

*United States v. Reyes-Alvarado*,
    963 F.2d 1184 (9th Cir. 1992) ................................................................................... 25

*United States v. Reyes-Garcia*,
    No. 10-CR-348-KJM, 2011 WL 6260357, at *3 (E.D. Cal. Dec. 15, 2011) ................ 24

*United States v. Runyan*,
    290 F.3d 223 (5th Cir. 2002) ..................................................................................... 22

*United States v. Sarno*,
    73 F.3d 1470 (9th Cir. 1995) ..................................................................................... 24

*United States v. Showalter*,
   569 F.3d 1150 (9th Cir. 2009) ................................................................. 12

*United States v. Skilling*,
   554 F.3d 529 (5th Cir. 2009) *aff'd in part and vacated in part on other grounds*,
   561 U.S. 358 (2010) ................................................................................. 23

*United States v. Slatten*,
   865 F.3d 767 (D.C. Cir. 2017) ................................................................. 25

*United States v. Steel*,
   759 F.2d 706 (9th Cir. 1985) ..................................................................... 9

*United States v. Tamez*,
   44 F. App'x 790 (9th Cir. 2002) ....................................................... 12, 13

*United States v. Waggoner*,
   339 F.3d 915 (9th Cir. 2003) ............................................................. 18, 21

*United States v. Weber*,
   721 F.2d 266 (9th Cir. 1983) ................................................................... 17

*United States v. Wooten*,
   377 F.3d 1134 (10th Cir. 2004) ............................................................... 23

Rules

Fed. R. Evid. 401 ................................................................................... 17

Fed. R. Evid. 403 ............................................................................. 17, 18

**INTRODUCTION**

The government incorporates by reference the introduction, procedural background, and legal standard sections of its contemporaneously filed Opposition to Defendant Elizabeth Holmes' Rule 33 Motion re: Government Argument in Balwani Trial, filed at ECF No. 1585, and provides below additional factual background specific to prior litigation regarding Theranos' Laboratory Information System ("LIS"). The Court should deny Defendant's untimely Rule 33 Motion re: LIS-Related Documents (ECF No. 1577) because it does not identify new information—where Defendant admits to having known the substantive information since October 2020—that is material or likely to alter her conviction on investor-related counts. Defendant claims this information is material to her false statements about the accuracy and reliability of Theranos' blood tests, which is only one subcategory amongst the false statements she told investors regarding the capabilities of Theranos' device (itself also only one category of false misrepresentations among many). *See* ECF No. 1577 at 13, 16, 20. Critically, however, when the Court partially granted co-Defendant Ramesh "Sunny" Balwani's motion to compel, the Court left undisturbed its prior rulings and barred Balwani from presenting testimony regarding "whether the LIS database and its contents would have demonstrated Theranos tests were accurate and reliable" and similarly prohibited the government from responding in any rebuttal case on this topic. ECF No. 1464 at 9, 12. Thus, even if Defendant's claim that old information produced in a new format was relevant to a subpart within a subpart of the categories of false misrepresentations she made to investors, she cannot show that it would have led to a different outcome under any standard.

Furthermore, Defendant claims the documents at issue would have been relevant to preparing her defense strategy, but the facts show that she had all the relevant information and simply made the strategic choice not to pursue a defense at trial arguing about who was at fault for the loss of the LIS database. Indeed, prior to her trial, the Court deferred ruling on her motion to compel production of these documents and yet Defendant never pursued them further. By contrast, co-Defendant Balwani went forward with the defense Defendant claims was not available to her—even though both parties had the same information before their respective trials—and was subsequently convicted on all twelve counts in the Third Superseding Indictment ("TSI"). *See* ECF No. 1507; ECF No. 469 (TSI). Therefore, this Court should deny her request for a new trial and for an evidentiary hearing.

**BACKGROUND**

The Court has heard the facts surrounding the nature and destruction of Theranos' LIS on numerous occasions, and the government incorporates by reference its prior filings and arguments.[1]  *See also* ECF No. 887 at 1–7 (detailing facts surrounding the government's attempt to obtain the LIS and Theranos' subsequent destruction of it).  The government highlights below the facts relevant to resolving the present motion before the Court.

A.       **Proceedings Before Defendant Holmes' Trial**

On October 29, 2020, in response to Defendants' requests, the government disclosed more than twenty pages of information that Defendants may view as potentially discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, 154 (1972), or *Jencks v. United States*, 353 U.S. 657 (1957) ("October 2020 Letter").  *See* ECF No. 732-2; 5/4/21 Tr. at 55:17–25 (Defendant Holmes' counsel describing letter as "the longest *Brady* letter I've ever received" that provides the LIS-related chronology "in excruciating detail").  Subsequently, Defendant served the government with her First Amended Witness List, including for the first time members of the prosecution team by name and other government employees by their titles as listed in the October 2020 Letter.  *See, e.g.*, ECF No. 1003.

Defendant moved *in limine* to exclude (as relevant here) both (a) any reference by the government regarding Defendant's role or other Theranos' executives' roles in destroying the LIS in August 2018 (*see* ECF No. 565 at 4) and (b) so-called "anecdotal" testimony by patient-victims and their physicians (*see* ECF No. 563).  During the three-day hearing on Defendant's voluminous motions *in limine*, a substantial portion of the first day was spent discussing this topic.  *See, e.g.*, 5/4/21 Tr. at 40–100.  Throughout that portion of the hearing, Defendant repeatedly asserted that the absence of the

---

[1]  The government incorporates by reference its prior briefing, including all supporting declarations and exhibits, and oral argument on this subject.  *See, e.g.*, ECF No. 682, 846, 1181, 1426, 1440, 1454; *United States v. Holmes*, 05/04/2021 Hearing Transcript ("5/4/21 Tr.") at 45–68, 79–85; *United States v. Holmes*, 07/07/2021 Hearing Transcript ("7/7 Tr."); *United States v. Holmes*, 11/10/2021 Trial Transcript ("11/10 Tr.") at 5877–5889; *United States v. Holmes*, 11/19/2021 Trial Transcript ("11/19 Tr.") at 7100–7104; *United States v. Balwani*, 02/08/2022 Hearing Transcript ("2/8 Tr."); *United States v. Balwani*, 05/11/2022 Trial Transcript ("5/11 Tr.") at 5291–5329; *United States v. Balwani*, 05/23/2022 Trial Transcript ("5/23 Tr.").

1    LIS database was reason to preclude patient-victims from testifying about the inaccuracy and

2    unreliability of Theranos tests because Defendant would be unable to show the "statistical

3    insignificance" of their testimony without the LIS.  *Id.*  For example, Defendant asserted that the patient

4    testimony was "not relevant [ ] because they have not established that causal link either specifically in

5    the LIS database or statistically," and that "the prejudicial impact on such anecdotal evidence just

6    swamps any probative value based on the statistically [sic] analysis and particularly given the lack of

7    access to the LIS to refute those allegations."  *Id.* at 62–65; *see also id.* at 58, 90–92, 96–98.  The

8    government responded that this is not a products liability case and thus the absence of the LIS database

9    should not preclude individual patient-victims from testifying, particularly when there are several other

10   categories of evidence that will support their testimony demonstrating that Theranos was not capable of

11   consistently producing accurate and reliable test results to patients.  *See, e.g., id.* at 67, 70–72, 81–84;

12   *see also* ECF No. 469 (TSI) ¶ 16.

13        While Defendant vehemently argued that she should be permitted to argue the government's

14   failure to meet its burden of proof with respect to the patient-related counts because of its lack of

15   statistical analysis of accuracy and reliability problems at Theranos, Defendant just as vigorously argued

16   that what happened to the LIS database and who was responsible for its destruction was "irrelevant to

17   this case[.]"  *See, e.g.,* 5/4/21 Tr. at 49–50, 54–58, 93–98.  Defendant asserted that she could call

18   members of the prosecution team and government support staff members as fact witnesses to get to the

19   bottom of that question, but Defendant did not intend to go into that "side trial" or "mini-trial."  *See id.*

20   at 54–56 ("[the government's] own internal litigation support expert who would be a witness in this mini

21   trial says you can go and get all of that hardware and recreate it within the U.S. Attorney's Office, but

22   they never did that"), 93 ("members of the government team [ ] who are witnesses in this case because

23   of their involvement in the facts"), 94–95 ("So all of that, again, should be out.  We're not looking to put

24   prosecutors on the witness stand."), 98 ("Our goal is [ ] to avoid the side distraction[;] [i]t's not core to

25   this case.").

