STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS S. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    john.bostic@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 18-CR-00258 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL BASED ON ALLEGED STATEMENTS BY DR. ADAM ROSENDORFF (ECF NO. 1574) |
| v. | |
| ELIZABETH HOLMES, | |
| Defendant. | Date:  October 3, 2022<br>Time:  1:30 p.m.<br>Court:  Hon. Edward J. Davila |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

I.      Dr. Rosendorff's Actions and Sworn Testimony Show His Recognition of Serious
Problems at Theranos. ..............................................................................................................2

II.     Dr. Rosendorff Stands by His Trial Testimony and the Government's Presentation of
Evidence. ..................................................................................................................................4

ARGUMENT ............................................................................................................................5

I.      The Applicable Legal Standard Disfavors New Trials. ...................................................5

II.     The Purported New Evidence Does Not Show Government Misconduct. .......................5

III.    The Purported New Evidence Is Cumulative. .................................................................6

IV.     At Best, the Purported New Evidence Is Merely Impeaching. ........................................9

V.      The Purported New Evidence Is Not Material and Would Not Result in an Acquittal. ................10

VI.     Defendant Has Not Shown a Need for an Evidentiary Hearing ....................................15

CONCLUSION .......................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brady v. Maryland,*
    373 U.S. 83 (1963) ................................................................................................................ 14

*Kyles v. Whitely,*
    514 U.S. 419 (1995) ......................................................................................................... 14, 15

*Lindsey v. United States,*
    368 F.2d 633 (9th Cir. 1966) .................................................................................... 1, 11, 12

*U.S. ex rel. Rice v. Vincent,*
    491 F.2d 1326 (2d Cir. 1974) ............................................................................................. 12

*United States v. Brashier,*
    548 F.2d 1315 (9th Cir. 1976) .............................................................................................. 9

*United States v. Butler,*
    567 F.2d 885 (9th Cir. 1978) ................................................................................................ 6

*United States v. Call,*
    73 F. App'x 268 (9th Cir. 2003) ......................................................................................... 10

*United States v. Cervantes,*
    542 F.2d 773 (9th Cir. 1976) .............................................................................................. 10

*United States v. Clay,*
    476 F.2d 1211 (9th Cir. 1973) ............................................................................................ 16

*United States v. Connolly,*
    504 F.3d 206 (1st Cir. 2007) ........................................................................................ passim

*United States v. Davis,*
    960 F.2d 820 (9th Cir. 1992) .............................................................................................. 10

*United States v. Endicott,*
    869 F.2d 452 (9th Cir. 1989) .............................................................................................. 12

*United States v. Felix,*
    663 F. App'x 557 (9th Cir. 2016) ....................................................................................... 15

*United States v. Glantz,*
    884 F.2d 1483 (1st Cir. 1989) .............................................................................................. 9

*United States v. Harrington*,
    410 F.3d 598 (9th Cir. 2005) .................................................................................. 5, 6, 12

*United States v. Harris*,
    534 F.2d 1371 (9th Cir. 1976) ...................................................................................... 10

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ..................................................................................... 7, 8

*United States v. Howell*,
    231 F.3d 615 (9th Cir. 2000) ......................................................................................... 15

*United States v. Johnson*,
    327 U.S. 106 (1946) ........................................................................................................ 17

*United States v. Kearney*,
    682 F.2d 214 (D.C. Cir. 1982) ....................................................................................... 17

*United States v. Kelly*,
    790 F.2d 130 (D.C. Cir. 1986) ....................................................................................... 15

*United States v. King*,
    660 F.3d 1071 (9th Cir. 2011) ......................................................................................... 5

*United States v. Krasney*,
    607 F.2d 840 (9th Cir. 1979) ......................................................................................... 10

*United States v. Kulczyk*,
    931 F.2d 542 (9th Cir. 1991) ........................................................................................... 9

*United States v. Lespier*,
    266 F. App'x 5 (2d Cir. 2008) ....................................................................................... 12

*United States v. Lockett*,
    919 F.2d 585 (9th Cir. 1990) ........................................................................................... 7

*United States v. Matta-Ballesteros*,
    213 F.3d 644 (9th Cir. 2000) ...................................................................................... 7, 11

*United States v. Nace*,
    561 F.2d 763 (9th Cir. 1977) ..................................................................................... 12, 16

*United States v. Navarro-Garcia*,
    926 F.2d 818 (9th Cir. 1991) ......................................................................................... 17

*United States v. Pimentel*,
    654 F.2d 538 (9th Cir. 1981) ........................................................................................... 5

*United States v. Pointer*,
  17 F.3d 1070 (7th Cir. 1994) .................................................................................... 11

*United States v. Santiago*,
  837 F.2d 1545 (11th Cir. 1988) .................................................................................. 7

*United States v. Showalter*,
  569 F.3d 1150 (9th Cir. 2009) .................................................................................... 5

*United States v. Steel*,
  759 F.2d 706 (9th Cir. 1985) ...................................................................................... 5

*United States v. Tamez*,
  44 F. App'x 790 (9th Cir. 2002) ................................................................................. 7

*United States v. Thompson*,
  493 F.2d 305 (9th Cir. 1974) .................................................................................... 15

*United States v. Vozzella*,
  124 F.3d 389 (2d Cir. 1997)........................................................................................ 6

*United States v. Walgren*,
  885 F.2d 1417 (9th Cir. 1989) .................................................................................... 6

# INTRODUCTION

The defense in this case has always had trouble making up its mind about Dr. Adam Rosendorff. At various times throughout the trial, they have portrayed him as (1) one of several scientists whose feedback gave Defendant reason to be confident in Theranos technology, (2) a rogue employee who misappropriated sensitive information, (3) the true culprit responsible for the problems with Theranos's testing, and (4) the single most crucial witness in the government's case against Defendant. Now, months after Defendant's conviction, the defense has assigned Dr. Rosendorff a new role: Defendant's ticket to a new trial.

