JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-00258-EJD |
| Plaintiff, | **MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF** |
| v. | |
| ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, | |
| Defendants. | Hon. Edward J. Davila |

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

Based on the record before it, the Court should be eager to hold a hearing to understand why one of the government's key witnesses felt so compelled to speak with Ms. Holmes that he—although represented by counsel—personally left a voicemail for her attorney; went to her home unprompted and without warning; and told her partner while begging to speak with her that "he felt like he had done something wrong," that the government "made things sound worse than they were when he was up on the stand during his testimony," that he and Ms. Holmes were both early in their careers at the time of the events, and that everyone in the company was "working so hard to do something good and meaningful." Dkt. 1574-2 (Evans Decl., Ex. A). Strikingly, Dr. Rosendorff's four-page declaration *does not deny or dispute* any of Mr. Evans' sworn account. What Dr. Rosendorff's declaration does not say is extraordinary.

The government's arguments that not even a hearing is warranted are troubling; the government, confident as it professes to be in its conduct, the evidence, and the result at trial, should want to put any questions Ms. Holmes (and the Court) may have fully to rest. But the government is also incorrect on the law: while Ms. Holmes believes she has met the standard for a new trial, she has more than met the threshold for a required evidentiary hearing, for the following reasons.[1]

***First,*** the government does not dispute the key facts regarding Dr. Rosendorff's visit to Ms. Holmes' residence outlined in Mr. Evans' and Mr. Wade's sworn declarations—indeed, Dr. Rosendorff himself did not dispute them in his declaration. As a result, the government's attempt to suggest that Mr. Evans' account should be discounted falls flat. Gov't Opp'n 11. The government's reliance on *United States v. Pointer* is misplaced as the facts are wholly distinguishable. 17 F.3d 1070, 1074 (7th Cir. 1994) ("Ms. Gaines did not testify at trial, reducing the significance of her recantation. Moreover, the credibility of Ms. Gaines' letter is in grave doubt. Her letter was not a sworn affidavit."). Indeed, the government appears to concede that Dr. Rosendorff does not repudiate any of the statements attributed to him; it merely argues that it repudiates the "*interpretation*of his earlier statements as

---

[1] Ms. Holmes incorporates by reference the arguments addressing harmlessness and timeliness in her Reply in Support of Motion for New Trial Based on Newly Discovered Evidence from Mr. Balwani's Trial.

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

1

recantation." Opp'n at 12. A comparison of Mr. Evans' declaration to Dr. Rosendorff's makes clear that there is no inconsistency between them.[2] The cases cited by the government stand in contrast to the facts here. *See Lindsey v. United States*, 368 F.2d 633, 635-36 (9th Cir. 1966) (complaining witness filed four affidavits, the last of which "*expressly recanted*" prior statements raising questions about her trial testimony and explaining that those prior statements were made at the request of the defendant (emphasis added)); *United States v. Nace*, 561 F.2d 763, 772 (9th Cir. 1977) (witness "*denied making any of the statements attributed to him*" in a declaration provided by another person in support of Rule 33 motion (emphasis added)).

***Second***, there is enough ambiguity about Dr. Rosendorff's statements that the Court should grant an evidentiary hearing even if the Court is not convinced that Ms. Holmes has shown she is entitled to a new trial. For example, what did he mean when saying he "*tried* to answer the questions honestly;" what did he mean when he said that he felt like he had done something wrong in connection with his testimony. Evans Decl., Ex. A at 1 (emphasis added). It would be inappropriate for the Court to resolve the motion on Dr. Rosendorff's declaration alone. Unlike in *Nace*, on which the government relies, Dr. Rosendorff's declaration does not fully address the statements he made to Mr. Evans and on which Ms. Holmes relies for her motion. *See Nace*, 561 F.2d at 772 (finding it was proper to proceed without an evidentiary hearing when witness denied making statements attributed to him in sworn declaration).

