JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000 | Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI,<br><br>Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' REPLY IN SUPPORT OF MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE FROM MR. BALWANI'S TRIAL**<br><br>Hon. Edward J. Davila |

## TABLE OF CONTENTS

I. The Government's Admissions Are Newly Discovered and Admissible ........ 2

A. These are new admissions ........ 2

B. The admissions are admissible against the government ........ 4

II. Ms. Holmes Was Diligent in Seeking this New Evidence ........ 6

III. The New Evidence Is Material to the Issues at Ms. Holmes' Trial ........ 6

IV. The New Evidence Is Not Cumulative or Merely Impeaching ........ 8

V. The New Evidence Would Probably Result in an Acquittal ........ 8

VI. The Government's Additional Arguments Should Be Rejected. ........ 9

CONCLUSION ........ 10

In pursuing the same charges against Ms. Holmes and Mr. Balwani at separate trials, the government had a fundamental obligation to present a consistent theory of its case. It failed to do so. At Ms. Holmes' trial, the government encouraged the jury to discredit or even ignore evidence about Ms. Holmes' and Mr. Balwani's relationship that contradicted the government's theory that the two ran Theranos and worked together as equals in all respects. Months later, during Mr. Balwani's trial, the government reversed course, and argued for the first time that Mr. Balwani had a unique ability to influence Ms. Holmes because of the nature of their relationship and his position at the company.

Faced with the consequences of its decision to present different theories at the two trials, the government now goes to great lengths to protect its partial verdict against Ms. Holmes. The government reframes its prior statements to obscure inconsistency; raises irrelevant arguments and unnecessary procedural concerns to add complexity; argues that any inconsistencies reflect "fair advocacy" based on the evidence in each case; and blames Ms. Holmes for not anticipating the government's strategy years ago, before the Court ordered the cases to be severed.

The government, however, does not present a meaningful or persuasive response on the factors that determine whether Ms. Holmes is entitled to a new trial based on newly discovered evidence. The government's closing arguments from Mr. Balwani's trial are admissible against the government as statements of a party opponent, and the admissions reflected therein are undoubtedly new when they were not made until the conclusion of Mr. Balwani's trial. Ms. Holmes was diligent in seeking the admissions, they are material to the elements of the charged offenses, and they are neither cumulative nor merely impeaching. Moreover, if Ms. Holmes' jury had heard the government's new admissions about the nature of her relationship with Mr. Balwani, it would have fundamentally changed the government's evidence about the existence of a criminal conspiracy and the representations to potential investors such that it would probably have resulted in an acquittal on the counts of conviction. Because the government's statements constitute newly discovered evidence that would probably lead to Ms. Holmes' acquittal, the Court should order a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

## I. The Government's Admissions Are Newly Discovered and Admissible

The government argues that the admissions it made during closing arguments at Mr. Balwani's trial about Mr. Balwani's authority at Theranos and his influence over Ms. Holmes are neither new nor admissible evidence. The government cannot succeed in establishing either point.

### A. These are new admissions

The government first claims that its admissions are not new evidence because the historical facts underlying them are not new. Opp'n 4-6. This misses the point—it is the opinions reflected in those admissions that are new. The opinions of party opponents are "freely admissible," particularly when they "show how the government construed the evidence" in a criminal case. *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1109 (C.D. Cal. 1999). It is thus not relevant whether the factual basis for the government's admissions—*e.g.*, Mr. Balwani's age, business experience, or the nature of his relationship with Ms. Holmes—was available to Ms. Holmes. Because the government cannot show that it had disclosed this view of the evidence before Mr. Balwani's trial, the admissions constitute "new" evidence for purposes of the Rule 33 analysis.

The government argues in the alternative that the admissions Ms. Holmes has identified are not new because the government has consistently asserted that Ms. Holmes and Mr. Balwani "influenced or deferred to each other." Opp'n 6. That is not a fair characterization of the argument presented by the government at Mr. Balwani's trial. There, the government argued only that Mr. Balwani had a unique influence over Ms. Holmes as a result of their close relationship. *Balwani* 6/24/22 Tr. 7652:9-17. And there is no analogous admission in the record of Ms. Holmes' trial to support the government's contention that it made a "nearly identical" argument. Opp'n 7. Consider the government's respective closing arguments in context. First, from Ms. Holmes' trial:

> First of all, it's important to note that the witnesses in this case, from former employees to outsiders who dealt with Theranos, consistently testified that they understood Ms. Holmes was in charge of the company and even had authority over Mr. Balwani. Ms. Holmes admitted that in her testimony, that there were aspects of the business relationship where Mr. Balwani deferred to her, and specifically she confirmed that Mr. Balwani deferred to her on aspects of inventions and devices at Theranos. Remember especially that there's no evidence in this case that Mr. Balwani ever expressly ordered Ms. Holmes to be dishonest. In fact, there are examples cited during the government's closing of instances where Mr.

