QUINN EMANUEL URQUHART & SULLIVAN, LLP
　Daniel R. Koffmann (California Bar No. 344379)
　danielkoffmann@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:　(212) 849-7000
Facsimile:　(212) 849-7100

*Attorneys for Non-Party Adam Rosendorff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, <br><br> Defendants. | Case No. 5:18 Cr. 258 (EJD) <br><br> ADAM ROSENDORFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM* ISSUED BY DEFENDANT ELIZABETH HOLMES <br><br> Date:　October 31, 2022 <br> Time:　1:30 p.m. <br><br> The Hon. Edward J. Davila |

## MOTION TO QUASH

PLEASE TAKE NOTICE that on October 31, 2022, at 1:30 p.m., or on such other date and time as the Court may order, in Courtroom 4 of the Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Non-Party Adam Rosendorff will move the Court for an order quashing the subpoena *duces tecum* served on him by Defendant Elizabeth Holmes. Dr. Rosendorff makes this motion pursuant to Rule 17 of the Federal Rules of Criminal Procedure. The Motion is based on the accompanying memorandum of law, the record in this case, and any other matters that the Court may deem appropriate.

DATED:   October 12, 2022            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


 /s/ Daniel R. Koffmann
Daniel R. Koffmann
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
danielkoffmann@quinnemanuel.com

*Attorneys for Non-Party Adam Rosendorff*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

    A.    Dr. Rosendorff's Employment At Theranos And Early Whistleblowing ..................2

    B.    Dr. Rosendorff's Consistent Testimony During Multiple Depositions And The Trials In This Case ...........................................................................................3

    C.    Dr. Rosendorff's Visit To The Defendant's Home ......................................................4

    D.    The Defendant's Motion And Dr. Rosendorff's Subsequent Declaration .................5

    E.    The Court's Order That Dr. Rosendorff Testify At A Hearing .................................6

    F.    The Defendant's Subpoena *Duces Tecum* To Dr. Rosendorff ..................................6

LEGAL STANDARD .....................................................................................................................7

ARGUMENT ..................................................................................................................................8

I.    THE SUBPOENA EXCEEDS THE LIMITED SCOPE THE COURT SET FOR THE OCTOBER 17 HEARING. ...........................................................................................8

II.    THE SUBPOENA DOES NOT SATISFY THE *NIXON* STANDARD................................9

III.    THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE. .....................................10

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*United States v. Aguilar*,
  No. 07 Cr. 30 (SBA), 2008 WL 3182029 (N.D. Cal. Aug. 4, 2008) .......................................... 10

*United States v. Fields*,
  663 F.2d 880 (9th Cir. 1981)................................................................................................. 7, 9

*United States v. Ganesh*,
  No. 16 Cr. 211 (LHK), 2018 WL 9732209 (N.D. Cal. June 20, 2018)....................................... 11

*United States v. Huiltron Sanchez*,
  No. S2 05 Cr. 443 (WBS), 2007 WL 9606812 (E.D. Cal. Jan. 10, 2007) .................................. 9

*United States v. Krane*,
  625 F.3d 568 (9th Cir. 2010).......................................................................................... 7, 9, 10

*United States v. Lespier*,
  266 F. App'x 5 (2d Cir. 2008)..................................................................................................... 8

*Lindsey v. United States*,
  368 F.2d 633 (9th Cir. 1966)....................................................................................................... 8

*United States v. Navarro-Garcia*,
  926 F.2d 818 (9th Cir. 1991)....................................................................................................... 5

*United States v. Nixon*,
  418 U.S. 683 (1974) ......................................................................................................... 7, 9, 10

*United States v. Pac. Gas & Elec. Co.*,
  No. 14 Cir. 175 (TEH), 2016 WL 1212091 (N.D. Cal. Mar. 28, 2016).............................. 7, 9, 11

*United States v. Reed*,
  726 F.2d 570 (9th Cir. 1984)................................................................................................ 7, 10

*United States v. Rodriguez*,
  No. 2:11 Cr. 296 (WBS), 2016 WL 6440323 (E.D. Cal. Oct. 28, 2016) ............................... 7, 10

*United States v. W. Titanium, Inc.*,
  No. 08 Cr. 4229 (JLS), 2010 WL 4569890 (S.D. Cal. Nov. 4, 2010) ....................................... 10

### Rules and Regulations

Fed. R. Civ. P. 45 ............................................................................................................................. 9

Fed. R. Crim. P. 17.............................................................................................................. 2, 7, 10

Fed. R. Evid. 802 ................................................................................................................. 9

Local Rule 17-2(d) ....................................................................................................... 10, 11

Non-Party Adam Rosendorff respectfully submits this memorandum of law in support of his motion to quash the subpoena *duces tecum* issued to him by Defendant Elizabeth Holmes.

