1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS S. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  JEFFREY B. SCHENK (CABN 234355)
   JOHN C. BOSTIC (CABN 264367)
5  ROBERT S. LEACH (CABN 196191)
   KELLY I. VOLKAR (CABN 301377)
6  Assistant United States Attorneys

7       150 Almaden Boulevard, Suite 900
        San Jose, California 95113
8       Telephone: (408) 535-5061
        Fax: (408) 535-5066
9       john.bostic@usdoj.gov

10 Attorneys for United States of America

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15 UNITED STATES OF AMERICA,            )  CASE NO. 18-CR-00258 EJD
                                        )
16        Plaintiff,                    )  UNITED STATES' POST-HEARING BRIEF ON
                                        )  DEFENDANT'S MOTION FOR NEW TRIAL
17     v.                               )  BASED ON ALLEGED STATEMENTS
                                        )  BY DR. ADAM ROSENDORFF (ECF NO. 1574)
18 ELIZABETH HOLMES,                    )
                                        )
19        Defendant.                    )
                                        )
20 _____      )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION & BACKGROUND ................................................................................................1

ARGUMENT ..........................................................................................................................................3

I.       Dr. Rosendorff Unequivocally Affirmed the Accuracy of His Trial Testimony and the
Fairness of the Trial from His Perspective. ..........................................................................................3

II.      Dr. Rosendorff Repeatedly Denied Witnessing Any Misconduct, Manipulation, or
Misleading Advocacy from the Government...........................................................................................4

III.     Dr. Rosendorff's Statements Are Cumulative of Trial Testimony and Other Evidence,
Merely Impeaching, and Immaterial to the Issue of Defendant's Guilt. ....................................7

         A.       Dr. Rosendorff's statements regarding his approval of Theranos's mission and
                  hardworking employees are cumulative of other evidence...................................7

         B.       Dr. Rosendorff clarified that certain of his statements did not even apply to
                  Defendants Holmes and Balwani. .........................................................................9

         C.       The content of Dr. Rosendorff's trial cross-examination does not provide a
                  basis for a new trial. .............................................................................................9

IV.      There Is No Evidence That Other Issues Negatively Impacted the Reliability of Dr.
Rosendorff's Testimony at Trial or at the Hearing.............................................................................11

CONCLUSION.....................................................................................................................................13

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Cases**

4

*Hayes v. Brown,*
5
    399 F.3d 972 (9th Cir. 2005) ................................................................................ 3, 4

6

*Lindsey v. United States,*
    368 F.2d 633 (9th Cir. 1966) .......................................................................... 2, 4, 12
7

8

*Napue v. Illinois,*
    360 U.S. 264 (1959)................................................................................................ 3

9

*Ohio v. Roberts,*
10
    448 U.S. 56, (1980)............................................................................................... 10

11

*United States v. Butler,*
    567 F.2d 885 (9th Cir. 1978) .................................................................................. 4
12

13

*United States v. Connolly,*
    504 F.3d 206 (1st Cir. 2007)................................................................................. 12

14

15

*United States v. Glantz,*
    884 F.2d 1483 (1st Cir. 1989)............................................................................... 10

16

*United States v. Harrington,*
17
    410 F.3d 598 (9th Cir. 2005) ............................................................................ 1, 10

18

*United States v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009) .............................................................................. 10
19

20

*United States v. Kulczyk,*
    931 F.2d 542 (9th Cir. 1991) ......................................................................... 7, 8, 9

21

*United States v. Matta-Ballesteros,*
22
    213 F.3d 644 (9th Cir. 2000) ............................................................................ 3, 12

23

*United States v. Santiago,*
24
    837 F.2d 1545 (11th Cir. 1988) .............................................................................. 4

25

*United States v. Steel,*
    759 F.2d 706 (9th Cir. 1985) .................................................................................. 1
26

27

*United States v. Vozzella,*
    124 F.3d 389 (2d Cir. 1997).................................................................................... 4

28

*United States v. Walgren*,
    885 F.2d 1417 (9th Cir. 1989) .......................................................................................... 6


**Rules**

Federal Rule of Criminal Procedure Rule 33(b) ..................................................................... 10

1

**INTRODUCTION & BACKGROUND**

2      In August of this year, following guilty verdicts in the trials of Defendants Holmes and Balwani,

3  government witness Dr. Adam Rosendorff visited Holmes's residence in an attempt to reconcile with

4  her.  Defendant sought to capitalize on that event by filing a motion for a new trial—a motion based on

5  defense speculation regarding the significance of statements made by Dr. Rosendorff that day.

