# Exhibit 6

# In re Arizona Theranos, Inc. Litigation

## Videotaped Deposition of
## ADAM ROSENDORFF, M.D.
## February 26, 2019

CONFIDENTIAL

UNDER PROTECTIVE ORDER



www.aptusCR.com / 866.999.8310

TRANSCRIPTS-004298

### Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF ARIZONA
 3
 4   In re:              )No. 2:16-cv-2138-HRH
                         )Consolidated with
 5   ARIZONA THERANOS, INC., )2:16-cv-2373-HRH
     Litigation          )2:16-cv-2660-HRH
 6                       )2:16-cv-2775-HRH
                         )-and-
 7                       )2:16-cv-3599-HRH
     _____)
 8
 9         CONFIDENTIAL UNDER THE PROTECTIVE ORDER
10         VIDEOTAPED CONFIDENTIAL DEPOSITION OF
11                   ADAM ROSENDORFF, M.D.
12                  San Francisco, California
13                      February 26, 2019
14
15
16
17
18
19
20
21
22   REPORTED BY:
23   JOHNNA PIPER
24   CSR 11268
25   Job No. 10051729
```

### Page 2

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF ARIZONA
 3
 4   In re:              )No. 2:16-cv-2138-HRH
                         )Consolidated with
 5   ARIZONA THERANOS, INC., )2:16-cv-2373-HRH
     Litigation          )2:16-cv-2660-HRH
 6                       )2:16-cv-2775-HRH
                         )-and-
 7                       )2:16-cv-3599-HRH
     _____)
 8
 9         Deposition of ADAM ROSENDORFF, M.D.,
10   Volume 1, taken on behalf of Plaintiffs, at Lieff,
11   Cabraser, Heimann & Bernstein, 275 Battery Street,
12   29th Floor, San Francisco, California, beginning at
13   9:11 a.m. and ending at 7:32 p.m. on Tuesday,
14   February 26, 2019, before JOHNNA PIPER, Certified
15   Shorthand Reporter No. 11268.
```

### Page 3

```
 1   APPEARANCES:
 2   For the Plaintiffs:
            Keller Rohrback LLP
 3          1201 Third Avenue, Suite 3200
            Seattle, Washington 98101-3052
 4          (206) 623-1900
            rmorowitz@kellerrohrback.com
 5       By: Rachel E. Morowitz, Esq.
 6              --and--
 7          Lieff, Cabraser, Heimann & Bernstein
            275 Battery Street, 29th Floor
 8          San Francisco, California 94111
            (415) 956-1000
 9          tashur@lchb.com
            jleggett@lchb.com
10       By: Tanya Ashur, Esq.
            James Leggett, Esq.
11   For the witness:
12          Coblentz, Patch, Duffy & Bass LLP
            One Montgomery Street, Suite 3000
13          San Francisco, California 94104
            (415) 391-4800
14          rmorgan@cobletzlaw.com
         By: Rees F. Morgan, Esq.
15
16   For Ramesh Sunny Balwani:
            Davis, Wright, Tremaine LLP
17          920 Fifth Avenue, Suite 3300
            Seattle, Washington 98104-1610
18          (206) 622-3150
            steverummage@dwt.com
19          jeffcoopersmith@dwt.com
         By: Stephen M. Rummage, Esq.
20          Jeffrey B. Coopersmith, Esq.
21              -and-
22          Davis, Wright, Tremaine LLP
            505 Montgomery Street, Suite 800
23          San Francisco, California 94111
            (415) 276-6584
24          kellygorton@dwt.com
         By: Kelly M. Gorton, Esq.
25
```

### Page 4

```
 1   For the Walgreens Defendants:
            Sidley Austin LLP
 2          One South Dearborn
            Chicago, Illinois 60603
 3          (312) 853-6892
            lawrence.fogel@sidley.com
 4          sstern@sidley.com
         BY: Lawrence P. Fogel, Esq.
 5          Stephanie C. Stern, Esq.
 6   For Elizabeth Holmes (telephonically):
            Cooley
 7          1700 Seventh Avenue, Suite 1900
            Seattle, Washington 98101-1355
 8          (206) 452-8700
            jlombard@cooley.com
 9       By: Jeff Lombard, Esq.
10
     Also Present: Monti Majthoub, videographer.
```

