JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ELIZABETH HOLMES and RAMESH "SUNNY" BALWANI, <br><br> Defendants. | Case No. CR-18-00258-EJD <br><br> **MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM** <br><br> Hon. Edward J. Davila |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................................1

I.   THE GOVERNMENT URGES THE COURT TO ADOPT AN ERROR-LADEN LOSS CALCULATION. ...................................................................................................2

    A.   The Government Must Prove the Fraud Was the But-For and Proximate Cause of Loss and Has Not Done So. ...........................................................2

    B.   The Loss Should Not Be Measured by the Entirety of the Investment. ..............5

II.  THE COURT SHOULD NOT SENTENCE MS. HOLMES BASED ON THE ACQUITTED PAYING PATIENT CONSPIRACY ..................................................7

    A.   Acquitted Conduct Should Not Be Used to Sentence Ms. Holmes. ....................7

    B.   The Government Continues to Present the Patient Testing Issues in an Incomplete and Misleading Way. ........................................................................7

    C.   The PSR Does Not Recommend an Enhancement for Serious Risk of Injury and the Court Should Not Adopt that Enhancement. ..............................9

III. MS. HOLMES UNDERTOOK A GENUINE REFORM OF THERANOS. ...............10

IV.  THE GOVERNMENT'S ASSESSMENT OF THE § 3553(A) FACTORS DOES NOT FAIRLY CAPTURE THE CONSIDERATIONS APPLICABLE HERE. .........10

    A.   The Seriousness of the Offense Does Not Support a 15-Year Sentence. .........10

    B.   A Lengthy Prison Sentence Does Not Serve Specific or General Deterrence ..11

    C.   The Comparator Cases the Government Identifies Do Not Support Its Arguments. .........................................................................................................12

V.   THE PSR CORRECTLY CONCLUDES MS. HOLMES DOES NOT HAVE THE ASSETS TO PAY A FINE. ........................................................................................13

CONCLUSION ....................................................................................................................................13

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

i

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ................................................................. 2

*United States v. Bell*, 808 F.3d 926 (D.C. Cir. 2015) ....................................................................... 7

*United States v. Berger*, 587 F.3d 1038 (9th Cir. 2009) ............................................................. 2, 3

*United States v. Bryson*, 101 F. Supp. 3d 147 (D. Conn. 2015) .................................................. 5

*United States v. Byors*, 586 F.3d 222 (2d Cir. 2009) ...................................................................... 5

*United States v. Coleman*, 370 F. Supp. 2d 661 (S.D. Ohio 2005) ............................................ 7

*United States v. Hussain*, 2019 WL 1995764 (N.D. Cal. May 6, 2019) .................................. 6

*United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010) ............................................................. 4

*United States v. Lonich,* 23 F.4th 881 (9th Cir. 2022) ................................................................... 2

*United States v. McClinton*, 23 F.4th 732 (7th Cir. 2022) ............................................................ 7

*United States v. Petty*, 982 F.2d 1365 (9th Cir. 1993) ............................................................. 4, 8

*United States v. Pimental*, 367 F. Supp. 2d 143 (D. Mass. 2005) ............................................ 7

*United States v. Ponce*, 51 F.3d 820 (9th Cir. 1995) ..................................................................... 8

*United States v. Skilling*, 4:04-cv-00025-2 (S.D. Tex. Oct. 23, 2006) ..................................... 12

*United States v. Turk*, 626 F.3d 743 (2d Cir. 2010) ........................................................................ 5

*United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007) ................................................................. 5, 6

## OTHER AUTHORITIES

18 U.S.C. § 3553(a) ......................................................................................................... 10, 11, 14

Fed. R. Crim P. 45 ............................................................................................................................... 9

Local Criminal Rule 32-5(b) ........................................................................................................... 9

U.S.S.G. § 2B1.1(b)(16) ..................................................................................................................... 9

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

# INTRODUCTION

The government asks the Court to imprison Ms. Holmes on purportedly "relevant" conduct that it has not proven and on constructions of the Guidelines and statutory factors that are inconsistent with the law. If adopted, this request would lead to an erroneous and unjust Guidelines calculation. In order to enhance Ms. Holmes' Guidelines calculation on the total amount invested by any investors, the government must prove by clear and convincing evidence that the fraud caused the loss of that entire amount. This requires proof that the misrepresentations were the but-for cause of the investment and proof that the identified amount of the loss occurred and was proximately caused by the fraud. The government has not done so, whether by clear and convincing evidence or even a preponderance of the evidence. Indeed, for many of the investors, the government presents no evidence at all regarding the investment other than the fact there was an investment in Theranos and the amount. It has failed to carry its burden on loss.

