JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) **MS. HOLMES' MOTION FOR RELEASE** |
| | ) **PENDING APPEAL** |
| v. | ) |
| | ) Date: January 23, 2023 |
| ELIZABETH HOLMES and | ) Time: 1:30 PM |
| RAMESH "SUNNY" BALWANI, | ) CTRM: 4, 5th Floor |
| Defendants. | ) |
| | ) Hon. Edward J. Davila |
| | ) |
| | ) |
| | ) |
| | ) |

## MOTION FOR RELEASE PENDING APPEAL

PLEASE TAKE NOTICE that on January 23, 2023 at 1:30 pm or on such other date and time as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does respectfully move the Court for release pending appeal.  Ms. Holmes makes this motion pursuant to 18 U.S.C. § 3143.  The Motion is based on the below Memorandum of Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

DATED: December 5, 2022

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

i

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

ARGUMENT ..................................................................................................................................1

    A.    Ms. Holmes Is Neither a Flight Risk Nor a Danger to the Community's Safety. ..................................................................................................................1

    B.    Ms. Holmes' Appeal Is Not for the Purpose of Delay. ..........................................3

    C.    Ms. Holmes' Appeal Will Raise Several Substantial Questions of Law or Fact................3

    D.    The Appeal Will Result in a New Trial If the Issues Presented Are Resolved in Ms. Holmes' Favor. ...........................................................................................14

CONCLUSION..............................................................................................................................15

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **CASES**

4

*Arizona v. Youngblood*, 488 U.S. 51 (1988) ..................................................................6, 7

5

*Berger v. United States*, 295 U.S. 78 (1935) ...................................................................11

6

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................... *passim*

7

*Chia v. Cambra*, 360 F.3d 997 (9th Cir. 2004)..................................................................8

8

*Davis v. Alaska*, 415 U.S. 308 (1974)..............................................................................10

9

*Kyles v. Whitley*, 514 U.S. 419 (1995) .............................................................................10

10

*Napue v. Illinois*, 360 U.S. 264 (1959) ............................................................................11

11

*Rodriguez v. Gen. Dynamics*, 510 F. App'x 675 (9th Cir. 2013) ......................................4

12

*United States v. Bakshinian*, 65 F. Supp. 2d 1104 (C.D. Cal. 1999) ..............................12

13

*United States v. Bondaruk*, 2019 WL 266451 (E.D. Cal. Jan. 18, 2019) .........................3

14

*United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978) .........................................................5

15

*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008).............................................15

16

*United States v. Charley*, 1 F.4th 637 (9th Cir. 2021) ...................................................15

17

*United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013)......................................................14

18

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) .....................................................8

19

*United States v. Freeman*, 650 F.3d 673 (7th Cir. 2011).................................................11

20

*United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003).............................................3, 14

21

*United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985) ...............................................3

22

*United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985)...........................................1, 3, 14

23

*United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979)........................................6, 7

24

*United States v. Mendez*, 619 F. App'x 644 (9th Cir. 2015)......................................10, 15

25

*United States v. Millan*, 730 F. App'x 488 (9th Cir. 2017) ..............................................4

26

27

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

*United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989) ................................................................12

*United States v. Paguio*, 114 F.3d 928 (9th Cir. 1997) ...............................................................15

*United States v. Pollard*, 778 F.2d 1177 (6th Cir. 1985) ..............................................................3

*United States v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020) .................................................15

*United States v. Vargas*, 933 F.2d 701 (9th Cir. 1991) ..........................................................10, 15

*United States v. Zaragoza-Moreira*, 780 F.3d 971 (9th Cir. 2015) ............................................15

**STATUTES AND RULES**

18 U.S.C. § 3142 ..............................................................................................................................2

18 U.S.C. § 3143 ........................................................................................................................1, 3

Fed. R. Crim. P. 16 .....................................................................................................................4, 5

Fed. R. Evid. 403 ....................................................................................................................5, 6, 9

Fed. R. Evid. 404 ..................................................................................................................9, 11, 12

Fed. R. Evid. 407 ...........................................................................................................................6

Fed. R. Evid. 701 ...........................................................................................................................4

Fed. R. Evid. 702 ...........................................................................................................................4

Fed. R. Evid. 804 ...................................................................................................................7, 8, 15

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Ms. Holmes respectfully moves this Court for release pending appeal pursuant to 18 U.S.C.

3    § 3143(b).  This case satisfies each of the statutory factors.  First, Ms. Holmes is not a flight risk or a

4    danger to the community's safety.  Second, the appeal is not for purpose of delay.  Third, the appeal will

5    present several substantial questions.  This was a complex, hard-fought, multi-month trial with

6    numerous witnesses and hundreds of exhibits that produced a split verdict.  Ms. Holmes filed 19 motions

7    in limine before trial.  She filed a pre-trial motion to suppress and multiple motions for a new trial after

8    trial.  The Court was required to make numerous evidentiary rulings before and during trial.  In sum, the

9    record is teeming with issues for appeal.  This Court need not conclude that it erred to recognize that this

10   complex case involved many contested issues that produce substantial questions for appeal.  Finally, if

11   the Ninth Circuit rules in Ms. Holmes' favor on any or all of these issues on appeal, a new trial will be

12   required.  Release will facilitate Ms. Holmes' continued communication with her counsel as she litigates

13   these issues on appeal.  The Court should grant Ms. Holmes' motion for release pending appeal.

