JOHN D. CLINE (CA State Bar No. 237759)
600 Stewart Street, Suite 400
Seattle, WA 98101
Telephone: (360) 320-6435
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ELIZABETH HOLMES and<br>RAMESH "SUNNY" BALWANI,<br><br>    Defendants. | Case No. CR-18-00258-EJD<br><br>**MS. HOLMES' SUPPLEMENTAL SENTENCING MEMORANDUM REGARDING RESTITUTION**<br><br>Date:    March 17, 2023<br>Time:   10:00 AM<br>CTRM:  4, 5th Floor<br><br>Hon. Edward J. Davila |

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

I. The Government Has Failed To Prove Reliance or Calculate Actual Loss for the Investors. ......................................................................................................................... 2

    A. The Government Has Not Identified Investors Who Relied on the Offense Conduct. ........................................................................................................... 2

        1. No general inference of investor reliance is warranted. ........................ 3

        2. The alternative investor restitution request is also unsupported. ............ 5

    B. The Government Has Not Proposed a Reliable Calculation of Actual Loss for Any Investor. ..................................................................................................... 7

        1. The government fails to account for alternative causes. ........................ 7

        2. The government fails to account for necessary offsets. ....................... 10

II. The Government Has Failed To Meet Its Burden of Proof as to Safeway or Walgreens. ................................................................................................................... 12

III. The Court Should Find that the MVRA Complexity Exception Applies. ................... 13

IV. If the Court Orders Restitution, It Should Not Include Interest or Investigative Costs. ................. 14

CONCLUSION .......................................................................................................................... 15

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Lagos v. United States*, 138 S. Ct. 1684 (2018)..................................................................................15

*Robers v. United States*, 572 U.S. 639 (2014) ................................................................................2, 10

*United States v. Adorno*, 950 F. Supp. 2d 426 (E.D.N.Y. 2013) ............................................................13

*United States v. Ageloff*, 809 F. Supp. 2d 89 (E.D.N.Y. 2011)..............................................................10

*United States v. Avenatti*, 2022 WL 452385 (S.D.N.Y. Feb. 14, 2022) ..................................................15

*United States v. Boccagna*, 450 F.3d 107 (2d Cir. 2006) ................................................................5, 13

*United States v. Faibish*, 2017 WL 3634599 (E.D.N.Y. Aug. 22, 2017) .................................................11

*United States v. Ferdman*, 779 F.3d 1129 (10th Cir. 2015)..................................................................8

*United States v. Geringer*, 672 F. App'x 651 (9th Cir. 2016) ...............................................................11

*United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004).....................................................................14

*United States v. Gushlak*, 2011 WL 3159170 (E.D.N.Y. July 26, 2011) ..................................................8

*United States v. Hatfield*, 2014 WL 7271616 (E.D.N.Y. Dec. 18, 2014)..............................................8, 9

*United States v. Kaplan*, 2017 WL 2692878 (S.D. Cal. June 22, 2017)..................................................7

*United States v. Kruschke*, 2009 WL 499335 (E.D. Wis. Feb. 27, 2009)................................................4

*United States v. Leonard*, 529 F.3d 83 (2d Cir. 2008)...................................................................8, 11

*United States v. Lonich*, 23 F.4th 881 (9th Cir. 2022)..........................................................................7

*United States v. Meksian*, 170 F.3d 1260 (9th Cir. 1999).....................................................................7

*United States v. Nisbet*, 2016 WL 7670849 (D. Mont. Dec. 14, 2016) ...................................................4

*United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009) ................................................................2, 9

*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) .................................................................5, 9, 14

*United States v. Rizk*, 660 F.3d 1125 (9th Cir. 2011) ..........................................................................8

*United States v. Rutkoske*, 506 F.3d 170 (2d Cir. 2007).....................................................................8

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

*United States v. Sarad*, 227 F. Supp. 3d 1153 (E.D. Cal. 2016) ................................................................. 10

*United States v. Schlifstein*, 2020 WL 2539123 (S.D.N.Y. May 19, 2020) .................................................. 13

*United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017) ................................................................................ 2, 3

*United States v. Swanson*, 394 F.3d 520 (7th Cir. 2005) ............................................................................. 4, 6

*United States v. Swor*, 728 F.3d 971 (9th Cir. 2013) (per curiam) .............................................................. 7

*United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008) ..................................................................... 1, 4, 6, 15

*United States v. Ward*, 2013 WL 57855 (N.D. Cal. Jan. 3, 2013) ................................................................ 9

*United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007) ..................................................................................... 8

### STATUTE AND OTHER AUTHORITIES

18 U.S.C. § 3663A .......................................................................................................................... 1, 2, 13

*Theranos Announces Expansion of Board of Directors and New Organizational Structure*, Business Wire (May 11, 2016) ................................................................................................. 7

Deborah Gage, *The Venture Capital Secret: 3 Out of 4 Start-Ups Fail*, Wall Street Journal (updated Sept. 20, 2012) ............................................................................................. 14

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

iii

Defendant Elizabeth Holmes respectfully submits this memorandum in advance of the restitution hearing in this matter. Ms. Holmes opposes the government's request for an order of restitution.

