1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                       SAN JOSE DIVISION

5

      UNITED STATES OF AMERICA,        )
6                                      )  CR-18-00258-EJD
                      PLAINTIFF,       )
7                                      )  SAN JOSE, CALIFORNIA
               VS.                     )
8                                      )  FEBRUARY 17, 2023
      RAMESH "SUNNY" BALWANI,          )
9                                      )  PAGES 1 - 67
                      DEFENDANT.       )
10    _____  )

11                      TRANSCRIPT OF PROCEEDINGS
12             BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
13    A P P E A R A N C E S:

14
      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                           BY:  JOHN C. BOSTIC
                                  JEFFREY B. SCHENK
16                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA 95113
17
                             BY:  ROBERT S. LEACH
18                                KELLY VOLKAR
                             1301 CLAY STREET, SUITE 340S
19                           OAKLAND, CALIFORNIA 94612

20
                    (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
      OFFICIAL COURT REPORTER:
22                                  IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                    CERTIFICATE NUMBER 8074
23

24          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
25

```
 1    A P P E A R A N C E S: (CONT'D)

 2

      FOR DEFENDANT BALWANI:  ORRICK, HERRINGTON & SUTCLIFFE LLP
 3                            BY:  JEFFREY COOPERSMITH
                              701 FIFTH AVENUE, SUITE 5600
 4                            SEATTLE, WASHINGTON 98104

 5                            BY:  SACHIKO SCHURICHT
                              405 HOWARD STREET
 6                            SAN FRANCISCO, CALIFORNIA 94105

 7                            BY:  STEPHEN CAZARES
                              77 SOUTH FIGUEROA STREET, SUITE 3200
 8                            LOS ANGELES, CALIFORNIA 90017

 9                            BY:  AMY WALSH
                              51 W 52ND STREET
10                            NEW YORK, NEW YORK 10019

11                            BY:  MARK S. DAVIES
                              1152 15TH STREET NW
12                            WASHINGTON, DC 20005

13    FOR U.S. PROBATION:     KYLE POLLAK

14

      ALSO PRESENT:           OFFICE OF THE U.S. ATTORNEY
15                            BY:  MADDI WACHS, PARALEGAL
                                   SARAH SLATTERY, PARALEGAL
16
                              UNITED STATES POSTAL INSPECTION SERVICE
17                            BY:  CHRISTOPHER MCCOLLOW

18                            UNITED STATES FOOD & DRUG
                              ADMINISTRATION
19                            BY:  GEORGE SCAVDIS

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    FEBRUARY 17, 2023

 2                      P R O C E E D I N G S

 3         (COURT CONVENED AT 9:41 A.M.)

 4              THE COURT:  THIS IS 18-2582, UNITED STATES VERSUS

 5    RAMESH BALWANI.

 6         MAY I HAVE THE APPEARANCE OF THE PARTIES, PLEASE.

 7              MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  IT'S GOOD TO

 8    SEE YOU AGAIN.

 9         KELLY VOLKAR ON BEHALF OF THE UNITED STATES.

10         I'M JOINED BY MY COLLEAGUES:  ROBERT LEACH, JOHN BOSTIC,

11    AND JEFFREY SCHENK.

12              THE COURT:  GOOD MORNING.  THANK YOU.

13              MR. COOPERSMITH:  GOOD MORNING, YOUR HONOR.  GOOD TO

14    SEE YOU.

15              THE COURT:  THANK YOU.

16              MR. COOPERSMITH:  I'M JEFF COOPERSMITH FOR

17    MR. BALWANI, AND MR. BALWANI IS PRESENT.

18         I'M JOINED BY MY COLLEAGUES:  MARK DAVIES, AMY WALSH,

19    STEPHEN CAZARES, AND SACHI SCHURICHT.

20         I'LL JUST TELL THE COURT THAT MR. DAVIES WILL ARGUE THE

21    RELEASE PENDING APPEAL MOTION, AND MS. WALSH WILL ARGUE THE

22    RESTITUTION PORTION OF THE HEARING.

23              THE COURT:  THANK YOU.

24              MR. COOPERSMITH:  YES, YOUR HONOR.

25              THE COURT:  GOOD TO SEE YOU ALL AGAIN AS WELL.
```

09:41AM  1          WHO APPEARS FOR PROBATION?

09:41AM  2               PROBATION OFFICER:  KYLE POLLAK FOR PROBATION.

09:41AM  3               THE COURT:  THANK YOU.

09:41AM  4          MR. POLLAK, LET ME JUST ASK YOU, I THINK I KNOW THE ANSWER

09:42AM  5     TO THIS QUESTION, BUT DOES PROBATION HAVE ANY ADDITIONAL MEMOS

09:42AM  6     WITH REGARDS TO RESTITUTION OR ANY OTHER ISSUE THAT WE'LL TALK

09:42AM  7     ABOUT TODAY?

09:42AM  8               PROBATION OFFICER:  WE DO NOT, YOUR HONOR.

09:42AM  9               THE COURT:  OKAY.  THANK YOU.

09:42AM  10         I HAVE REVIEWED THE MEMORANDUM AND THE SUPPLEMENTAL BRIEFS

09:42AM  11    THAT COUNSEL HAVE PROVIDED.  THANK YOU FOR THOSE.  THOSE HAVE

09:42AM  12    BEEN VERY HELPFUL.

09:42AM  13         I WANT TO TALK THIS MORNING -- I THOUGHT WE WOULD FIRST

09:42AM  14    TALK ABOUT RESTITUTION.  I'D LIKE TO TOUCH ON THAT FIRST, AND

09:42AM  15    THEN WE'LL TALK ABOUT THE OTHER ISSUES ATTENDANT TO RELEASE

09:42AM  16    PENDING APPEAL.

09:42AM  17         THE ISSUE I WANTED TO FOCUS ON AS FAR AS RESTITUTION GOES

09:42AM  18    IS I DO HAVE THE GOVERNMENT'S DOCUMENT 1726, AND THERE IS A

09:43AM  19    CHART ON PAGE 6 OF THAT DOCUMENT THAT I'VE LOOKED AT, AND I'D

09:43AM  20    LIKE SOME DISCUSSION FROM THE PARTIES ABOUT THOSE INDIVIDUALS

09:43AM  21    LISTED THERE, THE AMOUNTS THAT ARE LISTED THERE.

09:43AM  22         AND I'M PARTICULARLY INTERESTED IN SAFEWAY AND WALGREENS.

09:43AM  23    AND THEY'RE NOT ON THE CHART, BUT I'M CURIOUS ABOUT THOSE TWO

09:43AM  24    ENTITIES IN PARTICULAR REGARDING ANY OFFSETS THAT MIGHT PRESENT

09:43AM  25    ITSELF REGARDING ANY OTHER LITIGATION OR AGREEMENTS THAT HAVE

09:43AM 1    OCCURRED.

09:43AM 2            SO LET ME TURN TO THE GOVERNMENT TO TALK ABOUT THAT FIRST.

09:44AM 3                MR. LEACH:  THANK YOU, YOUR HONOR.

09:44AM 4        ROBERT LEACH ON BEHALF OF THE UNITED STATES.

09:44AM 5            WITH RESPECT TO THE CHART THAT THE GOVERNMENT INCLUDED ON

09:44AM 6    PAGE 6, THIS IS A LISTING OF ALL OF THE INVESTORS FOR WHOM,

09:44AM 7    WHEN THE COURT WAS CALCULATING THE LOSS, FOUND THAT THEY WERE A

09:44AM 8    VICTIM AND THAT LOSS COULD BE REASONABLY CALCULATED FOR EACH OF

09:44AM 9    THESE INDIVIDUALS.

09:44AM 10           THE REASON SAFEWAY AND PFM ARE NOT LISTED IN THIS CHART IS

09:44AM 11   BECAUSE THE COURT DID NOT MAKE FINDINGS AT THE SENTENCING ABOUT

09:44AM 12   WHETHER THEY WERE VICTIMS AND DID NOT INCLUDE THEM IN THE LOSS

09:44AM 13   CALCULATION.

09:44AM 14           WE DO THINK SAFEWAY AND WALGREENS ARE VICTIMS.  THEY WERE

09:44AM 15   BOTH BUSINESS PARTNERS TO THERANOS, BUT THEY ALSO INVESTED

09:44AM 16   THROUGH CONVERTIBLE NOTES.  SO THE ONLY REASON I DID NOT

09:45AM 17   INCLUDE THEM IN THE CHART THERE WAS SIMPLY BECAUSE THEY WEREN'T

09:45AM 18   INCLUDED IN THE LOSS CALCULATIONS THAT YOUR HONOR FOUND.

09:45AM 19           FOR PURPOSES OF RESTITUTION, WE DO THINK THAT THEY MEET

09:45AM 20   THE DEFINITION OF A VICTIM FOR A COUPLE OF REASONS.

09:45AM 21           FIRST, THE STATUTE DEFINES A VICTIM AS A PERSON DIRECTLY

09:45AM 22   OR PROXIMATELY HARMED AS A RESULT OF THE OFFENSE.

09:45AM 23           IT GOES ON TO SAY THAT INCLUDES ANY PERSON DIRECTLY HARMED

09:45AM 24   BY THE DEFENDANT'S CRIMINAL CONDUCT IN THE COURSE OF THE

09:45AM 25   SCHEME, CONSPIRACY, OR PATTERN.

09:45AM 1         AND MR. BALWANI WAS CONVICTED OF A SCHEME TO DEFRAUD

09:45AM 2    INVESTORS.  WE BELIEVE SAFEWAY AND WALGREENS WERE INVESTORS BY

09:45AM 3    VIRTUE OF THE CONVERTIBLE NOTES.

09:45AM 4         PART OF THE REASON THAT YOUR HONOR KNOWS THEY INVESTED

09:45AM 5    BASED ON STATEMENTS FROM MS. HOLMES AND MR. BALWANI ARE TRIAL

09:45AM 6    TESTIMONY IN THE HOLMES CASE FROM WADE MIQUELON WHO WAS THERE

09:46AM 7    AT THE OUTSET OF THE INVESTMENTS.  HE RECEIVED SOME OF THE SAME

09:46AM 8    PHARMACEUTICAL REPORTS THAT WENT TO SOME OF THE INVESTORS BOTH

09:46AM 9    IN THAT TIME PERIOD AND LATER.

09:46AM 10        WALGREENS WAS ALSO GIVEN STATEMENTS ABOUT THE CAPABILITIES

09:46AM 11    OF THE TECHNOLOGY BY BOTH MS. HOLMES AND MR. BALWANI.

09:46AM 12        SAFEWAY, IN THAT SAME TIME PERIOD, SIGNED A MASTER

09:46AM 13    SERVICES AGREEMENT.  THEY RECEIVED INFLATED FINANCIAL

09:46AM 14    STATEMENTS DIRECTLY FROM MR. BALWANI.  AND MR. BIRD TESTIFIED

09:46AM 15    IN MS. HOLMES'S CASE, AND THAT PROVIDES SOME OF THE EVIDENCE

09:46AM 16    SUPPORTING A RESTITUTION FINDING HERE.

09:46AM 17        WITH RESPECT TO THE OFFSETS YOUR HONOR MENTIONED, I DO

09:46AM 18    AGREE THAT SAFEWAY HAS BEEN PAID BACK MONEY, AND THAT WAS AN

09:46AM 19    OVERSIGHT ON THE GOVERNMENT'S PART IN ITS CALCULATIONS.  SO WE

09:46AM 20    HAVE NO DISPUTE WITH THE OFFSET THAT THE DEFENDANT RAISES IN

09:46AM 21    THEIR REPLY BRIEF.

09:46AM 22        WALGREENS SUBMITTED A SWORN VICTIM IMPACT STATEMENT

09:47AM 23    CLAIMING RESTITUTION IN THE AMOUNT OF $40 MILLION, WHICH IS

09:47AM 24    TIED TO THE INVESTMENT PORTION OF THE MASTER SERVICES

09:47AM 25    AGREEMENT.  THEY WERE NOT SEEKING RESTITUTION FOR OTHER

09:47AM 1    PAYMENTS THAT WERE MADE ALONG THE WAY LIKE THE INNOVATION FEE

09:47AM 2    OR, YOU KNOW, MATTERS RELATING TO THE PARTICULAR BLOOD TESTS.

09:47AM 3         SO THERE WERE SOME OTHER PAYMENTS, BUT I THINK THE AMOUNT

09:47AM 4    WE'RE REQUESTING ON BEHALF OF WALGREENS IS DIRECTLY TIED TO

09:47AM 5    THEIR SWORN VICTIM IMPACT STATEMENT, WHICH PROVIDES A BASIS FOR

09:47AM 6    THEIR LOSS.

09:47AM 7         AND BASED ON BOTH THAT AND MR. MIQUELON'S TESTIMONY AND

09:47AM 8    OTHER MATTERS BEFORE THE COURT, WE BELIEVE THAT THEY'RE

09:47AM 9    APPROPRIATELY CONSIDERED A VICTIM.

09:47AM 10        THE COURT:  OKAY.  THANK YOU.

09:47AM 11        SAFEWAY DID NOT, AS I UNDERSTAND IT, DID NOT SUBMIT A

09:47AM 12   VICTIM IMPACT STATEMENT?

09:47AM 13        MR. LEACH:  THEY DID NOT, YOUR HONOR.

09:47AM 14        THE COURT:  OKAY.  WHAT MOMENT IS THAT?

09:47AM 15        MR. LEACH:  I DON'T THINK IT -- I THINK THE PROOF

09:48AM 16   CAN COME IN A VARIETY OF DIFFERENT WAYS.  IT COULD BE -- I

09:48AM 17   CAN'T DESCRIBE A MOTIVE FOR THEM NOT SUBMITTING ONE.  THERE ARE

09:48AM 18   VICTIMS WHO SIMPLY DID NOT WANT TO BE ENGAGED IN THIS PROCESS

09:48AM 19   AND VICTIMS ARE REQUIRED TO PARTICIPATE IN RESTITUTION.

09:48AM 20        SO I DON'T THINK IT'S OF ANY IMPORT IF THERE'S SUFFICIENT

09:48AM 21   EVIDENCE IN THE RECORD FOR THE COURT TO MAKE THE FINDING THAT

09:48AM 22   THEY INVESTED BASED ON FALSE AND MISLEADING STATEMENTS BY THE

09:48AM 23   DEFENDANT OR THROUGH OTHER WAYS ARE A VICTIM.  I THINK THAT'S

09:48AM 24   ESTABLISHED BY MR. BIRD'S TESTIMONY IN THE HOLMES CASE, AND THE

09:48AM 25   NOTES THEMSELVES THAT HAVE BEEN SUBMITTED, AND THE WIRE

09:48AM  1    TRANSFER THAT HAS BEEN SUBMITTED, AND THE SETTLEMENT AGREEMENT

09:48AM  2    THAT THE COURT HAS.

09:48AM  3        BUT I DON'T THINK THE EXISTENCE OF A VICTIM IMPACT

09:48AM  4    STATEMENT IS NECESSARILY DISPOSITIVE.

09:48AM  5            THE COURT:  SHOULD I INFER THAT THEY'RE NOT

09:49AM  6    REQUESTING RESTITUTION BECAUSE THEY HAD KNOWLEDGE THAT THEY

09:49AM  7    COULD FILE A STATEMENT AND IF THEY HAVEN'T, SHOULD I JUST INFER

09:49AM  8    THAT THEY'RE NOT -- THAT THEY'RE AGNOSTIC AS TO RESTITUTION?

09:49AM  9            MR. LEACH:  I WOULD URGE THE COURT NOT TO DO THAT IN

09:49AM  10   PART BECAUSE VICTIMS ARE NOT REQUIRED TO PARTICIPATE IN THIS

09:49AM  11   PROCESS.  IT'S EITHER 3663(A) OR 3664, BUT CONGRESS HAS BEEN

09:49AM  12   QUITE CLEAR THAT NO VICTIM SHOULD BE REQUIRED TO PARTICIPATE,

09:49AM  13   AND IN A MOMENT I CAN FIND THE PRECISE CITE.

09:49AM  14       SO THAT'S NOT AN INFERENCE THAT I WOULD URGE THE COURT TO

09:49AM  15   DRAW.  I'M NOT SAYING THAT'S IMPERMISSIBLE FOR THE COURT, BUT

09:49AM  16   CONGRESS HAS MADE IT CLEAR THAT VICTIMS ARE NOT REQUIRED TO

09:49AM  17   PARTICIPATE IN THIS PROCESS.  VICTIMS HAVE A LOT OF REASONS FOR

09:49AM  18   SIMPLY NOT WANTING TO BE INVOLVED, NOT WANTING TO SPEND

09:49AM  19   ATTORNEYS' FEES PREPARING A STATEMENT.  AND SO I CERTAINLY DID

09:50AM  20   NOT COME TO THE CONCLUSION THAT SAFEWAY DID NOT THINK IT WAS A

09:50AM  21   VICTIM AND DID NOT WANT ITS MONEY BACK.  AND BECAUSE OF THE

09:50AM  22   CONGRESSIONAL MANDATE, I WOULD URGE THE COURT NOT TO DRAW THAT

09:50AM  23   INFERENCE.

09:50AM  24            THE COURT:  OKAY.  THANK YOU.

09:50AM  25       I THINK -- CAN YOU HELP US OUT A LITTLE BIT ABOUT THEIR

09:50AM  1    FINANCIAL RELATIONSHIP, AND, THAT IS, THEIR INVESTMENT.  WAS IT

09:50AM  2    A CONVERTIBLE LOAN?  AND WHAT DISTINCTION, IF ANY, DOES THAT

09:50AM  3    HAVE AS TO RESTITUTION?

09:50AM  4         MR. LEACH:  IT WAS -- I DON'T THINK THE NAME OF THE

09:50AM  5    SECURITY MATTERS FOR PURPOSES OF RESTITUTION.  THE TEST IS

09:50AM  6    WHETHER IT'S SOMEBODY WHO HAS BEEN HARMED AS A RESULT OF THE

09:50AM  7    OFFENSE.  SAFEWAY BECAME A PARTNER OF THERANOS IN 2000.  THEY

09:50AM  8    HAD A MASTER SERVICES AGREEMENT.

09:50AM  9         PART OF THAT AGREEMENT PERMITTED SAFEWAY TO INVEST IN A

09:51AM  10   CONVERTIBLE NOTE, WHICH COULD BE CONVERTED INTO STOCK IN

09:51AM  11   THERANOS.

09:51AM  12        THE NOTE ITSELF REFERS TO SAFEWAY AS AN INVESTOR.

09:51AM  13   MS. HOLMES AND MR. BALWANI TALKED ABOUT SAFEWAY IN TERMS OF

09:51AM  14   MAKING AN INVESTMENT ON THIS PIECE.

09:51AM  15        AND IN 2011 AS THE RELATIONSHIP WITH -- BETWEEN THERANOS

09:51AM  16   AND SAFEWAY WAS PROGRESSING, SAFEWAY ELECTED TO EXERCISE THE

09:51AM  17   RIGHTS TO ACQUIRE THAT NOTE.  THEY TRANSFERRED $30 MILLION TO

09:51AM  18   THERANOS IN 2011.  THIS IS AFTER MR. BALWANI AND MS. HOLMES HAD

09:51AM  19   PROVIDED FALSE FINANCIAL PROJECTIONS TO SAFEWAY.  THIS IS AFTER

09:51AM  20   THEY'VE SAID THE DEVICE CAN DO ALL OF THE TESTS.  THIS IS AFTER

09:51AM  21   OTHER STATEMENTS THAT MS. HOLMES AND MR. BALWANI HAVE MADE TO

09:51AM  22   THEM.  AND THAT'S ALL FROM THE TESTIMONY OF STEVE BIRD IN THE

09:51AM  23   HOLMES TRIAL.

09:51AM  24        SO THAT'S THE NATURE OF THEIR -- THE INVESTMENT PIECE OF

09:52AM  25   THEIR RELATIONSHIP.  I THINK SAFEWAY WAS -- THE PARTNERSHIP

09:52AM   1    NEVER REALLY GOT OFF THE GROUND.  THEY -- SAFEWAY HAD A

09:52AM   2    THERANOS -- OR THERANOS DREW BLOOD AT A SAFEWAY STORE BOTH FROM

09:52AM   3    THE FINGER AND FROM THE VEIN, BUT THEY WERE NEVER OFFERING

09:52AM   4    THERANOS SERVICES IN SAFEWAY STORES.  THAT WAS JUST FOR

09:52AM   5    EMPLOYEES OF SAFEWAY AS SOMEWHAT OF A PILOT.  SO I HOPE THAT'S

09:52AM   6    RESPONSIVE TO YOUR HONOR'S QUESTION.

09:52AM   7                THE COURT:  THANK YOU.  AND WHAT --

09:52AM   8    MR. COOPERSMITH'S EXHIBIT C I THINK HAS THE -- ISN'T THAT THE

09:52AM   9    AGREEMENT THAT THE PARTIES ENTERED INTO, SAFEWAY AND THERANOS?

09:52AM  10        MS. WALSH WILL HELP US WITH THIS IN A MOMENT.

09:52AM  11                MS. WALSH:  YES, IT IS, YOUR HONOR.

09:52AM  12        IT'S DOCKET 1728-2 AT PAGE 205.

09:52AM  13                THE COURT:  CORRECT.

09:52AM  14                MS. WALSH:  YEAH.

09:53AM  15                THE COURT:  RIGHT.

