CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorneys

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 370-9521
    Fax: (415) 436-7234
    Kelly.Volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00258 EJD |
|     Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT ELIZABETH HOLMES' MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(2) |
|     v. | |
| ELIZABETH HOLMES, | |
|     Defendant. | Court: Hon. Edward J. Davila |

1

## **TABLE OF CONTENTS**

2   INTRODUCTION ........................................................................................................1

3   BACKGROUND .........................................................................................................1

4       A.    Offense Conduct ...........................................................................................2

5       B.    Procedural Background..................................................................................3

6   LEGAL STANDARD ..................................................................................................5

7   ARGUMENT ..............................................................................................................8

8       A.    Holmes is Not Eligible for a Sentence Reduction ...........................................9

9       B.    Even if Holmes Were Eligible, this Court Should Not Reduce Her Sentence
             Under the Discretionary 18 U.S.C. § 3553(a) Factors .......................................14

10

11   CONCLUSION...........................................................................................................20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Cases**

4

*Dillon v. United States*,
    560 U.S. 817 (2010)................................................................................................ 5, 6

5

*United States v. Aruda*,
    993 F.3d 797 (9th Cir. 2021) ....................................................................................... 5

6

*United States v. Bentley*,
    No. 22-CR-400, 2024 WL 3796181 (S.D. Tex. Aug. 13, 2024)......................................... 11

7

*United States v. Cheng*,
    No. 21-CR-261 (RA), 2025 WL 573767 (S.D.N.Y. Feb. 21, 2025).................................... 10

8

*United States v. Chiu*,
    No. 23-CR-262 (DLC), 2024 WL 4451829 (S.D.N.Y. Oct. 9, 2024) ................................. 11

9

*United States v. Chung*,
    No. 19-CR-00302-JSW-1, 2024 WL 4609597 (N.D. Cal. Oct. 29, 2024) ........................... 13

10

*United States v. Cifuentes*,
    No. 17-CR-0187 (ES), 2025 WL 1505481 (D.N.J. May 27, 2025)..................................... 12

11

*United States v. Daramola*,
    No. 20-CR-2124-MV, 2024 WL 4241840 (D.N.M. Sept. 19, 2024).................................. 10

12

*United States v. Dunn*,
    728 F.3d 1151 (9th Cir. 2013) ............................................................................ 5, 6, 14

13

*United States v. Elendu*,
    No. 20-CR-179-14, 2024 WL 458643 (S.D.N.Y., 2024)................................................. 20

14

*United States v. Fountain*,
    No. 12-CR-155, 2024 WL 4713837 (E.D. Pa. Nov. 7, 2024)........................................... 19

15

*United States v. George*,
    949 F.3d 1181 (9th Cir. 2020) .............................................................................. 10, 12

16

*United States v. Goffer*,
    721 F.3d 113 (2nd Cir. 2013)...................................................................................... 18

17

*United States v. Gonzalez-Loera*,
    135 F.4th 856 (9th Cir. 2025) .................................................................................... 14

18

*United States v. Gowing*,
    No. 05-CR-782-2, 2024 WL 3607112 (S.D.N.Y. July 30, 2024)...................................... 10

19

*United States v. Hanson*,
    124 F.4th 1013 (6th Cir. 2025) ......................................................................... 9, 10, 12

20

*United States v. Hanson*,
    No. 1:19-CR-089, 2024 WL 2781065 (D.N.D. May 30, 2024)................................... 11, 12

21

*United States v. Holmes*,
    129 F.4th 636 (9th Cir. 2025) ............................................................................. *passim*

22

*United States v. Marmol*,
    No. 24-11992, 2025 WL 262308 (11th Cir. Jan. 22, 2025)............................................. 19

23

*United States v. Musgrave*,
    761 F.3d 602 (6th Cir. 2014) ..................................................................................... 18

24

*United States v. Ndukwe*,
    No. 21-CR-700-1 (DLC), 2024 WL 3498595 (S.D.N.Y. July 22, 2024) ....................... 11, 19

25

26

27

28

*United States v. Pagartanis,*
    No. 18-CR-00374 (JMA), 2024 WL 2111544 (E.D.N.Y. May 10, 2024)................................... 11

*United States v. Pioch,*
    No. 3:14-CR-00403-01, 2024 WL 2020296 (N.D. Ohio May 7, 2024) ................................ 13

*United States v. Reid,*
    No. 17-CR-2897-WQH, 2024 WL 4479872 (S.D. Cal. Oct. 11, 2024) ................................ 10

*United States v. Riley,*
    No. 21-CR-00004-BLF, 2024 WL 3187197 (N.D. Cal. June 26, 2024) ................................ 20

*United States v. Rudden,*
    No. 18-CR-00508-PAB, 2025 WL 1114640 (D. Colo. Apr. 15, 2025)................................ 13

*United States v. Spitzer,*
    No. 10 CR 651-1, 2025 WL 81348 (N.D. Ill. Jan. 13, 2025) ............................................. 13

*United States v. Stites,*
    No. 22-20020-01-DDC, 2024 WL 3535120 (D. Kan. July 24, 2024) ........................... 13, 20

*United States v. Weiss,*
    No. 20-CR-163, 2024 WL 3623510 (E.D. Pa. Aug. 1, 2024)............................................. 19

*United States v. Zogheib,*
    No. 2:16-CR-00057-JAD-VCF, 2024 WL 3202975 (D. Nev. June 26, 2024) ................... 13

**Statutes**

18 U.S.C. § 3553.................................................................................................................... *passim*
18 U.S.C. § 3582.................................................................................................................... *passim*
21 U.S.C. § 848............................................................................................................................. 7
28 U.S.C. § 994(o) ....................................................................................................................... 5

**Rules**

U.S.S.G. § 1B1.10................................................................................................................... 5, 6
U.S.S.G. § 2B1.1.................................................................................................................... *passim*
U.S.S.G. § 3B1.1................................................................................................................... 7, 14
U.S.S.G. § 4A1.1 ........................................................................................................................ 6
U.S.S.G. § 4C1.1 .................................................................................................................. *passim*

# INTRODUCTION

The government opposes Defendant Elizabeth Holmes' Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2).  *See* ECF No. 1793 ("Motion").  Holmes asserts she is entitled to a two-level retroactive offense level reduction—and an associated 27-month sentence reduction—because the Court did not find any one victim to have suffered substantial financial hardship at sentencing, because Holmes has availed herself of programming while incarcerated, and because she "is highly unlikely to reoffend."  *Id.*  Holmes' Motion ignores that her scheme defrauded more than 30 investors out of more than $800 million, with this Court finding and the Court of Appeals for the Ninth Circuit affirming a restitution order to 12 of those victims for more than $452 million.  As such, Holmes personally caused substantial financial hardship, rendering her ineligible for a sentence reduction.

