UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>HOLMES,<br><br>                Defendant. | Case No.  5:18-cr-00258-EJD-1<br><br>**ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(2)**<br><br>Re: ECF No. 1793 |

Before the Court is Defendant Elizabeth A. Holmes's motion for a modification of her sentence pursuant to 18 U.S.C. § 3582(c)(2). Mot., ECF No. 1793. Holmes asserts that she is eligible for a retroactive two-point offense level reduction under Part B, Subpart 1 of Amendment 821 to the United States Sentencing Guidelines ("Guidelines"). The government opposes the motion (Opp., ECF No. 1796), and Holmes filed a reply (Reply, ECF No. 1797). After careful consideration of the parties' briefing and the voluminous record in this matter, the Court **GRANTS** Holmes's motion.

## I.    BACKGROUND

The facts of this case are well known to the Court. As such, the Court recounts only those facts that are relevant to the instant motion.

On January 3, 2022, after a four-month trial, a jury found Holmes guilty of three counts of wire fraud and one count of conspiracy to commit wire fraud. ECF No. 1235. In November 2022, after post-trial motions and the comparably lengthy trial of Holmes's co-Defendant Ramesh "Sunny" Balwani, the Court held the sentencing hearing in Holmes's case. ECF No. 1660. Holmes had no criminal-history points, which placed her in criminal-history category I.

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
1

Sentencing Order at 22, ECF No. 1712. The Court found (1) a base offense level of 7, (2) a 24-point enhancement for the loss amount, and (3) a 2-point enhancement for the number of victims, resulting in a total offense level of 33. *Id.* at 21. The Court denied the government's request to apply additional enhancements for reckless risk of death or serious bodily injury or for an aggravating role adjustment with Holmes as the leader or organizer. *Id.* at 17–20. The Court also rejected Holmes's request for a downward adjustment for acceptance of responsibility. *Id.* at 20–21. Holmes's offense level of 33 and category I criminal history yielded a U.S. Sentencing Guidelines ("Guidelines") range of 135–168 months of imprisonment. *Id.* at 21–22. The Court ultimately sentenced Holmes to 135 months of imprisonment, the low-end of the Guidelines range, to be followed by three years of supervised release. *Id.* at 22.

Holmes began serving her sentence on May 30, 2023. *See* ECF No. 1762. The Court subsequently found that Holmes and Balwani jointly owed $452,047,268 in restitution to the ten investor-victims identified at sentencing, in addition to Walgreens and Safeway, for a total of 12 investor-victims. Restitution Order, ECF No. 1760.

On February 24, 2025, following separate appeals, the Ninth Circuit affirmed the jury's convictions of Holmes and Balwani, this Court's sentence for each defendant and the Court's joint restitution order. *See United States v. Holmes*, 129 F.4th 636 (9th Cir. 2025). Holmes filed a petition for panel rehearing and rehearing *en banc*, which the Ninth Circuit denied on May 8, 2025. *See United States v. Holmes*, No. 22-10312, ECF No. 107.

Holmes filed the instant motion for a sentence modification on June 11, 2025.

## II.    LEGAL STANDARD

A court may modify an imposed sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In *Dillon v. United States*, the Supreme Court set forth the two-step inquiry for determining whether such a sentence modification is warranted in a particular case. 560 U.S. 817 (2010). Under the first "eligibility prong," the court must determine "whether a prisoner is eligible for a sentence modification under

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
2

the Commission's policy statement in U.S.S.G. § 1B1.10.  *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (citing *Dillon*, 560 U.S. at 826–27).  At the second step of the analysis—the "discretionary prong"—the court considers "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon*, 560 U.S. at 827).

## III.    DISCUSSION

### A.    Eligibility Prong

On November 1, 2023, after the Court sentenced Holmes, the Sentencing Commission amended the Guidelines with Amendment 821.  U.S.S.G. supp. app. C, amend. 821 (Nov. 2023).  Part B of this amendment added U.S.S.G. § 4C1.1, which provides a reduction for certain "Zero-Point Offenders." *Id.*  Section 4C1.1 provides a retroactive two-level offense level reduction for defendants who meet certain criteria. *Id.*; *see also* U.S.S.G. § 1B1.10(d) (applying U.S.S.G. § 4C1.1 retroactively).