26        The Court denied Defendant's motion *in limine* to exclude the "anecdotal" testimony from

27   patient-victims—but permitted Holmes to argue the lack of statistical significance of that evidence.

28   ECF No. 798 at 47–50, 56–58.  The Court deferred until trial deciding whether a fact issue arising over

1   "fault in destruction of the database" would be necessary, depending on the "arguments Holmes raises at

2   trial" as well as "whether [ ] any sort of jury instruction on the issue" would be necessary.  *Id.* at 58.

3   Approximately ten days later, Defendant moved to suppress several categories of evidence regarding the

4   patient-related counts based on the absence of the LIS database.  ECF No. 810; *see also* ECF No. 846

5   (government's opposition).  In that same motion, Defendant requested an evidentiary hearing to resolve

6   the alleged "factual dispute" regarding responsibility for the loss of the LIS database and "questions

7   about the government's conduct in this case that need to be explored"; Defendant also requested further

8   production of the documents underlying the government's October 2020 Letter.  ECF No. 810 at 11–12.

9   During the hearing on Defendant's motion to suppress, her counsel reiterated both that she knew the

10  facts underlying the government's October 2020 Letter—including the identity of who was involved—

11  and that the absence of the LIS database related to the patient (not investor) counts.  7/7 Tr. at 11 ("the

12  prosecutors prosecuting this case repeatedly disregarded advice from their own support staff regarding

13  steps that they should take to access and preserve the LIS database"), 30 ("[the government] knew that

14  some doctors who had sent patients to LIS believed that their test results were accurate and reliable[;]

15  [t]hose test results of course resided in the LIS"), 34–36 ("[W]ith respect **to the patient counts** that

16  [information in LIS] would be exculpating evidence, your honor, because their claim is that Theranos

17  technology was incapable of producing accurate and reliable results." (emphasis added)).

18          On August 4, 2021, the Court denied Defendant Holmes' motion to suppress, including her

19  request for an evidentiary hearing and for further production of documents.  ECF No. 887 at 17–18.

20  Specifically, the Court found the exculpatory nature of the documents underlying the government's

21  October 2020 Letter to be "speculative," the evidence post-August 31, 2018 to be "irrelevant," and that

22  the government did not act in bad faith.  ECF No. 887.  The Court found that "[t]he LIS database

23  information alone would not provide a conclusive determination of whether the Theranos blood tests

24  were accurate, and *it could just as likely contain incriminating evidence to the contrary*.  Any

25  exculpatory value is therefore speculative in nature."  ECF No. 887 at 10 (emphasis added); *see id.* at 8–

26  11.  The Court also noted that, while Defendant Holmes asserted the LIS database would include

27  exculpatory information, she never "informed the Government of the database's purported exculpatory

28  value either prior to filing the present motion [to suppress] or prior to the decommissioning of the

1    original LIS database," nor did she seek to aid the government in its efforts to obtain a copy.  ECF No.

2    887 at 9.  Moreover, the Court held that any evidence of the government's conduct after Theranos

3    destroyed the LIS database in late August 2018 is irrelevant.  ECF No. 887 at 14.  The Court rejected

4    Defendant's argument that the government could have reconstructed the database because the Court

5    found that the evidence "either contradicts her proposition or is of low persuasive value."  ECF No. 887

6    at 13–14; *see also id.* at 5, 16.  Based in part on the above findings, the Court denied Defendant Holmes'

7    request for further production of documents underlying the government's October 2020 Letter because

8    "Holmes has not indicated why any of the information or evidence she seeks is relevant, helpful in

9    establishing her defense, not cumulative, or not exempt from disclosure due to deliberative privilege

10   and/or work product protection."  ECF No. 887 at 17; *see id.* at 17–18.  The Court specifically held:  "To

11   the extent [defendant] seeks the **identities of government employees** and documents cited for the

12   purpose of delving into the Government's actions with respect to the LIS database after August 31,

13   2018, that information is not relevant[.]"  *Id.* at 17 (emphasis added).

14          The Court also specifically acknowledged that circumstances could change if the government

15   were to call witnesses to discuss the attempted collection of the LIS database, and "defer[red] ruling on

16   whether the Government must provide additional related documents" described in the October 2020

17   Letter if that were to occur.  *Id.* at 18; *see also* ECF No. 1577 at 7 (acknowledging this holding).

18          **B.    Proceedings During Defendant Holmes' Trial**

19          The LIS database continued to be a topic of frequent discussion during Defendant's trial.  *See*,

20   *e.g.*, *United States v. Holmes*, 09/29/2021 Trial Transcript ("9/29 Tr.") at 2371–2374; 11/10 Tr. at 5877–

21   5889; 11/19 Tr. at 7100–7104.  Defendant's counsel repeatedly represented to the Court and to the

22   government that she was not "put[ting] at issue at trial the government's conduct" and thus, while

23   intending to present her defense of the failure to provide a statistical analysis, there was no basis for the

24   government to call additional fact witnesses at trial to address who was at fault for the missing LIS

25   database.  *See* 11/10 Tr. at 5877–5889; 11/19 Tr. at 7100–7104 (preserving motion to suppress issues for

26   record and noting that the "record is exactly where it was at the time that we first made this motion"

27   since Defendant did not introduce evidence at trial regarding the government's conduct); *see also*

28   Exhibit 1 ("At trial, Ms. Holmes has not blamed the government for failing to gather and preserve the

1 LIS database [and therefore] the government cannot introduce evidence concerning the loss of the LIS

2 database."). In closing argument, as forecast, Defendant did not address the LIS database, but did

3 emphasize several related points such as the "anecdotal" nature of the patient-victims the government

4 called to testify and the lack of "statistical" evidence presented by the government. *See United States v.*

5 *Holmes*, 12/17/2021 Trial Transcript ("12/17 Tr.") at 9216–9227. The jury ultimately acquitted

6 Defendant on the patient-related counts. ECF No. 1235.

7 **C.     Proceedings Before Co-Defendant Balwani's Trial**

8      Before the start of his trial, co-Defendant Balwani was in the same position as Defendant Holmes

9 with respect to admissibility of information relating to the LIS database. Specifically, on November 19,

10 2021, co-Defendant Balwani adopted Defendant Holmes' motion *in limine* (re: LIS) and motion to

11 suppress and again moved for production of "all documents related to [the government's] decision not to

12 capture the LIS data." ECF No. 1156 at 73–74. The parties held a hearing solely on this topic. *See*

13 *generally* 2/8 Tr. One difference is that Balwani disclosed a potential expert witness to discuss the LIS

14 database (*see* ECF No. 1158), whereas Defendant never made such a disclosure.

15      On February 28, 2022, the Court denied co-Defendant Balwani's adopted motions for the same

16 reasons, as well as his demand for further production of documents underlying the October 2020 Letter.

17 ECF No. 1326 at 30–37; *see id.* at 37 ("The Court finds that Balwani has provided no additional

18 evidence or arguments that would warrant departing from its earlier ruling denying the motion to

19 suppress, the request for an evidentiary hearing, and further production."). The Court again held: "it is

20 equally likely that [the LIS database] also contain[s] millions of *inculpatory* results" (*id.* at 31–32); "no

21 bad faith on the part of the Government" including the fact that the prosecutors did not follow the

22 suggestion of their Automated Litigation Specialist supervisor in part because the suggestion "was only

23 one proposal among several" (*id.*); and that Balwani's proposed expert on Microsoft SQL databases who

24 proffered an opinion that the LIS database could be reconstructed was "unconvincing" given his lack of

25 personal knowledge of Theranos' LIS database (*id.* at 34). The Court again denied co-Defendant

26 Balwani's request for documents underlying the government's October 2020 Letter. *Id.* at 37.

27      In sum, the Defendants were in the same position with respect to information in the October

28 2020 Letter regarding the LIS database heading into their respective trials.