Really, though, Dr. Rosendorff is none of these things. Defendant's new-trial motion is based on a conversation that took place earlier this summer between Dr. Rosendorff and William Evans, Defendant's partner. Defendant argues that Dr. Rosendorff's purported statements to Mr. Evans raise concerns about the veracity of his testimony as well as the government's conduct. Dr. Rosendorff has submitted a sworn declaration, filed herewith, that addresses those concerns. In that declaration, Dr. Rosendorff avers that he testified truthfully at trial, that he stands by his testimony in every respect, that he received instructions from the government only to testify honestly, and that he does not believe the government made misrepresentations about Defendants' conduct. These unequivocal, sworn assertions directly from the witness obviate the need to parse the drawn-from-memory collection of ambiguous, unsworn statements submitted by Defendant's partner.

On these facts, it is impossible for Defendant to carry her burden to show that newly discovered evidence merits a new trial or an evidentiary hearing. If Dr. Rosendorff's alleged statements to Mr. Evans could be interpreted to call into question the truth of his testimony or the accuracy of the government's presentation, his declaration repudiates any such interpretation. Even if Dr. Rosendorff had actually recanted his testimony—which he did not—Defendant's motion for a new trial would still fail under Ninth Circuit law holding that repudiated recantations do not warrant new trials. *See Lindsey v. United States*, 368 F.2d 633, 635-36 (9th Cir. 1966). The so-called "new evidence" underlying Defendant's motion is cumulative of testimony the jury already heard. Because it does not qualify as new substantive evidence, its only use at a retrial would be for impeachment, which is an insufficient

basis for a new trial.  Most important, Defendant's proffered evidence is not material to the investor-related charges on which she was convicted, and would not result in an acquittal if presented on retrial. Finally, because the case law encourages the Court to rely on its deep knowledge of the evidence in this case as well as Dr. Rosendorff's declaration, there is no need to depart from the typical practice of deciding new-trial motions without an evidentiary hearing.  *See United States v. Connolly*, 504 F.3d 206, 219-20 (1st Cir. 2007) (New trial motions "ordinarily are decided on the basis of affidavits" except where the defendant makes "a threshold showing sufficient to warrant such a hearing.").

For these reasons, as discussed in more detail below, the Court should deny Defendant's motion in its entirety.[1]

## BACKGROUND

The factual and procedural background of this case are well-known to the Court.  The government offers the following summary of facts relevant to this motion.

**I.    Dr. Rosendorff's Actions and Sworn Testimony Show His Recognition of Serious Problems at Theranos.**

Dr. Rosendorff was clinical lab director at Theranos from mid-2013 through late 2014.  In that capacity, he witnessed Theranos's blood testing operation firsthand and saw a picture that was very different from the one Defendants painted for investors and patients.  His actions throughout his time at Theranos, like his trial testimony, make clear that he has always understood the seriousness of the problems he saw at Defendant's company.

Relatively early in Dr. Rosendorff's tenure as lab director, as Theranos was heading toward the commercial launch of its blood testing services, Dr. Rosendorff saw that the pace of assay development work at the company was "extremely rushed and hurried" and he felt that more time was needed to thoroughly investigate the company's technology.  Holmes 9/24/21 Transcript at 1722-1725.  Just before the launch, Dr. Rosendorff reached out to Defendant herself to "raise alarm bells" about assays that he "didn't feel were ready for launch."  *Id.* at 1725-1729; TX 1049.  At trial, he testified that even before

---

[1] The government incorporates by reference the introduction, procedural background, and legal standard sections of its contemporaneously filed Opposition to Defendant Elizabeth Holmes' Rule 33 Motion re: Government Argument in Balwani Trial, filed at ECF No. 1585.

the launch, Theranos's technology was producing questionable results for certain tests, which "raised alarms" for him as lab director and required more investigation.  *Id.*

Once Theranos started offering tests to patients, Dr. Rosendorff continued to observe accuracy problems with one Theranos assay after another.  In mid-2014, Theranos's HCG assay—used to monitor pregnancy status—was performing so poorly in patient testing that Dr. Rosendorff ordered it moved to standard commercial analyzers, forbidding the lab from running it on the Edison device.  Holmes 9/24/21 Tr. at 1785-1792.

Dr. Rosendorff's concerns at that time were not limited to the performance of the technology but apparently included the integrity of Theranos management.  Dr. Rosendorff felt compelled to take steps to preserve evidence of misconduct at Theranos and protect himself in the event of a future government investigation.  *Id.* at 1834-1835.  Thus, in 2014, he began regularly forwarding internal Theranos emails he viewed as incriminating to his personal email account.  *Id.*  At trial, the government introduced exhibits proving that Dr. Rosendorff engaged in this practice.  *See, e.g.*, TX 5397.  Dr. Rosendorff testified that he did this in violation of his employment agreement because he wanted to get the word out about the problems at Theranos and because he was not confident the company would preserve these records in the event of a government investigation.  Holmes 9/24/21 Tr. at 1834-1835.