Moreover, there is still an open question of government misconduct that affects the standard applied to this motion. The government argues that Dr. Rosendorff's declaration "expressly stat[es] that the government did not introduce false testimony through him at all." Opp'n 6. But Dr. Rosendorff did not say that. The relevant portion of the declaration states in full: "I have no reason to believe that the government misrepresented or otherwise created a misimpression about *Ms. Holmes' or Mr. Balwani's conduct at Theranos*." Dkt. 1587-1, Rosendorff Decl. ¶ 4 (emphasis added). Of course, Dr. Rosendorff

---

[2] For example, Dr. Rosendorff's statement in his declaration he answered questions "truthfully to the best of [his] ability," Dkt. 1587-1, is entirely consistent with his troubling statement to Mr. Evans that "when he was called as a witness he tried to answer the questions honestly but that the prosecutors tried to make everybody look bad (in the company)," Dkt, 1574-2.

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

2

testified about a variety of subjects that were broader than just "Ms. Holmes' . . . conduct at Theranos." *Id.* And *Napue* issues are not circumscribed to just testimony about the defendant's "conduct." *See Napue v. Illinois*, 360 U.S. 264 (1959). Indeed, Ms. Holmes' counsel alerted the Court during trial that the government's questioning regarding Theranos operations had created a knowingly misleading picture and had raised "substantial concerns" under *Napue v. Illinois*, 360 U.S. 264 (1959).[3] *Holmes* 10/5/21 Tr. 2714:3-8 (citing *Napue*); *see also Holmes* 10/15/21 Tr. 3840:7-3841:3.[4] The fact that Dr. Rosendorff's declaration is so carefully constrained raises more questions than answers about what Dr. Rosendorff's statements actually meant. At a minimum, the Court should order an evidentiary hearing to permit examination on the full meaning and context surrounding his statements regarding the government's conduct at trial. *United States v. Vozzella*, 124 F.3d 389, 390 (2d Cir. 1997) (recognizing that *Napue* applied to "the use of evidence that was in part false and otherwise so misleading as to amount to falsity").

**Third**, Ms. Holmes has met the standard for a new trial, for the following reasons:

- Dr. Rosendorff's August 8, 2022 statements are plainly newly discovered evidence. The government fails to address any of Ms. Holmes' arguments, instead attempting to fashion a rule that does not exist. Opp'n 6-7. The government's cited cases in support of its argument stand only for the fact that when a witness withdraws a recantation that he or she had made under the defendant's coercion, courts may find that the recantation was not credible. *See United States v. Santiago*, 837 F.2d 1545, 1548 (11th Cir. 1988) (stating recantation "was the result of threats from [defendant's] family."); *United States v. Matta-Ballesteros*, 213 F.3d 644, 2000 WL

---

[3] For example, although the government elicited from Dr. Rosendorff on direct examination that Theranos did not have any proficiency testing in place prior to the Theranos launch, Dr. Rosendorff admitted on cross-examination that this testimony was "not correct." *Holmes* 9/29/21 Tr. 2257:10-2258:7. Further cross-examination revealed that Dr. Rosendorff told the government in a prior interview that Theranos engaged in proficiency testing and had "good results." *Id.* at 2260-2261:8.

[4] In *Napue*, the Supreme Court held "that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269. "[I]f it is established that the government knowingly permitted the introduction of false testimony reversal is 'virtually automatic.'" *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

3

297328, at *1 (9th Cir. 2000) (unpublished) (explaining district court found original recantation not credible only after "a lengthy evidentiary hearing"); *see also United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1094 (C.D. Cal. 1998) (explaining recantation "was the product of coercion, both physical and psychological, at the hands of representatives" of the defendant). No similar facts exist here, where Dr. Rosendorff went to Ms. Holmes' home of his own volition and has not recanted any statements he made there.