> Balwani either cautioned Ms. Holmes away from being dishonest about something, or expressed concern about an untrue statement that she had made. Now, ***no one is saying that Mr. Balwani was a good influence in this case***. He's the coconspirator. He was part of the scheme to defraud. But the evidence showed that Ms. Holmes did not need encouragement from Mr. Balwani in order to be dishonest and deceptive.

*Holmes* 12/17/21 Tr. 9309:20-9310:17 (emphasis supplied). Next, from Mr. Balwani's trial:

> [T]he evidence suggests that they did have complete comprehensive knowledge of what was happening at Theranos, and importantly for this case, what was not happening at Theranos. It's no surprise that Mr. Balwani had a lot of authority. Besides his position that we talked about, ***you can also infer that his close relationship with Ms. Holmes would have given him a lot of influence over her, more than just his title alone would provide. Remember also that Mr. Balwani was older and more experienced than Ms. Holmes. So it would be no surprise that his advise [sic], his input would carry a lot of weight with her.*** And that's what showed up in the text messages. If you look at 5387H, you'll get a sense of how they interacted with each other and you will see that Mr. Balwani was not shy about expressing his opinions and that Ms. Holmes was receptive to that input from Mr. Balwani.

*Balwani* 6/24/22 Tr. 7652:6-21 (emphasis supplied). Although the government did use the word "influence" in each argument, context confirms that the government made conflicting arguments. At Ms. Holmes' trial, the government made no effort to connect Mr. Balwani's influence to Ms. Holmes, it did not contend he had unique influence because of his relationship with Ms. Holmes, or argue that his influence would have any role in her decision-making at the company. Instead, the statement the government now highlights from Ms. Holmes' trial occurred immediately after the government asked jurors to *ignore* Ms. Holmes' testimony about the nature of her relationship with Mr. Balwani because, according to the government, there was "no evidence regarding a link between what Mr. Balwani and Ms. Holmes's relationship was like and the conduct that she's charged with committing." *Holmes* 12/17/21 Tr. 9308:14-16. With that context, the government could not have intended the phrase "no one is saying that Mr. Balwani was a good influence in this case" to convey to Ms. Holmes' jury that Mr. Balwani exercised a unique or particular influence over Ms. Holmes specifically. That is not a plausible interpretation of the government's argument.

The government next suggests that even to the extent it offered differing positions at each trial, it was "fair advocacy" to do so if the arguments were responsive to the evidence and argument presented

by Ms. Holmes and Mr. Balwani at their respective trials. Opp'n 7-8. The Court should reject that assertion. The government ignores the "well established" principle that prosecutors "cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime." *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) (en banc), *rev'd on other grounds*, 523 U.S. 538 (1998); *see Bakshinian*, 65 F. Supp. 2d at 1110. At Ms. Holmes' trial, the government sought to minimize the scope of Mr. Balwani's influence. At Mr. Balwani's trial, the government positioned Mr. Balwani as more influential with respect to the operations of the company and Ms. Holmes' decision-making. Those theories are plainly inconsistent. As Ms. Holmes explained in her Motion, incorporating the government's admissions from Mr. Balwani's trial about his influence would undercut and limit arguments that the government presented in Ms. Holmes' case. And the inconsistency of the later-in-time admission only further confirms that the government's admissions during Mr. Balwani's trial constitute new evidence under Rule 33.

**B. The admissions are admissible against the government**

The statements that Ms. Holmes has identified are also admissible against the government. The government does not meaningfully contest the proposition that closing arguments by prosecutors in a criminal case are non-hearsay statements of a party opponent under Federal Rule of Evidence 801(d)(2). The government makes passing reference to a circuit split among the federal appellate courts, Opp'n 10-11, but that split is decidedly one-sided in favor of admitting such statements.[1] And the government otherwise offers no reason to discount the analysis in *Bakshinian*, which held that such statements meet Rule 801(d)(2)'s requirements for admissibility. 65 F. Supp. 2d at 1105-06