**PRELIMINARY STATEMENT**

The Court should quash the subpoena *duces tecum* that Defendant Elizabeth Holmes issued to Non-Party Adam Rosendorff because it is outside the narrow scope that the Court set for the October 17, 2022 hearing, it does not satisfy the *Nixon* standard, and it is unreasonable and oppressive. The purpose of the October 17 hearing, as described by the Court, is to ask Dr. Rosendorff, "Did you tell the truth" at Ms. Holmes' trial, or "Do you feel that the government manipulated you … in any way in regards to [your] testimony." Hr'g Tr. 33 (Oct. 3, 2022). As the Court has explained, it "[does not] believe" the October 17 hearing "will be a lengthy process," because the hearing effectively is "an opportunity" for Dr. Rosendorff "to reaffirm" what he said in his September 15, 2022 declaration, "or to explain why he parts company with that." *Id.* at 33–34.

To be clear, Dr. Rosendorff testified "completely, accurately, and truthfully to the best of [his] ability" at the trials in this case. Declaration of Adam Rosendorff ¶ 3 (Sept. 15, 2022) (Dkt. No. 1587-1). He "stand[s] by" that testimony. *Id.* And he "ha[s] no reason to believe that the government misrepresented or otherwise created a misimpression about Ms. Holmes' or Mr. Balwani's conduct at Theranos." *Id.* ¶ 4. The Defendant's attempt to construe Dr. Rosendorff's attempt to speak with her as a cry for help about government misconduct, or a desire to recant his trial testimony, is off-base. On the contrary, as Dr. Rosendorff will testify at the October 17 hearing, his visit to the Defendant's house was part of an effort to forgive her for the pain and suffering her actions have caused in his life, to address his own complicated feelings about having played a role in the mother of a young child potentially going to prison, and generally to achieve closure of a difficult period in his life. There is no legitimate basis for the Defendant's insinuation that Dr. Rosendorff believes the government manipulated him or that there is reason to doubt the credibility of his testimony.

Notwithstanding the parameters the Court articulated for the October 17 hearing, the Defendant has sought to transform that limited inquiry into a free-for-all in which Dr. Rosendorff would be required to search through more than a year's worth of sensitive emails, text messages,

1    and other communications with family, friends, and others so that the Defendant can try, yet again,
2    to make him look like a liar.  The Court did not authorize such discovery when it set the hearing for
3    October 17.  Nor would the kind of fishing expedition reflected in the subpoena be a proper use of
4    Rule 17 in any case.  The documents the Defendant seeks—non-privileged communications
5    regarding Dr. Rosendorff's trial testimony and his interactions with the prosecution team—are
6    hearsay.  Their only relevance or basis of admissibility would be as potential prior inconsistent
7    statements used to impeach Dr. Rosendorff's testimony at the hearing.  But Rule 17 does not
8    authorize a search for impeachment materials.  So even if the Court had authorized or envisioned
9    that the Defendant would fire off subpoenas in advance of the October 17 hearing, Rule 17 still
10   would not permit the discovery she seeks from Dr. Rosendorff.

11   　　　　Dr. Rosendorff has been through enough.  He was bullied, intimidated, and harassed by
12   Theranos senior executives and lawyers working on the company's behalf.  His professional
13   reputation has been tainted by his association with Theranos, a company known best as a spectacular
14   fraud.  He has been forced to spend weeks in deposition and trial testimony, including the
15   Defendant's own high-profile trial in which her counsel grilled him for days and left nearly no stone
16   in his life unturned.  And now, after Dr. Rosendorff's hopeful, albeit naïve, effort to speak with the
17   Defendant, she seeks to invade his privacy with an unauthorized, improper, unreasonable subpoena.
18   The Court should not indulge these tactics by the Defendant.  The Court should quash the subpoena.