6  Defendant's motion, however, fails to identify any new evidence actually warranting a new trial.

7  Prevailing on the motion would have required Defendant to satisfy a five-part test that, according to the

8  Ninth Circuit, is "difficult to meet."  *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985).

9  Specifically, Defendant would have had to show:  (1) that the evidence is newly discovered; (2) that the

10  defendant was diligent in seeking the evidence; (3) that the evidence is material to the issues at trial; (4)

11  that the evidence is not cumulative or merely impeaching; and (5) that the evidence indicates the

12  defendant would probably be acquitted in a new trial.  *United States v. Harrington*, 410 F.3d 598, 601

13  (9th Cir. 2005) (citation omitted).  As explained in the government's Opposition, Defendant cannot

14  satisfy any of those factors in connection with Dr. Rosendorff's alleged post-trial statements.[1]

15      On October 17, 2022, the Court held an evidentiary hearing on Defendant's motion.  The

16  purpose of that hearing was narrow:  to obtain live testimony from Dr. Rosendorff about (1) whether his

17  trial testimony was accurate and (2) whether he witnessed any misconduct by the government.  In

18  requesting the evidentiary hearing, the defense presumably hoped to hear from Dr. Rosendorff that he

19  visited Defendant's home out of guilt over some falsehood in his testimony or some other unfairness in

20  her trial.   Dr. Rosendorff has now testified directly about the motives and meaning behind his post-trial

21  statements, superseding defense speculation on those topics.  His testimony at the hearing foreclosed any

22  argument for a new trial based on his post-trial statements.

23      Specifically, Dr. Rosendorff affirmed at the evidentiary hearing that his trial testimony was

24  truthful and not misleading, and he repeatedly denied that the government engaged in misconduct.  He

25  confirmed that he does not feel that he did anything wrong or unethical in connection with this case, and

26

27  ─────────────────────

28  [1]  The government incorporates by reference the arguments and citations in its Opposition, filed on
September 21, 2022 at ECF No. 1587.

1    stated that his visit to Defendant's home was not motivated by a feeling that her trial had been unfair.

2    10/17/22 Transcript at 53.  He explained that he reached out to Defendant partly over concern that a

3    custodial sentence might impact her child.  *Id.* at 10, 17, 27.  That sentiment, while understandable, has

4    no bearing on Defendant's request for a new trial.  Dr. Rosendorff also stated that he had been thinking

5    about how Defendant was unresponsive to his concerns about wrongdoing at Theranos, and wanted to

6    talk to her to see whether he could forgive her in the interest of "putting the saga behind [him] and

7    mov[ing] on with [his] life."  *Id.*

8         When it came to his trial testimony, however, Dr. Rosendorff explained that his motive was not

9    to achieve healing or forgiveness but to recall relevant events to the best of his ability and to be truthful.

10   *Id.* at 51-52.  Thus, to the extent there was any tension between what he said on the stand at trial and

11   what he said to Mr. Evans at Defendant's house, Dr. Rosendorff told the Court that it should "rely on my

12   sworn testimony."  *Id.*

13        With the benefit of Dr. Rosendorff's testimony at the hearing, it is clear that none of the

14   statements he allegedly made to Mr. Evans warrants a new trial.  To the extent Dr. Rosendorff said those

15   things at all, he has disclaimed any interpretation that might be viewed as exculpatory of Defendants or

16   inconsistent with his trial testimony.  To the contrary, those statements are cumulative of evidence the

17   jury heard and earlier, out-of-court statements the defense knew about before the trial.  The statements

18   also are not material and would not lead to an acquittal on retrial because they do not undercut critical

19   testimony or bear on the question of guilt.  The Court will recall that Dr. Rosendorff's testimony was

20   extensively corroborated by documentary evidence.  And it is impossible for Defendant to show that Dr.