Page 41

1  CLIA lab group responsible for?
2     A.  Receipt of specimens, accessioning of
3  specimens, triage of specimens to different service
4  areas, and testing of specimens.  And also then
5  reporting out -- the CLSs would report out the
6  results using the laboratory information system.
7     Q.  Can you explain more what you mean by
8  triage to service areas?
9     A.  Well, a given patient would have a set of
10 orders that were -- that were -- that belonged to
11 them.  Say a patient needed hematology testing and a
12 CHEM-7, so their Vacutainers would have to go to
13 that part of the Normandy lab that they would --
14 they would receive their dilutions for the Tecan in
15 a different way, be aliquoted into 96 well plates,
16 et cetera.  Most of this was -- was auto --
17 automated, but there was some manual intervention as
18 well.
19    Q.  And CLIA is an acronym?
20    A.  Clinical Laboratory Information [sic] Act
21 of 1988.
22    Q.  Do CLIA lab directors interact with
23 regulatory entities?
24    A.  Yes.  We were inspected by New York State
25 in 2013 and at the end of 2013 we were inspected by

Page 42

1  Laboratory Field Services from the California
2  Department of Public Health.
3     Q.  What was the result of the New York State
4  inspection in 2013?
5     A.  We passed it.  But Kerry was the one
6  leading that inspection.  I didn't really lead that
7  inspection.
8     Q.  Were Edisons inspected as part of the
9  New York State inspection?
10    A.  No.
11        MR. RUMMAGE:  Object to the form of the
12 question.
13 BY MS. MOROWITZ:
14    Q.  What was inspected as part of the New York
15 inspection?
16    A.  I don't know.  I wasn't part of it.
17    Q.  Were you part of the inspection at the end
18 of 2013 with the California regulators?
19    A.  Yes.
20    Q.  Were the Edisons inspected as part of that
21 inspection?
22    A.  No.
23        MR. RUMMAGE:  Object to the form of the
24 question.
25        MR. FOGEL:  Sorry, I couldn't hear the

Page 43

1  answer over the objections.
2        THE WITNESS:  I said no.
3        MR. FOGEL:  You said no?
4  BY MS. MOROWITZ:
5     Q.  What was part of -- what was included as
6  part of that inspection?
7     A.  The inspection of the upstairs lab.
8     Q.  Did the inspector ask to go to the
9  downstairs lab?
10    A.  We mentioned it to them and -- I then
11 e-mailed Daniel and said, should we -- should we
12 offer to take them downstairs to the downstairs lab,
13 and he said, not unless they explicitly ask about it
14 again.  So by -- by that act, again, I take it that
15 we actually -- we did apprise the inspector of the
16 downstairs lab.
17    Q.  What was the purpose of that inspection?
18        MR. RUMMAGE:  Object to the form, lacks
19 foundation.
20        THE WITNESS:  To receive licensure to -- to
21 process specimens for patient care.
22 BY MS. MOROWITZ:
23    Q.  At that time, was the Edison being used to
24 process samples for patient care?
25        MR. RUMMAGE:  Object to the form of the

Page 44

1  question.  Lacks foundation.
2        THE WITNESS:  I believe so.
3  BY MS. MOROWITZ:
4     Q.  So beyond the New York State inspection in
5  2013 and the California regulator inspection at the
6  end of 2013, did Theranos go -- undergo any
7  additional inspections while you were there?
8     A.  No.
9     Q.  So as lab director, was it ultimately your
10 responsibility to make sure that the CLIA lab was
11 compliant with applicable regulations?
12    A.  Yes.
13    Q.  And if the CLIA lab were to be found in
14 violation of any of those regulations, could you be
15 held personally liable?
16        MR. MORGAN:  Objection.  Lacks foundation.
17 Calls for a legal conclusion.
18        THE WITNESS:  It's possible.  I don't know.
19 BY MS. MOROWITZ:
20    Q.  Can you just walk me through a typical day
21 for you at Theranos?
22    A.  Gee.  I would come into the lab.  We -- we
23 were processing a lot of data in -- in about
24 September of 2013.  We were doing validation
25 reports, so we used the CLSI software to establish