The statutory factors counsel a different sentence than the government recommends. This case and this defendant are nothing like the frauds driven by greed the government cites in favor of a lengthy incarceration. Ms. Holmes advanced health care accessibility through Theranos; she built a real company with real value; she did not cash in her stock despite opportunities to do so; she acknowledged and sought to address the many errors that she and others at the company made; and she has made efforts outside Theranos to help others.

Ms. Holmes urges the Court to look skeptically at the government's framing of the events and its arguments, which rely on facts that the government chose not to test at trial. As the scores of letters from people who know Ms. Holmes make clear, the government's caricature of Ms. Holmes does not reflect who she really is. Additional letters received since Ms. Holmes' initial filing, attached as Exhibit A-1, reiterate this point. Professor Channing Robertson explains:

> Over the past twenty years I have spent hours upon hours with Elizabeth Holmes. Her attributes of compassion for others, her hope to make this a better world, her empathy for her teams at Theranos while expecting the best from them, her desire to give and not take, all combine to imbue her with qualities that inspired many young scientists and engineers to join with her in a crusade that could have, and would have improved the quality of life for all.

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

1

Ex. A-1 at 3 (C. Robertson Ltr. at 3).  The government fails to see Ms. Holmes' humanity and refuses to credit her positive qualities.  The Court should not follow suit when it sentences her.

## I. THE GOVERNMENT URGES THE COURT TO ADOPT AN ERROR-LADEN LOSS CALCULATION.

The government asks the Court to add 26 to 30 levels to Ms. Holmes' offense level based on an incorrect standard that infects its entire approach and inserts error into the Guidelines calculation.  The Court should decline this invitation.  The government's approach to loss—which simply assumes that all C-1 and C-2 investments constitute the relevant loss—suffers from two fundamental problems.  First, the government must prove that fraud caused each loss on an investment-by-investment basis.  And, second, the government cannot use the entire investment as the measure of loss because Theranos was a legitimate company that retained substantial value even after any fraud was revealed.

### A. The Government Must Prove the Fraud Was the But-For and Proximate Cause of Loss and Has Not Done So.

Contrary to the government's suggestion, *see* Gov. Sent'g Mem., Dkt. 1649 at 16, there is no question that the government bears the burden of proving that the offense conduct caused the loss it seeks to use to increase Ms. Holmes' sentence.  The Court can find loss only if the government proves that the offense conduct (here the fraudulent misstatements) was both the but-for and proximate cause of that loss.  The Ninth Circuit reiterated this requirement just this year in *United States v. Lonich*, a wire fraud case.  23 F.4th 881, 916-17 (9th Cir. 2022) ("Applying this principle, we have vacated sentences when the government failed to produce sufficient evidence to show proximate or but-for cause for asserted loss amounts.").  *United States v. Berger*, 587 F.3d 1038 (9th Cir. 2009), which the government relies on to suggest that it does not have to prove that the fraud caused the loss, Gov. Sent'g Mem., Dkt. 1649 at 16, is not to the contrary.  There, the Ninth Circuit declined to impose the civil securities standard stated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005).  *Berger*, 587

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

2

F.3d at 1043-45.[1]  But the Ninth Circuit reiterated that the court must find that the fraud was a but-for and proximate cause of the loss.  *Id.* at 1043.[2]

The government has not proven that the fraud was a but-for cause of loss—i.e., that investors relied on a misstatement to make their investments.  The government primarily relies on a spreadsheet outlining purported C-1 and C-2 investments that provides no information as to the circumstances of the investment.  The government suggests that because, in its view, the investments are part of the same conspiracy, it has proven that the fraud caused the loss for each investment.[3]  *See* Gov. Sent'g Mem., Dkt. 1649 at 17.  This contention is faulty for at least two reasons.