14

## ARGUMENT

15   As relevant here, a court may release a defendant pending appeal, if it finds that the defendant

16   (1) does not pose a flight risk and does not pose a danger to public safety, (2) the appeal is not for

17   purpose of delay, and (3) the appeal will raise a substantial question of law or fact that is, if resolved in

18   the defendant's favor, (4) likely to result in a new trial.  18 U.S.C. § 3143(b)(1); *see United States v.*

19   *Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).  The Court must find the first element, and only the first

20   element, by clear and convincing evidence.  *See* 18 U.S.C. § 3143(b)(1)(A).

21   Ms. Holmes meets each requirement.

22   **A.    Ms. Holmes Is Neither a Flight Risk Nor a Danger to the Community's Safety.**

23   Ms. Holmes is not a flight risk and poses no danger to the community's safety.  Relevant

24   considerations on this element include the nature and circumstances of the offense charged, the history

25   and characteristics of the defendant—including character, family ties, community ties, past conduct and

26   record concerning appearances at court proceedings, and criminal history—and the nature and

27

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

1    seriousness of the danger to the safety of any person or community that would be posed by the

2    defendant's release.  18 U.S.C. § 3142(g).

3           Ms. Holmes is not a flight risk.  The Court has already found that Ms. Holmes is not a flight risk

4    (or danger to the community) when it permitted her to remain in the community both before and after

5    conviction.  *See* 6/15/18 Tr. 6:6-9; Holmes 1/3/22 Tr. 9432:19-20.  Ms. Holmes' actions during the

6    pendency of this case affirm the Court's findings.  Ms. Holmes surrendered her passport and is unable to

7    travel internationally.  She has been under supervision for over four years.  After conviction, Ms.

8    Holmes continued to make court appearances, was interviewed by probation, has continued to report to

9    pretrial services, and has remained in regular contact with her counsel, with whom she continually

10   works on this case.  The Probation Office recognized in the Presentence Investigation Report ("PSR")

11   that Ms. Holmes has a "flawless record with U.S. Pretrial Services supervision during her over four

12   years under supervision."  PSR ¶ 195.  Ms. Holmes did not flee during the pendency of her case; did not

13   flee in the immediate aftermath of her conviction or sentencing; and no evidence suggests she will flee

14   while she pursues her appeal. She has strong ties to her partner and family, including her son and soon-

15   to-be-born child, that incentivize her to comply with her conditions of release.

16          The Court modified Ms. Holmes' conditions of release after her conviction in this case, which

17   led to Ms. Holmes posting a $500,000 bond secured by her parents' only home.  Those conditions and

18   bond remain sufficient to secure her release pending appeal.

19          Ms. Holmes also is not a danger to the community.  The government has never argued to the

20   contrary, and never requested that Ms. Holmes be remanded before or after conviction.  6/15/18 Tr. 6:6-

21   9; Holmes 1/3/22 Tr. 9432:19-20.  Ms. Holmes was not convicted of any crimes of violence.  Ms.

22   Holmes has no prior criminal history and has no history of violence that would suggest that she poses a

23   risk to the community's safety.  There is no threat of Ms. Holmes causing pecuniary harm given her

24   substantial notoriety.

25

26

27

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD
                                                                    2

**B.     Ms. Holmes' Appeal Is Not for the Purpose of Delay.**

Ms. Holmes' counsel represents that the contemplated appeal is not for the purpose of delay.  As discussed further below, Ms. Holmes' appeal will raise substantial questions of law or fact that, if successful, would mandate a new trial.

**C.     Ms. Holmes' Appeal Will Raise Several Substantial Questions of Law or Fact.**

The Ninth Circuit takes a liberal view of whether a "substantial question" exists for purposes of release pending appeal.  Substantial questions are those that are fairly debatable or doubtful.  *See United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985); *United States v. Bondaruk*, 2019 WL 266451, at *3-5 (E.D. Cal. Jan. 18, 2019) (granting motion for release pending appeal where two of the district court's evidentiary rulings were fairly debatable).  As the Ninth Circuit has explained, the "application of well-settled principles to the facts of the instant case" may present a substantial question.  *Handy*, 761 F.2d at 1281 (citation omitted).  In the end, the question is simply whether the issue "is one of more substance than would be necessary to a finding that it was not frivolous."  *Id.* at 1283 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (per curiam)).