## ARGUMENT

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, places the burden on the government to prove by a preponderance of evidence that a person or entity is a victim for purposes of restitution, and to prove the amount of each victim's actual loss. *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). Evidence falling short of that standard, or lacking "sufficient indicia of reliability[,]" will not support a restitution order. *Id.* at 557 (internal quotation marks omitted). The government's restitution submission, ECF 1726, suffers from several significant flaws.

First, the government has not shown that the investor-victims it identifies relied on the offense conduct when deciding to invest. The government has not provided victim impact statements or testimony for most of the individuals and entities for whom it seeks restitution, relying instead on an Excel spreadsheet purporting to list every Theranos C-1 and C-2 investor. *See* ECF 1726-2. From this document alone, the government urges a broad inference of investor reliance that the trial record does not support and that the Court has already declined to apply in this matter. The government's fallback restitution request is limited to the investors for whom the Court found some evidence of reliance at sentencing. But significant gaps in proof exist for these individuals and entities as well.

Second, even if the government could identify qualifying investor-victims, it does not offer a reliable calculation of any investor's actual loss. The government erroneously maintains that restitution is owed in the full amount of the investments in Theranos. The MVRA's proximate cause requirement and its requirement that victims receive the amount of their actual loss—no more and no less—forbids that blunt approach in this case. An extensive body of law—which the government ignores—specifies the type of loss-causation analysis the government needed to, but did not, conduct to calculate actual loss. Because of the government's failure, the Court has before it no reliable calculation of restitution.

Third, the government's inclusion of Safeway and Walgreens as MVRA victims ignores the ways in which these entities' unique dealings with Theranos thwart a finding of reliance.

Fourth, the government's request for prejudgment interest and costs is unsupported.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

1

For all these reasons, as further elaborated below, the Court should decline to enter the restitution order outlined in the government's submission. And because setting restitution in this matter would require "determining complex issues of fact" that would "complicate or prolong the sentencing process," the Could should find that the MVRA does "not apply" and decline to give the government a second try to meet its burden. 18 U.S.C. § 3663A(c)(3).

**I.    The Government Has Failed To Prove Reliance or Calculate Actual Loss for the Investors.**

The MVRA permits restitution only for individuals who were "directly and proximately harmed as a result of the" offense conduct. 18 U.S.C. § 3663A(a)(2). Causation under the MVRA thus has both a factual (or "but-for") cause and a legal (or "proximate") cause component. *See, e.g.*, *Robers v. United States*, 572 U.S. 639, 645 (2014). This dual causation inquiry is "essentially the same" one that applies when calculating actual loss under the Sentencing Guidelines. *United States v. Stein*, 846 F.3d 1135, 1153 (11th Cir. 2017).[1] To satisfy the causation requirement for investors, the government principally cites to an Excel spreadsheet "produced by Theranos to the SEC" that the government has "filtered to include only one Excel tab and reflecting [the company's] C-1 and C-2 investors." ECF 1726-1 (Leach Decl.); *see* ECF 1726-2 (the ledger). The government argues that Ms. Holmes factually and proximately caused losses in the amount of each investor's full investment in Theranos as reflected on the investor ledger. ECF 1726 at 4-5. The government fails to show that the investors it identifies relied on the offense conduct and thus qualify as "victims" under the MVRA, and fails to offer a reliable methodology to calculate actual loss for any qualifying investor-victim.

**A.    The Government Has Not Identified Investors Who Relied on the Offense Conduct.**

To show but-for causation under the MVRA in a case involving fraud in the sale of securities, the government must show that investors relied on the fraudulent information when deciding to invest.

---

[1] There are some differences between calculating loss for Guidelines purposes and for restitution. In particular, because "loss calculations under the [Sentencing] Guidelines require[] the district court to only make a reasonable estimate of the loss, whereas a restitution order under the MVRA must be based on *actual* loss," *United States v. Parker*, 553 F.3d 1309, 1324 (10th Cir. 2009) (citation, internal quotation marks, and alteration omitted), the calculation of actual loss for restitution can require additional precision to avoid over-compensating the victim.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

2

*See Stein*, 846 F.3d at 1153 ("The government . . . must show reliance to prove 'but for' causation for restitution purposes."); *see also* ECF 1655 at 31-35 (citing cases applying same principle for Guidelines calculations). The government makes two alternative restitution requests for investors: (1) first, it argues that all Theranos C-1 and C-2 investors count as victims by operation of an inference of reliance; and (2) as a fallback, it seeks restitution only for the investors for whom the Court found some evidence of reliance at sentencing. *See* ECF 1726 at 5-6. Neither request is adequately supported.