09:53AM  16        SO WHAT DOES THIS DO TO THE DISCUSSION AS TO SAFEWAY AND

09:53AM  17    WHAT AMOUNT THEY'RE ENTITLED TO, MR. LEACH?

09:53AM  18                MR. LEACH:  I'M SORRY, YOUR HONOR.  I'M TRYING TO

09:53AM  19    CULL THAT UP.

09:53AM  20        I UNDERSTAND 1728-2, EXHIBIT C TO BE THE AGREEMENT

09:53AM  21    TERMINATING THE RELATIONSHIP, AND I AGREE WITH THE DEFENSE THAT

09:53AM  22    ANY AMOUNTS PAID PURSUANT TO THIS AGREEMENT SHOULD REDUCE THE

09:53AM  23    AMOUNT OF RESTITUTION TO SAFEWAY.

09:53AM  24                THE COURT:  OKAY.

09:53AM  25                MR. LEACH:  IT IS PROPERTY OF SAFEWAY THAT HAS BEEN

09:53AM   1    RETURNED UNDER 3663(A)(2).  SO I APOLOGIZE FOR OVERLOOKING THIS

09:53AM   2    IN THE INITIAL CALCULATION, BUT I AGREE, IT SHOULD BE REDUCED

09:53AM   3    BY THIS AMOUNT.

09:54AM   4            THE COURT:  DO YOU HAVE A FIGURE THAT YOU WOULD

09:54AM   5    SUGGEST TO THE COURT FOR SAFEWAY?

09:54AM   6        AND I'LL ASK THE SAME QUESTION ABOUT WALGREENS WHEN WE GET

09:54AM   7    TO THAT.

09:54AM   8        (PAUSE IN PROCEEDINGS.)

09:54AM   9            MR. LEACH:  YES, YOUR HONOR.

09:54AM   10       THE AMOUNT OF SAFEWAY INVESTMENT WAS $30 MILLION, AND IT

09:54AM   11   SHOULD BE REDUCED BY I BELIEVE IT'S 15 OR 15.5 PURSUANT TO THE

09:54AM   12   AGREEMENT.  SO 15 OR 14.5 MILLION.

09:54AM   13           THE COURT:  OKAY.  THANK YOU.  LET'S TURN TO

09:54AM   14   WALGREENS.

09:54AM   15       WALGREENS HAD A SIMILAR DOCUMENT, BUT THERE WAS SOME

09:54AM   16   ACTIVITY IN ANOTHER COURT, WASN'T THERE, ABOUT WALGREENS?

09:55AM   17       LET'S SEE.  I THINK -- DID MR. COOPERSMITH GIVE US SOME

09:55AM   18   INFORMATION ON THAT AS WELL?

09:55AM   19           MR. LEACH:  I DON'T RECALL THAT FROM

09:55AM   20   MR. COOPERSMITH'S PLEADING, YOUR HONOR, BUT WALGREENS'S VICTIM

09:55AM   21   IMPACT STATEMENT WAS PART OF THE GOVERNMENT'S SUBMISSION, AND

09:55AM   22   THIS IS 1726-3.

09:55AM   23       AND THEY'RE CLAIMING $40 MILLION IN RESTITUTION

09:55AM   24   SPECIFICALLY RELATING TO A NOTE THAT A WALGREENS ENTITY MADE IN

09:55AM   25   THE 2012 TIME PERIOD DURING THE CONSPIRACY.

09:55AM   1          I THINK THE LITIGATION YOUR HONOR MIGHT BE REFERRING TO IS

09:55AM   2     WALGREENS, WHEN THERANOS DID NOT PAY THAT NOTE, SUED TO GET A

09:55AM   3     JUDGMENT ON THAT NOTE, GOT A JUDGMENT, BUT I HAVE NO REASON TO

09:55AM   4     THINK THAT WALGREENS HAS COLLECTED ON THAT JUDGMENT.

09:55AM   5          WALGREENS IS ALSO A CODEFENDANT WITH THERANOS,

09:56AM   6     MR. BALWANI, AND MS. HOLMES, AND SOME LITIGATION INVOLVING

09:56AM   7     PATIENTS, BUT I DON'T THINK THERE'S BEEN A JUDGMENT IN THAT

09:56AM   8     CASE.

09:56AM   9          AND AS I MENTIONED, WALGREENS DID RECEIVE OTHER MONIES

09:56AM  10     FROM THERANOS AS PART OF ITS BUSINESS PARTNERSHIP IN TERMS OF

09:56AM  11     INNOVATION FEES BUT THAT'S NOT THE 40 MILLION THAT'S BEING

09:56AM  12     CLAIMED HERE.

09:56AM  13             THE COURT:  THANK YOU.  I THINK IT'S ACTUALLY YOUR

09:56AM  14     EXHIBIT, ISN'T IT, YOUR EXHIBIT B?  I THINK IT IS.  AND THAT'S

09:56AM  15     THEIR VICTIM IMPACT STATEMENT, PARAGRAPH 4.  IT'S THE ADDENDUM

09:56AM  16     TO QUESTION 4 I SHOULD SAY.  IT TALKS ABOUT A JUDGMENT FROM THE

09:56AM  17     DISTRICT OF DELAWARE.

09:56AM  18             MR. LEACH:  YES, YOUR HONOR.

09:56AM  19             THE COURT:  AND WHAT -- SO HOW MUCH SHOULD WALGREENS

09:56AM  20     RECEIVE AS RESTITUTION IN THIS CASE?

09:57AM  21             MR. LEACH:  40 MILLION, YOUR HONOR.  SIMPLY BECAUSE

09:57AM  22     OF THE FACT THAT THEY HAVE UNPAID JUDGMENTS, I THINK THE

09:57AM  23     JUDGMENT ESTABLISHES THEIR CLAIM, BUT IT -- THEY HAVEN'T

09:57AM  24     RECEIVED THAT MONEY.  AND SO I DON'T THINK IT SHOULD BE REDUCED

09:57AM  25     IN ANY WAY BUT SIMPLY BECAUSE THEY HAVE AN UNPAID JUDGMENT.

09:57AM   1          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

09:57AM   2      THAT'S REALLY WHAT I WANTED TO TALK ABOUT.

09:57AM   3      OH, OH.  ANYTHING ELSE YOU WANT TO ADD AS TO YOUR CHART ON

09:57AM   4  PAGE 6 OF 1726?

09:57AM   5          MR. LEACH:  NO, YOUR HONOR.

09:57AM   6      THIS WAS OUR EFFORT TO SUMMARIZE THE AMOUNTS OF

09:57AM   7  INDIVIDUALS AND ENTITIES THAT THE COURT HAD FOUND FOR PURPOSES

09:57AM   8  OF LOSS WITH THEIR TOTAL AMOUNTS OF INVESTMENTS AND THE MONEY

09:57AM   9  RETURNED.

09:57AM   10     I URGE THE COURT NOT TO DRAW AN INFERENCE THAT SAFEWAY AND

09:57AM   11  WALGREENS AREN'T MENTIONED THERE.  THAT WAS REALLY TO AID THE

09:57AM   12  COURT IN TERMS OF WHAT IT'S ALREADY FOUND.

09:57AM   13     BUT WE THINK THAT THOSE ARE -- THAT'S THE AMOUNT OF THE

09:58AM   14  TOTAL INVESTMENTS BY THESE INDIVIDUALS.  THEY'VE BEEN FOUND TO

09:58AM   15  BE VICTIMS FOR PURPOSES OF LOSS.  WE THINK THEY SHOULD RECEIVE

09:58AM   16  THE ENTIRETY OF THEIR INVESTMENT, NOT SIMPLY WHAT THE COURT

09:58AM   17  FOUND FOR PURPOSES OF THE LOSS CALCULATION, WHICH IS TRYING TO

09:58AM   18  MEASURE THE OVERALL HARM TO SOCIETY FOR RESTITUTION, WE'RE

09:58AM   19  TRYING TO PUT THE VICTIMS BACK BEFORE THE CRIME COMMITTED, AND

09:58AM   20  THAT'S THE ONLY WAY TO DO THAT HERE.

09:58AM   21         THE COURT:  OKAY.  THANK YOU.

09:58AM   22     MS. WALSH.

09:58AM   23         MS. WALSH:  YES, YOUR HONOR.

09:58AM   24     IF I COULD ADDRESS WALGREENS AND SAFEWAY FIRST SINCE THE

09:58AM   25  COURT OPENED WITH THAT?

| | | |
|---|---|---|
| 09:58AM | 1 | THE COURT:  YES.  SURE. |
| 09:58AM | 2 | MS. WALSH:  SO THE AMOUNT THAT THE GOVERNMENT IS |
| 09:58AM | 3 | SEEKING FOR SAFEWAY AND WALGREENS -- AND YOU'RE RIGHT, SAFEWAY |
| 09:58AM | 4 | DID NOT FILE A RESTITUTION CLAIM, BUT THESE REALLY SOUND MORE |
| 09:58AM | 5 | IN BREACH OF CONTRACT THAN AS HAVING RESULTED FROM THE FRAUD |
| 09:58AM | 6 | CHARGED IN THE INDICTMENT. |
| 09:58AM | 7 | THE GIST OF MR. BIRD'S TESTIMONY AT TRIAL, AT MS. HOLMES'S |
| 09:59AM | 8 | TRIAL WAS THAT HE WAS PROMISED A BOX AND HE DIDN'T GET HIS BOX, |
| 09:59AM | 9 | AND THAT CAUSED ALL KINDS OF DAMAGES TO SAFEWAY BECAUSE THEY |
| 09:59AM | 10 | BUILT, YOU KNOW, KIND OF AN INFRASTRUCTURE TO PUT THAT BOX INTO |
| 09:59AM | 11 | AND IT DIDN'T WORK OUT.  THAT'S ESSENTIALLY A BREACH OF |
| 09:59AM | 12 | CONTRACT, AND THAT'S THE HARM THAT IS BEING PURSUED BY THE |
| 09:59AM | 13 | GOVERNMENT IS NOT AS A RESULT OF ANY FRAUD. |
| 09:59AM | 14 | SAME THING WITH WALGREENS.  WALGREENS, AS WE SET FORTH IN |
| 09:59AM | 15 | OUR BRIEF, HAD THESE DEVICES FOR YEARS.  THEY HAD THERANOS |
| 09:59AM | 16 | DEVICES FOR YEARS THAT THEY USED FOR TESTING.  AND TO THE |
| 09:59AM | 17 | EXTENT THAT WALGREENS DID NOT GET THE BENEFIT OF ITS BARGAIN IN |
| 09:59AM | 18 | ITS AGREEMENT WITH THERANOS WAS BECAUSE OF A BREACH OF A |
| 09:59AM | 19 | PROMISE, NOT BECAUSE OF FRAUD. |
| 09:59AM | 20 | IN FACT, WE HEARD LOTS OF TESTIMONY FROM MR. JHAVERI |
| 10:00AM | 21 | DURING THE TRIAL ABOUT HOW THEY WERE TRACKING THE NUMBERS OF |
| 10:00AM | 22 | VENIPUNCTURE VERSUS FINGERSTICK, AND MR. BALWANI WAS COMPLETELY |
| 10:00AM | 23 | OPEN AND TRUTHFUL WITH THEM ABOUT THOSE PERCENTAGES.  THERE WAS |
| 10:00AM | 24 | NEVER ANY ALLEGATION THAT HE LIED ABOUT THE PERCENTAGES OF |
| 10:00AM | 25 | VENIPUNCTURE VERSUS VENOUS DRAWS. |

10:00AM 1        SO THESE AMOUNTS MAY BE THE RESULT OF UNREALIZED PROMISES,

10:00AM 2  BUT THEY'RE NOT THE RESULT OF FRAUD.

10:00AM 3        THE COURT:  SO WHAT DO WE DO WITH THE JURY VERDICT

10:00AM 4  THAT FOUND YOUR CLIENT GUILTY OF THOSE CHARGES, THOUGH?  DOES

10:00AM 5  THAT -- DOESN'T THAT INSTRUCT THE COURT AS TO THE MANDATORY

10:00AM 6  VICTIM'S RESTITUTION?

10:00AM 7        MS. WALSH:  RIGHT.  SO THERE WERE NO CHARGES THAT

10:00AM 8  ALLEGED WALGREENS WAS A VICTIM OF THE FRAUD ALLEGED AGAINST

10:00AM 9  OTHER VICTIMS.

10:00AM 10     SAME THING WITH SAFEWAY.  THE ALLEGATION WAS THAT

10:01AM 11  WALGREENS WAS A PARTNER OF THERANOS, AS WAS SAFEWAY, AND

10:01AM 12  CERTAINLY THINGS DIDN'T WORK OUT THE WAY THE PARTIES WANTED

10:01AM 13  THEM TO, BUT I THINK THEY WERE IN A CATEGORICALLY DIFFERENT

10:01AM 14  BUCKET AS FAR AS RESTITUTION IS CONCERNED.  THEY'RE NOT IN THE

10:01AM 15  SAME SHOES AS INVESTORS WHO INVESTED IN THERANOS TO MAKE MONEY

10:01AM 16  IN THERANOS AND WHO WERE THE SUBJECT OF THE COUNTS OF

10:01AM 17  CONVICTION.  I THINK IT'S TOTALLY DIFFERENT.

10:01AM 18        THE COURT:  I SEE.  LET ME ASK MR. LEACH'S THOUGHT

10:01AM 19  ON THAT.

10:01AM 20        MR. LEACH:  YOUR HONOR, THE THIRD SUPERSEDING

10:01AM 21  INDICTMENT AT DOCKET 469, PARAGRAPH 3 SAYS, "THERANOS'S

10:01AM 22  INVESTORS INCLUDED INDIVIDUALS, ENTITIES, CERTAIN BUSINESS

10:01AM 23  PARTNERS, MEMBERS OF ITS BOARD OF DIRECTORS, AND INDIVIDUALS

10:01AM 24  AND ENTITIES WHO INVESTED THROUGH FIRMS."

10:01AM 25     MR. BALWANI WAS CONVICTED OF A CONSPIRACY TO DEFRAUD

10:01AM 1    INVESTORS DURING THE TIME PERIOD WHEN THERANOS -- WHEN SAFEWAY

10:02AM 2    AND WALGREENS INVESTED.  THERE WAS A MOTION TO DISMISS THE

10:02AM 3    INDICTMENT BASED ON THE INCLUSION OF CERTAIN BUSINESS PARTNERS

10:02AM 4    IN THIS ALLEGATION.

10:02AM 5         SO I DON'T THINK THERE'S ANY CREDIBLE CLAIM THAT SAFEWAY

10:02AM 6    AND WALGREENS WERE NOT PUT AT ISSUE IN PARAGRAPH 3.  AND IT IS

10:02AM 7    TRUE THAT THERE'S NOT A PARTICULAR WIRE FRAUD COUNT WITH

10:02AM 8    SAFEWAY OR WALGREENS AS THE VICTIM OF THAT WIRE FRAUD COUNT,

10:02AM 9    BUT I THINK THEY'RE INCLUDED WITHIN THE CONSPIRACY ALLEGATION.

10:02AM 10        MR. MIQUELON TESTIFIED IN THE HOLMES TRIAL ABOUT WHAT

10:02AM 11   INDUCED THE INVESTMENT.  MR. BIRD TESTIFIED IN THE HOLMES TRIAL

10:02AM 12   ABOUT WHAT INDUCED THE INVESTMENT.

10:02AM 13        THERE'S NO REASON SIMPLY BECAUSE THEY WERE ALSO BUSINESS

10:02AM 14   PARTNERS TO SOMEHOW CARVE THEM OUT OF THE EQUATION HERE.

10:02AM 15             THE COURT:  OKAY.

10:02AM 16             MS. WALSH:  YOUR HONOR, IF I COULD JUST SAY ONE MORE

10:02AM 17   THING ON THIS?

10:03AM 18             THE COURT:  SURE.

10:03AM 19             MS. WALSH:  SO I UNDERSTAND THERE ARE ALLEGATIONS

10:03AM 20   ABOUT WALGREENS IN THE INDICTMENT, HOWEVER, WE GOT A GENERAL

10:03AM 21   JURY VERDICT ON THE CONSPIRACY.  SO THERE'S NO WAY TO TELL FROM

10:03AM 22   THAT GENERAL VERDICT WHETHER WALGREENS OR SAFEWAY WERE VICTIMS

10:03AM 23   OF THE FRAUD.

10:03AM 24        AND THE TRIAL EVIDENCE SHOWED, ESPECIALLY WITH REGARD TO

10:03AM 25   WALGREENS, THAT THERANOS AND WALGREENS WERE WORKING TOGETHER.

10:03AM 1    AND IT WAS BECAUSE THERANOS WAS TRUTHFUL WITH WALGREENS ABOUT

10:03AM 2    THESE PERCENTAGES GOING UP IN VENIPUNCTURE THAT THEY DECIDED TO

10:03AM 3    END THE RELATIONSHIP, NOT BECAUSE THERANOS LIED TO THEM ABOUT

10:03AM 4    THAT ASPECT OF THE RELATIONSHIP.  I THINK THAT IS AN IMPORTANT

10:03AM 5    DISTINCTION.

10:03AM 6        THERE IS NO WAY TO TELL WHETHER THE CONSPIRACY VERDICT IS

10:03AM 7    PREMISED ON A FINDING BY THE JURY THAT WALGREENS AND SAFEWAY

10:03AM 8    WERE DEFRAUDED.

10:03AM 9        MR. LEACH:  MR. JHAVERI TESTIFIED THAT HE HAD HIS

10:04AM 10   BLOOD DRAWN AT THERANOS RIGHT BEFORE THE LAUNCH AND WAS SHOCKED

10:04AM 11   TO LEARN THAT IT WASN'T BEING RUN ON A THERANOS DEVICE.

10:04AM 12       THERE WERE TEXT MESSAGES INTRODUCED AT THE TRIAL ABOUT

10:04AM 13   WALGREENS FREAKING OUT WHEN IT LEARNED ABOUT "THE

10:04AM 14   WALL STREET JOURNAL" ARTICLE IN OCTOBER OF 2015.

10:04AM 15       THERE ARE TEXT MESSAGES FROM MR. BALWANI TELLING

10:04AM 16   MS. HOLMES, WE HAVE TO COME CLEAN WITH WALGREENS AT THIS POINT

10:04AM 17   BECAUSE THEY KNEW.

10:04AM 18       OUR BURDEN HERE IS PREPONDERANCE OF THE EVIDENCE.  I JUST

10:04AM 19   THINK THE TESTIMONY OF MR. JHAVERI AND MR. MIQUELON AMPLY

10:04AM 20   SUPPORT THE PROPOSITION THAT WALGREENS WAS AS DEFRAUDED AS THE

10:04AM 21   OTHER INVESTORS IN THIS CASE.

10:04AM 22       THE COURT:  OKAY.  THANK YOU.  OH.

10:04AM 23       MS. WALSH:  YES.  JUST ONE COMMENT ON ONE OF THE

10:04AM 24   FACTUAL ASSERTIONS MR. LEACH MADE ABOUT WADE MIQUELON GETTING

10:05AM 25   THE PHARMA REPORTS THAT HAD BEEN CHANGED FROM MS. HOLMES.

10:05AM 1          AS YOUR HONOR KNOWS FROM PRIOR MOTION PRACTICE,

10:05AM 2     MR. BALWANI DID NOT KNOW ANYTHING ABOUT THAT.  HE HAD NO IDEA

10:05AM 3     THAT THOSE CHANGES WOULD -- HAD BEEN MADE AND THAT DOCTOR

10:05AM 4     REPORTS WERE BEING SENT TO WALGREENS.  SO I JUST WANT TO MAKE

10:05AM 5     THAT CLEAR ON THE RECORD.

10:05AM 6               THE COURT:  OKAY.  THANK YOU.

10:05AM 7          MS. WALSH, WHAT ELSE WOULD YOU LIKE ME TO KNOW ABOUT

10:05AM 8     RESTITUTION?

10:05AM 9               MS. WALSH:  YES, YOUR HONOR.

10:05AM 10         SO THE GOVERNMENT IS SEEKING ALL OF THE MONEY THAT WAS

10:05AM 11    PAID BY INVESTORS IN THE B&C ROUNDS, AND WHERE I'D LIKE TO

10:05AM 12    START TO ADDRESS THAT POINT IS THE COURT'S DECISION FROM

10:05AM 13    YESTERDAY IN MR. BALWANI'S SENTENCING WHERE THE COURT CONCLUDED

10:05AM 14    ON PAGE 9 OF DOCKET 1730 THAT THE GOVERNMENT DID NOT ESTABLISH

10:06AM 15    EITHER BY A PREPONDERANCE OR CLEAR AND CONVINCING EVIDENCE THAT

10:06AM 16    THERANOS'S ULTIMATE COLLAPSE WAS THE RESULT OF MR. BALWANI'S

10:06AM 17    CONSPIRATORIAL CONDUCT.

10:06AM 18         AND I REALIZE THIS ADDRESSED LOSS, NOT RESTITUTION.

10:06AM 19         BUT I THINK THE SAME PRINCIPLE AND CONCLUSION SHOULD APPLY

10:06AM 20    TO RESTITUTION AS WELL.  IF MR. BALWANI WAS NOT THE PROXIMATE

10:06AM 21    CAUSE -- IF HIS CONDUCT WAS NOT THE PROXIMATE CAUSE OF

10:06AM 22    INVESTORS LOSING ALL OF THEIR MONEY, THEN HE CANNOT BE ON THE

10:06AM 23    HOOK FOR ALL OF THEIR -- THE MONEY THAT THEY INVESTED FOR

10:06AM 24    RESTITUTION PURPOSES.