Moreover, the Court's original 135-month sentence appropriately balanced the sentencing factors of 18 U.S.C. § 3553(a), and Holmes does not warrant a re-balancing of those factors now, having served less than 20% of her recently imposed sentence.  The Court's sentence appropriately accounted for the magnitude of the harm Holmes caused with her then-romantic partner and coconspirator, the impact on Silicon Valley and similar innovative communities, and the importance of general deterrence in white collar fraud cases.  Since sentencing, Holmes has courted the media once more to repeat her intention to continue working on technology in the health care field, and has demonstrated that she has the interest and opportunity to commit a similar scheme in the future despite the widespread publicity of her conviction.  When these factors are coupled with her ongoing lack of acceptance of responsibility, Holmes presents a dangerous combination ripe for recidivism.  Most troubling, Holmes' current romantic partner has been reportedly seeking investments in a health testing diagnostics company that bears eerie similarities to Theranos and marketing materials that Holmes provided to her investor-victims.  This Court should deny Holmes' Motion.

# BACKGROUND

Because the Court is familiar with the facts of this case, having sat through two trials spanning nearly a year, and the government has described Holmes' conduct in detail elsewhere (*see, e.g.*, ECF Nos. 1395, 1486, 1649, 1721), the government has included below only a brief summary of the Defendant's offense conduct and the procedural background as relevant for the instant Motion.

## A.    Offense Conduct

Holmes and her co-Defendant, and then-romantic partner, Ramesh "Sunny" Balwani fraudulently secured over $800 million in investments from dozens of investors in the company that Holmes originally founded in 2003, Theranos.  ECF No. 1686, Final Presentence Investigation Report ("PSR") ¶¶ 10–11, 47.  Holmes famously claimed that "one tiny drop changes everything" and that she would "revolutionize medical laboratory testing[.]"  *United States v. Holmes*, 129 F.4th 636, 644 (9th Cir. 2025) (internal quotation and alteration omitted).  Specifically, Holmes and Balwani falsely claimed Theranos had manufactured one single, proprietary blood analyzer device (the Edison, minilab, TSPU, etc.) that could run any blood test that was run by conventional labs, all from a blood sample drawn via a fingerstick rather than the traditional draw from a vein, with higher accuracy and less variability than traditional methods, due in part to its more automated process that reduced human error inherent in running blood tests in a laboratory.  *See* PSR ¶¶ 14–16.  To support her bold claims, Holmes repeatedly told potential investors that Theranos' technology had been comprehensively validated by multiple major pharmaceutical companies, and was being used in the battlefield by the U.S. military to treat wounded soldiers.  *See Holmes*, 129 F.4th at 647.  Holmes and Balwani also falsely asserted that Theranos was a profitable company and had a healthy ongoing relationship with retail pharmacy Walgreens, through which Theranos provided blood tests to real patients beginning in September 2013.  *See* PSR ¶¶ 38–40.  Holmes and Balwani presented this information to investors orally and through written materials.  *See* ECF No. 1395 at 20–22 (providing Trial Transcript citations).  "Investors, health care professionals and companies, and Silicon Valley spectators were captivated by the potential of Theranos's revolutionary technology."  *Holmes*, 129 F.4th at 644.

"But the vision sold by Holmes and Balwani was nothing more than a mirage."  *Id.*  In truth, former Theranos scientists confirmed that Theranos' proprietary device could never complete more than 12 types of blood tests, often with less accuracy, less automation, and less consistency than traditional "predicate" machines manufactured by third-party companies.  *See* ECF No. 1395 at 17–23 (providing Trial Transcript citations).  Pharmaceutical companies did not validate Theranos' device, and the military never used it to treat soldiers as claimed.  *See Holmes*, 129 F.4th at 647.  Indeed, Holmes admitted while testifying that she had altered and enhanced reports purportedly authored by

pharmaceutical companies and then subsequently provided those reports to investors. *See* PSR ¶ 37; ECF No. 1395 at 12 & n.3 (providing Trial Transcript citations). Theranos had zero revenue in 2012 and 2013 and was not profitable. *See Holmes*, 129 F.4th at 646. Holmes and Balwani hid the shortcomings of Theranos' proprietary device by surreptitiously using third-party machines to fulfill the majority of Theranos' blood test menu offered to patients in Walgreens. *See Holmes*, 129 F.4th at 646. Meanwhile, Theranos' relationship with Walgreens was faltering because Theranos too frequently resorted to traditional venous draws. *See id.* at 647. None of this information was shared with investors.

Real patients paid the price: at trial, one patient-victim testified that Theranos blood test results informed her that she had miscarried when, in fact, she carried a viable pregnancy; another patient-victim testified Theranos blood test results inaccurately informed her that she was HIV positive; and yet another patient-victim testified that he was incorrectly informed that he might have prostate cancer. *See* PSR ¶¶ 48–54; *see also Holmes*, 129 F.4th at 647–48.

## B.    Procedural Background

On July 28, 2020, the government filed the Third Superseding Indictment, charging Holmes and Balwani with ten counts of wire fraud (Counts 3-12) and two counts of conspiracy to commit wire fraud (Counts 1-2). ECF No. 469. The Court severed the case in March 2020. ECF No. 362. Beginning on August 31, 2021, Holmes' trial spanned four months, during which over 900 exhibits were admitted and 32 witnesses testified. *See* ECF Nos. 1256–1306, 1324. On January 3, 2022, the jury found Holmes guilty of four counts charging conspiracy to commit wire fraud during the period 2010 to 2015 and wire fraud against three specific investors in Theranos. ECF No. 1235. The jury did not reach a unanimous verdict with respect to the remaining investor-related counts and acquitted Holmes on the patient-related counts. *Id.* Balwani's separate trial began in March 2022 on the same twelve counts. Following a comparably lengthy trial, the jury found Balwani guilty of all twelve counts. ECF No. 1507.

Following post-trial motions (*see* ECF Nos. 1575, 1607, 1636), the sentencing hearing proceeded in November 2022. ECF No. 1660. The government and the Probation Office both calculated the loss amount as more than $730 million from at least 29 investor-victims—the actual investment loss to all investors (except Walgreens and Safeway) from 2010 to 2015—which resulted in a U.S. Sentencing Guidelines ("Guidelines") range of life imprisonment. ECF No. 1649 at 20–37; PSR ¶¶ 102–113, 169.