U.S.S.G. § 4C1.1 sets forth the following eleven eligibility criteria that a defendant must meet to qualify for a two-level reduction:

1. The defendant did not receive any criminal history points from Chapter Four, Part A;

2. The defendant did not receive an adjustment under §3A1.4 (Terrorism);

3. The defendant did not use violence or credible threats of violence in connection with the offense;

4. The offense did not result in death or serious bodily injury;

5. The instant offense of conviction is not a sex offense;

6. The defendant did not personally cause substantial financial hardship;

7. The defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

8. The instant offense of conviction is not covered by §2H1.1

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
3

United States District Court
Northern District of California

(Offenses Involving Individual Rights);

9.  The defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);

10. The defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and

11. The defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).

Holmes contends that she meets each criterion.  The government does not dispute this as to most criteria but contends that Holmes is incorrect that she did not cause "substantial financial hardship" under U.S.S.G. § 4C1.1(a)(6).  Opp. at 13.  At sentencing, the Court found—and the Ninth Circuit affirmed—that Holmes's case warranted an enhancement for defrauding more than 10 victims and that she owed $452,047,268 in restitution to 12 investor-victims.  *See* Sentencing Order at 21; Restitution Order at 18.  Given that Holmes's offense caused a massive amount of financial harm to several people, the government argues that she is ineligible for a sentence reduction.

To determine whether a defendant caused "substantial financial hardship" under Section 4C1.1, the Guidelines instructs courts to "consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1."  U.S.S.G. § 4C1.1(b)(3) (citing U.S.S.G. § 2B1.1).  These factors are "whether the offense resulted in the victim—

(i)  becoming insolvent;

(ii) filing for bankruptcy under the Bankruptcy Code . . . ;

(iii) suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v) making substantial changes to his or her living arrangements, such as relocating to

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
4

a less expensive home; and

(vi) suffering substantial harm to his or her ability to obtain credit."

U.S.S.G. § 2B1.1(b)(2) cmt. App. n.4(F).

According to Holmes, these factors demonstrate that "substantial financial hardship" focuses not on the *aggregate amount* of loss that victims suffered, but on whether any *individual victim* experienced hardship. Though the Ninth Circuit has not weighed in on the meaning of "substantial financial hardship" in Section 4C1.1 yet, Holmes argues that the Circuit's interpretation of the same phrase in Section 2B1.1 is instructive. In *United States v. George*, the Ninth Circuit explained that a defendant caused "substantial financial hardship" under Section 2B1.1 where "victims suffered a loss that was significant in light of their individual financial circumstances." 949 F.3d 1181, 1184 (9th Cir. 2020) (finding losses ranging from $1,000 to $3,000 constituted substantial financial loss given the impact on individual victims). Holmes contends that this reasoning applies with equal force to Section 4C1.1 because it uses the exact same "substantial financial hardship" language as Section 2B1.1 and explicitly references the latter provision.

Accordingly, Holmes argues that she did not personally cause "substantial financial hardship" because there is no evidence that any of the 12 investor-victims in her case experienced the kind of individual financial hardship contemplated by the Section 2B1.1 factors. Given the risk involved with the investment, every Theranos investor who invested during the C-1 and C-2 rounds represented that they would not be financially impaired if the investor were to suffer the complete loss of the investment. *See* Trefz. Decl., Ex. 1 at 12–13, ECF No. 1797-2 (affirming that the investor "can bear the economic risk of such Investor's investment and is able, without impairing such Investor's financial condition, to hold the Shares and the Conversion Shares for an indefinite period of time and to suffer a complete loss of such Investor's investment"); Trefz. Decl., Ex. 2 at 8, ECF No. 1979-3 (same). Indeed, the government does not point to any

individual investor-victim who suffered financial hardship as a result of Holmes's offense.[1]  Nor could the Probation Office identify any.  Sentence Reduction Investigation Report, ECF No. 1799 at 3 (noting that "although the victims detail significant loss of money and time (for testifying, traveling, depositions, etc.), none of the statements reveal a 'substantial financial hardship'").

The government offers a different interpretation of "substantial financial hardship."  The Guidelines advise that the Section 2B1.1 factors only represent a representative list of potential considerations.  *See* U.S.S.G. § 4C1.1(b)(3) (stating that courts are to consider "among other things" the "non-exhaustive" factors in Section 2B1.1).  And in an Application Note to Section 4C1.1, the Guidelines state that the determination of whether a defendant caused "substantial financial hardship" under U.S.S.G. § 4C1.1(a)(6) "is to be determined independently of the application of subsection (b)(2) of § 2B1.1."  U.S.S.G. § 4C1.1 cmt. App. n.1.  The government understands this guidance to mean that though "substantial financial hardship" appears in both sections of the Guidelines, the phrase has different meanings under each provision.  Specifically, the government asserts that "substantial financial hardship" in Section 2B1.1(b)(2) focuses more on the impact on individual victims, whereas the same phrase in Section 4C1.1(a)(6) focuses on the harm the defendant caused writ large.