**D.      Proceedings During Co-Defendant Balwani's Trial**

Contrary to the strategy that Defendant Holmes took, co-Defendant Balwani decided to raise the issue of fault for the missing LIS database and argued that "the government never obtained the LIS" in his opening statement, specifically referencing facts disclosed in the October 2020 Letter. *United States v. Balwani*, 03/22/2022 Trial Transcript ("3/22 Tr.") at 1105–1114; *see id.* at 1108 ("another technology specialist at the government told the investigators and prosecutors in this case . . . [to] go get the servers from Theranos that housed the hard drives . . . [but] the government never obtained the LIS[.]").  Thus, contrary to Defendant's trial strategy, co-Defendant chose to place the fault for the loss of the LIS squarely at issue in his trial. *See id.* at 1113 ("I know that we have opened the door to something . . . . [T]he government can defend itself and argue that it wasn't their fault."); *see also* 5/11 Tr. at 5304–5305 (responding to Court's question if purpose was to "blame the government[,]" Balwani's counsel said "Right[;] [i]f they had conducted a proper investigation . . . then we would have had [this] evidence").

During co-Defendant Balwani's trial, he again moved to compel the government to produce documents underlying certain paragraphs of the government's October 2020 Letter. ECF Nos. 1425, 1426 (government's opposition).  Rather than seeking all documents underlying the entirety of the October 2020 Letter, as both Defendants had sought in the past, this renewed motion sought a narrower subset of documents related to the government's actions upon receiving an inaccessible copy of the LIS database from Theranos in the fall of 2018. *See* ECF Nos. 1425, 1425-3 at 3–9.  Through argument before the Court, it became apparent that co-Defendant Balwani was intending to call his disclosed expert on Microsoft SQL databases to discuss the LIS database and was seeking the emails underlying certain parts of the October 2020 Letter to provide to that expert. *See* 5/11 Tr. at 5291–5329; *see generally* 5/23 Tr.  The government moved to exclude co-Defendant Balwani's LIS-related expert as irrelevant, among other grounds.  ECF Nos. 1440, 1454.

The Court granted in part and denied in part Balwani's renewed motion to compel and the government's motion to exclude.  ECF No. 1464.  Specifically, the Court noted that co-Defendant Balwani, for the first time, "articulated a specific defense" whereas "previously, neither Balwani nor Holmes provided concrete positions on their plans for any LIS-related evidence sought." *Id.* at 3.  This newly articulated theory was co-Defendant Balwani's "'investigatory failure' defense." *Id.*  The Court

1   reaffirmed its holding in prior orders that "the exculpatory value of the LIS database was speculative"

2   but found that "the evidence now at issue before the Court **is not the LIS database itself**, but rather

3   documents relating to the Government's efforts to obtain the LIS and the data it contained." *Id.* at 4–5

4   (emphasis added).  The Court returned to this distinction several times throughout its ruling, holding that

5   Balwani's expert "may not testify as to whether the LIS database and its contents would have

6   demonstrated Theranos tests were accurate and reliable" and similarly precluding the government, in

7   turn, from introducing such evidence in rebuttal.  *Id.* at 9, 12.  The Court noted that, while "the jury may

8   very well ultimately find Balwani's ['investigatory failure'] defense unconvincing, *Brady* requires the

9   Government to provide him [the documents] to present that defense[,]" and ordered the government to

10  produce the narrow subset of documents identified.  *Id.* at 6–7.  The Court deferred ruling on

11  admissibility of the documents, prohibited co-Defendant Balwani from "calling any members of the

12  prosecution team as witnesses[,]" and prohibited his expert from opining on what "the Government

13  *should* have done [as] outside the scope of his noticed testimony and expertise."  *Id.* at 7–8 & n.3, 11.

14          On June 2, 2022, per the Court's order, the government produced to both Defendants eleven

15  emails underlying specific paragraphs of the October 2020 Letter that co-Defendant Balwani asserted

16  were necessary to present his "investigatory failure" defense (hereinafter "LIS-Related Documents").

17  *See* ECF No. 1577-2 at 2.  Subsequently, co-Defendant Balwani's expert on Microsoft SQL databases,

18  Richard Sonnier, III, testified.  *United States v. Balwani*, 06/09/2022 Trial Transcript ("6/9 Tr.") at

19  6711–6823.  During Mr. Sonnier's testimony, Balwani sought to admit only one of the emails

20  underlying the October 2020 Letter and the Court admitted it for a limited purpose.  *See id.* at 6741–

21  6743 (admitting TX 20832 for a limited purpose); *see also id.* 6787–6789 (similarly admitting during the

22  government's cross-examination TX 5943, which has an additional response to the prior email thread);

23  ECF Nos. 1577-3, 1577-5 (providing TX 20832 and TX 5943).  On cross-examination, Mr. Sonnier

24  admitted that the government had made "many requests" to Theranos and its subsequent assignee for the

25  information in the LIS database (6/9 Tr. at 6751; *see also* ECF No. 846-9), that Mr. Sonnier had

26  attempted to access the data stored on the same copy of the LIS database that Theranos provided to the

27  government—who in turn produced the copy to both Defendants in this case—but he was unable to do

28  so (6/9 Tr. at 6759–6760), and that he disagreed with several individuals in various roles at Theranos

1  who believed that it would be "very difficult to resuscitate" the LIS database once in storage (*see*, *e.g.*,

2  *id.* at 6784–6786 (admitting TX 5897, the substance of which can be found at ECF No. 681-37), 6790–

3  6798 (admitting TX 5917 for limited purpose); ECF No. 1577-4).  The Court sustained co-Defendant

4  Balwani's objections to any questions relating to the substance (or lack thereof) within the LIS database

5  based on the Court's order.  *See* 6/9 Tr. at 6798–6801.  After Mr. Sonnier testified, the Court denied co-

6  Defendant Balwani's request for a missing evidence jury instruction permitting an adverse inference

7  against the government due to the absence of the LIS database.  *See* 6/9 Tr. at 6844–6888.

8       On July 7, 2022, a separate jury convicted co-Defendant Ramesh "Sunny" Balwani of all twelve

9  counts in the TSI.  ECF No. 1507.

10          **E.    Defendant's Untimely Motion for a New Trial**

11      More than eight months after the jury's verdict finding Defendant guilty on four investor-related

12  counts, half a year after the agreed-upon extended deadline for such motions, three months after the LIS-

13  Related Documents were produced, and mere weeks before her sentencing date, Defendant Holmes has

14  filed three separate Rule 33 motions.  ECF Nos. 1574, 1576, 1577.  Defendant's Rule 33 Motion re:

15  LIS-Related Documents attaches six of the eleven emails regarding the government's attempt to access

16  the LIS database in 2018 that were produced pursuant to the Court's order (ECF No. 1464) in early June

17  2022 in connection with Balwani's "investigatory failure" defense, but contain the same substantive

18  information known to Defendant since October 2020.  *See* ECF Nos. 1577, 1577-1.

19                                  **ARGUMENT**

20          **A.    Defendant's Rule 33 Motion re: LIS-Related Documents Does Not Satisfy the
             Stringent Requirements for a New Trial Based on Newly Discovered Evidence**
21

22      As previously described, to prevail on a motion for a new trial based on alleged newly

23  discovered evidence, a defendant must demonstrate five separate and independent factors:  (1) the

24  evidence must be newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the

25  evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely

26  impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial.

27  *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (citation omitted); *see also United States*

28

1   *v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985) ("This five-prong test is difficult to meet.").  Defendant fails

2   to overcome her difficult burden on any of the five factors of the *Harrington* test for a new trial.