In late 2014, Dr. Rosendorff had a tense email exchange with Christian Holmes, in which Dr. Rosendorff refused to speak with a doctor to defend Theranos test results he knew to be inaccurate.  Holmes 9/28/21 Tr. at 1940-1946; TX 4323, 4314.  Dr. Rosendorff told Defendant's brother during that conversation that he wanted "to offer reliable and robust assays, not to spin," and admonished that "honesty and transparency to the patient is essential."  *Id.*

Dr. Rosendorff decided to leave Theranos due to the troubling things he witnessed there.  At trial, he testified that he "felt that it was a question of [his] integrity as a physician not to remain there and to continue [] endorsing results that [he] essentially didn't have faith in."  Holmes 10/5/21 Tr. at 2733.  This matches what he told Defendant Holmes in writing at the time:  that he was feeling "really uncomfortable with what [was] happening" in the company and that he felt "pressured to vouch for results" in which he was not confident.  Holmes 9/28/21 Tr. at 1948-1949; TX 4330.  Around the time of

his departure, Dr. Rosendorff was exploring the possibility of bringing a qui tam whistleblower lawsuit against Theranos, in order to "right the wrongs, basically, to alert the public of what was going on at Theranos."  Holmes 10/6/21 Tr. at 2851-2852.

In April 2020, more than six months after finishing his testimony in the Holmes trial, Dr. Rosendorff took the stand to testify in the case against her codefendant Ramesh Balwani.  The Court will recall that Dr. Rosendorff's testimony in that second trial was substantially the same as his testimony in the Holmes matter.[2]

## II.   Dr. Rosendorff Stands by His Trial Testimony and the Government's Presentation of Evidence.

In response to Defendant's motion, Dr. Rosendorff has provided a sworn declaration.  *See* Exhibit 1, Declaration of Adam Rosendorff, M.D. (hereinafter, "Rosendorff Decl.").  In his declaration, he addresses the entirety of his lengthy testimony during the trials of both Defendants.  *Id*. ¶¶ 1&2.  Reflecting on that testimony, his declaration confirms that he "answered every question put to [him] completely, accurately, and truthfully to the best of [his] ability."  *Id*. ¶ 3.  He further states that nothing he has learned since testifying has changed his recollection of what he witnessed at Theranos, and that he "stands by [his] testimony" at both trials "in every respect."  *Id*.

Dr. Rosendorff's declaration also discusses his interactions with the government in connection with these trials, and the government's presentation of evidence from his standpoint.  On those topics, Dr. Rosendorff avers that the "only instruction" he received from the government in this case was "to tell the truth about the events [he] witnessed."  *Id*. ¶ 4.  This is consistent with his testimony during trial.  Holmes 9/28/21 Tr. at 1970-1972 (testifying that the government never pressured him to give a specific answer but only ever instructed him to tell the truth); Holmes 10/5/21 Tr. at 2721-2722 (confirming on redirect that he met voluntarily with the government because he wanted the story to come out and justice to be served; confirming that the government never told him how to testify).  Looking back on the many

---

[2]  *See, e.g.*, Balwani 4/20/22 Tr. at 3256-3257 (testimony that validation work at Theranos leading up to the launch was "extremely rushed and hurried"); *id.* at 3263-3269 (testimony regarding TX 1049 and Dr. Rosendorff's concerns just before launch); *id.* at 3327-3329 (testimony regarding Dr. Rosendorff's decision to halt HCG testing on the Theranos Edison device); *id.* at 3381-3386 (testimony regarding TX 4323 and Dr. Rosendorff's refusal to defend inaccurate test results); *id.* at 3390-3391 (testimony regarding Dr. Rosendorff feeling uncomfortable at Theranos and his decision to resign).

days he spent on the witness stand, he states that he has "no reason to believe that the government misrepresented or otherwise created a misimpression about Ms. Holmes' or Mr. Balwani's conduct at Theranos."  Rosendorff Decl. ¶ 4.

Finally, Dr. Rosendorff offers insight into what likely motivated his attempt to contact Defendant after the trials, stating that he feels compassion for Holmes and Balwani, and even more so for their families who will be affected by any punishment that results from Defendants' conduct.  *Id*. ¶ 5.

## ARGUMENT

### I.      The Applicable Legal Standard Disfavors New Trials.

The legal standard governing motions for new trial in this context is not favorable to Defendant's motion.  For a more thorough discussion of the applicable standard, the government refers the Court to its Opposition to Defendant's Motion for New Trial Based on Arguments the Government Made in Co-Defendant Balwani's Trial, filed concurrently.  Here, the government limits its comments to the critical elements that Defendant needed to show to obtain the relief she seeks.  To prevail on a motion for a new trial based on alleged newly discovered evidence, a defendant must satisfy a five-factor test and show: **(1)** that the evidence is newly discovered; **(2)** that the defendant was diligent in seeking the evidence; **(3)** that the evidence is material to the issues at trial; **(4)** that the evidence is not cumulative or merely impeaching; and **(5)** that the evidence indicates the defendant would probably be acquitted in a new trial.  *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (citation omitted).  "This five-prong test is difficult to meet."  *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985).  A motion for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'"  *United States v. Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009) (quoting *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)).  On appeal, a district court's denial of a new trial is reviewed for an abuse of discretion.  *United States v. King*, 660 F.3d 1071, 1076 (9th Cir. 2011).

### II.     The Purported New Evidence Does Not Show Government Misconduct.

According to Defendant, Dr. Rosendorff's purported statements raise the possibility of government misconduct.  Mot. at 10.  If Defendant could substantiate that claim and show misconduct—for instance, the knowing use of perjured testimony—that would trigger a different standard under the

fifth *Harrington* factor analyzing the likely effect on the outcome of the trial.  *See United States v. Walgren*, 885 F.2d 1417, 1427-28 (9th Cir. 1989) (laying out standard in case of knowing use of perjury).  Defendant concedes, however, that Dr. Rosendorff's statements as relayed by Mr. Evans "are not sufficiently precise for Ms. Holmes to accuse the government of misconduct at this time."  Mot. at 10.  Critically, Dr. Rosendorff's declaration disclaims any allegation of government misconduct, expressly stating that the government did not introduce false testimony through him at all—much less knowingly.  (Rosendorff Decl. ¶¶ 3&4).  These facts are far afield from *Walgren* and similar misconduct cases cited by Defendant.