- Ms. Holmes was diligent in seeking such testimony. As recounted in her Motion, Ms. Holmes cross-examined Dr. Rosendorff for several days and specifically sought the kinds of exculpatory statements he elicited. Dkt. 1574, Holmes Motion for New Trial re: A. Rosendorff ("Holmes Motion") at 6-7; *see also United States v. Fulcher*, 250 F.3d 244, 250 (4th Cir. 2001) (diligence prong is satisfied when "there is simply no indication from the record that a more probing cross-examination would have elicited any of the facts that came to light following the trial"). The government's citation to *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009), is again inapposite: in that case, the defendant declined the Court's invitation to re-open the cross-examination of a key witness but later filed a Rule 33 motion based on newly discovered evidence regarding the very same issue he declined to press at trial, *id.* at 1256-57.

- The evidence is not merely impeaching. As Ms. Holmes explained in her opening brief, the statements at issue are affirmative evidence, not merely impeaching. Holmes' Mot. 9-10. *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (evidence was material because it could have been used to attack the reliability of the government's investigation); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("[I]nformation which might 'have raised opportunities to attack . . . the thoroughness and even good faith of the investigation . . .' constitutes exculpatory, material evidence."). Again, the government's principal case misses the mark. In *United States v. Kulczyk*, the defendant had failed to offer a non-impeachment purpose for the evidence. 931 F.2d 542, 549 (9th Cir. 1991). In any event, the Ninth Circuit has since clarified that impeachment evidence can support a motion for a new trial when it is sufficiently powerful.

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

4

*United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992).  In this case, Dr. Rosendorff was an important witness and his new statements materially undermine his testimony.

- Dr. Rosendorff's statements would likely have led to an acquittal.  The government relied on Dr. Rosendorff in its closing argument when discussing the requisite knowledge and falsity elements of wire fraud. *See, e.g., Holmes* 12/16/21 Tr. 8975:6-10 ("Dr. Rosendorff said that in the middle of 2014, he had conversations with Ms. Holmes about QC, quality control . . . again, more knowledge evidence.").  Indeed, during the hearing on Ms. Holmes motion for judgment of acquittal, the government cited to Dr. Rosendorff's testimony in support of its argument.  9/1/22 Hr'g Tr. 24:8-25:3. Again, the cases cited by the government stand in contrast to the facts here.  *See Lindsey*, 368 F.2d at 635-36 (complaining witness filed four affidavits over the course of 1.5 years— the first recanting her testimony, the second withdrawing that recantation, the third again calling into question her trial testimony in a way that benefited the defendant, and the fourth "*expressly recant[ing]*" her third affidavit and explaining that she signed the third affidavit recanting her testimony at the request of the defendant after he had misled her about his sentence); *Nace*, 561 F.2d at 772 (witness "*denied making any of the statements attributed to him*" in a declaration provided by another person that supported defendant's motion for new trial).  The government's fallback position is that Dr. Rosendorff's statements are not material and would not have led to an acquittal because Ms. Holmes was acquitted of a scheme to defraud patients.  That argument is belied by the fact that the investor counts alleged fraudulent statements concerning the technology.  Dkt. 469 ¶ 12(A).  Indeed, the government has argued that alleged misrepresentations about the technology as "sort of the underlying false statement in the case."  *See Holmes* 12/16/21 Tr. 8959:6-11 (Gov't closing argument).  For the reasons described in Ms. Holmes' opening brief, these arguments should not be persuasive.  Holmes' Mot. at 7-11.

At bottom, the Court is left exactly where it was before Dr. Rosendorff's declaration:  one of the government's most significant trial witnesses made an extraordinary and unusual trip to Ms. Holmes'

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

5

residence and made undisputed statements concerning his own testimony that are sufficient to justify a new trial – or, at the very least, an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Holmes' motion for a new trial or, at a minimum, order an evidentiary hearing.

DATED: September 28, 2022

        /s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON
NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD

6

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2022 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE REGARDING ADAM ROSENDORFF
CR-18-00258 EJD