To the extent the government cites any new authority, *see* Opp'n 11, those cases do not address statements made by government prosecutors during closing arguments at the trial of a severed co-defendant. Instead, they deal only the admissibility of government statements made in connection with

[1] The First, Eleventh, and D.C. Circuits have refused to apply a *per se* bar on the introduction of such statements. *See United States v. Kattar*, 840 F.2d 118, 131 (1st Cir. 1988); *United States v. DeLoach*, 34 F.3d 1001, 1005 (11th Cir. 1994) (per curiam); *United States v. Morgan*, 581 F.2d 933, 938 (D.C. Cir. 1978). Only the Seventh Circuit suggested a contrary outcome, and it ultimately resolved the question on unrelated grounds. *See United States v. Zizzo*, 120 F.3d 1338, 1351-52 (7th Cir. 1997).

its *Brady* obligations. That is a different issue and those cases are inapplicable here, at the very least, because closing arguments are voluntary, curated reflections on the nature of evidence (as opposed to a mandated disclosure of exculpatory evidence).

The government also contends that admitting the government's statements would contradict the Court's standard jury instruction that attorney statements are not evidence, and would violate Rule 602's personal knowledge requirement. Opp'n 6. That same argument was presented and rejected in *Bakshinian*. There, the government argued that the introduction of closing arguments from a prior trial violated the Ninth Circuit's Model Jury Instructions. 65 F. Supp. 2d at 1109. As the Court explained, a party opponent's statements admitted under Rule 801 are "exempt from the 'restrictive influences of the opinion rule and the rule requiring firsthand knowledge.'" *Id.* at 1109 (quoting Fed. R. Evid. 801, 1972 Adv. Comm. Notes). And even to the extent such statements were only an invitation for the jury to draw inferences—as opposed to a statement of the government's opinion about a contested fact—they could still be admitted "to show how the government construed the evidence" because it "goes to the credibility of the government's case." *Id.* A statement by a government prosecutor that is "about the evidence" or "reflects on the evidence" is thus admissible under Rule 801(d)(2) notwithstanding the Court's standard instructions or whether the attorney has personal knowledge of the underlying facts. *Id*.

Finally, the government seeks to defeat Ms. Holmes' Motion on the grounds that Ms. Holmes may not be able to satisfy Rules 401 and 403 such that she could introduce the government's prior admissions at a new trial. Opp'n 11. The government correctly recognizes that whether this evidence is ultimately admissible turns in large part on whether the government were to present a theory of Ms. Holmes' relationship with Mr. Balwani, and the influence he had over her as a result of that relationship, like the version that it advanced at Mr. Balwani's trial. *See* Opp'n 11 (citing *Bakshinian*, 65 F. Supp. 2d at 1110). Because the analysis turns on future government conduct, and because the government has previously presented inconsistent theories, there is no basis for the Court to conclude at this point that Ms. Holmes cannot satisfy the minimal threshold for relevance under Rule 401 or the Rule 403

balancing test. The Court should thus find that the statements are admissible for the purposes of deciding whether Ms. Holmes is entitled to a new trial under Rule 33.

**II. Ms. Holmes Was Diligent in Seeking this New Evidence**

The government asserts that Ms. Holmes was not diligent in seeking the new evidence, but it offers no logical explanation for how she could have previously obtained admissions first made in June 2022. Instead, the government suggests that Ms. Holmes should have asked to be tried after Mr. Balwani when the parties were litigating Mr. Balwani's severance motion in early 2020. Opp'n 8. This presumes that Ms. Holmes knew—more than two years prior to the first presentation of the admissions at issue and before the Court agreed to sever the trials—that the government would pursue a different theory about the nature of her relationship with Mr. Balwani at each trial. That is an absurd premise, and the Court should not place any weight in the government's criticism of Ms. Holmes' diligence.

Even if Ms. Holmes could have anticipated the government's presentation of different arguments years in advance, any effort to be tried second would have been both duplicative of Mr. Balwani's request and ultimately futile, particularly in light of the government's strenuous objection to Ms. Holmes being tried second, *see* Dkt. 1104 at 25 ("Holmes must be tried first."), and the Court's rejection of Mr. Balwani's request that he be tried first on the grounds that a severance "does not create a right to a particular trial sequence," Dkt. 977 at 16 (citing *Mack v. Peters*, 80 F.3d 230, 235 (7th Cir. 1996)).