19   　　　　　　　　　　　　　　　　　　**BACKGROUND**

20   　　　　**A.　　Dr. Rosendorff's Employment At Theranos And Early Whistleblowing**

21   　　　　Dr. Rosendorff worked at Theranos from April 2013 to November 2014, principally as the
22   director of the company's CLIA-certified laboratory.  *See generally* Holmes Trial Tr. 1702–03.  He
23   ultimately left Theranos due to his persistent concerns about the quality of the Theranos assays and
24   the lack of support he received from Ms. Holmes and Mr. Balwani in attempting to remedy the
25   problems he reported to them.  *See generally* Holmes Trial Tr. 1939–60; 2733 ("I felt that it was a
26   question of my integrity as a physician not to remain there and to continue to endors[e] results that
27   I essentially didn't have faith in.  I came to understand that management was not sincere in diverting
28   resources to solve issues.").  Shortly after he left the company, Dr. Rosendorff began providing

information to John Carreyrou, then a reporter for the *Wall Street Journal* and one of the first journalists to expose the Defendant's misconduct at Theranos.  Holmes Trial Tr. 1959; John Carreyrou (@JohnCarreyrou) (Sept. 28, 2021, 3:50 p.m.), https://twitter.com/JohnCarreyrou/status/ 1442985133313830914 ("Adam [Rosendorff] was my first and most important source. Without him, I wouldn't have been able to break the Theranos story. Hats off to his courage and integrity. He's one of the real heroes of this story.").  He also explored filing a complaint against Theranos under the False Claims Act, Holmes Trial Tr. 2851–52, but was unable to do so because, contrary to the company's representations to investors, Theranos did very little, if any, business with the federal government.  Theranos then began an intimidation campaign against Dr. Rosendorff that involved, for example, threatening to sue him and to foment investigations into his conduct while at Theranos.  *See generally* John Carreyrou, Bad Blood 217–18, 221, 225, 227, 256, 266 (1st ed. 2019).

### B.   Dr. Rosendorff's Consistent Testimony During Multiple Depositions And The Trials In This Case

Dr. Rosendorff became a witness in numerous legal proceedings relating to Theranos.  He was subpoenaed in March 2017 in connection with litigation in Delaware Chancery Court; he was deposed in January 2018 and February 2019 in two separate securities class action litigations; he testified in an SEC proceeding; he testified before the grand jury in this case in 2018; and he testified at the trial of Ms. Holmes for approximately six days and at the trial of Mr. Balwani for approximately two-and-a-half days.  He also spoke with government prosecutors and investigators in 2016, 2017, 2018, 2020, 2021, and 2022, fully aware that it would be a crime if he knowingly made a false statement during those meetings.

Through the weeks that he spent testifying at trial and in depositions and speaking to the government, the crux of his story never changed:  Shortly after joining Theranos, he became uncomfortable with the accuracy and reliability of the company's assays.  He alerted Ms. Holmes, Mr. Balwani, and others at the company about the problems he had observed and sought to conduct further research into the assays to establish that they were safe for patient use.  But Ms. Holmes, Mr. Balwani, and others undermined and thwarted those efforts.  Ultimately, he felt compelled to leave Theranos because continuing to work at the company was inconsistent with his ethics and

threatened to taint his professional reputation.  Over the course of more than five days of grueling cross-examination by skilled defense counsel for Ms. Holmes and Mr. Balwani, Dr. Rosendorff never wavered on these essential elements.

### C. Dr. Rosendorff's Visit To The Defendant's Home

As Dr. Rosendorff can testify at the hearing on October 17, he spent the afternoon of August 8, 2022 in Palo Alto.  While there, he decided to visit the address on California Avenue where Theranos once had its headquarters and the Walgreens on University Avenue where Theranos conducted its commercial launch.  California Avenue was unrecognizable.  The Theranos building had been torn down and a residential development complex built in its place.  The Walgreens was gone too, replaced by a rug store.  Dr. Rosendorff wanted to move on too.  He suddenly felt that a conversation with the Defendant was the missing piece.  He wanted to be able to forgive her for the pain and suffering her actions have caused in his life.  He wanted to be able to express his condolences that her child may grow up without a mother if the Defendant receives a lengthy prison sentence.  And he wanted to be able to draw a line under the nine-year saga of his employment at Theranos, the harassment and intimidation directed at him after he left, his participation in the subsequent investigation, and his high-profile testimony in the trials in this case.  He called the Defendant's counsel and left a voicemail in which he asked if counsel could assist in arranging for a meeting with the Defendant, which he believed "would be quite healing."  Declaration of Lance Wade ¶ 5 (Sept. 6, 2022) (Dkt. No. 1574-3).