21   Rosendorff's post-trial statements would change the outcome of her trial; she was convicted of investor

22   fraud based on substantial evidence independent of Dr. Rosendorff's testimony but acquitted on the

23   patient-focused charges that tied more closely with his percipient knowledge.

24        Even if Dr. Rosendorff had recanted his trial testimony during his visit to Defendant's home

25   months ago, his testimony last week would function as a repudiation of that recantation, rendering his

26   statements to Mr. Evans merely impeaching and insufficient to merit a retrial.  *See Lindsey v. United*

27   *States*, 368 F.2d 633, 635-36 (9th Cir. 1966) (repudiated recantations do not support a motion for new

28

1  trial); *United States v. Matta-Ballesteros*, 213 F.3d 644, *1 (9th Cir. 2000) (unpublished) (affirming

2  denial of new trial after district court conducted evidentiary hearing during which witness repudiated

3  recantation of testimony).

4    Accordingly, for the reasons discussed in the government's Opposition and herein, the Court

5  should deny Defendant's motion.

6  **ARGUMENT**

7  **I. Dr. Rosendorff Unequivocally Affirmed the Accuracy of His Trial Testimony and the Fairness of the Trial from His Perspective.**

8    Defendant's new-trial motion is replete with vague allegations of false evidence and misleading

9  testimony.  The motion assumes that Dr. Rosendorff's visit to Defendant's home was prompted by a

10  desire to correct something inaccurate in the government's case.  Meanwhile, Defendant cites case law

11  where convictions were overturned when they were found to be based on evidence the prosecution knew

12  was false.  Mot. at 2 (citing *Napue v. Illinois*, 360 U.S. 264 (1959); *Hayes v. Brown*, 399 F.3d 972 (9th

13  Cir. 2005)).  In response to Defendant's motion, Dr. Rosendorff previously submitted a declaration

14  averring that, at both Defendants' trials, he "answered every question put to [him] completely,

15  accurately, and truthfully to the best of [his] ability" and that he "stand[s] by [his] testimony" "in every

16  respect."  Rosendorff Decl., ECF No. 1587-1 at 2.  At Defendant's urging, the Court scheduled an

17  evidentiary hearing so that Dr. Rosendorff could "reaffirm" or "part company" with the statements in his

18  declaration.  10/3/22 Transcript at 33.  The Court framed one of the key questions as follows:  "He took

19  an oath to tell the truth, and really what I want to know is did you tell the truth?"  *Id.*

20    At the hearing last week, the Court, began by asking direct questions on this issue.  Dr.

21  Rosendorff's straightforward answers to those questions, excerpted below, left no doubt that his trial

22  testimony was true to the best of his knowledge, belying Defendant's assumptions:

| THE COURT'S QUESTIONS | DR. ROSENDORFF'S ANSWERS |
| --- | --- |
| [W]hen you testified at both of those trials, did you testify honestly? | Yes, your honor, at all times I testified truthfully and honestly to the best of my recollection. |
| [D]id you intentionally give any false testimony? | No, I did not. |

10/17/22 Transcript at 8.

On further questioning by defense counsel and the government, Dr. Rosendorff repeatedly confirmed that his trial testimony was reliable.  When asked whether his testimony was complete, he answered simply, "Yes."  10/17/22 Transcript at 44.  When asked whether he believed his direct testimony was "misleading in any way," he responded, "No, it was not misleading."  *Id.*  Dr. Rosendorff further confirmed that his oath to tell the truth was "always forefront" in his mind during his time on the stand at trial.  *Id.* at 50.  He reiterated that, thinking back on the testimony he provided in both trials, he "absolutely" stands by that testimony in every respect.  *Id.*  He assured the Court that his testimony "can be relied upon to accurately represent [his] experience with Theranos."  *Id.*

In light of Dr. Rosendorff's testimony at the hearing, the Court should conclude that he never recanted his trial testimony and there is no new substantive evidence supporting Defendant's motion for a new trial.  Dr. Rosendorff has strongly disavowed any interpretation of his statements that is inconsistent with his trial testimony.  Even if Dr. Rosendorff's alleged statements to Mr. Evans were wrongly viewed as a recantation, he has made it clear that he stands by his trial testimony, rendering Defendant's new-trial motion baseless.  *See United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988) (new trial not warranted where witness would offer same version of events at retrial as during original testimony); *Lindsey v. United States*, 368 F.2d 633, 635-36 (9th Cir. 1966) (new-trial standard not met when witness repudiates recantation).