Page 361

1  right, at one point you said, "I shouldn't have
2  signed this document." Do you remember saying that?
3      A. Yes.
4      Q. And I believe that counsel cleared up that
5  issue, but I want to again just make sure it's
6  crystal clear for the record. Today, is this
7  roughly the first time you've seen this document
8  since you signed it?
9      A. Correct.
10     Q. And as counsel for Mr. Balwani pointed out,
11 if you look at page 5 of 6, there is a series of
12 attachments listed there.
13     A. Yes.
14     Q. And we don't have the attachments with us
15 today; is that right?
16     A. Correct.
17     Q. And -- do you remember what any of those
18 attachments said?
19     A. No, I don't -- don't recall.
20     Q. Is it at least possible that those
21 attachments made you feel comfortable in executing
22 this standard operating procedure?
23     A. Yes, it's possible.
24     Q. Dr. Rosendorff, have you ever signed off on
25 and SOP that you weren't comfortable with?

Page 362

1      A. No, never.
2          MR. MORGAN: That's all I have.
3          MR. RUMMAGE: Thank you.
4          MR. MORGAN: Thank you.
5          MS. MOROWITZ: Plaintiffs have no further
6  questions.
7          Thank you for your time, Mr. --
8  Dr. Rosendorff.
9          THE WITNESS: Thank you.
10         THE VIDEOGRAPHER: Okay. This concludes
11 today's proceedings. We are now going off the video
12 record. The time is 7:31 p.m.
13         COURT REPORTER: Stephen, do you want a
14 copy of the transcript?
15         MR. RUMMAGE: Yes, please. Thank you.
16         COURT REPORTER: Lawrence, do you want a
17 copy of the transcript today?
18         MR. FOGEL: Yeah. Can we do electronic
19 only?
20         (TIME NOTED 7:32 p.m.)

Page 363

1               CERTIFICATE OF REPORTER
2          I, JOHNNA PIPER, a Certified Shorthand
3  Reporter, hereby certify that the witness in the
4  foregoing deposition was by me duly sworn to tell
5  the truth, the whole truth and nothing but the truth
6  in the within-entitled cause;
7          That said deposition was taken down in
8  shorthand by me, a disinterested person, at the time
9  and place therein stated, and that the testimony of
10 the said witness was thereafter reduced to
11 typewriting, by computer, under my direction and
12 supervision;
13         I further certify that I am not of counsel
14 or attorney for either or any of the parties to the
15 said deposition nor in any way interested in the
16 event of this cause and that I am not related to any
17 of the parties thereto.
18
19 DATED: March 13, 2019
20
21                    _____
22
23                    JOHNNA PIPER, CSR 11268

Page 364

1           DECLARATION UNDER PENALTY OF PERJURY
2  Case Name: In re Arizona Theranos, Inc. Litigation
3  Date of Deposition: 02/26/2019
4  Job No.: 10051729
5
6          I, ADAM ROSENDORFF, M.D., hereby certify
7  under penalty of perjury under the laws of the State of
8  _____ that the foregoing is true and correct.
9          Executed this _____ day of
10 _____, 2019, at _____.
11
12
13                    _____
14                    ADAM ROSENDORFF, M.D.
15
16 NOTARIZATION (If Required)
17 State of _____
18 County of _____
19 Subscribed and sworn to (or affirmed) before me on
20 this _____ day of _____, 20__,
21 by_____, proved to me on the
22 basis of satisfactory evidence to be the person
23 who appeared before me.
24 Signature: _____ (Seal)