First, it rests on an incorrect factual assumption.  The government suggests that all investors were provided similar information and therefore the Court can treat them all together and assume that they were all victims whose entire investments were caused by the fraud.  That is incorrect.  The evidence at trial showed that investors were not all provided the same information and the circumstances of their respective investments were different.  For example, Alan Eisenman's chief complaint was that he was provided no information prior to his late 2013 investment.  The Hall Group participated in a conference call where it and other investors were able to ask questions.  PFM received a detailed financial model from Mr. Balwani, and then created its own financial model that was even more optimistic based on its independent research.  Walgreens was able to have outside experts at Johns Hopkins review Theranos' technology and data, and even received two Theranos TSPUs for its own evaluation and use.  *See* Holmes 11/29/21 Tr. 7781:25-7782:6; Ex. CC (Dr. Jay Rosan Dep. Tr.) at 234-244.  And there is no question that Theranos' board members and lawyers (including Boies Schiller) had information about the company that other investors did not have.  Portraying Boies Schiller as an

---

[1] The Ninth Circuit acknowledged that its approach created a circuit split.  *See Berger*, 587 F.3d at 1043.

[2] In fact, it instructed the district court on remand "to redetermine, based on the principles described herein, how much of the shareholders' loss was actually caused by Berger's fraud," and noted that it should use a method that "attempt[s] to gauge the difference between Craig's share price—as inflated through fraudulent representation—and what that price would have been absent the misrepresentation."  *Id.* at 1046-47.

[3] Because wire fraud does not require proof of causation, the fact of conviction on counts 1 and 6 through 8 do not satisfy this standard.  *See* Holmes Sent'g Mem., Dkt. 1642 at 32-34.

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

3

investor victim runs contrary to the government's characterization of that firm as an instrument of the conspiracy elsewhere in its memorandum. *See* Gov. Sent'g Mem., Dkt. 1649 at 13-14. The jury's split verdict as between the C-1 and C-2 investors also supports a finding that different information was given to different investors.

Second, *United States v. Laurienti*, 611 F.3d 530, 557 (9th Cir. 2010), does not counsel otherwise here. In that case, there was evidence that the investors received the same information about the public company stocks at issue, *see id.* at 535-36; here, the sophisticated investors in this private company received and had access to different information. Further, unlike in this case, the government in *Laurienti* proved through the trial that the misstatements were the but-for cause of the loss. *Id.* at 536. In any event, the court conducted an individualized loss calculation and excluded loss where there was evidence that two of the relevant clients were not victimized. *Id.* at 557. Here, the government has presented little (and in many cases no) evidence of the circumstances surrounding most of the investments it seeks to include in the loss calculation. The Court cannot rely on Ms. Holmes' conviction for conspiracy to commit wire fraud to sweep in all of the investments without further proof.

The government asks the Court to find it has proven loss and the number of victims based on additional efforts in its investigation, such as interviews. In assessing the substantive weight of the information in the interview memoranda and deposition testimony supplied by the government, the Court should be cautious. It is well-established that a defendant "has a due process right not to be sentenced on the basis of materially incorrect information." *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993). In particular, the Court should look skeptically at the government's attempts to increase a criminal sentence based on witnesses it interviewed and then chose not to call at trial and victim impact statements that are inconsistent with the record. The same is true for witnesses whom the government contacted and/or interviewed only *after* the government's case in Ms. Holmes' trial concluded, such as Pat Mendenhall.

Indeed, the danger in the government's suggested approach is made clear in its treatment of the investments of former Secretary of State and board member George Shultz. Mr. Shultz testified in a 2017 deposition that he believed Ms. Holmes was truthful with him with regard to Theranos matters:

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

4

> Q. Do you have a high opinion of Ms. Holmes?
> A. Yes.
> Q. Do you believe that Ms. Holmes was truthful with you in all of your interactions with her?
> A. Yes, I think so.
> Q. In any of her interactions with you, did Ms. Holmes ever do anything to give you reason to believe that she was trying to deceive you?
> A. No.