The "substantial question" standard "does not require the district court to find that it committed reversible error."  *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985) (citing *Handy*, 761 F.2d at 1279); *see also Giancola*, 754 F.2d at 900 ("We . . .  are unwilling to attribute to Congress the intention to deny bail pending appeal unless a district court judge found that he or she had committed error but was obstinately unwilling to grant a new trial or other relief to correct that error.").  As the Ninth Circuit has explained, "Congress did not intend to limit bail pending appeal to cases in which the defendant can demonstrate at the outset of appellate proceedings that the appeal will probably result in reversal or an order for a new trial."  *Handy*, 761 F.2d at 1280.  Instead, Ms. Holmes must present "only a non-frivolous issue that, if decided in [her] favor, would likely result in reversal or could satisfy one of the other conditions."  *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).  Thus, that this Court has previously ruled against Ms. Holmes on the issues that she plans to present on appeal does not foreclose a finding that the issues are "substantial" for purposes of § 3143(b).

This is a complex case with a massive record.  Substantial motion practice occurred before trial,

1    during trial, and after trial.  Ms. Holmes' review of the record is ongoing.  Ms. Holmes has identified the

2    following as among the issues she may present on appeal.  Ms. Holmes will likely narrow these issues

3    by the time of the appeal briefing, and reserves the right to raise additional issues, including issues

4    related to sentencing.  Even this preliminary identification of issues for appeal reveals numerous

5    substantial questions.

6          **1.**      **Admission of Dr. Kingshuk Das' Expert Testimony and Patient Impact Assessment.**

7          Ms. Holmes may argue that the Court erred in permitting Dr. Kingshuk Das to present expert

8    testimony disguised as fact testimony in violation of Federal Rule of Criminal Procedure 16 and Federal

9    Rules of Evidence 403 and 702.  *See United States v. Millan*, 730 F. App'x 488, 488-89 (9th Cir. 2017)

10   (reversing and remanding after "government's fraud examiner [] offer[ed] lay opinions under Fed. R.

11   Evid. 701, rather than subjecting the examiner and her methodology to expert-witness scrutiny under

12   Fed. R. Evid. 702"); *Rodriguez v. Gen. Dynamics Armament & Dynamics Armament & Tech. Prods.*,

13   510 F. App'x 675, 676 (9th Cir. 2013) (reversing and remanding under Rule 702 in light of admission of

14   "specialized and highly technical testimony about the cause of [an] explosion" by lay witness).  Despite

15   the Court's pre-trial order that Dr. Das would only be permitted to provide fact-percipient testimony,

16   Dkt. 989 at 4, several portions of Dr. Das' testimony covered scientific analyses that require specialized

17   knowledge under Rule 702.  *See* Holmes 11/9/21 Tr. 5817 (defining "standard deviation"); 5820, 5831,

18   5847-48 (explaining the two-standard-deviation rule and discussing "desirable" versus "undesirable"

19   quality-control values); 5845 (explaining "standard" as a "term of art in the CLIA regulations"); 5941:3-

20   13 (explaining "sigma metrics" in context of total allowable error).  Notably, Dr. Das testified about the

21   findings of his Patient Impact Assessment, which comprised a "comprehensive retrospective analysis."

22   Holmes 11/9/21 Tr. 5827:17-18, 5830:11; TX 4943 at 1, 9.  He testified that he concluded as a result of

23   his analysis that "the laboratory has concluded that there is a possible patient impact for every test

24   reported from the laboratory's TPS 3.5 Instruments."  Holmes 11/9/21 Tr. 5832:19-21.

25         This testimony and evidence had no legitimate *factual* connection to the case.  Although Dr. Das

26   communicated his conclusions to Ms. Holmes, he did so in January 2016—after any alleged

27   misrepresentations occurred in this case and more than a year after the most recent alleged

28

1    misrepresentations to the investors.  Dr. Das' conclusions thus had no relevance to Ms. Holmes'

2    knowledge or intent.  The only purpose of this evidence was to establish as a *scientific* matter that

3    Theranos' Edison device did not produce accurate or reliable test results.

4           Ms. Holmes had no ability to test the bases and reasons underlying Dr. Das' expert opinions,

5    including his Patient Impact Assessment, because (1) the government's notice of Dr. Das' expert

6    testimony arrived two years after the Court-imposed deadline and less than two months before the start

7    of trial, Dkt. 893-1, (2) the government's notice was an inadequate four-sentence email that pointed to a

8    host of documents with no explanation of what his opinions were or the reasons and bases for those

9    opinions, *id.*, and (3) the data Dr. Das relied on to conduct his analyses no longer existed.  At a

10   minimum, it is fairly in doubt whether Dr. Das' testimony violated Rules 16(a)(1)(G)(iii), 403, and 702.

11          Dr. Das' testimony went to the central issue in the case, including in the investor counts:  the

12   accuracy and reliability of Theranos' technology.  Dkt. 469  ¶ 12(A).  In closing, the government argued

13   that alleged misrepresentations about the technology were "sort of the underlying false statement in the

14   case" and "a thread through this scheme."  Holmes 12/16/21 Tr. 8959:6-11.  And the government

15   pointed to Dr. Das' testimony (and evidence admitted through Dr. Das) to "help[] identify the

16   inaccuracy, the problems with the tests that occurred when they were testing patients using Theranos

17   devices."  *Id.* at 8999:13-15 (gov't closing argument); *see also id.* at 8933:25-8934:4 ("[Das] found the

18   device unsuitable for, as it says here, clinical use.").