### 1. No general inference of investor reliance is warranted.

As it did when calculating Ms. Holmes' Guidelines range, the Court should decline to draw an inference of investor reliance. *See* ECF 1712 at 6. The government gives no reason to adopt the inference for restitution where the but-for causation inquiry is "essentially the same." *Stein*, 846 F.3d at 1153.

An inference of reliance is not warranted on the record. With few exceptions, the investors did not submit victim impact statements attesting to the amount or nature of their investments. Most of the C-1 and C-2 investors did not testify at trial. The record thus contains little to no information regarding the circumstances of many investors' decisions to invest, including what information they considered, relied on, or found important. As Ms. Holmes explained in connection with sentencing, ECF 1655 at 31-34, this is a case where the circumstances of each individual investment were different. Some investors spoke with Ms. Holmes; some didn't. Some investors received financial models; some didn't. Some conducted extensive due diligence; some didn't. For all these reasons, each investment must be assessed individually, and a broad inference of reliance on the offense conduct for all investors is not warranted. *See Stein*, 846 F.3d at 1154 (concluding that the fact that one witness testified to reliance and other investors averred in victim impact statements that they relied on company press releases was insufficient to support inference that all investors relied on the fraudulent information in those releases).

Without the benefit of the inference, the government's failure to support its almost $900 million restitution request is profound. Even in cases where victims submit impact statements, courts will deny restitution as unsupported if the request is not accompanied by documentation, testimony, or record evidence—all of which are missing here for the majority of the claimed investor-victims. *See, e.g.*,

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

*Waknine*, 543 F.3d at 557 (vacating restitution order based on "one-page loss summaries provided by the victims" as insufficiently supported); *United States v. Nisbet*, 2016 WL 7670849, at *3 (D. Mont. Dec. 14, 2016) (denying restitution premised on victim impact statements alone; "[a]bsent any supporting documentation or testimony, the Court finds that the government has not met its burden of establishing by a preponderance of the evidence the amount of the victims' alleged losses, or that the losses were the direct and foreseeable result of [the defendant's] criminal conduct."), *report and recommendation adopted*, 2017 WL 204411 (Jan. 10, 2017); *see also United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005) (vacating sentence and restitution order for government's failure of proof, and noting that it was not the court's "responsibility to root through the thousands of pages that make up the record in this case" for evidence of the claimed losses).

With little evidence of individual reliance,[2] the government is left to rely on the investor ledger for its sweeping request.[3] Citation to the ledger is plainly insufficient, however, as there are obvious issues with several of the listed individuals and entities that demonstrate the folly of assuming reliance. For example:

- Several of the listed investors are members of Theranos' Board of Directors, or are entities affiliated with them, including George Shultz, David Boies (and his law firm Boies, Schiller and Flexner LLP), Riley Bechtel, Richard Kovacevich, and Henry Kissinger. These individuals possessed privileged information concerning the company, its technology, its intellectual property portfolio, its regulatory interactions, and its financial performance that would have uniquely informed their decisions to serve as directors and to invest in the company. None of

---

[2] The government attaches a letter signed by counsel for one investor, PFM, that asserts that PFM is "no doubt" a "victim" because "one of the counts for which" Ms. Holmes was convicted "was that of specifically defrauding PFM." ECF 1726-5 at 4. As Ms. Holmes explained in connection with sentencing, a wire fraud conviction does not establish reliance because investor reliance is not an element of wire fraud. *See* ECF 1655 at 33.

[3] Because most investors did not request restitution or file a victim impact statement of any kind, the record also does not demonstrate whether and to what extent they in fact claim any losses or whether they recouped any portion of their losses through tax write-offs. *Cf. United States v. Kruschke*, 2009 WL 499335, at *2 n.3 (E.D. Wis. Feb. 27, 2009) (noting reduction in restitution due to victim's tax write-off).

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

these individuals testified, and no evidence was presented regarding the circumstances of their investments or, in the case of the Boies Schiller firm, the acceptance of equity as payment for legal services.

- The ledger also contains a purported investment by Larry Fitzgerald, but the government provides no facts at all concerning Mr. Fitzgerald's acquisition of equity. Mr. Fitzgerald was a Theranos consultant who requested to be paid in equity. Because he did not pay money for his shares, Mr. Fitzgerald is not entitled to restitution. *See United States v. Boccagna*, 450 F.3d 107, 119 (2d Cir. 2006) (criminal restitution "is not concerned with a victim's disappointed expectations but only with his actual loss").

- The government's request also includes a February 2016 investment by Riley and Susan Bechtel that, because it occurred outside the alleged conspiracy period, could not have been in reliance on the offense conduct. *See United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) (individuals who invested "after the conspiracy had ended" are not "conspiracy victims within the meaning of the MVRA").