10:06AM 25         SO I THINK THE COURT'S FINDING ALONE, WHICH, OF COURSE, WE

10:06AM 1    AGREE WITH, IS THE RIGHT RESULT HERE.

10:06AM 2        AND ONE OF THE REASONS IT'S THE RIGHT RESULT AS TO

10:06AM 3    MR. BALWANI ESPECIALLY, IS BECAUSE MR. BALWANI LEFT IN

10:06AM 4    MAY 2016.  HE LEFT THERANOS.

10:07AM 5        AND WHEN HE LEFT THERANOS, THERE WAS $350 MILLION IN CASH

10:07AM 6    AT THERANOS.  THERE WAS ALSO AT LEAST $100 MILLION IN VALUABLE

10:07AM 7    IP OWNED BY THE COMPANY.

10:07AM 8        WHEN HE WALKED OUT THE DOOR, THE COMPANY WAS EXTREMELY

10:07AM 9    VALUABLE.  AND IT WAS -- AND THE INVESTORS AT ISSUE IN THIS

10:07AM 10   CASE ONLY LOST THEIR MONEY YEARS LATER, YEARS DOWN THE ROAD

10:07AM 11   AFTER MULTIPLE DECISIONS HAD BEEN MADE NOT BY MR. BALWANI BUT

10:07AM 12   BY MANAGEMENT AT THE TIME, THE CHIEF EXECUTIVE AT THE TIME, THE

10:07AM 13   BOARD AT THE TIME, WHO MADE ALL KINDS OF DECISIONS THAT

10:07AM 14   AFFECTED SHAREHOLDERS.

10:07AM 15       THERANOS MADE THE DECISION TO BORROW $100 MILLION FROM

10:07AM 16   FORTRESS AND USE AS COLLATERAL THEIR IP PORTFOLIO.

10:07AM 17       THERANOS MADE THE DECISION IN 2017, LONG AFTER "THE

10:08AM 18   WALL STREET JOURNAL" ARTICLES WERE OUT, THAT THEY WOULD ENTER

10:08AM 19   INTO AN AGREEMENT, AN EXCHANGE AGREEMENT, WITH THE EXISTING

10:08AM 20   SHAREHOLDERS, MANY OF WHOM ARE LISTED BY THE GOVERNMENT, THE

10:08AM 21   B&C SHAREHOLDERS, TO EXCHANGE THEIR SHARES FOR SHARES THAT HAD

10:08AM 22   MORE POWER AND HAD AN EXCHANGE RATE OF SOMETHING LIKE $5 A

10:08AM 23   SHARE.  THAT'S A CRITICAL DECISION AS TO THE SHAREHOLDERS, AND

10:08AM 24   IT'S A DECISION NOT TO USE THE MONEY TO PAY BACK THOSE

10:08AM 25   SHAREHOLDERS BUT TO ENTER INTO YET ANOTHER AGREEMENT WITH THE

10:08AM 1    SHAREHOLDERS WHERE THEY'RE STILL HANGING ON TO THERANOS STOCK.

10:08AM 2         MR. BALWANI HAD NOTHING TO DO WITH THAT.  SO AT THE END OF

10:08AM 3    THE DAY THE SHAREHOLDERS LOST ALL OF THEIR MONEY, AND THAT'S

10:08AM 4    INCREDIBLY UNFORTUNATE, BUT THAT'S NOT BECAUSE OF MR. BALWANI'S

10:08AM 5    CONDUCT.

10:08AM 6         THE CAUSAL CHAIN WAS BROKEN WHEN HE LEFT THE COMPANY AND

10:09AM 7    DECISIONS OVER THE COURSE OF YEARS PLAYED OUT THAT ULTIMATELY

10:09AM 8    ENDED WITH INVESTORS LOSING ALL OF THEIR MONEY.

10:09AM 9         THE COURT:  WELL, WAS HIS CONDUCT THEN THAT THE JURY

10:09AM 10   FOUND AND CONVICTED HIM OF, ARE YOU SAYING THAT HIS CONDUCT IS

10:09AM 11   COMPLETELY DIVORCED FROM ULTIMATE THERANOS DEMISE?

10:09AM 12        MS. WALSH:  DIVORCED?

10:09AM 13        SO WE DON'T KNOW WHAT THE CAUSAL LINKS ARE IN THE ULTIMATE

10:09AM 14   DEMISE, BUT WHAT WE DO KNOW IS THAT THERE ARE SO MANY

10:09AM 15   INTERRUPTIONS IN THE CAUSAL CHAIN, VIS-A-VIS MR. BALWANI, THAT

10:09AM 16   HE CAN'T BE HELD RESPONSIBLE UNDER THE STANDARD OF PROXIMATE

10:09AM 17   CAUSE FOR THE ULTIMATE DEMISE, AND THE COURT RECOGNIZED THAT IN

10:09AM 18   ITS LOSS ANALYSIS IN THE ORDER THAT WAS ISSUED YESTERDAY.

10:09AM 19        THE COURT:  SO CAN WE OBSERVE THAT THE GENESIS OF

10:09AM 20   THE DEMISE WAS THE CONSPIRACY AND THE CONDUCT THAT THE JURY

10:10AM 21   FOUND?

10:10AM 22        MS. WALSH:  SO IN TERMS OF GENESIS, WHEN I THINK OF

10:10AM 23   GENESIS I THINK OF "BUT FOR CAUSE," YOU KNOW, A BUTTERFLY FLAPS

10:10AM 24   ITS WINGS AND AN EARTHQUAKE HAPPENS ACROSS THE WORLD.  THAT MAY

10:10AM 25   BE BUT FOR CAUSE, BUT THAT'S NOT PROXIMATE CAUSE.  AND WHAT

10:10AM 1       RESTITUTION REQUIRES IS PROXIMATE CAUSE.

10:10AM 2               THE COURT:  OKAY.

10:10AM 3               MR. LEACH:  I THINK MS. WALSH IS READING FAR TOO

10:10AM 4       MUCH INTO THE CONCEPT OF PROXIMATE CAUSE HERE.  AND, YOU KNOW,

10:10AM 5       IT BROUGHT ME BACK TO LAW SCHOOL IN THE PALSGRAF CASE WHERE,

10:10AM 6       YOU KNOW, THE ATTENDANT FOR THE RAILROAD HELPED SOMEBODY ON AND

10:10AM 7       THE PACKAGE FALLS AND THERE'S AN EXPLOSION AND SOME

10:10AM 8       UNFORESEEABLE EVENT HAPPENS.

10:10AM 9           THAT'S NOT WHAT HAPPENED HERE, YOUR HONOR.  INVESTORS

10:10AM 10      INVESTED MONEY IN THERANOS BASED ON LIES BY MS. HOLMES AND

10:10AM 11      MR. BALWANI, AND THEN LOST THEIR MONEY AS A RESULT OF THAT.

10:10AM 12      THAT WAS COMPLETELY FORESEEABLE FROM THE FRAUD THAT THIS

10:10AM 13      DEFENDANT COMMITTED.

10:11AM 14          IT'S A REMARKABLE POSITION TO SAY IF I JOIN A CONSPIRACY

10:11AM 15      THAT DEFRAUDS AN INVESTOR OF MONEY, BUT ONE OF MY

10:11AM 16      CO-CONSPIRATORS ELECTS NOT TO GIVE IT BACK AND DOES SOMETHING

10:11AM 17      ELSE AND WAITS A NUMBER OF YEARS, THAT THE VICTIM IS SOMEHOW

10:11AM 18      OUT OF LUCK BECAUSE I HAD LEFT THE COMPANY.  THEY CITE NO CASE

10:11AM 19      FOR THAT PROPOSITION.

10:11AM 20          RESTITUTION IS INTENDED TO PUT THE VICTIM BACK IN A

10:11AM 21      POSITION BEFORE THE CRIME WAS COMMITTED AND PARTICULARLY WITH

10:11AM 22      RESPECT TO ALL OF THE INDIVIDUALS ON PAGE 6 THAT WE'VE LISTED.

10:11AM 23      THAT'S ALL WE'RE ASKING FOR HERE WITH RESPECT TO THOSE.

10:11AM 24          I DO THINK BY VIRTUE OF THE CONSPIRACY COUNT THAT ALL OF

10:11AM 25      THE C1 AND C2 INVESTORS WOULD BE PROPERLY INCLUDED.  THE COURT

10:11AM  1    DID DECLINE TO DRAW THAT INFERENCE IN THE SENTENCING.

10:11AM  2        BUT I THINK THEY'RE READING FAR TOO MUCH INTO THIS CONCEPT

10:11AM  3    OF PROXIMATE CAUSE.  THE IDEA OF RESTITUTION THAT BOTH THE

10:12AM  4    SUPREME COURT AND THE NINTH CIRCUIT HAVE EMPHASIZED ARE TO PUT

10:12AM  5    SOMEONE BACK IN THE POSITION BEFORE THE EVENT.

10:12AM  6        AND I THINK THIS IS -- YOU KNOW, ONE OF THE BEST CASES FOR

10:12AM  7    THIS PROPOSITION IS THE ROBERS (PHONETIC) CASE, WHICH WE CITED

10:12AM  8    IN OUR BRIEF FROM THE SUPREME COURT.  I DON'T SEE ANY REAL

10:12AM  9    RESPONSE TO THAT FROM THE DEFENSE.  AND THAT'S WHERE THERE WAS

10:12AM  10   A LOAN FOR SOME COLLATERAL.  AND THE DEFENSE WAS TAKING THE

10:12AM  11   POSITION, WELL, LET'S MEASURE THE COLLATERAL THE DAY THE BANK

10:12AM  12   TOOK TITLE -- THE VICTIM TOOK TITLE TO THE COLLATERAL.

10:12AM  13       AND THE SUPREME COURT SAID NO.  YOU LOOK AT THE SPECIFIC

10:12AM  14   PROPERTY THAT IS RETURNED, AND HERE THE SPECIFIC PROPERTY IS

10:12AM  15   CASH.  SO THE FACT THAT SHARES OF THERANOS MIGHT HAVE GONE UP,

10:12AM  16   MIGHT HAVE GONE DOWN, I REALLY THINK WOULD BENEFIT MR. BALWANI

10:12AM  17   AT THE EXPENSE OF VICTIMS HERE.

10:12AM  18       I THINK THE ANSWER TO THIS QUESTION IS ANSWERED BY

10:13AM  19   3663(A), WHICH SAYS IN THE CASE OF FRAUD, RESTITUTION IS

10:13AM  20   RETURNED OF THE PROPERTY, AND THE PROPERTY HERE IS THE MONEY

10:13AM  21   THAT HE GOT FROM INVESTORS THROUGH THESE LIES.  AND IT REALLY

10:13AM  22   TAKES PROXIMATE CAUSE -- IT'S THE PROXIMATE CAUSE AT THE TIME

10:13AM  23   OF THE CRIME, IS IT FORESEEABLE THAT THESE INVESTORS WOULD LOSE

10:13AM  24   MONEY AS A RESULT OF THE DECEPTION?  AND I JUST THINK THAT

10:13AM  25   THAT'S OBVIOUS HERE.

10:13AM  1           THE COURT:  THANK YOU.

10:13AM  2           MS. WALSH:  YOUR HONOR, MR. LEACH SAID THAT ALL OF

10:13AM  3  THE INVESTOR LOSSES AT THE END OF THE DAY WERE ENTIRELY

10:13AM  4  FORESEEABLE BY MR. BALWANI.  I COULD NOT DISAGREE MORE.  THEY

10:13AM  5  WERE NOT FORESEEABLE.

10:13AM  6           WHEN HE LEFT THAT COMPANY, AS I SAID, THE COMPANY HAD

10:13AM  7  ENORMOUS VALUE IN CASH AND IP.  IT WAS NOT FORESEEABLE THAT

10:13AM  8  THOSE INVESTORS WOULD LOSE ALL OF THEIR MONEY.  AND IT HAS TO

10:13AM  9  BE FORESEEABLE FOR IT TO COUNT UNDER RESTITUTION.

10:13AM 10           WHAT THIS SITUATION REMINDS ME OF IS THE CIRCUMSTANCES IN

10:13AM 11  LONICH, WHICH THE COURT CITED IN ITS OPINION YESTERDAY.

10:14AM 12           LONICH WAS A CASE WHERE THE BANK THAT LOANED THE

10:14AM 13  DEFENDANT'S MONEY ULTIMATELY FAILED.  AND THE COURT SAID THESE

10:14AM 14  DEFENDANTS CANNOT BE HELD RESPONSIBLE FOR THAT ULTIMATE BANK

10:14AM 15  FAILURE BECAUSE THERE WERE ALL OF THESE INTERVENING CAUSES THAT

10:14AM 16  WERE NOT THE RESULT OF THE DEFENDANT'S CONDUCT.

10:14AM 17           I THINK THE SAME APPLIES HERE WITH MR. BALWANI.  WHEN HE

10:14AM 18  LEFT THE COMPANY, THERE WAS NO LONGER A CONSPIRACY.  SO HE

10:14AM 19  CAN'T BE HELD RESPONSIBLE FOR MS. HOLMES'S DECISIONS.

10:14AM 20           I KNOW MR. LEACH LABELED THEM AS CONSPIRATORS, BUT THAT

10:14AM 21  ENDED WHEN THE ALLEGED CONSPIRACY ENDED.  AND WHEN MR. BALWANI

10:14AM 22  LEFT, THERE WAS NO CONSPIRACY.  SHE WAS ACTING ON HER OWN ON

10:14AM 23  BEHALF OF THERANOS AND IN CONJUNCTION WITH THE BOARD OF

10:14AM 24  DIRECTORS.

10:14AM 25           AND MR. BALWANI CAN'T BE HELD RESPONSIBLE FOR THOSE

10:14AM  1   UNFORESEEABLE DECISIONS AND EVENTS THAT ULTIMATELY LED TO A

10:14AM  2   TOTAL LOSS FOR INVESTORS.

10:15AM  3            THE COURT:  WHAT SHOULD HIS RESTITUTION BE?  WHAT

10:15AM  4   SHOULD THE COURT ORDER AS RESTITUTION AS TO YOUR CLIENT?

10:15AM  5            MS. WALSH:  SO, YOUR HONOR, WE'VE THOUGHT A LOT

10:15AM  6   ABOUT THIS.  YOUR HONOR'S LOSS CALCULATION IS THE 130 MILLION.

10:15AM  7   IN THINKING ABOUT WHETHER THAT FIGURE IS AN APPROPRIATE

10:15AM  8   RESTITUTION AMOUNT, WE HAVE CONCLUDED THAT THAT FIGURE IS NOT

10:15AM  9   APPROPRIATE EITHER FOR DIFFERENT REASONS, AND THE DIFFERENT

10:15AM  10  REASON IS THAT THAT FIGURE IS, AS THE COURT DETERMINED, THE

10:15AM  11  DELTA BETWEEN THE PRICE THAT THE SHAREHOLDERS PAID ON

10:15AM  12  DECEMBER 31ST, 2014, AND THE ACTUAL VALUE OF THE COMPANY AS

10:15AM  13  DETERMINED BY THE COURT WITH ASSISTANCE FROM THE GOVERNMENT'S

10:15AM  14  EXPERT.

10:15AM  15     AND THAT DELTA IS -- THAT MAY BE A FINE DELTA TO USE IN

10:16AM  16  TERMS OF A LOSS CALCULATION, BUT IT IS A THEORETICAL LOSS.

10:16AM  17  IT'S AN UNREALIZED LOSS.  THOSE SHAREHOLDERS DID NOT ACTUALLY

10:16AM  18  LOSE THAT MONEY AT THAT TIME.

10:16AM  19     WHEN THEY ACTUALLY LOST THE MONEY WAS WELL AFTER

10:16AM  20  MR. BALWANI LEFT.  AND AGAIN, HE CAN'T BE HELD RESPONSIBLE FOR

10:16AM  21  THOSE AMOUNTS.

10:16AM  22            THE COURT:  SO THE ANSWER TO MY QUESTION IS?

10:16AM  23            MS. WALSH:  WE BELIEVE THAT HE IS -- BASED ON THE

10:16AM  24  STANDARDS OF PROXIMATE CAUSE IN THE RESTITUTION STATUTE, THE

10:16AM  25  RESTITUTION SHOULD BE ZERO.

10:16AM 1            THE COURT:  ZERO?

10:16AM 2            MS. WALSH:  YES.

10:16AM 3            THE COURT:  THANK YOU.

10:16AM 4        MR. LEACH.

10:16AM 5            MR. LEACH:  THE BETTER ANALOGY FROM LONICH,

10:16AM 6    YOUR HONOR, WOULD BE THE MONEY THAT IS THE SUBJECT OF THE

10:16AM 7    FRAUDULENT LOANS, AND HERE THE MONEY -- THE ANALOGY WOULD BE

10:16AM 8    THE MONEY THAT THE INVESTORS GAVE.  SO I DON'T THINK LONICH

10:16AM 9    HELPS THE OTHER SIDE AT ALL.

10:16AM 10       THE FINDING THAT THERE WAS -- THAT REPAYMENT OF THE LOANS

10:17AM 11   DID NOT CAUSE THE ULTIMATE FAILURE OF THE BANK OR AT LEAST THE

10:17AM 12   GOVERNMENT HADN'T PROVED THAT, SO I THINK THAT ACTUALLY PROVES

10:17AM 13   THE ARGUMENT THAT THE GOVERNMENT IS MAKING.

10:17AM 14       I JUST THINK IT IS A REMARKABLE POSITION TO SAY THAT

10:17AM 15   RESTITUTION HERE IS ZERO.  YOU ASKED THESE INVESTORS DID YOU

10:17AM 16   LOSE MONEY AS A RESULT OF MR. BALWANI'S CRIME?  THE ANSWER IS

10:17AM 17   ABSOLUTELY, YES.

10:17AM 18       TO SAY THAT IF A CONSPIRATOR DOESN'T GIVE THE MONEY BACK

10:17AM 19   OR DOES SOMETHING ELSE WITH IT, AND, THEREFORE, I DON'T HAVE TO

10:17AM 20   PAY ANYTHING AS A RESULT OF MY CRIMES IS REALLY, I THINK,

10:17AM 21   EXTRAORDINARY.  WE URGE THE COURT AT A MINIMUM TO AWARD WHAT IT

10:17AM 22   FOUND AS LOSS, BUT WE ALSO THINK THAT THE COMPLETE AMOUNT OF

10:17AM 23   THE INVESTMENTS BY AT LEAST THE ONES THAT THE COURT HAS MADE

10:17AM 24   FINDINGS FOR THE PARTICULAR VICTIMS IS APPROPRIATE.

10:17AM 25            THE COURT:  THANK YOU.

10:17AM 1          MS. WALSH, ANYTHING FURTHER?

10:17AM 2              MS. WALSH:  NOTHING FURTHER, YOUR HONOR.

10:17AM 3              THE COURT:  OKAY.

10:17AM 4              MS. WALSH:  ACTUALLY ONE MORE THING, YOUR HONOR.

10:17AM 5      I'M SORRY TO INTERRUPT YOU.

10:17AM 6              THE COURT:  YES.  OF COURSE.

10:17AM 7              MS. WALSH:  IF THE COURT DOES IMPOSE A RESTITUTION

10:18AM 8      ORDER, WE HAVE REQUESTED IN OUR BRIEF --

10:18AM 9              THE COURT:  INTEREST.

10:18AM 10             MS. WALSH:  THAT THE COURT -- YES, EXERCISE ITS

10:18AM 11     DISCRETION UNDER THE STATUTE AND NOT -- AND STAY INTEREST.

10:18AM 12             THE COURT:  THANK YOU FOR RAISING THAT.

10:18AM 13         ANY COMMENT ON THE INTEREST?

10:18AM 14             MR. LEACH:  I'LL SUBMIT ON THE BRIEFS, YOUR HONOR.

10:18AM 15             THE COURT:  OKAY.  THANK YOU.

10:18AM 16         AND I APPRECIATE YOU BOTH RECOGNIZING IN YOUR PLEADINGS

10:18AM 17     AND IN YOUR COMMENTS THIS MORNING THAT RESTITUTION IS DIFFERENT

10:18AM 18     THAN LOSS CALCULATION.  THE LOSS CALCULATION IS GUIDELINE

10:18AM 19     FOCUSSED, ISN'T IT?  IT'S LOOKING AT GUIDELINES.  AND

10:18AM 20     RESTITUTION UNDER THE ACT IS REALLY VICTIM FOCUSSED, AND THAT'S

10:18AM 21     THE LENS THAT WE LOOK AT HERE.

10:18AM 22         BUT THANK YOU FOR YOUR COMMENTS.  I APPRECIATE IT.

10:18AM 23         ANYTHING FURTHER BEFORE WE TURN TO THE OTHER PART OF OUR

10:18AM 24     CONVERSATION?

10:18AM 25             MS. WALSH:  NO, YOUR HONOR.

10:18AM  1            MR. LEACH:  NO, YOUR HONOR.  THANK YOU.

10:18AM  2            THE COURT:  ALL RIGHT.  THANK YOU.

10:19AM  3        LET'S NEXT FOCUS ON THE ISSUES RAISED IN MR. COOPERSMITH'S

10:19AM  4    MOTION REGARDING RELEASE PENDING APPEAL.