1    The government recommended a sentence of 180 months of imprisonment based on the § 3553(a)

2    factors. ECF No. 1649 at 37–46. Holmes asserted that "no loss enhancement should apply" under

3    U.S.S.G. § 2B1.1, that no investors qualified as victims let alone ten of them for purposes of U.S.S.G.

4    § 2B1.1(b)(2), and suggested that her Guidelines range should have been "12–18 months." ECF No.

5    1641 at 1–3, 35–47. Holmes recommended a sentence of home confinement with community service

6    rather than a term of imprisonment. *Id.*

7        On November 18, 2022, the Court found that the offense involved at least ten or more victims,

8    triggering a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i), and that a reasonable loss

9    estimate for purposes of sentencing was more than $120 million. ECF Nos. 1660, 1712. The Court

10   rejected the government's request to apply additional enhancements for reckless risk of death or serious

11   bodily injury, and for an aggravating role adjustment with Holmes as the leader or organizer. ECF No.

12   1712 at 17–20. The Court rejected Holmes' request for a downward adjustment for acceptance of

13   responsibility. *Id.* at 20–21. As a result, the Court calculated a total adjusted offense level of 33, which

14   at Criminal History Category I, yielded a Guidelines range of 135–168 months of imprisonment. *Id.* at

15   21–22. In evaluating the 18 U.S.C. § 3553(a) sentencing factors, the Court remarked, "[t]his is a fraud

16   case where an exciting venture went forward with great expectations and hope only to be dashed by

17   untruth, misrepresentations, hubris, and plain lies." 11/18/2022 Sentencing Transcript at 127–33. This

18   fraud scheme was particularly damaging, the Court observed, because "honesty in the market" is "the

19   foundation of innovation and investment" in Silicon Valley. *Id.* The Court sentenced Holmes to

20   135 months of imprisonment, at the low-end of the advisory Guidelines range, to be followed by three

21   years of supervised release. ECF Nos. 1660, 1712. Shortly thereafter, the Court made similar findings

22   for the Guidelines calculation for Balwani and sentenced him to 155 months of imprisonment. ECF

23   Nos. 1682, 1730.

24       In spring 2023, Holmes and Balwani separately sought release pending appeal. ECF Nos. 1676,

25   1711. This Court denied their requests, and two separate panels of the Ninth Circuit affirmed. ECF

26   Nos. 1743, 1755, 1757; *see also United States v. Holmes*, No. 22-10312, Dkt. 52 (filed May 16, 2023).

27   Holmes began serving her sentence on May 30, 2023. *See* ECF No. 1762. Contemporaneously, Holmes

28   and Balwani challenged the government's request seeking more than $800 million in restitution. ECF

Nos. 1726, 1727, 1728, 1735, 1741, 1749.  After a hearing, this Court issued a written order finding that Holmes and Balwani jointly owed $452,047,268 in restitution to the ten investor-victims identified at sentencing, in addition to Walgreens and Safeway, for a total of 12 investor-victims.  ECF No. 1760. Holmes and Balwani separately appealed, challenging their respective convictions, sentences, and the joint restitution order.  ECF Nos. 1670, 1702, 1720, 1763, 1772, 1773.

On February 24, 2025, the Ninth Circuit affirmed the jury's convictions of Holmes and Balwani, this Court's sentence for each defendant—including the enhancement for ten or more victims and the overall Guidelines calculation—and this Court's joint restitution order.  *See United States v. Holmes*, 129 F.4th 636 (9th Cir. 2025).  Holmes filed a petition for panel rehearing and rehearing *en banc*, which the Ninth Circuit denied.  *See United States v. Holmes*, No. 22-10312, Dkt. 107 (filed May 8, 2025).

On June 18, 2025, nearly two years after the Sentencing Commission enacted the relevant amendments, Holmes now moves the Court to reduce her sentence by 27 months pursuant to 18 U.S.C. § 3582(c)(2).  ECF No. 1793.  For the reasons stated below, this Court should decline her invitation.

In addition, the government filed an Administrative Motion to Correct the Judgment in June 2023, which Holmes opposed, and which is still pending before this Court.  ECF No. 1770.

## LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)); *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).  There is a limited exception to this rule for certain defendants who have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)[.]"  18 U.S.C. § 3582(c)(2).  The Supreme Court emphasized that § 3582(c)(2) provides only "a narrow exception to the rule of finality[.]"  *Dillon*, 560 U.S. at 827.

A reduction pursuant to § 3582(c)(2) entails "a two-step inquiry."  *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (citing *Dillon*, 560 U.S. at 827).  "First, a district court must determine whether a prisoner is eligible for a sentence [reduction] under the Commission's policy statement in U.S.S.G. § 1B1.10."  *Id.* (citing *Dillon*, 560 U.S. at 826–27).  This first step is called "the eligibility prong[.]"  *Id.* at 1157.  The eligibility prong requires the calculation of the amended

1   Guidelines range that would have been applicable had the relevant amendment been in effect at the time

2   of the initial sentencing by substituting in only the amended Guidelines provision and instructs that

3   courts "shall leave all other [G]uidelines application decisions unaffected." *Dillon*, 560 U.S. at 827

4   (quoting U.S.S.G. § 1B1.10(b)(1)).  "Second, a district court must 'consider any applicable § 3553(a)

5   factors and determine whether, in its discretion, the reduction authorized by reference to the policies

6   relevant at step one is warranted in whole or in part under the particular circumstances of the case.'"

7   *Dunn*, 728 F.3d at 1155 (quoting *Dillon*, 560 U.S. at 827).  This second step is called "the discretionary

8   prong[.]"  *Id.* at 1157.

9           On November 1, 2023, the Sentencing Commission amended the Sentencing Guidelines with

10   Amendment 821.  *See* U.S.S.G. supp. app. C, amend. 821 (Nov. 2023), *available at*

11   https://www.ussc.gov/guidelines/amendment/821.  Part A of Amendment 821 altered a provision in the

12   Guidelines (U.S.S.G. § 4A1.1) that added criminal history points, commonly known as "status points,"

13   for offenders who committed their offense while subject to a criminal justice sentence.  *Id.*  Part B of

14   Amendment 821 created a new section of the Guidelines, U.S.S.G. § 4C1.1, that provides for a reduction

15   for "Zero-Point Offenders."  *Id.*  In particular, Subpart 1 provides a two-level reduction of total offense

16   level for certain eligible defendants, as described further below.  *Id.*  The Sentencing Commission

17   decreed that Part A and Part B, Subpart 1, of Amendment 821 would apply retroactively to qualifying

18   defendants.  *See* U.S.S.G. § 1B1.10(d) (Nov. 1, 2023).