The Sixth Circuit recently endorsed a similar view in *United States v. Hanson*, 124 F.4th 1013 (6th Cir. 2025).  There, the Circuit affirmed a district court's denial of a sentence reduction, finding the defendant ineligible under U.S.S.G § 4C1.1(a)(6) because he had defrauded 30 people out of more than $1.2 million.  *Id.* at 1017.  The court noted that, based on the plain language of § 4C1.1, "Application Note 4(F) does not describe every type of substantial financial hardship" that renders a defendant ineligible under § 4C1.1(a)(6) but rather "provides a list of exemplars from which we may extrapolate analogous conduct."  *Id.*  "Given the number of victims and amount

---

[1] In response to being notified about Holmes's motion, one investor-victim told the government that he lost nearly 15% of his personal net worth.  Opp. at 16 (citing Volkar Decl. ¶ 2, ECF No. 1796-1).  This fact does not change the Court's analysis.  Even assuming that this anonymous investor-victim was one of the 12 victims identified at sentencing, it is not clear how this investor-victim calculated his 15% loss in net worth, or more importantly, whether that loss resulted in the kind of pecuniary impact that would constitute a "substantial financial hardship."

defrauded," the Sixth Circuit held that "the district court reasonably concluded that the financial hardship was substantial." *Id.* at 1018. The government argues that the Court should similarly find that Holmes, who defrauded 12 investor-victims of more than $450 million, also caused "substantial financial hardship."

Though the government's argument is well-taken, the Court ultimately agrees with Holmes's interpretation and finds that she did not personally cause "substantial financial hardship" under U.S.S.G. § 4C1.1(a). As the Ninth Circuit highlighted in *George*, the words "substantial" and "hardship" suggest that the victim's loss must be significant. 949 F.3d at 1185. Significance is a relative concept that only gains meaning from comparison, and "[t]he most natural point of comparison is the financial condition of the victim." *Id.* In that sense, the government's proffered interpretation is untenable because it provides no point of reference as to what degree of loss is "substantial." Instinctually, the $450 million in losses here would seem to meet that definition. But this gut reaction is a poor measure at best. Losing one million dollars may not even register as a loss for certain victims, whereas for others it could result in complete financial devastation.

To avoid the inherent subjectivity in measuring the substantiality of a loss, there must be some individualized finding that a victim's loss substantially harmed that victim. Indeed, even in cases where courts have found that the defendant caused "substantial financial hardship" based on the number of victims or the amount of loss—including *Hanson*—there was also some finding of individual victim hardship. *See, e.g.*, *Hanson*, 124 F.4th at 1018 (observing that "the record evidence makes clear that [the defendant's] conduct caused several of his victims to individually suffer substantial financial hardship"); *United States v. Chung*, 2024 WL 4609597, at *3 (N.D. Cal. Oct. 29, 2024) (victims testified they lost retirement savings or entire life savings); *United States v. Cheng*, 2025 WL 573767, at *3 (S.D.N.Y. Feb. 21, 2025) (victims "attested" that "the resulting losses had [a] devastating impact on their lives and livelihoods, including by preventing individuals from purchasing family homes and obtaining credit, forcing companies to lay off employees, and driving others to the brink of collapse" (citations omitted)); *United States v. Spitzer*, 2025 WL 81348, at *3 (N.D. Ill. Jan. 13, 2025) (victims "reported that they faced financial

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
7

ruin as a result of their losses, could not retire, or had to return to work at an advanced age"). Such a finding is missing here.

Accordingly, the Court finds that Holmes meets all eleven criteria and is eligible for a two-level reduction under U.S.S.G. § 4C1.1.  This reduction results in a revised Guidelines range of 108–135 months.