### 1.     The LIS-Related Documents Do Not Provide New Information

4           As a threshold matter, the Court should deny Defendant's Rule 33 Motion re: LIS-Related

5   Documents because it does not refer to any "new" information.  The Ninth Circuit has repeatedly upheld

6   denials of Rule 33 motions based on newly discovered evidence where the substantive information—

7   even if contained in a new or different form post-trial—was known before the jury reached a verdict.

8   *See, e.g.*, *United States v. Hinkson*, 585 F.3d 1247, 1264–65 (9th Cir. 2009) (*en banc*); *see also United*

9   *States v. Caballero*, 745 F. App'x 32, 33 (9th Cir. 2018) (upholding finding that letter at issue did not

10  constitute newly discovered evidence because "[e]ven if the letter itself was written after the trial,

11  [defendant] was already aware of the substantive information contained therein from his counsel's

12  discussions with [the relevant witness] before trial").  In *Hinkson*, for example, the defendant sought a

13  new trial on the basis of two affidavits from military personnel confirming that a key prosecution

14  witness had testified falsely about his service record.  585 F.3d at 1257.  The district court held that the

15  evidence was not "new" because it contained no substantively new information, rather it merely

16  reiterated the substance of evidence the defendant had attempted to admit during cross-examination at

17  trial regarding this witness but now in a new format.  *Id.*at 1257–58.  The Ninth Circuit *en banc* upheld

18  the district court's conclusion, holding that the court did not abuse its discretion in finding that the two

19  "affidavits, while newly written, did not provide any new *information* that was not already considered

20  and rejected from evidentiary admission by the court[.]"  *Id.* at 1264–65.  So too here.

21          The LIS-Related Documents that the government produced to both Defendants in early

22  June 2022 do not contain any "new" information.  *Compare* ECF No. 732-2 at 19–24, *with* ECF Nos.

23  1577-3–5, 1577-9–10, 1577-12.  Rather, they are the documents underlying certain paragraphs of the

24  October 2020 Letter, which Defendant has had for nearly a year before her trial and which, as her

25  counsel asserted, describes the LIS-related chronology "in excruciating detail[.]"  5/4/21 Tr. at 55.

26  Indeed, it is because of the information contained within the October 2020 Letter that Defendant sought

27  to preclude the government from introducing aspects of post-2016 conduct during her trial, and her

28  counsel described in May 2021—several months before her trial—the following:

Whatever happened thereafter with respect to that [LIS] database could be the subject of a trial unto itself, certainly a mini trial within this trial that would involve witnesses. There have [been] about 20 witnesses that have been interviewed or have given testimony in connection with that matter.  That does not include government personnel who would be relevant to that case, **including every member of the prosecution team** who would be a witness as to whether they took appropriate steps to obtain that evidence when they knew about it for years and when it was produced to them.

…

[T]hen [the government] went to its own internal experts within the U.S. Attorney's Office and sought guidance as to how they might access that [copy].  They got very good advice it turns out because it wasn't just the copy that was relevant that they had where they had an issue with the key.  That's a little bit of a red herring there.  There was also a copy on a server system that Theranos had.  And their own expert, **their own internal litigation support expert who would be a witness in this mini trial** says you can go and get all of that hardware and recreate it within the U.S. Attorney's Office, but they never did that.

…

[T]hey could put this database back together within a month.  So the copy is one thing.  The existing infrastructure is another.  So the government's failure to move on that is a significant issue with respect to this matter.  Now, your honor, I have a solution to this mess, which is Docket 565 at 4 [seeking to exclude this evidence].  This has nothing to do with Elizabeth Holmes.  Nothing. . . . [dismantling of LIS database] has no role in this case which relates to Ms. Holmes.  It's irrelevant under 401[.] . . . The fact that they tried to get it later and make whoever shot who with respect to that is for another proceeding. **That's not relevant to this case**.

5/4/21 Tr. at 55–58 (emphasis added); *cf.* ECF No. 1577.

Defendant seeks to circumvent the fact that she has known the underlying information for years by focusing now on the *identity* of individuals shown in the emails but not specified in the October 2020 Letter.  ECF No. 1577 at 8 & n.2, 13, 17, 19.  This is a distinction without a difference.  First and foremost, Defendant knew and repeatedly asserted that the government attorneys referenced in the October 2020 Letter were the same as members of the prosecution team because she repeatedly said as much to the Court.  *See* 5/4/21 Tr. at 55 ("including every member of the prosecution team who would be a witness as to whether they took appropriate steps to obtain that evidence"), 56 ("[the government's] own internal litigation support expert who would be a witness in this mini trial"), 93 ("members of the government team [ ] who are witnesses in this case because of their involvement in the facts"), 94–95 ("We're not looking to put prosecutors on the witness stand."); 7/7 Tr. at 11 ("the prosecutors prosecuting this case repeatedly disregarded advice from their own support staff regarding steps that they should take to access and preserve the LIS database"); 11/10 Tr. at 5881 ("and some of the

1  members of the team present may be witnesses with respect to that [i.e., the government's responsibility

2  and their failures re: LIS]").

3        Second, after receiving the October 2020 Letter, Defendant added the names of the prosecuting

4  attorneys to her witness list, as well as generic titles for government support staff members as identified

5  in the letter, and those names and titles remained on Defendant's witness list through the start of her

6  trial. *See* ECF No. 1003 (listing John Bostic, Robert Leach, Jeffrey Schenk, "Government Attorneys

7  LNU," "Government Paralegal LNU," "Automated Litigation Support Supervisor LNU," and "USAO

8  Employee in the Automated Litigation Support Unit LNU"). Beyond the person's name rather than their

9  title, Defendant only asserts in a footnote one purported factual difference between the October 2020

10  Letter and the LIS-Related Documents that the government produced—whether co-Defendant Balwani

11  *and* someone else knew how to decrypt the LIS database or co-Defendant Balwani could do so but it

12  was unknown whether anyone else could. *See* ECF No. 1577 at 11 n.5. Defendant does not explain

13  how this purported difference would alter any fact with respect to her trial and thus the Court should

14  disregard this assertion as irrelevant and immaterial.

15        The Ninth Circuit has long held that "a court must exercise great caution in considering evidence

16  to be 'newly discovered' when it existed all along and was unavailable" solely because defendant did

17  not call the relevant witness to testify to the facts at trial. *United States v. Lockett*, 919 F.2d 585, 591–92

18  (9th Cir. 1990); *see also United States v. Showalter*, 569 F.3d 1150, 1154–55, 1157 (9th Cir. 2009)

19  (affirming district court's denial of defendant's request to withdraw guilty plea because witness

20  declarations were not "new" evidence as the defendant could have compelled the witnesses to testify on

21  his behalf at trial); *United States v. Tamez*, 44 F. App'x 790, 791 (9th Cir. 2002). Similarly, here, the

22  Court should deny Defendant's Rule 33 Motion re: LIS-Related Documents because it does not refer to

23  any "new" information.

24        **2.   Defendant Was Not Diligent**

25        The Court should deny Defendant's Rule 33 Motion re: LIS-Related Documents because she was

26  not diligent in seeking the documents in addition to the known information underlying the October 2020

27  Letter during her trial. Specifically, heading into her trial, Defendant had the same information and was

28  in the same procedural posture as her co-Defendant Balwani was before his trial. She could have chosen

1    to "argue[ ] that the LIS database is unavailable because of the Government's failure to obtain it" and

2    that would have opened the door to the government—which was otherwise precluded from—introducing

3    evidence about "Theranos' nefarious destruction of the LIS database[,]" which, in turn, would have

4    permitted Defendant Holmes to renew her request for documents underlying the October 2020 Letter per

5    the Court's deferred ruling.  ECF Nos. 798 at 57–58, 887 at 18 (deferring ruling in case government

6    called witnesses related to the destruction of LIS database and subsequent attempts to obtain a

7    functioning copy); *see also* ECF No. 1577 at 7 (acknowledging this holding).  Defendant knew who the

8    relevant witnesses were as shown by her witness list (ECF No. 1003), she had a letter from the

9    government to her counsel regarding the LIS database listed as a potential exhibit in her case-in-chief on

10   her exhibit list at the start of her trial (ECF No. 1002 at 30), and she accounted for a potential "missing

11   evidence" instruction in her pretrial proposed jury instructions (ECF No. 809 at 91).