This case does not resemble *United States v. Vozzella*, where the government, despite knowing that certain records were fictitious, introduced them through a key witness and allowed the witness to give unqualified testimony about their significance.  *United States v. Vozzella*, 124 F.3d 389, 393 (2d Cir. 1997).  Nor is this a case like *United States v. Butler*, where prosecutors were found to have knowingly "acquiesced in and corroborat[ed]" "egregious" false testimony on the part of a key witness while concealing benefits promised to that witness.  *United States v. Butler*, 567 F.2d 885, 887-91 (9th Cir. 1978).  Defendant's reliance on these cases is therefore misplaced.

Because Defendant cannot show—or even allege—government misconduct, she is subject to the rigorous standard for new-trial motions set forth in *Harrington* and discussed above.  Under that standard, Defendant's motion fails for the following reasons.

### III.   The Purported New Evidence Is Cumulative.

With no evidence suggesting government misconduct, Defendant is unable to satisfy the five-part test outlined in *Harrington*, and her motion fails.  Defendant's showing is particularly deficient as to the third, fourth, and fifth *Harrington* factors, which focus on whether the new evidence is material, not cumulative or merely impeaching, and would probably lead to an acquittal.  *Harrington*, 410 F.3d at 601.  This brief will devote the most attention to those factors, but the government does not concede that Defendant can satisfy the first two factors either, for the reasons explained below.

With respect to the first factor, in cases where a witness recants trial testimony but later withdraws their recantation, courts have expressed doubts about whether there actually is any "new

evidence" to support a Rule 33 motion, since that witness would offer the same version of events at retrial as they did during their original testimony. *See United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988). Here, there was no recantation, and Dr. Rosendorff's declaration makes clear that his testimony on retrial would match his earlier testimony. Thus, there is no new evidence to form the basis of Defendant's Rule 33 motion. *See also United States v. Matta-Ballesteros*, 213 F.3d 644, *1 (9th Cir. 2000) (unpublished) (observing that a witness's repudiations of his recantation, "by themselves, probably doom [the defendant's] claim of newly discovered evidence.").

With respect to the second *Harrington* factor, the Court should find Defendant was not diligent in seeking of the so-called new evidence underlying her motion. For example, Defendant claims that Dr. Rosendorff told Mr. Evans that people at Theranos were doing their best and working hard to do something good and meaningful. Mot. at 1. To the extent Dr. Rosendorff did not articulate that precise thought during his trial testimony, what prevented Defendant from eliciting it?[3] As the following examples show, defense counsel obtained equivalent statements from Dr. Rosendorff and other former Theranos employee witnesses at trial, rendering this purported new evidence cumulative and highlighting Defendant's lack of diligence.

- Dr. Rosendorff testified that he joined Theranos because he "really bought into the idea of laboratory testing being done from a very small pinprick sample and thought that would be advantageous to patients." Holmes 9/24/21 Tr. at 1709. He was also "impressed by the earnestness and the dedication" that he sensed in the Theranos personnel he met, and thought the company had great potential. *Id.*

- By late 2014, the number and severity of problems at Theranos "reached a crescendo" in Dr. Rosendorff's view, despite making his "best efforts to improve assays" and "to work [his] hardest with the company." Holmes 9/28/21 Tr. at 1939.

- Discussing a time in November 2013 when Dr. Rosendorff was working on a Sunday,

---

[3] Courts routinely deny new-trial motions based on newly discovered evidence where the witness was available, and even subject to cross-examination, but the defendant did not elicit the relevant information in the precise form. *See United States v. Hinkson*, 585 F.3d 1247, 1257-58, 1264-65 (9th Cir. 2009) (en banc); *see also United States v. Tamez*, 44 F. App'x 790, 791 (9th Cir. 2002); *United States v. Lockett*, 919 F.2d 585, 591-92 (9th Cir. 1990).

defense counsel observed that Dr. Rosendorff was "working hard," and he responded that he was "trying to get the lab to come into compliance" with regulations, raising issues and making sure people knew they had to be addressed.  Holmes 9/29/21 Tr. at 2156; *see also id*. at 2160 (defense counsel emphasizing that Dr. Rosendorff had been working hard).

- When Theranos encountered serious problems with its HCG test, Dr. Rosendorff agreed with defense counsel on cross that "[e]veryone was working hard to get that study done," in order to investigate the issue.  Holmes 10/1/21 Tr. at 2510.

- Similarly, when problems arose with the company's lipids test, Dr. Rosendorff agreed with defense counsel that "everyone… [was] working really hard to figure out what the issue [was]."  Holmes 10/5/21 Tr. at 2608.

- In connection with a Theranos study examining variability and bias in third-party analyzers, defense counsel highlighted Dr. Rosendorff's message thanking everyone at Theranos for looking into the issue and Dr. Rosendorff agreed with defense counsel that this represented "a good team collaborative effort."  *Id*. at 2617-2618.

Other former Theranos employees testified similarly:

- Erika Cheung testified that she was excited about working for Theranos based on the promise of its technology to provide patients with accessible, affordable, and less painful medical testing.  Defendant's charisma and "strong sense of conviction" also increased Ms. Cheung's positive feelings about the company.  Holmes 9/14/21 Tr. at 793-794.