**III. The New Evidence Is Material to the Issues at Ms. Holmes' Trial**

After repeatedly emphasizing the nature of Ms. Holmes' relationship with Mr. Balwani as central evidence of its alleged conspiracy, the government now seeks to minimize the role of that evidence for the purpose of defeating this Motion, calling it "one factor within a larger mosaic" and suggesting that it is, at most, a "collateral point." *See* Opp'n 10. But it was only weeks ago, when arguing Ms. Holmes' acquittal motion, that the government offered three factors when pressed to identify its evidence in support of a criminal conspiracy: (1) that Ms. Holmes had a romantic relationship with Mr. Balwani; (2) that Ms. Holmes and Mr. Balwani were in constant communication; and (3) that Ms. Holmes and Mr. Balwani were senior executives at Theranos. 9/1/22 Hr'ing Tr. 23:2-24:4. The nature of Ms. Holmes' relationship with Mr. Balwani and the extent to which Mr. Balwani influenced Ms. Holmes is directly

relevant to rebutting the government's evidence with respect to each of these points, and the government's admissions as to the nature of that relationship are thus material to the issues at trial.[2]

This new evidence is also relevant to Ms. Holmes' knowledge and intent with respect to the representations to investors that underlie Counts 1, 6, 7, and 8. The government contends that Ms. Holmes' testimony somehow "undercuts" the relevance of the government's admissions because she did not fully account for the effects of Mr. Balwani's influence and "could not herself describe if there were any legal significance of the alleged abuse" with respect to the charges she faced. Opp'n 9. The government also attempts to discount materiality based on the way in which Ms. Holmes' counsel presented closing arguments. *Id.* That Ms. Holmes did not testify to or otherwise present an ultimate legal conclusion does not make other evidence that Mr. Balwani exercised unique influence over Ms. Holmes any less material to the jury's evaluation of her knowledge and intent.[3]

It is also telling that the government fails to address in its materiality analysis Ms. Holmes' testimony that she did not question Mr. Balwani's business acumen, that she trusted him, and that she did not often overrule Mr. Balwani in the operational areas for which he was responsible. *Holmes* 11/29/21 Tr. 7875:15-25, 7879:16-21. And that the government ignores its cross-examination of Ms. Holmes on the nature of her relationship with Mr. Balwani during which it attempted to minimize her account. *E.g.*, *Holmes* 11/30/21 Tr. 8006:13-22, 8093:9-8094:3, 8094:20-8097:22. There was no dispute at trial that this type of evidence was material to the charged offenses. The government's subsequent concession that Mr. Balwani's "close relationship with Ms. Holmes would have given him a lot of influence over her" is material for the same reasons. *Balwani* 6/24/22 Tr. 7652:11-12.

---

[2] The centrality of this evidence to the case thus distinguishes the government's cited authority on the issue of materiality. *See United States v. George*, 420 F.3d 991, 1001 (9th Cir. 2005) (evidence of preparing entity's tax returns collateral to preparation of defendant's individual tax returns in a tax fraud trial); *United States v. Vrieling*, 577 F. App'x 716, 717 (9th Cir. 2014) (new evidence of ineffective assistance was not material to the elements of the charged offense).

[3] The government's reliance on *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981), is misplaced. There, the Ninth Circuit rejected a new evidence claim as unlikely to yield a different result because the case was "essentially resolved" on the defendant's credibility as a witness after he gave "evasive, contentious, and generally implausible" testimony. *Id.* at 1344. To date, there has been no similar assertion here from the government with respect to Ms. Holmes' testimony.

## IV. The New Evidence Is Not Cumulative or Merely Impeaching

In arguing that the new evidence would be cumulative, the government again relies on the claim that it made "similar arguments" before the jury at each trial. Opp'n 11. As discussed above, *see supra* pp. 2-4, the record contradicts that claim when each statement is viewed in context. The government also contends that the evidence is intended only to impeach. Opp'n 11. That is wrong. The evidence *corroborates* Ms. Holmes' testimony and bears directly upon the jury's evaluation of whether the alleged conspiratorial agreement existed. Moreover, the new evidence discredits the governments' cross-examination of Ms. Holmes on these issues, and it undermines the government's related arguments that the jury could discredit or ignore Ms. Holmes' testimony concerning her relationship with Mr. Balwani. The new evidence is not cumulative or merely impeaching.

## V. The New Evidence Would Probably Result in an Acquittal

In arguing against the likelihood of a different result at a new trial, the government fails to engage with the particulars of Ms. Holmes' argument or show that the inclusion of the government's admissions from Mr. Balwani's trial would not probably result in an acquittal.