Caught up in the moment, and feeling like he had nothing to lose, Dr. Rosendorff decided to drive to the Defendant's home to knock on her door and see if he could speak with her.  Media coverage during her trial reported that she lived on a well-known private estate in Woodside, a short distance from Palo Alto.  He drove to the estate, was directed to her house, and approached the front door.  He had two brief conversations with William Evans, the Defendant's partner.  Mr. Evans has claimed that Dr. Rosendorff said, among other things, that "he feels guilty," "that the prosecutors tried to make everybody look bad (in the company)," "that the government made things sound worse than they were," and that "he felt like he had done something wrong."  Dkt. No. 1574-2.  As Dr. Rosendorff can testify at the hearing, he does not recall making these statements, and they do not

accurately describe how he felt on August 8 or how he feels today. Nevertheless, after his brief encounter with Mr. Evans, Dr. Rosendorff drove home and has not sought to contact the Defendant since then.

### D. The Defendant's Motion And Dr. Rosendorff's Subsequent Declaration

Nearly a month after Dr. Rosendorff's visit, the Defendant cited to Mr. Evans' account of his encounter with Dr. Rosendorff as supposed basis for a new trial or an evidentiary hearing. Dkt. No. 1574. In her motion, the Defendant sought an evidentiary hearing "both to determine the meaning of Dr. Rosendorff's statements and to determine whether any misconduct occurred." *Id.* at 11. The motion argued that Dr. Rosendorff's alleged statements to Mr. Evans "suggest that the government's presentation of evidence may have misled the jury" and "that there is strong reason to doubt the credibility of a key government witness." *Id.* The Defendant contended she was entitled to a hearing "unless the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial." *Id.* (quoting *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991)).

Dr. Rosendorff was surprised to learn of the Defendant's motion and Mr. Evans' account of their interaction on August 8. His recollection of his conversation with Mr. Evans did not align with Mr. Evans' description—both with respect to the alleged statements noted above and regarding other aspects of Mr. Evans' account. But rather than identify every inconsistency between his recollection and Mr. Evans', Dr. Rosendorff instead sought to address the issues the Defendant argued should be explored at a hearing: whether his statements "suggest that [1] the government's presentation of evidence may have misled the jury … [and] [2] that there is strong reason to doubt the credibility of a key government witness." Dkt. No. 1574 at 11.

In his September 15, 2022 declaration, Dr. Rosendorff rebutted these insinuations as directly and explicitly as he could. As to the first issue, Dr. Rosendorff testified:

> I have no reason to believe that the government misrepresented or otherwise created a misimpression about Ms. Holmes' or Mr. Balwani's conduct at Theranos.

Rosendorff Decl. ¶ 4 (Dkt. No. 1587-1). As to the second issue, Dr. Rosendorff testified:

-5-                                      Case No. 5:18 Cr. 258 (EJD)
ADAM ROSENDORFF'S MOTION TO QUASH SUBPOENA *DUCES TECUM* ISSUED BY DEFENDANT ELIZABETH HOLMES

> During my testimony at Ms. Holmes' and Mr. Balwani's trials, I answered every question put to me completely, accurately, and truthfully to the best of my ability.  Nothing I have learned since giving my testimony has changed my recollection of the events I witnessed during my time at Theranos.  I stand by my testimony at Ms. Holmes' and Mr. Balwani's trials in every respect.

*Id.* ¶ 3.

### E. The Court's Order That Dr. Rosendorff Testify At A Hearing

Notwithstanding Dr. Rosendorff's testimony in his declaration, the Court granted the Defendant's request, in part.  *See* Dkt. No. 1593.  The Court set a hearing "[l]imited solely to the issues related to the possibility that the Government may have engaged in misconduct and related to the declaration of Dr. Rosendorff." *Id.*  As the Court stated at the status conference, "the issues are limited" to what Dr. Rosendorff meant in his declaration and whether "[he] feel[s] that the government manipulated [him] … in any way in regards to [his] testimony."  Hr'g Tr. 33 (Oct. 3, 2022).  At bottom, "really what [the Court] want[s] to know [from Dr. Rosendorff] is did [he] tell the truth?"  *Id.*  Acknowledging Dr. Rosendorff's declaration in which he spoke to that question, the Court explained that "perhaps this will either be an opportunity to reaffirm that or to explain why he parts company with that," and due to that limited scope, the Court expressed that it "[does not] believe that this will be a lengthy process."  *Id.* 33–34.  At no point during the status conference, in the subsequent minute order, nor (as far as Dr. Rosendorff is aware) at any point since then, did the Court authorize the Defendant to engage in third-party document discovery in connection with the hearing.

### F. The Defendant's Subpoena *Duces Tecum* To Dr. Rosendorff

On October 6, 2022, Dr. Rosendorff, through counsel, accepted service of a subpoena from the Defendant.  *See* Declaration of Daniel R. Koffmann ¶ 2 (Oct. 12, 2022).  Rather than simply seeking Dr. Rosendorff's presence at the hearing so that he could provide testimony, the subpoena also sought two broad categories of documents:

> 1. Non-privileged emails or communications regarding your trial testimony from September 24, 2021 to present.
>
> 2. Non-privileged emails or communications regarding the prosecution team (including its agents) and its work on, or

> interactions with you, in this matter, from September 24, 2021 to present.

Koffmann Decl., Exhibit 1.

## LEGAL STANDARD

Rule 17 of the Federal Rules of Criminal Procedure enables a party to compel production of a document only where the party can establish relevancy, admissibility, and specificity. *United States v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (applying *Nixon* standard and affirming order quashing Rule 17 subpoena *duces tecum*).[1] District courts apply the *Nixon* standard even after a verdict, taking into account the posture of the case and the intended use of the subpoenaed records. *See, e.g.*, *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (observing that a Rule 17 subpoena could be used for purposes of a sentencing proceeding but that "the trial court must apply the *Nixon* factors in the specific context of sentencing"). At every stage of a criminal case, Rule 17 is not "a discovery device," and it does not "allow a blind fishing expedition seeking unknown evidence." *Reed*, 726 F.2d at 577. "The discovery tools available to defendants in criminal cases are limited, and are to be found elsewhere in the Federal Rules of Criminal Procedure, not in Rule 17." *United States v. Rodriguez*, No. 2:11 Cr. 296 (WBS), 2016 WL 6440323, at *1 (E.D. Cal. Oct. 28, 2016). In particular, Rule 17 cannot be used to obtain impeachment materials. *See, e.g.*, *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (reversing denial of motion to quash where subpoena sought materials to be used for impeachment); *United States v. Pac. Gas & Elec. Co.*, No. 14 Cir. 175 (TEH), 2016 WL 1212091, at *6 (N.D. Cal. Mar. 28, 2016) ("In the Ninth Circuit, where the defendant's only purpose for seeking the Rule 17(c) subpoena is to obtain impeachment materials, such a justification is insufficient to require pretrial production of such materials."); *accord Nixon*, 418 U.S. at 701. Rule 17 also provides that the Court may quash a subpoena *duces tecum* where it is otherwise "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A decision quashing a Rule 17 subpoena is reviewed for abuse of discretion. *Nixon*, 418 U.S. 683 at 702.

---

[1] Unless otherwise indicated, this brief omits from quotations and citations all internal quotation marks, alterations, footnotes, and citations.

# ARGUMENT

## I. THE SUBPOENA EXCEEDS THE LIMITED SCOPE THE COURT SET FOR THE OCTOBER 17 HEARING.

The Court should quash the subpoena because it would be an unwarranted expansion of the scope of the October 17 hearing. In partially granting the Defendant's request for a hearing, the Court clearly articulated the scope of the inquiry: it "will either be an opportunity [for Dr. Rosendorff] to reaffirm [his declaration] or to explain why he parts company with [it]." Hr'g Tr. 33 (Oct. 3, 2022). The Court reiterated that in its minute entry: "The Court set a limited Evidentiary Hearing on ECF No. 1574 – Motion for New Trial – for October 17, 2022. Limited solely to the issues related to the possibility that the Government may have engaged in misconduct and related to the declaration of Dr. Rosendorff." Dkt. No. 1593. Neither the Court's order at the status conference nor the subsequent minute entry authorized the Defendant to issue a subpoena *duces tecum* requiring Dr. Rosendorff or any other witness to produce documents in connection with the hearing.

Nor would the fishing expedition inherent in the Defendant's subpoena be consistent with the purpose of the post-trial hearing the Court set for October 17. Where a trial witness makes unsworn, out-of-court statements after a verdict that suggest a possible recantation of his trial testimony, as Mr. Evans alleged Dr. Rosendorff did on August 8, a subsequent sworn declaration in which the witness reaffirms his testimony is sufficient to defeat a new-trial motion. *See, e.g., United States v. Lespier*, 266 F. App'x 5, 7 (2d Cir. 2008) (summary order) ("[A] district court should give little evidentiary weight to a recantation affidavit that has since been repudiated."); *Lindsey v. United States*, 368 F.2d 633, 635–36 (9th Cir. 1966). Here, notwithstanding Dr. Rosendorff's declaration reaffirming his trial testimony, the Court ordered a hearing "limited to his declaration" and "what [he meant]" in it and whether he "feel[s] that the government manipulated [him] … in any way in regards to [his] testimony." Hr'g Tr. 33 (Oct. 3, 2022). If Dr. Rosendorff reaffirms his declaration, the hearing "will [not] be a lengthy process." *Id.* at 34. A broad subpoena *duces tecum* like the one the Defendant is seeking would turn a limited inquiry regarding a one-page declaration into a post-

trial mini-trial.  The Court should reject these efforts and adhere to the scope it articulated when it granted the October 17 hearing.

## II. THE SUBPOENA DOES NOT SATISFY THE *NIXON* STANDARD.

Even if the Court had authorized written discovery, the subpoena's broad requests are improper because they do not seek admissible or specific materials, as required under long-standing authority.  See *Nixon*, 418 U.S. 683 at 700 (Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity"); *Krane*, 625 F.3d at 574 (district court should apply *Nixon* factors "in the specific context" in which post-trial subpoena is issued).  Potential impeachment evidence does not suffice to meet *Nixon*'s admissibility requirement.  *Fields*, 663 F.2d at 881; *PG&E*, 2016 WL 1212091, at *6.  Here, the whole point of the Defendant's subpoena is to seek impeachment materials.  Dr. Rosendorff already reaffirmed his trial testimony.  Rosendorff Decl. ¶¶ 3–4.  The hearing on October 17 is limited to whether he will *re*-reaffirm that testimony or, instead, will divulge that the government somehow manipulated him or otherwise engaged in misconduct.  Hr'g Tr. 33–34 (Oct. 3, 2022); Dkt. No. 1593.  In seeking Dr. Rosendorff's private communications about his trial testimony and his interactions with the government, the Defendant is fishing for statements by Dr. Rosendorff that are inconsistent with his September 15, 2022 declaration, which the Defendant would then seek to use to impeach that testimony and undermine Dr. Rosendorff's credibility.  That is textbook impeachment material.  Any other likely use of such communications would amount to an impermissible attempt to offer an out-of-court statement to prove the truth of the matter asserted.  Fed. R. Evid. 802.  That is not a proper use of Rule 17 either. *See, e.g.*, *United States v. Huiltron Sanchez*, No. S2 05 Cr. 443 (WBS), 2007 WL 9606812, at *2 (E.D. Cal. Jan. 10, 2007) (denying Rule 17 subpoena where there was "feint showing that the requested documents would be admissible" and nearly all the requested information "would clearly appear to be hearsay").  Because the subpoena seeks documents that are likely to be admissible only as impeachment materials, the Defendant cannot show that her subpoena satisfies the admissibility standard under *Nixon*.

Nor does the subpoena comply with *Nixon*'s specificity requirement.  The Defendant's document request is akin to a third-party subpoena issued under Rule 45 of the Federal Rules of

*Civil* Procedure.  Rule 17 of the Federal Rules of *Criminal* Procedure, by contrast, is not "a discovery device."  *Reed*, 726 F.2d at 577.  Whatever the wisdom of affording civil defendants vastly greater discovery than criminal defendants, until Congress or the Supreme Court amends the Federal Rules of Criminal Procedure, it remains the law that criminal defendants' discovery tools "are to be found elsewhere in the Federal Rules of Criminal Procedure, not in Rule 17."  *Rodriguez*, 2016 WL 6440323, at *1.  A subpoena like the Defendant's that requires the recipient to sift through countless messages in his email archives, text message and other messaging applications, and direct message histories on social media and other applications, is the quintessential fishing expedition that fails the *Nixon* specificity requirement.  *See, e.g.*, *United States v. Aguilar*, No. 07 Cr. 30 (SBA), 2008 WL 3182029, at *7 (N.D. Cal. Aug. 4, 2008) ("The less specific a subpoena, the greater the likelihood defendant is engaged in a fishing expedition or using their subpoena for discovery purposes."); *United States v. W. Titanium, Inc.*, No. 08 Cr. 4229 (JLS), 2010 WL 4569890, at *2 (S.D. Cal. Nov. 4, 2010) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

The Court should quash the subpoena because the Defendant cannot demonstrate that her subpoena complies with the *Nixon* standard in "the specific context" of the limited purpose and narrow scope the Court set for the October 17 hearing.  *Krane*, 625 F.3d at 574.

### III.   THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE.

The subpoena should be quashed for the additional reasons that it is unduly burdensome and invasive and it provides insufficient time for Dr. Rosendorff to respond.  Rule 17 authorizes the Court to quash a subpoena that is "unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2), and this Court's Local Rule 17-2(d) requires that a Rule 17 subpoena *duces tecum* provide the recipient at least 14 days to respond, absent a demonstration of good cause, United States District Court for the Northern District of California Criminal Local Rule 17-2(d).  In the year since Dr. Rosendorff took the stand at the Defendant's trial, he has received countless messages via SMS and other messaging applications, social media, email, and other media from friends, family, acquaintances, and even strangers who have read about his testimony in the news.  Requiring him to sift through gigabytes

of data scattered across numerous technological platforms to identify materials responsive to the Defendant's broad document requests is unduly burdensome and inappropriate under Rule 17.  *See, e.g.*, *United States v. Ganesh*, No. 16 Cr. 211 (LHK), 2018 WL 9732209, at *1 (N.D. Cal. June 20, 2018) (denying issuance of Rule 17 subpoenas seeking information across databases and other platforms because responding would be "unreasonable and oppressive"); *PG&E*, 2016 WL 3350326, at *3 (quashing Rule 17 subpoenas seeking documents that would require tens of hours to collect).

The Defendant's proposed intrusion into Dr. Rosendorff's personal and private communications is equally unreasonable and oppressive.  Testifying at the trials in this case was an unpleasant coda to the distressing chapter in Dr. Rosendorff's life in which he worked at a company that turned out to be a fraud, that harassed and intimidated him after he quit, and that has brought unwanted media attention to him for years.  There is no good reason why Dr. Rosendorff's private communications about that experience should be put on display, particularly where, as here, the Defendant cannot identify any legitimate evidentiary value of those communications for purposes of the October 17 hearing.

Finally, the subpoena violates the presumption in this Court that the recipient have at least 14 days to respond.  *See* United States District Court for the Northern District of California Criminal Local Rule 17-2(d).  The Defendant served the subpoena on the afternoon of October 6, 2022 and set the deadline for production on October 17, 2022, at 9 a.m.  *See* Koffmann Decl. ¶ 2 & Exhibit 1.  Given the breadth of the subpoena and the universe of documents Dr. Rosendorff must search through in order to identify responsive materials, the Defendant's proposal that he undertake this exercise in shorter than two weeks is unreasonable and oppressive.

# CONCLUSION

For the foregoing reasons, the Court should quash Defendant Elizabeth Holmes' subpoena *duces tecum* to Non-Party Adam Rosendorff.

DATED: October 12, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

 /s/ Daniel R. Koffmann
Daniel R. Koffmann
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
danielkoffmann@quinnemanuel.com

*Attorneys for Non-Party Adam Rosendorff*