**II.      Dr. Rosendorff Repeatedly Denied Witnessing Any Misconduct, Manipulation, or Misleading Advocacy from the Government.**

Defendant's motion cites various cases where government misconduct was proven.  Mot. at 7-8 (citing *United States v. Butler*, 567 F.2d 885, 887-91 (9th Cir. 1978); *United States v. Vozzella*, 124 F.3d 389, 393 (2d Cir. 1997)).  In advocating for an evidentiary hearing, defense counsel argued that there was a "strong inference that there was conduct by the government that Dr. Rosendorff believed to be misleading."  10/3/22 Transcript at 7.  In the defense's words, the hearing was necessary to explore whether the government "elicit[ed] a false narrative" as to the conduct of Theranos "because of how it presented the evidence."  *Id.* at 24.  The Court stated that the purpose of the hearing would be to explore whether Dr. Rosendorff was "manipulated by the government" either in preparation or in his trial

U.S. SUPP. BRIEF RE ROSENDORFF MOT.
18-CR-00258 EJD

4

testimony.  *Id.* at 25, 33.  At the evidentiary hearing, the defense's lengthy examination of Dr.

Rosendorff on a variety of topics served only to prove that there was no government misconduct in

connection with his participation in the trial.

When Dr. Rosendorff was on the witness stand last week, the Court asked him a series of

questions addressing the defense's suggestions of possible government misconduct.  Dr. Rosendorff

responded by firmly denying any belief that the government engaged in improper manipulation or

misconduct in connection with his testimony:

| THE COURT'S QUESTIONS | DR. ROSENDORFF'S ANSWERS |
|---|---|
| Do you feel, sir, in regards to your testimony, that you were manipulated or pressured in any way by the government in regards to your testimony? | No, sir, I do not feel that way.  I did not feel that way then and I don't feel that way now.  At all times the government encouraged me to tell the truth and only the truth. |
| Did the government, in regards to your testimony, sir, ever threaten you or offer you any inducement for your testimony? | No, they did not. |
| Did the government ever tell you how you should testify or how they, the government, wished you to testify? | No, they did not. |
| Did the government ever, after your testimony, offer critique to you about your testimony or criticize you in any way regarding any of your testimony? | No. |
| Did the government ever misrepresent something that you said to them? | No, they did not. |

10/17/22 Transcript at 8-9.

Dr. Rosendorff's position on this issue remained constant throughout the parties' questioning.

He testified in no uncertain terms, "I don't believe the government led me or misled me or encouraged

me to lie."  10/17/22 Transcript at 42.  When asked whether he believed that there were times when the

government was "trying to make things seem worse than they were" at Theranos, he replied, "Not at

all."  *Id.* at 21.  A short time later, defense counsel tried again to get Dr. Rosendorff to agree that "you

do believe that at times the government made things sound worse than they were when you were testifying," to which he replied, "No, I don't believe that at all, no." *Id.* at 26.  He gave this same answer a third time when questioned toward the end of the hearing. *Id.* at 54.

He also offered his view that "[t]he prosecution was trying to paint an accurate picture of Elizabeth Holmes."  10/17/22 Transcript at 21.  Later in the hearing, defense counsel mischaracterized his testimony and asked, "Well, the government for the most part was, I believe you said, trying to make Ms. Holmes look bad; right?"  *Id.* at 24.  Dr. Rosendorff answered, "The government was trying to get at the truth of what happened and what Ms. Holmes did, period."  *Id.*

Pressed on the specific language of his written declaration, he affirmed that he did not believe the government's presentation of evidence included "misrepresentations or misimpressions about other aspects of what happened at Theranos," in terms of Defendants' conduct or otherwise.  *Id.* at 45-46.  When asked whether he agreed that the government used "very selective portions of the exhibits" at trial, he countered, "I don't believe they were cherry picking or being selective.  I thought they were comprehensive."  *Id.* at 22.

Summing up his experience with the prosecution team, Dr. Rosendorff was asked whether he witnessed any conduct by the government in connection with his testimony and the trial overall that he viewed as misleading or improper in any way, to which he responded, "No."  *Id.* at 51.

Because there is no evidence of government misconduct here, Defendant's reliance on cases like *Walgren* is misplaced.  *See United States v. Walgren*, 885 F.2d 1417, 1427-28 (9th Cir. 1989) (laying out standard in case of knowing use of perjury).  The government did not engage in any improper conduct in connection with Dr. Rosendorff's testimony or the trial at large.  Accordingly, Defendant's motion is governed by the standard *Harrington* test.  The government's Opposition explained why Defendant's motion fails under that standard, and the evidentiary hearing has resolved the two key questions identified by the Court in the government's favor.  That reason alone is sufficient to merit denial of Defendant's motion.

/ /

III.    **Dr. Rosendorff's Statements Are Cumulative of Trial Testimony and Other Evidence, Merely Impeaching, and Immaterial to the Issue of Defendant's Guilt.**

As discussed more fully in the government's Opposition, the alleged statements addressed in Defendant's new-trial motion do not meet any of the factors required under *Harrington*.  Several of them are cumulative of other evidence, including in ways that show the defense was not diligent in pursuing them.  ECF No. 1587 at 12.  Moreover, those statements by Dr. Rosendorff are, at best, merely impeaching as opposed to substantive evidence going to material issues in this case.  This is beyond dispute after last week's hearing, during which Dr. Rosendorff expressly disclaimed any interpretation of his post-trial statements that would conflict with or alter his trial testimony.  The case law is clear that such evidence is insufficient to warrant a new trial, even where it would "severely impeach" the testimony of an important government witness.  *United States v. Kulczyk*, 931 F.2d 542, 549 (9th Cir. 1991); ECF No. 1587 at 14-15.  The statements Defendant relies upon are also immaterial and could not change the outcome at trial—especially considering them in the context of their intended meaning as described by Dr. Rosendorff while under oath last week.  This case resulted in a conviction following testimony from thirty-two witnesses and the introduction of more than 900 exhibits over the span of months.  Among those exhibits were numerous documents of undisputed authenticity corroborating Dr. Rosendorff's testimony and memorializing Defendants' fraudulent conduct.  That body of evidence would have led to the same result at trial regardless of whether the jury heard the statements at issue here.  ECF No. 1587 at 15-20.

Certain of Dr. Rosendorff's statements also fail to satisfy the *Harrington* test for more specific reasons, as discussed below.

A.    **Dr. Rosendorff's statements regarding his approval of Theranos's mission and hardworking employees are cumulative of other evidence.**

At the evidentiary hearing, Dr. Rosendorff confirmed he told Mr. Evans something to the effect that Theranos employees were working hard to do something good and meaningful.  10/17/22 Transcript at 29.  This statement does not meet the requirements for a new trial based on newly discovered evidence because, among other reasons, it is cumulative of trial testimony as well as earlier statements by Dr. Rosendorff.

U.S. SUPP. BRIEF RE ROSENDORFF MOT.
18-CR-00258 EJD

First, as discussed in the government's Opposition, that statement is cumulative of equivalent testimony elicited from Dr. Rosendorff and other witnesses at trial.  ECF No. 1587 at 12-14.  Even the government's opening statement disclosed similar facts about Theranos, including that Theranos was "a real company" and not "just a shell."  9/8/21 Transcript at 553.  Government counsel also made a point during opening of explaining that the company "had many scientists and many professionals who believed in some of the lofty concepts and aspirations that the Defendant articulated."  *Id.*  Because Dr. Rosendorff's statement is cumulative of the testimony and argument above, it automatically fails the *Harrington* test and there is no reason to believe that its introduction at a retrial would result in an acquittal.

Moreover, this evidence was not new even at the beginning of Defendant's trial.  In a 2018 deposition, Dr. Rosendorff described the work of Theranos's R&D group, emphasizing its size, the number of Ph.Ds, and the fact that they were developing Theranos proprietary assays.  *See* Exhibit 1 to Declaration of John Bostic (Colman Depo. Tr.) at 214:15-216:7.  Dr. Rosendorff testified that the CLIA group included approximately twelve people, with varying levels of degrees, as well as groups devoted to manufacturing and R&D that generated "multiple patents."  *Id.* at 213:23-214:11, 216:12-217:25.  Dr. Rosendorff praised Theranos's R&D group as "intelligent" and "very well qualified."  *Id.* at 216:8-11.

In a 2019 deposition, Dr. Rosendorff expressed similar sentiments about the hard work of Theranos scientists.  Dr. Rosendorff testified that he sometimes worked after hours.  Bostic Decl. Exh. 2 (Arizona Theranos Litig. Depo. Tr.) at 184:18-19.  He also testified that he regarded the assay development team and numerous scientists and Ph.Ds as capable (*id.* at 184:25-185:22, 192:3-193:3); that Theranos also was involved in manufacturing reagents, cups, and devices and was a "pretty complicated business" (*id.* at 186:1-187:9); and that he thought he had a "good team throughout the time period he was there" (*id.* at 189:11-19).

Dr. Rosendorff made similar statements to the government, which were memorialized in memoranda and produced to the defense.  In that setting, Dr. Rosendorff observed that the R&D sections were working 24/7 (Bostic Decl. Exh. 3 (8/30/21 Rosendorff Interview Memo)); that he believed Theranos would be the "next great thing" (Bostic Decl. Exh. 4 (7/22/16 Rosendorff Interview Memo));

1  that the company had qualified technical and general supervisors (Bostic Decl. Exh. 5 (6/7/17

2  Rosendorff Interview Memo)); and that Theranos employees "worked to complete SOP's and assay

3  validation" (*id.*).

4      Thus, Dr. Rosendorff's statement to Mr. Evans is cumulative.  If Defendant disagrees, then she

5  was not diligent in seeking this testimony at trial, given that Dr. Rosendorff's views on this subject were

6  documented and provided to the defense well before trial.

7      **B.    Dr. Rosendorff clarified that certain of his statements did not even apply to
       Defendants Holmes and Balwani.**

8

9      During the evidentiary hearing, Dr. Rosendorff clarified that his statements to Mr. Evans were

10  not exculpatory of either Defendant in this case.  To the extent Dr. Rosendorff expressed appreciation or

11  sympathy for his coworkers at Theranos, he testified that he did not intend to include Defendants in

12  those expressions.  Specifically, as to Dr. Rosendorff's statement that everyone at the company was

13  working hard to do something good and meaningful, he emphasized at the hearing that he "wasn't

14  referencing Elizabeth or Sunny in that statement."  10/17/22 Transcript at 29.  Similarly, Dr. Rosendorff

15  had "sympathy for the rank and file employees at Theranos whose careers and lives have been so

16  severely impacted by the scandal," but that sympathy stopped short of Holmes and Balwani themselves.

17  *Id.* at 17.  Because those statements expressly *exclude* Defendants, they are not material under

18  *Harrington* and could not lead to an acquittal were the case to be retried.

19      **C.    The content of Dr. Rosendorff's trial cross-examination does not provide a basis for
       a new trial.**

20      For similar reasons, the Court should reject Defendant's argument that clarifications or

21  concessions elicited from Dr. Rosendorff during cross-examination are proof of government misconduct

22  during his direct.  As discussed above, Dr. Rosendorff has firmly disavowed any belief that the

23  government used him to introduce false testimony or a misleading narrative.  At last week's hearing,

24  when the defense questioned Dr. Rosendorff about his cross-examination at trial, he disagreed with any

25  suggestion that he had reversed himself on the stand, instead describing that additional testimony as

26  clarifying.  10/17/22 Transcript at 23-24, 42-43.

27  / /

28

U.S. SUPP. BRIEF RE ROSENDORFF MOT.
18-CR-00258 EJD

1    As an initial matter, there is no way Dr. Rosendorff's testimony during cross-examination at trial

2    could, on its own, support Defendant's motion for a new trial.  Under Federal Rule of Criminal

3    Procedure Rule 33(b), new-trial motions must be filed within fourteen days of a guilty verdict unless

4    they are based on "*newly discovered* evidence."  Fed. R. Crim. P. 33(b) (emphasis added).  And the

5    Ninth Circuit has made the existence of newly discovered evidence the very first factor of the applicable

6    five-factor test governing these motions, underscoring this requirement.  *United States v. Harrington*,

7    410 F.3d 598, 601 (9th Cir. 2005).  A witness's trial testimony—observed in real time by the defendant

8    and her counsel—is not newly discovered evidence and cannot form the basis of a new-trial motion filed

9    months after the fact.  *See United States v. Hinkson*, 585 F.3d 1247, 1257–58, 1264-65 (9th Cir. 2009)

10   (*en banc*).  In this case, Defendant sought an evidentiary hearing in the hope that Dr. Rosendorff would

11   say something that would cast doubt on the reliability of his trial testimony.  Dr. Rosendorff made no

12   such statement, and a new-trial motion is not the vehicle to relitigate issues covered exhaustively at trial.

13   By definition, Dr. Rosendorff's testimony on cross-examination is cumulative of the trial

14   evidence; indeed, it *is* trial evidence.  Under *Harrington*, cumulative evidence does not warrant a new

15   trial.  *See Harrington*, 410 F.3d at 601 (requiring the defendant to show that new evidence underlying a

16   new-trial motion is not cumulative or merely impeaching).  This is especially true in cases where the

17   relevant witness was cross-examined extensively.  *United States v. Glantz*, 884 F.2d 1483, 1486 (1st Cir.

18   1989).  This Court noted this issue before the evidentiary hearing, pointing out that the defense had

19   "already had a fulsome opportunity to examine him" and "explore this" during his several days on the

20   stand.  10/3/22 Transcript at 8.

21   More generally, the Court should reject the implication that any points scored by the defense on

22   cross-examination necessarily suggest misconduct by the prosecution.  The Supreme Court recognizes

23   that "the principal purpose of cross-examination" is "to challenge whether the declarant was sincerely

24   telling what he believed to be the truth, whether the declarant accurately perceived and remembered the

25   matter he related, and whether the declarant's intended meaning is adequately conveyed by the language

26   he employed."  *Ohio v. Roberts*, 448 U.S. 56, 71, (1980), abrogated on other grounds by *Crawford v.

27   Washington*, 541 U.S. 36 (2004).  When questions during cross-examination prompt a witness to

28

U.S. SUPP. BRIEF RE ROSENDORFF MOT.
18-CR-00258 EJD

1   supplement, clarify, or correct answers he gave on direct, that is nothing more than the adversarial trial

2   process playing out as intended.  If the cross-examination of Dr. Rosendorff was as effective as the

3   defense claims, then it was beneficial to the jury's assessment both of his credibility and of Defendants'

4   conduct.  That should *increase* confidence in the fairness of the trial, not undermine it.

5   **IV.    There Is No Evidence That Other Issues Negatively Impacted the Reliability of Dr.
         Rosendorff's Testimony at Trial or at the Hearing.**

6

7           The defense's examination of Dr. Rosendorff raised issues beyond the scope of Defendant's

8   new-trial motion.  As a procedural matter, Defendant should be barred from relying on arguments not

9   raised in her opening brief.  The Court also should disregard those late-raised, collateral issues because

10  they are irrelevant to the question of whether a retrial is required based on new evidence, as discussed

11  below.

12          Although the pending motion does not reference or rely on any evidence regarding Dr.

13  Rosendorff's mental health, defense counsel went down a tangential path during last week's hearing

14  focusing on that topic, citing an article in a South African newspaper, apparently from September 2022.

15  Faced with vague questions about a reported "breakdown," Dr. Rosendorff first testified that he was not

16  sure what counsel was referring to, then stated that he recalls speaking to that publication about "the

17  difficulties of being a whistleblower."  10/17/22 Transcript at 18.  He did not testify that he told that

18  publication he had a "breakdown," or that he had needed medication and hospitalization—much less

19  confirm that those statements in the article were actually true.  *Id.* at 18-19.  Dr. Rosendorff did state that

20  he was not struggling emotionally on the day he visited Defendant's home, and that he was not taking

21  any medication at the time that might have affected his memory or perception of events.  *Id.* at 11, 19-

22  20.  More importantly, Dr. Rosendorff testified that he does not believe that any health issues

23  "influenced the truthfulness of [his] interactions with the government" in this case.  *Id.* at 57.

24          The record contains no indication whatsoever that Dr. Rosendorff suffered from a mental health

25  issue that affected his ability to serve as a reliable witness in connection with this trial.  Newly raised

26  and uncorroborated insinuations about Dr. Rosendorff's mental health do not justify discounting his

27  testimony or granting a new trial.[2]

28  _____
    [2]  In response to defense counsel's questions about whether Dr. Rosendorff disclosed his health issues to
    U.S. SUPP. BRIEF RE ROSENDORFF MOT.
    18-CR-00258 EJD

Nor should the Court ascribe significance to Dr. Rosendorff's statement that he does not want a new trial or his recognition that there could be "some legal risk" in connection with some of his statements "depending on how they came out." 10/17/22 Transcript at 33, 55. First, it is unclear what Dr. Rosendorff was admitting in response to these vague questions from the defense. More important, Dr. Rosendorff expressly confirmed that he was testifying truthfully at the hearing and that the positions he was taking were not motivated by a desire to avoid some kind of legal risk. *Id.* at 53.

Should Defendant question the truthfulness of Dr. Rosendorff's hearing testimony on this basis, her argument would be contrary to the law as well as the facts. As discussed in the government's Opposition (ECF No. 1587 at 16), courts view post-trial recantations with skepticism. *United States v. Matta-Ballesteros*, 213 F.3d 644, *1 (9th Cir. 2000) (unpublished); *United States v. Connolly*, 504 F.3d 206 (1st Cir. 2007). Where a witness later repudiates a recantation, that is generally sufficient to defeat any new-trial motion based on the earlier recantation. *See Lindsey v. United States*, 368 F.2d 633, 635-36 (9th Cir. 1966) (affirming denial of new-trial motion in case involving multiple recantations); *Matta-Ballesteros*, 213 F.3d 644, *1 (observing that a witness's repudiations of his recantation, "by themselves, probably doom [the defendant's] claim of newly discovered evidence."). In every case involving a repudiated recantation, the argument could be made that the witness is only withdrawing their recantation to prevent accusations of perjury or avoid the hassle of testifying again. The government is aware of no instance where a court has indulged that kind of speculation to grant a new trial. To the contrary, the default approach by courts ruling on new-trial motions is to direct their suspicion toward the *recantations* themselves, not the repudiations—the opposite of what the defense

the government, we note the following. The government was generally aware that Dr. Rosendorff had suffered from health issues in 2016 that prompted a leave of absence from his role at uBiome, but the government was unaware of the nature of those health issues, their cause, or any connection to Dr. Rosendorff's status as a Theranos whistleblower. In advance of Dr. Rosendorff's testimony at trial, the government disclosed to the defense documents showing that Dr. Rosendorff suffered from health issues in 2016 that prompted a leave of absence from his role at uBiome. Among the documents produced to the defense was a government memorandum documenting an interview in the government's separate investigation of uBiome. During that interview, Dr. Rosendorff was shown and commented on uBiome emails from June and July of 2016 in which he informed his employers that he had taken sick leave due to illness and was out of town with his family regaining his health. Neither the contemporaneous documents nor the content of that interview revealed any mental health issue or any connection to Theranos or this case.

1   would be asking the Court to do here.  Of course, in this case, it is clear that Dr. Rosendorff never

2   actually recanted his trial testimony.  But even if he had, his declaration and testimony at the evidentiary

3   hearing still would be dispositive under the above case law.

4                                        **CONCLUSION**

5           Defendant cannot come close to meeting her burden under Rule 33 to show why a new trial is

6   warranted.  Accordingly, the Court should deny her motion in its entirety.

7

8   DATED:  October 24, 2022                          Respectfully submitted,

9                                                     STEPHANIE M. HINDS
                                                      United States Attorney
10

11                                                      */s/ John C. Bostic*
                                                      JEFFREY B. SCHENK
12                                                    JOHN C. BOSTIC
                                                      ROBERT S. LEACH
13                                                    KELLY I. VOLKAR
                                                      Assistant United States Attorneys
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SUPP. BRIEF RE ROSENDORFF MOT.
18-CR-00258 EJD