Leach Decl, Ex. L at 15:15-23.  The government nevertheless asks the Court to increase Ms. Holmes' sentence based on investments Mr. Shultz made because of the statements of Shultz family members who were not involved in Mr. Shultz's investment decision.  *See* Gov. Sent'g Mem., Dkt. 1649 at 8.  The Court should disregard the government's out-of-context, out-of-court "evidence."

### B. The Loss Should Not Be Measured by the Entirety of the Investment.

The government is incorrect that loss should be measured by the entirety of the investments.  In *United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007), the Ninth Circuit distinguished between investments in companies that were shams—i.e., the investment was worthless when made—and investments in companies that were otherwise legitimate enterprises but had their investment price inflated by the fraud.  *See Zolp*, 479 F.3d at 719.  All parties agree that Theranos was a legitimate enterprise.  *E.g.*, Holmes 9/8/21 Tr. 553:7-8 (gov't opening).  *Zolp* therefore requires that the Court "disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes."  *Id.*

The government suggests this case does not fall under the *Zolp* framework because *Zolp* applies only with respect to public companies.  Gov. Sent'g Mem., Dkt. 1649 at 17.  The cases the government cites—*United States v. Turk*, *United States v. Byors*, and *United States v. Bryson*—do not turn on the company's public or private status.  Instead, in each case, the defendant lied about the *nature* of the consideration the victim was receiving in exchange for the loan or investment, not its *value*.  In *United States v. Turk*, 626 F.3d 743, 748-49 (2d Cir. 2010), the defendant told the victims their loans were secured but did not secure the loans; the remaining value of the supposed collateral was irrelevant because there was no collateral at all.  In *United States v. Byors*, 586 F.3d 222, 224 (2d Cir. 2009), the defendant also lied about what assets were used to secure the loans at issue.  In *United States v. Bryson*,

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

5

101 F. Supp. 3d 147, 155 (D. Conn. 2015), the defendant promised the victims securities with one set of rights, but they received securities with another set of rights.[4] Here, there is no argument that investors did not receive the shares they were promised under the legal terms under which they were offered; the issue is the value of those shares. There is also no question the value of those shares was substantially greater than zero. *See* Holmes Sent'g Mem. at 36-38. This case therefore fits within the *Zolp* framework as one "involving an otherwise legitimate company." 479 F.3d at 719.

Ignoring Theranos' substantial value undermines the fact-specific, economically rational approach the Court should take when assessing loss. The government encourages the Court to look at the fact that Theranos ultimately failed in September 2018, after the indictment, as proof that the fraud caused a total loss. This approach fails to account for principles of proximate causation. In other words, the government does not consider the many intervening causes that ultimately led to the company to close nearly three years after the fraud was revealed.

The government proffers the Saba Report as an alternative measure of loss in the event the *Zolp* framework applies. As Ms. Holmes explained in her sentencing memorandum, the report has numerous flaws that make it unreliable (such as its failure to account for Theranos' valuable intellectual property) and the large range of potential loss it finds defies the definition of a reasonable estimate. *See* Holmes Sent'g Mem., Dkt. 1642 at 38-39; *United States v. Hussain*, 2019 WL 1995764, at *5 (N.D. Cal. May 6, 2019) (rejecting government's proposal of loss based on expert report because "a range is not an amount" and the "staggeringly large range" did not meet the standard for a loss "reasonably . . . determined"), *aff'd*, 818 F. App'x 765 (9th Cir. 2020). But the Saba Report represents an acknowledgement by the government that Theranos had substantial value and shows how complex and assumption-driven a counterfactual valuation of a private startup company is.

---

[4] These cases also reinforce the need to prove causation. In each case, the government proved the loans or investments were made in reliance on particular representations by the defendants.

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

6

## II. THE COURT SHOULD NOT SENTENCE MS. HOLMES BASED ON THE ACQUITTED PAYING PATIENT CONSPIRACY.

The PSR correctly declines to calculate the Guidelines sentence based on acquitted conduct, and the Court should do likewise.

### A. Acquitted Conduct Should Not Be Used to Sentence Ms. Holmes.

Relying on acquitted conduct to enhance a defendant's sentence, while currently not foreclosed by the Supreme Court, is fundamentally unfair. *See United States v. McClinton*, 23 F.4th 732, 735 (7th Cir. 2022) (noting that an increasing number of Circuit judges and Supreme Court justices "have questioned the fairness and constitutionality of allowing courts to factor acquitted conduct into sentencing calculations"). Ms. Holmes submits that a sentence that relies on acquitted conduct violates the Sixth Amendment's right to trial by an impartial jury and the Fifth Amendment's Due Process Clause. "[F]actoring acquitted conduct into sentencing decisions imposes almost insurmountable pressure on defendants to forgo their constitutional right to a trial by jury." *United States v. Bell*, 808 F.3d 926, 932 (D.C. Cir. 2015) (Millett, J., concurring in denial of rehearing en banc). It "skews the criminal justice system's power differential too much in the prosecution's favor." *United States v. Coleman*, 370 F. Supp. 2d 661, 672 (S.D. Ohio 2005). Here, the Court should "neither marginalize [the jury's] finding nor allow the government another opportunity to make a failed case." *Id.* at 673; *see also United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005).

### B. The Government Continues to Present the Patient Testing Issues in an Incomplete and Misleading Way.

The evidence at trial established that Theranos had a laboratory structure with policies and procedures and qualified personnel on whom Ms. Holmes relied; that laboratory employees investigated questions and concerns pursuant to those policies; that when Ms. Holmes was notified of an issue, she was responsive; and that when more pervasive issues were brought to her attention, she provided the company resources to address those issues. Holmes 9/28/21 Tr. 2045:2-2046:11, 2079:9-2080:16, 2091:21-2092:4; 10/5/21 Tr. 2729:21-2730:1; 11/10/21 Tr. 5932:4-24. Tests were only run on methods that had been validated by the laboratory director. Holmes 9/28/21 Tr. 1986:23-1987:1, 2009:14-16; Holmes 9/29/21 Tr. 2192:9-2193:5. Ms. Holmes had no authority to authorize testing and never

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

7

overruled the lab director, directed the lab director use an unreliable test method, directed him to release a result, or authorized release of a result herself. *See* Holmes 10/6/21 Tr. 2916:4-6; Holmes 10/5/21 Tr. 2729:21-2730:1; Holmes 9/28/21 Tr. 2087:1-18. The evidence also established that Theranos ran the majority of its millions of test results on FDA-approved technology, and that questions about lab results, including errors, are expected in any laboratory. The Court should not credit the government's description of the paying patient conduct, which ignores the full record.

*First*, as at trial, the government repeats anecdotes about problems identified in the lab, while disregarding the many subsequent steps taken to address them. *E.g.*, Gov. Sent'g Mem., Dkt. 1649 at 23 (bicarbonate). At trial, Ms. Holmes spent many hours ensuring the full record was presented for each of those anecdotes. *See, e.g.*, Holmes 10/5/21 Tr. 2621:5-2657:25 (defense showing that government did not review the full email chain showing bicarbonate issue was investigated and addressed within 24 hours); *see* Dkt. 1618 at 7. The PSR contains additional context for other examples used by the government in its brief, including the steps taken to investigate concerns and Ms. Holmes' lack of knowledge of them. *See* PSR ¶¶ 52-57.

*Second*, the government relies on information it did not seek to introduce at trial that has serious reliability concerns. *See Petty*, 982 F.2d at 1369 (defendant "has a due process right not to be sentenced on the basis of materially incorrect information"); *United States v. Ponce*, 51 F.3d 820, 828 (9th Cir. 1995) (per curiam) ("While hearsay statements may be considered at sentencing, due process requires that such statements be corroborated by extrinsic evidence."). For example, there was no "dire warning" from Kevin Hunter. Gov. Sent'g Mem., Dkt. 1649 at 22. No testimony regarding Mr. Hunter's purported concern was introduced at Ms. Holmes' trial, and his out-of-court account has serious credibility problems. Walgreens executive Wade Miquelon testified in other litigation that Mr. Hunter never expressed the view that the Theranos technology did not work as claimed. Ex. EE (Deposition Testimony of Wade Miquelon) at 197:14-18.

*Third*, in seeking to imprison Ms. Holmes for the patient-related conduct, the government suggests that it expected Ms. Holmes, an individual unqualified to run the laboratory or serve in most positions in it, to ignore the laboratory policies and procedures and overrule the judgments of the

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

8

qualified personnel who ran the laboratory. That position highlights a fundamental flaw in the government's narrative of the patient issues that was at the heart of Ms. Holmes' successful defense of those counts.

*Fourth*, Ms. Holmes' efforts to investigate and fix Theranos' laboratories after CMS identified problems is indicative of her good intent with respect to patient testing. Until January 2016, Theranos' clinical laboratory fell under the operational purview of Sunny Balwani. In the wake of the CMS inspection, Ms. Holmes hired two new laboratory directors who reported to her for the first time, authorized them to fully investigate the CMS findings, and deferred to their decisions. Dr. Kingshuk Das testified about that work at trial and Dr. Donald Tschirhart wrote a letter in support of Ms. Holmes for sentencing. *See* Holmes Sent'g Mem., Dkt. 1642 at 43-46; Ex. A at 261-62 (D. Tschirhart Ltr.).

### C. The PSR Does Not Recommend an Enhancement for Serious Risk of Injury and the Court Should Not Adopt that Enhancement.

In its corrected sentencing memorandum, the government objects to the PSR's failure to include an enhancement for "conscious or reckless risk of death or serious bodily injury" pursuant to U.S.S.G. § 2B1.1(b)(16).[5] The PSR correctly does not apply this enhancement. This enhancement should not be applied because the facts in support of this enhancement are based on acquitted conduct; the application of the enhancement assumes the truth of the government's presentation, which the jury rejected; and the evidence at trial made clear that Ms. Holmes did not act with reckless or conscious risk of death or bodily harm because she reasonably relied on the policies, procedures, and qualified personnel in the laboratory. Additionally, the fact that Theranos was in the business of offering lab tests does not suggest that the enhancement is appropriate. As described in Ms. Holmes' sentencing memorandum, laboratory testing is scientifically complex, inherently imprecise, and prone to potential error—even for FDA-

---

[5] The parties' sentencing memoranda and objections to the Final PSR were due on Thursday, November 10. *See* Local Criminal Rule 32-5(b) (sentencing memoranda due 7 days prior to sentencing); Fed. R. Crim P. 45(a)(1)(C), (a)(5), (a)(6) (when the due date falls on Veterans Day, the "next day" is measured by counting backward). For preservation, Ms. Holmes hereby notes that the government filed untimely (at midnight on November 11) and has forfeited any objections to the PSR. The objection in the government's corrected sentencing memorandum, which was filed even more untimely (on November 15), has been forfeited.

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

9

approved tests. Holmes Sent'g Mem., Dkt. 1642 at 57-58; Exs. R & S. Whether and why any particular laboratory test result is incorrect is a deeply technical scientific issue.

### III. MS. HOLMES UNDERTOOK A GENUINE REFORM OF THERANOS.

While the public narrative of Theranos casts it as an entirely fraudulent enterprise, at trial Ms. Holmes championed the work of the hundreds of people at Theranos who believed that they had made meaningful advancements in medical technology that would better people's lives. Many who are familiar with Theranos' work have written to the Court and sounded similar themes. *E.g.*, Ex. A at 97-98 (T. Cooper Ltr. at 2-3), 109 (C. Dillon Ltr.); Ex. A-1 at 1 (N. Gharaati Ltr. at 1).

But Ms. Holmes acknowledged mistakes and regrets. She was asked on cross examination: "Q. And you take responsibility for the company; is that your testimony? A. I do." Holmes 11/30/21 Tr. 8005:13-15. She did not deny facts, but she did explain, provide context, and correct erroneous characterizations. The government reacts to all of this by claiming that Ms. Holmes "blamed others."

As Ms. Holmes outlined in her sentencing memorandum, this case is unusual in terms of Ms. Holmes' substantial efforts to identify and correct problems and acknowledge errors. *See* Holmes Sent'g Mem., Dkt. 1642 at pp. 43-47. The government ignores those efforts. The letters submitted in support of Ms. Holmes are legion on the topic of Ms. Holmes' genuine efforts to right the ship.

### IV. THE GOVERNMENT'S ASSESSMENT OF THE § 3553(A) FACTORS DOES NOT FAIRLY CAPTURE THE CONSIDERATIONS APPLICABLE HERE.

The government's analysis of the statutory sentencing factors is also flawed. The government shows no interest in coming to the sentence that is "not greater than necessary" to serve the purposes of sentencing, 18 U.S.C. § 3553(a), choosing instead to distort even indisputably mitigating factors into aggravating factors and refusing to see Ms. Holmes with any nuance or depth.

#### A. The Seriousness of the Offense Does Not Support a 15-Year Sentence.

The government urges the Court to use Ms. Holmes' sentencing to send a clear message to the community that white collar crime is serious.[6] But Ms. Holmes was not convicted of "white collar

---

[6] In support, it purports to cite statements received from victims. None of the individuals cited testified in the case and Ms. Holmes was not convicted of defrauding any of them.

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

10

crime" in the abstract. She was convicted of defrauding certain sophisticated investors on a particular set of facts. The Court must look to the nature and circumstances of the proven offense—both mitigating and aggravating—in determining how much punishment will reflect the seriousness of the crime, and balance it with the other considerations in section 3553(a) to find the minimum sentence necessary. The high profile or "white collar" nature of the case does not aid in that analysis of the seriousness of the offense.

### B. A Lengthy Prison Sentence Does Not Serve Specific or General Deterrence.

Ms. Holmes is punished every day for the offense conduct, has been for years, and will be for the rest of her life. Anyone who has been witness to the proceedings in this matter can sense the limitations that this imposes on her. The government doesn't really dispute this. Its argument with respect to specific deterrence is different but extraordinary: it argues that prison is required for Ms. Holmes because she has ideas for how technology could be used to help individuals in the future, and is working on those ideas in the privacy of her own home. Our Nation does not imprison individuals to keep them from inventing and thinking. Ms. Holmes has not been convicted of having bad ideas; to the contrary, her ideas had substantial value, are being pursued by others, and, as many of the letters have suggested, had the potential to make health care more accessible. *E.g.*, Ex. A at 82-84 (T. Carroll Ltr.), 128 (Dr. Evans Ltr. at 1), 262 (D. Tschirhart Ltr. at 2); Ex. A-1 at 2-3 (C. Robertson Ltr. at 2-3). In any event, given her public notoriety, substantial scrutiny would undoubtedly attend any inventions or contributions by Ms. Holmes in the future. For the same reason, the government's professed concern that the SEC order barring Ms. Holmes from acting as an officer or director of an issuer of registered securities is time-limited is silly. As a practical matter, there is no reasonable possibility that Ms. Holmes will serve as an officer of a public company in the future.

With respect to general deterrence, the cases and empirical research do not support the government's position. The fact of a punishment, not the length of the punishment, serves general deterrence. Additionally, the public airing of her post-fall travails—including "extreme public ignominy" and "financial bankruptcy," Ex. A at 243 (D. Sokol Ltr. at 6), as well as her lack of personal

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD
11

safety—will have sufficiently served the goal of general deterrence.  *See* Ex. A at 153 (C. Gualy Ltr. at 2) ("Anyone would shudder to think" of enduring the negative publicity she has).

### C. The Comparator Cases the Government Identifies Do Not Support Its Arguments.

The government identifies several cases as examples of why the Court should impose the government's requested sentence.  Scrutiny of those cases demonstrates instead how unhelpful loss is in determining a sentence in a case such as this.

First, nine of the twelve examples involve a custodial sentence *below* the custodial sentence the government recommends in this case, 15 years.  Those defendants who received less than a 15-year sentence include Jeff Skilling, the former CEO of Enron, a public company the collapse of which was one of the biggest bankruptcies in history and caused tens of thousands of investors, including Enron employees (such as Ms. Holmes' father), to lose their investments, retirement, and/or other savings.  Mr. Skilling realized at least $42 million in ill-gotten gains from the conduct, including, after immediately stepping down, taking "advantage of his insider knowledge" by selling "over 500,000 shares of his Enron stock" and making "more than $15.5 million from it."  *United States v. Skilling*, 4:04-cv-00025-2 (S.D. Tex.), Dkt. 1339 (Sent. Tr.) at 18, 19.  Those facts present a stark contrast with Ms. Holmes, who took her salary but no bonus and never cashed in on her stock holdings despite the opportunity to do so.  The government also suggests it thinks that Ms. Holmes should be incarcerated for five more years than the defendant in a case in which the loss was $8.6 billion.  *See* Gov. Sent'g Mem., Dkt. 1649 at 39 (citing *McCall*).

Second, a review of the government's chart makes clear how little consistency there is between the loss amount and the amount of incarceration courts impose.   For example, a defendant whose crime caused $677 million in loss received a sentence of 97 months, while a defendant who caused 95% *less* loss (approximately $31 million) received more than 2.5 times that length (264 months).  *See* Gov. Sent'g Mem., Dkt. 1649 at 40 (citations to *Shabudin* and *Cohen*).  These kinds of inconsistencies show how the Sentencing Guidelines are particularly unhelpful in financial fraud cases like this one.  *See* Holmes Sent'g Mem., Dkt. 1642 at 60-62.  Ms. Holmes urges the Court to look to the cases that have

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

acknowledged the weaknesses in the loss provision of the Guidelines as appropriate for comparative consideration here. *See* Holmes Sent'g Mem., Dkt. 1642 at 69-71.

### V. THE PSR CORRECTLY CONCLUDES MS. HOLMES DOES NOT HAVE THE ASSETS TO PAY A FINE.

The PSR correctly concludes that Ms. Holmes does not have the assets to pay a fine. Not having any basis to contest this conclusion, the government engages in complete speculation to suggest that the Court should be suspicious.

The PSR concludes that sufficient supporting information was provided. PSR ¶ 166. There are no guarantors of Ms. Holmes' debt. Her financial circumstances have not improved since she submitted her materials to Probation.

Ms. Holmes' financial condition should not come as a surprise. The reason Ms. Holmes has essentially no assets is that she was barely an adult when she left Stanford to start the company, she received a regular salary and did not cash out her shares, she has been unable to work since 2018, she was unable to invest what assets she did have because her trading accounts were repeatedly closed by financial institutions due to the indictment, and she has incurred substantial expenses, including legal fees, over the course of this ordeal.

The government cannot dispute any of this, but nonetheless suggests that Ms. Holmes' sentence should be imposed based on the assumption that a private citizen uninvolved in the offense conduct (Ms. Holmes' partner) should marry her and have his extended family pay her debts. That is an unfounded suggestion.

### CONCLUSION

The government's sentencing arguments go beyond the case it has proven or the record it otherwise can establish, and are deserving of serious doubt. Ms. Holmes built Theranos for indisputably good reasons, invested resources and effort to correct errors, and did not cash out. She works every day to be a good friend, partner, mother, and citizen who contributes to the positive well-being of those around her. Ms. Holmes was not driven by greed, as the government apparently cannot help but persist in suggesting despite the overwhelming evidence to the contrary. *See* Gov. Sent'g Mem., Dkt. 1649 at

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

13

7. Ms. Holmes asks the Court to see beyond the government's oversimplified presentation of the offense and through the eyes of the scores of people who know her. A sentence based on the government's proffered loss amount would lead to an unjust sentence that does not meet the charge in § 3553(a). As the Court considers what sentence is "sufficient, but not greater than necessary," to serve the purposes of sentencing, we again ask for leniency for this person who tried to make health care more accessible and will never truly escape the consequences of her failures at Theranos.

DATED: November 15, 2022

/s/ *Kevin Downey*
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD

14

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2022 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Kevin Downey
KEVIN DOWNEY
Attorney for Elizabeth Holmes

MS. HOLMES' RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM
CR-18-00258 EJD