19          **2.     <u>Admission of Evidence of CMS Findings and Sanctions</u>.**  The Court erred in admitting

20   evidence of CMS sanctions, including excerpts of the CMS report, for the purpose of proving Ms.

21   Holmes' "state of mind, intent, and knowledge regarding the alleged misrepresentations about the

22   accuracy and reliability of Theranos' blood tests."  Dkt. 798 at 18; *see also* Dkt. 1196 (confirming that

23   the CMS Report excerpts, Exs. 4621A and 4621B, were admitted for "state of mind").  Evidence

24   regarding CMS's findings and sanctions in late 2015 and early 2016 are not relevant to Ms. Holmes'

25   *earlier* state of mind at the time of the alleged misrepresentations.  As a result, this evidence, at a

26   minimum, lacks sufficient probative value such that the Rule 403 balancing test tilts overwhelmingly in

27   favor of exclusion.  *See United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978) ("The logic of showing

28

1   prior intent or knowledge by proof of subsequent activity escapes us.").  The admission of this

2   evidence—and all the related evidence that flowed from it, including the evidence of Dr. Das' expert

3   analyses and the voiding of test results—confused the jury's assessment of Ms. Holmes' intent and state

4   of mind, and substantially prejudiced Ms. Holmes on the core issue in the case:  the accuracy and

5   reliability of Theranos' technology.

6       **3.     Admission of Theranos' 2016 Voiding of Edison Test Results.**  Relatedly, the Court

7   erred in permitting the government to admit evidence that Theranos voided Edison test results in 2016,

8   after all the relevant events in this case and more than a year after any relevant representations to

9   investors.  Ms. Holmes objected to the admission of any evidence of voiding under both Rules 403 and

10  407, and the Court's motion *in limine* order deferred on the issue until, *inter alia*, the government made

11  the proper showing under Rule 407 that the voiding was involuntary.  Dkt. 798 at 38.  For the same

12  reason as just articulated with respect to the CMS findings, this evidence should have been excluded

13  under Rule 403.  Indeed, this evidence was arguably even more prejudicial, because the Court did not

14  limit the purpose of its admission to Ms. Holmes' state of mind.

15      The evidence also did not satisfy Rule 407.  Dr. Das never testified that CMS regulations

16  required him to void every single test result generated on the Edison device; to the contrary, he

17  confirmed that he told CMS that Theranos voided the results "out of an abundance of caution."  Holmes

18  11/9/21 Tr. 5833:1-10.  That testimony confirms that the voiding of the test results was a remedial

19  measure subject to exclusion under Rule 407.

20      It is hard to imagine any more prejudicial evidence than evidence that, well after any relevant

21  representations to investors (or patients for that matter), Theranos decided to void all its Edison test

22  results.  The admission of this evidence was highly prejudicial and will surely draw the Ninth Circuit's

23  attention.

24      **4.     Denial of Motions to Suppress and Strike.**  Ms. Holmes may raise on appeal the

25  Court's denial of her motion to suppress and related denial of an evidentiary hearing on that motion.

26  The government violated *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) (en banc)

27  (Kennedy, J.) (controlling op.), and *Arizona v. Youngblood*, 488 U.S. 51 (1988), when it failed to

28  MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
    CR-18-00258 EJD

1    preserve the LIS database, Theranos' central repository of patient testing data and quality control data.

2    In its pre-trial suppression ruling, the Court erred in holding that the government did not act in bad faith

3    in failing to preserve this critical evidence, in concluding that it "need not engage in the *Youngblood*

4    three-factor analysis or reach the question of whether other sanctions are warranted under the *Loud*

5    *Hawk* balancing test," in denying Ms. Holmes' request for an evidentiary hearing concerning contested

6    issues of fact, and in denying Ms. Holmes' motion for the identities and documents underpinning the

7    government's *Brady* letter.  Dkt. 887 at 15, 17-18.  When Ms. Holmes renewed her motion to suppress

8    (and moved to strike) during trial, the Court erred again by declining to revisit its prior ruling—despite

9    evidence and testimony by government witnesses that further showed the significance of the LIS

10   database and the prejudice to Ms. Holmes associated with its loss.

11          Under *Loud Hawk*, there is a substantial question whether the loss of the evidence residing in the

12   LIS database was prejudicial to Ms. Holmes, whether the quality of the government's conduct in failing

13   to preserve that evidence was poor, warranting suppression of evidence related to the LIS database at

14   trial, and whether the Court must apply the full array of *Loud Hawk* factors if the Court finds that the

15   government did not possess the evidence in question or cause the loss or destruction of that evidence.

16   *See* Dkt. 887 at 15.  Under *Youngblood*, there is a substantial question whether the evidence in the LIS

17   had potential exculpatory value, and whether the government acted in bad faith in failing to preserve that

18   evidence.  *Id*.  There are also substantial questions relating to the Court's denial of Ms. Holmes' request

19   for an evidentiary hearing and for the production of relevant information and documents in the

20   government's possession.  *Id*. at 16-18.  At a minimum, Ms. Holmes' motion presented questions of fact

21   on these issues, and the Court erred in resolving those questions of fact on the papers without holding an

22   evidentiary hearing.

23          **5.    Exclusion of Balwani Deposition Testimony.**   Ms. Holmes may argue that the Court

24   erred under Rule 804(b)(3) in excluding Mr. Balwani's prior deposition testimony concerning his

25   control and ownership of the financial model and projections shown to certain investors.  Mr. Balwani's

26   deposition testimony explained that he was responsible for the financial model, Dkt. 1163-2 at 6-7; that

27   no one else from Theranos modified it, Dkt. 1163-3 at 5; that he revised the model so much that Ms.

28

Holmes may not have been familiar with all the assumptions, *id.* at 6; and that Ms. Holmes never edited the model, *id.*  This was critical evidence because the three wire-fraud counts of conviction involved investors who reviewed the financial projections.

The Court's ruling that Mr. Balwani's statements were not sufficiently inculpatory because the statements "do not, by themselves, expose Mr. Balwani to civil or criminal liability" was erroneous. Dkt. 1175 at 9.  The requirement of Rule 804(b)(3) that a statement be "against interest" does not require a confession of criminal responsibility, but can be satisfied by "remarks that 'tend to subject' the declarant to criminal liability." *United States v. Fowlie*, 24 F.3d 1059, 1068 (9th Cir. 1994).  A reasonable person in Mr. Balwani's position—a person testifying under oath in an SEC proceeding after receiving subpoenas that requested information about financial projections, and during an active grand jury investigation by the United States Attorney's Office—would not have made the statements he made unless he believed them to be true.

The Court similarly erred in determining that no circumstances corroborated Mr. Balwani's testimony.  The Court reasoned that a text message from Ms. Holmes stating that "they needed to 'work together on the rev [sic] piece'" undermined the trustworthiness of Mr. Balwani's statements because Ms. Holmes stated during her cross-examination that "rev" could mean revenue. Dkt. 1175 at 10.  Even if "rev" meant "revenue," that Ms. Holmes needed to work on Theranos' revenue does not speak to whether she understood the financial models themselves.  Moreover, she explicitly stated that she did not know what the text meant.  Holmes 11/30/21 Tr. 8030:18-25.

The Court's other rationale for its corroboration finding was Mr. Balwani's deposition testimony that he provided Ms. Holmes with access to the model and asked her to make edits. Dkt. 1175 at 10. But Mr. Balwani, when directly questioned about that issue, stated under oath that he did not believe Ms. Holmes made any edits. Dkt. 1163-3 at 6.  There is a substantial legal and factual question whether Mr. Balwani's statements are sufficiently inculpatory under Rule 804(b)(3).

There is also a substantial question of whether the exclusion of Mr. Balwani's statements rose to a level of a due process violation.  *See Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004) ("[W]hen a hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the

1   exclusion of that statement may rise to the level of a due process violation.").  For the reasons stated

2   above, the statements had assurances of trustworthiness and were critical to the defense theory that Ms.

3   Holmes had little involvement with the financial projections sent to the investors.  *See* Holmes 12/27/21

4   Tr. 9183:17-25.

5          **6.      Limitations on Cross-Examination of Dr. Adam Rosendorff.**  Ms. Holmes may raise

6   on appeal the issue whether the Court violated the Confrontation Clause by foreclosing inquiry into Dr.

7   Rosendorff's bias.  During trial, Ms. Holmes sought to cross-examine Dr. Rosendorff concerning three

8   positions that he held following his tenure at Theranos—PerkinElmer, Invitae, and uBiome.  The

9   questions Ms. Holmes intended to ask all went to his bias, competence, or credibility.  The Court

10  permitted limited questioning about Dr. Rosendorff's employment at PerkinElmer on the ground that it

11  was relevant "to potential issue[s] of bias."  Holmes 10/5/21 Tr. 2709:14-2710:19, 2717:5-2720:25.  But

12  the Court forbade PerkinElmer-related questioning regarding "the nature of any investigation, the

13  quality of the investigation, [or] [Dr. Rosendorff's] specific role in it."  *Id.* at 2710:11-22.  The Court

14  excluded examination about Invitae as "inappropriate character evidence" under Rule 404(a)(1).  *Id.* at

15  2709:5-13.  And it excluded examination about uBiome under Rule 403 because the Court understood

16  that a federal investigation into that lab "did not have anything to do with the operation of the lab per

17  se."  *Id.* at 2708:2-2709:4.

18         The Court's ruling on this evidence was in error.  Dr. Rosendorff's employment at PerkinElmer

19  raised concerns of bias due to a then-ongoing CMS investigation of the laboratory concerning its lab

20  practices, and Dr. Rosendorff's role was relevant evidence showing the existence of that bias.  Holmes

21  10/5/21 Tr. 2553:1-8.  The issue regarding Dr. Rosendorff's employment at Invitae concerned a

22  significant quality control issue he oversaw shortly after leaving Theranos that resulted in inaccurate and

23  unreliable tests being sent to 50,000 patients, a set of circumstances which implicated his competency as

24  a lab director.  *Id.* at 2551:12-21.  The third employment issue, with respect to uBiome, concerned a

25  federal investigation related to laboratory issues that occurred while Dr. Rosendorff was laboratory

26  director, which also implicated his competence and bias to testify in a way helpful to the prosecutors in

27  this case.  *Id.* at 2552:10-20.  The fact that three laboratories Dr. Rosendorff oversaw after leaving

28
    MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
    CR-18-00258 EJD

1   Theranos had problems was probative of Dr. Rosendorff's competence as a laboratory director, his

2   credibility as a witness, and the frequency of potential issues at high complexity laboratories.

3         The government viewed Dr. Rosendorff as an important witness; it referenced him more than

4   any other government witness during its opening and closing statements, and relied on his testimony in

5   its opposition to Ms. Holmes' motion for judgment of acquittal.  *See Holmes* 9/8/21 Tr. (opening);

6   Holmes 12/16/21 (closing); 12/17/22 Tr. (rebuttal); 9/1/22 Hr'g Tr. 24:8-25:3 (Rule 29).  At a minimum,

7   there is a substantial question as to whether the Court's limitation of Ms. Holmes' examination of this

8   key witness violated her constitutional rights.  Holmes 10/5/21 Tr. 2706:22-2707:2; *see also Davis v.*

9   *Alaska*, 415 U.S. 308, 315-16 (1974) (Confrontation Clause secures a defendant's right to cross-examine

10  government witnesses); *United States v. Vargas*, 933 F.2d 701, 708 (9th Cir. 1991) ("[A] criminal

11  defendant states a violation of the confrontation clause by showing that he was prohibited from engaging

12  in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of

13  the witness." (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986))).

14        **7.    Denial of Motion for New Trial Based on Dr. Rosendorff's Post-Trial Statements.**

15  Dr. Rosendorff's post-trial statements at Ms. Holmes' residence and subsequent testimony warrant a

16  new trial.  This Court acknowledged the unprecedented nature of the event that gave rise to this motion.

17  The event was so troubling that the Court felt compelled to hold an evidentiary hearing.  At that hearing,

18  Dr. Rosendorff did not dispute Mr. Evans' account of Dr. Rosendorff's visit or any of the statements

19  made during their encounter.  The Court need not conclude that it erred to acknowledge the complex

20  issues raised by this significant event.  These issues will command serious attention on appeal.

21        Statements and testimony from a government star witness suggesting that the government

22  cherry-picked evidence and/or testimony to make things seem worse than they were would have gravely

23  damaged the reliability of the government's presentation of evidence and bolstered Ms. Holmes'

24  defense.  Evidence undermining the reliability of the government's case is necessarily material.  *See*

25  *Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (evidence was material because it could have been used to

26  attack the reliability of the government's investigation).  There is a substantial question whether the

27  statements probably would have led to an acquittal during a new trial.  *See United States v. Mendez*, 619

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

1  F. App'x 644, 646 (9th Cir. 2015) (reversing denial of new trial motion after holding that "[a] new trial,

2  with the benefit of [newly discovered records], would probably result in acquittal").  A jury in a new

3  trial would probably acquit Ms. Holmes if it heard an important government witness testify that he took

4  the extraordinary step of going to Ms. Holmes' residence to explain, among other things, that the

5  government made things seem worse than they were at trial.  This would both undermine the strength of

6  the government's case and Dr. Rosendorff's credibility as a witness.

7          The Court's proffered distinction between evidence undermining the quality of an investigation

8  and evidence undermining the quality of the government's presentation of evidence at trial was

9  erroneous, Dkt. 1636 at 5; both undermine the jury's confidence in the verdict urged by the government.

10  The Court's ruling that this evidence would have been "substantially cumulative" of the defense closing

11  is incorrect.  Dkt. 1636 at 5.  There is a world of difference between (1) a defense argument in closing

12  and (2) testimony from the star government witness corroborating the defense argument.  Dr.

13  Rosendorff's post-trial statements and testimony provided materially new corroboration of Ms. Holmes'

14  argument that the government had cherry-picked evidence.  For the same reason, that Ms. Holmes'

15  counsel explored on cross-examination the government's misleading, cherry-picked presentation of

16  evidence is no substitution for Dr. Rosendorff's own statements that the government presented an

17  incomplete picture.  And, finally, the Court's suggestion that government cherry-picking of evidence is

18  simply "a well-known feature of the adversarial system," Dkt. 1636 at 7, overlooks the government's

19  special obligations in criminal trials and misunderstands *Napue v. Illinois*, 360 U.S. 264 (1959).  *See*

20  *Berger v. United States*, 295 U.S. 78, 88 (1935) (The government's "interest . . . in a criminal

21  prosecution is not that it shall win a case, but that justice shall be done.").  Under *Napue*, "'half-truths'

22  and vague statements that could be true in a limited, literal sense but give a false impression to the jury"

23  may violate the Due Process Clause.  *United States v. Freeman*, 650 F.3d 673, 680 (7th Cir. 2011).

24          **8.**    **Admission of Evidence Regarding Alleged Misrepresentations to the Department of**

25  **Defense**.  The government represented before trial that the Department of Defense is not a victim of

26  wire fraud as charged in the indictment.  Dkt. 522 at 9 (identifying the "business partner" victims to

27  include only Safeway and Walgreens).  The government never disclosed under Rule 404(b) that it

28  MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

1   intended to present evidence that Ms. Holmes supposedly made misrepresentations to the Department of

2   Defense.  However, during trial, the government elicited testimony from Daniel Edlin intended to show

3   that Ms. Holmes supposedly made misstatements to the Department of Defense in a PowerPoint

4   presentation over a year and a half before any of the investors at issue in this case heard any statements.

5   Holmes 10/19/21 Tr. 3903:13-18 (explaining exhibit was created in 2012, well before investments at

6   issue); *see also* TX 551.  The government offered no coherent theory for why alleged misrepresentations

7   made to the Department of Defense were part of the charged scheme.  The only purpose of the evidence

8   was to leave the jury with the impression that, if Ms. Holmes made misrepresentations to the

9   Department of Defense, she must have made misrepresentations to investors.  This is classic propensity

10  evidence barred by Rule 404(a).  *See United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989)

11  (reversing espionage conviction where district court erred in admitting evidence of defendant's prior

12  bribery).  The admission of this evidence severely prejudiced Ms. Holmes, as it was intended to depict

13  her as a liar, which went to the core issue in the case.

14      **9.      Denial of New Trial Motion Based on the Government's Closing Argument in the**

15  **Balwani Trial**.  Ms. Holmes may raise on appeal the Court's denial of her new trial motion based on the

16  government's closing argument in Mr. Balwani's trial.  The newly discovered evidence concerning the

17  government's statements about Ms. Holmes' relationship with Mr. Balwani would have probably led to

18  Ms. Holmes' acquittal in a new trial.  The government highlighted the nature of the relationship as one

19  between co-equals during Ms. Holmes' trial.  Holmes 10/19/21 Tr. 4057:14-4058:20 (D. Edlin).  During

20  Mr. Balwani's trial, the government took the opposite position and highlighted Mr. Balwani's age,

21  experience, and influence over Ms. Holmes.  Balwani 6/24/22 Tr. 7652:9-17 (Gov't Rebuttal); *see also*

22  *id*. at 7650:10-12 (Gov't Rebuttal) ("But when it comes to his control at the company, his decision

23  making power, the evidence has shown that he had a lot at the company and that he wielded it.").

24      Contrary to the Court's post-trial ruling (Dkt. 1636 at 9), the government's statements are newly

25  discovered evidence.  Prosecutor statements in closing argument are admissions of a party opponent.

26  *See* Dkt. 1576 at 5 (collecting cases); *United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1105-11 (C.D.

27  Cal. 1999) (exculpatory statements during government's closing in the severed trial of a co-defendant

28
    MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
    CR-18-00258 EJD

1   were admissible subject only to Rules 401 and 403).  The government did not make a materially similar

2   admission in Ms. Holmes' trial.  For the same reason, the Court erred in holding that the government's

3   statement carried no "evidentiary weight."  Dkt. 1636 at 10.  Admissions of a party opponent carry

4   evidentiary weight, and an admission from the government that Mr. Balwani's age and experience gave

5   him significant influence over Ms. Holmes would have powerfully corroborated a key defense theme.

6   The Court's contrary ruling overlooks Ms. Holmes' testimony regarding the many areas of the

7   company's operations—areas critical to the investor counts—in which she relied on Mr. Balwani.

8   Holmes 11/29/21 Tr. 7846:11-7879:21.

9        At a minimum, whether a jury would have acquitted Ms. Holmes if she was able to use this

10   newly discovered evidence in a new trial presents a substantial question.

11        **10.    Denial of New Trial Motion Based on the Government's Failure to Produce**

12   **Information Regarding the LIS Database.**  Finally, Ms. Holmes may raise on appeal the Court's

13   denial of her new trial motion based on the government's failure under *Brady v. Maryland*, 373 U.S. 83

14   (1963), to produce exculpatory emails relating to the government's failure to preserve the LIS database

15   despite Ms. Holmes' specific requests for this information and subsequent motion practice.  The new

16   emails show that the three prosecutors at counsel's table throughout Ms. Holmes' trial failed to take

17   specific steps recommended by expert government personnel to access, collect, and preserve the central

18   repository for patient testing data and quality control data.  For the reasons explained in prior pleadings,

19   the evidence contained in the LIS would have been central to any full and fair assessment of the

20   government's accuracy-and-reliability allegations, as well as Ms. Holmes' ability to confront witnesses

21   and evidence against her (and thereby present a complete defense), and would have informed Ms.

22   Holmes' trial strategy.  Dkt. 810, 850, 1577, 1592; Holmes Tr. 11/19/2021 Tr. 7101-02.

23        Contrary to the Court's post-trial ruling (Dkt. 1636 at 13), the government did suppress this

24   evidence, and prejudice ensued.  Ms. Holmes specifically moved to compel production of this evidence

25   before trial, but the Court denied that motion.  Ms. Holmes could not have pursued "a defense at trial

26   challenging the government's recovery efforts" without these documents, Dkt. 1636 at 12, which

27   identified the relevant witnesses and were usable as actual evidence.  For the same reason, that a

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

defendant may suspect government prosecutors of involvement in such events, *id.* at 14, is no substitute for actual evidence of their involvement.  The fact that the prosecutors at counsel's table may have had personal motivations or incentives arising from their own failure to preserve critical evidence is material information under *Brady*.  The suppressed evidence undermined the quality of the government's investigation; exposed bias on the part of the prosecutors at trial; and provided further support for Ms. Holmes' prior motions to suppress.

At a minimum, there is a substantial question as to whether this newly discovered evidence was a *Brady* violation and whether it warranted the granting of a new trial under the relaxed prejudice standard for *Brady* violations.  *See United States v. Doe*, 705 F.3d 1134, 1152–53 (9th Cir. 2013).

*        *        *

The foregoing issues raise substantial legal questions, each with "more substance than would be necessary to a finding that it was not frivolous."  *Handy*, 761 F.2d at 1283.  Importantly, the Court may and should find that these issues are substantial even if the Court believes that it did not err.  *See id.* at 1282 (substantial question standard should not be interpreted as "tantamount to requiring the district court to certify that it believes its ruling to be erroneous").  Rather, the Court simply needs to find that the issues presented are "fairly debatable."  *Handy*, 761 F.2d at 1283.  The above-identified issues all meet that standard.

### D.     The Appeal Will Result in a New Trial If the Issues Presented Are Resolved in Ms. Holmes' Favor.

Finally, if the Ninth Circuit agrees with Ms. Holmes on any or all of the issues presented, a new trial will be required.  An issue is "likely to result" in a new trial or the other relief listed in section 3143(b)(1)(B) if the appellate court could grant such relief should it rule in the defendant's favor on that issue.  *See Garcia*, 340 F.3d at 1020 n.5.  This element "does not involve assessing the likelihood that a reversal will occur in the particular case."  *Id.*  A defendant "need not . . . present an appeal that will likely be successful"; rather, the question is only whether the appeal presents " a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions."  *Id.*

The standard, required remedy for all of the issues identified above is a new trial. *See, e.g.,* *United States v. Charley*, 1 F.4th 637, 652 (9th Cir. 2021) (vacating conviction and remanding for new trial when erroneous admission of evidence); *United States v. Valencia-Lopez*, 971 F.3d 891, 903 (9th Cir. 2020) (vacating conviction and remanding for new trial when expert testimony was improperly admitted); *United States v. Zaragoza-Moreira*, 780 F.3d 971, 982 (9th Cir. 2015) (reversing conviction and remanding for new trial when government failed to preserve evidence); *Mendez*, 619 F. App'x at 646 (reversing denial of new trial motion after holding that "[a] new trial, with the benefit of [newly discovered information], would probably result in acquittal"); *Vargas*, 933 F.2d at 708-09 (reversing and remanding for new trial when court's limitation of cross-examination violated the Confrontation Clause); *United States v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008) (stating that a new trial is usually the appropriate remedy for a *Brady* violation); *United States v. Paguio*, 114 F.3d 928, 933 (9th Cir. 1997) (reversing conviction and remanding for new trial due to failure to admit prior statement under Rule 804(b)(3)).  If Ms. Holmes prevails on appeal, a new trial will undoubtedly be required.

## CONCLUSION

The statutory factors for release pending appeal are satisfied here.  Ms. Holmes is neither a flight risk nor a threat to the community.  This case has a lengthy, complex record for which there are numerous substantial issues to be addressed on appeal which, if decided in her favor, would require a new trial.  Ms. Holmes has remained in constant contact with counsel throughout this case.  Release will facilitate Ms. Holmes' continued communication with her counsel concerning these issues and the merits of her appeal.  For all of the foregoing reasons, the Court should grant Ms. Holmes' motion for release pending appeal.

DATED: December 5, 2022

/s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD

15

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on December 5, 2022 a copy of this filing was delivered via ECF on all

3

counsel of record.

4

5
                                    /s/ Amy Mason Saharia
                                    AMY MASON SAHARIA
6                                   Attorney for Elizabeth Holmes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION FOR RELEASE PENDING APPEAL
CR-18-00258 EJD