Even in the few instances where the government ventures outside the investor ledger, its proof still fails. The government seeks $100,000 in restitution to Eileen Lepera based on her statement that she obtained the shares from her boss, Donald Lucas. ECF 1726-4 at 1. There is no evidence that Theranos received any benefit from her shares,[4] or that Ms. Holmes had any input into the particulars of the transaction between Mr. Lucas and Ms. Lepera.

In sum, neither the trial record nor the investor ledger establishes the necessary reliance on the offense conduct for the C-1 and C-2 investors as a group, and even a cursory review of the investors on the ledger demonstrates that the government's $807 million request is overbroad and unsupported.

### 2. The alternative investor restitution request is also unsupported.

In the alternative, the government requests restitution for the ten entities and individuals[5] that the

---

[4] In fact, the exhibit from which the government's spreadsheet is drawn indicates that Ms. Lepera did not hold C-1 or C-2 shares and that Theranos received no benefit from the transfer from Mr. Lucas. *See* TX 10692.

[5] These are: (1) Hall Group, (2) Richard Kovacevich, (3) Lucas Venture Group (LVG), (4)

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD
5

these individuals testified, and no evidence was presented regarding the circumstances of their investments or, in the case of the Boies Schiller firm, the acceptance of equity as payment for legal services.

- The ledger also contains a purported investment by Larry Fitzgerald, but the government provides no facts at all concerning Mr. Fitzgerald's acquisition of equity. Mr. Fitzgerald was a Theranos consultant who requested to be paid in equity. Because he did not pay money for his shares, Mr. Fitzgerald is not entitled to restitution. *See United States v. Boccagna*, 450 F.3d 107, 119 (2d Cir. 2006) (criminal restitution "is not concerned with a victim's disappointed expectations but only with his actual loss").

- The government's request also includes a February 2016 investment by Riley and Susan Bechtel that, because it occurred outside the alleged conspiracy period, could not have been in reliance on the offense conduct. *See United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006) (individuals who invested "after the conspiracy had ended" are not "conspiracy victims within the meaning of the MVRA").

Even in the few instances where the government ventures outside the investor ledger, its proof still fails. The government seeks $100,000 in restitution to Eileen Lepera based on her statement that she obtained the shares from her boss, Donald Lucas. ECF 1726-4 at 1. There is no evidence that Theranos received any benefit from her shares,[4] or that Ms. Holmes had any input into the particulars of the transaction between Mr. Lucas and Ms. Lepera.

In sum, neither the trial record nor the investor ledger establishes the necessary reliance on the offense conduct for the C-1 and C-2 investors as a group, and even a cursory review of the investors on the ledger demonstrates that the government's $807 million request is overbroad and unsupported.

### 2. The alternative investor restitution request is also unsupported.

In the alternative, the government requests restitution for the ten entities and individuals[5] that the

---

[4] In fact, the exhibit from which the government's spreadsheet is drawn indicates that Ms. Lepera did not hold C-1 or C-2 shares and that Theranos received no benefit from the transfer from Mr. Lucas. *See* TX 10692.

[5] These are: (1) Hall Group, (2) Richard Kovacevich, (3) Lucas Venture Group (LVG), (4)

Court included in its Guidelines loss calculation.[6] ECF 1726 at 6; ECF 1712 at 6.  Ms. Holmes submits that in no instance should the Court order restitution to others beyond these ten.  Ms. Holmes further maintains that there is insufficient evidence of reliance for these ten to support a restitution order.

As an initial matter, the Court should hold the government to its burden and decline to adopt its findings of reliance from sentencing for restitution.  In contrast to sentencing, where the Court had the obligation to calculate a Guidelines range, the MVRA places the burden on the government alone to establish investor reliance.  *Waknine*, 543 F.3d at 556.  Accordingly, courts will deny unsupported restitution requests rather than sort through the record themselves.  *See, e.g.*, *Swanson*, 394 F.3d at 527.

Alternatively, the Court should revisit its prior findings of reliance, for the following reasons.

First, the Court should not order restitution for the five investors for which the government introduced no evidence at trial as to the reasons why they invested:  Mendenhall TF Partners, Kovacevich, PVP, LVG, and Murdoch.  The extra-record material the Court cited at sentencing as evidence of reliance falls short of the preponderance standard.  (None of these individuals or entities submitted victim impact statements.)  The material the government submitted was untested by Ms. Holmes at trial, and the record does not support relying on it for but-for or proximate causation.  For example, the 2017 SEC testimony by Mr. Murdoch's chief of staff, cited by the government in its sentencing material, indicates Mr. Murdoch decided to invest before meeting Ms. Holmes.  *See* ECF 1644-9 at 18.  Meanwhile, Mr. Kovacevich told the government he invested in the company so as to signal his alliance with its mission, ECF 1644-5 at 2, and he served as a member of the restructured board in 2016, *see Theranos Announces Expansion of Board of Directors and New Organizational*

---

Mendenhall TF Partners, (5) Black Diamond Ventures (BDV), (6) Peer Ventures Group (PVP), (7) PFM Funds, (8) Mosley Family Holdings, (9) RDV Corporation, and (10) Keith Rupert Murdoch.  More than half of these ten—Messrs. Kovacevich and Murdoch, LVG, Mendenhall TF Partners, BDV, PVP, and Mosely Family Holdings—did not submit victim impact statements.

[6] The government's brief—which is the same one it submitted in connection with Mr. Balwani's restitution hearing—purports to include in this alternative request restitution for Sherrie and Alan Eisenman's investments.  *See* ECF 1726 at 6.  To the extent that this inclusion is not mere oversight and the government seeks restitution to Mr. Eisenman, Ms. Holmes objects given that the jury did not convict on the count concerning Mr. Eisenman's C-1 investment.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

6

*Structure*, Business Wire (May 11, 2016).[7]

Second, the Court should not order restitution to investors with respect to whom the jury hung—BDV and Hall Group. *Cf. United States v. Lonich*, 23 F.4th 881, 913 (9th Cir. 2022) (faulting Guidelines loss calculation based on uncharged and acquitted conduct).

Third, the Court should not order restitution to RDV because Lisa Peterson had no decision-making authority, *see* Tr. 4714, and the company's victim impact statement (which was signed by a lawyer) contains only vague references to reliance.

Fourth, the Court should not order restitution to BDV because its director, Chris Lucas, testified that Ms. Holmes' personal characteristics and vision motivated his investment. *See* Tr. 5448.

In sum, the government's alternative restitution request does not find adequate support in the record to justify restitution.

**B.    The Government Has Not Proposed a Reliable Calculation of Actual Loss for Any Investor.**

**1.    The government fails to account for alternative causes.**

The MVRA's proximate cause element requires the government to propose a methodology for calculating victims' actual losses that accounts for intervening causes. *See United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013) (per curiam) (vacating MVRA restitution order because several "intervening events" made the losses "too attenuated" to impose liability on the defendant); *see also United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999) (vacating VWPA restitution order for failure to account for intervening cause). "An intervening cause which is not directly related to the conduct of conviction may render the causal chain so attenuated that a restitution award becomes unreasonable." *United States v. Kaplan*, 2017 WL 2692878, at *4 (S.D. Cal. June 22, 2017).

In cases involving fraud in the sale of securities, "demonstrating shareholder losses involves measuring the share price decline attributable to" the alleged fraud and "disentangl[ing] the price changes associated with those events from other, 'ordinary' price movements." *United States v.*

---

[7] Available at https://www.businesswire.com/news/home/20160511006628/en/Theranos-Announces-Expansion-of-Board-of-Directors-and-New-Organizational-Structure.

*Hatfield*, 2014 WL 7271616, at *3 (E.D.N.Y. Dec. 18, 2014). This measurement typically involves expert analysis, *see, e.g.*, *id.*, and, in the case of "illiquid securities for which there is no public market," "can be extremely difficult to value." *United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008); *see also United States v. Zolp*, 479 F.3d 715, 719 (9th Cir.2007) (regarding calculating actual loss for Guidelines purposes) ("[T]he court must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes."); *accord* ECF 1712 at 8 (recognizing this principle in context of Guidelines calculations).

The government did not conduct this type of analysis in this case. Its submission does not even contemplate the possibility of alternative causes. That oversight is fatal to its restitution request. Courts will vacate restitution orders that rest on the simplistic premise that "the scheme unraveled, and the price of [the] stock plummeted" and the investors lost their money. *United States v. Rutkoske*, 506 F.3d 170, 180 (2d Cir. 2007) (vacating sentence and restitution order for failure to find proportion of shareholders' loss "caused by the fraud"); *see also United States v. Gushlak*, 2011 WL 3159170, at *6 (E.D.N.Y. July 26, 2011) (faulting government for relying on the same logic and declining to order restitution). That simplistic approach is improper because "[a] district court may not order restitution such that victims will receive an amount greater than their actual losses; to do so is plain error." *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011); *see also United States v. Ferdman*, 779 F.3d 1129, 1139 (10th Cir. 2015) ("Let us make perfectly clear that the controlling metric for an award of restitution pursuant to the MVRA *in every case* is *actual* loss suffered; nothing more, nothing less.").

The government's failure to account for alternative causes is confounding because this Court has already rejected the premise that the offense conduct was the sole cause of the loss. In calculating the Guidelines, the Court found as fact: (1) that Theranos shares had an "inherent value" independent of any fraud and (2) that the government "had not established—by either a preponderance or clear and convincing standard—that Theranos' ultimate collapse was the result of Defendant's conspiratorial conduct." ECF 1712 at 8. Together, these findings—which the government does not contest in its restitution submission—preclude attributing the entire decline in Theranos' value to the offense conduct. If shares in Theranos had value apart from the alleged fraud (as the Court found), then that value would

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

exist even after the alleged fraud was revealed.  Furthermore, if that remaining inherent value decreased over time until Theranos ultimately shuttered for reasons other than the offense conduct (as the Court found), then those other reasons are intervening causes that either fully sever the casual chain, or, at a minimum, decrease the proportion of the decline attributable to the offense conduct.

As the party with the burden of proof, it was the government's responsibility either to prove that Theranos' collapse was due to the offense conduct (it has not met that burden, as the Court has held), or to devise a methodology that would assign numbers to the proportion of the decline in Theranos' value it contends is due to the offense conduct compared to alternative causes.  Because it has not even attempted to make this latter showing, the Court cannot issue the restitution order the government requests.  *See United States v. Ward*, 2013 WL 57855, at *4 (N.D. Cal. Jan. 3, 2013) (declining to order restitution in amount of total investments where, "at best, the evidence before the Court suggests that some, but not all of the . . . investors made their investments as a result of Defendants' criminal conduct, and that some, but not all of their losses are attributable to Defendants' criminal conduct").

To be clear, the report of the government's expert, Mr. Carl Saba, does not fill the gap.  The methodology in Mr. Saba's report that the Court adopted for Guidelines calculation purposes as a "reasonable estimate of the loss," ECF 1712 at 11, is ill-suited for calculating restitution for at least two reasons.  First, the methodology that the Court adopted estimated the inflation in the share price attributable to the alleged fraud at the time of investment—approximated as the close of the C-2 round in December 2014.  S*ee id.* at 11-12.  That methodology is distinct from the one that courts typically use to calculate loss for restitution—*i.e.*, a retrospective event study that isolates the decrease in share price attributable to the revaluation of fraud.  *See Hatfield*, 2014 WL 7271616, at *3 (explaining that this is the accepted method to calculate loss causation for restitution purposes).  Second, the Saba Report's analyses rested on assumptions and approximations that render them insufficiently precise to calculate actual loss for restitution.  *See Reifler*, 446 F.3d at 138 (faulting government methodology that included "hypothetical or arbitrary assumptions" when calculating restitution); *see also Parker*, 553 F.3d at 1323 (contrasting Guidelines calculations, which require a "reasonable estimate of loss," with restitution, which concerns *actual* loss).  These flaws include that the Report:  generates an overbroad loss range,

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

9

treated the investors as a group when they invested at different times, and failed to account for the value of Theranos' intellectual property. *See* ECF 1655 at 38-39.

None of the government's cases supports its argument that the full investment amount is the correct calculation of actual loss. Tellingly, the government's lead case—*Robers v. United States*, 572 U.S. 639 (2014)—involved fraudulently obtained loans, not investments. *See* 572 U.S. at 640. The narrow question before the *Robers* Court, which concerned when to value collateral, *see id.* at 646, has nothing to do with this case. Even by "analogy," ECF 1726 at 3, the case is not helpful. The government asserts that it would be "anomalous" to treat restitution in loan cases differently than in investment cases, *id.* at 4, but there is nothing anomalous about that differential treatment, as the extensive body of law specific to calculating restitution to investors cited above makes clear. When an investor obtains shares in a company with inherent value, and then something other than, or in addition to, the offense conduct causes that company's value to decline, calculating the investor's actual loss caused by the fraud is an entirely different—and considerably more complicated—enterprise than deducting the value of returned collateral against an unpaid loan balance.[8]

In sum, the government offers no factual or legal basis to conclude that the offense conduct was the proximate cause of the claimed investor losses.

### 2. The government fails to account for necessary offsets.

The government's request for restitution in the amount of the initial investments is inappropriate for the additional reason that it fails to account for certain offsets.

The first category of offsets that the government ignores are settlements between individual entities and Theranos. Safeway obtained a $15.5 million settlement. ECF 1728-2 at 205. The government's $807,465,307 request also appears to omit offsets for money returned to PFM and Hall

---

[8] The two investment cases the government cites offer little insight. In *United States v. Sarad*, 227 F. Supp. 3d 1153 (E.D. Cal. 2016), the defendant had stipulated that every investor was exposed to his material misrepresentations and had agreed to "abide by" restitution in the amount ordered, and there is no suggestion that the court made any factual findings regarding the inherent value of the company or other factors that influenced the company's value. In *United States v. Ageloff*, 809 F. Supp. 2d 89 (E.D.N.Y. 2011), unlike here, the court found that the stock was "worthless" when sold and "worthless" when the fraud was revealed, which obviated an assessment of alternative causes. *See id.* at 100-01.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

Group that the government accounts for in its alternative restitution request. *Compare* ECF 1726 at 4-5, *with* ECF 1726 at 6. Failing to account for all monies already returned would result in an impermissible windfall under the MVRA.

The government also fails to deduct the value all investors obtained through their investment and that they retained after the termination of the alleged conspiracy. "Clearly, where a fraud victim received some value in exchange for a fraudulently-induced payment, any restitution awarded should reflect an offset for the value that the victim received, since to do otherwise would be to violate the principle that a victim must receive the full amount of, but not in excess of, his, her, or its loss." *United States v. Faibish*, 2017 WL 3634599, at *2 (E.D.N.Y. Aug. 22, 2017) (internal quotation marks omitted); *accord United States v. Geringer*, 672 F. App'x 651, 652-53 (9th Cir. 2016).

In *Geringer*, the Ninth Circuit vacated a sentence and restitution order and remanded for this Court to consider the defendant's argument that the amount of loss to the investor-victims should be offset "by the value of the fund's assets" as they existed after the offense conduct had occurred and had been revealed. 672 F. App'x at 652-53. On remand, this Court issued a revised restitution order that deducted the value of those assets (including intellectual property assets) from the amount invested even though, because of post-offense-conduct events, the investors ultimately did not realize any of that remaining value. *See* 05/06/19 H'rg Tr., *United States v. Geringer*, No. CR-12-00888-EJD (N.D. Cal.), at 42-43, 63-64, 90. This Court's approach in *Geringer* conforms with that of other courts, which require the deduction of a company's inherent value and assets even in cases of "illiquid securities for which there is no public market." *United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008) (holding that "the district court erred in not deducting from the purchase price the actual value of the instruments"). If the Court orders restitution, it should apply *Geringer* to deduct the company's inherent value, including the value of its intellectual property.[9]

---

[9] As noted above, the valuations of the company in the Saba Report are not useful for this purpose because they do not account for the value of its intellectual property. And while Theranos may not have been attempting to licensing its intellectual property in late 2015, ECF 1712 at 11, the company's intellectual property—including its patent portfolio—were undoubtedly valuable assets continuing into 2016 and beyond, which is the relevant inquiry for restitution purposes.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

The record suggests that other offsets may exist. As noted above, *supra* § I.A.1, because most investors did not submit requests for restitution attesting to their amount of claimed loss, we do not know the value of the tax benefits they may have received through their investment losses. Additionally, in March 2017, long after the alleged conspiracy had ended, the C-1 and C-2 investors negotiated and executed an agreement with Theranos where they exchanged their existing shares for a new class of shares in the company. *See* ECF 1728-2 at 156 (noting the agreement was made for "good and valuable consideration"). And in March 2018, as part of her settlement with the SEC, Ms. Holmes was ordered to return to Theranos 18,897,137 Class B common stock shares. *SEC v. Holmes*, No. 5:18-cv-01602-EJD (N.D. Cal. Mar. 27, 2018), ECF 9. Notwithstanding its burden of proof, the government has not endeavored to value or offset the 2017 deal or the 2018 stock transfer.

## II. The Government Has Failed To Meet Its Burden of Proof as to Safeway or Walgreens.

In addition to the investors, the government seeks restitution for Theranos business partners Safeway and Walgreens. ECF 1726 at 5. The government has not established factual or proximate cause for either of these entities. An inference of reliance is not warranted, for several reasons.

First, both Safeway and Walgreens conducted exhaustive diligence on Theranos before either decided to enter a contractual relationship or to transfer money to Theranos. *See* Tr. 3641:23-3642 (Jhaveri) (testifying that adequate due diligence was done by Walgreens and its outside consultants); Tr. 3369:10-17, 3369:20-3370:6, 3445:6-15, 3455:16-23 (Miquelon) (describing extensive diligence by Walgreens, including evaluation of the technology by Johns Hopkins scientists); Tr. 3066:5-8, 3067:11-16, 3072:1-6, 3075:1-3 (Burd) (describing "hundreds of hours" that Safeway spent on diligence, including through collaboration with UCSF scientists). This extensive diligence makes it unlikely that either company decided to pay Theranos money in reliance on the alleged misrepresentations. The general conspiracy verdict does not suggest that the jury found otherwise. In fact, any such finding is unlikely because the government explicitly told the jury at closing that "you don't have to resolve the question" whether Safeway and Walgreens "are victims" to convict on Count One. Tr. 8921:18-8922:3.

Second, Walgreens is not entitled to restitution for the independent reason that it seeks expectation damages that are not cognizable as restitution. *See Boccagna*, 450 F.3d at 119

("Expectation damages strive to place an aggrieved party in the same economic position it would have been in had both parties fully performed their contractual obligations. Criminal restitution, on the other hand, is not concerned with a victim's disappointed expectations but only with his actual loss." (citation and internal quotation marks omitted)). According to Walgreens' victim impact statement, it seeks restitution principally stemming from an unfulfilled $40 million promissory note whereby it obtained the right to purchase shares in Theranos. *See* ECF 1726-3. Walgreens does not assert that it converted that contractual right into shares. *See id.* Accordingly, in seeking restitution for Theranos' failure to pay on the note, Walgreens seeks to put itself "in the same economic position it would have been in had both parties fully performed," *Boccagna*, 450 F.3d at 119, and not to compensate its actual out-of-pocket loss.[10]

### III. The Court Should Find that the MVRA Complexity Exception Applies.

The MVRA has a so-called "complexity exception"; when "complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," the court may find the statute does "not apply" and choose not to award restitution. 18 U.S.C. § 3663A(c)(3)(B). That exercise of discretion is appropriate where "the parties' submissions make clear that any estimate would be too arbitrary to sustain and that a hearing to achieve a non-arbitrary result would involve protracted proceedings that, even if conducted, might well not produce a non-arbitrary result." *United States v. Adorno*, 950 F. Supp. 2d 426, 431 (E.D.N.Y. 2013) (declining to order restitution); *see also United States v. Schlifstein*, 2020 WL 2539123, at *5 (S.D.N.Y. May 19, 2020) (declining to order restitution where "[a] clear causal link between the purported loss and the defendants' conduct is missing"). For all the reasons set forth above, a proper calculation of loss in this case would be exceedingly complex. Although the government attempts to avoid this complexity by seeking refuge in inferences that the record does not support, those maneuvers only betray the complexity of the task at hand.

---

[10] Safeway did not submit a victim impact statement.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

13

That this case poses complex issues relating to restitution is unsurprising; courts have recognized the potential applicability of the complexity exception on similar facts. *See United States v. Reifler*, 446 F.3d 65, 138 (2d Cir. 2006). As the *Reifler* court explained:

> [E]ven if a particular date were settled on as the date of damage, loss, or destruction, it is not clear—in circumstances where the property is a security retained by the victim, the value of which has first plunged, has then been further eroded over a period of weeks or months, and has finally ceased to exist entirely—what Congress would have meant by the "value" of the property on the date of damage, loss, or destruction. The difficulty in determining the "value" to be awarded is perhaps best reflected in the fact that, in order to produce the loss figures shown in its exhibits, many of the factors used by the government were hypothetical or arbitrary assumptions.

*Id.* at 138. This case poses similar challenges as identified in *Reifler*. The Court should not prolong sentencing proceedings further and should instead find that the MVRA's complexity exception applies.

**IV.     If the Court Orders Restitution, It Should Not Include Interest or Investigative Costs.**

The government asks for two additional categories of restitution—prejudgment interest and, for RDV, costs purportedly incurred in connection with this litigation. ECF 1726 at 7. Neither category is warranted.

The Court has discretion whether to order prejudgment interest under the MVRA. *See United States v. Gordon*, 393 F.3d 1044, 1060 (9th Cir. 2004), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018). Because prejudgment interest "reflects the victim's inability to use his or her money for a productive purpose," it is not warranted where "it is too speculative to conclude that" the victim would have "placed the cash proceeds in an interest bearing account or used them for some other productive purpose." *Id.* at 1059-60. That is the case here. These were venture capital investments in a new business. The vast majority of these investments never generate returns. *See* Deborah Gage, *The Venture Capital Secret: 3 Out of 4 Start-Ups Fail*, Wall Street Journal Online (updated Sept. 20, 2012) (citing a Harvard Business School survey); *see also* ECF 1655 at 49-50 (citing additional studies). It therefore is unduly speculative to conclude that the investors would have made productive use of their investments; it is more likely they would have invested in another early-stage company with similarly long odds of success. In any event, the Treasury rate is a poor approximation of the degree of risk the investors agreed to carry with respect to their investment in Theranos.

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

14

RDV's request for costs fails because it is inadequately supported. The MVRA allows for victims to recoup only those expenses necessary with assisting in the criminal proceedings. *Lagos v. United States*, 138 S. Ct. 1684, 1688 (2018). The *Lagos* Court concluded that the MVRA "does not cover the costs of a private investigation that the victim chooses on its own to conduct." *Id.* at 1690. "*Lagos* thus limits restitution to expenses incurred for investigatory activities that the government expressly and specifically invited or requested." *United States v. Avenatti*, 2022 WL 452385, at *5 (S.D.N.Y. Feb. 14, 2022) (internal quotation marks and alterations omitted). RDV has not provided the itemized accounting, including attorney billing records, that courts have held are a prerequisite for separating out necessary from unnecessary costs. *See, e.g.*, *Waknine*, 543 F.3d at 557 (vacating restitution order based on "loss summaries" for investigation costs that "did not contain itemized lists indicating, for example, the time spent by the attorney, the activities engaged in by the attorney, and the attorney's credentials and billable rate").

## CONCLUSION

For the foregoing reasons, the Court should decline to order restitution.

DATED: March 3, 2023

        /s/ Amy Mason Saharia
KEVIN DOWNEY
LANCE WADE
AMY MASON SAHARIA
KATHERINE TREFZ
Attorneys for Elizabeth Holmes

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023 a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' BRIEF RE: RESTITUTION
CR-18-00258 EJD