10:19AM  5        LET ME HEAR FROM THE PARTIES ON THAT.  AND I HAVE READ --

10:19AM  6    I'M FOCUSSED ON DOCUMENT 1711, MR. DAVIES, WHICH IS YOUR

10:19AM  7    SUBMISSION REGARDING RELEASE PENDING APPEAL.  AND I -- YOU'VE

10:19AM  8    LISTED EIGHT SEPARATE ITEMS THERE.

10:19AM  9        I AM INTERESTED -- YOUR PLEADINGS, BOTH OF YOUR PLEADINGS

10:19AM  10   ARE FULSOME, BUT I'M INTERESTED IN JUST A CONVERSATION ABOUT

10:19AM  11   TWO OF THESE REALLY AND IT'S MR. TOLBERT'S TESTIMONY AND THE

10:20AM  12   CONSTRUCTIVE AMENDMENT.

10:20AM  13        LET'S START WITH MR. TOLBERT'S TESTIMONY.

10:20AM  14        MR. DAVIES, DO YOU WANT TO TALK ABOUT THAT FIRST?

10:20AM  15            MR. DAVIES:  SURE.  THANK YOU, YOUR HONOR.

10:20AM  16        I DO WANT TO JUST START, WITH YOUR INDULGENCE, CAN I JUST

10:20AM  17   START WITH AN OVERFRAME OF THE CONVERSATION?

10:20AM  18            THE COURT:  WELL, I THINK I KNOW WHAT WE'RE TALKING

10:20AM  19   ABOUT.  BUT, NO, I'M NOT GOING TO PRECLUDE YOU FROM --

10:20AM  20   ABSOLUTELY.  SURE.

10:20AM  21            MR. DAVIES:  SO I WOULD LIKE TO START WITH THE TEXT

10:20AM  22   IF THAT'S OKAY WITH YOU AT 3143(B)(1) AND THEN JUST TO SET UP

10:20AM  23   THE CONVERSATION FOR US BECAUSE WHAT WE'RE LOOKING AT HERE IS A

10:20AM  24   SUBSTANTIAL -- WE NEED TO SHOW A NONFRIVOLOUS ISSUE THAT IS

10:20AM  25   FAIRLY DEBATABLE.

10:20AM 1    AND WE ALSO NEED TO SHOW THAT IT RESULTS IN A NEW TRIAL.

10:20AM 2    AND THE THEMES OF THE NEW TRIAL THAT WE WANT TO EMPHASIZE THIS

10:20AM 3    MORNING ARE THE ACCURACY AND THE LIABILITY OF THE THERANOS

10:21AM 4    TESTS, AND THE SECOND GOVERNMENT THEME OF USE OF THE MILITARY

10:21AM 5    AND HOW THAT PLAYED OUT IN THE TRIAL.

10:21AM 6          THE COURT:  PULL THAT MICROPHONE CLOSER TO YOU.

10:21AM 7    THAT MIGHT BE HELPFUL TO YOU.

10:21AM 8          MR. DAVIES:  YES, YOUR HONOR.

10:21AM 9          THE SECOND THEME IS THE GOVERNMENT'S USE OF THE MILITARY

10:21AM 10   AND HOW THAT PLAYED OUT IN THE TRIAL.

10:21AM 11         SO THERE ARE TWO THEMES, BECAUSE WE NEED TO SHOW NOT JUST

10:21AM 12   A SUBSTANTIAL LIKELIHOOD OF SUCCESS, BUT WE NEED TO ALSO SHOW

10:21AM 13   THAT IT COMES TO A NEW TRIAL.  SO I WANTED TO SET THAT FRAME.

10:21AM 14   SO I APOLOGIZE IF I --

10:21AM 15         THE COURT:  NO, NO, NO.  I'M NOT -- MR. DAVIES, YOU

10:21AM 16   CAN SAY WHATEVER YOU NEED TO SAY, PLEASE, I'M NOT GOING TO --

10:21AM 17         MR. DAVIES:  I WOULD LIKE TO ADD A THIRD ISSUE TO

10:21AM 18   THE CONVERSATION, WHICH IS THE NAPUE ISSUE, BUT I'M HAPPY TO

10:21AM 19   FOCUS ON THOSE THREE, YOUR HONOR.

10:21AM 20         SO THE GOVERNMENT HAS CONSTRUCTED THE AMENDMENT OF THIS

10:21AM 21   INDICTMENT.  I WANT TO START WITH THE FIFTH AMENDMENT.

10:21AM 22         THE COURT:  SO I WANT YOU TO START WITH TOLBERT

10:21AM 23   FIRST.  COULD WE DO THAT?

10:22AM 24         MR. DAVIES:  CERTAINLY, YOUR HONOR.

10:22AM 25         THE ISSUE THERE, YOUR HONOR, IS THAT WE HAVE FEDERAL RULES

10:22AM 1    OF EVIDENCE 701 AND 702.  WE ALSO HAVE THE GOVERNMENT'S -- SO

10:22AM 2    WE ALSO -- I'M A LITTLE DISTURB -- LET ME START AGAIN,

10:22AM 3    YOUR HONOR.

10:22AM 4        THE GOVERNMENT HAS AN OBLIGATION TO CORRECT FALSE

10:22AM 5    TESTIMONY.  THAT IS AN OBLIGATION THAT IT OWES TO US BECAUSE IT

10:22AM 6    IS PART OF THE GOVERNMENT, AND THEY HAVE A GREATER OBLIGATION.

10:22AM 7    AND THAT'S WHERE WE STARTED WITH THE NAPUE ARGUMENT, WHICH IS

10:22AM 8    WHERE THE SUPREME COURT SAYS QUOTE, "A CONVICTION OBTAINED

10:22AM 9    THROUGH USE OF FALSE EVIDENCE KNOWN TO SUCH BY THE GOVERNMENT

10:22AM 10   MUST FALL UNDER THE DUE PROCESS CLAUSE."

10:22AM 11       AND THE SAME RESULT OBTAINS WHEN THE STATE, EVEN THOUGH

10:22AM 12   NOT SOLICITING FALSE EVIDENCE, ALLOWS IT TO GO UNCORRECTED.

10:23AM 13   AND THAT'S WHAT HAPPENED HERE.

10:23AM 14       MR. TOLBERT'S TESTIMONY, IF I RECALL IN DECEMBER OF 2013,

10:23AM 15   WAS IN DIRECT CONFLICT WITH THE TAPE OF THAT TESTIMONY.

10:23AM 16   TOLBERT SAID AT TRIAL, 4435, "THAT TESTS," QUOTE, "WERE

10:23AM 17   EMPLOYED."  "THAT THESE TESTS," QUOTE, "WERE BEING USED."

10:23AM 18       BUT THE TAPE THAT THE GOVERNMENT IS CERTAINLY FAMILIAR

10:23AM 19   WITH, HAS MS. HOLMES SAYING "POTENTIAL" USE OF THE TAPES.

10:23AM 20       SO WE HAVE FALSE EVIDENCE.

10:23AM 21       WE ALSO HAVE THE GOVERNMENT KNEW IT WAS FALSE.  THEY

10:23AM 22   PLAYED THE TAPE MANY, MANY TIMES, THREE OR FOUR TIMES IN THE

10:23AM 23   PRIOR TRIAL, DIDN'T USE IT HERE.  AND WHEN MR. TOLBERT SAID HE

10:23AM 24   WAS NOT SURE OF THE CALL, HE WOULD -- HE COULD LOOK AT THE

10:23AM 25   TRANSCRIPT, THE GOVERNMENT DID NOT DO THAT.

10:23AM  1          SO IF WE HAVE FALSE EVIDENCE, AND IF WE HAVE FALSE

10:23AM  2     EVIDENCE THAT THE GOVERNMENT KNEW ABOUT, THEN THE QUESTION

10:24AM  3     BECOMES, IS THERE ANY REASONABLE LIKELIHOOD THAT WE COULD HAVE

10:24AM  4     PREVAILED?

10:24AM  5          WHAT IF THE JURY HAD HEARD -- IT LOOKS LIKE YOU HAD A

10:24AM  6     QUESTION, YOUR HONOR?

10:24AM  7               THE COURT:  NO.

10:24AM  8               MR. DAVIES:  OKAY.  IS IT FAIRLY DEBATABLE THAT WE

10:24AM  9     MEET THIS CRITERIA, THAT WE HAVE SHOWN FALSE OR DISTORTED

10:24AM  10    EVIDENCE, THAT WE HAVE SHOWN THE GOVERNMENT KNEW IT, AND WE

10:24AM  11    HAVE SHOWN IT'S MATERIAL BECAUSE WE MIGHT HAVE PREVAILED

10:24AM  12    WITHOUT THIS EVIDENCE.  AND IT WOULD AFFECT ALL COUNTS.

10:24AM  13         IT WAS THE CENTERPIECE OF THE CLOSING ARGUMENT.  NUMEROUS

10:24AM  14    TIMES IT WAS REFERRED TO QUOTE, "HOLMES BRAGS ABOUT DOD

10:24AM  15    MILITARY WORK THAT THERANOS DID."  THAT'S AT 6970.

10:24AM  16         7681, "TWO SCREENS BARRED THE CREDIBILITY OF THE

10:24AM  17    GOVERNMENT."

10:24AM  18         WE KNOW THAT THE JURY HUNG ON RELATED COUNTS.  SO THERE'S

10:24AM  19    JUST NO QUESTION WE HAVE THE FALSE EVIDENCE, WE HAVE THE

10:25AM  20    GOVERNMENT KNOWING IT, AND WE HAVE MATERIAL EVIDENCE.  THAT

10:25AM  21    MEETS THE CRITERIA THAT WE NEED TO SHOW BECAUSE WE DON'T NEED

10:25AM  22    TO PERSUADE YOU THAT WE'RE RIGHT ON THE MERITS.  WE JUST NEED

10:25AM  23    TO SHOW THAT WE HAVE A FAIRLY DEBATABLE ARGUMENT, AND THEN WE

10:25AM  24    WILL HAVE SHOWN SUBSTANTIAL LIKELIHOOD OF SUCCESS.

10:25AM  25         I DO WANT TO EMPHASIZE THAT THIS ARGUMENT IS ABOUT

10:25AM 1    GOVERNMENT CONDUCT.  THAT IS WHAT NAPUE WAS EMPHASIZING, THAT

10:25AM 2    WHEN THE GOVERNMENT KNOWS TESTIMONY IS FALSE, IT HAS AN

10:25AM 3    OBLIGATION TO FIX IT BECAUSE THEY'RE AFTER JUSTICE.  AND IT'S

10:25AM 4    VERY HARD TO SEE HOW THAT WAS DONE, AND THE GOVERNMENT KNEW THE

10:25AM 5    TAPE WAS DIRECTLY CONTRARY TO TESTIMONY THAT THEY SOLICITED,

10:25AM 6    TESTIMONY THAT WAS FUNDAMENTAL TO ONE OF THEIR KEY THEMES IN

10:25AM 7    THIS CASE.

10:25AM 8        I WILL ALSO EMPHASIZE THAT THE NINTH CIRCUIT TAKES THIS

10:26AM 9    ISSUE VERY SERIOUSLY AS THE HAYES CASE EN BANC.  AND SO WHAT WE

10:26AM 10   HAVE HERE -- ALL WE HAVE TO SHOW IS A FAIRLY DEBATABLE ISSUE

10:26AM 11   THAT THE NINTH CIRCUIT HAS TAKEN SERIOUSLY AND FOR THE REASONS

10:26AM 12   THAT I'VE JUST REVIEWED.

10:26AM 13       SO, YOUR HONOR, SHOULD I PAUSE HERE, OR SHOULD I CONTINUE

10:26AM 14   ON?

10:26AM 15            THE COURT:  WELL, LET'S -- WHY DON'T WE HAVE MS. --

10:26AM 16            MR. DAVIES:  I THINK THAT IS --

10:26AM 17            THE COURT:  YES.  MS. VOLKAR.

10:26AM 18            MS. VOLKAR:  THANK YOU, YOUR HONOR.

10:26AM 19       THERE IS NO GOVERNMENT MISCONDUCT HERE.  I THINK THAT'S

10:26AM 20   THE SIMPLE ANSWER TO MR. DAVIES'S COMMENTS.

10:26AM 21       FIRST AND FOREMOST, TO RESET THE SCENE, MR. DAVIES REFERS

10:26AM 22   TO THE GOVERNMENT CONDUCT IN MS. HOLMES'S TRIAL AND CONTRASTS

10:26AM 23   IT WITH MR. BALWANI'S TRIAL.  AND, OF COURSE, THE BACKGROUND TO

10:26AM 24   THAT IS THAT THERE WERE SEVERED TRIALS BECAUSE MR. BALWANI

10:26AM 25   SOUGHT THAT SUCCESSFULLY.

10:26AM 1    IF IT WERE THE SAME TRIAL, THEN THEY MIGHT HAVE SEEN THE

10:26AM 2  EVIDENCE THAT WAS PRESENTED IN BOTH TRIALS IN THAT SAME TRIAL.

10:27AM 3    WHAT THE GOVERNMENT DID WAS IN THE TRIAL AGAINST

10:27AM 4  MS. HOLMES, WHEN SHE WAS THE DEFENDANT, AND THE GOVERNMENT HAD

10:27AM 5  A TAPE WITH HER SPEAKING ON IT, THEY PLAYED THAT TAPE FOR THE

10:27AM 6  JURY.

10:27AM 7    WHAT THE GOVERNMENT DID IN MR. BALWANI'S TRIAL WHEN HE WAS

10:27AM 8  THE DEFENDANT SITTING IN THE SEAT, WAS HAD AN INVESTOR TESTIFY

10:27AM 9  WHO SPOKE DIRECTLY WITH MR. BALWANI, AND THAT WAS

10:27AM 10 MR. MENDENHALL, AND HE TOOK DETAILED NOTES THAT WAS IN THAT

10:27AM 11 TRIAL EXHIBIT.

10:27AM 12    AND I FAIL TO SEE HOW THERE'S PROSECUTORIAL MISCONDUCT

10:27AM 13 WHERE THE GOVERNMENT PUT FORWARD THE MOST PERSUASIVE EVIDENCE

10:27AM 14 WITH RESPECT TO THE DEFENDANT WHO WAS IN THE CHAIR AT THAT

10:27AM 15 TIME.

10:27AM 16    NOW I WANT TO GO TO SPECIFICALLY MR. TOLBERT.  I HAVE YET

10:27AM 17 TO HEAR AND HAVE YET TO SEE ANY FALSEHOOD BETWEEN WHAT

10:27AM 18 MR. TOLBERT SAID ON THE STAND AND THE TAPES.

10:27AM 19    MR. TOLBERT, I BELIEVE, HAD SAID THAT HE HAD REVIEWED THE

10:27AM 20 TRANSCRIPT OF THE TAPE BEFORE HIS TESTIMONY.  I BELIEVE THAT HE

10:28AM 21 WAS TESTIFYING BOTH TO THE BEST OF HIS RECOLLECTION BUT ALSO

10:28AM 22 BASED ON HIS UNDERSTANDING OF WHAT HE HEARD ON THAT CALL.

10:28AM 23    DEFENSE COUNSEL ALSO HAD THE TRANSCRIPT OF THAT TAPE.  AND

10:28AM 24 THERE WAS -- THEY COULD HAVE, AND I CAN'T QUITE RECALL, BUT I

10:28AM 25 THINK THEY MAY HAVE IN SOME INSTANCES, THEY COULD HAVE

10:28AM 1    IMPEACHED HIM WHILE HE WAS ON THE STAND WITH PORTIONS OF THAT

10:28AM 2    CALL.

10:28AM 3        THE CHOICE BY THE GOVERNMENT TO NOT PLAY ONE PIECE OF

10:28AM 4    EVIDENCE THAT -- ABOUT A CALL, AND AGAIN, TO SET THE STAGE FOR

10:28AM 5    THAT CONFERENCE CALL ABOUT THE TAPE THAT WE'RE TALKING ABOUT,

10:28AM 6    WE DO NOT HAVE ANY EVIDENCE THAT MR. BALWANI WAS ON THAT CALL

10:28AM 7    OR HAD ANY CONNECTION WITH THAT CALL.

10:28AM 8        WE DO KNOW THAT HE DID NOT SPEAK ON THAT CALL IF HE WAS

10:28AM 9    LISTENING IN.  SO WE, THE GOVERNMENT, DON'T NECESSARILY HAVE

10:28AM 10   ANY EVIDENCE TYING MR. BALWANI TO THAT CALL IN THE WAY THAT WE

10:28AM 11   DO HAVE EVIDENCE AND DID PRESENT EVIDENCE TYING HIM TO THE CALL

10:29AM 12   WITH MR. MENDENHALL.

10:29AM 13       SO I FAIL TO SEE HOW THE GOVERNMENT'S CHOICE NOT TO

10:29AM 14   PRESENT A TAPE OF A COCONSPIRATOR SPEAKING AND INSTEAD PRESENT

10:29AM 15   DIRECT EVIDENCE OF A CALL WITH AN INVESTOR FROM MR. BALWANI

10:29AM 16   HIMSELF, HOW THAT IS PROSECUTORIAL MISCONDUCT OR DECEPTIVE.

10:29AM 17       BUT AGAIN, GOING SPECIFICALLY TO THE NAPUE STANDARD, THERE

10:29AM 18   HAS TO BE FALSEHOODS BETWEEN WHAT MR. TOLBERT SAID THAT THEY

10:29AM 19   THINK THAT WE DIDN'T CORRECT, AND ALL I'VE HEARD SO FAR IS THE

10:29AM 20   USE OF THE MILITARY VERSUS MS. HOLMES'S WORD "POTENTIAL."

10:29AM 21       AGAIN, I APOLOGIZE I DON'T HAVE THE TRANSCRIPT BEFORE ME,

10:29AM 22   BUT THERE WAS CERTAINLY AT LEAST THE OPPORTUNITY FOR THEM TO

10:29AM 23   CROSS-EXAMINE MR. TOLBERT ON THAT WHILE HE WAS ON THE STAND

10:29AM 24   USING THE TRANSCRIPT OF THE CALL.

10:29AM 25       I DO RECALL IN CLOSING ARGUMENT THAT I BELIEVE

10:29AM 1    MR. COOPERSMITH MADE THE POINT WE DIDN'T HEAR THE CALL, THAT

10:30AM 2    MADE THE POINT TO THE JURY, THAT BECAUSE THE GOVERNMENT DIDN'T

10:30AM 3    PLAY THE TRANSCRIPT, WE DON'T KNOW WHAT EXACT WORDS MS. HOLMES

10:30AM 4    USED, WE DON'T KNOW IF IT WAS WORD WAS POTENTIAL, WE DON'T KNOW

10:30AM 5    IF IT WAS FUTURE, WE DON'T KNOW IF IT WAS PRESENT.  SO THE

10:30AM 6    POINT WAS CERTAINLY MADE BY THE DEFENSE.

10:30AM 7        AND I JUST THINK THAT UNDER THE NAPUE STANDARD, THERE HAS

10:30AM 8    TO BE BOTH THE FALSE STATEMENTS AND IF I'M NOT MISTAKEN, THE

10:30AM 9    SORT OF THE MATERIALITY PIECE OF IT OR WHAT THE RESULT WAS.  I

10:30AM 10    DON'T THINK THAT THEY CAN MEET EITHER STANDARD HERE.

10:30AM 11        MR. TOLBERT TESTIFIED BASED ON HIS BEST RECOLLECTION AND

10:30AM 12    ALSO HIS IMPRESSIONS WHAT HE WALKED AWAY FROM THE CALL

10:30AM 13    UNDERSTANDING.  AND HE'S NOT THE ONLY ONE.

10:30AM 14        WE ALSO HEARD THAT SAME CATEGORY OF FALSE STATEMENTS FROM

10:30AM 15    MR. GROSSMAN ON BEHALF OF PFM, FROM MR. LUCAS, I BELIEVE FROM

10:30AM 16    MS. PETERSON, IF NOT IN THIS TRIAL IN THE HOLMES TRIAL.  AND I

10:30AM 17    SAY THAT TO SAY IT DOES MATTER, AND I IMAGINE IT MATTERED TO

10:30AM 18    THE JURY, THAT IT WASN'T JUST ONE INVESTOR THAT CAME AWAY WITH

10:31AM 19    THIS IMPRESSION.

10:31AM 20        SO WHILE THE DEFENSE MAY HAVE WANTED TO PARSE AND

10:31AM 21    WORDSMITH THE EXACT LANGUAGE USED AS THE HOLMES DEFENSE TEAM

10:31AM 22    HAD CHOSEN TO DO, I DON'T SEE HOW THAT RISES TO A LEVEL OF

10:31AM 23    NAPUE.

10:31AM 24        AND THEY COULD HAVE PERHAPS TAKEN THE SAME STRATEGY WITH

10:31AM 25    THE MENDENHALL -- THE EXHIBIT WITH MR. MENDENHALL THAT HAD THE

10:31AM 1    DETAILED NOTES FROM HIS CALL WITH MR. BALWANI.

10:31AM 2         BUT I JUST END WITH THERE WAS NO PROSECUTORIAL MISCONDUCT

10:31AM 3    HERE.  THE DEFENSE PERHAPS WISHES THAT THE GOVERNMENT DID THE

10:31AM 4    EXACT SAME TRIAL AGAINST MR. BALWANI THAT IT DID AGAINST

10:31AM 5    MS. HOLMES, AND IF THEY WERE TRIED TOGETHER, THEY WOULD HAVE

10:31AM 6    SEEN ALL OF THE SAME EVIDENCE.

10:31AM 7         BUT THE GOVERNMENT CHOSE THE BEST EVIDENCE THAT IT HAD

10:31AM 8    WITH RESPECT TO EACH DEFENDANT, AND THAT IS NOT PROSECUTORIAL

10:31AM 9    MISCONDUCT.  THE GOVERNMENT DID NOT MISLEAD THE JURY AND THERE

10:31AM 10   WAS AMPLE OPPORTUNITY FOR THE DEFENSE IN THE ADVERSARIAL

10:31AM 11   PROCESS TO MAKE THE POINTS THAT THEY'RE MAKING NOW.

10:31AM 12        THE COURT:  THANK YOU.

10:31AM 13   MR. DAVIES.

10:32AM 14        MR. DAVIES:  SO, YOUR HONOR, AT TRANSCRIPT 7574 THE

10:32AM 15   CLOSING ARGUMENT SAYS, "YOU'VE HEARD THE TAPE.  YOU HEARD THE

10:32AM 16   TAPE."

10:32AM 17        NOW, IN THIS CASE THE JURY DID NOT HEAR THE TAPE.  BUT THE

10:32AM 18   IDEA THAT IN CLOSING ONE REFERS TO HEARING THE TAPE BUT IT'S

10:32AM 19   NOT MATERIAL IS NOT IMPORTANT, THAT IS NOT ACCURATE.

10:32AM 20        THE GOVERNMENT CLEARLY EMPHASIZED THAT THE MATERIAL THAT

10:32AM 21   WAS DISCUSSED ON THIS TAPE.

10:32AM 22        THE COURT:  WAS THAT THE -- WAS THAT QUOTE FROM THE

10:32AM 23   REBUTTAL PRESENTATION?

10:32AM 24        MR. DAVIES:  I BELIEVE SO.

10:32AM 25        THE COURT:  OR FROM THE ORIGINAL ARGUMENT?

10:32AM  1        MR. DAVIES:  I CAN CONFIRM, BUT I BELIEVE IT WAS THE

10:32AM  2    REBUTTAL.

10:32AM  3        THE COURT:  OKAY.  THANK YOU.

10:32AM  4        MR. DAVIES:  WHICH TALKS A LOT ABOUT THIS ISSUE.

10:32AM  5    THE MILITARY DISCUSSION IS A LOT OF THE REBUTTAL,

10:32AM  6    YOUR HONOR.

10:32AM  7    SO THAT'S THE FIRST POINT.  THE IDEA THAT THIS IS NOT

10:32AM  8    MATERIAL IS NOT SUPPORTED BY THE RECORD.

10:32AM  9    THE IDEA THAT THERE'S NO FALSITY IS NOT SUPPORTED BY THE

10:33AM  10   RECORD BECAUSE, AS I SAID, MS. HOLMES SAYS "POTENTIAL" AND THE

10:33AM  11   TESTIMONY IS THAT IT HAPPENED.

10:33AM  12   BUT AGAIN, ALL WE HAVE TO SHOW IS THAT WE HAVE A FAIRLY

10:33AM  13   DEBATABLE ISSUE.  I DID NOT HEAR A RESPONSE TO THAT.  WE DO NOT

10:33AM  14   HAVE TO PERSUADE YOU ON THE MERITS, JUST THAT IT IS FAIRLY

10:33AM  15   DEBATABLE.

10:33AM  16   AND WHEN AN ISSUE GOES FROM IT'S HAPPENING TO IT IS

10:33AM  17   PLANNED TO HAPPEN, AT LEAST ON THIS RECORD IT'S FAIRLY

10:33AM  18   DEBATABLE.  AND THEN WE HAVE SATISFIED THE THREE CRITERIA OF

10:33AM  19   THE -- OF WHAT IS REQUIRED BECAUSE WE HAVE THE FALSE EVIDENCE.

10:33AM  20   WE HAVE THE GOVERNMENT KNOWING IT.

10:33AM  21   WE DID NOT MENTION THE PRIOR USE OF THE TAPE TO SUGGEST

10:33AM  22   ANY SORT OF STRATEGIC CALL OR OBLIGATION FOR THE GOVERNMENT TO

10:33AM  23   FOCUS ON ONE WITNESS VERSUS THE OTHER.

10:33AM  24   WE MENTION IT TO SHOW THAT THE GOVERNMENT KNEW ABOUT THE

10:33AM  25   TAPE.  THIS IS NOT A CASE WHERE SOME SURPRISE TAPE COMES UP

10:33AM 1   LATER.  THE GOVERNMENT KNEW ABOUT THE TAPE, KNEW WHAT IT SAID,

10:34AM 2   IT WASN'T AS EFFECTIVE AS THEY MIGHT HAVE HOPED, THEY OPTED NOT

10:34AM 3   TO USE IT HERE.  IT DOESN'T SAY WHAT THE WITNESS SAID, AND YET

10:34AM 4   THEY DON'T CORRECT IT.  THAT IS A CLASSIC NAPUE VIOLATION

10:34AM 5   BECAUSE THAT'S WHAT WE DON'T WANT THE GOVERNMENT DOING, PLAYING

10:34AM 6   THESE SORTS OF GAMES.  THEY KNEW ABOUT THE TAPE, AND IT WAS

10:34AM 7   FALSE.

10:34AM 8       WE ASKED FOR IT TO COME IN, AND THAT'S AT TRANSCRIPT 42 --

10:34AM 9   4396.  YOUR HONOR OPTED NOT TO LET IT IN.  SO THERE'S NO

10:34AM 10  OBLIGATION.  WE DID OUR OBLIGATION.

10:34AM 11      BUT AS I'M TRYING TO EMPHASIZE HERE, THE OBLIGATION IS ON

10:34AM 12  THE GOVERNMENT.  THEY KNEW THIS WAS FALSE.

10:34AM 13      ANOTHER REASON WE KNOW IT'S MATERIAL, AND THIS IS AN

10:34AM 14  UNUSUAL CASE WHERE WE HAVE THE JURY ASKING FOR THE TAPE, NOT

10:34AM 15  CONVICTING ON THE MOST RELEVANT COUNTS AFTER THEY HEARD THE

10:34AM 16  CASE.

10:34AM 17      SO THE IDEA THAT THIS TAPE IS NOT MATERIAL TO THESE

10:34AM 18  CHARGES ALSO DOESN'T HOLD UP WHEN ONE LOOKS AT THE RECORD.

10:35AM 19  AGAIN, ALL WE HAVE TO SHOW IS THAT IT IS FAIRLY DEBATABLE, THAT

10:35AM 20  WE HAVE THE FALSE EVIDENCE, THAT THEY HAVE THE GOVERNMENT

10:35AM 21  KNOWING IT, AND THAT IT WAS MATERIAL.

10:35AM 22          MS. VOLKAR:  NO SURPRISE TO THE COURT, THE

10:35AM 23  GOVERNMENT DOES NOT BELIEVE IT IS FAIRLY DEBATABLE.

10:35AM 24      AS I SAID IN MY PAPERS, I THINK THIS IS A BORDERLINE

10:35AM 25  FRIVOLOUS CLAIM, BUT THAT BEING SAID, THE DEFENSE IN THIS

10:35AM 1    MOMENT IS CHOOSING TO FOCUS ON WHAT WAS DONE IN THE HOLMES

10:35AM 2    TRIAL AND NOT FOCUSSING ON WHAT WAS DONE IN ITS TRIAL.

10:35AM 3        EVEN IF IT IS FAIRLY DEBATABLE, THIS GOES TO AT MOST THREE

10:35AM 4    COUNTS.  WE KNOW THAT IN THE HOLMES TRIAL, THE JURY STILL

10:35AM 5    CONVICTED ON FOUR COUNTS, EVEN THOUGH IT HUNG ON THE THREE THAT

10:35AM 6    WE'RE TALKING ABOUT RIGHT NOW.  AND THE REASON I BRING THAT UP

10:35AM 7    IS BECAUSE I THINK THAT THAT DEMONSTRATES THAT MR. BALWANI

10:35AM 8    CANNOT SATISFY THE FOURTH REQUIREMENT, EVEN IF HE CAN SHOW THIS

10:35AM 9    ISSUE IS FAIRLY DEBATABLE, THIS IS NOT LIKELY TO RESULT IN

10:36AM 10   REVERSAL ON ALL COUNTS OF CONVICTION.

10:36AM 11       SO I GUESS I'D JUST RESPOND, I STRONGLY DISAGREE WITH

10:36AM 12   MR. DAVIES ON THE IMPORTANCE OF THE ISSUE.  I STRONGLY DISAGREE

10:36AM 13   THAT IT WAS PROSECUTORIAL MISCONDUCT.  I STRONGLY DISAGREE THAT

10:36AM 14   IT MEETS EITHER OF THE REQUIREMENTS OF NAPUE, BUT EVEN IF WE'RE

10:36AM 15   IN THIS LAND THAT HE'S TALKING ABOUT WITH FAIRLY DEBATABLE, I

10:36AM 16   WOULD SAY THAT THAT DOES NOT MATTER BECAUSE EVEN IF HE --

10:36AM 17   MR. DAVIES IS RIGHT AND I AM WRONG, IT WON'T LEAD TO REVERSAL

10:36AM 18   ON ALL COUNTS OF CONVICTION, AND, THEREFORE, MR. BALWANI STILL

10:36AM 19   CAN'T MEET HIS BURDEN UNDER 3143(B).

10:36AM 20           THE COURT:  OKAY.  THANK YOU.

10:36AM 21       MR. DAVIES.

10:36AM 22           MR. DAVIES:  SO, YOUR HONOR, YOUR QUESTION ABOUT

10:36AM 23   WHETHER THAT WAS SAID, YOU HEARD THE TAPE.  THAT'S ACTUALLY IN

10:36AM 24   THE ORIGINAL CLOSING.  IT'S AT TRX 6970.

10:36AM 25           THE COURT:  THAT'S BEFORE THE DEFENSE MADE THEIR

```
10:36AM   1    ARGUMENT?

10:36AM   2              MR. DAVIES:  YES.  YES.

10:36AM   3              THE COURT:  OKAY.  THANK YOU.

10:36AM   4              MR. DAVIES:  THE NUMBER OF TIMES THAT THE MILITARY

10:36AM   5    CAME UP IN THESE CLOSING ARGUMENTS, YOUR HONOR, I COUNTED NINE.

10:37AM   6    THE IDEA THAT THIS WAS NOT MATERIAL TO ALL COUNTS IS

10:37AM   7    INCONSISTENT WITH HOW IT WAS USED IN THE CLOSING ARGUMENT.

10:37AM   8        WE HAVE HOLMES BRAGGING ABOUT DOD MILITARY WORK THAT

10:37AM   9    THERANOS DID, WE HAVE THE "YOU HEARD THE TAPE COMMENT."  SO THE

10:37AM  10    IDEA THAT THIS WAS LIMITED TO TWO COUNTS IS NOT SUPPORTED BY

10:37AM  11    THE RECORD.

10:37AM  12              THE COURT:  DO YOU WANT TO COMMENT ON -- WELL, GO

10:37AM  13    AHEAD.

10:37AM  14        DO YOU WANT TO COMMENT?  MS. VOLKAR'S LAST POINT WAS EVEN

10:37AM  15    IF, IT WOULD NOT RESULT IN -- EVEN IF THIS ISSUE WERE

10:37AM  16    SUBSTANTIAL, IT WOULD NOT RESULT IN A REVERSAL OF ALL COUNTS.

10:37AM  17              MR. DAVIES:  SO I DON'T AGREE WITH THAT BECAUSE THE

10:37AM  18    MILITARY THEME, AND THAT'S ONE OF THE REASONS I WANTED TO START

10:37AM  19    THERE, DOES COME OUT THROUGHOUT THE TRIAL THAT THE CREDIBILITY

10:37AM  20    OF THE MILITARY ACCORDING TO THE GOVERNMENT WAS USED TO HELP

10:37AM  21    PROMOTE THERANOS PRODUCTS.

10:37AM  22        WE HAVE TR 7603, 7612.  I HAVE NINE OR SO CITES.  I MEAN,

10:38AM  23    I DON'T MEAN TO BORE YOUR HONOR --

10:38AM  24              THE COURT:  NO.

10:38AM  25              MR. DAVIES:  -- BUT IT WAS A KEY PART.  THE
```

10:38AM 1    GOVERNMENT'S USE OF THE MILITARY, MISSTATEMENTS ABOUT THE

10:38AM 2    MILITARY, OVERSTATEMENTS ABOUT THE MILITARY IS AN EFFECTIVE

10:38AM 3    RHETORICAL TOOL, AND THAT IS WHAT WAS DONE HERE.

10:38AM 4        THE CREDIBILITY OF THE MILITARY WAS USED TO SAY THERANOS

10:38AM 5    SORT OF MISSPOKE ABOUT -- MISREPRESENTED ABOUT ITS RELATIONSHIP

10:38AM 6    WITH THE MILITARY.

10:38AM 7        AND WHEN YOU LISTEN TO THE TAPE AND YOU LISTEN TO THE

10:38AM 8    TESTIMONY, YOU SEE THAT THAT WAS FALSE, AND IT'S MATERIAL AND

10:38AM 9    IT HITS ALL OF THE COUNTS BECAUSE OF THAT IMPACT OF THE THEME

10:38AM 10   IN THIS CASE.

10:38AM 11           THE COURT:  OKAY.  THANK YOU.

10:38AM 12       ANYTHING FURTHER ON MR. TOLBERT'S TESTIMONY?

10:38AM 13           MS. VOLKAR:  I WAS NOT SURE IF HE WAS REFERRING TO

10:38AM 14   THE MILITARY IN TERMS OF THE HOLMES CLOSING OR THE BALWANI

10:38AM 15   CLOSING.

10:38AM 16       BUT THE ONLY -- WITHOUT HARPING FURTHER ON IT, THE ONLY

10:38AM 17   THING THAT I HAVE TO ADD IS THAT MR. BALWANI POINTED OUT IN HIS

10:38AM 18   TRIAL THAT THE MILITARY RELATIONSHIP WAS LARGELY DRIVEN BY

10:39AM 19   MS. HOLMES AND HE HAD NOTHING TO DO WITH IT.

10:39AM 20       SO I JUST WANT TO BE CLEAR THAT THE GOVERNMENT IS NOT

10:39AM 21   STATING THE MILITARY ASPECT WASN'T IMPORTANT IN THE HOLMES

10:39AM 22   TRIAL.  IT WAS DISCUSSED QUITE EXTENSIVELY AT CLOSING AND IN

10:39AM 23   REBUTTAL.

10:39AM 24       I DON'T RECALL IT APPEARING OR BEING AS THOROUGHLY

10:39AM 25   DISCUSSED IN THE BALWANI TRIAL, AND I DO SEEM TO REMEMBER

10:39AM 1    MR. COOPERSMITH SAYING IN HIS CLOSING THAT MR. BALWANI HAD

10:39AM 2    NOTHING TO DO WITH THE MILITARY RELATIONSHIP, THAT THAT WAS ALL

10:39AM 3    MS. HOLMES.

10:39AM 4        SO I JUST WANT TO MAKE SURE THAT THAT POINT WAS MADE.

10:39AM 5            THE COURT:  OKAY.  THANK YOU.

10:39AM 6            MR. DAVIES:  THANK YOU, YOUR HONOR.

10:39AM 7    I DO -- I MEAN, I HAVE THE NAPUE OPINION RIGHT IN FRONT OF

10:39AM 8    ME AND IT IS AN IMPORTANT POINT THAT THIS IS ABOUT THE

10:39AM 9    GOVERNMENT'S CONDUCT THAT MAY HAVE HAD AN EFFECT ON THE OUTCOME

10:39AM 10   OF THIS TRIAL.

10:39AM 11   "THE PRINCIPLE THAT A STATE MAY NOT KNOWINGLY USE FALSE

10:39AM 12   EVIDENCE, INCLUDING FALSE TESTIMONY, TO OBTAIN A TAINTED

10:39AM 13   CONVICTION IS IMPLICIT IN ANY CONCEPT OF AWARD OF LIBERTY.  ANY

10:40AM 14   CONCEPT OF AN AWARD OF LIBERTY."

10:40AM 15   WE CANNOT HAVE OUR GOVERNMENT CONVICTING ON FALSE

10:40AM 16   EVIDENCE, AND IT DOES HIT ALL OF THE COUNTS AND THE REASONS I

10:40AM 17   GAVE.

10:40AM 18           THE COURT:  NAPUE WAS A SERIOUS CONDUCT BY THE

10:40AM 19   GOVERNMENT, WASN'T IT?

10:40AM 20   AND IN NAPUE THERE WAS -- WASN'T THAT THE CASE WHERE THERE

10:40AM 21   WAS A CONFIDENTIAL INFORMANT THAT THE UNITED STATES ATTORNEY

10:40AM 22   HAD USED, INTERVIEWED, RECEIVED INFORMATION FROM, AND THEN WHEN

10:40AM 23   THAT WITNESS WAS PUT ON THE STAND, TESTIFIED CONTRARY TO?

10:40AM 24   AND THE UNITED STATES ATTORNEY HAD FULL KNOWLEDGE.  HE HAD

10:40AM 25   INTERVIEWED HIM, KNEW THE STATEMENT, AND RATHER THAN PRESENT

10:40AM 1  THAT TO THE COURT AND TO THE PARTIES, HE ALLOWED THAT TO GO

10:40AM 2  FORWARD, WHICH THEN RESULTED IN A CONVICTION.  OF COURSE IT WAS

10:40AM 3  REVERSED, BECAUSE AS YOU POINT OUT, THE COURT, THE REVIEWING

10:41AM 4  COURT FOUND THAT THAT CONDUCT WHERE THE WITNESS ACTUALLY,

10:41AM 5  EXCUSE ME, THE UNITED STATES ATTORNEY ACTUALLY KNEW THAT, IN

10:41AM 6  FACT, PERJURY WAS TAKING PLACE IN A COURTROOM, THAT IS

10:41AM 7  SOMETHING THAT THE JUSTICE SYSTEM CANNOT, AND THAT WAS THE

10:41AM 8  CONDUCT THERE.

10:41AM 9          MR. DAVIES:  YES.

10:41AM 10         THE COURT:  THAT PARTICULAR -- IT SEEMS IF I RECALL

10:41AM 11  CORRECTLY, IT SEEMS THAT THE U.S. ATTORNEY WAS THE ONE THAT

10:41AM 12  INTERVIEWED AND RECEIVED THE INFORMATION DIRECT FROM THE

10:41AM 13  WITNESS.

10:41AM 14         MR. DAVIES:  RIGHT.  RIGHT.

10:41AM 15         THE COURT:  RIGHT.

10:41AM 16         MR. DAVIES:  BUT IT IS DEFINITELY A PRINCIPLE THAT

10:41AM 17  HAS MORE THAN JUST THAT ONE PARTICULAR APPLICATION.

10:41AM 18      WE CAN'T HAVE THE GOVERNMENT ALLOWING UNCORRECTED

10:41AM 19  TESTIMONY TO SIT THERE EITHER, AND THAT IS ALSO IN THE NAPUE

10:41AM 20  DECISION.  IT'S BEEN EXTENDED IN OTHER CASES.

10:41AM 21      AGAIN, WE DON'T HAVE TO BE RIGHT ON THE MERITS.  WE JUST

10:41AM 22  HAVE TO BE FAIRLY DEBATABLE.

10:41AM 23         THE COURT:  RIGHT.

10:41AM 24         MR. DAVIES:  I MEAN, I'M SORRY TO REPEAT MYSELF ON

10:41AM 25  THAT.

10:41AM  1          THE COURT:  NO.  YOU SHOULD.

10:41AM  2          MR. DAVIES:  BUT I THINK FOR THIS PARTICULAR

10:41AM  3   PROCEEDING AND FOR THIS PARTICULAR CONTEXT AND FOR THIS

10:42AM  4   PARTICULAR DECISION, YOUR HONOR, THAT IS A FUNDAMENTAL POINT.

10:42AM  5       IF YOU CAN DISTINGUISH NAPUE, WE CAN TALK ABOUT

10:42AM  6   EXTENSIONS, BUT WE CLEARLY HAVE AN OBLIGATION ON THE GOVERNMENT

10:42AM  7   THAT WAS NOT FULFILLED AND THAT THE LEGAL SYSTEM AT LEAST

10:42AM  8   FAVORABLY SHOULD NOT PERMIT.

10:42AM  9          THE COURT:  OKAY.  THANK YOU.

10:42AM  10      SHOULD WE TURN TO THE CONSTRUCTIVE AMENDMENT NOW?  LET'S

10:42AM  11  DO THAT.  TELL ME YOUR THOUGHTS, MR. DAVIES, ON THAT.

10:42AM  12         MR. DAVIES:  WELL, I'D LIKE TO START WITH THE FIFTH

10:42AM  13  AMENDMENT WHICH SAYS THAT NO PERSON SHALL BE HELD TO ANSWER FOR

10:42AM  14  A CRIME UNLESS ON INDICTMENT OF A GRAND JURY.  INDICTMENT OF A

10:42AM  15  GRAND JURY.  THAT'S WHAT OUR FIFTH AMENDMENT SAYS, YOUR HONOR.

10:42AM  16      AND THEN THE SUPREME COURT'S STIRONE CASE PUTS IT THIS

10:42AM  17  WAY, "WE ALL HAVE A RIGHT TO BE TRIED ONLY ON CHARGES PRESENTED

10:42AM  18  IN AN INDICTMENT RETURNED BY A GRAND JURY."  SO IT'S A

10:42AM  19  FUNDAMENTAL PART OF OUR CONSTITUTION THAT WE HAVE A GRAND JURY.

10:42AM  20      THE QUESTION HERE IS WHETHER THE THIRD SUPERSEDING

10:42AM  21  INDICTMENT MEETS THAT STANDARD BECAUSE NOWHERE IS FRAUD RELATED

10:43AM  22  TO INACCURATE RESULTS ON CONVENTIONAL TESTS.

10:43AM  23      NOW, FOR -- YOUR HONOR ENGAGED WITH THIS IN THE FIRST MIL

10:43AM  24  RULING, AND WHAT YOUR HONOR SAID AND FOCUSSED ON PARAGRAPH 18

10:43AM  25  SAYING THAT WHEN THE INDICTMENT SAYS QUOTE, "THERANOS TEST

10:43AM 1    RESULTS," IT INCLUDES WHAT WE JUST MENTIONED.

10:43AM 2           AND FOR SEVERAL REASONS.  I JUST THINK THAT'S FAIRLY

10:43AM 3    DEBATABLE.

10:43AM 4           THE FIRST IS WHEN THE INDICTMENT WANTS TO TALK ABOUT

10:43AM 5    CONVENTIONAL TECHNOLOGY, IT USES THE PHRASE CONVENTIONAL

10:43AM 6    TECHNOLOGY.  IT TALKS ABOUT CONVENTIONAL LABS WITH CONVENTIONAL

10:43AM 7    METHODS AND MACHINES TO DO CONVENTIONAL BLOOD TESTING.  THAT'S

10:43AM 8    AT PARAGRAPH 6, 12, AND 17.

10:43AM 9           SO WE HAVE A DOCUMENT THAT KNOWS HOW TO SAY CONVENTIONAL

10:43AM 10   BLOOD TESTING INSTEAD OF SAYING THERANOS TESTING.

10:43AM 11          AND SO THAT'S THE FIRST POINT.

10:43AM 12          AND THE SECOND IS AT PARAGRAPHS 5 AND 6 THE DOCUMENT IS

10:44AM 13   DEFINING ITS TERMS AND IT SAYS THERANOS'S PROPRIETARY ANALYZING

10:44AM 14   TECHNOLOGY THAT COULD RUN CLINICAL TESTS WITH A TINY DROP.

10:44AM 15   THAT'S PARAGRAPH 5.

10:44AM 16          THERANOS'S PROPRIETARY TEST RESULTS, THAT'S PARAGRAPH 6.

10:44AM 17          SO IF THE QUESTION IS WHETHER THIS DOCUMENT IS TALKING

10:44AM 18   ABOUT INACCURATE RESULTS OF CONVENTIONAL TESTS, THERE'S

10:44AM 19   CERTAINLY A FAIRLY DEBATABLE ARGUMENT THAT GIVEN THE PIECES OF

10:44AM 20   IT THAT I JUST MENTIONED, THAT IT DID NOT INCLUDE INACCURATE

10:44AM 21   RESULTS OF CONVENTIONAL TESTS.

10:44AM 22          AND AT TRANSCRIPT 45 WE HAVE THE GOVERNMENT SAYING QUOTE,

10:44AM 23   "ONE POSSIBLE WAY TO READ THE INDICTMENT."  SO WE HAVE WORDS

10:44AM 24   "CONVENTIONAL TESTS," WE HAVE A DEFINITION OF "THERANOS TEST

10:44AM 25   RESULTS," WE HAVE THE GOVERNMENT AGREEING, AND THEN ON TOP OF

10:44AM 1 ALL OF THAT WE HAVE DE NOVO APPELLATE REVIEW, WHAT THIS

10:44AM 2 DOCUMENT MEANS.

10:44AM 3 AND SO THAT'S WHY WE THINK AS A TEXTURAL MATTER IT IS NOT

10:44AM 4 INCLUDING THE CHARGE.

10:44AM 5 AND THEN THE QUESTION IS, OKAY, SO IT DOESN'T INCLUDE THE

10:45AM 6 CHARGE, WELL, THEN WHAT?

10:45AM 7 WELL, A LOT OF EVIDENCE CAME IN, YOUR HONOR, THAT WAS ONLY

10:45AM 8 RELEVANT TO THE CHARGES NOT IN THE DOCUMENT, TO THE INACCURATE

10:45AM 9 RESULTS, THE CONVENTIONAL TESTS.

10:45AM 10 THE BIGGEST ONE I THINK IS WHEN YOU HAVE THE CMS INSPECTOR

10:45AM 11 TALKING ABOUT REGULATORY PROBLEMS, MAKING AN IMMEDIATE JEOPARDY

10:45AM 12 FINDING.  THAT IS POWERFUL EVIDENCE.

10:45AM 13 WE HAVE TWO WITNESSES WHO WERE TESTED ON NON-THERANOS

10:45AM 14 MACHINES.

10:45AM 15 SO WE HAVE AN INDICTMENT CHARGING THAT DOES NOT INCLUDE

10:45AM 16 THE CHARGE THAT WE'RE TALKING ABOUT, WE HAVE THAT BECAUSE OF

10:45AM 17 THAT, WE HAVE A COMPLEX OF FACTS COMING IN, AND THAT WILL HIT

10:45AM 18 ALL COUNTS.

10:45AM 19 ON THE ALL COUNTS POINT, YOUR HONOR, THE INDICTMENT ITSELF

10:45AM 20 USES THE PHRASE "ACCURACY AND RELIABILITY" TO HIT BOTH THE

10:45AM 21 INVESTOR COUNTS AND THE PATIENT COUNTS.

10:45AM 22 WE HAVE THE GOVERNMENT IN ITS PAPERS IN THIS PARTICULAR

10:45AM 23 MOTION SAYING ACCURACY AND RELIABILITY ARE THE KEY OVERLAPPING

10:46AM 24 REPRESENTATIONS BETWEEN THE TWO FRAUD CHARGES.

10:46AM 25 AND SO WE HAVE AN ARGUMENT WHERE WE HAVE AN INDICTMENT

10:46AM  1    THAT DOESN'T INCLUDE THE CHARGE WE'RE TALKING ABOUT, WE HAVE

10:46AM  2    BECAUSE OF THAT, BECAUSE OF THAT WE HAVE ALL OF THIS EVIDENCE

10:46AM  3    COMING IN AND IT HITS ALL COUNTS.

10:46AM  4        AND BECAUSE THE GRAND JURY IS A REALLY IMPORTANT PROCESS,

10:46AM  5    THE REVIEW HERE IS ACTUALLY STRUCTURAL, THAT IT'S JUST

10:46AM  6    REVERSAL, BECAUSE AGAIN, WE HAVE THE GOVERNMENT NOT COMPLYING

10:46AM  7    WITH WHAT OUR CONSTITUTION EXPECTS.

10:46AM  8        THERE IS A GRAND JURY PROCESS WHICH PROTECTS US ALL FROM

10:46AM  9    THE EXECUTIVE BRANCH EXPANDING INDICTMENTS.  THIS WAS CLEARLY

10:46AM  10   AN EXPANSION OF THE INDICTMENT.  THEY DID NOT GO BACK TO THE

10:46AM  11   GRAND JURY.  WE DO NOT KNOW HOW THE GRAND JURY WOULD HAVE

10:46AM  12   RULED.  AND SO THAT IS WHY, AT LEAST FAIRLY DEBATABLE, AND WE

10:46AM  13   HAVE A SUBSTANTIAL LIKELIHOOD AND WE HAVE IT HERE AND WE

10:46AM  14   REQUIRE A NEW TRIAL ON ALL COUNTS.

10:47AM  15           THE COURT:  OKAY.  THANK YOU.

10:47AM  16       DOES IT MATTER THAT THE JURY INSTRUCTION 15 AND 28 TALKED

10:47AM  17   ABOUT THE REGULATORY ASPECT AND WHAT THE JURY COULD NOT AND

10:47AM  18   WOULD NOT AND SHOULD NOT DO?  AND I THINK IT WAS 15 WAS THE

10:47AM  19   ACTIVITIES NOT CHARGED.  SO THE JURY HAD SOME INFORMATION, SOME

10:47AM  20   GUIDANCE ON THAT.

10:47AM  21       DOES THAT HAVE ANY IMPACT?

10:47AM  22           MR. DAVIES:  I DON'T BELIEVE SO.  I RECALL IT BEING

10:47AM  23   A QUITE PRECISE INSTRUCTION.  BUT ALSO, THIS IS A STRUCTURAL

10:47AM  24   ERROR.  AGAIN, THIS IS NOT SOMETHING THAT WE WANT THE

10:47AM  25   GOVERNMENT DOING, GETTING AN INDICTMENT AND THEN EXPANDING IT

10:47AM 1    BEYOND WHAT THE CRIMINAL DEFENDANT EXPECTS.  SO THE SHORT

10:47AM 2    ANSWER IS NO, YOUR HONOR.

10:47AM 3         THE COURT:  OKAY.  THANK YOU.

10:47AM 4    LET ME ASK ANOTHER QUESTION, WHY ISN'T THIS, ASSUMING

10:47AM 5    EVERYTHING THAT YOU'VE SAID IS ACCURATE, AND I'M NOT

10:47AM 6    DISCOUNTING IT, BUT IS IT POSSIBLE THAT THIS IS A VARIANCE

10:47AM 7    SITUATION AS OPPOSED TO AN AMENDMENT SITUATION?

10:47AM 8         MR. DAVIES:  IT'S TOO FUNDAMENTAL, YOUR HONOR, FOR

10:47AM 9    THE REASONS I GAVE.  TO HAVING A FEDERAL REGULATORY COME IN AND

10:48AM 10   USE THE WORD "IMMEDIATE JEOPARDY" ON A COUNT THAT IS NOT --

10:48AM 11   IT'S SO FUNDAMENTAL TO THE ACCURACY AND RELIABILITY OF THE

10:48AM 12   TESTS, AND THEN THE INDICTMENT ITSELF USES ACCURACY AND

10:48AM 13   RELIABILITY IN BOTH CONTEXTS, AND SO, NO, YOUR HONOR.

10:48AM 14        THE COURT:  OKAY.  THANK YOU.

10:48AM 15   MS. VOLKAR.

10:48AM 16        MS. VOLKAR:  THANK YOU, YOUR HONOR.

10:48AM 17   FOR REASONS I'LL SAY IN JUST A MOMENT, THE GOVERNMENT

10:48AM 18   BELIEVES IT'S NOT A VARIANCE OR A CONSTRUCTIVE AMENDMENT, BUT I

10:48AM 19   DO WANT TO START WITH THE LAST REQUIREMENT THAT MR. BALWANI HAS

10:48AM 20   TO DEMONSTRATE BECAUSE I BELIEVE, AS WITH THE LAST ONE, THINK

10:48AM 21   THAT WOULD BE A HURDLE THAT HE CAN'T OVERCOME EVEN AS WE DEBATE

10:48AM 22   THE MERITS OR WHETHER OR NOT THE QUESTION IS FAIRLY DEBATABLE,

10:48AM 23   AND THAT IS THAT HIS CONSTRUCTIVE AMENDMENT ARGUMENT WAS NOT

10:48AM 24   PRESERVED.  AND I'M HAPPY TO GO INTO THAT FURTHER, BUT THIS IS

10:48AM 25   THE FIRST TIME THAT WE HAVE EVER SEEN OR HEARD CONSTRUCTIVE

10:48AM 1    AMENDMENT.  AND SO THAT'S, AS WE KNOW FROM THE <u>MILLER</u> CASE

10:48AM 2    ADOPTED BY THE NINTH CIRCUIT, THAT'S A BAR TO FINDING THAT IT'S

10:48AM 3    LIKELY TO RESULT IN REVERSAL.

10:48AM 4        THE SECOND REASON IS THAT EVEN IF MR. DAVIES IS RIGHT

10:49AM 5    ABOUT EVERYTHING, WHICH OF COURSE WE CONTEST FOR REASONS I'LL

10:49AM 6    GET TO IN A MOMENT, THIS IMPACTS THE PATIENT COUNTS.

10:49AM 7        AND WHILE HE IS CORRECT AND THE GOVERNMENT STANDS BY THAT

10:49AM 8    THE ACCURACY AND RELIABILITY IS ONE OF THE CHARGED

10:49AM 9    MISREPRESENTATIONS, IT IS THE UNDERLYING CHARGE BETWEEN THE TWO

10:49AM 10   DIFFERENT SCHEMES TO DEFRAUD.  I BELIEVE EVEN IN CLOSING,

10:49AM 11   MR. SCHENK EMPHASIZED HOW IT'S QUITE IMPORTANT TO THE PATIENTS.

10:49AM 12   OBVIOUSLY WHEN YOU GO TO GET A BLOOD TEST, ACCURACY IS

10:49AM 13   PARAMOUNT, BUT SIMPLY BECAUSE IT IS SUFFICIENT, DOESN'T MEAN

10:49AM 14   THAT IT IS NECESSARY TO THE JURY'S ULTIMATE CONCLUSION.  AND

10:49AM 15   THIS IS WHERE THE DEFENSE CONFUSES AND CONFLATES THOSE TWO

10:49AM 16   THINGS.

10:49AM 17       THE FACT THAT ONE SUBPART OF 12(A), ONE OF FOUR DIFFERENT

10:49AM 18   TYPES OF MISREPRESENTATIONS THAT ARE MENTIONED IN THE THIRD

10:49AM 19   SUPERSEDING INDICTMENT, PARAGRAPH 12(A) OF THE TYPES OF

10:50AM 20   MISREPRESENTATIONS ABOUT THE CAPABILITIES OF THE DEVICE THAT

10:50AM 21   MS. HOLMES AND MR. BALWANI MADE TO INVESTORS, THE FACT THAT

10:50AM 22   THAT IS ACCURACY AND RELIABILITY, THAT DOES NOT OVERCOME ALL OF

10:50AM 23   THE OTHER EVIDENCE THAT THE GOVERNMENT PRESENTED ON THE AT

10:50AM 24   LEAST SEVEN OTHER CATEGORIES NOT COUNTING SUBCATEGORIES.

10:50AM 25       AND WE KNOW, FOR EXAMPLE, THAT ONE OF THOSE CATEGORIES, I

10:50AM   1    BELIEVE IT'S PARAGRAPH G OF -- PARAGRAPH 12(G), PARDON ME,

10:50AM   2    TALKS ABOUT THE USE OF CONVENTIONAL DEVICES AND HOW MR. BALWANI

10:50AM   3    AND MS. HOLMES HID THAT FROM INVESTORS.

10:50AM   4         SO WHEN WE HAVE ALL OF THESE OTHER CATEGORIES OF

10:50AM   5    MISREPRESENTATION WITH RESPECT TO THE INVESTORS, I DON'T THINK

10:50AM   6    THAT MR. BALWANI CAN SAY EVEN IF EVERYTHING THAT MR. DAVIES

10:50AM   7    SAYS IS CORRECT AND THE NINTH CIRCUIT AGREES WITH HIM, THAT

10:50AM   8    IT'S LIKELY TO RESULT IN REVERSAL ON ALL COUNTS.

10:50AM   9         SO I WANTED TO START THERE BECAUSE I THINK IT'S THE

10:50AM  10    HIGHEST HURDLE FOR HIM TO OVERCOME.

10:50AM  11         BUT THAT BEING SAID, THERE IS NO CONSTRUCTIVE AMENDMENT

10:50AM  12    AND THERE IS NO VARIANCE HERE.  EVEN IF WE ARE TALKING ABOUT

10:51AM  13    THE MERITS, I DO NOT BELIEVE THAT IT IS EVEN FAIRLY DEBATABLE.

10:51AM  14         AND STARTING WITH I GUESS THE VARIANCE POINT FIRST, THE

10:51AM  15    THIRD SUPERSEDING INDICTMENT HAS A BILL OF PARTICULARS -- OR

10:51AM  16    HAS IN IT SPECIFIC TESTS AND THERE WAS ALSO A BILL OF

10:51AM  17    PARTICULARS AS YOUR HONOR WILL RECALL.

10:51AM  18         AND ON BOTH OF THOSE LISTS ARE THE VERY TESTS THAT

10:51AM  19    PATIENTS, MR. BINGHAM AND MS. TOMPKINS WHO TESTIFIED AT TRIAL,

10:51AM  20    THEIR TESTS ARE ON THAT LIST.  SO EVEN THOUGH THOSE TWO TESTS

10:51AM  21    WERE NOT RUN ON THE THERANOS ANALYZER, THE EDISON, THE TSPU,

10:51AM  22    THOSE -- MR. BALWANI HAS BEEN ON NOTICE ABOUT THOSE TESTS BEING

10:51AM  23    AT ISSUE AND THOSE SPECIFIC PATIENTS BEING AT ISSUE FROM THE

10:51AM  24    THIRD SUPERSEDING INDICTMENT.

10:51AM  25         AND I'LL COME BACK TO THE CMS REPORT IN JUST A MOMENT.

10:51AM  1       THERE IS ALSO NO VARIANCE BETWEEN THE GRAND JURY TESTIMONY

10:52AM  2   BECAUSE IF YOU LOOK AT THE GRAND JURY TESTIMONY, WHICH

10:52AM  3   MR. DAVIES PUBLICALLY FILED ON THE DOCKET WITHOUT ANY REDACTION

10:52AM  4   OR SEALING, YOU CAN SEE THAT THE TESTIMONY THAT AGENT MCCOLLOW

10:52AM  5   GAVE ABOUT THOSE TWO COUNTS, MS. TOMPKINS AND MR. BINGHAM,

10:52AM  6   MATCHES WHAT THEY SAID WHEN THEY CAME IN HERE AT TRIAL AND

10:52AM  7   TESTIFIED.

10:52AM  8       AND IF I'M NOT MISTAKEN, I BELIEVE PORTIONS OF THE CMS

10:52AM  9   REPORT WERE ALSO DISCUSSED BEFORE THE GRAND JURY THAT LED TO

10:52AM  10  THE THIRD SUPERSEDING INDICTMENT.

10:52AM  11      SO WHAT WE'RE MISSING HERE PARTICULARLY WHEN WE THINK

10:52AM  12  ABOUT A VARIANCE IS ANY KIND OF A MISMATCH BETWEEN THE FACTS

10:52AM  13  THAT WERE PRESENTED TO THE GRAND JURY AND THE FACTS THAT WERE

10:52AM  14  PRESENTED TO THE PETIT JURY, AND, THEREFORE, WE CANNOT HAVE A

10:52AM  15  VARIANCE.

10:52AM  16      NOW, I WANT TO TALK ABOUT THE CONSTRUCTIVE AMENDMENT

10:52AM  17  PORTION BECAUSE YOUR HONOR RIGHTFULLY POINTED OUT WITH THE JURY

10:52AM  18  INSTRUCTION, THE JURY WAS -- THIS IS WHERE THE PART ABOUT THE

10:52AM  19  CMS REPORT BECOMES QUITE CRITICAL.  THE JURY WAS SPECIFICALLY

10:52AM  20  INSTRUCTED NOT TO CONSIDER THE FACT THAT CMS CAME IN AND MADE

10:53AM  21  THIS IMMEDIATE JEOPARDY FINDING AND FOUND THAT THERANOS MAY NOT

10:53AM  22  HAVE MET ALL OF THE RIGHT REGULATORY STANDARDS FROM CMS'S VIEW.

10:53AM  23      THE JURY WAS TOLD THAT THEY COULD NOT CONVICT MR. BALWANI

10:53AM  24  EVEN IF THEY BELIEVED MS. BENNETT WHEN SHE TALKED ABOUT THOSE

10:53AM  25  REGULATORY VIOLATIONS, WHEN SHE WALKED THROUGH THE D-TAGS AND

10:53AM 1    WHAT THIS PARTICULAR VIOLATION MEANT WITH RESPECT TO THIS

10:53AM 2    REGULATORY CODE.

10:53AM 3         ALTHOUGH THAT WAS IMPORTANT FOR A DIFFERENT REASON, THE

10:53AM 4    JURY WAS INSTRUCTED THEY COULD NOT CONSIDER THAT WHEN

10:53AM 5    CONSIDERING MR. BALWANI'S GUILT.

10:53AM 6         AND THE REASON WHY IT WAS RELEVANT, OF COURSE, WAS BECAUSE

10:53AM 7    ONE OF CMS'S FINDINGS THAT WAS QUITE CRITICAL TO THIS CASE, WAS

10:53AM 8    THAT ALL TESTS ON THE THERANOS ANALYZER DEVICE WERE SUSPECT.

10:53AM 9    AND WE KNOW FROM THE HOLMES TRIAL THAT LED DR. DAS TO RECOMMEND

10:54AM 10   INTERNALLY THAT ALL TESTS ON THE THERANOS DEVICE SHOULD BE

10:54AM 11   VOIDED AND THERANOS, OF COURSE, DID ULTIMATELY VOID ALL OF

10:54AM 12   THOSE TESTS.  SO IT'S AN IMPORTANT PART OF THE SCHEME.

10:54AM 13        NOW, THE REASON WHY THERE'S NO CONSTRUCTIVE AMENDMENT

10:54AM 14   BETWEEN THE LANGUAGE OF THE THIRD SUPERSEDING INDICTMENT AND

10:54AM 15   THAT THOSE FACTS THAT WERE PRESENTED AT TRIAL IS FIRST AND

10:54AM 16   FOREMOST, THE JURY INSTRUCTIONS, WHICH I THINK GAVE GUARDRAILS

10:54AM 17   TO THE JURY CONSIDERING SOMETHING BEYOND THE PARAMETERS.

10:54AM 18        BUT ALSO FOR THE REASONS THAT YOUR HONOR FOUND PRETRIAL,

10:54AM 19   THERE WAS NO QUESTION ABOUT WHETHER OR NOT, PARDON ME, THE

10:54AM 20   PATIENTS WHO WERE RECEIVING INFORMATION, THEY WERE NOT

10:54AM 21   NECESSARILY TOLD WHAT TECHNOLOGY THEIR BLOOD TESTS WERE GOING

10:54AM 22   TO BE RUN ON.  THEY JUST KNEW THAT THERANOS WAS RUNNING THEIR

10:54AM 23   BLOOD TESTS AND THAT IN CERTAIN CASES AND IN THE CERTAIN

10:54AM 24   PATIENTS WHO TESTIFIED, THEY WERE RECEIVING INACCURATE AND

10:55AM 25   UNRELIABLE BLOOD TESTS.

10:55AM  1       SO IN SUM, I THINK THAT THE KEY PART, THE KEY POINT OF THE

10:55AM  2   SUPERSEDING -- THE THIRD SUPERSEDING INDICTMENT IS TO PROVIDE

10:55AM  3   NOTICE TO MR. BALWANI OF THE CHARGES.  HE WAS ON NOTICE.  THERE

10:55AM  4   WAS A BILL OF PARTICULARS.  THERE WAS A LIST OF TESTS.  WE

10:55AM  5   PRESENTED PATIENTS TESTIFYING WITHIN THOSE PARAMETERS.

10:55AM  6       AND WHEN IT COMES TO THE CMS REPORT, IT'S IMPORTANT --

10:55AM  7   MR. DAVIES IS PARSING OUT SPECIFIC PIECES OF IT, BUT THERE WERE

10:55AM  8   STILL OTHER PIECES THAT WERE CRITICALLY RELEVANT OR QUITE

10:55AM  9   RELEVANT OR WERE GOING TO THE CORE OF CERTAIN PIECES OF THE

10:55AM  10   CASE, AND EVEN IF WE'RE TALKING ABOUT ONE PORTION OF IT, THAT

10:55AM  11   COULD HAVE BEEN SOLVED WITH OBJECTIONS OR WAYS TO LIMIT IT IN

10:55AM  12   THE MOMENT THAT DID NOT OCCUR IN THIS CASE AS WE KNOW IT DID

10:55AM  13   OCCUR IN THE HOLMES CASE.

10:55AM  14       SO WITH THAT, THERE'S NO VARIANCE, THERE'S NO CONSTRUCTIVE

10:56AM  15   AMENDMENT.  AND AGAIN, EVEN IF IT'S FAIRLY DEBATABLE TO

10:56AM  16   MR. DAVIES'S POINT, WE COULD BE HERE FOR MUCH LONGER PROBABLY

10:56AM  17   TALKING ABOUT THIS, EVEN IF IT'S FAIRLY DEBATABLE, IT WASN'T

10:56AM  18   PRESERVED, AND IT'S NOT LIKELY TO RESULT IN REVERSAL ON ALL

10:56AM  19   COUNTS.

10:56AM  20           THE COURT:  THANK YOU.

10:56AM  21           MR. DAVIES:  SO ON THE QUESTION OF PRESERVATION, I

10:56AM  22   WOULD DIRECT YOU TO TRANSCRIPT 32.  HERE'S THE QUOTE:  "THE

10:56AM  23   GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE

10:56AM  24   RELATING TO ACCURACY AND UNRELIABILITY PROBLEMS ON THE

10:56AM  25   COMMERCIAL TESTING.  THAT IS SIMPLY OUTSIDE OF THE INDICTMENT."

10:56AM  1    THAT IS THE ARGUMENT.

10:56AM  2        THE FACT THAT PARTIES DON'T USE PARTICULAR LINGO AT

10:56AM  3    PARTICULAR TIMES IS JUST NOT RELEVANT TO THE QUESTION OF

10:56AM  4    WHETHER IT WAS RAISED.  THAT IS A VERY CLEAR RAISING OF THIS

10:56AM  5    ISSUE.  THE FACT THAT YOUR HONOR ENGAGED IN THE MEETING OF THE

10:56AM  6    TSI SHOWS THAT IT WAS DEFINITELY FOR THE PARTIES.

10:56AM  7        STANDARD OF REVIEW HERE UNDER STIRONE IT'S WHAT MIGHT HAVE

10:57AM  8    BEEN THE BASIS UPON WHICH THE TRIAL JURY CONVICTED PETITIONER.

10:57AM  9    MIGHT HAVE BEEN THE BASIS UPON WHICH THE TRIAL JURY CONVICTED

10:57AM  10   THE PETITIONER.  THAT IS WHAT WE CAN SHOW UNDER STIRONE.

10:57AM  11       THE QUESTION OF THESE TWO WITNESS, BINGHAM AND TOMPKINS,

10:57AM  12   IF YOU LOOK AT THE TRANSCRIPT PAGES AT 5953 TO 56, 5977 TO 91,

10:57AM  13   THERE IS NOTHING TO MAKE CLEAR THAT THE GOVERNMENT KNEW OF

10:57AM  14   THOSE TESTS, KNEW THAT THOSE TESTS WERE UNCONVENTIONAL

10:57AM  15   TECHNOLOGY.  SO IT DOES NOT HELP THEM SHOW THAT THIS INDICTMENT

10:57AM  16   WAS RELEVANT TO CONVENTIONAL TESTING.

10:57AM  17       AGAIN, ON THE JURY INSTRUCTION POINT, THAT CANNOT REFUTE A

10:57AM  18   FUNDAMENTAL PROBLEM WITH THE INDICTMENT.  IT'S A CONSTITUTION

10:57AM  19   VIOLATION OF THE GOVERNMENT.  THAT IS WHAT HAS HAPPENED HERE.

10:57AM  20        THE COURT:  THANK YOU.  AND TELL ME ABOUT REVERSAL

10:58AM  21   ON ALL COUNTS?  IS THAT SOMETHING THAT HAS TO BE CONSIDERED?

10:58AM  22        MR. DAVIES:  YES, BECAUSE -- AND THAT'S WHY WE

10:58AM  23   STARTED WITH THE ACCURACY AND RELIABILITY.  THAT IS A

10:58AM  24   FUNDAMENTAL THEME HERE, THE ACCURACY AND RELIABILITY OF THESE

10:58AM  25   TESTS, THE THERANOS TESTS, AND WHEN EVIDENCE COMES IN THAT GOES

10:58AM 1    TO ACCURACY AND RELIABILITY OF A DIFFERENT TYPE OF TEST, THAT

10:58AM 2    AFFECTS ALL OF THE COUNTS.

10:58AM 3         AND TO QUOTE THE GOVERNMENT, THIS IS IN THE MOTION, QUOTE,

10:58AM 4    "KEY OVERLAPPING REPRESENTATIONS BETWEEN THE TWO FRAUD CHARGES

10:58AM 5    ARE ACCURACY AND RELIABILITY."  THAT'S AT PAGE 11 OF THEIR

10:58AM 6    OPPOSITION.  SO THERE'S REALLY NO DISPUTE THAT ACCURACY AND

10:58AM 7    RELIABILITY ARE THE KEY OVERLAPPING REPRESENTATIONS.

10:58AM 8         THERE CAN'T BE ANY DISPUTE THAT A FEDERAL REGULATOR COMING

10:58AM 9    IN HAS A DRAMATIC IMPACT SAYING THINGS LIKE IMMEDIATE JEOPARDY.

10:58AM 10   AND IT CAN'T BE -- I GUESS THE FAIRLY DEBATABLE QUESTION IS HOW

10:58AM 11   YOU READ THE DOCUMENT, AND WE'VE BEEN OVER THAT.

10:58AM 12             THE COURT:  OKAY.

10:58AM 13             MS. VOLKAR:  I HAVE NOTHING FURTHER, YOUR HONOR,

10:59AM 14   UNLESS YOU HAVE ANY QUESTIONS FOR ME.

10:59AM 15             THE COURT:  WELL, I WAS CURIOUS ABOUT, IS THE

10:59AM 16   GOVERNMENT'S POSITION THAT THE DEFENSE READS THIS TOO NARROWLY

10:59AM 17   OR LOOKS AT THE INDICTMENT TOO NARROWLY?

10:59AM 18        AND THEN I'M GOING TO COME BACK TO MR. DAVIES AND SAY THE

10:59AM 19   CONTRARY IS THE GOVERNMENT SAYING, YOU KNOW, WE SHOULD HAVE

10:59AM 20   BROAD -- THERE ARE CASES THAT SAY THAT THE INDICTMENT SHOULD BE

10:59AM 21   READY BROADLY AND NOT NARROWLY.

10:59AM 22             MS. VOLKAR:  YES, YOUR HONOR.

10:59AM 23        AND AGAIN, I GO BACK THE POINT OF THE INDICTMENT IS TO PUT

10:59AM 24   THE DEFENDANT ON NOTICE.  I KNOW WE HAD THAT CONFERENCE

10:59AM 25   PRETRIAL AS WELL.  BUT IF YOU LOOK AT THE LANGUAGE OF IT,

PARAGRAPH 16 AND 17, AND I DO BELIEVE THAT THE PARTIES ARE IN

FULL AGREEMENT THAT PARAGRAPH 12 IS SORT OF THE PARAGRAPH THAT

LAYS OUT THE MISREPRESENTATIONS WITH RESPECT TO THE INVESTORS

AND PARAGRAPH 16 IS THE PARAGRAPH THAT LAYS OUT THE

MISREPRESENTATIONS WITH RESPECT TO THE PATIENTS.  I KNOW

THERE'S BEEN QUITE A BIT OF LITIGATION OVER THOSE TWO

PARAGRAPHS.

     AND PARAGRAPH 16, WITH RESPECT TO THE PATIENT COUNTS,

READS:  "THERANOS COULD PROVIDE ACCURATE, FAST, RELIABLE, AND

CHEAP BLOOD TESTS AND TEST RESULTS, DESPITE THE DEFENDANT'S

KNOWLEDGE THAT THERANOS WAS NOT CAPABLE OF CONSISTENTLY

PRODUCING ACCURATE AND RELIABLE RESULTS FOR CERTAIN BLOOD

TESTS, INCLUDING," AND THEN THAT'S THE LIST THAT I MENTIONED.

     AND THIS IS SOMETHING THAT WAS A KEY DISTINCTION THAT WE

DISCUSSED PRETRIAL AND ALSO THAT WAS A KEY PART OF YOUR HONOR'S

RULING.  THAT IS THERANOS.  DESPITE THE FACT THAT THERANOS'S

TECHNOLOGY IS MENTIONED IN OTHER PARTS OF THE INDICTMENT, WHEN

IT COMES TO WHAT WAS THE MISREPRESENTATION, THE INDICTMENT IS

CLEAR, THERANOS, THE COMPANY, THE COMPANY SAID THAT IT COULD

OFFER ACCURATE, FAST, RELIABLE, AND CHEAP BLOOD TESTS DESPITE

THE DEFENDANT'S KNOWLEDGE THAT THERANOS WAS NOT CAPABLE OF

DOING SO.

     AND IN CASE THERE IS ANY DOUBT, THOSE CLAUSES ARE

IMMEDIATELY FOLLOWED BY A LIST OF TESTS THAT INCLUDE HIV AND

THE PLATELETS TEST FOR THE TWO VICTIMS THAT PRETRIAL DEFENDANT

11:01AM  1    WAS SEEKING TO PRECLUDE THEIR TESTIMONY ENTIRELY AND NOW IN

11:01AM  2    THIS POSTURE THEY'RE SAYING ESSENTIALLY THAT THEY SHOULDN'T

11:01AM  3    HAVE BEEN ABLE TO TESTIFY BECAUSE THEIR BLOOD TESTS WEREN'T

11:01AM  4    DONE ON THE THERANOS ANALYZER.

11:01AM  5         BUT AGAIN, I SAY, THE DEFENDANT IS READING -- IS BEING

11:01AM  6    HYPER TECHNICAL AND ALSO IGNORING THE KEY LANGUAGE WITH RESPECT

11:01AM  7    TO THE ACTUAL MISREPRESENTATION ALLEGED.

11:01AM  8              THE COURT:  MR. DAVIES.

11:01AM  9              MR. DAVIES:  TO ANSWER YOUR QUESTION, YOUR HONOR,

11:01AM  10   THE REVIEW HERE IS A COMMON SENSE READING OF THE INDICTMENT.

11:01AM  11        I THINK YOU WERE ASKING SHOULD IT BE NARROWLY CONSTRUED?

11:01AM  12   SHOULD IT BE BROADLY CONSTRUED?  AND THERE'S AN AGREEMENT AMONG

11:01AM  13   THE PARTIES THAT IT'S A COMMON SENSE READING.  THAT'S THE LENS

11:01AM  14   TO WHICH YOU NEED TO LOOK AT THIS INDICTMENT.

11:01AM  15        SO IT'S FAIRLY DEBATABLE -- I AM NOT GOING TO -- I MADE

11:01AM  16   THOSE POINTS, YOUR HONOR.  BUT THE LENS AT WHICH YOU NEED TO

11:01AM  17   LOOK THROUGH THIS IS A COMMON SENSE LENS.  IT'S NOT

11:02AM  18   PARTICULARLY HARSH EITHER WAY I WOULD SAY.

11:02AM  19              THE COURT:  OKAY.  THANK YOU.

11:02AM  20        WELL, LET ME TURN NOW TO ANY OTHER DISCUSSION THEN ON

11:02AM  21   THOSE TWO TOPICS.  I TOLD YOU THOSE WERE THE ONES THAT I WANTED

11:02AM  22   SOME ADDITIONAL HELP ON.  YOUR PLEADINGS OTHERWISE WERE FULSOME

11:02AM  23   ON THE OTHER ISSUES, THE OTHER SIX ISSUES THAT YOU RAISED.

11:02AM  24              MR. DAVIES:  MAY I RAISE ONE, YOUR HONOR?

11:02AM  25              THE COURT:  SURE.  GO RIGHT AHEAD.

11:02AM  1          MR. DAVIES:  SO WE WERE PLANNING TO RAISE THREE,

11:02AM  2     ALTHOUGH WE DID RAISE MORE.  THE THIRD ONE THAT WE WERE

11:02AM  3     PLANNING TO RAISE IS THE SECOND ONE, THE ONE WE PUT SECOND

11:02AM  4     ABOUT THE VIOLATION OF RULE 701, 702 EVIDENCE.

11:02AM  5          THE COURT:  THIS IS ABOUT WITNESSES, INCLUDING

11:02AM  6     MS. CHEUNG AND OTHERS WHO MAY HAVE BEEN PERMITTED TO TESTIFY AS

11:02AM  7     EXPERTS?

11:02AM  8          MR. DAVIES:  YES.  AND THAT IS AN ISSUE THAT THE

11:02AM  9     NINTH CIRCUIT CARES DEEPLY ABOUT.  WHEN YOU LOOK AT THE FEDERAL

11:02AM 10     RULES OF EVIDENCE, THE AMENDMENT NOTES FROM 2000, IT CITES THE

11:02AM 11     NINTH CIRCUIT'S CASE FIGUEROA-LOPEZ THREE TIMES.  SO OBVIOUSLY

11:02AM 12     THIS IS AN ISSUE THAT THE COURT OF APPEALS IN THIS CIRCUIT HAS

11:02AM 13     HAD A BIG INFLUENCE ON.

11:02AM 14          THE COURT:  THAT WAS A CASE, WASN'T IT WHERE -- THAT

11:03AM 15     WAS A NARCOTICS CASE, I BELIEVE, AND THE OFFICERS WERE

11:03AM 16     PERMITTED TO TESTIFY ABOUT "IN MY EXPERIENCE," IN ESSENCE, I'M

11:03AM 17     PARAPHRASING, BUT IN ESSENCE "IN MY EXPERIENCE THIS LOOKS LIKE

11:03AM 18     A DRUG RING TO ME."  SOMETHING LIKE THAT.

11:03AM 19          MR. DAVIES:  SOMETHING LIKE THAT.  OR THE CODE

11:03AM 20     WORDS, THAT IS WHAT STRUCK ME.  BUT THEY WERE ALLOWED TO

11:03AM 21     EXPLAIN CODE WORDS.

11:03AM 22          THE COURT:  RIGHT.  AND IN THIS CASE MS. CHEUNG WAS

11:03AM 23     TESTIFYING, IF I RECALL CORRECTLY, ABOUT HER TRAINING,

11:03AM 24     EXPERIENCE, AND THEN SHE TESTIFIED A LITTLE BIT ABOUT SOMETHING

11:03AM 25     ABOUT, "WELL, THAT DIDN'T LOOK RIGHT TO ME."

| | | |
|---|---|---|
| 11:03AM | 1 | IS THIS WHAT YOU'RE REFERENCING? |
| 11:03AM | 2 | MR. DAVIES:  YES, BUT SOME CLARIFICATIONS, |
| 11:03AM | 3 | YOUR HONOR.  THE WORDS "TRAINING" AND "EXPERIENCE" ARE NOT IN |
| 11:03AM | 4 | THE RULES OF EVIDENCE.  IT'S ABOUT MAKING SURE WE HAVE EXPERTS |
| 11:03AM | 5 | WHEN THEY'RE APPLYING SPECIALIZED TRAINING. |
| 11:03AM | 6 | AND I HAVE TO SAY, IT'S SURPRISING THAT THE GOVERNMENT HAS |
| 11:03AM | 7 | NOT USED AN EXPERT IN THIS CASE ON THIS TOPIC BECAUSE IT'S A |
| 11:03AM | 8 | SCIENTIFIC TOPIC THAT IS COMPLEX. |
| 11:03AM | 9 | AND TWO QUOTES FROM MS. CHEUNG ABOUT QUALITY CONTROL |
| 11:03AM | 10 | TESTING, AN INDICATION THAT THERE WAS SOME ISSUE IN THE |
| 11:03AM | 11 | ACCURACY OF THE ACTUAL DEVICE.  THAT IS AN EXPERT TESTIMONY |
| 11:04AM | 12 | APPLYING OPINION.  IT IS NOT THAT LAY WITNESS TESTIMONY. |
| 11:04AM | 13 | THE COURT:  WAS THAT ARGUED BY THE GOVERNMENT? |
| 11:04AM | 14 | MR. DAVIES:  WAS THAT? |
| 11:04AM | 15 | THE COURT:  DID THE GOVERNMENT ARGUE THAT THE JURY |
| 11:04AM | 16 | SHOULD CONVICT BECAUSE OF MS. CHEUNG'S RECOGNITION OF THE |
| 11:04AM | 17 | INACCURACY OF THE TESTING? |
| 11:04AM | 18 | MR. DAVIES:  THEY MADE THE POINT THAT BECAUSE OF |
| 11:04AM | 19 | THESE THREE WITNESSES, THAT WAS POWERFUL TESTIMONY FOR |
| 11:04AM | 20 | CONVICTION. |
| 11:04AM | 21 | THE COURT:  OKAY. |
| 11:04AM | 22 | MR. DAVIES:  THAT WAS POWERFUL TESTIMONY FOR |
| 11:04AM | 23 | CONVICTION. |
| 11:04AM | 24 | ANOTHER QUOTE FROM MS. CHEUNG, "IF YOU JUST EXTRAPOLATE |
| 11:04AM | 25 | OUT ESSENTIALLY THE PERCENTAGE OF FAILURES THAT ARE HAPPENING |

11:04AM 1    ACROSS THE SYSTEM, IT SEEMS LIKELY THAT THERE MAY BE SOME ISSUE

11:04AM 2    WITH THE CHEMISTRY." THAT IS APPLICATION OF EXPERTISE.  THAT

11:04AM 3    IS SPECIALIZED OPINION APPLIED TO THIS CASE.  THAT'S AT 1246 TO

11:04AM 4    48.

11:04AM 5         WE HAVE DR. PANDORI SAYING -- ASKING WHETHER THERANOS'S

11:04AM 6    TEST IS QUOTE, "MORE ACCURATE THAN COMPETITORS." THAT'S AT

11:04AM 7    1734.  WHETHER IT'S GROUNDBREAKING, THAT IS AT 1608.  WE HAVE

11:05AM 8    DR. ROSENDORFF TALKING ABOUT DILUTION OF ACCURACY AND

11:05AM 9    RELIABILITY, 3265 TO 3266.  TESTING RANGES FOR FINGERSTICK

11:05AM 10   TECHNOLOGY, 3266.  ARE ANY ERRORS SYSTEMATIC PROBLEMS, 3268 TO

11:05AM 11   69.

11:05AM 12        AND THE ISSUE THE NINTH CIRCUIT WAS WORRIED ABOUT WAS

11:05AM 13   ABOUT EXPERTS IN LAY WITNESS CLOTHING.

11:05AM 14        THAT'S EXACTLY WHAT HAPPENED HERE, YOUR HONOR.  WE HAD

11:05AM 15   THREE FORMER EMPLOYEES USING THEIR SPECIALIZED KNOWLEDGE, WHICH

11:05AM 16   IS A VIOLATION OF 701(C).  THAT IS WHY WE HAVE 701(C).  IT WAS

11:05AM 17   ADDED BECAUSE THE NINTH CIRCUIT WAS CONCERNED ABOUT EXPERT

11:05AM 18   TESTIMONY BY PEOPLE WHO HAVE NOT BEEN QUALIFIED AS EXPERTS.

11:05AM 19             THE COURT:  OKAY.

11:05AM 20             MS. VOLKAR:  YOUR HONOR, I'M PREPARED TO SUBMIT ON

11:05AM 21   THE PAPERS UNLESS THE COURT HAS ANY QUESTIONS FOR ME.  I KNOW

11:05AM 22   WE FULLY BRIEFED IT, BUT I AM HAPPY TO ADDRESS ANY QUESTIONS

11:05AM 23   THAT THE COURT HAS.

11:05AM 24             THE COURT:  NO.  THANK YOU.  THANK YOU.  THANKS FOR

11:05AM 25   RAISING THOSE.  THANK YOU.

11:05AM  1      LET'S TURN NOW TO THE OTHER FACTORS THAT THE COURT MUST

11:06AM  2  CONSIDER IN REGARDS TO RELEASE PENDING APPEAL.

11:06AM  3      I THINK THE BURDEN IS ON YOU, MR. DAVIES, TO -- WHAT OTHER

11:06AM  4  THINGS SHOULD I CONSIDER?  LET'S TALK ABOUT FLIGHT RISK AND

11:06AM  5  SAFETY.

11:06AM  6           MR. DAVIES:  MR. BALWANI IS NOT LIKELY TO FLEE.  HE

11:06AM  7  WAS CHARGED IN JUNE OF 2018, CONVICTED JULY 20TH.  NO

11:06AM  8  SUGGESTION OF FLEEING.

11:06AM  9      HE WAS SENTENCED DECEMBER OF 2022.  NO SUGGESTION OF

11:06AM 10  FLEEING.  THE PROBATION OFFICER QUOTE, "NOT VIEWED AS A FLIGHT

11:06AM 11  RISK."

11:06AM 12      HE'S BEEN IN THIS COUNTRY 23 YEARS, STRONG CONNECTIONS TO

11:06AM 13  CALIFORNIA, MARYLAND, AND OHIO.

11:06AM 14      THE PRINCIPAL REASON THAT WE HEARD FROM THE GOVERNMENT WAS

11:06AM 15  ESSENTIALLY THAT HE WAS BORN IN PAKISTAN.  AND THEY CITED TO A

11:06AM 16  CASE WHICH HAD VERY FEW CONNECTIONS TO THIS MATTER, AND WE CAN

11:07AM 17  COME BACK TO WHY THAT MIGHT HAVE BEEN DONE.

11:07AM 18      BUT WE DON'T SEE ANY REASON THAT HE'S LIKELY TO FLEE, AND

11:07AM 19  THERE'S ALSO NO DANGER HERE TO THE COMMUNITY.  HE'S NOT IN

11:07AM 20  HEALTH CARE.  THERE'S NOTHING VIOLENT OR NO OTHER CRIMES.  AND

11:07AM 21  AT SENTENCING, THE COURT AND PROBATION FOUND SUFFICIENT

11:07AM 22  EVIDENCE OF RISK, AND THE APPEAL IS NOT FOR DELAY, YOUR HONOR.

11:07AM 23           THE COURT:  OKAY.  THANK YOU.

11:07AM 24           MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:07AM 25      I THINK THAT THIS IS WHERE IT'S IMPORTANT TO RECOGNIZE NOT

11:07AM  1    ONLY THAT IT IS THE DEFENDANT'S BURDEN, BUT IT IS THE

11:07AM  2    DEFENDANT'S BURDEN TO SHOW BY CLEAR AND CONVINCING EVIDENCE

11:07AM  3    THAT HE IS -- THAT HE DOES NOT QUOTE, "POSE A RISK OF FLIGHT

11:07AM  4    AND DOES NOT POSE A DANGER TO THE COMMUNITY."  AND THAT IS

11:07AM  5    REALLY WHAT THE GOVERNMENT EMPHASIZES HERE, WHICH IS THAT IN

11:07AM  6    THIS POSTURE, AFTER MR. BALWANI HAS BEEN CONVICTED BY A JURY ON

11:07AM  7    ALL 12 COUNTS, AFTER HE HAS BEEN SENTENCED BY THE COURT, THE

11:08AM  8    BURDEN HAS SHIFTED AND CONGRESS'S VIEW IS THAT IT SHOULD BE

11:08AM  9    QUITE DIFFICULT FOR DEFENDANTS TO MEET THIS CLEAR AND

11:08AM  10   CONVINCING STANDARD AT THIS POINT IN TIME BECAUSE AFTER THEY

11:08AM  11   HAVE BEEN CONVICTED PARTICULARLY OF FELONY CONVICTIONS, HERE 12

11:08AM  12   FELONY CONVICTIONS, THEY ARE ESSENTIALLY PRESUMED TO BE A

11:08AM  13   DANGER TO THE COMMUNITY AND TO POSE A FLIGHT RISK.  SO THAT IS

11:08AM  14   WHERE WE START.

11:08AM  15       AND THE GOVERNMENT'S POINT IS THAT WHEN IT IS THE

11:08AM  16   DEFENDANT'S BURDEN TO SHOW SOMETHING THAT CAN CHANGE THAT

11:08AM  17   PRESUMPTION, CAN BALANCE AGAINST THAT, WHAT MR. BALWANI HAS PUT

11:08AM  18   FORWARD IS HIS PRETRIAL RECORD AND HIS CLOSE TIES TO THE

11:08AM  19   COMMUNITY HERE IN THE UNITED STATES, HIS CLOSE RELATIONSHIP

11:08AM  20   WITH HIS BROTHERS AND THE SUPPORT THAT HE HAS PROVIDED TO LOCAL

11:08AM  21   COMMUNITIES.

11:08AM  22       THE GOVERNMENT'S RESPONSE TO THAT IS THAT THOSE FACTORS

11:08AM  23   ARE REALLY AT BEST NEUTRAL.  THEY DON'T WEIGH AS MUCH AGAINST

11:09AM  24   THAT PRESUMPTION AS MR. BALWANI WANTS THEM TO.  BECAUSE WHAT WE

11:09AM  25   ALSO KNOW FROM MR. BALWANI, WHAT HE HAS TOLD PROBATION IS THAT

11:09AM 1   HE HAS CLOSE TIES HERE IN THE UNITED STATES, BUT HE'S ALSO VERY

11:09AM 2   CLOSE WITH HIS SISTERS IN INDIA, AND HE ALSO HELPS OUT

11:09AM 3   ORGANIZATIONS IN INDIA.  AND THAT IS COMMENDABLE, AND THAT'S

11:09AM 4   PART OF WHY THEY TOLD PROBATION ABOUT THAT AND YOUR HONOR

11:09AM 5   RECOGNIZED THAT IN THE ORDER YESTERDAY.

11:09AM 6       BUT WHEN WE'RE TALKING ABOUT THE DEFENDANT MEETING HIS

11:09AM 7   BURDEN HERE, IT MEANS THAT THE TIES HE'S POINTING TO TO THIS

11:09AM 8   COMMUNITY, I DON'T THINK THAT THE COURT SHOULD WEIGHT THEM VERY

11:09AM 9   HIGH BECAUSE HE HAS TIES BOTH HERE AND ABROAD, AND THAT'S

11:09AM 10  PERFECTLY FINE TO HAVE TIES HERE AND ABROAD, BUT WE'RE ASKING

11:09AM 11  WHETHER OR NOT THE GOVERNMENT -- OR EXCUSE ME, THE DEFENDANT

11:09AM 12  CAN MEET HIS BURDEN BY CLEAR AND CONVINCING EVIDENCE.  THAT'S

11:09AM 13  WHAT THE COURT HAS TO LOOK AT.

11:09AM 14      AND AGAIN, HIS PRETRIAL RECORD WHILE SO FAR HE HAS A GOOD

11:09AM 15  PRETRIAL RECORD, NO ONE IS DISPUTING THAT.  WHAT WE NOW HAVE TO

11:09AM 16  WEIGH AGAINST THIS, AND THIS IS WHAT YOUR HONOR DID IN THE

11:10AM 17  KAKKAR CASE, WHAT WE NOW HAVE TO WEIGH AGAINST THAT IS THE FACT

11:10AM 18  THAT THE DEFENDANT IS FACING A SUBSTANTIAL PRISON SENTENCE OF

11:10AM 19  155 MONTHS AND HE, BEFORE TRIAL, DIDN'T KNOW IF HE WOULD OR

11:10AM 20  WOULD NOT BE CONVICTED.  AND NOW HE KNOWS HE'S BEEN CONVICTED,

11:10AM 21  HE KNOWS THE SENTENCE THAT HE IS FACING, AND AGAIN, THAT IS

11:10AM 22  JUST SOMETHING THAT NEUTRALIZES THAT FACTOR FROM THE

11:10AM 23  GOVERNMENT'S PERSPECTIVE.

11:10AM 24      SO THE GOVERNMENT THINKS THAT THE TWO FACTORS THAT THE

11:10AM 25  DEFENDANT HAS PUT FORWARD TO MEET HIS CLEAR AND CONVINCING

11:10AM 1    EVIDENCE BURDEN ARE REALLY NEUTRAL AT BEST, AND THEREFORE, THE

11:10AM 2    GOVERNMENT THINKS THAT THE PRESUMPTION SHOULD CARRY THE DAY AND

11:10AM 3    THE PRESUMPTION SHOULD BEAT -- THE PRESUMPTION IS THAT HE POSES

11:10AM 4    A RISK OF FLIGHT.

11:10AM 5         SIMILARLY WITH DANGER, WHAT WE REPEATEDLY HEAR FROM THE

11:10AM 6    DEFENDANT AND DEFENSE COUNSEL IS THAT HE DID NOT COMMIT A

11:10AM 7    VIOLENT CRIME.  HE'S NOT A VIOLENT PERSON.  THE COURT FOUND

11:10AM 8    THAT AT SENTENCING.  THE GOVERNMENT HAS NEVER STATED THAT

11:11AM 9    MR. BALWANI IS VIOLENT.

11:11AM 10        WHAT WE ARE STATING HERE AND WHAT WE HAD PUT FORTH IN OUR

11:11AM 11   PAPERS IS THAT, AGAIN, THERE IS THIS PRESUMPTION THAT HE POSES

11:11AM 12   A DANGER TO THE COMMUNITY BASED ON HIS FELONY CONVICTIONS.  HE

11:11AM 13   HAS TO OVERCOME THAT PRESUMPTION.  IN HIS OPENING MOTION, HE

11:11AM 14   DOESN'T EVEN MENTION DANGER.

11:11AM 15        OF COURSE WE KNOW, THE COURT KNOWS, THAT DANGER CAN COME

11:11AM 16   IN THE FORM OF PECUNIARY HARM, ECONOMIC FARM AS MUCH AS IT CAN

11:11AM 17   COME IN THE FORM OF VIOLENT HARM.  AND WHEN WE LOOK AT THE

11:11AM 18   OFFENSE CONDUCT OF WHAT MR. BALWANI DID HERE, I THINK THAT THAT

11:11AM 19   IS DEMONSTRATED IN SPADES AND THAT'S WHAT THE JURY FOUND, AND,

11:11AM 20   THEREFORE, I THINK MR. BALWANI REALLY PUTS FORWARD NOTHING TO

11:11AM 21   MOVE THE NEEDLE, AND THEREFORE, AGAIN THE PRESUMPTION SHOULD

11:11AM 22   APPLY THAT HE IS A DANGER TO THE COMMUNITY AS IS PRESUMED BY

11:11AM 23   CONGRESS, BY THE STATUTE, AND AT THIS POINT IN THE PROCEEDINGS.

11:11AM 24        THE COURT:  THANK YOU.

11:11AM 25        I RECALL DURING THE HISTORY OF THE CASE THERE WAS AT ONE

11:12AM   1    POINT MR. BALWANI MADE PETITION TO THE COURT TO LEAVE TO GO TO

11:12AM   2    INDIA I THINK TO ATTEND A MEMORIAL SERVICE FOR HIS MOTHER, I

11:12AM   3    BELIEVE.

11:12AM   4              MS. VOLKAR:  RIGHT.

11:12AM   5              THE COURT:  AND ULTIMATELY HE DID NOT GO.

11:12AM   6              MS. VOLKAR:  THAT'S CORRECT.

11:12AM   7              THE COURT:  I THINK HIS -- I DON'T THINK HIS

11:12AM   8    PASSPORT WAS RETURNED TO HIM.  AND HE NOTIFIED PRETRIAL SERVICE

11:12AM   9    AND THE GOVERNMENT AND THE COURT THAT HE DID NOT INTEND TO

11:12AM   10   TRAVEL THERE.

11:12AM   11       HAS ANYTHING TRANSPIRED SINCE THE JURY VERDICT OR

11:12AM   12   SENTENCING?  HAS THE DEFENDANT DONE ANYTHING THAT WOULD SUGGEST

11:12AM   13   THAT THE COURT SHOULD LOOK AT HIM AS A FLIGHT RISK?

11:12AM   14              MS. VOLKAR:  NOT THAT THE GOVERNMENT IS AWARE OF,

11:12AM   15   YOUR HONOR.

11:12AM   16       AGAIN, TO BE VERY CLEAR, HERE WE ARE SIMPLY RELYING ON THE

11:12AM   17   PRESUMPTION FOR BOTH THE FLIGHT RISK AND DANGER.

11:12AM   18              THE COURT:  OKAY.  OKAY.  THANK YOU.

11:12AM   19              MR. DAVIES:  SO, YOUR HONOR, MR. BALWANI HAS BEEN IN

11:12AM   20   THIS COUNTRY FOR 36 YEARS, AND HE'S BEEN A CITIZEN FOR

11:13AM   21   23 YEARS.  AND WHAT I AM HEARING FROM THE GOVERNMENT IS THAT

11:13AM   22   ANY NATURALIZED CITIZEN IS GOING TO BE GOING TO JAIL RIGHT AWAY

11:13AM   23   BECAUSE THE PRESUMPTION THAT THEY'VE IDENTIFIED WOULD APPLY TO

11:13AM   24   I THINK ALMOST ANY NATURALIZED CITIZEN.  OF COURSE THEY'RE

11:13AM   25   GOING TO HAVE FAMILY ABROAD.  OF COURSE THEY'RE GOING TO HAVE

11:13AM 1   TIES HERE AND THERE.  IT'S A VERY BROAD STATEMENT OF A

11:13AM 2   PRESUMPTION, BUT CONGRESS PUT A PRESUMPTION.  IT DIDN'T JUST

11:13AM 3   DENY IT OUTRIGHT.  THERE'S A PRESUMPTION.

11:13AM 4       AND THE CASE THAT THEY CITE, THE KAKKAR CASE, HE IS NOT A

11:13AM 5   CITIZEN AND THERE IS ONGOING FRAUD.  IT'S NOTHING LIKE THIS

11:13AM 6   CASE WHERE WE HAVE A CITIZEN AND WE HAVE NO ONGOING FRAUD.

11:13AM 7       I DON'T THINK I NEED TO SAY ANY MORE.

11:13AM 8           THE COURT:  OKAY.  NO.  THANK YOU.

11:13AM 9       LET ME JUST SAY, I APPRECIATE YOUR -- I THINK YOUR

11:13AM 10  RESPONSE TO THIS STARTED OUT WITH, OR MR. COOPERSMITH'S

11:14AM 11  RESPONSE, SOMETHING ABOUT EVERYONE -- IT'S AN AFFRONT TO ALL

11:14AM 12  AMERICA.  I APPRECIATE THE CONTENT, AND I THINK THAT WAS TAKEN

11:14AM 13  TO SUGGEST THE TENSION TO THE COURT THAT THE COURT SHOULD PAY

11:14AM 14  TO IT.

11:14AM 15      I DON'T, I DON'T RECEIVE THAT AND I HAD HAVEN'T RECEIVED

11:14AM 16  THAT INFORMATION SUGGESTING THAT THE GOVERNMENT'S POSITION IS

11:14AM 17  THAT NATURALIZED CITIZENS SHOULD ALWAYS BE CONSIDERED WITH A

11:14AM 18  DIFFERENT VEIN THAN ANYBODY ELSE.  I DON'T, I DON'T LOOK AT IT

11:14AM 19  THAT WAY.

11:14AM 20          MR. DAVIES:  NATURALIZED WITH SOUTH ASIAN DESCENTS.

11:14AM 21          THE COURT:  YES.  I DON'T SEE IT THAT WAY.  I

11:14AM 22  UNDERSTAND THE ARGUMENT.  AND THERE ARE PEOPLE WHO ARE BORN IN

11:14AM 23  THIS COUNTRY BY BIRTH WHO HAVE RELATIVES IN OTHER COUNTRIES AND

11:14AM 24  PERHAPS POSE THE SAME TYPE OF CONSIDERATIONS.

11:14AM 25      AND THE KAKKAR CASE WAS VERY DIFFERENT AND YOU POINTED

11:14AM 1    THAT OUT AND THE DISTINCTIONS.

11:15AM 2            MR. DAVIES:  AND THE SIMILARITIES, YES.

11:15AM 3            THE COURT:  I'M SORRY?

11:15AM 4            MR. DAVIES:  AND THE SIMILARITIES WITH THE SOUTH

11:15AM 5    ASIAN CONNECTIONS.

11:15AM 6            THE COURT:  WELL, THERE WAS THAT.  BUT WHAT'S

11:15AM 7    DIFFERENT WAS THAT THE DEFENDANT IN THAT CASE ENGAGED, I THINK

11:15AM 8    YOU TOUCHED ON IT, CONTINUED FINANCIAL FRAUD.  HE SHELTERED

11:15AM 9    MONEY.  HE TRIED TO MOVE MONEY AROUND AFTER THE CONVICTION.

11:15AM 10   THAT WAS TROUBLESOME, WASN'T IT?  YES.  SO THERE ARE SOME

11:15AM 11   DISTINCTIONS.

11:15AM 12        I UNDERSTAND YOU'RE SAYING, WELL, THEY BOTH WERE

11:15AM 13   SOUTH ASIAN.  BUT I'M NOT -- I DON'T SEE IT THAT WAY HERE, BUT

11:15AM 14   I APPRECIATE YOU'RE RAISING IT.  IT RAISES AN ISSUE THAT IS

11:15AM 15   IMPORTANT TO YOU, AND I APPRECIATE THAT.

11:15AM 16        (PAUSE IN PROCEEDINGS.)

11:15AM 17           THE COURT:  OKAY.  THOSE ARE ALL OF THE QUESTIONS

11:15AM 18   THAT I HAD ABOUT LIKELIHOOD OF FLIGHT OR DANGER TO THE

11:16AM 19   COMMUNITY.

11:16AM 20        ANYTHING ELSE EITHER PARTY WANTS TO DRAW TO MY ATTENTION?

11:16AM 21           MS. VOLKAR:  NO, YOUR HONOR.

11:16AM 22           MR. DAVIES:  LET ME JUST CHECK.

11:16AM 23        NO.

11:16AM 24           THE COURT:  OKAY.  THANK YOU.  I'M GOING TO TAKE THE

11:16AM 25   MATTER UNDER SUBMISSION.  THANK YOU.

11:16AM 1      I THINK THE PARTIES ARE AWARE, I HAVE SET A SURRENDER DATE

11:16AM 2  AND THAT DAY -- I'M NOT GOING TO DISTURB THAT DATE TODAY.  BUT

11:16AM 3  AS YOU KNOW, THE COURT IS TAKING THIS UNDER SUBMISSION.  IT

11:16AM 4  NATURALLY EXTENDS THAT SURRENDER DATE UNTIL YOU GET AN ORDER.

11:16AM 5  I HOPE TO GET SOMETHING OUT TO YOU SHORTLY.

11:16AM 6      BUT LET ME SAY THIS, I AM -- IT SHOULD NOT SURPRISE YOU,

11:16AM 7  OR I HOPE IT DOESN'T SURPRISE YOU, BUT IT MAY BE THAT THE COURT

11:16AM 8  WILL NOT ISSUE ITS ORDER ON RESTITUTION UNTIL THE

11:16AM 9  CO-DEFENDANT'S CASE IS HEARD ON RESTITUTION.  IT MAY BE THAT

11:16AM 10 THAT'S WHAT I'M GOING TO DO ON THAT ISSUE.  AND THAT REMAIN

11:16AM 11 UNDER SUBMISSION.  SO I JUST WANT TO GIVE YOU FULL TRANSPARENCY

11:17AM 12 ON THAT.

11:17AM 13     BUT OTHERWISE THE MOTION IS UNDER SUBMISSION.  THANK YOU

11:17AM 14 FOR YOUR HELP THIS MORNING.  IT IS APPRECIATED.  AND AS ALWAYS,

11:17AM 15 IT'S GOOD TO SEE ALL OF YOU.

11:17AM 16     THANK YOU.  I APPRECIATE IT.

11:17AM 17         MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:17AM 18     (COURT CONCLUDED AT 11:17 A.M.)

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        IRENE RODRIGUEZ, CSR, RMR, CRR
          CERTIFICATE NUMBER 8074
17

18        DATED:  FEBRUARY 20, 2023

19

20

21

22

23

24

25