19           The newly added U.S.S.G. § 4C1.1 for "Zero-Point Offenders" states:  "If the defendant meets

20   all of the following criteria . . . decrease the offense level determined under Chapters Two and Three by

21   2 levels."  U.S.S.G. § 4C1.1(a).  The criteria are as follows:

22           (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

23           (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

24           (3) the defendant did not use violence or credible threats of violence in connection with the

25   offense;

26           (4) the offense did not result in death or serious bodily injury;

27           (5) the instant offense of conviction is not a sex offense;

28

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense);

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and

(11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848[.]

*Id.*

Furthermore, "[i]n determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1 (Theft, Property Destruction, and Fraud)." U.S.S.G. § 4C1.1(b)(3). These non-exhaustive factors include whether the offense at issue involved victims:

(i) becoming insolvent;

(ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);

(iii) suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi) suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1(b)(2) cmt. app. n.4(F). However, the commentary to U.S.S.G. § 4C1.1 states that "[t]he application of subsection (a)(6) is to be determined independently of the application of subsection (b)(2) of § 2B1.1 (Theft, Property Destruction, and Fraud)." U.S.S.G. § 4C1.1 cmt. app. n.1.

The 18 U.S.C. § 3553(a) factors that district courts must consider in determining under the discretionary prong whether a sentence reduction is warranted include:  (i) the nature and circumstances of the offense and the history and characteristics of the defendant, (ii) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (iii) the Sentencing Guidelines and related Sentencing Commission policy statements, (iv) the need to avoid unwarranted sentence disparities among similarly-situated defendants, and (v) the need to provide restitution to the victims of the crime.

The Sentencing Commission's stated purpose for adding the "Zero-Point Offender" reduction is tied to lower risks of recidivism for defendants who do not previously have any criminal history and "whose instant offense did not involve specified aggravating factors[.]"  *See* U.S.S.G. supp. app. C, amend. 821 (Nov. 2023), *available at* https://www.ussc.gov/guidelines/amendment/821.  The Sentencing Commission made the provision retroactive, in part, in recognition that courts already "generally depart[ed] and var[ied] downward] more often in cases involving individuals with zero criminal history points as compared with other individuals" and noted that it expected the average reduction to be approximately 15 months.  *See* U.S.S.G. supp. app. C, amend. 821, at p.2 (Aug. 31, 2023), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf.

## ARGUMENT

Holmes is not eligible under the plain language of U.S.S.G. § 4C1.1, nor do the policy considerations support a reduction of her sentence, given the Court imposed—and the Ninth Circuit affirmed—a restitution order memorializing more than $452 million in losses by at least a dozen victims of her crime.  In any event, the Court knew Holmes had no prior criminal history at sentencing, took it into account, and appropriately balanced the § 3553(a) factors in imposing a sentence of 135 months of imprisonment.  Nothing presented in Holmes' Motion justifies departing from the Court's original sentencing decision, which was also recently affirmed by the Ninth Circuit on direct appeal.

A.    **Holmes is Not Eligible for a Sentence Reduction**

Holmes asserts in cursory fashion that she is eligible at step one for a sentencing reduction.  Mot. at 4.  The parties agree that Holmes has zero criminal history points.  *See* PSR ¶¶ 115–21.  But Holmes "personally cause[d] substantial financial hardship" which renders her ineligible under U.S.S.G. § 4C1.1(a)(6).  This Court found and the Ninth Circuit affirmed that Holmes directly caused a loss to 12 investor-victims of $452,047,268, which by itself should disqualify Holmes from a sentencing reduction.  *See Holmes*, 129 F.4th at 664–67.

The plain language of U.S.S.G. § 4C1.1 supports this conclusion.  Holmes asserts that she is eligible simply because "[s]he did not receive an adjustment for causing substantial financial hardship" under § 2B1.1(b)(2).  Mot. at 4.  This assumption is incorrect.  The Sentencing Commission explicitly stated that application of U.S.S.G. § 4C1.1(a)(6) "is to be determined independently of" U.S.S.G. § 2B1.1(b)(2).  U.S.S.G. § 4C1.1 cmt. app. n.1.  And the Sentencing Commission defined "substantial financial hardship" by referencing, "*among other things*," the "non-exhaustive list of factors" used for the enhancement in § 2B1.1(b)(2).  U.S.S.G. § 4C1.1(b)(3) (emphasis added).

The Sixth Circuit recognized that § 4C1.1(a)(6) sweeps more broadly, holding, "as a matter of law, [that] courts are not strictly limited to considering the enumerated factors under U.S.S.G § 2B1.1 n.4(F) when determining whether a defendant caused substantial financial hardship." *United States v. Hanson*, 124 F.4th 1013, 1017 (6th Cir. 2025).  In *Hanson*, the Sixth Circuit affirmed a district court's denial of a sentence reduction, finding the defendant ineligible under § 4C1.1(a)(6) where he defrauded 30 people out of more than $1.2 million.  *Id.*  Specifically, the Sixth Circuit rejected challenges to the district court's holding that the defendant was ineligible because he caused substantial financial harm in the aggregate to multiple victims, without making individualized findings.  *Id.* at 1015, 1017.  In reaching its holding, the Sixth Circuit noted that, based on the plain language of § 4C1.1, "Application Note 4(F) does not describe every type of substantial financial hardship" that renders a defendant ineligible under § 4C1.1(a)(6) but rather "provides a list of exemplars from which we may extrapolate analogous conduct."  *Id.* at 1017.  As such, the Sixth Circuit acknowledged that district courts have found defendants ineligible "in a range of cases where the number of victims or the amount stolen was high."  *Id.* (collecting cases).  The Sixth Circuit concluded that "[g]iven the number of victims and

1  amount defrauded, the district court reasonably concluded that the financial hardship was substantial."

2  *Id.* at 1018.

3        While the Ninth Circuit has not yet interpreted the meaning of "personally cause substantial

4  financial hardship" in U.S.S.G. § 4C1.1(a)(6), it has interpreted a similar phrase "substantial financial

5  hardship" in § 2B1.1(b)(2) to require "the sentencing court to determine whether the victims suffered a

6  loss that was significant in light of their individual financial circumstances." *United States v. George*,

7  949 F.3d 1181, 1184 (9th Cir. 2020) (finding that losses ranging from $1,000 to $3,000, which might not

8  be substantial for some victims, constituted substantial financial loss under U.S.S.G. § 2B1.1(b)(2)(C)

9  given the impact on the victims).  However, § 2B1.1(b)(2) focuses more on the impact on a particular

10 victim, whereas § 4C1.1(a)(6) focuses on the harm the defendant has personally caused writ large and

11 does not directly connect "to a victim." *Compare* U.S.S.G. § 4C1.1(a)(6) ("the defendant did not

12 personally cause substantial financial hardship"), *with* U.S.S.G. § 2B1.1(b)(2)(A)(iii) ("If the offense . . .

13 resulted in substantial financial hardship to one or more victims"); *accord United States v. Daramola*,

14 No. 20-CR-2124-MV, 2024 WL 4241840, at *5–7 (D.N.M. Sept. 19, 2024) (finding middleman in fraud

15 conspiracy did not personally cause substantial financial hardship to victim, but defendants "who

16 directly defraud or otherwise convince a victim to part with their funds" would meet the definition).

17 In short, because the plain text of § 4C1.1(a)(6) is more culpability-focused, it makes sense to consider

18 whether the defendant caused substantial financial hardship *in the aggregate*—not just individual victim

19 by individual victim.  *Accord Hanson*, 124 F.4th at 1017–18.

20        Other district courts have adopted this broader reading of § 4C1.1(a)(6).  For example, courts

21 have held that, for purposes of § 4C1.1(a)(6), "[s]ubstantial financial hardship might also be present

22 where the number of victims is high, the amount lost is high, or the victims are particularly vulnerable."

23 *United States v. Gowing*, No. 05-CR-782-2, 2024 WL 3607112, at *2 (S.D.N.Y. July 30, 2024) (denying

24 § 3582(c)(2) reduction where defendant defrauded at least 200 people out of $15.6 million); *see*, *e.g.*,

25 *United States v. Cheng*, No. 21-CR-261 (RA), 2025 WL 573767, at *2–3 (S.D.N.Y. Feb. 21, 2025)

26 (denying § 3582(c)(2) reduction where defendant defrauded at least 46 individuals or companies out of

27 $800,000 and fraudulently procured $2.8 million from the government in COVID loans); *United States*

28 *v. Reid*, No. 17-CR-2897-WQH, 2024 WL 4479872, at *1 (S.D. Cal. Oct. 11, 2024) (denying

§ 3582(c)(2) reduction in part because defendant defrauded 10 victims out of over $43 million); *United States v. Chiu*, No. 23-CR-262 (DLC), 2024 WL 4451829, at *1 (S.D.N.Y. Oct. 9, 2024) (denying § 3582(c)(2) reduction in part because defendant defrauded at least 6 clients out of $2.4 million); *United States v. Bentley*, No. 22-CR-400, 2024 WL 3796181, at *1 (S.D. Tex. Aug. 13, 2024) (denying § 3582(c)(2) reduction in part because defendant defrauded 49 investors out of nearly $15 million); *United States v. Hanson*, No. 1:19-CR-089, 2024 WL 2781065, at *5 (D.N.D. May 30, 2024) (denying § 3582(c)(2) reduction where defendant defrauded at least 60 people out of $11 million in part because "[a]n $11 million loss is clearly substantial"); *United States v. Pagartanis*, No. 18-CR-00374 (JMA), 2024 WL 2111544, at *2 (E.D.N.Y. May 10, 2024) (denying § 3582(c)(2) reduction in part because defendant defrauded at least 12 elderly women out of over $13 million); *accord United States v. Ndukwe*, No. 21-CR-700-1 (DLC), 2024 WL 3498595, at *2 (S.D.N.Y. July 22, 2024) (debating whether defendant was ineligible where he personally caused Medicaid to suffer a "severe" loss of $7 million, which also compromised the integrity of its mission, but ultimately denying § 3582(c)(2) reduction on discretionary grounds).

Given that courts have found loss amounts in the tens of millions of dollars to trigger application of U.S.S.G. § 4C1.1(a)(6)—even where an enhancement under § 2B1.1(b)(2) was not applied at sentencing—this Court should find that Holmes causing more than $452 million in aggregate loss to 12 investor-victims alone makes her ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).

Furthermore, while the Sentencing Commission took great pains to ensure that § 4C1.1(a)(6) was not interpreted as coextensive with § 2B1.1(b)(2), it bears noting that this Court found an enhancement warranted for Holmes under § 2B1.1(b)(2) and the Ninth Circuit agreed. *See Holmes*, 129 F.4th at 664. There are multiple subparts of § 2B1.1(b)(2), one of which the Court found applied here, namely "[i]f the offense . . . involved 10 or more victims . . . increase by 2 levels[.]" U.S.S.G. § 2B1.1(b)(2)(A)(i). Other subparts focus on whether the offense "resulted in substantial financial hardship" and, if so as "to one or more victims, increase by 2 levels" (U.S.S.G. § 2B1.1(b)(2)(A)(iii)), but if as "to five or more victims, increase by 4 levels" (U.S.S.G. § 2B1.1(b)(2)(B)), or if as "to 25 or more victims, increase by 6 levels" ((U.S.S.G. § 2B1.1(b)(2)(C)). Thus, while the Court did not apply the enhancement that included the "substantial financial hardship" language in § 2B1.1(b)(2)(A)(iii), it did apply an

1   enhancement that the Sentencing Commission considers equivalent.  Specifically, the Court applied an

2   enhancement under § 2B1.1(b)(2)(A) for ten or more victims (and the Ninth Circuit affirmed), which the

3   Guidelines treat as equivalent to one or more victims who have suffered substantial financial hardship.

4   This provides strong indication that—even if the Court did not previously find Holmes caused personal

5   financial hardship to her victims individually—the Sentencing Commission expected fraudsters that

6   warranted enhancements under § 2B1.1(b)(2) to be ineligible for the zero-point offender sentence

7   reduction under U.S.S.G. § 4C1.1(a)(6).  *Accord Hanson*, 2024 WL 2781065, at \*4–5 (rejecting

8   defendant's argument that he did not cause substantial financial hardship because he did not receive an

9   enhancement under § 2B1.1(b)(2)(A)(iii), but rather under § 2B1.1(b)(2)(A)(i) for ten or more victims);

10  *United States v. Cifuentes*, No. 17-CR-0187 (ES), 2025 WL 1505481, at \*4 (D.N.J. May 27, 2025)

11  (noting that the § 2B1.1(b)(2)(A) "enhancement demands an either/or application" and the government

12  arguing for one application at sentencing did not render the other inapplicable for § 3582(c)(2) motion).

13          The victim impact statements provided under seal to the Court at sentencing further support the

14  conclusion that Holmes is ineligible for a sentence reduction.  *See also* PSR ¶¶ 93–96.  While most of

15  the non-exhaustive factors do not apply to the twelve identified investor-victims in this case, many of

16  those investor-victims emphasized in their impact statements that they "suffer[ed] substantial loss of . . .

17  investment fund(s)" that they would have invested in other ventures.  U.S.S.G. § 2B1.1(b)(2) cmt. app.

18  n.4(F)(iii).  The victim impact statements also discuss the reputational harm some victims suffered, as

19  well as the significant emotional stress and anxiety caused to employees and individual victims, as a

20  result of connection to this case.  In addition, the government notified the investor-victims about

21  Holmes' Motion, and, in response, one investor-victim informed the government that he lost nearly 15%

22  of his personal net worth at the time, which was substantial to him and caused a lot of psychological

23  damage and stress because it was one of the largest investments he had made.  Declaration of Kelly

24  I. Volkar in support of United States Opposition to Defendant's Motion for Sentence Reduction

25  ("Volkar Decl.") ¶ 2.  The Ninth Circuit defined "substantial" as "'considerable' or 'to a large degree.'"

26  *George*, 949 F.3d at 1184–85 (quotation omitted).  Even if the victims here were fortunate enough not to

27  face financial ruin as a result of Holmes' fraudulent scheme, that does not mean their losses were not

28  substantial.  *See, e.g.*, *Hanson*, 124 F.4th at 1017 ("The financial hardship that Hanson caused to his

1  victims need not fall perfectly within the factors in the application note to be considered substantial."

2  (internal quotation omitted)); *United States v. Stites*, No. 22-20020-01-DDC, 2024 WL 3535120, at *2–3

3  (D. Kan. July 24, 2024) (denying § 3582(c)(2) reduction where defendant embezzled $700,000 from her

4  employer, a bank, and noting that the non-exhaustive factors do not "align perfectly" when the victim is

5  an organization).

6        Other district courts, including in this District, have acknowledged high loss amounts in addition

7  to specific impact on certain victims in denying a sentence reduction under 18 U.S.C. § 3582(c)(2).  *See*,

8  *e.g.*, *United States v. Rudden*, No. 18-CR-00508-PAB, 2025 WL 1114640, at *3 (D. Colo. Apr. 15,

9  2025) (denying § 3582(c)(2) reduction where defendant defrauded at least 30 investor-victims out of

10  nearly $20 million in addition to certain victims experiencing individualized financial hardship); *United*

11  *States v. Spitzer*, No. 10 CR 651-1, 2025 WL 81348, at *3 (N.D. Ill. Jan. 13, 2025) (denying

12  § 3582(c)(2) reduction where defendant defrauded more than 250 investors out of nearly $34 million,

13  causing some victims to face financial ruin); *United States v. Chung*, No. 19-CR-00302-JSW-1, 2024

14  WL 4609597, at *3 (N.D. Cal. Oct. 29, 2024) (denying § 3582(c)(2) reduction where defendant

15  defrauded at least 400 victims out of $60 million in addition to certain victims experiencing

16  individualized financial hardship, even though the defendant, like Holmes, took as many classes and

17  programs as offered while in prison and "demonstrate[ed] model inmate behavior"); *United States v.*

18  *Zogheib*, No. 2:16-CR-00057-JAD-VCF, 2024 WL 3202975, at *10 (D. Nev. June 26, 2024) (finding

19  that the defendant "plainly" caused substantial financial hardship in executing a one-million-dollar fraud

20  scheme); *United States v. Pioch*, No. 3:14-CR-00403-01, 2024 WL 2020296, at *1 (N.D. Ohio May 7,

21  2024) (denying § 3582(c)(2) reduction where defendant defrauded one 20-year-old victim out of roughly

22  $2 million in inheritance that he could have used for educational advancement).

23        In sum, contrary to Holmes' assertion that she is the type of defendant the Sentencing

24  Commission intended to benefit (Mot. at 4–6), Holmes is ineligible for a sentence reduction because she

25  personally orchestrated a fraud scheme that caused dozens of investors to invest over $800 million in the

26  company she founded, Theranos, based on false misrepresentations.  This Court found—and the Ninth

27  Circuit affirmed—that she warranted an enhancement for defrauding more than ten victims and that she

28  owed restitution of more than $452 million to 12 investor-victims.  *See Holmes*, 129 F.4th at 664–67.

This is the type of offense with "aggravating factors" that the Sentencing Commission sought to exclude from receiving the sentence reduction benefit for zero-point offenders. *See* U.S.S.G. supp. app. C, amend. 821 (Nov. 2023), *available at* https://www.ussc.gov/guidelines/amendment/821. Indeed, it bears noting that the government sought an enhancement for the risk of death or serious bodily injury, under U.S.S.G. § 2B1.1(b)(16)(A), which would have automatically precluded Holmes' eligibility under U.S.S.G. § 4C1.1(a)(4), but this Court declined to apply that enhancement. ECF No. 1712 at 17–19. Furthermore, the government sought, and the Probation Office recommended, applying an aggravating role enhancement under U.S.S.G. § 3B1.1(a), which also would have automatically precluded Holmes from being eligible for this sentence reduction. PSR ¶ 109; ECF No. 1649 at 31–35; *cf. United States v. Gonzalez-Loera*, 135 F.4th 856, 857 (9th Cir. 2025) (affirming denial of § 3582(c)(2) sentence reduction because defendant received an adjustment under § 3B1.1). The Court declined to apply the enhancement under § 3B1.1(a) because it found the evidence showed that Holmes and Balwani "acted as co-equals." ECF No. 1712 at 19–20.

### B. Even if Holmes Were Eligible, this Court Should Not Reduce Her Sentence Under the Discretionary 18 U.S.C. § 3553(a) Factors

As described in the prior section, Holmes is ineligible at step one for a sentence reduction under 18 U.S.C. § 3582(c)(2) and the inquiry could end there. However, the discretionary prong at step two provides a separate and independent basis to deny Holmes' Motion. *See Dunn*, 728 F.3d at 1155, 1157–60 (affirming denial of 17-month sentence reduction for eligible defendant despite rehabilitation efforts in prison and an offer to donate his kidney to a family member in need where district court appropriately balanced § 3553(a) factors). The § 3553(a) factors counsel strongly against a sentence reduction in this case. Beyond the magnitude and nature of the crime itself, the deterrent effect of the Court's sentence, and other factors discussed further below and considered at sentencing, Holmes has still not accepted responsibility, has paid minimal restitution, and has the opportunity to reoffend. The Court should reaffirm its original balancing of the § 3553(a) factors—which was affirmed on direct appeal by the Ninth Circuit—and leave undisturbed the Court's previously imposed sentence of 135 months as an appropriate sentence for Holmes.

1    Holmes in her Motion asserts that she presents a "low risk of recidivism" and "no risk to public

2    safety[,]" and boldly asserts she "is highly unlikely to reoffend."  Mot. at 4–8.  But, since sentencing,

3    Holmes has demonstrated her intention to continue working in the same field as before—which she is

4    not prohibited from doing—and that she is in a unique position to possibly perpetuate a similar scheme

5    in the future.  When coupled with her continued refusal to accept responsibility for the crime she has

6    already committed, her circumstances present a dangerous combination ripe for recidivism.

7    Furthermore, Holmes has made minimal restitution payments to her victims.  One victim queried why

8    Holmes is permitted to continue paying for legal services that benefit her, such as filing this present

9    Motion to reduce her prison sentence, when the victims have only received a small fraction of the

10   amount owed to them.  *See* 18 U.S.C. § 3553(a)(7).

11   As the government noted at sentencing, Holmes did not overcome obstacles or come from a

12   background of economic need that drove her crimes (*see* 18 U.S.C. § 3553(a)(1)); Holmes came from a

13   background that provided considerable support, but nonetheless brazenly lied and duped more than

14   30 sophisticated individuals and entities to invest more than $800 million.  She did so by playing on her

15   purported altruism in wanting to revolutionize health care and on patriotic feelings for the U.S. military.

16   ECF No. 1649 at 37–46; *see* 18 U.S.C. § 3553(a)(1).  Apparently undeterred by the criminal charges in

17   this case, Holmes during her trial testimony stated "not yet" when asked if one of her earlier invention

18   ideas presently existed.  ECF No. 1649 at 42 (citing 12/7/2021 Tr. at 8484).  Holmes told the Probation

19   Office leading up to her sentencing hearing that she continued to work on new patents involving

20   chemistry within the health care space.  PSR ¶¶ 138–139.

21   Since sentencing, Holmes has repeated her desire to continue work akin to what brought her

22   before this Court.  Holmes has again sought out media attention, featuring on the cover of *People*

23   magazine in February 2025 and sitting for a feature article with *The New York Times* in May 2023.

24   Volkar Decl., Exhibits 1–2.  Holmes told *People* that "she's continuing to write patents for new

25   inventions and plans to resume her career in healthcare technology after her release."  *Id.*  Holmes told

26   *The New York Times* that she had ideas for Covid testing, and said:  "I still dream about being able to

27   contribute in that space" and "I still feel the same calling to it as I always did and I still think the need is

28   there."  *Id.*  While Holmes bemoans the significant national media attention she has received—as the

Court likely remembers—Holmes herself regularly sought out media attention while running Theranos, made false statements to the media previously, and then used those false stories in the press to corroborate false statements she made to investors.  ECF No. 1649 at 43–44.

Beyond her stated intentions, Holmes has the opportunity to recidivate.  *The New York Times* reported just last month about Holmes' current romantic partner's new start-up, "Haemanthus, which is a flower also known as the blood lily."  Volkar Decl., Exhibit 3.[1]  In marketing materials provided to potential investors, the company "describes itself as 'the future of diagnostics' and 'a radically new approach to health testing.'"  *Id.*  The company plans to begin testing on animals before progressing to humans—which will make it harder to detect inaccuracies—and provided the below photo to potential investors as a prototype:



The Haemanthus testing device.
Haemanthus

*Id.*  Holmes asserts briefly in a footnote that the media has incorrectly linked her to helping her romantic partner with this new venture (Mot. at 7 n.2), but the striking similarities and "more than a passing physical resemblance" to the Theranos device that Holmes pitched to investors suggest strongly otherwise.  *Id.*; *see also* Volkar Decl., Exhibit 4 (*The Guardian* reported that, "while reportedly being advised by Holmes, Evans has been able to raise almost $20 [million] from friends and other investors").

---

[1]  Holmes has two children with her current romantic partner, Billy Evans.  Holmes gave birth to her first child shortly before her trial began and gave birth to her second child shortly after her sentencing.

1    There is a continuing need for this Court's sentence to deter Holmes from future criminal

2    conduct. *See* 18 U.S.C. § 3553(a)(2)(C). Holmes' settlement with the Securities and Exchange

3    Commission allows her to return as an officer or director in the future. ECF No. 1649 at 41. And, while

4    Holmes reiterates that no one would support her given her infamy (Mot. at 7), many still do. For

5    example, Holmes received over 130 letters of support at her sentencing. ECF No. 1641 at 1. The Court

6    noted that those in support of her likely did not know the full extent of her fraud. 11/18/2022

7    Sentencing Transcript at 131. But at least one investor-victim responded to the government's

8    notification about this Motion asking the Court for leniency despite knowing full well the extent of

9    Holmes' crime. This Court cannot be confident that Holmes has been deterred from future fraud.

10    In addition to Holmes' clearly stated intention to persist in the health care field and the

11    opportunity for her to do so, Holmes has not accepted responsibility for her criminal conduct. ECF No.

12    1712 at 20–21 (denying acceptance of responsibility reduction); *see* PSR ¶¶ 98–99. At sentencing, the

13    Court noted that "Holmes apologized more generally for Theranos and its 'failings,' but did not

14    acknowledge nor accept responsibility for her conduct giving rise to her criminal convictions[.]" ECF

15    No. 1712 at 21. Nothing has changed in the interim:

16    • *People* magazine reported that Holmes "considers her trial and conviction in a San Jose

17        courtroom in 2022 to be a miscarriage of justice." Volkar Decl., Exhibit 2. Holmes is quoted as

18        saying, "I refused to plead guilty to crimes I did not commit. Theranos failed. But failure is not

19        fraud." *Id.*

20    • Holmes has maintained that she is innocent in conversations with *People* and *The New York*

21        *Times*, (Volkar Decl., Exhibits 1–2), and told *People* that she wants "to fight for reform of [the]

22        criminal justice system"—going so far as to draft a handwritten bill "to bolster the presumption

23        of innocence and change criminal procedure." Volkar Decl., Exhibit 2.

24    In short, Holmes' conduct post-sentencing does not support reducing the Court's original 135-month

25    sentence.

26    Moreover, in advance of sentencing, the government recommended a sentence of 180 months of

27    imprisonment, noting in balancing the 18 U.S.C. § 3553(a) factors the magnitude of Holmes' fraud,

28    duping more than 30 sophisticated investors out of more than $800 million (off the charts of the

1   Guidelines), the high-stakes field of medical diagnostics and health care, which one victim noted should

2   not be the place for "Beta test[ing] patients without consent[,]" the lack of mitigating factors in Holmes'

3   upbringing and support network, along with the strong need for general deterrence in white collar cases,

4   in particular.  ECF No. 1649 at 37–46.  The government quoted victim impact statements noting that

5   white collar defendants too often get a "slap on the wrist" rather than paying for the real harm they have

6   caused, and from Hall Group noting specifically that Holmes "prey[ed] upon investors' reverence for

7   our servicemen and servicewomen in the Armed Forces" and that the Court needed to send a message to

8   "unequivocally communicate that there is no justification for or tolerance of fraud in the business

9   world."  *Id.*; *accord United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic

10  and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or

11  opportunity, these crimes are prime candidates for general deterrence." (citation and internal quotation

12  omitted)); *United States v. Goffer*, 721 F.3d 113, 132 (2nd Cir. 2013) (addressing the need for general

13  deterrence for those who might otherwise feel that some white-collar crimes are "game[s] worth

14  playing").  Furthermore, Holmes' crime was not the result of an isolated incident of poor judgment, but

15  rather the culmination of repeated choices over years—and with respect to dozens of investors—to

16  choose fraud over business failure.  Holmes ignored innumerable opportunities to choose a lawful path.

17      Instead, Holmes damaged the trust and integrity that are necessary for innovation in Silicon

18  Valley and other entrepreneurial communities to thrive.  Multiple investor-victims noted in their victim

19  impact statements that, had they not invested in Theranos based on Holmes' and Balwani's fraudulent

20  misrepresentations, they would have invested that money in legitimate, promising technology.  Holmes'

21  scheme not only diverted valuable funding to her fraudulent purposes, but it also has had the ongoing

22  effect of discouraging investments generally in new technologies, as investors reasonably remain

23  skeptical that the next investment pitch is too good to be true.  In short, Holmes' criminal activities were

24  serious, extended, and extremely damaging.

25      The Court's sentence of 135 months of imprisonment appropriately balances all of the above

26  aggravating factors with the fact that Holmes did not previously commit a crime.  As shown in the

27  government's sentencing memorandum, the Court's sentence was well below the average nationwide

28  based on JSIN data and comfortably within the range of sentences handed down in district courts for

other high-profile white-collar fraud cases.  *See* ECF No. 1649 at 43–45; *see* 18 U.S.C. § 3553(a)(6).  There is no basis now under § 3553(a)—under which the Court previously considered Holmes' zero-point offender status—to further reduce her sentence.  Indeed, as the government noted in its sentencing memorandum, general deterrence is achieved through a significant custodial sentence for white collar defendants, but also through the process that is used to arrive at that sentence.

Other courts have considered similar factors in rejecting motions to reduce sentences under § 3582(c)(2) at the discretionary step.  For example, the Eleventh Circuit affirmed such a denial where the defendant gained over $10 million, faced a maximum sentence of life imprisonment but received a low-end Guidelines sentence, and the district court's original sentence was still within the newly applicable range.  *See United States v. Marmol*, No. 24-11992, 2025 WL 262308, at *5 (11th Cir. Jan. 22, 2025).  So too here:  if Holmes were eligible at step one, the Court's original sentence of 135 months would still fall within the newly applicable range (108 to 135 months).  Similarly, one court denied relief at the discretionary step where the defendant "deceived his wealthy clients and was responsible for $7.5 million of client losses that were the subject of restitution" over multiple years, which was "a very serious crime."  *United States v. Weiss*, No. 20-CR-163, 2024 WL 3623510, at *2 (E.D. Pa. Aug. 1, 2024).  And another court found it debatable whether defrauding Medicaid out of $7 million met the eligibility exception under U.S.S.G. § 4C1.1(a)(6) but then denied the sentence reduction under the discretionary prong.  *Ndukwe*, 2024 WL 3498595, at *2; *accord United States v. Fountain*, No. 12-CR-155, 2024 WL 4713837, at *12–13 (E.D. Pa. Nov. 7, 2024) (denying motion to reduce sentence for defendant who defrauded IRS out of more than $2.2 million despite her status as non-violent, first-time, white collar offender because "her crimes warrant the sentence she received" and "the Court remains unconvinced that Defendant would be deterred from committing additional crimes if released").

Indeed, a district court in this District recently denied a motion to reduce the defendant's sentence under 18 U.S.C. § 3582(c)(1)(A) and (c)(2) based on the § 3553(a) factors where—even though that defendant's case also received widespread publicity—the Court was "not persuaded that public attention of her crime suggests a decreased likelihood of recidivism" in part because "being confronted with [her] lies seemed to be no deterrent whatsoever" and thus "the public [ ] continue[s] to be at risk

1    from [her] continued fraud." *United States v. Riley*, No. 21-CR-00004-BLF, 2024 WL 3187197, at *6–8

2    (N.D. Cal. June 26, 2024).  The district court found that her sentence remained appropriate given the

3    high number of victims, the defendant's continued efforts in the same vein as her original fraud scheme,

4    and more than $100,000 in loss.  *Id.*; *accord United States v. Elendu*, No. 20-CR-179-14 (DLC), 2024

5    WL 458643, at *3 (S.D.N.Y. Feb. 6, 2024) (denying reduction motion on § 3553(a) grounds where

6    "conduct was egregious[,]" "involved significant sums of money[,]" "and there was a significant need

7    for individual deterrence" noting "[a]though many defendants with zero criminal history points may be

8    unlikely to recidivate, unfortunately [defendant] demonstrated that he is not one of them").

9        In sum, this Court should deny Holmes' motion at the discretionary step as well as the eligibility

10   step because 135 months is still warranted as a sentence given the magnitude and severity of her crimes,

11   to deter Holmes herself and others from committing similar crimes—especially those who might

12   consider taking advantage of investors or vulnerable patients—and to continue to rebuild trust and

13   integrity in Silicon Valley and other innovation-focused communities.

14                                **CONCLUSION**

15       For the reasons stated above, the government respectfully requests that the Court deny Defendant

16   Holmes' Motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(2).  The government also

17   respectfully requests that the Court grant its pending administrative motion to correct the judgment

18   (ECF No. 1770) once it rules on this pending Motion.

19

20   DATED:  July 2, 2025                                Respectfully submitted,

21                                                       CRAIG H. MISSAKIAN
22                                                       United States Attorney

23                                                        */s/ Kelly I. Volkar*
24                                                       KELLY I. VOLKAR
                                                         Assistant United States Attorneys

25

26

27

28