### B.    Discretionary Prong

Having determined that Holmes is eligible for a sentence reduction, the Court proceeds to address whether a reduction is warranted under the Section 3553(a) factors.  The same factors that courts consider when imposing a sentence apply when considering a defendant's motion to reduce a sentence.  *See* 18 U.S.C. § 3582(c)(1)(A).  In addition, the Guidelines require courts to also take into account any danger to the public posed by a reduction in the defendant's term of imprisonment and the defendant's post-sentencing conduct.  U.S.S.G § B1.10 app. n.1(B)

At sentencing, the Court considered the Section 3553(a) factors and determined that a sentence of 135 months' imprisonment, the low end of the Guidelines range, was sufficient. Sentencing Order at 22.  The Court considered, among other things, arguments presented in both parties' sentencing memoranda, statements from Holmes and a victim present at the sentencing hearing, Holmes's history and characteristics, and the nature and circumstances of her offense.  *Id.* Neither the Section 3553(a) factors nor the Court's application of those factors to Holmes's case have changed much since then.

Holmes argues that, in addition to the Court's previous consideration of the Section 3553(a) factors, the lack of public safety concerns counsels in favor of a reduced sentence at the low end of the revised Guidelines range.  Holmes was not convicted of any violent crime, nor does she have any history of violence or crime suggestive of risk to the community's safety.  Indeed, after sentencing, the Court found by clear-and-convincing evidence that Holmes posed no danger to the safety of any other person in the community.  ECF No. 1757 at 3–4.  The Court determined that Holmes was "in no position to inflict similar harms of fraud on the community" given that she was "removed from the artifices that enabled her criminal activity."  *Id.* at 3.  That reasoning still

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
8

applies today.

As for post-sentencing conduct, Holmes asserts that she has maintained an admirable record as a prisoner.  The BOP categorized Holmes at the lowest risk levels in prison and for recidivism, and in over two years of incarceration, she has not received a single citation or disciplinary infraction.  *See* ECF No. 1700 at 3.  Amidst the challenges of adjusting to incarceration, Holmes has sought out opportunities to assist her fellow prisoners and participated in several rehabilitative programs her facility offers.  The government does not dispute these facts.

Instead, the government argues that other aspects of Holmes's post-sentencing conduct signal a continuing need for this Court's sentence to deter Holmes from future criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(C).  The government observes that Holmes still has not accepted responsibility for her crimes, has paid minimal restitution, and has the opportunity to reoffend.  Since sentencing, Holmes has continued to tell national media outlets that she intends to resume a career in healthcare technology after her release.  Holmes has also been advising her current romantic partner on raising capital for his new start-up, which touts a prototype diagnostic device that the government argues bears striking similarities to the Theranos device.  According to the government, Holmes's intent to return to the same field in which she committed her crimes combined with an opportunity to recidivate through her partner's start-up justifies maintaining her current sentence.

These suspicions do not sway the Court.  The Court already incorporated the fact that Holmes did not accept responsibility for her crime at sentencing, so her maintaining this position today does not alter the analysis.  Further, Holmes's intent to return to the same field in which she perpetuated her fraud and her relationship with the founder of a start-up similar to Theranos are countervailed by the chilling effect of her notoriety, which will subject Holmes to substantial scrutiny in all of her future endeavors.  Given her lasting infamy, there is a decreased likelihood that Holmes would be successful in reoffending in the same manner.

That said, the Court understands the government's concerns.  The Court takes seriously the magnitude and severity of Holmes's crimes and the desire to rebuild trust and integrity in Silicon

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE

Valley. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). A reduced sentence that is too lenient could reduce the deterrent effect of the Court's original sentence. *See id.* § 3553(a)(2)(B). With these considerations in mind, the Court finds that the Section 3553(a) factors weigh in favor of a reduced sentence and that a sentence in the middle of the revised Guidelines range is "sufficient, but not greater than necessary." *Id.* § 3553(a).

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Holmes is eligible for a two-level reduction, and that this reduction is warranted in her case. The Court therefore **GRANTS** Holmes's motion and reduces her offense level from 33 to 31, resulting in a new Guidelines range of 108–135 months. After considering the Section 3553(a) factors, the Court resentences Holmes to 123 months.

To be clear, this sentence reduction does not diminish the enormity of Holmes's crimes, nor does it ignore the significant negative impact her conduct has had on the community. The hundreds of millions of dollars in losses caused by Holmes's fraud speak for themselves. And though unquantifiable, the echoes of the immense reputational damage that the innovative industry in Silicon Valley suffered as a consequence of Holmes's deception still reverberate to this day. Holmes's revised sentence continues to reflect a just punishment for her serious offense and serves as a reminder that the scales of justice will balance.

**IT IS SO ORDERED.**

Dated: March 26, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cr-00258-EJD-1
ORDER GRANTING MOTION FOR MODIFICATION OF SENTENCE
10

United States District Court
Northern District of California