12          The choice was entirely Defendant's to make but she strategically elected not to argue that the

13   government failed to obtain the LIS database.  *See* Exhibit 1.  Toward the end of her trial, the

14   government sought clarification regarding whether Defendant was going to argue that the LIS was

15   missing because of the government's actions in order to determine the remaining witnesses it needed to

16   call during its case-in-chief, and Defendant responded that she would not make that argument.  *See id.*;

17   11/10 Tr. at 5877–5889; 11/19 Tr. at 7100–7104 (confirming for the Court at the close of the

18   government's case-in-chief that Defendant had not "put at issue at trial the government's conduct" and

19   did "not put any evidence forward" on that topic).  While Defendant initially sought a "missing

20   evidence" jury instruction (ECF 809 at 91), by the end of trial she dropped that request (ECF No. 1188).

21   By contrast, Balwani made a different choice and that resulted in a different outcome—including

22   unsuccessfully requesting a "missing evidence" instruction.  This Court should reject Defendant's

23   request for a new trial on the basis of a trial defense that she had equal access to make but she chose to

24   forego.  *See*, *e.g.*, *United States v. Brugnara*, 856 F.3d 1198, 1206–07 (9th Cir. 2017) (affirming district

25   court's denial of motion for new trial by finding defendant did not act diligently and noting "[i]t is not

26   uncommon that a party fails to act diligently when he does not take advantage of reasonably available

27   means to obtain known or suspected evidence before or at least during trial").

28

### 3.   The LIS-Related Documents Are Not Material

Defendant's motion also fails to meet the materiality requirement because her arguments expose a fundamental mismatch between the evidence she claims is newly discovered and the result she seeks. Evidence is material only when it "relates to the elements of the crime charged" and would impact "whether [the defendant] is innocent or guilty of the [convicted] crimes[.]"  *United States v. Hanoum*, 33 F.3d 1128, 1130–31 (9th Cir. 1994) (holding new evidence showing ineffective assistance of counsel is not material because the evidence itself was not new and how counsel failed to use such evidence did not relate to innocence or guilt of defendant); *see also United States v. George*, 420 F.3d 991, 1001 (9th Cir. 2005) (holding newly discovered evidence was not material where it established "a collateral point" otherwise developed at trial).  Here, Defendant makes a feeble attempt to make a tenuous connection between the LIS-Related Documents and the investor-related counts on which she was convicted.  ECF No. 1577 at 16.  The Court must accept multiple false premises to reach her conclusion:  first, that the LIS-Related Documents have any relevance to the accuracy and reliability of Theranos testing when the Court's order finds otherwise; second, that the LIS database if it were accessible would definitively prove that Theranos consistently provided accurate and reliable blood tests contrary to the Court's finding and the testimony of former Theranos employees who worked with the database in real-time; and third, that the speculative exculpatory evidence within LIS would undermine one subpart of a subpart of misrepresentations Defendant made to investor-victims in a manner that would somehow alter the jury's verdict on those counts.  The Court should reject this house-of-cards approach and find the LIS-Related Documents immaterial to the counts on which Defendant Holmes was convicted.

The LIS-Related Documents are not relevant to demonstrating whether Theranos could provide accurate and reliable blood tests.  *See*, *e.g.*, ECF Nos. 732-2 at 19–24 (describing substance of emails), 1577-3, 1577-4, 1577-5, 1577-9, 1577-10, 1577-12 (attaching six of the eleven produced emails).  As described in the prior section, Defendant was in the exact same position pretrial as Balwani in determining whether to pursue an "investigatory failure" defense—indeed, she had the relevant witnesses listed on her potential trial witness list—but Defendant opted not to pursue that defense.  *Cf.* ECF No. 1577 at 13, 19 (material to preparing defense strategy).  Implicitly acknowledging this gap, Defendant switches back to the theory she has consistently articulated—and the Court has consistently

1    rejected—since before her trial began:  that the absence of the LIS database somehow prevents the

2    government from proving that Theranos was unable to provide accurate and reliable blood tests.  *See*

3    ECF No. 1577 at 11, 13–16.  But the Court did not order the government to produce the LIS-Related

4    Documents for this purpose, nor admit them at co-Defendant's trial for this purpose.  ECF No. 1464 at

5    4–7; *see* 6/9 Tr. at 6741–6743, 6784–6798.  Rather, the Court explicitly prohibited either the

6    government or co-Defendant Balwani from eliciting further testimony regarding the inaccuracy and

7    unreliability of Theranos testing and even sustained objections by Balwani when the government sought

8    to elicit testimony regarding the gaps in data in the LIS database.  ECF No. 1464 at 9, 12; *see* 6/9 Tr. at

9    6798–6801.  The Court reaffirmed that "the exculpatory value of the LIS database was speculative" but

10   found that "the evidence now at issue before the Court **is not the LIS database itself**, but rather

11   documents relating to the Government's efforts to obtain the LIS and the data it contained."  ECF No.

12   1464 at 4–5 (emphasis added).  Put differently, Defendant cannot point to what was gained in these

13   underlying eleven documents with respect to attempting to prove her theory that Theranos could provide

14   accurate and reliable tests—especially given everyone agrees that the LIS database is still inaccessible to

15   all parties.  *See, e.g.*, 6/9 Tr. at 6759–6760 (co-Defendant's expert attempted and failed to access data

16   within copy of LIS database provided to government and Defendants).

17          Furthermore, as the government has argued more extensively elsewhere, the LIS database would

18   have been a "powerful tool" to identify additional patient-victims and quality-control data, but it would

19   not have allowed the parties to sort accurate from inaccurate patient results or determine an overall

20   failure rate for Theranos' blood tests.  *See, e.g.*, ECF Nos. 846 at 7–8, 1440 at 5–7; 5/4/21 Tr. at 67, 70–

21   72, 81–84; *cf.* ECF No. 1577 at 13–15.  Indeed, during Defendant's trial, Dr. Rosendorff testified that

22   certain extrinsic factors that identify a certain patient's result as accurate or inaccurate would not be

23   stored in the LIS database.  *See United States v. Holmes*, 10/05/2021 Trial Transcript ("10/5 Tr.") at

24   2734–2737; *see also* 5/4/21 Tr. at 95 (defense counsel acknowledging LIS does not have an accuracy

25   field).  And, of course, Defendant had access to the LIS database in her role as Chief Executive Officer

26   (until approximately June 2018) and thereafter Chair of Theranos' Board (until the company dissolved)

27   throughout multiple lawsuits and—if she truly thought it contained exculpatory data—she would have

28   obtained a functioning copy of the LIS database long ago rather than waiting until the eve of her trial to

1   characterize the evidence as critical.  *See* ECF No. 887 at 9 (finding no support for Defendant Holmes'

2   assertion that she always considered the database would be exculpatory); *see also* ECF No. 846 at 11.

3          In addition, Defendant cannot demonstrate the LIS-Related Documents are material given that

4   she has repeatedly and consistently asserted that the absence of the LIS database (and any fault therefor)

5   relates to the patient-related counts in the TSI, of which Defendant was acquitted at trial.  Her counsel

6   has asserted as much at hearings.  *See*, *e.g.*, 5/4/21 Tr. at 63 ("[the government] want[s] to take 1 in a

7   million patients and put them in front of the jury [to argue] that [Defendants] were not capable of

8   producing accurate and reliable results and now we, without the LIS database, have the burden of saying

9   there's no causation"), 65 ("the prejudicial impact on such anecdotal evidence just swamps any

10  probative value based on the statistically [sic] analysis and particularly given the lack of access to the

11  LIS to refute those allegations"), 91 ("which is where the LIS deficiency comes in, which is when you

12  identify an anecdotal example, you need to look at the surrounding facts and circumstances to access

13  [sic] whether there's an issue with the technology"); 7/7 Tr. at 34–36 ("[W]ith respect to the patient

14  counts that [information in LIS] would be exculpating evidence . . . .").  Defendant moved to suppress

15  other categories of evidence relevant to the patient-related counts based on the absence of the LIS

16  database.  *See* ECF No. 1577 at 16; *see also id.* (citing TSI ¶ 16, which relates to patient counts).

17         Finally, TSI ¶ 12(A) alleges at least four deficiencies with the capabilities of Theranos'

18  proprietary analyzer about which Defendant misled investor-victims, and the accuracy and reliability

19  problems are only one deficiency.  ECF No. 469 ¶ 12(A).  And, of course, Defendant's lies to investors

20  regarding the capabilities of Theranos' proprietary device are themselves only one category among

21  several misrepresentations she made.  *See*, *e.g.*, *id.* ¶ 12(A)–(H); ECF No. 1575 at 4–5 (referencing other

22  misrepresentations to investor-victims in denying Defendant's Rule 29 motion).  The Court should reject

23  Defendant's assertion that the LIS-Related Documents are material to one subpart within a subpart of

24  misrepresentations she made to investors when she, herself, never previously asserted as much.

25         **4.      The LIS-Related Documents Are Cumulative and Impeachment Evidence**

26         The Court should also deny Defendant's Rule 33 Motion re: LIS-Related Documents because it

27  relates to inadmissible, cumulative evidence that, at most, could be used as impeachment evidence if

28  Defendant were to be granted a new trial.  Defendant must also be able to show that the LIS-Related

1  Documents would be admissible.  *See*, *e.g.*, *United States v. Cohen*, 685 F. App'x 609, 610 (9th Cir.

2  2017) (holding "no abuse of discretion in the district court's finding that [defendant] failed to produce

3  any *admissible* newly discovered evidence" (emphasis added)); *United States v. Weber*, 721 F.2d 266,

4  268 (9th Cir. 1983) (defining "newly discovered evidence" as "admissible in court and previously

5  unavailable to the defendant").  Defendant cannot carry her burden to show that the eleven LIS-Related

6  Documents produced by the government in early June 2022 would even be admissible were she to be

7  retried.  At co-Defendant Balwani's trial, with the benefit of the LIS-Related Documents, the Court

8  admitted only one substantive email thread regarding the government's so-called "investigatory failure"

9  for a limited purpose of notice to the government, admitted a second email over co-Defendant's

10  objection showing the government's persistence in attempting to obtain a functioning copy of the LIS,

11  and precluded the government from asking questions about the gaps in data within the LIS database.

12  *See* 6/9 Tr. at 6741–6743, 6784–6801.  Courts are split on whether government statements are non-

13  hearsay under Federal Rule of Evidence 801(d)(2).  *See*, *e.g.*, *United States v. Bakshinian*, 65 F. Supp.

14  2d 1104, 1105–06 (C.D. Cal. 1999) (describing circuit split).  Regardless of whether the statements are

15  non-hearsay, Defendant still has to overcome other admissibility bars such as Federal Rules of Evidence

16  401 and 403.  *Id.* at 1110; *see*, *e.g.*, *Hinkson*, 585 F.3d at 1265 (upholding district court's determination

17  that "new" evidence would be inadmissible under Rule 403 balancing test).

18  Even if the Court determines the LIS-Related Documents might be admissible, Defendant is not

19  entitled to a new trial if such evidence is cumulative or merely impeaching.  *Harrington*, 410 F.3d at

20  601.  The Court found the October 2020 Letter itself to be cumulative of the LIS-Related Documents,

21  which strongly suggests the reverse is true as well.  *See* ECF No. 1464 at 12.  Her own counsel

22  frequently referred to the topic of these emails as "not relevant to this case[,]" a "side distraction [that is]

23  not core to this case" and would trigger a mini-trial, and thus "should be out."  5/4/21 Tr. at 50, 55, 57–

24  58, 94–95, 98.  Furthermore, Defendant in closing arguments emphasized the "anecdotal" nature of the

25  patient-victims the government called to testify and the lack of "statistical" evidence presented by the

26  government.  12/17 Tr. at 9216–9227.  And substantial additional evidence demonstrated Theranos'

27  inability to provide accurate and reliable tests from its proprietary device—as but one example,

28  Theranos itself decided to void all patient tests run on its proprietary device.  *See* TX 4943.

Any minimal probative value in having the underlying documents in addition to the substantive information is substantially outweighed by the confusion it would cause as well as the undue delay and waste of time. Fed. R. Evid. 403. For example, Defendant has not suggested through which witness she would seek to introduce these documents. While co-Defendant Balwani disclosed pretrial an expert in Microsoft SQL databases to discuss Theranos' LIS database (ECF No. 1158), Defendant Holmes never made a similar disclosure. She did include members of the prosecution team and government support staff on her witness list. *See* ECF No. 1003. But the Court precluded co-Defendant Balwani from calling members of the prosecution team and Defendant has not explained why she would fare any better in trying to overcome the high burden she would face to do so. ECF No. 1464 at 7–8 n.3; *see*, *e.g.*, *United States v. Prantil*, 764 F.2d 548, 554 (9th Cir. 1985) ("[C]ourts have generally disfavored allowing a participating prosecutor to testify[] at a criminal trial. . . . This reluctance is understandable particularly when the defendant seeks to call the prosecutor as a witness.").

Finally, Defendant's motion exposes the true purpose for which she would seek to admit these documents if she were granted a new trial—"to show the prosecutors' bias" (ECF No. 1577 at 11, 14, 15, 20; *cf. id.* at 19)—which is merely impeaching evidence that does not meet the difficult test under Rule 33 for a new trial based on newly discovered evidence. *See*, *e.g.*, *United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003) (evidence "was cumulative, impeachment-related, or both" and thus did not warrant a new trial).

### 5.     The LIS-Related Documents Would Not Result in an Acquittal

Defendant's Rule 33 Motion re: LIS-Related Documents fails to meet the final factor for a new trial based on newly discovered evidence, as well. The eleven LIS-Related Documents would not alter the outcome in a re-trial under any standard. *See Hinkson*, 585 F.3d at 1266–67 (upholding court's finding that "'newly discovered' evidence was not likely to change the result in a re-trial" where it related to one prosecution witness and the evidence did not directly undercut the government's theory at trial). Defendant does not describe how this "new" evidence would have altered the testimony of any of the 32 witnesses or the balance of evidence presented against her across her four-month trial. She chose to attach only six of the eleven emails produced to her motion (*see* ECF No. 1577-1) and does not explain how those could possibly make a dent when compared against the more than 900 admitted

1    exhibits at her trial (*see* ECF No. 1324).  Rather, she claims it would have impacted her decision

2    whether to bring an "investigatory failure" defense as her co-Defendant did.  *See* ECF No. 1577 at 10–

3    11, 15–16, 19–20.  However, as described above, Defendant Holmes had identical information as co-

4    Defendant Balwani before their respective trials with regard to the government's attempt to obtain a

5    functioning copy of the LIS database.  The parties and the Court discussed multiple times throughout

6    Defendant's trial whether she was going to present any evidence that the government was at fault for the

7    missing LIS database, thereby opening the door under the Court's motion *in limine* order.  *See* ECF No.

8    798 at 57–58; *see, e.g.*, 9/29 Tr. at 2371–2374; 11/10 Tr. at 5877–5889; 11/19 Tr. at 7100–7104;

9    Exhibit 1.  Doing so would have re-engaged the Court's deferred ruling with respect to the very

10   documents Defendant now claims would have been critical.  *See* ECF No. 887 at 18.  Defendant elected

11   not to pursue the "investigatory failure" defense and her co-Defendant made the opposite decision.

12   *Compare* Exhibit 1 *and* 11/19 Tr. at 7100–7104 (the "record is exactly where it was at the time that we

13   first made this motion [to suppress]" since Defendant did not introduce evidence at trial regarding the

14   government's conduct), *with* 3/22 Tr. at 1113 ("I know that we have opened the door to something . . . .

15   I believe the government can defend itself and argue that it wasn't their fault."); *cf.* ECF 1577 at 15–16.

16   Later regret over not pursuing a trial strategy available all along does not entitle Defendant to a new

17   trial, particularly where her co-Defendant pursued that trial strategy with unfavorable results.

18        Because of the severed trials, the Court need not speculate what the effect on the outcome would

19   be if Defendant had the LIS-Related Documents and raised the "investigatory failure" defense as her co-

20   Defendant did.  Co-Defendant Balwani had the same information before his trial as she did, made a

21   different strategic choice, obtained the documents with the same substantive information as the

22   October 2020 Letter, presented an expert witness in the hopes of showing an insufficient government

23   investigation—and was subsequently convicted on all twelve counts in the TSI.  *See* ECF No. 1507.

24   Balwani even sought the "missing evidence" jury instruction she claims she may have pursued (*see* ECF

25   No. 1577 at 16)—to no avail.  *See* 6/9 Tr. at 5879–5888.  Defendant claims that the jury would acquit

26   her on her remaining counts of conviction if she had been able to present "the prosecutors' role in the

27   loss of th[is] central body of evidence" (ECF No. 1577 at 19–20)—but she had that choice and rejected

28   it (*see* Exhibit 1), and her co-Defendant pursued it and was not acquitted.  Defendant simply cannot

1   meet her burden to show that these LIS-Related Documents would have had any impact whatsoever on

2   the jury's verdict rendered against her.

3        Any attempt by Defendant to shoehorn in the importance of the LIS database to Theranos' ability

4   to provide accurate and reliable test results should be rejected for reasons also stated above.  Defendant

5   has always claimed the missing LIS database was relevant to the patient-related counts of which she was

6   acquitted.  *See*, *e.g.*, 5/4/21 Tr. at 63–65, 91, 96–98; 7/7 Tr. at 34–36.  The Court in the same order

7   granting the limited production of the LIS-Related Documents precluded the parties from delving into

8   the substance within the database.  ECF No. 1464 at 3–5, 9, 12.  Even in the hypothetical scenario where

9   Defendant would be permitted to discuss the LIS database in a manner her co-Defendant was not, the

10   accuracy and reliability of Theranos tests is one of four categories of misrepresentations made to

11   investor-victims described in the TSI, which, in turn, is one category among seven described in the TSI

12   that were also presented at her trial.  *See* ECF No. 469 ¶ 12(A)–(H).  As the government described in its

13   briefing with respect to Defendant's Rule 29 motion, overwhelming evidence supported the jury's

14   verdict on each of these categories, any one of which alone could uphold Defendant's conviction on the

15   four investor-related counts.  *See* ECF No. 1395, 1486.  Furthermore, the jury heard directly from

16   Defendant who testified over the course of several days, and courts have found that not credible

17   testimony by a defendant is alone sufficient to deny a motion for a new trial.  *See*, *e.g.*, *United States v.*

18   *Kenny*, 645 F.2d 1323, 1343–44 (9th Cir. 1981).  It is implausible that three emails admitted during co-

19   Defendant Balwani's trial (two of which entirely overlap in substance) would alter the jury's calculus,

20   let alone any of the remaining eleven LIS-Related Documents with questionable admissibility.  And,

21   indeed, they did not alter the jury's calculus in co-Defendant Balwani's trial—he too was convicted on

22   the same investor-related counts as Defendant.

23        Finally, the eleven LIS-Related Documents had nothing to do with a single element of the

24   offense.  They do not show one of Defendant's representations was true or immaterial.  They do not

25   have any bearing on her mental state.  They do not have any bearing on whether interstate wires were

26   used.  As her counsel reiterated repeatedly pretrial, the substantive facts underlying the LIS-Related

27   Documents are "not relevant to this case."  5/4/21 Tr. at 50, 55, 57–58, 94–95, 98.  There is no reason to

28   think additional information or a mini-trial about the LIS database would yield a different result.

1    In sum, even if Defendant's claim that old information produced in a new format was relevant to

2 a subpart within a subpart of the categories of false misrepresentations she made to investors, she cannot

3 show that it would have led to a different outcome under any standard.

4    **B.      Defendant Is Not Entitled to a New Trial Because No Violation of *Brady v.***
          ***Maryland*, 373 U.S. 83 (1963), Occurred**

5

6    Defendant's assertion that the government committed a *Brady* violation warranting a new trial

7 fails for the same reasons.  *See*, *e.g.*, *Waggoner*, 339 F.3d at 919 & nn.4–5 (rejecting claims for a new

8 trial based on both "newly discovered evidence" and *Brady* violation largely because the "evidence

9 would not have affected the jury's judgment on any material point" and thus the "evidence does not

10 undermine our confidence in the jury verdict"); *cf.* ECF No. 1577 at 9–16.

11    A defendant must establish three elements to prove a *Brady* violation warranting a new trial:

12 "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

13 is impeaching;" (2) the government suppressed the evidence; and (3) "prejudice must have ensued[,]"

14 meaning that, "had the evidence been disclosed to the defense, the result of the proceeding would have

15 been different."  *United States v. Kohring*, 637 F.3d 895, 901–02 (9th Cir. 2011) (quoting *United States*

16 *v. Bagley*, 473 U.S. 667, 682 (1985)).  "There is a 'reasonable probability' of prejudice when

17 suppression of evidence 'undermines confidence in the outcome of the trial.'"  *Id.* at 902 (quoting *Kyles*

18 *v. Whitley*, 514 U.S. 419, 434 (1995)).

19    For the reasons stated above, the outcome of Defendant's trial would not have been different if

20 she had the LIS-Related Documents—one need only look to how her co-Defendant fared.  Moreover,

21 the government did not suppress the *information* and Defendant cannot demonstrate the difference

22 between the description in the government's October 2020 Letter and the underlying documents are

23 material.  Finally, the government incorporates its prior position that the LIS-Related Documents do not

24 constitute *Brady* material for the reasons set forth in ECF No. 1426 at 8–10.

25    **1.      The LIS-Related Documents Are Not Admissible or Exculpatory**

26    The government maintains its position that the documents underlying its October 2020 Letter,

27 including the LIS-Related Documents, do not constitute *Brady* material.  *See* ECF No. 1426 at 8–10.

28 The Court has repeatedly held that the government is not required to produce these materials under the

1  theory that they somehow relate to the accuracy and reliability of Theranos test results—in part because

2  their exculpatory nature in that regard is at best speculative—and Defendant has not presented a reason

3  to depart from those rulings. *See* ECF Nos. 887, 1326. The government maintains its position that the

4  LIS-Related Documents contain communications favorable to the *government's* position, rather than

5  Defendants', that reconstructing the LIS database would be a "herculean undertaking" or was no longer

6  possible. *See* ECF No. 1425-3 at 7–8. And the government maintains its position that internal emails

7  detailing several alternative paths forward to attempt to obtain a functioning copy of the LIS database

8  after Theranos provided an inaccessible copy should be protected by work-product protections and are

9  not sufficiently favorable to the defense to warrant production under *Brady*. *See* ECF No. 1426 at 8–10.

10 However, the government acknowledges that the Court disagreed when it held that the LIS-Related

11 Documents "meet the low threshold for relevance because they have a tendency—however slight—to

12 make the facts concerning the quality or thoroughness of the Government's investigation more or less

13 probable." ECF No. 1464 at 4. The Court found a slight connection between the LIS-Related

14 Documents and a specific "newly articulated" defense that co-Defendant opted to pursue; by contrast,

15 Defendant had the opportunity to pursue that same defense but elected not to do so. Exhibit 1.

16 Regardless, the LIS-Related Documents are cumulative and likely inadmissible at any theoretical future

17 re-trial for the reasons stated *supra* in Section A.4. *See*, *e.g.*, *Morris v. Ylst*, 447 F.3d 735, 741 (9th Cir.

18 2006) (failure to disclose "merely cumulative" evidence is not a *Brady* violation particularly in light of

19 "compelling evidence of [defendant's] guilt").

20                      **2.      The Substance of the LIS-Related Documents Was Not Suppressed**

21          The Court should deny Defendant's Rule 33 Motion re: LIS-Related Documents because the

22 government disclosed the information underlying the documents in October 2020, well before the start

23 of her trial. "*Brady* is concerned only with cases in which the government possesses information which

24 the defendant does not." *Carter v. Bell*, 218 F.3d 581, 601–02 (6th Cir. 2000) (finding no *Brady*

25 violation where defense counsel knew about plea agreement with key prosecution witness but did not

26 obtain copy of plea agreement until later). "Evidence is not 'suppressed' if the defendant knows or

27 should know of the essential facts that would enable him to take advantage of it." *United States v.*

28 *Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (internal quotation omitted); *cf. Comstock v. Humphries*,

786 F.3d 701, 709 (9th Cir. 2015) ("Evidence is 'suppressed' where it is known to the [government] and *not disclosed* to the defendant." (emphasis added)).

Here, the government did not suppress information regarding the actions it took after it received a non-functioning copy of the LIS database from Theranos' counsel in August 2018—rather, the government disclosed the substantive information to Defendant in the October 2020 Letter.  *See, e.g.*, *United States v. Skilling*, 554 F.3d 529, 583–84 (5th Cir. 2009) (information disclosed in 302s was not suppressed even if produced in a different form later), *aff'd in part and vacated in part on other grounds*, 561 U.S. 358 (2010); *United States v. Henderson*, 250 F. App'x 34, 38–39 (5th Cir. 2007) (unpublished) (finding the government did not suppress evidence where the substance of email at issue was provided to the defense over a month before trial and "[a]ll the relevant information from the email was disclosed in the letter"); *United States v. Wooten*, 377 F.3d 1134, 1142 (10th Cir. 2004) ("*Brady* does not require the prosecution to disclose information in a specific form or manner."); *DeBerry v. Wolff*, 513 F.2d 1336, 1340 (8th Cir. 1975) (finding *Brady* "claim borders on the frivolous" where the relevant transcript was "just as available to the defendant as to the prosecutors" and thus the "evidence [was] already known by and available to [defendant] prior to trial."); *Buchanan v. United States*, 2013 WL 4761025 (S.D. Cal. Sept. 4, 2013) ("Buchanan has shown no prejudice by his having a summary [of confidential informant's criminal history] rather than the original document.").

### 3.    The LIS-Related Documents Are Not Material Because the Result of the Proceeding Would Not Have Been Different

Finally, the Court should deny Defendant's Rule 33 Motion re: LIS-Related Documents because she cannot demonstrate prejudice.  The "touchstone" of the *Brady* materiality analysis is whether Defendant "received a fair trial that resulted in a verdict 'worthy of confidence.'"  *Barker v. Fleming*, 423 F.3d 1085, 1096 (9th Cir. 2005) (quoting *Kyles*, 514 U.S. at 434).  This is a "retrospective" inquiry that the Court must analyze in the "context of the entire record, including the evidence each side presented at trial[.]"  *United States v. Moalin*, 973 F.3d 977, 1001–02 n.17 (9th Cir. 2020) (internal quotation omitted).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109–10 (1976); *see also Barker*, 423 F.3d at

1   1099; *United States v. Reyes-Garcia*, No. 10-CR-348-KJM, 2011 WL 6260357, at *3 (E.D. Cal. Dec.

2   15, 2011) ("Speculative evidence is insufficient to warrant a new trial.").

3          As discussed above, the "new evidence" of the eleven LIS-Related Documents is not material in

4   that "it could not conceivably have affected the outcome of trial, even under the reduced probability

5   standard required by *Brady*." *Reyes-Garcia*, 2011 WL 6260357, at *3; *see also supra* Sections A.3 &

6   A.5.  Defendant Holmes made a strategic choice at her trial—with all of the relevant information

7   because the government disclosed it in October 2020—not to put at issue the government's conduct or

8   the "investigatory failure" defense.  *See, e.g.*, 11/10 Tr. at 5877–5889; 11/19 Tr. at 7100–7104;

9   Exhibit 1.  Nothing in the LIS-Related Documents would materially alter the information she had before

10  her in making that decision, particularly given how her counsel repeatedly characterized it as

11  "irrelevant" to the case.  5/4/21 Tr. at 50, 55, 57–58, 94–95, 98.  Indeed, her co-Defendant did pursue

12  the "investigatory failure" defense with the benefit of the LIS-Related Documents, saw fit to seek to

13  admit only one of those documents, and was still convicted of all twelve counts.  *See* 6/9 Tr. at 6741–

14  6743; ECF Nos. 1464, 1507.  Defendant cannot show prejudice at not having the documents in addition

15  to the substantive information during her trial.  Nor can she show that the eleven LIS-Related

16  Documents were relevant to a single element of her counts of conviction.

17         In sum, "[w]eighed as a whole, the evidence characterized as *Brady* material by the

18  Defendants—all of which is marginal, ambiguous, cumulative, inadmissible, unreliable, inculpatory,

19  irrelevant, or of negligible probative worth—falls far short of undermining [the Court's] confidence in

20  the verdicts."  *United States v. Sarno*, 73 F.3d 1470, 1506 (9th Cir. 1995).  To the extent Defendant

21  pursues her argument that these documents cataloguing the government's steps to obtain a working copy

22  of the LIS database are somehow related to the accuracy and reliability of Theranos test results

23  themselves, "Defendant[ ]—or [her] counsel[ ]—seem unable after years of legal battles to grasp the

24  essence of the Government's case against them" on the investor-related counts.  *Id.*  "The *Brady*

25  evidence—if such it were—tugs at loose threads hanging from the margins of the Government's case,

26  but in no way challenges the bulk of the evidence upon which the convictions rest."  *Id.* at 1506–07.

27  The Court should therefore deny Defendant's Rule 33 Motion re: LIS-Related Documents.[2]

28

---

[2] The government also incorporates by reference its harmlessness argument and its argument that

1

### C.  An Evidentiary Hearing Is Unnecessary

2    Because Defendant has not identified "new" substantive information that would be material if

3  she were to be re-tried, the Court should exercise its discretion to deny her request for an evidentiary

4  hearing, which is a thinly veiled attempt at a fishing expedition to question members of the prosecution

5  team about their litigation choices.  *See* ECF No. 1577 at 17–18.  "The decision on whether to hold a

6  hearing [on a new trial motion] is within the sound discretion of the trial court."  *United States v. Nace*,

7  561 F.2d 763, 772 (9th Cir. 1977) (finding no error in denial of Rule 33 motion based on newly

8  discovered evidence and assertion of *Brady* violation as well as denial of further evidentiary hearing);

9  *see also United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188–89 (9th Cir. 1992) (finding no abuse of

10 discretion in district court's holding that an evidentiary hearing was unnecessary).  Given that the Court

11 is intimately familiar with the proceedings at both severed trials—particularly as related to LIS—the

12 Court is "well qualified to rule on the motion for a new trial based solely on the written motions and the

13 evidence submitted" at trial.  *United States v. Slatten*, 865 F.3d 767, 791–92 (D.C. Cir. 2017).

14                                   **CONCLUSION**

15    For the reasons stated above, the government respectfully requests that the Court deny Defendant

16 Holmes' Rule 33 Motion re: LIS-Related Documents (ECF No. 1577)'s request for a new trial and

17 evidentiary hearing.

18

19 DATED:  September 21, 2022                    Respectfully submitted,

20                                              STEPHANIE M. HINDS
21                                              United States Attorney

22                                              __/s/ Kelly I. Volkar_____
23                                              JEFFREY B. SCHENK
                                                JOHN C. BOSTIC
24                                              ROBERT S. LEACH
                                                KELLY I. VOLKAR
25                                              Assistant United States Attorneys

26

27 Defendant's motion is untimely under *Eberhart* because it does not assert any newly discovered
   evidence, as described in more detail in its contemporaneously filed Opposition to Defendant Elizabeth
28 Holmes' Rule 33 Motion re: Government Argument in Balwani Trial, filed at ECF No. 1585.