- Surekha Gangakhedkar agreed with defense counsel that, during the early period of the company, "everyone was working hard," including herself and Defendant Holmes, and that they were "making progress" and "accomplishing things along the way."  Holmes 9/21/21 Tr. at 1263; *see also id*. at 1279-1280 (discussing "hard work" and success in connection with assay development work by a team at Theranos).

- So Han Spivey testified that she and Defendant Holmes worked hard on cash management at Theranos and that Defendant cared a lot about ensuring the company made payroll.  Holmes 9/41/21 Tr. at 745-746.

- Daniel Edlin testified, in connection with Theranos's potential partnership with the military, that he worked hard in good faith on the project because he thought it would benefit Theranos and members of the military, and that he observed Defendant "working very hard every day" in a "hectic environment."  Holmes 10/20/21 Tr. at 4156-4158.

Nothing prevented the defense from eliciting even more testimony from Dr. Rosendorff and other former Theranos employees about whether people at the company were working hard or whether problems with the tests were large or small.

To the extent the defense seeks a retrial to draw out more testimony from Dr. Rosendorff in this same vein, that evidence is plainly cumulative of what the jury already heard.  To the extent the defense seeks to impeach Dr. Rosendorff with his post-trial statements, that would be equally cumulative in light of the extensive, four-day cross-examination of Dr. Rosendorff at trial.  *See United States v. Glantz*, 884 F.2d 1483, 1486 (1st Cir. 1989) (affirming denial of new trial where the defendants had attacked the relevant witness's testimony and credibility "comprehensively" and "in all directions," noting the chaos that would ensue "if defendants had an unlimited number of opportunities to attack the credibility of the prosecution's witnesses").

## IV.    At Best, the Purported New Evidence Is Merely Impeaching.

It is self-evident that a request for a new trial based on newly discovered evidence generally must be based on *new substantive evidence*.  Defendant's motion is missing that key ingredient.  At most, Dr. Rosendorff's unverified statements to Mr. Evans might be used for impeachment were the case to be tried again.  The defense would undoubtedly seek to confront Dr. Rosendorff with his post-trial statements in an effort to undermine his credibility.  But as the Ninth Circuit has repeatedly held, "evidence that would merely impeach a witness cannot support a motion for a new trial," even where a defendant argues that such evidence would "seriously impeach" the testimony of a key witness.  *United States v. Kulczyk*, 931 F.2d 542, 549 (9th Cir. 1991); *see also United States v. Brashier*, 548 F.2d 1315, 1327 (9th Cir. 1976) ("Evidence which may impeach a government witness, although discovered after trial, is not enough without a greater showing that a new trial is required under the standard articulated

in *Cervantes*.").[4]  This element of the *Harrington* test would present an obstacle for Defendant even under the most aggressive view of Dr. Rosendorff's statements treating them as a recantation of his trial testimony.  *See United States v. Call*, 73 F. App'x 268, 274 (9th Cir. 2003) ("A repudiated recantation is mere impeachment evidence that may not be used as substantive evidence at a new trial.").

The bar against new trials based on mere impeachment evidence applies with extra force in cases where the conviction was supported by strong evidence unrelated to the witness in question, that is, where the conviction did not rise and fall with the testimony and credibility of that one witness.  *See United States v. Harris*, 534 F.2d 1371, 1374 (9th Cir. 1976) (affirming denial of new trial where new evidence "went merely to the impeachment or lack of credit of a witness who testified against the appellant, which ordinarily is not sufficient," particularly in cases with otherwise strong evidence); *Call*, 73 F. App'x at 274 ("Newly discovered impeachment evidence can form the basis of a new trial motion only if the testimony it seeks to impeach was 'uncorroborated and provided the only evidence of an essential element of the government's case.'") (quoting *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992)).  As discussed in the following section, Dr. Rosendorff's testimony was heavily corroborated by documentary evidence and other witness testimony, and there was extensive evidence of Defendant's criminal conduct.

## V.   The Purported New Evidence Is Not Material and Would Not Result in an Acquittal.

Defendant submits that the materiality and likelihood-of-acquittal prongs of the five-part test are closely related and are essentially "two means of measuring the same thing."  Mot. at 10 (quoting *United States v. Krasney*, 607 F.2d 840, 845 n.3 (9th Cir. 1979).  At their core, both of these factors assess the impact of newly discovered evidence on the outcome of a hypothetical retrial based on how effectively that evidence answers or negates the elements of the charged offenses and the proof at trial that led to a conviction.  The government agrees that it makes sense to consider these two factors together.  Indeed, Defendant's proffered new evidence fails both prongs for the same reasons.

/ /

---

[4]  *See United States v. Cervantes*, 542 F.2d 773, 779 (9th Cir. 1976) (applying the established five-factor test for a new trial under Rule 33).

1    As an initial matter, it is worth noting that Defendant's motion quotes extensively from an email

2  from Mr. Evans describing an interaction between him and Dr. Rosendorff.  Though Mr. Evans may

3  have done his best to capture what Dr. Rosendorff said, there seems to be no recording or transcript of

4  that conversation, and the Court should not treat Mr. Evans's account as equivalent to a sworn affidavit

5  from Dr. Rosendorff himself.  In *United States v. Pointer*, the Seventh Circuit affirmed the denial of

6  new-trial motion based on a letter from a witness recanting grand jury testimony, noting among other

7  things that the letter was not a sworn affidavit, was written in suspect circumstances to a former

8  boyfriend now in prison, and contradicted the witness's prior sworn testimony.  *United States v. Pointer*,

9  17 F.3d 1070, 1074 (7th Cir. 1994).  Similar factors should cause this Court to discount the report of Dr.

10  Rosendorff's statements offered by Defendant's partner—especially because Dr. Rosendorff has now

11  submitted a sworn declaration addressing these issues.

12    Even if Dr. Rosendorff's statements to Mr. Evans could be interpreted as a recantation of his trial

13  testimony—which they are not—a new trial still would not be warranted.  It is well-established that

14  courts view post-trial recantations with skepticism.  *United States v. Matta-Ballesteros*, 213 F.3d 644, *1

15  (9th Cir. 2000) (unpublished); *United States v. Connolly*, 504 F.3d 206 (1st Cir. 2007) (same).  That

16  skepticism is doubly appropriate here, since the unverified statements at issue are too ambiguous to

17  qualify as a recantation.

18    If Dr. Rosendorff had unambiguously recanted his testimony, his recent sworn statements would

19  cancel out the effect of that recantation.  The Ninth Circuit has repeatedly held that repudiated

20  recantations do not merit new trials.  For example, in *Lindsey v. United States*, a fraud victim testified

21  against the defendant, then made an affidavit recanting her trial testimony.  *Lindsey v. United States*, 368

22  F.2d 633, 635 (9th Cir. 1966).  Shortly thereafter, the victim made a second affidavit recanting the first

23  affidavit and reaffirming her trial testimony.  *Id.*  The victim's third affidavit was another reversal,

24  stating her belief that the trial jury had been deprived of the full picture and that the defendant should

25  have been acquitted.  *Id.*  With the victim's *fourth* and final affidavit, she confirmed that her trial

26  testimony was true and that she did not wish to change one word of it.  *Id.*  Reviewing that tortuous

27  record, the Ninth Circuit affirmed the district court's denial of a new trial, viewing the victim's final

28

U.S. OPP. TO NEW TRIAL MOT. RE: ROSENDORFF
18-CR-00258 EJD

affidavit as controlling. *Id.* at 636.  That court explained that, while a recantation can be substantial and material evidence in some circumstances, "where the recantation has itself been repudiated," "the recantation becomes merely impeaching." *Id.*; *see also United States v. Lespier*, 266 F. App'x 5, *7 (2d Cir. 2008) ("[A] district court should give little evidentiary weight to a recantation affidavit that has since been repudiated.").  Here, because Dr. Rosendorff's declaration repudiates any interpretation of his earlier statements as a recantation, his statements provide no basis for a new trial.

The Ninth Circuit also has declined to order new trials in cases where third parties made affidavits purporting to contain statements from trial witnesses, as is the case here.  *See, e.g.*, *United States v. Nace*, 561 F.2d 763 (9th Cir. 1977).  In *Nace*, the defendant moved for a new trial based on newly discovered evidence consisting of affidavits relaying statements made to the affiants by a key witness to the effect that the witness had been "out to get" the defendant by means of the prosecution. *Id.* at 772.  The government responded with the witness's own affidavit in which he denied making those statements. *Id.*  On that record, the Ninth Circuit held it was appropriate for the trial court to rely on the witness's affidavit, which rendered evidence of his other alleged statements mere impeachment. *Id.*  The Court should follow the sound reasoning of *Nace* and deny Defendant's motion in reliance on Dr. Rosendorff's declaration.[5]

There is another reason Defendant cannot show materiality or a probable acquittal from new evidence relating to Dr. Rosendorff:  her conviction did not hinge on his testimony.  The Ninth Circuit has held that, even in a case where the government knowingly uses false testimony, a new trial may not be warranted if the government "presented substantial evidence against [the defendant] independent of [the suspect witness's] courtroom testimony" and if there was sufficient corroboration for that testimony.  *United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989); *see also Harrington*, 410 F.3d at 601 (evidence of inconsistencies in police officer testimony insufficient for new trial in light of "significant evidence in the record implicating" the defendant in the charged conduct); *Connolly*, 504

---

[5]  Besides his declaration affirming that he told the truth at Defendant's trial, the fact that Dr. Rosendorff testified consistently in two trials months apart should increase confidence in the truth of his testimony. *See U.S. ex rel. Rice v. Vincent*, 491 F.2d 1326, 1332 (2d Cir. 1974) (reversing grant of new trial in case where government witness recanted trial testimony, noting that recanting witness had testified consistently in multiple trials before and after recantation).

U.S. OPP. TO NEW TRIAL MOT. RE: ROSENDORFF
18-CR-00258 EJD

1   F.3d at 214 (recantation insufficient for new trial where other witnesses corroborated aspects of witness

2   testimony and testimony had "substantial circumstantial corroboration").   That logic applies here.

3          First, Dr. Rosendorff's views about the problems with Theranos's technology and practices were

4   unmistakable from the actions he took as lab director.   He would not have sought to delay the launch,

5   repeatedly raised the alarm to management, halted HCG testing on the Edison, refused to defend

6   questionable results, and quit his job—all while preserving potentially incriminating evidence in case of

7   a future investigation—if he did not recognize that the situation at Theranos was dire.

8          Moreover, the vast majority of Dr. Rosendorff's testimony was corroborated by documentary

9   evidence whose authenticity was undisputed.   Over the course of Dr. Rosendorff's examinations, the

10  government introduced more than one hundred trial exhibits through him.   *See generally* Holmes

11  9/24/21 Tr., 9/28/21 Tr., 10/5/21 Tr. & 10/6/21 Tr.   The Court will recall that those exhibits consisted of

12  internal Theranos records documenting the performance of Theranos's testing systems as well as emails

13  between Theranos employees discussing problems encountered during the operation of the Theranos

14  clinical lab.   Those records provided the foundation of Dr. Rosendorff's testimony.   His accompanying

15  explanations helped the jurors to appreciate the significance of those documents and the underlying

16  events.   Any assault on Dr. Rosendorff's testimony or credibility based on his post-trial statements

17  would leave all of that incriminating documentary evidence intact, making a different outcome unlikely.

18         Dr. Rosendorff's testimony about problems with Theranos's technology also was corroborated

19  by similar testimony from other former Theranos employees, including Surekha Gangakhedkar and

20  Erika Cheung.   In particular, there was significant overlap between Dr. Rosendorff's and Ms. Cheung's

21  testimony.   *Compare, e.g.*, Holmes 9/15/21 Tr. at 961-969 *with* Holmes 9/24/21 Tr. at 1756-1759 (Dr.

22  Rosendorff and Ms. Cheung reviewing and making similar comments on TX 1633 documenting

23  monthly quality control failure rates for Theranos's Edison); *compare* Holmes 9/15/21 Tr. at 942-952

24  *with* 9/28/21 Tr. at 1914-1917 (Dr. Rosendorff and Ms. Cheung providing similar testimony upon

25  review of TX 1548 showing Edison proficiency testing sample results).   Because multiple Theranos

26  employees testified about the negative experiences they had with Theranos's technology, there is no

27  reason to believe that undermining Dr. Rosendorff's testimony would cause a jury to reach different

28

1   conclusions following a retrial.  After all, Dr. Rosendorff was just one of thirty-two witnesses (including

2   the Defendant herself) in a four-month trial with over 900 exhibits.

3          Defendant's claim that Dr. Rosendorff's statements would probably result in an acquittal at

4   retrial is especially dubious given that Defendant was convicted only on counts relating to investor fraud

5   and was acquitted on the counts that related to her scheme to defraud patients.  As lab director, Dr.

6   Rosendorff testified about problems with the accuracy and reliability of Theranos's blood tests—an

7   issue that was at the heart of the fraud on patients.  *See* Third Superseding Indictment (ECF No. 469)

8   ¶ 16.  In contrast, the fraud on investors involved misrepresentations on a wide range of topics beyond

9   the accuracy of Theranos tests, including:  (1) Theranos's reliance on third-party devices, (2) whether

10  Theranos's technology had been validated by pharmaceutical companies, (3) the current and future

11  status of Theranos's partnership with Walgreens, (4) whether Theranos's technology was in use by the

12  military, (5) the regulatory status of Theranos's technology, and (6) the overall financial health of the

13  company.  *See id.* ¶ 12.  Dr. Rosendorff had minimal, if any, personal knowledge regarding most of

14  these topics.  Nor was he in a position to testify about the false or misleading representations Defendants

15  made to investor victims, as he was not present for those conversations.  In sum, Dr. Rosendorff's

16  testimony was more relevant to the counts on which Defendant was acquitted; that makes it difficult to

17  see how alleged out-of-court statements undercutting his testimony would have led to a different result

18  on the investor counts.

19         Defendant next argues that Dr. Rosendorff's statements are material because they cast doubt on

20  the government's investigation.  But Defendant's case law on this point is inapposite.  For example,

21  *Kyles v. Whitley* did not involve a new trial motion evaluated under Rule 33, but rather a habeas corpus

22  petition based on the prosecution's failure to disclose specific evidence favorable to the defense in

23  violation of its duties under *Brady v. Maryland*, 373 U.S. 83 (1963).  *Kyles v. Whitely*, 514 U.S. 419,

24  421-22 (1995).  The standard used in that case—under which withheld information is deemed material if

25  its disclosure would create a "reasonable probability" of a different result—does not apply here.  *See*, *id.*

26  at 434.  Moreover, in contrast to cases cited by Defendant, Dr. Rosendorff's post-trial statements have

27  no bearing on the "reliability," "thoroughness," or "good faith" of the government's investigation here—

28

U.S. OPP. TO NEW TRIAL MOT. RE: ROSENDORFF
18-CR-00258 EJD

1  especially when viewed in the context of his declaration.  *See id.* at 446; *United States v. Howell*, 231

2  F.3d 615, 625 (9th Cir. 2000) (holding that *Brady* violation did not warrant mistrial).

3       Finally, a significant portion of the "new evidence" identified by Defendant would not be

4  admissible and thus cannot support her request for a new trial.  For example, any statements by Dr.

5  Rosendorff regarding the intent or good faith of workers at Theranos would be entirely speculative and

6  thus inadmissible.  *See United States v. Felix*, 663 F. App'x 557, 559 (9th Cir. 2016) (no new trial

7  warranted where new evidence included witness's subjective beliefs about defendant's motives, which

8  would have been "inadmissible as speculation").

9       Accordingly, Defendant is unable to show that new evidence derived from Dr. Rosendorff's

10  purported statements meets the standard for a new trial under Rule 33.[6]

11  **VI.  Defendant Has Not Shown a Need for an Evidentiary Hearing**

12       As discussed above, the facts of this scenario fall well short of meeting the threshold that would

13  warrant a new trial.  The Court should deny Defendant's new-trial motion without holding an

14  evidentiary hearing.  The decision whether or not to conduct an evidentiary hearing on a motion for a

15  new trial is a matter of discretion.  *United States v. Thompson*, 493 F.2d 305, 310 (9th Cir. 1974).

16  Circuit courts note that "evidentiary hearings on new trial motions in criminal cases are the exception

17  rather than the rule," as such motions "ordinarily are decided on the basis of affidavits."  *United States v.*

18  *Connolly*, 504 F.3d 206, 220 (1st Cir. 2007); *see also United States v. Kelly*, 790 F.2d 130, 134 (D.C.

19  Cir. 1986) ("A motion for a new trial can ordinarily be decided on the basis of affidavits without an

20  evidentiary hearing.").  In deciding whether to make an exception and convene a hearing, a district court

21  engages in a "practical, commonsense evaluation" focusing on whether the defendant "made a threshold

22  showing sufficient to warrant such a hearing."  *Connolly*, 504 F.3d at 219.  In this case, Defendant is

23  unable to make that showing because the statements Dr. Rosendorff allegedly made to Mr. Evans are

24  unsworn and too vague to merit further inquiry.

25

26  ─────────────────────────

[6] The government also incorporates by reference both its harmlessness argument and its argument that

27  Defendant's motion is untimely under *Eberhart* because it does not assert any newly discovered
evidence, as described in more detail in its contemporaneously filed Opposition to Defendant Elizabeth

28  Holmes' Rule 33 Motion re: Government Argument in Balwani Trial, filed at ECF No. 1585.

U.S. OPP. TO NEW TRIAL MOT. RE: ROSENDORFF
18-CR-00258 EJD

1    Defendant's fallback position is that the Court should hold an evidentiary hearing to "ascertain

2 the meaning" of Dr. Rosendorff's statements, in light of defense counsel's inability to have a direct

3 conversation with this represented witness. Mot. at 11. But neither a hearing nor a meeting with

4 counsel is necessary for the Court to understand Dr. Rosendorff's position regarding his trial testimony

5 and the government's presentation of evidence. Dr. Rosendorff's declaration provides the Court with

6 any clarification it needs to rule on Defendant's motion now. To the extent a hearing would probe

7 whether Dr. Rosendorff offered false or inaccurate testimony at trial, his declaration confirms that he

8 testified truthfully and that he stands by all of his trial testimony in every respect. Rosendorff Decl. ¶ 3.

9 If a hearing would have focused on whether Dr. Rosendorff disapproved of the government's

10 presentation of evidence, his declaration states that he does not believe the government misrepresented

11 Defendants' conduct at Theranos. *Id*. ¶ 4. Dr. Rosendorff's declaration similarly lays to rest any

12 questions regarding whether the government improperly sought to influence his testimony, stating that

13 the government asked him only to tell the truth about what he witnessed at Defendants' company. *Id*.

14 With these questions answered by an uncontroverted affidavit from the only witness who can speak to

15 them with authority, an evidentiary hearing would be pointless.

16    The Ninth Circuit consistently recognizes that, when deciding a new trial motion, "[t]he decision

17 on whether to hold a hearing or to proceed by affidavit is within the sound discretion of the trial court."

18 *United States v. Nace*, 561 F.2d 763, 772 (9th Cir. 1977). In *Nace*, the Ninth Circuit rejected a

19 defendant's argument that an evidentiary hearing was necessary, holding that it was proper for the

20 district court to proceed based on affidavits on facts close to these, as discussed above. Similarly, in

21 *United States v. Clay*, the Ninth Circuit affirmed the denial of a new-trial motion and held that the

22 district court was not required to hold an evidentiary hearing in response to a post-trial affidavit from the

23 defendant's coconspirator attempting to clear the defendant and take the blame for the offense conduct.

24 *United States v. Clay*, 476 F.2d 1211, 1216 (9th Cir. 1973).

25    Defendant's vague references to theoretical government misconduct do not change the analysis.

26 Defendant cites *United States v. Navarro-Garcia* for the proposition that the Court must hold a hearing

27 to determine whether any government misconduct occurred. Mot. at 11. There are at least two

28

U.S. OPP. TO NEW TRIAL MOT. RE: ROSENDORFF
18-CR-00258 EJD

1    problems with that argument.  First, the new-trial motion in *Navarro-Garcia* did not involve newly

2    discovered substantive evidence or government misconduct, but rather a jury's improper consideration

3    of extrinsic evidence.  *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991).  The

4    standards that apply in that situation do not automatically govern this one.  Second, to the extent that

5    case instructs that the decision whether to hold a hearing should turn on "the content of the allegations,

6    including the seriousness of the alleged misconduct" (*id.*), it cuts against a hearing in this case, where

7    there are no such allegations pending either from Dr. Rosendorff or the defense.  Defendant cites no

8    authority entitling her to an evidentiary hearing that would amount to a fishing expedition seeking

9    evidence of government wrongdoing.

10        An evidentiary hearing is particularly unnecessary given this Court's deep familiarity with the

11    evidence in this case—including the testimony of Dr. Rosendorff and similar witnesses in two multi-

12    month trials.  Reviewing courts give extra deference to rulings made in these circumstances, recognizing

13    that the judge who presided over the original trial and watched the case unfold from day to day is

14    "'exceptionally well qualified'" to decide a new trial motion based on affidavits.  *United States v.*

15    *Kearney*, 682 F.2d 214, 221 (D.C. Cir. 1982) (quoting *United States v. Johnson*, 327 U.S. 106, 112

16    (1946)).

17        Under the applicable law, Defendant has failed to show that an evidentiary hearing is necessary

18    or appropriate.

19    */ /*

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Because Defendant has failed to meet the standard for a new trial under Rule 33 and has not established the need for an evidentiary hearing, the Court should deny Defendant's Motion for a new trial based on alleged statements by Dr. Adam Rosendorff (ECF No. 1574) in its entirety.


DATED:  September 21, 2022                          Respectfully submitted,

                                                   STEPHANIE M. HINDS
                                                   United States Attorney


                                                     _/s/ John C. Bostic_____
                                                   JEFFREY B. SCHENK
                                                   JOHN C. BOSTIC
                                                   ROBERT S. LEACH
                                                   KELLY I. VOLKAR
                                                   Assistant United States Attorneys