The government principally contends that it has "consistently argued that both Defendants had the ability to influence each other and deferred to one another on certain topics" and that "both Defendants exercised decision-making authority at Theranos." Opp'n 13-15. To state the obvious, influence, deference, and decision-making authority are not co-extensive concepts. It would be possible, for example, to defer to a supervisor at work while still exerting influence over that person. It would also be possible to influence a co-worker even if there was shared decision-making authority. So the fact that there may be evidence of deference or shared decision-making between Ms. Holmes and Mr. Balwani does not establish (or even indicate) whether and to what extent they influenced each other. And the extent to which Mr. Balwani influenced Ms. Holmes plays a critical role in helping the jury to understand the nature of the charged offenses. With that distinction in mind, the government cannot cite any evidence or argument in the record of Ms. Holmes' trial to support its claim that it argued to Ms. Holmes' jury that she and Mr. Balwani each exercised influence over the other. If anything, the record reflects that the government asked Ms. Holmes' jury to ignore evidence of influence as between Ms.

Holmes and Mr. Balwani given that the government argued that the jury should discredit and ignore her testimony about Mr. Balwani's abuse.

The government also offers no explanation for how it could continue to argue that Ms. Holmes and Mr. Balwani were "co-equals"—as it did at Ms. Holmes' trial—when it has since taken the position that Mr. Balwani was "older and more experienced than Ms. Holmes" and that he would have had a "lot of influence over her." *Balwani*, 6/24/22 Tr. 7652:6-21. And the government has no response to the fact that evidence of Mr. Balwani's influence over Ms. Holmes would inform (1) Ms. Holmes' good faith reliance on others in determining whether she had the necessary mental state required to commit conspiracy and/or wire fraud; (2) whether Ms. Holmes agreed to commit wire fraud, as is required to find conspiracy; and (3) what role Mr. Balwani played in the representations to potential investors in 2014 when it was undisputed that he had responsibility for most of the topics at issue in those representations. With an express position from the government in the record that Mr. Balwani exercised unique influence over Ms. Holmes—or at the very least a trial wherein the government was forced to present a case consistent with that theory—the resulting record would be very different and Ms. Holmes probably would be acquitted.

**VI. The Government's Additional Arguments Should Be Rejected**

The government presents three additional arguments beyond those contemplated by the factors set forth in *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005), which the parties agree sets the relevant test for this Motion. *Compare* Mot. 5, *with* Opp'n 3. Each argument should be rejected.

*First*, the government suggests that Ms. Holmes' motion is not timely because she failed to comply with a 14-day deadline for post-trial motions. Opp'n at 1, 16-17. Rule 33(b)(1) expressly permits Ms. Holmes to file "[a]ny motion for a new trial grounded on newly discovered evidence . . . within 3 years after the verdict or finding of guilty." The Court can and should evaluate and decide this Motion under the five-factor test that governs such motions as set out in *Harrington*, 410 F.3d at 601, and need not concern itself with the government's unnecessary attempt to litigate a procedural issue.

*Second*, the government frets about the practical realities of how its prior statements would be introduced, presumably to suggest that a new trial would be complicated in light of this evidence. *E.g.*

Opp'n 12-13. These claimed concerns are overblown. The government, for example, suggests that Ms. Holmes would need to call a government prosecutor to testify. Opp'n 12. The government is well aware—including from its own approach to introducing party-opponent statements during Ms. Holmes' trial—that the statement need not necessarily be introduced through a percipient witness. *E.g.*, *Holmes* 10/14/21 Tr. 3626:20-3638:9 (introducing text messages exchanged between Ms. Holmes and Mr. Balwani during the direct examination of Nimesh Jhaveri). The government also invokes hypothetical complications posed by possible Rule 106 additions to the portions of the closing arguments that Ms. Holmes would offer at a new trial. Opp'n 13. The government has not identified any Rule 106 material, and the routine application of that Rule at a future date is no reason to deny Ms. Holmes' Motion.

*Third*, the government suggests that the new evidence, as well as any variance in the government's arguments, was at most a "harmless addition," and can be disregarded because it "would not affect the outcome of [Ms. Holmes'] trial." Opp'n 16. The government does not explain how that standard is relevant to this Motion. Instead, as discussed above, the Court asks whether a new trial with the inclusion of the new evidence would probably result in an acquittal. *Harrington*, 410 F.3d at 601.

**CONCLUSION**

For the foregoing reasons, the Court should grant Ms. Holmes' Motion and order a new trial.

DATED: September 28, 2022

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2022 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes